Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION SEEKING**
**ENTRY OF AN ORDER (I) APPROVING THE**
**DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT**
**FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY**
**PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,**
**(III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING**
**ADEQUATE ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state as follows in support of this motion (this "<u>Motion</u>"):

**<u>Relief Requested</u>**

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"), (a) approving the Debtors' proposed Adequate Assurance of payment for

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

future utility services under section 366 of the Bankruptcy Code, (b) prohibiting the Utility

Providers from altering, refusing, or discontinuing services, (c) approving the Debtors' proposed

Adequate Assurance Procedures (all as defined herein), and (d) granting related relief.

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court

entering a final order in connection with this Motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested herein are sections 105(a) and 366 of

title 11 of the United States Code (the "Bankruptcy Code"), rule 2002 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(a) the Local Bankruptcy Rules

for the Southern District of New York (the "Local Rules").

## Background

5.    The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one

of the largest and most sophisticated cryptocurrency based finance platforms in the world and

provide financial services to institutional, corporate, and retail clients across more than

100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which

users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans

using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius

employs a global workforce of approximately 670 employees and has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6.    On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration"), both filed contemporaneously with this Motion and incorporated by reference herein.[2]  As described in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

7.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

**The Utility Services**

8.   In connection with the operation of their business, the Debtors obtain electricity, telecommunications and other similar services (collectively, the "Utility Services") from a number of utility providers or brokers (each, a "Utility Provider" and collectively, the "Utility Providers"). A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors' various locations and their business operations as of the Petition Date (the "Utility Services List") is attached hereto as **Exhibit B**.[3]

9.   Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and the overall success of these chapter 11 cases. The Utility Services are essential for the Debtors to maintain their business and to operate their corporate offices and cryptocurrency mining operations in multiple states across the United States to provide functions essential for daily operations. These locations require electricity, telecommunications, internet, and other Utility Services to operate. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be needlessly disrupted.

10.   For some of the Debtors' locations, certain Utility Services are billed directly to the Debtors' landlords and passed through to the Debtors as part of the Debtors' lease payments in accordance with the applicable lease agreements. The relief requested herein is with respect to all Utility Providers supplying Utility Services directly to the Debtors, including those that indirectly supply services through the applicable landlords.

---

[3]   The descriptions of the Utility Services set forth in this Motion constitute a summary only. The actual terms of the Utility Services and related agreements will govern in the event of any inconsistency with the description thereof set forth herein. Although **Exhibit B** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Utility Providers. By this Motion, the Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on **Exhibit B**. Additionally, the listing of an entity on the Utility Services List is not an admission that such entity is a "utility" within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

11.   To the best of the Debtors' knowledge, there are no defaults or arrearages with respect to undisputed invoices for prepetition Utility Services.   In the aggregate, the Debtors pay approximately $31,000 each month for Utility Services, calculated as the historical average payment for the twelve-month period ending June 30, 2022, or based on the latest invoice if not billed monthly or not received as of June 30, 2022.

## I.     Proposed Adequate Assurance and Adequate Assurance Procedures.

12.   The Debtors intend to pay postpetition obligations owed to the Utility Providers in the ordinary course of business and in a timely manner.   The Debtors believe that cash held on hand by the Debtors and generated in the ordinary course of business will provide sufficient liquidity to pay the Utility Providers for Utility Services in accordance with their prepetition practice during the pendency of these chapter 11 cases.

13.   To provide additional assurance of payment, the Debtors propose to deposit $15,508 (the "Adequate Assurance Deposit") into a segregated account (the "Adequate Assurance Account") equal to approximately one-half of the Debtors' average monthly cost of Utility Services, calculated as the historical average payment for the twelve-month period ending June 30, 2022, or based on the latest invoice if not billed monthly or not received as of June 30, 2022, plus an additional $5,000 included out of an abundance of caution to provide assurance to any Utility Provider that may have inadvertently been excluded from the Utility Services List.

14.   The Adequate Assurance Deposit will be held in the Adequate Assurance Account at Signature Bank for the benefit of the Utility Providers for the duration of these chapter 11 cases, subject to the Debtors' right to terminate or discontinue the applicable Utility Services, and may be applied to any postpetition payment owed to the Utility Providers by the Debtors.   The Adequate Assurance Deposit will be held by the Debtors, and no liens senior to the interests of the Utility Providers will encumber the Adequate Assurance Deposit or the Adequate Assurance Account.

15. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in accordance with their prepetition practice (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of payment as required by section 366 of the Bankruptcy Code.

## II.     The Adequate Assurance Procedures.

16. Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for adequate assurance of future payment (each, an "Adequate Assurance Request"), pursuant to the following procedures (the "Adequate Assurance Procedures"):

a.     The Debtors will serve a copy of this Motion and the order granting the relief requested herein to each Utility Provider within two business days after entry of the order by the Bankruptcy Court.

b.     Subject to paragraphs (f)–(i) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $15,508 in the Adequate Assurance Account within five business days after entry of the order granting the relief requested herein.

c.     Each Utility Provider shall be entitled to the funds in the Adequate Assurance Account in the amount set forth for such Utility Provider in the column labeled "Proposed Adequate Assurance" on the list of Utility Providers attached hereto as **Exhibit B** (the "Utility Providers List").

d.     If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to:   (i) the Debtors, Celsius Network LLC, 121 River Street, PH05, Hoboken, New Jersey 07030, Attn: Ron Deutsch; (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Alison Wirtz and Stephanie Cohen; (iii) counsel to any statutory committee appointed in these chapter 11 cases; and (iv) the Office of the United States Trustee, 201 Varick Street #1006, New York, New York 10014, Attn: Shara Cornell, Mark Bruh; and Brian Masumoto (collectively, the "Notice Parties").   The Debtors shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors and

6

any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Bankruptcy Court. To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

e.      The portion of the Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

f.      Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties. Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtors; (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (v) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

g.      An Additional Assurance Request may be made at any time. If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h.      Without further order of the Bankruptcy Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors determine that the Additional Assurance Request is reasonable.

i.      If the Debtors determine, in their sole discretion, that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors or the Utility Provider, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Bankruptcy Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

j.     Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtors on account of: (i) unpaid charges for prepetition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

k.     The Adequate Assurance Deposit deposited into the Adequate Assurance Account on behalf of any Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider) will be returned to the Debtors, less any amounts owed on account of unpaid, postpetition Utility Services, by no later than five business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in these chapter 11 cases or (ii) the Debtors provide notice to a Utility Provider that services provided to the Debtors by such Utility Provider no longer will be needed.

16.   The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance while at the same time allowing the Debtors to administer their chapter 11 estates uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Additional Assurance Request upon the Notice Parties. The Debtors, in their sole discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Bankruptcy Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Bankruptcy Court resolution of the Additional Assurance Request.

17.   Absent compliance with the Adequate Assurance Procedures, the Debtors request that the Utility Providers, including subsequently added Utility Providers, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance, pending entry of a final order approving the relief requested herein.

18.   The relief requested herein is for all Utility Providers providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Services List.

### III.    Subsequently Identified Utility Providers.

19.    To the extent the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors seek authority to add or remove parties from the Utility Services List.  For any Utility Provider that is subsequently added to the Utility Services List, the Debtors will serve such Utility Provider with a copy of the Bankruptcy Court's order regarding Utility Services, including the Adequate Assurance Procedures, and increase the Adequate Assurance Deposit by an amount equal to one-half of the Debtors' average monthly cost of services from the subsequently added Utility Provider, net of any prepetition deposits, letters of credit, or surety bonds already provided to the Utility Provider in the ordinary course of business. The Debtors request that the terms of such Utility Services order and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider to the same extent as if the Utility Provider was listed on the original Utility Providers List attached hereto.  For any Utility Provider that is subsequently removed from the Utility Providers List, the Debtors request the authority to decrease the Adequate Assurance Deposit by an amount equal to one-half of the Debtors' average monthly cost of services from such removed Utility Provider.

### Basis for Relief

20.    Section 366 of the Bankruptcy Code, which protects a debtor against the immediate termination or alteration of utility services after the petition date, provides the debtor thirty days following the petition date to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider before the utility provider may alter, refuse, or discontinue service.  11 U.S.C. § 366(c)(2).  For purposes of section 366 of the Bankruptcy Code, "assurance of payment" can be provided in the form of a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment, or other mutually-agreed form of security. 11 U.S.C. § 366(c)(1).  "Adequate assurance of payment" need not constitute an absolute

guarantee of the debtors' ability to pay.  *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*,
No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that
"[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of
nonpayment, but are not required to give the equivalent of a guaranty of payment in full");
*In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate
assurance' of payment.  The statute does not require an absolute guarantee of payment.") (citation
omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

21.   When considering whether a given assurance of payment is "adequate," the courts
examine the totality of the circumstances to make an informed decision as to whether the utility
provider will be subject to an unreasonable risk of nonpayment.  *See, e.g., Mass. Elec. Co.
v. Keydata Corp.  (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing
*In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Sols., Inc.*, 280 B.R. 63, 82–
83 (Bankr. S.D.N.Y. 2002).  In determining the level of adequate assurance, however, "a
bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the
debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve
scarce financial resources."  *Va. Elec. Power & Co.*, 117 F.3d at 650 (internal quotations omitted)
(citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also Great
Atl. & Pac.*, 2011 WL 5546954, at *5–6 (holding that no additional adequate assurance deposit
was necessary where such deposit would impose an unreasonable burden on reorganizing debtors).
Accordingly, demands by a utility provider for a guarantee of payment should be refused when a
debtor's specific circumstances already afford adequate assurance of payment.

22.   Here, the Utility Providers are adequately assured against any risk of nonpayment for
future services.  The Adequate Assurance Deposit and the Debtors' ongoing ability to meet

obligations as they come due in the ordinary course provide assurance that the Debtors will pay their future obligations to the Utility Providers. In contrast, termination of the Utility Services could render the Debtors unable to operate their business to the detriment of all stakeholders. *See In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

23. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of §366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Moreover, any rights the Utility Providers believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are fully preserved under the Adequate Assurance Procedures, because the Utility Providers may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *5–6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5.

24. The Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, and the Debtors respectfully request that the Court grant

11

the relief requested herein.  Similar procedures have been approved by courts in this district. *See, e.g.*, *In re GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 30, 2021) (approving payment of a deposit into a segregated interest bearing account as adequate assurance to utility providers); *In re Jason Indus., Inc.* No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020) (same); *In re Frontier Commc'ns. Corp.,* No. 20-22577 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same); *In re Deluxe Entm't Servs Grp. Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); *In re Barneys New York Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y., Aug. 22, 2019) (same).[4]

25.  Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366.  Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

26.  The Debtors expect to have sufficient funds to pay the amounts described in this Motion in the ordinary course of business.  In addition, under the Debtors' existing cash management system, which is described in further detail in a separate motion, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe there is minimal risk that checks or

---

[4]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

wire transfer requests that the Court has not authorized will be inadvertently made. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

27.  To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

28.  Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable

13

law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

29.  This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of its application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

30.  The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) the Utility Providers; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

31.  No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order

substantially in the form attached hereto as __Exhibit A__ (a) granting the relief requested herein and

(b) granting such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: July 13, 2022

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:    (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and Debtors in*
*Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## ORDER (I) APPROVING THE
## DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT
## FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
## PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
## (III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
## ADEQUATE ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order") (a) approving the Debtors'

Proposed Adequate Assurance of payment for future utility services under section 366 of the

Bankruptcy Code, (b) prohibiting the Utility Providers from altering, refusing, or discontinuing

services, (c) approving the Adequate Assurance Procedures and (d) granting related relief; all as

more fully set forth in the Motion; and upon the First Day Declarations; and this Court having

jurisdiction over this matter pursuant to  28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the Southern District of New York,

entered February 1, 2012; and this Court having the power to enter a final order consistent with

Article III of the United States Constitution; and this Court having found that venue of this

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    The Debtors shall serve a copy of this Order on any Utility Provider identified prior to

the entry of this Order no later than two business days after the date this Order is entered.

3.    The Debtors are authorized to cause the Adequate Assurance Deposit to be held in a

segregated account during the pendency of these chapter 11 cases.

4.    The Adequate Assurance Deposit, together with the Debtors' ability to pay for future

Utility Services in the ordinary course of business subject to the Adequate Assurance Procedures,

shall constitute adequate assurance of future payment as required by section 366 of the Bankruptcy

Code.

5.    The portion of the Adequate Assurance Deposit attributable to each Utility Provider

shall be returned to the Debtors on the earlier of (a) reconciliation and payment by the Debtors of

the Utility Provider's final invoice in accordance with applicable non bankruptcy law following

the Debtors' termination of Utility Services from such Utility Provider and (b) the effective date

of any chapter 11 plan confirmed in these chapter 11 cases.

6.    The following Adequate Assurance Procedures are hereby approved on a final basis:

   a.    The Debtors will serve a copy of the Motion and the order granting the relief requested herein to each Utility Provider within two business days after entry of the order by the Bankruptcy Court.

   b.    Subject to paragraphs (f)–(i) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $15,508 in the Adequate Assurance Account within five business days after entry of the order granting the Motion.

   c.    Each Utility Provider shall be entitled to the funds in the Adequate Assurance Account in the amount set forth for such Utility Provider in the column labeled "Proposed Adequate Assurance" on the list of Utility Providers attached to the Motion as Exhibit B (the "Utility Providers List").

   d.    If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to:    (i) the Debtors, Celsius Network LLC, 121 River Street, PH05, Hoboken, New Jersey 07030, Attn: Ron Deutsch; (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Alison Wirtz and Stephanie Cohen; (iii) counsel to any statutory committee appointed in these chapter 11 cases; and (iv) the Office of the United States Trustee, 201 Varick Street #1006, New York, New York 10014, Attn: Shara Cornell, Mark Bruh; and Brian Masumoto (collectively, the "Notice Parties").  The Debtors shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Bankruptcy Court.  To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

   e.    The portion of the Adequate Assurance Deposit attributable to each Utility Provider will be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Provider and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

f.       Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.

g.      Any Additional Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include information regarding any security deposits paid by the Debtors; (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (v) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

h.      An Additional Assurance Request may be made at any time. If a Utility Provider fails to file and serve an Additional Assurance Request, the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

i.      Upon the Debtors' receipt of an Adequate Assurance Request, the Debtors shall have twenty-one days from the receipt of the Adequate Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to resolve the Utility Provider's Adequate Assurance Request.

j.      Without further order of the Bankruptcy Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request if the Debtors determine that the Additional Assurance Request is reasonable.

k.      If the Debtors determine, in their sole discretion, that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Debtors or the Utility Provider, during or immediately after the Resolution Period, may request a hearing (a "Determination Hearing") before the Bankruptcy Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

l.      Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider will be prohibited from altering, refusing, or discontinuing service to the Debtors on account of: (i) unpaid charges for prepetition services; (ii) a pending Adequate Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

m.      The Adequate Assurance Deposit deposited into the Adequate Assurance Account on behalf of any Utility Provider (including any additional amount

4

deposited upon request of any applicable Utility Provider) will be returned to the Debtors, less any amounts owed on account of unpaid, postpetition Utility Services, by no later than five business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in these chapter 11 cases or (ii) the Debtors provide notice to a Utility Provider that services provided to the Debtors by such Utility Provider no longer will be needed.

7.     The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

8.     The Debtors' service of the Motion upon the Utility Services List shall not constitute an admission or concession that any such entity is a "utility" within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

9.     The Debtors are authorized to add or remove parties from the Utility Services List; *provided, however*, that the Debtors shall provide notice of any such addition or removal to the Notice Parties; *provided, further,* that, if a Utility Provider is removed from the Utility Services List, the Debtors shall provide the applicable Utility Provider with seven days' notice thereof and the opportunity to respond to such removal.  To the extent that there is any dispute as to the postpetition amounts owed to a Utility Provider, such Utility Provider shall not be removed from the Utility Services List, and no funds shall be removed from the Adequate Assurance Deposit, until such dispute has been resolved.  For any Utility Provider that is subsequently added to the Utility Services List, the Debtors shall serve such Utility Provider a copy of this Order, including the Adequate Assurance Procedures, and provide such Utility Provider two weeks' notice to object to the inclusion of such Utility Provider on the Utility Services List.  The terms of this order and the Adequate Assurance Procedures shall apply to any subsequently identified Utility Provider.

10.     Any landlord that pays directly for Utility Services for the benefit of the Debtors pursuant to a nonresidential real property lease must continue paying for such Utility Services in the ordinary course of business and may not cease, reduce, delay, or otherwise interfere with the

5

payment or delivery of such Utility Services, regardless of any nonpayment, deferral, or waiver of rent, or any defaults with respect to the applicable lease; *provided* that a landlord may cease payments on account of Utility Services following the effective date of the rejection of the applicable lease pursuant to section 365 of the Bankruptcy Code, if any.

11. To the extent the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors are authorized to add or remove such parties from the Utility Providers List. For any Utility Provider that is subsequently added to the Utility Providers List, the Debtors shall serve such Utility Provider a copy of the Bankruptcy Court's order regarding Utility Services, including the Adequate Assurance Procedures, and provide such Utility Provider two weeks' notice to object to the inclusion of such Utility Provider on the Utility Providers List. The terms of this Order and the Adequate Assurance Procedures shall apply to any subsequently identified Utility Provider.

12. Pursuant to the Adequate Assurance Procedures, upon the Debtors' termination of Utility Services, the Debtors may, in their discretion and without further order of this Court, reduce the Adequate Assurance Deposit by an amount not exceeding, for each of the Utility Services being discontinued, the lesser of (i) the estimated two-week utility expense for such Utility Services or (ii) the amount of the Adequate Assurance Deposit then attributable to the applicable Utility Provider. Upon the effective date of a plan in these chapter 11 cases, the Adequate Assurance Deposit shall be returned to the Debtors, less any amount owed on account of unpaid, postpetition Utility Services, by no later than five business days following the date upon which the plan becomes effective.

13. Nothing contained in the Motion or this Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Order), is

intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for,
or validity of any claim against the Debtors under the Bankruptcy Code or other applicable
nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute
any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an
implication, admission or finding that any particular claim is an administrative expense claim,
other priority claim or otherwise of a type specified or defined in the Motion or this Order; (e) a
request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to
section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or
perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'
estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors
or any other party in interest against any person or entity under the Bankruptcy Code or any other
applicable law.

14. The banks and financial institutions on which checks were drawn or electronic
payment requests made in payment of the prepetition obligations approved herein are authorized
to receive, process, honor, and pay all such checks and electronic payment requests when presented
for payment, and all such banks and financial institutions are authorized to rely on the Debtors'
designation of any particular check or electronic payment request as approved by this Order
without any duty of further inquiry and without liability for following the Debtors' instructions.

15. Nothing in this Order authorizes the Debtors to accelerate any payments not otherwise
due.

16. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect
postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are

dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

17.   Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of any applicable Bankruptcy Rules and the Local Rules are satisfied by such notice.

18.   Notwithstanding anything to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

19.   The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

20.   This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated:   _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Utility Providers List**

| Utility Provider | Utility Service(s) Type | Service Address | Utility Provider Address | Account Number(s) | Prepetition Deposit | Approximate Monthly Average | Proposed Adequate Assurance Amount |
|---|---|---|---|---|---|---|---|
| AT&T | TELECOMMUNICATIONS | 1447 PEACHTREE ST. NE 7TH FLOOR ATLANTA, GA 30309 | C/O BANKRUPTCY 4331 COMMUNICATIONS DR FLR 4W DALLAS, TX 75211 | 319073311 | $0 | $91 | $46 |
| CONSTELLATION NEWENERGY, INC. | ELECTRICITY | STILES, BLK E SEC 21 STILES 20 MW PME STILES, TX 76932 | 1616 WOODALL RODGERS FWY DALLAS, TX 75202 | 10443720000076843 | $0 | $0 | $0 |
| CONSTELLATION NEWENERGY, INC. | ELECTRICITY | REBEL 2, BLK 36 T3S S14 REBEL SUBSTATION 50 MW PME 2 GARDEN CITY, TX 79739 | 1616 WOODALL RODGERS FWY DALLAS, TX 75202 | 10443720002673458 | $0 | $0 | $0 |
| CONSTELLATION NEWENERGY, INC. | ELECTRICITY | EAST STILES 2, BLK O SEC A EAST STILES 30 MW PME 2 BIG LAKE, TX 76932 | 1616 WOODALL RODGERS FWY DALLAS, TX 75202 | 10443720005139830 | $0 | $0 | $0 |
| CONSTELLATION NEWENERGY, INC. | ELECTRICITY | EAST STILES, BLK O SEC A EAST STILES 30 MW PME BIG LAKE, TX 76932 | 1616 WOODALL RODGERS FWY DALLAS, TX 75202 | 10443720005252691 | $0 | $0 | $0 |
| CONSTELLATION NEWENERGY, INC. | ELECTRICITY | GARDEN CITY, BLK 33 T4S SEC 7 GARDEN CITY 1 SPAN PME GARDEN CITY, TX 79739 | 1616 WOODALL RODGERS FWY DALLAS, TX 75202 | 10443720005427407 | $0 | $0 | $0 |
| CONSTELLATION NEWENERGY, INC. | ELECTRICITY | REBEL, BLK 36 T3S S14 REBEL SUBSTATION 50 MW PME GARDEN CITY, TX 79739 | 1616 WOODALL RODGERS FWY DALLAS, TX 75202 | 10443720007617836 | $0 | $0 | $0 |
| COX BUSINESS | TELECOMMUNICATIONS | VARIOUS | 6205-B PEACHTREE DUNWOODY ROAD ATLANTA, GA 30328 | 001-8610-113142001 | $0 | $2,474 | $1,237 |
| EE LIMITED | TELECOMMUNICATIONS | VARIOUS | TRIDENT PLACE, MOSQUITO WAY UNIT 4 HATFIELD AL10 9BW UNITED KINGDOM | 192087504 | $0 | $474 | $237 |
| HYPERCORE NETWORKS, INC. | TELECOMMUNICATIONS | 121 RIVER ST HOBOKEN, NJ 07030 | ATTN: CONTRACT ADMINISTRATION 2024 W. 15TH ST, STE F, #331 PLANO, TX 75075 | 9725454169 | $0 | $1,039 | $520 |
| LIGHTPATH FIBER | TELECOMMUNICATIONS | 121 RIVER ST HOBOKEN, NJ 07030 | 1111 STEWART AVENUE BETHPAGE, NY 11714 | 104925 | $0 | $1,769 | $884 |
| LUMEN | TELECOMMUNICATIONS | 121 RIVER ST HOBOKEN, NJ 07030 | 100 CENTURY LINK DRIVE MONROE, LA 71203 USA | 3-CHKTMHS38N / 12276925 | $0 | $13,894 | $6,947 |
| RING CENTRAL INC. | TELECOMMUNICATIONS | 8912 SPANISH RIDGE AVE STE 300 LAS VEGAS, NV 89148 | 20 DAVIS DRIVE BELMONT, CA 94002 | 883246032 | $0 | $2,588 | $1,294 |
| SPECTRUM ENTERPRISE | TELECOMMUNICATIONS | 401 EAST JACKSON STREET SUITE 3300 TAMPA, FL 33602 | 400 ATLANTIC STREET STAMFORD, CT 06901 | 128839801 | $0 | $129 | $64 |
| VERIZON WIRELESS | TELECOMMUNICATIONS | VARIOUS | BANKRUPTCY ADMINISTRATION 500 TECHNOLOGY DRIVE SUITE 550 WELDON SPRING, MO 63304 | 842410679-00001 | $0 | $8,558 | $4,279 |
| **Total** | | | | | **$0** | **$31,016** | **$15,508** |