Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' APPLICATION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this application (this "Application"):

### Relief Requested

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"): (a) appointing Stretto, Inc. ("Stretto") as claims and noticing agent (the

"Claims and Noticing Agent") for the Debtors in their chapter 11 cases effective as of the Petition

Date (as defined herein), including assuming full responsibility for the distribution of notices and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

the maintenance, processing, and docketing of proofs of claim filed in the Debtors' chapter 11 cases; and (b) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Sheryl Betance in Support of Debtors' Application Seeking Entry of an Order (I) Authorizing and Approving the Appointment of Stretto, Inc. as Claims and Noticing Agent and (II) Granting Related Relief* (the "<u>Betance Declaration</u>"), attached hereto as **Exhibit B**.  The Debtors' selection of Stretto to act as the Claims and Noticing Agent has satisfied the Court's Claims Agent Protocol (as defined below), in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.   The terms of Stretto's retention are set forth in the Engagement Agreement attached hereto as <u>Exhibit 1</u> to **Exhibit A** (the "<u>Engagement Agreement</u>").

2.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be over one million entities to be noticed.  Rule 5075-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>") provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of both the Debtors' estates and their creditors.

3.      By separate application, the Debtors will seek authorization to retain and employ Stretto as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11 cases will require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

## Jurisdiction and Venue

4.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, section 503 of title 11 of the United States Code (the "Bankruptcy Code"), Local Rules 9013-1(a) and 5075-1, and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (dated June 17, 2013) (the "Claims Agent Protocol").

## Background

7.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans

using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius employs a global workforce of approximately 670 employees and has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

8.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration"), both filed contemporaneously with this Application and incorporated by reference herein.[2]  As described in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

9.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Application, the Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

**Stretto's Qualifications**

10.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, as well as experience in matters of this size and complexity.  Stretto's professionals have acted as the official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly, and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases include, among others:  *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 13, 2022); *In re HONX, Inc.*, No. 22- 90035 (MI) (Bankr. S.D. Tex. Apr. 28, 2022); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 17, 2021); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. May 14, 2020); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. July 20, 2020); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019); *In re Burkhalter Rigging, Inc.*, No. 19-30495 (MI) (Bankr. S.D. Tex. Feb. 6, 2019); *In re Angel Medical Sys., Inc.*, No. 18-12903 (KG) (Bankr. D. Del. Jan. 23, 2019).[3]

11.      By appointing Stretto as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the

---

[3]      Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

Clerk of the Court (the "Clerk's Office") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

### Services to be Provided

12.    This Application pertains only to the work to be performed by Stretto under the Clerk's Office delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1 and any work to be performed by Stretto outside of this scope is not covered by this Application or by any order granting approval hereof.  Specifically, Stretto will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

(a)    Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on approval of a disclosure statement and confirmation of the the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)    Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk's Office;

(d)    Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     Maintain an electronic platform for purposes of filing proofs of claim;

(g)     For all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk's Office, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(h)     Process all proofs of claim received, including those received by the Clerk's Office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk's Office; upon the Clerk's Office request, provide the Clerk's Office with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original proofs of claim;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

(n)     Upon completion of the docketing process for all proofs of claim received to date for each case, turn over to the Clerk's Office copies of the Claims Registers for the Clerk's Office review (upon the Clerk's Office request);

(o)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists,

including to identify and eliminate duplicative names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such information available);

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(r)     If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's Office within three days of notice to Stretto of entry of the order converting the cases;

(s)     Thirty days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(t)     Within seven days of notice to Stretto of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

(u)     At the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064 or (ii) any other location requested by the Clerk's Office.

## **Professional Compensation**

13.     The Debtors respectfully request that the undisputed fees and expenses incurred by Stretto in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the United States Trustee for the Southern District of New York (the "U.S. Trustee"), counsel for the

Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party

in interest who specifically requests service of the monthly invoices.  If any dispute arises relating

to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt

to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter

from the Court.

14.      Prior to the Petition Date, the Debtors provided Stretto an advance in the amount

of $50,000.  Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to

have the advance replenished to the original advance amount, and thereafter, to hold the advance

under the Engagement Agreement during these chapter 11 cases as security for the payment of

fees and expenses incurred under the Engagement Agreement.

15.      Additionally, under the terms of the Engagement Agreement, the Debtors have

agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees,

representatives, and agents under certain circumstances specified in the Engagement Agreement,

except in circumstances resulting solely from Stretto's bad faith, gross negligence, or willful

misconduct or as otherwise provided in the Engagement Agreement or Order.  The Debtors believe

that such an indemnification obligation is customary, reasonable, and necessary to retain the

services of a Claims and Noticing Agent in these chapter 11 cases.

**Disinterestedness**

16.      Although the Debtors do not propose to employ Stretto under section 327 of the

Bankruptcy Code pursuant to this Application (such retention will be sought by separate

application), Stretto has nonetheless reviewed its electronic database to determine whether it has

any relationships with the creditors and parties in interest provided by the Debtors, and, to the best

of the Debtors' knowledge, information, and belief, and except as disclosed in the Betance

9

Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

17.        Moreover, in connection with its retention as Claims and Noticing Agent, Stretto represents in the Betance Declaration, among other things, that:

(a)     Stretto is not a creditor of the Debtors;

(b)     Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)     By accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)     In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e)     Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)     Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     In its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

(h)     Stretto shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(i)     Stretto will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

18.        Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

10

## Compliance with Claims and Noticing Agent Protocol

19.     This Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court.  To the extent that there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

## Basis for Relief

20.     Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21.     In addition, Local Rule 5075-1(a) provides:

> The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

Local Rule 5075-1(a).

22.     The Court has promulgated the Claims Agent Protocol "to ensure the use of competitive process in the selection of claims agents in instances where the Court has authorized such use under 28 U.S.C. § 156(c)."  In compliance with the Claims Agent Protocol, the Debtors

obtained and reviewed proposals from three court-approved claims and noticing agents, including Stretto. The Debtors provided each court-approved claims and noticing agent the basic facts about these chapter 11 cases and asked each claims and noticing agent to submit a written proposal based upon such facts. The Debtors also asked each claims and noticing agent case-specific pricing questions. Ultimately, the Debtors chose Stretto as their claims and noticing agent based on its capability and favorable price terms.

23.    Local Rule 5075-1(b) requires the retention, pursuant to an order of the Court, of an approved claims and noticing agent in a case having 250 or more creditors and/or equity security holders, which is applicable to these chapter 11 cases.

24.    Given the number of creditors and other parties in interest involved in these chapter 11 cases, the Debtors seek an order appointing Stretto as the claims and noticing agent in these chapter 11 cases effective as of the Petition Date pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1 to relieve this Court and the Clerk's Office of administrative burdens.

25.    At the Debtors' request, Stretto has been serving in a Claims and Noticing Agent capacity since prior to the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date so that Stretto may be compensated for its pre-application services in these chapter 11 cases. The Debtors believe that no party in interest will be prejudiced by the granting of employment as of the Petition Date, as provided herein, because Stretto has provided and continues to provide valuable services to the Debtors' estates in the interim period.

26.    Courts in this jurisdiction have routinely approved employment effective as of the Petition Date for claims and noticing agents similar to that requested herein. *See, e.g.*, *In re A.B.C. Carpet Co., Inc.*, No. 21-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co.*,

No. 21-11051 (Bankr. S.D.N.Y June 8, 2021); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Sept. 13, 2020) (approving appointment of claims and noticing agent effective as of the petition date); *In re Frontier Comms. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y Apr. 20, 2020) (same); *In re Hollander Sleep Products, LLC*, No. 19-11608 (MEW) (Bankr. S.D.N.Y. May 23, 2019) (same); *In re Sungard Availability Servs. Capital, Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. June 11, 2019) (same); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2019) (same).

27.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, the Debtors respectfully request entry of the Order, pursuant to 28 U.S.C. § 156(c) of the Bankruptcy Code and Local Rule 5075-1, approving this Application to retain and employ Stretto as the Claims and Noticing Agent in these chapter 11 cases, effective as of the Petition Date.

28.    For all of the foregoing reasons, the Debtors believe that the appointment of Stretto as the Claims and Noticing Agent in these chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by Stretto under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

29.    By separate application, the Debtors will seek authorization to retain and employ Stretto as the administrative agent in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code, because the administration of the chapter 11 cases will also require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

## Motion Practice

30.　　This Application includes citation to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application.  Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## Notice

31.　　The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

32.　　No prior request for the relief sought in this Application has been made to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the

relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

| | |
|---|---|
| New York, New York<br>Dated: July 13, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:          jsussberg@kirkland.com<br><br>- and -<br><br>Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)<br>Ross M. Kwasteniet, P.C. (*pro hac vice* pending)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:          patrick.nash@kirkland.com<br>                   ross.kwasteniet@kirkland.com<br><br>*Proposed Counsel to the Debtors and*<br>*Debtors in Possession* |

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## ORDER (I) AUTHORIZING AND APPROVING
## THE APPOINTMENT OF STRETTO, INC. AS CLAIMS
## AND NOTICING AGENT AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) appointing Stretto, Inc. ("Stretto") as the claims and noticing agent (the "Claims and Noticing Agent") to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases, and (iii) provide such other administrative services—as required by the Debtors—that would fall within the purview of services to be provided by the Clerk's Office, and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

consistent with Article III of the United States Constitution; and this Court having found that venue

of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and this Court having found that the relief requested in the Application is in the best interests

of the Debtors' estates, their creditors, and other parties in interest; and this Court having found

that the Debtors' notice of the Application and opportunity for a hearing on the Application were

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Application and having heard the statements in support of the relief requested therein

at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Application and at the Hearing establish just cause for the relief

granted herein; and upon all of the proceedings had before this Court; and after due deliberation

and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is approved as set forth herein.

2.      The Debtors are authorized to retain Stretto as Claims and Noticing Agent effective

as of the Petition Date under the terms of the Engagement Agreement, and Stretto is authorized

and directed to perform noticing services and to receive, maintain, record, and otherwise

administer the proofs of claim filed in these chapter 11 cases, and to perform all related tasks, all

as described in the Application.

3.      Stretto shall serve as the custodian of court records and shall be designated as the

authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and

directed to maintain official claims registers for each of the Debtors, to provide public access to

every proof of claim filed in these chapter 11 cases unless otherwise ordered by the Court, and to

provide the Clerk's Office with a certified duplicate thereof upon the request of the Clerk's Office.

4.      Stretto is authorized and directed to provide an electronic interface for filing proofs of claim—to the extent necessary—and to obtain a post office box or address for the receipt of proofs of claim.

5.      Stretto is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.  With respect to services provided prior to the effective date of a chapter 11 plan in these chapter 11 cases, Stretto shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided, however,* that the parties may seek resolution of the matter from this Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtors' estates.

10.     Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and, thereafter, Stretto may hold its advance under the Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The limitation of liability section in paragraph 10 and the arbitration section in paragraph 16 of the Engagement Agreement are deemed to be of no force or effect with respect to the services to be provided pursuant to this Order, and Stretto's liability during the chapter 11 cases shall not be limited to either (a) the total amount billed or billable to the Debtors for the portion of the particular work that gave rise to the loss or damage, or (b) the total amount billed to the Debtors and paid to Stretto for the services contemplated under the Engagement Agreement.

12.     All requests by Stretto for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, *however*, that in no event shall Stretto be indemnified in the case for its own bad faith, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

13.     In the event that Stretto seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Stretto's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Stretto is unable to provide the services set out in this Order, Stretto
will immediately notify the Clerk's Office and the Debtors' attorney and, upon approval of this
Court, cause to have all original proofs of claim and computer information turned over to another
claims and noticing agent with the advice and consent of the Clerk's Office and the Debtors'
attorney.

15.     The Debtors may submit a separate retention application, pursuant to section 327
of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Stretto but
is not specifically authorized by this Order.

16.     Stretto shall not cease providing claims processing services during these chapter 11
cases for any reason, including nonpayment, without an order of this Court; *provided*, *however*,
that Stretto may seek such an order on expedited notice by filing a request with this Court with
notice of such request to be served on the Debtors, the U.S. Trustee, and any official committee of
creditors appointed in these chapter 11 cases by facsimile or overnight delivery; *provided*, *further*,
that except as expressly provided herein, the Debtors and Stretto may otherwise terminate or
suspend other services as provided under the Engagement Letter.

17.     After entry of an order terminating Stretto's services as the Claims and Noticing
Agent, upon the closing of these chapter 11 cases, or for any other reason, Stretto shall be
responsible for archiving all proofs of claim with the Federal Archives Record Administration,
if applicable.

18.     Notwithstanding the relief granted in this Order, any payment made by the Debtors
pursuant to the authority granted herein shall be subject to and in compliance with any orders
entered by the Court approving the Debtors' entry into any postpetition debtor in possession
financing facility and any budget in connection therewith and/or authorizing the Debtors' use of

cash collateral and any budget in connection therewith.

19.     Stretto shall exclude the Debtors' bankruptcy cases and related information, as well as information regarding any of the Debtors' non-debtor affiliates, from any file sharing arrangement with Xclaim, Inc. or any other entity operating a marketplace or similar service to facilitate trade or resolution of claims held against bankrupt or insolvent entities.

20.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors and Stretto are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

24.     Notwithstanding anything in the Engagement Agreement to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

25.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Engagement Agreement**

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

STRETTO

## Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of June 22, 2022 between Stretto, Inc. ("**Stretto**") and ___Celsius Network Limited___ (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**"). The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1]     The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

1

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B



(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $ 50,000.00 . Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses. Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount. Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Company of such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file applications with the Bankruptcy Court to retain Stretto (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

STRETTO

4. **Confidentiality**

    (a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

    (b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

5. **Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7. **Term and Termination**

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

    (b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

    (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

3

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

**≡ STRETTO**

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss. In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

4

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B



(b)  The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c)  Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d)  Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as <u>Exhibit A</u>, which are incorporated herein by reference.

(e)  Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. California Consumer Privacy Act.**

(a)  Definitions.  In this Section,
   (i)   **"CCPA"** means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii)  **"Personal Information"** has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
   (iii) **"Commercial Purposes,"** **"Sell,"** **"Business,"** and **"Service Provider"** have the same meanings assigned to them in section 1798.140 of the CCPA.

(b)  Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c)  Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

**13. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

**14. Force Majeure**

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance,

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

**STRETTO**

act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

### 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

### 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

### 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

### 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:          Stretto
                        410 Exchange, Ste. 100
                        Irvine, CA 92602

6

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

STRETTO

Attn: Sheryl Betance
Tel: 714.716.1872
Email: sheryl.betance@stretto.com

If to the Company:     Ron Deutsch
Celsius Network Limited
121 River Street, PH05
Hoboken, NJ  07030
Email: ron.deutsch@celsius.network

With a copy to:     Brad M. Kahn
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 100376
Email: bkahn@akingump.com

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

STRETTO

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

By: Sheryl Betance

Title: Senior Managing Director

Celsius Network Limited

By: Alex Mashinsky

Title: CEO

8

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

STRETTO

**Exhibit A**

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

**≡ STRETTO**

## <u>GDPR Addendum</u>

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

### RECITALS

**WHEREAS,**

(A)     The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)     The Company acts as a Controller of the Company Personal Data.

(C)     The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Company instructs the Processor to process Company Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE,** the Company and the Processor agree as follows:

1.      **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)     "**Addendum**" shall mean this GDPR Addendum;

(b)     "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)     "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)     "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)     "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

1

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

≡ STRETTO

(f)     **"Technical and organizational security measures"** means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)     The terms **"Commission"**, **"Controller"**, **"Data Subject"**, **"Member State"**, **"Personal Data"**, **"Personal Data Breach"**, **"Processor"**, **"Processing"**, **"Special Categories of Personal Data"**, and **"Supervisory Authority"** shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.     **Obligations of the Company.**  The Company agrees and warrants:

(a)     that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)     that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)     that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)     that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)     that it will ensure compliance with the technical and organizational security measures; and

(f)     that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.     **Obligations of the Processor.**  The Processor agrees and warrants:

(a)     to comply with the Data Protection Laws;

(b)     to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

**STRETTO**

(c)   that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)   that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)   that it will promptly notify the Company about:

    i.   any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

    ii.   any accidental or unauthorized access; and

    iii.   any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)   to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)   to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)   that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

4.   **Obligations after Termination of Personal Data Processing Services.**

(a)   The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

3

DocuSign Envelope ID: 8FAC5DAF-FBDC-4E65-A894-962E8548711B

STRETTO

 

(b)    The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.    **Notices.** All notices and communications given under this Addendum must be delivered as provided for by the Agreement.

## **Exhibit B**

**Betance Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] ) | Case No. 22-10964 (___) |
| ) | |
| Debtors. ) | (Joint Administration Requested) |
| ) | |

**DECLARATION OF SHERYL BETANCE**
**IN SUPPORT OF DEBTORS' APPLICATION SEEKING ENTRY OF AN ORDER**
**(I) AUTHORIZING AND APPROVING THE APPOINTMENT OF STRETTO, INC.**
**AS CLAIMS AND NOTICING AGENT AND (II) GRANTING RELATED RELIEF**

I, Sheryl Betance, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc. ("Stretto"), a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine, California 92602.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (this "Declaration") is made in support of the above-captioned debtors' (collectively, the "Debtors") *Application Seeking Entry of an Order (I) Authorizing and Approving the Appointment of Stretto, Inc. as Claims and Noticing Agent and (II) Granting Related Relief*, filed contemporaneously herewith (the "Application").[2]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

**Qualifications**

3.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Stretto's professionals have acted as the official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's cases include:  *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 13, 2022); *In re A.B.C. Carpet Co., Inc.*, No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.,* No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC,* No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.,* No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); *In re Dean & Deluca N.Y., Inc.,* No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020); *In re Seabras 1 USA, LLC*, No. 19-14006 (SMB) (Bankr. S.D.N.Y. Dec. 27, 2019); *In re Agera Energy LLC*, No. 19-23802 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); and *In re Barneys New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 7, 2019).[3]

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration.  Copies of these cited orders are available upon request to the Debtors' proposed counsel.

### Services to be Rendered

4.        As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto

will perform, at the request of the Office of the Clerk of the Court (the "Clerk's Office"), the

services specified in the Application and the Engagement Agreement, and, at the Debtors' request,

any related administrative, technical, and support services as specified in the Application and the

Engagement Agreement.  In performing such services, Stretto will charge the Debtors the rates set

forth in the Engagement Agreement, which is attached as Exhibit 1 to Exhibit A to the Application.

5.        Stretto represents, among other things, the following:

(a)    Stretto is not a creditor of the Debtors;

(b)    Stretto will not consider itself employed by the United States government
and shall not seek any compensation from the United States government in
its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)    By accepting employment in these chapter 11 cases, Stretto waives any
rights to receive compensation from the United States government in
connection with these chapter 11 cases;

(d)    In its capacity as the Claims and Noticing Agent in these chapter 11 cases,
Stretto will not be an agent of the United States and will not act on behalf
of the United States;

(e)    Stretto will not employ any past or present employees of the Debtors in
connection with its work as the Claims and Noticing Agent in these chapter
11 cases;

(f)    Stretto is a "disinterested person" as that term is defined in section 101(14)
of the Bankruptcy Code with respect to the matters upon which it is to be
engaged;

(g)    In its capacity as Claims and Noticing Agent in these chapter 11 cases,
Stretto will not intentionally misrepresent any fact to any person;

(h)    Stretto shall be under the supervision and control of the Clerk's Office with
respect to the receipt and recordation of claims and claim transfers;

(i)    Stretto will comply with all requests of the Clerk's Office and the guidelines
promulgated by the Judicial Conference of the United States for the
implementation of 28 U.S.C. § 156(c); and

> (j)    None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

6.     Although the Debtors do not propose to retain Stretto under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of potential parties in interest (the "Potential Parties in Interest") in these chapter 11 cases.  A list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' largest unsecured creditors on a consolidated basis, the U.S. Trustee and persons employed in the office of the U.S. Trustee, and other parties. The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries.  Stretto's internal database also includes Stone Point Capital LLC ("Stone Point"), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "Stone Point Searched Parties").  The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision.  At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest.  Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to promptly file a supplemental declaration.

7.     To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto nor any of its professionals have any materially adverse connection to the Debtors, their creditors or other relevant parties.  Stretto has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition,

in matters unrelated to these chapter 11 cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in these chapter 11 cases.

8.      Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.  Based upon a review of the Potential Parties in Interest:

- Alvarez & Marsal has been identified as a Potential Party in Interest.  Richard Newman, an employee of Alvarez & Marsal, is a current client of Stretto's chapter 7 software business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- Ashby & Geddes, PA has been identified as a Potential Party in Interest.  Ashby & Geddes, PA is a current client of Stretto's chapter 7 software business, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- Additionally, the list of Potential Parties in Interest includes entities, as set forth on **Exhibit 1** attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services.  However, to the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.

- Voyager Digital Holdings, Inc., a client of Stretto's Corporate Restructuring business, has been identified as a Potential Party in Interest. However, to the best of my knowledge, such relationship is unrelated to these chapter 11 cases.

9.      To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the Southern District of New York, the U.S. Trustee for Region 2, or any attorney known by Stretto to be employed in the Office of the U.S. Trustee serving the Southern District of New York.

10.      Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Except

5

as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed. To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by, firms that are Potential Parties in Interest or that have filed a notice of appearance in these chapter 11 cases.

11.      Stretto and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest. Except as otherwise set forth herein, to the best of my knowledge, Stretto does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified as Potential Parties in Interest or who have filed a notice of appearance in these chapter 11 cases. Kirkland & Ellis LLP has been identified as a Potential Party in Interest. Stretto utilizes the services of Kirkland & Ellis LLP in matters unrelated to these chapter 11 cases.

12.      In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point. Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut. The firm has raised and managed eight private equity funds – the Trident Funds – with aggregate committed capital of approximately $25 billion. Stone Point targets investments in the global financial services industry and related sectors.

13.      The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules. Stretto has searched the names of the Debtors and the names of the Potential Parties in Interest against the Stone Point Searched Parties.

In addition, following the Petition Date, Stretto will provide Stone Point with the names of the Debtors, any non-Debtor affiliates, and the Debtors' significant equity holders, and request that Stone Point search such names against its investments to confirm whether Stone Point has any relationship to such entities.

14.    Based solely upon the foregoing search, Stretto has determined that StarStone Insurance Holdings Limited, owned by Trident Fund V, has been identified as one or more of the Debtors' insurance providers.  Additionally, based solely upon the foregoing search, Stretto has determined that HireRight, owned by Trident Fund VII, has been identified as one or more of the Debtors' vendors.  However, to the best of my knowledge, Stretto's relationships to these entities does not create any adverse interest against the Debtors' estates that would present a disqualifying conflict of interest, and there are no other material connections that require disclosure.  To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors, Stretto will promptly file a supplemental disclosure.  Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

15.    From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge.  Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision

to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

16.    From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates. Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained. Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto is aware that one employee has funds deposited on the Debtors' platform.

17.    To the best of my knowledge, Stretto: (a) does not hold or represent an interest adverse to the Debtors' estates; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtors, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

18.    Stretto is party to an agreement with Xclaim, Inc. ("Xclaim"), whereby Stretto provides Xclaim with a daily formatted data file containing a debtor's public claims register to

facilitate claims trading on Xclaim's platform.  In exchange, Stretto receives a small processing fee.  Stretto only provides Xclaim with information found on publicly-available claims registers. Nothing in the agreement impacts any other party's ability to access public claims registers.

19.     Stretto hereby stipulates that the Debtors' claims registers shall be excluded from Stretto's arrangement with Xclaim, and Stretto shall not receive any compensation with respect to such arrangement related to the Debtors' claims registers.

20.     Stretto has no contract with any other party under which Stretto (a) provides or will provide exclusive access to claims data or (b) will be compensated for claims data that is made available by Stretto.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.


Dated: July 13, 2022                          /s/ *Sheryl Betance*
                                              Sheryl Betance
                                              Senior Managing Director
                                              Stretto, Inc.
                                              410 Exchange, Ste. 100
                                              Irvine, California 92602

## **Exhibit 1**

4Imprint Inc.
AlixPartners LLP
Amazon Capital Service Inc.
AT&T
Atlassian Pty Ltd
CDW
Comcast
CSC
CT Corporation
Dell Financial Services Inc.
FedEx
Hertz Corporation
JB Hunt Transport Inc.
Kforce Inc.
Kroll Advisory LLC
Microsoft
Regus Management LLC
Securitas Security Services Inc.
Shutterstock Inc.
Solar Winds
Spectrum Energy, Inc.
Staples Contract & Commercial, Inc
Verizon
Zoho Corporation