Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION SEEKING ENTRY**
**OF INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**THE DEBTORS TO (A) PAY THEIR OBLIGATIONS UNDER**
**PREPETITION INSURANCE POLICIES, (B) CONTINUE TO**
**PAY CERTAIN BROKERAGE FEES, (C) RENEW, SUPPLEMENT,**
**MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (D) MAINTAIN**
**THEIR SURETY BOND PROGRAM AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1.    The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

(a) authorizing the Debtors to (i) pay their obligations under prepetition insurance policies, (ii) continue to pay certain brokerage fees, (iii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, and (iv) maintain their Surety Bond Program (as defined below) on an uninterrupted basis; and (b) granting related relief.  In addition, the Debtors request that the Court (as defined herein) schedule a final hearing in approximately 21 days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and

2

provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius employs a global workforce of approximately 670 employees and has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration"), both filed contemporaneously with this Motion and incorporated by reference herein.[2] As described in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

7.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrent with the filing of this Motion, the Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## The Insurance Policies and Related Payment Obligations

8.      In the ordinary course of business, the Debtors maintain 35 insurance policies that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). These policies provide coverage for general commercial business risks including, but not limited to, coverage for business property liability, personal property liability, director and officer ("D&O") liability, excess liability, cyber liability, and employer's liability (each, an "Insurance Policy" and collectively, the "Insurance Policies").   A schedule of the Insurance Policies is attached as **Exhibit C**.[3]

9.      Continuation and renewal of the Insurance Policies and entry into new insurance policies, as applicable, is essential to the preservation of the value of the Debtors' business and operations.  Moreover, in many instances, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the requirements of the United States Trustee for the Southern District of New York (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  The Debtors request authority to maintain their existing Insurance Policies, pay any prepetition obligations related thereto, and to renew, supplement, or enter into new Insurance Policies in the ordinary course of business on a postpetition basis consistent with past practice.

---

[3]    In addition to the Insurance Policies listed in **Exhibit C**, the Debtors maintain insurance policies with respect to, among other things, workers' compensation.  These programs are described, and relief is requested with respect to such programs, in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.  Furthermore, although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Insurance Policies.  By this Motion, the Debtors request relief applicable to all Insurance Policies regardless of whether such Insurance Policy is specifically identified on **Exhibit C**.

I.    **Premium Payments**.

10.    As of the Petition Date, the Debtors have paid $15.6 million in premiums for their insurance policies (the "Insurance Premiums"), excluding applicable taxes and deductibles, over the past 12 months.  These Insurance Premiums include all brokerage and consulting fees, and commissions.  The Insurance Policies are generally one year in length and renew at various points throughout the year.

11.    Although the Debtors do not believe there are any amounts outstanding on account of the Insurance Premiums as of the Petition Date, out of an abundance of caution, the Debtors seek authority to continue honoring all payment obligations under the Insurance Policies in the ordinary course of business to ensure uninterrupted coverage thereunder.

II.    **Deductibles**.

12.    Certain of the Insurance Policies require the Debtors to pay a deductible (collectively, "Deductibles").  Generally, if a claim is made against the Insurance Policies, the Debtors' applicable Insurance Carrier will administer the claim and make payments in connection therewith.  Deductibles, if any, are offset against such payments, and the amount of Deductibles can be as much as $3 million per incident.  The Debtors seek authority to continue honoring any Deductible that may exist currently or arise under the Insurance Policies in the ordinary course of business and to ensure uninterrupted coverage under the Insurance Policies.

III.    **The Insurance Brokers**.

13.    The Debtors obtain their Insurance Policies through three brokers, Marsh McLennan Companies, Inc. ("Marsh"), CAC Specialty ("CAC"), and Tikotsky Insurance Agency ("Tikotsky," together with Marsh and CAC, the "Insurance Brokers").  The Insurance Brokers assist the Debtors in obtaining insurance coverage for certain of their operations in the most cost-effective manner, negotiating policy terms, provisions, and premiums, assisting the Debtors with claims, and

5

providing ongoing support throughout the applicable policy periods.  The Insurance Brokers' fees for services rendered are included in the premiums paid on the Insurance Policies (the "Insurance Brokerage Fees").

14.     As of the Petition Date, the Debtors do not believe there are any unpaid prepetition obligations in connection with the Insurance Brokerage Fees.  Out of an abundance of caution, the Debtors seek authority to honor any prepetition amounts owed in connection with the Insurance Brokerage Fees and to pay any Insurance Brokerage Fees that may arise on a postpetition basis in the ordinary course of business.

15.     The Debtors believe that continuation of the Insurance Brokers' services is necessary to assure the Debtors' ability to secure Insurance Policies on advantageous terms at competitive rates, facilitate the proper maintenance of the Debtors' Insurance Policies postpetition, administer insurance-related claims on a postpetition basis, and ensure adequate protection of the Debtors' property postpetition.  To the extent any prepetition amounts remain outstanding, the Debtors seek authority to pay and/or reimburse any amounts owed on account of Insurance Brokerage Fees or any other prepetition obligations in full, in cash, in the ordinary course of business and to continue paying Insurance Brokerage Fees on a postpetition basis in the ordinary course of business and consistent with past practices.

**The Surety Bond Program**

16.     In the ordinary course of business, certain statutes, rules, contracts, and regulations require that the Debtors provide surety bonds to certain third parties, often to governmental units or other public agencies, to secure the Debtors' payment or performance of certain obligations (the "Surety Bond Program").  The Surety Bonds provide coverage for, among other things, certain statutes, rules, contracts, and regulations requiring the Debtors to provide surety bonds to certain

third parties, often to governmental units or other public agencies, to secure the Debtors' payment

or performance of certain obligations, and the Debtors' obligations related to their platform.  Many

states classify businesses engaged in the exchange of virtual currency, such as the Debtors'

business, as lending licenses.  As such, the Debtors are required to obtain a separate license in all

states from which and to which money is transmitted, and a surety bond is required in connection

with certain state licensing protocols.[4]  Failing to provide, maintain, or timely replace their surety

bonds will prevent the Debtors from undertaking essential functions related to their operations.

17.     As of the Petition Date, the Debtors collectively maintain 2 surety bonds in the

aggregate amount of approximately $125,000 (the "Surety Bonds").  A schedule of the Surety

Bonds is attached hereto as **Exhibit D**.  The premiums related to the Surety Bond Program

generally are determined on an annual basis and are paid by the Debtors when the bonds are issued

and annually upon each renewal (the "Surety Premiums," together with the Insurance Premiums,

the "Premium Payments").  The total estimated Surety Premiums for the Surety Bonds is

approximately $2,500 per year.

18.     The purpose of the surety bond is to shift the risk of the Debtors' nonperformance

or nonpayment from the Debtors to a surety, subject to the terms of the bond.  A surety bond is

unlike an insurance policy, in that if a surety incurs a loss or expense in relation to a surety bond,

such surety is entitled to recover the full amount of that loss or expense from the principal and

contractual indemnitors (*i.e.*, the applicable Debtor).  To that end, the Surety may require the

Debtors to furnish the Surety with cash collateral or other collateral, such as letters of credit, to

---

[4]     Although **Exhibit D** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more
Surety Bonds.  By this Motion, the Debtors request relief applicable to all Surety Bonds, regardless of whether
such Surety Bond is specifically identified on **Exhibit D**.  Further, to the extent there is a discrepancy between
the schedule of Surety Bonds listed in **Exhibit D** and the Surety Bonds, the Surety Bonds and business records
relating thereto shall control.

back the Surety Bonds and effectively indemnify any loss, cost, or expense it may incur on account of the issuance of the Surety Bonds.[5]

19.      As of the Petition Date, the Debtors do not believe they owe any amounts on account of the Surety Premiums.  Out of an abundance of caution, and to ensure uninterrupted coverage, the Debtors request authority to continue paying the Surety Premiums in the ordinary course of business on a postpetition basis, including any prepetition obligations related thereto.[6]

20.      The Debtors obtain their Surety Bonds through their surety broker, Arthur J. Gallagher & Co. (the "Surety Broker").  The Surety Broker assists the Debtors in, among other things, obtaining the Surety Bonds and evaluating bond offerings.  It also assists the Debtors with the procurement and negotiation of the Surety Bonds, enabling the Debtors to obtain the bonds on advantageous terms and at competitive rates.  The Debtors pay the Surety Broker a fee for all brokerage services (the "Surety Brokerage Fees," together with the Insurance Brokerage Fees, the "Brokerage Fees").  The Debtors pay the Surety Brokerage Fees on account of brokerage services as part of the Surety Premium payments for each Surety Bond.  As of the Petition Date, the Debtors do not believe there are any unpaid prepetition obligations due and owing in connection with the Surety Brokerage Fees.  Out of an abundance of caution, the Debtors seek authority to honor any prepetition amounts owed in connection with the Surety Brokerage Fees and to pay any Surety Brokerage Fees that may arise on a postpetition basis in the ordinary course of business to ensure uninterrupted coverage under the Surety Bond Program.

---

[5]    For the avoidance of doubt, nothing in this Motion shall require the Surety to issue any new bonds or maintain, modify, renew, or increase the penal sum or amount of any of the existing Surety Bonds.

[6]    The Debtors request authority to honor obligations and renew all Surety Bonds, as applicable, notwithstanding any failure of the Debtors to include a particular Surety Bond on **Exhibit D**.

21.     To continue their business operations during these chapter 11 cases, the Debtors must be able to provide financial assurance to state governments, regulatory agencies, contract counterparties, and other third parties.  This in turn requires the Debtors to maintain the existing Surety Bond Program, including, without limitation:  (a) paying Surety Premiums as they come due; (b) renewing or potentially acquiring additional bonding capacity, as necessary, in the ordinary course of business; (c) requesting releases from duplicate bonding obligations; (d) canceling, revising, and/or supplementing Surety Bonds; (e) renewing, supplementing, and/or canceling letters of credit or other forms of collateral as may be necessary; (f) paying Surety Brokerage Fees as they come due; (g) providing collateral and complying with collateral and indemnity requirements in the ordinary course of business; (h) replacing the Surety Broker as may be necessary; and (i) executing other agreements in connection with the Surety Bond Program. Accordingly, the Debtors request authority to honor any amounts owed on account of the Surety Bond Program, to continue the Surety Bond Program in the ordinary course of business, and to continue acquiring additional bonds to ensure that the Surety Bond Program and the Debtors' business operations remain uninterrupted on a postpetition basis.

### Basis for Relief

**I.      The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors To Maintain Insurance Coverage and Satisfy Their Insurance Obligations**.

22.     As discussed above, the Debtors' existing Insurance Policies and Surety Bond Program provide a comprehensive range of protection for the Debtors' business, properties, and assets.  As such, it is essential that the Debtors' insurance coverage and Surety Bond Program continue in full force and effect during the course of these chapter 11 cases.  Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion

or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  Similarly, certain of the Insurance

Policies are required by various state and federal regulations.  In addition, the Operating Guidelines

and Reporting Requirements for Debtors in Possession and Trustees (the "U.S. Trustee

Guidelines")[7] require that a debtor "shall maintain" certain types of insurance coverage following

the Petition Date.  *See* U.S. Trustee Guidelines, § 6.

23.     To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy

Code, applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors

respectfully request the authority to:  (a) pay the prepetition amounts currently due and owing

under the Insurance Policies in the ordinary course of business, including any prepetition amounts

due or that may come due in connection with the Premium Payments and Brokerage Fees;

(b) continue to honor obligations arising under the Insurance Policies and Surety Bond Program;

and (c) to renew, supplement, modify, or purchase insurance coverage in the ordinary course.

## II.     **Maintaining, Renewing, Supplementing, Entering into New Policies and Surety Bonds, and Paying Obligations Under the Insurance Policies and Surety Bonds in the Ordinary Course of Business Are Each Warranted**.

24.     The Court may also authorize the Debtors to continue their prepetition practices

with respect to their Insurance Policies and Surety Bond Program, including maintaining,

renewing, supplementing, and entering into new Insurances Policies and Surety Bonds, as such

practices are in the ordinary course of the Debtors' business.  Alternatively, to the extent any such

practices fall outside of the ordinary course of business, the Court should authorize the Debtors to

maintain, renew, or enter into new Insurance Policies and Surety Bonds on a postpetition basis, as

such relief is in the Debtors' sound business judgment.

---

[7]     The U.S. Trustee Guidelines are available at https://www.justice.gov/ust-regions- r02/file/region_2_operating_ guidelines.pdf/download.

25.     Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing." The Bankruptcy Code does not define "ordinary course of business." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). In determining whether a transaction is in the ordinary course of business, this Court and others have adopted the two-part "horizontal dimension" and "vertical dimension" test. *In re Crystal Apparel, Inc.*, 207 B.R. 406, 409 (Bankr. S.D.N.Y. 1997). Under the horizontal dimension test, the court must analyze whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. *Id.* Under the vertical dimension test, the court must analyze the transaction from the perspective of a hypothetical creditor and determine "whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id.* In other words, under this two-part test, "the touchstone of ordinariness is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *In re Drexel Burnham Lambert Grp., Inc.*, 157 B.R. 532, 537 (S.D.N.Y. 1993).

26.     Here, the Debtors seek to continue their existing Insurance Policies and Surety Bond Program and continue to honor their obligations thereunder in the ordinary course of their business on a postpetition basis. Such obligations include, among other things, renewing the Insurance Policies and Surety Bond Program when they expire, and paying the premiums when they come due. Further, the Insurance Policies and Surety Bond Program cover obligations that are required by law or regulation, as described above. The Debtors' failure to maintain, renew, or timely replace existing Insurance Policies and Surety Bonds may jeopardize the Debtors' ability to conduct their operations.

27.     Although the Debtors believe continuing the Insurance Policies and Surety Bond Program is within their authority to continue in the ordinary course of business, out of an abundance of caution and to ensure authority to pay any prepetition obligations related to the Insurance Policies and Surety Bond Program, the Debtors are seeking Court approval for the Debtors' authority to maintain, continue, renew, revise, and supplement the Insurance Policies and Surety Bond Program under sections 105(a) and 363(b) of the Bankruptcy Code.  The use of estate property should be authorized under section 363(b) so long as a sound business purpose exists for the transaction. *See, e.g., In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)).

28.     Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions.  *See Integrated Res.,* 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *In re First Wellington Canyon Assocs.,* No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (stating that "the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").  In addition, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate

12

to carry out the provisions of this title."  11 U.S.C. § 105(a).

29.    Similarly, to the extent applicable, courts in this district generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See In re Ionosphere Clubs,* 98 B.R. at 175 (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.),* 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

30.    Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also In re James A. Phillips*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim."  *In re CoServ*, 273 B.R. at 497.

31.    Further, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See In re C.A.F. Bindery, Inc*., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996);

*see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization); *Ionosphere Clubs,* 98 B.R. at 176 (holding that a court may authorize payments of prepetition obligations under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity")).

32.    The Debtors submit that it is also in the best interests of their estates to have the ability to revise, extend, supplement, or change insurance coverage, as necessary, on a postpetition basis.  Indeed, the Debtors' Insurance Policies and Surety Bond Program are essential to the preservation of the value of the Debtors' business, properties, and assets and their ability to successfully administer these chapter 11 cases.  Accordingly, if any of the Insurance Policies or Surety Bond Program lapse or new coverage is required or necessary, it is imperative that the Debtors are able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.  The Insurance Policies and Surety Bond Program protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.

33.    There is also sufficient basis to permit the Debtors to pay any prepetition obligations related to the Insurance Policies and Surety Bond Program.  The failure to pay premiums, brokerage fees, and related insurance expenses when due may harm the Debtors' estates in a number of ways.  Specifically, the Insurance Carriers may refuse to renew the Debtors' Insurance Policies, which will require the Debtors to obtain replacement policies and possibly reconfigure their risk management program.  That scenario would require the commitment of significant resources and could result in less favorable coverage or terms from the Debtors'

14

insurers.  Additionally, the Insurance Carriers could attempt to terminate the Debtors' existing policies, which could threaten the Debtors' ability to continue operating their business given the Debtors' myriad regulatory and contractual obligations to maintain specific amounts and types of insurance coverage.

34.    Courts in this district have routinely granted relief similar to that requested herein. *See, e.g.*, *In re Revlon, Inc.*, No. 22-10764 (DSJ) (Bankr. S.D.N.Y. June 16, 2022) (authorizing debtors to continue their insurance and surety payments on an interim basis); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Oct. 27, 2021) (same, on a final basis); *In re Lakeland Tours*, LLC, 20-11647 (JLG) (Bankr. S.D.N.Y. July 26, 2020) (same); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. June 29, 2020) (same); *In re Frontier Commc'ns. Corp.,* No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same).[8]

35.    The Debtors' ability to maintain the Insurance Policies and the Surety Bonds, to renew, supplement, and modify the same as needed, and to enter into new insurance policies and surety bonds as needed in the ordinary course of business, is essential to preserving the value of the Debtors' businesses, operations, and assets.  In many instances, insurance or surety coverage is required by statutes, rules, regulations, and contracts that govern the Debtors' commercial activities, including the requirements of the U.S. Trustee that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Further, in the ordinary course of business, the Debtors routinely acquire new mining equipment (the "Mining Rigs") for their cryptocurrency mining business.  Consequently, as the Debtors add new Mining Rigs to the existing Insurance Policies, the applicable Insurance Carrier will increase premiums in order to cover the additional

---

[8]    Because of the voluminous nature of these orders, such orders have not been attached to this Motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

property (the "Increased Premiums").  Although the premiums will increase when the Debtors take possession of the Mining Rigs, the Debtors cannot be certain when the Increased Premiums will take effect or the precise cost of the Increased Premiums.  To properly insure the Mining Rigs, the Debtors must be able to continue to make payments on the relevant Insurance Policies, including any Increased Premiums as they arise.  Accordingly, the Debtors seek authorization to maintain the Insurance Policies and the Surety Bonds, to pay related prepetition obligations, to renew, supplement, or modify the Insurance Policies and the Surety Bonds as needed, and to enter into new insurance policies and surety bonds in the ordinary course of business.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

36.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business.   In addition, under the Debtors' existing cash management system, which is described in further detail in a separate motion, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

37.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested

could hinder the Debtors operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

38.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notices of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

39.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should

17

not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

40.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

41.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) the Insurance Carriers; (h) the Sureties; (i) the Insurance Brokers; (j) the Surety Broker; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

42.     No prior request for the relief sought in this Motion has been made to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and

Final Order granting the relief requested herein and such other relief as the Court deems

appropriate under the circumstances.

New York, New York
Dated: July 14, 2022

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:              jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:              patrick.nash@kirkland.com
                       ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY THEIR OBLIGATIONS UNDER PREPETITION INSURANCE POLICIES, (B) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (C) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (D) MAINTAIN THEIR SURETY BOND PROGRAM AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to (i) pay their obligations under the Insurance Policies entered into prepetition, (ii) continue to pay certain Brokerage Fees, (iii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, and (iv) maintain their Surety Bonds, (b) granting related relief, and (c) scheduling a final hearing to consider approval of the Motion on a final basis; all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2022, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2022, and shall be served on:  (a)  the Debtors, Celsius Network LLC, 121 River Street, PH05, Hoboken, New Jersey 07030, Attn: Ron Deutsch; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., and 300 North LaSalle, Chicago, Illinois 60654, Patrick J. Nash, Jr., P.C., and Ross M. Kwasteniet, P.C.; (c) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn:  Shara Cornell, Mark Bruh, and Brian S. Masumoto; and (d) counsel to any statutory committee appointed in these chapter 11 cases.

2

3.      The Debtors are authorized to continue the Insurance Policies, including, but not limited to, the Insurance Policies identified on **Exhibit C** to the Motion, and, in their sole discretion, pay any prepetition or postpetition obligations related to the Insurance Policies, Premium Payments, Brokerage Fees, and any other related expenses, including those amounts that would come due in the ordinary course within the 21 days after the Petition Date.

4.      The Debtors are authorized, in their sole discretion, to renew, amend, supplement, extend, or purchase existing or additional insurance policies in the ordinary course of business on a postpetition basis, as well as replace any of the Insurance Brokers as may be necessary.

5.      The Debtors are authorized to honor any amounts owed on account of any audits that take place in the ordinary course of business.

6.      Nothing in this Interim Order shall constitute a postpetition assumption of any obligations related to the Insurance Policies pursuant to section 365 of the Bankruptcy Code.

7.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

8.      Nothing in this Interim Order shall:  (a) alter or amend the terms and conditions of the Insurance Policies; (b) relieve the Debtors of any of their obligations under the Insurance Policies; (c) preclude or limit, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under the Insurance Policies; or (d) create a direct right of action against any insurers or third party administrators where such right of action does not already exist under non-bankruptcy law.

9.      The Debtors are authorized to maintain their Surety Bond Program, including the Surety Bonds identified on **Exhibit D** to the Motion, without interruption, and in their sole discretion:  (a) pay Surety Premiums as they come due; (b) renew or potentially acquire additional

bonding capacity, as necessary, in the ordinary course of business; (c) request releases from duplicate bonding obligations; (d) cancel, revise, and/or supplement Surety Bonds; (e) renew, supplement, and/or cancel letters of credit or other forms of collateral as may be necessary; (f) pay Surety Brokerage Fees; (g) provide collateral and comply with collateral and indemnity requirements in the ordinary course of business; (h) replace the Surety Broker as may be necessary; and (i) execute other agreements in connection with the Surety Bonds Program.

10.     Nothing in this Interim Order shall require the Surety to issue any new bonds or maintain, modify, renew, or increase the penal sum or amount of any of the existing Surety Bonds.

11.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

12.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not

4

intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

13.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

14.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY THEIR OBLIGATIONS UNDER PREPETITION INSURANCE POLICIES, (B) CONTINUE TO PAY CERTAIN BROKERAGE FEES, (C) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (D) MAINTAIN THEIR SURETY BOND PROGRAM AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"): (a) authorizing the Debtors to (i) pay their obligations under the Insurance Policies entered into prepetition, (ii) continue to pay certain Brokerage Fees, (iii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, and (iv) maintain their Surety Bonds, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized to continue the Insurance Policies, including, but not limited to, the Insurance Policies identified on **Exhibit C** to the Motion, and, in their sole discretion, pay any prepetition or postpetition obligations related to the Insurance Policies, Premium Payments, Brokerage Fees, and any other related expenses.

3.      The Debtors are authorized, in their sole discretion, to renew, amend, supplement, extend, or purchase existing or additional insurance policies in the ordinary course of business on a postpetition basis, as well as replace any of the Insurance Brokers as may be necessary.

4.      The Debtors are authorized to honor any amounts owed on account of any audits that take place in the ordinary course of business.

5.      Nothing in this Final Order shall constitute a postpetition assumption of any obligations related to the Insurance Policies pursuant to section 365 of the Bankruptcy Code.

2

6.       Nothing in this Final Order shall:  (a) alter or amend the terms and conditions of the Insurance Policies; (b) relieve the Debtors of any of their obligations under the Insurance Policies; (c) preclude or limit, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under the Insurance Policies; or (d) create a direct right of action against any insurers or third party administrators where such right of action does not already exist under non-bankruptcy law.

7.       The Debtors are authorized to maintain their Surety Bond Program, including the Surety Bonds identified on **Exhibit D** to the Motion, without interruption, and in their sole discretion:  (a) pay Surety Premiums as they come due; (b) renew or potentially acquire additional bonding capacity, as necessary, in the ordinary course of business; (c) request releases from duplicate bonding obligations; (d) cancel, revise, and/or supplement Surety Bonds; (e) renew, supplement, and/or cancel letters of credit or other forms of collateral as may be necessary; (f) pay Surety Brokerage Fees; (g) provide collateral and comply with collateral and indemnity requirements in the ordinary course of business; (h) replace the Surety Broker as may be necessary; and (i) execute other agreements in connection with the Surety Bond Program

8.       Nothing in this Final Order shall require the Surety to issue any new bonds or maintain, modify, renew, or increase the penal sum or amount of any of the existing Surety Bonds.

9.       The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

10.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the

3

validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim;

(d) an implication or admission that any particular claim is of a type specified or defined in this

Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or

lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors'

rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion

are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection

or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended

and should not be construed as an admission as the validity of any particular claim or a waiver of

the Debtors' rights to subsequently dispute such claim.

11.    The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, and all such banks and financial institutions are authorized to rely on

the Debtors' designation of any particular check or electronic payment request as approved by this

Final Order.

12.    Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

13.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final

Order are immediately effective and enforceable upon its entry.

4

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

## Exhibit C

**Insurance Policies**

| Policy Coverage | Insurance Carrier(s) | Policy Number(s) | Policy Term |
|---|---|---|---|
| Cargo/In Transit | Falvey Insurance Group | FAL2000474NY22CARZ0AT301 | 03/02/22 - 03/02/23 |
| Cryptocurrency Mining Equipment - Property | Markel Insurance | MKLV1IM0000034 | 02/04/22 - 11/04/22 |
| Cryptocurrency Mining Equipment - Property | Markel Insurance | MKLM1IM0000281 | 11/04/21 - 11/04/22 |
| Cyber | Crum and Forster Specialty Insurance Company | CYB-103450 | 12/15/21 - 12/15/22 |
| Directors & Officers Liability | Berkley Insurance Company - US | BPRO8087123 | 07/12/22 - 07/08/23 |
| Directors & Officers Liability | Berkley Insurance Company - US | BPRO8087124 | 07/12/22 - 07/08/23 |
| Directors & Officers Liability | Endurance American Insurance Company | TBD[1] | 07/12/22 - 07/08/23 |
| Directors & Officers Liability | Endurance American Insurance Company | TBD | 07/12/22 - 07/08/23 |
| Directors & Officers Liability | Indian Harbor Insurance Company | ELU184271-22 | 07/12/22 - 07/08/23  plus 6 Year Run-Off |
| Directors & Officers Liability | Lloyds of London Republic Vanguard Insurance Company | EFI1203088-00 | 05/30/22 - 06/15/23 |
| Directors & Officers Liability | QBE Insurance Corporation | 130003109 | 07/12/22 - 07/08/23 |
| Directors & Officers Liability | QBE Insurance Corporation | 130003111 | 07/12/22 - 07/08/23 |
| Directors & Officers Liability | XL Specialty Insurance Company | ELU184274-22 | 07/12/22 - 07/08/23 plus 6 Year Run-Off |
| Employers Liability Policy | Atlantic Insurance | EL10705 | 08/04/21 - 08/04/22 |
| Employment Practices Liability Coverage Part | United States Fire Insurance Company | 574-102279-8 | 09/01/21 - 09/01/22 |
| Excess Directors & Officers Liability | ANV Insurance | ANV156364A | 06/15/22 - 06/15/23 |
| Excess Directors & Officers Liability | Hudson Insurance Group | HE-0303-7685 | 06/15/22 - 06/15/23 |

---

[1]    Policy Numbers and Policy Terms listed as TBD are active as of the Petition Date, with corresponding Policy Numbers pending finalization from the applicable Insurance Providers.   For the avoidance of doubt, all Policy Numbers and Policy Terms listed as TBD are paid in full as of the Petition Date.

| | | | |
|---|---|---|---|
| Excess Directors & Officers Liability | Indian Harbor Insurance Company | ELU183445-22 | 06/15/22 - 06/15/23 |
| Excess Directors & Officers Liability | Starstone Insurance | F77130210ASP | 06/15/22 - 06/15/23 |
| Excess Employment Practices Liability | Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc. | ANV157488A | 09/01/21 - 09/01/22 |
| Excess Property | London | 11225L22 | 03/17/22 - 11/04/22 |
| Foreign Package Policy | Zurich Insurance Group | ZE6113132-00 | 10/11/21 - 10/15/22 |
| Independent Directors Policy | Berkley Insurance Company | BPRO8086972 | 07/08/22 - 07/08/23 |
| Independent Directors Policy | Endurance American Insurance Company | FIX30022208200 | 07/08/22 - 07/08/23 |
| Independent Directors Policy | XL Specialty Insurance Company | ELU184224-22 | 07/08/22 - 07/08/23 |
| Office Insurance and Employee Liability | Ayalon Insurance Company | 92039-147471/22 | 02/01/22 - 01/31/23 |
| Package (GL/Property) | Zurich Insurance Group | CPO 6694527-00 | 10/11/21 - 10/11/22 |
| Property | Markel Insurance | MLKVIM0000034 | 02/24/22 - 11/04/22 |
| Serbia - General Liability Policy | Zurich Insurance Group | 674279203 | 10/11/21 - 10/15/22 |
| Serbia Property Policy | Zurich Insurance Group | 674511563 | 10/11/21 - 10/15/22 |
| Spectrum Policy | Sentinel Insurance Company | 42 SBA BH754 SA | 07/25/21 - 07/25/22 |
| Tech E&O Liability | Relm Insurance LTD | RILPTEO4072021 | 07/25/21 - 07/25/22 |
| Travel | Migdal Insurance Company | 461881722/21 | 11/14/21 - 10/31/22 |
| Umbrella Policy | Zurich Insurance Group | AUC 6694530-00 | 10/11/21 - 10/15/22 |
| United Kingdom Employee Liability | Zurich Insurance Group | 7131968 | 10/11/21 - 10/14/22 |

## Exhibit D

**Surety Bonds**

| Surety / Issuing Carrier | Bond Type | Beneficiary | Bond No. | Expiration Date | Bond Amount | Annual Premium |
|---|---|---|---|---|---|---|
| Great American Insurance Company | Bond of Finance Lender | Commissioner of Financial Protection and Innovation of the State of California | E678567 | 7/19/22 | $25,000 | $500 |
| Great American Insurance Company | Missouri Consumer Credit Lenders Bond | Commissioner of Finance for the State of Missouri | 4057404 | 8/23/22 | $100,000 | $2,000 |
| Approximate Total of Aggregate Amount | | | | | $125,000 | $2,500 |