Chief Judge Martin Glenn
U.S. Bankruptcy Court for the Southern District of New York
1 Bowling Green
New York, New York 10004

Case: 22-10964 (Celsius Network LLC, et al.)

July 21, 2022

Your Honor,

      My name is Daniel Karna and as a self-represented aggrieved party to the above-referenced case, I respectfully submit this letter for your consideration in resolving the legal question on how to treat crypto currency Custody Accounts/Wallets as defined by the Celsius Network LLC (hereinafter Celsius) Terms of Service under U.S. bankruptcy law.  While I admittedly have a bias in the outcome of how this legal question is resolved given that most of the crypto currency assets I currently have on the Celsius platform are deposited as part of their Custody Service, I am primarily writing this letter as I am concerned over the potential future precedent that may result from the Court's ultimate decision.

      Specifically, I worry that should the Court choose to treat any crypto currency assets held in the Custody Service as no different than those held as part of the Earn Service, that this would create a chilling effect for anyone in the future seeking to allow any sort of entity to hold custody over their crypto assets that they believe they still retain title to per the contractual agreement made between the parties.  As your time is very valuable and I am sure you will receive many letters regarding this matter, I will refrain from diving deep into the Celsius Terms of Service except to say that it states in plain language that title in such crypto assets "shall remain at all times" with the customer.  As someone who is fairly technologically savvy, but still probably older and less savvy than most of those who know how to use self-custody to hold their own crypto assets in cold storage hardware wallets, I implore you to consider the future implications of allowing Celsius to render such agreements as legally meaningless by means of a declaration of bankruptcy.  From my perspective I believe that the majority of the public is not ready or comfortable to self-custody large amounts of crypto assets given how easy it is to either lose one's crypto seed phrases/keys or to simply mistype a crypto wallet address and potentially lose their crypto assets forever.  Having an actual legally-enforceable custody service would allow the public to have confidence to transfer the crypto assets that they retain title to be held for safe-keeping by an outside entity.  Such confidence would allow many more uses of these crypto assets rather than as a simple "store of value."

While those in the crypto space always like to parrot the refrain "not your keys, not your crypto", I believe such a narrow mentality will not help the crypto community prosper into the future. Even for those who are sufficiently technologically savvy to employ self-custody options, to buy, sell or lend crypto in the first place, most will still need to transfer it to an outside entity (i.e. an exchange or lending platform) to do so. As such, there is a strong policy argument to require entities such as Celsius, Coinbase, Gemini, FTX and others to adhere to the plain language of their terms of service agreements, especially for language concerning title and ownership. Thus, members of the public can make informed decisions and not have to guess how a particular nuance of unsettled law may impact their assets.

Otherwise, I fear the future of the crypto sphere will be relegated to remaining a wild west landscape littered with entities similar to the wildcat banks of the 19th Century. From a layman's perspective, Celsius continuing to prevent those with crypto assets held in the Custody Service from withdrawing their funds is like a wildcat bank that has closed its doors not only to depositors during a bank run, but also to those with their assets stored away in a safe deposit box inside. While it may be reasonable to not allow those with safe deposit boxes to retrieve their property during certain "market disruptions" or "periods of volatility", the withholding of the right to access one's property cannot go on indefinitely. This is especially so if such contractual terms are simply exploited in the hope that a bankruptcy court may later rule that the Custody Service customers no longer have title to their assets.

In sum, as someone who is hopeful about the benefits that crypto and blockchain technology can provide to the public at large, I ask this Court to carefully weigh the policy implications of finding that the assets held in a Celsius Custody Account no longer belong to the customers that entrusted Celsius with their assets. I hope this Honorable Court holds Celsius to its word and forces it to honor its contractual obligations as laid out in its Terms of Service. Otherwise, I fear the future of crypto will be bleak with little to no trust between holders of crypto assets where everyone is forced to hold onto their own keys and the confidence in honoring contractual and/or legal obligations is lost. I believe such an environment is not healthy for any market, whether a traditional financial one or a marketplace centered on crypto assets and blockchain technology. Thank you very much for your time and consideration.

Very respectfully,

Daniel Karna