U.S. Federal Office Building

201 Varick Street, Room 1006

New York, NY 10014

Phone: (212) 510-0500

Christopher Szuba

351 Montgomery Circle

Stephens City, VA 22655

Phone: (540) 420-4647

July 22, 2022

Attn: Honorable Martin Glenn, Chief Judge

Re: Customer Notification of Spark (FLR) token distribution to customers of Celsius Network LLC
(Case no. 22-10964)

Dear Judge Glenn:

My name is Christopher Szuba, a music teacher in Virginia. I have been a customer of Celsius Network since August 2020. Many of my fellow customers are currently reaching out to you regarding Celsius' bankruptcy proceedings and their experiences with Celsius. I am focusing my letter on one specific aspect of my relationship with Celsius: the Flare network Spark (FLR) airdrop. I believe you should be made aware of this, since this will affect many Celsius depositors, namely XRP holders.

In late 2020, Celsius, as well as many other platforms and protocols, publicly agreed to participate in an XRP ledger "Snapshot." On December 11th, 2020 at 7 pm EST, participating platforms indicated they would allow the Flare Network to take a Snapshot of all of their customers' XRP (ie, how many XRP tokens they had), and then distribute an "Airdrop" of Spark tokens (FLR) to those customers following the launch of the Flare network. The Spark airdrop will consist of 1.0073 FLR for every 1 XRP each customer held on each participating platforms. The participating platforms were to then distribute those FLR to their XRP-holding customers. Flare clearly stated that Spark was not meant to be kept by any participating platform, exchange, or protocol whatsoever.

On July 11th, 2022 the Flare network launched and is in an 8-week "observation mode." Once that observation period is completed, 15% of the snapshot participants' allotted Spark tokens will be

distributed to participating platforms, and then the remaining 85% of Spark will be distributed in intervals between 25 and 34 months (this is to help stabilize FLR price and incentivize participation in the Flare network).  All of these distributions are meant to be received by Celsius' XRP customers, not Celsius.  Therefore, Celsius, as a publicly declared participating platform, has a moral obligation to distribute those Spark (FLR) tokens to their customers.

      The current asset freeze should not prevent XRP customers from receiving their allotted FLR tokens from Flare.  Celsius is not in possession of any FLR tokens yet, so it should not be counted on their balance sheets in their Chapter 11 filing, nor are those FLR tokens intended to ultimately go to Celsius, since they are intended to be directly distributed to Celsius' customers.  If Celsius kept these tokens it would be tantamount to theft since the Flare network has been clear in their public addresses that any participating platforms are forbidden from taking any tokens as their own.

      As a show of good faith to their customers, Celsius and the Court should agree to

a) Distribute Spark (FLR) in a timely manner through the app with a commitment that the app will be well-maintained throughout the Chapter 11 process,

b) Coordinate directly with Flare's CEO, Hugo Philion, on a solution to distribute promised Spark tokens directly to each Celsius' customers' chosen wallet address without any involvement from Celsius, or

c) Provide Spark (FLR), purchased off of the secondary market by Celsius, to customers equal to the total amount of FLR they are due from the Snapshot, after which Celsius can keep all incoming FLR in perpetuity.

This will go a long way in informing my decision whether to ever use Celsius again once they emerge from Chapter 11.  I still believe in the premises behind Celsius' publicly declared business model, and am keeping an open mind for their re-emergence from bankruptcy with new management and leadership.

Thank you for listening and for your service to our judicial system.  God bless you,

Christopher Szuba