Case 22-10964 Page 1 of 6
Celsius Network LLC, et al. ("Celsius")

July 22, 2022

The Honorable Martin Glenn
United States Bankruptcy Court, Southern District of New York
One Bowling Green
New York, NY 10004-1408

Dear Chief Judge Glenn:

Thank you for your remarks during the First Day Hearing and for welcoming input from individual creditors like myself to be heard on this matter.

This is a difficult and humbling letter to write. I now join numerous others who currently feel shame, regret, and humiliation for the misplaced trust I had in Celsius Network, LLC. It is unfortunate and curious that the Debtors, particularly CEO Mashinsky, have not expressed similar feelings for their actions that lead Celsius to this point.

This court's website states, in part: "*The primary purposes of the law of bankruptcy are: to give an honest debtor a "fresh start" in life by relieving the debtor of most debts, and to repay creditors in an orderly manner to the extent that the debtor has property available for payment.*"[1]

Your honor, this court is <u>not</u> dealing with an "honest debtor." After reading the Interim Orders drafted by the Debtors and approved by this court I believe the dishonest Debtors have been granted far too much leniency to continue "business as unusual." Further, I fear the Debtors are manipulating these proceedings to perpetuate allegedly nefarious, and potentially fraudulent activity.

With the above understanding, and as a creditor committee may not be in place for some time, and also that the Interim Order requires "*any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on August 1, 2022,*"[2] I humbly write you with responses and objections regarding four matters of immediate concern that I respectfully request be addressed urgently but hopefully not later than at the scheduled 8 August 2022 final hearing:

1) **Request for Ruling on Custody Accounts:** As stated in the Celsius Terms of Use[3] and confirmed in their pleadings, "*Title to any of your Eligible Digital Assets in a Custody Wallet shall at all times remain with you and not transfer to Celsius. Celsius will not transfer, sell, loan or otherwise rehypothecate Eligible Digital Assets held in a Custody Wallet unless specifically instructed by you, except as required by valid court order, competent regulatory agency, government agency or applicable law.*"

---

[1] NYSB Website, "Understanding Bankruptcy": http://coop.nysb.uscourts.gov/understanding-bankruptcy
[2] 22-10964-mg, Doc 56, Filed 07/19/22, Interim Order Authorizing The Debtors to Continue to Operate Their Cash Management System, page 2, item 2 'Final Hearing': https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907192280000000090.pdf
[3] Celsius Network Terms of Use: https://celsius.network/terms-of-use

22-10964-mg    Doc 223    Filed 07/22/22    Entered 07/26/22 16:17:08    Main Document
Pg 2 of 6

Case 22-10964                                                                    Page 2 of 6
Celsius Network LLC, et al. ("Celsius")

In response to your honor's inquiry related to comingled assets in custody, Mr. Nash represented to you in court 18 July 2022 that ~$180M of assets are comingled but isolated in a separate account. He then assured the court that ALL "custody crypto is available if judge rules it is their own property." Mr. Nash went into further detail stating ~58,000 customers have Custody accounts, and they could possibly get them earlier access to their custody funds.

While the dishonest Debtors acknowledge an obligation and ability to return user assets in Custody, they have instead decided to engage in creative legal attempts with this court to muddy the waters by declaring the difference between Custody assets and Earn assets a "Key Legal Question."[4] This purported ambiguity is a manufactured distraction and delay tactic manifested in the Debtor's *Interim Order Authorizing the Debtors to Continue to Operate Their Cash Management System*.[5]

This is further evidenced by the response I received through the email forum established by the Debtor's counsel for Creditor questions. I inquired when they intended to seek your ruling on Custody assets and the reason for the delay. Their responses to my inquiries were very thoughtful and surprisingly timely, however, their plan to continue to delay a ruling on Custody assets is unsatisfactory:

*"We are waiting to hear the views of the creditors' committee before deciding on a path forward on this issue (and many others). The creditors' committee will be appointed in the coming days since the deadline to complete the questionnaire was earlier today. Then the committee will hire counsel and then we will begin to engage with their counsel on these issues."* [6]

Unnecessary legal gymnastics and delays such as these simply delay the inevitable return of assets in Custody accounts, while knowingly inflicting ongoing harm on up to 58,000 users who are in desperate need of access to their assets. I feel it is important your honor is aware that many users are currently enduring extreme mental and financial duress and some are suicidal as a result of these proceedings and the uncertainty if they will see any of their life savings ever again.

I believe this is one area you can provide immediate relief. To my knowledge, this court has not received a single creditor letter requesting the payout of their Custody assets be <u>delayed</u> until a creditor committee is formed, a lawyer is retained, and can request such a ruling on our behalf. In fact, you have received overwhelming requests for the opposite.

---

[4] First Day Presentation, chart 3, "Key Legal Questions":
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907182280000000001.pdf
[5] 22-10964-mg, Doc 56, Filed 07/19/22, Interim Order Authorizing The Debtors to Continue to Operate Their Cash Management System, paragraph 6:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907192280000000090.pdf
[6] Email reply from CelsiusCreditorAnswers@kirkland.com dated 7/21/2022, subject "RE: Creditor Questions RE Celsius - Case No. 22-10964"

22-10964-mg    Doc 223    Filed 07/22/22    Entered 07/26/22 16:17:08    Main Document
Pg 3 of 6

Case 22-10964 Page 3 of 6
Celsius Network LLC, et al. ("Celsius")

Pursuant to Mr. Nash's representations to you in court on 18 July 2022, the Debtors appear ready, willing, and able to return Custody assets to users pending a ruling from this court. In the interest of justice, I respectfully request this court rule definitively that assets in user Custody accounts are indeed the user's property.

Assuming the court rules that Custody assets belong to the users, I object to the Debtors' Interim Order Authorizing the Debtors to Continue to Operate Their Cash Management System[7] (specifically paragraph 6) and request the court revoke the interim authority granting debtors ongoing authority to withhold or freeze users' assets in Custody. I further ask this court insist Custody assets be made available for immediate withdraw "in-kind" (not FIAT) by their rightful owners via the Celsius platform.

2) **Request for Critical Vendor Status:** The Debtors have requested this court grant approval to continue operations and payments for certain business activities they deemed "*critical to the operation of the Debtors' business—the loss of which could materially harm their business or reduce its enterprise value.*"[8] One such activity designated as critical is the funding of a Bitcoin mining operation in Texas that did not begin "in earnest" until June 2022. [9]

The Debtor's analysis is far too narrowly focused on protecting their personal business interests and takes no accounting for the material harm and impairment to the supply chain of digital asset suppliers (users) which is also critical to their business. I am one of many suppliers impacted by the Debtor's narrow analysis of their Critical Vendors assessment and request this be revisited.

As evidenced by the abrupt pause on all withdraws 12 June 2022[10], Digital Assets supplied by users of the Celsius platform are clearly critical and necessary to Celsius' continued operations. In fact, if user's Digital Assets were not critical or necessary, Celsius would have already allowed us to regain access to the Digital Assets we have supplied via their platform.

There seems to be no reasonable basis for treating hardware/software assets supplied by vendors to ensure operational continuity of a mining rig any different than the digital assets supplied by users being utilized for the continuity of Celsius' other lines of business.

Unlike such vendors for Celsius' new Bitcoin mining operation who can simply "stop performing" for non-payment, those of us who have supplied Celsius with Digital Assets cannot withdraw or terminate any lending of these assets to Celsius as they

---

[7] Docket No. 56, Interim Order Signed 7/19/2022, pg 4, paragraph 6:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907192280000000090.pdf
[8] 22-10964 Doc 20 Filed 07/14/22 Entered 07/14/22 04:20:14 Main Document, page 6, section C, paragraph 20:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907142280000000051.pdf pages 6 through 10
[9] 22-10964 Doc 20 Filed 07/14/22 Entered 07/14/22 04:20:14 Main Document, page 4, paragraph 9:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907142280000000051.pdf pages 6 through 10
[10] Memo to the Celsius Community dated 12 June 2022: https://blog.celsius.network/a-memo-to-the-celsius-community-59532a06ecc6

22-10964-mg    Doc 223    Filed 07/22/22    Entered 07/26/22 16:17:08    Main Document
Pg 4 of 6

Case 22-10964                                                                                   Page 4 of 6
Celsius Network LLC, et al. ("Celsius")

remain frozen and in operational use by Celsius for the continued benefit of the company throughout these proceedings. This ongoing relationship with suppliers of digital assets (users) remains critical and necessary for Celsius' continued operations.

As such, I humbly request this court instruct the appropriate parties commence the required steps and filings to ensure ALL depositors (suppliers) of Digital Assets via the Celsius platform be granted Critical Vendor status pursuant to this bankruptcy proceeding.

3) **Request for Earn Service Continuity:** Celsius has designated their Earn Service a "Key Business Segment"[11] and is summarized in their Terms of Use as follows: *"Our Earn Service allows you to earn a financing fee from Celsius, referred to as "Rewards," in the form of Digital Assets (either in-kind, i.e., in the same Digital Asset you transfer, or in CEL Tokens, where permitted)* **in exchange for entering into open-ended loans** *of your Eligible Digital Assets to Celsius under the terms hereof. If our Earn Service is available to you, upon your election, you will lend your Eligible Digital Assets to Celsius and grant Celsius all rights and title to such Digital Assets, for Celsius to use in its sole discretion* **while using the Earn Service***."* [12]

As of the 12 June 2022 pause, Celsius insisted "customers will continue to accrue rewards during the pause in line with our commitment to our customers."[13] To their credit, Celsius continued honoring this commitment during this "pause", but as of the 13 July 2022 filing, Celsius reversed course.[14] They advocated and received authorization from this court to discontinue the accrual and payment of Rewards to their suppliers of Loaned Digital Assets (users) under the Earn program even though they still claim they maintain all rights and title to such Digital Assets.[15] The Debtors have provided no case as to why terminating Rewards would be beneficial to their recovery plan, nor any suggestion that continuing these Rewards would be detrimental to their recovery.

Earn users never consented to hand over all rights and title to their assets in perpetuity. No reasonable person would participate in this program if they understood they were required to do so. It is also clear that when users' participation in the Earn program terminates, title is returned back to the user and their assets can then be transferred back to a Custody account or external wallet. [16]

Consistent with the above, there appears only two scenarios for the treatment of Loaned Digital Assets in the Earn Service going forward until a final plan is constructed and agreed to as part of these proceedings:

---

[11] First Day Presentation, chart 9, "Key Business Segments – Retail": https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907182280000000001.pdf
[12] Celsius Terms of Use, dated 14 April 2022, part D. Earn Rewards: https://celsius.network/terms-of-use
[13] Memo to the Celsius Community dated 12 June 2022: https://blog.celsius.network/a-memo-to-the-celsius-community-59532a06ecc6
[14] Updated FAQ dated 13 July 2022, Question 6: https://blog.celsius.network/updated-faq-a7b03e0caeaa
[15] First Day Presentation, chart 9, "Key Business Segments – Retail": https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907182280000000001.pdf
[16] Celsius Terms of Use, dated 14 April 2022, part D. Earn Rewards: https://celsius.network/terms-of-use

22-10964-mg    Doc 223    Filed 07/22/22    Entered 07/26/22 16:17:08    Main Document
Pg 5 of 6

Case 22-10964                                                                                      Page 5 of 6
Celsius Network LLC, et al. ("Celsius")

1) If Celsius still considers user assets in Earn accounts under their title as an open-ended loan, they must immediately restart the weekly Reward accrual and payments retroactive to the 13 July 2022 filing.

2) If Celsius has terminated their lending relationship with users under the Earn Service as of the 13 July 2022 filing, the Loaned Digital Assets are no longer loaned and therefore title to these assets must return back to the original user suppliers immediately. Further, as title to Loaned Digital Assets would now belong back with individual users, the same provisions for immediate transfer and withdraw as Custody assets must apply.

Given that user suppliers of these Digital Assets are necessary Critical Vendors to a Key Business Segment of the Debtors, and to the extent these assets under the Earn program continue to be held and used for the Debtors' ongoing business operations, I recommend scenario one (1) be pursued as in the best interests of both debtors and creditors for the time being. I am certain others place higher priority on getting their assets returned quickly and would prefer the latter. I believe both desires can potentially be resolved quickly as part of a new plan being constructed in coordination with the creditor's committee.

I therefore object to the Interim Order Authorizing The Debtors to Continue To Operate Their Cash Management System[17] (specifically paragraph 6) and request it be revised to allow and instruct the Debtors to continue payment obligations to suppliers of Loaned Digital Assets held under Earn accounts including accrual and payment of weekly Rewards retroactive to 13 July 2022 and until a modified plan can be constructed and agreed to as part of these proceedings.

4) **Request for Additional Asset Protections:** Lastly, your honor, this court has been provided an alarming level of correspondence alleging certain officers at Celsius have engaged in nefarious activities which have already caused substantial and irreparable harm to the Celsius user community. Allegations range from mismanagement, making false claims, to outright market manipulation and fraud among others. These allegations, if true, are quite serious and should be pursued by the U.S. Department of Justice.

Given the seriousness of these concerns and their potential to overlap or interfere with Celsius' ongoing bankruptcy proceeding, I ask that all available measures and remedies be put in place by this court and the U.S. Trustee to protect creditors and stakeholders from further wrongdoing by Celsius executives and insiders. Several good suggestions have already been presented to the court via creditor correspondence. Three additional suggestions for enhanced creditor and stakeholder protection are provided for your consideration below:

---

[17] 22-10964-mg, Doc 56, Filed 07/19/22, Interim Order Authorizing The Debtors to Continue to Operate Their Cash Management System, paragraph 6:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907192280000000090.pdf

22-10964-mg    Doc 223    Filed 07/22/22    Entered 07/26/22 16:17:08    Main Document
Pg 6 of 6

Case 22-10964                                                                    Page 6 of 6
Celsius Network LLC, et al. ("Celsius")

1) To ensure an equitable proceeding while retail user assets remain frozen, Buying/Trading/Selling of specific digital assets owned by any person, entity, or third party with actual or perceived Conflicts of Interest in the outcome of this proceeding should be "paused" until all creditor/retail user funds are also "un-paused." This includes company officers such as CEO Alex Mashinsky and his "wife", along with other company employees, affiliates, vendors, suppliers, subcontractors, legal counsel, advisors, or partners that may continue their trading activity based on their access to insider, non-public knowledge of the company's current or planned operational activities.

2) Concerns have been raised as to how the creditor committee is being selected and who will ultimately be involved. There are also very strong feelings by creditors that neither Mr. Mashinsky nor his "wife" be involved in this committee. Several others should be conflicted out as well. I respectfully request a Conflict of Interest matrix be used by the U.S. Trustee in selecting members of the creditor committee and be made publicly available.

3) Another measure specifically relates to the Celsius Bitcoin mining line of business. Celsius represented to this court on 18 July 2022 they are producing roughly ~14.23 Bitcoin per day with plans to increase output by the end of this calendar year. At a current market rate of ~$23,000 per Bitcoin, this is a significant accumulation of assets being generated daily under unknown, if any restrictions placed on the dishonest Debtors or those acting on behalf of the Debtors. Further, at this juncture, it appears there is no way to even validate if their mining output is being over or understated. We also have very little insight as to the ownership of these coins, how they are being used, where they are being transferred and for what purpose, or who might have claims to them at the conclusion of these proceedings.

To the extent the U.S. Trustee approves continued payments of operational expenses related to the Celsius Bitcoin mining line of business, I suggest and humbly request one hundred percent of the Bitcoin being mined by Celsius be placed in Escrow, in cold storage, and under the sole custody of the U.S. Trustee or other uninterested party until which point a satisfactory plan to repay creditors and other stakeholders has been constructed and agreed to. I further request this action be retroactive to all Bitcoin and any other digital assets mined by or on behalf of Celsius as of the 13 July 2022 petition date.

To conclude, I again thank you for your time and openness to consider input and concerns from a wide range of stakeholders. I remain hopeful and optimistic for a timely and equitable outcome at the conclusion of these proceedings.

Best Regards,

C. Marsh
Celsius Creditor and Honest Person
Los Angeles, CA, USA