Hearing Date:  August 8, 2022
Hearing Time: 10:00 a.m.

David J. Adler
McCARTER & ENGLISH, LLP
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
E-mail: dadler@mccarter.com
*Attorneys for Keith Suckno*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> CELSIUS NETWORK LLC, et al.[1] <br><br><br> Debtors. | Chapter 11 <br><br> Case No. 22-10964 (MG) <br><br> Jointly Administered |

**OBJECTION OF KEITH SUCKNO TO DEBTORS' MOTION
FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER
INTO AN ADVISORY AGREEMENT WITH ROD BOLGER PURSUANT TO
SECTIONS 363(B) AND 503(C)(3) OF THE BANKRUPTCY CODE**

Keith Suckno ("**Claimant**"), by his undersigned attorneys, McCarter & English LLP,

hereby files this objection ("**Objection**") to the Debtors' Motion For Entry Of An Order

Authorizing the Debtors to enter into an Advisory Agreement with Rod Bolger Pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

1

Sections 363(b) and 503(c)(3) of the Bankruptcy Code (ECF Doc. #191; the "**Motion**") and respectfully represent as follows:

## BACKGROUND

1. As set forth in the Motion, Celsius Network LLC and its affiliates (collectively, the "**Debtors**") are "one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate and retail clients across more than 100 countries." Motion at ¶ 5. Also, as set forth in the Motion, "Celsius has more than 1.7 million registered users and approximately 300,000 active users with accounts balances greater than $100." *Id.*

2. On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are currently operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

3. On July 25, 2022,, the Debtors filed the Motion which seeks, *inter alia*, an order approving the Debtors' entry into an Advisory Agreement (the "**Advisory Agreement**") with the Debtors' former Chief Financial Officer, Rod Bolger ("**Mr. Bolger**"): As the former CFO, Mr. Bolger is an insider of the Debtor.

4. The Motion discloses that Mr. Bolger was employed by the Debtors at an annual base salary of $750,000 ("**Annual Base Salary**") as of February 14, 2022. *See* Appendix A to employment agreement between Celsius Network LLC and Mr. Bolger dated February 13, 2022

---

[2] Although the issue is not raised in this Objection, it does not appear that the Debtors' assertion that venue is proper in this District under 28 U.S.C. §§1408 and 1409 is correct given that: (i) Celsius' principal place of business is located in Hoboken, New Jersey (Motion, at ¶ 3); and (ii) all of the Debtors are Delaware entities (*see* Voluntary Petition of Celsius US Holding LLC, Case 22-10971, ECF Doc. #1, Exhibit "A" (p. 19) identifying that each of the seven Debtors are Delaware entities).

(the "**Employment Agreement**" attached to the Motion as Exhibit B). According to the Debtors, on June 30, 2022, Mr. Bolger gave notice that he was voluntarily terminating his employment and provided the Debtors with eight weeks' notice (Motion at ¶9; *see* Employment Agreement, §4.4 (voluntary termination). According to the Employment Agreement, Mr. Bolger is to be paid his base salary during the eight week notice period. *Id.* ("[w]hether or not you are relieved of any duties during such eight (8) week period, you will continue to get paid your Annual Base Salary . . . in accordance with this Employment Agreement . . ."). Thus, Mr. Bolger will receive (or has received) his Annual Base Salary until August 25, 2022 (eight weeks from June 30th ).[3]

5.   The Advisory Agreement provides, among other things, that Mr. Bolger will be: (i) retained as an independent contractor for the period of July 18, 2022 through September 16, 2022 (subject to extensions on a monthly basis thereafter); and (ii) paid a monthly fee of CAD $120,000 (approximately $94,000 per month, or $1,128,000 per year).

6.   In the Motion, the Debtors argue that Mr. Bolger's services are necessary but provide little detail. Specifically, the Debtors seek approval on the basis that "[a]s CFO for the Debtors during the extreme market volatility in 2022, Mr. Bolger led efforts to steady the business, guided the financial aspects of the business and acted as leader of the company. . . . His institutional knowledge and experience concerning the unique features of cryptocurrency are invaluable" Motion at ¶10. Other than these generalities, the Motion provide no specifics as to why the services of Mr. Bolger are necessary.

7.   Moreover, it cannot be ignored that Mr. Bolger provided false information to depositors just days prior to the Pause. Specifically, Mr. Bolger was featured in an article

---

[3] It is unclear whether the Debtors are actually paying this obligation under the Interim Wage Order (ECF Doc. #61).

published by Celsius on June 8, 2022 – a mere four (4) days before the June 12th Pause -- entitled

"*Get to Know Rod Bolger, Chief Financial Officer, Celsius*".  See

https://blog.celsius.network/get-to-know-rod-bolger-chief-financial-officer-celsius-9c60718f205d

8.  In that article, Mr. Bolger misstated the financial condition and liquidity of the Debtors:

> **What stands out to you about Celsius?**
>
> I was happy to see that Celsius was already focused on the elements I'd expect in a best-in-class financial institution. Even without the same regulatory framework yet enacted, many of those elements were already in place when I joined. **The company's strong liquidity framework, established practices around liquidity data, and modeling were elements that I was happy to find similar to other large financial institutions.** *This put us in a strong position to weather the recent market turbulence and ensure that clients who needed to access their digital assets could get them free and clear.*
>
> **What's ahead for Celsius?**
>
> We're in a strong position to grow as the market recovers. We continue to build new products that meet the needs of our ever-expanding user base.

(emphasis supplied).  From the timing of these statements, it can be inferred that Mr. Bolger was either misinformed about the actual financial status of the Debtors or deliberatively sought to mislead the depositors/investors of Celsius.

## OBJECTION

### THE COURT SHOULD NOT APPROVE THE DEBTORS' ENTRY INTO THE ADVISORY AGREEMENT

9.  **First**, as noted above, it appears that Mr. Bolger has (or is) receiving severance until August 25, 2022.  If this is correct, Mr. Bolger will be receiving both his Annual Base Salary ($62,500 per month) and the Monthly Fee ($94,000 per month) for the period of July 18, 2022 to August 25, 2022.  If this is the case, the Debtor should explain with something other than

4

mere generalities why Mr. Bolger's services are necessary and why he is receiving additional compensation beyond his Annual Base Salary.   If Mr. Bolger is required to provide these services pursuant to the §4.4 of the Employment Agreement until August 25, 2022, why is it necessary for the Debtors to provide additional compensation as detailed in the Advisory Agreement to Mr. Bolger?

10.    **Second**, by virtue of the June 8th Article, it appears that Mr. Bolger was not well informed about the financial condition of the Debtors or intentionally misled the depositors/investors of Celsius.  Thus, the justification that Mr. Bolger services are required "to steady the business, [and] guide[] the financial aspects of the business" rings hollow especially given the fact that under his leadership a $1.8 billion hole in the Debtors' balance sheet emerged -- not to mention the lives of thousands of individuals that have been destroyed as a result.

11.    **Third,** The Motion fails to explain (except in the most general terms) why is it necessary for Mr. Bolger to provide these services.  Indeed, Mr. Mashinsky has on numerous occasions described the Debtors' operations and, based on that response, it appears that the services of Mr. Bolger's services are not critical.   Specifically, in responding to why a "bank run" could never happen at the Debtors, Mr. Mashinsky stated:

> A run on the bank cannot happen at Celsius, because Celsius never lends more than what it has. Right? We cannot do, legally- we're not allowed to create money or do fractional reserves.
>
> So at any moment we always have enough coins and enough collateral and so on to return all of the assets to all of our users. **And everyday, we have a process, the daily reconciliation process. Where our team, like 20 or 25 people, get on a call and grind through all the tokens and all the coins and make sure that we have more coins than what we owe the community.**
>
> Right? That's our process. And no bank in the world can do that for you because they never have enough assets to return for you if there is a run on the bank."

*See* https://www.youtube.com/watch?v=GYQt-GwsCH0  (emphasis supplied).

ME1 41760953v.1

12. Based on Mr. Mashinsky's statement that a team of 20-25 people are involved in a "daily reconciliation process", the Debtors should be required to provide more detail as to exactly what Mr. Bolger will do if he is brought back in an advisory capacity (separate and apart from the services being provided by the current CFO).

13. **Finally**, as noted above, the lives of thousands of individuals have been destroyed by virtue of the actions of the Debtors. Each day, the Court is deluged with letters from distraught depositors. As a result, before the Debtors cavalierly pay an insider nearly $100k per month, more information should be required from the Debtors including **exactly** what services will be required from Mr. Bolger, why those services cannot be performed by other employees as noted above and that the "business judgment" standard is actually satisfied here.

## CONCLUSION

**WHEREFORE**, Claimant respectfully requests that this Court deny the Motion and grant such other and further relief as may be just and proper.

Dated:  New York, New York
August 2, 2022

**McCARTER & ENGLISH, LLP**

By:  */s/ David J. Adler*
David J. Adler
(A member of the Firm)
Email: dadler@mccarter.com
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921

*Attorneys for Keith Suckno*