Hearing Date and Time:  September 1, 2022, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:  August 25, 2022, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING ON**
**DEBTORS' APPLICATION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF CENTERVIEW PARTNERS LLC AS**
**INVESTMENT BANKER FOR THE DEBTORS EFFECTIVE AS OF**
**JULY 13, 2022, (II) APPROVING THE TERMS OF THE CENTERVIEW**
**AGREEMENT, (III) WAIVING CERTAIN REPORTING REQUIREMENTS**
**PURSUANT TO LOCAL RULE 2016-2, AND (IV) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an*

*Order (I) Authorizing the Employment and Retention of Centerview Partners LLC as Investment*

*Banker for the Debtors Effective as of July 13, 2022, (II) Approving the Terms of the Centerview*

*Agreement, (III) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-2, and*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030

*(IV) Granting Related Relief* (the "Application") will be held on **September 1, 2022, at 10:00 a.m., prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **August 25, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Application.

      **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.   You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: August 4, 2022

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted pro hac vice)
Ross M. Kwasteniet, P.C. (admitted pro hac vice)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF CENTERVIEW PARTNERS LLC AS**
**INVESTMENT BANKER FOR THE DEBTORS EFFECTIVE AS OF**
**JULY 13, 2022, (II) APPROVING THE TERMS OF THE CENTERVIEW**
**AGREEMENT, (III) WAIVING CERTAIN REPORTING REQUIREMENTS**
**PURSUANT TO LOCAL RULE 2016-2, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this application (this "Application"):

**Relief Requested**

1.       The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"): (a) authorizing the employment and retention of Centerview Partners

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

LLC ("Centerview") to serve as the Debtors' investment banker as of the Petition Date (as defined herein) in accordance with the terms and conditions set forth in that certain engagement letter between Centerview and certain of the Debtors, dated June 19, 2022, as amended by that certain amended engagement letter between Centerview and certain of the Debtors (the "Engagement Letter") dated August 2, 2022, a copy of which is attached as Exhibit 1 to the Order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"); (b) approving the provisions of the Engagement Letter, including the compensation arrangements and indemnification and reimbursement provisions set forth therein; (c) modifying certain timekeeping requirements of rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (General Order M-447) (the "Court Guidelines"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective January 30, 1996 (the "U.S. Trustee Guidelines"), and any other applicable procedures and orders of the Court (as defined herein) in connection with Centerview's engagement; and (d) granting such other relief as is just and proper.  In support of this Application, the Debtors submit the declaration of Marc Puntus (the "Puntus Declaration"), a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.  In further support of this Application, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## **Background**

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter*

*11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").[2]  As described

in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to

provide Celsius an opportunity to stabilize its business and consummate a comprehensive

restructuring transaction that maximizes value for stakeholders.

7.       The Debtors are operating their business and managing their property as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases

have been consolidated for procedural purposes only and are jointly administered pursuant to

Bankruptcy Rule 1015(b) [Docket No. 53].   On July 27, 2022, the United States Trustee for the

Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No 241].

No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### Centerview's Qualifications

8.       Established in 2006, Centerview is an independent investment banking firm

providing financial advisory services, including mergers and acquisitions and restructuring advice,

across a broad range of industries.  Centerview serves a diverse set of clients around the world

from its offices in New York, San Francisco, Palo Alto, London, and Paris.  Centerview's Debt

Advisory and Restructuring Group, which was founded in 2011, has extensive experience in

designing and managing complex restructuring processes among a wide range of stakeholders, and

a demonstrated track record of designing, negotiating and implementing amendments, exchange

offers, financings, distressed merger and acquisition transactions and out-of-court and in-court

restructurings.  Centerview and its principals have advised debtors, lenders, committees, equity

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
       Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

holders, and acquirors in many complex financial reorganizations. Centerview's professionals have collectively advised on transactions representing over $300 billion in restructured debt.

9.      The Debtors have determined in the exercise of their sound business judgment that the size and complexity of their businesses requires them to employ an investment banker with knowledge of the Debtors' industry and business and experience with the chapter 11 process. Centerview has such knowledge and is well qualified to provide its services to the Debtors in these chapter 11 cases. The Debtors' decision to employ and retain Centerview will assist the Debtors in executing their plan of reorganization in a cost-effective, efficient, and timely manner.

10.     Centerview's professionals, including while employed at other firms, are providing or have provided financial advisory, investment banking, and other services in connection with the in-court restructuring of numerous companies, including the following: *In re Enjoy Technology, Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. 2022); *In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (Bankr. S.D. Tex. 2020); *In re Sungard Availability Services Capital, Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. 2019); *In re Blackhawk Mining LLC*, 19-11595 (LSS) (Bankr. D. Del. 2019); *In re Cloud Peak Energy Inc.*, No. 19-11047 (KG) (Bankr. D. Del. 2019); *In re CTI Foods, LLC*, No. 19-10497 (CSS) (Bankr. D. Del 2019); *In re PG&E Corporation,* No. 19-30088 (DM) (Bankr. N.D. Cal. 2019); *In re Westmoreland Coal Company*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. 2018); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. 2018); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. 2017); *In re Old BPSUSH Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. 2016); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. 2016); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. 2015); *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y. 2017); *In re Caesars Entm't Operating Co., Inc.*, No. 15-10047 (KG) (Bankr. D. Del. 2015); *In re Residential Capital, LLC, et al.*, No. 12-12020

(MG) (Bankr. S.D.N.Y. 2017); *In re Glob. Brokerage Inc.*, No. 17-13532 (MEW) (Bankr.
S.D.N.Y. 2017); *In re Vanguard Natural Res., LLC*, No. 17-30560 (MI) (Bankr. S.D. Tex. 2017);
*In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. 2016); *In re Midstates
Petrol. Co., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. 2016); *In re Molycorp, Inc.*, No. 15-11357
(CSS) (Bankr. D. Del. 2015); *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr.
D. Del. 2015); *In re Atlas Res. Partners, LP*, No. 16-12149 (SHL) (Bankr. D. Del. 2016); *In re
Aspect Software, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del. 2016); *In re Seventy Seven Energy
Inc.*, No. 16-11410 (LSS) (Bankr. D. Del. 2016); *In re SunEdison, Inc.*, No. 16-10992 (SMB)
(Bankr. S.D.N.Y. 2016); and *In re Synergy Pharmaceuticals Inc.*, No. 18-14010 (JLG) (Bankr.
S.D.N.Y. 2018).[3]

11.    Centerview's professionals have also provided services in connection with the
out-of-court restructurings of numerous companies, including: Anchor Danly; Autocam
Corporation; Broder Bros Co., CDX Gas, Caesars Entertainment Corporation, Chicago Bridge &
Iron Company, Cloud Peak Energy, CMS Energy, CNL Hotels & Resorts, Culligan, DS Waters of
America, Inc., Gate Gourmet, Inc., Grupo TMM, S.A., Huntsman Corporation, Ion Media
Networks, Isola Group Ltd., J. C. Penney Company, Keystone Automotive Operations, Inc.,
Mashantucket Pequot Gaming Enterprise/Foxwoods, MediaMath, Neovia Logistics, PlayAGS,
OSI Restaurant Partners, LLC, Palisades Center, PlayPower, Progressive Moulded Products, R.J.
O'Brien, SI Corporation, Stolt-Nielsen, S.A., Targus Group International, TG Natural Resources,
Tronox Inc., and Vonage Holdings Corporation.

---

[3]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this
Application.  Copies of these orders are available upon request of the Debtors' proposed counsel.

12.    Centerview is intimately familiar with the Debtors' businesses. The Debtors engaged Centerview in June of 2022 to serve as their investment banker in connection with various strategic alternatives.  Since its engagement, Centerview has worked closely with the Debtors' management, financial staff, and other professionals with respect to the Debtors' evaluation of strategic and restructuring alternatives, including, among other things, (i) analyzing the Debtors' liquidity and projected cash flows and evaluating the prospects for raising financing to support Celsius Mining LLC's operations, (ii) marketing the Debtors' various assets to potential buyers, (iii) marketing and analyzing potential debtor-in-possession financing proposals, (iv) acquainting itself with the Debtors' business, operations, properties and finances, and (v) assisting the Debtors in connection with preparations for these chapter 11 cases.

### Services to be Provided

13.    The terms and conditions of the Engagement Letter were negotiated in good faith and at arm's-length and reflect the parties' mutual agreement as to the substantial efforts and resources that have been and will continue to be required in connection with Centerview's engagement.

14.    Centerview has performed and will continue to perform the following services, among others, pursuant to the Engagement Letter, as requested by the Debtors:[4]

a.    General Financial Advisory and Investment Banking Services:

i.    familiarize itself with the business, operations, properties, financial condition, and prospects of the Debtors;

ii.    review the Debtors' financial condition and outlook;

---

[4]    This summary is solely for the convenience of the Court and parties-in-interest.  To the extent there is any conflict between the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by order of the Court) and any description or summary of the same herein, the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by order of the Court) shall control, as applicable.

iii.      advise and assist the Debtors in the development of financial data and presentations, including financial projections, to the Debtors' Board of Directors, various equity holders, creditors, and other parties;

iv.      evaluate the Debtors' debt capacity and capital structure alternatives;

v.      participate in negotiations among the Debtors and related equity holders, creditors, suppliers, lessors, and other interested parties with respect to any of the transactions contemplated by the Engagement Letter;

vi.      advise and assist the Debtors in evaluating a range of strategic alternatives and advise and assist in formulating alternative plans for the Debtors in connection with any transaction contemplated by the Engagement Letter; and

vii.      perform such other financial advisory services as may be specifically agreed upon in writing by the Debtors and Centerview.

b.      <u>Restructuring Services</u>:

i.      analyze various Restructuring[5] scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring;

ii.      advise and assist the Debtors in structuring, negotiating, implementing, and otherwise responding to the financial aspects of a Restructuring;

iii.      provide financial and valuation advice and assistance to the Debtors in developing and seeking approval of a plan of reorganization under chapter 11 of the Bankruptcy Code to effectuate a Restructuring (as the same may be modified from time to time, a "<u>Plan</u>");

iv.      provide financial advice and assistance to the Debtors in structuring any new securities or debt instruments to be issued pursuant to the Restructuring;

---

[5]    As used in the Engagement Letter and this Application, the term "<u>Restructuring</u>" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, structured resolution or settlement, retirement, refinancing, purchase or repurchase and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or bank or other credit facilities and/or all other indebtedness, obligations or liabilities (including, without limitation, partnership interests, lease obligations, trade credit facilities, customer-related obligations and/or contract, tort and contingent obligations), including pursuant to a repurchase or an exchange transaction, a Plan (as defined herein) or a solicitation of consents, waivers, acceptances, or authorizations.

    v.        advise and assist the Debtors in connection with and/or participate in negotiations with entities or groups affected by the Restructuring; and

    vi.       if requested by the Debtors, participate in hearings before the Court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with Debtors' counsel with respect to expert reports or testimony in connection therewith.

c.      <u>Financing Services</u>:[6]

    i.        provide financial advice and assistance to the Debtors in structuring and effecting a Financing,[7] identifying potential Investors and, at the Debtors' request, contacting such Investors; and

    ii.       assist in the arranging of a Financing, the due diligence process and negotiating the terms of any proposed Financing.

d.      <u>Sale Services</u>:

    i.        provide financial advice and assistance to the Debtors in connection with a Sale,[8] identifying potential acquirors and, at the Debtors' request, contacting such potential acquirors;

    ii.       assist the Debtors in connection with any due diligence process in connection with any potential Sale; and

    iii.    assist the Debtors in connection with and/or participate in negotiations with potential acquirors.

---

[6]  It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Centerview to underwrite, place or purchase any securities, in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to a Financing.

[7]  As used in the Engagement Letter and this Application, the term "<u>Financing</u>" shall mean a public or private issuance, sale or placement of equity, equity-linked or debt securities, instruments or obligations of the Debtors with one or more lenders and/or investors (each such lender or investor, an "Investor"), or any loan, rights offering or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code.

[8]  As used in the Engagement Letter and this Application, the term "<u>Sale</u>" shall mean any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which all or substantially all of the business, equity or assets of the Company are, directly or indirectly, sold, purchased or combined with another entity or company.

15.     If the Debtors request that Centerview perform services not specifically contemplated by the Engagement Letter, Centerview and the Debtors will agree, in writing, on the terms for such services and request the Court's approval thereof.

16.     The Debtors believe that the services provided by Centerview are necessary to enable the Debtors to maximize the value of their estates and successfully implement their restructuring.

## Professional Compensation and Expense Reimbursement

17.     Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Court Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of this Court, consistent with the proposed compensation set forth in the Engagement Letter.

18.     Further, because the Debtors seek approval of Centerview's proposed compensation structure pursuant to section 328(a) of the Bankruptcy Code, the Debtors believe that Centerview's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and should not constitute a "bonus" under applicable law.

19.     Notwithstanding anything herein to the contrary, the U.S. Trustee shall retain all rights to respond or object to the reasonableness of Centerview's interim and final applications for compensation and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code, and in the event the U.S. Trustee objects, the Court retains the right to review such interim and final applications pursuant to section 330 of the Bankruptcy Code.

20.     As set forth more fully in the Engagement Letter, and subject thereto, Centerview will be compensated as follows (the "Fee and Expense Structure"):

i.      **Monthly Advisory Fee**.  A monthly financial advisory fee of $250,000 (the "Monthly Advisory Fee"), the first of which shall be due and paid by the Debtors upon execution of the Engagement Letter and thereafter on each monthly anniversary thereof during the term of Centerview's engagement. After receipt of aggregate Monthly Advisory Fees of $3,000,000, 50% of the amount of any subsequent Monthly Advisory Fees paid to Centerview will be credited (but only once) against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b) of the Engagement Letter.

ii.      **Transaction Fee**.  If at any time during the term of Centerview's engagement or within the 12 full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (1) the Debtors consummate any Restructuring or Sale or (2) the Debtors enter into an agreement in principle, definitive agreement or Plan to effect a Restructuring or Sale, and at any time (including following the expiration of the Fee Period), such Restructuring or Sale is consummated, Centerview shall be entitled to receive a transaction fee (a "Transaction Fee"), contingent upon the consummation of a Restructuring or Sale and payable at the closing thereof equal to $12,000,000.

iii.      **Minority Sale Transaction Fee**.  If at any time during the Fee Period, whether in connection with the consummation of a Restructuring or otherwise, (1) the Debtors consummate any sale transaction not covered by the definition of Sale (a "Minority Sale"), or (2) the Debtors enter into an agreement in principle or definitive agreement to effect a Minority Sale, and at any time during the Fee Period such Minority Sale is consummated, the Debtors shall pay Centerview a fee (a "Minority Sale Transaction Fee") equal to 2.50% of the Aggregate Consideration.[9]  Such Minority Sale Transaction Fee shall be contingent upon the consummation of a Minority Sale and payable at the closing thereof.  Any fee paid under section 2(c) of the Engagement Letter shall be 50% credited (but only once) against any fees payable under section 2(b) of the Engagement Letter.

iv.      **Financing Fee**.  If at any time during the Fee Period,  (1) the Debtors consummate any Financing or (2) the Debtors receive and accept written commitments for one or more Financings (the execution by a potential

---

[9]     As used in the Engagement Letter and this Application, the term "Aggregate Consideration" shall mean, in part, the total amount of cash and the fair market value (on the date of payment and as determined by the Debtors and Centerview in good faith) of all securities and other property paid or payable, directly or indirectly, by the acquiring party (the "Acquiror") to the acquired party or the seller of the acquired business (in either case, the "Acquired"), or to the Acquired's contract parties, claim holders, security holders and employees, or by the Acquired to the Acquired's contract parties, claim holders, security holders and employees, in connection with a Minority Sale or a transaction related thereto (including, without limitation, amounts paid by the Acquiror (i) pursuant to covenants not to compete, employment contracts, employee benefit plans or other similar arrangements and (ii) to holders of any warrants, stock purchase rights, convertible securities or similar rights of the Acquired and to holders of any options or stock appreciation rights issued by the Acquired, whether or not vested).

financing source and the Debtors of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment), and at any time (including following the expiration of the Fee Period) any such Financing is consummated, the Debtors will pay to Centerview the following (each a "Financing Fee"):

1.  1.00% of the aggregate amount of financing commitments of any indebtedness issued that is secured by a first lien, including debtor-in-possession financing;

2.  3.00% of the aggregate amount of financing commitments of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated; and

3.  4.00% of the aggregate amount of financing commitments of any equity or equity-linked securities or obligations issued.

21.    In addition to any fees payable to Centerview, the Debtors will reimburse Centerview for its travel and other reasonable out-of-pocket expenses (including all fees, disbursements and other charges of counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Debtors' consent), incurred in connection with, or arising out of Centerview's activities under or contemplated by this engagement, as well as all costs and expenses as they are incurred in connection with investigating, preparing for, pursuing, defending against or providing evidence in, any pending or threatened action, claim, suit, investigation or other proceeding brought by or against any person, including, without limitation, by the Company against Centerview and vice versa related to or arising out of the Engagement Letter, Centerview's engagement or any matter or transaction contemplated thereby.  On June 21, 2022, the Debtors paid, and will maintain, a $10,000 expense advance for Centerview (the "Retainer").   Centerview will return the unused portion of the Retainer to the Debtors following termination of the Engagement Letter.  Centerview agrees to provide the Debtors with reasonable support for its expenses at the Debtors' request or at the Court's discretion.

22.     Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Court Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving the Application and consistent with the proposed Fee and Expense Structure set forth in the Engagement Letter.

23.     The Debtors believe the Fee and Expense Structure is consistent with compensation arrangements entered into by Centerview and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  The Fee and Expense Structure reflects a balance between a fixed monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Centerview in the Engagement Letter.  In analyzing the Fee and Expense Structure and the reasonableness of such compensation, the Debtors believe Centerview's fee proposal appropriately reflects the extensive time commitment and resources required. The fee proposal was negotiated on an arm's-length basis prior to any buyer outreach and designed to compensate Centerview fairly for its work.

24.     Centerview's strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which have been and will be required by the Debtors during the term of Centerview's engagement, were important factors to the Debtors in determining the Fee and Expense Structure.  The Debtors believe that the ultimate benefits of Centerview's services hereunder cannot be measured by reference to the number of hours to be expended by Centerview's professionals in the performance of such services. The Debtors and Centerview agreed upon the Fee and Expense Structure in anticipation that a

substantial commitment of professional time and effort would be required of Centerview and in light of the fact that (a) such commitment could foreclose other opportunities for Centerview and (b) the actual time and commitment required of Centerview and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Centerview.  Therefore, the Debtors believe that the Fee and Expense Structure is reasonable regardless of the number of hours Centerview's professionals spend performing their services and that in no event should the deferred component embodied in any fee to which Centerview is entitled to under the Engagement Letter be considered a "bonus" or fee enhancement.

## **Application for Compensation and Time Keeping**

25.    The Debtors request that Centerview and its professionals should be excused from maintaining time records similar to those customarily kept by attorneys and as required by Local Rule 2016-2 in connection with the services to be rendered pursuant to the Engagement Letter, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, Local Rules, orders of this Court, the Court Guidelines, and the U.S. Trustee Guidelines regarding submission and approval of fee applications and in light of the services that Centerview may provide to the Debtors and the structure of Centerview's compensation pursuant to the Engagement Letter.  Centerview still intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such applications will include time records setting forth, in a summary format, a description of the services that each

professional renders and the amount of time that such individual spent on each date in rendering services on behalf of the Debtors.

26.    Because it is not the general practice of investment banking firms, including Centerview, to keep contemporaneous detailed time records similar to those customarily kept by attorneys or provide or conform to a schedule of hourly rates for its professionals, Centerview does not ordinarily maintain contemporaneous time records in one-tenth (0.1) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals. Moreover, Centerview does not ordinarily keep time records on a "project category" basis; and, pursuant to the Engagement Letter, Centerview's compensation is based in part on a fixed Monthly Advisory Fee. Notwithstanding that Centerview does not charge for its services on an hourly basis, Centerview requests that it be permitted to maintain time records in half hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professionals rendering such services on behalf of the Debtors. Centerview will also maintain records in support of any costs and expenses incurred in connection with its services. The Debtors will pay Centerview's applications for compensation and expenses pursuant to the terms of the Engagement Letter and upon this Court's approval.

## **Indemnification, Reimbursement, and Contribution Provisions**

27.    As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and reimbursement obligations (such provisions, collectively, the "Indemnification Provisions"), set forth in Annex A of the Engagement Letter (the "Indemnification Agreement"). As more fully set forth therein, the Indemnification Agreement provides that the Debtors will indemnify and hold harmless Centerview, each of its affiliates, Centerview's and such affiliates' respective members,

directors, officers, employees and controlling persons, and each of their respective successors and assigns (each a "Centerview Person") from and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person, including, without limitation, by the Debtors against any Centerview Person and vice versa (collectively, "Losses") which are related to or arise out of the Engagement Letter, Centerview's engagement or any matter or transaction contemplated thereby.

28.    These Indemnification Provisions were negotiated at arm's length and in good faith between the Debtors and Centerview.  The Debtors believe that the Indemnification Provisions in the Engagement Letter reflect the customary qualifications and limits on such terms for financial advisory engagements both out of court and in chapter 11 cases and respectfully submit that the Indemnification Provisions are reasonable, subject to the modifications set forth in the Order.  The Debtors believe that the proposed modifications to the Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.  As part of this Application, the Debtors request that this Court approve the Indemnification Provisions.

**Efforts to Avoid Duplication of Services**

29.    The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including, among others: (a) Kirkland & Ellis LLP; (b) Alvarez and Marsal, LLC ("A&M"); (c) Ernst & Young LLP; and (d) Stretto, Inc.  The Debtors do not believe that the services to be performed by Centerview on behalf of the Debtors will be duplicative of services provided by these additional professionals, including the services of A&M.  A&M, a proposed financial advisor, is not being retained to perform the same services as Centerview, as set forth in both retention applications and engagement letters.  The Debtors and Centerview are mindful of

16

the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Centerview's retention as investment banker. The Debtors understand that Centerview will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

### Centerview's Disinterestedness

30.    Centerview has reviewed the list of parties-in-interest provided by the Debtors. To the best of Centerview's knowledge, information, and belief, as of the date hereof, and except to the extent disclosed herein or in the Puntus Declaration, Centerview: (a) believes it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no material connection to the Debtors, their creditors, or other parties-in-interest except as disclosed in the Puntus Declaration.

31.    Given the large number of parties-in-interest in these chapter 11 cases, and despite the efforts to identify and disclose Centerview's relationships with parties-in-interest in these chapter 11 cases, Centerview is unable to state with certainty that every client relationship or other connection has been disclosed in the Puntus Declaration. Centerview has informed the Debtors that if any new material facts or relationships bearing on the matters described herein are discovered or otherwise arise during the pendency of these chapter 11 cases, Centerview will use reasonable efforts to provide the Court with a supplemental declaration disclosing such new material facts or relationships.

32.    The Debtors are informed that Centerview will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any

17

other person, other than principals and employees of Centerview, to the extent required by section 504 of the Bankruptcy Code.

**Basis for Relief**

**A.**    **The Debtors Should Be Permitted to Retain and Employ Centerview on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code**.

33.    The Debtors seek approval of the retention and employment of Centerview pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties.  11 U.S.C. § 327(a).

34.    In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court

> approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

35.     As discussed above and in the Puntus Declaration, Centerview satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.   Centerview advised the Debtors prior to the commencement of these chapter 11 cases and, to date has committed a significant amount of time and effort assisting the Debtors with their restructuring efforts. Additionally, given the numerous issues that Centerview may be required to address in the performance of its services for the Debtors pursuant to the Engagement Letter, Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Centerview's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

36.     Indeed, the Debtors believe that the Fee Structure appropriately reflects: (a) the nature and scope of services to be provided by Centerview; (b) Centerview's substantial experience with respect to investment banking and financial advisory services; and (c) the fee structures typically utilized by Centerview and other leading investment banks who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

37.     As set forth above, and notwithstanding approval of Centerview's Engagement Letter under section 328 of the Bankruptcy Code, Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Court Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with

certain limited modifications as set forth herein.  Furthermore, the Debtors propose that their obligation to pay any fee, expense or indemnity to Centerview not be subject to any reduction by way of setoff, recoupment or counterclaim.

38.    The Debtors request that the requirements of Local Rule 2016-1, the Court Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court be tailored to the nature of Centerview's engagement and its compensation structure. Centerview has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment banking firms like Centerview to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, Centerview's restructuring professionals, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these chapter 11 cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the professionals who performed such tasks.  As such, the Debtors request modification of the requirements under Local Rule 2016-1, the Court Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court.

39.    Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases.  *See, e.g., In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. June 28, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).

40.     The Debtors also believe that employment of Centerview effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases.  Centerview has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated transactions.  *See, e.g., In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).

**B.      The Indemnification Provisions Are Appropriate**.

41.     The Indemnification Provisions in the Indemnification Agreement, as modified by the Order attached hereto, were negotiated at arm's-length between the Debtors and Centerview. The Debtors and Centerview believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out-of-court and in chapter 11 cases.  Similar provisions have been approved by courts in other large chapter 11 cases.  *See e.g.*, *In re Sungard Availability Services Capital, Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. 2019); *In re Cloud Peak Energy Inc.*, No. 19-11047 (KG) (Bankr. D. Del. June 12, 2019); *In re CTI Foods, LLC*, No. 19-10497 (CSS) (Bankr. D. Del. April 8, 2019); *In re Things Remembered, Inc*., No. 19-10234 (KG) (Bankr. D. Del. Feb. 13, 2019); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. Jan. 10, 2019); *In re Westmoreland Coal Company*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Nov. 14, 2018); *In re ATD Corporation*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 15, 2018); *In re BPS US Holdings Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. Nov. 9, 2016); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 10, 2015).

42.     Accordingly, the Debtors respectfully submit that the terms of the Indemnification Provisions are reasonable and customary and should be approved in these chapter 11 cases.

**C.      The Retention of Centerview is Critical to the Debtors' Success.**

43.      The Debtors submit that the retention of Centerview is in the best interests of all parties-in-interest in these chapter 11 cases.  As noted above, Centerview has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Centerview is a preeminent financial advisory and investment banking firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of Centerview's uniquely qualified professionals who have served them for several weeks prior to the Petition Date and have continued to assist them following the Petition Date.  Indeed, if the Debtors were forced to engage a new financial advisor and investment banker who lacks a thorough understanding of the Debtors' businesses, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay and increased cost.  Based on services performed to date, Centerview was integral in preparing the Debtors for these chapter 11 cases

44.      Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Centerview in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## Notice

45.    The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

46.    No prior request for the relief sought in this Application has been made to this or any other court.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: August 4, 2022

*/s/ Chris Ferraro*
Name: Chris Ferraro
Title: Chief Financial Officer
Celsius Network LLC

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF CENTERVIEW PARTNERS LLC AS INVESTMENT BANKER FOR THE DEBTORS EFFECTIVE AS OF JULY 13, 2022, (II) APPROVING THE TERMS OF THE CENTERVIEW AGREEMENT, (III) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2, AND (IV) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (a) authorizing the employment and retention of Centerview Partners LLC ("Centerview") to serve as the Debtors' investment banker as of July 13, 2022 in accordance with the terms and conditions set forth in that certain engagement letter between Centerview, the Debtors, and certain of the Debtors' affiliates, effective as of June 19, 2022 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to this Order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code; (b) approving the provisions of the Engagement Letter, including the compensation arrangements and indemnification and reimbursement provisions set forth therein; (c) modifying certain timekeeping

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application or the Engagement Letter, as applicable.

1

requirements of Bankruptcy Rule 2016(a), Local Rule 2016-1, the Court Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court in connection with Centerview's engagement; and (d) granting such other relief as is just and proper, all as more fully set forth in the Application; and upon the Puntus Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth in this Order, and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Centerview as their investment banker in these chapter 11 cases in accordance with the

terms and conditions set forth in the Engagement Letter, incorporated herein by reference and as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Centerview on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Petition Date.

3.      The Engagement Letter, including, without limitation, the Indemnification Agreement, is incorporated herein by reference and approved in all respects except as otherwise set forth herein.

4.      Centerview shall be compensated for fees and reimbursed for reasonable and documented out-of-pocket expenses by the Debtors in accordance with the terms of the Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Centerview, including without limitation the Monthly Fees, the Transaction Fee, the Minority Sale Transaction Fee, and the Financing Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as set forth herein.

5.      Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Centerview shall file interim and final fee applications for allowance of compensation and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Court Guidelines, the U.S. Trustee Guidelines, and any other procedures or orders of the Court; *provided, however*, the U.S. Trustee retains all rights to respond or object to Centerview's interim and final applications for compensation (including, without limitation, the Monthly Advisory Fees, the Minority Sale Transaction Fee, the Transaction Fee, and the Financing Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Centerview's interim and final

3

fee applications pursuant to section 330 of the Bankruptcy Code; *provided, further*, that "reasonableness" for this purpose shall be evaluated by comparing (among other things) the fees payable in these chapter 11 cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria.

6.    Centerview is authorized to apply the Retainer to any unbilled or otherwise remaining expenses that Centerview becomes aware of during its ordinary course billing review and reconciliation.  Centerview shall apply any remaining amounts of the Retainer as a credit towards postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to Centerview.

7.    Notwithstanding anything to the contrary in the Application and/or, the Engagement Letter, Centerview's restructuring professionals, with the exception of clerical and administrative staff, shall be required only to keep summary time records of the services they have performed in one-half hour increments. Centerview's professionals shall not be required to keep time records on a project category basis, and Centerview shall not be required to provide or conform to any schedule of hourly rates.

8.    In the event that Centerview seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and/or the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Centerview's own applications, both interim and final, and such invoices and time records shall be subject to the approval of the Court pursuant to section 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Centerview in retention and fee application matters.  For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorneys' fees and/or expenses set forth in <u>Annex A</u> to the Engagement Letter with respect to indemnification.

9.    The indemnification, exculpation, contribution, and reimbursement provisions included in <u>Annex A</u> to the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following modifications:

    a.    All requests by Centerview Persons for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall a Centerview Person be indemnified to the extent that a court determines by final order that any loss, claim, damage, demand, liability (joint or several) or action or proceeding resulted from such Centerview Person's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

    b.    In the event that Centerview seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Centerview for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Centerview's own application (both interim and final) and such invoices and time records shall be subject to the Court Guidelines and the U.S. Trustee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

    c.    Centerview shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of Centerview's counsel other than those incurred in connection with a request of Centerview for payment of indemnity, retention of Centerview and preparation of fee applications; and

      d.   In no event shall a Centerview Person be indemnified if the Debtor(s) or representatives of the estates assert a claim for, and a court determines by final order that such claim arose out of, such Centerview Person's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

10.    Centerview shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

11.    Notwithstanding anything to the contrary in the Application and/or Engagement Letter, to the extent that Centerview uses the services of independent contractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, Centerview (i) shall pass-through the cost of such Contractors to the Debtors at the same rate that Centerview pays the Contractors; (ii) shall seek reimbursement for actual out-of-pocket expenses only; and (iii) shall ensure that the Contractors are subject to the same conflict checks and disclosures as required of Centerview by Bankruptcy Rule 2014.

12.    Such services other than set forth in the Application that the Debtors may request that Centerview provide during the course of these chapter 11 cases, and as agreed to by Centerview, shall be subject to separate application and order of this Court.

13.    The Debtors and Centerview are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

14.    Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order.

17.     To the extent that there is any inconsistency between the Engagement Letter, the Application, the Puntus Declaration, and this Order, the provisions of this Order shall apply.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE

## Exhibit 1

**Engagement Letter**

Centerview Partners LLC
31 West 52nd Street
New York, NY 10019

August 2, 2022

CONFIDENTIAL
Celsius Network LLC
121 River Street, PH05
Hoboken, NJ 07030
Attention: Chris Ferraro

Dear Mr. Ferraro:

This letter (the "Agreement") confirms the terms under which Celsius Network LLC and certain of its affiliates (collectively, the "Company") have engaged Centerview Partners LLC ("Centerview") as its financial advisor and investment banker with respect to a possible Restructuring, Financing and/or Sale (each as defined below) and with respect to such other financial matters as to which the Company and Centerview may agree in writing during the term of this engagement. For purposes hereof, the term "Company" also includes any entity that the Company may form or invest in to consummate a Restructuring, Financing and/or Sale, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company, whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, Centerview may utilize the services of one or more of its affiliates, in which case references herein to Centerview shall include, as applicable, such affiliates. The terms of this Agreement shall apply to all services provided by Centerview to the Company in connection with the matters contemplated herein, including those provided prior to the date of this Agreement.

As used herein, the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, structured resolution or settlement, retirement, refinancing, purchase or repurchase and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or bank or other credit facilities and/or all other indebtedness, obligations or liabilities (including, without limitation, partnership interests, lease obligations, trade credit facilities, customer-related obligations and/or contract, tort and contingent obligations), including pursuant to a repurchase or an exchange transaction, a Plan (as defined below) or a solicitation of consents, waivers, acceptances or authorizations.

As used herein, the term "Financing" shall mean a public or private issuance, sale or placement of equity, equity-linked or debt securities, instruments or obligations of the Company with one or
more lenders and/or investors (each such lender or investor, an "Investor"), or any loan, rights
offering or other financing, including any "debtor in possession financing" or "exit financing" in
connection with a case under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101
et. seq. (the "Bankruptcy Code").

For purposes of this Agreement, the term "Sale" shall mean any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which all or substantially all of the business, equity or assets of the Company are, directly or indirectly, sold, purchased or combined with another entity or company.

1.    Centerview, as financial advisor and investment banker to the Company, will perform the following financial advisory and investment banking services:

   a.    General Financial Advisory and Investment Banking Services. To the extent requested by the Company, Centerview shall:

      i.    familiarize ourselves with the business, operations, properties, financial condition and prospects of the Company;

      ii.   review the Company's financial condition and outlook;

      iii.  advise and assist the Company in the development of financial data and presentations, including financial projections, to the Company's Board of Directors, various equity holders, creditors and other parties;

      iv.   evaluate the Company's debt capacity and capital structures alternatives;

      v.    participate in negotiations among the Company and related equity holders, creditors, suppliers, lessors and other interested parties with respect to any of the transactions contemplated by this Agreement;

      vi.   advise and assist the Company in evaluating a range of strategic alternatives and advise and assist in formulating alternative plans for the Company in connection with any transaction contemplated by this Agreement; and

      vii.  perform such other financial advisory services as may be specifically agreed upon in writing by the Company and Centerview.

*2*

b.     Restructuring Services.  To the extent requested by the Company, Centerview shall:

   i.     analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Company; and the recoveries of those stakeholders impacted by the Restructuring;

   ii.    advise and assist the Company in structuring, negotiating, implementing and otherwise responding to the financial aspects of a Restructuring;

   iii.   provide financial and valuation advice and assistance to the Company in developing and seeking approval of a plan of reorganization under chapter 11 of the Bankruptcy Code to effectuate a Restructuring (as the same may be modified from time to time, a "Plan");

   iv.    provide financial advice and assistance to the Company in structuring any new securities or debt instruments to be issued pursuant to the Restructuring;

   v.     advise and assist the Company in connection with and/or participate in negotiations with entities or groups affected by the Restructuring; and

   vi.    if requested by the Company, participate in hearings before the bankruptcy court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with the Company's counsel with respect to expert reports or testimony in connection therewith.

c.     Financing Services.  To the extent requested by the Company, Centerview shall:

   i.     provide financial advice and assistance to the Company in structuring and effecting a Financing, identifying potential Investors and, at the Company's request, contacting such Investors; and

   ii.    assist in the arranging of a Financing, the due diligence process and negotiating the terms of any proposed Financing.

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Centerview to underwrite, place or purchase any securities, in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to a Financing.

d.     Sale Services.  To the extent requested by the Company, Centerview shall:

i.     provide financial advice and assistance to the Company in connection with a Sale, identifying potential acquirors and, at the Company's request, contacting such potential acquirors;

ii.    assist the Company in connection with any due diligence process in connection with any potential Sale; and

iii.   assist the Company in connection with and/or participate in negotiations with potential acquirors.

In rendering its services to the Company hereunder, Centerview is not assuming any responsibility for the Company's underlying business decision to pursue any business strategy or to effect any Restructuring, Financing, and/or Sale. The Company agrees that Centerview shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions. The Company acknowledges that Centerview is not providing any advice on tax, legal, regulatory or accounting matters, and the Company agrees that it will seek and rely on the advice of its own professional advisors for such matters, and will make an independent decision with respect to the matters that are the subject of this engagement based on such advice.

In order to coordinate effectively the Company's and Centerview's activities to effect a Restructuring, Financing and/or Sale, the Company will use commercially reasonable efforts to promptly inform Centerview of any discussions, negotiations or inquiries regarding a possible Restructuring, Financing and/or Sale (including any such discussions, negotiations or inquiries that have occurred in the six month period prior to the date of this Agreement).

The Company shall use commercially reasonable efforts to make available to Centerview all information in its possession concerning the business, assets, operations, financial condition and prospects of the Company that Centerview reasonably requests in connection with the services to be performed for the Company hereunder, and shall provide Centerview with reasonable access to the Company's officers, directors, employees, independent accountants, and counsel, and other advisors, agents and other representatives of the Company as Centerview deems appropriate in its reasonable discretion. To the best of the Company's knowledge, all information furnished by or on its behalf to Centerview pertaining to the Company, when delivered, will be accurate and complete in all material respects. In addition, the Company agrees that it will use commercially reasonable efforts to promptly notify Centerview of any material event or change in the business affairs, condition (financial or otherwise) of the Company that occurs during the term of our engagement hereunder, or if it learns of any material inaccuracy or misstatement in, or material omission from, any information theretofore delivered to Centerview. The Company understands and agrees that, in performing our services hereunder, Centerview (a) will be using and relying on publicly available information and on materials, data and other information furnished to Centerview by the Company and other parties, (b) is entitled to assume and rely upon the accuracy and completeness of such publicly available information and the other information

*4*

so furnished without having independently verified the same, and (c) does not assume any responsibility for the accuracy or completeness of such information.  Centerview will not conduct an independent evaluation or appraisal of the assets or liabilities (including any contingent, derivative or off-balance sheet assets or liabilities) of the Company, or advise or opine on any solvency or viability issues, nor will it make an inspection of the properties or assets of the Company. With respect to any forecasts or projections that may be furnished to Centerview or discussed with the Company, Centerview will assume that they have been reasonably prepared on bases reflecting the best then currently available estimates and judgments of the management of the Company as to the matters covered thereby.   In connection with the services described above, Centerview acknowledges and agrees that it will transmit any memorandum prepared by the Company describing the Company and its assets, properties or businesses in connection with a Sale or a Financing to potential parties to a Sale or Financing only with the express prior written consent of the Company and subject to the terms of any confidentiality agreements entered into between the Company and such potential parties to a Sale or Financing.  The Company will be solely responsible for the contents of this memorandum.

2.      As compensation for our services rendered under this Agreement, the Company agrees to pay Centerview in cash, by wire transfer of immediately available funds when due, the following fees:

a.      A monthly financial advisory fee of $250,000 (the "<u>Monthly Advisory Fee</u>"), the first of which shall be due and paid by the Company upon execution of this Agreement and thereafter on each monthly anniversary thereof during the term of this engagement.  After receipt of aggregate Monthly Advisory Fees of $3,000,000, 50% of the amount of any subsequent Monthly Advisory Fees paid to Centerview will be credited (but only once) against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b) hereof.

b.      If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "<u>Fee Period</u>"), (1) the Company consummates any Restructuring or Sale or (2) the Company enters into an agreement in principle, definitive agreement or Plan to effect a Restructuring or Sale, and at any time (including following the expiration of the Fee Period), such Restructuring or Sale is consummated, Centerview shall be entitled to receive a transaction fee (a "<u>Transaction Fee</u>"), contingent upon the consummation of a Restructuring or Sale and payable at the closing thereof equal to $12,000,000

c.      If at any time during the Fee Period, whether in connection with the consummation of a Restructuring or otherwise, (1) the Company consummates any sale transaction not covered by the definition of Sale (a "<u>Minority Sale</u>"), or (2) the Company enters into an agreement in principle or definitive agreement to effect a Minority Sale, and at any time during the Fee Period such Minority Sale is consummated, the Company shall pay Centerview a fee (a "<u>Minority Sale Transaction Fee</u>") equal to 2.50% of the

Aggregate Consideration (as defined below).  Such Minority Sale Transaction Fee shall be contingent upon the consummation of a Minority Sale and payable at the closing thereof.  Any fee paid under this section 2(c) shall be 50% credited (but only once) against any fees payable under 2(b).

For purposes of this Agreement, the term "Aggregate Consideration" shall mean the total amount of cash and the fair market value (on the date of payment and as determined by the Company and Centerview in good faith) of all securities and other property paid or payable, directly or indirectly, by the acquiring party (the "Acquiror") to the acquired party or the seller of the acquired business (in either case, the "Acquired"), or to the Acquired's contract parties, claim holders, security holders and employees, or by the Acquired to the Acquired's contract parties, claim holders, security holders and employees, in connection with a Minority Sale or a transaction related thereto (including, without limitation, amounts paid by the Acquiror (i) pursuant to covenants not to compete, employment contracts, employee benefit plans or other similar arrangements and (ii) to holders of any warrants, stock purchase rights, convertible securities or similar rights of the Acquired and to holders of any options or stock appreciation rights issued by the Acquired, whether or not vested).  Aggregate Consideration shall also include the value of any liabilities (including obligations relating to any capitalized leases and the principal amount of any indebtedness for borrowed money) (x) existing on the Acquired's balance sheet at the time of a Minority Sale or repaid or retired in anticipation of a Minority Sale (if such Minority Sale takes the form of a merger or sale or exchange of stock) or (y) assumed directly or indirectly by the Acquiror in connection with a Minority Sale (if such Minority Sale takes the form of a sale or exchange of assets).  Aggregate Consideration shall also include (i) the net value (on the closing date of the Minority Sale and as determined by the Company and Centerview in good faith), if positive, of any current assets not sold to the Acquiror.  If a Minority Sale takes the form of a recapitalization of the Company (including, without limitation, through an extraordinary dividend or other distribution, a spin-off, split-off or similar transaction), Aggregate Consideration shall also include the fair market value (on the closing date of the Minority Sale and as determined by the Company and Centerview in good faith) of (i) the equity securities of the Company retained by the Company's security holders and/or creditors following the consummation of such transaction and (ii) any cash, securities (including securities of subsidiaries) or other consideration received by the Company's security holders and/or creditors in exchange for or in respect of securities of and/or claims against the Company in connection with such transaction (all such cash, securities and/or claims against other consideration received by such security holders and/or creditors being deemed to have been paid to such security holders and/or creditors in such transaction).  If a Minority Sale takes the form of a joint venture, partnership or other entity, Aggregate Consideration shall mean the fair market value (equity plus debt) of the joint venture, partnership or similar entity on the date of formation of such entity. In the event that any part of the consideration in connection with any Minority Sale will be payable (whether in one payment or a series of two or more payments) at any time following the consummation thereof, the term Aggregate Consideration shall include the present value of such future payment or payments, as determined by the Company and Centerview in good faith, except that amounts (if any) held in escrow shall be deemed to have been paid at closing. As used in this Agreement, the terms "payment," "paid" or "payable" shall be deemed to include, as applicable, the issuance or delivery of securities or other property other than cash.

d.  If at any time during the Fee Period, (1) the Company consummates any Financing or (2) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment), and at any time (including following the expiration of the Fee Period) any such Financing is consummated, the Company will pay to Centerview the following (each a "Financing Fee"):

i.  1.00% of the aggregate amount of financing commitments of any indebtedness issued that is secured by a first lien, including debtor-in possession financing;

ii.  3.00% of the aggregate amount of financing commitments of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated; and

iii.  4.00% of the aggregate amount of financing commitments of any equity or equity-linked securities or obligations issued.

In the event that the Company requests that Centerview contact potential investors in connection with a Financing that involves the sale or issuance of securities, upon Centerview's request, the Company and Centerview shall enter into an amendment to this Agreement having such representations and warranties and additional terms as are customary in such transactions.

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, Centerview shall be paid its applicable compensation hereunder upon the closing date of each stage even if one or more of such stages is consummated after the expiration of the Fee Period, so long as one or more of such stages is consummated during the Fee Period. For the avoidance of doubt, if the Company consummates a financing that falls into two or more of the categories in this subparagraph 2(d), the higher fee shall be payable.

Notwithstanding anything in this subparagraph 2(d) to the contrary, a Financing Fee earned in connection with a debtor-in-possession Financing shall be due upon the Company's receipt and acceptance of written commitments for a debtor-in-possession financing (it being understood and agreed that the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment).

The Company acknowledges and agrees that Centerview's restructuring expertise as well as its capital markets/financing knowledge and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Centerview's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Centerview's services hereunder

could not be measured merely by reference to the number of hours to be expended by Centerview's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Centerview and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Centerview and that the actual time and commitment required by Centerview and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given numerous issues which Centerview may be required to address in the performance of its services hereunder, Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Centerview's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards.

The Company and Centerview acknowledge and agree that more than one fee may become payable to Centerview under subparagraphs 2(b), 2(c) and/or 2(d) hereof in connection with any single transaction or a series of transactions. It is understood and agreed that if more than one fee becomes so payable to Centerview in connection with a series of independent transactions, each such fee shall be paid to Centerview, subject to applicable credits as provided in this paragraph 2.

3.     In addition to the fees payable by the Company to Centerview hereunder, the Company shall, whether or not any Restructuring, Financing and/or Sale shall be proposed or consummated, reimburse Centerview on a periodic basis for its travel and other reasonable out-of-pocket expenses (including all fees, disbursements and other charges of counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Company's consent), incurred in connection with, or arising out of Centerview's activities under or contemplated by this engagement. The Company shall also reimburse Centerview, at such times as Centerview shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in, or contemplated by, this engagement. Such reimbursements shall be made promptly upon submission by Centerview of statements for such expenses. It is understood and agreed that nothing contained herein shall be deemed to limit in any manner the indemnification, expense reimbursement and other obligations of the Company contained in the Indemnification Agreement attached hereto as Annex A.

4.     The Company and Centerview have entered into a separate letter agreement, dated the date hereof and attached hereto as Annex A (the "Indemnification Agreement"), providing for indemnification by the Company of Centerview and certain related persons. Such Indemnification Agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein. As stated therein, the Indemnification Agreement shall survive any termination or completion of Centerview's engagement hereunder.

5.    The Company agrees that neither Centerview nor any of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Centerview Persons" and each individually, a "Centerview Person") shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of or in right of the Company for or in connection with this engagement or any transactions or conduct in connection herewith, except to the extent that any losses, claims, damages or liabilities incurred by the Company are finally judicially determined to have resulted directly from the bad faith, willful misconduct or gross negligence of such Centerview Person.

6.    This Agreement and Centerview's engagement hereunder may be terminated by the Company or Centerview at any time upon 15 days' prior written notice thereof to the other party; provided, however, that (A) termination of Centerview's engagement hereunder shall not affect the Company's continuing obligations under the Indemnification Agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (B) notwithstanding any such termination, Centerview shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (C) termination of Centerview's engagement hereunder shall not affect the Company's obligation to reimburse the expenses accrued prior to such termination to the extent provided in paragraph 3 hereof.

7.    Centerview has been retained under this Agreement as an independent contractor with duties owed solely to the Company, and the Company acknowledges that Centerview is not acting as an agent of the Company or in a fiduciary capacity, whether pursuant to contract or otherwise, with respect to the Company or its stockholders, employees, creditors or any other third party.  The advice (oral or written) rendered by Centerview pursuant to this Agreement is intended solely for the benefit and use of the Company in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to Centerview be made by the Company, without the prior written consent of Centerview.  Centerview is not assuming any duties or obligations other than those expressly set forth in this Agreement.

8.    The Company agrees that, Centerview shall have the right to place advertisements in financial and other newspapers and journals and in marketing materials at its own expense describing its services to the Company hereunder.

9.    In the event that the Company becomes a debtor under the Bankruptcy Code, the Company shall use commercially reasonable efforts to promptly apply to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this Agreement and Centerview's retention by the Company under the terms of this Agreement, and subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard

*9*

of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use commercially reasonable efforts to obtain Bankruptcy Court authorization thereof. The Company will use commercially reasonable efforts to supply Centerview with a draft of such application and any proposed order authorizing Centerview's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Centerview to review and comment thereon. Centerview shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless and until Centerview's retention under the terms of this Agreement is approved under Sections 327(a) and 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Centerview in all respects. Centerview acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 9, payment of Centerview's fees and expenses shall be subject to (i) jurisdiction and approval of the Bankruptcy Court under Sections 327(a) and 328(a) of the Bankruptcy Code and any order approving Centerview's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interest and final fee applications. Centerview shall have no obligation to keep time records except as it does so in its normal practice and will have no obligation to provide services under this Agreement if it will be required to vary its normal time-keeping practices. In the event that the Company becomes a debtor under the Bankruptcy Code and Centerview's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Centerview hereunder as promptly as reasonably practicable in accordance with the terms hereof and any orders of the Bankruptcy Court. In so agreeing to seek Centerview's retention under section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Centerview's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company, that the value to the Company of Centerview's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Centerview hereunder are reasonable regardless of the number of hours to be expended by Centerview's professionals in performance of the services to be provided hereunder. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Centerview in cash.

The Company agrees that Centerview's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursements and indemnification provisions of this Agreement (including, without limitation, Annex A hereto) shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Company also agrees to assist Centerview in preparing, filing and serving all required fee statements, interim fee applications, and final fee application. The Company agrees

to support Centerview's fee applications during any Bankruptcy Court hearing on such fee applications, so long as the fees and expenses sought by Centerview therein are consistent with this Agreement.

10.    This Agreement shall be deemed made in New York. This Agreement and all controversies arising from or relating to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to such State's rules concerning conflicts of laws that might provide for any other choice of law. The Company and Centerview agree that any action or proceeding based hereon, or arising out of Centerview's engagement hereunder, shall be brought and maintained in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; _provided_ that, if has commenced a chapter 11 case, all legal proceedings relating to this Agreement shall be brought in the Bankruptcy Court. The Company and Centerview each hereby irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, or, if a chapter 11 case is commenced by the Company, the Bankruptcy Court, for the purpose of any such action or proceeding as set forth above. Each of the Company and Centerview hereby irrevocably waive, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that any such action or proceeding has been brought in an inconvenient forum and agree not to plead or claim the same. THE COMPANY (FOR ITSELF, ANYONE CLAIMING THROUGH IT OR IN ITS NAME, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) AND CENTERVIEW EACH HEREBY IRREVOCABLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11.    This Agreement may be executed in counterparts, each of which together shall be considered a single document. This Agreement may not be assigned by either party (except by Centerview to an affiliate) without the prior written consent of the other. This Agreement shall be binding upon Centerview and the Company and their respective successors and permitted assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This Agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto, other than the Indemnified Persons referenced in the Indemnification Agreement attached hereto as Annex A and the Centerview Persons referenced in paragraph 5 hereof. This Agreement and the Indemnification Agreement constitute the entire agreement of the parties with respect to the subject matter hereof, and may not be amended or otherwise modified or its provisions waived except by a writing executed by Centerview and the Company.

*11*

12.     This Agreement supersedes in its entirety all prior agreements between Centerview and the Company related to the above referenced matter, including that certain agreement dated June 19, 2022.  The parties acknowledge that they intend for this agreement to be effective as of June 19, 2022.

13.     Centerview is engaged directly and through its affiliates and related parties in a number of investment banking, financial advisory and merchant banking activities. The Company acknowledges and agrees that in performing its services for the Company hereunder, Centerview shall have no duty to disclose to the Company, or to use for the benefit of the Company, any proprietary or non public information obtained by Centerview or its affiliates or related parties in the course of providing services to any other entity or person, engaging in any transaction (including as principal) or otherwise conducting its business.

We are pleased to accept this engagement and look forward to working with the Company.  Please confirm that the foregoing is in accordance with our mutual understanding by signing and returning to Centerview this letter and the Indemnification Agreement attached hereto as Annex A, which shall thereupon constitute binding agreements between Centerview and the Company.

Very truly yours,

CENTERVIEW PARTNERS LLC

By:

Name: Marc Puntus
Title: Partner

Accepted and Agreed to:

CELSIUS NETWORK LLC

By:    _____

Name: Chris Ferraro
Title: Chief Financial Officer

Annex A

August 2, 2022

Centerview Partners LLC
31 West 52nd Street
New York, NY 10019

Ladies and Gentlemen:

In connection with the engagement (the "Engagement") of Centerview Partners LLC ("Centerview") and Celsius Network LLC and certain of its affiliates (collectively, the "Company") to render financial advisory services to the Company pursuant to a letter agreement dated the date hereof to be entered into between the Company and Centerview (the "Engagement Agreement"), the Company hereby agrees as follows:

1.  Except as provided in paragraph 3 hereof, the Company agrees to indemnify and hold harmless the Centerview Persons (as defined below) from and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person, including, without limitation, by the Company against any Centerview Person and vice versa (collectively, "Losses"), which are related to or arise out of the Engagement Agreement, the Engagement or any matter or transaction contemplated thereby.  As used in this letter agreement, the term "Centerview Persons" shall mean Centerview and each of its affiliates, Centerview's and such affiliates' respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns.

2.  The Company agrees to reimburse Centerview and each other Centerview Person promptly upon request for all costs and expenses (including fees, disbursements and other charges of legal counsel), as they are incurred in connection with investigating, preparing for, pursuing, defending against or providing evidence in, any pending or threatened action, claim, suit, investigation or other proceeding brought by or against any person, including, without limitation, by the Company against any Centerview Person and vice versa, in any jurisdiction related to or arising out of the Engagement Agreement, the Engagement or any matter or transaction contemplated thereby (whether or not Centerview or any other Centerview Person is a named party or witness, and whether or not any liability to any person results therefrom), including, without limitation, in connection with enforcing the terms hereof.

3.  Notwithstanding the foregoing, the Company shall have no obligation to indemnify and hold harmless any Centerview Person under this letter agreement in respect of any Losses to the extent that such Losses are finally judicially determined to have resulted directly from the bad faith, willful misconduct or gross negligence of such Centerview Person.

*1*

4.  The Company agrees that it will not, without Centerview's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, claim, suit, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Centerview or any other Centerview Person is an actual or potential party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of each Centerview Person from all liability arising out of such action, claim, suit, investigation or proceeding and does not impose any monetary or financial obligation on any Centerview Person or contain any admission of culpability or liability on the part of any Centerview Person. No Centerview Person seeking indemnification, reimbursement or contribution under this letter agreement will, without the Company's prior written consent (which consent shall not be unreasonably withheld or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

5.  If the foregoing indemnification provided for herein is determined to be unavailable to a Centerview Person for any reason or is insufficient to hold it harmless in respect of any Losses referred to herein, then, in lieu of indemnifying such Centerview Person hereunder, the Company shall contribute to the amount paid or payable by such Centerview Person as a result of such Losses (and expenses related thereto) (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and to Centerview, on the other hand, with respect to the Engagement or (ii) if the allocation provided by clause (i) of this paragraph is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of each of the Company, together with its officers, directors, employees, stockholders, affiliates and other advisors, on the one hand, and Centerview, on the other hand, and any other relevant and equitable considerations; provided, however, that except with respect to any Losses that are finally judicially determined to have resulted from the bad faith, willful misconduct or gross negligence of any Centerview Person, in no event shall the aggregate contribution of the Centerview Persons to the amounts so paid or payable exceed the aggregate amount of all fees actually received by Centerview from the Company in connection with the Engagement (excluding any amounts received by Centerview as reimbursement of expenses pursuant to the Engagement Agreement). For purposes of this letter agreement, the relative benefit to the Company and Centerview of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by the Company in the transaction or transactions that are the subject of the Engagement, whether or not such transaction is proposed or completed, bears to (b) the fees paid or to be paid to Centerview under the Engagement Agreement.

6.  This letter agreement shall be deemed made in New York. This letter agreement and all controversies arising from or relating to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to such State's rules concerning conflicts of laws that might provide for any other choice of law. Each of the Company and Centerview agrees that any action or proceeding based on, arising out of or resulting from any matter referred to in this letter agreement, shall be brought and

*2*

maintained exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided that, if the Company has commenced a chapter 11 case, all legal proceedings relating to this letter agreement shall be brought in the bankruptcy court overseeing such proceedings. The Company and Centerview each hereby irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, or, if a chapter 11 cases is commenced by the Company, the relevant bankruptcy court, for the purpose of any such action or proceeding as set forth above, and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceeding. Each of the Company and Centerview hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that any such action or proceeding has been brought in an inconvenient forum, and agree not to plead or claim the same. ANY RIGHTS OF TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS LETTER AGREEMENT ARE HEREBY WAIVED.

7.   The indemnity, contribution, reimbursement and other obligations of the Company hereunder shall be in addition to any liability that the Company may have, at common law or otherwise, and shall be binding on its successors and permitted assigns. The obligations of the Company hereunder cannot be assigned without the prior written consent of Centerview.

8.   Prior to or at the time a public announcement is made concerning the Company entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify Centerview in writing thereof and, if requested by Centerview, shall use commercially reasonable efforts to arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein.

9.   The terms of this letter agreement shall apply to all services provided by Centerview to the Company in connection with the matters contemplated by the Engagement, including those provided prior to the date of this letter agreement. This letter agreement supersedes the prior letter agreement dated June 17, 2022. The parties acknowledge that they intend for this letter agreement to be effective as of June 17, 2022. The provisions of this letter agreement shall apply to any subsequent amendment to or modification of the Engagement Agreement, and shall survive the termination of the Engagement Agreement or completion of any transaction contemplated by the Engagement Agreement. The provisions of paragraph 11 of the Engagement Agreement are incorporated by reference into this letter agreement.

Very truly yours

CELSIUS NETWORK LLC

By: _____

Chris Ferraro
Chief Financial Officer

Accepted:

CENTERVIEW PARTNERS LLC

By: _____

Marc Puntus
Partner

## Exhibit B

**Puntus Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>In re:</td><td>)</td><td>Chapter 11</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>CELSIUS NETWORK LLC, <em>et al.</em>,[1]</td><td>)</td><td>Case No. 22-10964 (MG)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Debtors.</td><td>)</td><td>(Jointly Administered)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**DECLARATION OF**
**MARC PUNTUS IN SUPPORT**
**OF DEBTORS' APPLICATION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF CENTERVIEW PARTNERS LLC AS**
**INVESTMENT BANKER FOR THE DEBTORS EFFECTIVE AS OF**
**JULY 13, 2022, (II) APPROVING THE TERMS OF THE CENTERVIEW**
**AGREEMENT, (III) WAIVING CERTAIN REPORTING REQUIREMENTS**
**PURSUANT TO LOCAL RULE 2016-2, AND (IV) GRANTING RELATED RELIEF**

I, Marc Puntus, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am a Partner in and Co-Head of the Debt Advisory and Restructuring Practice of Centerview Partners LLC ("Centerview").[2]

2.      I am authorized to submit this declaration (the "Declaration") in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Centerview Partners LLC as Investment Banker for the Debtors Effective as of July 13, 2022 (II) Approving the Terms of the Centerview Agreement, (III) Waiving Certain Reporting*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Application or the Engagement Letter, as applicable.

*Requirements Pursuant to Local Rule 2016-2, and (IV) Granting Related Relief* (the "Application").

3.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or by employees of Centerview under my supervision and direction. If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## CENTERVIEW'S QUALIFICATIONS

4.      Established in 2006, Centerview is an independent investment banking firm providing financial advisory services, including mergers and acquisitions and restructuring advice, across a broad range of industries.  Centerview serves a diverse set of clients around the world from its offices in New York, San Francisco, Palo Alto, London, and Paris.  Centerview's Debt Advisory and Restructuring Group, which was founded in 2011, has extensive experience in designing and managing complex restructuring processes among a wide range of stakeholders, and a demonstrated track record of designing, negotiating and implementing amendments, exchange offers, financings, distressed merger and acquisition transactions and out-of-court and in-court restructurings.  Centerview and its principals have advised debtors, lenders, committees, equity holders, and acquirors in many complex financial reorganizations.  Centerview's professionals have collectively advised on transactions representing over $300 billion in restructured debt.

5.      Centerview's professionals, including while employed at other firms, are providing or have provided financial advisory, investment banking, and other services in connection with the in-court restructuring of numerous companies, including the following:  *In re Enjoy Technology, Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. 2022); *In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (Bankr. S.D. Tex. 2020); *In re Sungard Availability Services Capital, Inc.*, No. 19-22915 (RDD)

(Bankr. S.D.N.Y. 2019); *In re Blackhawk Mining LLC*, 19-11595 (LSS) (Bankr. D. Del. 2019); *In re Cloud Peak Energy Inc.*, No. 19-11047 (KG) (Bankr. D. Del. 2019); *In re CTI Foods, LLC*, No. 19-10497 (CSS) (Bankr. D. Del 2019); *In re PG&E Corporation,* No. 19-30088 (DM) (Bankr. N.D. Cal. 2019); *In re Westmoreland Coal Company*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. 2018); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. 2018); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. 2017); *In re Old BPSUSH Inc*., No. 16-12373 (KJC) (Bankr. D. Del. 2016); *In re Peabody Energy Corp*., No. 16-42529 (BSS) (Bankr. E.D. Mo. 2016); *In re Patriot Coal Corp*., No. 15-32450 (KLP) (Bankr. E.D. Va. 2015); *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y. 2017); *In re Caesars Entm't Operating Co., Inc.*, No. 15-10047 (KG) (Bankr. D. Del. 2015); *In re Residential Capital, LLC, et al*., No. 12-12020 (MG) (Bankr. S.D.N.Y. 2017); *In re Glob. Brokerage Inc*., No. 17-13532 (MEW) (Bankr. S.D.N.Y. 2017); *In re Vanguard Natural Res., LLC*, No. 17-30560 (MI) (Bankr. S.D. Tex. 2017); *In re SandRidge Energy, Inc*., No. 16-32488 (DRJ) (Bankr. S.D. Tex. 2016); *In re Midstates Petrol. Co., Inc*., No. 16-32237 (DRJ) (Bankr. S.D. Tex. 2016); *In re Molycorp, Inc*., No. 15-11357 (CSS) (Bankr. D. Del. 2015); *In re Magnum Hunter Res. Corp*., No. 15-12533 (KG) (Bankr. D. Del. 2015); *In re Atlas Res. Partners, LP*, No. 16-12149 (SHL) (Bankr. D. Del. 2016); *In re Aspect Software, Inc*., No. 16-10597 (MFW) (Bankr. D. Del. 2016); *In re Seventy Seven Energy Inc*., No. 16-11410 (LSS) (Bankr. D. Del. 2016); *In re SunEdison, Inc*., No. 16-10992 (SMB) (Bankr. S.D.N.Y. 2016); and *In re Synergy Pharmaceuticals Inc.*, No. 18-14010 (JLG) (Bankr. S.D.N.Y. 2018).[3]

---

[3]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request of the Debtors' proposed counsel.

6.      Centerview's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including: Anchor Danly; Autocam Corporation; Broder Bros Co., CDX Gas, Caesars Entertainment Corporation, Chicago Bridge & Iron Company, Cloud Peak Energy, CMS Energy, CNL Hotels & Resorts, Culligan, DS Waters of America, Inc., Gate Gourmet, Inc., Grupo TMM, S.A., Huntsman Corporation, Ion Media Networks, Isola Group Ltd., J. C. Penney Company, Keystone Automotive Operations, Inc., Mashantucket Pequot Gaming Enterprise/Foxwoods, MediaMath, Neovia Logistics, OSI Restaurant Partners, LLC, Palisades Center, PlayAGS, PlayPower, Progressive Moulded Products, R.J. O'Brien, SI Corporation, Stolt-Nielsen, S.A., Targus Group International, TG Natural Resources, Tronox Inc., and Vonage Holdings Corporation.

## SERVICES TO BE RENDERED

7.      Subject to further order of the Court, and as set forth more fully in the Engagement Letter attached to the Order as <u>Exhibit 1</u>, in consideration for the compensation contemplated therein, Centerview has and will perform the following services (the "<u>Services</u>"), as requested, for the Debtors:[4]

a.      <u>General Financial Advisory and Investment Banking Services</u>:

  i.      familiarize itself with the business, operations, properties, financial condition, and prospects of the Debtors;

  ii.      review the Debtors' financial condition and outlook;

  iii.      advise and assist the Debtors in the development of financial data and presentations, including financial projections, to the Debtors' Board of Directors, various equity holders, creditors, and other parties;

---

[4]    This summary is solely for the convenience of the Court and parties-in-interest.  The summary of the Engagement Letter in this Declaration is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used and not otherwise defined in this Declaration shall have the meanings ascribed to them in the Engagement Letter.

iv.    evaluate the Debtors' debt capacity and capital structure alternatives;

v.    participate in negotiations among the Debtors and related equity holders, creditors, suppliers, lessors, and other interested parties with respect to any of the transactions contemplated by the Engagement Letter;

vi.    advise and assist the Debtors in evaluating a range of strategic alternatives and advise and assist in formulating alternative plans for the Debtors in connection with any transaction contemplated by the Engagement Letter; and

vii.    perform such other financial advisory services as may be specifically agreed upon in writing by the Debtors and Centerview.

b.    <u>Restructuring Services</u>:

i.    analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring;

ii.    advise and assist the Debtors in structuring, negotiating, implementing and otherwise responding to the financial aspects of a Restructuring;

iii.    provide financial and valuation advice and assistance to the Debtors in developing and seeking approval of a plan of reorganization under chapter 11 of the Bankruptcy Code to effectuate a Restructuring (as the same may be modified from time to time, a "<u>Plan</u>");

iv.    provide financial advice and assistance to the Debtors in structuring any new securities or debt instruments to be issued pursuant to the Restructuring;

v.    advise and assist the Debtors in connection with and/or participate in negotiations with entities or groups affected by the Restructuring; and

vi.    if requested by the Debtors, participate in hearings before the Court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with Debtors' counsel with respect to expert reports or testimony in connection therewith.

c.    <u>Financing Services</u>:

i.    provide financial advice and assistance to the Debtors in structuring and effecting a Financing, identifying potential Investors and, at the Debtors' request, contacting such Investors; and

   ii.  assist in the arranging of a Financing, the due diligence process, and negotiating the terms of any proposed Financing.

  d. <u>Sale Services</u>:

   i.  provide financial advice and assistance to the Debtors in connection with a Sale, identifying potential acquirors and, at the Debtors' request, contacting such potential acquirors;

   ii.  assist the Debtors in connection with any due diligence process in connection with any potential Sale; and

   iii.  assist the Debtors in connection with and/or participate in negotiations with potential acquirors.

8. I believe these professional services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' business while subject to chapter 11 of the Bankruptcy Code. Further, if the Debtors request that Centerview perform services not contemplated by the Engagement Letter, Centerview and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval. I believe that the employment of Centerview is important to enabling the Debtors to execute their duties as debtors in possession and to effectuate their reorganization efforts.

## **PROFESSIONAL COMPENSATION**

9. Centerview's decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

10. As set forth more fully in the Engagement Letter, and subject thereto, Centerview will be compensated as follows (the "<u>Fee and Expense Structure</u>"):

   i.  **<u>Monthly Advisory Fee</u>**. A monthly financial advisory fee of $250,000 (the "<u>Monthly Advisory Fee</u>"), the first of which shall be due and paid by

the Debtors upon execution of the Engagement Letter and thereafter on each monthly anniversary thereof during the term of Centerview's engagement. After receipt of aggregate Monthly Advisory Fees of $3,000,000, 50% of the amount of any subsequent Monthly Advisory Fees paid to Centerview will be credited (but only once) against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b) of the Engagement Letter.

ii.    **Transaction Fee**.   If at any time during the term of Centerview's engagement or within the 12 full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (1) the Debtors consummate any Restructuring or Sale or (2) the Debtors enter into an agreement in principle, definitive agreement or Plan to effect a Restructuring or Sale, and at any time (including following the expiration of the Fee Period), such Restructuring or Sale is consummated, Centerview shall be entitled to receive a transaction fee (a "Transaction Fee"), contingent upon the consummation of a Restructuring or Sale and payable at the closing thereof equal to $12,000,000.

iii.    **Minority Sale Transaction Fee**.   If at any time during the Fee Period, whether in connection with the consummation of a Restructuring or otherwise, (1) the Debtors consummate any sale transaction not covered by the definition of Sale (a "Minority Sale"), or (2) the Debtors enter into an agreement in principle or definitive agreement to effect a Minority Sale, and at any time during the Fee Period such Minority Sale is consummated, the Debtors shall pay Centerview a fee (a "Minority Sale Transaction Fee") equal to 2.50% of the Aggregate Consideration.   Such Minority Sale Transaction Fee shall be contingent upon the consummation of a Minority Sale and payable at the closing thereof.  Any fee paid under section 2(c) of the Engagement Letter shall be 50% credited (but only once) against any fees payable under section 2(b) of the Engagement Letter.

iv.    **Financing Fee**.   If at any time during the Fee Period,  (1) the Debtors consummate any Financing or (2) the Debtors receive and accept written commitments for one or more Financings (the execution by a potential financing source and the Debtors of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment), and at any time (including following the expiration of the Fee Period) any such Financing is consummated, the Debtors will pay to Centerview the following (each a "Financing Fee"):

1.    1.00% of the aggregate amount of financing commitments of any indebtedness issued that is secured by a first lien, including debtor-in-possession financing;

2.    3.00% of the aggregate amount of financing commitments of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated; and

7

3.      4.00% of the aggregate amount of financing commitments of any equity or equity-linked securities or obligations issued.

11.     In addition to any fees payable to Centerview, the Debtors will reimburse Centerview for all of its actual, reasonable, and documented out-of-pocket expenses as they are incurred in entering into and performing services under the Engagement Letter, including the costs of Centerview's legal counsel (without the need for such legal counsel to be retained as a professional in these Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(c) of the Bankruptcy Code).  On June 21, 2022, the Debtors paid, and will maintain, a $10,000 expense advance for Centerview (the "Retainer").  Centerview will return the unused portion of the Retainer to the Debtors following termination of the Engagement Letter. Centerview agrees to provide the Debtors with reasonable support for its expenses at the Debtors' request or at the Court's discretion.

12.     Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Court Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving the Application and consistent with the proposed compensation set forth in the Engagement Letter.

13.     Centerview agreed upon the Fee and Expense Structure in anticipation that a substantial commitment of professional time and effort would be required of Centerview and in light of the fact that (a) such commitment could foreclose other opportunities for Centerview and (b) the actual time and commitment required of Centerview and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Centerview.

8

## APPLICATION FOR COMPENSATION AND TIME KEEPING

14.     Centerview still intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such applications will include time records setting forth, in a summary format, a description of the services that each professional renders and the amount of time that such individual spent on each date in rendering services on behalf of the Debtors.

15.     Because it is not the general practice of investment banking firms, including Centerview, to keep contemporaneous detailed time records similar to those customarily kept by attorneys or provide or conform to a schedule of hourly rates for its professionals, Centerview does not ordinarily maintain contemporaneous time records in one-tenth (0.1) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals.  Moreover, Centerview does not ordinarily keep time records on a "project category" basis and, pursuant to the Engagement Letter, Centerview's compensation is based in part on a fixed Monthly Advisory Fee. Notwithstanding that Centerview does not charge for its services on an hourly basis, Centerview requests that it be permitted to maintain time records in half hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professionals rendering such services on behalf of the Debtors. Centerview will also maintain records in support of any costs and expenses incurred in connection with its services.

## INDEMNIFICATION

16.     As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and reimbursement obligations (the "Indemnification Provisions"), set forth in Annex A of the Engagement Letter (the "Indemnification Agreement").  I believe the Indemnification Provisions

reflected in the Indemnification Agreement are customary and reasonable terms of consideration for investment banking firms such as Centerview for engagements both out of court and, as modified by the order approving Centerview's retention, in chapter 11 cases. The Indemnification Agreement's Indemnification Provisions were fully negotiated by the Debtors and Centerview at arm's-length and in good faith.

## NO DUPLICATION OF SERVICES

17.    The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including, among others: (a) Kirkland & Ellis LLP; (b) Alvarez and Marsal, LLC; (c) Ernst & Young LLP; and (d) Stretto, Inc.  Centerview is mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Centerview's retention as investment banker. Centerview will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

## CENTERVIEW'S DISINTERESTEDNESS

18.    Prior to the Petition Date and pursuant to the Engagement Letter, the Debtors paid Centerview $500,000 in Monthly Advisory Fees for the months of June and July, $246.59 as reimbursement for Centerview's expenses billed through the Petition Date, and the Retainer. Centerview has received no other compensation from the Debtors pursuant to the Engagement Letter.  As of the Petition Date, Centerview did not hold a prepetition claim against the Debtors for fees or expenses related to services rendered in connection with the engagement.

19.    In connection with its proposed retention by the Debtors in these chapter 11 cases, Centerview undertook to determine whether it had any conflicts or other material relationships that

might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. In connection with this inquiry, Centerview obtained from the Debtors and their professionals the names of individuals and entities that may be parties-in-interest in these chapter 11 cases (the "Potential Parties-in-Interest").  A categorized summary of the Potential Parties-in-Interest is provided on **Schedule 1** attached hereto

20.     To the best of my knowledge, information, and belief, Centerview has not represented any Potential Parties-in-Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these cases.

21.     As part of this inquiry, Centerview entered the names of the Potential Parties-in-Interest into its computer database of existing and prior client and similar relationships. The list generated from Centerview's client database is over-inclusive.  Through this process, Centerview determined that it currently has and/or formerly had a relationship with certain of the Potential Parties-in-Interest (and/or their affiliates or entities that Centerview believes to be affiliates, as the case may be) on matters wholly unrelated to the Debtors or these chapter 11 cases. To the best of my knowledge, information and belief, and based on such internal review process, **Schedule 2** lists Potential Parties-in-Interest (and/or their apparent affiliates or entities that Centerview believes to be affiliates, as the case may be) with which Centerview currently has or formerly had a client or similar relationship on matters wholly unrelated to the Debtors or these chapter 11 cases, including but not limited to engagements to provide financial advisory services (including situations where the Potential Party-in-Interest is or was only a member of a group of lenders, creditors or equity owners that Centerview represented) and entities with whom Centerview has engaged in or is currently engaged in an ordinary course business development

11

dialogue.  I note that Centerview has in the past represented WestCap Management LLC, a vendor of the Debtors and a Potential Party-in-Interest (also an affiliate of WestCap Group, a significant equity holder of the Debtors and a Potential Party-in-Interest), in connection with a matter unrelated to these chapter 11 cases.  Centerview has not signed an engagement letter with respect to or received any fees in connection with such matter, which I am informed is no longer ongoing.

22.     As part of Centerview's diverse business, Centerview appears or may appear as a financial advisor or an investment banker in numerous cases, proceedings, or transactions involving attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and Potential Parties-in-Interest or be claimants and Potential Parties-in-Interest in these cases. Further, Centerview (including its professionals through their prior employment) has in the past, and may in the future, be represented by attorneys and law firms, some of whom may be involved in these cases.  In addition, Centerview (including its professionals through their prior employment) has in the past and will likely in the future be working with, against or for other professionals involved in these cases in matters unrelated to these cases.  In addition, Centerview has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or against or has mutual clients with other professionals involved in these chapter 11 cases. In particular, Centerview may also be engaged to represent, or may have been engaged to represent in the past, committees or groups of lenders, creditors, or equity owners in matters unrelated to the Debtors or these chapter 11 cases, some of which are included on the Potential Parties-in-Interest list. Furthermore, as set forth on **Schedule 3**, Centerview has vendor relationships with certain of the entities listed as Potential Parties-in-Interest, including law firms, unrelated to the Debtors or these chapter 11 cases. Based on our current knowledge of the entities listed as Potential

Parties-in-Interest in these chapter 11 cases and the professionals involved, none of these business relations constitute interests materially adverse to the Debtors in matters upon which Centerview is to be engaged in these cases.

23.    Other than as referenced herein or set forth on **<u>Schedule 2</u>**, I am unaware of any existing or prior client or similar relationships that Centerview has had with the Potential Parties-in-Interest.  Centerview has not been engaged to assist any entity or person other than the Debtors on matters relating to, or in connection with, these cases.  If the Court approves the proposed employment of Centerview by the Debtors, Centerview will not accept any engagement or perform any services in relation to these cases for any entity or person other than the Debtors. Centerview is a global investment banking and advisory firm.  Given the size of Centerview and the breadth of Centerview's client base, it is possible that Centerview may now or in the future be engaged by one or more of the Potential Parties-in-Interest in matters unrelated to the Debtors or these cases without my knowledge.  In addition, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not listed as Potential Parties-in-Interest and with whom Centerview may now or in the future have engagements or maintain material commercial or other professional relationships.  To the extent that Centerview discovers any, or enters into any new material commercial or other professional relationship with Potential Parties-in-Interest, it will use reasonable efforts to supplement this disclosure to the Court.

24.    Further, Centerview has legal and separate affiliates and related parties (the "<u>Corporate Group Entities</u>") that engage in a variety of investment activities.  The Corporate Group Entities operate Centerview Capital Consumer, a consumer-focused private equity and investment business and Centerview Capital Technology, a technology focused private and growth

equity business. The Corporate Group Entities do not reside in the same corporate structure as Centerview. The Centerview employees providing services in connection with these chapter 11 cases have no control over investment or business decisions made for the Corporate Group Entities, and because of physical and electronic information barriers and other compliance policies and procedures, have no access to any confidential information of the Corporate Group Entities. Likewise, the investment professionals responsible for the Corporate Group Entities' day-to-day portfolio management have no access to any confidential information relating to Centerview's work for the Debtors. Nevertheless, none of the Corporate Group Entities hold an ownership interest in, or debt of, any of the Debtors or the other Potential Parties-in-Interest.[5] Based upon my understanding from Centerview's internal compliance group, Centerview's internal compliance group, which sits above Centerview's investment banking deal teams and the investment professionals within Corporate Group Entities, has real-time access to the indentities of the companies in which the Corporate Group Entities invest. As part of Centerview's search for relationships between any of the Corporate Group Entities and the companies in which they are invested, on the one hand, and the Potential Parties-in-Interest, on the other hand, Centerview's internal compliance group compared the Corporate Group Entities and the companies in which they are invested to the list of Potential Parties-in-Interest. Centerview's internal compliance group, consistent with its standard practice, did not inform any of the Corporate Group Entities that it was conducting this comparison. Furthermore, were any of the Corporate Group Entities to make a new investment, Centerview's internal compliance group would be made aware before the investment is made and would be in a position to review that investment against the Potential Parties-in-Interest and update Centerview's prior disclosures or take other action as necessary.

---

[5] Vehicles sponsored by Centerview Capital Consumer and Centerview Capital Technology currently have only one (1) and four (4) investments, respectively.

Based on the foregoing, I believe that the Corporate Group Entities' investment activities do not present a conflict of interest with respect to Centerview's retention by the Debtors in these chapter 11 cases. If any of the Corporate Group Entities subsequently invest in any of the Potential Parties-in-Interest, or if Centerview becomes aware that any entity in which any of the Corporate Group Entities is invested subsequently becomes a Potential Party-in-Interest, Centerview will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a). Moreover, I note that certain of the Potential Parties-in-Interest may now or in the future invest in funds that are managed by the Corporate Group Entities or co-invest with the Corporate Group Entities, but I do not believe that these potential relationships create a conflict of interest for Centerview regarding the Debtors or these chapter 11 cases.  I also note that David Dorman, a principal of Centerview Capital Technology, is a member of the Board of Directors of Dell Technologies, Inc., an affiliate of which is a vendor of the Debtors and a Potential Party-in-Interest. Mr. Dorman is not an employee of Centerview, does not share in any of the profits of Centerview (including any fees that may be paid by the Debtors to Centerview), and has no role in the governance of Centerview in any respect.  Further, Mr. Dorman does not have access to confidential information relating to Centerview's work for the Debtors, and is not physically located in any Centerview office.  Accordingly, I believe that the foregoing board membership does not present a conflict of interest regarding the Debtors or these chapter 11 cases.

25.     To the best of my knowledge and belief after reasonable inquiry, neither I, Centerview, nor any Centerview employees participating in Centerview's engagement with the Debtors: (a) is related to or has any connection with the U.S. Trustee for the Southern District of New York or anyone employed in the Office of the U.S. Trustee for the Southern District of New

15

York or (b) is related to or has any connection with any United States Bankruptcy Judge for the Southern District of New York, including the judge assigned to these cases.

26.    To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Centerview has no agreement with any other entity to share with such entity any compensation received by Centerview in connection with these chapter 11 cases. No promises have been received by Centerview as to compensation for Centerview in connection with these chapter 11 cases other than in accordance with the Engagement Letter.

27.    Certain employees of Centerview may have mortgages, deposits, consumer loans, investment accounts, brokerage accounts, or other banking, brokerage or customer relationships with the Debtors or institutions that are creditors, equity holders or other Potential Parties-in-Interest in these chapter 11 cases. I do not believe that these relationships create a conflict of interest regarding the Debtors or their chapter 11 cases.

28.    Certain employees of Centerview were formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, the creditors, equity holders, or other Potential Parties-in-Interest in these cases in connection with matters unrelated to the Debtors and the cases. I do not believe that these matters create a conflict of interest regarding the Debtors or the cases.

29.    No employees of Centerview own financial debt or equity securities of the Debtors. However, certain employees of Centerview and certain of such persons' relatives may directly or indirectly hold, in the ordinary course, debt or equity securities of certain of the Potential Parties-in-Interest. However, based upon the information that has been provided to me, I believe that any such holdings are insignificant and, to my knowledge, none of these investors controls or has any influence on such Potential Parties-in-Interest. Further, I do not believe these investments,

considered separately or collectively, are material or create a conflict of interest regarding the Debtors or these chapter 11 cases.

30.    In addition, a limited number of employees of Centerview may have accounts with the Debtors and/or may directly or indirectly own Celsius digital currency tokens. However, based upon the information that has been provided to me, I believe that any such holdings are insignificant. These employees have not, and will not, perform work in connection with Centerview's representation of the Debtors and will not have access to confidential information related to the representation. Accordingly, I do not believe that these holdings create a conflict of interest for Centerview regarding the Debtors or these chapter 11 cases.

31.    I am informed that Sean Carmody, an employee of Centerview who is working on this engagement, has a passive, limited partnership interest in a WestCap fund that has between fifteen (15) and twenty (20) investments, including an investment in Celsius preferred equity. Mr. Carmody believes, based on his own estimation of the fund's investments, that his limited partnership interest in the WestCap fund allocable to the fund's Celsius investment would be under $75,000. As a limited partner in the WestCap fund, Mr. Carmody does not have a direct equity investment in Celsius and has no involvement in the WestCap fund's investment or other decisions, including decisions that may be made in connection with these chapter 11 cases. As a consequence, I believe that Mr. Carmody's passive investment does not create a conflict of interest for Centerview in relation to the Debtors or these chapter 11 cases.

32.    Further, I note that Alan Carr, a member of the Board of Directors of Celsius Networks, LLC is also a member of the board of directors of Enjoy Technology, Inc., a private company that Centerview is engaged to represent in connection with matters unrelated to the Debtors and these chapter 11 cases. However, I do not believe that Mr. Carr's membership on the

17

boards of these two Centerview clients creates a conflict of interest for Centerview regarding the Debtors or these chapter 11 cases.

33.    Finally, I note that John Roos, a senior advisor to Centerview, is a member of the board of directors of Salesforce, Inc., the parent company of Slack Technologies, Inc. and Tableau Software, LLC, vendors of the Debtors and Potential Parties-in-Interest.  As a senior advisor, Mr. Roos is a part-time independent contractor.  Mr. Roos is not an employee of Centerview. He does not share in any of the profits of Centerview (including any fees that may be paid by the Debtors to Centerview) and has no role in the governance of Centerview in any respect.  Further, Mr. Roos does not have access to confidential information relating to Centerview's work for the Debtors, and is not physically located in any Centerview office.  Accordingly, I believe that the foregoing board membership does not present a conflict of interest regarding the Debtors or these chapter 11 cases.

34.    In light of the number of the Debtors' creditors, Potential Parties-in-Interest, and potential additional parties-in-interest, neither I nor Centerview am able conclusively to identify all potential relationships at this time, and we reserve the right to supplement this disclosure as additional material relationships come to our attention. In particular, among other things, Centerview may have relationships with persons who are beneficial owners of Potential Parties-in-Interest and persons whose beneficial owners include Potential Parties-in-Interest or persons who otherwise have relationships with Potential Parties-in-Interest.  Moreover, Centerview employees may have relationships with Potential Parties-in-Interest, persons that may become parties-in-interest in this case, or persons that have business relationships with the Debtors or are competitors of the Debtors.

35.     Based on the foregoing, to the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Centerview and the employees of Centerview that will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates, and Centerview is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Centerview and the employees of Centerview that will work on this engagement:

    a.     are not creditors, equity security holders, or insiders of the Debtors;

    b.     were not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

    c.     do not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

36.     To the extent that any new material facts or relationships bearing on the matters described herein during the period of Centerview's retention are discovered or arise, Centerview will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

*[Remainder of page left intentionally blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: August 4, 2022.

Respectfully submitted,

*/s/ Marc Puntus*
Marc Puntus
Partner
Centerview Partners LLC

## **Schedule 1**

**Potential Parties-in-Interest**

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
|----------|----------|
| 1(a) | Current and Recent Former Entities Affiliated with the Debtors |
| 1(b) | Directors/Officers |
| 1(c) | Equity Holders |
| 1(d) | Bankruptcy Professionals |
| 1(e) | Institutional Customers |
| 1(f) | Insurance |
| 1(g) | Landlords |
| 1(h) | Legal Matters and Litigants |
| 1(i) | Non-Bankruptcy Advisors and Ordinary Course Professionals |
| 1(j) | Retail Customers |
| 1(k) | Top 50 Unsecured Creditors |
| 1(l) | Taxing Authority/Governmental/Regulatory Agencies |
| 1(m) | Utilities |
| 1(n) | Vendors |
| 1(o) | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York |

# SCHEDULE 1(a)

## Current and Recent Former Entities Affiliated with the Debtors

Celsius (AUS) Pty Ltd. (Australia)
Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp.
Celsius Mining IL Ltd.
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network (Gibraltar) Ltd.
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network IL Ltd. (Israel)
Celsius Network Inc.
Celsius Network LLC
Celsius Network Ltd. (UK)
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius Services CY Ltd. (Cyprus)
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
GK8 Ltd (Israel)
GK8 UK Ltd.
GK8 USA LLC
KN Media Manager LLC

# SCHEDULE 1(b)

## Directors/Officers

Ayalor, Amir
Barse, David
Bentov, Tal
Blonstein, Oren
Bodnar, Guillermo
Bolger, Rod
Carr, Alan Jeffrey
Cohen-Pavin, Roni
Denizkurdu, Aslihan
Deutsch, Ron
Dubel, John Stephen
Goldstein, Nuke
Kleiderman, Shiran
Leon, S. Daniel
Mashinsky, Alex
Nadkarni, Tushar
Nathan, Gilbert
Ramos, Trunshedda W.
Sunada-Wong, Rodney
Tosi, Laurence Anthony

# SCHEDULE 1(c)

## Equity Holders

Advanced Technology Fund XXI LLC
Altshuler Shaham Trusts Ltd.
Andersen Invest Luxembourg SA SPF
Artus Capital GmbH & Co. KGaA

BNK to the Future

BullPerks (BVI) Corp.

Caisse de dépôt et placement du Québec

CDP Investissements Inc.

Craig Barrett Andersen Invest Luxembourg SA SPF
European Media Finance Ltd.
Fabric Ventures Group SARL

Gumi Cryptos Capital LLC
Heliad Equity Partners GmbH & Co. KGaA

Intership Ltd.

JR Investment Trust



Tether International Ltd.
tokentus Investment AG

WestCap Celsius Co-Invest 2021 LLC
WestCap Group
WestCap SOF Celsius 2021 Aggregator LP

WestCap SOF II IEQ 2021 Co-Invest LP

# SCHEDULE 1(d)

## **Bankruptcy Professionals**

Akin Gump Strauss Hauer & Feld LLP
Alvarez & Marsal Holdings LLC
Centerview Partners LLC
Deloitte & Touche LLP
Ernst & Young
Latham & Watkins LLP
Stretto
White & Case LLP

# SCHEDULE 1(e)

## Institutional Customers

168 Trading Ltd.
Akuna Digital Assets LLC
Alameda Research Ltd.
Amber - Maple
Amber Technologies Ltd.
Anchorage Hold LLC
Anchorage Lending CA LLC
Antalpha Technologies Ltd.
AP Capital Absolute Return Fund
AP Capital Investment Ltd.
Auros Tech Ltd.
B2C2 Ltd.
Babel Holding Ltd.
B-Brick Inc.
BCB Prime Services Ltd.
BCRS2 LLC
Belleway Ltd.
BK Coin Capital LP
Blockchain Access UK Ltd.
Blue Fire Capital Europe Cooperatief UA
CEX IO Ltd.
CMS Holdings LLC
Coinbase Credit
Core Scientific Inc.
Cumberland DRW LLC
Dexterity Capital LLC
Digital Asset Funds Management Pty. Ltd.
Digital Treasures Management Pte. Ltd.
Diversified Alpha SP
Druk Holding & Investments Ltd.
Dunamis Trading (Bahamas) Ltd.
Dunamis Trading III Ltd
DV Chain LLC
Enigma Securities Ltd.
Equities First Holdings LLC
FalconX Ltd.
Fasanara Investments Master Fund
Flow Traders BV
Folkvang SRL
Fractal
Future Technology Investment Ltd.
Galaxy

Galaxy Digital LP
Gemini Trust Co. LLC
Genesis Global Capital LLC
Grapefruit Trading LLC
GSR Markets Ltd.
Harrison Opportunity III Inc.
HAS Futures LLC
Hehmeyer LLC
Hehmeyer Trading AG
████████
Hodlnaut Pte. Ltd.
HRTJ Ltd.
Intership Ltd.
Iterative OTC LLC
JKL Digital Capital Ltd.
JSCT Hong Kong Ltd.
JST Systems LLC
Jump Trading LLC
Keyrock SA
Komaransky, Mike
Kronos Holdings Ltd.
LedgerPrime Digital Asset Opportunities
     Master Fund LP
Liquibit USD Market Neutral Arbitrage
     Fund
Liquidity Technologies Ltd.
LUOJI2017 Ltd.
Marquette Digital
Matrix Port Technologies Ltd.
Memetic Capital LP
Menai Markets Ltd.
Mountain Cloud Global Ltd.
Nascent GP Inc.
Nascent LP
New World Holdings SA
Nickel Digital Asset Fund SPC Digital Asset
     Arbitrage SPC Institutional
Nickel Digital Asset Master Fund SPC -
     Digital Factors Fund SP
Niederhoffer, Roy
NYDIG Funding LLC
Oiltrading.com Pte. Ltd.

Onchain Custodian Pte. Ltd.
Optimal Alpha Master Fund Ltd.
OSL SG Pte. Ltd.
Outremont Alpha Master Fund LP
Parallel Capital Management Ltd.
Pharos Fund BTC SP
Pharos Fund Eth SP
Pharos Fund SP
Pharos Fund SPC
Pharos USD Fund SP
Plutus21 Crypto Fund I LP
Point95 Global
Power Block Coin LLC
Prime Trust
Profluent Trading Inc.
Profluent Trading UK Ltd.
QCP Capital Pte Ltd.
Radkl LLC
Red River Digital Trading LLC
Reliz Ltd.
S&P Solutions Inc.
Scrypt Asset Management AG
SEBA Bank AG
Siafu Capital
Simplex
Symbolic Capital Partners Ltd.
Tagomi Trading LLC
TDX SG Pte. Ltd.
Tether International Ltd.
Three Arrows Capital Ltd.
Tower BC Ltd.
Tower Research Capital
Transfero Brasil Pagamentos SA
Trigon Trading Pty. Ltd.
TrueFi
Trustoken Inc.
Ultimate Coin
Vexil Capital Ltd.
Waterloo Maple Inc.
Weave Markets LP
Wincent Investment Fund PCC Ltd.
Wintermute - Maple
Wintermute Trading Ltd.
Wyre Payments Inc.
ZeroCap Ltd.

# SCHEDULE 1(f)

## **Insurance**

AmTrust Underwriters Inc.
ANV Insurance
Associated Industries Insurance Co. Inc.
Atlantic Insurance
Ayalon Insurance Co.
Crum & Forster Specialty Insurance Co.
Falvey Insurance Group
Hudson Insurance Group
Indian Harbor Insurance Co.
Lloyd's of London
Markel Insurance
Marsh
Migdal Insurance Co.
Relm Insurance Ltd.
Republic Vanguard Insurance Co.
Sentinel Insurance Co.
StarStone Insurance
United States Fire Insurance Co.
Zurich Insurance Group AG

# SCHEDULE 1(g)

## **Landlords**

Algo Adtech Ltd.
Desks & More
Industrious LLC
New Spanish Ridge LLC
Regus
SJP Properties

# SCHEDULE 1(h)

## Legal Matters & Litigants

BitBoy Crypto
Bofur Capital
MS SD IRA LLC
Pharos Fund
Symbolic Capital Partners Ltd.
Vexil Capital Ltd.

# SCHEDULE 1(i)

## <u>Non-Bankruptcy Advisors and Ordinary Course Professionals</u>

A. Georgiou & Co. LLC
Advokatu Kontora Sorainen IR Partneriai
Buckley LLP
CMS Cameron McKenna Nabarro Olswang LLP
Cryptos Capital
Finnegan Henderson Farabow Garrett & Dunner LLP
Holley Nethercote Pty. Ltd.
Jackson Lewis PC
Matsumura, Miko
McCarthy Tetrault LLP
Taylor Wessing LLP
Uría Menéndez Abogados SLP
Wilson Sonsini Goodrich & Rosati PC

# SCHEDULE 1(j)

## Retail Customers

Abeliuk, Eduardo
Abuvala, Ravi Ryan
Adams, Darryl Thomas
Al Khoori, Mohamed Yousif Ahmed H.
Alexander, Alena
Ali, Khaleef
Ali, Yanush
AltCoinTrader Pty Ltd.
███████████
Andari Co. Ltd.
Ankeney, John Charles
Ashizaki, Yuki
███████████
Baer, Matthew David
███████████
Baslaib, Mohamed Ali Mohamed Naser
Bauman, Simon
Bennett, Danyal
Berg, Henry Guyer
Berrada, Amin
BJ Investment Holdings LLC
BNK to the Future
Boroff, Dustin Charles
Boskovski, Nikola
███████████
Bressler, David Jason
Brian T. Slater Revocable Living Trust
Bright, Nicolas John
Broad Reach Consulting LLC
███████████
Bru Textiles NV
Burkgren, Eric Alan
CAEN Group LLC, The
Campos, John Jr.
Carolyn Vincent Superannuation Fund
Carter, Luke Armstrong
Champigny, Edward William
███████████
Chiu, James Lee
Chiu, Yee Lai
Choi, Linda Yi
Choi, Luke Kyung Goo

Christiansen, Robert Nathan
Chu, Cindy
Chulamorkodt, Natakom
Chung, Ting Kong Terence
Cipolloni, Mark J.
███████████
Cohen Pavon, Roni
Coinmerce BV
███████████
Conklin, Jennifer Walter
Covario AG
Crypto10 SP
███████████
Damp, Steven Charles
███████████
Davis, Otis
Deferred 1031 Exchange LLC
███████████
Delargy, Colin C.
███████████
DGL Investments LLC
Dhiraj, Mandeep
DiFiore ASA Irrevocable GST Trust
Dixon, James
███████████
Donofrio, John
███████████
Druk Project Fund
Duprex, Jeffrey Paul
Ecko, Marc
Eller, Phillip Brian
Ellington, Brian
Elshafei, Ashraf
Eng Chuan, Liew
Eriks, Dennis
███████████
Fertik, Michael Benjamin Selkowe
███████████
Fletcher, Brett
Floatzen Doo
Garner, Phillip Wayne Jr.

███████

Gatt, Raymond
Gilmer, George Hudson
Goh, Jian Kai
Gray, Jill Marie
Guljaš, Janoš
H Trussell Investments Pty. Ltd.
Halikias, Thomas T.
Hamilton, Nathan
Harrell, Ashley Anne
Hartley, James
███████
Herring, Stephen Ashley
███████

Ho, Quoc Tri
███████
Holt, Jonathon James
HOME 007 LLC
███████
Hughes, Stephen
Humphreys, Steven C.
Hunt, Bryan J.
ICB Solutions
InfoObjects Inc.
Invictus Capital Financial Technologies SPC
███████
Jahizi, Oliver
Jensen, Joseph
Jonas, Leah Nicole
Joseph, Sebastian
Juiris, Peter Casimir
Kalynovskyi, Dmytro
Kap, Ethan Garet
Keiser, Marc Vito
Kelly, James Patrick
Kevin Batteh Trust, The
Kim, Sungyoun
King, Christopher Scott
Koala 1 LLC
███████
Koyama, Osamu
Ku, Yuehsu
Labenek, Andrew
Lamplough, Howard

Langslet, Robert
Lehrfeld, Joseph S.
Lewis Davies, Ryan Wynn
Lewis, Howard
Liao, Guoping
Lim, Jane
Liu, Nanxi Nanqian
Luo, Edward
███████
Mahoney, Justin Michael
Manea, Mircea
Manzke, Holger
Marchioni, John P.
███████
Mastropieri, Bengi
Matsumura, Fumihiko
███████
Mattina, Christopher W.
McCarty, John Edward
███████
McGarry, Brian Thomas
McIntyre, Deverick
McKeon, Brian Joseph
███████
McNeil, James W.
Meehan, Kristine M.
Mellein, John Gabriel
Mercola, Joseph Michael
Messall, Patrick
MHT Super Pty. Ltd.
Miller, Samuel Garfield, Jr.
Mohan, Arun
Moon, Wang Sik
Moser, Christopher M.
███████
MSL Family Trust, The
███████
Musumeci, Antonio
Narayanan, Swathi Lakshmi Tirupattur
Neiman, Gary
Neste, Bradley
Nguyen, Phuc
███████
Pae, Mitchell Chon

Pagnanelli, Victor Carl
Palm, Travis John
██████████████████
Paris Castle IV LLC
████████████
Patel, Shilla Natvarbhai
Patil, Abhitabh Aneel
█████████████████████████
Pham, Khai Trinh
Phonamenon Management Group LLC
Pierce, James
Pierson, Justin T.
██████████
Plutus21 Blockchain Opportunities II SP
Plutus21 Blockchain Yield I SP
Pomeranz, Alex Aaron
████████████████
Pundisto, Lalana
Pusnei, Alexandru
██████████████████████
Reitz, Spencer Mcdowell
RHMP Properties Inc.
Ritter, David
Ritter, Linda J.
Ritter, Paul
Robert, Joseph Murdoch
Robinson, Andrew Douglas
Salera, Manuel
Schroeder, Jesse
Sese LLC
Shar, Stephen Phillip
Sidibe, Aissata
██████████████████
Slater, Glen Brian
Sleeping1 LLC
Smith, David Silva
Smith, Nelson Courtney
Sondhi, Tarun
Souders, Jack Trayes
Stapleton, Paul
Steinborn, Steven Harold
Stevens, Daron Robert

██████████████████
Stringer, Douglas Ross
Strobilus LLC
Sun, Siqi
Sutton, Sebastian
Swyftx Pty. Ltd.
Sypniewski, Christian
█████████████
Tap Root LP
Thayer, Craig William
Thomas DiFiore Childrens GST Investment
    Irrevocable Trust
Tincher, Steven Jess
Tobias, Scott Jeffrey
██████████████████
Trebtow, Jens
Tremann, Christopher Ernest
Tuganov, Ignat
█████████████████
Tyler, Craig Edward
Ubuntu Love Pty. Ltd.
Valkenberg, Renaud
████████████████
Vendrow, Vlad
██████████████████████████
Vivas, Rafael
Wagner, Thomas Nichols
Walcott, Robert
Walkey, Thomas
Wang, Yidi
█████████████████
Wierman, Duncan Craig
█████████████████
Williams, Charles W.
Williams, Robert, II
Williamson, Hiram
Wiseman, Timothy
Wolf, Cody Lee
█████████████████████████
Woodward, Laurie
████████████████████
Wu, Xinhan
Yao, Mark

████████████████
Yeung, Tak H.
████████████
Young, John Martin
Yu, Byung Deok
Zhang, Xi
Zhong, Jimmy
Ziglu Ltd.
Zipmex Asia Pte. Ltd.
Zwick, Matthew James

# SCHEDULE 1(k)

## Top 50 Unsecured Creditors

Alameda Research Ltd.
AltCoinTrader Pty. Ltd.
B2C2 Ltd.
█████████████████

CAEN Group LLC, The
██████████████

Covario AG
Crypto10 SP - Segregated Portfolio of
    Invictus Capital Financial Technologies
    SPC
███████████████

Deferred 1031 Exchange LLC

ICB Solutions
Invictus Capital Financial Technologies SPC

Pharos Fund SP
Pharos USD Fund SP

Strobilus LLC

Ziglu Ltd



# SCHEDULE 1(l)

## Taxing Authority/Governmental/Regulatory Agencies

Alabama, State of, Securities Commission
Kentucky, Commonwealth of, Department of Financial Institutions
New Jersey, State of, Bureau of Securities
Texas, State of, Securities Board
United States, Government of the, Department of Justice
United States, Government of the, Securities & Exchange Commission
Washington, State of, Division of Securities

# SCHEDULE 1(m)

## Utilities

AT&T Inc.
Comcast Corp.
Cox Business Services LLC
EE Ltd.
Giffgaff Ltd.
Google Fiber Inc.
Hypercore Networks Inc.
Lightpath Fiber Enterprise Business Unit of Altice USA Inc.
Lumen Technologies Inc.
RingCentral Inc.
Spectrum Enterprises Inc.
Verizon Wireless Telecom Inc.

# SCHEDULE 1(n)

### Vendors

1-800 Flowers.com Inc.
1-800-GOT-JUNK? LLC
192 Business Experian
192 Business Ltd.
221B Partners
3 Verulam Buildings Barristers
4imprint Group plc
9Beach Latin American Restaurant LLC
A. Georgiou & Co. LLC
A1 Express Ltd.
A23 Boutique Hotel
A24 Ltd.
A2E
Abacus
Abacus Labs Inc.
ABF Freight System Inc.
Accretive Capital LLC
Acrion Group Inc.
Ada Support Inc.
Adobe Inc.
ADTRAV Corp.
Agile Freaks SRL-D
AgileEngine LLC
AGS Exposition Services Inc.
Ahrefs Pte. Ltd.
Ainsworth Inc.
Air Essentials Inc.
Air France-KLM SA
Air Serbia
Airspeed18 Ltd.
Akerman LLP
Akin Gump Strauss Hauer & Feld LLP
Alaric Flower Design
Alaska Air Group Inc.
Alba Invest Doo
ALCHEMIQ Catering
Alex Fasulo LLC
Algo Adtech Ltd.
AlgoExpert
Alitalia Compagnia Aerea Italiana SpA
AlixPartners LLP
Allianz Global Assistance SAS

Aloft Hotel Management Inc.
ALPHA Events Ltd.
AlphaGraphics Inc.
Amazon.com Inc.
American Airlines Group Inc.
American Family Connect Property &
    Casualty Insurance Co.
American Lock & Key Inc.
Amon Card Ltd.
Amon OU
Amplicy Ltd.
Amsalem Tours & Travel Ltd.
Andersen LLP
Any.Do Ltd.
Appbot
Apple Search Ads
Apple Search Advertisements
Apple Store
AppsFlyer Inc.
Aqua Kyoto Ltd.
Arlo SoHo Hotel
Arocon Consulting LLC
ArtDesigna
Ashby & Geddes
Aston Limo Service
AT&T Inc.
Athlonutrition S.S
Atlassian Corp. plc
Atom Exterminators Ltd.
August LLC
Auth0 Inc.
AutomationEdge Technologies Inc.
Avaya Inc.
AVL Services LLC
Azmi & Associates
B&C Camera
B&H Foto & Electronic Corp.
BambooHR LLC
Bamboozle Café
BCAS Malta Ltd.
BCL Search Inc.
Bellwood Global Transportation

Benjamin, The
Best Buy Co. Inc.
Best Name Badges
Big Cartel LLC
Bill.com Holdings Inc.
BIND Infosec Ltd.
Bionic Electronics HT Ltd.
BirchamsArt
BitBoy Crypto
Bitfinex
Bitfly Ltd.
Bitfo Inc.
BitGo Inc.
Bitmain Technologies Ltd.
Bittrex Global GmbH
Bitwave
Blacklane GmbH
Blackpeak Inc.
Blake & Co.
Block Solutions Sdn Bhd
Blockchair Ltd.
Blockdaemon Ltd.
BlockWorks Group LLC
Bloomberg Finance LP
Bloomberg Industry Group
Blue Edge Bulgaria EOOD
Blue Moon Consultants International Ltd.
Blue Rock Search LLC
BlueVoyant Israel Ltd.
Board Game Designs
Bob Group Ltd.
Bolt Food
Bookyourcovidtest.com
Boston Coach Corp.
Brave Software International
Brazen Head Irish Pub
Brendan Gunn Consulting Group
British Airways plc
Brooklyn's Down South
BrowserStack Inc.
BTC 2022 Conference
BTC Media LLC
Budget Rent A Car Ltd.
Bulwerks LLC
Bulwerks Security
█████████████

Buzzsprout
C Street Advisory Group
Cablevision Lightpath LLC
Calendly LLC
California, State of, Department of Financial
    Protection and Innovation
CAN Mouzouras Electrical Contractors
Canva Inc.
Caola Co. Inc.
Capitol Hill Hotel
Caplinked Inc.
Carey Executive Transport
Carithers Flowers
Carmo Cos.
Carta Inc.
Caspian Holdings Ltd.
CAYO Rafał Molak
CDPQ US Inc.
CDW Corp.
Chain of Events SAS
Chainalysis Inc.
Chamber of Digital Commerce, The
Chick-fil-A Inc.
Chief
█████████████
Cision US Inc.
CitizenM Operations Holding BV
Cleverbridge AG
Click and Play - Conteudos Digitais Lda
ClubCorp Holdings Inc.
CMS CMNO LLP
CoderPad LLC
Coffee Distributing Corp.
Cogency Global Inc.
CoinDesk Inc.
Coinfirm Ltd.
Coinlend GmbH
CoinMarketCap OpCo LLC
CoinRoutes Inc.
College Investor LLC, The
Comcast Corp.
Compliance Risk Concepts LLC
Concorde Hotel Ltd., The
Consensus Sales Inc.
ConsenSys AG
Constantinou, Elpida

Consumer Technology Association
Contentful Inc.
Cooper Global Ltd.
Coppell FC
Core Club, The
Core Scientific Inc.
Corsair Gaming Inc.
Costco Wholesale Corp.
Coursera Inc.
Cox Business Services LLC
Creative Video Productions Ltd.
Creditor Group Corp.
Creel, Garcia-Cuellar, Aiza y Enriquez SC
Crelin Peck Consulting LLC
CRP Security Systems Ltd.
Crypto Fiend
Crypto Love
CryptoDailyYT Ltd.
CryptoRecruit Pty. Ltd.
CryptoWendyO
CSC
CT Corp.
C-Tech Constandinos Telecommunication
    Ltd. Co.
███████████████████
Curb Mobility LLC
CVS Pharmacy Inc.
Cyesec Ltd.
CYTA Ltd.
D'Albert, Matthew
Dalvey & Co.
Dan Hotels Ltd.
Daniel J. Edelman Inc.
Data Dash Inc.
Data4U Ltd.
Datapoint Surveying & Mapping
David Meltzer Enterprises
David Rabbi Law Firm
DBeaver
Dealex Moving LLC
Dearson Levi & Pantz PLLC
Decentral Media Inc.
DeepL SE
Del Friscos Grille
Delaware, State of Division of Corporations
Dell

Deloitte Tax LLP
Delta Air Lines Inc.
Demetriou, Adonis
Derriere's Gentleman's Club
Desk doo
Dezenhall Resources Ltd.
DHL
Digital Asset News LLC
Diplomat Resort, The
DNSFilter Inc.
Do Not Sit On The Furniture
Docker Inc.
DoiT International
DoiT International UK & I Ltd.
DoorDash Inc.
Dow Jones & Co. Inc.
Dragos DLT Consulting Ltd.
DRB Hosting Ltd. (Deribit)
Dream Hotels
Dribbble Holdings Ltd.
DSV AS
Dune Analytics AS
Dynasty Partners Ltd.
E.R. Bradleys Saloon
Eagle County Regional Airport
Ecrime Management Strategies Inc.
Edgewater Advisory LLC
EE Ltd.
Egon Zehnder International Inc.
El Al Israel Airlines Ltd.
Elements Massage Ltd.
Elite Marketing Group LLC
Elmwood Design Ltd.
Emanuel Clodeanu Consultancy SRL
Embassy Suites Hotels
Emirates Group, The
Enginuity on Call
EnjoyMaloy Trade Party
Enlightium Ltd.
ENSafrica
Enterprise Digital Resources Ltd.
Enterprise Rent-A-Car Co. Inc.
Epitome Capital Management Pty. Ltd.
███████████████████
Estate of Edward W. Price, Jr.
Etsy Inc.

Eversheds Sutherland
EXDO Events Center
Expedia Group Inc.
Expo Group Inc, The
Exquisite Sounds Entertainment
EY
ezCater Inc.
Facebook
Fairmont Austin Lodging
FalbaSoft Cezary Falba
Falkensteiner Hotels & Residences
Fatal Ltd.
FatCat Coders
Fattal Hotels Ltd.
FedEx Corp.
Female Quotient LLC, The
Fibermode Ltd.
Filmsupply LLC
Financial Times Group Ltd.
FiNext Conference
FingerprintJS Inc.
Finnegan Henderson Farabow Garrett
    Dunner LLP
First Class Vending Inc.
Fixer.io
Flixel Inc.
Flonights Ltd.
Flowroute LLC
FluXPO Media
Flyday Consultancy
Forkast Ltd.
Forter Inc.
Frame.io Inc.
Freeman
Fromday-One BV
Frontend Masters
FSCom Ltd.
Fusion Bowls
G&TP Sweden AB
Gandi SAS
Gartner Inc.
GEA Ltd.
Gecko Labs Pte. Ltd.
Gecko Technology Partners Ltd.
GEM
Gett Inc.

Giftagram USA Inc.
Gila Dishy Life Coach LLC
Gilbert + Tobin
GitBook SAS
GitHub Inc.
GitKraken
GK8 Ltd.
Glovo
GoDaddy.com
Gogo Air International SARL
Goin' Postal
Google Ads
Google Cloud
Google Fi
Google Fiber
Google LLC
Google Play
Google Workspace
GoToAssist
Grammarly Inc.
GreyScaleGorilla
Grit Daily News
GrubHub Inc.
GuardianArc International LLC
H2Prod
Halborn Inc.
Hampton Inn
HanaHaus
Handel Group LLC
Harris-Harris Group LLC, The
Haruko Ltd.
Hattricks Tavern
Headway Workforce Solutions Inc.
Healthy Horizons Ltd.
Heathrow Express Operating Co. Ltd.
Hedgeguard
HeleCloud Ltd.
HelpSystems LLC
Henriksen-Butler Nevada LLC
Hertz Corp., The
Herzog Fox & Neeman
Highlight Films Ltd.
Hilton Worldwide Holdings Inc.
HireRight LLC
HMRC Shipley
Holland & Knight LLP

Home Depot Inc., The
Hootsuite Inc.
Horasis
Hotel Da Baixa Prata Lda.
Hotel Majestic
Hotel Midtown Atlanta
Hotels.com
Hudson Standard, The
Hyatt Hotels Corp.
Hysolate Ltd.
I.A.M.L Ltd.
Ideal Communications Inc.
Idemia Group SAS
Illumiti Corp.
Incorporating Services Ltd.
Indian Eagle
Information, The
Infura Inc.
InGenie Ltd.
Innovatica LLC
Inside.com Inc.
Insider Inc.
Insperity Inc.
Instacart
Integrated Security & Communications Inc.
Intelligo Group USA Corp.
Intercontinental Hotel Group plc
Intercontinental Miami
Intertrust NV
Intuit Inc.
InvestAnswers
ip-api
IPQualityScore
IST NY Inc.
Iterable Inc.
Ivan on Tech Academy
Jackson Lewis LLP
Jaffa Hotel, The
JAMS Inc.
Jarvis Ltd.
JB Hunt Transport Services Inc.
JetBlue Airways Corp.
JetBrains sro
Joberty Technologies
John Lewis & Partners
JSC Royal Flight Airlines

Juliet International Ltd.
Jumpcut 3D
Juniper Office
Junk Masterz LLC, The
Junkluggers LLC, The
JV Associates Inc.
K.F.6 Partners Ltd.
Kairon Labs BV
KALC LLC
Kanoo Pays
Keeper Security
Kenetic Trading Ltd.
Kerry Hotel HongKong
KeyFi Inc.
Kforce Inc.
Kif, Evgeni
Killian Firm PC, The
Kimpton Surfcomber Hotel
KINTSUGI, Unipessoal Lda.
Knobs BAC
Kohl's
Korn Ferry
Koutra Athos Sotiris
Krispy Kreme
Kroll Advisory Ltd.
L&L Moving Storage & Trucking LLC
La Maison Favart
████████████
Las Vegas Window Tinting
Latham
LaunchDarkly
Lawn Care
LawnStarter
Leaa
Left House, The
Lima, Esther
Line Group
LinkedIn Corp.
LinkedIn Ireland Unlimited Co.
Lithify Ltd.
Locate852
Loews Hotels
Logitech
Logshero Ltd.
Logz.io
LS Future Technology AB

Lucidchart
Lucille's Smokehouse Bar-B-Que
Lufthansa Deutsche
Lumen
Lunar Squares
LVC USA Inc.
Lyft
Madison Liquidators
MadRev LLC
Makarim & Taira S.
Maltego Technologies
Mambu Tech BV
Mammoth Growth LLC
Mandarin Oriental Hotel
Manhattan Bagel
Manzo's Suites
Maren Altman FZCO
Marios Locksmith Ltd.
Marriott Hotels & Resorts
Marsh USA
Maxon Corp.
Mayami Mexicantina
Mazars LLP
Mazars Ltd.
McCarthy Tetrault LLP
McLagan Partners Inc.
MCM 965
mDesign Holdings Ltd.
MediaOne Partners
Melio
Memorisely
Metropol Palace
MF Partners Ltd.
MFA Network
MGM Grand Hotel LLC
Miami Beach Convention Center
Michael Page International Inc.
Michaels Cos. Inc., The
Microsoft Azure Inc.
Microsoft Corp.
Million Roses, The
MINDS
Minuteman Press International Inc.
Mixed Analytics
Mixpanel Inc.
Momentum Media Group

Monarch Blockchain Corp.
Monday.com Ltd.
MOO Print Ltd.
Moralis Academy
Morris Manning & Martin LLP
Moschoulla Patatsou Christofi
Motion Array
Motion Design School Co.
Move 4 Less LLC
MTA SpA
Music 2 the Max
MVP Workshop
Myers-Briggs & Co. Inc.
MythX
Namecheap Inc.
National Office Interiors & Liquidators
National Railroad Passenger Corp.
Nationwide Multistate Licensing System &
    Registry
Navex Global Inc.
NBC Universal
Necter
Nevada Sign
New Spanish Ridge LLC
New York Times Co., The
Next Web Events BV, The
NextGenProtection
NICE Systems UK Ltd.
Nico Signs Ltd.
NordLayer
Nordlogic Software SRL
Nordstrom Inc.
Nossaman LLP
Notability Partners
Notarize
Nothing Bundt Cakes
Nuri
NuSources
Nyman Libson Paul LLP
OAKds Inc.
Ocean View Marketing Inc.
Office Depot
Office Movers Las Vegas
Office Star B2B Ltd.
OfficeSpace Software Inc.
OfficeVibe

OKEx
Onchain Custodian Pte. Ltd.
Onfido
Onfido Inc.
Onfido Ltd.
Optimizely Inc.
Oracle Corp. UK Ltd.
Otter.ai
OVF Customer.io LLC
PABXL
Pack & Send
Paddle
Pagliara Entertainment Enterprises LLC
Palantir Security Ltd.
Panasonic Avionics Corp.
Panera Bread
Panorays Ltd.
Papaya Global HK Ltd.
Park MGM Las Vegas
Park Plaza Hotels
Parklane Resort & Spa
Party City
Paxful Inc.
Payplus by Iris
Payplus Ltd.
Peas Recruitment Ltd.
Peninsula Business Services Ltd.
Phase II Block A South Waterfront Fee LLC
Photo Booth Vending
Plaid Inc.
Pluralsight Inc.
Polihouse Boutique Hotel
Polyrize Security Ltd.
Portswigger Ltd.
Postman Inc.
Postmates Inc.
Practising Law Institute Inc.
Premaratne, Inesha
Premier Due Diligence LLC
Premium Beat
Prescient
PRG U.S. Inc.
Print Hoboken LLC
Printful Inc.
Priority Power
Pro Blockchain Media LLP

Proof of Talent LLC
Protect Operations Ltd.
PSE Consulting Engineers Inc.
PSJ Kanaris Enterprises Ltd.
PTI Office Furniture
PubliBranco
Pure Marketing Group Corp.
Puressence Ltd.
Quality Inn & Suites Hotel
Quantstamp Inc.
Quoine Pte. Ltd.
RA Venues at Churchill War Rooms
Rails Tech Inc.
Real Vision Group
Rebecca Sweetman Consulting Ltd.
Reddit Inc.
Redk CRM Solutions Ltd.
Reflectiz Ltd.
Regus Management Group LLC
reMarkable AS
Residence Inn
Resources Global Professionals
Restream.io
Retool Inc.
Rever Networks Inc.
RFO Conferences Organizing LLC
RingCentral Inc.
Ritz-Carlton, The
Rosewood Hotel & Resorts LLC
Rothschild TLV
Royal Mail plc
Royalton Hotel
Sabana Labs SL
Saffron Indian Cuisine
Saint Bitts LLC
Sam's Club
Sam's Limousine & Transportation Inc.
SAP America Inc.
Schoen Legal Search
ScraperAPI
Seamless
SecureDocs Inc.
Securitas Security Services USA Inc.
Segment Inc.
Selfridges
SendSafely

Sentry
Sevio FZC
SewWhatAndWear
Sheraton Hotels
Shutters on the Beach
Shutterstock
Silhouette Building, The
Similarweb Inc.
SJP Properties General Construction
Sketch BV
Skew Ltd.
Slack Technologies LLC
SlideTeam
Small Pocket Video
Smart City Networks LP
Smartcontract Inc.
SMSF Association
Snowflake Inc.
So & Sato Law Office
Soho Beach House
SolarWinds
█████████████████
SonarSource
South City Kitchen
Southwest Airlines
Sovos Compliance
SP V1CE Ltd.
Spears Electric
Spectrum
Sponsor United
Sports1ternship LLC
SpotHero
Standard Restaurant Equipment Co.
Staples
Starbucks
Statusgator
Stephanos Greek & Mediterranean Grill
Stuart Tracte Photography
Studio ViDA
Sublime HQ Pty. Ltd.
SuperSonic Movers LLC
Surety Solutions
Swag.com
Swept Cleaning Service of Austin
Swiss International Air Lines Ltd.
SXSW LLC

Synapse Florida
Syndic Travel
TAAPI.IO sro
Tableau Software LLC
Talking Cocktails
Tampa Printer
Target Corp.
TaskRabbit
TaxBit Inc.
Taylor Wessing LLP
TCL Publishing Ltd.
Teamz Inc.
Tembo Embroidery & Custom Merchandise
Ten Manchester Street Hotel
Tenderly doo
Terra Panonica
TET Events LLC
Thimble Insurance
Thomson Reuters
Thunderclap LLC
Titan Office Furniture Ltd.
T-Mobile US Inc.
TokenTalk Ltd.
Toll Free Forwarding
Toolfarm
Towers Watson Ltd.
Trade Group Inc., The
TradingView Inc.
TransUnion
Trash Cans Warehouse
TRD Comm
Trello Inc.
Trovata Inc.
Trustpilot Inc.
TubeBuddy
Turkish Airlines
Twenty84 Solutions
Twilio Inc.
Twitter Inc.
Uber
Uber Eats
Udemy Inc.
Uline Inc.
Unbound Tech Ltd.
Unifire Extinguishers Ltd.
United Airlines

University Arms Hotel
Unstoppable Domains Inc.
UPS
Upstager Consulting Inc.
UrbanStems Inc.
USA Strong Inc.
UsabilityHub Pty. Ltd.
UsaStrong.io
USPS
V3 Digital Ltd.
Valere Capital
Vanguard Cleaning Systems of Las Vegas
Varonis Systems Inc.
VCU Blockchain
Vercel Inc.
Verified First LLC
VerifyInvestors.com
Verizon Wireless
Vert & Blanc Enterprises Ltd.
Viasat Inc.
Virtru Corp.
Virtual Business Source Ltd.
Virtually Here For You Ltd.
Vivid Edge Media Group
Volta Systems Group
VoskCoin LLC
VSECNOW Ltd.
Walgreens Boots Alliance Inc.
Wall Street Journal
Walmart Inc.
Warwick Hotel Ltd.
Wayfair Inc.
WCEF LLC
West Coast Pure Water LLC
WestCap Management LLC
Whirling Dervish Productions
Wilde Aparthotels
Wings Hotel, The
Wintermute Trading Ltd.
Wolf Theiss
Wolt
Wolters Kluwer NV
Workland
Workspace Management Ltd.
World Economic Forum
WP Engine Inc.

Wyndham Hotels & Resorts Inc.
Wynn Las Vegas
Yellowgrid
yellowHead Ltd.
Yohann
YouTube Premium
Zapier.com
Zegans Law Group Pllc, The
Zendesk Inc.
Zeplin Inc.
Zoho Corp.
Zoom Video Communications Inc.
Zubtitle LLC
Zuraz97 Ltd.

# SCHEDULE 1(o)

## U.S. Trustee Personnel, Judges, and Court Contacts for the Southern District of New York

Abriano, Victor
Arbeit, Susan
Beckerman, Lisa G.
Bruh, Mark
Chapman, Shelley C.
Cornell, Shara
Drain, Robert D.
Gannone, James
Garrity, James L., Jr.
Glenn, Martin
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Jones, David S.
Joseph, Nadkarni
Lane, Sean H.
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morris, Cecelia G.
Morrissey, Richard C.
Ogunleye, Alaba
Riffkin, Linda A.
Rodriguez, Ilusion
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Velez-Rivera, Andy
Vescovacci, Madeleine
Wells, Annie
Wiles, Michael E.
Zipes, Greg M.

**Schedule 2**

| Potential Party In Interest | Relationship to Debtors |
| --- | --- |
| Adobe | Vendors |
| Akin Gump Strauss Hauer & Feld LLP | Vendors, Bankruptcy Professionals |
| Allianz Global Assistance | Vendors |
| Alvarez & Marsal Holdings LLC | Bankruptcy Professionals |
| Amazon | Vendors |
| Amtrust Underwriters, Inc. | Insurance |
| AP Capital Absolute Return Fund | Institutional Customers |
| AP Capital Investment Limited | Institutional Customers |
| Apple Search Ads / Advertisements | Vendors |
| Apple Store | Vendors |
| AT&T Inc. | Utilities, Vendors |
| Atlassian Corp. plc | Vendors |
| Auth0 Inc. | Vendors |
| Avaya Inc. | Vendors |
| Best Buy Co. Inc. | Vendors |
| Bittrex Global GmbH | Vendors |
| Bloomberg Finance LP | Vendors |
| Bloomberg Industry Group | Vendors |
| British Airways plc | Vendors |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Celsius (AUS) Pty Ltd. (Australia) | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius EU UAB (Lithuania) | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius KeyFi LLC | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Lending LLC | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Management Corp | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Mining IL Ltd | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Mining LLC | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Network (Gibraltar) Limited | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Network Europe d.o.o. Beograd (Serbia) | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Network IL Ltd. – Bulgaria Branch | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Network IL Ltd. (Israel) | Current and Recent Former Entities Affiliated with the Debtors |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Celsius Network Inc. | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Network Limited (UK) | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Network LLC | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Networks Lending LLC | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Operations LLC | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius Services CY Ltd (Cyprus) | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius US Holding LLC | Current and Recent Former Entities Affiliated with the Debtors |
| Celsius US LLC (Formerly Celsius Money) | Current and Recent Former Entities Affiliated with the Debtors |
| Cision Us Inc. | Vendors |
| CMS Holdings LLC | Institutional Customers |
| Coffee Distributing Corp. | Vendors |
| Comcast | Utilities, Vendors |
| Concorde Hotel | Vendors |
| Coursera | Vendors |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Cox Business | Utilities, Vendors |
| CVS Pharmacy | Vendors |
| Dell | Vendors |
| Deloitte Tax LLP | Vendors |
| Deloitte & Touche LLP | Bankruptcy Professionals |
| DoorDash | Vendors |
| Dow Jones & Company, Inc. | Vendors |
| Ernst & Young | Bankruptcy Professionals |
| Etsy | Vendors |
| EY | Vendors, Bankruptcy Professionals |
| Facebook | Vendors |
| Flowroute | Vendors |
| Frame.io | Vendors |
| GitHub, Inc. | Vendors |
| GK8 Ltd | Vendors |
| GK8 Ltd (Israel) | Current and Recent Former Entities Affiliated with the Debtors |
| GK8 UK Limited | Current and Recent Former Entities Affiliated with the Debtors |
| GK8 USA LLC | Current and Recent Former Entities Affiliated with the Debtors |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| GoDaddy.com | Vendors |
| Google Ads | Vendors |
| Google Cloud | Vendors |
| Google Fi | Vendors |
| Google Fiber | Utilities, Vendors |
| Google LLC | Vendors |
| Google Play | Vendors |
| Google Workspace | Vendors |
| GrubHub, Inc. | Vendors |
| Hilton Worldwide Holdings Inc. | Vendors |
| Hyatt Hotels Corp. | Vendors |
| Indian Harbor Insurance Company | Insurance |
| Instacart | Vendors |
| Intercontinental Hotel Group plc | Vendors |
| Intercontinental Miami | Vendors |
| Iterable, Inc. | Vendors |
| Kohl's | Vendors |
| Krispy Kreme | Vendors |
| Kronos Holdings Ltd. | Institutional Customers |
| LinkedIn Corporation | Vendors |
| LinkedIn Ireland Unlimited Company | Vendors |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Lloyd's of London | Insurance |
| Logitech | Vendors |
| Lyft | Vendors |
| Mandarin Oriental Hotel | Vendors |
| Marriott Hotels & Resorts | Vendors |
| Marsh USA | Vendors, Insurance |
| McLagan Partners Inc. | Vendors |
| MGM Grand Hotel LLC | Vendors |
| Michaels Cos. Inc., The | Vendors |
| Microsoft Corp. | Vendors |
| Microsoft Azure Inc. | Vendors |
| Mixpanel Inc. | Vendors |
| MTA SpA | Vendors |
| NBC Universal | Vendors |
| Nordstrom Inc. | Vendors |
| Office Depot | Vendors |
| Oracle Corporation UK Limited | Vendors |
| Panasonic Avionics Corporation | Vendors |
| Park MGM Las Vegas | Vendors |
| Postmates Inc. | Vendors |
| Premium Beat | Vendors |

| Potential Party In Interest | Relationship to Debtors |
| --- | --- |
| Ring Central Inc. | Utilities, Vendors |
| Sam's Club | Vendors |
| SAP America, Inc. | Vendors |
| Seamless | Vendors |
| Shutterstock | Vendors |
| Slack Technologies, LLC | Vendors |
| Solarwinds | Vendors |
| Spectrum | Vendors |
| Spectrum Enterprise | Utilities |
| Staples | Vendors |
| Starbucks | Vendors |
| Synapse Florida | Vendors |
| Tableau Software, LLC | Vendors |
| Target Corp. | Vendors |
| The New York Times | Vendors |
| Thomson Reuters | Vendors |
| TransUnion | Vendors |
| Trello, Inc. | Vendors |
| Twilio Inc. | Vendors |
| Twitter Inc. | Vendors |
| Uber | Vendors |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Uber Eats | Vendors |
| United Airlines | Vendors |
| UPS | Vendors |
| Verizon Wireless | Utilities, Vendors |
| ViaSat Inc. | Vendors |
| Walgreens Boots Alliance Inc. | Vendors |
| Wall Street Journal | Vendors |
| Walmart Inc. | Vendors |
| Wayfair Inc. | Vendors |
| WestCap Celsius Co-Invest 2021, LLC | Equity Holders |
| WestCap Group | Equity Holders |
| WestCap Management LLC | Vendors |
| WestCap SOF Celsius 2021 Aggregator, LP | Equity Holders |
| WestCap SOF II IEQ 2021 Co-Invest, LP | Equity Holders |
| Wolters Kluwer NV | Vendors |
| Wynn Las Vegas | Vendors |
| YouTube Premium | Vendors |
| Zendesk Inc. | Vendors |
| Zurich Insurance Group AG | Insurance |

**Schedule 3**

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| AT&T Inc. | Utilities, Vendors |
| Avaya Inc. | Vendors |
| Bloomberg Finance LP | Vendors |
| Bloomberg Industry Group | Vendors |
| Boston Coach Corp. | Vendors |
| Cablevision Lightpath LLC | Vendors |
| Carey Executive Transport | Vendors |
| Coffee Distributing Corp. | Vendors |
| Cogency Global Inc. | Vendors |
| Comcast Corp. | Utilities, Vendors |
| Delaware, State Division of Corporations | Vendors |
| Dell | Vendors |
| Dow Jones & Company, Inc. | Vendors |
| Ernst & Young | Bankruptcy Professionals |
| EY | Vendors, Bankruptcy Professionals |
| FedEx Corp. | Vendors |
| Financial Times Group Ltd. | Vendors |
| Gartner Inc. | Vendors |
| GrubHub Inc. | Vendors |
| Kirkland & Ellis LLP | Bankruptcy Professionals |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Kroll Advisory Ltd | Vendors |
| Latham & Watkins LLP | Bankruptcy Professionals, Vendors |
| Logitech | Vendors |
| Lumen Technologies, Inc. | Utilities, Vendors |
| McCarthy Tetrault LLP | Non-Bankruptcy Advisors and Ordinary Course Professionals |
| Regus Management Group LLC | Landlords |
| Rosewood Hotel & Resorts LLC | Vendors |
| SendSafely | Vendors |
| Slack Technologies, LLC | Vendors |
| Spectrum | Vendors |
| Staples | Vendors |
| Swag.com | Vendors |
| The Information | Vendors |
| The New York Times Co. | Vendors |
| The Ritz-Carlton | Vendors |
| Thomson Reuters | Vendors |
| Uber | Vendors |
| Uber Eats | Vendors |
| United States Securities and Exchange Commission | Taxing Authority/Governmental/Regulatory Agencies |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| UPS | Vendors |
| USPS | Vendors |
| Verizon Wireless | Utilities, Vendors |
| Wall Street Journal | Vendors |
| White & Case LLP | Bankruptcy Professionals |
| Wilson Sonsini Goodrich & Rosati | Non-Bankruptcy Advisors and Ordinary Course Professionals |
| World Economic Forum | Vendors |
| Wolters Kluwer NV | Vendors |
| Zoom Video Communications Inc. | Vendors |