JASON B. BINFORD
Texas Bar No. 24045499
LAYLA D. MILLIGAN
Texas State Bar No. 24026015
ABIGAIL R. RYAN
Texas Bar No. 24035956
ROMA N. DESAI
S.D.N.Y. Bar Number RD8227
Texas Bar No. 24095553
Assistant Attorneys General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
P: (512) 463-2173/F: (512) 936-1409
jason.binford@oag.texas.gov
layla.milligan@oag.texas.gov
abigail.ryan@oag.texas.gov
roma.desai@oag.texas.gov

ATTORNEYS FOR THE TEXAS STATE SECURITIES BOARD

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*[1],<br><br>Debtors. | Chapter: 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

**OBJECTION OF THE TEXAS STATE SECURITIES BOARD
TO DEBTORS' MOTION SEEKING ENTRY OF AN ORDER
(I) PERMITTING THE SALE OF THE DEBTORS' MINED BITCOIN
IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF**

The Texas State Securities Board (the "SSB"), by and through the Office of the Texas Attorney General, hereby files this Objection (the "Objection") to the *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [D.E. 187] (the "Motion"). In support of the Objection, the SSB respectfully states as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

1

follows:[2]

## OVERVIEW

1.  Although the Motion is styled as a request for authority to sell the Debtors' mined Bitcoin, the specific authority sought by the Debtors is vastly broader and includes monetizing these assets by "sale, pledging, *hypothecation*, assignment, *investment*, use, transfer, *or other disposal*."[3] The SSB does not object, generally, to the Debtor's sale of its mined Bitcoin *for the benefit of the estate*; however, the SSB is extremely concerned by the Debtors' request for a comfort order that allows ambiguously broad authority to use these assets. The SSB's concern is heightened further by the fact that the Debtors' "past practice" involves admittedly problematic asset deployment decisions, using the mined Bitcoin to repay intercompany loans, potential mismanagement, and a continued failure to comply with state regulatory requirements. The Debtors have failed to adequately describe how they will utilize any profits from their proposed use of mined Bitcoin or whether those profits will be held for the benefit of creditors.[4]

2.  Based on these significant concerns, the SSB respectfully requests that the Motion be denied or, alternatively, that any order permitting the Debtors' use of their mined Bitcoin be limited to the sale of mined Bitcoin for the benefit of creditors.

## FACTUAL BACKGROUND

3.  The Debtors are young companies operating in a novel and complex, global cryptocurrency-based business.[5] The Debtors' corporate structure includes fifteen (15) non-debtor affiliates that operate in various parts of the world. The companies act in a custodial capacity and as an investment vehicle, brokerage account, and a lending institution.[6] The Debtors have 300,000 active

---

[2] Capitalized terms not otherwise defined or provided herein have the meanings ascribed to them in the Motion or D.E. 23 (the "First Day Declaration.").
[3] Motion, para. 2 (emphasis supplied).
[4] *See* First Day Declaration, pp. 4-5, 27 and Motion, pp. 4-5.
[5] *See generally,* First Day Declaration.
[6] *See id.* at pp. 2-5.

2

users and hold $6.0 billion of cryptocurrency assets. Customers sign up for an account on the Debtors' digital platform, transfer their crypto assets to the companies in order to leverage their assets, and enter into a contract whereby the Debtors, in their full discretion, gain right and title to customer assets and are permitted to comingle those assets to "pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such assets… for any period of time…."[7]

4. Well before June 2022, and thereafter, the Debtors had many indications of the upcoming serious financial issues. Nevertheless, just days before pausing customers' withdrawals, the Debtors continued to indicate that the companies were in good standing.

5. As an example, on June 7, 2022, Celsius, through its internet blog, posted an article titled "*Damn the Torpedoes, Full Speed Ahead*" in which the company made statements indicating viability and stability of the company.[8] Statements include, "[a]t this already challenging time, it's unfortunate that vocal actors are spreading misinformation and confusion. They have tried unsuccessfully, for example, to link Celsius to the collapse of Luna and falsely claim that Celsius sustained significant losses as a result." But see the Declaration of Alex Mashinsky, filed on July 14, 2022, in which he directly links the collapse of 3AC to the Luna collapse, which directly impacted Celsius.[9]

6. Further, as an example of misleading communications by the Debtors, in the June 7, 2022 blog post, the Debtors assure customers that "[w]e have not had an issues meeting withdrawal requests. Celsius honors all withdrawals as quickly as possible..."[10] Just five (5) days later, the debtors paused withdrawals.[11] On June 28, 2022, Debtors hired restructuring counsel, and on July 13, 2022, filed the present bankruptcy case.

---

[7] *See id.* at pp 2-3.
[8] https://blog.celsius.network/damn-the-torpedoes-full-speed-ahead-4123847832af
[9] *See* D.E. No. 23, para. 112.
[10] https://blog.celsius.network/damn-the-torpedoes-full-speed-ahead-4123847832af
[11] *See* D.E. No. 23, para. 126.

3

## PROCEDURAL BACKGROUND

7. The Debtors commenced these cases on July 13, 2022, (the "Petition Date") and continue to operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"). [12]

8. On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Official Creditors' Committee (the "Committee").[13]

9. The Debtors filed the Motion on July 25, 2022, and set an objection deadline of August 5, 2022.

10. The hearing on the Motion is currently scheduled to take place on August 16, 2022, at 10:00 a.m., prevailing Eastern Time.

## OBJECTION AND BASES THEREFOR

A. **The Debtors Should Not Be Allowed to Pledge, Hypothecate, Invest, Transfer or Dispose of Cryptocurrencies Due to Lack of State Regulatory Compliance.**

11. Regulators in at least forty (40) states are currently investigating the Debtors' pre-petition investment activities, including Alabama, Kentucky, New Jersey, Washington, Idaho, and Texas. Prior to the Petition Date, securities regulators in Texas, New Jersey, Alabama, Washington, and Kentucky ordered the Debtors to cease offering unregistered securities.[14]

12. In the Motion, Debtors seek court authority to "continue to sell, pledge, transfer, assign, or otherwise monetize the Bitcoin generated from their mining activity," in a manner "consistent with past practices."[15] The Debtors define "monetizing" as the "sale, pledging, hypothecation, assignment, *investment*, use, transfer, or other disposal of such assets."[16]

13. Filing these bankruptcy cases did not alter the Debtors' ongoing obligation to comply

---

[12] [ ].
[13] D.E. No. 241.
[14] https://www.cnbc.com/2022/06/16/state-securities-regulators-investigating-celsius-accounts-freeze.html
[15] *See* Motion, para.1.
[16] *See* Proposed Order, page 2, paragraph 3 (emphasis supplied).

4

with state law. *See* 28 U.S.C. § 959(b).[17] Before the Debtors can offer or sell securities in Texas, the Debtors must be registered with the SSB, or be considered exempt from registration in accordance with the Texas Securities Act and Board Rules.[18]

14. Despite conducting business in Texas, the Debtors are not currently registered with the SSB. Accordingly, the SSB has ordered that the Debtors cease their investment activities until such registration has been approved.

15. The Motion is unclear as to whether the Debtors seek to restart their platform, including the Swap Service, Earn Program, retail lending, institutional lending, and Custody Service, or otherwise allow the buying, selling, trading, or withdrawal of cryptocurrency assets on the Debtors' platform. Indeed, the request to monetize the Bitcoin and other cryptocurrencies "consistent with prepetition practices and in the ordinary course of business" would indicate that the platform may be restarted despite the inherent risk to creditors and without the oversight of this Court.

16. To the extent that the Debtors seek to restart an investment platform or undertake activities involving citizens of the State of Texas, the SSB objects for so long as the Debtors are acting in violation of Texas law.

**B.     If the Debtors are Permitted to Sell Mined Bitcoin, the Proceeds Should Remain in the Bankruptcy Estate for the Benefit of Creditors.**

17. The SSB does not dispute that the Debtors' current mining rigs are property of the bankruptcy estate and that the proceeds generated therefrom are also property of the bankruptcy estate.

18. However, buried in paragraph 2 of the proposed Order, the Debtors define their intent to monetize their cryptocurrencies to include the "sale, *pledging*, *hypothecation*, assignment, *investment*, use, *transfer*, or *other disposal* of such assets."[19]

---

[17] *See also Midlantic Nat'l Bankr. v. New Jersey Dept. of Envtl Prot.*, 474 U.S. 494, 505 (1986); *In re Go West Entm't, Inc.*, 387 B.R. 435, 445 (Bankr. S.D.N.Y. 2008); *In re Mirant Corp.*, 378 F. 3d 511, 523 (5th Cir. 2004).
[18] *See* Texas Securities Act § 7.
[19] *See* Proposed Order, page 2, paragraph 3 (emphasis supplied).

19. The Debtors should not be granted permission carte blanche to transfer and dispose of assets of the bankruptcy estate without oversight, and because of the substantial risk to creditors of the estate, should not be allowed to further hypothecate or invest mined bitcoin in an unstable and highly fluctuating market.

20. The Motion is unclear as to what the Debtors intend to do with the proceeds from the monetization of their mined Bitcoin and cryptocurrency. Instead of specifically stating their intent, the Debtors place a general, vague reference to the fact that cash proceeds from the monetization of cryptocurrencies are subject to "the applicable provisions of the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to postpetition [sic] Intercompany Balances, and (III) Granting Related Relief* [Docket No. 56] and any other order of the Court relating to the subject matter hereof."[20]

21. The SSB objects to any language in the proposed order that would allow use of the funds in question to pay intercompany transfers from Debtors to non-Debtor affiliates or related obligations, and asserts that proceeds from the Debtors' mining of bitcoin should be held for the benefit of creditors.

C. **The Debtors Should Not be Allowed to Risk Estate Assets Due to a History of Alleged Mismanagement.**

22. The Debtors further request permission of the Court to resume prepetition activities on the basis that such activities are in the ordinary course of business. However, the Debtors do not meet the legal requirement for such activities.

23. Whether an activity is in the Debtors' "ordinary course of business" is determined by the application of two tests, the "creditor's expectation test" (also known as the "vertical test"), and

---

[20] *See* Proposed Order, page 2, paragraph 3.

6

the "industry-wide test" (also known as the "horizontal test.")[21] The Debtors fail the vertical test, because the risk to creditors, including investors and owners of the cryptocurrency held by the Debtors, is simply too high to be considered in the "ordinary course" or within the expectation of creditors, in light of the unstable and highly fluctuating cryptocurrency market and history of troubled investments.[22]

24.     Since the Petition Date, more than two hundred and forty (240) consumers and other parties significantly affected by the actions and decisions of the Debtors' principals and directors have filed letters on the Court's docket. These letters demonstrate the significant risk of loss in these bankruptcy proceedings. Despite this ever-growing record of malfeasance, the Debtors now seek to be allowed to resume the prepetition activities that led us here. Allowing the Debtors to put their creditors and investors at additional risk is unreasonable and simply comes at too high a price.

25.     The Debtors also fail the horizontal test. Under the circumstances of this case, a reasonable company in this industry would not operate without proper registrations or take actions that were not in the best interests of its creditors and investors.

## RESERVATION OF RIGHTS

26.     The SSB reserves the right to supplement this Objection or to raise additional or further objections to the Motion at or prior to the Hearing, or any other relevant hearing.

## PRAYER

WHEREFORE premise considered, the SSB requests that the Motion be denied as filed, or, alternatively, that the relief granted to the Debtors should be limited to selling mined Bitcoin and other cryptocurrency and holding or using the proceeds of such sale solely for the benefit of creditors of the bankruptcy estate.

---

[21] *In re Lavigne*, 114 F.3d 379, 384 (2nd Cir. 1997).
[22] *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983).

7

| | |
|---|---|
| Dated: August 5, 2022, | Respectfully submitted, |

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

RACHEL R. OBALDO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

*/s/ Layla D. Milligan*
JASON B. BINFORD
Texas State Bar No. 24045499
LAYLA D. MILLIGAN
Texas State Bar No. 24026015
ABIGAIL R. RYAN
Texas State Bar No. 24035956
ROMA N. DESAI
S.D.N.Y. Bar No. RD8227
Texas Bar No. 24095553
Office of the Attorney General of Texas
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 463-2173
Facsimile: (512) 936-1409
jason.binford@oag.texas.gov
layla.milligan@oag.texas.gov
abigail.ryan@oag.texas.gov
roma.desai@oag.texas.gov

ATTORNEYS FOR THE TEXAS STATE SECURITIES BOARD

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on all parties requesting notice in this proceeding on August 5, 2022.

                              */s/ Layla D. Milligan*
                              LAYLA D. MILLIGAN
                              Assistant Attorney General