WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE, REGION 2  
U.S. Department of Justice  
Office of the United States Trustee  
201 Varick Street, Suite 1006  
New York, New York 10014  
Telephone: (212) 510–0500  
By:  Shara Cornell  
     Mark Bruh  
     Brian Masumoto  
     Trial Attorneys  

Objection Deadline: August 9, 2022  
Time: 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CELSIUS NETWORK LLC, *et al.*,[1] | : | Case No. 22-10964 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------X

**OBJECTIONS OF THE UNITED STATES TRUSTEE**
**TO DEBTORS' MOTIONS FOR ENTRY OF ORDERS:**

**(I)  PERMITTING THE SALE OF THE DEBTORS' MINED BITCOIN IN THE ORDINARY COURSE; AND**

**(II) APPROVING PROCEDURES FOR DE MINIMIS ASSET TRANSACTIONS**

TO:  THE HONORABLE MARTIN GLENN,
     UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits these objections (the "Objections") to the motions for entry of orders: (I) permitting the sale of the Debtors' mined bitcoin in the ordinary course ("Bitcoin Motion") [ECF No. 187]; and (II) approving procedures for de minimis asset transactions (the "De

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

1

Minimis Motion") [ECF No. 189] (collectively, the "Motions"). In support thereof, the United States Trustee respectfully states:

## INTRODUCTION

The Debtors incorrectly characterize the Motions as in the ordinary course and *de minimis*, but there is nothing ordinary about these Motions. Through its Bitcoin Motion, the Debtors seek broad authority to monetize its bitcoin by "sale, pledging, hypothecation, assignment, investment, use, transfer, or other disposal." However, the Debtors have failed to provide the necessary transparency into its business activities or its crypto holdings for any party to determine if these proposed actions are even in the ordinary course let alone for the benefit of the bankruptcy estate.[2] To date, the Debtors have failed to describe the extent of their crypto holdings – number of coins, estimated value of coins, or where the coins are held.

Similarly, the De Minimis Motion seeks the authority for the Debtors to dispose or sell property – of unknown type, quantity, or value – without further authority of this Court. The Debtors have not provided the requisite factual background for interested parties to evaluate the necessity of this request.

Before such Motions can be granted, there needs to be visibility into the Debtors' balance sheet and business practices. Importantly, these Motions should not be granted until the Debtors adequately describe how they will utilize any proceeds from the actions contemplated in the Motions. Accordingly, the United States Trustee submits this objection to the Motions until the necessary information is provided for interested parties to begin evaluating the requested authority.

---

[2] The United States Trustee is currently evaluating whether an examiner is needed in this case to provide parties in interest and the public the requisite level of transparency such that this case can move forward in an appropriate fashion.

2

# BACKGROUND

### General Background

1. On July 13, 2022 (the "Petition Date"), Celsius Network LLC, Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining LLC, Celsius Network Inc., Celsius Network Limited, Celsius Networks Lending LLC, and Celsius US Holding LLC (collectively, the "Debtors") each commenced a voluntary case under Chapter 11 of the Bankruptcy Code. *See* Voluntary Petitions, SDNY Case No. 22-10964(MG), ECF No. 1; *see also* Declaration of Shara Claire Cornell ("Cornell Decl."), attached hereto and made a part hereof, ¶ 4.

2. On July 14, 2022, The Declaration of Alex Mashinsky, Chief Executive Officer of the Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions (the "Mashinsky Decl.") was filed. ECF No. 23.

3. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 19, 2022, the Court entered an order authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b). ECF No. 53.

4. On July 27, 2022, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. ECF No. 241.

5. To date, the Schedules and Statement of Financial Affairs have not been filed.[3] Cornell Decl., ¶ 5.

6. The section 341(a) meeting is scheduled for August 19, 2022 (the "341 Meeting"). Notice of Meeting of Creditors ECF No. 297.

---

[3] Schedules and Statements of Financial Affairs are due on August 12, 2022. *See* Order Granting Motion to Extend Time to File Schedules of Assets and Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Leases, and Statement of Financial Affairs, (II) Extending Time to File Rule 2015.3 Financial Reports, and (III) Granting Related Relief ("Motion to Extend") ECF No. 57.

7. No monthly operating report has been filed, with the first becoming due on August 15, 2022. Cornell Decl., ¶ 6.

**The Bitcoin Motion**

8. On July 25, 2022, the Debtors filed the Bitcoin Motion, stating that Celsius Mining LLC owned 80,850 mining "rigs," 43,632 of which were operational, generating approximately 14.2 bitcoin per day. Bitcoin Motion, ¶ 9.

9. In 2021, the Debtors generated a total of 3,114 bitcoin and, for 2022, it projected generating more than 10,100 bitcoin for the year. *Id*. Prior to the Petition Date, the Debtors planned to expand its mining capacity to approximately 120,000 operational mining rigs. For 2023, the Debtors projected that it would generate approximately 15,000 bitcoin for the year, if it stayed on track with its plan to expand mining capacity. *Id*.

10. According to the Bitcoin Motion, the Debtors monetized the bitcoin generated by the mining activity of Celsius Mining LLC to not only cover expenses (including expanding its capacity to mine bitcoin) at Celsius Mining LLC but also to distribute funds to Debtor Celsius Network Limited its intercompany loan. Bitcoin Motion, ¶ 10.

11. The Bitcoin Motion is silent as to the monthly operating costs for continued mining of bitcoins. There is no explanation as to what energy costs are, including the volatility of energy prices, and the effect on the operating expenses. The Bitcoin Motion is similarly silent as to what the net income is for each coin mined. Cornell Decl., ¶ 7.

12. Since the Petition Date, the Debtors have continued its mining activities, but have discontinued monetizing the bitcoin generated from its mining activities. Bitcoin Sale Motion, ¶ 10.

4

**The De Minimis Asset Transaction Motion**

13. On July 25, 2022, the Debtors filed the De Minimis Motion. The Debtors seek relief to enter into transactions to sell certain "non-core" assets that are no longer needed for their business. De Minimis Motion, ¶ 8.

14. Additionally, the Debtors seek approval of certain procedures that will authorize the Debtors to use sell, swap, or transfer certain assets outside the ordinary course of business with a transaction value equal to or less than $5,000,000. *Id.*

## ARGUMENT

### A. Relevant Statutory Provisions

15. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

16. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use, sell, or lease property of the estate in the ordinary course of its business providing, in relevant part:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204 or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

17. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f). Accordingly,

assets may be sold free and clear of liens if a lienholder receives notice of a sale and fails to object. *See* 11 U.S.C. § 363(f)(2).

19. The debtor has the burden of establishing a valid business purpose for the use of estate property outside the ordinary course of business. *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071-72 (2d Cir. 1983). In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment. *See In re Allard*, No. 18-14092 (MG), 2019 WL 4593854, at *4 (Bankr. S.D.N.Y. Sept. 20, 2019); *Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 144-45 (2d Cir. 1992) (approving sale of assets based on a finding that sound business judgment supported sale because delay in the sale of assets may diminish their value); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071-72 (2d Cir. 1983) (holding that the sale of assets out of the ordinary course of business must be supported by "some articulated business justification, other than appeasement of major creditors" and that "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application"). "A determination that there are sufficient business reasons to justify a particular sale depends on the facts and circumstances of each particular case." *See In re Allard*, 2019 WL 4593854, at *4.

B. **The Debtors Failed to Meet Its Burden**

19. The Motions should not be granted until the Debtors provide the necessary transparency into its business model, balance sheet, and operations for any interested party, the United States Trustee, or this Court to make a determination that the authority requested in the De Minimis Motion or the Bitcoin Motion is in the ordinary course, as required by Section 363

of the Bankruptcy Code. Simply put, a determination cannot be made as to what is in the "ordinary course" until we know what the Debtors' business practices are.

20. *First*, the Mashinsky Declaration, the Bitcoin Motion, and the De Minimis Motion all lack details regarding the Debtors' business operations and assets. To date, there is no information regarding how much cash or cryptocurrency the Debtors held on the Petition Date or since the Petition Date. This information is critical to evaluate the Motions as well as the Debtors' financial capabilities to reorganize. How can interested parties evaluate if the Debtors need to sell bitcoins if it doesn't know how many bitcoins the Debtors currently have or how much liquid funds it has at its disposal?

21. With respect to the mining operations, the Debtors have roughly 50% of its mining rigs in operation – it owns 80,850 but only 43,632 are currently operating. Not only is it unclear if nonoperational rigs are offline because the equipment is obsolete and will thus be sold pursuant to the De Minimis Motion, but it is also unclear if the Debtors are planning to use mined bitcoins for the purchase of additional rigs or to repay its $750 million intercompany loan or for some other reason not disclosed in the motion. The United States Trustee requested financial information regarding the mining operation, including, but not limited to, a profit and loss statement. To date, the United States Trustee has not received the requested information. Cornell Decl., ¶¶ 9, 10.

22. *Second*, the De Minimis Motion is deficient on its face, as it fails to even describe what assets the Debtors want to "sell, swap, or transfer". Because the Debtors have failed to adequately explain their finances and collateralization, the De Minimis Motion rests solely on the Debtors' unshared knowledge that the assets it wishes to sell are not otherwise encumbered. There is no way for interested parties to determine if Section 363(f) is even implicated let alone satisfied by the De Minimis Motion.

7

23. The De Minimis Motion also fails to identify who might be a purchaser and whether a nonDebtor affiliate might be a party to the transactions. Also problematic is that the De Minimis Motion makes no distinction between the assets of any of the Debtors. There appears to be comingling, although the extent of which is unknown. The combination of the large intercompany loans ($750 million revolver) and the unknown flow of funds between Debtor and nonDebtor affiliates, it is at best questionable as to which entity owns any of the intended *de minimis* assets and therefore how the proceeds of any sale should be allocated. In light of the extreme lack of information, at minimum, the Debtors should be required to provide a sale notice for the disposition of any asset not specifically enumerated in the De Minimis Motion.

24. <u>Third</u>, the information that has been provided by the Debtors conflicts with the requested authority. For example, according to the Debtors' Consolidated Assets & Liabilities, as of July 13, 2022, the Debtors have $170 million in cash. Mashinsky Decl., ¶ 16. Thus, it is unclear why the Debtors allege that they have been "financial constrained." The Debtors must explain why they need these funds and why current liquid assets cannot be used instead.

25. <u>Fourth</u>, if assets, including bitcoins, are to be sold, what are the proceeds to be used for? The United States Trustee, even with its many requests, still lacks the visibility into Debtors' business operations to determine where assets, cash, or cryptocurrency are held and how these different types of assets are used to pay the Debtors expenses or otherwise.

26. <u>Fifth</u>, it is unclear as to how the Debtors arrived at the $5,000,000 cap with respect to the sale of assets in the De Minimis Motion.

27. <u>Sixth</u>, critical benchmarks in this case that would hopefully provide greater transparency into the Debtors operations have not yet occurred. For example: the Debtors have not filed their Schedules and Statements yet and will not until August 12, 2022, unless further

extension is sought; the section 341(a) meeting has not occurred; and the Debtors have not yet filed a monthly operating report.

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the foregoing Objection and grant such other relief as the Court may deem just and proper.

Dated: New York, New York
August 9, 2022

                Respectfully submitted,

                WILLIAM K. HARRINGTON
                UNITED STATES TRUSTEE, Region 2

By: */s/ Shara Cornell*
    Shara Cornell, Esq.
    Mark Bruh, Esq.
    Brian Masumoto, Esq.
    Trial Attorneys
    201 Varick Street, Room 1006
    New York, New York 10014
    Tel. (212) 510-0500