Hearing Date:  September 1, 2022, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:  August 25, 2022, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON**
**DEBTORS' APPLICATION TO EMPLOY AND RETAIN**
**ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISOR TO**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 13, 2022**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application to Employ and Retain Alvarez & Marsal North America, LLC as Financial Advisor to the Debtors and Debtors in Possession Effective as of July 13, 2022* (the "Application,") will be held on **September 1, 2022, at 10:00 a.m., prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **August 25, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: August 9, 2022

/s/ Joshua Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:             jsussberg@kirkland.com

   - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:             patrick.nash@kirkland.com
                   ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**Hearing Date: September 1, 2022, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: August 25, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### DEBTORS' APPLICATION TO EMPLOY AND RETAIN
### ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISOR TO
### THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 13, 2022

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this application (this "<u>Application</u>"):

#### Relief Requested

1.    The Debtors seek entry of an order (the "<u>Order</u>"), substantially in the form

attached hereto as **<u>Exhibit A</u>**:  (a) approving the employment and retention of Alvarez & Marsal

North America, LLC, together with employees of its affiliates (all of which are wholly-owned by

its parent company and employees), its wholly owned subsidiaries, and independent contractors

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

(collectively, "A&M") as financial advisor, effective as of July 13, 2022, in accordance with the terms and conditions of that certain engagement letter dated as of June 19, 2022 (the "Engagement Letter"), annexed as Exhibit 1 to the Order; and (b) granting related relief.  In support of this Application, the Debtors rely upon and incorporate by reference the declaration of Robert Campagna, a Managing Director at A&M (the "Campagna Declaration"), attached hereto as **Exhibit B**.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a), 328 and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      On July 13, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna,*

2

*Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11
Petitions and First Day Motions* [Docket No. 22] and the *Declaration of Alex Mashinsky, Chief
Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day
Motions* [Docket No. 23] (together, the "First Day Declarations"), incorporated by reference
herein.[2]

6.      The Debtors are operating their business and managing their property as debtors
in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11
cases have been consolidated for procedural purposes only and are jointly administered pursuant
to Bankruptcy Rule 1015(b) and the *Order Directing (I) Joint Administration of the Chapter 11
Cases and (II) Granting Related Relief* [Docket No. 53].  On July 27, 2022 the United States
Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official
committee of unsecured creditors [Docket No. 241] (the "Committee").  No request for the
appointment of a trustee or examiner has been made in these chapter 11 cases.

### Retention of A&M

7.      In consideration of the size and complexity of their businesses, as well as the
exigencies of the circumstances, the Debtors have determined that the services of an experienced
financial advisor will substantially enhance their attempts to maximize the value of their estates.
A&M is well qualified to provide these services in light of their extensive knowledge and
expertise with respect to chapter 11 proceedings.

8.      A&M specializes in interim management, crisis management, turnaround
consulting, operational due diligence, creditor advisory services, and financial and operational
restructuring.  A&M's debtor advisory services have included a wide range of activities targeted

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day
Declarations.

3

at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages. Recent A&M engagements include *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. Jul. 21, 2022); *In re Roman Catholic Diocese of Rockville Ctr., New York*, No. 20-2345 (SCC) (Bankr. S.D.N.Y. Nov. 4, 2020); *In re Stearns Holdings, LLC*, No. 19-12226 (SCC) (Bankr. S.D.N.Y. July 31, 2019); *In re Maxcom USA Telecom, Inc.*, No. 19-23489 (RDD) (Bankr. S.D.N.Y. Oct. 7, 2019); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 6, 2018); *In re Answers Holdings, Inc.*, (SMB) No. 17-10496 (Bankr. S.D.N.Y. Apr. 4, 2017); *In re Angelica Corp.*, No. 17-10870 (JLG) (Bankr. S.D.N.Y. May 4, 2017); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 3, 2016); *In re Blockbuster Inc.*, No. 10-14997 (BRL) (Bankr. S.D.N.Y. Oct. 27, 2010); *In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008).

9.     In addition, A&M is familiar with the Debtors' businesses, financial affairs, and capital structure. Since the firm's initial engagement on June 19, 2022, the A&M personnel providing services to the Debtors (the "A&M Professionals") have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases. Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of this case. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors

submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services

10.     The terms of the Engagement Letter shall govern the Debtors' retention of A&M except as explicitly set forth herein or in any order granting this Application.

11.     It is our understanding that the Debtors have chosen Centerview Partners LLC ("Centerview") to act as its investment banker.  A&M will work closely with Centerview, and all other advisors, to prevent any duplication of efforts in the course of advising the Debtors.

12.     Among other things, A&M will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans, and support of the restructuring negotiations among the Debtors, their advisors, and their creditors with respect to an overall exit strategy for their chapter 11 cases.

13.     A&M will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases, including, but not limited to:

(a)     assistance in the development and management of a 13-week cash flow forecast;

(b)     assistance in evaluation of the Debtors' current business plan and in preparation of a revised operating plan if necessary;

(c)     assistance with the Debtors' communications with lenders, and other creditors with respect to the Debtors' strategic, financial and operational matters;

(d)     assistance to the Debtors and counsel in the preparation of motions, pleadings and other activities and materials necessary to implement a chapter 11 filing, if required;

(e)       assistance with the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(f)       assistance with information and analyses required for the Debtors' potential Debtor-In-Possession financing (the "DIP Financing") including, but not limited to, preparation of budgets and forecasts, sizing of a potential DIP Financing facility, and preparation for hearings regarding the use of cash collateral and/or DIP Financing;

(g)       assistance with identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection/disclaimer of each;

(h)       assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(i)       attend meetings and assist in discussions with potential investors, banks and other lenders, the Committee, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(j)       analyze creditor claims by type, entity and individual claim, including assistance with development of a database to track such claims if needed;

(k)       assistance with evaluation and analysis of avoidance actions, including fraudulent conveyance and preferential transfers;

(l)       provide testimony before the Court with respect to financial and restructuring matters within the purview of A&M;

(m)       assistance to the Debtors and counsel in preparing plans, disclosure statements and other court materials and pleadings;

(n)       assistance with regulatory, compliance, and BSA/AML, sanctions, and terrorist financing matters, including communications with regulators, and assistance with due diligence, as appropriate;

(o)       attend meetings and assist in discussions with Debtors' representatives, counsel, regulators, creditors, debtors, and other parties in interest and professionals with respect to the impact of regulatory and compliance matters and potential claims; and

(p)          other activities as are approved by the Debtors, its officers, and
agreed to by A&M.

### A&M's Disinterestedness

14.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Campagna Declaration, A&M:   (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed by the U.S. Trustee or the bankruptcy judge presiding over these chapter 11 cases; (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

15.     Accordingly, the Debtors believe that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

16.     In addition, as set forth in the Campagna Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

### Terms of Retention

17.     Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Letter.

18.     <u>Compensation</u>.  In accordance with the terms of the Engagement Letter, A&M will be paid by the Debtors for the services of the A&M Professionals at their customary hourly billing rates which shall be subject to the following ranges:

|      |                      |            |
|------|----------------------|------------|
| i.   | Managing Director    | $975-1,295 |
| ii.  | Director             | $750-950   |
| iii. | Analysts/Associates  | $425-750   |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its

rates generally.

19.    In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses

of the A&M Professionals incurred in connection with this assignment, such as travel, lodging,

third party duplications, messenger, and telephone charges.    In addition, A&M shall be

reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the

preparation and approval of this Application.    All fees and expenses due to A&M will be billed

in accordance with any interim compensation orders entered by this Court, and the relevant

sections of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

20.    <u>Indemnification</u>.    As a material part of the consideration for which the A&M

Professionals have agreed to provide the services described herein, the Debtors have agreed to

the indemnification provisions in paragraph 10 of the Engagement Letter.    Notwithstanding the

foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the

pendency of these chapter 11 cases:

> All requests by A&M for payment of indemnity pursuant to the
> Engagement Letter shall be made by means of an application
> (interim or final as the case may be) and shall be subject to review
> by the Court to ensure that payment of such indemnity conforms to
> the terms of the Engagement Letter and is reasonable based upon
> the circumstances of the litigation or settlement in respect of which
> indemnity is sought, *provided, however*, that in no event shall
> A&M be indemnified to the extent a court determines by final
> order that any claim or expense has resulted from the bad-faith,
> self-dealing, breach of fiduciary duty (if any), gross negligence or
> willful misconduct on the part of A&M.

**<u>Fees</u>**

21.    The Debtors understand that A&M intends to apply to the Court for allowance of

compensation and reimbursement of expenses for its financial advisory services in accordance

8

with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court, and guidelines established by the U.S. Trustee.

22.    A&M received $1.0 million as an initial retainer in connection with preparing for and conducting the filing of these chapter 11 cases, as described in the Engagement Letter.  In the 90 days prior to the Petition Date, A&M received retainers, including the initial retainer, and payments totaling $3.4 million in the aggregate for services performed for the Debtors.  A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date.  A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors.  The unapplied residual retainer, which is estimated to total approximately $820,000, will not be segregated by A&M in a separate account, and will be held until the end of these chapter 11 cases and applied to A&M's final approved fees in these proceedings.

23.    Given the numerous issues that A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## Basis for Relief

24.    The Debtors submit that the retention of A&M under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court' s approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons,

to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C.

§ 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person

that:

> (a)      is not a creditor, an equity security holder, or an insider;
>
> (b)      is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (c)      does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

25.      Further, section 1107(b) of the Bankruptcy Code provides that "a person is not

disqualified for employment under section 327 of this title by a debtor in possession solely

because of such person's employment by or representation of the debtor before the

commencement of the case."  11 U.S.C. § 1107(b).  A&M's prepetition relationship with

Debtors is therefore not an impediment to A&M's retention as Debtors' postpetition financial

advisor.

26.      Section 328(a) of the Bankruptcy Code authorizes the employment of a

professional person "on any reasonable terms and conditions of employment, including on a

retainer." 11 U.S.C. § 328(a).  Debtors submit that the terms and conditions of A&M's retention

as described herein, including the proposed compensation and indemnification terms, are

reasonable and in keeping with the terms and conditions typical for engagements of this size and

character.  Since Debtors will require substantial assistance with the reorganization process, it is

reasonable for Debtors to seek to employ and retain A&M to serve as its financial advisor on the

terms and conditions set forth herein.

## **Motion Practice**

27.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application.    Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## **Notice**

29.     The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

28.     No prior request for the relief sought in this Application has been made by the Debtors to this or any other court.

WHEREFORE, for the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other and further relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: August 9, 2022

*/s/ Chris Ferraro*

Name:      Chris Ferraro
Title:        Chief Financial Officer
                Celsius Network Limited

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 13, 2022

Upon the application (the "Application")[2] of the debtors in possession in the above-captioned case (collectively, the "Debtors") for an order pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to employ and retain Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") as financial advisor, effective as of July 13, 2022 (the "Petition Date") on the terms set forth in the engagement letter (the "Engagement Letter") attached hereto as **Exhibit 1**; all as more fully set forth in the Application; and the Campagna Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012;

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, its creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and the Court being satisfied that A&M is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      Pursuant to section 327(a) of the Bankruptcy Code, the Debtors are hereby authorized to retain A&M as financial advisor to the Debtors, effective as of July 13, 2022, on the terms set forth in the Engagement Letter.

3.      A&M shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010

(General Order M-412), the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases,* dated January 29, 2013 (General Order M-447), the applicable U.S. Trustee guidelines, this Order, and such other procedures as may be fixed by order of the Court.  For billing purposes, A&M shall keep its time records in one-tenth (1/10) hour increments.

4.      Except to the extent set forth herein, the terms of the Engagement Letter, including, without limitation, the compensation provisions and the indemnification provisions set forth therein, are reasonable terms and conditions of employment and are approved, as modified herein.

5.      The indemnification, contribution, and reimbursement provisions set forth in the Engagement Letter are approved, subject, during the pendency of the chapter 11 cases, to the following:

> All requests by A&M for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided, however*, that in no event shall A&M be indemnified to the extent a court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct on the part of A&M.

6.      In the event that A&M seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Application and/or Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in A&M's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, as the case may be, without regard to whether

such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

7.      The Debtors will coordinate with A&M and its other retained professionals to minimize any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

8.      In connection with any increase in A&M's rates for any individual retained by A&M and providing services in these cases, A&M shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, U.S. Trustee, and the Committee, prior to filing a fee statement or fee application reflecting such an increase.  The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9.      Notwithstanding anything in the Application to the contrary, to the extent that A&M uses the services of subcontractors (the "Contractors") in these cases, A&M shall (i) pass through the cost of such Contractors to the Debtors at the same rate that A&M pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for A&M; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

10.     A&M shall apply any remaining amounts of its prepetition retainer at the time of its final fee application in satisfaction of compensation and reimbursement, after such fees and

expenses are approved pursuant to the order of the Court awarding final fees and expenses to A&M and promptly pay to the Debtors' estates any retainer remaining after such application.

11.      To the extent there is inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

12.      Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

13.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

15.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Engagement Letter**

DocuSign Envelope ID: C4C8EBE8-F4A1-4934-98CB-EEF62F78509

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

June 19, 2022

Alex Mashinsky
Chief Executive Officer
Celsius Network Limited
121 River Street, PH05
Hoboken, NJ 07030 USA

Dear Mr. Mashinsky:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and Celsius Network Limited and its subsidiaries and their respective assigns and successors (the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1.    Description of Services

(a)    A&M shall provide consulting services to the Company at the direction of the Special Committee of the Board of Directors of the Company and, if and once appointed, the Chief Restructuring Officer of the Company (each "Responsible Officer" or together the "Responsible Officers") in connection with their efforts to improve their financial performance and assist them in their reorganization efforts. We understand the Company has also engaged Akin Gump Strauss Hauer & Feld LLP ("Counsel") as part of their reorganization effort. It is anticipated that A&M's activities shall include the following:

(i)    assistance in the development and management of a 13-week cash flow forecast;

(ii)    assistance in evaluation of the Company's current business plan and in preparation of a revised operating plan if necessary;

(iii)    assistance with the Company's communications with lenders, and other creditors with respect to the Company's strategic, financial and operational matters;

(iv)    assistance to the Company and Counsel in the preparation of motions, pleadings and other activities and materials necessary to implement a Chapter 11 filing, if required;

(v)    assistance with the preparation of financial related disclosures required by the U.S. bankruptcy court having jurisdiction over the Company's

www.alvarezandmarsal.com

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE



Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

Chapter 11 case or cases (the "Bankruptcy Court"), including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(vi)     assistance with information and analyses required for the Company's potential Debtor-In-Possession financing ("DIP Financing") including, but not limited to, preparation of budgets and forecasts, sizing of a potential DIP Financing facility, and preparation for hearings regarding the use of cash collateral and/or DIP Financing;

(vii)    assistance with identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection/disclaimer of each;

(viii)   assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Bankruptcy Court approval is sought;

(ix)     attend meetings and assist in discussions with potential investors, banks and other lenders, the Creditors' Committee appointed in these Chapter 11 Cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(x)      analyze creditor claims by type, entity and individual claim, including assistance with development of a database to track such claims if needed;

(xi)     assistance with evaluation and analysis of avoidance actions, including fraudulent conveyance and preferential transfers;

(xii)    provide testimony before the Bankruptcy Court with respect to financial and restructuring matters within the purview of A&M;

(xiii)   assistance to the Company and Counsel in preparing plans, disclosure statements and other Court materials and pleadings;

(xiv)    Assistance with regulatory, compliance, and BSA/AML, sanctions, and terrorist financing matters, including communications with regulators, and assistance with due diligence, as appropriate.

(xv)     Attend meetings and assist in discussions with Company representatives, counsel, regulators, creditors, debtors, and other parties in interest and professionals with respect to the impact of regulatory and compliance matters and potential claims; and

www.alvarezandmarsal.com



(xvi)   other activities as are approved by you, the Responsible Officer(s) and agreed to by A&M.

In rendering its services to the Company, A&M will report directly to the Responsible Officer(s) and will make recommendations to and consult with the Responsible Officer(s), other senior officers, and Counsel as the Responsible Officer(s) directs.

(b) In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates and subsidiaries.   Such affiliates are wholly owned by A&M's parent company and employees.

A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

2.   <u>Information Provided by the Company and Forward Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by A&M in connection with the services performed for the Company.   The Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein.   A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Responsible Officer(s) or counsel to do so.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.   <u>Limitation of Duties</u>

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Responsible Officer(s) will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring

-3-

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Responsible Officer(s) and only to the extent and in the manner authorized by and directed by the Responsible Officer(s) and agreed to by A&M.

Depending on future developments the spread of the Coronavirus has the potential to affect the services provided under this Agreement. Travel, work place and mobility restrictions (to include measures reasonably mandated by A&M with respect to its employees and personnel) may restrict travel to the Company and other work sites as well as limit access to facilities, infrastructure, information and personnel of A&M, the Company or others. Such circumstances may adversely affect the timetable or content of A&M's deliverables and completion of the scope of services included in this Agreement. A&M will discuss with the Company if A&M believes that the services may be impacted in this way. The Company accepts and acknowledges that A&M employees and personnel may attend at the Company's locations or physically interact with the Company's employees and personnel in connection with the services, unless A&M or the Company decide that this should not be the case.

4.    <u>Compensation</u>

(a) A&M will receive fees based on the following hourly rates:

| Managing Directors | $975-1,295 |
| Directors | $750-950 |
| Analysts/Associates | $425-750 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

(b) In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, messenger and wireless charges. A&M also charges a flat rate of 3% of professional fees to cover otherwise unbilled items such as telephone and conferencing charges, computer use, technology and software license fees, research subscriptions and other internal services. All fees and expenses will be billed on a weekly basis or, at A&M's discretion, more frequently. Invoices are payable upon receipt.

(c) The Company shall promptly remit to A&M a retainer in the amount of $1,000,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

www.alvarezandmarsal.com

DocuSign Envelope ID: ...
22-10964-mg    Doc 410    Filed 08/09/22    Entered 08/09/22 23:11:56    Main Document

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

5.   <u>Term</u>

    (a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

    (b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

    (c) On termination of the Agreement, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

    (d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.   <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of the Company and the personnel and agents of A&M are not entitled to any of the benefits that the Company provides for the Company employees. The Company acknowledges and agrees that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7.   <u>No Third Party Beneficiary</u>

The Company acknowledges that all advice (written or oral) provided by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8.   <u>Conflicts</u>

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "<u>Firm</u>") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business

www.alvarezandmarsal.com

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained.

9.    Confidentiality / Non-Solicitation

A&M shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or Counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10.    Indemnification and Limitations on Liability

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

11.    Data Protection. In the provision of services under this Agreement, it is expected that the Company and third parties will provide to A&M certain personally identifiable information or other personal data regarding creditors, employees and other constituents, the processing or transfer of which may be subject to Data Protection Laws. "Data Protection Laws" means all applicable U.S. and foreign national, federal, state and/or local laws, rules, regulations or other binding instruments in relation to the processing or protection of personal data, including, but not limited to, the EU General Data Protection Regulation (GDPR). In furtherance thereof, the Company acknowledges and agrees: it is expected that such information (and work product containing such information) will be transferred by A&M, on behalf of the Company, to third parties including other agents and professionals of the Company acting within

-6-

DocuSign Envelope ID: 09C9C7AB3E8-F0A04944-8CBCEF632F9B99F

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

this matter (i.e., the Company's internal counsel, other advisors including Counsel, and claims agent) as well as, at the Company's direction, other constituents in the Company's case, including but not limited to creditors and their representatives as well as any applicable judicial, regulatory or governmental bodies; and, that A&M's transfer of such data directly to third parties (rather than by the Company to a third party) is for the Company's convenience and such transfers shall always be deemed to be on the Company's behalf. Without limiting the foregoing, each party agrees to comply with Data Protection Laws in connection with this Agreement.

12.    <u>Miscellaneous</u>

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M. The Company agrees that A&M may aggregate information provided by or on behalf of the Company during this engagement with information provided by or on behalf of others and use and disclose that information in de-identified form as part of research and advice, including, without limitation, benchmarking services. Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

www.alvarezandmarsal.com

DocuSign Envelope ID: C3C7E8E6-F1A1-4934-83CB-CE1182F7B5DE

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _____
Robert Campagna
Title:   Managing Director

Accepted and agreed:

Celsius Network Limited
on behalf of itself and its subsidiaries

By: _____
Alex Mashinsky
Title: Chief Executive Officer

-8-

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated June 16, 2022 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement"), by and between Alvarez & Marsal North America, LLC ("A&M") and Celsius Network Limited together with its subsidiaries (jointly and severally, the "Company"), for services to be rendered to the Company by A&M.

A.      The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to (a) any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct, or (b) any claim by the Company against A&M as to A&M's breach of its express obligations under the Agreement.  The Company also agrees that (x) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (y) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material

-9-

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company within 14 calendar days of receiving notice of such action, proceeding or investigation; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.  No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

person who is not also found liable for such fraudulent misrepresentation.

E.    In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.    Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.    The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

CELSIUS NETWORK LIMITED
on behalf of itself and its subsidiaries

ALVAREZ & MARSAL NORTH
AMERICA, LLC

By: _____
Name: Alex Mashinsky
Title:  Chief Executive Officer

By: _____
Name: Robert Campagna
Title:   Managing Director

www.alvarezandmarsal.com

**<u>Exhibit B</u>**

**Campagna Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF ROBERT CAMPAGNA**
**IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY AND RETAIN**
**ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISOR TO**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 13, 2022**

I, ROBERT CAMPAGNA, hereby declare under penalty of perjury, as follows:

1.    I am a Managing Director with Alvarez & Marsal North America, LLC (together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors, "A&M"),[2] a restructuring advisory services firm with numerous offices throughout the country. I submit this declaration on behalf of A&M (this "Declaration") in support of the *Debtors' Application to Employ and Retain Alvarez & Marsal North America, LLC as Financial Advisor to Debtors and Debtors in Possession Effective as of July 13, 2022* (the "Application") on the terms and conditions set forth in the Application and the engagement letter between Debtors and A&M

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

attached to the Order as <u>Exhibit 1</u> (the "<u>Engagement Letter</u>").  Except as otherwise noted,[3] I have

personal knowledge of the matters set forth herein.

<u>**Disinterestedness and Eligibility**</u>

2.      A&M together with its professional service provider affiliates (the "<u>Firm</u>") utilize

certain procedures ("<u>Firm Procedures</u>") to determine the Firm's relationships, if any, to parties

that may have a connection to a client.   In implementing the Firm Procedures, the following

actions were taken to identify parties that may have connections to the Debtors, and the Firm's

relationship with such parties.

3.      A&M requested and obtained from the Debtors extensive lists of interested parties

and significant creditors (the "<u>Potential Parties in Interest</u>").[4]   The list of Potential Parties in

Interest which A&M reviewed is annexed hereto as **<u>Schedule A</u>**.  The Potential Parties in Interest

reviewed include, among others, the Debtors and their affiliates, prepetition lenders, officers,

directors, the fifty (50) largest unsecured creditors of the Debtors (on a consolidated basis), the

top 20% of customers by deposit amount, suppliers with open AP and any supplier in the top

80% of spend for the last year, parties holding ownership interests in the Debtors, significant

counterparties to material agreements, and significant litigation claimants.

4.      A&M then compared the names of each of the Potential Parties in Interest to the

names in its master electronic database of the Firm's clients (the "<u>Client Database</u>").  The Client

---

[3]      Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at A&M and are based on information provided by them.

[4]      The list of Potential Parties in Interest is expected to be updated during these cases.  A&M continues to review the relationships its professionals may have with potentially interested parties and to determine whether any relationships other than those set forth herein exist.  As may be necessary, A&M will supplement this Declaration if it becomes aware of a relationship that may adversely affect A&M's retention in these cases or discovers additional parties in interest through the filing of statements of financial affairs or statements under Rule 2019.  A&M will update this disclosure if it is advised of any trading of claims against or interests in the Debtors that may relate to A&M's retention or otherwise requires such disclosure.

2

Database generally includes the name of each client of the Firm, the name of each party who is or was known to be adverse to the client of the Firm in connection with the matter in which the Firm is representing such client, the name of each party that has, or had, a substantial role with regard to the subject matter of the Firm's retention, and the names of the Firm professionals who are, or were, primarily responsible for matters for such clients.

(a)     An email was issued to all Firm professionals requesting disclosure of information regarding:  (i) any known personal connections between the respondent and/or the Firm on the one hand, and certain significant Potential Parties in Interest or the Debtors, on the other hand,[5] (ii) any known connections or representation by the respondent and/or the Firm of any of those Potential Parties in Interest in matters relating to the Debtors; and (iii) any other conflict or reason why A&M may be unable to represent the Debtors.

(b)     Known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.  These connections are listed in **Schedule B** annexed hereto.

5.     As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, A&M:

---

[5]     In reviewing its records and the relationships of its professionals, A&M did not seek information as to whether any A&M professional or member of his/her immediate family:  (a) indirectly owns, through a public mutual fund or through partnerships in which certain A&M professionals have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact A&M's disinterestedness or otherwise give rise to a finding that A&M holds or represents an interest adverse to the Debtors' estates.  It is also noted that in the course of our review it came to A&M's attention that A&M personnel hold de minimis investments, representing not more than 0.01% of the equity interests in the related entity, in various parties in interest, including but not limited to AT&T, Google and Verizon.

3

(a)    is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services),[6] an equity security holder of the Debtors;

(b)    is not, and has not been, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtors; and

(c)    does not have an interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

6.    As can be expected with respect to any international professional services firm such as A&M, the Firm provides services to many clients with interests in the Debtors' chapter 11 cases.  To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtors' chapter 11 cases.

7.    In addition to the connections disclosed on **Schedule B**, I note the following:

(a)    A Managing Director and a Senior Director of A&M's Cayman Islands affiliate are the joint voluntary liquidators of a Potential Party in Interest, New World Holdings (in voluntary liquidation) ("NWH"), the parent company of Invictus Capital Financial Technologies SPC ("Invictus"), which operates mutual funds including Crypto10 SP fund (collectively, the "Invictus Funds") that include assets deposited into accounts held by the Debtors.  We note that the Invictus Funds are in the process of a restructuring whereby certain investors are entitled to shares in the Invictus Funds and NWH is holding such shares pending the receipt of consideration necessary to effectuate the exchange (therefore, NWH has a nominal beneficial interest in the Invictus Funds pending the completion of such exchange).  A&M's role as liquidator of NWH does not include managing the funds or their investments (though, NWH

---

[6]    See paragraph 13 below.

holds the management shares of the Invictus Funds (essentially the right to manage the Invictus Funds)) which is the responsibility of an investment manager engaged by Invictus, also affiliated with NWH.  The A&M affiliate team has also provided support to the liquidators in their role described above as well as certain ongoing advisory services to Invictus.  Such services have not involved matters related to the Debtors (other than advising generally on Invictus' communications with investors which could have included communications related to the Invictus Funds' exposure to the Debtors).  A&M's affiliate will recuse itself from any matter adverse to the Debtors if one should arise in the course of the NWH/Invictus engagement.

      (b)      On July 5, 2022, Voyager Digital Ltd. and two subsidiaries ("<u>VDL</u>") commenced chapter 11 proceedings.  Alvarez & Marsal Canada Inc. is the Information Officer ("<u>IO</u>") in the Canadian recognition proceedings under the CCAA.  VDL is listed as a competitor of the Debtors and is also a customer with deposits in the amount of approximately $7,300 USD.  A&M's role as the IO does not include advising VDL on issues related to Celsius or the amount deposited.

      (c)      A&M used reasonable efforts to determine whether the large number of individual Potential Parties in Interest in these chapter 11 cases are related to individual parties who appeared in A&M's Client Database; however, A&M may have been unable to identify with specificity certain connections based on the generality of such individuals' names and/or the information available to A&M at this time.  To the extent A&M's connections to such individual parties were unable to be confirmed, A&M has separately identified these parties on **<u>Schedule B</u>** as "Indeterminate."

      8.      Further, as part of its diverse practice, the Firm appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including

attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  Further, the Firm has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which A&M is to be employed, and none are in connection with these cases.

9.    To the best of my knowledge, no employee of the Firm is a relative of, or has been connected with the U.S. Trustee in this district or its employees.

10.    Accordingly, to the best of my knowledge, A&M is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that A&M:  (i) is not a creditor, equity security holder, or insider of the Debtors; (ii) was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders.

11.    If any new material relevant facts or relationships are discovered or arise, A&M will promptly file a supplemental declaration.

**<u>Compensation</u>**

12.    Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules of this Court, A&M will seek from the Debtors payment for compensation on an hourly basis and reimbursement of actual and necessary expenses incurred by A&M.  A&M's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the

professionals assigned to this engagement are outlined in the Application.  These hourly rates are adjusted annually.

13.    To the best of my knowledge, (i) no commitments have been made or received by A&M with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) A&M has no agreement with any other entity to share with such entity any compensation received by A&M in connection with these chapter 11 cases.

14.    By reason of the foregoing, I believe A&M is eligible for employment and retention by the Debtors pursuant to sections 327(a) (as modified by sections 1107(b), 328, 330, and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules).

New York, New York
Dated: August 9, 2022

/s/ Robert Campagna
Name:        Robert Campagna
Title:         Managing Director
               Alvarez & Marsal North America, LLC

7

## __Schedule A__

**List of Potential Parties in Interest**

## <u>Schedule A</u>

### List of Potential Parties in Interest

#### <u>Non-Bankruptcy Advisor</u>
Cryptos Capital
Matsurmura, Miko

#### <u>Bankruptcy Professionals</u>
Centerview Partners
Kirkland & Ellis LLP
Latham & Watkins LLP
Stretto

#### <u>Institutional/Retail Customers</u>
1215 test
168 Trading Limited
Abeliuk, Eduardo
Abuvala, Ravi Ryan
Adams, Darryl Thomas
Akuna Digital Assets LLC
Al Khoori, Mohamed Yousif Ahmed H
Alameda
Alameda Research Ltd
Alexander, Alena
Ali, Khaleef
Ali, Yanush
AltCoinTrader (Pty) Ltd
Amber - Maple
Amber Technologies Limited
████████████
Anchorage Hold LLC
Anchorage Lending CA LLC
Andari Co Ltd
Ankeney, John Charles
Antalpha Technologies Limited
AP Capital Absolute Return Fund
AP Capital Investment Limited
Ashizaki, Yuki
Auros Tech Limited
Auros Tech Limited - Maple
B-Brick Inc
B2C2 LTD
Babel Holding Limited
████████████
Baer, Matthew David
████████████
Bauman, Simon
BCB Prime Services Limited
BCRS2 LLC
Belleway Ltd

Bennett, Danyal
Berg, Henry Guyer
Berrada, Amin
BJ Investment Holdings, LLC
BK Coin Capital LP
Blockchain Access UK Ltd
Blue Fire Capital Europe Cooperatief
Bnk To The Future
Boroff, Dustin Charles
Boskovski , Nikola
████████████
Bressler, David Jason
Brian T. Slater Revocable Living Trust
Bright, Nicolas John
Broad Reach Consulting LLC
████████████
Bru Textiles NV
Burkgren, Eric Alan
Campos, John JR
Carolyn Vincent Superannuation Fund
Carter, Luke Armstrong
CEX IO LTD
Champigny, Edward William
████████████
Chiu, James Lee
Chiu, Yee Lai
Choi, Linda Yi
Choi, Luke Kyung Goo
Christiansen, Robert Nathan
Chu, Cindy
Chulamorkodt, Natakom
Chung, Ting Kong Terence
Cipolloni, Mark J
CMS Holdings LLC
████████████
Cohen Pavon , Roni
Coinbase Credit
Coinmerce BV
████████████
Conklin, Jennifer Walter
Core Scientific Inc
Covario AG
Crypto10 SP -Segregated Portfolio of Invictus
Capital Financial Technologies SPC
Cumberland DRW LLC
████████████
Damp, Steven Charles
████████████

Davis, Otis
Deferred 1031 Exchange, LLC
██████████████
Delargy, Colin C
██████
Dexterity Capital LP
DGL Investments LLC
Dhiraj, Mandeep
DiFiore ASA Irrevocable GST Trust
Digital Asset Funds Management Pty Ltd
Digital Treasures Management PTE Ltd
Diversified Alpha SP
Dixon, James
████████████
Donofrio, John
████████████████
Druk Holding & Investments Limited - Druk Project Fund
Druk Holding and Investments
Dunamis Trading (Bahamas) Ltd
Dunamis Trading III Ltd
Duprex, Jeffrey Paul
DV Chain LLC
Ecko, Marc
Eller, Phillip Brian
Ellington, Brian
Elshafei, Ashraf
Eng Chuan, Liew
Enigma Securities Limited
Equities First Holdings
Eriks, Dennis
FalconX Limited
██████████
Fasanara Investments Master Fund
████████████████
Fertik, Michael Benjamin Selkowe
████████████
Fletcher, Brett
Floatzen DOO.
Flow Traders BV
Folkvang SRL
Fractal
Framework - Maple
Future Technology Investment
Galaxy
Galaxy Digital LLC
Garner, Phillip Wayne Jr
██████████
Gatt, Raymond
Gemini
Genesis Global Capital LLC
Gilmer, George Hudson

Goh, Jian Kai
Grapefruit Trading LLC
Gray, Jill Marie
GSR Markets Limited
Guljaǎ¡, Janoǎ¡
H Trussell Investments PTY LTD
Halikias, Thomas T
Hamilton, Nathan
Harrell, Ashley Anne
Harrison Opportunity III Inc.
Hartley, James
HAS Futures LLC
Hehmeyer LLC
Hehmeyer Trading AG
████████████████
Herring, Stephen Ashley
████████████
Ho, Quoc Tri
Hodlnaut Pte. Ltd.
████████████
Holt, Jonathon James
HOME 007 LLC
HRTJ Limited
████████████
Hughes, Stephen
Humphreys, Steven C
Hunt, Bryan J
ICB Solutions
InfoObjects Inc
Intership Limited
Invictus Capital Financial Technologies SPC
████████████████
Iterative OTC LLC
Jahizi, Oliver
Jensen, Joseph
JKL Digital Capital Limited
Jonas, Leah Nicole
Joseph, Sebastian
JSCT Hong Kong Limited
JST Systems LLC
Juiris, Peter Casimir
JUMP Trading
Kalynovskyi , Dmytro
Kap, Ethan Garet
Keiser, Marc Vito
Kelly, James Patrick
Keyrock SA
Kim, Sungyoun
King, Christopher Scott
Koala 1 LLC
████████████

[REDACTED]
Koyama, Osamu
Kronos Holdings
Ku, Yuehsu
Labenek, Andrew
Lamplough , Howard
Langslet, Robert
LedgerPrime DAO Master Fund LP
Lehrfeld, Joseph S
Lewis Davies, Ryan Wynn
Lewis, Howard
Liao, Guoping
Lim, Jane
Liquibit USD Market Neutral Arbitrage Fund
Liquidity Technologies LTD
Liu, Nanxi Nanqian
[REDACTED]
Luo, Edward
LUOJI2017 Limited
[REDACTED]
Mahoney, Justin Michael
Manea, Mircea
Manzke, Holger
Marchioni, John P
[REDACTED]
Marquette Digital
[REDACTED]
Mastropieri, Benji
Matrix Port Technologies Limited
Matsumura, Fumihiko
[REDACTED]
Mattina, Christopher W
McCarty, John Edward
[REDACTED]
McGarry, Brian Thomas
McIntyre, Deverick
McKeon, Brian Joseph
[REDACTED]
McNeil, James W
Meehan, Kristine M
Mellein, John Gabriel
Memetic Capital LP
Menai Markets Ltd.
Mercola, Joseph Michael
Messall, Patrick
MHT Super Pty Ltd
Mike Komaransky
Miller Jr, Samuel Garfield
Mohamed Naser Baslaib, Mohamed Ali
Mohan, Arun
Moon, Wang Sik
Moser, Christopher M

Mountain Cloud Global Limited
[REDACTED]
[REDACTED]
Musumeci, Antonio
Nascent GP Inc
Nascent LP
Neiman, Gary
Neste, Bradley
New World Holdings
Nguyen, Phuc
Nickel Digital Asset Fund SPC Digital Asset
Arbitrage SPC Institutional
Nickel Digital Asset Master Fund SPC - Digital
Factors Fund SP
NYDIG Funding LLC
Oiltrading Com Pte Limited
Onchain Custodian Pte Ltd
Optimal Alpha Master Fund Ltd
OSL SG Pte Ltd
Outremont Alpha Master Fund LP
[REDACTED]
Pae, Mitchell Chon
Pagnanelli, Victor Carl
Palm, Travis John
[REDACTED]
Parallel Capital Management Limited
Paris Castle IV LLC
[REDACTED]
Patel, Shilla Natvarbhai
Patil, Abhitabh Aneel
[REDACTED]
Pham, Khai Trinh
Pharos Fund BTC SP
Pharos Fund Eth SP
Pharos Fund SP
Pharos Fund SPC
Pharos USD Fund SP
Phonamenon Management Group LLC
Pierce, James
Pierson, Justin T
[REDACTED]
Plutus21 Blockchain Opportunities II  SP of Plutus21
Global, SPC
Plutus21 Blockchain Yield I, S.P. of Plutus21 Global,
SPC
Plutus21 Crypto Fund I LP
Point95 Global
Pomeranz, Alex Aaron
[REDACTED]
Power Block Coin LLC

Prime Trust
Profluent Trading Inc
Profluent Trading UK Limited
[REDACTED]
Pundisto, Lalana
Pusnei, Alexandru
QCP Capital PTE Ltd
[REDACTED]
Radkl, LLC
[REDACTED]
Red River Digital Trading LLC
Reitz, Spencer Mcdowell
Reliz Ltd
RHMP Properties Inc
Ritter, David
Ritter, Linda J
Ritter, Paul
Robert, Joseph Murdoch
Robinson, Andrew Douglas
Roy Niederhoffer
Salera, Manuel
SandP Solutions Inc
Schroeder, Jesse
Scrypt Asset Management AG
SEBA Bank AG
Sese, LLC
Shar, Stephen Phillip
Siafu Capital
Sidibe, Aissata
Simplex
[REDACTED]
Slater, Glen Brian
Sleeping1 LLC
Smith, David Silva
Smith, Nelson Courtney
Sondhi, Tarun
Souders, Jack Trayes
Stapleton, Paul
Steinborn, Steven Harold
Stevens, Daron Robert
[REDACTED]
Stringer, Douglas Ross
Strobilus LLC
Sun, Siqi
Sutton, Sebastian
Swyftx Pty Ltd
Symbolic Capital Partners Ltd
Sypniewski, Christian
Tagomi Trading LLC
[REDACTED]

Tap Root, LP
TDX SG Pte Ltd
Tether International Limited
Thayer, Craig William
The CAEN Group LLC
The Kevin Batteh Trust
The MSL Family Trust
Thomas Difiore Childrens GST Investment Irrv TR
Three Arrows Capital Ltd
Tincher, Steven Jess
Tirupattur Narayanan, Swathi Lakshmi
Tobias, Scott Jeffrey
Tower BC Ltd
Tower Research Capital
[REDACTED]
Transfero Brasil Pagamentos SA
Trebtow, Jens
Tremann, Christopher Ernest
Trigon Trading Pty Ltd
TrueFi
Trustoken Inc
Tuganov, Ignat
[REDACTED]
Tyler, Craig Edward
Ubuntu Love Pty Ltd
Ultimate Coin
Valkenberg, Renaud
Vendrow, Vlad
Vexil Capital Ltd
[REDACTED]
Vivas, Rafael
Wagner, Thomas Nichols
Walcott, Robert
Walkey, Thomas
Wang, Yidi
Weave Markets LP
[REDACTED]
Wierman, Duncan Craig
[REDACTED]
Williams II, Robert
Williams, Charles W.
Williamson, Hiram
Wincent Investment Fund PCC Ltd
Wintermute - Maple
Wintermute Trading Ltd
Wiseman, Timothy
Wolf, Cody Lee
[REDACTED]
Woodward, Laurie
[REDACTED]

Wu, Xinhan
Wyre Payments Inc
Yao, Mark
██████████████████
Yeung, Tak H
███████████
Young, John Martin
Yu, Byung Deok
ZeroCap Limited
Zhang, Xi
Zhong, Jimmy
Ziglu Limited
Zipmex Asia Pte Ltd.
Zwick, Matthew James

## Debtor

Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp
Celsius Mining IL Ltd
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network IL Ltd. (Israel)
Celsius Network Limited (UK)
Celsius Network LLC
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
KN Media Manager, LLC

## Director/Officers

Ayalor, Amir
Barse, David
Bentov, Tal
Blonstein, Oren
Bodnar, Guillermo
Bolger, Rod
Carr, Alan Jeffrey
Cohen-Pavin, Roni
Denizkurdu, Aslihan
Deutsch, Ron
Dubel, John Stephen
Goldstein, Nuke
Kleiderman, Shiran
Leon, S. Daniel
Mashinsky, Alex
Nadkarni, Tushar
Nathan, Gilbert
Ramos, Trunshedda W.

Sunada-Wong, Rodney
Tosi, Laurence Anthony

## Taxing Authority/Governmental/Regulatory Agencies

Alabama Securities Commission
Kentucky Department of Financial Institutions
New Jersey Bureau of Securities
Texas State Securities Board
United States Department of Justice
United States Securities and Exchange Commission
Washington State Division of Securities

## Insurance

Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc.
ANV Insurance
Atlantic Insurance
Ayalon Insurance Company
Crum and Forster Specialty Insurance Company
Falvey Insurance Group
Hudson Insurance Group
Indian Harbor Insurance Company
Lloyds of London
London Insurance
Markel Insurance
Marsh
Migdal Insurance Company
Relm Insurance LTD
Republic Vanguard Insurance Company
Sentinel Insurance Company
Starstone Insurance
United States Fire Insurance Company
Zurich Insurance Group

## Known Affiliates - JV

Celsius (AUS) Pty Ltd. (Australia)
Celsius Network (Gibraltar) Limited
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network Inc.
Celsius Services CY Ltd (Cyprus)
GK8 Ltd (Israel)
GK8 UK Limited
GK8 USA LLC

## Landlord

Algo Adtech
Desks & More
Industrious
New Spanish Ridge

Regus
SJP Properties

## Legal Matters and Disputes
Bitboy Crypto
Bofur Capital
MS SD IRA LLC
Pharos Fund
Symbolic Capital Partners
Vexil Capital

## Significant Competitors
BlockFI
Voyager Digital Holdings, Inc.
Voyager Digital LLC

## Significant Equity Holder
Advanced Technology Fund XXI LLC
Altshuler ShahamTrusts Ltd
Artus Capital GmbH & Co. KGaA

BNK to the Future

BullPerks BVI Corp
Caisse de dépôt et placement du Québec

CDP Investissements Inc.

Craig Barrett Andersen Invest Luxembourg S.A. Spf

European Media Finance Ltd
Fabric Ventures Group Sarl

Gumi Cryptos Capital LLC
Heliad Equity PartnersGmbH & Co. KGaA

Intership Ltd

JR Investment Trust

Tether International Ltd

Tokentus Investment AG

WestCap Celsius Co-Invest 2021, LLC
WestCap Group
WestCap SOF Celsius 2021 Aggregator, LP
WestCap SOF II IEQ 2021 Co-Invest, LP

## Utilities
AT&T
Comcast
Cox Business
EE Limited
Giffgaff
Google Fiber
Hypercore Networks, Inc.
Lightpath Fiber
Lumen
Ring Central Inc.
Spectrum Enterprise
Verizon Wireless

## Vendor
192 Business Experian
A2E
AgileEngine
Akin Gump Strauss Hauer Feld LLP
AlixPartners LLP
Amsalem Tours & Travel Ltd
Andersen LLP
Apple Search Ads
Apple Store
Arocon Consulting LLC
Atlassian
Auth0 Inc.
Bitmain Technologies
Blue Edge Bulgaria EOOD
CDW
Chainalysis, Inc.
CoinRoutes Inc
Compliance Risk Concepts LLC
Core Scientific
Creditor Group Corp.
Cyesec Ltd.
David Rabbi Law Firm
Dell
DoiT International UK and I Ltd
Dow Jones & Company, Inc.
Egon Zehnder International Inc.
Evgeni Kif
EY

Facebook
GEA Limited
GEM
Gk8 Ltd
GoDaddy.com
Google Ads
Halborn Inc.
Hedgeguard
HMRC Shipley
K.F.6 Partners Ltd
KeyFi, Inc.
Kforce Inc.
Korn Ferry
Latham
Lunar Sqaures
LVC USA Inc.
Mambu Tech B.V.
Mazars LLP
MCM 965
Michael Page International Inc
Mixpanel Inc.
MVP Workshop
Necter
New Spanish Ridge, LLC
NICE Systems UK Limited
Nuri
NuSources
Nyman Libson Paul LLP
Ocean View Marketing Inc.
Onfido Ltd
Optimizely, Inc.
Payplus By Iris
Payplus Ltd
Phase II Block A South Waterfront Fee LLC
Prescient
Priority Power
Quantstamp, Inc.
Quoine PTE. LTD.
Real Vision Group
Resources Global Professionals
Slack Technologies, LLC
Sovos Compliance
Twitter
Virtual Business Source Ltd
WestCap Management LLC
Zendesk, Inc.

## **Schedule B**

**Potential Connections or Related Parties**

## Schedule B

### Potential Connections or Related Parties

**Current and Former Clients of A&M
and/or its Affiliates** [1]

192 Business Experian
Advanced Technology Fund XXI LLC
Alameda Research
Amtrust Underwriters, Inc. of behalf of
    Associated Industries Insurance
    Company, Inc.
AP Capital Absolute Return Fund
Apple Store
AT&T
Bitmain Technologies
Caisse de depot et placement du Quebec
Coinbase Credit
Comcast
Covaris AG
Cox Business
Crum & Forster Specialty Insurance
    Company
Crypto10 SP
Dexterity Capital LP
EY
Facebook
Flow Traders BV
Fractal
Genesis Global Capital LLC
Google Fiber
Indian Harbor Insurance Company
Invictus Capital Financial Technologies SPC
Jump Trading
Korn Ferry
Lloyds of London
Markel Insurance
Marsh
New World Holdings
Onfido

Optimizely, Inc.
Republic Vanguard Insurance Company
Sentinel Insurance Company
Simplex
Slack Technologies, LLC
Spectrum Enterprise
Tosi, Laurence Anthony
Tower Research Capital
United States Fire Insurance Company
Verizon Wireless
Voyager Digital Holdings, Inc.
Wyre Payments Inc.
Zurich Insurance Group

**Significant Equity Holders of Current
and Former A&M Clients** [2]

192 Business Experian
Advanced Technology Fund XXI LLC
AlixPartners LLP
Amtrust Underwriters, Inc. of behalf of
    Associated Industries Insurance
    Company, Inc.
Apple Store
AT&T
Caisse de depot et placement du Quebec
Comcast
Cox Business
Crum & Forster Specialty Insurance
    Company
Dell
Dexterity Capital LP
Dow Jones & Company, Inc.
Galaxy
Genesis Global Capital LLC
Google Fiber

---

[1] A&M and/ or an affiliate is currently providing or has previously provided certain consulting or interim management services to these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, to their portfolio or asset managers or their affiliates) in wholly unrelated matters.

[2] These parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds or trusts managed by such managers) are significant equity holders of clients or former clients of A&M or its affiliates in wholly unrelated matters.

Lewis, Howard
Marsh
Pharos Fund BTC SP
Spectrum Enterprise
Tower Research Capital
Twitter
Verizon Wireless
WestCap Celsius Co-Invest 2021, LLC
Zurich Insurance Group

██████████████████████
Nathan, Gilbert

## Government and Regulatory[6]
United States Department of Justice
United States Securities and Exchange
  Commission

## Professionals & Advisors[3]
AlixPartners LLP
Andersen LLP
Centerview Partners
Egon Zehnder International Inc.
EY
Kirkland & Ellis LLP
Korn Ferry
Latham & Watkins LLP
Markel Insurance
Mazars LLP
Marsh
Stretto

## Significant Joint Venture Partners[4]
AT&T
Caisse de depot et placement du Quebec
Dow Jones & Company, Inc.
EY

## Board Members[5]
Barse, David
Carr, Alan Jeffrey
Dubel, John Stephen

## A&M Vendors[7]
192 Business Experian
AlixPartners LLP
Andersen LLP
AT&T
CDW
Comcast
Dell
Dow Jones & Company, Inc.
Kirkland & Ellis LLP
Latham & Watkins LLP
Lloyds of London
Marsh
Mazars LLP
Michael Page International Inc.
New World Holdings
Regus
Resources Global Professionals
Verizon Wireless
Zurich Insurance Group

## Individual Parties w/Indeterminate A&M Connections[8]
Donofrio, John

---

[3] These professionals have represented clients in matters where A&M was also an advisor (or provided interim management services) to the same client. In certain cases, these professionals may have engaged A&M on behalf of such client.

[4] These parties or their affiliates are significant joint venture partners of other clients or former clients of A&M or its affiliates in wholly unrelated matters.

[5] These parties or their affiliates are board members of other clients or former clients of A&M or their affiliates in wholly unrelated matters.

[6] A&M and/or an affiliate is currently providing or has provided certain consulting or interim management services to these government entities or regulatory agencies in wholly unrelated matters.

[7] These parties or their affiliates provide or have provided products, goods and/or services (including but not limited to legal representation) to A&M and/or its affiliates

[8] A&M used reasonable efforts to determine whether the large number of individual Potential Parties in

Kelly, James Patrick
King, Christopher
McCarty, John Edward
███████████
McNeil, James W.
Ritter, David
Robinson, Andrew Douglas
Smith, David Silva
███████████
Williams, Charles W.
███████████
Young, John Martin
Zhang, Xi

---

Interest in these chapter 11 cases are related to individual parties who appeared in A&M's Client Database; however, A&M may have been unable to identify with specificity certain connections based on the generality of such individuals' names and/or the information available to A&M at this time. To the extent A&M's connections to such individual parties were unable to be confirmed, A&M has separately identified these parties on this Schedule as "Indeterminate".