**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  david.turetsky@whitecase.com
           sam.hershey@whitecase.com
           kwofford@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
           gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1]  The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

AMERICAS 116644410 v6

# THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION AND RESERVATION OF RIGHTS TO DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) PERMITTING THE SALE OF THE DEBTORS' MINED BITCOIN IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above captioned debtors and debtors-in-possession (collectively the "**Debtors**") state as follows in support of this objection to and reservation of rights with respect to the *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 187] (the "**Mined Bitcoin Sale Motion**"):

## PRELIMINARY STATEMENT

1. The Mined Bitcoin Sale Motion is framed as a continuation of the Debtors' prepetition business practices where the Debtors are acting "consistent with past practice" and "in the ordinary course of business." Mined Bitcoin Sale Motion ¶ 1. However, in these chapter 11 cases, the Committee faces the exception to the rule—rather than giving comfort, notions of the Debtors acting "consistent with past practice" and "in the ordinary course of business" raise legitimate concerns. Those concerns are rooted in the significant questions regarding how the Debtors operated their businesses prepetition. In order to understand what the proposed order seeks to authorize, the Committee, other parties in interest, and this Court, must have an adequate record of what those "monetization" past practices were, and were not.

2. The Motion implies that "monetization" merely includes the practice of selling bitcoin mined by the Debtors in the open market, to cover the costs of mining operations. But the Debtors actually define "monetization" much more broadly than that in the proposed order, without any information on what other "past practices" this language permits.

3. This information is necessary for parties in interest, or any potential counterparty, to determine which transactions are within the scope of the proposed order. The Committee is

2

commencing a broad-ranging investigation (which the Committee expects will require the use of discovery under Bankruptcy Rule 2004) to investigate those matters with the assistance of its advisors, but that the outcome of that inquiry cannot be known today. Thus, since the Debtors seek permission to "monetize" mined cryptocurrencies immediately, the Committee needs insight into the Debtors' actions. Further, the Court should condition its approval of the Mined Bitcoin Sale Motion on the Debtors providing account holders and unsecured creditors with certain protections (as described below).

## OBJECTION

### I.  The Second Circuit's "Horizontal" and "Vertical" Tests Are More Protective of the Creditor Body Than the Debtors Suggest

4.  The Mined Bitcoin Sale Motion suggests that, to satisfy this Circuit's horizontal test for ordinary course transactions, the Debtors merely must show that a transaction is commonplace for actors within a given industry. Mined Bitcoin Sale Motion ¶ 17. The horizontal test articulated by the Second Circuit requires more than simply showing that other companies commonly engage in the type of transaction in question. *See In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997). To the contrary, the Second Circuit in *Lavigne* looked to whether a **reasonable industry actor** would engage in the proposed transaction under the circumstances. *See id.* at 385 ("A reasonable physician . . . who has lost his ability to generate income would not have cancelled his insurance policy without opting for tail coverage."); *see also In re Enron Corp., No. 01-16034 (AJG)*, 2003 Bankr. LEXIS 2111, at *62 (Bankr. S.D.N.Y. 2003) ("The focus of this test is extrinsic to the debtor's operations although ultimately the focus shifts back to the debtor's business for comparison."). *Lavigne* held that the circumstances surrounding a transaction for a particular debtor may make them "extraordinary" for section 363 purposes. So while sales of mined bitcoin for cash may be reasonable by industry standards, and reasonable for this debtor, other forms of

3

"monetization" may not be.

5. The vertical test, as discussed in *Lavigne*, takes into account the expectations of a hypothetical creditor regarding the acceptable type and extent of economic risk. Thus, either the nature of a transaction *or* its size, may render a transaction extraordinary. *Id.* at 385 ("Some transactions, either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary.") (citations omitted). Here the Debtors have made no showing regarding the size of the economic risks creditors can be expected to have undertaken, even if there was some expectation that bitcoin would be sold.

6. Direct creditors of the mining entities, indirect creditors of those entities, or creditors who hold claims against both mining and non-mining entities, may have expected bitcoin sales, but may not have contemplated transfers to other entities or other forms of "monetization". Or, those various creditor groups may have expected the mining entities to sell some bitcoin in the ordinary course, but not to sell all of their bitcoin. Similarly, creditors might expect miners to sell some of their bitcoin mining machines in the ordinary course, but to sell all of their machines would be extraordinary. Creditors' expectations of the scope of transactions along this spectrum are not described, with any depth, in Debtor's motion.

II. **The Relief Sought in the Proposed Order Must Be Substantially Curtailed, and the Debtors Must Provide Substantial Additional Information, to Satisfy the Second Circuit "Ordinary Course" Test**

7. If the Court is inclined to grant the Mined Bitcoin Sale Motion, the Court should condition its approval to protect the interests of account holders and unsecured creditors. Specifically, the Committee sees the relevant facts and required changes as follows:

8. First, the Debtors have informed the Committee's advisors that the Debtors believe that *none* of the mined cryptocurrencies that the Debtors seek to monetize include digital assets of

any account holders. The Debtors have also provided certain information regarding their cryptocurrency and other digital assets that they currently hold to the Committee's advisors on a professional eyes only basis. However, the Debtors have not yet consented to disclosure of that information to the Committee members, nor have the Debtors otherwise provided a full accounting of the estates' cryptocurrency and other digital assets. As such, the Court should defer approval of the Mined Bitcoin Sale Motion or any other request to monetize any mined cryptocurrency, until the Debtors provide the Committee with a full accounting of all cryptocurrency in each Debtor's possession, including where it is held and the source of the cryptocurrency (e.g., mining operations versus account holders). Without this information, the Committee fears that account holder cryptocurrency could be improperly monetized, mistakenly or otherwise.

9. *Second*, the Debtors' use of the word "monetize" in the Mined Bitcoin Sale Motion is potentially misleading. Paragraph 2 of the proposed order attached to the Mined Bitcoin Sale Motion provides that "monetization" may include "the sale, *pledging, hypothecation, assignment, investment*, use, transfer, or other disposal of such assets." Proposed Order ¶ 2 (emphasis added). The Committee does not generally object to productive use of funds *for the benefit of the estate's* account holders and unsecured creditors, including the payment of allowed administrative claims, but given the circumstances surrounding these chapter 11 cases, the Committee asks for boundaries and transparency around the Debtors' proposed "monetization."

10. The Mined Bitcoin Sale Motion only seeks relief under section 363 of the Bankruptcy Code, and not section 364 of the Bankruptcy Code, which appears required if the Debtors are seeking authorization for "pledging" or "hypothecating" transactions secured by bitcoin (since these transactions would be financing governed by section 364). Similarly, the Debtors' request for authorization to "invest[]" bitcoin on its face does not accomplish the stated

5

purpose of meeting operating expenses of mining, and does not appear to be in the ordinary course of a bitcoin miner. The "assignment" of bitcoin might be for cash, or it might be for other cryptocurrencies which cannot be used by the Debtors to operate. The potential "transfer" of bitcoin or bitcoin proceeds in addition to (or instead of) a sale, whether to other affiliates or third parties, is nebulous. Accordingly, the Committee respectfully submits that the Court should not permit the Debtors to pledge, hypothecate, or assign any mined bitcoin or other digital assets *as security* without complying with the Bankruptcy Code's requirements for obtaining post-petition financing and further, the Court should not permit the absolute assignment or transfer of bitcoin other than for cash. The Court should only approve the Mined Bitcoin Sale Motion to the extent it seeks authorization for the sale of bitcoin for cash *for the benefit of the Debtors' estates*.

11.   Third, if the Debtors' mined cryptocurrency is monetized (as properly defined), the Debtors should be required to provide a full weekly accounting of such sales to the Committee on a Debtor by Debtor basis, including (i) the means by which it was sold, (ii) the price and timing of any such sales, and (iii) where the sale proceeds are being held.[2]

12.   Fourth, since these estates are merely jointly administered rather than substantively consolidated, the account holders and unsecured creditors of each Debtor estate are legally entitled to assurance that the particular value upon which they rely is not improperly diverted. Thus language should be included in the proposed order establishing that the proceeds of each such sale is property of the relevant Debtor's estate under section 541 of the Bankruptcy Code and such should remain in the estate for the benefit of administrative claims, account holders, and unsecured

---

[2] To the extent the Court is inclined to grant the relief sought without a full factual record on both the nature and extent of each approved "monetization" practice, the authority granted by the order should "sunset" on its own terms by December 1, 2022, or the order should be granted on an "interim" basis pending a more comprehensive record justifying a "final" order.

AMERICAS 116644410 v6

creditors. Further, the proposed order should make clear that the final form of any Cash Management Order, as revised pursuant to the Committee's objections thereto,[3] will govern the use of proceeds of monetized mined cryptocurrency, by both respecting estate separateness and by mandating appropriate accounting and inter-estate claim priorities. Accordingly, the Committee hereby incorporates by reference its Objection to the Cash Management Order.

## RESERVATION OF RIGHTS

13. The Committee reserves all of its rights to supplement or amend this limited objection and to raise additional issues with the Mined Bitcoin Sale Motion at the hearing, and to present evidence at the hearing.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court condition its approval of the Mined Bitcoin Sale Motion as set forth herein, and grant such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

---

[3] This applies to any order entered with regard to cash management, including as to any further interim or final cash management order.

| | |
|---|---|
| Dated: August 11, 2022<br>New York, New York | Respectfully submitted,<br><br>/s/ *David Turetsky*<br>**WHITE & CASE LLP**<br>David M. Turetsky<br>Samuel P. Hershey<br>Keith H. Wofford<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>Email: david.turetsky@whitecase.com<br>      sam.hershey@whitecase.com<br>      kwofford@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile: (312) 881-5450<br>Email: mandolina@whitecase.com<br>      gregory.pesce@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Aaron E. Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Facsimile: (213) 452-2329<br>Email: aaron.colodny@whitecase.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |

AMERICAS 116644410 v6