

## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of August 5, 2022 between Kroll Restructuring Administration LLC ("**Kroll**") and the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases (the "**Cases**") of Celsius Network LLC and its affiliated debtors (collectively, the "**Debtors**") pending before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") [Case No. 22-10964].

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a) Kroll agrees to provide the Committee with technology and consulting services regarding the Committee's involvement in the Cases, including and not limited to noticing service, hosting a website, running a telephone hotline with no less than two dedicated operators, responding to inquiries from creditors through calls, chats and email correspondence, and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").
    (b) The Committee acknowledges and agrees that Kroll will often take direction from the Committee's representatives, employees, agents and/or professionals (collectively, the "**Committee Parties**") with respect to providing Services hereunder. The parties agree that Kroll may rely upon, and the Committee agrees to be bound by, any requests, advice or information provided by the Committee Parties to the same extent as if such requests, advice or information were provided by the Committee.
    (c) The Committee agrees and understands that Kroll shall not provide the Committee or any other party with legal advice.

2. **Rates, Expenses and Payment**

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Committee, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**"); provided, however, that Kroll will extend to the Committee a discount of 20% off the hourly rates. The Committee agrees to seek reimbursement from the Debtors for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.
    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Committee may request separate Services or all of the Services.
    (c) Kroll will bill the Debtors and the Committee no less frequently than monthly. The Debtors and their estates will be solely responsible for paying Kroll's fees and expenses under this Agreement. The Committee shall use reasonable efforts to seek the payment of Kroll's fees and expenses from the Debtors. In no event shall the Committee, its Members, or its advisors be obligated or responsible for the payment of Kroll's fees and expenses under this Agreement. All invoices shall be due and payable upon receipt. Where an expense to be incurred is expected to exceed $5,000 (e.g., publication notice), Kroll may require advance or direct payment from the Debtors before the performance of Services hereunder. If any



amount is unpaid as of 30 days after delivery of an invoice, a late charge shall be due equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the objecting party shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Debtors shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Committee or the Committee Parties.

(f) The Debtors shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Committee and the Debtors of such increases.

3. **Confidentiality**

(a) The Committee and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is legally required to disclose any confidential information (whether pursuant to an order from a governmental authority, regulatory request, subpoena, or similar process), such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

4. **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Kroll for itself or for use by the Committee hereunder.  Fees and expenses paid by the Debtors do not vest in the Debtors or the Committee any rights in such Property.  Such Property is only being made available for the Committee's use during and in connection with the Services provided by Kroll hereunder.

5. **Term and Termination**

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "**Cause**" means (i) gross negligence or willful misconduct of Kroll that causes material



    harm to the Committee's efforts in the Cases, (ii) the failure of the Debtors to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services where Kroll reasonably believes it will not be paid.

(b) If the Committee is terminated or disbanded, by Bankruptcy Court order, this Agreement will be considered terminated within 30 days of that date.

(c) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Committee promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(d) If this Agreement is terminated, the Debtors and their estates shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(e) If this Agreement is terminated, Kroll shall coordinate with the Committee and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer. The Debtors and their estates shall pay for such Services pursuant to the Rate Structure.

6. **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

7. **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Committee for any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses (collectively, "**Losses**"), unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Committee for the portion of the particular work that gave rise to the alleged Loss. In no event shall Kroll's liability to the Committee for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder. In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

8. **Committee Data**

(a) The Committee is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Committee Party submits for processing to Kroll and for the output of such information.

(b) The Committee agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Committee has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Kroll by the Committee may be retained by Kroll until the Services provided hereunder are paid in full. The Debtors and their estates shall remain liable for all fees and expenses incurred by Kroll under this



      Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Committee; provided that if the Committee has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Debtors for the expense of such disposition, after giving the Debtors and the Committee 30 days' notice. The Committee agrees to initiate and maintain backup files that would allow the Committee to regenerate or duplicate all programs, data or information provided by the Committee to Kroll.

    (d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Committee data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

### 9. No Agency Relationship

The Committee and Kroll are and shall be independent contractors of each other, and no agency, partnership, joint venture or employment relationship shall arise as a result of this Agreement.

### 10. Force Majeure

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, pandemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

### 11. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 12. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

### 13. Integration; Severability; Modifications; Assignment

    (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.
(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.
(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Committee and an officer of Kroll.
(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Committee's consent.

## 14. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 15. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Kroll:  Kroll Restructuring Administration LLC
55 E 52nd Street, 17th Floor
New York, NY 10055
Attn:   Legal Department
Tel:    (212) 257-5450
Email:  Legal@kbs.kroll.com

If to the Committee:  White & Case LLP
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Attn:   Gregory F. Pesce
Tel:    (312) 881-5360
Email:  gregory.pesce@whitecase.com

If to the Debtors:  Celsius Network LLC
121 River Street
PH05
Hoboken, NY 07030

With a copy to:  KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Attn:   Joshua A. Sussberg, P.C.
Tel:    (212) 446-4800



Email:   joshua.sussberg@kirkland.com

KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attn:    Patrick J. Nash, Jr., P.C.
         Ross M. Kwasteniet, P.C
Tel:     (312) 862-2000
Email:    patrick.nash@kirkland.com
          ross.kwasteniet@kirkland.com

6



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

/s/ *Shira Weiner*
By:  Shira Weiner
Title: General Counsel


**The Committee**

/s/ *Scott Duffy*
By: Scott Duffy
Title: Authorized Signatory, ICB Solutions Inc.
         Co-Chair, Official Committee of Unsecured
         Creditors