**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SECOND INTERIM ORDER**
**(I) AUTHORIZING THE DEBTORS**
**TO (A) CONTINUE TO OPERATE THEIR**
**CASH MANAGEMENT SYSTEM, (B) HONOR**
**CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,**
**(C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE**
**TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING**
**SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION**
**INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a second interim order (this "Second Interim Order"), (a) authorizing, but not directing, the Debtors to (i) continue to operate their cash and cryptocurrency management system (the "Cash Management System"), (ii) honor certain prepetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions consistent with historical practice, (b) granting superpriority administrative expense status to postpetition intercompany balances, and (c) granting related relief, all as more fully set forth in the Motion;

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to  28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order* of Reference from the United States District Court for the Southern District of New York, entered February 1, 2012; and that this Court having the power to enter an interim order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore, it is **HEREBY ORDERED THAT**:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on September 1, 2022, at 10:00 a.m., prevailing Eastern Time.[3]  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time on August 29, 2022, and shall be served on:  (a) the Debtors, Celsius Network LLC, 121 River Street, PH05,

---

[3]    The Court shall provide a Zoom link to those persons who have made an eCourtAppearance by 4 PM the business day before the hearing.  Any party appearing at, listening to, or observing the Hearing, must make an electronic appearance, an eCourtAppearance, by using the eCourtAppearance portal located on the Court's website, https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl, or by clicking the "eCourtAppearances" tab on Chief Judge Glenn's page of the Court's website at, http://www.nysb.uscourts.gov/content/chief-judge-martin-glenn. After the deadline to make appearances passes, the Court will send Outlook invitations to those persons who made eCourtAppearances, using the email addresses submitted with those appearances.

Hoboken, New Jersey 07030, Attn: Ron Deutsch; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., and 300 North LaSalle, Chicago, Illinois, 60654, Attn: Patrick J. Nash, Jr., P.C. and Ross M. Kwasteniet, P.C.; (c) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Shara Cornell, Mark Bruh, and Brian S. Masumoto; and (d) proposed counsel to the official committee of unsecured creditors, White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce, 1221 6th Ave, New York, New York 10020, Attn: David Turetsky, and 555 South Flower Street, Suite 2700, Los Angeles, California 90071, Attn: Aaron E. Colodny.

3.    Subject to paragraph 18 and the provisions in this paragraph 3, the Debtors are authorized, on an interim basis and in their discretion, to: (a) continue operating the Cash Management System, substantially as illustrated on **Exhibit 1** attached hereto; (b) honor their prepetition obligations related thereto; and (c) continue to perform Intercompany Transactions consistent with historical practice; *provided* that ordinary course Intercompany Transactions in cash between any of the Debtors and Celsius Mining LLC (the "Mining Debtor") or for the benefit of the Mining Debtor shall not be permitted, unless as otherwise provided in an order from this Court, without providing at least two (2) business days' notice (email shall suffice) to the U.S. Trustee and the advisors to the Official Committee of Unsecured Creditors (the "Committee"),[4] and such notice shall include (i) the amount of the transfer, (ii) the entity making the transfer and receiving the transfer, and (iii) the purpose of such transfer; *provided*, *further*, that all

---

[4]    Counsel for the Committee sent a letter to counsel for the Debtors requesting certain diligence items related to, among other things, the Debtors' cryptocurrency assets and cash management system. Nothing in this Second Interim Order shall be construed to prejudice the Committee's rights or represent the Committee's consent with respect to how the Debtors store or manage their cryptocurrency.

Intercompany Transactions between any Debtor and any non-Debtor affiliate shall be only in cash, and not in cryptocurrency, crypto tokens, or other cryptocurrency assets (together, "Cryptocurrency"), except as provided by paragraph 6 herein, and all Intercompany Transactions in Cryptocurrency between Debtors are subject to the limitations set forth in paragraph 5; *provided, further*, that all Intercompany Transactions, whether between Debtors or between any Debtor and any non-Debtor affiliate shall (A) constitute an allowed claim against the applicable Debtor or a loan to the applicable non-Debtor affiliate, and (B) with respect to Intercompany Transactions in cash, not exceed the amounts and the stated purpose set forth in the budget in **Exhibit 3** (the "Budget") unless the Debtors obtain consent from the Committee, with notice to the U.S. Trustee, or pursuant to a further order from this Court after notice and a hearing.  For the avoidance of doubt, Intercompany Transactions between any Debtor and any non-Debtor affiliate or for the benefit of any non-Debtor affiliate shall constitute an allowed claim against the applicable Debtor or a loan to the applicable non-Debtor affiliate, and shall not exceed $245,000 (U.S. dollars) in the aggregate during the period between entry of this Second Interim Order and September 1, 2022.

4.    The Debtors are authorized, on an interim basis and in their reasonable discretion, in consultation with the advisors to the Committee (email shall suffice), with notice to the U.S. Trustee, to:  (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on **Exhibit 2** attached hereto; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (d) pay all prepetition Bank Fees; and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such

fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5.      The Debtors, on an interim basis, are authorized, in consultation with the advisors to the Committee (email shall suffice), with notice to the U.S. Trustee, to continue to maintain and manage their Cryptocurrency in the ordinary course of business solely to ensure that Cryptocurrency is safely stored on custody platforms consistent with historical practices and subject to the terms of this Second Interim Order; *provided* that the Debtors shall provide the U.S. Trustee and the advisors to the Committee, within five Business Days hereof, a full accounting, as of the Petition Date and as of the date of such report, of the Cryptocurrency and other digital assets in each Debtor's possession, including where such is held and the source of such Cryptocurrency (*e.g.*, mining operations versus account holders); *provided*, *further*, that the Debtors shall not be permitted to convert Cryptocurrency from one type of Cryptocurrency to another type of Cryptocurrency unless the Debtors obtain consent from the Committee, with notice to the U.S. Trustee, or pursuant to a further order from this Court after notice and a hearing.

6.      Notwithstanding anything to the contrary in this Second Interim Order, the Debtors are not authorized to (a) transfer any Cryptocurrency to any non-Debtor affiliates or (b) liquidate or convert any Cryptocurrency into cash, absent further order of the Court, except as expressly provided with respect to Mined Bitcoin under the *Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* (as defined therein).

7.      Notwithstanding anything to the contrary in this Second Interim Order, nothing herein shall be interpreted as authorizing the Debtors to restart their platform, including the Swap Service, Earn program, retail lending, or institutional lending (as defined, as applicable, in the Mashinsky Declaration), or otherwise allow the buying, selling, trading, or withdrawal of

Cryptocurrency on the Debtors' platform absent further order of the Court; *provided* that, following entry of this Second Interim Order, to the extent any account holder transfers Cryptocurrency into the Custody Service (as defined in the Mashinsky Declaration) account on a postpetition basis in the ordinary course of business and consistent with how Cryptocurrency was transferred to the Custody Service prior to the commencement of these cases, then, the Debtors shall maintain such Cryptocurrency within such account holder's Custody Service account and the Debtors shall not (absent further order of the Court) transfer, sell, trade, or withdraw such Cryptocurrency from such account.

8.    The Debtors are authorized, but not directed, in consultation with the advisors to the Committee (email shall suffice), with notice to the U.S. Trustee, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided* that once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor-In-Possession"; *provided*, *further*, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

9.    The Cash Management Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

10.     All Cash Management Banks provided with notice of this Second Interim Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts, or otherwise issued before the Petition Date, absent further direction from the Debtors.

11.     The Debtors shall maintain records in the ordinary course reflecting transfers, including of cash and Cryptocurrency, and including Intercompany Transactions, so as to permit all such transactions to be ascertainable.

12.     In the course of providing cash management services to the Debtors, the Cash Management Banks at which the Bank Accounts are maintained are authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

13.     Each Cash Management Bank is authorized to debit the Bank Accounts in the ordinary course of business without the need for further order of the Court for:  (a) all checks drawn on the Bank Accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Bank Accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any

7

fees and costs in connection therewith, to the same extent the Debtors were responsible for such
items prior to the Petition Date; (c) all undisputed prepetition amounts outstanding as of the date
hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the
Cash Management System; and (d) all reversals, returns, refunds, and chargebacks of checks,
deposited items, and other debits credited to Debtor's account after the Petition Date, regardless
of the reason such item is returned or reversed (including, without limitation, for insufficient funds
or a consumer's statutory right to reverse a charge).

14.     Each of the Cash Management Banks may rely on the representations of the Debtors
with respect to whether any check or other payment order drawn or issued by the Debtors prior to
the Petition Date should be honored pursuant to this or any other order of the Court, and such Cash
Management Bank shall not have any liability to any party for relying on such representations by
the Debtors as provided for herein.

15.     Those agreements existing between the Debtors and the Cash Management Banks
shall continue to govern the postpetition cash management relationship between the Debtors and
the Cash Management Banks, subject to applicable bankruptcy or other law; all of the provisions
of such agreements, including the termination, fee provisions, rights, benefits, offset rights and
remedies afforded under such agreements shall remain in full force and effect absent further order
of the Court or, with respect to any such agreement with any Cash Management Bank (including,
for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank
Accounts to remedy any overdraft of another Bank Account to the extent permitted under the
applicable deposit agreement), unless the Debtors with the consent of the Committee, which
consent may not be unreasonably withheld, and such Cash Management Bank agree otherwise;

8

and any other legal rights and remedies afforded to the Cash Management Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

16.    The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived on an interim basis pending a final hearing on the Motion.

17.    Subject to paragraphs 3 and 18, the Debtors are authorized, but not directed, to continue Intercompany Transactions in cash between and among Debtor entities arising from or related to the operation of their business in the ordinary course; *provided* that, with respect to any and all Intercompany Transactions authorized in this Second Interim Order, each Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices and (b) beginning on the Petition Date, maintain (i) current records of intercompany balances, (ii) a Debtor by Debtor summary on a monthly basis of any postpetition Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month), and (iii) reasonable access to such records for the U.S. Trustee and the advisors to the Committee.  A monthly summary of such Intercompany Transactions between the Debtors shall be provided to (a) the U.S. Trustee and (b) the advisors to the Committee on the 21st day of the following month.

18.    All postpetition transfers and payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under sections 503(b) and 364(c)(1) of the Bankruptcy Code.

19.    Subject to this Second Interim Order, each Debtor may use any cash on hand or postpetition cash proceeds of property of that Debtor's estate (as the term "property of the estate"

is defined in section 541 of the Bankruptcy Code): (x) prior to confirmation and substantial consummation of a chapter 11 plan with respect to such Debtor, solely to pay either (i) postpetition administrative claims asserted against such Debtor in the ordinary course of business, as contemplated by the Budget, *provided* that the Debtors shall prepare a monthly reconciliation of the Budget and the actual financial performance and expenditures of the Debtors during the Budget period, including detail regarding any areas where actual expenditures exceeded the projection in the Budget (the "Monthly Reconciliation Report"), and the Debtors shall provide the Monthly Reconciliation Report (email shall suffice) to (a) the U.S. Trustee and (b) the advisors to the Committee on the 21st day of the following month or (ii) prepetition claims asserted against such Debtor if the payment of such prepetition claim is authorized by order of the Court after notice and a hearing; and, (y) upon confirmation and substantial consummation of a chapter 11 plan with respect to such Debtor, in accordance with the terms of such chapter 11 plan.  Nothing in this Second Interim Order shall affect or limit any rights of the Committee, including to seek relief before the Court on an expedited basis, to the extent that the Monthly Reconciliation Report reflects that the actual financial performance and expenditures of the Debtors during the Budget period are inconsistent with the Budget.  Nothing in this Second Interim Order shall constitute a determination of whether property is property of a Debtor's estate and all parties reserve their rights with respect to whether any assets held by the Debtors are property of their estates.

20.    With respect to the Intercompany Transactions authorized hereunder, whether in cash or Cryptocurrency, all parties reserve all rights and arguments with respect to the impact that any such Intercompany Transactions should have on future recoveries or distributions in these chapter 11 cases.

21.     Notwithstanding the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees (to be paid in U.S. dollars) under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements. For the avoidance of doubt, all disbursements pursuant to the foregoing shall be made in U.S. dollars.

22.     Those certain existing deposit and service agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination, chargeback, and fee provisions, shall remain in full force and effect.

23.     The Debtors and the Cash Management Banks may, without further order of the Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided* that in the event the Debtors open a new bank account they shall open one at an authorized depository; *provided, further*, that the Debtors shall give five (5) business days' advance notice (email shall suffice) of (a) the opening of any new bank accounts or closing of any Bank Account and (b) any material changes to the Cash Management System and procedures to the U.S. Trustee, the advisors to the Committee, and counsel to any other statutory committee appointed in these chapter 11 cases.

24.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Bank Fees.

25.     Notwithstanding any language to the contrary in the Motion, the Interim Order, or this Second Interim Order, no provision of the Motion or Second Interim Order shall constitute a finding as to whether the Cash Management System complies with federal or state securities laws, and the right of the United States Securities and Exchange Commission and the Committee to challenge such transactions on any basis are expressly reserved.

26.     Notwithstanding anything to the contrary in the Motion, this Second Interim Order, or any findings announced at the Hearing, nothing in the Motion, this Second Interim Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

27.     Notwithstanding the relief granted in this Second Interim Order and any actions taken pursuant to such relief, nothing in this Second Interim Order shall be deemed:  (a) an admission by the Debtors or the Committee as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' or the Committee's respective rights to dispute any particular claim on any grounds; (c) a promise or requirement by the Debtors or any third party (including any member of the Committee) to pay any particular claim; (d) an implication or admission by the Debtors or the Committee that any particular claim is of a type specified or defined in this Second Interim Order or the Motion; (e) a request or authorization by any Debtor to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or the Committee's respective rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or the Committee that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and the

Committee each expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Second Interim Order is not intended and should not be construed as an admission by the Debtors or the Committee as to the validity of any particular claim or a waiver of the Debtors' and the Committee's respective rights to subsequently dispute such claim.

28.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Second Interim Order.

29.     Nothing in this Second Interim Order shall modify or impair the ability of any party in interest to contest how the Debtors account for any Intercompany Transaction or Intercompany Balance, including, without limitation, the validity or amount set forth in such accounting. The rights of all parties in interest with the respect thereto are fully preserved.

30.     To the extent any of the Debtors' Bank Accounts, Brokerage Accounts, and investment accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is 55 days from the Petition Date, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The Debtors may obtain a further extension of the 55-day period referenced above by

13

written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

33.    As soon as practicable after entry of this Second Interim Order, the Debtors shall serve a copy of this Second Interim Order on the Cash Management Banks.

32.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

33.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Second Interim Order are immediately effective and enforceable upon its entry.

34.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Second Interim Order.

35.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Second Interim Order.


**IT IS SO ORDERED.**

Dated:  August 17, 2022
          New York, New York


_____/s/ Martin Glenn_____
MARTIN GLENN
Chief United States Bankruptcy Judge

14

## <u>Exhibit 1</u>

**Cash Management System Schematic**

# Cash Schematic (excludes brokerage accounts)



* Account operates with sub-account that has access to a block-chain based digital payments platform. Platform allows company and customers to transact in off-banking hours by sending/receiving tokenized USD. Treasury funds the sub-account ahead of disbursements and manually sweeps funds into fiat parent account after receipts.

## **Exhibit 2**

**Bank Accounts**

| No. | Entity | Bank | Location | Description | Account No. |
|---|---|---|---|---|---|
| 1. | Celsius Network Limited | Signature Bank | New York | OTC | xxx0344 |
| 2. | Celsius Network Limited | Signature Bank | New York | Operating | xxx0999 |
| 3. | Celsius Network Limited | Signature Bank | New York | Treasury | xxx2589 |
| 4. | Celsius Mining LLC | Signature Bank | New York | Operating | xxx4445 |
| 5. | Celsius Networks Lending LLC | Signature Bank | New York | Lending | xxx5677 |
| 6. | Celsius Lending LLC | Signature Bank | New York | Lending | xxx6687 |
| 7. | Celsius Network LLC | Signature Bank | New York | Operating | xxx8569 |
| 8. | Celsius Network Limited | Signature Bank | New York | Operating | xxx9778 |
| 9. | Celsius Network LLC | Signature Bank | New York | Collateral | xxx2073 |
| 10. | Celsius Network Limited | Signature Bank | New York | Collateral | xxx9786 |
| 11. | Celsius Network Limited | Oppenheimer & Co. Inc. | New York | Brokerage | xxx9697 |
| 12. | Celsius Network Limited | ED&F Man Capital Markets, Inc. | Illinois | Brokerage | xxx1000 |
| 13. | Celsius Network Limited | Signature Securities Group Corporation | New York | Brokerage | xxx0783 |
| 14. | Celsius Network Inc. | Signature Bank | New York | Operating | xxx2597 |
| 15. | Celsius Network Limited[1] | Signature Bank | New York | Collateral | xxx6259 |

---

[1] This account shall be opened following the entry of the *Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief.*

## Exhibit 3

**Budget for Intercompany Transactions**

**Celsius Network**

**Monthly Cash Flow Forecast, Consolidated Debtors**
*(USD, 000s)*

| | AUG 2022 | SEP 2022 | OCT 2022 | TOTAL |
|---|---|---|---|---|
| **RECEIPTS** | | | | |
| Total Receipts[1] | $ 20,524 | $ 14,556 | $ 19,280 | $ 54,361 |
| **OPERATING DISBURSEMENTS** | | | | |
| Payroll | (5,259) | (5,294) | (3,399) | (13,952) |
| Hosting[2] | (18,121) | (19,825) | (19,325) | (57,271) |
| Other Operating Expenses | (5,589) | (4,943) | (3,619) | (14,151) |
| **Total Operating Disbursements** | **(28,970)** | **(30,062)** | **(26,343)** | **(85,374)** |
| **Operating Cash Flow** | **(8,446)** | **(15,505)** | **(7,062)** | **(31,013)** |
| Capital Expenditures[3] | (20,798) | (31,081) | (20,833) | (72,712) |
| Restructuring Activities | (7,654) | (8,752) | (17,080) | (33,486) |
| **Net Cash Flow** | **(36,897)** | **(55,338)** | **(44,976)** | **(137,211)** |
| **LIQUIDITY SCHEDULE** | | | | |
| Beginning Cash Balance | 129,830 | 92,933 | 37,595 | 129,830 |
| Net Cash Flow | (36,897) | (55,338) | (44,976) | (137,211) |
| **Ending Cash Balance** | **92,933** | **37,595** | **(7,381)** | **(7,381)** |
| Restricted Cash | (1,542) | (1,542) | (1,542) | (1,542) |
| Minimum Cash Balance | (25,000) | (25,000) | (25,000) | (25,000) |
| **Liquidity** | **$ 66,391** | **$ 11,053** | **($ 33,923)** | **($ 33,923)** |

**Notes:**

[1] Includes proceeds from the sale of mined BTC after the final order is approved by the court.

[2] Includes deposits and other non-recurring hosting expenses related to mining activities.

[3] Includes S&U taxes, shipping and customs duties.