**Hearing Date: September 14, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: September 7, 2022, at 4:00 p.m. (prevailing Eastern Time)**

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        kwofford@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

AMERICAS 116644342 v10

**NOTICE OF HEARING ON THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS
FINANCIAL ADVISOR EFFECTIVE AS OF AUGUST 1, 2022**

**PLEASE TAKE NOTICE** that a hearing on the *Application of the Official Committee of
Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of M3
Advisory Partners, LP as Financial Advisor Effective as of August 1, 2022* (the "**Application**")
will be held on **September 14, 2022, at 2:00 p.m., prevailing Eastern Time** (the "**Hearing**"). In
accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted
remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making
a "live" or "listen only" appearance before the Court, need to make an electronic appearance
through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief
requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of
Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all
General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the
Southern District of New York, and the *Interim Order (I) Establishing Certain Notice, Case
Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 63];
(c) be filed electronically with the Court on the docket of *In re Celsius Network LLC,* No. 22-
10964 (MG) by registered users of the Court's electronic filing system and in accordance with all
General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the
Southern District of New York (which are available on the Court's website at
http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **September 7,
2022, at 4:00 p.m., prevailing Eastern Time,** by (i) the entities on the Master Service List
available on the case website of the above-captioned debtors and debtors in possession (the

2

"**Debtors**") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Committee.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

AMERICAS 116644342 v10

Dated:  August 24, 2022       /s/ Gregory F. Pesce
New York, New York     **WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
sam.hershey@whitecase.com
kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors*

4

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
      sam.hershey@whitecase.com
      kwofford@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
      gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[2] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR EFFECTIVE AS OF AUGUST 1, 2022

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned

---

[2]      The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

AMERICAS 116644342 v10

debtors and debtors-in-possession (collectively the "**Debtors**") submits this application (the "**Application**"), for the entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the Committee to employ and retain M3 Advisory Partners, LP ("**M3**") as its financial advisor effective as of August 1, 2022. In support of this Application, the Committee relies upon and incorporates by reference the *Declaration of Mohsin Y. Meghji in Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of M3 Advisory Partners, LP as Financial Advisor Effective as of August 1, 2022* (the "**Meghji Declaration**"), attached hereto as **Exhibit B**. In further support of the Application, the Committee respectfully states as follows:

## Relief Requested

1.      By this Application, pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the Committee seeks authority to retain and employ M3 Advisory Partners, LP as its financial advisor in connection with the Chapter 11 Cases and all related matters, effective as of August 1, 2022, the date on which the Committee was appointed, in accordance with the terms, and subject to the conditions of that certain engagement letter, dated as of August 3, 2022, attached hereto as **Exhibit C** (the "**Engagement Letter**"). The Committee also seeks approval of the terms of M3's employment and retention, including, without limitation, the proposed Fee Structure (as defined below) and the indemnity, exculpation, contribution, and related provisions (the "**Indemnity Provisions**") within the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code.

2

## Jurisdiction, Venue and Predicates for Relief

2.     The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The Committee confirms its consent to the Court entering a final order in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The predicates for the relief requested by this Application are sections 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## Background

5.     On July 13, 2022 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  However, on August 18, 2022, the U.S. Trustee filed a motion requesting appointment of an examiner [Docket No. 546].  On July 27, 2022, the U.S. Trustee appointed the Committee, which is comprised of seven members, each of whom holds crypto (or digital) assets through the Celsius platform [Docket No. 241].  The Committee's goal is to maximize the recoveries of account holders and unsecured creditors, as more fully stated in *The Official Committee of*

3

*Unsecured Creditors' Statement Regarding These Chapter 11 Cases* [Docket No. 390].

6.      On August 1, 2022, the Committee voted to retain M3 as its financial advisor, subject to Bankruptcy Court approval.

## M3's Qualifications

7.      In light of the size and complexity of these Chapter 11 Cases, the Committee requires a qualified and experienced financial advisor with M3's resources, capabilities, and experience.  M3 is well qualified to serve as financial advisor to the Committee.  It is a nationally recognized financial advisory firm and its professionals have a wealth of experience in operational and financial restructurings, matters requiring expert opinions, and providing support for investigations and litigation connection with financial restructurings.  M3's professionals have extensive experience in turnarounds, corporate restructuring, and bankruptcy and corporate financing, including, but not limited to, company business plan viability and plan feasibility, having worked (on a combined basis) on more than 500 restructurings as chief restructuring officer, advisor, principal or independent director.  In doing this, M-III and its professionals have assisted and provided strategic advice to debtors, creditors, bondholders, investors, official committee and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.

8.      Notably, M3 has been retained as a financial advisor, and in some cases designated as Chief Restructuring Officer, in numerous large and complex chapter 11 cases, including, among others[3]: *In re Sears Holdings Corporation*, No. 18-23538 (RDD) (Bankr. S.D.N.Y.) (ECF No. 814); *In re Neiman Marcus Group LTD LLC, et al.*, No 20-32519 (DRJ) (Bankr. S.D. Texas); *In*

---

[3]      With respect to *In re Capmark Fin. Grp. Inc.* and *In re Centerline Holding Co.*, Mohsin Y. Meghji, the managing partner of M3, led the advisory team for each such engagement prior to the founding of M3.

*re Sanchez Energy Corporation, et al.*, No. 19-34508 (MI) (Bankr. S.D. Tex.) (ECF No. 704); *In re RAIT Funding, LLC*, No. 19-11915 (BLS) (Bankr. D. Del.); and *In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS) (Bankr. D. Del.) (ECF No. 451).

9.    The Committee submits this Application because of its need to retain a financial advisor to assist it in the critical tasks associated with guiding the Committee through the Debtors' reorganization efforts.  The Committee respectfully submits that the services of a financial advisor are necessary and appropriate to enable it to evaluate the complex financial and economic issues raised by the Debtors' reorganization proceedings and to effectively fulfill its statutory duties.

10.    The Committee reviewed materials submitted by M3 prior to selecting it as the Committee's financial advisor.  Such selection was based on the Committee's determination that M3 is the best candidate for the services to be provided and that its proposed fee structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases.  The Committee further selected M3 to act as its financial advisor in the Chapter 11 Cases because of M3's significant expertise in providing financial advisory services to debtors and creditors in restructurings and distressed situations.

11.    Pursuant to section 1103(a) of the Bankruptcy Code, a committee may retain advisors to assist in the chapter 11 cases.  *See* 11 U.S.C. § 1103(a).  In the Debtors' Chapter 11 Cases, the Committee requires qualified professionals to render these essential financial advisor services.  As discussed above, M3 has substantial expertise as a financial advisor in complex chapter 11 cases and is well qualified to perform these services and to assist the Committee in the Chapter 11 Cases.

## **Services To Be Rendered**

12.    M3 has agreed to provide services to the Committee in accordance with the terms

and conditions of the Engagement Letter.  The terms of the Engagement Letter reflect the mutual

agreement between the Committee and M3 as to the substantial efforts that may be required of M3

in this engagement.   The Engagement Letter provides, in consideration for the compensation

thereby, that M3 will, to the extent requested by the Committee, render the following financial

advisor services[4]:

    a.   Assistance in the analysis, review and monitoring of the restructuring process, including, but not limited to an assessment of potential recoveries for general unsecured creditors;

    b.   Assistance in the review of financial information prepared by the Debtors, including, but not limited to, cash flow projections and budgets, business plans, cash and crypto receipts and disbursement analysis, asset and liability analysis, and the economic analysis of proposed transactions for which Court approval is sought;

    c.   Assistance in the review of the Debtors' prepetition capital structure, financing agreements, defaults under any financing agreement and forbearances;

    d.   Assistance with the review of the Debtors' analysis of core and non-core business assets, the potential disposition or liquidation of the same, and assistance regarding the review and assessment of any sales process relating to same;

    e.   Assistance in the review and/or preparation of information and analysis necessary for the preparation, proposal and confirmation of a plan and related disclosure statement in these Cases;

    f.   Attendance at meetings and assistance in discussions with the Debtors, potential investors, banks, other lenders, the Committee and any other official committees organized in these Cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

    g.   Assistance in the review of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

    h.   Assistance with the review of the Debtors' cost/benefit analysis with respect

---

[4]    This Application summarizes the terms of the Engagement Letter.  To the extent there is a conflict between the Application and the Engagement Letter, the Engagement Letter will govern.

AMERICAS 116644342 v10

to the affirmation or rejection of various executory contracts and leases;

i.  Assistance in the evaluation, analysis and forensic investigation of avoidance actions, including fraudulent conveyances and preferential transfers and certain transactions between the Debtors and affiliated entities;

j.  Assistance in the prosecution of Committee's responses/objections to the Debtors' motions, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee;

k.  Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding;

l.  Assistance and support in the evaluation of restructuring and liquidation alternatives; and

m.  Provide such other assistance as is ancillary to the above or as M3 and the Committee shall mutually agree.

### Professional Compensation

13.  Bankruptcy Code section 328(a) provides, in relevant part, that a committee appointed under Bankruptcy Code section 1102 "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

14.  Subject to the Court's approval, and in accordance with section 328(a) of the Bankruptcy Code, M3 proposes to render its services on an hourly fee basis according to its customary hourly rates in effect when the services are rendered.  M3 professionals will be billed at their respective standard hourly rates, subject to periodic adjustments, with the following ranges (the "**Fee Structure**"), pursuant to, and as further explained in, the Engagement Letter:

7

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

15.     M3 and the Committee expressly reserve their rights pursuant to section 1129(a)(9)(A) of the Bankruptcy Code for M3 to receive the full amount of compensation based on the foregoing notwithstanding the terms of any cash collateral order or secured financing order now or hereafter entered in these Chapter 11 Cases providing for a limitation on the amount of fees payable to M3 for specified or general purpose.

16.     M3 will be reimbursed for its reasonable and necessary out-of-pocket expenses (which shall be charged at cost) incurred in connection with this engagement, such as travel, lodging, duplicating, research, messenger and telephone charges.  M3 will charge for these expenses at rates consistent with charges made to other M3 clients, and subject to the guidelines of the United States Trustee.  For the avoidance of doubt, M3 expenses may include reasonable fees and expenses of external legal counsel, except to the extent that such fees are incurred in defense of M3's fee applications.

17.     M3 will maintain records of fees and expenses incurred in connection with the rendering of the financial advisory services described above, in accordance with applicable rules and guidelines.

18.     The terms and conditions of the Engagement Letter were negotiated by the Committee at arm's length and in good faith.  After discussions and arm's length negotiations, the Committee believes that the Fee Structure and the expense reimbursement provisions described

8

above and in the Engagement Letter are consistent with, and typical of, compensation arrangements entered into by M3 and other comparable firms in connection with the rendering of similar services under similar circumstances and is reasonable, market based and merited by M3's restructuring expertise.

19.    In light of the foregoing, the Committee believes that M3's fee structure is reasonable, market-based, and designed to fairly compensate M3 its work in these Chapter 11 Cases and to cover fixed and routine overhead expenses.

## Indemnification

20.    M3 requests that the Debtors indemnify, hold harmless, and pay the reasonable out-of-pocket legal or other expenses of M3 or any of affiliates, equity holders, partners, directors, employees, agents, representatives and contractors (collectively, the "**Indemnified Persons**") under certain circumstances, as described in the Indemnity Provisions included in the Engagement Letter.

21.    Financial advisors seek indemnification for a variety of reasons. The performance of M3's responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. M3 intends to rely on the accuracy and completeness of the financial information and other information to be provided by the Debtors. The Committee notes that, in the event an Indemnified Person acts with gross negligence or willful misconduct, the estates will be entitled to recover amounts paid pursuant to the Indemnification Provisions.

22.    The Committee and M3 believe that the proposed Indemnity Provisions are customary and reasonable for financial advisory engagements, both out-of-court and in chapter 11 proceedings. Similar indemnification arrangements have been approved and implemented in other

9

large chapter 11 cases. *See, e.g.*, *In re Centric Brands Inc.*, No. 20-22637-shl (Bankr. S.D.N.Y. Aug. 13, 2020); *In re Avianca Holdings S.A.*, No. 20-11133 (MG) (Bankr. S.D.N.Y. July 14, 2020); *In re Dean & Deluca New York Inc.*, No. 20-10916 (MEW) (Bankr. S.D.N.Y. June 22, 2020); *In re LSC Commc'ns., Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. May 12, 2020); *In re McClatchy Company*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. Apr. 30, 2020); *In re Aegean Marine Petroleum Network, Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019).

23.     The proposed Indemnity Provisions are also consistent with the standards that normally govern trustees and committees in chapter 11 cases. *See Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977) (holding that a trustee is "(a) not liable, in any manner, for mistake in judgment where discretion is allowed, (b) liable personally only for acts determined to be willful and deliberate in violation of his duties and (c) liable, in his official capacity, for acts of negligence."); *In re Chi. Pac. Corp.*, 773 F.2d 909, 915 (7th Cir. 1985) (bankruptcy trustee can be personally liable only "for a willful and deliberate violation of his fiduciary duties"); *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 752–53 (4th Cir. 1993) (collecting cases). Members of creditors' committees are also protected from liability in the absence of gross negligence. *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000). In fact, the court has held that professionals employed by creditors' committees similarly should be protected from liability in the absence of willful misconduct or gross negligence. *See Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994) (holding that committee members and their professionals are entitled to immunity except for willful misconduct or ultra vires acts); *see also Philip v. L.F. Rothschild Holdings (In re L.F. Rothschild Holdings)*, 163 B.R. 45, 49 (Bankr. S.D.N.Y. 1994); *In re Drexel Burnham Lambert Grp.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992).

24.     For these reasons, indemnity provisions are common market practice, both inside

and outside of bankruptcy cases, and it is the standard practice for firms like M3 to obtain

indemnities of the kind outlined above.

### Efforts To Avoid Duplication Of Services

25.    As of August 2, 2022, the Committee has also selected Perella Weinberg Partners

"**PWP**") to provide investment banking services to the Committee.  The financial advisor services

that M3 will provide to the Committee are separate and distinct from the investment banking

services to be performed by PWP.  M3 and PWP will coordinate with one another on the services

provided to the Committee to avoid any unnecessary duplication of services by either professional

during the pendency of these Chapter 11 Cases; provided, however, that M3 shall not be

responsible for and shall not incur any liability from the services performed by PWP.

26.    M3's services are intended to complement, and not unnecessarily duplicate, the

services to be rendered by any other professional retained by the Committee in these Chapter 11

Cases.  M3 has informed the Committee that it understands that the Committee has retained and

may retain additional professionals during the term of the engagement and will use its reasonable

efforts to work cooperatively with such professionals to integrate any respective work conducted

by the professionals on behalf of the Committee.

### M3's Disinterestedness

27.    In connection with the proposed retention by the Committee in these Chapter 11

Cases, M3 has received a list of parties in interest from the Debtors, along with the names of certain

supplemental parties in interest suggested by counsel to the Committee attached to the Meghji

Declaration as **Schedule 1**.

28.    M3 has informed the Committee that, subject to the exceptions and limitations as

set forth in the Meghji Declaration, M3: (a) has no connection with the Debtors, their creditors,

11

their equity security holders or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee in any matter related to the Debtors and their estates; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as required by section 1103(b) of the Bankruptcy Code. If any new material facts or relationships are discovered or arise, M3 will promptly inform the Court as required by Bankruptcy Rule 2014(a).

29.     Based on the Meghji Declaration, the Committee believes that M3 is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

30.     Based on the foregoing, the Committee believes that the employment of M3 would be in the best interests of the Committee, and the Debtors' estates and creditors.

## Basis For Relief Requested

### I.    The Bankruptcy Code Permits the Employment and Retention of M3 on Terms Substantially Similar to Those in the Engagement Letter

31.     The Committee seeks approval of the Engagement Letter, including the Fee Structure and the Indemnity Provisions stated therein, pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code. Section 1103(b) requires that professionals may not "represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b). In addition, section 328(a) of the Bankruptcy Code provides, in relevant, part, that a committee "may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions.

12

32.     The Committee believes the Fee Structure is fair and reasonable and consistent with

and typical of compensation arrangements entered into by M3 and other comparable firms in

connection with the rendering of similar services under similar circumstances.  The Committee

has specifically selected M3 to serve as its financial advisor because of its extensive experience in

advising debtors, individual creditors, creditors' committees, and other constituents in large

chapter 11 cases.  Further, the compensation arrangements are highly beneficial to the Debtors'

estates as they provide the proper inducement for M3 to act expeditiously and prudently with

respect to the matters for which it will be employed.  The compensation of M3 shall be subject to

the standard of review only as set forth in Bankruptcy Code section 328 and not subject to any

other standard of review; *provided, however*, that the U.S. Trustee shall retain the right to review

M3's compensation based on the reasonableness standard provided for in Section 330 of the

Bankruptcy Code.

33.     As discussed, M3 satisfies the disinterestedness standard in section 1103(b) of the

Bankruptcy Code.  In light of the foregoing and given the numerous issues that M3 may be required

to address in the performance of its services hereunder, M3's commitment to the variable level of

time and effort necessary to address all such issues as they arise and the market prices for M3's

services for engagements of this nature both in an out-of-court and chapter 11 context, the

Committee believes that the Fee Structure is fair, reasonable, and market-based under the standard

set forth in section 328(a) of the Bankruptcy Code.

## II.     Approval of This Engagement Is Appropriate Pursuant to Section 328(a) of the Bankruptcy Code

34.     Section 328 of the Bankruptcy Code provides, in relevant part, that a committee

"may employ or authorize the employment of a professional person under section . . . 1103 of this

title . . . on any reasonable terms and conditions of employment, including on a retainer, on an

13

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Thus, section 328(a) permits the Court to approve the terms of M3's engagement as set forth in the Engagement Letter, including the Fee Structure, and the terms of the Indemnity Provisions.

35.     As recognized by numerous courts, Congress intended section 328(a) of the Bankruptcy Code to enable committees to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

36.     The Fee Structure appropriately reflects the nature of the services to be provided by M3 and is consistent with the fee structures typically utilized by leading financial advisors.

### III.    Relief Effective as of August 1, 2022 Is Appropriate Under the Circumstances

37.     The Committee respectfully requests entry of an order authorizing M3 to perform financial advisory services for the Committee effective as of August 1, 2022. Immediately upon its selection by the Committee, M3 commenced work on several matters and promptly devoted substantial resources to these Chapter 11 Cases pending submission and approval of this Application. Therefore, the Committee asserts that M3 should be compensated for work performed prior to and after the entry of an order authorizing its retention.

38.     Based on the foregoing, the Committee submits that it has satisfied the requirements

14

of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Committee to retain and employ M3 in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

### Notice

39.     Notice of this Application has been provided to: (a) the Debtors; (b) the Office of the U.S. Trustee; (c) counsel to the Committee; (d) the holders of the 50 largest unsecured claims against Debtors (on a consolidated basis); (e) the United States Attorney for the Southern District of New York; (f) the Internal Revenue Service; (g) the officers of the attorneys general in the states in which the Debtors operate; (h) the Securities and Exchange Commission; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.   The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

40.     No previous application for the relief sought herein has been made by the Debtors to this Court or any other court.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court grant the relief requested in this Application, the Order, and such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

16

Dated:  August 24, 2022

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:

*Scott Duffy*
Scott Duffy
Authorized Signatory, ICB Solutions Inc.
Co-Chair, Official Committee of Unsecured Creditors

# EXHIBIT A

**Proposed Order**

AMERICAS 116644342 v10

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR EFFECTIVE AS OF AUGUST 1, 2022

Upon the application (the "**Application**")[2] of the Committee for entry of an order

(this "**Order**") authorizing the employment and retention of M3 Advisory Partners, LP ("**M3**")

effective as of August 1, 2022 as the Committee's financial advisor, on the terms set forth in the

Engagement Letter; and the Court having jurisdiction to consider the Application and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

and due, sufficient, and proper notice of the Application having been provided under the

circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing

that no other or further notice need be provided; and a hearing having been held, if necessary, to

consider the relief requested in the Application (the "**Hearing**"); and upon consideration of the

Meghji Declaration, and the record of the Hearing, if any, and all of the proceedings had before

the Court; and the Court having found and determined that the terms and conditions of M3's

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

employment, including the Fee Structure set forth in the Engagement Letter are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having found and determined that M3 does not represent or hold any interest adverse under section 1103 of the Bankruptcy Code, and is (to the extent applicable) a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code, that the relief sought in the Application is necessary and in the best interests of the Committee, the Debtors, their estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Committee is authorized to employ and retain M3 as its financial advisor in the Chapter 11 Cases, effective as of August 1, 2022, for the purposes set forth and upon the terms and conditions of the Engagement Letter.

2.      The Engagement letter, including, without limitation, the Fee Structure and the Indemnity Provisions (each as defined in the Engagement Letter), are approved pursuant to section 328(a) of the Bankruptcy Court.

3.      M3 shall file interim and final fee applications for allowance of its compensation and expenses (including reasonable fees and expenses of external legal counsel) subject to the jurisdiction and approval of this Court under section 328(a) of the Bankruptcy Code and in accordance with the Bankruptcy Rules, the Local Rules, the guidelines established by the Office of the U.S. Trustee, and any applicable orders of the Court.  The fees payable to M3 shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code. None of the fees payable to M3 shall constitute a "bonus" or fee enhancement under applicable

AMERICAS 116644342 v10

law.

4.      The Debtors are authorized to, and shall, pay M3's compensation and reimburse
M3 for its costs and expenses as provided in the Engagement Letter, in accordance with the fee
application process approved by this Court.  M3 may include as expenses the reasonable fees and
expenses of outside counsel, if any, retained by M3, without the need for such legal counsel to be
retained as professionals in these Chapter 11 Cases.

5.      Notwithstanding anything to the contrary in this Order and any provision to the
contrary in the Application or the Engagement Letter, the Office of the United States Trustee for
the Southern District of New York shall have the right to object to M3's request for compensation
and reimbursement based on the reasonableness standard provided in section 330 of the
Bankruptcy Code.

6.      The Indemnity Provisions set forth in the Engagement Letter are approved, subject
during the pendency of these Chapter 11 Cases to the following:

    a.  All requests for payment of indemnity, contribution, or otherwise pursuant
        to the Engagement Letter shall be made by means of an interim or final fee
        application and shall be subject to the approval of, and review by, the Court
        to ensure that such payment conforms to the terms of the Engagement
        Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy
        Rules, and the orders of this Court, and is reasonable based on the
        circumstances of the litigation or settlement in respect of which indemnity
        is sought; provided that in no event shall any person be indemnified or
        receive contribution to the extent that any claim arose or expense has
        resulted from any such losses finally judicially determined by a court of
        competent jurisdiction to have primarily resulted from the bad faith, self-
        dealing, breach of fiduciary duty, if any, gross negligence, or willful
        misconduct on the part of that or any other Indemnified Persons;

    b.  In no event shall any Indemnified Person be indemnified or receive
        contribution or other payment under the Indemnity Provisions to the extent
        the Debtors or a representative of the estate asserts a claim for, and the Court
        determines by final order that such claim primarily arose out of, such
        Indemnified Person's bad-faith, self-dealing or breach of fiduciary duty (if
        any), gross negligence, or willful misconduct; and

3

    c.   In the event that any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be annexed to M3's own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code.

7.     To the extent that the Application is inconsistent with this Order, the terms of this Order shall govern.

8.     Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application.

9.     The Committee and the Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

10.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.    This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2022
     New York, New York

                                _____
                                THE HONORABLE MARTIN GLENN
                                UNITED STATES BANKRUPTCY JUDGE

4

# **EXHIBIT B**

## **Meghji Declaration**

AMERICAS 116644342 v10

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DECLARATION OF MOHSIN Y. MEGHJI IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR EFFECTIVE AS OF AUGUST 1, 2022

I, Mohsin Y. Meghji, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Managing Partner at M3 Advisory Partners, LP ("**M3**"), and am duly authorized to execute this declaration on behalf of M3. I submit this declaration pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), in support of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of M3 Advisory Partners, LP as Financial Advisor Effective as of August 1, 2022*.[2] Unless otherwise stated, I have personal knowledge of the facts stated herein. To the extent any information disclosed herein requires amendment or modification upon M3's completion of further review or as additional party-in-interest information, M3 will submit supplemental materials to the Court.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to such terms in the Application.

### M3's Qualifications

2.      M3 has been asked to serve as financial advisor to the Committee appointed in the chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").

3.      M3 is a restructuring advisory firm specializing in corporate restructurings, operational improvement, dispute resolution and valuation.  M3 has extensive experience working with and for distressed companies in complex financial and operational restructurings, both out-of-court and in chapter 11 proceedings throughout the United States.  M3 professionals have advised debtors, creditors and equity constituents in numerous reorganizations, which advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and improvements, dispute and litigation advisory and interim management services.  M3 and M3 professionals have been involved in numerous chapter 11 and international bankruptcies in capacities including advisor to official committees of creditors, advisor to official equity committees, advisor to secured and unsecured holders of debt, debtor advisory, and serving as a Chief Restructuring Officer.

4.      In light of the size and complexity of these Chapter 11 Cases, the Committee requires the services of a seasoned and experienced financial advisor familiar with the industry to, among other things, assist the Committee in: (i) understanding the Debtors' businesses and operations; (ii) executing its fiduciary duties; and (iii) maximizing the value of the Debtors' estates. Therefore, the Committee respectfully submits that the services of M3 are necessary and appropriate to ensure that the Committee's interests are protected.

5.      The Committee has informed M3 that it selected M3 as its financial advisor based upon, among other things: (a) the Committee's need to retain a financial advisory firm to provide

2

advice with respect to the Debtors' restructuring activities; (b) M3's senior professionals' extensive experience and excellent reputation in providing financial advisory services in chapter 11 cases such as these Chapter 11 Cases; and (c) M3's knowledge of the financial services industries. Furthermore, the Committee has informed M3 that the Committee believes that M3 is well qualified to provide its services in a cost-effective, efficient, and timely manner. The Committee has submitted that the employment and retention of M3 would be in the best interests of the Debtors, their estates and their creditors. M3 has agreed to provide financial advisory services to the Committee in the Debtors' Chapter 11 Cases, pursuant to the terms and conditions set forth in the Application.

## Professional Compensation

6.     Subject to the Court's approval, and in accordance with section 328(a), 330, and 1103 of the Bankruptcy Code, M3 proposes to render its services on an hourly fee basis according to its customary hourly rates in effect when the services are rendered. M3 professionals will be billed at their respective standard hourly rates, subject to periodic adjustments, with the following ranges:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

7.     M3 will be reimbursed for its reasonable and necessary out-of-pocket expenses (which shall be charged at cost) incurred in connection with this engagement, such as travel, lodging, duplicating, research, messenger and telephone charges. M3 shall seek reimbursement

3

for these expenses at cost consistent with M3's standard business practices, and subject to the guidelines of the United States Trustee.

8.      M3 will maintain records of fees and expenses incurred in connection with the rendering of the services described above, in accordance with applicable rules and guidelines.

9.      The Committee believes that the fee structure is reasonable, market-based, and designed to fairly compensate M3 for its work in these Chapter 11 Cases and to cover fixed and routine overhead expenses.

## **Disinterestedness**

10.      Neither M3, any director, officer or employee thereof, nor I, insofar as I have been able to ascertain, represents any interest adverse to that of the Debtors' estates in the matters upon which the Committee seeks to engage M3, and I believe the firm to be a "disinterested person" within the meaning of Bankruptcy Code section 101(14).  In connection with its proposed retention by the Committee in these cases, M3 obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 Cases and additional names provided by counsel to the Committee (the "**Potential Parties in Interest**"), which parties are listed on **Schedule 1** annexed hereto.  M3 then compared the names of the Potential Parties in Interest with the names of entities that have entered into engagement agreements with M3 in the last three years.  To the extent that this inquiry revealed that any of the Potential Parties in Interest (or any of their known or apparent affiliates) entered into any such engagement agreements with M3, or any other relationship has existed, within the last three years, such parties are listed on **Schedule 2** annexed hereto.  To the best of my knowledge and belief, M3's representation of each entity listed on Schedule 2 (or any of their known or apparent affiliates) was or is only on matters that are unrelated to the Debtors and these cases.

4

11.     Other than as listed on Schedule 2, I am unaware of any financial advisory engagements of M3 by, or other relationships with, the Potential Parties in Interest within the last three years.

12.     From time to time, M3 has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these Chapter 11 Cases.  Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which M3 is to be employed, and none are in connection with these cases.

13.     M3 provides services in connection with numerous cases, proceedings and transactions unrelated to these Chapter 11 Cases.  Those unrelated matters involve numerous attorneys, financial advisors and creditors, some of whom may be claimants or parties with actual or potential interests in these Chapter 11 Cases, or may represent such parties.

14.     M3's personnel may have business associations with certain creditors of the Debtors unrelated to these Chapter 11 Cases.  In addition, in the ordinary course of its business, M3 may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other parties in interest in these Chapter 11 Cases.

15.     Further, as part of its diverse practice, M3 appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties in interest in the Chapter 11 and international bankruptcy Cases.  Further, M3 (including its affiliates and employees) has performed in the past and may perform in the future consulting services for various attorneys and law firms, and M3 has been represented by several attorneys and law firms, some of whom may

5

be involved in these proceedings. Based on M3's current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships creates interests materially adverse to the Debtors, and none is in connection with these Chapter 11 Cases.

16.     On a going forward basis, M3 shall disclose any and all facts that may have a bearing on whether the firm, its affiliates and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors or other parties in interest.

17.     M3 and I do not believe that either of us is a "creditor" of any of the Debtors within the meaning of section 101(1) of the Bankruptcy Code. Further, neither I, M3 nor any member of the M3 engagement team serving the Committee, to the best of my knowledge, is a holder of any of the Debtors' outstanding debt, equity or preferred stock investments.

18.     Neither M3, any member or employee thereof, nor I, insofar as I have been able to ascertain, is so connected with the Judges of the United States Bankruptcy Court for the Southern District of New York, the United States Trustee or the Assistant Trustee or Trial Attorneys for the Office of the United States Trustee, as to render the employment of M3, as financial advisor for the Committee, inappropriate under Bankruptcy Rule 5002(b).

19.     Neither M3, any director, officer or employee thereof, nor I, insofar as I have been able to ascertain, is or was a creditor, an equity holder or insider of the Debtors.

20.     Neither M3, any director, officer or employee thereof, nor I, insofar as I have been able to ascertain, is or was a director, officer or employee of the Debtors as defined in Bankruptcy Code sections 101(14)(B) or (C) within two years before the date of filing of the Debtors' Chapter 11 Cases.

21.     On the basis of the above, I believe M3 to be a "disinterested person" within the meaning of Bankruptcy Code section 101(14).

6

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.

Dated: August 24, 2022
       New York, New York

/s/

Mohsin Y. Meghji
Managing Partner, M3 Advisory
Partners, LP

7

# SCHEDULE 1

## Potential Parties in Interest

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
|---|---|
| 1(a) | Current and Recent Former Entities Affiliated with the Debtors |
| 1(b) | Directors/Officers |
| 1(c) | Equity Holders |
| 1(d) | Bankruptcy Professionals |
| 1(e) | Institutional Customers |
| 1(f) | Insurance |
| 1(g) | Landlords |
| 1(h) | Legal Matters and Litigants |
| 1(i) | Non-Bankruptcy Advisors and Ordinary Course Professionals |
| 1(j) | Retail Customers |
| 1(k) | Top 50 Unsecured Creditors |
| 1(l) | Taxing Authority/Governmental/Regulatory Agencies |
| 1(m) | Utilities |
| 1(n) | Vendors |
| 1(o) | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York |

# SCHEDULE 1(a)

## **Current and Recent Former Entities Affiliated with the Debtors**

Celsius (AUS) Pty Ltd. (Australia)
Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp.
Celsius Mining IL Ltd.
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network (Gibraltar) Ltd.
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network IL Ltd. (Israel)
Celsius Network Inc.
Celsius Network LLC
Celsius Network Ltd. (UK)
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius Services CY Ltd. (Cyprus)
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
GK8 Ltd (Israel)
GK8 UK Ltd.
GK8 USA LLC
KN Media Manager LLC

# SCHEDULE 1(b)

### Directors/Officers

Ayalor, Amir
Barse, David
Bentov, Tal
Blonstein, Oren
Bodnar, Guillermo
Bolger, Rod
Carr, Alan Jeffrey
Cohen-Pavin, Roni
Denizkurdu, Aslihan
Deutsch, Ron
Dubel, John Stephen
Goldstein, Nuke
Kleiderman, Shiran
Leon, S. Daniel
Mashinsky, Alex
Nadkarni, Tushar
Nathan, Gilbert
Ramos, Trunshedda W.
Sunada-Wong, Rodney
Tosi, Laurence Anthony

# SCHEDULE 1(c)

### Equity Holders

Advanced Technology Fund XXI LLC
Altshuler Shaham Trusts Ltd.
Andersen Invest Luxembourg SA SPF
Artus Capital GmbH & Co. KGaA

BNK to the Future

BullPerks (BVI) Corp.

Caisse de dépôt et placement du Québec

CDP Investissements Inc.

Craig Barrett Andersen Invest Luxembourg SA SPF
European Media Finance Ltd.
Fabric Ventures Group SARL

Gumi Cryptos Capital LLC
Heliad Equity Partners GmbH & Co. KGaA

Intership Ltd.

JR Investment Trust



Tether International Ltd.
tokentus Investment AG

WestCap Celsius Co-Invest 2021 LLC
WestCap Group
WestCap SOF Celsius 2021 Aggregator LP

WestCap SOF II IEQ 2021 Co-Invest LP

# SCHEDULE 1(d)

## **Bankruptcy Professionals**

Akin Gump Strauss Hauer & Feld LLP
Alvarez & Marsal Holdings LLC
Centerview Partners LLC
Deloitte & Touche LLP
Ernst & Young
Latham & Watkins LLP
Stretto
White & Case LLP

# SCHEDULE 1(e)

## Institutional Customers

168 Trading Ltd.
Akuna Digital Assets LLC
Alameda Research Ltd.
Amber - Maple
Amber Technologies Ltd.
Anchorage Hold LLC
Anchorage Lending CA LLC
Antalpha Technologies Ltd.
AP Capital Absolute Return Fund
AP Capital Investment Ltd.
Auros Tech Ltd.
B2C2 Ltd.
Babel Holding Ltd.
B-Brick Inc.
BCB Prime Services Ltd.
BCRS2 LLC
Belleway Ltd.
BK Coin Capital LP
Blockchain Access UK Ltd.
Blue Fire Capital Europe Cooperatief UA
CEX IO Ltd.
CMS Holdings LLC
Coinbase Credit
Core Scientific Inc.
Cumberland DRW LLC
Dexterity Capital LLC
Digital Asset Funds Management Pty. Ltd.
Digital Treasures Management Pte. Ltd.
Diversified Alpha SP
Druk Holding & Investments Ltd.
Dunamis Trading (Bahamas) Ltd.
Dunamis Trading III Ltd
DV Chain LLC
Enigma Securities Ltd.
Equities First Holdings LLC
FalconX Ltd.
Fasanara Investments Master Fund
Flow Traders BV
Folkvang SRL
Fractal
Future Technology Investment Ltd.
Galaxy

Galaxy Digital LP
Gemini Trust Co. LLC
Genesis Global Capital LLC
Grapefruit Trading LLC
GSR Markets Ltd.
Harrison Opportunity III Inc.
HAS Futures LLC
Hehmeyer LLC
Hehmeyer Trading AG
████████████
Hodlnaut Pte. Ltd.
HRTJ Ltd.
Intership Ltd.
Iterative OTC LLC
JKL Digital Capital Ltd.
JSCT Hong Kong Ltd.
JST Systems LLC
Jump Trading LLC
Keyrock SA
Komaransky, Mike
Kronos Holdings Ltd.
LedgerPrime Digital Asset Opportunities
    Master Fund LP
Liquibit USD Market Neutral Arbitrage
    Fund
Liquidity Technologies Ltd.
LUOJI2017 Ltd.
Marquette Digital
Matrix Port Technologies Ltd.
Memetic Capital LP
Menai Markets Ltd.
Mountain Cloud Global Ltd.
Nascent GP Inc.
Nascent LP
New World Holdings SA
Nickel Digital Asset Fund SPC Digital Asset
    Arbitrage SPC Institutional
Nickel Digital Asset Master Fund SPC -
    Digital Factors Fund SP
Niederhoffer, Roy
NYDIG Funding LLC
Oiltrading.com Pte. Ltd.

Onchain Custodian Pte. Ltd.
Optimal Alpha Master Fund Ltd.
OSL SG Pte. Ltd.
Outremont Alpha Master Fund LP
Parallel Capital Management Ltd.
Pharos Fund BTC SP
Pharos Fund Eth SP
Pharos Fund SP
Pharos Fund SPC
Pharos USD Fund SP
Plutus21 Crypto Fund I LP
Point95 Global
Power Block Coin LLC
Prime Trust
Profluent Trading Inc.
Profluent Trading UK Ltd.
QCP Capital Pte Ltd.
Radkl LLC
Red River Digital Trading LLC
Reliz Ltd.
S&P Solutions Inc.
Scrypt Asset Management AG
SEBA Bank AG
Siafu Capital
Simplex
Symbolic Capital Partners Ltd.
Tagomi Trading LLC
TDX SG Pte. Ltd.
Tether International Ltd.
Three Arrows Capital Ltd.
Tower BC Ltd.
Tower Research Capital
Transfero Brasil Pagamentos SA
Trigon Trading Pty. Ltd.
TrueFi
Trustoken Inc.
Ultimate Coin
Vexil Capital Ltd.
Waterloo Maple Inc.
Weave Markets LP
Wincent Investment Fund PCC Ltd.
Wintermute - Maple
Wintermute Trading Ltd.
Wyre Payments Inc.
ZeroCap Ltd.

# SCHEDULE 1(f)

**<u>Insurance</u>**

AmTrust Underwriters Inc.
ANV Insurance
Associated Industries Insurance Co. Inc.
Atlantic Insurance
Ayalon Insurance Co.
Crum & Forster Specialty Insurance Co.
Falvey Insurance Group
Hudson Insurance Group
Indian Harbor Insurance Co.
Lloyd's of London
Markel Insurance
Marsh
Migdal Insurance Co.
Relm Insurance Ltd.
Republic Vanguard Insurance Co.
Sentinel Insurance Co.
StarStone Insurance
United States Fire Insurance Co.
Zurich Insurance Group AG

# SCHEDULE 1(g)

## **Landlords**

Algo Adtech Ltd.
Desks & More
Industrious LLC
New Spanish Ridge LLC
Regus
SJP Properties

# SCHEDULE 1(h)

## Legal Matters & Litigants

BitBoy Crypto
Bofur Capital
MS SD IRA LLC
Pharos Fund
Symbolic Capital Partners Ltd.
Vexil Capital Ltd.

# SCHEDULE 1(i)

## Non-Bankruptcy Advisors and Ordinary Course Professionals

A. Georgiou & Co. LLC
Advokatu Kontora Sorainen IR Partneriai
Buckley LLP
CMS Cameron McKenna Nabarro Olswang LLP
Cryptos Capital
Finnegan Henderson Farabow Garrett & Dunner LLP
Holley Nethercote Pty. Ltd.
Jackson Lewis PC
Matsumura, Miko
McCarthy Tetrault LLP
Taylor Wessing LLP
Uría Menéndez Abogados SLP
Wilson Sonsini Goodrich & Rosati PC

# SCHEDULE 1(j)

## Retail Customers

Abeliuk, Eduardo
Abuvala, Ravi Ryan
Adams, Darryl Thomas
Al Khoori, Mohamed Yousif Ahmed H.
Alexander, Alena
Ali, Khaleef
Ali, Yanush
AltCoinTrader Pty Ltd.
███████████
Andari Co. Ltd.
Ankeney, John Charles
Ashizaki, Yuki
███████████
Baer, Matthew David
███████████
Baslaib, Mohamed Ali Mohamed Naser
Bauman, Simon
Bennett, Danyal
Berg, Henry Guyer
Berrada, Amin
BJ Investment Holdings LLC
BNK to the Future
Boroff, Dustin Charles
Boskovski, Nikola
███████████
Bressler, David Jason
Brian T. Slater Revocable Living Trust
Bright, Nicolas John
Broad Reach Consulting LLC
███████████
Bru Textiles NV
Burkgren, Eric Alan
CAEN Group LLC, The
Campos, John Jr.
Carolyn Vincent Superannuation Fund
Carter, Luke Armstrong
Champigny, Edward William
███████████
Chiu, James Lee
Chiu, Yee Lai
Choi, Linda Yi
Choi, Luke Kyung Goo

Christiansen, Robert Nathan
Chu, Cindy
Chulamorkodt, Natakom
Chung, Ting Kong Terence
Cipolloni, Mark J.
███████████
Cohen Pavon, Roni
Coinmerce BV
███████████
Conklin, Jennifer Walter
Covario AG
Crypto10 SP
███████████
Damp, Steven Charles
███████████
Davis, Otis
Deferred 1031 Exchange LLC
███████████
Delargy, Colin C.
███████████
DGL Investments LLC
Dhiraj, Mandeep
DiFiore ASA Irrevocable GST Trust
Dixon, James
███████████
Donofrio, John
███████████
Druk Project Fund
Duprex, Jeffrey Paul
Ecko, Marc
Eller, Phillip Brian
Ellington, Brian
Elshafei, Ashraf
Eng Chuan, Liew
Eriks, Dennis
███████████
███████████
Fertik, Michael Benjamin Selkowe
███████████
Fletcher, Brett
Floatzen Doo
Garner, Phillip Wayne Jr.

[REDACTED]
Gatt, Raymond
Gilmer, George Hudson
Goh, Jian Kai
Gray, Jill Marie
Guljaš, Janoš
H Trussell Investments Pty. Ltd.
Halikias, Thomas T.
Hamilton, Nathan
Harrell, Ashley Anne
Hartley, James
[REDACTED]
Herring, Stephen Ashley
[REDACTED]
Ho, Quoc Tri
[REDACTED]
Holt, Jonathon James
HOME 007 LLC
[REDACTED]
Hughes, Stephen
Humphreys, Steven C.
Hunt, Bryan J.
ICB Solutions
InfoObjects Inc.
Invictus Capital Financial Technologies SPC
[REDACTED]
Jahizi, Oliver
Jensen, Joseph
Jonas, Leah Nicole
Joseph, Sebastian
Juiris, Peter Casimir
Kalynovskyi, Dmytro
Kap, Ethan Garet
Keiser, Marc Vito
Kelly, James Patrick
Kevin Batteh Trust, The
Kim, Sungyoun
King, Christopher Scott
Koala 1 LLC
[REDACTED]
Koyama, Osamu
Ku, Yuehsu
Labenek, Andrew
Lamplough, Howard

Langslet, Robert
Lehrfeld, Joseph S.
Lewis Davies, Ryan Wynn
Lewis, Howard
Liao, Guoping
Lim, Jane
Liu, Nanxi Nanqian
Luo, Edward
[REDACTED]
Mahoney, Justin Michael
Manea, Mircea
Manzke, Holger
Marchioni, John P.
[REDACTED]
Mastropieri, Bengi
Matsumura, Fumihiko
[REDACTED]
Mattina, Christopher W.
McCarty, John Edward
[REDACTED]
McGarry, Brian Thomas
McIntyre, Deverick
McKeon, Brian Joseph
[REDACTED]
McNeil, James W.
Meehan, Kristine M.
Mellein, John Gabriel
Mercola, Joseph Michael
Messall, Patrick
MHT Super Pty. Ltd.
Miller, Samuel Garfield, Jr.
Mohan, Arun
Moon, Wang Sik
Moser, Christopher M.
[REDACTED]
MSL Family Trust, The
[REDACTED]
Musumeci, Antonio
Narayanan, Swathi Lakshmi Tirupattur
Neiman, Gary
Neste, Bradley
Nguyen, Phuc
[REDACTED]
Pae, Mitchell Chon

Pagnanelli, Victor Carl
Palm, Travis John
██████████████
Paris Castle IV LLC
██████████
Patel, Shilla Natvarbhai
Patil, Abhitabh Aneel
██████████████
Pham, Khai Trinh
Phonamenon Management Group LLC
Pierce, James
Pierson, Justin T.
██████████
Plutus21 Blockchain Opportunities II SP
Plutus21 Blockchain Yield I SP
Pomeranz, Alex Aaron
██████████████
Pundisto, Lalana
Pusnei, Alexandru
██████████████
Reitz, Spencer Mcdowell
RHMP Properties Inc.
Ritter, David
Ritter, Linda J.
Ritter, Paul
Robert, Joseph Murdoch
Robinson, Andrew Douglas
Salera, Manuel
Schroeder, Jesse
Sese LLC
Shar, Stephen Phillip
Sidibe, Aissata
██████████████
Slater, Glen Brian
Sleeping1 LLC
Smith, David Silva
Smith, Nelson Courtney
Sondhi, Tarun
Souders, Jack Trayes
Stapleton, Paul
Steinborn, Steven Harold
Stevens, Daron Robert

██████████████
Stringer, Douglas Ross
Strobilus LLC
Sun, Siqi
Sutton, Sebastian
Swyftx Pty. Ltd.
Sypniewski, Christian
██████████
Tap Root LP
Thayer, Craig William
Thomas DiFiore Childrens GST Investment
   Irrevocable Trust
Tincher, Steven Jess
Tobias, Scott Jeffrey
██████████
Trebtow, Jens
Tremann, Christopher Ernest
Tuganov, Ignat
██████████
Tyler, Craig Edward
Ubuntu Love Pty. Ltd.
Valkenberg, Renaud
██████████
Vendrow, Vlad
██████████████
Vivas, Rafael
Wagner, Thomas Nichols
Walcott, Robert
Walkey, Thomas
Wang, Yidi
██████████
Wierman, Duncan Craig
██████████
Williams, Charles W.
Williams, Robert, II
Williamson, Hiram
Wiseman, Timothy
Wolf, Cody Lee
██████████████
Woodward, Laurie
██████████
Wu, Xinhan
Yao, Mark

██████████████████

Yeung, Tak H.

███████████

Young, John Martin
Yu, Byung Deok
Zhang, Xi
Zhong, Jimmy
Ziglu Ltd.
Zipmex Asia Pte. Ltd.
Zwick, Matthew James

# SCHEDULE 1(k)

### Top 50 Unsecured Creditors



Alameda Research Ltd.
AltCoinTrader Pty. Ltd.
B2C2 Ltd.

CAEN Group LLC, The

Covario AG
Crypto10 SP - Segregated Portfolio of
    Invictus Capital Financial Technologies
    SPC

Deferred 1031 Exchange LLC

ICB Solutions
Invictus Capital Financial Technologies SPC

Pharos Fund SP
Pharos USD Fund SP

Strobilus LLC

Ziglu Ltd

# SCHEDULE 1(l)

## Taxing Authority/Governmental/Regulatory Agencies

Alabama, State of, Securities Commission
Kentucky, Commonwealth of, Department of Financial Institutions
New Jersey, State of, Bureau of Securities
Texas, State of, Securities Board
United States, Government of the, Department of Justice
United States, Government of the, Securities & Exchange Commission
Washington, State of, Division of Securities

# SCHEDULE 1(m)

### Utilities

AT&T Inc.
Comcast Corp.
Cox Business Services LLC
EE Ltd.
Giffgaff Ltd.
Google Fiber Inc.
Hypercore Networks Inc.
Lightpath Fiber Enterprise Business Unit of Altice USA Inc.
Lumen Technologies Inc.
RingCentral Inc.
Spectrum Enterprises Inc.
Verizon Wireless Telecom Inc.

## SCHEDULE 1(n)

### Vendors

1-800 Flowers.com Inc.
1-800-GOT-JUNK? LLC
192 Business Experian
192 Business Ltd.
221B Partners
3 Verulam Buildings Barristers
4imprint Group plc
9Beach Latin American Restaurant LLC
A. Georgiou & Co. LLC
A1 Express Ltd.
A23 Boutique Hotel
A24 Ltd.
A2E
Abacus
Abacus Labs Inc.
ABF Freight System Inc.
Accretive Capital LLC
Acrion Group Inc.
Ada Support Inc.
Adobe Inc.
ADTRAV Corp.
Agile Freaks SRL-D
AgileEngine LLC
AGS Exposition Services Inc.
Ahrefs Pte. Ltd.
Ainsworth Inc.
Air Essentials Inc.
Air France-KLM SA
Air Serbia
Airspeed18 Ltd.
Akerman LLP
Akin Gump Strauss Hauer & Feld LLP
Alaric Flower Design
Alaska Air Group Inc.
Alba Invest Doo
ALCHEMIQ Catering
Alex Fasulo LLC
Algo Adtech Ltd.
AlgoExpert
Alitalia Compagnia Aerea Italiana SpA
AlixPartners LLP
Allianz Global Assistance SAS

Aloft Hotel Management Inc.
ALPHA Events Ltd.
AlphaGraphics Inc.
Amazon.com Inc.
American Airlines Group Inc.
American Family Connect Property &
    Casualty Insurance Co.
American Lock & Key Inc.
Amon Card Ltd.
Amon OU
Amplicy Ltd.
Amsalem Tours & Travel Ltd.
Andersen LLP
Any.Do Ltd.
Appbot
Apple Search Ads
Apple Search Advertisements
Apple Store
AppsFlyer Inc.
Aqua Kyoto Ltd.
Arlo SoHo Hotel
Arocon Consulting LLC
ArtDesigna
Ashby & Geddes
Aston Limo Service
AT&T Inc.
Athlonutrition S.S
Atlassian Corp. plc
Atom Exterminators Ltd.
August LLC
Auth0 Inc.
AutomationEdge Technologies Inc.
Avaya Inc.
AVL Services LLC
Azmi & Associates
B&C Camera
B&H Foto & Electronic Corp.
BambooHR LLC
Bamboozle Café
BCAS Malta Ltd.
BCL Search Inc.
Bellwood Global Transportation

Benjamin, The
Best Buy Co. Inc.
Best Name Badges
Big Cartel LLC
Bill.com Holdings Inc.
BIND Infosec Ltd.
Bionic Electronics HT Ltd.
BirchamsArt
BitBoy Crypto
Bitfinex
Bitfly Ltd.
Bitfo Inc.
BitGo Inc.
Bitmain Technologies Ltd.
Bittrex Global GmbH
Bitwave
Blacklane GmbH
Blackpeak Inc.
Blake & Co.
Block Solutions Sdn Bhd
Blockchair Ltd.
Blockdaemon Ltd.
BlockWorks Group LLC
Bloomberg Finance LP
Bloomberg Industry Group
Blue Edge Bulgaria EOOD
Blue Moon Consultants International Ltd.
Blue Rock Search LLC
BlueVoyant Israel Ltd.
Board Game Designs
Bob Group Ltd.
Bolt Food
Bookyourcovidtest.com
Boston Coach Corp.
Brave Software International
Brazen Head Irish Pub
Brendan Gunn Consulting Group
British Airways plc
Brooklyn's Down South
BrowserStack Inc.
BTC 2022 Conference
BTC Media LLC
Budget Rent A Car Ltd.
Bulwerks LLC
Bulwerks Security
█████████████

Buzzsprout
C Street Advisory Group
Cablevision Lightpath LLC
Calendly LLC
California, State of, Department of Financial
    Protection and Innovation
CAN Mouzouras Electrical Contractors
Canva Inc.
Caola Co. Inc.
Capitol Hill Hotel
Caplinked Inc.
Carey Executive Transport
Carithers Flowers
Carmo Cos.
Carta Inc.
Caspian Holdings Ltd.
CAYO Rafał Molak
CDPQ US Inc.
CDW Corp.
Chain of Events SAS
Chainalysis Inc.
Chamber of Digital Commerce, The
Chick-fil-A Inc.
Chief
█████████████
Cision US Inc.
CitizenM Operations Holding BV
Cleverbridge AG
Click and Play - Conteudos Digitais Lda
ClubCorp Holdings Inc.
CMS CMNO LLP
CoderPad Inc.
Coffee Distributing Corp.
Cogency Global Inc.
CoinDesk Inc.
Coinfirm Ltd.
Coinlend GmbH
CoinMarketCap OpCo LLC
CoinRoutes Inc.
College Investor LLC, The
Comcast Corp.
Compliance Risk Concepts LLC
Concorde Hotel Ltd., The
Consensus Sales Inc.
ConsenSys AG
Constantinou, Elpida

Consumer Technology Association
Contentful Inc.
Cooper Global Ltd.
Coppell FC
Core Club, The
Core Scientific Inc.
Corsair Gaming Inc.
Costco Wholesale Corp.
Coursera Inc.
Cox Business Services LLC
Creative Video Productions Ltd.
Creditor Group Corp.
Creel, Garcia-Cuellar, Aiza y Enriquez SC
Crelin Peck Consulting LLC
CRP Security Systems Ltd.
Crypto Fiend
Crypto Love
CryptoDailyYT Ltd.
CryptoRecruit Pty. Ltd.
CryptoWendyO
CSC
CT Corp.
C-Tech Constandinos Telecommunication
    Ltd. Co.
███████████████████
Curb Mobility LLC
CVS Pharmacy Inc.
Cyesec Ltd.
CYTA Ltd.
D'Albert, Matthew
Dalvey & Co.
Dan Hotels Ltd.
Daniel J. Edelman Inc.
Data Dash Inc.
Data4U Ltd.
Datapoint Surveying & Mapping
David Meltzer Enterprises
David Rabbi Law Firm
DBeaver
Dealex Moving LLC
Dearson Levi & Pantz PLLC
Decentral Media Inc.
DeepL SE
Del Friscos Grille
Delaware, State of Division of Corporations
Dell

Deloitte Tax LLP
Delta Air Lines Inc.
Demetriou, Adonis
Derriere's Gentleman's Club
Desk doo
Dezenhall Resources Ltd.
DHL
Digital Asset News LLC
Diplomat Resort, The
DNSFilter Inc.
Do Not Sit On The Furniture
Docker Inc.
DoiT International
DoiT International UK & I Ltd.
DoorDash Inc.
Dow Jones & Co. Inc.
Dragos DLT Consulting Ltd.
DRB Hosting Ltd. (Deribit)
Dream Hotels
Dribbble Holdings Ltd.
DSV AS
Dune Analytics AS
Dynasty Partners Ltd.
E.R. Bradleys Saloon
Eagle County Regional Airport
Ecrime Management Strategies Inc.
Edgewater Advisory LLC
EE Ltd.
Egon Zehnder International Inc.
El Al Israel Airlines Ltd.
Elements Massage Ltd.
Elite Marketing Group LLC
Elmwood Design Ltd.
Emanuel Clodeanu Consultancy SRL
Embassy Suites Hotels
Emirates Group, The
Enginuity on Call
EnjoyMaloy Trade Party
Enlightium Ltd.
ENSafrica
Enterprise Digital Resources Ltd.
Enterprise Rent-A-Car Co. Inc.
Epitome Capital Management Pty. Ltd.
████████████████
Estate of Edward W. Price, Jr.
Etsy Inc.

Eversheds Sutherland
EXDO Events Center
Expedia Group Inc.
Expo Group Inc, The
Exquisite Sounds Entertainment
EY
ezCater Inc.
Facebook
Fairmont Austin Lodging
FalbaSoft Cezary Falba
Falkensteiner Hotels & Residences
Fatal Ltd.
FatCat Coders
Fattal Hotels Ltd.
FedEx Corp.
Female Quotient LLC, The
Fibermode Ltd.
Filmsupply LLC
Financial Times Group Ltd.
FiNext Conference
FingerprintJS Inc.
Finnegan Henderson Farabow Garrett
    Dunner LLP
First Class Vending Inc.
Fixer.io
Flixel Inc.
Flonights Ltd.
Flowroute LLC
FluXPO Media
Flyday Consultancy
Forkast Ltd.
Forter Inc.
Frame.io Inc.
Freeman
Fromday-One BV
Frontend Masters
FSCom Ltd.
Fusion Bowls
G&TP Sweden AB
Gandi SAS
Gartner Inc.
GEA Ltd.
Gecko Labs Pte. Ltd.
Gecko Technology Partners Ltd.
GEM
Gett Inc.

Giftagram USA Inc.
Gila Dishy Life Coach LLC
Gilbert + Tobin
GitBook SAS
GitHub Inc.
GitKraken
GK8 Ltd.
Glovo
GoDaddy.com
Gogo Air International SARL
Goin' Postal
Google Ads
Google Cloud
Google Fi
Google Fiber
Google LLC
Google Play
Google Workspace
GoToAssist
Grammarly Inc.
GreyScaleGorilla
Grit Daily News
GrubHub Inc.
GuardianArc International LLC
H2Prod
Halborn Inc.
Hampton Inn
HanaHaus
Handel Group LLC
Harris-Harris Group LLC, The
Haruko Ltd.
Hattricks Tavern
Headway Workforce Solutions Inc.
Healthy Horizons Ltd.
Heathrow Express Operating Co. Ltd.
Hedgeguard
HeleCloud Ltd.
HelpSystems LLC
Henriksen-Butler Nevada LLC
Hertz Corp., The
Herzog Fox & Neeman
Highlight Films Ltd.
Hilton Worldwide Holdings Inc.
HireRight LLC
HMRC Shipley
Holland & Knight LLP

Home Depot Inc., The
Hootsuite Inc.
Horasis
Hotel Da Baixa Prata Lda.
Hotel Majestic
Hotel Midtown Atlanta
Hotels.com
Hudson Standard, The
Hyatt Hotels Corp.
Hysolate Ltd.
I.A.M.L Ltd.
Ideal Communications Inc.
Idemia Group SAS
Illumiti Corp.
Incorporating Services Ltd.
Indian Eagle
Information, The
Infura Inc.
InGenie Ltd.
Innovatica LLC
Inside.com Inc.
Insider Inc.
Insperity Inc.
Instacart
Integrated Security & Communications Inc.
Intelligo Group USA Corp.
Intercontinental Hotel Group plc
Intercontinental Miami
Intertrust NV
Intuit Inc.
InvestAnswers
ip-api
IPQualityScore
IST NY Inc.
Iterable Inc.
Ivan on Tech Academy
Jackson Lewis LLP
Jaffa Hotel, The
JAMS Inc.
Jarvis Ltd.
JB Hunt Transport Services Inc.
JetBlue Airways Corp.
JetBrains sro
Joberty Technologies
John Lewis & Partners
JSC Royal Flight Airlines

Juliet International Ltd.
Jumpcut 3D
Juniper Office
Junk Masterz LLC, The
Junkluggers LLC, The
JV Associates Inc.
K.F.6 Partners Ltd.
Kairon Labs BV
KALC LLC
Kanoo Pays
Keeper Security
Kenetic Trading Ltd.
Kerry Hotel HongKong
KeyFi Inc.
Kforce Inc.
Kif, Evgeni
Killian Firm PC, The
Kimpton Surfcomber Hotel
KINTSUGI, Unipessoal Lda.
Knobs BAC
Kohl's
Korn Ferry
Koutra Athos Sotiris
Krispy Kreme
Kroll Advisory Ltd.
L&L Moving Storage & Trucking LLC
La Maison Favart
████████████
Las Vegas Window Tinting
Latham
LaunchDarkly
Lawn Care
LawnStarter
Leaa
Left House, The
Lima, Esther
Line Group
LinkedIn Corp.
LinkedIn Ireland Unlimited Co.
Lithify Ltd.
Locate852
Loews Hotels
Logitech
Logshero Ltd.
Logz.io
LS Future Technology AB

Lucidchart
Lucille's Smokehouse Bar-B-Que
Lufthansa Deutsche
Lumen
Lunar Squares
LVC USA Inc.
Lyft
Madison Liquidators
MadRev LLC
Makarim & Taira S.
Maltego Technologies
Mambu Tech BV
Mammoth Growth LLC
Mandarin Oriental Hotel
Manhattan Bagel
Manzo's Suites
Maren Altman FZCO
Marios Locksmith Ltd.
Marriott Hotels & Resorts
Marsh USA
Maxon Corp.
Mayami Mexicantina
Mazars LLP
Mazars Ltd.
McCarthy Tetrault LLP
McLagan Partners Inc.
MCM 965
mDesign Holdings Ltd.
MediaOne Partners
Melio
Memorisely
Metropol Palace
MF Partners Ltd.
MFA Network
MGM Grand Hotel LLC
Miami Beach Convention Center
Michael Page International Inc.
Michaels Cos. Inc., The
Microsoft Azure Inc.
Microsoft Corp.
Million Roses, The
MINDS
Minuteman Press International Inc.
Mixed Analytics
Mixpanel Inc.
Momentum Media Group

Monarch Blockchain Corp.
Monday.com Ltd.
MOO Print Ltd.
Moralis Academy
Morris Manning & Martin LLP
Moschoulla Patatsou Christofi
Motion Array
Motion Design School Co.
Move 4 Less LLC
MTA SpA
Music 2 the Max
MVP Workshop
Myers-Briggs & Co. Inc.
MythX
Namecheap Inc.
National Office Interiors & Liquidators
National Railroad Passenger Corp.
Nationwide Multistate Licensing System &
    Registry
Navex Global Inc.
NBC Universal
Necter
Nevada Sign
New Spanish Ridge LLC
New York Times Co., The
Next Web Events BV, The
NextGenProtection
NICE Systems UK Ltd.
Nico Signs Ltd.
NordLayer
Nordlogic Software SRL
Nordstrom Inc.
Nossaman LLP
Notability Partners
Notarize
Nothing Bundt Cakes
Nuri
NuSources
Nyman Libson Paul LLP
OAKds Inc.
Ocean View Marketing Inc.
Office Depot
Office Movers Las Vegas
Office Star B2B Ltd.
OfficeSpace Software Inc.
OfficeVibe

OKEx
Onchain Custodian Pte. Ltd.
Onfido
Onfido Inc.
Onfido Ltd.
Optimizely Inc.
Oracle Corp. UK Ltd.
Otter.ai
OVF Customer.io LLC
PABXL
Pack & Send
Paddle
Pagliara Entertainment Enterprises LLC
Palantir Security Ltd.
Panasonic Avionics Corp.
Panera Bread
Panorays Ltd.
Papaya Global HK Ltd.
Park MGM Las Vegas
Park Plaza Hotels
Parklane Resort & Spa
Party City
Paxful Inc.
Payplus by Iris
Payplus Ltd.
Peas Recruitment Ltd.
Peninsula Business Services Ltd.
Phase II Block A South Waterfront Fee LLC
Photo Booth Vending
Plaid Inc.
Pluralsight Inc.
Polihouse Boutique Hotel
Polyrize Security Ltd.
Portswigger Ltd.
Postman Inc.
Postmates Inc.
Practising Law Institute Inc.
Premaratne, Inesha
Premier Due Diligence LLC
Premium Beat
Prescient
PRG U.S. Inc.
Print Hoboken LLC
Printful Inc.
Priority Power
Pro Blockchain Media LLP

Proof of Talent LLC
Protect Operations Ltd.
PSE Consulting Engineers Inc.
PSJ Kanaris Enterprises Ltd.
PTI Office Furniture
PubliBranco
Pure Marketing Group Corp.
Puressence Ltd.
Quality Inn & Suites Hotel
Quantstamp Inc.
Quoine Pte. Ltd.
RA Venues at Churchill War Rooms
Rails Tech Inc.
Real Vision Group
Rebecca Sweetman Consulting Ltd.
Reddit Inc.
Redk CRM Solutions Ltd.
Reflectiz Ltd.
Regus Management Group LLC
reMarkable AS
Residence Inn
Resources Global Professionals
Restream.io
Retool Inc.
Rever Networks Inc.
RFO Conferences Organizing LLC
RingCentral Inc.
Ritz-Carlton, The
Rosewood Hotel & Resorts LLC
Rothschild TLV
Royal Mail plc
Royalton Hotel
Sabana Labs SL
Saffron Indian Cuisine
Saint Bitts LLC
Sam's Club
Sam's Limousine & Transportation Inc.
SAP America Inc.
Schoen Legal Search
ScraperAPI
Seamless
SecureDocs Inc.
Securitas Security Services USA Inc.
Segment Inc.
Selfridges
SendSafely

Sentry
Sevio FZC
SewWhatAndWear
Sheraton Hotels
Shutters on the Beach
Shutterstock
Silhouette Building, The
Similarweb Inc.
SJP Properties General Construction
Sketch BV
Skew Ltd.
Slack Technologies LLC
SlideTeam
Small Pocket Video
Smart City Networks LP
Smartcontract Inc.
SMSF Association
Snowflake Inc.
So & Sato Law Office
Soho Beach House
SolarWinds
███████████████
SonarSource
South City Kitchen
Southwest Airlines
Sovos Compliance
SP V1CE Ltd.
Spears Electric
Spectrum
Sponsor United
Sports1ternship LLC
SpotHero
Standard Restaurant Equipment Co.
Staples
Starbucks
Statusgator
Stephanos Greek & Mediterranean Grill
Stuart Tracte Photography
Studio ViDA
Sublime HQ Pty. Ltd.
SuperSonic Movers LLC
Surety Solutions
Swag.com
Swept Cleaning Service of Austin
Swiss International Air Lines Ltd.
SXSW LLC

Synapse Florida
Syndic Travel
TAAPI.IO sro
Tableau Software LLC
Talking Cocktails
Tampa Printer
Target Corp.
TaskRabbit
TaxBit Inc.
Taylor Wessing LLP
TCL Publishing Ltd.
Teamz Inc.
Tembo Embroidery & Custom Merchandise
Ten Manchester Street Hotel
Tenderly doo
Terra Panonica
TET Events LLC
Thimble Insurance
Thomson Reuters
Thunderclap LLC
Titan Office Furniture Ltd.
T-Mobile US Inc.
TokenTalk Ltd.
Toll Free Forwarding
Toolfarm
Towers Watson Ltd.
Trade Group Inc., The
TradingView Inc.
TransUnion
Trash Cans Warehouse
TRD Comm
Trello Inc.
Trovata Inc.
Trustpilot Inc.
TubeBuddy
Turkish Airlines
Twenty84 Solutions
Twilio Inc.
Twitter Inc.
Uber
Uber Eats
Udemy Inc.
Uline Inc.
Unbound Tech Ltd.
Unifire Extinguishers Ltd.
United Airlines

University Arms Hotel
Unstoppable Domains Inc.
UPS
Upstager Consulting Inc.
UrbanStems Inc.
USA Strong Inc.
UsabilityHub Pty. Ltd.
UsaStrong.io
USPS
V3 Digital Ltd.
Valere Capital
Vanguard Cleaning Systems of Las Vegas
Varonis Systems Inc.
VCU Blockchain
Vercel Inc.
Verified First LLC
VerifyInvestors.com
Verizon Wireless
Vert & Blanc Enterprises Ltd.
Viasat Inc.
Virtru Corp.
Virtual Business Source Ltd.
Virtually Here For You Ltd.
Vivid Edge Media Group
Volta Systems Group
VoskCoin LLC
VSECNOW Ltd.
Walgreens Boots Alliance Inc.
Wall Street Journal
Walmart Inc.
Warwick Hotel Ltd.
Wayfair Inc.
WCEF LLC
West Coast Pure Water LLC
WestCap Management LLC
Whirling Dervish Productions
Wilde Aparthotels
Wings Hotel, The
Wintermute Trading Ltd.
Wolf Theiss
Wolt
Wolters Kluwer NV
Workland
Workspace Management Ltd.
World Economic Forum
WP Engine Inc.

Wyndham Hotels & Resorts Inc.
Wynn Las Vegas
Yellowgrid
yellowHead Ltd.
Yohann
YouTube Premium
Zapier.com
Zegans Law Group Pllc, The
Zendesk Inc.
Zeplin Inc.
Zoho Corp.
Zoom Video Communications Inc.
Zubtitle LLC
Zuraz97 Ltd.

# SCHEDULE 1(o)

## U.S. Trustee Personnel, Judges, and Court Contacts for the Southern District of New York

Abriano, Victor
Arbeit, Susan
Beckerman, Lisa G.
Bruh, Mark
Chapman, Shelley C.
Cornell, Shara
Drain, Robert D.
Gannone, James
Garrity, James L., Jr.
Glenn, Martin
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Jones, David S.
Joseph, Nadkarni
Lane, Sean H.
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morris, Cecelia G.
Morrissey, Richard C.
Ogunleye, Alaba
Riffkin, Linda A.
Rodriguez, Ilusion
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Velez-Rivera, Andy
Vescovacci, Madeleine
Wells, Annie
Wiles, Michael E.
Zipes, Greg M.

## **SCHEDULE 2**

**Engagements with Potential Parties in Interest**

## Potential Connections or Related Parties[1]

- In the ordinary course of its financial advisory practice, M3 Advisory Partners, LP (formerly named M-III Advisory Partners, LP) or its senior professionals (collectively, "M3") have recently had and/or currently have relationships with various law firms, accounting firms, financial advisory firms, and other professionals and service providers, as well as affiliates of any of the foregoing (each, an "Ancillary Entity") who are listed on Schedule I as parties-in-interest in these proceedings. Such relationships have included, among other things, M3 or its senior professionals serving as an advisor to clients in engagements where (i) such client was or is represented by one or more Ancillary Entities or (ii) one or more Ancillary Entities has represented or currently represents one or more parties-in-interest who are not clients of M3. The entities shown on Schedule I who constitute (or whose affiliates constitute) Ancillary Entities include, without limitation, Akerman LLP, Akin Gump Strauss Hauer & Feld LLP, Alix Partners LLP, Alvarez & Marsal, Centerview Partners, Deloitte Tax LLP, Eversheds Sutherland (US) LLP, Ernst & Young, Holland & Knight, Jackson Lewis PC, Kirkland & Ellis LLP, Latham & Watkins LLP, Mazars LLP, McCarthy Tetrault LLP, Stretto, White & Case LLP and Wilson Sonsini Goodrich & Rosati. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have (except in the case of White & Case LLP) been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 currently purchases or recently has purchased goods and services in the ordinary course of business and in the open market from vendors who are listed on Schedule I as parties-in-interest to these proceedings. Similarly, clients of M3, and debtors and parties-in-interest with respect to matters in which M3 is currently involved or recently has been involved in various capacities, also purchase or recently have purchased, or sell or recently have sold, goods and services in the ordinary course of business and in the open market from or to certain of the persons and entities listed on Schedule I as parties-in-interest to these proceedings. To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 has been retained on a confidential basis by a law firm that is representing a special committee of the Board of Directors of a company listed on Schedule I as a "Vendor" with respect to matters relating to the reasonableness of the market terms of certain securities. To the best knowledge of the senior professionals at M3 on the date hereof, such relationship is

---

[1] References in this Schedule to parties-in-interest with which M3 currently has or recently has had relationships in any category described above are not exclusive and the party-in-interest or an affiliate thereof also may have other relationships with M3 in the same or other categories without specific identification. All disclosures contained herein are made to the knowledge of M3 based upon parties-in-interest disclosures provided in various engagements and other information of which the senior professionals at M3 have actual knowledge. For purposes of this Schedule, the term **Persons** shall include natural persons and entities.

unrelated to the Debtors, does not create interests adverse to the Debtors and is not in connection with these proceedings.

- M3 currently serves or recently has served as a financial advisor to various entities which have purchased, or currently purchase, insurance (including, without limitation, health and similar insurance), employment benefits services, or utilities from, or recently have been or are subject to the taxing or other regulatory authority of, entities who are listed on Schedule I as parties-in-interest to these proceedings.   In addition, M3 itself purchases or has recently purchased insurance, employments benefits services or utilities from, or is or recently has been subject to the taxing or other regulatory authority of, entities who are listed on Schedule I as parties-in-interest to these proceedings.  To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- M3 currently is providing advisory services, and the Managing Partner of M3 (Mohsin Y. Meghji) currently is serving as Chief Restructuring Officer, for two companies and certain of their respective affiliates (Sears Holdings Corporation and PWM Property Management LLC) which are currently in bankruptcy and for which Alan Jeffrey Carr serves as a director.  To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- In the ordinary course of its business, M3 provides services to entities currently or recently conducting, or involved in, bankruptcy proceedings in various federal bankruptcy courts in the United States or otherwise having business before the United States Department of Justice, the Securities and Exchange Commission or the securities regulators of various States.   In connection with these proceedings, M3 interacts with Judges of the United States Bankruptcy Courts and personnel of the Office of the United States Trustee in various jurisdictions, including, without limitation, those of the Southern District of New York.  To the best knowledge of the senior professionals at M3 on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

## **EXHIBIT C**

**Engagement Letter**

AMERICAS 116644342 v10



August 1, 2022

Official Committee of Unsecured
    Creditors of Celsius Network LLC
c/o White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Attention:  Gregory F. Pesce, Esq.

<u>Engagement Letter</u>

Ladies and Gentlemen:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement (the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined below) to the Official Committee of Unsecured Creditors (the "***Client***") of Celsius Network LLC (together with its affiliates that now or hereafter may be debtors in the Cases described below, the "***Debtors***").  M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

1.  <u>Services</u>:  The Client hereby retains M3 to provide, and M3 hereby agrees to provide, the following services (the "***Services***") in connection with the bankruptcy cases and proceedings (the "***Case***") of the Debtors upon the terms and subject to the conditions set forth in this Agreement:

(a)  Assistance in the analysis, review and monitoring of the restructuring process, including, but not limited to an assessment of potential recoveries for general unsecured creditors or other parties in interest;

(b)  Assistance in the review of financial information prepared by the Debtors, including, but not limited to, cash flow projections and budgets, business plans, cash and crypto receipts and disbursement analysis, asset and liability analysis, and the economic analysis of proposed transactions for which approval of the Court (as defined below) is sought;

(c)  Assistance in the review of the Debtors' prepetition capital structure, financing agreements, defaults under any financing agreement and forbearances;

(d)  Assistance in the review of the Debtors' cash management, tax sharing and intercompany accounting systems, practices and procedures;

(e)  Assistance with the review of the Debtors' analysis of core and non-core business assets, the potential disposition or liquidation of the same, and assistance regarding the review and assessment of any sales process and bids relating to same, and (upon request) attendance at any meetings with bidders or auction;

(f)    Assistance in the review and/or preparation of information and analysis necessary for the preparation, proposal and confirmation of, or objection to, a plan of reorganization and related disclosure statement in connection with the Case;

(g)    Attendance at meetings and assistance in discussions with the Debtors, potential investors, banks, other lenders, the Client and any other official committees organized in the Cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(h)    Assistance in the review of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(i)    Assistance with the review of the Debtors' cost/benefit analysis with respect to the affirmation or rejection of various executory contracts and leases;

(j)    Assistance in the evaluation, analysis and forensic investigation of avoidance actions, including fraudulent conveyances and preferential transfers and certain transactions between the Debtors and affiliated entities;

(k)    Assistance in the review, evaluation and/or prosecution of the Client's motions and the Client's responses/objections to the Debtors' motions, including attendance at depositions and provision of expert reports/testimony on Case issues as required by the Client;

(l)    Attend Client meetings and court hearings as may be required in the role of advisors to the Client and requested by the Client;

(m)    Render such other general business consulting or such other assistance as the Client or its counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding;

(n)    Assistance and support in the evaluation of restructuring and liquidation alternatives;

(o)    Such other assistance as is ancillary to the above; and

(p)    Such other assistance as M3 and the Client shall mutually agree in writing.

2.    <u>Engagement Term</u>.  The Engagement commenced as of August 1, 2022, subject to execution of this Agreement, and may be terminated by either Party at any time upon ten business days' written notice.  Notwithstanding the foregoing, the Engagement shall terminate upon the dissolution of the Client as provided under applicable bankruptcy law.  Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.



3.  <u>Court Approval</u>.  This Agreement is subject to the entry of an order (the "***Order***") of the court having jurisdiction over the Case (the "***Court***") approving the retention of M3 pursuant to the terms hereof and, until such order has been entered by the Court and is effective and non-appealable, M3 shall have no obligation to provide any Services hereunder.  The Client will use its best efforts to ensure that the Court authorizes the Debtors to honor their obligations under this Agreement, including all indemnification obligations hereunder (including those set forth in Annex I to this Agreement) and payment by the Debtors of all amounts owing to M3 hereunder in accordance with the terms hereof.  The Client shall use commercially reasonable efforts to obtain prompt authorization of the retention of M3, effective as of August 1, 2022, on the terms and provisions in this Agreement.  The Order shall be acceptable to M3 in its reasonable discretion.  In seeking M3's retention, the Client acknowledges and agrees that M3's restructuring expertise was an important factor in determining the amount and terms of the various fees set forth herein and that the various fees payable to M3 hereunder are reasonable and appropriate in light of the experience of M3, the time commitment required to perform the Services, the staffing requirements for the Engagement (including the fact that workloads will vary from week to week and that M3 will need to be prepared to provide services during "peak demand" periods) and the opportunity cost to M3 of such a commitment.

4.  <u>Staffing</u>.  M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement.  The individual members of the team are subject to change by M3 from time to time in its sole discretion.  M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

5.  <u>Compensation for Services</u>.  (a)  Except to the extent otherwise expressly provided by the Order, M3's compensation for Services rendered under this Agreement shall be paid by the Debtors by wire transfer of immediately available funds (in accordance with instructions provided from time to time by M3 to the Debtors) and will consist of the following:



(i)    Service Fees:  As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the Engagement (the "**Service Fees**").  The Service Fees shall be based upon the following hourly rates:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

The Service Fees shall be billed and paid in accordance with the provisions of Section 5(b) below.  From time to time in the normal course of business M-3 may adjust its billing rates upon notice to the Client and the Debtors.

(ii)    Expenses:  In addition to any compensation for providing the Services, the Debtors shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs) to be billed and paid in accordance with the provisions of Section 5(b) below.  Any request for reimbursement of an out-of-pocket expense in excess of $100 must be supported by a reasonable back-up for each expense (to be provided upon demand) and as otherwise required by applicable law.

(b)    M3 will submit to the Court monthly fee applications for all Services rendered and all expenses incurred during the prior month, as well as interim and final fee applications.  It is M3's understanding that all amounts owing to M3 under this Agreement (including, without limitation, those related to indemnification) shall be paid by the Debtors (on a joint and several basis) subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules of the Court, and pursuant to any additional procedures that may be established by the Court specifically for this matter.  In the event that M3's invoices are not paid in accordance with their terms and the fee application process provided by the Court, M3 shall have the right to terminate or suspend the Engagement and the performance of the Services.  In such event, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension and the Debtors will be responsible for any costs, including legal fees, associated with the collection of outstanding and overdue fees and expenses.  Under no circumstances shall the Client, the Client members or any of the Client's professionals incur any payment obligation (including, without limitation, those related to indemnification) M3 under this Agreement, with it being understood that the Debtors shall be responsible for the payment of all such amounts.



(c)     The Client hereby acknowledges that M3 shall bill for the Service Fees hereunder based upon hours incurred by M3 in providing the Services and that payment of the Service Fees and other amounts owing hereunder shall not be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters. All Service Fees payable to M3 are exclusive of taxes or similar charges (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3). M3 shall have the right to seek compensation and reimbursement of expenses for defending a challenge to its monthly statements and fee applications subject to applicable law.

6.  <u>Cooperation from Client</u>.  In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and its other professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying M3 of any issues or concerns that the Client may have relating to the Services.  The Client will provide M3 with (a) to the extent available to the Client, full access to all personnel, books and records of the Debtors and (b) full access to all advisors and professionals retained by the Client.  The Client also shall use best efforts to make workspaces and data connectivity at the Debtors' offices available to M3 on an as-needed basis.  The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and its management.  M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client failing to properly fulfill its responsibilities under this Agreement.

7.  <u>Deliverables</u>.  (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***").  The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available.  The Client acknowledges that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)  Any materials prepared by M3 are solely for the confidential use of the Client and its advisors and will not be distributed, reproduced, summarized, referred to, disclosed publicly or given to any other person without the prior written consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by applicable law or by order or act of any court or governmental or regulatory authority or body.

(c)  The provisions of this Section shall survive the termination or expiration of this Agreement.

8.  <u>Limitations on Services</u>.  (a)  The Services are limited to those specifically noted in this Agreement.

(b)  M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related



assistance. The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3. M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement. The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client or the Debtors to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client or the Debtors.

(c) The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Debtors' financial projections; *provided*, *however*, that M3 will, upon request, review the Debtors' financial projections and provide its good faith comments thereon. The Services are provided based upon the understanding that the Client has sole responsibility for its and the Debtors' financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. To the extent that, during the performance of Services hereunder, M3 is required to consider the Client's or the Debtors' financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures. There will usually be differences between projected and actual results, and those differences may be material. The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(b) M3 does not provide investment advice and the Services shall not include the provision of investment advice. The Client shall have sole responsibility for all investment decisions made by it. Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client. Although M3 may from time to time suggest or recommend options that may be available to the Client, the ultimate decision with respect to such options rests with the Client and the Client shall be solely responsible for such decision and its outcome. M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client.

(d) To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client or any Debtor is or may become a party.



(e)  The Client shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it.  M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(f)  The provisions of this Section shall survive the termination or expiration of this Agreement.

9.  <u>Non-Solicitation</u>.  [Reserved].

10.  <u>Confidentiality</u>.  (a)  Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity.  For the avoidance of doubt, the term "Confidential Information" shall include (i) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (ii) any work product relating to the business of either Party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.  Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information.  In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.

(b)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.  M3 may make reasonable disclosures of Confidential Information to third parties to the extent that M3 reasonably believes that such disclosure is consistent with its performance of the Services.

(c)  The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

11.  <u>Intellectual Property</u>.  Upon payment in full of all amounts owing to M3 hereunder, the Client will own all Deliverables furnished by M3 to the Client in connection with the Services,



*provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "***M3 Tools***"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools. To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement.  The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose.  The provisions of this Section shall survive the termination or expiration of this Agreement.

12. <u>Indemnification</u>.  The Debtors will indemnify and hold harmless the Indemnitees (as defined in Annex I to this Agreement) to the extent described in Annex I to this Agreement, with such Annex I being incorporated herein by reference and constituting an integral and enforceable part of this Agreement.  The provisions of this Section (including, without limitation, the provisions of Annex I) shall survive the termination or expiration of this Agreement.

13. <u>Limitation on Damages</u>.  In no event shall M3 or any other Indemnitee be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's agents and security holders, as well as creditors of the Debtors who are represented by the Client) for (i) any amount which, when taken together with all losses for which M3 and the Indemnitee are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Debtors (on behalf of the Client) in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "***Liability Cap***").  This paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law.  For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other Indemnitees in the aggregate for any and all claims or demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement.  Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap.  Under no circumstances shall the collective liability of M3 and the other Indemnitees in connection with this Agreement exceed the Liability Cap.  The provisions of this Section shall survive the termination or expiration of this Agreement.



14. <u>Client Acknowledgement</u>.  The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client, its members or the Debtors; *provided* that the services provided to other clients are unrelated to the Debtors, do not create interests adverse to the Debtors or the Committee and are not in connection with the Case.

15. Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client.  Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement.  M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client. The provisions of this Section shall survive the termination or expiration of this Agreement.

16. <u>Miscellaneous</u>.  (a)  This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the Parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b)  The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction.  If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

(c)  M3's Services hereunder are personal in nature and may not be assigned without the written consent of the Client.  The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement.  The provisions of this paragraph (e) shall survive the termination or expiration of this Agreement.



This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By: _____
      Name:  Mohsin Y. Meghji
      Title:  Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

The Official Committee of Unsecured Creditors of
Celsius Network LLC

By: _____
      Name:  Scott Duffy
      Title:  Authorized Signatory, ICB Solutions Inc.
      Title:  Co-Chair of the Committee



This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By:_____
    Name:  Mohsin Y. Meghji
    Title:  Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

The Official Committee of Unsecured Creditors of
Celsius Network LLC

By: *Scott Duffy*
    Name:  Scott Duffy
    Title:  Authorized Signatory, ICB Solutions Inc.
    Title:  Co-Chair of the Committee



Annex I

AGREEMENTS REGARDING INDEMNIFICATION

In consideration of M3 performing the Services for the benefit of the Client, the Debtors (the "***Indemnitor***") shall, on a joint and several basis, indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***Indemnitees***") against all costs, fees, expenses, damages, and liabilities (including defense costs) associated with any pending or threatened claim, action, proceeding or investigation (a "***Claim***") relating to or arising as a result of the Engagement or the provision of the Services, the Client's use or disclosure of the Deliverables, or this Agreement ("***Losses***").  This provision is intended to apply regardless of the nature of any Claim (including contract, statute, any form of negligence, whether of the Client, M3, or others, tort, strict liability or otherwise), except to the extent such Losses are determined by a final and non-appealable judgment of a court of competent jurisdiction to be the result of M3's bad faith, gross negligence or willful misconduct.

The Indemnitor shall not, without M3's prior written consent (which will not be unreasonably withheld) settle, compromise, or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnity may be sought hereunder (whether or not M3 or any other Indemnitee is an actual or potential party to such Claim), if such settlement, compromise, or consent does not include an unconditional release of each Indemnitee from all liability arising out of such Claim; *provided*, *however*, that the Indemnitor shall not enter into any such settlement, compromise or consent of a Claim without M3's prior written consent (which may be granted or withheld in M3's sole discretion) if such settlement, compromise or consent provides for injunctive relief against an Indemnitee or an admission of liability by an Indemnitee or would require payment of any amount by an Indemnitee or any insurer of an Indemnitee.  The Indemnitor shall not be liable hereunder to any Indemnitee for any amount paid or payable in the settlement of any action, proceeding or investigation entered into by such Indemnitee without the Indemnitor's written consent.

Upon receipt by an Indemnitee of actual notice of a Claim against such Indemnitee in respect of which indemnity may be sought hereunder, such Indemnitee shall promptly notify the Indemnitor with respect thereto.  In addition, an Indemnitee shall promptly notify the Indemnitor after any action is commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against such Indemnitee in respect of which indemnity may be sought hereunder.  In any event, failure to notify the Indemnitor shall not relieve the Indemnitor from any liability which the Indemnitor may have on account of this indemnity or otherwise, except to the extent, and only to the extent, that the Indemnitor shall have been materially prejudiced by such failure.

Indemnitor shall advance all expenses indemnifiable hereunder that are reasonably incurred by or on behalf of each Indemnitee in connection with any Claim within thirty (30) days after receipt by Indemnitor of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Claim.  Such statement or statements shall reasonably evidence the expenses incurred by Indemnitee and shall include or be

preceded or accompanied by a written undertaking by or on behalf of Indemnitee to repay any expenses advanced if it shall ultimately be determined by a final and non-appealable judgment of a court of competent jurisdiction that Indemnitee is not entitled to be indemnified against such expenses. Any advances and undertakings to repay pursuant to this paragraph shall be unsecured and interest free.

To the extent that the Indemnitor so elects, it shall be entitled to assume the defense, with counsel selected by the Indemnitor (and approved by M3, with such approval not to be unreasonably withheld), of any action that is the subject of the Claim in respect of which indemnity may be sought. After notice to the Indemnitees of its election to assume the defense thereof, the Indemnitor will not be liable to the Indemnitee under this Agreement for any expenses subsequently incurred by such Indemnitee in connection with the defense thereof except as otherwise provided below. Such Indemnitee shall have the right to employ counsel of its choice in such Claim, but the fees and expenses of such counsel incurred after notice from the Indemnitor of the assumption of the defense thereof shall be at the expense of the Indemnitee unless the employment of counsel by the Indemnitee has been authorized by the Indemnitor, in which case the reasonably incurred fees and expenses of such counsel of the Indemnitee shall be at the expense of the Indemnitor.

The Client agrees that neither M3 nor any other Indemnitee shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client or any person or entity asserting claims on behalf of or in right of the Client caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, except for losses, claims, damages, penalties or liabilities incurred by the Client which are finally determined by a non-appealable judgment of a court of competent jurisdiction to have resulted primarily and directly from the bad faith, willful misconduct or gross negligence of M3 or any such other Indemnitee, as the case may be. In no event, however, shall M3's or any other Indemnitee's liability to the Client or their respective affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) exceed the Liability Cap.

In the event that any M3 personnel are requested or required to appear as a witness in connection with any claim, action or proceeding relating to or arising as a result of the Engagement or the provision of the Services, the Client's use or disclosure of the Deliverables, or this Agreement, the Indemnitor shall, to the extent permitted by applicable law, reimburse M3 for all reasonable and documented out-of-pocket expenses incurred by it in connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the reasonable and documented fees and disbursements of its legal counsel, and to compensate M3 at a rate equal to M3's then standard hourly rate for the relevant personnel for each day that such personnel is involved in preparation, discovery proceedings or testimony pertaining to such Claim. Additionally, M3 will have the right to obtain advice from independent legal counsel with respect to its actual or potential obligations and liability hereunder and the Indemnitor will promptly reimburse M3 for the reasonable out-of-pocket fees and expenses paid by M3 on account thereof.

The provisions of this Annex I shall be deemed to be an integral part of this Agreement to which this Annex I is affixed and shall survive the termination or expiration of this Agreement for any



reason.  The provisions of this Annex I shall be binding upon the Client, the Indemnitor and its successors and assigns.

