WILLIAM K. HARRINGTON
United States Trustee
U.S. Department of Justice          **Hearing Date**: September 1, 2022
Office of the United States Trustee  **Hearing Time**: 10:00 a.m.
201 Varick Street, Room 1006
New York, NY 10014
Tel. (212) 510-0500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
*In re*                                           : Chapter 11
                                                  :
CELSIUS NETWORK LLC., *et al.*,[1]                : Case No. 22-10964 (MG)
                                                  :
                           Debtors.               : (Jointly Administered)
------------------------------------------------- x

### OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' MOTION PURSUANT TO SECTION 107 OF THE BANKRUPTCY CODE SEEKING ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION FROM THE CREDITOR MATRIX, SCHEDULES AND STATEMENTS, AND RELATED DOCUMENTS

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), through his counsel, files this Objection (the "Objection") to the motion (the "Motion") of Celsius Network LLC, *et al.* (the "Debtors") for the entry of an order authorizing the Debtors to redact certain personally identifiable information from the Creditor Matrix, Schedules and Statements, and Related Documents [ECF Doc. No. 344]. In support thereof, the United States Trustee respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

1

**PRELIMINARY STATEMENT**

The Debtors seek broad authority to redact the Creditor Matrix, Schedules and Statements, and any other related filings – with seemingly no limitations as to the breadth of what will be redacted. The Debtors, however, do not and cannot rely on any exceptions to the general rule that bankruptcy proceedings should be open, public, and transparent.

Disclosure is a basic premise of bankruptcy law. Indeed, it is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised. This is particularly important in these cases, wherein the lack of transparency has led to extreme creditor and customer distrust in the Debtors. The Bankruptcy Code contains very limited and specific exceptions to the general rule that bankruptcy proceedings should be open and transparent. Moreover, the movant must demonstrate extraordinary circumstances and a compelling need to obtain protection to justify any such request. Here, with nothing more than vague statements supporting the request, the Debtors seek extremely broad authority to conduct a significant portion of the bankruptcy case under seal. If the Motion is granted, the ability of interested parties to evaluate the Debtors and their bankruptcy process and to communicate and find each other[2] will be significantly curtailed.

In addition to creating highly unfavorable precedent in this and other crypto industry cases in American bankruptcy courts, allowing the Debtors to file incomplete Schedules and Statements is a slippery slope. The information required to be filed in the Schedules and Statements is statutory and is required by the Bankruptcy Code, Bankruptcy Rules, and the Local Rules. To date, the Debtors have already added their professional retention applications to the list of documents that are allegedly "related" and should be redacted. That begs the question . . . Will

---

[2] To date, approximately 350 letters from creditors have been filed on the electronic docket. *See* Cornell Declaration at ¶ 3.

2

all service lists be filed under seal too? Do the Debtors intend to conduct all of their claim objections under seal? Will certain creditors' treatment in a plan be redacted? Will objections to the disclosure statement and confirmation also be sealed? Will the proceedings in this case, including hearings before the Court, have to be repeatedly closed?

It is well-settled that, as a matter of promoting the integrity of the judicial system, bankruptcy proceedings must be open and transparent. Accordingly, the Debtors' request should be denied.

**FACTS**

**A. The Filing of the Bankruptcy**

1. On July 13, 2022 (the "Petition Date"), Celsius Network LLC, Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining LLC, Celsius Network Inc., Celsius Network Limited, Celsius Networks Lending LLC, and Celsius US Holding LLC (collectively, the "Debtors"), each commenced a voluntary case under Chapter 11 of the Bankruptcy Code. *See* Voluntary Petitions, SDNY Case No. 22-10964, ECF Doc. No. 1; *see also* Declaration of Shara Claire Cornell ("Cornell Decl."), attached hereto and made a part hereof at ¶ 3. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107 and 1008 of the bankruptcy Code. On July 19, 2022, the Court entered an Order directing that these cases be jointly administered. ECF Doc. No. 53.

2. On July 14, 2022, the Debtors filed their Motion Seeking Entry of an Order (I) Authorizing the Debtors to Prepare a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying

3

Creditors of Commencement, (V) Granting Related Relief (the "Matrix Motion"). ECF Doc. No. 18.

3. On July 19, 2022, an Order was entered granting the Matrix Motion on an interim basis and setting a final hearing to be held on August 8, 2022 at 10:00 a.m. ECF Doc. No. 63.

4. On August 3, 2022, the Debtors filed the Motion seeking *inter alia*, the authority to redact its Creditors Matrix, Schedules, Statements, and related documents. ECF Doc. No. 344.

5. On August 4, 2022, August 8, 2022, and August 9, 2022 the Debtors filed retention applications for Kirkland & Ellis LLP as counsel to the Debtors (ECF Doc. No. 360), Stretto, Inc. as an administrative advisor to the Debtors (ECF Doc. No. 361), Counterview Partners LLC as investment bankers to the Debtors (ECF Doc. No. 362), Latham & Watkins LLP as special counsel to the Debtors (ECF Doc. No. 363), Akin Gump Strauss Hauer & Feld LLP as special litigation counsel to the Debtors (ECF Doc. No. 392), and Alvarez & Marsal North America, LLC as financial advisors to the Debtors (EC Doc. No. 410) (collectively, the "Retention Applications") all with redacted disclosure schedules.

## ARGUMENT

### I. DISCLOSURE IS REQUIRED.

**A. Section 107(a) Of The Bankruptcy Code Affirms The Long-Standing Presumption Of Public Access To Court Records.**

6. There is a strong presumption and public policy in favor of public access to court records. *In re Motors Liquidation Co.*, 561 B.R. 36, 41 (Bankr. S.D.N.Y. 2016); *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 553-55 (Bankr. S.D.N.Y. 2007) ("The public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings

4

are involved"); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 597-98 (1978). "This policy of open inspection, established in the Bankruptcy Code itself, is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised." *Motors Liquidation*, 561 B.R. at 41-42 (citing *In re Bell & Beckwith,* 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984)).

7. Moreover, the importance of the public's right of access to judicial records becomes even more pronounced when a debtor seeks to avoid its duties of mandatory disclosure under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Indeed, "[d]uring a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fish bowl." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006) (citations omitted). Disclosure is even more important in this case because it might help foster formal, concerted, and coordinated action by creditors, which is in the best interest of creditors – a hallmark of bankruptcy.

8. Bankruptcy Code Section 107 sets forth the legal standard applicable to sealing information. *See also* F.R.B.P. 9018. Section 107(a) of the Bankruptcy Code provides, in part, that:

> a paper filed in a case under this title and the dockets of a bankruptcy court are *public records and open to examination* by an entity at reasonable times without charge.

11 U.S.C. § 107(a) (emphasis added).

9. Section 107(b) of the Bankruptcy Code provides in relevant part that:

> [o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

5

>   (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).

10. Section 107(b)(1) is implemented by Rule 9018, which provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Fed.R.Bankr.P. 9018. Accordingly, a limited exception to public disclosure may be invoked to protect "an entity with respect to a trade secret or confidential research, development or commercial information." 11 U.S.C. § 107(b)(1); *accord* Fed.R.Bankr.P. 9018.

11. Federal Rule of Bankruptcy Procedure 1007 states that a debtor "*shall* file the following schedules, statements, and other documents, prepared as prescribed by the appropriate Official Forms, if any: (A) schedules of assets and liabilities; (B) a schedule of current income and expenditures; (C) a schedule of executory contracts and unexpired leases; (D) a statement of financial affairs; . . ." Fed.R.Bankr.P. 1007(b)(1) (emphasis added). Similarly, Local Rule 1007-1 requires a "list of creditors and other entities required to be filed under Bankruptcy Rule 1007(a)(1), and the creditors' matrix, *must include* the full name and complete mailing address, including street number or post office box, if any, and zip code." S.D.N.Y. LBR 1007-1(a) (emphasis added).

6

## B. Section 107(b) Of the Bankruptcy Code Is Narrowly Construed And A Denial Of Open Access To Court Records Must Be Supported By Evidence.

12. This "exception to the general right of access in section 107(b) is narrow" and should only be entered when actually necessary to protect a party from harm. *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011); *see also In re Anthracite Cap., Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) (finding that "a court's ability to limit the public's right to access remains *an extraordinary measure* that is warranted *only under rare circumstances* as public monitoring is an essential feature of democratic control.") (internal quotations omitted) (emphasis added).

13. Where a party seeks to have court records sealed because of the purported economic consequences of disclosure, courts have demanded more than mere argument and speculation. *See, e.g., Republic of the Phillipines*, 949 F.2d 653, 663 (3d Cir. 1991) (a party must offer "evidence ... to substantiate its claim that the disclosure of ... records ... would result in any type of competitive disadvantage"); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (report filed in court in connection with a shareholder derivative action could not be sealed based on "a naked conclusory statement that publication of the Report will injure the bank in the industry."); *In re Barney's, Inc.*, 201 B.R. at 708 ("speculat[ion] that the public disclosure of ... letter will adversely impact debtors reorganization efforts" insufficient to justify sealing record); *In re Fibermark, Inc.*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005) ("that information might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071-73 (3d Cir. 1059) (court must make "specific findings" as sealing cannot be based on speculation).

14. Under Section 107(b), "commercial information" has been defined as information which would cause an "unfair advantage to competitors by providing them information as to the

7

commercial operations" of the requesting party. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)(internal quotations omitted); *accord Borders*, 462 B.R. at 47.

15. "The 'commercial information' exception is not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake." *Motors Liquidation*, 561 B.R. at 43 (*quoting In re Dreier LLP*, 485 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013)). "Evidence–not just argument–is required to support the extraordinary remedy of sealing." *Id.* at 43; *accord Dreier*, 485 B.R. at 823 (finding that "conclusory statements in [a declaration] are not probative").

16. The burden is on the moving party to show that a request to place documents under seal falls within the parameters of Section 107(b). *Id.* at 46; *Food Mgmt.*, 359 B.R. at 561. To meet this burden, the movant "must demonstrate extraordinary circumstances and compelling need to obtain protection." *Food Mgmt.*, 359 B.R. at 561 (*citing In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)).

17. The information the Debtors seek to conceal here falls directly into the category of information that is required to be disclosed when a party avails itself of the protections of the Bankruptcy Code. *See* 11 U.S.C. § 521; Fed. R. Bankr. P. 1007; S.D.N.Y. LBR 1007-1(a). The Debtors, who have voluntarily sought relief in this Court, have no basis for sealing the Creditor Matrix, Schedules, or Statements. Moreover, since the filing of the Motion, the Debtors have filed and added its Retention Applications to the list of "related documents" that also require sealing. If the Debtors had their way, all of their motions for this case would fall into the "related documents." Congress was clear that bankruptcy proceedings must be transparent and to do so requires pleadings to be filed on the public docket unless the narrow and enumerated exceptions were met, which they are not here.

18. Moreover, the Debtors' privacy policy supports that the information sought to be redacted does not meet any exception. The information policy provided on the Celsius website (the "Website Policy") specifically states:

> We may share Personal Information with the following recipients: (i) our subsidiaries; (ii) affiliated companies; (iii) subcontractors and other third party service providers, (iv) business partners (such as GEM, Coinfy, Simplex and Wyre); (v) auditors or advisors of our business processes; and (vi) any potential purchasers or third party acquirer(s) of all or any portion of our business or assets, or investors in the company.
>
> In addition to the purposes listed in this Privacy Policy, we may share Personal Information with our recipients for any of the following purposes: (1) comply with any applicable law, regulation, legal process or governmental request . . .

https://www.celsius.network/privacy-policy; *see* Cornell Decl., ¶ 8. Moreover, pursuant to the Global Data Protection & Privacy Policy (the "Privacy Policy") "Celsius collects, processes, and stores personal information from employees, job applicants, contractors, consultants, customers and suppliers around the world." ¶ 1; *see* Cornell Decl., ¶ 9. It further provides,

> We may only process personal data where we have a lawful basis for doing so. The lawful bases on which we can process personal data are set out in the relevant data protection legislation and include, by way of example only: the individual has given their consent, it is necessary for the performance of a contract that we have with the individual, so it is necessary for us to comply with the law, *or it is necessary to further our legitimate interests or the legitimate interests of a third party* (unless these are overridden by the interests or fundamental rights and freedoms of the individual).

Privacy Policy, pg. 3 of 12 (emphasis added).

> Sharing personal data within the European Economic Area is permissible subject to appropriate customer disclosure, customer consent and contractual commitments between third party suppliers or partners (for example, Data Processing Agreements have been established between the data controller and data processor with the inclusion of appropriate data protection language, clear processing descriptions, description of the required controls and, where applicable, Model Contract Clauses).

Privacy Policy, pg. 5 of 12. It is clear that Celsius's policy is that "Customer personal information may be shared with third parties such as suppliers and partners where required." Privacy Policy, pg. 10 of 12.

19.     The Privacy Policy allows customers names and contact information to be shared. Indeed, the Privacy Policy allows this information to be shared with "business partners." If the information can be shared with third parties, then it is not secret or confidential. Moreover, the privacy policy allows the Debtors to share privacy information if legally required to do so, as they are here, under the statutory requirements of the Bankruptcy Code.

## II.     THE DEBTOR S HAVE NOT MET ITS BURDEN.

### A. The Identity of the Debtors' Customers is Not Confidential or Commercial Information.

20.     "The moving party bears the burden of demonstrating that the information it is seeking to protect from public viewing is both commercial and confidential." *In re Williams*, No. 15-71767, 2017 WL 6278764, at *3 (Bankr. W.D. Va. Dec. 8, 2017) (citing *In re Oldco M Corp.*, 466 B.R. 234, 237 (Bankr. S.D. N.Y. 2012) and *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr. S.D. N.Y. 2007)). The Debtors do not cite any authority holding that the type of information they seek to seal is both confidential and commercial information under the Bankruptcy Code. *See, e.g., Motors Liquidation*, 561 B.R. at 44 (holding that the identities of the owners of 10% or more of the equity interests of a party in an adversary proceeding are not confidential commercial information and denying motion to seal). The Debtors provide only conclusory statements regarding the information's commercial importance, and "statements made by lawyers in briefs are not evidence." *Id*. "To put it clearly, just because information may be 'confidential' does not mean it is 'commercial information' entitled to the extraordinary procedure of sealing." *Id*.

21. The Debtors assert that the identity of its creditors is a "very narrow" set of information that must remain undisclosed. But it is clear that the Debtors' business relies heavily on maintaining an ongoing financial relationship with its creditors. The Debtors are essentially asking the Court to allow them to function as a debtor-in-possession and attempt to reorganize their business without disclosing the identity of the parties with whom they do business in the first place. This information must be disclosed to allow the Court, creditors, and parties-in-interest to assess the Debtors' assets and liabilities, its ability to reorganize, and the practices which are critical to its business enterprises.

22. Furthermore, the alleged narrowness of information does not determine its materiality or its confidential commercial nature. The Bankruptcy Code requires a debtor to file "a schedule of assets...." 11 U.S.C. § 521(a)(1)(B)(i). The Federal Rules of Bankruptcy Procedure further require a debtor to file "schedules of assets...." Fed. R. Bankr. P. 1007(b). The purpose of requiring a debtor to disclose all assets and business dealings is to ensure that creditors have reliable and accurate information in which they can rely on to determine the status of the debtor's financial affairs and to trace a debtor's financial history. *In re Haynes*, 549 B.R. 677, 687 (Bankr. D. S.C. 2016). The bankruptcy schedules and statements of affairs are designed to elicit certain information necessary to the proper administration and adjudication of the case. *Id*.

23. Moreover, if the information sought to be redacted was truly commercial in nature, the Debtors would be seeking to redact <u>all</u> of the creditors' names and identifying information. But the Debtors are not. They are instead requesting in a piece-meal fashion that the identities of only *some* creditors be redacted – that is, the Debtors would like identifying information to be redacted for only certain creditors, but information with respect to another

11

group will be fully disclosed because of where such creditors live. *See, e.g., Geltzer v. Anderson Worldwide, S.C.*, No. 05 CIV. 3339 (GEL), 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007) (denying request to seal settlement in part because the "concern for the privacy of its settlements appears to be at best intermittent and inconsistent"). The nature of commercial information under section 107(b) does not depend on domiciliary or residential fortuity, nor have the Debtors met their burden of proving specifically so. Therefore, the Debtors cannot have it all ways – the information is clearly not commercial in nature.

24.    Indeed, "to allow the debtor to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system." *Haynes*, 549 B.R. at 687 (internal quotations omitted). The disclosure of the identity of the Debtors' customers is of prime importance because the amounts owed to the Debtors or the amounts the Debtors owed are likely probative to the Debtors' ability to successfully restructure. The Debtors have made no showing that disclosure of the identities of some of its creditors are "reasonably [] expected to cause the entity commercial injury." *In re Alterra Healthcare Corp.*, 353 B.R. at 75. The Debtors simply cannot seek bankruptcy protection and then do business behind a shield of secrecy.

25.    Similarly, the Debtors have not provided any basis that the information it seeks to redact is confidential. The Debtors have not provided any reason, other than speculation, that the identity of some of their creditors are "critical" to its operations and that disclosure of the information would "unfairly benefit that entity's competitors."

26.    The Debtors have neither tried to meet their burden of showing more than speculative harm, nor have they established that such relief is actually necessary to protect a party from harm.

12

B. **United States Law and Policy Requires Disclosure.**

27.    The Debtors' assertion that foreign law should prevail over the well-settled principle of American law that bankruptcy proceedings are public is unfounded. For example, the District Court in *San Antonio Express-News v. Len. Blackwell (In re Blackwell)*, 263 B.R. 505 (W.D. Tex. 2000), reversed and vacated the bankruptcy court's order that sealed the identities of the debtor's creditors, finding that "the parties' expectations under the laws of various other jurisdictions is not at issue here. [The broader investment group that the debtors were a part of] maintains its offices in the United States and thus it was foreseeable that the laws of the United States could be applied to at least some disputes these parties could have contemplated at the time they made their investments." *Blackwell*, 263 B.R. at 510.

28.    Additionally, in *Blackwell*, like here, the debtor argued that creditors might be subject to violence if their identities were revealed. There was not sufficient evidence to show that the individuals were specifically targeted for harassment and violence just because wealthy individuals in Mexico were allegedly frequently kidnapped. Anecdotal evidence does not rise to the level of evidence necessary to overcome the strong presumption of Congress for open and public bankruptcy proceedings. *See, e.g., United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 150 B.R. 334, 340–41 (D.Del.1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information); *In re Analytical Systems, Inc.,* 83 B.R. 833, 836 (Bankr.N.D.Ga.1987) ("possible embarrassment" to a party "is not a sufficient basis to justify sealing court records in the face of the express and important policy of public access to court records"); *In re Itel Corp.,* 17 B.R. 942, 944 (9th Cir.Bankr.App. Panel 1982) (information not properly sealed under section 107(b) when it merely was "conceivable" and was "not likely" that it would fall in the category

13

of protected confidential commercial information); *see, e.g.*, *Motors Liquidation*, 561 B.R. at 44 (finding that "conclusory statements" and " statements made by lawyers in briefs are not evidence.")

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order: (a) denying the Motion, and (b) granting such other and further relief as it may deem just and proper.

Dated: New York, New York
August 24, 2022

                                          WILLIAM K. HARRINGTON
                                          UNITED STATES TRUSTEE

By:   */s/ Shara Cornell*
       Shara Cornell, Esq.
       Mark Bruh, Esq.
       Brian Masumoto, Esq.
       Trial Attorneys
       201 Varick Street, Suite 1006
       New York, New York 10014
       Tel. No. (212) 510-0500
       Fax No. (212) 668-2255