Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## DEBTORS' OBJECTION TO
## CREDITOR DANIEL A. FRISHBERG'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .......................................................................................................................3

I.      Frishberg Has Failed To Demonstrate Cause For Relief From The
        Automatic Stay......................................................................................................3

        A.      The Debtors' Restructuring Will Be Disrupted By Lifting The
                Stay. ...........................................................................................................4

        B.      Lifting The Stay Would Compromise The Interests Of Other
                Creditors......................................................................................................7

        C.      The Debtors Bear The Financial Burden Of Defending Against
                Frishberg's Claims. ....................................................................................7

        D.      Small Claims Court Is Not A Specialized Tribunal And There Are
                No Third Parties Involved............................................................................8

        E.      Maintaining The Automatic Stay Will Better Serve Judicial
                Economy. ....................................................................................................8

        F.      The Balance Of Harms Weights Against Lifting The Automatic
                Stay. ...........................................................................................................9

CONCLUSION...................................................................................................................10

22-10964-mg    Doc 609    Filed 08/25/22    Entered 08/25/22 15:02:29    Main Document
Pg 3 of 15


# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BDA Design Grp., Inc. v. Off. Unsecured Creditors' Comm.*,
    2013 WL 12100467 (N.D. Tex. Sept. 2, 2013)*, aff'd,* 576 F. App'x 369 (5th Cir. 2014).. 6

*E. Refractories Co. v. Forty Eight Insulations Inc.*,
    157 F.3d 169 (2d Cir. 1998)...................................................................................... 3

*Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.,*
    157 F.3d 169 (2d Cir. 1998)...................................................................................... 2

*In re Balco Equities Ltd., Inc.*,
    323 B.R. 85 (Bankr. S.D.N.Y. 2005).......................................................................... 9

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) .................... 6, 7, 8

*In re Conejo Enterprises, Inc.*,
    96 F.3d 346 (9th Cir. 1996) ...................................................................................... 8

*In re Curtis*,
    40 B.R. 795 (Bankr. D. Utah 1984) ........................................................................ 3, 6

*In re Ionosphere Clubs, Inc.*,
    922 F.2d 984 (2d Cir. 1990)....................................................................................... 3

*In re Leibowitz*,
    147 B.R. 341 (Bankr. S.D.N.Y. 1992)........................................................................ 4

*In re Mazzeo*,
    167 F.3d 139 (2d Cir. 1999)....................................................................................... 4

*In re Micro Design, Inc.*,
    120 B.R. 363 (E.D. Pa. 1990) .................................................................................... 9

*In re Motors Liquidation Co.*,
    2010 WL 4966018 (S.D.N.Y. Nov. 8, 2010)............................................................... 7

*In re New York Classic Motors, LLC*,
    2021 WL 2285440 (Bankr. S.D.N.Y. June 4, 2021)...................................................... 5

*In re Nw. Airlines Corp.*,
    2006 WL 694727 (Bankr. S.D.N.Y. Mar. 13, 2006) ...................................................... 5

ii

*In re Old Carco LLC*,
   500 B.R. 683 (Bankr. S.D.N.Y. 2013)..................................................................... 3

*In re Penn-Dixie Indus., Inc.*,
   6 B.R. 832 (Bankr. S.D.N.Y. 1980)........................................................................ 6

*In re Pioneer Com. Funding Corp.*,
   114 B.R. 45 (Bankr. S.D.N.Y. 1990)...................................................................... 3

*In re Residential Cap., LLC*,
   2012 WL 3423285 (Bankr. S.D.N.Y. Aug. 14, 2012) ........................................... 7

*In re Residential Cap., LLC*,
   501 B.R. 624 (Bankr. S.D.N.Y. 2013)..................................................................... 4

*In re Residential Capital, LLC*,
   2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012) ............................................. 5

*In re Residential Capital, LLC*,
   2012 WL 3555584 (Bankr. S.D.N.Y. Aug. 16, 2012) ........................................... 7

*In re Residential Capital, LLC*,
   508 B.R. 838 (Bankr. S.D.N.Y. 2014)..................................................................... 9

*In re Sonnax Indus., Inc.*,
   907 F.2d 1280 (2d Cir. 1990)............................................................................. 3, 4

*In re SunEdison, Inc.*,
   557 B.R. 303 (Bankr. S.D.N.Y. 2016)..................................................................... 7

*In re W.R. Grace & Co.*,
   2007 WL 1129170 (Bankr. D. Del. Apr. 13, 2007) ............................................... 9

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
   474 U.S. 494 (1986)................................................................................................ 3

*Santa Rosa Mall, LLC v. Sears Holdings Corp.*,
   2021 WL 4429507 (S.D.N.Y. Sept. 27, 2021)....................................................... 7

**Statutes**

11 U.S.C. § 362(a)(1)........................................................................................................ 2

11 U.S.C. § 362(c)(2)(C) .................................................................................................. 3

iii

**INTRODUCTION**

1.      Congress was clear that debtors require a "breathing spell" from prepetition litigation to navigate the bankruptcy process.  The automatic stay gives debtors the time and space they need to develop, confirm, and consummate a plan, while also protecting creditors from a race by their peers to procure judgments elsewhere.  Because of the automatic stay's importance to a successful restructuring, unsecured creditors like movant Daniel Frishberg must establish "extraordinary circumstances" to lift the stay and skip the line of other litigants.  Frishberg has not come close to meeting that heavy burden.  Therefore, the Motion For Relief From Automatic Stay, ECF No. 342 (the "Motion")[2], should be denied.

2.      The Debtors are still in the early stages of developing a restructuring plan that will equitably and efficiently maximize value for all stakeholders.  The majority of the Debtors' creditors have unsecured claims exactly like Frishberg's:  they are customers of Celsius who have been unable to access transferred cryptocurrency due to Celsius' June 12, 2022, decision to pause all withdrawals (the "Pause").  The Debtors have been working tirelessly with the recently appointed Unsecured Creditors Committee (the "UCC") to develop a path forward to a fair recovery for these claimants.  The Debtors recognize the stress and uncertainty that unsecured creditors like Frishberg are feeling in the circumstances.  But their goal to move expeditiously toward a plan will be undermined if Frishberg's litigation is permitted to move forward, opening the floodgates to hundreds (or thousands) of identical motions, which would impair the Debtors' efforts to maximize value and distribute that value fairly and efficiently to their stakeholders.

3.      The Debtors need the breathing room the automatic stay affords, and they are utilizing it to move quickly toward a successful restructuring.  To date, the Debtors have worked

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

constructively with the UCC, the U.S. Trustee, and other parties in interest to facilitate a smooth

entry into chapter 11 and obtain entry of vital "first" and "second" day relief.  Now, the Debtors

are focused on continuing these chapter 11 cases toward an efficient and value-maximizing result.

At this early juncture, lifting the stay for Frishberg's claim is not in the estate's best interest, as it

would divert the Debtors' attention to this litigation, and invite more motions, more distractions,

and more administrative costs to the detriment of similarly situated customers and creditors.  The

resource strain would also burden the same in-house and management teams that are critical to the

Debtors' restructuring efforts.

4.      Therefore, the Debtors respectfully request that the Court deny the Motion.

## BACKGROUND

5.      Daniel Frishberg alleges that he invested assets into a Celsius "Earn" account.  *See*

Decl. Of Chris Ferraro In Support Of Debtors' Objection To Motion For Relief From Automatic

Stay ("Decl."), Ex. A. at 2, 4.  Frishberg alleges that, following the Pause, he asked Celsius to

close his Earn account but that Celsius refused to do so, and also prevented him from withdrawing

assets.  *Id.*  Frishberg filed a complaint in small claims court in Hillsborough County, Florida on

July 11, 2022.  *See id*.  He asserts a claim for breach of contract under Celsius's Terms of Use.[3]

6.      Frishberg's allegations are substantially identical to nearly 30 other prepetition,

small claims complaints that have been filed against the Debtors in state courts around the country.

*See* Decl. ¶ 3.  Like Frishberg's, these complaints allege claims based on customers' inability to

withdraw their investments following the Pause.  *Id.*

---

[3]    On August 19, 2022, a notice of summons and copy of the complaint was delivered to the offices of Kirkland &
Ellis LLP in Palo Alto, California.  Because Frishberg's attempt at service occurred after the filing of the
chapter 11 petitions, it violates the automatic stay and is void.  *See* 11 U.S.C. § 362(a)(1); *Eastern Refractories
Co., Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir. 1998) ("[T]he automatic stay is effective
immediately upon filing of [bankruptcy] petition," and subsequent proceedings against debtor entities are "void
and without vitality." (citation omitted)).

2

**ARGUMENT**

**I.      Frishberg Has Failed To Demonstrate Cause For Relief From The Automatic Stay.**

7.      The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," and Congress intended that it have broad application. *See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (citation omitted). It serves two purposes. First, it gives the debtor a "breathing spell," shielding the debtor from creditor litigation in various forums when the debtor should focus on its restructuring efforts. *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (citation omitted). Second, it "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). The stay remains in place until the plan of reorganization is consummated. *See In re Old Carco LLC*, 500 B.R. 683, 689 (Bankr. S.D.N.Y. 2013) (noting the automatic stay terminated on the effective date of the plan) (citing 11 U.S.C. § 362(c)(2)(C)).

8.      The movant bears the burden of showing "cause" to lift the stay. *In re Pioneer Com. Funding Corp.*, 114 B.R. 45, 47–48 (Bankr. S.D.N.Y. 1990). In the Second Circuit, the *Sonnax* factors determine whether "good cause" exists to lift the stay. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285–87 (2d Cir. 1990).[4] Courts will not lift the stay with regard to unsecured

---

[4]     The *Sonnax* factors are: (1) whether relief would result in a partial or complete resolution of the issues, (2) the lack of any connection with or interference with the bankruptcy case, (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (5) whether the debtor's insurer has assumed full responsibility for defending the action, (6) whether the action primarily involves third parties, (7) whether litigation in another forum would prejudice the interests of other creditors, (8) whether the judgment claim arising from the other action is subject to equitable subordination, (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, (10) the interests of judicial economy and the expeditious and economical resolution of litigation, (11) whether the parties are ready for trial in the other proceeding, and (12) the impact of the stay on the parties and the balance of harms. *Sonnax*, 907 F.2d at 1286 (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).

claims, such as Frishberg's, unless "extraordinary circumstances are established to justify such

relief." *In re Residential Cap., LLC*, 501 B.R. 624, 643–44 (Bankr. S.D.N.Y. 2013) (Glenn, J.)

(citing *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

9.      Here, Frishberg does not establish "extraordinary circumstances," nor has he

carried the initial burden of demonstrating a *prima facie* showing of "cause" to lift the stay.

*In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999); *see also In re Leibowitz*, 147 B.R. at 345. The

following *Sonnax* factors weigh against lifting the stay:

      a.    Litigating Frishberg's claims in other forums would interfere with the chapter 11 cases;

      b.    Lifting the stay would prejudice other creditors;

      c.    The Debtors' estates would bear financial responsibility for defending Frishberg's claims;

      d.    This Court is capable of adjudicating state law breach of contract disputes;

      e.    There are no third parties involved;

      f.    Lifting the stay will not promote judicial economy; and

      g.    The harm to the Debtors' reorganization by lifting the stay outweighs any harm the stay imposes on Frishberg.

As set forth in additional detail below, the balance of these factors fails to establish the

"extraordinary circumstances" necessary to justify lifting the stay.

**A.      The Debtors' Restructuring Will Be Disrupted By Lifting The Stay.**

10.      As an initial matter, "it is undeniable that [Frishberg's] proceeding is connected to,

and would interfere with, the bankruptcy case" because it is "inextricably intertwined" with the

chapter 11 cases. *Sonnax*, 907 F.2d at 1286–87. The majority of the Debtors' creditors are Celsius

customers just like Frishberg, whose cryptocurrency accounts with Celsius were frozen as a result

of the Pause. Therefore, formulating a plan that maximizes value and provides an efficient and

equitable distribution to those creditors is central to the restructuring process. This overlap

4

between Frishberg's claim and the chapter 11 cases weighs strongly in favor of denying the Motion. *In re New York Classic Motors, LLC*, 2021 WL 2285440, at *5 (Bankr. S.D.N.Y. June 4, 2021) (adopting debtors' argument that "given that the Concession Agreement, the remaining term and the amounts due by the Debtor thereunder are issues central to the chapter 11 case, . . . the Bankruptcy Court is the most economical and expeditious forum to adjudicate the disputes between the parties").

11.     Moreover, the Debtors are still in the earliest stages of the restructuring process, a critical juncture in their successful reorganization.  The Debtors filed these chapter 11 cases just one month ago, and quickly obtained crucial interim relief at a first day hearing. The UCC was subsequently appointed on July 27, 2022, and the Debtors worked efficiently with counsel to the UCC to negotiate final orders approved at the second day hearing.  Now, the Debtors are exploring restructuring alternatives and the terms of a potential chapter 11 plan with counsel for the UCC and the Ad Hoc Groups to navigate a consensual path forward in these chapter 11 cases.  In addition, the Debtors are:  exploring all possible financial and sale options; advancing their thinking on key legal issues; conducting an internal investigation; and working cooperatively with the UCC and the U.S. Trustee to respond to diligence requests.  To allow Frishberg's case to go forward now would undermine the Debtors' efforts during this crucial and busy time.

12.     "A principal purpose of the automatic stay" is to allow the Debtors to "focus [their] energies on reorganizing and managing [their] business affairs without facing diversions and litigation . . . ." *See In re Nw. Airlines Corp.*, 2006 WL 694727, at *1 (Bankr. S.D.N.Y. Mar. 13, 2006).  Mindful of the strain on in-house resources, courts in this district have declined to lift the automatic stay in similar circumstances. *See In re Residential Capital, LLC*, 2012 WL 3249641, at *5 (Bankr. S.D.N.Y. Aug. 7, 2012) (Glenn, J.) (holding that diversion of debtors' legal team

alone is sufficient to find for debtors on this factor); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y.) ("[A]llowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other creditors."), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).

13.    The Debtors understand and do not diminish the seriousness of the issues that Frishberg and the other Celsius customers have raised through their complaints, letters to the Court, and statements at hearings.  But their claims must be addressed through the centralized bankruptcy process, not through individual lawsuits, as the latter would inevitably delay and interfere with the chapter 11 cases.  The law is clear that even slight interference with the bankruptcy process is sufficient to deny lift-stay motions.  *See In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836–37 (Bankr. S.D.N.Y. 1980) (denying stay relief where plaintiff sought only to proceed with limited discovery of customer lists; finding such requests "cannot be shrugged off as de minimis" because "[i]nterference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited"); *see also BDA Design Grp., Inc. v. Off. Unsecured Creditors' Comm.*, 2013 WL 12100467, at \*5 (N.D. Tex. Sept. 2, 2013)*, aff'd,* 576 F. App'x 369 (5th Cir. 2014) ("[E]ven slight interference with the administration may be enough to preclude relief.") (citation omitted); *Curtis*, 40 B.R. at 806 ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate.  Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit.").  Rather than divert attention to litigation, the Debtors' focus should remain on the restructuring process, for the benefit of all stakeholders.

6

**B.      Lifting The Stay Would Compromise The Interests Of Other Creditors.**

14.      The automatic stay protects not only debtors, but also their creditors.  It levels the playing field and ensures that creditors need not rush to other forums to preserve their rights.  As a result, granting Frishberg's Motion would be inconsistent with two key tenets of chapter 11: equal treatment among similarly situated creditors and an orderly process.  Only Frishberg stands to benefit from a successful motion, while the automatic stay would continue to prohibit other constituents from pursuing their claims outside this Court.  This is especially problematic here, where Frishberg's complaint is substantially identical to 30 other complaints already filed in various small claims courts around the country—to say nothing of the claims held by other unsecured creditors who did not file actions before the petition date.  Thus, if granted, the Motion would invite others to seek similar relief, and courts recognize the risk that "the floodgates" could open. *In re Residential Capital, LLC*, 2012 WL 3555584, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) (Glenn, J.); *In re SunEdison, Inc.*, 557 B.R. 303, 308–09 (Bankr. S.D.N.Y. 2016) (finding for debtors on this factor based, in part, on risk of "encourag[ing] other claimants to file their own stay relief motions"); *In re Bally*, 402 B.R. at 623 (similar).  That is "the very state of affairs the automatic stay was enacted to prevent." *In re Motors Liquidation Co.*, 2010 WL 4966018, at *5 (S.D.N.Y. Nov. 8, 2010).

**C.      The Debtors Bear The Financial Burden Of Defending Against Frishberg's Claims.**

15.      The Debtors do not have insurance coverage for Frishberg's claim, *see* Decl. ¶ 2, and "would therefore need to pay all expenses in litigating the action with out-of-pocket funds from the bankruptcy estate," which weighs against lifting the stay. *In re Residential Cap., LLC*, 2012 WL 3423285, at *7 (Bankr. S.D.N.Y. Aug. 14, 2012) (Glenn, J.); *see also Santa Rosa Mall, LLC v. Sears Holdings Corp.*, 2021 WL 4429507, at *7 (S.D.N.Y. Sept. 27, 2021) (affirming

denial of motion to lift stay where "resolution of the proposed litigation would come at a cost to

the Debtors, adversely impacting the bankruptcy estate as an administrative expense");

*In re Motors Liquidation*, 2010 WL 4630327, at *4 ("[D]enying Appellant relief would conserve

the resources of the MLC estate without prejudicing Appellant because the ERISA suit against

MLC could and would be adjudicated as part of the claims allowance process under Title 11.").

> D.    **Small Claims Court Is Not A Specialized Tribunal And There Are No Third Parties Involved.**

16.    Frishberg's claim is a state law breach of contract claim.  "This Court has

significant experience in applying state law."  *Bally Total Fitness*, 402 B.R. at 624; *see also*

*In re Motors Liquidation*, 2010 WL 4630327, at *5 (affirming denial of lift stay motion in part

because "the United States District Court for the Middle District of Florida [is] not a 'specialized

tribunal' with any unique expertise in adjudicating ERISA actions").  Moreover, Frishberg's

claims do not involve any third parties; Debtor Celsius Network LLC is the sole defendant.

Together, these factors "weigh heavily in favor of denying relief."  *Bally Total Fitness*, 402 B.R.

at 624.

> E.    **Maintaining The Automatic Stay Will Better Serve Judicial Economy.**

17.    As described above, there are dozens of complaints currently pending against the

Debtors that raise nearly identical allegations.  Those allegations and the underlying legal issues

will be resolved by this Court during the bankruptcy proceeding.  Lifting the stay as to Frishberg

would lead to unnecessary duplication of efforts for both the parties and the Court and has the

potential of leading to inconsistent judgments for similarly situated creditors.  Accordingly,

judicial economy favors denial of the Motion.  *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 353

(9th Cir. 1996) ("By staying the state action, the bankruptcy court promoted judicial economy and

efficiency by minimizing the duplication of litigation in two separate forums and preventing

litigation of a claim that may have been discharged in bankruptcy proceedings."); *see also*

*In re Balco Equities Ltd., Inc.*, 323 B.R. 85, 94 (Bankr. S.D.N.Y. 2005) (denying motion to lift the

stay in part because "proceeding concurrently in state court would result in inconsistent or

conflicting judicial decisions and would not be conducive to judicial economy") (citation omitted).

**F.      The Balance Of Harms Weights Against Lifting The Automatic Stay.**

18.      Unsecured creditors bear a heavy burden in proving that the balance of hardships

favors lifting the stay.  *See In re Residential Capital, LLC*, 508 B.R. 838, 848 (Bankr. S.D.N.Y.

2014) (Glenn, J.) ("If the movant is an unsecured creditor, the policies of the automatic stay weigh

against granting the relief requested." (citation omitted));  *In re W.R. Grace &   Co.*,

2007 WL 1129170, at *3 (Bankr. D. Del. Apr. 13, 2007) (stating that creditors bear "the heavy and

possibly insurmountable burden of proving that the balance of hardships tips significantly in favor

of granting relief") (quoting *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990)).

19.      The harm to the Debtors if the stay is lifted for Frishberg's claim is substantial.

Forcing the Debtors to litigate at this point would distract and hinder the Debtors from their

reorganization efforts and would take away the breathing space necessary to allow them to

restructure and preserve the value of their assets for the benefit of their creditors.   Although

Frishberg's claim is small in relative terms, if the Motion is granted, it will invite other lift stay

motions that will be filed by similarly situated claimants, leading to an unnecessary drain on the

Debtors'—and the Court's—resources.

20.      On the other hand, Frishberg fails to show he would sustain more significant harm

than other similarly situated claimants if the Motion is denied.  There are potentially thousands of

unsecured creditors similarly situated to Frishberg.  Frishberg has not demonstrated that he will be

more prejudiced than any other potential creditor by a short-term delay until a plan is in place.  *See*

*W.R. Grace & Co.*, 2007 WL 1129170, at *3 ("There is no indication that the state court claims

are in any way unique, or that, if proven, Debtors' liability to the [movant], if any, will be distinguishable from liability for any of the other hundreds of thousands of asbestos claims asserted against Debtors.").

21.    To be clear, the Debtors recognize the stress that the current state of affairs and the bankruptcy has caused those individuals in Frishberg's position.  The Debtors' primary goal over the course of these proceedings is to move forward on maximizing value for all stakeholders as soon and as fairly as possible.  But the question raised by the Motion is whether there is cause to lift the automatic stay for Frishberg, and he has not met the requirements to proceed on his claims outside of the bankruptcy process.

## CONCLUSION

22.    For the foregoing reasons, the Debtors respectfully request that this Court deny the Motion because Frishberg has not established "extraordinary circumstances" to lift the stay to litigate his case at a time when the Debtors and all parties in interest should remain focused on the reorganization process.

New York, New York
Dated: August 25, 2022

*/s/ Joshua A. Sussberg*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*