UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF DISINTERESTEDNESS
OF TAYLOR WESSING LLP PURSUANT TO THE ORDER
AUTHORIZING THE RETENTION AND COMPENSATION OF
PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS**

I, Laurence Lieberman, declare under penalty of perjury:

1. I am a Partner of Taylor Wessing LLP, located at 5 New Street Square, London, EC4A 3TW (the "Firm").

2. Celsius Network LLC and the other above-captioned debtors and debtors in possession (collectively, the "Debtors"), have requested that the Firm provide ongoing advice on, representation in, and prosecution of a number of arbitrations under English law governed contracts and under the English Arbitration Act 1996, seeking the recovery of cryptocurrencies lent by the Debtors to certain borrowers, as well as related sums, and the Firm has consented to provide such services.

3. The Firm may have performed services in the past, may currently perform services, and may perform services in the future in matters unrelated to these chapter 11 cases for persons that are parties in interest in the Debtors' chapter 11 cases. The Firm, however, does not perform

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

services for any such person in connection with these chapter 11 cases, or have any relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates.

4. As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

5. Neither I nor any principal, partner, director, or officer, of, or professional employed by, the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Firm.

6. Neither I nor any principal, partner, director, or officer, of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed.

7. The arrangements for compensation and reimbursement of the Firm include the following:

    a. The Firm offers a 15% discount to its standard hourly rates from time to time in relation to the arbitration currently being prosecuted in England. There are a range of fee earners with different hourly rates working on that arbitration: GBP 726.75 (partner), GBP 582.26 (senior associate), GBP 442 (associate) and GBP 216.75 (trainee).

    b. The estimated average monthly compensation for the Firm for postpetition retention between the Petition Date and the conclusion of the arbitration currently being prosecuted in England is GBP 50,000. The estimated total compensation for the Firm for postpetition retention between the Petition Date and the conclusion of the arbitration currently being prosecuted in England is GBP 250,000. Both the monthly and total estimates are subject to change and possible upward revision.

        c.        In addition, various expenses are incurred in the course of the arbitration currently being prosecuted in England, including barrister's fees, expert fees, documents hosting fees and arbitrator's fees, and these are all invoiced by the Firm to the Debtors. Those expenses are estimated to total (in addition to the estimated GBP 250,000 for the Firm) approximately GBP 350,000 for the postpetition period through to the conclusion of the arbitration.

8.        As of the date on which the Debtors commenced these chapter 11 cases (the "Petition Date"), the Debtors owed the Firm GBP 79,354.35 (including VAT) for prepetition services and the Debtors owed disbursement expenses invoiced by the Firm of GBP £21,566.89 (including VAT) for prepetition services, the payment of which is subject to limitations contained in title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

9.        As of the Petition Date, the Firm was not party to an agreement for indemnification with certain of the Debtors, although the Firm's terms of engagement requires the prompt payment of all issued invoices by the Firm.

10.        If the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Date: 29 August, 2022

/s/ Laurence Lieberman

Laurence Lieberman