**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, et al.,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## <u>AFFIDAVIT OF SERVICE</u>

I, Ana M. Galvan, depose and say that I am employed by Stretto, the claims and noticing agent for the Debtors in the above-captioned cases.

On September 1, 2022, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on the service list attached hereto as **Exhibit C**, and via electronic mail on the service list attached hereto as **Exhibit D**:

- **Stipulation and Agreed Order Regarding Framework for the Distribution of the Debtors' Reporting Information to the Committee** (Docket No. 668)

- **Notice of Presentment of Agreed Reporting Framework Stipulation** (Docket No. 669)

- **Notice of Hearing on Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief** (Docket No. 670)

- **Notice of Filing of Revised Proposed Order Granting a Second Extension of Time to File Schedules and Statements of Financial Affairs** (Docket No. 671)

- **Notice of Filing of Revised Proposed Order (I) Authorizing the Debtors to Prepare a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying Creditors of Commencement of These Chapter 11 Cases, and (V) Granting Related Relief** (Docket No. 673)

- **Notice of Filing of Proposed Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief** (Docket No. 674)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (0143); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

- **Notice of Filing of Further Revised Proposed Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief** (Docket No. 677)

- **Declaration of Disinterestedness of Jackson Lewis P.C. Pursuant to the Order Authorizing the Retention and Compensation of Professionals Utilized in the Ordinary Course of Business** (Docket No. 683)

- **Order Granting a Second Extension of Time to File Schedules and Statements of Financial Affairs** (Docket No. 685)

- **Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief** (Docket No. 687)

- **Order Authorizing the Debtors to (I) Pay Non-Insider Severance Benefits and (II) Granting Related Relief** (Docket No. 688)

- **Order Approving Procedures for De Minimis Asset Sales** (Docket No. 689)

- **Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets** (attached hereto as **Exhibit A**)

- **Notice of Auction for the Potential Sale of Certain of the Debtors' Assets Free and Clear of Any and All Claims, Interests, and Encumbrances** (attached hereto as **Exhibit B**)

Dated: September 2, 2022

*Ana M. Galvan*

Ana M. Galvan

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California,
County of Orange

Subscribed and sworn to (or affirmed) before me on this 2nd day of September 2022, by Ana M. Galvan, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____



STEPHANIE M. DELGADO
Notary Public · California
Orange County
Commission # 2288834
My Comm. Expires May 17, 2023

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF AUCTION FOR THE POTENTIAL**
**SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND**
**CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

    **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for the purchase of certain of the Debtors' assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of New York (the "Court") by entry of an order on September 1, 2022 [Docket No. 687] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

    **PLEASE TAKE FURTHER NOTICE** that any person or entity interested in purchasing the GK8 Assets may submit a non-binding Indication of Interest to the Debtors any time prior to the Final Bid Deadline.

    **PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline is **September 21, 2022**, at **4:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **September 23, 2022, at 10:00 a.m. (prevailing Eastern Time)**, via remote video.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of the Sale (if any) at the Sale Hearing, which is presently scheduled to commence on **October 6, 2022, at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **September 29, 2022, at 4:00 p.m.** (prevailing Eastern Time).

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Sale Order (if any) is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Agreement (in the case where a Stalking Horse Bidder is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if a Stalking Horse Bidder is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Effective Date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. All rights of any party to set off any claims, debts or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the Effective Date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to Assumed Liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Effective Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets prior to the Effective Date. For the avoidance of doubt, the Successful Bidder shall assume all liabilities of GK8, whether or not such liabilities are directly or indirectly related to any of the Debtors. The Stalking Horse Bidder would not have entered into the Stalking Horse Agreement but for the foregoing protections against potential claims based upon "successor liability" theories.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, in their reasonable business judgment and subject to the exercise of their fiduciary duties, and in consultation with the Consultation Parties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: (a) free of charge upon request to Stretto, Inc. (the notice and claims agent retained in these chapter 11 cases) by (a) calling (855) 423-1530  (Domestic) or (949) 669-5873 (International); (b) visiting the Debtors' restructuring website at (https://cases.stretto.com/Celsius); or (c) for a fee via PACER by visiting (https://www.deb.uscourts.gov/).

*[Remainder of page intentionally left blank]*

4

New York, New York
Dated: September 1, 2022

*/s/  Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and Debtors in*
*Possession*

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES FOR THE
## POTENTIAL SALE OF CERTAIN OF THE DEBTORS' ASSETS

On July 13, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

On September 1, 2022, the Court entered the *Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [Docket No. 687] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process for a potential auction (the "Auction") for the sale (the "Sale") of the equity interests in non-Debtor GK8 Ltd. ("GK8", and such equity interests, the "GK8 Interests") or some or all of the assets of GK8 (together with the GK8 Interests, the "GK8 Assets").

To the extent that these Bidding Procedures require the Debtors to consult with the Consultation Parties (as defined below) in connection with making a determination or taking any action, or in connection with any other matter related to these Bidding Procedures or at the Auction (as defined below), if any, the Debtors shall do so in a regular and timely manner prior to making such determination or taking any such action; *provided*, however, that during any period in which a Consultation Party has submitted a Qualified Bid and has become a Qualified

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bidding Procedures.

Bidder, such Consultation Party shall no longer be considered a Consultation Party under these Bidding Procedures.  All decisions made by the Debtors pursuant to these Bidding Procedures must be approved by the Special Committee of the Board of Debtor Celsius Network Limited.

---

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

---

I.     **Important Dates and Deadlines.**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer to purchase the Debtors' assets.  The assets will be offered for sale through an Auction. The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) for the assets in any combination.

The following is a table setting forth key dates and deadlines with respect to the Sale process:

| Event or Deadline | Date and Time[3] |
| --- | --- |
| Final Bid Deadline | September 21, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if necessary) | An Auction will be held on September 23, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video |
| Cure Objection Deadline | September 29, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | September 29, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | October 6, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

I.     **Public Announcement of Auction.**

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall (a) serve on the Notice Parties (as defined below) a notice of the potential Auction and Sale (the "Sale Notice"); (b) post the Sale Notice on their restructuring website, https://cases.stretto.com/celsius; (c) publish the Sale Notice, with any modifications necessary

---

[3]     All dates and deadlines are subject to Bankruptcy Rule 9006.

for ease of publication, once in the *The New York Times* (national edition) and *CoinDesk* (CoinDesk.com), to provide notice to any other potential interested parties.

## II.    Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than any Stalking Horse Bidder) interested in purchasing the GK8 Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

a.    an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

b.    preliminary proof by the Potential Bidder of its financial capacity to close the proposed transaction (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties;[4]

c.    preliminary proof by the Potential Bidder of its ability to receive any and all necessary governmental, licensing, regulatory, and other approvals, and to provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such Potential Bidder, pursuant to section 365 of the Bankruptcy Code, in connection with any transaction;

d.    identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity;

e.    a list with the names and contact information for any financial, legal and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale; and

f.    a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale.    Promptly after a Potential Bidder delivers

---

[4]    "Consultation Parties" means the Official Committee of Unsecured Creditors and any other official committee appointed by the Office of the United States Trustee in these chapter 11 cases.

Preliminary Bid Documents, the Debtors shall (i) provide copies of all Preliminary Bid Documents to the Consultation Parties and (ii) determine, in consultation with the Consultation Parties, and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents.  In the event that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Consultation Parties of such determination (and the reasons therefor). Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors may submit bids to purchase the Debtors' assets.  The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

### III.    Non-Binding Indications of Interest.

Any party interested in purchasing the GK8 Assets may (if it has not done so already) submit a non-binding indication of interest (an "Indication of Interest") to the Debtors any time prior to the Final Bid Deadline (as defined below).  The Indication of Interest should (i) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, which non-cash components shall be limited only to assumption of liabilities of any of the Debtors and (ii) identify any proposed conditions to closing the transaction.

Submitting an Indication of Interest (i) does not obligate the submitting party to submit a formal bid or participate in the sale process and (ii) does not exempt the submitting party from also having to submit a Qualified Bid by the Final Bid Deadline to participate in the Auction, each as defined below.

### IV.    Obtaining Due Diligence Access.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, in consultation with the Consultation Parties, including any Stalking Horse Bidder (if any), shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors.  All due diligence requests must be directed to Centerview Partners LLC ("Centerview") as set forth in Section V.A below.  The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room.  Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors.  The due diligence period will end on the Final Bid Deadline (as defined herein) and, subsequent to the Final Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder, such Potential Bidder's duly authorized

representatives to the extent provided in an applicable Confidentiality Agreement, and the Consultation Parties.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders that, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale.  For any Bidder that is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right, in consultation with the Consultation Parties, to withhold or modify any diligence materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

A.    **Communications with Potential Bidders (including Qualified Bidders).**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Centerview (via email shall be acceptable).

> **Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Sean Carmody (scarmody@centerview.com), Ryan Kielty (rkielty@centerview.com), Seth Lloyd (slloyd@centerview.com), Bob Beasley (bbeasley@centerview.com), and Daniel Bendetson (dbendetson@centerview.com), shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

B.    **Due Diligence from Potential Bidders (including Qualified Bidders).**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors, in consultation with the Consultation Parties, regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated transaction.  Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

V.    **Stalking Horse Bidders.**

The Debtors shall be authorized, but not obligated, in an exercise of their business judgment, in consultation with Consultation Parties, to select one or more Qualified Bidders to act as stalking horse bidders in connection with the Sale (each, a "Stalking Horse Bidder"), and enter into purchase agreement with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); *provided* that, in the event the Debtors seek to select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder, the Debtors shall promptly file with the Court and

serve on the Notice Parties a notice of hearing on the same and the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Bidder and Stalking Horse Agreement to be held on the first date the Court is available that is at least five business days after filing such notice, with objections due at 4:00 p.m. (prevailing Eastern Time) the day prior to such hearing.  The bid protections provided in the Stalking Horse Agreement (if any) shall be described in detail, including the amount and calculation of such bid protections, in the notice of hearing to consider the selection of the Stalking Horse Bidder and Stalking Horse Agreement and such bid protections shall be subject to the approval of the Court in all respects.

## VI.    Bid Requirements.

To be selected to acquire the assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder (other than a Stalking Horse Bidder) must deliver to the Debtors and their advisors a written, irrevocable and binding offer for purchase of the assets (the "Bid") that must be determined by the Debtors in their business judgment, in consultation with the Consultation Parties, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

a.    **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties.  Each Bid must also include contact information for the specific person(s) whom Centerview and Kirkland & Ellis LLP ("Kirkland") should contact regarding such Bid;

b.    **Identity of Assets and Purchase Price:** Each Bid must clearly state the Potential Bidder seeks to acquire the GK8 Assets along with which liabilities and obligations the Potential Bidder agrees to assume.  Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, which non-cash components shall be limited only to assumption of Debtors' liabilities (collectively, the "Purchase Price").  The Purchase Price should be a single point value in U.S. Dollars for the total enterprise value of the GK8 Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis.

c.    **Good Faith Deposit:** Each Bid must be accompanied by a cash deposit equal to ten percent of the cash consideration of such bid, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors (the "Good Faith Deposit").  To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the purchase price contemplated by such Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder (as defined below) increase its Good Faith Deposit so that it equals ten percent of the increased Purchase Price;

d.    **Markup of the Purchase Agreement:** Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, the form

of which will be provided to any Potential Bidder prior to the Final Bid Deadline and in the case of an Auction with a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits, schedules and ancillary agreements related thereto and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome or otherwise materially inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, will determine whether any such amendments and modifications are materially more burdensome;

e.  **Committed Financing:** Each Bid must include committed financing, documented to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that demonstrates the Potential Bidder has received sufficient debt and equity funding commitments to satisfy such Potential Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Centerview and Kirkland should contact regarding such committed financing. Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties;

f.  **Pro Forma Capital Structure:** Each Bid must include a description of the Bidder's pro forma capital structure;

g.  **Contingencies; No Financing or Diligence Outs:** Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of the specified representations and warranties, which shall not be more burdensome, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, than those contemplated by the Stalking Horse Bid, if any, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Final Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid;

h.  **As-Is, Where-Is:** Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements,

representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the assets or completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Potential Bidder's proposed purchase agreement;

i.    **Authorization:** Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

j.    **Adequate Assurance of Future Performance:** Each Bid must (i) identify the Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder and (iii) demonstrate, in the Debtors' reasonable business judgment after consultation with the Consultation Parties, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts;

k.    **Government Approvals:** Each Bid, including the Stalking Horse Bid (if any), must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors after consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

l.    **Government Approvals Timeframe:** Each Bid must set forth (i) an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale, and (ii) the basis for such estimate;

m.    **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment:** Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures;

n.    **Irrevocable:** A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder (as defined herein);

o.    **No Fees:** Other than a Stalking Horse Bidder (solely to the extent the Court approves any bid protections under the Stalking Horse Agreement), each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for breakup fee, transaction fee, termination fee, expense reimbursement, or any similar type of

payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, after consultation with the Consultation Parties, to provide certain bid protections to one or more Stalking Horse Bidders solely in accordance with these Bidding Procedures;

p.  **Adherence to Bidding Procedures:** By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the sale process, or the Auction (if held), after conclusion of the selection of the Successful Bidder (as defined herein);

q.  **Consent to Jurisdiction:** The Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction (if held), the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable;

r.  **Backup Bid:** Each Bid shall provide that the Potential Bidder will serve as a backup bidder if the Potential Bidder's bid is the next highest or otherwise best bid;

s.  **Expected Closing Date:** A Bid by a Potential Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a timeframe acceptable to the Debtors, after consultation with the Consultation Parties; and

t.  **Employees:** Each Bid must detail the treatment of any of the Debtors' employees.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, in consultation with the Consultation Parties, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, in consultation with the Consultation Parties, be deemed to be "Qualified Bidders."

Within one business days after the Final Bid Deadline, the Debtors shall determine, after consultation with the Consultation Parties, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the Final Bid Deadline (as defined below) that does not satisfy the requirements of a Qualified Bid, the Debtors, in consultation with the Consultation Parties, may (i) provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction, and (ii) in consultation with the Consultation Parties, waive certain requirements for good cause. A Stalking Horse Bidder (if any) shall be deemed to be a Qualified Bidder, a

Stalking Horse Bid shall be deemed a Qualified Bid, and a Stalking Horse Bidder (if any) may participate in the Auction with respect to the Debtors' assets.

## VII.    Final Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Simon Briefel (simon.briefel@kirkland.com); and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), and Christopher S. Koenig (chris.koenig@kirkland.com); and (b) the Debtors' investment bank Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Sean Carmody (scarmody@centerview.com) and Seth Lloyd (slloyd@centerview.com), in each case so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on September 21, 2022 (the "Final Bid Deadline")**. The Debtors shall then promptly distribute any Bids received prior to the Final Bid Deadline to the Consultation Parties.

## VIII.    Evaluation of Qualified Bids.

Prior to the Auction (if held) the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment after consultation with the Consultation Parties, the highest or otherwise best Bid (the "Starting Bid"). In the event a Stalking Horse Bidder is selected, the Starting Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the bid protections (if any), *plus* either $500,000 or such other amount as determined by the Debtors in consultation with the Consultation Parties. In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different assets. In conducting the evaluation of the Qualified Bids, the Debtors will take into consideration the following non-exclusive factors:

a.      the amount of the Purchase Price of the Qualified Bid;

b.      the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any bid protections;

c.      the proposed changes or modifications to the form purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus any Stalking Horse Agreements, to the extent applicable;

d. the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

e. any benefit to the Debtors' bankruptcy estates from assumption of any Debtor's liabilities or waiver of any Debtor's liabilities;

f. the certainty of a Qualified Bid leading to a confirmed plan (whether the Plan or some other plan);

g. the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

h. any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant.

Within 24 hours of the determination of the Starting Bid, but in no event later than 24 hours before the Auction, the Debtors will (1) notify any Stalking Horse Bidder(s) as to which Qualified Bid is the Starting Bid and (2) distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five business days after the Final Bid Deadline.

## IX.    No Qualified Bids.

If no Qualified Bids other than a Stalking Horse Bid (if applicable) are received by the Final Bid Deadline, then the Debtors may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, to designate the Stalking Horse Bid as the Successful Bid, and pursue entry of the Sale Order approving a Sale to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtors shall promptly file notice of any cancellation of the Auction and designation of the Stalking Horse Bid as the Successful Bid with the Bankruptcy Court.

## XIII.   Auction.

If one or more Qualified Bids are received by the Final Bid Deadline with respect to any applicable assets, then the Debtors shall conduct the Auction with respect to such assets. The Auction for each applicable asset shall commence on **September 23, at 10:00 a.m. (prevailing Eastern Time)**, via remote video, or such later time or other place as the Debtors determine, in consultation with the Consultation Parties, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.   except as otherwise provided herein, the Auction will be conducted openly;

b.   only Qualified Bidders, including any Stalking Horse Bidders (if any), shall be entitled to bid at the Auction;

c.   the Qualified Bidders, including any Stalking Horse Bidders (if any), shall appear at the Auction via remote video or through duly authorized representatives via remote video at the Auction;

d.   only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, the Consultation Parties and their respective advisors, and any other creditor party who makes a written request upon the Debtors to attend the Auction; *provided* that such request shall be actually received by the Debtors' counsel no later than 24 hours prior to the commencement of the Auction; *provided further* that the Debtors reserve the right to retract their permission at any point during the Auction if such creditor party does not act in good faith and in orderly fashion during the Auction;

e.   Bids at the Auction, including any Bids by any Stalking Horse Bidder (if any), must be made in minimum increments of $500,000 (or such other amount as the Debtors may determine after consultation with the Consultation Parties) of additional value (including after payment of the bid protections to any Stalking Horse Bidders, if applicable);

f.   each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors, in consultation with the Consultation Parties;

g.   the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

h.   no Qualified Bidder (or its representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (A) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (B) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the assets identified in such Bid if such Bid is selected as the Successful Bid or the Backup Bid (each as defined herein); *provided, however,* that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors approve such coordination in their reasonable discretion, in consultation with the Consultation Parties;

i. the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, in consultation with the Consultation Parties, to require last and final Bids to be submitted on a "blind" basis;

j. the Court and the Debtors will not consider bids made after the Auction has been closed;

k. the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

l. the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors following consultation with the Consultation Parties, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any other order of the Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) reasonably determined by the Debtors to further the goal of attaining the highest or otherwise best offer for the assets, as applicable.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, with notice to the Consultation Parties).

## XIV. Acceptance of the Successful Bid.

The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase the Debtors' assets in the Debtors' reasonable business judgment, in a manner consistent with the exercise of their fiduciary duties, after consultation with the Consultation Parties, and outlined below in further detail, (a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid documents; and (d) the tax consequences of such Qualified Bid.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the applicable assets. The Debtors shall promptly file notice of the Successful Bid and the Successful Bidder with the Bankruptcy Court. Within five days following conclusion of the Auction and selection of a Successful Bidder, or as soon as reasonably practicable thereafter, the Debtors shall present the results of the Auction at a hearing (the "Sale Hearing") and shall seek Bankruptcy Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "Sale Order"). For the avoidance of doubt, the Sale Order shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Backup Bid (defined below), the Debtors shall not solicit or accept any further bids or offers to submit a bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one business day of the selection of the Successful Bidder, such Successful Bidder shall make a cash deposit that, when aggregated with its Good Faith Deposit, is in an amount equal to ten percent of the Successful Bid, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XV.   Designation of Backup Bidder.

The Qualified Bidder with the second highest or otherwise best bid or combination of bids (the "Backup Bid") to purchase any or all of the applicable assets (the "Backup Bidder") will be determined by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such assets, and the Backup Bidder shall be deemed a Successful Bidder for such assets and shall be required to consummate any Sale with the Debtors as soon as is commercially practicable without further order of the Court, *provided* that the Debtors shall file a notice with the Court. The Backup Bidder shall be required to keep its Backup Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Backup Bidder's Good Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

## XVI.   Approval of Sale.

The Debtors will present the results of the Auction  (if any) to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (b) the Auction was fair in substance

and procedure; (c) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (d) consummation of any Sale as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' assets, and is in the best interests of the Debtors and their estates.

The Sale Hearing is presently scheduled to commence on **October 6, 2022, at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

### XVII.  Return of Good Faith Deposit.

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable assets.  If a Successful Bidder fails to consummate any Sale, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors, and all parties in interest, and the Debtors specifically, reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five business days after the Auction or upon the permanent withdrawal of the proposed Sale, and the Good Faith Deposit of any Backup Bidders will be returned within five business days after the consummation of any Sale or upon the permanent withdrawal of the proposed Sale.

### XVIII.  Reservation of Rights.

The Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Bidding Procedures in their reasonable business judgment in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the Sale, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis.  For the avoidance of doubt, the Debtors reserve the right, in consultation with the Consultation Parties, at any point prior to the selection of the Successful Bidder to terminate the Sale processes contemplated hereunder with respect to the GK8 Assets.

### XIX.  Consent to Jurisdiction

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction and the construction and enforcement of these Bidding Procedures, or any written indications of interest, Preliminary Bid Documents, or the Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is

determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**XX. Fiduciary Out.**

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any Sale to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided that* the Debtors shall consult with the Consultation Parties promptly after exercising any fiduciary out in accordance with these Bidding Procedures, and nothing in this Section XX shall modify or supersede any consultation rights of the Consultation Parties set forth in these Bidding Procedures or the Bidding Procedures Order.

Further, notwithstanding anything to the contrary in these Bidding Procedures, through the date of the Auction, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the Official Committee of Unsecured Creditors and the United States Trustee), or any other entity regarding Alternate Proposals. The Debtors shall promptly distribute any Alternate Proposal (and any response thereto) to the Consultation Parties.

*[Remainder of page intentionally left blank]*

# **Exhibit C**



**Exhibit C**
Served via First-Class Mail

| NAME | ATTENTION | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| AD HOC GROUP CUSTODIAL ACCT HOLDERS | C/O TOGUT SEGAL & SEGAL LLP | ONE PENN PLAZA SUITE 3335 | ATTN: KYLE ORTIZ & BRYAN KOTLIAR | NEW YORK | NY | 10119 | |
| ADHOC GROUP WITHHOLD ACCOUNT HOLDER | C/O TROUTMAN PEPPER HAMILTON SANDER | 4000 TOWN CENTER SUITE 1800 | ATTN: DEBORAH KOVSKY-APAP | SOUTHFIELD | MI | 48075 | |
| AK OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1031 W 4TH AVE SUITE 200 | | ANCHORAGE | AK | 99501 | |
| AL OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 501 WASHINGTON AVE | | MONTGOMERY | AL | 36104 | |
| ALAMEDA RESEARCH LLC | C/O SULLIVAN & CROMWELL LLP | 125 BROAD ST | ATTN: ANDREW G. DIETDERICH | NEW YORK | NY | 10004 | |
| ALTCOINTRADER (PTY) LTD | ATTN: LEGAL DEPARTMENT | 229 ONTDEKKERS RD HORIZON | | ROODEPOORT | | 1724 | SOUTH AFRICA |
| AMTRUST NA INC ASSOC IND INS CO INC | C/O MAURICE WUTSCHER LLP | 5 WALTER FORAN BLVD SUITE 2007 | ATTN: THOMAS R. DOMINCZYK | FLEMINGTON | NJ | 08822 | |
| ANABELLE DIAS | C/O MCCARTER & ENGLISH LLP | 825 EIGHTH AVE 31ST FLOOR | ATTN: DAVID J. ADLER | NEW YORK | NY | 10019 | |
| AR OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 323 CENTER ST SUITE 200 | | LITTLE ROCK | AR | 72201 | |
| AZ OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 2005 N CENTRAL AVE | | PHOENIX | AZ | 85004 | |
| B2C2 LTD | ATTN: LEGAL DEPARTMENT | 86-90 PAUL ST | | LONDON | | EC2A 4NE | UNITED KINGDOM |
| CA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | PO BOX 944255 | | SACRAMENTO | CA | 94244-2550 | |
| CHANG RICKIE | | ON FILE | | | | | |
| CHRISTOPHER J. LITTLE | C/O MCCARTER & ENGLISH LLP | 825 EIGHTH AVE 31ST FLOOR | ATTN: DAVID J. ADLER | NEW YORK | NY | 10019 | |
| CLINT PETTY | ATTN: STUART P. GELBERG | 600 OLD COUNTRY RD SUITE 410 | | GARDEN CITY | NY | 11530 | |
| CO OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1300 BROADWAY 10TH FLOOR | RALPH L. CARR JUDICIAL BUILDING | DENVER | CO | 80203 | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| CONFIDENTIAL CREDITOR | | ON FILE | | | | | |
| COVARIO AG | | LANDYS GYR STRASSE 1 | | ZUG | | 6300 | SWITZERLAND |
| CRED INC. LIQUIDATION TRUST | C/O MCDERMOTT WILL & EMERY LLP | 333 SE 2ND AVE SUITE 4500 | ATTN: GREGG STEINMAN | MIAMI | FL | 33131-2184 | |
| CRED INC. LIQUIDATION TRUST | C/O MCDERMOTT WILL & EMERY LLP | ONE VANDERBILT AVE | ATTN: DARREN AZMAN | NEW YORK | NY | 10017-3852 | |
| CRYPTO10 SP -SEGREGATED PORTFOLIO | ATTN: LEGAL DEPARTMENT | 1ST FLOOR ARTEMIS HOUSE | 67 FORT ST | GEORGE TOWN | | KY1-1102 | CAYMAN ISLANDS |
| CT OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 165 CAPITOL AVE | | HARTFORD | CT | 6106 | |
| DC OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 400 6TH STREET NW | | WASHINGTON | DC | 20001 | |
| DEFERRED 1031 EXCHANGE  LLC | ATTN: LEGAL DEPARTMENT | LAKELAND AVE. | | DOVER | DE | 19901 | |
| DELAWARE DEPARTMENT OF JUSTICE | ATTN: LEGAL DEPARTMENT | 820 N FRENCH ST | CARVEL STATE OFFICE BUILDING | WILMINGTON | DE | 19801 | |
| DIANA THANT & NATAKOM CHULAMORKODT | C/O MEYER SUOZZI ENGLISH & KLEIN | 1350 BROADWAY SUITE 1420 | ATTN: EDWARD LOBELLO & JORDAN WEISS | NEW YORK | NY | 10018 | |
| DR. ASHRAF ELSHAFEI | C/O ARENTFOX SCHIFF LLP | 1301 AVENUE OF THE AMERICAS 42ND FL | ATTN: JEFFREY GLEIT & ALLISON WEISS | NEW YORK | NY | 10019 | |
| EMIL PILACIK & EMCO TECHNOLOGY | ATTN: WILLIAM D. SCHROEDER JR. | 920 LENMAR DR | | BLUE BELL | PA | 19422 | |
| FEINTISCH, ADAM MICHAEL | | ON FILE | | | | | |
| FL OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | THE CAPITOL PL-01 | | TALLAHASSEE | FL | 32399 | |
| GA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 40 CAPITOL SQ SW | | ATLANTA | GA | 30334 | |
| HI OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 425 QUEEN ST | | HONOLULU | HI | 96813 | |
| ICB SOLUTIONS | ATTN: LEGAL DEPARTMENT | W ROYAL FOREST BLVD | | COLUMBUS | OH | 43214 | |
| ID OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 700 W JEFFERSON ST STE 210 | PO BOX 83720 | BOISE | ID | 83720 | |
| IL OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 100 W RANDOLPH ST | JAMES R. THOMPSON CENTER | CHICAGO | IL | 60601 | |
| IN OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 302 W WASHINGTON ST 5TH FLOOR | INDIANA GOVERNMENT CENTER SOUTH | INDIANAPOLIS | IN | 46204 | |
| INTERNAL REVENUE SERVICE | ATTN: LEGAL DEPARTMENT | PO BOX 7346 | | PHILADELPHIA | PA | 19101-7346 | |
| INVICTUS CAPITAL FINANCIAL TECH | ATTN: LEGAL DEPARTMENT | 67 FORT ST | | GEORGE TOWN | | KY1-1102 | CAYMAN ISLANDS |
| IOWA OFFICE OF THE ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1305 E WALNUT ST | HOOVER STATE OFFICE BUILDING | DES MOINES | IA | 50319 | |
| JASON STONE AND KEYFI INC. | C/O ROCHE FREEDMAN LLP | 99 PARK AVE SUITE 1910 | ATTN: KYLE W. ROCHE | NEW YORK | NY | 10016 | |
| JOHN DZARAN | C/O MCCARTER & ENGLISH LLP | 825 EIGHTH AVE 31ST FLOOR | ATTN: DAVID J. ADLER | NEW YORK | NY | 10019 | |
| JOHN MARCHIONI | C/O BLANK ROME LLP | 1271 AVENUE OF THE AMERICAS | ATTN: EVAN J. ZUCKER | NEW YORK | NY | 10020 | |
| KEITH SUCKNO | C/O MCCARTER & ENGLISH LLP | 825 EIGHTH AVE 31ST FLOOR | ATTN: DAVID J. ADLER | NEW YORK | NY | 10019 | |
| KIESER GREGORY ALLEN | | ON FILE | | | | | |
| KS OFFICE OF ATTORNEY GENERAL | ATTN: DEREK SCHMIDT | 120 SW 10TH AVE 2ND FLOOR | | TOPEKA | KS | 66612 | |
| KY OFFICE OF ATTORNEY GENERAL | ATTN: DANIEL CAMERON | 700 CAPITAL AVE SUITE 118 | | FRANKFORT | KY | 40601 | |
| LA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 300 CAPITAL DR | | BATON ROUGE | LA | 70802 | |
| LISA T. VICKERS | C/O BERLINER & PILSON ESQS | 40 CUTTERMILL RD SUITE 308 | ATTN: RICHARD J. PILSON | GREAT NECK | NY | 11021 | |
| MA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1 ASHBURTON PLACE 20TH FLOOR | | BOSTON | MA | 02108 | |
| MARTIN LANGLOIS | C/O MCCARTER & ENGLISH LLP | 825 EIGHTH AVE 31ST FLOOR | ATTN: DAVID J. ADLER | NEW YORK | NY | 10019 | |
| MCMULLEN BRIAN | | ON FILE | | | | | |
| MD OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 200 ST. PAUL PLACE | | BALTIMORE | MD | 21202 | |
| ME OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 6 STATE HOUSE STATION | | AUGUSTA | ME | 04333 | |
| MI DEPARTMENT OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 525 W OTTAWA ST | | LANSING | MI | 48906 | |



**Exhibit C**
Served via First-Class Mail

| NAME | ATTENTION | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| MN OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 445 MINNESOTA ST SUITE 1400 | | ST. PAUL | MN | 55101 | |
| MO OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 207 W HIGH ST | SUPREME COURT BUILDING | JEFFERSON CITY | MO | 65101 | |
| MONIKA KOSA | C/O MCCARTER & ENGLISH LLP | 825 EIGHTH AVE 31ST FLOOR | ATTN: DAVID J. ADLER | NEW YORK | NY | 10019 | |
| MS OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 550 HIGH ST PO BOX 220 | WALTER SILLERS BUILDING | JACKSON | MS | 39201 | |
| MT OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 215 N SANDERS PO BOX 201401 | JUSTICE BUILDING 3RD FLOOR | HELENA | MT | 59602 | |
| MURPHY JR THOMAS PATRICK | | ON FILE | | | | | |
| NC OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 114 W EDENTON ST | | RALEIGH | NC | 27603 | |
| ND OFFICE OF ATTORNEY GENERAL | STATE CAPITOL | 600 E BOULEVARD AVE DEPT. 125 | | BISMARCK | ND | 58505 | |
| NE OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 2115 STATE CAPITOL | | LINCOLN | NE | 68509 | |
| NEW SPANISH RIDGE LLC ET AL. | C/O LEVIN EPSTEIN & ASSOCIATES PC | 60 E 42ND ST SUITE 4700 | ATTN: JOSHUA D. LEVIN-EPSTEIN | NEW YORK | NY | 10165 | |
| NH OFFICE OF ATTORNEY GENERAL | NH DEPARTMENT OF JUSTICE | 33 CAPITOL ST | | CONCORD | NH | 3301 | |
| NHAT VAN MEYER | C/O MEYER SUOZZI ENGLISH & KLEIN | 1350 BROADWAY SUITE 1420 | ATTN: EDWARD LOBELLO & JORDAN WEISS | NEW YORK | NY | 10018 | |
| NJ OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 25 MARKET ST 8TH FL WEST WING BOX80 | RICHARD J. HUGHES JUSTICE COMPLEX | TRENTON | NJ | 8611 | |
| NM OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 408 GALISTEO ST | VILLAGRA BUILDING | SANTA FE | NM | 87501 | |
| NOL MYER | C/O MEYER SUOZZI ENGLISH & KLEIN | 1350 BROADWAY SUITE 1420 | ATTN: EDWARD LOBELLO & JORDAN WEISS | NEW YORK | NY | 10018 | |
| NV OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 100 N CARSON ST | OLD SUPREME COURT BUILDING | CARSON CITY | NV | 89701 | |
| NY OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | THE CAPITOL 2ND FLOOR | | ALBANY | NY | 12224 | |
| OFFICE OF US TRUSTEE FOR THE SDNY | ATTN: LEGAL DEPARTMENT | 201 VARICK ST ROOM 1006 | | NEW YORK | NY | 10014 | |
| OHIO OFFICE OF THE ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 30 E BROAD ST 14TH FLOOR | STATE OFFICE TOWER | COLUMBUS | OH | 43215 | |
| OK OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 313 NE 21ST ST | | OKLAHOMA CITY | OK | 73105 | |
| OR OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1162 COURT ST NE | | SALEM | OR | 97301-4096 | |
| ORACLE AMERICA INC. | C/O BUCHALTER A PROFESSIONAL CORP | 425 MARKET ST SUITE 2900 | ATTN: SHAWN M. CHRISTIANSON | SAN FRANCISCO | CA | 94105-3493 | |
| PA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | STRAWBERRY SQUARE 16TH FL | | HARRISBURG | PA | 17120 | |
| PAOLA LEANO PERALTA | C/O MCCARTER & ENGLISH LLP | 825 EIGHTH AVE 31ST FLOOR | ATTN: DAVID J. ADLER | NEW YORK | NY | 10019 | |
| PERRY BRETT ALAN | | ON FILE | | | | | |
| PETER POLOMBO | C/O NORGAARD O'BOYLE & HANNON | 184 GRAND AVE | ATTN: HANNON & NORGAARD | ENGLEWOOD | NJ | 07631 | |
| PETERSON STEPHEN PAUL | | ON FILE | | | | | |
| PHAROS USD FUND SP | ATTN: LEGAL DEPARTMENT | LANDMARK SQUARE 1ST FLOOR | 64 EARTH CLOSE | GRAND CAYMAN | | KY-1107 | CAYMAN ISLANDS |
| RH MONTGOMERY PROPERTIES INC. | C/O WALLER LANSDEN DORTCH & DAVIS | 100 CONGRESS AVE 18TH FLOOR | ATTN: MORRIS D. WEISS | AUSTIN | TX | 78704 | |
| RH MONTGOMERY PROPERTIES INC. | C/O WALLER LANSDEN DORTCH & DAVIS | 511 UNION ST SUITE 2700 | ATTN: TYLER N. LAYNE | NASHVILLE | TN | 37219 | |
| RI OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 150 S MAIN ST | | PROVIDENCE | RI | 2903 | |
| RIPPLE LABS INC. | C/O DAVIS WRIGHT TREMAINE LLP | 1251 SIXTH AVE 21ST FLOOR | ATTN: HUGH MCCULLOUGH | NEW YORK | NY | 10020 | |
| SAENZ JESUS ARMANDO | | ON FILE | | | | | |
| SAP AMERICA INC. | C/O BROWN & CONNERY LLP | 6 N BROAD ST SUITE 100 | ATTN: JULIE F. MONTGOMERY | WOODBURY | NJ | 08096 | |
| SC OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1000 ASSEMBLY ST ROOM 519 | REMBERT C. DENNIS BLDG | COLUMBIA | SC | 29201 | |
| SD OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1302 E HIGHWAY 14 SUITE 1 | | PIERRE | SD | 57501-8501 | |
| SDNY US ATTORNEYS OFFICE | ATTN: LEGAL DEPARTMENT | ONE ST. ANDREWS PLAZA | | NEW YORK | NY | 10007 | |
| SECURITIES & EXCHANGE COMMISSION | ATTN: LEGAL DEPARTMENT | 100 F ST NE | | WASHINGTON | DC | 20549 | |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | 100 PEARL ST SUITE 20-100 | | NEW YORK | NY | 10004-2616 | |
| SECURITIES AND EXCHANGE COMMISSION | ATTN: REGIONAL DIRECTOR | 200 VESEY ST SUITE 400 | BROOKFIELD PLACE | NEW YORK | NY | 10281-1022 | |
| STEWART RUSSELL GARTH | | ON FILE | | | | | |
| STROBILUS LLC | | ON FILE | | | | | |
| TEXAS STATE SECURITIES BOARD | ATTN: BINFORD MILLIGAN RYAN & DESAI | PO BOX 12548 MC 008 | BANKRUPTCY & COLLECTIONS DIVISION | AUSTIN | TX | 78711-2548 | |
| THE CAEN GROUP LLC | | ON FILE | | | | | |
| THOMAS DIPPEL | C/O PRYOR CASHMAN LLP | ATTN: LIEBERMAN & SILVERMAN | 7 TIMES SQUARE | NEW YORK | NY | 10036-6569 | |
| TN DEPT OF COMMERCE & INSURANCE | C/O TN AG OFFICE BANKRUPTCY DIV | PO BOX 20207 | ATTN: MARVIN E. CLEMENTS JR. | NASHVILLE | TN | 37202-0207 | |
| TN OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | PO BOX 20207 | | NASHVILLE | TN | 37202-0207 | |
| TX OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 300 W 15TH ST | | AUSTIN | TX | 78701 | |
| TYCHALSKI GEORGE | | ON FILE | | | | | |
| UNSECURED CREDITORS COMMITTEE | C/O WHITE & CASE LLP | 111 S WACKER DR SUITE 5100 | ATTN: M. ANDOLINA & G. PESCE | CHICAGO | IL | 60606 | |
| UNSECURED CREDITORS COMMITTEE | C/O WHITE & CASE LLP | 1221 AVENUE OF THE AMERICAS | ATTN: D. TURETSKY & S. HERSHEY | NEW YORK | NY | 10020 | |
| UNSECURED CREDITORS COMMITTEE | C/O WHITE & CASE LLP | 555 S FLOWER ST SUITE 2700 | ATTN: AARON E. COLODNY | LOS ANGELES | CA | 90071 | |
| UTAH OFFICE OF THE ATTORNEY GENERAL | ATTN: SEAN D. REYES | 350 N STATE ST SUITE 230 | UTAH STATE CAPITOL COMPLEX | SALT LAKE CITY | UT | 84114 | |
| VA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 202 N NINTH ST | | RICHMOND | VA | 23219 | |
| VAN LOC TRUYEN | | ON FILE | | | | | |
| VILLINGER CHRISTOPHER | | ON FILE | | | | | |
| VINCENT THEODORE GOETTEN | C/O FISHERBROYLES LLP | 445 PARK AVE 9TH FLOOR | ATTN: HOLLACE T. COHEN | NEW YORK | NY | 10022 | |
| VT DEPT OF FINANCIAL REGULATION | ATTN: JENNIFER ROOD | 89 MAIN ST 3RD FLOOR | | MONTPELIER | VT | 05620 | |
| VT OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 109 STATE ST | | MONTPELIER | VT | 5609 | |
| WA DEPARTMENT OF REVENUE L&I & ES | ATTN: DINA L. YUNKER | 800 FIFTH AVE SUITE 2000 | BANKRUPTCY & COLLECTIONS UNIT | SEATTLE | WA | 98104-3188 | |
| WA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 1125 WASHINGTON ST SE | | OLYMPIA | WA | 98501 | |
| WA OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | PO BOX 40100 | | OLYMPIA | WA | 98504-00 | |
| WEXLER KEVIN JAY | | ON FILE | | | | | |
| WI OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 17 W MAIN ST ROOM 114 EAST P | | MADISON | WI | 53702 | |
| WILCOX WAYLON J | | ON FILE | | | | | |
| WV OFFICE OF ATTORNEY GENERAL | STATE CAPITOL | 1900 KANAWHA BLVD E BLDG 1 RM E-26 | | CHARLESTON | WV | 25305 | |
| WY OFFICE OF ATTORNEY GENERAL | ATTN: LEGAL DEPARTMENT | 109 STATE CAPITOL | | CHEYENNE | WY | 82002 | |
| YOON ANDREW | | ON FILE | | | | | |
| ZIGLU LIMITED | ATTN: LEGAL DEPARTMENT | 1 POULTRY | | LONDON | | EC2R8EJ | UNITED KINGDOM |

# **<u>Exhibit D</u>**

**STRETTO**

**Exhibit D**

Served via Electronic Mail

| NAME | ATTENTION 1 | ATTENTION 2 | EMAIL |
|------|-------------|-------------|-------|
| AD HOC GROUP OF CUSTODIAL ACCOUNT HOLDERS | C/O TOGUT SEGAL & SEGAL LLP | ATTN: KYLE J. ORTIZ & BRYAN M. KOTLIAR | KORTIZ@TEAMTOGUT.COM<br>BKOTLIAR@TEAMTOGUT.COM<br>DPERSON@TEAMTOGUT.COM<br>AODEN@TEAMTOGUT.COM<br>AGLAUBACH@TEAMTOGUT.COM<br>EBLANDER@TEAMTOGUT.COM<br>ARODRIGUEZ@TEAMTOGUT.COM<br>BKOTLIAR@TEAMTOGUT.COM<br>GQUIST@TEAMTOGUT.COM<br>ASTOLP@TEAMTOGUT.COM |
| AD HOC GROUP OF WITHHOLD ACCOUNT HOLDER | C/O TROUTMAN PEPPER HAMILTON SANDERS LLP | ATTN: DEBORAH KOVSKY-APAP | DEBORAH.KOVSKY@TROUTMAN.COM<br>KAY.KRESS@TROUTMAN.COM |
| ALABAMA OFFICE OF THE ATTORNEY GENERAL | | | CONSUMERINTEREST@ALABAMAAG.GOV |
| ALAMEDA RESEARCH LLC AND AFFILIATES | C/O SULLIVAN & CROMWELL LLP | ATTN: ANDREW G. DIETDERICH, BRIAN D. GLUECKSTEIN, & BENJAMIN S. BELLER | DIETDERICHA@SULLCROM.COM<br>GLUECKSTEINB@SULLCROM.COM<br>BELLERB@SULLCROM.COM |
| ALASKA OFFICE OF THE ATTORNEY GENERAL | | | ATTORNEY.GENERAL@ALASKA.GOV |
| ALTCOINTRADER (PTY) LTD | | | RICHARD@ALTCOINTRADER.CO.ZA |
| AMTRUST NORTH AMERICA, INC. ON BEHALF OF ASSOCIATED INDUSTRIES INSURANCE CO INC. | C/O MAURICE WUTSCHER LLP | ATTN: THOMAS R. DOMINCZYK | TDOMINCZYK@MAURICEWUTSCHER.COM<br>THOMAS-DOMINCZYK-5025@ECF.PACERPRO.COM |
| ANABELLE DIAS | C/O MCCARTER & ENGLISH, LLP | ATTN: DAVID J. ADLER | DADLER@MCCARTER.COM |
| ARIZONA OFFICE OF THE ATTORNEY GENERAL | | | AGINFO@AZAG.GOV |
| ARKANSAS OFFICE OF THE ATTORNEY GENERAL | | | OAG@ARKANSASAG.GOV |
| B2C2 LTD | | | MIDDLEOFFICE@B2C2.COM |
| CALIFORNIA OFFICE OF THE ATTORNEY GENERAL | | | XAVIER.BECERRA@DOJ.CA.GOV |
| CELSIUS NETWORK LLC, ET AL. | C/O KIRKLAND & ELLIS LLP | ATTN: JOSHUA A. SUSSBERG | JSUSSBERG@KIRKLAND.COM |
| CELSIUS NETWORK LLC, ET AL. | C/O KIRKLAND & ELLIS LLP | ATTN: PATRICK J. NASH, JR. & ROSS M. KWASTENIET | PATRICK.NASH@KIRKLAND.COM<br>ROSS.KWASTENIET@KIRKLAND.COM |
| CHANG RICKIE | | | ON FILE |
| CHRISTOPHER J. LITTLE | C/O MCCARTER & ENGLISH, LLP | ATTN: DAVID J. ADLER | DADLER@MCCARTER.COM |
| CLINT PETTY | ATTN: STUART P. GELBERG, ESQ. | | SPG@13TRUSTEE.NET |
| COLORADO OFFICE OF THE ATTORNEY GENERAL | | | CORA.REQUEST@COAG.GOV |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |
| CONFIDENTIAL CREDITOR | | | |



**Exhibit D**

Served via Electronic Mail

| NAME | ATTENTION 1 | ATTENTION 2 | EMAIL |
|---|---|---|---|
| CONFIDENTIAL CREDITOR | | | |
| CONNECTICUT OFFICE OF ATTORNEY GENERAL | | | ATTORNEY.GENERAL@CT.GOV |
| COVARIO AG | | | CELSIUSBANKRUPTCY@COVAR.IO<br>MARK.BANNER@COVAR.IO |
| CRED INC. LIQUIDATION TRUST | C/O MCDERMOTT WILL & EMERY LLP | ATTN: DARREN AZMAN | DAZMAN@MWE.COM<br>MCO@MWE.COM<br>CGREER@MWE.COM |
| CRED INC. LIQUIDATION TRUST | C/O MCDERMOTT WILL & EMERY LLP | ATTN: GREGG STEINMAN | GSTEINMAN@MWE.COM |
| CRYPTO10 SP -SEGREGATED PORTFOLIO OF INVICTUS CAPITAL FINANCIAL TECHNOLOGIES SPC | | | C10_SPC@INVICTUSCAPITAL.COM<br>DANIEL@INVICTUSCAPITAL.COM |
| DEFERRED 1031 EXCHANGE, LLC | | | CIADONISI@DEFERRED1031.COM |
| DELAWARE DEPARTMENT OF JUSTICE | | | ATTORNEY.GENERAL@STATE.DE.US<br>ATTORNEY.GENERAL@DELAWARE.GOV |
| DIANA THANT AND NATAKOM CHULAMORKODT | C/O MEYER, SUOZZI, ENGLISH & KLEIN, PC | ATTN: EDWARD J. LOBELLO & JORDAN D. WEISS | ELOBELLO@MSEK.COM<br>JWEISS@MSEK.COM |
| DIST OF COLUMBIA OFFICE ATTORNEY GENERAL | | | OAG@DC.GOV |
| DR. ASHRAF ELSHAFEI | C/O ARENTFOX SCHIFF LLP | ATTN: JEFFREY R. GLEIT & ALLISON H. WEISS | JEFFREY.GLEIT@AFSLAW.COM<br>ALLISON.WEISS@AFSLAW.COM<br>LISA.INDELICATO@AFSLAW.COM<br>ALYSSA.FIORENTINO@AFSLAW.COM |
| EMIL PILACIK, JR. AND EMCO TECHNOLOGY, INC. | ATTN: WILLIAM D. SCHROEDER, JR. | | SCHROEDER@JRLAW.ORG<br>HEALEY@JRLAW.ORG |
| FLORIDA OFFICE OF THE ATTORNEY GENERAL | | | ASHLEY.MOODY@MYFLORIDALEGAL.COM |
| GEORGIA OFFICE OF THE ATTORNEY GENERAL | BERNADETT ROSSZER FIGUEROA | | BROSSZER@LAW.GA.GOV |
| HAWAII OFFICE OF THE ATTORNEY GENERAL | | | HAWAIIAG@HAWAII.GOV |
| ICB SOLUTIONS | | | DUFFYS2@GMAIL.COM |
| IDAHO OFFICE OF THE ATTORNEY GENERAL | | | STEPHANIE.GUYON@AG.IDAHO.GOV |
| ILLINOIS OFFICE OF THE ATTORNEY GENERAL | | | INFO@LISAMADIGAN.ORG |
| INVICTUS CAPITAL FINANCIAL TECHNOLOGIES SPC | | | C20_SPC@INVICTUSCAPITAL.COM<br>DANIEL@INVICTUSCAPITAL.COM |
| IOWA OFFICE OF THE ATTORNEY GENERAL | | | CONSUMER@AG.IOWA.GOV |
| JASON STONE AND KEYFI INC. | C/O ROCHE FREEDMAN LLP | ATTN: KYLE W. ROCHE, ESQ. | KYLE@ROCHEFREEDMAN.COM<br>AKARADJAS@ROCHEFREEDMAN.COM |
| JOHN DZARAN | C/O MCCARTER & ENGLISH, LLP | ATTN: DAVID J. ADLER | DADLER@MCCARTER.COM |
| JOHN MARCHIONI | C/O BLANK ROME LLP | ATTN: EVAN J. ZUCKER | EVAN.ZUCKER@BLANKROME.COM<br>EDOCKETING@BLANKROME.COM |
| KANSAS OFFICE OF THE ATTORNEY GENERAL | ATTN: ATTORNEY GENERAL DEREK SCHMIDT | | DEREK.SCHMIDT@AG.KS.GOV |
| KEITH SUCKNO | C/O MCCARTER & ENGLISH, LLP | ATTN: DAVID J. ADLER | DADLER@MCCARTER.COM |
| KIESER GREGORY ALLEN | | | ON FILE |
| LOUISIANA OFFICE OF THE ATTORNEY GENERAL | DEPARTMENT OF JUSTICE | | ADMININFO@AG.STATE.LA.US |
| MAINE OFFICE OF THE ATTORNEY GENERAL | | | ATTORNEY.GENERAL@MAINE.GOV |
| MARTIN LANGLOIS | C/O MCCARTER & ENGLISH, LLP | ATTN: DAVID J. ADLER | DADLER@MCCARTER.COM |
| MARYLAND OFFICE OF THE ATTORNEY GENERAL | | | OAG@OAG.STATE.MD.US |
| MCMULLEN BRIAN | | | ON FILE |
| MINNESOTA OFFICE OF THE ATTORNEY GENERAL | | | ATTORNEY.GENERAL@AG.STATE.MN.US |
| MISSOURI OFFICE OF THE ATTORNEY GENERAL | | | CONSUMER.HELP@AGO.MO.GOV |
| MONIKA KOSA | C/O MCCARTER & ENGLISH, LLP | ATTN: DAVID J. ADLER | DADLER@MCCARTER.COM |
| MONTANA OFFICE OF THE ATTORNEY GENERAL | | | CONTACTDOJ@MT.GOV |
| MURPHY JR THOMAS PATRICK | | | ON FILE |
| NEW HAMPSHIRE OFFICE OF ATTORNEY GENERAL | NH DEPARTMENT OF JUSTICE | | ATTORNEYGENERAL@DOJ.NH.GOV |
| NEW MEXICO OFFICE OF THE ATTORNEY GENERAL | | | HBALDERAS@NMAG.GOV |
| NEW SPANISH RIDGE, LLC, MRK SPANISH RIDGE, LLC & PREH SPANISH RIDGE, LLC | C/O LEVIN EPSTEIN & ASSOCIATES PC | ATTN: JOSHUA D. LEVIN-EPSTEIN, ESQ. | JOSHUA@LEVINEPSTEIN.COM |



**Exhibit D**
Served via Electronic Mail

| NAME | ATTENTION 1 | ATTENTION 2 | EMAIL |
|---|---|---|---|
| NHAT VAN MEYER | C/O MEYER, SUOZZI, ENGLISH & KLEIN, P.C. | ATTN: EDWARD J. LOBELLO & JORDAN D. WEISS | ELOBELLO@MSEK.COM JWEISS@MSEK.COM |
| NOL MYER | C/O MEYER, SUOZZI, ENGLISH & KLEIN, P.C. | ATTN: EDWARD J. LOBELLO & JORDAN D. WEISS | ELOBELLO@MSEK.COM JWEISS@MSEK.COM |
| NORTH DAKOTA OFFICE OF ATTORNEY GENERAL | STATE CAPITOL | | NDAG@ND.GOV |
| OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK | ATTN: SHARA CORNELL | | USTPREGION02.NYECF@USDOJ.GOV SHARA.CORNELL@USDOJ.GOV |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | ATTN: CAROLINE G. WARREN, THOMAS DIFIORE, SCOTT DUFFY FOR ICB SOLUTIONS, CHRISTOPHER COCO, ANDREW YOON, MARK ROBINSON, & KEITH NOYES FOR COVARIO AG | | ON FILE |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | C/O WHITE & CASE LLP | ATTN: AARON E. COLODNY | AARON.COLODNY@WHITECASE.COM |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | C/O WHITE & CASE LLP | ATTN: DAVID M. TURETSKY & SAMUEL P. HERSHEY | DAVID.TURETSKY@WHITECASE.COM SAM.HERSHEY@WHITECASE.COM MCOSBNY@WHITECASE.COM JDISANTI@WHITECASE.COM |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | C/O WHITE & CASE LLP | ATTN: MICHAEL C. ANDOLINA & GREGORY F. PESCE | MANDOLINA@WHITECASE.COM GREGORY.PESCE@WHITECASE.COM JDISANTI@WHITECASE.COM MCO@WHITECASE.COM |
| OKLAHOMA OFFICE OF THE ATTORNEY GENERAL | | | QUESTIONS@OAG.OK.GOV |
| ORACLE AMERICA, INC. | C/O BUCHALTER, A PROFESSIONAL CORP | ATTN: SHAWN M. CHRISTIANSON, ESQ. | SCHRISTIANSON@BUCHALTER.COM |
| OREGON OFFICE OF THE ATTORNEY GENERAL | | | ELLEN.ROSENBLUM@DOG.STATE.OR.US ATTORNEYGENERAL@DOJ.STATE.OR.US |
| PAOLA LEANO PERALTA | C/O MCCARTER & ENGLISH, LLP | ATTN: DAVID J. ADLER | DADLER@MCCARTER.COM |
| PERRY BRETT ALAN | | | ON FILE |
| PETER POLOMBO | C/O NORGAARD O'BOYLE & HANNON | ATTN: BRIAN G. HANNON, ESQ. & MARK E. NORGAARD, ESQ. | BHANNON@NORGAARDFIRM.COM MNORGAARD@NORGAARDFIRM.COM CROSE@NORGAARDFIRM.COM KCIMMINO@NORGAARDFIRM.COM CROSE@NORGAARDFIRM.COM |
| PETERSON STEPHEN PAUL | | | ON FILE |
| PHAROS USD FUND SP & PHAROS FUND SP | | | ADMIN@LANTERNVENTURES.COM |
| RH MONTGOMERY PROPERTIES, INC. | C/O WALLER LANSDEN DORTCH & DAVIS LLP | ATTN: MORRIS D. WEISS | MORRIS.WEISS@WALLERLAW.COM SHERRI.SAVALA@WALLERLAW.COM ANNMARIE.JEZISEK@WALLERLAW.COM |
| RH MONTGOMERY PROPERTIES, INC. | C/O WALLER LANSDEN DORTCH & DAVIS LLP | ATTN: TYLER N. LAYNE | TYLER.LAYNE@WALLERLAW.COM CHRIS.CRONK@WALLERLAW.COM |
| RHODE ISLAND OFFICE OF ATTORNEY GENERAL | | | AG@RIAG.RI.GOV |
| RIPPLE LABS INC. | C/O DAVIS WRIGHT TREMAINE LLP | ATTN: ALEXANDRA STEINBERG BARRAGE & HUGH MCCULLOUGH | ABARRAGE@DWT.COM HUGHMCCULLOUGH@DWT.COM ELAINEHUCKABEE@DWT.COM SEADOCKET@DWT.COM |
| SAENZ JESUS ARMANDO | | | ON FILE |
| SAP AMERICA, INC. AND SAP NATIONAL SECURITY SERVICES, INC. | C/O BROWN & CONNERY LLP | ATTN: JULIE F. MONTGOMERY, ESQ. | JMONTGOMERY@BROWNCONNERY.COM |
| SECURITIES & EXCHANGE COMMISSION | | | SECBANKRUPTCY-OGC-ADO@SEC.GOV |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | | NYROBANKRUPTCY@SEC.GOV |
| SECURITIES AND EXCHANGE COMMISSION | ATTN: REGIONAL DIRECTOR NEW YORK REGIONAL OFFICE | | BANKRUPTCYNOTICESCHR@SEC.GOV NYROBANKRUPTCY@SEC.GOV |
| STEWART RUSSELL GARTH | | | ON FILE |
| STROBILUS LLC | | | ON FILE |
| TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE | C/O TENNESSEE ATTORNEY GENERALS OFFICE, BANKRUPTCY DIVISION | ATTN: MARVIN E. CLEMENTS, JR. | AGBANKNEWYORK@AG.TN.GOV |

**STRETTO**

**Exhibit D**
Served via Electronic Mail

| NAME | ATTENTION 1 | ATTENTION 2 | EMAIL |
|---|---|---|---|
| TEXAS STATE SECURITIES BOARD | ATTN: JASON B. BINFORD, LAYLA D. MILLIGAN, ABIGAIL R. RYAN & ROMA N. DESAI | | JASON.BINFORD@OAG.TEXAS.GOV LAYLA.MILLIGAN@OAG.TEXAS.GOV ABIGAIL.RYAN@OAG.TEXAS.GOV ROMA.DESAI@OAG.TEXAS.GOV |
| THE CAEN GROUP LLC | | | ON FILE |
| THOMAS DIFIORE | C/O PRYOR CASHMAN LLP | ATTN: SETH H. LIEBERMAN & MATTHEW W. SILVERMAN | SLIEBERMAN@PRYORCASHMAN.COM MSILVERMAN@PRYORCASHMAN.COM |
| TYCHALSKI GEORGE | | | ON FILE |
| UTAH OFFICE OF THE ATTORNEY GENERAL | ATTN: SEAN D. REYES | | UAG@UTAH.GOV |
| VAN LOC TRUYEN | | | ON FILE |
| VERMONT DEPT OF FINANCIAL REGULATION | ATTN: JENNIFER ROOD, ESQ. | | JENNIFER.ROOD@VERMONT.GOV |
| VERMONT OFFICE OF THE ATTORNEY GENERAL | | | AGO.INFO@VERMONT.GOV |
| VICKERS, LISA T. | C/O BERLINER & PILSON, ESQS | ATTN: RICHARD J. PILSON, ESQ | RPILSON@BERLINERPILSON.COM |
| VILLINGER CHRISTOPHER | | | ON FILE |
| VINCENT THEODORE GOETTEN | C/O FISHERBROYLES, LLP | ATTN: HOLLACE T. COHEN, ESQ. | HOLLACE.COHEN@FISHERBROYLES.COM |
| VIRGINIA OFFICE OF THE ATTORNEY GENERAL | | | MAIL@OAG.STATE.VA.US |
| WASHINGTON DEPTS OF REVENUE, LABOR & INDUSTRIES, AND EMPLOYMENT SECURITY | ATTN: DINA L. YUNKER, ASSISTANT ATTORNEY GENERAL | BANKRUPTCY & COLLECTIONS UNIT | DINA.YUNKER@ATG.WA.GOV BCUYUNKER@ATG.WA.GOV |
| WEST VIRGINIA OFFICE OF ATTORNEY GENERAL | STATE CAPITOL | | CONSUMER@WVAGO.GOV |
| WEXLER KEVIN JAY | | | ON FILE |
| WILCOX WAYLON J | | | ON FILE |
| WOLSTENHOLME MACGREGOR | | | ON FILE |
| YOON ANDREW | | | ON FILE |
| ZIGLU LIMITED | | | CFO@ZIGLU.IO |