Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

Andrew M. Leblanc
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,
Celsius SPV Investors, LP, and Celsius
New SPV Investors, LP*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SERIES B HOLDERS' LIMITED OBJECTION TO
MOTION OF THE UNITED STATES TRUSTEE FOR ENTRY
OF AN ORDER DIRECTING THE APPOINTMENT OF AN EXAMINER**

Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP (together, the "Series B Holders"), as beneficial holders, or investment advisors or managers of beneficial holders, of the Series B Preferred Shares issued by Celsius Network Limited ("CNL" and, together with its affiliated debtors and debtors in possession, the "Debtors"), by and through their undersigned counsel, hereby submit this limited objection (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

"Limited Objection") to the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [Dkt. No. 546] (the "Motion").[2] In support of this Limited Objection, the Series B Holders respectfully state as follows:

### Preliminary Statement

1.    By the Motion, the United States Trustee for the Southern District of New York (the "U.S. Trustee") seeks appointment of an examiner in these chapter 11 cases to investigate and report on, among other things, "the Debtors' business model, their operations, their investments, their lending transactions, and the nature of the customer accounts . . . ." Motion at 2. The Series B Holders take no position on whether an examiner should be appointed. But to the extent that the Court concludes that an examiner is mandatory or otherwise appropriate, the scope of such examination should be far more limited than what is requested in the Motion.

2.    Specifically, the Motion seeks appointment of an examiner for ten enumerated and wide-ranging topics, including a catchall proposed topic to "[o]therwise perform the duties of an examiner set forth in 11 U.S.C. § 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code." *See Proposed Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. No. 546-4] (the "Proposed Order"). Section 1106(a)(3) of the Bankruptcy Code permits investigation of "the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." The extraordinary scope of the topics proposed in the Motion would involve an examination of every aspect of the Debtors' business and take considerable time and estate

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

resources to complete, thus impeding resolution of issues that are central and threshold to these cases and delaying the development of a confirmable plan of reorganization.

3.  If this Court determines to appoint an examiner here, the scope and budget of any such examination should be appropriately tailored to avoid unnecessary costs and delay in these cases and not interfere with the ability of the parties in interest—with appropriate fiduciaries acting for them—to address critical issues, the resolution of which is necessary to advance these cases.

### Limited Objection

4.  Absent an appropriate limitation on any examiner (if appointed), the inevitable result of such an appointment will be an inefficient duplication of efforts, increased costs, and unnecessary interference with the ability of the stakeholders to resolve critical issues in the immediate term. Indeed, it is likely that an examiner appointed to investigate and report on nearly everything having to do with the Debtors' business will, in addition to potentially costing tens of millions of estate dollars, take the majority of Debtors' focus for at least several months. While the Debtors (and possibly the UCC) are giving the requisite attention to the examiner's requests for information and interviews, the resolution of significant issues will be delayed.

5.  For example, the Debtors have noted that the issue of which Debtors are liable with respect to customer claims is "one of the most important issues that has to be decided in the cases . . . and [is] coming down the pipe soon." 9/1/2022 Hr'g Tr. at 53:21-54:3, 54:10-11. The extraordinary scope of the proposed examination could be read to include this critical workstream. It should not be. The Debtors and the UCC are already analyzing this critical question on one side[3] and an estate fiduciary—an official equity committee—is needed to

---

[3] 8/16/2022 Hr'g Tr. at 29:20-22 (Debtors stating that "this case is all about the customer[,] [a]nd the customer committee is our partner here, and we intend to work very closely with them from day one to the end"); *id*. at

counterbalance the Debtors and the UCC on this issue.[4]  This issue, and many others in these cases, are better left to the adversary process with appropriate fiduciaries taking positions and are better addressed sooner than later without waiting for the completion of an investigation and report.

6. In addition, if an examiner is appointed, he or she presumably will retain counsel, a financial advisor, and perhaps industry-specific experts.  Unless the scope of the examiner's duties is limited, the work of such professionals will inevitably duplicate the work of professionals retained by the Debtors and the UCC.[5]  Adding an additional layer of professionals at this stage, without limitation, will significantly increase costs for the Debtors' estates.[6]  Such compounded costs, coupled with the significant delays, would impede the development and confirmation of a plan of reorganization and would not benefit the estates or the stakeholders.

7. Should the Court determine that the appointment of an examiner is required here, the Series B Holders respectfully request that the Court exercise its broad discretion to limit the

---

36:14-16 ("We and the Committee are focused on getting as much crypto and as much dollars back to customers as we possibly can."); *id.* at 35:2-5 (Debtors acknowledging that "[t]he business plan . . . [they] are contemplating" will return "all the value associated with the rising crypto over the last several weeks directly back in our customers' pockets"); *see also Notice of Filing of Second Day Hearing Presentation* [Dkt. No. 462], Exhibit A at 9 (summarizing the progress in these cases since filing, noting that (i) with respect to "engagement with stakeholders," the "Debtors have engaged with creditors directly, as well as counsel to the [UCC], counsel to the Ad Hoc Group of Custodial Account Holders, and counsel to the Ad Hoc Group of Withhold Account Holders," and (ii) the "Debtors and their advisors are advancing their thinking on the key legal issues in these chapter 11 cases and engaging with the [UCC]'s counsel").

[4] As noted in the Motion, the Series B Holders have requested the appointment of an official equity committee (Motion ¶ 23) and are awaiting a response from the U.S. Trustee.

[5] *Compare, e.g.*, Proposed Order ¶ 3(iii)-(v) (proposing examiner investigate undisclosed third-party loan, terms of loans and pre-petition return of collateral and use of loan proceeds) *with The Official Committee of Unsecured Creditors' Statement Regarding these Chapter 11 Cases* [Dkt. No. 390] at 6 (describing the UCC's investigation of Debtors' "asset deployment decisions, prepetition transfers and other issues").

[6] Another concern with respect to the expense of an examination is the utility of the investigation.  The Motion proposes that an examiner would look into certain issues to determine if there are any claims or causes of action, which the UCC would then be able to prosecute.  Motion at 3.  Such a process ensures an unnecessary duplication of effort.  The Series B Holders would expect that if an examiner is appointed, all parties would work to make this process more efficient.

budget and scope of such appointment to, at most, a limited investigation of claims that the estate may have against third parties that can run in parallel to the resolution of critical issues being litigated by the parties. *See In re Revco D.S.*, Inc., 898 F.2d 498, 501 (6th Cir. 1990) ("[T]he bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration."); *Residential Cap., LLC*, 474 B.R. 112, 115, n. 4 (Bankr. S.D.N.Y. 2012) (noting that "[t]he scope, timing and budget for the examiner's investigation will be set by the Court after the examiner is appointed and confers with other parties in interest"); *Loral Stockholders Protective Commc'n v. Loral Space & Commc'ns., Ltd. (In re Loral Space & Commc'ns Ltd.)*, 2004 U.S. Dist. LEXIS 25681, at * 16 (S.D.N.Y. 2004) (finding it is "well established that the bankruptcy court has considerable discretion in designing an examiner's role" and "it is that court's duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings" and "[t]o that end, the [b]ankruptcy [c]ourt may exercise its discretion to limit the scope of the examiner's investigation") (internal quotation marks and citations omitted); *In re UAL Corp.*, 307 B.R. 80, 84 (Bankr. N.D. Ill. 2004) ("[T]he court retains the discretion to determine the nature and scope of the examiner's investigation.").

## Reservation of Rights

8.      The Series B Holders reserve the right to raise further and other objections to the Motion as may be necessary or appropriate.

**Conclusion**

**WHEREFORE,** the Series B Holders respectfully request that the Court (a) sufficiently limit the scope and budget of the examiner's investigation so as to avoid any undue cost and delay in these cases and (b) grant the Series B Holders such other and further relief as is just, proper, and equitable.

Dated:  September 7, 2022
 New York, New York

 Respectfully submitted,

 *Dennis F. Dunne*

 Dennis F. Dunne
 Nelly Almeida
 **MILBANK LLP**
 55 Hudson Yards
 New York, NY 10001
 Tel:  (212) 530-5000
 Fax: (212) 660-5219
 Email: ddunne@milbank.com
    nalmeida@milbank.com

 Andrew M. Leblanc
 **MILBANK LLP**
 1850 K Street, NW, Suite 1100
 Washington, DC 20006
 Tel:  (202) 835-7500
 Fax: (202) 263-7586
 Email: aleblanc@milbank.com

 *Counsel to Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP*