**Hearing Date: October 6, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: October 3, at 4:00 p.m. (prevailing Eastern Time)**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## NOTICE OF HEARING ON THE AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**PLEASE TAKE NOTICE** that a hearing on *The Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay* (the "**Motion**") will be held on October 6, 2022, at 10:00 a.m. (prevailing Eastern Time) (the "**Hearing**"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

remotely using Zoom for Government. Parties wishing to appear at the Hearing,

whether making a "live" or "listen only" appearance before the Court, need to make an

electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-

bin/nysbAppearances.pl.

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections to

the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal

Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of

New York, all General Orders applicable to chapter 11 cases in the United States

Bankruptcy Court for the Southern District of New York, and the *Interim Order (I)*

*Establishing Certain Notice, Case Management, and Administrative Procedures and (II)*

*Granting Related Relief* [Docket No. 63]; (c) be filed electronically with the Court on the

docket of *In re Celsius Network LLC,* No. 22-10964 (MG), by registered users of the

Court's electronic filing system and in accordance with all General Orders applicable to

chapter 11 cases in the United States Bankruptcy Court for the Southern District of New

York (which are available on the Court's website at http://www.nysb.uscourts.gov); and

(d) be served so as to be actually received by October 3, 2022, at 4:00 p.m. (prevailing

Eastern Time), by (i) the entities on the Master Service List available on the case website

of the above-captioned debtors and debtors in possession (the "**Debtors**") at

https://cases.stretto.com/celsius and (ii) any person or entity with a particularized

interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Ad Hoc Group.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: September 7, 2022
     New York, New York

/s/ Deborah Kovsky-Apap
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, New York 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com

*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

Hearing Date: October 6, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: October 3, at 4:00 p.m. (prevailing Eastern Time)

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

# TABLE OF CONTENTS

<u>Page</u>

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     JURISDICTION AND VENUE ......................................................................... 3

III.    FACTUAL BACKGROUND ............................................................................. 3

IV.     ARGUMENT ...................................................................................................... 8

    A.     The Ad Hoc Group Members' coins in the Withhold Accounts are
         not property of the estate. .................................................................... 8

    B.     The Court should grant the Ad Hoc Group members relief from the
         automatic stay ..................................................................................... 9

        1.     Cause exists to grant relief from the automatic stay ........................ 10

        2.     The Debtors have no equity in the coins in the Withhold
            Accounts, and such coins are not necessary to the Debtors'
            reorganization ................................................................................... 11

        3.     The Preference Limitation and Loan Limitation are not valid
            bases for denying customers access to their own property. ............ 13

V.      CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re 48th St. Steakhouse, Inc.*, 835 F.2d 427 (2d Cir. 1987)..........................................................9

*Butko v. Ciccozzi*, 2021 WL 1608481 (W.D. Pa. Apr. 26, 2021)..................................................9

*In re Ehrenfeld*, 2020 WL 5758819 (S.D.N.Y. Sept. 28, 2020) ....................................................11

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011) ................................................................................................................................18

*Katz Agency, Inc. v. The Evening News Association*, 514 F.Supp. 423 (S.D.N.Y.1981)................................................................................................................16

*Khan v. Citibank*, No. CV PX 16-3121, 2017 WL 2311185 (D. Md. May 26, 2017) ..................................................................................................................................11

*Lyon v. Contech Constr. Prods., Inc. (In re Computrex, Inc.)*, 403 F.3d 807 (6th Cir. 2005)...............................................................................................................................8

*In re Mizuno*, 288 B.R. 45 (Bankr. E.D.N.Y.2002) .......................................................................11

*Moran v. Arcano*, No. 89 Civ. 6717(CSH), 1990 WL 96761 (S.D.N.Y. July 3, 1990) ...............................................................................................................................20

*In re Munroe*, 183 B.R. 667 (Bankr. D.R.I. 1995) .........................................................................9

*Musket Corp. v. PDVSA Petroleo S.A.*, 512 F.Supp.2d 155 (S.D.N.Y.2007) ...........................15

*Owens v. Taliban*, 2022 WL 1090618 (S.D.N.Y. Apr. 11, 2022) ...............................................15

*In re Residential Cap., LLC*, 2015 WL 1281960 (Bankr. S.D.N.Y. Mar. 18, 2015) ................................................................................................................................10

*In re Richmond*, 513 B.R. 34 (Bankr. E.D.N.Y. 2014) ................................................................11

*In re Roblin Indus., Inc.*, 78 F.3d 30 (2d Cir. 1996) ......................................................................16

*In re Rodgers*, 333 F.3d 64 (2d Cir. 2003) .....................................................................................8

*In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990).............................................................10

*TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575 (S.D.N.Y. 2012)................................15, 16

*In re Thomas*, No. 14-11738 (MG), 2017 WL 123746 (Bankr. S.D.N.Y. Jan. 5, 2017) ......................................................................................................................12

*In re Timbers of Inwood Forest*, 484 U.S. 365 (1988) ..................................................12

*In re Tolona Pizza Products Corp.*, 3 F.3d 1029 (7th Cir.1993)..................................16

*In Twelve Percent Secured Noteholders v. Amarex, Inc. (In re Amarex, Inc.)*, 30 B.R. 763 (Bankr. W.D. Okla. 1983).................................................................12, 13


**STATUTES**

*11 U.S.C. § 101*.........................................................................................................19

*11 U.S.C. §362*.......................................................................................9, 10, 11, 12, 23

*11 U.S.C. § 546*.............................................................................................14, 17, 18

*11 U.S.C. § 547*........................................................................................................16

*11 U.S.C. § 741*...................................................................................................18, 19

*28 U.S.C. § 157* ..........................................................................................................3

*28 U.S.C. § 1334* ........................................................................................................3

*28 U.S.C. § 1408* ........................................................................................................3

*28 U.S.C. § 1409*........................................................................................................3


**OTHER AUTHORITIES**

Fed. R. Bankr. P.  2019 .................................................................................................8

Fed. R. Bankr. P. 4001 ..........................................................................................1, 3, 24

Fed. R. Bankr. P. 7064 ...............................................................................................14

Fed. R. Civ. P. 64.......................................................................................................14

Local Bankruptcy Rule 4001-1 ................................................................................................1, 3

NY CPLR § 6201 ...................................................................................................................20

NY CPLR § 6212 ...................................................................................................................15

The Ad Hoc Group of Withhold Account Holders (the "**Ad Hoc Group**") of Celsius Network LLC and its affiliated debtors and debtors-in-possession (collectively, "**Celsius**" or the "**Debtors**"), by and through its undersigned counsel, hereby moves, pursuant to sections 105(a) and 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order, substantially in the form attached hereto as <u>**Exhibit A**</u> (the "**Proposed Order**"), granting relief from the automatic stay with respect to the Withhold Accounts (defined below) and directing the Debtors to unfreeze the Withhold Accounts to enable members of the Ad Hoc Group to withdraw their property from those accounts (the "**Motion**"). In further support of the Motion, the Ad Hoc Group respectfully states as follows:

## I.       PRELIMINARY STATEMENT

1.      The members of the Ad Hoc Group are ordinary individuals who deposited cryptocurrency assets with Celsius. Like so many other retail customers of Celsius, the members of the Ad Hoc Group were led to believe that Celsius was a safe place to hold and grow their hard-earned savings, or to keep funds that they used for living expenses, college tuition, and other costs. And like so many other retail customers of Celsius, they have since received a crash course in the erroneousness of that belief.

2.      But the members of the Ad Hoc Group are different from most

depositors in one respect: They—along with a tiny fraction of the Debtors' customers—have coins trapped in the no-man's-land of the Withhold Accounts. The Withhold Accounts, established essentially as a holding place in states where Celsius is not licensed to offer Custody Accounts, have no real functionality on the Celsius system and are such an outlier category that they were never mentioned or disclosed to the Court by Debtors' counsel until after the Ad Hoc Group organized and retained counsel.

3.      On September 1, 2022, Celsius filed its *Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 670] (the "**Withdrawal Motion**"). In the Withdrawal Motion, Celsius conceded that "the Debtors have never claimed or acquired an equitable interest in the cryptocurrency stored in Withhold Accounts. Thus . . . Withhold Assets are held by the Debtors on behalf of customers and are not property of the Debtors' estates." Withdrawal Motion, ¶ 30. Nonetheless, the Withdrawal Motion does not seek to allow customers to withdraw their own assets that may be subject to a colorable preference claim (the "**Preference Limitation**"), or where the customer has a loan and the Debtors believe they may have a contractual right of setoff (the "**Loan Limitation**"). *Id.* at pp. 16-18.

4.      Neither the Preference Limitation nor the Loan Limitation is warranted with respect to the Withhold Accounts, and neither provides Celsius with the right or ability to continue to hold cryptocurrency "on behalf of customers"—that is, to

provide custody services to those customers—in states where it is prohibited from doing so. For the reasons discussed below, the Court should grant the Ad Hoc Group relief from the automatic stay and order the Debtors to reopen withdrawals for the members of the Ad Hoc Group with respect to all of their assets in Withhold Accounts.

## II.    JURISDICTION AND VENUE

5.    The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated February 1, 2012.

6.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.    The legal bases for the relief requested herein are Bankruptcy Code sections 105(a) and 362(d), Bankruptcy Rule 4001, and Local Rule 4001-1.

## III.    FACTUAL BACKGROUND

8.    Celsius – with the tagline "Unbank Yourself" – advertised its mission as placing "unparalleled economic freedom in the hands of the people."[2] Through its "Earn Rewards" program, Celsius encouraged retail customers to place eligible cryptocurrency into interest-bearing accounts, which Celsius then pooled to generate returns. Earn Rewards accounts had high interest rates (purportedly "up to 17% APY")

---

[2] *See* The Mission and Values of Celsius Network, available at https://celsiusnetwork.medium.com/the-mission-and-values-of-celsius-network-b5715732dc7 (accessed on August 24, 2022).

that were paid on a weekly basis in bitcoin and more than 40 other cryptocurrencies.[3]

9.      On September 17, 2021, Alabama, New Jersey, and Texas each announced a cease-and-desist action against Celsius concerning the company's Earn Rewards program, which each state classified as an offering of unregistered securities. The Alabama Securities Commission announced that it had issued an order to show cause, providing Celsius 28 days to show cause why it should not order Celsius to cease and desist from further offers or sales of securities in the state. The New Jersey Bureau of Securities issued a summary cease-and-desist order, requiring Celsius to cease offering Earn Rewards accounts as of November 1, 2021. The Texas State Securities Board issued a notice of hearing on whether to issue a proposed cease-and-desist order to Celsius. On September 23, 2021, the Kentucky Department of Financial Institutions issued Celsius an emergency order to cease and desist. *See* **Exhibit B**, State Orders.

10.      In April 2022, citing "ongoing discussions with United States regulators regarding our Earn product,"[4] Celsius stopped offering the Earn Rewards program with respect to new deposits from non-accredited investors in the United

---

[3] *See* Earn Rewards, available at https://celsius.network/earn (archived on April 8, 2022 and accessed via the Wayback Machine).

[4] Important Celsius Update for our Users in the United States (the "**Celsius Update**"), available at https://celsiusnetwork.medium.com/ important-celsius-update-to-our-us-clients-6df471420cc7#:~:text=On%20April%2015%2C% 202022%2C%20Celsius,%C2%B9 (accessed on August 24, 2022).

States.[5] Instead, in those states where Celsius was legally permitted to do so, Celsius offered a new "Custody" product to non-accredited investors. As described in an April 11 Celsius blog post:

> **On April 15, 2022, Celsius will be launching a new Custody solution for users in the United States.** Custody will serve as the centerpiece of your home for crypto, providing a secure way to navigate across Celsius' products, including store, access, borrow, spend, earn and grow.
>
> **New transfers made by non-accredited investors in the United States will be held in their new Custody accounts and will not earn rewards.** Non-accredited investors can continue to swap, borrow, and transfer within their Custody accounts based on their local jurisdiction.[6]

11.    A footnote to Celsius' announcement cautioned that "users in some US jurisdictions will not have access to the Custody service at this point due to local licensing requirements."[7]

12.    Each of the Ad Hoc Group members lives in a US state where Celsius does not offer Custody Accounts. See **Exhibit C**, Ad Hoc Group Declarations. On or about April 12, 2022, each of the Ad Hoc Group members received an email from Celsius explaining that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius

---

[5] Celsius advised customers that coins deposited prior to April 15, 2022 would be permitted to remain in the Earn Rewards program and continue to earn rewards. *Id.*

[6] *Id.* (emphasis in original).

[7] *Id.*

for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state." *Id.*

13.     After the "Custody solution" was implemented on April 15, 2022, members of the Ad Hoc Group learned for the first time about a new type of account that they got in lieu of a Custody Account: an account variously referred to as the "Withheld" or "Withhold" account ("**Withhold Account**"), which appeared without explanation in the Celsius app and functioned as a temporary waystation for coins after they were withdrawn from the Earn Rewards program, on their way to be being transferred to an external wallet. In order to withdraw coins from Celsius after April 15, 2022, customers with Withhold Accounts could no longer transfer coins to an external wallet directly from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold. *See* **Exhibit C**, Ad Hoc Group Declarations.

14.     Coins in the Withhold Accounts are not subject to any agreed terms of use between depositors and Celsius. See *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* ("**Terms of Use**")[8] [Docket No. 393] (no reference to Withhold Accounts in any version of

---

[8] Unless otherwise specified, all references to the Terms of Use are to the "Terms of Use Last Revised: April 14, 2022," appended as Exhibit A-8 to Docket No. 393.

the terms of use); *see also id.* Ex. A-8, ¶ 11 (explaining that a customer's exercise of his "call option" to remove coins from the Earn Rewards program "will terminate . . . your loan to Celsius"). Thus, once coins are moved out of the Earn Rewards program, the "loan" agreement with respect to those coins terminates—and since depositors did not agree to any terms governing coins in the Withhold Accounts, Celsius acquired no contractual rights to stake, trade, hypothecate, or otherwise use those coins in any way.

15.     An Ad Hoc Group member with an outstanding loan that matures in October 2022 received an email from Celsius advising him that "[i]f you wish to repay and close a maturing loan, your payment must be made by a wire transfer of fiat currency (USD)." *See* **Exhibit C-1**, ¶ 7. Celsius did not give him the option to use cryptocurrency in, or transfer coins into, his Withhold Accounts to pay the loan.

16.     In fact, customers with Withhold Accounts who try to make new coin deposits onto the Celsius platform receive an automated email directing them to withdraw such deposits: "Due to recent regulatory changes, we are currently unable to accept new coin transfers in your jurisdiction at this time. **Please withdraw the funds from your withheld account at your earliest convenience.**" *See* **Exhibit C-2**, ¶ 8 (emphasis in original Celsius email).

17.     On June 12, 2022, Celsius froze all customer withdrawals (the "**Pause**"). *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23], ¶ 14. The Pause

Pg 16 of 121

continued through the Debtors' bankruptcy filings on July 13, 2022 and is still in place today. According to statements made by Debtors' counsel at the second day hearing in these cases, coins with a total value of approximately $14.5 million were frozen in Withhold Accounts as of the petition date. The Ad Hoc Group's coins in Withhold Accounts were worth a total of approximately $1.24 million on the petition date. *See* First Supplemental Verified Statement Pursuant to Bankruptcy Rule 2019 [Docket No. 736].

18.    As stated in the Debtors' Withdrawal Motion, "the Debtors have never claimed or acquired an equitable interest in the cryptocurrency stored in Withhold Accounts. Thus, . . . Withhold Assets are held by the Debtors on behalf of customers and are not property of the Debtors' estates. Such assets are owned in the first instance by the respective customers." Withdrawal Motion ¶ 30.

## IV.    ARGUMENT

### A.    The Ad Hoc Group Members' coins in the Withhold Accounts are not property of the estate.

19.    As the Debtors concede, cryptocurrency assets in the Withhold Accounts are not property of the Debtors' estates. Withdrawal Motion ¶ 30. Where a debtor has lost legal and equitable interests in property prior to the petition date, that property does not become property of the estate upon the bankruptcy filing—even if the debtor still retains possession of the property. *In re Rodgers*, 333 F.3d 64, 69 (2d Cir. 2003); *see also Lyon v. Contech Constr. Prods., Inc. (In re Computrex, Inc.)*, 403 F.3d 807, 812-13 (6th Cir. 2005) (holding that where a debtor had only a possessory interest in funds, such

funds were not property of the estate); *In re Munroe*, 183 B.R. 667, 669 (Bankr. D.R.I. 1995) ("There is hardly any question that an entity which has no legal or equitable interest in the property and has nothing more but a bare possession has no interest which qualified to be the 'properties of the estate.'") (internal quotation marks and citation omitted).

20.    When the Ad Hoc Group members withdrew their coins from the Earn Rewards program, their "loans"—their only contractual arrangement with Celsius—terminated. *See* Terms of Use ¶ 11. No new contractual relationship with Celsius replaced that terminated arrangement with respect to coins in the Withhold Accounts. *Id*. The Ad Hoc Group members did not grant, and Celsius did not acquire, any legal or equitable interest in the Ad Hoc Group members' coins in the Withhold Accounts. Celsius' lack of legal or equitable interest in the coins is highlighted by the fact that Celsius was legally barred from offering services to Withhold Account holders once they had withdrawn their coins from Earn Rewards. In effect, once coins were withdrawn from Earn Rewards, even while still awaiting transfer to an external address, they were no longer part of the Celsius system.

**B.    The Court should grant the Ad Hoc Group members relief from the automatic stay.**

21.    The Ad Hoc Group recognizes that even bare possession, in some circumstances, may trigger the automatic stay under section 362(a) of the Bankruptcy Code. *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987); *but see Butko v. Ciccozzi*, 2021 WL 1608481, at *10 & n.6 (W.D. Pa. Apr. 26, 2021) (compiling cases finding that some

colorable legal right, in addition to bare possession, is required in order to obtain the

benefit of the automatic stay). Even if the automatic stay is invoked by Celsius' mere

possession of the Ad Hoc Group members' coins, relief from the stay is warranted under

sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code.

### 1. Cause exists to grant relief from the automatic stay.

22.    11 U.S.C. §362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the
> court shall grant relief from the stay provided under subsection (a)
> of this section, such as by terminating, annulling, modifying, or
> conditioning such stay . . . for cause, including the lack of adequate
> protection of an interest in property of such party in interest. . . .

11 U.S.C. §362(d).

23.    The Bankruptcy Code does not define the phrase "for cause." *In re*

*Residential Cap., LLC*, 2015 WL 1281960, at *3 (Bankr. S.D.N.Y. Mar. 18, 2015).[9] The

legislative history indicates that it is intended to be a flexible standard. *See* S. Rep. No.

989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838

("The lack of adequate protection of an interest in property is one cause for relief, but is

not the only cause."); H.R. Rep. No. 595, 95th Cong., 2d Sess. 343–44, *reprinted in* 1978 U.S.

Code Cong. & Admin. News 6300 (stating that the "facts of each request will determine

whether relief is appropriate under the circumstances").

---

[9] The oft-cited *Sonnax* factors were identified by the Second Circuit as "factors to be weighed in deciding
whether litigation should be permitted to continue in another forum" and thus appear to be inapposite
here. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

-10-

24.      Numerous courts have found that a debtor's bare possession of

property, without any accompanying legal or equitable interest, is "insufficient to justify

[the] continuation [of the automatic stay] where relief has been sought." *In re Mizuno*, 288

B.R. 45, 49–50 (Bankr. E.D.N.Y.2002); *see also In re Richmond*, 513 B.R. 34, 41 (Bankr.

E.D.N.Y. 2014) (same); *Khan v. Citibank*, No. CV PX 16-3121, 2017 WL 2311185, at *1 (D.

Md. May 26, 2017) (noting that because "a mere possessory interest in not subject to a

plan of reorganization," cause exists to lift the automatic stay under 11 U.S.C. § 362(d)(1)).

25.      Here, Celsius' bare possession of the Ad Hoc Group's coins, without

any corresponding legal or equitable interest in such coins, does not justify the

continuation of the automatic stay. Rather, Celsius' lack of legal or equitable interest

constitutes "cause" for terminating the stay and returning the Ad Hoc Group's coins to

their rightful owners.

**2.      The Debtors have no equity in the coins in the Withhold
Accounts, and such coins are not necessary to the Debtors'
reorganization.**

26.      Section 362(d)(2) of the Bankruptcy Code requires a court to grant

relief from the automatic stay against property if "(A) the debtor does not have an equity

in such property; and (B) such property is not necessary to an effective reorganization."

11 U.S.C. § 362(d)(2). "The creditor bears the burden to show a lack of equity. . . . Once

lack of equity is established, the burden shifts to the debtor to show that the property is

necessary for effective reorganization." *In re Ehrenfeld*, 2020 WL 5758819, at *3 (S.D.N.Y.

Sept. 28, 2020) (citations omitted); *see also In re Thomas*, No. 14-11738 (MG), 2017 WL 123746, at *2 (Bankr. S.D.N.Y. Jan. 5, 2017) ("If the movant shows that the debtor lacks equity in the property, the debtor must then show 'that there [is] a reasonable possibility of a successful reorganization within a reasonable time' and that the property is 'essential' to such a reorganization.") (quoting *In re Timbers of Inwood Forest*, 484 U.S. 365, 375-76 (1988)).

27.     The first prong of the test is met because, as discussed above, Celsius has no legal or equitable interest in, or right to use, the coins in the Withhold Accounts. Celsius has mere possession of property belonging to the Ad Hoc Group members. As to the second prong, it would not be sufficient for Celsius simply to assert that the Withhold Account coins are "necessary" to its reorganization: "Since all debtors who resist a request for relief from the stay may regard all their assets as indispensable, § 362(d) must require more than a mere assertion that the property is needed or could be helpful." *In Twelve Percent Secured Noteholders v. Amarex, Inc. (In re Amarex, Inc.)*, 30 B.R. 763, 767 (Bankr. W.D. Okla. 1983).

28.     The Ad Hoc Group's coins in Withhold Accounts were worth a total of approximately $1.24 million on the petition date. To call that a drop in the bucket would be an understatement. Even if the Court were to consider not just the Ad Hoc Group's coins but the $14.5 million total petition date value of all coins in Withhold Accounts, that amount is still just one-third of one percent of the Debtors' $4.3 billion in

assets. There is simply no plausible argument that such a relatively miniscule amount

could be "essential" to the Debtors' yet-to-be-announced reorganization plan.[10]

29.    But more importantly, even if Celsius could somehow show that

one-third of one percent would make or break its reorganization, it would still fail on the

second prong because it has no ability to make use of the coins in the Withhold Accounts

in a reorganization or otherwise. It has no equity interest in or contractual rights with

respect to the coins. Due to regulatory constraints, it cannot earn returns by staking or

hypothecating the coins. Celsius has even informed retail borrowers that it will not accept

the coins as payment for loans. In short, the coins are completely useless to Celsius. *Cf.*

*Amarex*, 30 B.R. at 767 (finding that the debtor had failed to sustain its burden of showing

that certain funds were necessary for an effective reorganization, in part because "it has

not persuaded the court that there is a likelihood of its ever being able to have access to

the fund").

**3.    The Preference Limitation and Loan Limitation are not valid
bases for denying customers access to their own property.**

**a.    The Preference Limitation is an improper attempt by the
Debtors to obtain pre-suit attachment of the Ad Hoc
Group's assets.**

30.    In their Withdrawal Motion, the Debtors suggest that they should be

able to continue to hold coins that they concede are not property of the estate, because

---

[10] The Ad Hoc Group takes no position on whether it appears that there is "a reasonable possibility of a
successful reorganization within a reasonable time" and therefore leaves the Debtors to their proofs.

doing so is necessary to enable the Debtors "to effectively pursue preference actions where colorable claims exist." Withdrawal Motion ¶ 35. In doing so, the Debtors have conflated the ability to pursue preference actions with the ease of collection.

31.     Under Rule 64 of the Federal Rules of Civil Procedure, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). However, Rule 7064 of the Federal Rules of Bankruptcy Procedure limits the application of Rule 64 *to adversary proceedings*. There is currently no adversary proceeding pending against any member of the Ad Hoc Group, nor against any other holder of a Withhold Account. It is entirely possible that there will never be any adversary proceeding filed to avoid and recover any Transferred Withhold Assets (as defined in the Withdrawal Motion); as the Debtors have emphasized, both in their motion and orally before this Court, they are continuing to analyze the facts and law with respect to potential preference claims, and no determination has yet been made as to whether any such claims can or should be pursued. *See, e.g.,* Withdrawal Motion ¶¶ 22, 23, 33.

32.     Yet the Debtors seek to continue to hold property that does not belong to them indefinitely (quite possibly until the two-year deadline for filing preference complaints under 11 U.S.C. § 546(a)), so that *if* the Debtors do decide to try to avoid the transfers of Transferred Withhold Assets, and *if* all of the Withhold Account holders' defenses to the preference claims fail, and *if* the Withhold Account holders have,

-14-

in the meantime, become unable to satisfy any judgments that are obtained, then the Debtors can simply pay themselves from coins in the Withhold Accounts. That is not how pre-judgment attachment works. There is simply no procedural, legal or equitable basis for the Debtors to continue to deprive the Ad Hoc Group members of property that the Debtors are wrongfully holding.

33.    Even if there were an adversary proceeding pending against the Ad Hoc Group, the Debtors would still have to meet the requirements for pre-judgment attachment. In order to obtain a pre-judgment attachment under New York law, a plaintiff (and it must actually *be* a plaintiff, not just a potential future plaintiff) must show, by affidavit or other written evidence, that: (1) the plaintiff has a cause of action for a money judgment; (2) it is probable that the plaintiff's claim will succeed on the merits; (3) one or more grounds for attachment provided under New York law exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. *See* NY CPLR § 6212; *Owens v. Taliban*, 2022 WL 1090618, at *2 (S.D.N.Y. Apr. 11, 2022).

34.    Satisfaction of the statutory criteria is not a guarantee that a court will issue an order of attachment. *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 586 (S.D.N.Y. 2012). "[S]uch relief is discretionary, and since attachment is a harsh remedy, the court must exercise care in its application." *Musket Corp. v. PDVSA Petroleo S.A.*, 512 F.Supp.2d 155, 160 (S.D.N.Y.2007). Furthermore, "attachment under New York law solely for security purposes is appropriate only when it appears likely that a plaintiff will have

-15-

difficulty enforcing a judgment." *TAGC*, 842 F. Supp. 2d at 586-87 (quoting *Katz Agency, Inc. v. The Evening News Association*, 514 F.Supp. 423, 429 (S.D.N.Y.1981)). Here, the Debtors have not and cannot show that they would be entitled to pre-judgment attachment of the Ad Hoc Group's property.

> **(1)    The Debtors' preference claims, if actually asserted, would fail.**

35.    The Debtors are not likely to succeed on the merits of preference claims to avoid and recover the transfer of Transferred Withhold Assets for at least two reasons. First, the transfers are shielded from avoidance under section 547(c) of the Bankruptcy Code, because they were made pursuant to the Terms of Use governing withdrawals and thus were "made according to ordinary business terms." *See* 11 U.S.C. § 547(c)(2)(B).

36.    The Second Circuit has adopted Judge Posner's well-known opinion "that 'ordinary business terms' refers to the general practices of similar industry members, and that 'only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C.'" *In re Roblin Indus., Inc.*, 78 F.3d 30, 39-41 (2d Cir. 1996) (quoting *In re Tolona Pizza Products Corp.*, 3 F.3d 1029 (7th Cir.1993) and stating that "[w]e agree with the reasoning of *Tolona Pizza* and hold that 11 U.S.C. § 547(c)(2)(C) requires a creditor to demonstrate that the terms of a payment for which it seeks the protection of the ordinary course of business exception fall within the bounds of ordinary practice of others similarly situated"). Here,

the Terms of Use gave users the ability to demand immediate, complete or partial repayment of the coins "loaned" to Celsius through the Earn Rewards Program. Terms of Use, ¶ 11. The general practice of other cryptocurrency exchanges likewise is to permit users to withdraw their coins from "earn" programs at will and at any time. *See, e.g.*, BlockFi Interest Account Terms (Existing US only), *available at* https://blockfi.com/interest-account-terms-existing-us (accessed on September 5, 2022) ("You may make a request for complete or partial withdrawal of principal from your Crypto Interest Account at any time."; Voyager Earn Program Terms & Conditions, *available at* https://www.investvoyager.com/earn (accessed on September 5, 2022) ("You may request a withdrawal of principal from your account at any time."). There was nothing unusual or idiosyncratic about Celsius allowing customers to withdraw coins at will from the Earn Rewards program; thus, withdrawal of the Transferred Withhold Assets in accordance with Celsius' industry-standard Terms of Use was done "according to ordinary business terms."

37.    Second, the withdrawal of Transferred Withhold Assets is not an avoidable transfer because it was a securities settlement payment. It is thus shielded by the safe harbor of section 546(e) of the Bankruptcy Code, which provides that

> the trustee may not avoid a transfer that is a . . . settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a . . . financial participant, . . . or that is a transfer made by or to (or for the benefit of) a . . . financial participant, . . . in connection with a securities contract, as defined in section 741(7), . . . that is made before the commencement of the

case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

38.    The stated legislative purpose of section 546(e) is to prevent "the insolvency of one commodity or security firm from spreading to other firms and possibly threatening the collapse of the affected market." H.R. Rep. No. 97-420, at 1 (1982), reprinted in 1982 U.S.C.C.A.N. 583, 583, 1982 WL 25042. The safe harbor was "intended to minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries," by ensuring the integrity and finality of commodities and securities transactions. *Id.* This policy goal is as pertinent in the context of the burgeoning cryptocurrency market as in the securities and commodities markets. Moreover, the statutory definitions of "settlement payment,"[11] "financial

---

[11] "Settlement payment" means "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). While this definition is somewhat circular, the Second Circuit has clarified that a payment to settle a debt—as the repayment of customers' loans to Celsius was, according the Debtors—may fall within the meaning of "settlement payment" for safe harbor purposes. *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011).

participant,"[12] and "securities contract"[13] all point to one conclusion: that the removal of coins from Celsius' Earn Rewards program was the settlement of a securities transaction that is subject to the safe harbor.

> **(2)    The Debtors have no grounds for attachment under New York law.**

39.    Section 6201 of the New York CPLR provides, in relevant part,[14] that an order of attachment may be granted where "(1) the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; or (2) the defendant resides or is domiciled in the state and cannot be personally served despite diligent efforts to do so; or (3) the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from

---

[12] "Financial participant" means "an entity that, at the time it enters into a securities contract, . . . or at the time of the date of the filing of the petition, has one or more agreements or transactions described in paragraph (1), (2), (3), (4), (5), or (6) of section 561(a) with . . . any other entity (other than an affiliate) of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding (aggregated across counterparties) at such time or on any day during the 15-month period preceding the date of the filing of the petition. . . ." 11 U.S.C. § 101(22A)(A). Under this definition, provided that the definition of "securities contract" is also met, a multi-billion dollar exchange such as Celsius is clearly a "financial participant."

[13] "Securities contract" means, among other things, "a contract for the purchase, sale, or loan of a security." 11 U.S.C. § 741(7)(A)(i). As noted above, a number of state regulatory agencies have determined that Celsius' Earn Rewards product is actually a security that users invest in when they open accounts with Celsius. Celsius' Terms of Use therefore is a "securities contract" within the meaning of the Bankruptcy Code.

[14] The other bases listed in the statute involve claims brought by victims of crimes and claims for recognition or domestication of orders of other courts, and are plainly not applicable.

the state or is about to do any of these acts." NY CPLR § 6201. However, non-domiciliary

status is not sufficient ground for granting an attachment "[w]here ... jurisdiction over

the defendant is conceded and attachment is sought only to secure a judgment." *Moran*

*v. Arcano*, No. 89 Civ. 6717(CSH), 1990 WL 96761, at *2 (S.D.N.Y. July 3, 1990). Rather, the

inquiry in that case focuses on "whether petitioner's fear that the judgment will not be

satisfied is reasonable." *Id.*

40.    Here, the Debtors have not and cannot make any showing that (i)

any member of the Ad Hoc Group has tried to avoid personal service, (ii) any member of

the Ad Hoc Group is fraudulently trying to hide assets from the Debtors, or (iii) there is

any reasonable basis to fear—should a preference action be brought against a member of

the Ad Hoc Group and a judgment somehow obtained—that such judgment will not be

satisfied. These are the facts that the Debtors must demonstrate as to each and every

individual member of the Ad Hoc Group whose assets its seeks to attach, and it has not

even attempted to do so in the Withdrawal Motion. Of course, it would be more

*convenient* for the Debtors to have the Ad Hoc Group's property under their control for

payment of a hypothetical future judgment. But the Court cannot order the attachment

of the Ad Hoc Group's assets for the Debtors' mere convenience; the Ad Hoc Group

members are entitled to the protection of the legal standard under New York law before

they can be deprived of their property.

41.    Thus, because the Debtors are not in a procedural posture to

request issuance of an order attaching the Ad Hoc Group's assets, and would not

succeed in such a request even if they were, the Preference Limitation provides no basis

for the Debtors to continue to hold coins that are not property of the estate and that they

have no contractual right or regulatory authority to hold.

> **b.**    **The Loan Limitation does not apply to Withhold Accounts.**

42.    The Debtors state in their Withdrawal Motion that they "need to

consider the extent to which they may hold a right of setoff against obligations owed to

customers, including the customers' obligation to repay loans under the Borrow

Program." Withdrawal Motion ¶ 36. The Debtors further note that customers in the

Borrow Program agreed to Loan Terms of Use that provide for a right of setoff "even as

to certain Custody Assets." *Id.* ¶ 37. Specifically, the Loan Terms of Service provide that

if a customer fails to make any repayment of principal when due, Celsius may "deduct

from [the customer's] Celsius account any Eligible Stablecoins to recover [the

customer's] repayment obligation in full or in part." *Id.* (quoting Terms of Use, Ex. B-9).

43.    The Withhold Accounts are not part of a customer's Celsius

Account and are not subject to this provision of the Loan Terms of Service. The Terms of

Use define "Account" or "Celsius Account" to mean "a User's designated user account

on the Celsius website or mobile application, ***allowing a User to access and use the***

***Services***. . . ." Terms of Use ¶ 2 (emphasis added). As discussed above, the Withhold

Accounts expressly and intentionally did not "allow[] a User to access and use the

Services" on Celsius' platform. Celsius thus does not have a right to deduct Eligible

Stablecoins from Withhold Accounts to pay off loans. And even under its own

argument, Celsius certainly does not have a right to deduct any coins that are *not*

"Eligible Stablecoins" from Withhold Accounts. Any coins in Withhold Accounts that

meet that description clearly must be released to their owners.

44.     Celsius' lack of setoff rights against Withhold Accounts is

highlighted by the general Terms of Use, which expressly provide for a setoff right

against "any Digital Asset in your Celsius Account, including any of your Digital Assets

using the Custody Service (i.e., in a Custody Wallet)," but make no similar statement

with respect to coins being withheld in the Withhold Accounts. *Id.* ¶ 9.

45.     Furthermore, even if Celsius could have set off loan obligations

against Eligible Stablecoins in Withhold Accounts, it has effectively waived that right by

instead demanding that borrowers pay outstanding loans by wiring fiat currency.

Celsius cannot have it both ways: it cannot refuse to allow borrowers to pay off their

loans using coins in Withhold Accounts, while simultaneously refusing to release those

coins in order to preserve a right of setoff.

> **c.     The Debtors may not continue to hold coins in Withhold Accounts "on behalf of customers" because they are not licensed to do so.**

46.     The reason that Withhold Accounts were created in the first place is

that Celsius cannot "lawfully offer the Custody Program in nine states (the 'Prohibited

<u>States</u>'),'' as it lacks the necessary licenses to do so. Withdrawal Motion ¶ 18; *see also* Celsius Update (stating that "users in some US jurisdictions will not have access to the Custody service at this point due to local licensing requirements").

47.     In other words, although coins landed temporarily in Withhold Accounts on their way to external wallets, Celsius did not and does not have the necessary licenses to continue to hold those coins in Prohibited States "on behalf of customers," as described in paragraph 30 of the Withdrawal Motion. Celsius' Withdrawal Motion in effect asks the Court to allow it to do an end-run around state regulations, and to permit it to provide custody services for customers' property in states where it is prohibited from doing so. Not only does this violate customers' property rights in their assets, it may expose the Debtors to state and/or federal regulator actions, fines and penalties.

## V.    CONCLUSION

The Ad Hoc Group members' right to withdraw their coins from the Withhold Accounts is not stayed because Celsius does not have an interest in those coins that is protected by the automatic stay granted by 11 U.S.C. §362. Alternatively, if the Court finds that the automatic stay is triggered by Celsius' mere possession of the coins in the Withhold Accounts, the stay should be lifted because (i) cause exists to grant members of the Ad Hoc Group relief from the automatic stay, and (ii) Celsius has no equity in the coins, and the coins are not necessary to Celsius' potential reorganization.

-23-

Furthermore, neither the Preference Limitation nor the Loan Limitation proposed by the Debtors in the Withdrawal Motion provides a legitimate basis to allow the Debtors to continue to hold assets that are not property of the estate—particularly where state regulations prohibit them from doing so.

WHEREFORE, the Ad Hoc Group respectfully requests that the Court (i) enter an order holding that relief from the automatic stay is not required in order for the Ad Hoc Group members to withdraw their coins from their Withhold Accounts because the Debtors' estates do not have any interest in those coins or, in the alternative, (ii) enter an order granting relief from the automatic stay to permit the Ad Hoc Group members to withdraw their coins from their Withhold Accounts and waiving the 14-day stay under Fed. R. Bankr. P. 4001(a)(3), (iii) direct Celsius to reopen withdrawals from the Ad Hoc Group members' Withhold Accounts to enable them to withdraw their coins therein, and (iv) grant such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 7, 2022
      New York, New York

/s/ Deborah Kovsky-Apap

**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, New York 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com

*Counsel to the Ad Hoc Group of
Withhold Account Holders*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY, AND (II) AUTHORIZING AND DIRECTING THE DEBTORS TO REOPEN WITHDRAWALS WITH RESPECT TO ASSETS HELD IN THE WITHHOLD ACCOUNTS

Upon the motion (the "**Motion**")[2] of the Ad Hoc Group of Withhold

Account Holders for entry of an order (this "**Order**"), granting relief from the automatic

stay and directing the Debtors to reopen withdrawals from the Withhold Accounts, and

granting related relief, all as more fully set forth in the Motion; and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference from the United States District Court for the Southern

District of New York, entered February 1, 2012; and this Court having the power to

enter a final order consistent with Article III of the United States Constitution; and this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Court having found that venue of these cases in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the

Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and this Court having found that the Ad Hoc Group's notice of the Motion and

the Order and opportunity for a hearing thereon were appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "**Hearing**"); and this Court having determined that the

legal and factual bases set forth in the Motion and at the Hearing establish just cause for

the relief granted herein; and after due deliberation and sufficient cause appearing

therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized and directed to permit members of the

Ad Hoc Group to withdraw all digital assets held in Withhold Accounts.

3.      Notwithstanding anything in this Order to the contrary, this Order

does not authorize the Debtors to permit withdrawals of any cryptocurrency (a) other

than cryptocurrency held in the Withhold Accounts, or (b) by any employee or insider

or former employee or insider of the Debtors or any non-Debtor affiliate.

4.      For the avoidance of any doubt, withdrawals permitted pursuant to

this Order will be in cryptocurrency, not in fiat currency.

5.      Notice of the Motion satisfies the requirements of Bankruptcy Rule

6004(a).

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and

conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized and directed to take all actions

necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      This Court retains exclusive jurisdiction with respect to all matters

arising from or related to the implementation, interpretation, and enforcement of this

Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**State Orders**

## STATE OF ALABAMA
## ALABAMA SECURITIES COMMISSION

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| Celsius Network, LLC ) | **ADMINISTRATIVE ORDER** |
| ) | **SC-2021-0012** |
| ) | |
| ) | |
| _____RESPONDENT_____ ) | |

## ORDER TO SHOW CAUSE WHY THE ALABAMA SECURITIES COMMISSION SHOULD NOT ORDER RESPONDENTS TO CEASE AND DESIST FROM FURTHER OFFERS OR SALES OF SECURITIES IN THIS STATE

The Alabama Securities Commission ("Commission"), having the authority to administer and provide for the enforcement of all provisions of Title 8, Chapter 6, Code of Alabama 1975, the Alabama Securities Act ("Securities Act"), upon due consideration of the subject matter hereof, has determined as follows:

## RESPONDENT

1.     **Celsius Network, LLC ("Celsius")** is a Delaware limited liability company with offices at 221 River Street, 9th Floor, Hoboken, New Jersey. Celsius conducts its business on the internet, through a website accessible to the general public at https://www.celsius.network (the "Celsius Website"), which is also accessible through Celsius' own proprietary app via smartphone.

## SUMMARY

**Celsius** is a financial services company that generates revenue through cryptocurrency trading, lending, and borrowing, as well as by engaging in propriety trading. Since June 2018, **Celsius** has been, at least in part, funding its lending operations and proprietary trading through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts. **Celsius**

refers to these unregistered securities as its "Earn Rewards" account.

**Celsius** solicits investors to invest in the Earn Rewards accounts by having investor deposit certain eligible cryptocurrencies into the investors' accounts at **Celsius.** **Celsius** then pools these cryptocurrencies together to fund its various income generating activities, including lending operations and proprietary trading. In exchange for investing in the Earn Rewards product, investors are promised an attractive interest rate that is paid weekly in the same type of cryptocurrency as originally invested, or, subject to certain conditions, in **Celsius'** native digital token CEL (which are not currently available for U.S.-based account holders).

The Celsius Earn Rewards accounts are not registered with the Commission or any other securities regulatory authority, or otherwise exempt from registration. Celsius Earn Rewards accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA"). This lack of protective scheme subjects **Celsius** investors to additional risks not borne by investors who maintain assets with most SIPC member broker-dealers, banks and savings associations, or credit unions.

Despite the lack of safeguards that SIPC, FDIC, and the NCUA would offer or the regulatory oversight of registration, **Celsius** held the equivalent of more than $14 billion from the sale of these unregistered securities in violation of the Securities Law as of August 18, 2021.

## STATEMENT OF FACTS

2.     **Celsius** offers and sells its Earn Rewards program in the form of individual and corporate accounts. Investors in these accounts ("Earn Rewards Investors") deposit certain popular cryptocurrencies with **Celsius** who, in turn, purports to pay "up to 17.78% APY." The purported Earn Rewards rates advertised by **Celsius** are well in excess of the rates currently being offered by short-term investment grade fixed income securities or bank savings accounts.

3.     When an investor signs up with **Celsius, Celsius** verifies their age, identity, and

address, provides an identification document, and completes a user agreement and a KYC (Know Your Customer) protocol. A link to the Celsius Terms of Use ("Celsius Terms") appears at the bottom of each of **Celsius'** web pages. **Celsius** offers its Earn Rewards accounts to anyone over the age of eighteen, except for residents of certain foreign jurisdictions subject to regulatory restrictions.

4.      **Celsius** accepts specific brands of cryptocurrencies for deposit in the Earn Rewards accounts. The **Celsius** website states that **Celsius** does not require a minimum amount of cryptocurrency for deposit in an Earn Rewards account. **Celsius** also pays interest on deposits of certain stablecoins in its Earn Rewards accounts, as explained on the **Celsius** website.

5.      Earn Rewards Investors earn a variable interest rate on Earn Rewards accounts and may withdraw their digital assets at any time, subject to a maximum three-day processing time as specified by **Celsius**. The variable interest rates for the Earn Rewards Investors are posted on the **Celsius** website.   **Celsius'** interest rates for deposits of certain cryptocurrencies in its Earn Rewards accounts are "tiered" depending upon the nature and amount of the cryptocurrency invested. Prior to the issuance of this order, Earn Rewards Investors were entitled to 6.2% "Rewards" or interest on their first Bitcoin deposited and 3.51% on additional deposits of Bitcoin. Rates on other cryptocurrencies ranged from 13.99% for the Synthetix Network Token (SNX) to 0.0% for Ripple (XRP). The manner in which interest is calculated and credited to Earn Rewards Investors is illustrated on the **Celsius** website and specified in the Celsius Terms:

> "Rewards are payable based on a daily periodic rate applicable to the Loaned Digital Assets. The daily periodic rate is calculated by dividing the then-applicable annual reward rate by three hundred sixty-four (364) days; then it is further divided down to the hour, minute, and second of that day. Loaned Digital Assets, including those received as Rewards from previous weeks, will begin gaining Rewards according to the hour, minute, and second on the timestamp verifying the completion of the applicable transaction and shall cease and/or decrease the amount paid as Rewards at the moment when the User has entered an external transmission, withdrawal or transfer of rights (via CelPay) request, or posted any Loaned Digital Assets as collateral for a Fiat Loan. Therefore, any Loaned Digital Asset transferred mid-week will receive Rewards with no distinction, based on the rates calculated for the relative time within the allocation period."

6.      The Celsius Terms provide that an Earn Rewards Investor relinquishes control over the deposited cryptocurrency to **Celsius** and that **Celsius** is free to use those assets as **Celsius** sees fit, including commingling the Earn Rewards Investor's cryptocurrency with those of other Earn Rewards Investors investing those pooled assets in the market and/or lending them to institutional and corporate borrowers. Having relinquished control over the deposited cryptocurrency in their Earn Rewards accounts, the Earn Rewards Investors are passive investors.

7.      Specifically, Paragraph 4. B. "Earn Rewards" of the recently amended Celsius Terms provides:

> "Our Earn Rewards service allows you to earn a financing fee from Celsius, referred to as "Rewards", in the form of Digital Assets (either in-kind, i.e. in the same Digital Asset you deliver, or in CEL Tokens, where permitted) in exchange for entering into open-ended loans of your Eligible Digital Assets to Celsius under the terms hereof. By lending your Eligible Digital Assets to Celsius you grant Celsius all rights and title to such Digital Assets, for Celsius to use in its sole discretion."

Paragraph 13 of the recently amended Celsius Terms, "Consent To Celsius's Use of Digital Assets," goes into greater detail as to the status of cryptocurrency deposited with **Celsius** by Earn Rewards Investors:

> "In consideration of the Rewards payable to you on your Celsius Account and the use of our Services, you grant Celsius, subject to applicable law and for the duration of the period during which the Eligible Digital Assets are loaned to us through your Celsius Account, all right and title to such Digital Assets, including ownership rights, and the right, without further notice to you, to hold such Digital Assets in Celsius' own Virtual Wallet or elsewhere, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets in Celsius' full discretion. You acknowledge that with respect to the Digital Assets used by Celsius pursuant to this paragraph:
>
> (i)     You will not be able to exercise rights of ownership;
>
> (ii)    Celsius may receive compensation in connection with lending or otherwise using Digital Assets in its business to which you have no claim or entitlement;

and

(iii)    In the event that Celsius becomes bankrupt, enters liquidation or is otherwise unable to repay its obligations, you mayn't be able to recover or regain ownership of such Digital Assets, and other than your rights as a creditor of Celsius under any applicable laws, you may not have any legal remedies or rights in connection with Celsius' obligations to you."

8.    **Celsius** pools the deposited cryptocurrencies with other **Celsius** assets to, among other income-generating activities, collateralize **Celsius'** borrowings, purchase securities and digital assets for **Celsius'** own account, make loans to institutional and corporate borrowers, and mine for cryptocurrency. **Celsius** does not disclose to the Earn Rewards Investors the amount of money or digital assets devoted to each of these investment activities, the nature, identity or creditworthiness of the borrowers, the terms and duration of the loans, the assets actually loaned or traded, or the profits or losses derived from these activities.

9.    **Celsius'** founder, Alex Mashinsky, stated in a March 7, 2021 article he authored for the DataDriveInvestors website, reposted in the "Media" tab on the **Celsius** website, "[u]sers transfer assets with Celsius, Celsius lends funds to institutions and returns up to 80% of earnings to users."

10.    As of the date of this Order, the Earn Rewards product is not currently registered with the Commission nor subject to a perfected exemption from registration. A check of the Edgar database indicates that the Earn Rewards product is not registered with the SEC nor subject to a perfected exemption from registration under Federal securities law. A review of **Celsius'** offering materials and website offered no disclosure that the Earn Rewards product was not registered with either the SEC or the Commission.

11.    **Celsius** offers an Application Programming Interface ("API") that allows certain institutional users, known as **Celsius** "API Partners," to integrate with the **Celsius** platform. The API allows API Partners the ability to offer Earn Rewards accounts to retail investors in two

different ways:

> (i)    The **Celsius** "Segmented Accounts" platform allows API Partners to offer such partner's customers Earn Rewards accounts through the API Partners' designated portal. Apart from the difference in how the Earn Rewards account is accessed, individual retail customers of API Partners Earn Rewards Investors are subject to the same rights, benefits, terms, and conditions as **Celsius'** own Earn Rewards Investors.

> (ii)    **Celsius'** API Partners can choose to access the **Celsius** Earn Rewards accounts through what **Celsius** refers to as an "Omnibus Account." In the Omnibus Account, the API Partner maintains a direct relationship with **Celsius** and invests in a Earn Rewards account for the benefit of the API Partner's individual customers. The cryptocurrencies of the API Partner's individual customers are aggregated and invested in a single Earn Rewards account on behalf of, and for the benefit of the API Partner's individual retail customers.

## CONCLUSIONS OF LAW

12.    Pursuant to Section 8-6-2(10), <u>Code of Alabama 1975</u>, the definition of security includes any "investment contract." The investment programs, identified as the "Celsius Earn Reward", constitute the solicitation of an investment of money; from which an investment return is expected; with such investment return based on the managerial efforts of **RESPONDENT**. The solicited investments, identified as the **Celsius** "Earn Rewards program", are "investment contracts" and are securities under the Securities Act.

13.    Pursuant to Section 8-6-4, <u>Code of Alabama 1975</u>, it is unlawful for any person to offer or sell any security in this state unless said security is: (1) registered under the Securities Act; (2) the security is exempt from registration under section 8-6-10; or (3) the transaction is exempt

under section 8-6-11. The securities offered by **RESPONDENT**; to wit: the investment contracts described as "Earn Reward program", are neither registered nor subject to a perfected exemption from registration in Alabama and are being offered and/or sold in violation of the Securities Act.

14.    Pursuant to Section 8-6-30, <u>Code of Alabama 1975</u>, the burden of proving an exemption from registration or an exception from a definition under the Securities Act is on the person claiming the exemption or exception. **RESPONDENT** must demonstrate compliance with the registration provisions of the Act or demonstrate why such instruments should not be required to be registered.

15.    Pursuant to Section 8-6-16, <u>Code of Alabama 1975</u>, the Commission may issue a cease-and-desist order, with or without prior hearing, against any person whom the Commission has reason to believe is participating in any act or practice constituting a violation of the Securities Act.

This Order is appropriate in the public interest for the protection of investors and consistent with the purposes of the Securities Act.

This Order does not prevent the Commission from seeking such other civil or criminal remedies that may be available to it under the Securities Act.

If the allegations set forth herein are found to be true, through either administrative adjudication or default of the **RESPONDENT**, it is the intention of the Commission to impose sanctions upon the **RESPONDENT**. Such sanctions may include, inter alia, an administrative assessment imposed on **RESPONDENT**, an additional administrative assessment for investigative costs arising from the investigation of the violation(s) described herein against **RESPONDENT**, and a permanent order to bar **RESPONDENT** from participation in any securities related industry in the state of Alabama. Failure to respond within 28 days of service of this Order shall be deemed a waiver of the right to a hearing and will result in the entry of a final order directing **RESPONDENT** to cease and desist from violating the Alabama Securities Act and permanently barring **RESPONDENT** from participation in any securities related industry in the state of Alabama.

**ACCORDINGLY, IT IS HEREBY ORDERED** that **RESPONDENT SHOW CAUSE** to the Commission within 28 days of the date of this **ORDER**, why **RESPONDENT** and any affiliate, subsidiary, officer, director, or partner thereof, should not be ordered to cease and desist from any further violations of the Alabama Securities Act.

Entered at Montgomery, AL, this __16th__ day of _September_____, 2021.



ALABAMA SECURITIES COMMISSION
P.O. Box 304700
Montgomery, AL 36130-4700
(334)242-2984
BY:

Joseph P. Borg
Director



# COMMONWEALTH OF KENTUCKY
## PUBLIC PROTECTION CABINET
## DEPARTMENT OF FINANCIAL INSTITUTIONS
## DIVISION OF SECURITIES
## ADMINISTRATIVE ACTION NO. 2021-AH-00024

DEPARTMENT OF FINANCIAL INSTITUTIONS          COMPLAINANT

v.          **EMERGENCY ORDER TO CEASE AND DESIST**

CELSIUS NETWORK LLC          RESPONDENT

\* \* \* \* \* \* \* \* \*

Comes now the Department of Financial Institutions (hereinafter referenced as the "Department"), pursuant to Kentucky Revised Statute (KRS 292.470, KRS 292.500, and 808 Kentucky Administrative Regulation (KAR) 10:225, and hereby enters this **Emergency Order to Cease and Desist** against Celsius Network LLC, (hereinafter referenced as "Celsius", the "Company", or "Respondent"). In support thereof, the Department states as follows:

## PARTIES

1.      The Commissioner is responsible for administering the provisions of KRS Chapter 292, the Securities Act of Kentucky ("the Act"), as well as any applicable rules, regulations and orders entered pursuant to the Act.

2.      Celsius Network LLC is a Delaware limited liability company. Respondents have a principal office located at 221 River Street 9th Floor, Hoboken, New Jersey, 07030. Celsius Network LLC has a registered process agent at The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.



## STATEMENT OF FACTS

3.      On January 11, 2021, the Department became aware that Celsius was engaging in securities-related activities. Subsequently, the Department conducted an investigation into Celsius, learning of the facts and circumstances described herein.

4.      On May 26, 2021, the Department searched Celsius's website, https://celsius.network/. The website states, among other things, "Meet Celsius: a community of over 1 million users that earn up to 17% yield on their crypto. Get paid new coins every week…", "Earn up to 17% APY paid every week", "Get Celsius. Unbank yourself. Earn high. Borrow low", "Your crypto earns more with Celsius", "Put your money to work", and "You don't need a bank to make bank".

5.      Celsius offers Earn Interest Accounts ("EIAs"), which are interest-bearing cryptocurrency accounts that are available on Celsius's website and proprietary smartphone application, as part of its Earn Interest Program. EIAs can be either individual or corporate accounts and are offered to anyone eighteen (18) years of age or older, except for residents of certain foreign jurisdictions. Registering for an EIA requires an investor to mark a box to indicate the investor has read and accepted Celsius's "Terms of Use" and "Privacy Policy". These documents are available on the website via hyperlink, although the investor is able to mark the box regardless of whether the hyperlinks are opened or the documents' contents reviewed.

6.      Celsius solicits investors to invest in EIAs by depositing certain eligible cryptocurrencies into the investors' accounts at Celsius. Celsius then pools these cryptocurrencies together to fund its various income-generating activities, including proprietary trading, collateralizing Celsius' borrowings, purchasing securities and digital assets for Celsius' own account, making loans to institutional and corporate borrowers, and mining cryptocurrency. In

exchange for investing in an EIA, Celsius promises to credit U.S. investors with weekly interest payments at an attractive rate and in the same type of cryptocurrency as originally invested.

7.    The interest Celsius pays to investors is referred to as "rewards" or a "financing fee" in the Terms of Use and appear to be the motivating factor for investors to choose an EIA. Celsius offers a variable, "daily periodic rate", which is "calculated by dividing the then-applicable annual reward rate by three hundred and sixty-four days (364); then it is further divided in the hour, minute, and second of that day." The rate is further tiered to the nature and amount of cryptocurrencies invested. Once calculated, the interest is then credited to the investors' accounts weekly on the first business day of the week. The rate adjustment appears to be based on the volatile exchange rate of each cryptocurrency, which can fluctuate based on circulation and popularity of the tokens. The rates currently advertised by Celsius are substantially above the rates offered by similar short-term investment securities or similar certificates of deposit offered by banking institutions.

8.    Celsius' Terms of Use demonstrate that EIA investors are passive investors. The Terms of Use grant the Company all right and title to the deposited assets, and the right to

> …pledge, re-pledge, hypothecate, re-hypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets in Celsius' full discretion.

A separate section of the Terms of Use features additional Celsius rights "to assign, invest, commingle or otherwise dispose of assets and Eligible Digital Assets to counterparties or hold the Eligible Digital Assets with counterparties."

9.    Celsius's founder, Alex Mashinsky, has stated "[u]sers transfer assets with Celsius, Celsius lends funds to institutions and returns up to 80% of earnings to users."[1] Additionally, Celsius's Terms of Use describe that EIA investors are "exposed to the possibility of Celsius becoming unable to repay its obligations in part or in full, in which case [the investor's] Digital Assets may be at risk." Celsius warns that account holders should "only use funds that [the investor] can afford to lose" though the Company represents to potential investors that it will "use [its] best commercial and operational efforts to prevent losses."

10.    At no time before or after investors agree to the EIA Terms of Use does Celsius disclose to investors the amount of money devoted to each of Celsius's investment activities; the identity, nature, or creditworthiness of the borrowers of material amounts of Celsius's pooled cryptocurrency assets; the terms and duration of Celsius's loans; the types of securities and digital assets Celsius trades; or the profits and losses derived from Celsius's use of pooled investor cryptocurrencies.

11.    Celsius also offers an Application Programming Interface ("API") that allows certain entities, known as Celsius "API Partners", to integrate with the Celsius platform. Celsius affords its API Partners the ability to offer the EIAs to retail investors either through a "Segmented Accounts" platform or an "Omnibus Account" Platform.  The Celsius "Segmented Accounts" platform allows API Partners to offer EIAs accounts to the API Partners' customers through the API Partners' own web portal instead of directly from Celsius's website. Alternatively, the Celsius "Omnibus Account" platform allows API Partners to maintain a direct relationship with Celsius and invest in an EIA for the benefit of the API Partners' customers, whose cryptocurrencies the

---

[1] Alex Mashinsky, *How Celsius creates prosperity for retail and institutional investors alike*, Data Driven Investor (March 7, 2021), https://medium.datadriveninvestor.com/how-celsius-creates-prosperity-for-retail-and-institutional-investors-alike-cc086084c6bd. This article was reposted in the "Media" tab on Celsius's Website.

API Partner aggregates for the purpose of investing. Celsius incentivizes the API Partners by paying a fee to Segmented Account partners based on a percentage of rewards payable by Celsius to the end-user, and also pays fees to Omnibus Partners, in addition to the "rewards" payable.

12.    A review of the Department's records revealed that neither Celsius nor the EIAs offered on its website are registered with the Department as required under the Act. Additionally, neither Celsius nor these EIAs appear to be entitled to any exemption from registration under the Act. The EIAs Celsius offers are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC") or insured by the National Credit Union Administration ("NCUA"). As a result, Celsius investors are subject to additional risks compared to investors who maintain assets with most SIPC member broker-dealers, banks and savings associations, or credit unions.

13.    Respondent claims to currently hold approximately twenty-four billion dollars' ($24,000,000,000) worth of account balances. The Department's investigation of Celsius's consumer data found that over a period of three years and four months, 1,607 EIAs were opened among 1,571 Kentucky investors with Celsius and investors pledged $17,594,229.86 worth of digital assets to Celsius. Celsius in turn has paid these investors a total of $453,353.78.

## STATUTORY AUTHORITY

14.    KRS 292.310(19) defines a "security", in relevant part, as:

> ...any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, life settlement investment, voting-trust certificate, certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; or, in general, any interest or instrument commonly known as a "security[.]"

15.    KRS 292.320 states, in pertinent part,

(1) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:
(a) To employ any device, scheme, or artifice to defraud;
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

16.    KRS 292.340 states,

It is unlawful for any person to offer or sell any security in this state, unless the security is registered under this chapter, or the security or transaction is exempt under this chapter, or the security is a covered security.

17.    KRS 292.470 states, in pertinent part,

Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule or order under this chapter, the commissioner may in his or her discretion bring any or all of the following remedies:

(1) Issue a cease and desist order, with or without a prior hearing, appealable to Franklin Circuit Court, against the person or persons engaged in the prohibited activities directing that person or persons to cease and desist from illegal activity. In order to issue an order without prior hearing, the commissioner must find that the delay in issuing a final cease and desist order will cause harm to the public.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

18.    The Department has become aware that the Company is offering securities in the form of investment contracts in exchange for the deposit of assets with the Company. These investment contracts allow passive investors to earn profit in the form of interest on the assets deposited with the Company, and qualify as securities under the Act.

Page **6** of **11**

19.    Based on the facts set forth above, Respondent offered unregistered securities in Kentucky through a publicly available website, in violation of the Act. These securities were not registered with the Department as required, and do not qualify for an exemption from registration.

20.    These EIAs amount to an investment contract because they are "an investment of money in a common enterprise with profits to come solely from the efforts of others." *See* <u>S.E.C. v. W.J. Howey Co.</u>, 328 U.S. 293, 301 (1946).

21.    In addition to selling unregistered securities, Celsius's API Partners program does not disclose to API Partner customers that Celsius is the company that the customer is investing his or her cryptocurrencies with and misleads customers to believe it is the customer-facing API Partner's offering.

22.    By reason of the foregoing, Respondent has violated the Act and, unless enjoined, will continue to violate the law.

23.    Respondent's management of assets is completely unregulated, and is not subject to any government oversight or approval.

24.    Respondent is not currently subject to any disclosure requirements regarding the risks of investing with the Company, or the potential losses that an investor can suffer after opening an EIA.

25.    Accounts opened with Respondent are not insured by the Federal Deposit Insurance Corporation, or any other government entity.

26.    This lack of oversight coupled with the extremely volatile nature of the cryptocurrencies used to fund Respondent's EIAs has resulted in an unregulated market that represents an unprecedented risk to consumers.

27.    Delay in issuing a final cease and desist order in this case would cause direct harm to the public due to Respondent's current and foreseeable conduct. Failure of the Department to enter a cease and desist order in this case could result in extensive financial losses to the citizens of the Commonwealth, and consumers harmed in this way may have little to no recourse whatsoever. The emergency nature of this order is essential to protect the interests of the citizens of the Commonwealth due to the high volume of assets and volatile nature of cryptocurrency.

<u>Violation of KRS 292.320</u>

28.    Pursuant to KRS 292.320, it is unlawful for any person, in connection with the offer or sale of any security, directly or indirectly, to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person or to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

29.    Celsius' API Partners program deceives consumers by not disclosing to affected Kentucky consumers that the offered security is through Celsius and not the customer-facing API Partners in violation of KRS 292.320.

<u>Violation of KRS 292.340</u>

30.    Pursuant to KRS 292.340, it is unlawful for any person to solicit or sell securities in Kentucky without first being registered with the Department to do so.

31.    Through Celsius's publicly available website and smartphone application, Respondent has solicited securities in Kentucky.

32.    The Department's records show that Respondent has never been registered with the Department and have never sought registration.

33.     The Respondent and the securities Respondent offered do not qualify for an exemption from registration.

34.     Therefore, Respondent is in violation of KRS 292.340 by soliciting securities in Kentucky without being appropriately registered to do so.

### ORDER

In light of the foregoing, IT IS HEREBY ORDERED that:

1.     Respondent, Celsius Network LLC, shall **CEASE AND DESIST** from soliciting or selling any security in Kentucky unless that security is registered with the Department pursuant to KRS 292.340; and

2.     Respondent, Celsius Network LLC, shall **CEASE AND DESIST** from any and all activity which would otherwise violate the Act.

**SO ORDERED** on this the __23rd_ day of _September_, 2021.

___/s/ *Charles A. Vice*_____
CHARLES A. VICE
COMMISSIONER

Charles
A. Vice

Digitally signed by: Charles A. Vice
DN: CN = Charles A. Vice email = charles.
vice@ky.gov C = US O = Dept. of
Financial Institutions OU = PPC/DFI/
Commissioner
Date: 2021.09.23 10:04:37 -05'00'

## NOTICE TO RESPONDENT

You are hereby notified that you are entitled to request an emergency hearing. If requested, an administrative hearing shall be held within ten (10) days pursuant to the provisions of KRS Chapter 13B.125. Please submit any request for hearing, in writing, to Brandon Adcock, Staff Attorney, Kentucky Department of Financial Institutions, 500 Mero Street 2 SW 19, Frankfort, Kentucky 40601. Alternatively, you may also have the right to the judicial review of this Order in Franklin Circuit Court pursuant to KRS 292.470(1).

## CERTIFICATE OF SERVICE

I, *Mary Johnson* , hereby certify that a copy of the foregoing Emergency Order to Cease and Desist was sent on this the *23rd* day of *September* , 2021, by certified mail, return receipt requested, to the following:

Alex Mashinsky
CELSIUS NETWORK LLC
221 River Street 9th Floor
Hoboken, NJ 07030

Registered Agent for Service of Process
THE CORPORATION TRUST COMPANY
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

and by messenger mail or electronic delivery to:

Brandon Adcock, Staff Attorney III
DEPARTMENT OF FINANCIAL INSTITUTIONS
500 Mero Street, 2 SW 19
Frankfort, KY 40601
*Counsel for Department of Financial Institutions*

Kentucky Department of Financial Institutions

Name: *Mary Johnson*

Title: *Exec. Admin. Sec.*

STATE OF NEW JERSEY
BUREAU OF SECURITIES
P.O. Box 47029
Newark, New Jersey
07101 (973) 504-3600

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>Celsius Network, LLC,<br><br>Respondent. | **SUMMARY CEASE<br>AND DESIST ORDER** |

Pursuant to the authority granted to Christopher W. Gerold, Chief of the New Jersey Bureau of Securities ("Bureau Chief"), under the Uniform Securities Law (1997), N.J.S.A. 49:3-47 to -89 ("Securities Law") and certain regulations thereunder, and based upon documents and information obtained during the investigation by the New Jersey Bureau of Securities ("Bureau"), the Bureau Chief hereby finds that there is good cause and it is in the public interest to enter this Summary Cease and Desist Order ("Order") against Celsius Network, LLC.

The Bureau Chief makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.     Celsius Network, LLC ("Celsius") is a financial services company that generates revenue through cryptocurrency trading, lending, and borrowing, as well as by engaging in propriety trading.  Since June 2018, Celsius has been, at least in part, funding its lending operations and proprietary trading through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts. Celsius refers to these unregistered securities as its "Earn Rewards" account.

2.     Celsius solicits investors to invest in the Earn Rewards accounts by depositing certain eligible cryptocurrencies into the investors' accounts at Celsius. Celsius then pools these cryptocurrencies together to fund its various income generating activities, including lending operations and proprietary trading. In exchange for investing in the Earn Rewards product, investors are promised an attractive interest rate that is paid weekly in the same type of cryptocurrency as originally invested, or, subject to certain conditions, in Celsius' native digital token CEL (which are not currently available for U.S.-based account holders).

3.     The Celsius Earn Rewards accounts are not registered with the Bureau or any other securities regulatory authority, or otherwise exempt from registration.  Celsius' Earn Rewards accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA").  This lack of a protective scheme or regulatory oversight subjects Celsius investors to additional risks not borne by investors who maintain assets with most SIPC member broker-dealers, banks and savings associations, or credit unions.

4.     Despite the lack of safeguards that SIPC, FDIC, and the NCUA would offer or the regulatory oversight of registration, Celsius held the equivalent of more than $14 billion from the sale of these unregistered securities in violation of the Securities Law as of August 18, 2021.

5.     The Bureau Chief enters this Order to protect the investing public by halting the offer and sale of these unregistered securities, and the contribution of additional assets to existing accounts.  Nothing in this order shall preclude Celsius, or any of its affiliates, from paying interest, also known as "Rewards" on the existing Celsius Earn Rewards accounts or refunding principal to the Earn Rewards investors consistent with Celsius' Terms of Use.

**A.     The Respondent**

6.     Celsius is a Delaware limited liability company, registered on June 14, 2021, with

offices at 221 River Street, 9th Floor, Hoboken, New Jersey.  Celsius conducts its business on the internet, through a website accessible to the general public at https://www.celsius.network/ (the "Celsius Website"), which is also accessible through Celsius' own proprietary app via smartphone.

7.    Celsius is not presently registered, and has never been registered, in any capacity with the Bureau.  Nor have its Earn Rewards accounts ever been registered with the Bureau.

**B.    The Celsius Earn Rewards Securities**

**a.    Celsius Earn Rewards**

8.    Celsius offers and sells its Celsius Earn Rewards unregistered securities in the form of individual and corporate accounts.  Investors in these accounts ("Earn Rewards Investors") deposit certain popular cryptocurrencies with Celsius to earn "up to 17.78% APY."  The purported Earn Rewards rates advertised by Celsius are well in excess of the rates currently being offered by short-term investment grade fixed income securities or on bank savings accounts.

9.    Celsius offers its Earn Rewards accounts to anyone over the age of eighteen, except for residents of certain foreign jurisdictions subject to regulatory restrictions.

10.    When an investor signs up with Celsius, they verify their age, identity and address, provide an identification document, complete a user agreement and a KYC (Know Your Customer) protocol.  A link to the Celsius Terms of Use ("Celsius Terms") appears at the bottom of each of its web pages.

11.    The Celsius Website states that Celsius does not require a minimum amount of cryptocurrency for deposit in an Earn Rewards account.

12.    Celsius only accepts certain types of cryptocurrencies for deposit in the Earn Rewards accounts.  Although Celsius refers to its payments to Earn Rewards Investors as "Rewards," the term "Rewards" is a substitute for "interest" as is apparent from Celsius's API Partner disclosures from the Celsius Website:

3

API Portal / Guides

## Interest Calculations

This page describes how interest is calculated and disbursed. Celsius pays interest on the value of each asset in a user's wallet. Interest is paid using the same asset(s) that is held in the user's wallet. Obtain current interest rates for each token using the SDK getInterestRates() method or Get Interest Rates API operation.

13.    Earn Rewards Investors earn a variable interest rate on their investment and may withdraw their digital assets at any time, subject to a maximum three-day processing time specified by Celsius.

14.    The variable interest rates for the Earn Rewards Investors are posted on the Celsius Website.  Celsius' interest rates for deposits of certain cryptocurrencies in its Earn Rewards accounts are "tiered" depending upon the nature and amount of the cryptocurrency invested, as explained on the Celsius Website.  Currently, Earn Rewards Investors are entitled to 6.2% on their first Bitcoin deposited and 3.51% on additional deposits of Bitcoin. Rates on other cryptocurrencies range from 13.99% for the Synthetix Network Token (SNX) to 0.0% for Ripple (XRP):

## Cryptocurrencies

Celsius supports today's top cryptocurrencies including native blockchain coins such as Bitcoin and Ethereum, staking coins such as DASH, and utility tokens such as CEL.

| | | |
|---|---|---:|
| • | Bitcoin (Up to 1 BTC) | 6.20% |
| | Bitcoin (After 1 BTC) | 3.51% |
| • | Ethereum (Up to 100 ETH) | 5.35% |
| | Ethereum (After 100 ETH) | 5.05% |
| • | CEL | 4.86% |
| • | SNX | 13.99% |
| • | MATIC | 10.51% |
| • | DOT | 8.86% |
| • | BNT | 5.50% |
| • | AAVE | 4.86% |
| • | DASH | 4.60% |
| • | COMP | 4.60% |
| • | BCH | 4.51% |
| • | EOS | 4.45% |
| • | LTC | 4.08% |
| • | ADA | 4.06% |
| • | ETC | 3.00% |
| • | LINK | 3.00% |
| • | XRP | 0.00% |
| • | UNI | 2.50% |
| • | BSV | 2.02% |
| • | ZEC | 2.02% |
| • | ZRX | 1.77% |
| • | XLM | 1.00% |
| • | BAT | 1.00% |
| • | UMA | 1.00% |
| • | OMG | 0.50% |
| • | KNC | 0.50% |
| • | MANA | 0.50% |

Reward rates are subject to change from time to time. Celsius does not endorse or recommend any digital asset listed above (or at all). The above is not financial advice and is not intended to provide comprehensive information about any specific digital asset or category. Do your own research.

5

15.    Celsius' also pays interest for deposits of certain stablecoins in its Earn Rewards accounts, as explained on the Celsius Website.

16.    The manner in which interest is calculated and credited to Earn Rewards Investors is illustrated on the Celsius Website and specified in the Celsius Terms:



Rewards are payable based on a daily periodic rate applicable to the Loaned Digital Assets. The daily periodic rate is calculated by dividing the then-applicable annual reward rate by three hundred sixty-four (364) days; then it is further divided down to the hour, minute, and second of that day. Loaned Digital Assets, including those received as Rewards from previous weeks, will begin gaining Rewards according to the hour, minute, and second on the timestamp verifying the completion of the applicable transaction and shall cease and/or decrease the amount paid as Rewards at the moment when the User has entered an external transmission, withdrawal or transfer of rights (via CelPay) request, or posted any Loaned Digital Assets as collateral for a Fiat Loan. Therefore, any Loaned Digital Asset transferred mid-week will receive Rewards with no distinction, based on the rates calculated for the relative time within the allocation period.

17.    Celsius advertises that interest on the Earn Rewards product is paid to investors in cryptocurrency (or CEL Tokens depending on certain factors) based on the "daily periodic rate," which is "calculated by dividing the then-applicable annual reward rate by three hundred and sixty-four days (364); then it is further divided in the hour, minute, and second of that day" and is credited to the Earn Rewards Investors' accounts weekly on the first business day of the week.

18.    Celsius describes its business model as one that returns 80% of its total revenue to Earn Rewards Investors: "The Celsius business model is structured to do the exact opposite of

what banks do — by giving 80% of total revenue back to our community each week in the form of earned interest. We earn profits by lending coins to hedge funds, exchanges, and institutional traders, and by issuing asset-backed loans at an average of 9% interest. We're taking the exact same 80% profit margin that banks have kept for themselves for centuries and returning it to our community of depositors."

**b.** **Celsius's Promotion of Earn Rewards Accounts as Investment Products**

19.    Celsius encourages its Earn Rewards account holders to treat their Earn Rewards accounts as long-term investments as evidenced by the statement on Celsius's homepage: "Start earning top rates on any amount of crypto and get paid every paid every Monday to keep HODLing."  As explained on the Celsius Website "HODL started as a typo and has become a crypto rallying cry.  A misspelling of the word 'hold,' HODLers believe in the future of digital currencies and know it would be a mistake to sell at this early stage."

20.    Earn Rewards account holders can also manage their Earn Rewards accounts as long-term investments using the "HODL Mode" feature of their Celsius account.  Celsius describes HODL Mode on its Website as an account security feature "that gives [account holders] the ability to temporarily disable outgoing transactions from [their] Celsius account.  [Account holders] control when HODL Mode is activated and it is an ideal feature for those that do not plan on withdrawing or transferring funds from their account for an extended period of time."

21.    Celsius's corporate culture of promoting "HODLing," including its description of Celsius as a "HODLing platform," the premium interest rates Celsius pays on its Earn Rewards accounts, the weekly compounding of interest payments, and the availability of HODL Mode makes the Celsius Earn Rewards account an attractive long-term investment to Celsius Earn Rewards Investors.

c.    **Celsius' Use of the Earn Rewards Deposit Funds**

22.    The Celsius Terms provide that an Earn Rewards Investor relinquishes control over the deposited cryptocurrency to Celsius and that Celsius is free to use those assets as it sees fit, including commingling the Earn Rewards Investor's cryptocurrency with those of other Earn Rewards Investors, investing those pooled assets in the market, and lending them to institutional and corporate borrowers. Having relinquished control over the deposited cryptocurrency in their Earn Rewards accounts, the Earn Rewards Investors are passive investors.

23.    Specifically, Paragraph 4. B. "Earn Rewards" of the recently-amended Celsius Terms provides:

> Our Earn Rewards service allows you to earn a financing fee from Celsius, referred to as "Rewards", in the form of Digital Assets (either in-kind, i.e. in the same Digital Asset you deliver, or in CEL Tokens, where permitted) in exchange for entering into open-ended loans of your Eligible Digital Assets to Celsius under the terms hereof. By lending your Eligible Digital Assets to Celsius you grant Celsius all rights and title to such Digital Assets, for Celsius to use in its sole discretion.

24.    Paragraph 13 of Celsius's recently-amended Terms, "Consent To Celsius's Use of Digital Assets," further details the status of cryptocurrency deposited with Celsius by Earn Rewards Investors:

> In consideration of the Rewards payable to you on your Celsius Account and the use of our Services, you grant Celsius, subject to applicable law and for the duration of the period during which the Eligible Digital Assets are loaned to us through your Celsius Account, all right and title to such Digital Assets, including ownership rights, and the right, without further notice to you, to hold such Digital Assets in Celsius' own Virtual Wallet or elsewhere, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets in Celsius' full discretion.    You

8

acknowledge that with respect to the Digital Assets used by Celsius pursuant to this paragraph:

(i)     You will not be able to exercise rights of ownership;

(ii)    Celsius may receive compensation in connection with lending or otherwise using Digital Assets in its business to which you have no claim or entitlement; and

(iii)   In the event that Celsius becomes bankrupt, enters liquidation or is otherwise unable to repay its obligations, you mayn't be able to recover or regain ownership of such Digital Assets, and other than your rights as a creditor of Celsius under any applicable laws, you may not have any legal remedies or rights in connection with Celsius' obligations to you.

25.     Celsius then pools the deposited cryptocurrencies together with Celsius's other assets, to, among other income-generating activities, collateralize Celsius' borrowings, purchase securities and digital assets for Celsius' own account, make loans to institutional and corporate borrowers, and mine for cryptocurrency.

26.     Celsius does not disclose to investors: (a) the amount of money devoted to each of these investment activities; (b) the nature and creditworthiness of the borrowers, as well as the identity of any borrowers to whom Celsius has lent material amounts of cryptocurrency; (c) the terms and duration of the loans; (d) the types of securities and digital assets it trades; or (e) the profits or losses derived from these activities.

27.     As Celsius's founder, Alex Mashinsky, stated in a March 7, 2021 article he authored for the DataDriveInvestors website, reposted in the "Media" tab on the Celsius Website, "[u]sers transfer assets with Celsius, Celsius lends funds to institutions and returns up to 80% of earnings to users."

### d.      <u>The Earn Rewards Accounts are Unregistered Security</u>

28.     While certain of Celsius' loan products appear to be licensed under various state licensing requirements for money services businesses or money transmitters, the Celsius Earn

9

Rewards product is not currently registered with any federal or state securities regulator, nor exempt from registration – as required by law, even though the Earn Rewards product is a "security" and subject to such requirements.

29.     Celsius fails to disclose to Earn Rewards Investors that its Earn Rewards product is not currently registered by federal or state securities regulatory authorities, even though the Earn Rewards product is a "security" and required to be registered.

**e.      Celsius's API Partners Program**

30.     Celsius offers an Application Programming Interface ("API") that allows certain institutional users, known as Celsius "API Partners," to integrate with the Celsius platform.

31.     Celsius affords its API Partners the ability to offer the Earn Rewards accounts to retail investors in two different ways.

32.     First, the Celsius "Segmented Accounts" platform allows API Partners to offer the API Partners' own customers the Celsius Earn Rewards accounts through the API Partners' own portal.  An API Partner availing itself of Celsius's Segmented Accounts structure offers the API Partner's own retail customers the opportunity to access the Celsius Earn Rewards account through the API Partner's own portal, as opposed to the API Partner's retail customers accessing the Celsius Earn Rewards account directly from Celsius's own website.  Apart from the difference in how the Earn Rewards account is accessed, individual retail customers of API Partners offering the Segmented Account option are subject to the same rights, benefits, terms, and conditions as Celsius's own Earn Rewards Investors.

33.     Second, Celsius's API Partners can choose to access the Celsius Earn Rewards accounts through what Celsius refers to as an "Omnibus Account."  In the Omnibus Account, the API Partner maintains a direct relationship with Celsius and invests in a Celsius Earn Rewards

account for the benefit of its individual customers, whose cryptocurrencies the API Partner has aggregated for the purpose of investing in the Celsius Earn Rewards account on behalf of, and for the benefit of, the API Partner's individual retail customers.

34.    Celsius incentivizes the API Partners by paying a fee to Segmented Account partners based on a percentage of rewards payable by Celsius to the end-user, and also pays fees to Omnibus Partners, in addition to the Earn Rewards payable.

35.    Celsius is selling unregistered securities in the form of Earn Rewards accounts to it API Partners' Segmented Account customers.

36.    Celsius is selling unregistered securities to its API Partners who choose to open API Partner Omnibus Accounts with Celsius.

## CONCLUSIONS OF LAW

### CELSIUS OFFERED AND SOLD UNREGISTERED  SECURITIES
### N.J.S.A. 49:3-60

37.    The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

38.    The Earn Rewards product is a security as defined in N.J.S.A. 49:3-49(m).

39.    The Earn Rewards product was and is required to be registered with the Bureau pursuant to N.J.S.A. 49:3-60.

40.    The Earn Rewards product has not been registered with the Bureau, is not exempt from registration, and is not federally covered.

41.    Celsius has offered and sold unregistered securities in violation  of N.J.S.A. 49:3-60 and continues to do so.

42.    Each violation of N.J.S.A. 49:3-60 is a separate violation of the Securities Law and

is cause for the denial of certain exemptions.

43.    N.J.S.A. 49:3-69(a)(1) empowers the Bureau Chief to issue a cease and desist order against persons engaged in prohibited activities, directing them to cease and desist from further illegal activity or doing acts in furtherance thereof.

## **CONCLUSION**

**THEREFORE,** it is on this 17th day of September 2021, **ORDERED** that:

44.    Effective on November 1, 2021, Celsius and any person, agent, employee, broker, partner, officer, director, affiliate, successor, or stockholder thereof, under any of their direction or control shall CEASE AND DESIST from:

a.    offering for sale any security, including any Earn Rewards product, to or from New Jersey unless the security is registered with the Bureau, is a covered security, or is exempt from registration under the Securities Law;

b.    accepting any additional assets into an existing Earn Rewards account; and

c.    violating any other provisions of the Securities Law and any rules promulgated thereunder for the sale of any security in New Jersey.

45.    Nothing in this order shall preclude Celsius from paying interest, also known as "Rewards," on the existing Earn Rewards accounts or refunding principal to the Earn Rewards Investors consistent with the Celsius Terms.

46.    All exemptions contained in N.J.S.A. 49:3-50 subsection (a) paragraph 9, 10, and 11 and subsection (b) are hereby DENIED as to Celsius.

47.    All exemptions to the registration requirements provided by N.J.S.A. 49:3-56(b),

N.J.S.A. 49:3-56(c), and N.J.S.A. 49:3-56(g) are hereby DENIED as to Celsius.

_____

Christopher W. Gerold
Chief, New Jersey Bureau of Securities

## NOTICE OF RIGHT TO HEARING

Pursuant to N.J.S.A. 49:3-69(a)(1)(i), the Bureau Chief shall entertain on no less than three days' notice a written application to lift the Order to Cease and Desist on written application of the person subject thereto and in connection therewith may, but need not, hold a hearing and hear testimony, but shall provide to the person subject thereto a written statement of the reasons for the Order to Cease and Desist.

Pursuant to N.J.S.A. 49:3-69(a)(l)(ii), upon service of notice of the Order to Cease and Desist issued by the Bureau Chief, the person subject thereto shall have up to 15 days to respond to the Bureau in the form of a written answer and written request for a hearing. The Bureau Chief shall, within five days of receiving the answer and request for a hearing, either transmit the matter to the Office of Administrative Law for a hearing or schedule a hearing at the Bureau of Securities. Orders issued pursuant to N.J.S.A. 49:3-69 shall be subject to an application to vacate upon 10 days' notice, and a preliminary hearing on the Order shall be held in any event within 20 days after it is requested, and the filing of a motion to vacate the Order shall toll the time for filing an answer and written request for a hearing.

Pursuant to N.J.S.A. 49:3-69(a)(l)(iii), if any person subject to the Order fails to respond by filing a written answer and written request for a hearing with the Bureau or moving to vacate the order within the 15-day prescribed period, that person shall have waived the opportunity to be heard. The Order will be a Final Order and shall remain in effect until modified or vacated.

14

## NOTICE OF OTHER ENFORCEMENT REMEDIES

You are advised that the Uniform Securities Law provides several enforcement remedies, which are available to be exercised by the Bureau Chief, either alone or in combination. These remedies include, in addition to this action, the right to seek and obtain injunctive and ancillary relief in a civil enforcement action, N.J.S.A. 49:3-69, and the right to seek and obtain civil penalties in an administrative or civil action, N.J.S.A. 49:3-70.1.

You are further advised that the entry of the relief requested does not preclude the Bureau Chief from seeking and obtaining other enforcement remedies against you in connection with the claims made against you in this action.

TRAVIS J. ILES
SECURITIES COMMISSIONER

CLINTON EDGAR
DEPUTY SECURITIES COMMISSIONER

Mail: P.O. BOX 13167
AUSTIN, TEXAS 78711-3167

Phone: (512) 305-8300
Facsimile: (512) 305-8310



# Texas State Securities Board

208 E. 10th Street, 5th Floor
Austin, Texas 78701-2407
www.ssb.texas.gov

E. WALLY KINNEY
CHAIR

KENNY KONCABA
MEMBER

ROBERT BELT
MEMBER

MELISSA TYROCH
MEMBER

EJIKE E OKPA II
MEMBER

SOAH DOCKET NO. 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

| | | |
|---|---|---|
| TEXAS STATE SECURITIES BOARD,<br>　　Petitioner | § | BEFORE THE STATE OFFICE |
| | § | |
| | § | |
| v. | § | |
| | § | OF |
| CELSIUS NETWORK, INC., CELSIUS | § | |
| NETWORK LIMITED, CELSIUS US | § | |
| HOLDING, LLC, CELSIUS NETWORK, | § | |
| LLC, AND CELSIUS LENDING, LLC | § | |
| 　　Respondents | § | ADMINISTRATIVE HEARINGS |

CELSIUS NETWORK INC.
Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

CELSIUS NETWORK LIMITED
Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

CELSIUS US HOLDING, LLC
Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John

Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

CELSIUS NETWORK, LLC
Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

CELSIUS LENDING, LLC
Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

## NOTICE OF HEARING

This is your OFFICIAL NOTICE that a hearing will commence at **9:00 AM on FEBRUARY 14, 2022,** before an Administrative Law Judge. The hearing is being held via videoconference for the purpose of determining whether to issue a proposal for decision for the entry of a CEASE AND DESIST ORDER against Celsius Network, Inc., Celsius Network Limited, Celsius US Holding, LLC, Celsius Network, LLC, and Celsius Lending, LLC (herein collectively referred to as the "Celsius Network" or as "Respondents").

This hearing will be held pursuant to the Securities Act, Tex. Rev. Civ. Stats. Ann. arts. 581-1-581-45 (the "Securities Act"), the Rules and Regulations of the State Securities Board, 7 Tex. Admin. Code §§101.1-139.27 (2019) (Tex. State Sec. Bd.) (the "Board Rules"), the Administrative Procedure Act, Tex. Gov't Code Ann. §§2001.001-2001.902 (the "Administrative Procedure Act"), and the Rules of Practice and Procedure of the State Office of Administrative Hearings, 1 Tex. Admin. Code Chapter 155 (2019) (State Ofc. of Admin. Hearings) (the "SOAH Rules").

## CELSIUS AND THE CRYPTO INTEREST ACCOUNTS

1. Celsius Network, Inc. is incorporated in Delaware and owns several subsidiaries including an approximately 82.81% interest in Celsius Network Limited.

2. Celsius Network Limited is incorporated in England and Wales and wholly owns many subsidiaries, including Celsius US Holding, LLC.

3.      Celsius US Holding, LLC is the holding company for Celsius Network's subsidiaries in the United States and two of its wholly owned subsidiaries are Celsius Network, LLC and Celsius Lending, LLC.

4.      Celsius Network, LLC is a Celsius Network company incorporated in Delaware and is the subsidiary providing Celsius Network's user-facing services and activities for customers in the United States.

5.      Celsius Lending, LLC is a Celsius Network company incorporated in Delaware and is the subsidiary providing consumer fiat and stablecoin loans secured by cryptocurrency deposits to Celsius Network's customers in the United States.

6.      The Celsius Network is a network of affiliated financial services companies that generate revenue through cryptocurrency trading, lending, and borrowing, as well as engaging in propriety trading, mining, and other types of transactions.

7.      Respondents are, in part, illegally funding their lending operations, proprietary trading, and other revenue generating activities through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts.

8.      Respondents refer to the unregistered cryptocurrency interest-earning accounts as Celsius Network's "Earn Rewards" program ("Celsius Earn Interest-Bearing Account").

9.      Respondents permit Texans and other investors at least eighteen years old to apply to purchase the Celsius Earn Interest-Bearing Account through the Celsius Network's website or smartphone application.

10.     Investors open accounts by transferring eligible cryptocurrency to the Celsius Network to invest in Celsius Earn Interest-Bearing Accounts. Investors relinquish control over their cryptocurrency and the Celsius Network takes full legal and beneficial ownership of the investors' cryptocurrency.

11.     The Celsius Network is free to use investors' cryptocurrencies consistent with the terms of the Celsius Earn Interest-Bearing Accounts, including commingling cryptocurrencies with cryptocurrencies deposited by other investors, investing in traditional financial assets and cryptocurrency assets, lending those cryptocurrencies to institutional and corporate borrowers, and engaging in any other activities at the Celsius Network's discretion.

12.     In exchange for consideration received in the present, the Celsius Network is promising to pay lucrative interest rates in the future. The Celsius Network is currently promoting the interest rates through its website, which recently advertised an annual return of up to 17.78 percent on certain cryptocurrencies for retail

investors - well in excess of the rates currently being offered for short-term, investment grade, fixed income securities or for bank savings accounts.

13.   The Celsius Network sets the interest rates it pays on various cryptocurrencies in advance and on a periodic basis. The Celsius Network sets its interest rates based on various considerations and prioritizing the Celsius Network's need for particular types of cryptocurrencies.

14.   The Celsius Network incentivizes smaller investors to invest in the Celsius Earn Interest-Bearing Accounts by paying higher rates of interest on smaller investments of principal for certain cryptocurrencies. As an example, the Celsius Network has paid higher rates of interest on investments up to 1 Bitcoin and up to 100 Ethereum and lower rates of interest on investments of more than 1 Bitcoin and more than 100 Ethereum.

15.   The accrual of interest begins "as soon as any funds are credited to [an investor's] Celsius account." Investors transfer cryptocurrencies to the Celsius Network and the transaction is timestamped with the hour, minute, and second. Interest is payable on or around the first business day of each week.

16.   In the United States, interest payments are denominated in the same type of cryptocurrency originally invested. In other jurisdictions, subject to certain conditions, the Celsius Network may make interest payments denominated in its native digital token, CEL.

17.   Retail investors may withdraw their cryptocurrencies at any time, subject to certain processing times.

18.   As of September 3, 2021, the Celsius Network claims it has more than $24,000,000,000 in assets under management, more than 1,000,000 community members, and more than $8,200,000,000 in loans processed.

19.   As of August 18, 2021, the Celsius Network had 348,158 active users worldwide invested in Celsius Earn Interest-Bearing Accounts with global assets under management exceeding $12,500,000,000. As of the same date, the Celsius Network had 139,054 active users in the United States invested in Celsius Earn Interest-Bearing Accounts with United States-based assets under management exceeding $7,000,000,000.

20.   As of June 9, 2021, the Celsius Network has more than $344,000,000 in assets under management from more than 9,000 Texas residents and businesses.

<u>CELSIUS' API PARTNER PROGRAM</u>

21.   The Celsius Network offers an Application Programming Interface ("<u>API</u>") that allows certain institutional users, known as Celsius "API Partners," ("<u>Celsius API</u>

Partners") to integrate with the Celsius Network's platform. Celsius API Partners can then offer and sell the unregistered Celsius Earn Interest-Bearing Accounts to their clients.

22.    The Celsius Network provides two different types of accounts whereby Celsius API Partners' clients can access Celsius Earn Interest-Bearing Accounts called segmented accounts ("Segmented API Accounts") and omnibus accounts ("Omnibus API Accounts").

23.    Investors who invest in Celsius Earn Interest-Bearing Accounts through a Celsius API Partner's Segmented API Account or Omnibus API Account are subject to the same rights, benefits, terms, and conditions as investors who invest in Celsius Earn Interest-Bearing Accounts directly from the Celsius Network.

24.    Segmented API Accounts allow Celsius API Partners to offer Celsius Earn Interest-Bearing Accounts through their own platforms. For Segmented API Accounts:

    A.  Investors create their own Celsius Network accounts through the Celsius API Partner's platform;

    B.  The Celsius Network performs the onboarding and customer due diligence for investors from Celsius API Partners;

    C.  Investors must accept the Celsius Network's terms and conditions; and

    D.  The Celsius API Partners receive a fee based on the percentage of interest payable by the Celsius Network to the investor.

25.    Omnibus API Accounts allow Celsius API Partners to offer and sell Celsius Earn Interest-Bearing Accounts to their investors on an aggregated basis. For Omnibus API Accounts:

    A.  The Celsius API Partner maintains one account with the Celsius Network where it transfers the aggregated funds of its investors;

    B.  The Celsius Network performs no customer due diligence on the Celsius API Partner's investors, has no relationship with the investors, and does not know their identities;

    C.  The Celsius Network's only contractual relationship is with the Celsius API Partner; and

    D.  The Celsius Network pays a fee to the Celsius API Partner which is in addition to the interested paid on investments in the Celsius Earn Interest-Bearing Accounts.

## THE LACK OF REGISTRATION AND PUBLIC PROTECTIONS

26.    Respondents are not licensed as a Money Service Business in Texas to conduct currency exchange or money transmission activities defined by Chapter 151 of the Texas Finance Code.

27.    Respondents are not licensed with the United States Securities and Exchange Commission. Additionally, they are not registered with the Texas State Securities Board to offer or sell securities in Texas, as required by Section 12 of the Securities Act, and the Celsius Earn Interest-Bearing Accounts are not registered or permitted for sale in Texas, as required by Section 7 of the Securities Act. Accordingly, Respondents are violating laws designed to protect Texans.

28.    The Celsius Earn Interest-Bearing Accounts are also not protected by Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member-funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most US-registered broker-dealers.

29.    The Celsius Earn Interest-Bearing Accounts are also not insured by the Federal Deposit Insurance Corporation, otherwise known as the FDIC, an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration, otherwise known as the NCUA, an agency that regulates and insures credit unions.

## THE UNDISCLOSED RISKS

30.    Respondents are not disclosing material information necessary for investors to make an informed decision, including critical material information about the risks associated with purchasing its unregistered securities.

31.    This material information includes, without limitation, the amount of money or cryptocurrency devoted to permissive uses, the identity, nature, and creditworthiness of borrowers, the type and nature of transactions involving digital assets, equities, options, and futures, the risks associated with individual digital assets, equities, options, and futures, the profits and/or losses derived from transactions, and financial information reflecting the assets and liabilities and cashflow.

## THE VIOLATIONS OF THE SECURITIES ACT

32.    The Securities Act regulates the offer and sale of securities in Texas.

33.    Section 4.A of the Securities Act defines the term securities to include traditional products such as stocks and bonds. The statute also broadly defines the term securities to include investment contracts, notes, and evidences of indebtedness

– broad categories of products that capture the endless number of unique and innovative investment schemes continuously introduced into the market.

34.  The mere fact an investment is tied to a cryptocurrency, blockchain technology, or some type of digital asset does not remove it from securities regulation if it constitutes an investment contract, note, evidence of indebtedness, or other type of security.

35.  Based on the information and allegations set forth herein, the Celsius Earn Interest-Bearing Accounts constitute investment contracts, notes, or evidences of indebtedness regulated as securities as that term is defined by Section 4.A of the Securities Act.

36.  Based on the information and allegations set forth herein, Respondents are violating Section 7 of the Securities Act by offering and selling securities in Texas that are not registered or permitted for sale in Texas.

37.  Based on the information and allegations set forth herein, Respondents are also violating Section 12 of the Securities Act by offering and selling securities in Texas without first being registered as dealers or agents.

## THE NOTIFICATION AND REQUEST FOR COMPLIANCE

38.  On or about May 14, 2021, the Enforcement Division of the State Securities Board (the "Enforcement Division") notified Respondents that Respondents may have offered securities in Texas that may not comply with the Securities Act.

39.  The Enforcement Division also explained the regulation of the securities market in Texas, including the identification of laws that require the registration of securities, the registration of dealers and agents, and the truthful disclosure of all known material facts.

40.  Nevertheless, Respondents have continued to offer the Celsius Earn Interest-Bearing Accounts to Texans in violation of Sections 7 and 12 of the Securities Act.

## REMEDIES

41.  The Enforcement Division is praying for a proposal for decision for the entry of an order that Respondents immediately cease and desist from violating Sections 7 and 12 of the Securities Act.

42.  Although this Notice of Hearing is praying for a proposal for decision for an order to cease and desist from violating Sections 7 and 12 of the Securities Act, nothing set forth herein shall preclude the Enforcement Division, consistent with applicable law and rule, from pursuing other enforcement remedies, such as filing an amended Notice of Hearing praying for a proposal for decision that orders the

assessment of an administrative fine or the payment of a refund/restitution to Texans.

## EXISTING CLIENT ACCOUNTS

43.     This Notice of Hearing, and the prayers contained herein, do not preclude Respondents from paying interest or returns to existing clients, refunding principal to investors consistent with the terms of the Celsius Earn Interest-Bearing Accounts, or otherwise lawfully dealing with existing clientele.

## THE HEARING

44.     The hearing will be held before the State Office of Administrative Hearings. It will commence at **9:00 AM on FEBRUARY 14, 2022**.

45.     The State Office of Administrative Hearings may conduct the hearing via Zoom. Zoom is a video conferencing platform for meetings held through the internet. The State Office of Administrative Hearings will provide instructions for accessing the hearing via Zoom.

46.     At the hearing, the Enforcement Division will present testimony and other admissible evidence in support of its prayer for a proposal for decision for the entry of a CEASE AND DESIST ORDER against Respondents. Respondents will be afforded the right to present such testimony and other evidence related thereto.

## LEGAL NOTIFICATIONS

47.     Legal authority and jurisdiction for this matter exist under Section 23 of the Securities Act, Section 2003.021(b) of the Texas Government Code and Rule 155.51 of the SOAH Rules.

48.     **IF YOU DO NOT FILE A WRITTEN ANSWER OR OTHER WRITTEN RESPONSIVE PLEADING TO THIS NOTICE OF HEARING ON OR BEFORE THE 20TH DAY AFTER THE DATE ON WHICH THIS NOTICE WAS MAILED TO YOU OR PERSONALLY SERVED ON YOU, THE FACTUAL ALLEGATIONS IN THIS NOTICE COULD BE DEEMED ADMITTED, AND THE SECURITIES COMMISSIONER MAY DISPOSE OF THIS CASE WITHOUT A HEARING AND MAY GRANT THE RELIEF SOUGHT IN THIS NOTICE. THE RESPONSE MUST BE FILED IN AUSTIN, TEXAS, WITH THE SECURITIES COMMISSIONER AND THE STATE OFFICE OF ADMINISTRATIVE HEARINGS, AND ALSO SERVED ON THE STAFF OF THE STATE SECURITIES BOARD. IF YOU FAIL TO ATTEND THE HEARING, EVEN IF A WRITTEN ANSWER OR OTHER RESPONSIVE PLEADING HAS BEEN FILED AND SERVED, THE FACTUAL ALLEGATIONS IN THIS NOTICE COULD BE DEEMED ADMITTED, AND THE SECURITIES COMMISSIONER MAY DISPOSE OF THIS CASE WITHOUT A HEARING AND MAY GRANT THE RELIEF SOUGHT IN THIS NOTICE.**

**49.   PARTIES THAT ARE NOT REPRESENTED BY AN ATTORNEY MAY OBTAIN INFORMATION REGARDING CONTESTED CASE HEARINGS ON THE PUBLIC WEBSITE OF THE STATE OFFICE OF ADMINISTRATIVE HEARINGS AT WWW.SOAH.TEXAS.GOV, OR IN PRINTED FORMAT UPON REQUEST TO THE STATE OF ADMINISTRATIVE HEARINGS.**

50.    Respondents may access the Securities Act and the Board Rules through the website of the State Securities Board at www.ssb.texas.gov. Respondents may also access the SOAH Rules through the website of the State Office of Administrative Hearings at www.soah.texas.gov and the Administrative Procedure Act through Texas Legislature Online at statutes.capitol.texas.gov.

51.    The Securities Act authorizes the Texas State Securities Board to pursue administrative, civil, or criminal enforcement cases. The Securities Act and Board Rules also authorize the Texas State Securities Board to share information with and refer cases to other governmental agencies with administrative, civil, or criminal jurisdiction. These other governmental agencies include, without limitation, state and federal regulatory agencies, law enforcement agencies and prosecutors' offices. Therefore, any information provided, filed, or otherwise supplied by Respondents may be shared with these other government agencies and/or used in other cases. Whether the Texas State Securities Board makes its files available to other governmental agencies or refers cases to other government agencies is typically confidential pursuant to Section 28 of the Texas Securities Act.

52.    Pursuant to Board Rule 105.13, the Enforcement Division is now respectfully requesting and will continue to respectfully request the State Office of Administrative Hearings order all costs charged to the Texas Securities Board by any court reporting service be assessed against Respondents.

53.    Persons with disabilities who need special accommodations at the hearing, whether held at the State Office of Administrative Hearings or through an audio or video conferencing platform, should contact the Docketing Department of the State Office of Administrative Hearings at 512-475-4993 at least one week prior to the hearing.

<u>CONTACT AND FILING INFORMATION</u>

54.    The Enforcement Division is represented by Rachel Anderson Rynders, Attorney, Enforcement Division. Ms. Anderson Rynders' State Bar Card Number is 24103132, her work address 208 E. 10th Street, 5th Floor, Austin, Texas 78701, her telephone number is 512-305-8392, her facsimile number is 512-355-0404, and her email address is rrynders@ssb.texas.gov.

55.    The Docketing Office of the State Office of Administrative Hearings is located at 300 W. 15th Street, Austin, Texas 78701, and it may be contacted by telephone at 512-745-3445 and by facsimile at 512-475-4994.

56.    The State Office of Administrative Hearings may conduct the hearing via audio or video conferencing. The audio and video conferencing platforms are secure, free meetings held telephonically or through the internet. The State Office of Administrative Hearings will provide instructions for all hearings held telephonically or through a video conferencing platform.

57.    Persons with disabilities who need special accommodations at the hearing, whether held at the State Office of Administrative Hearings or through an audio or video conferencing platform, should contact the Docketing Department of the State Office of Administrative Hearings at 512-475-4993 at least one week prior to the hearing.

58.    Pursuant to Board Rule 105.8, all documents filed by any party, other than business records and transcripts, must be contemporaneously served upon Marlene Sparkman, General Counsel and Securities Commissioner's Representative. Ms. Sparkman's address is 208 E. 10th Street, 5th Floor, Austin, Texas 78701, her telephone number is 512-305-8300, her facsimile number is 512-305-8336, and her email address is msparkman@ssb.texas.gov.

Signed on this, the 17th day of September 2021

By: /s/ Joe Rotunda
        Joe Rotunda
        State Bar No. 24029808
        Division Director, Enforcement Division
        Texas State Securities Board
        208 E. 10th Street, 5th Floor
        Austin, Texas 78701
        T: 512-305-8392
        F: 512-355-0404
        E: jrotunda@ssb.texas.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 17th day of September 2021, true and correct copies of this Notice of Hearing are being served on the following parties through the means set forth below:

**MARLENE SPARKMAN**

General Counsel for the State Securities Board and the Securities Commissioner's Representative, is being served by electronic mail addressed to msparkman@ssb.texas.gov.

**CELSIUS NETWORK INC.**

Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

**CELSIUS NETWORK LIMITED**

Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

**CELSIUS US HOLDING, LLC**

Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

**CELSIUS NETWORK, LLC**

Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

**CELSIUS LENDING, LLC**

Service by (1) certified mail, return receipt requested, addressed to 221 River Street, 9th Floor, Hoboken, New Jersey 07030; (2) certified mail, return receipt requested, addressed to The Harley Building, 77-79 New Cavendish Street, London W1W 6XB, United

Kingdom; (3) certified mail, return receipt requested, addressed to its counsel John Sikora, Jr., Partner, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611; and (4) electronic mail to its counsel, John Sikora, Jr., at john.sikora@lw.com.

By:    /s/ Joe Rotunda
Joe Rotunda
State Bar No. 24029808
Director, Enforcement Division
Texas State Securities Board
208 E. 10th Street, 5th Floor
Austin, Texas 78701
T: 512-305-8392
F: 512-355-0404
E: jrotunda@ssb.texas.gov

## Exhibit C

## Ad Hoc Group Declarations

**EXHIBIT C-1**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:  deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF LARRY FULTON IN SUPPORT OF THE**
**AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION**
**FOR RELIEF FROM THE AUTOMATIC STAY**

I, Larry Fulton, hereby declare under penalty of perjury:

1.       I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending
LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554);
Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor
Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11
cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had "Withhold Accounts" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.      I currently have cryptocurrency assets in Withhold Accounts that were frozen there when Celsius instituted the Pause.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

7.      I have an outstanding loan in the Borrow Program that matures in October 2022. On September 6, 2022, I received an email from Celsius stating that "[i]f you wish to repay and close a maturing loan, your payment must be made by a wire transfer of fiat currency (USD)."

**[remainder intentionally left blank]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 7, 2022

LARRY FULTON

**EXHIBIT C-2**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Deborah Kovsky-Apap

875 Third Avenue

New York, NY 10022

Telephone: (212) 704-6000

Facsimile: (212) 704-6288

Email:  deborah.kovsky@troutman.com

*Counsel to the Ad Hoc Group of*

*Withhold Account Holders*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF RYAN HOLZ IN SUPPORT OF THE
### AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY

I, Ryan Holz, hereby declare under penalty of perjury:

1.      I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.      I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.      I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

8.      On or about May 19, 2022, I deposited Ethereum coins into my Withhold

Account. Shortly thereafter, I received what appeared to be an automated email, shown

in the screenshot below:



**[remainder intentionally left blank]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

RYAN HOLZ

**EXHIBIT C-3**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:  deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF BENNY WONG IN SUPPORT OF THE
AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
<u>FOR RELIEF FROM THE AUTOMATIC STAY</u>**

I, Benny Wong, hereby declare under penalty of perjury:

1.       I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending
LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554);
Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor
Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11
cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold

Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that

"[y]our Celsius account is currently not eligible for the new Custody solution and will

have new limitations, due to regulatory requirements in your state. New transfers made

by non-accredited investors in your state, will not be accepted in Celsius for you to use.

You will need to withdraw any new coins from your account. Unless you are a verified

accredited investor, you will not be able to access Celsius services including Buy, Swap,

CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold

Account" on the Celsius app. During that period, I also learned that I could no longer

whitelist an external wallet from the Earn Rewards account. Instead, coins first had to

be transferred from Earn Rewards to a Withhold Account, then transferred to an

external wallet from Withhold.

6.      I currently have cryptocurrency assets in a Withhold Account that were

frozen there when Celsius instituted the Pause.

7.      I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

_____

BENNY WONG

**EXHIBIT C-4**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:  deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF ROBERT RISKIN IN SUPPORT OF THE
## AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
## <ins>FOR RELIEF FROM THE AUTOMATIC STAY</ins>

I, Robert Riskin, hereby declare under penalty of perjury:

1.    I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.      I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.      I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

*Robert Riskin*
_____
ROBERT RISKIN

**EXHIBIT C-5**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:  deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF TRAVIS SCHILLING IN SUPPORT OF THE
### AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY

I, Travis Schilling, hereby declare under penalty of perjury:

1.     I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.      I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.      I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September __6__, 2022

TRAVIS SCHILLING

**EXHIBIT C-6**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:  deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF SHANE COOLEN IN SUPPORT OF THE
### AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY

I, Shane Coolen, hereby declare under penalty of perjury:

1.      I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.      I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.      I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

_____
SHANE COOLEN

**EXHIBIT C-7**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF MANUEL MARTINEZ IN SUPPORT OF THE
## AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY

I, Manuel Martinez, hereby declare under penalty of perjury:

      1.      I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending
LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554);
Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor
Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11
cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.　　　I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.　　　I live in a US state where Celsius does not offer Custody Accounts.

4.　　　On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.　　　At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.　　　I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.　　　I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

MANUEL MARTINEZ

**EXHIBIT C-8**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:  deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ALVARO DREVON IN SUPPORT OF THE**
**AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION**
**FOR RELIEF FROM THE AUTOMATIC STAY**

I, Alvaro Drevon, hereby declare under penalty of perjury:

1.      I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending
LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554);
Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor
Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11
cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.       At all relevant times, I lived in a US state where Celsius does not offer Custody Accounts.

4.       On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.       At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.       I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.       I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

ALVARO DREVON

**EXHIBIT C-9**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF SCOTT REINA IN SUPPORT OF THE
### AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
### <u>FOR RELIEF FROM THE AUTOMATIC STAY</u>

I, Scott Reina, hereby declare under penalty of perjury:

1.     I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.      I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.      I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

SCOTT REINA

**EXHIBIT C-10**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:  deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF KAVEH BASTANI IN SUPPORT OF THE
### AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY

I, Kaveh Bastani, hereby declare under penalty of perjury:

      1.      I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that "[y]our Celsius account is currently not eligible for the new Custody solution and will have new limitations, due to regulatory requirements in your state. New transfers made by non-accredited investors in your state, will not be accepted in Celsius for you to use. You will need to withdraw any new coins from your account. Unless you are a verified accredited investor, you will not be able to access Celsius services including Buy, Swap, CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold Account" on the Celsius app. During that period, I also learned that I could no longer whitelist an external wallet from the Earn Rewards account. Instead, coins first had to be transferred from Earn Rewards to a Withhold Account, then transferred to an external wallet from Withhold.

6.      I currently have cryptocurrency assets in a Withhold Account that were frozen there when Celsius instituted the Pause.

7.      I do not have any outstanding loans in the Borrow Program.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is
true and correct.

September 6, 2022

_____
KAVEH BASTANI

**EXHIBIT C-11**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF GAVING HOFFMAN IN SUPPORT OF THE**
**AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION**
**FOR RELIEF FROM THE AUTOMATIC STAY**

I, Gavin Hoffman, hereby declare under penalty of perjury:

1.     I make this declaration based upon my personal knowledge. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      I am a non-insider customer of Celsius (as defined in the Ad Hoc Group of

Withhold Account Holders' Motion for Relief from the Automatic Stay) (the "**Motion**").[2]

3.      I live in a US state where Celsius does not offer Custody Accounts.

4.      On or about April 12, 2022, I received an email from Celsius stating that

"[y]our Celsius account is currently not eligible for the new Custody solution and will

have new limitations, due to regulatory requirements in your state. New transfers made

by non-accredited investors in your state, will not be accepted in Celsius for you to use.

You will need to withdraw any new coins from your account. Unless you are a verified

accredited investor, you will not be able to access Celsius services including Buy, Swap,

CelPay and Borrow until we are able to offer Custody in your state."

5.      At some time after April 15, 2022, I discovered that I had a "Withhold

Account" on the Celsius app. During that period, I also learned that I could no longer

whitelist an external wallet from the Earn Rewards account. Instead, coins first had to

be transferred from Earn Rewards to a Withhold Account, then transferred to an

external wallet from Withhold.

6.      I was in the process of moving coins from a Withhold Account to an

external wallet when Celsius instituted the Pause. On the Celsius app, my coins are

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

shown as "Pending Withdrawal." However, a Celsius customer service representative

told me that my coins still appear in the Withhold Account in Celsius' system.

7.     I do not have any outstanding loans in the Borrow Program.

**[remainder intentionally left blank]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 6, 2022

GAVIN HOFFMAN