Hearing Date:  September 14, 2022
Hearing Time: 2:00 p.m.

David J. Adler
McCARTER & ENGLISH, LLP
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
E-mail: dadler@mccarter.com
*Attorneys for Zaryn Dentzel, Grgeory Kieser,
Joseph Eduardo and Michael R. Conlon*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**RESPONSE OF CERTAIN CELSIUS BORROWERS TO THE MOTION
OF THE UNITED STATES TRUSTEE TO APPOINT AN EXAMINER**

Zaryn Dentzel, Gregory Kieser, Joseph Eduardo and Michael R. Conlan (collectively, the "Borrowers")[2], by and through their counsel, McCarter & English, LLP, file this response (the "Response") to the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [Doc. No. 546] (the "Examiner Motion")[3] and respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] The Borrowers consist of persons who deposited their cryptocurrency as collateral against loans provided by Celsius Lending, LLC. The Borrowers are in the process of forming an *ad hoc* committee, and anticipate filing a Rule 2019 Statement shortly.

[3] All capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them as in the Examiner Motion.

**PRELIMINARY STATEMENT**

The Borrowers agree with the United States Trustee that the Court needs to appoint an *independent neutral third party* to conduct an investigation into the Debtor's operations and conduct prepetition.[4]  Where the Borrowers and the United States Trustee differ, however, is who the independent neutral third party should be.  Rather than an examiner, the Borrowers believe that the appointment of a chapter 11 trustee would be the appropriate remedy for the following reasons:

*First,* the Borrowers are concerned that the wide scope of the examination proposed by the U.S. Trustee will significantly delay the resolution of this case.  Given the current monthly cash burn in this case, this delay will cost the estate tens of millions of dollars.

*Second*, during the examiner's investigation, the focus of the estate fiduciaries will be on past conduct and may be distracted from focusing on transactions that can maximize recoveries to creditors.

*Third*, assuming that the examiner concludes that there are colorable claims against the Debtors/management/third parties, it is unclear who would prosecute them.  Obviously, given that the prepetition management is still in possession, the Debtors would not be pursuing these claims.  Moreover, it appears that Committee Counsel, White & Case, could not pursue these claims given its representation of Westcap, one of the lead investors in the Series B offering of Celsius Network Ltd. (UK).[5]  The Petition for Celsius Network (UK), Case No. 22-10966 (MG) states that Westcap owns approximately 13% of the equity.  As a result, following the examiner process, the estate will have to deal with the issue of which party would bring claims on behalf of the estate. [6]

---

[4] The Borrowers adopt and incorporate by reference herein the factual allegations set forth in ¶¶ 1-39 of the Examiner Motion.

[5] The Borrowers do not oppose the retention of White & Case as counsel to the Official Committee.

[6] The Borrowers believe that the most efficient manner in which to deal with these issues would be the appointment of a Chief Restructuring Office who could conduct the investigation and prosecute any claims. However, given that

For these reasons, the Borrowers respectfully submit that the appropriate remedy is the appointment of a chapter 11 trustee. The chapter 11 trustee can investigate/prosecute claims against parties and determine the strategy that maximizes recovery to creditors.

## ARGUMENT

1. Section 1104 of the Bankruptcy Code states, in pertinent part, that this Court appoint a Chapter 11 Trustee: (1) "for cause"; or (2) "if such appoint is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(1)-(2). As acknowledged in the Examiner Motion, and as further discussed herein, both of these statutory burdens are met.

**A.     CAUSE EXISTS TO APPOINT A CHAPTER 11 TRUSTEE**

2. First, cause exists for the appointment of a Chapter 11 Trustee. The Bankruptcy Code defines cause to appoint a Chapter 11 Trustee to include:

> fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11. U.S.C. § 1104(a)(1).

3. Bankruptcy Courts have broad discretion to determine what constitutes cause. *In re Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019) ("Examples of non-enumerated misconduct found by courts to constitute cause include: (i) failure to comply with provisions of the Bankruptcy Code, [*In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at]., 526-527 (cause found where Debtor failed to comply with section 363(b) of the Bankruptcy Code); (ii) failure to make required filings, *In re Grasso*, 490 B.R. 500, 520-523 (Bankr. E.D. Penn. 2013) (failure to file

---

the US Trustee has sought the appointment of an examiner, the Borrowers' preference is for the appointment of a chapter 11 trustee.

2015.3 reports constituted a failure to disclose material information sufficient to support a finding of cause); (iii) failure to abide by Court Orders, *In re AG Serv. Centers, L.C.*, 239 B.R. 545, 550 (Bankr. W.D. Mo. 1999) (debtor's failure to comply with court orders warranted appointment of a trustee); (iv) failure to file tax returns, *In re Morningstar Marketplace, Ltd*, 544 B.R. 297, 306 (Bankr. M.D. Pa. 2016) (Debtor's failure to pay taxes lead to a finding of cause); (v) conflicts of interest, *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *3 (cause found where the Debtor's diversion and commingling of funds between his affiliated entities indicated the Debtor's conflict of interest against the estate); and (vi) failure to discharge fiduciary duties. *In re Ionosphere Clubs, Inc.*, 113 B.R. at 169 ("When a debtor-in-possession is incapable of performing [its fiduciary duties], a Chapter 11 trustee may be appointed."). *See generally* 7 COLLIER ON BANKRUPTCY ¶ 1104.02 (16th ed. 2019)."); *In re Futterman*, 584 B.R. 609, 616 (Bankr. S.D.N.Y. 2018) ("[t]he particular items listed in 1104(a)(1) are not exclusive ...."); *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *9 ("The list of wrongs constituting 'cause' that warrants the appointment of a trustee is not exhaustive.").

11    Once a finding of cause is made, "the court is required to appoint a chapter 11 trustee." *In re Sillerman*, 605 B.R. at 642.

12    As identified in the Examiner Motion, the evidence disclosed to date strongly suggests that the Debtors' current management has engaged in fraud, dishonesty, incompetence and/or gross mismanagement. Examiner Motion, ¶¶ 1-51.

13.    Among other things, the U.S. Trustee identifies a number of different categories that support the appointment of the examiner, including:

    a.    lack of disclosure by the Debtor in the current proceedings, including:

        1. the failure to file any schedules more than 8 weeks after the Petition Date; (Examiner Motion, Cornell Decl., ¶ 9);

    2. the failure to timely file operating reports (*Id.*, ¶ 10); and

    3. the failure to disclose material prepetition litigation in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (Doc. No. 23) (the "Mashinsky Declaration") (Examiner Motion, ¶¶ 25-29)

  b. state investigations, enforcement and advisory actions (*Id.*, ¶¶ 30-31, 45; Cornell Decl., ¶ 12);

  c. known prepetition conduct of the Debtors (Examiner Motion, ¶¶ 32-38); and

  d. public mistrust of the Debtors (*Id.*, ¶¶ 23-24, 39; *see also* ¶ 21, *infra*.).

14. The Borrowers agree with all of these categories of misconduct and add the following.

15. **First**, it is painfully apparent that the Debtors do not believe in transparency. Example of the lack of transparency abound in this case and include:

  a. The failure to disclose the identity of any of the Debtors' Directors.

  b. The failure to disclose the identity of the "private lending platform" which owes the Debtor approximately $439 Million, let alone the type of collateral held by this mystery lender or the circumstances surrounding the mystery lender's inability to return the Debtors' collateral. The only disclosure by the Debtors regarding this entity is the following:

> [T]o support its operations, from October 2019 to February 2021, due to the lack of institutional lending available to cryptocurrency companies, the Company took out collateralized term-loans from a private lending platform. In July 2021, when Celsius attempted to repay one of its loans, it was informed for the first time that the lender was unable to return the Company's collateral on a timely basis, resulting in Celsius having an approximately $509 million uncollateralized claim against this party after it setoff its own loan obligations to the lender. Since September 2021, the lender has made regular principal payments to the Company, and continues to make timely payments that are currently in excess of $5 million per month. The aggregate principal owed to the Company stands at approximately $439 million, consisting of $361 million in USD and 3,765 BTC, the latter worth approximately $78 million.

Doc. No. 23 ("Mashinsky First Day Declaration"), ¶ 94.

    c. The failure to disclose the reason the Debtors decided not to deposit additional collateral in response to Tether's margin call.[7] Instead, the Debtors, disclosing only as follows regarding the Debtors' settlement with the third largest owner of Debtor Celsius Network Limited (UK):

> In May and June 2022, Celsius made the difficult decision to forgo providing one of its lenders, Tether, issuer of USDT, a stablecoin, additional collateral and agreed to an orderly liquidation of its loan. During the market crash, Tether issued a margin call to Celsius with regard to an outstanding $841 million USDT loan. Although Celsius had always provided sufficient collateral to support its loan, and had never previously been liquidated by Tether, the Company agreed to an orderly liquidation and settlement of its loan with Tether to preserve the remaining collateral in excess of the value of the loan. This resulted in a loss of approximately $97 million.

Mashinsky First Day Declaration, ¶¶ 87, 123; Case No. 22-10966, Doc. No. 1, *6.

    d. The misleading public statements made by Mashinsky shortly before the Debtors decided to pause all withdrawals, swaps, and transfers on its platform (the "<u>Pause</u>"), assuring customers that their holdings were safe. *See*, *e.g.*, Celsius Network, *Celsius AMA June 10, 2022*, YouTube (streamed live June 10, 2022), https://www.youtube.com/watch?v=GyRO_W-utXs.

> In addition, Mashinsky repeatedly assured customers that a "run on the bank" was not possible at Celsius. In one such interview, Mr. Mashinsky stated:
>
> "A run on the bank cannot happen at Celsius, because Celsius never lends more than what it has. Right? We cannot do, legally- we're not allowed to create money or do fractional reserves.
>
> So at any moment we always have enough coins and enough collateral and so on to return all of the assets to all of our users. **And everyday, we have a process, the daily reconciliation process. Where our team, like 20 or 25 people, get on a call and grind through all the tokens and all the coins and make sure that we have more coins than what we owe the community.**
>
> Right? That's our process. And no bank in the world can do that for you because they never have enough assets to return for you if there is a run on the bank."

See https://www.youtube.com/watch?v=GYQt-GwsCH0 (emphasis supplied).

    16.    The absence of transparency, credibility and creditor confidence constitutes cause

---

[7] Tether is a substantial shareholder of Celsius Network Ltd. (UK).

ME1 42220477v.1

to appoint a Chapter 11 Trustee. *In re Vascular Access Centers, L.P.*, 611 B.R. 742, 764 (Bankr. E.D. Pa. 2020) ("[C]ourts have found cause present pursuant to § 1104(a)(1) in circumstances demonstrating conflicts of interest; misuse of assets and funds; inadequate recordkeeping and reporting; failure to file required documents; lack of adequate disclosure; lack of appropriate cost controls; transgressions related to taxes; failure to make required payments; lack of credibility and creditor confidence; and breaches of fiduciary duties.").

17.     **Second**, prior to the Petition Date, the Debtors lost hundreds of millions of dollars through mismanagement. Examiner Motion, ¶ 35 (identifying $439 million uncollateralized claim against unidentified lender); *Id.*, ¶ 39 ($97 million loss incurred through liquidation and settlement of loan with Tether).

18.     The Debtors plan to continue to hemorrhage cash. Doc. No. 447, 5 (projecting negative cash flow of more than $130 million in the first three (3) months of these bankruptcy proceedings). The substantial post-petition losses projected to be incurred include more than $5 million per month for labor, even though the Debtors are not engaging in any business operations other than mining bitcoin. *Id.*, Examiner Motion Examiner, Ex. A at 23:23-24:6 ("It is not business as usual, Your Honor. No new customer accounts are being opened. No new deployment. No new loans. No new staking….We are not issuing margin calls. We are not liquidating collateral.").

19.     The Debtors' inability to manage its books and records in a reasonable manner constitutes an independent basis for finding that cause exists to appoint a Chapter 11 Trustee in these bankruptcy proceedings. *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988) ("There are many cases holding that a history of transactions with companies affiliated with the debtor company is sufficient cause for the appointment of a trustee where the best interests of the creditors require"); *see also In re PRS Insurance Group*, 274

B.R. 381, 387 (Bankr. D. Del. 2001) (evidence of diversion of assets, or the absence of accurate financial records, constitutes "incompetence or gross mismanagement").

B. **APPOINTING A CHAPTER 11 TRUSTEE IS THE BEST INTEREST OF CREDITORS, EQUITY SECURITY HOLDERS AND THE DEBTORS' RESPECTIVE BANKRUPTCY ESTATES**

20. Even assuming, *arguendo*, that the Borrowers fail to satisfy their burden to establish cause under Section 1104(a)(1) of the Bankruptcy Code, the Court must still appoint a trustee under 1104(a)(2) because doing so is in the best interests of creditors, equity security holders, and other interests of the Debtors' respective bankruptcy estates. 11 U.S.C. 1104(a)(2); *In re Sillerman*, 605 B.R. 651. Section 1104(a)(2) of the Bankruptcy Code "'envisions a flexible standard' and gives the bankruptcy court discretion to appoint a trustee when doing so would serve the interests of the parties and the estate." *Id.* at 651-52 (citing *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 90 (Bankr. S.D.N.Y. 2007)). "Courts construing this subsection 'eschew rigid absolutes and look to the practical realities and necessities' of the record to determine whether the appointment of a trustee is in the best interest of the estate." *Id*. at 652 (internal citation omitted); *see also Manufacturers and Traders Trust Co. v. Morningstar Marketplace, Ltd. (In re Morningstar Marketplace, Ltd.)*, 544 B.R. 297, 305 (Bankr. M.D. Pa. 2016) ("A court is more likely to appoint a trustee under § 1104(a)(2) when reorganization is not possible, and a Debtor's principal may be motivated to protect his own interests rather than the interests of creditors. When coupled with a lack of confidence in management, and the benefits of appointing a trustee outweigh the cost, courts often find the argument for appointment of a trustee to be compelling.") (internal citation omitted); *In re Euro- American Lodging Corp.*, 365 B.R. 421, 427-28 (Bankr. S.D.N.Y. 2007) ("Where a chapter 11 debtor and its managers … suffer from material conflicts of interest, an independent trustee should be appointed"); *In re McCorhill Publ., Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987) (where there are questionable inter-company financial transfers and the

principals of the debtor occupy conflicting positions in the transferee companies, appointment of a trustee is warranted in the best interests of all creditors and all parties in interest to investigate the financial affairs of the debtor).

21.     Here, the appointment of a Chapter 11 Trustee is in the best interests of creditors, equity security holders, and other interests of the Debtors' respective bankruptcy estates. The Debtors' business is built on trust. Cryptocurrency investors must trust that the cryptocurrency they invested with the Debtors is being managed with reasonable care, in a fiscally responsible way, that allows it to be available for return upon demand. As further identified in the Examiner Motion and the more than 375 letters filed on the Court's docket by the Debtors' account holders as of September 5, 2022, such good will is significantly lacking under the current management structure. *See* Examiner Motion ¶¶1-16.[8]

22.     Moreover, practical considerations weigh heavily in favor of appointing a Chapter 11 Trustee instead of an examiner. A significant period of time will pass before any examiner appointed in this proceeding is prepared to issue a report. *See, e.g.*, *In re Lehman Brothers Holdings, Inc.*, No. 08-13555 (SCC) (Bankr. S.D.N.Y.), ECF No. 2583, 7531 (Examiner's Report, dated March 11, 2010, was issued more than a year after the Order Approving Appointment of an Examiner was entered on January 20, 2009). Given the tremendous cash shortfalls projected to be experienced by the Debtors each month (*supra*, ¶ 18), the delay and costs associated with the appointment of an examiner will irreparably harm the Debtors' estates and their respective creditors, including the Borrowers.

---

[8] *See also* Doc. Nos. 26, 41, 47, 49-52, 64-69, 71-72, 74-75, 78-79, 82-92, 94-95, 99-104, 107-163; 165-173, 175-184, 193-240, 242-253, 255-264, 266-267, 269-276, 278-279, 282-285, 287-288, 290-293, 306-329, 333, 338-341, 345-348, 353-356, 366, 369-370, 383, 386-388, 395-398, 403, 405-409, 419-422, 424, 434-435, 439, 449-452, 456, 458, 460-461, 475-478, 480-482, 484-491, 493-498, 501-504, 507-512, 515-516, 529-531, 533-536, 541-543, 548, 552, 554-569, 571575, 582-584, 586, 589, 598, 611, 623, 644, 646, 648, 650, 652-654, 658-661, 675, 678, 680-681, 689-691, 696, 698, 700-701, 703-709.

ME1 42220477v.1

23. Finally, the issue of who would bring any claims identified by an examiner is problematic. The appointment of a Chapter 11 Trustee avoids this issue and will ensure the prompt and efficient administration of the Debtors' bankruptcy estates, resolve numerous transparency issues and provide an independent, professional opinion of what, if anything, will be available for distribution to the Debtors' account holders.

**WHEREFORE,** the Borrowers respectfully requests that this Honorable Court enter an order appointing a Chapter 11 Trustee in the above-captioned bankruptcy proceedings.

Dated: New York, New York
September 7, 2022

**McCARTER & ENGLISH, LLP**

By: /s/ David J. Adler
David J. Adler
(A member of the Firm)
Email: dadler@mccarter.com
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921

*Attorneys for Zaryn Dentzel, Grgeory Kieser, Joseph Eduardo and Michael R. Conlon*