**US Bankruptcy Court**
**Southern District of New York**

_____

In re:                                    )                    Chapter 11
                                          )
CELSIUS NETWORK LLC, )               Case No. 22-10964
             Debtor)
_____)

**CREDITOR'S NOTICE OF MOTION AND MOTION SEEKING FOR RULING OF FULL TITLE OF OWNERSHIP OF FUNDS WITH RESPECT TO USERS WHO HAVE BEEN BLOCKED ACCESS BY DEBTOR PRIOR TO BANKRUPTCY AND TO REQUEST DISCLOSURE FROM DEBTOR ON THE NUMBER AND AMOUNT OF SUSPENDED/ CLOSED ACCOUNTS WHICH FUNDS STILL KEPT BY DEBTOR**

TO THE HONORABLE JUDGE MARTIN GLENN, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE DEBTOR AND DEBTOR-IN-POSSESSION, AND OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORDS:

Preliminary Statement

With regard to letter submitted for self-represented individual on Sept 5, 2022, with receipt number 1662398745. This motion is to seek for jury's ruling of full title of ownership of funds to respective account holders who experienced a blocked access to the accounts (called "suspended"/ "closed" accounts) and been promised by the compliance team of return of funds within 30 days. As well as to request Debtor to disclose such number of accounts and the amounts involved, which funds are still being kept by Debtor.

Such account suspension took place prior to Celsius filed for bankruptcy or frozen withdrawal.

1. Below is the exhibit 1 of the reply from Debtor's Compliance Team regarding blocking account access.



Exhibit 1 - written reply from Debtor's compliance team on the matter of blocking account access

As clearly stated at the end of the reply, *"Referral awards and any interest credited to this account will therefore be cancelled and any deposits not already withdrawn will be returned within the next 30 days."*

It can be derived that such funds were to be received within 30 days to account holders. Though funds were not released yet, it can be deduced in good faith that the respective account holders have valid title of ownership to such funds, in belief of words in good faith from Debtor's compliance team.

2. In accordance to Celsius Terms of Use with version last revised on April 14, 2022. As quoted from section 19 A. Closing a Celsius Account:

*"A. Celsius' Right to Celsius Account Closure*

*We have the right to suspend, freeze or close your Celsius Account at any time for any reason without advance notice, including by blocking your access to the Celsius Account or the Services. If your Celsius Account has a balance when we close it, we will repay and return the remaining Digital Assets to you, including accrued Rewards earned (if applicable) until the close date, less any applicable Obligations, withholding tax and other applicable deductions, unless prohibited by applicable law. In the event of irregular activity, we may hold assets until we close your Celsius Account. "*

As stated, Debtor has blocked access to the Celsius Account (Said account holders can no longer login to the account) and disqualified the use of Services (All interests and bonuses to such

accounts have been cancelled and funds were to be returned), which fits the conditions Debtor mentioned following a closure of Celsius account. Hence, the statement that follows, which states the condition for having a balance as Celsius closes the account, "*If your Celsius Account has a balance when we close it*", is applicable.

The action to be taken by Celsius, as stated in Terms of Service, "*we will repay and return the remaining digital assets to you*" should follow a closure of Celsius account and in consistence with what stated by Compliance Team.

3. Per Term of Service, Celsisu did not distinguish the "suspended" vs "closed" account. Following the information from Compliance Team that "*any deposits not already withdrawn will be returned within the next 30 days*", it matches the description of action to be taken when the account was closed by Celsius. Hence, the account was in effect "closed" by Celsius even though they use the term "suspended" interchangebly, or intentionally ambiguously. No material difference in the description of treatment or definition was made between the two terms, unless it was to intentionally mislead the holders of accounts.

4. In accordance to Celsius Terms of Use with version last revised on April 14, 2022. As quoted from section 4 D. Earn Rewards:

"*Our Earn Service allows you to earn a financing fee from Celsius, referred to as "Rewards," in the form of Digital Assets (either in-kind, i.e., in the same Digital Asset you transfer, or in CEL Tokens, where permitted) in exchange for entering into open-ended loans of your Eligible Digital Assets to Celsius under the terms hereof. If our Earn Service is available to you, upon your election, you will lend your Eligible Digital Assets to Celsius and grant Celsius all rights and title to such Digital Assets, for Celsius to use in its sole discretion while using the Earn Service.*"

With all interests and bonuses cancelled by Debtor, said "suspended"/ "closed" accounts were in fact not having the feature of Earn account nor receiving any benefits/ services from Debtor, hence not a de facto Earn account nor a valid customer of Debtor.

Per section 4 D. Earn Rewards, it stated that Debtor has title and rights to such digital assets while using the Earn service. However, "suspended"/ "closed" accounts have the service discontinued from Debtor, it would not justify that such accounts would have title and rights owned by Debtor as these accounts were neither active Earn account.

5. It would not be a fair valid argument to say that "suspended"/ "closed" accounts were once in Earn account and therefore are still belonging to Earn account. As it is noted that a current group

of custody account holders were previously in Earn account as well. Debtor and their attorney have written a motion to verify and declare titles of ownership of custody accounts for custody account holders (irrespective of their previous Earn status). Regarding the potential clawback subject, the release of their funds has yet to be ruled for custody accounts who were previously in Earn, however their title of ownership to funds has been verified. Implying once previously in Earn hence always remains classified as Earn would be an unfair non-valid argument.

6. Custody account were never made available to non-US customers. While US customers had the option of exit to move their funds to custody account, this option was not available to international customers. If it is to say that non-US customers have no custody account and hence do not obtain the title of ownership like custody accounts do and hence are subject to the lowest, least favourable priority in this case, then this inherit unfairness set from the system is against the core value of US bankruptcy system, if not the core value of US constitution.

7. As someone without any legal background, having no familiarity with the US fderal or bankruptcy system and English not being the first language, writing and submitting this motion without an attorney has been a tremendous effort. Filing this motion and potentially having to respond, answer or defend ourselves in the court hearing without an attorney will be a formidable task that we are put in an inherently disadvantageous position of.

8. With knowledge that there exists some "suspended"/"closed" account holders, connecing such account holders and make our voices heard in this case was tremendously difficult. I have not found a way to get our case out in this bankruptcy case, hence seeking ruling via this Motion.

9. Information of such "suspended"/ "closed" accounts is demanded to be disclosed from the Debtor, including the number of accounts and amounts involved and what action has Debtor taken to follow through.

Date: 9/16/2022

Respectfully submitted,

Kwok Mei Po
Non-US Creditor with account access blocked in May