**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) | **FOR PUBLICATION** |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*, | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 22-10964 (MG) |
| Debtors. | ) |  |
|  | ) | (Jointly Administered) |

<u>**MEMORANDUM OPINION AND ORDER ON THE DEBTORS' SEALING MOTION**</u>

*A P P E A R A N C E S :*

KIRKLAND & ELLIS LLP
*Attorneys for the Debtor*
601 Lexington Avenue
New York, NY 10022
By:    Joshua Sussberg, Esq.

WHITE & CASE LLP
*Attorneys for the Creditor Committee*
111 S Wacker Dr Suite 5100
Chicago, IL 60606-5055
By:    Michael Andolina, Esq.
    Aaron Colodny, Esq.
    Samuel P Hershey, Esq.
    Gregory F Pesce, Esq.
    David Turetsky, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
By:    Shara Cornell, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Celsius Network LLC's (collectively with its affiliated

debtors, the "Debtors") *ex parte* motion for entry of an order authorizing the Debtors to redact

the following personally identifiable information from the Debtors' Creditor Matrix, Schedules

and Statements, petitions, affidavits of service, and any other documents publicly filed on the

docket:

> (i) the home addresses and email addresses of any citizens of the United States located in the United States, including the Debtors' employees, individual shareholders, and individual customers, and

> (ii) the names, home addresses, and email addresses of any citizens of the United Kingdom or European Economic Area member countries and any individual whose citizenship is unknown.

("Sealing Motion," ECF Doc. # 344 ¶ 3.)  In support of the Sealing Motion, the Debtors submit a

declaration of Holden Bixler ("Mr. Bixler"), Managing Director of Alvarez & Marsal North

America, LLC.  ("Bixler Decl.," Motion, Ex. F.)

The Official Committee of Unsecured Creditors (the "Committee") filed a joinder to the

Sealing Motion.  ("Committee Joinder," ECF Doc. # 399.)  There were also joinders filed by the

Ad Hoc Group of Withhold Account Holders (ECF Doc. # 633) and the Ad Hoc Group of

Custodial Account Holders (ECF Doc. # 642).

In connection with the Sealing Motion, the Debtors are also seeking to redact the names

of certain creditors listed on the schedules of the Debtors' professional retention applications

(collectively, the "Retention Applications.")[1]

The U.S. Trustee filed timely objections to the Sealing Motion ("Sealing Objection,"

ECF Doc. # 607) and to the Retention Applications ("Retention Objection," ECF Doc. # 601,

and together with the Sealing Objection, the "U.S. Trustee Objections").  The Debtors filed an

omnibus reply to the U.S. Trustee objections.  ("Reply," ECF Doc. # 638.)

---

[1]     ECF Doc. ## 360, 361, 363, 392, and 410.

The Debtors submitted additional sealing motions which are resolved by this memorandum opinion ("Memorandum Opinion"). On August 19, 2022, the Debtors filed a creditors matrix motion (the "Creditors Matrix Motion," ECF Doc. # 18) seeking entry of a final order granting requested redactions of personally identifiable information. On August 24, 2022, the Committee filed a motion ("White and Case Sealing Motion," ECF Doc. # 602) seeking to redact and seal the names and identifying information of (i) those named in a parties in interest list provided by the Debtors for the purposes of running conflicts; and (ii) potential lenders. On August 30, 2022, the Debtors filed a motion ("Anonymization Motion," ECF Doc. # 639) authorizing the Debtors to (i) redact individual names; and (ii) implement an anonymized identification process.

While the Debtors' initial Sealing Motion only sought to seal the home addresses and email addresses (but not names) of U.S. citizens (*see* Sealing Motion ¶ 3), the Anonymization Motion expanded the sealing request to include all individual names, as well as physical addresses and email addresses.

On September 12, 2022, Debtors filed a supplemental reply ("Debtors' Supplemental Reply," ECF Doc. # 782) in support of the Sealing Motion and the Anonymization Motion and the Committee filed a supplemental joinder ("Committee's Supplemental Joinder," ECF Doc. # 785) to the Sealing Motion.

A hearing was held on the Sealing Motion on September 1, 2022 (the "September 1 Hearing"). At the conclusion of the hearing, the Court encouraged parties to resolve the sealing disputes, and scheduled a further hearing for September 14, 2022 (the "September 14 Hearing"). The parties failed to reach agreement after the September 14 Hearing, and the Court took the Sealing Motion under submission.

For the reasons provided in this Memorandum Opinion, the Court:

- **GRANTS** the Sealing Motion, in part, to authorize the Debtors to redact home addresses and email addresses of any *individual* creditors.

- **DENIES** the Sealing Motion in part, to the extent it seeks to redact (i) names of individual creditors, and (ii) names, email addresses, and physical addresses of business entities that are creditors.

- **GRANTS** the Sealing Motion, in part, to the extent it seeks to redact *individual* creditors' home addresses and email addresses in the Debtors' Creditor Matrix and to authorize the Debtors to file a redacted Creditor Matrix without creditors' home addresses and email addresses.

- **DENIES** the Sealing Motion to the extent it seeks to impound the names of individual creditors in the Creditor Matrix Motion.

As a result of the Memorandum Opinion, the Court also:

- **SUSTAINS** the Retention Objection and requires the Debtors to file unredacted Retention Applications.[2]

- **GRANTS** the White and Case Sealing Motion, in part, only to the extent that the redactions comply with the redactions permitted by this Memorandum Opinion's decision regarding the Sealing Motion and the redaction of the home and email addresses of individual creditors.

- **DENIES** the White and Case Sealing Motion, in part, to the extent it seeks to redact the names of individuals or any information surrounding business entities.

- **DENIES** the Debtors' Anonymization Motion.

## I.    BACKGROUND

### A.  General Background

On July 13, 2022 (the "Petition Date"), each of the Debtors voluntarily filed a Chapter 11

petition in this Court.  (Sealing Motion ¶ 10.)  As described in the *Declaration of Alex*

*Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions*

---

[2]    At the September 14 Hearing, with the U.S. Trustee's agreement, the Court granted the Retention Applications that included redacted information, but all professionals agreed to submit unredacted information to the extent the Sealing Motions are denied.  Therefore, all professionals must file unredacted information to the extent required herein within fourteen (14) days after the date of this Memorandum Opinion and Order.

*and First Day Motions* ("Mashinsky Declaration," ECF Doc. # 23), the Debtors commenced these Chapter 11 cases to stabilize their business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.  (*Id.*)

The Debtors are operating their business and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the United States Bankruptcy Code (the "Bankruptcy Code").  (*Id.* ¶ 11.)  On July 27, 2022, the U.S. Trustee appointed the Committee. (ECF Doc. # 241.)  On August 18, 2022, the U.S. Trustee filed a motion to appoint an examiner in the Debtors' cases, which was heard on September 14, 2022.  ("Examiner Motion," ECF Doc. # 546.)  The Examiner Motion was granted in an Order entered that day.  (ECF Doc. # 820.)  The U.S. Trustee has not yet appointed an Examiner.

On July 19, 2022, the Court entered the Creditor Matrix Order authorizing the Debtors to redact from the Creditor Matrix, Schedules and Statements, and other documents filed with the Court individuals' personally identifiable information on an interim basis.  (ECF Doc. # 55.) Also on July 19, 2022, the Court entered the Schedules and Statements Order extending the Debtors' time within which they must file Schedules and Statements to August 12, 2022.  (ECF Doc. # 57.)  On August 11, 2022, the Debtors filed a motion seeking to further extend the time within which they must file Schedules and Statements to September 12, 2022, which was granted.  (ECF Doc. # 431.)

**B.  Sealing Motion**

The Debtors seek authority to redact the following information from any paper filed with the Court:

> (i) the home addresses and email addresses of any citizens of the United States located in the United States, including the Debtors' employees, individual shareholders, and individual customers, and

(ii) the names, home addresses, and email addresses of any citizens of the United
Kingdom or European Economic Area member countries and any individual whose
citizenship is unknown.

(the "Confidential Information," Sealing Motion ¶ 3.)  The Debtors state that they have provided

and/or will provide an unredacted Creditor Matrix, Schedules and Statements, and related

documents to the Court, the U.S. Trustee, and counsel to the Committee, and that any party in

interest may make a request to the Debtors or to the Court to obtain the unredacted versions of

the filings.  (*Id.*)

The Debtors advance three arguments for why the Confidential Information should be

redacted notwithstanding the public policy interest in public access to court records in

bankruptcy.  First, the Debtors argue that their customers' home addresses and email addresses

constitute confidential "commercial information" under section 107(b) of the Bankruptcy Code.[3]

(*Id.* ¶ 24.)  The Debtors submit that if this information is publicly disclosed their competitors

would gain a "significant competitive advantage by having access to the complete list of the

Debtors' worldwide customer base," which "would significantly decrease the value of the

customer list as an asset in any future potential asset sale."  (*Id.*; *see also* Bixler Decl. ¶ 5 ("The

Debtors' customer list is one of the Debtors' key assets that will be necessary to maintain to

maximize recoveries for stakeholders.").)  Mr. Bixler states that there is limited to no public

information available identifying individuals or entities that hold crypto assets because retaining

anonymity is one of the key features of holding crypto assets.  (Bixler Decl. ¶ 5.)  Therefore, it is

---

[3]      Section 107(b) of the Bankruptcy Code provides, in relevant part:

On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own
motion, the bankruptcy court may:

1)   protect an entity with respect to a trade secret or confidential research, development, or
*commercial information*;

11 U.S.C. § 107(b) (emphasis added).

expensive and time consuming for crypto companies like the Debtors to identify, attract, enroll,

and activate potential customers.  (*Id.*)  The significant investment required to build a customer

base "make[s] it a valuable asset of the Debtors."  (*Id.*)  The Debtors also cite to a recent

cryptocurrency chapter 11 case, *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21,

2020), in which the Honorable John T. Dorsey entered an order, over the objection of the United

States Trustee for the District of Delaware, that permitted the debtors to redact the names,

mailing addresses, and email addresses of their customers on any publicly filed documents.  (*Id.*

¶ 22.)  In overruling the objection, Judge Dorsey stated that "there is at least some credible

argument that the . . . customer list of the – of the debtors is – has some intrinsic value, and that

disclosure of that list could affect the ability of the debtors to market and sell that list as a part of

their going toward a plan of reorganization here."  (*Id.* (citing *In re Cred Inc.*, Hr'g Tr. at

113:20–25; 114:1–16, ECF Doc. # 277).)[4]

Second, the Debtors argue that the home addresses, email addresses, and names (where

applicable) of the Protected Parties (defined below) contained in the Creditor Matrix and

Schedules and Statements is personal information that may be protected under section 107(c)(1)

of the Bankruptcy Code.[5]  (*Id.* ¶ 33.)  The Debtors submit that "[t]he privacy and security of

personally identifiable information in the crypto industry is particularly important given the

---

[4]       Cited portions of the hearing transcript in *In re Cred Inc.*, No. 20-12836, are attached to the Sealing Motion
as Exhibit G.

[5]       Section 107(c) of the Bankruptcy Code provides:

(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types
of information to the extent the court finds that disclosure of such information would create undue
risk of identity theft or other unlawful injury to the individual[:]

(A) *Any* means of identification (as defined in section 1028(d) of title 18) contained in a
paper filed, or to be filed, in a case under this title.

(B) *Other information* contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1) (emphasis added).

extreme high-risk and high-upside common in this sector." (*Id.*)  The Debtors' customers are particularly concerned with the security and privacy of their personally identifiable information because such information could potentially result in a customer becoming the target of identity theft, blackmail, harassment, stalking, and doxing (which is a form of cyberbullying).  (*Id.* ¶¶ 13, 34.)  The Debtors state that their customers' personally identifiable information that they collect in connection with customer accounts is subject to the Debtors' privacy policy[6] and the "Debtors' ability to continue to protect customers' personal information is critical to maintaining their customer's safety, loyalty, and business." (*Id.* ¶ 13.)  Additionally, the Debtors assert that many of their customers, employees, directors, and officers (collectively referred to as the "Protected Parties") fear for their safety and their families' safety if their home addresses, email addresses, and/or names are published on the public court docket.  (*Id.* ¶¶ 14, 35, 37–38; *see also* Sealing Motion, Ex. B (Reddit Posts Threatening Alex Mashinsky), Ex. C (Reddit Threads of Customers Concerned with Privacy), and Ex. D (Email Correspondences Regarding Personally Identifiable Information).)

Third, the Debtors argue that because many of their customers reside in jurisdictions all over the world, disclosing their names, addresses, and other personal data risks violating the United Kingdom General Data Protection Regulation ("UK GDPR"), and the European Union General Data Protection Regulation ("EU GDPR"), which would expose the Debtors to potential civil liability and significant financial penalties.  (Sealing Motion ¶¶ 2, 30–33.)  The UK GDPR and EU GDPR require a legal basis for any processing (which includes the transferring or disclosing) of information relating to identified or identifiable individuals (which includes names, home addresses, and email addresses of individuals and individual business contacts) or

---

[6]    A copy of the Debtors' privacy policy is annexed to the Sealing Motion as Exhibit E.

personal data.  (*Id.* ¶ 30.)  The Debtors state that the only possible legal basis that may apply for disclosing the personal data here would be the "legitimate interests" ground (Article 6(1)(f) UK GDPR and EU GDPR).[7]  (*Id.*)  This ground, however, will only apply where the processing is necessary for the relevant purpose, and such processing will not be necessary where there is a less intrusive way of achieving that purpose.  (*Id.*)  Additionally, the "legitimate interests" ground will not apply if, when balanced against each other, the rights and freedoms of the relevant individuals override the legitimate interest in question.  (*Id.*)

### C.  The Joinders to the Sealing Motion

The Committee agrees that the relief requested in the Sealing Motion is necessary to protect "confidential commercial information" under section 107(b) of the Bankruptcy Code. (Committee Joinder ¶ 4.)  According to the Committee, the potential disclosure of account holders' personally identifiable information to competitors, claims traders, and other interested parties would likely erode account holders' trust, which "would likely chill market interest in, or the amount of value provided to account holders through a potential sale, new equity investment or sponsorship of another restructuring transaction."  (*Id.*)

The Committee also contends that there is cause under section 107(c) of the Bankruptcy Code to protect individual account holders' personally identifiable information from being publicly disclosed.  (*Id.* ¶¶ 5–6.)  The Committee and the Ad Hoc Groups submit that public disclosure of personally identifiable information would make individual account holders more vulnerable to identify theft and make account holders' crypto assets more susceptible to criminal theft.  (*Id.* ¶ 6; *see also* ECF Doc. # 633 ¶ 2 ("The Debtors' public disclosure of customers' email

---

[7]     The Debtors submit that the legal basis of "compliance with a legal obligation" (Article 6(1)(c) UK GDPR and EU GDPR) would not be applicable in this situation because the legal obligation must exist under UK or EU law, which is not the case in the context of these Chapter 11 cases.  (Sealing Motion ¶ 30.)

addresses . . . would put customer accounts at greater risk from hackers.  It would also make customer all-too-easy targets for identity theft, phishing attacks and other scams."); ECF Doc. # 642 ¶ 2 ("[P]ublishing the contact information consisting of home addresses and email addresses of the Debtors' customers publicly on the docket . . . puts individuals at risk of identity theft, fraud or other serious harm.").)

The Committee's Supplemental Joinder asserts that Section 107(c) permits redactions for cause where there would be "unlawful injury to the individual or the individual's property." (Committee Supplemental Joinder ¶ 1.)  The Committee's Supplemental Joinder also asserts that the "public record is replete with incidences of cryptocurrency theft from unsuspecting users" and the "threat of unlawful injury cannot be overlooked."  (*Id*. ¶ 6.)  Further, the Committee argues that redacting only addresses is insufficient "as there is a repository of data containing account holder information from other platforms on the dark web." (*Id*. ¶ 9.)

The Committee also has concerns about impoundment, mainly that the "Court would have to formulate the methods to administer the impoundment" and "who would be permitted to access the data notwithstanding the impoundment."  (*Id*. ¶ 11.)  Further, depending on how impoundment is implemented by the Court, the Committee argues the "public would potentially have less information with respect to the Schedules and Statements in an impoundment than it would if the names were replaced with code numbers.  (*Id*.)

### D.  U.S. Trustee Objection to the Sealing Motion

The U.S. Trustee objects to the Sealing Motion, arguing that the Debtors "do not and cannot rely on any exceptions to the general rule that bankruptcy proceedings should be open, public and transparent" and have offered "nothing more than vague statements supporting the[ir] request" to redact the Confidential Information.  (U.S. Trustee Objection at 1.)  The U.S. Trustee is concerned that if the Motion is granted "the ability of interested parties to evaluate the Debtors

and their bankruptcy process and to communicate and find each other will be significantly curtailed," and it would lead to a slippery slope of other information the Debtors may seek to redact.  (*Id.*)

Additionally, the U.S. Trustee argues that the confidential information the Debtors seek to redact is neither confidential nor commercial information.  The U.S. Trustee argues that the Debtors' own privacy policies support the argument that customers' information is not confidential because it allows customers names and contact information to be shared with third party "business partners" and, therefore, is not confidential.  (*Id.* ¶¶ 18–19 (citing https://www.celsius.network/privacy-policy and Global Data Protection & Privacy Policy ("Privacy Policy") at 10).)

The U.S. Trustee also argues that the Debtors make only conclusory statements regarding why the information they seek to redact is commercial information.  (*Id.* ¶ 20 (citing *In re Motors Liquidation Co.*, 561 B.R. 36, 44 (Bankr. S.D.N.Y. 2016) ("[S]tatements made by lawyers in briefs are not evidence.").)  The U.S. Trustee contends that the information is not truly commercial in nature because the Debtors are not seeking to redact all creditors' names and identifying information and are instead requesting that identifying information be redacted for only certain creditors, "but information with respect to another group will be fully disclosed because of where such creditors live."  The Debtors have "made no showing that disclosure of the identities of some of its creditors are 'reasonably [] expected to cause the entity commercial injury.'"  (*Id.* ¶ 24 (quoting *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006).)

According to the U.S. Trustee, under United States bankruptcy law, that bankruptcy proceedings are public should prevail over foreign privacy law (the UK GDPR and EU GDPR).

In support, the U.S. Trustee cites to *San Antonio Express-News v. Len. Blackwell (In re Blackwell)*, in which the district court reversed and vacated the bankruptcy court's order that sealed the identities of the debtor's creditors, finding that:

> the parties' expectations under the laws of various other jurisdictions is not at issue here. [The broader investment group that the debtors were a part of] maintains its offices in the United States and thus it was foreseeable that the laws of the United States could be applied to at least some disputes these parties could have contemplated at the time they made their investments.

263 B.R. 505, 510 (W.D. Tex. 2000).

Finally, the U.S. Trustee contends that the Debtors' arguments that creditors might be subject to violence if their identities were revealed amounts to anecdotal evidence, which does not rise to the level of evidence necessary to overcome the presumption for open and public bankruptcy. (*Id.* ¶ 28 (citing *United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 150 B.R. 334, 340–41 (D. Del. 1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information); *In re Analytical Systems, Inc.,* 83 B.R. 833, 836 (Bankr. N.D. Ga.1987) (stating that "possible embarrassment" to a party "is not a sufficient basis to justify sealing court records in the face of the express and important policy of public access to court records").)

### E.  Replies to the U.S. Trustee's Objection to the Sealing Motion

In their Reply, the Debtors respond to the U.S. Trustee's arguments.  First, they argue that the Debtors' ability to disclose Personal Information under the Privacy Policy to limited third parties in specific circumstances does not mean that such Personal Information is not confidential commercial information.  (Reply ¶ 9.)  Second, the Debtors clarify that their position is that the home addresses and email addresses of all individual customers is confidential commercial information under section 107(b) of the Bankruptcy Code, but they are not relying on section 107(b) to redact certain individuals' names—that relief "is rooted firmly in section

12

107(c)." (*Id.* ¶ 13.) The Debtors also clarify that they are not stating that the UK GDPR and the

EU GDPR supersede the Bankruptcy Code; rather, instead, they argue that these laws support the

Debtors' arguments under section 107(c). (*Id.* ¶ 19.)

The Debtors' Supplemental Reply reiterates that the Court should permit the names, in

addition to the home addresses and email addresses, of EU and UK citizens, and those

individuals whose citizenship is unknown, to be redacted in these chapter 11 cases. (Debtors'

Supplemental Reply ¶ 11.) The Debtors assert that the penalties associated with violations of the

EU GDPR and UK GDPR and the need for a "legitimate interest" to disclose information

publicly serve as evidence that publicly disclosing this information online creates an undue risk

of harm to these individuals. (*Id.*) The Debtors further argue that the information is confidential

commercial information under section 107(b) of the Bankruptcy Code and redacting it will

prevent competitors from being able to "poach the Debtors' customers." (*Id*. ¶ 19.) The Debtors

also assert that, in the alternative, the Court should impound all lists of individual home

addresses, individual email addresses, and individual customer names and account balances

under Bankruptcy Rule 1007(j). (*Id.* ¶ 21.)

## F. Debtors File Additional Motions

### 1. White and Case Sealing Motion

The Committee filed applications seeking to retain White & Case LLP ("W&C") as

counsel to the Committee, M3 Advisory Partners L.P. as financial advisor to the Committee

("M3"), Perella Weinberg Partners L.P. ("PWP") as investment banker to the Committee, and

Elementus Inc. ("Elementus," and together with W&C, M3, and PWP, the "Committee

Advisors") as blockchain forensics advisors to the Committee. (White and Case Sealing Motion

ECF Doc. # 602 ¶ 1.) The Debtors provided the Committee Advisors with a parties in interest

list for the purposes of running conflicts and preparing the Committee Advisors' retention applications. (*Id.* ¶ 7.) In their retention applications, the Committee Advisors' attach the parties in interest list and disclose connections with certain parties in interest which are account holders or creditors of the Debtors whose identity is not otherwise known at this time (the "Confidential Individuals"). (*Id.*)

Additionally, the Debtors and their advisors are currently evaluating their liquidity needs, have been considering whether to incur potential debtor-in-possession ("DIP") financing, and are engaged in ongoing discussions with potential lenders (collectively, the "Confidential Potential DIP Lenders" and together with the Confidential Individuals, the "Confidential Parties") in connection with their evaluation of whether to incur DIP financing. (ECF Doc. # 602 ¶¶ 9–10.)

The Committee seeks authority under section 107(b) of the Bankruptcy Code to redact and file under seal the names and identifying information of the Confidential Parties. No objections were filed.

### 2. *The Anonymization Motion*

The Debtors seek authority to redact (i) individual names from any documents filed publicly on the docket, including in the Debtors' Schedules and Statements, to the extent such names are provided in connection with account balances and (ii) implement an anonymized process by which to identify individuals in connection with account balances on any documents filed publicly on the docket, including in the Debtors' Schedules and Statements. (Anonymization Motion at 1–2.) As already stated, this motion seeking authority to redact individual names substantially expanded the request for relief in the Sealing Motion, which only sought to redact physical addresses and email addresses.

The majority of the Debtors' creditors are also their customers.  (*Id*. ¶ 11.)  These customers have accounts with Celsius and deposited different types and amounts of cryptocurrency, in different programs, on the Celsius platform.  (*Id*.)  Unlike many platforms with user accounts the Debtors do not assign account numbers to customer accounts, but rather identify and link customer accounts to customer email addresses.  (*Id*.)  As a result, the Debtors currently do not have a way to identify individual customers in connection with their account balances other than by using the individual customer's name, social security number (or other individual tax identifier), and/or email address.  (*Id*.)

The Debtors seek to redact individual customer names, regardless of where such individual customers are located, in any instance when individual customer names would be disclosed in connection with customer account balances.  (*Id*.)  Rather than using individual customer names, the Debtors request permission to identify individual customers with anonymized identification numbers in lieu of names.  (*Id*. ¶ 3.)

## II.    LEGAL STANDARD

### A.  Presumption and Public Policy in Favor of Public Access to Court Records

There is a strong presumption and public policy in favor of public access to court records. *See, e.g.*, *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597–98 (1978); *Neal v. The Kansas City Star (In re Neal),* 461 F.3d 1048, 1053 (8th Cir. 2006); *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005); *Food Mgmt. Grp.*, 359 B.R. 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007).  The right of public access is "rooted in the public's First Amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994) (stating that public access "helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public

agencies") (citations omitted). "The public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved." *Food Mgmt. Grp., LLC*, 359 B.R. at 553. The presumption of open access to court records is codified in section 107 of the Bankruptcy Code. *See* 11 U.S.C. § 107(a). Nevertheless, Congress implemented statutory exemptions to prevent disclosure of certain information in a bankruptcy case. *See In re Orion Pictures Corp.*, 21 F.3d at 27. Nonetheless, "Courts have zealously upheld the public's right to access and narrowly construed the exceptions." *In re Anthracite Cap., Inc.*, 492 B.R. 162, 176 (Bankr. S.D.N.Y. 2013). Information that "might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents." *Id.* (citing *In re FiberMark, Inc.*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005)). Ultimately, the "decision whether to seal bankruptcy court records lies within the discretion of the bankruptcy court." *In re FiberMark, Inc.* at 506.

### B. The Statutory Exemptions

#### 1. Section 107(b) and Bankruptcy Rule 9018

In limited circumstances, section 107(b) of the Bankruptcy Code requires a bankruptcy court to seal documents that would normally be available to the public. *Id.* Section 107(b) states, in pertinent part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> > (1) Protect an entity with respect to a trade secret or confidential research, development, or *commercial information*.

11 U.S.C. § 107(b) (emphasis added). Rule 9018 of the Federal Rules of Bankruptcy Procedure establishes the procedures to invoke section 107(b). In relevant part, Rule 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a

trade secret or other confidential research, development, or commercial information
. . . contained in any paper filed in a case under the Code.

FED. R. BANKR. P. 9018.

The moving party bears the burden of showing that the information is confidential under section 107(b).  *See In re Food Mgmt. Grp., LLC*, 359 B.R. at 561.  The exception to the general right of access in section 107(b) is narrow.  *See In re Orion Pictures Corp.*, 21 F.3d at 27. However, "congress has established a special rule for trade secrets and confidential research, development, and commercial information" and so once a court determines that a party in interest is seeking protection of information that falls within one of these categories, "the court is *required* to protect a requesting party and has no discretion to deny the application."  *Id.* Additionally, section 107(b) of the Bankruptcy Code does not require a party seeking its protections to demonstrate "good cause."  *Id.* at 28.

"Commercial information," as used in section 107(b)(1) of the Bankruptcy Code, is defined as "information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"  *See In re Orion Pictures Corp.*, 21 F.3d at 27 (quoting *Ad Hoc Protective Comm. for 10 1/2 % Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).  Commercial information need not rise to the level of a trade secret to qualify for protection under section 107(b), but the information must be "so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors."  *In re Barney's, Inc.*, 201 B.R. 703, 708–09 (Bankr. S.D.N.Y. 1996) (citing *In re Orion Pictures Corp.*, 21 F.3d at 28).

Courts have held that confidential commercial information may include information related to a debtor's customer lists.  *See In re Cred, Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) (sealing confidential information, including names, mailing addresses, and email

17

addresses of customers in connection with the creditor matrix and schedules and statements); *In re Altegrity, Inc.*, No. 15-10226 (LSS), 2015 WL 10963572, at *3 (Bankr. D. Del. July 6, 2015) (finding that the debtor's "primary assets" included independent contractors and holding that the identities of independent contractors were commercial information under section 107(b)); *In re Faucett*, 428 B.R. 564, 568 (Bankr. W.D. Tex. Oct. 12, 2010) (holding that computer "screen shots" disclosing the identity of entities' customers was commercial information because they might give competitor an advantage); *In re Nunn*, 49 B.R. 963, 965 (Bankr. E.D. Va. 1985) (finding that where a customer list is the only "real asset" of a debtor such customer list is entitled to protection under section 107(b)).

In cases where protection is required, the form of protection that must be granted is not commanded by the statute. The Court has discretion when deciding how to protect commercial information. *See Gitto*, 422 F.3d at 9 ("It is true that § 107(b)(2) speaks of protection in general terms rather than of wholesale sealing, and that courts must therefore exercise some discretion in determining what form of protection to grant."). Redacting documents to remove only protectable information is preferable to wholesale sealing. The policy favoring public access supports making public as much information as possible while still preserving confidentiality of protectable information. *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978)).

    *2.  Section 107(c)*

Section 107(c) of the Bankruptcy Code provides:

(1) The bankruptcy court, *for cause*, may protect an individual, with respect to the following types of information *to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual*[:]

    (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

(B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1) (emphasis added).

Section 107(c) of the Bankruptcy Code protects "means of identification" from being publicly disclosed. 11 U.S.C. § 107(c)(1)(A). Means of identification includes "any name or number that may be used, along or in conjunction with any other information, to identify a specific individual[.]" 18 U.S.C. § 1028(d)(7). Collier explains that "[s]ection 107(c) gives the court broad discretion to protect an individual with respect to any information, including identifying information, in a paper filed or to be filed with the court to the extent that the court finds that disclosure of the information would create an undue risk of identity theft or unlawful injury to the individual or the individual's property." 2 COLLIER ON BANKRUPTCY ¶ 107.04 (16th ed.). Stated differently, "[t]he types of information that can be protected by the court are unlimited" and go beyond the types of identification referenced in Bankruptcy Code section 107(c)(1)(A), especially in light of the broad language in Bankruptcy Code section 107(c)(1)(B) authorizing protection of "other information." *Id.*

    3.  *Bankruptcy Rule 1007(j)*

Bankruptcy Rule 1007(j) provides:

> On motion of a party in interest and for cause shown the court may direct the impounding of the lists filed under this rule, and may refuse to permit inspection by any entity. The court may permit inspection or use of the lists, however, by any party in interest on terms prescribed by the court.

FED. R. BANKR. P. 1007. Bankruptcy Rule 1007(j) permits the Court to protect information "from disclosure to competitors or others who might make inappropriate or unfair use of the information." 9 COLLIER ON BANKRUPTCY P 1007.10 (16th ed. 2022).

A court may direct the impounding of any lists filed under Bankruptcy Rule 1007 and prohibit any entity from inspecting those lists. For an order impounding a list, cause must be

shown upon a motion of a party in interest.   Parties in interest may gain access for inspection or use of the impounded lists with permission from the court and upon terms prescribed by the court.  A party in interest is deemed to include the debtor, the trustee, an indenture trustee, creditors, equity security holders, or committees of creditors or equity security holders appointed pursuant to 11 U.S.C. § 1102.

Bankruptcy Rule 1007(j) does not expressly define the term "list" for purposes of classifying what documents or information may be impounded.  Documents identified as a "list," as opposed to a schedule or statement under Bankruptcy Rule 1007, include lists of creditors, lists of equity security holders, lists of creditors with the twenty largest unsecured claims, and lists of known holders of legal or equitable title in real property that may be filed in a Chapter 9 bankruptcy case.  *See* Impoundment of Lists, 1 Bankruptcy Desk Guide § 8:77.

The federal procedure form related to Rule 1007 states: "The court may direct the impoundment of any lists filed under Fed. R. Bankr. P. 1007 and prohibit any entity from inspecting those lists."  4A FED. PROC. FORMS § 9B:93.  For an order of impoundment to issue, cause must be shown on a motion of a party in interest.  *Id*.  Parties in interest may gain access for inspection or use of the impounded lists with permission from the court and on terms prescribed by the court.  *Id.*

Rule 1007(j) permits a court to impound the lists to be filed under the Rule, prohibiting inspection or qualifying inspection or use on terms prescribed by the court.  Impoundment of lists, BANKR. PROC. MANUAL § 1007:5 (2022 ed.).  This further amplifies the court's general obligation to maintain public records but to seal secret, confidential, scandalous or defamatory matters under Rule 9018.  *Id.*

20

Rule 1007(j), by its terms, does not set forth the standard for an order impounding a list, nor does it explain when redaction rather than wholesale sealing is appropriate. Section 107(b) and caselaw interpreting it favor redaction, if possible, rather than sealing the entirety of anything containing information entitled to protection under section 107. Bankruptcy Rule 1007(j) adds little guidance in the context of this case. The issue remains whether some or all of the information the Debtors seek to seal is entitled to protection under section 107(b) or (c).

Satisfying this standard requires more than conclusory assertions unsupported by evidence. And, as already stated, because the exception to the general right of access is narrow, for "commercial information" to be entitled to protection, the party seeking protection must show that the information is so critical to the operations of the entity that disclosure will unfairly benefit the entity's competitors. *In re Barney's, Inc.*, 201 B.R. at 708–09. If protection is sought under section 107(c), it will not do simply to speculate that disclosure "may," as opposed to "would" as the statutory language requires, create undue risk of identity theft or other unlawful injury.

## III.    **DISCUSSION**

The Debtors seek authority to redact the following information from any paper filed with the Court:

> (i) the home addresses and email addresses of any citizens of the United States located in the United States, including the Debtors' employees, individual shareholders, and individual customers, and

> (ii) the names, home addresses, and email addresses of any citizens of the United Kingdom or European Economic Area member countries and any individual whose citizenship is unknown.

(Sealing Motion ¶ 3.)[8]

---

[8]    As already stated, and as discussed in Section F, below, the Debtors expanded their sealing requests to include customer names as well as home and email addresses.

The Debtors carry the burden of showing there is a sufficient basis to overcome the presumption and public policy in favor of public access to court records. *See In re Food Mgmt. Grp., LLC*, 359 B.R. at 561. In their effort to meet their burden, the Debtors rely on two statutory exemptions: (i) the redaction of home and email addresses of individual customers is warranted as confidential commercial information under section 107(b), and (ii) the redaction of names, home addresses, and email addresses of Protected Parties is warranted under section 107(c)(1). The Court considers each in turn.

### A. Home Addresses and Email Addresses of the Debtors' Customers Are Not Commercial Information Under Section 107(b)(1)

The Debtors and Committee both argue that customers' personally identifiable information is confidential "commercial information" under section 107(b) of the Bankruptcy Code. (Motion ¶ 24; Joinder ¶ 4.) The Second Circuit has defined commercial information as information critical to the commercial operations of a debtor that, if disclosed, would cause an unfair advantage to competitors. *See In re Orion Pictures Corp.*, 21 F.3d at 27. The Debtors argue that their customers' home and email addresses meet this definition. The Debtors explain that they "operate in a highly competitive market and the publication of the home addresses and email addresses" would "enable competitors to target the Debtors' customers and undermine the Debtors' ability to reorganize." (Motion ¶ 24.); *see also* Committee Joinder ¶ 3 ("[Customers] are the lifeblood of Celsius.").)

The Debtors' larger problem is that before and after the Debtors filed their chapter 11 cases, the Debtors froze all customer accounts, refusing to permit any withdrawals of crypto assets. That step appears to have been appropriate, at least to the extent that crypto assets are property of the estate, but as the flood of *pro se* filings on the docket demonstrate, it has not won many fans among Debtors' customers. As Debtors' counsel acknowledged during the first day

22

hearing, the Debtors' business model substantially changed before the bankruptcy filings because of actions by state and federal securities law regulators, who allege that the Debtors' business model involved the impermissible sale of unregistered securities.

The Debtors also fail to address with evidence whether creditors who deposited crypto assets with the Debtors also maintain accounts with the Debtors' competitors. The Debtors Terms of Use do not require exclusivity. As explained in the next section below, and as the Court made clear during the argument of the sealing motions, at least for *individuals* who maintained accounts with the Debtors, the Court believes that Debtors should redact home addresses, telephone numbers and email addresses, but not the creditors names, from any Court filings, to protect the individuals from harassment and identity theft. For good cause shown on motion of any party in interest, the Court will consider releasing unredacted information.[9]

Next, Mr. Bixler explains that it is expensive and time consuming for crypto companies to identify, attract, and enroll potential customers. (Bixler Decl. ¶ 5.) While that may be true, the Court does not believe that is sufficient evidence to support sealing of the *names* of all creditors. The Court finds and concludes that by sealing individual customers' home and email addresses to protect those customers under section 107(c), the Debtors will also gain protection of whatever commercial value may flow from that information, even though that is not the basis for the Court's conclusion that such information should be protected from disclosure. But to be clear, the Court is only granting that protection with respect to addresses of *individual* customers, not for corporate, LLP or LLC customers. Section 101(41A) of the Bankruptcy Code defines

---

[9]       For example, at the Hearing on the Sealing Motions, counsel for the Texas security law regulator explained that regulatory agencies may seek disclosure of such redacted information in furtherance of their ongoing investigations of alleged securities laws violations by the Debtors or others.

"personally identifiable information" to mean information provided by "an individual to the debtor"; it does not include information provided by business entities. 11 U.S.C. § 101(41A).

The Court recognizes that in sustaining the U.S. Trustee's objection to sealing, the Court declines to follow decisions in several other recent bankruptcy cases, including one in this district. *See In re Voyager Digital Holdings, Inc., et al*., No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022) (ECF Doc. ## 112, 113) (authorizing debtor in another crypto case to redact the names of "Confidential Parties," including customers, in addition to authorizing the debtors to redact home addresses of individuals listed on the creditor matrix or other documents filed with the court, and the names and addresses of individuals protected by the GDPR; *In re Cred, Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) (sealing confidential information including the names, mailing and email addresses of customers); *see also In re Altegrity, Inc.*, No. 15-10226 (LSS), 2015 WL 10963572, at *3 (Bankr. D. Del. July 6, 2015) (holding that the identities of the debtor's independent contractors were commercial information under section 107(b) where "[the debtor] has expended considerable effort and money to develop its network of Independent Contractors, and the Independent Contractors are highly susceptible to solicitation).

The strong public policy of transparency and public disclosure in bankruptcy cases requires very narrow exceptions and only on strong evidentiary showings. The Court concludes that the Debtors' evidentiary showing is insufficient to justify the wholesale sealing of creditors identities. As explained above, Court grants the sealing motions permitting redaction of home and email addresses of individual creditors under section 107(c).

## B. Names of the Debtors' Customers Are Not Commercial Information Under Section 107(b)(1)

Absent the emails and physical addresses linked to the individual creditor names, the Court finds that Debtors' evidentiary showing with respect to the names of over 300,000

individual creditors[10] does not meet the standard for confidential "commercial information" under section 107(b)(1). To be "commercial information" under section 107(b), the publication of the information must cause an unfair advantage to competitors. *See In re Orion Pictures Corp.*, 21 F.3d at 27. Including the names of over 300,000 individual creditors without home or email addresses does not provide a viable means for solicitation, assuming that alone would be enough to justify protection. The decision in *In re Faucett*, 438 B.R. 564, 568 (Bankr. W.D. Tex. 2010), specifically notes that the screen shots implicated "are useful to a competitor, however, only to the extent that an actual customer's identity is revealed." Names alone are simply not enough to facilitate a competitor's theft. Celsius has stated that it has over 1.7 million registered users and approximately 300,000 active users with account balances of more than $100, with account holders in more than 100 countries. (Mashinsky Declaration ¶¶ 1, 9.) Identifying the individual account holders by name, without physical and email addresses, is insufficient information to expose customers to risks of identity theft or personal danger. Sealing information such as that sought by the Debtors from public disclosure risks transforming the open and transparent bankruptcy process into something very different, which the Court is loath to do without a strong showing of real and not speculative risks.

Ultimately, this Court is unconvinced that the names alone without any of the other identifying information constitutes commercial information. In this case, the customer names alone, without their addresses and emails, would not unequivocally identify people. *See Motors Liquidation*, 561 B.R. at 44 (holding that the identities of the owners of 10% or more of the equity interests of a party in an adversary proceeding are not confidential commercial information and denying motion to seal).

---

[10]    Mashinsky Declaration ¶ 9.

The Court **SUSTAINS** the U.S. Trustee's Objection in reference to individual names only, and **DENIES** the Motion, in part, regarding the sealing of the home and email addresses of individual creditors.

### C. The Redaction of Individual Creditor Emails and Addresses is Warranted Under Section 107(c) of the Bankruptcy Code, but the Redaction of Names of the Debtors' Individual Customers and Information Related to Business Entities is Not Warranted Under the Bankruptcy Code, nor is it Required by Privacy and Data Protection Regulations.

### 1. The Redaction of Emails and Physical Addresses of Individuals is Warranted under Section 107(c)

The Debtors argue that the public disclosure of the home address and email addresses of the Protected Parties can put them "at a real risk of becoming the target of identity theft, blackmail, harassment, doxing, and stalking." (Motion ¶ 33.) The U.S. Trustee argues that the Debtors have not put forward sufficient evidence that individuals were specifically targeted for harassment and violence, and "anecdotal evidence does not rise to the level of evidence necessary to overcome the strong presumption of Congress for open and public bankruptcy proceedings." (U.S. Trustee Objection ¶ 28 (citing *United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 150 B.R. 334, 340–41 (D. Del. 1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information).) The Debtors provide some anecdotal evidence with statistics of identity theft, stalking, and intimate partner violence. The Debtors also attach examples in Exhibit B to the Motion of online threats made on the life of the Debtors' CEO Alex Mashinsky.[11] (Motion, Ex. B.) The Court

---

[11] Threats to safety of CEO Mashinsky are, of course, unacceptable. But threats to Mashinsky do not support a finding that the personal safety of account holders have been threatened or that account holders are exposed to risks of physical injury. The docket in this case is filled with letters from irate *pro se* creditors who accuse Mashinsky of a very long history of misrepresentations to account holders, enticing them to deposit their crypto assets with Celsius with assurances, right upon until the filing of the bankruptcy petitions, that their assets are safe, and that Celsius was able to meet account holder requests for the return of their funds. Alleged misrepresentations by Mashinsky, and whether Celsius was engaged in the unlawful sale of securities, will undoubtedly be the subject

finds public disclosure of the home and email addresses of the Debtors' employees, directors, and officers would create undue risk of unlawful injury under section 107(c).  The Court **GRANTS** the Motion, in part, to authorize the redaction of the home addresses and email addresses of the Debtors' employees, directors, and officers.

The Court further finds that there is cause under Section 107(c) of the Bankruptcy Code to protect individual account holders' personally identifying information, but only with respect to email and physical addresses.  Such information, in combination with their names, could make individual account holders more vulnerable to identify theft and render account holders' crypto assets more susceptible to criminal theft.  (Committee Joinder ¶ 6; *see also* ECF Doc. # 633 ¶ 2 (stating that "public disclosure of customers' email addresses . . . would put customer accounts at greater risk from hackers.  It would also make customers all-too-easy targets for identity theft, phishing attacks and other scams."); ECF Doc. # 642 ¶ 2 ("[P]ublishing the contact information consisting of home addresses and email addresses of the Debtors' customers publicly on the docket . . . puts individuals at risk of identity theft, fraud or other serious harm.").)

The Court **GRANTS** the Motion, in part, to authorize the redaction of the home addresses and email addresses, but not the names, of the individual account holders.

---

of investigations by the Examiner or the Creditors Committee, as well as in the ongoing investigations by state and federal securities regulators.

    2.   *The Redaction of Information of Business Entities, as Opposed to Individual*
        *Creditors, is Not Warranted under Section 107(c)*

The Court does not interpret "individual" in section 107(c) to encompass business

entities.  The type of information protected under section 107(c) includes information "that may

be used, alone or in conjunction with any other information, to identify a specific individual."  *In*

*re Barbaran*, No. 06-00457-ELG, 2022 WL 1487066, at *4 (Bankr. D.D.C. May 9, 2022) (citing

*In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 748 (Bankr. D. Del. 2018)

(citing 18 U.S.C. § 1028(d))).

Further, under 11 U.S.C. § 101(41A), personally identifiable information is either "(A)

provided by an ***individual*** to the debtor with obtaining a product or a service from the debtor

primarily for personal, family, or household purposes" and is an individual's name, address,

phone number, social security number, or account numbers for a credit cards; or is "(B)

identified in connection with 1 or more of the items of information specified in subparagraph

(A)" and is "(i) a birth date, the number of a certificate of birth or adoption, or a place of birth"

or "(ii) any other information concerning an identified ***individual*** that, if disclosed, will result in

contacting or identifying such ***individual*** physically or electronically."  11 U.S.C.A. § 101 (41A)

(emphasis added).

  The Court **DENIES** the proposed redaction of all information, including names, email

addresses and physical addresses to the extent the sealing requests apply to business entities and

not individuals.

    3.   *The Redaction of the Names of Individual Creditors, located in the United*
        *States and Abroad, is Not Warranted under Section 107(c)*

The Debtors place special emphasis on the requests for the authorization to redact the

names, email addresses, and home addresses of any citizens of the UK or European Economic

Area member countries.  (Sealing Motion ¶ 30.)  The Debtors submit that disclosing their names

as well as their addresses risks violating the UK GDPR and the EU GDPR, which would expose

the Debtors to potential civil liability and significant financial penalties.  (Motion ¶¶ 30–33.)

The U.S. Trustee objects, arguing that foreign law should not "prevail over the well-settled

principle of American law that bankruptcy proceedings are public."  (U.S. Trustee Objection ¶

27.)  Ultimately, the Debtors provide no legal authority explicitly dictating why the UK GDPR

and the EU GDPR should apply to the bankruptcy cases of the Debtors filed in the United States,

or specifically, why the foreign laws would take precedence in a situation where United States

law requires the disclosure of the information.

Section 107(c) provides the Court with discretion to protect an individual with respect to

any identifying information to the extent the Court finds that disclosure of such information

would create an undue risk of unlawful injury to the individual.  11 U.S.C. § 107(c).  However,

the Debtor has failed to show that public disclosure of UK or EU citizens personal data in

violation of the UK GDPR or EU GDPR would constitute an unlawful injury *to those individuals*

because the financial penalties (injury) would be imposed against the Debtors under those laws.

The Court, in turn, will not treat the UK and EU citizens differently than the United States

citizens implicated in this case filed in New York.

Further, the Court remains unconvinced, beyond speculation, that the disclosure of names

alone (without email or physical addresses) presents an imminent risk of harm.  As noted by the

U.S. Trustee at the September 14 Hearing, "over 250 creditors have already filed claims with

names and addresses.  Over 350 Letter letters have been filed on the docket with names.

Appearances in this court case and at the 341 meetings have names."  (Hearing Tr. 73:21–25.)

Yet there "has been no showing . . . that any of the individuals that have self-identified have been

the target of any acts the Committee or the Debtors argue is imminent upon disclosure." (*Id.*
74:1–4.)

The Court **GRANTS** the Motion, in part, to authorize the Debtors to redact home
addresses and email addresses of any individuals (including those located in the U.K. or
European Economic Area member countries). The Court **DENIES** the proposed redaction of the
names of the individuals.

### D. The Retention Objection is Sustained

The Debtors are seeking to redact the names of certain creditors listed on the schedules of
the Debtors' Retention Applications.[12] As this Court has previously stated, "documents which
are part of the court record should not remain under seal absent the most compelling reasons." *In
re Motors Liquidation Co*., 561 B.R. at 41 (citing *In re FiberMark, Inc*., 330 B.R. at 503–04
(internal citations omitted)). Disclosure of names in retention applications serves an essential
purpose in evaluating conflicts. "[P]ublic access allows other parties and the public to identify
any person or entity with a substantial financial interest—whether passive or active—in the
outcome . . . and draw their own conclusions about any potentially disqualifying conflicts—a
purpose that cannot be served if redacted statements are filed." *Id.* at 38.) The information
Debtors seek to seal simply does not fall within the exceptions allowed under the Bankruptcy
Code.

The Court **SUSTAINS** the Retention Objection and **DIRECTS** all professionals to
submit unredacted versions of the Retention Applications.

---

[12]    ECF Doc. ## 360, 361, 363, 392, and 410.

### E.  The Court Will Grant in Part and Deny in Part the White and Case Sealing Motion

The Committee incorporates the arguments for sealing personally identifiable information set forth in the Sealing Motion and Committee Joinder with respect to Confidential Individuals.  The Court **GRANTS** the White and Case motion with respect to the Confidential Individuals only to the extent that the redactions comply with redactions permitted by this Memorandum Opinion's decision regarding the Sealing Motion.  In other words, the Committee is permitted to redact the home addresses and email addresses of the Confidential Individuals contained in the parties in interest list, but it may not redact the names of Confidential Individuals.  (White and Case Sealing Motion ¶ 7.)

The Committee submits that the Confidential Parties that may participate in the Debtors' DIP financing process constitutes confidential commercial information that is required to be protected under section 107(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9018.  (*Id*. ¶ 14.) The Court agrees.  This is, indeed, confidential commercial information that is important to the successful search for and negotiation of debtor in possession financing.  It is indeed common practice to shield from public view the names of parties with whom the Debtors have solicited interest and negotiated DIP Financing.  That information must be shared by the Debtors with the Committee, the United States Trustee and the Court to assure that a robust process has been undertaken to secure financing on the best possible terms.

### F.  The Court Denies Debtors' Anonymization Motion

The Debtors submit that filing any document on the public docket linking names and account balances poses "an undue risk of identity theft or unlawful injury" given the unique nature of cryptocurrency and the heightened risk of cyberattacks due to the difficulties associated with tracking, tracing, and recovering stolen cryptocurrency.  (Anonymization Motion ¶ 20.)

The Debtors further claim that the names of individual customers in connection with their account balances in documents filed publicly on the docket constitutes personal information protected under section 107(c)(1) of the Bankruptcy Code.  (*Id.* ¶ 21.)

The Court balances this proposed risk against the policies weighing in favor of public disclosure.  Under Rule 3003 of the Bankruptcy Code, the schedule of liabilities filed pursuant to section 521(1) of the Code shall constitute *prima facie* evidence of the validity and amount of the claims of creditors unless they are scheduled as disputed, contingent, or unliquidated.  FED. R. BANKR. P. 3003.  Creditors are not required to file proofs of claim unless creditors' claims are scheduled as disputed, contingent or unliquidated.  (Hearing Tr. 57:22–25; 58:1).

In the September 14 Hearing, the Court noted that there are over 300,000 Celsius customers with over $100 in their bank accounts and emphasized that "the claims allowance process in bankruptcy was designed and works best when creditors file schedules identifying their creditors by name and the claim amount which the Debtors also seek to seal." (58:14–21.) The Court further emphasized that this transparency is "important because creditors can look at the schedule and see whether their claim has been listed, and whether it is an undisputed claim, in which case, they don't have to file a proof of claim." (*Id.*)  Enabling parties in interest and the public to see the identity of creditors and the amount of their claims, and then tracking the disposition and treatment of claims during the bankruptcy case, is important to the fairness and public perception of the bankruptcy process.  Only in the rarest of cases should these ordinary expectations be upset.[13]

---

[13]    The Debtors propose their "Anonymization" process where the Debtors will send individual emails to "every. . . account user, both their web account and their email, that informs them of the amount that their claim has been scheduled and provides them with that number so they can go to Stretto's website and cross check that number on their own and confirm." (*Id.* 59:6–11.)

The Court is not persuaded by this proposed solution, in part, because the public schedules do not merely serve the interests of individual creditors, but, rather, also serve the interests of creditors and the public in general—all parties and the public share an interest in complete transparency, with only the rarest of exceptions. The claims-allowance process, with broad access of information for all creditors, helps provide confidence in the fairness and transparency of the bankruptcy process.

For the reasons, the Court **DENIES** the Debtor's requests to seal names in the Anonymization Motion.

## IV.    <u>CONCLUSION</u>

For the reasons explained above, the Court **GRANTS** the Sealing Motion, in part, authorizing the Debtors to redact home and email addresses of any individual creditor. The Court **DENIES** the Sealing Motion, in part, to the extent it seeks to redact the names of individual creditors, and the names, email and physical addresses of creditors that are business entities.

The Court **GRANTS** the Sealing Motion in part to the extent it seeks to redact the Creditor Matrix—it must identify the names of all creditors, but it may redact the physical and email addresses of all individual creditors. All information must be supplied of creditors that are business entities.

The Court also **SUSTAINS** the U.S. Trustee's objection to redactions of the Retention Applications. Unredacted Retention Applications must be filed within fourteen (14) days after the date of this Opinion and Order.

The Court also **GRANTS** the White and Case Sealing Motion, in part, only to the extent that the redactions comply with redactions permitted by this Memorandum Opinion's decision

regarding the Sealing Motion and the redaction of the home and email addresses of individual

creditors.  The Court **DENIES** the White and Case Sealing Motion, in part, to the extent it seeks

to redact the names of individuals or any information surrounding business entities.

Lastly, the Court **DENIES** the Debtors' Anonymization Motion.

**IT IS SO ORDERED.**

Dated:    September 28, 2022
          New York, New York

_Martin Glenn_

MARTIN GLENN
Chief United States Bankruptcy Judge