UNITED STATES BANKRUPTCY COURT

Southern District of New York
Honorable Martin Glenn, Chief Judge
One Bowling Green
New York, NY 10004



In re: Celsius Network, LLC
Chapter 11
Case No. 22-10964 (MG)

Hello Honorable Judge Glenn,

My name is Travis Rodgers and I am an "unsecured creditor" in the Celsius Network debacle with an account value of over $100k. The idea that Celsius Network has asked us to submit claims with a value based on the date of filing bankruptcy, being that of July 13th, 2022 is absurd. Crypto is in the middle of the Bitcoin halving cycle bear market and this was an expected event for anyone with any interest in crypto, and especially exchanges such as Celsius Network. There is NO DOUBT in my mind that this was an organized bankruptcy, planned long in advance, and utilized to secure account holder's assets. This idea is also supported by the fact that the TOS of Celsius Network was changed 89 days before filing bankruptcy, thus allowing them the ability to clawback transfers from Earn to Custody accounts and make them assets of the estate as well. They are a disgusting and vile company, your honor. With ZERO humility. Even today, Alex Mashinsky's wife sells T-shirts stating "unbankrupt yourself" and thinks it's funny. As thousands of people's lives are ruined. They are parasitic in nature and feed off of the producers.

The Bitcoin halving cycle is a very well known basis for technical analysis in the crypto market and many of us called a $17k floor on BTC back in 2021 when the market's technicals were showing signs of reversal into the bear market. Knowing this, I placed my remaining crypto assets in a platform that Alex Mashinsky and his team referred to as "safer than banking" with "no lock ups" and "impossible for a bank run to take place", simply to accrue interest during this bear market. I am not an accredited investor and should have never been able to utilize the "Earn" account beyond April, along with many others, as they would be considered "unregistered securities". Nor would I, had I known they then belonged to Celsius Network. I personally took $25k to over $500k in the last halving cycle bull market and I certainly don't need a manager for my money or to give loans to strangers from other countries of my very valuable crypto assets. The crypto in my account with Celsius Network will absolutely be worth $400k+ in 2024 halving bull market and Celsius Network wants them for cheap so they can reap the rewards. I refuse to let that happen. I own 43,000 ADA on Celsius that I bought at a $.06 average per unit in 2018. Just to name one position. To not return my crypto would be more than theft but an absolute fraudulent occurrence by anyone who plays a role in allowing it to happen.

The Earn Program's terms of use are somewhat ambiguous: While they speak in terms of a transfer of title and ownership to Celsius, they also expressly state that depositors are merely entering into "open-ended loans" of their digital assets to Celsius. A loan generally does not effectuate a change of ownership. If I make an open-ended loan of my car to my teenager, he may use the car to do any number of things, but she does not thereby acquire title to it. Or, in a more closely analogous situation, I might enter into a hypothecation agreement for a margin account that allows my broker to lend out my shares to short sellers, but that doesn't make him the owner of the shares. In the same vein, New York law looks to the substance of a relationship; the words used to characterize it are not dispositive. Celsius expressly disavowed any fiduciary obligations to depositors in the terms of use, which would tend to preclude a finding that it held depositors' coins as an agent or custodian. However, "where a writing erects the essential structure of an agency relationship, even an explicit disclaimer cannot undo it."

As New York's highest court has recognized, the existence of fiduciary obligations "is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation."
Veleron Holding, B.V. v. Stanley, 117 F. Supp. 3d 404, 452 (S.D.N.Y. 2015).

In other words, just because Celsius claimed it wasn't acting as an agent or custodian for Earn Program depositors doesn't let it off the hook. A factual record must be developed to determine the true relationship between Celsius and the Earn Program depositors.
EBC I, Inc. v. Goldman, Sachs & Co., 832 N.E.2d 26 (N.Y.2005).

Earn Program depositors could also argue that the terms of use were orally modified by public pronouncements by Celsius executives, mainly the loud-mouth Alex Mashinsky, indicating that we would continue to own and control our coins. The terms of use, somewhat surprisingly, contain no integration clause or prohibition of oral modification; thus, under New York law, a colorable argument may be made that the terms were orally modified to keep title to the coins with the depositors.
See, e.g., Merrill Lynch Realty Assocs., Inc. v. Burr, 140 A.D.2d 589, 593, 528 N.Y.S.2d 857, 860 (1988) (explaining that New York's General Obligations law does not "bar enforcement of a subsequent oral agreement to modify or cancel a contract where the contract does not contain an express prohibition against oral modification").

I would ask your honor to decide to MAKE ALL ACCOUNT HOLDERS the FIRST and PRIMARY creditors in this case and for Celsius to not have the opportunity to secure all of our assets at the market bottom for pennies on the dollar. It would be a gross display of incompetence amongst the courts for this to be allowed. If the courts are not knowledgeable about crypto cycles, allow honest professionals to take the lead and get to the bottom of the fraud, deception and obvious plan of Celsius Network to steal our crypto assets.

The Earn Program's terms of use are somewhat ambiguous. While they speak in terms of a transfer of title and ownership to Celsius, they also expressly state that depositors are merely entering into "open-ended loans" of their digital assets to Celsius. A loan generally does not effectuate a change of ownership. If I make an open-ended loan of my car to my teenager, she may use the car to do any number of things, but she does not thereby acquire title to it. Or, in a more closely analogous situation, I might enter into a hypothecation agreement for a margin account that allows my broker to lend out my shares to short sellers, but that doesn't make him the owner of the shares. In the same vein, New York law looks to the substance of a relationship; the words used to characterize it are not dispositive. Celsius expressly disavows any fiduciary obligations to depositors in the terms of use, which would tend to preclude a finding that it held depositors' coins as an agent or custodian. However, "where a writing evinces the essential structure of an agency relationship, even an explicit disclaimer cannot undo it."

---

As New York's highest court has recognized, the existence of fiduciary obligations "is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation."
Veleron Holding, B.V. v. Stanley, 117 F. Supp. 3d 404, 452 (S.D.N.Y. 2015).

In other words, just because Celsius claimed it wasn't acting as an agent or custodian for Earn Program depositors doesn't let it off the hook. A factual record must be developed to determine the true relationship between Celsius and the Earn Program depositors.
EBC I, Inc. v. Goldman, Sachs & Co., 832 N.E.2d 26 (N.Y. 2005).

Earn Program depositors could also argue that the terms of use were orally modified by public pronouncements by Celsius executives, mainly the loud-mouth Alex Mashinsky, indicating that we would continue to own and control our coins. The terms of use, somewhat surprisingly, contain no integration clause or prohibition of oral modification; thus, under New York law, a colorable argument may be made that the terms were orally modified to keep title to the coins with the depositors.
See, e.g., Merrill Lynch Realty Assocs., Inc. v. Burr, 140 A.D.2d 589, 593, 528 N.Y.S.2d 857, [illegible] (explaining that New York's General Obligations law does not "bar enforcement of a [illegible] a contract [illegible]
an express prohibition against oral modification").

I would ask your honor to decide to MAKE ALL ACCOUNT HOLDERS the FIRST and PRIMARY creditors in this case and for Celsius to not have the opportunity to secure all of our assets at the market bottom for pennies on the dollar. It would be a gross display of incompetence amongst the courts for this to be allowed. If the courts are not knowledgeable about crypto cycles, allow honest professionals to take the lead and get to the bottom of the fraud, deception and obvious plan of Celsius Network to steal our crypto assets.

I personally will not accept anything less than the entirety of my crypto in-kind. I'm not interested in being a part of anything Celsius Network decides otherwise. I do not want stock, any part of their mining company (even though I helped pay for it apparently), wrapped coins, Celsius token or any other trash they decide to hand out in replacement of my very solid crypto project tokens such as ADA, SOL, AVAX, POLY, LINK, etc. I will take my crypto as I deposited it in good faith into their "crypto bank" and no other way.

Thank you, Judge Glenn.

Sincerely,

Travis Rodgers
Unknowing "Unsecured Creditor"
Phoenix, AZ
Total assets apparently "leant" to Celsius: $116,000