| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS LLP** |
| 601 Lexington Avenue | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| New York, New York 10022 | 300 North LaSalle Street |
| Telephone:    (212) 446-4800 | Chicago, Illinois 60654 |
| Facsimile:    (212) 446-4900 | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF QUINN LAWLOR IN SUPPORT OF DEBTORS'
MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR CIVIL CONTEMPT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

I, Quinn Lawlor, declare:

1. I am the Chief Strategy Officer of Debtor Celsius Mining LLC, formerly Celsius Core LLC ("Celsius Mining" or "Celsius"). I submit this Declaration in support of the Debtors' Motion to Compel Core Scientific's Compliance with the Automatic Stay.

2. As Chief Strategy Officer, I am generally familiar with Celsius' contracts with Core Scientific and Core Scientific's conduct both before and after the Debtors filed the chapter 11 cases on July 13, 2022 (the "Petition Date"). Except as otherwise indicated, all facts in this declaration are based upon my personal knowledge, my discussions with other Celsius employees who are familiar with Celsius' dealing with Core Scientific, my review of relevant documents and records, or my opinions based upon personal experience and knowledge.

**I.  The Agreement**

3. Attached hereto as **Exhibit A** is a true and correct copy of the Master Services Agreement ("MSA"), executed by Core Scientific and Celsius Core LLC f/k/a Celsius Mining, on December 18, 2020. Under the MSA, Core Scientific agreed to provide certain services in connection with Celsius' digital-asset mining rigs, including services relating to colocation, hosting, monitoring, maintenance and repair, technical support, and heat and thermal management. Core Scientific agreed to perform these obligations in a "professional and workmanlike manner." *See* MSA § 5. The MSA also provided that it would be supplemented by certain "Orders," which would incorporate the terms of the MSA, and specify the rigs to be deployed, the deployment schedule for those rigs, and the terms of payment. *Id.* § 1(a).

4. As the MSA contemplated, Celsius and Core Scientific executed a series of specific Orders. At the time the MSA was executed, Celsius and Core Scientific simultaneously entered and executed Order #1 through Order #7. *See* **Exhibit A** at 10–23. Core Scientific and Celsius later signed Order #8, but they subsequently cancelled it and refunded all deposits. On August 22,

1

2021, Core Scientific and Celsius signed Order #9, which concurrently terminated Order #5. A true and correct copy of Order #9 is attached hereto as **Exhibit B**. On September 27, 2021, Core Scientific and Celsius signed Order #10. A true and correct copy of Order #10 is attached hereto as **Exhibit C** ("Order #10). Order #10 set forth a schedule by which Celsius would supply, and Core Scientific would deploy, Celsius mining rigs between September 2021 and December 2022.

5. Order #10 obligates Core Scientific to provide a specified power allocation beginning in certain months of the contract. It details this power allocation by identifying the deployment month (e.g., "Sep[tember] 2021"), the approximate quantity of rigs to be deployed (e.g., "2,250"), the type of rig ("M30S+ or Equivalent"), and the assumed power consumption per rig in "KWh" or kilowatt hours (3.57 KWh), as follows:

| Equipment hosted**: | Deployment Month | Quantity & Type of Unit (the "Units") | Assumed power consumption per Unit (KWh): |
|---|---|---|---|
| | SEP 2021 | 2,250 - M30S+ or Equivalent | 3.57 |
| | MAR 2022 | 3,530 - M30S+ or Equivalent | 3.57 |
| | APR 2022 | 4,710 - M30S+ or Equivalent | 3.57 |
| | MAY 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | JUNE 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | JUL 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | AUG 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | SEP 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | OCT 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | NOV 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | DEC 2022 | 2,350 - M30S+ or Equivalent | 3.57 |

6. The power allocation due to Celsius beginning in a particular month is calculated by multiplying the specified quantity of rigs by the assumed power consumption per rig. For example, the total power allocation for September 2021 was 2,250*3.57kW=8,032.5 kW, which is 8.03 megawatts ("MWs"). So, beginning in September 2021, and continuing through the term of Order #10, Core Scientific was to provide Celsius an allocation of up to 8.03 MWs of power. Then in March 2022, Core Scientific was to provide Celsius an additional 12.6 MWs of power availability (3,530*3.57 kW=12602.1 kW), for a total amount of available power in March of up to 20.63 MWs. By September 2022, Core Scientific is obligated to provide Celsius up to 79.4 MWs of

2

power availability. And by December 2022, the total power allocation Core Scientific must provide under Order #10 is approximately 105 MWs. This is the hosting capacity to operate approximately 29,000 rigs of the type specified in Order #10 ("M30S+ or Equivalent"). However, Order #10 is based on total power consumption, so if Celsius chooses to deploy a different, more efficient type of rig that consumes less power on a per rig basis, Celsius is entitled to deploy more rigs than the quantity specified in Order #10 in order to consume its full power allocation.

7. Order #10, and the preceding Orders (Order #1 through Order #9), specify that Core Scientific is obligated to provide hosting services to Celsius at a fixed rate, called the "Hosting-Services Rate." This rate includes both the cost of energy usage and a services fee for operating the rigs. Order #10, like Order #1 through Order #9, states that Celsius' fees will be determined "by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting-Services Rate (each as set forth above in this Order)." Order #10 at 4; *see also* **Exhibit A** at 10–23, **Exhibit B** at 1. The fixed rate means that if the spot price of power increases, Core Scientific cannot pass through that increased cost to Celsius. The fixed Hosting-Services Rates of Order #10 and the preceding Orders were an essential term of the agreements for Celsius because it meant that Core Scientific, not Celsius, would bear the risk of rising power rates. Order #10 sets the following Hosting-Services Rates over the term of the Agreement:

| Hosting-Services Rate: | Deployment Month | Hosting-Services Rate: |
|---|---|---|
| | SEP 2021 | USD $.0575/ KWh; USD $.06/Kwh after hosting month 12 |
| | MAR 2022 | USD $.0593/ KWh; USD $.06/kwh after hosting month 12 |
| | APR 2022 – DEC 2022 | USD $.00625/ KWh; USD $0.6/kwh after hosting month 12 |

8. Finally, Order #10 requires Core Scientific to notify Celsius of additional hosting availability as it becomes available. Order #10 states that Core Scientific "will notify [Celsius] as soon as practicable of additional hosting availability, if any, and provide [Celsius] up to 10

3

additional MW per month at a hosting services rate of $0.0625 per KWh. Additional hosting availability if available will be the subject of a separate order and provided to [Celsius] on a priority basis, subject to [Celsius'] acceptance." Order #10 at 4–5.

9. To date, Celsius has paid Core Scientific approximately $18.2 million under Order #10, and Celsius has continuing payment obligations on Order #10 of approximately $5.4 million.

## II.  Core Scientific's Deployment Delays

10. Celsius has delivered a total of 10,885 rigs into Core Scientific's possession under Order #10. As stated above, as of the end of September 2022, Celsius is entitled to approximately 79.4 MWs of power. This is the hosting capacity to operate approximately 22,000 rigs of the type specified in Order #10. However, Core Scientific is currently deploying only 6,564 of Celsius' rigs under Order #10 and supplying a total of approximately 21.5 MWs of power. Thus, Core Scientific's current shortfall under Order #10 is approximately 58 MWs of power and at least 15,700 rigs.

11. Celsius delivered its 10,885 rigs under Order #10 to Core Scientific in three tranches. Each time, Celsius had to wait months for its rigs to come online. Celsius delivered an initial tranche of 2,245 rigs under Order #10 to Core Scientific between the end of October and mid-November 2021. Core Scientific did not fully deploy those rigs until January 30, 2022.

12. Celsius delivered a second tranche of 3,780 rigs to Core Scientific at the end of March 2022. By May 25, 2022, the March rigs were still not deployed. Celsius attempted to resolve that issue amicably by reaching out to Core Scientific. Attached hereto as **Exhibit D** is a true and correct copy of May 25, 2022, email correspondence between Celsius Mining's Chief Executive Officer, Amir Ayalon and Core Scientific's Executive Vice President of Client Services, Russell Cann. Mr. Ayalon asked Mr. Cann to confirm that the 3,780 March rigs (and plus an additional 4,710 rigs from other Orders) would be deployed by June so that Celsius could "put into our

4

working assumptions on deployment activities this month." *Id.* at 2. Mr. Cann replied, "Yes sir, it is . . . 8490 confirmed." *Id.* at 1.

13. Celsius took Core Scientific at its word and relied upon that promise. Celsius both built this assumption into its financial projections and reduced the intensity of its search for alternative hosting services providers. But Core Scientific failed to adhere to its promise to have the March rigs up and running by June. Core Scientific acknowledged its responsibility for this delay. Attached hereto as **Exhibit E** is a true and correct copy of an email sent to Celsius by Mitchell Livingston, Core Scientific's Client Success Manager, on June 2, 2022. Mr. Livingston proposed that Celsius delay paying its invoices until after June 20, 2022, "as compensation for our delayed deployment schedule." *Id.* at 1.

14. Core Scientific did not fully deploy the March rigs until July 21, 2022. After the March rigs were deployed, between July 21, 2022, and September 16, 2022, Core Scientific had the March rigs online for a total of approximately eight days. No power was available to the March rigs for the remainder of that time. Thus, until September 16, 2022, Core Scientific was providing Celsius with only approximately 9.7 MWs of power under Order #10 (just 12% of the hosting capacity Core Scientific is obligated to provide), and only approximately 2,794 of Celsius' rigs were operational. On September 16, 2022, Core Scientific brought the March rigs back online, after leaving them idle for months.

15. Most recently, Celsius delivered a third tranche of 4,860 rigs to Core Scientific in June 2022. Despite having those rigs in its possession for more than three months, Core Scientific has failed to deploy 4,320 of those rigs. Instead, they are sitting idle.

16. Celsius has suffered and continues to suffer significant lost revenue and lost profits while its mining rigs sit idle. Celsius has stopped delivering rigs to Core Scientific under Order

#10 both because Core Scientific has refused to deploy the rigs in its possession and because Core Scientific has now prohibited Celsius from sending any more rigs under Order #10 because it is so far behind schedule.

17. Despite Core Scientific's acknowledgment of its own responsibility for the delays, Core Scientific has repeatedly threatened to terminate the contract with Celsius following the Petition Date because of Celsius' remaining pre-petition obligation. During an August 22, 2022, telephone call, Jeff Pratt, Core Scientific's Senior Vice President of Partnerships, stated to Amir Ayalon, Patrick Holert, and Chris Ferraro that no new deployments would go forward until Celsius caught up on its payment schedule.

18. Core Scientific has also made such threats in writing. Attached hereto as **Exhibit F** is a true and correct copy of an August 29, 2022, email from Core Scientific's billing department to Celsius. In this email, Core Scientific notifies Celsius that it has an invoice that is three days overdue, and "remind[s] [Celsius] of the following penalties for non-payment," which include, among others, "suspend[ing] the provision of the Services," "disconnect[ing] Client Equipment," and "terminat[ing] the MSA and all Orders thereunder." Notably, the only overdue amount was Celsius' pre-petition obligation.

### III. Core Scientific's Failure To Notify Celsius Of Additional Hosting Capacity

19. In addition to its deployment delays and termination threats, Core Scientific failed to inform Celsius of any additional hosting availability at any point since Order #10 was signed. However, Core Scientific has continued to add rigs to its own fleet over the same period that it has been refusing to deploy Celsius' rigs. Core Scientific announced that as of December 2021, it was operating a fleet of approximately 67,000 rigs. *See* "Core Scientific Announces December Updates," https://investors.corescientific.com/investors/news/news-details/2022/Core-Scientific-Announces-December-Updates/default.aspx (January 5, 2022), last accessed September 19, 2022.

By April, Core Scientific's fleet had swelled to 85,000 rigs. *See* "Core Scientific Announces April Updates," https://corescientific.com/press/core-scientific-announces-april-updates/ (May 5, 2022), last accessed September 17, 2022. Core Scientific never informed Celsius of any additional hosting availability.

**IV.    Core Scientific's Attempt to "Pass Through" Its Power Costs**

20.  Following the Petition Date, Core Scientific has added a new line item to the invoices it sends to Celsius. On July 15, 2022, Celsius received its first invoice following the Petition Date. Attached hereto as **Exhibit G** is a true and correct copy of the cover email, invoice, and back up data for the July 15 invoice. The total amount invoiced to Celsius was approximately $4.6 million. The invoice included a line item called "Power Costs Pass-through." Core Scientific had never previously included such a line item, or such a pass through, on prior invoices. This new "Power Costs Pass-through" totaled $911,430.41. The invoice purported to retroactively impose the "Power Costs Pass-through" charges for services provided between May 2022 and June 2022.

21.  The "Power Costs Pass-through" charge had never appeared on any pre-petition invoices. When Core Scientific added this line item, it explained the charge as follows: "Core Scientific has incurred continuing significant tariff increases since the implementation of our Master Services Agreement – Core Scientific has been notified by its electrical utility suppliers of significant tariff increases due to rising fuel costs. As an Increased Costs [*sic*] under the Master Services Agreement (Section 4f), Core will be passing through such tariff increases without markup." Celsius did not pay the "Power Costs Pass-through" charges in the July 15, 2022, invoice because, according to the invoice, they had accrued pre-petition in May and June of 2022.

22.  On August 16, 2022, Celsius received its second post-petition invoice from Core Scientific, totaling $5.5 million. Attached hereto as **Exhibit H** is a true and correct copy of the cover email, invoice, and back up data for the August 16 invoice. Like the July 15 invoice, the

7

August 16 invoice also included the "Power Costs Pass-through" line item, which this time totaled $1,031,168.84. Core Scientific gave the same explanation for this line item as it did for the July 15 invoice: it was a "tariff increase" that it was "passing through" under Section 4(f) of the MSA.

23. Celsius relied on Core Scientific's representation that the "Power Costs Pass-through" was a "tariff" that could be passed through to Celsius under Section 4(f) of the MSA, which allows Core Scientific to "pass through" to Celsius "any new taxes, levies, tariffs or governmental fees and charges with respect to the provision of Services." MSA § 4(f). Therefore, Celsius paid the the post-petition amounts in the invoice, including the post-petition portion of the "Power Costs Pass-through" item, in order to avoid a post-petition breach of the Agreement.

24. On September 15, 2022, Celsius received a third post-petition invoice from Core Scientific, totaling $6.5 million. Attached hereto as **<u>Exhibit I</u>** is a true and correct copy of the cover email, invoice, and back up data for the September 15 invoice. Like the July 15 and the August 16 invoices, the September 15 invoice included the "Power Costs Pass-through" charge, which totaled $1,740,896.00. Core Scientific gave the same explanation for this line item as it did for the July 15 and August 16 invoices: it was a "tariff increase" that Core Scientific was "passing through" under Section 4(f) of the MSA.

25. Celsius became concerned about the "Power Costs Pass-through" given that this charge had suddenly arisen after the Petition Date. On September 20, 2022, Celsius disputed the "Power Costs Pass-through" charge, and asked Core Scientific to provide "any documents and materials reflecting both the 'tariff increases' that Core Scientific claims it has incurred and the payment of those charges by Core Scientific." In response, Core Scientific provided two attachments and an embedded link. True and correct copies of Celsius' email to Core Scientific,

8

Core Scientific's response email, and the materials attached to/embedded in Core Scientific's response are attached hereto as **Exhibit J**.

26. One of the attachments to Core Scientific's email was a letter from the Murphy Electric Power Board to Core Scientific, which showed the "fuel cost adjustment" for "MSD class customers with Murphy Power Board." The second attachment to Core Scientific's email was a letter from the Tennessee Valley Authority, which showed the "fuel cost adjustment" for rates at "Core Scientific's Calvert City location." The link embedded in Core Scientific's email was to a webpage that showed the Energy Reliability Counsel of Texas's ("ERCOT") "Historical RTM Settlement Point Prices" for "Hubs and Load Zones."

### V. The Parties' Recent Correspondence

27. On September 9, 2022, counsel for Celsius sent a letter to counsel for Core Scientific, a true and correct copy of which is attached hereto as **Exhibit K**. In this letter, Celsius demanded that Core Scientific fulfill its commitments under the Agreement and advised Core Scientific that its failure to do so is a violation of the automatic stay under Bankruptcy Code Section 362(a). Celsius sent this letter in an effort to resolve its issues with Core Scientific without seeking the Court's involvement.

28. Core Scientific finally responded by letter to counsel for Celsius on September 20, 2022, a true and correct copy of which is attached hereto as **Exhibit L**. Core Scientific explicitly disclaimed that it had invoked any of the contractual remedies referenced in its August 29, 2022, email, dismissing that email as "automated." Core Scientific denied that it failed to provide Celsius with the hosting capacity required by the MSA or Order #10.

29. Because Core is attempting to take advantage of Celsius' situation as a Debtor, Celsius felt it had to file this Motion in order to protect the estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 28, 2022, at Midland, Texas.

/s/ *Quinn Lawlor*

Quinn Lawlor