UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| Debtors. | ) (Jointly Administered) |

**STIPULATION AND AGREED ORDER
REGARDING FRAMEWORK FOR THE DISTRIBUTION OF
THE DEBTORS' REPORTING INFORMATION TO THE COMMITTEE**

This stipulation and agreed order (the "**Stipulation and Order**") is entered into by and among Celsius Network LLC and its affiliated debtors and debtors-in-possession (the "**Debtors**") and the Official Committee of Unsecured Creditors (the "**Committee**" and, together with the Debtors, the "**Parties**"), each of which agrees and stipulates to the following:

**WHEREAS**, on July 13, 2022, the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code and certain first day motions requesting various operational relief, including to continue honoring certain employee compensation and benefits programs,[2] pay critical vendors' prepetition claims,[3] and continue operating their cash management system.[4] The Debtors are operating their businesses and managing their

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] *See Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 19] (the "**Wages Motion**").

[3] *See Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* [Docket No. 20] (the "**Critical Vendors Motion**").

[4] *See Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 21] (the "**Cash Management Motion**").

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**WHEREAS**, on July 25, 2022, the Debtors filed a motion requesting permission to sell mined Bitcoin in the ordinary course of business.[5]

**WHEREAS**, on July 27, 2022, the United States Trustee appointed the Committee, comprised of seven account holders of the Debtors. [Docket No. 241].

**WHEREAS**, on August 9, 2022, the Committee objected to the Wages Motion,[6] Critical Vendors Motion,[7] and Cash Management Motion,[8] among other relief; and, on August 11, 2022, the Committee objected to the Sale of Mined Bitcoin Motion.[9]

**WHEREAS**, to resolve the Committee's objections, the Debtors agreed, among other things, to provide regular reporting to the Committee and its advisors regarding the Debtors' ongoing operation of their businesses, including (i) monthly delivery of the Debtors' cash budgets (in 13-week and monthly format) and matrices of postpetition intercompany transfers and balances, (ii) weekly delivery of reports on the Debtors' actual cash flows, variances, and cash balances, (iii) weekly delivery of reports on the cryptocurrency held by the Debtors, including coin balances, market values, and cryptocurrency locations, (iv) weekly delivery of reports on the Debtors' Bitcoin mining operations, and (v) weekly delivery of reports on the Debtors' payments on account of prepetition claims of critical vendors and employees.[10]

---

[5] *See Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 187] (the "**Sale of Mined Bitcoin Motion**").

[6] *See The Official Committee of Unsecured Creditors' Limited Omnibus Objection to Certain of Debtors' First and Second Day Motions* [Docket No. 402].

[7] *See id.*

[8] *See The Official Committee of Unsecured Creditors' Limited Objection to the Debtors' Cash Management Motion* [Docket No. 401].

[9] *See The Official Committee of Unsecured Creditors' Objection and Reservation of Rights to Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 428].

[10] The summary of the relief set forth in this Stipulation and Order is qualified in its entirety by the Agreed Reporting Framework set forth in **Exhibit A**. In the event that there is any conflict between this Stipulation and Agreed Order and the Agreed Reporting Framework, the Agreed Reporting Framework will control in

**WHEREAS**, the Parties memorialized the terms and scope of the Debtors' reporting obligations in the *Agreed Framework for the Distribution of Reporting Information*, attached hereto as **Exhibit A** (the "**Agreed Reporting Framework**").

**WHEREAS**, the Parties now jointly submit this Stipulation and Order and respectfully request the Court's approval of the Agreed Reporting Framework.

**IT IS THEREFORE STIPULATED AND AGREED, AND UPON BANKRUPTCY COURT APPROVAL HEREOF, IT IS HEREBY ORDERED THAT**:

The terms of the Agreed Reporting Framework are approved in their entirety and incorporated herein. The Debtors shall provide regular reporting to the Committee and its advisors on the terms set forth in the Agreed Reporting Framework, and such reporting obligations shall remain binding upon the Debtors until the earlier of (i) the effective date of the Debtors' chapter 11 plan, (ii) the date on which this Court enters an order terminating the Debtors' obligations under the Agreed Reporting Framework, and (iii) the date on which the Committee and the Debtors consent to terminate the Agreed Reporting Framework by mutual agreement in writing (email shall suffice).

The Parties are authorized to amend the terms of the Agreed Reporting Framework by mutual agreement in writing (email shall suffice), and any such mutual written agreement of the Parties shall be effective without further order of the Court.

The Committee and/or the Debtors are authorized to seek emergency relief from the Court on three (3) calendar days' notice to the other Party if counsel to the Committee and/or counsel to the Debtors reasonably believes that either Party has not complied or is not complying with any provision of the Agreed Reporting Framework and is unable, after consultation, to resolve or correct such compliance issues in a reasonably timely manner.

The entry of this Stipulation and Order is without prejudice to the Committee's right to

---

all respects.

seek other information or diligence related to the Debtors and without prejudice to the Debtors' right to object to such requests for other information or diligence in a manner consistent with any non-disclosure and confidentiality agreements in effect between the Committee and the Debtors or in connection with discovery for any adversary proceeding, contested matter, Bankruptcy Rule 2004 investigation, or other matter.

This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Order.

[*Remainder of page intentionally left blank*]

**SO STIPULATED:**

Dated: August 31, 2022

<table>
<tr><td>

**THE DEBTORS**
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
/s/ *Joshua A. Sussberg*
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: jsussberg@kirkland.com

– and –

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
      ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

</td><td>

**THE COMMITTEE**
White & Case LLP
/s/ *Gregory F. Pesce*
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
      sam.hershey@whitecase.com
      kwofford@whitecase.com

– and –

Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
      gregory.pesce@whitecase.com

– and –

Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

</td></tr>
</table>

**IT IS SO ORDERED.**

Dated: October 5, 2022
      New York, New York

                              /s/ **Martin Glenn**
                              MARTIN GLENN
                              Chief United States Bankruptcy Judge

# Exhibit A

**Agreed Reporting Framework**

**CEL Agreed Framework for Distribution of Reporting Information**

1. **Third Interim Cash Management Order**[1]
   - "ordinary course Intercompany Transactions in cash between any of the Debtors and Celsius Mining LLC (the "Mining Debtor") or for the benefit of the Mining Debtor shall not be permitted, unless as otherwise provided in an order from this Court (which shall include the *Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 187] (the "Mined Bitcoin Order")), without the written consent of the Committee (email shall suffice), with notice to the U.S. Trustee; *provided*, *further*, that all Intercompany Transactions between any Debtor and any non-Debtor affiliate shall be only in cash, and not in cryptocurrency, crypto tokens, or other cryptocurrency assets (together, "Cryptocurrency"), except as provided by paragraph 6 [of the Third Interim Cash Management Order], and all Intercompany Transactions in Cryptocurrency between Debtors are subject to the limitations set forth in paragraph 5 and paragraph 6; *provided, further*, that all Intercompany Transactions, whether between Debtors or between any Debtor and any non-Debtor affiliate shall (A) constitute an allowed claim against the applicable Debtor or a loan to the applicable non-Debtor affiliate, and (B) with respect to Intercompany Transactions from a Debtor to a non-Debtor affiliate in cash, not exceed the amounts and the stated purpose set forth in the budget in **Exhibit 3** (the "Budget") unless the Debtors obtain consent from the Committee, with notice to the U.S. Trustee, or pursuant to a further order from this Court after notice and a hearing. For the avoidance of doubt, Intercompany Transactions between any Debtor and any non-Debtor affiliate or for the benefit of any non-Debtor affiliate shall constitute an allowed claim against the applicable Debtor or a loan to the applicable non-Debtor affiliate, and shall not exceed $1,200,000 (U.S. dollars) in the aggregate during the period between entry of this Third Interim Order and October 6, 2022." *See* Third Interim Cash Management Order ¶ 3.
     - "The Debtors, on an interim basis, are authorized, in consultation with the advisors to the Committee (email shall suffice) and with notice to the U.S. Trustee, to continue to maintain and manage their Cryptocurrency in the ordinary course of business solely to ensure that Cryptocurrency is safely stored on custody platforms consistent with historical practices and subject to the terms of this Third Interim Order; *provided*, that the Debtors shall not be permitted to convert Cryptocurrency from one type of Cryptocurrency to another type of Cryptocurrency unless the Debtors obtain consent from the Committee, with notice to the U.S. Trustee, or pursuant to a further order from this Court after notice and a hearing." Third Interim Cash Management Order ¶ 5.

---

[1] The "Third Interim Cash Management Order" refers to the *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 699].

- o "Notwithstanding anything to the contrary in this Third Interim Order, the Debtors are not authorized to (a) transfer any Cryptocurrency to any affiliates, except in accordance with paragraph 5 of this Third Interim Order or (b) liquidate or convert any Cryptocurrency into cash, absent further order of the Court, except as expressly provided with respect to Mined Bitcoin under the Mined Bitcoin Order (as defined therein); *provided, however*, that an account holder may transfer Cryptocurrency to the Debtors in repayment of a Cryptocurrency denominated loan made to such account holder by a Debtor prior to the Petition Date (but in no event shall this clause permit (x) any transfer of Cryptocurrency between or among Debtors or between any Debtor and any non-Debtor affiliate (other than in accordance with paragraph 5 of this Third Interim Order), (y) any transfer of Cryptocurrency from any Debtor or non-Debtor subsidiary to any account holder or loan counterparty, or (z) repayment of any prepetition loan between or among any Debtors, or between any Debtor and any non-Debtor affiliate, in the case of (x), without Committee consent (email shall suffice), as provided in the following clause, and, for the avoidance of doubt, nothing herein modifies or amends paragraph 2 of the Mined Bitcoin Order or any other provision therein); *provided*, *further* that the Debtors shall not transfer any Cryptocurrency, nor repay any prepetition loan, except as provided herein and only with the prior written consent of the Committee (except with respect to (y) and (z) in the preceding clause, which may only be permitted by further order of the Court), as such consent may be given by the Committee in an agreed writing between the Committee and the Debtors, with notice to the U.S. Trustee, or by further order of the Court (and any transfer that has been agreed in writing by the Committee in accordance with the foregoing, or approved by further order of the Court, shall be deemed authorized for the purposes of this Third Interim Order). Notwithstanding the corporate or entity ownership of, or account relationship with, any wallet or account in which an account holder's Cryptocurrency loan payments occur, all parties reserve their rights in all respects with respect to such repaid Cryptocurrency, including with respect to which entity is the actual owner of such Cryptocurrency." Third Interim Cash Management Order ¶ 6.

2. **Budget/Cash Flow/Cash Balance Reporting Requirements**
    - The Debtors shall provide to the Committee and the U.S. Trustee an updated (i) 13-week Budget and (ii) monthly Budget through December 2022 to be delivered every four weeks commencing on September 1, 2022.
        - o The Budget shall be consistent with reporting disclosures set forth in the August 6, 2022, cash Budget, except the proposed report shall include a breakdown of projected disbursements to specified non-Debtor entities over the projection period.
    - Effective upon entry of the Third Interim Cash Management Order, weekly delivery of actual cash flows, variances and cash balances each Thursday for the previous week and a related weekly update call with M3 and A&M each Friday. The weekly report will include:

2

- o Summary cash flow schedule showing actuals and variances to budget (for each week and on a cumulative basis)
- o Separate schedules for the consolidated Debtors and Mining on a standalone basis
- o Commentary regarding variances, and a description of whether such variances relate to timing or permanent differences
- o Summary of actual cash balances by account for all Debtors
- o Summary of actual cash balances for each non-Debtor entity, including GK8
- o Cash intercompany transfers
    - "A monthly summary of such Intercompany Transactions between the Debtors shall be provided to (a) the U.S. Trustee and (b) the advisors to the Committee on the 21st day of the following month." *See* Third Interim Cash Management Order ¶ 17.

3. **Mining-Specific Structural Protections and Reporting Requirements**
   - To the extent permitted by Court order, including the Mined Bitcoin Order,[2] the Mining Debtor shall monetize mined BTC in arms-length transactions with unaffiliated third parties. *See* Mined Bitcoin Order ¶ 2.
   - Upon entry of the Third Interim Cash Management Order, weekly delivery to advisors to the Committee of actual vs. budgeted capital expenditures (including Site Build Out, Rigs (Shipping & Customs) and Sales & Use taxes), with related commentary.
   - Upon entry of the Third Interim Cash Management Order, weekly variances will be in accordance with items described in cash flow variance section above, at the line-item detail in the forecast.
   - Reporting Requirements for Mining Operational Results
     - o Effective upon entry of the Third Interim Cash Management Order, weekly delivery to advisors to the Committee of actual cash flows, variances and cash balances each Thursday for the previous week, and related weekly update call with M3 and A&M each Friday.
     - o Effective upon entry of the Third Interim Cash Management Order, weekly delivery to advisors to the Committee of the actual KPIs and variances to forecast each Thursday for the previous week and related weekly update call with M3 and A&M each Friday:
       - Amount of mined BTC
       - Total proceeds and realized prices for BTC sold
       - Total hashrate
       - Rigs deployed by site, rigs in storage, rigs in transit, rigs yet to be shipped
         - Uptime by hosting contract
       - On the 21st of each month, for the prior month:
         - Hosting / electricity costs by site

---

[2] The "Mined Bitcoin Order" means the *Order (I) Permitting Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 514].

- Uptime reports by site
- Reporting Requirements for Texas Proprietary Site Build Out
    - Effective upon entry of the Third Interim Cash Management Order, weekly variances will be in accordance with items described in cash flow variance section above, at the line-item detail in the forecast.
    - Effective upon entry of the Third Interim Cash Management Order, weekly dashboard report, with weekly calls with M3 and A&M.

4. **Cryptocurrency Asset Reporting**
    - Upon entry of the Third Interim Cash Management Order, weekly update of the "Coin Balance 7-13-22" file showing coin counts and value with prices for each asset category (such as Fireblocks, Staking Assets, etc.).
    - Effective upon entry of the Third Interim Cash Management Order, weekly update of crypto asset locations in the Debtors' corporate entity structure on a Debtor-by-Debtor basis.
    - Effective upon entry of the Third Interim Cash Management Order, detailed listing of Fireblocks assets by each workspace/account to be delivered on a bi-weekly basis
    - Effective upon entry of the Third Interim Cash Management Order, institutional loan and borrowing Loan status reports (in the form agreed between M3 and A&M) to be provided weekly.

5. **Critical Vendors Order[3]**
    - The Debtors must obtain Committee consent before making any critical vendor payments in excess of $50,000. *See* Critical Vendors Order ¶ 5.
    - Effective upon entry of the Third Interim Cash Management Order, a weekly tracker (to be provided each Thursday) of:
        - Vendor payments to date on account of prepetition obligations to be consistent with existing A&M tracker, except to be adjusted to include:
            - Designation of payments for mining versus non-mining Debtors;
            - Explain why each payment was critical; and
            - Whether the counterparty had a contract with the Debtors. *See* Critical Vendors Order ¶ 4.
    - M3/A&M to hold an update call on these topics each Friday.

---

[3] The "Critical Vendors Order" means the *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* [Docket No. 520].

4

6. **Employees & Wages Order**[4]
   - Effective upon entry of the Third Interim Cash Management Order, the Debtors shall provide a weekly tracker of prepetition payments on Thursday related to the amounts as approved in the Employees & Wages Order including:
     - Date paid
     - Amount paid
     - Payer party

---

[4] The "Employees & Wages Order" means the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 518].