**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

Judson Brown, P.C.
To Call Writer Directly:
+1 202 389 5082
judson.brown@kirkland.com

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

+1 202 389 5000

www.kirkland.com

Facsimile:
+1 202 389 5200

October 10, 2022

**By eFile**

Hon. Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:   *In re Celsius Network LLC*, No. 22-10964 (MG) - Debtors' Motion to Enforce the Stay and for Contempt Sanctions

Dear Chief Judge Glenn:

We write on behalf of the Debtors in response to the letter filed by Core Scientific, Inc. ("Core Scientific") on October 9, 2022 [Dkt. 997]. Core Scientific asks the Court to delay the hearing on the Debtors' *Motion to Enforce the Automatic Stay and for Civil Contempt* (the "Contempt Motion") [Dkt. 917], which is currently set for October 20, and to set a schedule for Core Scientific's yet-to-be-filed "Affirmative Motion." Core Scientific's letter is both premature —because the parties have not even discussed these schedules (let alone the parameters of its "Affirmative Motion")—and omits material facts about the events that have occurred since the Debtors' filed their Contempt Motion. Although the Debtors object to nearly all of the factual characterizations in Core Scientific's letter, the Debtors address the most critical points below.

*First*, Core Scientific failed to raise its proposed schedule with the Debtors before burdening the Court, making any status conference unwarranted and premature at this juncture. The first time Core Scientific raised a potential extension (of undefined length) of the October 20 hearing was during the parties' meet and confer call the afternoon of October 7. Core Scientific did not offer a specific proposal or even suggest an alternative hearing date, instead merely questioning whether the Debtors intended to proceed with an evidentiary hearing on October 20 and suggesting the potential need for a status conference. While Celsius stated that it was tentatively inclined to keep the October 20 date, it agreed to take the issue back as part of the ordinary meet and confer process. Core Scientific then waited just two days—over the weekend— to file its letter, never once reaching out to Celsius to follow up on the scheduling issue, much less proposing an alternative schedule for Celsius to consider. It therefore is emphatically untrue that

## KIRKLAND & ELLIS LLP

Hon. Martin Glenn
October 10, 2022
Page 2

Core Scientific needed to "reach out to the Court;" Core Scientific should have reached out to Celsius in the first instance.

Had it done so and made a proposal to Celsius, Core Scientific would have learned that Celsius is amenable to having an evidentiary hearing on its Contempt Motion during the week of October 31, 2022, or at the Court's convenience. As to interim briefing deadlines that Core Scientific proposes and a schedule regarding Core Scientific's purported "Affirmative Motion," Celsius would ask the Court to allow the parties time to meet and confer on those issues to see if they can reach agreement, in lieu of a status conference.[1]

*Second*, Core Scientific's statement that it "has deployed all crypto mining machines the Debtors have provided to it" is grossly incomplete. For one, of the 10,885 Celsius rigs that Core Scientific has deployed, it only deployed 4,000 of them the day *after* Celsius filed its Contempt Motion. To Celsius, it appears Core Scientific had these 4,000 rigs racked and ready to deploy, but chose not to do so until Celsius took legal action. Further, Celsius is contractually entitled to have Core Scientific deploy many more than the 10,885 rigs. Core Scientific does not have more of Celsius' rigs at this point because Core Scientific has for months failed to deploy the Celsius rigs in its possession—and repeatedly told Celsius that those delays would continue. It made no sense for Celsius to continue sending rigs to Core Scientific just for those to sit idle while Core Scientific disregarded its contractual obligations. In fact, Core Scientific agreed with that approach, prohibiting Celsius from sending any more rigs under Order #10 because it was so far behind on the deployment schedule. Core Scientific cannot now benefit from its belated deployment of the remaining 4,000 Celsius rigs in its possession under threat of the Contempt Motion.

*Third*, Celsius categorically denies that it has served "overbroad discovery." To the contrary, Celsius has been working diligently with Core Scientific to prioritize and narrow, where appropriate, requests of the most critical importance to its motion. Although Core Scientific notes "the parties have yet to exchange any documents," that stems only from Core Scientific's own delay in collecting and producing materials, as Celsius served Core Scientific with its requests for production on September 28. By contrast, Core Scientific served its first set of requests for production the night of October 6, leaving Celsius just one business day to review the requests,

---

[1] The first time Core Scientific raised the possibility that it would seek affirmative relief (and without specifying its intentions in any detail) was also at the parties' October 7 meet and confer. Core Scientific did not detail the nature of its claims; the relief it would seek; or whether it conclusively had determined whether to file such claims at all.

# KIRKLAND & ELLIS LLP

Hon. Martin Glenn
October 10, 2022
Page 3

collect documents, and produce them before Core Scientific filed its letter with the Court. The parties thus are not similarly situated with respect to the timing or status of their discovery efforts.

*Fourth*, while Core Scientific suggests it engaged the Weil "firm less than a week ago to represent it in the Debtors' chapter 11 cases," Core Scientific has been counseled by litigation and bankruptcy practitioners from another sophisticated law firm—Cooley LLP—since at least September 14. In fact, Celsius' counsel both corresponded with and spoke to Core Scientific's counsel at Cooley on the exact issues raised in the Contempt Motion. Nor does the reversal of *In re Windstream Holdings, Inc.*, 627 B.R. 32 (Bankr. S.D.N.Y. 2021) have any bearing at all on when Celsius' Contempt Motion should be heard. The district court's decision in *Windstream* addressed whether an advertising campaign constituted an effort to "obtain" or "control" debtor property. *See Windstream Holdings, Inc. v. Charter Commc'ns Inc. (In re Windstream Holdings, Inc.)*, Case No. 21-cv-4552-CS (S.D.N.Y. Oct. 6, 2022) [Dkt. 28]. Nothing in that case calls into question the relevant legal framework for assessing contempt, which is the framework on which Celsius' motion is based.

For the reasons set forth above, the Debtors respectfully submit that Core Scientific's request for a status conference is moot pending the parties' efforts to resolve interim scheduling dates among themselves. We look forward to answering any questions the Court may have.

Sincerely,

*/s/ Judson Brown, P.C.*

Judson Brown, P.C.

cc:   David J. Lender, Counsel to Core Scientific (Weil, Gotshal & Manges LLP)
      Mark Lambert, Counsel to Core Scientific (Cooley LLP)
      Gregory F. Pesce, Counsel to the Official Unsecured Creditors' Committee