# Exhibit A

# Work Plan

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Proposed Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CELSIUS NETWORK LLC, *et al.*[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

## WORK PLAN OF SHOBA PILLAY, EXAMINER

Shoba Pillay, the court-appointed Examiner, by her proposed undersigned counsel, hereby submits her preliminary work plan in accordance with the requirements set forth in the Court's *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. 820] (the "**Examiner Order**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Background**

1. On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their affairs as debtors and debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

2. On July 27, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**"), comprising of seven of the Debtors' account holders. [Dkt. 241.]

3. On August 18, 2022, the United States Trustee filed a motion seeking appointment of an examiner. [Dkt. 546.]

4. On September 14, 2022, the Court entered the Examiner Order, directing the appointment of an examiner under section 1104(c) to conduct an investigation of:

   a. the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled;

   b. why there was a change in account offerings beginning in April 2022 from the Earn Program to the Custody Service for some customers while others were placed in a 'Withhold Account';

   c. the Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto"; and

   d. the current status of the utility obligations of the Debtors' mining business.

(Examiner Order ¶ 3.)

5. The Examiner Order also directed the examiner to "otherwise perform the duties of an examiner set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code," subject to the terms of the Examiner Order. (*Id.*)

6.  The Examiner Order further provided that it was "without prejudice to (i) the right of any party to seek relief from the Court to further expand the Scope of the Investigation, and (ii) the right of the Examiner to seek such other relief from the Court as he or she may deem appropriate in furtherance of the discharge of his or her duties and the investigation." (Examiner Order ¶ 13.)

7.  On September 29, 2022, the United States Trustee appointed Shoba Pillay as Examiner and filed a notice of the appointment [Dkt. 920] and an application to approve the appointment of the Examiner. [Dkt. 921.] On that same date, the Court entered an order approving the appointment of the Examiner. [Dkt. 923.]

8.  Pursuant to the Examiner Order, the Examiner's report will be due on December 10, 2022, absent further order of the Court on notice to all parties. (Examiner Order ¶ 8.)

9.  Following the entry of the Examiner Order, on October 7, 2022, the Court held a hearing on a proposed *Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups With Respect to the Custody and Withhold Issues* (the "**Joint Stipulation**"). As a result of that hearing, the proposed Joint Stipulation, filed with the Court at Dkt. 996, directs the Examiner to file an interim report on matters within the Examiner's scope that relate to "Phase I issues" as defined in the Joint Stipulation. The interim report is due fourteen days after the filing of opening briefs on the Phase I issues.

### The Examiner's Activities To Date

10.  The Examiner began her investigation immediately. Upon her appointment, the Examiner and her proposed counsel participated in a Zoom conference meeting with the Debtors' counsel and financial advisors on September 30, 2022, and separately with the Committee's counsel and financial advisors, on September 30, 2022, to gain an understanding of their

3

perspectives and views on the issues raised in the Examiner Order, to obtain background information relevant to the investigation, to discuss the nature and scope of documents anticipated to be requested by the Examiner, and to identify challenges that might impede the Examiner's ability to deliver her report within the time frame set by the Court. During these initial meetings, the Examiner requested access to certain documents related to the examination topics that had already been assembled, including the data underlying the Debtors' Schedule F and access to the Debtors' data room. As discussed below, while the initial access to data and documents has not been as prompt as the Examiner would have anticipated, the Examiner expects that the pace will accelerate now that the Debtors' schedules and statement of financial affairs have been filed.

11.     The parties also explored (and are continuing to explore) ways to achieve the maximum degree of cooperation among the parties to streamline the Examiner's work, and to provide for sharing with the Examiner of materials assembled by each party to avoid duplication and to make the Examiner's work more efficient, while at the same time maintaining the independence of the Examiner's investigation.

12.     The Examiner has had follow-up meetings with the Debtors' and Committee's professionals seeking more detailed information about data and information that will be relevant to the Examiner's investigation and has started to receive some preliminary background documents from the Debtors and Committee. Additional meetings are anticipated to be scheduled so as to permit the Examiner to identify and promptly gain access to all of the information that she will need to complete her report.

13.     The Examiner also has met with other parties in interest to gain an understanding of their perspectives on the issues raised in the Examiner Order, to obtain background information

relevant to the investigation, and to hear their views about the examination and its scope. Those parties have included the U.S. Trustee and his counsel, counsel to the Ad Hoc Group of Custodial Account Holders, counsel to Ad Hoc Group of Withhold Account Holders, counsel to the preferred equity holders, and certain individual account holders. The Examiner has taken all of their views into account in crafting her work plan.

14.     The Examiner has entered into an Addendum to Confidentiality Agreement and Stipulated Protective Order [Dkt. 971] with the Debtors and the Committee so that she will have access to documents and other materials germane to the investigation. The Examiner contemplates that she may enter into similar confidentiality arrangements with certain other parties to the extent necessary to obtain access to relevant documents and information.

15.     To facilitate the Examiner's ability to timely and efficiently complete her investigation and to fulfill her fiduciary and statutory duties, on October 3, 2022, the Examiner filed a motion (the "**2004 Motion**") with the Court. [Dkt. 959.] The 2004 Motion is similar to motions filed and granted in other significant bankruptcy cases in which an examiner was appointed. The Examiner has advised the parties in interest that, if the Court approves that motion, the Examiner intends as a matter of course to give notice, by a filing on the docket of these cases, of any Rule 2004 subpoenas she issues; however, the Examiner reserves the right to file a notice of subpoena under seal in the event that she determines that disclosure of a particular subpoena might compromise the investigation.

16.     Notwithstanding the filing of the Rule 2004 Motion, based on the scope of the examination, the sources of relevant information and the pledges of cooperation received to date,

the Examiner anticipates that she will need to resort to Rule 2004 subpoena powers sparingly, if at all.

17. The Examiner contemplates maintaining a depository to collect documents and other materials, access to which will be limited to the Examiner during the ongoing investigation. The Examiner presumes that there will come a time when that depository may be made available to interested parties, subject to redactions for applicable privileges and confidences.

### The Examiner's Proposed Work Plan Going Forward

18. Based upon the preliminary discussions, interviews and meetings conducted to date and the information currently available to the Examiner, the Examiner's preliminary work plan for the investigation includes, but is not limited to, the following:

<u>Information Gathering and Verification</u>

19. The Examiner's first priority is to gain an understanding of the volume and extent of documents and data that will need to be reviewed and analyzed in order to complete the investigation. As of the filing of this Work Plan, the Examiner has not received access to the documents necessary to undertake her work. The Examiner recognizes that the Debtors recently filed voluminous schedules and statements of financial affairs, and that numerous competing demands for information and data are being made on them. But if the Examiner is going to meet the Court's deadlines, the pace of access to documents will need to be accelerated. While the Examiner intends to seek information from the Debtors in the least disruptive fashion possible, the Examiner does need priority access to data and information in light of the deadlines for the interim and final reports, and notes these delays with the expectation that the pace of access to information will be accelerated. The Examiner intends to assist in whatever way she can to expedite document and data collection and processing efforts since the Examiner cannot render her report without

meaningful access to material documents. The Examiner has shared these concerns with Debtors' counsel, and is optimistic, based on representations from Debtors' counsel, that the Debtors will promptly address the document flow issues and will provide the Examiner with the access and document requests that are pending, and will promptly respond to the Examiner's requests going forward.

20. The Examiner also anticipates requesting, gathering, reviewing, and analyzing data and information relevant to the subject matter of the investigation from various other parties, likely including (but not limited to) current and/or former personnel of the Debtors, and certain of their professionals; parties who provided digital asset custodial services to the Debtors; customers; and other parties with relevant information.

### Interviews and Depositions of Witnesses

21. At this juncture, the Examiner anticipates that interviews with 15-25 witnesses will be conducted. The Examiner will generally seek to conduct voluntary interviews of witnesses with respect to the issues that are the subject to the investigation. However, as noted above, to facilitate the Examiner's ability to timely and efficiently complete an investigation and fulfill her fiduciary and statutory duties, the Examiner has filed the 2004 Motion to obtain authority to quickly issue subpoenas in those instances where witnesses decline to voluntarily cooperate with the Examiner's requests or condition their cooperation on the issuance of a subpoena.

22. In addition, the Examiner expects that she or her professionals will interface with certain of the Debtors' officers or employees in non-interview settings in connection with the provision of information and data needed by the Examiner.

23. The Examiner intends to coordinate with the Debtors, the Committee, and other interested parties in those cases where it makes sense to do so and will not compromise the

7

independence and integrity of the Examiner's investigation, such as where the Examiner determines to interview a witness who is subject to a Rule 2004 subpoena obtained by another party (or vice versa). The Examiner recognizes the need for and will seek coordination of efforts to avoid duplication, to minimize the cost to the Debtors' estates, and to comply with the provisions of the Examiner Order.

<u>Maintaining Open Lines of Communication</u>

24. During the Investigation, the Examiner will continue to maintain open lines of communication with the U.S. Trustee, the Debtors, the Committee, the *ad hoc* committees, and other interested parties.

25. In addition, the Examiner has received, and expects to continue to receive, a number of communications from account holders. Although pursuant to paragraph nine of the Examiner Order the Examiner and her professionals are precluded from publicly disclosing any results of the investigation until the Examiner's report is filed with the Court, the Examiner welcomes any unique information that an account holder believes might be relevant to her investigation.

<u>Monitoring of Bankruptcy Cases and Government Investigations</u>

26. The Examiner's counsel will monitor and review pertinent filings with the Court regarding or involving any issues related to the investigation. This will be particularly the case with respect to pending adversary proceedings and contested matters, the subject matters of which are closely related to the aspects to the examination related to the Debtors' cryptocurrency holdings and changes in account offerings.

27. The Examiner's professionals will also monitor any investigation of the Debtors undertaken by any governmental entities that relates to matters within the scope of the examination.

Retention of Professionals

28.  In accordance with the provisions of the Examiner Order, the Examiner has determined that it is necessary and appropriate to employ and retain, subject to approval of this Court, certain professionals to fully discharge her fiduciary and statutory duties. *See* Examiner Order at ¶ 10.

29.  The Examiner has already moved for authorization to retain as counsel the firm of Jenner & Block for the reasons set out in that motion. [Dkt. 958].

30.  The Examiner has determined that although she will be able to leverage some of the work being performed by the Debtors' and Committee's financial advisors and forensic specialists, the Examiner cannot adequately conduct her investigation without an independent forensic and financial advisor. The Examiner solicited a number of requests for proposal, and following an interview process, selected Huron Consulting Group as her forensic accounting and financial advisors. The Examiner intends to expeditiously submit an application for authority to retain Huron.

Scope of Examination

31.  As described above, the Examiner Order contemplates that the Examiner may seek to expand the scope of her examination. The Examiner Order further directed that "the Examiner and the Examiner's professionals shall consult with the Committee, the Debtors, and the United States Trustee, and review the *pro se* filings related to the [Examiner] Motion, to consider whether any revisions to the Scope are appropriate. Any proposed revisions to the Scope should be included in an application the Court to amend the [Examiner] Order."  (Examiner Order ¶ 16.)

32.  A number of parties-in-interest have suggested that an expansion to the scope of the Examiner Order is warranted and have identified several issues that they believe warrant an

9

independent investigation. The Examiner does not yet have enough information to make any decision concerning whether an expansion to the scope of the Examiner Order is warranted and feasible. In the event the Examiner determines that the scope of the Examiner Order should be expanded, as provided for in paragraph 4 of the Examiner Order, the Examiner will first consult with the Debtors, the Committee, and the United States Trustee prior to seeking an expansion of the scope of the investigation.

33.     In addition, it is possible that certain aspects of the scope of the investigation may need to be revised to take into account developments since the Examiner Motion was filed, or otherwise refined. The Examiner intends to consult with the Debtors, the Committee, and the United States Trustee concerning those potential revisions or refinements as they are identified.

34.     The Examiner does not yet have access to the bulk of the key data and information that will permit her to assess the scope of the efforts she will need to undertake, and any attempt to budget at this time is at best an educated guess. For example, while the Examiner recently entered into a stipulated protective order that will permit her to receive or access documents, data and work product from the Debtors and Committee, the Examiner has not yet obtained the key documents, data and financial records she will need to conduct her examination, and she does not yet know how complete or organized those materials will be, and cannot determine what additional efforts may need to be undertaken. The Examiner understands that the Debtors are working to populate an Examiner dataroom with this information, but because she does not yet have access to the bulk of the key data she requested, the Examiner does not yet know whether and to what extent she will obtain cooperation on document production and access to persons she presently contemplates to be material witnesses. All of these issues, and others, could significantly reduce

or increase the Examiner's current estimates, which are based upon the Examiner's assumptions about the materials she is likely to receive from the parties and her expectations of cooperation and future events. The Examiner will promptly advise the parties as the investigation unfolds if reality significantly varies from these preliminary estimates, but the Examiner currently estimates that the total fees for the Examiner and her counsel, Jenner & Block, will aggregate approximately $3 to $5 million. As described above, the Examiner also has determined that she will require the services of a financial advisor, but at this stage she cannot estimate those costs with any level of precision.

35.    In accordance with the terms of the Examiner Order, the fees and expenses of the professional persons retained by the Examiner are subject to the filing of applications therefor and allowance by the Bankruptcy Court after notice and a hearing.

## Reservation of Rights

36.    The Examiner's work plan is based upon currently available information and presumes the full, complete, and timely cooperation of the Debtors, the Committee, and other parties in interest in accordance with the Examiner Order. (*See* Examiner Order at ¶¶ 4, 6.) Given the early stage of the investigation and the volume of the data involved, it will take significant time to assemble, review, process and analyze the documents and data. As the process unfolds, the Examiner's work plan may need to be amended to fulfill the Court's direction to deliver an interim and final report. The Examiner reserves her right to modify the work plan accordingly and will promptly notify the Court if modifications are necessary.

**Conclusion**

The Examiner respectfully submits that this Work Plan is reasonable and appropriate and should be approved by the Court.

Dated: October 11, 2022
New York, New York

Respectfully submitted,
JENNER & BLOCK LLP

By: /s/ *Catherine L. Steege*
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com
csteege@jenner.com

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
ksadeghi@jenner.com

*Proposed Counsel to the Examiner*