Hearing Date:  November 1, 2022 at 11:00 a.m. (prevailing Eastern Time)
Objection Deadline:  October 25, 2022 at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'**
**KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* (the "Motion") will be held on **November 1, 2022 at 11:00 a.m., prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl.          Electronic      appearances
(eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business
day before the hearing (i.e., on October 31, 2022)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected
participants in the Hearing and the Court's security requirements for participating in a Zoom for
Government audio and video hearing, all persons seeking to attend the Hearing at 11:00 a.m.,
prevailing Eastern Time on November 1, 2022 must connect to the Hearing beginning at
10:00 a.m., prevailing Eastern Time on November 1, 2022.  When parties sign in to Zoom for
Government and add their names, they must type in the first and last name that will be used to
identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials
will not be admitted into the Hearing.  When seeking to connect for either audio or video
participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the
order in which you seek to connect.  Court personnel will admit each person to the Hearing from
the Waiting Room after confirming the person's name (and telephone number, if a telephone is
used to connect) with their eCourtAppearance.  Because of the large number of expected
participants, you may experience a delay in the Waiting Room before you are admitted to the
Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief
requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy
Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General
Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern
District of New York; (c) be filed electronically with the Court on the docket of
*In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic

filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 528] (the "Case Management Order") by **October 25, 2022, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely Objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: October 11, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY
## OF AN ORDER (I) APPROVING THE DEBTORS' KEY
## EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order")**,** (a) approving and authorizing the Debtors' proposed key employee

retention plan (the "KERP"), (b) authorizing the Debtors to make payments to certain

non-insider employees under the KERP, and (c) granting related relief.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Preliminary Statement**

2.       Many of the key issues in the Debtors' chapter 11 cases are of first impression and, as a result, these cases have been exceedingly complex and challenging.  The Debtors are actively working to push these chapter 11 cases toward a successful resolution.  To achieve that resolution, the Debtors require a motivated and engaged workforce with institutional knowledge and understanding of the cryptocurrency industry that shares the same vision.  Historically, the Debtors' employees have been the backbone of their business, and with recent management changes, the Debtors' employees are more vital than ever to the Debtors' success.  In addition to their regular responsibilities, these key employees also have shouldered the burden of chapter 11-related tasks.  Properly incentivizing key employees to remain with the Debtors and focus their collective efforts on the Debtors' restructuring is of paramount importance.  Without an incentive to remain with the Debtors throughout the chapter 11 process, these key employees will likely seek alternative employment opportunities—indeed, since the Petition Date, *102* employees have resigned, and certain employees continue to receive offers to join competitors, in some instances, *for compensation that is significantly above their current compensation*.  Thus, the Debtors require the ability to offer competitive compensation or risk a "brain drain" in a vigorously competitive and highly technical industry.

3.       To that end, the Debtors seek approval of the KERP, which allows the Debtors to retain these key non-insider employees.[2]   The KERP, which provides for the payment of cash retention awards to sixty-two of the Debtors' non-insider employees (each, a "Participant" and collectively, the "Participants"), is consistent with retention programs in similar chapter 11 cases.

---

[2]      The Debtors provided details regarding the proposed Participants including their job title, job description, base salary, and proposed payments to counsel to the Committee (as defined herein) and the U.S. Trustee (as defined herein) before the filing of this Motion.  The Debtors will provide a list of Participant names to the Court, Committee, and U.S. Trustee upon request.

No Participant is an insider; rather, each Participant performs a vital role in cash and digital asset management, IT infrastructure and data management, digital security, accounting, legal, compliance, and other critical functions.

4.      Importantly, the KERP complies with the requirements and mandates of the Bankruptcy Code.  The Debtors consulted with outside advisors, including their independent compensation consultant Willis Towers Watson Delaware, Inc. ("WTW"), financial advisor Alvarez & Marsal North America, LLC, and external legal counsel Kirkland & Ellis LLP, to develop an incentive plan that is market-based, consistent with competitive practices, and compliant with the Bankruptcy Code (as defined herein).  The KERP was ultimately approved by the special committee of the Board of Directors of Debtor Celsius Network Limited (the "Special Committee"), which is comprised of two directors with extensive restructuring experience that have no personal stake in the KERP.  The Special Committee undertook a deliberative process, convening frequently with the Debtors' various advisors, to understand how to best incentivize the workforce in light of a likely in-court restructuring.  After considering various potential options, the Special Committee approved the KERP, which will cost an aggregate amount of approximately $2.96 million if all Participants satisfy the applicable retention objectives.

5.      The KERP complies with the applicable provisions of the Bankruptcy Code, is similar to plans recently approved in chapter 11 cases, is justified by the facts and circumstances of these chapter 11 cases, and is within the Debtors' sound and reasonable business judgment. Similarly, the Debtors have provided diligence information to, and engaged in discussions with, the advisors to the official committee of unsecured creditors ("Committee") regarding the cost and scope of the KERP.  The Debtors plan to continue to engage with the Committee and its

advisors regarding the KERP ahead of the hearing.  For these reasons and the reasons set forth below, the Court should enter an order authorizing the Debtors to implement the KERP.

## Jurisdiction and Venue

6.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105(a), 363(b), and 503(c) of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

9.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

10.     On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors commenced these

chapter 11 cases to stabilize their business and consummate a comprehensive restructuring

transaction that maximizes value for stakeholders.

11.     The Debtors are operating their business and managing their property as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11

cases have been consolidated for procedural purposes only and are jointly administered pursuant

to Bankruptcy Rule 1015(b) [Docket No. 53].  On July 27, 2022, the United States Trustee for

the  Southern  District  of  New  York  (the "U.S.  Trustee")  appointed  the  Committee

[Docket No. 241].    On September 29, 2022, the Court entered an order approving the

appointment of an examiner [Docket No. 923].

### The Key Employee Retention Program

### I.    The KERP Participants

12.     Of  the  Debtors'  approximately  275  current  employees,  the  Debtors  have

designated sixty-two key employees as Participants who perform a variety of important business

functions that are vital to the Debtors' ability to preserve and enhance stakeholder value.  Many

of  the  Participants  have  developed  valuable  institutional  knowledge  regarding  the  Debtors'

operations that would be difficult and expensive to replace, particularly on an expedited basis.

The Participants are also essential to the successful administration of the Debtors' chapter 11

cases.  The cost of the KERP on a Participant-by-Participant basis is significantly less than the

cost of replacing each Participant.  Moreover, the Participants provide important support to the

Debtors' advisors in meeting the additional demands imposed by chapter 11.

13.     The Participants may be motivated to leave the Debtors during the pendency of

these  chapter  11  cases  due  to,  among  other  things,  the  uncertainty  created  by  the  Debtors'

ongoing reorganization and marketing efforts.  Indeed, since the Petition Date 102 employees have resigned.    Additionally, certain employees have not been paid their agreed-upon compensation during these chapter 11 cases.  The Debtors previously compensated certain of their employees with their proprietary cryptocurrency ("CEL") token in addition to cash compensation.  This practice is currently suspended, and as such, eligible employees have been missing this portion of their compensation since the first quarter of 2022.  Preserving each Participant's institutional and technical knowledge is crucial to the Debtors' ability to maximize value.    The KERP will incentivize Participants to remain with the Debtors during the restructuring process, thereby preserving value for the Debtors, their estates, their customers, and other creditors.

14.    Although certain Participants have titles incorporating the word "head," "director," "vice president," or "chief," no Participant is an "insider" of the Debtors. Specifically, no Participant in the proposed KERP is an employee who:  (a) is appointed or hired directly by the Debtors' board of directors; (b) exercises managerial control over, or has responsibility for, the Debtors' operations as a whole; or (c) directs the Debtors' overall corporate policy or governance.

15.    Details about the Participants and their award amounts are set forth in **Exhibit B** attached hereto.

## II.    The KERP

16.    As noted above, the KERP will cost approximately $2.96 million in the aggregate, assuming all Participants are successfully retained by the Debtors and earn the proposed payments.  The key terms of the KERP are as follows:[3]

- ***Participants***:  Limited to sixty-two non-insider key employees who will remain with the go-forward business, or approximately twenty-three percent of the Debtors' current workforce.  Each Participant is a critical employee that performs, among other things, accounting, finance, engineering, compliance, legal, human resources, and other critical functions for the Debtors.

- ***KERP Awards and Payment Dates***:  KERP awards represent fixed cash amounts payable as follows: fifty percent of payment paid on date of execution of the retention agreement ("<u>KERP Effective Date</u>"), subject to a clawback for termination for any reason other than without Cause prior to the date that is six months following the Effective Date; twenty-five percent payable upon the earlier of:  nine months from the Effective Date or confirmation of a chapter 11 plan; and twenty-five percent payable upon the earlier of first anniversary of the KERP Effective Date or confirmation of a chapter 11 plan based on continued employment of the Participant through the applicable payment dates (except as provided below).  KERP awards are equal to thirty-five, twenty-five, or fifteen percent of the Participant's annual salary depending on whether the Participant is identified as most critical (thirty-five percent of base salary) or a Tier Two or Tier Three level of criticality, which would pay twenty-five and fifteen percent of such Participant's base salary, respectively.

- ***Termination of Employment***:  If a Participant voluntarily terminates employment or is terminated for cause prior to the end of the clawback or retention period, the Participant will be required to repay on an after-tax basis, any amounts subject to clawback and forfeit any unpaid KERP award.  If a Participant's employment is terminated due to death, disability, or by the Debtors without cause prior to the end of the clawback or retention period, the clawback will be waived and unpaid retention amounts will vest and be paid.

- ***KERP Reserve Pool.***  The Debtors will reserve funds in the amount of $200,000 (the "<u>KERP Reserve Pool</u>") to be allocated as retention-based cash awards to incentivize and/or retain non-insider employees who are not

---

[3]    Any description of the KERP contained in this Motion is provided for purposes of convenience only.  In the event of any inconsistency between the summary contained herein and the terms and provisions of the KERP, the terms of the KERP shall control unless otherwise set forth herein, *provided* that the terms relating to the total amount of the KERP and the timing of payments provided in this Motion shall control.

currently KERP Participants on an as-needed basis at the discretion of management.

- ***Reallocation.*** Following the resignation or the termination for cause of a KERP Participant (a "<u>Former KERP Participant</u>") during any Retention Period, the Debtors shall have the right to replace any Former KERP Participant with any non-insider employee of the Debtors; *provided* that, prior to replacing any Former KERP Participant, the Debtors will provide (a) the U.S. Trustee; and (b) White & Case LLP as counsel to the Committee; (collectively, the "<u>Notice Parties</u>"), with three-days' notice of the non-insider employee(s) proposed to be added to the KERP (the "<u>New KERP Participant</u>"), including the New KERP Participant's proposed title and the estimated aggregate amount of the cash retention award the New KERP Participant(s) will be eligible to receive in respect of the remaining Retention Periods. The Notice Parties will have the opportunity to object to New KERP Participants, which objection may be made (and resolved) informally, or, if not informally resolved, may be filed on the docket and resolved by the Court on an emergency basis.

## III.    Reasonableness of the KERP

17.    As set forth in the *Declaration of Josephine Gartrell in Support of Debtors'*
*Motion for Entry of An Order (I) Approving the Debtors' Key Employee Retention Plan and*
*(II) Granting Related Relief* (the "<u>Gartrell Declaration</u>") and *Declaration of Christopher*
*Ferraro, Acting Chief Executive Officer, Chief Restructuring Officer, and Chief Financial*
*Officer of the Debtors, in Support of the Debtors' Motion for Entry of An Order (I) Approving*
*the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* (the "<u>Ferraro</u>
<u>Declaration</u>"), each filed contemporaneously herewith, the Debtors, the Special Committee, and
each of their respective advisors reviewed the KERP to determine whether the design, structure,
and cost of the KERP is reasonable and consistent with market practice. The Debtors designed
the KERP with the goal of maximizing the value of their estates for the benefit of all
stakeholders and ensuring that the Debtors will be able to operate their business in the ordinary
course upon emergence from chapter 11.

18.     The KERP is reasonable compared with postpetition retention plans implemented in other chapter 11 cases.  In particular, and as set forth in more detail in the Gartrell Declaration, personnel from WTW analyzed comparable non-insider retention plans approved in recent chapter 11 cases.  WTW benchmarked comparable retention plans from select chapter 11 cases of twenty-six different companies that filed for chapter 11 from 2017 through 2021 with prepetition annual revenues ranging between $375 million and $1.5 billion.  Based on this benchmarking analysis, the total cost of the KERP is reasonable relative to comparable companies.

19.     The award opportunities in the KERP reflect a reasonable, market-based approach and are justified under the circumstances of these chapter 11 cases.  Furthermore, the KERP's total cost of $2.96 million is reasonable in absolute terms when compared to the aggregate costs of key employee plans approved in other chapter 11 cases.

**Basis for Relief**

I.     **The KERP Is a Sound Exercise of the Debtors' Business Judgment.**

20.     The KERP is a sound exercise of the Debtors' business judgment.  Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, a debtor must show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment.  *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a 363(b) application must find a good business reason to grant such application); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743

9

(Bankr. S.D.N.Y. 2003) (holding that entry into a sale agreement including certain mutual release provisions was an exercise of reasonable business judgment); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a Section 363(b) motion is "a good business reason"); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011) ("In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment.").

21.     Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (finding that a "presumption of reasonableness attaches to a debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

22.     Implementing the KERP is a sound exercise of the Debtors' business judgment and in the best interests of their estates and all stakeholders in these chapter 11 cases. The Participants—along with their skills, knowledge, and hard work—are critical to the Debtors' ability to maximize stakeholder value. The Participants are familiar with the Debtors' business and have the experience and knowledge necessary to ensure that the Debtors are able to respond to diligence, maintain key data, technology, and security services, and ultimately make

distributions to creditors. The Debtors cannot easily replace the Participants without adversely affecting the Debtors' operating efficiency and distracting management from the Debtors' restructuring efforts. Accordingly, the KERP is a sound exercise of the Debtors' business judgment and in the best interest of their estates and all parties in interest in these chapter 11 cases.

## II. The KERP Is Justified by the Facts and Circumstances of these Chapter 11 Cases.

23. Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Importantly, section 503(c)(3)'s "facts and circumstances" justification test "creates a standard no different that the business judgment standard under section 363(b) of the Bankruptcy Code." *In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); *see also Borders Grp.*, 453 B.R. at 473–74 (evaluating debtors' KERP under business judgment rule); *In re Dana Corp.*, 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006) (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code). Accordingly, whether a retention plan is justified by the facts and circumstances of the case and the analysis of whether the approval of such plan is a sound exercise of the debtor's business judgment are the same.

24. In the context of approving compensation programs, courts in the Second Circuit have considered the factors identified in *In re Dana Corp.* when determining if a compensation proposal and the process for developing it meet the "sound business judgment" test:

- Is there a reasonable relationship between the plan proposed and the results to be obtained (*i.e.*, will the key employee stay for as long as it takes for the debtor to reorganize or market its assets?);

11

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities, and earning potential;

- Is the scope of the plan fair and reasonable: does it apply to all employees, or if not, does it discriminate unfairly;

- Is the plan or proposal consistent with industry standards;

- What were the due diligence efforts of the debtor in investigating the need for a plan, analyzing which key employees need to be incentivized, what is available, and what is generally applicable in a particular industry; and

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*Dana Corp.*, 358 B.R. at 576–77; *see, e.g.*, *In re Res. Cap., LLC*, 491 B.R. 73, 85–86 (Bankr. S.D.N.Y. 2013) (applying the *Dana* factors to the debtors' retention plan for non-insiders and approving the plan as an exercise of sound business judgment); *Borders Grp.*, 453 B.R. at 473–74 (same). No single factor is dispositive, and the Court has discretion to weigh each of these factors based on the specific facts and circumstances before it. *See, e.g.*, *In re AMR Corp.*, 490 B.R. 158, 166 (Bankr. S.D.N.Y. 2013) (applying the factors in the context of a non-insider severance program, noting that "[c]ourts evaluate who is an insider on a case-by-case basis from the totality of the circumstances"). Even the total absence of a factor may be permissible so long as the interests of the Debtors are sufficiently protected. *See Borders Grp.*, 453 B.R. at 477 (finding that the lack of independent counsel was "not fatal" where the presence of other factors ensured "that the [d]ebtors' interests were sufficiently protected."); *In re Glob. Aviation Holdings Inc.*, 478 B.R. 142 (Bankr. E.D.N.Y. 2012) (noting that "the relatively modest size of the proposed bonus payouts made the retention of independent legal counsel economically inefficient."). The proposed KERP satisfies the standard set forth above, each as discussed more fully below.

25.     ***First***, there is a reasonable relationship between the KERP and Debtors' need to retain key employees.  The KERP will ensure that the Debtors have the appropriate staff on hand to facilitate the reorganization or sale and the Debtors' operations upon emergence from chapter 11, thereby maximizing value for the Debtors' estates.  Despite the fact that the Debtors' trading, lending, staking, and custody platform (the "Platform") is frozen, the Debtors' employees continue to perform maintenance, updates, and essential security functions on the Platform to facilitate a successful reorganization or sale as well as prepare the platform for making distributions to creditors and for any post-emergence operations.  A failure to retain the Participants would cause the Debtors to incur significant time and money to hire and train replacement employees, which would, in turn, hinder their reorganization to the detriment of all parties in interest.

26.     Moreover, the risk of Participants resigning is real.  Since the Petition Date, 102 of the Debtors' employees have resigned.[4]  Certain of these employees played key roles in the Debtors' operations, and the cost and time required to search for, hire, and train new employees is substantial.  The KERP is designed to prevent further attrition and avoid the further cost and time required in connection with replacing employees.  Courts in this district have granted debtors similar relief, including in cases where the issue of employee resignation appears to have been less acute than it is here.  *See In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 25, 2022) (approving KERP for thirty-eight of the debtors' non-insider employees for a maximum aggregate cost of $1.9 million after only eighteen employees resigned); *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 25, 2022) (approving KERP for 160 of the debtors' non-insider employees for a maximum aggregate cost of $15.3

---

[4]     *See* Ferraro Decl. ¶ 9.

million after facing turnover between twelve percent to twenty-five percent as well as releasing

nearly half of U.S. employees); *In re A.B.C. Carpet Co., Inc.*, No. 21-11591 (DSJ) (Bankr.

S.D.N.Y. Oct. 5, 2021) (approving KERP for twenty-one of the debtors' non-insider employees

for a maximum aggregate cost of $17 million after certain critical employees to the debtors'

operation resigned and seventy employees were released); *In re OneWeb Glob. Ltd.*,

No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020) (approving KERP for forty-seven of the

debtors' non-insider employees for a maximum aggregate cost of $3.0 million after ninety

percent of the workforce was released); *In re Fairway Grp. Holdings Corp.*, No. 20-10161 (JLG)

(Bankr. S.D.N.Y. Apr. 17, 2020) (approving KERP for twenty-seven of the debtors' non-insider

employees for a maximum aggregate cost of $1.1 million after twenty-four of the debtors'

employees resigned with five KERP participants having resigned postpetition).[5]

27.     Accordingly, there is a reasonable relationship between the KERP and the

Debtors' need to retain important employees.

28.     **Second**, the cost of the KERP is reasonable given the Debtors' assets and

liabilities.  As discussed above and in the Gartrell Declaration, WTW performed a benchmarking

analysis to assist the Debtors with the design of the KERP.  *See* Gartrell Decl. ¶ 15.  The costs

associated with the KERP are within the range of market practice as compared to plans proposed

and approved at similarly situated companies in chapter 11.  Furthermore, the total cost of the

KERP is only a fraction of the Debtors' total revenue and liabilities, while the costs, both

financial and operational, of losing KERP Participants would be far greater.  Accordingly, the

costs are reasonable and well-justified given the size of the Debtors' businesses.

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request to the Debtors' counsel.

29.    *Third*, the scope of the KERP is fair and reasonable.  As noted herein, the Debtors

undertook a careful selection process and received input from their advisors in determining the

specific employees that should be eligible.  In fact, the sixty-two Participants represent a small

portion of the Debtors' total employee base of approximately 275 people.[6]  These employees are

critical for the Debtors to maximize value for stakeholders.

30.    *Fourth*, the KERP is consistent with industry practice.  The Debtors' senior

management team, none of whom will receive payment under the KERP, in consultation with the

Special Committee and the Debtors' advisors, developed the KERP after a rigorous analysis.  As

outlined in the Gartrell Declaration, the KERP is cost-effective when compared to retention plans

in other, similar chapter 11 cases.  With respect to eligibility, metrics, and payout timing, the

KERP is similar to other plans recently approved in chapter 11 cases.

31.    *Fifth*, the Debtors performed due diligence in determining the need for the KERP.

In developing the plan, the Debtors' management team consulted with department heads to

determine which employees were most critical to retain and most at risk absent a retention plan.

The Debtors also discussed the KERP and list of Participants with department heads and

identified the need for the KERP Reserve Pool and the option to reallocate KERP funds to New

KERP Participants given the increasing rate of employee departures.  As set forth more fully in

the Ferraro Declaration, the Debtors then compared their proposed retention awards for

Participants against similarly situated companies in chapter 11.

32.    *Sixth*, the Debtors relied in part on the independent review of WTW and their

other advisors in developing the KERP.  Moreover, prior to filing the Motion the Debtors shared

---

[6]    Of the sixty-two Participants, twenty of the Participants relate to non-debtor entities.  The proposed award to
these Participants is approximately nineteen percent of the total KERP.

information regarding the KERP with the U.S. Trustee and counsel to the Committee. Because

of this open engagement, the KERP is justified by the facts and circumstances of these

chapter 11 cases.

33. Accordingly, the KERP satisfies the "business judgment standard" identified in

*In re Dana Corp.* Courts in this district also grant relief well in excess of that requested herein.

*See, e.g.*, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 25, 2022) (approving a

KERP for 160 of the debtors' non-insider employees with a maximum aggregate cost of

$15.3 million); *In re Frontier Commc'ns Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26,

2020) (approving a KERP with an aggregate approximate maximum cost of $37.6 million

covering 390 of the debtors' non-insider employees and including a $2.0 million reserve pool to

incentivize    or    retain    employees    not    currently    covered    under    the    plan);

*In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 15, 2019)

(approving a KERP for up to $5.0 million in the aggregate for a to-be-determined number of

employees); *In re Westinghouse Electric Co. LLC*, No. 17-10751 (MEW) (Bankr. S.D.N.Y.

Sept. 12, 2017) (approving a KERP for 210 of the debtors' non-insider employees with total cost of

$13.8 million); *In re SunEdison Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. July 29, 2016)

(approving a KERP for 126 employees with an estimated payout of $7.0 million).[7]

### III.    Section 503(c)(1) of the Bankruptcy Code Is Inapplicable to the KERP.

34. Section 503(c)(1) of the Bankruptcy Code restricts payments made to "insiders of

the debtor for the purpose of inducing such person to remain with the debtor's business"—*i.e.*,

those insider plans that are essentially "pay to stay" plans. 11 U.S.C. § 503(c)(1). By its terms,

---

[7] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

section 503(c)(1) of the Bankruptcy Code does not apply where participants in a retention-based

program are not insiders.

35.    Under section 101(31) of the Bankruptcy Code, where a debtor is a corporation,

insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of

the debtor . . . or (iv) relative of a . . . director, officer or person in control of the debtor."

11 U.S.C. § 101(31)(B).  Courts have also concluded that an employee may be an "insider" if

such employee has "at least a controlling interest in the debtor or . . . exercise[s] sufficient

authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of

corporate assets."  *Velo Holdings, Inc.*, 472 B.R. at 208 (citations omitted).  Moreover, because

the Bankruptcy Code does not define the term "officer," courts look to Black's Law Dictionary

as a source of authority.  *See Borders Grp.*, 453 B.R. at 468 ("The term 'officer' is likewise not

defined by the Code.  However, courts have looked to Black's Law Dictionary as a source of

authority.").  Black's Law Dictionary defines an officer of a corporation as "a person elected or

appointed by the board of directors to manage the daily operations of a corporation, such as a

CEO, president, secretary, or treasurer."  Black's Law Dictionary (11th ed. 2019).  This law

reflects the reality of modern-day corporate America—namely, that an employee's job title,

alone, does not make such employee an "insider" as defined by the Bankruptcy Code.

*See Borders Grp.*, 453 B.R. at 469 (noting that "[c]ompanies often give employees the title

'director' or 'director-level,' but do not give them decision-making authority akin to an

executive" and concluding that certain "director level" employees in that case were not insiders);

*Glob. Aviation*, 478 B.R. at 148 ("The fact that some of the KERP Employees have the word

'director' in their titles does not make them insiders.  The label an employer chooses to attach to

a position is not dispositive for purposes of insider analysis because '[c]ompanies often give

employees the title 'director' or 'director-level' but do not give them decision-making authority akin to an executive.'").

36.     Although certain Participants hold titles including the term "head," "director," "vice president," or "chief," none of the Participants are "insiders," as such term is defined by section 101(31) of the Bankruptcy Code.  None of the Participants have discretionary control over substantial budgetary amounts or significant control with respect to the Debtors' corporate policies or governance.  Moreover, each of the Participants' roles are limited in scope; none make "company-wide or strategic decisions," and none "exercise sufficient authority over the debtor as to unqualifiably dictate corporate policy." *See Glob. Aviation*, 478 B.R. at 148, 150. None of the Participants were appointed by the Board, sit on the Board, or directly report to the Board.[8]  *See In re LSC Commc'ns*, 631 B.R. 818, 826 (S.D.N.Y. 2021) (finding that the employees who were appointed by the board and would be deemed officers under Delaware corporate law should "weigh heavily in concluding that the employees are officers for Bankruptcy Code purposes").  The Participants do not dictate overall corporate policy, nor do they exercise control over the Debtors' significant business or strategic decisions.[9]

37.     Therefore, none of the Participants constitute "insiders" of the Debtors, and the restrictions of section 503(c)(1) of the Bankruptcy Code is inapplicable to the KERP.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

38.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a)

---

[8]    *See* Ferraro Decl. ¶ 13.

[9]    *See id.*

and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **Motion Practice**

39.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.  Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

40.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c)  the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

41.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: October 11, 2022

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING THE DEBTORS' KEY
## EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) approving and authorizing the Debtors' proposed key employee retention plan (the "KERP"), (b) authorizing the Debtors to make payments to certain non-insider employees under the KERP, and (c) granting related relief, all as more fully set forth in the Motion; and upon the Ferraro Declaration; and upon the Gartrell Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to sections 363(b)(1) and 503(c) of the Bankruptcy Code, the KERP is approved.

3.      The Debtors are authorized, but not directed, to implement the KERP and make the payments contemplated thereunder at the times specified in the Motion.

4.      The Debtors may add a replacement participant(s) to the KERP upon the resignation or the termination for cause of any Participant.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

## **KERP Participant Detail**

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 1 | ██████ | ██████ | ██████ | ████ | ███ | ███ |
| 2 | ████ | ██████ | ██████ | ████ | ███ | ███ |
| 3 | ██████ | ██████ | ██████ | ████ | ███ | ███ |

| | | | | | | |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 4 | ███ | ████████ | ████ | █████ | ████ | ████ |
| 5 | ███ | ████████ | ████ | ████ | ███ | ███ |
| 6 | ████ | ████████ | ████ | ███ | ███ | ███ |
| 7 | █████ | ████████ | ████ | ████ | ████ | ████ |

| | KERP Participants | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 8 | ███ | ████ | ███ | ███ | ██ | ██ |
| 9 | ███ | ████ | ███ | ███ | ██ | ██ |
| 10 | ██ | ████ | ███ | ███ | ██ | ██ |

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 11 | ███ | ███ | ███ | ███ | ██ | ██ |
| 12 | ███ | ███ | ███ | ██ | ██ | ██ |
| 13 | ███ | ███ | ███ | ██ | ██ | ██ |
| 14 | ███ | ███ | ███ | ██ | ██ | ██ |

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 15 | ██████ | ██████ | ██████ | ████ | ████ | ████ |
| 16 | ██████ | ██████ | ██████ | ██████ | ████ | ████ |
| 17 | ██████ | ██████ | ██████ | ████ | ████ | ████ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 18 | ██ | ██ | ██ | ██ | ██ | ██ |
| 19 | ██ | ██ | ██ | ██ | ██ | ██ |

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 20 | ███ | ███ | ███ | ███ | ███ | ███ |
| 21 | ███ | ███ | ███ | ███ | ███ | ███ |
| 22 | ███ | ███ | ███ | ███ | ███ | ███ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 23 | ███ | ███ | ███ | ███ | ███ | ███ |
| 24 | ███ | ███ | ███ | ███ | ███ | ███ |
| 25 | ███ | ███ | ███ | ███ | ███ | ███ |

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 26 | ██████ | ████████ | ██████ | ██████ | ████ | ████ |
| 27 | ██████ | ████████ | ██████ | ████ | ████ | ████ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| 28 | ███ | ███ | ███ | ███ | ███ | ███ |
| e | ███ | ███ | ███ | ███ | ███ | ███ |
| 30 | ███ | ███ | ███ | ███ | ███ | ███ |

*KERP Participants*

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| KERP Participants | | | | | | |
| 31 | ██████ | ████████ | ██████ | ████ | ███ | ███ |
| 32 | █████ | ██████ | ██████ | █████ | ████ | ████ |

| | | KERP Participants | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 33 | ███ | ███████ | ██████ | ████ | ███ | ███ |
| 34 | ████ | ███████ | █████ | ███ | ██ | ██ |

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 35 | ███ | ███████ | █████ | ████ | ██████████ | |
| 36 | ████ | ███████ | █████ | ████ | ████ | ████ |
| 37 | ████ | ███████ | ██████ | ███ | ████ | ████ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| KERP Participants | | | | | | |
| 38 | ██████ | ████████ | ████████ | ██████ | ██████ | ██████ |
| 39 | ██████ | ████████ | ██████ | ████ | ████ | ████ |
| 40 | ██████ | ████████ | ██████ | ██████ | ████ | ████ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 41 | ██ | ███ | ██ | ██ | ██ | ██ |
| 42 | ██ | ███ | ██ | ██ | ██ | ██ |
| 43 | ██ | ███ | ██ | ██ | ██ | ██ |

| | | | KERP Participants | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 44 | ██ | ██ | ██ | ██ | ██ | ██ |
| 45 | ██ | ██ | ██ | ██ | ██ | ██ |
| 46 | ██ | ██ | ██ | ██ | ██ | ██ |
| 47 | ██ | ██ | ██ | ██ | ██ | ██ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 48 | ██ | ████ | ███ | ██ | ██ | ██ |
| 49 | ███ | ███ | ███ | ██ | ██ | ██ |

| | | KERP Participants | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 50 | ██████ | ██████████ | ██████ | ████ | ████ | ████ |
| 51 | ██████ | ██████████ | ██████ | ████ | ████ | ████ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| 52 | ██████ | ██████ | ██████ | ██████ | ██████ | ██████ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 53 | ███ | ████████ | ███ | ██ | ██ | ██ |
| 54 | ████ | ████████ | ████ | ███ | ███ | ███ |

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 55 | ▇ | ▇ | ▇ | ▇ | ▇ | ▇ |

21

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
| 56 | ██████ | ████████████████████████████████████████████ | ████████ | ████ | ████ | ████ |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 57 | ███ | ███████ | ████ | ███ | ██ | ██ |
| 58 | ███ | ██████ | ███ | ██ | ██ | ██ |
| 59 | ███ | ████████ | ███ | ██ | ██████ | |

23

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | **Title** | **Job Description** | **Supervisor's Name and Title** | **Hired/Appointed by** | **Salary** | **KERP Award** |
| 60 | ███ | ███ | ███ | ███ | ████ | |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| **KERP Participants** | | | | | | |
| 61 | ███ | ██████ | ███ | ██ | ███████ | |

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed by | Salary | KERP Award |
|---|---|---|---|---|---|---|
| | **KERP Participants** | | | | | |
| 62 | ███ | ███████ | ██████ | ████ | ███ | ███ |