Joshua A. Sussberg, P.C.  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone:     (212) 446-4800  
Facsimile:      (212) 446-4900  

*Counsel to the Debtors and Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)  
Christopher S. Koenig  
Dan Latona (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
300 North LaSalle Street  
Chicago, Illinois 60654  
Telephone:     (312) 862-2000  
Facsimile:      (312) 862-2200  

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF
CHRISTOPHER FERRARO, ACTING CHIEF
EXECUTIVE OFFICER, CHIEF RESTRUCTURING OFFICER, AND
CHIEF FINANCIAL OFFICER OF THE DEBTORS, IN SUPPORT OF THE
DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'
KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

I, Christopher Ferraro, hereby declare as follows under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the acting Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius Network, LLC ("Celsius"). Celsius, along with certain of its debtor

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

subsidiaries and affiliates, are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

2. I am familiar with the Debtors' day-to-day operations, businesses and financial affairs, and books and records, including the Debtors' proposed key employee retention plan (the "KERP") as set forth in the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief*, filed contemporaneously herewith (the "KERP Motion").[2]

3. I submit this declaration in support of the KERP Motion. Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and information obtained from other members of the Debtors' management team and advisors. I am authorized to submit this declaration on behalf of the Debtors. I am over the age of eighteen and, if called upon to testify, I could and would testify competently to the facts and opinions set forth in this declaration.

**Qualifications**

4. I am the acting Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius. I was appointed as Chief Financial Officer on July 11, 2022 and was appointed as acting Chief Executive Officer and Chief Restructuring Officer on September 27, 2022. I have approximately two decades of experience in financial, planning, and analysis, asset and liability management, and product control.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the KERP Motion.

5. Before my roles with Celsius, I was a Senior Managing Director at Cerberus Operations & Advisory Company ("Cerberus"), where I focused on improving the operating returns for two legacy portfolio positions. In this role, I advised the chief executive officer and leadership team on increasing profitability by changing and repricing business mix, restructuring costs, and optimizing the balance sheet.

6. Prior to Cerberus, I served in various roles at JP Morgan Chase & Co. from 2001 to 2018. I was the head of Financial Analysis and a Senior Leader, for which I was responsible for all financial, planning, and analysis activities, developed analytical tools, and authored a patent application in forecasting. Before my role as head of Financial Analysis and a Senior Leader, I was the Treasurer of the Consumer Bank and the Retail Loan Pricing Manager.

7. I hold a Bachelor's degree in Economics, Finance, & Accounting from the University of Washington. I also passed the Washington state Uniform Certified Public Accountant Examination.

## The Debtors' Employees

8. In light of recent management changes, the Debtors' employees are more vital than ever to the Debtors' success. Each Participant performs a vital role in cash and digital asset management, IT infrastructure and data management, digital security, accounting, legal, compliance, and other critical functions.

9. Due to the rapid growth of the cryptocurrency industry, the labor market for employees who possess the qualifications and skills necessary to operate a sophisticated cryptocurrency trading platform is extremely limited and therefore highly competitive. I believe it is likely that the Debtors would struggle to adequately source potential candidates who could

operate the Celsius platform effectively, and hiring a new employee (if even possible) would require the Debtors to incur significant operational and financial costs. Indeed, since the Petition Date, 102 employees have resigned, and certain employees continue to receive offers to join competitors, in some instances, for compensation significantly above their current compensation. Moreover, the Debtors previously compensated certain of their employees with their proprietary cryptocurrency token in addition to cash compensation. This practice is currently suspended, and as such, eligible employees have been missing this portion of their compensation since the first quarter of 2022. Accordingly, I believe that the KERP is necessary and appropriate to limit the further attrition of key employees.

10. Despite the fact that the Debtors' trading, lending, staking, and custody platform (the "Platform") is frozen, the Debtors' employees continue to perform maintenance and updates on the Platform to facilitate a successful reorganization or sale as well as prepare the Platform for post-emergence operations. The Debtors' employees are also working closely with the Debtors' advisors to facilitate the administration of these chapter 11 cases and satisfy all chapter 11 reporting obligations. A failure to retain the Participants would cause the Debtors to incur significant time and money to hire and train replacement employees, which would, in turn, hinder their reorganization to the detriment of all parties in interest. Accordingly, I believe that retaining key employees is critical to the Debtors' reorganizational efforts and, ultimately, the viability of the Debtors' chapter 11 cases.

**KERP Participants**

11. To develop the KERP, the Debtors consulted with outside advisors, including their independent compensation consultant Willis Towers Watson Delaware, Inc. ("WTW"), financial

4

advisor Alvarez & Marsal North America, LLC ("A&M"), and external legal counsel Kirkland & Ellis LLP, to develop a retention plan that is market-based, consistent with competitive practices, and compliant with the Bankruptcy Code. The Debtors, their advisors, and the Special Committee (which is comprised of two experienced directors that have no personal stake in the KERP) undertook a deliberative process, convening frequently with the Debtors' various advisors, to understand how to best incentivize the workforce in light of a likely in-court restructuring. In the end, the Special Committee approved the KERP.

12. Of the approximately 275 current employees, the Debtors identified sixty-two key non-insider employees as Participants who perform a variety of important business functions that are vital to the Debtors' ability to preserve and enhance stakeholder value. Without an incentive to remain with the Debtors throughout the chapter 11 process, these key employees will likely seek alternative employment opportunities elsewhere. Thus, the Debtors require the ability to offer competitive compensation or risk a "brain drain" in a vigorously competitive industry.

13. Although certain Participants have titles incorporating the word "officer," "head," "director," "vice president," or "chief," none of the Participants are in reality insiders and merely holding such title conveys no special privileges within the Debtors' hierarchy. Although the Participants are important to the Debtors' business operations, no Participant in the proposed KERP is an employee who: (a) sits on, or directly reports to, the Debtors' board of directors; (b) was appointed or hired directly by the Debtors' board of directors; (c) exercises managerial control over, or has responsibility for, the Debtors' operations as a whole; or (d) directs the Debtors' overall corporate policy or governance. My understanding is that, as a result, none of the

5

Participants is an "insider" under the Bankruptcy Code.

14. Attached to the KERP Motion as <u>Exhibit B</u>, and incorporated herein by reference, is a comprehensive chart that details the Participants and their proposed award amounts. I have reviewed the chart and attest that, based on my knowledge of the Debtors, it is complete and accurate.

15. I believe that certain Participants may be motivated to leave the Debtors' employ during the pendency of these chapter 11 cases due to, among other things, the uncertainty created by the Debtors' ongoing reorganization and marketing efforts. I believe that preserving each Participant's institutional and technical knowledge is crucial to the Debtors' ability to maximize value. I further believe that the KERP will increase the likelihood that the Participants are properly incentivized to remain with the Debtors during the restructuring process, thereby preserving value for the Debtors, their estates, and their stakeholders. I believe that preserving each Participant's institutional and technical knowledge is crucial to the Debtors' ability to maximize value. The Participants are critical to the continued maintenance of customer accounts, and the platform more generally by, among other things, performing essential security functions and building enhanced features and functionality for the Debtors' system and assets. In the absence of the KERP, there is a very real chance of material further attrition that will limit the Debtors' ability to maximize value for all stakeholders.

16. In light of the foregoing, I believe that the KERP will increase the likelihood that the Participants are properly incentivized to remain with the Debtors during the restructuring process, thereby preserving value for the Debtors, their estates, and their stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: October 11, 2022  
Quito, Ecuador

*/s/ Christopher Ferraro*  
Name: Christopher Ferraro  
Title: Acting Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network, LLC