Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Counsel to the Debtors and*
*Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF UNREDACTED**
**VERSION OF DEBTORS' APPLICATION FOR AUTHORITY**
**TO RETAIN AND EMPLOY LATHAM & WATKINS LLP AS**
**SPECIAL COUNSEL TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

**PLEASE TAKE NOTICE** that on August 4, 2022, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed a redacted version of the *Debtors'*

*Application for Authority to Retain and Employ Latham & Watkins LLP as Special Counsel to the*

*Debtors Effective As of the Petition Date* [Docket No. 363] (the "Application") in accordance with

the *Order (I) Authorizing the Debtors to Prepare a Consolidated List of Creditors in Lieu of*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*Submitting a Separate Mailing Matrix for Each Debtor, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying Creditors Of Commencement Of these Chapter 11 Cases, and (V) Granting Related Relief* [Docket No. 55] and the *Debtors' Ex Parte Motion Pursuant to Section 107 of the Bankruptcy Code Seeking Entry of an Order (I) Authorizing the Debtors to Redact Certain Personally Identifiable Information from the Creditor Matrix, Schedules and Statements and Related Documents and (II) Granting Related Relief* [Docket No. 344] (the "Sealing Motion"), which was pending at the time the Application was filed.  Contemporaneously therewith, an unredacted version of the Application was provided to the United States Bankruptcy Court for the Southern District of New York (the "Court"), counsel to the official committee of unsecured creditors, and the United States Trustee for the Southern District of New York.

PLEASE TAKE FURTHER NOTICE that on September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment of Latham & Watkins LLP as Special Counsel to the Debtors Effective As of the Petition Date* [Docket No. 838] (the "Order").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, the Debtors agreed that, "[t]o the extent that the Court does not grant certain of the relief requested in the [Sealing Motion] or other motion seeking to authorize the sealing of information, the Debtors shall file, as soon as reasonably practicable thereafter, unredacted versions of any declaration or other supplemental disclosure to the extent necessary to comply with such rulings by the Court."  *See* Order at ¶ 8.

PLEASE TAKE FURTHER NOTICE that on September 28, 2022, the Court entered the *Memorandum Opinion and Order on the Debtors' Sealing Motion* [Docket No. 910] (the "Opinion

2

and Order"), which directed all of the Debtors' professionals that filed retention applications to file unredacted retention applications within fourteen days after the entry of the Opinion and Order. *See* Opinion and Order at § IV.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Opinion and Order, the Debtors hereby file an unredacted version of the Application, attached hereto as **Exhibit A** (the "Unredacted Application").

**PLEASE TAKE FURTHER NOTICE** that copies of the Unredacted Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page left intentionally blank]*

New York, New York
Dated: October 11, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and*
*Debtors in Possession*

## Exhibit A

**Unredacted Application**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[2] | ) |
| | ) |
| Debtors. | ) |
| | ) |

Chapter 11

Case No. 22-10964 (MG)

(Jointly Administered)

## DEBTORS' APPLICATION FOR AUTHORITY TO RETAIN
## AND EMPLOY LATHAM & WATKINS LLP AS SPECIAL COUNSEL
## TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively,

the "Debtors") hereby represent in support of this application (this "Application"):

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

## **Relief Requested**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing the Debtors to retain and employ Latham & Watkins LLP ("L&W") as special counsel to the Debtors for the matters described herein, effective as of the Petition Date (as defined herein).

2.     In support of the relief requested herein, the Debtors submit (a) the *Declaration of John J. Sikora Jr. in Support of Debtors' Application for Authority to Retain and Employ Latham & Watkins LLP as Special Counsel to the Debtors Effective as of the Petition Date* (the "Sikora Declaration"), attached hereto as Exhibit B, and (b) the *Declaration of Chris Ferraro in Support of Debtors' Application for Authority to Retain and Employ Latham & Watkins LLP as Special Counsel to the Debtors Effective as of the Petition Date* (the "Ferraro Declaration"), attached hereto as Exhibit C.

## **Jurisdiction and Venue**

3.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## Background

6.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases (the "Chapter 11 Cases") are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  On July 27, 2022, the United States Trustee for Region 2 appointed an Official Committee of Unsecured Creditors pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 241].

## Scope of L&W's Services

7.      Prior to the Petition Date, the Debtors retained L&W to represent the Debtors in connection with various inquiries and investigations by federal and state regulators (collectively, the "Investigations").  In particular, L&W's services include (a) advising the Debtors as to their rights and obligations with respect to the Investigations; (b) communicating with the regulators on the Debtors' behalf; (c) analyzing and responding to document and information requests from regulators; (d) researching and analyzing various legal issues related to the Investigations; and (e) providing advice on certain regulatory questions and issues that may arise in the normal course of business (collectively, the "L&W Services").

8.      As discussed below, L&W has extensive experience representing clients in connection with government investigations, and over the past year, L&W has gained extensive institutional knowledge regarding the Debtors and the Investigations.  L&W's continued services

are necessary to ensure a smooth and efficient process with the regulators leading the Investigations.

9.      The L&W Services will be provided to the Debtors in accordance with the engagement letter dated September 6, 2021 (the "Engagement Letter"), which is attached as Exhibit 1 to the Sikora Declaration.

10.     L&W will not serve as the Debtors' general or special counsel on matters not set forth in this Application, and will not advise the Debtors or their estates with respect to their duties under the Bankruptcy Code.  As noted below, L&W will coordinate with the Debtors' other advisors to avoid duplication of services.

11.     Subject to approval of this Application, L&W has informed the Debtors that it is willing to serve as the Debtors' special counsel and to perform the L&W Services.

### L&W's Qualifications

12.     The Debtors selected L&W to provide the L&W Services due to the firm's reputation and expertise in government investigations.  L&W's investigations practice has broad experience in a wide variety of regulatory matters, combining specific regulatory knowledge with procedural experience, and the L&W team representing the Debtors includes regulatory practitioners, career defense advocates, and former government lawyers.  These lawyers regularly advise clients in connection with high stakes investigations.

13.     The Investigations relate primarily to compliance with federal and state securities laws and involve issues with which L&W has extensive experience.  Furthermore, over the past year, L&W has assisted the Debtors in working cooperatively with regulators to respond to information requests and inquiries related to the Investigations.  During this time, L&W has become familiar with the Debtors' business, as well as with the specific factual and legal issues raised in the Investigations.  Accordingly, L&W is uniquely positioned to represent the Debtors

effectively and efficiently in connection with the Investigations and to advise the Debtors and their restructuring advisors on matters related to the Investigations.

14.　　In light of the foregoing, L&W is well qualified to represent the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code in connection with the L&W Services, and L&W's retention is in the best interest of the Debtors' estates, creditors, and other parties in interest.

## **L&W's Disinterestedness**

15.　　To the best of the Debtors' knowledge, information, and belief, except as disclosed in the Sikora Declaration, L&W has represented that it neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any of the L&W Services. Accordingly, retention of L&W meets the requirements set forth in section 327(e) of the Bankruptcy Code.

16.　　The Debtors have been informed that L&W will supplement the Sikora Declaration if any facts or circumstances are discovered that require additional disclosure.

## **L&W's Compensation**

17.　　L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. The current hourly rates for the L&W Services range as follows:

| Billing Category | Rates |
|------------------|-------|
| Partners | $1,265 to $2,075 |
| Counsel | $1,210 to $1,720 |
| Associates | $655 to $1,300 |
| Professional Staff | $190 to $965 |
| Paralegals | $270 to $600 |

18.     L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys, paralegals, and professional staff and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions (which adjustments will be reflected in the first L&W fee application following such adjustments).[3]

19.     In addition to the hourly billing rates set forth herein, L&W customarily charges its clients for all identifiable, non-overhead expenses incurred, including photocopying charges, print jobs, travel and related expenses, transcripts, computer research, and similar items.   L&W professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.   The Debtors respectfully submit that L&W's rates and policies, as stated in the Sikora Declaration, are reasonable and customary.

20.     The Debtors understand that L&W will apply to the Court for allowance of compensation and reimbursement of expenses for all professional services performed and expenses incurred after the Petition Date in accordance with Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C.*

---

[3]     L&W's billing rates are usually revised annually, on or around January 1 of each year, as is customary with L&W's policies.  Accordingly, L&W's billing rates will increase on January 1, 2023.  As set forth in the Proposed Order, L&W will provide ten business-days' notice to the Debtors, the United States Trustee for the Southern District of New York (the "United States Trustee"), and any official committee appointed or designated in these Chapter 11 Cases before implementing any periodic increases, and will file any such notice with the Court.

*§ 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "Fee Guidelines"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

21.     To the best of the Debtors' knowledge, no partner or associate of L&W, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Chapter 11 Cases, other than as permitted by the Bankruptcy Code. L&W has agreed not to share compensation received in connection with the Chapter 11 Cases with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing of compensation among L&W's partners.

## Compensation Received by L&W from the Debtors

22.     As of the Petition Date, the Debtors did not owe L&W any amounts for legal services rendered before the Petition Date, and L&W is not a creditor of the Debtors.

23.     As set forth in the Sikora Declaration, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $4,075,894.23 for services performed and expenses incurred, and to be performed and incurred.  As of the Petition Date, L&W has a remaining credit balance in favor of the Debtors in the amount of approximately $412,629.47 (the "Fee Advance").  L&W intends to apply the Fee Advance to any outstanding amounts relating to the period prior to the Petition Date that were not processed through L&W's system as of the Petition Date and will seek the approval of this Court prior to applying any portion of the remaining Fee Advance to postpetition fees and expenses.

24.     L&W requests that the Fee Advance be treated as an evergreen retainer and be held by L&W as security throughout the Chapter 11 Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis.  The Debtors submit that an evergreen retainer is appropriate for several reasons.  First, these types of retainer agreements reflect normal business terms in the

marketplace. Second, both L&W and the Debtors are sophisticated business entities that have negotiated the retainer at arm's length. Third, the retention of L&W is in the best interests of the Debtors' estates, as the applicable retention agreement and retainer allow the Debtors to maintain their prepetition relationship established with L&W.

### No Duplication of Services

25. The Debtors intend that the L&W Services will complement, and not duplicate, the services being rendered by any other professional retained in these Chapter 11 Cases. L&W understands that the Debtors have retained and may retain additional professionals during the term of their engagement and agrees to work cooperatively with such professionals to avoid any duplication of services.

### The Relief Requested Should Be Granted

26. Section 327(e) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ, for a specified special purpose, other than to represent the [debtor in possession] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate **_with respect to the matter on which such attorney is to be employed_**.

11 U.S.C. § 327(e) (emphasis added). Bankruptcy Rule 2014 requires that applications for retention of professionals include, among other things:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

27.     In light of the importance of continuing to work cooperatively to respond to the regulators requests and inquiries related to the Investigations, the Debtors respectfully submit that retaining and employing L&W pursuant to the terms of this Application is necessary and in the best interests of the Debtors' estates and all parties in interest in these Chapter 11 Cases.  As set forth in the Sikora Declaration, L&W has a highly experienced investigations practice and has already become familiar with the factual and legal issues raised in the Investigations.  The L&W Services will not overlap with the services to be provided by the Debtors' other professionals. L&W has also represented to the Debtors that it neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any matter for which it will be employed.

## **Notice**

28.     The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the United States Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

29.     No prior request for the relief sought in this Application has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order and such

other and further relief as is just.

August 4, 2022
New York, NY

**CELSIUS NETWORK LLC**
(for itself and on behalf of its affiliates
that are debtors and debtors in possession)

*/s/ Chris Ferraro*
Chris Ferraro
Chief Financial Officer
Celsius Network Limited

## **Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF LATHAM & WATKINS LLP AS SPECIAL COUNSEL TO**
**THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for entry of an order pursuant to section 327(e)

of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1

authorizing the Debtors to retain Latham & Watkins LLP ("L&W") as special counsel to the

Debtors with respect to the L&W Services, effective as of the Petition Date, all as more fully set

forth in the Application; and upon the Sikora Declaration and the Ferraro Declaration; and this

Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* from the United States District Court for the Southern District of

New York, entered February 1, 2012; and this Court having the power to enter a final order

consistent with Article III of the United States Constitution; and this Court having found that

venue of the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the Debtors' notice of the Application and opportunity for a hearing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Application.

on the Application were appropriate under the circumstances and no other notice need be provided; and the Court having determined that the relief sought in the Application is in the best interests of the Debtors, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.     The Application is approved as set forth herein.

2.     Pursuant to section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to retain L&W as special counsel to the Debtors with respect to the L&W Services, effective as of the Petition Date, and L&W is authorized to perform the L&W Services described in the Application.

3.     L&W shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the L&W Services in the Debtors' Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and the applicable provisions of the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any applicable procedures and orders of the Court.

4.     L&W shall provide ten (10) business days' notice to the Debtors, the United States Trustee, and any statutory committee appointed in these Chapter 11 Cases before implementing any increases in the rates set forth in the Application for professionals providing the L&W Services, and such notice shall be filed with the Court.

5.     L&W is authorized without further order of the Court to apply amounts from the Fee Advance to compensate and reimburse L&W for fees or expenses incurred prior to the Petition Date consistent with its ordinary course billing practice. The remainder of the Fee Advance shall

be treated as an evergreen retainer and be held by L&W as security throughout the Chapter 11

Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis.  L&W

shall apply any Fee Advance remaining at the time of its final fee application in satisfaction of

compensation and reimbursement awarded with respect to such application, and promptly return

to the Debtors' estates any Fee Advance remaining after such application.

6.      In the event of any inconsistency between the Application, the Sikora Declaration,

the Engagement Letter, and this Order, the terms of this Order shall govern.

7.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in

any of the Chapter 11 Cases or upon any chapter 7 trustee appointed in the event of a subsequent

conversion of any of the Chapter 11 Cases to cases under chapter 7.

8.      Notice of the Application as provided therein is good and sufficient notice of such

Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by

such notice.

9.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms

and conditions of this Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all reasonable actions necessary to effectuate

the relief granted in this Order in accordance with the Application.

11.     This Court retains exclusive jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated: _____, 2022
        New York, New York

_____
MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Sikora Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF JOHN J. SIKORA JR. IN SUPPORT OF DEBTORS'**
**APPLICATION FOR AUTHORITY TO RETAIN AND EMPLOY**
**LATHAM & WATKINS LLP AS SPECIAL COUNSEL TO**
**THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

I, John J. Sikora Jr., hereby declare that the following statements are true and

correct to the best of my knowledge after due inquiry as described herein:

1.    I am a partner of the law firm of Latham & Watkins LLP

("L&W"), an international law firm with offices across the United States, Europe, and Asia.  I am

a member of L&W's White Collar Defense & Investigations practice group and will lead L&W's

representation of the Debtors as special counsel in connection with the L&W Services (as defined

below).  I am admitted, practicing, and a member in good standing of the bar of the State of Illinois.

2.    I submit this declaration (this "Declaration") in support of the application

(the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the

"Debtors") for authority to retain L&W as the Debtors' special counsel, which is filed

contemporaneously herewith.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Application.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other L&W professionals or paraprofessionals, or my review of relevant documents.  To the extent any information disclosed herein requires amendment or modification as additional party-in-interest information becomes available to L&W, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

### **Scope of Services to Be Provided**

4.      Prior to the Petition Date, the Debtors retained L&W to represent the Debtors in connection with various inquiries and investigations by federal and state regulators (collectively, the "Investigations").  In particular, L&W's services include (a) advising the Debtors as to their rights and obligations with respect to the Investigations; (b) communicating with the regulators on the Debtors' behalf; (c) analyzing and responding to document and information requests from regulators; (d) researching and analyzing various legal issues related to the Investigations; and (e) providing advice on certain regulatory questions and issues that may arise in the normal course of business (collectively, the "L&W Services").

5.      As discussed below, L&W has extensive experience representing clients in connection with government investigations, and over the past year, L&W has gained extensive institutional knowledge regarding the Debtors and the Investigations.  L&W's continued services are necessary to ensure a smooth and efficient process with the regulators leading the Investigations.

6.      The L&W Services will be provided to the Debtors in accordance with the engagement letter dated September 6, 2021 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit 1.

7.      L&W will not serve as the Debtors' general or special counsel on matters not set forth in this Application, and will not advise the Debtors or their estates with respect to their duties under the Bankruptcy Code.  As noted below, L&W will coordinate with the Debtors' other advisors to avoid duplication of services.

## L&W's Qualifications

8.      I understand that the Debtors selected L&W to provide the L&W Services due to the firm's reputation and expertise in government investigations.  L&W's investigations practice has broad experience in a wide variety of regulatory matters, combining specific regulatory knowledge with procedural experience, and the L&W team representing the Debtors includes regulatory practitioners, career defense advocates, and former government lawyers.  These lawyers regularly advise clients in connection with high stakes investigations.

9.      The Investigations relate primarily to compliance with federal and state securities laws and involve issues with which L&W has extensive experience.  Furthermore, over the past year, L&W has assisted the Debtors in working cooperatively with regulators to respond to information requests and inquiries related to the Investigations.  During this time, L&W has become familiar with the Debtors' business, as well as with the specific factual and legal issues raised in the Investigations.

10.     Accordingly, I believe that L&W is both well qualified and uniquely positioned to represent the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code in connection with the L&W Services.

## L&W's Disclosure Procedures

11.     L&W maintains a master client database as part of its conflict clearance and billing records.  The master client database includes the names of the entities for which any attorney time

charges have been billed since the database was first created (the "Client Database").  The Client

Database includes the names of all current and former clients, the names of the parties who are or

were related or adverse to such current and former clients, and the names of the L&W personnel

who are or were responsible for current or former matters for such clients.  The Client Database

also includes the name of former clients of L&W attorneys while such attorneys were at a prior

firm.  L&W's policy is that no new matter may be accepted or opened within L&W without

completing and submitting to those charged with maintaining the conflict clearance system the

information necessary to check each such matter for conflicts, including the identity of the

prospective client, the name of the matter, adverse parties, and, in some cases, parties related to

the client or to an adverse party.  Accordingly, the database is updated for every new matter

undertaken by L&W.  The accuracy of the system is a function of the completeness and accuracy

of the information submitted by the attorney opening a new matter.

12.    The Debtors provided L&W with a list of persons and entities who potentially have

an interest in these Chapter 11 Cases (the "Parties in Interest List" and such parties, "Parties in

Interest"), which is attached as Appendix 1 hereto.[3]  L&W compared the names of each of the

Parties in Interest to client matters in the Client Database for which professional time was recorded

during the three (3) years prior to the Petition Date.  This inquiry revealed that L&W and certain

of its partners, counsel, and associates have in the past represented, currently represent, and likely

in the future will represent certain Parties in Interest.  Except as set forth herein, it was determined

that all such representations have been in matters unrelated to the Debtors and these Chapter 11

Cases.

---

[3]    The Parties in Interest List reflects information available to the Debtors as of July 7, 2022.  The Debtors
subsequently provided L&W with the names of additional Parties in Interest, which L&W currently is reviewing.
L&W will file a supplemental declaration if and as required as soon as that review has been completed.

13.     Attached as <u>Appendix 2</u> to this Declaration is a list of the Parties in Interest that are current or former clients of L&W or of L&W attorneys while those attorneys were at a prior firm. To the best of my knowledge, after due inquiry, L&Ws representation of the Parties in Interest disclosed on <u>Appendix 2</u> attached hereto concerned matters in which such clients were not adverse to the Debtors or the Debtors' estates with respect to the L&W Services.

14.     Further, of those entities listed on <u>Appendix 2</u> attached hereto, only one entity, Meta Platforms Inc. (formerly Facebook Inc.), accounted for one percent (1%) or more of L&W's total client billings for the twelve (12) months ending June 30, 2022 (on a consolidated basis).  None of the entities represented more than two percent (2%) of L&W's total client billings for such period. Under section 327(e) of the Bankruptcy Code, L&W is not disqualified from acting as the Debtors' special counsel merely because it represents Parties in Interest in matters unrelated to the L&W Services.

A.     **Cryptocurrency Market Participants**

15.     The inquiry described above also revealed that L&W currently represents Russell Crumpler and Christopher Farmer as joint liquidators for Three Arrows Capital, Ltd. ("<u>3AC</u>") in 3AC's liquidation proceeding and global asset recovery, including 3AC's chapter 15 proceeding in this Court.  The Debtors have a $40 million claim against 3AC.  L&W has not and will not represent Celsius in connection with the 3AC liquidation proceeding and global asset recovery, nor will L&W represent the 3AC joint liquidators in any matter adverse to the Debtors.

16.     Additionally, L&W currently represents Blockchain Access UK Ltd. "<u>Blockchain</u>") in connection with the 3AC liquidation proceeding and certain related matters. L&W has not and will not represent Celsius in connection with these matters, nor will L&W represent Blockchain in any matter adverse to the Debtors.

**B.      LW Attorneys: Customers and Clerkship**

17.      The large majority of the Debtors' creditors are individual customers, including certain L&W attorneys.  One such L&W attorney previously provided services to the Debtors on matters unrelated to the L&W Services.  No L&W attorneys who are customers of the Debtors have provided or will provide the L&W Services to the Debtors.

18.      To the best of my knowledge, after due inquiry, none of the matters described above represents an interest adverse to the Debtors or the Debtors' estates with respect to the L&W Services.  Moreover, because these matters are unrelated to the L&W Services, L&W's retention under section 327(e) of the Bankruptcy Code is proper, notwithstanding these matters.

19.      Further, TJ Li, an L&W associate, was a law clerk for Chief Judge Martin Glenn from August 2018 to August 2019.  Mr. Li began working at L&W in August 2020 and will not provide services to the Debtors during the Chapter 11 Cases.  I do not believe that Mr. Li's work for the Court precludes L&W from meeting the standard under section 327(e) of the Bankruptcy Code.

20.      To the best of my knowledge, other than as set forth herein, no partner, counsel, or associate of L&W is a relative of, or has been connected with, any United States Bankruptcy Judge for the Southern District of New York, the United States Trustee, the Assistant United States Trustee for the Southern District of New York, the attorney for the United States Trustee assigned to these Chapter 11 Cases, or any other employee of the United States Trustee.  Accordingly, I understand that the proposed engagement of L&W is not prohibited by or improper under Bankruptcy Rule 5002(a).

21.      Based on the review described above, and to the best of my knowledge and based upon the information available to me, L&W neither represents nor holds an interest adverse to the

interests of the Debtors or their estates with respect to the matters on which L&W is to be employed.

22.    L&W will periodically review its files during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, L&W will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).  In that regard, L&W intends to disclose clients in the capacity that they first appear in a conflicts search.  For example, if a client has already been disclosed in this Declaration in one capacity, and the client appears in a subsequent conflicts search in a different capacity, then L&W does not intend to disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

### L&W's Rates and Billing Practices

23.    L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. The current hourly rates for the L&W Services range as follows:

| Billing Category | Rates |
| --- | --- |
| Partners | $1,265 to $2,075 |
| Counsel | $1,210 to $1,720 |
| Associates | $655 to $1,300 |
| Professional Staff | $190 to $965 |
| Paralegals | $270 to $600 |

24.    L&W's hourly rates are set at a level designed to compensate L&W fairly for the work of its attorneys, paralegals, and professional staff and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned.  L&W's proposed hourly rates reflect that matters in which it is involved are typically national in scope and typically

involve great complexity, high stakes, and significant time pressures. These hourly rates are subject to periodic adjustments to reflect economic and other conditions (which adjustments will be reflected in the first L&W fee application following such adjustments) and are consistent with the rates charged elsewhere. [4]

25.     Consistent with L&W's policy with respect to its other clients, L&W will continue to seek reimbursement for expenses and other charges incurred in the rendition of services. It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.

26.     L&W will apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in accordance with Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "Fee Guidelines"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

27.     L&W will use its best efforts to avoid duplicating services rendered by the Debtors' other retained professionals.

---

[4]     L&W's billing rates are usually revised annually, on or around January 1 of each year, as is customary with L&W's policies. Accordingly, L&W's billing rates will increase on January 1, 2023. As set forth in the Proposed Order, L&W will provide ten business-days' notice to the Debtors, the United States Trustee, and any official committee appointed or designated in these Chapter 11 Cases before implementing any periodic increases, and will file any such notice with the Court.

28.     Neither L&W nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Chapter 11 Cases, other than as permitted by the Bankruptcy Code.  L&W has agreed not to share compensation received in connection with the Chapter 11 Cases with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing of compensation among L&W's partners.

29.     L&W will provide notice to the Debtors, the Office of the United States Trustee for the Southern District of New York and the official committee of unsecured creditors appointed in the Chapter 11 Cases of any change in L&W's hourly rates.  L&W will also file a notice of any such change in hourly rates with the Court.  In addition L&W will charge for expenses in a manner and at rates consistent with charges made generally to its other clients and in accordance with the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court.

## Compensation Received by L&W from the Debtors

30.     As of the Petition Date, the Debtors did not owe L&W any amounts for legal services rendered before the Petition Date and L&W is not a creditor of the Debtors.

31.     As set forth in the chart below, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $4,075,894.23 for services performed and expenses incurred, and to be performed and incurred.  As of the Petition Date, L&W has a remaining credit balance in favor of the Debtors in the amount of approximately $412,629.47 (the "Fee Advance").  L&W intends to apply the Fee Advance to any outstanding amounts relating to the period prior to the Petition Date that were not processed through L&W's system as of the Petition Date and will seek the approval of this Court prior to applying any portion of the remaining Fee Advance to postpetition fees and expenses.

9

| Transaction | Invoice Date | Payment Date | Amount Invoiced | Date Range of Services | Amount Paid | Fee Advance Balance |
|---|---|---|---|---|---|---|
| Invoice | 6/15/22 | | $341,898.85 | 12/2/21 - 3/24/22 | | |
| Invoice | 6/15/22 | | $89,179.63 | 12/1/21 - 3/11/22 | | |
| Invoice | 6/15/22 | | $728,744.27 | 12/1/21 - 3/3/22 | | |
| Invoice | 6/15/22 | | $101,629.92 | 12/8/21 - 2/17/22 | | |
| Invoice | 6/15/22 | | $2,052.05 | 3/15/22 - 3/28/22 | | |
| Invoice | 6/15/22 | | $14,898.80 | 2/7/22 - 3/31/22 | | |
| Invoice | 6/15/22 | | $64,547.88 | 1/11/22 - 3/31/22 | | |
| Invoice | 6/15/22 | | $17,628.45 | 3/4/22 - 3/31/22 | | |
| Payment | | 6/17/22 | | | $341,898.85 | |
| Payment | | 6/17/22 | | | $89,179.63 | |
| Payment | | 6/17/22 | | | $728,744.27 | |
| Payment | | 6/17/22 | | | $101,629.92 | |
| Payment | | 6/17/22 | | | $2,052.05 | |
| Payment | | 6/17/22 | | | $14,898.80 | |
| Payment | | 6/17/22 | | | $64,547.88 | |
| Payment | | 6/17/22 | | | $17,628.45 | |
| Advance Payment | | 6/23/22 | | | $750,000.00 | $750,000.00 |
| Invoice | 6/24/22 | | $750,000.00 | 10/1/21 - 6/17/22 | Fee Advance applied | $0.00 |
| Advance Payment | | 6/27/22 | | | $765,314.38 | $765,314.38 |
| Advance Payment | | 6/27/22 | | | $600,000.00 | $1,365,314.38 |
| Invoice | 6/30/22 | | $765,314.38 | 10/3/21 - 5/24/22 | Fee Advance applied | $600,000.00 |
| Invoice | 6/30/22 | | $253,745.64 | 6/17/22 - 6/29/22 | Fee Advance applied | $346,254.36 |
| Invoice | 7/11/22 | | $346,254.36 | 6/2/22 - 7/8/22 | Fee Advance applied | $0.00 |
| Advance Payment | | 7/11/22 | | | $253,745.64 | $253,745.64 |
| Advance Payment | | 7/13/22 | | | $346,254.36 | $600,000.00 |
| Invoice | 7/13/22 | | $187,370.53 | 5/25/22 – 7/13/22 | Fee Advance applied | $412,629.47 |

32.    L&W requests that the Fee Advance be treated as an evergreen retainer and be held by L&W as security throughout these Chapter 11 Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis.

### Statement Regarding U.S. Trustee Guidelines

33.    The following information is provided in response to the request for additional information set forth in Paragraph D.1 of the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*:

1.    **Question:**    Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response:    No.

2.    **Question:**    Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response:    No.

3.    **Question:**    If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Response:    In the 12 months leading up to the Petition Date, L&W used the following rates for services rendered on behalf of the Debtors for matters billed in USD: $1,180 to $2,385 for partners; $1,150 to $1,845 for counsel; $615 to $1,555 for associates; $345 to $1,155 for professional staff; and $250 to $635 for paralegals. In the 12 months leading up to the Petition Date, L&W used the following rates for services rendered on behalf of the Debtors for matters billed in GBP: £775 to £1,390 for partners; £740 to £1,085 for counsel; £420 to £870 for associates; £200 to £715 for professional

staff; and £155 to £390 for paralegals.  All material financial terms have remained unchanged since the prepetition period.

4.        **Question**:        Has your client approved your prospective budget and staffing plan, and, if so for what budget period?

Response:    L&W has provided the Debtors with a prospective budget and staffing plan setting forth the types of timekeepers, numbers thereof, and applicable hourly rates it expects during the Chapter 11 Cases, which have been approved by the Debtors.  The budget and staffing plan cover the period from the Petition Date to October 31, 2022.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 4th day of August, 2022.

/s/ John J. Sikora Jr.
John J. Sikora Jr.

## Exhibit 1

**Engagement Letter**

DocuSign Envelope ID: 5CC82322-FB3C-4D53-80F1-FE047070B882

# LATHAM & WATKINS

99 Bishopsgate
London EC2M 3XF
United Kingdom
Tel: +44(0)20.7710.1000  Fax: +44(0)20.7374.4460
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

6ᵗʰ September, 2021

Celsius Network Limited
35 Great St. Helena's
London
United Kingdom
EC3A 6AP

For attention of: Roni Cohen

Dear Roni,

**Engagement for the provision of legal services**

We are pleased to confirm the instructions of Celsius Network Limited as a client of Latham & Watkins (London) LLP.  This letter (the "**Engagement Letter**"), along with the attached Terms of Engagement as revised from time to time (the "**Terms**"),confirms our discussions regarding your engagement of our firm to provide certain legal services ("the **Engagement**").  The Engagement Letter and the Terms, together, form the basis on which we agree to act for you.  If there is any conflict between the Engagement Letter and the Terms, the Engagement Letter shall prevail.

1.    **LEGAL SERVICES**

You have asked us to advise you in connection with various matters on an ongoing basis from time to time.

The scope of our work may evolve in accordance with discussions or correspondence with you from time to time.  To the extent that additional services are requested by you and agreed to by us, the Engagement Letter and the Terms will apply to such additional services, unless superseded by another written agreement between us.  In each case, before we can agree to provide additional services, we may need to perform a conflicts check and confirm our ability to provide these services.  Our representation is limited to the specific services that you request us, and that we have agreed, to undertake.

We agree that every new matter we undertake under this Engagement Letter will be agreed with Celsius Network Limited.

2.    **IDENTITY OF THE CLIENT**

Our sole client in the Engagement shall be Celsius Network Limited.  We do not represent and will not be deemed to have any relationship with any of Celsius Network Limited's current or future parents, subsidiaries, shareholders, members, partners, employees, directors, venturers or other affiliates or constituents solely on account of our representation of Celsius Network Limited in this matter or any matters we agree in the future to accept.  We are distinguishing between the entities and persons who are and are not our clients so that it is clearly understood to whom our various duties are owed.  We shall have those duties to our clients as set out herein,

Latham & Watkins is the business name of Latham & Watkins (London) LLP, a registered limited liability partnership organised under the laws of New York and authorised and regulated by the Solicitors Regulation Authority (SRA No. 203820).  A list of the names of the partners of Latham & Watkins (London) LLP is open to inspection at its principal place of business, 99 Bishopsgate, London EC2M 3XF, and such persons are either solicitors, registered foreign lawyers, European lawyers or managers authorised by the SRA.  We are affiliated with the firm Latham & Watkins LLP, a limited liability partnership organised under the laws of Delaware.

EU-DOCS\29912861.1

DocuSign Envelope ID: 5CC82322-EB3C-4D53-B0F1-EFD470708882
6th September, 2021

**LATHAM & WATKINS**

but not to other entities or persons even if they are affiliated entities or constituents of Celsius Network Limited.  If we subsequently agree to represent any affiliated entities or constituents of Celsius Network Limited, we will need to perform a conflicts check and either execute separate engagement letters with them or confirm the details of the representation in writing. If, however, we take on work for such affiliated entities or constituents without such a separate engagement letter or confirmation, the Engagement Letter (including, but not limited to, terms governing conflicts of interest and arbitration of disputes) and the Terms will apply to that representation.

To allow us to conduct a conflicts check, you represent that you have identified to us all persons and entities that are or are expected to become involved in this matter.  You also agree to notify us if you become aware of any other persons or entities that are or may become involved in this matter.

You confirm that, as far as is permissible in law and except where otherwise agreed, we shall not be liable to any third party, including other members of your client group or otherwise, which relies on the advice provided under the Engagement.  You agree that you will not pass on the advice provided to any third party without first obtaining our consent.

## 3.    VERIFICATION OF IDENTITY

The law requires us to carry out a formal check of the identity of all new clients.  We will be in touch separately if we need your assistance in obtaining verification documentation.

In order to verify identity, it is sometimes helpful for us to make use of external identification service providers.  You agree that you will meet the cost of any charges incurred in this regard.

Please also note in this regard the section on money laundering and the proceeds of crime in the Terms.  If you would like to discuss the implications of this section with us, please let us know.

## 4.    OUR FIRM

Latham & Watkins (London) LLP is a registered limited liability partnership organised under the laws of New York, authorised and regulated by the Solicitors Regulation Authority (SRA No. 203820) and registered with the Law Society of England and Wales as a multinational partnership, with its principal place of business at 99 Bishopsgate, London EC2M 3XF ("**Latham & Watkins (London) LLP**", and where referred to in the Engagement Letter and the Terms together with Latham & Watkins LLP and its other affiliates, "we", "our", "us" or "our firm").  "Latham & Watkins" is the business name of Latham & Watkins (London) LLP.

Latham & Watkins (London) LLP and its affiliates operate in a number of jurisdictions around the world that have different legal and professional requirements relating to the practice of law. At the date of the Engagement Letter, our firm's operations in various jurisdictions are conducted through different affiliates registered in the United States, France, Hong Kong, Japan, Singapore and the Netherlands. Work done in Saudi Arabia will be carried out through a cooperating law practice registered locally.  These distinctions will not impact on the provision of legal services by our firm, although invoices may be issued to you through an affiliate.

## 5.    PERSONS RESPONSIBLE

I shall be the partner with responsibility for the Engagement.  My direct dial number is +44.20.7710.1884 and my email address is Edward.Barnett@lw.com.  My mobile telephone number is +44.776.767.4241.  I shall draw on the specialist skills of other parts of our firm

**LATHAM & WATKINS**

where appropriate but your day to day contacts will be myself and Stuart Davis. Stuart's direct dial is +44.20.7710.1821 and his email address is Stuart.Davis@lw.com.

It will be my responsibility to ensure internal co-ordination and consistency of approach. As far as possible we shall avoid changes in personnel and I shall let you know, if appropriate, if any significant changes become necessary.

We understand that only Roni Cohen is authorised to, and will be primarily responsible for, instructing us on any new matters. Unless you inform us of any change, we will assume that this remains the case and that you have authority on behalf of Celsius Network Limited to incur costs on its behalf. As an individual matter progresses, we may need to act on instructions from other people from whom we consider it is reasonable to take instructions in order to progress the matter within the timescales set.

6.    **RATES, FEES AND CHARGES**

Our fees are based primarily on the amount of time spent by our lawyers and paralegals on your behalf. Each lawyer and paralegal assigned to this matter will have an hourly billing rate, and the rate multiplied by the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee for each particular matter.

Our lawyers' billing rates applicable to the Engagement currently range from US$ 590 per hour to US$ 1,895 per hour, depending upon the seniority and expertise of the lawyer involved. For paralegal, trainee and research support specialist time, our rates will range from USD$ 180 to US$ 930 per hour.

In addition to fees, you agree to pay for other charges, as set out in detail in the Terms. The fees and charges we bill to you are your responsibility whether or not a third party (such as an insurer) has agreed to pay them and whether or not you are entitled to recover any part of them from a third party (such as following success in litigation).

It is important that you understand our charges. We will act reasonably and prudently in incurring them.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times during the course of our representation. Following any such revision, our new rates and charges will be applied to and shown on your account, and the Engagement Letter constitutes written notice to you of our right to make such revisions.

We intend to provide invoices to you on a monthly basis. Our invoices represent fees for the work we have done, together with other charges incurred, during the period covered by the invoice. They will show our time logged in tenth-of-an-hour increments and will clearly set out and separate fees from our other charges. Invoices and VAT invoices will be addressed to the corporate vehicle to which we have provided legal services. Payment of our invoices is due promptly upon receipt. Our rates are based on our receiving payment within 30 days of the invoice date.

Where we are reasonably able to do so, we shall advise you of our fee estimate for each particular matter under the Engagement.

We reserve the right to charge you for the time and expense involved in responding to any data subject access request, under the General Data Protection Regulation or any national legislation including the Data Protection Act 2018 (as amended or replaced from time to time) or any regulations made under it, received by us from a third party in connection with any matter on which we are or were acting for you. This obligation will survive the termination of this agreement and our relationship with you.

DocuSign Envelope ID: 5CC82322-FB3C-4D53-80F1-FE047070B882

6th September, 2021

**LATHAM&WATKINS**

Where fees are incurred in a foreign currency we will use a spot rate to convert and itemize the fees on our invoice in the invoice currency. We will bear the risk of any change in the exchange rate, between the point of time when the invoice is raised and when the payment becomes due. This means that if the change in rate results in a loss, we will cover this and you will not be required to make any further payments in respect of our invoice. If the change in rate results in a gain, we will retain this. You confirm your consent to this arrangement and to us bearing the risk of any loss or gain. Please contact us if you would like to discuss this further, receive details of the amount in question, or, alternatively, bear the risk of any loss or gain yourself. We reserve the right to pay to you or seek reimbursement of any net gain or loss in excess of £100 in respect of any invoiced amount to which a spot rate was applied.

Notwithstanding any estimate given to you, the final bill will be a product of the amount of time our fee-earners spend on the transaction and our agreed fee rates, or will be calculated in accordance with the Solicitors Act and/or the Solicitors' (Non-Contentious Business) Remuneration Order 2009 or the provisions of Part 44 of the Civil Procedure Rules. In that respect, note that our estimates are neither intended to be a cap nor a target billing figure. Therefore, if significant further work is required in addition to that currently envisaged or if the timetable is extended significantly, our fees will be greater than the indicative estimate. Should it become apparent at any time that significant further work will be required, we shall of course let you know.

Estimates are given in good faith, but are non-binding and provide an indication only of the costs that might be incurred in relation to this particular matter. Any steps referred to in any estimate given are the minimum required and we reserve the right to amend or update any estimate given as necessary going forward. Note that legal work, by its very nature, is difficult to predict and is never risk-free and any estimate given should thus be read with that in mind. Any estimate given is based on the information available and supplied to us at the present point in time.

7.      **STANDARD OF CARE**

In carrying out our work we will owe Celsius Network Limited the normal duties owed by a solicitor to his client, including a duty of care and a duty of confidentiality. A duty of care is owed to Celsius Network Limited and not to anyone else.

It is my responsibility to ensure that we work for you as efficiently and as cost effectively as possible. In order to fulfil our task, it will be necessary to obtain a significant amount of information from you and your other professional advisers. To enable the work to be carried out as efficiently as possible, you should ensure that all information provided is to the best of your knowledge complete, accurate and up to date, and is supplied as quickly as possible. We shall in any event have to rely on the completeness and accuracy of the information you give us. You should notify us as soon as possible of any changes or variations to that information which may arise after the date it is passed to us, as well as of any new circumstances which might be relevant to the work we are undertaking. You permit the transfer of information relating to you between the offices of our firm.

We shall do our best to ensure that the matters under the Engagement progress successfully. If you have any questions about what we are doing on a particular matter, please speak to me at any time. We are committed to high quality advice and client care. If you are in any way dissatisfied with our services, or about your bill, or have any suggestions as to how our service to you could be improved, please contact me in the first instance. If you have any further concerns then please see the complaints section in the Terms for further contact details and guidance about how to make a complaint.

DocuSign Envelope ID: 5CC82322-FB3C-4D53-80F1-FE047070B882

6th September, 2021

LATHAM&WATKINS

Please also be aware that our firm has internal ethics and professional responsibility counsel, who advise our firm's lawyers in relation to their ethical, professional and legal duties. From time to time, the lawyers working on your matter may consult these counsel. You acknowledge any such consultation is protected by our firm's own solicitor-client privilege, and is not subject to discovery. You also agree that such communications are the property of our firm.

8.      **CONFLICTS OF INTEREST AND CONFIDENTIAL INFORMATION**

While we are representing you in this matter, we will have no other role in this matter for another party without your consent or save as set out elsewhere in the Engagement Letter. As with any other client and any other matter, you will have our complete loyalty with respect to this matter. Our representation will be in accordance with the Solicitors Regulation Authority Code of Conduct for Firms 2019 (the "SRA Code") and any other applicable rules or laws.

We note that our firm is an international law firm with numerous lawyers and offices in many countries and that we practice in many diverse areas of law. It is possible that during the time we are representing you, some of our current or future clients may ask us to represent them in matters in which you are involved as another party. Furthermore, some of our clients may now or in the future operate in the same lines of business as you do. Both our own prudent business conduct, and the interests of our other clients, call for us to seek to retain the ability to accept matters for all of our clients. We thus ask you in connection with the Engagement to consent in advance to our acceptance of matters (including litigation matters) adverse to Celsius Network Limited (whether such matters are currently pending or arise in the future), provided the matters are not substantially related to any matters we are handling or have handled for you. By entering into this agreement, you consent in advance to such adverse representations. Thus, for example, you agree that we would be able to take on a new lawsuit or transactional matter adverse to Celsius Network Limited for a current or future client at the same time that we are representing Celsius Network Limited, provided the adverse matter is not substantially related to any matters we are handling or have handled for you. This consent also includes being adverse to you in any bankruptcy, regulatory, administrative, legislative or rulemaking proceeding.

In addition, by entering into this agreement you agree that if we represent you in a matter adverse to another person or entity, we may represent such other person or entity on matters not substantially related to our work for you.

We note that, under the SRA Code, in certain circumstances we are able to carry out parallel mandates for one or more clients for a same or related matter, sometimes referred to as "running trees". By signing the Engagement Letter you agree to the use of such parallel mandates provided we use separate teams and put in place appropriate ethics walls that meet the confidentiality requirements set out in the SRA Code.

We agree to keep confidential all the information that we receive in respect of the Engagement. We will not disclose that information to any other person unless you have consented for us to do so, if the information is already in the public domain or we are required to do so by applicable laws or regulations or any court or administrative order or, subject to appropriate terms regarding confidentiality, to service providers providing administrative and similar support services to our firm in the ordinary course of our firm's business. You agree that we may disclose such information to our professional advisers and insurers where they require such information in order to reasonably provide their services to us.

Whilst we owe a duty to disclose any relevant information to you in accordance with our professional obligations, in the ordinary course of business we will owe a duty of confidentiality to other clients. You agree that if we hold confidential information relating to another client that may be relevant to you, we will uphold the duty of confidentiality to that other client in

DocuSign Envelope ID: 5CC82322-FB3C-4DF3-80F1-EF047070B882
6th September, 2021

**LATHAM & WATKINS**

respect of that information, and we will not be able to disclose it to you or use that information for your benefit.  However, we will provide the same standard in relation to your information.  Therefore, if in acting for you, we receive confidential information that is, or becomes, relevant to a matter on which we are asked to advise another client, we will continue to maintain its confidentiality in accordance with the paragraph above and we will not use it for the other client's benefit.  You do, however, agree by entering into this agreement that in these circumstances we can act and continue to act for that other client without obtaining consent from you, except where we are not permitted to do so under any applicable laws or regulations.  In these circumstances we will set up an ethics wall, and you agree that we are able to do so without your consent provided we meet the strict confidentiality obligations required of our firm.

You should feel completely free to take separate legal advice concerning these matters and we encourage you to do so.  By signing the Engagement Letter, you acknowledge that you have had an opportunity to consult with other counsel.

9.      **PROFESSIONAL CONDUCT**

The London office of Latham & Watkins (London) LLP is primarily staffed by English qualified lawyers, dual qualified lawyers and other lawyers who are qualified only in other jurisdictions (primarily the United States).  You agree that as this instruction will primarily be run from our London office, we shall conduct the matter in accordance with the rules, principles and guidelines of the Law Society of England and Wales and the Solicitors Regulation Authority irrespective of the jurisdiction of qualification of our lawyers engaged in this assignment.  In particular, we shall apply the SRA Code for the purposes of determining conflicts of interest.

10.     **LIMITATION OF LIABILITY**

Latham & Watkins (London) LLP is a registered limited liability partnership organised under the laws of the State of New York.  Similar to other corporate forms of limited liability business organisation, the limited liability partnership form generally limits the liability of Latham & Watkins (London) LLP to the capital invested in, and assets of Latham & Watkins (London) LLP against claims arising from services performed by Latham & Watkins (London) LLP.

 Please refer to the section in the Terms headed "Liability of Latham & Watkins (London) LLP" for further information as to the limitations on our liability in respect of the Engagement.  Please specifically note that Latham & Watkins (London) LLP is liable for legal services provided by its partners, consultants and employees and that no individual has or will have any personal responsibility to you for the legal services provided under the Engagement.

If Latham & Watkins (London) LLP is jointly liable with another person, our liability shall be reduced to the extent of any contribution which we would otherwise have been entitled to recover from any other adviser but which we are unable to recover as a result of you having agreed a limitation of liability with that other adviser.  Nothing in the Engagement Letter or the Terms is intended to, or shall be interpreted as, limiting our liability in any jurisdiction which prohibits such a restriction or limitation of liability.

11.     **GOVERNING LAW AND ARBITRATION**

The Engagement Letter and the Terms, and any non-contractual obligations arising out of or related or connected to the Engagement, are governed by and are to be interpreted in accordance with English law.

DocuSign Envelope ID: 5CC82322-FB3C-4D53-80F1-FE047070B883
6th September, 2021

**LATHAM&WATKINS**

Subject to your right to have recourse to the Legal Ombudsman and/or to apply to court under Part III of the Solicitors Act 1974, any dispute, claim, difference or controversy arising out of, relating to or having any connection with the Engagement Letter and the Terms, including any dispute as to their existence, validity, interpretation, performance, breach or termination or the consequences of their nullity and any dispute relating to any non-contractual obligations arising out of or in connection with them, shall be referred to and finally resolved by arbitration under the LCIA Arbitration Rules (the "**Rules**").  The Rules are incorporated by reference into the Engagement Letter.  The number of arbitrators shall be three.  Two of the arbitrators shall be nominated by the respective parties and the third, who shall be the presiding arbitrator, shall be nominated by the two party nominated arbitrators within 30 days of the last of their nominations.  If there is more than one claimant party and/or more than one respondent party, then the claimant parties together and the respondent parties together shall each nominate one arbitrator.  In the event that the multiple claimants, the multiple respondents or the party-nominated arbitrators fail to nominate an arbitrator, the relevant arbitrator(s) shall instead be selected and appointed by the LCIA Court who shall designate one of them as the presiding arbitrator.  The seat (legal place) of arbitration shall be London, England.  The language to be used in the arbitral proceedings shall be English.

The parties and the arbitral tribunal shall keep confidential the existence and substance of any dispute and the arbitration, the materials used and created for the arbitration, and the awards and decisions of the arbitral tribunal, unless that information is already in the public domain (otherwise than through a breach of this paragraph or any other confidentiality obligation between you and us) or if that information is required to be disclosed: (a) by applicable laws or regulations; (b) by any of the parties to their professional advisers or insurers where they require that information to provide their services to them; or (c) to protect or pursue a legal right or to enforce or challenge an award in legal proceedings.

12.    **ENTIRE AGREEMENT AND CONCLUSION**

You and we understand that the Engagement Letter together with the Terms constitutes the entire agreement pertaining to your engagement of Latham & Watkins (London) LLP, and that it shall not be modified by any policies, procedures, guidelines or correspondence from you or your representative unless agreed to in writing by Latham & Watkins (London) LLP.

All parties signing the Engagement Letter represent and warrant that they are fully authorised to enter into this agreement, and in the case of signatories agreeing on behalf of organisations, to bind the organisation or organisations to the terms in the Engagement Letter and the Terms.

I look forward to working with you.  If the points set out above and those in the Terms are satisfactory for you, please sign the enclosed copy of the Engagement Letter, where indicated, and return it to me.

Yours faithfully

DocuSign Envelope ID: 5CC82322-FB3C-4D53-90F1-EE047070B882

**6th September, 2021**

**LATHAM&WATKINS**

For and on behalf of
Latham & Watkins (London) LLP

**Encs:   Terms of Engagement**

DocuSign Envelope ID: 5CC82322-EB3C-4D53-80F1-FE047070B882

**6th September, 2021**

## LATHAM&WATKINS

**Approval of Engagement Letter**

Celsius Network Limited agrees to the terms set out in the Engagement Letter (together with the Terms of Engagement), effective as of the date on which Latham & Watkins (London) LLP first provided services to Celsius Network Limited.

Date: ___September 12___, 2021

Signed for and on behalf of

Celsius Network Limited

DocuSigned by:

*Roni Cohen Pavon*

C9BBF4BD9B5D482...

Name:  Roni Cohen Pavon
Title:  Chief Revenue Officer

DocuSign Envelope ID: 5FCC82322-FB3C-4053-80F1-F5D4707088B2

# LATHAM&WATKINS

**TERMS OF ENGAGEMENT**

These Terms of Engagement (the "**Terms**") will be revised from time to time. In those circumstances, a replacement copy will be sent to you, and the revised Terms will apply with effect from 4 weeks from the date you receive them (except to the extent otherwise agreed in writing). You are free to terminate the Engagement between us if you do not accept the revised Terms. Capitalised words in the Terms shall have the same meaning as in the Engagement Letter unless otherwise defined.

**1.    Instructions**

Notwithstanding that a limited number of persons may be named in the Engagement Letter, we will assume, unless you instruct us to the contrary, that any of your directors or employees who gives us instructions is authorised to do so and that we may act on instructions given orally. Where appropriate we may be required to verify the identity of such persons in accordance with our professional obligations under prevailing client identification procedures.

**2.    Our responsibilities and liabilities**

Our responsibility in relation to the Engagement is only to the particular client who gives us instructions. Our firm shall not be under any duty to, nor have any responsibility towards, any other person in connection with any matter (unless that person is also a client of our firm in relation to such matter), even if the objective of the client's instructions is to confer a benefit upon such a person.

You agree that you will inform us if you agree, or are asked to agree, to limit the liability of another of your advisers in connection with any matter in respect of which we are also instructed.

**3.    Financial Services and Markets Act 2000**

We are not authorised under the Financial Services and Markets Act 2000 ("**FSMA**") by the Financial Conduct Authority. We are regulated by the Solicitors Regulation Authority, including in relation to our carrying on of any "exempt regulated activities" under the FSMA. We are permitted to carry on a limited range of activities relating to investments where an exemption under the FSMA applies, including regulated activities which may reasonably be regarded as a necessary part of our legal services.

Our primary role is as legal adviser and it is not part of our function to give advice on the commercial merits of entering into investment transactions or exercising investment rights, or to act as a broker or arranger of transactions; the remit of our services is limited to advice on legal issues. When providing our services, we will assume that your decision to consider, discuss or negotiate a proposed investment transaction, and any decision actually to enter into an investment transaction, is made by you solely on the basis of your own assessment of the transaction, and any advice which you may receive from a person authorised under the FSMA.

Nothing we write or say should be construed as an invitation or inducement to engage in investment activity nor will we communicate any such invitation or inducement on your behalf.

**4.    Insurance Distribution Activity**

We are not authorised by the Financial Conduct Authority. However, Latham & Watkins (London) LLP is included on the Register provided by the Financial Conduct Authority so that it can carry on insurance distribution activity, which is broadly the advising on, selling and administration of insurance contracts. This part of our business, including arrangements for complaints or redress if something goes wrong, is regulated by Solicitors Regulation Authority. The register can be accessed via the Financial Conduct Authority website at www.fca.org.uk/register.

If we provide a service which includes the carrying on of an insurance distribution activity, we will do so as an ancillary insurance intermediary. However, where we do carry on insurance distribution activities, ordinarily these are limited to arranging contracts of insurance.

We do not and cannot manufacture insurance products. We do not provide a personal recommendation in respect of an insurance product. When engaging in insurance distribution, we typically act only on behalf of our client, and not the insurer. Neither we nor any insurance company has any voting rights or capital interest in the other. Our complaints procedure is on our website and set out in these terms. We do not accept any fee or commission from any third party for our work relating to insurance distribution.

**5.    Fees**

Fee rates will be reviewed at least annually. Fees estimates or quotations are exclusive of VAT, similar taxes and other charges. Any estimates are given in good faith, but unless otherwise agreed, fees may be higher or lower than estimates given.

Unless otherwise agreed, the fees for our work will be calculated as provided for in the Solicitors Act 1974 and/or the Solicitors' (Non-Contentious Business) Remuneration Order 2009 in relation to non-contentious business, and Part 44 of the Civil Procedure Rules in relation to contentious business, as appropriate, and taking into account our standard hourly rates for partners and staff, which are based on their level of qualification. Unless otherwise agreed, fees for the work of other entities within our firm will be calculated by reference to the time spent.

Should a matter not be carried through to completion then a charge will be made in respect of the work that has already been completed. VAT or similar taxes would be payable on that amount and you would also be billed for other charges incurred.

Where additional staff are required to join the team working for you, they will be charged at equivalent rates to those agreed in respect of relevant individuals of similar experience already working for you, or at the standard rates for those individuals, as appropriate.

In certain circumstances, there may be an expectation that a third party will pay your costs. In the event that such third party does not pay the amount due, you will be required to pay the outstanding costs. If in the course of acting for you or following termination of a retainer, a third party seeks access to documents held by our firm, or seeks to interview any individual in connection with any work done for you, we or they may be required as a matter of law to deal with their request. In such circumstances, we will notify you and seek your instructions if possible, but if it is not practicable to do so, we will proceed on the basis that you are not prepared to waive confidentiality or privilege and that we or they should comply with the request only to the extent we or they are required to do so. You will be responsible for any charges in dealing with any such request.

**6.    Invoice payment terms**

Our invoices are due for payment promptly on receipt. If possible please make payment by way of bank transfer. Bank details appear on our invoices.

Invoices should be paid in the currency in which they are denominated, save with our prior agreement. If bills are not settled in that currency, we reserve the right to ask you to account for any shortfall caused by converting the payment into that currency. If an invoice remains unpaid for more than 30 days, or if you fail within 30 days to meet a request for payment on account of costs and/or charges, we reserve the right to decline to act any further. In such a case, the full amount of work done up to that date will be charged to you.

We reserve the right to charge interest on amounts which are overdue for more than 30 days. Interest will be calculated at an annual rate equivalent to the rate for the time being applied to judgment debts.

**7.    Value Added Tax (or equivalent taxes)**

All rates of charge, quotations or estimates which we give you exclude Value Added Tax (or equivalent taxes), which will be added to our other charges where applicable. Where other charges are incurred in offices outside the UK, any applicable local sales or similar tax will also be added. In considering whether VAT (or equivalent taxes) is applicable, we will need to rely on information provided by you. If, as a result, invoices omit VAT (or equivalent taxes) which is later found to be applicable, you agree to pay the amount of such taxes, including any penalties or interest arising from the initial failure to pay such taxes.

**8.    Other charges**

Our charges will include such items as photocopying and scanning documents (USD 0.10 per page); at-cost expense for large-volume print jobs over 100 pages when formatted in Word or Adobe applications; long-distance and roaming mobile phone charges; use of fee-based research databases (90% of the third party vendor rate or 1.25 times our volume discounted cost depending on the vendor); couriers and air freight charges (1.10 times our volume-discounted cost);

DocuSign Envelope ID: 5CC82322-FB3C-4D53-90F1-FF047070B882

messengers (at third-party vendor rate), travel expenses (business class, unless agreed otherwise, plus reasonable meal and lodging charges); secretarial overtime, meal and transportation costs (for night or weekend work only); word processing charges; postage, at cost; supply costs (for large volume only); and other reasonable costs and expenses. For larger charges, we may ask that invoices be sent directly to you or that advances be provided.

### 9. Copyright

We will retain copyright and knowhow in all documents we draft, but we grant you a royalty free licence to use the documents for your purposes related to the Engagement.

### 10. Counsel and other professionals and agents

If it is agreed that we should instruct outside professionals such as counsel (barristers), foreign lawyers, accountants or other experts or agents on your behalf, you will be responsible for payment of their fees. Counsel's fees will be included in our invoices to you. In the case of other professionals or agents it is likely to be preferable for the contract with them to be entered into directly by you, although we would normally make the necessary arrangements and deal with the professional or agent on your behalf. If, however, you prefer us to enter into any necessary contracts with professionals or agents we shall include their fees in our invoices. Where substantial fees are involved we may ask for a payment on account to be made.

### 11. Payments on account

Money held on account of costs will be held in our client account separately from our funds. This amount may be offset against interim or final invoices. The amount offset will be shown on the face of the invoice. In accordance with Solicitors' Accounts Rules, we are obliged to transfer funds held in our client account on account of costs to our office account within 14 days of raising our invoice and, unless we hear from you to the contrary, we will make such a transfer. We may ask you to make further payments on account of costs from time to time as our work proceeds or once this amount has been extinguished. Monies held on client account will be credited with interest in accordance with our interest policy. A copy of our interest policy is available on request.

We expect you to bear all costs of transmitting payments on account to us. Payments should therefore be made gross of all bank or agent's charges.

### 12. Protection of client money

We draw to your attention that should any of your money be placed into our Latham & Watkins (London) LLP client account, for example through payments required in relation to a matter or due to a payment on account structure, if the bank fails then Latham & Watkins (London) LLP will not be liable to repay your money if it is not covered by the Government's Financial Services Compensation Scheme ("**FSCS**") provided we have taken reasonable steps to follow all advice from the FSCS, the Law Society and the Solicitors Regulation Authority as to how to protect client money in client accounts.

### 13. Confidentiality and disclosure to third party authorities

We shall keep your affairs and the information you give us strictly confidential. Likewise, we will not disclose the confidences of any other client to you, even where that information might have some bearing on your interests, and you agree that we are under no obligation to do so.

However, certain laws (for example, those relating to money laundering and tax fraud) give power to authorities such as the police or tax authorities to inspect client information and take copies of documents. In addition, in specific circumstances, these laws compel us to report information to the authorities even in the absence of a request. It is possible that, at any time, we may be requested by these authorities to provide them with access to documents held by our firm, or to attend interviews with them in connection with the work we have done for you. In the unlikely event that such a situation arises, we shall comply with the request only to the extent that we believe we are bound by law to do so and, insofar as it is practicable, shall notify you of the request or the sharing of information. As part of our service to you, we will do our best to protect your interests in those circumstances.

For the purposes of marketing or publicising that we have advised you, in which event we may identify you by your name and indicate the general nature of such advice and any details which have properly entered the public domain.

We reserve the right to disclose any information to our professional indemnity insurers, advisers or bankers in connection with the operation of our client account

### 14. Data protection

Details of the way in which our firm may use personal information about you and other individuals at your organisation are set out in our Client and Third Party Privacy Notice which can be found on our website at www.lw.com/privacy. We have made a commitment through our Binding Corporate Rules to apply a consistent standard across the firm when collecting, using and managing personal information. If you have any questions about how we use your personal information or wish to exercise your rights, please contact the Global Data Protection Officer at DataPrivacy@lw.com. In the event that the Services we provide require you to transfer personal data from a location in the European Economic Area to Latham & Watkins London, Latham & Watkins London will, at your request, enter into the standard contractual clauses for controller to controller transfers as approved by the European Commission from time to time.

### 15. Commercial communications by email

We constantly attempt to improve our service, and monitor developments in the law and practice. Periodically we may send information about this, including brochures and press releases and invitations to seminars or talks, if we believe that they may be of interest to you. You agree that we may send information of this kind by email to you and others at your organisation with whom we have contact. You can opt out at any time.

### 16. Takeovers

If our services in respect of a matter under the Engagement relate to a transaction within the scope of the English City Code on Takeovers and Mergers, we reserve the right to withdraw, on reasonable notice, from acting for you on that matter if you, or any of your agents or other advisers, fail to comply with the Takeover Code.

### 17. Money laundering and proceeds of crime

Since the beginning of 2002, there have been extensive laws designed to prevent money laundering and/or terrorist financing. Under these laws we have a duty to report transactions which we regard as suspicious. It is important that you are aware of this.

At the outset of receiving instructions it may be necessary for us to ask you a series of questions regarding your identity. Where beneficial ownership is involved, we will need to identify the individual who beneficially owns or controls the client on whose behalf the transaction is being conducted. Even if you are an existing client and we have already established your identity and address, we may need to update our records by requiring further evidence. We are obliged by law to undertake this level of enquiry and follow certain procedures, and we hope you will understand this.

If the matter on which you are instructing us involves the movement of money or other property through the firm, either directly or through another party, we have to be satisfied that the relevant transaction is legitimate. Consequently we may need to ask you additional questions, including questions as to the source of relevant funds.

Furthermore, the Proceeds of Crime Act 2002 (the "**Act**") creates a number of offences relating to the proceeds of crime of which you should be aware when you instruct us. Criminal property is widely defined in the Act, and constitutes monies/property/assets which have accumulated as a result of any crime. These include, for example, monies (however low in value) saved as a result of dishonest tax evasion.

If we become aware or suspect the existence of the proceeds of crime in the course of acting for you (whether from you or from any other person), we may have to report the irregularity to the National Crime Agency ("**NCA**"). In those circumstances, the NCA may withhold permission for us to continue with the transaction for a period of time. You should also know that the NCA can pass the information received to any relevant body such as the HM Revenue & Customs ("**HMRC**") and an HMRC investigation and/or criminal proceedings may take place at any time in the future.

It follows from the above that if you have any concerns about irregularities in your financial position you may wish to seek specialist accountancy advice to correct those irregularities. We strongly recommend that you do this before proceeding further. Please note that accountants and banks are also required to comply with the provisions of the Act.

In particular, it is important that you are aware that we may have a legal duty under the Act to report known or suspicious circumstances

DocuSign Envelope ID: 5FCC82322-FB3C-4053-80F1-EE047070B882

without telling you. The obligations which we have under the Act can, in certain limited circumstances, override the duty of solicitor/client confidentiality.

Circumstances may also arise where we approach you in order to seek your permission to report certain matters to the NCA. For instance we may take the view that by proceeding further with your transaction without the requisite permission from the NCA, we may be assisting in the commission of a money laundering offence. In the event that you refuse such permission, we reserve the right to terminate the retainer, and if we do so in these circumstances, you will remain liable for all our fees and expenses incurred up to the date of such termination.

We regret that the law does not allow us to restrict these obligations in any manner.

## 18. Criminal Finances Act 2017 (CFA)

With effect from 30 September 2017, the CFA 2017 creates corporate offences of failure to prevent the facilitation of foreign and UK tax evasion. We have a zero-tolerance approach to tax evasion and the facilitation of tax evasion by anyone who performs services on our behalf and has procedures to prevent such conduct.

You confirm that you will not request or require us to take any action which could constitute facilitation of tax evasion for the purposes of the CFA 2017 and will provide to us any information which we may reasonably request in order to satisfy ourselves of this.

Should we reasonably consider that you are, or that a person associated with us is, seeking to evade tax or facilitate the evasion of tax in connection with the Engagement, then we may terminate the Engagement and/or the relationship with the associated person. You will remain liable for all our fees and expenses incurred up to the date of such termination.

## 19. Risk Matters

We are subject to a number of legal, regulatory and professional obligations in relation to anti-bribery, corruption, money laundering and sanctions in a number of jurisdictions and our client and matter intake policies require that we satisfy ourselves, in each case of our ability to comply with these obligations during the course of each engagement on which we are retained.

In addition, if we are of the opinion that the Engagement puts us at risk of legal liability, alleged breach of the rules of any professional body to which any of our lawyers is subject or exposes us to reputational risk in any jurisdiction, then we may consult with you in good faith with a view to modifying the Engagement so as to mitigate or eliminate the relevant risk.

If following such consultation or attempts by us to consult we consider in good faith that the relevant risk is material and has not been satisfactorily mitigated, then we may terminate the Engagement or any matter under the Engagement (without prejudice to any liability accrued*).*

## 20. Our papers

Our correspondence with you and other documents received from or created for you in the course of the Engagement, including

copies, remain our firm's property. We will, of course, at your request, provide copies of any relevant papers, provided that all bills on the relevant matter have been paid and that, if the copying requested is extensive, you pay the cost of providing copies (including both professional time and document production charges).

## 21. Retention of papers

At the conclusion of a matter, you agree to take possession of all original contracts, share certificates, title deeds, wills and other such important documents and we shall have no further responsibility with regard to such documents. It is impossible for us to store indefinitely all of the papers generated on all of the matters with which we deal, and so we shall have the right to destroy the files and papers relating to this matter at any time after seven years from the date of the conclusion of our representation. In addition, in the event we are holding files of yours for a matter other than one in which we have represented or are representing you, we shall have the right to dispose of such files seven years after we receive them, if you have not claimed them from us prior to that.

## 22. Complaints

Latham & Watkins (London) LLP is committed to high quality advice and client care. If you are in any way dissatisfied with our services, or about your bill, or have any suggestions as to how our service to you could be improved, please contact in the first instance the partner with whom you normally deal. If he or she cannot resolve the matter to your satisfaction please then refer it to the Office Managing Partner (Stephen Kensell) or our Deputy Office Managing Partner (Catherine Drinnan). Their contact details are available from www.lw.com. We have a procedure in place which details how we handle complaints which is available on request. In addition, if for any reason we are unable to resolve any problem between us, you may be entitled to ask the Legal Ombudsman to consider the complaint. The Legal Ombudsman's contact details are available through their website at http://www.legalombudsman.org.uk/. For ease of reference their email address is enquiries@legalombudsman.org.uk and their phone number is 0300 555 0333. Normally, you will need to bring a complaint to the Legal Ombudsman within six months of receiving a written response from us about your complaint. If your complaint is in relation to our bill then there may also be a right to object to the bill by applying to the court for an assessment of the bill under Part III of the Solicitors Act 1974. You are also able to complain to the Solicitors Regulation Authority if you have concerns about the conduct of any employees or partners. You can raise your concerns here: https://www.sra.org.uk/consumers/problems/report-solicitor.page

## 23. Enforcement

Each and every individual partner, employee or consultant (past or present) and affiliate of our firm may directly enforce the provisions of the Terms relating to them including under the Contracts (Rights of Third Parties) Act 1999.

These Terms, other than the paragraphs in respect of Liability of Latham & Watkins

(London) LLP below, may be varied by us without the consent of the third parties referred to in this paragraph.

In the event that any parts of the Terms are held to be invalid, the remainder of the terms and conditions set out herein will remain in full force and effect.

The receipt by you of advice from Latham & Watkins (London) LLP will be deemed to be on the Terms.

## 24. Liability of Latham & Watkins (London) LLP

In respect of the Engagement, Latham & Watkins (London) LLP assumes liability for and is fully responsible for the legal services provided by other entities of our firm and by any individual member, partner, consultant or employee of any such other on their behalf as if such services had been performed and advice given by Latham & Watkins (London) LLP, its members, partners, consultants or employees.

Latham & Watkins (London) LLP assumes liability for and is fully and exclusively responsible for the legal services provided by its individual members, partners, consultants and employees on its behalf and no individual accepts any personal obligations towards you or any other client in respect of such services.

It is a fundamental provision of the Terms that you agree that no individual or affiliate of our firm has or will have any personal responsibility to you for the legal services provided by them on behalf of Latham & Watkins (London) LLP or other affiliates of our firm, and you agree not to bring a claim against such individuals in respect of those services.

Latham & Watkins (London) LLP accepts liability for the legal services provided by such individuals on its behalf or on behalf of other entities of our firm as if the Terms did not exclude or limit any personal responsibility that they might otherwise have towards you in respect of such services. We refer to the Enforcement section directly above which entitles individuals and affiliates of our firm to enforce these rights under the Contracts (Rights of Third Parties) Act 1999.

Nothing in the Terms is intended to exclude or limit any liability to the extent that Latham & Watkins (London) LLP, other entities of our firm, or, as the case may be, any affiliates of our firm or individual is precluded or restricted from excluding or limiting such liability under any legal requirements (such as applicable laws precluding or restricting exclusions or limitations - whether generally or for specific matters such as death, personal injury and fraud) or any rules of professional conduct (such as applicable rules precluding or restricting exclusions or limitations for wilful disregard of professional conduct rules; or precluding or restricting any limitation or exclusion of liability) applicable to it, him or her in the jurisdiction in which it, or he or she, practises as a lawyer.

If notwithstanding the above any individual incurs any personal liability to you in connection with services provided to you, you agree that the liability of each such individual shall be limited to the fullest extent permitted by any legal requirements or any rules of professional conduct applicable to him or her

DocuSign Envelope ID: 5FCC82322-FB3C-4D53-80F1-EE047070B882

in the jurisdiction in which he or she practises as a lawyer.

**25. Third party rights**

The Engagement Letter and the Terms are not intended to and do not confer any right on a third party under the Contracts (Rights of Third Parties) Act 1999, except as may be otherwise specifically provided.

**26. Governing law**

The Engagement Letter and the Terms, and any non-contractual obligations arising out of or related or connected to the Engagement, are governed by and are to be interpreted in accordance with English law.



Latham & Watkins is the business name of Latham & Watkins (London) LLP, a registered limited liability partnership organised under the laws of New York and authorised and regulated by the Solicitors Regulation Authority (SRA No. 203820).  A list of the names of the partners of Latham & Watkins (London) LLP is open to inspection at its principal place of business, 99 Bishopsgate, London EC2M 3XF, and such persons are either solicitors, registered foreign lawyers or European lawyers.  We are affiliated with the firm Latham & Watkins LLP, a limited liability partnership organised under the laws of Delaware.
EU-DOCS\29912861.1

**<u>Appendix 1</u>**

**Parties in Interest List**

## Appendix 1

## Celsius Network, LLC, et al.  Master List of Potential Parties in Interest[1]

### 1.  Debtors

Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp
Celsius Mining IL Ltd
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network IL Ltd. (Israel)

Celsius Network Limited (UK)
Celsius Network LLC
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
KN Media Manager, LLC

### 2.  Debtors' Known Affiliates

Celsius (AUS) Pty Ltd. (Australia)
Celsius Network (Gibraltar) Limited
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network Inc.
Celsius Services CY Ltd (Cyprus)
GK8 Ltd (Israel)
GK8 UK Limited
GK8 USA LLC

### 3.  Bankruptcy Professionals

Alvarez & Marsal
Centerview Partners
Cole Schotz P.C.
Kirkland & Ellis LLP
Latham & Watkins LLP
Stretto

### 4.  Non-Bankruptcy Advisors

Cryptos Capital
Matsurmura, Miko

---

[1]  This list (and the categories contained herein) are for purposes of a conflicts check and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that otherwise would fall under multiple categories is likely to be listed under only one category.

## 5.  Officers and Directors of Debtors

| | |
|---|---|
| Ayalor, Amir | Dubel, John Stephen |
| Barse, David | Goldstein, Nuke |
| Bentov, Tal | Kleiderman, Shiran |
| Blonstein, Oren | Leon, S. Daniel |
| Bodnar, Guillermo | Mashinsky, Alex |
| Bolger, Rod | Nadkarni, Tushar |
| Carr, Alan Jeffrey | Nathan, Gilbert |
| Cohen-Pavin, Roni | Ramos, Trunshedda W. |
| Denizkurdu, Aslihan | Sunada-Wong, Rodney |
| Deutsch, Ron | Tosi, Laurence Anthony |

## 6.  Significant Equity Holders

| | |
|---|---|
| Advanced Technology Fund XXI LLC | Isaias, Estefano |
| Altshuler ShahamTrusts Ltd | JR Investment Trust |
| Artus Capital GmbH & Co. KGaA | Jubayli, Jad |
| Barse, David | Kazi, Ylan |
| BNK to the Future | Knuth Walsh, Sandra |
| Bui, Dung | Kordomenos, James |
| BullPerks BVI Corp | Lamesh, Lior |
| Caisse de dépôt et placement du Québec | Mauldin, Ahlan L. |
| Carter, William Douglas | Mauldin, Michelle E. |
| CDP Investissements Inc. | Mowry, Michael |
| Connolly, Thomas | Pistey, Robert |
| Craig Barrett Andersen Invest Luxembourg | Remen, Yaron |
| S.A. Spf | Shamai, Shahar |
| Cruz Caceres, Juan | Tether International Ltd |
| European Media Finance Ltd | tokentus Investment AG |
| Fabric Ventures Group Sarl | Tran, Anhminh |
| Gialamas, John | Treutler, Johannes |
| Gumi Cryptos Capital LLC | WestCap Celsius Co-Invest 2021, LLC |
| Heliad Equity PartnersGmbH & Co. KGaA | WestCap Group |
| Hoffman, David | WestCap SOF Celsius 2021 Aggregator, LP |
| Intership Ltd | WestCap SOF II IEQ 2021 Co-Invest, LP |

## 7.  Parties to Pending Legal Matters and Disputes

Bitboy Crypto
Bofur Capital
MS SD IRA LLC
Pharos Fund
Symbolic Capital Partners
Vexil Capital

### 8. Landlords

Algo Adtech
Desks & More
Industrious
New Spanish Ridge
Regus
SJP Properties

### 9. Insurance

Amtrust Underwriters, Inc on behalf of
Associated Industries Insurance Company,
Inc.
ANV Insurance
Atlantic Insurance
Ayalon Insurance Company
Crum and Forster Specialty Insurance
Company
Falvey Insurance Group
Hudson Insurance Group
Indian Harbor Insurance Company

Lloyds of London
London
Markel Insurance
Marsh
Migdal Insurance Company
Relm Insurance LTD
Republic Vanguard Insurance Company
Sentinel Insurance Company
Starstone Insurance
United States Fire Insurance Company
Zurich Insurance Group

### 10. Institutional Customers

1215 test
168 Trading Limited
Akuna Digital Assets LLC
Alameda
Alameda Research Ltd
Amber - Maple
Amber Technologies Limited
Anchorage Hold LLC
Anchorage Lending CA LLC
Antalpha Technologies Limited
AP Capital Absolute Return Fund
AP Capital Investment Limited
Auros Tech Limited
Auros Tech Limited - Maple
B2C2 LTD
Babel Holding Limited
B-Brick Inc
BCB Prime Services Limited
BCRS2 LLC
Belleway Ltd
BK Coin Capital LP

Blockchain Access UK Ltd
Blue Fire Capital Europe Cooperatief
CEX IO LTD
CMS Holdings LLC
Coinbase Credit
Core Scientific Inc
Cumberland DRW LLC
Dexterity Capital LP
Digital Asset Funds Management Pty Ltd
Digital Treasures Management PTE Ltd
Diversified Alpha SP
Druk Holding and Investments
Dunamis Trading (Bahamas) Ltd
Dunamis Trading III Ltd
DV Chain LLC
Enigma Securities Limited
Equities First Holdings
FalconX Limited
Fasanara Investments Master Fund
Flow Traders BV
Folkvang SRL

Fractal
Framework - Maple
Future Technology Investment
Galaxy
Galaxy Digital LLC
Gemini
Genesis Global Capital LLC
Grapefruit Trading LLC
GSR Markets Limited
Harrison Opportunity III Inc.
HAS Futures LLC
Hehmeyer LLC
Hehmeyer Trading AG
Hodlnaut Pte. Ltd.
HRTJ Limited
Intership Limited
Intership LTD
Iterative OTC LLC
JKL Digital Capital Limited
JSCT Hong Kong Limited
JST Systems LLC
JUMP Trading
Keyrock SA
Kohji Hirokado
Kronos Holdings
LedgerPrime DAO Master Fund LP
Liquibit USD Market Neutral Arbitrage Fund
Liquidity Technologies LTD
LUOJI2017 Limited
Marquette Digital
Matrix Port Technologies Limited
Memetic Capital LP
Menai Markets Ltd.
Mike Komaransky
Mountain Cloud Global Limited
Nascent GP Inc
Nascent LP
New World Holdings
Nickel Digital Asset Fund SPC Digital
Asset Arbitrage SPC Institutional
Nickel Digital Asset Master Fund SPC -
Digital Factors Fund SP
NYDIG Funding LLC
OILTRADING COM PTE LIMITED
Onchain Custodian Pte Ltd

Optimal Alpha Master Fund Ltd
OSL SG PTE LTD
Outremont Alpha Master Fund LP
Parallel Capital Management Limited
Pharos Fund BTC SP
Pharos Fund Eth SP
Pharos Fund SP
Pharos Fund SPC
Pharos USD Fund SP
Plutus21 Crypto Fund I LP
Point95 Global
Power Block Coin LLC
Prime Trust
Profluent Trading Inc
Profluent Trading UK Limited
QCP Capital PTE LTD
Radkl, LLC
Red River Digital Trading LLC
Reliz LTD
Roy Niederhoffer
SandP Solutions Inc
Scrypt Asset Management AG
SEBA Bank AG
Siafu Capital
Simplex
Symbolic Capital Partners Ltd
Tagomi Trading LLC
TDX SG Pte Ltd
Tether International Limited
Three Arrows Capital Ltd
Tower BC Ltd
Tower Research Capital
Transfero Brasil Pagamentos SA
Trigon Trading Pty LTD
TrueFi
Trustoken Inc
Ultimate Coin
Vexil Capital Ltd
Weave Markets LP
Wincent Investment Fund PCC Ltd
Wintermute - Maple
Wintermute Trading Ltd
Wyre Payments Inc
ZeroCap Limited

## 11. Governmental and Regulatory Agencies

Alabama Securities Commission
Kentucky Department of Financial Institutions
New Jersey Bureau of Securities
Texas State Securities Board
United States Department of Justice
United States Securities and Exchange Commission
Washington State Division of Securities

## 12. United States Bankruptcy Judges and United States Trustee's Office for the Southern District of New York

William K. Harrington
Linda A. Riffkin
Susan Arbeit
Victor Abriano
Mark Bruh
Shara Cornell
James Gannone
James L., Garrity, Jr.
Nadkarni Joseph
Brian S. Masumoto
Ercilia A. Mendoza
Mary V. Moroney
Richard C. Morrissey
Alaba Ogunleye
Ilusion Rodriguez
Andrea B. Schwartz
Paul K. Schwartzberg
Shannon Scott

Sylvester Sharp
Tara Tiantian
Andy Velez- Rivera
Madeleine Vescovacci
Annie Wells
Greg M. Zipes
Lisa G. Beckerman,
Shelley C. Chapman
Robert D. Drain
James L. Garrity, Jr.
Martin Glenn
Benjamin J. Higgins
David S. Higgins
Sean H. Lane
Cecelia G. Morris
Jones, David S.
Wiles, Michael E

## 13. Vendors

1-800 Flowers
1-800-GOT-JUNK?
192 Business Experian
221B Partners
3 Verulam Buildings
4imprint
9Beach Latin American Restaurant LLC
A Georgiou and Co LLC
A1 Express
A23 Boutique Hotel
A24 Limited

a2e
Abacus
Abacus Labs Inc
ABF Freight
Acrion Group Inc.
Ada Support Inc.
Adobe
Adonis Demetriou
AdTrav
Agile Freaks SRL
AgileEngine

AGS Exposition Services
Ahrefs Pte. Ltd.
Ainsworth
Air Essentials
Air France
Air Serbia
Airspeed18 Ltd.
Akasaka Vetoro 4F
Akerman LLP
Akin Gump Strauss Hauer Feld LLP
Alaric Flower Design
Alaska Air
Alba Invest Doo
Alchemiq
Alex Fasulo, LLC
Algo Adtech Ltd.
AlgoExpert
Alitalia
AlixPartners LLP
Allianz Global Assistance
Aloft Hotel
ALPHA Events Limited
AlphaGraphics
Amazon
American Airlines
American Family Connect Property and
Casualty Insurance Company
American Lock & Key
Amon Card Limited
Amon OU
Amplicy LTD
Amsalem Tours & Travel Ltd
Amtrak
Andersen LLP
Andreia Cucio Guisordi
Any.do
Appbot
Apple Search Ads
Apple Store
AppsFlyer Inc
Aqua Kyoto Ltd
Arlo SoHo Hotel
Arocon Consulting LLC
ArtDesigna
Ashby & Geddes
Aston Limo Service

AT&T
Athlonutrition S.S
Atlassian
Atom Exterminators Ltd
August LLC
Auth0 Inc.
AutomationEdge Technologies Inc.
Avaya Inc.
AVL Services LLC
Azmi & Associates
B&C Camera
B&H Photo
Bamboo HR
Bamboozle Cafe
BCAS Malta Ltd
BCL Search
Bellwood Global Transportation
Benzinga
Best Buy
Best Name Badges
Big Cartel
Bill.com
BIND Infosec Ltd.
Bionic Electronics
Birchams Art
Bitboy Crypto
Bitcoin.com (Saint Bitts LLC)
Bitfinex
Bitfly
Bitfo, Inc.
BITGO
Bitmain Technologies
Bittrex Global
Bitwave
Blacklane
Blackpeak Inc
Blake & Company
Block Solutions Sdn Bhd
Blockchair Limited
Blockdaemon Limited
BlockWorks Group LLC
Bloomberg Finance LP
Bloomberg Industry Group
Blue Edge Bulgaria EOOD
BLUE MOON CONSULT
Blue Rock

BlueVoyant Israel Ltd.
Board Game Designs
Bob Group Limited
Bolt Food
BOOKYOURCOVIDTEST.COM
Boston Coach
Brave Software International
Brazen Head Irish Pub
Brendan Gunn Consulting Group
British Airways
Brooklyn's Down South
BROWSERSTACK INC.
BTC 2022 Conference
BTC Media, LLC
Budget Rent A Car
Bulwerks LLC
Bulwerks Security
Business Insider
Buzzsprout
C.A.N. Mouzouras Electrical Contractors
Cablevision Lightpath LLC
Calendly LLC
Canva
Caola Company, Inc.
Capitol Hill Hotel
Caplinked
Carey Executive Transport
Carithers Flowers
Carmo Companies
Carta, Inc.
Caspian Holdings, Ltd
CAYO Rafał Molak
CDPQ U.S. Inc.
CDW
Chain of Events SAS
Chainalysis, Inc.
Chamber of Digital Commerce
Chick-fil-A
Chief
Cision Us Inc.
citizenM
Cleverbridge
Click and Play - Conteudos Digitais Lda
ClubCorp
CMS CMNO LLP
CoderPad

Coffee Distributing Corp.
Cogency Global Inc.
CoinDesk Inc.
Coinfirm Limited
Coinlend
CoinMarketCap
CoinRoutes Inc
Comcast
Compliance Risk Concepts LLC
Concorde Hotel
Consensus
Consensys Ag
Consumer Technology Association
Contentful, Inc.
Cooper Global
Coppell FC
Core Club
Core Scientific
Corsair Gaming, Inc.
Costco
Coursera
Cox Business
Creative Video Productions Limited
Creditor Group Corp.
Creel, Garcia-Cuellar, Aiza y Enriquez, S.C.
Crelin Peck Consulting LLC
CRP Security Systems Ltd
Crypto Fiend
Crypto Love
Crypto Wendy O
CryptoDailyYT Ltd
CryptoRecruit Pty Ltd
CSC
CT Corporation
C-Tech Constandinos Telecommunication Ltd Co.
Curb Mobility
Customer.io
CVS pharmacy
Cyesec Ltd.
Cyta
Dalvey & Co
Dan Hotels
Daniel J. Edelman, Inc.
Data Dash
Datapoint Surveying
David Meltzer Enterprises
David Rabbi Law Firm

DBeaver
DEALEX MOVING LLC
Dearson, Levi & Pantz, PLLC
Decentral Media Inc
DeepL
Del Friscos Grille
Delaware Division of Corporations
Dell
Deloitte Tax LLP
Delta Airlines
Department of Financial Protection and
Innovation
DERRIERES
Desk D.O.O
Dezenhall Resources
DHL
Digital Asset News, LLC
DNSFilter
Do Not Sit On The Furniture
Docker
DoiT International
DoiT International UK and I LTD
DoorDash
Dow Jones & Company, Inc.
Dragos DLT Consulting Ltd.
DRB Hosting Ltd. (Deribit)
Dream Hotels
Dribbble
DSV
Dune Analytics
Dynasty Partners
E.R. Bradleys Saloon
Eagle County Regional Airport
Ecrime Management Strategies, Inc dba
PhishLabs
Edgewater Advisory, LLC
EE Limited
Egon Zehnder International Inc.
El Al Israel Airlines
Elements Massage
Elite Marketing Group LLC
Elmwood Design Ltd.
Elpida Constantinou
Emanuel Clodeanu Consultancy SRL
Embassy Suites
Emirates Airlines

Enginuity on Call
EnjoyMaloy Trade Party
Enlightium Ltd
ENSafrica
Enterprise Digital Resources
Enterprise Rent-A-Car
Epitome Capital Management (Pty) Ltd
Estate of Edward W. Price Jr.
Ester Lima
Etsy
Eversheds Sutherland
Evgeni Kif
Exdo Events
Expedia
Exquisite Sounds Entertainment
EY
EZ Cater
Facebook
Fairmont Austin Lodging
FalbaSoft Cezary Falba
Falkensteiner Hotels & Residences
FATAL
FatCat Coders
Fattal Hotels
FedEx
Fibermode Ltd.
Filmsupply
Financial Times
FiNext Conference
FingerprintJS
Finnegan Henderson Farabow Garrett Dunner LLP
First Class Vending Inc
Fixer.io
Flixel Inc.
Flonights Limited
Flowroute
Fluxpo Media
Flyday Consult
Forkast Limited
Form Approvals
Forter, Inc.
Four Seasons Palm Beach
Frame.io
Freeman
From Day One
Frontend Masters
FSCom Limited

Fusion Bowl
G&TP Sweden AB
Gandi
Gartner Inc.
GEA Limited
GECKO LABS PTE. LTD.
Gecko Technology Partners
GEM
Gett
Giftagram USA, Inc
GILA DISHY LIFE COACH LLC
Gilbert + Tobin
GitBook
GitHub, Inc.
GitKraken
Gk8 Ltd
Glovo
GoDaddy.com
Gogo Air
Goin Postal
Google Ads
Google Cloud
Google Fi
Google Fiber
Google LLC
Google Play
GoToAssist
Grammarly, Inc.
GreyScaleGorilla
Grit Daily / Notability Partners
GrubHub
GSuite
Guardian Arc International
H2PROD
Halborn Inc.
Hampton Inn
HanaHaus
Handel Group LLC
Haruko Limited
Hattricks Tavern
Headway Workforce Solutions Inc.
Healthy Horizons
Heathrow Express
Hedgeguard
HeleCloud Limited
HelpSystems, dba PhishLabs

Henriksen Butler Nevada, LLC
Hertz
Herzog Fox & Neeman
Highlight Films Ltd.
Hilton
Hire Right
HMRC Shipley
Holland & Knight LLP
Home Depot
Hootsuite
Horasis
Hotel Da Baixa
Hotel Majestic
Hotel Midtown Atlanta
Hotels.com
Hyatt Hotels
Hysolate Ltd
I.A.M.L LTD
Ideal Communications
Idemia
Illumiti Corp
Incorporating Services, Ltd.
Indian Eagle
Inesha Premaratne
Infura
InGenie LTD
Innovatica LLC
INSIDE.COM INC.
INSPERITY
Instacart
Integrated Security & Communications
Intelligo Group USA Corp
Intercontinental Hotel
Intercontinental Miami
Intertrust
Intuit - Quickbooks
InvestAnswers
Ionut Lucian Ciochina
ip-api
IPQualityScore
IST NY Inc.
Iterable, Inc.
Ivan On Tech Academy
Jackson Lewis P.C.
JAMS, Inc.
Jarvis Ltd.

JB Hunt
JetBlue
JetBrains
Joberty Technologies
John Lewis & Partners
JSC Royal Flight Airlines
Juliet International Limited
Jumpcut 3D
Juniper Office
K.F.6 Partners Ltd
Kairon Labs BV
KALC LLC
Kanoo Pays
Keeper Security
Kenetic Trading Limited
Kerry Hotel HongKong
KeyFi, Inc.
Kforce Inc.
Kimpton Surfcomber Hotel
KINTSUGI, Unipessoal Lda.
Knobs B.A.C.
Kohl's
Korn Ferry
Koutra Athos Sotiris
Krispy Kreme
Kroll Advisory Ltd
L & L Moving Storage & Trucking LLC
La Maison Favart
Las Vegas Window Tinting
Latham
LaunchDarkly
Lawn Care
LawnStarter
Leaa
Line Group
LinkedIn Corporation
LinkedIn Ireland Unlimited Company
Lithify Limited
Locate852
Loews Hotels
Logitech
Logshero LTD
Logz.io
LS Future Technology AB
Lucidchart
Lucille's Smokehouse Bar-B-Que

Lufthansa Deutsche
Luis Filipe Espinhal
Lumen
Lunar Sqaures
LVC USA Inc.
Lyft
Madison Liquidators
MadRev LLC
MAKARIM & TAIRA S.
Maltego Technologies
Mambu Tech B.V.
Mammoth Growth LLC
Mandarin Oriental Hotel
Manhattan Bagel
Manzo's Suites
Maren Altman FZCO
Marios Locksmith Limited
Marriott Hotels & Resorts
Marsh USA
Matthew D'Albert
Maxon
Mayami Mexicantina
Mazars LLP
Mazars Ltd
McCarthy Tetrault LLP
McLagan Partners Inc.
MCM 965
mDesign
MediaOne Partners
Melio
Memorisely
Metropol Palace
MF Partners LTD
MFA Network
MGM Grand Hotel
Miami Beach Convention Center
Michael Page International Inc
Michaels
Microsoft
Microsoft Azure
MINDS
Minute Man Press
Mixed Analytics
Mixpanel Inc.
Momentum Media Group
Monarch Blockchain Corporation

Monday.com
Moo Printing
Moralis Academy
Morris, Manning & Martin, LLP
Moschoulla Patatsou Christofi
Motion Array
Motion Design School
Move4Less
MTA
Music 2 The Max
MVP Workshop
Myer-briggs
MythX
Namecheap
National Office Interiors & Liquidators
Nationwide Multistate Licensing System
Navex Global, Inc.
NBC Universal
Necter
Nevada Sign
New Spanish Ridge, LLC
NextGenProtection
NICE Systems UK Limited
Nico Signs Ltd
Nord Layer
Nordlogic Software SRL
Nordstrom
Nossaman LLP
Notarize
Nothing Bundt Cakes
Nuri
NuSources
Nyman Libson Paul LLP
OAKds, Inc
Ocean View Marketing Inc.
Office Depot
Office Movers Las Vegas
Office Star B2B Ltd
OfficeSpace Software Inc
OFFICEVIBE
OKEx
Onchain Custodian Pte. Ltd.
Onfido
Onfido Ltd
Onfido, Inc
Optimizely, Inc.

Oracle Corporation UK Limited
Otter.ai
Owen Lanktree
PABXL
Pack & Send
Paddle
Pagliara Entertainment Enterprises LLC
Palantir Security LTD
Panasonic Avionics Corporation
Panera Bread
Panorays LTD
Panorays Ltd.
Papaya Global Hk Limited
Park MGM Las Vegas
Park Plaza Hotels
Parklane Resort & Spa
Party City
Paxful Inc.
Payplus By Iris
Payplus Ltd
Peas Recruitment Limited
Peninsula Business Services Limited
Phase II Block A South Waterfront Fee LLC
Photo Booth Vending
Plaid Inc.
Pluralsight
Polihouse Boutique Hotel
Polyrize Security Ltd.
Portswigger
Postman
Postmates
Practising Law Institute
Premier Due Diligence LLC
Premium Beat
Prescient
PRG U.S. Inc
Print Hoboken LLC
Printful, Inc.
Priority Power
Pro Blockchain
Proof Of Talent, LLC
PROTECT OPERATIONS LTD
PSE Consulting Engineers, Inc
Psj Kanaris Enterprises Ltd
PTI Office Furniture
PubliBranco

Public Access to Court Electronic Records
Pure Marketing Group
Puressence LTD
Quality Inn
Quantstamp, Inc.
Quoine PTE. LTD.
RA Venues at Churchill War Rooms
Rails Tech, Inc.
Real Vision Group
Rebecca Sweetman Consulting Ltd
Reddit, Inc.
redk CRM Solutions LTD
Reflectiz Ltd.
REGUS Management Group, LLC
Remarkable
Residence Inn
Resources Global Professionals
Restream.io
Retool Inc
Rever Networks
RFO Conferences Organizing LLC
Ring Central Inc.
Rosewood Hotel
Rothschild TLV
Royal Mail
Royalton Hotel
S.P.A. DATA4U LTD
Sabana Labs S.L.
Saffron Indian Cuisine
Sam's Club
Sam's Limousine & Transportation, Inc.
SAP America, Inc.
Schoen Legal Search
ScraperAPI
Seamless
SECUREDOCS INC.
Securitas Security Services USA, Inc.
Segment, Inc.
Selfridges
SendSafely
Sentry
SEVIO FZC
SewWhatAndWear
Sheraton Hotels
Shutters On The Beach
Shutterstock

Similarweb Inc.
SJP Properties, General Construction
Sketch
Skew
Slack Technologies, LLC
SlideTeam
Small Pocket Video
Smart City Networks, LP
Smartcontract Inc.
SMSF Association
Snowflake Inc.
Soho Beach House
Solarwinds
Soltysinksi Kawecki Szlezak
SonarSource
South City Kitchen
Southwest Airlines
Sovos Compliance
SP V1CE LTD
Spears Electric
Spectrum
Sponsor United
Sports1ternship, LLC
SpotHero
Standard Restaurant Equipment Co.
Staples
Starbucks
Statusgator
Stephanos Greek & Mediterranean Grill
Stuart Tracte Photography
Studio ViDA
Sublime HQ Pty Ltd
SuperSonic Movers
Surety Solutions, a Gallagher Company
Swag.com
Swept
Swiss International Air Lines Ltd
SXSW LLC
Synapse Florida
Syndic Travel
TAAPI.IO
Tableau Software, LLC
Talking Cocktails
Tampa Printer
Target
TaskRabbit

TaxBit, Inc
Taylor Wessing LLP
TCL PUBLISHING LIMITED
Teamz, Inc.
Tembo Embroidery
Ten Manchester Street
Tenderly
Terra Panonica
TET Events
The Benjamin
The College Investor LLC
The Diplomat Resort
The Expo Group
The Female Quotient LLC
The Harris-Harris Group LLC
The Hudson Standard
The Information
The Jaffa Hotel
The Junk Masterz
The Junkluggers
The Killian Firm, P.C.
The Left House
The Million Roses
The New York Times
The Ritz-Carlton
The Silhouette Building
The Trade Group Inc
The Wings Hotel
The Zegans Law Group Pllc
Thimble
Thomson Reuters
Thunderclap Labs
Titan Office Furniture Ltd
T-Mobile
TNW Events B.V.
Tokentalk Ltd
Toll Free Forwarding
Toolfarm
Towers Watson Limited
TradingView, Inc.
Transunion
Trash Cans Warehouse
TRD Comm
Trello, Inc.
Trovata Inc
Trustpilot Inc.

TubeBuddy
Turkish Airlines
Twenty84 Solutions
Twilio
Twitter
Uber
Uber Eats
Udemy
Uline
Unbound Tech Ltd.
Unifire Extinguishers Ltd
United Airlines
University Arms Hotel
Unstoppable Domains
UPS
Upstager Consulting, Inc.
UrbanStems
USA Strong, Inc.
UsabilityHub Pty Ltd
Usastrong.io
USPS
V3 Digital LTD
Valere Capital
Vanguard Cleaning Systems of Las Vegas
Varonis Systems Inc.
VCU Blockchain
Vercel Inc.
Verified First, LLC
VerifyInvestors.com
Verizon Wireless
Vert & Blanc Enterprises Ltd
ViaSat
Victor Pla Bustos
Virtru
Virtual Business Source Ltd
Virtually Here For You Ltd
Vivid Edge Media Group
Volta Systems Group
VoskCoin LLC
VSECNOW LTD
Walgreens
Wall Street Journal
Walmart
Warwick Hotel
Wayfair
WCEF, LLC

West Coast Pure Water, LLC
WestCap Management LLC
Whirling Dervish Productions
Wilde Aparthotels
Wintermute Trading Ltd
Wolf Theiss
Wolt
Wolters Kluwer
Workland
Workspace Management Ltd
World Economic Forum
WP Engine, Inc.
Wyndham

Wynn Las Vegas
Yellowgrid
yellowHEAD LTD.
Yohann
YouTube Premium
Zapier.com
Zendesk, Inc.
Zeplin
Zoho
Zoom
Zubtitle
Zuraz97 Limited

### 14. Utilities

AT&T
Comcast
Cox Business
EE Limited
Giffgaff
Google Fiber
Hypercore Networks, Inc.
Lightpath Fiber
Lumen
Ring Central Inc.
Spectrum Enterprise
Verizon Wireless

## **Appendix 2**

**Client Match List**

**Client Match List**

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Alvarez & Marsal | Bankruptcy Professionals - Retained | Current Client, Prior Client |
| Centerview Partners | Bankruptcy Professionals - Retained | Current Client, Prior Client |
| Kirkland & Ellis LLP | Bankruptcy Professionals - Retained | Prior Client |
| Amber - Maple | Institutional Customers | Current Client |
| Anchorage Hold LLC | Institutional Customers | Current Client |
| Blockchain Access UK Ltd | Institutional Customers | Current Client, Prior Client |
| Coinbase Credit | Institutional Customers | Current Client, Prior Client |
| Core Scientific Inc. | Institutional Customers | Prior Client |
| Cumberland DRW LLC | Institutional Customers | Current Client, Prior Client |
| DV Chain LLC | Institutional Customers | Prior Client |
| Equities First Holdings | Institutional Customers | Current Client |
| Fasanara Investments Master Fund | Institutional Customers | Prior Client |
| Flow Traders BV | Institutional Customers | Former Client |
| Framework - Maple | Institutional Customers | Current Client |
| Galaxy Digital LLC | Institutional Customers | Current Client, Prior Client |
| Gemini | Institutional Customers | Current Client, Prior Client |
| GSR Markets Limited | Institutional Customers | Current Client |
| Iterative OTC LLC | Institutional Customers | Former Client |
| JSCT Hong Kong Limited | Institutional Customers | Current Client |
| JUMP Trading | Institutional Customers | Current Client |
| NYDIG Funding LLC | Institutional Customers | Current Client, Prior Client |
| OSL SG PTE LTD | Institutional Customers | Current Client |
| Symbolic Capital Partners Ltd | Institutional Customers | Current Client |
| Tagomi Trading LLC | Institutional Customers | Current Client, Prior Client |
| Wintermute Trading Ltd | Institutional Customers | Current Client |
| Wyre Payments Inc. | Institutional Customers | Current Client |

---

[1]    The term "Current Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years and L&W has at least one open matter.  The term "Former Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years but all matters for such client have since been closed.  The term "Prior Client" refers to an entity listed as a client of an L&W attorney while such attorney was at a prior firm.

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc. | Insurance | Prior Client |
| Crum and Forster Specialty Insurance Company | Insurance | Current Client |
| Lloyds of London | Insurance | Prior Client |
| Marsh | Insurance | Prior Client |
| Migdal Insurance Company | Insurance | Prior Client |
| Zurich Insurance Group | Insurance | Prior Client |
| Regus | Landlords | Current Client |
| Symbolic Capital Partners | Legal Matters and Disputes | Current Client |
| BNK to the Future | Significant Equity Holders | Prior Client |
| Caisse de dépôt et placement du Québec | Significant Equity Holders | Current Client, Prior Client |
| CDP Investissements Inc. | Significant Equity Holders | Current Client |
| Craig Barrett | Significant Equity Holders | Current Client |
| WestCap Group | Significant Equity Holders | Current Client |
| United States Department of Justice | Taxing Authority/Governmental/ Regulatory Agencies | Prior Client |
| United States Securities and Exchange Commission | Taxing Authority/Governmental/ Regulatory Agencies | Prior Client |
| AT&T | Utilities | Prior Client |
| Comcast | Utilities | Current Client, Prior Client |
| Cox Business | Utilities | Current Client, Prior Client |
| Ring Central Inc. | Utilities | Current Client, Prior Client |
| Spectrum Enterprise | Utilities | Current Client, Prior Client |
| Verizon Wireless | Utilities | Current Client, Prior Client |
| 1-800 Flowers | Vendors | Prior Client |
| 192 Business Experian | Vendors | Current Client, Prior Client |
| Adobe | Vendors | Current Client, Prior Client |
| Ainsworth | Vendors | Prior Client |
| Air France | Vendors | Current Client, Prior Client |
| Alaska Air | Vendors | Current Client, Prior Client |
| Alitalia | Vendors | Prior Client |
| AlixPartners LLP | Vendors | Former Client, Prior Client |
| Allianz Global Assistance | Vendors | Current Client, Prior Client |
| Aloft Hotel | Vendors | Current Client |
| Amazon | Vendors | Current Client, Prior Client |
| American Airlines | Vendors | Current Client, Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| American Family Connect Property and Casualty Insurance Company | Vendors | Prior Client |
| Apple Search Ads | Vendors | Current Client, Prior Client |
| Apple Store | Vendors | Current Client, Prior Client |
| AppsFlyer Inc. | Vendors | Current Client |
| AT&T | Vendors | Prior Client |
| Atlassian | Vendors | Current Client, Prior Client |
| Avaya Inc. | Vendors | Current Client, Prior Client |
| B&H Photo | Vendors | Prior Client |
| Best Buy | Vendors | Former Client, Prior Client |
| Bittrex Global | Vendors | Current Client |
| Blackpeak Inc. | Vendors | Prior Client |
| Blockdaemon Limited | Vendors | Current Client |
| Bloomberg Finance LP | Vendors | Former Client, Prior Client |
| Bloomberg Industry Group | Vendors | Former Client |
| British Airways | Vendors | Prior Client |
| Cablevision Lightpath LLC | Vendors | Prior Client |
| Canva | Vendors | Current Client |
| CDPQ U.S. Inc. | Vendors | Current Client, Prior Client |
| CDW | Vendors | Prior Client |
| Chainalysis, Inc. | Vendors | Prior Client |
| Cision Us Inc. | Vendors | Current Client |
| ClubCorp | Vendors | Current Client, Prior Client |
| Cogency Global Inc. | Vendors | Former Client |
| Comcast | Vendors | Current Client, Prior Client |
| Consensys Ag | Vendors | Current Client, Prior Client |
| Core Scientific | Vendors | Prior Client |
| Corsair Gaming, Inc. | Vendors | Current Client, Prior Client |
| Costco | Vendors | Current Client |
| Cox Business | Vendors | Current Client, Prior Client |
| CSC | Vendors | Former Client, Prior Client |
| CT Corporation | Vendors | Prior Client |
| CVS pharmacy | Vendors | Prior Client |
| David Rabbi Law Firm | Vendors | Former Client |
| Del Friscos Grille | Vendors | Prior Client |
| Dell | Vendors | Current Client, Prior Client |
| Deloitte Tax LLP | Vendors | Current Client, Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Delta Airlines | Vendors | Current Client, Prior Client |
| DHL | Vendors | Prior Client |
| Docker | Vendors | Former Client |
| DoorDash | Vendors | Current Client, Prior Client |
| Dow Jones & Company, Inc. | Vendors | Current Client, Prior Client |
| Emirates Airlines | Vendors | Current Client |
| Enterprise Rent-A-Car | Vendors | Former Client, Prior Client |
| Etsy | Vendors | Current Client, Prior Client |
| Eversheds Sutherland | Vendors | Prior Client |
| Expedia | Vendors | Current Client, Prior Client |
| EY | Vendors | Current Client, Prior Client |
| EZ Cater | Vendors | Current Client |
| Facebook | Vendors | Current Client, Prior Client |
| FedEx | Vendors | Prior Client |
| Financial Times | Vendors | Current Client |
| Finnegan Henderson Farabow Garrett Dunner LLP | Vendors | Prior Client |
| Forter, Inc. | Vendors | Current Client, Prior Client |
| Four Seasons Palm Beach | Vendors | Current Client, Prior Client |
| Glovo | Vendors | Current Client |
| Google LLC | Vendors | Prior Client |
| Grammarly, Inc. | Vendors | Current Client |
| GrubHub | Vendors | Current Client, Prior Client |
| Hampton Inn | Vendors | Current Client |
| HelpSystems, dba PhishLabs | Vendors | Prior Client |
| Hertz | Vendors | Current Client, Prior Client |
| Herzog Fox & Neeman | Vendors | Current Client |
| Hilton | Vendors | Current Client, Prior Client |
| Hire Right | Vendors | Former Client |
| Home Depot | Vendors | Current Client, Prior Client |
| Hootsuite | Vendors | Current Client, Prior Client |
| Hotels.com | Vendors | Prior Client |
| Hyatt Hotels | Vendors | Current Client |
| Idemia | Vendors | Current Client, Prior Client |
| Infura | Vendors | Current Client, Prior Client |
| INSIDE.COM INC. | Vendors | Current Client |
| INSPERITY | Vendors | Prior Client |
| Instacart | Vendors | Current Client, Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Intercontinental Hotel | Vendors | Prior Client |
| Intertrust | Vendors | Prior Client |
| Intuit - Quickbooks | Vendors | Current Client, Prior Client |
| JB Hunt | Vendors | Current Client, Prior Client |
| JetBlue | Vendors | Current Client, Prior Client |
| John Lewis & Partners | Vendors | Prior Client |
| Kforce Inc. | Vendors | Prior Client |
| Kimpton Surfcomber Hotel | Vendors | Current Client, Prior Client |
| Kohl's | Vendors | Current Client |
| Korn Ferry | Vendors | Former Client |
| Kroll Advisory Ltd | Vendors | Current Client, Prior Client |
| Line Group | Vendors | Current Client |
| Loews Hotels | Vendors | Current Client |
| Logitech | Vendors | Current Client, Prior Client |
| Lufthansa Deutsche | Vendors | Current Client, Prior Client |
| Lyft | Vendors | Current Client, Prior Client |
| Marriott Hotels & Resorts | Vendors | Current Client, Prior Client |
| Marsh USA | Vendors | Prior Client |
| Mazars LLP | Vendors | Current Client |
| McCarthy Tetrault LLP | Vendors | Prior Client |
| McLagan Partners Inc. | Vendors | Current Client, Prior Client |
| Melio | Vendors | Prior Client |
| MGM Grand Hotel | Vendors | Prior Client |
| Michael Page International Inc. | Vendors | Prior Client |
| Microsoft | Vendors | Current Client, Prior Client |
| Monday.com | Vendors | Current Client |
| MTA | Vendors | Prior Client |
| NBC Universal | Vendors | Current Client, Prior Client |
| NICE Systems UK Limited | Vendors | Current Client |
| OAKds, Inc. | Vendors | Prior Client |
| Office Depot | Vendors | Prior Client |
| OKEx | Vendors | Prior Client |
| Onfido | Vendors | Current Client |
| Oracle Corporation UK Limited | Vendors | Current Client, Prior Client |
| Otter.ai | Vendors | Current Client |
| Palantir Security LTD | Vendors | Current Client, Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Panasonic Avionics Corporation | Vendors | Current Client, Prior Client |
| Panera Bread | Vendors | Current Client, Prior Client |
| Park MGM Las Vegas | Vendors | Current Client, Prior Client |
| Party City | Vendors | Prior Client |
| Payplus By Iris | Vendors | Prior Client |
| Plaid Inc. | Vendors | Current Client, Prior Client |
| Pluralsight | Vendors | Prior Client |
| Polyrize Security Ltd. | Vendors | Prior Client |
| Postmates | Vendors | Former Client, Prior Client |
| Premium Beat | Vendors | Prior Client |
| Printful, Inc. | Vendors | Current Client |
| Priority Power | Vendors | Current Client |
| Quantstamp, Inc. | Vendors | Current Client, Prior Client |
| Reddit, Inc. | Vendors | Current Client |
| REGUS Management Group, LLC | Vendors | Current Client |
| Remarkable | Vendors | Current Client |
| Residence Inn | Vendors | Current Client |
| Resources Global Professionals | Vendors | Current Client |
| Ring Central Inc. | Vendors | Current Client, Prior Client |
| Rosewood Hotel | Vendors | Former Client |
| Royal Mail | Vendors | Prior Client |
| Sam's Club | Vendors | Current Client |
| SAP America, Inc. | Vendors | Current Client |
| Seamless | Vendors | Current Client |
| Securitas Security Services USA, Inc. | Vendors | Prior Client |
| Segment, Inc. | Vendors | Current Client, Prior Client |
| Sheraton Hotels | Vendors | Current Client |
| Shutterstock | Vendors | Prior Client |
| Similarweb Inc. | Vendors | Former Client |
| Slack Technologies, LLC | Vendors | Former Client, Prior Client |
| Soho Beach House | Vendors | Current Client |
| Solarwinds | Vendors | Prior Client |
| Southwest Airlines | Vendors | Prior Client |
| Sovos Compliance | Vendors | Prior Client |
| Spectrum | Vendors | Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Staples | Vendors | Prior Client |
| Starbucks | Vendors | Former Client, Prior Client |
| Swiss International Air Lines Ltd | Vendors | Current Client, Prior Client |
| SXSW LLC | Vendors | Current Client |
| Tableau Software, LLC | Vendors | Prior Client |
| TaxBit, Inc. | Vendors | Current Client |
| The New York Times | Vendors | Former Client, Prior Client |
| The Ritz-Carlton | Vendors | Current Client, Prior Client |
| Thimble | Vendors | Former Client, Prior Client |
| Thomson Reuters | Vendors | Current Client, Prior Client |
| T-Mobile | Vendors | Current Client, Prior Client |
| Towers Watson Limited | Vendors | Prior Client |
| Transunion | Vendors | Current Client, Prior Client |
| Turkish Airlines | Vendors | Prior Client |
| Twilio | Vendors | Prior Client |
| Twitter | Vendors | Current Client, Prior Client |
| Uber | Vendors | Current Client, Prior Client |
| Udemy | Vendors | Current Client |
| Uline | Vendors | Prior Client |
| United Airlines | Vendors | Current Client, Prior Client |
| UPS | Vendors | Former Client, Prior Client |
| USPS | Vendors | Prior Client |
| Varonis Systems Inc. | Vendors | Prior Client |
| Verizon Wireless | Vendors | Current Client, Prior Client |
| ViaSat | Vendors | Current Client, Prior Client |
| Walgreens | Vendors | Former Client, Prior Client |
| Wall Street Journal | Vendors | Current Client |
| Walmart | Vendors | Current Client, Prior Client |
| Wayfair | Vendors | Former Client |
| WestCap Management LLC | Vendors | Current Client |
| Wintermute Trading Ltd | Vendors | Current Client |
| Wolt | Vendors | Current Client, Prior Client |
| Wolters Kluwer | Vendors | Former Client, Prior Client |
| Workspace Management Ltd | Vendors | Former Client, Prior Client |
| WP Engine, Inc. | Vendors | Current Client, Prior Client |
| Wyndham | Vendors | Former Client, Prior Client |
| Wynn Las Vegas | Vendors | Current Client, Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| YouTube Premium | Vendors | Prior Client |
| Zapier.com | Vendors | Prior Client |
| Zendesk, Inc. | Vendors | Prior Client |
| Zoom | Vendors | Current Client |

## **Exhibit C**

**Declaration of Chris Ferraro**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**DECLARATION OF CHRIS FERRARO IN SUPPORT OF**
**DEBTORS' APPLICATION FOR AUTHORITY TO RETAIN AND EMPLOY**
**LATHAM & WATKINS LLP AS SPECIAL COUNSEL TO THE DEBTORS**
**EFFECTIVE AS OF THE PETITION DATE**

I, Chris Ferraro, declare as follows:

1.     I am the Chief Financial Officer of Celsius Network Limited (together with the other above-captioned debtors and debtors in possession, the "Debtors"). In this capacity, I am familiar with the Debtors' day-to-day operations, business, financial affairs and books and records. I am also involved in and knowledgeable about supervising outside counsel and monitoring and controlling legal costs.

2.     I submit this declaration (the "Declaration") in connection with the Debtors' application (the "Application"),[2] submitted contemporaneously herewith, seeking entry of an order authorizing the Debtors to employ and retain Latham & Watkins LLP ("L&W") as their special counsel in the Chapter 11 Cases effective as of the Petition Date.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

3.      Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by other members of the Debtors' management and the Debtors' advisors.

**The Debtors' Selection of L&W**

4.      As Chief Financial Officer, I am involved in and knowledgeable about retaining and supervising outside counsel.  It is my strong belief that it is critical to select outside counsel with the utmost care to maximize the value of the Debtors' estates, while at the same time focusing on costs to ensure that the Debtors' limited resources are being appropriately utilized.

5.      The Debtors selected L&W to represent them in connection with the Investigations based on L&W's prior work for the Debtors as well as L&W's reputation and expertise in handling government investigations.  Because of the Debtors' existing relationship with L&W, no other firms were interviewed at the time that L&W was retained to provide the L&W Services.

6.      I understand that L&W's investigations practice has broad experience in a wide variety of regulatory matters, combining specific regulatory knowledge with procedural experience, and the L&W team representing the Debtors includes regulatory practitioners, career defense advocates, and former government lawyers.  The Investigations relate primarily to compliance with federal and state securities laws and involve issues with which L&W has extensive experience.

7.      Furthermore, over the past year, L&W has assisted the Debtors in working cooperatively with regulators to respond to information requests and inquiries related to the Investigations.  During this time, L&W has become familiar with the Debtors' business, as well as with the specific factual and legal issues raised in the Investigations.  If required to retain

different counsel to provide the L&W Services, I believe that the Debtors will be forced to expend significant resources and expense to familiarize such counsel with (a) the complex issues raised in the Investigations and (b) the status of matters that L&W has handled or intends to handle for the Debtors.

8.      I believe, for all the aforementioned reasons, that L&W is both well-qualified and uniquely suited to represent the Debtors in connection with these matters in an efficient and timely manner.

### Rate Structure and Cost Supervision

9.      In the normal course of business, the Debtors typically monitor legal fees and expenses incurred by the Debtors and report to the applicable firm any concerns regarding the reasonableness of such fees and expenses.  Any issues regarding such fees and expenses are typically then addressed informally between the Debtors and the firm.  I intend to adopt the same practice with L&W in connection with this engagement.

10.     L&W has informed the Debtors that its billing rates and the material terms of the engagement are comparable to (i) L&W's standard rates and the material terms for non-bankruptcy engagements, and (ii) the billing rates and terms of other comparably skilled counsel.

11.     I understand that, consistent with L&W's policy with respect to its other clients, L&W will continue to seek reimbursement for expenses and other charges incurred in the rendition of services, as more particularly described in the Sikora Declaration.  I understand that it is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  I also understand that it is L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.

12.      The Debtors understand that it is their responsibility to track their professionals' billing practices to be sure that the fees and expenses the estates pay are fair and reasonable, and the Debtors will review the fee statements of L&W and of all of the Debtors' other professionals to ensure that continues to be the case.

13.      L&W has also provided the Debtors with a prospective budget and staffing plan to ensure that L&W's staffing with respect to the representation of the Debtors is appropriate to meet the Debtors' needs and expectations during the Chapter 11 Cases.  Based on the Debtors' review of the budget and staffing plan and my discussions with L&W, I believe that the budget and staffing plan are consistent with the Debtors' needs.  Accordingly, I have approved the budget and staffing plan.

14.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

[*Signature Page Follows*]

August 4, 2022
New York, NY

**CELSIUS NETWORK LLC**
(for itself and on behalf of its affiliates
that are debtors and debtors in possession)

*/s/ Chris Ferraro*
Chris Ferraro
Chief Financial Officer
Celsius Network Limited