**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
       kwofford@whitecase.com
       sam.hershey@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
       gregory.pesce@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| | **Related Docket Nos.: 605** |

**NOTICE OF FILING OF UNREDACTED VERSION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ELEMENTUS INC. AS BLOCKCHAIN FORENSICS ADVISOR EFFECTIVE AS OF AUGUST 1, 2022**

              **PLEASE TAKE NOTICE** that on August 24, 2022, the Official Committee of

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors in possession (collectively the "**Debtors**") filed a redacted version of *The Official Committee of Unsecured Creditors' Application for Entry of an Order Authorizing the Employment and Retention of Elementus Inc. as Blockchain Forensics Advisor Effective as of August 1, 2022* [Docket No. 605] (the "**Application**") in accordance with various pending motions seeking to seal and redact the names of certain potential parties in interest, which were pending at the time the Applications were filed, as well as joinders, objections, and other papers. *See* [Docket Nos. 55, 344, 399, 602, 607, 633, 638, 639, 642]. Contemporaneously with the filing of the Application, an unredacted version of the Application was provided to the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), counsel to the Debtors, the United States Trustee for the Southern District of New York, counsel to the Ad Hoc Group of Custody Account Holders, counsel to the Ad Hoc Group of Withhold Account Holders, and counsel to the Series B Preferred Holders.

> **PLEASE TAKE FURTHER NOTICE** that on September 28, 2022, the Court entered the *Memorandum Opinion and Order on the Debtors' Sealing Motion* [Docket No. 910] (the "**Opinion and Order**").

> **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Opinion and Order, the Committee hereby files an unredacted version of the Application, attached hereto as **Exhibit A**, (the "**Unredacted Application**").

> **PLEASE TAKE FURTHER NOTICE** that copies of the Unredacted Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  October 12, 2022         Respectfully submitted,
        New York, New York

                                 */s/ Gregory F. Pesce*
                                 **WHITE & CASE LLP**
                                 David M. Turetsky
                                 Keith H. Wofford
                                 Samuel P. Hershey
                                 1221 Avenue of the Americas
                                 New York, New York 10020
                                 Telephone:  (212) 819-8200
                                 Facsimile:  (212) 354-8113
                                 Email:  david.turetsky@whitecase.com
                                         kwofford@whitecase.com
                                         sam.hershey@whitecase.com

                                 – and –

                                 **WHITE & CASE LLP**
                                 Michael C. Andolina (admitted *pro hac vice*)
                                 Gregory F. Pesce (admitted *pro hac vice*)
                                 111 South Wacker Drive, Suite 5100
                                 Chicago, Illinois 60606
                                 Telephone: (312) 881-5400
                                 Facsimile:  (312) 881-5450
                                 Email:  mandolina@whitecase.com
                                         gregory.pesce@whitecase.com

                                 – and –

                                 **WHITE & CASE LLP**
                                 Aaron E. Colodny (admitted *pro hac vice*)
                                 555 South Flower Street, Suite 2700
                                 Los Angeles, California 90071
                                 Telephone: (213) 620-7700
                                 Facsimile:  (213) 452-2329
                                 Email:  aaron.colodny@whitecase.com

                                 *Counsel to the Official Committee of
                                 Unsecured Creditors*

## Exhibit A

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
        gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[2] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
ELEMENTUS INC. AS BLOCKCHAIN FORENSICS ADVISOR
<u>EFFECTIVE AS OF AUGUST 1, 2022</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned

---

[2] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

debtors and debtors-in-possession (collectively the "**Debtors**") submits this application (the "**Application**"), for the entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the Committee to employ and retain Elementus Inc. ("**Elementus**") as its blockchain forensics advisor effective as of August 1, 2022. In support of this Application, the Committee relies upon and incorporates by reference the *Declaration of Max Galka in Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Elementus Inc. as Blockchain Forensics Advisor Effective as of August 1, 2022* (the "**Galka Declaration**"), attached hereto as **Exhibit B**. In further support of the Application, the Committee respectfully states as follows:

### Relief Requested

1.      By this Application, pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the Committee seeks authority to retain and employ Elementus as its blockchain forensics advisor in connection with the Chapter 11 Cases and all related matters, effective as of August 1, 2022, the date on which the Committee selected Elementus as an advisor, in accordance with the terms, and subject to the conditions of that certain engagement letter (including the terms and conditions and the addendum attached thereto), dated as of August 1, 2022, attached hereto as **Exhibit C** (the "**Engagement Letter**"). The Committee also seeks approval of the terms of Elementus' employment and retention, including, without limitation, the proposed Fee Structure (as defined below) and the indemnity, exculpation, contribution, and related provisions (the "**Indemnity Provisions**") within the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code.

## Jurisdiction, Venue and Predicates for Relief

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  The Committee confirms its consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicates for the relief requested by this Application are sections 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

5.      On July 13, 2022 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  However, on August 18, 2022, the U.S. Trustee filed a motion requesting appointment of an examiner [Docket No. 546].  On July 27, 2022, the U.S. Trustee appointed the Committee, which is comprised of seven members, each of whom holds crypto (or digital) assets through the Celsius platform [Docket No. 241].  The Committee's goal is to maximize the recoveries of account holders and unsecured creditors, as more fully stated in *The Official Committee of*

*Unsecured Creditors' Statement Regarding These Chapter 11 Cases* [Docket No. 390].

6.     On August 1, 2022, the Committee voted to retain Elementus as blockchain forensics advisor, subject to Bankruptcy Court approval.

### Elementus' Qualifications

7.     In light of the size and complexity of these Chapter 11 Cases, the novelty of the issues raised, and the potentially serious allegations, the Committee requires a qualified and experienced blockchain forensics advisor with Elementus' resources, capabilities, and experience. Elementus is well qualified to serve as blockchain forensics advisor to the Committee. Elementus is a data-first blockchain intelligence and forensics firm and its data scientist and experts have a wealth of experience in mapping public blockchains. Elementus and its professionals are able to trace the flow of funds and provide detailed accounting of transaction activity occurring on the blockchain, or in industry parlance "on-chain". The Committee and the estate will benefit immensely from their specialized experience.

8.     The Committee submits this Application because of its need to retain a blockchain expert to assist it in the critical tasks associated with guiding the Committee through the Debtors' reorganization efforts. Because of the complicated and new issues arising in this restructuring, the Committee respectfully submits that the services of a blockchain forensics advisor are necessary and appropriate to enable it to evaluate the complex cryptocurrency issues raised by the Debtors' reorganization proceedings and to effectively fulfill its statutory duties.

9.     The Committee was referred to Elementus, and its cryptocurrency expertise, through its engagement with M3. Engaging Elementus, to work together with M3 as a financial advisor, was based on the Committee's determination of the unprecedented and complex issues raised by the Debtors' chapter 11 cases and its understanding that Elementus is the best candidate

for such advice. Elementus' proposed fee structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases.

10.    Pursuant to section 1103(a) of the Bankruptcy Code, a committee may retain advisors to assist in the chapter 11 cases. *See* 11 U.S.C. § 1103(a). In the Debtors' Chapter 11 Cases, the Committee requires qualified professionals to render this blockchain forensics advice. As discussed above, Elementus has substantial expertise as a blockchain forensics advisor in complex chapter 11 cases and is well qualified to perform these services and to assist the Committee in the Chapter 11 Cases.

**Services To Be Rendered**

11.    Elementus has agreed to provide services to the Committee in accordance with the terms and conditions of the Engagement Letter. The terms of the Engagement Letter reflect the mutual agreement between the Committee and Elementus as to the substantial efforts that may be required of Elementus in this engagement. The Engagement Letter provides, in consideration for the compensation thereby, that Elementus will, to the extent requested by the Committee, render the following blockchain forensics advisory services[3]:

    a. Provide advisory services with respect to on-chain flow of funds and Debtors' on-chain posture;

    b. Assistance with mapping Debtors' entities on-chain;

    c. Assistance with mapping Debtors' counterparties and related parties on-chain;

    d. Assistance with tracing the flow of funds between Debtors and counterparties;

    e. Assistance with providing a reconciliation of all Debtors' transactions on-chain;

---

[3]    This Application summarizes the terms of the Engagement Letter. To the extent there is a conflict between the Application and the Engagement Letter, the Engagement Letter will govern.

f.  As required, assistance with producing written reports and materials to illustrate and support on-chain findings;

g.  Attendance at meetings and assistance in discussions with stakeholders and other third parties, as requested;

h.  Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary and as is ancillary to the services described above; and

i.  Such other assistance as Elementus and the Committee shall mutually agree in writing.

## Professional Compensation

12.  Bankruptcy Code section 328(a) provides, in relevant part, that a committee appointed under Bankruptcy Code section 1102 "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

13.  Subject to the Court's approval, and in accordance with section 328(a) of the Bankruptcy Code, Elementus proposes to render its services on an hourly fee basis according to its customary hourly rates in effect when the services are rendered. Elementus professionals will charge reasonable time, billed at their respective standard hourly rates, subject to periodic adjustments (with advance written notice to the Committee), with the following ranges (the "**Fee Structure**"), pursuant to, and as further explained in, the Engagement Letter:

| Professional | Hourly Rate |
|---|---|
| Chief Data Scientist, CEO | $1,000 |
| Senior Data Scientist | $800 - $900 |
| Junior Data Scientist | $600 - $800 |
| Vice President | $700 - $800 |
| Senior Software Engineer | $800 - $900 |

| Junior Software Engineer | $600 - $800 |
| Project Manager | $500 - $600 |

14.    Elementus may charge for reasonable, documented, out-of-pocket expenses for materials including computing services, software licenses, and other expenses relating to the investigation.  In addition, Elementus will charge for reasonable pre-approved travel and living expenses incurred by Elementus in performing its services at sites other than Elementus facilities.

15.    Elementus and the Committee expressly reserve their rights pursuant to section 1129(a)(9)(A) of the Bankruptcy Code for Elementus to receive the full amount of compensation based on the foregoing notwithstanding the terms of any cash collateral order or secured financing order now or hereafter entered in these Chapter 11 Cases providing for a limitation on the amount of fees payable to Elementus for specified or general purpose.

16.    Elementus will maintain records of hours and expenses incurred in connection with the rendering of the blockchain forensics advisory services described above.

17.    However, it is not Elementus' practice—nor of its peers—to keep detailed time records similar to those customarily kept by attorneys.  Because Elementus does not ordinarily maintain contemporaneous time records in one-tenth (0.1) of an hour increments, the Committee seeks a partial waiver of the timekeeping requirements set forth in the Fee Guidelines to maintain records in the one-tenth (0.1) of an hour requirement.  Specifically, the Committee requests that Elementus be permitted to maintain summary time records, in one-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.

18.    Courts in other large chapter 11 cases have excused, or otherwise modified, professionals from certain timekeeping requirements under similar circumstances, usually

investment bankers. *See, e.g.*, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 21, 2022) [Docket No. 248]; *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022) [Docket No. 299]; *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y. July 1, 2020) [Docket No. 326]; *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 29, 2020); *In re LSC Commcn's, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

19.     Additionally, because of Elementus' lack of experience in bankruptcy procedure, the Committee respectfully requests that Elementus be excused from the requirement to file monthly or interim fee applications; *provided that* Elementus will file a final fee application with a summary of the fees earned and expenses incurred along with a summary of the fees and expenses that have been paid.  In addition, Elementus will submit, on a monthly basis, invoices (attaching the time records in one-hour increments as noted above) to the Debtors, the U.S. Trustee, and the Committee for payment of the fees incurred and expenses to be reimbursed for that month.  Such parties shall have fourteen (14) days to review and dispute any such invoice submitted by Elementus, and if no such disputes are received, the Debtors shall be authorized to pay such Elementus invoices without any further order of the Court.  Any party does dispute an invoice, the Debtors shall withhold the payment of the portion of the invoice that is disputed and promptly pay the remainder.  All objections that are not resolved shall be preserved and presented to this Court for determination at an appropriate time.

20.     The terms and conditions of the Engagement Letter were negotiated by the Committee at arm's length and in good faith.  After discussions and arm's length negotiations, the

Committee believes that the Fee Structure and the expense reimbursement provisions described above and in the Engagement Letter are consistent with, and typical of, compensation arrangements entered into by Elementus and other comparable firms in connection with the rendering of similar services under similar circumstances and is reasonable, market based and merited by Elementus' blockchain expertise.

21.     In light of the foregoing, the Committee believes that Elementus' fee structure is reasonable, market-based, and designed to fairly compensate Elementus its work in these Chapter 11 Cases and to cover fixed and routine overhead expenses.

## **Indemnification**

22.     Elementus requests that the Debtors indemnify, hold harmless, and pay the reasonable out-of-pocket legal or other expenses of Elementus or any of affiliates, equity holders, partners, directors, employees, agents, representatives and contractors (collectively, the "Indemnified Persons") under certain circumstances, as described in the Indemnity Provisions included in the Engagement Letter.[4]

23.     Professionals seek indemnification for a variety of reasons.  The performance of Elementus' responsibilities requires the exercise of professional judgment regarding difficult business issues and Elementus intends to rely on the accuracy and completeness of the blockchain forensics information, and other information, provided by the Debtors.  The Committee notes that, in the event an Indemnified Person acts with gross negligence or willful misconduct, the estates will be entitled to recover amounts paid pursuant to the Indemnification Provisions.

24.     The Committee and Elementus believe that the proposed Indemnity Provisions are

---

[4]     Notably, the Engagement Letter also provides for Elementus to act as indemnitor under certain circumstances.

customary and reasonable for forensics advisory engagements, both out-of-court and in chapter 11 proceedings. Similar indemnification arrangements have been approved and implemented in other large chapter 11 cases. *See, e.g.*, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 21, 2022) [Docket No. 248]; *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022) [Docket No. 299]; *In re Centric Brands Inc.*, No. 20-22637-shl (Bankr. S.D.N.Y. Aug. 13, 2020); *In re Avianca Holdings S.A.*, No. 20-11133 (MG) (Bankr. S.D.N.Y. July 14, 2020); *In re Dean & Deluca New York Inc.*, No. 20-10916 (MEW) (Bankr. S.D.N.Y. June 22, 2020); *In re LSC Commc'ns., Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. May 12, 2020); *In re McClatchy Company*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. Apr. 30, 2020); *In re Aegean Marine Petroleum Network, Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019).

25.    The proposed Indemnity Provisions are also consistent with the standards that normally govern trustees and committees in chapter 11 cases. *See Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977) (holding that a trustee is "(a) not liable, in any manner, for mistake in judgment where discretion is allowed, (b) liable personally only for acts determined to be willful and deliberate in violation of his duties and (c) liable, in his official capacity, for acts of negligence."); *In re Chi. Pac. Corp.*, 773 F.2d 909, 915 (7th Cir. 1985) (bankruptcy trustee can be personally liable only "for a willful and deliberate violation of his fiduciary duties"); *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 752–53 (4th Cir. 1993) (collecting cases). Members of creditors' committees are also protected from liability in the absence of gross negligence. *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000). In fact, the court has held that professionals employed by creditors' committees similarly should be protected from liability in the absence of willful misconduct or gross negligence. *See Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994) (holding that committee members and their

professionals are entitled to immunity except for willful misconduct or ultra vires acts); *see also*

*Philip v. L.F. Rothschild Holdings (In re L.F. Rothschild Holdings)*, 163 B.R. 45, 49 (Bankr.

S.D.N.Y. 1994); *In re Drexel Burnham Lambert Grp.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992).

26.     For these reasons, indemnity provisions are common market practice, both inside

and outside of bankruptcy cases, and it is the standard practice for firms like Elementus to obtain

indemnities of the kind outlined above.

### Efforts To Avoid Duplication of Services

27.     As of August 1, 2022, the Committee has also selected M3 to provide financial

advisory services.  The blockchain forensics services that Elementus will provide to the Committee

are separate and distinct from the financial advisory services to be performed by M3.  Elementus

will coordinate with M3 on the services provided to the Committee to avoid any unnecessary

duplication of services by either professional during the pendency of these Chapter 11 Cases;

*provided, however*, that Elementus shall not be responsible for and shall not incur any liability

from the services performed by M3.

28.     Elementus' services are intended to complement, and not unnecessarily duplicate,

the services to be rendered by any other professional retained by the Committee in these Chapter

11 Cases.  Elementus has informed the Committee that it understands that the Committee has

retained and may retain additional professionals during the term of the engagement and will use

its reasonable efforts to work cooperatively with such professionals to integrate any respective

work conducted by the professionals on behalf of the Committee.

### Elementus' Disinterestedness

29.     In connection with the proposed retention by the Committee in these Chapter 11

Cases, Elementus has received a list of parties in interest from the Debtors, along with the names

of certain supplemental parties in interest suggested by counsel to the Committee attached to the

Galka Declaration as **Schedule 1**.

30.     Elementus has informed the Committee that, subject to the exceptions and

limitations as set forth in the Galka Declaration, Elementus: (a) has no connection with the

Debtors, their creditors, their equity security holders or other parties in interest or their respective

attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee

in any matter related to the Debtors and their estates; (b) does not hold any interest adverse to the

Debtors' estates; and (c) believes that it is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code, as required by section 1103(b) of the Bankruptcy Code.  If any

new material facts or relationships are discovered or arise, Elementus will promptly inform the

Court as required by Bankruptcy Rule 2014(a).

31.     Based on the Galka Declaration, the Committee believes that Elementus is a

"disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

32.     Based on the foregoing, the Committee believes that the employment of Elementus

would be in the best interests of the Committee, and the Debtors' estates and creditors.

## BASIS FOR RELIEF REQUESTED

I.     **The Bankruptcy Code Permits the Employment and Retention of Elementus on Terms Substantially Similar to Those in the Engagement Letter**

33.     The Committee seeks approval of the Engagement Letter, including the Fee

Structure and the Indemnity Provisions stated therein, pursuant to sections 328(a) and 1103(a) of

the Bankruptcy Code.  Section 1103(b) requires that professionals may not "represent any other

entity having an adverse interest in connection with the case."  11 U.S.C. § 1103(b).  In addition,

section 328(a) of the Bankruptcy Code provides, in relevant, part, that a committee "may employ

or authorize the employment of a professional person under section . . . 1103 of this title . . . on

any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions.

34.     The Committee believes the Fee Structure is fair and reasonable and consistent with and typical of compensation arrangements entered into by Elementus and other comparable firms in connection with the rendering of similar services under similar circumstances.  The Committee has specifically selected Elementus to serve as its blockchain forensics advisor because of its extensive experience with cryptocurrency and the novelty of this specialized field.  Further, the compensation arrangements are highly beneficial to the Debtors' estates as they provide the proper inducement for Elementus to act expeditiously and prudently with respect to the matters for which it will be employed.  The compensation of Elementus shall be subject to the standard of review only as set forth in Bankruptcy Code section 328 and not subject to any other standard of review; *provided, however*, that the U.S. Trustee shall retain the right to review Elementus' compensation based on the reasonableness standard provided for in Section 330 of the Bankruptcy Code.

35.     As discussed, Elementus satisfies the disinterestedness standard in section 1103(b) of the Bankruptcy Code.  In light of the foregoing and given the numerous issues that Elementus may be required to address in the performance of its services hereunder, Elementus' commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for services for engagements of this nature both in court and in an out-of-court context, the Committee believes that the Fee Structure is fair, reasonable, and market-based under the standard set forth in section 328(a) of the Bankruptcy Code.

**II.    Approval of This Engagement is Appropriate Pursuant to Section 328(a) of the Bankruptcy Code**

36.      Section 328 of the Bankruptcy Code provides, in relevant part, that a committee "may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).  Thus, section 328(a) permits the Court to approve the terms of Elementus' engagement as set forth in the Engagement Letter, including the Fee Structure, and the terms of the Indemnity Provisions.

37.      As recognized by numerous courts, Congress intended section 328(a) of the Bankruptcy Code to enable committees to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

38.      The Fee Structure appropriately reflects the nature of the services to be provided by Elementus and is consistent with the fee structures typically utilized by leading forensics advisors.

### III.    Relief Effective as of August 1, 2022 Is Appropriate Under the Circumstances

39.      The Committee respectfully requests entry of an order authorizing Elementus to perform blockchain forensics advisory services for the Committee effective as of August 1, 2022. Immediately upon its selection by the Committee, Elementus commenced work on several matters

and promptly devoted substantial resources to these Chapter 11 Cases pending submission and approval of this Application. Therefore, the Committee asserts that Elementus should be compensated for work performed prior to and after the entry of an order authorizing its retention.

40.     Based on the foregoing, the Committee submits that it has satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Committee to retain and employ Elementus in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## **Notice**

41.     Notice of this Application has been provided to: (a) the Debtors; (b) the Office of the U.S. Trustee; (c) counsel to the Committee; (d) the holders of the 50 largest unsecured claims against Debtors (on a consolidated basis); (e) the United States Attorney for the Southern District of New York; (f) the Internal Revenue Service; (g) the officers of the attorneys general in the states in which the Debtors operate; (h) the Securities and Exchange Commission; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

42.     No previous application for the relief sought herein has been made by the Debtors to this Court or any other court.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court grant the relief requested in this Application, the Order, and such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated: August 24, 2022

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:

*Scott Duffy*

Scott Duffy
Authorized Signatory, ICB Solutions Inc.
Co-Chair, Official Committee of Unsecured Creditors

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ELEMENTUS INC. AS BLOCKCHAIN FORENSICS ADVISOR EFFECTIVE AS OF AUGUST 1, 2022

Upon the application (the "Application")[2] of the Committee for entry of an order (this "Order") authorizing the employment and retention of Elementus Inc. ("Elementus") effective as of August 1, 2022 as the Committee's blockchain forensics advisor, on the terms set forth in the Engagement Letter; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Application having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held, if necessary, to consider the relief requested in the Application (the "Hearing"); and upon consideration of the Galka Declaration, and the record of the Hearing, if any, and all of the proceedings had before the Court; and the Court having found and determined that the terms and conditions of Elementus'

---

[1]      The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]      Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

employment, including the Fee Structure set forth in the Engagement Letter are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having found and determined that Elementus does not represent or hold any interest adverse under section 1103 of the Bankruptcy Code and is (to the extent applicable) a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code, that the relief sought in the Application is necessary and in the best interests of the Committee, the Debtors, their estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Committee is authorized to employ and retain Elementus as its blockchain forensics advisor in the Chapter 11 Cases, effective as of August 1, 2022, for the purposes set forth and upon the terms of the Engagement Letter.

2.      The Engagement letter, including, without limitation, the Fee Structure and the Indemnity Provisions (each as defined in the Engagement Letter), are approved pursuant to section 328(a) of the Bankruptcy Court.  The fees payable to Elementus shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.  The Debtors are authorized to, and shall, pay Elementus' fees and reimburse Elementus for its costs and expenses as provided in the Engagement Letter subject to the terms of this Order.

3.      Elementus shall maintain summary time records in one-hour increments which shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.  Elementus is excused from all other timekeeping requirements.

4.      Elementus is excused from the requirement to file monthly or interim fee applications; *provided that* Elementus will file a final fee application with a summary of the fees earned and expenses incurred along with a summary of the fees and expenses that have been paid. Elementus will submit, on a monthly basis, invoices (attaching the time records in one-hour increments as noted above) to the Debtors, the U.S. Trustee, and the Committee for payment of the fees incurred and expenses to be reimbursed for that month.  Such parties shall have fourteen (14) days to review and dispute any such invoice submitted by Elementus, and if no such disputes are received, the Debtors shall be authorized to pay such Elementus invoices without any further order of the Court.  If any party does dispute an invoice, the Debtors shall withhold the payment of the portion of the invoice that is disputed and promptly pay the remainder.  All objections that are not resolved shall be preserved and presented to this Court for determination at an appropriate time.

5.      Notwithstanding anything to the contrary in this Order and any provision to the contrary in the Application or the Engagement Letter, the Office of the United States Trustee for the Southern District of New York shall have the right to object to Elementus' request for compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code.

6.      The Indemnity Provisions set forth in the Engagement Letter are approved, subject during the pendency of these Chapter 11 Cases to the following:

a.   All requests for payment of indemnity, contribution, or otherwise pursuant to the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court, and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided that in no event shall any person be indemnified or

3

receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Persons;

b.  In no event shall any Indemnified Person be indemnified or receive contribution or other payment under the Indemnity Provisions to the extent the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim primarily arose out of, such Indemnified Person's bad-faith, self-dealing or breach of fiduciary duty (if any), gross negligence, or willful misconduct; and

c.  In the event that any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be annexed to Elementus' own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code.

7.      To the extent that the Application is inconsistent with this Order, the terms of this Order shall govern.

8.      Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application.

9.      The Committee and the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

10.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4

11.     This Court shall retain exclusive jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, or enforcement of this Order and the

Fee Structure.

Dated: _____, 2022
New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

AMERICAS 116654074 v15

# **EXHIBIT B**

## **GALKA Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MAX GALKA IN SUPPORT OF APPLICATION OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN**
**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**ELEMENTUS INC. AS BLOCKCHAIN FORENSICS ADVISOR**
**EFFECTIVE AS OF AUGUST 1, 2022**

I, Max Galka, pursuant to 28 U.S.C. § 1746, hereby declare that the following is

true and correct to the best of my knowledge, information, and belief:

1.      I am CEO at Elementus Inc. ("Elementus"), and am duly authorized to execute this

declaration on behalf of Elementus.  I submit this declaration pursuant to Rule 2014(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in support of the *Application of*

*the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment*

*and Retention of Elementus Inc. as Blockchain Forensics Advisor Effective as of August 1, 2022*

(the "Application").[2]  Unless otherwise stated, I have personal knowledge of the facts stated herein.

To the extent any information disclosed herein requires amendment or modification upon

Elementus' completion of further review or as additional party-in-interest information, Elementus

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417);
Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks
Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal
place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New
Jersey 07030.

[2]      Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to such terms in
the Application.

will submit supplemental materials to the Court.

2.      I have read the Application submitted in this matter and state that the information set forth therein is true and correct to the best of my knowledge, information and belief.

### Elementus' Qualifications

3.      Elementus has been asked to serve as blockchain forensics advisor to the Committee appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

4.      Elementus is a data-first blockchain intelligence and forensics firm and its data scientists and experts have a wealth of experience in mapping public blockchains. Elementus and its professionals are able to trace the flow of funds and provide detailed accounting of transaction activity occurring on the blockchain, or in industry parlance "on-chain". The Committee and the estate will benefit immensely from their specialized experience.

### Professional Compensation

5.      Subject to the Court's approval, Elementus proposes to render its services on an hourly fee basis according to its customary hourly rates in effect when the services are rendered. Elementus professionals will charge reasonable time, billed at their respective standard hourly rates, subject to periodic adjustments (with advance written notice to the Committee), with the following ranges:

| Professional | Hourly Rate |
| --- | --- |
| Chief Data Scientist, CEO | $1,000 |
| Senior Data Scientist | $800 - $900 |
| Junior Data Scientist | $600 - $800 |
| Vice President | $700 - $800 |
| Senior Software Engineer | $800 - $900 |

2

| Junior Software Engineer | $600 - $800 |
|---|---|
| Project Manager | $500 - $600 |

6.      Elementus may charge for reasonable, documented, out-of-pocket expenses for materials including computing services, software licenses, and other expenses relating to the investigation.  In addition, Elementus will charge for reasonable pre-approved travel and living expenses incurred by Elementus in performing its services at sites other than Elementus facilities.

7.      Elementus will maintain records of hours and expenses incurred in connection with the rendering of the blockchain forensics advisory services described above.

8.      However, it is not Elementus' practice—nor, to the best of my knowledge, the practice of our peers—to keep detailed time records similar to those customarily kept by attorneys. Because Elementus does not ordinarily maintain contemporaneous time records in one-tenth (0.1) of an hour increments, Elementus requests a partial waiver of the timekeeping requirements set forth in the Fee Guidelines to maintain records in the one-tenth (0.1) of an hour requirement. Specifically, Elementus proposes to maintain summary time records, in one-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.

9.       Additionally, because of Elementus' lack of experience in bankruptcy procedure, Elementus asks that it be excused from the requirement to file monthly or interim fee applications; *provided that* Elementus will file a final fee application with a summary of the fees earned and expenses incurred along with a summary of the fees and expenses that have been paid.  In addition, Elementus will submit, on a monthly basis, invoices (attaching the time records in one-hour increments as noted above) to the Debtors, the U.S. Trustee, and the Committee for payment of the fees incurred and expenses to be reimbursed for that month.  Such parties shall have fourteen

3

(14) days to review and dispute any such invoice submitted by Elementus, and if no such disputes

are received, the Debtors shall be authorized to pay such Elementus invoices without any further

order of the Court.  If any party does dispute an invoice, the Debtors shall withhold the payment

of the portion of the invoice that is disputed and promptly pay the remainder.  All objections that

are not resolved shall be preserved and presented to this Court for determination at an appropriate

time.

### **Disinterestedness**

10.    Neither Elementus, any director, officer or employee thereof, nor I, insofar as I have

been able to ascertain, represents any interest adverse to that of the Debtors' estates in the matters

upon which the Committee seeks to engage Elementus, and I believe the firm to be a "disinterested

person" within the meaning of Bankruptcy Code section 101(14).  In connection with its proposed

retention by the Committee in these cases, Elementus obtained from the Debtors and/or their

representatives (and through the assistance of the Committee's other professionals) the names of

individuals and entities that may be parties in interest in these Chapter 11 Cases and additional

names provided by counsel to the Committee (the "Potential Parties in Interest"), which parties

are listed on **Schedule 1** annexed hereto.  Elementus then compared the names of the Potential

Parties in Interest with Elementus' historical client and investor list.  This comparison showed no

connections between Elementus and any entity on the list of Potential Parties in Interest, except as

disclosed in this declaration.  In addition, the list of Potential Parties in Interest was circulated to

all employees of Elementus requesting that they inform my team of any connections or conflicts.

No responses were received.

11.    On a going forward basis, Elementus shall disclose any and all facts that come to

its attention and that may have a bearing on whether the firm, its affiliates and/or any individuals

working on the engagement hold or represent any interest adverse to the Debtors, their creditors or other parties in interest.

12.     To the best of my knowledge, I do not believe that Elementus is a "creditor" of any of the Debtors within the meaning of section 101(1) of the Bankruptcy Code.  Further, neither I, Elementus nor any member of the Elementus engagement team serving the Committee, to the best of my knowledge, is a holder of any of the Debtors' outstanding debt, equity or preferred stock investments.

13.     Neither Elementus, any member or employee thereof, nor I, insofar as I have been able to ascertain, is so connected with the Judges of the United States Bankruptcy Court for the Southern District of New York, the United States Trustee or the Assistant Trustee or Trial Attorneys for the Office of the United States Trustee, as to render the employment of Elementus, as blockchain forensics advisor for the Committee, inappropriate under Bankruptcy Rule 5002(b).

14.     Neither Elementus, any director, officer or employee thereof, nor I, insofar as I have been able to ascertain, is or was a creditor, an equity holder or insider of the Debtors.

*[Remainder of page intentionally left blank]*

5

15. Neither Elementus, any director, officer or employee thereof, nor I, insofar as I have been able to ascertain, is or was a director, officer or employee of the Debtors as defined in Bankruptcy Code sections 101(14)(B) or (C) within two years before the date of filing of the Debtors' Chapter 11 Cases.

16. On the basis of the above, I believe Elementus has met the requirements for its retention as a professional to the Committee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 24, 2022
New York, New York

/s/ Max Galka

Max Galka
CEO, Elementus Inc.

6

# **SCHEDULE 1**

**Potential Parties in Interest**

# SCHEDULE 1

## List of Schedules

| Schedule | Category |
|---|---|
| 1(a) | Current and Recent Former Entities Affiliated with the Debtors |
| 1(b) | Directors/Officers |
| 1(c) | Equity Holders |
| 1(d) | Bankruptcy Professionals |
| 1(e) | Institutional Customers |
| 1(f) | Insurance |
| 1(g) | Landlords |
| 1(h) | Legal Matters and Litigants |
| 1(i) | Non-Bankruptcy Advisors and Ordinary Course Professionals |
| 1(j) | Retail Customers |
| 1(k) | Top 50 Unsecured Creditors |
| 1(l) | Taxing Authority/Governmental/Regulatory Agencies |
| 1(m) | Utilities |
| 1(n) | Vendors |
| 1(o) | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York |

# SCHEDULE 1(a)

## **Current and Recent Former Entities Affiliated with the Debtors**

Celsius (AUS) Pty Ltd. (Australia)
Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp.
Celsius Mining IL Ltd.
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network (Gibraltar) Ltd.
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network IL Ltd. (Israel)
Celsius Network Inc.
Celsius Network LLC
Celsius Network Ltd. (UK)
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius Services CY Ltd. (Cyprus)
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
GK8 Ltd (Israel)
GK8 UK Ltd.
GK8 USA LLC
KN Media Manager LLC

# SCHEDULE 1(b)

### **Directors/Officers**

Ayalor, Amir
Barse, David
Bentov, Tal
Blonstein, Oren
Bodnar, Guillermo
Bolger, Rod
Carr, Alan Jeffrey
Cohen-Pavin, Roni
Denizkurdu, Aslihan
Deutsch, Ron
Dubel, John Stephen
Goldstein, Nuke
Kleiderman, Shiran
Leon, S. Daniel
Mashinsky, Alex
Nadkarni, Tushar
Nathan, Gilbert
Ramos, Trunshedda W.
Sunada-Wong, Rodney
Tosi, Laurence Anthony

# SCHEDULE 1(c)

## Equity Holders

Advanced Technology Fund XXI LLC
Altshuler Shaham Trusts Ltd.
Andersen Invest Luxembourg SA SPF
Artus Capital GmbH & Co. KGaA
Barrett, Craig
Barse, David
BNK to the Future
Bui, Dung
BullPerks (BVI) Corp.
Caceres, Juan Cruz
Caisse de dépôt et placement du Québec
Carter, William Douglas
CDP Investissements Inc.
Connolly, Thomas
Craig Barrett Andersen Invest Luxembourg SA SPF
European Media Finance Ltd.
Fabric Ventures Group SARL
Gialamas, John
Gumi Cryptos Capital LLC
Heliad Equity Partners GmbH & Co. KGaA
Hoffman, David
Intership Ltd.
Isaias, Estefano
JR Investment Trust
Jubayli, Jad
Kazi, Ylan
Kordomenos, James
Lamesh, Lior
Mauldin, Alan L.
Mauldin, Michelle E.
Mowry, Michael
Pistey, Robert
Remen, Yaron
Shamai, Shahar
Tether International Ltd.
tokentus Investment AG
Tran, Anhminh
Treutler, Johannes
Walsh, Sandra Knuth
WestCap Celsius Co-Invest 2021 LLC
WestCap Group
WestCap SOF Celsius 2021 Aggregator LP

WestCap SOF II IEQ 2021 Co-Invest LP

# SCHEDULE 1(d)

## **Bankruptcy Professionals**

Akin Gump Strauss Hauer & Feld LLP
Alvarez & Marsal Holdings LLC
Centerview Partners LLC
Deloitte & Touche LLP
Ernst & Young
Latham & Watkins LLP
Stretto
White & Case LLP

# SCHEDULE 1(e)

## Institutional Customers

168 Trading Ltd.
Akuna Digital Assets LLC
Alameda Research Ltd.
Amber - Maple
Amber Technologies Ltd.
Anchorage Hold LLC
Anchorage Lending CA LLC
Antalpha Technologies Ltd.
AP Capital Absolute Return Fund
AP Capital Investment Ltd.
Auros Tech Ltd.
B2C2 Ltd.
Babel Holding Ltd.
B-Brick Inc.
BCB Prime Services Ltd.
BCRS2 LLC
Belleway Ltd.
BK Coin Capital LP
Blockchain Access UK Ltd.
Blue Fire Capital Europe Cooperatief UA
CEX IO Ltd.
CMS Holdings LLC
Coinbase Credit
Core Scientific Inc.
Cumberland DRW LLC
Dexterity Capital LLC
Digital Asset Funds Management Pty. Ltd.
Digital Treasures Management Pte. Ltd.
Diversified Alpha SP
Druk Holding & Investments Ltd.
Dunamis Trading (Bahamas) Ltd.
Dunamis Trading III Ltd
DV Chain LLC
Enigma Securities Ltd.
Equities First Holdings LLC
FalconX Ltd.
Fasanara Investments Master Fund
Flow Traders BV
Folkvang SRL
Fractal
Future Technology Investment Ltd.
Galaxy

Galaxy Digital LP
Gemini Trust Co. LLC
Genesis Global Capital LLC
Grapefruit Trading LLC
GSR Markets Ltd.
Harrison Opportunity III Inc.
HAS Futures LLC
Hehmeyer LLC
Hehmeyer Trading AG
Hirokado, Kohji
Hodlnaut Pte. Ltd.
HRTJ Ltd.
Intership Ltd.
Iterative OTC LLC
JKL Digital Capital Ltd.
JSCT Hong Kong Ltd.
JST Systems LLC
Jump Trading LLC
Keyrock SA
Komaransky, Mike
Kronos Holdings Ltd.
LedgerPrime Digital Asset Opportunities
    Master Fund LP
Liquibit USD Market Neutral Arbitrage
    Fund
Liquidity Technologies Ltd.
LUOJI2017 Ltd.
Marquette Digital
Matrix Port Technologies Ltd.
Memetic Capital LP
Menai Markets Ltd.
Mountain Cloud Global Ltd.
Nascent GP Inc.
Nascent LP
New World Holdings SA
Nickel Digital Asset Fund SPC Digital Asset
    Arbitrage SPC Institutional
Nickel Digital Asset Master Fund SPC -
    Digital Factors Fund SP
Niederhoffer, Roy
NYDIG Funding LLC
Oiltrading.com Pte. Ltd.

Onchain Custodian Pte. Ltd.
Optimal Alpha Master Fund Ltd.
OSL SG Pte. Ltd.
Outremont Alpha Master Fund LP
Parallel Capital Management Ltd.
Pharos Fund BTC SP
Pharos Fund Eth SP
Pharos Fund SP
Pharos Fund SPC
Pharos USD Fund SP
Plutus21 Crypto Fund I LP
Point95 Global
Power Block Coin LLC
Prime Trust
Profluent Trading Inc.
Profluent Trading UK Ltd.
QCP Capital Pte Ltd.
Radkl LLC
Red River Digital Trading LLC
Reliz Ltd.
S&P Solutions Inc.
Scrypt Asset Management AG
SEBA Bank AG
Siafu Capital
Simplex
Symbolic Capital Partners Ltd.
Tagomi Trading LLC
TDX SG Pte. Ltd.
Tether International Ltd.
Three Arrows Capital Ltd.
Tower BC Ltd.
Tower Research Capital
Transfero Brasil Pagamentos SA
Trigon Trading Pty. Ltd.
TrueFi
Trustoken Inc.
Ultimate Coin
Vexil Capital Ltd.
Waterloo Maple Inc.
Weave Markets LP
Wincent Investment Fund PCC Ltd.
Wintermute - Maple
Wintermute Trading Ltd.
Wyre Payments Inc.
ZeroCap Ltd.

# SCHEDULE 1(f)

**Insurance**

AmTrust Underwriters Inc.
ANV Insurance
Associated Industries Insurance Co. Inc.
Atlantic Insurance
Ayalon Insurance Co.
Crum & Forster Specialty Insurance Co.
Falvey Insurance Group
Hudson Insurance Group
Indian Harbor Insurance Co.
Lloyd's of London
Markel Insurance
Marsh
Migdal Insurance Co.
Relm Insurance Ltd.
Republic Vanguard Insurance Co.
Sentinel Insurance Co.
StarStone Insurance
United States Fire Insurance Co.
Zurich Insurance Group AG

# SCHEDULE 1(g)

## **Landlords**

Algo Adtech Ltd.
Desks & More
Industrious LLC
New Spanish Ridge LLC
Regus
SJP Properties

# SCHEDULE 1(h)

## Legal Matters & Litigants

BitBoy Crypto
Bofur Capital
MS SD IRA LLC
Pharos Fund
Symbolic Capital Partners Ltd.
Vexil Capital Ltd.

## SCHEDULE 1(i)

### Non-Bankruptcy Advisors and Ordinary Course Professionals

A. Georgiou & Co. LLC
Advokatu Kontora Sorainen IR Partneriai
Buckley LLP
CMS Cameron McKenna Nabarro Olswang LLP
Cryptos Capital
Finnegan Henderson Farabow Garrett & Dunner LLP
Holley Nethercote Pty. Ltd.
Jackson Lewis PC
Matsumura, Miko
McCarthy Tetrault LLP
Taylor Wessing LLP
Uría Menéndez Abogados SLP
Wilson Sonsini Goodrich & Rosati PC

## SCHEDULE 1(j)

### Retail Customers

Abeliuk, Eduardo
Abuvala, Ravi Ryan
Adams, Darryl Thomas
Al Khoori, Mohamed Yousif Ahmed H.
Alexander, Alena
Ali, Khaleef
Ali, Yanush
AltCoinTrader Pty Ltd.
Amm, Andreas
Andari Co. Ltd.
Ankeney, John Charles
Ashizaki, Yuki
Backhausen, Martin
Baer, Matthew David
Baker, Dominic John
Baslaib, Mohamed Ali Mohamed Naser
Bauman, Simon
Bennett, Danyal
Berg, Henry Guyer
Berrada, Amin
BJ Investment Holdings LLC
BNK to the Future
Boroff, Dustin Charles
Boskovski, Nikola
Braibant, Olivier
Bressler, David Jason
Brian T. Slater Revocable Living Trust
Bright, Nicolas John
Broad Reach Consulting LLC
Brooks, Gary
Bru Textiles NV
Burkgren, Eric Alan
CAEN Group LLC, The
Campos, John Jr.
Carolyn Vincent Superannuation Fund
Carter, Luke Armstrong
Champigny, Edward William
Chang, Rickie
Chiu, James Lee
Chiu, Yee Lai
Choi, Linda Yi
Choi, Luke Kyung Goo

Christiansen, Robert Nathan
Chu, Cindy
Chulamorkodt, Natakom
Chung, Ting Kong Terence
Cipolloni, Mark J.
Coffey, Matthew
Cohen Pavon, Roni
Coinmerce BV
Collins, Nic
Conklin, Jennifer Walter
Covario AG
Crypto10 SP
Custódio, João
Damp, Steven Charles
Danz, James William
Davis, Otis
Deferred 1031 Exchange LLC
Dekker, Carlos C.
Delargy, Colin C.
Demirtas, Ali
DGL Investments LLC
Dhiraj, Mandeep
DiFiore ASA Irrevocable GST Trust
Dixon, James
Dixon, Simon
Donofrio, John
Downs, Bradley James
Druk Project Fund
Duprex, Jeffrey Paul
Ecko, Marc
Eller, Phillip Brian
Ellington, Brian
Elshafei, Ashraf
Eng Chuan, Liew
Eriks, Dennis
Farr, Nicholas
Feintisch, Adam Michael
Fertik, Michael Benjamin Selkowe
Fite, Jacob Benjamin
Fletcher, Brett
Floatzen Doo
Garner, Phillip Wayne Jr.

Gaston, Paul
Gatt, Raymond
Gilmer, George Hudson
Goh, Jian Kai
Gray, Jill Marie
Guljaš, Janoš
H Trussell Investments Pty. Ltd.
Halikias, Thomas T.
Hamilton, Nathan
Harrell, Ashley Anne
Hartley, James
Hennuyer, Fabien
Herring, Stephen Ashley
Hewes, Joshua
Hibbert, Adrian
Ho, Quoc Tri
Hoermann, Stefan
Holt, Jonathon James
HOME 007 LLC
Hughes, Gary
Hughes, Stephen
Humphreys, Steven C.
Hunt, Bryan J.
ICB Solutions
InfoObjects Inc.
Invictus Capital Financial Technologies SPC
Isaias, Estefano Emilio
Jahizi, Oliver
Jensen, Joseph
Jonas, Leah Nicole
Joseph, Sebastian
Juiris, Peter Casimir
Kalynovskyi, Dmytro
Kap, Ethan Garet
Keiser, Marc Vito
Kelly, James Patrick
Kevin Batteh Trust, The
Kim, Sungyoun
King, Christopher Scott
Koala 1 LLC
Kohji, Hirokado
Kordomenos, James Nick
Koyama, Osamu
Ku, Yuehsu
Labenek, Andrew
Lamplough, Howard

Langslet, Robert
Lehrfeld, Joseph S.
Lewis Davies, Ryan Wynn
Lewis, Howard
Liao, Guoping
Lim, Jane
Liu, Nanxi Nanqian
Luo, Edward
Lylloff, Sander
Mahoney, Justin Michael
Manea, Mircea
Manzke, Holger
Marchioni, John P.
Market, Sheeld
Martin, Patrick Victor Josef
Mastropieri, Bengi
Matsumura, Fumihiko
Matthews, Andrew
Mattina, Christopher W.
McCarty, John Edward
McClintock, Michael
McGarry, Brian Thomas
McIntyre, Deverick
McKeon, Brian Joseph
McMullen, Brian
McNeil, James W.
Meehan, Kristine M.
Mellein, John Gabriel
Mercola, Joseph Michael
Messall, Patrick
MHT Super Pty. Ltd.
Miller, Samuel Garfield, Jr.
Mohan, Arun
Moon, Wang Sik
Moser, Christopher M.
Mowry, Michael Shane
MSL Family Trust, The
Munro, Ian
Murphy, Thomas Patrick, Jr.
Musumeci, Antonio
Narayanan, Swathi Lakshmi Tirupattur
Neiman, Gary
Neste, Bradley
Nguyen, Phuc
Padalytsya, Daryna
Pae, Mitchell Chon

Pagnanelli, Victor Carl
Palm, Travis John
Papadakis, Georgios
Paris Castle IV LLC
Park, Seong
Patel, Shilla Natvarbhai
Patil, Abhitabh Aneel
Perry, Brett Alan
Peterson, Stephen Paul
Pham, Khai Trinh
Phonamenon Management Group LLC
Pierce, James
Pierson, Justin T.
Piura, Luis
Plutus21 Blockchain Opportunities II SP
Plutus21 Blockchain Yield I SP
Pomeranz, Alex Aaron
Potts, Shaun
Pronker, Anna
Pundisto, Lalana
Pusnei, Alexandru
Quinlan, Thomas
Radeckas, Domantas
Raj, Rafael
Reitz, Spencer Mcdowell
RHMP Properties Inc.
Ritter, David
Ritter, Linda J.
Ritter, Paul
Robert, Joseph Murdoch
Robinson, Andrew Douglas
Salera, Manuel
Schroeder, Jesse
Sese LLC
Shar, Stephen Phillip
Sidibe, Aissata
Singh, Balbahadur
Slater, Glen Brian
Sleeping1 LLC
Smith, David Silva
Smith, Nelson Courtney
Sondhi, Tarun
Souders, Jack Trayes
Stapleton, Paul
Steinborn, Steven Harold
Stevens, Daron Robert

Stewart, Russell Garth
Stringer, Douglas Ross
Strobilus LLC
Sun, Siqi
Sutton, Sebastian
Swyftx Pty. Ltd.
Sypniewski, Christian
Tan, Richard
Tan, Yan
Tap Root LP
Thayer, Craig William
Thomas DiFiore Childrens GST Investment
    Irrevocable Trust
Tincher, Steven Jess
Tobias, Scott Jeffrey
Tran, Anhminh Le
Trebtow, Jens
Tremann, Christopher Ernest
Tuganov, Ignat
Tychalski, George
Tyler, Craig Edward
Ubuntu Love Pty. Ltd.
Valkenberg, Renaud
Van, Loc Truyen
Vendrow, Vlad
Villinger, Christopher
Vincent, Carolyn Margaret
Vivas, Rafael
Wagner, Thomas Nichols
Walcott, Robert
Walkey, Thomas
Wang, Yidi
Wexler, Kevin Jay
White, David
Wierman, Duncan Craig
Wilcox, Waylon J.
Williams, Charles W.
Williams, Robert, II
Williamson, Hiram
Wiseman, Timothy
Wolf, Cody Lee
Wolstenholme, MacGregor
Woodward, Laurie
Wright, Christopher
Wu, Xinhan
Yao, Mark

Yates-Walker, Josh Oisin
Yeung, Tak H.
Yoon, Andrew
Young, John Martin
Yu, Byung Deok
Zhang, Xi
Zhong, Jimmy
Ziglu Ltd.
Zipmex Asia Pte. Ltd.
Zwick, Matthew James

# SCHEDULE 1(k)

## Top 50 Unsecured Creditors

Alameda Research Ltd.
AltCoinTrader Pty. Ltd.
B2C2 Ltd.
Baker, Dominic John
CAEN Group LLC, The
Chang, Rickie
Covario AG
Crypto10 SP - Segregated Portfolio of
    Invictus Capital Financial Technologies
    SPC
Danz, James William
Deferred 1031 Exchange LLC
Dekker, Carlos C.
Dentzel, Zaryn
DiFiore, Thomas Albert
Dixon, Simon
Downs, Bradley James
Farr, Nicholas
Feintisch, Adam Michael
Fite, Jacob Benjamin
ICB Solutions
Invictus Capital Financial Technologies SPC
Jeffries, David
Kibler-Melby, Cort
Kieser, Gregory Allen
Kohji, Hirokado
Lylloff, Sander
McClintock, Michael

McMullen, Brian
Murphy, Thomas Patrick, Jr.
Park, Seong
Perry, Brett Alan
Peterson, Stephen Paul
Pharos Fund SP
Pharos USD Fund SP
Raj, Rafael
Saenz, Jesus Armando
Singh, Balbahadur
Stewart, Russell Garth
Strobilus LLC
Taiaroa, Keri David
Tan, Richard
Tan, Yan
Trussell, Mark
Tychalski, George
Van, Loc Truyen
Villinger, Christopher
Vincent, Carolyn Margaret
Wexler, Kevin Jay
Wilcox, Waylon J.
Wolstenholme, MacGregor
Wright, Christopher
Yates-Walker, Josh Oisin
Yoon, Andrew
Ziglu Ltd

# SCHEDULE 1(l)

## <u>Taxing Authority/Governmental/Regulatory Agencies</u>

Alabama, State of, Securities Commission
Kentucky, Commonwealth of, Department of Financial Institutions
New Jersey, State of, Bureau of Securities
Texas, State of, Securities Board
United States, Government of the, Department of Justice
United States, Government of the, Securities & Exchange Commission
Washington, State of, Division of Securities

## SCHEDULE 1(m)

### Utilities

AT&T Inc.
Comcast Corp.
Cox Business Services LLC
EE Ltd.
Giffgaff Ltd.
Google Fiber Inc.
Hypercore Networks Inc.
Lightpath Fiber Enterprise Business Unit of Altice USA Inc.
Lumen Technologies Inc.
RingCentral Inc.
Spectrum Enterprises Inc.
Verizon Wireless Telecom Inc.

## SCHEDULE 1(n)

### Vendors

1-800 Flowers.com Inc.
1-800-GOT-JUNK? LLC
192 Business Experian
192 Business Ltd.
221B Partners
3 Verulam Buildings Barristers
4imprint Group plc
9Beach Latin American Restaurant LLC
A. Georgiou & Co. LLC
A1 Express Ltd.
A23 Boutique Hotel
A24 Ltd.
A2E
Abacus
Abacus Labs Inc.
ABF Freight System Inc.
Accretive Capital LLC
Acrion Group Inc.
Ada Support Inc.
Adobe Inc.
ADTRAV Corp.
Agile Freaks SRL-D
AgileEngine LLC
AGS Exposition Services Inc.
Ahrefs Pte. Ltd.
Ainsworth Inc.
Air Essentials Inc.
Air France-KLM SA
Air Serbia
Airspeed18 Ltd.
Akerman LLP
Akin Gump Strauss Hauer & Feld LLP
Alaric Flower Design
Alaska Air Group Inc.
Alba Invest Doo
ALCHEMIQ Catering
Alex Fasulo LLC
Algo Adtech Ltd.
AlgoExpert
Alitalia Compagnia Aerea Italiana SpA
AlixPartners LLP
Allianz Global Assistance SAS

Aloft Hotel Management Inc.
ALPHA Events Ltd.
AlphaGraphics Inc.
Amazon.com Inc.
American Airlines Group Inc.
American Family Connect Property &
    Casualty Insurance Co.
American Lock & Key Inc.
Amon Card Ltd.
Amon OU
Amplicy Ltd.
Amsalem Tours & Travel Ltd.
Andersen LLP
Any.Do Ltd.
Appbot
Apple Search Ads
Apple Search Advertisements
Apple Store
AppsFlyer Inc.
Aqua Kyoto Ltd.
Arlo SoHo Hotel
Arocon Consulting LLC
ArtDesigna
Ashby & Geddes
Aston Limo Service
AT&T Inc.
Athlonutrition S.S
Atlassian Corp. plc
Atom Exterminators Ltd.
August LLC
Auth0 Inc.
AutomationEdge Technologies Inc.
Avaya Inc.
AVL Services LLC
Azmi & Associates
B&C Camera
B&H Foto & Electronic Corp.
BambooHR LLC
Bamboozle Café
BCAS Malta Ltd.
BCL Search Inc.
Bellwood Global Transportation

Benjamin, The
Best Buy Co. Inc.
Best Name Badges
Big Cartel LLC
Bill.com Holdings Inc.
BIND Infosec Ltd.
Bionic Electronics HT Ltd.
BirchamsArt
BitBoy Crypto
Bitfinex
Bitfly Ltd.
Bitfo Inc.
BitGo Inc.
Bitmain Technologies Ltd.
Bittrex Global GmbH
Bitwave
Blacklane GmbH
Blackpeak Inc.
Blake & Co.
Block Solutions Sdn Bhd
Blockchair Ltd.
Blockdaemon Ltd.
BlockWorks Group LLC
Bloomberg Finance LP
Bloomberg Industry Group
Blue Edge Bulgaria EOOD
Blue Moon Consultants International Ltd.
Blue Rock Search LLC
BlueVoyant Israel Ltd.
Board Game Designs
Bob Group Ltd.
Bolt Food
Bookyourcovidtest.com
Boston Coach Corp.
Brave Software International
Brazen Head Irish Pub
Brendan Gunn Consulting Group
British Airways plc
Brooklyn's Down South
BrowserStack Inc.
BTC 2022 Conference
BTC Media LLC
Budget Rent A Car Ltd.
Bulwerks LLC
Bulwerks Security
Bustos, Victor Pla

Buzzsprout
C Street Advisory Group
Cablevision Lightpath LLC
Calendly LLC
California, State of, Department of Financial
    Protection and Innovation
CAN Mouzouras Electrical Contractors
Canva Inc.
Caola Co. Inc.
Capitol Hill Hotel
Caplinked Inc.
Carey Executive Transport
Carithers Flowers
Carmo Cos.
Carta Inc.
Caspian Holdings Ltd.
CAYO Rafał Molak
CDPQ US Inc.
CDW Corp.
Chain of Events SAS
Chainalysis Inc.
Chamber of Digital Commerce, The
Chick-fil-A Inc.
Chief
Ciochina, Ionut Lucian
Cision US Inc.
CitizenM Operations Holding BV
Cleverbridge AG
Click and Play - Conteudos Digitais Lda
ClubCorp Holdings Inc.
CMS CMNO LLP
CoderPad Inc.
Coffee Distributing Corp.
Cogency Global Inc.
CoinDesk Inc.
Coinfirm Ltd.
Coinlend GmbH
CoinMarketCap OpCo LLC
CoinRoutes Inc.
College Investor LLC, The
Comcast Corp.
Compliance Risk Concepts LLC
Concorde Hotel Ltd., The
Consensus Sales Inc.
ConsenSys AG
Constantinou, Elpida

Consumer Technology Association
Contentful Inc.
Cooper Global Ltd.
Coppell FC
Core Club, The
Core Scientific Inc.
Corsair Gaming Inc.
Costco Wholesale Corp.
Coursera Inc.
Cox Business Services LLC
Creative Video Productions Ltd.
Creditor Group Corp.
Creel, Garcia-Cuellar, Aiza y Enriquez SC
Crelin Peck Consulting LLC
CRP Security Systems Ltd.
Crypto Fiend
Crypto Love
CryptoDailyYT Ltd.
CryptoRecruit Pty. Ltd.
CryptoWendyO
CSC
CT Corp.
C-Tech Constandinos Telecommunication
    Ltd. Co.
Cucio Guisordi, Andreia
Curb Mobility LLC
CVS Pharmacy Inc.
Cyesec Ltd.
CYTA Ltd.
D'Albert, Matthew
Dalvey & Co.
Dan Hotels Ltd.
Daniel J. Edelman Inc.
Data Dash Inc.
Data4U Ltd.
Datapoint Surveying & Mapping
David Meltzer Enterprises
David Rabbi Law Firm
DBeaver
Dealex Moving LLC
Dearson Levi & Pantz PLLC
Decentral Media Inc.
DeepL SE
Del Friscos Grille
Delaware, State of Division of Corporations
Dell

Deloitte Tax LLP
Delta Air Lines Inc.
Demetriou, Adonis
Derriere's Gentleman's Club
Desk doo
Dezenhall Resources Ltd.
DHL
Digital Asset News LLC
Diplomat Resort, The
DNSFilter Inc.
Do Not Sit On The Furniture
Docker Inc.
DoiT International
DoiT International UK & I Ltd.
DoorDash Inc.
Dow Jones & Co. Inc.
Dragos DLT Consulting Ltd.
DRB Hosting Ltd. (Deribit)
Dream Hotels
Dribbble Holdings Ltd.
DSV AS
Dune Analytics AS
Dynasty Partners LLC
E.R. Bradleys Saloon
Eagle County Regional Airport
Ecrime Management Strategies Inc.
Edgewater Advisory LLC
EE Ltd.
Egon Zehnder International Inc.
El Al Israel Airlines Ltd.
Elements Massage Ltd.
Elite Marketing Group LLC
Elmwood Design Ltd.
Emanuel Clodeanu Consultancy SRL
Embassy Suites Hotels
Emirates Group, The
Enginuity on Call
EnjoyMaloy Trade Party
Enlightium Ltd.
ENSafrica
Enterprise Digital Resources Ltd.
Enterprise Rent-A-Car Co. Inc.
Epitome Capital Management Pty. Ltd.
Espinhal, Luis Filipe
Estate of Edward W. Price, Jr.
Etsy Inc.

Eversheds Sutherland
EXDO Events Center
Expedia Group Inc.
Expo Group Inc, The
Exquisite Sounds Entertainment
EY
ezCater Inc.
Facebook
Fairmont Austin Lodging
FalbaSoft Cezary Falba
Falkensteiner Hotels & Residences
Fatal Ltd.
FatCat Coders
Fattal Hotels Ltd.
FedEx Corp.
Female Quotient LLC, The
Fibermode Ltd.
Filmsupply LLC
Financial Times Group Ltd.
FiNext Conference
FingerprintJS Inc.
Finnegan Henderson Farabow Garrett
    Dunner LLP
First Class Vending Inc.
Fixer.io
Flixel Inc.
Flonlights Ltd.
Flowroute LLC
FluXPO Media
Flyday Consultancy
Forkast Ltd.
Forter Inc.
Frame.io Inc.
Freeman
Fromday-One BV
Frontend Masters
FSCom Ltd.
Fusion Bowls
G&TP Sweden AB
Gandi SAS
Gartner Inc.
GEA Ltd.
Gecko Labs Pte. Ltd.
Gecko Technology Partners Ltd.
GEM
Gett Inc.

Giftagram USA Inc.
Gila Dishy Life Coach LLC
Gilbert + Tobin
GitBook SAS
GitHub Inc.
GitKraken
GK8 Ltd.
Glovo
GoDaddy.com
Gogo Air International SARL
Goin' Postal
Google Ads
Google Cloud
Google Fi
Google Fiber
Google LLC
Google Play
Google Workspace
GoToAssist
Grammarly Inc.
GreyScaleGorilla
Grit Daily News
GrubHub Inc.
GuardianArc International LLC
H2Prod
Halborn Inc.
Hampton Inn
HanaHaus
Handel Group LLC
Harris-Harris Group LLC, The
Haruko Ltd.
Hattricks Tavern
Headway Workforce Solutions Inc.
Healthy Horizons Ltd.
Heathrow Express Operating Co. Ltd.
Hedgeguard
HeleCloud Ltd.
HelpSystems LLC
Henriksen-Butler Nevada LLC
Hertz Corp., The
Herzog Fox & Neeman
Highlight Films Ltd.
Hilton Worldwide Holdings Inc.
HireRight LLC
HMRC Shipley
Holland & Knight LLP

Home Depot Inc., The
Hootsuite Inc.
Horasis
Hotel Da Baixa Prata Lda.
Hotel Majestic
Hotel Midtown Atlanta
Hotels.com
Hudson Standard, The
Hyatt Hotels Corp.
Hysolate Ltd.
I.A.M.L Ltd.
Ideal Communications Inc.
Idemia Group SAS
Illumiti Corp.
Incorporating Services Ltd.
Indian Eagle
Information, The
Infura Inc.
InGenie Ltd.
Innovatica LLC
Inside.com Inc.
Insider Inc.
Insperity Inc.
Instacart
Integrated Security & Communications Inc.
Intelligo Group USA Corp.
Intercontinental Hotel Group plc
Intercontinental Miami
Intertrust NV
Intuit Inc.
InvestAnswers
ip-api
IPQualityScore
IST NY Inc.
Iterable Inc.
Ivan on Tech Academy
Jackson Lewis LLP
Jaffa Hotel, The
JAMS Inc.
Jarvis Ltd.
JB Hunt Transport Services Inc.
JetBlue Airways Corp.
JetBrains sro
Joberty Technologies
John Lewis & Partners
JSC Royal Flight Airlines

Juliet International Ltd.
Jumpcut 3D
Juniper Office
Junk Masterz LLC, The
Junkluggers LLC, The
JV Associates Inc.
K.F.6 Partners Ltd.
Kairon Labs BV
KALC LLC
Kanoo Pays
Keeper Security
Kenetic Trading Ltd.
Kerry Hotel HongKong
KeyFi Inc.
Kforce Inc.
Kif, Evgeni
Killian Firm PC, The
Kimpton Surfcomber Hotel
KINTSUGI, Unipessoal Lda.
Knobs BAC
Kohl's
Korn Ferry
Koutra Athos Sotiris
Krispy Kreme
Kroll Advisory Ltd.
L&L Moving Storage & Trucking LLC
La Maison Favart
Lanktree, Owen
Las Vegas Window Tinting
Latham
LaunchDarkly
Lawn Care
LawnStarter
Leaa
Left House, The
Lima, Esther
Line Group
LinkedIn Corp.
LinkedIn Ireland Unlimited Co.
Lithify Ltd.
Locate852
Loews Hotels
Logitech
Logshero Ltd.
Logz.io
LS Future Technology AB

Lucidchart
Lucille's Smokehouse Bar-B-Que
Lufthansa Deutsche
Lumen
Lunar Squares
LVC USA Inc.
Lyft
Madison Liquidators
MadRev LLC
Makarim & Taira S.
Maltego Technologies
Mambu Tech BV
Mammoth Growth LLC
Mandarin Oriental Hotel
Manhattan Bagel
Manzo's Suites
Maren Altman FZCO
Marios Locksmith Ltd.
Marriott Hotels & Resorts
Marsh USA
Maxon Corp.
Mayami Mexicantina
Mazars LLP
Mazars Ltd.
McCarthy Tetrault LLP
McLagan Partners Inc.
MCM 965
mDesign Holdings Ltd.
MediaOne Partners
Melio
Memorisely
Metropol Palace
MF Partners Ltd.
MFA Network
MGM Grand Hotel LLC
Miami Beach Convention Center
Michael Page International Inc.
Michaels Cos. Inc., The
Microsoft Azure Inc.
Microsoft Corp.
Million Roses, The
MINDS
Minuteman Press International Inc.
Mixed Analytics
Mixpanel Inc.
Momentum Media Group

Monarch Blockchain Corp.
Monday.com Ltd.
MOO Print Ltd.
Moralis Academy
Morris Manning & Martin LLP
Moschoulla Patatsou Christofi
Motion Array
Motion Design School Co.
Move 4 Less LLC
MTA SpA
Music 2 the Max
MVP Workshop
Myers-Briggs & Co. Inc.
MythX
Namecheap Inc.
National Office Interiors & Liquidators
National Railroad Passenger Corp.
Nationwide Multistate Licensing System &
    Registry
Navex Global Inc.
NBC Universal
Necter
Nevada Sign
New Spanish Ridge LLC
New York Times Co., The
Next Web Events BV, The
NextGenProtection
NICE Systems UK Ltd.
Nico Signs Ltd.
NordLayer
Nordlogic Software SRL
Nordstrom Inc.
Nossaman LLP
Notability Partners
Notarize
Nothing Bundt Cakes
Nuri
NuSources
Nyman Libson Paul LLP
OAKds Inc.
Ocean View Marketing Inc.
Office Depot
Office Movers Las Vegas
Office Star B2B Ltd.
OfficeSpace Software Inc.
OfficeVibe

OKEx
Onchain Custodian Pte. Ltd.
Onfido
Onfido Inc.
Onfido Ltd.
Optimizely Inc.
Oracle Corp. UK Ltd.
Otter.ai
OVF Customer.io LLC
PABXL
Pack & Send
Paddle
Pagliara Entertainment Enterprises LLC
Palantir Security Ltd.
Panasonic Avionics Corp.
Panera Bread
Panorays Ltd.
Papaya Global HK Ltd.
Park MGM Las Vegas
Park Plaza Hotels
Parklane Resort & Spa
Party City
Paxful Inc.
Payplus by Iris
Payplus Ltd.
Peas Recruitment Ltd.
Peninsula Business Services Ltd.
Phase II Block A South Waterfront Fee LLC
Photo Booth Vending
Plaid Inc.
Pluralsight Inc.
Polihouse Boutique Hotel
Polyrize Security Ltd.
Portswigger Ltd.
Postman Inc.
Postmates Inc.
Practising Law Institute Inc.
Premaratne, Inesha
Premier Due Diligence LLC
Premium Beat
Prescient
PRG U.S. Inc.
Print Hoboken LLC
Printful Inc.
Priority Power
Pro Blockchain Media LLP

Proof of Talent LLC
Protect Operations Ltd.
PSE Consulting Engineers Inc.
PSJ Kanaris Enterprises Ltd.
PTI Office Furniture
PubliBranco
Pure Marketing Group Corp.
Puressence Ltd.
Quality Inn & Suites Hotel
Quantstamp Inc.
Quoine Pte. Ltd.
RA Venues at Churchill War Rooms
Rails Tech Inc.
Real Vision Group
Rebecca Sweetman Consulting Ltd.
Reddit Inc.
Redk CRM Solutions Ltd.
Reflectiz Ltd.
Regus Management Group LLC
reMarkable AS
Residence Inn
Resources Global Professionals
Restream.io
Retool Inc.
Rever Networks Inc.
RFO Conferences Organizing LLC
RingCentral Inc.
Ritz-Carlton, The
Rosewood Hotel & Resorts LLC
Rothschild TLV
Royal Mail plc
Royalton Hotel
Sabana Labs SL
Saffron Indian Cuisine
Saint Bitts LLC
Sam's Club
Sam's Limousine & Transportation Inc.
SAP America Inc.
Schoen Legal Search
ScraperAPI
Seamless
SecureDocs Inc.
Securitas Security Services USA Inc.
Segment Inc.
Selfridges
SendSafely

Sentry
Sevio FZC
SewWhatAndWear
Sheraton Hotels
Shutters on the Beach
Shutterstock
Silhouette Building, The
Similarweb Inc.
SJP Properties General Construction
Sketch BV
Skew Ltd.
Slack Technologies LLC
SlideTeam
Small Pocket Video
Smart City Networks LP
Smartcontract Inc.
SMSF Association
Snowflake Inc.
So & Sato Law Office
Soho Beach House
SolarWinds
Soltysinksi Kawecki Szlezak
SonarSource
South City Kitchen
Southwest Airlines
Sovos Compliance
SP V1CE Ltd.
Spears Electric
Spectrum
Sponsor United
Sports1ternship LLC
SpotHero
Standard Restaurant Equipment Co.
Staples
Starbucks
Statusgator
Stephanos Greek & Mediterranean Grill
Stuart Tracte Photography
Studio ViDA
Sublime HQ Pty. Ltd.
SuperSonic Movers LLC
Surety Solutions
Swag.com
Swept Cleaning Service of Austin
Swiss International Air Lines Ltd.
SXSW LLC

Synapse Florida
Syndic Travel
TAAPI.IO sro
Tableau Software LLC
Talking Cocktails
Tampa Printer
Target Corp.
TaskRabbit
TaxBit Inc.
Taylor Wessing LLP
TCL Publishing Ltd.
Teamz Inc.
Tembo Embroidery & Custom Merchandise
Ten Manchester Street Hotel
Tenderly doo
Terra Panonica
TET Events LLC
Thimble Insurance
Thomson Reuters
Thunderclap LLC
Titan Office Furniture Ltd.
T-Mobile US Inc.
TokenTalk Ltd.
Toll Free Forwarding
Toolfarm
Towers Watson Ltd.
Trade Group Inc., The
TradingView Inc.
TransUnion
Trash Cans Warehouse
TRD Comm
Trello Inc.
Trovata Inc.
Trustpilot Inc.
TubeBuddy
Turkish Airlines
Twenty84 Solutions
Twilio Inc.
Twitter Inc.
Uber
Uber Eats
Udemy Inc.
Uline Inc.
Unbound Tech Ltd.
Unifire Extinguishers Ltd.
United Airlines

University Arms Hotel
Unstoppable Domains Inc.
UPS
Upstager Consulting Inc.
UrbanStems Inc.
USA Strong Inc.
UsabilityHub Pty. Ltd.
UsaStrong.io
USPS
V3 Digital Ltd.
Valere Capital
Vanguard Cleaning Systems of Las Vegas
Varonis Systems Inc.
VCU Blockchain
Vercel Inc.
Verified First LLC
VerifyInvestors.com
Verizon Wireless
Vert & Blanc Enterprises Ltd.
Viasat Inc.
Virtru Corp.
Virtual Business Source Ltd.
Virtually Here For You Ltd.
Vivid Edge Media Group
Volta Systems Group
VoskCoin LLC
VSECNOW Ltd.
Walgreens Boots Alliance Inc.
Wall Street Journal
Walmart Inc.
Warwick Hotel Ltd.
Wayfair Inc.
WCEF LLC
West Coast Pure Water LLC
WestCap Management LLC
Whirling Dervish Productions
Wilde Aparthotels
Wings Hotel, The
Wintermute Trading Ltd.
Wolf Theiss
Wolt
Wolters Kluwer NV
Workland
Workspace Management Ltd.
World Economic Forum
WP Engine Inc.

Wyndham Hotels & Resorts Inc.
Wynn Las Vegas
Yellowgrid
yellowHead Ltd.
Yohann
YouTube Premium
Zapier.com
Zegans Law Group Pllc, The
Zendesk Inc.
Zeplin Inc.
Zoho Corp.
Zoom Video Communications Inc.
Zubtitle LLC
Zuraz97 Ltd.

# SCHEDULE 1(o)

## U.S. Trustee Personnel, Judges, and Court Contacts for the Southern District of New York

Abriano, Victor
Arbeit, Susan
Beckerman, Lisa G.
Bruh, Mark
Chapman, Shelley C.
Cornell, Shara
Drain, Robert D.
Gannone, James
Garrity, James L., Jr.
Glenn, Martin
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Jones, David S.
Joseph, Nadkarni
Lane, Sean H.
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morris, Cecelia G.
Morrissey, Richard C.
Ogunleye, Alaba
Riffkin, Linda A.
Rodriguez, Ilusion
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Velez-Rivera, Andy
Vescovacci, Madeleine
Wells, Annie
Wiles, Michael E.
Zipes, Greg M.

## SCHEDULE 2

**Engagements with Potential Parties in Interest**

## Schedule 2

## Potential Connections or Related Parties

- Elementus, Inc. ("Elementus") currently purchases or recently has purchased goods and services in the ordinary course of business and in the open market from vendors who are listed on Schedule 2 as parties-in-interest to these proceedings.  Similarly, customers of Elementus, and debtors and parties-in-interest with respect to matters in which Elementus is currently involved or recently has been involved in various capacities, also purchase or recently have purchased, or sell or recently have sold, goods and services in the ordinary course of business and in the open market from or to certain of the persons and entities listed on Schedule 2 as parties-in-interest to these proceedings.  To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- Elementus recently has received equity investments from entities who are listed on Schedule 2 as parties-in-interest to these proceedings. In aggregate, these equity holdings represent less than 5% of Elementus' total fully diluted shares issued and outstanding on the date hereof. Additionally, entities who are listed on Schedule 2 as parties-in-interest to these proceedings may be affiliates or related parties to entities who have recently made equity investments in Elementus. To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

- Elementus currently serves or recently has served as a technology provider to various entities which have purchased, or currently purchase, software services and/or other professional services from entities listed on Schedule 2 as parties-in-interest to these proceedings. Additionally, Elementus may in the future provide software services and/or professional services to entities listed on Schedule 2 as parties-in-interest to these proceedings. To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.

**Equity holders and potential affiliates or related parties**

| Party in Interest | Parties in Interest List Classification(s) | Disclosure |
|---|---|---|
| Alameda Research Ltd. | Institutional Customers and Top 50 Unsecured Creditors | • Elementus equity holder with aggregate ownership less than 5% of total fully diluted shares issued and outstanding<br><br>• Additionally, Elementus may in the future provide software services and/or professional services to this entity and/or affiliates and related parties<br><br>• To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings. |
| Blockchain Access UK Ltd. | Institutional Customers | • Potential affiliate or related party of Elementus equity holder with aggregate ownership less than 5% of total fully diluted shares issued and outstanding<br><br>• Additionally, Elementus may in the future provide software services and/or professional services to this entity and/or affiliates and related parties<br><br>• To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings. |
| Gemini Trust Co. LLC | Institutional Customers | • Affiliate or related party of Elementus equity holder with aggregate ownership less than 5% of total fully diluted shares issued and outstanding<br><br>• Additionally, Elementus may in the future provide software services and/or professional services to this entity and/or affiliates and related parties |

| | | |
|---|---|---|
| | | • To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings. |
| BlockFi | Significant Competitors | • Elementus equity holder with aggregate ownership less than 5% of total fully diluted shares issued and outstanding<br><br>• Additionally, Elementus may in the future provide software services and/or professional services to this entity and/or affiliates and related parties<br><br>• To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings. |

**Entities Elementus currently provides software services and/or professional services**

| Party in Interest | Parties in Interest List Classification | Disclosure |
| --- | --- | --- |
| Deloitte & Touche LLP | Institutional Customers | <ul><li>Elementus currently serves or recently has served as a technology provider to the entity which has purchased software services and/or other professional services</li><li>To the best knowledge of the professionals at Elementus on the date hereof, such relationships have been unrelated to the Debtors, do not create interests adverse to the Debtors and are not in connection with these proceedings.</li></ul> |

## **EXHIBIT C**

**Engagement Letter**

1



**ELEMENTUS INC. MASTER SERVICES AGREEMENT**

**ELEMENTUS INC. ORDER FORM / ENGAGEMENT LETTER**

**Date Prepared:** August 23, 2022
**Prepared for:** The Official Committee of Unsecured Creditors of Celsius Network LLC

| Customer Information | |
|---|---|
| **Company Name** | The Official Committee of Unsecured Creditors ("<u>Customer</u>") of Celsius Network LLC (together with its affiliates that now or hereafter may be debtors in the Cases described below, the **"<u>Debtors</u>"**) |
| **Address** | c/o White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020 |
| **Primary Customer Contact** | Attention: Gregory F. Pesce, Esq.<br>gregory.pesce@whitecase.com |

| Term | |
|---|---|
| **Start Date** | Effective Date (defined below) |
| **Initial Term Length** | From the Effective Date until dissolution of the Customer or the bankruptcy case with respect to Debtors (the "<u>Case</u>") is otherwise terminated (the "<u>Term</u>") |
| **Exclusivity** | During the Term of this Agreement, Elementus will not represent other clients in connection with the Debtors' Case in a manner that would be directly adverse to Customer.  For the avoidance of doubt, the foregoing shall not prohibit Elementus from providing software or services to third parties in the ordinary course of business. |

| Professional Services and Fees | | |
|---|---|---|
| **Professional Services** | **Professional** | **Hourly Rate** |
| | Chief Data Scientist, CEO | $1000 |
| | Senior Data Scientist | $800 - $900 |
| | Junior Data Scientist | $600 - $800 |
| | Vice President | $700 - $800 |
| | Senior Software Engineer | $800 - $900 |
| | Junior Software Engineer | $600 - $800 |

| | |
|---|---|
| Project Manager | $500 - $600 |

**Elementus Scope of Work**

Elementus is a data-first blockchain intelligence and forensics company. Our industry-leading proprietary technology is backed by the most comprehensive mapping of public blockchains. Elementus' team of data scientists and blockchain experts will provide forensic services that trace the flow of funds and provide a detailed accounting of transaction activity that occurred on-chain. Elementus will be conducting an objective accounting of what occurred on-chain. Blockchains are inherently independently verifiable.

Scope of Services are as follows:

1. Provide advisory services with respect to on-chain flow of funds and Debtors' on-chain posture.
2. Assistance with mapping Debtors' entities on-chain.
3. Assistance with mapping Debtors' counterparties and related parties on-chain.
4. Assistance with tracing the flow of funds between Debtors and counterparties.
5. Assistance with providing a reconciliation of all Debtors' transactions on-chain.
6. As required, assistance with producing written reports and materials to illustrate and support on-chain findings.
7. Attendance at meetings and assistance in discussions with stakeholders and other third parties, as requested.
8. Render such other general business consulting or such other assistance as the Customer or its counsel may deem necessary and as is ancillary to the services described above.
9. Such other assistance as Elementus and the Customer shall mutually agree in writing.

**Time & Materials:**

Elementus may charge for reasonable time and reasonable, documented, out-of-pocket expenses for materials including computing services, software licenses, and other expenses relating to the investigation.

**Payment Terms**

| | |
|---|---|
| **Payments Terms** | The Debtors shall pay the Fees and expenses set forth above and the expenses in § 4.3 of the Terms and Conditions (defined below) in arrears on a monthly basis, but subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules of the U.S. Bankruptcy Court for the Southern District of New York (the "Court"), and pursuant to any additional procedures that may be established by the Court specifically for this matter.  The foregoing supersedes § 4 of the Terms and Conditions to the extent of any conflict. |
| **Indemnification** | For the avoidance of doubt, any damages that result from Customer's obligations under § 8.2 of the Terms and Conditions will solely be the financial responsibility of the Debtors and Customer shall have no financial responsibility thereunder.  The foregoing supersedes § 8.2 of the Terms and Conditions to the extent of any conflict. |

Elementus Inc., a Delaware corporation, located at 347 Fifth Ave, Suite 1402-337, New York, NY 10016 ("Elementus") is pleased to submit this Engagement Letter for the Official Committee of Unsecured Creditors of Celsius Network LLC.

This Master Services Agreement ("Agreement") by and between Elementus, and the Customer is made and entered into as of August [__], 2022 (but with effectiveness as of August 1, 2022) ("Effective Date"). This Agreement includes, is subject to, and incorporates herein by reference: (a) the above Order Form, (b) any Order Forms subsequently entered into by the Parties which, to the extent required by applicable law, has been approved by the Court (this clause supersedes § 2.2 of the Terms and Conditions to the extent of any conflict), (c) all Addendums attached hereto, as applicable (each, an "Addendum"), and (d) and Elementus' standard Terms and Conditions, which are attached hereto (the "Terms and Conditions"). The Terms and Conditions contain, among other things, warranty disclaimers, liability limitations and use limitations.  There shall be no force or effect to any different terms of any related purchase order or similar form even if signed by the Parties after the date hereof.  Elementus and Customer are each referred to herein as a "Party" and together, the "Parties".  Capitalized terms not defined in this Order Form shall have the meanings ascribed to them in the Terms and Conditions or Addendums, as applicable.  Unless specifically modified in the Order Form, all terms in the Terms and Conditions shall remain unchanged and in full force and effect.  In the event of any conflict between the Terms and Conditions and the terms of an Order Form, the Terms and Conditions shall control unless the Order Form states that a specific provision of the Terms and Conditions will be superseded by a specific provision of the Order Form.

Court Approval.  This Agreement is subject to the entry of an order of the Court (the "Court Order") approving the retention of Elementus pursuant to the terms hereof and, until such order has been entered by the Court and is effective and non-appealable, Elementus shall have no obligation to provide any Services hereunder.  The Customer will use its best efforts to ensure that the Court authorizes the Debtors to honor their obligations under this Agreement, including all indemnification obligations hereunder and payment by the Debtors of all amounts owing to Elementus hereunder in accordance with the terms hereof.  The Customer shall use commercially reasonable efforts to obtain prompt authorization of the retention of Elementus, effective as of August 1, 2022, on the terms and provisions in this Agreement.  The Court Order shall be acceptable to Elementus in its reasonable discretion.  In seeking Elementus' retention, the Customer acknowledges and agrees that Elementus' expertise was an important factor in determining the amount and terms of the various fees set forth herein and that the various fees payable to Elementus hereunder are reasonable and appropriate in light of the experience of Elementus, the time commitment required to perform the Services, the staffing requirements to perform the Services, and the opportunity cost to Elementus of such a commitment.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, intending to be legally bound, the Parties have caused their duly authorized officers to execute this Agreement as a sealed instrument, as of the Effective Date.

**ELEMENTUS INC.**

By:

Name: Max Galka

Title: CEO

**CUSTOMER**

By:

_____

Scott Duffy
Authorized Signatory, ICB Solutions Inc.
Co-Chair, Official Committee of Unsecured Creditors

**IN WITNESS WHEREOF**, intending to be legally bound, the Parties have caused their duly authorized officers to execute this Agreement as a sealed instrument, as of the Effective Date.


**ELEMENTUS INC.**

By:

Name:

Title:


**CUSTOMER**
By:


*Scott Duffy*
Scott Duffy
Authorized Signatory, ICB Solutions Inc.
Co-Chair, Official Committee of Unsecured Creditors

## TERMS AND CONDITIONS

PLEASE READ THESE TERMS AND CONDITIONS ("TERMS AND CONDITIONS") CAREFULLY BEFORE USING THE SERVICES OFFERED BY ELEMENTUS INC. ("ELEMENTUS").  BY MUTUALLY EXECUTING ONE OR MORE ORDER FORMS WITH ELEMENTUS WHICH REFERENCE THESE TERMS AND CONDITIONS (EACH, AN "ORDER FORM"), CUSTOMER AGREES TO BE BOUND BY THESE TERMS AND CONDITIONS (TOGETHER WITH ALL ORDER FORMS AND APPLICABLE ADDENDUMS, THE "AGREEMENT") TO THE EXCLUSION OF ALL OTHER TERMS.  IN ADDITION, ANY ONLINE ORDER FORM WHICH CUSTOMER SUBMITS VIA ELEMENTUS' STANDARD ONLINE PROCESS AND WHICH IS ACCEPTED BY ELEMENTUS SHALL BE DEEMED TO BE MUTUALLY EXECUTED.  IF THE TERMS OF THIS AGREEMENT ARE CONSIDERED AN OFFER, ACCEPTANCE IS EXPRESSLY LIMITED TO SUCH TERMS.

1. **Definitions**.

    1.1    "Addendum" means one or more addendums for certain Services attached to an Order Form.

    1.2    "Confidential Information" means to the extent previously, presently or subsequently disclosed by or for either Party (the "Disclosing Party") to the other Party (the "Receiving Party") all financial, business, legal and technical information of the Disclosing Party or any of its affiliates, suppliers, customers and employees that is (a) is in written, graphic, machine readable or other tangible form and is marked "Confidential," "Proprietary" or in some other manner to indicate its confidential nature, or (b) in the case of oral or visual disclosure is identified as confidential at the time of disclosure, or (c) under the circumstances should in good faith be considered to be confidential.  Confidential Information includes, without limitation, information related to: research, product plans, products, developments, inventions, processes, designs, markets, business plans, agreements with third parties, services, customers, marketing or finances of either Party, the content or existence of any negotiations, and pricing.  Notwithstanding the foregoing, the Services, Inventions (as defined in Addendum A), Deliverables, Elementus Materials, Feedback, and all pricing information set forth in an applicable Order Form, shall be deemed Confidential Information of Elementus without any need for designating the same as confidential or proprietary.

    1.3    "Customer Data" means any data or other content or information provided, uploaded, or submitted by or on behalf of Customer or Debtors to Elementus in connection with the Services, and including, without limitation, the Public Customer Submissions (defined below).

    1.4    "Documentation" means any official user guide, help information and other instructive documentation regarding the applicable Services that is delivered by Elementus to Customer in electronic or other form, if any, including any updates provided by Elementus from time to time.  For the avoidance of doubt, Documentation shall not include website marketing materials or sales presentations.

    1.5    "Intellectual Property Rights" means all rights of the following types, under the laws of any jurisdiction worldwide: (a) rights associated with works of authorship, including exclusive exploitation rights, copyrights, and moral rights; (b) trade secret rights; (c) trademark rights; (d) patent rights; (e) mask work, *sui generis* database rights, and industrial property rights; (f) other proprietary rights of every kind and nature; and (g) rights in or relating to registrations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the above.

    1.6    "Platform" means, to the extent applicable, the platform provided by Elementus to Customer to access and use via the internet, including any software, data, interfaces, tools, APIs, utilities, templates, forms, derivatives, improvements, enhancements, updates, patches and/or extensions related thereto.

    1.7    "Services" means any products, services, and data made available by Elementus to Customer, including the Platform (if applicable) and Professional Services (if applicable), and specified in an Order Form mutually agreed upon by the Parties in writing.

2. **Services**.

    2.1    **Free Services**. [Intentionally Omitted.]

    2.2    **Order Forms.**  This Agreement will be implemented through one or more written Order Forms. Upon mutual execution and, to the extent necessary, approval by the Court, each Order Form shall

be incorporated into and form a part of the Agreement.  Subject to the terms and conditions of this Agreement, Elementus will use commercially reasonable efforts to provide Customer with the Services to the extent specified in an Order Form.  Such Services may be subject to separate attached Addendums, as applicable.  Any change to the terms of this Agreement within an Order Form or an Addendum will apply only to the Services described therein.  Elementus may provide the Services directly, or indirectly using contractors or other third party vendors or service providers.  For clarity, the Platform is provided on a remote software-as-a-service basis (as hosted by or on behalf of Elementus) and no code will be provided to Customer hereunder.

2.3     **Access and Account Setup**. Subject to the terms and conditions of the Agreement, and to the extent applicable, Elementus will provide Customer with access privileges that permit Customer to access and manage its Platform account ("Customer Account") and access, analyze, and download Customer Data.  The Platform may be accessed and used by a limited number of Customer users authorized in an Order Form (the "Authorized Users").  Customer is solely responsible for the activity that occurs on the Customer Account, and for keeping the Customer Account password secure. Customer may never use another person's user account or registration information for Elementus' Platform without permission. Customer shall be responsible for the acts or omissions of any person who accesses the Platform using passwords or access procedures provided to or created by Customer.  Customer will use reasonable efforts to prevent any unauthorized use of the Platform, and will promptly notify Elementus in writing of any unauthorized use that comes to Customer's attention and provide all reasonable cooperation to prevent and terminate such use.

2.4     **Customer Responsibilities and Cooperation.**  Customer acknowledges that provision of the Services may require the reasonable cooperation of Customer personnel, as may be requested by Elementus from time to time including, without limitation, Customer shall: (a) provide Elementus access to its various Customer Data sources as reasonably requested by Elementus in order to provide the Services; (b) carry out all other Customer responsibilities set out in this Agreement and within an applicable Order Form in a timely and efficient manner, and Elementus may adjust any agreed timetable or delivery schedule as reasonably necessary in the event of any delays in Customer's provision of such assistance as agreed by the Parties; and (c) ensure that Authorized Users use the Platform and the Documentation in accordance with the terms and conditions of this Agreement.  Customer shall be responsible for any Authorized User's breach of this Agreement.

2.5     **Support Services.** Provided that Customer is in compliance with the terms and conditions of this Agreement, to the extent applicable, Elementus shall use commercially reasonable efforts to make the Platform available twenty-four (24) hours a day, seven (7) days a week.  Technical support will be available from 9:00 a.m. to 5:00 p.m. ET, Monday through Friday, excluding Federal holidays.

2.6     **Modifications and Adjustments; Beta Versions.**  Elementus shall have no obligation under this Agreement or otherwise to provide any updates, patches, or enhancements.  Elementus may in its sole discretion modify, enhance or otherwise change the applicable Services, provided that Elementus shall use commercially reasonable efforts to notify Customer in advance of any material changes that may materially adversely impact Customer's access to the Services.  In the event that Elementus provides Customer with access to any beta, free trial, demonstration, pre-release or similar versions of the Services (as may be indicated on the Services or otherwise by Elementus), then (a) Customer acknowledges that such Services are experimental in nature, are provided "AS IS", and may not be functional on any machine or in any environment, and (b) Elementus' obligations pursuant to Sections 2.6 (Support Services), 5.1 and 5.2 (Warranties), and 8.1(a) (Indemnification) shall not apply to such services.

2.7     **Professional Services.**  To the extent an Order Form specifies any professional services ("Professional Services") to be provided by Elementus, such Professional Services shall be subject to the terms set forth on Addendum A attached to such Order Form.

2.8     **Third Party Content and Third Party Services.**

(a)     Third Party Content.  Customer acknowledges and agrees that the Services may use, display or post information, material, text, graphics, data, articles, photos, images, illustrations, or other or content provided by third parties ("Third Party Content").  Third Party Content is the sole responsibility of the person from whom such Third Party Content originated, and Customer accesses all such Third Party Content at its own risk.  Elementus is not liable for any errors or omissions in that Third Party Content or for any damages or loss Customer might suffer in connection with it. Elementus cannot control and has no duty to take any action regarding how Customer may interpret and use the Third Party Content or what actions Customer may take as a result of having been exposed to the Third Party Content, and Customer

hereby releases Elementus from all liability for Customer having acquired or not acquired Third Party Content through the Services.

(b)    <u>Third Party Services</u>.  Customer acknowledges and agrees that the Services may operate on, with or using application programming interfaces (APIs), browser extensions and/or other services operated or provided by third parties, or may otherwise contain links or connections to third-party websites or services that are not owned or controlled by Elementus ("<u>Third Party Services</u>"), including without limitation through integrations or connectors to such Third Party Services that are provided by Elementus.  Customer is solely responsible for procuring any and all rights necessary for it to access Third Party Services (including any Customer Data or other information relating thereto) and for complying with any applicable terms or conditions thereof.  Elementus is not responsible for the operation of any Third Party Services nor the availability or operation of the Services to the extent such availability and operation is dependent upon Third Party Services.  Elementus does not make any representations or warranties with respect to Third Party Services or any third party providers. When Customer accesses Third Party Services, Customer accepts that there are risks in doing so, and that Elementus is not responsible for such risks. Any exchange of data or other interaction between Customer and a third party provider is solely between Customer and such third party provider and is governed by such third party's terms and conditions. Elementus has no control over, and assumes no responsibility for, the content, accuracy, privacy policies, or practices of or opinions expressed in any Third Party Services or by any third party that Customer interacts with through the Services, and Customer agrees that Elementus shall not be responsible or liable for any loss or damage of any sort incurred as the result of any such dealings.  If there is a dispute between participants on the Services, or between users and any third party, Customer agrees that Elementus is under no obligation to become involved. In the event that Customer has a dispute with one or more other users, Customer releases Elementus, its directors, officers, employees, agents, and successors from claims, demands, and damages of every kind or nature, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising out of or in any way related to such disputes and/or the Services.

3.    **Proprietary Rights.**

3.1    **License to Services.** Subject to Customer's compliance with all the terms and conditions of this Agreement (including any limitations and restrictions set forth on the applicable Order Form), and to the extent set forth on an applicable Order Form, Elementus grants Customer a limited, personal, non-exclusive, non-transferable, non-sublicensable right and license during the Term to use and access the Platform solely for Customer's internal business purposes in accordance with the Documentation.

3.2    **License Restrictions**. Customer shall not, and shall not permit any third party to, directly or indirectly: (a) use any of Elementus' Confidential Information or Services to create any service, software, documentation or data that is similar to or competes with any aspect of the Services; (b) decompile, disassemble or reverse engineer the Platform, or otherwise attempt to discover the source code, object code, logic, process or underlying methodology, structure, ideas or algorithms of the Platform, or related trade secrets, or any software, documentation or data related to the Platform, except to the extent this provision is expressly prohibited by statutory law; (c) copy, distribute, modify or create any derivative work of the Platform or Services (or any portion thereof), provided that nothing in this clause (c) shall restrict the Customer from creating derivative works from the Deliverables (defined below) delivered to Customer by Elementus; (d) encumber, market, sublicense, publish, distribute, reproduce, resell, assign, transfer, rent, lease, sublicense, loan, or otherwise permit third parties to use the Platform or Services (or any portion thereof); (e) use the Platform or Services (or any portion thereof) for commercial time-sharing or service-bureau use, for the benefit of a third party, or for any purpose other than its own internal use (with it being understood that use of the Deliverables in connection with the Case shall be deemed to be internal use by the Customer); (f) remove or otherwise alter any proprietary notices or labels from the Services or Deliverables or any portion thereof; (g) violate applicable local, state, national and foreign laws, treaties and regulations (including those related to data privacy, international communications, export laws and the transmission of technical or personal data laws); (h) infringe or violate any third party intellectual property, contractual or other proprietary rights; (iii) use or interact with the Services or Deliverables in a manner that is dangerous, harmful, fraudulent, deceptive, threatening, harassing, defamatory, obscene, or otherwise objectionable; (i) jeopardize the security of the Customer Account or anyone else's account (such as allowing someone else to log in to the Platform as Customer); (j) attempt, in any manner, to obtain the password, account, or other security information from any other user; (k) violate the security of any computer network, or cracks any passwords or security encryption codes; (l) run Maillist, Listserv, any form of auto-responder or "spam" on the Platform, or any processes that run or are activated while Customer is not logged into the Platform, or that otherwise interfere with the proper working of the Platform (including

by placing an unreasonable load on the Services' infrastructure); or (m) use or interact with the Services in a manner that "crawls," "scrapes," or "spiders" any page, data, or portion of or relating to the Services (through use of manual or automated means).  Customer is responsible for all of Customer's activity in connection with the Services, including but not limited to uploading Customer Data onto the Services.

3.3     **Limited License.**  Except for the limited rights and licenses expressly granted to Customer herein, no other license is granted, no other use is permitted, and Elementus shall retain all rights, title and interests (including all proprietary and Intellectual Property Rights) in and to the Services, including all ideas, concepts, inventions, systems, data, platforms, software, interfaces, tools, utilities, templates, forms, techniques, methods, processes, algorithms, know-how, trade secrets and other technologies, implementations and information that are used by Elementus in providing the Services, and all trademarks, tradenames, or logos of Elementus, and all rights to patent, copyright, trade secret and other proprietary or Intellectual Property Rights.  Customer's rights to any reports and deliverables expressly set forth in an Order Form and created specifically for Customer in connection with the Services and provided by Elementus to Customer ("<u>Deliverables</u>") shall be as set forth in Addendum A.

3.4     **Customer Data**.  Customer hereby grants to Elementus a worldwide, non-exclusive, non-transferable and non-sublicensable (except with respect to Elementus' rights to use service providers and subcontractors as set forth in Section 2.2 and 10.9 herein), royalty-free license to use, copy, access, process, reproduce, perform, display, modify, distribute, transmit, operate, maintain and prepare derivative works of the Customer Data for the purpose of providing the Services to Customer as set forth in this Agreement.  Customer shall retain all rights, title and interests (including all proprietary and Intellectual Property Rights) in and to the Customer Data.

3.5     **Aggregate Data**.  [Intentionally Omitted.]

3.6     **Feedback**.  All Customer suggestions for correction, change or modification to the Services, evaluations, benchmark tests, and other feedback, information and reports provided to Elementus hereunder (collectively, "<u>Feedback</u>"), will be the property of Elementus and Customer shall and hereby does assign any rights in such Feedback to Elementus.  Customer agrees to assist Elementus, at Elementus' expense, in obtaining intellectual property protection for such Feedback, as Elementus may reasonably request.  Except to the extent such Feedback is specific to Customer, Debtor, or the Case, general Feedback regarding the Services shall not be subject to the confidentiality provisions of this Agreement.

3.7     **Privacy.**  This Agreement incorporates Elementus' privacy policy located on Elementus website ("<u>Privacy Policy</u>"), but in the event there is a conflict between the Privacy Policy and this Agreement, the terms of this Agreement shall prevail.  To the extent that, in connection with the Services, the Parties agree to enter into a Data Processing Addendum ("<u>DPA</u>") to this Agreement, the terms of such DPA are hereby fully incorporated into this Agreement by reference.

4.     **Payments and Taxes.**

4.1     **Fees**.  Unless otherwise set forth on an Order Form, Customer agrees to pay, and shall pay, the fees set forth on an applicable Order Form ("<u>Fees</u>") in arrears on a monthly basis within ten days following submission of a reasonably detailed invoice which complies with the requirements of the Court; provided that, during such time as the Case is continuing, the Fees shall be billed and paid in accordance with the order of the Court with respect to the retention of Elementus. All payments shall be made in U.S. dollars in immediately available funds, and are non-refundable. Any amounts not paid when due shall bear interest at the rate of one and one-half percent (1.5%) per month or the maximum rate allowed by law, whichever is less.  Elementus reserves the right to change Fees from time to time in accordance with its practices for its customers generally, but subject to advance written notice to Customer.

4.2     **Taxes.**  Customer shall pay any sales, use, value-added, property, and other taxes, withholdings and similar charges based on or arising from this Agreement (other than taxes based on Elementus' net income).

4.3     **Expenses.**  Customer will reimburse Elementus for reasonable pre-approved travel and living expenses incurred by Elementus in performing Services at sites other than Elementus facilities at Customer's request (including without limitation, any Services relating to setup, training, technical support, and consulting).

5.     **Warranties and Disclaimers.**

5.1     **Mutual.**  Each Party represents and warrants that: (a) such Party is duly organized, validly existing, and in good standing under federal law or the laws of the state of its organization, and has the full

power and authority to enter into and perform its obligations under this Agreement; (b) the execution of this Agreement by such Party, and the performance by such Party of its obligations and duties hereunder do not and will not violate any other agreement to which such Party is a Party or by which it is otherwise bound; (c) when executed and delivered by such Party and, in the case of the Customer, approved by the Court, this Agreement will constitute the legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms; and (d) each Party will comply with all applicable laws, rules, and regulations in connection with performance of such Party's obligations under this Agreement.

5.2     **Elementus.**  Elementus warrants to (and only to) Customer that (a) the Platform will materially perform in accordance with the applicable Documentation for the Term; and (b) any Services performed by Elementus hereunder will be performed in a professional and workmanlike manner, in accordance with general industry standards.  In the event that the Services fail to satisfy this warranty, Elementus will, at its own expense, as Customer's sole and exclusive remedy, either:  (i) promptly replace the Platform with a solution that materially conforms to the Documentation; (ii) promptly repair the Platform so that they materially conform to the Documentation; or (iii) if Elementus cannot promptly repair or replace the Platform as provided for in (i) or (ii) herein, Elementus may terminate this Agreement.

5.3     **Customer**. Customer represents and warrants to Elementus that Customer owns all rights, title and interest in and to the Customer Data and Customer Materials (as defined in an Addendum for Professional Services, as applicable), or that Customer has otherwise secured all necessary rights in the Customer Data and Customer Materials as may be necessary to permit the access and use thereof as contemplated by this Agreement.

5.4     **DISCLAIMERS**.  EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE SERVICES (OR ANY PORTION THEREOF, INCLUDING WITHOUT LIMITATION ANY CONTENT CONTAINED ON OR ACCESSED THROUGH THE SERVICES), ELEMENTUS MATERIALS (AS DEFINED IN AN ADDENDUM FOR PROFESSIONAL SERVICES, AS APPLICABLE), DELIVERABLES, AND ALL RELATED INFORMATION, TECHNOLOGY, AND SERVICES PROVIDED BY OR ON BEHALF OF ELEMENTUS ARE PROVIDED "AS IS," "AS AVAILABLE," AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AND ELEMENTUS EXPRESSLY DISCLAIMS ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE (EVEN IF ADVISED OF THE PURPOSE), ACCURACY, TITLE, AND/OR NON-INFRINGEMENT.  ELEMENTUS WILL NOT BE RESPONSIBLE OR LIABLE FOR THE ACCURACY, COPYRIGHT COMPLIANCE, LEGALITY, OR DECENCY OF MATERIAL CONTAINED IN OR ACCESSED THROUGH THE SERVICES OR ANY CLAIMS, ACTIONS, SUITS PROCEDURES, COSTS, EXPENSES, DAMAGES OR LIABILITIES ARISING OUT OF USE OF, OR IN ANY WAY RELATED TO CUSTOMER'S PARTICIPATION IN, THE SERVICES.   IN ADDITION, EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, ELEMENTUS DOES NOT WARRANT THAT ACCESS TO THE SERVICES (OR ANY PORTION THEREOF) WILL BE UNINTERRUPTED OR ERROR FREE, THAT THE SERVICES AND DELIVERABLES (OR ANY PORTION THEREOF) WILL MEET CUSTOMER'S NEEDS, OR THAT DATA WILL NOT BE LOST, OR THAT THE PLATFORM (OR ANY PORTION THEREOF) IS FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS, OR THAT THE SERVICES AND DELIVERABLES (OR ANY PORTION THEREOF, INCLUDING ANY INFORMATION OR CONTENT ACCESSED ON CONNECTION THEREWITH) ARE ACCURATE, COMPLETE, OR UP-TO-DATE.

6.     **Term, Termination, Effect of Termination, and Survival.**

6.1     **Term**.  This Agreement shall commence on the Effective Date set forth in the applicable Order Form and, unless earlier terminated as provided herein, shall continue for the remainder of the Term set forth in the Order Form. Order Forms will terminate upon termination of this Agreement unless otherwise mutually agreed upon in writing by the Parties.

6.2     **Termination**.  Either Party may terminate this Agreement on thirty (30) days' prior written notice if the other Party materially breaches any of the terms of this Agreement and such breach remains uncured thirty (30) days following such Party's receipt of the terminating Party's notice.  Without limiting the foregoing, Elementus may suspend or limit Customer's access to or use of the Services if (a) Customer's account is more than five (5) days past due, or (b) Customer's use of the Services results in (or is reasonably likely to result in) damage to or material degradation of the Services which interferes with Elementus' ability to provide access to the Services to other customers; provided that in the case of subsection (b): (i) Elementus shall use reasonable good faith efforts to work with Customer to resolve or mitigate the damage

or degradation in order to resolve the issue without resorting to suspension or limitation; (ii) prior to any such suspension or limitation, Elementus shall use commercially reasonable efforts to provide notice to Customer describing the nature of the damage or degradation; and (iii) Elementus shall reinstate Customer's use of or access to the Services, as applicable, if Customer remediates the issue promptly following receipt of such notice.

6.3     **Effect of Termination and Survival**.  Upon termination or expiration of this Agreement for any reason: (a) Customer's access to the Services and Deliverables shall immediately terminate and all licenses granted hereunder shall immediately terminate; (b) Customer shall return and make no further use of any equipment, property, Documentation and other Confidential Information and items (and all copies thereof) belonging to Elementus; (c) Elementus may destroy or otherwise dispose of any of Customer Data in its possession (other than the Public Customer Submissions) unless Elementus receives, no later than ten (10) days after the date of termination, a written request for the return of Customer Data to Customer. The following provisions shall survive any termination or expiration of this Agreement: Sections 1, 3, 4 (to the extent there are outstanding payments), 5.4, 6.3, 7 through 10 (inclusive), as well as any provisions regarding proprietary rights and restrictions set forth on an applicable Addendum.

7.     **LIMITATION OF LIABILITY.** EXCEPT FOR CUSTOMER'S BREACH OF SECTION 3.2 AND ANY OUTSTANDING FEES OWED TO ELEMENTUS, IN NO EVENT SHALL EITHER PARTY, NOR ITS DIRECTORS, EMPLOYEES, AGENTS, PARTNERS, SUPPLIERS OR CONTENT PROVIDERS, BE LIABLE UNDER CONTRACT, TORT, STRICT LIABILITY, NEGLIGENCE OR ANY OTHER LEGAL OR EQUITABLE THEORY WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT FOR (A) ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER, INCLUDING WITHOUT LIMITATION LOSS OF PROFITS, REVENUE, DATA, OR DATA USE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING, WITHOUT LIMITATION, ANY LIABILITY RELATED TO THE PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES (HOWEVER ARISING), (B) ANY BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE (REGARDLESS OF THE SOURCE OF ORIGINATION), (C) ANY THIRD PARTY SERVICES OR THIRD PARTY CONTENT USED WITH THE SERVICES, OR (D) ANY DIRECT DAMAGES IN EXCESS OF (IN THE AGGREGATE) THE FEES PAID (OR PAYABLE) BY CUSTOMER TO ELEMENTUS HEREUNDER IN THE TWELVE (12) MONTHS PRIOR TO THE EVENT GIVING RISE TO A CLAIM HEREUNDER.  THE FOREGOING LIMITATIONS FORM AN ESSENTIAL BASIS FOR THIS AGREEMENT AND SHALL SURVIVE REGARDLESS OF THE FAILURE OF ANY REMEDY OF ITS ESSENTIAL PURPOSE.

8.     **Indemnification.**

8.1     **Elementus.**

(a)     Indemnity.  Except as provided below, Elementus agrees to (i) defend Customer against any finally adjudicated claim by a third party that the Services infringe a valid US patent (issued as of the Effective Date), or any copyright or trade secret, of such third party; and (ii) indemnify Customer for settlement amounts or damages, liabilities, costs and expenses (including reasonable attorneys' fees) finally awarded and arising out of such claim.  If the Services become or, in Elementus' opinion, are likely to become the subject of any injunction preventing its use as contemplated herein, Elementus may, at its option (A) obtain for Customer the right to continue using the Services or (B) replace or modify the infringing portions of the Services so that it becomes non-infringing without substantially compromising its principal functions.  If (A) and (B) are not reasonably available to Elementus, then it may (C) terminate this Agreement upon written notice to Customer and refund to Customer the Fees for the Services that were pre-paid for the then-current term, pro-rated for the remainder thereof.  The foregoing states the entire liability of Elementus, and Customer's exclusive remedy, with respect to any actual or alleged violation of Intellectual Property Rights by the Services, any part thereof or its use or operation. Notwithstanding anything else, Elementus will have no obligation under this Section 8.1(a) with respect to Free Services.

(b)     Exclusions.  Elementus shall have no liability or obligation hereunder with respect to any claim based upon (i) any use of the Services not strictly in accordance with this Agreement or in an application or environment for which it was not designed or contemplated; (ii) any Customer Data or Customer Materials; (iii) modifications, alterations, combinations or enhancements of the Services not created by or for Elementus; (iv) any portion of the Services that implements Customer's requirements; (v) Customer's continuing allegedly infringing activity after being notified thereof or its continuing use of any Services after being provided modifications that would have avoided the alleged infringement; or (vi) any Intellectual Property Rights in which Customer or any of its affiliates has an interest.

8.2     **Customer**. Customer agrees to defend Elementus against any claim by a third party that is related to (a) Elementus' authorized use of any Customer Data or Customer Materials; (b) Customer's use of the Services or Deliverables, or breach of this Agreement or any representation, warranty, covenant or other agreement made herein; and (c) claims excluded under Section 8.1(b), and to indemnify Elementus for settlement amounts or damages, liabilities, costs and expenses (including reasonable attorneys' fees) awarded and arising out of such claims.

8.3     **Process**. The Party seeking indemnification (the "Indemnified Party") shall promptly notify the other Party (the "Indemnifying Party") in writing of any claim for which it seeks indemnification hereunder; provided that the failure to provide such notice shall not relieve the Indemnifying Party of its indemnification obligations hereunder except to the extent of any material prejudice directly resulting from such failure. The Indemnifying Party shall bear full responsibility for, and shall have the right to solely control, the defense (including any settlements) of any such claim; provided, however, that (a) the Indemnifying Party shall keep the Indemnified Party informed of, and consult with the Indemnified Party in connection with the progress of such litigation or settlement, and (b) the Indemnifying Party shall not have any right, without the Indemnified Party's written consent (which consent shall not be unreasonably withheld), to settle any such claim in a manner that does not unconditionally release the Indemnified Party. At the Indemnifying Party's request, the Indemnified Party will provide reasonable cooperation with respect to any defense or settlement.

9.     **Confidentiality**.  Each Party shall treat as confidential all Confidential Information of the other Party, shall not use such Confidential Information except as set forth in this Agreement, and will not disclose such Confidential Information to any third party except as expressly permitted herein without the Disclosing Party's written consent. The Receiving Party shall use at least the same degree of care which it uses to prevent the disclosure of its own confidential information of like importance to prevent the disclosure of the Disclosing Party's Confidential Information, but in no event less than reasonable care. The Receiving Party shall promptly notify the Disclosing Party of any actual or suspected misuse or unauthorized disclosure of any of the Confidential Information.  In the event of any termination or expiration of this Agreement, each Receiving Party will either return or, at the Disclosing Party's request, destroy the Confidential Information of the other Disclosing Party; provided however, that each Receiving Party may retain copies of the Disclosing Party's Confidential Information for routine backup and archival purposes subject to the confidentiality obligations set forth herein. Notwithstanding the foregoing, the obligations set forth in this Section 9 shall not apply with respect to any information to the extent that it is: (a) already rightfully in the possession of the Receiving Party without restriction prior to the first disclosure hereunder as shown by records or files; (b) is already or becomes generally available to the public after the time of disclosure other than as a result of any improper action by the Receiving Party; (c) was rightfully disclosed to Receiving Party by a third party without restriction; or (d) is independently developed by the Receiving Party without use of the Confidential Information from Disclosing Party. The Receiving Party may make disclosures required by law or court order provided that, if practicable, the Receiving Party provides adequate notice and assistance to the Disclosing Party for the purpose of enabling the Disclosing Party to prevent and/or limit the disclosure.  Notwithstanding the foregoing, either Party may disclose the terms of this Agreement pursuant to due diligence requests in a proposed merger, acquisition, or financing transaction.

10.     **General Provisions.**

10.1     **Notices**.  All notices and other communications required or permitted under this Agreement shall be in writing, addressed to the applicable Party at its address set forth in this Agreement, and shall be deemed effectively delivered only: (a) upon personal delivery, (b) upon delivery by a courier service as confirmed by written delivery confirmation, (c) upon delivery by facsimile or email as confirmed by transmission receipt, or (d) three (3) business days after being deposited in the regular mail as certified or registered mail (airmail if sent internationally) with postage prepaid.  Either Party may change its address for notice by giving notice to the other Party in accordance with this section. A copy of any required notice must be sent via email delivery to notices@elementus.io (if to Elementus) or to Customer's email set forth on an Order Form (if to Customer).

10.2     **Dispute Resolution**.  Except with respect to claims for injunctive or other equitable relief, which may be brought at any time before any court of competent jurisdiction, all disputes arising from or relating to the subject matter of this Agreement shall be finally settled by arbitration in English in New York, New York, USA, in accordance with the Arbitration Rules and Procedures of the Judicial Arbitration and Mediation Service, Inc. ("JAMS") then in effect, by an arbitrator selected in accordance with said JAMS' rules. Judgment upon the award so rendered may be entered in a court having jurisdiction.  Notwithstanding the foregoing, the Court shall have sole and exclusive jurisdiction over any disputes relating to the Case for

so long as the Case is continuing.

10.3    **Governing Law, Jurisdiction, Venue, and Dispute Resolution**.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, USA, without regard to its conflicts of law provisions.  The United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.  The Parties hereby agree that exclusive jurisdiction and venue for actions related to this Agreement will be the state or federal courts located in New York, New York having jurisdiction over Elementus' offices, and both Parties consent to the jurisdiction of such courts with respect to any such action, provided that, for so long as the Case is continuing, the Court will have sole and exclusive jurisdiction over any disputes relating to the Case, and shall be the exclusive venue, for any such actions.  In any action or proceeding to enforce this Agreement, the prevailing Party will be entitled to recover from the other Party its costs and expenses (including reasonable attorneys' fees) incurred in connection with such action or proceeding and enforcing any judgment or order obtained.

10.4    **Force Majeure**.  Other than for payment of money, a Party shall be excused from any delay or failure in performance hereunder due to any labor dispute, government requirement, internet congestion or breakdown, epidemic or pandemic, or any other cause beyond its reasonable control. Such Party shall use commercially reasonable efforts to cure any such failure or delay in performance arising from such a condition, and shall timely advise the other Party of such efforts.

10.5    **Relationship of the Parties**.  The relationship between the Parties shall only be that of independent contractors. Neither Party is an agent, representative, partner, employer, or employee of the other Party, and neither Party shall have any right or authority to assume or create any obligations or to make any representations or warranties on behalf of any other Party, whether express or implied, or to bind the other Party in any respect whatsoever.

10.6    **Third Party Beneficiaries**.  This Agreement is entered into solely between, and may be enforced only by, Customer and Elementus.  This Agreement will not be deemed to create any rights in third parties or to create any obligations of a Party to any third parties.

10.7    **Remedies**.  Except as specifically provided otherwise herein, each right and remedy in this Agreement is in addition to any other right or remedy, at law or in equity.  Each Party agrees that, in the event of any breach or threatened breach of Section 3 or 9, the non-breaching Party may suffer irreparable damage for which it will have no adequate remedy at law.  Accordingly, the non-breaching Party shall be entitled to seek injunctive and other equitable remedies to prevent or restrain such breach or threatened breach, without the necessity of posting any bond.

10.8    **Publicity**.  Each Party grants the other Party a limited, non-transferable (except to the extent this Agreement is transferred by either Party in accordance with Section 10.9), non-exclusive license to include such Party's name and standard logo within marketing and promotional materials, provided such materials are approved in writing by the other Party prior to public distribution or dissemination. Notwithstanding the foregoing, without further approval, Elementus may use and display Customer name and logo on Elementus' website and other materials solely for the purposes of identifying Customer as a customer.

10.9    **Assignment**.  A Party shall not assign nor transfer any obligations or benefit under this Agreement without the written consent of the other Party, provided that: (a) without the other Party's consent, a Party may assign or transfer this Agreement freely without restriction to an affiliated entity or to a successor to substantially all of its business or assets to which this Agreement relates (whether by sale of assets or equity, merger, consolidation or otherwise); and (b) Elementus may utilize subcontractors in the performance of its obligations hereunder. Any purported transfer or assignment in violation of this section is void. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties and their successors and assigns.

10.10    **Entire Agreement**.  This Agreement, together with its exhibit(s) and applicable Order Forms and Addendums, is the entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior agreements, and all prior and contemporary proposals and discussions relating to the subject matter of this Agreement, and controls over the preprinted terms of any purchase order or similar document. In the event of any conflict between the terms of these Terms and Conditions, the terms of an Order Form, or the terms of an applicable Addendum, the order of precedence shall be as follows: (a) the terms of these Terms and Conditions; (b) the applicable Addendum; and (c) the terms of an Order Form.  This Agreement may be executed in counterparts, electronically or by facsimile signatures, each of which shall be deemed an original and all of which taken together shall constitute one and the same

instrument.  No modification or amendment of any provision of this Agreement shall be effective unless agreed by both parties in writing, and no waiver of any provision of this Agreement shall be effective unless in writing and signed by the waiving Party; provided that if Customer is a user of Free Services, then Elementus may amend or modify this Agreement by (a) posting a new version of this Agreement at on Elementus website and (b) providing notice to Customer via email or other reasonable means.  The failure of either Party to enforce its rights under this Agreement at any time for any period will not be construed as a waiver of such rights, and the exercise of one right or remedy will not be deemed a waiver of any other right or remedy.

10.11    **Severability**.  If any provision of this Agreement is determined to be unenforceable, that provision will be replaced with the valid one that most closely achieves the Parties' intent and the remainder of this Agreement will remain enforceable.

10.12    **Counterparts; Headings**.  This Agreement may be executed in counterparts, each of which shall be deemed an original agreement for all purposes and which collectively shall constitute one and the same agreement.  The headings in this Agreement are for convenience only and may not be used to interpret or construe the terms hereof.

## ADDENDUM A
## ELEMENTUS PROFESSIONAL SERVICES ADDENDUM

1.      **Incorporation**.  The Parties agree that this Elementus Professional Services Addendum (the "Elementus Professional Services Addendum") applies to Professional Services, if any, that are made the subject of an Order Form.  This Elementus Professional Services Addendum is incorporated into, becomes a part of, and is subject to the terms of the Agreement to the extent the Professional Services are made available by Elementus to Customer and specified in an Order Form mutually agreed upon by the Parties in writing.  Unless otherwise indicated in this Elementus Professional Services Addendum, all terms of the Agreement shall apply to any agreements requiring the Professional Services as defined herein.  If any capitalized term in this Elementus Professional Services Addendum is defined in the Agreement, then the definition provided in the Agreement shall apply to that term throughout this Elementus Professional Services Addendum except as the definition of that term may be specifically modified by this Elementus Professional Services Addendum.  Any conflict of terms as between this Elementus Professional Services Addendum and the Agreement shall be governed by the terms contained in the Agreement, unless this Elementus Professional Services Addendum states that a specific provision of the Agreement will be superseded by a specific provision of this Elementus Professional Services Addendum.

2.      **Definitions.**

        2.1      "Change Order" means a written request for revisions with respect to the Professional Services set forth in an Order Form.

        2.2      "Elementus Material" means (a) all software, software interfaces software updates and changes, tools, designs, documentation, data, information, ideas, inventions and other material owned or developed by or for Elementus prior to or outside of the scope of this Agreement as may be necessary to provide the Professional Services hereunder; (b) any routines, tools, methodologies, processes, know-how or technologies created, adapted or used by Elementus in its business generally, together with all associated Intellectual Property Rights, not specially developed for Customer; and (c) derivatives, improvements, or modifications of the foregoing.  For the avoidance of doubt, Elementus Materials include, without limitation, the Platform, Feedback and any Confidential Information of Elementus.

3.      **Services**.

        3.1      Professional Services.  As set out in an Order Form, and subject to the terms of the Agreement, including this Elementus Professional Services Addendum, Elementus shall take commercially reasonable efforts to provide the Professional Services to Customer.  The specific details of the Professional Services to be performed will be determined on a per-project basis, and the details for each project will be described in an Order Form.

        3.2      Change Orders.  Unless otherwise specified in an Order Form, Customer may reasonably request a Change Order.  Within ten (10) business days after Elementus' receipt of the Change Order, Elementus will deliver to Customer a written, revised Order Form reflecting Elementus' reasonable determination of the revised Professional Services, deliverables, delivery schedule, payment schedule, and adjusted fees or fee estimates, if any, that will apply to the implementation of the revisions.  If Customer approves the revised Order Form, then the Parties will execute it, and upon execution, the revised Order Form will supersede the then-existing Order Form.  If Customer does not approve the revised Order Form within ten (10) business days after its receipt by Customer, the then-existing Order Form will remain in full force and effect, and Elementus will have no further obligation with respect to the applicable Change Order.

4.      **Fees**.  [Intentionally Omitted.]

5.      **Licenses and Proprietary Rights.**

        5.1      **Customer Materials.**   Customer grants to Elementus and its subcontractors a nonexclusive, royalty-free, worldwide right and license during the Term of this Agreement to use, reproduce, perform, display, transmit, operate, maintain, modify and prepare derivative works of any materials provided by Customer to Elementus ("Customer Materials") for use by Elementus as required to perform the Professional Services.  As between the Parties, Customer will continue to own the Customer Materials.

        5.2      **Inventions and Deliverables**.  Except as expressly set forth to the contrary in an Order Form, all works of authorship, inventions, discoveries, improvements, methods, processes, formulas, designs, techniques, and information conceived, discovered, developed or otherwise made by Elementus,

solely or in collaboration with others in the course of performing the Professional Services (collectively, "Inventions") and the Deliverables, are and will remain the sole property of Elementus.

5.3     **License Grant.** Upon and subject to final payment by Customer of all Fees owing to Elementus, Elementus hereby grants to Customer a limited, nonexclusive, nonsublicensable, nontransferable, royalty-free license during the Term to use, copy, modify, and prepare derivative works of the Deliverables solely in connection with the Case and for no other purpose.  The rights granted to Customer in this Section 5 are not assignable or transferable, by operation of law or otherwise, without the advance written consent of Elementus.  Any assignments or transfers in violation of this Section 5 will be void.