# Exhibit A

**Committee's Letter to U.S. Trustee**

**WHITE & CASE**

August 10, 2022

VIA E-MAIL

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
shara.cornell@usdoj.gov

Attn:  Shara Cornell, Esq.

White & Case LLP
111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606-4302
T +1 312 881 5400

**whitecase.com**

**In re Celsius Network LLC, et al. Case No. 22-10964 (MG)**

Dear Ms. Cornell:

      As you know, White & Case LLP is the proposed counsel to the official committee of unsecured creditors (the "**Committee**") appointed in the above-referenced chapter 11 cases. We write in response to your request dated August 1, 2022, regarding the Committee's views pertaining to the letter dated July 19, 2022 (the "**Milbank Request**") from Milbank LLP on behalf of Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP (collectively, the "**Milbank Shareholders**") and the letter dated July 22, 2022 (the "**Jones Day Request**," and together with the Milbank Request, the "**Requests**") from Jones Day LLP on behalf of CDP Investissements Inc. ("**CPD**") (together with the Milbank Shareholders, the "**Requesting Shareholders**") that the United States Trustee (the "**U.S. Trustee**") appoint an official committee of equity security holders (an "**Equity Committee**") pursuant to section 1102(a)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). For the reasons set forth below, the Committee submits that the Requesting Shareholders have failed to meet the heavy burden for the extraordinary relief that they seek, and thus the U.S. Trustee should deny the Requests and decline to appoint an Equity Committee. The Committee further submits that the appointment of an Equity Committee in this case would be inappropriate, given that (a) the sole purpose of an Equity Committee would be to represent the interests of sophisticated institutional equity holders of a private company who are already capably representing their own interests and (b) the cost of an Equity Committee would be borne by the estates and, by extension, customers and creditors who are already facing significant losses of personal assets.

      The appointment of an Equity Committee under section 1102 of the Bankruptcy Code[1] is an "extraordinary remedy" and should be the "rare exception." U.S. Dep't of Justice, *Chapter 11 Case*

---

[1] Section 1102(a)(1) of the Bankruptcy Code provides, in relevant part, that the U.S. Trustee "may appoint additional committees of … equity security holders as the [U.S. Trustee] deems appropriate." 11 U.S.C. § 1102(a)(1). Section 1102(a)(2) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest, the court may order the appointment of additional committees of … equity security holders if

WHITE & CASE

August 10, 2022

*Administration* Vol. 3 § 3-4.14 Page 58 (2020) (the "**UST Guidelines**"); *see also In re Eastman Kodak Co.*, 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012) (noting that the appointment of an Equity Committee is "extraordinary relief"). To justify the appointment of an Equity Committee, the requesting party bears the burden of proving that equity cannot be adequately represented without such a committee. *See* UST Guidelines at § 3-4.14, Page 58; *see also In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). To carry this burden, the requesting party must demonstrate that "(i) there is a substantial likelihood that [equity holders] will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and [equity holders] are unable to represent their interests in the case without an official equity committee." *See* UST Guidelines at § 3-4.14, Page 58 citing *In re Williams Commc'n Grp.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002). Additional considerations regarding the appointment of an Equity Committee include: (i) the number of shareholders; (ii) the complexity of the case; (iii) the likely cost of an additional committee to the estate; (iv) whether the equity is adequately represented by stakeholders already at the table; and (v) the timing of the request. *See In re Eastman Kodak Co.*, 2012 WL 2501071 at *2; *In re Williams Commc'n Grp., Inc.*, 281 B.R. at 220-21.

The Requesting Shareholders have failed to meet their burden. The appointment of an Equity Committee "is generally only appropriate in chapter 11 cases involving corporations with publicly traded stock" that is widely held and in which equity holder interests will not be adequately represented unless a committee is appointed. *See* 7 Collier on Bankruptcy P 1102.03 (16th 2022). That is not the case here. **First**, the Debtors are a private company. **Second**, the Requesting Shareholders collectively hold more than 87% of the Debtors' series B preferred stock of Celsius Network Limited ("**CNL**"). **Third**, the Requesting Shareholders are sophisticated entities: WestCap Management LLC, the parent entity of the Milbank Shareholders, has almost $9 billion in assets under management, and CDP is an institutional investor with hundreds of billions of dollars under management. **Fourth**, the Requesting Shareholders are more than capable of representing their interests as equity holders. Indeed, the Requesting Shareholders have already retained Milbank LLP and Jones Day LLP—top-tier international law firms with highly regarded restructuring practices—to represent them in this matter. These facts all support denial of the Requesting Shareholders' request for an Equity Committee. *See In re Williams Commc'n Grp., Inc.*, 281 B.R. at 223-24 (denying request to appoint an equity committee where movants demonstrated an ability to organize and participate in the case); *see also Matter of Kalvar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr. D. Del. 1996) (denying motion to appoint equity committee where movant held over 30% of the preferred equity, and could represent its own interests); *see also In re Eastman Kodak Co.*, 2012 WL 2501071 at *3 (denying motion to appoint an equity committee "given the quality of the legal talent hired" and concluding that "there is no reason [] that the Shareholders cannot be represented ably through an unofficial, or *ad hoc* committee"); *In re Spansion*, 421 B.R. 151, 163-64 (denying a motion

---

necessary to assure adequate representation of … equity security holders. The [U.S. Trustee] shall appoint any such committee." 11 U.S.C. § 1102(a)(2).

WHITE & CASE

August 10, 2022

to appoint an equity committee and concluding that "equity security holders are adequately represented without the need for an 'official' committee" reasoning that the *ad hoc* committee of equity security holders are "well represented by counsel, and adequate to the task of representing its interest without 'official' status").

Moreover, the interests of equity holders are also already adequately represented by the Debtors and their independent directors, each of whom has fiduciary duties to equity holders (and at least one of whom owns equity in the Debtors).[2] *See* UST Guidelines at § 3-4.14, Page 58; *see also Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("the insolvency of a company does not absolve the board of its fiduciary duties to the shareholders"); *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 699 (Bankr. C.D. Cal. 2008) (denying motion to appoint equity committee where there was no evidence that the Debtors' officers or directors were incapable of discharging their fiduciary duties.).

Moreover, the Requesting Shareholders have not met the requirement of demonstrating a substantial likelihood that equity holders will be entitled to receive recoveries under a strict application of the absolute priority rule. *See In re Williams Commc'n Grp.*, 281 B.R. at 223. In assessing the debtor's solvency for purposes of appointing an Equity Committee, the focus is on whether the debtor appears to be solvent or insolvent based upon the available data and not a full-fledged valuation analysis. *See Williams Commc'ns Grp.*, 281 B.R. at 221 (stating that "there is no clear litmus test in determining a debtor's solvency" but rather it is a "practical conclusion, based on a confluence of factors" and "[v]aluation is a proper issue for confirmation…[and] this Court has not made a valuation, nor is one necessary" for purposes of considering requests to appoint an Equity Committee); *In re Delphi Corp.*, No. 05-44481, Hr'g Tr. at 167-69 (Bankr. S.D.N.Y. Mar. 22, 2006) [Docket No. 3262] (noting that the insolvency inquiry is to be based upon available evidence and does not require a full-blown valuation analysis and that such a valuation analysis would be inappropriate). Here, the facts indicate not only that the Debtors are insolvent but hopelessly so. The Debtors' CEO, Alex Mashinsky, has testified that the Debtors' liabilities exceed their assets by approximately ***$1.2 billion***. *See Declaration Of Alex Mashinsky, Chief Executive Officer Of Celsius Network LLC, In Support Of Chapter 11 Petitions And First Day Motions*, ¶ 16 [Docket No. 23].[3] Where, as here, a debtor appears to be hopelessly insolvent, an equity committee is inappropriate "because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift." *See Williams Commc'n Grp., Inc.*, 281 B.R. at 220 quoting *Emons*, 50 B.R. at 694; *see also In re Pilgrim's Pride Corp.*, 407 B.R. 211, 217 n.15 (Bankr.

---

[2] The Committee reserves all rights with respect to the governance of the Debtors, including on matters of independence.

[3] Approximately $5 billion of the Debtors' liabilities are owed to account holders who trusted Celsius to hold their cryptocurrency. The Committee does not here concede that the Debtors own the crypto assets or that account holders are simply creditors of the Debtors (as opposed to holding a property interest in the cryptocurrency assets) and reserves all rights and arguments.

AMERICAS 116670786 v2
8888812-9544

WHITE & CASE

August 10, 2022

N.D. Tex. 2009) ("Much of the authority suggests—and the court agrees—that appointment of an equity committee should be denied in cases where there is no doubt about the debtor's insolvency."); *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009) (explaining that "if equity holders have no reasonable prospect of receiving a meaningful distribution, an equity committee could serve no legitimate role in negotiating a plan").[4]

Further underscoring the impropriety of an Equity Committee is the significant costs that such an appointment committee would entail. "The appointment of an [E]quity [C]ommittee raises cost concerns since such appointments are closely followed by applications to retain attorneys and accountants." *See In re Williams Commc'n Grp.*, 281 B.R. at 220 (quoting In re Saxon Indus., Inc., 39 B.R. 945, 947 (Bankr. S.D.N.Y. 1984)). Those cost concerns are particularly acute in light of the facts here. As a result of the Debtors' actions and the filing of these chapter 11 cases, the Debtors' customers have been unable to access the digital assets held with the Debtors and face significant – and, in some cases, devastating – losses. The Debtors' customers and unsecured creditors should not face the prospect of still greater diminution in recoveries as a result of the Debtors' assets being misallocated to fund an Equity Committee.

---

[4] In an effort to evade the overwhelming evidence of the Debtors' insolvency, the Requesting Shareholders allege that CNL – the Debtor that issued the Requesting Shareholders' equity interests – is not insolvent because, they contend, certain of CNL's non-retail customer facing assets should inure solely to the benefit of the Requesting Shareholders. Specifically, the Requesting Shareholders argue that CNL is the indirect owner of the Debtors' bitcoin mining equipment and assets utilized by related Debtor entities and non-Debtor entities which are allegedly unaffected by retail customer claims. Further, the Requesting Shareholders argue that CNL is the indirect owner of GK8 Ltd., a non-Debtor entity which was allegedly purchased with the Requesting Shareholders' funds, and because GK8 Ltd. allegedly has not been integrated into the Debtors' retail customer-facing entities, is not subject to those customers' claims. These arguments are unavailing. Notably, the customer accounts were originally with CNL and subsequently moved to Celsius Network, LLC. Therefore, although the Committee is still investigating potential claims, there is a substantial likelihood that at least some account holders have claims against CNL. Moreover, the likelihood is that CNL is subject to the claims of most, if not all, account holders. As the Debtors have conceded, the rights of account holders are governed by the Terms of Use that account holders were required to accept to open an account with the Debtors. Those Terms of Use explicitly provide for an agreement between the account holders, Celsius Networks, LLC *and its Affiliates*, which is broadly defined in a manner that includes CNL. *See generally* Terms of Use (Last Revised: April 14, 2022), https://celsius.network/terms-of-use (last visited Aug. 3, 2022) ("**Terms of Use**") (explaining that "Celsius Network LLC and its Affiliates" provide certain terms of use which govern each account holders access and use of Celsius' products and services). The Terms of Use consistently describe the account holders' relationship with "Celsius" which is broadly defined in a manner that includes all affiliates of Celsius Networks, LLC including CNL. Accordingly, the claims of account holders under the Terms of Use seemingly extend to CNL, and the Requesting Shareholders' argument does not undercut the evidence that all of the Debtors, including CNL, are hopelessly insolvent. But even if it did – and it does not – an Equity Committee would still be unwarranted for the many other reasons stated in this letter.

4

**WHITE & CASE**

August 10, 2022

The Requesting Shareholders fail to identify any other factor justifying the appointment of an Equity Committee. The Requesting Shareholders allude to the number of equity holders as the basis for a committee. But, as noted above, the Debtors are a private company and, indeed, the Requesting Shareholders account for over 87% of the Debtors' series B preferred equity. This is simply not a case involving a public company with widely held stock. Moreover, even if these cases raise complex issues, that fact does not justify the appointment of an Equity Committee. *See In re SunEdison, Inc.*, 556 B.R. 94, 103 (Bankr. S.D.N.Y. 2016) (denying a motion to appoint an equity committee notwithstanding the admitted complexities of the debtors cases); *In re Eastman Kodak Co.*, 2012 WL 2501071 at *4 (denying motion to appoint equity committee even though debtor's chapter 11 cases are large and complex.).

Lastly, even if there is ultimately a meaningful distribution for equity holders, the Bankruptcy Code provides an avenue for the Requesting Shareholders to recover costs and fees should they make a substantial contribution to these cases. *See In re Synergy Pharm., Inc.*, 621 B.R. 588, 609 (Bankr. S.D.N.Y. 2020) ("[F]ees and expenses are only recoverable by an attorney under section 503(b)(4) of the Bankruptcy Code when … making a 'substantial contribution' to a chapter 9 or 11 case."). The Committee hopes that the Requesting Shareholders will work constructively with customers and creditors to maximize recoveries for all stakeholders in these chapter 11 cases. Any application for payment of fees and expenses in connection with that work should be made *after* that work has been done, not before.

Accordingly, the Committee respectfully requests that the U.S. Trustee decline to appoint an Equity Committee.

Sincerely,

Gregory F. Pesce

cc:  Joshua A. Sussberg, P.C.
     Patrick J. Nash, Jr., P.C.
     Ross M. Kwasteniet, P.C.
     David M. Turetsky

5