**UNITED STATES BANKRUPTCY COURT**     Chapter 11 Case No. 22-10964 (MG)

**SOUTHERN DISTRICT OF NEW YORK**      (Jointly Administered)

In re CELSIUS NETWORK LLC, *et al*[1].,

# DANIEL A. FRISHBERGS' OMNIBUS OBJECTION TO DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF AND TO ALL MOTIONS GRANTING KIRKLAND AND ELLIS' ASSOCIATED LEGAL FEES, AUCTION FEES, AND ANY OTHER FEES OR COSTS INCURRED WITH RESPECT TO THIS AUCTION THUS FAR

## OBJECTION

Now comes Daniel A. Frishberg, *pro se* Celsius Network LLC "Creditor[2]", and objects to the *Debtors' Motion Seeking Entry Of An Order (I) Approving The Bidding Procedures In Connection With The Sale Of Substantially All Of The Debtors' Assets (II) Scheduling Certain Dates With Respect Thereto, (III) Approving The Form And Manner Of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, And (V) Granting Related Relief* DE# 929 (the "Motion") and any and all motions or filings asking for permission of this court to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] This is what I have been classified as, but I dispute this.

pay legal fees associated with this bidding date, which was not proposed by the Debtors or Kirkland and Ellis in good faith and was an enormous waste of estate resources. In support of his objection, Daniel A. Frishberg respectfully states as follows:

## INTRODUCTION

1. The above-captioned Celsius debtors ("Debtors") commenced these bankruptcy cases by filing voluntary Chapter 11 petitions on July 13, 2022 ("Petition Date").

2. Debtors continue to operate their businesses as Debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. The cases are being jointly administered pursuant to an Order of this Court dated July 19, 2022. DE # 53.

3. The question of whether the assets that the Debtors are currently in possession of, actually belong to them, has not been decided yet. It has not been ruled whether the *depositors* cryptocurrency assets belong to the *depositors* or the Debtors.

4. On August 19, 2022, the first meeting of creditors was commenced pursuant to 11 U.S.C. § 341 (the "341 Meeting").

5. On August 18, 2022, the United States Trustee filed a Motion for Entry of an Order Directing the Appointment of an Examiner (the "Examiner Motion"). On September 14, 2022, this Court entered an Order directing the United States Trustee to appoint an examiner. DE #820. On September 29, 2022, the United States Trustee filed a Notice of Appointment. DE #920. The Court has entered an Order Appointing an Examiner. DE #923.

## RELIEF REQUESTED IS OVERLY HASTY AND A POTENTIAL BREACH OF FIDUCIARY DUTY

The Debtors are requesting to effectively sell any and all assets that they have possession of, *before* the Examiner's report is set to come out. This seems to be a clear violation of the Debtors (and their attorney's) fiduciary duties to the creditors, as they could be giving up potential claims that the estate has. The Examiner[3]'s report will likely uncover the massive amounts of fraud[4] and other unsavory activities that went on at Celsius before the bankruptcy, which *may* include further proof to backup the *allegations* of Celsius operations as a **Ponzi**

---

[3] The report which was worked on by over 40 state regulators stated that "At a minimum, Celsius has been operating its business in violation of state securities laws. That improper practice alone warrants investigation by a neutral party." No sale of any assets (especially the holdings of 100,000s of thousands of creditors should take place until the Examiner has at the very least filed a report. See: https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909072280000000015.pdf

[4] As was noted in a report filed by the state of Vermont, Celsius was/is being investigated by multiple states regulators for "concerns about potential unregistered securities activity, mismanagement, **securities fraud**, and market manipulation by Celsius and its principals" https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909072280000000015.pdf

**Scheme**[5]. Celsius may have claims against various companies/individuals such as Tether[6], FTX[7] among other parties. This uncertainty about Celsius potentially being a **Ponzi Scheme**[8] likely is making potential buyers hasty due to clawbacks. Also, if FTX did in fact play a part in forcing Celsius into bankruptcy, they should not benefit from that, quite to the contrary, they should compensate the estate for the damage caused, potentially filling the roughly $2.5 billion hole. The sale should, at the very least, be delayed until after the Examiner's report comes out. This attempt to move forward the sale of the assets of the estate (and potentially assets that do not belong to the estate), *seems* to be a breach of fiduciary duty. The creditors (who the Debtors and their attorney's have a fiduciary duty to) gain nothing from this sale being rushed, and potentially lose a lot, like claims they may have against various entities. This sale will not stop the massive (unconscionable, wasteful and disgustingly frivolous) cashburn that is going on. You do not repair a house damaged by fire, while the fire is still ongoing, because you will only be feeding it, leaving you with less to repair the house with. The so-called fire (the massive burn of cash) must be stopped before more resources are committed. The bankruptcy attorneys at Kirkland and Ellis are among the best in the world, so they clearly must know this, and for that reason, legal fees for the work done to move up the sale of assets (and any additional costs incurred to do so) must be **denied**.

There seems to be no good reason to move up the sale of the assets by over two months, other than to *potentially* have the sale be completed before the Examiner's report comes out; which if true, is a massive breach of fiduciary duty and potentially **malpractice**. The Debtors have been uncooperative and (contrary to what they are saying) not forthcoming with information to the UCC (and the creditors in general). I as a "creditor[9]", have the right to know what exactly happened to my money, and decide if continuing with this Chapter 11 Bankruptcy is the right move. This whole bankruptcy process seems backwards, why exactly was Celsius, who operated as a mix between a **bank** and a (unknown to me, and everyone) *unregulated* **hedge fund** being treated like a normal corporation that has an actual product? It is my understanding that Celsius's bankruptcy should have been treated like a SIPC/SIPA liquidation.

---

[5] It should be noted, that I am not saying that Celsius was/is a **Ponzi Scheme**, but I reserve the right to do so in the future. It should be further investigated if declaring Celsius a **Ponzi Scheme** would be in the best interests of the depositors/creditors.

[6] Who had a $1 billion loan paid back *after* the debtors paused withdrawals for its customers. This (to me) seems to constitute a clear preferential payment.

[7] There are allegations that FTX may have caused the downfall of Celsius by using so-called "Naked Shorts" (which is illegal) to crash the price of the "CEL" token. This was noted in docket number 953.

[8] It should be noted, that I am not saying that Celsius was/is a **Ponzi Scheme**, but I reserve the right to do so in the future. It should be further investigated if declaring Celsius a **Ponzi Scheme** would be in the best interests of the depositors/creditors.

[9] That is what I have been classified as, but I dispute this.

The rushed sale is extremely likely to lead to reduced bids, which directly harms the creditors. This is yet another example of how the Debtors/their counsel/any advisors and consultants involved in moving up this sale are breaching their fiduciary duty and committing potential malpractice. *Which buyer would want to buy assets that could be clawed back? Which buyer would buy assets without knowing the entirety of what they are buying?* What is crystal clear is that the assets **cannot** be sold until there is a determination of *who* owns them.

All of this uncertainty is highly likely to reduce both the amount of bidders, and the bidding prices. Potentially all that will be received are lowball offers. This sale must be delayed until the Examiner is able to conclude her work. If her work is allowed to proceed (like it should), it will highly likely lead to a much more competitive bidding process, which directly benefits the creditors. Unlike the Debtors' current plan, which directly harms the creditors and benefits the consultants/advisors, which is a **clear** breach of their fiduciary duties.

## THE OWNERSHIP AND TITLE OF THE CRYPTOCURRENCY ASSETS STILL REMAINS UNCLEAR[10]

The Debtors are requesting to be able to establish "the following dates and deadlines in connection with the process to solicit bids for the Sale of the assets, properties, goodwill, and rights relating to their businesses comprising the Debtors' retail platform business (the "Retail Platform Assets[11]"), which include any cryptocurrencies or digital assets held by the Debtors (to the extent that they comprise property of the estate as such term is defined under section 541 of the Bankruptcy Code)." Just because the Debtors have bare possession of the assets, does not necessarily mean that they are their property. It has yet to be determined or ruled on if the Debtors own the cryptocurrency assets in their possession or if they are "not property of the estate" under 11 USC 541(d), in which case they are merely holding on to customer coins. This clearly must be determined (as well as, potentially, looking into the pros and cons of a **Ponzi Scheme**[12] designation, if such a designation is in the best interests of the creditors) *before* any sale of the assets takes place. Should a Ponzi designation be a possibility in this case, creditors could still settle with the crypto industry to save the industry and to extinguish USD denominated clawback claims against counterparties in a sale free and clear. However, creditors may get a much better sale offer and have much more leverage in that scenario. We do not have

---

[10] As has been stated numerous times by state regulators, and restated again, in a objection by the State Of Vermont: https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910132280000000028.pdf

[11] It is still quite unclear (and very much contested) whether the so called "Retail Platform Assets" actually belong to the Debtors.

[12] It should be noted, that I am not saying that Celsius was/is a **Ponzi Scheme**, but I reserve the right to do so in the future. It should be further investigated if declaring Celsius a **Ponzi Scheme** would be in the best interests of the depositors/creditors.

enough information to go on yet and the Debtor is not meeting their fiduciary duty to creditors by rushing.

The Examiner's report states that as a part of their scope, the Examiner must carry out "An examination of the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled". This could potentially discover more assets, or lead to information which causes some assets to be clawed back (such as Tether, the ~$300 million sent to FTX just before withdrawals were halted, market making on FTX of CEL token, etc). How can a sale take place before the full scope of the holdings is known? **It can't**. This sale would not include clawbacks from insiders/people with insider knowledge that **must** take place (such as Alexander Mashinsky's withdrawals), and it would be wasteful to hold two separate auctions.

It is crucial that the sale of assets be delayed until *after* the Examiner has completed their report. If the sale is not delayed, it will have extreme negative consequences on the total recovery for the creditors. Fewer entities will bid for the assets. There are many unknowns a potential buyer must be thinking. For example:

*"What if it is a Ponzi Scheme? Will the assets get clawed back?"*
*"What if we purchase assets that the estate did not own, and that leads to legal issues and clawbacks?"*
*"What exactly are we purchasing?"*

A rushed sale can only harm creditors, and their recovery, which *has* to be put **first**. The point of a Chapter 11 bankruptcy is to get the highest recovery for the *creditors* and **not** quickly pay consultants/advisors and lawyers their pound of flesh. This sale must be delayed until the Examiner's report is able to shed more light on a large amount of information including which assets are owned by the estate, and what claims the creditors/estate has against 3rd parties (some of which are likely bidders, such as FTX).

### REQUEST FOR RELIEF

1. I ask that the court orders the sale of the asset to be moved back, until after the Examiner's report is released and able to be examined. As well as allow time for the Examiner's report to be studied, and the Debtors to make the needed changes to the sale plans.

2. I ask that the court deny any and all fees and/or costs (including legal, consulting, any auctions fees, etc) associated with moving the auction/sale up to an earlier date, and then back again to the original date, which is still too early and yet another waste/dissipation of depositor dollars. The Debtor's attorney's should have known better (as they are among some of the best lawyers in the world) that moving up the sale is a cheap trick, and only costs the estate money, while harming the estate, and benefiting the consultants/advisors and attorneys. I cannot be sure what caused them to do this. *Perhaps* they wanted to earn more legal fees (at the expense of the estate, and creditors). *Perhaps* they wanted to have the sale finish before the Examiner's report came out. *Maybe* they want to wrap up the Celsius bankruptcy as soon as possible, due to the damage to their image (since it's a fairly toxic bankruptcy, people losing their life savings due to trusting someone who committed fraud, a laundry list of other crimes (allegedly, according to state regulators), it being a potential **Ponzi Scheme**[13], and then that same company–after insiders and executives withdrew–stating that *customer* assets are actually the companies assets)).

   One thing's for sure: the Debtors/Kirkland and Ellis are *rushing* to complete this bankruptcy as soon as possible, after spending the first three months (after withdrawals were closed), moving things along at a snail's pace. Now, shortly after a Examiner has been appointed to (independently) investigate what exactly was/is going on at Celsius, and where approximately $2.5 **billion** worth of *depositors's* assets were *"lost"* they are rushing to sell off the assets (which have not even been determined to be theirs) as fast as they can *before* the Examiner's report comes out. This is not consistent with their fiduciary obligations and must not be allowed to proceed.

3. I ask that Your Honor instructs the Debtors to be more careful/conservative with their expenses such as legal fees, and fees for financial advisors (which just billed the estate almost $3,000,000 for a month and a half of work). It is not *their* money that is being **wasted** (since the bulk of insiders conveniently withdrew shortly before withdrawals were halted), it is *our* money as the *depositors*. And that you order the Debtors to cut costs (as proposed in *Daniel A. Frishbergs' Motion To Compel The Debtors To Institute Significant Cost Cutting Measures*.)

4. I ask that Your Honor order immediate clawbacks of insiders (as suggested in *Daniel A. Frishbergs' Motion To Compel Insider Clawbacks By The Debtors/UCC*). As well as to follow the plan laid out there for further clawbacks; before any sale of assets occurs, to maximize efficiency (by not holding multiple auctions). Delaying the sale will allow for the estate to maximize the recovery from the assets. The *creditors* do **not** want for their cryptocurrency holdings to be sold at all; but if they must be sold, the recovery must be maximized. What **cannot** be allowed to happen (which is what the Debtors seem to be

---

[13] It should be noted, that I am not saying that Celsius was/is a **Ponzi Scheme**, but I reserve the right to do so in the future. It should be further investigated if declaring Celsius a **Ponzi Scheme** would be in the best interests of the depositors/creditors.

planning) is a quick sale with a significant discount given (on cryptocurrency, which is a highly liquid asset, and should have *no* discount for that reason).

5. I also ask that the court order the UCC/Special Committee overseeing the sale of assets, to review *all* bids, and be open with the creditors about the bids (potentially holding a vote to see which plan is more popular and granting relief to make bids public with any and all powers you have under the bankruptcy code, including your broad equitable powers, even if this is a highly unusual process I am proposing. As I have said since my first filings, Your Honor, this is a highly unusual case). Most creditors do **not** want a fire sale of assets (including *their* cryptocurrency) for pennies on the dollar (especially in the middle of a crypto bear market), and would prefer to also have equity as a part of the sale. The Committee should also be ordered to review offers with equity as well. There is a *clear* **conflict** between the financial advisors (and consultants etc) interest in having a quick sale for cash (with a huge haircut), so they can quickly collect their fee and move on; and the creditors who wish to recover as much of their assets as possible.

Signed:

*/s/Daniel A. Frishberg*

Daniel A. Frishberg, *Pro Se*

October 13th, 2022