## **Exhibit D**

Engagement Letter

# HURON

huronconsultinggroup.com | 550 W. Van Buren St. Chicago, IL 60607

October 14, 2022

Shoba Pillay, Esq.
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456

**Re:** Celsius Network LLC *et al*. (Case No. 22-10964(MG)

Dear Ms. Pillay,

On behalf of Huron Consulting Services LLC ("Huron"), I am pleased to confirm Huron's engagement by you, not individually, but solely in your official capacity as Examiner (the "Examiner") for Celsius Network LLC *et al*. (Case No. 22-10964(MG) ("Celsius" or the "Debtors"), each a "Party," and collectively, the "Parties, now pending before the U.S. Bankruptcy Court for the Southern District of New York (the "Court").

This letter (the "Engagement Letter") and the attached General Business Terms (collectively, the "Agreement") confirm the terms of the Examiner's engagement of Huron, including the mutual understanding and agreement regarding the services to be provided and how Huron will be paid for these services.

**Objective and Scope**
On September 14, 2022, the Court entered the Order Directing the Appointment of an Examiner Under Section 1104(c) of the Bankruptcy Code [Dkt. 820] (the "Examiner Order"), The Examiner Order directed the Examiner to investigate (collectively, the "Investigation"):

a. "the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored post-petition and whether different types of accounts are commingled";
b. "why there was a change in account offerings beginning in April 2022 from the Earn Program to the Custody Service for some customers while others were placed in a 'Withhold Account'";
c. "the Debtors' procedures for paying sales taxes, use taxes, and value-added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto"; and
d. "the current status of the utility obligations of the Debtors' mining business."

Subject to further order of the Court, the Examiner retained Huron to assist, without limitation, with the

**HURON**

huronconsultinggroup.com | 550 W. Van Buren St. Chicago. IL 60607

following services ("Services"):

a) Discharge of duties and responsibilities under the Examiner Order, other orders of this Court, and applicable law.
b) Evaluation and analysis of any financial and valuation issues raised in connection with the Investigation.
c) Interviews, examinations, and the review of documents and other materials in connection with the Investigation.
d) Preparation of reports and other documents necessary in the discharge of the Examiner's duties.
e)  The undertaking and additional tasks or duties that the Court may direct or that the Examiner may determine are necessary and appropriate in connection with the discharge of her duties.

Huron acknowledges that its work in connection with this Agreement is for the purpose of assisting Examiner and her counsel, Jenner & Block LLP ("Counsel"), in connection with the Services.  The Examiner intends Huron's work, opinions, conclusions, and communications relating to the Services to be maintained as confidential and covered by the attorney-client and work product privileges to the extent provided by law, and Huron agrees not to publish, disseminate, or disclose to anyone other than Examiner or Counsel any such materials except with Examiner or Counsel's prior written authorization and will comply with any other requests the Examiner makes that are designed to preserve these privileges.  In addition, the Examiner will provide Huron with instructions regarding any document retention or document production procedures the Examiner expects Huron to follow.

If necessary and requested by the Examiner or Counsel acting on her behalf, Huron professionals may provide an expert report and/or expert testimony (the "Testimony") regarding the Services. The subject matter and scope of any such Testimony shall be performed at the Examiner's and/or her Counsel's direction; however, the Examiner understands that Huron shall undertake all work Huron deems necessary to deliver such Testimony. Furthermore, the Examiner understands that the professional conclusions reached regarding this matter will be those of the Huron professional and, accordingly, Huron has not and cannot predict what conclusions the Huron professional will reach concerning the specific questions or issues for which the Huron professional's opinion testimony may be requested. The Examiner additionally agrees not to schedule any depositions or trial testimony for any Huron employee without first consulting with the Huron employee to ensure availability.

The Examiner agrees to make available to Huron the documents necessary for Huron professionals to complete all requested services.

Huron is a management consulting firm. Huron does not provide attest services, audits, or other engagements in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA") or by the Public Company Accounting Oversight Board ("PCAOB"). The procedures Huron will perform are for the purposes of providing the services outlined in this Engagement Letter.

HURON

huronconsultinggroup.com | 550 W. Van Buren St. Chicago. IL 60607

**Relationship Disclosures**

Huron has performed an internal search to identify potential conflicts and or relationships requiring disclosure. This search was based on the names of the persons and entities that the Examiner has provided. None of these relationships involve have any conflicts prohibiting our performance of this engagement. The Examiner and agrees to inform Huron of additional parties to this matter or any name changes with the parties initially provided to Huron by the Examiner.

**Fees and Expenses**

Huron's fees are based upon the hours actually expended by each engagement team member at each member's applicable hourly billing rate. Huron's standard hourly billing rates by professional level are:

| Level | Hourly Rates |
|---|---|
| Managing Director | $965-$1,315 |
| Senior Director | $920-$950 |
| Director | $605-770 |
| Manager | $575 |
| Associate | $495 |

Huron shall be compensated for any time and expenses (including, without limitation, any fees and expenses of legal counsel) that may be incurred in connection with this engagement, including, without limitation, considering or responding to discovery requests or other requests for documents or information, participating as a witness or otherwise in any legal, regulatory or other proceedings, preparing or negotiating this engagement letter or defending Huron's retention or performance of services hereunder.

Out-of-pocket expenses (including transportation, lodging, meals, communications, supplies, copying, etc.) will be billed at the actual amounts incurred. Out-of-pocket expenses also include reasonable fees and expenses of attorneys consulted or engaged by Huron to assist it with matters under this Agreement, such as retention applications, fee applications, and collection of fees under this Agreement.

Applications for compensation and reimbursement of out-of-pocket expenses will be sent to you for filing with the Bankruptcy Court. Huron understands that its fees are subject to the authorization of the Bankruptcy Court and that the Debtors have sole responsibility for payment of Huron's allowed fees and expenses. Huron agrees that Examiner shall not be responsible for using her own funds or the funds of Jenner & Block LLP to pay any of Huron's charges for this matter.

Huron's fees and expenses are not contingent or conditioned upon the specific advice, conclusions, opinions or testimony rendered in this matter. Huron does not predict or guarantee any result or resolution in this matter.

**Business Terms**

The attached General Business Terms apply to this engagement.

**Acceptance**

Please indicate the Examiner's agreement with these terms by signing and returning the enclosed copy of this letter to me. This engagement and the enclosed terms will become effective upon our receipt of an executed copy of the Engagement Letter and approval of our employment by the Bankruptcy Court.

We appreciate the opportunity to be of service to you and look forward to working with you on this engagement.

Sincerely,

**HURON CONSULTING SERVICES LLC**

By: _Timothy J. Martin_

Timothy J. Martin
Managing Director

Date:_____10/14/22_____

Attachment: General Business Terms

**Acknowledged and Accepted:**

**Shoba Pillay, Esq., not
individually, but solely in her
official capacity as the
Examiner**

_____

Date:_____



**Attachment to Engagement Letter dated October 14, 2022, between
Huron Consulting Services LLC and Shoba Pillay, Esq., not individually, but solely in her official capacity as
Examiner for Celsius Network LLC et al. (Case No. 22-10964(MG)**

**GENERAL BUSINESS TERMS**

These General Business Terms, together with the Engagement Letter (including any and all attachments, exhibits and schedules) constitute the entire understanding and agreement (the "Agreement") between us with respect to the services and deliverables described in the Engagement Letter. If there is a conflict between these General Business Terms and the terms of the Engagement Letter, these General Business Terms will govern, except to the extent the Engagement Letter explicitly refers to the conflicting term herein.

**1.Our Services and Deliverables** We will provide the services and furnish the deliverables (the "Services") as described in our Engagement Letter and any attachments thereto, as may be modified from time to time by mutual consent.

**2. Independent Contractor** We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our Services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, payroll and other applicable employee withholdings.

**3. Fees and Expenses** (a) Our fees and payment terms are set out in our Engagement Letter. Those fees do not include taxes and other governmental charges (which will be separately identified in our invoices.) In the event you request that we perform some or all of the Services outside of the United States, we may issue the resulting invoice from a Huron affiliate located in the country where such Services are performed.

(b) You acknowledge that where out-of-town personnel are assigned to any project on a long-term basis (as defined from time to time in the applicable provisions of the Internal Revenue Code and related IRS regulations, and currently defined, under IRC Section 162, as a period of time reasonably expected to be greater than one year), the associated compensatory tax costs applied to out-of-town travel and living expenses also shall be calculated on an individual basis, summarized, and assessed to such personnel. In such cases, the expenses for which you shall reimburse us hereunder shall be deemed to include the estimated incremental compensatory tax costs associated with the out-of-town travel and living

expenses of our personnel, including tax gross-ups. We shall use reasonable efforts to limit such expenses.

(c) We reserve the right to suspend Services if invoices are not timely paid, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension.

**4. Taxes** Intentionally omitted. **5. Confidentiality and Privacy** (a) With respect to any information supplied in connection with this engagement and designated by either of us as confidential, or which the other should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure ("Confidential Information"), the other agrees to protect the confidential information in a reasonable and appropriate manner consistent with industry standards, and with no less than the same degree of care that the receiving party uses to protect its own confidential information, and use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) lawfully disclosed by a third party, (iv) independently developed, (v) disclosed pursuant to legal requirement or order, or (vi) disclosed to taxing authorities or to representatives and advisors in connection with tax filings, reports, claims, audits and litigation.

(b) Confidential Information made available hereunder, including copies thereof, shall be returned or destroyed upon request by the disclosing party; provided that the receiving party may retain other archival copies for recordkeeping or quality assurance purposes and receiving party shall make no unauthorized use of such copies. Any such confidential Information retained by the receiving party shall remain subject to the protections set forth in the Agreement for as long as such material is retained by the receiving party.

**HURON**

(c) We agree to use any personally identifiable information and data you provide us only for the purposes of this engagement and as you direct, and we will not be liable for any third-party claims related to such use. You agree to take necessary actions to ensure that you comply with applicable laws relating to privacy and/or data protection, and acknowledge that we are not providing legal advice on compliance with the privacy and/or data protection laws of any country or jurisdiction.

(d) At the conclusion of the engagement, with your prior written consent, we may use your name, logo and a general description of the engagement in our marketing materials and traditional tombstone advertising.

**6. Our Deliverables and Your License** Intentionally omitted.

**7. Your Responsibilities.** To the extent applicable, you will cooperate in providing us with office space, equipment, data and access to your personnel as necessary to perform the Services. You shall provide reliable, accurate and complete information necessary for us to adequately perform the Services and will promptly notify us of any material changes in any information previously provided. You acknowledge that we are not responsible for independently verifying the truth or accuracy of any information supplied to us by or on behalf of you.

**8. Our Warranty** We warrant that our Services will be performed with reasonable care in a diligent and competent manner.

We do not warrant and are not responsible for any third party products or services. Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ALL OF WHICH ARE HEREBY DISCLAIMED.

**9. Liability and Indemnification** Intentionally omitted.**10. Non-Solicitation** Intentionally omitted.

**11. Termination**

(a) Termination for Convenience. You may terminate this Agreement for convenience at any time by providing written notice to us. We may terminate this Agreement for convenience at any time on 30 days' prior written notice to you.

(b) Termination for Breach. Either party may terminate this Agreement for breach if, within 15 days' notice, the breaching party fails to cure a material breach of this Agreement.

(c) To the extent you terminate this Agreement for convenience or breach, we reserve the right to seek compensation and reimbursement of out-of-pocket expenses by filing an application for such compensation and fees with the Bankruptcy Court.

(d) Further, we reserve the right to terminate this Agreement at any time, upon providing written notice to you, if conflicts of interest arise or become known to us that, in our sole judgment, would impair our ability to perform the Services objectively.

(e) The terms of this Agreement which relate to confidentiality, privilege, ownership and use, limitations of liability and indemnification, non-solicitation and payment obligations shall survive its expiration or termination.

**12. General** (a) This Agreement supersedes all prior oral and written communications between us, and may be amended, modified or changed only in a writing when signed by both parties.

(b) No term of this Agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to conflict of law rules. The

HURON

parties hereto agree that any and all disputes or claims arising hereunder, or in any way related to this Agreement or any performance thereunder, including any disputes with or claims against Huron employees, and any claims by any of your officers, directors, employees, shareholders and/or creditors, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The parties agree that questions of arbitrability shall be delegated to and decided by an arbitrator and not a court. Any arbitration will be conducted in Chicago, Illinois. Any arbitration award may be entered in and enforced by any court having jurisdiction thereof, and the parties consent and commit themselves to the jurisdiction of the courts of the State of Illinois for purposes of any enforcement of any arbitration award. Except as may be required by

law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties, provided however, that the parties may disclose such information to their respective insurers or auditors. If any portion of this Agreement is found invalid, such finding shall not affect the enforceability of the remainder hereof, and such portion shall be revised to reflect our mutual intention.

(e)    This Agreement shall not provide third parties with any remedy, cause, liability, reimbursement, claim of action or other right in law or in equity for any matter governed by or subject to the provisions of this Agreement

\*    \*    \*