Hearing Date and Time: November 1, 2022 at 11:00 a.m. (EDT)
Objection Deadline: October 29, 2022 at 4:00 p.m. (EDT)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING OF IGNAT TUGANOV'S (A) RESPONSE TO EXAMINER'S MOTION TO APPROVE WORK PLAN, AND (B) MOTION TO CLARIFY OR EXPAND SCOPE OF EXAMINER'S INVESTIGATION**

**PLEASE TAKE NOTICE** that a hearing on Ignat Tuganov's (A) Response to Examiner's Motion to Approve Work Plan, and (B) Motion to Clarify or Expand Scope of Examiner's Investigation (the "Motion") will be held on November 1, 2022, at 11:00 a.m., prevailing Eastern Time (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (i.e., on October 31, 2022).**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 11:00 a.m., prevailing Eastern Time on November 1, 2022 must connect to the Hearing beginning at 10:00 a.m., prevailing Eastern Time on November 1, 2022. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of In re Celsius Network LLC, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II)

Granting Related Relief [Docket No. 528] (the "Case Management Order") by **October 29, 2022, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely Objection may result in entry of a final order granting the Motion.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*remainder of page intentionally left blank; signature block follows*]

Dated: New York, New York
October 18, 2022

                                         VENABLE LLP

By:   */s/ Jeffrey S. Sabin*
Andrew J. Currie (*admitted pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586
Facsimile: (202) 344-8300
Email: AJCurrie@venable.com

- and -

Jeffrey S. Sabin
Carol Weiner Levy
Arie Peled
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 503-0896
Facsimile: (212) 307-5598
Email: JSSabin@venable.com
Email: CWeinerLevy@venable.com
Email: APeled@venable.com

*Counsel for Ignat Tuganov*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**IGNAT TUGANOV'S (A) RESPONSE TO EXAMINER'S MOTION TO APPROVE WORK PLAN, AND (B) MOTION TO CLARIFY OR EXPAND SCOPE OF EXAMINER'S INVESTIGATION**

Ignat Tuganov (the "Movant"), by and through his undersigned counsel, hereby submits this response to the *Examiner's Motion to Approve Work Plan* [Dkt. No. 1013] (the "Work Plan Motion"), and moves pursuant to paragraph 13 of the Examiner Order (as defined herein) to clarify or expand the scope of the Court-appointed examiner's investigation to specifically address whether the Debtors engaged in a Ponzi scheme, and if so, when the scheme began.

**Background**

1. On July 13, 2022 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.

2. On September 14, 2022, the Court entered an *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. No. 820] (the "Examiner Order"). Pursuant to the Examiner Order, the U.S. Trustee was directed to appoint an examiner to investigate the following (collectively, the "Investigation"):

   i. The Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled;

   ii. Why there was a change in account offerings beginning in April 2022 from the Earn Program to the Custody Service for some customers while others were placed in a "Withhold Account";

  iii.  The Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto;

  iv.  The current status of the utility obligations of the Debtors' mining business; and

  v.  Otherwise perform the duties of an examiner set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code.

Examiner Order ¶ 3.

3. The Examiner Order further provides that the Examiner shall propose a work plan within seven (7) business days after entry of an order appointing the Examiner. *Id.* ¶ 7. The Examiner Order also provides that parties in interest reserved all rights regarding the Work Plan, and also reserved the right to "seek relief from the Court to further expand the [s]cope of the [Examiner's] Investigation . . . ." *Id.* ¶¶ 7, 13.

4. On September 29, 2022, the Court entered an order approving the appointment of Shoba Pillay as the Examiner [Dkt. No. 923].

5. On October 7, 2022, the *Revised Proposed Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Dkt. No. 996] was filed, and later entered by the Court on October 13, 2022 [Dkt. No. 1044] (the "Scheduling Order"). The Scheduling Order requires, among other things, that on or before November 20, 2022, "the Examiner [] file an interim report on matters within the Examiner's scope that relate to Phase I Issues (as such scope is set forth in and may be expanded pursuant to the [Examiner Order])." The Custody and Withhold Issues (as defined in the Scheduling Order) that the Examiner is tasked with reporting on could be materially affected by an analysis of whether the Debtors engaged in a Ponzi scheme.

6.  On October 11, 2022, the Examiner filed the Work Plan Motion, seeking the Court's approval of her work plan (the "Work Plan") [Dkt. No. 1013].

7.  Pursuant to the Examiner Order, the Examiner's final report is due on or before December 10, 2022—two days after the close of hearings on the Custody and Withhold Motion and Phase I Issues (as those terms are defined in the Scheduling Order). Examiner Order ¶ 8; Scheduling Order ¶ 7.

**Discussion**

8.  In seeking the appointment of an examiner, the U.S. Trustee explained that:

> An investigation by an independent examiner . . . is essential to provide the Court, the United States Trustee, creditors, and other parties in interest with transparency and clarity as to the business structure, practices, and liquidity of the Debtors. The Debtors' financial affairs and business operations need to be reviewed and "untangled" by a disinterested person that is removed from the competing interests of the complicated and numerous constituencies in this case.

Mot. of the U.S. Trustee for Entry of an Order Directing the Appointment of an Examiner [Dkt. No. 546] (the "Examiner Motion") ¶ 43.

9.  Movant is a creditor[2] that holds an earn account with the Debtors. Like many of the Debtors' account holders (the "Account Holders") and other stakeholders, Movant wholeheartedly agrees that an investigation by a "disinterested person" is needed to "untangle[]" the Debtors' financial affairs and operations, and therefore supports the Investigation the Examiner has been tasked with undertaking. Movant submits this motion and response to the Examiner's Work Plan Motion, however, because the proposed Work Plan fails to specifically address one of

---

[2]  The Debtors acknowledge that Movant is a creditor. *See* Dkt. No. 974-1 (Schedule F-1) at p. 432. The Debtors further acknowledge that, due to the terms of service purportedly governing account holders like Movant's relationship with the Debtors, Movant may "have claims against every Debtor and non-Debtor entity in the Debtors' corporate structure." Dkt. No. 974 at p. 3.

3

the most central issues that bears investigating in these proceedings—namely, whether the Debtors' business operations amounted to a Ponzi scheme, and if so, when the Ponzi scheme began.

10. The U.S. Trustee acknowledged in the Examiner Motion that multiple stakeholders have credibly alleged the Debtors engaged in a Ponzi scheme by relying on new deposits to pay the yield owed to existing Account Holders. *See* Examiner Motion ¶¶ 26, 39; *see also* Dkt. No. 123; Dkt. No. 914 at pp. 6-8. Similarly, in joining the Examiner Motion, the Vermont Department of Financial Regulation noted that:

> Celsius [] admitted at the 341 meeting that the company had never earned enough revenue to support the yields being paid to investors. This shows a high level of financial mismanagement and also suggests that at least at some points in time, yields to existing investors were probably being paid with the assets of new investors.

Dkt. No. 730 ¶ 12.

11. The concerns regarding the existence of a Ponzi scheme are further strengthened by the Debtors' Statement of Financial Affairs, which reveals numerous state and federal investigations into its conduct, including federal grand jury subpoenas and a Commodities Futures Trading Commission inquiry into "certain persons engaged in fraud and other unlawful conduct with respect to digital asset transactions." Dkt. No 973 at pp. 14510-14520. There have also been concerning reports regarding the Debtors' founder, Mr. Alex Mashinsky, withdrawing millions of dollars from the Debtors in advance of the Petition Date. *See, e.g.,* https://www.ft.com/content/5f7c9eab-ca5f-4425-91be-5781313c9723.

12. As this Court has previously explained, "[a] 'Ponzi' scheme . . . refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments.

Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors." *In re Dreier LLP*, 452 B.R. 391, 402 n.9 (Bankr. S.D.N.Y. 2011) (Glenn, J.) (internal quotations and citation omitted); *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 83 (2d Cir. 2002) (Paying "investors a return out of the assets transferred by later investors" is a "classic Ponzi scheme"). That is precisely what is alleged to have occurred here.

13.     Movant believes that now is the time to clarify or expand the scope of the Examiner's Investigation to include a Ponzi analysis, as the Examiner—a disinterested party—is best suited to initially perform such an investigation, and a Ponzi determination would likely have significant implications on many of the most important issues in these proceedings, including the Custody and Withhold Issues, several pending motions and objections regarding various proposed asset sales by the Debtors, and the motion to appoint a preferred equity committee, among others.[3]

14.     A determination of whether and when the Debtors operated a Ponzi scheme may also significantly simplify and reduce the cost of the administration of these cases and/or focus parties-in-interest on (a) how best to structure a plan of reorganization or liquidation, (b) exclusivity issues, and (c) liquidity issues. For instance, because investments made into a Ponzi scheme after the date a Ponzi is declared constitute the acquisition of a restitution claim, if the Debtors are found to have operated a Ponzi scheme, non-insider Account Holders may be deemed entitled to recoup their cryptocurrency assets only up to the original amount of their deposits. *See In re Dreier LLP*, 452 B.R. at 437 ("a Ponzi investor immediately obtains a claim for restitution against the debtor upon making the investment by virtue of the debtor's fraud" (internal quotation

---

[3] Indeed, the U.S. Trustee has argued that some of these issues should await the Examiner's conclusions in her report before being ruled on by the Court. *See* Dkt. No. 1047 at p.2.

marks and citation omitted)); *SEC Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs.*, 496 B.R. 744, 761 (Bankr. S.D.N.Y. 2013) (affirming, in a SIPA liquidation, the trustee's use of the "Net Investment Method" which was designed to place all investors on equal footing by returning only the principal invested); *In re Woodbridge Grp. of Companies, LLC*, 592 B.R. 761, 767 (Bankr. D. Del. 2018) (applying "netting" mechanism due to finding of Ponzi scheme).

15. Moreover, non-insider Account Holders' claims for amounts invested after the Ponzi scheme is deemed to have begun can be treated *pari passu*—regardless of whether they hold earn, custody or withhold accounts—giving all defrauded Account Holders the equal opportunity to recoup their deposits, net of rewards and/or other payments received, so that no innocent victim benefits at the expense of another. *See, e.g.*, *Bernard L. Madoff Inv. Secs.*, 496 B.R. at 761; *Credit Bancorp, Ltd.*, 290 F.3d at 88-89 ("the use of a *pro rata* distribution has been deemed especially appropriate for fraud victims of a 'Ponzi scheme'"); *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 858 (D. Utah 1987) (concluding, in the context of a Ponzi scheme, "that, as a matter of public policy, the contracts involved in this case were unenforceable to the extent they purported to give the defendants a right to payments in excess of their undertaking.")

16. In addition, in connection with a Ponzi determination, the Debtors can be substantively consolidated to increase the amount of assets available to satisfy the Account Holders' claims. *See, e.g.*, *In re Woodbridge Grp. of Companies, LLC*, 592 B.R. at 775-778 (holding that substantive consolidation of debtors involved in Ponzi scheme is appropriate); *In re Bonham*, 229 F.3d 750, 769 (9th Cir. 2000) (affirming district court's substantive consolidation of debtors involved in Ponzi scheme).[4]

---

[4] Indeed, the Debtors appear to acknowledge that substantive consolidation is appropriate here. *See* Dkt. No. 974 at p. 3.

17.     The Examiner acknowledges in her Motion that the Court directed her to "perform the duties of an examiner set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code." Motion ¶ 5 (quoting Examiner Order ¶ 3(v)).  Movant believes these duties **now** should include investigating whether the Debtors' business practices amounted to a fraudulent Ponzi scheme.  This is particularly so in light of the significant implications such a finding would have on the course of these proceedings, including several contested motions now pending before the Court, including the Examiner's Rule 2004 motion scheduled to be heard on October 20, 2022.  The Examiner's Work Plan, however, does not specifically address whether she intends to undertake a Ponzi analysis.

18.     For these reasons, Movant seeks relief from this Court to require the Examiner and her Work Plan to specifically commit to investigating whether the Debtors' business operations constitute a Ponzi scheme, and if so, when the Ponzi scheme began.  Movant believes that such an examination is already authorized under Paragraph 3(v) of the Examiner Order—which directs the Examiner to perform the duties specified in section 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code—but, because time appears of the essence, Movant requests that the Work Plan be amended to specifically provide for an examination of whether the Debtors operated a Ponzi scheme, and that such an examination be performed as soon as practicable and that its conclusions be included in the Examiner's report.  Movant's counsel stands ready to assist the Examiner in any manner that may be helpful to accomplishing this task.[5]

---

[5] Movant's counsel contacted the Examiner's counsel regarding whether the Examiner currently intends to conduct a Ponzi analysis in connection with her Investigation, but did not receive a response in advance of the deadline to object to the Work Plan Motion, and so files this motion and response out of an abundance of caution.

7

## **Reservation of Rights**

19.     Movant reserves all of his rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this motion and response, and to raise additional arguments regarding the Examiner's Investigation and/or Work Plan.

## **Conclusion**

20.     For the reasons stated herein, Movant respectfully requests: (i) that the Work Plan be amended to specifically provide that the Examiner will investigate, among other things, whether the Debtors engaged in a Ponzi scheme, and if so, when the Ponzi scheme began and the consequences thereof, (ii) that the Ponzi investigation be completed as soon as practicable and its conclusions be included in the Examiner's report, and (iii) that the Court grant any other and further relief to which Movant may be justly entitled.

[*remainder of page intentionally left blank; signature block follows*]

Dated: New York, New York
October 18, 2022

                        VENABLE LLP

By:   */s/ Jeffrey S. Sabin*
Andrew J. Currie (*admitted pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586
Facsimile: (202) 344-8300
Email: AJCurrie@venable.com

- and -

Jeffrey S. Sabin
Carol Weiner Levy
Arie Peled
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 503-0896
Facsimile: (212) 307-5598
Email: JSSabin@venable.com
Email: CWeinerLevy@venable.com
Email: APeled@venable.com

*Counsel for Ignat Tuganov*

9