Hearing Date: November 1, 2022, at 11:00 a.m. (prevailing Eastern Time)
Objection Deadline: October 18, 2022, at 5:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' OBJECTION TO CREDITOR'S
NOTICE OF MOTION AND MOTION SEEKING FOR RULING OF
FULL TITLE OF OWNERSHIP OF FUNDS WITH RESPECT TO USERS WHO
HAVE BEEN BLOCKED ACCESS BY DEBTOR PRIOR TO BANKRUPTCY AND
TO REQUEST DISCLOSURE FROM DEBTOR ON THE NUMBER AND AMOUNT
OF SUSPENDED/CLOSED ACCOUNTS WHICH FUNDS STILL KEPT BY DEBTOR**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (this "Objection") in response to the *Creditor's Notice of Motion and Motion Seeking For Ruling of Full Title of Ownership of Funds With Respect to Users Who Have Been Blocked Access By Debtor Prior to Bankruptcy and to Request Disclosure From Debtor On the Number*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*and Amount of Suspended/Closed Accounts Which Funds Still Kept By Debtor* [Docket No. 877] (the "Motion"), filed by *pro se* creditor Kwok Mei Po ("Kwok"), and respectfully state as follows.

### Preliminary Statement

1. Kwok seeks to lift the automatic stay—one of the fundamental tenets of chapter 11 protection—and have the cryptocurrency assets in her Earn Accounts returned to her.[2] Kwok also requests that the Court issue a declaratory judgment finding that customers hold title to cryptocurrency in suspended Earn Accounts. The Motion should be denied. Kwok has not met her burden of demonstrating that "cause" exists to lift the automatic stay for her claim. **First**, the Motion implicates legal questions at the core of these chapter 11 cases such that their resolution at this time would be inappropriate. **Second**, even though Kwok argues that she is no longer a valid customer of the Debtors because her Earn Accounts were suspended, the facts demonstrate that Kwok is similarly situated to all of the Debtors' unsecured creditors and should therefore be subject to the same rules.

2. Key legal issues in these chapter 11 cases, including those asserted in the Motion, will be resolved in connection with the briefing schedule set forth in the *Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1044] and the *Debtors' Motion Seeking Entry of An Order (I) Permitting the Sale of Stablecoin in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 832], among other things. Therefore, it is inappropriate and premature to decide Kwok's issues on an individual basis, and the Motion should be denied.

---

[2] Capitalized terms used but not defined in this section shall have the meanings ascribed to such terms elsewhere in this Objection.

2

**Factual Background**

3. Kwok has accounts on the Debtors' platform, all of which are in the Debtors' "Earn" program (the "Earn Program" and accounts therein, "Earn Accounts") and which have been suspended.[3] *See generally* Motion; *see also* **Exhibit A**[4] attached hereto. Kwok requests that the Debtors return the assets in her suspended Earn Accounts, and that the Court determines who holds title to assets in accounts that have been suspended or closed. *Id.* Kwok explains that her Earn Accounts were suspended before the Debtors initiated a freeze on all withdrawals, transfers, and activity on June 12, 2022 (the "Pause") yet does not state why her accounts were suspended. *Id.*

4. Kwok states that, for the first time, on June 20, 2022, in response to her email asking why her Earn Accounts were suspended, she received an email informing her that her accounts were suspended for violating the terms of use dated April 15, 2022 (the "April 2022 Terms of Use"), that any rewards that she had earned via the Earn Program would be cancelled, and that any cryptocurrency assets remaining in the Earn Accounts after thirty days would be returned to her. *Id.* ¶ 1; *see also* **Exhibit A**. As a result of the suspension, Kwok's Earn Accounts were "blocked," and interest and bonuses credited to the accounts were cancelled. *Id.* ¶ 2.

5. Kwok points to section 19(A) of the April 2022 Terms of Use and argues that they provide for return of a user's assets if the Debtors close the customer's account. *Id.* ¶¶ 2, 3. Kwok further argues that the April 2022 Terms of Use do not differentiate between "suspended" and

---

[3] On April 15, 2022, the Debtors began providing a custody service to certain users located in the United States (the "Custody Service" and accounts therein, "Custody Accounts"). For eligible users, the Custody Service serves as the central hub of their digital asset account at Celsius, enabling the user to move their digital assets from Celsius' "Custody Wallet" to other service offerings. Non-U.S. users were required to use the Earn Program.

[4] **Exhibit A** reproduces the June 20, 2022 email from the Debtors to Kwok in response to the June 14, 2022 inquiry from Kwok on the status of her accounts. **Exhibit A** includes internal notes made by the Debtors' compliance team regarding Kwok's accounts.

3

"closed" accounts and that, accordingly, when an account is suspended, the Debtors are required to return assets to the account holder in the same way as if the account was closed. *Id.* ¶ 3.

6.     Kwok further argues that, once an Earn Account is suspended or closed and stops earning rewards, such account no longer qualifies as an Earn Account, the customer is no longer a valid customer of the Debtors and, therefore, the Debtors do not hold title to the assets in any of her suspended Earn Accounts. *Id.* ¶¶ 4, 5. Kwok's assertions are misplaced.

**I.     Kwok's Account Activity.**

7.     Kwok opened at least eight accounts on the Debtors' platform from the same physical address associated with Kwok. *See* **Exhibit B**.[5] A single mobile device was used to log in to all of these accounts.[6] *See* **Exhibit A**.

8.     The April 2022 Terms of Use apply to Kwok's accounts, as her use of the accounts following the release of the April 2022 Terms of Use constituted acceptance thereof.[7] *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* ¶13 [Docket No. 393] (the "TOU Decl.").

9.     On June 14, 2022—when the Pause was already in effect—Kwok contacted the Debtors via email to inquire about the reason for the suspensions and request to have her accounts unfrozen as soon as possible. *See* **Exhibit A**. Kwok acknowledged that she had multiple accounts,

---

[5]   **Exhibit B** reproduces an August 24, 2022 email from Kwok to the Debtors listing eight accounts that belong to her.

[6]   **Exhibit A** includes an internal note by the Debtors' compliance team stating as follows: "AC Suspended for referral abuse - Device ID DE66FB7E8-474C-4507-BD9D-0AA921224E40 has been used to access 8+ accounts along with other devices overlapping."

[7]   When the April 2022 Terms of Use were released, customers in the U.S. were required to consent to them; international customers like Kwok were not. Section 31 of the previous version of the terms of use, dated August 3, 2021, provides that continued use of Celsius accounts following release of revised terms of use constitutes acceptance of the revised terms of use. *See* Exhibit A-7 of the TOU Decl.

4

that these accounts were registered under different names, and that these accounts belonged to her and her family. *Id.* In her email, Kwok stated that "there may be multiple account [sic] created for one person because some of them when we applied for the account, we noted that we got the promo code entered wrongly," and that she "helped them restart over with a new account." *Id.*

10.     On June 20, 2022, the Debtors responded to Kwok and informed her that her accounts were suspended because she had violated Sections 5(A) and 5(C) of the April 2022 Terms of Use since she accessed or controlled multiple accounts.[8] *Id.* The Debtors' suspension of Kwok's accounts was consistent with their right to limit access to, otherwise restrict, or close accounts at any time, as provided in Section 23 of the April 2022 Terms of Use. *See* Exhibit A-8 of TOU Decl. The Debtors' June 20, 2022 email to Kwok also informed Kwok that rewards credited to her accounts would be cancelled. *See* **Exhibit A**. The Debtors also noted that they had instituted the Pause on all withdrawals, Swap transactions, and transfers between accounts. *Id.* Prior to the expiration of the thirty days (which would have occurred on July 20, 2022), the Debtors filed for chapter 11 on July 13, 2022, and the automatic stay went into effect.

---

[8] Sections 5(A) and 5(C) of the April 2022 Terms of Use provide: "5. Celsius Account Types, A. Individual Celsius Account: This Celsius Account is owned by only one natural person who is and will continue to be the only person authorized to take any action in the Celsius Account. By opening an Individual Celsius Account, you represent and warrant that you are and shall at all times continue to be the sole beneficial owner of the Celsius Account and user of all Services facilitated or generated therefrom.
5. Celsius Account Types, C. Maximum Number of Accounts: Each User is authorized to have a maximum of one Individual Celsius Account and one Corporate Account (as in the case of a sole proprietorship) at any given time. Requests for additional accounts must be sent via email to app@celsius.network. Celsius may deny a request for an additional account at its sole discretion and any reason. Celsius may merge, freeze, suspend, or terminate any Account(s) in its sole discretion and for any reason, including to the extent Celsius reasonably believes any such Account(s) to be in breach of this policy. Referral awards and any interest credited to this account will therefore be canceled." *See* Exhibit A-8 of TOU Decl.

5

**Objection**

I.  **Kwok Has Failed to Demonstrate Cause for Relief from the Automatic Stay.**

11. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," and Congress intended that it have broad application. *See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (citation omitted). It gives the debtor a "breathing spell," shielding the debtor from creditor litigation in various forums when the debtor should focus on its restructuring efforts. *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (citation omitted). The stay remains in place until the plan of reorganization is consummated. *See In re Old Carco LLC*, 500 B.R. 683, 689 (Bankr. S.D.N.Y. 2013) (noting the automatic stay terminated on the effective date of the plan) (citing 11 U.S.C. § 362(c)(2)(C)).

12. The movant bears the burden of showing "cause" to lift the stay. *In re Pioneer Com. Funding Corp.*, 114 B.R. 45, 47–48 (Bankr. S.D.N.Y. 1990). In the Second Circuit, the *Sonnax* factors determine whether "good cause" exists to lift the stay. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285–87 (2d Cir. 1990).[9] Courts will not lift the stay with regard to unsecured claims such as Kwok's unless "extraordinary circumstances are established to justify such relief." *In re Res. Cap., LLC*, 501 B.R. 624, 643–44 (Bankr. S.D.N.Y. 2013) (Glenn, J.) (citing *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

---

[9] The *Sonnax* factors are: (1) whether relief would result in a partial or complete resolution of the issues, (2) the lack of any connection with or interference with the bankruptcy case, (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (5) whether the debtor's insurer has assumed full responsibility for defending the action, (6) whether the action primarily involves third parties, (7) whether litigation in another forum would prejudice the interests of other creditors, (8) whether the judgment claim arising from the other action is subject to equitable subordination, (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, (10) the interests of judicial economy and the expeditious and economical resolution of litigation, (11) whether the parties are ready for trial in the other proceeding, and (12) the impact of the stay on the parties and the balance of harms. *Sonnax*, 907 F.2d at 1286 (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).

13.     Kwok does not establish "extraordinary circumstances," nor has she carried the burden of demonstrating a *prima facie* showing of "cause" to lift the stay. *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999); *see also In re Leibowitz*, 147 B.R. at 345. Specifically, Kwok's claim *does* have a connection to the chapter 11 cases such that resolution of her claim would disrupt the Debtors' restructuring, lifting the stay would prejudice other creditors, and the harm to the Debtors' reorganization by lifting the stay outweighs any harm the stay imposes on Kwok.

        **A.**     **The Automatic Stay Cannot be Lifted for Kwok Because Her Claim is Inextricably Intertwined with the Debtors' Chapter 11 Cases.**

14.     Kwok's claim "is connected to, and would interfere with, the bankruptcy case" because it is "inextricably intertwined" with key legal issues in these chapter 11 cases. *Sonnax*, 907 F.2d at 1286–87. Because Kwok's claim cannot be resolved without comprehensive resolution of the Debtors' chapter 11 cases, this factor weighs against lifting the stay.

15.     Kwok's circumstances place her squarely within the ranks of the Debtors' general unsecured creditors, and her claim is part and parcel of these chapter 11 cases. *See In re Celsius Network LLC*, 642 B.R. 497, 499 (Bankr. S.D.N.Y. 2022) (Glenn, J) ("Mr. Frishberg and other 'Earn Account' holders appear to be unsecured creditors of Celsius, whether or not they demanded a return of the balance of their earn account before the chapter 11 petitions were filed…"). Her request for a ruling on who holds title to the cryptocurrency on the Debtors' platform implicates questions that impact all of the Debtors' customers and will likely be addressed by the Court in the coming weeks and months. In the last two weeks, the Debtors negotiated a process and briefing schedule with the Unsecured Creditors' Committee, the Ad Hoc Group of Custodial Account Holders, and the Ad Hoc Group of Withhold Account Holders to decide which of the assets on the Debtors' platform are part of the bankruptcy estate. *See Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the*

7

*Custody and Withhold Issues* [Docket No. 1044]. This briefing is expected to begin in the next several weeks. In addition, the *Debtors' Motion Seeking Entry of An Order (I) Permitting the Sale of Stablecoin in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 832], which also implicates questions of title and ownership of the cryptocurrency on the Debtors' platform, is expected to be heard on November 1, 2022.

16. The overlap between Kwok's claim and the chapter 11 cases weighs strongly in favor of denying the Motion. *In re New York Classic Motors, LLC*, 2021 WL 2285440, at *5 (Bankr. S.D.N.Y. June 4, 2021) (adopting debtors' argument that "given that the Concession Agreement, the remaining term and the amounts due by the Debtor thereunder are issues central to the chapter 11 case, . . . the Bankruptcy Court is the most economical and expeditious forum to adjudicate the disputes between the parties").

### B. The Balance of Harms Weighs Against Lifting the Automatic Stay.

17. Unsecured creditors bear a heavy burden in proving that the balance of hardships favors lifting the stay. *See In re Res. Cap., LLC*, 501 B.R. 624, 648 (Bankr. S.D.N.Y. 2013) (Glenn, J.) ("If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested." (citation omitted)); *In re W.R. Grace & Co.*, 2007 WL 1129170, at *3 (Bankr. D. Del. Apr. 13, 2007) (stating that creditors bear "the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief") (quoting *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990)).

18. The harm to the Debtors if the stay is lifted is substantial—if the Motion is granted, it will invite other lift stay motions that will be filed by similarly situated claimants, leading to an unnecessary strain on the Debtors' resources. Kwok has not demonstrated that she will be more prejudiced than any other potential creditor by a short-term delay until key legal issues are resolved. *See In re W.R. Grace & Co.*, 2007 WL 1129170, at *3 ("There is no indication that the

8

state court claims are in any way unique, or that, if proven, Debtors' liability to the [movant], if any, will be distinguishable from liability for any of the other hundreds of thousands of asbestos claims asserted against Debtors.").

## Conclusion

19. For the foregoing reasons, the Court should deny the Motion because Kwok has not established "extraordinary circumstances" to lift the stay at a time when the Debtors and all parties in interest should remain focused on the reorganization process. Kwok has also not provided any credible legal arguments as to why title to ownership of the assets in her Earn Accounts reverted from the Debtors to her. Accordingly, the Court should deny her lift stay request and her request for a declaratory judgment that customers with assets in suspended Earn Accounts hold title to those assets.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated: October 18, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:　(212) 446-4800<br>Facsimile:　(212) 446-4900<br>Email:　　　jsussberg@kirkland.com<br><br>　- and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:　(312) 862-2000<br>Facsimile:　(312) 862-2200<br>Email:　　　patrick.nash@kirkland.com<br>　　　　　　ross.kwasteniet@kirkland.com<br>　　　　　　chris.koenig@kirkland.com<br>　　　　　　dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

# Exhibit A

**June 14, 2022 and June 20, 2022 Email Exchange between Kwok and Debtors**

# 📗 #1013468 Suspension of me and my family's account?

| **Submitted** | **Received via** | **Requester** |
|---|---|---|
| June 14, 2022 at 03:24 | Mail | Mabelkwokearnfire2 <███████████> |

| **Status** | **Priority** | **Group** | **Assignee** |
|---|---|---|---|
| Closed | High | AML Monitoring | Mark Josse |

| **App Feature** | **Type** | **Topic** | **Department** |
|---|---|---|---|
| Sign-up/Login | Incidents | Website | Compliance |

---

**Mabelkwokearnfire2**   June 14, 2022 at 03:24

Hi,

I have 4 active accounts in Celsius (me and my family) and they have been suspended. Each registered with a different ID verification. These are me and my family's account.

I want to know what happened to the suspension and why there was a suspension - there may be multiple account created for one person because some of them when we applied for the account, we noticed that we got the promo code entered wrongly. So I helped them restart over with a new account. I am not sure if this is the reason they were suspended recently.

Can I know when the suspension end and can all accounts be unfreezed as soon as possible?

Thank you - pls reply soon

Reminder: Be aware of phishing sites and always make sure you are visiting the official https://celsius.network website and app. Celsius will never ask you for confidential information such as passwords, private keys, seed phrases, or secret codes. You should store this information privately and securely and report any suspicious activity.

©2022 Celsius Network

121 River Street, Ste PH05
Hoboken, NJ 07030 USA

Registered as a Money Services Business (MSB) number 31000192265811 with the US Financial Crimes Enforcement Network (FinCEN).

Celsius is not a bank, depository institution, custodian or fiduciary and the assets in your Celsius account are not insured by any private or governmental insurance plan (including FDIC or SIPC), nor are they covered by any compensation scheme (including FSCS).

Holding, trading or using crypto assets carry significant risks, please carefully read our Risk Disclosure page. Celsius does not provide any financial, legal or tax advice, nor should this email be viewed as an offer or inducement to make any financial decision.

---

**Tamara Djurdjevic**   June 14, 2022 at 11:25                                              *Internal note*

AC Suspended for referral abuse – Device ID DE6FB7E8-474C-4507-BD9D-0AA921224E40 has been used to access 8 + accounts along with other devices overlapping . MJ FCFI , 16 MAY 2022.

---

**Mark Josse**   June 20, 2022 at 13:38

Hello,

Your account has been suspended after we noted the misuse of our referral program, which violates our terms of use related to individual ownership of individual accounts.

For reference, please see Sections 5A and 5C of our Terms of Use as noted below:

### 5. Celsius Account Types

### A. Individual Celsius Account

This Celsius Account is owned by only one natural person who is and will continue to be the only person authorized to take any action in the Celsius Account. By opening an Individual Celsius Account, you represent and warrant that you are and shall at all times continue to be the sole beneficial owner of the Celsius Account and user of all Services facilitated or generated therefrom.

**C. Maximum Number of Accounts**
Each User is authorized to have a maximum of one Individual Celsius Account and one Corporate Account (such as in the case of a sole proprietorship) at any given time. Requests for additional accounts must be sent via email to app@celsius.network. Celsius may deny a request for an additional account in its sole discretion and for any reason. Celsius may merge, freeze, suspend, or terminate any Account(s) in its sole discretion and for any reason, including to the extent Celsius reasonably believes any such Account(s) to be in breach of this policy.

Referral awards and any interest credited to this account will therefore be cancelled and any deposits not already withdrawn will be returned within the next 30 days.

Celsius has paused all withdrawals, Swap, and transfers between accounts. We are taking this action today to put Celsius in a better position to honour, over time, its withdrawal obligations. As noted, this process will take time, and there may be delays.
Further updates when they are available will be rolled out to our community.

Compliance Team| Celsius Network

---

Support Software by **Zendesk**

## Exhibit B

**August 24, 2022 Email from Kwok to Debtors**

## #1060322 Re: [Celsius Network] Re: Suspension of me and my family's account?

| | | |
|---|---|---|
| **Submitted** | **Received via** | **Requester** |
| August 24, 2022 at 17:38 | Closed Ticket | Mabelkwokearnfire2 <​​​​​​​​​​​​​​​​​​​​​​​​​​​​​​​​> |

**CCs**
Wai Mui Lui <​​​​​​​​​​​​​​​​​​​​​​​​>

| **Status** | **Priority** | **Group** | **Assignee** |
|---|---|---|---|
| Open | Normal | AML Monitoring | - |

| **App Feature** | **Type** | **Topic** | **Department** |
|---|---|---|---|
| Sign-up/Login | Incidents | Website | Compliance |

**Mabelkwokearnfire2**  August 24, 2022 at 17:38

This is a follow-up to your previous request #1013468 "Suspension of me and my fam..."

Hi,

I was trying to withdraw my funds from these accounts and found out that my accounts were suspended. They have been suspended for an extended period of time and now I found out that Celsius has filed for bankruptcy. I want to check how much funds I have totals regarding these accounts and how much and when or whether these funds could be recovered.

Account names:

Waimuiearnfire2

Waimuiearnfire3

Waimuiearnfire

Mabelkwokearnfire

Mabelkwokearnfire2

Mabelkwokearnfire3

Kamwingearnfire

Chihangearnfire

I want to know the account balance regarding each of these accounts and the break down of holdings.
I would like to take this to the request of proceedings.

---

**Tia**  September 1, 2022 at 16:21                                                       *Internal note*

Request #1060378 "Account suspended for extended p..." was closed and merged into this request. Last comment in request #1060378:

Hi,

My accounts named below have been suspended for at least 3 months and I have been writing to request to resume my account and withdraw money from it since early Jun and no action has been taken from your side. Now that Celsius has gone under bankruptcy and my account is still suspended and I am not able to access all my account information.

Please unfreeze these accounts and provide account information for these accounts here:

waimuiearnfire

waimuiearnfire2

waimuiearnfire3

mabelkwokearnfire

mabelkwokearnfire2

mabelkwokearnfire3

kamwingearnfire

Chihangearnfire

Reminder: Be aware of phishing sites and always make sure you are visiting the official https://celsius.network website and app. Celsius will never ask you for confidential information such as passwords, private keys, seed phrases, or secret codes. You should store this information privately and securely and report any suspicious activity.

©2022 Celsius Network

121 River Street, Ste PH05  
Hoboken, NJ 07030 USA  
Registered as a Money Services Business (MSB) number 31000192265811 with the US Financial Crimes Enforcement Network (FinCEN).

Celsius is not a bank, depository institution, custodian or fiduciary and the assets in your Celsius account are not insured by any private or governmental insurance plan (including FDIC or SIPC), nor are they covered by any compensation scheme (including FSCS).

Holding, trading or using crypto assets carry significant risks, please carefully read our Risk Disclosure page. Celsius does not provide any financial, legal or tax advice, nor should this email be viewed as an offer or inducement to make any financial decision.

Support Software by **Zendesk**