Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DEBTORS' OMNIBUS REPLY TO
### OBJECTIONS TO BIDDING PROCEDURES MOTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

submit this omnibus reply (the "Reply") to the objections (the "Bidding Procedures Objections")[2]

to, and in further support of, the *Debtors' Motion Seeking Entry of an Order (I) Approving the*

*Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets,*

*(II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    The Bidding Procedures Objections are set forth on **Exhibit A** attached hereto.

*Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [Docket No. 929] (the "Bidding Procedures Motion").

The Bidding Procedures Objections should be overruled, and the relief requested in the Bidding Procedures Motion should be granted. Contemporaneously herewith, the Debtors filed a revised Bidding Procedures Order that resolves many of the Bidding Procedures Objections. To the extent any letters filed on the docket of these chapter 11 cases are considered objections to the Bidding Procedures Motion, any objection in such letters should be overruled. In further support of the Bidding Procedures Motion, the Debtors submit the following:[3]

## Preliminary Statement

1.      From the outset of these chapter 11 cases, the Debtors expressed their commitment to maximize value for their account holders. The Debtors filed the Bidding Procedures Motion in furtherance of that goal, and the Debtors are currently pursuing a dual-track sale process and standalone reorganization that is calculated to maximize the value of the Debtors' estates for the benefit of all stakeholders. The Bidding Procedures Motion seeks to establish an orderly process and identify a restructuring transaction offering the highest and best value to the estates and their stakeholders.

2.      After consultation with the Committee, the Debtors determined the best way to maximize value was to conduct a robust, transparent sale process to solicit proposals for their retail platform, including: customer earn accounts and coin balances, retail and institutional lending portfolio, swap services, staking platform, CelPay (the Debtors' cryptocurrency payment and transfer feature), and CelsiusX (the Debtors' decentralized finance arm that utilizes wrapped

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] or the Bidding Procedures Motion, as applicable.

cryptocurrency tokens to bridge centralized finance infrastructure to decentralized finance opportunities).

3.      Since filing the Bidding Procedures Motion, the Debtors have worked diligently with all parties in interest concerning the Bidding Procedures and Sale process.  Specifically, the Debtors determined, after discussions with the Committee and various state agencies, that it was appropriate to extend the bidding process until after the Court rules on certain key legal issues in these chapter 11 cases to enable bidders to submit value-maximizing bids for only those assets that are property of the Debtors' estates.  When revising the relevant deadlines, the Debtors considered the schedules regarding key legal issues in these chapter 11 cases set forth in the (a) *Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1044], (b) *Debtors' Motion Seeking Entry of An Order (I) Permitting the Sale of Stablecoin in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 832], and (c) *Examiner's Motion to Approve Work Plan* [Docket No. 1013], among other things.  The revised schedule is set forth below:

| Event or Deadline | Original Date and Time[4] | Modified Date and Time |
|---|---|---|
| Initial Bid Deadline for Retail Platform Assets | November 1, 2022 at 4:00 p.m. (prevailing Eastern Time) | November 20, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Final Bid Deadline for Retail Platform Assets | November 15, 2022 at 4:00 p.m. (prevailing Eastern Time) | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if necessary) for Retail Platform Assets | November 18, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the |

---

[4]    All dates and deadlines are subject to Bankruptcy Rule 9006.

| Event or Deadline | Original Date and Time[4] | Modified Date and Time |
|---|---|---|
| | | Debtors after consultation with the Committee |
| Cure Objection Deadline for Retail Platform Assets | November 22, 2022 at 4:00 p.m. (prevailing Eastern Time) | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Retail Platform Assets | November 22, 2022 at 4:00 p.m. (prevailing Eastern Time) | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Retail Platform Assets | November 28, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

4.      In addition, the Debtors worked with the Committee to, among other things, adjust the types of consideration that may comprise a Qualified Bid, which provides greater flexibility to interested parties to submit a bid that may creatively maximize value for the Debtors' assets—for example, a bid may include equity in a Debtor, a reorganized Debtor, or another entity proposed by a Potential Bidder, or the Debtors may select a Stalking Horse Bidder and, subject to court approval, offer bid protections.  Furthermore, the Debtors provided certain information rights to state regulatory agencies to ensure that, whichever Successful Bid is selected, a Successful Purchaser will have (or have the ability to obtain) any necessary regulatory approvals.  The Bidding Procedures appropriately balance the interests of all constituents to broadly market the Debtors' Assets.  Importantly, the Debtors provided certain consent and consultation rights to the Committee.

5.      Overall, the Bidding Procedures Objections do not fundamentally object to relief requested in the Bidding Procedures Motion; rather, the overwhelming majority of the objections aim at the initially proposed timeline.  As discussed, the Debtors extended the deadlines so that parties in interest have clarity on key legal issues in these chapter 11 cases prior to the Sale

Hearing.  For the reasons discussed herein, the remaining Bidding Procedures Objections should be overruled.

## **Reply**

I.    **The Bidding Procedures Are a Sound Exercise of the Debtors' Business Judgment and Are Designed to Maximize Value.**

6.    Procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value of the estate and are appropriate in the context of bankruptcy transactions. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").  Courts approve such procedures if they are supported by a sound business justification.  *See In re Ionosphere*, 100 B.R. 670, 676 (Bankr. S.D.N.Y. 1989); *Integrated Res.*, 147 B.R. at 656–7 (noting that bidding procedures negotiated by a debtor are reviewed under the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

7.    Here, the revised Bidding Procedures will enhance the competitive bidding process and will assist the Debtors in maximizing value.  Moreover, the proposed Bidding Procedures are substantially similar to procedures approved in countless large chapter 11 cases.  Thus, the proposed Bidding Procedures are a valid exercise of the Debtors' sound business judgment.

8.    Many of the Bidding Procedures Objections allege that a sale of Debtors' assets would be "rushed" or "premature" at this point.  *See, e.g.*, Vermont Objection at 2; U.S. Trustee

Objection at 2.  Importantly, many of these objections "[do] not oppose the efforts of the Debtors to market assets for the ultimate recovery to creditors."  TSSB Limited Objection at 2.

9.      The proposed Bidding Procedures Order specifies that cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the Bankruptcy Code."  *See* Bidding Procedures Order at ¶ 3. Accordingly, any sale approved by the Court will necessarily require a finding that the property in question is property of the estate to be sold pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan.  Importantly, these key legal issues will be determined prior to the proposed Sale Hearing.

10.     As revised, the Bidding Procedures provide for an adequate timeframe for resolution of any ambiguity regarding what constitutes property of the estate.  The design of the Bidding Procedures is a reasonable exercise of Debtors' business judgment to their efforts to maximize value on behalf of all stakeholders.  The Bidding Procedures are designed to specifically promote active bidding from interested parties and facilitate competitive offers to maximize value to the estate.  The timeline, as revised, balances the needs of adequate notice with the need to run an expeditious and efficient sale process.  This aligns with the goals of any proposed sale of property of the estate—to maximize proceeds received.  *See Integrated Res.*, 147 B.R. at 658–60.

## II.    The Bidding Procedures, as Revised, Adequately Describe the Proposed Terms.

11.     The U.S. Trustee further objects that the Debtors' Bidding Procedures Motion is "confusing as to what the Debtors are intending to sell."  U.S. Trustee Objection ¶ 20.  The Debtors are intending to market all assets—tangible or otherwise—that are property of the Debtors' estates. Specifically, the Debtors intend to sell all of their retail platform, including, without limitation, customer earn accounts and coin balances, retail and institutional lending portfolio, swap services, staking platform, Celpay feature and CelsiusX, as well as any Remaining Assets, including staking

and mining operations and any other Assets not sold in connection with the Retail Platform Assets

Sale.  While unresolved legal questions are currently or will soon be before the Court—including

the ownership of cryptocurrency in earn, custody, and withhold accounts, among other things—the

Debtors reserve the right to sell such assets pursuant to the Bidding Procedures to the extent that

the Court finds that such assets are property of the Debtors' estates.  For the avoidance of doubt,

the Debtors will not sell or purport to sell any Assets absent a finding by the Court that they have

title and authority to sell the Assets.

**III.    The Bidding Procedures Adequately Address Privacy Concerns**

12.    The U.S. Trustee Objection alleges that:  (a) a Consumer Privacy Ombudsman

("CPO") is required pursuant to sections 363(b)(1) and 332 of the Bankruptcy Code; and (b) the

Bidding Procedures Motion does not address section 363(o) of the Bankruptcy Code.  Both

allegations are misplaced.

(i)    **Consumer Privacy Ombudsman**

13.    While the U.S. Trustee Objection cites the relevant section of the Debtors' privacy

policy, a CPO is not necessary in this instance.  The U.S. Trustee's argument fails under the plain

language of the statute.  Section 363(b)(1) of the Bankruptcy Code provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the
> ordinary course of business, property of the estate, except that if the debtor in
> connection with offering a product or a service discloses to an individual a policy
> prohibiting the transfer of personally identifiable information about individuals to
> persons that are not affiliated with the debtor and if such policy is in effect on the
> date of the commencement of the case, then the trustee may not sell or lease
> personally identifiable information to any person ***unless***—
>
> (A) ***such sale or such lease is consistent with such policy***; or
>
> (B) after appointment of a consumer privacy ombudsman in accordance
> with section 332, and after notice and a hearing, the court approves such
> sale or such lease—

> (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
>
> (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

11 U.S.C. § 363(b) (emphasis added).

14.     As described in the statute, a CPO must be appointed if there is a sale or lease with the transfer of personally identifiable information ***and*** that transfer is prohibited under the relevant privacy policy.

15.     As noted in the U.S. Trustee Objection, the relevant Celsius policy contains the following language:

> We may share information, including Personal information, in the event of a corporate transaction (***e.g., sale of a substantial part of our business, merger, consolidation or asset sale of an asset or transfer in the operation thereof***) of the Company. In the event of the above, the acquiring company or transferee will assume the rights and obligations as described in this Privacy Policy.

16.     The Debtors' privacy policy, as noted, expressly permits the sale of personal information as long as the buyer adheres to the terms therein.  Thus, if the sale is consistent with the Debtors' privacy policy—as required by section 363(b)(1)(A) of the Bankruptcy Code—then the appointment of a CPO is not necessary.[5]

### (ii)     Section 363(o) of the Bankruptcy Code

17.     The U.S. Trustee argues that the Debtors' Bidding Procedures Motion does not address section 363(o) of the Bankruptcy Code, which provides that:

> Notwithstanding subsection (f), if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit

---

[5]     In the unlikely event that the potential buyer refuses to assume the rights and obligations described in the Debtors' privacy policy, the Debtors reserve the right to seek the appointment of a CPO to address that issue.

transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

11 U.S.C. § 363(o).

18.    As noted above, the Debtors plan to sell assets related to their retail platform, including their loan portfolio.  While the marketing process for such assets is currently ongoing, the Debtors have not yet determined which contracts, if any, will be assumed and assigned to any purchaser.  If the assets in a proposed sale include interests in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract, the defenses specified in section 363(o) of the Bankruptcy Code shall be applicable.  Moreover, any such determination need not be decided until the Sale Hearing.

## IV.    The Creditor Objections

19.    Four creditors filed objections:  the Joinder to the Vermont Objection, the Frishberg Objection, the Herrmann Objection, and the Goetten Limited Objection (collectively, the "Creditor Objections"), which overwhelmingly object to sales of assets as property of the Debtors' estates until after such a finding has been made by the Court.  As discussed above, the Creditor Objections do not fundamentally object to the substance of the Bidding Procedures.  *See* Goetten Limited Objection at 2 ("Vincent Goetten does not object, generally, to the concept of a sale process with respect to the Debtors' Assets."); Herrmann Objection at 2 (stating parties in interest "are all open to a sale as a path forward out of bankruptcy").  Accordingly, the revised proposed timeline assuages any concerns over an expedited process prior to a decision on key legal issues.

20.    The remaining issues raised in the Creditor Objections, which are detailed further in the Status Chart attached as **Exhibit A** hereto, are without merit and should be overruled.

## **Conclusion**

21.    For the foregoing reasons, as well as the reasons set forth in the Bidding Procedures

Motion, the Debtors request that the Court (a) overrule the Bidding Procedures Objections and

(b) enter the proposed Bidding Procedures Order.


[*Remainder of page intentionally left blank*]

New York, New York
Dated:  October 18, 2022

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:         (212) 446-4900
Email:              jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:         (312) 862-2200
Email:              patrick.nash@kirkland.com
                        ross.kwasteniet@kirkland.com
                        chris.koenig@kirkland.com
                        dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Bidding Procedures Objections**

### In re Celsius Network LLC, et al., Case No. 22-10964 (MG)
**STATUS CHART OF OBJECTIONS AND RESPONSES TO THE DEBTORS' MOTION
SEEKING ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES WITH
RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND
(V) GRANTING RELATED RELIEF [Docket No. 929] (the "MOTION")[1]**

| Objecting Party and Docket No. | Objection | Response |
| --- | --- | --- |
| United States Trustee<br><br>[Docket No. 1047] | *Objection of the United States Trustee to Debtors' Bidding Procedures Motion*<br><br>• Bidding procedures should not be approved until it is known what specific assets are to be sold.<br><br>• No justification for holding the sale of Debtors' assets outside the ordinary course of business, in advance of a plan, and in advance of the filing of a report by the Examiner<br><br>• A privacy ombudsman should be appointed.<br><br>• The motion does not address how section 363(o) of the Bankruptcy Code is implicated. | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." These key legal issue will be determined prior to the proposed Sale Hearing.<br><br>• The timeline, as revised, balances the needs of adequate notice with the need to run an expeditious and efficient sale process.<br><br>• As long as any sale would be consistent with the Debtors' privacy policy—as required by 363(b)(1)(A) of the Bankruptcy Code—a CPO is not necessary.<br><br>• To the extent any contracts are considered consumer credit contracts subject to the Truth in |

---

[1]   Capitalized terms used but not defined herein have the meanings given to them in the Motion.

| Objecting Party and Docket No. | Objection | Response |
|---|---|---|
| | | Lending Act, the defenses set forth in section 363(o) of the Bankruptcy Code shall apply. |
| Texas State Securities Board and the Texas Department of Banking<br><br>[Docket No. 1059] | *Texas Limited Objection to Debtors' Bidding Procedures*<br><br>• The motion should be denied or postponed until the court has determined the issue of whether crypto assets, especially those in the Custody and Withhold accounts, are property of the estate.<br><br>• The debtors should not be allowed prior to Examiner's Report publication.<br><br>• Requests information on qualified bidders and listen-only access to any auction. | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." These key legal issue will be determined prior to the proposed Sale Hearing.<br><br>• The timeline has been revised to balance concerns with the need to run an expeditious and efficient sale process.<br><br>• The Debtors have provided certain information rights to state regulatory agencies to ensure that, whichever Successful Bid is selected, a Successful Purchaser will have (or have the ability to obtain) any necessary regulatory approvals. |
| Vermont Department of Financial Regulation<br><br>[Docket No. 1040] | *Vermont Objection to Debtors' Bidding Procedures Motion.*<br><br>• Premature to approve bidding procedures because scope of assets/estate are not yet clear:<br><br>  • Status of certain assets has not yet determined;<br><br>  • Examiner's Report has not been completed; | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." These key legal issue will be determined prior to the proposed Sale Hearing.<br><br>• The Debtors have provided certain information rights to state regulatory agencies to ensure that, whichever Successful Bid is selected, a |

| Objecting Party and Docket No. | Objection | Response |
|---|---|---|
| | • Court has not yet entered an order to sell stablecoin; and<br><br>• Insider transactions prior to the freeze might be subject to avoidance actions.<br><br>• Motion creates the risk that Debtors or a bidder for the assets will operate their businesses in violation of state law and in violation of prior Cease and Desist Order entered.<br><br>• To extent sale includes offer or sale of securities in Vermont or the exchange of money, any bidder for the Debtors' assets cannot proceed lawfully without appropriate securities registration and/or licensure as a money transmitter<br><br>• Applicable registration issues not adequately addressed by motion | Successful Purchaser will have (or have the ability to obtain) any necessary regulatory approvals.<br><br>• The timeline has been revised to balance concerns with the need to run an expeditious and efficient sale process.<br><br>• The Bidding Procedures require Potential Bidders to submit necessary government approvals, including a description of all governmental, licensing, regulatory, or other approvals or consents required to close the proposed Sale. *See* Proposed Bid Procedures, § VII.k. Any objection to the sale based on registration or licensure can be raised at the Sale Hearing. |
| Alabama, Arkansas, California, District of Columbia, Hawaii, Maine, Missouri, New York, North Dakota, and Oklahoma<br><br>[Docket No. 1065] | *Coordinating States' Limited Objection to Debtors' Bidding Procedures Motion*<br><br>• The status of the cryptocurrency assets held by the Debtors are not yet resolved.<br><br>• Bids would be higher after this issue is resolved and bidders know what they are trying to buy.<br><br>• Any binding auction process and sale approval process should be deferred until the Examiner | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." These key legal issue will be determined prior to the proposed Sale Hearing.<br><br>• The Debtors have provided certain information rights to state regulatory agencies to ensure that, whichever Successful Bid is selected, a |

| Objecting Party and Docket No. | Objection | Response |
|---|---|---|
| | has submitted her report, and all parties have time to complete a full and transparent review thereof. | Successful Purchaser will have (or have the ability to obtain) any necessary regulatory approvals.<br><br>• The timeline has been revised to balance concerns with the need to run an expeditious and efficient sale process. |
| **_Pro Se_ Objections** | | |
| Victor Ubierna de las Heras<br><br>[Docket No. 1051] | _Ubierna Joinder to Objection from Vermont_<br><br>• Court has not determined whether or not and to what extend certain classes of assets are part of the estate and as such the approval of the bidding procedures is premature:<br><br>    • Examiner has not yet issued report.<br><br>    • Court has not determined status of insider transactions prior to the freeze.<br><br>    • Court has not yet entered an Order to sell stablecoin | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." The revised proposed timeline assuages any concerns over an expedited process prior to a decision on key legal issues.<br><br>• The remaining issues addressed are without merit and should be overruled. |
| Daniel A. Frishberg<br><br>[Docket No. 1054] | _Frishberg Omnibus Objection to Debtors' Bidding Procedures Motion and to All Motions Granting Kirkland and Ellis' Associated Legal Fees, Auction Fees, and any Other Fees or Costs Incurred with Respect to this Auction Thus Far_ | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." The revised proposed timeline assuages any concerns over an |

| Objecting Party and Docket No. | Objection | Response |
|---|---|---|
| | • It is a breach of the Debtors' fiduciary duty to the creditors to sell all assets, because "they could be giving up potential claims that the estate has."<br><br>• It is also a breach of the Debtors' fiduciary duty to the creditors to move the sale up by two months, because "the rushed sale is extremely likely to lead to reduced bids, which directly harms the creditors."<br><br>• Because K&E lawyers know that moving up the sale likely breaches the fiduciary duty, any fees incurred from doing so should be denied.<br><br>• The sale should be delayed until after the Examiner's report comes out, and until the court has determined whether various assets are property of the estate, and whether a "Ponzi Scheme designation" is in the best interest of the creditors. | expedited process prior to a decision on key legal issues.<br><br>• The Debtors intend to preserve claims for the estates in any asset sale.<br><br>• The remaining issues addressed are without merit and should be overruled. |

| Objecting Party and Docket No. | Objection | Response |
|---|---|---|
| Immanuel Herrmann<br><br>[Docket No. 1056][7] | *Herrmann Limited Objection to Debtors' Bidding Procedures Motion*<br><br>• The motion is premature and the timeline is too "rushed." Given the unresolved issues with respect to property of the estate, creditor groups infighting, preference recovery potentials, and multiple state investigations, potential bidders "are scared to bid."<br><br>• Timeline of bidding should be pushed back and should happen "contemporaneously with mining," after "property of the estate issues" are resolved either through negotiation or litigation.<br><br>• This language in the bidding procedures should be "edited to clarify that creative, community-centered, crypto-friendly solutions can some forward and be 'wrapped' in a 363 bid" but did not propose revisions. | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." The revised proposed timeline assuages any concerns over an expedited process prior to a decision on key legal issues.<br><br>• The proposed Bidding Procedures were amended so consideration of a bid may include equity in a Debtor, a reorganized Debtor, or another entity proposed by a Potential Bidder.<br><br>• The remaining issues addressed are without merit and should be overruled. |

---

[7]   On October 17, 2022, three days past the objection deadline and without leave of the Court, Mr. Herrmann filed the *Supplemental Limited Objection of Immanuel Herrmann to the Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief (Supplemental to D.R. 1056; Objection to D.R. 929.)* [Docket No. 1080]. While the Debtors do not believe that this late objection provides any basis upon which to deny the requested relief, the Debtors reserve all rights to address any issues raised at the hearing.

| Objecting Party and Docket No. | Objection | Response |
|---|---|---|
| Vincent Theodore Goetten<br><br>[Docket No. 1063] | *Goetten Limited Objection to Debtors' Bidding Procedures*<br><br>• He is an accredited investor. After he closed his loan from Celsius, Celsius transferred his collateral to Earn, because he is accredited and because Custody is not available in his state. He has never used Earn before.<br><br>• He objects on the ground that he believes the collateral, now in Earn, are not property of the estate, and therefore cannot be sold free and clear of his interest in a 363 sale absent his consent.<br><br>• He is also "concerned" that there is no process to inform the potential buyers which digital assets currently in Debtors' possession are not property of the estates | • Cryptocurrency or digital assets will only be sold "to the extent that they comprise property of the estate as such term is defined under section 541 of the bankruptcy code." The revised proposed timeline assuages any concerns over an expedited process prior to a decision on key legal issues.<br><br>• The remaining issues addressed are without merit and should be overruled. |