**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> CELSIUS NETWORK LLC, et al.,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 22-10964 (MG) <br> Jointly Administered |

**DECLARATION OF MONICA XIA IN SUPPORT OF CORE SCIENTIFIC, INC.'S OPPOSITION TO DEBTORS' MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR CIVIL CONTEMPT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

I, Monica Xia, declare:

1.  I am the Accounting Manager for Core Scientific, Inc. ("Core"). I submit this Declaration in support of Core's Opposition to Celsius Mining LLC's ("Celsius") Motion to Enforce the Automatic Stay and for Civil Contempt. The facts set forth in this declaration are based on my own personal knowledge, and my review of relevant documents and Core's books and records that are maintained and used in the ordinary course of Core's business.

2.  As Core's Accounting Manager, I am responsible for accounting and billing and in that capacity I am generally familiar with Core's contractual relationship with Celsius, including the Master Services Agreement between Core and Celsius executed on December 18, 2020 (the "MSA") and Order #10, executed under the MSA on September 27, 2021. I am also familiar with Celsius' payments to Core, the general terms of Core's contracts with its customers, and the types of payments that Core customers must make under those contracts.

## I.  POWER COST PASS-THROUGHS

3.  Section 4(f) of the MSA is a standard clause included in the master services agreements between Core and its customers. Section 4(f) gives Core discretion to pass through increases in tariffs to its customers, including Celsius. Specifically, Section 4(f) provides in relevant part, "[A]fter the Effective Date, if there are any increases, changes in, or introduction or administration of, any new taxes, levies, tariffs or governmental fees and charges with respect to the provision of Services, [Core] may, in its sole and absolute discretion, pass through all such amounts to [Celsius] ("**Increased Costs**") and [Celsius] shall pay all Increased Costs in accordance with the payment and invoicing procedures as set forth in this Agreement."

4.  My understanding is that, as used in Section 4(f), "tariffs" includes the rates charged by utility companies.

-2-

5.       On September 27, 2021, Core and Celsius executed MSA Order #10. Order #10 states that it incorporates the MSA's Terms by reference, including Section 4(f) quoted above. *See* Order #10 at 1.

6.       Mr. Lawlor states in paragraph 7 of his declaration that "Celsius' fees will be determined 'by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order)," and implies that this somehow means Core agreed to charge Celsius a "fixed rate." Not so, and Mr. Lawlor is incorrect. First, as noted above, section 4(f) of the MSA permits Core to pass-through increases in tariffs, among other things. Moreover, set forth below is what the clause actually provides.

> **Fees.** [Celsius] shall pay the fees provided for in this Order. The Fees for Services will be determined *initially* by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting Services Rate (each as set forth above in this Order). ***Subsequent invoices will contain any additional charges incurred by [Celsius] and adjustments*** resulting from any differences between the Fees for Services invoiced in the preceding month and the Fee for Services based on [Core's] determination of power utilized by [Celsius] during that month, as well as any adjustments to [Core's] estimate of power to be utilized by [Celsius] in the upcoming month. Fees for Services for each month shall be paid in advance, in accordance with Section 3 of the Agreement.

*See* Order #10 at 4 (emphasis added).

7.       Prior to filing for bankruptcy, Celsius paid power cost pass-throughs to Core. Celsius' objection to paying these increased tariffs only began after Celsius filed for bankruptcy.

8.       As a general matter, Core is in frequent communications with its customers regarding deployment of machines, expected charges, and power prices. In October 2021, Core informed Celsius that due to curtailment, the energy costs charged by utilities would go up. Curtailment can occur when demand for electrical energy exceeds available supply and a utility instructs energy users like Core to use less power or face significant additional energy tariffs to avoid overloading transmission lines. Core turned off Celsius's and its other customers' machines

in response to the curtailment but offered Celsius and each of its other customers the option of turning them back on if they agreed to pay the increased tariffs. On October 6, 2021, Mr. Lawlor sent an email to Core "authoriz[ing] Core to turn our rigs back on in light of the unexpected economic power curtailment in Marble." A true and correct copy of Mr. Lawlor's email is attached as **Exhibit A**.

9. Between October 2021 and April 2022, Core passed through the increased tariffs due to curtailment and Celsius paid those increased tariffs without objection.

10. Core's invoices specifically informed Celsius of the increased tariff. For example, my email attaching the December 2021 invoice stated, "Please note – For power consumption in Marble 2 sites, the hosting rate from 11/16 to 11/28 (13 days) is $0.0721/kWh due to increased power costs." Attached as **Exhibit B** is a true and correct copy of an email sent to Celsius on December 15, 2021 attaching an invoice reflecting the increased power costs due to curtailment. Celsius paid this invoice without objection.

11. In addition, on November 20, 2021, Celsius's Chief Operating Officer, Patrick Holert, reached out to me by email seeking an explanation for the increase in hosting rate in October 2021. In response, I explained that "the increased hosting rates for Marble 2 units' power consumption for certain days were due to increased power fees in October." Mr. Holert then responded, "Thanks Monica. This makes sense." Attached as **Exhibit C** is a true and correct copy of this email exchange between Mr. Holert and me.

12. As I discuss in more detail below, Celsius also paid the increased power costs that are now in dispute prior to filing for bankruptcy.

13. Core began imposing power cost pass-throughs to all of its customers in June 2022 due to the latest increased tariffs from utility companies.

14. These increased energy costs were included in the tariffs imposed by utility companies that Core had to pay to acquire the necessary power to provide services to its customers. Given these sharp tariff increases on power purchases, Core determined that it would exercise its discretion under section 4(f) of the MSA and pass through these increased tariffs to its customers beginning on its June 2022 invoices.

15. On June 17, 2022, Core sent Celsius INV 42520, which included Order #10, for May 2022 hosting services of $4,165,140.58, and a total amount owed of $4,195,599.19. Core's cover email enclosing this invoice stated in italics that, "Core Scientific has incurred continuing significant tariff increases since the implementation of our Master Services Agreement – Core Scientific has been notified by its electrical utility suppliers of significant tariff increases due to rising fuel costs. As an Increased Costs under the Master Services Agreement (Section 4f), Core will be passing through such tariff increases without markup. Hosting rate for May 2022 usage at Dalton, GA sites is the old rate plus $0.0214/kWh. You could also expect to see the tariff surcharges for your May usage in Calvert City and Marble 1 in your future invoice." Attached as **Exhibit D** is a true and correct copy of the June 2022 invoice.

16. Accordingly, INV 42520 included power cost pass-throughs for usage at the Dalton, GA sites of $440,179.34. Attached as **Exhibit E** is a true and correct copy of the Celsius mining data associated with INV 42520.

17. Celsius paid the invoice, which included the power cost pass-throughs for the Dalton, GA site, without objection. Attached as **Exhibit F** is a true and correct copy of a screenshot of a wire confirmation showing that Celsius paid the full June 2022 invoice.

18. Core likewise invoiced Celsius for power cost pass-throughs on July 15, August 16, and September 15. These invoices were sent in the ordinary course of billing, consistent with

Core's routine billing cycle that applies to all customers. True and correct copies of those invoices are attached as **Exhibit G**. Celsius did not pay the *prepetition* power cost pass-throughs that Core invoiced in July and August, but initially paid the *postpetition* power cost pass-through that Core invoiced in August, paying a pro-rated amount of $598,743.20 for power cost pass-through amounts that accrued *postpetition*. The next month, however, Celsius offset its postpetition payment as a credit against its payment of the September invoice, stating that Celsius is "not responsible for bearing the cost of increased energy prices." Attached as **Exhibit H** is a true and correct copy of my email exchange with Celsius concerning the September 2022 invoice. On October 17, 2022, consistent with our routine billing cycle, Core sent Celsius an invoice for $4,986,605.08. This amount includes $1,505,940.08 for the September 2022 power cost pass-through. A true and correct copy of this invoice is attached as **Exhibit I**.

19. Of Core's 33 customers, with one exception, every other customer has paid the increased tariffs passed through by Core. The one exception is a very small customer with only 60 units where Core had previously provided notice that Core was ending its relationship with that customer.

## II.    AUTOMATED BILLING EMAILS

20. Core uses an accounting system called NetSuite that can generate template-based automatic email messages to customers who are past due on their invoiced payments. Core began using automatic email messages to remind customers about their invoices in approximately November 2020, nearly two years ago. An automatic message is sent to each customer (i) seven (7) days before a payment is due, (ii) one day (1) before a payment is due, (iii) one (1) day after a payment is due, (iv) three (3) days after a payment is due, and (v) five (5) days after a payment is

due.  True and correct copies of certain of the automatically generated email reminders are attached as **Exhibit J.**

21. Mr. Lawlor states in paragraph 18 that Core threatened to terminate the Agreement in writing and points to the automatically generated email that Core's system sent to Celsius on August 29, 2022.  Mr. Lawlor must know this is incorrect given that Celsius has received other automatically generated emails from Core and never once previously suggested or raised concerns that Core was threatening to terminate the Agreement.  Attached as **Exhibit K** are true and correct copies of examples of other automatically generated emails that Core's system sent to Celsius between February 2021 – June 2022.

22. On September 12, 2022, I disabled the NetSuite automatic messaging for Celsius. However, three additional automatic emails were inadvertently sent to Celsius after that date due to a system limitation issue.  The last one was sent on October 1, 2022.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 19, 2022, at Kirkland, Washington.

*/s/ Monica Xia*
Monica Xia