**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | **NOT FOR PUBLICATION** |
| CELSIUS NETWORK LLC, *et al.*, | Chapter 11 |
|  | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO APPROVE BIDDING PROCEDURES IN CONNECTION**
<u>**WITH THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS**</u>

*A P P E A R A N C E S :*

KIRKLAND & ELLIS LLP
*Attorneys for the Debtor*
601 Lexington Avenue
New York, NY 10022
By:    Joshua Sussberg, Esq.
       Patrick J. Nash, Jr., Esq.
       Ross M. Kwasteniet, Esq.
       Christopher S. Koenig, Esq.
       Dan Latona, Esq.

WHITE & CASE LLP
*Attorneys for the Creditor Committee*
111 S Wacker Dr Suite 5100
Chicago, IL 60606-5055
By:    Michael Andolina, Esq.
       Aaron Colodny, Esq.
       Samuel P Hershey, Esq.
       Gregory F Pesce, Esq.
       David Turetsky, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
By:    Shara Cornell, Esq.

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
*Attorneys for the Texas State Securities Board and the Texas Department of Banks*
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
By:    Jason B. Binford, Esq.
        Layla D. Milligan, Esq.
        Roma N. Desai, Esq.

FISHERBROYLES LLP
*Attorneys for Vincent Theodore Goetten*
445 Park Avenue, 9th Floor
New York, N.Y. 10022
By:    Hollace T. Cohen, Esq.

VERMONT DEPARTMENT OF FINANCIAL REGULATION
89 Main Street, Third Floor
Montpelier, VT 05620
By:    Jennifer Rood, Esq.

NATIONAL ASSOCIATION OF ATTORNEYS GENERAL
*Attorney for the States of Alabama, Arkansas, California, District of Columbia, Hawaii, Maine, New York, North Dakota, and Oklahoma*
1850 M St., NW, 12th Floor
Washington, DC 20036
By:    Karen Cordry, Esq.

IMMANUEL HERMANN
*Pro se creditor*

DANIEL FRISHBERG
*Pro se creditor*

VICTOR UBIERNA DE LA HERAS
*Pro se creditor*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Celsius Network LLC and its seven affiliated debtors

(collectively, the "Debtors") *Motion Seeking Entry of an Order (I) Approving the Bidding*

*Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II)*

*Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice*

*Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* (the "Motion," ECF Doc. # 929) filed on September 29, 2022.  Several parties including the U.S. Trustee (the UST Objection, ECF Doc. # 1047) and several states' attorney generals and *pro se* parties in interest filed objections and limited objections (collectively, the "Objections" and "Objectors," ECF Doc. ## 1040, 1047, 1056, 1059, 1077, 1080).  The Official Committee of Unsecured Creditors (the "Committee") filed a statement of support of the Motion (the "UCC Statement," ECF Doc. # 1046).  Attached to the Motion are a proposed order (the "Proposed Order"), the proposed bidding procedures (the "Bidding Procedures"), the sale notice (the "Sale Notice"), and the cure notice (the "Cure Notice").  The Debtors subsequently filed an intermediate proposed order (ECF Doc. # 1110, the "Intermediate Proposed Order") and a further revised order (ECF Doc. # 1148, the "Revised Proposed Order") in response to certain of the Objections.

For the reasons explained below, the Debtors' Motion is **GRANTED (as modified)** and the objections are **SUSTAINED IN PART AND OVERRULLED IN PART.**  The U.S. Trustee is directed promptly to appoint a consumer privacy ombudsman ("Consumer Privacy Ombudsman").  The Debtors, Committee and U.S. Trustee shall confer and submit a separate order regarding the appointment of the Consumer Privacy Ombudsman.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Memorandum and Order shall be immediately effective and enforceable upon entry.

## I.  **BACKGROUND**

### A.    **Factual Background**

As a result of discussions with their advisors and input from the Committee, the Debtors determined that the best way to maximize value for all stakeholders is to conduct a process to solicit proposals from potentially interested parties for their retail platform, including the

Debtors' account holders, loan portfolio, and related technology, custody, and swap services, and staking and mining operations. (Motion ¶ 1.) In conjunction with that process, the Debtors also plan to analyze and consider other value-maximizing structures, such as a standalone restructuring of some or all of the Debtors' business operations. (*Id.*)

In September 2022, Centerview Partners LLC ("Centerview") began a marketing process designed to identify potential bidders for all or substantially all of the Debtors' assets, properties, goodwill, and rights relating to their businesses (the "Assets"). (*Id.* ¶ 3.) The Debtors, in consultation with Centerview, developed a list of over 30 parties whom they believed may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a sale (the "Sale"), including strategic parties, private equity firms, other companies in the cryptocurrency ecosystem, scaled fintech companies, and traditional financial institutions (collectively, the "Contact Parties"). (*Id.*) The Debtors and Centerview expect to execute confidentiality agreements with certain Contact Parties, continue to populate the virtual data room with relevant diligence materials, and conduct meetings with the Debtors' management team in the coming weeks. (*Id.*) Prior to filing this Motion, the Debtors and the Committee's respective professionals engaged in dialogue regarding the proposed Bidding Procedures and sale milestones, which resulted in certain modifications to the proposed Bidding Procedures. (*Id.* ¶ 2.)

On September 14, 2022, the Court appointed an examiner (the "Examiner") in these Chapter 11 Cases. (*See* ECF Doc. # 820.) The Examiner's initial report is currently due on December 10, 2022. (*See* Vermont Objection ¶ 8.) Additionally, the Court has scheduled a hearing for December 7 and 8, 2022, to address important issues concerning whether crypto

assets deposited by certain account holders are property of the estate.  These matters may impact

bidding on the Assets.

### B.    The Motion

By this Motion, Debtors seek the following relief:

    a.    Approval of the Bidding Procedures and dates in deadlines in connection with the
Sale.  (*Id.* ¶ 6(a)-(b).)

    b.    Authorization for the Debtors in their discretion to select one or more bidders to
act as stalking horse bidders.  (*Id.* ¶ 6(c).)

    c.    Approval of the form and manner of notice of the Sale.  (*Id.* ¶ 6(e).)

    d.    Approval of procedures for the assumption and assignment of certain executory
contract and unexpired leases (the "Assumption and Assignment Procedures.")
(*Id.* ¶ 6(f).)

    e.    In the event the Debtors elect to go forward with the Sale, the Debtors will file
and seek entry of a sale order (the "Sale Order") that approves the purchase
agreement.  (*Id.* ¶ 7.)

### C.    Bidding Procedures

The Bidding Procedures are described in detail in the Motion and are attached as <u>Exhibit</u>

<u>1</u> to the Revised Proposed Order.  The Court will not re-recite the voluminous procedures here,

but notes the procedures contain thorough provisions related to the 1) procedures for submitting

a non-binding indication of interest; 2) eligibility to participate in bidding; 3) the requirements

for the form of bid and accompanying documents; 4) provisions for information sharing with

regulators about potential bidders; 5) provisions regarding the use of back-up bidding; 6)

provisions that allow for the selection, with Court approval, of a stalking horse bidder

(the "Stalking Horse Bidder"), stalking horse agreement, (the "Stalking Horse Agreement") and corresponding bid protections for such bidder; 6) procedures for the holding of a potential auction (the "Auction"), including the bidding increment the Debtors plan to use; and 7) the criteria under which the Debtors will select the highest or otherwise best bid.  (*See* Motion ¶ 18; Revised Proposed Order, Exhibit 1.)

### D.    Extraordinary Provisions

Section I.D of the Guidelines (as defined herein) provides that the Debtors must conspicuously disclose any "Extraordinary Provisions" in connection with the conduct of certain asset sales.  The Debtors have disclosed that the relief sought herein may include the following Extraordinary Provisions:

    a.    waiver of the 14-day stay provided in Bankruptcy Rule 6004(h) on grounds set
          forth below.

    b.    the Debtors anticipate seeking to limit successor liability of the purchaser of the
          Assets.

(Motion ¶ 25).

### E.    Form and Manner of Sale Notice

The Debtors have attached the Sale Notice as <u>Exhibit 2</u> to the Revised Proposed Order. The Sale Notice discloses that the Debtors will seek to limit successor liability.  (Revised Proposed Order, Exhibit 2.)  The Revised Proposed Order provides that as soon as reasonably practicable after entry of an order approving the Motion, the Debtors shall serve the Bidding Procedures, the Sale Notice, and the Cure Notice upon the appropriate notice parties.  (*Id.* ¶ 16.) In addition, the Debtors will post the Sale Notice on the case website and publish the Sale Notice, with any modifications necessary for ease of publication, once in The New York Times

(national edition) and CoinDesk (CoinDesk.com), to provide notice to any other potential interested parties.  (*Id.*)

### F.    Assumption and Assignment Procedures

The Debtors have included the Assumption and Assignment Procedures in the Revised Proposed Order, and a Cure Notice is attached as <u>Exhibit 3</u> to the Revised Proposed Order. (Revised Proposed Order ¶ 13).  The Assumption and Assignment Procedures provide provisions related to 1) the form and content of the Cure Notice; 2) the procedures for objections to a Cure Notice; 3) the effects of filing a cure objection (a "Cure Objection"); 4) procedures for dispute resolution of Cure Objections; and 5) procedures for notice of supplemental cures and objections to supplemental cures.  (Revised Proposed Order ¶ 13.)

### G.    Sale Timeline

The following dates and deadlines are proposed for the Debtors' process to solicit bids for the Sale comprising the Debtors' retail platform business (the "<u>Retail Platform Assets</u>"), which includes customer earn accounts and coin balances, retail and institutional lending portfolio, swap services, staking platform, CelPay (the Debtors' cryptocurrency payment and transfer feature), and CelsiusX (the Debtors' decentralized finance arm that utilizes wrapped cryptocurrency tokens to bridge centralized finance infrastructure to decentralized finance opportunities), and any cryptocurrencies or digital assets held by the Debtors (to the extent that they comprise property of the estate as defined under section 541 of the Bankruptcy Code):

| Event or Deadline | Date and Time |
| --- | --- |
| Initial Bid Deadline for Retail Platform Assets | November 21, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Final Bid Deadline for Retail Platform Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |

| | |
|---|---|
| Auction (if necessary) for Retail Platform Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Retail Platform Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

(Revised Proposed Order ¶ 3.)  The following dates and deadlines are proposed for the Debtors'

process to solicit bids for the Sale of the Debtors' remaining assets (the "Remaining Assets"),

which shall include the mining assets (the "Mining Assets") and the Retail Platform Assets to the

extent that that the Retail Platform Assets are not sold at the sale hearing set forth above:

| Event or Deadline | Date and Time |
|---|---|
| Final Bid Deadline for Remaining Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction for Remaining Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Remaining Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

(*Id.* ¶ 3.)

## II. STATEMENTS OF SUPPORT AND OBJECTIONS

### A.    Committee Statement of Support

The Committee Statement expresses support for the Motion.  Specifically, it notes that

the establishment of a clear framework for potentially interested parties to discuss a sale or

restructuring transaction would be beneficial to the estate. (Committee Statement ¶ 4.) Further, the Committee believes that the establishment of clear deadlines and objective criteria for evaluating proposals will help to maximize the value to the estates. (*Id.*). Importantly for the Committee, the Bidding Procedures are flexible enough to allow for several different types of transactions. (*Id.* ¶ 5.) Finally, the Committee notes that it supports the Bidding Procedures even though "there is no assurance that any party will have the financial and regulatory wherewithal to propose and consummate a transaction." (*Id.* ¶ 3.)

### B.    The Objections

#### 1.    <u>The UST Objection</u>

The U.S. Trustee objects to the Motion for three main reasons. First, on the grounds that the Bidding Procedures fail to provide sufficient detail of what assets are being sold. Second, on the grounds that the Motion does not provide justification for the brisk timeline. Third, on the grounds that the Sale does not provide for proper protection of consumer privacy. Fourth on the grounds that the Motion does not comply with section 363(o) of the Bankruptcy Code.

As to the level of detail, the U.S. Trustee primarily argues that it is unclear what assets exactly the Debtors intend to sell. The U.S. Trustee claims that it is not clear from the Motion whether the sale of all assets will include the mining operations (UST Objection ¶ 20.) This confusion, the U.S. Trustee claims, stems from the fact that the Debtors say they are selling Retail Platform Assets defined as "any cryptocurrencies or digital assets held by the Debtors to the extent that they comprise property of the estate as such term is defined under Section 541 of the Bankruptcy Code," which would not seem to include mining operations, but conflicts with the introduction which indicates the Debtors will sell all assets. (*Id.*)

As to the time frame, the U.S. Trustee argues that the sale should wait until after the Examiner's report is released because it could raise issues related to the sale. (UST Objection at

2.)  The U.S. Trustee claims that the Examiner's report will give information about what assets are property of the estate "in order to understand what assets are available for sale or distribution to creditors."  (*Id.* ¶ 21.)

As to consumer privacy, the U.S. Trustee argues that because the Debtors' transaction would likely involve the sale of customer data, a consumer privacy ombudsman is required under sections 363(b)(1) and 331 of Bankruptcy Code.  (*Id.* ¶ 28.)  While the U.S. Trustee notes it is unclear whether the Debtors plan to sell customer lists, the U.S Trustee argues that if such lists will be sold, a consumer privacy ombudsman is necessary.  (*Id.* ¶ 28-32.)

As to section 363(o), the U.S. Trustee argues that if the Debtors are planning to sell loan portfolios, then under Section 363(o), they cannot limit successor liability.  Further, the U.S. Trustee notes that if the Debtors are planning to sell such loans, they need to disclose that in the Motion.  (*Id.* ¶ 33-34.)

### 2.    The Vermont Objection

The Vermont Department of Financial Regulation filed an objection to the Motion (the "Vermont Objection," ECF Doc. # 1040).  The Vermont Objection contends that sale of the Debtors' assets is premature given that the ownership of the cryptocurrency has not yet been determined by the Court.  (Vermont  Objection ¶ 7.)  Specifically, the Vermont Objection contends that because the Debtors' motion to sell Stablecoin (the "Stablecoin Motion," ECF Doc. # 832) and the motions regarding custody and withhold account issues (the "Custody and Withhold Pleadings") have not yet been decided, it would be premature to authorize the sale of assets when the ownership of assets is unclear.  (*Id* ¶¶ 7-8.)  The Vermont Objection also notes that "to the extent Debtors' planned asset sale includes the offer or sale of securities in Vermont or the exchange of money, any bidder for the Debtors' assets cannot proceed lawfully without appropriate securities registration." (*Id.* ¶ 9.)  The Vermont Objection ultimately would like the

Sale to happen only after the Examiner submits her report and the Stablecoin, Custody and

Withhold Pleadings are resolved. (*Id.* ¶ 12). Victor Ubierna De Le Hera filed a joinder to the

Vermont Objection [ECF Doc. # 1051].

    3.  <u>Coordinating States Objection</u>

  The National Association of Attorneys General filed a limited objection on behalf of the

states of Alabama, Arkansas, California, District of Columbia, Hawaii, Maine, Missouri, New

York, North Dakota, and Oklahoma (collectively the "Coordinating States," and the

"Coordinating States Objection, ECF Doc. # 1065). The Coordinating States Objection contends

that selling the Debtors' assets is premature when the question whether the cryptocurrency is

property of the estate has not yet been resolved. (Coordinating States Objection at 2.) Further,

they argue that "trying to proceed to an auction prior to determining what is to be sold would be no

more realistic than if one sought to sell a car dealership without being able to tell the buyers whether

some, all, or none of the cars on the lot would be part of the assets being purchased." (*Id.* at 3.) As a

result of these concerns, they argue that the binding bidding process and sale approval process should

be deferred until after the Examiner's report is released. (*Id.* at 4.)

    4.  <u>Texas Objection</u>

  The Texas State Securities Board (the "SSB") and the Texas Department of Banking (the

"DOB") (together, "Texas"), by and through the Office of the Texas Attorney General, filed a limited

objection (the "Texas Objection," ECF Doc. # 1059). The Texas Objection contends that any sale

should wait until the ownership of the cryptocurrency has been fully adjudicated. (Texas Objection ¶

6–7.) Next, they argue that the sale should wait until after the Examiner has completed her report.

(*Id.* ¶ 10–11.) Finally, the Texas Objection asks that the Debtors add information to the bidding

procedures providing for the sharing of the qualified bidders on a confidential basis with regulators

and asks that Texas be granted "listen-only" access to the auction." (*Id.* ¶ 12.)

5.      Pro Se Objections

Daniel A. Frishberg filed an objection (the "Frishberg Objection," ECF Doc. # 1054).  The

Frishberg Objection argues that the proposed sale is too hasty, and that the only reason the Debtors

are pushing for such a timeline is to get the sale through before the Examiner's report comes out.

(Frishberg Objection at 3.)  He argues that such a rushed sale, and the accompanying uncertainties

about the ownership of the cryptocurrency, is likely to lead to reduced bids, which directly harms

creditors.  (*Id.* at 4.)  Accordingly, the Frishberg Objection asks the Debtors to move back the sale

until the Examiner's report is completed.  (*id.* at 6.)

Additionally, Immanuel Hermann filed a limited objection (the "Hermann Objection,"

ECF No. 1056).  The Hermann Objection notes that Celsius customers have formed an unofficial

steering committee (the "Steering Committee") to advocate for their interests.  (Hermann

Objection at 1).  The objection notes that the Steering Committee believes a sale may actually be

the best path forward, but that the current bidding procedures are too rushed.  (*Id*. at 2.)

Specifically, the objection notes that Mr. Hermann  has spoken to potential bidders and that they

informed him "they are scared to bid while issues of property of the estate [are] unknown."  (*Id.*

at 3.).  He notes that the various stakeholders, including the Steering Committee, have continued

to make real progress in their discussions of exit scenarios.  (*Id.* at 4.)  Accordingly, the Hermann

Objection asks that the sale timeline be moved back to give the Debtors, the UCC and various

stakeholders time to meet and confer on changes to the Bidding Procedures and to avoid a fire

sale scenario.  (*Id.* at 6).  Hermann also filed an untimely supplemental objection at ECF Doc

# 1080, noting that he does not consent to the sale of his property free and clear of liens.

6.      Goetten Objection

Vincent Goetten, through his attorney, filed an untimely limited objection on October 14,

2022 (the "Goetten Objection, ECF Doc. # 1063).  Mr. Goetten is a Celsius customer who

pledged bitcoin as collateral for a loan he received from Celsius Lending LLC in the amount of

$330,000.  (Goetten Objection ¶ 6).  Mr. Goetten's position is that bitcoin is not property of the

estate and thus cannot be sold by the Debtors pursuant to section 363(f) of the Bankruptcy Code.

(*Id.* ¶ 13.)  While he does not object to the concept of the sale, he wants to ensure that the

Debtors sell only property of the estate and asks that any order approving the Motion require the

Debtors to disclose to any potential purchasers that Vincent Goetten disputes ownership of his

bitcoin.  (*Id.* ¶ 14.)

### III. LEGAL STANDARD

#### A.    Bidding Procedure (General Order M-383)

This Court established guidelines for the conduct of asset sales under 11 U.S.C. § 363(b)

in General Order M-383 (the "Guidelines").  With regard to bidding procedures, General Order

M-383 provides that:

> [g]enerally, the Court will entertain a motion for approval . . . of proposed
> bidding procedures if such procedures are, as a matter of reasonable
> business judgment, likely to maximize the sale price.  Such procedures must
> not chill the receipt of higher and better offers and must be consistent with
> the seller's fiduciary duties.

(Guidelines § I.B.)

The Guidelines recommend that bidding procedures include provisions regarding the

qualification of bidders and that Debtors limit the use of "no shop or no solicitation provisions."

(*Id.* §§ I.B.1, I.B.3–4.)  Bidding increments should not be so high that they chill further bids, or

so low that they provide insubstantial consideration to the estate.  (*Id.* § I.B.4.c.)  The Guidelines

also recommend that Bidding Procedures include procedures for a back-up bidder.  (*Id.* § I.B.3.)

The Guidelines "do not express a preference for public over private sales as a means to maximize

the sale price."  (*Id* § I.A. n. 2.)

Courts will approve such procedures if they are supported by a sound business justification. *See In re Integrated Res.*, 147 B.R. 650, 656–7 (Bankr. S.D.N.Y 1992) (noting that bidding procedures negotiated by a debtor are reviewed under the deferential "business judgment" standard, under which such procedures and arrangements are presumed valid); *In re Ionosphere*, 100 B.R. 670, 676 (Bankr. S.D.N.Y. 1989).

### B.    Approval of Sale

Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets so long as they can articulate a sound business justification for doing so. *See, e.g.*, *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The business judgment of the estate representative is entitled to great deference. *See In re Borders Grp., Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011) (quoting *In re Castre, Inc.*, 312 B.R. 426, 430–31 (Bankr. D. Colo. 2004)) ("Indeed the trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets."). "It is now generally accepted that section 363 allows [sales of substantially all assets] in chapter 11, even where there is no emergency requiring immediate action." 3 COLLIER ON BANKRUPTCY P 363.02 (16th ed. 2022).

### C.    Form of Notice

If the Debtor seeks findings limiting the purchaser's successor liability, the sale motion must disclose the proposed notice of such relief. (Guidelines § I.D.12.)

### D.    Waiver of Rule 6004(h)

If the debtor seeks relief from the fourteen-day stay imposed by Bankruptcy Rule

6004(h), the sale motion must disclose the business or other basis for such request."

(Guidelines § I.D.16.)

### E.    Sale "Free and Clear"

Section 363(f) of the Bankruptcy Code permits a debtor to sell property, under section

363(b) or (c), free and clear of any interest in such property of an entity other than the estate.

11 U.S.C. § 363(f).  However, a sale free and clear of liens may be approved only if at least one

of the following five conditions are met: (1) applicable non-bankruptcy law permits sale of such

property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the

price at which such property is to be sold is greater than the aggregate value of all liens on such

property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled to accept

a monetary satisfaction of such interest.  *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa.1988) (noting

that section 363(f) is written in the disjunctive, authorizing a trustee or debtor-in-possession to

sell property of the estate free and clear of all liens "if any of the five conditions of § 363(f) are

met . . . ").  The Debtors must also explain "what adequate protection will be provided for those

interests."  (Guidelines § I.D.15.)

### F.    Assumption and Assignment of Executory Contracts

Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to

the court's approval, may assume or reject any . . . executory contract or unexpired lease of the

debtor."  11 U.S.C. § 365(a).  Section 365(b) provides that in order to assume a contract the

debtor must (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in

the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c)

provide adequate assurance of future performance thereunder.  In a majority of the cases, courts

applied the "business judgment" test to determine whether the rejection of an executory contract

or unexpired lease should be approved.  *See In re Penn Traffic Co.,* 524 F.3d 373, 383 (2d Cir.

2008); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009).

In order to assume or assign leases, "A debtor must demonstrate at a minimum: (a) that it

or the assignee/acquiror has cured or will promptly cure all existing defaults under the

agreement(s), and (b) that the assignee/acquiror can provide adequate assurance that it will

perform under the terms of the agreement(s) to be assumed and assigned under section 365 of the

Bankruptcy Code."  (Guidelines § I(C)(4).)

### G.    Appointment of a Consumer Privacy Ombudsman

The Bankruptcy Code requires the appointment of a consumer privacy ombudsman under

certain circumstances when personally identifiable information as defined in section 101(41A) will

be sold.  As Collier explains:

> Under section 363(b)(1)(B), the trustee may sell or lease the debtor's
> personally identifiable information owned by the debtor if the sale
> or lease complies with the debtor's privacy policy that was in effect
> as of the commencement of the case. If the sale or lease does not
> comply with that policy, the trustee may sell the personally
> identifiable information only if the court approves the sale after
> appointment of a consumer privacy ombudsman under section 332.

3 COLLIER ON BANKRUPTCY P 332.02 (16th ed. 2022).

Even if a sale will comply with the Debtors' privacy policy, bankruptcy courts have the

discretion "to order the appointment of officers or professionals at the expense of the estate when

the court feels that it could benefit from the additional information or assistance that a neutral

third party might provide."  (*Id.*)

# IV. DISCUSSION

### A.    Bidding Procedures

The Court finds that the  Bidding Procedures comply with the Guidelines requirements in that the procedures work to ensure a fair bidding process and to maximize the sale price of the property in the auction.  (Guidelines § 1.B).  As recommended by the Guidelines, the Bidding Procedures provide procedures for the qualification of bidders and do not have any "no shop or no solicitation provisions."  (*Id.* §§ I.B.1, I.B.3-4.)  The Bidding Procedures also provide procedures for a back-up bidder, as suggested by the Guidelines.  (*Id.* § I.B.3.)  The Revised Proposed order also provides greater flexibility to interested parties to submit bids that may creatively maximize value for the Debtors' assets—for example, a bid may include equity in a Debtor, a reorganized Debtor, or another entity proposed by a potential bidder.  (Reply ¶ 4.)  The Court is also satisfied that the Debtors' chosen bidding increments of $500,000 are not so high that they chill further bids, or so low that they provide insubstantial consideration to the estate. (*Id.* § I.B.4.c.)

The U.S. Trustee raises three additional concerns about the bidding procedures: 1) the U.S. Trustee and the Examiner are excluded from the auction; 2) the Debtors plan to select a Stalking Horse Bidder after bids have already been received, defeating the purpose of a Stalking Horse Bidder; and 3) it is unclear what assets exactly the Debtors are selling.  (UST Objection ¶¶ 18–27).

First, as to the U.S. Trustee and Examiner attending the Auction, ordinarily a complete transcript of an auction is prepared and would be part of the record presented to the Court in support of a sale approval.  The U.S. Trustee, or any other party in interest, would then be able to object to the proposed sale based on what transpired during the Auction.  The Court believes, however, under the circumstances of this case, the U.S. Trustee, Examiner and Consumer

Privacy Ombudsman should be able to attend (but *not* interfere with) the Auction.  The Revised
Proposed Order should be modified to permit the remote attendance of these additional parties.

Second, as to the Stalking Horse Bidder concern, the Further Revised Proposed Order
requires that the Debtors submit any Stalking Horse Agreement to the Court for approval.
(Motion ¶ 31.)  The Court will have a chance at that point to address any concerns regarding a
stalking horse bidder and accompanying bid protections.  (*Id.*)  To the extent that the U.S.
Trustee argues that implementing a Stalking Horse Agreement prior to receiving bids is
necessary, the Court disagrees.  (UST Objection ¶ 22)  The Debtors' Bidding Procedures are
presumed valid and the Court defers to the Debtors' business judgement on the timing of a
Stalking Horse Agreement.  *See Integrated Res.*, 147 B.R. at 656–7; *In re Ionosphere*, 100 B.R.
670, 676 (Bankr. S.D.N.Y. 1989).

As to what assets are being sold, the Motion seeks the authority to sell substantially all of
the Debtors' assets.  The Debtors have clarified in their Reply that the Debtors intend to sell all of
their retail platform, including, without limitation, customer earn accounts and coin balances, retail
and institutional lending portfolio, swap services, staking platform, Celpay feature and CelsiusX,
as well as any Remaining Assets, including staking and mining operations and any other Assets
not sold in connection with the Retail Platform Assets Sale.  (Reply ¶ 11.)  The Debtors have also
noted that they "will not sell or purport to sell any Assets absent a finding by the Court that they
have title and authority to sell the Assets." (*Id.*).  Notwithstanding the U.S. Trustee's Objection,
the Court is satisfied that at this stage the Debtors have provided sufficient clarity about the Assets
being sold.

Finally, the Court notes that in response to regulatory concerns of certain of the Objectors,
the Revised Proposed Order provides certain information rights to state regulatory agencies to

ensure that, whichever Successful Bid is selected, a successful purchaser will have to obtain any

necessary regulatory approvals.  (Reply ¶ 4.)  The Court is satisfied that these revisions provide

adequate safeguards at this juncture and will closely review any potential sale order for regulatory

issues.

## B.    Approval of Sale Timeline

The Objectors have raised important questions about the rapid timeline for bidding.  The

Bidding Procedures set forth in the Revised Proposed Order moved the final deadline until

December 12, 2022, after the Examiner's initial report is due, and after the Court hearing on the

custody and withhold account issues.  Resolution of the custody and withhold account issues are

important but involve only a fraction of the potential estate assets that the Debtors propose to

sell.  Additionally, a decision by this Court on those issue is not necessarily the last word, and

any appeals could leave uncertainty for months or years.  It is unrealistic to delay any sale until

such issues are finally resolved.  Bids can be structured with these uncertainties in mind.

The Court is also mindful of the need to push this case to a prompt conclusion if that is

possible.  Time is not on the side of maximizing recovery by all stakeholders.  The "melting ice

cube" analogy is sometimes misused, but the reality here is that the Debtors will have significant

liquidity issues to continue operating in 2023.

For the reasons described below the Court approves the sale timeline.  As required, the

Debtors' have articulated a sound business purpose for the sale.  *See In re Ionosphere Clubs,*

*Inc.,* 98 B.R. at 175.  The Debtors stated in the Motion that because the sale will be the result of a

competitive auction process designed to achieve the "highest and best" offer, in the Debtors'

business judgement a sale would provide "a greater recovery for the Debtors' estates than would

be provided by any other available alternative."  (Motion ¶¶ 36-37).  The Court will not double

guess this judgement, "as business judgment of the estate representative is entitled to great deference." *See In re Borders Grp., Inc.*, 453 B.R. at 483.

The Objectors have raised concerns that a sale of the Debtors' assets before the Court has determined whether custody and withhold account coins are property of the estate, may not make practical sense or be likely to produce the highest bid. In response to these concerns, the Debtors, after discussions with the Committee and various state agencies, revised the Bidding Procedures to extend the bidding process until after this Court has hearings on certain key legal issues in these Chapter 11 Cases to enable bidders to submit value-maximizing bids for only those assets that are property of the Debtors' estates. (Reply ¶ 3) When revising the relevant deadlines, the Debtors considered the schedules regarding key legal issues in these Chapter 11 Cases set forth in the (a) *Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1044], (b) *Debtors' Motion Seeking Entry of An Order (I) Permitting the Sale of Stablecoin in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 832], and (c) *Examiner's Motion to Approve Work Plan* [Docket No. 1013], among other things. (*Id.*) With these revisions, the Debtors submit that "the timeline, as revised, balances the needs of adequate notice with the need to run an expeditious and efficient sale process." (Reply ¶ 10). The Court agrees for three reasons.

First, as the Committee pointed out in their statement, what the Debtors are essentially seeking is the establishment of a clear framework to evaluate potential investors. (Committee Statement ¶ 4.) Without bidding procedures, there would be no objective criteria from which to evaluate various proposals, and putting in place a clear procedure sooner rather than later will make it more likely the Debtors will have an orderly process to evaluate different proposals. The Committee notes, and the Court agrees, that the Bidding Procedures are flexible enough to allow for several

different types of transactions, so approving the Bidding Procedures does not force the Debtors into a

fire sale, but rather gives them a chance to evaluate different proposals in an orderly manner.  (*Id.* ¶

5.)

    Second, the Court will have a chance to evaluate the Sale Order and the terms of any sale

before it is approved.  (Motion ¶ 7.)   Accordingly, the Court will be able to review any deal for the

types of concerns that the Objectors bring up, such as whether there are appropriate securities

disclosures and whether the Debtors are only selling property of the estate.  (*See, e.g.*, Texas

Objection at 5.)

    Finally, none of the Objectors have articulated a *legal basis* for denying the Motion or further

pushing back the timeline for the relief sought in the Motion.  Though all the Objectors raise

practical considerations, such as the possibility that higher bids would be received if the Debtors

waited until all custody and withhold issues are definitively resolved, bids may be structured to

account for these risks.  The Court's role here is to ensure that the Debtors conduct a fair bidding

process that  is "likely to maximize the sale price" and to ensure that the Debtors have articulated

a sound business reason for the sale. (Guidelines § I.B.)  The Debtors have done so here.  (*See

infra* IV.A.)

    While it is true, as the Objectors note, that Courts do sometimes override a Debtors'

business judgement and deny sales, those denials happened in different factual contexts.  The

U.S. Trustee notes that "courts have refused to approve Section 363 sales where the predominant

business justification for the sale is the appeasement of a major creditor and no distribution to

unsecured creditors is likely to be produced from the sale."   (U.S. Trustee Objection ¶ 19 (citing

*Lionel Corp,* 722 F.2d 1063; *In re Encor Healthcare Assocs.*, 312 B.R. 52 (Bankr. E.D. Pa.

2004).  But here, the Committee, the statutory representative of unsecured creditors supports the

Motion, so it is certainly not their view that the sale would only benefit creditors entitled to a

higher priority. (Committee Statement ¶ 4.) Further, this proposed sale is not happening at the

request of one major creditor; it is happening with the support of the Debtors and the Committee,

which is the fiduciary of all unsecured creditors. (*Id.*) (stating that "the Committee—which is

the only fiduciary solely focused on the interests of, and maximizing recoveries of, account

holders and general unsecured creditors . . . determined that the establishment of a clear

framework for potentially interested parties to propose potential equitization, sale, or other

restructuring constructs was most likely to maximize the value of the Debtors' estates."). Nor do

the Debtors need to articulate an emergency in order to justify proceeding on a brisk timeline to a

potential sale. 3 COLLIER ON BANKRUPTCY P 363.02 (16th ed. 2022) (noting that is "generally

accepted" that no emergency is required to procced with a 363 sale).

### C.    Sale "Free and Clear"

The Debtors claim they have satisfied section 363(f)'s requirements to sell any assets

free and clear of encumbrances because "any encumbrance that will not be an assumed liability

satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy

Code," but do not specify which of the provisions the Sale will satisfy. (Motion ¶ 40.) The

Debtors also note that they will provide adequate protection for all lien holders by either being

paid in full or having the interest attach to the net proceeds of the sale. (*Id.*). At this juncture,

the Court finds this representation to be sufficient to satisfy section 363(f), but the Court will

expect more detail on exactly which of section 363(f)'s requirements the sale satisfies in any

proposed sale order.

### D.    Form of Notice and Successor Liability

The Debtors' form of notice complies with the Guidelines.  The Debtors seek to limit

successor liability and have noted that clearly in their Sale Notice, as required by the guidelines.

(Guidelines § I. D.16.)

The Court notes that the U.S. Trustee argues in their Objection that limiting successor

liability may violate 11 U.S.C. § 363(o), which prohibits limits on successor liability for transactions

involving any interest in a consumer transaction.   However, the Court need not make any

determinations with regard to the applicability of 363(o) until a proposed sale is before it.

### E.    Waiver of Rule 6004(h)

The Debtors have provided grounds for seeking a waiver of Bankruptcy Rule 6004(h):

any transaction related to the Debtors' assets should be consummated as soon as reasonably

practicable, in order to maximize value of the estate such that the 14-day stay should be waived.

(Id. § I D.16.)  While the U.S. Trustee complains that the Debtors have not provided sufficient

justification for waiver of the 14 day-stay, the Guidelines require the Debtors to provide the

business ground for the request, which they have done here.  (*Id.*) ("If the debtor seeks relief

from the fourteen-day stay imposed by Bankruptcy Rule 6004(h), the sale motion must disclose

the business or other basis for such request.").  Accordingly, the Court waives the 14 day stay of

orders under Bankruptcy Rule 6004(h).

### F.    Approval of Assumption and Assignment Procedures

The Debtors' Assumption and Assignment Procedures satisfy the requirements of section

365(b) of the Bankruptcy Code.  First, section 365(b)(1)-(2), the requirement that defaults are

cured and compensation is given for any loss associated with the default, is satisfied because the

Assumption and Assignment Procedures provide a clear process to ensure that all defaults are

cured and to resolve any disputes thereto.  (Motion ¶ 46.)  Second, section 365b(3), the

requirement to provide adequate assurance of future performance, is satisfied because the

Bidding Procedures require the Debtors to evaluate whether bidders have the financial

wherewithal to perform on contracts.  (*Id.* ¶ 49.)  Further, the Assumption and Assignment

procedures give the Court and other parties in interest the ability to challenge the assumption of

contracts if there are concerns about adequate assurance.  (*Id.*)  Accordingly, the Court approves

the Assumption and Assignment Procedures.

### G.    Appointment of a Consumer Privacy Ombudsman

The U.S. Trustee argues that a consumer privacy ombudsman should be appointed if the

Debtors are going to sell customer lists.  The Court agrees.  The Debtors argue there is no need

to appoint an ombudsman because any sale will comply with the Debtors' privacy policy.

(Reply ¶¶ 13–16.)   However, the Court has discretion to appoint an ombudsman if it believes a

neutral third party would be helpful, even if a sale will comply with the Debtors' privacy policy.

3 COLLIER ON BANKRUPTCY ¶ 332.02 (16th ed. 2022).  Here,  given the significant amount of

potential customer data that could be included in a sale, the Court finds that appointing a neutral

Consumer Privacy Ombudsman early in the sale process will ensure that any sale adequately

protects such customer data.  3 COLLIER ON BANKRUPTCY ¶ 332.02 (16th ed. 2022) (noting that

Courts sometimes expand on the statutory authorization of section 332 to determine that the

appointment of a neutral third party such as privacy ombudsman would be helpful.)  The U.S.

Trustee is directed promptly to appoint a disinterested Consumer Privacy Ombudsman with

knowledge and experience with consumer privacy laws.  *See id.* (noting that the choice of

Consumer Privacy Ombudsman is committed to the discretion of the U.S. Trustee, but that the

person should have knowledge of consumer privacy laws).

## V. **CONCLUSION**

For the reasons explained above, the Objections are **SUSTAINED IN PART AND OVERRULED IN PART**, and the Motion is **GRANTED** as provided herein.

A revised order (a "Further Revised Bidding Procedures Order") with the changes described in this Memorandum Opinion shall be submitted to the Court and will promptly be entered. A separate order concerning the Consumer Privacy Ombudsman shall also be submitted (but it does not have to be submitted and entered at the same time as the Further Revised Bidding Procedures Order).

**IT IS SO ORDERED.**

Dated:    October 24, 2022
             New York, New York


_____*Martin Glenn*_____
MARTIN GLENN
Chief United States Bankruptcy Judge