**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) **FOR PUBLICATION** <br> ) <br> ) Chapter 11 <br> ) Case No. 22-10964 (MG) <br> ) <br> ) (Jointly Administered) <br> ) |
| CELSIUS NETWORK LLC, *et al.*, | |
| Debtors. | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR THE
APPOINTMENT OF AN OFFICIAL PREFERRED EQUITY COMMITTEE**

*A P P E A R A N C E S:*

MILBANK LLP
*Attorneys for Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP*
55 Hudson Yards
New York, NY 10001
By:   Dennis F. Dunne, Esq.
      Nelly Almeida, Esq.
      Andrew M. Leblanc, Esq.
      Melanie Westover Yanez, Esq.

JONES DAY
*Attorneys to CDP Investissements Inc.*
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
By:   Joshua M. Mester, Esq.

KIRKLAND & ELLIS LLP
*Attorneys for the Debtor*
601 Lexington Avenue
New York, NY 10022
By:   Joshua A. Sussberg, Esq.
      Patrick J. Nash, Jr., Esq.
      Ross M. Kwasteniet, Esq.
      Christopher S. Koenig, Esq.
      Dan Latona, Esq.

WHITE & CASE LLP
*Attorneys for the Creditor Committee*
111 S Wacker Dr Suite 5100
Chicago, IL 60606-5055
By:   Michael Andolina, Esq.
      Aaron Colodny, Esq.
      Samuel P. Hershey, Esq.
      Gregory F. Pesce, Esq.
      David M. Turetsky, Esq.
      Keith H. Wofford, Esq.

SUSAN ADLER, ESQ
*Attorney for Andersen Invest Luxembourg S.A. SPF*
630 Third Avenue
New York, New York 10017

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," ECF Doc. # 880) of Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively, the "Requesting Equity Holders") as beneficial holders, or investment advisors managers of beneficial holders, of Series B Preferred Shares issued by Celsius Network Limited ("CNL" and, together with its affiliated debtors and debtors in possession, the "Debtors" and, the Debtors and their non-Debtor affiliates, collectively, the "Celsius Entities"), for entry of an order appointing an official committee of the holders of CNL's preferred equity securities (an "Official Preferred Equity Committee"). The Debtors filed an objection, (the "Debtors' Objection, ECF Doc. # 1045). The Official Committee of Unsecured Creditors (the "Committee") also filed an Objection (the "Committee's Objection," ECF Doc. # 1048.) Additionally, Andersen Invest Luxembourg S.A. SPF ("Andersen"), a .05% equity security holder in CNL, filed a joinder (the "Andersen Joinder," at ECF Doc. # 924.) The Requesting Equity Holders filed a reply (the "Reply," ECF Doc. # 1120) and an accompanying

2

declaration from Andrew M. Leblanc (the "Leblanc Declaration," ECF Doc. # 1122) both of which the Requesting Equity Holders sought, via a sealing motion, (the "Sealing Motion, "ECF Doc. # 1118") to file with redactions.[1]

For the reasons explained below, the Requesting Equity Holder's Motion is **DENIED.**

## I. BACKGROUND

### A.    General Background

On July 13, 2022 (the "Petition Date"), the Debtor filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  (Motion ¶ 18.)  On July 27, 2022, the U.S. Trustee appointed the Committee, which is comprised of seven members, each of whom holds crypto assets through the Celsius platform.  (*Id.* ¶ 20.)  On September 14, 2022, the Court appointed an examiner in these Chapter 11 Cases.   (*See* ECF Doc. # 820.)  At a hearing on September 1, 2022, the Debtors noted that they had engaged in meaningful discussions with the UCC regarding a business plan and a potential restructuring and that both parties agreed to a comprehensive diligence reporting framework.  (Motion ¶ 21).

### B.    Composition of Requesting Equity Holders

The Requesting Equity Holders hold 87% of CNL's Series B preferred equity interests (Committee Objection ¶ 12 (citing Motion, Exhibits F-G).)  They are represented by two highly regarded, global law firms, Millbank LLP ("Milbank") and Jones Day LLP ("Jones Day.")  (Committee Objection ¶ 4.)

---

[1]    The Court concludes that, in ruling on the pending motion, it does not need to rely on, and it has not relied on, the contents of several documents submitted with the Reply by the Requesting Equity Holders, which the Debtors contend are confidential and would require redaction and sealing under Bankruptcy Code § 107(b).  (*See* Sealing Motion and related papers, ECF Doc. # # 1118, 1119, 1124, 1156.)  Consequently, it is unnecessary for the Court to rule on the Sealing Motion to resolve this Motion, and the Court declines to do so.

3

### C. Requesting Equity Holders Legal Theories

The Requesting Equity Holders' legal position is that Celsius account holders do not hold claims at each Debtor entity. (Motion ¶ 4.) Further, they argue that the Celsius Entities are, essentially, a conglomerate of three business lines conducted by separate and distinct legal entities, including, without limitation: (i) the storage business, which is conducted by GK8, whose equity the Debtors are seeking to sell; (ii) the mining operations, which are conducted by Debtor Celsius Mining LLC (a subsidiary of CNL) and its non-Debtor subsidiary, Celsius Mining IL Ltd. (collectively, the "Mining Entities" and, together with CNL and GK8, the "Non-Customer Facing Entities"); and (iii) the retail customer-facing business, which is conducted primarily through Celsius Network LLC and is thus separate from the Non-Customer Facing Entities. (*Id.* ¶ 3). The Requesting Equity Holders contend that only the equity holders, and not Celsius account holders, have claims against Non-Customer Facing Entities. (*Id.*). The Debtors and Committee disagree and the Debtors have noted publicly that they believe Celsius account holders have claims against all Debtor entities. (Debtors' Objection ¶ 15; Committee Objection ¶ 22.)

### D. Requesting Equity Holders' Request for an Official Preferred Equity Committee

On July 19, 2022, Milbank (on behalf of certain Requesting Equity Holders) submitted a letter to the U.S. Trustee requesting the appointment of an Official Preferred Equity Committee. (Motion. ¶ 22.) On July 22, 2022, Jones Day (on behalf of the other Requesting Equity Holder) submitted a letter to the U.S. Trustee requesting the same. (*Id.*)

On July 28, 2022, after the Debtors filed three motions seeking to sell certain assets, the Remaining Equity Holders renewed their request to the U.S. Trustee for an Official Preferred Equity Committee. (*Id.* ¶ 23). The U.S. Trustee has not taken a position with respect to the

Motion and has asked that the Court grant whatever relief it deems proper. (Debtors' Objection ¶ 14.)

### E. The Requesting Equity Holders' Participation in These Chapter 11 Cases

The Requesting Equity Holders are active participants in these Chapter 11 Cases. Counsel for the Series B Holders participated in the first day hearing to make the equity holders' views known on matters important to equity holders. (*See id.* ¶ 11 (citing July 18, 2022 Tr. 80:7-83:10).) Counsel for the Series B Holders also participated in the September 14, 2022 hearing. (*See id.* (citing Sept. 14, 2022 Hr'g Tr. 44:21-45:21, 45:24-46).) On August 2, 2022, CDP Investissements Inc. filed a Declaration of Status as a Substantial Shareholder [ECF Doc. # No. 336] and on August 8, 2022, the Series B Holders filed a Declaration of Status as a Substantial Shareholder [ECF Doc. # 444], signaling their appearances in these Chapter 11 Cases. (*Id.* ¶ 11.)

On September 7, 2022, the Series B Holders filed the Series B Holders' Limited Objection to Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner [ECF Doc. # 734]. (*Id.* ¶ 12). The Debtors engaged with the Requesting Equity Holders and included their comments on the relief granted by the:

- *Order (I) Permitting Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [ECF Doc. # 514] (the "Mined Bitcoin Order");

- *Order Approving Procedures for De Minimis Asset Sales* [ECF Doc. #692] (the "De Minimis Sale Order");

- *Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [ECF Doc. # No. 687] (the "GK8 Bidding Procedures Order"); and

- *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and*

5

*(D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [ECF Doc. # 56] (the "First Interim Cash Management Order");

- *Second Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [ECF Doc. # 513] (the "Second Interim Cash Management Order"); and

- *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [ECF Doc. # 699] (the "Third Interim Cash Management Order" and together with the First Interim Cash Management Order and the Second Interim Cash Management Order, the "Interim Cash Management Orders").

(*See id.*)

### F. The Debtors' Special Committee

CNL formally formed a special committee (the "Special Committee") on or around June 19, 2022, currently comprised of two disinterested directors both appointed on or around June 30, 2022. (*Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, In Support of Chapter 11 Petitions and First Day Motions* ¶ 128, ECF Doc. #23.) The Special Committee of the Board of CNL ("Special Committee") has a fiduciary duty to maximize value for all stakeholders. (Committee Objection ¶ 4). One of the two members of the Special Committee were designated by affiliates of significant preferred equity holder WestCap Management LLC ("WestCap."). (*Id.*)

### G. The Motion

On September 22, 2022, the Requesting Equity Holders filed the Motion seeking the

appointment of an Official Preferred Equity Committee for four main reasons.  First, on the grounds that they are not adequately represented, such that appointment of the Committee is necessary at this time.  Second, on the grounds that the Chapter 11 Cases are sufficiently complex to justify the appointment of such a committee.  Third, on the grounds that the Debtor is not "hopelessly insolvent," such that equity may get a recovery.  Fourth, on the grounds that the benefits of an Official Preferred Equity Committee outweigh the costs.

## II. THE DEBTOR'S OBJECTION

The Debtors' Objection argues that 1) equity holders are adequately represented such that a committee is not necessary at this time; 2) the Requesting Equity Holders have not demonstrated that they have a substantial likelihood of recovery; and 3) other factors such as the cost to the estate and the complexity of the case do not favor appointing an Official Preferred Equity Committee.

As to adequate representation, the Debtors argue that the Requesting Equity Holders have been able to meaningfully participate in these Chapter 11 Cases and that they are not entitled to "exclusive representation." (Debtors' Objection ¶¶ 19–28.)  As to the likelihood of equity recovery, the Debtors note that the fact that equity may recover is not enough to satisfy the burden required to appoint an Official Preferred Equity Committee.  (*Id.*¶¶ 29–37.)  As to the other factors Courts consider, such as timeliness and cost to the estate, the Debtors argue that the request is untimely and that that the costs outweigh the benefits.  (*Id.* ¶¶ 42–44.)

## III. THE COMMITTEE'S OBJECTION

The Committee opposes the Motion for largely the same reasons as the Debtors but puts forth some unique objections.  First, the Committee claims that the Requesting Equity Holders have not demonstrated that there are unique circumstances here that prevent the board of directors from being a fiduciary for shareholders.  (Committee's Objection ¶¶ 16–18.)  The

7

Committee notes that one of the members of the board was appointed by a significant preferred equity holder. (*Id.* ¶ 18).

Second, the Committee argues that the interests of Preferred Equity Holders are aligned with the Committee's interests. (*Id.* ¶ 21). They note that the Committee's duty to maximize value to the estate will "inhere to the benefit of shareholders." (*Id.*) Further, the Committee argues that the "inevitable disagreement among stakeholders" is not a basis for forming a statutory committee. (*Id.* ¶ 22).

Third, the Committee argues that the preferred equity holders will be adequately represented by Milbank and Jones Day, even in the absence of a statutory committee. (*Id.* ¶ 15). The Committee notes that the Requesting Equity Holders, who hold 87% of the CNL Series B preferred stock, would be the overwhelming beneficiaries of an equity committee. (*Id.*) They note that "even if the remaining 13% of the preferred equity was widely held, that fact would not outweigh the grossly disproportionate benefits to the well-counseled and well-heeled investors." (*Id.*)

## IV. LEGAL STANDARD

Section 1102(a)(2) of the Bankruptcy Code provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2). "Appointment of committees of equity security holders is the exception rather than the rule in chapter 11 cases." 7 COLLIER ON BANKRUPTCY § 1102.03 (16th ed. 2022).

The term "adequate representation" is not defined in the Bankruptcy Code; instead, bankruptcy courts have absolute discretion in determining whether an official equity committee is warranted under the specific facts and circumstances of each case. *In re Eastman Kodak Co.*,

8

No. 01-16034, 2012 WL 2501071, at *1 (Bankr. S.D.N.Y. June 28, 2012) (citing *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009); *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985)). To determine whether there is "adequate representation," courts generally consider: (i) whether equity holders are adequately represented by stakeholders already at the table; (ii) the complexity of the case; (iii) whether the debtors are hopelessly insolvent; (iv) the delay that would result from the appointment of an official equity committee and the timing of the request relative to the status of the case; and (v) whether the costs associated with such committee significantly outweigh the need for adequate representation of equity holders. *See, e.g.*, *In re Williams, Inc.*, 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002). No one factor is dispositive, and the weight attributed to each factor depends upon the facts and circumstances of each case. *In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 600–01 (Bankr. D. Del. 1996).

## V. **DISCUSSION**

The Court agrees with the Committee and the Debtors that appointment of an Official Preferred Equity Committee is inappropriate for three reasons. First, the equity holders are adequately represented by already existing stakeholders and do not need additional representation. Second, the Requesting Equity Holders have not met their burden to demonstrate that there is a substantial likelihood of equity recovery. Finally, other factors such as the balance of costs and benefits to the estate, as well of the complexity of these Chapter 11 Cases, do not weigh in favor or appointing an Official Preferred Equity Committee.

### A.    **Whether there is Adequate Representation by Existing Stakeholders**

The question whether equity holders are adequately represented requires the movant to demonstrate not merely "whether the shareholders are 'exclusively' represented, but whether they are 'adequately' represented." *Williams*, 281 B.R. at 223 (internal citation omitted). The Requesting Equity Holders have not met that burden. Preferred equity holders are adequately

9

represented by three different constituencies: 1) the Requesting Equity Holders; 2) the Debtors' board and; 3) the Committee.

1. Adequacy of Representation by Requesting Equity Holders

The preferred equity holders are adequately represented by the Requesting Equity Holders. The Requesting Equity Holders have already demonstrated their ability to advocate for their own interests without the title of an official committee and the burden such committee would have on the estate's resources. *See Spansion*, 421 B.R. at 163. As in *Spansion*, the Requesting Equity Holders are "well organized, well represented by counsel, and adequate to the task of representing [their] interests without 'official' status." *Id*. The Requesting Equity Holders have made numerous appearances in these cases to date, including filing an objection to the motion of the U.S. Trustee for the appointment of an examiner [ECF Doc. # 734] as well as negotiating first day relief and engaging with the Committee and the Debtors with respect to the procedures for certain asset sales. (Committee's Objection ¶ 14.)

Further, the Requesting Equity Holder's argument that that they cannot represent all preferred equity holders is not compelling. While it is true that the Requesting Equity Holders represent 87%, and not 100% of the preferred B Stock, the Requesting Equity Holders have not indicated any issues on which their interests are dis-aligned with the remaining equity holders (the "Remaining Equity Holders"), such that a formal statutory committee would add value for the Remaining Equity Holders. (Committee Objection ¶ 15.) Even if the remaining 13% of the preferred equity was widely held, that fact would not outweigh the grossly disproportionate benefits to the well-heeled investors. *See In re SunEdison, Inc.*, 556 B.R. 94, 103 (Bankr. S.D.N.Y. 2016) (denying appointment of equity committee "[n]otwithstanding the admitted complexities of the Debtors' cases and the number of outstanding common shares and holders of record"); *Williams*, 281 B.R. at 223 ("[W]hile there is a large number of shareholders, not every

10

case with such a large number will require an official equity committee. Indeed, if Congress' intent was otherwise, it would have mandated the appointment of equity committees instead of leaving it within the discretion of the UST and the Court.").

2. Adequacy of Representation by the Debtors' Management Team

The Requesting Equity Holders also have not demonstrated that the Debtors' board of directors will not provide adequate representation. The "usual presumption [is] that the Board will pay due (perhaps special) regard to the interests of shareholders. *In re Oneida* Ltd., No. 06-10489 (ALG), 2006 WL 1288576, at *2 (Bankr. S.D.N.Y. May 4, 2006). Courts have generally only found the Debtors' board to be insufficient fiduciaries where there are special circumstances that render the board unable to adequately represent equity holders. For example, in *Oneida*, the Court appointed an official equity committee where the board consisted of only secured lenders who had proposed a plan that paid unsecured creditors and wiped-out equity. *Id.* Here, the Requesting Equity Holders have not demonstrated that special circumstances exist to render the Debtors' board an inappropriate fiduciary. Unlike in *Oneida*, to date, no plan or reorganization has been proposed, so there is no evidence equity holders are being disfavored, and the Debtors' board contains equity holders, rather than being controlled exclusively by unsecured creditors. (*See* Committee Objection ¶ 18.) Further the fact that the Debtors have communicated a desire to work to maximize customer value, does not mean they are foregoing their fiduciary duty to shareholders. As the Committee notes, since "Celsius' asset deployment is dependent on users entrusting their crypto assets to Celsius," it is proper to "actively engage with the Committee to develop a viable exit from chapter 11 that will result in maximum recoveries to its customers." (Committee's Objection ¶ 18.)

11

### 3. Adequacy of Representation by the Committee

The Requesting Equity Holders will also be represented by the Committee. The Committee has a duty to maximize the value of the Debtors' estates. (Committee Objection 21). The Requesting Equity Holders assert that the interests of customers and equity holders are "uniquely adverse" due to the Committee's view that customers hold claims against every Debtor entity. (*See* Motion ¶¶ 29–30.) But the Requesting Equity Holders provide no legal support for the proposition that a disagreement on certain legal issues related to distribution, renders the appointment of an equity committee necessary. They cite *In re Pilgrim's Pride Corp.* for the proposition that an equity committee should be appointed where the interests of shareholders and unsecured creditors diverge. (Motion ¶ 45 (citing 407 B.R. 211, 217 n.17 (Bankr. N.D. Tex. 2009).). But *Pilgrim's Pride* does not stand for the proposition that any disagreement between equity and unsecured creditors merits a statutory equity committee. In *Pilgrim's Pride* there was substantial public evidence that the Debtors' assets exceeded their liabilities and the Debtors' largest shareholder served as "creditor, as guarantor of Debtors' bank debt and as Debtors' contractual counterparty" such that the Debtors' board and creditors' committee could not adequately represent equity. *Id.* at 217–218. Here, in contrast, all the public information points to the Debtors' insolvency and while there may be legal disagreements among parties, the Debtors do not serve as both the largest shareholder and a creditor such that their fair representation of all stakeholders is precluded. *Id.* Finally, in *Pilgrim's Pride* the risk of burdening the debtor with unnecessary fees was not present, given that under then governing Fifth Circuit standards, "professionals representing an equity committee may not be entitled to compensation if the subject case ultimately provides no return to equity[.]" *Id.* at 217. Accordingly, *Pilgrim's Pride* is inapposite.

B.     Whether There is a Substantial Likelihood that Equity Will Recover

The Requesting Equity Holders have not shown that there is substantial likelihood that equity will recover. "[G]enerally no equity committee should be appointed when it appears that a debtor is hopelessly insolvent because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift." *In re Emons Industries, Inc.*, 50 B.R. 692, 694 (Bankr.S.D.N.Y.1985). Equity committees "should not be appointed unless equity holders establish that (i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule." *In re Williams*, 281 B.R. at 223.

Here, no party has stated that the Debtors are "hopelessly insolvent." The Requesting Equity Holders put forth no more than a contingent legal theory in support of their contention that equity will recover. Their theory is that because customers will not have valid claims against Non Customer Facing Entities, there will recoveries for equity. (Motion ¶ 42). But both the Committee and the Debtors strongly contest this legal theory and the Court has yet to rule on this issue. (Debtors' Objection ¶ 31; Committee's Objection ¶ 22). Moreover, the fact that equity holders *may* be entitled to recovery depending on this Court's ruling in certain disputes in these Chapter 11 Cases is insufficient to satisfy the Requesting Equity Holders' high burden that there is a "substantial likelihood" of recovery. *Williams*, 281 B.R. at 223. All the other information available indicates that the Debtors are likely insolvent: the Debtors' CFO stated under oath that the Debtors are insolvent and the Debtors' latest operating report indicates that the Debtors' current liabilities are approximately $329 million greater than their current assets. (Committee's Objection ¶ 26; Debtors' Objection ¶ 30.)

### C. Whether Other Factors Support Appointing an Equity Committee

The other factors Courts often consider, such as the cost to the estate and the complexity of these Chapter 11 Cases, do not support appointment of an Official Preferred Equity Committee.

An Equity Committee should not be appointed if "the cost of the additional committee sought significantly outweighs the concern for adequate representation." *See Beker Indus. Corp.*, 55 B.R. at 949. The Requesting Equity Holders are already adequately represented, so there is minimal benefit to the estate to the appointment of an Official Preferred Equity Committee. (*See Infra* § V.A). The cost to the estate, on the other hand, is considerable. The estate would be forced to fund the legal fees of an Official Preferred Equity Committee to advance a contingent legal theory which would divert money from creditor recovery, when it appears at this point unlikely equity will get any recovery. (*See Infra* § V.B.) The Requesting Equity Holders are not pro se litigants who would otherwise be incapable of advancing their interests, they are sophisticated financial institutions who are already represented by highly competent counsel. *See Spansion*, 421 B.R. at 163-64 (denying a motion to appoint an equity committee because the equity security holders were "well organized, well represented by counsel, and adequate to the task of representing its interests without 'official' status.").

Further, nothing precludes the Requesting Equity Holders from seeking an award of their fees as an administrative expense under Section 503(b) of the bankruptcy code if they make a "substantial contribution" to the case. *See, e.g.*, *Williams*, 281 B.R. at 223 (noting that "in most cases, even those equity holders who do expect a distribution in the case can adequately represent their interest without an official committee and can

seek compensation if they make a substantial contribution in the case"). Accordingly, the costs to the estate of appointing an Official Preferred Equity Committee significantly outweigh any benefits.

Finally, while these Chapter 11 Cases are certainly complex, that fact does not cut in favor of granting an Official Preferred Equity Committee. The Requesting Equity Holders correctly note that this fact is undisputed, but do not provide any justification for why this complexity merits the appointment of an Official Preferred Equity Committee. (Motion ¶ 40.). In fact, as the Debtors point out, this complexity may cut *against* appointing an Official Preferred Equity Committee, as due to the number of stakeholders involved there is a higher risk of duplication of efforts, given that the Examiner and other parties are already looking into some of the same questions as the Requesting Equity Holders. (Debtors' Objection ¶ 42.)

## VI. CONCLUSION

Therefore, for the reasons explained above, the Objections are **SUSTAINED** and the Motion is **DENIED.**

**IT IS SO ORDERED.**

Dated:  October 24, 2022
        New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge