Immanuel Herrmann
*Pro se Celsius creditor*
Admin of the Worldwide Celsius
Earn Customer Telegram group
**https://t.me/celsiusearn**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                        )
In re:                                  )        Chapter 11
                                        )
CELSIUS NETWORK LLC, *et al.*,[1]       )        Case No. 22-10964 (MG)
                                        )
          Debtors.                      )        (Jointly Administered)
_____  )


**OBJECTION TO D.R. 880, THE MOTION OF COMMUNITY FIRST PARTNERS, LLC, CELSIUS SPV INVESTORS, LP, CELSIUS NEW SPV INVESTORS, LP, AND CDP INVESTISSEMENTS INC. FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF AN OFFICIAL PREFERRED EQUITY COMMITTEE (OR JOINDER TO D.R. 1048, THE UCC'S OBJECTION TO D.R. 880)**


Now comes Immanuel Herrmann, Celsius *pro se* creditor, and files this objection to the appointment of an official preferred equity committee (D.R. 880). Alternatively, if this filing cannot be considered to be a standalone objection because of its timing, and my request for relief to file a late objection for cause (D.R. 1165 along with the cause outlined in this objection) is denied, then I request that this filing instead be considered as a joinder to the UCC's objection to the motion (D.R. 1048).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

## **CAUSE TO EXTEND THE DEADLINE IN SUPPORT OF MY MOTION, D.R. 1165**

There is cause to extend the deadline to object:

1. I was surprised by the motion to file a document under seal–the Movant did not announce their plan to file under seal until the day before the October 20 hearing. I acted in good faith, informing the parties and Chambers that I objected via formal letter. The letter was sent within hours of the motion to seal and before the deadline for written objections, which the Movant acknowledged when we spoke by phone.

2. I believed that UCC objected to the Motion on my behalf. If this is not strictly true procedurally speaking, it was an unintentional, inadvertent mistake.

3. Because an opinion on the official preferred shareholders committee has not yet been delivered by this court, and because the Movant continues to work with the Debtor to submit an additional document (under seal) in support of their motion after oral arguments,a written filing from me will not prejudice the Movant any more than their late filing of documents under seal after oral arguments prejudices me. Furthermore, arguments in court were time-limited; most of the motion is being decided based on written filings; adding another written filing to the mix will not prejudice anything. Should the Movant disagree with my assessment, there is still time for the Movant or any other parties in interest to either file responses to my filings on Monday, or ask for an additional short-term extensions to prepare a written response to my objection, if they so choose and still get a decision this week–or else to simply withdraw the motion to shorten time and defer consideration to the November 1 hearing.

4. My request for relief to extend the deadline to object can be found in my motion, D.R. 1165.

**OBJECTION**

I respectfully state as follows:

1. I agree with the arguments made in D.R. 1048, the UCC's objection to the appointment of an official preferred equity committee, in particular that "the costs of representing the interests of preferred equity holders should not be borne by the Debtors' individual account holders, many of whom have lost access to their retirement accounts, life savings, college funds, and other personal savings as a result of these bankruptcy cases."

2. In my view, Earn customers have a better case under Section 1102(a)(2) of the Bankruptcy Code for an official committee of creditors than the private equity committee does because to ensure *adequate representation* of our group, there is a good argument that we would have to file constructive trust claims under New York law and do expensive discovery that could cost millions of dollars. A *comprehensive* exploration of whether this was a Ponzi scheme and whether Earn customers would fare better if it was, versus if we continue with the case as it has been going, is another avenue that might be lucrative for Earn relative to other groups of customers; this line of investigation may be necessary for our adequate representation, yet may be too costly to explore without an official committee, and/or too contrary to the interests of other creditors and the current trajectory of this case for the UCC to engage in it (though such a designation also contains a multitude of risks, dangers, and problems–I would still prefer a reorganization, so long as it is *fair* to Earn customers. The appointment of an official committee of preferred equity

shareholders would almost certainly make any reorganization *less fair* to Earn, however. I will be saying more about some of the risks, pros, and cons of a Ponzi designation in a future filing.)

3. It is unlikely that we can fundraise enough for the type of adequate representation I outlined above; the UCC is not likely to fully explore constructive trust or Ponzi arguments for a variety of reasons, and was unable to share with me any legal arguments they may or may not have on constructive trust when I requested them. Instead, they likely prefer to settle with other creditor constituencies and keep the case largely on its current trajectory, where contract questions dominate and it is Earn, more than any other group, that is assumed to be "property of the Estate." This is, of course, convenient because we are the largest group of depositors, and therefore, our assets are the most necessary to a successful restructuring. The problem is that doing this, by default, may give Earn customers the worst recovery of any other group; that fact alone is a good argument that we cannot get adequate representation without having an official committee of our own. I will also note that Earn customers had to work very hard to lobby the UCC to prevent Custody and Withhold from prevailing early in the case; it seemed for a while that they may just get 100% back without having to make much of a case at all–and it was *pro se* efforts, along with significant efforts to lobby the UCC, that may have shifted the tide–bringing evidence of fraud, misrepresentation, insolvency, and commingled funds to the *fore.* I will also note that the UCC initially opposed getting the examiner to look into these issues, though they are now in a proposed expansion order under consideration for November 1. Giving Earn the worst recovery on a percentage basis and settling with all other groups to give them a better recovery–simply because they

are smaller and have less assets–may save the rest of the estate money in legal fees, and it may be expedient for practical reasons to get a restructuring. But, anything short of fighting for *pari pasu* distribution and substantive consolidation is, potentially, inadequate representation for Earn. And given that Earn depositors make up the majority of creditors, both by number and value of assets, there are questions about whether settlements that prejudice us relative to, potentially, all other depositor groups, meet the fiduciary duty owed to us.

4. That said, I am not asking for an official committee of Earn creditors at this time (though I reserve the right to in the future), because, *inter alia,* I understand that it is a rare exception and is extraordinary relief.

5. Here, we have a group of preferred shareholders that has no problem paying for its own ***exceptional and not just adequate representation*** by one of the best law firms in the country. It should also be noted that the group of preferred equity shareholders also manage hundreds of billions of dollars of assets, and as the UCC and Debtors have noted, one of the requirements for an estate funded official committee is to be unable to afford adequate representation, or being made up of public shareholders. See Edward L. Rothberg & Deirdre Carey Brown, *Official Equity Committees in Chapter 11 Cases*, 36 AM. BANKR. INST. J. 22, 22 (Nov. 2017) (stating that official equity committees "certainly are not necessary in most nonpublic . . . chapter 11 cases" but may be necessary in "large public cases" as "a shareholder who owns a small percentage of stock in a large publicly held company can hardly afford to retain counsel who can competently contest a plan"). The group now seeks leave from this court to effectively spend the deposits of Earn customers

to pay for the legal representation of private shareholders. And it seeks to do so, in part, by introducing secret evidence, after their arguments have already been heard in court on the eve of a ruling, and after the deadline to object has passed–with no opportunity by parties in interest to view or respond to that secret evidence.

6. The Investor Presentation that the Preferred Equity Shareholders wish to file under seal may well show that they were defrauded (though I may never know what it shows.) Perhaps it will show something like preferred shareholders having ownership of the Mining operation because of Celsius' corporate structure. If so, I am sorry for the Preferred Shareholders. However, I welcome them, like all other creditors, to the Celsius club. We were all defrauded … in writing. And they are *shareholders, not depositors*. A group being defrauded or being a victim of misrepresentation is sadly nothing special, unique, or unusual in this case. It is, unfortunately, typical for Celsius creditors (and no doubt, for Celsius shareholders as well), to have been misled. However, being misled does not entitle preferred shareholders to an official committee at the expense of the estate. (Or, if it does, every such group is entitled to an official committee at the expense of the estate, or at least Earn customers are, as I outlined here.) The preferred shareholders, I will note, have significant resources. They could have, and did, investigate Celsius, and do due diligence; something effectively every single creditor did not have the ability or resources to do. (I will say that the fact that they invested, after doing extensive due diligence, should tell this court something about the level of misrepresentation at this company.)

7. I completely understand that, in general, this court would take each group's request for an official committee on its own merits. In other words, me arguing that Earn customers have a good case to file for an official committee, too shouldn't normally impact a separate request for a Preferred Equity Holders Committee.

8. However, for practical reasons, it does matter that this request being granted will "open the floodgates." If this request is granted, there will almost certainly be requests for additional official committees, in particular, as an Earn Committee and/or a Special Restructuring Committee made up of representatives from different creditor groups that have been in intensive talks and negotiations. The reason for this is simple: If the Preferred shareholders can meet their heavy burden given all the facts and circumstances, I am quite confident that Earn customers can meet the same heavy burden.

9. Any substantial payment to Preferred Equity holders could easily make restructuring for certain depositors or groups of depositors worse than Chapter 7 or worse than a Ponzi designation, which, I will remind the court, includes automatic substantive consolidation, which would wipe out Preferred Shareholders, along with *pari pasu* distribution, which would benefit Earn more than any other constituency in this case. For avoidance of doubt, I plan to object to any deal that is worse for Earn than either a Chapter 7 designation or a Ponzi designation. Beating those outcomes is the floor for negotiations with Earn customers, in my view. Therefore, preferred equity investors are unlikely to receive any meaningful distribution in this case.

10. The appointment of an official committee of Preferred Equity Shareholders is likely to give them undue influence over the restructuring process. If this results in a plan that depositors oppose, it could lead to the complete failure of this process–either a Chapter 7 liquidation or increased calls for a Ponzi designation.

If this motion is denied, I believe a negotiated settlement and a reorganization among creditor groups is possible, and increasingly likely. As I noted in a recent filing, D.R. 1056, we are making enormous progress. If this motion is granted, however, and Preferred Equity Shareholders torpedo this entire process via an official committee, I have serious doubts. An official committee of private equity shareholders should be rejected by this court.

Thank you, Your Honor.

Dated: October 23, 2022
Silver Spring, Maryland

/s/ Immanuel Herrmann
Immanuel Herrmann