Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) Case No. 22-10964 (MG) |
| Debtors. | ) ) (Jointly Administered) |

**NOTICE OF FILING REVISED**
**PROPOSED ORDER (I) APPROVING**
**THE BIDDING PROCEDURES IN CONNECTION**
**WITH THE SALE OF SUBSTANTIALLY ALL OF THE**
**DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES WITH**
**RESPECT THERETO, (III) APPROVING THE FORM AND MANNER**
**OF NOTICE THEREOF, (IV) APPROVING CONTRACT ASSUMPTION**
**AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on September 29, 2022, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion Seeking Entry of an*

*Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of*

*the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief [Docket No. 929] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors previously filed a revised proposed *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, And (V) Granting Related Relief* [Docket No. 1110].

**PLEASE TAKE FURTHER NOTICE** that the Debtors previously filed a further revised proposed *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, And (V) Granting Related Relief* (the "Revised Proposed Order") [Docket No. 1148].

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a further revised proposed *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, And (V) Granting Related Relief* attached hereto as **Exhibit A** (the "Further Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE** that a comparison between the Revised Proposed Order and the Further Revised Proposed Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Further Revised Proposed Order, and other pleadings filed in the above-captioned chapter 11 cases may be obtained

free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: October 24, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:        (212) 446-4900
Email:             jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200
Email:             patrick.nash@kirkland.com
                      ross.kwasteniet@kirkland.com
                      chris.koenig@kirkland.com
                      dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) APPROVING THE
### BIDDING PROCEDURES IN CONNECTION
### WITH THE SALE OF SUBSTANTIALLY ALL OF THE
### DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES WITH
### RESPECT THERETO, (III) APPROVING THE FORM AND MANNER
### OF NOTICE THEREOF, (IV) APPROVING CONTRACT ASSUMPTION
### AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the Bidding Procedures in connection with the sale of substantially all of the Debtors' Assets, substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures"), (b) scheduling certain dates and deadlines in connection with the Bidding Procedures, (c) approving procedures for assuming and assigning certain executory contracts and unexpired leases, and certain related notices, (d) approving the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, (e) approving the Cure Notice, substantially in the form attached hereto as **Exhibit 3**, and (f) granting related relief, all as more fully set forth in the Motion; and upon the Campagna

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

Southern District of New York, entered February 1, 2012; and this Court having the power to enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

A.    Jurisdiction and Venue.  The Court has jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b).

B.    Bases for Relief.   The bases for the relief requested in the Motion are

sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2),

6004, 6006(a), 9007, and 9014, and Local Rules 2002-1, 6004-1, 6006-1, 9006-1, 9013-1, and the

*Guidelines for the Conduct of Asset Sales* established and adopted by the Court on November 19,

2009 pursuant to General Order M-383, and as updated on June 17, 2013.

C.     <u>Notice of the Bidding Procedures Motion</u>.  As reflected in the certificate of service filed on October 7, 2022 [Docket No. 991] (the "<u>Certificate of Service</u>"), the Motion and the notice of the Hearing was served on the Court's electronic filing system and the Notice Parties.  The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

D.     <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **<u>Exhibit 1</u>**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest.

E.     <u>Assumption and Assignment Procedures</u>.  The Cure Notice is reasonably calculated to provide counterparties to the Contracts to be assumed or assumed and assigned with proper notice of the intended assumption or assumption and assignment of their Contracts, any cure amounts, and the Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures shall be required.

F.     <u>Sale Notice</u>.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of an Auction, including the date, time, and place of an Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of an Auction shall be required.

G.     <u>Notice of Auction for Sale of Retail Platform Assets</u>.  If the Debtors and the Official Committee of Unsecured Creditors (the "<u>Committee</u>") jointly determine in their reasonable discretion that a sale of the Retail Platform Assets (as defined in the Bidding

Procedures) independent from the Debtors' other Assets will maximize the value of the Debtors'

estates, then the Debtors will file a Notice of Auction for Sale of Retail Platform Assets on the

docket on or before December 13, 2022, and provide all interested parties with notice of an Auction

(email being sufficient), including the date, time, and place of an Auction (if one is held), the

respective deadlines related thereto, and no other or further notice of such Auction shall be

required.

> **NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1. The Motion is granted as set forth herein.

2. All objections, statements, and reservations of rights to the relief granted herein that

have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included

in such objections, are overruled and denied on the merits with prejudice.

## I.    Important Dates and Deadlines.

3. The following dates and deadlines are established for the Debtors' process to solicit

bids for the Sale of the Assets comprising the Debtors' retail platform business (the "Retail

Platform Assets"), which includes customer earn accounts and coin balances, retail and

institutional lending portfolio, swap services, staking platform, CelPay (the Debtors'

cryptocurrency payment and transfer feature), and CelsiusX (the Debtors' decentralized finance

arm that utilizes wrapped cryptocurrency tokens to bridge centralized finance infrastructure to

decentralized finance opportunities), and any cryptocurrencies or digital assets held by the Debtors

(to the extent that they comprise property of the estate as such term is defined under section 541

of the Bankruptcy Code). The below dates and deadlines are subject to the right of the Debtors,

with the consent of the Committee (such consent not to be unreasonably withheld), to modify the

following dates, *provided* that the Debtors shall provide notice of such modified dates in

accordance with the terms of this Order:

| Event or Deadline | Date and Time[3] |
|---|---|
| Initial Bid Deadline for Retail Platform Assets | November 21, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Final Bid Deadline for Retail Platform Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if necessary) for Retail Platform Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Retail Platform Assets[4] | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

4.      The following dates and deadlines are established for the Debtors' process to solicit bids for the Sale of the Debtors' Assets (the "Remaining Assets"), which shall include the Mining Assets and the Retail Platform Assets to the extent that that the Retail Platform Assets are not sold at the Sale Hearing set forth above:

| Event or Deadline | Date and Time[5] |
|---|---|
| Final Bid Deadline for Remaining Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction for Remaining Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |

---

[3]    All dates and deadlines are subject to Bankruptcy Rule 9006.

[4]    Pursuant to the Bidding Procedures, the Debtors shall, subject to the consent of the Committee (such consent not to be unreasonably withheld), seek to sell the Retail Platform Assets at this Sale Hearing.

[5]    All dates and deadlines are subject to Bankruptcy Rule 9006.

| Sale Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Remaining Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

5.      ***Successful Bidder***.  The Debtors shall file a notice setting forth the results of an Auction (if any) and identify any Successful Bidder (as defined in the Bidding Procedures) with the Court at least three business days prior to the respective Sale Hearing.

6.      If an Auction is cancelled, then the Debtors shall file a notice with the Court of such election within two business days of the determination of such election by the Debtors, after consultation with the Committee.

## II.    The Bidding Procedures.

7.      The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>** and incorporated by reference as though fully set forth herein, are hereby approved, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.  The Debtors are authorized to take all actions as are necessary or appropriate to implement the Bidding Procedures; *provided* that all such actions must be approved by the Special Committee of the Board of Directors of Debtor Celsius Network Limited (the "<u>Special Committee</u>").

8.      Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures, and an Auction (if any) shall be transcribed or recorded.

9.      Any insider (as that term is defined in 11 U.S.C. § 101(31) and excluding, for the avoidance of doubt, the Special Committee) of the Debtors or entity affiliated with any insider of

the Debtors, shall not (a) communicate with any Potential Bidder, Bidder, or Qualified Bidder about their respective potential Bid, Bid, or Qualified Bid, including any Stalking Horse Agreement, unless they receive the prior written consent of the Debtors and the Committee, (b) receive or be given access to any non-public information or documentation related to a Bid or potential Bid, unless they receive the prior written consent of the Debtors and the Committee, (c) without the prior written consent of the Debtors and the Committee, evaluate or engage in discussions with the Debtors or Committee about Qualified Bids, or (d) engage in any collusion or unfair practices with respect to bidding or a Sale, including any action that may chill the bidding or sale process; *provided* that to the extent that any insider with personal knowledge that is reasonably necessary for the Debtors' efforts to provide due diligence and/or management presentations to potential bidders, such insider is permitted to, through such insider's advisors, communicate with Potential Bidders to facilitate the due diligence process; *provided* that the Committee Professionals (as defined in the Bidding Procedures) shall be included in any such communications.

10.    Pursuant to the Bidding Procedures, the Debtors may, in a manner consistent with the exercise of their fiduciary duties as set forth in Section XVIII of the Bidding Procedures, and after consultation with the Committee, (a) determine which Qualified Bid is the highest or otherwise best offer, (b) at any time prior to entry of an Order of the Court approving a Successful Bid, reject any Bid (other than any Stalking Horse Bid (if any)) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) prior to conclusion of an Auction (if any), may impose such other terms and

conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

11.       No person or entity, other than any Stalking Horse Bidder (if any), shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### III.        Stalking Horse and Other Bid Protections.

12.       Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, in a manner consistent with the exercise of their fiduciary duties as set forth in Section XIX of the Bidding Procedures, after consultation with the Committee, to select one or more bidders to act as a Stalking Horse Bidder for some or all of the Assets, and enter into a Stalking Horse Agreement with such Stalking Horse Bidder; *provided* that, in the event that the Debtors seek to select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder, the Debtors shall promptly file with the Court and serve on the Notice Parties a notice of hearing on the same, and the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Bidder and Stalking Horse Agreement (including any Bid Protections) to be held on the first date the Court is available that is at least five business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. (prevailing Eastern Time) the day prior to such hearing.

## IV.        The Assumption and Assignment Procedures.

13.    The Assumption and Assignment Procedures below regarding the assumption and assignment of the Contracts proposed to be assumed by the Debtors and assigned to a Successful Bidder are approved.

a.    <u>**Cure Notice**</u>. As soon as practicable after entry of this Order, but no later than three business days (the "<u>Assumption and Assignment Service Date</u>"), the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice, attached as **<u>Exhibit 3</u>** to this Order on non-Debtor Contract counterparties (collectively, the "<u>Contract Counterparties</u>," and each, a "<u>Contract Counterparty</u>") and post the Cure Notice to the case website (https://cases.stretto.com/celsius).

b.    <u>**Content of Cure Notice**</u>. The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information: (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale (the "<u>Assigned Contracts</u>," each individually, a "<u>Assigned Contract</u>"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "<u>Cure Costs</u>"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "<u>Cure Objection</u>"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

c.    <u>**Cure Objections**</u>. Objections, if any, to a Cure Notice (each, a "<u>Cure Objection</u>") must: (i) be in writing; (ii) comply with the applicable provisions of the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to **December 19, 2022 at 4:00 p.m. (prevailing Eastern Time)**; *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.    <u>**Effects of Filing a Cure Objection**</u>. A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect

to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

e.    **Dispute Resolution**.  Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing, shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Successful Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

f.    **Supplemental Cure Notice**.   If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Successful Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Successful Bidder, at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modify a previously filed Cure Notice, including modifying the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

g.    **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any.  All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

h.    **Dispute Resolution of Supplemental Cure Objection**.  If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts.  If there is no such objection, then

the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.

i.      **No Cure Objections**. If there are no Cure Objections or Supplemental Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection or a Supplemental Cure Objection in accordance with the requirements set forth herein, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Cure Notice or Supplemental Cure Notice shall be controlling, as applicable, as to each Contract not subject to an unresolved Cure Objection or Supplemental Cure Objection notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

14.      Any objection to the ability of a Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, must be filed with the Court no later than the earlier of (a) the applicable Sale Objection Deadline or Supplemental Assigned Contract Hearing, as applicable, and (b) 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable.

15.      The inclusion of an Assigned Contract in the Cure Notice (or Supplemental Cure Notice) will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to any Definitive Purchase Agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement), which will be filed on the docket for these chapter 11 cases and provided to each Contract

11

Counterparty in accordance with paragraphs 10 and 11 hereof, will be assumed and assigned to the Successful Bidder.

**IV.     The Sale Notice.**

16.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable after entry of this Order, the Debtors shall serve the Bidding Procedures, the Sale Notice, and the Cure Notice upon the Notice Parties.  In addition, as soon as reasonably practicable after entry of this Order, the Debtors will post the Sale Notice on the Case Website and publish the Sale Notice, with any modifications necessary for ease of publication, once in *The New York Times* (national edition) and *CoinDesk* (CoinDesk.com), to provide notice to any other potential interested parties.

**V.     Other.**

17.     Consistent with the *Memorandum Opinion and Order Granting Motion to Approve Bidding Procedures in Connection with the Sale of Substantially All the Debtors' Assets* [Docket No. 1167], the Debtors shall confer with the Committee and U.S. Trustee to submit a separate proposed order regarding appointment of a consumer privacy ombudsman (the "Consumer Privacy Ombudsman") pursuant to section 332 of the Bankruptcy Code.

18.     Notwithstanding anything to the contrary in the *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 699] (the "Cash Management Order") and any other order of the Court relating to the subject matter thereof, the proceeds of a Sale (if any) will be deposited into an account in the name of the selling Debtor as set forth in the final order of the Court approving the Sale, and the proceeds of the Sale

shall only be used as set forth therein, and the Debtors and all parties in interest reserve any and all rights with respect thereto.

19.    Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the Debtors, any Stalking Horse Bidder (if applicable), the Committee, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to an Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of a Final Bid Deadline).

20.    To the extent there is any conflict between the terms of this Order and the Bidding Procedures attached as **Exhibit 1**, the terms of this Order shall govern.

21.    Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the rights of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

22.    Notice of this Motion satisfies the requirements of Bankruptcy Rule 6004(a).

23.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

25.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be immediately effective and enforceable upon entry hereof.

26.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## BIDDING PROCEDURES FOR THE
## POTENTIAL SALE OF CERTAIN OF THE DEBTORS' ASSETS

On July 13, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

On October [●], 2022, the Court entered the *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption And Assignment Procedures, and (V) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process for potential auctions (each auction, an "Auction") for the sale (each sale, a "Sale") of all or a portion of the Debtors' assets, properties, goodwill, and rights relating to their businesses (collectively, the "Assets"), including:

(i)     the assets, properties, goodwill, and rights relating to their businesses comprising the Debtors' retail platform business (the "Retail Platform Assets"), including customer earn accounts and coin balances, retail and institutional lending portfolio, swap services, staking platform, CelPay (the Debtors' cryptocurrency payment and transfer feature), and CelsiusX (the Debtors' decentralized finance arm that utilizes wrapped cryptocurrency tokens to bridge centralized finance infrastructure to decentralized finance

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bidding Procedures.

opportunities), and any cryptocurrencies or digital assets held by the Debtors (to the extent that they comprise property of the estate as such term is defined under section 541 of the Bankruptcy Code); and

(ii)    the GK8 Assets, as defined in the *Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* (the "GK8 Bidding Procedures Order") [Docket No. 687].[3]

To the extent that these Bidding Procedures require the Debtors to consult with or receive the consent of the Official Committee of Unsecured Creditors (the "Committee") in connection with making a determination or taking any action, or in connection with any other matter related to these Bidding Procedures or at an Auction (as defined below), if any, the Debtors shall do so in a regular and timely manner prior to making such determination or taking any such action. All decisions made by the Debtors pursuant to these Bidding Procedures must be approved by the Special Committee of the Board of Debtor Celsius Network Limited.

The Debtors and the Committee are evaluating whether the value of the estates would be maximized through a stand-alone restructuring or a sale of some or all of the Assets. Therefore, the bidding and sale process will be administered by the Debtors, in consultation with the Committee, and subject to the consent rights of the Committee herein. The Debtors may sell, some, all, or none of the Assets, and the parties may not give special consideration to any potential Bid proposed by an insider or an affiliate of any insider (as such term is defined in 11 U.S.C. §101(31)). Without the prior written consent of the Debtors and the Committee, no insider of the Debtors or entity affiliated with any insider of the Debtors may (i) communicate with any Potential Bidder or Bidder about its potential Bid or Bid, or (ii) receive or be given access to any non-public information or documentation related to a Bid or potential Bid.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

## I.    Important Dates and Deadlines, including Contingent Dates for the Retail Platform Assets

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers to purchase the Debtors' Assets. The Assets will be offered for sale

---

[3]    These Bidding Procedures only apply to the bidding and sale of the GK8 Assets to the extent they are not sold pursuant to the GK8 Bidding Procedures Order. The sale of the Debtors' cryptocurrency mining business and related assets, properties, goodwill, and rights relating to their businesses (collectively, the "Mining Assets") under these Bidding Procedures will be overseen by the Mining Restructuring Officer.

through an Auction.  The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) for the assets in any combination.

The Bidding Procedures provide separate deadlines for the sale of the Retail Platform Assets and any Remaining Assets (as defined below), and allow flexibility to sell the Assets together or separately, depending on which transaction creates the most value.

If the Debtors and the Committee jointly determine in their reasonable discretion that it is in the best interests of the Debtors' estates to conduct a sale of the Retail Platform Assets independently from the Debtors' other Assets, then the Debtors will file a Notice of Auction for Sale of Retail Platform Assets on the docket on or before December 13, 2022, and provide all interested parties with notice of an Auction (email being sufficient), including the date, time, and place of an Auction (if one is held), the respective deadlines related thereto, and no other or further notice of such Auction shall be required.

The key dates and deadlines for the bidding and sale of the Retail Platform Assets, which are subject to the right of the Debtors, with the consent of the Committee (such consent not to be unreasonably withheld), to modify the following dates as provided herein, are as follows:

| Event or Deadline | Date and Time[4] |
|---|---|
| Initial Bid Deadline for Retail Platform Assets | November 21, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Final Bid Deadline for Retail Platform Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction for Retail Platform Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Retail Platform Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

There will be a subsequent process to solicit bids for the Sale of the Debtors' Assets, including the Mining Assets (all remaining unsold Assets, the "Remaining Assets").  If any of the Retail Platform Assets are not sold pursuant to a Sale in the process reflected above, then the Remaining Assets shall include such unsold Retail Platform Assets.

---

[4]    All dates and deadlines are subject to Bankruptcy Rule 9006.

The key dates and deadlines for the bidding and sale of the Remaining Assets, which are subject to the right of the Debtors, with the consent of the Committee (such consent not to be unreasonably withheld), to modify the following dates as provided herein, are as follows:

| Event or Deadline | Date and Time[5] |
|---|---|
| Final Bid Deadline for Remaining Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction for Remaining Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Remaining Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

## II.     Public Announcement of Auction.

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall (a) serve on the Notice Parties (as defined below) a notice of the potential Auction and Sale (the "Sale Notice"), (b) post the Sale Notice on their restructuring website, https://cases.stretto.com/celsius, (c) publish the Sale Notice, with any modifications necessary for ease of publication, once in the *The New York Times* (national edition) and *CoinDesk* (CoinDesk.com), to provide notice to any other potential interested parties.

## III.     Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than any Stalking Horse Bidder) interested in purchasing the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

    a.     an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors, in consultation with the Committee;

    b.     preliminary proof by the Potential Bidder of its financial capacity to close the proposed transaction (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the

---

[5]     All dates and deadlines are subject to Bankruptcy Rule 9006.

4

purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be acceptable to the Debtors, in consultation with the Committee;

c.        preliminary proof by the Potential Bidder of its ability to receive any and all necessary governmental, licensing, regulatory, and other approvals, and to provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such Potential Bidder, pursuant to section 365 of the Bankruptcy Code, in connection with any transaction;

d.        identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity;

e.        a list with the names and contact information for any financial, legal and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale; and

f.        a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct.

The Committee's counsel and other professional advisors retained in these chapter 11 cases (the "Committee Professionals")[6] may communicate with, meet with, and provide information to Potential Bidders, subject to any confidentiality protocols established with the Debtors. The Committee Professionals will reasonably consult with, and reasonably coordinate with, the Debtors' professionals regarding the marketing process contemplated by the Bidding Procedures (including communications involving, and any information provided to, Potential Bidders). Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, the Committee, or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale. Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors shall (i) provide copies of all Preliminary Bid Documents to the Committee and (ii) determine, in consultation with the Committee, and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents. In the event that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Committee of such determination (and the reasons therefor). Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors may submit bids to purchase the Debtors' Assets. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

The Debtors will provide regular updates to the Committee Professionals regarding Potential Bidders, including a telephone conference to occur not less than once per week, and allow

---

[6]    The Committee Professionals include White & Case, LLP, Perella Weinberg Partners LP, and M3 Partners, LP.

the Committee Professionals to participate in all management presentations and formal meetings that include Potential Bidders.

## IV.     Non-Binding Indications of Interest for Retail Platform Assets

Any party interested in purchasing some or all of the Retail Platform Assets shall submit a non-binding indication of interest (an "Indication of Interest") (email being sufficient) to (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com), and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); (b) the Debtors' investment bank, Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), Sean Carmody (scarmody@centerview.com) and Seth Lloyd (slloyd@centerview.com); (c) counsel to the Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and 200 S. Biscayne Blvd, Miami FL 33131, Attn: Gregory Warren (gregory.warren@whitecase.com); and (d) the Committee's investment banker, Perella Weinberg Partners, LP 767 Fifth Avenue, 5th Floor, New York, New York 10153, Attn: Kevin Cofsky (kcofsky@pwpartners.com) and Matthew Rahmani (mrahmani@pwpartners.com) so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on November 21, 2022 (the "Initial Bid Deadline")**. The Initial Bid Deadline may be extended without notice or hearing by the Debtors, after consultation with the Committee.

The Indication of Interest should (i) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, which non-cash components may include equity in a Debtor, a reorganized Debtor, or another entity proposed by a Potential Bidder, as applicable, and (ii) identify any proposed conditions to closing the transaction.

Submitting an Indication of Interest by the Initial Bid Deadline does not obligate the submitting party to submit a formal bid or participate in the sale process and does not exempt the submitting party from also having to submit a Qualified Bid by the Final Bid Deadline to participate in an Auction, each as defined below. For the avoidance of any doubt, any formal Bid for the Retail Platform Assets must be submitted by the Final Bid Deadline of December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) even if such party submits an Indication of Interest.

## V.     Obtaining Due Diligence Access.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, in consultation with the Committee, including any Stalking Horse Bidder (if any), and the Committee Professionals shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. All due diligence requests must be directed to Centerview Partners LLC ("Centerview") as set forth in Section V.A. below. The Debtors will

provide to each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any insider (as defined in section 101(31) of the Bankruptcy Code), affiliate of any insider, account holder, customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors; *provided* that pursuant to these Bidding Procedures (including the confidentiality protocols established with the Debtors) and in compliance with any applicable Confidentiality Agreement, any Potential Bidder may contact, initiate, or engage in discussions with the Committee Professionals, subject to the Committee's obligations under the Bidding Procedures Order. The due diligence period will end on the respective Final Bid Deadline (as defined herein) and, subsequent to the Final Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement, and the Committee.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders that, in the Debtors' reasonable business judgment and in consultation with the Committee have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale. For any Bidder that is a competitor, account holder, or customer of the Debtors or is affiliated with any competitors, account holders, or customers of the Debtors, the Debtors reserve the right, in consultation with the Committee, to withhold or modify any diligence materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

**A.** **Communications with Potential Bidders (including Qualified Bidders).**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Centerview (email being sufficient).

> **Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Sean Carmody (scarmody@centerview.com), Ryan Kielty (rkielty@centerview.com), Seth Lloyd (slloyd@centerview.com), Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

**B.    Due Diligence from Potential Bidders (including Qualified Bidders).**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors, in consultation with the Committee, or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated transaction.  Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Committee, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

**VI.    Stalking Horse Bidders and Bid Protections.**

The Debtors shall be authorized, but not obligated, in an exercise of their business judgment, after consultation with the Committee, to select one or more Qualified Bidders to act as stalking horse bidders in connection with a Sale (each, a "Stalking Horse Bidder"), and enter into purchase agreement with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); *provided* that, in the event the Debtors seek to select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder, the Debtors shall promptly file with the Court and serve on the Notice Parties a notice of hearing on the same and the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Bidder and Stalking Horse Agreement to be held on the first date the Court is available that is at least five business days after filing such notice, with objections due at 4:00 p.m. (prevailing Eastern Time) the day prior to such hearing.  The bid protections provided in a Stalking Horse Agreement (if any) shall be described in detail, including the amount and calculation of such bid protections, in the notice of hearing to consider the selection of the Stalking Horse Bidder and Stalking Horse Agreement and such bid protections shall be subject to the approval of the Court in all respects.

**VII.    Bid Requirements.**

To be selected to acquire some or all of the Assets or to be eligible to participate in an Auction, if applicable, a Potential Bidder (other than a Stalking Horse Bidder) must deliver to the Debtors and their advisors a written, irrevocable, and binding offer for purchase of the Assets (the "Bid") that must be determined by the Debtors in their business judgment, in consultation with the Committee, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

    a.    **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties.  Each Bid must also include contact information for the specific person(s) whom Centerview and Kirkland & Ellis LLP ("Kirkland") should contact regarding such Bid;

b.      **Identity of Assets and Purchase Price:** Each Bid must clearly state which Assets (including Mining Assets and Retail Platform Assets) the Potential Bidder seeks to acquire along with which liabilities and obligations the Potential Bidder agrees to assume.  Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, which non-cash components may include equity in a Debtor, a reorganized Debtor, or another entity proposed by a Potential Bidder as applicable (collectively, the "Purchase Price").  The Purchase Price should be a single value in U.S. Dollars for the total enterprise value of the Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis.

c.      **Good Faith Deposit:**  Each Bid must be accompanied must be accompanied by a cash deposit equal to the greater of $20,000,000.00 and ten percent of non-coin related value in cash, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors (the "Good Faith Deposit").  To the extent a Qualified Bid is modified before, during, or after an Auction in any manner that increases the purchase price contemplated by such Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder (as defined below) increase its Good Faith Deposit so that it equals ten percent of the increased Purchase Price;

d.      **Markup of the Purchase Agreement:** Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, the form of which will be provided to any Potential Bidder prior to the respective Final Bid Deadline and in the case of an Auction with a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits, schedules and ancillary agreements related thereto and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome or otherwise materially inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment and after consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome;

e.      **Committed Financing:** Each Bid must include committed financing, documented to the Debtors' reasonable satisfaction, after consultation with the Committee, that demonstrates the Potential Bidder has received sufficient debt and equity funding commitments to satisfy such Potential Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Centerview and Kirkland should contact regarding such committed financing. Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Committee;

f.  **Pro Forma Capital Structure:** Each Bid must include a description of the Bidder's pro forma capital structure;

g.  **Contingencies; No Financing or Diligence Outs:** Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of the specified representations and warranties, which shall not be more burdensome, in the Debtors' reasonable business judgment, after consultation with the Committee, than those contemplated by the Stalking Horse Bid, if any, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the respective Final Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid;

h.  **As-Is, Where-Is:** Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the assets or completeness of any information provided in connection therewith or an Auction, except as expressly stated in the Potential Bidder's proposed purchase agreement;

i.  **Authorization:** Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

j.  **Adequate Assurance of Future Performance:** Each Bid must (i) identify the Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder and (iii) demonstrate, in the Debtors' reasonable business judgment after consultation with the Committee, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts;

k.  **Government Approvals:** Each Bid, including the Stalking Horse Bid (if any), must include (i) a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors after consultation with the Committee, of the ability to obtain such consents or approvals in a timely manner and (ii) a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

l.      **Government Approvals Timeframe:** Each Bid must set forth (i) an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale, and (ii) the basis for such estimate;

m.     **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment:** Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law.  Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures;

n.      **Irrevocable:** A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder (as defined herein);

o.      **No Fees:** Other than a Stalking Horse Bidder (solely to the extent the Court approves any Bid Protections under the Stalking Horse Agreement), each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for breakup fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, after consultation with the Committee, to provide certain bid protections to one or more Stalking Horse Bidders solely in accordance with these Bidding Procedures;

p.      **Adherence to Bidding Procedures:** By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the sale process, or an Auction (if held), after conclusion of the selection of the Successful Bidder (as defined herein);

q.      **Consent to Jurisdiction:** The Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, an Auction (if held), the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable;

r.      **Backup Bid:** Each Bid shall provide that the Potential Bidder will serve as a backup bidder if the Potential Bidder's bid is the next highest or otherwise best bid;

s.      **Expected Closing Date:** A Bid by a Potential Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a timeframe acceptable to the Debtors, after consultation with the Committee; and

t.      **Employees:**  Each Bid must detail the treatment of the any of the Debtors' employees.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, in consultation with the Committee, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, in consultation with the Committee, be deemed to be "Qualified Bidders."

The Debtors shall provide regular updates to the Committee Professionals on potential Bids, Bids, and Qualified Bids, including a telephone conference to occur not less than once per week, and allow the Committee Professionals to participate in all management presentations and formal meetings that include Potential Bidders. For the avoidance of doubt, the Committee Professionals shall not participate in presentations and meetings between the Debtors' advisors and the Special Committee of the Board of Directors of Debtor Celsius Network Limited.

Within one business day after the respective Final Bid Deadline, the Debtors shall determine, after consultation with the Committee, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in an Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the respective Final Bid Deadline (as defined below) that does not satisfy the requirements of a Qualified Bid, the Debtors, in consultation with the Committee, may (i) provide the Potential Bidder with the opportunity to remedy any deficiencies prior to an Auction, and (ii) in consultation with the Committee, waive certain requirements for good cause. A Stalking Horse Bidder (if any) shall be deemed to be a Qualified Bidder, a Stalking Horse Bid shall be deemed a Qualified Bid, and a Stalking Horse Bidder (if any) may participate in an Auction with respect to the Debtors' assets.

## VIII.    Final Bid Deadlines.

Binding Bids to acquire some or all of the Retail Platform Assets must be received (email being sufficient) by (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com); and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); (b) the Debtors' investment bank Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), Sean Carmody (scarmody@centerview.com) and Seth Lloyd (slloyd@centerview.com); (c) counsel to the Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and 200 S. Biscayne Blvd, Miami FL 33131, Attn: Gregory Warren (gregory.warren@whitecase.com); and (d) the Committee's investment banker, Perella Weinberg Partners, LP, 767 Fifth Avenue, 5th Floor, New York, New York 10153, Attn: Kevin Cofsky (kcofsky@pwpartners.com) and Matthew Rahmani (mrahmani@pwpartners.com); so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on December 12, 2022 (the "Final Bid Deadline for Retail Platform Assets")**.

Binding Bids to acquire the Remaining Assets,[7] must be received (email being sufficient) by (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com); and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); (b) the Debtors' investment bank Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), Sean Carmody (scarmody@centerview.com), and Seth Lloyd (slloyd@centerview.com); and (c) counsel to the Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and 200 S. Biscayne Blvd, Miami FL 33131, Attn: Gregory Warren (gregory.warren@whitecase.com); and (d) the Committee's investment banker, Perella Weinberg Partners, LP, 767 Fifth Avenue, 5th Floor, New York, New York 10153, Attn: Kevin Cofsky (kcofsky@pwpartners.com) and Matthew Rahmani (mrahmani@pwpartners.com); so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on December 12, 2022 (the "Final Bid Deadline for Remaining Assets.")**[8]

## IX.    Evaluation of Qualified Bids.

Prior to an Auction (if held) the Debtors, the Committee, and their advisors will evaluate Qualified Bids, and the Debtors will identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment after consultation with the Committee, the highest or otherwise best Bid (the "Starting Bid"). In the event a Stalking Horse Bidder is selected, the Starting Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the bid protections (if any), *plus* either $500,000 or such other amount as determined by the Debtors in consultation with the Committee. In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment, in consultation with the Committee, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtors, in consultation with the Committee, may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different assets. In conducting the evaluation of the Qualified Bids, the Debtors and the Committee will take into consideration the following non-exclusive factors:

a.      the amount of the Purchase Price of the Qualified Bid;

b.      the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Bid Protections;

---

[7]    The binding Bid may seek to acquire any Retail Platform Assets not sold pursuant to a Sale Order as part of its Bid to acquire the Remaining Assets.

[8]    Both the Final Bid Deadline for Retail Platform Assets and the Final Bid Deadline for Remaining Assets are each referred to herein as a "Final Bid Deadline."

c.    the proposed changes or modifications to the form purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus any Stalking Horse Agreements, to the extent applicable;

d.    the Assets and liabilities included or excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

e.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

f.    the certainty of a Qualified Bid leading to a confirmed plan (whether the Plan or some other plan);

g.    the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

h.    any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant.

Within 24 hours of the determination of the Starting Bid, but in no event later than 24 hours before an Auction, the Debtors will (1) notify any Stalking Horse Bidder(s) as to which Qualified Bid is the Starting Bid and (2) distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

Within 24 hours after the Final Bid Deadline, but in no event later than 24 hours before the start of the Auction (if any), the Debtors shall provide the identities of any Qualified Bidders on a confidential basis to (1) counsel to the Office of the Attorney General for the State of Texas, (2) counsel to the National Association of Attorneys General, and (3) counsel to the Vermont Department of Financial Regulation.

If any Bid is determined by the Debtors, after consultation with the Committee, not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five business days after the Final Bid Deadline.

**X.**    **No Qualified Bids.**

If no Qualified Bids other than a Stalking Horse Bid (if applicable) are received by the applicable Final Bid Deadline, then the Debtors may cancel the applicable Auction and may decide, in the Debtors' reasonable business judgment, with the consent of the Committee (such consent not to be unreasonably withheld), to designate a Stalking Horse Bid as the Successful Bid and pursue entry of a Sale Order approving a Sale of the respective Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtors shall promptly file notice of cancellation of any Auction and designation of the Stalking Horse Bid as the Successful Bid with the Bankruptcy Court.

**XI.**      **Auction.**

If one or more Qualified Bids are received by the respective Final Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct an Auction with respect to such Assets.  An Auction for the Retail Platform Assets shall commence on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**.  An Auction for the Remaining Assets shall commence on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**.  Auctions will be conducted at such times via remote video, or such later time or other place as the Debtors determine, in consultation with the Committee, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.

Any Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.  except as otherwise provided herein, an Auction will be conducted openly;

b.  only Qualified Bidders, including any Stalking Horse Bidders (if any), shall be entitled to bid at an Auction;

c.  the Qualified Bidders, including any Stalking Horse Bidders (if any), shall appear at an Auction via remote video or through duly authorized representatives via remote video at an Auction;

d.  only the following parties shall be permitted to attend an Auction:  the U.S. Trustee, the Examiner, and any consumer privacy ombudsman appointed pursuant to section 332 of the Bankruptcy Code in these chapter 11 cases (each of the foregoing on a listen-only basis); authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, the Committee and their respective advisors, and any other creditor party who makes a written request upon the Debtors to attend an Auction; *provided* that such request shall be actually received by the Debtors' counsel no later than 24 hours prior to the commencement of an Auction; *provided*, *further* that the Debtors reserve the right to retract their permission at any point during an Auction if such creditor party does not act in good faith and in orderly fashion during an Auction;

e.  Bids at an Auction, including any Bids by any Stalking Horse Bidder (if any), must be made in minimum increments of $500,000 (or such other amount as the Debtors may determine after consultation with the Committee) of additional value (including after payment of the Bid Protections to any Stalking Horse Bidders, if applicable);

f.  each Qualified Bidder will be permitted a reasonable time to respond to previous bids at an Auction, as determined by the Debtors, in consultation with the Committee;

g.  the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at an Auction;

h.   no Qualified Bidder (or its representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in an Auction, and each Qualified Bidder will be required to confirm on the record of an Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Backup Bid (each as defined herein); *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors approve such coordination in their reasonable discretion, in consultation with the Committee;

i.   an Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at an Auction to the then prevailing highest Bid, subject to the Debtors' right, in consultation with the Committee, to require last and final Bids to be submitted on a "blind" basis;

j.   the Court and the Debtors will not consider bids made after an Auction has been closed;

k.   the Debtors reserve the right, in their reasonable business judgment, in consultation with the Committee, to adjourn an Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Committee, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount.  In the event an Auction is adjourned, the Debtors shall promptly file a Notice with Court of such adjournment and include the date for the continued Auction; and

l.   an Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors following consultation with the Committee, from time to time on the record at an Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any other order of the Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) reasonably determined by the Debtors to further the goal of attaining the highest or otherwise best offer for the assets, as applicable.

For the avoidance of doubt, nothing in an Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, with notice to the Committee).

## XII.   Acceptance of the Successful Bid.

An Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase the respective Assets in the Debtors' reasonable business judgment, in a manner

consistent with the exercise of their fiduciary duties, after consultation with the Committee, and outlined below in further detail, (a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, an Auction will be closed.  When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid documents; and (d) the tax consequences of such Qualified Bid.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the applicable Assets.  The Debtors shall file a notice setting forth the results of an Auction (if any) and identify any Successful Bidder with the Court at least three business days prior to the respective sale hearing (each sale hearing, a "Sale Hearing") and shall seek Bankruptcy Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "Sale Order").  For the avoidance of doubt, a Sale Order shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Backup Bid (defined below), the Debtors shall not solicit or accept any further bids or offers to submit a bid after such selection for the respective Assets; *provided* that notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

The Debtors shall, subject to the Committee's consent (such consent shall not be unreasonably withheld) seek to sell the Retail Platform Assets at the Sale Hearing for the Retail Platform Assets.  If any of the Retail Platform Assets are sold at such Sale Hearing, they will no longer be considered part of the Remaining Assets subject to a future Sale and must be removed from any pending Bid for the Remaining Assets.

Within one business day of the selection of the Successful Bidder, such Successful Bidder shall make a cash deposit that, when aggregated with its Good Faith Deposit, is in an amount equal to ten percent of the Successful Bid, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement.  Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII.    Designation of Backup Bidder.

The Qualified Bidder with the second highest or otherwise best bid or combination of bids (the "Backup Bid") to purchase any or all of the applicable Assets (the "Backup Bidder") will be determined by the Debtors, in consultation with the Committee, at the conclusion of an Auction and will be announced at that time to all the Qualified Bidders participating in an Auction.  If for any reason a Successful Bidder fails to consummate the purchase of such Assets within the time

permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Assets, and the Backup Bidder shall be deemed a Successful Bidder for such Assets and shall be required to consummate any Sale with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a notice with the Court that such Backup Bidder has been deemed the Successful Bidder. The Backup Bidder shall be required to keep its Backup Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder.  The Backup Bidder's Good Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

XIV.    **Approval of Sale.**

The Debtors will present the results of an Auction (if any) to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the respective Auction, including, among other things, that: (a) an Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (b) an Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (d) consummation of any Sale as contemplated by the Successful Bid in an Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' respective Assets, and is in the best interests of the Debtors and their estates.

If the Debtors timely file a Notice of Auction for Sale of Retail Platform Assets, then a Sale Hearing for the Retail Platform Assets will be scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

The Sale Hearing for the Remaining Assets is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York

XV.    **Return of Good Faith Deposit.**

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable Assets.  If a Successful Bidder fails to consummate any Sale, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors, and all parties in interest, and the Debtors specifically, reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five business days after the respective Auction or upon the permanent withdrawal of the proposed Sale, and the Good Faith Deposit of any Backup Bidders will be returned within five business days after the consummation of any Sale or upon the permanent withdrawal of the proposed Sale.

**XVI.    Reservation of Rights.**

The Debtors, in consultation with the Committee, reserve their rights to modify these Bidding Procedures in their reasonable business judgment in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before an Auction, additional customary terms and conditions on a Sale, including, without limitation: (a) amending or extending the deadlines set forth in these Bidding Procedures related to any of the Assets, including those specifically associated with the sale of the Retail Platform Assets, (b) determining whether to sell the Retail Platform Assets separately or collectively with other Assets; (c) adjourning an Auction; (d) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting an Auction; (e) canceling an Auction; (f) rejecting any or all Bids or Qualified Bids; and (g) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. For the avoidance of doubt, the Debtors reserve the right, with consent from the Committee, at any point prior to the selection of a Successful Bidder to terminate the Sale processes contemplated hereunder with respect to any or all of the Debtors' Assets and seek to sell any or all assets pursuant to section 363(b) of the Bankruptcy Code.

**XVII.    Consent to Jurisdiction**

All Qualified Bidders at an Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to a Sale, the respective Auction and the construction and enforcement of these Bidding Procedures, or any written indications of interest, Preliminary Bid Documents, or the Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, an Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**XVIII.    Fiduciary Out.**

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any Sale to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided* that the Debtors shall consult with the Committee promptly after exercising any fiduciary out in accordance with these Bidding Procedures, and nothing in this Section XVIII shall modify or supersede any consultation or consent rights of the Committee set forth in these Bidding Procedures or the Bidding Procedures Order.

Furthermore, notwithstanding anything to the contrary in these Bidding Procedures, through the date of an Auction, nothing in these Bidding Procedures or the Bidding Procedures

Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the Committee and the United States Trustee), or any other entity regarding Alternate Proposals. The Debtors shall promptly distribute any Alternate Proposal (and any response thereto) to the Committee.

## **Exhibit 2**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF AUCTION FOR THE POTENTIAL
SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND
CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

       **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for the purchase of certain of the Debtors' assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of New York (the "Court") by entry of an order on [●], 2022 [Docket No. [●]] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

       **PLEASE TAKE FURTHER NOTICE** that the Initial Bid Deadline is **November 21, 2022, at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity interested in purchasing some or all of the Retail Platform Assets must comply with the requirements set forth in the Bidding Procedures

       **PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for some or all of the Retail Platform Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

any person or entity that wishes to participate in an Auction for the Retail Platform Assets must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors may conduct an Auction for the Retail Platform Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors expect to seek approval of the Sale (if any) of some or all of the Retail Lending Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for the Remaining Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity that wishes to participate in an Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may conduct an Auction for the Remaining Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video or such other means.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of the Sale (if any) of the Remaining Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **December 19, 2022 at 4:00 p.m.** (prevailing Eastern Time).

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Sale Order (if any) is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Agreement (in the case where a Stalking Horse Bidder is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if a Stalking Horse Bidder is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Effective Date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. All rights of any party to set off any claims, debts or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the Effective Date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to Assumed Liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Effective Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets prior to the Effective Date. The Stalking Horse Bidder would not have entered into the Stalking Horse Agreement but for the foregoing protections against potential claims based upon "successor liability" theories.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, subject to the Bidding Procedures, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: (a) free of charge upon request to Stretto, Inc. (the notice and claims agent retained in these chapter 11 cases) by (a) calling (855) 423-1530 (Domestic) or (949) 669-5873 (International); (b) visiting the Debtors' restructuring website at (https://cases.stretto.com/Celsius); or (c) for a fee via PACER by visiting (https://www.deb.uscourts.gov/).

*[Remainder of page intentionally left blank]*

New York, New York
Dated: [●], 2022

/s/ DRAFT

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 3**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

---

**PLEASE TAKE NOTICE** that on October [●], 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof and (IV) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] authorizing the Debtors to solicit offers for the purchase of certain of the Debtors' assets and, if necessary, to conduct an auction (the "Auction") to select the party to purchase such assets. An Auction (if any) will be governed by the bidding procedures (attached to the Bidding Procedures Order as **Exhibit 1** (the "Bidding Procedures").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to a Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale. The Assigned Contracts Schedule can also be viewed on the Debtors' case website (https://cases.stretto.com/Celsius). The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assigned Contract, be filed with the Court **no later than December 19, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") and if you object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, be filed with the Court **no later than the earlier of (a) the Cure Objection Deadline or Supplemental Assigned Contract Hearing, as applicable**, **and (b) 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable**, in each case, by the following parties: (a)  counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com; and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com) and (b) Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn.: Shara Cornell, Mark Bruh, and Brian S. Masumoto.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on any grounds, including that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assigned Contract are reserved.  Furthermore, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy

Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: [●], 2022

/s/ DRAFT
_____

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit B

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) APPROVING THE
### BIDDING PROCEDURES IN CONNECTION
### WITH THE SALE OF SUBSTANTIALLY ALL OF THE
### DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES WITH
### RESPECT THERETO, (III) APPROVING THE FORM AND MANNER
### OF NOTICE THEREOF, (IV) APPROVING CONTRACT ASSUMPTION
### AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the Bidding Procedures in connection with the sale of substantially all of the Debtors' Assets, substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures"), (b) scheduling certain dates and deadlines in connection with the Bidding Procedures, (c) approving procedures for assuming and assigning certain executory contracts and unexpired leases, and certain related notices, (d) approving the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, (e) approving the Cure Notice, substantially in the form attached hereto as **Exhibit 3**, and (f) granting related relief, all as more fully set forth in the Motion; and upon the Campagna

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

A.      Jurisdiction and Venue.  The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Bases for Relief.   The bases for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006(a), 9007, and 9014, and Local Rules 2002-1, 6004-1, 6006-1, 9006-1, 9013-1, and the *Guidelines for the Conduct of Asset Sales* established and adopted by the Court on November 19, 2009 pursuant to General Order M-383, and as updated on June 17, 2013.

C.      Notice of the Bidding Procedures Motion.  As reflected in the certificate of service filed on October 7, 2022 [Docket No. 991] (the "Certificate of Service"), the Motion and the notice of the Hearing was served on the Court's electronic filing system and the Notice Parties.  The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

D.      Bidding Procedures.  The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest.

E.      Assumption and Assignment Procedures.  The Cure Notice is reasonably calculated to provide counterparties to the Contracts to be assumed or assumed and assigned with proper notice of the intended assumption or assumption and assignment of their Contracts, any cure amounts, and the Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures shall be required.

F.      Sale Notice.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of an Auction, including the date, time, and place of an Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of an Auction shall be required.

G.      Notice of Auction for Sale of Retail Platform Assets.  If the Debtors and the Official Committee of Unsecured Creditors (the "Committee") jointly determine in their

reasonable discretion that a sale of the Retail Platform Assets (as defined in the Bidding Procedures) independent from the Debtors' other Assets will maximize the value of the Debtors' estates, then the Debtors will file a Notice of Auction for Sale of Retail Platform Assets on the docket on or before December 13, 2022, and provide all interested parties with notice of an Auction (email being sufficient), including the date, time, and place of an Auction (if one is held), the respective deadlines related thereto, and no other or further notice of such Auction shall be required.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.       The Motion is granted as set forth herein.

2.       All objections, statements, and reservations of rights to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are overruled and denied on the merits with prejudice.

**I.       Important Dates and Deadlines.**

3.       The following dates and deadlines are established for the Debtors' process to solicit bids for the Sale of the Assets comprising the Debtors' retail platform business (the "Retail Platform Assets"), which includes customer earn accounts and coin balances, retail and institutional lending portfolio, swap services, staking platform, CelPay (the Debtors' cryptocurrency payment and transfer feature), and CelsiusX (the Debtors' decentralized finance arm that utilizes wrapped cryptocurrency tokens to bridge centralized finance infrastructure to decentralized finance opportunities), and any cryptocurrencies or digital assets held by the Debtors (to the extent that they comprise property of the estate as such term is defined under section 541 of the Bankruptcy Code). The below dates and deadlines are subject to the right of the Debtors, with the consent of the Committee (such consent not to be unreasonably withheld),

to modify the following dates, *provided* that the Debtors shall provide notice of such modified

dates in accordance with the terms of this Order:

| Event or Deadline | Date and Time[3] |
|---|---|
| Initial Bid Deadline for Retail Platform Assets | November 21, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Final Bid Deadline for Retail Platform Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if necessary) for Retail Platform Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Retail Platform Assets[4] | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

4.      The following dates and deadlines are established for the Debtors' process to

solicit bids for the Sale of the Debtors' Assets (the "Remaining Assets"), which shall include the

Mining Assets and the Retail Platform Assets to the extent that that the Retail Platform Assets

are not sold at the Sale Hearing set forth above:

| Event or Deadline | Date and Time[5] |
|---|---|
| Final Bid Deadline for Remaining Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction for Remaining Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |

---

[3]    All dates and deadlines are subject to Bankruptcy Rule 9006.

[4]    Pursuant to the Bidding Procedures, the Debtors shall, subject to the consent of the Committee (such consent not to be unreasonably withheld), seek to sell the Retail Platform Assets at this Sale Hearing.

[5]    All dates and deadlines are subject to Bankruptcy Rule 9006.

| Cure Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
|---|---|
| Sale Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Remaining Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

5.        ***Successful Bidder***.  The Debtors shall file a notice setting forth the results of an Auction (if any) and identify any Successful Bidder (as defined in the Bidding Procedures) with the Court at least three business days prior to the respective Sale Hearing.

6.        If an Auction is cancelled, then the Debtors shall file a notice with the Court of such election within two business days of the determination of such election by the Debtors, after consultation with the Committee.

**II.      The Bidding Procedures.**

7.        The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>** and incorporated by reference as though fully set forth herein, are hereby approved, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.  The Debtors are authorized to take all actions as are necessary or appropriate to implement the Bidding Procedures; *provided* that all such actions must be approved by the Special Committee of the Board of Directors of Debtor Celsius Network Limited (the "<u>Special Committee</u>").

8.        Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures, and an Auction (if any) shall be transcribed or recorded.

9.      Any insider (as that term is defined in 11 U.S.C. § 101(31) and excluding, for the avoidance of doubt, the Special Committee) of the Debtors or entity affiliated with any insider of the Debtors, shall not (a) communicate with any Potential Bidder, Bidder, or Qualified Bidder about their respective potential Bid, Bid, or Qualified Bid, including any Stalking Horse Agreement, unless they receive the prior written consent of the Debtors and the Committee, (b) receive or be given access to any non-public information or documentation related to a Bid or potential Bid, unless they receive the prior written consent of the Debtors and the Committee, (c) without the prior written consent of the Debtors and the Committee, evaluate or engage in discussions with the Debtors or Committee about Qualified Bids, or (d) engage in any collusion or unfair practices with respect to bidding or a Sale, including any action that may chill the bidding or sale process; *provided* that to the extent that any insider with personal knowledge that is reasonably necessary for the Debtors' efforts to provide due diligence and/or management presentations to potential bidders, such insider is permitted to, through such insider's advisors, communicate with Potential Bidders to facilitate the due diligence process; *provided* that the Committee Professionals (as defined in the Bidding Procedures) shall be included in any such communications.

10.      Pursuant to the Bidding Procedures, the Debtors may, in a manner consistent with the exercise of their fiduciary duties as set forth in Section XVIII of the Bidding Procedures, and after consultation with the Committee, (a) determine which Qualified Bid is the highest or otherwise best offer, (b) at any time prior to entry of an Order of the Court approving a Successful Bid, reject any Bid (other than any Stalking Horse Bid (if any)) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors'

estates and their creditors, and (c) prior to conclusion of an Auction (if any), may impose such

other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best

interests of the Debtors' estates in these chapter 11 cases.

11.      No person or entity, other than any Stalking Horse Bidder (if any), shall be entitled

to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or

payment, and by submitting a bid, such person or entity is deemed to have waived their right to

request or to file with this Court any request for expense reimbursement or any fee of any nature

in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or

otherwise.

**III.**         **Stalking Horse and Other Bid Protections.**

12.      Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, in

a manner consistent with the exercise of their fiduciary duties as set forth in Section XIX of the

Bidding Procedures, after consultation with the Committee, to select one or more bidders to act

as a Stalking Horse Bidder for some or all of the Assets, and enter into a Stalking Horse

Agreement with such Stalking Horse Bidder; *provided* that, in the event that the Debtors seek to

select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse

Agreement with such Stalking Horse Bidder, the Debtors shall promptly file with the Court and

serve on the Notice Parties a notice of hearing on the same, and the Court shall hold a hearing to

consider approval of the designation of the Stalking Horse Bidder and Stalking Horse Agreement

(including any Bid Protections) to be held on the first date the Court is available that is at least

five business days after filing the applicable Stalking Horse Notice, with objections due at 4:00

p.m. (prevailing Eastern Time) the day prior to such hearing.

## IV.        The Assumption and Assignment Procedures.

13.    The Assumption and Assignment Procedures below regarding the assumption and assignment of the Contracts proposed to be assumed by the Debtors and assigned to a Successful Bidder are approved.

a.    **Cure Notice**. As soon as practicable after entry of this Order, but no later than three business days (the "Assumption and Assignment Service Date"), the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice, attached as **Exhibit 3** to this Order on non-Debtor Contract counterparties (collectively, the "Contract Counterparties," and each, a "Contract Counterparty"), and post the Cure Notice to the case website (https://cases.stretto.com/celsius).

b.    **Content of Cure Notice**. The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information: (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale (the "Assigned Contracts," each individually, a "Assigned Contract"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

c.    **Cure Objections**. Objections, if any, to a Cure Notice (each, a "Cure Objection") must: (i) be in writing; (ii) comply with the applicable provisions of the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to **December 19, 2022 at 4:00 p.m. (prevailing Eastern Time)**; *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.    **Effects of Filing a Cure Objection**. A properly filed Cure Objection will

reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

e.    **Dispute Resolution**.  Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing, shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Successful Bidder's reasonable discretion.   To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

f.    **Supplemental Cure Notice**.  If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Successful Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Successful Bidder, at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modify a previously filed Cure Notice, including modifying the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

g.    **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any.  All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

h.    **Dispute Resolution of Supplemental Cure Objection**.  If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited

10

hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.

i.    **No Cure Objections**. If there are no Cure Objections or Supplemental Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection or a Supplemental Cure Objection in accordance with the requirements set forth herein, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Cure Notice or Supplemental Cure Notice shall be controlling, as applicable, as to each Contract not subject to an unresolved Cure Objection or Supplemental Cure Objection notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

14.    Any objection to the ability of a Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, must be filed with the Court no later than the earlier of (a) the applicable Sale Objection Deadline or Supplemental Assigned Contract Hearing, as applicable, and (b) 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable.

15.    The inclusion of an Assigned Contract in the Cure Notice (or Supplemental Cure Notice) will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to any Definitive Purchase Agreement with a Successful Bidder

(including amendments or modifications to such schedules in accordance with such agreement), which will be filed on the docket for these chapter 11 cases and provided to each Contract Counterparty in accordance with paragraphs 10 and 11 hereof, will be assumed and assigned to the Successful Bidder.

**IV.    The Sale Notice.**

16.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable after entry of this Order, the Debtors shall serve the Bidding Procedures, the Sale Notice, and the Cure Notice upon the Notice Parties.  In addition, as soon as reasonably practicable after entry of this Order, the Debtors will post the Sale Notice on the Case Website and publish the Sale Notice, with any modifications necessary for ease of publication, once in *The New York Times* (national edition) and *CoinDesk* (CoinDesk.com), to provide notice to any other potential interested parties.

**V.    Other.**

17.    Consistent with the *Memorandum Opinion and Order Granting Motion to Approve Bidding Procedures in Connection with the Sale of Substantially All the Debtors' Assets* [Docket No. 1167], the Debtors shall confer with the Committee and U.S. Trustee to submit a separate proposed order regarding appointment of a consumer privacy ombudsman (the "Consumer Privacy Ombudsman") pursuant to section 332 of the Bankruptcy Code.

18.    ~~17.~~ Notwithstanding anything to the contrary in the *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting*

*Related Relief* [Docket No. 699] (the "Cash Management Order") and any other order of the Court relating to the subject matter thereof, the proceeds of a Sale (if any) will be deposited into an account in the name of the selling Debtor as set forth in the final order of the Court approving the Sale, and the proceeds of the Sale shall only be used as set forth therein, and the Debtors and all parties in interest reserve any and all rights with respect thereto.

19.      18. Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the Debtors, any Stalking Horse Bidder (if applicable), the Committee, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to an Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of a Final Bid Deadline).

20.      19. To the extent there is any conflict between the terms of this Order and the Bidding Procedures attached as **Exhibit 1**, the terms of this Order shall govern.

21.      20. Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the rights of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

22.      21. Notice of this Motion satisfies the requirements of Bankruptcy Rule 6004(a).

23.    ~~22.~~ All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.    ~~23.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

25.    ~~24.~~ Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be immediately effective and enforceable upon entry hereof.

26.    ~~25.~~ The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

<u>**Exhibit 1**</u>

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES FOR THE
## POTENTIAL SALE OF CERTAIN OF THE DEBTORS' ASSETS

On July 13, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

On October [ ], 2022, the Court entered the *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption And Assignment Procedures, and (V) Granting Related Relief* [Docket No. [ ]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process for potential auctions (each auction, an "Auction") for the sale (each sale, a "Sale") of all or a portion of the Debtors' assets, properties, goodwill, and rights relating to their businesses (collectively, the "Assets"), including:

> (i)     the assets, properties, goodwill, and rights relating to their businesses comprising the Debtors' retail platform business (the "Retail Platform Assets"), including customer earn accounts and coin balances, retail and institutional lending portfolio, swap services, staking platform, CelPay (the Debtors' cryptocurrency payment and transfer feature), and CelsiusX

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]     All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bidding Procedures.

(the Debtors' decentralized finance arm that utilizes wrapped cryptocurrency tokens to bridge centralized finance infrastructure to decentralized finance opportunities), and any cryptocurrencies or digital assets held by the Debtors (to the extent that they comprise property of the estate as such term is defined under section 541 of the Bankruptcy Code); and

(ii)     the GK8 Assets, as defined in the *Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* (the "GK8 Bidding Procedures Order") [Docket No. 687].[3]

To the extent that these Bidding Procedures require the Debtors to consult with or receive the consent of the Official Committee of Unsecured Creditors (the "Committee") in connection with making a determination or taking any action, or in connection with any other matter related to these Bidding Procedures or at an Auction (as defined below), if any, the Debtors shall do so in a regular and timely manner prior to making such determination or taking any such action. All decisions made by the Debtors pursuant to these Bidding Procedures must be approved by the Special Committee of the Board of Debtor Celsius Network Limited.

The Debtors and the Committee are evaluating whether the value of the estates would be maximized through a stand-alone restructuring or a sale of some or all of the Assets. Therefore, the bidding and sale process will be administered by the Debtors, in consultation with the Committee, and subject to the consent rights of the Committee herein. The Debtors may sell, some, all, or none of the Assets, and the parties may not give special consideration to any potential Bid proposed by an insider or an affiliate of any insider (as such term is defined in 11 U.S.C. §101(31)). Without the prior written consent of the Debtors and the Committee, no insider of the Debtors or entity affiliated with any insider of the Debtors may (i) communicate with any Potential Bidder or Bidder about its potential Bid or Bid, or (ii) receive or be given access to any non-public information or documentation related to a Bid or potential Bid.

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

---

[3]     These Bidding Procedures only apply to the bidding and sale of the GK8 Assets to the extent they are not sold pursuant to the GK8 Bidding Procedures Order. The sale of the Debtors' cryptocurrency mining business and related assets, properties, goodwill, and rights relating to their businesses (collectively, the "Mining Assets") under these Bidding Procedures will be overseen by the Mining Restructuring Officer.

I.      **Important Dates and Deadlines, including Contingent Dates for the Retail Platform Assets**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers to purchase the Debtors' Assets.  The Assets will be offered for sale through an Auction.  The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) for the assets in any combination.

The Bidding Procedures provide separate deadlines for the sale of the Retail Platform Assets and any Remaining Assets (as defined below), and allow flexibility to sell the Assets together or separately, depending on which transaction creates the most value.

If the Debtors and the Committee jointly determine in their reasonable discretion that it is in the best interests of the Debtors' estates to conduct a sale of the Retail Platform Assets independently from the Debtors' other Assets, then the Debtors will file a Notice of Auction for Sale of Retail Platform Assets on the docket on or before December 13, 2022, and provide all interested parties with notice of an Auction (email being sufficient), including the date, time, and place of an Auction (if one is held), the respective deadlines related thereto, and no other or further notice of such Auction shall be required.

The key dates and deadlines for the bidding and sale of the Retail Platform Assets, which are subject to the right of the Debtors, with the consent of the Committee (such consent not to be unreasonably withheld), to modify the following dates as provided herein, are as follows:

| Event or Deadline | Date and Time[4] |
|---|---|
| Initial Bid Deadline for Retail Platform Assets | November 21, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Final Bid Deadline for Retail Platform Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction for Retail Platform Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Retail Platform Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Retail Platform Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

---

[4]     All dates and deadlines are subject to Bankruptcy Rule 9006.

There will be a subsequent process to solicit bids for the Sale of the Debtors' Assets, including the Mining Assets (all remaining unsold Assets, the "Remaining Assets"). If any of the Retail Platform Assets are not sold pursuant to a Sale in the process reflected above, then the Remaining Assets shall include such unsold Retail Platform Assets.

The key dates and deadlines for the bidding and sale of the Remaining Assets, which are subject to the right of the Debtors, with the consent of the Committee (such consent not to be unreasonably withheld), to modify the following dates as provided herein, are as follows:

| Event or Deadline | Date and Time[5] |
|---|---|
| Final Bid Deadline for Remaining Assets | December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Auction for Remaining Assets | December 15, 2022 at 10:00 a.m. (prevailing Eastern Time) via remote video or such other means as determined by the Debtors after consultation with the Committee |
| Cure Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline for Remaining Assets | December 19, 2022 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing for Remaining Assets | December 22, 2022 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |

## II.    Public Announcement of Auction.

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall (a) serve on the Notice Parties (as defined below) a notice of the potential Auction and Sale (the "Sale Notice"), (b) post the Sale Notice on their restructuring website, https://cases.stretto.com/celsius, (c) publish the Sale Notice, with any modifications necessary for ease of publication, once in the *The New York Times* (national edition) and *CoinDesk* (CoinDesk.com), to provide notice to any other potential interested parties.

## III.    Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than any Stalking Horse Bidder) interested in purchasing the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

---

[5]    All dates and deadlines are subject to Bankruptcy Rule 9006.

a.   an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors, in consultation with the Committee;

b.   preliminary proof by the Potential Bidder of its financial capacity to close the proposed transaction (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be acceptable to the Debtors, in consultation with the Committee;

c.   preliminary proof by the Potential Bidder of its ability to receive any and all necessary governmental, licensing, regulatory, and other approvals, and to provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such Potential Bidder, pursuant to section 365 of the Bankruptcy Code, in connection with any transaction;

d.   identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity;

e.   a list with the names and contact information for any financial, legal and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale; and

f.   a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct.

The Committee's counsel and other professional advisors retained in these chapter 11 cases (the "Committee Professionals")[6] may communicate with, meet with, and provide information to Potential Bidders, subject to any confidentiality protocols established with the Debtors. The Committee Professionals will reasonably consult with, and reasonably coordinate with, the Debtors' professionals regarding the marketing process contemplated by the Bidding Procedures (including communications involving, and any information provided to, Potential Bidders). Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, the Committee, or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale. Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors shall (i) provide copies of all Preliminary Bid Documents to the Committee and (ii) determine, in consultation with the Committee, and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents. In the event that the Debtors deem that a Potential

---

[6]   The Committee Professionals include White & Case, LLP, Perella Weinberg Partners LP, and M3 Partners, LP.

Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Committee of such determination (and the reasons therefor). Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors may submit bids to purchase the Debtors' Assets. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

The Debtors will provide regular updates to the Committee Professionals regarding Potential Bidders, including a telephone conference to occur not less than once per week, and allow the Committee Professionals to participate in all management presentations and formal meetings that include Potential Bidders.

## IV.    Non-Binding Indications of Interest for Retail Platform Assets

Any party interested in purchasing some or all of the Retail Platform Assets shall submit a non-binding indication of interest (an "Indication of Interest") (email being sufficient) to (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com); and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); (b) the Debtors' investment bank, Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), Sean Carmody (scarmody@centerview.com) and Seth Lloyd (slloyd@centerview.com); (c) counsel to the Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and 200 S. Biscayne Blvd, Miami FL 33131, Attn: Gregory Warren (gregory.warren@whitecase.com); and (d) the Committee's investment banker, Perella Weinberg Partners, LP 767 Fifth Avenue, 5th Floor, New York, New York 10153, Attn: Kevin Cofsky (kcofsky@pwpartners.com) and Matthew Rahmani (mrahmani@pwpartners.com) so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on November 21, 2022 (the "Initial Bid Deadline")**. The Initial Bid Deadline may be extended without notice or hearing by the Debtors, after consultation with the Committee.

The Indication of Interest should (i) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, which non-cash components may include equity in a Debtor, a reorganized Debtor, or another entity proposed by a Potential Bidder, as applicable, and (ii) identify any proposed conditions to closing the transaction.

Submitting an Indication of Interest by the Initial Bid Deadline does not obligate the submitting party to submit a formal bid or participate in the sale process and does not exempt the submitting party from also having to submit a Qualified Bid by the Final Bid Deadline to participate in an Auction, each as defined below. For the avoidance of any doubt, any formal Bid

for the Retail Platform Assets must be submitted by the Final Bid Deadline of December 12, 2022 at 4:00 p.m. (prevailing Eastern Time) even if such party submits an Indication of Interest.

**V.    Obtaining Due Diligence Access.**

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, in consultation with the Committee, including any Stalking Horse Bidder (if any), and the Committee Professionals shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors.  All due diligence requests must be directed to Centerview Partners LLC ("Centerview") as set forth in Section V.A. below.  The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room.  Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any insider (as defined in section 101(31) of the Bankruptcy Code), affiliate of any insider, account holder, customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors; *provided* that pursuant to these Bidding Procedures (including the confidentiality protocols established with the Debtors) and in compliance with any applicable Confidentiality Agreement, any Potential Bidder may contact, initiate, or engage in discussions with the Committee Professionals, subject to the Committee's obligations under the Bidding Procedures Order.  The due diligence period will end on the respective Final Bid Deadline (as defined herein) and, subsequent to the Final Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement, and the Committee.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders that, in the Debtors' reasonable business judgment and in consultation with the Committee have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale.  For any Bidder that is a competitor, account holder, or customer of the Debtors or is affiliated with any competitors, account holders, or customers of the Debtors, the Debtors reserve the right, in consultation with the Committee, to withhold or modify any diligence materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

### A. Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Centerview (email being sufficient).

> **Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Sean Carmody (scarmody@centerview.com), Ryan Kielty (rkielty@centerview.com), Seth Lloyd (slloyd@centerview.com), Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

### B. Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors, in consultation with the Committee, or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Committee, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

## VI. Stalking Horse Bidders and Bid Protections.

The Debtors shall be authorized, but not obligated, in an exercise of their business judgment, after consultation with the Committee, to select one or more Qualified Bidders to act as stalking horse bidders in connection with a Sale (each, a "Stalking Horse Bidder"), and enter into purchase agreement with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); *provided* that, in the event the Debtors seek to select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder, the Debtors shall promptly file with the Court and serve on the Notice Parties a notice of hearing on the same and the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Bidder and Stalking Horse Agreement to be held on the first date the Court is available that is at least five business days after filing such notice, with objections due at 4:00 p.m. (prevailing Eastern Time) the day prior to such hearing. The bid protections provided in a Stalking Horse Agreement (if any) shall be described in detail, including the amount and calculation of such bid protections, in the notice of hearing to consider the selection of the Stalking Horse Bidder and Stalking Horse Agreement and such bid protections shall be subject to the approval of the Court in all respects.

## VII. Bid Requirements.

To be selected to acquire some or all of the Assets or to be eligible to participate in an Auction, if applicable, a Potential Bidder (other than a Stalking Horse Bidder) must deliver to the Debtors and their advisors a written, irrevocable, and binding offer for purchase of the Assets

(the "Bid") that must be determined by the Debtors in their business judgment, in consultation with the Committee, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

a.  **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom Centerview and Kirkland & Ellis LLP ("Kirkland") should contact regarding such Bid;

b.  **Identity of Assets and Purchase Price:** Each Bid must clearly state which Assets (including Mining Assets and Retail Platform Assets) the Potential Bidder seeks to acquire along with which liabilities and obligations the Potential Bidder agrees to assume. Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, which non-cash components may include equity in a Debtor, a reorganized Debtor, or another entity proposed by a Potential Bidder as applicable (collectively, the "Purchase Price"). The Purchase Price should be a single value in U.S. Dollars for the total enterprise value of the Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis.

c.  **Good Faith Deposit:** Each Bid must be accompanied must be accompanied by a cash deposit equal to the greater of $20,000,000.00 and ten percent of non coin related value in cash, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). To the extent a Qualified Bid is modified before, during, or after an Auction in any manner that increases the purchase price contemplated by such Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder (as defined below) increase its Good Faith Deposit so that it equals ten percent of the increased Purchase Price;

d.  **Markup of the Purchase Agreement:** Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, the form of which will be provided to any Potential Bidder prior to the respective Final Bid Deadline and in the case of an Auction with a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits, schedules and ancillary agreements related thereto and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome or otherwise materially inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment and after consultation with the Committee, will determine whether any such amendments and modifications are

materially more burdensome;

e.    **Committed Financing:** Each Bid must include committed financing, documented to the Debtors' reasonable satisfaction, after consultation with the Committee, that demonstrates the Potential Bidder has received sufficient debt and equity funding commitments to satisfy such Potential Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Centerview and Kirkland should contact regarding such committed financing. Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Committee;

f.    **Pro Forma Capital Structure:** Each Bid must include a description of the Bidder's pro forma capital structure;

g.    **Contingencies; No Financing or Diligence Outs:** Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of the specified representations and warranties, which shall not be more burdensome, in the Debtors' reasonable business judgment, after consultation with the Committee, than those contemplated by the Stalking Horse Bid, if any, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the respective Final Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid;

h.    **As-Is, Where-Is:** Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the assets or completeness of any information provided in connection therewith or an Auction, except as expressly stated in the Potential Bidder's proposed purchase agreement;

i.    **Authorization:** Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

j.    **Adequate Assurance of Future Performance:** Each Bid must (i) identify the

Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder and (iii) demonstrate, in the Debtors' reasonable business judgment after consultation with the Committee, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts;

k.    **Government Approvals:** Each Bid, including the Stalking Horse Bid (if any), must include (i) a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors after consultation with the Committee, of the ability to obtain such consents or approvals in a timely manner and (ii) a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

l.    **Government Approvals Timeframe:** Each Bid must set forth (i) an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale, and (ii) the basis for such estimate;

m.    **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment:** Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures;

n.    **Irrevocable:** A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder (as defined herein);

o.    **No Fees:** Other than a Stalking Horse Bidder (solely to the extent the Court approves any Bid Protections under the Stalking Horse Agreement), each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for breakup fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, after consultation with the Committee, to provide certain bid protections to one or more Stalking Horse Bidders solely in accordance with these Bidding Procedures;

p.    **Adherence to Bidding Procedures:** By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the sale process, or an Auction (if held), after conclusion of the selection of the Successful Bidder (as defined

herein);

q.  **Consent to Jurisdiction:** The Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, an Auction (if held), the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable;

r.  **Backup Bid:** Each Bid shall provide that the Potential Bidder will serve as a backup bidder if the Potential Bidder's bid is the next highest or otherwise best bid;

s.  **Expected Closing Date:** A Bid by a Potential Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a timeframe acceptable to the Debtors, after consultation with the Committee; and

t.  **Employees:** Each Bid must detail the treatment of the any of the Debtors' employees.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, in consultation with the Committee, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, in consultation with the Committee, be deemed to be "Qualified Bidders."

The Debtors shall provide regular updates to the Committee Professionals on potential Bids, Bids, and Qualified Bids, including a telephone conference to occur not less than once per week, and allow the Committee Professionals to participate in all management presentations and formal meetings that include Potential Bidders. For the avoidance of doubt, the Committee Professionals shall not participate in presentations and meetings between the Debtors' advisors and the Special Committee of the Board of Directors of Debtor Celsius Network Limited.

Within one business day after the respective Final Bid Deadline, the Debtors shall determine, after consultation with the Committee, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in an Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the respective Final Bid Deadline (as defined below) that does not satisfy the requirements of a Qualified Bid, the Debtors, in consultation with the Committee, may (i) provide the Potential Bidder with the opportunity to remedy any deficiencies prior to an Auction, and (ii) in consultation with the Committee, waive certain requirements for good cause. A Stalking Horse Bidder (if any) shall be deemed to be a Qualified Bidder, a Stalking Horse Bid shall be deemed a Qualified Bid, and a Stalking Horse Bidder (if any) may participate in an Auction with respect to the Debtors' assets.

## VIII.    Final Bid Deadlines.

Binding Bids to acquire some or all of the <u>Retail Platform Assets</u> must be received (email being sufficient) by (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com); and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); (b) the Debtors' investment bank Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), Sean Carmody (scarmody@centerview.com) and Seth Lloyd (slloyd@centerview.com); (c) counsel to the Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and  200 S. Biscayne Blvd, Miami FL 33131, Attn: Gregory Warren (gregory.warren@whitecase.com); and (d) the Committee's investment banker, Perella Weinberg Partners, LP, 767 Fifth Avenue, 5th Floor, New York, New York 10153, Attn: Kevin Cofsky (kcofsky@pwpartners.com) and Matthew Rahmani (mrahmani@pwpartners.com); so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on December 12, 2022 (the "Final Bid Deadline for Retail Platform Assets")**.

Binding Bids to acquire the <u>Remaining Assets</u>,[7] must be received (email being sufficient) by (a) the Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com); and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); (b) the Debtors' investment bank Centerview Partners LLC, 31 West 52nd Street, New York, New York 10019, Attn.: Marc Puntus (mpuntus@centerview.com), Ryan Kielty (rkielty@centerview.com), Sean Carmody (scarmody@centerview.com) and Seth Lloyd (slloyd@centerview.com); and (c) counsel to the Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive Suite 5100, Chicago, Illinois 60606, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com) and  200 S. Biscayne Blvd, Miami FL 33131, Attn: Gregory Warren (gregory.warren@whitecase.com); and (d) the Committee's investment banker, Perella Weinberg Partners, LP, 767 Fifth Avenue, 5th Floor, New York, New York 10153, Attn: Kevin Cofsky (kcofsky@pwpartners.com) and Matthew Rahmani (mrahmani@pwpartners.com); so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on December 12, 2022 (the "Final Bid Deadline for Remaining Assets.")**[8]

---

[7]    The binding Bid may seek to acquire any Retail Platform Assets not sold pursuant to a Sale Order as part of its Bid to acquire the Remaining Assets.

[8]    Both the Final Bid Deadline for Retail Platform Assets and the Final Bid Deadline for Remaining Assets are each referred to herein as a "<u>Final Bid Deadline</u>."

IX.    **Evaluation of Qualified Bids.**

Prior to an Auction (if held) the Debtors, the Committee, and their advisors will evaluate Qualified Bids, and the Debtors will identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment after consultation with the Committee, the highest or otherwise best Bid (the "Starting Bid").  In the event a Stalking Horse Bidder is selected, the Starting Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the bid protections (if any), *plus* either $500,000 or such other amount as determined by the Debtors in consultation with the Committee.  In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment, in consultation with the Committee, engage in negotiations with bidders with respect to their Bids.  For the avoidance of doubt, the Debtors, in consultation with the Committee, may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different assets.  In conducting the evaluation of the Qualified Bids, the Debtors and the Committee will take into consideration the following non-exclusive factors:

a.    the amount of the Purchase Price of the Qualified Bid;

b.    the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Bid Protections;

c.    the proposed changes or modifications to the form purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus any Stalking Horse Agreements, to the extent applicable;

d.    the Assets and liabilities included or excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

e.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

f.    the certainty of a Qualified Bid leading to a confirmed plan (whether the Plan or some other plan);

g.    the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

h.    any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant.

Within 24 hours of the determination of the Starting Bid, but in no event later than 24 hours before an Auction, the Debtors will (1) notify any Stalking Horse Bidder(s) as to which Qualified Bid is the Starting Bid and (2) distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

Within 24 hours after the Final Bid Deadline, but in no event later than 24 hours before the start of the Auction (if any), the Debtors shall provide the identities of any Qualified Bidders on a confidential basis to (1) counsel to the Office of the Attorney General for the State of Texas, (2) counsel to the National Association of Attorneys General, and (3) counsel to the Vermont Department of Financial Regulation.

If any Bid is determined by the Debtors, after consultation with the Committee, not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five business days after the Final Bid Deadline.

## X.    No Qualified Bids.

If no Qualified Bids other than a Stalking Horse Bid (if applicable) are received by the applicable Final Bid Deadline, then the Debtors may cancel the applicable Auction and may decide, in the Debtors' reasonable business judgment, with the consent of the Committee (such consent not to be unreasonably withheld), to designate a Stalking Horse Bid as the Successful Bid and pursue entry of a Sale Order approving a Sale of the respective Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtors shall promptly file notice of cancellation of any Auction and designation of the Stalking Horse Bid as the Successful Bid with the Bankruptcy Court.

## XI.    Auction.

If one or more Qualified Bids are received by the respective Final Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct an Auction with respect to such Assets. An Auction for the Retail Platform Assets shall commence on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**. An Auction for the Remaining Assets shall commence on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**. Auctions will be conducted at such times via remote video, or such later time or other place as the Debtors determine, in consultation with the Committee, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.

Any Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.    except as otherwise provided herein, an Auction will be conducted openly;

b.    only Qualified Bidders, including any Stalking Horse Bidders (if any), shall be entitled to bid at an Auction;

c.    the Qualified Bidders, including any Stalking Horse Bidders (if any), shall appear at an Auction via remote video or through duly authorized representatives via remote

video at an Auction;

d. only the following parties shall be permitted to attend an Auction:  the U.S. Trustee, the Examiner, and any consumer privacy ombudsman appointed pursuant to section 332 of the Bankruptcy Code in these chapter 11 cases (each of the foregoing on a listen-only basis);  authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, the Committee and their respective advisors, and any other creditor party who makes a written request upon the Debtors to attend an Auction; *provided* that such request shall be actually received by the Debtors' counsel no later than 24 hours prior to the commencement of an Auction; *provided*, *further* that the Debtors reserve the right to retract their permission at any point during an Auction if such creditor party does not act in good faith and in orderly fashion during an Auction;

e. Bids at an Auction, including any Bids by any Stalking Horse Bidder (if any), must be made in minimum increments of $500,000 (or such other amount as the Debtors may determine after consultation with the Committee) of additional value (including after payment of the Bid Protections to any Stalking Horse Bidders, if applicable);

f. each Qualified Bidder will be permitted a reasonable time to respond to previous bids at an Auction, as determined by the Debtors, in consultation with the Committee;

g. the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at an Auction;

h. no Qualified Bidder (or its representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in an Auction, and each Qualified Bidder will be required to confirm on the record of an Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Backup Bid (each as defined herein); *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors approve such coordination in their reasonable discretion, in consultation with the Committee;

i. an Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at an Auction to the then prevailing highest Bid, subject to the Debtors' right, in consultation with the Committee, to require last and final Bids to be submitted on a "blind" basis;

j. the Court and the Debtors will not consider bids made after an Auction has been closed;

k. the Debtors reserve the right, in their reasonable business judgment, in consultation with the Committee, to adjourn an Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii)

allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Committee, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount.  In the event an Auction is adjourned, the Debtors shall promptly file a Notice with Court of such adjournment and include the date for the continued Auction; and

l.  an Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors following consultation with the Committee, from time to time on the record at an Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any other order of the Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) reasonably determined by the Debtors to further the goal of attaining the highest or otherwise best offer for the assets, as applicable.

For the avoidance of doubt, nothing in an Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, with notice to the Committee).

## XII.    Acceptance of the Successful Bid.

An Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase the respective Assets in the Debtors' reasonable business judgment, in a manner consistent with the exercise of their fiduciary duties, after consultation with the Committee, and outlined below in further detail, (a "<u>Successful Bid</u>"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, an Auction will be closed.  When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid documents; and (d) the tax consequences of such Qualified Bid.

Any Qualified Bidder that submits a Successful Bid will be deemed a "<u>Successful Bidder</u>" with respect to the applicable Assets.  The Debtors shall file a notice setting forth the results of an Auction (if any) and identify any Successful Bidder with the Court at least three business days prior to the respective sale hearing (each sale hearing, a "<u>Sale Hearing</u>") and shall seek Bankruptcy Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "<u>Sale Order</u>").  For the avoidance of doubt, a Sale Order shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Backup Bid (defined below), the Debtors shall not solicit or accept any further bids or offers to submit a bid after such selection for the respective Assets; *provided* that notwithstanding anything to the contrary in these Bidding Procedures,

17

nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

The Debtors shall, subject to the Committee's consent (such consent shall not be unreasonably withheld) seek to sell the Retail Platform Assets at the Sale Hearing for the Retail Platform Assets. If any of the Retail Platform Assets are sold at such Sale Hearing, they will no longer be considered part of the Remaining Assets subject to a future Sale and must be removed from any pending Bid for the Remaining Assets.

Within one business day of the selection of the Successful Bidder, such Successful Bidder shall make a cash deposit that, when aggregated with its Good Faith Deposit, is in an amount equal to ten percent of the Successful Bid, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII.    Designation of Backup Bidder.

The Qualified Bidder with the second highest or otherwise best bid or combination of bids (the "Backup Bid") to purchase any or all of the applicable Assets (the "Backup Bidder") will be determined by the Debtors, in consultation with the Committee, at the conclusion of an Auction and will be announced at that time to all the Qualified Bidders participating in an Auction. If for any reason a Successful Bidder fails to consummate the purchase of such Assets within the time permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Assets, and the Backup Bidder shall be deemed a Successful Bidder for such Assets and shall be required to consummate any Sale with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a notice with the Court that such Backup Bidder has been deemed the Successful Bidder. The Backup Bidder shall be required to keep its Backup Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Backup Bidder's Good Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

## XIV.    Approval of Sale.

The Debtors will present the results of an Auction  (if any) to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the respective Auction, including, among other things, that: (a) an Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (b) an Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (d) consummation of any Sale as contemplated by the Successful Bid in an Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' respective Assets, and is in the best interests of the Debtors and their estates.

If the Debtors timely file a Notice of Auction for Sale of Retail Platform Assets, then a Sale Hearing for the Retail Platform Assets will be scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

The Sale Hearing for the Remaining Assets is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York

## XV.    Return of Good Faith Deposit.

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable Assets.  If a Successful Bidder fails to consummate any Sale, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors, and all parties in interest, and the Debtors specifically, reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five business days after the respective Auction or upon the permanent withdrawal of the proposed Sale, and the Good Faith Deposit of any Backup Bidders will be returned within five business days after the consummation of any Sale or upon the permanent withdrawal of the proposed Sale.

## XVI.    Reservation of Rights.

The Debtors, in consultation with the Committee, reserve their rights to modify these Bidding Procedures in their reasonable business judgment in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before an Auction, additional customary terms and conditions on a Sale, including, without limitation: (a) amending or extending the deadlines set forth in these Bidding Procedures related to any of the Assets, including those specifically associated with the sale of the Retail Platform Assets, (b) determining whether to sell the Retail Platform Assets separately or collectively with other Assets; (c) adjourning an Auction; (d) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting an Auction; (e) canceling an Auction; (f) rejecting any or all Bids or Qualified Bids; and (g) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis.  For the avoidance of doubt, the Debtors reserve the right, with consent from the Committee, at any point prior to the selection of a Successful Bidder to terminate the Sale processes contemplated hereunder with respect to any or all of the Debtors' Assets and seek to sell any or all assets pursuant to section 363(b) of the Bankruptcy Code.

**XVII.      Consent to Jurisdiction**

All Qualified Bidders at an Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to a Sale, the respective Auction and the construction and enforcement of these Bidding Procedures, or any written indications of interest, Preliminary Bid Documents, or the Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, an Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**XVIII.     Fiduciary Out.**

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any Sale to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided* that the Debtors shall consult with the Committee promptly after exercising any fiduciary out in accordance with these Bidding Procedures, and nothing in this Section XVIII shall modify or supersede any consultation or consent rights of the Committee set forth in these Bidding Procedures or the Bidding Procedures Order.

Furthermore, notwithstanding anything to the contrary in these Bidding Procedures, through the date of an Auction, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the Committee and the United States Trustee), or any other entity regarding Alternate Proposals. The Debtors shall promptly distribute any Alternate Proposal (and any response thereto) to the Committee.

**Exhibit 2**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**NOTICE OF AUCTION FOR THE POTENTIAL**
**SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND**
**CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

---

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for the purchase of certain of the Debtors' assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of New York (the "Court") by entry of an order on [ ], 2022 [Docket No. [ ]] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

      **PLEASE TAKE FURTHER NOTICE** that the Initial Bid Deadline is **November 21, 2022, at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity interested in purchasing some or all of the Retail Platform Assets must comply with the requirements set forth in the Bidding Procedures

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for some or all of the Retail Platform Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity that wishes to participate in an Auction for the Retail Platform Assets must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors may conduct an Auction for the Retail Platform Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors expect to seek approval of the Sale (if any) of some or all of the Retail Lending Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for the Remaining Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity that wishes to participate in an Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may conduct an Auction for the Remaining Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video or such other means.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of the Sale (if any) of the Remaining Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **December 19, 2022 at 4:00 p.m.** (prevailing Eastern Time).

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Sale Order (if any) is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Agreement (in the case where a Stalking Horse Bidder is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if a Stalking Horse Bidder is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Effective Date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.  All rights of any party to set off any claims, debts or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the Effective Date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to Assumed Liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Effective Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets prior to the Effective Date.  The Stalking Horse Bidder would not have entered into the Stalking Horse Agreement but for the foregoing protections against potential claims based upon "successor liability" theories.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, subject to the Bidding Procedures, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: (a) free of charge upon request to Stretto, Inc. (the notice and claims agent retained in these chapter 11 cases) by (a) calling (855) 423-1530  (Domestic) or (949) 669-5873 (International); (b) visiting the Debtors' restructuring website at (https://cases.stretto.com/Celsius); or (c) for a fee via PACER by visiting (https://www.deb.uscourts.gov/).

*[Remainder of page intentionally left blank]*

New York, New York
Dated: [   ], 2022

*/s/ DRAFT*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          patrick.nash@kirkland.com
                   ross.kwasteniet@kirkland.com
                   chris.koenig@kirkland.com
                   dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————
                                             )
In re:                                       )    Chapter 11
                                             )
CELSIUS NETWORK LLC, *et al.*,[1]            )    Case No. 22-10964 (MG)
                                             )
                        Debtors.             )    (Jointly Administered)
                                             )
———————————————————————

### NOTICE TO CONTRACT PARTIES TO POTENTIALLY
### ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

---

| **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.** |
|---|

**PLEASE TAKE NOTICE** that on October [ ], 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof and (IV) Granting Related Relief* [Docket No. [  ]] (the "Bidding Procedures Order"),[2] authorizing the Debtors to solicit offers for the purchase of certain of the Debtors' assets and, if necessary, to conduct an auction (the "Auction") to select the party to purchase such assets.  An Auction (if any) will be governed by the bidding procedures (attached to the Bidding Procedures Order as **Exhibit 1** (the "Bidding Procedures").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to a Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale.  The Assigned Contracts Schedule can also be viewed on the Debtors' case website (https://cases.stretto.com/Celsius). The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assigned Contract, be filed with the Court **no later than December 19, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") and if you object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, be filed with the Court **no later than the earlier of (a) the Cure Objection Deadline or Supplemental Assigned Contract Hearing, as applicable**, **and (b) 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable**, in each case, by the following parties: (a) counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Tommy Scheffer (tommy.scheffer@kirkland.com); and 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com) and (b) Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn.: Shara Cornell, Mark Bruh, and Brian S. Masumoto.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on any grounds, including that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assigned Contract are reserved. Furthermore, the Debtors explicitly reserve their rights, in their reasonable discretion,

to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

      **PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: [  ], 2022

*/s/ DRAFT*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com
                    chris.koenig@kirkland.com
                    dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*