# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

+1 202 389 5000

www.kirkland.com

Judson Brown, P.C.
To Call Writer Directly:
+1 202 389 5082
judson.brown@kirkland.com

Facsimile:
+1 202 389 5200

October 25, 2022

**By eFile & E-mail**

Hon. Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

    Re:    *In re Celsius Network LLC*, No. 22-10964 (MG) – Request for Informal Conference with the Court, Pursuant to Local Rule 7007-1(b)

Dear Chief Judge Glenn:

    Pursuant to Rule 7007-1(b) of the Local Bankruptcy Rules for the Southern District of New York, we write to request an informal conference with the Court regarding the depositions of Core Scientific, Inc. ("Core") executives Michael Levitt and Russell Cann. In this contested matter that Core concedes is central to its "liquidity and overall financial condition" and "calls into question [its] own ability to continue," *see* ECF No. 1144 ¶¶ 9, 11; ECF No. 1140 ¶ 61, Core seeks to shield from deposition Mr. Levitt, the company's co-founder, chairman, and CEO, and Mr. Cann, the company's Executive Vice President for Client Services. Contrary to Core's representations, Mr. Levitt and Mr. Cann have unique knowledge at the heart of this dispute, including the deployment of Celsius' rigs, Core's hosting capacity, and Core's decision to pass through power costs to customers. Accordingly, this Court should compel their depositions.

    "Highly-placed executives are not immune from discovery," *see Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (quotations omitted), and "senior executives are not exempt from deposition," *Chevron Corp. v. Donziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013). Here, both Mr. Levitt and Mr. Cann have unique knowledge relevant to this matter and should be deposed.

    ***First***, Mr. Levitt and Mr. Cann plainly "ha[ve] familiarity with the events underlying the litigation." *See Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 1993 WL 34678, at *2 (S.D.N.Y. Feb. 4, 1993). Core's internal documents confirm Mr. Levitt and Mr. Cann had discussed the deployment schedule for Celsius' rigs, Core's decision to pass through spot power costs to Celsius and other customers, and Core's additional hosting capacity. For example:

- Mr. Levitt and Mr. Cann were personally involved in evaluating Core's rising power costs, as well as devising and executing Core's plan to push those costs onto its customers. In March 2022, Mr. Cann had "an idea on average monthly hourly rate pricing": "Any time the average monthly rate (all 730 hours) at MBL2/DUKE is above xxx.xxx we pass that amount on to the client." *See* CORE-00000430. Less than a week later, on a Core earnings call, Mr. Levitt admitted "[E]nergy costs have been going up all over. … You're also correct that we have a number of agreements that do have limiters on energy costs." *See* Mar. 29, 2022 Core Scientific, Inc. Earnings Call at 8. In June 2022, Mr. Cann said, "it is time to roll out the new formula," *see* CORE-00007246, which Mr. Levitt personally directed should be implemented in connection with Core's mid-June 2022 invoices, *see* CORE-00007245 ("***Mike Levitt has said the 6/15 invoices need to go out on time with the pass through so that's the obvious goal for the meeting***."). Then, in August 2022, Mr. Cann confirmed it was "correct a while back" that "we don't pass through power costs if the original contractual hosting rate reaches a certain amount," "but not now . . . . we pass thru to all." *See* CORE-00000757.

- Mr. Levitt and Mr. Cann had substantive internal and external communications about Celsius' deployment schedule. *See, e.g.*, CORE-00000802 (Mr. Levitt to Mr. Cann: "What is ou[r] latest conversation with Celsius regarding their deployment dates").

- Mr. Levitt had substantive communications about Celsius' right of first refusal on additional hosting capacity and monitored certain capacity allocations. *See, e.g.*, CORE-00000398 (email sending Mr. Levitt Celsius' right of first refusal); CORE-00002404 (Mr. Levitt: "Do we have spare capacity in October? If so, we should discuss to whom that is allocated - it may not go to Brett H's venture without my specific permission.").

***Second***, to date, Core "has proffered no affidavit" from Mr. Levitt or Mr. Cann "denying knowledge of information relevant to this case." *See Arkwright*, 1993 WL 34678, at *2. But even if Core makes such claims, they are "subject to testing by the examining party." *See AngioDynamics, Inc. v. Biolitec, Inc.*, 2010 WL 11541925, at *3 (N.D.N.Y. 2010).

***Third***, "[t]his is not an inconsequential case in which" apex depositions are "sought merely to harass or to force settlement." *See Arkwright*, 1993 WL 34678, at *2. It is a matter with real and significant consequences for both parties. The issues raised in Celsius' motion commanded Mr. Levitt's and Mr. Cann's attention during the ordinary course of Core's business; it is worthy of their time now. For these reasons, the Debtors respectfully request an informal conference with the Court to resolve this discovery dispute.

Sincerely,

*/s/ Judson Brown, P.C.*

Judson Brown, P.C.