Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,*
*Celsius SPV Investors, LP, and Celsius*
*New SPV Investors, LP*

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SERIES B PREFERRED HOLDERS' LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER SETTING BAR DATES FOR SUBMITTING PROOFS OF CLAIM AND GRANTING RELATED RELIEF

Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors,

LP, and CDP Investissements Inc. (collectively, the "Series B Preferred Holders"), as beneficial

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares issued by Celsius Network Limited ("CNL" and, together with its affiliated debtors and debtors in possession, the "Debtors"), by and through their undersigned counsel, hereby submit this limited objection (the "Limited Objection") to the *Debtors' Motion for Entry of An Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Dkt. No. 1019] (the "Bar Date Motion").[2]  In support of the Limited Objection, the Series B Preferred Holders respectfully state as follows:

## Preliminary Statement

1.      The Bar Date Motion is premature due to the state of the Debtors' Schedules. The Debtors filed schedules that list the same customer claims against each Debtor, while at the same time disclosing that parties dispute this contention (the "Liability Issue").  A critical component of any procedure to resolve the Liability Issue will require notice to customers.  The Bar Date Order should set forth the process for a global resolution of the Liability Issue, whether through an adversary proceeding resolving such issue or otherwise, and as approved by the Court following notice and a hearing (the "Liability Issue Procedures"), including the effect that such Liability Issue Procedures may have on customer claims.  Until the Liability Issue Procedures have been finalized and approved, the holders of customer claims cannot be given proper notice as to how their claims will be dealt with.  The Series B Preferred Holders

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Bar Date Motion.

therefore request that the Court defer approving the form of the Bar Date Notice until the Liability Issue Procedures are approved and in place.[3]

2.      In addition, the Debtors have failed to schedule customer claims in U.S. dollar amounts as required by Bankruptcy Rules 1007 and 9009 and the Official Forms.  The Series B Preferred Holders have sought to rectify this violation of the Bankruptcy Rules through a separate motion to require the Debtors to amend their Schedules to include the U.S. dollar amount of customer claims.[4]  Sending customers proof of claim forms without disclosing the aggregate dollar amount of each claim will only require sending new notices to customers after the Debtors amend their Schedules.  The Court should avoid this unnecessary expense and confusion and defer ruling on the Bar Date Motion until the Court has ruled on the 1009 Motion.

3.      The Bar Date Motion has other problems.  The Debtors are seeking, among other forms of relief, approval of a Proof of Claim Form that includes several variations from Official Form 410.  Among other variations, the proposed Proof of Claim Form (i) includes a box for holders of "Account Holder Claims" to check making such Claims against "All Debtors" (a "Universal POC") and (ii) "require[s] all holders of Claims based on cryptocurrency held in accounts on the Debtors' platform to list the number of units of each cryptocurrency held in lieu of denominating their Claim in United States dollars."[5]  Instead of being ministerial in nature, these variations may improperly impact two critical, substantive issues that need to be resolved

---

[3]    On October 21, 2022, the Debtors proposed a briefing schedule to address certain issues that should be resolved ahead of proposing any chapter 11 plan, including the Liability Issue .  Following an initial meet and confer call, the Series B Preferred Holders made a counterproposal and discussions as to the appropriate procedures remain ongoing.

[4]    *Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Dkt. No. 1183] (the "1009 Motion")

[5]    Bar Date Motion ¶ 16.

in these cases: (i) the Liability Issue and (ii) whether all claims asserted in these cases must be

denominated in U.S. dollar amounts as of the Petition Date, as opposed to units of

cryptocurrency (the "Denomination Issue"), and will likely lead to significant confusion for

customers.

4.     The Series B Preferred Holders ask the Court to refrain from approving the Bar

Date Notice until there is resolution of the Liability Issue Procedures and Denomination Issue.

If the Court, however, does consider the form of the Bar Date Notice before such resolution,

the Series B Preferred Holders object to the Bar Date Motion (i) unless the Bar Date Notice

and Bar Date Order notice customers that all Proofs of Claim asserting customer claims,

including Universal POCs and customer claims listed in the Schedules as "undisputed,"

"liquidated," and "noncontingent" (the "Customer POCs"), are subject in all respects to the

Account Holder Claim Ruling, and (ii) to the extent that the Proof of Claim Form directs

customers to denominate their claims solely in units of cryptocurrency, instead of U.S. dollars

as of the Petition Date.

## Limited Objection

## I.     The Debtors Must Provide Significantly More Information About the Liability Issue.

5.     The Debtors acknowledge in their Bar Date Motion that the Liability Issue is a

significant gating issue yet to be resolved pursuant to the Account Holder Claim Ruling.[6]

Yet, nowhere in the proposed Bar Date Order or Bar Date Notice is such ruling or the Liability

Issue Procedures even mentioned.  Instead, the procedures for which the Debtors are seeking

---

[6]    Bar Date Motion ¶ 15.  The Debtors have acknowledged as much since day one of these cases.  *See, e.g.*, First
Day Hearing Presentation [Dkt. No. 45] at 3 (describing the Liability Issue as an issue "critical to the outcome
of this case").

approval in the Bar Date Motion give customers filing Proofs of Claim the ability to file

Universal POCs that would be deemed to have been filed against each Debtor, regardless of

the outcome of the Liability Issue.[7]  Customers, of course, also have the option to not file a

Proof of Claim at all in reliance on the Debtors having scheduled all customer claims as

"undisputed" against each Debtor in their Schedules.[8]  Without more explanation, customers

will necessarily be left in bewilderment as to what they need to do: (i) not file a Proof of Claim

and rely on the Schedules, which may be amended, (ii) file multiple Proofs of Claim, or (iii)

file one Universal POC.  In fact, given that the Global Notes to the Schedules contain an

express disclaimer (repeated *verbatim* in the Bar Date Motion) of any presumption of any

customer claim's validity or of any evidentiary value of the Schedules,[9] the option to rely on

the Schedules appears to be illusory, and any prudent customer will file a Universal POC or

multiple Proofs of Claim asserting a claim against every Debtor, whether or not such customer

has a good faith belief that he or she, in fact, does have a legitimate claim against any Debtor

other than Celsius Network LLC.

      6.      The proposed procedures would inappropriately and inefficiently leave open the

question of whether parties in interest, such as the Series B Preferred Holders, need to object

---

[7]    Bar Date Motion ¶ 18(e).

[8]    Bar Date Motion ¶ 15.

[9]    Bar Date Motion ¶ 15 ("For the avoidance of doubt, ***it is not the intent of the Debtors to create any presumption that account holders have Claims against each Debtor entity***, as that issue is disputed by certain holders of the Series B Preferred Shares issued by Celsius Network Limited, ***and no creditor or other party should rely on the fact that the account holder claims are scheduled at each Debtor entity as dispositive as to this legal issue,*** which will be decided in the Account Holder Claim Ruling.  To the extent the Court enters a final and non-appealable order with respect to the Account Holder Claim Ruling, the Debtors intend to amend the Schedules to the extent required by such ruling.  At this time, to the extent an account holder agrees with the amount of their claim provided in the Schedules, there is no need to file an additional Proof of Claim to ensure that such Claim is asserted against each Debtor Entity.  For the avoidance of doubt, ***nothing contained herein is intended as, or should be construed as, an admission or stipulation of the validity of any claim against any Debtor,*** any assertion made therein or herein, or a waiver of any Debtor's rights to dispute any claim or assert any cause of action or defense against any party.") (emphasis added).

to potentially hundreds of thousands of Customer POCs to preserve their rights with respect to the Liability Issue.  Even if the Series B Preferred Holders are permitted to do so by filing one omnibus objection, each and every customer would then have the right to reply to such objection, recreating the inefficiency problem that the Debtors purported to solve by scheduling customer claims as "undisputed," "liquidated," and "noncontingent."[10]  Further, if there is any question under the Bar Date Notice as to whether Customer POCs are in all respects subject to the Liability Issue Procedures, then it would also be likely that even after the Liability Issue is resolved through such procedures, the Series B Preferred Holders or other parties in interest would be left to object once again to each Customer POC to enforce the Account Holder Claim Ruling, thus repeating the process.  To avoid this untenable, confusing, and remarkably inefficient situation, the Bar Date Notice must inform holders of customer claims that the Liability Issue Procedures will be put in place in the near future[11] and that, once the Liability Issue has been resolved by the Court, all Customer POCs will be deemed to have been filed against the appropriate Debtor(s) and disallowed or withdrawn as against any other Debtor(s).[12]  With respect to the latter, a corresponding provision will have to be inserted in the Bar Date Order.

7.    Accordingly, the Series B Preferred Holders are asking that the Court defer approving the form of the Bar Date Notice until the Liability Issue Procedures are in place.  In

---

[10]    *See* Bar Date Motion ¶ 15 ("The Debtors believe that scheduling any such Claims as contingent, unliquidated, or disputed would inequitably require each account holder to file a Proof of Claim against each Debtor Entity to preserve the rights to the issues to be decided through the Account Holder Claim Ruling.").

[11]    The Bar Date Motion does mention the possibility of "a to-be-commenced adversary proceeding" as a potential path to resolving the Liability Issue, but there is no indication as to who is expected to commence such an adversary proceeding or when.  Bar Date Motion ¶ 14.

[12]    The Series B Preferred Holders understand that certain customers may have claims against CNL directly (*i.e.*, *not* by virtue of their accounts at Celsius Network LLC), and it is not clear whether these customers are on the Master Service List, which includes only a consolidated list of the Debtors' top 50 unsecured creditors.  Case Management Procedures ¶ 9.  As such, these customers of CNL may not be aware of the fact that their claims

the alternative, the Series B Preferred Holders are asking that the Court (i) direct the Debtors to insert appropriate language in the Bar Date Notice informing customers that certain of their claims may be deemed disallowed or withdrawn pursuant to the Liability Issue Procedures and (ii) include provisions in the Bar Date Order that would preserve both the customers' and all other parties' rights with respect to the Liability Issue and clarify that all claims will be subject to the Account Holder Claim Ruling.[13]

## II.    The 1009 Motion Needs to be Decided Before the Bar Date Notice is Distributed.

8.    On October 25, 2022, the Series B Preferred Holders filed the 1009 Motion, seeking amendment of the Schedules to denominate claims in Schedules E/F in their U.S. dollar amounts as of the Petition Date, as required by Bankruptcy Rules 1007 and 1009.  1009 Motion ¶ 5.  If the Court orders the relief requested by the Series B Preferred Holders in the 1009 Motion, the Debtors will be required to amend their Schedules with respect to customer claims.  *See* 1009 Motion, Ex. A.  It would therefore be inefficient for the Debtors to distribute a Bar Date Notice referring to the Schedules in their current state.  If the Schedules were then amended following the Court's ruling on the 1009 Motion, holders of claims would need to re-review the Schedules, as amended, to determine whether they need to file Proofs of Claim, and, in accordance with the Debtors' proposed Bar Date Order, the Debtors would be required to provide notice to each affected holder of claims.  Bar Date Order ¶ 5.

9.    As such, to prevent this potential inefficiency, the Series B Preferred Holders are asking the Court to defer approving the form of the Bar Date Notice until the Court has

---

against CNL are at risk of substantial dilution if the Committee's position on the Liability Issue prevails.  It is therefore imperative that the Bar Date Notice provide significantly more information about the Liability Issue.

[13]    Absent this language in the Bar Date Order (and appropriate notice regarding the Liability Issue Procedures in the Bar Date Notice), the Series B Preferred Holders would be severely prejudiced if, following the Account Holder Liability Ruling in their favor, they have to object to each Customer POC.

ruled on the 1009 Motion.

**III.      The Proposed Way of Handling the Denomination Issue is Improper.**

10.      Another variation in the proposed Proof of Claim Form relates to the Denomination Issue.  Specifically, while the proposed procedures require "any other Claim" to properly be denominated in U.S. dollars, they direct "any Claim based on cryptocurrency(ies) held in an account on the Debtors' platform" to, instead, list "the number of units of each cryptocurrency held in such account."  Bar Date Motion ¶ 18a.  Indeed, nowhere does the proposed Proof of Claim Form ask customers for the amount of their claim in U.S. dollars.

11.      While Bankruptcy Rule 9009(a) allows for alterations of the Official Forms, such alterations are generally minor and non-substantive.[14]  The examples of such potential alterations contained in Bankruptcy Rule 9009(a) itself are as follows: "(1) expand the prescribed areas for responses in order to permit complete responses; (2) delete space not needed for responses; or (3) delete items requiring detail in a question or category if the filer indicates—either by check "no" or "none" or by stating in words—that there is nothing to report on that question or category."

12.      Thus, while it is true that the Court has discretion to adjust Official Form 410 to the needs of a particular case, it should not use such discretion to allow violations of the Bankruptcy Code and Bankruptcy Rules.  Indeed, Bankruptcy Rule 9009(c) requires that the

---

[14]      For example, of the five cases cited by the Debtors in paragraph 27 of the Bar Date Motion for the proposition that "Courts in this jurisdiction regularly deviate from the Guidelines," only one, *In re Voyager Digital Holdings, Inc.*, authorized a proof of claim form modified for anything other than the addition of 503(b)(9) Claims.  In that case, the issue as to whether allowing customers to denominate their claims in cryptocurrency instead of U.S. dollars was proper was not raised.

Official Forms "shall be construed to be consistent with the [Bankruptcy R]ules and the [Bankruptcy] Code."

13.     Allowing claims to be denominated in any units other than lawful currency of the United States is inconsistent with section 502(b) of the Bankruptcy Code, which provides that, upon an objection to a claim, the court "shall determine the amount of such claim in lawful currency of the United States as of the [petition] date . . . ." 11 U.S.C. § 502(b).  As described in the 1009 Motion, courts have consistently interpreted section 502(b) to require that claims denominated in anything other than U.S. dollars be converted to U.S. dollars at the exchange rate prevailing on the Petition Date.  1009 Motion ¶¶ 15-16.

14.     Furthermore, as more fully set forth in the 1009 Motion, if all claims are not denominated in U.S. dollars, such that they may be compared to one another and to the distributions thereon under the future chapter 11 plan,[15] it will be impossible for the Court to conclude that any proposed plan is confirmable because it would be impossible to determine whether the plan complies with the Bankruptcy Code's requirements.  1009 Motion ¶¶ 17-18.

15.     To comply with Bankruptcy Rule 9009(a) and section 502(b) of the Bankruptcy Code, and for the purpose of making plan confirmation possible in these cases, the Proof of Claim Form must require that all claims be stated in U.S. dollar amounts as of the Petition Date.

## Conclusion

16.     Accordingly, the Series B Preferred Holders respectfully request that the Court (i) defer approving the form of Bar Date Notice until the Liability Issue Procedures are in place and ruling on the 1009 Motion or, alternatively, (ii) before approving the Bar Date

---

[15]    One unit of cryptocurrency is not necessarily comparable to another because customers hold a variety of different cryptocurrency coins, as set forth in Section 7 of the Debtors' proposed Proof of Claim Form.

Motion, direct the Debtors to make the changes to the Bar Date Notice and the Bar Date Order

to address the issues identified herein, and (iii) grant the Series B Preferred Holders any other

relief that is just.


Dated:  October 25, 2022
        New York, New York

Respectfully submitted,


/s/  *Dennis F. Dunne*_____          /s/  *Joshua M. Mester*_____
Dennis F. Dunne                               Joshua M. Mester (admitted *pro hac vice*)
Nelly Almeida                                 **JONES DAY**
**MILBANK LLP**                               555 South Flower Street
55 Hudson Yards                               Fiftieth Floor
New York, NY 10001                            Los Angeles, CA 90071
Tel: (212) 530-5000                           Tel: (213) 489-3939
Fax: (212) 660-5219                           Fax: (213) 243-2539

- and -                                       *Counsel to CDP Investissements Inc.*

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,*
*Celsius SPV Investors, LP, and Celsius*
*New SPV Investors, LP*