**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
             kwofford@whitecase.com
             sam.hershey@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
             gregory.pesce@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**STATEMENT WITH RESPECT TO THE DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS' KEY**
**EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") states as follows with respect to the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 1021] (the "**KERP Motion**"):[2]

**Statement**

1. Following its appointment, the Committee engaged with the Debtors regarding the need to substantially cut costs to preserve value and enhance returns for account holders, unsecured creditors, and other stakeholders. In response, the Debtors, among other things, have begun to right size their workforce based upon the scope of their current business operations. For example, at least 102 employees have voluntarily resigned since the commencement of these chapter 11 cases. *See* KERP Motion ¶ 2. As a result of those departures and other steps taken by the Debtors, as of the date that the KERP Motion was filed, the Debtors had approximately 274 employees (down from over 900 employees at the beginning of 2022). The reductions in force have saved the Debtors tens of millions of dollars annually in compensation costs. Furthermore, the Committee is in dialogue with the Debtors about other actions that may further reduce operating costs during these chapter 11 cases.

2. The Committee believes that significantly reducing employee headcount was necessary to bring the Debtors' costs under control and the Committee intends to continue to work to find additional ways in which costs may be cut.[3] However, the Committee also recognizes that

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the KERP Motion.

[3] Daniel A. Frishberg has filed a *Motion to Compel the Debtors to Institute Significant Cost Cutting Measures* [Docket No. 1041] ("**Frishberg Motion**"). The Frishberg Motion notes the significant expense of these chapter 11 cases and seeks to compel the Debtors to reduce costs. *Id.* at 3. Mr. Frishberg states that he is shocked that

many of the Debtors' remaining employees possess important institutional knowledge regarding the Debtors' businesses, have taken on increased responsibilities as part of these chapter 11 cases, and face uncertainty while working for a company in chapter 11.

3. In particular, the Committee is concerned that the risk of continued attrition among key non-insider employees could undermine the Debtors' ability to meet their obligations in these chapter 11 cases, run an efficient sales process, and develop and prosecute a stand-alone plan of reorganization. The Committee is also concerned that additional departures may result in higher costs to the estate. The more employees the Debtors lose, the more they may need to rely on expensive hourly consultants to administer these chapter 11 cases, which will likely increase costs and reduce value available to stakeholders. Moreover, those consultants often lack the institutional expertise possessed by the Debtors' key employees.

4. Recognizing this risk, weeks before filing the KERP Motion, the Debtors presented the Committee with a proposed KERP designed, with the input of independent third party advisors, to provide additional compensation to key employees that the Debtors believe are required to successfully restructure the Debtors' business. The Committee's advisors reviewed that proposal and provided feedback to the Debtors that was intended to ensure that the participant pool and proposed compensation levels were appropriate to meet the Debtors' retention objectives. Following extensive dialogue with the Committee's advisors, the Debtors modified the proposed KERP to address that feedback. The KERP includes 62 employees as potential KERP participants

---

"no one has made a major issue of this so far." *Id.* That is not the case. The prosecution of a chapter 11 case and reorganization of a business (especially a business that is as large and complex as the Debtors) is expensive. Since the beginning of these chapter 11 cases, the Committee has worked with and pushed the Debtors to reduce overhead and cut costs. The Debtors have acted and significantly reduced their cash burn. The Debtors are currently operating as debtors-in-possession and their business judgment is entitled to some degree of deference. The Committee intends to continue to work with the Debtors to cut costs where appropriate. At this time, it takes no position with respect to the Frishberg Motion.

(out of 274 total employees).  The Committee understands that each proposed KERP participant now has increased (and is expected to continue to shoulder) responsibilities related to the restructuring process that are beyond their formal titles, job descriptions, and prepetition responsibilities as a result of the headcount reductions and the administration of these chapter 11 cases.  The total cost of the KERP is approximately $2.9 million, which the Committee understands is in line with comparable programs from comparable companies.  The average $45,000 proposed aggregate payment per participant is also in line with comparable programs.  Moreover, the proposed payments are staggered over the next year to provide employees with a monetary incentive to stay with the Debtors during the pendency of these cases.  Additionally, KERP payments may be clawed back if an eligible employee resigns from the Debtors within six months of their initial KERP payment.  KERP participants will release any and all claims against the Debtors in exchange for their participation in the KERP.  Importantly, the KERP does not provide any payments to insiders or upper-level management.  Finally, the Committee's advisors continue to discuss potential additional steps that the Debtors may pursue to further reduce operating costs during the pendency of these cases.

5. Based upon its review of the KERP, the Committee believes that the program strikes the right balance, will have the intended effect to retain the key personnel required to administer a value-maximizing restructuring, and will not impede efforts to further curtail operating costs under the appropriate circumstances.  For these reasons, the Committee supports the KERP as currently proposed.

**Reservation of Rights**

6. The Committee reserves all of its rights regarding these chapter 11 cases, including with respect to any modifications to the KERP and the form of retention agreement employees will

execute to participate in the KERP, and with respect to any potential transaction proposed in these chapter 11 cases.

| | |
|---|---|
| Dated: October 25, 2022<br>New York, New York | Respectfully submitted,<br><br>*/s/ Gregory F. Pesce*<br>**WHITE & CASE LLP**<br>David M. Turetsky<br>Keith H. Wofford<br>Samuel P. Hershey<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>Email: david.turetsky@whitecase.com<br>      kwofford@whitecase.com<br>      sam.hershey@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile: (312) 881-5450<br>Email: mandolina@whitecase.com<br>      gregory.pesce@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Aaron E. Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Facsimile: (213) 452-2329<br>Email: aaron.colodny@whitecase.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |