HEARING DATE: November 1st at 10 AM EST

OBJECTION DEADLINE: October 27th at 4pm EST

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | Chapter 11 Case No. 22-10964 (MG) |
| **SOUTHERN DISTRICT OF NEW YORK** | (Jointly Administered) |

In re CELSIUS NETWORK LLC, *et al[1]*.,

# DANIEL A. FRISHBERGS' AMENDED MOTION TO COMPEL THE DEBTORS TO INSTITUTE SIGNIFICANT COST CUTTING MEASURES

## INTRODUCTION

    This is a quite unusual request coming from me, a *pro se filer*, and not the UCC/Debtor's/US Trustee/various regulators. What I find even more unusual, is the fact that the UCC/US Trustee/various State and Federal regulators have not filed a motion to cut costs. If no one else will, I guess the responsibility falls upon me.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The estate is–and has been since the start of these proceedings–spending *enormous* sums of money. These high costs are clearly **unsustainable**. The Debtor's own projections state that they will run out of cash before the end of the calendar year. This pace of cash burning is unacceptable and *must* be stopped. I, as a creditor[2] of Celsius Networks LLC am enraged by the wasteful spending, which is directly harming my (and all other creditors) recovery. The estate is running a deficit of an average of $1,525,000 *per day*[3], and unfortunately it is projected to get significantly worse.

If this Chapter 11 Bankruptcy is going to be successful, it is essential that costs are cut as soon as possible–and **not** at a later date, as the UCC/Debtors may suggest. Quite frankly it is shocking that no one has made a major issue of this so far. I am *extremely* concerned that this *entire* bankruptcy is a way for the executives at Celsius to continue paying themselves lavish salaries and bonuses–and to continue to spend *depositor's* money. From my communications with other creditors, I can confidently say that the **vast** majority of them share these same concerns. It is **imperative** to this case that costs are cut significantly, and immediately. I propose the following:

## RELIEF REQUESTED

### PHASE I

At the first hearing on November 1, 2022, I suggest that your honor order a crucial cost cutting measure to take effect immediately (or as soon as legally possible). That measure is to stop paying any and all bonuses/unnecessary benefits/perk/rewards (in effect, anything other than

---

[2] That is what I have been classified as, but I dispute this.
[3] According to their own court filings,
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909022280000000029.pdf
https://cryptoslate.com/celsius-set-to-burn-137-2m-in-3-months-as-bankruptcy-proceedings-continue/

the original salary, I am sure that the Debtors will try to find some way to not do it). It makes no sense to pay a *bonus* to a company's executives, when the company has no chance of making it out of Chapter 11 apart from either an asset sale "free and clear" of the **criminal** and **regulatory** issues that plague this company or–at best–a reorganization under a new brand, but with new licenses and many new staff (and, realistically, not *any* of the old management who'd be getting bonuses and a much leaner team and smaller operation.)

Bonuses are typically issued when a company is doing well/has increased profits and/or when an employee is doing well or is especially useful. In bankruptcy, bonuses imply that executives will do a good job toward building a future for their company. In my opinion, a bankrupt company that had significant losses in excess of $2.5 **billion** (and one that, according to its own Chief Restructuring Officer, may have potentially been **Ponzi Scheme**[4]), and is being investigated by numerous state regulators for fraud and selling unregistered securities (and more), and who's owner/founders (and multiple insiders) have directly used insider knowledge to buy/sell "CEL" tokens[5], and withdraw assets ahead of the "Pause" on withdrawals[6], do not deserve any bonuses. To the contrary, "their" assets should be used to make *depositors* whole, as "their" assets likely are *depositor* assets. It is shocking that after over 3 months of this bankruptcy process–and over 4 months since depositors were able to access *their* assets–Celsius

---

[4] It should be noted, that I am not saying that Celsius was/is a **Ponzi Scheme**, but I reserve the right to do so in the future. It should be further investigated if declaring Celsius a **Ponzi Scheme** would be in the best interests of the depositors/creditors, because of clawbacks going back to the moment of insolvency, civil forfeiture, and other actions to recover dissipated funds..
[5] Which have been alleged to be an unregulated security by multiple state regulators..
[6] For more detailed information see: *Daniel A. Frishbergs' Amended Motion To Compel Insider Clawbacks By The Debtors/UCC.*

still has not made significant cost cutting measures, still has large amounts of employees, and is spending in excess of 1.5 *million dollars daily*[7].

In addition to the cancelation of all bonuses/non-essential benefits, I suggest that the Debtors be ordered to compile a anonymized list of all of their employees/contractors (and any other people/companies being paid by the estate, which I will call "Personnel") along with the person's job title, and their total salary/compensation (to include the *whole* total that they are costing the estate). The Debtors should be ordered to compile this list and present it by the next hearing, whichever is the first to take place after November 1st. The UCC/Examiner/US Trustee/State and Federal regulators, in addition to this court; should suggest significant cuts to "Personnel".

1. These cuts should include getting rid of any duplicate positions/no longer necessary roles (such as the majority of the people managing the "Loan" and "Borrow" programs, since they are no longer operating.)
2. The majority of the "Personnel" working in the "Earn" program, since it is also no longer operating.
3. Any "Personnel" involved with opening accounts/advertising/Public relations/promo codes, etc. For all intents and purposes, those people are of no use/benefit to the estate. Celsius's public image is unfixable; frankly no one will ever trust them ever again. Celsius will not be opening any new accounts for the foreseeable future, so there is no need to retain these people.

---

[7] According to their own court filings,
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909022280000000029.pdf
https://cryptoslate.com/celsius-set-to-burn-137-2m-in-3-months-as-bankruptcy-proceedings-continue/

4. Anyone working to deploy cryptocurrency assets/manage them since the Debtors are not able to do so per court order.

5. Anyone working in risk management, since there isn't any risk to manage since none of the assets will be being any further deployed, and the risk of staking any Proof Of Stake cryptocurrency (which the debtors should be ordered to do, if they are not doing so already) is effectively 0 (when done properly).

6. Anyone in the regulatory compliance department, since they all need to be replaced to get out from under the cease and desist orders that plague the company.

7. Any insider who has withdrawn assets from Celsius based on non-public information, as they will be targets of clawbacks, and it presents a conflict.

8. Cuts to Human Resources (or the equivalent department), since there will be significantly less "Personnel" to manage.

9. Alexander Mashinsky (and his family) should be removed from any and all positions he holds at Celsius Networks LLC, and any and all of its subsidiaries. Specifically, Alexander Mashinsky retains a position as a Director on a board, and ends up controlling the stETH that the Debtors *hold*.

10. A reevaluation of all salaries/compensations for all employees. There is no reason anyone at this (bankrupt) company should be making $30,000 a week.

11. Any other positions the court, the UCC, the US Trustee or various State and Federal regulators recommend.

If the UCC/US Trustee/Various State and Federal regulators are unable to, or do not want to suggest *significant* cuts, I volunteer to suggest them. This, of course, is unusual, but this entire case is unusual. What is **crucial** is that costs are significantly cut as soon as possible.

I also ask that the Examiner and or US Trustee are instructed to investigate the best course of action for the mining portion of Celsius (since it is costing the estate the lion's share of the cash burn currently), and present their findings to the court at the hearing following the November 1 hearing. I am not saying it should be sold for cash right now given a glut of machines on the market and the bankruptcy of Maraton Mining but it needs to be examined for **waste**, **fraud**, and **abuse** *immediately*, and **competent** management needs to be installed. Potentially the machines/property (without the energy contracts which I read may cost 2-3x the industry average) could be exchanged to another large mining company, in exchange for equity in it, with potentially some cash/Bitcoin upfront.

I also ask that the US Trustee and/or the Examiner investigate the Debtors and the UCC (and their various legal counsel's) for breach of fiduciary duty, negligence and potential malpractice, as laid out in my partial joinder[8] to the Examiner's motion to expand her scope.

In general, I ask that the court order the Examiner and/or the US Trustee to investigate the best way to cut costs significantly across the board, and then present their proposals at the hearing following the November 1st hearing.

---

[8] https://cases.stretto.com/public/x191/11749/PLEADINGS/117491019228000000107.pdf

I also ask that the court considers appointing a Chief Restructuring Officer in the future if the Debtors continue to be unable to properly fulfill their fiduciary duties, and reserve the right to file a Motion for the Appointment of a Trustee if cost-cutting measures are not instituted immediately.

### **PHASE II**

For Phase II, the court should order the cuts that were recommended, if the court so chooses. The court also may want to order larger cuts, specifically to the largest money outflow: the mining business. And any other measures that it sees fit.

### **Cause Exists For The Appointment Of A Chapter 11 Trustee Under Section 1104(a)(1)**

Section 1104(a) of the Bankruptcy Code provides:

At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court **shall** order the appointment of a trustee—

(1) **for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case,** or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

(2) i**f such appointment is in the interests of creditors**, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an Examiner is in the best interests of creditors and the estate.

A chapter 11 trustee may be appointed if there is "cause" or if the "appointment is in the interest of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. section 1104(a)(1) and (2). Pursuant to Bankruptcy Code section 1104(a), courts have broad discretion in determining whether to appoint a Chapter 11 trustee, and may even do so *sua sponte. See In re Wings Digital Corp.*, 2005 WL 3789334 at *4 (Bankr. S.D.N.Y. 2005). The party requesting the appointment of a trustee has the burden of proof in demonstrating "cause." *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).

Under section 1104(a)(1), the party requesting the appointment of a trustee must demonstrate **fraud, dishonesty, incompetence or gross mismanagement**[9] of the affairs of the debtor by current management, either before or after the commencement of the chapter 11 case. *See In re Adelphia Communications Corp.*, 342 B.R. 122, 129 (S.D.N.Y. 2006); *In re United States Communications of Westchester, Inc.*, 123 B.R. 491, 495 (Bankr. S.D.N.Y. 1991). Going further, the inquiry into whether "cause" exists for such an appointment is not limited to the enumerated list of fraud, dishonesty, incompetency or gross mismanagement, but extends to "similar cause."

---

[9] The Debtors, in various court filings including declarations effectively admitted to incompetence and gross mismangagment (rather than what may have happened: **fraud**).

All six factors, of which only one is required, are met in this case:

**a. materiality of the misconduct;**

**b. evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;**

**c. the existence of prepetition voidable preferences or fraudulent transfers;**

**d. unwillingness or inability of management to pursue estate causes of action;**

**e. conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; and**

**f. self-dealing by management or waste or squandering of corporate assets.**

*See In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005) (ruling cause included, *inter alia,* failure of debtor to preserve or pursue avoidable transfer for benefit of estate). This is exactly what has happened/is currently happening. The Debtors have spent the past three months of the bankruptcy (and they must have known about the withdrawals, since they had more than a month from when they occurred to the petition date to do due diligence) not pursuing clawbacks. It will likely significantly benefit the estate, and the creditors' recovery to simply appoint a Chief Restructuring Officer.

This bankruptcy was clearly structured in a way to allow them to attempt to claim the assets of "Custody" account holders as well. It is no coincidence that the bankruptcy filing happened exactly 89 days after "Custody" accounts were set up. It's a running joke among creditors how Kirkland and Ellis said "nothing to see here, Your Honor." Unfortunately, it is also a (tragic) running joke that the lawyers and executives/consultants will pay themselves all of our

assets, and then say "well we tried, guess it's time for a chapter 7 bankruptcy", leaving us with next to nothing (after several years), and getting the customary golden parachutes (for themselves). Another one of the many running jokes, is Kirkland's (and partially the UCC's) comments about "open and honest communication" and how they are working towards "maximizing recovery for creditors". It is my *opinion* that Kirkland and Ellis are under the impression that if they say something enough, people will start to believe it.

The Debtors (and their attorneys, Kirkland and Ellis, due to going along with it) clearly breached their fiduciary duties to their creditors, by both knowingly allowing large preferential payments to insiders (including the CEO, and other executives) while knowingly insolvent. *See*, e.g., *In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3d Cir. 1989) (finding "cause" in management's failure to discharge fiduciary duty to pursue prepetition voidable transfers when **debtor corporation and transferees shared common management**[10]); *NBD Park Ridge Bank v. SRJ Enters., Inc. (In re SRJ Enters., Inc.)*, 151 B.R. 189, 194–95 (Bankr. N.D. Ill. 1993) (holding debtor in possession breaches its fiduciary duties to creditors of estate if it "**unjustifiably fails to institute a suit to recover a voidable preference**[11]"); *In re Holly's, Inc.*, 140 B.R. 643, 686 (Bankr. W.D. Mich. 1992)(finding cause for appointment of trustee where debtor breaches fiduciary duties); *In re William Vaughan & Co., Inc.*, 40 B.R. 524, 526 (Bankr. E.D. Pa. 1984)(determining appointment of trustee appropriate following debtor's failure to commence proceedings for avoidance of transfer where transfer was to debtor's president and would not likely be subjected to scrutiny).

---

[10] Emphasis added.
[11] Emphasis added.

Gross mismanagement is also sufficient "cause" to appoint a chapter 11 trustee. See, e.g., *In re Colby Constr. Corp.*, 51 B.R. 113, 117 (Bankr. S.D.N.Y. 1985)(finding "cause" upon, inter alia, majority shareholder's depletion of debtor's assets to pay exorbitant membership dues in his various clubs and for lavish Christmas party, while at same time not fully paying subcontractors funds received on their behalf); *In re McCorhill Pub., Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987) (finding "cause" upon debtor's "**gross mismanagement**[12]" in failure to maintain complete and accurate financial records and substantiate undocumented transactions[13]).

The *McCorhill* court cited the fact that "the principals of the debtor occup[ied] conflicting position in the transferee companies" was ground for appointment of a trustee. See 73 B.R. at 1017. The same applies in this case, as the CEO and other insiders transferred money to themselves, at the expense of their (soon to be) creditors when knowingly insolvent.

I am not filing a motion[14] for a Chapter 11 trustee today, but if I were to file one, I believe that doing so would be an easy decision for this court, with all six factors met. The Debtors (and UCC) *need* to stop playing ($2,000 a hour) games and start *cutting* costs.

All of the above are reasons why the court should **not** approve *any* (further) expenses and dissipation of funds from the estate; to any and *all* consultants, advisors, **legal counsel**, etc, until *after* the wrongfully withdrawn funds have been returned. It *may* very well be **malpractice** for Kirkland and Ellis (and the UCC/other legal counsels/financial advisors/consultants) to know about the insider withdrawals and do *nothing* about it for the approximately 4 months they have been working for Celsius/the bankruptcy estate.

---

[12] Emphasis added.
[13] Certain (unnamed) insiders have claimed that the withdrawals by insiders were substantially larger than declared, and that the Mashinsky's may
[14] I reserve any and all rights to do so in the future.

Signed:

/s/*Daniel A. Frishberg*

Daniel A. Frishberg, *Pro Se*

October 25th, 2022

Hillsbourough County, Florida,