**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
          kwofford@whitecase.com
          sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
          gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com



*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered)<br>Re. Docket Nos. 1104 & 1112 |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OMNIBUS RESPONSE TO MOTIONS RELATING TO THE SCOPE OF THE EXAMINATION

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") states as follows in support of this (a) limited objection to the *Examiner's Motion to Confirm Examination Scope or Alternatively for Expansion of the Scope of the Examination* [Docket No. 1112] (the "**Scope Expansion Motion**") and (b) objection to *Ignat Tuganov's (A) Response to Examiner's Motion to Approve Work Plan, and (B) Motion to Clarify or Expand Scope of Examiner's Investigation* [Docket No. 1104] (the "**Tuganov Motion**"):[2]

### Limited Objection to the Scope Expansion Motion

1.    Since its formation, the Committee has sought to responsibly balance and manage the time and costs of administering these chapter 11 cases with its ultimate goal of maximizing value for account holders and general unsecured creditors. In response to the overwhelming public outcry from account holders, the Committee also immediately commenced an investigation into potential claims and causes of action against the Debtors and their current and former insiders, including the circumstances leading to the "Pause" and material misrepresentations by the Debtors, Mr. Mashinsky, and other insiders. *See* Docket No. 390. In connection with those efforts, the Committee has served hundreds of discovery requests on the Debtors and their current and former insiders, including requests to produce the Debtors' public communications (including communications that were subsequently removed from the internet), information required to identify misrepresentations made in those communications, and the Debtors' use of the CEL token. The Committee has also served third-party discovery on entities that conducted business with Celsius and has sought discovery from Celsius' former officers and directors. Based on comments

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Scope Expansion Motion.

2

on the record in these proceedings, the Committee also understands that many state regulators are investigating the same conduct. While the Committee's investigation is ongoing, it has spent significant time and effort developing potentially actionable causes of action against the Debtors and their insiders. The Committee is committed to ensuring that those causes of action are pursued by appropriate means at the appropriate time.

2. In light of the work done (and expense incurred) at the time the United States Trustee ("**UST**") moved for the appointment of an examiner, the Committee reached an agreement with the UST to an agreed proposed examination scope that is appropriately tailored to the facts and circumstances of these cases. *See* Docket No. 752. That scope was approved by the Court, which also directed "the Examiner and the Examiner's professionals [to] consult with the Committee, the Debtors and the UST, and review the *pro se* filings related to the [Examiner] Motion, to consider whether any revisions to the Scope are appropriate." Examiner Order ¶ 16.

3. Following the Examiner's appointment on September 29, 2022, the Committee's counsel and the Examiner and her counsel have engaged in extensive dialogue regarding her examination, including potential steps to reduce the costs of the examination. To that end, the Committee met with the Examiner multiple times to bring her up to speed on the facts it had discovered regarding Custody and Withhold accounts and how the Debtors held their cryptocurrency and other digital assets. The Committee has also made its blockchain forensic expert, Elementus Inc., available to the Examiner in an effort to avoid unnecessary duplication of professional expense. As detailed in the *Official Committee of Unsecured Creditors' Reservation of Rights Regarding the Examiner's Motion to Approve Work Plan* [Docket No. 1105], the Committee believes that the Work Plan contemplates matters that are not justified by the scope approved under the Examiner Order.

4.      Prior to the filing the Scope Expansion Motion, the Examiner notified the Committee that she intended to expand the scope of her examination to include a wide ranging investigation into the CEL token and public misrepresentations by the Debtors and their former executives.

I. **The Court Should Not Expand the Examiner's Investigation as Proposed in the Scope Expansion Motion.**

5.      By the Scope Expansion Motion, the Examiner purports to "clarify" that two topics are within the scope of the Examiner Order:

- An examination of the Debtors' CEL tokens, including why and how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded—including whether any of the Debtors' trading practices involving CEL tokens generally or determinations of CEL tokens awarded as part of the Earn Rewards program—impacted their value; and

- An examination of the representations Debtors generally made in public representations to customers to attract them to their platform and about their cryptocurrency holdings and account offerings.

6.      As an initial matter, the Committee acknowledges that paragraph 3.i of the Examiner Order—which provides for "[a]n examination of the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled"—encompasses certain matters related to CEL tokens. Therefore, the Committee has no issue with an examination of the Debtors' CEL tokens, including how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded—including a finding of the resulting value of CEL tokens as a result of any of the Debtors' trading practices involving CEL tokens generally or determinations of CEL tokens awarded as part of the Earn Rewards program.

7.      The remainder of the relief requested in the Scope Expansion Motion is not "clarify[ing]" in nature. For example, except as otherwise noted in the preceding paragraph, the

4

matters related to the CEL token identified in the Scope Expansion Motion were not within the scope originally proposed by the UST or the scope approved by the Court. Nor do those matters appear to be limited in any way.

8. The Examiner's expansion to include regarding public communications to customers are similarly not clarifying in nature. The Examiner Motion specifically noted the Debtors' customers had written letters to the Court to express grievances . . . that current management made regular public announcements to customers assuring them of the safety of their crypto assets through regular AMAs (Ask Me Anything) when management was aware of the danger surrounding investments." Examiner Mot. ¶ 39. But neither the scope originally proposed by the UST nor the scope approved under the Examiner Order encompassed such communications.

9. Alternatively, the Examiner asserts that the proposed expansion is appropriate in light of the "Court's directive that she review the *pro se* letters and advise the Court about any issues she believes should be addressed." Scope Expansion Mot. at 3. While certain "*pro se* filings related to the [Examiner Motion]," Examiner Order ¶ 16, address issues involving CEL tokens and potential misrepresentations made by the Debtors to account holders, the Committee opposes any expansion of the examination's scope to address those matters for three principle reasons.[3]

10. *First*, an examination of the Debtors' public statements would duplicate work already done by the Committee. The Debtors' public marketing includes hundreds of hours of YouTube videos and thousands of tweets, blogs, and other posts on social media. These communications have been at issue since the Pause and formed a large part of the public outcry that accompanied the filing of these chapter 11 cases. The Committee's professionals have spent

---

[3] Indeed, at least one *pro se* filing supported the Committee—rather than the Examiner—investigating issues involving the CEL token. Docket No. 779 at 4 ("I am supportive of the UCC continuing to do the bulk of the investigations, and am especially interested in them continuing to investigate . . . [t]he CEL token.").

5

a significant amount of time reviewing these communications and developing potential causes of action that may result from those public statements (including numerous hours of YouTube AMAs and interviews by Alex Mashinsky and other insiders). There is simply no reason to duplicate those efforts. Moreover, those misrepresentations are public and have been highlighted in many of the letters filed with the Court.

11.    *Second*, the Committee has concerns regarding whether the Examiner can address the proposed expanded scope by the December 10, 2022 deadline for the Examiner's final report. The Committee—whose investigation began two months before the UST ultimately selected an examiner—has learned from its own investigation that those matters are extremely time intensive and the Committee continues to await responses from the Debtors regarding key information and documents. Based on that experience, the Committee is highly skeptical that the Examiner could appropriately address these matters—in addition to the topics already encompassed by the examination—by the time her final report is due.

12.    *Finally*, the Committee is concerned that the requested relief, if granted, would lead to an extension of the deadline for the Examiner to file her final report. The risks of any potential further delay due to the examination are even greater today than they were on September 14, 2022 when the Court entered the Examiner Order. Among other things: (a) significant professional costs are being incurred each month; (b) the timing of the Debtors' emergence from chapter 11, and the ultimate terms and structure of their restructuring plan, remain in flux; (c) the Debtors expect to require incremental liquidity to emerge from bankruptcy; and (d) Core Scientific, Inc. (a significant contract counterparty for the Debtors' mining operations) recently disclosed that it "potentially could seek relief under the applicable bankruptcy or insolvency laws." Current Report (Form 8-K) (Oct. 26, 2022) at Item 8.01. While the effects of a potential Core Scientific

bankruptcy filing are unknown, the Committee is concerned that such a filing could result in less revenue for the Debtors in the immediate future and affect the value of the Debtors' bitcoin mining operation, to the detriment of stakeholders. In short, these cases need to move forward expeditiously to ensure account holders receive maximum value as soon as possible. The assets held by the Debtors may be subject to extreme market swings, and other recent events raise concerns with respect to the Debtors' other operations. Therefore, the Court should deny the Scope Expansion Motion to the extent set forth herein.

13.     Furthermore, in any event, whether or not the Court grants the Scope Expansion Motion or any part thereof, the Committee requests that the Court require that the Examiner complete her final report by the existing deadline with respect to any additional matters, the Debtors provide all information and documents promptly and without any delay to the Examiner, and that the Debtors contemporaneously share any information or documents provided to the Examiner in connection with her examination to the Committee.

### Objection to the Tuganov Motion

14.     Mr. Tuganov asserts that the examination should be expanded to investigate whether the Debtors' business operations amounted to a Ponzi scheme, and if so, when the Ponzi scheme began. Mr. Tuganov contends such an investigation is necessary in light of, among other things, (a) the admission by the Debtors that Celsius has never earned sufficient revenue to support the yields paid to investors, (b) the numerous ongoing state and federal investigations into the Debtors' conduct, and (c) concerns regarding withdrawals made by certain insiders ahead of the Petition Date. Tuganov Mot., ¶¶ 10 11.

15.     The Court should deny the Tuganov Motion for the same reason that it should deny the Scope Expansion Motion. There is no question that the Debtors' prepetition business practices

7

warrant scrutiny. However, the matters cited by Mr. Tuganov are well within the ambit of the Committee's ongoing investigation.

16. Furthermore, the Debtors are no longer providing the Earn service that Mr. Tuganov asserts constituted a Ponzi scheme. To the extent the Debtors or any successor thereto (such as a buyer) proposes to provide some or all of those services, the proponent of that transaction would need to demonstrate to the Court that the transaction is feasible and complies with applicable law. *See* 11 U.S.C. §§ 1129(a)(3), (11). As such, the Committee expects that the proponent of any such transaction would need to demonstrate that the continuation of any of the Debtors' prepetition services are not a Ponzi scheme. Accordingly, the Court should deny the Tuganov Motion.

## Reservation of Rights

17. This objection is submitted without prejudice to, and with a full reservation of, the rights of the Committee with respect to the examination, including the right to supplement or amend this objection, raise additional objections to the examination, and present evidence at the hearing relating to the examination.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Committee requests that the Court deny the Scope Expansion Motion (to the extent set forth herein) and the Tuganov Motion and grant such other relief as is just and proper under the circumstances.

Dated: October 29, 2022
New York, New York

Respectfully submitted,

/s/ *Gregory F. Pesce*

**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
kwofford@whitecase.com
sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*