Hearing Date and Time: November 1, 2022 at 11:00 a.m. EDT

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Proposed Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CELSIUS NETWORK LLC, *et al.*[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

**EXAMINER'S REPLY IN SUPPORT OF HER (1) MOTION
TO CONFIRM EXAMINATION SCOPE OR ALTERNATIVELY
FOR EXPANSION OF THE SCOPE OF THE EXAMINATION
AND (2) MOTION TO APPROVE EXAMINER'S WORK PLAN**

Shoba Pillay, the duly appointed Examiner, respectfully submits this Reply in support of

her *Motion To Confirm Examination Scope Or Alternatively For Expansion Of The Scope Of The*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*Examination* (Dkt. 1112, the "**Clarification Motion**") and *Motion To Approve Examiner's Work Plan* (Dkt. 1013, "**Work Plan Motion**"), and states:

## REPLY IN SUPPORT OF CLARIFICATION MOTION

1. As all parties, including the Committee recognize, this chapter 11 case involves "unprecedented facts and circumstances" and therefore "transparency is absolutely imperative." (*See* 9/14/22 Tr. at 31, 32 (remarks of Committee's counsel).) As a result of the need for transparency, the Court directed the appointment of a neutral party—the Examiner—to investigate not only the issues the Committee and the Debtors negotiated with the United States Trustee, but also to "review the pro se filings related to the [Examiner] Motion, to consider whether any revisions to the Scope [of her examination] are appropriate." (*See Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. 820] (the "**Examiner Order**") ¶ 16.) The Court explained that it added this additional mandate to the Examiner's remit because it thought that the *pro se* filings raised "very good questions" and the Court wanted to be sure that those questions were "appropriately reviewed." (9/14/22 Tr. at 52.)

2. The Examiner followed the Court's instructions. She reviewed the *pro se* filings and the many questions they raised with an eye towards the other stated concerns of the parties—that her examination not become prohibitively expensive or time consuming. As a result of her review of the *pro se* filings and the numerous communications she received from customers, the Examiner identified two issues that are arguably already within the scope of her mandate and which can, assuming cooperation from the Debtors, be completed within the sixty-day time frame

(or a very short extension of the same) and without interfering with any sale or plan process the Debtors propose.

3.      The Examiner believes that her work will assist all parties in this case precisely because she is neutral and her work will be public, allowing all parties to have a basic understanding of the facts. She has proposed in her conversations with the Debtors, the Committee, and others that, after she completes her report, a database be created with the materials she reviewed so that all parties in the case will have access to the documents that inform the facts she has found. This has been done in other examinations and the Examiner believes will provide value to all parties in whatever future litigation or negotiations take place in these cases.

4.      What the Examiner proposes to do—publicly report on the facts—is very much unlike whatever work the Committee has undertaken. The Committee explains that the work it is doing is being done to "develop[] potentially actionable causes of action against the Debtors and their insiders." (*See The Official Committee of Unsecured Creditors' Omnibus Response To Motion Relating To Scope Of The Examination* [Dkt. 1230] ("**Committee's Response**") ¶ 1.) Given the purpose of the Committee's work, the Committee will undoubtedly (and properly) invoke work product and attorney-client privileges to protect some of its work from public disclosure. When (and if) the Committee discloses its work product, it will likely be in the context of litigated matters and only to the extent that the Committee believes disclosure supports its position. Thus, the Committee's work—while valuable for other reasons—does not promote the transparency that drove the decision to appoint an Examiner and has caused the customers to repeatedly make filings asking for information.

5.	Four parties have commented on the Examiner's Clarification Motion. Two *pro se* customers support it. (*See* Dkt. 1134, 1217.)

6.	The Debtors do not object; instead, they "reserve their rights" stating that they are concerned about the amount of time the investigation might take and its cost. (*See Statement and Reservation of Rights Regarding (I) the Examiner's Motion To Confirm Examination Scope or Alternatively for Expansion of the Scope of the Examination and (II) Ignat Tuganov's (A) Response to Examiner's Motion To Approve Work Plan, and (B) Motion To Clarify or Expand Scope of Examiner's Investigation* [Dkt. 1229] ¶¶ 2-3.) But as stated in the Examiner's Clarification Motion, the Examiner believes the clarified topics can be completed within the budget and time frame set forth in her Work Plan *assuming* the Debtors cooperate in the expedited production of documents and other information, including providing access to individuals with the necessary information.

7.	For its part, the Committee states it has "no issue" with the Examiner examining "the Debtors' CEL tokens, including why and how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded – including whether any of the Debtors' trading practices involving CEL tokens generally or determinations of CEL tokens awarded as part of the Earn Rewards program – impacted their value." (*See* Committee's Response at ¶ 6.) Accordingly, the Examiner requests that this part of its Clarification Motion be granted.

8.	While the Committee takes no issue with the first proposed clarification, the Committee urges the Court not to allow the Examiner to investigate "the representations Debtors generally made in public representations to customers to attract them to their platform and about their cryptocurrency holdings and account offerings." (*See* Committee Response at ¶¶ 9-12.) The

Committee offers three inconsistent reasons why the Court should reject this clarification of the Examiner's investigation scope.

9. The Committee first contends that the work will duplicate what the Committee is doing. (*Id*. at ¶ 10.) But in the same breath, the Committee also states that it has been waiting for the Debtors to produce the information needed to do this work for some time. (*Id*. at ¶ 11.) The points are inconsistent: *either* it has already completed this work *or* it hasn't, but it cannot complain about duplication if, as it also argues, it is "highly skeptical" that the Examiner will receive the necessary materials to do the work when the Committee apparently is still waiting for the same. (*Id*.) The Examiner submits that given that she is a neutral who will publicly report on the Debtors' representations and given the consistent request by customers that this issue be the subject of a public report,[2] that the Examiner and the Committee work together to leverage whatever information the Committee has been able to collect to date, and that the Debtors be required to produce to the Examiner on an expedited basis the materials the Committee states it has not received so that the Examiner can publicly report on this topic.

10. The Committee's second and third arguments against allowing the Examiner to report on the Debtors' representations to customers similarly conflict with each other. The Committee argues, on the one hand, that the Debtors will not provide the information needed to do this work quickly enough for the Examiner to complete her report because the Debtors apparently have not responded to the Committee's requests for information on this subject. Inconsistently, the Committee argues that the parties need the Examiner's Report without delay so the case can move forward. But there is a disconnect here. *Either* (i) information about the Debtors'

---

[2] *See* Clarification Motion at ¶¶ 9-10; *see also* Dkt. 82, 86, 103, 107, 108, 113, 116, 117, 128, 131, 136, 138, 140, 153, 160, 165, 171, 173, 183, 184, 201, 204, 206, 212, 214, 217, 262, 263, 269, 356, 386, 451, 460, 484, 488, 497, 534, 536, 558, 562, 569, 589, 1162.

5

representations is crucial to the progress of the case and therefore it makes sense to put this issue in the hands of an examiner who is neutral and can raise any concerns about the Debtors' production of information more readily than the Committee can (given that the Committee has many other issues to contend with and balance), *or* (ii) the Debtors' representations are not as critical as the Committee contends because if the Examiner allegedly will not be able to do the work in the prescribed time period, neither will the Committee (which admits it is still waiting for the necessary information).

11.  In light of the Committee's tacit concession that it has not completed an examination of the Debtor's public representations and the fact that this topic is a central concern of customers who want public information on the same, the Examiner requests that the Court overrule the Committee's objection and find that this topic is within the scope of the Examiner's investigation topics.

## REPLY IN SUPPORT OF WORK PLAN

12.  No party objected to the Examiner's Work Plan. Ignat Tuganov argues that the Examiner should undertake an investigation of whether the Debtors operated a Ponzi scheme. (*See Ignat Tuganov's (A) Response to Examiner's Motion To Approve Work Plan, and (B) Motion To Clarify or Expand Scope of Examiner's Investigation* [Dkt. 1104]; *see also Víctor Ubierna de las Heras's Joinder* [Dkt. 1221]; *Immanuel Herrmann's Partial Joinder* [Dkt. 1222].) The Examiner would be in a position to do this work if the Court orders it. However, if the Court is inclined to add this to the examination, the Examiner suggests that the issue be framed in terms of factual findings. The ultimate legal conclusion of whether the Debtors engaged in a Ponzi scheme or other fraud is for the Court to decide. Rather than asking the Examiner to conclude whether the Debtors' business operations were a Ponzi scheme, the Examiner suggests that any examination of this issue

6

should be framed as a factual inquiry, *i.e.*, did the Debtors use deposits by later customers to repay amounts due to earlier customers and if this occurred, what was the extent of this practice, when did it start, and for how long did this occur.

13. The Committee also filed a Reservation of Rights to the Work Plan. (*See The Official Committee Of Unsecured Creditors' Reservation Of Rights Regarding The Examiner's Motion To Approve Work Plan* [Dkt. 1105].) In its Reservation, the Committee states that it is concerned that the Examiner will spend too much time monitoring investigations by governmental entities. (*Id*. at ¶ 5.) The Examiner does not intend to spend significant time on this task, but the governmental investigations are relevant to the extent that they provide public information about the areas of the Examiner's investigation and because the Debtors have claimed that these investigations led to the change in account offerings in April 2022, which is already the subject of topic (ii). With respect to the Committee's concerns about costs (*id*. at ¶ 7), the fee examiner along with the Court that will police any excess fees incurred by any party. The Examiner is mindful of the need to work efficiently in this case and intends to do so.

(*Signature page follows*.)

## CONCLUSION

The Examiner respectfully requests that this Court enter an Order approving her Work Plan and granting her Clarification Motion and that the Court grant such other relief as may be just.

Dated: October 31, 2022

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ *Catherine L. Steege*
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com
csteege@jenner.com

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
ksadeghi@jenner.com

*Proposed Counsel to the Examiner*