**HEARING DATE: November 1st at 10 a.m EST**

**OBJECTION DEADLINE: October 27th at 5 p.m EST**

**UNITED STATES BANKRUPTCY COURT**         Chapter 11 Case No. 22-10964 (MG)

**SOUTHERN DISTRICT OF NEW YORK**         (Jointly Administered)


In re CELSIUS NETWORK LLC, *et al[1].,*


# DANIEL A. FRISHBERGS' RESPONSE TO DEBTORS' OMNIBUS OBJECTION AND RESERVATION OF RIGHTS TO DANIEL A. FRISHBERG'S REQUESTS FOR RELIEF


Daniel A. Frishberg ("Mr. Frishberg") files this response (the "Response") to *Debtors' Omnibus Objection  And Reservation Of Rights To Daniel A. Frishberg's Requests For Relief* [Docket No. 1211] (the "Objection"). In support of this Response, Mr. Frishberg states as follows.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

## **Clarification About So-called "Significantly" Amended Motions**

https://www.diffchecker.com/2Kv4pPbY

The difference between my amended clawback motion filed on 10/13/2022[2] and my second amended clawback motion filed on 10/26/2022 is negligible. If you check the above link, you will find that the vast majority of the "significant" changes are footnote numbers being changed, and dates/date related changes, and the removal of the notice of the hearing. Less than 2 short paragraphs of new content were actually added. At first glance at the linked changes, they *seem* significant, but after closer analysis, you can tell that the majority of the changes are extremely minor and irrelevant. It does not matter if a quote is on footnote number 17 instead of footnote number 16. Also, the dates being adjusted to fit a new timeline (after the Debtors and UCC refused to consent to a expedited timeline) is a non-significant change.  It seems silly for the Debtors (with their extremely expensive) legal counsel to make such a big deal of this. I believe that Kirkland and Ellis *may* not **have actually read** the Amended Motions, but simply checked the page number counts. The reason the page number count jumped was because I changed the spacing from 1.15x to 2x, and added 2 enters/spaces in between paragraphs. For the Amended Clawback Motion, I removed the notice of the hearing (as the UCC had already so kindly filed one on my behalf), and modified the dates.

## **Response**

### 1.    **The Debtors Objection(s) Should be Overruled.**

---

[2] Docket Number 1052, was filed on October 13th, 2022, after new information came out at the 341 hearing held on the same day. The Debtors/UCC allege that this provided a lack of notice, I disagree, over two weeks would have passed between the filing, and the hearing on 11/1/2022.

# Cost Cutting Motion

**I.    The Cost Cutting Motion Does Not Need to State a Proper Basis for Relief.**

The Debtors' argument that my Motion does not state a proper basis for relief is irrelevant. As was held in numerous court cases, (including Supreme Court cases[3]) a *Pro Se* litigant, as The Supreme Court Of The United States[4] said: "a p*ro se* complaint, "however inartful pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 520 521, quoting *Conley v. Gibson*, 355 U.S. 41,45 46 (1957)." Rule 8 provides that "'pleadings shall be so construed as to do substantial justice." As SCOTUS stated:"We frequently have stated that *pro se* pleadings are to be given a liberal construction[5]. *Baldwin County Welcome Center v. Brown*[6]'". SCOTUS also noted that pro se plaintiffs should be afforded "special solicitude." *Rabin v. Dep't of State*[7]. Your Honor has the ability "liberally" construe my Motions.

**II.    Court Order, and Judgment.**

As the Debtors themselves stated  "A debtor in possession may operate its business **absent a contrary order of the court**[8]. 11 U.S.C. § 1108[9]". Your Honor could *simply* order them

---

[3] LARAEL OWENS., Larael K Owens vs. MARIA ZUCKER, MICHEL P MCDANIEL, POLK COUNTY DEPARTMENT OF REVENUE, MARK MCMANN, TAMESHA SADDLERS. RESPONDENT(S) Case No. 18-12480
[4] From henceforth, to be referred to as SCOTUS.
[5] Emphasis added.
[6] 466 U.S. 147,104 S. Ct. 1723,80 L. Ed. 2d 196,52 U.S.L.W. 3751.
[7] No. 95-4310,1997 U.S. Dist. LEXIS 15718.
[8] Emphasis added.
[9] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910272280000000083.pdf
Paragraph 2.

to perform the cost cutting measures (or anything that the court sees fit) that I suggested in my motion, any that the US Trustee, Examiner, or UCC may suggest, and any other cuts that the court wishes. The Debtors also stated: "A debtor's business judgment will be respected if the debtor made an informed decision in good faith and with the honest belief that the action taken is in the best interests of the company". I do not believe that any reasonable person will think that paying insiders/executives *millions* of  dollars of *depositors'* money, while the company is not only bankrupt, but also the fact that after **over 4 months** (and the company running *critically* short of cash due to the debtors negligent spending) after the petition, those same executives have yet to propose a plan. The US Trustee hit the nail on the head (so to speak) when she said: "The Debtors filed for bankruptcy **over** three months ago, with **no** plan of reorganization on the horizon[10]"  (or formulate any plan that stands even a chance of being accepted by the creditors). Many of those same executives that have influence in the company are *highly* likely to be targets of clawbacks in the future (that is if the Debtor ever *decides* to pursue them, they *seem* to be hinting that they have no intention of doing **any** clawbacks, or allowing anyone else to do them either). Also, as the US Trustee pointed out "It defies logic, not to mention the Bankruptcy Code, that a company where the majority of its functions are no longer providing services, would now propose a multi-million dollar bonus scheme". Does a company who effectively provides no services, is bankrupt, and has a massive spending deficit, choosing to provide large bonuses (while holding *depositors' money* effectively hostage) seem reasonable, or in good faith? To me, it does not seem like either; to the *contrary*, it seems like *another* clear breach of the Debtor's fiduciary duties to do this.

---

[10]A quote from the US Trustee, added emphasis.
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910272280000000057.pdf

### III.    Conflicts of Interest.

There also *seems* to be a **serious** conflict of interest at Celsius. The people in charge of restructuring Celsius are getting *extremely* generous (to put it politely) salaries. They are also largely insiders, who *should* be targets of clawbacks. Unsurprisingly these insiders seem to have no plans of commencing clawbacks against themselves/their partners in crime[11]. The fact that the very people who are incharge of the so-called[12] restructuring, are being paid monthly, and not contingent on a successful restructuring/exit from Chapter 11 says enough about their intentions. Contrary to what they, and their legal counsel has been saying, Celsius has shown **very** little to **no** *progress*. Effectively all they have done is what the court **ordered** them too. The insiders who are incharge of Celsius and its restructuring have every *incentive* to *impede* and *delay* this process for as long as they can. Because not only do they keep getting paid exorbitant sums of *depositors' money*, but they seemingly (since not much has been accomplished in over 4 months) are doing little to no work.

### IV.    Restructuring Committee.

David Barse, who is being paid $107,500.00 for *supposedly* restructuring seems to be working so *hard*, that he has time to go on TV[13] and talk about stocks, and their earnings. He is one of *only* two members of the Special Committee which effectively controls the restructuring process of the Debtors. Even the UCC has had trouble meeting with them, as they stated at the

---

[11] I use this phrase as a general saying, and am not accusing them of any crimes, except Alexander Mashinsky, there is ample evidence to suggest that he participated/organized (as state regulators allege) large amounts of fraud, lying to investors, lying to customers and securities fraud.

[12] Celsius in its current form, with any of the current management is effectively dead. No one will ever trust them again, and the only path I see forward is either a completely reorganized company with new management/mostly new employees, or a sale free and clear.

[13] https://twitter.com/TDANetwork/status/1582730779100155904?s=20

hearing on October 20th, 2022. This committee, and Celsius's current management should be

ordered by the court to start *actually* doing their jobs (that the *depositors* have paid them quite

handsomely for), or be removed to allow someone else, such as a Chief Restructuring Officer do

it. It seems in the interests of the Special Committee, along with all insiders (and any

consultants/attorneys/advisors) to drag this out for as long as possible. The only people whose

interests are seemingly not being taken into account are the *creditors*. The Debtors are *clearly*

breaking the **fiduciary** duties that they hold to the estate, and its creditors. The UCC, and the

UCC's counsel should be able to have much better access to the Special Committee (and not

have to communicate through their various counsel's).


V.    **For The Benefit of The Creditors.**

Section 503 governs the allowance of administrative expenses (such as salaries, wages,

bonuses etc) "for <u>actual, necessary costs and expenses</u>[14] of preserving a debtor's bankruptcy

estate." 11 U.S.C. § 503(b)(1)(A). The two general overriding policies of Section 503 of the

Bankruptcy Code are: (i) **to preserve the value of the estate for the benefit of its creditors**[15]

and (ii) **to prevent the unjust enrichment of the insiders of the estate at the expense of its**

**creditors**[16]. *In re Journal Register Co*., 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009) (citing

*Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc*., 789 F.2d 98. 101 (2d Cir. 1960))

(additional citations omitted). I do not think that paying insiders (who are likely to be targets of

clawbacks) benefits the estate in any way. What value does Alexander Mashinsky (and other

---

[14] Emphasis added.
[15] Emphasis added.
[16]Emphasis Added.

insiders who effectively helped push Celsius into bankruptcy, partially with their incompetence, alleged criminal activities[17] and by withdrawing large amounts of assets based on insider information before closing withdrawals) bring to the estate? To the contrary, I think he, and other insiders are a *massive* **liability** to the estate, as they are **highly** likely to be the target of investigations from state and federal regulators, and some of them will likely face criminal charges.

## VI.    KERP.

As if the **massive** existing outflows of cash (and *lack* of inflows) were not bad enough, the Debtors (as the US Trustee[18] puts it): "seek authority to pay *bonuses* to *insiders*". This is also directly clashing with both their fiduciary duty to the creditors/estate, the bankruptcy code, *and* existing caselaw/precedent. *See Journal Register*, 407 B.R. at 535; *see also In re Pilgrim's Pride Corp.*, 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to <u>limit a debtor's ability to favor powerful insiders economically</u>[19] and at **estate expenses**[20] during a chapter 11 case.") (citing *In re Airway Indus., Inc.*, 354 B.R. 82, 87 n.12 (Bankr. W.D. Pa. 2006)) (additional citations omitted); *In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D.

---

[17]As alleged by state regulators: large amounts of fraud, lying to investors, lying to customers and securities fraud. And what seems to me to be embezzlement of Celsius's assets by transfer from Celsius wallets to various intermediaries before ending up in wallets controlled by insiders (such as USA Strong's wallet which had 3 NFTs sent to it which were highly likely purchased with depositor assets). As well as using depositor assets to buy "CEL" tokens before having insiders (such as Alexander Mashinsky) sell "CEL" tokens on the very exchanges that Celsius (unnecessarily, as they already had large surpluses of "CEL" tokens) bought them. This, and more, along with supporting evidence is available in my *Amended Motion To Compel Insider Clawbacks By The Debtors/UCC* (the one filed on October 13th, 2022,(Docket No. 1052) as well as the one filed on October 26th, 2022 (Docket No. 1199)).

[18] https://cases.stretto.com/public/x191/11749/PLEADINGS/117491027228000000057.pdf Emphasis added.

[19] Emphasis added.

[20] Emphasis added.

Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to

bonuses simply for staying with the Company through the bankruptcy process.").


**VII.    So-called Judgment.**

The Debtors main argument in their objection seems to be "business judgment", yet as

BAPCPA amendments make it **abundantly** clear that if a proposed transfer falls within Section

503(c)(1), then the business judgment rule **does not** apply, regardless of whether a sound

business purpose *may* actually exist, and in this particular case, <u>the only purpose is to transfer

*even* more funds from *depositors* into the pockets of insiders and executives (and various

consultants/advisors/attorneys)</u>. *Id*. The effect of Section 503(c) of the Bankruptcy Code was to

put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before

the Court is in a position to determine that retention bonuses should be paid. *Mesa Air Group*,

2010 WL 3810899, at *2 (*citing Global Home Prods*., 369 B.R. at 785). As one of the standards

laid out in *Dana II*[21] asks: "Is the cost of the plan reasonable in the context of the <u>debtor's assets,

liabilities and earning potential</u>?". I would argue no, since first off; it has **not** even been

determined if the Debtors *own* the deposits of cryptocurrencies made onto Celsius's platform by

*depositors*. Celsius's earning potential is effectively zero in it's current form. Celsius's brand is

toxic, and it is made even more so by the fact that the *very insiders who drove* Celsius into the

ground (but *of course*, withdrew their own assets beforehand), are not only being paid, but

**making the decisions and leading the so called restructuring plan.** Celsius's main ways to

earn yields were actually unprofitable once you took into account the amount of yield they were

paying out, (the Vermont report stated that Celsius admitted that they were never able to generate

high enough yields to pay rewards) and as the Vermont report also said, it was very likely that

---

[21] Emphasis added.

*old depositors* were being paid with **new depositors's assets**. These of course are the classic

signs of a **Ponzi Scheme**. The Debtors remain uncooperative with the UCC (the UCC has stated

that the Special Restructing Committee has refused to meet with them directly and

communiicates through council. The UCC has also been refused access to certain documents).

Celsius also has massive liabilities, which outweigh all of the assets that they currently

hold (some of which highly likely they do not own the title to) by approximately $2,500,000,000.

Celsius's KERP proposal even further shows their blatant lack of judgment, ethics and morals.

There is no restructuring plan (that has a chance of actually succeeding) and there never was

going to be. This entire bankruptcy is simply a way for the executives to continue to pay

themselves the *depositors's* money (with the advisors/consultants/lawyers getting their pound of

flesh as well). Knowing this, and seeing this makes my (and the vast majority of Celsius's

creditors) blood boil. This must be stopped, and it must be stopped immediately. The sound,

reasonable, and logical thing for the Debtors to have done, was to **immediately** *significantly* cut

costs, and start recovering assets that left the estate wrongly. Yet the management (who should be

targets of clawbacks) to the surprise of absolutely no one, is not doing that. As the US Trustee

pointed out in her objection to the KERP motion, a very large part of Celsius's business is no

longer operating or generating revenue. Celsius has also previously put forth the (unfeasible and

unrealistic) proposal to fill the gap between assets and liabilities by mining Bitcoin with the

mining business. This plan is effectively, and for more than the fact that it is uneconomical,

unfeasible and would require significant reinvestment dead on arrival. Recently with Core's

announcment that they may declare bankruptcy (Core is the company that houses and runs a

large percentage of Celsius's mining rigs), combined with exploding prices of electricity and a

massive increase in difficulty rate of mining a Bitcoin; means that the proposal is utter nonsense.

Even without the sky high costs of the executives, employees and various legal

teams/consultants/insiders, and employees it would take close to a decade to fill the hole

(assuming that somehow the Bitcoin mining rate does not increase).

That leaves only two options: (1). either Celsius's managment/restructuring team is

completely delusional and detached from reality, or (2). They know all of these facts, and

continue to push their plan(s) anyways so they can keep getting paid money that belongs to the

*depositors*.

The Debtors's previous and current business judgment, to put it nicely, can only be

described as poor. To put it not so nicely, it can be called **atrocious**, **negligent**, **criminal**,

**fraudulent**, **deceptive**, **idiotic**, **disgusting**, **moronic**, and shortsighted. Their entire business was

based on the theory that crypto can only continue going up, they were also lying to depositors,

regulators and investors. Typically lying to your customers, regulators and investors is

considered to be a poor business practice. They also paid **enourmous** sums of money (and

continue to do so) to insiders and executives. Celsius has made *countless* mistakes and errors,

most of which were not made public until after the bankruptcy filing. Alexander Mashinsky (the

than CEO) attempted to daytrade[22] Bitcoin by selling it, and trying to buy it lower. This was all

---

[22]
https://dailyhodl.com/2022/08/16/bankrupt-celsius-lost-users-funds-trading-bitcoin-btc-at-ceo-alex-mashin
skys-request-report/

against the advice of his risk management team, and against company policy. Celsius lost

approximatley $100,000,000 in that month alone. Celsius historically has not had any business

judgment since they only implemented a reimbursement/expensing policy for credit cards in May

of 2022 (according to information revealed at the 10/13/2022 341 hearing).

## VIII.    Options For The Future.

Frankly this case meets all of the criteria (of which only one is needed) to appoint a

Chapter 11 Trustee. If the Debtors do not start *actually* doing their jobs, and cutting costs, the

best alternative for creditors may be to declare this a **Ponzi Scheme**, and claw back every single

dime paid out (that is economical to do so), including any payments/expenses made by current

managment including wages, legal fees, consultant fees, advisor fees, and every single fiat and

crypto transaction that lost Celsius money since its inception. Even the threat of crypto, and

espeically Decentralized Finance clawbacks will **highly** likely lead to the crypto industry to

making a deal with Celsius. Because they know if they do not settle these clawbacks, the

clawbacks will likely cause massive losses in the crypto markets, and cryptocurrencies as they

are supposed to be irreversible, and decentralzied. This court could order various decentralized

protocals such as Bancor and Badger (where Celsius suffered significant losses) to mint new

tokens, and than use those tokens to drain the liquidity pools (also freezing others's ability to

withdraw from the liquidity pool until Celsius is able to). Doing so would effectively make those

tokens worthless (aftrer Celsius withdraws) due to the massive rush of others looking to

withdraw. This could be used to make *depositors* whole. As stated in *Dana II*, 358 B.R. at

576-77.2 "'[T]he court must make its own determination that the transaction will serve the

interests of creditors and the debtor's estate.'" *GT Advanced Tech. Inc*, 2015 WL 4459502, at *7.

Effectively every single action that the Debtors have taken (bar a few such as objecting to the

motions by Prefered Equity, and recovering assets from KeyFi) **overwhelmingly** benefit

Celsius's current management, and insiders (as well as lawyers/consultants/advisors) and **not** the

creditors/estate.


IX.    **Lack of Transparency.**

The Debtors have had a massive lack of transparency, from even before the petition was

filed. They claimed, time and time again, that they are working for the best interests of the

creditors, and to maximize value. Except, those words *alone* are meaningless, without any

actions to back them up. The Debtors even acknowledge that the "Debtors' trading, lending,

staking, and custody platform is frozen" but provide no meaningful explanation to what that

*actually* means.  The only information provided by the KERP Motion is that "employees

continue to perform maintenance, updates, and essential security functions on the Platform to

facilitate a successful reorganization or sale as well as prepare the platform for making

distributions to creditors and for any post-emergence operations" KERP Motion at ¶ 25. The US

Trustee is also correct when stating: "This description does not provide for a reasonable

relationship between the KERP Participants and the KERP and leaves open questions as to what

these employees are actually doing" There is no way, that approximately 270 employees are

needed to provide maintenance, updates and essential security functions. Frankly any site/app

security functions may not be needed, because even if somehow the app/site or peoples accounts

were compromised, no assets would be able to be withdrawn due to the bankruptcy.  It would

only take a small handful of people to do the actions that the Debtors suggested. The Debtors

have (like usual) failed to provide anything other than what is effectively a "trust me bro" to

prove that their KERP motion is necessary. It may be, we just will likely never know since they

filed large portions of it under seal.

   The Debtors, in their Objection[23] to my Motions, stated: "Mr. Frishberg's contention that

the Debtors are "running a deficit of an average of $1,525,000 *per day*," Cost Cutting Motion at

2, is based on outdated information, is taken out of context of the Debtors' historical costs, and

paints an incomplete picture of the Debtors' trajectory". Their statement is *quite* ironic, since it

only *further* proves my point about the **lack of transparency** coming from the Debtors. I used

the most upto date information (at the time of filing) that was available to me. Perhaps if they

would be more forthcoming to the creditors with information, we would be able to have a better

picture of what is going on. The information that is being released (such as the most recent billed

legal fees for Kirkland and Ellis, which only goes upto July 31st, 2022) is fairly outdated. The

US Trustee *seems* to share my view (that Celsius is not being forthcoming with information):

"The creditor body deserves factual information regarding what the Debtors are doing while the

Platform is frozen. This information vacuum created by the Debtors has led, in part, to *pro se*

creditors making requests for cost saving measures in this case". The Debtors state[24]: "The

Participants are Non-Insiders", without (as the US Trustee also pointed out) providing any

evidence to prove it. They have filed that information under seal, which is another example of

lack of transparency. How are creditors supposed to keep upto date, and make sound decisions

---

[23] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910272280000000083.pdf
[24] In response to the US Trustee's, and Mr. Ubierna's objections.

when they do not have access to information, especially when that information concerns how a *creditors* money is being spent?

They also said that my information "is taken out of context of the Debtors' historical costs, and paints an incomplete picture of the Debtors' trajectory". I **strongly** disagree, since (presumably) the Celsius has historically actually had a source of income. The only sources of income they have currently are from previous transactions from pre-petition, and interest they get from staking Proof Of Stake coins such as ETH (which is passive income, and may not even belong to them).

## X.    KERP/Cutting Costs.

The Debtors have repeatedly insisted that the employees they want to partiucipate in KERP are essential and needed: "Each of the Participants provides critical support to the Debtors' operations, which will maximize the value of the estates and inure to the benefit of all stakeholders". **Since the Debtors have (so kindly) already identified the key employees, as stated in their KERP motion (as I requested the court to order them to do by the November 1st hearing in my original motion), I suggest that all other employees/anyone else on Celsius's payroll, including all insiders, executives, and the Special Restructuring Committee (for reasons stated in paragraph III, and IV) be immediately terminated, with no benifits/pay**. With some of the *employees* and **not** insiders/executives, it *may* be better to

furlough them (without pay or benefits) and potentially rehire them (or whatever company gets the scraps of Celsius can hire them) in the future. The Debtors are **extremely** *unique* and are operating in an extremely unusual manner. Much more importantly, the Debtors have ceased operations months ago, prior to the Petition Date. None of the cases they cited in their KERP motion involved companies that ceased operations yet still required payment of bonuses to a quarter of its work force. The Debtors have yet to explain what exactly these employees are doing while the Debtors lending, borrowing, banking, and retail platforms have been shut down since **June**. It is highly likely that a large part of Celsius's workforce is in fact doing v*ery little to nothing.*

XI.    *Potentially* **Misleading Statistics.**

The Debtors, in their response to my Motions stated: "Since the Petition Date, the Debtors reduced personnel costs by over 70% (approximately $70 million per year). The Debtors also reduced daily operational costs (not related to personnel) by more than 70% (at least $80 million per year) by eliminating marketing rewards, reducing gas fees, and instituting other cost saving measures. The Debtors continue to analyze reducing costs and streamlining their business and are targeting, at minimum, an additional $10–20 million in annual savings". On the surface that sounds like they have made significant cuts. But the $80 million number that they cited (by eliminating marketing fees, reducing gas fees, and other unspecified measures) is likely due to the Debtors ceasing operations. When they state they "reduced personnel costs" they don't specify if they actually reduced personnel, or if, as they stated in their KERP Motion, those personnel quit. Even if you add up those sums, it comes to about $160 million in savings. Which

is a lot of money, but they still have another approximately $500,000,000 of other expenses that

they have refused to cut, which I am asking the court to order them to do so. I belive this is yet

another attempt by the Debtors to muddy the waters and make it seem like they are actually

doing what they are supposed to.


**XII.     Morale Issues.**

The Debtors themselves have admitted[25] that: "At least 123 of the Debtors' employees,

approximately fifty-one percent of the current workforce, have resigned since the Petition Date,

and more than twenty employees have resigned since the filing of the KERP Motion". I believe

that it is *highly* likely that the remaining employees which have been marked as **non-essential** by

the Debtors will not take kindly to that designation. It will *significantly* impact morale and

performance. Even if the employees do remain, they will likely harbor resentment because they

did not receive bonuses like some of their colleagues, and because they were marked as

**non-essential**. It is likely better to simply rip of the band-aid (so to speak) and

terminate/furlough without pay the **non-essential** personnel. The Debtors also stated:

"Additionally, filing the Confidential Information on the docket would enable the Debtors'

employees to learn or intuit certain Confidential Information with respect to their colleagues,

which is not only inappropriate, but is also likely to negatively affect employee morale". Which

begs the question, if learning information about their colleagues would **hurt employees morale**,

than what would not being paid a bonus and considered **non-essential** (some pay say

expendable) do to morale? I would say it would significantly impact morale, and that is why the

**non-essential** personal should be terminated/furlouged without pay (along with all

---

[25] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910302280000000001.pdf

insiders/executives/the Special Committee/Alexander Mashinsky), and receive another dime from Celsius in compensation, or benefits.

# Clawback Motion

When the Debtors state: "Mr. Frishberg cannot compel the Debtors (or the Official Committee of Unsecured Creditors (the "<u>Committee</u>")) to pursue avoidance actions under the Bankruptcy Code", they are 100% correct. **I**, Daniel A. Frishberg *cannot* **compel** the *Debtors* to do anything, but Your Honor, most certainly can.

## I.    The Debtors Fail.

They stated: "A debtor's power to commence litigation on behalf of the bankruptcy estate is permitted—not mandated—by the Bankruptcy Code. *In re V. Savino Oil & Heating Co., Inc*., 91 B.R. 655, 656 (Bankr. E.D.N.Y. 1988) ("The responsibilities of a trustee or debtor in possession to collect assets and to effectuate the policy of equality of distribution do not **per se**[26] compel litigation by such fiduciaries.")." They conveniently left out more caselaw which further confirmed that the UCC has grounds to pursue clawbacks. As quoted in *Savino*[27]: "If, however, a trustee/debtor-in-possession <u>unjustifiably fails</u> *657 to e<u>mploy its statutory arsenal of avoiding</u>

---

[26] Emphasis added.
[27] Emphasis added.

powers or otherwise abuses its discretion in not suing, a creditors' committee has implied authority[2] to bring an action on behalf of the estate in bankruptcy with the approval of the bankruptcy court. *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises), 779 F.2d 901, 904 (2d Cir. 1985); Official Committee of Unsecured Creditors Committee of Joyanna Holitogs, Inc. v. I. Hyman Corp. (In re Joyanna Holitogs, Inc.),* 21 B.R. 323, 325-26 (Bankr.S.D.N.Y.1982); *Committee of Unsecured Creditors v. Monsour Medical Center (In re Monsour Medical Center), 5 B.R. 715 (Bankr.W.D.Pa.1980)*". I expect the Debtors to attempt to prevent the UCC from initiating clawbacks (if they ever get around to doing them that is) in the future. The reason that Bayside was denied in *Savino* was because: "Bayside has failed to set forth any extraordinary circumstances or reasons to justify granting the remarkable relief it seeks. Ferrantino, among others, has already been sued on behalf of the estate by an active Creditors' Committee on causes of action similar or identical to what Bayside would propose to sue". None of the insiders (Such as the Mashinsky's, Mr. Leon, Tether, and many, many more) have been sued by a the UCC, so those principles do not apply. The Special Committee is highly biased, as it was appointed under Alexander Mashinsky, who is a primary target of the clawbacks. Also, they have every incentive to take as long as humanly possible to decide anything, because they get paid monthly to effectively do nothing.


## II.    Abuse of Discretion.

Celsius *has* abused it's discretion and business judgment time and time again. I ran a poll[28] on Twitter (@DanielFCelsius) and 94% of people who voted (See Exhibit A), said that Celsius **abused** it's discretion. Obviously this isn't a very large sample size, but it is just a way to

[28] https://twitter.com/DanielFCelsius/status/1585739029479391233?s=20

show people's opinions. Perhaps due to the large number of creditors, a vote through Celsius's

website or app could be ordered and done. Celsius is directly harming the estate and creditors by

not putting forth a plan, spending large amounts of money friviolously, attempting to spend even

more money on KERP/bonuses to insiders (as the US Trustee puts it). Some of the business

decisions that they made (like mining Bitcoin at a $14m loss) seem like they are intentionally

trying to lose money to get DIP financing, because there is no way anyone can actually be *this*

dumb (I hope). I, as a freshman in college with no formal degree in law/economics can almost

certainly restructure better, faster, and more efficiently (and much cheaper) than these so called

experts on the Special Committee, which quite honestly is tragically comedic.


## III.    Grounds For a Trustee.

Basically everything that occurred pre-petition and some stuff that occurred post-petition

is grounds for a Trustee. If the Debtors are unable to do even the most basic aspects of their jobs,

someone needs to be put in place to do it for them. Potentially it could be a Chief Restructuring

Officer that is not a Trustee, or a Chapter 11 Trustee. The Debtors are not only doing everything

that I described in my Motions, and likely are doing more that I am not aware of, and to top

things off, they are actively trying to spend more money as "bonuses to insiders" (as the US

Trustee puts it). If the Debtors simply did nothing, it would be a better outcome for the estate and

creditors than what they are doing now. The Special Committee *should* be disbanded and

replaced by someone vetted by the court and US Trustee. Conveniently (as the US Trustee also

pointed out) the current CEO of Celsius, Mr. Ferraro is effectively hiding out in Ecuador, which

is a **non-extradition** country. He should be ordered to return to the US, or be terminated.

### IV.    Urgency For Clawbacks.

If this was a normal case, I would agree with the UCC about it being better to wait to commence clawbacks, but due to the nature of cryptocurrency (as described in my Motions), there is no time. It is highly likely that a large percentage of the assets are now irrecoverable for good. Most of the clawback cases are extremely simple (at least the first wave of it) since the assets were clearly withdrawn within 1 year of Celsius closing withdrawals. It is also highly likely that after the Examiner's report comes out, that window will be significantly expanded. At the very least, all insiders who withdrew any assets within 1 year of Celsius pausing withdrawals should have ALL of their assets frozen, and be ordered to stay/return to US jurisdiction. Though it may be significantly easier to just have regulators/prosecutors/criminal investigators simply seize the assets through asset forfeiture, and then add it to the estate.

### V.    "Fatally Flawed".

The only thing that is fatally flawed is the Debtors' current course of action/plan (or lack thereof). As the US Trustee stated: "Other than conclusory statements that the services are critical to the Debtors' reorganization, *no specifics*[29] have been provided", this is a perfect quote to describe most, if not all of the Debtors's actions thusfar. If I said that my filing of my Motions was critical to the Debtors' reorganization (it likely is more critical than the Special Committee, which does nothing, and has the time to go on TV to talk about stocks), and then said that I deserve to be paid a massive sum of money, I would be laughed out of the courtroom. The same

---

[29] Emphasis added.

thing should happen to the Debtors when they make equally as vague statements about their plans. The entirety of the Debtors' bankruptcy proceedings are fatally flawed[30]. This bankruptcy should have been a SIPA/SIPC liquidation, since Celsius acted like a mix between a (unregultated) bank and a hedgefund. The Debtors have abused their discretion at effectively every twist and turn of this bankruptcy. I believe that the Debtors counsel knows this, since they felt the need to include a reservation of rights at the end of their objection, which I have not seen them typically do (at length).

### Reservation Of Rights

I reserve any and all rights, to anything and everything, since everyone else seems to be doing this.

Respectfully Signed:

/s/*Daniel A. Frishberg*

October 31st, 2022

Hillsbourough County, Florida

---

[30] It also begs the question of why this bankruptcy was filed in New York, and not in New Jersey, since Celsius did not even operate in New York. I am not raising the issue of Venue at this time, but reserve the right to do so later.

Exhibit A:

