Immanuel Herrmann
*Pro se Celsius creditor*
Admin of the worldwide Celsius
Earn Customer Telegram group
**https://t.me/celsiusearn**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                        )
In re:                                  )    Chapter 11
                                        )
CELSIUS NETWORK LLC, *et al.*,[1]       )    Case No. 22-10964 (MG)
                                        )
            Debtors.                    )    (Jointly Administered)
_____  )


**RESPONSE AND RESERVATION OF RIGHTS WITH RESPECT TO THE DEBTORS' STATEMENT REGARDING NOVEMBER 1 HEARING ON DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) PERMITTING THE SALE OF STABLECOIN IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF, D.R. 1228**

I, Immanuel Herrmann, *pro se* Celsius Network LLC *et al.* creditor, hereby file this response and reservation of rights with respect to the Debtor's Statement and its upcoming motion that, according to the Debtors, will purport to provide "a resolution of the predicate legal issue of the title of the digital assets transferred to the Debtors' 'Earn' program." [*Debtors' statement*, D.R. 1228, ¶ 1]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**RESPONSE**

Since the beginning of this case, many Earn customers, including myself, have explained to the Debtors, the UCC, and this Court, the myriad ways in which we were misled (verbally and in writing); that we were, in many cases, the victims of explicit breach of contract (rather than merely a monolithic group of people who *agreed* to the Earn contract with respect to all or in some cases, any, of our deposits); that some of us had deposits in Earn because of prepetition contract violations, such as, but not limited to: the Debtor placing loan collateral from paid-off loans into Earn for non-accredited US investors after 4/15/2022, in plain violation of the contract terms; the Debtor placing loan collateral from paid-off loans into Earn for general customers without a clear contractual basis for doing so (for accredited investors and pre-4/15/2022 non-accredited investors); liquidating loans with no opportunity to pay those loans off, in violation of the contract, and placing the remaining collateral into Earn (while other liquidated loan collateral ended up in custody or withhold without any indication as to why); and that our coins–in many cases–or in possibly all cases (given the statements of the Debtor and its preparation acts with regards to customers and possible constructive trust claims) may not be property of the estate.

Yet, until this past weekend, the Debtor has blithely ignored the property rights of Earn customers. Now that there is an urgency to get out of Chapter 11 in the next two-to-three months, they are *just beginning* to talk about the property rights of Earn customers and purport to have a way to resolve questions around ownership.

The hard truth is that there are no shortcuts to resolve these questions quickly or easily. There is no reason to expect a resolution of Earn's property rights to go any faster than the Custody and Withhold litigation, except, perhaps, via a *negotiated settlement* that can only

be reached by *talking with creditor groups and* **_mediation that includes all stakeholders_** in my view, or else the appointment of a Chapter 11 Trustee, who could restore trust and begin their own mediation process.

**I urge the Debtor to consent to mediation and to begin discussions with creditor groups and other interested parties immediately, and to aim for a negotiated resolution, so that we can emerge from Chapter 11 on a reasonable timeframe. Groups of customers have been speaking with each other *on our own*, yet, the Debtor and its Special Committee on restructuring–while they claim through counsel to have been "transparent"–has not held any meetings, nor public town halls or status updates, or provided any other mechanism whatsoever to engage with depositors or to hear out possible compromises between creditor groups … Instead, they met only with the Preferred Shareholders Committee (which, on information and belief, the Special Committee had a meeting with), and, so far as I know, they also sometimes speak with the UCC's counsel (which does not mean speaking with customers/depositors and is not *remotely* "transparent" nor is it really making progress on resolving "property of the estate" issues or issues between interest groups, but instead, is encouraging the litigation of such issues in court.)**

At the Status Conference on Tuesday, I plan to ask the Debtor: Are you ready to talk with creditor groups to avoid litigating every last property rights question and every last subcategory of Earn, and negotiate a path out of Chapter 11? It seems like a nightmare. For avoidance of doubt, property rights issues for Earn will not be resolved "through a plan" or "through a bid" without substantial and costly litigation. I therefore plan to discuss with the court potential paths forward, including filing a **motion for the appointment of a Chapter**

**11 mediator that includes <u>all</u> stakeholders, alongside any request to extend exclusivity, which I am sure is coming.**

Chief Judge Glenn noted at the last hearing that litigation is a last resort. So, I want to know: What path forward does the Debtor plan to propose? Is it more litigation? Is it *limited* litigation but on the Debtor's own terms, favorable to them, i.e. ignoring the key issues and focusing on piecemeal narrow ones, like only the plain language of the most recent contract terms?

Earn customers are already talking with borrowers, custody, and withhold customers–but we aren't lining up to have our property rights decided by a cursory review of the final contract language by the Debtor, and, to the extent such a "quick fix" is contemplated, it will encourage more litigation, not less; I reserve all rights to insist that my specific claims be heard, yet I believe there is a better way.

The Debtor has spent many months (since this summer) focusing with hypergranulation on microcosms of a microcosm–using surgical precision to split out "pure custody," and custody deposits below the statutory cap, from the rest of custody. Earn deposits are *more* complicated and nuanced than Custody and Withhold deposits, not less, and I refuse to get the short shrift simply because this case has an urgency to be resolved and is running out of money.

Earn customers include, *inter alia,* include the following categories of deposits:
1. Deposits where the coins were simply deposited into Earn and never had a modified contract. We could, for convenience, call these deposits "pure Earn" deposits.

    a. These customers seem to be a "simple case" at first glance but the truth is, as noted above, there was significant misrepresentation. Under New York law, it is at least possible that the contract wouldn't stand up to scrutiny and a full resolution for this group requires an analysis of statements by the Debtor (yet, the Debtor is reserving rights to fight against the examiner looking into these statements and the UCC has not committed to publicly releasing the statements.)

    b. If the coins are not customer property because of constructive trust claims or claims under New York law, then, perhaps no Earn coins whatsoever are property of the Estate.

    c. Alternatively, if constructive trust is done in the traditional way–depositor by depositor–then the only way to get to a resolution is to litigate each case, one depositor at a time, including a review of the relationship each depositor had with the Debtor and which statements each depositor relief upon. Or, we can aim to mediate and come up with a solution that makes customers satisfied enough that we don't all decide to litigate our individual cases. Being mindful that each piece of litigation simply drains resources from the estate and there are not enough coins to pay all depositors.

2. Earn deposits that consist of loan collateral from customers who signed a loan contract with respect to said collateral and who paid off the loan. We could call these customers "returned collateral deposits." Of the returned collateral deposits, at the time a loan was paid off, collateral was not affirmatively deposited into Earn by the customers who paid off the loan. On information and belief there may have been returned loan collateral going into Custody vs Withhold vs Earn for unknown

reasons, and more information including detailed declarations from the Debtor is needed explaining why different collateral was returned to different account types, absent the explicit consent of each customer. Of the collateral deposits, further granular subcategories include:

a. Loans paid off at any time, where:
   i. Customers signed loan contracts that stated they were the "**sole owner** of all Digital Assets used in connection with the Loan." [Emphasis added; see for example, D.R. 954, pages 4-5, people signed varying contracts but they likely stated similar things].
   ii. Such contracts indicate that any returned loan collateral is likely held in bailment or trust and is not property of the estate under 11 USC § 541(d).
   iii. On information and belief, some of these customers never used the app at all–and never consented to the Earn contract at all (but signed a loan contract).
   iv. If this group prevails in having their coins not property of the estate, then it would cover group b below, but if they do not, then a separate analysis of subgroup 2b is needed.
b. Collateral returned to non-accredited US investors who paid off a loan after 4/15/2002 (when the TOC changed and explicitly prohibited any new coins going into Earn in **ALL CAPS UNDERLINED** contract language and whose loan contracts said they were the "**sole owner** of all Digital Assets used in connection with the Loan." [Emphasis added; see D.R. 954, pages 4-5].) Of those customers, on information and belief, upon repayment:

      i. Some customers had their collateral placed in Custody

      ii. Some customers had their collateral placed in Withhold

      iii. Other customers (including me) had their collateral placed in Earn, seemingly in plain violation of the contract terms and the "sole owner" language in our loan contracts.

3. Clear violations of the contract terms resulting in coins being placed in earn without consent, which likely include 2a above, definitely include 2b above, and also include:

   a. Depositors who attempted to close their accounts during "the Pause" and/or who asked for their interest payments to end, and the Debtor refused to honor the written contract.

   b. Depositors who are in Earn because they had a loan which was liquidated during "the Pause" which they could not service, and the proceeds were placed into Earn (noting that other customers in the same situation had the proceeds placed into Custody or Withhold and nobody knows why.)

   c. Depositors who were unable to move coins out of Earn for a variety of reasons.

I am wondering how, exactly, the Debtor purports to resolve Earn property issues:

1. Will the Debtor suggest that their written and verbal statements be published by the Examiner, and then reviewed by experts in New York contract law–considering the written contracts alongside the level of misrepresentation that took place? Will they propose a process that gives a constructive trust finding a fair shake alongside a public Examiner's report of statements they made? Or will they aim to sweep that under the rug? If the Debtor opposes (or does not support) an examination of "the representations Debtors generally made in public representations to customers to

attract them to their platform and about their cryptocurrency holdings and account offerings," **before** any determination of Earn customer property rights issues is made by this court, then the answer is clear, and is unacceptable and will not, as a threshold matter, resolve these property issues (but mediation could find a path forward that does not .

2. Will the Debtor suggest the court looks at whether, and for whom, the Earn contract was modified and when? Notably, the terms of use contain no integration clause or prohibition of oral modification.

3. Will the Debtor present evidence of its collection of digital signatures on terms and conditions revisions, prove that it had affirmative consent of each of its users to each TOS revision and square that around recent case law related to TOS consent? Or will they blithely assume that every customer agreed to the latest round of TOS and aim to undertake a cursory analysis of the final contract language?

4. Will the Debtor present evidence of what advice they received from their accountants that caused them to treat deposits in Earn as user property, and issue 1099s–1099s that indicated customers were earning interest on *customer-owned property*? Will they explain to this court how this tax treatment is consistent with what they now claim the contract says? Will they do the same for loan collateral?

**PLEA FOR MEDIATION**

I am preparing to likely file a motion for a mediator in the coming few days, and I am considering the best choice for who that should be–perhaps a sitting bankruptcy judge or, perhaps, a crypto expert. We can discuss which choice is best at the status conference. These property issues questions are getting out of hand, in my view, and will not be

adequately resolvable via litigation, in my considered opinion (and as I have outlined in this response).

I believe a proper review of all account holder issues from a property rights perspective could drag on for six months or more. Meanwhile, the Debtor has never held a SINGLE town hall, has never talked with depositors, has never attempted to mediate with or resolve property-of-the-estate issues with us, and on information and belief, the Special Committee has never even spoken with UCC members directly (apart from their counsel) let alone *ad hoc* groups of customers that I know of (but only the *ad hoc* group of preferred shareholders). I am hoping that a mediator will bring the Debtor to the table.

**RESERVATION OF RIGHTS**

I have a direct interest in these matters. While I hope we can voluntarily mediate these issues, I reserve all rights as a party-in-interest with respect to the property rights status of Earn customer deposits (which are the type of deposit that I have.) I reserve all procedural and substantive rights with respect to any process to determine the property status of Earn customer deposits and, specifically, to my deposits.

I request that I be included in any further status conferences and other conversations, written or telephonic, related to Earn customer property rights and my property rights that may impact my future claims, consistent with Local Rules and the Bankruptcy Code.

I do not consent to any stipulations between the Debtor or other parties to determine the property rights of my deposits on my behalf. I do not consent to any procedural relief for the Debtor on this matter that may impact my rights to assert my own property rights without

either my explicit consent, or a court order authorizing such relief, and an opportunity for me to respond to any such request for relief.

I do not consent to filings under seal or motions to shorten time, on this matter, without my explicit consent or a court order allowing for such actions.

I do not consent to any final determination or stipulation on which issues must be adjudicated to resolve property of the estate issues around Earn deposits without a chance to respond to such a determination or stipulation on a reasonable timeline, and the Debtor should expect me to object to any stipulation or proposed order that violates any of my procedural or substantive rights; therefore, I would encourage them to attempt to talk to me at the front end versus resolving everything via the court, or submitting eleventh-hour proposed orders or stipulations that I have not reviewed and approved.

Respectfully submitted,

Dated: October 31, 2022
Silver Spring, Maryland

/s/ Immanuel Herrmann
Immanuel Herrmann
immanuelherrmann@gmail.com