**Hearing Date: December 5, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: November 28, 2022, at 4:00 p.m. (prevailing Eastern Time)**

**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
        kwofford@whitecase.com
        sam.hershey@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
        gregory.pesce@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF HEARING ON THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF GORNITZKY & CO. AS ISRAELI COUNSEL**
**EFFECTIVE AS OF NOVEMBER 2, 2022**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**PLEASE TAKE NOTICE** that a hearing on the *Official Committee of Unsecured Creditors' Application for Entry of an Order Authorizing the Employment and Retention of Gornitzky & Co. as Israeli Counsel Effective as of November 2, 2022* (the "**Application**") filed by the Official Committee of Unsecured Creditors (the "**Committee**") will be held on **December 5, 2022, at 2:00 p.m., prevailing Eastern Time** (the "**Hearing**").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Hearing (*i.e.*, on December 2, 2022).**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181]; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC,* No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **November 28, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List

available on the case website of the above-captioned debtors and debtors in possession (the "**Debtors**") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Application.

> **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Committee.

> **PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated:   November 7, 2022
New York, New York

/s/ Gregory F. Pesce

**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
 kwofford@whitecase.com
 sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  david.turetsky@whitecase.com
        kwofford@whitecase.com
        sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
GORNITZKY & CO. AS ISRAELI COUNSEL EFFECTIVE AS OF NOVEMBER 2, 2022**

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned

debtors and debtors-in-possession (collectively the "**Debtors**") submits this application (the

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as
follows:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining
LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC
(3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of
business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New
Jersey 07030.

"**Application**"), for the entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the Committee to employ and retain Gornitzky & Co. ("**GNY**") as its Israeli counsel effective as of November 2, 2022.  In support of this Application, the Committee relies upon and incorporates by reference the *Declaration of Amnon Biss in Support of the Official Committee of Unsecured Creditors' Application for Entry of an Order Authorizing the Employment and Retention of Gornitzky & Co. as Israeli Counsel Effective as of November 2, 2022* (the "**Biss Declaration**"), attached hereto as **Exhibit B**, and the *Declaration of Thomas DiFiore in Support of the Official Committee of Unsecured Creditors' Application for Entry of an Order Authorizing the Employment and Retention of Gornitzky & Co. as Israeli Counsel Effective as of November 2, 2022* (the "**DiFiore Declaration**" and, together with the Biss Declaration, the "**Declarations**"), attached hereto as **Exhibit C**.  In further support of the Application, the Committee respectfully states as follows:

## Relief Requested

1.      By this Application, pursuant to sections 328(a)  and 1103(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Committee seeks authority to retain and employ GNY as its Israeli counsel in connection with the GK8 Sale (as defined below) and any other Israel-related matters related to the chapter 11 cases, effective as of November 2, 2022.  Accordingly, the Committee seeks entry of the Proposed Order authorizing the employment and retention of GNY as its Israeli counsel in connection with the GK8 Sale and any other Israel-related matters related to the chapter 11 cases, as more fully described herein, and in accordance with the terms and conditions set forth in that certain engagement letter between the

Committee and GNY dated November 2, 2022 (the "**Engagement Letter**"), a copy of which is

attached as **Exhibit 1** to the Biss Declaration and incorporated herein by reference.

### Jurisdiction, Venue, and Predicates for Relief

2.        The United States Bankruptcy Court for the Southern District of New York (the

"**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the Southern District of*

*New York*, entered February 1, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The Committee confirms its consent to the Court entering a final order in connection with this

motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgment in connection herewith consistent with Article III of the United

States Constitution.

3.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The predicates for the relief requested herein are sections 328(a) and 1103(a) of the

Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

### Background

#### I.        General Background

5.        On July 13, 2022, the Debtors filed voluntary petitions for relief in this Court under

Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage

their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

On July 27, 2022, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed the

Committee, which is comprised of seven members, each of whom holds crypto (or digital) assets

through the Celsius platform [Docket No. 241].  The Committee's goal is to maximize the

recoveries of account holders and unsecured creditors, as more fully stated in *The Official*

3

*Committee of Unsecured Creditors' Statement Regarding These Chapter 11 Cases* [Docket No. 390]. On September 14, 2022, the Court entered an order approving the appointment of Shoba Pillay as examiner pursuant to section 1104(d) of the Bankruptcy Code. [Docket No. 923].

6.      The Debtors have been conducting a bidding process for the sale of GK8 Ltd., an Israeli entity, and certain of its affiliates (the "**GK8 Sale**"), which was approved by the Court. [Docket No. 687]. Pursuant to the Bid Procedures, a potential sale will occur on an expedited timeline. The final bid deadline passed on November 2, 2022, and the sale hearing is currently scheduled for November 15, 2022. The sale involves various issues of Israeli law, including regulatory requirements, court approvals, liabilities, and tax implications.

7.      On November 3, 2022, the Committee selected GNY as its Israeli counsel in connection with the GK8 Sale and any other Israel-related matters related to the chapter 11 cases, subject to Bankruptcy Court approval.

8.      On November 2, 2022, GNY began to provide services to the Committee.

## II.      <u>Qualifications of GNY</u>

9.      GNY is proposed to serve as Israeli counsel to the Committee to perform all services that are necessary and appropriate to the discharge of the Committee's responsibilities and further the interests of the Committee's constituents in the chapter 11 cases as it related to the GK8 Sale and any other Israel-related matters related to the chapter 11 cases, subject to Bankruptcy Court approval.

10.     Since its selection by the Committee, GNY has worked closely with the Committee, White & Case LLP, and its other professional with respect to the GK8 Sale. The Committee selected GNY because it is a prominent Israeli firm that has experience in complex, cross-border transactions, including restructuring, and because of the urgent need the Committee has for advice on the matter given the short timeline on which the GK8 Sale appears that it will be approved.

4

selected GNY because it is a prominent Israeli firm that has experience in complex, cross-border transactions, including restructuring, and because of the urgent need the Committee has for advice on the matter given the short timeline on which the GK8 Sale appears that it will be approved. GNY has the expertise on the various issues of Israeli law implicated by the GK8 Sale, including regulatory requirements, court approvals, liabilities, and tax implications. Given GNY's experience and knowledge in these fields, GNY is well qualified and uniquely able to act on the Committee's behalf in connection with the GK8 Sale and any other Israel-related matters related to the chapter 11 cases.

**III.**     <u>**Services to Be Rendered**</u>

11.     The Committee has selected GNY as its Israeli counsel in connection with the GK8 Sale and any other Israel-related matters related to the chapter 11 cases, subject to Bankruptcy Court approval.

12.     Subject to further order of this Bankruptcy Court, GNY will provide "[l]egal advice with regard to issues of Israeli law, including those relating to (i) a sale involving GK8 Ltd. (including certain of its affiliates) or its assets, (ii) any Israeli bankruptcy proceedings initiated in connection with the Bankruptcy Cases (as defined below), and (iii) other matters requested by the Client (as defined below)." *See* Engagement Letter, at 1.

**IV.**     <u>**Professional Compensation & Expense Reimbursement**</u>

13.     GNY has agreed to serve as Israeli counsel to the Committee with respect to the GK8 Sale and any other Israel-related matters related to the chapter 11 cases and to receive compensation and reimbursement of expenses in accordance with its standard billing practices for services rendered and expenses incurred on behalf of the Committee, in accordance with sections 328, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, or as otherwise ordered by the Bankruptcy Court. The Committee requests that all such compensation and reimbursement

incurred by the Committee on account of services rendered by GNY be paid as administrative expenses of the Debtors' estates pursuant to sections 328(a), 330, 331, 503(b), and 507(a)(2) of the Bankruptcy Code.

14.     GNY will charge the following standard rates for this kind of representation for the professional services that GNY has provided to date and will provide in the future.  Currently, the hourly rates charged by GNY are:  $450 per hour for Partners; $350 per hour for Senior Associates; $300 per hour for Associates; and $100 per hour for Interns.[2]

15.     The above rates shall remain valid for one year and, at the end of the period, GNY and the Committee will jointly reconsider and review the applicable fees.

16.     In the event that the above rates increase, prior to the applicability of any such increases in such rates, GNY will provide notice of such rate increases pursuant to the procedure set forth in the Proposed Order.

17.     The hourly rates set forth above are GNY's current standard rates for this kind of representation.  These rates are set at a level designed to fairly compensate GNY for the work of its attorneys and interns and to cover fixed and routine overhead expenses.

18.     GNY also charges its clients in all areas of practice for various out-of-pocket expenses in providing legal services.  By way of illustration, such disbursements and other charges commonly include: international telecommunications, courier expenses, translation fees, filing fees, expert opinions and testimonies, court fees, travel expenses and photocopying as may be required to meet the scope of the engagement.  GNY will seek reimbursement, subject to the Court's approval, for all such expenses incurred by GNY on the Committee's behalf.  All requests for reimbursement of expenses will be consistent with any guidelines established by the

---

[2]     GNY does not charge in this representation for the work of paraprofessionals.

Bankruptcy Court.

19.     GNY shall apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses in accordance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Local Rules, Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), any other applicable procedures and orders of the Court, for all professional services performed and expenses incurred in the chapter 11 cases.

20.     Further, GNY also intends to make a reasonable effort to comply with U.S. Trustee requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**").

21.     Pursuant to Bankruptcy Rule 2016(b), GNY has no agreement with any other entity to share any compensation received by GNY, except as permitted under section 504(b)(1) of the Bankruptcy Code. GNY has not received any promises as to payment or compensation in connection with the chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code and as disclosed herein.

## **<u>Argument</u>**

22.     Under section 1103 of the Bankruptcy Code, the Committee may, subject to approval by the Court, "select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee."

23.     The Committee has selected GNY as its Israeli counsel in connection with the GK8

Sale and any other Israel-related matters related to the chapter 11 cases, and thus seeks to have
GNY's retention by the Committee approved pursuant to sections 1103 and 328(a) of the
Bankruptcy Code, which provides that the Committee, subject to Court approval:

> [M]ay employ or authorize the employment of a professional
> person under section 327 or 1103 of this title, as the case may be,
> on any reasonable terms and conditions of employment, including
> on a retainer, on an hourly basis, on a fixed or percentage fee basis,
> or on a contingent fee basis.

11 U.S.C. § 328(a).

24.    It is necessary and essential that the Committee, in its fiduciary capacity for all
creditors holding unsecured claim, employ counsel to render the aforementioned professional
services.  The Committee selected GNY because it is a prominent Israeli firm that has experience
in complex, cross-border transactions, including restructuring, and because of the urgent need the
Committee has for advice on the matter given the short timeline on which the GK8 Sale appears
that it will be approved.  GNY has the expertise on the various issues of Israeli law implicated by
the GK8 Sale, including regulatory requirements, court approvals, liabilities, and tax implications.
Given GNY's experience and knowledge in these fields, GNY is well qualified and uniquely able
to act on the Committee's behalf in connection with the GK8 Sale and any other Israel-related
matters related to the chapter 11 cases.

25.    Section 1103(b) of the Bankruptcy Code provides that an "attorney . . . employed
to represent a committee appointed under section 1102 of this title may not, while employed by
such committee, represent any other entity having an adverse interest in connection with the case."
11 U.S.C. § 1103(b).

26.    As set forth in the Biss Declaration, GNY does not hold or represent any interest in
the chapter 11 cases that is adverse to the Debtors, as required by section 1103(b) of the Bankruptcy
Code.  Moreover, to the best of the Committee's knowledge, except as stated in the Biss

Declaration, (i) to the extent applicable, GNY is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (ii) neither GNY nor its professionals have any connection with the Debtors, the parties in interest set forth in Exhibit 2 attached to the Biss Declaration, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and (iii) GNY does not hold or represent any interest adverse to the Committee in the matters for which it is to be retained.  Accordingly, the Committee believes that GNY is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code to the extent applicable to the Committee's retention of GNY.[3]

27.    GNY is expected to serve as Israeli counsel to the Committee with respect to the GK8 Sale and any other Israel-related matters related to the chapter 11 cases.  Based upon the foregoing, the Committee submits that the retention of GNY is necessary, appropriate, and in the best interests of its constituents.  Additionally, ordering the Committee's retention of GNY effective as of November 2, 2022, is appropriate.  GNY has been representing the Committee in connection with the GK8 Sale since that date.  The Committee believes that no party-in-interest will be prejudiced by the granting of the employment effective as of November 2, 2022, as provided in this Application, because GNY has provided and continues to provide valuable services to the Committee.

**Notice**

28.    The Committee will provide notice of this Application to the following parties or

---

[3]    The Committee notes that section 1103 of the Bankruptcy Code does not contain an express requirement that a professional retained by a committee be disinterested.  Moreover, given that GNY is being retained to represent the Committee for a specified, special purpose, the Committee notes that any such standard be limited to the matter on which GNY is to be applied. *Compare* 11 U.S.C. § 327(e) ("The trustee, with the court's approval, may employ, for a specified special purpose, … if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.").

their respective counsel: (a) the U.S. Trustee; (b) the Debtors; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; (h) the Chapter 11 examiner; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **Reservation of Rights**

29.     The Committee reserves all of its rights to supplement or amend this Application.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court enter an order granting the relief requested herein and other relief as the Court deems appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

Dated:    November 27, 2022        Respectfully submitted,
New York, New York

**THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS**

By: _____

Thomas DiFiore
Co-Chair, Official Committee of Unsecured Creditors

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF GORNITZKY & CO. AS ISRAELI COUNSEL EFFECTIVE AS OF NOVEMBER 2, 2022

Upon the application (the "**Application**")[2] of the Official Committee of Unsecured Creditors (the "**Committee**") of Celsius Network LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**") authorizing the employment and retention of Gornitzky & Co. ("**GNY**") effective as of November 2, 2022 as Israeli counsel; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Application having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held, if necessary, to consider the relief requested in the Application (the "**Hearing**"); and upon consideration of the Declarations attached to the Application, and the record of the Hearing, if any, and all of the

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

proceedings had before the Court; and the Court having found and determined that GNY does not represent or hold any interest adverse under section 1103 of the Bankruptcy Code, and is (to the extent applicable) a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code, that the relief sought in the Application is necessary and in the best interests of the Committee, the Debtors, their estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is granted to the extent provided herein.

2.      The Committee is authorized pursuant to sections 328 and 1103 of the Bankruptcy Code to employ and retain GNY as its Israeli counsel in these chapter 11 cases, effective as of November 2, 2022, in accordance with the terms and conditions, and to provide the services, set forth in the Engagement Letter.

3.      In connection with the chapter 11 cases, GNY shall be compensated and reimbursed for expenses in accordance with, and will file, applications for allowance of its compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of the Court, and pursuant to any additional procedures this Court deems appropriate.

4.      GNY shall make a reasonable effort to comply with U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013.

5.      GNY shall use its best efforts to avoid any duplication of services provided by any

of the Committee's other retained professionals in these chapter 11 cases.

6.      Prior to any increases in GNY's hourly rates for providing services in these chapter 11 cases, GNY shall file and serve a supplemental declaration at least fourteen days before such rate increases take effect.  The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Committee has consented to the rate increase.  The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

7.      Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application.

8.      The Committee and the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     To the extent that the Application, the Declarations attached thereto, or the Engagement Letter are inconsistent with this Order, the terms of this Order shall govern.

11.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____, 2022
       New York, New York

                                        _____
                                        THE HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Biss Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF AMNON BISS IN SUPPORT OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
GORNITZKY & CO. AS ISRAELI COUNSEL EFFECTIVE AS OF NOVEMBER 2, 2022**

I, Amnon Biss, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and

correct to the best of my knowledge, information, and belief:

1.       I am a partner of the firm of Gornitzky & Co. ("**GNY**"), an Israeli law firm located

in the Vitania Tel-Aviv Tower, 20 Haharash St. TLV Israel 6761310.  I am a member in good

standing of the Israeli bar since 2013.  There are no disciplinary proceedings pending against me

in any jurisdiction.

2.       I submit this declaration (the "**Declaration**") pursuant to sections 328(a) and 1103

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) and Rule 2016 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1, 2016

and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the Southern

District of New York (the "**Local Rules**") in support of the *Official Committee of Unsecured*

*Creditors' Application for Entry of an Order Authorizing the Employment and Retention of*

*Gornitzky & Co. as Israeli Counsel Effective as of November 2, 2022* (the "**Application**"), filed

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as
follows:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining
LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC
(3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of
business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New
Jersey 07030.

contemporaneously herewith by the Committee.[2]   Attached hereto as **Exhibit 1** is a certain engagement letter between the Committee and GNY dated November 2, 2022 (the "**Engagement Letter**"), which is incorporated herein by reference.

3.      To the extent that GNY determines that any information disclosed herein requires amendment or modification upon GNY's completion of further analysis or as additional information becomes available to it, a supplemental declaration will be submitted to the Court reflecting the same.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

**I.      Qualifications of GNY**

4.      GNY is proposed to serve as Israeli counsel to the Committee to perform all services that are necessary and appropriate to the discharge of the Committee's responsibilities and further the interests of the Committee's constituents in the chapter 11 cases as it related to the GK8 Sale and any other Israel-related matters related to the chapter 11 cases, subject to Bankruptcy Court approval.

5.      Since its selection, GNY has worked closely with the Committee, White & Case LLP, and its other professional with respect to the GK8 Sale.  GNY is a prominent Israeli firm that has experience in complex, cross-border transactions, including restructuring.  GNY has the expertise on the various issues of Israeli law implicated by the GK8 Sale, including regulatory requirements, court approvals, liabilities, and tax implications.  Given GNY's experience and knowledge in these fields, GNY is well qualified and uniquely able to act on the Committee's behalf in connection with the GK8 Sale and any other Israel-related matters related to the chapter

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

[3]     Certain of the disclosures herein relate to matters within the knowledge of attorneys or employees of GNY and are based on information provided by them.

11 cases.

## II.      Services to Be Rendered

6.      The Committee has selected GNY as its Israeli counsel in connection with the GK8 Sale and any other Israel-related matters related to the chapter 11 cases, subject to Bankruptcy Court approval.

7.      Subject to further order of this Bankruptcy Court, GNY will provide "[l]egal advice with regard to issues of Israeli law, including those relating to (i) a sale involving GK8 Ltd. (including certain of its affiliates) or its assets, (ii) any Israeli bankruptcy proceedings initiated in connection with the Bankruptcy Cases (as defined below), and (iii) other matters requested by the Client (as defined below)." *See* Engagement Letter, at 1.

## III.     Professional Compensation & Expense Reimbursement

8.      GNY has agreed to serve as Israeli counsel to the Committee with respect to the GK8 Sale and any other Israel-related matters related to the chapter 11 cases and to receive compensation and reimbursement of expenses in accordance with its standard billing practices for services rendered and expenses incurred on behalf of the Committee, in accordance with sections 328, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, or as otherwise ordered by the Bankruptcy Court.

9.      GNY will charge the following standard rates for this kind of representation for the professional services that GNY has provided to date and will provide in the future.  Currently, the hourly rates charged by GNY are:  $450 per hour for Partners; $350 per hour for Senior Associates; $300 per hour for Associates; and $100 per hour for Interns.

10.      The above rates shall remain valid for one year and, at the end of the period, GNY and the Committee will jointly reconsider and review the applicable fees.

11.      In the event that the above rates increase, prior to the applicability of any such

increases in such rates, GNY will provide notice of such rate increases pursuant to the procedure set forth in the Proposed Order.

12.     The hourly rates set forth above are GNY's current standard rates for this kind of representation.  These rates are set at a level designed to fairly compensate GNY for the work of its attorneys and interns and to cover fixed and routine overhead expenses.  GNY's rates under its standard rate structure are consistent among similar representations undertaken under the standard rate structure for this kind of representation, including related transactional and litigation services. GNY's rates and terms under its standard rate structure for non-bankruptcy engagements are generally similar to the rates and the terms for the Committee's engagement of GNY.

13.     GNY also charges its clients in all areas of practice for various out-of-pocket expenses in providing legal services.  By way of illustration, such disbursements and other charges commonly include: international telecommunications, courier expenses, translation fees, filing fees, expert opinions and testimonies, court fees, travel expenses and photocopying as may be required to meet the scope of the engagement.  GNY will seek reimbursement, subject to the Court's approval, for all such expenses incurred by GNY on the Committee's behalf.  All requests for reimbursement of expenses will be consistent with any guidelines established by the Bankruptcy Court.

14.     GNY shall apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses in accordance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Local Rules, Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), any other applicable procedures and orders of the Court, for all professional services performed

and expenses incurred in the chapter 11 cases.

15.     Further, GNY also intends to make a reasonable effort to comply with U.S. Trustee requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**").

16.     Pursuant to Bankruptcy Rule 2016(b), GNY has no agreement with any other entity to share any compensation received by GNY, except as permitted under section 504(b)(1) of the Bankruptcy Code. GNY has not received any promises as to payment or compensation in connection with the chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code and as disclosed herein.

**IV.     Compliance with Sections 1103(b) and 328(c) of the Bankruptcy Code**

17.     I am not, nor is GNY, an insider of the Debtors.  To the best of my knowledge, GNY does not hold or represent any interest in the chapter 11 cases that is adverse to the Debtors, as required by section 1103(b) of the Bankruptcy Code.  Moreover, to the best of my knowledge, except as stated herein, (i) to the extent applicable, GNY is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (ii) neither GNY nor its professionals have any connection with the Debtors, the parties in interest set forth in **Exhibit 2**, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and (iii) GNY does not hold or represent any interest adverse to the Committee in the matters for which it is to be retained.  Accordingly, I believe that GNY is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code to the extent applicable to the Committee's retention of GNY.

A.    **Connections Search and Disclosure Process**

18.    In accordance with Bankruptcy Rule 2014(a), prior to filing the Application, GNY conducted a disclosure review with respect to GNY's connection to the Debtors and the matters on which GNY was to be retained based upon a list of interested parties supplied by counsel to the Committee.

19.    To conduct this review, we performed a conflict check with regard to the names of the parties set forth in **Exhibit 2** attached hereto (the "**Potential Parties in Interest**") to determine whether GNY has connections to such parties and, if so, whether such connections relate in any way to the proposed representation of the Committee in these chapter 11 cases.

20.    To the best of my knowledge and information, GNY does not hold or represent any interest adverse to the Committee, the Debtors, or their estates and does not have any "connections" to the Potential Parties in Interest listed on Exhibit 2. In light of the possibility that certain potential parties in interest related to GNY's proposed representation may not have been identified on Exhibit 2, GNY may have represented, may currently represent, or may in the future represent such entities in matters wholly unrelated to the chapter 11 cases that may be Parties in Interest in the chapter 11 cases.  This Declaration is based on GNY's conflict check for the names on Exhibit 2, but the information herein may have changed without our knowledge and may change during the pendency of these chapter 11 cases.  To the extent that GNY becomes aware of any such additional potential parties in interest related to GNY's proposed representation, GNY will promptly conduct new conflict checks with regard to the new potential parties in interest and file a supplemental declaration, if necessary.  Additionally, to the extent that disclosures for new connections to existing Potential Parties in Interest are discovered, GNY will file a supplemental declaration of same.

6

**B.    Disclosures as to Specific Parties in Interest**

21.    GNY represents StakeHound SA ("**StakeHound**") in connection with litigation commenced by StakeHound against Fireblocks Ltd. and Fireblocks Inc. (together, "**Fireblocks**"), regarding alleged negligence in connection with access to approximately $70 million of Ethereum, a type of cryptocurrency (the "**StakeHound Litigation**").  The StakeHound Litigation is pending in the Tel Aviv District Court.  Fireblocks is a security platform that stores and transfers digital assets and, as I was informed by the UCC counsel, it is used by the Debtors as a vendor.  However, neither the Debtors nor their non-Debtor affiliates are party to the StakeHound Litigation.  Based on the foregoing, I do not believe that GNY's representation of StakeHound in connection with the StakeHound Litigation precludes GNY from meeting the standard for retention of Committee counsel under the Bankruptcy Code.

22.    The large majority of the Debtors' parties in interest are individual account holders that transferred cryptocurrencies and other digital assets to the Debtors.  Certain account holders may include certain current GNY attorneys and staff.  The fact that certain GNY attorneys and staff are account holders does not preclude GNY from meeting the standard for retention as Committee counsel under the Bankruptcy Code.

23.    Based upon the information available to me, after following the procedures described herein, I believe GNY holds no interest adverse under section 1103(b) of the Bankruptcy Code.  Further, I submit that GNY is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

**V.    U.S. Trustee Guidelines**

24.    The following information is provided pursuant to paragraph D.1. of the U.S. Trustee Guidelines:

Question:    Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Answer:    No.

Question:    Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Answer:    No.

Question:    If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Answer:    GNY did not represent the Committee prepetition.

Question:    Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Answer:    Because of the complex and time-sensitive nature of our representation, we have been unable to prepare a prospective budget and staffing plan. To the extent that we are able to prepare such in the future, we will do so.

## VI.    <u>Conclusion</u>

25.    Based upon the foregoing, I respectfully submit that the requirements for GNY's

retention as attorneys for the Committee have been met.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United

States of America that the foregoing is true and correct to the best of my knowledge, information,

and belief.

Dated: November 7, 2022
Tel Aviv, Israel

                                        */s/Amnon Biss*
                                        Amnon Biss
                                        Partner, Gornitzky & Co.

8

## __Exhibit 1__

**Engagement Letter**



November 2, 2022

To:
The Official Committee of Unsecured Creditors
In the bankruptcy case of Celsius Network LLC, Case No. 22-10964 (MG)
Gregory F. Pesce
111 South Wacker Drive, Suite 5100 Chicago, Illinois 60606

By email: gregory.pesce@whitecase.com

Re: <u>**Offer for the provision of legal services**</u>

We thank you for your enquiry to our law firm for legal services in connection with the sale process of GK8 Ltd., an Israeli subsidiary of Celsius Network Inc.

### *Gornitzky & Co.*

Gornitzky & Co. was founded in 1938. Since its inception, Gornitzky has been involved in many of the largest transactions and most complex litigations in the Israeli business landscape and played a significant role in shaping Israeli law, economy and commerce. Gornitzky is renowned for its extensive experience in all areas of commercial law and is consistently rated by leading domestic and international legal guides as one of Israel's top law firms.
With over than 250 attorneys, the diverse and experienced legal team at Gornitzky provides the firm clients with top notch legal services, integrating legal and business creativity and originality.

### *Scope of Engagement*

This offer for legal services shall apply only in respect to the legal services described hereunder, which includes the scope and specific type of service, our fees and any other arrangement in respect of the legal services (Hereinafter: the "**Legal Services**").
The Legal Services are subject to the terms of this letter and the appendix attached hereto, which constitutes an inseparable part thereof (Hereinafter: this "**Letter**" or the "**Letter of Engagement**").
1.   The content and scope of the Legal Services:

   1.1. Legal advice with regard to issues of Israeli law, including those relating to (i) a sale involving GK8 Ltd. (including certain of its affiliates) or its assets, (ii) any Israeli bankruptcy proceedings initiated in connection with the Bankruptcy Cases (as defined below), and (iii) other matters requested by the Client (as defined below).

### *Fees and Expenses*

1.   The proposed fee for the Legal Services:



**gornitzky.com**
Gornitzky & Co., Advocates | Vitania Tel-Aviv Tower, 20 HaHarash St., TLV Israel
Zip: 6761310 | Tel: +972-3-7109191 | Fax: +972-3-5606555 | Email: office@gornitzky.com | EST.1938



- 2 -

1.1.  Our firm shall be entitled to receive a fee for each hour of work invested, according to the following breakdown:

- Partner – 450 US$ / hour
- Senior Associate – 350 US$/ hour
- Associate – 300 US$ / hour
- Intern – 100 US$ / hour

1.2.  In addition, we may incur various out-of-pocket expenses in providing the Legal Services. By way of illustration, such disbursements and other charges commonly include: international telecommunications, courier expenses, translation fees, filing fees, expert opinions and testimonies, court fees, travel expenses and photocopying as may be required to meet the scope of the engagement. These expenses will be charged to you in full and reimbursed to us according to the amounts actually borne by us.

VAT shall be added to all of the above fees (if applicable) in accordance with Israeli tax laws.

2.  The above rates shall remain valid for one year and at the end of the year we will jointly reconsider and review the applicable fees.

3.  We will send you a monthly periodic invoices (unless agreed differently), in accordance with the actual hours invested in the period covered by each invoice. All payment shall be made within 14 days of the issue date of each invoice, subject to section 5 below, including expenses as set out in this Letter. Timely payment of invoices sent to you would be greatly appreciated.

4.  The Legal Services and Letter of Engagement are subject to entry of an order (the "**Order**") of the United States Bankruptcy Court for the Southern District of New York (the "**Court**") approving the Letter of Engagement and retention of Gornitzky & Co. in the bankruptcy cases of Celsius Network LLC and its affiliated debtors jointly administered under case number 22-10964 (the "**Bankruptcy Cases**"). The Official Committee of Unsecured Creditors (the "**Client**") will use its best efforts to ensure that the Court approves Gornitzky & Co.'s retention and the Letter of Engagement, including payment of all amounts owing in accordance with the terms herein. The Order shall be acceptable to Gornitzky & Co. in its reasonable discretion.

5.  All fees and expenses payable to Gornitzky & Co. under this Letter of Engagement must be sought and paid in accordance with the procedures established by the Court for the payment of professionals, including, but not limited to the Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief [Docket No. 521].

### _Conflicts of Interest_

1.  As you know, Gornitzky & Co. is one of the largest Israeli law firms. Therefore, we may currently (and may in the future) represent one or more Israeli or foreign clients involved in transactions or having other contacts with you and/or your affiliates. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will



gornitzky.com            Gornitzky & Co., Advocates | Vitania Tel-Aviv Tower, 20 HaHarash St., TLV Israel
Zip: 6761310 | Tel: +972-3-7109191 | Fax: +972-3-5606555 | Email: office@gornitzky.com | EST.1938



- 3 -

confirm our mutual agreement that our firm may represent other parties (now and in the future) in matters other than those for which it has been, or then is engaged, by you, provided that we will not share any confidential information that we learn in connection with the assignment contemplated by this letter with any other party or otherwise use such information in any other matter. You hereby acknowledge that you hereby waive any claim of conflict of interest in connection with any such representation of third parties, as described above, provided that such representation is not directly related to any of the matters as to which we were engaged by you hereunder

We are pleased to welcome you to our respected list of clients and thank you for your trust and confidence. For the sake of good order, we would appreciate receiving your confirmation of the terms set in this Letter by filling in and signing the Confirmation below and returning it to us at your earliest convenience. We are of course at your disposal for any questions and/or clarifications as required.

Sincerely,

**Gornitzky & Co.**

Attorneys

**c.c. to the Letter of Engagement: Appendix of General Terms and Conditions for Contracting to Provide Legal Services, and which formals an integral part thereof.**



gornitzky.com          Gornitzky & Co., Advocates | Vitania Tel-Aviv Tower, 20 HaHarash St., TLV Israel
Zip: 6761310 | Tel: +972-3-7109191 | Fax: +972-3-5606555 | Email: office@gornitzky.com | EST.1938



- 4 -

**Confirmation**:

I/we hereby confirm our agreement to what is stated in this Letter and in its Appendix, which jointly constitute the contractual agreement between us (the "**Agreement**").

Name: Thomas DiFiore

Signature: _____

Date: ____11/3/2022____

**Contact details for the person who will lead on the Agreement on behalf of the Client**:

Names: Gregory Pesce & Andrew Zatz

ID No./Corp No.: N/A

Position & relation to the Client (if different to the Client):

Both Mr. Pesce and Mr. Zatz are partners at White & Case LLP, which is counsel to the Official Committee of Unsecured Creditors in the Bankruptcy Cases.

Phone numbers: Mr. Pesce: +01 (312) 881-5360; Mr. Zatz: +01 (212) 819-8504

Email addresses: gregory.pesce@whitecase.com; azatz@whitecase.com



**Appendix of General Terms and Conditions for Contracting to Provide Legal Services**

1. **General**

    The services provided by us will include only legal services which we can provide in accordance with applicable laws and the professional and ethical duties that apply to us.

    **1.1. The Parties and Definitions**

    **1.1.1.** Provider of the legal service: Gornitzky & Co. law firm (Hereinafter: "**Our Firm**" or "**We**" or "**Gornitzky**").

    **1.1.2.** The recipient of the legal service: The Client, as defined in the Letter of Engagement.

    **1.1.3.** The Legal Services: As defined in the Letter of Engagement.

    **1.2. The Client**

    **1.2.1.** Our Firm shall represent the Client only and shall provide the Client with The Legal Services, and we shall not represent and shall not have any responsibility toward other entities on behalf of the Client or connected to the Client, including shareholders, partners, directors, affiliates and such.

    **1.2.2.** In accordance with The Prohibition of Money Laundering Law, 5760-2000 and the Prohibition of Money Laundering Order (Requirements of Identification and Service Provider Due Diligence to Prevent Money Laundering and the Financing of Terror), 5775-2014 (Hereinafter in this Section, respectively: "**The Law**" and "**The Order**"), We are committed under the framework of the Agreement with you as a Client who receives from Our Firm a business service as defined in law, to conduct a "know your customer" process in which you will be asked to complete a customer acquaintance form and provide Our Firm with details and accompanying identification documents as required by law. By signing this Agreement, you confirm and undertake to act in accordance with the guidelines as required by law and to cooperate fully with our obligations as set out in The Law and The Order.

2. **Payments and Expenses**

    **2.1.** Payment of fees and expenses shall be made on a monthly basis, in accordance with periodic invoices we present to you, in accordance with the actual hours invested in the period covered by the invoice. Payment shall be made within 14 days of the date of issue of each invoice.

    **2.2.** In the absence of any other order in writing, we request that you transfer Our Firm's fee payment and expenses to Account Number 5149 at Poalim Bank (Bank number 12), branch number 170.

    **2.3.** After such payment has been made, an appropriate tax invoice shall be issued to the Client only and a receipt to the payer should the Client and the payer are not the same.

2.4.  If the fee rate is set in a currency other than NIS, all payments should be paid to us in the currency specified in the invoice or in New Shekels according to the representative exchange rate on the day of the payment.

2.5.  The fee rate does not include value added tax (VAT) in accordance with the law, which (if applicable) shall be added to the payment in accordance with its rate on the day of payment.

2.6.  The fee rate set forth in the Letter of Engagement does <u>NOT</u> include out-of-pocket expenses, or expenses related to third-party service providers which are to be paid by you directly to any third party or external provider (such as photographs, travel, communication expenses, courier services, translations, levies, expert fees, notarization of certificates, apostille authentications and any other relevant levy or expense that may be incurred in connection with the legal dealings mentioned in this Agreement). To the extent that such expenses are paid by us, they will be added to our invoices from time to time and shall be fully reimbursed by you.

2.7.  Either party shall be entitled to terminate this Agreement according to Section 6.2 below, subject to the provisions of Section 6.2. In such circumstances, all fees incurred prior to termination shall be paid in respect of all the hours of work invested up to the time of termination of provision of legal services in practice, in accordance with the fee rates customary at the firm, with the addition of VAT (if applicable) as set forth in the law, without a discount, for each hour worked, and this in addition to reimbursement of expenses as mentioned in Section 2.6 above (in instances where we have been paid advances on account of the fee rate, said advances shall be deducted from the fee invoice for the hours invested by us as stated above). To the extent that the fee arrangement set in the Engagement with Our Firm is a fee arrangement based on results ('contingency') and the execution of the contingent action was completed after the end of this Agreement, when Our Firm's handling made a significant contribution to completion of the action, Our Firm shall be paid the balance of the fee in accordance with the original on contingency fee arrangement.

2.8.  A basic and primary condition for provision of the Legal Services is the timely payment under the terms set forth for fee payment. It is clarified that non-payment of fees in full, in accordance with the schedule mentioned above, may result in termination and/or interruption of the Legal Services, and this without diminishing our other rights and without exempting you from paying any existing debt in accordance with this Agreement in its entirety, insofar as it exists. For the avoidance of doubt, it is clarified that only actual and full repayment of every invoice shall be considered as a payment under this Agreement.

2.9.  Insofar as it is permitted by law, our fee rate under this Letter shall not be affected by a change in legislative provisions and regulations, insofar as they exist and/or shall exist, which may limit the fees of attorneys who provide support and legal treatment and/or actions mentioned therein.

2.10.  This proposal supersedes and renders all previous proposals and/or previous drafts of proposals that were exchanged between the parties.

2.11.  For the avoidance of doubt, this Agreement, including the fee arrangement set forth therein, relates only to the Legal Services mentioned therein, insofar as its treatment can be predicted as of the date of Engagement in this agreement, and therefore does not include other or future services (whether or not they touch on or interface with

the legal support stated above) or any other service that explicitly goes beyond the framework of the Legal Services as expressly provided in the Letter of Engagement. Furthermore, the fee arrangement does not apply to other or additional and/ or other legal proceedings, or services rising during the Legal Services or in connection with the above matters. In any case of request that We provide legal services in connection with other legal proceedings as stated above in this Section, our fees in connection with such services shall be determined separately, and in the event that a service is provided for which no separate arrangement was made in advance, the hourly rates set forth in the Letter of Engagement shall apply, and if they have not been determined, they shall be as is customary in Our Firm at the time.

## 3. Scope of Responsibility

**3.1.** The Engagement for the provision of the Legal Services is based on the matters and the documents provided by the Client, including for purpose of determining a fee arrangement and the scope of the Legal Services. Accordingly, we shall depend on the fact that the information received from you shall be correct, complete and accurate.

**3.2.** The client's responsibility with regard to the Legal Services is to provide as fully and comprehensively as possible, the data, facts, circumstances and all the other information needed for the effective performance of the Legal Services by us and as will be requested by us and within a reasonable time in accordance with circumstances. The client shall cooperate with us in performing the Legal Services in accordance with this Agreement and shall be responsible for the performance of his employees and representatives, for accuracy and completeness of the data provided to us for the purpose of performing the Legal Services.

**3.3.** The client shall update us as soon as possible in the event of any change in connection with the information we have received or in relation with any change in circumstances and such like.

**3.4.** The outcomes of the Legal Services may not be transferred or published without our express prior consent in writing.

**3.5.** Inasmuch as we regularly update on such and other legislatives changes and amendments via memos, emails, letters or otherwise, these updates should be construed or understood as establishing an attorney-client relationship or as a duty to update you on such developments.

**3.6.** The Legal Services shall be based only on Israeli law, on questions that have been explicitly raised and on issues explicitly included in the Legal Services.

## 4. Conflict of Interests

Gornitzky is a large firm that represents many clients from many industries and in diverse domains and for the purpose of fairness to all our clients (current and potential), it is hereby clarified that Our Firm represents and/or shall represent other parties (now and in the future), and shall act for other clients where it may be that they engage in/or shall engage in similar fields to your type of business, including with one who may be deemed to be a competitor (today and in the future). Matters of this nature shall be subject to the customary conflict of interest examination process that Our Firm carries out from time to time, and all of which are subject to the applicable professional and ethical obligations. Engaging with Our Firm for the provision of Legal Services by Our Firm constitutes agreement to the aforesaid.

## 5. Provisions of the Law and Settlements of Disputes in Arbitration

**5.1.** This Agreement and all the non-contractual obligations arising from this Agreement or from the Legal Services provided under its auspices, shall be subject to the laws of the State of Israel and shall be interpreted in accordance therewith.

**5.2.** The parties agree that any disagreement, non-agreement or dispute that may regrettably erupt between them in connections with this Agreement or in connection with the Legal Services, shall be kept confidential and that any litigation between them in connection with such dispute shall be conducted in a discrete manner while maintaining the privacy of all relevant parties and their good name. It is clarified that the very existence of a dispute and/or referral to an arbitration proceeding shall be kept confidential by all parties and/or anyone acting on their behalf. This Section shall continue to be applicable even after this Agreement reaches expiry and indefinitely.

**5.3.** The parties agree that they will undertake sincere joint efforts with an open heart and a willingness to settle in peaceful ways any dispute that may erupt between them.

**5.4.** All disputes regarding anything stated in the Letter of Engagement and/or the Appendix of Special Conditions and/or in their interpretation, validity and/or application, and/or in connection with the services covered under this Letter, shall be settled in an arbitration proceeding, in accordance with the following:

**5.4.1.** Each side shall be entitled, at any time, to refer a disagreement to an arbitration proceeding by providing advance notice in writing to a party or to the other parties.

**5.4.2.** The arbitration proceeding shall be managed by a single arbitrator, a retired district court judge, who is appointed with the consent of the parties. If the parties do not reach agreement on the identity of the arbitrator within 14 days of the date on which the written notice of referral to arbitration was sent, the President of the Tel Aviv District Court shall appoint an arbitrator at the request of either party. The parties agree that any arbitrator appointed by the Court and who agrees to accept the appointment, will be acceptable to them.

**5.4.3.** The arbitrator shall rule in accordance with the law of evidence and substantive law. The arbitration proceeding shall be subject to the rules of procedure customary in the courts in Israel, unless otherwise agreed between the parties.

**5.4.4.** The arbitrator shall not have the authority to award relief which: (a) is not in accordance with what is stated in the Letter of Engagement and in the special conditions herein; or (b) which is not enforceable by a court hearing on an issue in the same area of jurisdiction.

**5.4.5.** All aspects of arbitration are confidential. The parties may disclose the existence, content or the results of the arbitration according to the provisions of the law that bind them only, insofar as they are binding, and to the extent required by law only. Prior to such disclosure, a party shall submit a written notice to the other party and give them, insofar as it is possible in the circumstances of the case, opportunity to defend their interests.

**5.4.6.** This provision constitutes an arbitration agreement in accordance with the Israeli Arbitration Law, 5728-1968. The parties confirm that the provisions of the First Schedule to said Law shall not apply to this arbitration.

**6. Period and Expiry**

**6.1.** This Agreement applies to legal services provided at any time (including before the date of the Agreement).

**6.2.** This Agreement will end with the completion of Legal Services by Our Firm and the full payments by the Client to Our Firm. Either one of the parties may terminate the Agreement earlier upon giving notice in writing to the other party, and all subject to the provisions of Section 2 above. Without detracting from the aforesaid, it is clarified, that Our Firm may terminate the Agreement, or any particular service, with immediate effect, where it is determined that we are unable to continue to provide Legal Services according to the law or relevant professional rules.

**6.3.** The provisions of the Agreement that set forth rights or obligations beyond termination of the Agreement (including the provisions of Section 5 above), shall remain in force indefinitely even after termination of the Agreement.

## 7. Miscellaneous and Summary

**7.1.** This Agreement constitutes the overall agreement between Gornitzky and the Client in connection with the Legal Services and the other issues that it covers, and it replaces all agreements and understandings, insofar as they have been made in the past.

**7.2.** This Agreement shall be signed by the entities authorized to sign it on behalf of the parties.

**7.3.** Neither party may transfer its rights and/or obligations under this Agreement.

**7.4.** If any provision of this Agreement (in whole or in part) is deemed to be unlawful, invalid or otherwise unenforceable, the other provisions shall continue in full force and effect.

**7.5.** Subject to the provisions of Section 5 above, all terms of this Engagement Agreement shall be subject to the provisions of the Basic Law of the State of Israel and shall be interpreted accordingly.

**7.6.** Without detracting from the provisions in Section 5 above, any disagreement or dispute or legal proceeding of any kind whatsoever shall be submitted exclusively to the competent court in Tel Aviv-Yafo (and to no other), which shall have exclusive jurisdiction in respect of all aspects of this Agreement and those arising therefrom.

**7.7.** For the sake of good order, it is clarified that any change made to this Agreement, or in its Appendix, may be made in writing only and with the signature of the parties, and that both parties are entitled to sign this Agreement (and any agreed change thereto) by electronic means.

**7.8.** Our Firm may use the Client's name and the Client's legal matter publicly in order to identify the Client as a client of Our Firm.

**7.9.** In any instance of contradiction or inconsistency between what is stated in this Appendix and that stated in the Letter of Engagement, that which is stated in the Letter shall prevail.

## Exhibit 2

## List of Potential Parties in Interest Searched

Lior Lamesh
Shahar Shamai
Celsius Network Ltd.
Alex Mashinsky
Daniel Leon
Celsius Network Ltd. (UK)
GK8 UK Ltd.
Celsius Network IL Ltd (Israel)
GK8 USA LLC (Delaware)

WestCap Group
WestCap Management, LLC
Community First Partners, LLC
Celsius SPV Investors, LP
Celsius New SPV Investors, LP
WestCap Celsius Co-Invest 2021, LLC
WestCap SOF Celsius 2021 Aggregator, LP
WestCap SOF II IEQ 2021 Co-Invest, LP
Laurence Tosi

CDP Investissements Inc.

## Exhibit C

**DiFiore Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF THOMAS DIFIORE IN SUPPORT OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR ENTRY OF AN
ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
GORNITZKY & CO. AS ISRAELI COUNSEL EFFECTIVE AS OF NOVEMBER 2, 2022**

Pursuant to 28 U.S.C. § 1746, I, Thomas DiFiore, as Co-Chair of The Official Committee

of Unsecured Creditors (the "**Committee**") hereby declare, as follows:

1.      I am an unsecured creditor of Celsius Network LLC and its affiliated debtors and

debtors-in-possession (collectively, the "**Debtors**") and a member of the Committee appointed in

the above-captioned chapter 11 cases.  I was named co-chairperson ("**Chair**") of the Committee.

I submit this declaration (the "**Declaration**") in support of the *Official Committee of Unsecured*

*Creditors' Application for Entry of an Order Authorizing the Employment and Retention of*

*Gornitzky & Co. as Israeli Counsel Effective as of November 2, 2022* (the "**Application**").  I have

reviewed and am familiar with the Application.  I am in all respects competent to make this

Declaration in support of the Application.  Except as otherwise noted, I have personal knowledge

as to all the information set forth below.

2.      On July 13, 2022, each of the Debtors filed with the Court a voluntary petition for

relief under the Bankruptcy Code.

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as
follows:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining
LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC
(3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of
business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New
Jersey 07030.

3.      On July 27, 2022, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed the Committee, pursuant to section 1102(a) of the Bankruptcy Code, to represent the interests of all creditors holding unsecured claims in the chapter 11 cases.  [Docket No. 241].  As of the date hereof, the members of the Committee are: (i) Caroline G. Warren, (ii) Thomas DiFiore (i.e., myself), (iii) Scott Duffy for ICB Solutions, (iv) Christopher Coco, (v) Andrew Yoon, (vi) Mark Robinson, and (vii) Keith Noyes for Covario AG.

4.      On November 3, 2022, the Committee selected Gornitzky & Co. ("**GNY**") as its Israeli counsel, subject to Bankruptcy Court approval.

5.      The Committee selected GNY as its Israeli counsel because it is a prominent Israeli firm that has experience in complex, cross-border transactions, including restructuring, and because of the urgent need the Committee has for advice on the matter given the short timeline on which the GK8 Sale appears that it will be approved.  GNY has the expertise on the various issues of Israeli law implicated by the GK8 Sale, including regulatory requirements, court approvals, liabilities, and tax implications.  Given GNY's experience and knowledge in these fields, GNY is well qualified and uniquely able to act on the Committee's behalf in connection with the GK8 Sale and any other Israel-related matters related to the chapter 11 cases.

6.      I have been informed that GNY has provided and will be providing professional services to the Committee under its standard rate structure for this kind of representation (i.e., $450 per hour for Partners; $350 per hour for Senior Associates; $300 per hour for Associates; and $100 per hour for Interns).  GNY has informed the Committee that its rates under its standard rate structure are consistent among similar representations undertaken under the standard rate structure for this kind of representation, including related transactional and litigation services.  GNY has also informed the Committee that its rates and terms under its standard rate structure for non-

bankruptcy engagements are generally similar to the rates and the terms for the Committee's engagement of GNY. The Committee understands that GNY's rates shall remain valid for one year and, at the end of the period, GNY and the Committee will jointly reconsider and review the applicable fees.

7.      Because of the urgent need to retain Israeli counsel quickly, the Committee's general bankruptcy counsel, White & Case LLP ("**White & Case**") was primarily responsible for quickly finding the competent counsel that the Committee required. As such, based on prior positive experience with GNY, White & Case interviewed GNY on their fitness for the role as Israeli counsel to the Committee and then recommended GNY to the Committee. Thereafter, as noted above, the Committee selected GNY as its Israeli counsel.

8.      Throughout the chapter 11 cases, the Committee will supervise GNY's incurred fees and expenses and review GNY's monthly statements and applications for payment of fees and reimbursement of expenses. Additionally, I understand that White & Case will assist in overseeing GNY's work, including limiting the scope of their work to that which is necessary to the Committee. In other words, I understand that GNY will work closely with White & Case and the Committee's other professionals to take whatever steps are necessary and appropriate to avoid any unnecessary duplication of effort with such other professionals.

9.      Based on the foregoing, I am of the opinion that it is necessary to employ GNY and that such employment is in the best interest of the Debtors' estates.

*[Remainder of Page Intentionally Blank]*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:    November 07, 2022
          New York, New York

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By: _____

Thomas DiFiore
Co-Chair, Official Committee of Unsecured Creditors

4