**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
          kwofford@whitecase.com
          sam.hershey@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
          gregory.pesce@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

# THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT AND RESERVATION OF RIGHTS WITH REGARDS TO THE SERIES B PREFERRED HOLDERS' MOTION PURSUANT TO BANKRUPTCY RULE 1009 FOR ENTRY OF AN ORDER DIRECTING THE DEBTORS TO AMEND THEIR SCHEDULES

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") states as

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

follows in support of this statement and reservation of rights (the "**Statement**") in response to the *Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Docket No. 1183] (the "**Rule 1009 Motion**"):[2]

Statement

1. As more fully set forth below, the Debtors' Schedules reflect the entitlements of account holders in a manner that will be most familiar to – and least likely to create confusion among – those holders: in native crypto currency counts. This approach is sensible because account holders (the vast majority of whom are individuals) think of their holdings in terms of coins (or digital assets) rather than dollarized amounts. The Preferred Equity Group has nonetheless filed the Rule 1009 Motion and sought to require the Debtors to needlessly amend the Schedules to reflect dollarized claims as of the Petition Date. The Committee does not believe that this relief is warranted and that, if granted, the changes sought by the Preferred Equity Group risk creating significant confusion among account holders. Thus, to the extent that the Court is inclined to grant the requested relief, the Committee submits that any order granting the Rule 1009 Motion should state that the relief is without prejudice to (a) whether account holder claims or entitlements must be calculated by reference to dollar amounts as of the Petition Date, (b) the form that distributions will take under a plan, or (c) any parties' rights with respect to (a) and (b).

2. The Debtors' Schedules are long and complex. The Debtors support and hold approximately 95 different types of cryptocurrency. On the Petition Date, the Debtors had approximately 1.7 million registered account holders and approximately 300,000 active account holders with account balances worth more than USD$100. Mashinsky Decl. ¶ 9.[3] Each of those

---

[2] Where context requires, capitalized terms used but not otherwise disclosed herein shall have the meaning ascribed to such term in the Rule 1009 Motion.

[3] The "**Mashinsky Declaration**" is the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket. No. 23].

2

account holders transferred digital assets to the Debtors to participate in different programs (*i.e.* Earn, Custody, Withhold, and Borrow). The Debtors have acknowledged that account holders' property rights and entitlements are different based on which program they participated in. *See* Debtors' Mem. of Law Regarding Phase I Custody and Withhold Issues ¶¶ 7-11.

3. The Debtors therefore faced the unique problem of how to schedule the varying entitlements and claims arising from account holders transfers of cryptocurrency. Indeed, as the Preferred Equity Group acknowledges, the two other chapter 11 cases concerning cryptocurrency adopted different methods with respect to how to schedule account holder claims. Rule 1009 Motion at 19 (describing that the *Voyager* case schedules claims by cryptocurrency count, while the *Cred* case scheduled all account holder claims as undetermined). The Debtors elected to list account holders' entitlements and claims by cryptocurrency by coin amounts and account types. *See* Schedule E/F, Case No. 22-10967 [Docket No. 5]; Case No. 22-10970 [Docket No. 5]; Case No. 22-10968 [Docket No. 5]; Case No. 22-10965 [Docket No. 6]; Case No. 22-10966 [Docket No. 7]; Case No. 22-10964 [Docket No. 974]; Case No. 22-10969 [Docket No. 5]; Case No. 22-10971 [Docket No. 5]. That approach makes sense. It is how account holders monitored and tracked their balances in the Celsius application. Account holders can now validate whether the Debtors have appropriately scheduled their claims and whether they should file a proof of claim to correct any errors the Debtors may have made.

4. The Preferred Equity Group argues that the Debtors approach is not right, and instead that the Debtors should have liquidated each of the account holders' claims to United States dollars on the Petition Date, reported those claims as a single dollar amount without regard to the different cryptocurrency holdings of any given account holder, and left account holders to do the math. Their argument hinges on a dollar sign that was hard coded into the value line on Official

3

Form 206 (Rule 1009 Motion at 13) and the strict language of Bankruptcy Rule 9009, which was added in 2017 and "intended to make sure that Official Form 113 [for chapter 13 plans] was used without variation." 10 COLLIER ON BANKRUPTCY P 9009.RH[3]. That approach is not appropriate given the circumstances of these chapter 11 cases, would cause unnecessary confusion, and require the Debtors to reconcile a mountain of unnecessary claims. Bankruptcy Rule 9009, however, provides flexibility and allows the Official Forms to be modified to permit changes not affecting wording or the order or presenting information and provides a non-exclusive list of instances where the forms can be modified, including to expand the space provided to permit complete responses. Fed. R. Bankr. P. 9009(a)(1). Likewise, Bankruptcy Rule 1007(b)(1) allows the Court to modify the official forms, as it deems appropriate. Fed. R. Bankr. P. 1007(b)(1).

5. The Preferred Equity Group's Rule 1009 Motion is what it looks like: an idiosyncratic procedural motion meant to provide the group with a soapbox to advocate its position that account holders' claims should be dollarized on the Petition Date so that it may capture any potential upside from a rebound in cryptocurrency prices. That issue is not before the Court at this time, and the Committee reserves all right with respect thereto.

6. In an effort to move these cases along and avoid needless litigation, the Committee's advisors have engaged with the Debtors to understand the cost and burdens associated with amending the Schedules to add the dollar amount on the Petition Date (while keeping the cryptocurrency count by account type). Based on those conversations, the Committee understands that the work could likely be completed for under $40,000. That amount does not include any costs that may result from claims or other pleadings filed due to confusion with respect to the amended Schedules. Alternatively, the Debtors could file a legend on the docket that includes agreed Petition Date USD values for each type of cryptocurrency. Although the

Committee believes there is a potential for confusion, it wishes to avoid the cost and distraction of a contested hearing on the Rule 1009 Motion and, therefore, does not oppose the relief requested in the Rule 1009 Motion so long as the fees to complete the requested are less than $40,000 and the Committee is consulted (and may object) to the Petition Date prices used by the Debtors. Further, any order granting the Rule 1009 Motion should make clear that the requested amendment to the Schedules should not prejudice the rights of the Committee or any account holders with respect to issues not before the Court at this time. The Committee will work with the Debtors and the Preferred Equity Group on an agreed form of a proposed order in an effort to forgo the need for a hearing on this Rule 1009 Motion unless the Court prefers to hold such hearing. To the extent the Preferred Equity Group has issues with the claims of account holders, it should object to those claims and use the proper procedural mechanism to bring live issues before this Court.

## Reservation of Rights

7. The Committee reserves all of its rights to supplement or amend this Statement, raise additional issues regarding the Rule 1009 Motion, and present evidence at the hearing on the Rule 1009 Motion to the extent one is held.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: November 8, 2022<br>New York, New York | Respectfully submitted,<br><br>*/s/ Aaron Colodny*<br>**WHITE & CASE LLP**<br>David M. Turetsky<br>Keith H. Wofford<br>Samuel P. Hershey<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>Email: david.turetsky@whitecase.com<br>    kwofford@whitecase.com<br>    sam.hershey@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile: (312) 881-5450<br>Email: mandolina@whitecase.com<br>    gregory.pesce@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Aaron E. Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Facsimile: (213) 452-2329<br>Email: aaron.colodny@whitecase.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |