Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' OBJECTION
TO SERIES B PREFERRED HOLDERS' MOTION
PURSUANT TO BANKRUPTCY RULE 1009 FOR ENTRY
OF AN ORDER DIRECTING THE DEBTORS TO AMEND THEIR SCHEDULES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this Objection (this "Objection") in response to the *Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Docket No. 1183] (the "Motion")[2] filed by Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Terms capitalized but not defined herein shall have the meanings ascribed to such terms in the Motion.

the "Preferred Equity Holders") requesting that the United States Bankruptcy Court for the Southern District of New York (the "Court") enter an order (the "Order") directing the Debtors to amend their schedules of assets and liabilities (the "Schedules") pursuant to Bankruptcy Rule 1009. In support of this Objection, the Debtors respectfully state as follows:

**Preliminary Statement**

1. The Preferred Equity Holders, through sophisticated counsel, object to the Schedules as allegedly "improper," "misleading," and "inexplicable," because the Schedules denote the claims of Celsius account holders ("Account Holders") in native cryptocurrency coin counts ("Coin Counts"), without an indication of the value of such coins in United States dollars ("U.S. dollars") as of the Petition Date. Ironically, the Debtors took this approach to *avoid* confusion for the Account Holders by presenting information regarding their claims in the format they would most easily be able to review and verify and to avoid engendering concerns that the Debtors intend to make distributions in U.S. dollars, given that the Debtors are still exploring chapter 11 plan constructs. Far from "inexplicable," the Debtors' approach is imminently sensible.

2. Contrary to the allegations in the Motion, the Schedules comport with both the text and spirit of the applicable statutory sections, rules, and guidelines. Every rule and form cited by the Preferred Equity Holders is either discretionary[3] or inapplicable.[4] By its own admission, the Motion is primarily a protest that the Debtors are asking for "forgiveness," rather than permission.[5] The Debtors are largely indifferent to the requested relief but want the record to be clear that such

---

[3] Fed. R. Bankr. P. 1007(b)(1), Fed. R. Bankr. P. 9009(a), Official Form 206, General Order M-386.

[4] 11 U.S.C. § 502(b).

[5] The Preferred Equity Holders assume that their interpretation of the Bankruptcy Rules is the sole correct interpretation. *See* Motion ¶ 13 n.8 ("While Bankruptcy Rule 1007(b) may allow a debtor to deviate from the prescribed Official Forms if the court authorizes the debtor to do so, the Debtors here have not requested any such authority from the Court and, thus, are not permitted to deviate from the Official Forms.").

2

relief—if ultimately granted—should be taken for exactly what it is worth: a statement of the U.S. dollar value of Account Holders' claims as of the Petition Date, and nothing more. It is ***not*** a ruling of the Court on whether claims must be calculated by reference to a U.S. dollar amount as of the Petition Date. Absent a clear record, the request to add information to the Schedules could cause significant confusion and concern for Account Holders, who have expressed a strong desire to receive distributions in kind and who would likely view inclusion of U.S. dollar figures at the request of the Preferred Equity Holders—rightfully or not—as an attempt by equity to force distributions to be made in U.S. dollars, not cryptocurrency, or to cap customer recoveries at the U.S. dollar value of their claims as of the Petition Date and give Preferred Equity Holders a free option on increases in cryptocurrency prices. These concerns would likely result in an avalanche of protective proofs of claim that would require reconciliation, negating the administrative benefits of the Schedules.

3.     The Preferred Equity Holders do not articulate why they need to know dollar values as of the petition date ***now*** or why they must be listed ***in the Schedules***, instead pointing to hypothetical scenarios that could occur months from now if cryptocurrency prices skyrocket. Rather, the Motion plants the seeds of arguments the Preferred Equity Holders may seek to raise in the future depending on the movement of cryptocurrency prices.

4.     Accordingly, the Motion should be denied to avoid widespread confusion and resultant administrative costs. To the extent the Court grants the Motion, the Debtors request that the ruling be limited so that it is clear that the inclusion of the U.S. dollar amount of claims as of the Petition Date has no legal significance barring a further order of the Court after notice to all parties.

5. Alternatively, to resolve the Motion, the Debtors would be willing to negotiate with the Preferred Equity Holders and the Official Committee of Unsecured Creditors regarding an agreed-upon table that could be filed as a reference for the U.S. dollar values of cryptocurrency as of the Petition Date. Calculating the U.S. dollar value of the cryptocurrencies listed in the Schedules would be a simple matter of multiplying Coin Counts by the relevant market price listed in the reference table. This reference table would include an explanation that it is a reference only, that the issue of whether Account Holder claims for cryptocurrency must be paid by reference to the U.S. dollar value of the cryptocurrency as of the Petition Date has not been decided by the Court, and that Account Holders do not need to file proofs of claim in order to preserve rights with respect to that issue.

## **Objection**

**I.     The Schedules Comply with Applicable Law, and the Court Has Discretion to Permit the Schedules to Remain as Filed to the Extent They Do Not.**

6. Contrary to the Preferred Equityholders' assertions, the relief requested in the Motion is not mandated by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the official forms. In fact, the Motion itself concedes that the Schedules as filed could be permitted with the Court's permission.[6] This admission—tucked in a footnote—can end the inquiry. To the extent that the Debtors were required to request permission to file the Schedules as they did, the Debtors request such authority now or can file a separate motion seeking such authority following the Court's ruling on the Motion.

---

[6]   *See* Motion ¶ 13 n.8 ("While Bankruptcy Rule 1007(b) may allow a debtor to deviate from the prescribed Official Forms if the court authorizes the debtor to do so, the Debtors here have not requested any such authority from the Court and, thus, are not permitted to deviate from the Official Forms.").

4

7.     That the Debtors required such permission is not as clear as the Preferred Equity Holders suggest. The applicable rules contain built-in flexibility to avoid disputes like the instant Motion. *See* Fed. R. Bankr. P. 1007(b)(1); Fed. R. Bankr. P. 9009(a). Bankruptcy Rule 1007(b)(1) requires that the Debtors file a schedule of assets and liabilities "as prescribed by the appropriate Official Forms." Fed. R. Bankr. P. 1007(b)(1). Bankruptcy Rule 9009 states the forms "shall be used without alteration, except as otherwise provided in the rules, [or] in a particular Official Form." Fed. R. Bankr. P. 9009(a). Bankruptcy Rule 9009 then explicitly permits "certain minor changes not affecting wording or the order of presenting information," including "expand[ing] the prescribed areas for responses in order to permit complete responses" and "delet[ing] space not needed for responses." *Id.*

8.     General Order M-386, dated November 24, 2009 (the "General Order M-386") similarly permits "such revisions as are necessary under the circumstances of the individual case or cases." General Order M-386 ¶ 9.[7] Finally, Official Form 206 instructs debtors to "complete all the information required to the best of their ability." Official Form 206 Instructions at 2. Official Form 206 does hardwire a "$" into the blanks provided for claim amounts but does not specify the date of the claims. Official Form 206.

9.     The Debtors, facing a relatively novel phenomenon, interpreted Bankruptcy Rule 9009(a)(1) and (2) to allow the Debtors to remove instances in the forms that required a claim

---

[7]    The introduction to the guidelines indicates that the guidelines were adopted to provide standard forms to "expedite court review and entry of such orders" and that courts will expect use of the standard forms "with only such revisions as are necessary under the circumstances of the individual case or cases." General Order M-386 ¶ 2 (unnumbered, preliminary statement).

The Preferred Equity Holders raise the issue of the Debtors' broader approach to the schedules, stating that such relief is beyond the scope of the Motion. It is worth noting that General Order M-389 also provides that the proposed form of order also presents "a list of persons and entities that are expected from the requirement to file a proof of claim . . . [which] is not intended to be exhaustive." General Order M-389 ¶ 9.

5

to be listed in U.S. dollars and to add additional responses regarding cryptocurrency coin counts. The Debtors believe that this approach comports with the applicable requirements. What's more, the Debtors took this approach not to befuddle the Preferred Equity Holders, but to make the Schedules easy for Account Holders, many of whom are individual unaccredited investors, to understand and interpret. The approach recommended by the Preferred Equity Holders would very likely cause the exact "highly confusing" scenario the Preferred Equity Holders purportedly wish to avoid by creating an appearance that customer recoveries may be made in U.S. dollars or perhaps capped at the U.S. dollar value of their claims as of the Petition Date—neither of which has been decided. This, in turn, could prompt the filing of an avalanche of objections, protective claims, and reservations of rights that would require significant estate resources to resolve. *See* Motion ¶ 4 n.4.

10. As such, to the extent Court authorization is required for the Schedules to remain as drafted, the Debtors request it now or, if preferred by the Court, can request it by a separate motion. To the extent it is not, the Motion should be denied.

**II.   The Preferred Equity Holders' Reliance on Section 502(b) of the Bankruptcy Code is Misplaced.**

11. The Preferred Equity Holders repeatedly stress the importance of adhering to the language of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules but anchor the majority of their argument to section 502(b) of the Bankruptcy Code, which is, by its clear terms, inapplicable. *See* Motion ¶ 14 ("[S]ection 502(b) of the Bankruptcy Code provides that ***if there is an objection to a claim***, the court 'shall determine the amount of such claim in lawful currency of the United States as of the [petition] date . . . .'" (quoting 11 U.S.C. § 502(b))) (emphasis added).

12. As one court explained in the context of section 502(b)(6), the application of section 502(b) of the Bankruptcy Code is inappropriate at the early stages of a chapter 11 case

6

when a debtor is filing schedules. In *In re Mohr*, the bankruptcy court described the proper role of section 502(b) of the Bankruptcy Code in a chapter 11 case as follows:

> Significantly, this statutory provision, according to its express language, is triggered only upon the occurrence of a post-petition event in the bankruptcy case—a claim objection. 11 U.S.C. § 502(b)(6). *See also* 8 *Collier on Bankruptcy* ¶ 1300.71[2] (15th ed. rev. 2006) (noting that the "provisions of subsections 502(b), (c), (d) and (e) are activated only upon the filing of an objection to the claim by a party in interest"). Unless a party objects to a creditor's proof of claim, the § 502(b)(6) cap does not apply and the amount of the creditor's allowed claim could presumably match the full lease debt as scheduled by the Debtors in this case. Because the § 502(b)(6) cap is only activated by optional and unpredictable post-petition bankruptcy events, ***the court concludes it is not appropriately applied to threshold inquiries that are focused on the initial schedules and the calculation of debt existing on the date of the bankruptcy filing***.

*In re Mohr*, 425 B.R. 457, 464 (Bankr. S.D. Ohio), *aff'd sub nom. U.S. Tr. v. Mohr*, 436 B.R. 504 (S.D. Ohio 2010) (emphasis added).

13. This interpretation is consistent with every case the Preferred Equity Holders cite that applies section 502 of the Bankruptcy Code. The Preferred Equity Holders cite five cases in support of the proposition that claims in foreign currencies are routinely—and necessarily—fixed in U.S. dollars as of the petition date. Without addressing whether the comparison to foreign currency is appropriate, all but one of the cited cases involved a claim objection or contested claim; the one case that did not referenced section 502 in passing with respect to issues of comity (in a case that was ultimately suspended and "transferred" to Hong Kong). *See In re USGen New England, Inc.*, 429 B.R. 437 (Bankr. D. Md. 2010) (concerning a disputed rejection damages claim); *In re Glob. Power Equp. Grp.*, No. 06-11045, 2008 WL 435197 (Bankr. D. Del. Feb. 14, 2008) (concerning a disputed rejection damages claim); *In re Aaura, Inc.*, No. 06 B 01853, 2006 WL 2568048 (Bankr. N.D. Ill. Sept. 1, 2006) (concerning a claim objection and related request to use cash collateral); *In re Axona Int'l Credit & Com. Ltd.*, 88 B.R. 597 (Bankr. S.D.N.Y. 1988) (mentioning section 502(b) in a footnote as not raised by parties in considering issues of comity in

7

a case ultimately "transferred" to Hong Kong liquidators); *ABC Dev. Learning Ctrs. (USA), Inc. vs. RCS Cap. Dev., LLC (In re RCS Cap. Dev., LLC)*, No. AZ-12-1381, 2013 Bankr. LEXIS 4666 (B.A.P. 9th Cir. July 16, 2013) (relating to a claim objection); *see also* Motion ¶ 16 (expunging claims not made in accordance with the bar date order and upon objection by the debtors).

14. The Debtors are not aware of any cases in which section 502(b) was applied outside of the context of a claim objection (or claim objection equivalent). Here, no objection has been filed, not even the Motion—the Preferred Equity Holders made it explicit that they are not objecting to the use of Coin Counts, only the absence of U.S. dollar denominations.[8] Accordingly, the Preferred Equity Holders' reliance on section 502(b) of the Bankruptcy Code is misplaced.

## Conclusion

13. The Schedules, as drafted, present key case information in the most functional format possible in accordance with both the text and spirit of the applicable statutory sections, rules, and guidelines. These are cryptocurrency cases in which each and every customer deposited cryptocurrency onto the Debtors' platform. It makes perfect sense to schedule the customers' claims in cryptocurrency as this is exactly what the Debtors owe the customers under the Debtors' Terms of Use. The Preferred Equity Holders' rigid read of the Bankruptcy Rules—down to importing significance to hard-coded dollar signs—would have the Court elevate form over substance and would needlessly cause great confusion—and administrative costs—towards no beneficial end. The relief requested is not only unnecessary, but also potentially costly to the

---

[8] "By the Motion, the Series B Preferred Holders are asking the Court to direct the Debtors to **add** the U.S. dollar amount of each claim to Schedules E/F and are not seeking the removal of any cryptocurrency coin counts from the Schedules." Motion ¶ 5 n.5. To the extent the Preferred Equity Holders are successful in the arguments they previewed they may *later* raise, such objections are dichotomous: either Account Holders have claims against the entities at issue or do not. If the answer to that unsettled question is that customers *do* have claims against those entities, section 502(b) *may* be implicated. The Motion, however, explicitly does not reach this issue, and as such, section 502(b) is not applicable. *See* Motion ¶ 4 n.4.

8

estate. As such, the Motion should be denied. To the extent the Motion is not denied, the implications of any relief granted should be clearly constrained.

## Reservation of Rights

14. The Debtors expressly reserve all rights with respect to the Motion, including any potential disputes addressed but not advanced therein. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute or challenge any particular claim on any grounds, including through avoidance and/or recovery actions, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this objection or any order granting the relief requested by this objection, (e) an implication or admission as to any position the Debtors may take with respect to outstanding legal issues in these chapter 11 cases, including the issue of how distributions to stakeholders under a chapter 11 plan should be calculated or the form such distributions should take; (f) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this objection are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

| | |
|---|---|
| New York, New York<br>Dated: November 8, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:           jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |