Hearing Date:  December 5, 2022 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline:  November 28, 2022 at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) EXTENDING**
**THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11**
**PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION**
**1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

PLEASE TAKE NOTICE that on November 9, 2022, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of an Order*

*(I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances*

*Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief*

(the "Motion").  A hearing (the "Hearing") on the Motion will be held on **December 5, 2022, at**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**2:00 p.m., prevailing Eastern Time.** In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on December 2, 2022)**.

PLEASE TAKE FURTHER NOTICE that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 2:00 p.m., prevailing Eastern Time on December 5, 2022 must connect to the Hearing beginning at 1:00 p.m., prevailing Eastern Time on December 5, 2022. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General

Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **November 28, 2022, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: November 9, 2022

_/s/ Joshua A. Sussberg_

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted _pro hac vice_)
Ross M. Kwasteniet, P.C. (admitted _pro hac vice_)
Christopher S. Koenig
Dan Latona (admitted _pro hac vice_)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    patrick.nash@kirkland.com
    ross.kwasteniet@kirkland.com
    chris.koenig@kirkland.com
    dan.latona@kirkland.com

_Counsel to the Debtors and_
_Debtors in Possession_

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) EXTENDING**
**THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11**
**PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION**
**1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").

**Preliminary Statement**

1.       The Debtors are a young company in the quickly-developing cryptocurrency industry, which experienced significant growth and popularity in 2020 and 2021. While the Debtors became one of the largest and most sophisticated cryptocurrency-based finance platforms in only a few short years since their inception in 2017, the Debtors' early successes also had corresponding setbacks. Unfortunately, market conditions worsened in 2021 and 2022, and this negative trend accelerated with the Luna and UST collapse in the spring of 2022. These industry headwinds ultimately led to the "crypto winter," and as cryptocurrency prices dropped in an unprecedented fashion and many investors exited the market altogether, the Debtors were not able to recover. The onset of the "crypto winter" combined with the well-publicized collapse of Luna and the failure of several crypto funds/exchanges led to growing industry-wide reluctance to transact with companies, such as the Debtors, that held cryptocurrency assets. Unsurprisingly, this reluctance resulted in withdrawals of digital assets from the Debtors' platform in large amounts and at a rapid and ultimately unsustainable pace.

2.       Accordingly, facing precarious business conditions, on June 12, 2022, the board of directors of Debtor Celsius Network Limited unanimously determined that the best way to protect its users would be to pause withdrawals to prevent the proverbial "run on the bank." The decision to pause withdrawals was intended to preserve all digital assets for distribution to account holders on an equal basis and avoid irreparable damage to the Debtors' businesses.

3.       Nearly one month after the pause, the Debtors commenced these chapter 11 cases to utilize the breathing spell afforded by the Bankruptcy Code to develop a value-maximizing transaction. Following their recent leadership changes, the Debtors are committed to rebuilding trust by engaging and cooperating with all key stakeholders in these chapter 11 cases, while

2

simultaneously developing a plan of reorganization that returns cryptocurrency assets to stakeholders. To accomplish their goal, the Debtors are currently pursuing a dual-track path of marketing their assets for sale and developing a standalone reorganization plan.

4.     These chapter 11 cases present significant legal issues that are matters of first impression that must be resolved before these cases can reach a value-maximizing conclusion, all while the Debtors navigate operations in a nascent industry plagued with unprecedented headwinds, uncertainty, and distrust. As a result, the Debtors are engaging with stakeholders at unprecedented levels, including the official committee of unsecured creditors (the "Committee"), certain equity holders, state and federal regulators, dozens of account holders, ad hoc groups of custody and withhold account users, and a number of additional creditor constituencies. Indeed, the Debtors have held countless conferences, made members of management available for informal interviews and examination under oath, provided stakeholders access to hundreds of thousands of documents, and developed a comprehensive reporting package and disclosures regarding their fiat currency, coins, and coin security, all in an effort to engage with these constituencies. This level of engagement and stakeholder involvement coupled with the *sui generis* legal issues presented by the Debtors' cryptocurrency business may potentially lead to a hotly-contested, value-destructive plan process unless certain key issues are resolved ahead of a confirmation hearing. The Debtors are advancing the resolution of key issues, including whether cryptocurrency assets in the custody, withhold, and earn programs are property of the estates, and whether account holders have claims at every legal entity.

5.     While stabilizing operations and providing information to stakeholders are top priorities in these chapter 11 cases, the Debtors remained focused on working towards their eventual emergence from bankruptcy. The Debtors and their advisors, in collaboration with other

3

parties in interest, are actively developing the structure for a standalone reorganization that will focus on Celsius' areas of strength and potential growth, while eliminating noncompliant and unprofitable offerings. In parallel, the Debtors are running a robust marketing process for a sale of some or all of the Debtors' assets, and recently obtained approval for their bidding procedures [Docket No. 1272].

6.    Regardless of which path the Debtors pursue, certain threshold legal questions must be resolved. Certain of those issues are currently being litigated, including property of the estate in earn, custody, and withhold, and the Debtors intend to file a motion later this week to approve a briefing schedule to resolve another fundamental question regarding claims. Forging ahead with a proposed chapter 11 plan and related disclosure statement now, with uncertainties around these threshold questions, would squander resources. It is therefore appropriate and value-maximizing to wait until these issues are resolved before proposing a chapter 11 plan.

7.    Likewise, proposing a chapter 11 plan before the Examiner (as defined herein) submits her report would also be premature, as all stakeholders should have the benefit of this independent analysis before they evaluate whether to vote for or against any chapter 11 plan. By simultaneously moving these processes forward, the Debtors retain the greatest flexibility to pursue the optimal path forward: rushing to file a chapter 11 plan before these existential questions are answered would be inefficient.

8.    In the first four months of these chapter 11 cases, the Debtors and their advisors have made substantial progress to set the stage for further discussions surrounding the value–maximizing path forward, including:

- stabilizing the Debtors' business operations following their transition into chapter 11 by obtaining relief to continue operating in the ordinary course of business, including approval of a number of "first day" and "second day" motions

4

after resolving issues raised by the Committee and the U.S. Trustee (as defined herein);

- obtaining relief to improve operational liquidity to navigate through these chapter 11 cases, including relief to monetize mined Bitcoin in the ordinary course of the Debtors' business [Docket No. 514] and approving expedited procedures for the sale or abandonment of certain De Minimis Assets [Docket No. 692];

- addressing numerous questions, concerns, and issues raised by employees, vendors, account holders, and other parties in interest;

- pursuing actions against various counterparties, such as KeyFi and Prime Trust, in order to maximize available assets of the Debtors' estates for the benefit of creditors;

- implementing a number of prudent, cost-cutting measures to optimize the Debtors' working capital expenditures, including instituting a number of reductions in force, rejecting burdensome executory contracts and unexpired leases, resulting in approximately $70 million of annual headcount cost savings and $80 million of non–headcount annual cost savings;

- negotiating more favorable go-forward terms with vendors, which has led to the reduction of non–mining expenditures from approximately $6.1 million to $1.6 million per month and reductions of mining expenditures from approximately $21.3 million to $13 million per month;

- addressing the concerns of and questions from the Committee, U.S. Trustee, and the Court regarding the Debtors' cash management, crypto security, and business operations, among other things, and developing cash and cryptocurrency reporting and security protocols;

- transitioning many employee roles in connection with headcount reduction efforts, at the direction of the Special Committee of the Board of Directors for Celsius Network Ltd.;

- transitioning to a new senior leadership team following the resignation of Celsius founder Alex Mashinsky;

- conducting an internal investigation led by the Special Committee, facilitating the investigation being conducted by the Committee, answering inquiries from state and federal regulators, and working with the Examiner while she conducts her examination;

- preparing and filing the Debtors' schedules of assets and liabilities and statements of financial affairs, which totaled approximately 30,000 pages, following the

5

review and analysis of information related to hundreds of thousands of claims, assets, and contracts of each of the Debtors;

- engaging with and responding to diligence requests from the Committee, the U.S. Trustee, the ad hoc groups, and the Examiner, which has resulted in over 100,000 documents produced, over 450 diligence requests answered, weekly calls with the Committee, daily interactions between the Debtors' advisors and the Committee, and two in-person meetings with the Committee;

- holding three weekly calls between the Debtors' management team and their advisors to review, coordinate and produce diligence responses as quickly as possible;

- engaging with the Committee and other parties in interest on strategic alternatives;

- filing a motion to permit access to certain custody and withhold assets to customers, which resulted in a comprehensive briefing schedule and initial declaration filed [Docket Nos. 670, 988, 996, 1044, 1192, 1289–93];

- filing a motion to permit the Debtors to sell stablecoins for U.S. dollars, which will provide liquidity as these chapter 11 cases progress [Docket No. 832];

- working with advisors to develop a business plan that will form the fundamental underpinnings for a standalone reorganization and engaging with the Committee and regulatory agencies regarding possible go–forward strategies;

- advancing the sale and marketing processes for both the sale of the GK8 assets and substantially all of the Debtors' assets, executing confidentiality agreements with approximately thirty interested parties, convening approximately twenty meetings between management and prospective buyers, and providing over 550 documents to potential bidders;

- preparing for and participating in seven hearings and status conferences regarding critical operational relief and threshold legal questions; and

- filing a motion to establish the claims bar dates in these chapter 11 cases to facilitate the timely administration of the Debtors' claims pool, which features a novel noticing regime tailored to the contours of the cryptocurrency industry [Docket No. 1019].

9.    Accordingly, the Debtors request an extension of the Exclusivity Periods (defined below) to allow the Debtors to begin the plan confirmation process without the costly disruption that would occur if competing plans were to be proposed.  The Debtors' actions to date, and their

projected course for the coming weeks and months, clearly meet the standards articulated in the

Bankruptcy Code and relevant case law for extending the Exclusivity Periods.  Absent an extension

of the Exclusivity Periods, the Debtors fear a resulting avalanche of competing plans and warring

constituencies, which would undermine the very goal all parties share:  expeditiously moving these

chapter 11 cases to a value-maximizing resolution.

10.    The Debtors remain optimistic that consensus can be built in the coming months,

and the proposed extensions will allow the Debtors the latitude to continue to pursue the dual-track

process set forth above.

### Relief Requested

11.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) extending the Debtors' exclusive right to file a chapter 11 plan by

141 days through and including March 31, 2023 (the "Filing Exclusivity Period"), and to solicit

votes thereon by 142 days[3] through and including May 31, 2023 (the "Soliciting Exclusivity

Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"),[4] without

prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods, and

(b) granting related relief.[5]

### Jurisdiction and Venue

12.    The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[3]    For the avoidance of doubt, section 1121 of the Bankruptcy Code provides for a 60-day extension of the Soliciting Exclusivity Period.  The Debtors request a 142-day extension of the already extended deadline for the Soliciting Exclusivity Period (*i.e.*, 202 days from the original Filing Exclusivity Period).

[4]    Calculated in accordance with Bankruptcy Rule 9006(a).

[5]    The Exclusivity Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code will expire on November 11, 2022, and January 10, 2023, respectively, absent further order of the Court.

*Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

13.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The bases for the relief requested herein are section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9006-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

15.     The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

16.     On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors commenced these chapter 11 cases to stabilize their business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

17.     The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee [Docket No. 241]. On September 29, 2022, the Court entered an order approving the appointment of an examiner (the "Examiner") [Docket No. 923].

**Basis for Relief**

18.     The Debtors seek an extension of the Exclusivity Periods to continue working toward their goal of confirming a consensual, value-maximizing chapter 11 plan.[6]  A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code.  Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan.  "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated."  *In re Burns and Roe Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005).  In these chapter 11 cases, the Exclusivity Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code will expire on November 11, 2022, and January 10, 2023, respectively, absent further order of the Court.  Extending the Exclusivity Periods will permit the Debtors to develop an appropriate chapter 11 plan that will best meet the

---

[6]     Consistent with Local Rule 9006-2, this Motion is being filed prior to the expiration of the Exclusivity Periods, and the next omnibus hearing on December 5, 2022 is the "return date" scheduled by the Court for the Motion within the meaning of Local Rule 9006-2.  Thus, the Exclusivity Periods are automatically extended until the Court resolves the Motion, which is scheduled for the omnibus hearing on December 5, 2022.

needs of the Debtors' creditor constituencies, without any unwarranted interference from any dissident party attempting to derail the restructuring process by filing a premature—and unilateral—plan of reorganization.

19.     Section 1121(d)(1) permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.  Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."  Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "to allow the debtor to reach an agreement."  H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Pub. Serv. Co. of N.H.*, 88 B.R. 521, 533–34 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to afford maximum flexibility").  Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors.  *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

20.     Courts in the Second Circuit and in other jurisdictions have held that the decision to extend the exclusivity periods is left to the sound discretion of the bankruptcy court and should be based on the totality of circumstances in each case.  *See, e.g., In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (Bankr. D. Del. 1986).  In general, as long as debtors give the court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested extension of

10

exclusivity . . . should be granted." *In re Global Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (noting the debtors' "substantial efforts . . . to stabilize their business and develop a viable exit strategy"). In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the exclusivity periods. *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664 (identifying the below factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same). These factors include the following:

a.    the size and complexity of the case;

b.    the existence of good faith progress toward reorganization;

c.    the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

d.    whether the debtor is paying its bills as they become due;

e.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f.    whether the debtor has made progress negotiating with creditors;

g.    the amount of time which has elapsed in the case;

h.    whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands; and

i.    whether an unresolved contingency exists.

*In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (citing *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997)).

21.    Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g.*, *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Texaco, Inc.*, 76 B.R. at 327 (holding that size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).  For example, both Congress and courts recognize that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan.  H.R. No. 95-595, at 231–32, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement.").  *See also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

22.    Since the Petition Date, the Debtors have engaged with the Committee and additional key stakeholders to build consensus on the terms of the Debtors' restructuring and ultimate emergence from chapter 11.  While these initial months have included significant progress, including numerous discussions with the U.S. Trustee, Committee, and Examiner, two in–person meetings among the advisors to the Debtors and the Committee, and seven hearings, the Debtors must achieve a number of milestones before bringing these chapter 11 cases to a resolution, including, without limitation:  (a) completing the sale process of GK8, whether it

culminates in a sale transaction or decision to retain those assets; (b) responding to further diligence requests from the Committee, U.S. Trustee, and the Examiner; (c) engaging with the Committee and other parties in interest on a go–forward business plan that will form the underpinnings for a standalone reorganization; (d) working with advisors to market substantially all of the Debtors' assets in a robust market check; and (e) addressing a number of a fundamental legal questions that are matters of first impression in these chapter 11 cases. Once these gating items have been progressed, the Debtors will be able to file a chapter 11 plan that will bring these cases to a value-maximizing conclusion. An extension of the Exclusivity Periods provides the Debtors with the necessary time and breathing space required to efficiently negotiate consensus on the terms of plan of reorganization and take the necessary steps toward implementation.

23.    Sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein. Each of the relevant factors weighs in favor of an extension of the Exclusivity Periods, as follows:

- ***The Debtors' Chapter 11 Cases Are Large and Complex.*** These chapter 11 cases are effectively cases of first impression, as the reorganization of a cryptocurrency financial company is largely unprecedented. These chapter 11 cases involve eight Debtor entities and international operations with employees located across the United States, Australia, Canada, Serbia, Israel, and the United Kingdom. Furthermore, the Debtors have engaged with thousands of contract counterparties, creditors, and other parties in interest. Finally, the Debtors face an ever-evolving regulatory regime within the United States and abroad. While the Debtors have no funded debt, liabilities to account holders total over approximately $6 billion as of the Petition Date.

- ***The Debtors Have Made Good Faith Progress Toward Exiting Chapter 11.*** The Debtors are working tirelessly to advance these chapter 11 cases, including conducting a robust marketing process for the sale of GK8 and substantially all of their assets and briefing key threshold legal issues. The Debtors also worked collaboratively with the Examiner to provide the necessary diligence for her analysis and report due on December 10, 2022. Following certain personnel changes, the Debtors have redoubled efforts to develop a business plan that is coming to fruition. The Debtors are actively engaging with the Committee and

their other stakeholders, but require additional time to build consensus and develop a chapter 11 plan.

- ***An Extension of the Exclusivity Periods Will Not Prejudice Creditors***.  Continued exclusivity will permit the Debtors to maintain flexibility so competing plans do not derail the Debtors' restructuring process.  Being required to dual-track negotiations across multiple plans could give rise to destructive uncertainty to the detriment of all stakeholders and could cause substantial disruptions to the regulatory approval process.  Moreover, throughout these chapter 11 cases, the Debtors have had ongoing and transparent communications with their major creditor groups and continue to meet their postpetition obligations in the ordinary course.  Ultimately, extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest especially when, as here, all stakeholders are working toward a consensual, value-maximizing restructuring.

- ***The Debtors Are Paying Their Bills as They Come Due.***  Since the Petition Date, the Debtors have paid their vendors in the ordinary course of business or as otherwise provided by orders of the Court.

- ***These Cases Are Less Than Four Months Old***.  The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes less than four months after the Petition Date.  During this short time, the Debtors have accomplished a great deal and continue to work diligently towards their timely emergence from chapter 11.

- ***The Debtors Are Not Seeking an Extension to Pressure Creditors.***  The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders.  To the contrary, all creditor groups or their advisors have had an opportunity to actively participate in substantive discussions with the Debtors throughout these chapter 11 cases.  Beyond these organized groups, numerous *pro se* creditors have engaged and conferred with the Debtors on important issues.  In an effort to move these chapter 11 cases forward as efficiently as possible, the Debtors have taken unprecedented steps to resolve certain threshold legal questions ahead of plan confirmation and are actively working to return cryptocurrency to customers as soon as reasonably practicable.  The Debtors are seeking an extension of the Exclusivity Periods to preserve and capitalize on the progress made to date in their restructuring negotiations.

24.    An objective analysis of the relevant factors demonstrates that the Debtors are taking all prudent measures to facilitate a successful conclusion to these chapter 11 cases.  Accordingly, sufficient cause exists to extend the Exclusivity Periods as provided herein.  Furthermore, similar relief is regularly granted in large chapter 11 cases in this district.

14

*See, e.g.*, *In re Revlon, Inc.*, No. 22–10760 (DJS) (Bankr. S.D.N.Y. Oct. 26, 2022) (extending the debtors' exclusive periods by ninety-eight days); *In re Pareteum Corp.*, No. 22–10615 (LGB) (Bankr. S.D.N.Y. Sept. 12, 2022) (extending the debtors' exclusive periods by ninety days); *In re BUYK Corp.*, No 22–10328 (MEW) (Bankr. S.D.N.Y. Aug. 2, 2022) (extending the debtor's exclusive periods by 120 days); *In re JPA NO. 111 CO., LTD.*, No. 21–12075 (DSJ) (Bankr. S.D.N.Y Apr. 25, 2022) (extending the debtors' exclusive periods by ninety days); *In re All Year Holdings Limited*, No. 21–12051 (MG) (Bankr. S.D.N.Y Apr. 19, 2022) (extending the debtor's exclusive periods by 120 days); *In re Hermitage Offshore Services Ltd.*, No 20–11850 (MG) (Bankr. S.D.N.Y. Jan. 4, 2021) (extending the debtors' exclusive periods by ninety days); *In re Frontier Comm'cns Corp.*, No. 20–22476 (RDD) (Bankr. S.D.N.Y. Aug. 11, 2020) (extending the debtors' exclusivity periods by 180 days); *In re Windstream Holdings, Inc.*, No. 19–22312 (RDD) (Bankr. S.D.N.Y. June 22, 2020) (extending the debtors' exclusive periods for the fourth time for a total of 427 days); *In re Barneys New York, Inc.*, No. 19–36300 (CMG) (Bankr. S.D.N.Y Nov. 25, 2019) (extending the debtors' exclusive periods by 120 days); *In re Aegean Marine Petroleum Network Inc.*, No. 18–13374 (MEW) (Bankr. S.D.N.Y Mar. 13, 2019) (extending the debtors' exclusive periods by sixty days); *In re Nine West Holdings, Inc.*, No. 18–10947 (SCC) (Bankr. S.D.N.Y. Mar. 4, 2019) (extending the debtors' exclusive periods for the fourth time for a total of 359 days).[7]

25.     This extension is essential to preserving the Debtors' ability to develop an effective business plan for a go–forward business, conducting a comprehensive market check, and ultimately developing a value–maximizing chapter 11 plan.  Even the mere existence of one or

---

[7]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

more competing "plans"—however untenable and problematic they may be—would unnecessarily complicate what the Debtors anticipate will be a consensual plan development process.  Fighting creditor factions on multiple fronts would undermine the Debtors' going-concern value and jeopardize creditors' recoveries.  Any competing chapter 11 plan filed at this juncture would necessarily be extremely premature, and without the sort of thorough review and analysis of the Debtors' business to develop a viable plan.  Such a turn of events would be antithetical to the Debtors' reorganization and rehabilitation efforts to date and highly prejudicial to all parties-in-interest.  Accordingly, the Debtors request an extension of the Exclusivity Periods, and reserve the right to request further extensions of the Exclusivity Periods, as circumstances require.

## **Motion Practice**

26.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

27.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

28.    No prior request for the relief sought in this Motion has been made to this or any

other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order

granting the relief requested herein and such other relief as the Court deems appropriate under

the circumstances.

| | |
|---|---|
| New York, New York<br>Dated: November 9, 2022 | */s/ Joshua A. Sussberg* |
| | **KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:          jsussberg@kirkland.com |
| | - and - |
| | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:          patrick.nash@kirkland.com<br>                    ross.kwasteniet@kirkland.com<br>                    chris.koenig@kirkland.com<br>                    dan.latona@kirkland.com |
| | *Counsel to the Debtors and Debtors in Possession* |

18

## Exhibit A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) EXTENDING
### THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11
### PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION
### 1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) extending the Debtors' exclusive right to file a chapter 11 plan by 141 days through and including March 31, 2023 (the "Filing Exclusivity Period"), and to solicit votes thereon by approximately 142 days through and including May 31, 2023 (the "Soliciting Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"), and (b) granting related relief, all as more fully set forth in the Motion; and upon the Campagna Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period is hereby extended by 141 days through and including March 31, 2023, and the Exclusive Solicitation Period is hereby extended by 142 days through and including May 31, 2023.

3.      Nothing herein shall prejudice the Debtors' rights to seek further extensions of the Exclusivity Periods consistent with section 1121(d) of the Bankruptcy Code or the rights of any party in interest to object to any further requests.

4.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis is expressly reserved.

5.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

7.      Notwithstanding anything to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

9.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE