

# PROOF OF PUBLICATION

Nov-10, **20**22

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

Nov 10, 2022, NYT & Natl, pg B3

Sworn to me this 10th day
of November, 2022

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF AUCTION FOR THE POTENTIAL SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for the purchase of certain of the Debtors' assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of New York (the "Court") by entry of an order on November 2, 2022 [Docket No. 1272] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

**PLEASE TAKE FURTHER NOTICE** that the Initial Bid Deadline is **November 21, 2022, at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity interested in purchasing some or all of the Retail Platform Assets must comply with the requirements set forth in the Bidding Procedures

**PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for some or all of the Retail Platform Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity that wishes to participate in an Auction for the Retail Platform Assets must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors may conduct an Auction for the Retail Platform Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors expect to seek approval of the Sale (if any) of some or all of the Retail Lending Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for the Remaining Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity that wishes to participate in an Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may conduct an Auction for the Remaining Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video or such other means.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of the Sale (if any) of the Remaining Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **December 19, 2022 at 4:00 p.m.** (prevailing Eastern Time).

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

The Sale Order (if any) is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Agreement (in the case where a Stalking Horse Bidder is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if a Stalking Horse Bidder is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Effective Date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. All rights of any party to set off any claims, debts or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the Effective Date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to Assumed Liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Effective Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets prior to the Effective Date. The Stalking Horse Bidder would not have entered into the Stalking Horse Agreement but for the foregoing protections against potential claims based upon "successor liability" theories.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, subject to the Bidding Procedures, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: (a) free of charge upon request to Stretto, Inc. (the notice and claims agent retained in these chapter 11 cases) by (a) calling (855) 423-1530 (Domestic) or (949) 669-5873 (International); (b) visiting the Debtors' restructuring website at (https://cases.stretto.com/Celsius); or (c) for a fee via PACER by visiting (https://www.deb.uscourts.gov/).

New York, New York, Dated: November 8, 2022

*/s/ Joshua A. Sussberg*, **KIRKLAND & ELLIS LLP, KIRKLAND & ELLIS INTERNATIONAL LLP,** Joshua A. Sussberg, P.C., 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Email: jsussberg@kirkland.com -and- Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*), Ross M. Kwasteniet, P.C. (admitted *pro hac vice*), Christopher S. Koenig, Dan Latona (admitted *pro hac vice*), 300 North LaSalle Street, Chicago, Illinois 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, Email: patrick.nash@kirkland.com, ross.kwasteniet@kirkland.com, chris.koenig@kirkland.com, dan.latona@kirkland.com, *Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**INTERNATIONAL**

# *Great Global Guessing Game: When Will Beijing Drop 'Zero Covid'?*

FROM FIRST BUSINESS PAGE

lemma. Nationwide, daily cases are at a six-month high, with China reporting more than 8,100 new infections per day. Under the usual playbook, officials are resorting to more lengthy lockdowns and costly mass testing to try to stop the spread.

And in China, nothing will be certain until Mr. Xi stops trumpeting "zero Covid" or clearly articulates that the country is changing direction.

In a world beset by war in Ukraine, skyrocketing inflation and rising fears of a global recession, China could have been a bright spot for growth. While most countries dealt with widespread infections and mass deaths in the first year of the pandemic, China kept the virus largely in check with snap lockdowns and quarantines, and its economy thrived relative to the rest of the world.

As new Covid variants have proved milder and vaccines have become more widespread, the rest of the world has moved on from strict policies. China has stuck to the same heavy-handed approach, concerned that a large number of deaths could come with a policy change, and reluctant to import more potent foreign vaccines.

With each new outbreak and infectious strain of Covid-19, the uncertainty grows over how and when Mr. Xi will dismantle his pandemic policy.

"China has this boot on the neck of economic activity, and we're past the point where the boot made sense," said Jude Blanchette, an expert on China at the Center for Strategic and International Studies. "The problem is, the most authoritative voice continues to reiterate no change."

Easing Covid policy matters for the economy. People are staying home, fearful that they might cross paths with someone infected and be sent to a long quarantine under heavy guard. China continues to isolate not just those sick with Covid but anyone who has come in contact with them. Many stores and eateries have closed.

The world's largest iPhone manufacturing complex, in the north-central Chinese city of Zhengzhou, went into a lockdown in mid-October and again this month. Some employees fled the 200,000-worker facility with stories of food shortages flooding the internet. Apple this week warned that its sales would be short of expectations because of the drastic measures.

The warning, and China's latest Covid situation, were described by one analyst as "an absolute gut punch" for the company ahead of the most important holiday season.

The Chinese financial markets, at times, appear disconnected from reality. Investors hoping for a change in policy are pouncing on any information, often rumors or thinly sourced reports, sending the markets on a roller-coaster ride.

Rosy reports from Wall Street banks, pointing to the opportunity for rewards when China opens up, have also helped to fuel rallies. A report from Goldman Sachs this week predicted Chinese stocks could jump 20 percent "on (and before) reopening" from the pandemic.

Often, investors are seizing on official signals, even if the Chinese government isn't actually revealing much. At a news conference on Saturday in Beijing, for example, senior health officials declared that they were "unswervingly" committed to zero-Covid policies, but within reason.

While much of the country remains committed to the zero-Covid strategy, there are signs that the approach is reaching its limit. The financial pressures are mounting on local governments that are running out of money to pay for Covid control measures like mass testing. The social costs, too, are amplifying as more and more people are caught in lengthy lockdowns, their anger, frustration and discontent slipping through internet censors.

The authorities have quietly responded to some of the excesses, including reining in neighborhood guards who resort to violence to enforce the restrictions. The police in a Shandong Province community announced on Tuesday that seven guards there had been detained for beating and dragging people, in a statement that quickly went viral on the Chinese internet and was not censored.

Officials are also offering tiny hints that they might consider a new approach if medical advances could ease the pressure on China's health care system.

The city of Shanghai recently began offering a new inhaled Covid-19 vaccine developed by the Chinese pharmaceutical group CanSino Biologics, which officials have said could significantly enhance immunity and appeal to a portion of the population still hesitant to vaccines. More than a dozen cities are expected to offer the vaccine soon.

Two Chinese pharmaceutical companies are close to gaining approval of mRNA vaccines based on technology first developed and approved in the United States. China has also made progress in drafting distribution agreements with foreign drug companies, and developing and acquiring Covid treatments, including a home-grown antiviral pill.

Citing such developments, Zeng Guang, a former chief epidemiologist at the Chinese Center for Disease Control and Prevention, told investors last week that the conditions for China to open up and loosen its policy were improving. His comments, at a private investor event held by Citigroup, spread quickly online and prompted a rise in financial markets. A spokesperson for Citi declined to comment.

For investors, it is hard to tell whether these small signals will translate into a broader easing of Covid controls, said Richard Harris, the chief executive of Port Shelter Investment Management in Hong Kong.

"They're trying to play both sides at the same time without giving in on the central cause, which is a Covid-zero policy," he said.

Many investors are sitting on the sidelines waiting for more concrete evidence.

Winston Feng, the portfolio manager at MassAve Global, said

***Rumors or thinly sourced reports can send the markets on a roller-coaster ride.***

he was looking at how the authorities in the southern city of Guangzhou were handling a sudden spike in recent days. Last year, officials responded to relatively few cases with severe restrictions on people's movements, sending robotic trucks with food into districts under lockdown. This time, he said, officials have launched mass testing requirements but so far have avoided a citywide lockdown.

"The nuance here is how much of that experimentation is now being conducted," Mr. Feng said, adding that he expected China to take small measures to reopen but also impose renewed restrictions if needed to bring local outbreaks under control.

"There will be moments," he said, "when you feel like you're taking two steps forward, one step back."

Alexandra Stevenson reported from Hong Kong, and Keith Bradsher from Beijing. Zixu Wang and Li You contributed research.

GILLES SABRIE FOR THE NEW YORK TIMES

A Covid testing booth in Beijing. With daily cases at a six-month high, uncertainty has grown over how and when Xi Jinping will dismantle his pandemic policy.

# *Germany, Taking a Firmer Line on China, Blocks 2 Foreign Investment Deals*

By MELISSA EDDY

BERLIN — The government of Chancellor Olaf Scholz blocked the sale of a semiconductor company to a Chinese-owned firm on Wednesday, as Germany seeks to toughen protection of its domestic technology and ease its dependence on China.

Robert Habeck, Germany's economy minister, said the government had also blocked a separate investment in a German company producing critical infrastructure, which he said could not be identified because of secrecy agreements.

Last week, Mr. Scholz visited Beijing, where he met with President Xi Jinping for discussions that focused on Russia's war in Ukraine, as well as economic ties between the two countries. China is Germany's largest trading partner, exchanging goods worth more than 245 billion euros (about $246 billion) last year.

***Reappraising ties to its most prominent trading partner.***

But German officials have grown wary of being overdependent on China. More than a million German jobs are directly dependent on trade with China, and many more indirectly, while almost half of German manufacturing businesses relying on China for some part of their supply chain.

There is also growing frustration in Berlin over Beijing's refusal to grant foreign companies equal treatment in China that Chinese companies enjoy in Germany and elsewhere in Europe. Especially regarding critical infrastructure and technology, there is growing concern over allowing Beijing's state-owned companies too much access.

"Particularly in the semiconductor sector, it is important for us to protect the technological and economic sovereignty of Germany and Europe," Mr. Habeck told reporters on Wednesday. "Of course, Germany is and will remain an open investment location, but we are not naïve, either."

Mr. Habeck named Elmos Semiconductor, based in Dortmund, as one of the companies that had been denied approval for foreign investment.

Elmos announced nearly a year ago that it had planned to spin off its wafer fabrication facility, which produces chips mainly used in the auto industry, into a separate entity that was to be acquired by Silex Microsystems, a Swedish firm wholly owned by a Chinese company.

From the outset, the €85 million deal was subject to government approval because it involved a foreign firm buying a German company.

On Wednesday, Elmos issued a statement saying that it regretted the government's decision, and that the deal would have strengthened chip production in Germany.

It said it would "analyze the decision" and "decide whether to take legal action."

Mr. Habeck declined to name the second company whose sale was blocked, noting that the firm's internal secrecy agreements prevented him from doing so. But the German business daily Handelsblatt reported that it involved ERS Electronic, a company focused on cooling technology based in Bavaria.

A spokeswoman for ERS said the company had discussed "an investment by a Chinese private equity firm," but added that it had not yet received any information from the government on a decision.

Last week, before leaving for Beijing, Mr. Scholz overruled the recommendation of six of his ministries and both domestic and foreign intelligence chiefs to allow Cosco, a Chinese state-owned shipping company, to buy a stake of up to 25 percent in a container-handling terminal in Hamburg, Germany's most important port.

Cosco originally sought to acquire a 35 percent stake, but that was scaled back after widespread political and public outcry over security concerns.

Mr. Scholz traveled to China with a delegation of 12 German business leaders, even as he has sought to encourage German firms to diversify their trade ties in Asia. He and Mr. Habeck will travel to Singapore next week to take part in a wider Asian business conference.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: OLYMPIA SPORTS ACQUISITIONS, LLC, *et al.*, Debtors.[1] | Chapter 11<br>Case No. 22-10853 (MFW)<br>(Jointly Administered) |

**NOTICE OF DEADLINE FOR THE FILING OF PROOFS OF CLAIM, INCLUDING FOR ADMINISTRATIVE EXPENSE CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE (GENERAL BAR DATE IS DECEMBER 5, 2022)**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On September 11, 2022 (the "Petition Date"), Olympia Sports Acquisitions, LLC, et al. (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On November 3, 2022, the Court entered an order [D.I. 216] (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim in the above-captioned chapter 11 cases (the "Chapter 11 Cases").

Pursuant to the Bar Date Order:

- Each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a prepetition claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), no matter how remote or contingent such right to payment or equitable remedy may be, **MUST FILE A PROOF OF CLAIM** on or before December 5, 2022 (the "General Bar Date");
- Each governmental unit (as defined in section 101(27) of the Bankruptcy Code) that holds or asserts a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors **MUST FILE A PROOF OF CLAIM** so that it is filed and received by the Claims Agent on or before **March 10, 2023** (the "Governmental Unit Bar Date");
- Proofs of Claim arising from the Debtors' rejection of executory contracts or unexpired leases pursuant to Bankruptcy Code section 365 shall be filed so that they are received by the Claims Agent on or before the later of (i) the General bar Date and (ii) thirty-five (35) days after the date of entry of the applicable Rejection Order;
- All Claimants must submit a proof of claim by either: (i) mailing the original proof of claim by regular mail, overnight mail, courier service, hand delivery, or in person to: If by Regular Mail: BMC Group, Attn: Olympia Claims Processing, PO Box 90100, Los Angeles, CA 90009 and if by Messenger or Overnight Delivery: BMC Group, Attn: Olympia Claims Processing, 3732 West 120th Street, Hawthorne, CA 90250, or (ii) submitting the Proof of Claim electronically using the interface available on the Claims Agent's website at https://cases.creditorinfo.com/olympiasports so that it is actually received on or before the applicable bar date.
- Proofs of claim must be sent by overnight mail, courier service, hand delivery, regular mail, or in person, or completed electronically through the aforementioned website. Proofs of claim sent by facsimile, telecopy, or electronic mail will not be accepted and will not be considered properly or timely filed for any purpose in the Chapter 11 Case.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF PLAN VOTING AND ANY POTENTIAL PLAN DISTRIBUTION.

A copy of the Bar Date Order and proof of claim form may be obtained free of charge by contacting the Claims Agent (olympiasports@bmcgroup.com) or Debtors' Counsel, Brya M. Keilson, Esq. of Morris James LLP (bkeilson@morrisjames.com). Copies of all of the pleadings filed in the bankruptcy case, including the Bar Date Order, are available on the Claims Agent website https://cases.creditorinfo.com/olympiasports or by written request to the Claims Agent, BMC Group PO Box 90100, Los Angeles, CA 90009 or olympiasports@bmcgroup.com, 1 (888) 909-0100.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are (1) Olympia Sports Acquisitions, LLC, a Delaware limited liability company (1451); (2) RSG Acquisitions, LLC, a Delaware limited liability company (1599); (3) Project Running Specialties, Inc., a Delaware corporation (6001); (4) Project Sage Acquisition, LLC, a Delaware limited liability company (7727); (5) Legacy Shoes, Inc., a Delaware corporation (1185); (6) Clever Training Operating Co., LLC, a Delaware limited liability company (9177); (7) The Running Specialty Group LLC, an Indiana limited liability company (5378); (8) The Running Specialty Group Acquisitions 1, LLC, an Indiana limited liability company (5505); (9) Heart Monitor Operating, LLC, a Florida limited liability company (6100); (10) Splash Boutique Operating, LLC, a Florida limited liability company (6139); (11) Bargain Fitness Operating, LLC, a Florida limited liability company (8666); (12) Digital Business Operating, LLC, a Florida limited liability company (9802); and (13) FSSS Operating, LLC, a Florida limited liability company (8585). The location of the Debtors' corporate headquarters is 9 N. River Road, PMB 650, Auburn, ME 04210.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CELSIUS NETWORK LLC, *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 22-10964 (MG)<br>(Jointly Administered) |

**NOTICE OF AUCTION FOR THE POTENTIAL SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for the purchase of certain of the Debtors' assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of New York (the "Court") by entry of an order on November 2, 2022 [Docket No. 1272] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto, Inc. by calling (855) 423-1530 (Domestic) or (949) 669-5873 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/celsius).**

**PLEASE TAKE FURTHER NOTICE** that the Initial Bid Deadline is **November 21, 2022, at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity interested in purchasing some or all of the Retail Platform Assets must comply with the requirements set forth in the Bidding Procedures

**PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for some or all of the Retail Platform Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity that wishes to participate in an Auction for the Retail Platform Assets must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors may conduct an Auction for the Retail Platform Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors expect to seek approval of the Sale (if any) of some or all of the Retail Lending Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that the Final Bid Deadline for the Remaining Assets is **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity that wishes to participate in an Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may conduct an Auction for the Remaining Assets, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, via remote video or such other means.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of the Sale (if any) of the Remaining Assets at the Sale Hearing, which is presently scheduled to commence on **December 22, 2022 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **December 19, 2022 at 4:00 p.m.** (prevailing Eastern Time).

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

The Sale Order (if any) is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Agreement (in the case where a Stalking Horse Bidder is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if a Stalking Horse Bidder is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Effective Date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. All rights of any party to set off any claims, debts or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the Effective Date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to Assumed Liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Effective Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets prior to the Effective Date. The Stalking Horse Bidder would not have entered into the Stalking Horse Agreement but for the foregoing protections against potential claims based upon "successor liability" theories.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, subject to the Bidding Procedures, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: (a) free of charge upon request to Stretto, Inc. (the notice and claims agent retained in these chapter 11 cases) by (a) calling (855) 423-1530 (Domestic) or (949) 669-5873 (International); (b) visiting the Debtors' restructuring website at (https://cases.stretto.com/Celsius); or (c) for a fee via PACER by visiting (https://www.deb.uscourts.gov/).

New York, New York, Dated: November 8, 2022

*/s/ Joshua A. Sussberg*, **KIRKLAND & ELLIS LLP, KIRKLAND & ELLIS INTERNATIONAL LLP,** Joshua A. Sussberg, P.C., 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Email: jsussberg@kirkland.com -and- Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*), Ross M. Kwasteniet, P.C. (admitted *pro hac vice*), Christopher S. Koenig, Dan Latona (admitted *pro hac vice*), 300 North LaSalle Street, Chicago, Illinois 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, Email: patrick.nash@kirkland.com, ross.kwasteniet@kirkland.com, chris.koenig@kirkland.com, dan.latona@kirkland.com, *Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br>CINEWORLD GROUP PLC, *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 22-90168 (MI)<br>(Jointly Administered)<br>**Re: Docket No. 775** |

**NOTICE OF DEADLINES FOR THE FILING OF PROOFS OF CLAIM, INCLUDING REQUESTS FOR PAYMENT PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE**

**THE CLAIMS BAR DATE IS TUESDAY, JANUARY 17, 2023, AT 5:00 P.M. (PREVAILING CENTRAL TIME)**

**THE GOVERNMENTAL BAR DATE IS MONDAY, MARCH 6, 2023, AT 5:00 P.M. (PREVAILING CENTRAL TIME)**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

***Deadlines for Filing Proofs of Claim***. On November 7, 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. 775] (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim, including requests for payment under section 503(b)(9) of the Bankruptcy Code ("Proofs of Claim"), in these chapter 11 cases of the following debtors and debtors in possession (collectively, the "Debtors"): **DEBTOR, CASE NO.:** A 3 Theatres of San Antonio, Ltd., 22-90167; Cineworld Group plc, 22-90168; Cinebarre, LLC, 22-90169; Busby AssignCo, LLC, 22-90170; Cinemas Associates, LLC, 22-90171; Augustus 1 Limited, 22-90245; 13th Avenue Partners, L.L.C., 22-90172; Regal Gallery Place, LLC, 22-90173; The Movie Machine, L.L.C., 22-90174; Regal Entertainment Holdings, Inc., 22-90175; A 3 Theatres of Texas, Inc., 22-90176; Cineworld Cinemas Holdings Limited, 22-90243; Cineworld Cinemas Limited, 22-90246; UA Shor, LLC, 22-90177; Cineworld Estates Limited, 22-90231; Regal Entertainment Holdings II LLC, 22-90178; Cineworld Funding (Jersey) Limited, 22-90235; UA Swansea, LLC, 22-90179; Cineworld Holdings Limited, 22-90240; Consolidated Theatres Management, L.L.C., 22-90180; City Screen (Brighton) Limited, 22-90214; Regal Entertainment Group, 22-90181; City Screen (Liverpool) Limited, 22-90216; United Artists Properties I Corp., 22-90182; Regal/ATOM Holdings, LLC, 22-90183; City Screen (S.O.A.) Limited, 22-90218; City Screen (Stratford) Limited, 22-90223; United Artists Realty Company, 22-90184; City Screen (York) Limited, 22-90227; Regal Distribution, LLC, 22-90185; Regal Cinemas Holdings, Inc., 22-90186; Regal/Cinebarre Holdings, LLC, 22-90187; Crown Finance US, Inc., 22-90188; Regal Distribution Holdings, LLC, 22-90189; Frederick Plaza Cinema, Inc., 22-90190; Crown UK HoldCo Limited, 22-90234; Crown Intermediate Holdco, Inc., 22-90191; RCI/FSSC, LLC, 22-90192; Regal Cinemas II, LLC, 22-90193; Crown Theatre Corporation, 22-90194; Eastgate Theatre, Inc., 22-90195; RCI/RMS, LLC, 22-90196; Regal Cinemas, Inc., 22-90197; Edwards Theatres, Inc., 22-90198; Great Escape LLC, 22-90210; Great Escape of Nitro, LLC, 22-90221; Regal CineMedia Corporation, 22-90199; Great Escape of O'Fallon, LLC, 22-90226; Regal-18 LLC, 22-90200; Great Escape Theatres of Bowling Green, LLC, 22-90232; Regal CineMedia Holdings, LLC, 22-90201; Regal Cinemas Corporation, 22-90202; Great Escape Theatres of Harrisburg, LLC, 22-90236; Great Escape Theatres of Lebanon, LLC, 22-90239; Ragains Enterprises LLC, 22-90203; R.C. Cobb II, LLC, 22-90204; Great Escape Theatres of New Albany, LLC, 22-90242; R.C. Cobb, Inc., 22-90205; Great Escape LaGrange LLC, 22-90206; Picturehouse Bookings Limited, 22-90219; Picturehouse Cinemas Limited, 22-90225; Picturehouse Entertainment Limited, 22-90229; Regal Investment Company, 22-90222; Regal Licensing, LLC, 22-90233; Regal Stratford, Inc., 22-90238; Regal/DCIP Holdings, LLC, 22-90207; RegalRealty - 17, LLC, 22-90211; Richmond I Cinema, L.L.C., 22-90215; Augustus 2 Limited, 22-90247; Empire Cinema 2 Limited, 22-90248; Basildon Cinema Number Two 2 Limited, 22-90249; United Artists Theatre Circuit II, LLC, 22-90208; United Artists Theatre Circuit, Inc., 22-90212; Bromley Cinema 2 Limited, 22-90250; United Artists Theatre Company, 22-90213; Cine-UK Limited, 22-90251; Valeene Cinemas, LLC, 22-90217; Basildon Cinema 2 Limited, 22-90252; Gallery Cinemas Limited, 22-90253; Wallace Theater Holdings, Inc., 22-90220; Warren Oklahoma Theatres, Inc., 22-90224; Gallery Holdings Limited, 22-90254; Hemel Hepstead Two Cinema 2 Limited, 22-90255; Classic Cinemas Limited, 22-90230; Newcastle Cinema 2 Limited, 22-90256; Newman Online Limited, 22-90257; Cineworld Cinema Properties Limited, 22-90241; CS (Brixton) Limited, 22-90258; CS (Exeter) Limited, 22-90259; Cineworld Elite Picture Theatre (Nottingham) Limited, 22-90228; Cineworld South East Cinemas Limited, 22-90209; CS (Norwich) Limited, 22-90260; Hoyts Cinemas Corporation, 22-90261; Oklahoma Warren Theatres II, LLC, 22-90262; McIntosh Properties, LLC, 22-90263; Interstate Theatres Corporation, 22-90264; Cineworld HunCo Kft., 22-90244; Hollywood Theaters III, Inc., 22-90265; Pacific Rim Business Development Corporation, 22-90266; Lois Business Development Corporation, 22-90267; Poole Cinema 2 Limited, 22-90237; Next Generation Network, Inc., 22-90268; Oklahoma Warren Theatres, LLC, 22-90269; Hollywood Theaters, Inc, 22-90270; Great Escape Theatres, LLC, 22-90271.

***The Bar Dates***. Pursuant to the Bar Date Order, ***all*** entities (except governmental units), including individuals, partnerships, estates, and trusts that have a claim or potential claim against the Debtors that arose prior to September 7, 2022, no matter how remote or contingent such right to payment or equitable remedy may be, ***including*** requests for payment under section 503(b)(9) of the Bankruptcy Code, MUST FILE A PROOF OF CLAIM on or before ***Tuesday, January 17, 2023, at 5:00 p.m., prevailing Central Time (the "Claims Bar Date")***. Governmental entities that have a claim or potential claim against the Debtors that arose prior to September 7, 2022, no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before ***Monday, March 6, 2023, at 5:00 p.m., prevailing Central Time (the "Governmental Bar Date")***. All entities holding claims arising from the Debtors' rejection of executory contracts and unexpired leases are required to file Proofs of Claim by ***the date that is the later of (a) the Claims Bar Date or the Governmental Bar Date, as applicable, (b) 5:00 p.m., prevailing Central Time, on the date that is thirty (30) days following entry of the order approving the Debtors' rejection of the applicable executory contract or unexpired lease, and (c) 5:00 p.m., prevailing Central Time, on the date that is thirty (30) days following the effective date of the Debtors' rejection of the applicable executory contract or unexpired lease (the "Rejection Damages Bar Date")***. All entities holding claims affected by an amendment to the Debtors' schedules of assets and liabilities filed in these cases (the "Schedules") are required to file Proofs of Claim, by ***the later of (i) the Claims Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m., prevailing Central Time, on the date that is thirty (30) days from the date on which the Debtors mail notice of the amendment of the Schedules (the "Amended Schedules Bar Date")***.

**THE BAR DATES ESTABLISHED BY THE BAR DATE ORDER AND REFERENCED IN THIS NOTICE SUPERSEDE ANY BAR DATES ESTABLISHED, FILED, NOTICED, OR PREVIOUSLY SERVED IN THESE CHAPTER 11 CASES.**

**ANY PERSON OR ENTITY WHO FAILS TO FILE A PROOF OF CLAIM, INCLUDING ANY REQUEST FOR PAYMENT UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE, ON OR BEFORE THE CLAIMS BAR DATE OR THE GOVERNMENTAL BAR DATE, AS APPLICABLE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION ON ANY CHAPTER 11 PLAN.**

***Filing a Proof of Claim***. Each Proof of Claim must be filed or submitted, including supporting documentation, through any of the following methods: (a) electronic submission through PACER (Public Access to Court Electronic Records at http://ecf.txsb.uscourts.gov/), (b) electronic submission using the interface available on the Claims and Noticing Agent's website at https://cases.ra.kroll.com/cineworld, or (c) if submitted through non-electronic means, by U.S. mail or other hand delivery system, so as to be ***actually received*** by the Claims and Noticing Agent on or before the Claims Bar Date, the Governmental Bar Date, or any other applicable Bar Date, as applicable at the following address: **If by First-Class Mail Hand Delivery or Overnight Mail:** Cineworld Group plc Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

***Contents of Proofs of Claim***. Each Proof of Claim must: (a) be written in legible English; (b) include a claim amount denominated in United States dollars; (c) clearly identify the specific Debtor against which the claim is asserted; (d) conform substantially with the Proof of Claim form provided by the Debtors or Official Form 410; (e) be signed by the claimant or by an authorized agent or legal representative of the claimant on behalf of the claimant, whether such signature is an electronic signature or is ink; and (f) include as attachments any and all supporting documentation on which the claim is based. ***Please note*** that each Proof of Claim must state a claim against only one Debtor and clearly indicate the specific Debtor against which the claim is asserted. To the extent more than one Debtor is listed on the Proof of Claim, a Proof of Claim is treated as if filed only against Regal Cinemas, Inc., or if a Proof of Claim is otherwise filed without identifying a specific Debtor, the Proof of Claim may be deemed as filed only against Regal Cinemas, Inc..

***Electronic Signatures Permitted***. Proofs of Claim signed electronically or in ink by the claimant or an authorized agent or legal representative of the claimant may be deemed acceptable for purposes of claims administration. Copies of Proofs of Claim, or Proofs of Claim sent by facsimile or electronic mail, will not be accepted.

***Section 503(b)(9) Requests for Payment***. Any Proof of Claim that asserts a right to payment arising under section 503(b)(9) of the Bankruptcy Code must also: (a) include the value of the goods delivered to and received by the Debtors in the twenty (20) days prior to the Petition Date; (b) attach any documentation identifying the particular invoices for which such claim is being asserted; and (c) attach documentation of any reclamation demand made to the Debtors under section 546(c) of the Bankruptcy Code (if applicable).

***Additional Information***. If you have any questions regarding the claims process and/or you wish to obtain a copy of the Bar Date Notice, a proof of claim form or related documents you may do so by: (a) calling the Debtors' restructuring hotline at (844) 648-5574 (Toll Free U.S.) or (845) 295-5705 (Non-U.S. Parties); and/or (b) visiting the Debtors' restructuring website at: https://cases.ra.kroll.com/cineworld.

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/cineworld. The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is: 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.