| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:     (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:     (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:     (312) 862-2000 |
| | Facsimile:     (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' REPLY**
**TO SERIES B PREFERRED HOLDERS' LIMITED OBJECTION TO**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER SETTING BAR DATES**
**FOR SUBMITTING PROOFS OF CLAIM AND GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this Reply (this "Reply") in response to the *Series B Preferred Holders' Limited Objection to Debtors' Motion for Entry of an Order Setting Bar Dates for Submitting Proofs of Claim and Granting Related Relief* [Docket No. 1184] (the "Objection")[2] filed by Community First Partners,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Terms capitalized but not defined herein shall have the meanings ascribed to such terms in the Bar Date Motion or the Objection, as applicable.

LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively, the "<u>Preferred Equity Holders</u>"). In support of this Reply and in further support of the Bar Date Motion, the Debtors state as follows:

### Preliminary Statement

1. The Preferred Equity Holders ask the Court to defer approving the form of the Bar Date Notice until the Liability Issue Procedures are in place, or, alternatively, direct the Debtors to insert language into the Bar Date Notice and Bar Date Order to inform Celsius account holders (collectively, the "<u>Account Holders</u>") that the status of their Claims may be affected by the outcome of the Liability Issue and Account Holder Claim Ruling and reserving rights related thereto. The Preferred Equity Holders further request that the 1009 Motion be decided before the Bar Date Notice is distributed, and that the Proof of Claim Form require Claims be stated in U.S. dollar amounts as of the Petition Date.

2. The Debtors' intent with the Schedules and Bar Date Notice is to avoid confusion for Account Holders by presenting information regarding their Claims in the format they would most easily be able to review and verify. Account Holders transferred cryptocurrency to the Debtors, and the Debtors are contractually obligated under the Terms of Use to return cryptocurrency to the Account Holders. Obtaining accurate cryptocurrency coin counts from Account Holders is foundational to the claims process. If the Debtors are required to quantify the dollar value of cryptocurrency claims as of the Petition Date, that calculation can be done by the Debtors' advisors, provided that an accurate coin count exists from which the calculations can be based.

3. The Debtors included detailed coin counts for each Account Holder in the Schedules. Those coin counts consist of individual figures for each unique coin type that the Account Holder is owed. The Debtors did so because they have hundreds of thousands of Account

2

Holders—each account is denominated in the number and type of cryptocurrency held in such account. It is critical that Account Holders receive clear instructions that they should raise any issues with the coin counts in the Schedules by the Bar Date and that the Bar Date not be delayed. If even a small percentage of the Account Holders file proofs of claim, the time and expense of reconciling the Claims could be significant. It is important to avoid adding extraneous and confusing information to the Proof of Claim Form or Bar Date Notice, as this will magnify the burden of the claims reconciliation process.

4. Additionally, the Debtors wish to avoid engendering concerns that they intended to make distributions in U.S. dollars, given that the Debtors are still exploring chapter 11 plan constructs focused on returning value in cryptocurrency, not U.S. dollars. Sending a false signal would likely lead to an increase in Account Holder agitation, which will ultimately result in time and expense burdens on these chapter 11 cases.

5. The Debtors understand the need for efficiency to avoid unnecessary expense for their estates and confusion for Account Holders in the claims process. The Bar Date Motion provides an efficient and straightforward process for evaluating Account Holders' Claims. The Preferred Equity Holders' request to add excessive contingency language to the Bar Date Notice and Bar Date Order will only cause confusion and concern for Account Holders—further burdening the Debtors' estates with administrative costs and delaying the claims process. Moreover, the Debtors are committed to amending their Schedules to the extent required to comply with any opinion or order of the Court with respect to the Account Holder Claims Ruling and the Denomination Issue. As such, there is no prejudice to the Preferred Equity Holders.

6. The Court is well within its discretion to approve the proposed alterations to the Proof of Claim Form, and a court in this district approved nearly identical alterations under similar

circumstances.[3] The Debtors recognize that claimants may assert Claims other than those based on cryptocurrency amounts held in Celsius accounts. While the Debtors firmly disagree with the Preferred Equity Holders' assertions that the Account Holders' Claims *must* be denominated in U.S. dollars on the Proof of Claim Form, the Debtors are prepared to amend the Proof of Claim Form and Bar Date Notice such that it provides the option for claimants to list a Claim in U.S. dollars to the extent the obligation is based on something other than cryptocurrency amounts held in Celsius accounts. That amendment is solely to minimize confusion for Account Holders and streamline the claims reconciliation process.

7. As stated more fully in the Debtors' objection to the 1009 Motion (the "<u>1009 Objection</u>"), the Preferred Equity Holders do not articulate a single reason why Account Holders should be required to list the value of their potential Claim in U.S. dollars *now*. Rather than simplify the process for Account Holders, the Objection seeks to plant the seeds of arguments the Preferred Equity Holders intend to raise in the future depending on the movement of cryptocurrency prices.

8. With respect to the Preferred Equity Holders' request to "defer approval of the Bar Date Notice until the Court has ruled on the 1009 Motion," the Debtors agreed to simultaneously consider the Bar Date Motion and 1009 Motion at the hearing on November 15, 2022. Objection ¶ 9. Any ruling on the 1009 Motion requiring changes to the Schedules can be reflected in the Bar Date Notice as appropriate.

9. Accordingly, the Bar Date Motion should be granted, as it represents the most efficient path for soliciting and reconciling Claims. To the extent the Court denies the Bar Date

---

[3] *See In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 3, 2022) [Docket No. 218].

Motion or grants any relief requested in the Objection, the Debtors request that the ruling be narrowly tailored so that it is clear that the inclusion of U.S. dollar amounts of Claims as of the Petition Date on any Proof of Claim Form has no legal significance barring a further order of the Court after notice to all parties.

## Reply

**I.    The Bar Date Motion Provides for a Clear and Efficient Claims Process.**

10.    The Bar Date Motion, Bar Date Notices, and Proof of Claim Form establish a simple and efficient process for Account Holders and other claimants to ensure that their respective Claims are reviewed by the Debtors during the claims process. The Bar Date Notice articulates that proofs of claim need not be filed for "any Claim that is listed on the Schedule filed by the Debtors" so long as the Claim is not listed as "disputed," "contingent," or "unliquidated," the "claimant does not disagree with the amount, nature, and priority of the Claim as set forth in the Schedules, and . . . the claimant does not dispute that the Claim is an obligation only of the specific Debtor against which the Claim is listed in the Schedules." Bar Date Notice p. 5, 7. The language of the Bar Date Notice leaves zero "bewilderment" as to what Account Holders need to do with respect to their Claims—they should first review the Schedules, and then, if they agree with the way that their Claim is scheduled, they need not file a Proof of Claim Form. If an Account Holder disagrees with his or her scheduled Claim, he or she must submit a Proof of Claim Form with information that he or she believes accurately represents his or her Claim according to the requirements set forth in the Bar Date Notice.

11.    Despite the Preferred Equity Holders' belief that "prudent" Account Holders will file a Universal POC or multiple proofs of claim against every Debtor even if they agree with their scheduled Claim, the Bar Date Notice and the disclaimer in the Global Notes to the Schedules make it clear that "to the extent an [A]ccount [H]older agrees with the amount of their claim

5

provided in the Schedules, *there is no need to file an additional Proof of Claim to ensure that such Claim is asserted against each Debtor Entity*." Bar Date Motion ¶ 15 (emphasis added). The disclaimer goes further, assuring each Account Holder that "[t]o the extent the Court enters a final and non-appealable order with respect to the Account Holder Claim Ruling, the Debtors intend to amend the Schedules to the extent required by such ruling" and any claimant affected by such amendment will be subject to the Supplemental Bar Date and given additional time to amend their Claim accordingly. *Id.* Reliance on the Schedules and the instructions in the Bar Date Notice is far from "illusory." Together, the Schedules and the Bar Date Notice create an efficient and straightforward process by which Account Holders can evaluate their Claims and any potential need to file proofs of claim, ultimately limiting unnecessary filings and reconciliation work in the future and limiting administrative costs to the Debtors' bankruptcy estate.

12.    The Preferred Equity Holders also seek to circumvent the claims objection process by requiring the Debtors to include the Liability Issue Procedures in the Bar Date Notice, but the Bankruptcy Code already provides for such procedures—objecting to proofs of claim pursuant to section 502(b) of the Bankruptcy Code. The Preferred Equity Holders do not demonstrate why they should be excepted from this process—notably, the Objection is devoid of case law supporting this position. There is no doubt that these chapter 11 cases may potentially generate a significant number of proofs of claim to be reconciled. Yet, the Preferred Equity Holders do not demonstrate that the relief requested—either deferral of the approval of the Bar Date Notice or additional language in the Bar Date Notice—will alleviate this potential. Rather, the relief they request will only impede the claims process.

6

13. The current Bar Date Notice and claims process contemplated by the Bar Date Motion provides what the Debtors believe to be the most efficient way to manage Claims in these chapter 11 cases.

II. **The Alterations to the Proof of Claim Form Are Permissible Under the Bankruptcy Rules, and Any Requirement to List Cryptocurrency Claims in U.S. Dollars Is Burdensome and Will Create Confusion.**

14. These chapter 11 cases present unique challenges with respect to the claim process, and the adjustments to the Proof of Claim Form are within the applicable requirements provided in Bankruptcy Rule 9009(a), particularly in light of the circumstances. Namely, that the Debtors may alter the Proof of Claim Form to "expand the prescribed areas for responses in order to permit complete responses."[4] The Debtors seek only the most efficient processes to provide Account Holders with details on their potential Claims—many of whom are unaccredited individual investors. The Account Holders have only ever considered their holdings in terms of the amount and type of cryptocurrency their account balances reflect on the Celsius platform. Creating any requirement that Account Holders must also list their Claim amount in U.S. dollars as of the Petition Date (or evaluate or object to a U.S. dollar amount listed by the Debtors) will only create further confusion for Account Holders and thus lead to significant estate resources being dedicated to claims reconciliation in the future.

15. This Court is well within its discretion to adjust the Proof of Claim Form to fit the needs of these chapter 11 cases, and the proposed alterations to the Proof of Claim Form do not violate the Bankruptcy Code or the Bankruptcy Rules. Moreover, nearly identical alterations to the Proof of Claim Form were approved under similar circumstances by the court in *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) [Docket No. 218].

---

[4] *See* Fed. R. Bankr. P. 9009(a)(1).

16. As they did in the 1009 Motion (and as refuted in the 1009 Objection), the Preferred Equity Holders anchor the majority of their argument to section 502(b) of the Bankruptcy Code, which is, by its terms, inapplicable. *See* 1009 Motion ¶ 14 ("[S]ection 502(b) of the Bankruptcy Code provides that *if there is an objection to a claim*, the court 'shall determine the amount of such claim in lawful currency of the United States as of the [petition] date . . . .'" (quoting 11 U.S.C. § 502(b)) (emphasis added)). As made clear by the text of section 502 and articulated in the corresponding case law, "this statutory provision, according to its express language, is triggered *only* upon the occurrence of a post-petition event in the bankruptcy case—a claim objection." *In re Mohr*, 425 B.R. 457, 464 (Bankr. S.D. Ohio), *aff'd sub nom. U.S. Tr. v. Mohr*, 436 B.R. 504 (S.D. Ohio 2010) (emphasis added) (citing 8 Collier on Bankruptcy ¶ 1300.71[2] (15th ed. rev. 2006)). It is inapposite to contend that allowing claimants to denominate Claims in cryptocurrency is in any way a violation of section 502 of the Bankruptcy Code.

17. Furthermore, requiring cryptocurrency Claims to be denominated in U.S. dollars on the Proof of Claim Form will be overly burdensome to Account Holders, create additional confusion, and drastically complicate the claims reconciliation process. The baseline denomination for every single Account Holder's cryptocurrency Claim is the number and type of cryptocurrency that Account Holders hold in their Celsius accounts. Cryptocurrency is transferred onto the platform denominated in cryptocurrency, moves about the platform denominated in cryptocurrency, and when withdrawn, is withdrawn denominated in cryptocurrency. Without the baseline Claim amount denominated in cryptocurrency, reconciliations of Claims in these chapter 11 cases would be nearly impossible. For that reason, the Debtors have scheduled over 600,000 Claims denominated in cryptocurrency to ensure that the Account Holders and the Debtors are able to process and reconcile Claims efficiently.

18. Denominating cryptocurrency amounts in U.S. dollars is not as simple as the Preferred Equity Holders imply. The U.S. dollar conversion rate for numerous cryptocurrencies can be as many as nine decimal places. Asking over 600,000 Account Holders to convert their various cryptocurrency holdings across numerous coins and various U.S. dollar exchange rates will unnecessarily complicate the claims process. Moreover, any miscalculation or rounding errors that occur during that process will create further burden on the Debtors and their advisors during the reconciliation process—ultimately creating more administrative expenses for the Debtors' estates.

19. With over 600,000 Account Holders, the Debtors need (and have designed) a simple and efficient claims process that begins as soon as possible. By requiring Account Holders to evaluate Claims denominated in cryptocurrency, the Debtors and the Account Holders will be comparing apples to apples which will allow for a more efficient claims reconciliation process. The Debtors are committed to amending their Schedules to the extent required to comply with any opinion or order of the Court with respect to the Account Holder Claims Ruling and the Denomination Issue. Any such amendment will trigger a Supplemental Bar Date notice to Account Holders notifying them of any changes to their Claims. Neither the Account Holder Claims Ruling nor the Denomination Issue should delay the claims reconciliation process. Should a calculation of Claims in U.S. dollars or clarification about where Account Holders' Claims lie be required pursuant to an opinion or order of this Court, the Debtors can amend the Schedules as appropriate, which is a far better approach than complicating and delaying the Claims process now.

## Conclusion

20. The Bar Date Motion, with the proposed alterations to the Proof of Claim Form, represents the most efficient way for the Debtors, the Account Holders, and other claimants to effectuate the claims reconciliation process. The process for reviewing the Schedules and

evaluating Claims is articulated in the Bar Date Notice. Deferral of the approval of the Bar Date Notice or additional language regarding the effects of certain outstanding legal questions will do nothing to alleviate the requirement that the Preferred Equity Holders object to Claims that they do not agree with. The ability of Account Holders to denominate their Claims in cryptocurrency on the Proof of Claim Form is paramount. These are chapter 11 cases where each customer transferred cryptocurrency onto the Debtors' platform. It makes perfect sense for customers' Claims to be expressed in cryptocurrency on the Proof of Claim Form as this is exactly what the Debtors owe the Account Holders under the Debtors' Terms of Use. The Preferred Equity Holders' reading of the Bankruptcy Code and Bankruptcy Rules relevant to alterations of the Proof of Claim Form is misguided. The relief requested is not only unnecessary, but also potentially costly to the estate. As such, the Bar Date Motion should be granted, with the proposed changes to the Proof of Claim Form, and the Objection should be overruled.

## Reservation of Rights

The Debtors expressly reserve all rights with respect to the Motion, including any potential disputes addressed but not advanced therein. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute or challenge any particular claim on any grounds, including through avoidance and/or recovery actions, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this objection or any order granting the relief requested by this objection, (e) an implication or admission as to any position the Debtors may take with respect to outstanding legal issues in these chapter 11 cases, including the issue of how distributions to stakeholders under a chapter 11 plan should be calculated or the form such distributions should take; (f) a request or authorization to assume any agreement, contract, or lease

pursuant to section 365 of the Bankruptcy Code, (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this objection are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

[*Remainder of Page Intentionally Left Blank.*]

| | |
|---|---|
| New York, New York<br>Dated: November 11, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:     (212) 446-4900<br>Email:          jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois  60654<br>Telephone:     (312) 862-2000<br>Facsimile:     (312) 862-2200<br>Email:          patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |