**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
          kwofford@whitecase.com
          sam.hershey@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
          gregory.pesce@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
STATEMENT (A) IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY
OF AN ORDER (I) SETTING BAR DATES FOR SUBMITTING PROOFS OF
CLAIM, (II) APPROVING PROCEDURES FOR SUBMITTING PROOFS OF
CLAIM, (III) APPROVING NOTICE THEREOF, AND (IV) GRANTING RELATED
RELIEF AND (B) IN RESPONSE TO THE PREFERRED EQUITY OBJECTION**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") states as follows in support of the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 1019] (the "**Bar Date Motion**") and in response to the *Series B Preferred Holders' Limited Objection to Debtors' Motion for Entry of an Order Setting Bar Dates for Submitting Proofs of Claim and Granting Related Relief* [Docket No. 1184] (the "**Preferred Equity Objection**"):

### Statement

1. The Committee supports entry of the bar date order. As this court observed at the October 10 hearing, "this case needs to move forward as quickly as possible." Oct. 10, 2022, Hr'g Tr. 72:10-11. Each passing day that the Debtors remain in chapter 11 is another day that account holders are deprived of their savings while the Debtors continue to burn cash and incur enormous administrative and professional expenses. It is, therefore, critical that the claims process start immediately so that a value-maximizing plan can be prosecuted and account holders and creditors can receive long-delayed distributions as soon as possible. The Preferred Equity Objection - brought by sophisticated financial institutions with enormous resources - seeks to halt that process in an apparent effort to tie these cases up in litigation (presumably with the hope that delay will lead to a better outcome for equity). The Court should not permit such a tactic. The Preferred Equity Objection should be overruled, and the claims process should be allowed to proceed as proposed by the Debtors.

2. The Bar Date Motion seeks to establish a claims procedure that is appropriately tailored to the circumstances and needs of these chapter 11 cases. The Debtors have scheduled claims by the number of coin obligations with respect to each cryptocurrency and account type.

*See, e.g.,* Case No. 22-10967 [Docket No. 5]; Case No. 22-10970 [Docket No. 5]; Case No. 22-10968 [Docket No. 5]; Case No. 22-10965 [Docket No. 6]; Case No. 22-10966 [Docket No. 7]; Case No. 22-10964 [Docket No. 974]; Case No. 22-10969 [Docket No. 5]; Case No. 22-10971 [Docket No. 5] (collectively, the "**Schedules**"). That approach is sensible because it is how account holders monitor and track their balances in the Celsius application.

   3.  The Debtors have also scheduled all account holder claims against each Debtor. That also makes sense, as under the Terms of Use, each account holder agreed to a contract with Celsius Network LLC and each of its Affiliates. *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018*, Ex. A-6, at 272 ("Celsius Network LLC and its Affiliates (collectively: "we," "our," "us," "Celsius," or the "Company") provide the following Terms of Use (the "Terms") that apply to our users . . .") [Docket No. 383]. The Debtors have indicated in both the Global Notes to each of the Schedules and the Bar Date Motion that the Preferred Equity Group disagrees with that position. *See e.g.,* Case No. 22-10967 [Docket No. 5]; Bar Date Motion ¶ 14. The Preferred Equity Group has also made that dispute clear in each statement and motion it has filed with this Court. *See, e.g.*, Preferred Equity Obj. ¶ 1, 5-7.

   4.  As is typical, the Debtors have proposed that an account holder needs to file a proof of claim only if he or she disagrees with the "amount, nature, and priority of the Claim" listed in the schedules of assets and liabilities (the "**Schedules**"). Bar Date Mot., Ex. A ¶ 9(b). If an account holder or creditor disagrees with how the Debtors scheduled their claim, the Proof of Claim Form allows for account holders to file claims by cryptocurrency count. Bar Date Mot., Ex. B. The Debtors have also included a box on the Proof of Claim form that allows account holders to easily assert their claim against all of the Debtors—as the Debtors have scheduled such claims—rather

3

than filing 8 different proof of claims against each Debtor. The Debtors have appropriately requested Court authority to modify the Official Form to accommodate the unique needs of these chapter 11 cases and ease the claims reconciliation process.

5.  The Preferred Equity Group would rather account holders have to file 8 separate claims against each Debtor entity and convert all of their cryptocurrency claims into USD based on relevant cryptocurrency prices on the petition date. These requests are inappropriate and should be denied. The first is a transparent attempt to make individual account holders jump through additional procedural hoops in the hopes that they will be caught off guard and thereby have their rights against each Debtor prejudiced. The second, reducing all cryptocurrency obligations to USD on the Petition Date, would open a Pandora's box. Different account holders may apply different conversion rates for each cryptocurrency leading to a complicated and expensive claims reconciliation process.

6.  Finally, the Preferred Equity Holders have asked that this Court require the Debtors to include in the Bar Date Order the procedure to resolve whether account holders have claims at each Debtor entity. A litigation schedule is not the proper subject of a bar date order. Moreover, it is not clear how the inclusion of a litigation schedule would provide any greater clarity to account holders on how or when they should file a proof of claim. The Preferred Equity Holders have also asked the Court to not approve the Bar Date Notice until it determines whether claims asserted in these cases must be denominated in U.S. dollar amounts as of the Petition Date, as opposed to units of cryptocurrency. Preferred Equity Objection ¶ 4.

7.  These chapter 11 cases should not be held hostage by the Preferred Equity Group's efforts to undo the plain language of the Terms of Use and otherwise divert value from account holders and unsecured creditors. The Preferred Equity Group has made clear that it disputes the

way the Debtors have scheduled account holders claims. The Schedules and Bar Date Motion clearly identify that dispute and that the Debtors may amend their Schedules if the Court determines they are incorrect. If the Debtors do amend the Schedules, they are required to provide notice of a supplemental bar date. Bar Date Mot., Ex. A ¶ 5. To the extent more disclosure is needed, it should be placed in the Bar Date Notice to be mailed to all creditors and published in national newspapers. The Preferred Equity Holders invitation to delay the bar date to litigate the "Denomination Issue" should likewise be denied as it will only lead to further delay and confusion.

8.   These cases must move forward toward an expeditious resolution. As the Court has observed, there are questions about the Debtors' ability to fund these cases beyond January 2023. *See* Oct. 20, 2022 Hr'g Tr. at 71:18-72:16. The already challenging conditions within the Debtors' industry have recently deteriorated significantly. The Debtors must, therefore, move with all due haste toward proposing a plan that can be consummated before the estates risk becoming administratively insolvent. The Debtors are engaged in a sale process that provides that initial bids are due on November 21, 2022 and final bids are due on December 12, 2022. *See* Docket No. 1272. Trials with respect to the Debtors' interest in assets transferred by account holders to the Earn and Custody programs and obligations associated with Withhold Account are scheduled to occur in the first week of December. *See Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups With Respect to the Custody and Withhold Issues*, Case No. 22-10964 (MG), Adv. Pro. No. 22-01142 (MG) ¶¶ 5, 7 [Docket No. 12]. And the Examiner's final report will be filed on December 10, 2022. *See* Docket Nos. 820; 1013. The Debtors should now or will shortly be in a position to propose and prosecute a plan. The Committee understands that the Preferred Equity Group believes that its equity interests should come before approximately $5.5 billion of obligations to account holders that agreed to do

5

business with Celsius and its Affiliates. It is free to file a claim objection or otherwise advocate those views on the timeline that has been established in these chapter 11 cases. But neither the Preferred Equity Group nor the Debtors should be permitted to tie up these cases in more litigation while the estate's resources are exhausted. And if the Debtors show themselves willing to accommodate the Preferred Equity Group in occasioning such delay, the Committee intends to use the tools available to it to pursue a more responsible course.

## Reservation of Rights

9.      The Committee reserves its rights to supplement or amend this Statement, raise additional issues regarding the Bar Date Motion and Bar Date Objection, and present evidence at the hearing.

*[Remainder of page left intentionally blank]*

Dated: November 11, 2022  
New York, New York

Respectfully submitted,

/s/ Aaron Colodny
------

**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  david.turetsky@whitecase.com
  kwofford@whitecase.com
  sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  mandolina@whitecase.com
  gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

7