Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,
Celsius SPV Investors, LP, and Celsius
New SPV Investors, LP*

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**REPLY IN FURTHER SUPPORT OF THE SERIES B PREFERRED
HOLDERS' MOTION PURSUANT TO BANKRUPTCY RULE 1009 FOR ENTRY
OF AN ORDER DIRECTING THE DEBTORS TO AMEND THEIR SCHEDULES**

Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors,

LP, and CDP Investissements Inc. (collectively, the "Series B Preferred Holders"), as beneficial

holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

issued by Celsius Network Limited (together with its affiliated debtors in possession, the "Debtors"), hereby reply to (i) the *Debtors' Objection to Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Dkt. No. 1304] (the "Debtors' Objection") and (ii) *The Official Committee of Unsecured Creditors' Statement and Reservation of Rights with Regards to the Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Dkt. No. 1303] (the "UCC Statement"), and in further support of the *Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Dkt No. 1183] (the "Motion"),[2] state as follows:

**Preliminary Statement**

1. The Debtors do not dispute that, in preparing their Schedules, they failed to comply with the Bankruptcy Rules. Instead, the Debtors assert that the Bankruptcy Rules permit them to modify the Official Form for the Schedules to omit certain information. The Bankruptcy Rule that the Debtors rely on, however, only permits "minor changes not affecting wording or the order of presenting information," such as deleting blank space or adding pages to permit complete responses.[3] These permissible "minor changes" in no way excuse the proposed omission of fundamental information such as the U.S. dollar amount of customer claims.

2. The Bankruptcy Rules and Official Forms call for identifying all claim amounts in U.S. dollars as of the Petition Date. While not disputing that they easily could have provided the U.S. dollar amount of customer claims, the Debtors state that they chose to schedule only

---

[2]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.
[3]  *See* Debtors' Objection ¶ 7.

2

cryptocurrency coin counts for some purported administrative benefit.[4] Instead of any administrative benefit, however, the Debtors' preferred course of action has only resulted in an administrative inefficiency by creating an unnecessary hurdle to the plan confirmation process. To confirm a plan, the Debtors would have to (i) designate impaired and unimpaired classes of claims and (ii) demonstrate that the plan complies with the absolute priority rule – both of which would require comparing the U.S. dollar amount of customer claims as of the Petition Date with the U.S. dollar amount of their recoveries under the plan (regardless of the form such recoveries may take).[5] Even if discussing confirmation issues at this point is premature, there is no justification for creating artificial confirmation hurdles.

3. The Debtors' and the UCC's suggestion that the Debtors have chosen to omit the U.S. dollar amount of customer claims and schedule only cryptocurrency coin counts for customers to avoid confusion is also disingenuous.[6] No such modification of the Official Form and established bankruptcy practices is necessary to avoid customer confusion. Throughout these cases, the Debtors and the UCC have repeatedly referenced the U.S. dollar amounts of customers' cryptocurrency coin counts.[7] Moreover, the application used in the Debtors' business shows the U.S. dollar amount of customers' account balances in bold text, while cryptocurrency coin counts are shown in smaller, faded gray text, and customers have repeatedly referenced the

---

[4] *See id.* ¶ 2.

[5] The Debtors' suggestion that customer recoveries may ***not*** be capped at the U.S. dollar amount of their claims as of the Petition Date is likely to confuse and mislead customers.

[6] Although the UCC did not object to the Motion, the Series B Preferred Holders nonetheless address the UCC Statement to dispute the assertion that customers would be confused by the inclusion of the required U.S. dollar amount of customer claims, in addition to the cryptocurrency coin counts.

[7] *See, e.g.*, *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 23] ¶¶ 7, 9, 49, 59, 64 n.12, 89; UCC Statement ¶ 2 (referring to "account balances worth more than USD$100") (citing Mashinsky Declaration ¶ 9); *The Official Committee of Unsecured Creditors' Statement Regarding These Chapter 11 Cases* [Dkt. No. 390] at 7.

3

U.S. dollar amount of their deposits.[8] In other words, customers will not find it surprising that the cryptocurrency coins held in their accounts with Celsius Network LLC translate to U.S. dollars.

4. The Debtors' disregard for the Bankruptcy Rules would require a party in interest to object to every single claim scheduled in a non-U.S. dollar denomination. Neither the Debtors nor the UCC can argue that mass objections to customer claims will be more efficient and less costly than the Debtors denominating customer claims on their Schedules in the U.S. dollar amounts (in addition to the cryptocurrency coin counts). Indeed, the Motion is not one of principle, as the Debtors suggest; instead, through the Motion, the Series B Preferred Holders seek to ensure that the Schedules function as a foundation for a clear and efficient claims resolution process, which should also be the goal of the Debtors and the UCC. Consistent with the goal of ensuring efficiency in these cases, the Series B Preferred Holders have been engaged in discussions with the Debtors to resolve the issues raised in the Motion; however, as of the date hereof, no agreement has been reached.

5. For the reasons set forth herein and in the Motion, the Debtors' Objection should be overruled and the relief requested in the Motion granted.[9]

## Reply

6. Bankruptcy Rule 1007(b)(1) requires that the Debtors file schedules of assets and liabilities "as prescribed by the appropriate Official Forms."[10] Bankruptcy Rule 9009 demands that Official Forms "be used without alteration."[11] Among other things, Official Form 206

---

[8] *See, e.g.*, letters (including the screenshots of account balances attached thereto) filed by customers at Dkt. Nos. 589 and 741.
[9] The UCC did not, in fact, object to the relief sought in the Motion.
[10] Fed. R. Bankr. P. 1007(b)(1).
[11] Fed. R. Bankr. P. 9009(a).

4

requires that all liabilities of a debtor must be denominated in U.S. dollars.[12] "In completing the schedules it is important to bear in mind their basic purpose, which is to provide a detailed and complete picture of the debtor's finances in a uniform manner that facilitates administration of the case."[13]

7. Bankruptcy Rule 9009 permits "certain minor changes not affecting wording or the order of presenting information," such as "expand[ing] the prescribed areas for responses in order to permit complete responses" and "delet[ing] space not-needed for responses."[14] The Debtors, however, did not make a minor change to Official Form 206. Instead, by scheduling customer claims in cryptocurrency coin counts rather than U.S. dollars, in addition to unjustifiably and unnecessarily deviating from basic bankruptcy requirements, the Debtors have undermined the "basic purpose" of the Schedules – "to provide a detailed and complete picture of the debtor's finances in a uniform manner that facilitates administration of the case."[15] In fact, "[a] debtor is required to be as particular as is reasonable under the circumstances."[16]

8. Nevertheless, the Debtors and the UCC insist that adhering to the requirements of the Bankruptcy Rules and Official Form 206 would result in confusion among the Debtors' customers.[17] That is not the case. In fact, customers routinely view their cryptocurrency holdings on the Debtors' mobile application or website in U.S. dollars and reference such

---

[12] See Official Form 206, Part 2, Line 4. The Debtors' assertion that the Motion is anchored to section 502(b) of the Bankruptcy Code (Debtors' Objection ¶ 11) is incorrect: the Motion is grounded on the Bankruptcy Rules discussed in the Motion and herein.

[13] 4 COLLIER ON BANKRUPTCY ¶ 521.06[1] (2022).

[14] Fed. R. Bankr. P. 9009(a); see also Debtors' Objection ¶ 7; UCC Statement ¶ 4.

[15] 4 COLLIER ON BANKRUPTCY ¶ 521.06[1] (2022).

[16] Id.

[17] Debtors' Objection ¶ 1 (asserting that the Debtors failed to schedule customer claims in U.S. dollars "to avoid confusion for the Account Holders by presenting information regarding their claims in the format they would most easily be able to review and verify").

5

holdings in U.S. dollars.[18] In addition, as shown in the images below, the advertisements for the application clearly illustrate that customers' account balances are displayed U.S. dollars.[19]



9.  It is the Debtors' Schedules that are bound to cause significant confusion: by scheduling customer claims in denominations other than U.S. dollars, the Debtors create an impression that customer claims will be satisfied through specific performance (*i.e.*, return of the applicable cryptocurrency coins) rather than payments of consideration on account of such claims based on their U.S. dollar amounts as of the Petition Date, even if such payments are made in cryptocurrency. Indeed, the Debtors make the unsupported assertion that "[i]t makes perfect sense to schedule the customers' claims in cryptocurrency as this is exactly what the

---

[18] *Supra* n.8.
[19] Screenshots are images shown when considering downloading the application used in the Debtors' business in the app store.

Debtors owe the customers under the Debtors' Terms of Use."[20] Whatever the customers may or may not be entitled to under the Terms of Use outside of bankruptcy is irrelevant now that the Debtors are operating in chapter 11. No adjudication has been made by the Court with respect to this issue and conveying as much to customers is entirely misleading and sure to create confusion.

10. The Motion takes no position regarding the *form* of distribution customers will ultimately receive under a plan. The Motion simply asks the Court to direct the Debtors to comply with the Bankruptcy Rules and *add* the U.S. dollar amount of each customer claim in Schedules E/F to the cryptocurrency coin counts. This way, customers will be able to determine whether they need to file proofs of claim to the extent they disagree with the Debtors' conversion rates. Other parties in interest likewise will be able to get an accurate picture of the Debtors' view of their liabilities for purposes of efficiently participating in these cases.

11. Moreover, the Debtors are capable of denominating claims in U.S. dollars as of the Petition Date. As discussed above, the application used in the Debtors' business readily informs customers of the U.S. dollar amounts of their deposits. In addition, the Debtors listed cryptocurrency coin counts valued in U.S. dollars throughout their Statements of Financial Affairs.[21] For example, the Debtors list transfers to customers within the 90 days prior to the Petition Date in U.S. dollars based on the customers' respective coin counts as of the transaction date, as is required by Official Form 207.[22]

---

[20] Debtors' Objection ¶ 13 (at 8).
[21] *See, e.g.*, *Celsius Network LLC Statement of Financial Affairs* [Dkt. No. 973].
[22] *See id.*; *see also* Official Form 207, Part 2, Question 3 (pre-baking the dollar sign into Official Form 207 for listing payments or transfers to creditors within 90 days prior to the petition date).

12.     Finally, both the Debtors and the UCC raise the issue of the potential cost of the relief requested in the Motion.[23]  This argument is nonsensical.  The Debtors cannot ignore the Bankruptcy Rules and alter at will the Official Forms without Court approval and then complain about the cost of fixing that error.

**Conclusion**

13.     For these reasons and those set forth in the Motion, the Series B Preferred Holders respectfully request that the Court overrule the Debtors' Objection, grant the relief requested in the Motion, and grant the Series B Preferred Holders any other relief that is just.

Dated: November 13, 2022
       New York, New York

/s/ *Dennis F. Dunne*
Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

- and -

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP*

/s/ *Joshua M. Mester*
Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel:  (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

---

[23]    Debtors' Objection ¶ 13 (at 8); UCC Statement ¶ 6.