## __Exhibit B__

The Stipulation

Mitchell P. Hurley
Dean L. Chapman Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1001
mhurley@akingump.com
dchapman@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com

*Special Litigation Counsel for Debtors[1] and*
*Plaintiffs Celsius Network Limited and Celsius Network LLC*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CELSIUS NETWORK LIMITED and CELSIUS NETWORK LLC, | |
| Plaintiffs, | Adversary Proceeding No. 22-01140 (MG) |
| v. | |
| PRIME TRUST, LLC, | |
| Defendant. | |

**STIPULATION TO SETTLE AND DISCONTINUE ADVERSARY PROCEEDING**

---

[1] The Debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

WHEREAS, on August 23, 2022, Celsius Network Limited and Celsius Network LLC, Plaintiffs in the above-captioned adversary proceeding (the "Adversary Proceeding") and other Debtors in the above-captioned bankruptcy case (together, "Plaintiffs" or "Celsius") filed an adversary complaint (the "Complaint") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") against Defendant Prime Trust, LLC ("Defendant" or "Prime Trust," and together with Plaintiffs, the "Parties") asserting claims for turnover pursuant to Section 542 of the Bankruptcy Code and breach of contract;

WHEREAS, the Parties wish to fully settle and discontinue the Adversary Proceeding in accordance with the terms set forth in this stipulation (the "Stipulation") which Stipulation is effective as of the date on which it has been signed by Special Litigation Counsel for Celsius and counsel for Prime Trust (the "Execution Date");

WHEREAS, Prime Trust presently holds crypto assets transferred to it by Celsius users (such transferring customers, the "Users") in digital wallets (such crypto assets, the "Subject Property");

WHEREAS, Prime Trust maintains a ledger of the Subject Property that includes: (a) an omnibus account ending in 4491 with commingled User holdings titled "Celsius Network Limited Custody" (the "4491 Account"); and (b) separate numbered accounts titled with the names of individual Users (the "User Accounts" collectively with the 4491 Accounts, the "Accounts");

WHEREAS, Celsius advises that the Subject Property consists of both (i) crypto assets for which Celsius has received consent from certain Users to the Updated Terms of Use[2] (the "Authorized Assets") and (ii) crypto assets for which Celsius has not received acknowledgement of the Updated Terms of Use from the underlying Users (the "Remaining Assets");

---

[2] All terms not otherwise defined herein shall have the meaning ascribed to them in the Complaint.

WHEREAS, as of the Execution Date, the Parties agree that the Authorized Assets and Remaining Assets in the 4491 Account total 419.21 BTC, 197,143.07 CEL tokens, 3,802.37 ETH and 2,264,539.67 USDC, and are in the 4491 Account.

WHEREAS, Celsius Network Limited and Prime Trust are parties to the November 13, 2019 Prime Asset Custody Account Agreement (the "Celsius PT Custody Account Agreement," copy attached hereto as Ex. A) in which the Parties agree that Celsius is the "Account Holder" of the 4491 Account within the meaning of the Celsius PT Custody Account Agreement;

WHEREAS, Prime Trust agrees to transfer the Subject Property in the 4491 Account, to be held until further order of the Bankruptcy Court as set forth herein, pursuant to Section 4(f) and Section 6(d) of the Celsius PT Custody Account Agreement;

WHEREAS, the Parties agree that Celsius is authorized to request that Prime Trust transfer: (i) the Authorized Assets pursuant to Sections 1 and 8 of the Updated Terms of Use (copy attached hereto as Ex. B); and (ii) the Remaining Assets pursuant to Section 2(i)(b) of the PT Terms[3] included in the terms of use published on Celsius' website and platform beginning on or around June 15, 2020, (the "Initial Terms of Use") (copy attached hereto as Ex. C);

WHEREAS, Prime Trust has identified additional Subject Property that is not located in the 4491 Account (the "Additional User Assets");

WHEREAS, as of the Execution Date, Prime Trust's records reflect that the Additional User Assets comprise approximately 7.36 BTC, 1,145.48 CEL tokens, 248.53 ETH, and 363,631.22 USDC;

WHEREAS, Prime Trust agrees to transfer the Additional User Assets held by Prime Trust pursuant to the User PT Custody Account Agreement, to be held until further order of the

---

[3] Celsius' Initial Terms of Use included detailed terms providing that Prime Trust would hold assets for Celsius users residing in New York and Washington (the "PT Terms").

Bankruptcy Court as set forth herein, pursuant to Section 4(e) of the User PT Custody Account Agreements (copy attached hereto as Ex. D) and Section 2(i)(b) of the PT Terms included in the Initial Terms of Use;

WHEREAS, by consenting to the Initial Terms of Use, the Users with the Additional User Assets permitted Celsius to direct a transfer from Prime Trust to Celsius;

WHEREAS, Prime Trust represents that, other than transfers to Celsius in accordance with Celsius' instructions, Prime Trust has not previously transferred, deployed, disbursed, or otherwise disposed of any of the Subject Property at any time up to and including the Execution Date,

NOW, THEREFORE, in consideration of the promises and covenants continued herein, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, effective as of the Execution Date, the Parties stipulate and agree as follows:

1.     Prime Trust will not transfer, deploy, disburse, or otherwise dispose of any of the Subject Property on or after the Execution Date except in accordance with this Stipulation and upon and in accordance with a further order of the Bankruptcy Court.

2.     Within ten (10) business days of the Execution Date, or October 31, 2022, whichever is later, Celsius shall file with the Bankruptcy Court a motion pursuant to Fed. R. Bankr. P. 9019 (the "9019 Motion") to approve the terms of settlement set forth in this Stipulation.

3.     Celsius will provide notice of and an opportunity to object to the 9019 Motion, including by mailing a copy of the 9019 Motion to the last known mailing address, if any, of all Users and all other parties who have requested notice or are otherwise entitled to notice under applicable Bankruptcy Rules and the Amended Case Management Order [Docket No. 1181]. Prime Trust will promptly comply with any reasonable request by Celsius for User address

information in the possession, custody or control of Prime Trust to enable Celsius to carry out the notice for the 9019 Motion set forth in the previous sentence to the fullest possible extent.

4.      Within five (5) business days of entry of an order by the Bankruptcy Court granting the 9019 Motion (the "Initial Transfer Deadline"), Prime Trust will transfer all of the Subject Property, and all property transferred to Prime Trust by Users during the period from the Execution Date to the Initial Transfer Deadline (if any), to wallet addresses to be identified by Celsius for approval by the Court (the "Designated Celsius Wallets"), which Celsius will promptly provide written confirmation of receipt (the "Transfer"), at which time:

(a)      the releases provided for in Sections 12 and 13 herein shall be effective;

(b)      each of the User PT Custody Account Agreements related to the Subject Property shall be terminated in full; and

(c)      Celsius will provide notice to all Users to not deposit any crypto assets to Prime Trust in the same manner notice was provided in paragraph 3.

5.      For the avoidance of doubt, nothing herein is intended to limit or otherwise prejudice, nor shall anything herein be deemed to limit or otherwise prejudice, the rights of any Party, any creditor, any User, or any other party in interest to assert before the Bankruptcy Court any interest (including an ownership or other interest) or claim with respect to the Subject Property or any property transferred to the Designated Celsius Wallets.

6.      Within five (5) business days of the Transfer, Celsius shall file a voluntary dismissal, with prejudice, of all claims asserted in the Adversary Proceeding.  At such time, the Celsius PT Custody Account Agreement and Services Agreement shall be deemed terminated in full.  For the avoidance of doubt, the termination of the Celsius PT Custody Account Agreement and Services Agreement does not have any effect on and is without prejudice to the User's rights

under any agreements in which a User is a party with Celsius, and such agreements shall remain in full force and effect in accordance with applicable law.

7.      Starting on March 31, 2023 until the effective date of a plan (the "Effective Date"), Prime Trust will provide Celsius with quarterly reporting of any property that may be deposited with Prime Trust by Users after the Initial Transfer Deadline (the "Future Deposits").  At the request of Celsius, Prime Trust shall transfer in a reasonable period of time any Future Deposits to the Designated Celsius Wallets, for which Celsius shall timely pay the reasonable and necessary network fees associated with such Future Deposits transfers.  Tracking and reporting relating to any property that may be deposited with Prime Trust by Users after the Effective Date shall be determined by further agreement of the Parties or order of the Bankruptcy Court.

8.      Prime Trust represents that to the best of its knowledge the Subject Property identified herein constitutes all property in Prime Trust's possession, custody or control that was transferred to Prime Trust at any time up until the Initial Transfer Deadline by any Celsius Users.

9.      Celsius represents that (i) Celsius has complete and exclusive control over the Designated Celsius Wallets and (ii) upon receipt of the Subject Property in the Designated Celsius Wallets, Celsius will not use, access, transfer, pledge, re-hypothecate, distribute or otherwise interfere with the Subject Property except pursuant to further order of the Bankruptcy Court.

10.      Entry of an order granting the 9019 Motion shall be deemed a binding determination that the Transfer is consistent with all agreements, regulations and laws to which each of the Parties may be subject.

11.      The Transfer shall be without prejudice to the right of any party, including any User, to assert any interest (including an ownership or other interest) in any of the Subject Property; provided that, the Parties reserve all their rights in that regard.  The Transfer of the Subject Property

by Prime Trust to the Designated Celsius Wallets shall in no way constitute an admission or acknowledgment by any Party to the Stipulation that the Subject Property is, or is not, or should, or should not, be deemed to be, property of the estate, as set forth in section 541 of the Bankruptcy Code.

12.     Effective upon the completion of the Transfer of all Subject Property, Celsius, on the one hand, and Prime Trust, on the other, irrevocably and unconditionally forever release, acquit and discharge one another of and from any and all past or present claims, causes of action, liabilities, obligations, demands, suits, objections, counterclaims, defenses, debts, damages, sums of money due or owed, expenses, damages, attorneys' fees, accounts, covenants, contracts, agreements, arrangements, promises, indemnities, warranties, trespasses, torts, injuries or losses, of whatever kind or character, whether known or unknown, anticipated or unanticipated, foreseen or unforeseen, suspected or unsuspected, absolute, fixed, conditional or contingent, matured or unmatured, liquidated or unliquidated, disputed or undisputed, assertable directly, indirectly, or derivatively, due or to become due, whether arising from contract, equity, tort or otherwise (including attorneys' fees, interest, costs, or disbursements), and whether arising out of common law or pursuant to statute or whether asserted or could have been asserted at any time in the Adversary Proceeding ("Claims"), that Celsius, on the one hand, and Prime Trust, on the other, have, ever had, or may have against one another or any of either Parties' respective predecessors, successors, assigns, subsidiaries, owners, affiliates, managed accounts, funds or funds under common management; and each of the foregoing parties' respective current and former officers, directors, managers, managing members, employees, members, principals, shareholders, agents, advisory board members, management companies, fund advisors, partners, attorneys, financial advisors or other professionals or representatives, together with their successors and assigns, in

each case solely in their capacity as such ("Affiliates"), based on, relating to or in connection with the Subject Property solely to the extent that such Subject Property has been transferred to the Designated Celsius Wallets in accordance with this Stipulation; provided, however, that Celsius' release of Prime Trust shall be limited to the extent that any of Prime Trust's representations set forth in this Stipulation, including the representation in paragraph 8, is determined by the Bankruptcy Court to be inaccurate, and/or to the extent that Prime Trust fails to comply with its ongoing obligations in this Stipulation, including the reporting obligation in paragraph 7; provided, further, that Prime Trust reserves the right to file a claim or seek enforcement of the order approving the 9019 Motion (the "9019 Order") in connection with any third party claims against Prime Trust arising out of the Transfer.

13.    Effective upon the completion of the Transfer of all Subject Property in accordance with the 9019 Order, neither Prime Trust nor its Affiliates shall have or incur any liability to Users for and is hereby exculpated from any Claim arising from any act or omission in connection with or arising out of Prime Trust's or its Affiliate's compliance with this Stipulation, including effectuating the Transfer of the Subject Property in accordance with the 9019 Order; provided that this paragraph shall not apply to Claims arising from (a) an act or omission that is judicially determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence or (b) the failure to return any of portion of the Subject Property in accordance with the 9019 Order.

14.    All rights of the official committee of unsecured creditors and all other parties in interest are preserved with respect to this Stipulation, the 9019 Motion, and the 9019 Order and the matters contemplated hereby and thereby.

15.     The Parties agree that, until further order of the Bankruptcy Court, the Adversary Proceeding is stayed, and all deadlines associated with the Adversary Proceeding and any party's rights, remedies, claims or defenses are tolled, including, without limitation, Prime Trust's time to respond to the Complaint.  The Parties will inform the Bankruptcy Court of this stay in advance of the pre-trial conference scheduled for October 20, 2022.

16.     In the event that the Bankruptcy Court denies any of the relief requested in the 9019 Motion, the Parties may resume the Adversary Proceeding, without prejudice to the rights, remedies, claims or defenses of any Party.

17.     The Parties agree that the Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Stipulation.

Dated: October 19, 2022
New York, New York

*/s/ Mitchell P. Hurley*
Mitchell P. Hurley
Dean L. Chapman Jr.
John P. Kane
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
mhurley@akingump.com
dchapman@akingump.com
jkane@akingump.com

*Special Litigation Counsel*
*for Debtors and Plaintiffs Celsius Network Limited*
*and Celsius Network LLC*

*/s/ Howard S. Steel*
Howard S. Steel
Alexander J. Nicas
James F. Lathrop

**Goodwin Procter LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
HSteel@goodwinlaw.com
Anicas@goodwinlaw.com
Jlathrop@goodwinlaw.com

- and -

David R. Callaway (*pro hac vice* pending)
**Goodwin Procter LLP**
601 Marshall Street
Redwood City, California 94063
Telephone: (650) 752-3100
Dcallaway@goodwinlaw.com

*Counsel to Prime Trust, LLC*

# Exhibit A

**PrimeTrust**

## Prime Asset Custody Account Agreement

Celsius Network LTD ("Account Holder", "Customer", "you", "your") hereby requests and directs that Prime Trust, LLC ("Prime Trust", "Custodian", "we", "our", "us"), a Nevada chartered trust company, establish a **Prime Asset Custody Account** ("Account") for and in the name of Account Holder, and to hold as custodian all assets deposited to, or collected with respect to such Account, upon the following terms and conditions:

### 1. APPOINTMENT OF CUSTODIAN:

Account Holder hereby appoints Prime Trust to be custodian of and to hold or process as directed all securities, cash and other assets of Account Holder (hereinafter referred to as "Custodial Property") that are delivered to and accepted by Custodian by Account Holder or Account Holder's Agent(s) (as defined below) to the Account in accordance with the terms of this Agreement.

### 2. SELF-DIRECTED INVESTMENTS:

a.  This Account is a self-directed Account by Account Holder and/or Account Holder's Agents. Prime Trust will act solely as custodian of the Custodial Property and will not exercise any investment or tax planning discretion regarding your Account, as this is solely your responsibility and/or the responsibility of advisors, brokers and others you designate and appoint as your agent through settings and tools we provide you with for your Account ("Agents"), if any. Prime Trust undertakes to perform only such duties as are expressly set forth herein, all of which are ministerial in nature.

b.  As a self-directed Account, you acknowledge and agree that:

   i.   The value of your Account will be solely dependent upon the performance of any asset(s) chosen by you and/or your Agents.

   ii.  Prime Trust shall have no duty or responsibility to review or perform due diligence on any investments or other Custodial Property and will make absolutely no recommendation of investments, nor to supervise any such investments. You will perform your own due diligence on all investments and take sole responsibility for all decisions made for your Account.

   iii. Prime Trust does not provide any valuation or appraisals of Custodial Property, nor does it hire or seek valuations or appraisals on any Custodial Property, provided, however, it may, at its option and with no obligation or liability, to the extent available for any particular asset, include recent price quotes or value estimates from various third-party sources, including but not limited to SEC-registered exchanges and alternative trading systems, digital asset exchanges, and real estate websites on your statement for any such Custodial Property. Prime Trust will not be expected or obligated to attempt to verify the validity, accuracy or reliability of any such third-party valuation, valuation estimates or prices and you agree that Prime Trust shall in no way be held liable for any such valuation estimates or price quotations. Prime Trust shall simply act in a passive, pass-through capacity in providing such information (if any) on your Account statements and that such valuation estimates or price quotations are neither verified, substantiated nor to be relied upon in any way, for any purpose, including, without limitation, tax reporting purposes. You are advised to engage an independent advisor for a professional valuation opinion on Custodial Property.

c.  Account Holder will not direct or permit its Agents to direct the purchase, sale or transfer of any Custodial Property which is not permissible under the laws of Account Holder's place of residence or illegal under US federal, state or local law. Account Holder hereby warrants that neither you nor your Agents will enter into a transaction or series of transactions, or cause a transaction to be entered into, which is prohibited under Section 4975 of the Internal Revenue Code. Pursuant to the directions of the Account Holder or Agent(s), Prime Trust shall process the investment and reinvestment of Custodial Property as directed by Account Holder or its Agents only so long as, in the sole judgment of Prime Trust, such requested investments will not impose an unreasonable administrative burden on Prime Trust (which such determination by Prime Trust shall not to be construed in any respect as a judgment concerning the prudence or advisability of such

                    © Copyright 2019 by Prime Trust, All Rights Reserved

investment). Custodian may rely upon any notice, instruction, request or other instrument believed by it to have been delivered from the Account Holder or its Agents, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein.

d.   Buy and sell orders may, at Custodians discretion, be accepted verbally, including via telephone, or electronically, including email and internet-enabled devices and systems, provided, however, that Custodian may, but is not required to, require Account Holder or its Agents to promptly provide email, text or other confirmation to verify such instructions and any such instructions will not be deemed as received until verified in accordance with the Custodians policies and procedures. Account Holder acknowledges that any request to waive or change current process for funds processing is done so at Account Holders risk. Prime Trust may decline to accept verbal asset transfer or trade instructions in its sole discretion and require written instructions, or instructions triggered from Account Holder or its Agents using tools while logged onto your account (either directly at www.primetrust.com or on any website or application that integrates into Prime Trust systems via API's ("Application Programming Interfaces"), which may or may not bear the Prime Trust brand. Account Holder bears complete and absolute responsibility for all buy, sell or transfer instructions for this Account and will immediately notify Prime Trust of any unauthorized transactions.

e.   Account Holder acknowledges and agrees that the custody of digital assets is generally subject to a high degree of risk, including without limitation, the risk of loss due to the blockchain or smart contract defects as well as forks and other events outside of the Custodian's control. Such Custodial Property is not insured by the Federal Deposit Insurance Corporation or otherwise insured so you are advised to obtain separate insurance policy for such Custodial Property. Account Holder agrees that transfer requests, including sale and purchase orders, for digital assets may be delayed due to security protocols, time-zone differences, communication technology delays or fails, and/or enhanced internal compliance reviews. Accordingly, Prime Trust shall not be liable for any losses or damages, including without limitation direct, indirect, consequential, special, exemplary or otherwise, resulting from delays in processing such transactions.

f.   All instructions for the purchase and sale of securities and/or digital assets shall be executed through one or more broker-dealers or exchanges selected by either you or your Agents, or by Prime Trust, as an accommodation (and not in any capacity as a broker-dealer) and Prime Trust is hereby authorized to debit your account for any fees associated with such transaction(s) and remit those to the executing party.

**3. SCHEDULE OF FEES:**

The Custodian shall receive reasonable compensation in accordance with its usual Schedule of Fees then in effect at the time of service. The fees and charges initially connected with this Account include:

- Account Fees: As detailed on Prime Trust's current fee schedule, which may change from time to time and is published on www.primetrust.com. Changes to the fee schedule shall not affect any charges for prior periods and will only be effective as of the date the changes were published.
- Statement Fee: $0.00 – there are no fees for electronically delivered and available statements
- Third-Party Fees – in the event that we are charged any fees by a third party in performing services on your behalf (e.g. transfer agent fees, legal fees, accounting fees, tax preparation fees, notary fees, exchange fees, brokerage fees, bank fees, blockchain settlement fees, etc.) then you agree to reimburse us for such reasonable charges at cost plus 25% (excluding broker-dealer commissions), and that no prior approval is required from you in incurring such expense.

Account Holder agrees to pay all fees and expenses associated with the Account. Prime Trust is hereby authorized to electronically debit the Account for payment of fees and expenses charge the credit or debit card on file, liquidate any of the Custodial Property, in each case, in Prime Trust's sole discretion. Unpaid fees are subject to interest at a rate of 1.50% per month on the outstanding balance and may be applied as a first lien on any Custodial Property. Prime Trust reserves the right to make changes to

© Copyright 2019 by Prime Trust, All Rights Reserved

**PrimeTrust**

its fees for custodial services in its sole and absolute discretion. Fees may be modified upon 30 days' notice to you and shall become effective on the 31st day after emailing the notice of such revision to your email address on record in your Account.

### 4. ASSETS AND CUSTODY:

a. Custodial Property which Prime Trust will generally agree to accept and hold on Account Holder's behalf includes: cash (foreign currencies at the sole discretion of Prime Trust), title to real estate, certain digital assets, private equity and debt securities issued pursuant to laws and regulations of the United States, as well as equity and debt securities which are listed on any US exchange or alternative trading system (e.g. OTC, NASDAQ, NYSE, AMEX, etc.). Securities which have been issued pursuant to regulations of countries other than the US or which are listed on non-US trading systems may be acceptable for custody on a case by case basis. Physical assets such as art, coins, and rare books are generally not accepted for custody at Prime Trust. Acceptance and custody of digital assets such as virtual currencies are subject to the sole discretion of Prime Trust.

b. U.S. Dollars shall be held in a manner that ensures that such Custodial Property is eligible for deposit insurance coverage from the Federal Deposit Insurance Corporation ("FDIC"). For more information on FDIC insurance coverage, please visit www.fdic.gov.

c. During the term of this Agreement, Custodian is responsible for safekeeping only Custodial Property which is delivered into its possession and control by the Account Holder or its Agents. Custodian may for convenience take and hold title to Custodial Property or any part thereof in its own name or in the name of its nominee (commonly known as "street name"), with Account Holder ownership of Custodial Property segregated on its books and records.

d. Custodian shall keep accurate records of segregation of customer accounts to show all receipts, disbursements, and other transactions involving the Account. All such records shall be held indefinitely by Custodian.

e. Custodian shall collect and hold all funds when Custodial Property may mature, be redeemed or sold. Custodian shall hold the proceeds of such transaction(s) until receipt of written or electronic (via our systems) disbursement instructions from Account Holder.

f. Custodian shall process any purchase, sale, exchange, investment, disbursement or reinvestment of Custodial Property under this Agreement that Account Holder or its Agents may at any time direct, provided that sufficient unencumbered, cleared assets are available for such transaction.

g. Funds received in any currency other than USD may, at your direction, be converted to USD at exchange rates set by our correspondent bank(s) or foreign exchange services provider, and with applicable fees for such special handling (not to exceed 2.00% plus wire fees, if any).

h. Without limiting the generality of the foregoing, Prime Trust is authorized to collect into custody all property delivered to Custodian at the time of execution of this Agreement, as well as all property which is hereafter purchased for your Account or which may hereafter to be delivered to Custodian for your Account pursuant to this Agreement, together with the income, including but not limited to interest, dividends, proceeds of sale and all other monies due and collectable attributable to the investment of the Custodial Property.

i. Custodian is authorized, in its sole discretion, to comply with orders issued or entered by any court with respect to the Custodial Property held hereunder, without determination by Custodian of such court's jurisdiction in the matter. If any portion of the Custodial Property held hereunder is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, Custodian is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action, and if Custodian complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

j. Custodian does not warrant or guarantee that any buy or sell order by Account Holder will be executed at the best posted price or timely executed. Account Holder acknowledges and agrees that (i) Custodian does not have access to every market or exchange which a particular product or

© Copyright 2019 by Prime Trust, All Rights Reserved

financial instrument may be traded and Custodian makes no representation regarding the best price execution of any instructions, (ii) other orders may trade ahead of Account Holder's order and exhaust available volume at a posted price, (iii) exchanges, market makers or other types of sellers or purchasers may fail to honor posted or otherwise agreed-upon prices, (iv) exchanges may re-route customer orders out of automated execution systems for manual handling (in which case, execution may be substantially delayed), (iv) system delays by exchanges or third-parties executing instructions may prevent Account Holders order from being executed, may cause a delay in execution or not to be executed at the best posted price or at all, and, (v) Custodian may not promptly or in a timely manner execute Customers order(s) due to internal delays, and Custodian makes no representation that its custody services are in any way suitable for active trading or any activity requiring prompt or exact execution. The Account is not a brokerage account. Transactions may be subject to additional fees and charges by both Custodian and any third-party service providers or exchanges.

## 5. ACCOUNT ACCESS AND COMMUNICATIONS:

a. Custodian shall provide you and your Agent(s) with access to your Account via our website at www.primetrust.com, as well as via API's that third-parties can write into (e.g. exchanges, broker-dealers, funding portals, trading platforms, investment advisors, registered transfer agents, banks, consumer and industrial software application providers, etc.).

b. Your Agent(s) shall be provided with access to the Account as chosen by you using the tools and settings provided to you for your Account, which may include Account information such as current and historic statements, transaction history, current asset positions, and account types and beneficiaries. It may, depending upon the settings and permissions you choose for your particular Agents, include the ability to instruct Prime Trust to take action with respect to the Custodial Property and Account, including without limitation to invest, sell, receive, deliver or transfer Custodial Property. Any actions undertaken by any of your Agents are deemed to be those of the Account Holder directly, and you agree to maintain the security of your login credentials and passwords, as well as Agent access lists and associated permissions, so only your authorized persons have access to your Account. Prime Trust shall also be entitled to rely and act upon any instructions, notices, confirmations or orders received from your Agent(s) as if such communication was received directly from the Account Holder without any required further review or approval. Account Holder is solely responsible for monitoring and supervising the actions of your Agents with respect to the Account and Custodial Property.

c. Statements of assets, along with a ledger of receipts and disbursements of Custodial Property shall be available online at www.primetrust.com, in your Account, as well as via the websites and/or applications of third-party API integrators that you select and use.

d. Custodian shall be under no obligation to forward any proxies, financial statements or other literature received by it in connection with or relating to Custodial Property held under this agreement. Custodian shall be under no obligation to take any action with regard to proxies, stock dividends, warrants, rights to subscribe, plans of reorganization or recapitalization, or plans for exchange of securities.

e. Account Holder agrees that Custodian may contact you for any reason. No such contact will be deemed unsolicited. Custodian may contact Account Holder at any address, telephone number (including cellular numbers) and email addresses as Account Holder may provide from time to time. Custodian may use any means of communication, including but not limited to, postal mail, email, telephone, or other technology to reach Account Holder.

f. **ELECTRONIC STATEMENTS ELECTION:**
Account Holder agrees that Prime Trust will make statements available in electronic form only. Account Holder further agrees that you can and will log onto its Account at www.primetrust.com or on the websites or applications of its selected third-party API integrators at your discretion to view current or historic statements, as well as transaction history, assets and cash balances. Account Holder understands and agrees that under no circumstances may you request to have statements printed and mailed to you. If Account Holder desires printed statements, then you

© Copyright 2019 by Prime Trust, All Rights Reserved

DocuSign Envelope ID: 0369AE5E-Fd4594-4633-A09F-2E72PDE1082D

**PrimeTrust**

agree to log onto your Account at www.primetrust.com (or on the websites or applications of your selected third-party API integrators) and print them yourself.

### 6. TERM AND TERMINATION, MODIFICATION:

a.  This Agreement is effective as of the date set forth below and shall continue in force until terminated as provided herein.

b.  This Agreement may be terminated by either party at any time upon 30 days written notice to the other party (with email being an agreed upon method of such notice).

c.  This Agreement may be amended or modified only by the Custodian, or with the written agreement from the Custodian. Such amendments or modifications shall be effective on the 30th day after the Account Holder receives notice of such revision electronically via the email address shown on the records of Prime Trust.

d.  If this Agreement is terminated by either party then Custodian shall deliver the Custodial Property to Account Holder as soon as practicable or, at Account Holder's request to a successor custodian. Account Holder acknowledges that Custodial Property held in Custodian's name or nominee may require a reasonable amount of time to be transferred. Upon delivery of Custodial Property, Custodian's responsibility under this Agreement ceases.

e.  Notwithstanding anything to the contrary herein, this agreement shall terminate immediately upon the occurrence of any of the following events:

i.  Upon death of the Account Holder, the Custodian shall continue to hold Custodial Property until such time the Custodian receives instructions from Account Holder's executor, trustee or administrator pursuant to the probate process, as applicable, and has received advice of its legal counsel to transfer such assets (which costs shall be borne by the Account Holder). In the event that no beneficiaries claim this Account then the assets may be preserved in the Account for so long as possible, until a beneficiary makes itself known or as may be subject to "unclaimed property" regulations as promulgated by state and federal regulators (at which time assets on Account may be transferred or liquidated and proceeds forwarded to such authorities as required by law or regulation).

ii.  Filing of a petition in bankruptcy (by the Account Holders or by a creditor of the Account Holders). If this Agreement terminates due to the filing of a petition in bankruptcy, termination or dissolution of Account Holder, Custodian shall deliver the Custodial Property to the Court appointed representative for Account Holder. If no representative has been appointed by the Court, Custodian may deliver the Custodial Property to the person it deems to be an agent of the Account Holder and such delivery will release Custodian from any further responsibility for said Custodial Property.

iii.  The legal incompetency of Account Holder, unless there is in existence a valid durable power of attorney or trust agreement authorizing another to succeed or act for Account Holder with respect to this agreement.

iv.  Prime Trust becomes aware of or suspects that the Account Holder or any of its Agents are engaged in any criminal activity, material violation of the law or material breach of the terms of this Agreement.

### 7. TERMS OF USE, PRIVACY POLICY:

Except as set forth in this Agreement, Account Holder agrees to be bound by the Prime Trust's most current, then in effect Terms of Use and Privacy Policy as well as other policies, procedures and disclosure posted on your Account and on our website at www.primetrust.com. You represent that you have reviewed such policies and in using our services hereby agree to be bound by them. In the event of any conflict between any terms or provisions of the website Terms of Use or Privacy Policy and the terms and provisions of this Agreement, the applicable terms and provisions of this Agreement shall control.

### 8. DISCLAIMER:

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, PRIME TRUST MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHETHER EXPRESS, IMPLIED (EITHER IN

© Copyright 2019 by Prime Trust, All Rights Reserved

FACT OR BY OPERATION OF LAW). PRIME TRUST EXPRESSLY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUALITY, ACCURACY, TITLE, AND NON-INFRINGEMENT. PRIME TRUST DOES NOT WARRANT AGAINST INTERFERENCE WITH THE USE OF THE SERVICES OR AGAINST INFRINGEMENT. PRIME TRUST DOES NOT WARRANT THAT THE SERVICES OR SOFTWARE ARE ERROR-FREE OR THAT OPERATION OR DATA WILL BE SECURE OR UNINTERRUPTED. PRIME TRUST EXPRESSLY DISCLAIMS ANY AND ALL LIABILITY ARISING OUT OF THE FLOW OF DATA AND DELAYS ON THE INTERNET, INCLUDING BUT NOT LIMITED TO FAILURE TO SEND OR RECEIVE ANY ELECTRONIC COMMUNICATIONS (e.g. EMAIL). ACCOUNT HOLDER DOES NOT HAVE THE RIGHT TO MAKE OR PASS ON ANY REPRESENTATION OR WARRANTY ON BEHALF OF PRIME TRUST TO ANY THIRD PARTY. ACCOUNT HOLDER'S ACCESS TO AND USE OF THE SERVICES ARE AT ACCOUNT HOLDER'S OWN RISK. ACCOUNT HOLDER UNDERSTANDS AND AGREES THAT THE SERVICES ARE PROVIDED TO IT ON AN "AS IS" AND "AS AVAILABLE" BASIS. PRIME TRUST EXPRESSLY DISCLAIMS LIABILITY TO ACCOUNT HOLDER FOR ANY DAMAGES RESULTING FROM ACCOUNT HOLDER'S RELIANCE ON OR USE OF THE SERVICES.

### 9. LIMITATION OF LIABILITY; INDEMNIFICATION:

1. Disclaimer of Liability and Consequential Damages.
   CUSTODIAN SHALL NOT BE LIABLE FOR ANY ACTION TAKEN OR OMITTED BY IT IN GOOD FAITH UNLESS AS A RESULT OF ITS GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, IN EACH CASE AS DETERMINED BY A COURT OF COMPETENT JURISDICTION, AND ITS SOLE RESPONSIBILITY SHALL BE FOR THE HOLDING AND DISBURSEMENT OF THE CUSTODIAL PROPERTY IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, SHALL HAVE NO IMPLIED DUTIES OR OBLIGATIONS AND SHALL NOT BE CHARGED WITH KNOWLEDGE OR NOTICE OF ANY FACT OR CIRCUMSTANCE NOT SPECIFICALLY SET FORTH HEREIN, ACCOUNT HOLDER HEREBY ACKNOWLEDGES AND AGREES, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, PRIME TRUST WILL NOT, UNDER ANY CIRCUMSTANCES, BE LIABLE TO ACCOUNT HOLDER FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL, OR EXEMPLARY DAMAGES ARISING OUT OF OR RELATED TO ANY INVESTMENT OR TRANSACTION OCCURRING UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO, LOST PROFITS OR LOSS OF BUSINESS, EVEN IF PRIME TRUST HAS BEEN ADVISED OF THE LIKELIHOOD OF SUCH LOSS OR DAMAGE AND REGARDLESS OF THE FORM OF ACTION. THIS INCLUDES ANY LOSSES OR PROBLEMS OF ANY TYPE RESULTING FROM INCIDENTS OUTSIDE OF OUR DIRECT CONTROL, INCLUDING BUT NOT LIMITED TO ERRORS, HACKS, THEFT OR ACTIONS OF ISSUERS, TRANSFER AGENTS, SMART CONTRACTS, BLOCKCHAINS AND INTERMEDIARIES OF ALL TYPES.

2. Cap on Liability.
   ACCOUNT HOLDER HEREBY ACKNOWLEDGES AND AGREES UNDER NO CIRCUMSTANCES WILL PRIME TRUST'S TOTAL LIABILITY OF ANY AND ALL KINDS ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO WARRANTY CLAIMS), REGARDLESS OF THE FORM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, OR OTHERWISE, EXCEED THE TOTAL AMOUNT OF FEES PAID, IF ANY, BY ACCOUNT HOLDER TO PRIME TRUST UNDER THIS AGREEMENT DURING THE TWELVE (12) MONTH PERIOD PRIOR TO THE OCCURRENCE OF THE EVENT GIVING RISE TO SUCH LIABILITY.

3. General Indemnification.
   Account Holder hereby agrees to indemnify, protect, defend and hold harmless Prime Trust and its officers, directors, members, shareholders, employees, agents, partners, vendors, successors and assigns from and against any and all third party claims, demands, obligations, losses, liabilities, damages, regulatory investigations, recoveries and deficiencies (including interest, penalties and reasonable attorneys' fees, costs and expenses), which Prime Trust may suffer as a result of: (a) any breach of or material inaccuracy in the representations and warranties, or breach, non-fulfillment or default in the performance of any of the conditions, covenants and agreements, of Account Holder contained in this Agreement or in any certificate or document delivered by Account Holder or its agents pursuant to any of the provisions of this Agreement, or

© Copyright 2019 by Prime Trust, All Rights Reserved

PrimeTrust

Case 1:23-cv-02171-JPC-JW Document 135-2 Filed 08/23/24 Entered 08/23/24 12:01:59 Exhibit Pg
19 of 105

Doc 1352 Filed 08/23/24 Entered 08/23/24 12:01:59 Exhibit Pg
8 of 12  Pg 19 of 105
The Stipulation

(b) any obligation which is expressly the responsibility of Account Holder under this Agreement, or (c) any other cost, claim or liability arising out of or relating to operation or use of the license granted hereunder, or, (d) any breach, action or regulatory investigation arising from Account Holder's failure to comply with any state blue sky laws or other securities laws any applicable laws, and/or arising out of any alleged misrepresentations, misstatements or omissions of material fact in the Account Holders' offering memoranda, general solicitation, advertisements and/or other offering documents. Account Holder is required to immediately defend Prime Trust including the immediate payment of all attorney fees, costs and expenses, upon commencement of any regulatory investigation arising or relating to Account Holder's offering and/or items in this Section 9.3(a) through (d) above. Any amount due under the aforesaid indemnity will be due and payable by Account Holder within thirty (30) days after demand thereof. The indemnity obligations of Account Holder hereunder shall survive any termination of this Agreement and the resignation or removal of Custodian hereunder.

4.  Limitation on Prime Trust's Duty to Litigate.
Without limiting the foregoing, Prime Trust shall not be under any obligation to defend any legal action or engage in any legal proceedings with respect to the Account or with respect to any property held in the Account unless Prime Trust is indemnified to Prime Trust's satisfaction. Whenever Prime Trust deems it reasonably necessary, Prime Trust is authorized and empowered to consult with its counsel in reference to the Account and to retain counsel and appear in any action, suit or proceeding affecting the Account or any of the property of the Account. All fees and expenses so incurred shall be for the Account and shall be charged to the Account.

5.  Third Party Claims.

i.  Account Holder agrees to bear sole responsibility for the prosecution or defense, including the employment of legal counsel, of any and all legal actions or suits involving the Account, which may arise or become necessary for the protection of the investments in that Account, including any actions lodged against the Custodian. Account Holder also agrees to bear sole responsibility for enforcing any judgments rendered in favor of the Account, including judgments rendered in the name of Prime Trust as Custodian of the Account.

ii.  Account Holder agrees to be responsible for any and all collection actions, including contracting with a collection agency or institutional legal action, and bringing any other suits or actions which may become necessary to protect the rights of the Account. Account Holder understands that any legal filings made on behalf of this Investment are to be made on behalf of beneficial owners for whom Prime Trust acts as custodian. Account Holder agrees not to institute legal action on behalf of the Account without Custodian's written consent to litigate and that Account Holder shall prosecute any legal action. Account Holder agrees that any such legal action will be carried out in a manner that does not cause Custodian to incur any costs or legal exposure.

6.  Custodian may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or its duties hereunder, or relating to any dispute involving any disbursements or services contemplated herein, and shall incur no liability and shall be fully indemnified by you from any liability whatsoever in acting in accordance with the advice of such counsel. Account Holder shall promptly pay, upon demand, the reasonable fees and expenses of any such counsel and fees may be deducted from Customer's account, including the liquidation of assets if needed in order to make cash available to settle such costs.

## 10. SUCCESSION.

Custodian may resign and be discharged from its duties or obligations hereunder by giving ten (10) days' notice in writing of such resignation to Account Holder specifying a date when such resignation shall take effect and, after the date of such resignation notice, notwithstanding any other provision of this Agreement, Custodian's sole obligation will be to hold the Custodial Property pending appointment of a successor Custodian. The effective date of Custodian's resignation shall be at least ten (10) days after the date of such notices and not until a successor is in place or an interpleader action has been commenced with the transfer of Custodial Property into a court of competent jurisdiction. Account Holder shall appoint a successor custodian prior to the effective date of such resignation or removal. Custodian shall distribute the property then

© Copyright 2019 by Prime Trust, All Rights Reserved

held under this Agreement to the successor custodian whereupon Custodian shall, upon such distribution, be discharged of and from any and all further obligations arising in connection with this Agreement, except to the extent such liability and expenses is caused by Custodian's gross negligence or willful misconduct as determined by a court of competent jurisdiction. If a successor custodian has not been appointed or has not accepted such appointment by the end of such time period, Custodian may apply to a court of competent jurisdiction for the appointment of a successor custodian, and Account Holder shall pay the reasonable and documented costs and expenses (including attorneys' fees) which are incurred in connection with such proceeding. Until a successor custodian has accepted such appointment and Custodian has transferred the Custodial Property to such successor custodian or an interpleader action has been commenced with the transfer of Custodial Property into a court of competent jurisdiction, Custodian shall continue to retain the Custodial Property pursuant to the terms of this Agreement. Custodian shall have the right to withhold an amount equal to any amount due and owing to Custodian, plus any costs and expenses Custodian shall reasonably believe may be incurred by Custodian in connection with its resignation or interpleader action hereunder or transfer to a successor custodian. Any corporation or association into which Custodian may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all the custody business of Custodian's corporate trust line of business may be transferred, shall be Custodian under this Agreement without further act.

## 11. NOTICES.

All notices permitted or required by this Agreement will be via electronic mail ("email"), and will be deemed to have been delivered and received upon sending via any SMTP delivery service chosen by Prime Trust. Notices shall be delivered to the addresses on record which, if to Prime Trust shall be to support@primetrust.com and if to Account Holder shall be to the email address on file in your Account.

## 12. SEVERABILITY.

If any provision of this Agreement is for any reason found to be ineffective, unenforceable, or illegal by any court having jurisdiction, such condition will not affect the validity or enforceability of any of the remaining portions hereof.

## 13. NO LEGAL, TAX OR ACCOUNTING ADVICE:

Account Holder agrees without reservation that Prime Trust is NOT providing any legal, tax or accounting advice in any way, nor on any matter, regardless of the tone or content of any communication (oral, written or otherwise). Account Holder shall rely solely on its own legal, tax, accounting and other professional advisors for any such advice and on all matters.

## 14. NO INVESTMENT ADVICE OR RECOMMENDATIONS:

Account Holder agrees that Prime Trust is not providing any investment advice, nor do we make any recommendations regarding any securities or other assets to Account Holder. Account Holder agrees that it will not construe any communications from Prime Trust or any person associated with Prime Trust, whether written or oral, to be legal, investment, due diligence, valuation or accounting advice and agrees to only and exclusively rely on the advice of Account Holder' s attorneys, accountants and other professional advisors, including any Agents, investment advisers or registered broker-dealers acting on your behalf.

## 15. ELECTRONIC COMMUNICATIONS NOTICE AND CONSENT:

Each of Account Holder and Prime Trust hereby agree that all current and future notices, confirmations and other communications regarding this Agreement specifically, and future communications in general between the parties, may be made by email, sent to the email address of record as set forth in the Notices section above or as otherwise from time to time changed or updated and disclosed to the other party, without necessity of confirmation of receipt, delivery or reading, and such form of electronic communication is sufficient for all matters regarding the

© Copyright 2019 by Prime Trust, All Rights Reserved

DocuSign Envelope ID: 43B69E5F-4594-4463-A09E-5E72BDE10621

**PrimeTrust**

relationship between the parties. If any such electronically-sent communication fails to be received for any reason, including but not limited to such communications being diverted to the recipients' spam filters by the recipients email service provider, or due to a recipients' change of address, or due to technology issues by the recipients' service provider, the parties agree that the burden of such failure to receive is on the recipient and not the sender, and that the sender is under no obligation to resend communications via any other means, including but not limited to postal service or overnight courier, and that such communications shall for all purposes, including legal and regulatory, be deemed to have been delivered and received. No physical, paper documents will be sent to Account Holder, and if Account Holder desire physical documents then it agrees to be satisfied by directly and personally printing, at Account Holder's own expense, either the electronically-sent communication(s) or the electronically available communications by logging onto Account Holder's Account at www.primetrust.com and then maintaining such physical records in any manner or form that Account Holder desire. Account Holder's Consent is Hereby Given: By signing this Agreement electronically, Account Holder explicitly agrees to this Agreement and to receive documents electronically, including a copy of this signed Agreement as well as ongoing disclosures, communications and notices.

### 16. ASSIGNMENT:

No party may transfer or assign its rights and obligations under this Agreement without the prior written consent of the other parties. Notwithstanding the foregoing, without the consent of the other parties, any party may transfer or assign its rights and obligations hereunder in whole or in part (a) pursuant to any merger, consolidation or otherwise by operation of law, and (b) to the successors and assigns of all or substantially all of the assets of such assigning party, provided such entity shall be bound by the terms hereof. This Agreement will be binding upon and will inure to the benefit of the proper successors and assigns.

### 17. BINDING ARBITRATION, APPLICABLE LAW AND VENUE, ATTORNEYS FEES:

This Agreement is governed by and will be interpreted and enforced in accordance with the laws of the State of Nevada without regard to principles of conflict of laws. Any claim or dispute arising under this Agreement may only be brought in arbitration, with venue in Clark County, Nevada, pursuant to the rules of the American Arbitration Association. Account Holder and Prime Trust each consent to this method of dispute resolution, as well as jurisdiction, and consent to this being a convenient forum for any such claim or dispute and waives any right it may have to object to either the method or jurisdiction for such claim or dispute. In the event of any dispute among the parties, the prevailing party shall be entitled to recover damages plus reasonable costs and attorney's fees and the decision of the arbitrator shall be final, binding and enforceable in any court.

### 18. COUNTERPARTS, FACSIMILE, EMAIL, SIGNATURES:

This Agreement may be executed in counterparts, each of which will be deemed an original and all of which, taken together, will constitute one and the same instrument, binding on each signatory thereto. This Agreement may be executed by signatures, electronically or otherwise, delivered by facsimile or email, and a copy hereof that is properly executed and delivered by a party will be binding upon that party to the same extent as an original executed version hereof.

### 19. FORCE MAJEURE:

No party will be liable for any default or delay in performance of any of its obligations under this Agreement if such default or delay is caused, directly or indirectly, by fire, flood, earthquake or other acts of God; labor disputes, strikes or lockouts; wars, rebellions or revolutions; riots or civil disorder; accidents or unavoidable casualties; interruptions in transportation or communications facilities or delays in transit or communication; supply shortages or the failure of any person to perform any commitment to such party related to this Agreement; or any other cause, whether similar or dissimilar to those expressly enumerated in this Section, beyond such party's reasonable control.

© Copyright 2019 by Prime Trust, All Rights Reserved

**PrimeTrust**

#### 20. INTERPRETATION:

Each party to this Agreement has been represented by or had adequate time to obtain the advice and input of independent legal counsel with respect to this Agreement and has contributed equally to the drafting of this Agreement. Therefore, this Agreement shall not be construed against either party as the drafting party. All pronouns and any variation thereof will be deemed to refer to the masculine and feminine, and to the singular or plural as the identity of the person or persons may require for proper interpretation of this Agreement. And it is the express will of all parties that this Agreement is written in English and uses the font styles and sizes contained herein.

#### 21. CAPTIONS:

The section headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

#### 22. ENTIRE AGREEMENT, AMENDMENTS:

This Agreement sets forth the entire understanding of the parties concerning the subject matter hereof, and supersedes any and all prior or contemporaneous communications, representations or agreements between the parties, whether oral or written, regarding the subject matter of this Agreement, and may not be modified or amended, except by a written instrument executed after the effective date of this Agreement by the party sought to be charged by the amendment or modification.

#### 23. CAPACITY:

Account Holder hereby represents that the signer(s) of this Agreement are over the age of 18 and have all proper authority to enter into the Agreement. Furthermore, if Account Holder is an entity (e.g. corporation, trust, partnership, etc. and not an individual) then the entity is in good standing in its state, region or country of formation; which Account Holder agrees to produce evidence of such authority and good standing if requested by Custodian. Account Holder agrees to provide Prime Trust with any additional information required to open the Account, including beneficial owners and other customer information. Account Holder represents that the information provided is complete and accurate and shall immediately notify Prime Trust of any changes.

#### 24. SERVICES NOT EXCLUSIVE:

Nothing in this Agreement shall limit or restrict the Custodian from providing services to other parties that are similar or identical to some or all of the services provided hereunder.

#### 25. INVALIDITY:

Any provision of this Agreement which may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. In such case, the parties shall in good faith modify or substitute such provision consistent with the original intent of the parties.

#### 26. SUBSTITUTE IRS FORM W-9

***Under penalties of Perjury, Account Holder certifies that:*** (1) The tax identification number provided to Prime Trust by Account Holder, if Account Holder is a US person, is the correct taxpayer identification number and (2) Account Holder is not subject to backup withholding because**:** (a) Account Holder is exempt from backup withholding, or, (b) Account Holder has not been notified by the Internal Revenue Service (IRS) that it is subject to backup withholding. Account Holder agrees to immediately inform Prime Trust in writing if it has been, or at any time in the future is notified by the IRS that Account Holder is subject to backup withholding. Account Holders acknowledge that failing to provide accurate information may result in civil penalties.

© Copyright 2019 by Prime Trust, All Rights Reserved

DocuSign Envelope ID: 143B6AEE-5594-4633-A09E-2E72DF16921C

PrimeTrust

Agreed as of ___13___ day of ___November___, 2019 by and between:

**ACCOUNT NAME:** Celsius Network LTD

SIGNATURE:

TITLE, if any: CEO

**PRIME TRUST, LLC**

By:_____
Name: Scott Purcell
Title: Chief Trust Officer

© Copyright 2019 by Prime Trust, All Rights Reserved

# Exhibit B

# Terms of Use

## 1. Introduction

Celsius Network LLC and its Affiliates
(collectively: **"we," "our," "us,"** **"Celsius,"** or the **"Company"**) provide the
following Terms of Use (the "Terms") that apply to our users
(**"you"** or **"User(s)"**) and govern each User's access to, and use of, Celsius'
products and services as well as our mobile and web-based application(s),
our website(s), any software, programs, documentation, tools, hardware,
internet-based services, components, and any updates (including software
maintenance, service information, help content, bug fixes or maintenance
releases) provided to you by Celsius, directly or indirectly, through our mobile
application, our website, or any other online services we provide (collectively,
the "Services").
Services provided in connection with specific Eligible Digital Assets listed on
Appendix A are provided by the Affiliate Celsius EU UAB, a limited liability
company incorporated in Lithuania.

The Services are provided solely for use by you, and your use of the Services
is expressly conditioned on your consent to, and compliance with, these
Terms. By accessing or using our Services, you agree to be bound by these
Terms. If you do not agree to any of the provisions of these Terms you should
immediately stop using the Services. In addition, our Privacy Policy is set forth
here: https://web.archive.org/web/20210722164416/https://celsius.network/privacy-policy/ and is incorporated into these Terms in its entirety. We encourage
you to read these Terms carefully and use them to make informed decisions.

By accepting these Terms you hereby agree and acknowledge that the Services described herein are being provided by multiple Celsius entities incorporated and existing in various jurisdictions, based on the scope and nature of the Services, your jurisdiction and applicable laws. We may, from time to time, provide certain Services by different entities within the Celsius group, and any change in and/or assignment of the contracting entity shall not be consider an amendment of these Terms.

**CELSIUS IS A LENDING AND BORROWING PLATFORM. WHEN YOU TRANSFER DIGITAL ASSETS TO CELSIUS, THOSE DIGITAL ASSETS ARE A LOAN FROM YOU TO CELSIUS, IN ACCORDANCE WITH THE TERMS HEREOF. UNDER NO CIRCUMSTANCES DOES CELSIUS HOLD DIGITAL ASSETS IN CUSTODY ON YOUR BEHALF AS PART OF THE SERVICES GOVERNED BY THESE TERMS.**

**ALL DIGITAL ASSETS TRANSFERRED TO CELSIUS AS PART OF THE SERVICES ARE OWNED AND HELD BY CELSIUS FOR ITS OWN ACCOUNT. THE USE OF TERMS SUCH AS "ACCOUNT," "ACCOUNT BALANCE," "WITHDRAW" AND SIMILAR DOES NOT IMPLY OR ESTABLISH, AND SHALL NOT BE TAKEN TO SUGGEST, ANY FORM OF CUSTODY RELATIONSHIP, AND SUCH LANGUAGE IS USED HEREIN AS TERMS OF CONVENIENCE ONLY IN REFERRING TO USERS' BORROWING OR LENDING OF DIGITAL ASSETS TO OR FROM CELSIUS AS PART OF THE SERVICES AND CELSIUS' OBLIGATION TO TRANSFER DIGITAL ASSETS TO USERS UPON THE TERMINATION OF SUCH LOANS OR REPAYMENT OF SUCH BORROWING.**

## 2. Definitions

Capitalized terms shall have the meanings assigned to them in these Terms, unless the context requires otherwise.

**"Account"** or **"Celsius Account"** means a User's designated user account on the Celsius website or mobile application, allowing a User to access and use the Services, and view and manage his or her personal information and profile. Your Account is not a bank account, deposit account, savings accounts, checking account, or any other type of asset account and should not be characterized as a banking product or service.

**"Affiliate"** means an entity that owns or controls, is owned or controlled by, or is or under common control or ownership with a party, where control is defined as the direct or indirect power to direct or cause the direction of the management and policies of such party, whether through ownership of voting securities, by contract, or otherwise.

**"AML"** stands for Anti-Money Laundering, which means a set of procedures, laws, and regulations that are intended to stop the practice of generating income through illegal actions.

**"Blockchain"** means a system in which records of transactions made in Digital Assets are maintained across several computers that are linked in a peer-to-peer network.

**"CEL Token"** means Celsius' native token.

**"Digital Asset"** means a digital representation of value in which encryption techniques are used to regulate the generation of digital units and verify the transfer of assets, operating independently from a central bank.

**"Eligible Digital Assets"** means the types of Digital Assets we may choose to designate for inclusion under one or more of the Services from time to time, which are subject to change and/or limitation in our sole discretion, based on business, regulatory and/or other considerations.

**"Fiat,"** when used in reference to money or currency, means the coin and paper money of a country that is designated as legal tender, circulates, and is customarily used and accepted as a medium of exchange in the country of issuance.

**"KYC"** stands for Know Your Customer (or Client), which means the process of a business verifying the identity of its customers or clients and assessing potential risks of illegal intentions for the business relationship.

**"Pegging"** is the practice of fixing the exchange rate of one currency to the value of another currency or asset.

**"Stablecoin"** means a Digital Asset that is Pegged to a distinct asset.

**"Virtual Wallet"** or "Virtual Wallet Address" means an on-Blockchain virtual address in which Digital Assets can be held and transferred.

# 3. Eligibility and Proof of Identity

In order to use the Services you must first register for a Celsius Account.

In order to be eligible to access and use the Services, you must (i) be eighteen (18) years of age or older, (ii) have the legal ability to enter into and be bound by these Terms, (iii) comply with these Terms, and (iv) register for and maintain an active and valid Celsius Account. Celsius is not obligated to accept any application from any applicant and has sole and absolute discretion to accept or reject applications to create Celsius Accounts.

The Services are not available where prohibited by law or by Celsius policy, as updated from time to time; currently, such places include the countries of Iran, North Korea, Sudan, South Sudan, Syria, Cuba, or any other country against which the United States, the United Kingdom or the European Union imposes financial sanctions or embargoes.

Be advised that in some jurisdictions, due to regulatory considerations, Celsius may not provide part or all of the Services, which may include support for some Eligible Digital Assets or the CEL Token.

Due to changing regulatory requirements and interpretations in the Digital Assets markets, Celsius will use its sole and absolute discretion to revise the list of prohibited jurisdictions, reject specific applications to open Celsius Accounts, use part or all of the Services and/or close, freeze or suspend Celsius Accounts, where Celsius, at its sole and absolute discretion, has determined that regulatory or policy reasons prevent Celsius from being able to offer its Services.

Celsius is subject to Anti-Money Laundering ("AML"), Know Your Client ("KYC"), and U.S. sanction requirements under the Bank Secrecy Act ("BSA"), Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("USA PATRIOT Act"), and the Office of Foreign Assets Control ("OFAC").

Under applicable AML and OFAC rules, Celsius is obligated to maintain certain information about you, including User records and transaction history, for five years (seven years for Users reside in the state of New York), or a longer period as may be required under applicable laws. Under certain circumstances, Celsius is required to report to the competent authorities of any unusual transactions, or of any suspicion it may have that any User might be involved in any financial crime or illicit activity.

Celsius is required to comply with applicable AML and KYC requirements before and after you register for a Celsius Account. When you register for a

Celsius Account, we will ask for documentation and information, including but not limited to copies of your government-issued identification document (e.g. Passport, driver's license). For corporate Celsius Accounts, we may require identification information related to the directors, officers, authorized representatives, or equity owners of the business. We may also gather and use information about you from third parties, to help us confirm your identity, perform our AML/KYC checks and/or determine your access to the Services You represent and warrant at all times that any and all information provided by you to us is true, accurate, and not misleading in any respect. If any such information changes, it is your obligation to provide the new information to us as soon as practicable following such change.

# 4. Services

## A. Celsius Account

Your Celsius Account allows you to view your balances in connection with the Services procided to you by Celsius and access the Services and conduct certain transactions online. You are solely responsible for the activities under your Celsius Account and for securing your Celsius Account IDs, passwords, hints, or any other codes that you use to access your Celsius Account and the Services. Celsius is not responsible for any loss or compromise of your access information and/or your personal information, or for any loss that you may sustain due to compromise of your access information and/or personal information.

We will not be liable for following any instruction we receive through your Celsius Account, even if it was not authorized by you, or if it was entered by mistake or is otherwise inaccurate. To verify the authenticity of any instruction

we receive through your Celsius Account, we may require your signature or identification in any form we deem necessary, at our sole discretion, and we may accept digital images and electronic signatures for documents that need to be signed. You agree to reimburse us (and we may charge you or deduct from the balance of your Celsius Account) for all claims, costs, losses and damages, including reasonable attorneys' fees, that result from our following of your instructions to take any action related to your Celsius Account.

Your Celsius Account is not a deposit or checking account, and Celsius does not hold any Digital Assets on your behalf. All Eligible Digital Asset balances on your Account represent Digital Assets are either loaned from you to Celsius or held by it as collateral, and therefore, owned, held and/or controlled by Celsius (under the applicable Service, as further detailed herein), and Celsius' obligation to deliver such Digital Assets back to you upon the termination of the applicable Service.

Celsius may freeze, suspend or terminate your Account at any time in its sole discretion, in addition to taking any action and seeking any remedy it may be entitled to in law or in equity, in any event it may have any suspicion of your involvement in any fraudulent activity of any kind, misuse of the Services, inaccurate or misleading information provided by you, or any money laundering or other financial crime related to you or your Celsius Account.

## B. Earn Rewards
Our Earn Rewards service allows you to earn a financing fee from Celsius, referred to as "Rewards", in the form of Digital Assets (either in-kind, i.e. in the same Digital Asset you deliver, or in CEL Tokens, where permitted) in exchange for entering into open-ended loans of your Eligible Digital Assets to

Celsius under the terms hereof. By lending your Eligible Digital Assets to Celsius you grant Celsius all rights and title to such Digital Assets, for Celsius to use in its sole discretion.

The balance of Eligible Digital Assets loaned by you to Celsius, and any Rewards gained thereon (see further Section 12 below, "How Rewards are Calculated and Earned") are visible via your Celsius Account. You may terminate any loan to Celsius at any time, and request that Celsius return the borrowed Eligible Digital Assets and deliver any Rewards accrued from the Earn Rewards service, in each case by transferring such Eligible Digital Assets and Rewards to your external Virtual Wallet (in accordance with Section 11 below, "Withdrawals").

Earn Rewards is not an investment program nor a speculative tool. Rather, you are earning Rewards as a financing fee on the loan of Digital Assets you have transferred to Celsius, in accordance with the rates published by Celsius from time to time, in accordance with these Terms.

By virtue of agreeing to these Terms and transferring any Eligible Digital Assets to the Virtual Wallet provided by Celsius via our platform (which, for the avoidance of doubt, shall be seen as completed only upon the receipt of such Eligible Digital Assets in the applicable Virtual Wallet controlled by Celsius), you agree to lend such Digital Assets to Celsius in accordance with the terms hereof.

## C. Borrow

You may apply to borrow certain Fiat currencies or Stablecoins from an Affiliate of Celsius, as will be agreed between you and Celsius or its Affiliates

in writing, against Eligible Digital Assets in your Celsius Account (each, a "Fiat Loan"). If approved, such application shall be subject to a separate agreement to be entered into between you and the Celsius Affiliate (the "Fiat Loan Agreement"), and Celsius or its Affiliates shall hold the Digital Assets provided as collateral under the Fiat Loan Agreement for the benefit of the Lender subject to the terms hereof, including without limitation Sections 9, 10 and 13.

In no circumstances shall it be permissible to use the proceeds of such Fiat Loans to purchase additional Digital Assets through any third-party fiat "on-ramp" service providers that may be integrated in or connected with the Celsius platform from time to time, and you represent and warrant that you will not do so. Celsius further does not recommend or encourage any use of borrowed funds for purchasing Digital Assets or making any financial investment. Any use of the proceeds of Fiat loans must be in full compliance with the terms of all applicable laws and regulations, these Terms and the applicable Fiat Loan Agreement, and you shall be solely responsible and liable for any breach of any of the foregoing.

Any Eligible Digital Assets you provide as collateral under a Fiat Loan Agreement shall not generate Rewards for your benefit under the Earn Rewards service, as set out below, and you explicitly authorize Celsius or its Affiliates to temporarily deduct such amounts of Eligible Digital Asset from the balance of your loan to Celsius under the Earn Rewards Service, until such time that your Fiat Loan is repaid in full and your Eligible Digital Assets cease to act as collateral for your Fiat Loan under the applicable Fiat Loan Agreement, at which point such Digital Assets shall be added to the balance of your loan to Celsius and resume being regarded as a loan to Celsius and entitle you to accrue Rewards under the Earn Rewards Service.

Celsius may offer other forms of commercial arrangement under the Borrow service, such as a sale and repurchase arrangement, based on its regulatory, business or other considerations.

### D. CelPay

CelPay is Celsius' proprietary Digital Asset tool for Celsius Users, which allows you to assign your rights with Celsius in connection with selected Eligible Digital Assets to other registered Users (see further Section 15 below, "CelPay").

By entering into any CelPay transaction you explicitly authorize Celsius or its Affiliates to deduct such amounts of Eligible Digital Asset as you instruct us to transfer to another user from the balance of your loan to Celsius under the Earn Rewards Service, and to be added to the balance of the loan to Celsius of such other User. Conversely, by accepting any CelPay transaction from another User you agree that the amounts of Eligible Digital Asset sent to you shall be added to the balance of your loan to Celsius under the Earn Rewards Service.

## 5. Celsius Account Types

### A. Individual Account

This Celsius Account is owned by only one natural person who is and will continue to be the only person authorized to take any action in the Celsius Account. By opening an Individual Celsius Account, you represent and warrant that you are and shall at all times continue to be the sole beneficial owner of the Celsius Account and user of all Services facilitated or generated therefrom.

## B. Corporate Celsius Account

This Celsius Account is owned by a corporation, unincorporated association, a company, a partnership, fiduciary, sole proprietorship or other legally recognized group (interchangeably defined as an "Entity") holding a Celsius Account in any capacity other than an individual capacity. An Entity can apply to open a Celsius Account through any natural person(s) who is duly authorized by the Entity to do so (an "Authorized Representative").

Such Authorized Representative represents and agrees, on behalf of the Entity, as well as on his or her own behalf, that he or she:

(i) is fully authorized to execute all documents or otherwise complete our requirements in his or her stated capacity;

(ii) has provided us all documents or other information necessary to demonstrate that authority; and

(iii) will provide other documents and complete other requirements as we may request from time to time.

We may refuse to recognize any such authorization if, in our reasonable judgment, it appears to be incomplete or improperly executed.

By opening a Corporate Celsius Account, the Authorized Representative represents and warrants on behalf of the Entity that the Entity is and shall at all times continue to be the sole beneficial owner of the Celsius Account and user of all Services facilitated or generated therefrom and that the ultimate

beneficial owners of all assets and assets belonging to the Entity are as represented during the establishment of the Corporate Celsius Account. The Entity registered as holder of a Corporate Celsius Account, the ultimate beneficial owner(s) of such Entity and any Authorized Representative(s) shall each be responsible for updating Celsius immediately of any change in the details of the Entity, ultimate beneficial owner(s) and/or Authorized Representative(s), including any appointment or termination of the same, change of control in the Entity or change in the registration details of the Entity, and such persons shall be jointly and severally liable to Celsius for any breach of these Terms in connection with the Corporate Celsius Account.

## 6. Authorized Users

For both Individual and Corporate Celsius Accounts, we may follow any instructions regarding your Celsius Accounts provided that we reasonably believe such instructions are authorized by the Celsius Account holder, and we will not be held liable for following any instructions provided by a person designated or identified as an authorized User or Authorized Representative.

## 7. Account Balance

Your Celsius Account balance visible through the platform shall indicate the amounts of Eligible Digital Assets owed to you by Celsius. You can lend additional Eligible Digital Assets to Celsius by transferring the same to the Virtual Wallet Address(es) provided in your Celsius Account (or as otherwise notified by us to you). We reserve the right to reject entry into any loan transaction, and/or the right to repay any loan of Digital Asset already made,

each at your expense. Any Digital Asset received will be treated by us as
being loaned to us beginning on the date and at the time stamped on the
Blockchain confirmation.

Once such Eligible Digital Assets are received by Celsius, they shall be
Celsius' property for all intents and purposes, and you will immediately start
accruing Rewards on such Digital Assets in accordance with the terms hereof
(unless explicitly provided for the purpose of being utilized for any other
Service), and the corresponding amount (and kind) of Eligible Digital Assets
shall be reflected in your Celsius Account balance.

It is your sole responsibility to make sure that Digital Assets you wish to lend
to Celsius are Eligible Digital Assets, and that your transfer on the Blockchain
is directed to the correct Virtual Wallet Address as provided to you by Celsius
(which may differ from time to time and between different Digital Assets).

If you do not carefully follow these instructions, your Digital Assets may be
irrevocably lost, and Celsius may not be able to assist you in retrieving them.
Celsius will not be liable to you for any such loss.

## 8. Ownership of Digital Assets

You hereby represent and warrant to us that any Digital Asset delivered by
you for the purpose of utilizing Celsius' Services is owned by you or that you
are fully permitted to carry out transactions using such Digital Assets without
restriction or limitation, and that your use of the Services is solely for your own
account and benefit, and not on behalf of any other person or entity. You

further represent and warrant that all such Digital Assets are free from any claims, indebtedness, liens, or third-party interests.

**ALL DIGITAL ASSETS TRANSFERRED TO CELSIUS AS PART OF THE SERVICES ARE OWNED AND HELD BY CELSIUS FOR ITS OWN ACCOUNT IN ACCORDANCE WITH THESE TERMS, AND UNDER NO CIRCUMSTANCES DOES CELSIUS HOLD DIGITAL ASSETS ON YOUR BEHALF AS PART OF THE SERVICES.**

## 9. Setoff and Security Interest Rights

You grant us a security interest in any and all Eligible Digital Assets loaned to Celsius or otherwise credited to your Celsius Account for debts, amounts owed, or liabilities incurred to us or any of our Affiliates by you or any of your Authorized Representatives, if any ("Obligations"). Obligations may include both secured and unsecured debts, and Obligations you owe individually or together with someone else, including Obligations under other transactions or agreements between you and us or any of our Affiliates.

We may take or set off from any Eligible Digital Asset balance in your Celsius Accounts, or deduct from any obligations Celsius may have to you, any direct, indirect, and acquired Obligations that you owe us or our Affiliates. These rights are in addition to other rights we may have to take, transfer, or charge from any assets or balance in your Celsius Account for Obligations you owe us or our Affiliates.

Your acceptance of these Terms serves as your consent to Celsius' asserting its security interest or exercising its right of setoff should any laws governing your Celsius Account require your consent. If the law restricts our ability to take, transfer, or setoff from any obligations to you, or if your Celsius Account balance is protected from attachment, levy, or legal process, you waive those conditions and limits to the full extent that you may do so by contract, and you authorize us to take any actions to offset your Obligations in any or all of your Celsius Accounts.

We hereby agree that, to the extent permitted by applicable law, in the event that Celsius breaches its obligation under these Terms, you may set off assets or amounts we owe you with respect to your Celsius Account, against your Obligations. If the law restricts your ability to take, transfer, or setoff our obligations to you, or if they are protected from attachment, levy, or legal process, we waive those conditions and limits to the full extent that we may do so by contract, and we authorize you to apply our obligations to you to your Obligations.

## 10. Risk Disclosure

Before using any of Celsius' Services, you should ensure that you fully understand and can afford to undertake the risks involved. You should carefully read and make sure you understand our Risk Disclosure page, which lists some, but not all of the risks involved in holding, trading and using crypto assets generally, and using Celsius' services specifically. The risks listed below and in our Risk Disclosure page are intended to provide you with a general outline of the risks involved, but cannot capture all such risks.

These Terms and your use of any of our Services do not create a fiduciary relationship between us and you; your Celsius Account is not a checking or savings account, and it is not covered by insurance against losses. We may lend, sell, pledge, hypothecate, assign, invest, use, commingle or otherwise dispose of assets and Eligible Digital Assets to counterparties or hold the Eligible Digital Assets with counterparties, and we will use our best commercial and operational efforts to prevent losses. By lending Eligible Digital Assets to Celsius or otherwise using the Services, you will not be entitled to any profits or income Celsius may generate from any subsequent use of any Digital Assets (or otherwise), nor will you be exposed to any losses which Celsius may suffer as a result thereof. You are, however, exposed to the possibility of Celsius becoming unable to repay its obligations in part or in full, in which case your Digital Assets may be at risk.

**ELIGIBLE DIGITAL ASSETS ARE NOT LEGAL TENDER. CELSIUS IS NOT A BANK OR DEPOSITORY INSTITUTION, AND YOUR CELSIUS ACCOUNT IS NOT A DEPOSIT ACCOUNT. ELIGIBLE DIGITAL ASSETS REPRESENTED IN YOUR CELSIUS ACCOUNT ARE NOT HELD BY CELSIUS AS A CUSTODIAN OR FIDUCIARY, ARE NOT INSURED BY ANY PRIVATE OR GOVERNMENTAL INSURANCE PLAN (INCLUDING THE FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC) OR THE SECURITIES INVESTOR PROTECTION CORPORATION (SIPC)), AND ARE NOT COVERED BY ANY COMPENSATION SCHEME. YOUR CELSIUS ACCOUNT DOES NOT CONSTITUTE AN INVESTMENT CONTRACT OR A SECURITY, IS NOT TRANSFERRABLE AND MAY NOT BE TRADED, EXCHANGED OR SOLD TO ANY THIRD PARTY UNDER ANY CIRCUMSTANCES.**

Celsius does not provide any legal, tax or financial advice and you are strongly advised to obtain independent legal, tax or financial advice prior to making any financial decision, including buying, trading, holding or using Digital Assets. There are significant risks associated with Digital Assets, and you are solely responsible to make sure you understand such risks and assess whether such risks are appropriate for you. Celsius does not make any offers, recommendations or invitations for you to deal in Digital Assets or use any services, and does not take into account your personal circumstances, financial situation, needs or goals. Before making any financial decision, you should carefully assess your financial situation and capacity, and only use funds that you can afford to lose. Before entering into any transaction or using any of the Services you should ensure that you understand and have made an independent assessment of the suitability and appropriateness of a transaction into which you are entering and the nature and extent of your exposure to risk of loss in light of your own objectives, financial and operational resources and other relevant circumstances. Past performance is no guarantee of future results.

Legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of Digital Assets. Transactions in Digital Assets may be irreversible, and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable.

The value of Digital Assets may be derived from the continued willingness of market participants to exchange Digital Assets for Fiat currencies or other Digital Assets. If such willingness is abolished for any reason, this may result in the potential for a permanent and total loss of value of a particular Digital Asset.

The volatility and unpredictability of the price of Digital Assets may result in significant loss over a short period of time. The nature of Digital Assets may lead to an increased risk of fraud or cyber-attack, including rollback attacks or Blockchain reorganizations. The nature of Digital Assets means that any technological difficulties experienced by Celsius or third parties may limit, delay or prevent the access or use of Digital Assets and/or cause losses of Digital Assets. Although Celsius takes precautionary measures to protect against cyber threats, circumstances may arise where losses or damages are incurred.

In light of these risks, which are only some of the risks involved in using the Services and holding or trading in Digital Assets, and do not constitute an exhaustive list of such risks, you should carefully consider whether holding or trading Digital Assets in general and/or using our Services is suitable for you in light of your financial condition.

## 11. Withdrawals

Subject to these Terms, you have a call option on all loans made to Celsius to demand immediate complete or partial repayment of any loan at any time through a complete or partial withdrawal of Eligible Digital Assets from your Celsius Account balance at any time. Such repayment will terminate in whole or in part your loan to Celsius and you shall no longer accrue Rewards on the amount of loans as of the time of your exercise of the call option. Celsius initiates the withdrawal process immediately following a withdrawal request when possible; however, we may require up to three (3) days after you submit your withdrawal request to process the withdrawal.

For every withdrawal request, you will be required to provide the details of the Virtual Wallet to which you wish to receive your repayment of Digital Assets. For the avoidance of doubt, any repayment shall be in-kind (i.e. in the same type of Eligible Digital Assets loaned by you, but not the actual same Digital Assets originally transferred by you). In the event that the details you provide are inaccurate, incomplete or misleading, your Digital Assets may be permanently lost. We will not be liable for any loss that results from inaccurate, incomplete or misleading details that you may provide for such transfer. If the transfer address you specify is one to which we are unable to process transfers, we will have no liability for any resulting failure or delay in processing your requested withdrawal.

Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently. Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions. Withdrawal limits based on amounts and/or frequency may apply from time to time, based on legal, regulatory, AML and/or security considerations. Our policies and procedures may require additional security and/or compliance checks that require additional time to complete. Any individual request to exceed withdrawal limits set by Celsius must be sent via email to app@celsius.network.

Every transmission request shall be deemed pending until accepted by us. We may refuse to accept such request, or delay the processing of an approved request for any reasonable reason, including but not limited to

inaccurate or misleading information provided by you, or any doubt or suspicion of fraud, misrepresentation, a sanctioned transaction, money laundering, terrorism financing or other financial crime related to your Celsius Account.

# 12. How Rewards Are Calculated and Earned

All Eligible Digital Assets loaned to Celsius via your Celsius Account that (1) are not being used as collateral for Fiat Loans; (2) all rights in connection with them were not assigned to another Celsius user using CelPay, and (3) were not requested for external transmission or withdrawal (Eligible Digital Assets meeting each of these three criteria, "Loaned Digital Assets") entitle you to Rewards while credited to your Celsius Account.

We periodically update our rates and the rate changes are based our sole discretion. Rewards will be payable in arrears and added to the principal loaned by you to Celsius, as part of the Earn Service, and reflected in your Celsius Account balance weekly.

We calculate the Rewards on Loaned Digital Assets based on market demand for each Eligible Digital Asset. Reward rates are not determined based on Celsius' income or profit, generated directly or indirectly as a result of the use of Celsius in a particular Digital Asset, a type of Digital Assets, or otherwise.

Rewards are payable based on a daily periodic rate applicable to the Loaned Digital Assets. The daily periodic rate is calculated by dividing the then-applicable annual reward rate by three hundred sixty-four (364) days; then it is

further divided down to the hour, minute, and second of that day. Loaned Digital Assets, including those received as Rewards from previous weeks, will begin gaining Rewards according to the hour, minute, and second on the timestamp verifying the completion of the applicable transaction and shall cease and/or decrease the amount paid as Rewards at the moment when the User has entered an external transmission, withdrawal or transfer of rights (via CelPay) request, or posted any Loaned Digital Assets as collateral for a Fiat Loan. Therefore, any Loaned Digital Asset transferred mid-week will receive Rewards with no distinction, based on the rates calculated for the relative time within the allocation period.

We will reflect the Rewards earned for the previous week on or around the first business day of each week, through our platform. Your Celsius Account must be active on the date the Rewards are payable for you to receive the applicable Rewards. All Rewards will be added to your Account balance in-kind (in the same Eligible Digital Asset that is reflected in your Celsius Account) or, subject to your in-app choice and regulatory and business considerations, in CEL. Once Rewards are added to your Account balance, they shall be treated as integral part of your loan to Celsius, for all intents and purposes. To make such in-kind Reward payments as accurately as possible, Celsius rounds non-integer, rational numbers to the sub-cent, which is the smallest possible decimal available for the applicable Eligible Digital Asset.

For users who are citizens or legal residents of the United States, Celsius requires your Taxpayer ID (TIN) or Social Security Number (SSN) to be updated in your Celsius Account in order to gain Rewards. Celsius is not obligated to reflect credits in your Celsius Account retroactively with Rewards that would have been gained if you had otherwise updated your profile with your TIN or SSN.

If Celsius has determined, based on its sole and absolute discretion, that for any regulatory or legal reason we are limited in the Rewards rate we may offer you on your Eligible Digital Assets loaned to Celsius (or if we are completely restricted from paying any Rewards to you whatsoever), the Rewards to which you shall be entitled will be limited accordingly. Based on our reasonable interpretation of legal requirements, without prior notice, we may limit the Rewards to which you will be entitled.

If, at any time, for legal or other reasons, a Celsius Account is suspended or frozen by Celsius, Loaned Digital Assets connected to such Celsius Account shall not be eligible to earn Rewards.

## 13. Consent to Celsius' Use of Digital Assets

In consideration for the Rewards payable to you on your Celsius Account and the use of our Services, you grant Celsius, subject to applicable law and for the duration of the period during which the Eligible Digital Assets are loaned to us through your Celsius Account, all right and title to such Digital Assets, including ownership rights, and the right, without further notice to you, to hold such Digital Assets in Celsius' own Virtual Wallet or elsewhere, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets in Celsius' full discretion. You acknowledge that with respect to Digital Assets used by Celsius pursuant to this paragraph:

(i) You will not be able to exercise rights of ownership;

(ii) Celsius may receive compensation in connection with lending or otherwise using Digital Assets in its business to which you have no claim or entitlement; and

(iii) In the event that Celsius becomes bankrupt, enters liquidation or is otherwise unable to repay its obligations, you may not be able to recover or regain ownership of such Digital Assets, and other than your rights as a creditor of Celsius under any applicable laws, you may not have any legal remedies or rights in connection with Celsius' obligations to you.

# 14. Hard Forks

Any Blockchain may undergo software updates from time to time, which will result in a permanent divergence in the Blockchain (a "Hard Fork"). The result is such Blockchain will split into two separate and distinct Blockchains, and any Digital Asset on that original Blockchain may entitle its holders to a new type of Digital Asset (the "New Currency"). Due to the administrative complexity of being the repository for a hard-forked Digital Asset, the support of any New Currency in your Celsius Account is solely at the discretion of Celsius. If we do not make a public announcement confirming our support of a New Currency ahead of an anticipated Hard Fork, we will not support the New Currency and such New Currency will be an unsupported currency ("Unsupported Currencies"), in which case all Celsius Accounts will be denominated in the legacy Digital Asset and all Rewards will accrue and be payable in the legacy Digital Asset. You agree that Celsius assumes no responsibility whatsoever with respect to those Unsupported Currencies and

you will not be able to recover the Unsupported Currencies from Celsius. Celsius assumes absolutely no responsibility whatsoever with respect to Unsupported Currencies.

In the event that a Hard Fork achieves the required consensus, it is possible that we will only support the New Currency and will discontinue our support of the legacy Digital Asset. In the event of a Hard Fork that entitles you to a New Currency, you are advised to withdraw the applicable Digital Assets from your Celsius Account prior to the date of the Hard Fork. Celsius is not obligated in any way to monitor or maintain balances of New Currency issued to holders of the applicable Digital Assets upon a Hard Fork, or to credit you for the value of such New Currency. In the event you wish to receive New Currency issued upon a Hard Fork, you are advised to withdraw the applicable Digital Assets from your Celsius Account prior to the date of the Hard Fork. All determinations regarding Hard Forks shall be made by Celsius in its sole and absolute discretion and in accordance with applicable law.

## 15. CelPay

CelPay is Celsius' proprietary Digital Asset tool for Celsius Users, which allows you to assign your rights with Celsius in connection with selected Eligible Digital Assets to other registered Users (see further Section 15 below, "CelPay").

By using our CelPay feature, you understand and acknowledge that:

Assignment of rights in connection of Eligible Digital Assets by CelPay are not recorded on any Blockchain, but rather on Celsius' ledger. No Digital Assets are being transferred by using CelPay, and by making any CelPay transaction you are authorizing Celsius to deduct the corresponding amount of Eligible Digital Assets from your Account balance, to be credited to the balance of the receiving User's Account.

Celsius would not be responsible, and would not interfere in any way in, any dispute between you and the User to which your rights were assigned;

any assignment to the wrong User may be irrevocably end with losing your rights in connection with the Eligible Digital Assets assigned to the other User, and it is your sole responsibility to make sure you provide the correct details;

the completion of the assignment of rights may not be immediate, and it may take some time before it is processed and the relevant Celsius Account balances are updated;

use of the CelPay feature is subject to limitations on amounts assigned, as determined in Celsius' reasonable discretion from time to time;

all assignments made through CelPay are final and irreversible;

by making any CelPay assignment you represent to Celsius that you are familiar with the person to whom assignment is made, and that such assignment is not made for any illicit or illegal purpose. You acknowledge that

Celsius would hold you responsible for any damages it may incur by any unlawful use of the CelPay feature.

Celsius does not accept any liability for assignment or attempted assigment that would violate any law or regulation, including without limitation, KYC requirements, embargoed or restricted persons or locations, prohibitions against money laundering and/or anti-bribery laws, and structured transactions or tax evasion, the responsibility for which shall lie solely with the participating User(s). Celsius may refuse to perform, block, or otherwise void any assignment that Celsius reasonably believes could violate any law or regulation.

## 16. Taxes

Within Celsius' platform, you will be able to see a record of the transactions related to your use of the Services which you may wish to use for the purposes of making any required tax filings or payments. It is your responsibility to determine what, if any, taxes apply to your use of the Services, and to collect, report, and remit the correct tax to the appropriate tax authority. We may deduct or make any tax withholdings or filings that we are required by law to make, but we are not responsible for determining whether and which taxes apply to your transaction, or for collecting, reporting, or remitting any taxes arising from any transaction or in connection with your Celsius Account. You are responsible for complying with applicable law. You agree that Celsius is not responsible for determining whether or which laws may apply to your transactions, including tax law. You are solely responsible for reporting and paying any taxes arising from your use of the Services.

# 17. Service Activity Statements

We will make all logs and records of activities concerning your use of the Services available to you through our platform only. We do not generate periodic statements showing the activity conducted through your use of the Services. You must examine these logs and records and notify us of any unauthorized use of your Celsius Account or credentials, or any error or irregularity with respect to the records of your use of the Services, within fourteen (14) calendar days after the error occurs. If notice is not received within the fourteen (14) calendar-day period, you will not be able to raise any further claim in this respect.

# 18. Conversion Rates

Any conversion between a Digital Asset and another Digital Asset or Fiat currency shall be made by us in accordance with the rates and prices applicable at the actual time of conversion. Applicable rates are indexed to those used by industry-leading platforms, as we may choose to use from time to time, in our sole discretion. We currently use rates provided by CMC Markets, Coinpaprika, and our own rates as determined by our liquidity providers. We may change these rate sources at any time and without giving notice or updating these Terms, and you shall not have any claims regarding our choice of rate sources or rates used by Celsius or made available by any third party.

# 19. Closing a Celsius Account

A. Celsius' Right to Celsius Account Closure

We have the right to suspend, freeze or close your Celsius Account at any time for any reason without advance notice, including by blocking your access to the Account or the Services. If your Celsius Account has a balance when we close it, we will repay and return the remaining Digital Assets to you, including accrued Rewards earned until the close date, less any applicable Obligations, withholding tax and other applicable deductions, unless prohibited by applicable law. In the event of irregular activity, we may hold assets until we close your Celsius Account. Any Digital Assets that Celsius returns to you will be sent to the designated withdrawal addresses in your user profile on the Celsius platform for each respective Digital Asset you hold. Celsius Accounts are not transferable or assignable in whole or in part. Celsius may be required by law to turn over any Digital Assets related to abandoned or unclaimed Celsius Accounts to the state of your last known residence ("Escheatment"). Escheatment periods vary by jurisdiction, and you are responsible to determine the applicability of such laws in your place of residence. Celsius reserves the right to recover any administrative charges, payments or fees which it may incur in connection with such unclaimed or abandoned Accounts, as permitted by applicable law.


B. Your Right to Close Your Celsius Account

If you want to terminate your Account with Celsius, you may do so by notifying Celsius at support@celsius.network. Once your Celsius Account is closed, you agree: (a) to continue to be bound by these Terms, as required by Section 35 (Survival) (b) to immediately stop using the Services, (c) that we reserve the right (but have no obligation) to delete all of your information and Celsius Account data stored on our servers, and (d) that we shall not be liable to you or any third party for termination of access to the Services or for deletion of your information or Celsius Account data. You acknowledge that any legal

obligations you may have under any other agreement with Celsius or its Affiliates (including any Fiat Loan Agreement or agreement governing lending or investing in Celsius or its Affiliates) will not be affected in any way by the termination of these Terms and any such other agreement between you and Celsius will continue to be in effect in accordance with its terms.

# 20. Liability for Unauthorized Transfers from Your Celsius Account

If you believe that your Celsius Account has been used by an unauthorized party, or if your Service Activity Statements reflect activity or transactions that you did not conduct or authorize, you must notify us IMMEDIATELY via email to security@celsius.network. YOU ARE SOLELY RESPONSIBLE FOR MAINTAINING THE SECURITY AND CONFIDENTIALITY OF YOUR LOGIN DATA, AND YOU ACCEPT ALL RISKS OF UNAUTHORIZED ACCESS AND USE OF YOUR CELSIUS ACCOUNT.

# 21. Eligible Digital Assets

We may, from time to time and in our sole discretion, add and/or remove certain Digital Assets from our list of Eligible Digital Assets. If a Digital Asset is removed, it will no longer be available to be used in connection with our Services. We will notify our Users of our intention to add and/or remove Digital Assets as soon as commercially reasonable. However, under certain circumstances (e.g. for legal reasons) such changes may be required to be made immediately and without prior notice. In the event any Digital Asset ceases to be an Eligible Digital Asset, you will no longer be entitled to receive

any Rewards in connection therewith, or make any other use of it via our Services. We may choose to disallow the use of any Eligible Digital Asset for certain Services, or treat any Digital Asset as an Eligible Digital Asset for certain Users or groups of Users, in our sole discretion.

We may, from time to time, provide certain Services in connection with certain Eligible Digital Assets by different entities within the Celsius group, and any change in and/or assignment of the contracting entity shall not be consider an amendment of these Terms.

## 22. Disclosure of Celsius Account Information

We may disclose information to third parties about you, your Celsius Account, or the transactions you make:

(i) Where it is necessary for the provision of our Services under these Terms;

(ii) In order to verify the existence and condition of your Celsius Account for a third party, such as a referral partner;

(iii) For the purpose of conducting our AML and KYC checks and compliance with applicable laws;

(iv) If you give us written authorization;

(v) In order to comply with any request or order by any government agency or competent court; or

(vi) As described in our Privacy Policy(https://celsius.network/privacy-policy/).

# 23. Conflict/Disputes Involving Your Celsius Account

We are not liable to you for errors that may result in a financial loss to you. We may take any action that is authorized or permitted by these Terms or applicable laws without liability to you, even if such action causes you to incur fees, expenses or damages. If third parties make claims on your Celsius Account, or if we receive conflicting instructions from you, or if we become involved in or concerned about a dispute between you and any third party, we reserve the right to react in ways that we believe in good faith to be appropriate, including by closing, suspending or freezing your Celsius Account, delivering the Digital Assets available therein to you or to any third party, or interpleading assets to court, all as we reasonably deem appropriate under the circumstances. You are liable for all expenses and fees we incur for such conflicts or disputes, including internal costs and attorneys' fees, and we may charge or deduct them directly from your Celsius Account balance.

We are not responsible for delays or losses incurred as a result of an error in the initiation of any transaction and have no obligation to assist in the remediation of such transactions. By initiating any transfer or using Celsius' Services in any way, you attest that you are transacting in an Eligible Digital Asset which conforms to the particular Virtual Wallet into which assets are directed. For example, if you select an Ethereum Virtual Wallet Address to receive assets, you shall be solely responsible to assure that you are initiating a transfer of Ethereum alone, and not any other currency such as Bitcoin or

Ethereum Classic. Celsius incurs no obligation whatsoever with regard to non-Eligible Digital Assets sent to Celsius, or for Eligible Digital Assets sent to an incompatible Virtual Wallet Address. Erroneously transmitted assets will be lost. We recommend users send a small amount of Digital Asset as a test prior to initiating a transfer of a significant amount of Digital Assets.

We reserve the right to limit access to your Celsius Account, which can include temporarily or permanently removing your Celsius Account access via the internet, and/or restricting your Celsius Account, and/or closing your Celsius Account without prior notice to you (unless prior notice is required by law), and we shall have no liability for such actions. In addition, Celsius reserves the right to withhold or delay the transmission of assets to you if you fail to comply with these Terms. Our total aggregate liability to you for any claim is limited to the face value of the applicable item or transaction, or the actual value of any assets not properly credited or debited by us.

## 24. Legal Process Affecting Celsius Account

If any legal action, such as an attachment, garnishment, levy, seizure, third party claim or enforcement action by any competent authority in any jurisdiction ("Legal Process") is brought against or in connection with your Celsius Account, we may refuse to permit (or may limit) withdrawals or transfers from your Celsius Account until the Legal Process is satisfied or dismissed. Regardless of the terms of such Legal Process, we have first claim to any and all assets in your Celsius Account. We will not contest any Legal Process on your behalf, and we may take actions to comply with Legal Process without liability to you, provided that we reasonably believe any such action is appropriate under the circumstances. If we incur any expenses in

connection with any Legal Process, including without limitation reasonable attorneys' fees, we may charge such expenses and fees to any of your Celsius Accounts without prior notice to you, or we may bill you directly for such expenses and fees. Any garnishment or levy against your Celsius Account is subject to our right of setoff and security interest.

## 25. Indemnification and Limitation of Liability; Legal Fees and Costs for Lawsuits

You agree to indemnify and hold harmless Celsius and its Affiliates, and their respective employees, managers, officers, directors, partners and shareholders from any losses, damages, suits and expenses, of whatever kind, including reasonable legal fees, that we incur in connection with or arising out of your access to or use of the Services, or our activities in connection with such Services, and for your breach of these Terms or violation of any law, regulation, order or other legal mandate, or the rights of a third party, or any act or omission by you or any person acting on your behalf while using your Celsius Account, regardless of whether the specific use was expressly authorized by you. You agree to comply with all applicable laws, regulations, or rules, and to not use your Celsius Account or the Services for any transaction or activity that is illegal or violates applicable laws, regulations or rules. Please note, your agreement to comply includes any and all applicable laws and regulations of the United States, as well as of your place of residency, citizenship, business, locality and any law applicable to you.

We are not liable to you for claims, costs, losses or damages caused by an event that is beyond our reasonable control (e.g. the acts or omissions of third parties, natural disaster, emergency conditions, government action,

equipment or communications malfunction). We are not liable for special, incidental, exemplary, punitive or consequential losses or damages of any kind. Except for any setoff permitted by applicable law and Section 9 of these Terms, any obligations of ours may be satisfied solely from the assets of Celsius. Without limiting the generality of the foregoing, in no event shall you have any recourse, whether by setoff or otherwise, with respect to our obligations, to or against any assets of any person or entity other than Celsius, including, without limitation, any member, shareholder, Affiliate, investor, employee, officer, director, agent or advisor of Celsius. For the avoidance of doubt, the foregoing shall not limit any setoff permitted by applicable law and Section 9 of these Terms.

## 26. Disclaimer of Warranty

**THE CELSIUS SERVICES ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT ANY WARRANTY UNDER THESE TERMS AND TO THE EXTENT ALLOWED BY APPLICABLE LAW ALL EXPRESS OR IMPLIED CONDITIONS, REPRESENTATIONS, AND WARRANTIES INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SATISFACTORY QUALITY, OR ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE, OR WARRANTY OF NON-INFRINGEMENT ARE DISCLAIMED. IN NO EVENT SHALL CELSIUS, ITS AFFILIATES AND SERVICE PROVIDERS, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, JOINT VENTURERS, EMPLOYEES OR REPRESENTATIVES, BE LIABLE (A) FOR ANY AMOUNT GREATER THAN THE VALUE OF THE BALANCE OF YOUR CELSIUS ACCOUNT(S) OR (B) FOR ANY LOST PROFITS, DIMINUTION IN**

**VALUE OR BUSINESS OPPORTUNITY, ANY LOSS, DAMAGE, CORRUPTION OR BREACH OF DATA OR ANY OTHER INTANGIBLE PROPERTY OR ANY SPECIAL, INCIDENTAL, INDIRECT, INTANGIBLE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH AUTHORIZED OR UNAUTHORIZED USE OF THE CELSIUS SERVICES OR THE CELSIUS ACCOUNT, OR THESE TERMS, EVEN IF AN AUTHORIZED REPRESENTATIVE OF CELSIUS HAS BEEN ADVISED OF OR KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES.**

CELSIUS MAKES NO REPRESENTATIONS ABOUT THE ACCURACY, ORDER, TIMELINESS OR COMPLETENESS OF HISTORICAL OR CURRENT ELIGIBLE DIGITAL ASSETS PRICE DATA AVAILABLE THROUGH THE CELSIUS SERVICES. CELSIUS WILL MAKE REASONABLE EFFORTS TO ENSURE THAT REQUESTS FOR TRANSACTIONS ARE PROCESSED IN A TIMELY MANNER BUT CELSIUS MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE AMOUNT OF TIME NEEDED TO COMPLETE PROCESSING (WHICH IS DEPENDENT UPON MANY FACTORS, INCLUDING THOSE OUTSIDE OF OUR CONTROL), AND CELSIUS SHALL NOT BE LIABLE FOR ANY LOSSES OR DAMAGES WHICH YOU MAY INCUR AS A RESULT OF ANY DELAY IN THE PROVISION OF THE SERVICES.

# 27. Disputes, Binding Individual Arbitration, and Class Actions and Class Arbitrations Waiver

Disputes. The terms of this Section shall apply to all Disputes between you and Celsius. For the purposes of this Section, "Dispute" shall mean any dispute, claim, or action between you and Celsius arising under or relating to your Celsius Account, the Celsius platform, these Terms, or any other transaction involving you and Celsius, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis, and shall be interpreted to be given the broadest meaning allowable under law.

Binding Arbitration: You and Celsius further agree: (i) to arbitrate all Disputes between the parties pursuant to the provisions in these Terms; (ii) these Terms memorialize a transaction in interstate commerce; (iii) the Federal Arbitration Act (9 U.S.C. § 1, et seq.) governs the interpretation and enforcement of this Section; and (iv) this Section shall survive termination of these Terms. ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED. The arbitrator may award you the same damages and relief as a court sitting in proper jurisdiction could, and may award declaratory or injunctive relief. In addition, in some instances, the costs of arbitration could exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court. The decision of the arbitrator shall be final and enforceable by any court with jurisdiction over the parties.

Small Claims Court. Notwithstanding the foregoing, you may bring an individual action in the small claims court of your state or municipality if the action is within that court's jurisdiction and is pending only in that court.

Dispute Notice. In the event of a Dispute, you or Celsius must first send to the other party a notice of the Dispute that shall include a written statement that sets forth the name, address and contact information of the party giving it, the facts giving rise to the Dispute, and the relief requested (the "Dispute Notice"). The Dispute Notice to Celsius must be addressed to: Celsius Network LLC, 221 River Street, 9th Floor, Hoboken, NJ 07030, United States, with a copy to Legal@celsius.network, or to the most recent email or mailing address we have on file or otherwise in our records for you (the "Celsius Notice Addresses"). Any Dispute Notice to you shall be delivered by one of the communication channels you have provided Celsius, which may include email or other electronic transmission, and you agree that such a delivery of a Dispute Notice to you shall be sufficient. Should you require to obtain a Dispute Notice by any other communication channel, you must inform Celsius of such a requirement in writing. Following submission and receipt of the Dispute Notice, you and Celsius each agree to act in good faith to seek to resolve the Dispute before commencing arbitration. If Celsius and you do not reach an agreement to resolve the Dispute within sixty (60) days after the Dispute Notice is received, you or Celsius may commence an arbitration proceeding pursuant to this Section.

**WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS. YOU AND CELSIUS AGREE THAT EACH PARTY MAY BRING DISPUTES AGAINST THE OTHER PARTY ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, INCLUDING WITHOUT LIMITATION FEDERAL OR STATE CLASS ACTIONS, OR CLASS ARBITRATIONS. ACCORDINGLY, UNDER THE ARBITRATION PROCEDURES OUTLINED IN THIS SECTION, AN ARBITRATOR SHALL NOT COMBINE OR CONSOLIDATE MORE THAN ONE PARTY'S CLAIMS WITHOUT THE**

**WRITTEN CONSENT OF ALL AFFECTED PARTIES TO AN ARBITRATION PROCEEDING. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, YOU AND CELSIUS AGREE THAT NO DISPUTE SHALL PROCEED BY WAY OF CLASS ARBITRATION WITHOUT THE WRITTEN CONSENT OF ALL AFFECTED PARTIES.**

Arbitration Procedure. If a party elects to commence arbitration, the arbitration shall be governed by the rules of the American Arbitration Association ("AAA") that are in effect at the time the arbitration is initiated (the "AAA Rules"), available at https://web.archive.org/web/20210722164416/https://www.adr.org/Rules or by calling 1-800-778-7879, and under the rules set forth in these Terms, except that AAA may not administer any multiple claimant or class arbitration, as the parties agree that the arbitration shall be limited to the resolution only of individual claims. If there is a conflict between the AAA Rules and the rules set forth in these Terms, the rules set forth in these Terms shall govern. You may, in arbitration, seek any and all remedies otherwise available to you pursuant to federal, state, or local laws. All Disputes shall be resolved by a single neutral arbitrator, and both parties shall have a reasonable opportunity to participate in the selection of the arbitrator as provided in the AAA Rules. The arbitrator is bound by these Terms. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to, any claim that all or any part of these Terms is void or voidable. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction. You may choose to engage in arbitration hearings by telephone or by

videoconference. Hearings in any arbitration commenced by you that are not conducted by telephone or videoconference shall take place in New York, New York, unless there is a location in the continental United States more convenient to you, in which case the arbitration shall take place either in New York, New York, or such other location in the continental United States, at your option.

Initiation of Arbitration Proceeding. If either you or Celsius decide to arbitrate a Dispute, we agree to the following procedure:

Write a Demand for Arbitration. The demand must include a description of the Dispute and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at https://www.adr.org/Forms?practice=all ("Demand for Arbitration").

Send one copy of the Demand for Arbitration, plus the appropriate filing fee, to:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

OR

File online using AAA WebFile at https://www.adr.org

OR

File at any of the AAA's offices.

Send one copy of the Demand for Arbitration to the other party at the same
address as the Dispute Notice, or as otherwise agreed to by the parties.

Hearing Format. In all hearing formats, the arbitrator shall issue a written
decision that explains the essential findings and conclusions on which an
award, if any, is based. During the arbitration, the amount of any settlement
offer made by Celsius or you shall not be disclosed to the arbitrator.

The discovery or exchange of non-privileged information relevant to the
Dispute may be allowed during the arbitration as determined by the Arbitrator
in accordance with AAA Rules.

Arbitration Fees. With respect to any Dispute where the amount claimed is
$20,000 U.S. or less (or the equivalent amount in a different currency,
whether fiat or otherwise), Celsius shall pay, or (if applicable) reimburse you
for, all fees paid or payable to AAA, including filing, administration, and
arbitrator fees ("Arbitration Fees") for any arbitration commenced between
Celsius and you (and whether initiated by Celsius or by you) pursuant to
provisions of these Terms. You are responsible for all costs that you incur in
connection with the arbitration other than Arbitration Fees, including without
limitation, fees for attorneys or expert witnesses. You must reimburse Celsius
any Arbitration Fees if (i) Celsius is the prevailing party in the arbitration or (ii)
you withdraw the arbitration.

Opt-out. You may elect to opt-out (exclude yourself) from the final, binding
individual arbitration procedure and waiver of class and representative
proceedings specified in these Terms by sending a written letter to the Celsius
Notice Address within thirty (30) days of your initial assent to these Terms

(including your first use of your Celsius Account or the Celsius platform) that specifies: (i) your name; (ii) your mailing address; and (iii) your request to be excluded from the final, binding individual arbitration procedure and waiver of class and representative proceedings specified in this Section. In the event that you opt-out consistent with the procedure set forth above, all other terms shall continue to apply.

Amendments to this Section. Notwithstanding any provision in these Terms to the contrary, you and Celsius agree that if Celsius makes any future amendments to the dispute resolution procedure and class action waiver provisions (other than a change to Celsius' address) in these Terms, Celsius will notify you and you will have thirty (30) days from the date of notice to affirmatively opt-out of any such amendments by sending a written letter to the Celsius Notice Address within thirty (30) days of Celsius' notification that specifies: (i) your name; (ii) your mailing address; and (iii) your request to opt-out of such amendments. If you affirmatively opt-out of any future amendments, you are agreeing that you will arbitrate any Dispute between us in accordance with the language of this Section as stated in these current Terms, without any of the proposed amendments governing. If you do not affirmatively opt-out of any future amendments, you will be deemed to have consented to any such future amendments.

Severability. If any provision in this Section is found to be unenforceable, that provision shall be severed with the remainder of these Terms remaining in full force and effect. The foregoing shall not apply to the prohibition against class or representative actions; if the prohibition against class or representative actions is found to be unenforceable, this entire Section shall be null and void. The terms of this Section shall otherwise survive any termination of these Terms.

Exclusive Venue for Proceedings in Connection with Arbitration. Celsius and you agree that any proceeding to compel arbitration, confirm an award, or to seek interim or other relief in aid of arbitration, may be filed only in the competent state or federal courts located in New York County, New York.

# 28. Our Ownership of the Services and Celsius' Intellectual Property (IP)

You agree and acknowledge that we own all right, title and interest to and in the Services, the associated software, technology tools and content, the Celsius Network website, any logos, identifying marks, images, illustrations, designs, icons, photographs, videos, text and other written and multimedia materials, the content displayed on the website or platform, and other materials produced by and related to Celsius (collectively, the "Celsius IP"). You acknowledge and agree that no proprietary rights are being transferred to you in such materials or information, and that you have no intention of using such materials or information inappropriately or to in any way harm Celsius or any of its affiliates, directors, officers or employees. You shall not prepare any derivative work based on the Celsius IP, nor shall you translate, reverse engineer, decompile or disassemble the Celsius IP.

# 29. Communications

We may record and monitor our telephone conversations with you and your electronic communications with us (chat, email, and other forms of electronic exchange). Unless the law requires otherwise, you consent in advance to such recording and monitoring and we do not need to remind you of these

activities. You must promptly notify us of any change in your contact information, including residential post and email address. Failure to notify us in a timely fashion may result in delay or non-receipt of notices or correspondence.

## 30. Waiver

We may delay the exercise of any rights we have under these Terms, and any such delay shall not result in a waiver, relinquishment or modification of any of our rights. If we delay in any exercise of our rights, or if notwithstanding the foregoing Celsius somehow is deemed to have waived any of our rights, you are still obligated to pay us Obligations you may owe us, remove any violation of these Terms and/or otherwise follow our instructions (as applicable). Any delay or waiver of our rights applies only to the specific instance in which we decide to delay or waive the provision and does not affect our other or subsequent rights in any way.

## 31. Changes in Terms

Please be aware that the terms and conditions governing the Services can change over time. We reserve the right to discontinue or make changes to any of the Services. We may change these Terms, and we may add to or delete from these Terms, and the updated version will supersede all prior versions. We will provide notice of changes, additions, and deletions, as required by law. If we have provided advance notice and you do not agree with a change, you may close your Celsius Account(s) and demand repayment of outstanding loans before the effective date of the change, which shall be your sole

remedy. The continued maintenance of your Celsius Account following the effective date of any change will constitute your acceptance of such change and subject your Celsius Account to the modified Terms.

# 32. Assignment

These Terms, or any of the rights and/or obligations provided hereunder, may not be assigned or otherwise transferred by you to any other person or Entity, whether by operation of law or otherwise, without Celsius' express written consent, and any attempted assignment in violation of this prohibition shall be void ab initio and of no effect. Celsius may assign or transfer these Terms and/or any or all of its rights and/or obligations hereunder at any time to any Affiliate of Celsius, with or without providing you with prior notice of the same. Celsius may assign or transfer these Terms and/or any or all of its rights and/or obligations hereunder at any time to any third party by providing prior notice. Any permitted assignment or transfer of or under these Terms shall be binding upon, and inure to the benefit of the successors, executors, heirs, representatives, administrators and permitted assigns of the parties hereto.

# 33. Governing Law and Venue

The relationship between you and Celsius is governed exclusively by the laws of the state of New York, without regard to its conflict of law provisions (other than Sections 5-1401 and 5-1402 of the New York General Obligations Law). Any dispute arising out of, or related to, your Celsius Account or relationship with Celsius must be brought exclusively in the competent courts located in New York, NY and the US District Court located in the Borough of Manhattan;

however, Celsius may bring equitable relief or collections actions in any applicable jurisdiction.

## 34. Force Majeure

We will not be liable for delays in processing or other non-performance caused by such events as fires, telecommunications, utility, or power failures, equipment failures, labor strife, riots, war, nonperformance of our vendors or suppliers, acts of God, pandemic or epidemic events, or other causes over which we have no reasonable control.

## 35. Survival

The provisions of Sections 16 (Taxes), 25 (Indemnification), 26 (Disclaimer of Warranty), 27 (Disputes, Binding Individual Arbitration, and Class Actions and Class Arbitrations Waiver), 28 (Our Ownership of the Services and Celsius IP), 30 (Waiver) and 33 (Governing Law and Venue) shall survive the termination of these Terms.

# Appendix A
### Binance Coin (BNB)

### Terra (LUNA)

### Ripple (XRP)

# Exhibit C

# Terms of Use

Last updated: June 15, 2020

## Celsius Network Terms Of Use

**TERMS UPDATED ON June 15, 2020**

1. Introduction

Celsius Network Limited ("**we**", "**our**", "**us**", "**Celsius**", or the "**Company**") provides the following Terms of Use (the "**Terms**") that apply to our users (each, "**you**" or "**User**") when using or purchasing Celsius' products and services through our mobile application, our website, or any other online services we provide (collectively, the "**Services**"). The Services are provided solely for use by you, and your use of the Services is expressly conditioned on your consent to, and compliance with, these Terms. By accessing or using our Services, you agree to be bound by these Terms. If you do not agree to any of the provisions of these Terms you should immediately stop using the Services. In addition, our Privacy Policy is set forth here: https://celsius.network/privacy-policy/ and is incorporated into these Terms in its entirety. We encourage you to read these Terms carefully and use them to make informed decisions.

Celsius Network is the next generation of Digital Assets-related services, serving as a value-driven lending and borrowing platform for all members of the Celsius Network community. Celsius Network allows Users to take advantage of a variety of services, all in accordance with applicable law and regulation, including:

- Become members in the Celsius platform and community;
- Become members in the Celsius platform and community;
- Hold your Digital Assets in the Celsius wallet and gain rewards;
- Apply for dollar loans with Digital Assets as collateral; and
- Instantly transfer Digital Assets to other Users through our innovative CelPay feature.

Celsius Network is built around the Celsius Token ("CEL") that allows Users to take advantage of different utilities, primarily to gain better terms and opportunities when using Celsius' Services.

## 2. Definitions

Capitalized terms shall have the meanings assigned to them in these Terms, unless the context requires otherwise.

"**Affiliate**" means an entity that owns or controls, is owned or controlled by, or is or under common control or ownership with a party, where control is defined as the direct or indirect power to direct or cause the direction of the management and policies of such party, whether through ownership of voting securities, by contract, or otherwise.

"**AML**" stands for Anti-Money Laundering, which means a set of procedures, laws, and regulations that are intended to stop the practice of generating income through illegal actions.

"**Blockchain**" means a system in which records of transactions made in Digital Assets are maintained across several computers that are linked in a peer-to-peer network.

"**Digital Asset**" means a digital representation of value in which encryption techniques are used to regulate the generation of digital units and verify the transfer of assets, operating independently from a central bank.

"**Eligible Digital Assets**" means the types of Digital Assets we may choose to accept and support from time to time, which are subject to change in our sole discretion, based on business and regulatory considerations.

"**Fiat**", when used in reference to money or currency, means any money that a recognized government declares as legal tender, and has value only because such government maintains its value.

"**KYC**" stands for Know Your Customer (or Client), which means the process of a business verifying the identity of its customers or clients and assessing potential risks of illegal intentions for the business relationship.

"**Pegging**" is the practice of fixing the exchange rate of one currency to the value of another currency or asset.

"**Stablecoin**" means a Digital Asset that is Pegged to a distinct asset.

## 3. Eligibility and Proof of Identity

You must be at least eighteen (18) years old to open a Celsius Account ("**Account**"). Celsius is not obligated to accept any application from any applicant and has sole and absolute discretion to accept or reject applications to open Accounts. Celsius has no responsibility or liability towards any applicant unless and until Celsius

provides written confirmation that an Account has been opened for such an applicant.

Celsius Accounts are not available where prohibited by law or by Celsius policy, as updated from time to time; currently, such places include the countries of Iran, North Korea, Sudan, South Sudan, Syria, Cuba, or any other country against which the United States, the United Kingdom or the European Union imposes financial sanctions or embargoes.

Be advised that in some jurisdictions, due to regulatory considerations, Celsius may not provide part or all of the Services, which may include some Eligible Digital Currencies or the CEL token.

Due to changing regulatory requirements and interpretations in the Digital Assets markets, Celsius will use its sole and absolute discretion to revise the list of prohibited jurisdictions and/or reject specific applications to open Accounts and/or use part or all of the Services, where Celsius determines that regulatory or policy reasons prevent Celsius from being able to offer its Services.

Celsius registered as a Money Service Business ("MSB") on April 15, 2018 with FinCEN registration number 31000122237406. As an MSB, Celsius is required to comply with the Bank Secrecy Act ("BSA"), which established requirements for recordkeeping and reporting suspicious transactions. User records and transaction history must be retained by Celsius for a period of five (5) years (seven years for New York users) after the termination of the business relationship (or the refusal to establish the business relationship), unless otherwise required by applicable law. Celsius is required to comply with applicable Anti Money Laundering ("AML") and Know Your Client ("KYC") requirements before and after you open an Account. When you apply to open an Account, we will ask for documentation and information, including but not limited to copies of your government-issued identification document (*e.g.* Passport, driver's license). For corporate accounts, we may require identification information related to the directors, officers, or equity owners of the business.  We may also use information from third parties to help us confirm your identity and/or determine if we should open or maintain your Account. You represent and warrant at all times that any and all information provided by you to us is true, accurate, and not misleading in any respect. If any such information changes, it is your obligation to provide the new information to us as soon as practicable following such change.


4. Nature of e-Services

Celsius' Services allow you to review your Account and conduct certain transactions online. You are solely responsible for the activities under your Account and for securing your Account IDs, passwords, hints, or any other codes

that you use to access your Account and the Services. Celsius is not responsible for any loss or compromise of your access information and/or your personal information, or for any loss that you may sustain due to compromise of your access information and/or personal information.

We will not be liable for following any instruction we receive through your Account, even if it was not authorized by you, or if it was entered by mistake or is otherwise inaccurate. To verify the authenticity of any instruction we receive through your Account, we may require your signature or identification in any form we deem necessary; at our sole discretion, we may accept digital images and electronic signatures for documents that need to be signed. You agree to reimburse us (and we may charge your Account) for all claims, costs, losses and damages, including reasonable attorneys' fees, that result from our following your instructions to take any action related to your Account.

## 5. Account Types

### A) Individual Account

This Account is owned by only one natural person who is and will continue to be the only person authorized to take any action in the Account. By opening an Individual Account, you represent and warrant that you are and shall at all times continue to be the sole beneficial owner of the Account and user of all Services facilitated or generated therefrom.

### B) Corporate Account

This Account is owned by a corporation, unincorporated association, a company, a partnership, fiduciary, sole proprietorship or other legally recognized group (interchangeably defined as an "**Entity**") holding an Account in any capacity other than an individual capacity. An Entity can apply to open an Account through any natural person(s) who is duly authorized by the Entity to do so (an "**Authorized Representative**").

Such Authorized Representative represents and agrees, on behalf of the Entity, as well as on his or her own behalf, that he or she:

(i) is fully authorized to execute all documents or otherwise complete our requirements in his or her stated capacity;

(ii) has provided us all documents or other information necessary to demonstrate that authority; and

(iii) will provide other documents and complete other requirements as we may request from time to time.

We may refuse to recognize any such authorization if, in our reasonable judgment, it appears to be incomplete or improperly executed.

By opening a Corporate Account, the Authorized Representative  represents and warrants on behalf of the Entity that the Entity is and shall at all times continue to be the sole beneficial owner of the Account and user of all Services facilitated or generated therefrom and that the ultimate beneficial owners of all assets and assets belonging to the Entity are as represented during the establishment of the Account.

## 6. Authorized Users

For both Individual Accounts and Corporate Accounts, we may follow any instructions regarding your Account provided that we reasonably believe such instructions are authorized by the Account holder.

## 7. Contributions

All contributions to your Account must consist of Eligible Digital Assets and must be transferred to the wallet address provided in your Celsius Account (or as otherwise notified by us to you). We reserve the right to reject any transaction, and/or the right to return any Digital Asset already made, each at your expense. Any Digital Asset received will be treated by us as being received at the date and time stamped on the blockchain confirmation.

## 8. Ownership of Digital Assets

You hereby represent and warrant to us at all times during which you hold Digital Assets in your Account that any Digital Asset used by you in connection with your Account is owned by you or that you are validly authorized to carry out transactions using such Digital Assets, and that all transactions initiated with your Account are for your own Account and not on behalf of any other person or entity. You further represent and warrant that all such Digital Assets are free from any claims, indebtedness, liens, or third-party interests.

## 9. Setoff and Security Interest Rights

You grant us a security interest in any and all of your Accounts for debts, amounts owed, or liabilities incurred ("**Obligations**") to us or any of our affiliates by any owner of any of your Accounts. Obligations may include both secured and

unsecured debts, and Obligations you owe individually or together with someone else, including Obligations under other transactions or agreements between you and us or any of our Affiliates.

We may take or set off assets in any or all of your Accounts, or transfer assets between any or all of your Accounts with us or any of our Affiliates for direct, indirect, and acquired Obligations that you owe us or our Affiliates, including any balances as a result of not having sufficient assets available, regardless of the source of assets in an Account. These rights are in addition to other rights we have to take, transfer, or charge assets in your Accounts for Obligations you owe us or our Affiliates.

Your acceptance of these Terms serves as your consent to Celsius' asserting its security interest or exercising its right of setoff should any laws governing your Account require your consent. If the law restricts our ability to take, transfer, or setoff assets in your Account, or if some Digital Assets are protected from attachment, levy, or legal process, you waive those conditions and limits to the full extent that you may do so by contract, and you authorize us to apply assets in any or all of your Accounts to your Obligations.

We hereby agree that, to the extent permitted by applicable law, you may take or set off assets in your Account, or any amounts we owe you with respect thereto, against the Obligations. If the law restricts your ability to take, transfer, or setoff assets in your Account, or if some Digital Assets are protected from attachment, levy, or legal process, we waive those conditions and limits to the full extent that we may do so by contract, and we authorize you to apply assets in any or all of your Accounts to your Obligations.


10. Risk Disclosure

These Terms and the holding of Digital Asset relationship does not create a fiduciary relationship between us and you; your Account is not a checking or savings account, and it is not covered by insurance against losses. We may lend, sell, pledge, hypothecate, assign, invest, use, commingle or otherwise dispose of assets and Eligible Digital Assets to counterparties or hold the Eligible Digital Assets with counterparties, and we will use our best commercial and operational efforts to prevent losses.

ELIGIBLE DIGITAL ASSETS ARE NOT LEGAL TENDER. CELSIUS IS NOT A DEPOSITORY INSTITUTION, AND YOUR CELSIUS WALLET IS NOT A DEPOSIT ACCOUNT. ELIGIBLE DIGITAL ASSETS IN YOUR CELSIUS WALLET ARE NOT INSURED BY THE FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC) OR THE SECURITIES INVESTOR PROTECTION CORPORATION (SIPC).

Legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of Digital Assets. Transactions in Digital Assets may be irreversible, and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable. Any secured account maintained by Celsius for the benefit of its customers may not be sufficient to cover all losses incurred by customers.

The value of Digital Assets may be derived from the continued willingness of market participants to exchange Digital Assets for Fiat currencies or other Digital Assets. If such willingness is abolished for any reason, this may result in the potential for a permanent and total loss of value of a particular Digital Asset.

The volatility and unpredictability of the price of Digital Assets may result in significant loss over a short period of time. The nature of Digital Assets may lead to an increased risk of fraud or cyber-attack, including rollback attacks or Blockchain reorganizations. The nature of Digital Assets means that any technological difficulties experienced by Celsius may prevent the access or use of your Digital Assets and/or cause losses of Digital Assets.

Although Celsius takes precautionary measures to protect against cyber threats, circumstances may arise where losses or damages incur. In that event, you authorize Celsius to use Eligible Digital Assets to absorb the remaining losses.

In light of these risks, which are only some of the risks involved in using the Services and holding or trading in Digital Assets, and do not constitute an exhaustive list of such risks, you should carefully consider whether holding or trading Digital Assets in general and/or using our Services is suitable for you in light of your financial condition.


## 11. Holding Eligible Digital Assets

You can hold Eligible Digital Assets to your Account by transferring Eligible Digital Assets to the address provided by Celsius. The transfer of such Eligible Digital Assets to your Account will not be deemed settled and completed until the blockchain transaction is deemed confirmed to the relevant address.


## 12. Withdrawals

You may make a complete or partial withdrawal of Eligible Digital Assets from your Account at any time. Celsius initiates the withdrawal process immediately following a withdrawal request when possible; however, we may require up to three (3) days after you submit your withdrawal request to process the withdrawal.

For every withdrawal request, you will be required to provide the details of the wallet to which you wish to transfer your Digital Assets. In the event that the details you provide are inaccurate, incomplete or misleading, your Digital Assets may be permanently lost. We will not be liable for any loss that results from inaccurate, incomplete or misleading details that you may provide for such transfer. If the transfer address you specify is one to which we are unable to process transfers, we will have no liability for any resulting failure or delay in processing your requested withdrawal.

Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions s either temporarily or permanently. Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions. Withdrawal limits based on amounts and/or frequency may apply from time to time and will be described in your Account interface. Users can withdraw any amount at any time; however, our policies may require additional security checks that require up to 48 hours to complete. Any individual request to exceed withdrawal limits set by Celsius must be sent via email to app@celsius.network.

Every transmission request shall be deemed pending until accepted by us. We may refuse to accept such request, or delay the processing of an approved request for any reasonable reason, including but not limited to insufficient assets in your Account, inaccurate or misleading information provided by you, or any doubt or suspicion of money laundering or other financial crime related to your Account.

Where you transmit only a part of the Eligible Digital Assets available in your Account, the transmitted Eligible Digital Assets will include first the principal amount (*i.e.* assets transmitted by you) and only after these are transmitted in full, any paid rewards may be transmitted.

13. How Rewards Are Calculated and Earned

All Eligible Digital Assets that (1) are not being used as collateral for loans; (2)  were not transferred to another Celsius user using CelPay, and (3) were not requested for external transmission (Eligible Digital Assets meeting each of these three criteria, "Held Digital Assets") entitle you to rewards while held with Celsius. Held Digital Assets in suspended accounts, for legal or other reasons, are not eligible for rewards.

We occasionally update our rates and the rate changes are based on market conditions. Rewards will be payable in arrears and added to your Account weekly. We calculate the rewards on your Held Digital Assets based on market demand.

Interest is gained based on a daily periodic rate to the Held Digital Assets in the Account. The daily periodic rate is calculated by dividing the applicable interest rate (APR) by three hundred sixty-four (364) days; then it is further divided down to the hour, minute, and second of that day. Held Digital Assets, including those received as reward from previous weeks, will begin gaining rewards according to the hour, minute, and second on the timestamp verifying the completion of the applicable transaction and shall cease and/or decrease the amount paid as rewards at the moment when the User has entered an external transmission and/or transfer (via CelPay) request. Therefore, any Eligible Digital Asset made mid-week will receive rewards with no distinction, based on the interest calculated for the relative time within the allocation period.

We will credit your Account with the rewards earned for the previous week on or around the first business day of each week. Your Account must be open on the date the credit is earned for you to receive the applicable rewards. All rewards will be paid in-kind (in the same Eligible Digital Asset that is available in your Account) or, subject to your in-app choice and regulatory and business considerations, in CEL. To make such in-kind interest payments as accurately as possible, Celsius rounds non-integer, rational numbers to the sub-cent, which is the smallest possible decimal available for the applicable Eligible Digital Asset.

For users who are citizens or legal residents of the United States, Celsius requires your Taxpayer ID (TIN) or Social Security Number (SSN) to be updated in your Celsius user profile in order to gain rewards on your Held Digital Assets. Celsius is not obligated to credit your Account retroactively with rewards that would have been gained if you had otherwise updated your profile with your TIN or SSN.

If for any regulatory or legal reason we are limited in the rewards rate we may offer you (or if we are completely restricted from paying any rewards to you whatsoever), the rewards to which you shall be entitled will be limited accordingly. Based on our reasonable interpretation of legal requirements, without prior notice, we may limit the rewards to which you will be entitled.

## 14. Consent to Celsius' Use of Your Digital Assets

In consideration for the rewards earned on your Account and the use of our Services, you grant Celsius the right, subject to applicable law, without further notice to you, to hold the Digital Assets available in your account in Celsius' name or in another name, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or

together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets. You acknowledge that with respect to assets used by Celsius pursuant to this paragraph:

(i) You may not be able to exercise certain rights of ownership;

(ii) Celsius may receive compensation in connection with lending or otherwise using Digital Assets in its business to which you have no claim or entitlement;

(iii) Celsius borrowers may default partially or entirely, which can result in partial or total loss of your coins. In that event, you authorize Celsius to use Eligible Digital Assets to absorb the remaining losses;

(iv) Celsius may use your Eligible Digital Assets as collateral to borrow other digital or fiat assets in different jurisdictions around the world. While such borrowing are for the purpose of optimizing the returns to all members, Celsius may experience losses or partial recovery of such collateral in certain situations.

(v) You authorize Celsius to use Eligible Digital Assets to absorb the remaining losses; and,

(vi) Celsius may lend your coins to exchanges, hedge   and other counterparties, which may provide full or partial collateral for any coin or fiat loan.


15. Hard Forks

Any Blockchain may undergo software updates from time to time, which will result in a permanent divergence in the Blockchain (a "**Hard Fork**"). The result is such Blockchain will split into two separate and distinct Blockchains, and any Digital Asset on that original Blockchain may entitle its holders to a new type of Digital Asset (the "**New Currency**"). Due to the administrative complexity of being the repository for a hard-forked Digital Asset, the support of any New Currency in your Account is solely at the discretion of Celsius. If we make no public announcement regarding an anticipated Hard Fork, we will not support the New Currency and will be an unsupported currency ("Unsupported Currencies)"), in which case all Accounts will be denominated in the legacy Digital Asset and all rewards will accrue in the legacy Digital Asset. You agree that Celsius assumes no responsibility whatsoever with respect to those Unsupported Currencies and You will not be able to recover the Unsupported Currencies from Celsius. Celsius assumes absolutely no responsibility whatsoever with respect to Unsupported Currencies.

In the event that a Hard Fork achieves the required consensus, it is possible that we will only support the New Currency and will discontinue our support of the legacy Digital Asset. In the event of a Hard Fork that entitles you to a New Currency, you are advised to withdraw the applicable Digital Assets from your Account prior to the date of the Hard Fork. Celsius is not obligated in any way to monitor or maintain balances of New Currency issued to holders of the applicable Digital Assets upon a Hard Fork, or to credit you for the value of such New Currency. In the event you wish to receive New Currency issued upon a Hard Fork, you are advised to withdraw the applicable Digital Assets from your Account prior to the date of the Hard Fork. All determinations regarding Hard Forks shall be made by Celsius in its sole and absolute discretion and in accordance with applicable law.

## 16. CelPay

CelPay is Celsius' proprietary Digital Asset payment tool for mobile applications. CelPay allows you to send payments in supported Digital Assets (currently BTC and ETH) to other registered Users.

By using our CelPay feature, you understand and acknowledge that:

(i) transfers of Eligible Digital Assets by CelPay are not recorded on any blockchain, but rather on Celsius' books;

(ii) any payment sent to the wrong User may be irrevocably lost, and it is your sole responsibility to make sure you provide the correct address;

(iii) the completion of a transfer may not be immediate, and it may take some time before the transfer is processed and the payee's account is credited;

(iv) use of the CelPay feature is subject to limitations on amounts transferred, as determined in Celsius' reasonable discretion from time to time;

(v) all CelPay transfers are final and irreversible;

(vi) you are familiar with the person to whom payment is made, and that such payment is not made for any illicit or illegal purpose.

Celsius does not accept any liability for transfers or attempted transfers would violate any law or regulation, including without limitation, KYC requirements, embargoed or restricted persons or locations, prohibitions against money laundering and/or anti-bribery laws, and structured transactions or tax evasion, and Celsius may refuse to perform, block, or otherwise void any transfers that Celsius reasonably believes could violate any law or regulation.

## 17. Taxes

Within Celsius' platform, you will be able to see a record of the transactions related to your Account which you may wish to use for the purposes of making any required tax filings or payments. It is your responsibility to determine what, if any, taxes apply to the payments you make or receive, and to collect, report, and remit the correct tax to the appropriate tax authority. We may deduct or make any tax withholdings or filings that we are required by law to make, but we are not responsible for determining whether taxes apply to your transaction, or for collecting, reporting, or remitting any taxes arising from any transaction. You are responsible for complying with applicable law. You agree that Celsius is not responsible for determining whether or which laws may apply to your transactions, including tax law. You are solely responsible for reporting and paying any taxes arising from your Account.

## 18. Account Statements

We will make all logs and records of activities concerning your Account available to you through our mobile application only. We do not generate periodic statements showing the activity on your Account. You must examine these logs and records and notify us of any unauthorized use or any error or irregularity on your Account within fourteen (14) calendar days after the error occurs. If notice is not received within the fourteen (14) calendar-day period, you will not be able to raise any further claim in this respect.

## 19. Conversion Rates

Any conversion between a Digital Asset and another Digital Asset shall be made by us in accordance with the rates and prices applicable at the actual time of conversion. Applicable rates are indexed to those used by industry-leading platforms, as we may choose to use from time to time, in our sole discretion. We currently use rates provided by CMC Markets, Coinpaprika and our own rates as determined by our liquidity providers. We may change these rate sources at any time and without giving prior notice or updating these Terms, and you shall not have any claims regarding our choice of rate sources or rates made available by any third party.

## 20. Closing an Account

(i) Celsius Right to Account Closure- We have the right to close your Account at any time for any reason without advance notice. If your Account has a balance when we close it, we will return the remaining Digital Assets to you, including accrued rewards earned until the close date, less any applicable penalty, withholding tax and other applicable deductions, unless prohibited by applicable law. In the event of irregular activity, we may hold your assets until we close your account. Any Digital Assets that Celsius returns to you will be sent to the designated withdrawal addresses in your user profile on the Celsius platform for each respective Digital Asset you hold. Accounts are not transferable or assignable in whole or in part. Celsius may be required by law to turn over the assets in abandoned or unclaimed customer accounts to the state of your last known residence ("**Escheatment**"). Escheatment periods vary by jurisdiction, and you are responsible to determine the applicability of such laws in your place of residence. Celsius reserves the right to deduct a dormancy fee or other administrative charges from such unclaimed or abandoned Digital Assets, as permitted by applicable law.

(ii) Right to Close Your Account- If you want to terminate your Account with Celsius, you may do so by notifying Celsius at support@celsius.network. Once your Celsius Account is closed, you agree: (a) to continue to be bound by these Terms, as required by Section 36 (Survival) (b) to immediately stop using the Services, (c) that we reserve the right (but have no obligation) to delete all of your information and account data stored on our servers, and (e) that we shall not be liable to you or any third party for termination of access to the Services or for deletion of your information or account data. You acknowledge that any legal obligations you may have under any other agreement with Celsius (including any loan agreement or agreement governing lending or investing in Celsius or its affiliates) will not be affected in any way by the termination of the Terms and any such other agreement between you and Celsius will continue to be in effect in accordance with its terms.

## 21. Liability for Unauthorized Transfers from Your Account

You must notify us IMMEDIATELY via email to security@celsius.network if you believe that an electronic transfer has been made without your permission, or if your statement shows transfers that you did not make. **YOU ACCEPT ALL RISKS OF UNAUTHORIZED ACCESS AND USE OF YOUR ACCOUNT**.

## 22. Eligible Digital Currency

22-10964-mg    Doc 3952    Filed 08/12/24    Entered 08/12/24 22:30:09    Main Document
Pg 106 of 264

22-10964-mg    Doc 3352-2    Filed 08/12/24    Entered 08/12/24 22:30:09    Exhibit Ent
The Stipulation    Pg 106 of 264    Page 84 of 105

We may, from time to time and in our sole discretion, add and remove certain Digital Assets from our list of Eligible Digital Currencies. If a Digital Asset is removed, it will no longer be available to be used via our Services. We will notify our Users of our intention to add and/or remove Digital Assets as soon as commercially reasonable. However, under certain circumstances (*e.g.* for legal reasons) such changes may be required to be made immediately and without prior notice. In the event any Digital Asset ceases to be an Eligible Digital Asset, you will no longer be entitled to receive any rewards accrued on it or make any other use of it via our Services.

## 23. Disclosure of Account Information

We may disclose information to third parties about you, your Account, or the transfers you make:

(i) Where it is necessary for the provision of our Services under these Terms;

(ii) In order to verify the existence and condition of your Account for a third party, such as a referral partner;

(iii) For the purpose of conducting our AML and KYC checks;

(iv) If you give us written authorization;

(v) In order to comply with any request or order by any government agency or competent court; and

(vi) As described in our Privacy Policy (https://celsius.network/privacy-policy/).

## 24. Conflict/Disputes Involving Your Account

We are not liable to you for errors that do result in a financial loss to you. We may take any action that is authorized or permitted by these Terms without liability to you, even if such action causes you to incur fees, expenses or damages. If third parties make claims on your Account, or if we receive conflicting instructions from you, or if we become involved in or concerned about a dispute between you and any third party, we reserve the right to react in ways that we believe in good faith to be appropriate, including by closing your Account and returning the Digital Assets available therein, or interpleading assets to court. You are liable for all expenses and fees we incur for such conflicts or disputes, including internal costs and attorneys' fees, and we may charge or deduct them directly from your Account.

We are not responsible for delays or loss incurred as a result of an error in the initiation of the transaction and have no obligation to assist in the remediation of

such transactions. By initiating a transfer, you attest that you are transacting in an Eligible Digital Currency which conforms to the particular Celsius account into which assets are directed. For example, if you select an Ethereum wallet address to receive assets, you attest that you are initiating a transfer of Ethereum alone, and not any other currency such as Bitcoin or Ethereum Classic. Celsius incurs no obligation whatsoever with regard to Unsupported Currencies sent to a Celsius account or Eligible Digital Currency sent to an incompatible Eligible Digital Currency account. Erroneously transmitted assets will be lost. We recommend customers send a small amount of Eligible Digital Currency as a test prior to initiating a send of a significant amount of Eligible Digital Currency.

**We reserve the right to limit access to your Accounts, which can include temporarily or permanently removing your Account access via the internet, and/or restricting your Account, and/or closing your Accounts without prior notice to you (unless prior notice is required by law), and we shall have no liability for such actions. In addition, Celsius reserves the right to withhold or delay the transmission of assets belonging to you if you fail to comply with these Terms. Our total aggregate liability to you for any claim is limited to the face value of the applicable item or transaction, or the actual value of any assets not properly credited or debited.**


25. Legal Process Affecting Accounts

If legal action such as an attachment, garnishment, levy, or other state or federal legal process ("**Legal Process**") is brought against or in connection with your Account, we may refuse to permit (or may limit) withdrawals or transfers from your Account until the Legal Process is satisfied or dismissed. Regardless of the terms of such Legal Process, we have first claim to any and all assets in your Account. We will not contest any Legal Process on your behalf, and we may take actions to comply with Legal Process without liability to you, provided that we reasonably believe any such action is appropriate under the circumstances. If we incur any expenses in connection with any Legal Process, including without limitation reasonable attorneys' fees, we may charge such expenses and fees to any of your Accounts with us without prior notice to you, or we may bill you directly for such expenses and fees. Any garnishment or levy against your Account is subject to our right of setoff and security interest.


26. Indemnification and Limitation of Liability; Attorney's Fees and Costs for Lawsuits

You agree to indemnify and hold harmless Celsius and its employees, managers, partners and Affiliates from any losses, damages, suits and expenses, of whatever kind, including reasonable attorneys' fees, that we incur in connection with or arising out of your use of your Account and/or the Services, or our activities in connection with such Account, and for your violation of any law, regulation, order or other legal mandate, or the rights of a third party, or any act or omission by you or any person acting on your behalf while using your Account, regardless of whether the specific use was expressly authorized by you. You agree to comply with applicable law and to not use your Account for any transaction or activity that is illegal or violates applicable laws, regulations or rules. Please note, your agreement to comply includes any and all applicable laws and regulations of the United States, as well as of your place of residency and any law applicable to you. We are not liable to you for claims, costs, losses or damages caused by an event that is beyond our reasonable control *(e.g.* the acts or omissions of third parties, natural disaster, emergency conditions, government action, equipment or communications malfunction). We are not liable for special, incidental, exemplary, punitive or consequential losses or damages of any kind. Except for any setoff permitted by applicable law and Section 9 of these Terms, any Obligations of ours may be satisfied solely from the assets of Celsius. Without limiting the generality of the foregoing, in no event shall you have any recourse, whether by setoff or otherwise, with respect to our Obligations, to or against any assets of any person or entity other than Celsius for Celsius' Obligations, including, without limitation, any member, Affiliate, investor, employee, officer, agent or advisor of Celsius. For the avoidance of doubt, the foregoing shall not limit any setoff permitted by applicable law and Section 9 of these Terms.

27. Disclaimer of Warranty

**THE CELSIUS SERVICES ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT ANY WARRANTY UNDER THESE TERMS AND TO THE EXTENT ALLOWED BY APPLICABLE LAW ALL EXPRESS OR IMPLIED CONDITIONS, REPRESENTATIONS, AND WARRANTIES INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SATISFACTORY QUALITY, OR ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE, OR WARRANTY OF NON-INFRINGEMENT ARE DISCLAIMED. IN NO EVENT SHALL CELSIUS, ITS AFFILIATES AND SERVICE PROVIDERS, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, JOINT VENTURERS, EMPLOYEES OR REPRESENTATIVES, BE LIABLE (A) FOR ANY AMOUNT GREATER THAN THE VALUE OF THE ELIGIBLE DIGITAL CURRENCY IN YOUR**

**CELSIUS WALLET(S) OR (B) FOR ANY LOST PROFITS, DIMINUTION IN VALUE OR BUSINESS OPPORTUNITY, ANY LOSS, DAMAGE, CORRUPTION OR BREACH OF DATA OR ANY OTHER INTANGIBLE PROPERTY OR ANY SPECIAL, INCIDENTAL, INDIRECT, INTANGIBLE, OR CONSEQUENTIAL DAMAGES, WHETHER BASED IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH AUTHORIZED OR UNAUTHORIZED USE OF THE CELSIUS SERVICES OR THE CELSIUS SERVICES, OR THIS AGREEMENT, EVEN IF AN AUTHORIZED REPRESENTATIVE OF CELSIUS HAS BEEN ADVISED OF OR KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES.**

**CELSIUS MAKES NO REPRESENTATIONS ABOUT THE ACCURACY, ORDER, TIMELINESS OR COMPLETENESS OF HISTORICAL ELIGIBLE DIGITAL CURRENCY PRICE DATA AVAILABLE IN THE CELSIUS SERVICES. CELSIUS WILL MAKE REASONABLE EFFORTS TO ENSURE THAT REQUESTS FOR TRANSACTIONS ARE PROCESSED IN A TIMELY MANNER BUT CELSIUS MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE AMOUNT OF TIME NEEDED TO COMPLETE PROCESSING WHICH IS DEPENDENT UPON MANY FACTORS OUTSIDE OF OUR CONTROL.**

## 28. Class Action Waiver

To the extent permissible by law, all claims must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class, collective action, or representative proceeding (collectively "class action waiver"). the arbitrator may not consolidate more than one person's claims or engage in any class arbitration. you acknowledge that, by agreeing to these terms, you and Celsius are each waiving the right to a trial by jury and the right to participate in a class action.

## 29. Our Ownership of the Services and Celsius IP

You agree and acknowledge that we own all right, title and interest to and in the Services, the associated software, technology tools and content, the Celsius Network website, any logos, identifying marks, images, illustrations, designs, icons, photographs, videos, text and other written and multimedia materials, the content displayed on the website, and other materials produced by and related to Celsius (collectively, the Celsius IP). You acknowledge and agree that no proprietary rights are being transferred to you in such materials or information, and that you have no intention of using such materials or information

inappropriately or to in any way harm Celius or any of its affiliates, directors, officers or employees.. You shall not prepare any derivative work based on the Celsius IP, nor shall you translate, reverse engineer, decompile or disassemble the Celsius IP.

## 30. Communications

We may record and monitor our telephone conversations with you and your electronic communications with us (chat, email, and other forms of electronic exchange). Unless the law requires otherwise, you consent in advance to such recording and monitoring and we do not need to remind you of these activities. You must promptly notify us of any change in your contact information, including residential post and email address. Failure to notify us in a timely fashion may result in delay or non-receipt of notices or correspondence.

## 31. Waiver

We may delay the exercise of, or entirely waive any rights we have under these Terms. If we delay or waive our rights, you are still obligated to pay us Obligations you may owe us, remove any violation of these Terms and/or otherwise follow our instructions (as applicable). Any delay or waiver of our rights applies only to the specific instance in which we decide to delay or waive the provision and does not affect our other or subsequent rights in any way.

## 32. Changes in Terms

Please be aware that the terms and conditions governing Accounts or the Services can change over time. We reserve the right to discontinue or make changes to any Accounts or Services. We may change these Terms, and we may add to or delete from these Terms, and the updated version will supersede all prior versions. We will provide notice of changes, additions, and deletions as required by law. If we have provided advance notice and you do not agree with a change, you may close your Account(s) before the effective date of the change, which shall be your sole remedy. The continued maintenance of your Account following the effective date of any change will constitute your acceptance of such change and subject your Account to the modified Terms.

## 33. Assignment

These Terms, or any of the rights and/or obligations provided hereunder, may not be assigned or otherwise transferred by you to any other person or Entity, whether by operation of law or otherwise, without Celsius' express written consent, and any attempted assignment in violation of this prohibition shall be void *ab initio* and of no effect. Celsius may assign or transfer these Terms and/or any or all of its rights and/or obligations hereunder at any time to any Affiliate of Celsius. Any permitted assignment or transfer of or under these Terms shall be binding upon, and inure to the benefit of the successors, executors, heirs, representatives, administrators and permitted assigns of the parties hereto.

## 34. Governing Law and Venue

The relationship between you and Celsius is governed exclusively by the laws of the State of Delaware, without regard to its conflict of law provisions. Any dispute arising out of, or related to, your Account or relationship with Celsius must be brought exclusively in the courts located in Dover, Delaware; however, Celsius may bring equitable relief or collections actions in any applicable jurisdiction.

## 35. Force Majeure

We will not be liable for delays in processing or other non-performance caused by such events as fires, telecommunications, utility, or power failures, equipment failures, labor strife, riots, war, nonperformance of our vendors or suppliers, acts of God, pandemic or epidemic events, or other causes over which we have no reasonable control.

## 36. Survival

The provisions of Sections 17 (Taxes), 26 (Indemnification), 27 (Disclaimer of Warranty), 28 (Class Action Waiver), 30 (Our Ownership of the Services and Celsius IP) and 35 (Governing Law and Venue) shall survive the termination of these Terms.

****

**SPECIAL NOTICE FOR NEW YORK, TEXAS, AND WASHINGTON ACCOUNTS**

Prime Trust, LLC

These additional or differing terms ("PT Terms") are only applicable for accounts opened or operated in New York, Texas, and Washington ("PT Account") in relation to the third-party account operated by Prime Trust, LLC ("PT"), a Nevada trust company.

These PT Terms are incorporated into and must be read together with the Celsius Network Terms of Use. In the event of any inconsistency between the provisions in the Celsius Network Terms Terms of Use and the provisions of these PT Terms, the provisions of these PT Terms shall prevail.

These PT Terms apply to you immediately upon the opening of a PT Account and operate as a binding contract between Celsius and you. These PT Terms also operate in addition to the PT Custodial Account Agreement and PT Privacy Policy that you have or will enter into with PT. By using the Services, you are deemed to have accepted both Celsius Terms of Use and PT Terms.

The terms in these PT Terms may be amended, supplemented and/or replaced from time to time, in accordance with Clause 31 of the Celsius Network Terms of Use.

1. Held Assets

All Eligible Digital Assets in the/your PT Account are held by PT on your behalf at all times; Celsius will not be the holder of any Eligible Digital Asset(s) in the/your PT Account. You maintain a direct customer relationship with PT regarding the PT Account, and PT is responsible for establishing and maintaining balances in the PT Account, processing and settling all transfers and transactions through, to and from the PT Account, and exercising principal oversight and control over the PT Account.

2. User Authorizations

    i. You hereby authorize Celsius and its employees and agents, in relation to your PT Account and your utilization of the Services, to, among other things:
        a. access and view the balances and all other Transaction information (including Transaction history) relating to any of the PT Account for the purpose of reconciliation and computation of amounts due to or from you arising from Transactions using Celsius ;
        b. instruct PT to affect a transfer of funds to/from the PT Account;
        c.instruct PT to affect credit and debit of the PT Account balance in relation to transactions which have been executed on Celsius or for fees and charges arising from transactions conducted through Celsius, or in relation to transactions which have been unwound pursuant to the User Agreement;
        d. freeze (or instruct PT to freeze) further credit or debit to or from the PT Account due to your breach of the User Agreement or breach of applicable

law, or if there is a suspicion of money laundering/terrorism financing, or if there are breaches of anti-money laundering/countering the financing of terrorism policies and procedures;

 e. use any of your data or information obtained through PT for purposes of effecting transactions using Celsius or otherwise and/or share any of your data or information with PT for purposes of operating and maintaining the PT Account and Accounts; and

 f. in the event that you request a loan, instruct PT to effect the transfer of funds to/from the PT Account to a Celsius Network owned PT account. Subject to additional terms and conditions. Once the funds are transferred to PT, your Eligible Digital Assets will not be accessible until the loan has been paid off and will be transferred back to your PT account.

 ii. Celsius does not own any of the transactions or other details related to your PT Account. Celsius's role is only as a facilitator that accesses your PT Account through the API integration made available through PT, such that Celsius can withdraw and transfer instructions on behalf of you in connection with your trading activities on the Celsius Platform.

 iii. Celsius shall have the right to immediately terminate and/or cancel your Celsius Account pursuant to Clause 20 of the Terms of Use.


## 3. Transfer of funds to Linked Account

Your Account balance will only reflect the funds transferred upon notification by PT to us that such funds have been transferred to the PT Account.


## 4. Data Protection

In addition to agreeing and accepting Celsius's Privacy Policy on how your personal information will be collected, used, disclosed and transferred amongst other things, you also agree to and accept the PT Privacy Policy.


## 5. Representations and Warranties

 i. You represent and warrant to Celsius that you expressly accept the PT Custodial Account Agreement in relation to the operation of the PT Account and you understand that PT is providing their products and services (including but not limited to all services relating to the Accounts) to you subject to the PT Custodial Account Agreement.

ii. You hereby represent and warrant to Celsius that at all times you will undertake the following:

      a. comply with the PT Custodial Account Agreement;

      b. not use the products or services provided by PT in violation of the PT Custodial Account Agreement; and

      c. not use the products or services provided by PT in a manner that is fraudulent, unlawful, deceptive, or abusive.

# Exhibit D

# Self-Directed Custodial Account Agreement

████████████ ("Account Holder", "Customer", "you", "your") hereby requests and directs that Prime Trust, LLC ("Prime Trust", "Custodian", "we", "our", "us"), a Nevada chartered trust company, establish a **Custodial Account** ("Account") for and in the name of Account Holder, and to hold as custodian all assets deposited to, or collected with respect to such Account, upon the following terms and conditions:

### 1. APPOINTMENT OF CUSTODIAN:

Account Holder hereby appoints Prime Trust to be custodian of and to hold or process as directed all securities, cash and other assets of Account Holder (hereinafter referred to as "Custodial Property") that are delivered to and accepted by Custodian by Account Holder or Account Holder's Agent(s) (as defined below) to the Account in accordance with the terms of this Agreement.

### 2. SELF-DIRECTED INVESTMENTS:

a.  This Account is a self-directed Account by Account Holder and/or Account Holder's Agents. Prime Trust will act solely as custodian of the Custodial Property and will not exercise any investment or tax planning discretion regarding your Account, as this is solely your responsibility and/or the responsibility of advisors, brokers and others you designate and appoint as your agent through settings and tools we provide you with for your Account ("Agents"), if any. Prime Trust undertakes to perform only such duties as are expressly set forth herein, all of which are ministerial in nature.

b.  As a self-directed Account, you recognize and accept that:

  i.  The value of your Account will be solely dependent upon the performance of any asset(s) chosen by you and/or your Agents.

  ii.  Prime Trust shall have no duty or responsibility to review or perform due diligence on any investments or other Custodial Property and will make absolutely no recommendation of investments, nor to supervise any such investments. You will perform your own due diligence on all investments and take sole responsibility for all decisions made for your Account.

  iii.  Prime Trust does not provide the valuation or appraisals of any assets, nor does it hire or seek valuations or appraisals on any Custodial Property, provided, however, it may, at its option and with no obligation or liability, to the extent available for any particular asset, include recent price quotes or value estimates from various third-party sources, including but not limited to SEC-registered exchanges and alternative trading systems, digital asset exchanges, and real estate websites on your statement for any such Custodial Property. Prime Trust will not be expected or obligated to attempt to verify the validity, accuracy or reliability of any such third-party valuation or valuation estimates or prices and you agree that Prime Trust shall in no way be held liable for any such valuation estimates or price quotations, and that we simply acted in a passive, pass-through capacity in providing these (if any) on your Account statements and that such valuation estimates or price quotations are neither verified, substantiated nor to be relied upon in any way, for any purpose, including, without limitation, tax reporting purposes. You are advised to engage an independent form for a professional valuation opinion on Custodial Property.

c.  Account Holder will not direct or permit its Agents to direct the purchase, sale or transfer of any Custodial Property which is not permissible under the laws of Account Holder's place of residence or illegal under US federal, state or local law. Account Holder hereby warrants that neither you nor your Agents will enter into a transaction or series of transactions, or cause a transaction to be entered into, which is prohibited under Section 4975 of the Internal Revenue Code. Pursuant to the directions of the Account Holder or Agent(s), Prime Trust shall process the investment and

reinvestment of Custodial Property as directed by Account Holder or its Agents only so long as, in the sole judgment of Prime Trust, such requested investments will not impose an unreasonable administrative burden on Prime Trust (which such determination by Prime Trust shall not to be construed in any respect as a judgment concerning the prudence or advisability of such investment). Custodian may rely upon any notice, instruction, request or other instrument believed by it to have been delivered from the Account Holder or its Agents, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein.

d.   Buy and sell orders may, at Custodians discretion, be accepted verbally, including via telephone, or electronically, including email and internet-enabled devices and systems provided, however, that Custodian may, but is not required to, require Account Holder or its Agents to promptly provide email, text or other confirmation to verify such instructions and any such instructions will not be deemed as received until verified in accordance with the Custodians policies and procedures. Prime Trust may decline to accept verbal trading or transfer instructions in its sole discretion and require written instructions, or instructions triggered from Account Holder or its Agents using tools while logged onto your account (either directly at [www.primetrust.com](http://www.primetrust.com) or on any website or application that integrates into Prime Trust systems via API's ("Application Programming Interfaces"), which may or may not bear the Prime Trust brand. Account Holder bears complete and absolute responsibility for all buy, sell or transfer instructions for this Account and will immediately notify Prime Trust of any unauthorized transactions.

e.   Account Holder acknowledges and agrees that the custody of digital assets is generally subject to a high degree of risk, including without limitation, the risk of loss due to the blockchain or smart contract defects as well as forks and other events outside of the Custodian's control. Such Custodial Property is not insured by the Federal Deposit Insurance Corporation or otherwise insured so you are advised to obtain separate insurance policy for such Custodial Property. Account Holder agrees that transfer requests, including sale and purchase orders, for digital assets may be delayed due to security protocols, time-zone differences, communication technology delays or fails, and/or enhanced internal compliance reviews. Accordingly, Prime Trust shall not be liable for any losses or damages, including without limitation direct, indirect, consequential, special, exemplary or otherwise, resulting from delays in processing such transactions.

f.   All instructions for the purchase and sale of securities and/or digital assets shall be executed through one or more broker-dealers or exchanges selected by you or your Agents, or by Prime Trust as an accommodation (and not in any capacity as a broker-dealer) and we are hereby authorized to debit your account for any fees associated with such transaction(s) and remit those to the executing party.

**3. SCHEDULE OF FEES:**
The Custodian shall receive reasonable compensation in accordance with its usual Schedule of Fees then in effect at the time of service. The fees and charges initially connected with this Account include:

·   Account Fees: As detailed on Prime Trust's current fee schedule, which may change from time to time and is published on [www.primetrust.com](http://www.primetrust.com). Changes to the fee schedule shall not affect any charges for prior periods and will only be effective as of the date the changes were published.

·   Statement Fee: $0.00 – there are no fees for electronically delivered and available statements

·   Third-Party Fees – in the event that we are charged any fees by a third party in performing services on your behalf (e.g. transfer agent fees, legal fees, accounting fees, tax preparation fees, notary fees, exchange fees, brokerage fees, bank fees, blockchain settlement fees, etc.) then you agree to reimburse us for such reasonable charges at cost plus 25% (excluding broker-dealer

commissions), and that no prior approval is required from you in incurring such expense.

Account Holder agrees to pay all fees and expenses associated with the Account to Prime Trust either via deduction from cash available in the Account, via ACH debit to Account Holders bank, or via credit card, or via liquidation of Custodial Property at Prime Trust's sole and absolute discretion. Unpaid fees are subject to interest at a rate of 1.50% per month on the outstanding balance and may be applied as a first lien on any Custodial Property. Prime Trust reserves the right to make changes to its fees for custodial services in its sole and absolute discretion. Fees may be modified upon 60 days' notice to you and shall become effective on the 61st day after emailing the notice of such revision to your email address on record in your Account.

### 4. ASSETS AND CUSTODY:

a.  Custodial Property which Prime Trust will generally agree to accept and hold on Account Holder's behalf includes: cash (USD and other currencies at the sole discretion of Prime Trust), title to real estate, certain digital assets, private equity and debt securities issued pursuant to laws and regulations of the United States, as well as equity and debt securities which are listed on any US exchange or alternative trading system (e.g. OTC, NASDAQ, NYSE, AMEX, etc). Securities which have been issued pursuant to regulations of countries other than the US or which are listed on non-US trading systems may be acceptable for custody on a case by case basis. Physical assets such as art, coins, and rare books are generally not accepted for custody at Prime Trust. Acceptance and custody of digital assets such as virtual currencies are subject to the sole discretion of Prime Trust.

b.  During the term of this Agreement, Custodian is responsible for safekeeping only Custodial Property which is delivered into its possession and control by the Account Holder or its Agents. Custodian may for convenience take and hold title to Custodial Property or any part thereof in its own name or in the name of its nominee (commonly known as "street name"), with Account Holder ownership of Custodial Property segregated on its books and records.

c.  Custodian shall keep accurate records of segregation of customer accounts to show all receipts, disbursements, and other transactions involving the Account. All such records shall be held indefinitely by Custodian.

d.  Custodian shall collect and hold all funds when Custodial Property may mature, be redeemed or sold. Custodian shall hold the proceeds of such transaction(s) until receipt of written or electronic (via our systems) disbursement instructions from Account Holder.

e.  Custodian shall process any purchase, sale, exchange, investment, disbursement or reinvestment of Custodial Property under this Agreement that Account Holder or its Agents may at any time direct, provided that sufficient unencumbered, cleared assets are available for such transaction.

f.  Funds received in any currency other than USD may, at your direction, be converted to USD at exchange rates set by our correspondent bank(s) or foreign exchange services provider, and with applicable fees for such special handling (not to exceed 2.00% plus wire fees, if any).

g.  Without limiting the generality of the foregoing, Prime Trust is authorized to collect into custody all property delivered to Custodian at the time of execution of this Agreement, as well as all property which is hereafter purchased for your Account or which may hereafter to be delivered to Custodian for your Account pursuant to this Agreement, together with the income, including but not limited to interest, dividends, proceeds of sale and all other monies due and collectable attributable to the investment of the Custodial Property.

h.  Custodian is authorized, in its sole discretion, to comply with orders issued or entered by any court with respect to the Custodial Property held hereunder, without determination by Custodian of such court's jurisdiction in the matter. If any portion of the Custodial Property held hereunder is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order,

or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, Custodian is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action, and if Custodian complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

i.   Custodian does not warrant or guarantee that any buy or sell order by Account Holder will be executed at the best posted price or timely executed. Account Holder acknowledges and agrees that (i) Custodian does not have access to every market or exchange which a particular product or financial instrument may be traded and Custodian makes no representation regarding the best price execution of any instructions, (ii) other orders may trade ahead of Account Holder's order and exhaust available volume at a posted price, (iii) exchanges, market makers or other types of sellers or purchasers may fail to honor posted or otherwise agreed-upon prices, (iv) exchanges may re-route customer orders out of automated execution systems for manual handling (in which case, execution may be substantially delayed), (iv) system delays by exchanges or third-parties executing instructions may prevent Account Holders order from being executed, may cause a delay in execution or not to be executed at the best posted price or at all, and, (v) Custodian may not promptly or in a timely manner execute Customers order(s) due to internal delays, and Custodian makes no representation that its custody services are in any way suitable for active trading or any activity requiring prompt or exact execution. Transactions may be subject to additional fees and charges by both Custodian and any third-party service providers or exchanges.

## 5. ACCOUNT ACCESS AND COMMUNICATIONS:

a.   Custodian shall provide you and your Agent(s) with access to your Account via our website at www.primetrust.com, as well as via API's that third-parties can write into (e.g. exchanges, broker-dealers, funding portals, trading platforms, investment advisors, registered transfer agents, banks, consumer and industrial software application providers, etc.).

b.   Your Agent(s) shall be provided with access to the Account as chosen by you using the tools and settings we provide you with for your account, which may include Account information such as current and historic statements, transaction history, current asset positions, and account types and beneficiaries. It may, depending upon the settings and permissions you choose for your particular Agents, include the ability to instruct Prime Trust to take action with respect to the Custodial Property and Account, including without limitation to invest, sell, receive, deliver or transfer Custodial Property. Any actions undertaken by any of your Agents are deemed to be those of the Account Holder directly, and you agree to maintain the security of your logon credentials and passwords, as well as Agent access lists and associated permissions, so only your authorized persons have access to your Account. Prime Trust shall also be entitled to rely and act upon any instructions, notices, confirmations or orders received from your Agent(s) as if such communication was received directly from the Account Holder without any required further review or approval. Account Holder is solely responsible for monitoring and supervising the actions of your Agents with respect to the Account and Custodial Property.

c.   Statements of assets, along with a ledger of receipts and disbursements of Custodial Property shall be available online at www.primetrust.com, in your Account, as well as via the websites and/or applications of third-party API integrators that you select and use.

d.   Custodian shall be under no obligation to forward any proxies, financial statements or other literature received by it in connection with or relating to Custodial Property held under this agreement. Custodian shall be under no obligation to take any action with regard to proxies, stock dividends, warrants, rights to subscribe, plans of reorganization or recapitalization, or plans for

exchange of securities.

e.  Account Holder agrees that Custodian may contact you for any reason. No such contact will be deemed unsolicited. Custodian may contact Account Holder at any address, telephone number (including cellular numbers) and email addresses as Account Holder may provide from time to time. Custodian may use any means of communication, including but not limited to, postal mail, email, telephone, or other technology to reach Account Holder.

f.  **ELECTRONIC STATEMENTS ELECTION:**

Account Holder agrees that Prime Trust will make statements available in electronic form only. Account Holder further agrees that you can and will log onto its Account at www.primetrust.com or on the websites or applications of its selected third-party API integrators at your discretion to view current or historic statements, as well as transaction history, assets and cash balances. Account Holder understands and agrees that under no circumstances may you request to have statements printed and mailed to you. If Account Holder desires printed statements, then you agree to log onto your Account at www.primetrust.com (or on the websites or applications of your selected third-party API integrators) and print them yourself.

## 6. TERM AND TERMINATION, MODIFICATION:

a.  This Agreement is effective as of the date set forth below and shall continue in force until terminated as provided herein.

b.  This Agreement may be terminated by either party at any time upon 30 days written notice to the other party (with email being an agreed upon method of such notice).

c.  This Agreement may be amended or modified only by the Custodian, or with the written agreement from the Custodian. Such amendments or modifications shall be effective on the 30th day after the Account Holder receives notice of such revision electronically via the email address shown on the records of Prime Trust.

d.  If this Agreement is terminated by either party then Custodian shall deliver the Custodial Property to Account Holder as soon as practicable or, at Account Holder's request to a successor custodian. Account Holder acknowledges that Custodial Property held in Custodian's name or nominee may require a reasonable amount of time to be transferred. Upon delivery of Custodial Property, Custodian's responsibility under this Agreement ceases.

e.  This agreement shall terminate immediately upon the occurrence of any of the following events:

i.  Upon death of the Account Holder, the Custodian shall continue to hold Custodial Property until such time the Custodian receives instructions from Account Holder's executor, trustee or administrator pursuant to the probate process, as applicable, and has received advice of its legal counsel to transfer such assets (which costs shall be borne by the Account Holder). In the event that no beneficiaries claim this Account then the assets may be preserved in the Account for so long as possible, until a beneficiary makes itself known or as may be subject to "unclaimed property" regulations as promulgated by state and federal regulators (at which time assets on Account may be transferred or liquidated and proceeds forwarded to such authorities as required by law or regulation).

ii.  Filing of a petition in bankruptcy (by the Account Holders or by a creditor of the Account Holders). If this Agreement terminates due to the filing of a petition in bankruptcy, termination or dissolution of Account Holder, Custodian shall deliver the Custodial Property to the Court appointed representative for Account Holder. If no representative has been appointed by the Court, Custodian may deliver the Custodial Property to the person it deems to be an agent of the Account Holder and such delivery will release Custodian from any further responsibility for said Custodial Property.

iii.  The legal incompetency of Account Holder, unless there is in existence a valid durable power of

attorney or trust agreement authorizing another to succeed or act for Account Holder with respect
to this agreement.

iv.    Prime Trust becomes aware of or suspects that the Account Holder or any of its Agents are
engaged in any criminal activity.

### 7. TERMS OF USE, PRIVACY POLICY:

Except as set forth in this Agreement, Account Holder agrees to be bound by the Prime Trust's
most current, then in effect Terms of Use and Privacy Policy, as available via links at the bottom of
the www.primetrust.com website. You warrant that you have reviewed such policies and in using
our services hereby agree to be bound by them. In the event of any conflict between any terms or
provisions of the website Terms of Use or Privacy Policy and the terms and provisions of this
Agreement, the applicable terms and provisions of this Agreement shall control.

### 8. DISCLAIMER:

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, PRIME TRUST MAKES NO
REPRESENTATION OR WARRANTY OF ANY KIND WHETHER EXPRESS, IMPLIED (EITHER IN
FACT OR BY OPERATION OF LAW). PRIME TRUST EXPRESSLY DISCLAIMS ANY AND ALL IMPLIED
WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUALITY,
ACCURACY, TITLE, AND NON-INFRINGEMENT. PRIME TRUST DOES NOT WARRANT AGAINST
INTERFERENCE WITH THE USE OF THE SERVICES OR AGAINST INFRINGEMENT. PRIME TRUST
DOES NOT WARRANT THAT THE SERVICES OR SOFTWARE ARE ERROR-FREE OR THAT
OPERATION OR DATA WILL BE SECURE OR UNINTERRUPTED. PRIME TRUST EXPRESSLY
DISCLAIMS ANY AND ALL LIABILITY ARISING OUT OF THE FLOW OF DATA AND DELAYS ON THE
INTERNET, INCLUDING BUT NOT LIMITED TO FAILURE TO SEND OR RECEIVE ANY ELECTRONIC
COMMUNICATIONS (e.g. EMAIL). ACCOUNT HOLDER DOES NOT HAVE THE RIGHT TO MAKE OR
PASS ON ANY REPRESENTATION OR WARRANTY ON BEHALF OF PRIME TRUST TO ANY THIRD
PARTY. ACCOUNT HOLDER'S ACCESS TO AND USE OF THE SERVICES ARE AT ACCOUNT
HOLDER'S OWN RISK. ACCOUNT HOLDER UNDERSTANDS AND AGREES THAT THE SERVICES
ARE PROVIDED TO IT ON AN "AS IS" AND "AS AVAILABLE" BASIS. PRIME TRUST EXPRESSLY
DISCLAIMS LIABILITY TO ACCOUNT HOLDER FOR ANY DAMAGES RESULTING FROM ACCOUNT
HOLDER'S RELIANCE ON OR USE OF THE SERVICES.

### 9. LIMITATION OF LIABILITY; INDEMNIFICATION:

1.    Disclaimer of Liability and Consequential Damages.

CUSTODIAN SHALL NOT BE LIABLE FOR ANY ACTION TAKEN OR OMITTED BY IT IN GOOD
FAITH UNLESS AS A RESULT OF ITS GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, IN EACH
CASE AS DETERMINED BY A COURT OF COMPETENT JURISDICTION, AND ITS SOLE
RESPONSIBILITY SHALL BE FOR THE HOLDING AND DISBURSEMENT OF THE CUSTODIAL
PROPERTY IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, SHALL HAVE NO IMPLIED
DUTIES OR OBLIGATIONS AND SHALL NOT BE CHARGED WITH KNOWLEDGE OR NOTICE OF
ANY FACT OR CIRCUMSTANCE NOT SPECIFICALLY SET FORTH HEREIN, ACCOUNT HOLDER
HEREBY ACKNOWLEDGES AND AGREES, NOTWITHSTANDING ANYTHING TO THE CONTRARY
CONTAINED IN THIS AGREEMENT, PRIME TRUST WILL NOT, UNDER ANY CIRCUMSTANCES, BE
LIABLE TO ACCOUNT HOLDER FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL, OR EXEMPLARY
DAMAGES ARISING OUT OF OR RELATED TO ANY INVESTMENT OR TRANSACTION OCCURRING
UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO, LOST PROFITS OR LOSS OF
BUSINESS, EVEN IF PRIME TRUST HAS BEEN ADVISED OF THE LIKELIHOOD OF SUCH LOSS OR
DAMAGE AND REGARDLESS OF THE FORM OF ACTION. THIS INCLUDES ANY LOSSES OR

PROBLEMS OF ANY TYPE RESULTING FROM INCIDENTS OUTSIDE OF OUR DIRECT CONTROL, INCLUDING BUT NOT LIMITED TO ERRORS, HACKS, THEFT OR ACTIONS OF ISSUERS, TRANSFER AGENTS, SMART CONTRACTS, BLOCKCHAINS AND INTERMEDIARIES OF ALL TYPES.

2.    Cap on Liability.

ACCOUNT HOLDER HEREBY ACKNOWLEDGES AND AGREES UNDER NO CIRCUMSTANCES WILL PRIME TRUST'S TOTAL LIABILITY OF ANY AND ALL KINDS ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO WARRANTY CLAIMS), REGARDLESS OF THE FORM AND REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON CONTRACT, TORT, OR OTHERWISE, EXCEED THE TOTAL AMOUNT OF FEES PAID, IF ANY, BY ACCOUNT HOLDER TO PRIME TRUST UNDER THIS AGREEMENT DURING THE TWELVE (12) MONTH PERIOD PRIOR TO THE OCCURRENCE OF THE EVENT GIVING RISE TO SUCH LIABILITY.

3.    General Indemnification.

Account Holder hereby agrees to indemnify, protect, defend and hold harmless Prime Trust and its officers, directors, members, shareholders, employees, agents, partners, vendors, successors and assigns from and against any and all third party claims, demands, obligations, losses, liabilities, damages, regulatory investigations, recoveries and deficiencies (including interest, penalties and reasonable attorneys' fees, costs and expenses), which Prime Trust may suffer as a result of: (a) any breach of or material inaccuracy in the representations and warranties, or breach, non-fulfillment or default in the performance of any of the conditions, covenants and agreements, of Account Holder contained in this Agreement or in any certificate or document delivered by Account Holder or its agents pursuant to any of the provisions of this Agreement, or (b) any obligation which is expressly the responsibility of Account Holder under this Agreement, or (c) any other cost, claim or liability arising out of or relating to operation or use of the license granted hereunder, or, (d) any breach, action or regulatory investigation arising from Account Holder's failure to comply with any state blue sky laws or other securities laws any applicable laws, and/or arising out of any alleged misrepresentations, misstatements or omissions of material fact in the Account Holders' offering memoranda, general solicitation, advertisements and/or other offering documents. Account Holder is required to immediately defend Prime Trust including the immediate payment of all attorney fees, costs and expenses, upon commencement of any regulatory investigation arising or relating to Account Holder's offering and/or items in this Section 9.3(a) through (d) above. Any amount due under the aforesaid indemnity will be due and payable by Account Holder within thirty (30) days after demand thereof. The indemnity obligations of Account Holder hereunder shall survive any termination of this Agreement and the resignation or removal of Custodian hereunder.

4.    Limitation on Prime Trust's Duty to Litigate.

Without limiting the foregoing, Prime Trust shall not be under any obligation to defend any legal action or engage in any legal proceedings with respect to the Account or with respect to any property held in the Account unless Prime Trust is indemnified to Prime Trust's satisfaction. Whenever Prime Trust deems it reasonably necessary, Prime Trust is authorized and empowered to consult with its counsel in reference to the Account and to retain counsel and appear in any action, suit or proceeding affecting the Account or any of the property of the Account. All fees and expenses so incurred shall be for the Account and shall be charged to the Account.

5.    Third Party Claims.

i.    Account Holder agrees to bear sole responsibility for the prosecution or defense, including the employment of legal counsel, of any and all legal actions or suits involving the Account, which may arise or become necessary for the protection of the investments in that Account, including any actions lodged against the Custodian. Account Holder also agrees to bear sole responsibility for enforcing any judgments rendered in favor of the Account, including judgments rendered in

the name of Prime Trust as Custodian of the Account.

ii.     Account Holder agrees to be responsible for any and all collection actions, including contracting with a collection agency or institutional legal action, and bringing any other suits or actions which may become necessary to protect the rights of the Account. Account Holder understands that any legal filings made on behalf of this Investment are to be made on behalf of beneficial owners for whom Prime Trust acts as custodian. Account Holder agrees not to institute legal action on behalf of the Account without Custodian's written consent to litigate and that Account Holder shall prosecute any legal action. Account Holder agrees that any such legal action will be carried out in a manner that does not cause Custodian to incur any costs or legal exposure.

6.  Custodian may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or its duties hereunder, or relating to any dispute involving any disbursements or services contemplated herein, and shall incur no liability and shall be fully indemnified by you from any liability whatsoever in acting in accordance with the advice of such counsel. Account Holder shall promptly pay, upon demand, the reasonable fees and expenses of any such counsel and fees may be deducted from Customer's account, including the liquidation of assets if needed in order to make cash available to settle such costs.

**10. SUCCESSION.**

Custodian may resign and be discharged from its duties or obligations hereunder by giving ten (10) days' notice in writing of such resignation to Account Holder specifying a date when such resignation shall take effect and, after the date of such resignation notice, notwithstanding any other provision of this Agreement, Custodian's sole obligation will be to hold the Custodial Property pending appointment of a successor Custodian. The effective date of Custodian's resignation shall be at least ten (10) days after the date of such notices and not until a successor is in place or an interpleader action has been commenced with the transfer of Custodial Property into a court of competent jurisdiction. Account Holder shall appoint a successor custodian prior to the effective date of such resignation or removal. Custodian shall distribute the property then held under this Agreement to the successor custodian whereupon Custodian shall, upon such distribution, be discharged of and from any and all further obligations arising in connection with this Agreement, except to the extent such liability and expenses is caused by Custodian's gross negligence or willful misconduct as determined by a court of competent jurisdiction. If a successor custodian has not been appointed or has not accepted such appointment by the end of such time period, Custodian may apply to a court of competent jurisdiction for the appointment of a successor custodian, and Account Holder shall pay the reasonable and documented costs and expenses (including attorneys' fees) which are incurred in connection with such proceeding. Until a successor custodian has accepted such appointment and Custodian has transferred the Custodial Property to such successor custodian or an interpleader action has been commenced with the transfer of Custodial Property into a court of competent jurisdiction, Custodian shall continue to retain the Custodial Property pursuant to the terms of this Agreement. Custodian shall have the right to withhold an amount equal to any amount due and owing to Custodian, plus any costs and expenses Custodian shall reasonably believe may be incurred by Custodian in connection with its resignation or interpleader action hereunder or transfer to a successor custodian. Any corporation or association into which Custodian may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all the custody business of Custodian's corporate trust line of business may be transferred, shall be Custodian under this Agreement without further act.

**11. NOTICES:**

All notices permitted or required by this Agreement will be via electronic mail ("email"), and

will be deemed to have been delivered and received upon sending via any SMTP delivery service chosen by Prime Trust. Notices shall be delivered to the addresses on record which, if to Prime Trust shall be to support@primetrust.com and if to Account Holder shall be to the email address on file in your Account.

## 12. SEVERABILITY:

If any provision of this Agreement is for any reason found to be ineffective, unenforceable, or illegal by any court having jurisdiction, such condition will not affect the validity or enforceability of any of the remaining portions hereof.

## 13. NO LEGAL, TAX OR ACCOUNTING ADVICE:

Account Holder agrees without reservation that Prime Trust is NOT providing any legal, tax or accounting advice in any way, nor on any matter, regardless of the tone or content of any communication (oral, written or otherwise). Account Holder shall rely solely on its own legal, tax, accounting and other professional advisors for any such advice and on all matters.

## 14. NO INVESTMENT ADVICE OR RECOMMENDATIONS:

Account Holder agrees that Prime Trust is not providing any investment advice, nor do we make any recommendations regarding any securities or other assets to Account Holder . Account Holder agrees that it will not construe any communications from Prime Trust or any person associated with Prime Trust, whether written or oral, to be legal, investment, due diligence, valuation or accounting advice and agrees to only and exclusively rely on the advice of Account Holder' s attorneys, accountants and other professional advisors, including any Agents, investment advisers or registered broker-dealers acting on your behalf.

## 15. ELECTRONIC COMMUNICATIONS NOTICE AND CONSENT:

Each of Account Holder and Prime Trust hereby agree that all current and future notices, confirmations and other communications regarding this Agreement specifically, and future communications in general between the parties, may be made by email, sent to the email address of record as set forth in the Notices section above or as otherwise from time to time changed or updated and disclosed to the other party, without necessity of confirmation of receipt, delivery or reading, and such form of electronic communication is sufficient for all matters regarding the relationship between the parties. If any such electronically-sent communication fails to be received for any reason, including but not limited to such communications being diverted to the recipients' spam filters by the recipients email service provider, or due to a recipients' change of address, or due to technology issues by the recipients' service provider, the parties agree that the burden of such failure to receive is on the recipient and not the sender, and that the sender is under no obligation to resend communications via any other means, including but not limited to postal service or overnight courier, and that such communications shall for all purposes, including legal and regulatory, be deemed to have been delivered and received. No physical, paper documents will be sent to Account Holder, and if Account Holder desire physical documents then it agrees to be satisfied by directly and personally printing, at Account Holder's own expense, either the electronically-sent communication(s) or the electronically available communications by logging onto Account Holder's Account at www.primetrust.com and then maintaining such physical records in any manner or form that Account Holder desire. Account Holder's Consent is Hereby Given: By signing this Agreement electronically, Account Holder explicitly agrees to this Agreement and to receive documents electronically, including a copy of this signed Agreement as well as ongoing disclosures, communications and notices.

## 16. ASSIGNMENT:

No party may transfer or assign its rights and obligations under this Agreement without the prior written consent of the other parties. Notwithstanding the foregoing, without the consent of the other parties, any party may transfer or assign its rights and obligations hereunder in whole or in part (a) pursuant to any merger, consolidation or otherwise by operation of law, and (b) to the successors and assigns of all or substantially all of the assets of such assigning party, provided such entity shall be bound by the terms hereof. This Agreement will be binding upon and will inure to the benefit of the proper successors and assigns.

## 17. NON-ABSOLUTE STANDARDS:

All of the services are provided under a "commercially reasonable" standard. This means that no service may be held to an absolute or perfect standard. All services are provided "as is" and in such a manner that they are reasonable. Account Holder acknowledges this and agrees that this is fair and acceptable, and that all applicable sections of this Agreement apply to this concept.

## 18. BINDING ARBITRATION, APPLICABLE LAW AND VENUE, ATTORNEYS FEES:

This Agreement is governed by and will be interpreted and enforced in accordance with the laws of the State of Nevada without regard to principles of conflict of laws. Any claim or dispute arising under this Agreement may only be brought in arbitration, with venue in Clark County, Nevada, pursuant to the rules of the American Arbitration Association. Account Holder and Prime Trust each consent to this method of dispute resolution, as well as jurisdiction, and consent to this being a convenient forum for any such claim or dispute and waives any right it may have to object to either the method or jurisdiction for such claim or dispute. In the event of any dispute among the parties, the prevailing party shall be entitled to recover damages plus reasonable costs and attorney's fees and the decision of the arbitrator shall be final, binding and enforceable in any court.

## 19. COUNTERPARTS, FACSIMILE, EMAIL, SIGNATURES:

This Agreement may be executed in counterparts, each of which will be deemed an original and all of which, taken together, will constitute one and the same instrument, binding on each signatory thereto. This Agreement may be executed by signatures, electronically or otherwise, delivered by facsimile or email, and a copy hereof that is properly executed and delivered by a party will be binding upon that party to the same extent as an original executed version hereof.

## 20. FORCE MAJEURE:

No party will be liable for any default or delay in performance of any of its obligations under this Agreement if such default or delay is caused, directly or indirectly, by fire, flood, earthquake or other acts of God; labor disputes, strikes or lockouts; wars, rebellions or revolutions; riots or civil disorder; accidents or unavoidable casualties; interruptions in transportation or communications facilities or delays in transit or communication; supply shortages or the failure of any person to perform any commitment to such party related to this Agreement; or any other cause, whether similar or dissimilar to those expressly enumerated in this Section, beyond such party's reasonable control.

## 21. INTERPRETATION:

Each party to this Agreement has been represented by or had adequate time to obtain the advice and input of independent legal counsel with respect to this Agreement and has contributed

equally to the drafting of this Agreement. Therefore, this Agreement shall not be construed against either party as the drafting party. All pronouns and any variation thereof will be deemed to refer to the masculine and feminine, and to the singular or plural as the identity of the person or persons may require for proper interpretation of this Agreement. And it is the express will of all parties that this Agreement is written in English and uses the font styles and sizes contained herein.

## 22. CAPTIONS:

The section headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

## 23. ENTIRE AGREEMENT, AMENDMENTS:

This Agreement sets forth the entire understanding of the parties concerning the subject matter hereof, and supersedes any and all prior or contemporaneous communications, representations or agreements between the parties, whether oral or written, regarding the subject matter of this Agreement, and may not be modified or amended, except by a written instrument executed after the effective date of this Agreement by the party sought to be charged by the amendment or modification.

## 24. CAPACITY:

Account Holder hereby represents that the signer(s) of this Agreement are over the age of 18 and have all proper authority to enter into the Agreement. Furthermore, if Account Holder is an entity (e.g. corporation, trust, partnership, etc. and not an individual) then the entity is in good standing in its state, region or country of formation; which Account Holder agrees to produce evidence of such authority and good standing if requested by Custodian. Account Holder agrees to provide Prime Trust with any additional information required to open the Account, including beneficial owners and other customer information. Account Holder represents that the information provided is complete and accurate and shall immediately notify Prime Trust of any changes.

## 25. SERVICES NOT EXCLUSIVE:

Nothing in this Agreement shall limit or restrict the Custodian from providing services to other parties that are similar or identical to some or all of the services provided hereunder.

## 26. INVALIDITY:

Any provision of this Agreement which may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. In such case, the parties shall in good faith modify or substitute such provision consistent with the original intent of the parties.

## 27. SUBSTITUTE IRS FORM W-9

***Under penalties of Perjury, Account Holder certifies that:*** (1) The tax identification number provided to Prime Trust by Account Holder, if Account Holder is a US person, is the correct taxpayer identification number and (2) Account Holder is not subject to backup withholding because**:** (a) Account Holder is exempt from backup withholding, or, (b) Account Holder has not been notified by the Internal Revenue Service (IRS) that it is subject to backup withholding.

Account Holder agrees to immediately inform Prime Trust in writing if it has been, or at any time in the future is notified by the IRS that Account Holder is subject to backup withholding. Account Holders acknowledge that failing to provide accurate information may result in civil penalties.

Agreed as of day 11 of February, 2020 by and between:

## Owner:

**Name:**
**Email:**
**Title:**
**Date:**
**Signature ID:** f49655c3-335a-4494-b687-c8ac7142671f

## Prime Trust:

*Scott Purcell*

**Name:**          Scott Purcell
**Email:**          scott@primetrust.com
**Company:**     Prime Trust
**Title:**           Chief Trust Officer
**Signature ID:** 44ec91b8-027a-4e6f-ad57-16739154fb15