Hearing Date:  December 5, 2022 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline:  November 28, 2022 at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### NOTICE OF HEARING ON DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN DECENTRALIZED FINANCE LOANS AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Pay Certain Decentralized Finance Loans and (II) Granting Related Relief* (the "Motion") will be held on **December 5, 2022, at 2:00 p.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on December 2, 2022)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 2:00 p.m., prevailing Eastern Time on December 5, 2022 must connect to the Hearing beginning at 1:00 p.m., prevailing Eastern Time on December 5, 2022. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius*

*Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov; and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **November 28, 2022, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

     **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

     **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: November 14, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Hearing Date: December 5, 2022 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline: November 28, 2022 at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN**
**DECENTRALIZED FINANCE LOANS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) authorizing the Debtors to pay certain decentralized finance loans and

(b) granting related relief.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**Preliminary Statement**

5.      Prior to the Petition Date, the Debtors obtained several decentralized finance loans collateralized by certain digital assets (the "DeFi Loans").  The DeFi Loans are governed by "smart contracts" that are self-executing on the blockchain and typically overcollateralized.  Thus, if the value of posted digital collateral securing the Debtors' borrowings falls below a certain threshold (and the loan-to-value ratio falls below a certain percentage), or if the Debtors fail to make a payment on a DeFi Loan, the platforms on which the DeFi Loans are held will automatically liquidate the collateral and close out the loan.  Given the nature of the DeFi Loans, no individual or entity is the lender of such loans, so the Debtors would not be able to enforce the automatic stay in the event that a DeFi Loan is liquidated.

2

6.      The Debtors had approximately $645 million in DeFi Loans collateralized by approximately $1.63 billion in digital assets based on a market valuation as of June 27, 2022. The amounts of the DeFi Loans varied leading up to the Petition Date, but given the risks associated with asset deployment and the volatility of the cryptocurrency market, the Debtors worked to "unwind" their open DeFi Loans. As a result, only one DeFi Loan remained as of the Petition Date—the Notional Finance Loan—in an amount of approximately $3.26 million as of the Maturity Date (as defined below) (the "Notional Finance Loan"), which is collateralized by digital assets worth approximately $7.5 million as of November 11, 2022, including USD Coin and Wrapped Bitcoin (the "Collateral").[2] The Notional Finance Loan had an original maturity date of September 24, 2022 (the "Original Maturity Date") and accrued interest at a rate of 3.366% APY. On September 7, 2022, the Debtors exercised an option to extend the maturity of the Notional Finance Loan to December 23, 2022 (the "Maturity Date"), which increased the interest rate of the Notional Finance Loan to 3.733% APY, effective as of the Original Maturity Date. The Debtors have an option to further extend the Maturity Date prior to the Maturity Date. If the Debtors elect to extend the Maturity Date to March 24, 2023, the interest rate would increase to 4.500% APY effective from the Maturity Date to March 24, 2023. If the Debtors elect to extend the Maturity Date to September 20, 2023, the interest rate would increase to 7.549% APY from the Maturity Date to September 20, 2023. In their reasonable business judgment, the Debtors believe the security benefits and increased value to the estate that will result from the return of the Collateral—especially given current market volatility—outweighs any potential benefits from further extension of the Maturity Date of the Notional Finance Loan. Similar to the other DeFi

---

[2]     The Debtors will continue to monitor the value of the Collateral and will continue to evaluate whether repayment of the Notional Finance Loan is economically accretive.

Loans, if the Debtors do not repay the Notional Finance Loan or extend the Maturity Date, the Debtors' failure to meet on-time payment obligations will result in: (a) the automatic liquidation of their collateral backstopping the Notional Finance Loan; and (b) a seven-percent liquidation fee of approximately $224,000.

7.     The Notional Finance Loan must be repaid in USD Coin. Repayment of the approximately $3.26 million amount in USD Coin would result in the return of the Collateral, specifically, the USD Coin and Wrapped Bitcoin worth approximately $7.5 million as of November 11, 2022.

8.     In light of the foregoing, it is in the best interests of their estates and all stakeholders in these chapter 11 cases that the Debtors be authorized to meet their payment obligations under the Notional Finance Loan and obtain return of the Collateral.

**Background**

9.     The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

10.     On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions*

*and First Day Motions* (the "Campagna Declaration").[3]  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

11.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 29, 2022, the Court entered an order appointing an examiner [Docket No. 920].

### Basis for Relief

12.    Immediate payment of the Notional Finance Loan is a sound exercise of the Debtors' business judgment and is in the best interests of their estates and all stakeholders. Accordingly, the Debtors seek to pay in full the Notional Finance Loan before it becomes due under sections 105(a) and 363(b) of the Bankruptcy Code.

13.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A court may authorize non-ordinary course transactions using property of the estate pursuant to section 363(b) when "a sound business purpose dictates such action."  *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (approving a sale of assets pursuant to section 363(b)); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y.

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Campagna Declaration.

1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also In re Eagle-Picher Holdings, Inc.*, No. 05-12601, 2005 WL 4030132, at *1 (Bankr. S.D. Ohio Aug. 26, 2005) (authorizing the debtors to use property of the estate to make retention payments for key employees outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code after finding the use was an "exercise of sound business judgment").  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville    Corp.*,    60 B.R.    612,    616    (Bankr. S.D.N.Y.    1986);    *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

14.    Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code.  When applying the "business judgment" standard, courts show great deference to a company's business decisions. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence.") (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 454 (N.D. Ohio 1993) (observing that "courts employ the business judgment rule because in order for a corporation to be managed properly and efficiently, latitude must be given in the handling of

corporate affairs") (internal quotation omitted)).  The business judgment rule asks whether the

transaction at issue is "within the fair and reasonable business judgment of the Debtors and thus

within the zone of acceptability." *In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va.

2016).

15.    Furthermore, section 105(a) of the Bankruptcy Code provides that a court "may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of" the Bankruptcy Code, pursuant to the "doctrine of necessity."   11 U.S.C. § 105(a).   The

"doctrine of necessity" functions in a chapter 11 case as a mechanism by which the Court can

exercise its equitable power to allow payment of critical prepetition claims not explicitly

authorized by the Bankruptcy Code and further supports the relief requested herein.

*See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may

authorize payment of prepetition claims if such payment is essential to debtor's continued

operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that

section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition

claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92

(Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit

for enabling a court to authorize the payment of prepetition claims prior to confirmation of a

reorganization plan).

16.    In a long line of well-established cases, courts consistently have permitted the

postpetition payment of prepetition obligations where necessary to preserve or enhance the value

of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C&S W.R.

Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted

to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d

Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition claims).

17.      The relief requested herein is appropriate and warranted under both sections 105(a) and 363(b) of the Bankruptcy Code.  Immediately paying the Notional Finance Loan is in the best interests of the Debtors' estates and their creditors because avoids an unnecessary penalty if Notional Finance is forced to recover from its secured collateral.

18.      The facts of these chapter 11 cases warrant making this maturity payment to Notional Finance.  **First**, Notional Finance is oversecured by the Collateral and this payment will not deplete funds otherwise available for creditors with lower priority.  To the extent that the Debtors do not have $3.26 million USD Coin available to repay the Notional Finance Loan, the Debtors request the authority to swap or sell coins from the Debtors' general coin holdings (in the Earn Program) to generate the approximately $3.26 million in USD Coin in the Debtors' discretion in consultation with the Committee.  Further, upon repayment and the return of the Collateral, the Debtors request the authority to swap or sell the Collateral to replenish the coins in the Earn Program that were swapped or sold to generate the USD Coin used to repay the Notional Finance Loan and convert the remaining Collateral into cash in the form of United States Dollars.

19.      **Second**, the Notional Finance Loan will be automatically paid with or without the relief requested herein.  If the Debtors take no action, the Notional Finance Loan will automatically be liquidated.  The Debtors believe that it is in the best interest of their estates and key stakeholders that they are allowed to make this payment prior to the Maturity Date and avoid an unnecessary

liquidation penalty of approximately $224,000.  Avoiding this penalty will allow the Debtors to preserve those funds for the benefit of their stakeholders.

20.    **Third**, given the nature of DeFi Loans, the Debtors are not protected by the automatic stay pursuant to section 362 of the Bankruptcy Code because there is no individual or entity that acts as the lender of a DeFi Loan.  As mentioned above, if the Debtors do not make this payment, the Notional Finance Loan will automatically be paid through the "smart contracts" on the blockchain using the collateralized assets.  Therefore, making this payment is the best way the Debtors can ensure that they do not incur a needless penalty and maximize the value of their estates for all stakeholders.  Alternatively, the Debtors could further extend the Maturity Date of the Notional Finance Loan but given the increased interest rate and current market volatility, the Debtors believe the most prudent course of action is to unwind the Notional Finance Loan now.

21.    Accordingly, for the reasons set forth herein, making the proposed payment to Notional Finance is a proper exercise of the Debtors' business judgment, benefits all stakeholders, and will maximize the value of their estates.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

22.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

23.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular

claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

24.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

25.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) Notional Finance; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

26.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: November 14, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN DECENTRALIZED FINANCE LOANS AND (II) GRATING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (i) authorizing the Debtors to pay certain decentralized finance loans (the "<u>Notional Finance Loan</u>") and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and this Court having reviewed the Motion and having heard the statements in support of the relief

requested therein at a hearing before this Court (the "Hearing"); and this Court having determined

that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for

the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, to pay the Notional Finance Loan.

3.      In consultation with the Committee, the Debtors are authorized, but not directed, to

swap or sell coins from the Debtors' general coin holdings (in the Earn Program) to generate

sufficient USD Coin to repay the Notional Finance Loan.

4.      Upon repayment and the return of the Collateral, the Debtors are authorized, but

not directed, to swap or sell the Collateral to replenish the coins in the Earn Program that were

swapped or sold to generate the USD Coin used to repay the Notional Finance Loan and convert

the remaining Collateral into cash in the form of United States Dollars.

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition

cryptocurrency fund transfer requests, in replacement of any checks or cryptocurrency fund

transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to

prepetition amounts owed in connection with the relief granted herein.

6.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings

announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing

constitutes a finding under the federal securities laws as to whether crypto tokens or transactions

involving crypto tokens are securities, and the right of the United States Securities and Exchange

Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

7.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

8.     Nothing in this Order authorizes the Debtors to accelerate any payments not otherwise due.

9.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

3

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE