Immanuel Herrmann
*Pro se Celsius creditor*
Admin of the worldwide Celsius
Earn Customer Telegram group
https://t.me/celsiusearn

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] ) | Case No. 22-10964 (MG) |
| ) | |
| Debtors. ) | (Jointly Administered) |

**IMMANUEL HERRMANN'S JOINDER TO KOWK MEI PO'S MOTION SEEKING A RULING OF FULL TITLE OF OWNERSHIP OF FUNDS WITH RESPECT TO USERS WHO HAVE BEEN BLOCKED ACCESS BY DEBTOR PRIOR TO BANKRUPTCY [D.R. 1373, 1251, AND 877]**

Now comes Immanuel Herrmann, Celsius Network LLC, *et al., pro se* creditor, and submits this joinder in support of the Motion of Kwok Mie Po ("the Motion"), seeking a ruling of full title and ownership for funds that were indefinitely frozen (and effectively whose account was, in my view, constructively closed) by the Debtor, pre-petition.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**PROPERTY RIGHTS STATUS OF KWOK MIE PO'S DEPOSITS**

The contract is, at the very least, ambiguous as to the status of the Movant's deposited assets. Where a contract is ambiguous, New York courts construe issues of ambiguity against the drafting party—in this case, the Debtors. *Jacobson v. Sassower,* 66 N.Y.2d 991, 993 (1985) ("[I]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language.").[2]

Given the ambiguity on the contract terms, Kwok Mie Po's indefinitely frozen assets–which, on information and belief, should have been returned in 30 days after they were frozen but were not–are not property of the Debtors estates under 11 U.S.C. § 541. The Debtor lost title the moment they stopped paying interest. The fact that the account is indefinitely suspended to the point of constructive closure also adds weight to the status of these funds as property of the Movant, not the Debtor.

Similar to the *Withhold* group of customers, the assets are held in "no man's land," in the sense that they Kwok Mie Po's property which the Debtor holds only bare title to, but has no equitable interest in. It is also similar in that the coins are, almost certainly, commingled with Earn assets. When the assets stopped earning interest, however, they ceased to be Earn assets under the contract terms, and converted to being held in bailment, trust, constructive trust–or otherwise held by the Debtor on behalf of the Movant.

---

[2] Thanks to the Custody ad hoc for the case law.

That said, the Movant may even in fact have a better–or somewhat different–claim than Withhold, depending on how this court rules on the contract terms that the Movant is covered by, which may even be more clear than the contract terms that cover Withhold (which the contract is silent on.) There is evidence that the funds were supposed to be returned within 30 days, but were not. While the contract issues are somewhat different from Withhold, the legal theories about entitlement to funds, if it is found that they belong to the Movant, are likely very similar to Withhold.

Where this case is very similar to Withhold is that the mere commingling of the Movant's funds with Earn funds does not mean that Kwok Mie Po does not, in itself, make these funds property of the Debtors Estates, given that the funds can be traced and returned using the same or similar legal theories and principles advanced by the Withhold group of account holders and currently under consideration by this court.

As a recent Withhold group filing notes, which I will reference here for judicial economy and efficiency, while the group's counsel full credit for the thrust of arguments in the filing D.R. 1289, Section 541(d) of the Bankruptcy Code provides that:

> *(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section **only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.** 11 U.S.C. § 541(d).*[3]

---

[3] Emphasis added

The arguments made by the Withhold group of account holders, in D.R. 1289, D.R. 737, and otherwise, for the mechanics and legalities of returning funds that are commingled with Earn funds–but which the debtor holds only bare title and no equitable interest in–are relevant to the Kwok Mie Po motion and should be considered in this court's ruling.

For the sake of judicial economy, it may make sense to first issue a ruling on the Withhold group of account holders, without limiting the ruling to just customers with the internal label "Withhold," and then look at other classes of customers regardless of Celsius' internal labeling of such customers–which could be earn, custody, suspended, pending, etc. In the end, what is relevant is the contractual language and contactural status, either based on plain and unambiguous terms, or where that is not possible, based on ambiguous terms that should be constructed in favor of the non-drafting party (the Movant). That is, until and unless this Court decides to shift from a contract-by-contract review of property rights questions and moves to a broader legal theory, to a settlement, or to some other process.

The Withhold litigation is already helping this court determine *which* coins that are commingled with Earn coins are, and which are not, part of the Debtors Estates based upon the contract terms that users agreed to, whether unambiguous, or ambiguous. Limiting rulings based on Celsius' *internal labeling systems as stated by the Debtor*–i.e. a narrow ruling based upon Celsius' label of "Withhold" only–fails because it does not

address the contracts that customers actually signed and agreed to, but merely reflect internal database entries held by the Debtor. Notably, it has become apparent that the Debtor's internal labeling systems and database entries (whether that be "Earn," "Withhold," or "Custody" within a given user's account) are not always consistent with the treatment or the property rights proscribed by the contracts users signed.

I will be filing my own motion in the coming weeks that will show this to be true with regards to some of the deposits in my account, which are mislabeled as Earn but that I believe would more appropriately be classified as Custody in one instance and entitled to a *pro rata* distribution from Custody, and similarly to Withhold in another instance. The bottom line is that many users have contractual defenses to the *labeling* that appears in the Celsius app next to any given deposit (to the extent creditors even have access to see such deposits and such labels; the Movant does not have access and must rely on, essentially, a printout by the Debtor.)

## **THE STATUS OF KWOK MIE PO'S ACCOUNTS**

I agree with the Movant's assertion that, rather than being "suspended," the accounts in question effectively were closed permanently **and then frozen** by the Debtor with no hope of reactivation.

In fact, even here in bankruptcy, the Debtor has shown that to be true by its behavior, declining to re-open the accounts, requiring this Court to order the account history released to the Movant at great expense and hassle for all parties and to the detriment

of other depositors in terms of cost and difficulty, compared to simply re-activating the accounts in question (which still would be frozen even if reopened and would get the job done!)

According to the Terms of Use, each **User** is entitled to one account unless they seek permission, which Kowk Mie Po did. Practically speaking, one **active** account that has deposits per customer will do; if someone has difficulties setting up an account initially, it was a common business practice for Celsius to suggest users set up a new account to try again. To the extent this is not correct, Celsius should submit declarations certifying that this was not their practice of their Customer Service agents with respect to promotions codes. If it was common practice, the Terms of Use are very clear that, upon emailing customer service, permission can be granted for multiple accounts, as was granted to the Movant.

In the case of Kwok Mie Po, my understanding is that while multiple active accounts were created from the same device, each active account that was in use was for *different* members of the same household, except to the extent permission was granted by Celsius. To the extent there were multiple accounts for one person, *permission appears to have been received*, as is clear in the exhibits.

Sharing a phone is within the ordinary course of business for Celsius customers, and, having substantial experience with Celsius promo codes, I understand exactly the challenges that Kowk Mi Po had.

Many Celsius insiders, early adopters, and others, have multiple accounts for various reasons that show up in the schedules. I would venture that such insiders did not consistently follow the procedures in the Terms of Use to get special permission, but if they did, the Debtor should submit declarations certifying to the evenhandedness of contract enforcement with respect to insiders and early adopters versus others and evidence of where it stored records of special permission, once granted via customer service representatives or otherwise, so that such permission wouldn't be lost. Again, on Kowk Mi Po and family members having multiple accounts, accessed from one device, the Terms of Use are ambiguous and likely in favor of the Movant, particularly given the Movant's communications with customer service.

For all these reasons, the Motion should be sustained. At a minimum, it should not be denied without a full ruling on the Withhold group of account holders first, then a review of how this case is similar or different from that case. What is clear is that many of the legal theories that Withhold has asserted with respect to the return of its members' coins apply to this claim as well.

Respectfully submitted,

Dated: November 17, 2022
Silver Spring, Maryland

/s/ Immanuel Herrmann
Immanuel Herrmann
immanuelherrmann@gmail.com