**Presentment Date:  December 5, 2022 at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  December 2, 2022 at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 6065
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF PRESENTMENT**
**ON DEBTORS' APPLICATION**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS**
**TAX COMPLIANCE AND TAX ADVISORY SERVICES PROVIDER,**
**EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession

(collectively, the "Debtors") will present the *Debtors' Application for Entry of an Order*

*(I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax*

*Advisory Services Provider, Effective as of July 13, 2022, and (II) Granting Related Relief*

(the "Application") and the related order attached to the Application as Exhibit A (the "Order"),

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

to the Honorable Martin Glenn, Chief United States Bankruptcy Judge, for approval and signature

on **December 5, 2022, at 2:00 p.m., prevailing Eastern Time** (the "Presentment Date").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief

requested in the Application or the Order shall: (a) be in writing; (b) conform to the Federal Rules

of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the

Southern District of New York; (c) be filed electronically with the Court on the docket of

*In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing

system and in accordance with all General Orders applicable to chapter 11 cases in the United

States Bankruptcy Court for the Southern District of New York (which are available on the Court's

website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by

**December 2, 2022, at 4:00 p.m., prevailing Eastern Time** (the "Objection Deadline"), by

(i) the entities on the Master Service List available on the case website of the Debtors at

https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the

subject matter of the Application and Order.

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely

filed and served by the Objection Deadline with respect to the Application and Order, the Debtors

shall, on the Presentment Date, submit the Application and Order to the Court, which order the

Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and Order and other

pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of

Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Application and

Order and other pleadings filed in these chapter 11 cases by visiting the Court's website at

http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

New York, New York
Dated: November 18, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                      ross.kwasteniet@kirkland.com
                      chris.koenig@kirkland.com
                      dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Presentment Date:  December 5, 2022 at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  December 2, 2022 at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### DEBTORS' APPLICATION FOR
### ENTRY OF AN ORDER (I) AUTHORIZING THE
### RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS
### TAX COMPLIANCE AND TAX ADVISORY SERVICES PROVIDER,
### EFFECTIVE AS OF JULY 13, 2022 AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this application (this "Application"):

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) authorizing the Debtors to retain and employ Ernst & Young LLP

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

("EY LLP"), a member firm of Ernst & Young Global Limited ("EYGL"), as the Debtors' tax compliance and tax advisory services provider, effective as of July 13, 2022 in accordance with the terms and conditions set forth that certain agreement including that certain engagement letter between EY LLP and the Debtors, as may be amended, supplemented, or modified from time to time, the "Master Services Agreement," a copy of which is attached as Exhibit 1 to the Order, and those certain statements of work pursuant to the Master Services Agreement, including the: (a) Statement of Work - Tax Compliance Services, effective as of July 13, 2022 (the "Tax Compliance SOW"); (b) Statement of Work - Tax Advisory Services, effective as of July 13, 2022 (the "Tax Advisory SOW"); and (c) Amendment No. 1 to Statement of Work - Tax Advisory Services (the "Tax Advisory SOW Amendment," and together with the Tax Compliance SOW and the Tax Advisory SOW, the "SOWs," and together with the Master Services Agreement, the "Engagement Letters").  Copies of the SOWs are attached to the Order as Exhibit 2, Exhibit 3, and Exhibit 4.  For the reasons set forth below, the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest and therefore should be granted.

2.      In support of this Application, the Debtors submit, and incorporate by reference herein, the *Declaration of Elizabeth Harvey in Support of Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider, Effective as of July 13, 2022 and (II) Granting Related Relief* (the "Harvey Declaration"), which is attached hereto as **Exhibit B**, the *Declaration of Yoav Scwartz in Support of Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider, Effective as of July 13, 2022 and (II) Granting Related Relief* (the "Shwartz Declaration"), which

is attached hereto as **Exhibit C**, and the *Declaration of Martin Flashner in Support of Debtors'*
*Application for Entry of an Order (I) Authorizing the Retention and Employment of Ernst & Young*
*LLP as Tax Compliance and Tax Advisory Services Provider, Effective as of July 13, 2022 and*
*(II) Granting Related Relief* (the "Flashner Declaration," and together with the Harvey Declaration
and the Shwartz Declaration, the "Declarations"), which is attached hereto as **Exhibit D**.

### Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of New York
(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the
*Amended Standing Order of Reference* from the United States District Court for the Southern
District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court
entering a final order in connection with this Application to the extent that it is later determined
that the Court, absent consent of the parties, cannot enter final orders or judgments in connection
herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 327(a), 328, and
1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rule 2014(a) of the Federal
Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 and 2016-1 of the Local
Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

6.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are
one of the largest and most sophisticated cryptocurrency based finance platforms in the world and
provide financial services to institutional, corporate, and retail clients across more than
100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which
users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans

using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

7.    On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").[2]  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

8.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 29, 2022, the Court entered an order approving the appointment of an examiner [Docket No. 920].  On October 20, 2022, the Court entered an order approving the appointment of an independent fee examiner [Docket No. 1151] (the "Fee Examiner").

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Campagna Declaration.

**Retention of EY**

9.      The Debtors chose EY LLP to act as tax compliance and tax advisory services provider because EY LLP and its professionals have extensive experience in delivering tax services to companies, including financially distressed companies.  Moreover, the global organization of the member firms of Ernst & Young Global Limited are global leaders in assurance, tax, strategy and transactions, and consulting services.  EY LLP is a member firm among the global organization of member firms of Ernst & Young Global Limited.  The member firms of Ernst & Young Global Limited are separate legal entities and collectively have 700 offices in 150 countries.  Accordingly, the Debtors have determined that EY LLP has the resources and experience necessary to perform services in these chapter 11 cases.

10.     The Debtors seek to employ and retain EY LLP because of its experience and extensive knowledge of US tax and bankruptcy-specific tax issues as well as related issues.  EY LLP is qualified and well-positioned to provide the services contemplated herein to the Debtors in an efficient and cost-effective manner.  EY LLP has considerable experience providing tax analytical services to businesses in a chapter 11 environment and has been employed in numerous chapter 11 cases, including as tax services provider in *In re GTT Commc'ns, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. Jan. 20, 2022), as tax services provider in *In re LSC Commc'ns, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. Oct. 2, 2021), and as tax services provider in *In re Frontier Commc'ns Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020).  Accordingly, the Debtors have determined that EY LLP has the resources and experience necessary to perform tax services in these chapter 11 cases.  The Debtors believe that EY LLP's employment is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest.

**<u>Services to Be Provided</u>**

11.    Subject to the Court's approval, the Debtors anticipate that EY LLP will perform

the following services (collectively, the "<u>Services</u>") pursuant to the Engagement Letters:[3]

**A.  Tax Compliance Services**

a.  Prepare the (i) US federal income tax returns for Celsius Network, Inc. and
Celsius US Holding LLC and its US subsidiaries for the year ended
December 31, 2021 and (ii) prepare the state and local income and franchise
tax returns for certain jurisdictions.

**B.  Tax Advisory Services**

a.  Advise the Debtors' personnel in developing an understanding of the tax
issues and options related to the Debtors' chapter 11 filing, taking into
account the Debtors' specific facts and circumstances, for US federal and
state & local tax purposes;

b.  Advise on the federal and state & local income and indirect tax
consequences of proposed plans of reorganization, including, if necessary,
assisting in the preparation of IRS ruling requests regarding the tax
consequences of alternative reorganization structures and tax opinions;

c.  Understand and advise on the tax implications of reorganization and/or
restructuring alternatives the Debtors are evaluating that may result in a
change in the equity, capitalization and/or ownership of the shares of the
Debtors and the respective assets;

d.  Gather information, prepare calculations, and apply the appropriate federal
and state & local tax law to historic information regarding changes in the
ownership of the Debtors' stock to calculate whether any of the shifts in
stock ownership may have caused an ownership change that will restrict the
use of tax attributes (such as net operating losses, capital losses, credit carry
forwards, and built in losses) and the amount of any such  limitation;

e.  Prepare calculations and apply the appropriate federal and state & local
tax law to determine the amount of tax attribute reduction related to debt
cancellation income and modeling of tax consequences of such reduction;

---

[3]    To the extent that any summary set forth herein differs from the terms of the Engagement Letters, the terms of
the Engagement Letters shall control.  Capitalized terms used but not defined in this section shall have the
meanings ascribed to them in the applicable Engagement Letter.

f.  If necessary, prepare or assist in tax basis balance sheets and computations of stock basis as of certain relevant dates for purposes of analyzing the tax consequences of alternative reorganization structures;

g.  Analyze federal and state & local tax treatment of the costs and fees incurred by the Debtors in connection with the bankruptcy proceedings, including tax return disclosure and presentation;

h.  Analyze federal and state & local tax treatment of interest and financing costs related to debt subject to automatic stay, and new debt incurred as the Debtors emerge from bankruptcy, including tax return disclosure and presentation;

i.  Analyze federal and state & local tax consequences of restructuring and rationalization of intercompany accounts, and upon written request, analyze tax impacts of transfer pricing and related cash management;

j.  Analyze federal and state & local tax consequences of restructuring in the US or internationally during bankruptcy, including tax return disclosure and presentation;

k.  Analyze federal and state & local tax consequences of potential bad debt and worthless stock deductions, including tax return disclosure and presentation;

l.  Analyze federal and state & local tax consequences of employee benefit plans, as requested in writing;

m.  Advise the Debtors' personnel on the bankruptcy tax process and procedure lifecycle, the typical tax issues, options, and opportunities related to a chapter 11 filing, the typical impact of a chapter 11 filing on a corporate tax department's operations, and best practices for addressing such impact areas while operating in bankruptcy and the post-emergence period;

n.  Assist with various tax, compliance, tax account registration/deregistration and/or audit issues arising in the ordinary course of business while in bankruptcy, including but not limited to: IRS and/or state and local income and indirect tax audit defense, voluntary disclosure assistance and/or compliance questions, notices or issues related to: federal, state & local income/franchise tax, sales and use tax, excise tax, property tax, employment tax, credit & incentive agreements and other miscellaneous taxes or regulatory assessments and fees;

o.  Advise, as requested and as permissible, with determining the validity and amount of bankruptcy tax claims or assessments, including but not limited to the following types of taxes: income taxes, franchise taxes, sales taxes, use taxes, employment taxes, property taxes, severance taxes, excise taxes,

credit & incentive agreements, and other miscellaneous taxes or regulatory assessments and fees;

p.  Scope, assist, and advise on the potential for seeking cash tax refunds, including but not limited to the following types of taxes:  income taxes, franchise taxes, sales taxes, use taxes, employment taxes, property taxes, tax credit & incentive agreements and other miscellaneous taxes or regulatory assessments and fees;

q.  Provide documentation, as appropriate or necessary, of tax matters, of tax analysis, opinions, recommendations, conclusions and correspondence for any proposed restructuring alternative, bankruptcy tax issue, or other tax matter described above, including as it relates to any historical transactions (*e.g.*, acquisitions, mergers, dispositions, liquidations, or any materially similar transactions, associated with the Debtors' internal restructuring or otherwise).  The Debtors will be responsible for all accounting and management decisions; and

r.  As requested, assist in remediating potential tax exposures through voluntary disclosure programs.  As part of this process, EY LLP will work with the Debtors to develop an understanding of the issues and alternatives for resolving potential outstanding tax liabilities and where requested assist with preparing and filing materials.  EY LLP will not, however, make any recommendations regarding whether the Debtors should enter into a specific remediation program or settle any potential exposure with any jurisdiction on terms providing by the jurisdiction.  EY LLP will issue a separate SOW related to virtual digital assets ("VDA") services for any specific state for which the Debtors determine they will enter into a VDA program.

12.    Should the Debtors request EY LLP to perform additional services not contemplated by the Engagement Letters, the Debtors and EY LLP will mutually agree upon such services and fees for those in writing, in advance.  The Debtors shall file notice of any proposed additional services and any underlying engagement agreement or statement of work with the Court and serve such notice on the U.S. Trustee, counsel for the Committee, and any party requesting notice under Bankruptcy Rule 2002.  If no such party files an objection within fourteen days of the Debtors filing such notice, such additional services and any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

**Professional Compensation**

13.     Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of EY LLP on the fee terms and at the rates expressed in the Engagement Letters.  The following is a brief summary of some of the salient fee terms of the Engagement Letters, and the Engagement Letters set forth all the compensation and expense reimbursement provisions that shall apply thereunder.

14.     Provision of the Services pursuant to the Tax Compliance SOW will be provided for a fixed fee of (a) $52,150 for compliance services for Celsius Network Inc. for the period ended December 31, 2021 and (b) $52,850 for tax compliance services for Celsius US Holding LLC and its U.S. subsidiaries for the period ended December 31, 2021.  To note, the latter charges have been prepaid, and EY LLP will not charge the Debtors additional fees for this work.

15.     Provision of the Services pursuant to the Tax Advisory SOW and the Bankruptcy Tax SOW Amendment will be billed based on EY LLP's hourly rates for such Services, which currently are as follows:

| Level | Hourly Rate |
|---|---|
| Partner/Principal | $1,250 |
| Executive Director | $1,150 |
| Senior Manager | $950 |
| Manager | $850 |
| Senior | $600 |
| Staff | $400 |

16.     EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties, or tariffs imposed in respect of the Services, all of which the Debtors shall pay.

17.     In addition to the fees set forth above, the Debtors shall reimburse EY LLP for any direct expenses incurred in connection with the retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letters, including, but not limited to, any

potential value-added taxes, sales taxes, and other indirect taxes incurred in connection with the delivery of the Services. EY LLP's direct expenses shall include, but not be limited to, reasonable, customary, and documented out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses (including any fees or reasonable expenses of EY's legal counsel) related to this engagement. EY will charge the Debtors for these direct expenses at EY's cost.

18.     If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena, or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors would, so long as EY LLP is not a party to the proceeding in which the information is sought, reimburse EY LLP for its professional time and expenses, as well as the fees and expenses of its counsel, incurred in responding to such requests.

19.     The hourly rates and corresponding rate structure that EY LLP will use in these chapter 11 cases are the same rate structures that EY LLP uses in similar matters regardless of whether a fee application is required and reflect the normal and customary billing practices for engagements of this complexity and magnitude. The hourly rates vary with the experience and seniority of the individuals assigned. The Debtors believe that these compensation arrangements are market-based and reasonable considering the vast knowledge and experience of EY LLP.

20.     EY LLP may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass onto its clients.

21.     The Debtors believe the Engagement Letters and the fees contemplated therein are consistent with and typical of compensation arrangements entered into by EY LLP with other comparable firms in connection with the rendering of similar services under similar circumstances.

The Debtors believe that the terms and conditions in the Engagement Letters are reasonable, consistent with the market, and designed to compensate EY LLP fairly for its work and to cover fixed and routine overhead expenses.

### EY's Disinterestedness

22.     In connection with the proposed retention by the Debtors in these chapter 11 cases, EY LLP received and reviewed a list of parties in interest (the "Parties in Interest") from the Debtors.  To the extent that EY LLP's review of relationships with the Parties in Interest indicated that they or any other EYGL member firm has in the last three years initiated a client engagement with the Parties in Interest in matters unrelated to these chapter 11 cases, it is indicated in the results of the connections checks in Exhibit B to the Harvey Declaration.

23.     To the best of the Debtors' knowledge, and except to the extent disclosed herein and in the Declarations, EY LLP: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors or their estates; and (c) has no connection to the Debtors, their creditors, or their related parties.  To the extent that EY LLP discovers any new relevant facts or relationships bearing on the matters described herein during the period of its retention, they will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

24.     EY LLP has not received any payments from the Debtors after the Petition Date. Additionally, as of the Petition Date, EY LLP was not owed any money by the Debtors.  Upon approval of its retention in these cases, to the extent there are unknown fees incurred on the Debtors' behalf prior to the Petition Date, EY LLP shall waive its right to receive such unpaid fees.

25.     For these reasons, to the best of the Debtors' knowledge, information, and belief, based on the Declarations, none of EY LLP's past or current engagements would or do appear to

create an interest materially adverse to the interests of the Debtors, creditors, or equity security

holders in these chapter 11 cases.  As such, the Debtors believe that EY LLP is disinterested and

holds no materially adverse interest to the Debtors' estates.

### Certain Other Terms of the Engagement Letters

26.    EY LLP's provision of Services to the Debtors is contingent upon this Court's

approval of each term and condition set forth in the Engagement Letters.

27.    The Debtors or EY LLP may terminate the Engagement Letters, respectively, in

accordance with their terms.  Notwithstanding such termination, however, the Debtors' estates will

remain obligated to pay all accrued fees and expenses as of the effective date of such termination.

Moreover, certain other terms of the Engagement Letters will continue (either indefinitely or for a

specified period of time) following termination.

### Indemnification

28.    As part of the overall compensation payable to EY LLP under the Engagement

Letters, the Engagement Letters provide EY LLP certain indemnification rights

(the "Indemnification Provision").  The Indemnification Provision was negotiated between the

Debtors and EY LLP at arm's-length and in good faith.  The Debtors believe that the

Indemnification Provision is reasonable and in the best interests of the Debtors, their estates, and

their creditors.

### No Duplication of Services

29.    The Debtors intend that the services of EY LLP will complement, and not duplicate,

the services rendered by any other professional retained in these chapter 11 cases.  To the best of

the Debtors' knowledge, EY LLP understands that the Debtors have retained, and may retain,

additional professionals during the term of the engagement and will work cooperatively with such

professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**Basis for Relief**

30.     The employment and retention of EY LLP under the terms described herein is appropriate under sections 327(a) and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

> (a)     is not a creditor, an equity security holder, or an insider;
>
> (b)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (c)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

31.     Furthermore, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).  EY LLP's prepetition relationship with the Debtors is therefore not an impediment to their retention to provide postpetition services to the Debtors.

32.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer. . ." 11 U.S.C. § 328(a).  The terms and conditions of EY LLP's retention as described herein are

reasonable and in keeping with the terms and conditions typical for engagements of this size and character. It is reasonable for the Debtors to seek to retain and employ EY LLP to provide tax services on the terms and conditions set forth herein.

33.     EY LLP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee guidelines, and any other applicable procedures and orders of the Court.

34.     For all the reasons stated above and in the Declarations, the Debtors' retention and employment of EY LLP is warranted.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

35.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Motion Practice

36.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application. Accordingly, this Application satisfies Local Rule 9013-1(a).

### Notice

37.     The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and

14

Exchange Commission; (g) counsel to the Fee Examiner; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

38.    No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: November 18, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) AUTHORIZING THE RETENTION**
**AND EMPLOYMENT OF ERNST & YOUNG LLP AS**
**TAX COMPLIANCE AND TAX ADVISORY SERVICES PROVIDER,**
**EFFECTIVE AS OF JULY 13, 2022 AND (II) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to retain and employ Ernst & Young LLP, a member firm of Ernst & Young Global Limited ("EYGL") in the United States ("EY LLP"), as the Debtors' tax compliance services and tax advisory services provider, effective as of July 13, 2022 in accordance with the terms and conditions set forth in the Engagement Letters, copies of which are attached as **Exhibit 1**, **Exhibit 2**, **Exhibit 3**, and **Exhibit 4**, respectively, to this Order, and (b) granting related relief, all as more fully set forth in the Application; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and upon the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

Declarations; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that EY LLP does not hold or represent an adverse interest to the Debtors or their estates and is disinterested under 11 U.S.C. § 101(14); and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      In accordance with sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain EY LLP as the Debtors' tax compliance and tax advisory services provider, effective as of July 13, 2022, in accordance with the terms and conditions set forth in the Application and Engagement Letters, as modified by this Order.

3.      EY LLP shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, this Order, and any other applicable orders of this Court.

4.      The terms of the Engagement Letters, including without limitation, the compensation provisions, are reasonable terms and conditions of employment and are hereby approved.

5.      Consistent with, and subject to, the terms of the Engagement Letters and this Order, EY LLP is hereby authorized to perform the Services provided for in the Engagement Letter.

6.      EY LLP is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code.

7.      EY LLP shall file monthly, interim, and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of this Court and consistent with the proposed compensation set forth in the Engagement Letters.

8.      EY LLP's fixed fees pursuant to the Engagement Letters (and any supplemental engagement agreements or statements of work subsequently approved in these cases) shall be subject to the standard of review set forth in section 330 of the Bankruptcy Code.  EY LLP shall keep reasonably detailed time records in half-hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered, and the total amount of compensation requested by EY LLP.

9.      EY LLP's hourly fees pursuant to the Engagement Letters (and any supplemental engagement agreements or statements of work subsequently approved in these cases) shall be subject to the standard of review set forth in section 330 of the Bankruptcy Code.  With respect to the Advisory SOW, EY LLP shall keep reasonably detailed time records in one-tenth (1/10) hour increments and will submit with any fee application, together with the time records, a narrative summary (by project category) of services rendered and will identify each professional rendering services, the category of services rendered, and the total amount of compensation requested by EY

LLP.  With respect to the Compliance SOWs, EY LLP will keep summary time records in half-hour increments describing the EY LLP's daily activities and the identity of persons who performed such tasks for Services performed under the Compliance SOWs.

10.    To the extent the Debtors and EY LLP enter into any additional engagement letters or statements of work, the Debtors will file such engagement letters or statements of work with the Court and serve such engagement letters or statements of work upon the U.S. Trustee, counsel for the Committee, and any party requesting notice under Bankruptcy Rule 2002.  If any party objects to the additional services to be provided by EY LLP within fourteen days of such new engagement letters or statements of work being filed and served, the Debtors will promptly schedule a hearing before the Court.  All additional services will be subject to the provisions of this Order.  To the extent no related timely objections are filed, such additional engagement letters shall be deemed approved pursuant to this Order.

11.    The indemnification provisions included in the Engagement Letters are approved, subject to the following:

(a)    EY LLP shall not be entitled to indemnification, contribution, or reimbursement for services other than those described in the Engagement Letters and the Application, unless such services and indemnification therefor are approved by the Court; provided, that to the extent additional engagement letter(s) are filed with the Court and no parties object to such engagement letter(s) in accordance with the procedures described in paragraph 10, such engagement letter(s) shall be deemed approved by the Court;

(b)    The Debtors shall have no obligation to indemnify EY LLP, or provide contribution or reimbursement to EY LLP, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from EY LLP's actual fraud, bad faith, self-dealing, breach of fiduciary duty (if any such duty exists), gross negligence or wilful misconduct; (ii) judicially determined (the determination having become final), to be based on a breach of EY LLP's contractual obligations to the Debtors; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) immediately above, but determined by this

Court, after notice and a hearing, to be a claim or expense for which EY LLP should not receive indemnity, contribution, or reimbursement under the terms of EY's retention by the Debtors pursuant to the terms of the Engagement Letters and Application, as modified by this Order; and

(c)   If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these chapter 11 cases, EY LLP believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letters (as modified by this Order) and Application, including without limitation the advancement of defense costs, EY LLP must file an application in this Court, and the Debtors may not pay any such amounts to EY LLP before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by EY LLP for indemnification, contribution, and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify EY LLP. All parties in interest shall retain the right to object to any demand by EY LLP for indemnification, contribution, and/or reimbursement.

12.    Prior to any increases in EY LLP's hourly rates pertaining to the Debtors, EY LLP shall file a supplemental declaration with this Court, and provide five business days' notice to the Debtors and the U.S. Trustee. The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.

13.    Notwithstanding anything to the contrary in the Application or the Engagement Letters, EY LLP shall not be entitled to reimbursement for fees and expenses of their counsel incurred in connection with any objection to their fees. In the event that, during the pendency of these chapter 11 cases, EY LLP seeks reimbursement for any attorneys' fees or expenses, the invoices and supporting time records from such attorneys shall be included in the respective fee applications, and such invoices and time records shall be in compliance with the Local Rules and subject to any U.S. Trustee Guidelines and Court approval under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under

section 327 of the Bankruptcy Code; *provided* that EY LLP shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of their fee applications in these chapter 11 cases.

14.     Notwithstanding anything in the Engagement Letters to the contrary, EY LLP shall apply any remaining amount of its prepetition retainer or credit balance as a credit toward postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to EY LLP.

15.     EY LLP will review its files periodically during the pendency of these chapter 11 cases to determine whether any disqualifying conflicts or other circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, EY LLP will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

16.     EY LLP shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

17.     Notwithstanding anything in this Application or the Engagement Letters to the contrary, (a) to the extent that EY LLP uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these chapter 11 cases, EY LLP shall pass through the cost of the Contractors to the applicable Debtors at the same rate that they pay the Contractors and (b) seek reimbursement for actual costs only.  Contractors from whom EY LLP seeks to pass through fees on an hourly basis to the applicable Debtors shall be subject to the same conflict checks as required for EY LLP, and such Contractors shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

18.     To the extent that the express provisions of this Order are inconsistent with the provisions of the Application, the Declarations, or the Engagement Letters, the provisions of this Order shall control.

19.     The Debtors and EY LLP are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

20.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23.     Notwithstanding any provision to the contrary in the Application or the Engagement Letters, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order and EY's retention.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Master Services Agreement**



# MASTER SERVICES AGREEMENT

This Master Services Agreement (this "Agreement") is entered into between Ernst & Young LLP, a Delaware limited liability partnership ("EY") and Celsius Network, LLC on behalf on itself and on behalf of its affiliated entities (collectively "Client"), effective as July 13, 2022 (the "Effective Date").

## Structure

1. This Agreement sets out the contractual structure for the provision of services ("Services") by EY to Client subsequent to Client filing a petition under Chapter 11 ("Chapter 11") of the United States Bankruptcy Code ("Bankruptcy Code") on or about July 13, 2022 with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). EY's performance of Services is contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms and conditions that are set forth in this Agreement. This Agreement shall be effective as of the date of Client's filing of a Chapter 11 petition in the Bankruptcy Court on July 13, 2022. EY will perform the Services described in separate Statements of Work entered into between the parties that incorporate the terms of this Agreement as well as the terms of any applicable Module(s) to form a separate and independent contract ("Contract"), which shall be subject to approval of the Bankruptcy Court.

2. For the purposes of any Contract, (a) "Client" in such Contract (including in this Agreement and the applicable Module(s) as incorporated into such Contract) means the Client Entity that executes the applicable Statement of Work, and (b) "party" means either EY or such Client Entity.

3. If there is any inconsistency between provisions in different parts of a Contract, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the applicable Statement of Work and any annexes thereto, (b) any applicable Module, (c) this Agreement, and (d) other annexes to a Contract.

## Definitions

4. The following terms are defined as specified below:

    (a) "AICPA" means the American Institute of Certified Public Accountants.

    (b) "Client Affiliate" means an entity that controls, is controlled by, or is under common control with, Client.

    (c) "Client Entity" means Client or a Client Affiliate.

    (d) "Client Information" means information obtained by EY from Client or from a third party on Client's behalf.

    (e) "Deliverables" means any advice, communications, information, technology or other content that EY provides under this Agreement.

    (f) "EY Firm" means a member of the EY network and any entity operating under a common branding arrangement with a member of the EY network.

    (g) "EY Persons" means EY's or any other EY Firm's subcontractors, members, shareholders, directors, officers, partners, principals or employees.

DocuSign Envelope ID: C43BEA1A-3278-4F86-871B-AA693D8CDDB1



**EY**

Building a better
working world

(h) "Internal Support Services" means internal support services utilized by EY, including but not limited to: (a) administrative support, (b) accounting and finance support, (c) network coordination, (d) IT functions including business applications, system management, and data security, storage and recovery, and (e) conflict checking, risk management and quality reviews.

(i) "Module" means a module, supplemental to this Agreement, entered into by the parties and containing further terms applicable to a particular type of Services.

(j) "Personal Data" means Client Information relating to identified or identifiable natural persons or that is otherwise considered to be "personal data," "personal information" or similar term under applicable data protection laws.

(k) "Report" means a Deliverable (or any portion of a Deliverable) issued on EY letterhead or under the EY brand or otherwise identifiable as being prepared by or in association with EY, any other EY Firm or EY Person.

(l) "Statement of Work" means a document, incorporating this Agreement and any applicable Module, entered into by the parties describing particular Services that EY will perform.

(m) "Support Providers" means external service providers of EY and other EY Firms and their respective subcontractors.

(n) "Tax Advice" means tax matters, including tax advice, tax opinions, tax returns or the tax treatment or tax structure of any transaction to which the Services relate.

## Provision of the Services

5.  EY will provide the Services using reasonable skill and care in accordance with applicable professional standards, including those established by the AICPA**.**

6.  Subject to Bankruptcy Court approval, EY may subcontract a portion of the Services to one or more EY Firms, as well as to other third parties, who may deal with Client directly. EY will remain solely responsible to Client for the performance of the Services. From time to time, non-CPA personnel may perform the Services.

7.  EY will act as an independent contractor and not as Client's employee, agent or partner. Client will remain solely responsible for management decisions relating to the Services and for determining whether the Services are appropriate for its purposes. Client shall assign qualified personnel to oversee the Services, as well as the use and implementation of the Services and Deliverables.

8.  Client agrees to promptly provide to EY (or cause others to so provide) Client Information, resources and assistance (including access to records, systems, premises and people) that EY reasonably requires to perform the Services.

9.  Client Information will be accurate and complete in all material respects. EY will rely on Client Information and, unless EY expressly agrees otherwise in writing, EY will have no responsibility to verify it. The provision of Client Information (including Personal Data), resources and assistance to EY will be in accordance with applicable law and will not infringe any copyright or other third-party rights.

DocuSign Envelope ID: C48BEA1A-3278-4F86-871B-AA693DBCDDB1



**Building a better working world**

## Deliverables

10. All Deliverables are intended for Client's use in accordance with the Contract under which they are provided.

11. Client may not rely on any draft Deliverable. EY shall not be required to update any final Deliverable as a result of circumstances of which EY becomes aware, or events occurring, after its delivery.

12. Unless otherwise provided for in a Contract, Client may not disclose a Report (or any portion or summary of a Report), to third parties or refer to EY or to any other EY Firm or EY Person in connection with the Services, except:

(a) to a Client Affiliate (subject to these disclosure restrictions);

(b) to Client's lawyers (subject to these disclosure restrictions), who may review it only in connection with advice relating to the Services;

(c) to Client's independent auditors (subject to these disclosure restrictions) who may review it only in connection with their audit;

(d) to the extent, and for the purposes, required by applicable law (and Client will promptly notify EY of such legal requirement to the extent Client is permitted to do so);

(e) to other third parties (with EY's prior written consent), who may use it only as specified in such consent; or

(f) to the extent it contains Tax Advice.

If Client discloses a Report (or a portion thereof), Client shall not alter, edit or modify it from the form provided by EY, provided, any material to be redacted is agreed in advance with us. Client shall inform those to whom it discloses a Report (other than disclosure of Tax Advice to tax authorities) that they may not rely on it for any purpose without EY's prior written consent. Subject to the foregoing, Client is not prohibited by this Section 12 from using Deliverables that do not qualify as Reports in communication with third parties provided that: (i) there is no reference to, or communication of, EY's or any other EY Firm's involvement in the development of such Deliverables, and (ii) Client assumes sole responsibility for such use and communication.

## Limitations

13. As part of the parties' arrangements, the parties have mutually agreed the following limitations of liability (which also apply to others for whom Services are provided under any Contract):

(a) Neither party will be responsible, in contract or tort, under statute or otherwise, for any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive or special damages in connection with claims arising out of a Contract or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated.

(b) Client (and any others for whom Services are provided) may not recover from EY, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss under the respective Contract during the twelve (12) months

DocuSign Envelope ID: C48BEA1A-3378-4E86-871B-AA693DBCDDB1



**EY**

Building a better
working world

preceding the date of the event giving rise to the loss. This cap is an aggregate cap across all claims under such Contract prior to such date.

14. The limitations set out in Section 13(b) above will not apply to losses or damages caused by EY's fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

15. Client (and any others for whom Services are provided under a Contract) may not make a claim or bring proceedings relating to the Services under a Contract against any other EY Firm or EY Person. Client shall make any claim or bring proceedings only against EY.

**No Responsibility to Third Parties**

16. Unless specifically otherwise agreed with Client in writing, EY's responsibility for performance of the Services is to Client and Client alone. Should any Deliverable be disclosed, or otherwise made available, by or through Client (or at Client's request) to a third party (other than Tax Advice), Client agrees to indemnify EY, as well as the other EY Firms and the EY Persons, against all claims by third parties, and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising solely out of such disclosure.

**Intellectual Property Rights**

17. Each party retains its rights in its pre-existing intellectual property.  Except as set out in the applicable Contract, any intellectual property developed by EY, and any working papers compiled in connection with the Services (but not Client Information contained in them), shall be the property of EY.

18. Client's right to use Deliverables under a Contract arises following payment for the Services.

**Confidentiality, Data Protection & Security**

19. Except as otherwise permitted by a Contract, neither party may disclose to third parties any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential (including, in the case of EY, Client Information). Either party may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of a Contract;

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information;

(c) was known to the recipient at the time of disclosure or is thereafter created independently;

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement; or

(e) must be disclosed under applicable law, legal process or professional regulations.

20. EY uses other EY Firms, EY Persons and Support Providers who may have access to Client Information in connection with delivery of Services as well as to provide Internal Support Services. EY shall be responsible for any use or disclosure of Client Information by other EY Firms, EY Persons or Support Providers to the same extent as if EY had engaged in the conduct itself.

21. Client agrees that Client Information, including Personal Data, may be processed by EY, other EY Firms, EY Persons and their Support Providers in various jurisdictions in which they operate (EY office locations are listed at www.ey.com). Client Information, including any Personal Data, will be processed in accordance with laws and professional regulations applicable to EY, and appropriate technical and organizational security measures designed to protect such information will be

DocuSign Envelope ID: C48BEA1A-3378-4E85-871B-AA693DBCDDB1



implemented. EY will also require any Support Provider that processes Personal Data on its behalf to provide at least the same level of protection for such Personal Data as is required by such legal and regulatory requirements. If Personal Data relating to a data subject in the UK, European Union or Switzerland (collectively, "European Personal Data") is required for EY to perform the Services, the parties agree to negotiate in good faith a data transfer addendum intended to validate the transfer of such European Personal Data by Client to EY prior to such transfer. Transfer of Personal Data among members of the EY network is subject to the EY Binding Corporate Rules Program available at www.ey.com/bcr. Further information about EY's processing of Personal Data is available at www.ey.com/privacy.

22.   To the extent permitted by applicable law, regulation or governmental directive, EY will notify Client without undue delay in the event of loss, disclosure or unauthorized or unlawful processing of Personal Data and provide Client with relevant information about the nature and extent of the event.

23.   In certain circumstances, individuals may have the right under applicable data protection law to access, correct, erase, port, restrict or object to the processing of their personal data. Such requests may be sent to privacy.office@ey.com.  To the extent permitted by law, regulation or governmental directive, EY will notify Client without undue delay upon receipt of any verifiable request from a data subject or supervisory authority relating to a Personal Data right.  If EY is required to provide Personal Data in response to such verifiable request, or to a request from Client, providing that data will be part of the Services and, to the extent permitted by applicable law, Client will be responsible for EY's reasonable charges incurred in doing so.

24.   As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of processing any Personal Data when providing the Services. Accordingly, unless otherwise specified in a Contract, when processing Personal Data subject to the General Data Protection Regulation or other applicable data protection law (including, without limitation, state data protection (e.g., the California Consumer Privacy Act)), EY acts as an independent controller (or similar status that determines the purposes and means of processing), and not as a processor under Client's control (or similar status acting on behalf of Client) or as a joint controller with Client. For Services where EY acts as a processor processing Personal Data on Client's behalf, the parties will agree appropriate data processing terms in the applicable Statement of Work.

25.   EY and other EY Firms may retain and use Client Information for benchmarking, analytics, research and development, thought leadership and related purposes, and to enhance their services, provided that any use does not externally identify, or make reference to, Client. In all such matters, EY and other EY Firms will comply with applicable law and professional obligations.

26.   If Client requires EY to access or use Client or third-party systems or devices, EY shall have no responsibility for the confidentiality, security or data protection controls of such systems or devices, or for their performance or compliance with Client requirements or applicable law.

27.   EY may provide Client access to use certain data, software, designs, utilities, tools, models, systems and other methodologies and know-how that EY owns or licenses for the purpose of Client's receipt of the Services or as otherwise expressly agreed in writing by EY ("EY Tools"). Client shall be responsible for compliance by all Client personnel and third parties acting on Client's behalf with the terms applicable to the use of such EY Tools. As between EY and Client, EY (or another EY Firm) owns all right, title, interest, and all intellectual property rights in and to the EY Tools, including any enhancements, modifications, and derivative work thereof.

DocuSign Envelope ID: C43BEA1A-3278-4F85-871B-AA693DBCDDB1



*License to EY Tools During the Statement of Work Term:* To the extent that EY provides Client access to any EY Tools during the term of an applicable Statement of Work, EY hereby grants to Client a nonexclusive, paid-up, internal license, during the term of the applicable Statement of Work, to use, execute, and display the EY Tools, for the sole purpose of Client's receipt of the Services from EY under the applicable Statement of Work.

*License to EY Tools After the Statement of Work Term:* EY may allow Client to use certain EY Tools, after the term of an applicable Statement of Work, for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under such Statement of Work. Any EY Tools that EY allows Client to use after the term of such Statement of Work will be identified in the Statement of Work as a "Leave Behind EY Tool." With respect to such an identified Leave Behind EY Tool, to the extent permitted by applicable law and professional regulations, EY hereby grants to Client a nonexclusive, paid-up, internal license, to use, execute, and display the Leave Behind EY Tool, after the term of the Statement of Work, for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under the Statement of Work.

*EY Tools Disclaimers and Acknowledgments:* Client's use of any EY Tools may be subject to additional terms, which EY will provide to Client in writing. Client acknowledges that EY may at any time, modify, replace, direct Client to discontinue use of any EY Tools, or otherwise revoke, limit or condition Client's access and right to use any EY Tools. ALL EY TOOLS ARE PROVIDED "AS IS" AND WITHOUT ANY WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF TITLE, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR ANY WARRANTY THAT THE OPERATION OF EY TOOLS WILL BE UNINTERRUPTED, ERROR FREE OR THAT EY TOOLS WILL BE OR REMAIN COMPATIBLE WITH ANY OF CLIENT'S HARDWARE OR SOFTWARE. IN NO EVENT SHALL EY BE LIABLE FOR LOSS OF OR DAMAGE TO CLIENT'S DATA RESULTING FROM THE CLIENT'S USE OF THE EY TOOLS. Client shall not decompile, dissemble or otherwise reverse engineer the EY Tools, unless authorized by law or the relevant regulatory agency. Client shall not sell, lease, assign or otherwise transfer any portion of the EY Tools.

## Compliance

28.  In connection with the performance of its respective rights and obligations under a Contract, EY and Client each will comply with all laws and regulations of any jurisdiction applicable to it from time to time concerning or relating to bribery or corruption, including, without limitation, the U.S. Foreign Corrupt Practices Act ("FCPA").

## Fees and Expenses Generally

29.  Client shall pay EY's professional fees and specific expenses in connection with the Services as detailed in the applicable Contract. Client shall also reimburse EY for other reasonable expenses incurred in performing the Services. EY's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which Client shall pay (other than taxes imposed on EY's income generally). Unless otherwise set forth in the applicable Contract, payment is due within thirty (30) days following the date of each of EY's invoices.

30.  Subject to Bankruptcy Court approval, if necessary, EY may charge additional professional fees if events beyond its control (including Client's acts or omissions) affect EY's ability to perform the Services as agreed in the applicable Contract, or if Client asks EY to perform additional tasks.

DocuSign Envelope ID: C48BEA1A-3278-4E86-871B-AA693DBCDDB1



**EY**

Building a better
working world

31.  If EY is required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or a Contract, Client shall reimburse EY for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless EY is a party to the proceeding or the subject of the investigation.

### Force Majeure

32.  Neither party shall be liable for breach of a Contract (other than payment obligations) caused by circumstances beyond such party's reasonable control.

### Term and Termination

33.  A Contract applies to all Services associated with such Contract whenever performed after the date of Client's filling of a Chapter 11 petition (including before the date of the applicable Contract).

34.  A Contract shall terminate on the completion of the Services associated with such Contract. This Agreement and/or any or all Contracts may be terminated at any time by Client or EY immediately upon written notice delivered to the other party, but in any event this Agreement including all Statements of Work will expire upon the effective date of Client's confirmed plan of reorganization, or liquidation of Client's assets under Chapter 11 or 7 of the Bankruptcy Code, or otherwise.

35.  Client shall pay EY for all work-in-progress, Services already performed, and expenses incurred by EY up to and including the effective date of the termination or expiration of a Contract, as well as any applicable termination fees set forth in the applicable Contract.  Payment is due within thirty (30) days following the date of the invoice for these amounts or as quickly as the Bankruptcy Code, Bankruptcy Rules, Local Rules and any relevant orders of the Bankruptcy Court allow.

36.  The term of this Agreement will expire five (5) years following the Effective Date (the "Term"), unless the parties mutually agree to renew or extend it, provided Client continue to operate under Chapter 11 bankruptcy protection.  For clarity, this Agreement shall survive with respect to any Contract entered into during the Term, even if such Contract remains in effect beyond the Term.

37.  The provisions of this Agreement, including Section 12 and Section 38 otherwise with respect to Deliverables and Reports, that give either party rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement or applicable Contract and shall survive completion of the Client's bankruptcy whether through a confirmed plan of reorganization under Chapter 11, liquidation of the Client's assets under Chapter 7 of the Bankruptcy Code, or otherwise.

### Governing Law and Dispute Resolution

38.  This Agreement, any Contract under this Agreement, and any non-contractual matters or obligations arising out of a Contract or the Services, shall be governed by, and construed in accordance with, the laws of the state of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum

DocuSign Envelope ID: C48BEA1A-3378-4F86-871B-AA693DBCDDB1



**EY**

Building a better
working world

(unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to these Terms and Conditions. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Client, EY and any all successors and assigns thereof.

### United States Specific Terms

39. The U.S. Department of Labor (DOL) regulations, at 20 CFR § 655.734(a)(1)(ii)(A), require the posting of notice of a Labor Condition Application (LCA) in instances where individuals holding certain visas (e.g., H-1B) will be working onsite. Where applicable, EY and the Client will work together to develop an appropriate notice to enable compliance with this requirement.

### Miscellaneous

40. A Contract constitutes the entire agreement between the parties as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any previously agreed confidentiality agreements. Except as expressly provided otherwise herein, this Agreement does not modify the terms or provisions for other professional services executed prior to Client's filing of a Chapter 11 petition in the Bankruptcy Court.

41. Each party may execute this Agreement or a Contract, as well as any modifications to them, by electronic means, and each party may sign a different copy of the same document. Both parties must agree in writing to modify this Agreement or a Contract, subject to Bankruptcy approval, if necessary.

42. Client agrees that EY and the other EY Firms may, subject to professional obligations, act for other clients, including Client's competitors.

43. Neither party may assign any of its rights, obligations or claims under this Agreement or a Contract.

44. If any provision of this Agreement or a Contract (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

45. Client acknowledges that the U.S. Securities and Exchange Commission regulations indicate that, where auditor independence is required, certain confidentiality restrictions related to tax structure may render the auditor to be deemed to be non-independent or may require specific tax disclosures. Accordingly, if and only to the extent that U.S. Securities and Exchange Commission auditor independence regulations apply to the relationship between Client or any of Client's associated entities and any EY Firm, with respect to the tax treatment or tax structure of any transaction to which the Services relate, Client represents, to the best of its knowledge, as of the date of a Contract, that neither Client nor any Client Affiliate has agreed, either orally or in writing, with any other advisor to restrict Client's ability to disclose to anyone such tax treatment or tax structure. Client agrees that the impact of any such agreement is its responsibility.

DocuSign Envelope ID: C43BEA1A-3278-4F85-871B-AA693DBCDDB1



**EY**

Building a better
working world

46.  EY and Client acknowledge that Client or a Client Affiliate (the "Local Client") may seek to enter into an agreement with another EY Firm (the "Local EY Firm") for the provision of services in another country (the "Local Services").  The parties agree that the Local Client and the Local EY Firm may enter into a local country agreement (the "Local Agreement") for Local Services that incorporates the terms and conditions of this Agreement, subject to any modifications they deem appropriate under local law, regulation, professional standard, or local custom and practice.  For clarity, in such event, (i) the Local Agreement shall govern all Local Services; and (ii) neither the Local Client nor the Local EY Firm will be deemed to be parties to this Agreement in connection with the Local Services.

47.  Client represents that Client Affiliates for whom Services are performed by EY in connection with a Contract shall be bound by the terms of such Contract.

48.  Neither party may use or reference the other's name, logos or trademarks without its prior written consent.

49.  The limitations in Sections 13 and 15 and the provisions of Sections 16, 20, 22 and 37 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

50.  By agreement to the provision of the Services, EY is not providing a guarantee to Client that EY's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee Client's successful reorganization under Chapter 11.


**Additional Provisions**

51.  EY will provide the Services as described in the applicable Statement of Work to Client, contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms of this Agreement.

52.  The Services may be modified from time to time by Client and EY's mutual written agreement and approval of the Bankruptcy Court, if required.

53.  Client acknowledges and agrees that, whether or not the Statement of Work has been approved by the Bankruptcy Court at the time any Deliverable is rendered, any such Deliverable rendered by EY prior to the delivery of its final Deliverable is preliminary in nature and cannot be relied upon for any purpose, including penalty protection.

54.  Any activities not described in the applicable Statement of Work are not covered by the fees stated therein.  These services will be considered outside the scope of such Statement of Work and are the responsibility of Client to perform on a timely basis unless otherwise agreed by the parties in writing (in an amendment or a separate Statement of Work) and approved by the Bankruptcy Court.

55.  Each Statement of Work will identify the individuals who will lead the EY engagement team in providing the Services.  If any of these individuals ceases to provide the Services to the Client pursuant to such Statement of Work, EY will so advise the Client and, if that person is replaced, provide the Client with the name of the professional's replacement.  Other staff, not identified therein, may be utilized as required to conduct EY's work in an efficient manner.

56.  EY will submit an itemized and detailed billing statement for each applicable Statement of Work, and EY will request payment of EY's fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the Bankruptcy



Court and any relevant administrative orders.  EY will submit EY's invoices as the work progresses and payment of them will be made within thirty (30) days following the date of the invoice for these amounts upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

57. EY acknowledges that payment of EY's fees and expenses is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of EY and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.



**IN WITNESS WHEREOF,** EY and Client have each caused this Agreement to be signed and delivered by its duly authorized representative/s.

**ERNST & YOUNG LLP**                    **Celsius Network, LLC**

Signed:   *Elizabeth Harvey*            Signed:   *Chris Ferraro*

                                                 1315E92CCA0F408

Name: Elizabeth Harvey                  Name:  Chris Ferraro
_____          _____

Title:  Partner                         Title: CFO
_____          _____

DocuSign Envelope ID: C43BEA1A-3378-4E86-871B-AA693DBCDDB4



EY
Building a better
working world

# Appendix 1

# Dispute resolution procedures

**Mediation**

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that the mediator is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, of or beneficial owner with decision-making capacity over any EY Firm audit client.

The mediator shall conduct the mediation as the mediator determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The parties and the mediator may disclose the existence, content or results of the mediation only in accordance with applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.  The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 30 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

**Arbitration**

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

DocuSign Envelope ID: C43BEA1A-3378-4F85-871B-AA693D8CDDB1



The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless the arbitrator has agreed in writing to these procedures and has confirmed in writing that the arbitrator is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, of or beneficial owner with decision-making capacity over any EY Firm audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.  In deciding the dispute, the arbitration panel shall apply the limitations period that would be applied by a court deciding the matter in the same jurisdiction, and shall have no power to decide the dispute in any manner not consistent with such limitations period.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

## **Exhibit 2**

**Statement of Work - Tax Compliance Services**



Ernst & Young LLP
One Manhattan West
New York, NY 10001

Tel: +1 212 773 3000
ey.com

Building a better
working world

### Statement of Work
### US Tax Compliance Services FY 2021

This Statement of Work, effective July 13, 2022 (this "SOW"), is made by Ernst & Young LLP ("we or "EY") and Celsius Network, LLC on behalf of itself and its affiliated entities (collectively, "you" or "Client"); pursuant to the Agreement, dated July 13, 2022 (the "Agreement"), between EY and Celsius Network, LLC which was executed in connection with the Client filing a petition under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on July 13, 2022 with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and describes certain services that EY will perform for the Client during the Client's Chapter 11 proceedings.  This SOW shall be effective as of the date of the Client's filing a Chapter 11 petition with the Bankruptcy Court.

This SOW incorporates the Agreement by reference to form a contract. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement.

**Scope of Services**

EY will provide the following Tax Compliance Services to you (the "Services").

- Preparation of the US federal income tax returns for Celsius Network, Inc. and Celsius US Holding LLC and its US subsidiaries for the year ended December 31, 2021.  In addition, we will prepare the state and local income and franchise tax returns for those jurisdictions listed in Appendix A.

- The specific services we will provide as part of this engagement include:

  - Estimated tax payment computations
  - Extension requests
  - Federal tax depreciation calculations (regular, AMT, ACE) as well as gain/loss on disposal of fixed assets
  - State tax deprecation calculations
  - Federal Form 5472, Information Return of a 25% foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business, as applicable



- o Federal Form 5471, Information Return of U.S. Person with Respect to Certain Foreign Corporations
- o FinCEN Form 114, Report of Foreign Bank and Financial Accounts, as applicable
- o Federal Form 1042 as applicable.

The above listed returns are what we will deliver to you for the tax year in this SOW, but our fees to deliver may need to be adjusted as final regulations are issued to account for the continued implementation of the TCJA and CARES Act provisions, and other legislative and regulatory updates. We will communicate with you regularly regarding any changes that may impact your scope and fees.

Treasury regulations require taxpayers to file disclosure statements relating to certain tax strategies/transactions that the Internal Revenue Service ("IRS") has identified as Listed Transactions or Transactions of Interest, any transaction that is substantially similar to a Listed Transaction or Transaction of Interest, and Other Reportable Transactions. The disclosure statements must be filed with the proper tax returns and also sent separately to the IRS. In addition, some states have enacted tax shelter legislation requiring taxpayers to file reportable transaction disclosure statements with the appropriate state income and franchise tax returns. Failure to disclose properly any of these transactions/strategies in which Client directly or indirectly participated may result in the imposition of penalties. During the process of gathering data to prepare Client's tax return(s), EY requires Client to complete the Reportable Transaction Questionnaire, which is attached to this SOW as Appendix D. If there is a particular person other than you who should respond to such questionnaire on behalf of Client, please immediately provide to EY that person's name, position, and telephone number. EY shall not be liable for any penalties resulting from Client's failure to accurately and timely respond to the questionnaire or to timely file the required disclosure statements.

Unless you indicate otherwise, we will check the box on your returns, when the option is available, indicating that the taxing authorities can discuss the return directly with the EY preparer who signed it. These discussions are limited to certain issues related to the processing of the returns. Interactions with taxing authorities beyond the scope of processing issues may require a Power of Attorney that must be signed by you. Any services that may be performed under this arrangement are subject to the terms and conditions of this SOW but are not considered covered under the fee quoted for the preparation of your return(s) and therefore will be billed separately. If you prefer that this box not be checked, please contact your EY tax professional.

This engagement does not include (1) an analysis of any shift in ownership of Client stock, (2) the preparation of statements required by Internal Revenue Code §§382 and 383, or (3) a determination of whether such code sections limit the amount of taxable income or tax that can be offset by net operating loss carryforwards, certain recognized built-in losses, certain excess credits, or net capital loss carryovers, (4) Additional services that may relate to Tax Cuts & Job Acts (TCJA Tax Reform) and/or additional tax legislation is enacted, (5) state income or sales tax nexus determinations, (6) Change in Accounting Method  and Form 3115. The limitations under these provisions may have a material adverse impact on Client's tax liability. We will not prepare a return on which taxable income (or tax) is offset by such attributes unless an analysis is performed. If you would like EY to perform such an analysis, those services would be covered under a separate engagement letter. Please contact Elizabeth

DocuSign Envelope ID: C43BEA1A-3378-4E85-871B-AA693DBCDDB1



Harvey if you would like to discuss additional services and fees associated with the analysis and reporting requirements under these rules.

This engagement does not include any advice or determinations regarding what expenses may be qualified research expenses under Internal Revenue Code §41 or comparable state statutes.

The tax compliance services do not include responding or assisting Client in responding to notices from taxing jurisdictions not prepared by EY, and for no more than 5 hours per entity, other than notices received during the term of this SOW relating to returns prepared by EY when such notices pertain to the compilation, assembly, or processing of the return. EY is prepared to assist Client in responding to other notices/communications from taxing authorities, however, such services are beyond the scope of the tax compliance services and will be billed according to our hourly billing rates.

All Client copies of the tax return(s) and Schedules K-1, as applicable, will be presented to Client in an electronic format.

Returns and Partner/Shareholder Deliverables, as applicable, will be generated using a default presentation that conforms with regulatory standards. Customization for presentation preferences is not included in the scope of this engagement. If Client requests customizations, EY will discuss this request and provide fee estimates for these services, which would be covered as an amendment to this SOW.

Upon written request and pre-approval for SEC channel 1 clients where audit committee pre-approval is required, EY will assist Client with other tax compliance services, including preparation of additional returns for the current tax year, and extension requests and computation of estimated tax payments for subsequent tax years. However, these services are not covered under the fee quoted in this letter. We will be happy to discuss and provide fee estimates for such additional services, which would be invoiced separately and subject to all other terms and conditions of this SOW and the above-referenced Agreement.

**Your obligations - Compliance**

Client authorizes EY, its affiliates, other members of the global Ernst & Young network, including those located outside the United States, and subcontractors providing services on our or their behalf, to disclose Client's tax return information received or generated in connection with the Services described in this SOW, prior-years' tax return information and information relating to the immediately succeeding tax year, to and among each other for the purpose of rendering the Services, discussing and providing other services to you (including tax advisory services and bringing to your attention planning opportunities we may identify based upon the preparation and/or review of your tax returns), and conducting quality reviews and reviews of compliance with EY policies and professional standards. You have the ability to request a more limited disclosure of tax return information than that described above. If, at any time, you would like us to narrow the scope of the information to be disclosed, please contact us in writing and we will limit any disclosures that have not yet occurred. You acknowledge that this consent will be valid for three years from the date this SOW is signed by you below.

DocuSign Envelope ID: C43BEA1A-3278-4E86-871B-AA693DBCDDB1



Subject to Bankruptcy Court approval, we may subcontract a portion of the Services to one or more EY Firms and to subcontractors, including retired EY tax partners, working under our direction who may communicate directly with you.  Subject to Bankruptcy Court approval, we anticipate subcontracting portions of the Services to Kost, Forer, Gabbay & Kasierer ("EY Israel").  EY, however, will remain solely responsible to Client for the performance of the Services.  If EY has prepared or reviewed (or will prepare or review) Client's U.S. income tax returns, Client authorizes the EY Firms, including those located outside the United States, and our subcontractors to disclose information received or generated in connection with the preparation of any such U.S. income tax returns of the Client to and among each other for the purpose of rendering the Services and discussing and providing other services to you.  You have the ability to request a more limited disclosure of tax return information than that described above.  If, at any time, you would like us to narrow the scope of the information to be disclosed, please contact us in writing and we will limit any disclosures that have not yet occurred.  You acknowledge that this consent will be valid for three years from the date this SOW is signed by you below.

You will not, and you will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this SOW.

**Scope specific provisions**

The Client shall maintain books and records as required by law and as is necessary to support any positions taken on any tax return included within the scope of this engagement in the event of any taxing authority examination.

EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. We will not conduct a review to detect fraud or illegal acts.

If we receive a request from a third party for any information relating to our Tax Advice, we will notify you and will not release any such information unless you have executed an appropriate written consent authorizing such disclosure and the third party has executed a non-reliance and release letter acceptable to us in form and substance.

**Other Provisions**

Client shall assign a qualified person to oversee the Services. Client is responsible for all management decisions relating to the Services and for determining whether the Services are appropriate for its purposes.

DocuSign Envelope ID: C43BEA1A-3378-4F86-871B-AA693DBCDDB1



**Engagement Team**

You have identified Lior Koren as your contact with whom we should communicate about these Services.  Your contact at EY for these Services will be Elizabeth Harvey, working with Amir Chenchinski of EY Israel.

**Fees:**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

Fees for compliance services for Celsius Network Inc. for the period ended December 31, 2021 are $52,150.

Fees for Compliance Services for Celsius US Holding LLC and its US subsidiaries for the period ended December 31, 2021 are $52,850.

In addition to the fees set out above expenses and disbursements will be charged as follows:
- Additional state tax returns, over those jurisdictions listed on Appendix B to the letter will be billed at $950 per form;
- Additional 5472 forms over the number of forms prepared for 2020 will be billed at $1,500 per form;
- Additional 5471 forms over the number of forms prepared for 2020 will be billed as follows:
  - $1,500 for short version
  - $5,000 for full version

In addition, any time incurred by EY and/or EY Israel professionals to review 2021 tax return matters resulting from the Company's bankruptcy filing, various transactions and an internal restructuring which occurred in 2021 and/or the Company's current financial and operational status are not included in the fixed fee estimate above and will be billed based on the rate card in the Bankruptcy Tax Services SOW dated [x]. it is hereby clarified that any work related to changes / amendments to the filed US tax returns will be billed separately based on the EY hourly rates.

You shall also pay, if applicable, any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you.

If EY subcontracts with EY Israel, and during the bankruptcy Celsius pays fees/expenses to EY that relate to work done by EY Israel and that EY remits to EY Israel, then in accordance with the Law for Reducing the Use of Cash, 2018, by bank transfer to the account of "Kost Forer Gabbay & Kasierer". Account details will be specified in each invoice. According to Regulation 7(a)(1) to the Israeli VAT regulations, 1976, KFGK will issue a tax invoice/ receipt after receiving payment from the client.

DocuSign Envelope ID: C43BEA1A-3278-4E86-871B-AA693DBCDDB1



EY
Building a better
working world

If, during the course of the engagement covered by this letter, it becomes apparent that the fee will exceed this estimate, we will discuss with the Company the adjustments to be made to our fee arrangements.

Any changes to Client's business or structure from acquisitions, divestitures, operating model changes, bankruptcy etc., as well as any legislative or regulatory changes that significantly alter the scope of the Services, or the amount of time required to deliver the Services, will be considered an event for which EY may modify the fees.  Accordingly, EY and Client shall promptly meet to negotiate an adjustment in the fees payable to EY as a result of such changes.  EY shall have no obligation to commence work in connection with such changes until the revised fee amount is agreed.

Any legislative or regulatory change that significantly alters the scope of the Services, or the amount of time required to deliver the Services, will be considered an event for which EY may modify the fees.  Accordingly, EY and Client shall promptly meet to negotiate an adjustment in the fees payable to EY as a result of such changes.  EY shall have no obligation to commence work in connection with such changes until the fee impact is agreed upon by the parties in writing and approved by the Bankruptcy Court.

We will bill you for our fees, expenses, and applicable taxes or other charges, if any, on a monthly basis. Payment is due upon receipt of our invoice.

In addition, you shall reimburse EY for expenses incurred in connection with the performance of the Services which were pre-approved by the Client, including reasonable and customary out-of-pocket expenses such as travel, meals accommodations and other expenses specifically related to this engagement. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients. Actual out-of-pocket costs incurred by EY while executing the Services shall be pre-approved by the Client and will be billed separately.

In witness whereof, the parties have executed this SOW as of the date set forth above.

*Ernst & Young LLP*

AGREED:

Celsius Network, LLC, on behalf of itself and its affiliates

By: _____
DocuSigned by:
*Chris Ferraro*
1315E92CCA0F408...

[Address, Title] Chris Ferraro

Date: _____9/29/2022_____

DocuSign Envelope ID: C48BEA1A-3278-4E86-871B-AA693D8CDDB1



EY

Building a better
working world

## Appendix A: Affiliated entities

Celsius US Holding LLC
Celsius Mining LLC
Celsius KeyFi LLC
Celsius Network LLC
Celsius Operations LLC
Celsius Networks Lending LLC
Celsius US LLC
Celsius Network Limited (UK)
Celsius Lending LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network IL LTD
GK8 LTD
Celsius Services CY LTD (Cyprus)
Celsius (AUS) Pty LTD (Australia)
Celsius Network (Gibraltar) Limited (Gibraltar)
Celsius EU UAB (Lithuania)



### Appendix B: State and local tax returns listing

Celsius Network Inc.

AZ

CA

CO

FL

GA

NJ

NYS

NYC

TX

Celsius US Holding LLC and its US subsidiaries

NJ

GA

NC

KY

DocuSign Envelope ID: C43BEA1A-3278-4E86-871B-AA693DBCDDB4



**Appendix C: list of entities filing forms 5471 and 5472**

**<u>5471:</u>**

Celsius Network Europe d.o.o. Beograd.
Celsius EU UAB (Lithuania)
Celsius Services CY Ltd (Cyprus)
Celsius (AUS) Pty Ltd. (Australia)
Celsius Network (Gibraltar)

**<u>5472:</u>**

Celsius Network Limited (UK)
Celsius Network LLC

DocuSign Envelope ID: C43BEA1A-3278-4E86-851B-AA693D8CDDB1



**Building a better working world**

## Appendix D: Workpaper Acknowledgement

Celsius Network Inc., Celsius US Holding LLC and its US subsidiaries (collectively, "Client") has asked EY to provide copies of its 2021 tax compliance workpapers created solely for purposes of preparing the client's tax return, calculating estimated taxes, or preparing the extensions (collectively, the "Workpapers") to Client only for (a) its internal use or (b) submission solely to taxing authorities for purposes of responding to inquiries in connection with the examination of Clients' tax returns or positions.

Client acknowledges that EY created the Workpapers solely for purposes of preparing its computations in connection with its tax compliance services for Client pursuant to this Agreement between Client and EY (the "Agreement").  Client further acknowledges that (a) information contained in the Workpapers may have been based upon estimates and assumptions that were made at the time the Workpapers were prepared because complete and accurate information was not available to EY at that time; (b) such estimates and assumptions were discussed with and approved by Client; (c) the bases for these estimates and assumptions have likely changed since the Workpapers were prepared; and (d) the Workpapers have not been updated by EY to reflect information that may have become available subsequent to their preparation.  Furthermore, in preparing the Workpapers, EY relied on information and representations provided by Client and its representatives that were not independently verified by EY at the time the Workpapers were created.  As a result, EY may not have identified irregularities or errors if they occurred.  Moreover, EY, in its exercise of professional judgment, may have assessed tax issues in a different manner than Client might have assessed the same issues.  The Workpapers are not a substitute for any other inquiries or procedures that Client should undertake for the purpose of satisfying itself with respect to Client's tax situation, nor may the Workpapers or the information contained therein be suitable for such purpose or any other purposes of Client.

Client acknowledges and agrees that the Workpapers and all copies thereof provided to Client pursuant to this letter and the Agreement are and shall remain the sole property of EY. Client will use the Workpapers and the information contained therein only for the purposes set forth above.

Except as permitted by this letter or as otherwise required by applicable law or legal process, Client may not disclose, orally or in writing, any of the Workpapers or the information contained therein, in whole or in part, without the prior written consent of EY.  Client shall advise EY promptly if it receives any subpoena, service or other court order for access to the Workpapers or for information contained therein.

Please confirm Client's agreement with the foregoing by signing and dating the enclosed copy of this letter and returning it to Elizabeth Harvey.



**Building a better
working world**

## Appendix E: Reportable Transaction Questionnaire

**Purpose**:
Ernst & Young LLP (EY) uses this questionnaire to prepare your tax returns. US Treasury Department regulations require disclosure statements relating to certain transactions, plans and arrangements. These disclosure statements must be filed with the tax return and with a separate IRS office. Failure to make a proper disclosure may result in penalties. Some states have similar disclosure requirements. EY shall not be liable for any penalties resulting from your failure to accurately and timely respond to these questions or to timely file disclosure statements.

**Instructions:**
This questionnaire must be completed for each year for which EY prepares an income tax return. If you are completing this questionnaire for one or more individuals or legal entities, your response should take into account the activities of each. If this questionnaire is being completed in connection with a statement of work, it should address all of the taxpayer(s) and return(s) included in the scope of the engagement. Otherwise, we've included an attachment that lists the taxpayers and returns that you should consider as you complete the questionnaire. The terms "you," "your" and "taxpayer" refer collectively to all of these individuals and entities.

**Question:**

Please review the questions on the next two pages for each individual and entity covered by this engagement and check the box below that is applicable.

☐    My answer is no or N/A to all of the questions. (Please sign and date this questionnaire to complete it.)

☐    My answer is yes to one or more of the questions and/or I am unsure of my answer to one or more of the questions. (Please complete the box below before signing and dating this questionnaire.)

If your answer is yes or unsure with respect to one or more questions, list in the following box the applicable taxpayer and the question number(s) of the reportable transaction and/or, if applicable, the transaction number(s) of the listed transaction or transaction of interest to which the answer relates.

DocuSign Envelope ID: C43BEA1A-3278-4E86-871B-AA693D8CDDB1



**Disclosure in connection with a reportable transaction**

If you are completing this questionnaire only with respect to a Regulated Investment Company (RIC), start with question 4. If you are completing this questionnaire for any other taxpayer, start with question 1. Section references are to the Internal Revenue Code of 1986, unless otherwise indicated.

**Questions:**

1.  **Loss transactions:** Have you directly or indirectly entered into a transaction that results in claiming a gross loss (no netting against gains) over the loss threshold amounts described below that is deductible pursuant to a provision of the tax code that treats the transaction as a sale or other disposition (for example, Section 741 or Section 988) or otherwise results in a deduction under Section 165?

    Note that this question does not include a loss from a casualty or involuntary conversion. Also, consider this question with regard to losses reported on your federal or California state tax returns for each of the categories of taxpayers described in the paragraphs that follow that applies to you (more than one, if applicable). If you are a US shareholder of a controlled foreign corporation ("CFC", as defined below) or a 10% shareholder of a qualified electing fund ("QEF", as defined below), include any loss that the foreign corporation would report if it were treated as a domestic corporation filing a US return and consider the activities of the CFC or QEF in connection with the other questions below.

    **Loss threshold amounts**

    Individuals and trusts: At least $2 million on this tax return (or $50,000 or greater in the case of a Section 988 foreign currency loss transaction), or at least $4 million when combining this tax return with other years' returns. Include transaction losses that flow through from a partnership or S corporation.

    Partnerships and S corporations: At least $2 million on this tax return, or at least $4 million when combining this tax return with other years' returns. This category includes partnerships with at least one partner that is not a C corporation (looking through any partners that are partnerships).

    Corporate entities: At least $10 million on this tax return, or at least $20 million when combining this tax return with other years' returns. This category includes:

    - C corporations
    - Tax-exempt entities (with respect to Unrelated Business Taxable losses)
    - Partnerships, if every partner is a C corporation (looking through any partners that are partnerships)
    - Controlled foreign corporations (CFCs) – a non-US corporation that has US shareholders (i.e., US persons who directly or indirectly own 10% or more of the combined voting power, or, effective for taxable years of foreign corporations beginning after December 31, 2017, the value of all classes of stock of such non-US corporation) that own in the aggregate more than 50% of the total vote or value of such non-US corporation



Building a better
working world

- Qualified electing funds (QEFs) – a passive foreign investment company that meets the requirements of Section 1295 and the regulations thereunder, which include an annual taxpayer election

2. **Confidentiality agreement:** Have you entered into a transaction offered to you by a paid tax advisor who placed a limitation on your disclosure of the tax treatment or tax structure of the transaction?

3. **Contingent fees or other contractual protection:** Will your tax returns reflect the results of a transaction for which you (or a related party) paid fees to an advisor that were contingent on realizing federal, California or New York tax benefits, or for which you (or a related party) have the right to the refund of any fees if the federal, California or New York tax effects of the transaction are not sustained?

4. **Federal Listed Transactions and Transactions of Interest:** Have you participated in any transaction that is a Federal Listed Transaction or Federal Transaction of Interest or that might be considered the same as or substantially similar to any of the Federal Listed Transactions or Transactions of Interest and the tax benefits from your participation are expected to be reflected in the current or future year tax returns? The Federal Listed Transactions and Transactions of Interest are summarized in the attachment to this questionnaire. If the answer is "yes," please provide us with a copy of any previously filed Form 8886 disclosure.

5. **State Listed Transactions:** If you file a California, Colorado, New York, or Oregon state tax return, have you participated (i.e., in current or previous filing years) in any transaction that is an applicable State Listed Transaction or might be considered substantially similar to any of the applicable State Listed Transactions and the tax benefits from your participation are expected to be reflected in current or future year tax returns? The State Listed Transactions are summarized in the attachment to this questionnaire. If the answer is "yes," please provide us with a copy of any previously filed Form 8886 disclosure or equivalent state disclosure forms.

Signature on behalf of the identified entity, including any applicable CFCs and QEFs:

_____    _____    _____
Signature                                    Title (if applicable)       Date

DocuSign Envelope ID: C43BEA1A-3378-4F85-851B-AA693D8CDDB4

# Listed Transactions and Transactions of Interest (revised April 2020)

As of April 2020, below are the titles of the transactions identified as "Listed Transactions" and "Transactions of Interest" by the IRS and "Listed" transactions by State taxing authorities, along with the citation to the pronouncement describing the transaction in greater detail.

**Federal Listed Transactions**

1. Lease strips and other stripping transactions: Transactions that allow one participant to realize rental or other income from property or service contracts and another participant or the same participant in a different tax year reports deductions related to that income. Identified in IRS Notice 95-53 and IRS Notice 2003-55.

2. 401(k) accelerator: Transactions in which taxpayers claim deductions for contributions to a qualified cash or deferred arrangement or matching contributions to a defined contribution plan where the contributions are attributable to compensation earned by plan participants after the end of the taxable year. Identified in Rev. Rul. 90-105.

3. Multiple employer plans: Trust arrangements purported to qualify as multiple employer welfare benefit funds exempt from the limits of §§419 and 419A. Identified in IRS Notice 95-34. (See item #21 below regarding collectively bargained welfare benefit funds.)

4. Certain contingent installment sales by partnerships with tax-indifferent partners: Transactions involving contingent installment sales of securities by partnerships in order to accelerate and allocate income to a tax-indifferent partner, such as a tax-exempt entity or foreign person, and to allocate later losses to another partner. Identified as ACM Transactions. See IRS Notice 2009-59.

5. Distributions from charitable remainder trusts: Transactions involving distributions described in Treas. Reg. §1.643(a)-8 from charitable remainder trusts. This transaction uses a §664 charitable remainder trust to convert appreciated assets into cash, while avoiding the gain on the disposition of the assets. See IRS Notice 2009-59.

6. Lease-in, lease-out transactions (LILOs): Transactions in which a taxpayer purports to lease property and then purports to immediately sublease it back to the lessor (that is, lease-in/lease-out or LILO transactions). See IRS Notice 2009-59.

7. Distribution of encumbered property: Transactions involving the distribution of encumbered property in which taxpayers claim tax losses for capital outlays that they have in fact recovered. Identified in IRS Notice 99-59.

8. Fast-pay arrangements with corporate stock: Transactions involving fast-pay arrangements as defined in Treas. Reg. §1.7701(l)-3(b) in which a corporation's outstanding stock is structured (in whole or in part) to return the stockholder's investment by distributions treated as dividends. Identified as Fast-pay Arrangements. See IRS Notice 2009-59.

9. Counterbalancing debt instruments: Transactions involving the acquisition of two debt instruments the values of which are expected to change significantly at about the same time in opposite directions. Identified in Rev. Rul. 2000-12.

A member firm of Ernst & Young Global Limited

DocuSign Envelope ID: C43BEA1A-3378-4E85-851B-AA693DBCDDB1

10. Artificially inflated tax basis of partnership interests: Transactions generating losses resulting from artificially inflating the tax basis of partnership interests. Identified in IRS Notice 2000-44.

11. Employee stock transfer: Transactions involving the purchase of a parent corporation's stock by a subsidiary, a subsequent transfer of the purchased parent stock from the subsidiary to the parent's employees, and the eventual liquidation or sale of the subsidiary. Identified in Notice 2000-60.

12. Guamanian trusts: Transactions purporting to apply §935 to Guamanian trusts. Identified in IRS Notice 2000-61.

13. Intermediary ("Midco") transactions: A broad range of "routine" transactions that happen to include the acquisition, disposition, or movement of stock and assets. The typical Midco transaction is one in which a taxpayer desires to sell stock of a corporation and a buyer desires to purchase the assets. These parties conduct the transaction through an intermediary, with the taxpayer selling the stock to the intermediary and the buyer then purchasing the assets from it and claiming a fair market value basis. The intermediary, having enabled the target corporation to not pay tax on the built-in gain in its assets, usually receives compensation for participating in the transaction. See IRS Notice 2008-111 and IRS Notice 2001-16.

14. Contingent liability transactions: Transactions involving a loss on the sale of stock acquired in a purported §351 transfer of a high basis asset to a corporation and the corporation's assumption of a liability that the transferor has not yet taken into account for federal income tax purposes. Identified in IRS Notice 2001-17.

15. Basis shifting on stock redemptions not subject to US tax: Redemptions of stock in transactions not subject to US tax in which the basis of the redeemed stock is purported to shift to a US taxpayer. Identified in IRS Notice 2001-45.

16. Inflated tax basis: Transactions in which the taxpayer as part of an acquisition of assets also assumes debt exceeding their fair market value. The taxpayer claims a higher basis due to the debt assumption. Upon sale of the assets, the taxpayer claims a loss for basis in excess of the fair market value of the assets. Identified in IRS Notice 2002-21.

17. Reporting payments made on notational principal contracts while disregarding offsetting future payments: Transactions using a notional principal contract to claim deductions for periodic payments made by the taxpayer while disregarding the accrual of a right to receive offsetting payments in the future. Identified in IRS Notice 2002-35.

18. Allocation of straddle gain or loss in a common trust fund or pass-through entity: Transactions involving the creation of straddles in a common trust fund or pass-thru entity (i.e., partnership, S corporation, or grantor trust), with the allocation of gain to one party and loss to another party. Identified in IRS Notice 2002-50, IRS Notice 2002-65 and IRS Notice 2003-54.

19. Prohibited ownership of S corporation securities by an employee stock ownership plan (ESOP): Transaction in which an S corporation and an associated employee stock ownership plan (ESOP), which was formed on or before March 14, 2001, is subsequently transferred and the ESOP claims the benefit of a delayed effective date under §409(p). As a result of the delayed effective date, the earnings of the S corporation are not currently taxed. Identified in IRS Rev. Rul. 2003-6. (See item 26 below regarding S corporation ESOPs involving synthetic equity.)

A member firm of Ernst & Young Global Limited

20. Offshore deferred compensation arrangements involving an offshore employment leasing company: Transactions involving an individual taxpayer who purportedly resigns from his or her current employer or professional corporation and enters an employment contract with an offshore employment leasing company. The offshore leasing company leases the individual's services back to the original employer, typically using one or more intermediaries. The participants claim tax benefits in the form of reduced or avoided individual and corporate income and employment taxes. Identified in IRS Notice 2003-22.

21. Collectively bargained welfare benefit funds: Trust arrangements purporting to qualify as collectively-bargained welfare benefit funds exempt from the limits of §§419 and 419A. Identified in IRS Notice 2003-24. (See item #3 above regarding multiple employer plans.)

22. Transfers of compensatory stock options to related persons: Transactions involving an individual, generally an employee, who has been granted a nonstatutory compensatory stock option, and transfers that option to a related person. The individual does not claim compensation income when the related person exercises the stock option or, in cases where the related person pays for the option with a note or other deferred payment, the individual does not claim compensation income until receiving the deferred payments. Identified in IRS Notice 2003-47.

23. Contested liability trusts: Transactions involving transfers to a trust to provide for the satisfaction of contested liabilities in an attempt to accelerate deductions for the contested liabilities under §461(f). Identified in IRS Notice 2003-77.

24. Offsetting foreign currency option contracts: Transactions in which a taxpayer claims a loss upon the assignment of a §1256 foreign currency option contract to a charity but fails to report the recognition of gain when the taxpayer's obligation under an offsetting non-section 1256 foreign currency option contract terminates. Identified in IRS Notice 2003-81.

25. Roth IRA contributions in transactions designed to avoid contribution limits: Transactions designed to avoid the statutory limits on contributions to a Roth IRA contained in §408A using a corporation, substantially all the shares of which are owned or acquired by the Roth IRA. Identified in IRS Notice 2004-8.

26. S corporation ESOP involving synthetic equity: Transaction involving an S corporation that is at least 50% owned by an employee stock ownership plan (ESOP,) designed to avoid current taxation of the S corporation's profits generated by the business activities of a specific individual or individuals. The profits are accumulated and held for the benefit of the individual(s) in a qualified subchapter S subsidiary (QSub) or similar entity (such as a limited liability company), the profits are not paid to the individual(s) as compensation within 2½ months after the end of the year in which earned, and the individual or individuals have rights to acquire stock or similar interests equal to 50% or more of the fair market value of the QSub. Identified in IRS Rev. Rul. 2004-4. (See item #19 above also involving S corporation ESOPs.)

27. Pension plans involving excessive life insurance: Transactions involving a qualified pension plan that includes life insurance contracts on the life of a participant in the plan with a face amount that exceeds the participant's death benefit under the plan by more than $100,000. Upon the death of the covered employee, the life insurance contract proceeds exceeding the death benefit are applied to the premiums under the plan for other participants. Identified in Rev. Rul. 2004-20.

28. Foreign tax credit intermediary transactions: Transactions in which, pursuant to a prearranged plan, a domestic corporation purports to acquire stock in a foreign target corporation and makes an election under §338 before selling all or substantially all of the target corporation's assets in a transaction that triggers foreign tax on built-in gains that are not subject to US tax. The domestic corporation claims foreign tax credits generated with respect to the foreign income tax imposed on the asset sale. Identified in IRS Notice 2004-20. IRS.  IRS Notice 2020-19 withdraws Notice 2004-20 effective for transactions entered into after April 6, 2020.

29. S corporation nonvoting stock issued to tax-exempt organization: Transactions in which S corporation shareholders attempt to transfer the incidence of taxation on S corporation income by donating S corporation nonvoting stock to an exempt organization, while retaining the economic benefits associated with that stock (through warrants issued to the S corporation shareholders that would dilute the shares of nonvoting stock held by the exempt organization or agreements to repurchase the nonvoting stock from the exempt organization at a value that is substantially reduced by reason of the warrants). Identified in IRS Notice 2004-30.

30. Intercompany financing through partnerships using guaranteed payments: Transactions in which a corporation that is exempt from US federal income tax, such as a foreign corporation, provides financing to a domestic subsidiary by investing in the preferred stock of the subsidiary through a partnership in an attempt to convert interest payments that would not be currently deductible under §163(j) into deductible payments. The foreign corporation's return on investment is structured as a guaranteed payment by the partnership, most of which is allocated to, and deducted by, another domestic subsidiary that is a partner in the partnership. In some cases, the guaranteed payments are made to a partner that is unrelated to the foreign corporation and the partnership's obligations to make the guaranteed payments are assured by the foreign corporation or a related party. Identified in IRS Notice 2004-31.

31. Sale-in, lease-out transaction (SILOs) with a tax-indifferent party: Transactions in which a taxpayer/lessor enters into a purported sale-leaseback arrangement with a tax-indifferent person (such as a foreign entity, a domestic tax exempt organization or government, or a company in a net operating loss position or other tax neutral situation) as lessee in which substantially all of the tax-indifferent person's future rental payment obligations and purchase option rights are economically defeased/nullified and the taxpayer's risk of loss from a decline, and opportunity for profit from an increase, in the value of the leased property are substantially limited, and there is an obligation on the lessee to provide to the lessor a service contract arrangement or contingent residual value insurance in the event that the lessee purchase option right is not exercised. These leases are frequently referred to as "lease-to-service contracts" or "QTE leases." Identified in IRS Notice 2005-13.

32. Loss importation transactions: Transactions in which a taxpayer acquires control of a foreign entity treated as a corporation for US tax purposes, and uses the foreign entity's offsetting positions with respect to foreign currency or other property for the purpose of importing losses, but not corresponding gains. Gain is not imported because the taxpayer causes the foreign entity to close out the gain position while the foreign entity is still treated as a foreign corporation. The taxpayer enters into a new offsetting position to lock in the unrealized loss on the loss position and eliminate further economic risk. The taxpayer then imports the unrealized loss into the US, typically by making a check-the-box election with respect to the foreign entity and then closing out the loss position. It may also import the assets of the foreign entity into the US in another type of carryover

A member firm of Ernst & Young Global Limited

DocuSign Envelope ID: C43BEA1A-3278-4E86-871B-AA693D8CDDB1

basis transaction such as a reorganization described in section 368(a). The taxpayer must make the check-the-box election or otherwise dispose of the stock of the foreign entity within 30 days of acquiring it, so that the foreign entity will not qualify as a CFC and the gain it recognizes will not be taxable under subpart F. Identified in IRS Notice 2007-57.

33. Welfare benefit funds utilizing cash value life insurance policies: Trust arrangements purporting to provide employees welfare benefits in the form of cash value life insurance policies. In these arrangements the employer claims deductions for its contributions to the trust per the premium amounts paid, but the employee/policy owners include little if any in corresponding income. These arrangements may involve either a taxable trust or a tax-exempt trust. Identified in IRS Notice 2007-83.

34. Distressed asset trust: Distressed Asset Trust: Transactions in which trusts are used to shift built-in losses in distressed assets that have been transferred into such trusts by a tax-indifferent party to a beneficiary who is a US taxpayer. The distressed assets are then written off by the US taxpayer under §166 or sold with the US taxpayer claiming a deduction under §165, even though the US taxpayer has not incurred an economic loss. Identified in IRS Notice 2008-34.

35. Basket option contract transactions: Transactions in which a taxpayer enters into a contract, denominated as an option with a stated term exceeding one year, to receive a return based on the performance of a basket of assets that qualify as actively traded property. The taxpayer retains the right to change the assets in the basket or the trading algorithm that determines how the assets in the basket are traded. The taxpayer takes the position that any income from the performance of the assets in the basket is deferred until the contract terminates, and the entire amount of income is treated as long-term capital gain if the contract itself is held for more than one year. Identified in IRS Notice 2015-73.

36. Syndicated conservation easement transaction: Transactions in which an investor receives promotional materials, oral or written, that offer prospective investors in a pass-through entity the possibility of a charitable contribution deduction that equals or exceeds an amount that significantly exceeds the amount of the investor's investment. The investor purchases an interest, directly or indirectly (through one or more tiers of pass-through entities), in the pass-through entity that holds real property. The pass-through entity that holds the real property contributes a conservation easement encumbering the property to a tax-exempt entity and allocates, directly or through one or more tiers of pass-through entities, a charitable contribution deduction to the investor, which the investor reports on its federal income tax return. Identified in IRS Notice 2017-10.

## Federal Transactions of Interest

- **TOI1.** Contribution of a successor member interest to a charity: A transaction in which a taxpayer acquires a successor interest in an LLC or similar entity that directly or indirectly holds real property, transfers the rights more than one year after the acquisition to a charity described in section 170(c), and claims a charitable contribution deduction that is significantly higher than the amount that the taxpayer paid to acquire the rights. Identified in IRS Notice 2007-72.

- **TOI2.** Toggling grantor trusts: Transactions in which grantor creates and funds a grantor trust with four options with values that are expected to move inversely in relation to at least one of the other options. The grantor then gives a unitrust interest to a beneficiary while retaining a noncontingent remainder interest and the power to reacquire trust property at a specified future date by substituting other property of equivalent value. Through a series of successive

A member firm of Ernst & Young Global Limited

transactions involving the sale of the remainder interest to an unrelated buyer for an amount substantially equal to the fair market value of the options contributed to the trust, the "activation" of the substitution power on its effective date, the close-out of the "loss options," and the sale of the unitrust interest to the unrelated buyer, the grantor trust status of the trust is purportedly "toggled off" and "toggled on." The grantor claims a tax loss attributable to the close-out of the loss options even though the grantor has not suffered an equivalent economic loss. A variation of the transaction described above involves an initial contribution of liquid assets instead of options, and a subsequent substitution of appreciated property for the liquid assets. This variation is designed to enable the grantor to avoid the recognition of gain upon the disposition of the appreciated assets. Identified in IRS Notice 2007-73.

- **TOI3.** Potential for avoidance of tax through sale of charitable remainder trust interests: Transactions involving the sale or other disposition of all interests in a charitable remainder trust (subsequent to the contribution of appreciated assets to the trust but after their sale by the trust). The grantor or other noncharitable claims an increased basis in the annuity or unitrust interest sold based upon the tax basis of assets within the trust (rather than with reference to the tax basis of assets transferred to the trust) thereby recognizing little, if any, gain from such sale or other disposition of the unitrust or annuity interest. Identified in IRS Notice 2008-99.

- **TOI4**. Use of domestic partnership with CFC partners to avoid taxable Subpart F inclusions: Transactions involving a US taxpayer owning at least one CFC which is a partner in a domestic partnership (the other partner(s) may or may not also be CFCs). The domestic partnership owns a CFC Opco that earns income of a type which is subpart F income. The US taxpayer claims that the subpart F income of the CFC Opco is not subpart F income in the hands of the CFC partner (or the partner's US owner) because of the interposition of the domestic partnership. Identified in IRS Notice 2009-7.

- **TOI5.** Basket contract transactions: Basket Contract Transactions: Transactions in which a taxpayer enters into a contract to receive a return based on the performance of a basket of assets. The contract has a term of more than one year (or overlaps two of the taxpayer's taxable years). The assets in the basket may include securities, commodities, foreign currency, interests in entities that trade in such assets, or similar property. The taxpayer retains the right to change the assets in the basket, change the algorithm that determines the assets, or to request the counterparty to make either of these changes. On the termination of the contract, the taxpayer receives a settlement based on the performance of the assets in the basket. The taxpayer takes the position that any income from the performance of the assets in the basket is deferred until the contract terminates, and the entire amount of income is treated as long-term capital gain if the contract itself is held for more than a year. Identified in IRS Notice 2015-74.

- **TOI6**. Micro-captive transactions: Transactions in which a person ("A"), directly or indirectly owns an interest in a trade or business ("Insured"), which purchases insurance from an entity ("Captive") or from an intermediary insurance company that initially accepts the risk and premium then subsequently transfers it to Captive, commonly referred to as a fronting company ("C"). Captive is broadly defined as an insurance company that is at least 20% owned in voting power or value by either A, Insured, or a related party within the meaning of § 267(b) or §707(b). Captive makes an election under section 831(b) to be taxed only on taxable investment income. During a specified "computation period," generally five years, either (i) Captive's liabilities for losses and claims administrative expenses are less than 70% of premiums less policyholder dividends, or (ii) a portion of the payment under the insurance contract is, or will, be made available to A, Insured, or any related party in a manner that does not result in taxable income

A member firm of Ernst & Young Global Limited

or gain (e.g., loan). Participants to the transaction may include A, Insured, Captive, and C. Identified in IRS Notice 2016-66 and IRS Notice 2017-08.

- 
- **California Listed Transactions**
- **CA1.**  Real estate investment trust (REIT) consent dividends: Transactions occurring after February 28, 2000, in which a REIT takes a deduction for a consent dividend but the REIT's owners do not report the consent dividend as income. Identified in Cal. FTB Chief Counsel Notice 2003-1.
- **CA2.**  Wholly owned or controlled regulated investment company (RIC): Transactions occurring after February 28, 2000, in which a corporation forms a wholly owned or controlled entity that registers as a RIC and the parent corporation transfers to the RIC some of its income producing assets. The RIC claims the dividends paid deduction under IRC §852 and the parent corporation claims an intercompany dividend received deduction under the California tax code. Thus, no California income or franchise tax is paid on the income earned by the income producing assets contributed to the RIC. Identified in Cal. FTB Chief Counsel Notice 2003-1.
- **CA3**.  Sales factor denominator inflation Intercompany transactions occurring after February 28, 2000, between unitary corporate taxpayers and partnerships to inflate the denominator of the California sales factor and thereby reduce the amount of income apportioned to California. The transactions involve the use of the special sales factor rules in California Regulation 25137-1(f)(3) to include intercompany sales in the denominator of the sales factor. The transactions typically involve a group of corporations filing a California combined report with at least one member (the partner-corporation) of the group owning or acquiring an interest in a partnership and with at least one other corporate member (the nonpartner-corporation) of the combined group not owning an interest in the partnership. The partnership's business is unitary with the combined group and its activities were, or could be, performed by a corporate member of the combined group. The partnership sells goods or services to the nonpartner corporation or the nonpartner corporation makes sales to the partnership. The sales are included in the sales factor denominator, but are generally excluded from the sales factor numerator of the unitary group. Identified in Cal. FTB Notice 2011-01.
- **CA4**.  Circular cash flow with sale of subsidiary: Transaction occurring after February 28, 2000, involving a parent corporation (Parent) that "artificially" increases its basis in the stock of its wholly-owned subsidiary (Subsidiary) through a circular flow of cash from Parent to Subsidiary and back to Parent prior to Parent selling the stock of Subsidiary to a third party. In order to minimize gain on the sale of Subsidiary, Parent contributes a promissory note or other instrument to Subsidiary in a transaction treated as a nontaxable contribution to capital. Parent's contribution to Subsidiary's capital is temporary and is intended to remain with Subsidiary for a short period of time. Subsidiary then generates what it claims are earnings and profits through the sale or transfer of intangible property to a related entity in a manner that avoids the application of California intercompany transaction rules. Parent pays off the promissory note or instrument issued to Subsidiary. Shortly thereafter, Subsidiary distributes cash or other property back to Parent in a distribution claimed to be a nontaxable dividend not requiring Parent to reduce its basis in Subsidiary. As a result, Parent claims an increased basis in Subsidiary for its contribution of the promissory note or other instrument, but the note or instrument does not remain with Subsidiary. Identified in Cal. FTB Notice 2011-04.
- 

**Colorado Listed Transactions**

A member firm of Ernst & Young Global Limited

- **CO1.**  Captive real estate investment trust (REIT): Transactions in any open tax year, between a captive REIT and its more than 50% beneficial owner if there is a Colorado tax benefit. A captive REIT is defined as a REIT in which shares or beneficial interests are not regularly traded on an established securities market and of which more than 50% of the voting power or value of the beneficial interest or shares are owned or controlled directly, indirectly, or constructively, by a single entity that is: (1) treated as an association taxable as a corporation under the Internal Revenue Code; and (2) not exempt from federal income tax under IRC §501(a). For these purposes, an "association taxable as a corporation" does not include any REIT other than a captive REIT, any qualified REIT subsidiary other than a qualified REIT subsidiary of a captive REIT, any listed Australian property trust, or a qualified foreign entity. Identified in Colorado Reg. 39-22-652.
- **CO2.**  Captive regulated investment company (RIC): Transactions in any open tax year, between a captive RIC and its more than 50% beneficial owner if there is a Colorado tax benefit. A captive RIC is defined as a RIC in which shares or beneficial interests are not regularly traded on an established securities market and of which more than 50% of the voting power or value of the beneficial interest or shares are owned or controlled directly, indirectly, or constructively, by a single entity that is: (1) treated as an association taxable as a corporation under the IRC; and (2) not exempt from federal income tax under IRC section 501(a). Voting stock in a RIC that is held in a segregated asset account of a life insurance corporation (IRC §817) is not taken into account in determining whether the RIC is captive. Identified in Colorado Reg. 39-22-652.
-

## New York Listed Transaction

- **NY1.**  Certain charitable contribution deductions involving remainder interests: A transaction occurring on or after January 1, 2006, involving the purchase of a remainder interest in real property by a newly formed pass-through entity, which after holding the remainder interest for one year, contributes it to an exempt organization thereby meeting the federal requirements for computing the charitable contribution deduction based on the fair market value of the remainder interest. The remainder interest is appraised using an income approach that takes into consideration the amount of lease payments remaining on the long term lease resulting in a value of the remainder interest substantially higher than what the pass-through entity paid for it. Following the contribution, the pass-through entity is dissolved, allowing its members/partners to claim a pro-rata share of the charitable contribution deduction. Identified in New York State Department of Taxation and Finance-Office of Tax Policy Analysis Technical Service Division TSB-M-07.
-

## Oregon Listed Transactions

- **OR1.**  Certain real estate investment trust (REIT) transactions: Transactions occurring on or after January 1, 2007 that lack economic substance in which an Oregon taxable corporation that directly or indirectly owns a REIT: (1) transfers income-producing assets to the REIT; and, (2) claims a dividend-received deduction and the REIT claims a dividend-paid deduction. An "Oregon taxable corporation" is a corporation that does business in Oregon, is organized in Oregon, has income from Oregon sources, or is owned by an Oregon income or corporate excise taxpayer. A "transaction without economic substance" is a transaction for which the taxpayer cannot demonstrate a business purpose other than tax savings. See 2015 Oregon Revised Statute 314-307.

A member firm of Ernst & Young Global Limited

- **OR2**.   Certain regulated investment company (RIC) transactions: Transactions occurring on or after January 1, 2007 that lack economic substance in which an Oregon taxable corporation that directly or indirectly owns a RIC: (1) transfers income-producing assets to the RIC; and, (2) claims a dividend-received deduction and the RIC claims a dividend-paid deduction. An "Oregon taxable corporation" is a corporation that does business in Oregon, is organized in Oregon, has income from Oregon sources, or is owned by an Oregon income or corporate excise taxpayer. A "transaction without economic substance" is a transaction for which the taxpayer cannot demonstrate a business purpose other than tax savings. See 2015 Oregon Revised Statute 314-307.

A member firm of Ernst & Young Global Limited

## **Exhibit 3**

**Statement of Work - Tax Advisory Services**



Ernst & Young LLP          Tel: +1 212 773 3000
One Manhattan West         ey.com
New York, NY 10001

**Building a better
working world**

### Statement of Work
### Bankruptcy Tax Services

This Statement of Work, dated August 11, 2022 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Celsius Network, LLC on behalf of itself and its affiliated entities (collectively, "you" or "Client"); pursuant to the Agreement, dated August 11, 2022 (the "Agreement"), between EY and Celsius Network, LLC which was executed in connection with the Client filing a petition under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on July 13, 2022 with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and describes certain services that EY will perform for the Client during the Client's Chapter 11 proceedings.  This SOW shall be effective as of the date of the Client's filing a Chapter 11 petition with the Bankruptcy Court.

This SOW incorporates the Agreement by reference to form a contract. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement.

**Scope of Services**

EY will provide tax consulting and structuring services ("Services") which are set forth below in Appendix A in connection with the Client's bankruptcy proceedings (the "Transaction"). All additional services will be provided as requested.

**Other Provisions**

Client shall assign a qualified person to oversee the Services. Client is responsible for all management decisions relating to the Services and for determining whether the Services are appropriate for its purposes.

If the Services are subject to the audit committee pre-approval requirements of the SEC and/or the PCAOB, this SOW will not be effective until the later of (1) the execution of this SOW or (2) the approval of Client's Audit Committee (or a duly authorized representative of Client's Audit Committee).

DocuSign Envelope ID: 7836D997-D52F-4E48-977A-CD49FEE5A5A5

Notwithstanding anything to the contrary in the Agreement or this SOW, EY does not assume any responsibility for any third-party products, programs or services selected by Client, their performance or compliance with Client's specifications or otherwise.

EY may subcontract a portion of the Services to one or more EY Firms and to subcontractors working under EY's direction who may communicate directly with Client. EY, however, will remain solely responsible to Client for the performance of the Services. If EY has prepared or reviewed (or will prepare or review) Client's U.S. income tax returns, Client authorizes the EY Firms, including those located outside the United States, and EY's subcontractors to disclose information received or generated in connection with the preparation of any such U.S. income tax returns of the Client to and among each other for the purpose of rendering the Services and discussing and providing other services to Client. Client has the ability to request a more limited disclosure of tax return information than that described above.  If, at any time, Client would like EY to narrow the scope of the information to be disclosed, please contact EY in writing and EY will limit any disclosures that have not yet occurred. Client acknowledges that this consent will be valid for three years from the date this SOW is signed by Client below.

EY and other EY Firms may retain and use Client Information for benchmarking, analytics, research and development, thought leadership and related purposes, and to enhance their services, provided that any use does not externally identify, or make reference to, Client. In all such matters, EY and other EY Firms will comply with applicable law and professional obligations.

**Engagement Team**

You have identified Lior Koren as your contact with whom we should communicate about these Services. Elizabeth Harvey and Yoav Shwartz (EY Israel) will lead the EY team, in providing the Services.

**Fees:**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

The estimated professional fees for the Services as currently contemplated in our scope are as follows:

|  | Low | High |
|---|---|---|
| **Total** | **US $950,000** | **US $1,150,000** |

EY will promptly notify Client if fees may exceed this estimate. We will provide you with bi-weekly detailed fee summaries throughout the project.

You shall pay fees for the Services based on the actual time that our professionals spend performing them, billed at the following agreed upon rates for each level listed below while the Services under this SOW are being performed.

DocuSign Envelope ID: 7836D997-D52E-4E48-977A-CD49FEE5A5A5

| Level | Rate |
|-------|------|
| Partner/Principal | $1,250 |
| Executive Director | $1,150 |
| Senior Manager | $950 |
| Manager | $850 |
| Senior | $600 |
| Staff | $400 |

The above fee estimate does not include fees for Other Tax Services (as defined below). Fees for such Other Tax Services are incremental to the estimated fees above and will be billed at hourly rates (as specified above).

We will bill you for our fees, expenses, and applicable taxes or other charges, if any, on a monthly basis. Payment is due upon receipt of our invoice.

In addition, you shall reimburse EY for expenses incurred in connection with the performance of the Services, including reasonable and customary out-of-pocket expenses such as travel, meals accommodations and other expenses specifically related to this engagement. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients. Actual out-of-pocket costs incurred by EY while executing the Services will be billed separately.

You shall also pay all applicable taxes (including VAT and others imposed) incurred in connection with the delivery of the Services or the Reports (except for taxes imposed on EY's income). You shall also pay any administrative costs that result from billing arrangements specifically requested by you.

In witness whereof, the parties have executed this SOW as of the date set forth above.

DRAFT

AGREED:

Celsius Network, LLC, on behalf of itself and its affiliates

Chris Ferraro, CFO

By: _____

[Address, Title]

DocuSign by:
*Chris Ferraro*
1315E92CCA0E408...

9/22/2022

Date: _____

DocuSign Envelope ID: 7836D997-D52F-4E48-977A-CD49FEE5A5A5

## Appendix A: Bankruptcy Tax Scope of Work

- Advise Client personnel in developing an understanding of the tax issues and options related to Client's Chapter 11 filing, taking into account Client's specific facts and circumstances, for US federal and state & local tax purposes.

- Advise on the federal and state & local income and indirect tax consequences of proposed plans of reorganization, including, if necessary, assisting in the preparation of IRS ruling requests regarding the tax consequences of alternative reorganization structures and tax opinions.

- Understand and advise on the tax implications of reorganization and/or restructuring alternatives Client is evaluating with existing creditors that may result in a change in the equity, capitalization and/or ownership of the shares of Client and its assets.

- Gather information, prepare calculations ("Section 382 Calculations") and apply the appropriate federal and state & local tax law to historic information regarding changes in the ownership of Client's stock to calculate whether any of the shifts in stock ownership may have caused an ownership change that will restrict the use of tax attributes (such as net operating loss, capital loss, credit carry forwards, and built in losses) and the amount of any such limitation.

- Prepare calculations and apply the appropriate federal and state & local tax law to determine the amount of tax attribute reduction related to debt cancellation income and modeling of tax consequences of such reduction.

- If necessary, prepare or assist in tax basis balance sheets and computations of stock basis as of certain relevant dates for purposes of analyzing the tax consequences of alternative reorganization structures.

- Analyze federal and state & local tax treatment of the costs and fees incurred by the Client in connection with the bankruptcy proceedings, including tax return disclosure and presentation.

- Analyze federal and state & local tax treatment of interest and financing costs related to debt subject to automatic stay, and new debt incurred as the Client emerges from bankruptcy, including tax return disclosure and presentation.

- Analyze federal and state & local tax consequences of restructuring and rationalization of inter-company accounts, and upon written request, we will analyze tax impacts of transfer pricing and related cash management.

- Analyze federal and state & local tax consequences of restructuring in the U.S. or internationally during bankruptcy, including tax return disclosure and presentation.

- Analyze federal and state & local tax consequences of potential bad debt and worthless stock deductions, including tax return disclosure and presentation.

- Analyze federal and state & local tax consequences of employee benefit plans, as requested in writing.

- Advise Client personnel on the bankruptcy tax process and procedure lifecycle, the typical tax issues, options and opportunities related to a Chapter 11 filing, the typical impact of a Chapter 11 filing on a corporate tax department's operations, and best practices for addressing such impact areas while operating in bankruptcy and the post-emergence period.

- Assist with various tax, compliance, tax account registration/deregistration and/or audit issues arising in the ordinary course of business while in bankruptcy, including but not limited to: IRS and/or state and local income and indirect tax audit defense, voluntary disclosure assistance and/or compliance questions, notices or issues related to: federal, state & local income/franchise tax, sales and use tax, excise tax, property tax, employment tax, credit & incentive agreements and other miscellaneous taxes or regulatory assessments and fees.

- Advise as requested and as permissible, with determining the validity and amount of bankruptcy tax claims or assessments, including but not limited to the following types of taxes: income taxes, franchise taxes, sales taxes, use taxes, employment taxes, property taxes, severance taxes, excise taxes, credit & incentive agreements, and other miscellaneous taxes or regulatory assessments and fees.

- Scope, assist and advise on the potential for seeking cash tax refunds, including but not limited to the following types of taxes: income taxes, franchise taxes, sales taxes, use taxes, employment taxes, property taxes, tax credit & incentive agreements and other miscellaneous taxes or regulatory assessments and fees.  Any findings-based fee Services, if requested and if permissible, to claim and secure tax refunds will be subject to a separate Statement of Work mutually agreed to by the parties.

- Provide documentation, as appropriate or necessary, of tax matters, of tax analysis, opinions, recommendations, conclusions and correspondence for any proposed restructuring alternative, bankruptcy tax issue, or other tax matter described above, including as it relates to any historical transactions (e.g., acquisitions, mergers, dispositions, liquidations, or any materially similar transactions, associated with Client's internal restructuring or otherwise).  The Client will be responsible for all accounting and management decisions.

- As requested, provide support and tax analysis with respect to other routine federal, state and local income tax and non-income matters related to the ongoing operations of the Company that are not covered by a separate SOW and do not involve any significant tax planning or transactions outside the transactions anticipated as part of the Bankruptcy ("Other Tax Services").

## **Exhibit 4**

**Amendment No. 1 to Statement of Work effective July 13, 2022**



**Amendment No. 1 to Statement of Work effective July 13, 2022**

**Pennsylvania Voluntary Disclosure Assistance**

This amendment, effective as of July 13, 2022 (this "First Amendment") amends the Statement of Work, effective July 13, 2022, (the "Original SOW" and as modified by this First Amendment, the "SOW"), between Ernst & Young LLP ("we" or "EY") and Celsius Network, LLC (collectively "you" or "Client"), related to Bankruptcy Tax Services. This First Amendment does not modify any of the Bankruptcy Tax Services addressed in the original SOW, such that all services and terms outlined in the original SOW remain in full force and effect. Capitalized terms used, but not otherwise defined, in this First Amendment shall have the respective meanings ascribed to them in the Original SOW, and identical terms defined in this First Amendment and in the Original SOW shall have the respective meanings ascribed to them herein. The Original SOW was executed pursuant to the agreement, effective July 13, 2022 between EY and Celsius Network, LLC (the "Agreement").

Client and EY agree to the following First Amendment:

**Scope of Services – for Pennsylvania Voluntary Disclosure Assistance**

The Bankruptcy Tax Services described in the Original SOW are hereby supplemented as follows (as so modified, the "Services"):

EY will provide the following Services to you (the "Services").

<u>Pennsylvania Sales and Use Tax</u>

EY will assist in remediating Pennsylvania sales and use tax exposure through Pennsylvania's Voluntary Disclosure Program. Our performance of this engagement will include working with you to develop an understanding of the issues and alternatives available for resolving potential outstanding tax liabilities. Specifically, we will provide you with an understanding of the voluntary disclosure program, as well as computations of potential penalties that might be abated under this program. EY will: 1) review Client's sales register to determine taxable and nontaxable sales; 2) identify applicable exemptions and review available supporting documents; 3) submit an anonymous application on behalf of Client for acceptance into Pennsylvania's Voluntary Disclosure Program; 4) prepare all required tax returns, worksheets, checklists, and other required materials under Pennsylvania's Voluntary Disclosure Agreement; and 5) review and respond to questions and issues raised by the taxing authority during the voluntary disclosure process.

We will not, however, make any recommendations regarding whether Client should enter a state remediation program or settle any exposure with the state on terms provided by the jurisdiction. Should Client decide to settle its exposure with the state as a means to resolving any issues identified, we will,

DocuSign Envelope ID: 43902D4-5B5E-42F8-A4BC-2F20l2523E76



Building a better
working world

if requested to do so, prepare the necessary filings and represent Client in any examination of the filings or issues included in the filings and, where permissible, in subsequent proceedings before the state taxing authority, including the preparation of correspondence, protests or appeals in administrative proceedings.

**Fees**

The terms and conditions of the Agreement address our fees and expenses generally. Consistent with the fees and expenses for Services described in the Original SOW, you shall pay fees for the Services herein described based on the actual time that our professionals spend performing them, billed at the same agreed upon rates for each level as set forth in the original SOW.

Also consistent with our original SOW:

- We will bill you for our fees, expenses, and applicable taxes or other charges, if any, on a monthly basis. Payment is due upon receipt of our invoice.
- You shall reimburse EY for expenses incurred in connection with the performance of the Services, including reasonable and customary out-of-pocket expenses such as travel, meals, accommodations and other expenses specifically related to this engagement. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients. Actual out-of-pocket costs incurred by EY while executing the Services will be billed separately.
- You shall also pay all applicable taxes (including VAT and others imposed) incurred in connection with the delivery of the Services or the Reports (except for taxes imposed on EY's income). You shall also pay any administrative costs that result from billing arrangements specifically requested by you.

Your obligation to pay our fees and expenses is not contingent upon the results of the Services or the consummation of any transaction.

In witness whereof, the parties have executed this Amendment as of the date set forth above.

*Ernst + Young LLP*

AGREED:

Celsius Network, LLC, on behalf of itself and its affiliates

By: _____
Chris Ferraro

DocuSigned by:

*Chris Ferraro*

1315E92CCA0F408...

A member firm of Ernst & Young Global Limited

**EY**

Building a better
working world

Date: 11/4/2022
_____

Title: Interim CEO
_____

A member firm of Ernst & Young Global Limited

**<u>Exhibit B</u>**

**Harvey Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ELIZABETH HARVEY**
**IN SUPPORT OF DEBTORS' APPLICATION**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS**
**TAX COMPLIANCE AND TAX ADVISORY SERVICES PROVIDER,**
**EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF**

I, Elizabeth Harvey, hereby declare under penalty of perjury, pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as follows:

1.      I am a Partner of Ernst & Young LLP ("EY LLP").  I provide this declaration (this "Declaration") on behalf of EY in support of the application (the "Application") of the above-captioned debtors (the "Debtors") to retain EY LLP as their tax services provider, effective as of July 13, 2022 (the "Petition Date"), pursuant to the terms and conditions set forth in the agreements between the Debtors and EY LLP attached hereto as **Exhibit A** (the "Engagement Letters").[2]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Engagement Letters.

2.      The facts set forth in this Declaration are based upon my personal knowledge, upon

information and belief, and upon client matter records kept in the ordinary course of business that

were reviewed by me or professionals of EY LLP and EY US LLP (as defined below) or employees

of other member firms of EYGL (as defined below) under my supervision and direction.

3.      As set forth in further detail in the Engagement Letters, EY LLP has agreed to

provide certain tax services (the "Services") to the Debtors in connection with these chapter 11

proceedings.  A summary description of each of the Services is summarized below and fully

described in the Engagement Letters:[3]

### A.  Tax Compliance Services

    a.  Prepare the (i) US federal income tax returns for Celsius Network, Inc. and Celsius US Holding LLC and its US subsidiaries for the year ended December 31, 2021 and (ii) prepare the state and local income and franchise tax returns for certain jurisdictions.

### B.  Tax Advisory Services

    a.  Advise the Debtors' personnel in developing an understanding of the tax issues and options related to the Debtors' chapter 11 filing, taking into account the Debtors' specific facts and circumstances, for US federal and state & local tax purposes;

    b.  Advise on the federal and state & local income and indirect tax consequences of proposed plans of reorganization, including, if necessary, assisting in the preparation of IRS ruling requests regarding the tax consequences of alternative reorganization structures and tax opinions;

    c.  Understand and advise on the tax implications of reorganization and/or restructuring alternatives the Debtors are evaluating that may result in a change in the equity, capitalization and/or ownership of the shares of the Debtors and the respective assets;

    d.  Gather information, prepare calculations, and apply the appropriate federal and state & local tax law to historic information regarding changes in the

---

[3]    The summaries of certain terms of the Engagement Letters herein are qualified in their entirety by reference to the provisions of the Engagement Letters themselves.  To the extent there is any discrepancy between the summaries contained in this Declaration and the terms of the Engagement Letters themselves, the terms of the Engagement Letters shall control.

ownership of the Debtors' stock to calculate whether any of the shifts in stock ownership may have caused an ownership change that will restrict the use of tax attributes (such as net operating losses, capital losses, credit carry forwards, and built in losses) and the amount of any such limitation;

e.  Prepare calculations and apply the appropriate federal and state & local tax law to determine the amount of tax attribute reduction related to debt cancellation income and modeling of tax consequences of such reduction;

f.  If necessary, prepare or assist in tax basis balance sheets and computations of stock basis as of certain relevant dates for purposes of analyzing the tax consequences of alternative reorganization structures;

g.  Analyze federal and state & local tax treatment of the costs and fees incurred by the Debtors in connection with the bankruptcy proceedings, including tax return disclosure and presentation;

h.  Analyze federal and state & local tax treatment of interest and financing costs related to debt subject to automatic stay, and new debt incurred as the Debtors emerge from bankruptcy, including tax return disclosure and presentation;

i.  Analyze federal and state & local tax consequences of restructuring and rationalization of intercompany accounts, and upon written request, analyze tax impacts of transfer pricing and related cash management;

j.  Analyze federal and state & local tax consequences of restructuring in the US or internationally during bankruptcy, including tax return disclosure and presentation;

k.  Analyze federal and state & local tax consequences of potential bad debt and worthless stock deductions, including tax return disclosure and presentation;

l.  Analyze federal and state & local tax consequences of employee benefit plans, as requested in writing;

m.  Advise the Debtors' personnel on the bankruptcy tax process and procedure lifecycle, the typical tax issues, options, and opportunities related to a chapter 11 filing, the typical impact of a chapter 11 filing on a corporate tax department's operations, and best practices for addressing such impact areas while operating in bankruptcy and the post-emergence period;

n.  Assist with various tax, compliance, tax account registration/deregistration and/or audit issues arising in the ordinary course of business while in bankruptcy, including but not limited to: IRS and/or state and local income and indirect tax audit defense, voluntary disclosure assistance and/or compliance questions, notices or issues related to: federal, state & local

3

income/franchise tax, sales and use tax, excise tax, property tax, employment tax, credit & incentive agreements and other miscellaneous taxes or regulatory assessments and fees;

o.  Advise, as requested and as permissible, with determining the validity and amount of bankruptcy tax claims or assessments, including but not limited to the following types of taxes: income taxes, franchise taxes, sales taxes, use taxes, employment taxes, property taxes, severance taxes, excise taxes, credit & incentive agreements, and other miscellaneous taxes or regulatory assessments and fees;

p.  Scope, assist, and advise on the potential for seeking cash tax refunds, including but not limited to the following types of taxes: income taxes, franchise taxes, sales taxes, use taxes, employment taxes, property taxes, tax credit & incentive agreements and other miscellaneous taxes or regulatory assessments and fees;

q.  Provide documentation, as appropriate or necessary, of tax matters, of tax analysis, opinions, recommendations, conclusions and correspondence for any proposed restructuring alternative, bankruptcy tax issue, or other tax matter described above, including as it relates to any historical transactions (*e.g.*, acquisitions, mergers, dispositions, liquidations, or any materially similar transactions, associated with the Debtors' internal restructuring or otherwise). The Debtors will be responsible for all accounting and management decisions; and

r.  As requested, assist in remediating potential tax exposures through voluntary disclosure programs. As part of this process, EY LLP will work with the Debtors to develop an understanding of the issues and alternatives for resolving potential outstanding tax liabilities and where requested assist with preparing and filing materials. EY LLP will not, however, make any recommendations regarding whether the Debtors should enter into a specific remediation program or settle any potential exposure with any jurisdiction on terms providing by the jurisdiction. EY LLP will issue a separate SOW related to voluntary disclosure assistance ("VDA") services for any specific state for which the Debtors determine they will enter into a VDA program.

### EY LLP's Disinterestedness

4.      Based on the connections check process that is described herein, to the best of my knowledge, information and belief, EY LLP (a) does not hold or represent an interest adverse to the Debtors or their estates and (b) is a "disinterested person," as such term is defined in section 101(14) of title 11 of the United States Code (the "Bankruptcy Code"), as required under section

327(a) of the Bankruptcy Code.  Moreover, to the best of my knowledge, information and belief, EY LLP's retention is not prohibited or restricted by Bankruptcy Rule 5002.  Accordingly, I believe that EY LLP is eligible for retention by the Debtors under section 327(a) of the Bankruptcy Code.

5.      As of the Petition Date, EY LLP was not owed any money by the Debtors in respect of services rendered by EY LLP either prior to or following the Petition Date.  Upon approval of EY LLP's retention in these cases, EY LLP will waive its rights to receive any unpaid fees incurred on the Debtors' behalf prior to the Petition Date.

**Professional Compensation**

6.      EY intends to charge the Debtors fees for the Services, with EY LLP's fees and expenses relating to work for the Debtors included in EY LLP's fee applications, as set forth in the Engagement Letters and summarized below.  For the Tax Advisory Services discussed above (including any VDA assistance work), EY LLP will charge the Debtors based on the actual time that its professional spend performing the Services, billed at the following rates for each level listed below while the Services are performed:

| Level | Rate |
|---|---|
| Partner/Principal | $1,250 |
| Executive Director | $1,150 |
| Senior Manager | $950 |
| Manager | $850 |
| Senior | $600 |
| Staff | $400 |

Fees for the tax compliance services are:

- The Debtors prepaid Kost Forer Gabbay & Kasierer ("EY Israel") $52,150 in fixed fees for the compliance services for the tax year ended December 31, 2021 for Celsius Network, Inc.  EY LLP will not charge the Debtors additional fixed fees for this work.

- The Debtors prepaid EY Israel $52,850 in fixed fees for the compliance services for the tax year ended December 31, 2021 for Celsius US Holding LLC and its US subsidiaries.  EY LLP will not charge the Debtors additional fees for this work.

- As discussed in greater detail in the attached SOW, additional forms will be billed at a fixed fee per form.

- In addition, time incurred by EY LLP (or its subcontractors) to review tax return matters resulting from the Company's bankruptcy filing, various transactions and an internal restructuring which occurred in 2021 and/or the Company's current financial and operational status will be billed based on the rate card shown above for the Tax Advisory Services.

7.     EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which the Debtors will pay.

8.     In addition to the fees set forth above, the Debtors will reimburse EY LLP for any direct expenses incurred in connection with EY LLP's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letters, including, but not limited to, any potential value-added taxes, sales taxes, and other indirect taxes EY LLP incurred in connection with the delivery of the Services.  EY LLP's direct expenses shall include, but not be limited to, reasonable, customary, and documented out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses (including any fees or reasonable expenses of EY LLP's legal counsel) related to the Services.  EY LLP will charge the Debtors for these direct expenses at EY LLP's cost.

9.     If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena, or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors would, so long as EY LLP is not a party to the proceeding in which the information is sought, reimburse EY LLP for its professional time and expenses, as well as the fees and expenses of EY LLP's counsel, incurred in responding to such requests.

10.     If EY LLP is subject to questions from the court appointed examiner in these Chapter 11 cases, or document production requests, the professional time and expenses incurred related to responding to such requests will be billed as incurred.

11.     The hourly rates and corresponding rate structure that EY LLP will use in these chapter 11 cases are the same that EY LLP uses in similar matters regardless of whether a fee application is required and reflect the normal and customary billing practices for engagements of this complexity and magnitude.  The hourly rates vary with the experience and seniority of the individuals assigned.

12.     EY LLP may receive rebates in connection with certain purchases, which are used to reduce charges that EY LLP would otherwise pass onto its clients.

**Certain Other Terms of the Engagement Letters**

13.     EY LLP's provision of Services to the Debtors is contingent upon this Court's approval of each term and condition set forth in the Engagement Letters as may be modified by further orders of the Court.

14.     The Engagement Letters may be terminated by EY LLP or the Debtors in accordance with their terms.  The Debtors or EY LLP may terminate the Engagement Letters pursuant to the terms in the Engagement Letters but in any event the Engagement Letters will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or the liquidation of the Debtors' assets under the Bankruptcy Code.  Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses as of the effective date of such termination.  Moreover, certain other terms of the Engagement Letters will continue (either indefinitely or for a specified period of time) following termination.

15.     Copies of the Engagement Letters are submitted with this Declaration for approval.[4]
EY LLP's provision of Services to the Debtors is contingent upon the Court's approval of each
term and condition set forth in the Engagement Letters.  Included among the terms and conditions
set forth in the Engagement Letters is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with arising out of, or in
> any way related to this Agreement or the services provided hereunder (including
> any such matter involving any parent, subsidiary, affiliate, successor in interest or
> agent of the Client or its subsidiaries or of Ernst & Young) shall be brought in the
> Bankruptcy Court or the applicable District Court if such District Court withdraws
> the reference and the parties to this Agreement, and any and all successors and
> assigns thereof, consent to the jurisdiction and venue of such court as the sole
> exclusive forum (unless such court does not have jurisdiction and venue of such
> claims or controversies) for the resolution of such claims, causes of action or
> lawsuits.  The parties to this Agreement, and any all successors and assigns thereof,
> hereby waive trial by jury, such waiver being informed and freely made.  If the
> Bankruptcy Court or the District Court upon withdrawal of the reference does not
> have or retain jurisdiction over the foregoing claims or controversies, the parties to
> this Agreement and any and all successors and assigns thereof, agree to submit first
> to nonbinding mediation; and, if mediation is not successful, then to binding
> arbitration, in accordance with the dispute resolution procedures set forth in the
> Exhibit B to this Agreement.  Judgment on any arbitration award may be entered in
> any court having proper jurisdiction.  The foregoing is binding upon the Client,
> Ernst & Young and any all successors and assigns thereof.

## Ernst & Young Global Limited

16.     The Ernst & Young global network comprises independent professional services
practices conducted by separate legal entities throughout the world.  Such legal entities are
members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of
England and Wales and limited by guarantee, with no shareholders and no capital.  The EYGL
member firms have agreed to operate certain of their professional practices in accordance with
agreed standards but remain separate legal entities.

---

[4]     To the extent that this Declaration and the terms of the Engagement Letters are inconsistent, the terms of the
Engagement Letters shall control.

17.     The particular firm that the Debtors seek to retain in these chapter 11 cases, EY, is a member firm of EYGL in the United States.  EY LLP does not have a parent entity, but rather is 100% owned by its partners.  EY LLP engages in the practice of public accountancy and provides accounting and other professional services.   All partners of EY LLP are certified public accountants ("CPAs").

18.     In addition, Ernst & Young U.S. LLP ("EY US LLP"), the owners of which are EY CPA partners and non-CPA principals, is another member firm of EYGL in the United States.  EY US LLP provides infrastructure and support services to EY LLP, including the services of CPA and non-CPA personnel.  In particular, EY LLP uses EY US LLP personnel in providing services to EY LLP's clients.  Such EY US LLP personnel continue to be employed by EY US LLP, but work under EY LLP's supervision in EY LLP engagements.

## Disclosure of Connections

19.     In connection with EY LLP's proposed retention by the Debtors, Debtors' counsel provided a list of names of parties in interest in these cases (the "PIIL") to EY LLP on or about July 27, 2022, which was supplemented on October 20, 2022.  The specific names that were set forth on the PIIL that EY LLP received from the Debtors' counsel are referred to herein as the "Parties in Interest."

20.     EY LLP has access to a computer database (the "Database") that contains information about actual client engagements and potential engagement activity of all of the member firms of EYGL.  The Database also includes the names of other parties that the professionals on the relevant engagement team have identified as also being involved in each engagement (e.g., adverse parties and co-clients).  Thus, the Database indicates whether any

9

Debtor entity is involved in an engagement by an EYGL member firm, in which a Party in Interest is a client.[5]

21.    EY LLP caused the names of the Parties in Interest to be run through the Database. The disclosure schedule annexed hereto as **Exhibit B** lists the names of the Parties in Interest and whether a client engagement has been initiated in the Database during the last three years by EY LLP or any other EYGL member firm.

22.    To the best of my knowledge, information, and belief, based on the information set forth in the Database, none of the services rendered to Parties in Interest by EY LLP or any other EYGL member firm have been in connection with the Debtors or these chapter 11 cases, except as otherwise stated herein.

23.    During September through November 2021, the Debtors' non-Debtor affiliate GK8 Ltd. ("GK8"), then an unrelated company and currently a subsidiary of the Debtors, engaged EY Israel to advise it on the tax and accounting aspects of its sale to Celsius Network Limited.  GK8 paid EY Israel in full at the closing.

24.    In addition, GK8 engaged EY Israel to prepare GK8's Israeli income tax returns and to audit the statutorily required supporting financial statements for GK8's fiscal year 2021.

25.    EY LLP conducted a search to determine whether EY US LLP (but not any other member firm of EYGL) has paid any person or entity that is specified on the PIIL as being a professional service provider that has been retained by a Party in Interest ("Party-Retained Professionals") to provide professional services during the last three years.  Based on its search of

---

[5]    The information in the Database is populated by the professionals who are providing services under each engagement.  Therefore, the information in the Database may not be 100% correct with respect to all engagements, as human errors may occur.  Furthermore, financial information pertaining to engagement activity is the proprietary and confidential information of each individual EYGL member firm.  EY may not have the right to access, or if accessed, disclose, such information relating to other EYGL member firms.

that database, EY LLP has determined that EY US LLP has paid the following Party-Retained Professionals during the last three years for professional services: Akin Gump Strauss Hauer & Feld LLP, Alvarez & Marsal, Duane Morris LLP, Jenner & Block LLP, Kroll Restructuring Administration LLC, McDermott Will & Emery LLP, Michigan Department of Treasury, Mintz & Gold, LLP, Latham & Watkins LLP, SAP America, Inc., Troutman Pepper Hamilton Sanders LLP, and Venable LLP.

26.    EY LLP cannot prohibit any other EYGL member firm from accepting any client engagements, including in matters that may be adverse to the Debtors or their estates.  Nevertheless, if EY LLP becomes aware of any such engagement by another EYGL member firm, EY LLP will file a supplemental declaration with the Court that contains the pertinent information that EY LLP is authorized to disclose.[6]  Moreover, if EY LLP becomes aware that another EYGL member firm represents a Party in Interest in a matter that is adverse to the Debtors or their estates, EY LLP will not permit anyone from such non-US EYGL member firm's engagement team who provides services to the Party in Interest in the adverse matter to be involved in the Services that EY LLP provides for the Debtors during these chapter 11 cases.

27.    In the ordinary course of business, certain EYGL member firms ("EY Support Firms") provide various professional, administrative and back office support services for client-facing EYGL member firms throughout the world, as requested, coordinated and directed by such client-facing EYGL member firms (including EY LLP).  An EY Support Firm assisted EY LLP in performing EY LLP's connections check for these chapter 11 cases.  The costs paid by

---

[6]    There may be situations in which EY will be unable to disclose engagements of non-US EYGL member firms. For example, laws or regulations applicable to a non-US EYGL member firm may preclude that firm from providing information regarding its client engagements to EY, or applicable laws and regulations may prohibit disclosure.  If that issue arises, EY will discuss it with the Office of the United States Trustee to try to reach a resolution.

EY LLP to EY Support Firms for such connections check related services will not be billed to the Debtors. EY Support Firms do not provide client-facing services.  Because the Database against which the names of the Parties in Interest was run for EY LLP's connections check contains client engagement information for all client-facing EYGL member firms, no EY Support Firm will run its own connections check or file a declaration in these chapter 11 cases.

28.    Except for the connections check related services described above, EY LLP does not intend to utilize EY Support Firms in providing services to the Debtors during these chapter 11 cases.

29.    Notwithstanding any use of EY Support Firms, EY LLP shall remain fully and solely responsible for any liabilities and obligations in respect of EY LLP's engagement and Services during these chapter 11 cases.

30.    During these chapter 11 cases, EY LLP may subcontract with other EYGL member firms in various countries, including EY Israel (the "Subcontracting EYGL Member Firms"), to provide services to one or more Debtor entities during these chapter 11 cases.  EY Israel's fees as a subcontractor to EY LLP are set forth in the accompanying *Declaration of Yoav Shwartz in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider to the Debtors* and *Declaration of Martin Flashner in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider to the Debtors*.  The fees and expenses of the Subcontracting EYGL Member Firms relating to work performed for the Debtors will be included in EY LLP's fee applications in these chapter 11 cases.  EY LLP will distribute the applicable fees and expenses to the Subcontracting EYGL Member Firms once EY LLP's fee applications are approved by the

Court and such fees and expenses are paid by the Debtors.  Because the Database against which the names of the Parties in Interest was run for EY LLP's connections check contains client engagement information for all EYGL member firms, the Subcontracting EYGL Member Firms will not run their own connections checks or file declarations under Bankruptcy Rule 2014 in these chapter 11 cases.

31.    EY LLP and other EYGL member firms may perform services for their clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status.  The disclosures set forth herein do not include specific identification of such services.

32.    As part of its practice, EY LLP appears in cases, proceedings, and transactions involving many different attorneys, financial advisors, and creditors, some of which may represent or be parties involved in these chapter 11 cases.

33.    EY LLP may currently be a party or participant in certain litigation matters involving Parties in Interest, which matters are unrelated to the Debtors or these chapter 11 cases.

34.    EY LLP does not directly hold any debt or equity securities of the Debtors.  In addition, none of the EY LLP or EY US LLP professionals who are currently on the engagement team that is providing Services to the Debtors directly hold any securities in the Debtors, but those engagement team members may hold interests in mutual funds or other investment vehicles that may own securities of the Debtors.

35.    It is possible that professionals of EY LLP and EY US LLP who are not currently on the engagement team that is providing Services to the Debtors may directly or indirectly hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.  Additionally, EY LLP and EY US LLP professionals, whether or not on

the engagement team that is providing services to the Debtors, may have economic interests in or business associations with Parties in Interest.

36.     To the best of my knowledge, information and belief, neither the undersigned nor the professionals expected to assist the Debtors in these matters are connected to the Bankruptcy Judges in this District, the United States Trustee for the region in which these chapter 11 cases are pending, or any person employed in the Office of the United States Trustee in the city in which these chapter 11 cases are pending as identified in the PIIL.  Moreover, to the best of my knowledge, information and belief, EY LLP's retention is not prohibited by Bankruptcy Rule 5002.

37.     Despite the efforts described above to identify and disclose connections with Parties in Interest, because the Debtors are a large enterprise with numerous creditors and other relationships, EY LLP is unable to state with certainty that every client representation or other connection with Parties in Interest has been disclosed herein.  If EY LLP discovers additional information that requires disclosure, EY LLP will file supplemental disclosures with the Court.

38.     Certain Parties in Interest are lenders to EY LLP and/or EY US LLP:  JPMorgan Chase Bank, N.A participates in EY LLP's and EY US LLP's Revolving Credit Program.

39.     To the best of my knowledge, information and belief, prior to the Petition Date, EY LLP performed certain professional services for the Debtors, including tax compliance, transfer pricing analysis, and international tax planning.

40.     At the Debtors' request following the Petition Date and prior to Court approval of EY LLP's engagement in these cases, EY LLP may provide in its sole discretion certain of the Services described in the Engagement Letters.  Thus, EY LLP requests that its retention be authorized as of the Petition Date.

41.    To the extent required by section 504 of the Bankruptcy Code, except as otherwise set forth herein (*e.g.*, if another EYGL member firm provides services to the Debtors under a subcontracting arrangement with EY LLP), EY LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person, other than the partners, principals and employees of EY LLP and EY US LLP.

42.    EY LLP intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, and the Engagement Letters, and pursuant to any additional procedures that may be established by the Court in these cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  November 18, 2022

*/s/ Elizabeth Harvey*
_____
ELIZABETH HARVEY, PARTNER
Ernst & Young LLP

**Exhibit B-1**

**Parties in Interest Connections Checks**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1 | Current and Recent Former Entities Affiliated with the Debtors | Celsius (AUS) Pty Ltd. (Australia) | X | |
| 2 | Current and Recent Former Entities Affiliated with the Debtors | Celsius EU UAB (Lithuania) | X | |
| 3 | Current and Recent Former Entities Affiliated with the Debtors | Celsius KeyFi LLC | X | |
| 4 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Lending LLC | X | |
| 5 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Management Corp. | X | |
| 6 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Mining IL Ltd. | X | |
| 7 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Mining LLC | X | |
| 8 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Network (Gibraltar) Ltd. | X | |
| 9 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Network Europe d.o.o. Beograd (Serbia) | X | |
| 10 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Network IL Ltd. – Bulgaria Branch | X | |
| 11 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Network IL Ltd. (Israel) | X | |
| 12 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Network Inc. | X | |
| 13 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Network LLC | X | |
| 14 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Network Ltd. (UK) | X | |
| 15 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Networks Lending LLC | X | |
| 16 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Operations LLC | X | |
| 17 | Current and Recent Former Entities Affiliated with the Debtors | Celsius Services CY Ltd. (Cyprus) | X | |
| 18 | Current and Recent Former Entities Affiliated with the Debtors | Celsius US Holding LLC | X | |
| 19 | Current and Recent Former Entities Affiliated with the Debtors | Celsius US LLC (Formerly Celsius Money) | X | |
| 20 | Current and Recent Former Entities Affiliated with the Debtors | GK8 Ltd (Israel) | X | |
| 21 | Current and Recent Former Entities Affiliated with the Debtors | GK8 UK Ltd. | X | |
| 22 | Current and Recent Former Entities Affiliated with the Debtors | GK8 USA LLC | X | |
| 23 | Current and Recent Former Entities Affiliated with the Debtors | KN Media Manager LLC | X | |
| 24 | Directors / Officers | Ayalor, Amir | | X |
| 25 | Directors / Officers | Barse, David | | X |
| 26 | Directors / Officers | Bentov, Tal | | X |
| 27 | Directors / Officers | Blonstein, Oren | | X |
| 28 | Directors / Officers | Bodnar, Guillermo | | X |
| 29 | Directors / Officers | Bolger, Rod | | X |
| 30 | Directors / Officers | Carr, Alan Jeffrey | | X |
| 31 | Directors / Officers | Cohen-Pavin, Roni | | X |
| 32 | Directors / Officers | Denizkurdu, Aslihan | | X |
| 33 | Directors / Officers | Deutsch, Ron | | X |
| 34 | Directors / Officers | Dubel, John Stephen | | X |
| 35 | Directors / Officers | Goldstein, Nuke | | X |
| 36 | Directors / Officers | Kleiderman, Shiran | | X |
| 37 | Directors / Officers | Leon, S. Daniel | | X |
| 38 | Directors / Officers | Mashinsky, Alex | | X |
| 39 | Directors / Officers | Nadkarni, Tushar | | X |
| 40 | Directors / Officers | Nathan, Gilbert | | X |
| 41 | Directors / Officers | Ramos, Trunshedda W. | | X |
| 42 | Directors / Officers | Sunada-Wong, Rodney | | X |
| 43 | Directors / Officers | Tosi, Laurence Anthony | | X |
| 44 | Ad-Hoc Group | Anderson, Jan | | X |
| 45 | Ad-Hoc Group | Audeh, Ramzi | | X |
| 46 | Ad-Hoc Group | Banda, Santosh Praneeth | | X |
| 47 | Ad-Hoc Group | Benator, Ilene | | X |
| 48 | Ad-Hoc Group | Bierbaum, Cheryl | | X |
| 49 | Ad-Hoc Group | Bradley, Frank Malcom | | X |
| 50 | Ad-Hoc Group | Butryn, Robert K. | | X |
| 51 | Ad-Hoc Group | Calderone, Anthony | | X |
| 52 | Ad-Hoc Group | Castillo, Gilbert | | X |
| 53 | Ad-Hoc Group | Chan, Allison | | X |
| 54 | Ad-Hoc Group | Cherktyek Consulting, LLC | | X |
| 55 | Ad-Hoc Group | Chiakulas, John | | X |
| 56 | Ad-Hoc Group | Cifani, Michael | | X |
| 57 | Ad-Hoc Group | Crespo, Frank | | X |
| 58 | Ad-Hoc Group | Dimetros, Jonandre | | X |
| 59 | Ad-Hoc Group | Dreikosen, Stephen | | X |
| 60 | Ad-Hoc Group | Fikar, Thomas Dean | | X |
| 61 | Ad-Hoc Group | Frederick, Paul | | X |
| 62 | Ad-Hoc Group | Gasso, Julius | | X |
| 63 | Ad-Hoc Group | Gilmore, Andrew | | X |
| 64 | Ad-Hoc Group | Griffin, Sargam Petra | | X |
| 65 | Ad-Hoc Group | Guillo, Adrien | | X |
| 66 | Ad-Hoc Group | Gurazada, Lakshmi Sai Lalitha | | X |
| 67 | Ad-Hoc Group | Haddad, Ghassan | | X |
| 68 | Ad-Hoc Group | Huang, Hsuan Yao | | X |
| 69 | Ad-Hoc Group | Lebor, Christine | | X |
| 70 | Ad-Hoc Group | Lindsay, Jacob | | X |
| 71 | Ad-Hoc Group | Little, David | | X |
| 72 | Ad-Hoc Group | Mansour, Ashley | | X |
| 73 | Ad-Hoc Group | McLain, Karen | | X |
| 74 | Ad-Hoc Group | Ralbovsky, Yanxing | | X |
| 75 | Ad-Hoc Group | Reyes, Eduardo | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 76 | Ad-Hoc Group | Reyes, Marino | | X |
| 77 | Ad-Hoc Group | Richardson Jr., Harry B. | | X |
| 78 | Ad-Hoc Group | Robinson, Craig | | X |
| 79 | Ad-Hoc Group | Salyards, Jedidiah A. | | X |
| 80 | Ad-Hoc Group | Saunders, William | | X |
| 81 | Ad-Hoc Group | Schmeizer, Scott | | X |
| 82 | Ad-Hoc Group | Singer, Michael | | X |
| 83 | Ad-Hoc Group | Singh, Roshandip | | X |
| 84 | Ad-Hoc Group | Smith, Jason | | X |
| 85 | Ad-Hoc Group | Smith, Laura Dronen | | X |
| 86 | Ad-Hoc Group | Stearns, Aaron | | X |
| 87 | Ad-Hoc Group | Tuan, Joey | | X |
| 88 | Ad-Hoc Group | Turner, Elvin R. | | X |
| 89 | Ad-Hoc Group | Urbano, Melinda | | X |
| 90 | Ad-Hoc Group | Vejseli, Veton | | X |
| 91 | Ad-Hoc Group | Wong, Calvin | | X |
| 92 | Ad-Hoc Group | Yadav, Rishi Rav | | X |
| 93 | Bankruptcy Examiner and Professionals | Jenner & Block LLP | X | |
| 94 | Bankruptcy Examiner and Professionals | Shoba Pillay | | X |
| 95 | Bankruptcy Professionals | Akin Gump Strauss Hauer & Feld LLP | X | |
| 96 | Bankruptcy Professionals | Alvarez & Marsal Holdings LLC | X | |
| 97 | Bankruptcy Professionals | Centerview Partners LLC | X | |
| 98 | Bankruptcy Professionals | Deloitte & Touche LLP | X | |
| 99 | Bankruptcy Professionals | Latham & Watkins LLP | X | |
| 100 | Bankruptcy Professionals | Stretto | X | |
| 101 | Bankruptcy Professionals | White & Case LLP | X | |
| 102 | Counsel to Former Executives | Cadwalader Wickersham & Taft | | X |
| 103 | Counsel to Former Executives | Paul Hastings LLP | X | |
| 104 | Director/Officer | Albert, David | | X |
| 105 | Director/Officer | Alisie, Adrian | | X |
| 106 | Director/Officer | Ayalon, Amir | | X |
| 107 | Director/Officer | Barwick, Christy | | X |
| 108 | Director/Officer | Beaudry, Jeremie Robert | | X |
| 109 | Director/Officer | Fan, Jiayi "Jenny" | | X |
| 110 | Director/Officer | Ferraro, Chris | | X |
| 111 | Director/Officer | Holert, Patrick | | X |
| 112 | Director/Officer | Konduru, Subramaniam Vijay | | X |
| 113 | Director/Officer | Lawlor, Quinn | | X |
| 114 | Director/Officer | Sabo, Ron | | X |
| 115 | Director/Officer | Shalem, Yaron | | X |
| 116 | Director/Officer | Van Etten, Frank | | X |
| 117 | Equity Holders | Advanced Technology Fund XXI LLC | | X |
| 118 | Equity Holders | Altshuler Shaham Trusts Ltd. | | X |
| 119 | Equity Holders | Andersen Invest Luxembourg SA SPF | | X |
| 120 | Equity Holders | Artus Capital GmbH & Co. KGaA | | X |
| 121 | Equity Holders | Barrett, Craig | | X |
| 122 | Equity Holders | Barse, David | | X |
| 123 | Equity Holders | BNK to the Future | | X |
| 124 | Equity Holders | Bui, Dung | | X |
| 125 | Equity Holders | BullPerks (BVI) Corp. | | X |
| 126 | Equity Holders | Caceres, Juan Cruz | | X |
| 127 | Equity Holders | Caisse de dépôt et placement du Québec | X | |
| 128 | Equity Holders | Carter, William Douglas | | X |
| 129 | Equity Holders | CDP Investissements Inc. | | X |
| 130 | Equity Holders | Connolly, Thomas | | X |
| 131 | Equity Holders | Craig Barrett Andersen Invest Luxembourg SA SPF | | X |
| 132 | Equity Holders | European Media Finance Ltd. | | X |
| 133 | Equity Holders | Fabric Ventures Group SARL | | X |
| 134 | Equity Holders | Gialamas, John | | X |
| 135 | Equity Holders | Gumi Cryptos Capital LLC | | X |
| 136 | Equity Holders | Heliad Equity Partners GmbH & Co. KGaA | X | |
| 137 | Equity Holders | Hoffman, David | | X |
| 138 | Equity Holders | Intership Ltd. | X | |
| 139 | Equity Holders | Isaias, Estefano | | X |
| 140 | Equity Holders | JR Investment Trust | | X |
| 141 | Equity Holders | Jubayli, Jad | | X |
| 142 | Equity Holders | Kazi, Ylan | | X |
| 143 | Equity Holders | Kordomenos, James | | X |
| 144 | Equity Holders | Lamesh, Lior | | X |
| 145 | Equity Holders | Mauldin, Alan L. | | X |
| 146 | Equity Holders | Mauldin, Michelle E. | | X |
| 147 | Equity Holders | Mowry, Michael | | X |
| 148 | Equity Holders | Pistey, Robert | | X |
| 149 | Equity Holders | Remen, Yaron | | X |
| 150 | Equity Holders | Shamai, Shahar | | X |

Response to Seruya Declaration Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 151 | Equity Holders | Tether International Ltd. | | X |
| 152 | Equity Holders | tokentus Investment AG | | X |
| 153 | Equity Holders | Tran, Anhminh | | X |
| 154 | Equity Holders | Treutler, Johannes | | X |
| 155 | Equity Holders | Walsh, Sandra Knuth | | X |
| 156 | Equity Holders | WestCap Celsius Co-Invest 2021 LLC | | X |
| 157 | Equity Holders | WestCap Group | | X |
| 158 | Equity Holders | WestCap SOF Celsius 2021 Aggregator L | | X |
| 159 | Equity Holders | WestCap SOF II IEQ 2021 Co-Invest LP | | X |
| 160 | Institutional Customers | 168 Trading Ltd. | | X |
| 161 | Institutional Customers | Akuna Digital Assets LLC | | X |
| 162 | Institutional Customers | Alameda Research Ltd. | | X |
| 163 | Institutional Customers | Amber - Maple | | X |
| 164 | Institutional Customers | Amber Technologies Ltd. | X | |
| 165 | Institutional Customers | Anchorage Hold LLC | | X |
| 166 | Institutional Customers | Anchorage Lending CA LLC | | X |
| 167 | Institutional Customers | Antalpha Technologies Ltd. | | X |
| 168 | Institutional Customers | AP Capital Absolute Return Fund | | X |
| 169 | Institutional Customers | AP Capital Investment Ltd. | | X |
| 170 | Institutional Customers | Auros Tech Ltd. | | X |
| 171 | Institutional Customers | B2C2 Ltd. | X | |
| 172 | Institutional Customers | Babel Holding Ltd. | | X |
| 173 | Institutional Customers | B-Brick Inc. | | X |
| 174 | Institutional Customers | BCB Prime Services Ltd. | | X |
| 175 | Institutional Customers | BCRS2 LLC | | X |
| 176 | Institutional Customers | Belleway Ltd. | | X |
| 177 | Institutional Customers | BK Coin Capital LP | | X |
| 178 | Institutional Customers | Blockchain Access UK Ltd. | X | |
| 179 | Institutional Customers | Blue Fire Capital Europe Cooperatief UA | | X |
| 180 | Institutional Customers | CEX IO Ltd. | X | |
| 181 | Institutional Customers | CMS Holdings LLC | X | |
| 182 | Institutional Customers | Coinbase Credit | | X |
| 183 | Institutional Customers | Core Scientific Inc. | X | |
| 184 | Institutional Customers | Cumberland DRW LLC | | X |
| 185 | Institutional Customers | Dexterity Capital LLC | X | |
| 186 | Institutional Customers | Digital Asset Funds Management Pty. Ltd. | | X |
| 187 | Institutional Customers | Digital Treasures Management Pte. Ltd. | | X |
| 188 | Institutional Customers | Diversified Alpha SP | | X |
| 189 | Institutional Customers | Druk Holding & Investments Ltd. | | X |
| 190 | Institutional Customers | Dunamis Trading (Bahamas) Ltd. | X | |
| 191 | Institutional Customers | Dunamis Trading III Ltd | | X |
| 192 | Institutional Customers | DV Chain LLC | | X |
| 193 | Institutional Customers | Enigma Securities Ltd. | | X |
| 194 | Institutional Customers | Equities First Holdings LLC | | X |
| 195 | Institutional Customers | FalconX Ltd. | | X |
| 196 | Institutional Customers | Fasanara Investments Master Fund | | X |
| 197 | Institutional Customers | Flow Traders BV | X | |
| 198 | Institutional Customers | Folkvang SRL | | X |
| 199 | Institutional Customers | Fractal | | X |
| 200 | Institutional Customers | Future Technology Investment Ltd. | | X |
| 201 | Institutional Customers | Galaxy | X | |
| 202 | Institutional Customers | Galaxy Digital LP | X | |
| 203 | Institutional Customers | Gemini Trust Co. LLC | X | |
| 204 | Institutional Customers | Genesis Global Capital LLC | | X |
| 205 | Institutional Customers | Grapefruit Trading LLC | | X |
| 206 | Institutional Customers | GSR Markets Ltd. | | X |
| 207 | Institutional Customers | Harrison Opportunity III Inc. | | X |
| 208 | Institutional Customers | HAS Futures LLC | | X |
| 209 | Institutional Customers | Hehmeyer LLC | | X |
| 210 | Institutional Customers | Hehmeyer Trading AG | | X |
| 211 | Institutional Customers | Hirokado, Kohji | | X |
| 212 | Institutional Customers | HodlInaut Pte. Ltd. | | X |
| 213 | Institutional Customers | HRTJ Ltd. | | X |
| 214 | Institutional Customers | Intership Ltd. | X | |
| 215 | Institutional Customers | Iterative OTC LLC | | X |
| 216 | Institutional Customers | JKL Digital Capital Ltd. | | X |
| 217 | Institutional Customers | JSCT Hong Kong Ltd. | X | |
| 218 | Institutional Customers | JST Systems LLC | | X |
| 219 | Institutional Customers | Jump Trading LLC | | X |
| 220 | Institutional Customers | Keyrock SA | | X |
| 221 | Institutional Customers | Komaransky, Mike | | X |
| 222 | Institutional Customers | Kronos Holdings Ltd. | X | |
| 223 | Institutional Customers | LedgerPrime Digital Asset Opportunities Master Fund LP | | X |
| 224 | Institutional Customers | Liquibit USD Market Neutral Arbitrage Fund | | X |
| 225 | Institutional Customers | Liquidity Technologies Ltd. | | X |

Resp to Connection Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 226 | Institutional Customers | LUOJI2017 Ltd. | | X |
| 227 | Institutional Customers | Marquette Digital | | X |
| 228 | Institutional Customers | Matrix Port Technologies Ltd. | | X |
| 229 | Institutional Customers | Memetic Capital LP | | X |
| 230 | Institutional Customers | Menai Markets Ltd. | | X |
| 231 | Institutional Customers | Mountain Cloud Global Ltd. | | X |
| 232 | Institutional Customers | Nascent GP Inc. | | X |
| 233 | Institutional Customers | Nascent LP | | X |
| 234 | Institutional Customers | New World Holdings SA | X | |
| 235 | Institutional Customers | Nickel Digital Asset Fund SPC Digital Asset Arbitrage SPC Institutional | | X |
| 236 | Institutional Customers | Nickel Digital Asset Master Fund SPC - Digital Factors Fund SP | | X |
| 237 | Institutional Customers | Niederhoffer, Roy | | X |
| 238 | Institutional Customers | NYDIG Funding LLC | | X |
| 239 | Institutional Customers | Oiltrading.com Pte. Ltd. | | X |
| 240 | Institutional Customers | Onchain Custodian Pte. Ltd. | | X |
| 241 | Institutional Customers | Optimal Alpha Master Fund Ltd. | | X |
| 242 | Institutional Customers | OSL SG Pte. Ltd. | | X |
| 243 | Institutional Customers | Outremont Alpha Master Fund LP | | X |
| 244 | Institutional Customers | Parallel Capital Management Ltd. | | X |
| 245 | Institutional Customers | Pharos Fund BTC SP | | X |
| 246 | Institutional Customers | Pharos Fund Eth SP | | X |
| 247 | Institutional Customers | Pharos Fund SP | X | |
| 248 | Institutional Customers | Pharos Fund SPC | | X |
| 249 | Institutional Customers | Pharos USD Fund SP | | X |
| 250 | Institutional Customers | Plutus21 Crypto Fund I LP | | X |
| 251 | Institutional Customers | Point95 Global | | X |
| 252 | Institutional Customers | Power Block Coin LLC | | X |
| 253 | Institutional Customers | Prime Trust | X | |
| 254 | Institutional Customers | Profluent Trading Inc. | | X |
| 255 | Institutional Customers | Profluent Trading UK Ltd. | | X |
| 256 | Institutional Customers | QCP Capital Pte Ltd. | | X |
| 257 | Institutional Customers | Radkl LLC | | X |
| 258 | Institutional Customers | Red River Digital Trading LLC | | X |
| 259 | Institutional Customers | Reliz Ltd. | | X |
| 260 | Institutional Customers | S&P Solutions Inc. | | X |
| 261 | Institutional Customers | Scrypt Asset Management AG | | X |
| 262 | Institutional Customers | SEBA Bank AG | | X |
| 263 | Institutional Customers | Siafu Capital | | X |
| 264 | Institutional Customers | Simplex | X | |
| 265 | Institutional Customers | Symbolic Capital Partners Ltd. | | X |
| 266 | Institutional Customers | Tagomi Trading LLC | | X |
| 267 | Institutional Customers | TDX SG Pte. Ltd. | | X |
| 268 | Institutional Customers | Tether International Ltd. | | X |
| 269 | Institutional Customers | Three Arrows Capital Ltd. | | X |
| 270 | Institutional Customers | Tower BC Ltd. | | X |
| 271 | Institutional Customers | Tower Research Capital | X | |
| 272 | Institutional Customers | Transfero Brasil Pagamentos SA | X | |
| 273 | Institutional Customers | Trigon Trading Pty. Ltd. | | X |
| 274 | Institutional Customers | TrueFi | | X |
| 275 | Institutional Customers | Trustoken Inc. | | X |
| 276 | Institutional Customers | Ultimate Coin | | X |
| 277 | Institutional Customers | Vexil Capital Ltd. | | X |
| 278 | Institutional Customers | Waterloo Maple Inc. | | X |
| 279 | Institutional Customers | Weave Markets LP | | X |
| 280 | Institutional Customers | Wincent Investment Fund PCC Ltd. | | X |
| 281 | Institutional Customers | Wintermute - Maple | | X |
| 282 | Institutional Customers | Wintermute Trading Ltd. | X | |
| 283 | Institutional Customers | Wyre Payments Inc. | | X |
| 284 | Institutional Customers | ZeroCap Ltd. | | X |
| 285 | Insurance | AmTrust Underwriters Inc. | | X |
| 286 | Insurance | ANV Insurance | | X |
| 287 | Insurance | Associated Industries Insurance Co. Inc. | | X |
| 288 | Insurance | Atlantic Insurance | X | |
| 289 | Insurance | Ayalon Insurance Co. | X | |
| 290 | Insurance | Crum & Forster Specialty Insurance Co. | | X |
| 291 | Insurance | Falvey Insurance Group | | X |
| 292 | Insurance | Hudson Insurance Group | | X |
| 293 | Insurance | Indian Harbor Insurance Co. | | X |
| 294 | Insurance | Lloyd's of London | X | |
| 295 | Insurance | Markel Insurance | | X |
| 296 | Insurance | Marsh | X | |
| 297 | Insurance | Migdal Insurance Co. | X | |
| 298 | Insurance | Relm Insurance Ltd. | | X |
| 299 | Insurance | Republic Vanguard Insurance Co. | | X |
| 300 | Insurance | Sentinel Insurance Co. | | X |

Resp. of Gregory Pepin Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 301 | Insurance | StarStone Insurance | X | |
| 302 | Insurance | United States Fire Insurance Co. | | X |
| 303 | Insurance | Zurich Insurance Group AG | X | |
| 304 | Landlords | Algo Adtech Ltd. | | X |
| 305 | Landlords | Desks & More | | X |
| 306 | Landlords | Industrious LLC | X | |
| 307 | Landlords | New Spanish Ridge LLC | | X |
| 308 | Landlords | Regus | X | |
| 309 | Landlords | SJP Properties | | X |
| 310 | Legal Matters & Litigants | BitBoy Crypto | | X |
| 311 | Legal Matters & Litigants | Bofur Capital | | X |
| 312 | Legal Matters & Litigants | MS SD IRA LLC | | X |
| 313 | Legal Matters & Litigants | Pharos Fund | X | |
| 314 | Legal Matters & Litigants | Symbolic Capital Partners Ltd. | | X |
| 315 | Legal Matters & Litigants | Vexil Capital Ltd. | | X |
| 316 | Legal Matters and Litigants | Abuin, Juan Antonio Freires | | X |
| 317 | Legal Matters and Litigants | Adamson, Cheyenne Joseph | | X |
| 318 | Legal Matters and Litigants | Akshay, Nayak | | X |
| 319 | Legal Matters and Litigants | Anusic, Tom | | X |
| 320 | Legal Matters and Litigants | Argo Innovations Labs, Inc. | | X |
| 321 | Legal Matters and Litigants | Asher, Rishi | | X |
| 322 | Legal Matters and Litigants | Bao, Adelaide | | X |
| 323 | Legal Matters and Litigants | Barnouin, Pierre | | X |
| 324 | Legal Matters and Litigants | Beekman, Nathaniel J. | | X |
| 325 | Legal Matters and Litigants | Carrara, Diana | | X |
| 326 | Legal Matters and Litigants | Carroccio, Brian C. | | X |
| 327 | Legal Matters and Litigants | Cerqueira, Uno Gomes | | X |
| 328 | Legal Matters and Litigants | Chan, Peter Lm | | X |
| 329 | Legal Matters and Litigants | Condit, Bradley | | X |
| 330 | Legal Matters and Litigants | Constance-Churcher, Camilla | | X |
| 331 | Legal Matters and Litigants | Davis, Bethany | | X |
| 332 | Legal Matters and Litigants | Dierna, Lindi | | X |
| 333 | Legal Matters and Litigants | Dukler, Avinoam Aharon | | X |
| 334 | Legal Matters and Litigants | Dunn, Michael | | X |
| 335 | Legal Matters and Litigants | Esazadeh, Morteza | | X |
| 336 | Legal Matters and Litigants | Fern, Shen-Jay | | X |
| 337 | Legal Matters and Litigants | Fisher, Mark | X | |
| 338 | Legal Matters and Litigants | Flynn, Justin | | X |
| 339 | Legal Matters and Litigants | Frishberg, Daniel | | X |
| 340 | Legal Matters and Litigants | Gallas, Matthias | | X |
| 341 | Legal Matters and Litigants | Gates, Christopher | | X |
| 342 | Legal Matters and Litigants | Goines, Taylor | | X |
| 343 | Legal Matters and Litigants | Grubbe, Jacob | | X |
| 344 | Legal Matters and Litigants | Guild, Benjamin | | X |
| 345 | Legal Matters and Litigants | Guo, Yi Meng | | X |
| 346 | Legal Matters and Litigants | Ishii-Moy, Mai | | X |
| 347 | Legal Matters and Litigants | Kash, Loreta | | X |
| 348 | Legal Matters and Litigants | Katoski, Kristin Freires | | X |
| 349 | Legal Matters and Litigants | Kiani, Saad | | X |
| 350 | Legal Matters and Litigants | Kunderevych, Volodymyr | | X |
| 351 | Legal Matters and Litigants | Langley, Ray M. | | X |
| 352 | Legal Matters and Litigants | Lazar, Angello | | X |
| 353 | Legal Matters and Litigants | Lazar, Valentin | | X |
| 354 | Legal Matters and Litigants | Le, Adrea T. | | X |
| 355 | Legal Matters and Litigants | Levy, Apple | | X |
| 356 | Legal Matters and Litigants | Levy, Damon | | X |
| 357 | Legal Matters and Litigants | Liquidity Technologies Ltd D/B/A Coinflex | | X |
| 358 | Legal Matters and Litigants | Majumdar, Dwaipayan | | X |
| 359 | Legal Matters and Litigants | Maki, Todd Federick | | X |
| 360 | Legal Matters and Litigants | Mara, Erin Claire | | X |
| 361 | Legal Matters and Litigants | Martin, Daniel | | X |
| 362 | Legal Matters and Litigants | Maxfield, Jason Lee | | X |
| 363 | Legal Matters and Litigants | Meng, Brian | | X |
| 364 | Legal Matters and Litigants | Minnick, Justin | | X |
| 365 | Legal Matters and Litigants | Mitton, Hugh | | X |
| 366 | Legal Matters and Litigants | Mozjesik, Sarah | | X |
| 367 | Legal Matters and Litigants | Ney, Andrew | | X |
| 368 | Legal Matters and Litigants | Nickels, Robert | | X |
| 369 | Legal Matters and Litigants | Oren, Nazim | | X |
| 370 | Legal Matters and Litigants | Pandya, Vishwaja | | X |
| 371 | Legal Matters and Litigants | Park, Lisa Bokhee | | X |
| 372 | Legal Matters and Litigants | Pedley, Christopher J | | X |
| 373 | Legal Matters and Litigants | Pestrikov, Dmitri | | X |
| 374 | Legal Matters and Litigants | Pikulenko, Inna | | X |
| 375 | Legal Matters and Litigants | Plutus21 Blockchain Opportunities Fund I | | X |

Restricted Connection Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 376 | Legal Matters and Litigants | Plutus21 Blockchain Opportunities Fund I L.P | | X |
| 377 | Legal Matters and Litigants | Puccio, George W | | X |
| 378 | Legal Matters and Litigants | Rebrook, Patrick | | X |
| 379 | Legal Matters and Litigants | Shafir, Ziv | | X |
| 380 | Legal Matters and Litigants | Simons, Scott | | X |
| 381 | Legal Matters and Litigants | Singh, Amol Bikram | | X |
| 382 | Legal Matters and Litigants | Sousa, Nelson Dos Santos De | | X |
| 383 | Legal Matters and Litigants | Stanley, Chad | | X |
| 384 | Legal Matters and Litigants | Tiong, Susana Ying Hie | | X |
| 385 | Legal Matters and Litigants | Vizzutti, Nicholas Jeffrey | | X |
| 386 | Legal Matters and Litigants | Weber, Brian | | X |
| 387 | Legal Matters and Litigants | Wilson, Kanyla | | X |
| 388 | Legal Matters and Litigants | Wohlman, Odette | | X |
| 389 | Legal Matters and Litigants | Wright, Austin Lamar | | X |
| 390 | Legal Matters and Litigants | Young, Christopher | | X |
| 391 | Non-Bankruptcy Advisors and Ordinary Course Professionals | A. Georgiou & Co. LLC | | X |
| 392 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Advokatu Kontora Sorainen IR Partneriai | | X |
| 393 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Buckley LLP | | X |
| 394 | Non-Bankruptcy Advisors and Ordinary Course Professionals | CMS Cameron McKenna Nabarro Olswang LLP | X | |
| 395 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Conyers Dill & Pearman | X | |
| 396 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Cryptos Capital | | X |
| 397 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Finnegan Henderson Farabow Garrett & Dunner LLP | | X |
| 398 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Holley Nethercote Pty. Ltd. | | X |
| 399 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Jackson Lewis PC | | X |
| 400 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Matsumura, Miko | | X |
| 401 | Non-Bankruptcy Advisors and Ordinary Course Professionals | McCarthy Tetrault LLP | X | |
| 402 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Taylor Wessing LLP | X | |
| 403 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Uria Menéndez Abogados SLP | | X |
| 404 | Non-Bankruptcy Advisors and Ordinary Course Professionals | Wilson Sonsini Goodrich & Rosati PC | | X |
| 405 | Notice of Appearance / Pro Hac Vice | Adrian Perez-Siam | | X |
| 406 | Notice of Appearance / Pro Hac Vice | ArentFox Schiff LLP | | X |
| 407 | Notice of Appearance / Pro Hac Vice | Berliner & Pilson, Esqs. | | X |
| 408 | Notice of Appearance / Pro Hac Vice | Blank Rome LLP | X | |
| 409 | Notice of Appearance / Pro Hac Vice | Brown & Connery, LLP | | X |
| 410 | Notice of Appearance / Pro Hac Vice | Buchalter, A Professional Corporation | | X |
| 411 | Notice of Appearance / Pro Hac Vice | Clint Petty | | X |
| 412 | Notice of Appearance / Pro Hac Vice | Cred Inc. Liquidation Trust | | X |
| 413 | Notice of Appearance / Pro Hac Vice | Duane Morris LLP | X | |
| 414 | Notice of Appearance / Pro Hac Vice | EMCO Technology | | X |
| 415 | Notice of Appearance / Pro Hac Vice | Emil Piliacik, Jr. | | X |
| 416 | Notice of Appearance / Pro Hac Vice | Eric Wohlwend | | X |
| 417 | Notice of Appearance / Pro Hac Vice | Federal Trade Commission | | X |
| 418 | Notice of Appearance / Pro Hac Vice | FisherBroyles, LLP | | X |
| 419 | Notice of Appearance / Pro Hac Vice | Fortis Law Partners | | X |
| 420 | Notice of Appearance / Pro Hac Vice | Great American Insurance Company | X | |
| 421 | Notice of Appearance / Pro Hac Vice | Hopkins & Carley | | X |
| 422 | Notice of Appearance / Pro Hac Vice | Hugh McCullough of Davis Wright Tremaine LLP | | X |
| 423 | Notice of Appearance / Pro Hac Vice | Jonathan Jerry Shroyer | | X |
| 424 | Notice of Appearance / Pro Hac Vice | Kyle Farmery | | X |
| 425 | Notice of Appearance / Pro Hac Vice | Levin-Epstein & Associates, P.C. | | X |
| 426 | Notice of Appearance / Pro Hac Vice | Lisa T. Vickers | | X |
| 427 | Notice of Appearance / Pro Hac Vice | Maurice Wutscher LLP | | X |
| 428 | Notice of Appearance / Pro Hac Vice | McCarter & English, LLP | X | |
| 429 | Notice of Appearance / Pro Hac Vice | McDermott Will & Emery LLP | X | |
| 430 | Notice of Appearance / Pro Hac Vice | Meyer, Suozzi, English & Klein, P.C. | | X |
| 431 | Notice of Appearance / Pro Hac Vice | Michigan Department of Treasury | | X |
| 432 | Notice of Appearance / Pro Hac Vice | Mintz & Gold, LLP | | X |
| 433 | Notice of Appearance / Pro Hac Vice | MRK Spanish Ridge, LLC | | X |
| 434 | Notice of Appearance / Pro Hac Vice | Nhat Van Meyer | | X |
| 435 | Notice of Appearance / Pro Hac Vice | Nol Myer | | X |
| 436 | Notice of Appearance / Pro Hac Vice | Norgaard O'Boyle & Hannon | | X |
| 437 | Notice of Appearance / Pro Hac Vice | Office of the Attorney General of Texas | | X |
| 438 | Notice of Appearance / Pro Hac Vice | Peter Polombo | | X |
| 439 | Notice of Appearance / Pro Hac Vice | PREH Spanish Ridge, LLC | | X |
| 440 | Notice of Appearance / Pro Hac Vice | Pryor Cashman LLP | X | |
| 441 | Notice of Appearance / Pro Hac Vice | RH Montgomery Properties, Inc. | | X |
| 442 | Notice of Appearance / Pro Hac Vice | Ripple Labs Inc. | X | |
| 443 | Notice of Appearance / Pro Hac Vice | Roche Freedman LLP, A Professional Corporation | | X |
| 444 | Notice of Appearance / Pro Hac Vice | SAP America, Inc. | X | |
| 445 | Notice of Appearance / Pro Hac Vice | SAP National Security Services | X | |
| 446 | Notice of Appearance / Pro Hac Vice | Sills Cummis & Gross P.C. | | X |
| 447 | Notice of Appearance / Pro Hac Vice | State of Washington Department of Employment Security | | X |
| 448 | Notice of Appearance / Pro Hac Vice | State of Washington Department of Labor & Industries | | X |
| 449 | Notice of Appearance / Pro Hac Vice | State of Washington Department of Revenue | | X |
| 450 | Notice of Appearance / Pro Hac Vice | Stuart P. Gelberg, Esq | | X |

Responses of the Celsius Heck

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 451 | Notice of Appearance / Pro Hac Vice | Stuart P. Gelberg, Esq. | | X |
| 452 | Notice of Appearance / Pro Hac Vice | SULLIVAN & CROMWELL LLP | X | |
| 453 | Notice of Appearance / Pro Hac Vice | Texas Department of Banking | | X |
| 454 | Notice of Appearance / Pro Hac Vice | Thomas Shannon, D.D.S., M.D S | | X |
| 455 | Notice of Appearance / Pro Hac Vice | TN Attorney General's Office | | X |
| 456 | Notice of Appearance / Pro Hac Vice | TN Dept of Commerce and Insurance | | X |
| 457 | Notice of Appearance / Pro Hac Vice | Togut Segal & Segal LLP | | X |
| 458 | Notice of Appearance / Pro Hac Vice | Troutman Pepper Hamilton Sanders LLP | | X |
| 459 | Notice of Appearance / Pro Hac Vice | Venable LLP | X | |
| 460 | Notice of Appearance / Pro Hac Vice | Vermont Department of Financial Regulation | | X |
| 461 | Notice of Appearance / Pro Hac Vice | Vincent Theodore Goetten | | X |
| 462 | Notice of Appearance / Pro Hac Vice | Waller Lansden Dortch & Davis, LLP | | X |
| 463 | Notice of Appearance / Pro Hac Vice | Washington State Department of Financial Institutions | | X |
| 464 | Notice of Appearance / Pro Hac Vice | Weil, Gotshal & Manges LLP | X | |
| 465 | Notice of Appearance / Pro Hac Vice | Weir Greenblatt Pierce LLP | | X |
| 466 | Notice of Appearance / Pro Hac Vice | William D. Schroeder, Jr. | | X |
| 467 | Other Related Parties | Fujii, Akiko | | X |
| 468 | Other Related Parties | Landes, Aliza | | X |
| 469 | Other Related Parties | Mashinsky, Krissy | | X |
| 470 | Other Related Parties | Mashinsky, Rena | | X |
| 471 | Potential Bidding Party - (GK8) | | | X |
| 472 | Potential Bidding Party - (GK8) | | X | |
| 473 | Potential Bidding Party - (GK8) | | | X |
| 474 | Potential Bidding Party - (GK8) | | X | |
| 475 | Potential Bidding Party - (GK8) | | X | |
| 476 | Potential Bidding Party - (GK8) | | X | |
| 477 | Potential Bidding Party - (GK8) | | X | |
| 478 | Potential Bidding Party - (GK8) | | | X |
| 479 | Potential Bidding Party - (GK8) | | X | |
| 480 | Potential Bidding Party - (GK8) | | X | |
| 481 | Potential Bidding Party - (GK8) | | | X |
| 482 | Potential Bidding Party - (GK8) | | X | |
| 483 | Potential Bidding Party - (GK8) | | X | |
| 484 | Potential Bidding Party - (GK8) | | | X |
| 485 | Potential Bidding Party - (GK8) | | | X |
| 486 | Potential Bidding Party - (GK8) | | X | |
| 487 | Potential Bidding Party - (GK8) | | X | |
| 488 | Potential Bidding Party - (GK8) | | X | |
| 489 | Potential Bidding Party - (GK8) | | | X |
| 490 | Potential Bidding Party - (GK8) | | | X |
| 491 | Potential Bidding Party - (GK8) | | X | |
| 492 | Potential Bidding Party - (GK8) | | X | |
| 493 | Potential Bidding Party - (GK8) | | X | |
| 494 | Potential Bidding Party - (GK8) | | X | |
| 495 | Potential Bidding Party - (GK8) | | X | |
| 496 | Potential Bidding Party - (GK8) | | X | |
| 497 | Potential Bidding Party - (GK8) | | | X |
| 498 | Potential Bidding Party - (GK8) | | | X |
| 499 | Potential Bidding Party - (GK8) | | | X |
| 500 | Potential Bidding Party - (GK8) | | X | |
| 501 | Potential Bidding Party - (GK8) | | X | |
| 502 | Potential Bidding Party - (GK8) | | | X |
| 503 | Potential Bidding Party - (GK8) | | X | |
| 504 | Potential Bidding Party - (GK8) | | X | |
| 505 | Potential Bidding Party - (GK8) | | X | |
| 506 | Potential Bidding Party - (GK8) | | | X |
| 507 | Potential Bidding Party - (GK8) | | X | |
| 508 | Potential Bidding Party - (GK8) | | X | |
| 509 | Potential Bidding Party - (GK8) | | X | |
| 510 | Potential Bidding Party - (GK8) | | | X |
| 511 | Potential Bidding Party - (GK8) | | | X |
| 512 | Potential Bidding Party - DIP Financing | | | X |
| 513 | Potential Bidding Party - DIP Financing | | | X |
| 514 | Potential Bidding Party - DIP Financing | | X | |
| 515 | Potential Bidding Party - DIP Financing | | X | |
| 516 | Potential Bidding Party - DIP Financing | | X | |
| 517 | Potential Bidding Party - DIP Financing | | X | |
| 518 | Potential Bidding Party - DIP Financing | | X | |
| 519 | Potential Bidding Party - DIP Financing | | X | |
| 520 | Potential Bidding Party - DIP Financing | | | X |
| 521 | Potential Bidding Party - DIP Financing | | | X |
| 522 | Potential Bidding Party - DIP Financing | | X | |
| 523 | Potential Bidding Party - DIP Financing | | X | |
| 524 | Potential Bidding Party - DIP Financing | | | X |
| 525 | Potential Bidding Party - DIP Financing | | | X |

Redacted Names for Docket

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 526 | Potential Bidding Party - DIP Financing | | X | |
| 527 | Potential Bidding Party - DIP Financing | | X | |
| 528 | Potential Bidding Party - DIP Financing | | X | |
| 529 | Potential Bidding Party - DIP Financing | | X | |
| 530 | Potential Bidding Party - DIP Financing | | X | |
| 531 | Potential Bidding Party - DIP Financing | | | X |
| 532 | Potential Bidding Party - DIP Financing | | | X |
| 533 | Potential Bidding Party - DIP Financing | | X | |
| 534 | Potential Bidding Party - DIP Financing | | | X |
| 535 | Potential Bidding Party - DIP Financing | | | X |
| 536 | Potential Bidding Party - DIP Financing | | X | |
| 537 | Potential Bidding Party - DIP Financing | | | X |
| 538 | Potential Bidding Party - DIP Financing | | | X |
| 539 | Potential Bidding Party - DIP Financing | | X | |
| 540 | Potential Bidding Party - DIP Financing | | | X |
| 541 | Potential Bidding Party - DIP Financing | | X | |
| 542 | Potential Bidding Party - DIP Financing | | X | |
| 543 | Potential Bidding Party - DIP Financing | | X | |
| 544 | Potential Bidding Party - DIP Financing | | | X |
| 545 | Potential Bidding Party - DIP Financing | | X | |
| 546 | Potential Bidding Party - DIP Financing | | X | |
| 547 | Potential Bidding Party - DIP Financing | | X | |
| 548 | Potential Bidding Party - DIP Financing | | X | |
| 549 | Potential Bidding Party - DIP Financing | | | X |
| 550 | Potential Bidding Party - DIP Financing | | X | |
| 551 | Potential Bidding Party - DIP Financing | | X | |
| 552 | Potential Bidding Party - DIP Financing | | | X |
| 553 | Potential Bidding Party - DIP Financing | | X | |
| 554 | Potential Bidding Party - DIP Financing | | | X |
| 555 | Potential Bidding Party - DIP Financing | | | X |
| 556 | Potential Bidding Party - DIP Financing | | | X |
| 557 | Potential Bidding Party - DIP Financing | | X | |
| 558 | Potential Bidding Party - DIP Financing | | | X |
| 559 | Potential Bidding Party - DIP Financing | | | X |
| 560 | Potential Bidding Party - DIP Financing | | X | |
| 561 | Potential Bidding Party - DIP Financing | | X | |
| 562 | Potential Bidding Party - DIP Financing | | | X |
| 563 | Potential Bidding Party - DIP Financing | | X | |
| 564 | Potential Bidding Party - DIP Financing | | X | |
| 565 | Potential Bidding Party - DIP Financing | | | X |
| 566 | Potential Bidding Party - Parent & Asset Sales | | | X |
| 567 | Potential Bidding Party - Parent & Asset Sales | | X | |
| 568 | Potential Bidding Party - Parent & Asset Sales | | X | |
| 569 | Potential Bidding Party - Parent & Asset Sales | | | X |
| 570 | Potential Bidding Party - Parent & Asset Sales | | | X |
| 571 | Potential Bidding Party - Parent & Asset Sales | | X | |
| 572 | Potential Bidding Party - Parent & Asset Sales | | | X |
| 573 | Potential Bidding Party - Parent & Asset Sales | | X | |
| 574 | Potential Bidding Party - Parent & Asset Sales | | | X |
| 575 | Potential Bidding Party - Parent & Asset Sales | | X | |
| 576 | Potential Bidding Party - Parent & Asset Sales | | | X |
| 577 | Potential Bidding Party - Parent & Asset Sales | | | X |
| 578 | Retail Customers | 007 Capital LLC | | X |
| 579 | Retail Customers | A'Vard, Suzanne | | X |
| 580 | Retail Customers | Abdolsalehi, Alvand | | X |
| 581 | Retail Customers | Abeliuk, Eduardo | | X |
| 582 | Retail Customers | Abuvala, Ravi Ryan | | X |
| 583 | Retail Customers | Academic Health Research Group Inc | | X |
| 584 | Retail Customers | Adam, Alexander | | X |
| 585 | Retail Customers | Adams, Darryl Thomas | | X |
| 586 | Retail Customers | AK Solutions Inc | | X |
| 587 | Retail Customers | Al Khoori, Mohamed Yousif Ahmed H. | | X |
| 588 | Retail Customers | Alblooki, Noora | | X |
| 589 | Retail Customers | Alchemy Capital Group LLC | | X |
| 590 | Retail Customers | Alexander, Alena | | X |
| 591 | Retail Customers | Alfi, Eldad M | | X |
| 592 | Retail Customers | Ali, Khaleef | | X |
| 593 | Retail Customers | Ali, Yanush | | X |
| 594 | Retail Customers | Allen Davis, Otis | | X |
| 595 | Retail Customers | Allen-Narker, Rosalind | | X |
| 596 | Retail Customers | Alliance Service, Inc | | X |
| 597 | Retail Customers | Alshehhi, Ali | | X |
| 598 | Retail Customers | Alshehhi, Sultan | | X |
| 599 | Retail Customers | AltCoinTrader Pty Ltd. | | X |

Redacted Names for Retail Clock

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 600 | Retail Customers | Alven Jerome Kroot Agreement Of Trust Dated July 16, 1990, As Amended, | | X |
| 601 | Retail Customers | AM Ventures Holding Inc. | | X |
| 602 | Retail Customers | Amaro, Johnny | | X |
| 603 | Retail Customers | Amm, Andreas | | X |
| 604 | Retail Customers | An Eye Toward Retirement LLC | | X |
| 605 | Retail Customers | Anand, Kamaljit | | X |
| 606 | Retail Customers | Andari Co. Ltd. | | X |
| 607 | Retail Customers | Andrews, Nik | | X |
| 608 | Retail Customers | Andrianakos, Fotis | | X |
| 609 | Retail Customers | Andrus, Brent W | | X |
| 610 | Retail Customers | Ankeney, John Charles | | X |
| 611 | Retail Customers | Aos Investments LLC | | X |
| 612 | Retail Customers | Araujo, João Pedro | | X |
| 613 | Retail Customers | Asaff, Glenn | | X |
| 614 | Retail Customers | Ashizaki, Yuki | | X |
| 615 | Retail Customers | August , Lucia Kim | | X |
| 616 | Retail Customers | Ayon, Brandon | | X |
| 617 | Retail Customers | Backhausen, Martin | | X |
| 618 | Retail Customers | Bae, Peter | | X |
| 619 | Retail Customers | Baer, Matthew David | | X |
| 620 | Retail Customers | Baggenstos, Thomas Stephan | | X |
| 621 | Retail Customers | Bailey, Christoher | | X |
| 622 | Retail Customers | Bailey, Jeremy Douglas | | X |
| 623 | Retail Customers | Baillie, Robert | | X |
| 624 | Retail Customers | Baker, Brian | | X |
| 625 | Retail Customers | Baker, Dominic John | | X |
| 626 | Retail Customers | Baker, William Harold | | X |
| 627 | Retail Customers | Baldwin, Kevin | | X |
| 628 | Retail Customers | Balter, Lon | | X |
| 629 | Retail Customers | Barrett, Bryan | | X |
| 630 | Retail Customers | Barrett, Craig R | | X |
| 631 | Retail Customers | Barry, Patrick | | X |
| 632 | Retail Customers | Bartholf, John David | | X |
| 633 | Retail Customers | Bartlett, Chris | | X |
| 634 | Retail Customers | Baslaib, Mohamed Ali Mohamed Naser | | X |
| 635 | Retail Customers | Baum, Joe | | X |
| 636 | Retail Customers | Bauman, Simon | | X |
| 637 | Retail Customers | Becin, Christopher Michael | | X |
| 638 | Retail Customers | Bedard, Craig | | X |
| 639 | Retail Customers | Beerda, Douwe | | X |
| 640 | Retail Customers | Bellotte, Brent | | X |
| 641 | Retail Customers | Benfanti, Michael Frederick | | X |
| 642 | Retail Customers | Bennett, Danyal | | X |
| 643 | Retail Customers | Benotsch, Alan | | X |
| 644 | Retail Customers | Berg, Henry Guyer | | X |
| 645 | Retail Customers | Bergman, Devon Aaron | | X |
| 646 | Retail Customers | Berrada, Amin | | X |
| 647 | Retail Customers | Bertsch, Kirk | | X |
| 648 | Retail Customers | Betancourt, Leopoldo | | X |
| 649 | Retail Customers | Beyer, Richard William | | X |
| 650 | Retail Customers | Bfaller Rd LLC | | X |
| 651 | Retail Customers | Bi, Mariam | | X |
| 652 | Retail Customers | Biig LLC | | X |
| 653 | Retail Customers | Biscontine, Stephen C | | X |
| 654 | Retail Customers | Bits of Sunshine LLC | | X |
| 655 | Retail Customers | BJ Investment Holdings LLC | | X |
| 656 | Retail Customers | Blackthorne, Jordan | | X |
| 657 | Retail Customers | Block, Michael Henry | | X |
| 658 | Retail Customers | Blum, Hugo | | X |
| 659 | Retail Customers | BNK to the Future | | X |
| 660 | Retail Customers | Bnktothefuture | | X |
| 661 | Retail Customers | Boari, Francesco | | X |
| 662 | Retail Customers | Bofilis, Dimosthenis | | X |
| 663 | Retail Customers | Bohnett, David Charles | | X |
| 664 | Retail Customers | Bolger, Marilyn | | X |
| 665 | Retail Customers | Bongiorno, John | | X |
| 666 | Retail Customers | Boroff, Dustin Charles | | X |
| 667 | Retail Customers | Bos, Stephen Richard | | X |
| 668 | Retail Customers | Boskovski, Nikola | | X |
| 669 | Retail Customers | Bosman, Andre | | X |
| 670 | Retail Customers | Botlani Esfahani, Rana | | X |
| 671 | Retail Customers | Bourell, Roy | | X |
| 672 | Retail Customers | Bowman, Eric Lee | | X |
| 673 | Retail Customers | Bradbury Jr, Josh Douglas | | X |

Redacted Names for Privacy Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 674 | Retail Customers | Braibant, Olivier | | X |
| 675 | Retail Customers | Brechtl, Marques | | X |
| 676 | Retail Customers | Bressler, David Jason | | X |
| 677 | Retail Customers | Bresson, Laurent | | X |
| 678 | Retail Customers | Brian T. Slater Revocable Living Trust | | X |
| 679 | Retail Customers | Brida, Anthony | | X |
| 680 | Retail Customers | Brigham, Gerrad William | | X |
| 681 | Retail Customers | Bright, Nicolas John | | X |
| 682 | Retail Customers | Broad Reach Consulting LLC | | X |
| 683 | Retail Customers | Brooks, Gary | | X |
| 684 | Retail Customers | Broytman, Meyer M | | X |
| 685 | Retail Customers | Bru Textiles NV | | X |
| 686 | Retail Customers | Brue, Chad | | X |
| 687 | Retail Customers | Brunner, Hannes Oskar | | X |
| 688 | Retail Customers | Bslater Ddo LLC | | X |
| 689 | Retail Customers | Bslater Ddo LLC | | X |
| 690 | Retail Customers | Bugeja, Paul | | X |
| 691 | Retail Customers | Buono, Ian | | X |
| 692 | Retail Customers | Burkgren, Eric Alan | | X |
| 693 | Retail Customers | Butendieck , Ronald | | X |
| 694 | Retail Customers | Butryn, David | | X |
| 695 | Retail Customers | Bveeder Rd LLC | | X |
| 696 | Retail Customers | Byrd, Jeffery L | | X |
| 697 | Retail Customers | Byrd, William Michael | | X |
| 698 | Retail Customers | Byrne , Michael S | | X |
| 699 | Retail Customers | Caceres, Santos | | X |
| 700 | Retail Customers | Cadwell, Charles | | X |
| 701 | Retail Customers | CAEN Group LLC, The | | X |
| 702 | Retail Customers | Caj Krogh Holding Aps | | X |
| 703 | Retail Customers | Campos, John Jr. | | X |
| 704 | Retail Customers | Cannon, Andrew | | X |
| 705 | Retail Customers | Caraballo, Christopher Richard | | X |
| 706 | Retail Customers | Carmonatoscano, Rafael | | X |
| 707 | Retail Customers | Carolyn Vincent Superannuation Fund | | X |
| 708 | Retail Customers | Caroulle, Irénée | | X |
| 709 | Retail Customers | Carroz, Martial | | X |
| 710 | Retail Customers | Carter, Luke Armstrong | | X |
| 711 | Retail Customers | Carter, Micah | | X |
| 712 | Retail Customers | Carter, William | | X |
| 713 | Retail Customers | Cartmell, Brian | | X |
| 714 | Retail Customers | Casal, Gerardo De La Caridad | | X |
| 715 | Retail Customers | Castillo, Ryan | | X |
| 716 | Retail Customers | Cech, Seikan | | X |
| 717 | Retail Customers | Celeste, Beth | | X |
| 718 | Retail Customers | Cetin, Edward | | X |
| 719 | Retail Customers | Chambless, Jill | | X |
| 720 | Retail Customers | Champigny, Edward William | | X |
| 721 | Retail Customers | Chan, Channing | | X |
| 722 | Retail Customers | Chang, Christopher Bonyen | | X |
| 723 | Retail Customers | Chang, Kai | | X |
| 724 | Retail Customers | Chang, Rickie | | X |
| 725 | Retail Customers | Chen, Yihong | | X |
| 726 | Retail Customers | Chen, Yiyue | | X |
| 727 | Retail Customers | Cheng , Anthony | | X |
| 728 | Retail Customers | Cheng, Kwok Yuk | | X |
| 729 | Retail Customers | Chester Church Buckenmaier 3rd | | X |
| 730 | Retail Customers | Chetaud, Louis | | X |
| 731 | Retail Customers | Chetchotisak, Chot | | X |
| 732 | Retail Customers | Chi, Sang Keun | | X |
| 733 | Retail Customers | Chiapuris , Paul Neil | | X |
| 734 | Retail Customers | Chin, Jason | | X |
| 735 | Retail Customers | Chiu, James Lee | | X |
| 736 | Retail Customers | Chiu, Yee Lai | | X |
| 737 | Retail Customers | Choi, Linda Yi | | X |
| 738 | Retail Customers | Choi, Luke Kyung Goo | | X |
| 739 | Retail Customers | Christensen, Chad R | | X |
| 740 | Retail Customers | Christiansen, Robert Nathan | | X |
| 741 | Retail Customers | Chu, Cindy | | X |
| 742 | Retail Customers | Chu, Pui Sum | | X |
| 743 | Retail Customers | Chulamorkodt, Natakom | | X |
| 744 | Retail Customers | Chung, Ting Kong Terence | | X |
| 745 | Retail Customers | Church, Legacy City | | X |
| 746 | Retail Customers | Chvalek, Jirka | | X |
| 747 | Retail Customers | Cipolloni, Mark J. | | X |
| 748 | Retail Customers | Claessens, Cris | | X |
| | Retail Customers | Clark, Nicholas | | X |

Reply of Genesis for Block

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 749 | Retail Customers | Clark, Scott | | X |
| 750 | Retail Customers | Coache, Philippe | | X |
| 751 | Retail Customers | Cochran , Peter Mckinney | | X |
| 752 | Retail Customers | Coffey, Matthew | | X |
| 753 | Retail Customers | Cohen Pavon, Roni | | X |
| 754 | Retail Customers | Coin Meester B.V. | | X |
| 755 | Retail Customers | Coinmerce BV | X | |
| 756 | Retail Customers | Cole, John | | X |
| 757 | Retail Customers | Cole, Joshua | | X |
| 758 | Retail Customers | Coleman, Rasan A | | X |
| 759 | Retail Customers | Collins, Cade Alexander Walker | | X |
| 760 | Retail Customers | Collins, Nic | | X |
| 761 | Retail Customers | Conklin, Jennifer Walter | | X |
| 762 | Retail Customers | Conlin, Jon Collins | | X |
| 763 | Retail Customers | Connolly, Thomas Joseph | | X |
| 764 | Retail Customers | Cook, Daniel | | X |
| 765 | Retail Customers | Corp, Prasine | | X |
| 766 | Retail Customers | Corporation, Stellence | | X |
| 767 | Retail Customers | Costa, John | | X |
| 768 | Retail Customers | Cote, Damien | | X |
| 769 | Retail Customers | Courtney, Tod Andrew | | X |
| 770 | Retail Customers | Covario AG | X | |
| 771 | Retail Customers | Coward, Martin John | | X |
| 772 | Retail Customers | Cowen, Clint | | X |
| 773 | Retail Customers | Crab, Marijke | | X |
| 774 | Retail Customers | Cromack, Brendan | | X |
| 775 | Retail Customers | Crosby, Daniel Lee | | X |
| 776 | Retail Customers | Croucher, Paul | | X |
| 777 | Retail Customers | Cruz, Edmond Harada | | X |
| 778 | Retail Customers | Cruz, Joshua Boda | | X |
| 779 | Retail Customers | Crypto10 SP | | X |
| 780 | Retail Customers | Cumenal, Pierre | | X |
| 781 | Retail Customers | Cura, Nicolas | | X |
| 782 | Retail Customers | Curran, Ryan | | X |
| 783 | Retail Customers | CustÃ³dio, JoÃ£o | | X |
| 784 | Retail Customers | Dailey, Jonathan | | X |
| 785 | Retail Customers | Damp, Steven Charles | | X |
| 786 | Retail Customers | Dan, Claudia | | X |
| 787 | Retail Customers | Dan, Flaviu | | X |
| 788 | Retail Customers | Dancs, Douglas | | X |
| 789 | Retail Customers | Dang, Phuoc Trung | | X |
| 790 | Retail Customers | Danz, James William | | X |
| 791 | Retail Customers | Darby, Thomas | | X |
| 792 | Retail Customers | Darschewski , Kenneth Edward | | X |
| 793 | Retail Customers | Davey, Joseph | | X |
| 794 | Retail Customers | Davis, Otis | | X |
| 795 | Retail Customers | Davison , Daniel Carson | | X |
| 796 | Retail Customers | Decamp, Ryan Alan | | X |
| 797 | Retail Customers | Deferred 1031 Exchange LLC | | X |
| 798 | Retail Customers | Dekker, Barbara | | X |
| 799 | Retail Customers | Dekker, Carlos C. | | X |
| 800 | Retail Customers | Delargy, Colin C. | | X |
| 801 | Retail Customers | Deleon, Michael A | | X |
| 802 | Retail Customers | Demirtas, Ali | | X |
| 803 | Retail Customers | Deshotels, Kerry L | | X |
| 804 | Retail Customers | Dezfuli-Arjomandi, Arman Ahmad | | X |
| 805 | Retail Customers | DGL Investments LLC | X | |
| 806 | Retail Customers | Dhamani, Khairunnisa | | X |
| 807 | Retail Customers | Dhillon, Jagatjit | | X |
| 808 | Retail Customers | Dhiraj, Mandeep | | X |
| 809 | Retail Customers | Difiore , Thomas Albert | | X |
| 810 | Retail Customers | DiFiore ASA Irrevocable GST Trust | | X |
| 811 | Retail Customers | Difiore TSA Irrevocable GST Trust | | X |
| 812 | Retail Customers | Dipaolo, William Richard | | X |
| 813 | Retail Customers | Dixon, James | | X |
| 814 | Retail Customers | Dixon, Simon | | X |
| 815 | Retail Customers | Dobrajc, Rok | | X |
| 816 | Retail Customers | Donaldson, Troy | | X |
| 817 | Retail Customers | Donnelly, Stephen | | X |
| 818 | Retail Customers | Donofrio, John | | X |
| 819 | Retail Customers | Downing, Marcus | | X |
| 820 | Retail Customers | Downs, Bradley James | | X |
| 821 | Retail Customers | Drake, Cem Danial | | X |
| 822 | Retail Customers | Druk Project Fund | | X |
| 823 | Retail Customers | DSCA44 LLC | | X |

Reply of Names for Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 824 | Retail Customers | Duffy, Jamie | | X |
| 825 | Retail Customers | Dum, Joseph | | X |
| 826 | Retail Customers | Dunnett, Darren | | X |
| 827 | Retail Customers | Duprex, Jeffrey Paul | | X |
| 828 | Retail Customers | Dzaran, John Peter | | X |
| 829 | Retail Customers | Ecko, Marc | | X |
| 830 | Retail Customers | Edgar, David | | X |
| 831 | Retail Customers | Egnet, Eric | | X |
| 832 | Retail Customers | Eigenberg-Gordon, Marlee | | X |
| 833 | Retail Customers | El Achkar, David | | X |
| 834 | Retail Customers | Eller, Phillip Brian | | X |
| 835 | Retail Customers | Ellington, Brian | | X |
| 836 | Retail Customers | Elshafei, Ashraf | | X |
| 837 | Retail Customers | Elwell, Daniel Robert | | X |
| 838 | Retail Customers | Eng Chuan, Liew | | X |
| 839 | Retail Customers | Engelin, Peter | | X |
| 840 | Retail Customers | Eriks, Dennis | | X |
| 841 | Retail Customers | Etzold , Derrick Wayne | | X |
| 842 | Retail Customers | Fagan, Peter | | X |
| 843 | Retail Customers | Fang, Hsin Jan Sean | | X |
| 844 | Retail Customers | Farley, John U | | X |
| 845 | Retail Customers | Farnsworth, Darren Scott | | X |
| 846 | Retail Customers | Farpella, Kevin Ray | | X |
| 847 | Retail Customers | Farr, Nicholas | | X |
| 848 | Retail Customers | Fay, Christopher Derrick | | X |
| 849 | Retail Customers | Feintisch, Adam Michael | | X |
| 850 | Retail Customers | Fertik, Michael Benjamin Selkowe | | X |
| 851 | Retail Customers | Finkle, James | | X |
| 852 | Retail Customers | Finley, Patrick Westall | | X |
| 853 | Retail Customers | Fisher, John | | X |
| 854 | Retail Customers | Fite, Jacob Benjamin | | X |
| 855 | Retail Customers | FL3XX Gmbh | | X |
| 856 | Retail Customers | Fletcher, Brett | | X |
| 857 | Retail Customers | Floatzen Doo | | X |
| 858 | Retail Customers | Ford, Robert | X | |
| 859 | Retail Customers | Forlini, Yoann | | X |
| 860 | Retail Customers | Four Thirteen LLC | | X |
| 861 | Retail Customers | Foy, Aixa | | X |
| 862 | Retail Customers | Frangioni, Pierre | | X |
| 863 | Retail Customers | Fraser , Daniel | | X |
| 864 | Retail Customers | Freedman, Paul | | X |
| 865 | Retail Customers | Fuller, Christopher Wayne | | X |
| 866 | Retail Customers | Futuris Capital Inc | | X |
| 867 | Retail Customers | Galindo, Cesar | | X |
| 868 | Retail Customers | Gallagher , Rebecca | | X |
| 869 | Retail Customers | Gallardo, Jorge | | X |
| 870 | Retail Customers | Gamez, Arturo Rafael | | X |
| 871 | Retail Customers | Garner, Phillip Wayne Jr. | | X |
| 872 | Retail Customers | Gaston, Paul | | X |
| 873 | Retail Customers | Gatt, Raymond | | X |
| 874 | Retail Customers | Gauch, Roger | | X |
| 875 | Retail Customers | Gavrilovic, Nikola | | X |
| 876 | Retail Customers | Gayle, Patrick C | | X |
| 877 | Retail Customers | Genç, Raci | | X |
| 878 | Retail Customers | Geoghegan , Alexei | | X |
| 879 | Retail Customers | Gerbán, Dániel Jeno | | X |
| 880 | Retail Customers | Gettner , Mark | | X |
| 881 | Retail Customers | Ghiselli, Antonio | | X |
| 882 | Retail Customers | Gi, Richard | | X |
| 883 | Retail Customers | Giardiello, Bradley Edwin | | X |
| 884 | Retail Customers | Gibbs, Jack | | X |
| 885 | Retail Customers | Giese, Dale | | X |
| 886 | Retail Customers | Giese, Jeannette | | X |
| 887 | Retail Customers | Giesselman, Troy | | X |
| 888 | Retail Customers | Gilmer, George Hudson | | X |
| 889 | Retail Customers | Giorgianni, Massimo | | X |
| 890 | Retail Customers | Girod, John | | X |
| 891 | Retail Customers | Glensgard, Dan | | X |
| 892 | Retail Customers | Global Regency Limited | | X |
| 893 | Retail Customers | Goh, Jian Kai | | X |
| 894 | Retail Customers | Golcovs, Aleksandrs | | X |
| 895 | Retail Customers | Goldsmith, Mary E | | X |
| 896 | Retail Customers | Gollapudi, Shilpa Kamala | | X |
| 897 | Retail Customers | Gololicic, Gregor | | X |
| 898 | Retail Customers | Gonella, Damien | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 899 | Retail Customers | Gonzales, Carlos | | X |
| 900 | Retail Customers | Graham, Steven Neil | | X |
| 901 | Retail Customers | Gray, Jill Marie | | X |
| 902 | Retail Customers | Group, K1 Financial | | X |
| 903 | Retail Customers | GuljaÅ¡, JanoÅ¡ | | X |
| 904 | Retail Customers | H Trussell Investments Pty. Ltd. | | X |
| 905 | Retail Customers | Haidukewych , George | | X |
| 906 | Retail Customers | Haijen, Peter | | X |
| 907 | Retail Customers | Hald, David Friis | | X |
| 908 | Retail Customers | Halikias, Thomas T. | | X |
| 909 | Retail Customers | Hamilton, John | | X |
| 910 | Retail Customers | Hamilton, Nathan | | X |
| 911 | Retail Customers | Hammell, Robert Howard | | X |
| 912 | Retail Customers | Hammond III, Edward Hopkins | | X |
| 913 | Retail Customers | Hanchett, Dolores | | X |
| 914 | Retail Customers | Hannagan, Cory | | X |
| 915 | Retail Customers | Hansen, Frederik | | X |
| 916 | Retail Customers | Hardy, Marie | | X |
| 917 | Retail Customers | Hargrove, Kathy | | X |
| 918 | Retail Customers | Haro Avila, Hector Manuel | | X |
| 919 | Retail Customers | Harper, Lisa | | X |
| 920 | Retail Customers | Harrell, Ashley Anne | | X |
| 921 | Retail Customers | Hart, Dan | | X |
| 922 | Retail Customers | Hartley, James | | X |
| 923 | Retail Customers | Hawley, John Follen | | X |
| 924 | Retail Customers | Hayes, Michael | | X |
| 925 | Retail Customers | Haynie, Robert | | X |
| 926 | Retail Customers | He, Yunzheng | | X |
| 927 | Retail Customers | Heads, Michael Anthony | | X |
| 928 | Retail Customers | Heavenly Scent Professionals LLC | | X |
| 929 | Retail Customers | Hecht, Amara | | X |
| 930 | Retail Customers | Hedin, Daniel | | X |
| 931 | Retail Customers | Helfrich, Charles | | X |
| 932 | Retail Customers | Hennuyer, Fabien | | X |
| 933 | Retail Customers | Heo, Jae Yong | | X |
| 934 | Retail Customers | Herring, Stephen Ashley | | X |
| 935 | Retail Customers | Hewes, Joshua | | X |
| 936 | Retail Customers | Hibbard, Dustin Kyle | | X |
| 937 | Retail Customers | Hibbert, Adrian | | X |
| 938 | Retail Customers | Hilson, James Wayne | | X |
| 939 | Retail Customers | Ho, Quoc Tri | | X |
| 940 | Retail Customers | Hoan, Ly | | X |
| 941 | Retail Customers | Hoefflin, Jeffrey David | | X |
| 942 | Retail Customers | Hoermann, Stefan | | X |
| 943 | Retail Customers | Hoffmann, David | | X |
| 944 | Retail Customers | Hofland, Gerhard | | X |
| 945 | Retail Customers | Hofstede, Jerry | | X |
| 946 | Retail Customers | Hogan, Andrew | | X |
| 947 | Retail Customers | Hollingshead, Thomas Leon | | X |
| 948 | Retail Customers | Holmes, Lewis Robert | | X |
| 949 | Retail Customers | Holmström, Christel | | X |
| 950 | Retail Customers | Holt, Jonathon James | | X |
| 951 | Retail Customers | Holt, Travon | | X |
| 952 | Retail Customers | Holzhauer, Kyle Michael | | X |
| 953 | Retail Customers | HOME 007 LLC | | X |
| 954 | Retail Customers | Horejsi, Adam | | X |
| 955 | Retail Customers | Hoskyn, John Mark | | X |
| 956 | Retail Customers | Hou, Chengyu | | X |
| 957 | Retail Customers | House, Emanuel | | X |
| 958 | Retail Customers | Hsu, Roger | | X |
| 959 | Retail Customers | Huang, Chun | | X |
| 960 | Retail Customers | Huang, Cuihua | | X |
| 961 | Retail Customers | Huang, Gavryelle Xingbe | | X |
| 962 | Retail Customers | Huang, Tak | | X |
| 963 | Retail Customers | Huang, Xue Wen | | X |
| 964 | Retail Customers | Hughes, Gary | | X |
| 965 | Retail Customers | Hughes, Stephen | | X |
| 966 | Retail Customers | Hulst, Petrus Adrianus Maria | | X |
| 967 | Retail Customers | Humphreys, Steven C. | | X |
| 968 | Retail Customers | Hunt, Bryan J. | | X |
| 969 | Retail Customers | Huo, Lan | | X |
| 970 | Retail Customers | Hwang, Kevin | | X |
| 971 | Retail Customers | ICB Solutions | | X |
| 972 | Retail Customers | Imokawa, Stuart | | X |
| 973 | Retail Customers | Imtiaz , Lubna | | X |

Redacted Names for Schedule of Stock

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 974 | Retail Customers | InfoObjects Inc. | | X |
| 975 | Retail Customers | Invictus Capital Financial Technologies SPC | | X |
| 976 | Retail Customers | Isaias, Estefano Emilio | | X |
| 977 | Retail Customers | Izzo, Daniele | | X |
| 978 | Retail Customers | Jackson III, Clifton Edward | | X |
| 979 | Retail Customers | Jacobs, Chloe Merithe | | X |
| 980 | Retail Customers | Jahizi, Oliver | | X |
| 981 | Retail Customers | Jansen, Bob | | X |
| 982 | Retail Customers | Jellestad Capital S.A. SPF | | X |
| 983 | Retail Customers | Jensen, Joseph | | X |
| 984 | Retail Customers | Jimenez, Alex Rene | | X |
| 985 | Retail Customers | Jimenez, Gustavo Alberto | | X |
| 986 | Retail Customers | John Dzaran 401K Trust | | X |
| 987 | Retail Customers | Jonas, Leah Nicole | | X |
| 988 | Retail Customers | Jones, Beverly | | X |
| 989 | Retail Customers | Jones, Diann | | X |
| 990 | Retail Customers | Jones, Holly | | X |
| 991 | Retail Customers | Jones, Matthew Ernest | | X |
| 992 | Retail Customers | Jones, Roger Lee | | X |
| 993 | Retail Customers | Jordan, Daniel T | | X |
| 994 | Retail Customers | Joseph, Sebastian | | X |
| 995 | Retail Customers | Jue, Tyrone Todd | | X |
| 996 | Retail Customers | Juiris, Peter Casimir | | X |
| 997 | Retail Customers | Juneau, Michael William | | X |
| 998 | Retail Customers | Kalynovskyi, Dmytro | | X |
| 999 | Retail Customers | Kan, Ivan | | X |
| 1000 | Retail Customers | Kaneseki, Akiko | | X |
| 1001 | Retail Customers | Kanngieäyer, Stefan | | X |
| 1002 | Retail Customers | Kansomdee, Pronthip | | X |
| 1003 | Retail Customers | Kap, Ethan Garet | | X |
| 1004 | Retail Customers | Katehis, Konstantinos | | X |
| 1005 | Retail Customers | Kauff, Steven Howard | | X |
| 1006 | Retail Customers | Kazius, Ronald | | X |
| 1007 | Retail Customers | KCA Holdings, LP | | X |
| 1008 | Retail Customers | Keasey, Anne | | X |
| 1009 | Retail Customers | Kedzior, Martin Enrico | | X |
| 1010 | Retail Customers | Keiser, Marc Vito | | X |
| 1011 | Retail Customers | Kelly, James Patrick | | X |
| 1012 | Retail Customers | Kelly, Sean | | X |
| 1013 | Retail Customers | Kendrix, Adam | | X |
| 1014 | Retail Customers | Kevin Batteh Trust, The | | X |
| 1015 | Retail Customers | Khare, Rahul Kumar | | X |
| 1016 | Retail Customers | Khattiya, Lany | | X |
| 1017 | Retail Customers | KHK Investments LP | | X |
| 1018 | Retail Customers | Khoo, Denis | | X |
| 1019 | Retail Customers | Kikko, John | | X |
| 1020 | Retail Customers | Kilpatrick, Keith H | | X |
| 1021 | Retail Customers | Kim , Eliot | | X |
| 1022 | Retail Customers | Kim, Jay | | X |
| 1023 | Retail Customers | Kim, Miae | | X |
| 1024 | Retail Customers | Kim, Peter | | X |
| 1025 | Retail Customers | Kim, Sungyoun | | X |
| 1026 | Retail Customers | King, Christopher Scott | | X |
| 1027 | Retail Customers | Kingsford, Todd | | X |
| 1028 | Retail Customers | Kirsanov, Dimitry | | X |
| 1029 | Retail Customers | Kjellin, Erik | | X |
| 1030 | Retail Customers | Koala 1 LLC | | X |
| 1031 | Retail Customers | KOALA 2 LLC | | X |
| 1032 | Retail Customers | KOALA3 LLC | | X |
| 1033 | Retail Customers | Kochalka, James | | X |
| 1034 | Retail Customers | Kogan, Dmitriy | | X |
| 1035 | Retail Customers | Kohan, Emil James | | X |
| 1036 | Retail Customers | Kohji, Hirokado | | X |
| 1037 | Retail Customers | Kohn, Lawrence H | | X |
| 1038 | Retail Customers | Komarovskiy, Valentin | | X |
| 1039 | Retail Customers | Kompaso Pty Ltd | | X |
| 1040 | Retail Customers | Kordomenos, James Nick | | X |
| 1041 | Retail Customers | Kouzbari, Munear | | X |
| 1042 | Retail Customers | Koyama, Osamu | | X |
| 1043 | Retail Customers | Kpham Rd LLC | | X |
| 1044 | Retail Customers | Krampf, Oleg | | X |
| 1045 | Retail Customers | Krener, Olivier | | X |
| 1046 | Retail Customers | Krienke, Gerri | | X |
| 1047 | Retail Customers | Kryuchkov, Ivan | | X |
| 1048 | Retail Customers | Ku, Yuehsu | | X |

Reply of Cinnabar for Black

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1049 | Retail Customers | Kuijper, Ronald | | X |
| 1050 | Retail Customers | Kuipers, Jonathan Andrew | | X |
| 1051 | Retail Customers | Kumar, Tarun | | X |
| 1052 | Retail Customers | Kutty, Madhu Kumaran | | X |
| 1053 | Retail Customers | Labenek, Andrew | | X |
| 1054 | Retail Customers | Lablanc , Brian | | X |
| 1055 | Retail Customers | Lacey, Peter | | X |
| 1056 | Retail Customers | Lai, Christopher | | X |
| 1057 | Retail Customers | Lakeside Oral & Facial Surgery Institute, LLC | | X |
| 1058 | Retail Customers | Lamplough, Howard | | X |
| 1059 | Retail Customers | Landskov, Gregg Raymond | | X |
| 1060 | Retail Customers | Langslet, Robert | | X |
| 1061 | Retail Customers | Laski, Ludwik | | X |
| 1062 | Retail Customers | Laubjerg, Asker | | X |
| 1063 | Retail Customers | Lee, Edmund Wangkai | | X |
| 1064 | Retail Customers | Lee, Eunice Jungmin | | X |
| 1065 | Retail Customers | Lee, Keagan Hyunchul | | X |
| 1066 | Retail Customers | Lee, Yih Neng | | X |
| 1067 | Retail Customers | Lee, Yun Chin | | X |
| 1068 | Retail Customers | Lehrfeld, Joseph S. | | X |
| 1069 | Retail Customers | Leister, Thomas A | | X |
| 1070 | Retail Customers | Leon, Shlomi | | X |
| 1071 | Retail Customers | Lévy, Nicolas | | X |
| 1072 | Retail Customers | Lewis Davies, Ryan Wynn | | X |
| 1073 | Retail Customers | Lewis, Howard | | X |
| 1074 | Retail Customers | Li, Yifan | | X |
| 1075 | Retail Customers | Liao, Guoping | | X |
| 1076 | Retail Customers | Libertad Group LLC | X | |
| 1077 | Retail Customers | Liljenquist, Brandon | | X |
| 1078 | Retail Customers | Lim, Jane | | X |
| 1079 | Retail Customers | Lim, Jong | | X |
| 1080 | Retail Customers | Lin, David | | X |
| 1081 | Retail Customers | Linevskiy, Anton | | X |
| 1082 | Retail Customers | Linkhorst, Martin | | X |
| 1083 | Retail Customers | Linton , Robert Brian | | X |
| 1084 | Retail Customers | Liu, Clark Haito | | X |
| 1085 | Retail Customers | Liu, Juqiang | | X |
| 1086 | Retail Customers | Liu, Nanxi Nanqian | | X |
| 1087 | Retail Customers | Llewellyn, Isaac | | X |
| 1088 | Retail Customers | Loh, Yuen Heng | | X |
| 1089 | Retail Customers | Lohmann, Michael Andrew | | X |
| 1090 | Retail Customers | Low, Ban Chai | | X |
| 1091 | Retail Customers | Lucraft, Peter | | X |
| 1092 | Retail Customers | Ludwig, Gerald | | X |
| 1093 | Retail Customers | Luk, Yoshihiro | | X |
| 1094 | Retail Customers | Luo, Edward | | X |
| 1095 | Retail Customers | Luo, Jin | | X |
| 1096 | Retail Customers | Luo, Robert | | X |
| 1097 | Retail Customers | Luo, Xiangdong | | X |
| 1098 | Retail Customers | Ly., Eric | | X |
| 1099 | Retail Customers | Lylloff, Sander | | X |
| 1100 | Retail Customers | Lynce, Gary Joseph | | X |
| 1101 | Retail Customers | M4-Tse Inc | | X |
| 1102 | Retail Customers | Macaluso , Sean A | | X |
| 1103 | Retail Customers | Mackler , Bradley | | X |
| 1104 | Retail Customers | Mahehswari, Bhavna | | X |
| 1105 | Retail Customers | Maheshwari, Pawan Kumar | | X |
| 1106 | Retail Customers | Mahoney, Justin Michael | | X |
| 1107 | Retail Customers | Main, Geoffrey | | X |
| 1108 | Retail Customers | Mak, Edwin | | X |
| 1109 | Retail Customers | Mandap, Stephen | | X |
| 1110 | Retail Customers | Manea, Mircea | | X |
| 1111 | Retail Customers | Mann, Jeffrey Brent | | X |
| 1112 | Retail Customers | Manzke, Holger | | X |
| 1113 | Retail Customers | Marchioni, John P. | | X |
| 1114 | Retail Customers | Marciniec, Andrzej | | X |
| 1115 | Retail Customers | Marina Point Investments LLC | | X |
| 1116 | Retail Customers | Marinho, Fréderick | | X |
| 1117 | Retail Customers | Market, Sheeld | | X |
| 1118 | Retail Customers | Marlow, Daniel C | | X |
| 1119 | Retail Customers | Marroquin , Eric | | X |
| 1120 | Retail Customers | Martin, Jesse | | X |
| 1121 | Retail Customers | Martin, Patrick | | X |
| 1122 | Retail Customers | Martin, Patrick Victor Josef | | X |
| 1123 | Retail Customers | Martinez, Lucas | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1124 | Retail Customers | Mason, Jeremy | | X |
| 1125 | Retail Customers | Mastrokoukos, George | | X |
| 1126 | Retail Customers | Mastropieri, Bengi | | X |
| 1127 | Retail Customers | Mathews, William | | X |
| 1128 | Retail Customers | Matsumoto, Reid | | X |
| 1129 | Retail Customers | Matsumura, Fumihiko | | X |
| 1130 | Retail Customers | Matthews, Andrew | | X |
| 1131 | Retail Customers | Matthews, Lee | | X |
| 1132 | Retail Customers | Mattina, Christopher W. | | X |
| 1133 | Retail Customers | Maya, Rafael | | X |
| 1134 | Retail Customers | McCarty, John Edward | | X |
| 1135 | Retail Customers | McClintock, Michael | | X |
| 1136 | Retail Customers | McCollor, John | | X |
| 1137 | Retail Customers | McCommons , Jeremiah Curtis | | X |
| 1138 | Retail Customers | McDaniel, Paul | | X |
| 1139 | Retail Customers | McDonald, Pat | | X |
| 1140 | Retail Customers | McElveen, Michael | | X |
| 1141 | Retail Customers | McFarland, Heidi | | X |
| 1142 | Retail Customers | McGarry, Brian Thomas | | X |
| 1143 | Retail Customers | McGurk, Jamie | | X |
| 1144 | Retail Customers | McIntyre, Deverick | | X |
| 1145 | Retail Customers | McKenney, Scott Herbert | | X |
| 1146 | Retail Customers | McKeon, Brian Joseph | | X |
| 1147 | Retail Customers | McLean, Stuart | | X |
| 1148 | Retail Customers | McMullen, Brian | | X |
| 1149 | Retail Customers | McNeil, James W. | | X |
| 1150 | Retail Customers | McNeil, Laura Faller | | X |
| 1151 | Retail Customers | Medeiros, Pablo | | X |
| 1152 | Retail Customers | Meehan, Kristine M. | | X |
| 1153 | Retail Customers | Mellein, John Gabriel | | X |
| 1154 | Retail Customers | Mellema, Kamiel | | X |
| 1155 | Retail Customers | Mendes De Carvalho, Junior Joao | | X |
| 1156 | Retail Customers | Mercola, Joseph Michael | | X |
| 1157 | Retail Customers | Mercuri, Tom | | X |
| 1158 | Retail Customers | Meridian Crypto Trust | | X |
| 1159 | Retail Customers | Messall, Patrick | | X |
| 1160 | Retail Customers | Meyer, Marvin | | X |
| 1161 | Retail Customers | Mghari, Rachid | | X |
| 1162 | Retail Customers | MHT Super Pty. Ltd. | | X |
| 1163 | Retail Customers | Michaels, Alexander | | X |
| 1164 | Retail Customers | Mick, Christopher | | X |
| 1165 | Retail Customers | Milbert, Chris | | X |
| 1166 | Retail Customers | Mildbrandt, Mark | | X |
| 1167 | Retail Customers | Miller, Samuel Garfield, Jr. | | X |
| 1168 | Retail Customers | Mindell, David Paul | | X |
| 1169 | Retail Customers | Miroshnyk, Valentyn | | X |
| 1170 | Retail Customers | Mirpuri , Dinesh | | X |
| 1171 | Retail Customers | Misra, Upmanyu | | X |
| 1172 | Retail Customers | Mohan, Arun | | X |
| 1173 | Retail Customers | Mohr, Lance Randall | | X |
| 1174 | Retail Customers | Molly Spendthrift Trust | | X |
| 1175 | Retail Customers | Montford, Harold Kevin | | X |
| 1176 | Retail Customers | Moon, Wang Sik | | X |
| 1177 | Retail Customers | Moore, Daniel | | X |
| 1178 | Retail Customers | Moran, Jeffrey | | X |
| 1179 | Retail Customers | Moser, Christopher M. | | X |
| 1180 | Retail Customers | Most, Robert | | X |
| 1181 | Retail Customers | Moure, Brian Campbell | | X |
| 1182 | Retail Customers | Moutawakkil, Khalil | | X |
| 1183 | Retail Customers | Mowry, Michael Shane | | X |
| 1184 | Retail Customers | Mr. Lock Inc | | X |
| 1185 | Retail Customers | MSL Family Trust, The | | X |
| 1186 | Retail Customers | Mukhtar, Saeed | | X |
| 1187 | Retail Customers | Munro, Ian | | X |
| 1188 | Retail Customers | Murphy, Thomas Patrick, Jr. | | X |
| 1189 | Retail Customers | Muschinski , Eric | | X |
| 1190 | Retail Customers | Musumeci, Antonio | | X |
| 1191 | Retail Customers | MWR Investments Ltd | | X |
| 1192 | Retail Customers | Narang, Shantanu | | X |
| 1193 | Retail Customers | Narayanan, Swathi Lakshmi Tirupattur | | X |
| 1194 | Retail Customers | Neiman, Gary | | X |
| 1195 | Retail Customers | Neiman, Jason | | X |
| 1196 | Retail Customers | Neptune Digital Asset | | X |
| 1197 | Retail Customers | Nervo, Miriam | | X |
| 1198 | Retail Customers | Neste, Bradley | | X |

Reply of Gemini for Appendix

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1199 | Retail Customers | Ngo, David | | X |
| 1200 | Retail Customers | Nguyen, Nam | | X |
| 1201 | Retail Customers | Nguyen, Phuc | | X |
| 1202 | Retail Customers | Nguyen, Phuong | | X |
| 1203 | Retail Customers | Nicol, Ronald | | X |
| 1204 | Retail Customers | Novatzky, Benjamin D | | X |
| 1205 | Retail Customers | Nung, Warren | | X |
| 1206 | Retail Customers | Ochisor, Nicolae | | X |
| 1207 | Retail Customers | Odonoghue, Kieran Terence | | X |
| 1208 | Retail Customers | Ogletree, Brian | | X |
| 1209 | Retail Customers | Olumide, Adedayo | | X |
| 1210 | Retail Customers | Orsinger, Drew Francis | | X |
| 1211 | Retail Customers | Ortega Arteaga , Daniel | | X |
| 1212 | Retail Customers | Ortiz, George Emmanuel J | | X |
| 1213 | Retail Customers | Osborn, Janine | | X |
| 1214 | Retail Customers | Oso, Kay | | X |
| 1215 | Retail Customers | Ostrye, Nate | | X |
| 1216 | Retail Customers | Otero Vila, Juan | | X |
| 1217 | Retail Customers | Ou, Amon | | X |
| 1218 | Retail Customers | Owen, Jason Bruce | | X |
| 1219 | Retail Customers | Owens, Shane | | X |
| 1220 | Retail Customers | Padalytsya, Daryna | | X |
| 1221 | Retail Customers | Pae, Mitchell Chon | | X |
| 1222 | Retail Customers | Pagnanelli, Christopher Joseph | | X |
| 1223 | Retail Customers | Pagnanelli, Victor Carl | | X |
| 1224 | Retail Customers | Paholak , Thomas Daniel | | X |
| 1225 | Retail Customers | Pajeda, Nerijus | | X |
| 1226 | Retail Customers | Pak, Juno Kol | | X |
| 1227 | Retail Customers | Palm, Travis John | | X |
| 1228 | Retail Customers | Palmero, Claude | | X |
| 1229 | Retail Customers | Papadakis, Elizabeth | | X |
| 1230 | Retail Customers | Papadakis, Georgios | | X |
| 1231 | Retail Customers | Pappas, Alex | | X |
| 1232 | Retail Customers | Pappas, Eugenia | | X |
| 1233 | Retail Customers | Paraboschi, Gabriele | | X |
| 1234 | Retail Customers | Paris Castle IV LLC | | X |
| 1235 | Retail Customers | Park, Seong | | X |
| 1236 | Retail Customers | Parsons, Aron William | | X |
| 1237 | Retail Customers | Patel, Mitesh | | X |
| 1238 | Retail Customers | Patel, Shilla Natvarbhai | | X |
| 1239 | Retail Customers | Patel, Shital Kantilal | | X |
| 1240 | Retail Customers | Patil, Abhitabh Aneel | | X |
| 1241 | Retail Customers | Pearlman, Leah | | X |
| 1242 | Retail Customers | Pearson, Andrew John | | X |
| 1243 | Retail Customers | Perez, Julio | | X |
| 1244 | Retail Customers | Perry, Brett Alan | | X |
| 1245 | Retail Customers | Peterson, Stephen Paul | | X |
| 1246 | Retail Customers | Pham, Khai Trinh | | X |
| 1247 | Retail Customers | Pham, Sophia | | X |
| 1248 | Retail Customers | Phan, Long | | X |
| 1249 | Retail Customers | Phonamenon Management Group LLC | | X |
| 1250 | Retail Customers | Picinic, Nicholas | | X |
| 1251 | Retail Customers | Pick, Thomas | | X |
| 1252 | Retail Customers | Pierce, James | | X |
| 1253 | Retail Customers | Pierson, Justin T. | | X |
| 1254 | Retail Customers | Pinto, Matthew | | X |
| 1255 | Retail Customers | Pitta, Celso | | X |
| 1256 | Retail Customers | Piura, Luis | | X |
| 1257 | Retail Customers | Plutus21 Blockchain Opportunities I, SP of Plutus21 Global, SPC | | X |
| 1258 | Retail Customers | Plutus21 Blockchain Opportunities II SP | | X |
| 1259 | Retail Customers | Plutus21 Blockchain Yield I SP | | X |
| 1260 | Retail Customers | Point LLC | X | |
| 1261 | Retail Customers | Pomeranz, Alex Aaron | | X |
| 1262 | Retail Customers | Pototschnik, Andrew Alexander | | X |
| 1263 | Retail Customers | Potts, Shaun | | X |
| 1264 | Retail Customers | Prabhu, Chetan | | X |
| 1265 | Retail Customers | Pratt, Folarin | | X |
| 1266 | Retail Customers | Premoli, Alessandro | | X |
| 1267 | Retail Customers | Profax Super Pty Ltd | | X |
| 1268 | Retail Customers | Pronker, Anna | | X |
| 1269 | Retail Customers | Pundisto, Lalana | | X |
| 1270 | Retail Customers | Pusnei, Alexandru | | X |
| 1271 | Retail Customers | Quick, Tyson Lynn | | X |
| 1272 | Retail Customers | Quinlan, Thomas | | X |
| 1273 | Retail Customers | Quinn, Christopher Michael | | X |

Reply of Debtors for 11/18

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1274 | Retail Customers | Qureshi, Ashar | | X |
| 1275 | Retail Customers | Radeckas, Domantas | | X |
| 1276 | Retail Customers | Rainthorpe, Robert | | X |
| 1277 | Retail Customers | Raj, Rafael | | X |
| 1278 | Retail Customers | Rakim, Kenneth | | X |
| 1279 | Retail Customers | Ramsey, Roy | | X |
| 1280 | Retail Customers | Ranchod , Pravin | | X |
| 1281 | Retail Customers | Randel Brown Crypto Ventures, LLC | | X |
| 1282 | Retail Customers | Rasmussen, Adam | | X |
| 1283 | Retail Customers | Rathna Yake, Samira Sandaruwan | | X |
| 1284 | Retail Customers | Reid, Robert W | | X |
| 1285 | Retail Customers | Reiss, Andrew Wesley | | X |
| 1286 | Retail Customers | Reitz, Spencer Mcdowell | | X |
| 1287 | Retail Customers | Reph, Ryan Don | | X |
| 1288 | Retail Customers | RHMP Properties Inc. | | X |
| 1289 | Retail Customers | Rianova Limited | | X |
| 1290 | Retail Customers | Richardson, Eric | | X |
| 1291 | Retail Customers | Rieu, Guillem | | X |
| 1292 | Retail Customers | Ritholz, Susan K | | X |
| 1293 | Retail Customers | Ritter, Dale | | X |
| 1294 | Retail Customers | Ritter, David | | X |
| 1295 | Retail Customers | Ritter, Linda J. | | X |
| 1296 | Retail Customers | Ritter, Paul | | X |
| 1297 | Retail Customers | Robert, Alexander | | X |
| 1298 | Retail Customers | Robert, Joseph Murdoch | | X |
| 1299 | Retail Customers | Robinson, Andrew Douglas | | X |
| 1300 | Retail Customers | Rodman, Kaori | | X |
| 1301 | Retail Customers | Rojas, Roberto R | | X |
| 1302 | Retail Customers | Roness, Philip Andrew | | X |
| 1303 | Retail Customers | Ronning, Donald | | X |
| 1304 | Retail Customers | Rooney, Alan | | X |
| 1305 | Retail Customers | Rooney, Derek | | X |
| 1306 | Retail Customers | Roos, Evert Christian | | X |
| 1307 | Retail Customers | Rueca, Jaydee Crissare Racho | | X |
| 1308 | Retail Customers | Rusanescu, Vlad | | X |
| 1309 | Retail Customers | Russell, Jr, Frank Charles | | X |
| 1310 | Retail Customers | Ruszkay, Andrew Conard | | X |
| 1311 | Retail Customers | Ryan, Robert | | X |
| 1312 | Retail Customers | S V Kandiah, Sivam | | X |
| 1313 | Retail Customers | Sabariaga, Jethro | | X |
| 1314 | Retail Customers | Sabba, Isaac | | X |
| 1315 | Retail Customers | Saker, Douglas | | X |
| 1316 | Retail Customers | Salera, Manuel | | X |
| 1317 | Retail Customers | Samaha, Georges Farah | | X |
| 1318 | Retail Customers | Samian, Mohammed | | X |
| 1319 | Retail Customers | Sandrana, Naidu Appalaswamy | | X |
| 1320 | Retail Customers | Sarwar, Shahzad | | X |
| 1321 | Retail Customers | Savich, Tatjana Tina | | X |
| 1322 | Retail Customers | Sayer, Carey | | X |
| 1323 | Retail Customers | Scalar Investments Corp. | | X |
| 1324 | Retail Customers | Schallmann, Justin | | X |
| 1325 | Retail Customers | Schardt, Natalie | | X |
| 1326 | Retail Customers | Schauder, Marco | | X |
| 1327 | Retail Customers | Schenk, Rolf | | X |
| 1328 | Retail Customers | Schile, Clay Jeremiah | | X |
| 1329 | Retail Customers | Schmid, Alan | | X |
| 1330 | Retail Customers | Schramm, Ryan Kristian | | X |
| 1331 | Retail Customers | Schroeder, Jesse | | X |
| 1332 | Retail Customers | Seldes, Richard | | X |
| 1333 | Retail Customers | Seneca, Michael James | | X |
| 1334 | Retail Customers | Sepp, Todd Edward | | X |
| 1335 | Retail Customers | Sese LLC | | X |
| 1336 | Retail Customers | Sevastopoulos, Haralambous | | X |
| 1337 | Retail Customers | Sevastopoulos, Konstantinos | | X |
| 1338 | Retail Customers | Shar, Stephen Phillip | | X |
| 1339 | Retail Customers | Sheehan, Todd Michael | | X |
| 1340 | Retail Customers | Shekhter , Dina | | X |
| 1341 | Retail Customers | Shepherd, Lloyd Thomas | | X |
| 1342 | Retail Customers | Shriver, Damien Jay | | X |
| 1343 | Retail Customers | Sidibe, Aissata | | X |
| 1344 | Retail Customers | Sigle, Manfred | | X |
| 1345 | Retail Customers | Simard, René-Marc | | X |
| 1346 | Retail Customers | Simonsen, Robert | | X |
| 1347 | Retail Customers | Simov, Svetoslav | | X |
| 1348 | Retail Customers | Singh, Balbahadur | | X |

Report of Independent for Black

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1349 | Retail Customers | Sirjoo, Jitindra Wayne | | X |
| 1350 | Retail Customers | Siwik, Robert | | X |
| 1351 | Retail Customers | Skrocki , James A | | X |
| 1352 | Retail Customers | Slater, Brian Thomas | | X |
| 1353 | Retail Customers | Slater, Glen Brian | | X |
| 1354 | Retail Customers | Sleeper Hill Investments LLC | | X |
| 1355 | Retail Customers | Sleeper, Richard Daniel | | X |
| 1356 | Retail Customers | Sleeping1 LLC | | X |
| 1357 | Retail Customers | Smith, Bob | | X |
| 1358 | Retail Customers | Smith, Daniel W | | X |
| 1359 | Retail Customers | Smith, David Silva | | X |
| 1360 | Retail Customers | Smith, Nelson Courtney | | X |
| 1361 | Retail Customers | Smith, Ralph | | X |
| 1362 | Retail Customers | Snowman, Michael J | | X |
| 1363 | Retail Customers | Solyom, Andrew | | X |
| 1364 | Retail Customers | Sommer, Michael | | X |
| 1365 | Retail Customers | Sondhi, Tarun | | X |
| 1366 | Retail Customers | Souders, Jack Trayes | | X |
| 1367 | Retail Customers | Soulier, Matthew Frost | | X |
| 1368 | Retail Customers | Southgate Superannuation Pty Ltd | | X |
| 1369 | Retail Customers | Spain, Betty J | | X |
| 1370 | Retail Customers | Spain, Court W | | X |
| 1371 | Retail Customers | Speterson Rd LLC | | X |
| 1372 | Retail Customers | Spriggs, Leeton | | X |
| 1373 | Retail Customers | Sprinkle, David | | X |
| 1374 | Retail Customers | Srisaikham, Palita | | X |
| 1375 | Retail Customers | Stapleton, Paul | | X |
| 1376 | Retail Customers | Stefanski, John | | X |
| 1377 | Retail Customers | Steger, Reinhold | | X |
| 1378 | Retail Customers | Stein, Jason | | X |
| 1379 | Retail Customers | Steinberg, Michael | | X |
| 1380 | Retail Customers | Steinborn, Steven Harold | | X |
| 1381 | Retail Customers | Stephenson , Cecil | | X |
| 1382 | Retail Customers | Stevens, Ashleigh | | X |
| 1383 | Retail Customers | Stevens, Daron Robert | | X |
| 1384 | Retail Customers | Stevenson, Nicholas | | X |
| 1385 | Retail Customers | Stewart, Russell Garth | | X |
| 1386 | Retail Customers | Stjohn, Sean | | X |
| 1387 | Retail Customers | Stock , Jr., Darrell Lee | | X |
| 1388 | Retail Customers | Stolle, Diane | | X |
| 1389 | Retail Customers | Stringer, Douglas Ross | | X |
| 1390 | Retail Customers | Strobilus LLC | X | |
| 1391 | Retail Customers | Sublett, Sandra | | X |
| 1392 | Retail Customers | Suckno, Keith Michael | | X |
| 1393 | Retail Customers | Summers, Adam Neal | | X |
| 1394 | Retail Customers | Sun, Siqi | | X |
| 1395 | Retail Customers | Suskind, Joseph | | X |
| 1396 | Retail Customers | Sutedjo, Juwono | | X |
| 1397 | Retail Customers | Sutfin, Miller | | X |
| 1398 | Retail Customers | Sutton, Richard | | X |
| 1399 | Retail Customers | Sutton, Sebastian | | X |
| 1400 | Retail Customers | Sweeney, David | | X |
| 1401 | Retail Customers | Swyftx Pty. Ltd. | | X |
| 1402 | Retail Customers | Sypniewski, Christian | | X |
| 1403 | Retail Customers | Taibi, Charlie | | X |
| 1404 | Retail Customers | Tall Tree Consulting LLC | X | |
| 1405 | Retail Customers | Tan, Richard | | X |
| 1406 | Retail Customers | Tan, Yan | | X |
| 1407 | Retail Customers | Tanaka, Colleen Takeko | | X |
| 1408 | Retail Customers | Tanner, Delbert Hodges | | X |
| 1409 | Retail Customers | Tap Root LP | | X |
| 1410 | Retail Customers | Thayer, Craig William | | X |
| 1411 | Retail Customers | The Anna Pistey Family Trust | | X |
| 1412 | Retail Customers | The KNL Family Trust | | X |
| 1413 | Retail Customers | Thomann , Michael John | | X |
| 1414 | Retail Customers | Thomas DiFiore Childrens GST Investment Irrevocable Trust | | X |
| 1415 | Retail Customers | Thomas, Michael Anthony | | X |
| 1416 | Retail Customers | Thornton, William Arthur | | X |
| 1417 | Retail Customers | Tincher, Steven Jess | | X |
| 1418 | Retail Customers | Tobias, Scott Jeffrey | | X |
| 1419 | Retail Customers | Trahan, Ryan Michael | | X |
| 1420 | Retail Customers | Tran, Anhminh Le | | X |
| 1421 | Retail Customers | Transparencyx LLC | | X |
| 1422 | Retail Customers | Trebtow, Jens | | X |
| 1423 | Retail Customers | Tremann, Christopher Ernest | | X |

Reply of Comerica for 145ck

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1424 | Retail Customers | Trucksess, Cory | | X |
| 1425 | Retail Customers | Trundy, Cory Lane | | X |
| 1426 | Retail Customers | Truschel, Sante Kundermawan Arien | | X |
| 1427 | Retail Customers | Tsai, Jonathan P | | X |
| 1428 | Retail Customers | Tsang, Kwan Ming | | X |
| 1429 | Retail Customers | Tsang, Wai Nam | | X |
| 1430 | Retail Customers | Tsonis , Con | | X |
| 1431 | Retail Customers | Tuganov, Ignat | | X |
| 1432 | Retail Customers | Turpin, James Phillip | | X |
| 1433 | Retail Customers | Turtle, Ryan Michael | | X |
| 1434 | Retail Customers | Tychalski, George | | X |
| 1435 | Retail Customers | Tyler, Craig Edward | | X |
| 1436 | Retail Customers | Ubuntu Love Pty. Ltd. | | X |
| 1437 | Retail Customers | Ughetta, Mark Richard | | X |
| 1438 | Retail Customers | Ulrey, Renard | | X |
| 1439 | Retail Customers | Untermeyer, Ricky | | X |
| 1440 | Retail Customers | Uppheim, Kristoffer | | X |
| 1441 | Retail Customers | Urata-Thompson, Harumi | | X |
| 1442 | Retail Customers | Ustymenko, Vadym | | X |
| 1443 | Retail Customers | Valdes , Stephen | | X |
| 1444 | Retail Customers | Valenzuela, Daniel Anthony | | X |
| 1445 | Retail Customers | Valkenberg, Renaud | | X |
| 1446 | Retail Customers | Van De Weerd, Eugene | | X |
| 1447 | Retail Customers | Van, Loc Truyen | | X |
| 1448 | Retail Customers | Vance, Shawn Dylan | | X |
| 1449 | Retail Customers | Vanhoose , Derek Paul | | X |
| 1450 | Retail Customers | Vault12, Inc | | X |
| 1451 | Retail Customers | Vegancuts Inc. | | X |
| 1452 | Retail Customers | Vendrow, Vlad | | X |
| 1453 | Retail Customers | Venema, Wim | | X |
| 1454 | Retail Customers | Verheyen, Kenneth | | X |
| 1455 | Retail Customers | Vetsch, Richard | | X |
| 1456 | Retail Customers | Vidmar, Ziga | | X |
| 1457 | Retail Customers | Villinger, Christopher | | X |
| 1458 | Retail Customers | Vincent, Carolyn Margaret | | X |
| 1459 | Retail Customers | Vivar, Emmanuel | | X |
| 1460 | Retail Customers | Vivas, Rafael | | X |
| 1461 | Retail Customers | Vozzo, Mark Joseph | | X |
| 1462 | Retail Customers | Wade, Ryan Kenneth | | X |
| 1463 | Retail Customers | Wagner, Thomas Nichols | | X |
| 1464 | Retail Customers | Walbeer Singh, Balwinder Singh | | X |
| 1465 | Retail Customers | Walcott, Robert | | X |
| 1466 | Retail Customers | Walker, Raphael | | X |
| 1467 | Retail Customers | Walkey, Thomas | | X |
| 1468 | Retail Customers | Wang, Feiting | | X |
| 1469 | Retail Customers | Wang, Yidi | | X |
| 1470 | Retail Customers | Wangler, Mason Christian | | X |
| 1471 | Retail Customers | Watkins, Matthew | | X |
| 1472 | Retail Customers | Wątor, Wojciech | | X |
| 1473 | Retail Customers | Weimert, Bradley Thomas | | X |
| 1474 | Retail Customers | Weiss, Allen Robert | | X |
| 1475 | Retail Customers | Weiss, Christoph | | X |
| 1476 | Retail Customers | Welby, Caitlin | | X |
| 1477 | Retail Customers | Wells, Jason | | X |
| 1478 | Retail Customers | Wendling, Vincent | | X |
| 1479 | Retail Customers | West, Darren | | X |
| 1480 | Retail Customers | Westhof, Tonia | | X |
| 1481 | Retail Customers | Wexler, Kevin Jay | | X |
| 1482 | Retail Customers | Wheeless, Daniel | | X |
| 1483 | Retail Customers | White, Brendan Battaglia | | X |
| 1484 | Retail Customers | White, David | | X |
| 1485 | Retail Customers | Whittlinger, Ryan | | X |
| 1486 | Retail Customers | Wielzen, Fons | | X |
| 1487 | Retail Customers | Wierman, Duncan Craig | | X |
| 1488 | Retail Customers | Wierzbowski, Radoslaw Lech | | X |
| 1489 | Retail Customers | Wilcox, Waylon J. | | X |
| 1490 | Retail Customers | Williams, Brendan | | X |
| 1491 | Retail Customers | Williams, Charles | | X |
| 1492 | Retail Customers | Williams, Charles W. | | X |
| 1493 | Retail Customers | Williams, Paul | | X |
| 1494 | Retail Customers | Williams, Robert, II | | X |
| 1495 | Retail Customers | Williamson, Hiram | | X |
| 1496 | Retail Customers | Wiseman, Timothy | | X |
| 1497 | Retail Customers | Witkin, Daniel | | X |
| 1498 | Retail Customers | Wolf, Cody Lee | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1499 | Retail Customers | Wolstenholme, MacGregor | | X |
| 1500 | Retail Customers | Woltzenlogel Paleo, Bruno | | X |
| 1501 | Retail Customers | Wong, Eric Flores | | X |
| 1502 | Retail Customers | Wong, Jason | | X |
| 1503 | Retail Customers | Woo, Ken | | X |
| 1504 | Retail Customers | Woodward, Laurie | | X |
| 1505 | Retail Customers | Woolsey, Jonathan | | X |
| 1506 | Retail Customers | Wright, Christopher | | X |
| 1507 | Retail Customers | Wright, Timothy | | X |
| 1508 | Retail Customers | Wu, Xinhan | | X |
| 1509 | Retail Customers | Xiao, Ling | | X |
| 1510 | Retail Customers | Yang, Yen-Huoy | | X |
| 1511 | Retail Customers | Yao, Mark | | X |
| 1512 | Retail Customers | Yarwood, Darren G | | X |
| 1513 | Retail Customers | Yates-Walker, Josh Oisin | | X |
| 1514 | Retail Customers | Yeung, Tak H. | | X |
| 1515 | Retail Customers | Yoon , Tera Sahyun | | X |
| 1516 | Retail Customers | Yoon, Andrew | | X |
| 1517 | Retail Customers | Young, John Martin | | X |
| 1518 | Retail Customers | Young, Rudolph Paul | | X |
| 1519 | Retail Customers | Young, Timothy Shannon | | X |
| 1520 | Retail Customers | Younts, David | | X |
| 1521 | Retail Customers | Yu, Byung Deok | | X |
| 1522 | Retail Customers | Yu, Jenny | | X |
| 1523 | Retail Customers | Zaharieva, Katerina | | X |
| 1524 | Retail Customers | Zahra, Carmelo | | X |
| 1525 | Retail Customers | Zarchi, Meir | | X |
| 1526 | Retail Customers | Zhang, Kevin | | X |
| 1527 | Retail Customers | Zhang, Qinghua | | X |
| 1528 | Retail Customers | Zhang, Xi | X | |
| 1529 | Retail Customers | Zhao, Tianqi | | X |
| 1530 | Retail Customers | Zhong, Jimmy | | X |
| 1531 | Retail Customers | Zhou, William | | X |
| 1532 | Retail Customers | Ziglu Ltd. | X | |
| 1533 | Retail Customers | Zijlstra, Fayce | | X |
| 1534 | Retail Customers | Zimmermann, Oliver | | X |
| 1535 | Retail Customers | Zipmex Asia Pte. Ltd. | | X |
| 1536 | Retail Customers | Zwick, Matthew James | | X |
| 1537 | Retail Customers | Zygas, Viktoras | | X |
| 1538 | Taxing Authority/Governmental/Regulatory Agencies | Alabama, State of, Securities Commission | | X |
| 1539 | Taxing Authority/Governmental/Regulatory Agencies | Alaska Division of Banking & Securities | | X |
| 1540 | Taxing Authority/Governmental/Regulatory Agencies | Arkansas Securities Department | | X |
| 1541 | Taxing Authority/Governmental/Regulatory Agencies | Autorite Des Marches Financiers (AMF) - Canadian Securities Administrators | X | |
| 1542 | Taxing Authority/Governmental/Regulatory Agencies | California Department of Financial Protection and Innovation | | X |
| 1543 | Taxing Authority/Governmental/Regulatory Agencies | Commodity Futures Trading Commission | | X |
| 1544 | Taxing Authority/Governmental/Regulatory Agencies | Commonwealth of Massachusetts Office of The Attorney General | | X |
| 1545 | Taxing Authority/Governmental/Regulatory Agencies | Commonwealth of Massachusetts Securities Division | | X |
| 1546 | Taxing Authority/Governmental/Regulatory Agencies | District of Columbia Department of Insurance, Securities and Banking | | X |
| 1547 | Taxing Authority/Governmental/Regulatory Agencies | Financial and Consumer Affairs Authority | | X |
| 1548 | Taxing Authority/Governmental/Regulatory Agencies | Financial Conduct Authority | X | |
| 1549 | Taxing Authority/Governmental/Regulatory Agencies | Georgia Office of Secretary of State Securities & Charities Division | | X |
| 1550 | Taxing Authority/Governmental/Regulatory Agencies | Gibraltar Financial Services Commission | | X |
| 1551 | Taxing Authority/Governmental/Regulatory Agencies | Hawaii Department of Commerce and Consumer Affairs | | X |
| 1552 | Taxing Authority/Governmental/Regulatory Agencies | Illinois Securities Department | | X |
| 1553 | Taxing Authority/Governmental/Regulatory Agencies | Kentucky, Commonwealth of, Department of Financial Institutions | | X |
| 1554 | Taxing Authority/Governmental/Regulatory Agencies | Minnesota Attorney General Office | | X |
| 1555 | Taxing Authority/Governmental/Regulatory Agencies | Minnesota Department of Commerce | | X |
| 1556 | Taxing Authority/Governmental/Regulatory Agencies | Mississippi Secretary of State Office | | X |
| 1557 | Taxing Authority/Governmental/Regulatory Agencies | New Hampshire Bureau of Securities Regulation | | X |
| 1558 | Taxing Authority/Governmental/Regulatory Agencies | New Jersey Office of The Attorney General | | X |
| 1559 | Taxing Authority/Governmental/Regulatory Agencies | New Jersey, State of, Bureau of Securities | | X |
| 1560 | Taxing Authority/Governmental/Regulatory Agencies | North Carolina Department of The Secretary of State | | X |
| 1561 | Taxing Authority/Governmental/Regulatory Agencies | Office of The Attorney General of Missouri | | X |
| 1562 | Taxing Authority/Governmental/Regulatory Agencies | Office of The Montana State Auditor | | X |
| 1563 | Taxing Authority/Governmental/Regulatory Agencies | Office The Attorney General of West Virginia | | X |
| 1564 | Taxing Authority/Governmental/Regulatory Agencies | Pennsylvania Bureau of Securities Compliance and Examinations | | X |
| 1565 | Taxing Authority/Governmental/Regulatory Agencies | Pennsylvania Department of Banking and Securities | | X |
| 1566 | Taxing Authority/Governmental/Regulatory Agencies | South Carolina Office of The Attorney General | | X |
| 1567 | Taxing Authority/Governmental/Regulatory Agencies | South Dakota Division of Insurance Securities Regulation | | X |
| 1568 | Taxing Authority/Governmental/Regulatory Agencies | State of California Department of Justice Public Inquiry Unit | | X |
| 1569 | Taxing Authority/Governmental/Regulatory Agencies | State of Idaho Department of Finance | | X |
| 1570 | Taxing Authority/Governmental/Regulatory Agencies | State of New York Office of The Attorney General, Division of Economic Justice | | X |
| 1571 | Taxing Authority/Governmental/Regulatory Agencies | State of Oklahoma Department of Securities | | X |

Reply Declaration of Dennis Jenkins Black

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1572 | Taxing Authority/Governmental/Regulatory Agencies | Tennessee Department of Commerce and Insurance Financial Services Investigation Unit | | X |
| 1573 | Taxing Authority/Governmental/Regulatory Agencies | Texas, State of, Securities Board | | X |
| 1574 | Taxing Authority/Governmental/Regulatory Agencies | The Ontario Securities Commission (The OSC) | | X |
| 1575 | Taxing Authority/Governmental/Regulatory Agencies | United States, Government of the, Department of Justice | X | |
| 1576 | Taxing Authority/Governmental/Regulatory Agencies | United States, Government of the, Securities & Exchange Commission | | X |
| 1577 | Taxing Authority/Governmental/Regulatory Agencies | Washington, State of, Division of Securities | | X |
| 1578 | Top 50 Unsecured Creditors | Alameda Research Ltd. | | X |
| 1579 | Top 50 Unsecured Creditors | AltCoinTrader Pty. Ltd. | | X |
| 1580 | Top 50 Unsecured Creditors | B2C2 Ltd. | X | |
| 1581 | Top 50 Unsecured Creditors | Baker, Dominic John | | X |
| 1582 | Top 50 Unsecured Creditors | CAEN Group LLC, The | | X |
| 1583 | Top 50 Unsecured Creditors | Chang, Rickie | | X |
| 1584 | Top 50 Unsecured Creditors | Covario AG | X | |
| 1585 | Top 50 Unsecured Creditors | Crypto10 SP - Segregated Portfolio of Invictus Capital Financial Technologies SPC | | X |
| 1586 | Top 50 Unsecured Creditors | Danz, James William | | X |
| 1587 | Top 50 Unsecured Creditors | Deferred 1031 Exchange LLC | | X |
| 1588 | Top 50 Unsecured Creditors | Dekker, Carlos C. | | X |
| 1589 | Top 50 Unsecured Creditors | Dentzel, Zaryn | | X |
| 1590 | Top 50 Unsecured Creditors | DiFiore, Thomas Albert | | X |
| 1591 | Top 50 Unsecured Creditors | Dixon, Simon | | X |
| 1592 | Top 50 Unsecured Creditors | Downs, Bradley James | | X |
| 1593 | Top 50 Unsecured Creditors | Farr, Nicholas | | X |
| 1594 | Top 50 Unsecured Creditors | Feintisch, Adam Michael | | X |
| 1595 | Top 50 Unsecured Creditors | Fite, Jacob Benjamin | | X |
| 1596 | Top 50 Unsecured Creditors | ICB Solutions | | X |
| 1597 | Top 50 Unsecured Creditors | Invictus Capital Financial Technologies SPC | | X |
| 1598 | Top 50 Unsecured Creditors | Jeffries, David | | X |
| 1599 | Top 50 Unsecured Creditors | Kibler-Melby, Cort | | X |
| 1600 | Top 50 Unsecured Creditors | Kieser, Gregory Allen | | X |
| 1601 | Top 50 Unsecured Creditors | Kohji, Hirokado | | X |
| 1602 | Top 50 Unsecured Creditors | Lylloff, Sander | | X |
| 1603 | Top 50 Unsecured Creditors | McClintock, Michael | | X |
| 1604 | Top 50 Unsecured Creditors | McMullen, Brian | | X |
| 1605 | Top 50 Unsecured Creditors | Murphy, Thomas Patrick, Jr. | | X |
| 1606 | Top 50 Unsecured Creditors | Park, Seong | | X |
| 1607 | Top 50 Unsecured Creditors | Perry, Brett Alan | | X |
| 1608 | Top 50 Unsecured Creditors | Peterson, Stephen Paul | | X |
| 1609 | Top 50 Unsecured Creditors | Pharos Fund SP | X | |
| 1610 | Top 50 Unsecured Creditors | Pharos USD Fund SP | | X |
| 1611 | Top 50 Unsecured Creditors | Raj, Rafael | | X |
| 1612 | Top 50 Unsecured Creditors | Saenz, Jesus Armando | | X |
| 1613 | Top 50 Unsecured Creditors | Singh, Balbahadur | | X |
| 1614 | Top 50 Unsecured Creditors | Stewart, Russell Garth | | X |
| 1615 | Top 50 Unsecured Creditors | Strobilus LLC | X | |
| 1616 | Top 50 Unsecured Creditors | Taiaroa, Keri David | | X |
| 1617 | Top 50 Unsecured Creditors | Tan, Richard | | X |
| 1618 | Top 50 Unsecured Creditors | Tan, Yan | | X |
| 1619 | Top 50 Unsecured Creditors | Trussell, Mark | | X |
| 1620 | Top 50 Unsecured Creditors | Tychalski, George | | X |
| 1621 | Top 50 Unsecured Creditors | Van, Loc Truyen | | X |
| 1622 | Top 50 Unsecured Creditors | Villinger, Christopher | | X |
| 1623 | Top 50 Unsecured Creditors | Vincent, Carolyn Margaret | | X |
| 1624 | Top 50 Unsecured Creditors | Wexler, Kevin Jay | | X |
| 1625 | Top 50 Unsecured Creditors | Wilcox, Waylon J. | | X |
| 1626 | Top 50 Unsecured Creditors | Wolstenholme, MacGregor | | X |
| 1627 | Top 50 Unsecured Creditors | Wright, Christopher | | X |
| 1628 | Top 50 Unsecured Creditors | Yates-Walker, Josh Oisin | | X |
| 1629 | Top 50 Unsecured Creditors | Yoon, Andrew | | X |
| 1630 | Top 50 Unsecured Creditors | Ziglu Ltd | X | |
| 1631 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Abriano, Victor | | X |
| 1632 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Arbeit, Susan | | X |
| 1633 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Beckerman, Lisa G. | | X |
| 1634 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Bruh, Mark | | X |
| 1635 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Chapman, Shelley C. | | X |
| 1636 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Cornell, Shara | | X |
| 1637 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Drain, Robert D. | | X |
| 1638 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Gannone, James | | X |
| 1639 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Garrity, James L., Jr. | | X |
| 1640 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Glenn, Martin | | X |
| 1641 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Harrington, William K. | | X |
| 1642 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Higgins, Benjamin J. | | X |
| 1643 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Higgins, David S. | | X |
| 1644 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Jones, David S. | X | |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1645 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Joseph, Nadkarni | | X |
| 1646 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Lane, Sean H. | | X |
| 1647 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Masumoto, Brian S. | | X |
| 1648 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Mendoza, Ercilia A. | | X |
| 1649 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Moroney, Mary V. | | X |
| 1650 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Morris, Cecelia G. | | X |
| 1651 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Morrissey, Richard C. | | X |
| 1652 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Ogunleye, Alaba | | X |
| 1653 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Riffkin, Linda A. | | X |
| 1654 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Rodriguez, Ilusion | | X |
| 1655 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Schwartz, Andrea B. | | X |
| 1656 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Schwartzberg, Paul K. | | X |
| 1657 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Scott, Shannon | | X |
| 1658 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Sharp, Sylvester | | X |
| 1659 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Tiantian, Tara | | X |
| 1660 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Velez-Rivera, Andy | | X |
| 1661 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Vescovacci, Madeleine | | X |
| 1662 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Wells, Annie | | X |
| 1663 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Wiles, Michael E. | | X |
| 1664 | U.S. Trustee Personnel, Judges, and Court Contacts for the SDNY | Zipes, Greg M. | | X |
| 1665 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Allen, Joseph | | X |
| 1666 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Anderson, Deanna | | X |
| 1667 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Barajas, Andres | | X |
| 1668 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Black, Christine | | X |
| 1669 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Leonhard, Alicia | | X |
| 1670 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Mastando III, John P. | | X |
| 1671 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Penpraze, Lisa | | X |
| 1672 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Schmitt, Kathleen | | X |
| 1673 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Slemmer, Daniel | | X |
| 1674 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Van Baalen, Guy A. | | X |
| 1675 | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York | Ziesing, "Frances" Annie | | X |
| 1676 | UCC Members | Andrew Yoon | | X |
| 1677 | UCC Members | Coco, Christopher | | X |
| 1678 | UCC Members | Keith Noyes | | X |
| 1679 | UCC Members | Robinson, Mark | X | |
| 1680 | UCC Members | Scott Duffy | | X |
| 1681 | UCC Members | Thomas DiFiore | | X |
| 1682 | UCC Members | Warren, Caroline | | X |
| 1683 | UCC Professionals | Elementus | | X |
| 1684 | UCC Professionals | Kroll Restructuring Administration LLC | | X |
| 1685 | UCC Professionals | M-III Partners, LLC | | X |
| 1686 | UCC Professionals | Perella Weinberg Partners | X | |
| 1687 | Utilities | AT&T Inc. | X | |
| 1688 | Utilities | Comcast Corp. | X | |
| 1689 | Utilities | Cox Business Services LLC | | X |
| 1690 | Utilities | EE Ltd. | X | |
| 1691 | Utilities | Giffgaff Ltd. | X | |
| 1692 | Utilities | Google Fiber Inc. | | X |
| 1693 | Utilities | Hypercore Networks Inc. | | X |
| 1694 | Utilities | Lightpath Fiber Enterprise Business Unit of Altice USA Inc. | | X |
| 1695 | Utilities | Lumen Technologies Inc. | X | |
| 1696 | Utilities | RingCentral Inc. | X | |
| 1697 | Utilities | Spectrum Enterprises Inc. | | X |
| 1698 | Utilities | Verizon Wireless Telecom Inc. | X | |
| 1699 | Vendors | 1-800 Flowers.com Inc. | | X |
| 1700 | Vendors | 1-800-GOT-JUNK? LLC | | X |
| 1701 | Vendors | 192 Business Experian | | X |
| 1702 | Vendors | 192 Business Ltd. | | X |
| 1703 | Vendors | 221B Partners | | X |
| 1704 | Vendors | 3 Verulam Buildings Barristers | | X |
| 1705 | Vendors | 4imprint Group plc | X | |
| 1706 | Vendors | 9Beach Latin American Restaurant LLC | | X |
| 1707 | Vendors | A. Georgiou & Co. LLC | | X |
| 1708 | Vendors | A1 Express Ltd. | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1709 | Vendors | A23 Boutique Hotel | | X |
| 1710 | Vendors | A24 Ltd. | | X |
| 1711 | Vendors | A2E | | X |
| 1712 | Vendors | Abacus | X | |
| 1713 | Vendors | Abacus Labs Inc. | | X |
| 1714 | Vendors | ABF Freight System Inc. | | X |
| 1715 | Vendors | Accretive Capital LLC | X | |
| 1716 | Vendors | Acrion Group Inc. | | X |
| 1717 | Vendors | Ada Support Inc. | X | |
| 1718 | Vendors | Adams, Jeffrey | | X |
| 1719 | Vendors | Adobe Inc. | X | |
| 1720 | Vendors | ADTRAV Corp. | | X |
| 1721 | Vendors | Advogados, Almeida | | X |
| 1722 | Vendors | Agile Freaks SRL-D | | X |
| 1723 | Vendors | AgileEngine LLC | | X |
| 1724 | Vendors | AGS Exposition Services Inc. | | X |
| 1725 | Vendors | Ahrefs Pte. Ltd. | | X |
| 1726 | Vendors | Ai Fiori | | X |
| 1727 | Vendors | Ainsworth Inc. | X | |
| 1728 | Vendors | Air Essentials Inc. | | X |
| 1729 | Vendors | Air France-KLM SA | X | |
| 1730 | Vendors | Air Serbia | X | |
| 1731 | Vendors | Airspeed18 Ltd. | | X |
| 1732 | Vendors | Akerman LLP | | X |
| 1733 | Vendors | Akin Gump Strauss Hauer & Feld LLP | X | |
| 1734 | Vendors | Alaric Flower Design | | X |
| 1735 | Vendors | Alaska Air Group Inc. | X | |
| 1736 | Vendors | Alba Invest Doo | | X |
| 1737 | Vendors | ALCHEMIQ Catering | | X |
| 1738 | Vendors | Alex Fasulo LLC | | X |
| 1739 | Vendors | Algo Adtech Ltd. | | X |
| 1740 | Vendors | AlgoExpert | | X |
| 1741 | Vendors | Alitalia Compagnia Aerea Italiana SpA | X | |
| 1742 | Vendors | AlixPartners LLP | X | |
| 1743 | Vendors | Allianz Global Assistance SAS | X | |
| 1744 | Vendors | Aloft Hotel Management Inc. | | X |
| 1745 | Vendors | ALPHA Events Ltd. | | X |
| 1746 | Vendors | AlphaGraphics Inc. | | X |
| 1747 | Vendors | Amazon.com Inc. | X | |
| 1748 | Vendors | American Airlines Group Inc. | X | |
| 1749 | Vendors | American Family Connect Property & Casualty Insurance Co | | X |
| 1750 | Vendors | American Lock & Key Inc. | | X |
| 1751 | Vendors | Amon Card Ltd. | | X |
| 1752 | Vendors | Amon OU | | X |
| 1753 | Vendors | Amplicy Ltd. | X | |
| 1754 | Vendors | Amsalem Tours & Travel Ltd. | | X |
| 1755 | Vendors | Andersen LLP | X | |
| 1756 | Vendors | Andreou, Foteini | | X |
| 1757 | Vendors | Any.Do Ltd. | | X |
| 1758 | Vendors | Appbot | | X |
| 1759 | Vendors | Apple Search Ads | | X |
| 1760 | Vendors | Apple Search Advertisements | | X |
| 1761 | Vendors | Apple Store | X | |
| 1762 | Vendors | AppsFlyer Inc. | X | |
| 1763 | Vendors | Aqua Kyoto Ltd. | | X |
| 1764 | Vendors | Arce, John | | X |
| 1765 | Vendors | Arlo SoHo Hotel | | X |
| 1766 | Vendors | Arocon Consulting LLC | | X |
| 1767 | Vendors | ArtDesigna | | X |
| 1768 | Vendors | Ashby & Geddes | | X |
| 1769 | Vendors | Aston Limo Service | | X |
| 1770 | Vendors | AT&T Inc. | X | |
| 1771 | Vendors | Athlonutrition S.S | | X |
| 1772 | Vendors | Atlassian Corp. plc | X | |
| 1773 | Vendors | Atom Exterminators Ltd. | | X |
| 1774 | Vendors | Auger, Matthew | | X |
| 1775 | Vendors | August LLC | | X |
| 1776 | Vendors | Auth0 Inc. | | X |
| 1777 | Vendors | AutomationEdge Technologies Inc. | X | |
| 1778 | Vendors | Avaya Inc. | X | |
| 1779 | Vendors | AVL Services LLC | X | |
| 1780 | Vendors | Avraham, Daniel | | X |
| 1781 | Vendors | Azmi & Associates | | X |
| 1782 | Vendors | B&C Camera | | X |
| 1783 | Vendors | B&H Foto & Electronic Corp. | | X |

Reply of Connected Parties Attack

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 1784 | Vendors | BambooHR LLC | | X |
| 1785 | Vendors | Bamboozle Café | | X |
| 1786 | Vendors | BCAS Malta Ltd. | | X |
| 1787 | Vendors | BCL Search Inc. | | X |
| 1788 | Vendors | Becerril, Jose Maria Caballero | | X |
| 1789 | Vendors | Begg, Yusuf | | X |
| 1790 | Vendors | Bellwood Global Transportation | | X |
| 1791 | Vendors | Benjamin, The | X | |
| 1792 | Vendors | Best Buy Co. Inc. | X | |
| 1793 | Vendors | Best Name Badges | | X |
| 1794 | Vendors | Big Cartel LLC | | X |
| 1795 | Vendors | Bill.com Holdings Inc. | X | |
| 1796 | Vendors | BIND Infosec Ltd. | | X |
| 1797 | Vendors | Bionic Electronics HT Ltd. | | X |
| 1798 | Vendors | BirchamsArt | | X |
| 1799 | Vendors | BitBoy Crypto | | X |
| 1800 | Vendors | Bitfinex | | X |
| 1801 | Vendors | Bitfly Ltd. | | X |
| 1802 | Vendors | Bitfo Inc. | | X |
| 1803 | Vendors | BitGo Inc. | | X |
| 1804 | Vendors | Bitmain Technologies Ltd. | | X |
| 1805 | Vendors | Bittrex Global GmbH | | X |
| 1806 | Vendors | Bitwave | X | |
| 1807 | Vendors | Blacklane GmbH | X | |
| 1808 | Vendors | Blackpeak Inc. | | X |
| 1809 | Vendors | Blake & Co. | | X |
| 1810 | Vendors | Block Solutions Sdn Bhd | X | |
| 1811 | Vendors | Blockchair Ltd. | | X |
| 1812 | Vendors | Blockdaemon Ltd. | | X |
| 1813 | Vendors | BlockWorks Group LLC | | X |
| 1814 | Vendors | Bloomberg Finance LP | X | |
| 1815 | Vendors | Bloomberg Industry Group | X | |
| 1816 | Vendors | Blue Edge Bulgaria EOOD | | X |
| 1817 | Vendors | Blue Moon Consultants International Ltd. | | X |
| 1818 | Vendors | Blue Rock Search LLC | | X |
| 1819 | Vendors | BlueVoyant Israel Ltd. | X | |
| 1820 | Vendors | Board Game Designs | | X |
| 1821 | Vendors | Bob Group Ltd. | X | |
| 1822 | Vendors | Bolt Food | | X |
| 1823 | Vendors | Bookyourcovidtest.com | | X |
| 1824 | Vendors | Boston Coach Corp. | X | |
| 1825 | Vendors | Bowell, Reuben | | X |
| 1826 | Vendors | Bradley, Marc | | X |
| 1827 | Vendors | Braun, David | | X |
| 1828 | Vendors | Brave Software International | | X |
| 1829 | Vendors | Brazen Head Irish Pub | | X |
| 1830 | Vendors | Brendan Gunn Consulting Group | | X |
| 1831 | Vendors | British Airways plc | X | |
| 1832 | Vendors | Brooklyn's Down South | | X |
| 1833 | Vendors | Brown, Charlotte | | X |
| 1834 | Vendors | Brown, Oliver John | | X |
| 1835 | Vendors | BrowserStack Inc. | X | |
| 1836 | Vendors | BTC 2022 Conference | | X |
| 1837 | Vendors | BTC Media LLC | | X |
| 1838 | Vendors | Budget Rent A Car Ltd. | X | |
| 1839 | Vendors | Bulwerks LLC | | X |
| 1840 | Vendors | Bulwerks Security | | X |
| 1841 | Vendors | Burns, Matthew | | X |
| 1842 | Vendors | Bustos, Victor Pla | | X |
| 1843 | Vendors | Buzzsprout | | X |
| 1844 | Vendors | C Street Advisory Group | | X |
| 1845 | Vendors | Cablevision Lightpath LLC | | X |
| 1846 | Vendors | Calendly LLC | | X |
| 1847 | Vendors | California, State of, Department of Financial Protection and Innovation | | X |
| 1848 | Vendors | Callaghan, Simon | | X |
| 1849 | Vendors | CAN Mouzouras Electrical Contractors | | X |
| 1850 | Vendors | Canva Inc. | X | |
| 1851 | Vendors | Caola Co. Inc. | | X |
| 1852 | Vendors | Capitol Hill Hotel | | X |
| 1853 | Vendors | Caplinked Inc. | | X |
| 1854 | Vendors | Carey Executive Transport | | X |
| 1855 | Vendors | Carithers Flowers | | X |
| 1856 | Vendors | Carmo Cos. | | X |
| 1857 | Vendors | Carta Inc. | X | |
| 1858 | Vendors | Caspian Holdings Ltd. | | X |

Redline of amended for attack

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 1859 | Vendors | Castillo, Diana | | X |
| 1860 | Vendors | CAYO Rafał Molak | | X |
| 1861 | Vendors | CDPQ US Inc. | | X |
| 1862 | Vendors | CDW Corp. | X | |
| 1863 | Vendors | Chain of Events SAS | | X |
| 1864 | Vendors | Chainalysis Inc. | X | |
| 1865 | Vendors | Chamber of Digital Commerce, The | | X |
| 1866 | Vendors | Chan, Kalvin | | X |
| 1867 | Vendors | Chang, Yung-Tang | | X |
| 1868 | Vendors | Charalambous, Alexia | | X |
| 1869 | Vendors | Charmant, Audrey | | X |
| 1870 | Vendors | Chick-fil-A Inc. | X | |
| 1871 | Vendors | Chief | | X |
| 1872 | Vendors | Ching, Lam Wai | | X |
| 1873 | Vendors | Christodoulou, Antonis | | X |
| 1874 | Vendors | Christodoulou, Christodoulos | | X |
| 1875 | Vendors | Christou, Renos | | X |
| 1876 | Vendors | Ciochina, Ionut Lucian | | X |
| 1877 | Vendors | Cision US Inc. | X | |
| 1878 | Vendors | CitizenM Operations Holding BV | | X |
| 1879 | Vendors | Cleverbridge AG | X | |
| 1880 | Vendors | Click and Play - Conteudos Digitais Lda | | X |
| 1881 | Vendors | ClubCorp Holdings Inc. | X | |
| 1882 | Vendors | CMS CMNO LLP | | X |
| 1883 | Vendors | CoderPad Inc. | | X |
| 1884 | Vendors | Coffee Distributing Corp. | | X |
| 1885 | Vendors | Cogency Global Inc. | X | |
| 1886 | Vendors | CoinDesk Inc. | X | |
| 1887 | Vendors | Coinfirm Ltd. | X | |
| 1888 | Vendors | Coinlend GmbH | | X |
| 1889 | Vendors | CoinMarketCap OpCo LLC | | X |
| 1890 | Vendors | CoinRoutes Inc. | | X |
| 1891 | Vendors | Coleman, Bradley K | | X |
| 1892 | Vendors | College Investor LLC, The | | X |
| 1893 | Vendors | Comcast Corp. | X | |
| 1894 | Vendors | Compliance Risk Concepts LLC | | X |
| 1895 | Vendors | Concorde Hotel Ltd., The | X | |
| 1896 | Vendors | Consensus Sales Inc. | | X |
| 1897 | Vendors | ConsenSys AG | | X |
| 1898 | Vendors | Constantinou, Elpida | | X |
| 1899 | Vendors | Consumer Technology Association | | X |
| 1900 | Vendors | Contentful Inc. | | X |
| 1901 | Vendors | Cooper Global Ltd. | X | |
| 1902 | Vendors | Coppell FC | | X |
| 1903 | Vendors | Core Club, The | X | |
| 1904 | Vendors | Core Scientific Inc. | X | |
| 1905 | Vendors | Corsair Gaming Inc. | | X |
| 1906 | Vendors | Costco Wholesale Corp. | X | |
| 1907 | Vendors | Costica, Tudor | | X |
| 1908 | Vendors | Coursera Inc. | X | |
| 1909 | Vendors | Cox Business Services LLC | | X |
| 1910 | Vendors | Creative Video Productions Ltd. | | X |
| 1911 | Vendors | Creditor Group Corp. | | X |
| 1912 | Vendors | Creel, Garcia-Cuellar, Aiza y Enriquez SC | | X |
| 1913 | Vendors | Crelin Peck Consulting LLC | | X |
| 1914 | Vendors | CRP Security Systems Ltd. | | X |
| 1915 | Vendors | Crypto Fiend | | X |
| 1916 | Vendors | Crypto Love | | X |
| 1917 | Vendors | CryptoDailyYT Ltd. | | X |
| 1918 | Vendors | CryptoRecruit Pty. Ltd. | | X |
| 1919 | Vendors | CryptoWendyO | | X |
| 1920 | Vendors | CSC | X | |
| 1921 | Vendors | CT Corp. | X | |
| 1922 | Vendors | C-Tech Constandinos Telecommunication Ltd. Co. | | X |
| 1923 | Vendors | Cucio Guisordi, Andreia | | X |
| 1924 | Vendors | Curb Mobility LLC | | X |
| 1925 | Vendors | CVS Pharmacy Inc. | | X |
| 1926 | Vendors | Cyesec Ltd. | X | |
| 1927 | Vendors | CYTA Ltd. | X | |
| 1928 | Vendors | D'Albert, Matthew | | X |
| 1929 | Vendors | Dalvey & Co. | | X |
| 1930 | Vendors | Dan Hotels Ltd. | X | |
| 1931 | Vendors | Daniel J. Edelman Inc. | | X |
| 1932 | Vendors | Data Dash Inc. | | X |
| 1933 | Vendors | Data4U Ltd. | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1934 | Vendors | Datapoint Surveying & Mapping | | X |
| 1935 | Vendors | David Meltzer Enterprises | | X |
| 1936 | Vendors | David Rabbi Law Firm | X | |
| 1937 | Vendors | Dawson, Meryl | | X |
| 1938 | Vendors | DBeaver | | X |
| 1939 | Vendors | Dealex Moving LLC | | X |
| 1940 | Vendors | Dearson Levi & Pantz PLLC | | X |
| 1941 | Vendors | Debak, Antun | | X |
| 1942 | Vendors | Decentral Media Inc. | | X |
| 1943 | Vendors | DeepL SE | | X |
| 1944 | Vendors | Del Friscos Grille | | X |
| 1945 | Vendors | Delaware, State of Division of Corporations | | X |
| 1946 | Vendors | Dell | X | |
| 1947 | Vendors | Deloitte Tax LLP | | X |
| 1948 | Vendors | Delta Air Lines Inc. | X | |
| 1949 | Vendors | Demetriou, Adonis | | X |
| 1950 | Vendors | Derriere's Gentleman's Club | | X |
| 1951 | Vendors | Desk doo | | X |
| 1952 | Vendors | Dezenhall Resources Ltd. | | X |
| 1953 | Vendors | DHL | X | |
| 1954 | Vendors | Dias, Eric | | X |
| 1955 | Vendors | Digital Asset News LLC | | X |
| 1956 | Vendors | Dinwiddie, Spencer | | X |
| 1957 | Vendors | Diplomat Resort, The | | X |
| 1958 | Vendors | DNSFilter Inc. | | X |
| 1959 | Vendors | Do Not Sit On The Furniture | | X |
| 1960 | Vendors | Docker Inc. | | X |
| 1961 | Vendors | DoiT International | X | |
| 1962 | Vendors | DoiT International UK & I Ltd. | | X |
| 1963 | Vendors | DoorDash Inc. | X | |
| 1964 | Vendors | Dow Jones & Co. Inc. | X | |
| 1965 | Vendors | Dragos DLT Consulting Ltd. | | X |
| 1966 | Vendors | DRB Hosting Ltd. (Deribit) | | X |
| 1967 | Vendors | Dream Hotels | | X |
| 1968 | Vendors | Dreifuss, Itai | | X |
| 1969 | Vendors | Dreyfus, Fernando | | X |
| 1970 | Vendors | Dribbble Holdings Ltd. | | X |
| 1971 | Vendors | DSV AS | X | |
| 1972 | Vendors | Dune Analytics AS | | X |
| 1973 | Vendors | Dynasty Partners Ltd. | | X |
| 1974 | Vendors | E.R. Bradleys Saloon | | X |
| 1975 | Vendors | Eagle County Regional Airport | | X |
| 1976 | Vendors | Ecrime Management Strategies Inc. | | X |
| 1977 | Vendors | Eddison, Mark | | X |
| 1978 | Vendors | Edgewater Advisory LLC | | X |
| 1979 | Vendors | EE Ltd. | X | |
| 1980 | Vendors | Eede, Jelle Van den | | X |
| 1981 | Vendors | Egon Zehnder International Inc. | X | |
| 1982 | Vendors | El Al Israel Airlines Ltd. | X | |
| 1983 | Vendors | Elements Massage Ltd. | | X |
| 1984 | Vendors | Elite Marketing Group LLC | | X |
| 1985 | Vendors | Elmwood Design Ltd. | | X |
| 1986 | Vendors | Emanuel Clodeanu Consultancy SRL | | X |
| 1987 | Vendors | Embassy Suites Hotels | | X |
| 1988 | Vendors | Emirates Group, The | X | |
| 1989 | Vendors | Emmanuel, Alaina | | X |
| 1990 | Vendors | Enginuity on Call | | X |
| 1991 | Vendors | EnjoyMaloy Trade Party | | X |
| 1992 | Vendors | Enkur, Gokhan | | X |
| 1993 | Vendors | Enlightium Ltd. | | X |
| 1994 | Vendors | ENSafrica | | X |
| 1995 | Vendors | Enterprise Digital Resources Ltd. | | X |
| 1996 | Vendors | Enterprise Rent-A-Car Co. Inc. | X | |
| 1997 | Vendors | Epitome Capital Management Pty. Ltd. | | X |
| 1998 | Vendors | Espinhal, Luis Filipe | | X |
| 1999 | Vendors | Estate of Edward W. Price, Jr. | | X |
| 2000 | Vendors | Estiatorio, Avra Madison | | X |
| 2001 | Vendors | Etsy Inc. | X | |
| 2002 | Vendors | Evaggelou, George | | X |
| 2003 | Vendors | Eversheds Sutherland | X | |
| 2004 | Vendors | EXDO Events Center | | X |
| 2005 | Vendors | Expedia Group Inc. | X | |
| 2006 | Vendors | Expo Group Inc, The | X | |
| 2007 | Vendors | Exquisite Sounds Entertainment | | X |
| 2008 | Vendors | ezCater Inc. | X | |

Reply of Zimmerman Reback

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2009 | Vendors | Facebook | X | |
| 2010 | Vendors | Fairmont Austin Lodging | | X |
| 2011 | Vendors | FalbaSoft Cezary Falba | | X |
| 2012 | Vendors | Falkensteiner Hotels & Residences | | X |
| 2013 | Vendors | Fatal Ltd. | | X |
| 2014 | Vendors | FatCat Coders | | X |
| 2015 | Vendors | Fattal Hotels Ltd. | X | |
| 2016 | Vendors | FedEx Corp. | X | |
| 2017 | Vendors | Female Quotient LLC, The | | X |
| 2018 | Vendors | Fibermode Ltd. | | X |
| 2019 | Vendors | Filmsupply LLC | | X |
| 2020 | Vendors | Financial Times Group Ltd. | X | |
| 2021 | Vendors | FiNext Conference | | X |
| 2022 | Vendors | FingerprintJS Inc. | | X |
| 2023 | Vendors | Finnegan Henderson Farabow Garrett Dunner LLP | | X |
| 2024 | Vendors | Fintech, Lendit | | X |
| 2025 | Vendors | First Class Vending Inc. | | X |
| 2026 | Vendors | Fixer.io | | X |
| 2027 | Vendors | Flixel Inc. | | X |
| 2028 | Vendors | Flonights Ltd. | | X |
| 2029 | Vendors | Florist, Lovin | | X |
| 2030 | Vendors | Flowroute LLC | | X |
| 2031 | Vendors | FluXPO Media | | X |
| 2032 | Vendors | Flyday Consultancy | | X |
| 2033 | Vendors | Forkast Ltd. | | X |
| 2034 | Vendors | Forter Inc. | X | |
| 2035 | Vendors | Fotis Skempes | | X |
| 2036 | Vendors | Frame.io Inc. | X | |
| 2037 | Vendors | Frangeskidou, Angela | | X |
| 2038 | Vendors | Frediani, Jeremy | | X |
| 2039 | Vendors | Freeman | X | |
| 2040 | Vendors | Fromday-One BV | | X |
| 2041 | Vendors | Frontend Masters | | X |
| 2042 | Vendors | FSCom Ltd. | | X |
| 2043 | Vendors | Fusion Bowls | | X |
| 2044 | Vendors | G&TP Sweden AB | | X |
| 2045 | Vendors | Gabriel, Lilly | | X |
| 2046 | Vendors | Gandi SAS | | X |
| 2047 | Vendors | Garcia, Adria | | X |
| 2048 | Vendors | Garcia, Migdalia | | X |
| 2049 | Vendors | Gartner Inc. | X | |
| 2050 | Vendors | GEA Ltd. | X | |
| 2051 | Vendors | Gecko Labs Pte. Ltd. | | X |
| 2052 | Vendors | Gecko Technology Partners Ltd. | X | |
| 2053 | Vendors | GEM | X | |
| 2054 | Vendors | Georgios, Retoudis | | X |
| 2055 | Vendors | Gett Inc. | | X |
| 2056 | Vendors | Giftagram USA Inc. | | X |
| 2057 | Vendors | Gila Dishy Life Coach LLC | | X |
| 2058 | Vendors | Gilbert + Tobin | X | |
| 2059 | Vendors | GitBook SAS | | X |
| 2060 | Vendors | GitHub Inc. | X | |
| 2061 | Vendors | GitKraken | | X |
| 2062 | Vendors | GK8 Ltd. | X | |
| 2063 | Vendors | Glovo | X | |
| 2064 | Vendors | Glushon, Jason | | X |
| 2065 | Vendors | GoDaddy.com | X | |
| 2066 | Vendors | Gogo Air International SARL | | X |
| 2067 | Vendors | Goin' Postal | | X |
| 2068 | Vendors | Goodstein, Nicole | | X |
| 2069 | Vendors | Google Ads | | X |
| 2070 | Vendors | Google Cloud | X | |
| 2071 | Vendors | Google Fi | | X |
| 2072 | Vendors | Google Fiber | | X |
| 2073 | Vendors | Google LLC | X | |
| 2074 | Vendors | Google Play | | X |
| 2075 | Vendors | Google Workspace | | X |
| 2076 | Vendors | GoToAssist | | X |
| 2077 | Vendors | Graham, Wendy | | X |
| 2078 | Vendors | Grammarly Inc. | X | |
| 2079 | Vendors | GreyScaleGorilla | | X |
| 2080 | Vendors | Grit Daily News | | X |
| 2081 | Vendors | Grozdanic, Jovana | | X |
| 2082 | Vendors | GrubHub Inc. | X | |
| 2083 | Vendors | Grunsfeld, Gerry | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2084 | Vendors | Guarano, Gabriele | | X |
| 2085 | Vendors | Guarascia, Ryan | | X |
| 2086 | Vendors | GuardianArc International LLC | | X |
| 2087 | Vendors | H2Prod | | X |
| 2088 | Vendors | Hadjipanayi, Christina | | X |
| 2089 | Vendors | Halborn Inc. | | X |
| 2090 | Vendors | Hampton Inn | | X |
| 2091 | Vendors | HanaHaus | | X |
| 2092 | Vendors | Handel Group LLC | | X |
| 2093 | Vendors | Harris-Harris Group LLC, The | | X |
| 2094 | Vendors | Haruko Ltd. | | X |
| 2095 | Vendors | Hattricks Tavern | | X |
| 2096 | Vendors | Haussmann, Christiaan | | X |
| 2097 | Vendors | Headway Workforce Solutions Inc. | | X |
| 2098 | Vendors | Healthy Horizons Ltd. | | X |
| 2099 | Vendors | Heathrow Express Operating Co. Ltd. | | X |
| 2100 | Vendors | Hedgeguard | | X |
| 2101 | Vendors | HeleCloud Ltd. | | X |
| 2102 | Vendors | HelpSystems LLC | | X |
| 2103 | Vendors | Henriksen-Butler Nevada LLC | | X |
| 2104 | Vendors | Hertz Corp., The | X | |
| 2105 | Vendors | Herzog Fox & Neeman | X | |
| 2106 | Vendors | Highlight Films Ltd. | | X |
| 2107 | Vendors | Hilton Worldwide Holdings Inc. | X | |
| 2108 | Vendors | HireRight LLC | X | |
| 2109 | Vendors | HMRC Shipley | | X |
| 2110 | Vendors | Hobson, James Jonathan | | X |
| 2111 | Vendors | Holland & Knight LLP | X | |
| 2112 | Vendors | Home Depot Inc., The | X | |
| 2113 | Vendors | Hootsuite Inc. | X | |
| 2114 | Vendors | Horasis | | X |
| 2115 | Vendors | Hotel Da Baixa Prata Lda. | | X |
| 2116 | Vendors | Hotel Majestic | X | |
| 2117 | Vendors | Hotel Midtown Atlanta | | X |
| 2118 | Vendors | Hotels com | | X |
| 2119 | Vendors | Hudson Standard, The | | X |
| 2120 | Vendors | Hyatt Hotels Corp. | X | |
| 2121 | Vendors | Hysolate Ltd. | X | |
| 2122 | Vendors | I. A.M.I. Ltd. | | X |
| 2123 | Vendors | Ideal Communications Inc. | | X |
| 2124 | Vendors | Idemia Group SAS | X | |
| 2125 | Vendors | Ignatiades, George | | X |
| 2126 | Vendors | Iliescu, Alexandru | | X |
| 2127 | Vendors | Illumiti Corp. | | X |
| 2128 | Vendors | Incorporating Services Ltd. | | X |
| 2129 | Vendors | Indian Eagle | | X |
| 2130 | Vendors | Information, The | X | |
| 2131 | Vendors | Infura Inc. | X | |
| 2132 | Vendors | InGenie Ltd. | X | |
| 2133 | Vendors | Innovatica LLC | | X |
| 2134 | Vendors | Inside.com Inc. | | X |
| 2135 | Vendors | Insider Inc. | X | |
| 2136 | Vendors | Insperity Inc. | X | |
| 2137 | Vendors | Instacart | X | |
| 2138 | Vendors | Integrated Security & Communications Inc. | | X |
| 2139 | Vendors | Intelligo Group USA Corp. | | X |
| 2140 | Vendors | Intercontinental Hotel Group plc | X | |
| 2141 | Vendors | Intercontinental Miami | | X |
| 2142 | Vendors | Intertrust NV | X | |
| 2143 | Vendors | Intuit Inc. | X | |
| 2144 | Vendors | InvestAnswers | | X |
| 2145 | Vendors | Ioanitescu, Dan | | X |
| 2146 | Vendors | Ioannou, George | | X |
| 2147 | Vendors | ip-api | | X |
| 2148 | Vendors | IPQualityScore | | X |
| 2149 | Vendors | IST NY Inc. | | X |
| 2150 | Vendors | Iterable Inc. | | X |
| 2151 | Vendors | Ivan on Tech Academy | | X |
| 2152 | Vendors | Jackson Lewis LLP | | X |
| 2153 | Vendors | Jaffa Hotel, The | | X |
| 2154 | Vendors | JAMS Inc. | | X |
| 2155 | Vendors | Jansone, Kerija | | X |
| 2156 | Vendors | Jarvis Ltd. | | X |
| 2157 | Vendors | JB Hunt Transport Services Inc. | | X |
| 2158 | Vendors | JetBlue Airways Corp. | X | |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2159 | Vendors | JetBrains sro | X | |
| 2160 | Vendors | Joberty Technologies | | X |
| 2161 | Vendors | John Lewis & Partners | X | |
| 2162 | Vendors | JSC Royal Flight Airlines | | X |
| 2163 | Vendors | Juliet International Ltd. | | X |
| 2164 | Vendors | Jumpcut 3D | | X |
| 2165 | Vendors | Juniper Office | | X |
| 2166 | Vendors | Junk Masterz LLC, The | | X |
| 2167 | Vendors | Junkluggers LLC, The | | X |
| 2168 | Vendors | JV Associates Inc. | | X |
| 2169 | Vendors | K.F.6 Partners Ltd. | | X |
| 2170 | Vendors | Kairon Labs BV | | X |
| 2171 | Vendors | KALC LLC | X | |
| 2172 | Vendors | Kanoo Pays | | X |
| 2173 | Vendors | Kazaka, Krista | | X |
| 2174 | Vendors | Keeper Security | X | |
| 2175 | Vendors | Kenetic Trading Ltd. | | X |
| 2176 | Vendors | Kerr, Bryan | | X |
| 2177 | Vendors | Kerry Hotel HongKong | | X |
| 2178 | Vendors | KeyFi Inc. | | X |
| 2179 | Vendors | Kforce Inc. | X | |
| 2180 | Vendors | Kif, Evgeni | | X |
| 2181 | Vendors | Killian Firm PC, The | | X |
| 2182 | Vendors | Kimpton Surfcomber Hotel | | X |
| 2183 | Vendors | KINTSUGI, Unipessoal Lda. | | X |
| 2184 | Vendors | Knight, Derek | | X |
| 2185 | Vendors | Knobs BAC | | X |
| 2186 | Vendors | Kohl's | | X |
| 2187 | Vendors | Kokoni, Eirini | | X |
| 2188 | Vendors | Korn Ferry | X | |
| 2189 | Vendors | Koutra Athos Sotiris | | X |
| 2190 | Vendors | Koutra, Athos | | X |
| 2191 | Vendors | Kozlowska, Kasandra | | X |
| 2192 | Vendors | Krispy Kreme | X | |
| 2193 | Vendors | Kroll Advisory Ltd. | X | |
| 2194 | Vendors | Kunder, Nikhil | | X |
| 2195 | Vendors | L&L Moving Storage & Trucking LLC | | X |
| 2196 | Vendors | La Maison Favart | | X |
| 2197 | Vendors | Lackner, Joe | | X |
| 2198 | Vendors | Lanktree, Owen | | X |
| 2199 | Vendors | Las Vegas Window Tinting | | X |
| 2200 | Vendors | Latham | X | |
| 2201 | Vendors | Lau, Weyne | | X |
| 2202 | Vendors | LaunchDarkly | | X |
| 2203 | Vendors | Lawn Care | | X |
| 2204 | Vendors | LawnStarter | | X |
| 2205 | Vendors | Leaa | | X |
| 2206 | Vendors | Left House, The | | X |
| 2207 | Vendors | Lenou, Neovi | | X |
| 2208 | Vendors | Leonard, Carleen Ann | | X |
| 2209 | Vendors | Li, Hsu Kang | | X |
| 2210 | Vendors | Lima, Esther | | X |
| 2211 | Vendors | Line Group | X | |
| 2212 | Vendors | LinkedIn Corp. | X | |
| 2213 | Vendors | LinkedIn Ireland Unlimited Co. | X | |
| 2214 | Vendors | Lithify Ltd. | | X |
| 2215 | Vendors | Locate852 | | X |
| 2216 | Vendors | Loews Hotels | | X |
| 2217 | Vendors | Logitech | X | |
| 2218 | Vendors | Logshero Ltd. | X | |
| 2219 | Vendors | Logz.io | X | |
| 2220 | Vendors | Lopez, Galo Fernandez | | X |
| 2221 | Vendors | Loucaides, Michael | | X |
| 2222 | Vendors | LS Future Technology AB | | X |
| 2223 | Vendors | Lucas, Felipe | | X |
| 2224 | Vendors | Lucidchart | | X |
| 2225 | Vendors | Lucille's Smokehouse Bar-B-Que | | X |
| 2226 | Vendors | Lufthansa Deutsche | | X |
| 2227 | Vendors | Lumen | X | |
| 2228 | Vendors | Lunar Squares | | X |
| 2229 | Vendors | LVC USA Inc. | X | |
| 2230 | Vendors | Lyft | X | |
| 2231 | Vendors | Madison Liquidators | | X |
| 2232 | Vendors | MadRev LLC | | X |
| 2233 | Vendors | Mak, Oleena | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2234 | Vendors | Makarim & Taira S. | | X |
| 2235 | Vendors | Malamas, Vasileios | | X |
| 2236 | Vendors | Maltego Technologies | X | |
| 2237 | Vendors | Mambu Tech BV | X | |
| 2238 | Vendors | Mammoth Growth LLC | | X |
| 2239 | Vendors | Mamoulides, George | | X |
| 2240 | Vendors | Mandarin Oriental Hotel | X | |
| 2241 | Vendors | Manhattan Bagel | | X |
| 2242 | Vendors | Manzo's Suites | | X |
| 2243 | Vendors | Maren Altman FZCO | | X |
| 2244 | Vendors | Marios Locksmith Ltd. | | X |
| 2245 | Vendors | Marriott Hotels & Resorts | X | |
| 2246 | Vendors | Marsh USA | X | |
| 2247 | Vendors | Maxon Corp. | X | |
| 2248 | Vendors | Mayami Mexicantina | | X |
| 2249 | Vendors | Mazars LLP | X | |
| 2250 | Vendors | Mazars Ltd. | X | |
| 2251 | Vendors | McCarthy Tetrault LLP | X | |
| 2252 | Vendors | McDonald, Tracey | | X |
| 2253 | Vendors | McLagan Partners Inc. | X | |
| 2254 | Vendors | MCM 965 | | X |
| 2255 | Vendors | mDesign Holdings Ltd. | | X |
| 2256 | Vendors | MediaOne Partners | | X |
| 2257 | Vendors | Melio | X | |
| 2258 | Vendors | Memorisely | | X |
| 2259 | Vendors | Metropol Palace | | X |
| 2260 | Vendors | MF Partners Ltd. | | X |
| 2261 | Vendors | MFA Network | | X |
| 2262 | Vendors | MGM Grand Hotel LLC | | X |
| 2263 | Vendors | Miami Beach Convention Center | | X |
| 2264 | Vendors | Michael Page International Inc. | X | |
| 2265 | Vendors | Michaels Cos. Inc., The | | X |
| 2266 | Vendors | Michaels, Panayiotis | | X |
| 2267 | Vendors | Michailidou, Anna | | X |
| 2268 | Vendors | Microsoft Azure Inc. | | X |
| 2269 | Vendors | Microsoft Corp. | X | |
| 2270 | Vendors | Million Roses, The | | X |
| 2271 | Vendors | MINDS | | X |
| 2272 | Vendors | Minuteman Press International Inc. | | X |
| 2273 | Vendors | Mixed Analytics | | X |
| 2274 | Vendors | Mixpanel Inc. | X | |
| 2275 | Vendors | Momentum Media Group | | X |
| 2276 | Vendors | Monarch Blockchain Corp. | | X |
| 2277 | Vendors | Monday.com Ltd. | X | |
| 2278 | Vendors | MOO Print Ltd. | X | |
| 2279 | Vendors | Moon, Eddie | | X |
| 2280 | Vendors | Moralis Academy | | X |
| 2281 | Vendors | Morreale, James | | X |
| 2282 | Vendors | Morris Manning & Martin LLP | X | |
| 2283 | Vendors | Moschoulla Patatsou Christofi | | X |
| 2284 | Vendors | Motion Array | | X |
| 2285 | Vendors | Motion Design School Co. | | X |
| 2286 | Vendors | Mould, Darron John | | X |
| 2287 | Vendors | Move 4 Less LLC | | X |
| 2288 | Vendors | MTA SpA | X | |
| 2289 | Vendors | Muens, Philipp | | X |
| 2290 | Vendors | Mullholand, Lindsey R. | | X |
| 2291 | Vendors | Mulligan, Scott | | X |
| 2292 | Vendors | Music 2 the Max | | X |
| 2293 | Vendors | MVP Workshop | | X |
| 2294 | Vendors | Myers-Briggs & Co. Inc. | | X |
| 2295 | Vendors | Mylona, Olimbia | | X |
| 2296 | Vendors | MythX | | X |
| 2297 | Vendors | Nagy, Eniko Andrea | | X |
| 2298 | Vendors | Naidu, J Raag | | X |
| 2299 | Vendors | Namecheap Inc. | | X |
| 2300 | Vendors | National Office Interiors & Liquidators | | X |
| 2301 | Vendors | National Railroad Passenger Corp. | X | |
| 2302 | Vendors | Nationwide Multistate Licensing System & Registry | | X |
| 2303 | Vendors | Navex Global Inc. | X | |
| 2304 | Vendors | NBC Universal | X | |
| 2305 | Vendors | Necter | | X |
| 2306 | Vendors | Nethercote, Holley | | X |
| 2307 | Vendors | Nevada Sign | | X |
| 2308 | Vendors | New Spanish Ridge LLC | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2309 | Vendors | New York Times Co., The | X | |
| 2310 | Vendors | Next Web Events BV, The | | X |
| 2311 | Vendors | NextGenProtection | | X |
| 2312 | Vendors | NICE Systems UK Ltd. | X | |
| 2313 | Vendors | Nico Signs Ltd. | | X |
| 2314 | Vendors | NordLayer | | X |
| 2315 | Vendors | Nordlogic Software SRL | | X |
| 2316 | Vendors | Nordstrom Inc. | X | |
| 2317 | Vendors | Nossaman LLP | | X |
| 2318 | Vendors | Notability Partners | | X |
| 2319 | Vendors | Notarize | | X |
| 2320 | Vendors | Nothing Bundt Cakes | | X |
| 2321 | Vendors | Nuri | X | |
| 2322 | Vendors | NuSources | | X |
| 2323 | Vendors | Nyman Libson Paul LLP | | X |
| 2324 | Vendors | OAKds Inc. | | X |
| 2325 | Vendors | Ocean View Marketing Inc. | | X |
| 2326 | Vendors | Office Depot | X | |
| 2327 | Vendors | Office Movers Las Vegas | | X |
| 2328 | Vendors | Office Star B2B Ltd. | | X |
| 2329 | Vendors | OfficeSpace Software Inc. | | X |
| 2330 | Vendors | OfficeVibe | | X |
| 2331 | Vendors | Offord, Scott | | X |
| 2332 | Vendors | Ogilvy, David | | X |
| 2333 | Vendors | OKEx | | X |
| 2334 | Vendors | Onchain Custodian Pte. Ltd. | | X |
| 2335 | Vendors | Onfido | X | |
| 2336 | Vendors | Onfido Inc. | X | |
| 2337 | Vendors | Onfido Ltd. | X | |
| 2338 | Vendors | Optimizely Inc. | | X |
| 2339 | Vendors | Oracle Corp. UK Ltd. | X | |
| 2340 | Vendors | Otter ai | | X |
| 2341 | Vendors | OVF Customer.io LLC | | X |
| 2342 | Vendors | PABXL | | X |
| 2343 | Vendors | Pack & Send | | X |
| 2344 | Vendors | Paddle | | X |
| 2345 | Vendors | Pagliara Entertainment Enterprises LLC | | X |
| 2346 | Vendors | Palantir Security Ltd. | | X |
| 2347 | Vendors | Panago, Constantine | | X |
| 2348 | Vendors | Panasonic Avionics Corp. | X | |
| 2349 | Vendors | Panera Bread | X | |
| 2350 | Vendors | Paneva, Violina | | X |
| 2351 | Vendors | Panorays Ltd. | X | |
| 2352 | Vendors | Papademetriou, Fotis | | X |
| 2353 | Vendors | Papaya Global HK Ltd. | | X |
| 2354 | Vendors | Park MGM Las Vegas | | X |
| 2355 | Vendors | Park Plaza Hotels | X | |
| 2356 | Vendors | Parklane Resort & Spa | | X |
| 2357 | Vendors | Party City | X | |
| 2358 | Vendors | Patchen, Aaron | | X |
| 2359 | Vendors | Paxful Inc. | | X |
| 2360 | Vendors | Payplus by Iris | | X |
| 2361 | Vendors | Payplus Ltd. | | X |
| 2362 | Vendors | Peas Recruitment Ltd. | | X |
| 2363 | Vendors | Peninsula Business Services Ltd. | | X |
| 2364 | Vendors | Phase II Block A South Waterfront Fee LLC | | X |
| 2365 | Vendors | Photo Booth Vending | | X |
| 2366 | Vendors | Piechocinska, Olga | | X |
| 2367 | Vendors | Pillakouris, Maria | | X |
| 2368 | Vendors | Plaid Inc. | X | |
| 2369 | Vendors | Pluralsight Inc. | X | |
| 2370 | Vendors | Polihouse Boutique Hotel | | X |
| 2371 | Vendors | Polyrize Security Ltd. | X | |
| 2372 | Vendors | Portswigger Ltd. | | X |
| 2373 | Vendors | Postman Inc. | | X |
| 2374 | Vendors | Postmates Inc. | X | |
| 2375 | Vendors | Practising Law Institute Inc. | | X |
| 2376 | Vendors | Premaratne, Inesha | | X |
| 2377 | Vendors | Premier Due Diligence LLC | | X |
| 2378 | Vendors | Premium Beat | | X |
| 2379 | Vendors | Prescient | | X |
| 2380 | Vendors | PRG U.S. Inc. | | X |
| 2381 | Vendors | Print Hoboken LLC | | X |
| 2382 | Vendors | Printful Inc. | | X |
| 2383 | Vendors | Priority Power | X | |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2384 | Vendors | Pro Blockchain Media LLP | | X |
| 2385 | Vendors | Prokopis, Konstantinos | | X |
| 2386 | Vendors | Proof of Talent LLC | | X |
| 2387 | Vendors | Protect Operations Ltd. | | X |
| 2388 | Vendors | PSE Consulting Engineers Inc. | | X |
| 2389 | Vendors | PSJ Kanaris Enterprises Ltd. | | X |
| 2390 | Vendors | PTI Office Furniture | | X |
| 2391 | Vendors | PubliBranco | | X |
| 2392 | Vendors | Pure Marketing Group Corp. | | X |
| 2393 | Vendors | Puressence Ltd. | | X |
| 2394 | Vendors | Pušonja, Mališa | | X |
| 2395 | Vendors | Quality Inn & Suites Hotel | | X |
| 2396 | Vendors | Quantstamp Inc. | | X |
| 2397 | Vendors | Quoine Pte. Ltd. | | X |
| 2398 | Vendors | RA Venues at Churchill War Rooms | | X |
| 2399 | Vendors | Raducioiu, Iulia | | X |
| 2400 | Vendors | Rahman, Kent | | X |
| 2401 | Vendors | Rails Tech Inc. | | X |
| 2402 | Vendors | Real Vision Group | X | |
| 2403 | Vendors | Rebecca Sweetman Consulting Ltd. | | X |
| 2404 | Vendors | Reddit Inc. | X | |
| 2405 | Vendors | Redk CRM Solutions Ltd. | | X |
| 2406 | Vendors | Refaeli, Alon | | X |
| 2407 | Vendors | Reflectiz Ltd. | X | |
| 2408 | Vendors | Regus Management Group LLC | X | |
| 2409 | Vendors | reMarkable AS | X | |
| 2410 | Vendors | Residence Inn | X | |
| 2411 | Vendors | Resources Global Professionals | X | |
| 2412 | Vendors | Restream.io | | X |
| 2413 | Vendors | Rethy, Istvan-Levente | | X |
| 2414 | Vendors | Retool Inc. | | X |
| 2415 | Vendors | Rever Networks Inc. | | X |
| 2416 | Vendors | RFO Conferences Organizing LLC | | X |
| 2417 | Vendors | Rhind, Ryan | | X |
| 2418 | Vendors | RingCentral Inc. | X | |
| 2419 | Vendors | Rios, David Garcia | | X |
| 2420 | Vendors | Ritz-Carlton, The | X | |
| 2421 | Vendors | Rosewood Hotel & Resorts LLC | X | |
| 2422 | Vendors | Rothschild TLV | | X |
| 2423 | Vendors | Royal Mail plc | X | |
| 2424 | Vendors | Royalton Hotel | | X |
| 2425 | Vendors | Rubin, Jaclyn | | X |
| 2426 | Vendors | Russell, Jacob | | X |
| 2427 | Vendors | Sabana Labs SL | | X |
| 2428 | Vendors | Saffron Indian Cuisine | | X |
| 2429 | Vendors | Saint Bitts LLC | | X |
| 2430 | Vendors | Saliba, Paul S | | X |
| 2431 | Vendors | Sam's Club | | X |
| 2432 | Vendors | Sam's Limousine & Transportation Inc. | | X |
| 2433 | Vendors | SAP America Inc. | X | |
| 2434 | Vendors | Sawhney, Rajiv | | X |
| 2435 | Vendors | Schoen Legal Search | | X |
| 2436 | Vendors | ScraperAPI | | X |
| 2437 | Vendors | Seamless | | X |
| 2438 | Vendors | SecureDocs Inc. | | X |
| 2439 | Vendors | Securitas Security Services USA Inc. | X | |
| 2440 | Vendors | Seese, Dylan | | X |
| 2441 | Vendors | Segment Inc. | X | |
| 2442 | Vendors | Selfridges | | X |
| 2443 | Vendors | SendSafely | | X |
| 2444 | Vendors | Sentry | X | |
| 2445 | Vendors | Setovich, Javier | | X |
| 2446 | Vendors | Sevio FZC | | X |
| 2447 | Vendors | SewWhatAndWear | | X |
| 2448 | Vendors | Sharma, Bharti | | X |
| 2449 | Vendors | Sheraton Hotels | X | |
| 2450 | Vendors | Shitov, Alexey | | X |
| 2451 | Vendors | Shkedi, Jonathan | | X |
| 2452 | Vendors | Shutters on the Beach | | X |
| 2453 | Vendors | Shutterstock | X | |
| 2454 | Vendors | Silhouette Building, The | | X |
| 2455 | Vendors | Silva, Karl Da | | X |
| 2456 | Vendors | Silverman, Tyler | | X |
| 2457 | Vendors | Similarweb Inc. | X | |
| 2458 | Vendors | SJP Properties General Construction | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2459 | Vendors | Sketch BV | | X |
| 2460 | Vendors | Skew Ltd. | | X |
| 2461 | Vendors | Slack Technologies LLC | X | |
| 2462 | Vendors | SlideTeam | | X |
| 2463 | Vendors | Small Pocket Video | | X |
| 2464 | Vendors | Smart City Networks LP | | X |
| 2465 | Vendors | Smartcontract Inc. | | X |
| 2466 | Vendors | Smith, Winston Royce | | X |
| 2467 | Vendors | SMSF Association | | X |
| 2468 | Vendors | Snowflake Inc. | X | |
| 2469 | Vendors | So & Sato Law Office | | X |
| 2470 | Vendors | Soho Beach House | | X |
| 2471 | Vendors | SolarWinds | X | |
| 2472 | Vendors | Solomon, Levi | | X |
| 2473 | Vendors | Soltysinksi Kawecki Szlezak | | X |
| 2474 | Vendors | SonarSource | | X |
| 2475 | Vendors | Sopracasa, Erik | | X |
| 2476 | Vendors | South City Kitchen | | X |
| 2477 | Vendors | Southwest Airlines | X | |
| 2478 | Vendors | Sovos Compliance | X | |
| 2479 | Vendors | SP V1CE Ltd. | | X |
| 2480 | Vendors | Spears Electric | | X |
| 2481 | Vendors | Spectrum | X | |
| 2482 | Vendors | Sponsor United | | X |
| 2483 | Vendors | Sports1ternship LLC | | X |
| 2484 | Vendors | Sposato, Dalila | | X |
| 2485 | Vendors | SpotHero | | X |
| 2486 | Vendors | Standard Restaurant Equipment Co. | | X |
| 2487 | Vendors | Staples | X | |
| 2488 | Vendors | Starbucks | X | |
| 2489 | Vendors | Statusgator | | X |
| 2490 | Vendors | Stephanos Greek & Mediterranean Grill | | X |
| 2491 | Vendors | Stuart Tracte Photography | | X |
| 2492 | Vendors | Studio ViDA | | X |
| 2493 | Vendors | Sublime HQ Pty. Ltd. | | X |
| 2494 | Vendors | SuperSonic Movers LLC | | X |
| 2495 | Vendors | Surety Solutions | | X |
| 2496 | Vendors | Swag.com | | X |
| 2497 | Vendors | Swept Cleaning Service of Austin | | X |
| 2498 | Vendors | Swiss International Air Lines Ltd. | X | |
| 2499 | Vendors | SXSW LLC | | X |
| 2500 | Vendors | Synapse Florida | | X |
| 2501 | Vendors | Syndic Travel | | X |
| 2502 | Vendors | TAAPI.IO sro | | X |
| 2503 | Vendors | Tableau Software LLC | X | |
| 2504 | Vendors | Talking Cocktails | | X |
| 2505 | Vendors | Tampa Printer | | X |
| 2506 | Vendors | Target Corp. | X | |
| 2507 | Vendors | Tasker, Stephen | | X |
| 2508 | Vendors | TaskRabbit | | X |
| 2509 | Vendors | TaxBit Inc. | | X |
| 2510 | Vendors | Taylor Wessing LLP | X | |
| 2511 | Vendors | TCL Publishing Ltd. | | X |
| 2512 | Vendors | Teamz Inc. | | X |
| 2513 | Vendors | Tembo Embroidery & Custom Merchandise | | X |
| 2514 | Vendors | Ten Manchester Street Hotel | | X |
| 2515 | Vendors | Tenderly doo | | X |
| 2516 | Vendors | Teng, Aaron | | X |
| 2517 | Vendors | Terra Panonica | | X |
| 2518 | Vendors | TET Events LLC | | X |
| 2519 | Vendors | Theocharous, George | | X |
| 2520 | Vendors | Thimble Insurance | | X |
| 2521 | Vendors | Thomson Reuters | X | |
| 2522 | Vendors | Thrasyvoulou, Olga | | X |
| 2523 | Vendors | Thunderclap LLC | | X |
| 2524 | Vendors | Tinoco, Diana | | X |
| 2525 | Vendors | Titan Office Furniture Ltd. | | X |
| 2526 | Vendors | T-Mobile US Inc. | X | |
| 2527 | Vendors | TokenTalk Ltd. | | X |
| 2528 | Vendors | Toll Free Forwarding | | X |
| 2529 | Vendors | Toolfarm | | X |
| 2530 | Vendors | Tore, Alex | | X |
| 2531 | Vendors | Towers Watson Ltd. | X | |
| 2532 | Vendors | Trade Group Inc., The | X | |
| 2533 | Vendors | TradingView Inc. | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2534 | Vendors | TransUnion | X | |
| 2535 | Vendors | Trash Cans Warehouse | | X |
| 2536 | Vendors | TRD Comm | | X |
| 2537 | Vendors | Trello Inc. | | X |
| 2538 | Vendors | Trovata Inc. | X | |
| 2539 | Vendors | Trustpilot Inc. | X | |
| 2540 | Vendors | TubeBuddy | | X |
| 2541 | Vendors | Turkish Airlines | X | |
| 2542 | Vendors | Turley, Andrew | | X |
| 2543 | Vendors | Twenty84 Solutions | | X |
| 2544 | Vendors | Twilio Inc. | X | |
| 2545 | Vendors | Twitter Inc. | X | |
| 2546 | Vendors | Uber | X | |
| 2547 | Vendors | Uber Eats | X | |
| 2548 | Vendors | Udemy Inc. | X | |
| 2549 | Vendors | Uline Inc. | X | |
| 2550 | Vendors | Unbound Tech Ltd. | X | |
| 2551 | Vendors | Unifire Extinguishers Ltd. | | X |
| 2552 | Vendors | United Airlines | X | |
| 2553 | Vendors | University Arms Hotel | | X |
| 2554 | Vendors | Unstoppable Domains Inc. | | X |
| 2555 | Vendors | UPS | X | |
| 2556 | Vendors | Upstager Consulting Inc. | | X |
| 2557 | Vendors | UrbanStems Inc. | | X |
| 2558 | Vendors | USA Strong Inc. | | X |
| 2559 | Vendors | UsabilityHub Pty. Ltd. | X | |
| 2560 | Vendors | UsaStrong.io | | X |
| 2561 | Vendors | USPS | | X |
| 2562 | Vendors | V3 Digital Ltd. | | X |
| 2563 | Vendors | Valere Capital | | X |
| 2564 | Vendors | Vandervelde, Jeffrey | | X |
| 2565 | Vendors | Vanguard Cleaning Systems of Las Vegas | | X |
| 2566 | Vendors | Varonis Systems Inc. | X | |
| 2567 | Vendors | Varzea, Monica | | X |
| 2568 | Vendors | Vasileiou, Eirini | | X |
| 2569 | Vendors | VCU Blockchain | | X |
| 2570 | Vendors | Veliz, Jessica | | X |
| 2571 | Vendors | Vercel Inc. | | X |
| 2572 | Vendors | Verified First LLC | | X |
| 2573 | Vendors | VerifyInvestors.com | | X |
| 2574 | Vendors | Verizon Wireless | X | |
| 2575 | Vendors | Vert & Blanc Enterprises Ltd. | | X |
| 2576 | Vendors | Viasat Inc. | X | |
| 2577 | Vendors | Virtru Corp. | | X |
| 2578 | Vendors | Virtual Business Source Ltd. | | X |
| 2579 | Vendors | Virtually Here For You Ltd. | | X |
| 2580 | Vendors | Vivid Edge Media Group | | X |
| 2581 | Vendors | Volta Systems Group | | X |
| 2582 | Vendors | VoskCoin LLC | | X |
| 2583 | Vendors | Vrazic, Michail | | X |
| 2584 | Vendors | VSECNOW Ltd. | | X |
| 2585 | Vendors | Walgreens Boots Alliance Inc. | X | |
| 2586 | Vendors | Wall Street Journal | X | |
| 2587 | Vendors | Walmart Inc. | X | |
| 2588 | Vendors | Wang, Yuanbo | | X |
| 2589 | Vendors | Warwick Hotel Ltd. | | X |
| 2590 | Vendors | Wayfair Inc. | X | |
| 2591 | Vendors | WCEF LLC | | X |
| 2592 | Vendors | West Coast Pure Water LLC | | X |
| 2593 | Vendors | WestCap Management LLC | | X |
| 2594 | Vendors | Whirling Dervish Productions | | X |
| 2595 | Vendors | Wilde Aparthotels | | X |
| 2596 | Vendors | Wingerden, Gerrit Van | | X |
| 2597 | Vendors | Wings Hotel, The | | X |
| 2598 | Vendors | Wintermute Trading Ltd. | X | |
| 2599 | Vendors | Wlosek, Ewa | | X |
| 2600 | Vendors | Wolf Theiss | | X |
| 2601 | Vendors | Wolt | | X |
| 2602 | Vendors | Wolters Kluwer NV | X | |
| 2603 | Vendors | Workland | X | |
| 2604 | Vendors | Workspace Management Ltd. | | X |
| 2605 | Vendors | World Economic Forum | X | |
| 2606 | Vendors | WP Engine, Inc. | X | |
| 2607 | Vendors | Wyndham Hotels & Resorts Inc. | X | |
| 2608 | Vendors | Wynn Las Vegas | X | |

Results of connection check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 2609 | Vendors | Yellin, Sruli | | X |
| 2610 | Vendors | Yellowgrid | | X |
| 2611 | Vendors | yellowHead Ltd. | X | |
| 2612 | Vendors | Yiadom, Prince | | X |
| 2613 | Vendors | Yohann | | X |
| 2614 | Vendors | YouTube Premium | | X |
| 2615 | Vendors | Zapier.com | | X |
| 2616 | Vendors | Zegans Law Group Pllc, The | | X |
| 2617 | Vendors | Zendesk Inc. | X | |
| 2618 | Vendors | Zeplin Inc. | | X |
| 2619 | Vendors | Zoeller, Arielle | | X |
| 2620 | Vendors | Zoho Corp. | X | |
| 2621 | Vendors | Zoom Video Communications Inc. | X | |
| 2622 | Vendors | Zubtitle LLC | | X |
| 2623 | Vendors | Zuraz97 Ltd. | | X |

**Exhibit C**

**Shwartz Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) |
|  | ) Case No. 22-10964 (MG) |
| Debtors. | ) |
|  | ) (Jointly Administered) |
|  | ) |

---

### DECLARATION OF YOAV SHWARTZ
### IN SUPPORT OF DEBTORS' APPLICATION
### FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
### RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS
### TAX COMPLIANCE AND TAX ADVISORY SERVICES PROVIDER,
### EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF

I, Yoav Shwartz, hereby declare pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as follows:

1.      I am a Partner of Kost Forer Gabbay & Kasierer ("EY Israel").  I provide this declaration (this "Declaration") on behalf of EY Israel in support of the application of the above-captioned debtors (the "Debtors") to retain Ernst & Young LLP ("EY LLP") as their tax services provider, effective as of July 13, 2022 (the "Petition Date"), pursuant to the terms and conditions set forth in the agreements between the Debtors and EY LLP attached to the *Declaration of Elizabeth Harvey in Support of Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance Services and Tax Advisory Services Provider, Effective as of July 13, 2022 and (II) Granting Related Relief*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "Harvey Declaration") as Exhibit A (the "Engagement Letters").[2] EY LLP will subcontract

with EY Israel to provide the tax consulting and tax compliance (the "Services") summarized in

paragraph 3 of the Harvey Declaration.

    2.    The facts set forth in this Declaration are based upon my personal knowledge, upon

information and belief, and upon client matter records kept in the ordinary course of business that

were reviewed by me or other employees of EY Israel or employees of other member firms of

EYGL (as defined below) under my supervision and direction.

### EY Israel's Disinterestedness

    3.    Based on the connections check process that is described herein, to the best of my

knowledge, information, and belief, EY Israel (a) does not hold or represent an interest adverse to

the Debtors' estates and (b) is a "disinterested person" as such term is defined in section 101(14)

of title 11 of the United States Code (the "Bankruptcy Code"), as required under section 327(a) of

the Bankruptcy Code.  Moreover, to the best of my knowledge, information and belief, EY Israel's

subcontracting with EY LLP is not prohibited or restricted by Bankruptcy Rule 5002.

    4.    EY Israel's records indicate that before the Petition Date, the Debtors paid EY

Israel for Services that had not yet been rendered as of the Petition Date.  This is a result of

"progress billing" terms under one or more prepetition engagement letters between a Debtor entity

and EY Israel, pursuant to which the Debtors remitted payments to EY Israel at designated times.

As of the Petition Date, EY Israel is holding a credit balance of $105,000.

    5.    During the ninety days before the Petition Date, the Debtors paid approximately

$2,401,112 to EY Israel.

---

[2]   Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Engagement Letters.

6.      As of the Petition Date, EY Israel was owed $248,393 by the Debtors in respect of

services provided by EY Israel prior to the Petition Date.  Upon approval of EY LLP's retention

in these cases, EY Israel will waive its right to receive any unpaid fees incurred on the Debtors'

behalf prior to the Petition Date.

### **Professional Compensation and Reimbursement of Expenses**

7.      EY Israel intends to charge the Debtors fees for the Services, with EY Israel's fees

and expenses relating to work for the Debtors included in EY LLP's fee applications, as set forth

in the Engagement Letters and summarized below.  When another EYGL member firm is a prime

contractor and subcontracts with EY Israel, EY Israel customarily charges the client the same

hourly fees as the EYGL member firm that is the prime contractor. Accordingly, for the Tax

Advisory Services discussed above, EY Israel's fees will be based on the actual time that its

professional spend performing the Services, billed at the following rates for each level listed below

while the Services are performed:

| Level | Rate |
|---|---|
| Partner/Principal | $1,250 |
| Executive Director | $1,150 |
| Senior Manager | $950 |
| Manager | $850 |
| Senior | $600 |
| Staff | $400 |

For the tax compliance services:

- The Debtors prepaid EY Israel $52,150 in fixed fees for the compliance services
  for the tax year ended December 31, 2021 for Celsius Network, Inc.

- The Debtors prepaid EY Israel $52,850 in fixed fees for the compliance services for the tax year ended December 31, 2021 for Celsius US Holding LLC and its US subsidiaries.

- As discussed in greater detail in the attached SOW, additional forms will be billed at a fixed fee per form.

- In addition, time incurred by EY Israel (as a subcontractor to EY) to review tax return matters resulting from the Company's bankruptcy filing, various transactions and an internal restructuring which occurred in 2021 and/or the Company's current financial and operational status will be billed based on the rate card shown above for the Tax Advisory Services.

8.      EY Israel's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which the Debtors shall pay.

9.      In addition to the fees set forth above, the Debtors shall reimburse EY Israel for any direct expenses incurred in connection with EY Israel's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letters, including any potential value-added taxes, sales taxes, and other indirect taxes incurred in connection with the delivery of the Services. EY Israel's direct expenses shall include, but not be limited to, reasonable, customary, and documented out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses (including any fees or reasonable expenses of EY Israel's legal counsel) related to the Services. EY Israel will charge the Debtors for these direct expenses at EY Israel's cost.

10.      If EY Israel is requested or authorized by the Debtors, or is required by government regulation, subpoena, or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors will, so long as EY Israel is not a party to the proceeding in which the information is sought, reimburse EY Israel for its professional time and expenses, as well as the fees and expenses of EY Israel's counsel, incurred in responding to such requests.

11.    EY Israel may receive rebates in connection with certain purchases, which are used to reduce charges that EY Israel would otherwise pass onto its clients.

## Certain Other Terms of the Engagement Letters

12.    EY Israel's provision of Services to the Debtors is contingent upon this Court's approval of each term and condition set forth in the Engagement Letters.

13.    The Engagement Letters may be terminated by EY or the Debtors in accordance with their terms.  Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses as of the effective date of such termination.  Moreover, certain other terms of the Engagement Letters will continue (either indefinitely or for a specified period of time) following termination.

## Ernst & Young Global Limited

14.    The Ernst & Young global network comprises independent professional services practices conducted by separate legal entities throughout the world.  Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital.  The EYGL member firms have agreed to operate certain of their professional practices in accordance with agreed standards but remain separate legal entities.  EY Israel, is a member firm of EYGL in its jurisdiction.

## Disclosure of Connections

15.    EY Israel has access to a computer database (the "Database") that contains information about actual client engagements and potential engagement activity of all of the member firms of EYGL.  The Database also includes the names of other parties that the professionals on the relevant engagement team have identified as also being involved in each engagement (*e.g.*, adverse parties and co-clients).  Thus, the Database indicates whether any

Debtor entity is involved in an engagement by an EYGL member firm, in which a Party in Interest (as defined below) is a client.[3]

16.    In connection with EY Israel's proposed retention by the Debtors, I understand that Debtors' counsel provided a list of names of parties in interest in these cases (the "PIIL") to EY LLP on or about July 27, 2022, which was supplemented on or around October 20, 2022.  EY Israel analyzed the results of the check of the names of parties in interest in these cases that EY LLP had caused to be run against the Database (the "Parties in Interest"), to determine whether EY Israel currently provides services to any client that relate to any Debtor or any affiliate of the Debtors.

17.    The disclosure list annexed as Exhibit B to the Harvey Declaration lists the names of the Parties in Interest and whether a client engagement with EY Israel or any other EYGL member firm during the last three years has been identified in the Database.

18.    To the best of my knowledge, information, and belief based on the information set forth in the Database, none of the services rendered to Parties in Interest by EY Israel or any other EYGL member firm have been in connection with the Debtors or these Chapter 11 cases, except as otherwise stated herein.

19.    The Database reflects that the following Parties in Interest are currently engaging EY Israel (or have engaged EY Israel during the last three years) in matters that involve the Debtors. During September through November 2021, the Debtors' non-Debtor affiliate GK8 Ltd. ("GK8"), then an unrelated company and currently an indirect subsidiary of the Debtors, engaged EY Israel

---

[3]    The information in the Database is populated by the professionals who are providing services under each engagement.  Therefore, the information in the Database may not be 100% correct with respect to all engagements, as human errors may occur.  Furthermore, financial information pertaining to engagement activity is the proprietary and confidential information of each individual EYGL member firm.  EY Israel may not have the right to access, or if accessed, disclose, such information relating to other EYGL member firms.

to advise it on the tax and accounting aspects of its sale to Celsius Network Limited.  GK8 paid EY Israel in full at the closing.  I do not believe that the foregoing engagement is adverse to the Debtors.

20.    In addition, GK8 engaged EY Israel to prepare GK8's Israeli income tax returns and to audit the statutorily required supporting financial statements for GK8's fiscal year 2021.

21.    EY Israel cannot prohibit any other EYGL member firm from accepting any client engagements, including in matters that may be adverse to the Debtors or their bankruptcy estates. Nevertheless, if EY Israel becomes aware of any such engagement by another EYGL member firm, EY Israel will file a supplemental declaration with the Bankruptcy Court for the Southern District of New York (this "Court") that contains the pertinent information that EY Israel is authorized to disclose.[4]  Moreover, if EY Israel becomes aware that another EYGL member firm represents a Party in Interest in a matter that is adverse to the Debtors or their bankruptcy estates, EY Israel will not permit anyone from such EYGL member firm's engagement team who provides services to the Party in Interest in the adverse matter to be involved in the Services that EY Israel provides for the Debtors during these Chapter 11 cases.

22.    In the ordinary course of business, certain EYGL member firms ("EY Support Firms") provide various professional, administrative and back office support services for client-facing EYGL member firms throughout the world, as requested, coordinated and directed by such client-facing EYGL member firms (including EY Israel).

---

[4]    There may be situations in which EY Israel will be unable to disclose engagements of other EYGL member firms. For example, laws or regulations applicable to other EYGL member firms may preclude such firms from providing information regarding its client engagements to EY Israel, or applicable laws and regulations may prohibit disclosure.  If that issue arises, EY Israel will discuss it with the Office of the United States Trustee to try to reach a resolution.

23.     Before the Petition Date, EY Support Firms assisted EY Israel in providing services to the Debtors.

24.     Notwithstanding any use of EY Support Firms and the subcontracting of EY Israel in this engagement, EY LLP shall remain fully and solely responsible for any liabilities and obligations in respect of this engagement and Services during these chapter 11 cases.

25.     If this Court approves the Services, EY Israel will subcontract with Martin Flashner, a retired EY LLP Partner and part-time independent contractor retained by EY Israel, to assist in its provision of certain Services to one or more of the Debtors during these chapter 11 cases.  Martin Flashner has vast experience with supporting multi-national business in meeting complex US tax compliance requirements, analyzing, reviewing and filing US federal and state income tax returns.

26.     Mr. Flashner will be paid a fixed fee of $30,000 for each 30-day period that he records a minimum of sixty hours of work for the Debtors.  His fees and expenses relating to work performed for the Debtors will be included in EY LLP's fee applications in these chapter 11 cases.

27.     I understand that Mr. Flashner has performed his own connections check with regard to the Debtors and Parties in Interest identified in these chapter 11 cases.  Mr. Flashner's related declaration is attached hereto as Exhibit A.

28.     EY Israel and other EYGL member firms may perform services for their clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status.  The disclosures set forth herein do not include specific identification of such services.

29.     EY Israel may appear in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be parties involved in these Chapter 11 cases.

30.     EY Israel may currently be a party or participant in certain litigation matters involving Parties in Interest, which matters are unrelated to the Debtors or these Chapter 11 cases.

31.     EY Israel does not directly hold any debt or equity securities of the Debtors.  In addition, none of the EY Israel professionals who are currently on the engagement team that is providing Services to the Debtors directly hold any securities in the Debtors, but those engagement team members may hold interests in mutual funds or other investment vehicles that may own securities of the Debtors.

32.     EY Israel has thousands of professional employees.  It is possible that employees of EY Israel who are not currently on the engagement team that is providing Services to the Debtors may directly or indirectly hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.  Additionally, EY Israel partners and professionals, whether or not on the engagement team that is providing services to the Debtors, may have economic interests in or business associations with Parties in Interest.

33.     To the best of my knowledge, information, and belief, neither the undersigned nor the EY Israel professionals expected to assist the Debtors in these matters are connected to the bankruptcy judges in the Southern District of New York, the United States Trustee for the region in which these chapter 11 cases are pending, or any person employed in the Office of the United States Trustee in the city in which these chapter 11 cases are pending as identified in the PIIL. Moreover, to the best of my knowledge, information, and belief, EY Israel's retention is not prohibited by Bankruptcy Rule 5002.

34.     Despite the efforts described above to identify and disclose connections with Parties in Interest, because the Debtors are a large enterprise with numerous creditors and other relationships, EY Israel is unable to state with certainty that every client representation or other connection with Parties in Interest has been disclosed herein.  If EY Israel discovers additional information that requires disclosure, EY Israel will file supplemental disclosures with this Court.

35.     To the best of my knowledge, information, and belief, prior to the Petition Date, EY Israel performed certain professional services for the Debtors, including US tax compliance services, cross border US international tax consulting services, transfer pricing services, Israeli tax services, and audit services.

36.     At the Debtors' request, following the Petition Date and prior to this Court's approval of EY Israel's engagement in these chapter 11 cases, EY Israel may provide in its sole discretion certain of the Services described in the Engagement Letters.  Thus, EY Israel requests that EY LLP's and EY Israel's retention be authorized effective as of the Petition Date.

37.     To the extent required by section 504 of the Bankruptcy Code, except as otherwise set forth herein, EY Israel has not shared or agreed to share any of its compensation in connection with this matter with any other person, other than the partners, principals and employees of EY Israel.

38.    EY Israel intends to include its fees and expenses relating to work performed for the Debtors in EY LLP's fee applications, and EY LLP will apply to this Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules for the Southern District of New York, Engagement Letters, and pursuant to any additional procedures that may be established by this Court in these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  November 18, 2022

*/s/ Yoav Shwartz*
_____
YOAV SHWARTZ, PARTNER
Kost Forer Gabbay & Kasierer

**Exhibit D**

**Flashner Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DECLARATION OF MARTIN FLASHNER**
**IN SUPPORT OF DEBTORS' APPLICATION**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS**
**TAX COMPLIANCE AND TAX ADVISORY SERVICES PROVIDER,**
**EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF**

I, Martin Flashner, hereby declare pursuant under penalty of perjury, to Rule 2014(a) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as follows:

1.      I am a tax professional and retired Ernst & Young LLP ("EY LLP") partner and a

part-time independent contractor retained by Kost Forer Gabbay & Kasierer ("EY Israel").  I hold

a CPA license from Connecticut.

2.      The facts set forth in this Declaration are based upon my personal knowledge, upon

information and belief, and upon records kept and reviewed by me.[2]

**Disinterestedness**

3.      To the best of my knowledge, information, and belief, I do not hold or represent an

interest adverse to the Debtors' estates, and am a "disinterested person," as such term is defined in

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    I do not have copies of client matter records from my time as an EY LLP partner.

section 101(14) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as required under section 327(a) of the Bankruptcy Code.  Moreover, to the best of my knowledge, information, and belief, my subcontracting with EY Israel is not prohibited or restricted by Bankruptcy Rule 5002.

### **Professional Compensation and Reimbursement of Expenses**

4.    If the Bankruptcy Court for the Southern District of New York (this "<u>Court</u>") approves the Debtors' application to retain EY, EY will subcontract with EY Israel, and EY Israel will subcontract with me to assist in providing certain of the approved services to the Debtors.  My compensation will be a fixed fee of $30,000 for each thirty-day period that I record a minimum of sixty hours of work for the Debtors.  I understand that EY will bill my fees to the Debtors at cost, and include my fees in EY LLP's fee applications in these cases.

### **Disclosure of Connections**

5.    I understand that Debtors' counsel provided a list of names of parties in interest in these cases (the "<u>PIIL</u>") to EY LLP on or about August 10, 2022.  EY LLP forwarded that list to me on or about September 26, 2022.  The specific names that were set forth on the PIIL that EY LLP received from the Debtors' counsel are referred to herein as the "Parties in Interest."

6.    In addition, EY LLP received a supplemental PIIL from Debtors' counsel on or around October 20, 2022 (the "<u>Supplemental PIIL</u>").  The disclosure list annexed as <u>Exhibit B</u> to the *Declaration of Elizabeth Harvey in Support of Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider, Effective as of July 13, 2022 and (II) Granting Related Relief* lists the names of the Parties in Interest.  My review of the additional names from the Supplemental PIIL is ongoing.  If I learn any information that requires disclosure, I will file a supplemental declaration with this Court.

7.      Based on a review of my personal files and my recollections, in my capacity as an EY partner and/or as an independent contractor to EY Israel, I have provided services to the following parties in interest on the PIIL:  Nice Systems UK.

8.      To the best of my knowledge, information, and belief, I have not rendered any services to Parties in Interest by that have been in connection with the Debtors or these chapter 11 cases.

9.      I have in the past and may continue to purchase goods and/or services from various entities on the PIIL.  All such relationships are unrelated to the debtors and these chapter 11 cases.

10.     As a retired EY LLP partner, I participate and receive certain benefits and retirement distributions provided to retired EY LLP partners as a result of their prior role as a partner of EY LLP.

11.     While I was a partner at EY LLP, I may have performed services for EY LLP clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status.  The disclosures set forth herein do not include specific identification of such services.

12.     I do not directly hold any debt or equity securities of the Debtors.  I may hold interests in mutual funds or other investment vehicles that may own securities of the Debtors or Parties in Interest from time to time, but I am not currently aware of any such holdings and do not control the investment decisions of any such mutual funds or other investment vehicles.

13.     To the best of my knowledge, information, and belief, I have no connections to the Bankruptcy Judges in the Southern District of New York, the United States Trustee for the region in which these chapter 11 cases are pending, or any person employed in the Office of the United States Trustee in the city in which these chapter 11 cases are pending as identified in the PIIL.

3

14.     Because the Debtors are a large enterprise with numerous creditors and other relationships, I am unable to state with certainty that every client representation or other connection with Parties in Interest has been disclosed herein.  If I discover additional information that requires disclosure, I will file supplemental disclosures with this Court.

15.     Prior to July 13, 2022 (the "Petition Date"), I performed certain professional services for the Debtors and their non-Debtor affiliates, including assistance with the preparation of US federal and state income tax returns for Celsius Network, Inc. for the tax years ended December 31, 2018, 2019, and 2020, and for Celsius US Holding LLC for the tax year ended December 31, 2020.

16.     At the Debtors' request following the Petition Date and prior to this Court's approval of EY LLP's engagement in these cases, I may in my sole discretion assist EY Israel in providing certain of the Services described in EY LLP's Engagement Letters with the Debtors.

17.     I have not shared or agreed to share any of my compensation in connection with this matter with any other person.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  November 18, 2022

/s/ Martin Flashner
**Martin Flashner**

4