Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:      (202) 389-5000
Facsimile:      (202) 389-5200

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' RESPONSES AND OBJECTIONS TO OFFICIAL COMMITTEE OF
UNSECURED CREDITORS' WRITTEN DEPOSITION QUESTIONS FOR THE
DEBTORS IN CONNECTION WITH THE DEBTORS' AMENDED MOTION FOR
ENTRY OF ORDER (I) ESTABLISHING OWNERSHIP ASSETS IN THE DEBTORS'
EARN PROGRAM, (II) PERMITTING THE SALE OF STABLECOIN IN THE
ORDINARY COURSE AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Pursuant to Rules 26 and 31 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this matter by Rules 7026, 7031, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Celsius"), hereby object and respond to the written deposition questions (the "Questions") of the Official Committee of Unsecured Creditors (the "Committee"). The Committee's Questions are set forth verbatim below, each followed by the Debtors' response. Each response is made subject to the objections and conditions within that response as well as to the General Objections set forth below.

## GENERAL OBJECTIONS AND OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Debtors make the following general objections and objections to the instructions and definitions (collectively, the "General Objections"). The General Objections apply to each Question regardless of whether the General Objections are specifically incorporated into any particular response.

1.    Debtors object to the Questions, instructions, and definitions to the extent they seek information not relevant to the issues posed by the *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Couse, and (III) Granting Related Relief* [Docket No. 1325] (the "Debtors' Amended Motion").  Those issues are:

> (a) determining ownership rights to assets transferred by Account Holders designated to be part of the "Earn" program, based on the unambiguous plain language of each version of the Terms of Use (if more than one version is applicable); (b) whether each applicable version of the Terms of Use forms a binding contract with users who transferred assets to the Debtors while such Terms of Use were in effect (*i.e.*, whether the elements of a contract are present); (c) whether subsequent amendments to the Terms of Use are binding on users who transferred their assets to the Debtors prior to the effectiveness of the subsequently amended Terms of Use (*e.g.*, whether a user who deposited coins in July 2020 is bound by the April 2022 Terms of Use); and (d) whether the specific stablecoin

sought to be sold is property of the Debtors' estates (if not covered by the previous three issues).

*Id.* at ¶ 16.  All of those issues relate to whether contracts were formed between the Debtors and Account Holders, and what the terms of those contracts were.  The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses.  *Id.*

In propounding its Questions, the Committee noted that the Debtors' Amended Motion presented only the four issues listed above and specifically acknowledged that "defenses to the formation of a contract would not be tried at this stage."  *See Official Committee of Unsecured Creditors' Written Deposition Questions for the Debtors in Connection with the Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course, and (III) Granting Related Relief*, Exhibit A at ¶¶ 1–2 (the "Committee's Notice of Questions") [Docket No. 1345-1].  The Committee also specifically acknowledged that discovery into individualized contract defenses would not be conducted at this stage because such discovery "is not practicable in the currently contemplated trial schedule."  *Id.* at ¶ 2.

The Debtors and the Committee therefore agree that the best path forward is for (i) the Court to resolve certain threshold legal issues related to the formation and terms of the contracts between the Debtors and Account Holders, and (ii) there to be subsequent discovery into, and litigation over, any individualized contract defenses held by particular Account Holders, if and as necessary.  Despite that agreement, the Committee has propounded Questions that either relate to individualized contract defenses or have no relation whatsoever to the contract issues presented by

the Debtors' Amended Motion.  The Debtors object to those questions as seeking information that is irrelevant at this stage.

2.       Debtors object to the Questions to the extent they seek information outside of their possession, custody, and control, including information only reasonably available to former employees.  Debtors' responses reflect information available to the Debtors following a reasonable, good-faith inquiry based on knowledge and information available to the Debtors and their current employees.

3.       Debtors object to the Questions, instructions, and definitions to the extent they otherwise seek to impose upon Debtors duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, any applicable orders of this Court, or any stipulation or agreement of the parties.

4.       Debtors object to the definition of the terms "any" and "each" as vague and ambiguous to the extent it seeks to define such terms beyond their ordinary meaning.  Subject to and without waiver of their other objections, Debtors will answer only to the extent that they understand the Question.

5.       Debtors object to the definition of the terms "Celsius," "Company," and "Debtors" as overbroad, unduly burdensome, not proportional or relevant to the needs of the case, vague, and ambiguous to the extent that the terms purport to require Debtors to produce documents and things from persons or entities outside of their possession, custody, or control, or from affiliates, former affiliates, or Debtors' former employees, agents, attorneys, advisors, and representatives that are not parties to these cases and over which the Debtors do not have control.

6.      Debtors object to the definition of the term "Communication" as overbroad, unduly burdensome, not proportional or relevant to the needs of this case, vague, and ambiguous to the extent it departs from or expands upon the definition of "Communication" set forth in S.D.N.Y. Local Rule 26.3(c)(1).  Therefore, Debtors will construe "Communication" in accordance with the definition provided in Local Rule 26.3(c)(1).

7.      Debtors object to the definitions of the terms "concerning," "regarding," "in connection with," "relating to," and "referring to" as vague and ambiguous to the extent they seek to define such terms beyond their ordinary meaning.  Subject to and without waiver of their other objections, Debtors will answer only to the extent that they understand the Request.

8.      Debtors object to the definition of the term "Document(s)" to the extent it departs from or expands upon the definition of "Document" set forth in S.D.N.Y. Local Rule 26.3(c)(2), as applied to these proceedings under S.D.N.Y. Local Bankruptcy Rule 7026-1, as overbroad, unduly burdensome and inconsistent with, and imposing obligations beyond, the obligations required under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules.  Debtors further object to this definition because it seeks discovery that is not proportional to the needs of the case and the burden or expense of finding, collecting, and producing responsive documents outweighs its likely benefit.  Therefore, Debtors will construe the term "Document" in accordance with the definition provided in Local Rule 26.3(c)(1).

9.      Debtors object to the definition of the terms "You" and "Your" to the extent that the terms purport to require Debtors to produce documents and things from persons or entities outside of their possession, custody, or control, or from former affiliates or former employees of Debtors that are not parties to these cases.

10.    Debtors incorporate each of the aforementioned General Objections into each response to a Question as if fully set forth in the response.

## RESPONSES TO WRITTEN DEPOSITION QUESTIONS

### QUESTION NO. 1:

Identify the individual or individuals at Celsius responsible for drafting each version of the terms of use and describe the process for approval of each version of the terms of use, including the individual or individuals at Celsius who approved such versions.

### RESPONSE TO QUESTION NO. 1:

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius also objects to Question 1 to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving its objections, Celsius states that the terms of use were primarily drafted by its Legal and Regulatory departments, including, at or around July 2021 and later, Ron Deutsch, Joseph Golding-Ochsner, Yarden Noy, and Roni Cohen Pavon (each of whom is an attorney), with input from outside counsel.

### QUESTION NO. 2:

Describe whether and how individuals seeking to use the Celsius platform were required to affirmatively indicate acceptance of each version of the terms of use before being allowed to create accounts, to the extent such indication of acceptance differs from that described in the Blonstein Declaration with respect to the Terms of Use Version 6.

### RESPONSE TO QUESTION NO. 2:

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to and without waiving its objections, Celsius states that, when an Account Holder signed up for a Celsius Earn account, they were required to accept the version of the terms of use in effect at the time of their account's creation before they accessed the platform.

In addition, all users on Celsius' platform were required to accept Terms of Use Version 6 when it went into effect.  For Terms of Use Version 6, an in-application pop-up window notified the Account Holder of the updated terms of use and advised the Account Holder to read the Terms of Use in its entirety.  The pop-up window provided the Account Holder with a hyperlink to the

full text of Terms of Use Version 6 as well as information regarding certain changes in Terms of Use Version 6. Below the hyperlink the pop-up contained three check boxes with corresponding statements, including "I have read and agree to the new Terms of Use." There was also a button for Account Holders to click the word "Agree." The process for reviewing and agreeing to the Terms of Use Version 7 (for Account Holders who had not already accepted Terms of Use Version 6) was substantially similar to this process. Terms of Use Version 7 was a minor update, and substantially similar, to Terms of Use Version 6. Terms of Use Version 7 was deployed on August 3, 2021, and became the operative version at that point. The process for reviewing and agreeing to Terms of Use Version 8 (for U.S.-based Account Holders) was also substantially similar to the process for Terms of Use Version 6.

## QUESTION NO. 3:

> Describe whether and how Account Holders were required to affirmatively indicate acceptance of each new, subsequent, or revised version of the terms of use before being allowed to continue to access their pre-existing accounts (i.e., accounts that had been created prior to the effective date of the new, subsequent, or revised version of the terms of use) on the Celsius platform, to the extent such indication of acceptance differs from that described in the Blonstein Declaration with respect to the Terms of Use Version 6.

## RESPONSE TO QUESTION NO. 3:

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to and without waiving its objections, Celsius states that, once an Account Holder had accepted the terms of use, the Account Holder's continued use of the Celsius platform constituted acceptance of any new, subsequent, or revised terms of use, per the terms of use to which the Account Holder had originally accepted. Celsius further states that for Terms of Use Version 6 (and, subsequently, for U.S. Account Holders, Terms of Use Version 8) Account Holders received a push notification prompting them to accept the terms.

## QUESTION NO. 4:

> How were the terms of use presented to, and accepted by, institutional and international Account Holders that did not access the Celsius platform through the Celsius application or website (i.e., Account Holders that accessed through an Application Programming Interface)? Indicate if such process was different with respect to any version of the terms of use and describe such process, if applicable.

**RESPONSE TO QUESTION NO. 4:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to this request as vague and unclear as it is written.

Subject to and without waiving its objections, Celsius states that terms of use were presented to international Account Holders in the same way they were presented to U.S.-based Account Holders, with the exception of Terms of Use Version 8. For Version 8, U.S.-based Account Holders were required to accept the updated Terms of Use in order to continue using the platform, while international Account Holders were presented with the Terms of Use Version 8 but were not required to accept it to continue using the platform.

Celsius further states that only a limited number of Account Holders accessed the Celsius platform through an API. Those Account Holders did so through an API partner. Celsius' agreements with those partners required the API partner's end users to accept Celsius' terms of use to access Celsius' services. For the Terms of Use Version 6, Celsius worked with its API partners to ensure Account Holders accessing through an API received and accepted the updated terms of use.

**QUESTION NO. 5:**

Describe any instances during which the terms of use were not displayed or available to Account Holders on the Celsius app or website following account registration and during subsequent log-ins.

**RESPONSE TO QUESTION NO. 5:**

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to and without waiving its objections, Celsius' general practice is to have the operative terms of use available to users after registration and during subsequent use of the platform. Celsius is not aware of any instance where the terms of use were not displayed or available to Account Holders on the Celsius app or website other than downtime for routine maintenance, website outages, or similar events.

**QUESTION NO. 6:**

What options were Account Holders provided with if they did not click "Accept" to the Terms of Use Version 6, and how were such options disclosed to Account Holders prior to the request to click "Accept"? If the Terms of Use Version 7 or the Terms of Use Version 8 provided Account Holders with a different option or disclosed such option differently, describe such option and disclosure and identify the applicable version of the terms of use.

**RESPONSE TO QUESTION NO. 6:**

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to and without waiving its objections, Celsius rolled out Terms of Use Version 6 on July 22, 2021. Account Holders then had two weeks—from July 22 to August 5, 2021–to accept Terms of Use Version 6. During that two-week period, Account Holders had full access to, and use of, their account, including the ability to remove assets from the platform and close their account. During that time, a banner showed at the top of the Account Holders' platform interface prompting them to agree to the updated terms of use. On August 5, 2021, Celsius suspended accounts for any Account Holder that had not accepted the Terms of Use Version 6, at which point, Account Holders could not operate on the platform and could not conduct transactions. After August 5, 2021, a suspended Account Holder had to contact customer service to withdraw assets from the platform.

**QUESTION NO. 7:**

The screenshot at Exhibit A-8 of the Blonstein Declaration indicates that Account Holders were able to click "Remind me later" rather than "Accept" with respect to the Terms of Use Version 6, and that the next screen would ask "Are you Sure?" and enable Account Holders to click "Continue Anyway." Provide screenshots of the successive screens shown to Account Holders that clicked "Continue Anyway." If a different process was used with respect to the Terms of Use Version 7 or the Terms of Use Version 8, describe the acceptance and deferral process with respect thereto and identify the applicable version of the terms of use.

**RESPONSE TO QUESTION NO. 7:**

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to and without waiving its objections, Celsius states that if Account Holders did not choose "Accept" on Terms of Use Version 6 and chose "Remind me later," they were presented with a second pop-up screen that said, "Are you Sure?". This second pop-up notified Account Holders that their account would be suspended on August 5, 2021, at which point any withdrawals could

only be processed through customer support.  Account Holders could nonetheless select "Continue Anyway" and they would have full access to and use of their account on the Celsius platform until August 5, 2021.  The process for Terms of Use Version 7 (for Account Holders who had not already accepted Terms of Use Version 6) was substantially similar to this process.  Terms of Use Version 7 was a minor update, and substantially similar, to Terms of Use Version 6.  Terms of Use Version 7 was deployed on August 3, 2021, and became the operative version at that point.  For Terms of Use Version 8, U.S.-based Account Holders received a notification prompting them to review and accept the terms of use, and if they did not, then they could not access their account.

**QUESTION NO. 8:**

> Were Account Holders able to withdraw digital assets from the Celsius platform on the Celsius app or website (i.e., without speaking to customer support representatives) if they did not accept the Terms of Use Version 6? If the answer is different with respect to any other version of the terms of use, provide the relevant answer with respect thereto and identify the applicable version of the terms of use.

**RESPONSE TO QUESTION NO. 8:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Subject to and without waiving its objections, Celsius states that Account Holders that did not accept Terms of Use Version 6 were able to withdraw digital assets from the Celsius platform prior to August 5, 2021. On August 5, 2021, Account Holders who did not accept Terms of Use Version 6 had their accounts suspended, meaning they could view their account dashboard but could not conduct any transactions (including withdrawals) unilaterally. Account Holders who still had a balance in their account at that time would have to contact Celsius customer support to withdraw assets from their account.  For Terms of Use Version 8, U.S.-based Account Holders had to accept the Terms of Use in order to access their accounts.

**QUESTION NO. 9:**

> Why were Account Holders not provided with an option to immediately withdraw digital assets (i.e., without speaking to customer support representatives) if they did not agree to the Terms of Use Version 6?

**RESPONSE TO QUESTION NO. 9:**

Celsius reasserts and incorporates each of its General Objections and Objections to Definitions set forth above.  Subject to and without waiving its objections, Celsius states that Account Holders that did not accept Terms of Use Version 6 were able to immediately withdraw digital assets from the Celsius platform until their accounts were suspended on August 5, 2021, at which time they could view their account dashboard but could not conduct any transactions (including withdrawals) unilaterally.  Account Holders who still had a balance in their account at that time would have to contact Celsius customer support to withdraw assets from their account.

**QUESTION NO. 10:**

If Account Holders or individuals seeking to use the Celsius platform did not click "Accept" to Terms of Use Version 6 and failed to withdraw digital assets, what did Celsius do with those assets? Identify the applicable period of time, if any, during which Account Holders or such individuals were required to withdraw assets. If the answer is different with respect to any other version of the terms of use, provide the answer with respect thereto and identify the applicable version of the terms of use

**RESPONSE TO QUESTION NO. 10:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 10 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were.  Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1.  Question 10 seeks information that lacks any connection to those issues.  Celsius therefore will not respond to Question 10 at this stage.

**QUESTION NO. 11:**

Are the templates and mock-ups attached to the Blonstein Declaration true and correct copies of the Communications that were actually sent to Account Holders?

**RESPONSE TO QUESTION NO. 11:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Subject to those General Objections, Celsius states that the templates and mock-ups attached to the Blonstein Declaration are, in words or in substance, the same or materially the same as communications sent to Account Holders.

**QUESTION NO. 12:**

Explain why Account Holders' accounts were suspended if they failed to accept the Terms of Use Version 6 by August 5, 2021, but did not stop earning rewards unless the Account Holders failed to accept the Terms of Use Version 6 by August 19, 2021.

**RESPONSE TO QUESTION NO. 12:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 12 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses.  Debtors' Amended Motion at ¶ 16.  The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule."  Committee's Notice of Questions at ¶ 2.  Despite that agreement, Question 12 seeks information that is potentially relevant only to individualized contract defenses.  Celsius therefore will not respond to Question 12 at this stage.

**QUESTION NO. 13:**

Describe how Celsius determined the period that Account Holders were provided within which to decide whether to accept the Terms of Use Version 6 before their accounts were suspended.

**RESPONSE TO QUESTION NO. 13:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 13 as overbroad, unduly burdensome, and not proportional or relevant

to the needs and issues of the Debtors' Amended Motion.  The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses.  Debtors' Amended Motion at ¶ 16.  The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule."  Committee's Notice of Questions at ¶ 2.  Despite that agreement, Question 13 seeks information that is potentially relevant only to individualized contract defenses.  Celsius therefore will not respond to Question 13 at this stage.

**QUESTION NO. 14:**

> Were all Communications with respect to the terms of use, or to individuals seeking to use the Celsius platform, in English? Was all content on the Celsius application or website in English? If not, identify other languages in which such Communications or content were/was conveyed.

**RESPONSE TO QUESTION NO. 14:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 14 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses.  Debtors' Amended Motion at ¶ 16.  The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule."  Committee's Notice of Questions at ¶ 2.  Despite that agreement, Question 14 seeks information that is potentially relevant only to individualized contract defenses.  Celsius therefore will not respond to Question 14 at this stage.

**QUESTION NO. 15:**

Did Celsius send written Communications to Account Holders that included the full text of each version of the terms of use or a link to such terms of use when such version of the terms of use was purported to be effective? If so, provide a copy of such Communications, if available.

**RESPONSE TO QUESTION NO. 15:**

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to those General Objections, Celsius states that Celsius sent communications providing Account Holders a hyperlink to the full text of Terms of Use Version 6 as well as information regarding certain changes in Terms of Use Version 6. The process for Terms of Use Versions 7 and 8 was substantially similar.

**QUESTION NO. 16:**

Did Celsius send written Communications to Account Holders describing or identifying any changes that had been made to any version of the terms of use when such terms of use were amended, modified, or otherwise revised? If so, provide a copy of such Communications, if available.

**RESPONSE TO QUESTION NO. 16:**

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to those General Objections, Celsius states that Celsius sent communications providing Account Holders a hyperlink to the full text of Terms of Use Version 6 as well as information regarding certain changes in Terms of Use Version 6. The process for Terms of Use Versions 7 and 8 was substantially similar.

**QUESTION NO. 17:**

Describe why and how Celsius selected changes to highlight to Account Holders or individuals seeking to use the Celsius platform in Communications regarding the Terms of Use Version 6.

**RESPONSE TO QUESTION NO. 17:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 17 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. The Debtors' Amended Motion reserves

the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses. Debtors' Amended Motion at ¶ 16. The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule." Committee's Notice of Questions at ¶ 2. Despite that agreement, Question 17 seeks information that is potentially relevant only to individualized contract defenses. Celsius therefore will not respond to Question 17 at this stage.

## QUESTION NO. 18:

> Describe (i) the rationale underlying the changes from the Terms of Use Version 1 to the Terms of Use Version 2, particularly with respect to ownership of digital assets and Celsius's ability to unilaterally amend the terms of use, and (ii) whether and how Celsius's business practices changed from the period in which the Terms of Use Version 1 were purported to be in effect and the Terms of Use Version 2 were purported to be in effect.

## RESPONSE TO QUESTION NO. 18:

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 18 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. The Debtors' Amended Motion depends on whether Account Holders agreed to Terms of Use Versions 6 and later, not prior versions of the terms of use. When Terms of Use Version 6 took effect, all existing Account Holders—including those who had originally accepted Terms of Use Version 1 or 2—were required to actively and affirmatively accept Terms of Use Version 6. Debtors' Amended Motion ¶¶ 25–27. The requested information about Terms of Use Versions 1 and 2 therefore is not relevant and Celsius will not respond to Question 18 at this stage.

## QUESTION NO. 19:

> Confirm the email at page C-3 of the Blonstein Declaration is the only Communication Celsius sent to Account Holders who did not accept the Terms of Use Version 6 after August 19, 2021 with respect to the Terms of Use Version 6. If not, provide copies of any

Communications sent to such Account Holders regarding the Terms of Use Version 6 after August 19, 2021, if available.

**RESPONSE TO QUESTION NO. 19:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 19 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1. Question 19 seeks information that lacks any connection to those issues. Celsius therefore will not respond to Question 19 at this stage.

**QUESTION NO. 20:**

As of what date are the percentages of Account Holders and Earn program liabilities reported in Paragraph 32 of the Motion?

**RESPONSE TO QUESTION NO. 20:**

Celsius reasserts and incorporates each of its General Objections set forth above. Subject to and without waiving the General Objections, Celsius states that 90.06% of Account Holders, representing 99.68% of all Earn Program liabilities, accepted the Terms of Use Version 6 or later as of November 10, 2022.

**QUESTION NO. 21:**

Is it possible for Celsius to return digital assets to Account Holders without the Account Holders requesting such return? If so, describe the process of such a return.

**RESPONSE TO QUESTION NO. 21:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 21 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1. Question 21 seeks information

that lacks any connection to those issues.  Celsius therefore will not respond to Question 21 at this stage.

**QUESTION NO. 22:**

> Identify the individual or individuals that is/are most knowledgeable with respect to matters regarding each of (i) movement of digital assets and (ii) the Debtors' ledger, in each case with respect to the Earn Accounts.

**RESPONSE TO QUESTION NO. 22:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 22 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were.  Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1.  Question 22 seeks information that lacks any connection to those issues.  Celsius therefore will not respond to Question 22 at this stage.

**QUESTION NO. 23:**

> Provide the amount of obligations related to each type of Proposed Sale Stablecoin associated with Earn Accounts by amount and number of Account Holders as of the Petition Date.

**RESPONSE TO QUESTION NO. 23:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Subject to those General Objections, Celsius States that, as of the Petition Date, Celsius' Earn obligations related to each type of Proposed Sale Stablecoin were as follows:

| Coin Type | Number of Coins | Number of Users |
|---|---|---|
| USDC | 813,820,389 | 151,465 |
| USDT ERC20 | 119,275,806 | 60,171 |
| GUSD | 80,546,694 | 11,171 |
| BUSD | 33,610,757 | 8,712 |

| MCDAI | 3,723,064 | 26,275 |
|-------|-----------|--------|
| TUSD | 6,656,302 | 3,289 |
| PAX | 10,517,339 | 3,328 |
| SUSD | – | – |
| ZUSD | 120 | 4 |
| EURT | – | – |
| USDT | – | – |

**QUESTION NO. 24:**

Is Celsius able to trace any of the Proposed Sale Stablecoin to specific transfers made by Account Holders?

**RESPONSE TO QUESTION NO. 24:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Subject to those General Objections, Celsius states that it did not tag particular stablecoins as coming from particular Account Holders once those stablecoins entered Celsius' main wallets.  Thus, it is not generally possible to trace any of the Proposed Sale Stablecoin to specific transfers made by Account Holders.

**QUESTION NO. 25:**

What is the lowest balance of Proposed Sale Stablecoin by type that was held in Aggregator Wallets by month from January 1, 2022 to the Petition Date? Indicate the date of each such balance.

**RESPONSE TO QUESTION NO. 25:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 25 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were.  Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1.  Question 25 seeks information

that lacks any connection to those issues.  Celsius therefore will not respond to Question 25 at this stage.

**QUESTION NO. 26:**

> Did the Company treat digital assets corresponding to balances in Earn Accounts as owned by the Company for U.S. tax purposes?

**RESPONSE TO QUESTION NO. 26:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 26 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  As the Debtors and the Committee agreed, the threshold legal question for the Court to resolve at this stage is whether Celsius has ownership rights over Earn Program assets under the "unambiguous plain language" of Celsius' contracts with Account Holders.  Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 2.  The tax treatment of assets corresponding to balances in Account Holders' Earn Accounts are irrelevant to that narrow issue.  Celsius thus will not respond to Question 26.

**QUESTION NO. 27:**

> Did the Company report taxable income or record revenue with respect to value attributable to airdropped or hard-forked cryptocurrency from the digital assets corresponding to balances in the Earn Accounts?

**RESPONSE TO QUESTION NO. 27:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 27 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  As the Debtors and the Committee agreed, the threshold legal question for the Court to resolve at this stage is whether Celsius has ownership rights over Earn Program assets under the "unambiguous plain language" of Celsius' contracts with Account Holders.  Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 2.  The tax treatment of assets corresponding to balances in Account Holders' Earn Accounts are irrelevant to that narrow issue.  Celsius thus will not respond to Question 27.

**QUESTION NO. 28**:

Did the Company withhold any U.S. taxes related to digital assets corresponding to balances in Earn Accounts?

**RESPONSE TO QUESTION NO. 28**:

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 28 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the threshold legal question for the Court to resolve at this stage is whether Celsius has ownership rights over Earn Program assets under the "unambiguous plain language" of Celsius' contracts with Account Holders. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 2. The tax treatment of assets corresponding to balances in Account Holders' Earn Accounts are irrelevant to that narrow issue. Celsius thus will not respond to Question 28.

**QUESTION NO. 29**:

Did the Company treat digital assets corresponding to balances in Earn Accounts differently from digital assets corresponding to balances in Custody Accounts for tax purposes? If so, describe such difference in treatment.

**RESPONSE TO QUESTION NO. 29**:

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 29 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the threshold legal question for the Court to resolve at this stage is whether Celsius has ownership rights over Earn Program assets under the "unambiguous plain language" of Celsius' contracts with Account Holders. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 2. The tax treatment of assets corresponding to balances in Account Holders' Earn Accounts are irrelevant to that narrow issue. Celsius thus will not respond to Question 29.

**QUESTION NO. 30**:

Did the Company treat digital assets corresponding to balances in Earn Accounts differently for any non-U.S. tax purpose, as opposed to a U.S. tax purpose, on account of ownership? If so, describe such treatment.

**RESPONSE TO QUESTION NO. 30:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 30 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the threshold legal question for the Court to resolve at this stage is whether Celsius has ownership rights over Earn Program assets under the "unambiguous plain language" of Celsius' contracts with Account Holders. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 2. The tax treatment of assets corresponding to balances in Account Holders' Earn Accounts are irrelevant to that narrow issue. Celsius thus will not respond to Question 30.

**QUESTION NO. 31:**

In the ordinary course of business, how did the Company record digital assets corresponding to balances in Earn Accounts on their books and records?

**RESPONSE TO QUESTION NO. 31:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 31 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the threshold legal question for the Court to resolve at this stage is whether Celsius has ownership rights over Earn Program assets under the "unambiguous plain language" of Celsius' contracts with Account Holders. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 2. The tax treatment of assets corresponding to balances in Account Holders' Earn Accounts are irrelevant to that narrow issue. Celsius thus will not respond to Question 31.

**QUESTION NO. 32:**

Was the transfer of a digital asset by an Account Holder to Celsius in connection with the Earn program a loan from that Account Holder to Celsius?

**RESPONSE TO QUESTION NO. 32:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 32 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. Celsius reasserts and incorporates each

of its General Objections set forth above.  Celsius further objects to Question 31 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  As the Debtors and the Committee agreed, the threshold legal question for the Court to resolve at this stage is whether Celsius has ownership rights over Earn Program assets under the "unambiguous plain language" of Celsius' contracts with Account Holders.  Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 2.  The tax treatment of assets corresponding to balances in Account Holders' Earn Accounts are irrelevant to that narrow issue. Celsius thus will not respond to Question 32.

**QUESTION NO. 33:**

> After April 14, 2022, when a loan extended under the Borrow program was repaid or liquidated, how did Celsius determine whether the collateral securing such loan would be sent to an Earn Account or a Custody Account?

**RESPONSE TO QUESTION NO. 33:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 33 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses.  Debtors' Amended Motion at ¶ 16.  The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule."  Committee's Notice of Questions at ¶ 2.  Despite that agreement, Question 33 seeks information that is potentially relevant only to individualized contract defenses.  Celsius therefore will not respond to Question 33 at this stage.

**QUESTION NO. 34:**

> When did Celsius first receive Communications from state, federal, international or other applicable regulatory bodies regarding concerns with the Earn program, CEL Token, or

other products or issues? Include the identity of the regulatory bodies and describe the Communications with such regulatory bodies.

**RESPONSE TO QUESTION NO. 34:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 34 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1. Question 34 seeks information that lacks any connection to those issues. Celsius therefore will not respond to Question 34 at this stage.

**QUESTION NO. 35:**

Describe all licenses, regulatory approvals, or other applicable authority upon which Celsius relied to hold digital assets on behalf of Account Holders.

**RESPONSE TO QUESTION NO. 35:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 35 to the extent it seeks production of documents or communications protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Celsius further objects to Question 35 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1. Question 35 seeks information that lacks any connection to those issues. Celsius therefore will not respond to Question 35 at this stage.

**QUESTION NO. 36:**

Describe why unaccredited Account Holders were grandfathered into the Earn program following the creation of the Custody program on April 14, 2022.

**RESPONSE TO QUESTION NO. 36:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 36 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses. Debtors' Amended Motion at ¶ 16. The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule." Committee's Notice of Questions at ¶ 2. Despite that agreement, Question 36 seeks information that is potentially relevant only to individualized contract defenses. Celsius therefore will not respond to Question 36 at this stage.

**QUESTION NO. 37:**

Has Celsius removed, edited, or altered content or videos on or from its application, website, Twitter account, YouTube account, Medium account, or other internet space since March 1, 2022? If so, describe such removed, edited, or altered content, as well as the dates on which it was removed, edited, or altered, as applicable.

**RESPONSE TO QUESTION NO. 37:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 37 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses. Debtors' Amended Motion at ¶ 16. The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the

currently contemplated trial schedule."  Committee's Notice of Questions at ¶ 2.  Despite that agreement, Question 37 seeks information that is potentially relevant only to individualized contract defenses.  Celsius therefore will not respond to Question 37 at this stage.

**QUESTION NO. 38:**

> From March 1, 2019 through the Petition Date, in the ordinary course of its business, did Celsius pass on 80% of its gross revenue to Account Holders in the form of rewards on amounts transferred to Earn Accounts?

**RESPONSE TO QUESTION NO. 38:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 38 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were.  Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1.  Question 38 seeks information that lacks any connection to those issues.  Celsius therefore will not respond to Question 38 at this stage.

**QUESTION NO. 39:**

> Why did Celsius repeatedly refer to digital assets in the Earn program as Account Holders' assets in marketing and other materials?

**RESPONSE TO QUESTION NO. 39:**

Celsius reasserts and incorporates each of its General Objections set forth above.  Celsius further objects to Question 39 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion.  The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses.  Debtors' Amended Motion at ¶ 16.  The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized

contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule." Committee's Notice of Questions at ¶ 2. Despite that agreement, Question 39 seeks information that is potentially relevant only to individualized contract defenses. Celsius therefore will not respond to Question 39 at this stage.

**QUESTION NO. 40:**

When did the Celsius board first become aware that Celsius was insolvent?

**RESPONSE TO QUESTION NO. 40:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 40 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1. Question 40 seeks information that lacks any connection to those issues. Celsius therefore will not respond to Question 40 at this stage.

**QUESTION NO. 41:**

Describe the process at Celsius for reviewing and approving the statements that Latham & Watkins LLP proposed to make to state and federal regulators on behalf of Celsius and its Affiliates.

**RESPONSE TO QUESTION NO. 41:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 41 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses. Debtors' Amended Motion at ¶ 16. The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized

contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule." Committee's Notice of Questions at ¶ 2. Despite that agreement, Question 41 seeks information that is potentially relevant only to individualized contract defenses. Celsius therefore will not respond to Question 41 at this stage.

**QUESTION NO. 42:**

> Did Celsius add a disclaimer to any of the AMAs at any time providing that the views expressed in that AMA might not be those of Celsius? If so, identify the applicable AMA(s) as well as when and at whose direction the disclaimer was added.

**RESPONSE TO QUESTION NO. 42:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 42 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. The Debtors' Amended Motion reserves the issue of "whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use" and further reserves "all parties' rights"—including any potential discovery rights—with regard to such individualized contract defenses. Debtors' Amended Motion at ¶ 16. The Committee agreed that "defenses to the formation of a contract would not be tried at this stage" and that discovery into individualized contract defenses would not be conducted now because such discovery "is not practicable in the currently contemplated trial schedule." Committee's Notice of Questions at ¶ 2. Despite that agreement, Question 42 seeks information that is potentially relevant only to individualized contract defenses. Celsius therefore will not respond to Question 42 at this stage.

**QUESTION NO. 43:**

> Identify the amount of institutional loans in default, under forbearance, or otherwise under workout or non-performing by month from June 1, 2021 to the Petition Date?

**RESPONSE TO QUESTION NO. 43:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 43 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee

agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1. Question 43 seeks information that lacks any connection to those issues. Celsius therefore will not respond to Question 43 at this stage.

**QUESTION NO. 44:**

> Identify any outstanding (i) unsecured and (ii) undercollateralized institutional loans, by number and outstanding amount, issued by Celsius by month from June 1, 2021 to the Petition Date.

**RESPONSE TO QUESTION NO. 44:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 44 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors' Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1. Question 44 seeks information that lacks any connection to those issues. Celsius therefore will not respond to Question 44 at this stage.

**QUESTION NO. 45:**

> Did Celsius insiders or employees receive any financial benefits that were not available to Celsius Account Holders who were not insiders or employees, including loans in jurisdictions in which Account Holders were not eligible to receive loans or at loan-to-value ratios that were not available to Account Holders?

**RESPONSE TO QUESTION NO. 45:**

Celsius reasserts and incorporates each of its General Objections set forth above. Celsius further objects to Question 45 as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the Debtors' Amended Motion. As the Debtors and the Committee agreed, the only issues presented by the Debtors' Amended Motion are whether contracts formed between Debtors and Account Holders, and what the terms of those contracts were. Debtors'

Amended Motion at ¶ 16; Committee's Notice of Questions at ¶ 1.  Question 45 seeks information that lacks any connection to those issues.  Celsius therefore will not respond to Question 45 at this stage.

*[Remainder of page intentionally left blank.]*

## **<u>VERIFICATION</u>**

I, Oren Blonstein, have read the foregoing *Responses and Objections to Official Committee of the Unsecured Creditors' Written Deposition Questions For The Debtors In Connection With The Debtors' Amended Motion For Entry Of Order (I) Establishing Ownership Assets In The Debtors' Earn Program, (II) Permitting The Sale Of Stablecoin In The Ordinary Course And (III) Granting Related Relief*, dated November 18, 2022, know the contents thereof, and am informed and believe that the answers are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/Oren Blonstein*      
Oren Blonstein

Executed on November 18, 2022

AS TO OBJECTIONS:

| | |
|---|---|
| Washington, D.C.<br>Dated: November 18, 2022 | */s/ Judson Brown, P.C.*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email:  jsussberg@kirkland.com |

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com

- and -

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:      (202) 389-5000
Facsimile:      (202) 389-5200
Email:          judson.brown@kirkland.com
                tj.mccarrick@kirkland.com
                leah.hamlin@kirkland.com

*Counsel to the Debtors and*
*Debtors in Possession*