Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' RESPONSE TO DANIEL A. FRISHBERG'S OBJECTION TO DEBTORS' PROPOSED SCHEDULING ORDER REGARDING TITLE TO EARN PROGRAM ASSETS AND THE SALE OF CERTAIN STABLECOINS

Pursuant to the *Order Requiring Debtors and the Official Committee of Unsecured Creditors to Respond to Creditor Objection* [Docket No. 1396] of the United States Bankruptcy Court for the Southern District of New York (the "Court"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") file this response (this "Response") to *Daniel A. Frishberg's Objection to Debtors' Proposed Scheduling Order Regarding Title to Earn Program Assets and the Sale of Certain Stablecoins and Debtors' Amended Motion for Entry of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

.

*an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1400] (the "Objection") filed by Daniel A. Frishberg, which requests that the Court deny the proposed scheduling order (the "Proposed Scheduling Order"), attached as Exhibit A to the *Notice of Filing of Proposed Scheduling Order Regarding Title to Earn Program Assets and the Sale of Certain Stablecoins* [Docket No. 1324] (the "Notice").  This Response also addresses the *Response of the Official Committee of Unsecured Creditors to Daniel A. Frishberg's Objection to Debtors' Proposed Scheduling Order Regarding Title to Earn Program Assets and the Sale of Certain Stablecoin* [Docket No. 1412] (the "Committee Statement").  In support of this Response, the Debtors state as follows:

## Preliminary Statement

1.      To facilitate a workable plan of reorganization, the Debtors seek to resolve a threshold issue in these chapter 11 cases:  who holds title to assets transferred into the Debtors' earn program and any proceeds thereof (the "Earn Program," and such assets, including any proceeds thereof, the "Earn Assets").  To that end, on November 10 and 11, 2022, the Debtors filed the Proposed Scheduling Order and the *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1325] (the "Amended Motion"),[2] respectively, seeking limited findings related to the Earn Program, Earn Assets, and seeking authority for the Debtors to sell stablecoins in the Earn Program at the appropriate time to provide liquidity during these chapter 11 cases.

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Notice and the Amended Motion, as applicable.

2.      Like the relief requested in the Amended Motion, the Debtors specifically negotiated the Proposed Scheduling Order with the Committee to streamline resolution of this critical legal issue and seek findings from the Court on gating issues of law and fact common to all users with an Earn Account. This sequencing was intentional. Rather than adjudicate each and every Account Holder's contract formation defenses to the applicability of the Terms of Use on the front end, such defenses would be reserved for a later date—to be resolved in the claims process or otherwise. The issue for the Court at this stage therefore is not **whether** Account Holders will be entitled to relevant discovery into contract formation defenses, but **when** discovery should take place. Given the limited—and primarily legal—nature of the issues raised in the Amended Motion, such discovery should be deferred.

3.      More specifically, the Proposed Scheduling Order requests a streamlined briefing and discovery schedule geared towards generating findings on the following narrow issues (collectively, the "Requested Findings"):

- ownership rights to assets transferred by Account Holders designated to be part of the Earn Program, based on the unambiguous plain language of each version of the Terms of Use (if more than one version is applicable);

- whether each applicable version of the Terms of Use forms a binding contract with users who transferred assets to the Debtors while such Terms of Use were in effect (*i.e.*, whether the elements of a contract are present);

- whether subsequent amendments to the Terms of Use are binding on users who transferred their assets to the Debtors prior to the effectiveness of the subsequently amended Terms of Use (*e.g.*, whether a user who deposited coins in July 2020 is bound by the April 2022 Terms of Use); and

- whether the specific stablecoin sought to be sold is property of the Debtors' estates (if not covered by the previous three issues).[3]

---

[3]    Proposed Scheduling Order ¶ 3.

4.      In other words, the only relevant and material legal and factual issues at this phase are: (i) the meaning of the plain and unambiguous Terms of Use; (ii) the form and content of the "click-wrap" Account Holders received prompting them to accept new versions of the Terms of Use; (iii) the percentage of Account Holders who signed different iterations of the Terms of Use; and (iv) how sales of stablecoin in the ordinary course are necessary and would improve the Debtors' liquidity position in these chapter 11 proceedings.

5.      Until yesterday, the Committee agreed that the scope of discovery should be narrow.  In the introduction to the Written Deposition Questions (as defined below) submitted to the Debtors, the Committee acknowledged: "[m]any contract defenses, such as mistake, fraud, and misrepresentation may require further factual discovery that is not practicable in the currently contemplated trial schedule."[4]  Even in the Committee Statement, the Committee acknowledges that it expressly agreed that "*defenses as to the formation of a contract … such as fraud, mistake, and misrepresentation would be fully reserved and not tried at this time* … ."[5]  It was on this understanding that the Debtors agreed to allow any discovery in the first place: in truth, no such discovery is needed for the Court to adjudicate the meaning of the Terms of Use, and the Committee cannot seriously contend otherwise.

6.      The Written Deposition Questions bear little resemblance to that agreement. Among other irrelevances put forward, the Committee—following consultation with the United

---

[4]     *Official Committee of Unsecured Creditors' Written Deposition Questions for the Debtors in Connection with the Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1345] (the "Written Deposition Questions), Exhibit A ¶ 3.

[5]     Committee Statement at 2 (emphasis added).

4

States Trustee, state regulators, and "certain *pro se* Account Holders,"[6]—asked the Debtors to

respond to the following questions, among others:

- 34.  When did Celsius first receive Communications from state, federal, international or other applicable regulatory bodies regarding concerns with the Earn program, CEL Token, or other products or issues?  Include the identity of the regulatory bodies and describe the Communications with such regulatory bodies."

- 37.  Has Celsius removed, edited, or altered content or videos on or from its application, website, Twitter account, YouTube account, Medium account, or other internet space since March 1, 2022?  If so, describe such removed, edited, or altered content, as well as the dates on which it was removed, edited, or altered, as applicable.

- 38.  From March 1, 2019 through the Petition Date, in the ordinary course of its business, did Celsius pass on 80% of its gross revenue to Account Holders in the form of rewards or amounts transferred to Earn Accounts?

- 40.  When did the Celsius board first become aware that Celsius was insolvent?

- 41.  Describe the process at Celsius for reviewing and approving the statements that Lathan & Watkins LLP proposed to make to state and federal regulators on behalf of Celsius and its Affiliates.

- 42.  Did Celsius add a disclaimer to any of the AMAs at any time providing that the views expressed in that AMA might not be those of Celsius?  If so, identify the applicable AMA(s) as well as when and at whose direction the disclaimer was added.

- 43.  Identify the amount of institutional loans in default, under forbearance, or otherwise under workout or non-performing by month from June 1, 2021 to the Petition Date?

- 44.  Identify any outstanding (i) unsecured and (ii) undercollateralized institutional loans, by number and outstanding amount, issued by Celsius by month from June 1, 2021 to the Petition Date.

- 45.  Did Celsius insiders or employees receive any financial benefits that were not available to Celsius Account Holders who were not insiders or employers, including loans in jurisdictions in which Account Holders were not eligible to receive loans or at loan-to-value ratios that were not available to Account Holders?[7]

---

6    Written Deposition Questions, Exhibit A ¶ 6.

7    Written Deposition Questions, Questions 33–36, 40–41, 43–45.

7.    It is difficult to credit the Committee's characterization of such questions as "thoughtful" given the narrow compass of the Requested Findings at this stage.[8]  Instead, these questions appear designed to obtain testimony on unrelated (even if important) topics, including allegations against current and former insiders, solvency, loan status, CEL token, and potential regulatory issues.

8.    Moreover, many questions that on their face discuss the Earn Program fall beyond the scope of the Requested Findings agreed to by the Committee.  For example, the Debtors did not answer questions related to the tax or balance sheet treatment of assets in the Earn Program (Questions 26–31) because such questions are irrelevant to the binding force and unambiguous meaning of the Terms of Use.[9]  The Debtors likewise did not answer questions related to contract formation defenses (such as whether all Communications related to the Terms of Use were exclusively communicated in English) because formation issues and defenses were carved out of the scope of relevant discovery (Questions 14, 37, 39, 42).[10]  Nor did the Debtors respond to questions (or parts of questions) related to process related issues (*i.e.*, how Terms of Use were internally developed or approved or why certain changes were made) (Questions 1, 17–18).[11]  In short, the reason the Debtors answered (in less than five days) one third of the written deposition questions is because the lion's share of those questions in no way relate to the Amended Motion or far exceed the limited scope of the Requested Findings currently at issue.  The Debtors'

---

[8]    Written Deposition Questions, <u>Exhibit A</u> ¶ 5.

[9]    *See Debtors' Responses and Objections to Official Committee of Unsecured Creditors' Written Deposition Questions for the Debtors in Connection with the Debtors' Amended Motion for Entry of Order (I) Establishing Ownership Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1406] (the "<u>Debtors' Responses</u>"), Responses to Questions 26–31.

[10]    *Id.*, Reponses to Questions 14, 37, 39, 42.

[11]    *Id.*, Responses to Questions 1, 17-18.

Proposed Scheduling Order will enable the Court to resolve threshold legal and common issues of fact, while deferring discovery and resolution individualized contract formation issues. Not only will this proposed schedule best provide for judicial economy, it also treats all interested parties equally. The Debtors have consistently treated the Committee and individual Account Holders as equal partners in their joint efforts to maximize the value of the estates and developing the best go-forward solution for the Debtors' business. It is unfortunate that the Committee, individual Account Holders, and others now seek to turn the resolution of a narrow set of legal and factual issues into a spectacle. The original agreement between the Debtors and Committee provides the most practical, efficient, and cost-effective path forward, and the Court should enter the Debtors' Proposed Scheduling Order.

9.      Mr. Frishberg's objection is even farther afield. Mr. Frishberg's argument centers on his claim that the Debtors breached the Terms of Use because the Debtors did not close Mr. Frishberg's Earn Account on demand following the Pause.[12] As a result, Mr. Frishberg claims that the assets in his Earn Account are not property of the Debtors' estates.[13] This argument, however, is nothing more than an individualized contractual defense based upon an individual alleged demand to close his Earn Account. Mr. Frishberg will have his day in court, and the Court eventually will determine the consequences of any alleged breach of contract on whether the assets in his Earn Account are part of the Debtors' estates. But it makes little sense to enable individualized issues to swamp common ones in this preliminary phase.

10.      Indeed, the discovery Mr. Frishberg actually seeks only underscores why his objection to the schedule should be denied: it does not relate to the Amended Motion or the

---

[12]    *See* Obj. at 2, 4–5, 7.

[13]    *See* Obj. at 2.

Requested Findings. Mr. Frishberg sought to depose a whole host of individuals who are unrelated to the findings sought by the Amended Motion: "Alex Mashinsky, Rod Boldger (former CFO), whoever was in charge of closing accounts (earn specifically), Celsius's inhouse counsel on and around July 5th, 2022, whoever was in charge of customer support, Krissy Mashinsky, all parties to the New Jersey class action lawsuit, all insiders/people/companies who withdrew with non-public and/or insider information within 1 year of the insolvency period, and any Celsius insiders/people with non-public knowledge who bought and/or sold CEL tokens since its creation."[14] He indicated that "It is important that we cover the potential implications of insider trading, ponzi scheme, verbal and written contract modifications and breach of contract/conspiracy to breach contract by not allowing me to close my account, when the contract clearly states I can."[15] The questions that Mr. Frishberg indicated he wanted to ask at a deposition were likewise completely irrelevant to the Amended Motion: "[I]s it true that Celsius has lost tens if not hundreds of millions of dollars to supposedly generate revenue via mining?"; "do you plan on instituting actual significant cost cutting measures to get Celsius to sub $10m total expenses a month so there is a chance of a successful sale/reorganization?"; "was a Celsius user generally able to close their account whenever they wanted to?"; and "what generally happened when a Celsius user closed their account with their assets pre-petition?"[16]

11.    These issues have nothing to do with the Amended Motion, and instead relate to Mr. Frishberg's bespoke issues regarding his claim that the Debtors should have closed his Earn Account prepetition when he made that request following the Pause Date. Mr. Frishberg's

---

[14]    E-mail from Mr. Frishberg to counsel to the Debtors (Nov. 5, 2022), attached hereto as **Exhibit B**.

[15]    *Id*.

[16]    *See* E-mail from Mr. Frishberg to counsel to the Debtors (Nov. 14, 2022), attached hereto as **Exhibit C**.

individual claim is not being decided by the Amended Motion and will be decided as part of the

claims process or in another appropriate proceeding.   Mr. Frishberg's untailored and irrelevant

discovery requests exemplify why the Debtors negotiated the Proposed Scheduling Order with the

Committee:  to provide streamlined procedures for parties in interest to obtain information *relevant*

to the relief requested in the Amended Motion and the Requested Findings, while ensuring that the

Debtors did not have to deal with floods of requests from individual Account Holders intent on

using the first opportunity for formal discovery and depositions in these cases to advance their own

self-interested issues.   Indeed, Mr. Frishberg's argument in the Objection exemplifies various

attempts by numerous Account Holders to delay the ruling sought by the Amended Motion by any

means necessary,[17] because the outcome is clear:  the Terms of Use unambiguously provide that

the Earn Assets are property of the Debtors' estates.

12.    The Debtors provided parties in interest with twenty-four days' notice of the

hearing on the Amended Motion, which is more notice than is required under Federal Rules of

Bankruptcy Procedure (the "Rules") 6004.   The Proposed Scheduling Order provides parties in

interest with an opportunity to provide potential questions for the Committee for the written

deposition questions, and to participate in the oral depositions of the witnesses that the Debtors

will call in support of the Amended Motion.   Mr. Frishberg and other similarly situated creditors

have been afforded every appropriate opportunity to participate in depositions of the Debtors'

declarants to develop their opposition to the Amended Motion, while ensuring that the Debtors are

---

[17]    *See*, *e.g.*, *Immanuel Herrmann's Omnibus Objection to Court Filings Taking Positions on Which Coins Are
Customer Property, D.R. Nos. 855, 737, 760, and 662* [Docket No. 954]; *Victor Ubierna De Las Heras Motion
for an Order Pursuant to Bankruptcy Rule 2004 Compelling the Production of Documents* [Docket No. 1053];
*Kulpreet Khanuja's Response to Debtors' Statement Regarding November 1 Hearing on Debtors' Motion Seeking
Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief
and Declaration in Support of Earn Program Assets Being Deemed Property of the Creditors and Earn Accounts
Receiving the Same Standing (Seniority or Preference) in Bankruptcy Proceedings as Custody Accounts* [Docket
No. 1253].

not overwhelmed by individualized questions completely irrelevant to the Amended Motion (such as the questions that Mr. Frishberg has indicated he wants to ask). For these reasons and as more fully described below, the Court should enter the Proposed Scheduling Order and overrule the Objection.

13.     For reasons similar to those noted above, the Committee Statement necessitates a response. Notwithstanding the Committee's request (and the Debtors' agreement) to limit the Requested Findings to exclude individual contract formation defenses, the vast majority of the Written Deposition Questions were completely irrelevant to the narrowed scope that the Committee itself requested, as described further below. The Committee complains that the Debtors "seem intent on having" a discovery dispute,[18] but most of the questions the Committee propounded were clearly outside of the scope of the Amended Motion and the Requested Findings that the Committee itself negotiated. The Committee seems to have mistaken the Debtors' agreement to answer Written Deposition Questions in connection with the Amended Motion as an agreement to respond to any questions, no matter how irrelevant and unnecessary to the resolution of the relief requested in the Amended Motion. Accordingly, the Debtors objected and did not respond to Written Deposition Questions that went beyond the scope of the Amended Motion.

14.     For the reasons set forth herein, the Court should deny the Objection and enter the Proposed Scheduling Order.

## **Background**

## I.    **Procedural History**

15.     On September 15, 2022, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related*

---

[18]    Committee Statement ¶ 6.

*Relief* [Docket No. 832] (the "<u>Stablecoin Motion</u>") seeking the authority to sell stablecoins in the ordinary course of business to fund these chapter 11 cases.[19]  On November 1, 2022, the Court held a status conference on the Stablecoin Motion, where the Debtors committed to file an amended motion on full notice to address certain parties' concerns regarding the title of the proposed sale of stablecoins.  At the status conference, the Court set the hearing on the Amended Motion for December 5 and 6, 2022.[20]   The Court further requested that the Debtors, among other things, file a proposed scheduling order that provides for full notice and language "in all bold that no supplemental filings will be permitted after the date for the Debtor's [*sic*] reply."[21]  The Court also instructed the Debtors to confer with certain state regulators and engage with *pro se* creditors prior to filing the proposed scheduling order and leading up to the hearing on the Amended Motion.[22]

16.    On November 10, 2022, the Debtors filed the Proposed Scheduling Order after consulting with the Committee and all represented parties that engaged with the Debtors regarding the Stablecoin Motion, including the U.S. Trustee and the state regulators.  Before filing the Notice and the Proposed Scheduling Order, the Debtors provided a courtesy e-mail notice to the *pro se* creditors who objected to the Motion in advance of filing both the Proposed Scheduling Order and Amended Motion, notifying them of the proposed briefing and discovery schedule and the Debtors' intention to submit for Court approval, and the Debtors noted the objections they received

---

[19]    *See* Stablecoin Mot. ¶ 1.

[20]    *See* Nov. 1 Hr'g Tr. at 143:25–144:14.

[21]    *Id*. at 144:5–8.

[22]    *Id*. at 144:18–145:6.

by the *pro se* creditors.[23]  On November 11, 2022, the Debtors filed the Amended Motion and

three declarations in support thereof.[24]

17.    The Proposed Scheduling Order sets forth a negotiated timeline and discovery

process that provides all parties in interest with twenty-four days' notice of the hearing on the

Amended Motion (more notice than required under Bankruptcy Rules 2002 and 6004) and defines

the appropriate scope of discovery necessary to resolve the issues set forth in the Amended Motion.

Importantly, after consulting with the Committee, the Debtors and the Committee agreed that the

Committee would file, and that the Debtors would answer, written deposition questions on the

docket.[25]  In addition, the Proposed Scheduling Order provides for *pro se* creditors to be directly

involved in the depositions of those declarants that provided declarations in support of the

Amended Motion.  Parties have been operating under the deadlines set forth in the Proposed

Scheduling Order and are preparing for the hearings on December 5 and December 6, 2022.[26]

18.    On November 14, 2022, the Committee filed the Written Deposition Questions,

seeking the Debtors' response to forty-five questions that the Committee "believe[d] to be . . .

relevant to the determination of the issues raised in the [Amended] Motion," after "consultation

---

[23]    *See* Notice at 3.

[24]    The Court's Public Access to Court Electronic Records (PACER) service was down late at night on November 10, 2022, preventing the Debtors from filing the Amended Motion on that day. The three declarations are: *Declaration of Christopher Ferraro, Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin* [Docket No. 1326]; *Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of the Debtors, in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin* [Docket No. 1327]; and *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin* [Docket No. 1328].

[25]    *See* Proposed Scheduling Order ¶ 1.

[26]    The Deadline to conduct oral depositions of declarants shall be November 22, 2022, by 5:00 p.m., prevailing Eastern Time.  Proposed Scheduling Order ¶ 1.

with (1) the United States Trustee, (2) certain state regulators including the Texas Attorney General, the Vermont Attorney General, and the National Association of Attorneys General, and (3) certain *pro se* Account Holders."[27]  In response, on November 18, 2022, the Debtors filed the Debtors' Responses.

19.     The Committee has noticed Mr. Christopher Ferraro for deposition beginning at 9:00 a.m. (prevailing Eastern Time) on November 21, 2022, and Mr. Oren Blonstein for deposition beginning at 9:00 a.m. (prevailing Eastern Time) on November 22, 2022.[28]   Robert Campagna, a Managing Director of Alvarez & Marsal North America LLC, the Debtors' financial advisor, will also be available for deposition beginning at 9:00 a.m. (prevailing Eastern Time) on November 22, 2022 based on an original request by the Committee and indications from *pro se* creditors that they would like to depose Mr. Campagna.  Mr. Frishberg is scheduled to attend depositions on both November 21 and 22, 2022.

## II.    Mr. Frishberg's Celsius Accounts and Related Motions

20.     The assets in Mr. Frishberg's Earn Accounts do not include stablecoins.[29]  Mr. Frishberg did not file an objection to the Stablecoin Motion.

---

[27]    Written Deposition Questions, Exhibit A ¶ 6.

[28]    *See Notice of Deposition of Oren Blonstein in Connection with Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1388]; *Notice of Deposition of Christopher Ferraro in Connection with Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1389].

[29]    *See Schedule F-1 Non-Priority Unsecured Retail Customer Claims* [Docket No. 974] at 92, line 3.1.124667 (indicating that Mr. Frishberg has 0.0331494161468271 Bitcoin, 1.66435581216726 Ethereum, and 32.7317139906052 Uniswap).

21.    On August 3, 2022, Mr. Frishberg filed a motion requesting relief from the automatic stay so that he could litigate a breach of contract claim in a Florida state court.[30]  Mr. Frishberg alleges that after the Pause Date, on July 5, 2022, he told the Debtors to close his Earn Account immediately and not to pay him any further interest; that the Debtors did not close his Earn Account and continued to pay him interest; that in so doing the Debtors breached their contract with him; and that his attempt to close his Earn Account prepetition "would mean that my assets/crypto should be held in the 'custody' account."[31]

22.    Both the Debtors and the Committee objected to Mr. Frishberg's Automatic Stay Motion.[32]  On September 1, 2022, the Court sustained the Debtors' Objection and denied the Automatic Stay Motion.  The Court noted that "Mr. Frishberg and other 'Earn Account' holders appear to be unsecured creditors of Celsius, *whether or not* they demanded a return of the balance of their earn account before the chapter 11 petitions were filed . . . ."[33]  As such, the Court ruled that Mr. Frishberg and other prepetition creditors "must await the confirmation of a chapter 11 plan" before they can receive a *pro rata* distribution, as opposed to seeking "distributions of the full amount of their prepetition claims ahead of other creditors," which is "precisely" what the automatic stay "is intended to prevent."[34]

---

[30]    *See generally Motion for Relief for a [sic] Exemption From the Automatic Stay* [Docket No. 342] (the "Automatic Stay Motion").

[31]    *See generally id.*

[32]    *See generally Debtors' Objection to Creditor Daniel A. Frishberg's Motion for Relief from Automatic Stay* [Docket No. 609] (the "Debtors' Objection"); *The Official Committee of Unsecured Creditors' Objection to Creditor Daniel A. Frishberg's Motion for Relief from the Automatic Stay* [Docket No. 620].

[33]    *Memorandum Opinion and Order Sustaining Objections to Lift Stay Motion Filed by Daniel A. Frishberg* [Docket No. 695] (the "Opinion") at 2.

[34]    *Id.* at 3.

**Response**

I.    **The Proposed Scheduling Order and the Relief Requested in the Amended Motion do not Violate Mr. Frishberg's Due Process Rights.**

23.    The Proposed Scheduling Order filed by the Debtors (reflecting an agreement with the Committee) provides the necessary and appropriate amount of notice on the Amended Motion and the relief requested therein.   Importantly, in both the Proposed Scheduling Order and the Amended Motion, the Debtors make it clear that individual defenses, such as those raised in Mr. Frishberg's Objection, are expressly reserved.   Mr. Frishberg's Objection should be overruled for the following reasons:

24.    *First*, the Proposed Scheduling Order provides parties in interest with more than twenty-one days' notice of the relief requested in the Amended Motion, which affords the parties appropriate notice under the Rules.   Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[35]   In addition, "[w]here the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect."[36]

25.    Here, the Debtors have provided adequate notice that exceeds the requirements under the Bankruptcy Rules.   Bankruptcy Rule 6004(a) provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2)."[37]   In turn, Bankruptcy Rule 2002(a)(2) provides that "the clerk,

---

[35]    *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

[36]    *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008).

[37]    Fed. R. Bankr. P. 6004(a).

or some other person as the court may direct, shall give . . . all creditors . . . at least 21 days'

notice . . . of: . . . (2) a proposed use, sale, or lease of property of the estate other than in the

ordinary course of business . . . ."[38]  The hearings on the Amended Motion are scheduled for

December 5 and 6, 2022.  The Debtors filed the Proposed Scheduling Order on November 10, 2022,

and the Amended Motion on November 11, 2022, twenty-five and twenty-four days, respectively,

before the hearing.  Therefore, the Debtors provided adequate notice in compliance with the

Bankruptcy Rules.

26.    Mr. Frishberg's reliance on *Goldberg v. Kelly*[39] to support his argument that his

"due process rights" would be violated if he is not allowed an unspecified period of time to

"analyz[e] all of the documents that Celsius has that relate to [his] case" and "depos[e] everyone

with relevant information to [his] case . . . before finally having a hearing on it" is misplaced.[40]

The issue in *Goldberg* was "whether a State that terminates public assistance payments to a

particular recipient without affording him the opportunity for an evidentiary hearing prior to

termination denies the recipient procedural due process in violation of the Due Process Clause of

the Fourteenth Amendment."[41]  The Due Process Clause of the Fourteenth Amendment prohibits

"any State" from depriving "any person of life, liberty, or property, without due process of law."[42]

The Debtors are private entities, not governmental entities, and the fact that the Amended Motion

is being heard in this Court does not transform this into a "governmental action."

---

[38]    Fed. R. Bankr. P. 2002(a)(2).

[39]    397 U.S. 254 (1970)

[40]    *See* Obj. at 3.

[41]    *Goldberg*, 397 U.S. at 256.

[42]    U.S. Const. amend. XIV.

27.    Mr. Frishberg's reliance on *Armstrong v. Manzo*[43] for the proposition that the Proposed Scheduling Order does not give him a hearing "at a meaningful time and in a meaningful manner" is similarly inapplicable.[44] *Armstrong* concerned a child-adoption proceeding under Texas state law, where Mr. Armstrong, the natural father, was not provided with notice during the entire adoption proceeding concerning his only daughter with his ex-wife.[45] Here, unlike Mr. Armstrong, who only knew that his daughter had been adopted by his ex-wife's current husband *after* the adoption proceeding, Mr. Frishberg received advance notice of the hearing at least twenty-five days *before* the date of such hearing and was aware of the proposed scheduling order at least as early as November 5, 2022, nearly two weeks before he filed his Objection.[46] Under the Proposed Scheduling Order, Mr. Frishberg may object to the relief requested in the Amended Motion and participate in the discovery process set forth in the Proposed Scheduling Order. Indeed, the Committee and the Debtors designed the schedule, in part, to provide creditors like Mr. Frishberg with the opportunity to participate in discovery related to the Amended Motion. The Debtors are making the declarants available for depositions precisely to ensure that all parties in interest, including Mr. Frishberg, will have an opportunity to explore issues relevant to the Amended Motion and the Requested Findings. At bottom, as it relates to these depositions, Mr. Frishberg has suffered no prejudice. Mr. Frishberg is scheduled to attend the depositions remotely and will have the opportunity to depose the declarants within the scope of, and in a manner consistent with, the Proposed Scheduling Order.

---

[43]    380 U.S. 545 (1965)

[44]    *See* Obj. at 2, 6.

[45]    *Armstrong*, 380 U.S. at 546–48.

[46]    *See* **Exhibit B** (Mr. Frishberg indicating to counsel to the Debtors, that he "would like to be a part of those depositions/admissions/interrogatories").

28.     Mr. Frishberg is not entitled to go on a fishing expedition that is unrelated to the relief requested in the Amended Motion, which is precisely the type of discovery he is requesting here.  He intended to seek deposition of "Alex Mashinsky, Rod Boldger (former CFO), whoever was in charge of closing accounts (earn specifically), Celsius's inhouse counsel on and around July 5th, 2022, whoever was in charge of customer support, Krissy Mashinsky, all parties to the New Jersey class action lawsuit, all insiders/people/companies who withdrew with non-public and/or insider information within 1 year of the insolvency period, and any Celsius insiders/people with non-public knowledge who bought and/or sold CEL tokens since its creation," among other parties.[47]  He intended to ask questions such as "is it true that Celsius has lost tens if not hundreds of millions of dollars to supposedly generate revenue via mining?"; "do you plan on instituting actual significant cost cutting measures to get Celsius to sub $10m total expenses a month so there is a chance of a successful sale/reorganization?"; "was a Celsius user generally able to close their account whenever they wanted to?"; and "what generally happened when a Celsius user closed their account with their assets pre-petition?"[48]

29.     Mr. Frishberg's indications, even if they constitute valid discovery requests (which they do not), do not entitle him to conduct such discovery.  "[D]iscovery is not boundless, and a court may place limits on discovery demands that are 'unreasonably cumulative or duplicative,' or in cases where 'the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving

---

[47]   **Exhibit B**.

[48]   **Exhibit C**.

the issues."[49]    The questions Mr. Frishberg intended to ask—questions pertaining to the profitability of the Debtors' mining business, the Debtors' expenses in running their businesses, and the Debtors' general dealings with other customers—are not relevant to whether the Debtors breached their contract with *him*.[50]  To the extent Mr. Frishberg sought to depose the Debtors' high level executives and in-house counsel, he has not satisfied his burden to conduct those depositions.[51]

30.    ***Second***, Mr. Frishberg's, as well as other individual creditors', individual defenses and arguments related to their Earn Accounts are expressly reserved.  That is to say, Mr. Frishberg and other creditors will have the opportunity to seek discovery related to their individual defenses to the extent such discovery is necessary or appropriate following any ruling by the Court on the contract's plain meaning.  Mr. Frishberg claims that the Debtors' "material breach of contract caused them to lose the title to the assets before the petition was filed."[52]  The Requested Findings, however, focus on whether there was a valid contract under the Terms of Use between the Debtors

---

[49]   *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp*., 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (quoting Fed. R. Civ. P. 26(b)(2)).

[50]   *See Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 179 F.R.D. 403, 405 (W.D.N.Y. 1998) (denying the defendant's motion to compel deposition of the plaintiff company's director of intellectual property when the plaintiff sought to depose the director based on a statement the director made but "has not demonstrated that [the director's] statements . . . are relevant in any way to the claims or defenses in this case"); *New York v. Solvent Chem. Co*., 214 F.R.D. 106, 112 (W.D.N.Y. 2003) (granting the third-party plaintiff's motion for a protective order barring certain discovery sought by the third-party defendant when the latter failed to show that "the deposition testimony sought is relevant" to the disputed issue).

[51]   *See In re Chevron Corp*., 749 F. Supp. 2d 141, 162 (S.D.N.Y. 2010), aff'd sub nom. *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (When faced with a request to depose adverse counsel, courts should consider "consider all of the relevant facts and circumstances, including [1] the need to depose the lawyer, [2] the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, [3] the risk of encountering privilege and work-product issues, and [4] the extent of discovery already conducted."); *Six W. Retail Acquisition*, 203 F.R.D. at 102 ("Unless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, it may be appropriate to preclude a redundant deposition of [a] highly-placed executive while allowing other witnesses with the same knowledge to be questioned.").

[52]   Obj. at 7.

and all users, and if so, whether such contracts provided that Earn Assets are property of the Debtors' estates.   The Amended Motion specifically reserves any contract defenses that an individual Account Holder may purportedly hold.[53]

31.    If Mr. Frishberg has objections to the Debtors' right to title and ownership of any assets held in the Earn Program, he is entitled to object to the Amended Motion in a manner consistent with the Proposed Scheduling Order.[54]   If Mr. Frishberg instead acknowledges the existence of a contract between him and Debtors, as he does in the Objection,[55] and alleges that his claim against the Debtors arises from the Debtors' alleged prepetition breach of such a contract, he can file a motion seeking an appropriate ruling from the Court and request relevant discovery in the context of claim administration, *after* the Court has decided whether the applicable Terms of Use form a binding contract between the Debtors and all users.[56]   What Mr. Frishberg cannot do is to delay and disrupt the briefing schedule on contract formation—a briefing schedule to which the Committee and other parties in interest, including the state regulators, have all consulted on—with irrelevant claims and discovery requests on contract defenses.[57]

---

[53]    *See* Amended Motion ¶ 16; Proposed Scheduling Order ¶ 3; Written Deposition Questions, Exhibit A ¶ 2 (the Committee acknowledging that "[t]he Debtors have also agreed that defenses to the formation of a contract would not be tried at this stage").

[54]    *See* Proposed Scheduling Order ¶ 4.

[55]    To claim that the Debtors breached a contract is to acknowledge that there is a contract for the Debtors to breach. *See.*, *e.g.*, Obj. at 2 ("material breach of contract that occurred pre-petition"); *id.* at 4 ("a breach of contract involving a sum below the preferential claim limit of $7,575, involving large amounts of fraud, and cryptocurrencies"); *id.* ("whoever drafted the contract I signed"); *id.* at 7 ("the material breach of contract caused them to lose the title").

[56]    If Mr. Frishberg would like to assert a claim against the Debtors based on the Debtors' alleged prepetition breach of contract, he has until 5:00 p.m. prevailing Eastern Time on January 3, 2023 to submit a written proof of such claim so that it is actually received by Stretto, Inc., the Debtors' claims and noticing agent in these chapter 11 cases. *See Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 1386], at ¶ 2.

[57]    Mr. Frishberg claimed that he "must be allowed to do discovery, interrogatories, admissions and depose and cross examine witnesses, specifically ones such as Alexander Mashisnky [*sic*], whoever was in charge of closing accounts at Celsius, whoever drafted the contract I signed and all of the support staff who I interacted with/the

32.     ***Third***, the Court already found that Mr. Frishberg's alleged breach of contract claim must be resolved through the appropriate channels in these chapter 11 cases.[58] The appropriate process to adjudicate the disputes raised in the Objection are through the claims process or another appropriate proceeding.

33.     The Debtors filed the Amended Motion and Proposed Scheduling Order precisely to streamline the process and obtain a ruling from the Court on the gating issue of whether the Terms of Use unambiguously provide that the Earn Assets are property of the Debtors' estates, and whether the Terms of Use are generally an enforceable contract, with all individual contract formation defenses reserved. Without a uniform decision by the Court, such issues will necessarily arise and create constant delay and distraction to these chapter-11 cases.  Granting Mr. Frishberg's Objection and postponing the schedule established by the Proposed Scheduling Order will invite all creditors to use similar tactics—alleging deprivation of due process and demanding discovery on a wide variety of issues on unspecified timelines—to delay the process every time the Debtors seek the Court's finding on an issue related to the Earn Assets.  For the foregoing reasons, the Court should enter the Proposed Scheduling Order and overrule the Objection.

## Reservation of Rights

34.     Nothing in this objection is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to

---

head of the support team, to determine what exactly happened, and why my account was not closed, as it should have been." Obj. at 4–5.  To the extent that any of these discovery requests are valid, they relate to contract defenses, not the Requested Findings.  *See* Written Deposition Questions, Exhibit A ¶ 2 (the Committee recognizing that "[m]any contract defenses . . . may require further discovery that is not practicable in the currently contemplated trial schedule.").

[58]   *See* Opinion at 3 ("Assuming that Mr. Frishberg files a timely proof of claim, or if the Debtors' schedule his claim as undisputed, or, if disputed, his claim is allowed in the claims allowance process, Mr. Frishberg will receive a pro rata distribution"; "[t]o receive a distribution, Mr. Frishberg and other prepetition creditors must await the confirmation of a chapter 11 plan.").

dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this objection or any order granting the relief requested by this objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this objection are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: November 21, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**From:**
**Sent:** Tuesday, November 8, 2022 6:13 PM
**To:** Latona, Dan <dan.latona@kirkland.com>
**Cc:** Koenig, Chris <chris.koenig@kirkland.com>; SHARA.CORNELL@usdoj.gov; Sussberg, Josh <jsussberg@kirkland.com>
**Subject:** Re: Depositions etc

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Dear Dan/Kirkland,

Do you have any update on the depositions? I heard on social media that there is some scheduling order? I would like to depose the previously listed people, especially Alexander Mashinsky/Krissy Mashinsky because I don't believe they have been deposed. Would be a great time to ask them where that $600m went.

I reserve all rights

Sincerely
Daniel Frishberg

## Exhibit B

On Sun, Nov 6, 2022 at 12:31 AM Latona, Dan <dan.latona@kirkland.com> wrote:

We will revert.

**Dan Latona**

-------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 3445
**F** +1 312 862 2200
-------------------------------------------------
dan.latona@kirkland.com

> On Nov 5, 2022, at 11:28 PM,                           wrote:

Dear Kirkland and Ellis,

I saw on social media that you are planning on having some depositions/admissions/interrogatories, and I would like to be a part of it, since this will be used to decide property rights for all of earn. I would like to be a part of those depositions/admissions/interrogatories. There are quite a few people who I would like to depose/interrogate including but not limited to (reserve the right to add more to the list, depending on what info comes to light): Alex Mashinsky, Rod Boldger (former CFO), whoever was in charge of closing accounts (earn specifically), Celsius's inhouse counsel on and around July 5th, 2022, whoever was in charge of customer support, Krissy Mashinsky, all parties to the New Jersey class action lawsuit, all insiders/people/companies who withdrew with *non-public* and/or insider information within 1 year of the **insolvency** period, and any Celsius insiders/people with non-public knowledge who bought and/or sold CEL tokens since its creation. It is important that we cover the potential implications of insider trading, ponzi scheme, verbal and written contract modifications and breach of contract/conspiracy to breach contract by not allowing me to close my account, when the contract clearly states I can.

I reserve any and all rights.

Sincerely Daniel Frishberg

## **Exhibit C**

**From:** 
**Sent:** Monday, November 14, 2022 3:21 PM
**To:** #CelsiusRx <CelsiusRx@kirkland.com>; Koenig, Chris <chris.koenig@kirkland.com>; Latona, Dan <dan.latona@kirkland.com>; Sussberg, Josh <jsussberg@kirkland.com>
**Subject:** Question for Depositions

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Dear Debtors,

I would like to ask some questions at the deposition.

Q: "is it true that Celsius has lost tens if not hundreds of millions of dollars to supposedly generate revenue via mining?"
Q:"do you plan on instituting actual significant cost cutting measures to get Celsius to sub $10m total expenses a month so there is a chance of a successful sale/reorganization?"
Q: "was a Celsius user generally able to close their account whenever they wanted to?"
Q: "what generally happened when a Celsius user closed their account with their assets pre-petition?"

He said:
"I further understand that use of the Debtors' services is expressly conditioned on consent to being bound by and remaining in compliance with the Terms of Use."
(From Chris Ferraro's Declaration)

Sincerely Daniel Frishberg