Rebecca Gallagher
*Pro se creditor*
November 20, 2022

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al*, 1 | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered.) |

**REBECCA GALLAGHER'S OBJECTION TO THE DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING OWNERSHIP OF ASSETS IN THE DEBTORS' EARN PROGRAM, (II) PERMITTING THE SALE OF STABLECOINS IN THE ORDINARY COURSE AND (III) GRANTING RELATED RELIEF**

I, Rebecca Gallagher, file this objection (the "Objection") to the Debtors's Amended Motion For Entry Of An Order (I) Establishing Ownership Of Assets In The Debtors' Earn Program, (II) Permitting The Sale Of Stablecoins In The Ordinary Course And (III) Granting Related Relief [Docket No. 1325 (the "Motion"), Docket No. 1324 ("the Scheduling Order")].

This objection follows my previous filings, Docket No. 136 (Rebecca Gallagher Letter to The Honorable Martin Glenn dated July 19, 2022) and Docket No. 901 (Objection to the Debtor's motion permitting the sale of stablecoins). I am a Celsius Network LLC Creditor whose funds are in the Earn program. I hereby declare under penalty of perjury that everything in this objection is true and correct to the best of my knowledge, information, and belief.

In support of this Objection, I state and believe it is plain and clear that I retain all rights of title to my deposited funds due to fraudulent misrepresentation, oral modification to the terms of service, the terms of service being ambiguous and not plain, and because Celsius was operating illegally by selling unregistered securities.

---

1   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Background and Preliminary Statement**

Like most depositors who sent their hard earned funds and life savings to the Celsius platform, I believed that I was participating in a low-risk, high-interest alternative to a bank savings account. That yield was generated through highly collateralized peer to peer lending on the platform, as well as through carefully vetted institutional clients, none of whom, according to CEO Mashinsky, had ever defaulted on a loan to date. That should such a default ever happen, Celsius would simply liquidate the collateral and customer funds would remain protected. That there could never be a run on the bank at Celsius as "unlike say Deutsche Bank, who engages in fractional reserve banking and who lend out $50 for every $1 they hold, Celsius never lends more than 50% to 75% of the assets that they have on balance." (1) We were assured that Celsius was fully regulated and compliant; a safe place to keep our crypto, boasting military grade security. At the time I first sent my funds, on 30 April & 1-3 May 2021, they had an impressive $13 billion in assets under management and were trusted by a quarter of a million customers worldwide.

When conducting research prior to making my decision, I relied heavily on listening to countless hours of AMAs, YouTube videos of Mashinsky interviews, and public statements that described how the services Celsius offered worked and under what terms. It is notable that not once did Mashinsky ever mention that ownership of your coins would transfer to Celsius upon transfer to their platform. Instead I, and countless other unsuspecting customers, were lured by highly deceptive marketing statements and false reassurances about the safety of "our coins."

One such interview, the very important 18th April 2021 Real Vision Crypto The Interview with Alex Mashinsky conducted by Ash Bennington, (2) played a very large part in my decision. In that interview I found Alex Mashinsky's rags to riches immigrant story particularly endearing.

The fact that Alex had been involved in several other unicorn startups was reassuring and added credibility. His desire to take care of the "little guy" (the "single mom, the retired person, the college student who doesn't have a lot" give the "little guy" access to the kind of financial freedom usually reserved for only the wealthy) (3) was extremely compelling.

Learning that they professed to be one of the safest places to hold your assets was comforting. I had just sold my house, as that was necessary to provide for my impending retirement years. I was delighted to believe I had found a safe place to HODL that would provide enough yield to live comfortably on for the rest of my life, whilst my coins continued to grow in value.

It is devastating to me that I could be robbed of all my property (my house that was once safely in a Trust for my heirs) and be left to face a future living below the poverty level, possibly reliant on welfare, if the Debtors are allowed to transfer ownership of my property to themselves.

---

1  AMA question What happens if there is a "Bank Run" on Celsius?  Apr 30 2021 Timestamp 1:07:29
2  https://youtu.be/pDxa6MkWRUI
3. Challenging the Banks, Celsius on the Cryptowriter Podcast  April 16, 2021 Timestamp 20:19

I am not an attorney and cannot afford one now, but Judge Glenn, you said you want the fight over ownership to be a fair fight, I am here to fight for my life savings, my financial property and my financial future. I am here to show the TOS cannot possibly be ruled legal for the following reasons:

- they were fraudulently misrepresented and modified by all the oral and written statements Alex Mashinsky made.
- Proper notice and proper explanation of their outrageous and unreasonable changes was not given.
- They are clearly ambiguous; multiple sentences in the contract stating we *loan* our assets, another sentence referring to transferring title.
- Celsius was operating illegally by selling unregistered securities, and was out of compliance with many State regulators and the SEC. Therefore, all versions of the Terms of Service contract are illegal and cannot be deemed binding over customers and furthermore, any claim to ownership of customer coins is not legal either.

## **Misleading Public statements of Terms and Conditions I heard and relied upon**

In the Real Vision April 18th 2021 interview available on YouTube, I heard the following statements from Mashinsky that greatly influenced me:

"When we launched Celsius, it was 100% about yield, showing people how they can take BTC and ETH and create yield. All you had to do was take *your* coin, deposit it in this wallet and magically it created more BTC or ETH." (Timestamp 16:49 mins)

There was no mention of transferring ownership or Title of your coin to Celsius. Actually it was described as lending your coins to Celsius and giving them permission to use your coins to generate yield, as is also expressed in **all** versions of the written Terms of Service.

"We are like an 80/20 LPGP relationship. Our users *lend* us their coins, we deploy the coins and earn yield and we give 80% back to the depositors." (Timestamp 19:00 mins.)

As already pointed out by Cameron Crews in his objection (1), every time Mashinsky referred to customer deposits as customers' funds as "your coins", "your crypto" (Crews Objection, Exhibits B–E), he was interpreting and clarifying to the user the intended meaning of the Celsius contract itself. Affirming that the funds are the user's funds, and therefore the user's property.

Importantly, as pointed out by Jarno Öberg in his joinder to Cameron Crew's objection, (2(C5)) "Celsius has expressed that in the event of the death of the customer they generally no longer have an effective interest in their deposits. Instead they will generally return the deposits to the

---

1   Cam Crews Obj. Docket 914. https://cases.stretto.com/public/x191/11749/PLEADINGS/ 11749092822800000000102.pdf
2   Jarno Öberg Joinder, Doc 951 https://cases.stretto.com/public/x191/11749/PLEADINGS/11749100322800000000087.pdf

inheritors of the deceased person's estate. If the matter was different, they would have to make this explicit in the Terms of Service. Celsius would then be able to demand ownership of the deceased's funds by reasons of stronger title than the person inheriting the deposits would have towards them. But the contract doesn't give that title to Celsius, and neither do they demand it."

Jarno Öberg makes the point quite clearly, that the depositor has the greater title to their coins and Celsius has the lesser title. If Celsius claimed the greater title to their customers' funds, why would they "strangely care about their greater title only while the customer is alive."

**Misleading Statements about the rehypothecation risks:**

These risks were largely brushed aside:

"The borrowers give us collateral, these are not naked loans." (Timestamp 24 mins)
This was later discovered to be an untrue statement. Celsius was making **uncollateralized** loans according to insider Anastasia Golovina, as detailed later in this motion. (See Page 9)

With retail "we have 3 times the assets that we hold against what we lend out, so the risk is very low. So if we need to liquidate, we just liquidate." On the institutional side "we have mega, multi billion dollar companies, the biggest traders on Wall Street… They give us less than 100% collateral because they have such large balance sheets. Most of our business is with these onshore institutional guys…. We also have smaller hedge funds … Hong-Kong based or Singapore-based. They will post more than 100% collateral, so they will give us the asset they have, most of them are dollar denominated, so they will give us 150% in dollars, which we need to lend out anyway." (Timestamp 26 mins onwards)

A rosy picture of operations and healthy risk management is painted when in reality the hole in the balance sheet already existed. Right up to June 2022 and the pause, Mashinsky continued making such assurances. In the June 10 2022 AMA he stated: "Celsius has billions in liquidity, we provide immediate access to anyone who needs access to the liquidity. That includes institutions and that includes people who want to get *their* (italics added) coins back." (Timestamp 9 mins)

**Misleading Statements Regarding Defi Risks:**

"We have maybe 10% of our assets in Defi" (Timestamp 28mins) A bald-faced lie.

He then warns about the dangers of Defi if you try to do it yourself, the risk of impermanent loss, the danger of blindly chasing yield when you don't know what you are doing.

"Our job is effectively to be the shepherds here. To keep people away from taking these real risky bets and find the places where you can earn good yield and not take a lot of risk. *That's what we do better than anybody else in crypto.*" (italics added) (Timestamp 29 mins)
This also turned out not to be the case and risky Defi practices led, in part, to the hole.

**Misleading Statements Regarding being regulatory compliant:**

"Celsius from day one, one of the first things we did… was register with the SEC, register with FINCEN, deliver our White Paper, explain to everyone what we are doing. We filed with the FCA… We believe in doing KYC and AML on every one of our users… It is a good thing for the community. Our job is to to protect the community from bad apples. If we use regulation to keep the good apples in and the bad apples out it is good for the community. So instead of looking at it as, how do we avoid the law, or how do we skirt the law, or how do we go offshore to not follow the law, we really need to take the good parts of the law and use them to make the community more powerful." (Timestamp 36:22 mins)

"If you issue an initial coin offering and you do not register with the SEC and they think it is a security they're going to file a lawsuit against you… We didn't know if our coin was a security or not so we filed with the SEC, it takes less than one day of work to file with the SEC… It's just three pages of information that you have to do. (Timestamp 40:04 mins)

"We operate in over 100 countries, we don't have a single issue with a single regulator in a single country because we follow all the rules." (Timestamp 41 mins)

"Currently we are the only company in the world that offers the yield service in New York State because… we found someone who had the Bit license and integrated with them." (42 mins)

We always act in the best interests of our depositors. Again, I am the largest depositor, so it's easy for me to act in my own best interest." (Timestamp 50:56 mins)

It turns out that Celsius was in fact the bad apple, breaking nearly every term of service they promised to customers; not actually registered with the SEC or any State Regulatory bodies; making thousands of risky bets in Defi, losing the keys to wallets and issuing naked loans. All of this whilst, at the same time, giving the misleading impression of being regulatory compliant.

Projecting this fraudulent compliant impression engendered a false sense of security and trust in the Company and I unsuspectingly continued to deposit precious funds onto the platform, including my final years wages in December 2021 and April 2022. I and many others were oblivious to what was really going on behind the scenes, and unaware of the existence of an ever-growing hole. All of the above lies and misrepresentations call for a ruling of unconscionability and gross impropriety; clearly grounds that the TOS cannot be enforced as written.

The Examiner is currently looking into the verbal statements of Alex Mashinksy and her findings will no doubt flesh out further what has been stated here.

**The TOS do not include a clause to prevent oral modification:**

Celsius communicated with its customer base via an electronic platform. They communicated not just via the App or Website, but via Cel Bites and via the weekly AMAs where customers could interact directly with the CEO. Mashinksy's oral public statements to his community form an electronic body of extrinsic evidence that must be seen to work in conjunction with the TOS and able to modify them. They must be seen as forming part of the electronic TOS as they are the means Celsius used to disseminate pertinent information and updates to the customer. Whereas under normal circumstance the terms of an electronic contract relate to a product or service the customer is agreeing to anonymously with a "click" of a mouse and having no direct interaction with the provider, in this situation we have the extraordinary circumstance of the CEO personally informing us every week of pertinent updates and being able to interact with him. This is unprecedented. Although under New York Law "[I]n *general*… a written agreement that expressly states it can be modified in writing cannot be modified orally" Towers Charter & Marine Corp v Cadillac Ins Co. In this case, based on all of the above, we have seen the situation is completely different. We see evidence of the electronic modification of electronic TOS.

Furthermore, in the State of New Jersey, where Celsius is currently headquartered, there has been no rule to say that oral modification is unenforceable. Actually, I signed up to the Earn Program when Celsius was headquartered in the UK where the golden rule dating from 1670, "your word is your bond" is enforceable; public statements and promises are considered binding, as they are in many States here in the USA.

As stated in the article "My Word is My Bond: Are Oral Contracts Enforceable?" (1)

> "In general, a contract does not have to be in writing to be enforceable. Of course, a written contract is usually best, because it clearly sets out the purpose of the contract and the obligations of each party under the contract. However, **in today's business world, people often make oral agreements believing and intending that both parties to the agreement will honor their obligations**… (emphasis added)
>
> In Florida, the requirements of a **valid contract, whether oral or written**, are always the same: offer, acceptance, consideration and sufficiently specific terms…
>
> When one seeks to prove a valid oral contract, one generally needs to look at things such as letters and e-mails between the parties, and the **conduct and actions of the parties.** "

---

1    https://goldenlawfl.com/my-word-bond-oral-contracts-enforceable/

As a British Citizen signing up to a company located in the UK, I took the oral statements about coins belonging to customers to be binding because of "my word is my bond." I believe they can be interpreted as binding in the State of New Jersey by this Court. Therefore, I hold Celsius to their "word' and all the verbal affirmations of my coins being my property.

**The language of each of the versions of the written TOS is ambiguous and not plain:**

As referenced in Stretto Doc 1292 Filed by Togut, Segal & Segal pgs 16 & 17 in this case:
"30. A contract is unambiguous "if the language it uses has a 'definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." Greenfield, 98 N.Y. 2d at 569 (citations omitted); Maverick Tube Corp., 595 F.3d at 466 ("An ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.") (internal quotation marks and citations omitted). Thus, "if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." Greenfield, 98 N.Y. 2d at 569-70. (citations omitted).

31. New York courts construe issues of ambiguity against the drafting party— here, the Debtors. Jacobson v. Sassower, 66 N.Y.2d 991, 993 (1985) (1) ("[I]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language."). The reason for this rule is that the party who is drafting the contract is presumably weighting the contract in its favor, and heavily."

With the Celsius Earn program, the Terms of Use were clearly ambiguous and not plain. The language used was confusing, contradictory, open to misconception, and not precise to a reasonably intelligent person. Repeated statements in the written TOS say customers were **lending** their coins to Celsius, or entering into **an open ended loan of their digital assets.** How can they both be lending their coins, which would imply ownership remained with the lender, and also transferring all rights and title to them? These are two separate things. This is confusing. To a reasonably intelligent person who has examined the terminology of all the public statements in the AMAs, the only logical conclusion to come to, by such a person who is cognizant of the customs, practices, usages and terminology of Celsius' and their business model, is that customer assets in Earn are just a loan. A loan that ceases when the funds are removed to an external wallet belonging to the customer. I quote multiple instances from the TOS where this is stated:-

"CELSIUS IS A LENDING AND BORROWING PLATFORM. WHEN YOU
TRANSFER DIGITAL ASSETS TO CELSIUS, THOSE DIGITAL ASSETS
ARE A **LOAN** FROM YOU TO CELSIUS, IN ACCORDANCE WITH THE

---

1.  https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911062280000000005.pdf

Page 7 of 14

TERMS HEREOF. UNDER NO CIRCUMSTANCES DOES CELSIUS HOLD DIGITAL ASSETS IN CUSTODY ON YOUR BEHALF AS PART OF THE SERVICES GOVERNED BY THESE TERMS"  Stretto TOS Docket 393 page 319 of 1126

"Your Celsius Account is not a deposit or checking account, and Celsius does not hold any Digital Assets on your behalf. All Eligible Digital Asset balances on your Account represent Digital Assets either **loaned by you to Celsius** or held by Celsius as collateral, and therefore, owned, held and/or controlled by Celsius (under the applicable Service, as further detailed herein), and subject to Celsius' obligation to deliver such Digital Assets back to you upon the termination of the applicable Service." TOS Docket 393 page 405 (Version 6) and page 454 (Version 7)

"B. Earn Rewards
Our Earn Rewards service allows you to earn a financing fee from Celsius, referred to as "Rewards", in the form of Digital Assets (either in-kind, i.e. in the same Digital Asset you deliver, or in CEL Tokens, where permitted) in exchange for **entering into open-ended loans** of your Eligible Digital Assets to Celsius under the terms hereof. By **lending** your Eligible Digital Assets to Celsius you grant Celsius all rights and title to such Digital Assets, for Celsius to use in its sole discretion.
The balance of Eligible Digital Assets **loaned** by you to Celsius, and any Rewards gained thereon (see further Section 12 below,"How Rewards are Calculated and Earned") are visible via your Celsius Account. You may **terminate any loan to Celsius at any time,** and request that Celsius return the borrowed Eligible Digital Assets and deliver any Rewards accrued from the Earn Rewards service, in each case **by transferring such Eligible Digital Assets and Rewards to your external Virtual Wallet** (in accordance with Section 11 below, "Withdrawals")."
Stretto TOS Docket 393 page 330, page 405,  (Version 6) and page 455 (Version 7)

"Earn Rewards is not an investment program nor a speculative tool. Rather, you are earning Rewards as a financing fee **on the loan of Digital Assets you have transferred to Celsius,** in accordance with the rates published by Celsius from time to time, in accordance with these Terms.
By virtue of agreeing to these Terms and transferring any Eligible Digital Assets to the Virtual Wallet provided by Celsius via our platform (which, for the avoidance of doubt, shall be seen as completed only upon the receipt of such Eligible Digital Assets in the applicable Virtual Wallet controlled by Celsius), you agree **to lend** such Digital Assets to Celsius in accordance with the terms"
Stretto TOS Docket 393 page 330, page 406 (Version 6) and page 455 (Version 7)

It is also to be noted that during the 341 Meeting Chris Ferraro made the statement "customer coins that we have in Fireblocks." Acknowledging that the coins belong to the customer and not Celsius.

**Do each applicable version of the Terms of Use form a binding contract with users who transferred assets to the Debtors while such Terms of Use were in effect, and are subsequent amendments to the Terms of Use binding on users who transferred their assets to the Debtors prior to the effectiveness of the subsequently amended Terms of Use?**

In the written terms of service that apply to me, Versions 5 onward, Celsius repeatedly says that they are not a Bank.

"Your Account is not a bank account, deposit account, savings accounts,
checking account, or any other type of asset account and should not be
characterized as a banking product or service."  Stretto TOS Docket 393 page 321

"ELIGIBLE DIGITAL ASSETS ARE NOT LEGAL TENDER. CELSIUS IS NOT A
BANK OR DEPOSITORY INSTITUTION, AND YOUR CELSIUS
WALLET ACCOUNT IS NOT A DEPOSIT ACCOUNT."
Stretto TOS Docket 393 page 341 and page 526

As Celsius is not a Bank, by their own admission here, and do not hold any banking licenses, they therefore do not have a valid legal claim to ownership of my digital assets no matter what version of the terms of use they claim are in effect.

In addition, all the blatant lies, deceptions and fraudulent misrepresentations outlined earlier in this objection, clearly break Celsius's side of the contract and render it null and void. The moment they stopped doing what they promised they would do with our assets, they forfeit any claim of ownership to them. Their claim to ownership was contingent upon them performing the services they repeatedly promised to perform both orally and through their advertising literature: prudently deploying our crypto deposits with over collateralized loans.

As per a Coin Desk Business article What Crypto Lender Celsius Isn't Telling Its Depositors" (1) Celsius was taking more risks than its depositors realized. The article suggests that Celsius was making **uncollateralized** loans according to insider Anastasia Golovina, investing deposits in perpetual swaps, futures-like contracts with no expiry date, and other high risk practices. Celsius clearly broke the promise to "always act in the customer's best interests." Therefore, they cannot legitimately claim, in this court, that ownership of customer coins remain with them.

---

1 What Crypto Lender Celsius Isn't Telling Its Depositors. Read the full article on CoinDesk:
https://www.coindesk.com/business/2020/07/28/what-crypto-lender-celsius-isnt-telling-its-depositors/

**Celsius promised to give fair notice of any changes to the TOS**

321. Changes in Terms
"Please be aware that the terms and conditions governing Celsius Wallets or the Services can change over time. We reserve the right to discontinue or make changes to any of the Services. We may change these Terms, and we may add to or delete from these Terms, and the updated version will supersede all prior versions. We will **provide notice of changes, additions, and deletions, as required by law.** If we have provided advance notice and you do not agree with a change, you may close your Celsius WalletAccount(s) and demand repayment of outstanding loans before the effective date of the change".
Stretto TOS Docket 393 page 382

It would be normal for a person of reasonable intelligence to expect a 21 day notice in writing to any changes of TOS as required by law for financial institutions. Also, due to the large size of the TOS document, that any pertinent changes of significance would be specifically highlighted and drawn attention to by Celsius, who claim to pride themselves on transparency. Instead these changes were glossed over, obfuscated, not given with proper notice and sneakily changed to benefit Celsius at the expense of Depositors, "weighting the contract in its favor, and heavily."

On April 11 2022, just three days after the Bitcoin Miami Celsius Meetup which I attended, Celsius announced, out of the blue, and with no mention of it at the Meetup, the new Custody program and TOS. This gave only four days notice before the new terms would take effect on April 15, 2022. (1) This did not give customers the proper 21 day legal notice to be able to review any changes, nor to realize that Celsius was attempting to steal their coins via the new terms.

It was very disingenuous, upon the creation of Custody, to not clearly explain to customers the true consequences of the new TOS, what was really happening and why. There was a complete absence of explanation to unaccredited US investors of the potential implications of remaining in the Earn program and not escaping to the safety of Custody, though many insiders knew and did so. The new TOS were not addressed in the AMA that week, when it was the custom and practice of Celsius to present new information through that vehicle. Instead it felt like Celsius lured US unaccredited customers into depositing more funds before the deadline, by telling them that afterwards it would no longer be possible. I personally sent another $20,000 USDC at that point.

We were also forced into accepting the new TOS passively; by default and through trickery. The only way to open the Celsius App and check your balance was to click you accepted the terms of service to gain access. The App allowed you to "click" and enter without having read the new TOS, rather than requiring you to scroll through them in their entirety prior to acceptance. Uninformed consent is not true consent. It was very easy for a normal person to be unaware of what they were being bound by as was I. The TOS were not made reasonably conspicuous because of the Clickwrap nature of the electronic agreement. Furthermore, having been told by

---

1    https://celsiusnetwork.medium.com/important-celsius-update-to-our-us-clients-6df471420cc7

Mashinsky that nothing much had changed, many skipped reading them altogether. For example, when the TOS were changed in July 2021, Alex told us there was nothing to be concerned about and this was just a reflection of the move from the UK to the US. Of note, the latest TOS were updated on September 29 2022 after the Bankruptcy, with no notice or explanation.

**The terms of service do not form a binding contract because Celsius was out of compliance with many State regulators, the United States Security Commission (The SEC), and was operating illegally without the proper licenses**

The terms of service describe the contract that customers enter into with Celsius as "a loan". However, regulators have found the Earn Program not to be a loan, but an unregistered security. This being the case, the Earn Program cannot legally be offered as a product, and its terms of service cannot be deemed legally binding. As such, stating that all right and title to customer coins belongs to Celsius becomes a moot point. Such a statement cannot be seen as legally binding if the company making it is not operating legally and does not possess the licenses to do so any time soon.

The states of New Jersey, Texas and Vermont, all filed Cease and Desist orders against Celsius.

    A. On September 17 2021 the <u>State of New Jersey Bureau of Securities</u> filed a Summary Cease and Desist Order which found as a conclusion of law that Celsius offered and sold unregistered securities.

    38  The Earn Rewards product is a security as defined in N.J.S.A. 49:3-49(m).

    39  The Earn Rewards product was and is required to be registered with the Bureau pursuant to N.J.S.A. 49:3-60

    40  Celsius has offered and sold unregistered securities in violation of N.J.S.A. 49:3-60 and continues to do so.

In line 5 they stated:

"The Bureau Chief enters this Order to protect the investing public by halting the offer and sale of these unregistered securities, and the contribution of additional assets to existing accounts. Nothing in this order shall preclude Celsius or any of its affiliates, from paying interest, also known as "Rewards" on the existing Celsius Earn Rewards accounts or refunding principal to the Earn Rewards investors consistent with Celsius Terms of Use." (1)

---

1    https://www.nj.gov/oag/newsreleases21/Celsius-Order-9.17.21.pdf

B. The Texas State Securities Board filed a Notice of Hearing against Celsius on February 14 2022 giving the following reasons:

26. Respondents are not licensed as a Money Service Business in Texas to conduct currency exchange or money transmission activities defined by Chapter 151 of the Texas Finance Code.

27. Respondents are not licensed with the United States Securities and Exchange Commission. Additionally, they are not registered with the Texas State Securities Board to offer or sell securities in Texas, as required by Section 12 of the Securities Act, and the Celsius Earn Interest-Bearing Accounts are not registered or permitted for sale in Texas, as required by Section 7 of the Securities Act. Accordingly, Respondents are violating laws designed to protect Texans.

One of the reasons given was to protect the unsuspecting investing public from undisclosed risks.

30  Respondents are not disclosing material information necessary for investors to make an informed decision, including *critical material information about the risks* associated with  purchasing its unregistered securities. (1)

C. On August 12 2022 the State of Vermont Department of Financial Regulation filed an Ex Party Order to Cease and Desist operations. (2) In their filing they made the following points:

Since June 2018, Respondents have been, at least in part, financing their asset deployment and investing activities through the sale of unregistered securities in the form of interest-earning cryptocurrency accounts (the "Celsius Earn Accounts") to residents of Vermont and other states. (Line 10)

Respondents did not file or cause to be filed a registration statement with the SEC in connection with the offer and sale of the Celsius Earn Accounts. (Line 38)

Respondents are not disclosing — and at all relevant times have not disclosed — material information to Celsius Earn Account investors that issuers of registered securities must include in a registration statement and provide to prospective investors in the form of a prospectus pursuant to Subchapter 3 of the Securities Act and Section 6-1 of the Vermont Securities Regulations. (Line 39).

---

1    https://www.ssb.texas.gov/sites/default/files/2021-09/20210917_FINAL_Celsius_NOH_js_signed.pdf
2    https://dfr.vermont.gov/sites/finreg/files/regbul/Celsius%20Order%20for%20Ex%20Parte%20Cease%20and%20Desist.pdf

If Celsius does not possess money transmitter licenses or licenses to sell securities, and the Earn Program is an unregistered security, then the Earn Product is illegal. If it is illegal, its terms and conditions regarding ownership are non-binding whatever the version.

Due to all of the above, I do not concede that Celsius acquired any legitimate property interest in, or ownership rights, to coins that I deposited into the Earn Program. They remain my property; my life savings, my retirement fund and belong to me.

I respectfully ask the Court to rule the Terms of Service void, non-binding, and illegal. I request that my digital assets BTC, ETH, USDC Stablecoins, ADA and TZ be ruled my property and be set aside to be returned to me in kind from the Earn Program.

I do not permit my USDC Stablecoins, nor any of my other coins, to be sold to fund the debtors operations.

I ask to be excluded from the forced participation in a re-organization by a company that has lied, deceived and cheated its customers. No reasonably intelligent person would trust Celsius ever again after the discovery they attempted to steal customer assets. There is no future for Celsius, so let's stop the burn of remaining customer funds.

I reserve the right to ask for a share of equity in any illiquid assets that customer funds have been used to purchase, a share in any future insider clawbacks, and a share in the return of loaned or staked assets to fill any shortfall in my original deposit.

I reserve the right to file an adversary proceeding and more claims if I deem this necessary.

## Notice

Notice of this Objection has been served on counsel to the Debtors, the Office of the United States Trustee, and Counsel to the Committee and the Ad Hoc Groups, and all other parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. Under the Circumstances, I submit that such notice is adequate and sufficient, and that no other or further notice is required.

Conclusion

1. WHEREFORE, Rebecca Gallagher, respectfully requests that this Court (i) determines that her cryptocurrency is not property of the estate; that the Debtors' proposed Scheduling Order and Motion be DENIED, and this Objection be SUSTAINED.

2. Dated: November 20, 2022

   Dickson, TN

   Respectfully submitted,

   By: /s/ Rebecca Gallagher

   Pro Se