

## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Vanessa Salvo says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Tuesday, November 22, 2022**, the following legal advertisement – **CELSIUS NETWORK LLC** was published in the national edition of **USA TODAY.**

*Vanessa Salvo*
Principal Clerk of USA TODAY
November 22, 2022

# Friends of UVa suspect seek answers

## Those who grew up with Chris Jones Jr. stunned

**Josh Peter** USA TODAY

Pastor Jameson McLaughlin wanted to make something clear last week as he spoke about the 23-year-old man charged with second-degree murder in the deaths of three University of Virginia football players.

"My heart certainly goes out to those families," McLaughlin told USA TODAY Sports, referring to the victims. "This was tragic, traumatic.

"But this is also devastating because I saw something in him as well."

He was referring to Christopher Darnell Jones Jr., who last Monday was charged with killing three football players and injuring two other people during a shooting rampage on a charter bus that had returned to the university's campus in Charlottesville from a field trip to Washington, D.C.

Jones was arrested at 11 a.m. Monday, ending a 12-hour manhunt after the university campus was locked down the night before.

D'Sean Perry, Lavel Davis Jr. and Devin Chandler were killed in the shootings.

Another football player, Mike Hollins, was shot in the back and is recovering from two surgeries, his mother told ESPN.

ESPN identified a fifth shooting victim as Marlee Morgan.

In 2018, Jones was a walk-on football player at Virginia – before Perry, Davis and Chandler joined the team. But Jones is remembered for more than that by people like McLaughlin, senior pastor at New Hope Baptist Church in Petersburg, Virginia.

At Petersburg High School, Jones was a standout running back and linebacker. He also was president of the Key Club and a member of the National Honor Society. He graduated with a 4.2 grade point average and tutored teammates during study hall.

"He was a leader on and off the field," said McLaughlin, 42, who played football at Petersburg High and has remained involved with the program. "Even though he was short in stature, I think he was only 5-9, he was one of those guys that stood out."

Jones' stint on Virginia's football team ended after about a month, during which he was hampered by an injury, said Jackson Matteo, a graduate assistant for UVa in 2018. But Jones remained enrolled at the university and was a senior at the time of the fatal shootings Sunday.

McLaughlin said the reaction was shock when the news of Jones' arrest reached Petersburg, a city of about 33,000 and approximately 100 miles east of the University of Virginia.

But soon after, he said, the focus turned to the possible motive.

"Was it bullying?" McLaughlin said. "That's one consistent question I've heard."

Speculation of bullying grew following comments by Christopher Darnell Jones Sr., father of the man accused of the killings.

During an interview with the NBC affiliate in Richmond last Monday, Christopher Darnell Jones Sr. said his son told him "people were picking on him." Jones' father said the conversation took place about a month ago, and it was the last time he had seen his son.

"He had some problems the last time I talked to him," Christopher Darnell Jones Sr. said during the interview. "He said some people were picking on him or whatever, he didn't know how to handle it and I told him just go to school, don't pay it any mind.

"He was really paranoid when I talked to him, but he wouldn't tell me everything. He was a very sensitive young man."

Kayreign Lundy, who played



A shooting Nov. 13 at the University of Virginia left three dead and two injured. Lavel Davis Jr., Devin Chandler and D'Sean Perry, all members of the football team, were killed.
MEGAN SMITH/USA TODAY

> "This is not the Chris that we know. ... When we had study halls, Chris would come in, and whoever needed help he would bring them up."
> 
> **Kayreign Lundy**
> A security officer who played football with Christopher Darnell Jones Jr. at Petersburg High School in 2017

football with Jones at Petersburg High in 2017, said he's been in contact with teammates since the shootings.

"The bullying, we've heard rumors," Lundy told USA TODAY Sports, "but we didn't think they were serious. Because Chris is not that type of guy to get bullied, how big he was and how well he gets along with others."

Lundy pointed out that Jones was the player who rallied the Petersburg High football team when it needed a spark, and he also tutored teammates in English and math.

"When we had study halls, Chris would come in, and whoever needed help he would bring them up," Lundy said. "When people were down, (he was) always bringing people up, always keeping their mind up, always keeping their head up."

But Chris Jones was a young man known differently by those familiar with his past.

### Jones was bullied in school, friend says

A story published by the Richmond Times-Dispatch in 2018 chronicled Jones' struggles and successes. Jones acknowledged anger issues that he said resulted in fights at school and suspension, and he traced some of his behavioral issues to his early years.

He said his father left when he was 5 years old, and they did not see each other until Jones was in high school.

Christopher Darnell Jones Jr. was picked on at school, one of his friends and football teammates in middle school told The Washington Post in a story published last week.

"Chris would wear outdated clothes and outdated shoes that a lot of people did not wear at the time, and they'd make fun of him because of his situation," Brion Logan told The Washington Post. "He was always a nice person. He grew up in an unfortunate situation with his dad not being in his life too much and his mom not being the best off financially."

Jourdan Davis-Dewitt, a former track teammate when Jones was a high school freshman and sophomore, had similar recollections.

"He would only lash out when he was bullied and picked on, which happened a lot," Davis-Dewitt told USA TODAY Sports. "I wouldn't call him a danger. I wouldn't even say his anger got the best of him in high school because it didn't. He used sports as his outlet to kind of escape what was going on."

Jones told the Richmond Times-Dispatch he was teased because he was a kid from the projects who was raising his hand in class. But much of the time, he said, the other kids didn't expect a kid from the projects to raise his hand in class.

"I would get upset because my intelligence was being insulted," he told the newspaper. "Kids would pick on me – 'Why did you do that? Why did you answer that question?' " Jones said. "And in that world, disrespect means you should fight."

But the fighting stopped, according to Jones, when before his junior year he moved in with his father and paternal grandmother and transferred to Petersburg High School. He told the newspaper that mentors helped him let go of his anger. Lundy, one of Jones' teammates at Petersburg, said he was unaware of any bullying.

But trouble found Jones again while he was attending Virginia.

In 2021, Jones was involved in a concealed weapon violation, UVa Police Chief Timothy Longo Sr. told reporters last Monday.

"Through the course of the threat assessment team's investigation, we learned of a prior criminal incident involving a concealed weapon violation that occurred outside the city of Charlottesville in February of 2021," Longo said.

Jones was also involved in a hazing investigation that was closed because witnesses would not cooperate, according to Longo.

Last Wednesday, a judge ordered Jones be held without bond after a brief video conference in Albemarle District Court. Jones was not asked to enter a plea and has been given until his next court appearance on Dec. 8 to hire legal counsel. Authorities have not determined a motive for the attack.

A memorial service for Perry, Davis and Chandler took place Saturday at John Paul Jones Arena on campus.

"This is not the Chris that we know," said Lundy, Jones' former teammate who now works as a security officer.

McLaughlin, the pastor, found himself reconciling the Chris Jones he knew at Petersburg High School and the man who now faces three counts of second-degree murder.

"A lot of people are asking questions," McLaughlin said, "trying to get to what happened."

*Contributing: The (Petersburg) Progress-Index, Dan Wolken of USA TODAY*

## MARKETPLACE TODAY

For advertising information: 1.800.397.0070  www.russelljohns.com/usat

### NOTICES
### LEGAL NOTICE

Joshua A. Sussberg, P.C., KIRKLAND & ELLIS LLP, KIRKLAND & ELLIS INTERNATIONAL LLP, 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900 -and- Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*), Ross M. Kwasteniet, P.C. (admitted *pro hac vice*), Christopher S. Koenig, Dan Latona (admitted *pro hac vice*), KIRKLAND & ELLIS LLP, KIRKLAND & ELLIS INTERNATIONAL LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Telephone: (312) 862-2000, Facsimile: (312) 862-2200, *Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re: CELSIUS NETWORK LLC, *et al.*,[1] Debtors. — Chapter 11, Case No. 22-10964 (MG) (Jointly Administered)

NOTICE OF BAR DATES FOR SUBMITTING PROOFS OF CLAIM AND CLAIMS UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE AGAINST THE DEBTORS

PLEASE TAKE NOTICE THAT the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has entered an order (the "Bar Date Order") establishing **5:00 p.m. prevailing Eastern Time on January 3, 2023** (the "General Claims Bar Date"), as the last date for each person or entity (including individuals, partnerships, corporations, joint ventures and trusts) to submit a Proof of Claim against any of the Debtors listed below (collectively, the "Debtors"). A copy of the Bar Date Order, and any exhibits thereto are available (i) at the Debtors' expense upon request to Stretto, Inc. (the noticing and claims agent retained in these chapter 11 cases), by calling 855-423-1530 for callers in the United States or by calling 949-669-5873 for callers outside the United States, (ii) for no charge by visiting the Debtors' restructuring website at http://cases.stretto.com/celsius, or (iii) for a fee via PACER by visiting http://ecf.nysb.uscourts.gov.

The Bar Date Order requires that all entities (collectively, the "Claimants") holding or wishing to assert a claim that arose or is deemed to have arisen prior to July 13, 2022 (the "Petition Date"), against the Debtors ("Claims") to submit a Proof of Claim so as to be actually received by Stretto, Inc. (the "Notice and Claims Agent") on or before the applicable bar date (collectively, the "Bar Dates") as set forth below. None of the Bar dates described herein apply to any governmental unit. Pursuant to section 502(b)(9) of the Bankruptcy Code, all governmental units shall have at least 180 days from the commencement of these chapter 11 cases to submit Claims against the Debtors.

**Debtor Name, Last Four Digits of Tax Identification Number, Case Number:** Celsius Network LLC, 2148, 22-10964; Celsius KeyFi LLC, 4414, 22-10967; Celsius Lending LLC, 8417, 22-10970; Celsius Mining LLC, 1387, 22-10968; Celsius Network Inc., 1219, 22-10965; Celsius Network Limited, 8554, 22-10966; Celsius Networks Lending LLC, 3390, 22-10969; Celsius US Holding LLC, 7956, 22-10971

**General Claims Bar Date** (Applicable to 503(b)(9) Claims). All Claimants holding or wishing to assert a Claim must submit a Proof of Claim with respect to such Claim so as to be **actually received** by the Notice and Claims Agent by **January 3, 2023, at 5:00 p.m. prevailing Eastern Time** (the "General Claims Bar Date"), including parties asserting Claims pursuant to section 503(b)(9) of the Bankruptcy Code.

**Supplemental Bar Date.** In the event the Debtors amend or supplement their schedules of assets and liabilities (collectively, the "Schedules"), the Debtors shall give notice of any such amendment to the holders of any Claim affected thereby, and such holders shall be afforded at least 35 days from the date on which such notice is given to submit a Proof of Claim with respect to such amended Claim (any such date, a "Supplemental Bar Date") or be forever barred from doing so.

**Rejection Bar Date.** If you have a Claim arising from the rejection of an executory contract or unexpired lease, you must submit a Proof of Claim based on such rejection on or before the later of (a) the General Claims Bar Date and (b) any date the Bankruptcy Court may fix in the applicable order authorizing such rejection and, if no such date is provided, 30 days from the date of entry of such order (the "Rejection Bar Date"). The Debtors will provide notice of the Rejection Bar Date to the contract or lease counterparty whose contract or lease is being rejected at the time the Debtors reject any executory contract or unexpired lease.

**When and Where To Submit.** Each Proof of Claim, including supporting documentation, must be submitted so that the Notice and Claims Agent *actually receives* the Proof of Claim on or before the applicable Bar Date by: (i) electronically using the interface available on the Notice and Claims Agent's website at https://cases.stretto.com/celsius, or (ii) first-class U.S. Mail, overnight mail, or other hand-delivery system, which Proof of Claim must include an *original* signature, at the following address: Celsius Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

PROOFS OF CLAIM MUST BE SUBMITTED BY MAIL, BY HAND, OR THROUGH THE STRETTO WEBSITE. PROOFS OF CLAIM SUBMITTED BY FACSIMILE OR ELECTRONIC MAIL WILL NOT BE ACCEPTED AND WILL NOT BE DEEMED TIMELY SUBMITTED.

**Contents of Proofs of Claim.** Each Proof of Claim must: (i) be written in English; (ii) set forth (A) for any Claim based on cryptocurrency(ies) held in an account on the Debtors' platform, the number of units of each cryptocurrency held in such account" and (B) in the case of any other Claim, the amount of such Claim denominated in United States dollars; (iii) conform substantially with the Proof of Claim form provided by the Debtors or Official Form 410; (iv) be signed or electronically transmitted through the interface available on the Notice and Claims Agent's website at https://cases.stretto.com/celsius by the claimant or by an authorized agent or legal representative of the claimant; and (v) unless otherwise consented to by the Debtors in writing, include supporting documentation unless voluminous, in which case a summary must be attached or an explanation provided as to why documentation is not available. **Please note** that each Proof of Claim must state a Claim against only one Debtor. To the extent the Proof of Claim lists more than one Debtor, the applicable Claim may be treated as if submitted only against the first-listed Debtor. If a Proof of Claim does not identify a specific Debtor, the Proof of Claim will be considered as submitted only against Celsius Network LLC.

**Section 503(b)(9) Claims.** Vendors and suppliers of goods may be entitled to request an administrative priority Claim under section 503(b)(9) of the Bankruptcy Code to the extent they delivered, and the Debtor received, goods within the twenty-day period prior to the Petition Date. The Bankruptcy Court has deemed the submission of a Proof of Claim as satisfying the procedural requirements for asserting such a Claim under section 503(b)(9) of the Bankruptcy Code. In addition to the other requirements listed above, any Proof of Claim asserting a 503(b)(9) Claim must (i) include the value of the goods delivered to and received by the Debtors in the 20 days prior to the Petition Date; (ii) attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted; (iii) attach documentation of any reclamation demand made against the Debtors under section 546(c) of the Bankruptcy Code (if applicable); and (iv) set forth whether any portion of the Section 503(b)(9) Claim was satisfied by payments made by the Debtors.

**Consequences of Failing to Timely Submit Your Proof of Claim.** Any Claimant who is required, but fails, to submit a Proof of Claim in accordance with the Bar Date Order on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtors (or submitting a Proof of Claim with respect thereto). In such event, the Debtors' property shall be forever discharged from any and all indebtedness or liability with respect to such Claim, and such holder shall not be permitted to vote to accept or reject any plan of reorganization filed in these chapter 11 cases or participate in any distribution on account of such Claim or receive further notices regarding such Claim.

**Reservation of Rights.** Nothing contained in this notice is intended to or should be construed as a waiver of the Debtors' right to: (a) dispute, or assert offsets or defenses against, any submitted Claim or any Claim listed or reflected in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases as to the nature, amount, liability, or classification thereof; (b) subsequently designate any scheduled Claim as disputed, contingent, or unliquidated; and (c) otherwise amend the Schedules.

**Additional Information.** If you have any questions regarding the Claims process and/or if you wish to obtain a copy of the Bar Date Order (which contains a more detailed description of the requirements for submitting Proofs of Claim), a Proof of Claim form or related documents, you may do so by visiting the Debtors' restructuring website at http://cases.stretto.com/celsius or contacting the Notice and Claims Agent by calling 855-423-1530 for callers in the United States or by calling 949-669-5873 for callers outside the United States and/or writing to the following address: Celsius Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602. Please note that the Notice and Claims Agent cannot advise you how to submit, or whether you should submit, a Proof of Claim.

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]  For the avoidance of doubt, all Claims for cryptocurrency held by any holder must clearly state (i) each type of cryptocurrency held and (ii) the number of units of each cryptocurrency held.

## GET NOTICED!
Advertise in USA TODAY's Marketplace!
Call: 1-800-397-0070