# **Exhibit A**

**Amended Work Plan**

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CELSIUS NETWORK LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

**AMENDED WORK PLAN OF SHOBA PILLAY, EXAMINER**

Shoba Pillay, the court-appointed Examiner, respectfully submits her Amended Work Plan ("Amended Work Plan") in accordance with the requirements set forth in the Court's *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. 820] (the "Examiner Order").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Background**

1. On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their affairs as debtors and debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

2. On July 27, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"), comprising of seven of the Debtors' account holders. [Dkt. 241.]

3. On August 18, 2022, the United States Trustee filed a motion seeking appointment of an examiner. [Dkt. 546.]

4. On September 14, 2022, the Court entered the Examiner Order, directing the appointment of an examiner under section 1104(c) to conduct an investigation of:

   a. the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled;

   b. why there was a change in account offerings beginning in April 2022 from the Earn Program to the Custody Service for some customers while others were placed in a 'Withhold Account';

   c. the Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto"; and

   d. the current status of the utility obligations of the Debtors' mining business.

(Examiner Order ¶ 3.)

5. The Examiner Order also directs the examiner to "otherwise perform the duties of an examiner set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code," subject to the terms of the Examiner Order. (*Id.*)

6.      The Examiner Order further provides that it is "without prejudice to (i) the right of any party to seek relief from the Court to further expand the Scope of the Investigation, and (ii) the right of the Examiner to seek such other relief from the Court as he or she may deem appropriate in furtherance of the discharge of his or her duties and the investigation." (Examiner Order ¶ 13.)

7.      On September 29, 2022, the United States Trustee appointed Shoba Pillay as Examiner and filed a notice of the appointment [Dkt. 920] and an application to approve the appointment of the Examiner. [Dkt. 921.] The Court entered an order approving the appointment of the Examiner the same day. [Dkt. 923.]

8.      On October 11, 2022, the Examiner filed her Work Plan, in accordance with paragraph 7 of the Examiner Order [Dkt. 1013-1] ("Work Plan"). Under the Examiner Order, the Examiner's final report will be due 60 days after the filing of her Work Plan—i.e., December 10, 2022—absent further order of the Court on notice to all parties. (Examiner Order ¶ 8.)

9.      On October 11, 2022, the Bankruptcy Court entered a scheduling order to address claims made by two *ad hoc* groups. These groups claim that the crypto assets held in what Celsius called Custody and Withhold accounts are property of the account holders, rather than property of Celsius's bankruptcy estates. (*See Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, The Committee, The Ad Hoc Groups With Respect to Custody and Withhold Issues* [Dkt. 1044].) Because of factual overlap between this claim and the Examiner's investigation, the Court directed the Examiner to file an Interim Report by November 19, 2022 addressing several factual issues (the "Phase I Issues"):

- how and when the Custody and Withhold wallets were created;

- whether the Custody and Withhold wallets have only ever held Custody and Withhold Coins, respectively, and whether the Custody and Withhold wallets include coins that have been designated as pledged collateral;

- the process by which coins were transferred in and out of Custody and Withhold wallets;

- the balance of assets in Custody and Withhold accounts and Custody and Withhold liabilities in the ten (10) days before and after the pause by coin;

- the number and types of coins that are currently in Custody and Withhold wallets as a step in an unsuccessful attempt to withdraw coins off of the platform (to the extent ascertainable).

(*Id.* ¶ 7.)

10. On November 1, 2022, the Court entered an *Order Approving Examiner's Motion to Confirm Examination Scope or Alternatively for Expansion of the Scope of the Examination* [Dkt. 1260] ("First Scope Order"), which clarified that:

   a. topic (i) in the Examiner Order includes an examination of the Debtors' CEL tokens, including why and how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded – including whether any of the Debtors' trading practices involving CEL tokens generally or determinations of CEL tokens awarded as part of the Earn Rewards program – impacted their value, and

   b. topic (ii) in the Examiner Order includes an examination of the representations Debtors generally made in public representations to customers to attract them to their platform and about their cryptocurrency holdings and account offerings.

11. On November 14, 2022, the Court entered a *Stipulation and Agreed Order Modifying Scope of Examiner Order* [Dkt. 1343] ("Second Scope Order," and together with the First Scope Order, the "Examiner Orders") under which the "[t]he scope of the Examiner's factual investigation and report is expanded to include an investigation and report on whether the Debtors used new deposits being made by customers to make payments or otherwise meet obligations to

existing customers at a time when the Debtors had no other sources (whether liquid or which could have been monetized) from which to make such payments or meet such obligations." (*Id.* ¶ 1.)

## The Examiner's Activities To Date

12.     The Examiner has conducted a significant investigation to date, part of which is reflected in the November 19, 2022 *Interim Report of Shoba Pillay, Examiner* [Dkt. 1411] (the "Interim Report"), which addresses the Custody and Withhold issues and related issues within the scope of the Examiner's investigation.

13.     To date, the Examiner has collected a large volume of data and records (more than 100,000 pages of documents), and formally interviewed 22 current and former Celsius personnel and customers. The Examiner anticipates reviewing and analyzing an even greater number of documents and conducting an equal or greater number of interviews in connection with her Final Report. The Examiner has also engaged in numerous information-gathering discussions with the various interested parties, including the Debtors, the Debtors' customers, the Committee, state and federal regulatory agencies, and the ad hoc committees.

### Preliminary Investigative Steps

14.     As detailed in the original Work Plan, the Examiner began her investigation immediately. Within days of her appointment, the Examiner and her counsel met with counsel and financial advisors to the Debtors and Committee to understand their perspectives and views on the issues raised in the Examiner Order, to obtain background information relevant to the investigation, to discuss the nature and scope of documents anticipated to be requested by the Examiner, and to identify challenges that might impede the Examiner's ability to deliver her report within the time frame set by the Court. The Examiner and her professionals have continued to meet

regularly with the Debtors' and Committee's professionals seeking more detailed information about data and information relevant to the Examiner's investigation.

15. The Examiner also met with other parties in interest to understand their perspectives, to obtain background information relevant to the investigation, and to hear their views about the examination and its scope. Those parties have included the U.S. Trustee and his counsel, counsel to the Ad Hoc Group of Custodial Account Holders, counsel to Ad Hoc Group of Withhold Account Holders, counsel to the preferred equity holders, state regulators, and certain individual account holders. These discussions, along with the Examiner's review of customers' pleadings and communications, led to the Court's entry of the Scope Orders identified above.

Data and Record Collection

16. During her initial meetings with the Debtors' professionals, the Examiner requested access to a number of documents that she understood the Debtors had already assembled. There was a material delay before the Debtors provided access to those documents. The Debtors subsequently produced a substantial amount of information to the Examiner, but the data collection and delivery process did not proceed at the pace the Examiner anticipated. In addition, many of the Debtors' record-keeping systems are not robust and cannot be easily queried for information, and therefore several reports the Examiner requested required the Debtors to engage in significant manual input or remain outstanding.

17. As noted in the Interim Report, the Debtors have been transparent with the Examiner regarding reasons for the delays, including the reductions in the Debtors' workforce, limited resources that are being called upon to address multiple streams of requests for information, and systems limitations. Also, since the beginning of November, the Examiner's professionals, the Debtors' professionals, and the Debtors' senior management met weekly to prioritize document

and information requests, and to otherwise address issues related to the Examiner's information-gathering process.

### Witness Interviews

18. In connection with the Interim Report, counsel for the Examiner interviewed 17 individuals, including 10 current and former Celsius personnel who work or worked in Custody Operations, Custody Innovation, Marketing, Business Processes/Controls, Revenue, Compliance, Engineering, and Treasury. Counsel for the Examiner also interviewed two customers with Withhold Accounts and five customers with Custody Accounts. Counsel for the Examiner has interviewed five additional individuals on other investigation topics in connection with her final report and expects to conduct additional interviews in the coming weeks.

19. The Debtors have imposed limitations on interviews of many of its employee witnesses, including by requesting that the Examiner preview topics to be covered during the interviews and limiting the time to two hours. Further, the Debtors claimed privilege over certain communications, which limited the Examiner's ability to obtain the full scope of relevant facts. Nonetheless, the Examiner has been working within these limitations, and for the most part, has had adequate access to the Debtors' employees.

### Financial Advisors

20. On October 10, 2022, the Examiner engaged Huron Consulting Group to serve as her financial advisor. Huron has analyzed internal company financial documents, Fireblocks transactional information, and public Blockchain data to understand Celsius's business operations, assist the Examiner in analyzing the topics of her investigation, and to prepare schedules and financial information included in the Interim Report.

21. To date, the Examiner has not engaged a separate blockchain analytics firm, and has been leveraging the services of the Committee's blockchain advisor, Elementus, for certain information.

### The Examiner's Proposed Work Plan Going Forward

#### Information Gathering and Verification

22. In the Interim Report, the Examiner noted complications and delays in her information-gathering efforts. The Examiner will require significant additional amounts of information and access to many additional documents to complete her investigation and issue her Final Report. Although the Examiner intends to seek information from the Debtors in the least disruptive fashion possible, the Examiner will require priority access to data and information to complete her investigation and issue her Final Report, and it will be imperative that the Debtors prioritize document productions to the Examiner so that she can timely issue her Final Report.

23. The Examiner intends to continue the weekly meetings with the Debtors' senior management to identify and prioritize document and information needs, and to address any issues related to the Examiner's information-gathering process, which process at least to date appears to be relatively effective.

#### Interviews and Depositions of Witnesses

24. To date, the Examiner has conducted 22 voluntary interviews of witnesses with respect to the issues that are the subject of the investigation and anticipates many additional interviews.

25. As noted in the original Work Plan, to facilitate the Examiner's ability to timely and efficiently complete an investigation and fulfill her fiduciary and statutory duties, the Court has granted the Examiner authority to quickly issue subpoenas under Bankruptcy Rule 2004 in

those instances where witnesses decline to voluntarily cooperate with the Examiner's requests or condition their cooperation on the issuance of a subpoena. [Dkt. 1232.] To date, the Examiner has not needed to resort to her Rule 2004 subpoena powers.

26.    As noted above, there have been significant reductions in the Debtors' workforce, including a number of former employees who likely have information relevant to the investigation. A number of those former employees reside outside of the United States, including in Serbia and Israel, and interviewing those witnesses will be challenging or in some cases simply not viable.

<u>Monitoring of Bankruptcy Cases and Government Investigations</u>

27.    The Examiner's counsel will continue to monitor and review pertinent filings with the Court regarding or involving any issues related to the investigation. The Examiner's professionals will also continue monitor any investigation of the Debtors undertaken by any governmental entities that relates to matters within the scope of the examination.

<u>Timing and Cost of Examination</u>

28.    In light of the updates to the scope of the Examiner's investigation directed in the Examination Orders, as well as constraints on the timely production of the needed documents, information and reports, the Examiner seeks an extension of the deadline to file her Final Report to January 17, 2023 (from December 10, 2022). The Examiner will endeavor to complete and file her Final Report before that date, but in the experience of the Examiner and her professionals, obtaining documents and witness interviews is typically complicated and delayed around the winter holidays.

29.    The Examiner also estimates the total fees for the Examiner and her counsel, Jenner & Block, will aggregate approximately $6 to $7 million (versus $3 to $5 million estimated in the original Work Plan). She also estimates the total fees for her professional advisors, Huron, will

9

aggregate approximately $2 to $3 million. In accordance with the terms of the Examiner Order, all fees and expenses of the professional persons retained by the Examiner are subject to the filing of applications therefor and allowance by the Bankruptcy Court after notice and a hearing.

## **Reservation of Rights**

30. The Examiner's Amended Work Plan is based upon currently available information and presumes the continued cooperation of the Debtors, the Committee, and other parties in interest in accordance with the Examiner Order. (*See* Examiner Order ¶¶ 4, 6.) The Examiner reserves her right to modify the work plan accordingly and will promptly notify the Court if modifications are necessary.

## **Conclusion**

The Examiner respectfully submits that this Amended Work Plan is reasonable and appropriate and should be approved by the Court.

Dated: November 22, 2022
      New York, New York

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ *Vincent E. Lazar*
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com
csteege@jenner.com

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
ksadeghi@jenner.com

*Counsel to the Examiner*