**Mark A. Lindsay, Esq.**
**Bernstein-Burkley, P.C.**
**601 Grant Street, 9th Floor**
**Pittsburgh, PA 15219**
**Tel: (412) 456-8121**
**Fax: (412) 456-8135**
**E-mail: mlindsay@bernsteinlaw.com**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| IN RE:<br><br>CELSIUS NETWORK, LLC, et al.,<br><br>Debtors. | Case No.: 22-10964 (MG)<br><br>Chapter 11<br><br><br>Document No. _____<br><br>Related to Doc. No. 1325<br><br>Hearing: 12/5/2022 at 10:00 a.m.<br>Responses Due: 11/29/2022 |
|---|---|

### OBJECTION AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING OWNERSHIP OF ASSETS IN THE DEBTORS' EARN PROGRAM, (II) PERMITTING THE SALE OF STABLECOIN IN THE ORDINARY COURSE AND (III) GRANTING RELATED RELIEF

Comes now, Stuart McLean ("Respondent") by and through his undersigned counsel, and files this *Objection and Reservation of Rights to the Debtor's Motion For Entry of an Order Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* (the "Objection"), stating as follows:

### INTRODUCTION

1. The Respondent is one of what appears to be hundreds of thousands of persons or entities to have been enticed to deposit substantial cryptocurrency assets into the Debtors' hands under the guise

of the Debtors' "Earn Program."[1] The Debtors' global grift becomes more and more apparent with each passing day in these proceedings. Despite the representations, advertising and solicitation blanketed across the cryptocurrency world by the Debtors, their owners, officers and employees, the Debtors now seek to simply take ownership of all of their customers' Earn account assets. The Debtors clearly operated a targeted plan based on confusion and lofty promises to convince unsuspecting individuals to simply hand over their assets to the Debtors. It is without question that most if not all such individuals lacked the same "understanding" that the Debtors now attempt to foist upon them, *i.e.*, the absurd idea that each such person contractually agreed to simply give their assets to the Debtors. In taking this illogical position, the Debtors hide behind their confusing and ambiguous "Terms of Use" and the unclear processes by which their users were supposedly given proper notice of, understood and actually agreed to such Terms of Use. Under the disturbing circumstances of this case, the Debtors cannot be permitted to complete the implementation of this scheme simply because it eventually imploded under its own weight and resulted in this bankruptcy filing.

2.   In purported furtherance of the Debtors' attempts to take ownership of all Earn customers' assets, on November 11, 2022 the Debtors filed their *Amended Motion for Entry of An Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course, and (III) Granting Related Relief* (the "Earn Motion").

3.   Pursuant to that certain *Scheduling Order Regarding Title to Earn Program Assets and the Sale of Certain Stablecoins* filed by the Debtors on November 10, 2022 (the "Stipulation"), the Debtors have proposed to limit any determinations on their Earn Motion to: (1) ownership rights to assets transferred by Account Holders designated to be part of the "Earn" program, based on the unambiguous plain language of each version of the Terms of Use (if more than one version is applicable); (2) whether

---

[1] Although Respondent acts on behalf of himself only in filing this Objection, at times herein Respondent refers to all Earn Program users out of ease of reference and in order to underscore the breadth of the issues at hand.

each applicable version of the Terms of Use forms a binding contract with users who transferred assets to the Debtors while such Terms of Use were in effect (i.e., whether the elements of a contract are present); (3) whether subsequent amendments to the Terms of Use are binding on users who transferred their assets to the Debtors prior to the effectiveness of the subsequently amended Terms of Use (e.g., whether a user who deposited coins in July 2020 is bound by the April 2022 Terms of Use); and (4) whether the specific stablecoin sought to be sold is property of the Debtors' estates (if not covered by the previous three issues)." Importantly, the Stipulation specifically provides that all Earn customer defenses to the purported contract are preserved.

4.     The Earn Motion must be denied in its entirety. First, the whole of the Earn Motion is based on the Debtors' flawed premise that the language of the Terms of Use (regardless of the version) is clear and unambiguous. This flawed assumption alone precludes the granting of the Earn Motion at this time. Second, the concept that the Debtors seek a finding that the Terms of Use "form a binding contract" while at the same time preserving any and all defenses to any "contract" is illogical and creates an illusory preservation of Earn customers' rights, claims and defenses. And third, the Debtors' illogical reasoning continues in their request for a determination that stablecoin is property of the estate and may be sold, where again, the Earn customers' defenses to any alleged contract have been expressly preserved. If a sale of stablecoin is allowed at this time, prior to a full determination of Earn customer rights, claims and defenses, then the proverbial "horse would have already left the barn" and the Earn customers would have no real protection of their rights as to the stablecoin in their Earn accounts.

**OBJECTION/RESPONSE**

A. **The Terms of Use Are Not Clear and Unambiguous**

5.     As stated above, the Debtors' Earn Motion is based upon the flawed assumption that the language of the Terms of Use is clear and unambiguous. However, a simple reading of the Terms of Use

as a whole, as opposed to the cherry-picked provisions noted by the Debtors, evidences that the Terms of Use are anything but clear and unambiguous.

6. Under New York law, a contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business. <u>Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.</u>, 773 F.3d 110, 114 (2d Cir. 2014); <u>Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.</u>, 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted).

7. In this matter, a great deal of ambiguity exists in each version of the Terms of Use, particularly as to the issue at hand, *i.e.*, what is the nature of the relationship between the parties once customer assets are deposited.

8. Despite the Debtors' self-serving assertions to the contrary, the Terms of Use utilize conflicting terms and concepts that are confusing and unclear at best. Although the Debtors ask the Court to find that the Terms of Use "plainly and unambiguously" granted outright ownership of Earn account assets to the Debtors based on certain language, other contrary language in the Terms of Use actually dictates that any assets deposited in an Earn account remained the property of the user.

9. The Terms of Use are replete with language providing that at most, Respondent was "lending" his assets to Debtors for a period of time until Respondent, in his sole discretion, asked for his assets to be returned.[2] This in fact is the entire business model of the Earn Program, nothing more. To be sure, this situation is no different than one in which Person A owns a piece of machinery and agrees to lend it to Person B for a period of time and allow Person B to use the machinery on various revenue

---

[2] The myriad of examples of this language has been set forth on the record by other objectors at length and is apparent on the face of the various Terms of Use versions filed by the Debtors. Respondent shall not waste additional time and resources by merely repeating those facts herein. To the extent necessary, Respondent incorporates herein and joins in any and all other objections to the Earn Motion.

generating projects and pay a percentage of that revenue to Person A. At all times during this process, the machinery remains the property of Person A and is subject to return upon Person A's request. Again, this is precisely the business model that the Debtors created and advertised to their users. As has been noted by other users at length, users were repeatedly told that "you own your coins."

10.   At the very least, the Terms of Use deceptively suggest that users can get their assets back at any time simply by requesting their return. And that concept is in line with the promises and mottos repeatedly espoused to the users as the essential safety net of the Debtors' business model.

11.   The Debtors cannot now hide behind and rely upon conflicting language in the Terms of Use (which they drafted) in order to claim complete ownership of the assets deposited by their customers. This attempted bait and switch cannot be blessed by this or any court.

### B. The Terms of Use Are Not Enforceable Against Users

12.   Even assuming arguendo that the Terms of Use were sufficiently provided and noticed to all users (which Debtors have failed to prove), the procedures surrounding their implementation and the very substance of the Terms of Use require a determination that they are not enforceable contracts.

#### i.   Lack of Adequate Consideration

13.   Under New York law, "[a]ll contracts must be supported by consideration, consisting of a benefit to the promisor or a detriment to the promisee." Zigler v. Featherstone Foods, Inc., No. 20cv2462, 2021 U.S. Dist. LEXIS 8547, at *7 (S.D.N.Y. Jan. 15, 2021) (quoting Beitner v. Becker, 824 N.Y.S.2d 155, 156 (2d Dep't 2006)). A contract lacks consideration when the obligation of one party is illusory, meaning only one side is bound to perform. See Curtis Props. Corp. v. Greif Cos., 212 A.D.2d 259, 628 N.Y.S.2d 628, 632 (1st Dep't 1995). An illusory promise, "that is, a promise merely in form, but in actuality not promising anything, . . . cannot serve as consideration." 3 Richard A. Lord, Williston on Contracts § 7:7 (4th ed. 2013). An illusory contract is void for lack of consideration, rather than

voidable. <u>Damato v. Time Warner Cable, Inc.</u>, No. 13-CV-994 (ARR)(RML), 2013 U.S. Dist. LEXIS 107117, at *18 n.6 (E.D.N.Y. July 30, 2013); see 3 <u>Williston on Contracts</u> § 7:11 ("Where no consideration exists, and is required, the lack of consideration results in no contract being formed . . . .").

14. If the Terms of Use are determined to govern the relationship of the parties, it is evident from the language that any ultimate obligations of the Debtors' were illusory in nature. Despite the Debtors' promise to return the assets it borrowed from users upon the users' requests, the Debtors also disclaim any real obligation to do so. For example, the Terms of Use provide with regard to "Withdrawals" that "[e]very transmission request shall be deemed pending until accepted by us. We may refuse to accept such request, or delay the processing of an approved request for any reasonable reason." See Terms of Use, version 7.

15. If the Debtors' contentions are adhered to, then the lack of adequate consideration is blatant. It is inconceivable that a person could be found to have received adequate consideration for a complete transfer of his or her assets when the other party has self-servingly created a situation where it may have no real obligation to provide anything in return. Although the Debtors paid "rewards" for the use of the customers' assets, the Debtors at the same time drafted the Terms of Use in such a way to create options and circumstances under which the Debtors could walk away from any obligation.

16. The same is true with respect to any subsequent amendments to the Terms of Use. To the extent that Respondent's rights were altered by any subsequent Terms of Use, there was no additional consideration provided to Respondent to support any such agreement. The Debtors argue that the mere continuing use of their services was in and of itself consideration, but that position is fatally flawed. To be sure, Respondent already had the right to use Debtors' services pursuant to the Terms of Use in effect when Respondent signed up for such services – the Debtors "threat" to continue to provide those services

only if Respondent checked another "I agree" box is not consideration at all. If anything, it is predatory conduct whereby the Debtors sought amendments seemingly favorable to themselves simply by threatening to stop doing what they had already promised to do. The Debtors appear to admit as much in the Earn Motion where the Debtors themselves characterize their conduct as "warning" users of "consequences" if they did not accept. Simply put, one party agreeing to continue doing what it has already agreed to do only if the other party agrees to more is not new consideration.

## ii. The Terms of Use are Both Procedurally and Substantively Unconscionable

17. "The doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." Spinelli v. NFL, 903 F.3d 185, 208 (2d Cir. 2018) (quoting United States v. Martinez, 151 F.3d 68, 74 (2d Cir. 1998) (internal quotation marks omitted)). Under New York law, a contract provision may be deemed unenforceable on unconscionability grounds only where it is both procedurally and substantively unconscionable when made. Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 226 (S.D.N.Y. 2020). "A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Spinelli, 903 F.3d at 208 (first quoting Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 122 (2d Cir. 2010); then quoting Nayal v. HIP Network Servs. IPA, Inc., 620 F.Supp.2d 566, 571 (S.D.N.Y.2009)).

18. The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice. The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power. Am. Family Life Assurance Co. of N.Y. v. Baker, 778

F. App'x 24, 26 (2d Cir. 2019) (citing Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 534 N.E.2d 824, 828, 537 N.Y.S.2d 787 (N.Y. 1988) (internal citations omitted).

19. The Debtors reliance on certain case law involving the enforceability of "click-wrap" agreements is misplaced and distinguishable under the circumstances. Respondent is not aware of any case in which one party claimed to take title to millions of dollars of assets by virtue of a simple "click-wrap" agreement. Frankly, that would be unprecedented.

20. To the extent that it is determined that "contracts" were formed between the parties, the one-sided "take it or leave it" contract formation process and lack of any meaningful choice by users indicates procedural unconscionability. When coupled with the lofty promises and representations made by the Debtors outside of the Terms of Use whereby users were essentially lulled into a false sense of security, the unconscionability of the process becomes even more apparent.

21. Courts assessing the substantive unconscionability of an agreement consider "whether one or more key terms are unreasonably favorable to one party." Baker, 778 F. App'x at 27 (quoting Sablosky v. Edward S. Gordon Co., 535 N.E.2d 643, 647 (N.Y. 1989)). "[A]n unconscionable contract is one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Id. (internal quotation marks and alterations omitted). Substantive unconscionability is indicated by contract terms so one-sided as to shock the conscience. Homesite Ins. Co. v. Brezniak, 581 F. Supp. 3d 424, 427 (D. Conn. 2022). Alternatively, substantive unconscionability consists of an allocation of risks or costs which is overly harsh or one-sided and is not justified by the circumstances in which the contract was made. Id.

22. If the Terms of Use are interpreted to mean what the Debtors claim them to mean, then they constitute the epitome of substantive unconscionability. There is no question that such an interpretation of the Terms of Use would result in the terms being unreasonably favorable to one party

(the Debtors) and an allocation of risk or costs that is completely one-sided (again favoring the Debtors to the complete detriment of the users). In simple terms, the idea that a person (usually unaccredited persons) would give hundreds of thousands of dollars (or millions, in certain cases) of assets to the Debtors in exchange for a "fee" and subject their assets to complete loss at any time is patently unconscionable.

    **iii.**  **Terms of Use May Constitute Illegal Contracts**

  23.  It has been alleged that certain of the Debtors' actions and conduct may have been in furtherance of what amounts to a Ponzi scheme. It is the understanding of Respondent that those issues are being investigated and that appropriate action will be taken when sufficient information has been gathered. In any event, if such adverse findings are made against the Debtors and/or their officers, owners, etc., then the "contracts" at issue are wholly unenforceable. To be sure, any contract entered into in furtherance of a Ponzi scheme is inherently fraudulent and illegal in nature and as a result invalid and unenforceable from its inception. It is impossible for a determination to be made as to the "contracts' validity" until such other gateway determinations are fully investigated and pursued.

  24.  Based on the foregoing, Respondent's assets in his Earn account should be determined to be the property of Respondent and should accordingly be preserved and shielded from any further use by the Debtors. In order to protect Respondent's rights and prevent any further depletion of his assets (along with the rights hundreds of thousands of other Earn account holders), the Earn Motion must be denied in its entirety.

    **C.**  **Debtors Request to Sell Stablecoin Pursuant to §363(b) is Unsupported**

  25.  Debtors also seek an order permitting them to sell "stablecoin in the ordinary course of business" pursuant to 11 U.S.C. §363(b). This request must also be denied. First, because it should be determined that the Earn account assets are not property of the estate, any stablecoin held therein by customers cannot be sold by the Debtors pursuant to 11 U.S.C. §363. Furthermore, as has been

acknowledged in these proceedings, users typically hold stablecoin due to its stability as a result of being tied to a particular fiat currency at a 1:1 ratio. It would be anything but "ordinary course" for the Debtors to liquidate all of the stablecoin in the Earn accounts simply to pay for ongoing operating expenses, including professional fees, that the Debtors apparently cannot otherwise afford. The suggestion that such a liquidation event would be "ordinary" is unfounded and completely contrary to the intent and purpose of users' stablecoin holdings in their Earn accounts.

26. Lastly, even if the Terms of Use are deemed to be clear and unambiguous and that some transfer of title to cryptocurrency assets took place, the Terms of Use provide that any such transfer was not absolute as it was expressly subject to Respondent's right to the return of the assets upon request. A conveyance or transfer with such a substantial condition cannot constitute an absolute transfer of ownership, as Debtors now claim to have received. As such, Respondent's right to have his assets returned upon his request is an encumbrance on the assets while in the hands of the Debtors and, as such, prevents the sale of such assets free and clear pursuant to 11 U.S.C. §363(f) without Respondent's consent (or satisfaction of some other requirement of §363(f), which Debtors have not satisfied). Accordingly, the Debtors' request to sell stablecoin in the ordinary course of business pursuant to §363 must also be denied.

27. As has been acknowledged by the Debtors, Respondent hereby reserves and preserves any and all claims, causes of action, and defenses that he may have with regard to the Debtors or any other party in interest, including without limitation as to any alleged contract with the Debtors. Furthermore, Respondent reserves the right to amend and/or supplement this Objection based on discovery of additional facts and information.

WHEREFORE, Respondent respectfully requests that the Court enter an Order denying the Debtors' Earn Motion in its entirety, and entering any additional relief deemed just and proper.

Dated: November 29, 2022

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

By: /s/ Mark A. Lindsay
Mark A. Lindsay, Esq., PA ID 89487
*Pro Hac Vice Pending*
Erica L. Kravchenko, Esq.
*Admitted Pro Hac Vice*
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Phone: (412) 456-8121
Fax:   (412) 456-8135
Email: mlindsay@bernsteinlaw.com

Counsel for Respondent

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>CELSIUS NETWORK, LLC, et al.,<br><br>Debtors. | Case No.: 22-10964 (MG)<br><br>Chapter 11<br><br><br>Document No. _____<br><br>Related to Doc. No. _____<br><br>Hearing: 12/5/2022 at 10:00 a.m.<br>Responses Due: 11/29/2022 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2022, copies of the within pleading were served upon all parties receiving notice in these proceedings electronically via the Court's CM/ECF system:

☐ David J. Adler dadler@mccarter.com
☐ Susan L Adler nycsa@aol.com, susannycsa@gmail.com
☐ Nelly Cessiska Almeida nalmeida@milbank.com, jbrewster@milbank.com;aheine@milbank.com;mwyanez@milbank.com;nelly-almeida8701@ecf.pacerpro.com
☐ Andrea Amulic andrea.amulic@whitecase.com, jdisanti@whitecase.com,mco@whitecase.com
☐ Michael Andolina mandolina@whitecase.com, jdisanti@whitecase.com,mco@whitecase.com
☐ Darren T. Azman dazman@mwe.com, mco@mwe.com;cgreer@mwe.com
☐ Alexandra Steinberg Barrage abarrage@dwt.com
☐ Malcolm M Bates mbates@duanemorris.com
☐ Ronit Berkovich Ronit.Berkovich@weil.com
☐ Jeffrey Bernstein jbernstein@mdmc-law.com, kpatterson@mdmc-law.com
☐ Michael P. Broadhurst mbroadhurst@wgpllp.com
☐ Dean Lindsay Chapman dchapman@akingump.com, AGSearchLit@akingump.com;kmanlove@akingump.com;nymco@akingump.com
☐ Michael Chen mchen@akingump.com
☐ Shawn M. Christianson schristianson@buchalter.com, cmcintire@buchalter.com
☐ Jeffrey S. Cianciulli jcianciulli@wgpllp.com, imarciniszyn@weirpartners.com
☐ Marvin E. Clements agbanknewyork@ag.tn.gov
☐ Hollace T. Cohen hollace.cohen@fisherbroyles.com
☐ Aaron Colodny aaron.colodny@whitecase.com, jdisanti@whitecase.com,mco@whitecase.com
☐ Dawn R. Copley dcopley@dickinsonwright.com, tcorey@dickinsonwright.com
☐ Karen Cordry kcordry@naag.org

- ☐ Shara Claire Cornell shara.cornell@usdoj.gov
- ☐ Anthony J. DeGirolamo tony@ajdlaw7-11.com
- ☐ Roma N Desai roma.desai@oag.texas.gov
- ☐ Thomas Robert Dominczyk tdominczyk@mauricewutscher.com, thomas-dominczyk5025@ecf.pacerpro.com
- ☐ Daniel Eggermann deggermann@kramerlevin.com, corporate-reorg1449@ecf.pacerpro.com
- ☐ Stuart P. Gelberg spg@13trustee.net
- ☐ Jeffrey R. Gleit jeffrey.gleit@afslaw.com, lisa.indelicato@afslaw.com;alyssa.fiorentino@afslaw.com
- ☐ Brian D. Glueckstein gluecksb@sullcrom.com, s&cmanagingclerk@sullcrom.com;brian-glueckstein-5384@ecf.pacerpro.com
- ☐ Bonnie R. Golub bgolub@wgpllp.com
- ☐ Andrew R. Gottesman gottesman@mintzandgold.com, gottesman@mintzandgold.com
- ☐ Brian G. Hannon bhannon@norgaardfirm.com, sferreira@norgaardfirm.com;kcimmino@norgaardfirm.com;crose@norgaardfirm.com
- ☐ Juandisha Harris harrisj12@michigan.gov
- ☐ Samuel P Hershey shershey@whitecase.com, mco@whitecase.com,jdisanti@whitecase.com
- ☐ Mitchell Hurley mhurley@akingump.com, bkemp@akingump.com;dkrasa@akingump.com
- ☐ Monique Debrikka Jewett-Brewster mjb@hopkinscarley.com, eamaro@hopkinscarley.com
- ☐ Katherine Johnson kjohnson3@ftc.gov, kaizpuru@ftc.gov
- ☐ John Kane jkane@akingump.com
- ☐ Barry R. Kleiner dkleiner@kkwc.com
- ☐ Gregory Kopacz gkopacz@sillscummis.com
- ☐ Lawrence J. Kotler ljkotler@duanemorris.com
- ☐ Bryan Kotliar bkotliar@teamtogut.com, eblander@teamtogut.com;jmcclain@teamtogut.com;gquist@teamtogut.com;astolp@teamtogut.com
- ☐ Deborah Kovsky-Apap deborah.kovsky@troutman.com, kay.kress@troutman.com
- ☐ Erica Kravchenko ekravchenko@bernsteinlaw.com
- ☐ Tyler Nathaniel Layne tyler.layne@wallerlaw.com, chris.cronk@wallerlaw.com
- ☐ Vincent Edward Lazar vlazar@jenner.com
- ☐ Thomas Scott Leo sleo@leolawpc.com, emartinez@leolawpc.com
- ☐ Nicole A Leonard nleonard@mdmc-law.com, sshidner@mdmc-law.com
- ☐ Seth H. Lieberman slieberman@pryorcashman.com, cfrench@pryorcashman.com
- ☐ Edward J. LoBello elobello@msek.com
- ☐ Stephen Manning stephen.manning@atg.wa.gov, GCEEF@atg.wa.gov
- ☐ Hugh R. McCullough hughmccullough@dwt.com, elainehuckabee@dwt.com;SEADocket@dwt.com
- ☐ Joshua Mester jmester@jonesday.com
- ☐ Layla Milligan Layla.Milligan@oag.texas.gov
- ☐ Julie F. Montgomery jmontgomery@brownconnery.com
- ☐ Michael D. Morris morrismd@doj.state.wi.us, radkeke@doj.state.wi.us

- ☐ Carl D. Neff carl.neff@fisherbroyles.com
- ☐ Mark Norgaard mnorgaard@norgaardfirm.com, crose@norgaardfirm.com;sferreira@norgaardfirm.com
- ☐ Kyle J. Ortiz kortiz@teamtogut.com, dperson@teamtogut.com;aoden@teamtogut.com;aglaubach@teamtogut.com;eblander@teamtogut.com;bkotliar@teamtogut.com;gquist@teamtogut.com;astolp@teamtogut.com;lebrahimi@teamtogut.com
- ☐ Michael Todd Parker todd.parker@parkerpohl.com
- ☐ Arie Peled aapeled@venable.com
- ☐ Gregory F Pesce gregory.pesce@whitecase.com, jdisanti@whitecase.com,mco@whitecase.com
- ☐ Richard J. Pilson richardjpilson@aol.com
- ☐ David M Pohl david.pohl@parkerpohl.com
- ☐ John Reding john.reding@ilag.gov
- ☐ Annemarie V. Reilly annemarie.reilly@lw.com
- ☐ Kyle William Roche kyle@kyleroche.law, akaradjas@rochefreedman.com
- ☐ Jennifer Rood jennifer.rood@vermont.gov
- ☐ Abigail Ryan abigail.ryan@oag.texas.gov
- ☐ Jeffrey S. Sabin jssabin@venable.com
- ☐ Ray C Schrock ray.schrock@weil.com, matthew.goren@weil.com
- ☐ William D Schroeder schroeder@jrlaw.org, healey@jrlaw.org
- ☐ Paul R. Shankman pshankman@fortislaw.com
- ☐ Virginia T. Shea vshea@mdmc-law.com, tcolombini@mdmclaw.com;mtaranto@mdmc-law.com
- ☐ Paul N. Silverstein paulsilverstein@huntonak.com
- ☐ Scott D. Simon ssimon@goetzfitz.com
- ☐ Katherine Stadler kstadler@gklaw.com, kboucher@gklaw.com
- ☐ Catherine Steege csteege@jenner.com, jeffrey_cross@discovery.com
- ☐ Howard Steel HSteel@goodwinlaw.com
- ☐ Joshua Sussberg jsussberg@kirkland.com, hannah-kupsky-3566@ecf.pacerpro.com
- ☐ Lucy Thomson lucythomson_cpo@earthlink.net
- ☐ David Turetsky david.turetsky@whitecase.com, jdisanti@whitecase.com,mco@whitecase.com
- ☐ United States Trustee USTPRegion02.NYECF@USDOJ.GOV
- ☐ Morris D. Weiss morris.weiss@wallerlaw.com, sherri.savala@wallerlaw.com;annmarie.jezisek@wallerlaw.com
- ☐ Dina L. Yunker Frank bcuyunker@atg.wa.gov
- ☐ Evan J. Zucker ezucker@blankrome.com, eDocketing@blankrome.com

By: /s/ Mark A. Lindsay
Mark A. Lindsay, Esq.
PA I.D.: 89487
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Phone: (412) 456-8121
Fax:    (412) 456-8135
Email: mlindsay@bernsteinlaw.com