**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

_____

**OBJECTION TO DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING OWNERSHIP OF ASSETS IN THE DEBTORS' EARN PROGRAM, (II) PERMITTING THE SALE OF STABLECOIN IN THE ORDINARY COURSE, AND (III) GRANTING RELATED RELIEF**

Now comes Jeremy Cohen Hoffing, Celsius Network LLC, *et al., pro se* creditor, and hereby submits his Objection to Debtors' Amended Motion for Entry of an Order (i) Establishing Ownership of Assets in the Debtors' EARN Program, (ii) Permitting the Sale of Stablecoin in the Ordinary Course, and (iii) Granting Related Relief (the "Motion") (Doc. No. 1325). For his Objection, Jeremy Cohen Hoffing respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Background**

I joined Celsius on 9/26/2021 to participate in the Earn program. I had been working hard to save money for the past 7 years in order to provide financial stability for my family, and saw this program as a relatively low-risk investment to receive high yield interest on my crypto assets. My wife and I are expecting our first child in two weeks, and we are devastated by the fact that the nest egg we built for her future is completely gone. According to the Earn program's Terms Of Use, I was under the assumption that I was loaning my assets to Celsius.

**The Terms of Use Are Ambiguous, but Primarily Speak of Loaning Assets**

When examining the Terms Of Use, there are many references with language that is contradictory, confusing and does little to clarify the true relationship between the Debtors and customers. I object to the assertion that there is clear "unambiguous plain language" of the contracts that will allow Earn property rights to be cleanly resolved based upon a review of only the contract language itself. For example, the Terms of Use attached to the Mashinsky Declaration as Exhibit A-8, at page 525, state the following (with emphasis added)

"ANY ELIGIBLE DIGITAL ASSET THAT YOU **LOANED** TO CELSIUS THROUGH THE EARN SERVICE PRIOR TO THE MODIFICATION DATE, WILL CONTINUE TO EARN REWARDS. ANY ELIGIBLE ASSET **TRANSFERRED** TO CELSIUS WILL BE INITIALLY TRANSFERRED TO THE EARN SERVICE AND CONSTITUTE A **LOAN** FROM YOU TO CELSIUS."

And again, on page 539 of the Terms of Use state that:

The Earn Service is not an investment program nor a speculative tool. Rather, you are earning Rewards as a financing fee **on the loan of Eligible Digital Assets** you have transferred to Celsius in connection with the Earn Service, and in accordance with the

rates published by Celsius from time to time, pursuant to these Terms.

There are many other examples such as these that reference Earn assets being loaned rather than conveyed to the Debtors.

An important part of Section 2 on page 526 of the Mashinsky Declaration is pertinent to this:

"Account" or "Celsius Account" means a User's designated user account on the Celsius website or mobile application, allowing a User to access and use the Services, view the User's balance of Eligible Digital Assets **held in custody on the User's behalf or loaned by the User to Celsius**, and any rewards gained on loaned Eligible Digital Assets, and manage the User's personal information and profile

There is mention here of assets held in custody or loaned, but there is no mention here of the conveyance of digital assets from customers over to the Debtors. I would also like to stipulate that the Debtors in this case are of such disproportionate bargaining power compared to its Earn customers, that Earn customers could not have negotiated for variations in the terms of the agreement, subjecting them to a contract of adhesion.

**Loan Program**

When I was signing up for the Earn program, I was also simultaneously interested in participating in the Loan program. After reading the Terms Of Use in relation to Loans, the understanding of asset ownership is further called into question. On page 689 of the Declaration of Alex Mashinsky, the Loans Terms of Use states that:

"You hereby represent and warrant to us that, as of the Loan Effective Date and throughout the Loan Term:

(a) You are the sole owner of all Digital Assets used in connection with the Loan

(including the Collateral and any Margin Call deposit);"

In the deposition of Oren Blonstein (Chief of Compliance, Chief of Product, and Chief of Innovation) on November 22, 2022, we have the following from page 341 of the transcripts:

BY MR. HERMANN:

Q. Great.

We're now on page 940 of the declaration of Alex Mashinsky. Under the section "Borrower's Representations."

"You hereby represent and warrant to us that, as of the loan effective date and throughout the loan term: 1) You are the sole owner of all digital assets used in connection with the loan (including the collateral and any margin call delivery)."

Do you agree that this is clear and unambiguous that the person taking out a loan is the sole owner of all digital assets used in connection with the loan?

MS. BRIER: Objection to form. This is outside the scope and calls for legal conclusion.
You can answer.

THE WITNESS: Yeah, kind of similar to the question that I was answering right before this.
When I -- you know, at times where I've reviewed this, my interest in this -- like, I was glad to see this to the extent that from -- in my compliance in anti-money laundering and sanctions, you know, role or capacity, that I could be sure that people that were transferring assets into the company were the owners of those assets and that they weren't doing it on

> behalf of someone else.
>   I -- I can understand your point.
> I agree that it's -- it is maybe not
> clear enough that -- like, my reading
> of this is that the person is the sole
> owner of it prior to them sending the
> assets to Celsius, but I can -- I can
> understand your reading of it.

In Mr. Blonstein's response, he agrees with Mr. Hermann that the Terms Of Use are not clear enough to determine that users are not the sole owners of their digital assets prior to securing a Loan, and understands that for some users, their interpretation of the Terms Of Use makes sense according to the referenced language. If I have already transferred title by participating in Earn, how could I then be the sole owner of all digital assets in connection with a new loan?

Continuing with another excerpt from page 361 of the Blonstein transcript:

> *BY MR. HERMANN:  You're just considering taking a loan, and it says, "You are the sole owner of all digital assets used in connection with the loan," if you're an earn depositor, would reading this make you think that you owned those assets, yes or no?*
>   *MS. BRIER: Objection to form. Calls for a legal conclusion and incomplete hypothetical.*
>   *THE WITNESS: Yeah. I mean, if I read that text on the page and, you know, didn't know other -- didn't look at any of the other terms of use, if I had questions and I -- you know, and I didn't follow up with someone at Celsius to clarify, I agree, reading that, it says what you're say -- it says what you're saying, so, you know.*

Mr. Blondstein plainly admits here a second time that the language in reference to

Loans in the Terms Of Use could be confusing if an Earn user is trying to understand whether or not they are the owners of their own assets.

On page 387-388 from the Blonstein deposition transcript:

> *Now, let me ask you this: You responded to the UCC counsel's analogy of a house and car saying when you signed up for Celsius as a customer and you reviewed the terms of use, you didn't think or make a distinction between a loan and [audio distortion].*
>   *Did I recollect fine?*
>     *(Stenographer asks for*
>     *clarification.)*
> *BY MR. KHANUJA:*
>   *Q. And transfer of ownership.*
>     *MS. BRIER: Objection to form.*
>   *Outside the scope.*
>     *You can answer.*
>     *THE WITNESS: Yeah, yeah. So, like, just in my capacity as a -- or in my -- just as a customer, that wasn't material to me, because I'm not an attorney.*
>     *I'm not -- it was -- they're either -- either I have the keys or somebody else has the keys was how I looked at it; so…*

If Mr. Blonstein, as Chief Compliance Officer of a registered financial institution, cannot make a distinction between a loan and transfer of ownership of assets while reading the Celsius Terms Of Use, how can one expect the average user, be it an informed user or unaccredited investor, be able to make that distinction?

All the foregoing can lead to only one conclusion, the Debtors do not own the Earn Assets because their agreements are ambiguous. They are inconsistent and are full of references of their customers loaning assets in Earn to the Debtors rather than

conveying Earn assets to the Debtors. To determine if a clause in a contract is ambiguous under New York law, "it is necessary to consider it in the context of the entire" agreement. <u>Bayerische Hypo-Und Vereinsbank AG v. Banca Nazionale Del Lavoro, S.p.A. (In re Enron Corp.)</u>, 292 B.R. 752, 763 (Bankr. S.D.NY 2003) (citations omitted). See also, <u>Bank of America, N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.)</u>, 439 B.R. 811 (Bankr. SDNY 2010) 37 N.Y.2d 434, 335 N.E. 2d 299, 302, 373 N.Y.S.2d 72 (N.Y. 1975) ("We read the writing as a whole. We seek to give each clause its intended purpose in promotion of the primary and dominant purpose of the contract.") (citations omitted)."

For the reasons mentioned above, the court should find the Debtors' agreement with their customers in Earn is ambiguous and should be interpreted against the Debtors. Where the contract is ambiguous, New York courts construe issues of ambiguity against the drafting party—in this case, the Debtors. *Jacobson v. Sassower,* 66 N.Y.2d 991, 993 (1985) ("[I]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language.").

The Debtors' motion for establishing authority to sell Earn assets should be denied in its entirety because the Debtors do not own the Earn assets and, therefore, they are not able to use, sell, or lease them under section 363(b) of the Bankruptcy Code.

Respectfully submitted,

Dated: November 28, 2022
Topanga, California

<u>/s/ Jeremy Cohen Hoffing</u>
Jeremy Cohen Hoffing
jcohenhoffing@gmail.com
