Volkan Altunbay

Pro se Celsius creditor

November 29, 2022

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
|  | ) |  |
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, et al., | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) |  |


**VOLKAN ALTUNBAY'S OBJECTION TO DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING OWNERSHIP OF ASSETS IN THE DEBTORS' EARN PROGRAM, (II) PERMITTING THE SALE OF STABLECOIN IN THE ORDINARY COURSE AND (III) GRANTING RELATED RELIEF, INCLUDING THE AMENDED MOTION ITSELF**

I.    PRELIMINARY STATEMENT

This objection is against the amended motion (hereafter the "Amended Motion") [Docket No. 1325] to supplement and renew the requests for relief in the Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief [Docket No. 832] (hereafter the "Motion") and aforementioned Motion itself.

By creating their own legal fiction Debtors claim that assets in the Earn program are property of the Debtors (hereafter also called 'Celsius') and implying this is not the case for assets in the so called 'Withhold Accounts' and 'Custody Program' referring to Terms of Use.

Besides the fact that the aforementioned differentiation of accounts was completely artificial and were not provided as options to non-US based unaccredited customers of Celsius, the Examiner's Report /Interim Report of Shoba Pillay [Docket No. 1411]has pointed out that factually there were no separate wallets or accounts and that different types of accounts were manually and deliberately commingled by Celsius.

I will elaborate 4 legal arguments that clearly show that the Digital Assets, being amounts of Bitcoin and USDC, deposited by me legally were, are and will be solely my property.

## II. LEGAL CONSIDERATIONS

**ARGUMENT 1: ANY AGREEMENT BETWEEN CELSIUS (INCLUDING IT'S SUBSIDIARIES) AND CONSUMERS REGARDING THE EARN PRODUCT (et alia) SHOULD BE DECLARED NULL AND VOID**

The fact that Celsius had legal entities in the United States, United Kingdom and Lithuania and offered services in the jurisdiction I reside in (Belgium, European Union), gave the impression to me as an average consumer, who is no investment professional whatsoever, that Celsius met all legal standards and requirements to offer the services it provided.

The CEO, Alex Mashinsky, gave this impression in several talks like b.e. by the misleading statements In the Real Vision April 18th 2021 interview as elaborated on page 5 of Rebecca Gallagher's Motion [Docket No. 1416].

Apparently Celsius was illegally offering the Earn product (among others) and was in breach of, among other laws, Section 5 of the Securities Act. Neither did Celsius obtain a license via the Financial Services and Markets Authority (FSMA, fsma.be) to offer financial products to consumers in the EU and/or the Kingdom of Belgium.

Since an illegal product was being offered to consumers worldwide and myself, the illegal yield product should be declared null and void. The consequence of this being that parties should be placed in their positions of the day they entered into the illegal agreement as if it never had existed.

In fact this would mean a full restitution to the consumer customer of all cryptocurrencies deposited on his Celsius account.

Celsius as such cannot draw rights from an illegal product and a null and void agreement.

With the aforementioned amended motion Celsius seeks to be declared the owner of all cryptocurrencies in the Earn program and thereby to be entitled to sell stablecoins.

It is however very clear that Celsius should not be benefiting of it's illegal activities towards consumers and should not be drawing any right from an agreement that should be regarded and declared as null and void because of its illegal nature.

**ARGUMENT 2: THERE IS NO LEGAL GROUND FOR CELSIUS TO CLAIM FULL OWNERSHIP OF ALL CRYPTOCURRENCIES DEPOSITED BY CONSUMERS ON THEIR CELSIUS ACCOUNT**

In the case the Court deems that the Earn product was not illegal and should be regarded as a security allowed by the laws and regulators of the jurisdictions of incorporation of Celsius, of its subsidiaries and in the jurisdictions were creditors reside, it should be underlined that there is nowhere in any version of applicable terms of use of Celsius a stipulation according to which the full property of deposited cryptocurrencies on the individual account of the (consumer) customer is being transferred to Celsius.

Voluntary cession of property requires the will hereto via a sale or a donation of the goods by the owner or another transfer of goods foreseen by law. How else can you transfer the full property over digital assets without the will to do so? Celsius fails in proving the will of customers to transfer full property of their Digital Assets to Celsius.

No (consumer) customer as myself had the will to donate his crypto-assets to Celsius. The burden of proof lies with Celsius to prove there was an animus donandi, a will to donate cryptocurrencies by the customers to Celsius. Celsius fails to do so.

If Celsius claims the crypto-assets of customers were sold by the customers to Celsius, the burden of proof is again upon Celsius to prove there was an agreement to sell. No-one got paid a sale price for the alleged transfer of property of the coins. So how did Celsius become owner then?

No decently informed reasonable person would transfer the property of his crypto assets worth up to thousands, tens and hundreds of thousands and millions of US Dollars to have no property rights anymore and to receive an average APR in kind of close to zero up to around 7 to 8 %. (For BTC and USDC I was holding since I was a customer of Celsius)

**ARGUMENT 3: THE TERMS OF USE OF CELSIUS CLEARLY STATE THAT THE
CREDITORS REMAINED OWNER OF THE CRYPTOASSETS, THAT THE DIGITAL
ASSETS WERE ONLY LENDED OUT TO CELSIUS OR AT LEAST THERE WAS AN
AMBIGUITY**

The terms of use as read on the website (https://celsius.network/terms-of-use) state under title

*'1. Introduction':*

*'TERMS APPLICABLE TO USERS RESIDING OUTSIDE THE UNITED STATES (as in my
case)*

*IF YOU RESIDE OUTSIDE THE UNITED STATES, YOU SHALL HAVE ACCESS TO THE
EARN SERVICE SUBJECT TO THE TERMS HEREIN.*

*ANY ELIGIBLE DIGITAL ASSET THAT YOU LOANED TO CELSIUS THROUGH THE EARN
SERVICE PRIOR TO THE MODIFICATION DATE, WILL CONTINUE TO EARN REWARDS.*

***ANY ELIGIBLE DIGITAL ASSET TRANSFERRED TO CELSIUS WILL** BE INITIALLY
TRANSFERRED TO THE EARN SERVICE AND **CONSTITUTE A LOAN FROM YOU TO
CELSIUS.'***

Already in the introduction Celsius states that crypto assets transferred into the earn account
are a loan from me to Celsius. Legally a loan never implies transfer of property. The same
wording is reiterated under the title 'D. Earn Rewards':

*'(…) If our Earn Service is available to you, upon your election, **you will lend your Eligible
Digital Assets to Celsius** and (…)'*

Under title 13 is stated:

*'13. Consent to Celsius' Use of Digital Assets*

*In consideration for the Rewards payable to you on the Eligible Digital Assets using the Earn
Service, for us entering into any Loan Agreement, and the use of our Services, you grant
Celsius, subject to applicable law and for the duration of the period during which you elect to
utilize the Eligible Digital Assets in the Earn Service (if available to you) and **thus loan such
Eligible Digital Assets to us** through your Celsius Account, or as collateral under the Borrow
Service (if available to you), all right and title to such Eligible Digital Assets, including
ownership rights, and the right, without further notice to you, to hold such Digital Assets in
Celsius' own Virtual Wallet or elsewhere, and to pledge, re-pledge, hypothecate,
rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets,
separately or together with other property, with all attendant rights of ownership, and for any
period of time, and without retaining in Celsius' possession and/or control a like amount of
Digital Assets or any other monies or assets, and to use or invest such Digital Assets in
Celsius' full discretion. You acknowledge that with respect to Digital Assets used by Celsius
pursuant to this paragraph:*

*You will not be able to exercise rights of ownership;*

*Celsius may receive compensation in connection with lending or otherwise using Digital Assets in its business to which you have no claim or entitlement; and*

*In the event that Celsius becomes bankrupt, enters liquidation or is otherwise unable to repay its obligations, any Eligible Digital Assets used in the Earn Service or as collateral under the Borrow Service may not be recoverable, and you may not have any legal remedies or rights in connection with Celsius' obligations to you other than your rights as a creditor of Celsius under any applicable laws.'*

Celsius claims based on aforementioned title 13 that Celsius became owner of my crypto assets by a very one sided way of reading it. While it is very clear that we transfer '*for the duration of the period during which you elect to utilize the Eligible Digital Assets in the Earn Service (if available to you) and thus loan such Eligible Digital Assets to us through your Celsius Account'* certain rights to Celsius in order for Celsius to use them.

If Celsius states that during the period of earning rewards we cannot exercise our rights of ownership, it implicitly confirms that we were owners who were not exercising our rights during the lending period to Celsius.

Nowhere it is stated that we fully and for a indetermined period transfer property to Celsius. The opposite interpretation can only be regarded as in bad faith.

**ARGUMENT 4: IF THE COURT DEEMS THE TERMS OF USE OF CELSIUS FULLY APPLICABLE AND CONFIRMS CELSIUS' ALLEGATIONS THAT ALLE DEPOSITED CRYPTOCURRENCIES BY THE CUSTOMERS BECAME PROPERTY OF CELSIUS AND THE BANKRUPTCY ESTATE , CELSIUS HAS NOT PROVEN INFORMED CONSENT BY THE CUSTOMER AND COMPLIANCE WITH ALL RULES OF CONSUMER PROTECTION**

In general consent with a contract is proven by signature of the parties. If Celsius claims the customers consented with the a transfer of property, Celsius has to provide documents with the signature of the opposing party and other customers.

Clicking yes without obligation to read fully the terms of use and without explicit warning to a consumer and, above all, in a language the user can fully understand, since these are legal terms and I am not a native speaker of English and certainly do not master legal terms used in such terms, does not reflect a full understanding and acceptance of the terms of use.

If by example my energy company puts in its terms of use that my solar panels become their property just and only because I clicked OK on a webpage, well that would be a global legal novelty...

And if Celsius was really the owner, did Celsius behave as an owner? Were all earn account balances stated on the active side of the balance sheet of Celsius? Did Celsius pay all due taxes on these crypto assets? Did Alex Mashinsky and others ever say in AMA's and interviews that our coins were theirs and that they owned everything while we owned nothing?

If Celsius was an owner, Celsius should have behaved as the owner. Quod non.

Under title 16. 'Taxes' it is stated by Celsius that '*you are solely responsible for reporting and paying any taxes arising from your use of the Services.*' Apparently Celsius was no owner because Celsius did not pay any taxes on our digital assets. Celsius expected us to pay taxes on our assets.

# CONCLUSION

WHEREFORE,

Volkan Altunbay, respectfully requests that the Court determines that his digital assets not property of the estate of Celsius; that the Debtors' proposed Scheduling Order and Motion be DENIED, and this Objection be SUSTAINED.

for the reasons stated above, the court should find the Debtors' agreement with their EARN customers null and void or lacking full consent of the Earn customers or at least ambiguous and should be construed against the Debtors.

Furthermore the Court should find that there is no legal ground, agreement or contract by which ownership of digital assets of Earn customers was transferred to the Debtors who fail in the burden of proof of such legal transfer of property.

The court should further find that the agreement with the Debtors' EARN customers resulted in the loan of digital assets to the Debtors, according to the Debtors' own terms of use, with certain rights granted to the Debtors to use the EARN customers' digital assets to generate profits for rewards.

Lastly, the Debtors' motion for authority to sell the EARN Assets should be denied in its entirety because the Debtors do not own the EARN assets and, therefore, they are not assets that the Debtors may use, sell, or lease under section 363(b) of the Bankruptcy Code.

Dated: November 29, 2022

Antwerp, Belgium,

Respectfully submitted,

By: Volkan Altunbay

Pro Se Creditor

# CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2022, a copy of the foregoing Objection was electronically transmitted to those listed on the Court's Electronic Mail Notice list, namely the list named Core 2002 in pdf format as find on the Stretto website, namely: https://cases.stretto.com/celsius/notice-lists/

Dated: November 29, 2022

Antwerp, Belgium,

By: Volkan Altunbay

Pro Se Creditor