**Víctor Ubierna de las Heras**
**Email: victorub@protonmail.com**
**Telephone +34 699760721**

**Pro se Creditor**

**UNITED STATES BANKRUPTCY**
**COURTSOUTHERN DISTRICT**
**OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| | ) |

Chapter 11

Case No. 22-10964 (MG)

(Jointly Administered)

**Related documents: 1426**

## VÍCTOR UBIERNA DE LAS HERAS OBJECTION TO DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS' KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF

Víctor Ubierna de las Heras, *pro se* creditor, states as follows in support of this

Limited Objection to the *Debtors' Amended Motion For Entry Of An Order (I)*

*Approving The Debtors' Key Employee Retention Plan And (Ii) Granting Related*

*Relief*, filed by the Debtors with docket number 1426:

### <u>OBJECTION</u>

1.    Only counsel to the Committee, counsel to the Examiner, and the U.S. Trustee has been

provided with the names of the Participants. Thus, I cannot fairly argue whether the

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030

bonus is to only be perceived by non-insiders. Additionally, it seems like debtors are trying to use the less restrictive section 503(c)(3) of the Bankruptcy Code, instead of 503(c)(1) of the Bankruptcy Code and I am also objecting to that. I am writing this objection based on a lot of unknowns, but its main points are: 1. Employees that with insiders' information withdrew their coins in late May or early June should not receive the bonus as they are likely insiders. 2. Members of the Slack channel that showed big transactions (of insiders and not insiders) were able to perform insider trading and should also not perceive any kind if bonus. I do not oppose that employees that did not withdraw coins in May or June and thus are also victims of the fraud of Celsius and perform essential services to perceive the bonus.

2.     A number of employees withdraw their coins in late May or early June, at the same time that insiders' withdrawals happened. For example, Celsius Head of Product Control and Financial Planning was able to withdraw his money in the morning of June 12, 2022. Based on the definition of insider made by debtors, these employees with "Head", "Manager",·or "Vice" in its title are not insiders, but when they were able to withdraw on June 12 they sure are or at least knew insider information. Other employees with manager or head in its title withdrew their coins in May. From the Examiner's Interim Report and other public information, we know that the Celsius Board became aware of the dire situation the company was in at the May meeting. Employees that after this board meeting withdraw their coins in very high probability knew of this, and as insiders they should not receive any kind of bonus. Even if not considered insiders they should not be proposed for a bonus while customers have their coins locked and them not. As the employee names proposed by the Debtors to receive

the KERP bonus are redacted I cannot know if any of the one that withdrew just before the Pause is proposed to receive a bonus. Employees that were able to withdraw just before the Pause should be considered insiders or at least that they acted on insiders' information. Additionally, it is not fair, and it would not help any future Reorganization Plan, that while customers coins are still locked, employees that were able to withdraw their coins before the pause are to receive a bonus.

I object to any of these employees to receive a KERP bonus. Cameron Crews, another pro se creditor of Celsius, has published on his Twitter account the following investigation. It is based on public data from LinkedIn that has been checked against the SOFAs. People and transactions detailed here:

- A DeFi Security Researcher at Celsius withdrew 0.077 BTC ($2.2k) on 5/12/22 and 0.169 BTC ($5.1k) on 6/8/22, leaving only 10k CEL behind. Transaction receipt and Schedules and SOFA confirmation in Exhibit B.

- A Celsius Senior Software Architect withdrew $46,700 USDC from his Celsius Earn account on May 17th.

- A Celsius Instructional Designer on 6/8/22 withdrew 0.49 BTC ($14.9k) and 5 ETH ($9k). He also transferred $5k USD to Custody on 4/14 where $4.2k rests today.

- **A Celsius Data Scientist** didn't want to experiment with the prospect of leaving his Matic on Celsius. **The day of the pause he pulled off all he had left**, 645 MATIC worth $337 at the time. Left behind were 459 CEL tokens and half an ETH.

- **Celsius's Head of Product Control and Financial Planning** executed his own

personal escape plan to get his crypto out of Celsius mere hours before withdrawals were closed. **At ~1pm EST on June 12th**, he took $89k off the platform in USDC/BTC/ETH & deposited straight into Coinbase.

- A Celsius employee listed as a "priority unsecured" creditor for 1148 CEL from the estate also managed the neat trick of transferring his crypto from his Earn account to Custody account on June 11th. Only 448 1INCH and BTC worth a combined $374.

- Celsius' Global Treasurer removed all his treasure from Celsius prior to the 90-day window, leaving only 0.003 CEL and 0.096 USDC. Trace amounts suggest he zeroed out his balance prior to the SOFA cutoff of 4/14/22.

- Celsius' former VP Global Head of Marketing took it upon herself to withdraw $33,173 USDC on May 16th and 5.2 ETH worth $9.3k on June 10th. This suggest that word of the status Celsius was in may have spread beyond top management though.

- **Celsius' Head of Media Relations** emptied his remaining 0.12 BTC ($3.8k), 0.1 ETH ($150), and $520 GUSD from his Earn account to Withheld on Friday, June 10th **right before the pause**.

- A Celsius employee in charge of **VIP business development** and their Global Head of Sales withdrew 0.985 BTC worth $30k **on June 8th**, the Wednesday before the Pause.

- A Celsius "Coin Deployment Specialist" withdrew $36k in crypto from Celsius in May. In 5/5/22 withdrew $26.3k USDC, 2,493 MATIC ($2.9k) and 59.8 AVAX ($4.1k). On 5/20/22 he withdrew 5.2k DOGE ($432) and 5.2k ADA

($2.7k). This was most all he had, other than 40k in CEL tokens, which he likely got for free

- Celsius Head of Data Science moved 14 ETH from Earn to Custody on 6/11/22 and he withdrew 0.82 BTC on 5/31/22 ($26k) and 1.46 BTC on 6/11/22 ($41.8k). SOFA page 865.

- Another Celsius Data Scientist moved 0.26 BTC from Earn to Custody on 6/12/22 (the Pause) worth $7k at the time. Represented most of his holdings.

- A Celsius "User Experience" Research Manager withdrew 10 ETH on 5/27/22 ($17k) and transferred another 9.2 ETH ($16.3k) from Earn to Custody on that same day. SOFA p 2459

- The Head of Institutional Lending transferred 30,000 USDC from Earn to Custody on 5/9/22, then swapped it to be 0.97 BTC where it resides today. Another $10k from Earn became 205 SOL in Custody on 5/20 and $5k on 6/1 became 206 AVAX.

- Another employee has a SOFA withdrawal matching her name of 0.13 BTC ($3.8k) on 5/26. As a precursor, her funds were transferred from Earn to Withheld first. Sofa p 2989

- A Senior Risk Manager at Celsius withdrew 101 AVAX ($3k) on 5/19/22. And then the following amounts on 6/11/22 the day before the Pause: 0.31 BTC ($9.1k), 6.9 ETH ($11.5k) and 16.4K MATIC ($9k). Only 1.6k CEL was left behind.

- A Senior Software Engineering Manager at Celsius, DAVID LEO VEKSLER, withdrew 3.76 BTC on May 16th, worth $112,500 at the time. Sofa p 3389.

- A Cryptocurrency Product Control Manager at Celsius Network, ERIC VOIGTSBERGER, withdrew $10,202 USDC on 6/13/22 (12:55AM UTC), (https://etherscan.io/tx/0x249e5010718a7f271ca0b7076ed5b28849b89516724cb415d7ab7c50c5d48419). He was also able to move 1/3 of a #Bitcoin into "Witheld" status from Earn on 6/11/22. Sofa p 4217-4218.

- A Celsius Network Senior Customer Care Agent withdrew the last of his crypto from Celsius Earn on Saturday 6/11, 0.31 BTC worth $9k. Meanwhile, Celsius was telling customers their "Funds were Safe" even after the Pause on 6/12.

Thus, I object to any of the employees identified in this objection to receive any kind of bonus if they are included on the proposed KERP. It seems that a number of employees with the word Head or Manager in its job title did have insiders' information and were able to act on it in late May early June and others also. They should be considered insiders and not receive any bonus.

Even if not considered insiders they should also not receive a bonus because it would not be a best business decision.. Celsius argue in its amended motion that the KERP they propose is like other cases. However, Celsius case is not similar to other cases. Here, we have a company under accusations of misrepresentations to customers, under investigation for Ponzi and under accusation of multiple violations of securities laws of different states. All of that, while the life saving of many many people are lock and people cannot pay for its retirement or studies. Celsius case is like no other and this KERP should not be authorized.

As the US Trustee explained in his original objection: "*Section 503(c) restricts transfers made to "insiders" of a debtor. 11 U.S.C. § 503(c). Pursuant to the Section*

*101(31) of the Bankruptcy Code, if a debtor is a corporation, the term "insider"*
*includes an officer of the debtor. 11 U.S.C. § 101(31)(B)(ii). A vice president as an*
*officer is presumptively an insider. In re Foothills Texas, Inc., 408 B.R. 573, 579*
*(Bankr. D. Del. 2009). Moreover, regardless of title, a person with broad*
*responsibilities over significant aspects of a debtor's business is considered an insider,*
*even if he or she is not a member of senior management. Id. at 584 (finding vice*
*presidents who had broad responsibilities over significant aspects of debtor's business,*
*to be insiders); see also Borders Group, 453 B.R. at 469 (Bankr. S.D.N.Y. 2011)*
*("[i]nsider status can also be determined on a case by-case basis based on the totality*
*of the circumstances, including the degree of an individual's involvement in a debtor's*
*affairs")".* Here, we see that employees that hold job titles that include the word Vice-
president, Manager or Head withdraw their money at the same time that insiders did
and may have privileged knowledge of what the board was talking. Further, some were
even able to withdraw the day of the pause (as opposed to customers that were leave in
a pending status). They for sure are also insiders or operated with insiders' knowledge
and power. If the people, I have previously write about are included in the proposed
KERP or other that withdrew their coins early June or late May are included in the
Bonus Motion they are to be considered insiders or not be allowed to perceive a bonus.

Debtors argue that the KERP is a "Sound Exercise of the Debtors' Business
Judgment". Well, I oppose that giving bonus to employees that may have withdrawn
their coins while your customers have theirs locked is a good business judgement,
specially is debtors want to reorganize.

3.    It has been published that a Slack channel that notified employers of large withdrawals
existed. This was leaked by a Celsius employee to Tiffany Fong. "a slack channel

notified employees of all large withdrawals off the platform. Many employees may have been aware of insider withdrawals before the freeze". Her tweets and the conversation with the leaker are attached as Exhibit A.

This slack channel allegedly informed of the necessity of coins (example include in exhibit A). This means that some employees would have been able to watch what Alex and Daniel were withdrawing and then act themselves accordingly. These means that these employees clearly performed what in other businesses would be called Insider Trading and should not perceive additional bonus now.

It has been further alleged by another Celsius employee that this Slack Channel has had its contents deleted by Celsius. Even if

4.   The two general overriding policies of Section 503 of the Bankruptcy Code are: (i) to preserve the value of the estate for the benefit of its creditors and (ii) to prevent the unjust enrichment of the insiders of the estate at the expense of its creditors. In re Journal Register Co., 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009) (citing Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98. 101 (2d Cir. 1960)). Thus, the KERP proposed should be denied.

5.   Furthermore, I do not object to any employee that did not withdraw any coin before The Pause to receive the KERP bonus if found necessary by others.

### **Reservation of rights**

Víctor Ubierna de las Heras reserves all rights belonging to him, including but not limited to supplementing the exhibits in this objection and filing a joinder to any other objection.

### **Conclusion**

For the foregoing reasons, the Court should deny the amended Motion to approve a KERP

plan if any employee that withdrew their coins is included.


Dated: December 1, 2022


Madrid, Spain                Respectfully submitted,

                                            Víctor Ubierna de las Heras
                                        By: /s/ Víctor Ubierna de las Heras

Víctor Ubierna de las Heras
Pro se creditor
+34 699760721
victorub@protonmail.com

**<u>Exhibit A</u>**



So context - as I'm sure you know, you can embed Slack bots that alert the company on different things; ie, twitter mentions, broken APIs, whatever.

3:23 PM

There was a slack channel that basically alerted when the hot wallets need topping off; ie, large withdrawals were requested. Nothing out of ordinary or to be scared, but the bot would literally post a user email and what they were requesting; ie

"Tifffong69@hotmail.com requesting 100,000 DOGE. Wallet balance currently 20,000, please add more"

3:24 PM

basically any large (if I recall, $t50-100k was the lower limit) withdrawals were posted in the slack channel because there





basically any large (if I recall, $t50-100k was the lower limit) withdrawals were posted in the slack channel because there needed to be additional security checks on the user and/or retrieving assets from cold storage

so whatever Alex and Daniel and the others were withdrawing, should have been visible.

3:26 PM

maybe they disabled it or got better at operational control (it was wild that any employee could monitor that channel)

But the point is that some number of employees had to 'see' what Alex and others were doing, if they were moving large quantities of personal CEL token out

3:33 PM

38          223



Channels

\# ae_demo_request

🔒 concur-users

Browse channels
Create a channel

hmmm - i have no clue what it was called...maybe something with the word 'alerts' in it. The person can browse channels by clicking the PLUS sign in slack:

i mean, in general it was wild to get alerted to big movements because any employee could listen to that channel; just googling an email address and trying to figure out the person.

The operations teams spoke in the channel as well, so the bot would say "We need 1000000DOGE from storage" and an ops person would say they'd done it, or if someone was sending back funds, etc.

basically the first issue is the lack of user privacy, second issue is that if the slack bot were



listen to that channel, just googling an email address and trying to figure out the person.

The operations teams spoke in the channel as well, so the bot would say "We need 1000000DOGE from storage" and an ops person would say they'd done it, or if someone was sending back funds, etc.

basically the first issue is the lack of user privacy, second issue is that if the slack bot were still running at the time of the lockdown, then people definitely saw that the exec teams were doing large withdrawals of their personal funds

but yea you could access Back Office and see what accounts Mashinsky had (just searching last name, so you could see all the various wallets by his holding company and his wife, etc)

12:07 PM

**Tiffany Fong** ✓ @TiffanyFong_ · Nov 7

Replying to @TiffanyFong_

A second employee confirmed this slack channel exists, but noted it has since been cleared: "This exists but there are no messages there anymore. Can't say exactly what happened but it's empty. Could've been cleared for security issues. We shouldn't share PI data that openly."

💬 4          🔁 2          ♡ 66          ⬆