Hearing Date: December 7, 2022 at 9:00 a.m. (prevailing Eastern Time)

| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS'**
**MOTION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING**
**THE DEBTORS TO REOPEN WITHDRAWALS FOR CERTAIN**
**CUSTOMERS WITH RESPECT TO CERTAIN ASSETS HELD IN THE CUSTODY**
**PROGRAM AND WITHHOLD ACCOUNTS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this omnibus reply (this "Reply") in support of the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 670] (the "Motion")[2] and in response to the Objections,[3] and submit as follows:

**Preliminary Statement**

1. Through the Motion, the Debtors seek to return a limited set of assets associated with the Custody Program and Withhold Accounts, to the extent the Court determines that such assets are not property of the Debtors' estates, and that the Debtors do not have potential preference claims or other causes of action with respect thereto.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the *Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad Hoc Groups With Respect to the Custody and Withhold Issues* [Docket No. 1044] (the "Scheduling Order").

[3] "Objections" shall mean, collectively, the *Objection Filed by Benjamin Murken* [Docket No. 725] (the "Murken Objection," and such claimant, "Murken"), the *Objection Filed by John Smith* [Docket No. 753] (the "Smith Objection," and such claimant, "Smith"), the *Omnibus Objection to the Debtors' Motion Seeking entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief Docket #670, to the Ad Hoc Group of Custodial Account Holders' Adversary Case #22-01142 Complaint for Declaratory Judgement Docket #662, and to the Ad Hoc Group of Withhold Account Holders' Motion for Relief From the Automatic Stay Docket #737* [Docket No. 914] (the "Crews Objection," and such claimant, "Crews"), the *Limited Omnibus Objection of the United States Trustee to: (I) the Debtors' Motion Seeking Entry of an Order Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts [ECF Doc. No. 670] and (II) Motion Seeking Entry of an Order Permitting the Sale of Stablecoin in the Ordinary Course [ECR Doc. No. 832]* [Docket No. 933] (the "UST Objection," and such claimant, the "U.S. Trustee"), the *Joinder to Cameron Crews's (Docket #914) "Omnibus Objection to the Debtors' Motion Seeking entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief Docket #670, to the Ad Hoc Group of Custodial Account Holders' Adversary Case #22-01142 Complaint for Declaratory Judgement Docket #662, and to the Ad Hoc Group of Withhold Account Holders' Motion for Relief From the Automatic Stay Docket #737"* [Docket No. 951] (the "Öberg Objection," and such claimant, "Öberg"), the *Omnibus Objection to Court Filings Taking Positions on Which Coins are Custody Property, D.R. Nos. 855, 737, 760, and 662* [Docket No. 954] (the "Herrmann Objection," and such claimant, "Herrmann"), the *Amended Supplemental Response, Declaration, Exhibit, and Request for Relief (Revision of Original Filing D.R. 1-43, In Response to D.R. 954)* [Docket No. 1058] (the "Herrmann Supplemental Objection"), the *RH Montgomery Properties, Inc.'s Limited Objection to the Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1293] (the "RHM Objection," and such claimant, "RHM"), and the *Joinder of Adrian Perez-Siam to RH Montgomery Properties, Inc.'s Limited Objection to the Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1311] (the "Perez-Siam Joinder," and such claimant, "Perez-Siam").

2

2.  The Debtors, the Committee and the Ad Hoc Groups are presently litigating the Phase I Issues and have submitted the Phase I Briefs.[4] The Phase I Issues—which the Court will rule on contemporaneously with this Motion—includes a threshold issue that is critical to the adjudication of the Motion—namely, whether the Custody Assets and Withhold Assets are property of the Debtors' estates.[5] In light of such separate briefing, the Phase I Issues are not addressed again in this Reply. Rather, this Reply focuses on responding to other arguments and allegations raised in the Objections.

3.  The Objections mainly raise three arguments in opposition to the Motion. ***First***, a number of Objections argue that it is premature for the Court to rule on the Motion pending submission by the Examiner of her final report and the filing by the Debtors of their schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules and SOFAs"). These Objections contend that parties' entitlement to assets on Celsius' platform cannot be adjudicated until parties have a better understanding of the Debtors' assets, liabilities, programs, coin holdings, and related issues. Since the filing of these Objections, however, the Debtors have filed their Schedules and SOFAs and the Examiner has filed her Interim Report (as described below). The Interim Report was consistent with the Debtors' descriptions of the Custody Program and Withhold Accounts in the Phase I Declarations (as defined below) and other documents filed

---

[4] On November 5, 2022, in accordance with the Scheduling Order, the Debtors submitted the *Debtors' Memorandum of Law Regarding Phase I Custody and Withhold Issues* [Docket No. 1291] (the "Phase I Opening Brief"). Simultaneously herewith, the Debtors are also filing the *Debtors' Responsive Brief on Phase I Custody and Withhold Issues* (the "Phase 1 Reply Brief," and together with the Phase I Opening Brief, the "Phase I Briefs").

[5] Such issues are (a) whether Custody Assets and Withhold Assets are property of the Debtors' estates, including whether the terms of use are unambiguous on the issue of ownership of such assets and (b) if such assets are not property of the Debtors' estates, whether the Debtors should nonetheless be allowed to continue to hold the Custody Assets and Withhold Assets, and maintain the status quo, with respect to individuals or accounts where the Debtors have potentially viable claims, including, without limitation, preference claims (collectively, the "Phase I Issues").

3

with the Court. Moreover, the Court will rule on whether the Custody Assets and Withhold Assets are property of the Debtors' estates in connection with the resolution of the Phase I Issues. Accordingly, the issues presented in this Motion are ripe and should be adjudicated by the Court following the resolution of the Phase I Issues.

4. **Second**, certain Objections argue that no assets may be withdrawn from the Debtors' platform until title to **all** assets on the Debtors' platform (*e.g.*, assets in the Earn Program and the Borrow Program) has been adjudicated by the Court. These Objections should be overruled; they merely seek to delay withdrawals of customer assets off the Debtors' platform in the hopes that such assets may be used to satisfy other customer claims and increase their own recoveries. To the extent that the Court determines that the Custody Assets or Withhold Assets are not the property of the Debtors, and instead are the property of the customers, such assets should be promptly returned to their rightful owners (unless the Debtors have potential claims with respect to such assets, as argued in the Phase I Briefs). How the Court rules with respect to assets in the Earn Program or Borrow Program is not relevant to this determination, and there is no reason to delay returning certain Custody Assets and Withhold Assets until the Court issues rulings resolving the ownership of all assets on the Debtors' platform.

5. **Finally**, some Objections argue that fairness requires all customers of the Debtors—irrespective of which program or account their assets are associated with, or the applicable contractual rights of the users—be treated similarly and allowed to withdraw assets off the Debtors' platform on the same terms. Customers' rights materially differ depending on which program or account they participated in, and what the customers' contractual rights are under the Terms of Use. An indiscriminate withdrawal or a blanket declaration of property rights across

4

different programs or accounts would have no basis in law whatsoever and would run afoul of the Debtors' duty to maximize value for all of their stakeholders.

6. For the reasons described in this Reply and the Phase I Briefs, the Objections should be overruled.[6]

## Reply

### I. It Is Not Premature to Permit Withdrawals Following a Ruling on the Phase I Issues.

7. The U.S. Trustee, Crews, Herrmann, and Öberg contend that the Court should delay ruling on the Motion until further disclosures are made by the Debtors, the Examiner has completed her investigation, and/or the Court has ruled on whether assets in different types of programs are property of the Debtors' estates.[7] These Objections should be overruled.

---

[6] In addition to the arguments discussed in this Reply, attached hereto as **Exhibit A** are summary replies to further arguments raised in the Objections. Importantly, the Debtors have not responded to certain objections that are beyond the scope of the Motion, including, without limitation, issues related to title to Earn Assets which are separately addressed in connection with the *Debtors' Amended Motion Seeking Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1325] (the "Earn and Stablecoin Motion"). This Reply also does not address the limited objections to the Motion set forth in (a) *The Official Committee of Unsecured Creditors' (A) Opening Brief on Phase I Custody and Withhold Issues and (B) Statement in Partial Support of and Limited Objection to Debtors' Custody and Withhold Motion* [Docket No. 1290] (the "Committee Objection") and (b) the *Ad Hoc Group of Custodial Account Holders' (A) Phase I Opening Brief and (B) Limited Objection to the Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1292] (the "Custody Ad Hoc Group Objection"). The Committee Objection and the Custody Ad Hoc Group Objection are instead addressed in the Phase 1 Reply Brief, as permitted by the Scheduling Order. The omission of a response to an Objection should not be taken as a waiver of the Debtors' arguments. The Debtors reserve all rights with respect to such arguments, including rights to supplement this Reply with arguments live at the hearing.

[7] *See, e.g.*, UST Objection at 9 ("At this juncture, there are too many questions regarding the Debtors' cryptocurrency holdings to approve any withdrawals . . . . any proposed distribution . . . should take into account the findings of the Examiner and the Examiner's Report."); Crews Objection at 2 ("I ask this court to delay decisions on motions which may materially affect customer recoveries until the Examiner is able to investigate the aforementioned scope, so it can be conclusively determined what customer assets *are* and *are not* property of the estate") (emphasis in original); Herrmann Objection at 3 ("I am asking you to order defer judgment while the examiner examines, and the UCC gathers more information . . . ."); Öberg Objection at 2 ("Therefore I respectfully request the court and different parties to consider whether a decision on Earn deposit ownership should be made before deciding on the nature of the possible Custody account asset release.").

8. Since the filing of these Objections, a considerable amount of court filings have been made that directly address the Objectors' concerns for additional disclosure. ***First***, on October 5, 2022, each of the Debtors filed its respective Schedules and SOFAs. The Schedules and SOFAs, which totaled approximately 3,000 pages, include detailed information with respect to hundreds of thousands of claims against, assets of, and contracts of each of the Debtors.[8] ***Second***, on October 25, 2022 and December 1, 2022, the Debtors filed declarations in connection with the Phase I Issues [Docket Nos. 1192, 1531, 1532] (the "Phase I Declarations"). The Phase I Declarations explain in detail the functioning of the Custody Program and Withhold Accounts, the mechanisms used prior to the Pause to transfer digital assets within Celsius' Fireblocks platform, and balances of digital assets in Custody Program and Withhold Accounts, among others. ***Finally***, on November 19, 2022, the Examiner filed the *Interim Report of Shoba Polly, Examiner* [Docket No. 1411] (the "Interim Report"). The Interim Report, which spans over more than 80 pages, addresses the following key questions and certain related issues: (a) how and when the Custody and Withhold wallets were created; (b) whether the Custody and Withhold wallets have only ever held Custody and Withhold coins, respectively, and whether the Custody and Withhold wallets include coins that have been designated as pledged collateral; (c) the process by which coins were transferred in and out of Custody and Withhold wallets; (d) the balance of assets in Custody and Withhold accounts and Custody and Withhold liabilities in the ten days before and after the pause by coin; and (e) the number and types of coin that are currently in Custody and Withhold wallets as a step in an unsuccessful attempt to withdraw coins off of the platform (to the extent ascertainable).

---

[8] *Cf.* UST Objection at 9 ("At this juncture, there are too many questions regarding the Debtors' cryptocurrency holdings to approve any withdrawals or sales. Those questions arise both from the Debtors' lack of transparency evidenced in the Examiner Motion and the Debtors' failure to file schedules and statements of financial affairs.")

6

9. These extensive disclosures, which had not yet been made at the time the Objections were filed, are responsive to the concerns raised in the Objections.[9] Moreover, the Court is set to rule on whether the Custody Assets and Withhold Assets are property of the Debtors' estates in connection with the resolution of the Phase I Issues. As such, the issues presented in the Motion are ripe, and there is simply no reason to delay an adjudication of the Motion.

10. More specifically, the U.S. Trustee, Herrmann, and Crews request that the Motion be denied until the Examiner's final report is submitted.[10] While the Examiner has not yet filed her final report, the Court ordered that the Examiner file the Interim Report with respect to the Custody and Withhold Issues. The Court's mandate to file the Interim Report was meant to provide parties with a factual understanding of Custody and Withhold matters that may be implicated by the Motion and the Phase I Issues in advance of the filing of the final report.[11] Deferring a ruling on these issues until the final report is filed would defeat the purpose of the Court's mandate and unnecessarily delay the return of value to customers entitled to it.

## II. Withdrawals of Assets in the Custody Program or Withhold Accounts Need Not Be Deferred Until Further Adjudication of Title to Assets in Other Programs.

11. In his Objection, Crews requests that "the Examiner and the Unsecured Creditors' Committee (UCC) adequately resolve . . . title to customer assets across all categories before any

---

[9] As further explained in the Motion and other briefs filed in these cases in connection with issues of title to digital assets, the Debtors believe these issues may be adjudicated mainly based on the clear and unambiguous terms of the agreement that governs the relationship between the Debtors and customers, namely, the Latest Terms of Use. It is the Debtors' position that it is irrelevant to the appropriateness of the relief requested in the Motion in relation to Custody Assets and Withhold Assets whether other assets are property of the Debtors or of customers.

[10] *See, e.g.*, UST Objection at 2, 9; Herrmann Objection at 19; Crews Objection at 2.

[11] *See* Oct. 7, 2022 Hr'g Tr. at 50:20–23 (the Court noting, in the context of setting a deadline for the Interim Report "I think I would very much value your independent assessment of this issue [of whether property in the custody accounts or the withheld property is property of the Debtors]. The question is one of time. I think clearly you have to prioritize the issues you're going to deal with.").

7

customers withdrawals begin."[12] Similarly, Herrmann contends that "[t]he foregoing filings should be DEFERRED and quite possibly CONSOLIDATED into a broader, more comprehensive look at property rights and contracts across all Celsius programs."[13] Such delay is unwarranted and these Objections should be overruled.

12. As previously described, the Phase I Issues (including ownership of the Custody Assets and Withhold Assets) are set to be adjudicated prior to or simultaneously with adjudication of the Motion.[14] While issues of title of assets associated with the Debtors' other programs will not be resolved by that time, however, such issues have no bearing on the issue of legal title to Custody Assets or Withhold Assets. To the extent the Court determines that account holders, and not the Debtors, have legal title to the Custody Assets or Withhold Assets (and that the Debtors do not have preference claims or other causes of action related thereto), then such property should be potentially returned to the relevant account holders, and need not wait for the Court to issue unrelated rulings on the ownership of all cryptocurrencies on the Debtors' platform.

### III. There is No Legal Basis for Permitting Any Customer to Withdraw Assets from the Debtors' Platform Other Than Custody Assets and Withhold Assets.

13. In their Objections, Smith, Murken, Crews, and Herrmann contend that fairness requires all customers of the Debtors—irrespective of which program they participated in—be treated similarly and allowed to withdraw such assets.[15] These allegations lack any basis and should be overruled.

---

[12] *See, e.g.*, Crews Objection at 13.

[13] *See, e.g.*, Herrmann Objection at 20.

[14] *See Notice of Adjournment of Hearing on Certain Motions.*

[15] *See* Smith Objection, Murken Objection at 1 ("It would be fairer to allow every person with any account to withdrawal [*sic*] some crypto up to the court set cap limit."); Crews Objection at 5 ("As Earn and Custody accounts were both unknowingly exposed to the same risks of the Debtors' activities, they should be treated similarly in the recovery process ordered by the Court."); Herrmann Objection at 3 ("I believe that . . . treating

14. Digital assets transferred to Celsius pursuant to different programs on the Debtors' platform are subject to different rights and obligations.[16] For example, the Debtors have argued that coins in the Earn Program are property of the Debtors' estate, while coins in the Custody Program remain property of the applicable account holders, due to the different contractual provisions in the Latest Terms of Use with respect to the Earn Program and the Custody Program.[17] The Debtors understand that account holders would like to receive distributions as promptly as possible, but the contractual rights arising under the different accounts on the Debtors' platform are materially different. If the Motion is granted, it will be by reason of a ruling by the Court that the Custody Assets and/or Withhold Assets are not property of the Debtors' estates. That ruling would not mean that any customer is entitled to withdraw a like amount of assets from the Earn Program or other programs other than the Custody Program or the Withhold Accounts. Treating all users the same would ignore the various contractual differences and essentially place users with assets in the Earn Program—who are unsecured creditors of the Debtors—on an even footing with creditors who have title to their assets. Such indiscriminate treatment, which has no legal basis whatsoever, would be at odds with the fundamental bankruptcy goal of treating similarly situated creditors similarly and differently situated creditors differently.[18]

---

*all* customer deposits as customer property, will be the equitable—and legally correct—decision in this case.") (emphasis in original).

[16] *See, e.g.*, Oct. 7, 2022 Hr'g Tr. at 64:18-22 (the Court noting: "I'm making no rulings at this stage but the earn account holders, by virtue of the Debtors' terms of service, are in a far different position that the issues about the custody account holders and the withhold account holders.").

[17] *See* Motion ¶ 17 ("[U]nlike the Earn Program or the Borrow Program, cryptocurrency assets held in the Custody Program remain the property of the user under the Latest Terms of Use, and do not earn rewards."); Earn and Stablecoin Motion ¶ 4 ("the Terms of Use are crystal clear—any assets transferred into the Earn Program, and the proceeds thereof, are the Debtors' property.").

[18] *See Till v. SCS Credit Corp.*, 541 U.S. 465, 477 (2004) (explaining that "the court should aim to treat similarly situated creditors similarly"); *Musso v. Ostashko*, 468 F.3d 99, 104 (2d Cir. 2006) (holding that "equality of

9

### IV.  The Murken Objection and Smith Objection Lack Any Factual and Legal Basis.

15. The Smith Objection and Murken Objection object to the Motion to the extent that it does not allow Smith or Murken to withdraw assets off Celsius' platform.[19] According to these Objections, Celsius experienced a "technical issue" that prevented Smith and Murken from transferring their cryptocurrency assets from the Earn Program to the Custody Program. As a result, they contend that their balance of assets in the Earn Program should be treated as if they were in the Custody Program and be allowed to be withdrawn. The Smith Objection and Murken Objection should be overruled.

16. ***First***, neither Smith nor Murken provide any evidence of these alleged failed attempts to transfer their balance in the Earn Program to the Custody Program prior to the Pause nor of any communication with Debtors' employees regarding such attempt. Neither Smith nor Murken have submitted any declaration under oath on these matters and, for that reason, they fail to satisfy their evidentiary burden.

17. ***Second***, even should such evidentiary burden be met, Smith and Murken's digital asset balances are in the Earn Program. Neither Smith nor Murken set forth any legal basis in support of their argument that they should receive such treatment by virtue of their failed request to transfer their balances in the Custody Program. As a result, these Objection should be overruled, without prejudice for Smith and Murken to file a motion or other pleading arguing that their balance in the Earn Program should be treated as Custody Assets.[20]

---

distribution of assets among similarly situated creditors" is a "fundamental purposes of the Bankruptcy Code") (quoting 5 Collier on Bankruptcy ¶ 541.01 (15th ed. Rev. 2005)).

[19] *See* Smith Objection, Murken Objection at 1.

[20] For the avoidance of doubt, in the event Smith or Murken should carry their evidentiary burden to prove that a technical difficulty prevented Celsius from timely transferring their Earn Program balance to the Custody Program, the Latest Terms of Use are clear that the Debtors may not be held responsible or liable for any loss incurred by either Smith or Murken in that scenario. *See* Latest Terms of Use at § 11 ("Celsius is not and will

**V.    The Request that Withdrawals Be Conditioned to A Certification Under Penalty of Perjury Is Unwarranted.**

18.    The Herrmann Supplemental Objection requests that any customer that seeks to withdraw funds in furtherance of the relief granted under the Motion certify under penalty of perjury that such customers had no inside, non-public information from Celsius Network or its affiliates before the Pause.[21]  While the Debtors are sensitive to Herrmann's concerns, the Debtors believe that such a procedure would be unwieldy, costly, and would not successfully address Herrmann's concerns that a customer had non-public information that caused such customer to move any balances into the Custody Program or the Withhold Accounts just before the Pause.

19.    Specifically, requiring individuals to review and submit declarations regarding their knowledge would likely lead to significant questions from individuals regarding their individual circumstances, while raising complex factual and legal questions regarding what information was public, or material, or would cause a customer to transfer balances—not to mention the potential litigation that would ensue should Herrmann or others seek to follow up on these declarations to prevent individual customers from withdrawing assets.  This process would be extremely expensive compared to the relief requested, especially in light of the fact that, under the Motion, withdrawals are largely limited to cryptocurrency with a value less than the $7,575 threshold set forth in section 547(c)(9) of the Bankruptcy Code.

20.    Although Herrmann's request is inappropriate, the Debtors have tailored the relief requested in the Motion to preclude *any* withdrawals from current or former employees or insiders

---

not be responsible or liable for any loss or damage of any sort incurred by you as a result of such . . . operational or technical difficulties or suspensions of transactions.").

[21]    *See* Herrmann Supplemental Objection at 3.

11

of the Debtors or affiliates of current or former employees or insiders of the Debtors.[22] Accordingly, the Herrmann Supplemental Objection lacks merit, is redundant with the scope of the relief requested in the Motion, and should be overruled.

## Conclusion

21. For the foregoing reasons, as well as the reasons set forth in the Motion, the Debtors request that the Court overrule the Objections and enter the proposed order.

[*Remainder of the page intentionally left blank.*]

---

[22] *See, e.g.*, Motion ¶ 6.

| | |
|---|---|
| New York, New York<br>Dated: December 2, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:           jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* |

# Exhibit A

## IN RE CELSIUS NETWORK LLC, *ET AL.*, CASE NO. 22-10964 (MG)

### ADDITIONAL OBJECTION SUMMARY CHART[1]

| Objection | Response |
|---|---|
| • Custody and Earn funds were not properly segregated. Therefore, creditor groups with commingled funds are entitled to common recoveries. *See* Crews Objection at 3.<br><br>• Earn deposits and loan collateral are not estate property and programs are likely commingled. Therefore, depositors are similarly situated and entitled to common recoveries. *See* Herrmann Objection at 14, 16. | • As further described in the Phase I Opening Brief, the commingling of Custody Assets on Celsius' platform, if any, does not affect issues of legal title of such assets. Title to such assets and recoveries associated therewith are governed by the Terms of Use. *See, e.g.*, Phase I Opening Brief ¶ 22 ("The Debtors submit that the Terms of Use govern ownership of the Custody Assets regardless of how the Custody Assets were stored or transferred.").<br><br>• Issues of title to assets in the Earn Program and the Borrow Program are not relevant to the Motion, which deals with Custody Assets and Withhold Assets. |
| • Earn and Custody accounts were unknowingly exposed to the same risks of the Debtors' activities and, as such, should be treated similarly in the recovery process ordered by the Court. *See* Crews Objection at 5. | • The Objection does not cite to any legal basis in support of the allegation that assets exposed to the same risk should be entitled to the same recoveries.<br><br>• As further described in the Phase I Opening Brief and the Earn and Stablecoin Motion, Custody Assets and Earn Assets have different contractual rights under the Terms of Use and are thus not entitled to similar recoveries. *See* Phase I Opening Brief ¶ 17 ("The Terms of Use are unambiguous that Custody Assets do not constitute property of the Debtors but, rather, that such assets are customers' property."); Earn and |

---

[1] Capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Reply.

1

|  |  |
|---|---|
|  | Stablecoin Motion ¶¶ 39–40 ("The terms of use are unambiguous that earn assets are the Debtors' property."). Moreover, the Earn Program and the Custody Program were materially different in that users in the Earn Program earned rewards and users in the Custody Program did not (in light of the fact that under the Earn Program, title passed to the Debtors, and the Debtors were permitted to sell, stake, or otherwise rehypothecate such digital assets, while under the Custody Program, users did not earn rewards and title did not transfer to the Debtors). |
| • Customer withdrawals were funded by new customer deposits. Therefore Celsius met the technical definition of a Ponzi scheme. *See* Crews Objection at 5–6, 8.<br><br>• It will be more equitable for all creditors if the question of whether Earn returns are paid out at a loss are resolved by the Court and the Examiner before depositor funds are disbursed. *See* Crews Objection at 8. | • The allegation that customer withdrawals were funded by new customer deposits is inaccurate and not supported by evidence.<br><br>• If the Court determines that the Withhold Assets and Custody Assets are not property of the estate (and the Debtors do not have claims with respect thereto), such property should be promptly returned to the applicable customers. |
| • Earn accounts should have converted to Custody accounts after the Pause Date or after the Earn rewards had stopped. *See* Crews Objection at 8, 9. | • The Objection does not cite to any legal basis in support of the allegation that an Earn account may be converted to a Custody account in these circumstances. The Terms of Use expressly allowed for the Pause. *See* Latest Terms of Use ¶ 19 ("We have the right to suspend, freeze or close your Celsius Account at any time for any reason without advance notice, including by blocking your access to the Celsius Account or the Services."). Crews' argument, even if correct, amounts to a breach of contract claim that would be an unsecured claim.<br><br>• The Terms of Use do not provide for such a conversion in the event earn rewards are no longer earned. *See* Latest Terms of Use ¶ 12 ("If, at any time, for legal or other reasons, a Celsius Account is suspended or frozen by Celsius, Loaned Digital Assets connected to such Celsius Account shall not be eligible to earn Rewards."). |

2

| | |
|---|---|
| • Approval of the Motion should be conditioned upon the Debtors honoring the withdrawals of all Custody Assets. RHM Objection ¶ 5; *see* Perez-Siam Objection ¶ 7 (joining "RHMP in their request that entry of any order granting the Limited Withdrawal Motion be conditioned upon the Debtors honoring the withdrawals of <u>all</u> Custody Assets"). | • These issues are addressed in the Debtors' Phase I Briefs, which are incorporated by reference herein. |
| • The existence of potential preference actions against the owners of Custody Assets does not give the Debtors the right to withhold assets that are not property of the estate. Therefore, the Debtors' withholding of the Custody Assets without seeking any remedial relief, such as prejudgment attachment or an injunction, violates the rights of the owners of Custody Assets under the Due Process Clause of the United States Constitution. RHM Objection ¶¶ 4, 5. | |