**Hearing Date:** December 7-8, 2022 at 9:00 a.m. (prevailing Eastern Time)

**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
Andrea Amulic
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
        kwofford@whitecase.com
        sam.hershey@whitecase.com
        andrea.amulic@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
        gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## THE OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS' RESPONSE BRIEF ON PHASE I CUSTODY AND WITHHOLD ISSUES

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

RESPONSE ......................................................................................................... 4

   I.  Digital Assets Held By the Debtors in Commingled Aggregator
     Wallets Are Property of the Estate Subject to Account Holder Claims ............... 4

      A.  The Withhold Members Only Have Claims Against the Debtors' Estates ...... 4

      B.  The Digital Assets Held in Aggregator Wallets in the Amount
         of the Custody Shortfall Are Not Property of the Members of
         the Custody Group ........................................................................................ 7

      C.  The Court Should Not Apply the Lowest Intermediate Balance Test ............. 9

      D.  No Constructive Trust Was Established ...................................................... 10

   II.  The Court Should Not Compel Distribution of Digital Assets
     While Presumptively Valid Preference and Other Claims Remain
     to Be Adjudicated ............................................................................................... 12

      A.  The Debtors' Set-Off Rights Against Digital Assets Are Property
         of the Estate Protected by the Automatic Stay ............................................ 12

      B.  The Custody Account Holders Expressly Agreed to the Treatment
         They Now Argue Violates Due Process ...................................................... 13

      C.  The Custody and Withhold Groups Do Not Identify Any Authority
         Requiring the Debtors to Return Property in Which They Hold
         Presumptively Valid Claims ........................................................................ 13

      D.  The Court Should Exercise its Equitable Powers to Permit the
         Debtors to Retain Digital Assets Pending Adjudication of Preference
         or Other Claims .......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Begier v. I.R.S.*,
    496 U.S. 53 (1990) ...........................................................................................15

*Counihan v. Allstate Insurance Co.*,
    194 F.3d 357 (2d Cir. 1999) ............................................................................10

*Eden Place, LLC v. Perl* (*In re Perl*),
    811 F.3d 1120 (9th Cir. 2016) .........................................................................14

*In re Ames Dep't Stores, Inc.*,
    274 B.R. 600 (Bankr. S.D.N.Y. 2002) ..............................................................7

*In re Columbia Gas Systems, Inc.*,
    997 F.2d 1039 (3d Cir. 1993)............................................................................9

*In re Craig*,
    144 F.3d 593 (8th Cir. 1998) ..........................................................................12

*In re Enron Corp.*,
    No. 01 B 16034 (AJG), 2003 WL 1571719 (Bankr. S.D.N.Y. Mar. 27, 2003).....................10

*In re Flanagan*,
    503 F.3d 171 (2d Cir. 2007) ............................................................................10

*In re Peralta*,
    No. 18-16661, 2020 WL 13547175 (E.D. Pa. Dec. 4, 2020), *aff'd* 48 F.4th 178..................14

*In re Speer*,
    618 B.R. 380 (Bankr. D. Conn. 2020)..............................................................15

*In re Vichele Tops, Inc.*,
    62 B.R. 788 (Bankr. E.D.N.Y. 1986) ..............................................................10

*In re Westchester Ave. Marina Realty, Inc.*,
    124 B.R. 161 (Bankr. S.D.N.Y. 1991) ........................................................ 14, 15

*Law Debenture Tr. Co. of N.Y. v. Maveric Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) ..............................................................................8

*LTV Steel Co., Inc. v. Board of Education of the Cleveland CIty SChool District*
    (*In re Chateaugay Corp.*),
    93 B.R. 26 (S.D. N.Y. 1988)............................................................................15

*McHale v. Boulder Cap., LLC (In re 1031 Tax Grp., LLC)*,
    439 B.R. 78 (Bankr. S.D.N.Y. 2010) ..................................................................9

*Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield
    (In re Mid-Island Hosp., Inc.)*,
    276 F.3d 123 (2d Cir. 2002) ............................................................................11

*Rajala v. Gardner*,
    709 F.3d 1031 (10th Cir. 2013).................................................................. 13, 14

*S.E.C. v. Credit Bancorp, Ltd.*,
    290 F.3d 80 (2d Cir. 2002) ...............................................................................9

*Schuyler v. Littlefield*,
    232 U.S. 707 (1914) ..........................................................................................9

## STATUTES

11 U.S.C. § 105(a) ...............................................................................................15

11 U.S.C. § 362(a)(3) ..........................................................................................12

11 U.S.C. § 502(d) ...............................................................................................14

11 U.S.C. § 541(a) ...............................................................................................12

11 U.S.C. § 558......................................................................................................12

N.Y. Debt. & Cred. Law § 151 .............................................................................12

## MISCELLANEOUS

5 Collier on Bankruptcy, ¶ 553.03
    (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2022)..................................12

Adam J. Levitin, Not Your Keys, Not Your Coins: Unpriced Credit Risk In
    Cryptocurrency, 101 Tex. L. Rev. (forthcoming, 2022) ...................................10

Law Commission, Digital Assets Consultation Paper (Law Com No 256, 2022)...............10

The Official Committee of Unsecured Creditors (the "**Committee**"), appointed in the chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**Celsius**"), by and through its undersigned counsel, hereby files this response brief (the "**Response Brief**")[2] with respect to the Phase I Issues and the Debtors' Motion, and respectfully states as follows:

## Preliminary Statement

1.      Six key points in this litigation are undisputed.  <u>First</u>, digital assets held *in Custody Wallets* are not property of the Debtors' estates.  <u>Second</u>, there are not enough digital assets in Custody Wallets to satisfy the Debtors' Custody Account obligations.  <u>Third</u>, Withhold Accounts are not mentioned in the Terms of Use.  <u>Fourth</u>, there is no separate "Withhold Wallet" and no actual digital assets have been designated "Withhold" assets.  <u>Fifth</u>, the only digital assets from which balances associated with Withhold Accounts may be satisfied were commingled in Aggregator Wallets and could be deployed or otherwise used by the Debtors.  <u>Sixth</u>, each member of the Withhold Group transferred digital assets to the Earn Program and, on or about the time of the Pause, attempted to withdraw digital assets corresponding to its Earn Account balance, which led to the designation of its account balance as "Withheld."[3]

2.      The remaining issues are, therefore, (a) whether digital assets corresponding to balances associated with Withhold Accounts are property of Account Holders with Withhold Account balances, (b) whether digital assets held in commingled wallets that correspond in amount

---

[2]     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in *The Official Committee of Unsecured Creditors' (A) Opening Brief on Phase I Custody and Withhold Issues and (B) Statement in Partial Support of and Limited Objection to Debtors' Custody and Withhold Motion* [Docket No. 1290] (the "**Committee's Opening Brief**") or the Blonstein Declaration [Docket No. 1192], as applicable.

[3]     *Ad Hoc Group of Withhold Account Holders' Phase I Brief Pursuant to the Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1289] (the "**Withhold Brief**") Ex. A1-12 ¶ 8.  As used herein, "**Withhold Group**" shall mean the Ad Hoc Group of Withhold Account Holders and "**Custody Group**" shall mean the Ad Hoc Group of Custodial Account Holders.

to the shortfall in Custody Wallets are property of Custody Account Holders, and (c) whether the Debtors should be required to return digital assets corresponding to Custody Account Holders' and Withhold Account Holders' balances that are subject to presumptively valid preference or other claims pending adjudication of such claims. The Committee addresses these issues in turn.

3.      First, like all other Account Holders that transferred digital assets to the Earn Program, the Withhold Group members have claims against the Debtors for the distribution of like-kind digital assets. Each Withhold Group member has testified that its balances only became "Withheld" because moving balances to Withhold Accounts was necessary to withdraw digital assets from the Earn Program prior to the Pause.[4] The Debtors and the Examiner have explained that a user's decision to shift account balances from Earn Accounts to Withhold Accounts did not result in any movement of coins, but was only reflected as an accounting on the Debtors' ledger.[5] There are no "Withhold" digital assets or wallets: the Debtors did not segregate, identify, or otherwise treat any digital assets as "Withhold" customer assets. Instead, users seeking to satisfy balances associated with Withhold Accounts must look to assets in the Aggregator Wallets. Moreover, the Withhold Group members have testified that they did not know about "Withhold Accounts" at the time.[6] Like many other Account Holders, the Withhold Group members intended to withdraw digital assets and, like those other Account Holders, have claims against the Debtors.

4.      Second, the April 14, 2022 Terms of Use provide that Custody Account Holders have title only to digital assets actually held in Custody Wallets. Celsius employed an *ad hoc* manual reconciliation process to fund the Custody Wallets. That manual reconciliation process

---

[4]     *Id.*

[5]     *Interim Report of Shoba Pillay, Examiner* [Docket No. 1411] (the "**Examiner's Report**") at 70; *Supplemental Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, with respect to the Custody and Withhold Issues* [Docket No. 1532] (the "**Supplemental Blonstein Declaration**") ¶¶ 5-7.

[6]     Withhold Br. Ex. A1-12 ¶ 8.

was imperfect and not governed by any written procedures.  On the date of the Pause, on the Petition Date, and today, there was and is a shortfall between the digital assets in the Debtors' Custody Wallets and the Debtors' obligations to Account Holders who elected to participate in the Custody Program.  There are enough digital assets in the Debtors' commingled Aggregator Wallets to cover that shortfall, but the April 14, 2022 Terms of Use do not provide Custody Account Holders with ownership of any digital assets outside of the Custody Wallets and, even if they did, no specific digital assets in the Aggregator Wallets have been designated to satisfy obligations to Custody Account Holders.  The Custody Group members may have claims against the Debtors for their failure to transfer sufficient digital assets to the Custody Wallets, but that failure does not create a property interest in favor of Custody Account Holders as to digital assets held in the Debtors' other commingled wallets.

5.      At the status conference held on November 22, 2022, the Court asked the parties to address the application of the lowest intermediate balance test (the "**LIBT**") with respect to this dispute, namely whether the LIBT could be used to trace digital assets in the Debtors' commingled Aggregator Wallets.  Although the LIBT may be used to identify a *res* of assets that have been commingled, it is not appropriate when other creditors have competing claims to the commingled pool.  Here, the Debtors do not have sufficient digital assets to satisfy their obligations to many Account Holders beyond Custody and Withhold Account Holders.  Multiple groups of Account Holders may therefore have competing claims against or interests in the commingled pool of digital assets.  When commingled assets are subject to competing interests of multiple parties, they should be distributed on a *pro rata* basis.

6.      Finally, as this Court has previously stated, the Debtors should not be required to distribute any digital assets to Custody Account Holder and Withhold Account Holders that are

subject to presumptively valid estate claims, including preference claims. Distributing those digital assets only to later have to attempt to reclaim them would be inefficient, costly, risky, and value-destructive, and would dissipate estate property. The members of the Custody and Withhold Groups agreed that the Debtors may retain digital assets during a legal proceeding. The Debtors also have set-off rights against those digital assets, which are property of their estates and protected by the automatic stay. The cases cited by the Custody and Withhold Groups to support an immediate distribution, including cases concerning prejudgment attachment, are inapt and ignore that the Debtors possess the property in question, which is protected by the automatic stay.

<u>**Response**</u>

I.    **Digital Assets Held By the Debtors in Commingled Aggregator Wallets Are Property of the Estate Subject to Account Holder Claims**

A.    **The Withhold Members Only Have Claims Against the Debtors' Estates**

7.    Each member of the Withhold Group (the "**Withhold Members**") transferred digital assets to the Debtors to participate in the Earn Program. *See generally* Withhold Br., Ex. A1-12, ¶ 8. Each Withhold Member presumably accepted the Debtors' Terms of Use in connection with opening a Celsius account (and none has testified otherwise). The Withhold Members' account balances were designated as "Withheld" when they attempted to withdraw digital assets shortly before the Pause. *Id.* Suppl. Blonstein Decl. ¶¶ 5, 7.[7] Like all other Account Holders that transferred digital assets to participate in the Earn Program, the Withhold Members have contractual claims to receive the same type and amount of digital assets upon withdrawal. April 14, 2022 Terms of Use §§ 4(D), 11.

8.    The Withhold Group argues that it is different and that the Withhold Members have

---

[7]    "**Supplemental Blonstein Declaration**" is the *Supplemental Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, with respect to the Custody and Withhold Issues* [Docket No. 1532].

property interests in unspecified commingled digital assets equal to the balances associated with their Withhold Accounts. The Withhold Members argue that, while they may have granted Celsius title to digital assets they transferred to Celsius, that grant only lasted "for the duration of the period during which [they] elected to utilize [those digital assets] in the Earn Service." Withhold Br. ¶ 26 (citing April 14, 2022 Terms of Use § 13). The April 14, 2022 Terms of Use provide that Account Holders have a "call option on all loans made to Celsius to demand immediate, complete or partial repayment of any loan . . . through . . a withdrawal of Eligible Digital Assets. . . ." April 14, 2022 Terms of Use § 11. However, title does not transfer to Account Holders upon the withdrawal request, rather "repayment" terminates the loan and grant of title to Celsius. *Id.*[8] Each of the Withhold Members elected to withdraw digital assets days before the Pause, and selected to transfer their obligations from an Earn Account to a Withhold Account as part of that withdrawal request. No assets moved or were designated as "Withhold" assets as part of this process, and Withhold Members were not repaid. Suppl. Blonstein Decl. ¶¶ 5, 7. Moving balances from Earn Accounts to Withhold Accounts does not transform the Withhold Members' claims for the same amount and type of digital assets displayed as their account balances into property interests in specific digital assets.

9. Moreover, neither the Withhold Group nor Celsius can identify or return the specific digital assets transferred to Celsius by the Withhold Members. *See* Examiner's Report at 4 (explaining that assets in Aggregator Wallets "could no longer be traced back to a particular customer"). Put simply, the Withhold Members are in the same position as all other Account Holders who (a) attempted to withdraw but were unable to do so, whether before or after the Pause,

---

[8]    The April 14, 2022 Terms of Use are also clear that "[e]very transmission request is deemed pending until accepted by [Celsius]." *Id.*

(b) unsuccessfully sought to terminate their Celsius accounts after the Pause but were not repaid, or (c) wish to withdraw now. Each is subject to the automatic stay. *Mem. Op. and Order Sustaining Obj. to Lift Stay Mot. Filed by Daniel A. Frishberg* [Docket No. 695] at 2-3 ("Earn Account" holders appear to be unsecured creditors of Celsius, whether or not they demanded a return of the balance of their earn account before the chapter 11 petitions were filed but did not receive repayment because of the "pause on repayments" imposed by the Debtors."). That a Withhold Member first had to select to "move" their balance to a Withhold Account due to their geographic location does not change that legal conclusion.

10.    The intent and actions of the parties further evidence that the Withhold Members have claims against the Debtors, and not property rights in specific digital assets. In the Debtors' Brief, the Debtors argue that digital assets corresponding to balances in Withhold Accounts likely do not constitute property of the Debtors' estates because the Debtors did not intend to take title to those digital assets. Debtors Br. ¶ 28 ("Because Celsius never intended to accept these assets, they appear to have remained, at all times, property of the customers who transferred such assets.").[9] The Debtors indicate that they never intended to accept digital assets corresponding to balances associated with Withhold Accounts that were (1) transferred to Celsius by non-accredited investors after April 15, 2022, or (2) digital assets that the Debtors' platform did not support. *Id.* at 14.[10] The Withhold Members fit neither category. Rather, they transferred digital assets to participate in the Earn Program prior to April 15, and were initially Earn Account Holders. As set forth in the Amended Stablecoin Motion,[11] the Debtors intended to take title to and use digital

---

[9]    "**Debtors Brief**" is the *Debtors' Memorandum of Law Regarding Phase I Custody and Withhold Issues* [Docket No. 1291].

[10]    Mr. Goldstein, one of the Debtors' co-founders, has stated that he did not know about the existence of the Withhold Accounts until the Chapter 11 filings, and was unfamiliar with any specifics about those accounts. Examiner's Report at 72.

[11]    "**Amended Stablecoin Motion**" is the *Debtors' Amended Motion for Entry of an Order (I) Establishing*

assets transferred to the Earn Program. Am. Stablecoin Mot. ¶ 5. Moreover, the Debtors never moved any digital assets corresponding with account balance transfers from Earn Accounts to Withhold Accounts. Suppl. Blonstein Decl. ¶¶ 5, 7. The statements in the Debtors' Opening Brief are consistent with that position.[12] Withhold Account Holders therefore have claims, not ownership interests in any digital assets held by the Debtors.

11.    That position is also consistent with the conduct of the parties. Each Withhold Member presumably accepted the April 14, 2022 Terms of Use and permitted (or reaffirmed their permission to allow) the Debtors to lend, hypothecate, sell, or otherwise use the digital assets they had transferred to the Debtors. April 14, 2022 Terms of Use § 13. "Withhold account assets were not segregated from any other assets on Celsius's platform, or in any other way treated as customer assets . . . Those assets were . . . commingled and deployed in the same manner as new deposits from Earn customers or existing Celsius assets." Examiner's Report at 70. The Withhold Members consented to the Debtors commingling and using digital assets they had transferred through their participation in the Earn Program. April 14, 2022 Terms of Use § 13. "It is firmly established that if a recipient of funds is not prohibited from using the funds as his own and the recipient is not prohibited from commingling the funds with his own monies, a debtor-creditor relationship, not a trust relationship, exists." *In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 623 (Bankr. S.D.N.Y. 2002).

**B.    The Digital Assets Held in Aggregator Wallets in the Amount of the Custody Shortfall Are Not Property of the Members of the Custody Group**

12.    The April 14, 2022 Terms of Use are clear that only digital assets actually held in

---

*Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1325].

[12]    The Withhold Group's characterization of the Debtors' statement in a pleading as a judicial admission is incorrect. The inconsistent statements of one party are not binding on another.

Custody Wallets are the property of the Custody Account Holders: "Title to any of your Eligible Digital Assets in *a Custody Wallet* shall at all times remain with you and not transfer to Celsius." April 14, 2022 Terms of Use § 4(B); Committee's Opening Br. ¶ 37 (emphasis added). A Custody Wallet is defined as the "Virtual Wallet" where Celsius holds digital assets designated by customers to participate in the Custody Program. April 14, 2022 Terms of Use § 2. Custody Wallets are separate and distinct from the Debtors' Aggregator Wallets. Blonstein Decl. ¶ 11-14. The Court should enforce the unambiguous language in the Terms of Use and find that digital assets in the Debtors' Custody Wallets are property of Custody Account Holders. *Law Debenture Tr. Co. of N.Y. v. Maveric Tube Corp.*, 595 F.3d 458, 467-68 (2d Cir. 2010).

13.     Celsius moved assets to the Custody Wallets through a periodic *ad hoc* manual process that often did not accurately reflect its Custody Account obligations. Examiner's Report at 6. The Debtors did not have any memorialized rules or policies to guide this reconciliation process. *Id.* The process did not work perfectly and, as of the Petition Date, there was an approximately $15 million deficit between the digital assets held in Custody Wallets and the obligations the Debtors owed to Custody Account Holders (the "**Shortfall**"). Blonstein Decl. ¶ 13 n.7; *see also* Suppl. Blonstein Decl., Ex. B. There are no specific digital assets associated with the amount of the Shortfall. All digital assets, other than those in the Custody Wallets, are commingled with all other digital assets held by Celsius. Custody Account Holders have claims against Celsius for the Shortfall. Moreover, Celsius's failure to effectively custody digital assets raises other complicated issues, like at which time to measure those digital assets and whether the transfers of digital assets to the Custody Wallets after the Pause are avoidable. *Id., Ex. A.* At this time, there is no basis for treating digital assets that are not held in Custody Wallets as property of the Custody Account Holders.

**C.      The Court Should Not Apply the Lowest Intermediate Balance Test**

14.      When fungible assets are commingled in a single account, courts may apply the
LIBT to trace the commingled assets.  The LIBT allows the party attempting to trace to assume
that the subject assets are withdrawn last from a commingled account.  The lowest intermediate
balance of a commingled account represents the assets that have never been dissipated and are
therefore judicially determined to be reasonably identifiable.  *See, e.g.*, *Schuyler v. Littlefield*, 232
U.S. 707 (1914); *In re Columbia Gas Systems, Inc.*, 997 F.2d 1039, 1063-64 (3d Cir. 1993).
However, courts have discretion when determining how to allocate commingled funds.  *McHale
v. Boulder Cap., LLC* (*In re 1031 Tax Grp., LLC*), 439 B.R. 78, 82 (Bankr. S.D.N.Y. 2010).
"Courts in the Second Circuit and elsewhere, in addition to treatises relating to restitution and
trusts, have recognized the viability of a pro rata allocation of funds where such funds have been
commingled and multiple parties have claims to the funds."  *Id.*; *see also S.E.C. v. Credit Bancorp,
Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002) ("Courts have favored pro rata distribution of assets where,
as here, the funds of the defrauded victims were commingled and where victims were similarly
situated with respect to their relationship to the defrauders.").

15.      Here, the LIBT should not be applied.  There are hundreds of thousands of Account
Holders that have asserted (or may assert) claims for a distribution of digital assets from the
Aggregator Wallets, including Account Holders who, like the Withhold Members, may claim a
constructive trust in those digital assets.  If the Court were to apply the LIBT, it would be extremely
difficult to determine which Account Holders' funds should be traced at what time, and what
balances would apply to each Account Holders' digital assets.  Allowing the Withhold Group (or
the Custody Group) to apply the LIBT before other Account Holders with competing interests
would prejudice those other Account Holders.  Moreover, the Examiner's Report identifies
problems and inconsistencies with the Debtors' accounting practices that call into question

9

whether the Debtors can accurately track balances and assets at any given time. *See, e.g.*, Examiner's Report at 52-53.[13]  As the *1031 Tax Group* court found in applying a pro rata approach as opposed to a "first-in, first out" approach, the Withhold and Custody Groups should not get to cut the line ahead of all other creditors.  *In re 1031 Tax Grp., LLC*, 439 B.R. at 82.  Rather, the commingled digital assets to which multiple parties have claims should be distributed ratably.

### D.    No Constructive Trust Was Established

16.    The Withhold Group argues that a constructive trust was established over digital assets corresponding to Withhold Account balances, which would bring such digital assets outside of the Debtors' estates.  "[B]ankruptcy courts [are] reluctant . . . to impose a constructive trust on the property in the estate."  *In re Flanagan*, 503 F.3d 171, 182 (2d Cir. 2007); *In re Vichele Tops, Inc.*, 62 B.R. 788, 792 (Bankr. E.D.N.Y. 1986) ("[T]his court would be reluctant to recognize the [constructive] trust because such action would work an injustice on all the creditors not a party to this proceeding.  The general creditor body should not be prejudiced[.]").

17.    In any event, the Withhold Group has failed to meet its burden of proving a constructive trust based on the fact they have obligations associated with Withhold Accounts.  *In re Enron Corp.*, No. 01 B 16034 (AJG), 2003 WL 1571719, at *5 (Bankr. S.D.N.Y. Mar. 27, 2003), *aff'd*, No. 01-16034 (AJG), 2004 WL 726088 (S.D.N.Y. Apr. 2, 2004). New York law requires that a party claiming a constructive trust must establish four elements: (i) a confidential or fiduciary relationship; (ii) a promise, express or implied; (iii) a transfer of the subject *res* made in reliance on that promise; and (iv) unjust enrichment.  *Counihan v. Allstate Insurance Co.*, 194 F.3d 357, 361-62 (2d Cir. 1999).  Each of these elements is lacking here.

---

[13]    Where a company maintains unreliable books and records and commingles assets, the equitable approach to distribution of assets to which several parties claim entitlements is a *pro rata* approach.  *See, e.g.*, Adam J. Levitin, NOT YOUR KEYS, NOT YOUR COINS: UNPRICED CREDIT RISK IN CRYPTOCURRENCY, 101 Tex. L. Rev., at 51; Law Commission, DIGITAL ASSETS CONSULTATION PAPER (Law Com No 256, 2022), para. 17.66.

18. **_First_**, Celsius's relationship with the Withhold Account Holders is an ordinary commercial relationship, not a confidential or fiduciary relationship, because the parties were dealing at arms' length as debtors and creditors, without the addition of a trust or confidence relationship. *Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield (In re Mid-Island Hosp., Inc.)*, 276 F.3d 123, 130 (2d Cir. 2002) ("When parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances."). Celsius could not and did not act as a custodian of digital assets corresponding to balances associated with Withhold Accounts. Rather, upon designation of assets as "Withheld," Celsius immediately notified the Withhold Members that it could not hold digital assets on its platform for such account holders and instructed them to immediately withdraw any digital assets they had transferred. Examiner's Report at 6.

19. **_Second_**, the Withhold Members cannot show that Celsius made an express or implied promise to custody digital assets or, **_third_**, that they transferred digital assets to Celsius in reliance on any promise that the digital assets would be custodied. The only digital assets the Withhold Members ever transferred to Celsius were as part of the Earn Program. Moreover, Celsius could not – and did not – promise to custody any digital assets for Withhold Members because it was unable to do so and Withhold Members were instead notified "that any new coins sent to their accounts would not be credited, and that they should withdraw any such newly transferred crypto assets from Celsius." Examiner's Report at 6.

20. **_Fourth_**, any argument the Withhold Group can make regarding unjust enrichment applies with equal force to all Account Holders who can no longer withdraw or access digital assets. The Withhold Group should not receive special treatment because it sued first.

11

II.    **The Court Should Not Compel Distribution of Digital Assets While Presumptively Valid Preference and Other Claims Remain to Be Adjudicated**

A.    **The Debtors' Set-Off Rights Against Digital Assets Are Property of the Estate Protected by the Automatic Stay**

21.    Celsius has setoff rights against the digital assets in its possession under the Terms of Use, the Bankruptcy Code, and New York law.[14] These rights are property of the estate under section 541(a) of the Bankruptcy Code, which provides that a debtor's estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see also* 5 COLLIER ON BANKRUPTCY, ¶ 553.03, at 553-59[7][b] (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2022) (hereafter, "**Collier**") ("The debtor's right of setoff is property of the estate under section 541(a)…"); *In re Craig*, 144 F.3d 593, 596 (8th Cir. 1998) ("A debtor's right to setoff is property of the bankruptcy estate.").

22.    The Custody Group argues that the Debtors do not have a setoff right because the Debtors are holding the Custody Account Holders' property and therefore do not owe them a debt. Custody Br. at 23-24.[15] That argument ignores that the April 14, 2022 Terms of Use establish a contractual setoff right: "Celsius retains the right to set-off any Eligible Digital Assets in a Custody Wallet against any obligations you may have against us." April 14, 2022 Terms of Use § 4(B); *see also id.* § 9.

23.    The automatic stay prevents, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," which includes the Debtors' setoff right. 11 U.S.C. § 362(a)(3). The Custody and

---

[14]    April 14, 2022 Terms of Use § 9; 11 U.S.C. §§ 541(a), 558; N.Y. Debt. & Cred. Law § 151; *see also* Debtors' Br. ¶¶ 33-37.

[15]    The "**Custody Brief**" is the *Ad Hoc Group of Custodial Account Holders' (A) Phase I Opening Brief and (B) Limited Objection to the Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1292].

Withhold Groups' efforts to compel distribution of digital assets at this time are actions taken to exercise control over estate property, and should therefore be stayed pending adjudication of the Debtors' rights in and claims against those digital assets.

**B.    The Custody Account Holders Expressly Agreed to the Treatment They Now Argue Violates Due Process**

24.    Under the Terms of Use, Celsius can set off against digital assets, retain digital assets during the pendency of a legal proceeding, and suspend access to accounts at any time. April 14, 2022 Terms of Use §§ 9, 19.  That is precisely what the Debtors are doing here during the pendency of these chapter 11 cases and pending adjudication of the Debtors' presumptively valid claims.

25.    The Custody Group cannot rely on the Terms of Use when it helps their argument yet disclaim them when they prove inconvenient.  The Custody Group dedicates an entire section of its brief to arguing that the clear and unambiguous Terms of Use establish that the digital assets in the Custody Program are not property of the Debtors' estates.  Custody Br. at 15.  The Custody Group does not, and cannot, explain why those same "clear and unambiguous terms" do not entitle the Debtors to retain digital assets in these circumstances.  The Custody Group does not cite any case in which the party seeking return of its property agreed, in a contract that it admits is clear and unambiguous, to allow the counterparty to hold its property in circumstances that have arisen.

**C.    The Custody and Withhold Groups Do Not Identify Any Authority Requiring the Debtors to Return Property in Which They Hold Presumptively Valid Claims**

26.    The Custody and Withhold Groups have identified no case in which a court has required that a debtor dissipate property in its possession prior to the adjudication of its claims in that property.  The Committee's Opening Brief distinguishes the *Colonial Realty* case relied upon by the Custody Group.  Committee's Opening Br. ¶¶ 60-63.  *Rajala v. Gardner* is distinguishable on similar grounds.  709 F.3d 1031 (10th Cir. 2013).  There, the Court considered "whether

allegedly fraudulently transferred property is subject to the Bankruptcy Code's automatic stay *before* a trustee recovers the property through an avoidance action." *Id.* at 1032 (emphasis added). Noting that the property at issue was not in the trustee's possession, but was being held in escrow by the bankruptcy court, the court held that "allegedly fraudulently transferred property is not part of the bankruptcy estate until recovered[.]" *Id.* Here, unlike in *Colonial Realty* and *Rajala*, the Debtors continue to possess the digital assets at issue and are entitled to do so under the Terms of Use, making those cases inapt. Moreover, unlike in those cases, here the parties have agreed that the Debtors' claims are "presumptively valid." Scheduling Stip. ¶ 8. These cases therefore fail to address the Debtors' concerns that, not only will they expend substantial estate resources marshalling and distributing digital assets only to possibly have to bring those digital assets back, but that the estates' presumptively valid claims will be thwarted if those assets are dissipated.[16]

27.    The more appropriate analogues to the situation at hand are (a) cases in which courts recognize the existence of an avoidance action as a defense to a motion for relief from the automatic stay and (b) claim disallowance under section 502(d). The former is addressed in the Committee's Opening Brief. *See, e.g.*, Committee's Opening Br. ¶ 62. With respect to the latter, the Committee agrees with the Debtors' comparison to section 502(d). Debtors Br. ¶¶ 38-39.[17]

---

[16]    In *In re Peralta*, the district court held that a debtor could not retain possession of his home after a creditor had obtained a judgment of possession thereto. No. 18-16661, 2020 WL 13547175 (E.D. Pa. Dec. 4, 2020), *aff'd* 48 F.4th 178. And in *Eden Place, LLC v. Perl* (*In re Perl*), the Ninth Circuit Court of Appeals determined that a debtor's continued illegal occupancy of property that had been purchased by a third party was not sufficient to render it property of the estate. 811 F.3d 1120, 1130 (9th Cir. 2016). But here, unlike in *Peralta*, no judgment has been entered finding that they have no property interests in those digital assets and, unlike in *Perl*, the Debtors are not illegally holding digital assets. To the contrary, the Debtors have presumptively valid claims against those digital assets and should be permitted to retain them pending the adjudication thereof. Scheduling Stip. ¶ 8.

[17]    Section 502(d) provides that "the court shall disallow any claim of any entity from which property is recoverable under [an avoidance action] unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable . . . ." 11 U.S.C. § 502(d). Courts have found that, when an avoidance action is pending, a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer. *See, e.g.*, *In re Westchester Ave. Marina*

14

28.    The cases relied upon by the Withhold Group are even further afield.  The Debtors are not seeking a prejudgment attachment, but rather to protect their interests in digital assets already in their possession that are subject to presumptively valid estate claims. Tellingly, neither the Withhold Group nor the Custody Group has identified any case in which a court conducted a pre-judgment attachment analysis to evaluate whether assets subject to preference or other claims can be retained by the bankruptcy estate pending adjudication of such claims.

### D.    The Court Should Exercise its Equitable Powers to Permit the Debtors to Retain Digital Assets Pending Adjudication of Preference or Other Claims

29.    Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title." Specifically, courts may invoke section 105(a) "if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code," *In re Speer*, 618 B.R. 380, 386 (Bankr. D. Conn. 2020), or "to assure the orderly conduct of the reorganization proceedings," *LTV Steel Co., Inc. v. Board of Education of the Cleveland City School District* (*In re Chateaugay Corp.,* 93 B.R. 26, 29 (S.D. N.Y. 1988).  Here, permitting the Debtors to retain possession of the digital assets that are subject to preference or other claims would preserve one of the central pillars of the Bankruptcy Code—the right of all similarly-situated creditors to be treated equally—and avoid unnecessary cost and delay.  *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990); Committee's Opening Br. ¶ 63.

*[Remainder of Page Intentionally Left Blank]*

---

*Realty, Inc.*, 124 B.R. 161 (Bankr. S.D.N.Y. 1991).

Dated:  December 2, 2022        Respectfully submitted,
        New York, New York


        */s/ Aaron E. Colodny*
        **WHITE & CASE LLP**
        David M. Turetsky
        Keith H. Wofford
        Samuel P. Hershey
        Andrea Amulic
        1221 Avenue of the Americas
        New York, New York 10020
        Telephone:  (212) 819-8200
        Facsimile:  (212) 354-8113
        Email:  david.turetsky@whitecase.com
                kwofford@whitecase.com
                sam.hershey@whitecase.com
                andrea.amulic@whitecase.com

        – and –

        **WHITE & CASE LLP**
        Michael C. Andolina (admitted *pro hac vice*)
        Gregory F. Pesce (admitted *pro hac vice*)
        111 South Wacker Drive, Suite 5100
        Chicago, Illinois 60606
        Telephone: (312) 881-5400
        Facsimile:  (312) 881-5450
        Email: mandolina@whitecase.com
                gregory.pesce@whitecase.com

        – and –

        **WHITE & CASE LLP**
        Aaron E. Colodny (admitted *pro hac vice*)
        555 South Flower Street, Suite 2700
        Los Angeles, California 90071
        Telephone: (213) 620-7700
        Facsimile:  (213) 452-2329
        Email:  aaron.colodny@whitecase.com

        *Counsel to the Official Committee of*
        *Unsecured Creditors*