Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) EXTENDING THE
DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION
1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") in support of the *Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1317]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "Motion")[2] and in response to the objections filed with respect thereto.[3] In support of this Reply, the Debtors state the following:

**Reply**

1. The Debtors commenced these chapter 11 cases to accomplish two fundamental goals: *first*, to stabilize operations and take advantage of the breathing spell afforded by the automatic stay at a time when the nascent cryptocurrency industry was in the throes of a "crypto winter"; and *second*, to use chapter 11 as a means to maximize stakeholder value and return recoveries as soon as reasonably practicable. The Debtors worked during the initial months of these chapter 11 cases to advance these goals by engaging with numerous stakeholders—ranging from the U.S. Trustee, state and federal regulators, the Committee, the Examiner, individual customers, potential participants in the sale process, and other interested parties. These efforts are starting to yield results: the Examiner has issued an interim report that is consistent with the Debtors' prior pleadings; the sale of GK8 is on the cusp of completion; a robust marketing process

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3] *Limited Objection of Certain Celsius Borrowers to Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1475] (the "Borrowers' Objection"); *Victor Ubierna de Las Heras Objection to Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1476] (the "Ubierna de las Heras Objection"); *Objection to the Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1477] (the "Dukhon Objection," and together with the Borrowers' Objection and the Ubierna de las Heras Objection, the "Objections"). Furthermore, on December 2, 2022, Immanuel Herrmann, on behalf of himself and purportedly on behalf of "375 Celsius Earn creditors," filed the *Joinder of Three Hundred and Seventy-Five Celsius Earn Creditors to the Borrowers' Limited Objection to the Debtors' Motion for Entry of an Order Extending the Debtors' Exclusive Period to File a Chapter 11 Plan [D.R. 1475]* [Docket No. 1553] (the "Joinder"). In addition to the Objections and the Joinder, the ad hoc group of withhold account holders filed a limited objection [Docket No. 1494] but this limited objection was consensually resolved, as will be discussed in greater detail herein. Similarly, the Debtors received informal objections from both the U.S. Trustee and the Committee, but these, too, were resolved. In support of the resolution, the Committee filed the *Statement of the Official Committee of Unsecured Creditors Regarding Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1536] (the "Committee Statement").

2

for the Debtors' platform has piqued interest from potential bidders; the Debtors expect to resolve certain key legal issues in short order; and the Debtors continue to engage with the Committee on the terms of a new go–forward business plan that will underpin a potential standalone reorganization. To build on this momentum, it is imperative that the Debtors have additional time to propose and prosecute a chapter 11 plan. Accordingly, the Debtors filed the Motion to extend the Exclusivity Periods.

2. At the same time, the Debtors agree that these cases need to move forward briskly. The Debtors, therefore, engaged with parties that raised formal and informal objections on the grounds that the Exclusivity Periods extension the Debtors sought was too long. The Debtors are pleased to report that all objections from all represented parties have been fully resolved as follows: the Exclusivity Periods will be extended by the revised proposed order only through February 15, 2023, and the Debtors also agree to not utilize any automatic bridge order for a future extension of the Exclusivity Periods. The length of this extension is appropriately tailored to address the concerns raised in the Objections. This extension will provide additional time for key threshold legal questions to be resolved and allow sufficient time for all parties to review the Examiner's final report, while providing a near–term deadline for the Debtors to finalize and propose a chapter 11 plan.

3. Notwithstanding the resolution with all represented parties, and that the Debtors have clearly met their burden with respect to a first extension of the Exclusivity Periods, two *pro se* customers continue to object to the Motion.[4] These Objections lament the time–consuming nature

---

[4] Following receipt of the Objections and reaching the agreement in principle with the Committee, the Debtors reached out to each objecting party in an attempt to resolve all Objections. Mr. Ubierna de las Heras indicated that the revised timeline did not resolve his objection. The Debtors did not receive any response from Ms. Dukhon.

3

of the chapter 11 process as a basis for denying an extension of the Exclusivity Periods yet fail to suggest any alternative. Ms. Dukhon makes certain baseless accusations about the abuse of the bankruptcy process and notes that an "overwhelming" number of customers would like to cease any relationship with Celsius altogether, including on a go–forward basis. *See* Dukhon Objection at p. 2. The swiftest path forward to allowing customers to receive recoveries and close these chapter 11 cases is to embark on the most efficient chapter 11 process. Terminating the Exclusivity Periods, on the other hand, would be far less efficient.

4. Mr. Ubierna de las Heras makes a number of arguments, none of which are persuasive. Specifically, none of the cases cited in the Ubierna de las Heras Objection support the argument that exclusivity should not be extended through February 15, 2023. Mr. Ubierna de las Heras complains about the pending resolution of threshold legal issues. *See* Ubierna de La Heras Objection at pp. 2–3 ("Debtors and their Counsel have chosen to litigate everything. There is ongoing litigation regarding the earn issue, there is litigation and future litigation regarding both the collateral/loans issue and the equity issue is expected."). But Mr. Ubierna de las Heras does not explain how customer distributions can be made without first resolving these issues. Additionally, Mr. Ubierna de las Heras complains about the lack of creditor negotiations or good faith progress towards reorganization. In reality, the Debtors have negotiated with numerous parties in interest to build consensus (including regarding the Motion). The Debtors have made good–faith progress towards exiting chapter 11 through the successful marketing process of GK8 and the pending litigation to resolve critical gating legal issues. As the Committee acknowledges, productive plan negotiations have commenced and are continuing. *See* Committee Statement at pp. 2–4 ("The Debtors have now received initial indications of interest from potential plan sponsors and are scheduled to receive final bids on December 12, 2022, followed by an auction on

December 15, 2022 (if necessary). The Debtors are also developing a standalone plan for a new crypto-based financial services platform. The Debtors have solicited and received input from the Committee (including its co–chairs, who regularly speak with Mr. Ferraro and plan to continue to do so) and its advisors. . . . In conjunction with those efforts, the Debtors should *continue* to engage with their account holders regarding Celsius's efforts to develop a standalone plan. . . . [T]he Committee is prepared to *continue* to work with the Debtors on the standalone plan.") (emphasis added). Mr. Ubierna de las Heras complains of a lack of evidence of progress but the record in these cases is full of examples of progress made towards stabilizing operations, enhancing cryptocurrency security, marketing assets, administering claims, and addressing key legal issues, all of which is public, and which the Court can take notice of in extending the Exclusivity Periods.

5. For the reasons set forth in the Motion, the Debtors believe that a number of factors, including the size and complexity of these chapter 11 cases, progress made to date, and judicial and economic efficiency, provide cause to extend the Exclusivity Periods through and including February 15, 2023. This extension is clearly appropriate under the circumstances, and the Debtors have more than demonstrated cause to preserve their exclusivity at this important juncture. To allow any competing plans to be proposed at this early stage, before any parties have definitive guidance on the facts and conclusions set forth in the Examiner's forthcoming final report, or rulings on the threshold legal issues that will be litigated in December and January, would introduce chaos, and waste precious resources at a time when the Debtors simply cannot afford it.

6. On November 28, 2022, Immanuel Herrmann filed a letter with the Court "requesting an extension of [his] deadline to object" to the Motion. *See* [Docket No. 1474]. One day later, the Court denied Mr. Herrmann's request. *See* [Docket No. 1482]. Now, on

December 2, 2022, nearly four days after the unextended objection deadline on the Motion, Mr. Herrmann, on behalf of himself and purportedly on behalf of "375 Celsius Earn creditors," filed the Joinder, styled as a motion, purporting to join the Borrower's Objection. In reality, however, this was an untimely <u>objection</u> disguised as a motion. *See* Joinder at p. 1 ("We strongly object to the Debtors' requested extension of exclusivity until March 31, 2023 [*sic*] solicit votes on a plan until May 31, 2023. The amount of time is outrageous and a non-starter.").

7. What is more, Mr. Herrmann has no authority whatsoever to file any pleading—motion, objection, joinder, or otherwise—on behalf of others—a point the Court has already articulated to Mr. Herrmann. *See* Oct. 7, 2022, H'rg Tr. 66:16–25 ("THE COURT: I think the issue of representing others is something I don't think you're in a position to do. So, I think you can file for yourself but, you know, unless something is certified as a class action. . . . But I don't want to tell you you're on your own but – you know . . . You can file for yourself.").

8. Furthermore, Mr. Herrmann has not met any of the requirements of Bankruptcy Rule 2019, nor could he: he has not filed a statement; he cannot represent "multiple creditors or equity security holders"; and he does not fall into the very limited bucket of entities exempted from filing a verified statement.[5]

9. In any event, even if the Court were to find that the Joinder—which the Debtors believe is as an untimely objection—is indeed a properly filed joinder, the Debtors have resolved the Borrower's Objection by the filing of the revised proposed order. Thus, the Debtors believe that by resolving the Borrower's Objection, the Joinder is moot. After all, by their very nature,

---

[5] *See* Bankruptcy Rule 2019(b)(1) ("In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.").

joinders are derivative of the pleadings they seek to join.  *See* Case Management Order, <u>Exhibit 1</u> at ¶ 39 (a joining party is not "an independent proponent of the Court Filing . . .").

## **<u>Conclusion</u>**

10.  Accordingly, for the reasons set forth herein and in the Motion, the Debtors request that the Court approve the Motion and overrule the pending Objections and the Joinder.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors submit that the Court should overrule the Objections and Joinder and grant the relief requested in the Motion.

| | |
|---|---|
| New York, New York<br>Dated:  December 3, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:             jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:             patrick.nash@kirkland.com<br>                      ross.kwasteniet@kirkland.com<br>                      chris.koenig@kirkland.com<br>                      dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |