Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Initial Debtors' Cases Jointly Administered) |
| | (Joint Administration of GK8 Debtors' Cases Requested) |

**NOTICE OF HEARING ON DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE GK8 DEBTORS TO (A) CONTINUE TO OPERATE THE GK8 CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING GK8 BUSINESS FORMS, AND (D) CONTINUE TO PERFORM GK8 INTERCOMPANY TRANSACTIONS, (II) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION GK8 INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 USA LLC (9450); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

PLEASE TAKE NOTICE that a hearing on the *Debtors' Motion seeking Entry of Interim and Final Orders (I) Authorizing the GK8 Debtors to (A) Continue to Operate the GK8 Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing GK8 Business forms, and (D) Continue to Perform GK8 Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition GK8 Intercompany Balances, and (III) Granting Related elief* (the "Motion") will be held on **December 8, 2022, at 9:00 a.m., prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United Stated Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408. Those wishing to participate in the Hearing in person are required to wear a mask when not speaking or presenting. Parties wishing to appear at the Hearing live or via Zoom, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, on December 7, 2022**.

PLEASE TAKE FURTHER NOTICE that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 9:00 a.m., prevailing Eastern Time on December 8, 2022 must connect to the Hearing beginning at 8:00 a.m., prevailing Eastern Time on December 8, 2022. When parties sign in to Zoom for Government and

add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials, will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

New York, New York                    */s/ Joshua A. Sussberg*
Dated:  December 7, 2022              **KIRKLAND & ELLIS LLP**
                                      **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                      Joshua A. Sussberg, P.C.
                                      601 Lexington Avenue
                                      New York, New York 10022
                                      Telephone:      (212) 446-4800
                                      Facsimile:      (212) 446-4900
                                      Email:          jsussberg@kirkland.com

                                       - and -

                                      Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
                                      Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
                                      Christopher S. Koenig
                                      Dan Latona (admitted *pro hac vice*)
                                      300 North LaSalle Street
                                      Chicago, Illinois 60654
                                      Telephone:      (312) 862-2000
                                      Facsimile:      (312) 862-2200
                                      Email:          patrick.nash@kirkland.com
                                                      ross.kwasteniet@kirkland.com
                                                      chris.koenig@kirkland.com
                                                      dan.latona@kirkland.com

                                      *Counsel to the Initial Debtors and Debtors in
                                      Possession*

                                      *Proposed Counsel to the GK8 Debtors and Debtors in
                                      Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) ) ) ) ) ) | (Initial Debtors' Cases Jointly Administered)<br><br>(Joint Administration of GK8 Debtors' Cases Requested) |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE GK8 DEBTORS TO (A) CONTINUE TO OPERATE THE GK8 CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING GK8 BUSINESS FORMS, AND (D) CONTINUE TO PERFORM GK8 INTERCOMPANY TRANSACTIONS, (II) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION GK8 INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Celsius Network LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Initial Debtors"), together with GK8 Ltd., GK8 USA LLC, and GK8 UK Limited (collectively, the "GK8 Debtors," and together with the Initial Debtors, the "Debtors"), as debtors and debtors in possession, state the following in support of this motion (this "Motion"):

## Relief Requested

1.    The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing, but not directing, the GK8 Debtors to (i) continue to operate their GK8 Cash Management System (as defined herein), (ii) honor certain prepetition obligations related thereto, (iii) maintain existing GK8 Business Forms (as defined herein) in the ordinary course of business, and (iv) continue to perform GK8 Intercompany Transactions (as defined herein) consistent with historical practice; (b) granting superpriority administrative expense status to postpetition intercompany balances; and (c) granting related relief.  In addition, the Debtors request that the Court (as defined herein) schedule a final hearing approximately twenty-one days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that

2

the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 345, 363, 364, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6.      On July 13, 2022, each of the Initial Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22].  The Initial Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

3

7.      On December 7, 2022 (the "GK8 Petition Date"), each of the GK8 Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of the GK8 Debtors, in Support of Chapter 11 Petitions and First Day Motions* (the "Ferraro Declaration"), filed contemporaneously with this Motion and incorporated herein by reference.[2]

8.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The chapter 11 cases of the Initial Debtors have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53].  Concurrent with the filing of this Motion, the Debtors have also filed a motion requesting procedural consolidation and joint administration of the chapter 11 cases of the GK8 Debtors with the chapter 11 cases of the Initial Debtors pursuant to Bankruptcy Rule 1015(b).  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Initial Debtors' cases [Docket No. 241] (the "Committee").  On September 29, 2022, the Court entered an order appointing an examiner in the Initial Debtors' cases [Docket No. 920].

## The Cash Management System

I.      **Overview**.

9.      In the ordinary course of business, the GK8 Debtors operate a cash management system (the "GK8 Cash Management System") to manage cash in a cost-effective and efficient

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Ferraro Declaration.

manner. The GK8 Cash Management System streamlines the GK8 Debtors' ability to collect, transfer, and disburse cash generated from their operations and to facilitate cash monitoring, forecasting, and reporting.

10.     The GK8 Debtors' treasury department maintains daily oversight over the GK8 Cash Management System and implements cash management controls for accepting, processing, and releasing funds, including in connection with Intercompany Transactions (as defined herein). The GK8 Debtors' accounting department regularly reconciles the GK8 Debtors' books and records to ensure that all transfers are accounted for properly.

11.     As described more fully herein, the GK8 Cash Management System is an essential component of the GK8 Debtors' business. Any interruption of the GK8 Cash Management System would have an immediate and significant adverse effect on the Debtors' operations and ability to preserve assets to the detriment of their estates and stakeholders. Accordingly, to minimize the disruption caused by these chapter 11 cases, the Debtors seek authority to continue to use their existing GK8 Cash Management System in the ordinary course of business on a postpetition basis in a manner consistent with past practice, and to pay any prepetition fees related to the GK8 Cash Management System.

## II.     The GK8 Bank Account and Flow of Funds.

12.     As of the GK8 Petition Date, the GK8 Cash Management System, a schematic of which is attached as Exhibit 1 to **Exhibit A** and **Exhibit B** hereto, is comprised of one bank account (the "GK8 Bank Account") held by GK8 Ltd. and maintained at Bank Hapoalim.[3] The GK8 Bank Account is funded by revenue generated by the GK8 Debtors, miscellaneous

---

[3]   Bank Hapoalim is designated as an authorized depository in the Southern District of New York by the U.S. Trustee, pursuant to the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

inflows (*e.g.*, VAT refunds), and intercompany transfers from Celsius Network IL Ltd.  The GK8 Bank Account in turn makes disbursements to fund the general operating expenses, including payroll, accounts payable, and tax obligations, of the GK8 Debtors.  The GK8 Bank Account is a multicurrency account that transacts in Israeli New Shekels, United States Dollars, Euro, and Pounds.  In addition to facilitating transactions in these various currencies, the GK8 Bank Account includes a collateral sub-account that historically held approximately 50,000 Israeli New Shekels (*e.g.*, approximately $14,700) as collateral that is pledged for the GK8 Debtors' corporate cards.  When the GK8 Debtors' employees utilize their corporate cards, an offsetting cash balance is booked and settled in the collateral sub-account.

13.     As of the GK8 Petition Date, the GK8 Debtors have approximately $1.6 million of cash on hand.  GK8 does not hold cryptocurrency assets on behalf of its customers.  Rather, GK8 provides a self-custody solution for its customers, which allows them to hold cryptocurrency assets on their own.

**III.     Compliance with the U.S. Trustee Guidelines**.

14.     Bank Hapoalim is a party to a uniform depository agreement with the U.S. Trustee and is designated as an authorized depository in the Southern District of New York by the U.S. Trustee pursuant to the U.S. Trustee Guidelines.

**IV.     Intercompany Transactions**.

15.     As explained above, the GK8 Debtors, with the Initial Debtors, routinely engage in intercompany financial transactions (the "GK8 Intercompany Transactions") with other Debtors and non-Debtor affiliates, resulting in intercompany receivables and payables.

16.     For example, in the ordinary course of business, the Initial Debtors engage in GK8 Intercompany Transactions to fund the GK8 Bank Account in anticipation of expenditures as

6

needed.    Since August 2022, non-Debtor affiliate Celsius Network IL Ltd. has remitted $1.5 million, in three $500,000 installments, to Debtor GK8 Ltd. to cover certain operational and administrative expenses pursuant to the Final Cash Management Order (as defined herein).[4]

17.    The Debtors track all fund transfers through their accounting system and can ascertain, trace, and account for all GK8 Intercompany Transactions.  If the GK8 Intercompany Transactions were to be discontinued, the GK8 Cash Management System and the GK8 Debtors' operations would be disrupted unnecessarily to the detriment of the Debtors, their creditors, and other stakeholders.[5]    The GK8 Debtors seek the authority to continue GK8 Intercompany Transactions in the ordinary course of business on a postpetition basis, in a manner consistent with prepetition practice.

**V.    Business Forms**

18.    As part of the GK8 Cash Management System, the GK8 Debtors utilize a number of preprinted business forms (the "GK8 Business Forms") in the ordinary course of their business, including, but not limited to, letterhead, purchase orders, invoices, and checks.  To minimize expenses to their estates and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of these chapter 11 cases, the Debtors request that the Court authorize the continued use of all GK8 Business Forms as such forms were in existence

---

[4]    "Final Cash Management Order" means the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 1152].

[5]    This Motion provides an overview of the GK8 Debtors' typical GK8 Intercompany Transactions.  The relief requested herein is applicable with respect to all GK8 Intercompany Transactions and is not limited to those GK8 Intercompany Transactions described in this Motion.  To the extent that there are any outstanding prepetition obligations related to GK8 Intercompany Transactions not described herein, the GK8 Debtors, out of an abundance of caution, seek authority to honor such obligations.

immediately before the GK8 Petition Date, without reference to the GK8 Debtors' status as debtors in possession. The GK8 Debtors submit that once they have exhausted their existing stock of GK8 Business Forms, they shall ensure that any new GK8 Business Forms are clearly labeled "Debtor in Possession," and with respect to any GK8 Business Forms that exist or are generated electronically, the GK8 Debtors shall ensure that such electronic GK8 Business Forms are clearly labeled "Debtor in Possession."

**Basis for Relief**

**I.     Maintaining the Existing GK8 Cash Management System Is Essential to Maximizing the Value of the GK8 Debtors' Estates.**

19.     The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor-in-possession status of the chapter 11 debtor; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement. *See* U.S. Trustee Guidelines. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims. Considering, however, the cash management system that the GK8 Debtors have in place for the transfer and distribution of funds, which ties into the GK8 Debtors existing corporate accounting and cash forecasting reporting, enforcement of this provision of the U.S. Trustee Guidelines during these chapter 11 cases would disrupt the Debtors' ability to efficiently administer these chapter 11 cases.

20.    Continuation of the GK8 Cash Management System is nevertheless permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course without notice or a hearing."  11 U.S.C. § 363(c)(1).  *See, e.g.*, *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) ("Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into transactions involving property of the estate within the ordinary course of business without notice or a hearing."); *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003) (same).  Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *In re Frigitemp Corp.*, 34 B.R. 1000, 1010 (S.D.N.Y. 1983), aff'd, 753 F.2d 230 (2d Cir. 1985); *see also Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

21.    Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter."  *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  Additionally, courts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *Id.* at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that maintaining an existing cash management system allows debtors "to administer more efficiently and effectively its financial operations and assets").

9

22.     Here, the Debtors request that the Court allow them to continue operating the GK8 Bank Account.  The GK8 Bank Account will be maintained in the ordinary course as it was before the GK8 Petition Date and is necessary to conduct the Debtors' routine prepetition transactions. As noted above, maintaining the GK8 Cash Management System and GK8 Bank Account will allow efficient utilization of the Debtors' cash resources and will enable the Debtors' business to continue ordinary-course operations.

## II.    Maintaining the Existing GK8 Cash Management System Will Not Harm Parties in Interest.

23.     Continued use of the GK8 Cash Management System will facilitate the GK8 Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies, expenses, and distraction associated with disrupting this system and minimizing delays in the payment of postpetition obligations.  Parties in interest will not be harmed by the GK8 Debtors maintaining the existing GK8 Cash Management System, including the GK8 Bank Account and continuing the GK8 Intercompany Transactions, because the GK8 Debtors have developed and implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the GK8 Petition Date.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' accounting department. In light of such protective measures, the GK8 Debtors submit that maintaining the GK8 Cash Management System is in the best interests of their estates and creditors.

## III.    Authorizing the GK8 Debtors to Continue Using Debit, Wire, Credit Card, and ACH Transfers Is Warranted.

24.     The GK8 Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent such guidelines require the GK8 Debtors to make all disbursements by

check.  The U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  The GK8 Debtors conduct a large number of transactions on a daily basis through ACH transfers and other similar methods.  If the GK8 Debtors' ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the GK8 Debtors' day-to-day activities may be unnecessarily disrupted, and the estates will incur additional costs.  Therefore, the Debtors submit that authorizing the continuation of using debit, wire, and ACH transfers is warranted.

IV.    **Authorizing Bank Hapoalim to Continue to Maintain, Service, and Administer the GK8 Bank Account in the Ordinary Course of Business is Warranted**.

25.    The GK8 Debtors request that the Court authorize Bank Hapoalim to continue to maintain, service, and administer the GK8 Bank Account, without interruption and in the ordinary course.  In this regard, the GK8 Debtors request that, with the exception of the item described in paragraph 26 below, Bank Hapoalim be authorized to (a) receive, process, honor, and pay any and all checks, ACH transfers, and other instructions and drafts payable through, drawn, or directed on the GK8 Bank Account after the GK8 Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto and (b) accept and honor all representations from the GK8 Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the GK8 Petition Date.

26.    The Debtors also request that, except for those transactions noted in paragraph 25 above, to the extent Bank Hapoalim honors a prepetition check or other item drawn on any account either:  (a) at the direction of the GK8 Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, Bank Hapoalim will not be

deemed to be liable to the GK8 Debtors or to their estates on account of such prepetition check or other item honored postpetition. This is reasonable and appropriate because Bank Hapoalim is not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

27.    Courts in this district have regularly waived certain U.S. Trustee Guidelines and allowed the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business. *See, e.g., In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. October 21, 2022) (authorizing the Initial Debtors to continue to operate their cash management system on a final basis); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 6, 2022) (authorizing debtors to continue to operate their cash management system on an interim basis); *In re Pareteum Corp.*, No. 22-10615 (LGB) (Bankr. S.D.N.Y. June 8, 2022) (authorizing debtors to continue to operate their cash management system on a final basis); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Dec. 9, 2021) (same); *In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 1, 2021) (same).[6]

## V.    The Court Should Authorize the GK8 Debtors to Continue Using Their Existing GK8 Business Forms.

28.    To avoid disruption of the GK8 Cash Management System and the incurrence of unnecessary expenses, the GK8 Debtors request that they be authorized to continue to use their existing GK8 Business Forms (including, without limitation, letterhead, checks, and other GK8 Business Forms) substantially in the form existing immediately before the GK8 Petition Date, without reference to their status as debtors in possession. Parties-in-interest will not be prejudiced

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

if the GK8 Debtors are authorized to continue to use their GK8 Business Forms substantially in the forms existing immediately before the GK8 Petition Date.  Such parties will undoubtedly be aware of the GK8 Debtors' status as debtors in possession, and thus changing GK8 Business Forms is unnecessary and would be unduly burdensome.  Once the GK8 Debtors have exhausted their existing stock of GK8 Business Forms, they shall ensure that any new GK8 Business Forms are clearly labeled "Debtor-In-Possession."  With respect to any GK8 Business Forms that exist or are generated electronically, the GK8 Debtors shall ensure that such electronic GK8 Business Forms are clearly labeled "Debtor-In-Possession."

29.    In other chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g., In re Celsius Network LLC,* No. 22-10964 (MG) (Bankr. S.D.N.Y. October 21, 2022) (authorizing the Initial Debtors to use existing business forms on a final basis); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 6, 2022) (authorizing use of existing business forms on an interim basis); *In re Pareteum Corp.*, No. 22-10615 (LGB) (Bankr. S.D.N.Y. June 8, 2022) (authorizing use of existing business forms on a final basis); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Dec. 9, 2021) (same); *In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 1, 2021) (same).[7]

**VI.    The Court Should Authorize the GK8 Debtors to Continue Conducting GK8 Intercompany Transactions in the Ordinary Course of Business and Grant Superpriority Administrative Expense Status to Postpetition GK8 Intercompany Balances Among the Debtors**.

30.    At any given time, there may be intercompany balances (the "GK8 Intercompany Balances") owed by one GK8 Debtor to another Debtor or a GK8 Debtor to a non-Debtor affiliate

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

(or vice versa). GK8 Intercompany Transactions are made between and among the GK8 Debtors and their non-Debtor affiliates in the ordinary course as part of the GK8 Cash Management System. The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all GK8 Intercompany Transactions previously described. The Debtors, moreover, will continue to maintain records of such GK8 Intercompany Transactions. If the GK8 Intercompany Transactions were to be discontinued, the GK8 Cash Management System and related administrative controls could be disruptive to the detriment of the Debtors' and their estates. Accordingly, the continued performance of the GK8 Intercompany Transactions is in the best interest of the GK8 Debtors' estates and their creditors and, therefore, the Debtors should be permitted to continue such performance.

31.     Because certain of the GK8 Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the GK8 Cash Management System, the Debtors request the authority to continue conducting GK8 Intercompany Transactions postpetition in the ordinary course of business without need for further Court order. To ensure each individual GK8 Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors further request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition transfers and payments on account of a GK8 Intercompany Transaction be accorded superpriority administrative expense status. This relief will ensure that each entity receiving payments from a GK8 Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each GK8 Debtor's respective creditors.

32.     Similar relief has been granted in other similarly situated chapter 11 cases in this district. *See, e.g.*, *In re Celsius Network LLC,* No. 22-10964 (MG) (Bankr. S.D.N.Y. October 21,

14

2022) (allowing the Initial Debtors to continue intercompany transactions on a final basis); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 6, 2022) (allowing intercompany transactions to continue on an interim basis); *In re Pareteum Corp.*, No. 22-10615 (LGB) (Bankr. S.D.N.Y. June 8, 2022) (allowing intercompany transactions to continue on a final basis); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Dec. 9, 2021) (same); *In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 1, 2021) (same).[8]

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

33.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the GK8 Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors efforts and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

34.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notices of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14 day stay period under Bankruptcy Rule 6004(h).

---

[8]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

## **Reservation of Rights**

35.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

36.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

37.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the twenty largest unsecured claims against the GK8 Debtors (on a consolidated basis); (c) the United States Attorney's Office for the

Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) Bank Hapoalim; (h) the Committee; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

38.    No prior request for the relief sought in this Motion has been made to this or any other court.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court enter the Interim Order and Final Order

granting the relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

New York, New York
Dated: December 7, 2022

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in
Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in
Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
|  | ) |
| Debtors. | ) (Initial Debtors' Cases Jointly |
|  | ) Administered) |
|  | ) |
|  | ) (Joint Administration of GK8 |
|  | ) Debtors' Cases Requested) |
|  | ) |

**INTERIM ORDER (I) AUTHORIZING THE GK8 DEBTORS
TO (A) CONTINUE TO OPERATE THE GK8 CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED
THERETO, (C) MAINTAIN EXISTING GK8 BUSINESS FORMS, AND (D) CONTINUE
TO PERFORM GK8 INTERCOMPANY TRANSACTIONS, (II) GRANTING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION GK8
INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing,

but not directing, the GK8 Debtors to (i) continue to operate their cash management system

(the "GK8 Cash Management System"), (ii) honor certain prepetition obligations related thereto,

(iii) maintain existing GK8 Business Forms in the ordinary course of business, and (iv) continue to

perform GK8 Intercompany Transactions consistent with historical practice, (b) granting

superpriority administrative expense status to postpetition intercompany balances, (c) granting

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

related relief, and (d) scheduling a final hearing to consider approval of the Motion on a final basis,

all as more fully set forth in the Motion; and upon the Ferraro Declaration; and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the Southern District of New York,

entered February 1, 2012; and that this Court having the power to enter a final order consistent

with Article III of the United States Constitution; and this Court having found that venue of this

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

2023, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order

on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023,

and shall be served on:  (a) the Debtors, Celsius Network LLC, 50 Harrison Street, Suite 209F,

Hoboken, New Jersey 07030, Attn: Ron Deutsch; (b) counsel to the Initial Debtors and proposed

counsel to the GK8 Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York

10022, Attn: Joshua A. Sussberg, P.C. and Simon Briefel, and 300 North LaSalle, Chicago, Illinois 60654, Attn: Patrick J. Nash, Jr., P.C., Ross M. Kwasteniet, P.C., Christopher S. Koenig, and Dan Latona; (c) U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Shara Cornell, Mark Bruh, and Brian S. Masumoto; (d) White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, Illinois 6060, Attn: Gregory F. Pesce, and 55 South Flower Street, Sutie 2700, Los Angeles, CA 90071, Attn: Aaron Colodny and (e) counsel to any statutory committee appointed in these chapter 11 cases.

3.     Subject to paragraph 16, the Debtors are authorized, on an interim basis and in their sole discretion, to:  (a) continue operating the GK8 Cash Management System, substantially as illustrated on **Exhibit 1** attached hereto; (b) honor their prepetition obligations related thereto; and (c) continue to perform GK8 Intercompany Transactions consistent with historical practice; *provided* that all GK8 Intercompany Transactions affiliate shall be only in cash, and not in cryptocurrency, crypto tokens, or other cryptocurrency assets; *provided, further*, that all GK8 Intercompany Transactions, whether between GK8 Debtors or between any Debtor and any non-Debtor affiliate, shall (A) constitute an allowed claim against the applicable Debtor or a loan to the applicable non-Debtor affiliate, and (B) with respect to GK8 Intercompany Transactions, be governed by the budget (the "Budget") and other reporting requirements set forth in the *Stipulation and Agreed Order Regarding Framework for the Distribution of the Debtors' Reporting Information to the Committee* [Docket No. 969] unless the Debtors obtain consent from the Committee, with notice to the U.S. Trustee, or pursuant to a further order from this Court after notice and a hearing; *provided, further,* that, any GK8 Intercompany Transaction from an Initial Debtor to a GK8 Debtor shall not be permitted without prior written consent from the Committee (email shall suffice) or further order by the Court.

3

4.    The Debtors are authorized, on an interim basis and in their sole discretion, to: (a) continue to use, with the same account number, GK8 Bank Account in existence as of the GK8 Petition Date, as identified on **Exhibit 2** attached hereto; (b) treat the GK8 Bank Account for all purposes as accounts of the Debtors as debtors in possession; (c) deposit funds in and withdraw funds from the GK8 Bank Account by all usual means, including checks, wire transfers, and other debits; and (d) otherwise perform their obligations under the documents governing the GK8 Bank Account.

5.    The Debtors are authorized, but not directed, to continue using, in their present form, the GK8 Business Forms, as well as checks and other documents related to the GK8 Bank Account existing immediately before the GK8 Petition Date, without reference to the Debtors' status as debtors in possession; *provided* that once the GK8 Debtors have exhausted their existing stock of GK8 Business Forms, the Debtors shall ensure that any new GK8 Business Forms are clearly labeled "Debtor-In-Possession"; *provided*, *further*, that with respect to any GK8 Business Forms that exist or are generated electronically, to the extent reasonably practicable, the GK8 Debtors shall ensure that such electronic GK8 Business Forms are clearly labeled "Debtor-In-Possession."

6.    Bank Hapoalim is authorized to continue to maintain, service, and administer the GK8 Bank Account as accounts of the GK8 Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the GK8 Bank Account after the GK8 Petition Date by the holders or makers thereof, as the case may be.

4

7.      Bank Hapoalim, provided with notice of this Interim Order maintaining, shall not honor or pay any bank payments drawn on the GK8 Bank Account, or otherwise issued before the GK8 Petition Date, absent further direction from the GK8 Debtors.

8.      The GK8 Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, including GK8 Intercompany Transactions, so as to permit all such transactions to be ascertainable.

9.      In the course of providing cash management services to the GK8 Debtors, Bank Hapoalim is authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the GK8 Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the GK8 Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the GK8 Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

10.     Bank Hapoalim is authorized to debit the GK8 Bank Account in the ordinary course of business without the need for further order of the Court for:  (a) all checks drawn on the GK8 Bank Account that are cashed at Bank Hapoalim's counters or exchanged for cashier's checks by the payees thereof prior to the GK8 Petition Date; (b) all checks or other items deposited the GK8 Bank Account with Bank Hapoalim prior to the GK8 Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the GK8 Debtors were responsible for such items prior to the GK8 Petition Date;

5

(c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to Bank Hapoalim as service charges for the maintenance of the GK8 Cash Management System; and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to GK8 Debtor's account after the GK8 Petition Date, regardless of the reason such item is returned or reversed (including, without limitation, for insufficient funds or a consumer's statutory right to reverse a charge).

11.     Bank Hapoalim may rely on the representations of the GK8 Debtors with respect to whether any check or other payment order drawn or issued by the GK8 Debtors prior to the GK8 Petition Date should be honored pursuant to this or any other order of the Court, and Bank Hapoalim shall not have any liability to any party for relying on such representations by the GK8 Debtors as provided for herein.

12.     Any agreements existing between the GK8 Debtors and Bank Hapoalim shall continue to govern the postpetition cash management relationship between the GK8 Debtors and Bank Hapoalim, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with Bank Hapoalim, unless the GK8 Debtors and Bank Hapoalim agree otherwise, and any other legal rights and remedies afforded to Bank Hapoalim under applicable law shall be preserved, subject to applicable bankruptcy law.

13.     The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived on an interim basis pending a final hearing on the Motion.

14.     Subject to paragraph 16, notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue GK8 Intercompany Transactions between

and among Debtor entities arising from or related to the operation of their business in the ordinary course; *provided* that, with respect to any and all GK8 Intercompany Transactions authorized in this Interim Order, each GK8 Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to GK8 Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices and (b) beginning on the GK8 Petition Date, maintain (i) current records of intercompany balances; (ii) a Debtor by Debtor summary on a monthly basis of any postpetition GK8 Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month); and (iii) reasonable access to the GK8 Debtors' advisors and Committee with respect to such records.

15.    All postpetition transfers and payments from the GK8 Debtors to another Debtor under any postpetition GK8 Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under section 503(b) of the Bankruptcy Code.

16.    Notwithstanding the Debtors' use of a consolidated GK8 Cash Management System, the Debtors shall calculate quarterly fees (to be paid in U.S. dollars) under 28 U.S.C. § 1930(a)(6) based on the disbursements of each GK8 Debtor, regardless of which entity pays those disbursements.  For the avoidance of doubt, all disbursements pursuant to the foregoing shall be made in U.S. dollars.

17.    The GK8 Debtors and Bank Hapoalim may, without further order of the Court, agree to and implement changes to the GK8 Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided* that in the event the GK8 Debtors open a new bank account they shall open

7

one at an authorized depository; *provided*, *further*, that within five business days the GK8 Debtors shall give notice of the opening of any new bank accounts or closing of the GK8 Bank Account to the U.S. Trustee and the Committee.

18.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

19.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

20.    Nothing in this Interim Order shall modify or impair the ability of any party in interest to contest how the Debtors account, including, without limitation, the validity or amount set forth in such accounting for any GK8 Intercompany Transaction or GK8 Intercompany Balance.  The rights of all parties in interest with the respect thereto are fully preserved.

21.    As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on Bank Hapoalim.

22.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

23.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

24.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

25.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

26.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## **<u>Exhibit 1</u>**

**GK8 Cash Management System Schematic**

# GK8 Debtors – Cash Schematic



**Legend**

- Debtor Bank Account
- Non-Debtor Affiliate
- External Counterparty
- Customers
- Direct Payment
- Funding

Celsius Network IL Ltd
Bank of Jerusalem
x17294

Customers[1]

[1] Includes Debtor Celsius Network Ltd (UK)

Intercompany funding from non-Debtor parent

GK8 Ltd
Operations Account
Bank Hapoalim
xxx28598
(Curr: ILS, USD, EUR, GBP)

External Vendors / Payroll

1

**<u>Exhibit 2</u>**

**Bank Account**

| No. | Entity | Bank | Location | Description | Account No. |
|---|---|---|---|---|---|
| 1. | GK8 Ltd. | Bank Hapoalim | Israel | Operations | xxx8598 |

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Initial Debtors' Cases Jointly Administered) |
| | ) | |
| | ) | (Joint Administration of GK8 Debtors' Cases Requested) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE GK8 DEBTORS
TO (A) CONTINUE TO OPERATE THE GK8 CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED
THERETO, (C) MAINTAIN EXISTING GK8 BUSINESS FORMS, AND (D) CONTINUE
TO PERFORM GK8 INTERCOMPANY TRANSACTIONS, (II) GRANTING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not

directing, the GK8 Debtors to (i) continue to operate their cash management system (the "GK8

Cash Management System"), (ii) honor certain prepetition obligations related thereto,

(iii) maintain existing GK8 Business Forms in the ordinary course of business, and (iv) continue

to perform GK8 Intercompany Transactions consistent with historical practice, (b) granting

superpriority administrative expense status to postpetition intercompany balances, and (c) granting

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

related relief, all as more fully set forth in the Motion; and upon the Ferraro Declaration; and this

Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended

Standing Order* of Reference from the United States District Court for the Southern District of

New York, entered February 1, 2012; and that this Court having the power to enter a final order

consistent with Article III of the United States Constitution; and this Court having found that venue

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and

no other notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing, if any, before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      Subject to paragraph 11 and the provisions in this paragraph 2, the Debtors are

authorized, in their discretion, to: (a) continue operating the GK8 Cash Management System,

substantially as illustrated on **Exhibit 1** attached hereto; (b) honor their prepetition obligations

related thereto; and (c) continue to perform GK8 Intercompany Transactions consistent with

historical practice; *provided* that all GK8 Intercompany Transactions shall be only in cash, and not

in cryptocurrency, crypto tokens, or other cryptocurrency assets; *provided, further*, that all GK8

Intercompany Transactions, whether between GK8 Debtors or between any Debtor and any

2

non-Debtor affiliate, shall (A) constitute an allowed claim against the applicable Debtor or a loan

to the applicable non-Debtor affiliate, and (B) with respect to GK8 Intercompany Transactions, be

governed by the budget (the "Budget") and other reporting requirements set forth in the *Stipulation

and Agreed Order Regarding Framework for the Distribution of the Debtors' Reporting

Information to the Committee* [Docket No. 969] unless the Debtors obtain consent from the

Committee, with notice to the U.S. Trustee, or pursuant to a further order from this Court after

notice and a hearing; *provided, further,* that, any GK8 Intercompany Transaction from an Initial

Debtor to a GK8 Debtor shall not be permitted without prior written consent from the Committee

(email shall suffice) or further order by the Court.  The GK8 Debtors shall file a copy of each

Budget on the docket.

3.      The Debtors are authorized, in their reasonable discretion, in consultation with the

advisors to the Committee (email shall suffice), with notice to the U.S. Trustee, to:  (a) continue

to use, with the same account number, GK8 Bank Account in existence as of the GK8 Petition

Date, as identified on **Exhibit 2** attached hereto; (b) treat the GK8 Bank Account for all purposes

as an account of the Debtors as debtors in possession; (c) deposit funds in and withdraw funds

from the GK8 Bank Account by all usual means, including checks, wire transfers, and other debits;

and (d) otherwise perform their obligations under the documents governing the GK8

Bank Account.

4.      The Debtors are authorized, but not directed, in consultation with the advisors to

the Committee (email shall suffice), with notice to the U.S. Trustee, to continue using, in their

present form, the GK8 Business Forms, as well as checks and other documents related to the GK8

Bank Account existing immediately before the GK8 Petition Date, without reference to the

Debtors' status as debtors in possession; *provided* that once the Debtors have exhausted their

existing stock of GK8 Business Forms, the GK8 Debtors shall ensure that any new GK8 Business

Forms are clearly labeled "Debtor-In-Possession"; *provided*, *further*, that with respect to any GK8

Business Forms that exist or are generated electronically, to the extent reasonably practicable, the

GK8 Debtors shall ensure that such electronic GK8 Business Forms are clearly labeled "Debtor-

In-Possession."

5.      Bank Hapoalim is authorized to continue to maintain, service, and administer the

GK8 Bank Account as accounts of the GK8 Debtors as debtors in possession without interruption

and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds,

any and all checks, drafts, wires, and ACH transfers issued and drawn on the GK8 Bank Account

after the GK8 Petition Date by the holders or makers thereof, as the case may be.

6.      Bank Hapoalim, provided with notice of this Final Order, shall not honor or pay

any bank payments drawn on the GK8 Bank Account, or otherwise issued before the GK8 Petition

Date, absent further direction from the GK8 Debtors.

7.      The GK8 Debtors shall maintain records in the ordinary course reflecting transfers

and including GK8 Intercompany Transactions, so as to permit all such transactions to be

ascertainable.

8.      In the course of providing cash management services to the GK8 Debtors, Bank

Hapoalim is authorized, without further order of the Court, to deduct the applicable fees and

expenses associated with the nature of the deposit and cash management services rendered to the

GK8 Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the

GK8 Debtors, and further, to charge back to, and take and apply reserves from, the appropriate

accounts of the GK8 Debtors any amounts resulting from returned checks or other returned items,

including returned items that result from ACH transactions, wire transfers, merchant services

transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

9.    Bank Hapoalim is authorized to debit the GK8 Bank Account in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the GK8 Bank Account that are cashed at Bank Hapoalim's counters or exchanged for cashier's checks by the payees thereof prior to the GK8 Petition Date; (b) all checks or other items deposited in the GK8 Bank Account with Bank Hapoalim prior to the GK8 Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the GK8 Debtors were responsible for such items prior to the GK8 Petition Date; (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to Bank Hapoalim as service charges for the maintenance of the GK8 Cash Management System; and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to GK8 Debtor's account after the GK8 Petition Date, regardless of the reason such item is returned or reversed (including, without limitation, for insufficient funds or a consumer's statutory right to reverse a charge).

10.    Bank Hapoalim may rely on the representations of the GK8 Debtors with respect to whether any check or other payment order drawn or issued by the GK8 Debtors prior to the GK8 Petition Date should be honored pursuant to this or any other order of the Court, and Bank Hapoalim shall not have any liability to any party for relying on such representations by the GK8 Debtors as provided for herein.

11.    Any agreements existing between the GK8 Debtors and Bank Hapoalim shall continue to govern the postpetition cash management relationship between the GK8 Debtors and

Bank Hapoalim, subject to applicable bankruptcy or other law; all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with Bank Hapoalim, unless the GK8 Debtors with the consent of the Committee, which consent may not be unreasonably withheld, and Bank Hapoalim agree otherwise; and any other legal rights and remedies afforded to Bank Hapoalim under applicable law shall be preserved, subject to applicable bankruptcy law.

12.    The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

13.    Subject to paragraphs 2 and 11, the GK8 Debtors are authorized, but not directed, to continue GK8 Intercompany Transactions in cash between and among Debtor entities arising from or related to the operation of their business in the ordinary course; *provided* that, with respect to any and all GK8 Intercompany Transactions authorized in this Final Order, each GK8 Debtor shall (a) continue to pay its own obligations consistent with such GK8 Debtor's past practice with respect to GK8 Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices and (b) beginning on the GK8 Petition Date, maintain (i) current records of intercompany balances, (ii) a Debtor by Debtor summary on a monthly basis of any postpetition GK8 Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month), and (iii) reasonable access to such records for the U.S. Trustee and the advisors to the Committee. A monthly summary of such Intercompany Transactions between the Debtors shall be provided to (a) the U.S. Trustee and (b) the advisors to the Committee on the 21st day of the following month.

14.     All postpetition transfers and payments from a GK8 Debtor to another Debtor under any postpetition GK8 Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under sections 503(b) and 364(c)(1) of the Bankruptcy Code.

15.     With respect to the GK8 Intercompany Transactions authorized hereunder, all parties reserve all rights and arguments with respect to the impact that any such GK8 Intercompany Transactions should have on future recoveries or distributions in these chapter 11 cases.

16.     Notwithstanding the GK8 Debtors' use of a consolidated GK8 Cash Management System, the GK8 Debtors shall calculate quarterly fees (to be paid in U.S. dollars) under 28 U.S.C. § 1930(a)(6) based on the disbursements of each GK8 Debtor, regardless of which entity pays those disbursements.  For the avoidance of doubt, all disbursements pursuant to the foregoing shall be made in U.S. dollars.

17.     The GK8 Debtors and Bank Hapoalim may, without further order of the Court, agree to and implement changes to the GK8 Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided* that in the event the GK8 Debtors open a new bank account they shall open one at an authorized depository; *provided*, *further*, that the GK8 Debtors shall give five business days' advance notice (email shall suffice) of (a) the opening of any new bank accounts or closing of the GK8 Bank Account and (b) any material changes to the GK8 Cash Management System and procedures to the U.S. Trustee, the advisors to the Committee, and counsel to any other statutory committee appointed in these chapter 11 cases.

18.     Notwithstanding any language to the contrary in the Motion, the Interim Order, or this Final Order no provision of the Motion or Final Order shall constitute a finding as to whether

the GK8 Cash Management System complies with federal or state securities laws, and the right of the United States Securities and Exchange Commission and the Committee to challenge such transactions on any basis are expressly reserved.

19.     Notwithstanding anything to the contrary in the Motion, this Final Order, or any findings announced at the Hearing, nothing in the Motion, this Final Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

20.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission by the Debtors or the Committee as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' or the Committee's respective rights to dispute any particular claim on any grounds; (c) a promise or requirement by the Debtors or any third party (including any member of the Committee) to pay any particular claim; (d) an implication or admission by the Debtors or the Committee that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization by any Debtor to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or the Committee's respective rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or the Committee that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and the Committee each expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and

should not be construed as an admission by the Debtors or the Committee as to the validity of any

particular claim or a waiver of the Debtors' and the Committee's respective rights to subsequently

dispute such claim.

21.     The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, and all such banks and financial institutions are authorized to rely on

the Debtors' designation of any particular check or electronic payment request as approved by this

Final Order.

22.     Nothing in this Final Order shall modify or impair the ability of any party in interest

to contest how the Debtors account for any GK8 Intercompany Transaction or GK8 Intercompany

Balance, including, without limitation, the validity or amount set forth in such

accounting.  The rights of all parties in interest with the respect thereto are fully preserved.

23.     As soon as practicable after entry of this Final Order, the Debtors shall serve a copy

of this Final Order on Bank Hapoalim.

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

25.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final

Order are immediately effective and enforceable upon its entry.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Final Order.

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**GK8 Cash Management System Schematic**

**Legend**



*Celsius Network IL Ltd*
Bank of Jerusalem
x17294

Customers[1]

[1] Includes Debtor Celsius Network Ltd (UK)

Intercompany funding from non-Debtor parent

*GK8 Ltd*
Operations Account
Bank Hapoalim
xxx28598
(Curr: ILS, USD, EUR, GBP)

External Vendors / Payroll

Debtor Bank Account

Non-Debtor Affiliate

External Counterparty

Customers

→ Direct Payment

⇢ Funding

1

## **Exhibit 2**

**Bank Account**

| No. | Entity | Bank | Location | Description | Account No. |
|---|---|---|---|---|---|
| 1. | GK8 Ltd. | Bank Hapoalim | Israel | Operations | xxx8598 |