**Hearing Date and Time: December 20, 2022, at 10:00 a.m. EST**
**Objection Deadline: December 13, 2022, at 4:00 p.m. EST**

Immanuel Herrmann
*Pro se Celsius creditor*
Admin of the worldwide Celsius
Earn Customer Telegram group
immanuelherrmann@gmail.com
**https://t.me/celsiusearn**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered.) |
| | ) | |

**NOTICE OF HEARING ON IMMANUEL HERRMANN'S MOTION FOR THE ENTRY OF AN ORDER (I) APPOINTING A CHAPTER ELEVEN MEDIATOR (II) DIRECTING MANDATORY MEDIATION AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on *Immanuel Herrmann's Motion for the Entry of An Order (i) Appointing a Chapter 11 Mediator (ii) Directing Mandatory Mediation and (iii) Granting Related Relief* (the "Motion") will be held on December 20, 2022 at 10:00am (prevailing Eastern Time) (the "Hearing").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at **https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl**. Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m. (prevailing Eastern Time), the business day before the hearing (i.e., on December 19, 2022).

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m. (prevailing Eastern Time) on December 20, 2022, must connect to the Hearing beginning at 9:00 a.m. (prevailing Eastern Time) on December 20, 2022. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (iii) be filed electronically with the Court on the docket of In re Celsius Network LLC, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (iv) be served so as to be actually received by December 13, 2022, at 4:00 p.m. (prevailing Eastern Time), by (a) the undersigned via email at immanuelherrmann@gmail.com, (b) the entities on the Master Service List available on the case website of the above-captioned debtors at https://cases.stretto.com/celsius, and (c) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by Immanuel Herrmann (as defined in the Motion).

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed

in these chapter 11 cases may be obtained free of charge by visiting the website of

Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion

and other pleadings filed in these chapter 11 cases by visiting the Court's website at

http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth

therein.


Dated: December 6, 2022
Silver Spring, Maryland

/s/ Immanuel Herrmann
Immanuel Herrman
immanuelherrmann@gmail.com

Immanuel Herrmann
*Pro se Celsius creditor*
Admin of the worldwide Celsius
Earn Customer Telegram group
immanuelherrmann@gmail.com
**https://t.me/celsiusearn**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[2] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered.) |
| | ) | |

**IMMANUEL HERRMANN'S MOTION FOR THE ENTRY OF AN ORDER (I)
APPOINTING A CHAPTER ELEVEN MEDIATOR (II) DIRECTING MANDATORY
MEDIATION AND (III) GRANTING RELATED RELIEF**

I, Immanuel Herrmann, *pro se* Celsius LLC, *et al.* creditor ("the Movant"), hereby submit

this motion ("the Motion"), pursuant to section 11 U.S.C. § 105(a), for entry of an order,

substantially in the form attached hereto as Exhibit A ("the Proposed Order"), appointing

a sitting bankruptcy judge as a mediator (unless the proposed Consulted Parties agree

on alternative choice before the hearing date), directing the parties to mandatory

mediation, and granting related relief. In support of the Motion, the Movant respectfully

states as follows:

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining
LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and
Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the
Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**PRELIMINARY STATEMENT**

The *sheer volume* of active individual creditors who have appeared in this court case –both *pro se* and those through counsel, along with the number of engaged regulators–shows not just a huge volume of creditors (indeed, the number of creditors in this case has set records) but grave concerns about the direction of the case.

These concerns are justified. The lack of trust is based on the Debtors' past behavior and their behavior in court to this day, the murky Wizard-of-Oz like role of the Special Committee which was partly handpicked by Alex Mashinsky, the out-of-control legal expenses, and the opaque process that the Debtor is using to purportedly emerge from Chapter 11, and the absence of any plan thus far.

There has been a lack of communication and active negotiation with creditors throughout these cases, and–as we learned in open court on December 5–there has been no communication regarding Celsius' plans with regulators. There has also been no communication with depositors about Celsius' plans either, apparently, outside of two UCC co-chairs and UCC counsel.[3]

---

[3] The Debtor claims to communicate with the two UCC "co chairs" but **no other creditors.** See D.R. 1587, paragraph 4. When I asked the UCC if the Special Committee in charge of restructuring talked with the UCC Members a few weeks ago, I was told they had only talked via counsel.

## CREDITORS ARE TALKING TO EACH OTHER AND MAKING PROGRESS, BUT THERE IS NO ONE TO LISTEN TO US, OR NEGOTIATE WITH

For months, there have been productive conversations among depositors[4], including Earn, Borrow, Custody, and Withhold customers–and, occasionally, discussions with regulators[5] and bidders[6] as well.

Earn customers and Borrowers, the largest constituency groups in these cases, have made particularly strong progress. But we have no clear path to get our best ideas to the Debtor and ***actually negotiate with them in any meaningful way***–i.e. an opportunity to drop our individual litigation claims in exchange for a negotiated global settlement, which is exactly the point (one would hope) of the bankruptcy process.

The Debtors efforts to resolve each issue in a piecemeal fashion has not moved these cases forward. Like whac-a-mole, when one issue is resolved, another pops up. Like a Matryoshka doll, when an issue is looked into, a small subissue follows, and another smaller one emerges, and so on.  We should look at this case globally. We were ALL

---

[4] Earn customers and Borrow customers, in particular, have worked out viable ideas on many of the issues that could maximize value in a restructuring and with bids and have also discussed at length how to handle liquidation scenarios.

[5] A group of Celsius Earn and Borrow customers had an excellent and extraordinarily productive meeting with state regulators. When I told the UCC about the meeting, and encouraged us to work together to communicate with regulators to get their buy-in to a value-maximizing restructuring, they were concerned that the meeting had taken place and discouraged future meetings, preferring instead to keep a monopoly on meetings with regulators. Now, we have learned in open court that the Debtor is not communicating with key regulators *at all* about their restructuring plans, confirming some of our worst fears.

[6] I am under NDA with one bidder, and have spoken with two bidders. Both bidders expressed dismay at the bidding process and the extreme difficulty and cost of putting together a bid and uncertainty about what, exactly, they were buying. Maybe this is why, as the UCC said in court, they are "not ready for prime time." In *most bankruptcies*, a secret process may prevent collusion in bankruptcy and protect important trade secrets. In this case, however, it is toxic to the process and will lead to predatory bids, because it incentivizes cash bids in a 2009-style bear market, and incentivizes the Debtor to choose the highest cash bid that also maximizes the Debtor's releases from liability. To the extent that creditors can't get our coins back, we want to ***own illiquid assets and keep 100% of our claims against those who engaged in wrongdoing***, and transfer anything illiquid to a *trusted* manager.

wronged. To say anything else would not be true. By dividing things into small pieces, we are creating more room for fighting. Nearly everyone was in Earn (or Loans) for much of the time.

We have ended up resolving many issues one *microcosm of a microcosm* at a time. Such proposals get only *inch us* closer to "rough justice" than we were on the petition date. And we simply do not have time to move these cases along one inch at a time any longer.

## MANDATORY MEDIATION CAN REDUCE THE BURDEN ON THIS COURT AND DRIVE A RESOLUTION IN THESE CASES

If things in this case continue on their current path, this is likely to be a lengthy bankruptcy case with a Chapter 11 plan that is strongly opposed by many creditors–to the degree depositors do not trust the process or believe that they will get an equitable outcome–protracted litigation, along with continued objections in court.

It will be a tragedy if these reorganization proceedings become mired in endless discovery, unyielding litigation over every last contract defense and–or alternatively–a crisp decision on contract issues followed by a look into whether Celsius was a Ponzi or not. But that is all likely coming.

We also need a mediator to bring more more voices from the involved creditors to the table and propose deals. And why don't we know about a bid that is being put together by the UCC? If so, we want to participate in that. Will it need to remain a completely closed process until exclusivity is *finally* lifted in 60 days? If so, we need to change the rules so that's not the case, at least for parties participating in mediation–and a mediator can do just that.

Creditor groups need to be far more involved in the restructuring to maximize value and to get buy-in for a plan–including having a streamlined process for getting creditor requests–such as access to the data room, bidders, and information on any standalone restructuring, processed and taken seriously by the Debtor. A chapter 11 mediator can help facilitate such requests, including access to the data certain community representatives need to evaluate plans and bids *for themselves.*

If a mediator can cut down the number of objections, motions, and other filings by even 50%, by consensually resolving issues, it will be a huge win, reducing legal fees and improving judicial economy and speed.

A mediator can also ensure that the Court is informed about the issues that are more critical to depositors and has a list of all of the issues that need to be resolved one way or another, rather than one creditor issue after another rearing its head through motions or other litigation, piecemeal.

## THE DEBTOR SAYS THEY WANT TO TALK TO DEPOSITORS, BUT THERE IS NO STRUCTURE TO DO SO

In depositions, Chris Ferraro said that he wanted to talk with creditors about the restructuring. See Deposition of Chris Ferraro, p. 327-329 and in particular p. 331 (Exhibit B).

> Q: "Would you be willing to meet with groups of creditors from loans and earn -- you or a designee from Celsius -- regularly?
>
> A: I would love to.  And I will follow up with my legal advisors on what the art of the possible is here."

Mandatory mediation will ensure that this communication is actually happening–and provide a productive structure for it that has the potential to provide real results.

## THE RELEASE OF A CHAPTER 11 PLAN (OR THE ANNOUNCEMENT OF A BIDDER IN A 363 SALE) WILL NOT END THE NEED FOR MEDIATION

I will not just trust that a bid presented to us is the best bid, nor will I not trust the Special Committee (who we *never* hear from) to work out all the critical issues in this case for me. Yet, they are ultimately the ones who approve a plan. Even if the Debtor comes up with a great plan on paper, I will not vote for it due to lack of trust. But if creditors are actively involved, we are much more likely to vote for any plan that emerges, pending regulatory approval. We could also help *convince* regulators to accept a plan that would garner broad support. Even if no plan emerges, it would help the bidders resolve key issues in the case.

I do not want to find myself objecting to a sale in open court to a Chapter 11 plan because of the same old issues that have followed these cases since the beginning: lack of transparency, lack of communication, and lack of trust.

## A MEDIATOR IS WORTH A TRY

If successful, mediation could result in a global resolution of some of the most challenging and contentious issues in these cases. Even if some issues remain contentious, any issues that can be resolved via mediation is less that has to be dealt with in court. If unsuccessful, mediation would still inform parties as to the key issues (and potentially narrow such issues) before the parties proceed with litigation.

Mediation therefore has little downside and will likely prove beneficial even if unsuccessful. See, e.g., *Garland v. Rockford Mfg. Co., Case No. 18-cv-00277*, 2019 U.S. Dist. LEXIS 154292, at *5 (E.D. Tenn. Aug. 20, 2019) ("[E]ven if the parties' dispute is not settled during the mediation process, mediation often forces the parties to reevaluate their claims and positions and serves to narrow and classify issues.") (internal quotations omitted).

Mediation will not prejudice any of the Mediation Parties' rights if it fails to produce a global (or partial) resolution, and the Mediation Parties can (and will) continue to prepare for litigation in parallel with the mediation.

Even if piecemeal litigation continues to some degree while the parties attend mandatory mediation, it could cause some claims to be dropped and/or settled, or other

claims not to be brought, and result in real results that lead to a Chapter 11 Plan,

optimistically, in the early Spring of 2023.

## ISSUES THIS COURT HAS NOT YET ADDRESSED CAN BENEFIT FROM MEDIATION

These issues include, but are not limited to:

- What happens with Earn, given that many contract defenses and unique situations exist even if this court is able to rule on the default contract for most customers.

- What happens with borrowers and their collateral.

- What happens with Custody and Withhold, *after* Phase I.

- What happens with "withhold-like" claims such as suspended and pending accounts.

- What happens with retail clawbacks (noting that an anti-clawback group, preparing to spend big money on legal fees, is forming)

- What happens with CEL token.

- What happens with liquidated loans and other situations where users have messy claims of wrongdoing against the estate.

- How do we get a plan that will actually be popular with creditors?

- How do we get a plan that regulators will actually approve (especially given that there's been no communication thus far.)

- How we ensure that insider clawback and industry counterparty clawback claims are preserved (and other bottom lines around accountability that nearly all creditors have in these cases)

## CASH IS RUNNING OUT; WE NEED A MEDIATOR NOW TO EXIT CHAPTER 11

As we all know, Celsius has no real revenues to sustain its operations during bankruptcy. Instead, it is on the cusp of spending additional depositors' deposits–whether it calls them "property of the estate" or not–to sustain its legal fees.

Exclusivity without mediation will prolong the bankruptcy–likely by more than 60 days. If we truly want a speedy recovery–one that does not leave some Earn creditors with only 20-30 cents on the dollar, while others fight for (and receive 100 cents)--and also deplete the assets available to compensate victims of former management's fraud, misrepresentation, and alleged crimes.

I am hearing from depositors that they are *gravely concerned* that our coins will be spent *for months or even years* on bankruptcy litigation with no end in sight.

Worse, many of us worry that coins will be spent for a few more months, but then–having failed–we will enter liquidation (or liquidation by another name, such as simply getting coins back to customers), if we are not there already.[7] I hear from

---

[7] It is my position that any cash offer that simply gives customers access to liquidity (i.e. getting some percent of our coins back *in kind* via return to digital wallets), and sells off other assets for cash is no better than Chapter 7 for at least some constituencies and may be worse–particularly if the preferred shareholders get anything at the expense of depositors–and that, therefore, we might as well bring on a Chapter 11 liquidation trustee if the Debtor does not get serious about reorganization–because at least I would *trust* a neutral third party to liquidate honestly. I do not trust the Debtor to liquidate. Additionally, a Trustee would open up the Debtor's opaque books and records and maximize claims against insiders who may have committed crimes. I reserve the right to file a Motion for the Appointment of a Chapter 11 Trustee, if the Debtor puts forward a bid that is essentially a liquidation, as I believe that, even with the additional expenses, that will maximize depositor recovery in a liquidation or liquidation-like scenario.

borrowers, meanwhile, that they are terrified that their collateral is gone *and* they owe money to Celsius.

The bottom line is that transparency–but more importantly, ***group problem solving and rough justice***, in these Chapter 11 Cases, is sorely lacking–as is the actual resolution of major issues that will get us out of Chapter 11 any time soon.

To stress, creditors outside the official process spend huge amounts of time and energy on restructuring ideas with no useful vehicle for making our voices heard, especially with the case heading toward bidding, rather than (only) a standalone restructuring.

## THE TIME IS RIPE FOR MEDIATION

Mediation may well take months, but the Debtor now concedes that we will be in Chapter 11 for months anyway at a minimum[8], and exclusivity will likely be extended another 60 days by the time this Motion is considered. Additionally, there is no end in sight for litigation in these cases, and the Debtor's stablecoin motion, while perhaps somewhat narrowing issues, will not end litigation or a hotly contested claims process for Earn customers, no matter how this Court rules–given that defenses to contract formation remain, as they should, and that the examiner's report has not yet been released.

Mediation may not succeed. But if it does, it could help inform the resolution of these cases. Mediation will give the Debtor principles that it can communicate to bidders *in an organized fashion* so that they refine their standalone reorg plan and can tell bidders

---

[8] See Christopher Ferraro transcript, p. 108, lines 17-22 "my understanding of the timelines and, kind of, how the plan gets approved -- gets commented on, gets approved and -- right? -- is early second quarter of 2023 is a stretch to get out of bankruptcy."

how to deal with issues such as Earn deposits, Loans and Loan collateral, etc. – rather than solely relying on bidders and financial advisors to decide these issues for depositors.

And notably, mediation will not prejudice any of the Mediation Parties' rights if it fails to produce a global (or partial) resolution, and the Mediation Parties can (and will) continue to prepare for litigation in parallel with the mediation. But it may dramatically reduce the number of parties in litigation and the scope of the issues raised in litigation.

The Debtors are mistaken if they believe they will now be able to resolve key issues, or end the distrust of the customer base, through a reorganization plan or 363 sale that is put together by the Special Committee, the Debtor, and the UCC without broad creditor input and buy-in.

## MANY EARN CUSTOMERS HAVE CLAIMS AGAINST THE ESTATE; WE WILL NOT GIVE THEM UP FOR FREE, NOR SHOULD WE

Earn customers can have claims against the estate and, *at the same time,* we know there are not enough coins to pay us all back. We also want to get out of Chapter 11 badly. None of this is contradictory. Our self-interest is no different from any other creditors. The problem is: We are the largest group, and there aren't enough coins. Our claims include global defenses, such as a Ponzi determination; group defenses, such as creating new sub-categories of Earn (i.e. returned collateral); and individual contract defenses, such as fraudulent inducement and misrepresentation. Adjudicating every last claim will be extraordinarily difficult. What do we do about that? Maybe a mediator can help.

For the reasons described in this Motion, mediation will benefit myself, Earn creditors,

*all* creditors, and the Debtors' estate. Accordingly, I respectfully submit that the Court

should enter the Proposed Order appointing a Mediator, giving the Mediation Parties a

chance to reach consensus on some of the most important issues in these cases.

Respectfully submitted,


Dated: December 6, 2022
Silver Spring, Maryland

                                                    /s/ Immanuel Herrmann
                                                    Immanuel Herrmann

**EXHIBIT A: PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— )
In re:                                                    )            Chapter 11
                                                          )
CELSIUS NETWORK LLC, *et al.*,[9]        )            Case No. 22-10964 (MG)
                                                          )
                                 Debtors.           )            (Jointly Administered.)
———————————————————— )

Upon the motion (the "Motion") of Immanuel Herrmann for entry of an order (this

"Order") appointing a Chapter 11 Mediator and directing the Mediation Parties to

participate in mediation regarding the Mediation Issues, as more fully set forth in the

Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334;

and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2);

and this Court being able to issue a final order consistent with Article III of the United

States Constitution; and venue of this proceeding and the Motion in this District being

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and the

opportunity for a hearing on the Motion having been given, and it appearing that no

other or further notice need be provided; and this Court having reviewed the Motion and

having heard the statements in support of the relief requested therein at a hearing

before this Court; and all objections, if any, to the Motion having been withdrawn,

resolved or overruled; and the relief requested in the Motion being in the best interests

---

[9] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

of the Debtors' estates, their creditors and other parties in interest; and this Court

having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. _____ is appointed as Mediator for the Mediation Issues, which

include all matters related to the resolution of 541 claims and other claims and causes

of action that the Debtor and Mediation parties aim to resolve via litigation, 363 bids and

sales, and any chapter 11 plan of reorganization to be proposed.

3. The Mediation Parties shall participate in the mediation. The Mediation Parties shall

be determined by the Consulted Parties within 7 days of the entry of this order. The

Consulted Parties for the purposes of this order are (a) the Debtors; (b) Immanuel

Herrmann; (c) Counsel to the Custody and Withhold *ad hoc* committees*;* (d) David

Adler, on behalf of certain Borrowers; (e) Karen Cordrey on behalf of certain state

regulators; (e) the Official Committee of Unsecured Creditors and (f) the office of the

United States Trustee.

4. The Consulted Parties shall, within 7 days of the appointment of the Mediator, in

consultation with the Mediator, provide the Court with a list of the Mediation Parties, who

shall have access to all information related to the Debtor's bids and reorganization plans

including the data room, and shall participate in mandatory mediation with respect to resolving litigation issues and arriving at a consensual Chapter 11 Plan.

5. The Mediator shall collect, from Celsius creditors, both *pro se* and those with counsel, a list claims and causes of action that need to be resolved to exit these Chapter 11 cases, and bring those claims and causes of action to the attention of the Mediating Parties, and this Court.

5. The mediation itself shall be confidential but the Mediator, from time to time, shall communicate on the status of the Mediation in the Mediator's own words to the Court in a public setting. The Mediator will host a town hall style meeting within 14 days of their appointment, and then once per month for Celsius creditors to hear their concerns and give public updates, along with the Mediation Parties, for as long as the mediation continues.

6. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: New York, New York December , 2022

_____

HONORABLE MARTIN GLENN

UNITED STATES CHIEF BANKRUPTCY JUDGE

**Exhibit B**

### In the Matter Of:

*Re CELSIUS NETWORK LLC, et al.*

---

## *CHRISTOPHER FERRARO*

### *November 21, 2022*

---



1

1

2                UNITED STATES BANKRUPTCY COURT

3                SOUTHERN DISTRICT OF NEW YORK

4
     In re:                        )
5                                  )   Chapter 11
                                   )
6    CELSIUS NETWORK LLC, et al.   )   Case No. 22-10964
                                   )   (MG)
7                                  )
     _____   )
8

9

10

11

12

13                     CONFIDENTIAL

14    VIDEOCONFERENCE VIDEO-RECORDED DEPOSITION OF

15             CHRISTOPHER JAMES FERRARO

16               New York, New York

17           Monday, November 21, 2022

18

19

20

21

22

23   Reported Stenographically By:
     PATRICIA A. BIDONDE
24   Registered Professional Reporter
     Realtime Certified Reporter
25   JOB#:  2022-872581

Confidential        Christopher Ferraro - November 21, 2022

327

```
1              C. Ferraro - Confidential
2              MR. McCARRICK:  Object to
3        form.  You can -- yeah, I think you
4        were just making a statement.  So
5        okay got it.
6              MR. HERRMANN:  I mean that was
7        just a statement.  You don't need to
8        answer.
9        Q.    So I guess another question I have
10  is just related to your conversations with
11  creditors.
12              Earlier in the deposition, the UCC
13  had asked if you spoke with retail investors
14  yourself.  And you had said that you spoke
15  with members of the UCC, including the
16  co-chairs.  Is that correct?
17       A.    Yes, sir, yes.
18       Q.    Great.  So I'm told -- I, like
19  you, am not a bankruptcy lawyer, however, I am
20  told that in restructurings, it's often
21  typical to speak with creditor groups and to
22  resolve some of the types of problems we are
23  having with property issues, for example, by
24  working it out and making deals among the
25  groups.
```

328

```
 1                    C. Ferraro - Confidential

 2                    Is that something that would

 3    interest you, speaking with creditors from

 4    earn and loans and trying to mediate some of

 5    these groups to get us out of Chapter 11 more

 6    quickly?

 7                    MR. McCARRICK:  Object to

 8        form.  Outside the scope.

 9                    But you can answer.

10        A.    As long as it's within the code

11    and it maximizes value for the estate, no

12    stone is left unturned, absolutely.

13        Q.    As far as I understand, it's all

14    doable within the code, Mr. Ferraro.  There

15    may, however, be issues around some of the

16    agreements that require extreme secrecy that,

17    you know, with bidders, or just who's allowed,

18    what we're allowed to talk about.

19                    So, you know, I know that we --

20    Celsius in general has talked about

21    transparency.  But are you willing to consider

22    opening up conversations about the reorg with

23    more groups of customers?

24                    MR. McCARRICK:  Object to

25        form.  Well outside the scope.
```

Confidential        Christopher Ferraro - November 21, 2022

329

```
1              C. Ferraro - Confidential

2              You can answer.

3         A.    I would love to.  My understanding

4    is that we need to get to a disclosure

5    statement before we can market the plan.  We

6    are working actively on the reorganization

7    plan.  And I tremendously look forward to

8    being able to discuss it with all of the

9    stakeholders, absolutely, Mr. Herrmann.

10        Q.    All right.  Thank you.  Well, I

11   would just encourage you, you know, remind

12   you -- I mean, I guess, one question is:  Does

13   Kirkland work for you?  Like, who do they

14   actually report to?  Who's, like, the big boss

15   at ...

16             MR. McCARRICK:  Object to

17        form.  I don't think anyone knows

18        the answer to that question.

19             You can answer.

20        A.    Yeah, my understanding is that

21   Kirkland is legal advisors to the company

22   engaged through the special committee of the

23   board.  So I work -- I work closely with them.

24   They do not represent me personally.

25        Q.    Yeah, I wasn't actually implying
```

Confidential        Christopher Ferraro - November 21, 2022

330

```
 1              C. Ferraro - Confidential
 2   that.  I know you've gotten questions on that
 3   line before.  I was more just stating that,
 4   you know, I think that there may be certain
 5   requirements, but that requirements can be
 6   waived by the debtor.
 7              And so there's just questions
 8   about, you know, I'm not actually sure -- for
 9   example, let's talk about exclusivity for a
10   moment.
11              I think part of the issue here is
12   that because of exclusivity, we can't talk
13   about -- you may have to put forward a plan
14   first.
15              So who made the decision to extend
16   exclusivity?
17              MR. McCARRICK:  Objection to
18         form.  Well outside the scope.
19              You can answer.
20         A.   My understanding is that that's a
21   special committee decision, a decision in
22   which I support.  We're actively working on a
23   plan.  That would be very difficult to work on
24   multiple plans at the same time.
25              We do listen to the community.
```

331

```
1                  C. Ferraro - Confidential
2    And we are trying to, kind of, take the best
3    ideas and bring them forth in a reorganization
4    plan that will, you know, provide as much
5    value back to the customers and the creditors
6    as we possibly can.
7         Q.    Okay.  Well, I would just
8    encourage you, again, to consider leaving no
9    stone unturned, as you said, and really
10   explore your options with the special
11   committee and with Kirkland.
12              And you know, one last question I
13   have for you in this area is:  Would you be
14   willing to meet with groups of creditors from
15   loans and earn -- you or a designee from
16   Celsius -- regularly?
17              MR. McCARRICK:   Object to
18        form.
19              You can answer.
20        A.    I would love to.  And I will
21   follow up with my legal advisors on what the
22   art of the possible is here.
23        Q.    Okay.  Thank you.  So now I'm
24   going to move on to some different kinds of
25   questions.  I'm sorry if I'm a bit out of
```

Confidential        Christopher Ferraro - November 21, 2022

332

```
 1              C. Ferraro - Confidential
 2    order.  But I just had a lot of people ask
 3    things that I tried to get through.
 4              So one question is about the
 5    bidding, on how many viable bids would you say
 6    that you have right now?
 7              MR. McCARRICK:  Object to
 8         form.  Outside the scope.
 9              You can answer.
10       A.    I'm not going to discuss about the
11    sales and marketing process and the number of
12    bidders.  I don't think that would be helpful
13    to the estate.
14              MR. McCARRICK:  And can I
15         just -- are those subject to NDAs?
16              THE WITNESS:  In the overall
17         practice -- is NDA, yes, of course.
18              MR. McCARRICK:  Okay.  Then
19         I'm going to instruct you not to
20         breach any NDA or NDA, nondisclosure
21         agreement, in response to any of
22         these questions.
23              You can continue to ask.
24              MR. HERRMANN:  Okay.  So for
25         the record, you're directing your
```

Confidential        Christopher Ferraro - November 21, 2022

413

1

2            A C K N O W L E D G M E N T

3

4    STATE OF            )

5                        : ss

6    COUNTY OF           )

7

8            I, CHRISTOPHER FERRARO, hereby

9        certify that I have read the transcript

10       of my testimony taken under oath in my

11       deposition of November 21, 2022; that

12       the transcript is a true, complete, and

13       correct record of my testimony, and that

14       the answers on the record as given by me

15       are true and correct.

16

17                 _____

18                    CHRISTOPHER FERRARO

19

20   Signed and subscribed to

21   before me this _____

22   day of _____, 2022.

23   _____

24   Notary Public

25

414

```
 1

 2                   C E R T I F I C A T E

 3   STATE OF NEW YORK    )

 4                              : ss.

 5   COUNTY OF NASSAU      )

 6

 7             I, PATRICIA A. BIDONDE, a Notary

 8        Public within and for the State of New

 9        York, do hereby certify:

10             That CHRISTOPHER FERRARO, the

11        witness whose deposition is hereinbefore

12        set forth, was duly sworn by me, and

13        that such deposition is a true record of

14        the testimony given by the witness.

15             I further certify that I am not

16        related to any of the parties to this

17        action by blood or marriage, and that I

18        am in no way interested in the outcome

19        of this matter.

20             IN WITNESS WHEREOF, I have

21        hereunto set my hand this day,

22        November 22, 2022.

23        _____

24        PATRICIA A. BIDONDE
          Stenographer
          Registered Professional Reporter
25        Realtime Certified Reporter
```