Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,
Celsius SPV Investors, LP, and Celsius
New SPV Investors, LP*

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**SERIES B PREFERRED HOLDERS' STATEMENT
(A) IN SUPPORT OF DEBTORS' MOTION SEEKING ENTRY OF
AN ORDER (I) SETTING A BRIEFING SCHEDULE AND (II) GRANTING
RELATED RELIEF AND (B) IN RESPONSE TO THE COMMITTEE'S OBJECTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively, the "Series B Preferred Holders"), as beneficial holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares issued by Celsius Network Limited ("CNL" and, together with its affiliated debtors and debtors in possession, the "Debtors"), by and through their undersigned counsel, respectfully state as follows (i) in support of the *Debtors' Motion Seeking Entry of an Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* [Dkt. No. 1338] (the "Motion")[2] and (ii) in response to *The Official Committee of Unsecured Creditors' Objection to Debtors' Motion Seeking Entry of an Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* [Dkt. No. 1592] (the "Committee's Objection"):

**Statement**

1.  The Series B Preferred Holders agree with the Debtors that resolving the Briefed Legal Issue as soon as possible – and prior to formulating a plan of reorganization for the Debtors – is both necessary and consistent with the overarching goal of minimizing costs and ensuring efficiency in the administration of these cases.[3] Accordingly, the Series B Preferred Holders support the relief sought in the Motion.

2.  Under the guise of administrative convenience, the Debtors deviated from basic bankruptcy principles and rules by scheduling customer claims arising under the Terms of Use as "undisputed" at every Debtor, while informing all parties in interest that (i) "***it is not the intent of the Debtors to create any presumption that account holders have claims against each Debtor entity***, as that issue is disputed by . . . the Series B Preferred Share[holder]s" and (ii) "***no***

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.
[3] *See* Motion ¶ 8 (explaining that failure to resolve the Briefed Legal Issue prior to "embarking on the plan confirmation process" would "waste time, resources, and customer trust").

2

***creditor or other party should rely on the fact that the account holder claims are scheduled at each Debtor entity*** as dispositive as to this legal issue, which will be decided" by the Court.[4] Indeed, crystalizing the issue of whether customers have valid claims against every Debtor and establishing an efficient process to reach a ruling thereon was part and parcel of the Debtors' decision to deviate from the norm. Without the proposed briefing schedule set forth in the Motion (the "Briefing Schedule"), the Debtors' violation of Bankruptcy Rule 3003(c)(2) would, in fact, create an inefficient and burdensome morass – the exact scenario the Debtors sought to avoid.

3. Not only is the Briefing Schedule a critical element of a broader agreement between the Debtors and the Series B Preferred Holders resulting from months of negotiations,[5] but it would also allow for an efficient and fair process for resolving the Briefed Legal Issue, which would enable these cases to move forward expeditiously while safeguarding all parties' due process rights.

---

[4] *Global Notes and Statement of Limitations, Methodology And Disclaimers Regarding The Debtors' Schedules of Assets and Liabilities* [(the "Schedules")] *and Statements of Financial Affairs* [Dkt. No. 974] (the "Global Notes") at. 3-4 ("Pursuant to Bankruptcy Rule 3003(c)(2), if a claim is scheduled as contingent, unliquidated, or disputed, a creditor must file a proof of claim in order to preserve rights with respect to such claim. The Debtors have scheduled account holder claims at each Debtor entity and have not scheduled any of such claims as contingent, unliquidated, or disputed. The Debtors believe that scheduling any such claims as contingent, unliquidated, or disputed would inequitably require each account holder to file a proof of claim against each Debtor Entity in order to preserve the rights to the issues to be decided through the Account Holder Claim Ruling.").

[5] Specifically, the Motion is but one component of a three-prong agreement to resolve the (i) *Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Dkt. No. 1183] and (ii) *Series B Preferred Holders' Limited Objection to Debtors' Motion for Entry of an Order Setting Bar Dates for Submitting Proofs of Claim and Granting Related Relief* [Dkt. No. 1184] (the "Bar Date Objection"). The other elements of this agreement – which the Committee did not object to – are: (i) the Debtors informed customers via the Bar Date Notice that they filed the Motion to address the Briefed Legal Issue (*see infra* n.12); and (ii) to the extent that the Dollarization Issue (as defined in the Bar Date Objection) becomes relevant, the Debtors will amend their Schedules to reflect any determination made by the Court with respect to such issue (*see Order Pursuant to Bankruptcy Rule 1009 Directing the Debtors to Amend Their Schedules in Certain Circumstances* [Dkt. No. 1387] ¶ 6).

3

4.      In the Committee's Objection, the Committee asserts that it is not necessary to resolve the Briefed Legal Issue now and that the Debtors do not have the "time or the liquidity" for the Briefing Schedule.[6] The Committee instead recommends delaying resolution of the fundamental question of where hundreds of thousands of claims lie – an issue that the parties have repeatedly identified as a gating issue from day one[7] – until the hearing on plan confirmation.  Apart from the fact that without the resolution of the Briefed Legal Issue it would be impossible to determine whether any proposed plan is feasible, the Committee's recommendation is the very definition of inefficient.  The reality is that the Debtors do not have the time nor the liquidity to proceed down an obviously futile path.  The Debtors recognize this, and so should the Committee.

5.      There is no doubt that the Briefed Legal Issue addresses a foundational dispute in these cases: whether hundreds of thousands of customers must look solely to Celsius Network LLC ("LLC") for a recovery or whether they are entitled to a recovery from every Debtor notwithstanding the express provisions of the Terms of Use.  The Debtors – the party with the exclusive right to propose a plan at this time – have stated that "before any go-forward plan or sale process can be meaningfully advanced, the Debtors must understand the nature of their rights, assets, and liabilities."[8]  The resolution of the Briefed Legal Issue goes a long way towards that goal.  As such, it is in all stakeholders' interests to resolve the Briefed Legal Issue

---

[6]  Committee's Objection ¶ 4.

[7]  *See, e.g.*, *First Day Hearing Presentation* [Dkt. No. 45] at 3 ("Legal issues critical to the outcome of this case include . . . [w]hich Celsius entities do customers have claims against?"); *The Official Committee of Unsecured Creditors' Limited Objection to the Debtors' Cash Management Motion* [Dkt. No. 401] ¶ 2 ("[W]hile the Debtors have acknowledged that account holders may have claims against multiple Debtor entities, the Court has not yet adjudicated the matter, and the Committee expects that the [Series B Preferred Holders] will contest the matter."); Global Notes at 3-4.

[8]  *Debtors Reply in Support of Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Dkt. No. 1578] ¶ 6.

as expeditiously as possible – which the Briefing Schedule allows.[9] Indeed, the process contemplated by the Briefing Schedule is hardly costly or time-consuming: Phase I contemplates the submission of no more than three legal briefs, based only on the information in the parties' possession, as well as joinders thereto by any parties in interest that wish to participate.[10]

6. The Committee also asks the Court, if it decides to approve a briefing schedule on the Briefed Legal Issue, to allow more time for the parties to "negotiate an appropriate schedule (or submit competing schedules) for trying all relevant issues, not just the Terms of Use."[11] This request to delay resolution of the Briefed Legal Issue is truly baffling in light of the Committee's insistence on moving these cases forward with all due speed. Moreover, as noted above, the Briefing Schedule and the scope of the issues to be resolved were the subject of months of negotiations, and the Committee had the opportunity to participate in those negotiations and propose alternatives at every stage. The fact that the Committee chose not to participate in that process – and chose to not object to the inclusion of language in the Bar Date Notice informing customers that the Briefed Legal Issue will be resolved outside of the plan process[12] – is certainly not a good "basis for further delay."[13]

7. Moreover, any suggestion that the Briefed Legal Issue can be resolved through the regular claims reconciliation process ignores the practical realities of these cases: absent an

---

[9] The expeditious resolution of the Briefed Legal Issue is also critical for other aspects of these cases, including the appropriate use of proceeds from the sale of the GK8 entities and, if authorized by the Court, the sale of stablecoin.

[10] Phase II is only contemplated to the extent the Court, at the conclusion of Phase I, determines that further factual development is necessary, and any discovery schedule would provide for an efficient and fair process. See Motion ¶ 20.

[11] Committee's Objection ¶¶ 5, 6.

[12] See Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim (III) Approving Notice Thereof, and (IV) Granting Related Relief [Dkt. No. 1368], Exhibit B (the "Bar Date Notice") at 5 ("[T]he Debtors have filed proposed procedures to address [the Briefed Legal Issue] at Dkt. No. 1338, and upon entry of an order approving such procedures, the Debtors shall provide notice thereof to all account holders.").

[13] Committee's Objection ¶ 6.

22-10964-mg    Doc 1631    Filed 12/07/22    Entered 12/07/22 14:17:26    Main Document
Pg 6 of 8


efficient global process for resolving the Briefed Legal Issue, it would have to be addressed potentially hundreds of thousands of times. Surely the bankruptcy process is not so inflexible as to require such an inefficient and expensive route, particularly when, as acknowledged by the Committee itself, it is critical to "move these cases along and avoid needless litigation."[14]

8. Finally, the Committee wrongly asserts that the resolution of the Briefed Legal Issue is unnecessary because even if the Series B Preferred Holders succeed on this issue, they would need to overcome the purported nine billion dollar intercompany claim of LLC against CNL (the "Intercompany Claim"). As reported in the Debtors' Reply, however, the Debtors expect, based on their recent analysis, that they will be required to amend the scheduled Intercompany Claim. Debtors' Reply ¶ 4.[15] Indeed, the Series B Preferred Holders expect a substantial downward adjustment and possible elimination of the Intercompany Claim.[16] Accordingly, the Intercompany Claim, as scheduled, cannot be relied upon and certainly should not be an impediment for setting procedures to resolve the fundamental question of against which entities customers have claims. In any event, while the existence (or non-existence) of the Intercompany Claim impacts the issue of whether a recovery may be available to CNL's preferred equity, all that the Court needs to determine at this juncture is that the Committee's reliance on the existence of the Intercompany Claim is not a valid basis for denying the relief sought in the Motion.

---

[14] *The Official Committee of Unsecured Creditors' Statement and Reservation of Rights with Regards to the Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Dkt. No. 1301] ¶ 6.

[15] *Debtors' Reply in Support of Debtors' Motion Seeking Entry of an Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* Dkt. No. 1619] (the "Debtors' Reply").

[16] Based on the Debtors' concession in the Debtors' Reply, the Series B Preferred Holders believe that CNL should promptly, even while the Debtors' analysis continues, amend its schedules to, at a minimum, reflect that the scheduled $9 billion Intercompany Claim is disputed.

9. Moreover, the Committee's other arguments that potential claims, such as fraudulent transfer or substantive consolidation, render the outcome of litigating the Briefed Legal Issue irrelevant are equally unavailing.[17] Those claims have not been asserted by any party in interest, and whether or not they will be asserted is pure speculation at this time – whereas the Briefed Legal Issue is ripe for resolution and will define numerous parties' legal rights and entitlements.

10. Based on the foregoing, the Series B Preferred Holders submit that it is imperative to establish an efficient process for the resolution of the Briefed Legal Issue and, accordingly, respectfully request that the Court overrule the Committee's Objection and grant the relief requested in the Motion.

## Reservation of Rights

11. The Series B Preferred Holders reserve their rights to supplement or amend this Statement, raise additional issues regarding the Motion and the Committee's Objection, and present evidence at the hearing on the Motion.

*[Remainder of page intentionally left blank]*

---

[17] *See, e.g.*, Committee's Objection ¶ 4; *Statement of the Official Committee of Unsecured Creditors Regarding Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Dkt. No. 1536] at 2-3.

Dated: December 7, 2022
New York, New York

/s/ *Dennis Dunne*
Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

- and -

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP*

/s/ *Joshua Mester*
Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*