**Hearing Date and Time:** April 2023 Omnibus Hearing (TBD)
**Objection Deadline** (for parties other than the Fee Examiner and U.S. Trustee): January 5, 2023, 12:00 p.m. EST

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**SUMMARY COVER SHEET TO FIRST INTERIM**
**APPLICATION OF SHOBA PILLAY, EXAMINER AND JENNER & BLOCK LLP**
**FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF**
**EXPENSES INCURRED AS ATTORNEYS FOR EXAMINER FOR**
**THE PERIOD OF SEPTEMBER 29, 2022 THROUGH OCTOBER 31, 2022**

| Name of applicant: | Shoba Pillay, Examiner, and Jenner & Block LLP |
|---|---|
| Authorized to provide professional services to: | Shoba Pillay, Examiner |
| Date of order approving employment: | November 1, 2022 (effective as of September 29, 2022) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Ltd. (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

| | |
|---|---|
| Period for which compensation and reimbursement are sought: | September 29, 2022 through October 31, 2022 |
| Total fees sought this period: | $1,863,035.50 |
| Total expenses sought this period: | $1,135.09 |
| Total fees and expenses requested: | $1,864,170.59 |
| Total compensation approved to date by Interim Order: | None |
| Total expenses approved to date by Interim Order: | None |
| Total allowed compensation paid to date: | None |
| Total allowed expenses reimbursed to date: | None |
| Number of professionals included in this application: | 32 |
| Number of professionals billing fewer than 15 hours: | 5 |
| Type of fee statement or application | Interim Fee Application |
| Blended rate in this application for all attorneys: | $1,005.73 |
| Blended rate in this application for all timekeepers: | $988.24 |
| Are any rates higher than those approved or disclosed at retention? | No. |
| Difference between fees budgeted and compensation sought: | $135,829.41 less than budgeted.[2] |

---

[2] Jenner & Block began submitting monthly budgets to the Fee Examiner in December 2022. Jenner & Block estimated its fees will aggregate $6 to $7 million from the Retention Date (September 29) through the issuance of the Final Report (January 17). (*See Amended Work Plan* ¶ 29 [Dkt. 1438-1].) For the Interim Period, Jenner & Block budgeted $2,000,000.

| Name of Professional | Title | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Fees Requested |
|---|---|---|---|---|---|---|
| CATHERINE L. STEEGE | Partner | 1982 | Restructuring & Bankruptcy | $1,595.00 | 67.70 | $107,981.50 |
| VINCENT E. LAZAR | Partner | 1990 | Restructuring & Bankruptcy | $1,540.00 | 96.10 | $147,994.00 |
| SHOBA PILLAY | Partner | 2003 | Data Privacy & Cybersecurity | $1,455.00 | 114.50 | $166,597.50 |
| GAIL H. MORSE | Partner | 1982 | Tax | $1,320.00 | 37.20 | $49,104.00 |
| DAVID M. GREENWALD | Partner | 1986 | Litigation | $1,275.00 | 0.50 | $637.50 |
| MELISSA M. ROOT | Partner | 2003 | Restructuring & Bankruptcy | $1,265.00 | 88.70 | $112,205.50 |
| LANDON S. RAIFORD | Partner | 2008 | Restructuring & Bankruptcy | $1,185.00 | 167.80 | $198,843.00 |
| KAYVAN B. SADEGHI | Partner | 2003 | Securities Litigation & Enforcement | $1,150.00 | 47.10 | $54,165.00 |
| SARAH F. WEISS | Partner | 2010 | Investigations, Compliance & Defense | $1,090.00 | 56.40 | $61,476.00 |
| HANNA M. CONGER | Partner | 2012 | Energy | $1,085.00 | 1.00 | $1,085.00 |
| AARON R. COOPER | Partner | 2011 | Investigations, Compliance & Defense | $1,085.00 | 149.50 | $162,207.50 |
| CARL N. WEDOFF | Special Counsel | 2010 | Restructuring & Bankruptcy | $1,095.00 | 90.50 | $99,097.50 |
| EMILY M. SAVNER | Special Counsel | 2013 | Investigations, Compliance & Defense | $1,075.00 | 62.30 | $66,972.50 |
| LAURA E. PELANEK | Special Counsel | 2004 | Litigation | $905.00 | 209.80 | $189,869.00 |
| MICHELLE A. ONIBOKUN | Associate | 2018 | Government Contracts | $905.00 | 66.60 | $60,273.00 |
| PHILIP B. SAILER | Associate | 2018 | Investigations, Compliance & Defense | $905.00 | 64.40 | $58,282.00 |
| SARA M. STAPPERT | Associate | 2019 | Investigations, Compliance & Defense | $825.00 | 67.50 | $55,687.50 |
| ERIC E. PETRY | Associate | 2019 | Litigation | $825.00 | 39.30 | $32,422.50 |
| SOLANA R. GILLIS | Associate | 2020 | Corporate | $750.00 | 42.30 | $31,725.00 |
| ADINA HEMLEY-BRONSTEIN | Associate | 2021 | Litigation | $710.00 | 42.20 | $29,962.00 |
| COURTNEY B. SHIER | Associate | 2021 | Litigation | $700.00 | 35.50 | $24,850.00 |
| RAYMOND B. SIMMONS | Associate | 2021 | Litigation | $700.00 | 49.30 | $34,510.00 |
| PAMELA A. MARINO-GIAKOU | Staff Attorney | 2000 | Litigation | $595.00 | 20.70 | $12,316.50 |
| CONSTANCE J.B. PURTILL | Discovery Attorney | 2011 | Litigation | $330.00 | 17.90 | $5,907.00 |
| DAVID C. GUI | Discovery Attorney | 2013 | Litigation | $330.00 | 74.00 | $24,420.00 |
| MICHELLE A. MCDONALD | Project Discovery Attorney | 2005 | Litigation | $330.00 | 52.80 | $17,424.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| LEAH J. STARKMAN | Discovery Attorney | 2002 | Litigation | $330.00 | 28.70 | $9,471.00 |
| STEFANO VIOLA | Discovery Attorney | 2013 | Litigation | $330.00 | 22.10 | $7,293.00 |
| DANIEL O. GARCIA | Senior Paralegal | N/A | | $560.00 | 69.50 | $38,920.00 |
| JAMES P. WALSH | Senior Research Librarian | N/A | | $405.00 | 1.50 | $607.50 |
| M. KRISTINA DEGUZMAN | Research Librarian | N/A | | $405.00 | 0.70 | $283.50 |
| PAUL S. RAMONAS | Senior Research Librarian | N/A | | $405.00 | 1.10 | $445.50 |
| **Sub-Total*** | | | | | 1,885.20 | $1,863,035.50 |
| Less 50% Discount on Non-working Travel Matter | | | | | | |
| Total | | | | | 1,885.20 | $1,863,035.50 |

**Hearing Date and Time:** April 2023 Omnibus Hearing (TBD)
**Objection Deadline** (for parties other than the Fee Examiner and U.S. Trustee): January 5, 2023, 12:00 p.m. EST

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**FIRST INTERIM APPLICATION OF SHOBA PILLAY, EXAMINER
AND JENNER & BLOCK LLP FOR COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED AS ATTORNEYS FOR EXAMINER
FOR THE PERIOD OF SEPTEMBER 29, 2022 THROUGH OCTOBER 31, 2022**

Shoba Pillay, Examiner in these chapter 11 cases (the "**Examiner**"), and Jenner & Block

LLP ("**Jenner & Block**"), counsel to the Examiner, hereby submit this interim application for

compensation for professional services rendered and reimbursement of expenses incurred (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Ltd. (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

"**Interim Fee Application**") for the period from September 29, 2022 through and including October 31, 2022 (the "**Interim Period**") in accordance with sections 327, 330, and 331 of title 11 of the United States Code, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, and the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Dkt. 521] ("**Interim Compensation Order**"); the Court's *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated July 17, 2013 (the "**Local Guidelines**"); the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Guidelines**"); and the *Order Appointing Independent Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals* (the "**Fee Examiner Order**") [Dkt. 1151]. In support of this Application, Jenner & Block submits the *Certification of Vincent E. Lazar* (the "**Lazar Certification**"), attached hereto as **Exhibit A**, and respectfully represent as follows:

**Preliminary Statement**

1.      On November 1, 2022, this Court entered the *Order Authorizing Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. 1259] (the "**Retention Order**"), approving the Examiner's employment of Jenner & Block, effective as of September 29, 2022. A copy of the Retention Order is attached hereto as **Exhibit B**. During the Interim Period, Jenner & Block collected and reviewed large volume of data and records, interviewed current and former Celsius personnel and customers, engaged in numerous

2

information-gathering discussions with the various interested parties, including the Debtors, the Debtors' customers, the U.S. Trustee, the Official Committee of Unsecured Creditors (the "**Committee**"), state and federal regulatory agencies, and the ad hoc committees, and began drafting the Examiner's Interim Report ("**Interim Report**"), which was filed with the Court on November 19, 2022 [Dkt. 1411]. Jenner & Block submits that its work during the Interim Period was necessary for, and beneficial to, the Examiner in these chapter 11 cases, and respectfully requests that the Court award the fees and expenses requested in this Interim Fee Application.

### Jurisdiction

2.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The statutory bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

### Background and Case Status

5.        On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their affairs as debtors and debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

6.        On July 27, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**"), comprised of seven of the Debtors' account holders. [Dkt. 241.]

7.        On August 18, 2022, the United States Trustee filed a motion seeking appointment of an examiner. [Dkt. 546.]

8.      On September 14, 2022, the Court entered the *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. 820] ("**Examiner Order**"), directing the appointment of an examiner under section 1104(c) to conduct an investigation of:

     a.  the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled;

     b.  why there was a change in account offerings beginning in April 2022 from the Earn Program to the Custody Service for some customers while others were placed in a 'Withhold Account';

     c.  the Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto"; and

     d.  the current status of the utility obligations of the Debtors' mining business.

(Examiner Order ¶ 3.)

9.      The Examiner Order also directs the examiner to "otherwise perform the duties of an examiner set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code," subject to the terms of the Examiner Order. (*Id.*)

10.      On September 29, 2022, the United States Trustee appointed Shoba Pillay as Examiner and filed a notice of the appointment [Dkt. 920] and an application to approve the appointment of the Examiner. [Dkt. 921.] The Court entered an Order approving the appointment of the Examiner the same day. [Dkt. 923.]

11.      On October 11, 2022, the Examiner filed her Work Plan, in accordance with paragraph 7 of the Examiner Order [Dkt. 1013-1] ("**Initial Work Plan**"). Under the Examiner Order, the Examiner's final report was due 60 days after the filing of her Initial Work Plan—i.e., December 10, 2022—absent further order of the Court on notice to all parties. (Examiner Order ¶ 8.)

12.    On October 11, 2022, the Bankruptcy Court entered a scheduling order to address claims made by two *ad hoc* groups. These groups claim that the crypto assets held in what Celsius called Custody and Withhold accounts are property of the account holders, rather than property of Celsius's bankruptcy estates. (*See Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, The Committee, The Ad Hoc Groups With Respect to Custody and Withhold Issues* [Dkt. 1044] ("**Phase I Order**").) Because of factual overlap between this claim and the Examiner's investigation, the Court directed the Examiner to file an Interim Report by November 19, 2022 addressing several factual issues:

- how and when the Custody and Withhold wallets were created;

- whether the Custody and Withhold wallets have only ever held Custody and Withhold Coins, respectively, and whether the Custody and Withhold wallets include coins that have been designated as pledged collateral;

- the process by which coins were transferred in and out of Custody and Withhold wallets;

- the balance of assets in Custody and Withhold accounts and Custody and Withhold liabilities in the ten (10) days before and after the pause by coin;

- the number and types of coins that are currently in Custody and Withhold wallets as a step in an unsuccessful attempt to withdraw coins off of the platform (to the extent ascertainable).

(*Id.* ¶ 7.)

13.    On November 1, 2022, the Court entered an *Order Approving Examiner's Motion to Confirm Examination Scope or Alternatively for Expansion of the Scope of the Examination* [Dkt. 1260] ("**First Scope Order**"), which clarified that:

a.    Topic (i) set forth in the Examiner Order includes an examination of the Debtors' CEL tokens, including why and how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded – including whether any of the Debtors' trading practices involving CEL tokens generally or determinations of CEL tokens awarded as part of the Earn Rewards program – impacted their value, and

b. Topic (ii) set forth in the Examiner Order includes an examination of the representations Debtors generally made in public representations to customers to attract them to their platform and about their cryptocurrency holdings and account offerings.

(*Id.* ¶¶ 2-3.)

14.    On November 14, 2022, the Court entered a *Stipulation and Agreed Order Modifying Scope of Examiner Order* [Dkt. 1343] ("**Second Scope Order**," and together with the First Scope Order, the "**Examiner Orders**") under which the "[t]he scope of the Examiner's factual investigation and report is expanded to include an investigation and report on whether the Debtors used new deposits being made by customers to make payments or otherwise meet obligations to existing customers at a time when the Debtors had no other sources (whether liquid or which could have been monetized) from which to make such payments or meet such obligations." (*Id.* ¶ 1.).

15.    On November 19, 2022, the Examiner filed the Interim Report, addressing the issues identified in the Phase I Order.

16.    On December 2, 2022, the Court entered an *Order Approving Amended Work Plan* [Dkt. 1562], which approved the Examiner's Amended Work Plan [Dkt. 1438-1] ("**Amended Work Plan**") and extended the Examiner's deadline to file her Final Report ("**Final Report**") to January 17, 2023. The Amended Work Plan estimates the total fees for the Examiner and Jenner & Block would aggregate approximately $6 to $7 million in light of the clarified and expanded scope of the Examiner's investigation. (*Id.* ¶ 29.)

17.    On December 8, 2022, the Court entered an order [Dkt. 1645] extending the Debtors' exclusive periods to file and solicit acceptances to a chapter 11 plan to February 15, 2023. No plan or disclosure statement has been filed in these chapter 11 cases.

**Jenner & Block's Retention and Fee Request**

18.     On September 29, 2022, the Examiner selected Jenner & Block as her counsel. *See Disinterestedness Declaration of Shoba Pillay* [Dkt. 921-1] (the "**Pillay Declaration**").

19.     On October 4, 2022, the Examiner filed her *Application to Employ Jenner & Block LLP as Attorneys to the Examiner* [Dkt. 962].

20.     On November 1, 2022, the Court entered the Retention Order.

21.     On November 25, 2022, Jenner & Block filed its *First Monthly Statement for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From September 29, 2022 through October 31, 2022* [Dkt. 1459] (the "**First Monthly Statement**") [Dkt. 2050], seeking $1,863,035.50 in fees and $1,135.09 in expenses. Jenner did not receive any formal or informal objections to the First Monthly Statement.

22.     Jenner & Block's fees are based upon hours charged, recorded in tenth-of-an-hour increments, at Jenner & Block's ordinary and customary hourly rates in effect as of January 1 of the calendar year in which the services are rendered, plus reimbursement of actual, necessary, out-of-pocket expenses and other charges incurred by Jenner & Block on behalf of the Examiner. Jenner & Block adjusts its rates annually at the start of each calendar year, as disclosed in its Retention Application and approved by the Retention Order. These rates are consistent with the rates charged to other clients, including outside of bankruptcy. Jenner & Block has shared its hourly rates with the Examiner, and the Examiner has approved these rates.

23.     The summary cover sheet to this Interim Fee Application contains a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services on behalf of the Examiner during the Interim Period, the capacity in which each individual is employed by Jenner & Block, the hourly billing rate charged for services performed by each such

individual, the aggregate number of hours expended by all such professionals and paraprofessionals, the aggregate fees billed, and, for attorneys, the year in which each professional was first licensed to practice law.

24.    By this Interim Application, and after taking into account certain voluntary discounts and reductions, Jenner & Block requests (i) interim allowance of $1,863,035.50 for the reasonable compensation for actual, necessary legal services that Jenner & Block rendered to the Examiner during the Interim Period; and (ii) interim allowance of $1,135.09 for the actual and necessary costs and expenses that Jenner & Block incurred in connection with such services during the Interim Period.

25.    This is Jenner & Block's first request for interim compensation in these chapter 11 cases. As set forth in the Lazar Certification, all the services for which interim compensation is sought herein were rendered for and on behalf of the Examiner in connection with these chapter 11 cases. To the best of Jenner & Block's knowledge and as disclosed in the *Pillay Declaration*; *Declaration of Vincent E. Lazar in Support of the Application Authorizing the Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. 962, Ex. C]; and the *Supplemental Declaration of Vincent E. Lazar in Support of the Application Authorizing the Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. 1608] (together, the "**Retention Declarations**"), Jenner & Block is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and except as otherwise specified in the Retention Declarations, Jenner & Block's partners, associates, and special attorneys do not hold or represent any interest adverse to the Examiner.

26.    Jenner & Block might have in the past represented, might currently represent, and likely in the future will represent parties that are parties in interest in these cases in connection

with matters unrelated to the Examiner or the chapter 11 cases. In the Retention Declarations, Jenner & Block disclosed its connections to parties in interest in the chapter 11 cases that it has been able to ascertain using reasonable efforts. Jenner & Block will update such disclosures, as appropriate, if Jenner & Block becomes aware of relevant and material new information.

27.    Jenner & Block performed the services for which it is seeking compensation solely on behalf of the Examiner and not on behalf of any of the other Debtors, any committee, creditor, or other entity.

28.    Jenner & Block has not received payment or a promise of payment from any source other than the Debtors' estates for its services rendered and expenses incurred on behalf of the Examiner or to be rendered or incurred in any capacity whatsoever in connection with the Chapter 11 cases.

29.    Jenner & Block does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

30.    The Application is supported by the following Exhibits, which are attached hereto and patterned on the U.S. Trustee Guidelines[2]:

31.    **Exhibit C** is a schedule of Jenner & Block attorneys and paraprofessionals including the standard hourly rate for each attorney and paraprofessional who rendered services to the Examiner in connection with these chapter 11 cases during the Fee Period and the title, hourly rate, aggregate hours worked, and the amount of fees attributed to each attorney and paraprofessional.

---

[2] The Fee Examiner has requested each professional attach a copy of their engagement letter to their first interim fee application. Because Jenner & Block's employment was approved under the Retention Order, Jenner & Block did not execute a separate engagement agreement with the Examiner.

32.     **Exhibit D** is a schedule of the number of hours expended and fees incurred (on an aggregate basis) by Jenner & Block with respect to each project category that Jenner & Block established in accordance with its internal billing procedures.

33.     **Exhibit E** contains a disclosure of "customary and comparable compensation" charged by Jenner & Block's professionals and paraprofessionals. The blended hourly billing rate of attorneys for all services provided during the Fee Period is $1,005.73. The blended hourly billing rate of all paraprofessionals is $552.97.

34.     **Exhibit F** is a schedule for the Fee Period setting forth the total amount of payment sought with respect to each category of expenses for which Jenner & Block is seeking payment in this Fee Statement. These disbursements total $1,135.09.

35.     **Exhibit G** contains Jenner & Block's detailed time records, which provide a daily summary of the time spent by each Jenner & Block professional and paraprofessional during the Fee Period.

36.     **Exhibit H** contains Jenner & Block's records of expenses incurred in the rendition of professional services to the Examiner during the Interim Period.

### Fees and Expenses Incurred During Interim Period

### A.     Fees Incurred During Interim Period

37.     In the ordinary course of Jenner & Block's practice, Jenner & Block maintains records of the time spent on the professional services provided to the Examiner. **Exhibit C** is a summary of fees incurred and hours worked during the Interim Period for which compensation is sought on an hourly basis in this Application, setting forth the following information:

     a.   the name of each attorney and paraprofessional for whose work compensation is sought;

     b.   each attorney's year of bar admission and area of practice concentration;

c. the aggregate time worked and fees billed by each attorney and each paraprofessional during the Interim Period;

d. the hourly billing rates for each such attorney and paraprofessional at Jenner & Block's applicable billing rates; and

e. a calculation of total compensation requested using the rates disclosed in the Interim Fee Application.

**B.    Customary Billing Disclosures**

38.    Jenner & Block's hourly rates are set at a level designed to compensate Jenner & Block fairly for the work of its attorneys and paraprofessionals and to cover overhead and operating expenses. The hourly rates and corresponding rate structure utilized by Jenner & Block in these chapter 11 cases are the same as the hourly rates and corresponding rate structure Jenner & Block uses for other restructuring matters and are comparable to the hourly rates and corresponding rate structure that Jenner & Block uses for corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. Jenner & Block's rates and rate structure reflect the complex and time-sensitive nature of restructuring and other matters handled by Jenner & Block. **Exhibit E** is a summary of blended hourly rates for timekeepers during the Interim Period and a comparison to blended hourly rates on other matters.

**C.    Expenses Incurred During Interim Period**

39.    In the ordinary course of Jenner & Block's practice, it maintains a record of expenses incurred in rendering professional services to the Examiner and for which reimbursement is sought. **Exhibit F** to this Application is a summary of the total amount of expenses for which Jenner & Block seeks reimbursement with respect to each category of expenses for the Interim Period. The out-of-pocket disbursement sum is broken down into categories of charges.

### Summary of Legal Services Provided During the Interim Period

40.     During the Interim Period, Jenner & Block provided important professional services to the Examiner in connection with these chapter 11 cases. A summary of the various services Jenner & Block provided to the Examiner during the Interim Period is set forth in paragraphs 43 through 55 below.

41.     Jenner & Block has established, in accordance with its internal billing procedures, project categories for keeping time records of the work performed for the Examiner. A schedule setting forth a description of each project category utilized in this case, the number of hours worked by Jenner & Block attorneys and paraprofessionals for each project category, and the aggregate fees associated with each project category is attached as **Exhibit D**.

42.     The following is a non-exhaustive summary, by project category, of the professional services provided by Jenner & Block during the Interim Period. This summary is organized in accordance with Jenner & Block's internal system of matter numbers.

### Investigation Planning and Coordination
Total Hours: 385.60          Fees: $461,283.50

43.     Jenner & Block's recorded time entries in this project category include, among other things: (a) assisting the Examiner in preparing her investigative plan and Initial Work Plan; (b) preparing investigative workstreams; (c) counseling and assisting the Examiner in the performance of her investigation; (d) participating in leadership team meetings with the Examiner to ensure the coordinated and efficient undertaking of her investigation; (e) reviewing and analyzing authority governing the Examiner's investigation; (f) preparing the Examiner's *Application to Authorize Rule 2004 Discovery* [Dkt. 963]; (g) preparing the Examiner's Initial Work Plan and related pleadings; (h) analyzing documents not attributable to another project matter; (i) reviewing and analyzing court filings relevant to the Examiner's investigation; and

12

(j) rendering other services related to the Examiner's investigation not attributable to another matter category. For team meetings, each participant was responsible for presenting to and/or otherwise advising the Examiner or the Jenner team on specific agenda items.

**Crypto Analysis**
Total Hours: 403.30          Fees: $394,872.50

44.      Jenner & Block's recorded time entries in this project category include, among other things: (a) analyzing all aspects of the Debtors' storage and transfer of cryptocurrency consistent with the investigation scope ordered by the Court (Examiner Order ¶ 3(i)); (b) preparing an investigative plan and workstreams for cryptocurrency analysis; (c) reviewing and analyzing coin reports; (d) preparing third-party inquiries regarding the Debtors' cryptocurrency storage and transfer of cryptocurrency; (e) reviewing and analyzing information regarding crypto tracing, asset tracking, and related data forensics; (f) preparing for and conducting witness interviews relating to cryptocurrency tracing; (g) meeting internally to strategize and coordinate allocation of efforts; and (h) coordinating cryptocurrency tracing aspect of the Examiner's investigation with the Examiner's financial advisor and the Debtors' and Committee's professionals.

**Celsius Examiner**
Total Hours: 114.50          Fees: $166,597.50

45.      Jenner & Block's recorded time entries in this project category include all the Examiner's time entries in performing her duties under the Examiner Order and Bankruptcy Code during the Interim Period, which include, among other things: (a) communicating with various parties in interest to arrange for cooperation and avoid duplication of effort; (b) reviewing background materials and court filings; (c) coordinating leadership team meetings; (d) leading weekly team strategy meetings; (e) preparing a work plan and budget for the investigation; (f) considering financial advisors to assist her in the investigation; (g) attending key witness

interviews; and (h) reviewing customer communications and court filings to consider revisions to the scope of the investigation. Only the Examiner bills time to this matter.

### Document Management and Review
Total Hours: 405.40          Fees: $245,215.50

46.     Jenner & Block's recorded time entries in this project category include, among other things: (a) preparing external document requests; (b) preparing document review workstreams and protocols; (c) coordinating document management with e-discovery vendors; (d) collecting and processing documents for attorney review; (e) reviewing and analyzing documents; and (f) summarizing and tracking key documents for the Examiner's investigation.

### Communication With Parties In Interest
Total Hours: 100.80          Fees: $97,849.00

47.     Jenner & Block's recorded time entries in this project category include, among other things: (a) meeting and communicating with the Debtors, the Debtors' professionals, the Debtors' customers, the Office of the U.S. Trustee, the Committee, the Committee's professionals, state and federal regulatory agencies, the ad hoc committees, and others regarding sharing of information, coordination of efforts, and avoiding duplication of work; (b) communicating and coordinating with federal and state government agencies to avoid unnecessary interference with, or duplication of, any investigations conducted by such agencies; (c) consulting with the Committee, the Debtors, and the United States Trustee to consider revisions to the scope of the investigation; (d) responding to numerous inquiries from customers and collecting and reviewing information submitted to the Examiner by customers; and (e) other third-party communication not attributable to a specific project category.

14

**Tax Law Compliance**
Total Hours: 107.90          Fees: $116,829.50

48.     Jenner & Block's recorded time entries in this project category reflect work

conducted in connection with an examination of "the Debtors' procedures for paying sales taxes,

use taxes, and value added taxes and the extent of the Debtors' compliance with any non-

bankruptcy laws with respect thereto" (Examiner Order ¶ 3(iii)), and include, among other things:

(a) analyzing all aspects of the Debtors' tax practices; (b) preparing an investigative plan and work

plan for tax investigation; (c) requesting, reviewing, and analyzing tax documents relevant to the

Examiner's investigative mandate; (d) meeting internally and with the Examiner's financial

advisor regarding strategy and coordination of tax investigation; (e) meeting with representatives

from the Debtors, Debtors' professionals, and other third parties regarding tax issues; and

(f) preparing for and conducting witness interviews relating to tax issues.

**Utility Obligations**
Total Hours: 75.90           Fees: $69,663.50

49.     Jenner & Block's recorded time entries in this project category reflect work

conducted in connection with an examination of "the current status of the utility obligations of the

Debtors' mining business" (Examiner Order ¶ 3(iv)), and include, among other things:

(a) analyzing the Debtors' mining and energy practices relevant to the Examiner's investigative

mandate; (b) preparing an investigative plan and work plan for the mining and energy aspect of

the Examiner's investigation; (c) requesting, reviewing, and analyzing mining and energy

documents relevant to the mining and energy aspect of the Examiner's investigative

mandate; (d) meeting internally and with the Examiner's financial advisor regarding strategy and

coordination of mining and energy aspect of investigation; (e) meeting with representatives from

the Debtors, Debtors' professionals, and other third parties regarding mining and energy issues;

(f) reviewing and analyzed documents relevant to the mining and energy aspect of the Examiner's investigative mandate; and (g) preparing for and conducting witness interviews relating to mining and utility issues.

**Report Preparation and Drafting**
Total Hours: 87.30            Fees: $85,212.50

50.    Jenner & Block's recorded time entries in this project category include, among other things: (a) meeting internally to structure and outline the Interim Report and Final Report; (b) collecting and incorporating key documents and background materials into the Interim Report; and (c) preparing and drafting the Interim Report and Final Report.

**Witness Interviews**
Total Hours: 20.30            Fees: $21,806.50

51.    Jenner & Block's recorded time entries in this project category include, to the extent not associated with another specific project category: (a) preparing for witness interviews, and (b) conducting witness interviews.

**Court Hearings**
Total Hours: 20.80            Fees: $25,838.00

52.    Jenner & Block's recorded time entries in this project category including (a) attending and appearing on behalf of the Examiner at Court hearings; (b) preparing for Court hearings; and (c) reviewing pleadings and other submissions considered at or relevant to Court hearings.

**Billing and Fee Applications**
Total Hours: 44.30            Fees: $54,405.00

53.    Jenner & Block's recorded time entries in this project category include (a) preparing of Jenner's Retention Application; (b) developing billing and fee protocols to ensure compliance with the U.S. Trustee Guidelines; (c) communicating with the Debtors' counsel

16

concerning conflicts and retention issues; (d) assisting the Examiner's financial advisor with the preparation of its retention application; and (e) preparing Jenner & Block's first monthly fee statement.

**Case Administration**
Total Hours: 119.10          Fees: $123,462.50

54.    Jenner's recorded time entries in this project category include, among other things: (a) case and project management; (b) preparing and updating the master case calendar; (c) attending section 341 meetings of creditors to identify issues relevant to the investigation; (d) considering, interviewing, and retaining a financial advisor; and (e) preparing and filing pleadings not attributable to another project category.

## Actual and Necessary Expenses Incurred by Jenner & Block During the Interim Period

55.    As summarized in **Exhibit F** and as set forth in detail in **Exhibit H**, Jenner & Block has incurred a total of $1,135.09 in expenses on behalf of the Examiner during the Interim Period. The expenses identified in Exhibit H are intended to reimburse Jenner & Block's direct costs that are not included in Jenner & Block's hourly billing rates. Only clients who use services of the types set forth in Exhibit H of this Fee Application are charged for such services.

## Jenner & Block's Requested Compensation and Reimbursement Should be Allowed

56.    The services for which Jenner & Block seeks compensation in this Application were, at the time provided, reasonably calculated to be necessary for and beneficial to the Examiner. Jenner & Block performed these services economically, effectively, and efficiently. Jenner & Block submits that the compensation requested is reasonable considering the nature, extent, and value of such services to the Examiner. Accordingly, Jenner & Block submits that the compensation sought in this Application is warranted and should be approved.

57.     Section 331 of the Bankruptcy Code provides for interim and final compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered … and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

58.     Jenner & Block respectfully submits that the professional services provided were necessary to the administration of these cases and performed economically and efficiently, and that the compensation requested herein is reasonable in light of the nature, extent, and value of such services, performed at the direction of the Examiner.

### Reasonable and Necessary Expenses Incurred in Providing Services to the Examiner

59.    As set forth in Exhibit H attached hereto, and as summarized in Exhibit F attached hereto, Jenner & Block has incurred a total of $1,135.09 in expenses on behalf of the Examiner during the Interim Period. These charges are intended to reimburse Jenner's direct operating costs, which are not incorporated into the Jenner & Block hourly billing rates.

### Statement by Jenner & Block Under Paragraph C(5) of the UST Guidelines

60.    The following is provided in response to the questions set forth in ¶ C.5 of the U.S. Trustee Guidelines:

> **Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.
>
> **Response:** No.
>
> **Question:** If the fees sought in this fee application as compared to the fees budgeted for the time covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?
>
> **Response:** This is not applicable.
>
> **Question:** Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?
>
> **Response:** No.
>
> **Question:** Does this fee application include time or fees related to reviewing the time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.
>
> **Response:** No.
>
> **Question:** Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.
>
> **Response:** No.

**Question:** If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Response:** This is not applicable.

<u>**Reservation of Rights and Notice**</u>

61.    It is possible that some professional time expended or expenses incurred during the Interim Period are not reflected in the Interim Fee Application. Jenner & Block reserves the right to include such amounts in future fee applications. Notice of the Application has been provided to all necessary parties in accordance with the Interim Compensation Order. Accordingly, Jenner & Block submits that no other or further notice need be given.

*(Signature page follows.)*

Dated: December 15, 2022

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ *Vincent E. Lazar*
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com
csteege@jenner.com

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
ksadeghi@jenner.com

*Counsel to the Examiner*