Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF RULING ON DEBTORS' AMENDED**
**MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'**
**KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on November 21, 2022, the Debtors filed the *Debtors' Amended Motion for Entry of an Order Authorizing the Debtors to Redact and File Under Seal Certain Confidential Information Related to the Debtors' Key Employee Retention Plan* (the "Amended Seal Motion") [Docket No. 1425], and on November 22, 2022, the Debtors filed the *Debtors' Amended Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* (the "Amended KERP Motion") [Docket No. 1426] and the *Motion to Schedule an Expedited Hearing and Shorten the Notice Period on the Debtors' (A) Amended Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief and (B) Amended Motion for Entry of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*an Order Authorizing the Debtors to Redact and File Under Seal Certain Confidential Information Related to the Debtors' Key Employee Retention Plan* (the "Motion to Shorten" and along with the Amended Seal Motion and the Amended KERP Motion, the "KERP Motions") [Docket No. 1429].

**PLEASE TAKE FURTHER NOTICE** that a hearing was held on December 5, 2022, on the KERP Motions (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that at the Hearing, the Court approved the relief sought in the KERP Motions and read a ruling into the record.

**PLEASE TAKE FURTHER NOTICE** that the Court entered the *Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 1683].

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Court's request that the Debtors file the relevant transcript pages associated with the Court's ruling on the KERP Motions, the Debtors have attached the same hereto as **Exhibit A**.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated:  December 20, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:     (212) 446-4900<br>Email:           jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:     (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                       ross.kwasteniet@kirkland.com<br>                       chris.koenig@kirkland.com<br>                       dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |

# Exhibit A

**Excerpts from *In re Celsius Network LLC et. al.* Hearing Transcript – December 5, 2022**

Page 177

1   Debtor's key employee retention plan.  There were three
2   motions specifically, a motion to shorten notice, a motion
3   to seal, and then an amended motion to approve the KERP.
4   The amended motion was filed at Docket Number 1426, Your
5   Honor, and it supplements and amends an original order filed
6   back on October 11 of this year at Docket Number 1021.
7          Your Honor, I will note that as a gating matter,
8   one of the objections, the Mr. Frishberg objection, as I
9   read it, Your Honor, doesn't relate to the substance of the
10  KERP so much as it does to the timing and the request to
11  expedite.  And as he made his appearance, he asked or
12  suggested that maybe the Motion to Expedite be taken up
13  first as a gating matter, which I'm happy to follow Your
14  Honor's preference.  I'm certainly happy to make a few
15  remarks on the Motion to Expedite.
16          THE COURT:  That's unnecessary because I invited
17  an expedite hearing on the KERP.  It was specifically at my
18  urging that that was done.  So the motion to shorten time,
19  ECF 1429 is granted.
20          MR. KWASTENIET:  Thank you, Your Honor.
21          THE COURT:  So let me ask Ms. Cornell with respect
22  to the ceiling motion, do you have an objection to the
23  ceiling motion?  The ceiling motion is Number 2 on the
24  agenda.  It's ECF 1425.  There were no responses that were
25  filed, but I just --

Page 178

1      MS. CORNELL:  Only insofar as the redactions
2  pertained to our objection and the information on the
3  evidentiary record.
4      THE COURT:  I don't understand what you just said
5  -- told me.  Why don't you go up to the microphone if you
6  would?
7      MS. CORNELL:  Good morning, Your Honor.  Shara
8  Cornell on behalf of the Office of the United States
9  Trustee.  We filed our objection to the KERP ad filed at
10 1426 and the motion to file under CLF 1425 in this case.  I
11 don't think I need to repeat what's in the objection, but
12 insofar as the evidentiary basis provided by the Debtors
13 today is insufficient because of those redactions.  The
14 United States Trustee objects to the motion to seal.
15     THE COURT:  Okay.
16     MS. CORNELL:  Thank you.
17     THE COURT:  All right.  The objection to the
18 motion to seal is overruled.  There were -- and so the
19 motion to seal is granted.
20     MS. CORNELL:  Thank you, Your Honor.
21     THE COURT:  All right.  Thank you.
22     MR. KWASTENIET:  Thank you, Your Honor.  I think
23 that leaves us with two objections to the revised KERP
24 motion.  The U.S. Trustee's objection relates primarily to
25 the adequacy of the record that we've made.  And Your Honor,

1   the -- of an order approving the KERP?  All right.  Not

2   having -- hearing anyone, I'll go ahead and rule from the

3   bench.

4           CLERK:  Sorry, Judge.  Someone's raising their

5   hands.

6           THE COURT:  Okay.  I can't see that.  So who is

7   raising their hand?

8           CLERK:  Mr. De Las Heras.

9           THE COURT:  Okay.  Go ahead.

10          MR. DE LAS HERAS:  I am, Your Honor.  May I be

11  very brief today?  Thank you.  I assume it is --

12          THE COURT:  That's fine.

13          MR. DE LAS HERAS:  -- fine.  An objection with

14  Docket Number 1544.  If Debtors are going to address my

15  concern, there is nothing I can say, but I rest in what is

16  in my objection Docket 1544.  Thank you.

17          THE COURT:  Okay.  Thank you very much.  Does

18  anybody else wish to be heard?  Deanna, I can't see if

19  anybody's raising their hand, so I'll just depend on you to

20  call them out.

21          CLERK:  I see no additional raised hands, Judge.

22          THE COURT:  All right.  So what I'm going to do is

23  read my ruling into the record.  I would ask that the Debtor

24  have a transcript of the ruling prepared so that -- what

25  I've been -- tried to be very cautious about in this case is

1   when I rule, I've been trying to rule in written opinions.

2   I want to be sure that there's no misunderstanding about

3   what I have ruled.  But here on this motion, I'll go ahead

4   and just read my ruling into the record.  A transcript can

5   be prepared, and it will be on ECF -- on the ECF Docket.  I

6   suppose it'll be on the claims agent's docket as well and so

7   that people can see precisely what I've ruled.

8              So first, let me deal with the general legal

9   framework for approving KERPs.  Section 363(b) of the

10  Bankruptcy Code provides that a Debtor, after notice and a

11  hearing, may use, sell, or lease other than in the ordinary

12  course of business property of the estate.  That's Section

13  363(b)(1).  To approve the use of estate property under

14  Section 363(b)(1) of the Bankruptcy Code, a Debtor must show

15  that the decision to use the property outside of the

16  ordinary course of business was based on the Debtor's

17  business judgment.  See In re Chateaugay Corp., 973 F.2d 141

18  at 143 (2nd Cir. 1992) holding that a judge determining a

19  Section 363(b) application must find a good business reason

20  to grant such application.

21             Section 503 governs the allowance of

22  administrative expenses "for actual necessary costs and

23  expenses of preserving a Debtor's estate".  That's Section

24  503(b)(1)(A).  The two general overriding policies of

25  Section 503 of the Bankruptcy Code -- excuse me -- are to

1  preserve the value of the estate for the benefit of its

2  Creditors and to prevent the unjust enrichment of insiders

3  of the estate at the expense of its Creditors.  See In re

4  Journal Register Co., 407 B.R. 520 at page 535 (Bankr.

5  S.D.N.Y. 2009).  It cites the Second Circuit's McFarland's

6  decision, which is at 789 F.2d 98 at page 101 (2d Cir.

7  1960).

8          So with respect to payments to insiders, Section

9  503(c)(1) prohibits the transfers to insiders unless certain

10 strict requirements are met.  A, the transferer obligation

11 is essential to retention of the person because the

12 individual has a bona fide job offer from another business

13 at the same or greater rate of compensation; B, the services

14 provided by the person are essential to the survival of the

15 business; and C, either the amount of the transfer made to

16 or obligation incurred for the benefit of the person is not

17 greater than an amount equal to ten times the amount of the

18 mean transfer or obligation of a similar kind given to non-

19 management employees for any purpose during the calendar

20 year in which the transfer's made or obligation is incurred.

21         Or if no such similar transfers were made to or

22 obligations were incurred for the benefit of such non-

23 management employees during such calendar year, the amount

24 of the transfer or obligation is not greater than an amount

25 equal to 25 percent of the amount of any similar transfer or

1  obligation made to or incurred for the benefit of such

2  insider for any purpose during the calendar year before the

3  year in which such transfer is made or obligation is

4  incurred.  That's Section 503(c)(1).

5          Section 101(31)(B) defines an insider in the

6  context of a corporation as including a director of the

7  corporation, officer of the corporation, person in control

8  of the Debtor, partnership in which the Debtor is a general

9  partner, general partner of the Debtor, or relative of a

10 general partner, director, officer, or person in control of

11 the Debtor.

12         With respect to payments to non-insiders, if an

13 employee is not an insider, Section 503(c)(3) of the

14 Bankruptcy Code permits payments to the Debtor's employees

15 outside the ordinary course of business if such payments are

16 justified by "the facts and circumstances of the case".

17 Importantly, Section 503(c)(3)'s "facts and circumstances"

18 justification test "creates a standard no different than the

19 business judgment standard under Section 363(b) of the

20 Bankruptcy Code."  See In re Velo Holding, Inc., 472 B.R.

21 201 at page 209 (Bankr. S.D.N.Y. 2012).  That's one of my

22 opinions.  See also Borders Group, 453 B.R. at pages 473 and

23 74 evaluating the Debtor's KERP under a business judgment

24 rule.  That's also one of my opinions.

25         In re Dana Corp., 358 B.R. 567 at 576 and 77

1   (Bankr. S.D.N.Y. 2006) describing six factors that courts

2   may consider when determining whether the structure of a

3   compensation proposal meets the "sound business judgment

4   test" in accordance with Section 503(c)(3) of the Bankruptcy

5   Code.

6            All right.  I've already indicated I granted the

7   motion to shorten time, and I granted the ceiling motion.  I

8   believe they're entirely appropriate in these circumstances.

9   I invited the shortening of time, and the ceiling seems

10  entirely appropriate consistent with comments I made

11  earlier.

12           All right.  So with respect to the KERP, whether

13  the KERP participants are insiders, the question of whether

14  participants are insiders is vital because it determines

15  whether the Debtors will be required to meet the strict

16  standards of Section 503(c)(1) or whether their KERP will be

17  evaluated under the more lenient business judgment standard.

18  Under Section 101(31) of the Bankruptcy Code where a Debtor

19  is a corporation, insiders may include any "(i) director of

20  the Debtor; (ii) officer of the Debtor; (iii) person in

21  control of the Debtor; or (iv) relative of a director,

22  officer, or person in control of the Debtor".

23           Courts have also considered -- I've also concluded

24  that an employee may be an insider if such employee has at

25  least a controlling interest in the Debtor or exercises

1   sufficient authority over the Debtor so as to unqualifiedly
2   dictate corporate policy and the disposition of corporate
3   assets.  See Velo Holdings, 472 B.R. at 208.  An
4   individual's title by itself is insufficient to establish
5   that an individual is a director or officer.  See In re
6   Longview Aluminum, LLC, 419 B.R. 351 at page 355 (Bankr.
7   N.D. Ill. 2009).  There are other cases that reach that same
8   proposition.  I won't burden the record further.
9         In Public Access Technologies, for example, the
10  court found that an executive vice president was not an
11  officer of the Debtor because there was no evidence such as
12  affidavits, articles of incorporation, corporate minutes,
13  resolutions, or any other document proving that the
14  executive vice president was an officer under Section
15  101(31)(b), 307 B.R. at 506.
16        Here I'm satisfied that the participants are not
17  insiders.  In their exhibits, the Debtors have provided
18  detailed information about the participants' duties, salary,
19  and position within the reporting structure.  The Debtors
20  have provided a declaration attesting that though some of
21  the employees have titles such as "head", "director", "vice
22  president", or "chief", none of the participants have
23  discretionary control over substantial budgetary amounts or
24  significant control with respect to the Debtor's corporate
25  policies or governance.  See the Ferraro declaration,

1   Paragraph 19.

2           Moreover, each of the participants' roles are
3   limited in scope.  None made company wide or strategic
4   decisions, and none exercised sufficient authority over the
5   Debtor as to unqualifiedly dictate corporate policy.  See
6   the motion in Paragraph 39.  It cites In re Global Aviation,
7   478 B.R. at 140 and 150.  None of the participants were
8   appointed by the board to sit on the board or directly
9   report to the board.  See In re LSC Communications, 631 B.R.
10  818 at page 827 (S.D.N.Y. 2021) finding that the employees
11  who were appointed by the board and would be deemed officers
12  of the Delaware Corporate Law should "weigh heavily in
13  concluding that the employees are officers for bankruptcy
14  code purposes."

15          So whether the KERP should be approved, given that
16  the participants are not insiders, the KERP should be
17  evaluated under Section 503(c)(3) of the Bankruptcy Code to
18  ensure that it is "justified by the facts and circumstances
19  of the case."  See In re Borders Group, 453 B.R. at page
20  470.  On balance, in described in more detail below with the
21  details of the unredacted information, I am satisfied the
22  Debtors have met their burden of showing that the KERP is
23  justified in a reasonable exercise of their business
24  judgment.  So then with respect to whether this KERP is
25  justified by the facts and circumstances of the case,

1   although the Court should be satisfied that the KERP

2   employees are not insiders under Section 101(31), the KERP

3   must still be analyzed under Section 503(c)(3) because it is

4   not an ordinary course transaction.  See In re Nellson

5   Nutraceutical, Inc., 369 B.R. 787 at pages 803 and 804

6   (Bankr. D. Del. 2007).

7           In the context of approving compensation programs,

8   courts in the Second Circuit have considered the factors

9   identified in In re Dana Corp., which I cited earlier, when

10  determining if a compensation proposal and the process for

11  developing it meet the sound business judgment test.  Those

12  issues are, A, is there a reasonable relationship between

13  the plan proposed and the results to be obtained?  I.e.,

14  will the key employees stay for as long as it takes for the

15  Debtor to reorganize or market its assets?

16          B, is the cost of the plan reasonable in the

17  context of the Debtor's assets, liabilities, and earning

18  potential?  C, is the scope of the plan fair and reasonable?

19  Does it apply to all employees?  Or if not, does it

20  discriminate unfairly?  And D, is the plan or proposal

21  consistent with industry standards?  E, what were the due

22  diligence efforts of the Debtor in investigating the need

23  for a plan analyzing which key employees need to be

24  incentivized?  What is available?  And what is generally

25  applicable in a particular industry?  And F, did the Debtor

1   receive independent counsel in performing due diligence and

2   in creating and authorizing the incentive compensation.  See

3   In re Dana Corp., 358 B.R. at pages 576 and 77.

4           So the relationship between this plan, the plan

5   proposed, and the results obtained.  The reasonable

6   relationship exists between the plans proposed and the

7   results to be obtained.  See 358 B.R. at 566 and 57.  The

8   Debtors have noted that the goal of their KERP is to have

9   appropriate staff on hand to facilitate a reorganization of

10  sale.  See the motion at Paragraph 29.  The proposed KERP is

11  narrowly tailored to that goal.  The Debtors have chosen 59

12  out of 167 employees at the time of this writing -- the time

13  of the writing of the motion, who the Debtors believe have

14  "institutional and technical knowledge crucial to the

15  Debtor's ability to maximize value."  See the Ferraro

16  declaration at Paragraph 15.

17          Further, the payments are paid in increments and

18  are tied to the participants remaining at the Debtors for a

19  year, which is aligned the Debtor's goal of keeping the

20  participants on staff through the restructuring and sale

21  process.  See the motion at Paragraph 29.  The Debtors have

22  also tailored the payment amounts so that the employees that

23  are more critical and more difficult to replace get higher

24  bonuses.  See the motion at Paragraph 19.  There is already

25  evidence that the employees are strained by the Chapter 11

1     responsibilities.  As the examiner noted in her report that

2     there were delays in the Debtor's production of documents

3     due to the "reduction in Celsius' workforce.".  See ECF

4     Docket Number 1411 at page 11.

5              Accordingly, it is evident to the Court that given

6     the pace of attrition here, the Debtors could continue to

7     lose staff at an unsustainable rate if employees are not

8     incentivized to stay.  I would note I've had other cases

9     where, as a result of attrition, the Debtors have wound up

10    having to hire more expensive consultants than the employees

11    who are filling those tasks now.

12              All right.  Next, the cost of the proposed plans.

13    The cost of the proposed KERP is reasonable in light of the

14    Debtor's financial situation.  The cost of the KERP bonuses

15    is approximately $2.84 million.  According to the analysis

16    performed by Gartrell, which compares the Debtor's KERP to

17    26 similarly sized companies, the cost per participant is

18    positioned between the 25th percentile and median of the

19    market.  The total cost of the program, approximately 2.84

20    million, is on the higher end between the 75th and 90th

21    percentiles, but the cost as a percentage of assets is on

22    the low end below the 25th percentile.

23              On balance, Gartrell attests that the KERP are

24    "reasonable and appropriate in light of competitive

25    practice."  Given that on average the various program

1  metrics fall around the median of the market, I agree with
2  respect to unfair discrimination.  The Debtors have also
3  shown that the proposed KERP does not discriminate unfairly.
4  See In re Eaglepicher Holdings, Inc., 2005 W.L. 4030132 at
5  star 4 (Bankr. S.D. Ohio Aug. 26, 2005).  In that case, in
6  Eaglepicher, the court found that the Debtor's proposed
7  retention plan did not unfairly discriminate against its
8  employees.  There the plan only covered "a small minority of
9  employees".  However, it was broad enough so that it did not
10 include only senior management.
11         The Court observed that a small group of employees
12 could benefit from the retention plan to the exclusion of
13 others because not every employee is similarly situated in
14 terms of their employment to the reorganization process.
15 Here the Debtors have carefully selected a small pool of
16 employees that are critical in the restructuring process.
17 "The participants are critical to the continued maintenance
18 of customer accounts and that a platform more generally by
19 among other things performing essential security functions
20 and building enhanced features and functionality for the
21 Debtor's system and assets."  See the supplemental Ferraro
22 declaration at Paragraph 19.
23         The Debtors have also attested and shown evidence
24 that these employees have been forced to shoulder additional
25 burdens related to the Chapter 11 such that they are

22-10964-mg Doc 1763 Filed 12/20/22 Entered 12/20/22 09:19:10 Main Document Pg 18 of 19

Page 197


1     deserving of bonuses.  Finally, there is also no evidence in

2     the record that the Debtors have unfairly excluded

3     employees.

4              And then with respect to comportment with industry

5     standards, the proposed KERP comports with industry

6     standards as discussed above.  The Debtors have submitted a

7     declaration from a compensation expert that indicates that

8     the terms, cost, and structure of the KERP comport and

9     structure -- comport with the structure of the industry.

10             The propriety of the diligence.  The Debtors have

11    exercised proper due diligence in formulating the proposed

12    KERP.  In In re Brooklyn Hospital Center, 341 B.R. 405 at

13    page 412 (Bankr. E.D.N.Y. 2006), the court found that due

14    care was exhibited by the Debtor in the formulation of a

15    KERP because, among other things, "the board consulted with

16    its counsel and financial advisors, formulated several

17    proposals, reduced the amount to be paid pursuant to the

18    KERP, and after negotiations with the committee, broadened

19    the scope of employees."

20             Here the Debtors engaged and retained WTW to

21    provide independent compensation advice, and the Debtor's

22    special committee undertook a deliberative process convening

23    with the Debtor's various advisors.  See the Ferraro

24    declaration at Paragraph 17.  The Debtors also conferred

25    with the U.S. Trustee on November 2, 2022 and based on the

Page 198

1   results of the conversation, the Debtors revised the KERP
2   participant list.  And see the amended motion in Paragraph
3   5.  Accordingly, I am satisfied that the Debtors have
4   undertaken sufficient diligence.
5           And then with respect to adequacy of counsel, in
6   the last -- lastly, the Debtors' counsel from a highly
7   competent and experienced independent compensation
8   consultant, their counsel and their highly experienced
9   independent consultation with WTW, see our trial declaration
10  at Paragraph 7, together with the input that the Debtors
11  received from other advisors, I'm satisfied that the Debtors
12  received sufficient counsel.
13          For all of those foregoing reasons, the Court
14  grants the amended KERP motion.  I understand before an
15  order will be entered you'll go back and review the
16  participant list to satisfy that, at least initially,
17  looking at it that none had withdrawn substantial funds in
18  the 90 days before.  They can still be included in that
19  subsequently if that's appropriately.
20          MR. KWASTENIET:  That's right, Your Honor.  And we
21  expect that'll take a few days --
22          THE COURT:  That's fine.
23          MR. KWASTENIET:  -- to sort out that analysis.
24  And then once we've concluded that, we'll present the
25  revised form of order to the U.S. Trustee and the committee