| | |
|---|---|
| Joshua A. Sussberg, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900 | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200 |

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF COURT'S ORAL RULING ON DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) EXTENDING**
**THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11**
**PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION**
**1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on December 5, 2022, the Court rendered its oral ruling

on the *Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1317] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Court entered the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1645].

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Court's request that the Debtors file the relevant transcript pages associated with the Court's ruling on the Motion, the Debtors have attached the excerpted hearing transcript as **Exhibit A**.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated: December 20, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:           jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |

**Exhibit A**

**Excerpt from *In re Celsius Network LLC et. al.* Hearing Transcript – December 5, 2022**

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   Case No. 22-10964-mg
 4   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
 5   In the Matter of:
 6
 7   CELSIUS NETWORK LLC,
 8              Debtor.
 9   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
10   Adv. Case No. 22-01139-mg
11   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
12   CELSIUS NETWORK LIMITED et al.,
13                Plaintiffs,
14         v.
15   STONE et al.,
16                Defendants.
17   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
18   Adv. Case No. 22-01140-mg
19   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
20   CELSIUS NETWORK LIMITED et al.,
21                Plaintiffs,
22         v.
23   PRIME TRUST, LLC,
24                Defendant.
25   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

Page 2

```
 1                  United States Bankruptcy Court
 2                  One Bowling Green
 3                  New York, NY  10004
 4
 5                  December 5, 2022
 6                  9:57 AM
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21  B E F O R E :
22  HON MARTIN GLENN
23  U.S. BANKRUPTCY JUDGE
24
25  ECRO:   FRANCES F. & KEVIN SU.
```

1   David Adler made.  I'm in -- I also agree that there needs

2   to be more communication with (Indiscernible) as well.  And

3   I have spoken with the Debtor about this as well, and I'm

4   optimistic that we can make progress.  There's a lot of

5   creative ideas for maximizing value, and it's a pretty

6   broadly held belief as far as I have seen that we can

7   maximize value by making sure that bidders are in

8   communication with Creditors and that they'll actually go

9   along with a plan.

10              And it's the same with any kind of standalone

11  reorganization plan as well.  So I did support this

12  compromise proposal as the joinder shows.  And you know,

13  this meets those concerns.  And that said, I think there

14  needs to be a lot more open communication with customers in

15  the next 60 days.

16              THE COURT:  Thank you very much, Mr. Herrmann.

17  Anybody else wish to be heard?  Not hearing anyone else, Mr.

18  Nash?

19              MR. NASH:  Nothing more from me, Judge, unless you

20  have any questions.

21              THE COURT:  All right.  I'm going to do what I did

22  with the KERP.  I'm going to rule from the bench.  I would

23  ask again that a transcript be prepared so there's no

24  misunderstandings about what the Court's ruling is.

25              First, the legal standard.  Under Section 1121(b)

1  of the Bankruptcy Code, a debtor has the exclusive right to
2  propose a Chapter 11 plan during the first 120 days after an
3  order granting relief.  Section 1121(c)(3) extends the
4  period of exclusivity for an additional 60 days to a maximum
5  of 180 days where the Debtor has filed a Chapter 11 plan and
6  is soliciting votes on such plan.  Of course, that hasn't
7  happened at this point.
8          The point of exclusivity is to promote an
9  environment in which the Debtor's business may be
10 rehabilitated and a consensual plan may be negotiated.  See
11 In re Burns and Roe Enterprises, Inc., 2005 W.L. 6289213 at
12 star 4 (D.N.J. Nov. 2, 2005).  Section 1121(d)(1) permits a
13 court to extend a Debtor's exclusivity for cause.
14 Specifically, 1121(d) provides that "on request of a party
15 in interest and after notice and a hearing, the court may
16 for cause reduce or increase 120-day period or the 100-day
17 period referred to in this section."  However, the 120-day
18 period --
19         MAN:  Can you guys hear?
20         THE COURT:  Please don't interrupt.  Do not
21 interrupt.
22         However, the 120-day period cannot be extended
23 beyond 18 months after the order for relief date and the
24 180-day period cannot be extended beyond 20 months after the
25 order for relief date.  That's 1121(d)(2)(A) and (B).  The

1  determination of cause under Section 1121(d) is a fact-
2  specific inquiry, and the Court has broad discretion in
3  extending or terminating exclusivity.  See In re Adelphia
4  Communications Corp., 352 B.R. 578 at 586 (Bankr. S.D.N.Y.
5  2006).
6           A quote from that case, "A decision to extend or
7  terminate exclusivity for cause is within the discretion of
8  the bankruptcy court and is fact-specific."  See also In re
9  Lehigh Valley Professional Sports Club, Inc., 2000 W.L.
10 290187 at star 2 (Bankr. E.D. Pa., March 14, 2000).  Relief
11 under Section 1121(d) is committed to the sound discretion
12 of the bankruptcy judge.  There are other cases.  It's a
13 long line of authority.
14          The Court's examined a number of factors to
15 determine whether there is cause for extension of
16 exclusivity periods.  See In re Borders Group, Inc., 460
17 B.R. 818 at 822 (Bankr. S.D.N.Y. 2011).  Again, there are
18 lots of other cases that do that.  The factors include, A,
19 the size and complexity of the case; B, the necessity of
20 sufficient time to negotiate a plan of reorganization and
21 prepare adequate information to allow a Creditor to
22 determine whether to accept such plan; C, the existence of
23 good faith progress toward reorganization; D, whether the
24 Debtor is paying his debts as they become due; E, whether
25 the Debtor has demonstrated reasonable prospects for filing

1   a viable plan; F, whether the Debtor has made progress
2   negotiating with Creditors; G, the amount of time which has
3   elapsed in the case; H, whether the Debtor is seeking an
4   extension to pressure Creditors; and I, whether an
5   unresolved contingency exists.
6         Not every factor is relevant to each case, and
7   factors themselves might not be determinate overall.  See
8   Adelphia Communications, 336 B.R. at 590.  Rather, the key
9   inquiry is whether extending or terminating exclusivity
10  would move the case forward materially.  So that's the legal
11  standard.  Then my analysis.
12        I agree with the comment that lifting exclusivity
13  now would lead to a freefall.  I mean, it would just be
14  totally chaotic.  I think this is a case where the Debtors
15  and the committee and its professionals have cooperated
16  extensively.  An examiner was appointed.  I think that was
17  important in this case.  It obviously is expensive and time-
18  consuming, but certainly the examiner really delivered in
19  terms of the interim report, and it's been very helpful to
20  the Court.
21        There are a lot of moving parts in this case.
22  Whether there's been substantial progress is hard for me to
23  see.  I hear what counsels say, and for now, at least, I'll
24  certainly take them at their word.  There was agreement
25  between the committee and the Debtor early on to pursue dual

1    tracks with the standalone reorganization plan and a
2    possible 363 sale.  Bidding procedures have already been
3    approved on that.  We have a hearing later this week on the
4    sale of the GK8 assets.
5           The Debtors, from all appearances to me and what
6    the examiner said, the Debtors have worked collaboratively
7    with the examiner.  As the staffing and the Debtor has
8    declined, it's made it that much harder to produce
9    information and documents that not only the examiner, but
10   the committee and others have wanted to see.  The hearings
11   this week, while I know that some Creditors and some
12   regulators wanted to push off a decision from day one, it's
13   been clear to the Court that these are gating issues and
14   that need to be decided if possible for progress really to
15   be made.
16          There's been briefing on those.  We had the
17   hearing earlier this morning on ownership of the
18   (indiscernible) assets, the sale of stable coin.  The
19   objections raise reasonable frustrations of the pro se
20   Creditors and others about the pace of the case.  And I'm
21   mindful of all that, but really none of them have cited any
22   legal authority that a failure to file a plan within four
23   months constitutes a lack of substantial progress.  I have
24   to say in any of the larger cases I've had, I haven't had --
25   other that pre-packs, I don't think I've had really, you

1  know, plans proposed within that timeframe.  And here
2  there's been a commitment to move forward with it.
3           You know, the fact that the Debtors in Voyager are
4  also represented by Kirkland and filed the plan on the
5  petition date, they had a pre-pack and things haven't turned
6  out quite the way they expected it would either.  The
7  industry as a whole is in turmoil.  I think the
8  professionals are doing a commendable job in keeping this
9  case from being a total freefall and keeping this case
10 moving forward.
11          I'm certainly very mindful of the concerns
12 expressed by the regulators, Ms. Milligan this morning, Ms.
13 (Indiscernible).  I share those concerns.  It's clear -- and
14 the U.S. Trustee.  Ms. Cornell, I didn't mean to leave you
15 out of that.  Okay.  I mean, it's clear to me whether it's a
16 standalone or a 363 sale, any ongoing enterprise is going to
17 have to satisfy regulatory requirements.  And I think that's
18 clear to everybody in this room.  You know, one additional
19 regulation of congress, if they settle on any, is going to
20 adopt.  I mean, there's going to be something.  I mean,
21 there's just -- the market's in complete turmoil.
22          So it's going to be difficult.  I don't
23 underestimate that.  I am fully committed to see this case
24 move forward as quickly as it possibly can.  The costs are
25 enormous.  I haven't had fee applications yet, but they are

1  going to be extremely substantial.  But I don't see the
2  alternative to it.  The number of objections that have been
3  raised, serious objections by pro se Creditors, which I
4  think I commend the Debtors have responded to.  Pro se
5  Creditors may not always appreciate the response they get,
6  but they've responded to.
7           I've been reading these pro se objections and
8  comments that have come up all along the way.  And I -- you
9  know, I'm very moved by the problems that the collapse of
10 Celsius has presented in the marketplace to pro se
11 Creditors, Creditors represented large and small.  So I
12 agree with the Debtors that extending the exclusivity
13 periods will benefit the Debtor's estates, their Creditors
14 and all other key parties in interest, especially when, as
15 here, all stakeholders are working toward a consensual
16 volume-maximizing restructuring.
17          Being required to dual-track negotiations across
18 multiple plans could give rise to destructive uncertainty
19 if, you know, exclusivity were ended.  It would give rise to
20 destructive uncertainty to the detriment of all
21 stakeholders.  I could cause substantial disruptions to the
22 regulatory approval process.  Though it's possible that
23 additional extensions of the exclusivity period could
24 prejudice Creditors if there is not substantial progress
25 made at this juncture, the Creditors will benefit from the

1  Debtors being able to continue negotiations regarding

2  restructuring transactions.

3         Again, the objectors' frustrations, they're

4  reasonable given the amount of professional fees being

5  expended on this case.  But at this juncture of the case,

6  the Debtors need more time to hammer out the details of a

7  plan or a potential sale.  With the new dates that have been

8  negotiated with the committee and largely accepted I'm told

9  today by many of the different constituencies, I think this

10 is clearly a motion that should and is being granted.

11        You know, today we had ownership of

12 (Indiscernible).  Later this week we have custody and

13 withhold.  The Debtors have identified other issues, such as

14 whether customers have claims against old Debtors and other

15 issues.  I'm moving as fast as I can to resolve these

16 matters.  It's a crushing load on my chambers.  This is not

17 the only case on my docket, but I'm committed to moving this

18 case forward.

19        The Debtors are still paying all their bills as

20 they come due.  They pay vendors in the ordinary course of

21 business or otherwise provided for by orders of the Court.

22 All that weighs in favor of granting the motion.  There is

23 no evidence that I'm -- that I've seen that the Debtors are

24 seeking to extend exclusivity to pressure Creditors.  To the

25 contrary, I think the Debtors realize that the only path to

1  success in this case is large Creditor support.  The case is
2  really less than four months old.  You know, it comes --
3  this request for extension of exclusivity comes less than
4  four months after the petition date.
5         Given the complexity of the case, the number of
6  stakeholders, the crucial issues that have to get resolved,
7  whatever the plan is going forward, all of these favor the
8  extension of exclusivity.  So the motion is granted on the
9  terms that were described earlier on the record.
10        MR. NASH:  Thank you, Judge.
11        THE COURT:  Okay.  Let's move on (indiscernible).
12 The uncontested matter of the fee examiners, the notice of
13 presentment of opposed amended interim compensation and fee
14 examiner orders filed as ECF Docket 1445.  The objection
15 deadline was December 4th at 2 p.m.  No responses were
16 received.  That motion is granted.
17        All right.  Let's go forward with the arguments in
18 -- on the motion to dismiss in Celsius Network v. Stone.
19 It's Adversary Proceeding Number 22-01139.  The Debtor's
20 motion to dismiss is ECF -- in that case is ECF 17.  There
21 had been a reply to the -- an opposition to the motion and a
22 reply that had been filed.
23        MR. HURLEY:  Good afternoon, Your Honor.  Mitch
24 Hurley on behalf of the Debtors.  I'm sorry.  Actually, I
25 didn't catch are we -- are you ready to hear the motion to

Page 260

1                           I N D E X

2

3                           RULINGS

4                                                    Page      Line

5    Motion to Shorten, Granted                      177        18

6    Motion to Seal, Granted                         178        19

7    KERP Motion, Granted                            198        14

8    Motion to Extend Exclusivity, Granted           221         8

9    Fee Examiner Motion, Granted                    221        16

10   Motion to Dismiss, Denied                       252         4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 261

C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, certified that the foregoing transcript is a true and accurate record of the proceedings.

*Sonya M. Ledanski Hyde*

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  December 7, 2022