**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) AUTHORIZING THE**
**DEBTORS TO REOPEN WITHDRAWALS**
**FOR CERTAIN CUSTOMERS WITH RESPECT**
**TO CERTAIN ASSETS HELD IN THE CUSTODY PROGRAM**
**AND WITHHOLD ACCOUNTS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to reopen withdrawals for certain customers with respect to certain assets held in the Custody Program and in Withhold Accounts, and granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 USA LLC (9450); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the *Debtors' Memorandum of Law Regarding Phase I Custody and Withhold Issues* [Docket No. 1291], as applicable.

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and the Order and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing")[3]; and this Court having (a) found that digital assets in the Custody Wallets and Ineligible Withhold Assets (as defined below) are not property of the Debtors' estates under section 541 of the Bankruptcy Code and (b) reserved decision with respect to whether digital assets transferred into the Custody Program, but not held in the Custody Wallets are property of the Debtors' estates under section 541 of the Bankruptcy Code; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1. The Motion is granted in part as set forth herein.

2. The Debtors are authorized, subject to the terms of this Order and in consultation with advisors for the official committee of unsecured creditors (the "Committee"), to permit customers to withdraw digital assets held by the Debtors on behalf of customers—other than any current or former employees or insiders[4] or, with respect to any of the foregoing, any affiliate[5] thereof—in the Custody Program and/or associated with Withhold Account obligations that were (A) (1) only ever in the Custody Program (the "Pure Custody Assets") or (2) transferred in the 90 days before the Petition Date from the Earn Program or the Borrow Program to the Custody

---

[4]     As such term is defined in section 101(31) of the Bankruptcy Code.

[5]     As such term is defined in section 101(2) of the Bankruptcy Code; *provided* that any entity that would fall within the definition of affiliate if such entity was a debtor in a case under the Bankruptcy Code shall also be an "affiliate" for purposes of this Order.

2

Program and, at the time of such transfer(s), the aggregate value of such transfer(s) was less than $7,575 (valued as of the time of each such transfer) (the "Transferred Custody Assets"), in each case *pro rata* on a coin-by-coin basis based on the proportion of each type of digital asset currently in the Custody Wallets as set forth on the Distribution Schedule (as defined below) or (B) transferred by users to Celsius' platform but were not supported on the platform and remain in the Debtors' possession (the "Ineligible Withhold Assets" and, together with the Pure Custody Assets and Transferred Custody Assets, the "Distributable Assets"); *provided*, that the Distributable Assets shall not include any digital assets held by, and at this time the Debtors are not authorized to transfer any digital assets to (1) any current or former employee or insider or (2) any affiliate of any current or former employee or insider; *provided, further* that the Debtors, the Withhold Ad Hoc Group, and the Committee shall meet and confer to determine which digital assets on the Debtors' platform qualify as Ineligible Withhold Assets. Notwithstanding the foregoing, to the extent the Court issues an opinion or order finding that digital assets transferred into the Custody Program are not property of the Debtors' estates under section 541 of the Bankruptcy Code whether or not such digital assets are held in the Custody Wallets, the Debtors shall be authorized to permit customers to withdraw the full amount of such customer's Pure Custody Assets and Transferred Custody Assets.

3. As soon as reasonably practicable, the Debtors shall provide to the Committee and the Ad Hoc Groups a detailed schedule (the "Distribution Schedule") specifying (i) each affected user entitled to withdraw Distributable Assets pursuant to this Order, (ii) each user's Distributable Assets by category, and (iii) the prorated amount of the Distributable Assets to be released with respect to customers with digital assets in the Custody Program on a coin-by-coin basis based on the proportion of each type of digital assets in the Debtors' Custody Wallets and the Debtors'

3

obligations associated with the Custody Program on the Petition Date, as set forth in Exhibit B to the *Supplemental Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, with Respect to Custody and Withhold Assets* [Docket No. 1532]; *provided*, that if the Court issues an opinion or order finding that digital assets transferred into the Custody Program are not property of the Debtors' estates under section 541 of the Bankruptcy Code whether or not they are held in the Custody Wallets prior to the provision of the Distribution Schedule, then this Paragraph 3(iii) shall only require the Distribution Schedule to provide for the Distributable Assets to be released with respect to customers with digital assets in the Custody Program. No digital assets shall be permitted to be withdrawn unless and until the Distribution Schedule is (a) agreed with the Committee or (b) approved by a further order of the Court following notice and a hearing.

4. Digital assets shall be permitted to be withdrawn by customers in accordance with the Distribution Schedule(s), net of any gas fees or transaction costs (or a fee approximating such costs) necessary to effectuate the withdrawal or transfer of digital assets to customers; *provided, further*, that no digital assets shall be permitted to be withdrawn unless the account balance of the withdrawing customer is sufficient to satisfy any gas fees or transaction costs (or a fee approximating such costs) necessary to effectuate the withdrawal or transfer of digital assets to customers.

5. Withdrawal of digital assets authorized hereunder is subject to, and may be delayed or prohibited as a result of, the Debtors' ordinary course legal, compliance, anti-money laundering, and security verifications.

6. Prior to the Debtors' reopening of withdrawals in accordance with this Order, the Debtors shall file a notice on the docket and serve a notice on each affected account holder (which

4

service shall be by email and posting on the Celsius application) attaching the Distribution Schedule and details on how affected account holders may withdraw assets and the time period for doing so (if applicable).

7.     The Debtors shall not permit customers to transfer assets between programs of the Debtors in connection with this Order.

8.     In advance of any account reopening or digital asset withdrawal authorized by this Order, the Debtors shall be permitted, in their reasonable business judgment, to effectuate any necessary or appropriate technical tries and tests on Celsius' platform or otherwise to ensure a successful reopening of the platform and withdrawal process authorized hereunder.  For the avoidance of doubt, the Debtors shall be permitted to transfer digital assets in and out of Celsius' wallets, for the limited purpose of testing such reopening and withdrawal process, and shall be permitted to incur and pay any gas fees or transaction costs associated therewith, *provided*, that no such tries, tests, or transfers shall have any effect on any party's claim or other substantive rights.

9.     Notwithstanding anything in this Order to the contrary, this Order does not authorize the Debtors to permit withdrawals of any digital assets (a) other than digital assets held in the Custody Program and/or associated with Withhold Accounts that is a Distributable Asset, (b) by (1) any current or former employee or insider or (2) any affiliate of any current or former employee or insider, or (c) to any customer with an outstanding loan owed to the Debtors through the Debtors' Borrow Program.

10.    For the avoidance of any doubt, customer withdrawals permitted pursuant to this Order will be in cryptocurrency, not in fiat currency.

11.    For the reasons set forth on the record at the hearing held December 7, 2022, absent further order of the Court, the Debtors shall not distribute any digital assets to any account holder

against which the Debtors or the Committee have identified preference, loan or other claims and obligations, and the absence of a pending action by the Debtors or the Committee for preference or other claims against such account holders will not constitute a basis to permit the withdrawal of assets in the Custody Wallets other than as permitted under this Order.

12. The hearing currently set for December 20, 2022, at 10:00 a.m. (prevailing Eastern Time) shall include a status update on the matters relevant to the implementation of this Order.

13. Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

14. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the rights of any Debtor or the Creditors' Committee to dispute any particular claim on any grounds, including with respect to what constitutes property of the estate, any avoidance actions, and any right to setoff; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the rights of any Debtor or the Creditors' Committee under the Bankruptcy Code or any other applicable law including with respect to any avoidance actions and any right to setoff; (g) a concession by the Debtors or the Creditors' Committee that any liens (contractual, common

law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens; or (h) a waiver of, or concession or admission relating to, any cause of action or right of the Debtors. Without limiting the generality of the foregoing, any payment made pursuant to this Order is not intended and should not be construed as an admission regarding the validity of any particular claim or a waiver or prejudice of the Debtors' rights (or the rights of any successor to the Debtors or of any entity that has or acquires standing to assert rights on behalf of the Debtors or their estates) to subsequently dispute such claim or pursue such rights.

15. Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

16. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

17. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

18. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:  December 20, 2022
        New York, New York

                                                  /s/ **Martin Glenn**
                                          MARTIN GLENN
                               Chief United States Bankruptcy Judge