Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and*
*Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and*
*Debtors in Possession*

**UNITED  STATES  BANKRUPTCY  COURT**
**SOUTHERN  DISTRICT  OF  NEW  YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS  NETWORK  LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly  Administered) |
| | ) | |

**NOTICE  OF  HEARING  ON**
**DEBTORS'  MOTION  SEEKING**
**ENTRY  OF  AN  ORDER  (I)  AUTHORIZING**
**(A)  THE  TRANSFER  OF  CRYPTOCURRENCY**
**ASSETS  SERVING  AS  COLLATERAL  ON  ACCOUNT**
**OF  INSTITUTIONAL  LOANS  IN  THE  ORDINARY  COURSE**
**OF  BUSINESS  AND  (B)  THE  EXERCISE  OF  THE  DEBTORS'**
**RIGHTS  AND  REMEDIES  PROVIDED  UNDER  EACH  MASTER**
**LENDING  AGREEMENT  AND  (II)  GRANTING  RELATED  RELIEF**

**PLEASE  TAKE  NOTICE** that  a  hearing  on  the  *Debtors'  Motion  Seeking  Entry  of  an*

---

[1]    The Debtors in these chapter 11 cases, along with  the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387);  Celsius Network Inc. (1219);  Celsius Network Limited (8554);  Celsius Networks Lending LLC (3390);  Celsius US Holding LLC (7956);  GK8 Ltd. (1209);  GK8 UK Limited (0893);  and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's  principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Order (I) Authorizing (A) the Transfer of Cryptocurrency Assets Serving as Collateral on Account of Institutional Loans in the Ordinary Course of Business and (B) the Exercise of the Debtors' Rights and Remedies Provided Under Each Master Lending Agreement and (II) Granting Related Relief* (the "Motion") will be held on **January 24, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge. In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (i.e., on January 23, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on January 24, 2023 must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on January 24, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their

eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov; and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief,* [Docket No. 1181] (the "Case Management Order") by **January 17, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: January 3, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:            jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Initial Debtors and*
*Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and*
*Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and*
*Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION SEEKING
## ENTRY OF AN ORDER (I) AUTHORIZING
## (A) THE TRANSFER OF CRYPTOCURRENCY
## ASSETS SERVING AS COLLATERAL ON ACCOUNT
## OF INSTITUTIONAL LOANS IN THE ORDINARY COURSE
## OF BUSINESS AND (B) THE EXERCISE OF THE DEBTORS'
## RIGHTS AND REMEDIES PROVIDED UNDER EACH MASTER
## LENDING AGREEMENT AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Relief Requested**

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):  (a) authorizing the Debtors to, consistent with past practice and in the

ordinary course of business, (i) transfer cryptocurrency assets serving as collateral on account of

loans to institutional customers upon repayment of each loan, (ii) exercise their rights provided

under each Master Lending Agreement (each a "MLA") to apply cryptocurrency assets serving as

collateral on account of institutional loans at the prevailing market price to the balance of such

outstanding loans, including principal and any accrued interest, or, in the alternative, to sell such

collateral and retain the proceeds, and close out such loans, (iii) exercise other rights and remedies

provided for under the MLAs, including, but not limited to, netting, setoff, and amending terms

through the mutual assent of the parties, and (iv) engage in other ordinary course of business

transactions necessary to manage the Debtors' lending positions, including, but not limited to,

entry into workout agreements and acceptance of partial repayment in the form of digital assets,

cash, or equity; and (b) granting related relief.

**Jurisdiction and Venue**

2.    The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court

entering a final order in connection with this Motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 363(c)(1), 541, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003(b), 6004(a), and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6.      On July 13, 2022 (the "Petition Date"), each of the Initial Debtors[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22].  The Initial Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

---

[2]   The "Initial Debtors" include, collectively: Celsius Network LLC, Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining LLC, Celsius Network Inc., Celsius Network Limited, Celsius Networks Lending LLC, and Celsius US Holding LLC.

7.      On December 7, 2022, each of the GK8 Debtors[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of the chapter 11 cases of the GK8 Debtors is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of the GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

8.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53, 1648]. On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors for the Initial Debtors [Docket No. 241] (the "Committee"). On September 29, 2022, the Court entered an order appointing an examiner for the Initial Debtors [Docket No. 923].

### Institutional Lending Program

9.      Prior to the Petition Date, Celsius engaged in bespoke lending and borrowing relationships with institutional clients arranged on an "over the counter," or "OTC," basis and governed by master loan agreements and term sheets setting forth the detailed terms of any specific transaction. In exchange for furnishing the loan, institutional customers provided Celsius with various forms of cryptocurrency assets as collateral for each transaction. Upon the repayment in full of each loan, these assets would then be returned to the customer. In the months prior to the Petition Date, the Debtors closed out the majority of their institutional loan portfolio, reducing total outstanding loan obligations by more than $800 million and the total number of outstanding

---

[3]      The "GK8 Debtors" include, collectively: GK8 Ltd., GK8 UK Limited, and GK8 USA LLC.

loans by more than two hundred.  As of the date hereof, the Debtors have approximately fourteen institutional borrowers with approximately $115 million of aggregate outstanding obligations collateralized by approximately $16 million in cryptocurrency assets.  In light of recent events in the cryptocurrency industry, the Debtors have determined, as an exercise of their reasonable business judgment, that they require the flexibility to take all actions necessary to maximize the value of their institutional loan portfolio.  For clarity, the Debtors request such relief only with respect to their institutional loan portfolio; retail loans provided to Borrow program customers will be unaffected.

### Basis for Relief

10.    The relief requested in this Motion relates solely to the ordinary course conduct of the Debtors' business within the meaning of section 363(c)(1) of the Bankruptcy Code.  Pursuant to the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 1152] (the "Final Cash Management Order"), institutional customers may transfer cryptocurrency assets to the Debtors in repayment of loans issued prior to the Petition Date.  Final Cash Management Order ¶ 5.  The Debtors, however, are not permitted to transfer any cryptocurrency assets to a loan counterparty or otherwise allow "the buying, selling, trading, or withdrawal of Cryptocurrency" in connection with the institutional lending program absent further order of the Court.  *Id.* ¶¶ 5, 6.

11.    The Final Cash Management Order does not, however, bar the Debtors' exercise of their rights under the MLAs to conduct margin calls with respect to institutional loans, to request repayment of matured amounts due under such loans, or to declare counterparties in default if they

fail to comply with those demands. The exercise of these rights will not be meaningful unless the Debtors can take action to enforce them. Thus, the Debtors seek entry of an order authorizing the Debtors to exercise their rights under the MLAs, including upon full repayment, to release the cryptocurrency serving as collateral on account of each outstanding institutional loan to which it is a party, to close out the loans and offset the value of collateral against the outstanding balance of such loans, or, in the alternative, to sell such collateral and retain the proceeds, and to utilize any other remedies available to them under the MLAs, including, but not limited to, netting, setoff, and acceptance of partial repayment. At this time, the Debtors are planning only to take such action with respect to undercollateralized institutional loans as necessary to protect estate property, but seek authority to take action as requested herein in order to proactively manage the institutional loan book and protect this estate property on a go-forward basis. Recent events in the cryptocurrency industry underscore the Debtors' need to be proactive, not reactive. The Debtors' exercise of these rights, consistent with prepetition practice, fits squarely within the meaning of ordinary course conduct.

## I.     The Debtors Exercise of Their Rights and Remedies as Provided Under Each MLA Should Be Authorized in Accordance with Section 363(c)(1) of the Bankruptcy Code.

12.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use, sell, or lease property of the estate in the ordinary course of its business providing, in relevant part:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204 or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

13.     As a threshold matter, the Debtors continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Under the majority of

the MLAs, title to any cryptocurrency assets serving as collateral on account of institutional loans was transferred to the Debtors prepetition and therefore constitutes property of the Debtors' estates in accordance with section 541(a) of the Bankruptcy Code.[4]

14.     Section 363 of the Bankruptcy Code is designed to strike a balance between allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets. *See In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997). Accordingly, a debtor in possession may use, sell, or lease property of the estate without need for prior court approval if the transaction is in the ordinary course. *See Lavigne*, 114 F.3d at 384; *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796–97 (Bankr. D. Del. 2007) ("Thus, whether notice and a hearing are required depends on whether a transaction is 'in the ordinary course of business.'"); *In re Chernicky Coal Co.*, 67 B.R. 828, 834 (Bankr. W.D. Penn. 1986) (holding that bankruptcy court approval was not required for a transaction in which the debtor "did nothing post-petition that it did not do pre-petition in the ordinary course of its regular business activities"). Stated differently, creditors are not given the right to notice and a hearing when transactions are in the ordinary course of business "because their objections to such transactions are likely to relate to the [debtor's] chapter 11 status, not the particular transactions themselves." *See In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983). The ordinary course of business standard is intended to provide a debtor in possession with the flexibility required to run its business and quickly respond to changes in the business environment. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).

---

[4]    In certain of the MLAs, the Debtors purported to grant a security interest in the collateral and the agreements are silent as to the transfer of title. The Debtors reserve all rights with respect to the transfer of title under the MLAs.

15.     To determine whether a transaction is in the ordinary course of business under section 363 of the Bankruptcy Code, courts in the Second Circuit apply a two-part test, the objective horizontal test and the subjective vertical test. *See, e.g.*, *Lavigne*, 114 F.3d at 384–85 (citing *Roth Am.*, 975 F.2d at 952-53). The horizontal test is a factual analysis that requires a determination as to whether the transaction in question is of the sort commonly undertaken by companies in the relevant industry. *See Lavigne*, 114 F.3d at 384–85. The vertical test is an analysis conducted from the perspective of a hypothetical creditor to determine whether the transaction subjects such creditor to a level of economic risk of a nature different from what it accepted when entered into a contract with the debtors. *Id*. In making this determination, courts look to the debtor's prepetition business practices and conduct and compare them to the debtor's postpetition conduct. *See, e.g.*, *Nellson Nutraceutical*, 369 B.R. at 797. Here, the Debtors' exercise of their rights and remedies under the MLAs to manage their institutional loan portfolio satisfies both the horizontal and vertical tests and is an exercise of their sound business judgment intended to maximize the value of their estates.

**A.     The Debtors Should Be Authorized to Transfer Cryptocurrency Assets Serving as Collateral on Account of Outstanding Institutional Loans to Each Respective Loan Counterparty.**

16.     The release of the cryptocurrency assets serving as collateral upon repayment of the Debtors' outstanding institutional loans satisfies both the horizontal test and vertical test. With respect to the horizontal test, the creation of a security interest in, or retention of, collateral is a fundamental component of all secured lending transactions. As part of that practice, a lender will typically release its security interest in, or otherwise return, the underlying collateral once a loan has matured and been paid off. Thus, it is reasonably expected that a cryptocurrency platform, such as the Debtors', which provides secured loans to customers would retain collateral in the form of digital assets to secure the provision of such loans. Therefore, the Debtors' ordinary course

practice of retaining and releasing cryptocurrency assets that serve as collateral to institutional loans satisfies the horizontal test. The vertical test is similarly satisfied because a hypothetical reasonable creditor would realize a depletion in its exposure to economic risk upon the return of the cryptocurrency assets serving as collateral to its outstanding institutional loan. In the alternative, if the status quo is maintained and the Debtors continue to hold the collateral, the loan counterparties would be exposed to economic risk given the tumultuous state of the cryptocurrency market.

**B.      The Debtors Should Be Authorized to Apply the Cryptocurrency Assets Serving as Collateral on Account of Each Outstanding Institutional Loan to the Balance of Such Loan.**

17.    A lender's ability to close out a secured loan and either apply the value of that collateral at the prevailing market price to the outstanding balance of that loan or to sell such collateral and retain the proceeds is the linchpin of a secured transaction. Thus, the exercise of this right in the event of a failure to repay the matured and presently payable amounts under a loan satisfies the horizontal test. With respect to the vertical test, the ability to apply the value of collateral against an outstanding loan balance is intended to ameliorate losses from the non-payment of loans. A hypothetical creditor would expect the Debtors to use such remedies to offset the potential loss accruing from uncollectible loans. Therefore, the Debtors' exercise of its rights to either apply cryptocurrency assets held as collateral to matured and payable amounts of principal and interest due under institutional loans, or to sell that collateral and retain the proceeds, and subsequently close out such loans, is appropriate under the vertical test.

**C.      The Debtors Should be Authorized to Engage in All Other Ordinary Course Transactions Necessary to Collect Amounts Outstanding From Institutional Loan Counterparties.**

18.    Utilizing workout agreements and acceptance of partial repayment by lenders are crucial means to compensate for actual and potential non-performance by lending counterparties.

9

Because these methods of reducing risk are frequently used by lenders in the Debtors' line of business, the Debtors' use of such methods satisfies the horizontal test. As for the vertical test, a hypothetical creditor would expect the Debtors to use any and all means to limit the losses from non-performing loans and collect the maximum amount possible from such counterparties. Therefore, the Debtors' use of methods including, but not limited to, entry into workout agreements and acceptance of partial repayment is appropriate under both the horizontal and vertical tests.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

19.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

20.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief

sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

21.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

22.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

23.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: January 3, 2023

*/s/ Joshua A. Sussberg*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    jsussberg@kirkland.com

    - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    patrick.nash@kirkland.com
        ross.kwasteniet@kirkland.com
        chris.koenig@kirkland.com
        dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**<u>Exhibit  A</u>**

**Proposed  Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) AUTHORIZING
### (A) THE TRANSFER OF CRYPTOCURRENCY
### ASSETS SERVING AS COLLATERAL ON ACCOUNT
### OF INSTITUTIONAL LOANS IN THE ORDINARY COURSE
### OF BUSINESS AND (B) THE EXERCISE OF THE DEBTORS'
### RIGHTS AND REMEDIES PROVIDED UNDER EACH MASTER
### LENDING AGREEMENT AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking entry of an order (this "Order"), (a) authorizing the Debtors to, consistent with past practice and in the ordinary course of business, (i) transfer cryptocurrency assets serving as collateral on account of loans to institutional customers upon repayment of each loan, (ii) exercise their rights provided under each Master Lending Agreement (each a "MLA") to apply cryptocurrency assets serving as collateral on account of institutional loans at the prevailing market price to the balance of such outstanding loans, including principal and any accrued interest, or, in the alternative, to sell such collateral and retain the proceeds, and close out such loans, (iii) exercise other rights and remedies provided for under the MLAs, including, but not limited to,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

netting, setoff, and amendment of terms through the mutual assent of the parties and (iv) engage in other ordinary course of business transactions necessary to manage the Debtors' lending positions, including, but not limited to, entry into workout agreements and acceptance of partial repayment in the form of digital assets, cash, or equity and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (if any) before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized, but not directed, to transfer cryptocurrency assets serving as collateral on account of each outstanding institutional loan to the respective loan counterparty, whether currently held or

received in the future, on a postpetition basis consistent with prepetition practices and in the ordinary course of business without further notice and hearing.

3.    Notwithstanding section 552 of the Bankruptcy Code, upon exercise of the Debtors' preexisting rights to issue margin calls to each institutional loan to each loan counterparty and accept any related cryptocurrency assets transferred to satisfy such margin call, the transferred cryptocurrency assets shall be security for the applicable institutional loan.

4.    Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized, but not directed, to apply any payments made by institutional loan counterparties to the balance of existing loans, including principal and any accrued interest, or, in the alternative, to sell such collateral and retain the proceeds, and close out such loans, on a postpetition basis consistent with prepetition practices and in the ordinary course of business without further notice and hearing.

5.    Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized, but not directed, to exercise all other remedies available to them under the MLAs, including, but not limited to, netting, setoff, and amending terms through the mutual assent of the parties, on a postpetition basis consistent with prepetition practices and in the ordinary course of business without further notice and hearing; *provided* that the Debtors shall not enter into any agreement or amendment to an agreement with an institutional loan counterparty without Committee consent (email shall suffice).

6.    Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized, but not directed, to engage in all other ordinary course of business transactions necessary to manage the institutional loan portfolio, including, but not limited to, entry into workout agreements and acceptance of partial payment in the form of digital assets, cash or equity, on a postpetition basis consistent with prepetition practices and in the ordinary course of business without further

notice or hearing; *provided* that the Debtors shall not enter into any agreement or amendment to an agreement with an institutional loan counterparty without Committee consent (email shall suffice).

7.      Notwithstanding anything to the contrary herein, any amounts received from loan counterparties in connection with the relief requested herein are subject to the applicable provisions of the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 1152] and any other order of the Court relating to the subject matter hereof.

8.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

9.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy

Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

10.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

11.    Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

12.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

14.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE