**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF SALE OF CERTAIN DE MINIMIS ASSETS**

**PLEASE TAKE NOTICE** that, on July 13, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**PLEASE TAKE FURTHER NOTICE** that, on September 1, 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") approved the *Order Establishing Procedures for De Minimis Asset Sales* [Docket No. 692] (the "Sale Procedures Order"),[2] whereby the Court authorized the Debtors to sell certain De Minimis Assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, the Debtors propose to sell the De Minimis Assets set forth and described on **Exhibit A** attached hereto (the "Sale Assets"). **Exhibit A** provides, for each Sale Asset: (a) identification of the Sale Assets being sold; (b) identification of the Debtor that owns the Sale Assets; (c) identification of the purchaser of the Sale Assets; (d) the identities of entities known to the Debtors as holding Liens or other interests in the Sale Assets, if any; (e) the purchase price and the material economic terms and conditions of the sale; (f) a summary of the marketing process employed; (g) a copy of the sale agreement evidencing the sale of the Sale Assets, if applicable; (h) any commission fees, or similar expenses to be paid in connection with such transaction; (i) the proposed order authorizing such sale (if any); and (j) the intended use of the sale proceeds.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, if the terms of a proposed sale are materially amended after transmittal of this notice, the Debtors will send a revised Sale Notice (the "Amended Sale Notice") to the parties entitled to receive this notice pursuant to the Sale Procedures Order (the "Sale Notice Parties"), after which the Sale Notice Parties shall have an additional three calendar days to object to such sale prior to closing such sale or effectuating such transaction.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Where context requires, capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to such terms in the Sale Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures Order, any recipient of this notice may object to the proposed transaction within the greater of (i) seven calendar days of service of this notice, or (ii) three calendar days of service of an Amended Sale Notice, as applicable (the "Sale Notice Period"). Objections: (a) **must be in writing**; (b) **must be received within the Sale Notice Period**; and (c) must be submitted by email, mail or facsimile to (i) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com) and Simon Briefel (simon.briefel@kirkland.com), and 300 North LaSalle, Chicago, Illinois 60654; Attn: Patrick Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Chris Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com), (ii) counsel to the Official Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, Illinois 6060, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com), and 555 South Flower Street, Suite 2700, Los Angeles, California 90071, Attn: Aaron Colodny (aaron.colodny@whitecase.com), and (iii) the United States Trustee, Attn: Shara Cornell (shara.cornell@usdoj.gov). If you object, the Debtors may not sell the Sale Assets unless you and the Debtors consensually resolve the objection or upon further Court order after notice and a hearing approving the sale of such Sale Assets.

**PLEASE TAKE FURTHER NOTICE** that if no party objects to the sale of the Sale Assets, such sale shall be free and clear of all liens and other encumbrances, to the extent permitted by section 363(f) of the Bankruptcy Code, with such liens and other encumbrances attaching to the proceeds of such sale with the same validity, extent, and priority as had attached to such De Minimis Assets immediately prior to such sale, and the failure to object shall be deemed to be consent to such sale under section 363(f)(2) of the Bankruptcy Code.

[*Remainder of the page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated: January 11, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:            jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:            patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |

**Exhibit A**

**Sale Assets**

| **De Minimis Asset Sale Notice** ||
|---|---|
| 1. Identification of the Sale Assets being sold | New-in-box MicroBT M30S ASIC rigs (2,687 units) (collectively, the "Assets") |
| 2. Identification of the Debtor that owns the Sale Assets | Celsius Mining LLC |
| 3. Identification of the purchaser of the Sale Assets | Touzi Capital LLC |
| 4. The identities of entities known to the Debtors as holding Liens or other interests in the Sale Assets | N/A |
| 5. The purchase price and the material economic terms and conditions of the sale | The sale price of the Assets will be $1,342,727 payable to Celsius Mining LLC upon closing of the sale.<br><br>Purchaser is responsible for arranging and paying all costs of (i) the removal and shipment of the Assets, and (ii) property damage and liability insurance on the Assets for losses suffered by Seller or third parties during removal and loading of the Assets for shipment. |
| 6. Summary of the marketing process employed | Debtors held discussions with several brokers and market participants. As a result of these discussions, the Debtors determined the price offered by Touzi Capital LLC was the best offer. |
| 7. Copy of the sale agreement evidencing the sale of the Sale Assets | See **Exhibit 1**. |
| 8. Commission fees/expenses paid in connection with the sale of the Sale Assets | N/A |
| 9. The proposed order authorizing the sale of the Sale Assets | N/A |
| 10. The intended use of the sale proceeds | General and corporate expenses. |

# Exhibit 1

**Sale Agreement**

*Execution Copy*

# ASSET PURCHASE AND SALE AGREEMENT

This ASSET PURCHASE AND SALE AGREEMENT (this "Agreement") is made, as of January 7, 2022, by and between Celsius Mining LLC, a limited liability company ("Seller") and Touzi Capital, a limited liability company ("Buyer"). Seller and Buyer are referred to herein sometimes individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, Seller and various affiliates have commenced, or expect to commence, cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under case number 22-10964 (MG).

WHEREAS, Buyer desires to purchase, and Seller desires to sell, the assets set forth on **Exhibit A** hereto (the "Assets") pursuant to the terms of this Agreement.

WHEREAS, subject to the receipt of any required approvals and orders from the Bankruptcy Court as provided in Section 7 of this Agreement, the parties hereto have agreed that Seller will sell and Buyer will acquire the Assets free and clear of any liens under section 363 of the Bankruptcy Code.

NOW, THEREFORE, for and in consideration of the foregoing and of the mutual agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1. Sale and Transfer of Title of the Assets

    1.1  Pursuant to the *Order Approving Procedures for De Minimis Asset Sales* [Docket No. 692] (the "De Minimis Asset Sale Order") and according to the terms and conditions stated herein, Seller shall grant, transfer, sell and convey to Buyer good title to the Assets, free and clear of all liens and encumbrances, and Buyer will purchase, receive and accept title to the Assets in accordance with Section 6.2. From and after the Closing (as defined in Section 6.2), Buyer shall be responsible for arranging for and paying all costs of (i) the removal and shipment of the Assets from [Seller's storage facility] to Buyer's [project site] and (ii) property damage and liability insurance on the Assets for losses suffered by Seller or third parties during the removal and loading of the Assets for shipment from [Seller's property]. Buyer shall provide Seller with evidence reasonably acceptable to Seller of such insurance.

2. Payment; Removal of Assets

    2.1  In consideration of the sale, purchase and, transfer of title of the Assets as provided herein, Buyer agrees to pay Seller One Million Three Hundred Forty Two Thousand Seven Hundred Forty Seven United States dollars ($1,342,747) (the "Purchase Price"). The Purchase Price shall be paid at Closing.

    2.2    Buyer covenants that it will remove the Assets from Seller's location at Linkex, 3535 N. Houston School Road, Suite 200, Lancaster, TX 75134 no later than 10 business days after Closing.

    2.3    Each of Seller and Buyer agrees that time is of the essence and covenants that it will take all actions necessary to cause timely closing of the transactions contemplated hereunder and payment of the Purchase Price.

3.    <u>Representations and Warranties of Seller</u>

    3.1    Seller represents and warrants that:

        3.1.1    Subject to the terms and conditions of the De Minimis Asset Sale Order, as of the date of transfer of title of the Assets to Buyer pursuant to Section 6.2 hereof, Seller will have good title to the Assets, free and clear of all liens and encumbrances, and warrants and represents that there are no security interests, liens, claims, notices of default or other encumbrances against the Assets that would prevent transfer of title to the Assets to Buyer free and clear of all liens and encumbrances.

        3.1.2    The Assets are located at Linkex, 3535 N. Houston School Road, Suite 200, Lancaster, TX 75134.

        3.1.3    Seller is a corporation, duly organized, validly existing and in good standing under the laws of the state of Delaware, and subject to the terms and conditions of the De Minimis Asset Sale Order, has all requisite power and authority to execute and deliver this Agreement.

        3.1.4    Subject to the provisions of the Bankruptcy Code and De Minimis Asset Sale Order, the execution, delivery and performance of this Agreement by Seller and the consummation of the transactions contemplated herein have been duly authorized and approved by all necessary corporate action.

        3.1.5    The representations and warranties in Article 3 shall be true and correct at the time title to the Assets is transferred to Buyer.

4.    <u>Representations and Warranties of Buyer</u>

    4.1    Buyer represents and warrants that:

        4.1.1    Buyer is a duly organized and validly existing limited liability company in good standing under the laws of the state of Delaware and has all requisite power and authority to execute and deliver this Agreement.

        4.1.2    Buyer has validly authorized, ratified and approved the execution, delivery and performance of this Agreement.

      4.1.3    Buyer is not in default, bankruptcy, insolvency, reorganization or in breach of contract with regard to any contracts referenced in this Agreement, and there are no causes of action, suits, claims or proceedings pending or threatened against Buyer related to any contracts or agreements referenced herein.

      4.1.4    Buyer has adequate funds to pay the Purchase Price and perform its obligations hereunder, and such funds are not subject to any condition or contingency

5.    <u>Taxes</u>

    5.1    Buyer shall pay or cause to be paid all excise taxes (including, but not limited to, sales and use, gross receipts, transfer, transaction, conveyance fees and stamp taxes) imposed by any government authority on or with respect to this transaction but shall not be obligated to pay any taxes previously levied against the Assets that apply to periods prior to, or unrelated to, this transaction. If Seller is required to remit or pay taxes that are the responsibility of Buyer, Buyer shall promptly reimburse Seller for any such taxes. If Buyer is entitled to an exemption from such taxes, Buyer shall furnish Seller with an exemption certificate.

6.    <u>As-Is Transfer, Risk of Loss and Storage Costs</u>

    6.1    Buyer acknowledges and agrees that it has had the opportunity to inspect the Assets and accepts it "AS IS" and "WHERE IS" in its current condition as of the date hereof, with any and all faults or defects, and without representation or warranty of any kind from Seller, express, implied, statutory or otherwise, including without limitation any warranty as to suitability, merchantability, condition or fitness, or fitness for a particular purpose; provided, however, that this Section 6.1 shall not void or have any effect on any warranties from the manufacturer, if any, nor impair or limit the express warranties and representations delineated in Article 3 of this Agreement.

    6.2    The consummation of the transactions contemplated by this Agreement (the "<u>Closing</u>") shall take place as follows:

      6.2.1    The Closing shall take place as soon as possible after the expiration of the process contemplated by the De Minimis Asset Sale Order, but in no event later than Three (3) business days after such expiration.

3

    6.2.2  At the Closing, Buyer shall pay the Purchase Price to Seller; sending the Purchase Price to Seller's account as follows:

        Account Name: ▮▮▮▮▮▮
        Bank Name: ▮▮▮▮▮▮
        Type of Account: ▮▮▮▮
        Routing Number: ▮▮▮▮
        Account Number: ▮▮▮▮▮

6.3  Buyer shall bear all expenses related to (i) removal of the Assets from Seller's [storage facility] and (ii) [the loading of the Assets onto the trucks or rail cars of Buyer's shipper.]

7. Bankruptcy Procedures

7.1  The Parties acknowledge that the terms of this Agreement are expressly conditioned on Seller's compliance with the De Minimis Asset Sale Order, attached hereto as **Exhibit B**. The Parties further acknowledge that the effective date for each Party's obligations hereunder other than those set forth in Section 2.1 shall not be effective prior to the date by which all of the requirements set forth in the De Minimis Asset Sale Order have been met or otherwise satisfied.

8. Limitation of Liability

8.1  No Party shall be liable to another Party under this Agreement for any consequential, incidental, indirect or exemplary damages, whether as a result of breach of contract, warranty, indemnity, tort (including negligence), strict liability or otherwise, including but not limited to loss of profits or revenues, loss of use of the Assets or of any associated assets, costs of capital, cost of substitute assets, services or facilities, replacement power, downtime costs or claims of a Party's customers for such damages.

8.2  The waivers and disclaimers of liability, releases from liability, and limitations on liability expressed in Section 8.1 shall survive termination or expiration of this Agreement, and shall apply whether in contract, equity, tort or otherwise, even in the event of the fault, negligence, strict liability, or breach of contract of the Party released or whose liabilities are limited, and shall extend to the partners, members, principals, shareholders, directors, officers, employees and agents of such party and its affiliates.

9. Default

9.1  In the event of any material inaccuracy or the breach of any representation, warranty or covenant by any Party under this Agreement (a "Default"), the non-Defaulting Party shall provide written notice to the other Party of such alleged Default. The Defaulting Party shall have Ten (10) business days to cure such Default ("Cure Period"). If such Default has not been cured within the Cure

        Period, then the Defaulting Party shall be deemed to be in breach of this Agreement, and the non-Defaulting Party shall be entitled to all applicable rights and remedies hereunder.

    9.2    In the event of a Default by Buyer which has not been cured by Buyer within the Cure Period, Seller shall be free to terminate this Agreement and sell the Assets to a party other than Buyer, in addition to any rights which Seller may have at law or equity.

10.    <u>Indemnity</u>

    10.1    Buyer shall indemnify, defend, and hold harmless Seller from and against any and all suits, actions, liabilities, legal proceedings, claims, demands, losses, costs, and expenses of whatsoever kind or character including reasonable attorney's fees and expenses in respect of personal injury to, or death of, any person and in respect of loss of, or damage to, property to the extent that such injury, death, loss, or damage relates to Buyer's removal of the Assets from the Seller's Facility.

11.    <u>Miscellaneous</u>

    11.1    None of the representations or warranties of Seller set forth in this Agreement or in any Exhibit shall survive the Closing.

    11.2    Subject to Section 7.1, the provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns; provided that no Party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the written consent of the other Party.

    11.3    The failure of a Party to insist upon compliance with any term of this Agreement to exercise any option, enforce any right or seek any remedy shall not affect, nor constitute a waiver of that Party's right to insist upon strict compliance with any other term of this Agreement, to exercise any other option, enforce any other right or to seek any other remedy.

    11.4    This Agreement forms the entire agreement between Seller and Buyer with respect to the subject matter contained in them.  This Agreement supersedes all prior or contemporaneous discussions, negotiations, illustrations, representations, or agreements relating to the subject matter of this Agreement.  No modification or amendment of this Agreement or Exhibit hereto is effective unless confirmed in writing.

    11.5    This Agreement is subject to all applicable present and future laws, regulations, rules, orders, judgments, and decisions of regulatory authorities with jurisdiction over Seller and Buyer.

11.6  The Parties will, from time to time, do all further acts and execute and deliver all further documents as reasonably required to fully perform and carry out the terms of this Agreement.

11.7  If any court of competent jurisdiction determines that any term of this Agreement is invalid or unenforceable, that determination will not affect the validity of the other provisions of this Agreement, which will remain in full force and effect. After any Seller is no longer subject to the jurisdiction of the Bankruptcy Court, if applicable, any legal action or proceeding with respect to this Agreement or the transactions contemplated hereby shall be brought in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction with respect to all disputes arising out of or relating to this Agreement.

11.8  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this Agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart of this Agreement.

11.9  For any disputes arising out of or relating to this Agreement, each of Seller and Buyer (x) irrevocably submits to the jurisdiction of the Bankruptcy Court, and (y) irrevocably waives any objection that it may now or hereafter have to the laying of venue in such forums and agrees not to plead or claim that any action in such forums would be inconvenient.

11.10  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflict of laws principles thereof, except as superseded by the Bankruptcy Code.

11.11  The headings in this Agreement are for convenience only and shall not affect the construction of this Agreement.

11.12  Whenever this Agreement requires or permits any consent, approval, notice, request, or demand from one Party to another, the consent, approval, notice, request, or demand must be in writing to be effective and shall be deemed to be delivered and received (a) if personally delivered, when actually received by the Party to whom notice is sent, or (b) if delivered by mail or courier service when delivered to the address set forth below, or (c) if delivered by email or facsimile, on the day transmitted, at the email address and/or facsimile numbers of such Party set forth below (or at such other address as such Party may designate by written notice to all other Parties in accordance herewith):

|  |  |
|---|---|
| If to Seller: | Celsius Mining LLC<br>50 Harrison Street, Suite 209F<br>Hoboken, NJ 07030<br><br>Attention: Patrick Holert<br>Telephone: 818-324-0270<br>Email: patrick.holert@celsius.network<br><br>Attention: Joseph Golding-Ochsner<br>Telephone: 914-715-2825<br>Email: joseph.golding-ochsner@celsius.network |
| With copies to: | Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, IL 60654<br><br>Attention: Christopher S. Koenig<br>Telephone: (312) 862-2372<br>Facsimile: (312) 862-2200<br>Email: chris.koenig@kirkland.com<br><br>Attention: Dan Latona<br>Telephone: (312) 862-3445<br>Facsimile: (312) 862-2200<br>Email: dan.latona@kirkland.com |
| If to Buyer: | Touzi Capital LLC<br>340 S Lemon Ave. #8284<br>Walnut, CA 91789<br><br>Attention: Eng Taing<br>Telephone: 626-673-1909<br>Email: eng@touzicapital.com |

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above set forth.

The Seller, Celsius Mining LLC

By _*Chris Ferraro*_
Name: Christopher Ferraro
Title: Authorized Signatory


The Purchaser, Touzi Capital LLC

By _*Eng Taing*_
Name: Eng Taing
Title: Chief Executive Officer

Signature page to Asset Purchase Agreement

**Exhibit A**
**ASSETS PURCHASED**

| Description of Product(s) | Model | Hashrate （TH/s） | Power consumption (W) | Units | Unit price (USD) | Total （USD） |
|---|---|---|---|---|---|---|
| New-in-Box MicroBT ASIC Rigs | M30S | 84 |  | 280 | 476.28 | 133,358.40 |
|  | M30S | 86 |  | 396 | 487.62 | 193,097.52 |
|  | M30S | 88 | 3,344 +/- 10% | 996 | 498.96 | 496,964.16 |
|  | M30S | 90 |  | 894 | 510.30 | 456,208.20 |
|  | M30S | 92 |  | 121 | 521.64 | 63,118.44 |
|  | Total |  |  | 2,687 |  | $1,342,747 |