**Víctor Ubierna de las Heras**
**Email: victorub@protonmail.com**
**Telephone +34 699760721**

**Pro se Creditor**

**UNITED STATES BANKRUPTCY COURTSOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| | **Related documents: 1426** |

**VÍCTOR UBIERNA DE LAS HERAS OBJECTION TO DEBTORS' SALE OF CERTAIN DE MINIMIS ASSETS**

Víctor Ubierna de las Heras, *pro se* creditor, states as follows in support of this Objection to the *Debtors' Sale of Certain De Minimis Assets*, filed by the Debtors with docket number 1853:

**OBJECTION**

1. This *pro se* creditor objects to the sale announced by Debtors at docket 1853. Debtors seek to sell certain de minimis assets, valued at $1,342,747 and consisting of 2687 units of M30S miners.

2. The sale of de minimis assets is regulated by the Order Approving Procedures For De Minimis Asset Sales, entered with docket number 692. That order clearly states that:

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030

1

> *"the content of the notice sent to the Sale Notice Parties for the applicable sale of De Minimis Assets shall consist of: ( …) (j) the intended use of the sale proceeds;"*. That is not specified in the Notice filed by the Debtors at docket 1853. They say that the intended use of the sale proceeds is "General and corporate expenses." That is like saying nothing. General and corporate expenses can mean everything and nothing at the same time. It was impossible for the Debtors to use a more ambiguous term. More detail is needed as to the intended use of the proceeds. Is Celsius paying their legal team (Kirkland and Ellis) with the de minimis sale? Is Celsius paying the KERP with these proceeds? Is Celsius going to use the proceeds to make creditors a little bit more whole? Is Celsius paying their rent with this? One wouldn't know reading what is in the Notice. What includes and what doesn't include the term "General and corporate expenses"? More than enough money has been spent in professionals and legal counsel in this case. Further, this week made the news the fact that a partner at Kirkland and Ellis is buying a $38,000,000 mansion in Malibu. This enraged creditors even more, as they see that the little money that remains at Celsius is being spent and not used to make them whole, even if creditors were defrauded by a more than likely Ponzi Scheme or securities fraud (as alleged in the recent NY AG litigation). The intended use shall be clearly defined before the sale can proceed.

3. Furthermore, the Notice filed by the debtors raises serious concerns about this sale being in the best interest of the estate. The De Minimis Sale Order establishes that "the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such transactions are in the best interest of the estates (…). Well, the available facts raise concerns as to if this is true. After, the agreement with Core Scientific to shut down 37,000 rigs of Celsius Mining

it became clear to a big number of creditors that mining was not profitable. A considerable number of creditors think that after the shut down of 37,000 rigs and the postponement of the auction that there are more than enough reasons to convert to Chapter 7 and liquidate everything. Now, Celsius wants to sell even more rigs. This doesn't have to be problematic per se, but Debtors statements to date contradict that. To date, multiple times has been stated that Celsius Mining was cash-flow positive[2] and generating income. So, if Celsius Mining is cash-flow positive, how can selling these M30S be in the best interest of the estate? Celsius, and others like Zach Wilde[3], Additionally, if Celsius Mining is going to play a big role in any reorg, how can selling these new M30S be in the best interest of the estate?

Also, based on analysis[4] by @ChazzonKe the M30S, breakeven for these units is at the 20K mark:

| Model | Hash | Power | Units | Sale Price | Total Sale price | | | |
|---|---|---|---|---|---|---|---|---|
| M30S | 84 | 3344 | 280 | $ 476.28 | $ 133,358.40 | | | |
| M30S | 86 | 3344 | 396 | $ 487.62 | $ 193,097.52 | | | |
| M30S | 88 | 3344 | 996 | $ 498.96 | $ 496,964.16 | | | |
| M30S | 90 | 3344 | 894 | $ 510.30 | $ 456,208.20 | | | |
| M30S | 92 | 3344 | 121 | $ 521.64 | $ 63,118.44 | | | |
| | AVG Hash | | Total | AVG Price | Total Sale | | | |
| | 88 | | 2687 | $ 498.96 | $ 1,342,746.72 | | | |
| Model | Hash | Power | Units Total | Daily Power EA | Weekly Power EA | Monthly Power EA | Yearly power EA | |
| M30S | 88 | 3344 | 2687 | $ 6.42 | $ 44.94 | $ 192.60 | $ 2,311.20 | |
| Model | Hash | Power | Units Total | Total Daily Power | Total Weekly power | Total Monthly power | Total yearly Power | |
| M30S | 88 | 3344 | 2687 | $ 17,250.54 | $ 120,753.78 | $ 517,516.20 | $ 6,210,194.40 | |
| Model | Hash | Daily Yield EST | Monthly Yield EST | Yearly Yield EST | | | | |
| M30S | 88 | 0.0003234 | 0.009701 | 0.118 | | | | |
| Model | Hash | Total Units | Total Daily Yield EST | Total Monthly Yield EST | Total Yearly yield EST | | | |
| M30S | 88 | 2687 | 0.8689758 | 26.066587 | 317.066 | | | |
| | | | BTC Sale price / Revenue | | | | | |
| BTC Price | Daily Daily Revenue | Daily Expense | Monthly Revenue | Monthly Expense | Yearly Revenue | Year Expense | Profit(Loss) | |
| $ 17,000.00 | $ 14,772.59 | $ 17,250.54 | $ 443,131.98 | $ 517,516.20 | $ 5,390,122.00 | $ 6,210,194.40 | $ (820,072.40) | |
| $ 17,500.00 | $ 15,207.08 | $ 17,250.54 | $ 456,165.27 | $ 517,516.20 | $ 5,548,655.00 | $ 6,210,194.40 | $ (661,539.40) | |
| $ 18,000.00 | $ 15,641.56 | $ 17,250.54 | $ 469,198.57 | $ 517,516.20 | $ 5,707,188.00 | $ 6,210,194.40 | $ (503,006.40) | |
| $ 18,500.00 | $ 16,076.05 | $ 17,250.54 | $ 482,231.86 | $ 517,516.20 | $ 5,865,721.00 | $ 6,210,194.40 | $ (344,473.40) | |
| $ 19,000.00 | $ 16,510.54 | $ 17,250.54 | $ 495,265.15 | $ 517,516.20 | $ 6,024,254.00 | $ 6,210,194.40 | $ (185,940.40) | |
| $ 19,500.00 | $ 16,945.03 | $ 17,250.54 | $ 508,298.45 | $ 517,516.20 | $ 6,182,787.00 | $ 6,210,194.40 | $ (27,407.40) | |
| $ 20,000.00 | $ 17,379.52 | $ 17,250.54 | $ 521,331.74 | $ 517,516.20 | $ 6,341,320.00 | $ 6,210,194.40 | $ 131,125.60 | |
| $ 20,500.00 | $ 17,814.00 | $ 17,250.54 | $ 534,365.03 | $ 517,516.20 | $ 6,499,853.00 | $ 6,210,194.40 | $ 289,658.60 | |
| $ 21,000.00 | $ 18,248.49 | $ 17,250.54 | $ 547,398.33 | $ 517,516.20 | $ 6,658,386.00 | $ 6,210,194.40 | $ 448,191.60 | |
| $ 21,500.00 | $ 18,682.98 | $ 17,250.54 | $ 560,431.62 | $ 517,516.20 | $ 6,816,919.00 | $ 6,210,194.40 | $ 606,724.60 | |

---

[2] See both the Ferraro deposition and his business update in a Hearing, among other public statements.
[3] Zach Wilde is an accomplice of Mr. Mashinsky. For example, on 2021.04.30 the CEO of Celsius network AM and Zach Wilde told customers it was impossible for Celsius to be victim of a run on the bank as they always have all our funds. Worst case we get all our coins back. Source: AMA. He was at some point employed by Celsius and to date still defends that Celsius Mining will save everyone.
[4] https://twitter.com/ChazzonKe/status/1613614062453280770



This again raises the question of why Celsius is selling rigs near breakeven if mining is still a cornerstone of their reorg. Is this in the best interest of creditors?

4. If these weren't enough concerns as if this is in Debtors best interest, the apparent fact that Celsius is selling these M30S at a **massive discount** only adds more concerns. Based on public information, it is known that Celsius bough rigs at 2x or 3x the retail price (at least at some points in time, based on information available in Celsius Mining Schedules). Here, they know want to sell NEW unused M30S' at a 73% discount off current non-bulk retail pricing. This seems illogical. We now know that many of these rigs were bought with customer funds, so it is creditors the ones losing money here. Buying at high prices and selling with a massive discount doesn't seem to be in the best interest of the estate and, at the very least, more information needs to be provided. Apparently, the sale price is not consistent with the assets' fair market value.

5. In re Au Nat. Rest., Inc., 63 B.R. 575, 580 (Bankr. S.D.N.Y. 1986) ("Debtor's failure to produce a sufficient evidentiary record upon which the relief sought can be granted, coupled with the unclear and inconsistent terms contained in the transaction, is

sufficient grounds for this court to deny its motion"). Before the court may approve a debtor's request under section 363(b)(1), the debtor "must articulate" a specific "business justification" for the use of estate property, In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989), and support that business justification with "evidence presented" in the record, In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). In re Exaeris, Inc., 380 B.R. 741, 744 (Bankr. D. Del. 2008) (denying proposed sale of estate property because there was "no evidence upon which the Court can make an informed decision"). In re Flour City Bagels, LLC, 557 B.R. 53, 84 (Bankr. W.D.N.Y. 2016) (denying proposed sale of estate property because "[t]here is no evidence before the Court to prove the business justification for the sale by a preponderance of the evidence"). Here, Debtors do not present enough (any would be even more correct) evidence as to ascertain if selling assets at a massive discount is in their best interest and judgement.

6. Furthermore, to this objector best knowledge, no supplemental declaration has been submitted and entered on the docket by counsel to the debtors analyzing or stating that a conflict-of-interest check has been carried out regarding Touzi Capital LLC, so we cannot know if the buyer is an "unaffiliated third parties outside the ordinary course of business".

### Reservation of rights

Víctor Ubierna de las Heras reserves all rights belonging to him, including but not limited to supplementing this objection and filing a joinder to any other objection.

### Notice of this objection

The objector is serving this objection as required by the Notice by email to (i)

counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com) and Simon Briefel (simon.briefel@kirkland.com), and 300 North LaSalle, Chicago, Illinois 60654; Attn: Patrick Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Chris Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com), (ii) counsel to the Official Committee of Unsecured Creditors, White & Case LLP, 111 South Wacker Drive, Suite 5100, Chicago, Illinois 6060, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com), and 555 South Flower Street, Suite 2700, Los Angeles, California 90071, Attn: Aaron Colodny (aaron.colodny@whitecase.com), and (iii) the United States Trustee, Attn: Shara Cornell (shara.cornell@usdoj.gov).

## **Conclusion**

For the foregoing reasons, the Court should deny sale of certain de minimis assets filed by debtors at docket 1853.

Dated: January 12, 2023

Madrid, Spain            Respectfully submitted,

                                        Víctor Ubierna de las Heras
                                        By: /s/ Víctor Ubierna de las Heras

Víctor Ubierna de las Heras
Pro se creditor
+34 699760721
victorub@protonmail.com