Perry T. Plotkin

January 3, 2023

Hon. Martin Glenn Chief
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re: In re Celsius Network LLC, No. 22-10964 (MG)

Chief Judge Glenn:

I am unable to access the email address originally registered to my Celsius account. I cannot complete that claim process. That is secondary to the importance of the rest of this letter.

The issue I present here is the nature of this entire legal process. Specifically the challenges raised as far as bankruptcy, secured creditors, unsecured creditors, etc. **I present here the reasoning as to why the exact cryptocurrencies themselves should be returned in full, because of the trust arrangement, and the maxims of equity.**

## 1) BUSINESS STRUCTURE = TRUST

It appears to me, in my limited legal comprehension, that the structure the Celsius companies held clients' assets has always been that of a TRUST.

There are requirements to have a valid trust that must be fulfilled (even if not explicitly "expressed"):

a) **Certainty of Intention**

Although the word "trust" has not been explicitly used (from what I've seen), the intentions of the arrangement have been known from the beginning: very specific business structures (loans, earnings, etc) by holding property (various forms of wealth in cryptocurrency forms, as well as likely sovereign currencies) that clients voluntarily provided in order to be provided benefit. The obligation of holding this property went well beyond just a "moral obligation" or similar non-trust arrangement. Similarly these were not "gifts". I argue that this arrangement appears to be that of a trust.

b) **Certainty of Subject Matter**

The cryptocurrency assets have always been PRECISELY-known/identifiable/specific non-fungible separate digitally-*segregated* assets. It is impossible for them to be mixed up with anything else (such as warehouse goods.) It is impossible for them to be mixed up in a single account (such as currencies of multiple clients co-mingled in a shared bank-account). It is impossible for them to be indistinguishable from each other (such as fungible bullion in a vault). In this case, every single one of these assets are, and always have been, 100% separate, personally identifiable, traceable (and thus returnable).

JAN 1 1 2023

c) **Certainty of Objects**

I don't know for sure, but it's likely the trust structure is that of a "Discretionary Trust" for the beneficiaries (clients). The objects themselves are obvious though = clients.

## 2) MAXIMS OF EQUITY SHOULD BE USED

As a judge, you are no doubt familiar with the MAXIMS OF EQUITY. A selection of such follows:

- Equity Sees That As Done What Ought To Be Done
- Equity Will Not Suffer A Wrong To Be Without A Remedy
- Equity Aids The Vigilant, Not Those Who Slumber On Their Rights
- Equity Imputes An Intent To Fulfill An Obligation
- Equity Acts In Personam
- Equity Abhors A Forfeiture
- Equity Does Not Require An Idle Gesture
- He Who Comes Into Equity Must Come With Clean Hands
- Equity Delights To Do Justice And Not By Halves
- Equity Will Take Jurisdiction To Avoid A Multiplicity Of Suits
- Equity Will Not Complete An Imperfect Gift
- Equity Will Not Allow A Statute To Be Used As A Cloak For Fraud
- Equity Will Not Allow A Trust To Fail For Want Of A Trustee
- Equity Regards The Beneficiary As The True Owner

Anyone using Equity can easily see what should be done in this situation:

The assets have always been digitally-segregated, specifically identifiable, and able to be returned to the depositing Owners. Thus they should ALL to be returned to the original Owners. Any other transactions they were used for was improperly using what was supposed to be held in trust. Is that not the euqivalent of a Trustee selling/trading assets against a trust arrangement? Are there not very serious legal consequences for anyone doing such actions?

Any assets that were already redistributed should be returned, and the current holders of those assets can file *their* claims with Celsius for any breached contracts they may have had when receiving that property improperly. Meanwhile, all of us original asset Owners have all rights reserved, and the principles of EQUITY should be used in any legal proceedings.

Seems that treating this all as a typical bankruptcy arrangement for "unsecured creditors" would be improper.

Again, **the exact cryptocurrencies themselves should be returned in full, because of the trust arrangement, and the maxims of equity.** The nature of the technology is such that this should be possible, regardless of who is controlling them now. If that is not done, then additional criminal wrongdoing has occurred not only on the part of the original business owners and managers, but then also by the decisions proceeding now. There is accountability for all involved, including but not limited to individual liability for all that participated in any of the original, subsequent, or ongoing wrongdoings.

Thank you for your consideration. I hope real justice is provided here.

Sincerely, and all rights reserved,

Perry T. Plotkin

PERRY PLOTKIN

Celsius Account Email: freedom@ctemplar.com → No longer accessible.

*Disagree. Actually Trust Assets.*

Celsius Network LLC has listed your claim on Schedule **EF Part 2** as a **General Unsecured** claim comprising of the coin(s) listed in the table below. If you agree with the characterization, amount of your claim, and your claim is not listed as Contingent, Unliquidated, Disputed, you do not need to submit a claim form.

| SCHEDULE F LINE | 3.1.450933 | | | |
|---|---|---|---|---|
| INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED | | | | |
| IS THE CLAIM SUBJECT TO OFFSET? (YES/NO) | Yes | | | |
| | EARN ACCOUNT | CUSTODY ACCOUNT | WITHHELD ACCOUNT | COLLATERAL ON LOAN RECEIVABLE |
| | BTC 0.0501546853753706<br>ETH 5.7316221938941<br>USDT ERC20 510.997149453264 | | | BTC 0.7201954711192093 |

More information about filing your claim can be found in the enclosed Bar Date Notice.