Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### DEBTORS' OBJECTION TO DANIEL A. FRISHBERG'S MOTION FOR RECONSIDERATION OF GK8 SALE AND OTHER REQUESTED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (this "Objection") to *Daniel A. Frishbergs' [sic] Motion for Reconsideration of the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*GK8 Sale and Other Requested Relief* [Docket No. 1794] (the "Motion").[2] In support of this Objection, the Debtors state the following:

**Preliminary Statement**

1. The Motion is untimely, meritless, and should be denied. The Motion does not present "new evidence," nor does it highlight any "fraud." Simply put, the Motion is a compilation of misunderstandings and inaccurate statements regarding the GK8 Debtors' referral arrangements with both Aon and USI, which the Debtors repeatedly explained to Mr. Frishberg. Despite this clarification, and after receiving both insurance policies disclosed by the GK8 Debtors,[3] Mr. Frishberg continues to allege that the Debtors are concealing "substantial assets" and committing "bankruptcy fraud." To the contrary, the Motion is nothing more than a baseless attack on a sale transaction that has already been approved.[4]

2. The Motion incorrectly alleges that the Debtors have valuable insurance policies from Aon and USI being sold to Galaxy that could benefit the Debtors' retail account holders. The Motion also misunderstands the arrangement between the GK8 Debtors and insurance brokers Aon and USI, pursuant to which the GK8 Debtors referred their institutional customers to Aon or USI as a broker, who offered to try to facilitate the customers' purchase of insurance for their cryptocurrency holdings on the GK8 Debtors' platform from third-party insurers. The Debtors never obtained insurance coverage from Aon or USI. Contrary to the Motion's confused

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Order (as defined herein), the Ferraro Declaration (as defined herein), or the Bidding Procedures Order (as defined herein), as applicable.

[3]  *See Debtors' Motion for Entry of an Order (I) Applying Certain Orders in the Initial Debtors' Chapter 11 Cases to GK8 Ltd., GK8 USA LLC, and GK8 UK Limited and (II) Granting Related Relief* [Docket No. 1626].

[4]  The Motion also requests various forms of relief that are outside the scope of the Motion's alleged purpose of reconsidering the Sale (as defined herein).

allegations, no insurance policies are being sold pursuant to the GK8 sale from which the Debtors' account holders may recover.

3. Furthermore, what the Motion characterizes as "new evidence" is instead information that was available on the GK8 Debtors' website well in advance of the December 6, 2022, deadline to object to the GK8 sale, which Mr. Frishberg's various filings acknowledge.[5] The Motion also fails to present any evidence—let alone clear and convincing evidence—of fraud. To the contrary, the Motion acknowledges that the referral arrangement was conspicuously displayed on the GK8 Debtors' website.[6] The insurance coverage is for theft or loss of digital assets on *GK8's platform*—thus, even if such insurance coverage existed, it would not provide any recovery to the Debtors' account holders.

4. As set forth in the Kielty Declaration and as presented to the Court, the sale of the GK8 Assets is a value-maximizing transaction amidst the backdrop of a tumultuous period in the cryptocurrency industry. Mr. Frishberg's misunderstanding of the referral arrangements—which he alleges constitute concealment and fraud—should not be countenanced.

## Background

### A.    The GK8 Business

5. In October 2021, the Initial Debtors[7] expanded their business by purchasing Debtor GK8 Ltd., an Israeli company, for $115 million. The GK8 Debtors provide a digital, self-custody

---

[5] *See, e.g.*, *Declaration and Verified Exhibits in Support of Daniel A. Frishberg's Motion for Reconsideration of GK8 Sale and Other Requested Relief* [Docket No. 1826] ¶¶ 4–9 (acknowledging information regarding the referral arrangement with Aon and USI was on the GK8 Debtors' website as early as May 29, 2022).

[6] *See id.*

[7] The Debtors that filed voluntary petitions on July 13, 2022, are: Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network Inc.; Celsius Network Limited; Celsius Networks Lending LLC; and Celsius US Holding LLC (collectively, the "Initial Debtors").

3

platform for financial and cryptocurrency institutions to securely manage and store blockchain-based assets by providing a market leading "cold" storage platform for crypto assets. GK8's patented technology utilizes the industry's "Cold Vault," which can create, sign, and send blockchain transactions without connecting to the internet. Moreover, this patented technology is paired with proprietary multi-party computation to achieve "cold" security with "hot" functionality.

### B. The GK8 Debtors' Arrangement with Aon plc and USI Insurance Services

6. The GK8 Debtors' referral relationship with Aon plc ("Aon") predates the Initial Debtors' acquisition of the GK8 Debtors in October 2021. *See* Workman Declaration ¶ 4. Pursuant to that arrangement, the GK8 Debtors referred their institutional customers to Aon (as broker), which, in turn, facilitated the underwriting of insurance policies between the GK8 Debtors' customers and certain insurers in the London insurance market. *See id.* GK8's customers are those institutional customers that stored cryptocurrency on GK8's proprietary platform—*i.e.*, not the Debtors' retail account holders such as Mr. Frishberg.

7. Any customer of the GK8 Debtors referred to Aon under this arrangement was required to complete an independent application with the underwriting insurance company. *See id.* Those applications would be reviewed by the respective insurer's underwriting team, and the respective insurance company reserved the right, in its sole discretion, to issue any policies to any referred customer. *See id.* At the time the referral arrangement was implemented between the GK8 Debtors and Aon, Aon advised the GK8 Debtors that their customers could potentially access up to $500 million in coverage in the London insurance market, which was subsequently increased to $750 million. *See id.* at ¶ 5.

8. In October 2022, the GK8 Debtors entered into a similar arrangement with another insurance broker, USI Insurance Services ("USI"). *See id.* at ¶ 6. Under this arrangement with

4

USI, the GK8 Debtors refer their customers to USI, which, in turn, facilitates the customer's ability to procure insurance via third-party insurers against theft of their assets on the GK8 Debtors' platform. *See id.*

9. The Aon and USI referral arrangements were established so that the GK8 Debtors' institutional customers had an opportunity to purchase insurance for their cryptocurrency assets held on the GK8 Debtors' platform. In no way, however, do these referral arrangements provide insurance coverage for losses held by retail customers on the Celsius platform. What is more, the GK8 Debtors are not selling any insurance policies from which the Debtors' account holders could recover because no such insurance policy exists.

### C. The GK8 Sale

10. On July 25, 2022, the Initial Debtors filed the *Debtors' Motion Seeking Entry of (I) an Order (A) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Bid Protections, (E) Approving Contract Assumption and Assignment Procedures, (II) an Order Authorizing the Debtors to Enter Into a Definitive Purchase Agreement, and (III) Granting Related Relief* [Docket No. 188], which sought approval of certain bidding procedures for the sale (the "Sale") of the GK8 assets (the "GK8 Assets") and the entry into a definitive purchase agreement for the Sale.

11. On September 1, 2022, the Court entered the *Order (I) Approving Bidding Procedures for the Potential Sale of Certain of the Debtors' Assets, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [Docket No. 687] (the "Bidding Procedures Order") approving bidding procedures for the Sale.

5

12. On December 2, 2022, the Debtors filed the *Notice of a Successful Bidder* [Docket No. 1549], which designated Galaxy Digital Trading LLC ("Galaxy") as the Successful Bidder. Contemporaneously therewith, the GK8 Debtors and Galaxy executed the asset purchase agreement (the "APA") memorializing the terms of the Successful Bid. *See Notice of Filing Asset Purchase Agreement* [Docket No. 1586]. The APA provides $44,100,000 of aggregate deal consideration equal to (a) the assumption of Assumed Liabilities and (b) a cash payment of $44,000,000. The APA contemplates the purchase of all GK8 Assets free and clear of any liens or encumbrances, the assumption of liabilities associated with the GK8 Assets and all other liabilities of the GK8 Debtors' business and excludes customer-related liabilities that may potentially be asserted against the GK8 Debtors' business arising under Celsius' terms of use.

13. In support of the Sale, on December 6, 2022, the Debtors filed the *Declaration of Ryan Kielty in Support of Entry of an Order (I) Approving the Sale of the Debtors' GK8 Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (III) Assume and Assign Certain Executory Contracts and Unexpired Lease, and (IV) Granting Related Relief* [Docket No. 1622] (the "Kielty Declaration").

14. The deadline to object to the Sale was set to December 6, 2022, at 4:00 p.m. (prevailing Eastern Time). Mr. Frishberg did not object to the Sale by the objection deadline.

15. On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of the GK8 Debtors' chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief*

6

*Financial Officer of GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629] (the "Ferraro Declaration").

16. On December 8, 2022, the Court held a hearing to approve the Sale and instructed the Debtors to submit a memorandum of law and evidentiary support detailing the extent to which certain avoidance actions are to be sold under the APA.

17. On December 12, 2022, the Debtors filed the *Debtors' Statement in Support of Entry of the Order (I) Approving the Sale of the GK8 Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Authorizing the GK8 Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1671] and the *Declaration Of Holden Bixler in Support of the Order (I) Approving the Sale of the GK8 Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Authorizing the GK8 Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1672].

18. On December 13, 2022, the Court entered the *Order (I) Approving the Sale of the GK8 Debtors' Assets Free And Clear Of All Claims, Liens, Rights, Interests And Encumbrances, (II) Authorizing the GK8 Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1686] (the "Sale Order"), which, among other things, approved the Sale and authorized the Debtors to enter into the APA.

7

19. On January 4, 2022, Mr. Frishberg filed the Motion, which requests that the United States Bankruptcy Court for the Southern District of New York (the "Court") reconsider the Sale Order. Contemporaneously herewith, the Debtors filed the *Declaration of Melissa Workman in Support of Debtors' Objection to Daniel A. Frishberg's Motion for Reconsideration of GK8 Sale and Other Requested Relief* (the "Workman Declaration").

**Objection**

**I.    Mr. Frishberg Fails to Satisfy the Legal Standard Under Federal Rule of Civil Procedure 60(b).**

20. The purported legal basis for the Motion is Federal Rule of Civil Procedure 60(b) (the "Federal Rules"). *See* Motion at 5–6. Bankruptcy courts view a motion seeking relief pursuant to Federal Rule 60(b) as an extraordinary remedy. *See, e.g.*, *Pettle v. Bickham (In re Pettle)*, 410 F.3d 189, 191 (5th Cir. 2005) ("relief under Rule 60(b) is considered an extraordinary remedy . . . [and that] the desire for a judicial process that is predictable mandates caution in reopening judgments.") (internal citations omitted); *see also* 10 Collier on Bankruptcy P 9024.05 (16th 2022) ("It has generally been held that a Rule 60(b) motion, at least in the context of bankruptcy cases, is an extraordinary remedy and that the grant or denial of such a motion may be reviewed only for an abuse of discretion."). In addition to being meritless, the Motion fails to satisfy the high burden of Federal Rule 60(b).

**A.    The Motion Does Not Present Newly Discovered Evidence or Fraudulent Conduct.**

21. Pursuant to Federal Rule 60, newly discovered evidence must be evidence that, "with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." *See* Federal Rule 60(b)(2); *see also Atlantic States Legal Found., Inc. v. Karg Bros., Inc.*, 841 F. Supp. 51, 55–56 (N.D.N.Y. 1993) ("newly discovered evidence" must be in fact newly discovered or could not have been discovered by due diligence). "The burden of proof is on the

8

party seeking relief from the judgment." *In re Koper*, 552 B.R. 208, 216 (Bankr. E.D.N.Y. 2016) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Moreover, "[w]hether a motion for relief under Fed. R. Civ. P. 60(b) should be granted is subject to the sound discretion of the court." *In re Koper*, 552 B.R. at 216 (quoting *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir.2012); *In re Taub*, 421 B.R. 37, 42 (Bankr.E.D.N.Y.2009)).

22. The "new evidence" is information that, with "reasonable diligence," would have been available to Mr. Frishberg prior to the objection deadline, which Mr. Frishberg acknowledges[8]—the date of Mr. Frishberg's discovery of this information is irrelevant.[9]

23. Furthermore, the referral arrangements were conspicuously displayed on the GK8 Debtors' website and indicated insurance coverage may be available for purchase by customers of GK8 (*i.e.*, institutional customers that stored cryptocurrency on GK8's platform), from Aon and USI, as applicable. *See* Workman Declaration ¶ 7. Specifically, it was not the GK8 Debtors (or the Initial Debtors) that obtained insurance coverage from Aon or USI—rather, it was the GK8 Debtors' institutional customers who had the opportunity to purchase insurance to insure their cryptocurrency against theft or loss on the GK8 Debtors' platform. *See id.* at ¶¶ 4, 6. In other words, pursuant to the Sale, the GK8 Debtors are not selling any insurance policies from which the Debtors' account holders could recover—the GK8 Debtors do not have such a policy.

24. Mr. Frishberg also argues that the Debtors may have committed "bankruptcy fraud" by failing to disclose the Aon and USI insurance policies. *See* Motion at 5. The burden of proof to establish fraud exists rests solely with Mr. Frishberg, who must show that the Sale was

---

[8] *See, e.g.*, *Declaration and Verified Exhibits in Support of Daniel A. Frishberg's Motion for Reconsideration of GK8 Sale and Other Requested Relief* [Docket No. 1826] ¶¶ 4–9 (acknowledging information regarding the referral arrangement with Aon and USI was on the GK8 Debtors' website as early as May 29, 2022).

[9] *See, e.g.*, Motion at 3 ("New evidence has emerged related to the sale of GK8, as described in the *Declaration of Dr. Jonathan Levy . . .* when I obtained it on December 23, 2023 [sic].").

9

fraudulent by clear and convincing evidence. *See, e.g., In re Koper*, 560 B.R. at 76 ("to prevail under Rule 60(b)(3), the movant must demonstrate by clear and convincing evidence that the order or judgment from which relief is sought was procured by fraud, misrepresentation or other misconduct."); *see also* 11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2860 (3d ed.) ("the burden of proof of fraud is on the moving party and that fraud must be established by clear and convincing evidence."). The Court has broad discretion in deciding Federal Rule 60(b)(3) motions, and such motions are typically denied if they are merely an attempt to relitigate the case or if the Court otherwise concludes, as is most commonly true, that fraud or misrepresentation or other misconduct has not been established. *See generally* 11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2860 (3d ed.) (internal citation omitted). The underlying insurance policies that Mr. Frishberg uses as the basis for his argument do not exist, and the referral arrangements were conspicuously disclosed on the GK8 Debtors' website. *See* Workman Declaration ¶ 7. Mr. Frishberg misunderstands the referral program despite the Debtors' repeated explanations. Moreover, the insurance coverage is for theft or loss of digital assets on GK8's platform—thus, even if such insurance coverage existed (which it does not), it would not provide any recovery to the Debtors' account holders. As a result, the Motion fails to meet its burden under Federal Rule 60.

**II.     The GK8 Sale Is a Sound Exercise of the Debtors' Business Judgment.**

25.     The "business judgment" rule is not an unduly strict standard; it merely requires showing that the decision to sell the property outside the ordinary course of business was based on the debtor's sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that judge determining a 363(b) application must find a good business reason to grant such application); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the

10

ordinary course of business); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "good business reason"); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

26. The "business judgment" rule also shields a debtors' decisions from judicial second guessing. *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a Debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth); *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (stating "the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company,'" and has continued applicability in bankruptcy) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

27. The Debtors have satisfied the business judgment standard. Indeed, the Debtors generated approximately $44 million for their estates, which is particularly notable given the precarious conditions currently facing the cryptocurrency industry. *See* Kielty Declaration ¶ 14–15 ("Given the challenging circumstances of these chapter 11 cases, the adequacy and fair value of the Purchase Price and the steep decline in technology, fintech and crypto related asset prices since the Debtors' purchase of GK8 in November 2021, I believe that the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment."). Furthermore, the Court concluded that the Sale constituted "a valid and sound exercise of the Debtors' business judgment." Sale Order at 4; *see also* Oct. 8, 2022, H'rg Tr. 81: 4–8 ("[The Court] think[s] that the [Kietly] Declaration, which has come into evidence, ECF 1622, demonstrates that the sale price of the

assets of these three Debtors is fair and reasonable and it is, in the Court's view, a value maximizing transaction.").

28. The Sale provides the highest and best value to the Debtors' estates. Despite challenging market conditions, the purchase price is the result of a comprehensive marketing process beginning in June 2022 through December 2022 and extensive, hard-fought negotiations with Galaxy. *See* Kielty Declaration ¶ 7. Accordingly, the Motion should be denied.

**III.    The Remaining Relief Requested in the Motion Is Not Warranted.**

29. The Motion also requests that the Court (a) require the Office of the United Sates Trustee and the United States Department of Justice investigate the Debtors for fraud relating to the (non–existent) insurance policies, (b) require appraisal of the (non–existent) insurance policies, (c) either appoint an examiner or broaden the current examiner's scope to investigate the (non–existent) insurance policies, and (d) determine that account holders may assert claims against the GK8 Debtors. Each of these requests is either outside the scope of the Sale or otherwise unwarranted.

### Conclusion

30. For the reasons set forth herein, the Motion, in addition to being meritless, is procedurally deficient and should be denied.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter an order denying the Motion and such other and further relief as may be just or proper.

| | |
|---|---|
| New York, New York<br>Dated: January 17, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900<br>Email:  jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:  (312) 862-2000<br>Facsimile:  (312) 862-2200<br>Email:  patrick.nash@kirkland.com<br>ross.kwasteniet@kirkland.com<br>chris.koenig@kirkland.com<br>dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |