**Hearing Date: January 24, 2023, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: January 17, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| | **Re Docket Nos.: 1346, 1508, 1510, 1512, 1814, 1816** |

## DEBTORS' OMNIBUS OBJECTION TO CERTAIN MOTIONS SET FOR THE JANUARY 24, 2023 OMNIBUS HEARING

The above-captioned debtors and debtors in possession (collectively, the "Debtors" and

together with their non-debtor affiliates, collectively, "Celsius") file this omnibus objection

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "Objection") to certain motions (the "Motions")[2] to be heard at the January 24, 2023 hearing

before the United States Bankruptcy Court for the Southern District of New York (the "Court").

In support of this Objection, the Debtors state the following:

**Preliminary Statement**

1.    On January 4, 2023, the Court entered the *Memorandum Opinion and Order*

*Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Opinion"), granting

the relief requested in the Stablecoin Motion and ruling generally "that the Terms of Use formed

a valid, enforceable contract between the Debtors and Account Holders, and that the Terms

unambiguously transfer title and ownership of Earn Assets deposited into Earn Accounts from

Accounts Holders to the Debtors."  Earn Opinion p. 30.[3]  This "broadly applicable ruling" resolved

dozens of pleadings filed in response to the Stablecoin Motion, but left open certain fact-intensive

defenses for the claims process.  Earn Opinion p. 43.

---

[2]    The Motions are:  (a) *Kulpreet Khanuja's Verified Motion Seeking to Preserve My Right for Determination that My Personal Earn Program Assets Receive the Same Standing as Custody Accounts and Are not Property of these Estates and Request for Hearing* [Docket No. 1346] (the "Original Khanuja Motion"); (b) *Kulpreet Khanuja's Amended Verified Motion Seeking to Preserve My Right for Determination that My Personal Earn Program Assets Receive the Same Standing as Custody Accounts and Are not Property of these Estates and Request for Hearing* [Docket No. 1816] (the "Amended Khanuja Motion"); (c) *Rebecca Gallagher's Motion Seeking a Ruling that Ownership of All the Coins She Deposited into the Celsius Earn Platform Belong to Her and not the Debtors, and that She Retains All Rights of Title Due to Fraudulent Misrepresentation, Oral Modification to the Terms of Service, the Terms of Service Being Ambiguous and not Plain, and because Celsius Was Operating Illegally by Selling Unregistered Securities* [Docket No. 1508] (the "Gallagher Motion"); (d) M*arc Benzaken's Motion Seeking a Ruling from this Court that the Assets in His Earn and Custody Account are not Property of the Estate Under 11 USC § 541* [Docket No. 1510] (the "Marc Benzaken Motion"); (e) *Michael Benzaken's Motion Seeking a Ruling from this Court that the Stablecoins and Assets His Earn Accounts are not Property of the Estate [sic], that the Assets and Collateral on His Account are also not Property of the Estate, and that All of the Digital Assets Held Within His Earn Account Be Recatergorized [sic] and Treated No Differently than those Assets Held Within His Custody Accounts Under 11 USC § 541.* [Docket No. 1512] (the "Original Michael Benzaken Motion"); and (f) *Michael Benzaken's Amended Motion Seeking a Ruling from this Court that the Stablecoins are not Property of the Esate [sic], that the Assets and Collateral in His Earn Account are not Property of the Estate, and that All of the Assets Held Within His Earn Account Ought Not Be Treated Differently than those Assets Held Within Custody Accounts Under 11 USC § 541.* [Docket No. 1814] (the "Amended Michael Benzaken Motion").

A summary of all of the Motions filed and the Debtors' high-level objections thereto are provided in the objection chart attached hereto as **Exhibit A** (the "Objection Chart").

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Earn Opinion.

2.       The Motions—which were filed in connection with the Stablecoin Motion as affirmative motions rather than responsive pleadings—raise a variety of arguments, many of which are directly addressed by the Earn Opinion, and some of which are fact intensive and best reserved for resolution in connection with the claims process.  To streamline their objections to the Motions, the Debtors have prepared the Objection Chart, which summarizes each of the Motions and categorizes their arguments in accordance with this framework:

- *"Earn Opinion" Arguments*:  Arguments that were directly resolved in the Debtors' favor in the Earn Opinion and can therefore not serve as a basis for granting the Motions.  The Debtors request that any requests for relief based solely on "Earn Opinion" arguments be denied for that reason.

- *Fact-Specific Arguments*:   Arguments specific to individual Account Holders' circumstances.  The Debtors provide preliminary objections to such arguments in the Objection Chart (where possible in the absence of discovery) but generally reiterate their earlier position, recognized in the Earn Opinion, that such matters are best resolved in connection with the claims process.  *See* Earn Opinion p. 30 ("Account Holders have unsecured claims against the Debtors . . . [t]he amount of [which] is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by Account Holders, including breach of contract, fraud or other theories of liability.").

- *Custody Arguments*:  Arguments that raise contract interpretation issues not addressed in connection with the Stablecoin Motion, generally arguing that digital assets should have been placed in Custody accounts, rather than Earn Accounts.  The legal merits of such arguments are addressed in greater detail herein.

3.       The January 24, 2023 hearing is not an evidentiary hearing.  *See Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] Exhibit 1 ¶ 5 ("With respect to any Court Filing, if Objections are filed, the Omnibus Hearing shall not be deemed an evidentiary hearing at which witnesses may testify unless the Proposed Hearing Agenda provides otherwise, provided that parties in interest may make a request to the Court by email (and by copying the opposing party) that such hearing be an evidentiary hearing. Additionally, any Court Filing requesting or requiring

the Court to make a factual finding must be supported by competent evidence (*e.g.*, declarations, affidavits, and/or exhibits).”); *see also Order Denying Daniel Frishberg's Request for an Evidentiary Hearing on January 24, 2023* [Docket No. 1828] (denying one creditor's request for the January 24 hearing to be an evidentiary hearing).  For the avoidance of doubt, the Debtors object to the sufficiency of the evidentiary basis for each of the Motions, which generally reference alleged misrepresentations and highlight potentially distinguishing circumstances but do not provide evidence sufficient to support the relief requested or “connect the dots” to provide a full picture of the implications of those facts.  Further, as detailed in the Objection Chart, the contract defenses raised in the Motions fail to meet the heightened pleading standards required of such defenses.[4]  The Debtors recognize that the Motions were filed prior to the release of the Earn Opinion, which established a baseline that Earn Assets are the Debtors' assets and signaled that creditors will likely receive ***claims*** for any fact-specific defenses or breaches they establish. *See* Earn Opinion p. 43 (“Even valid contract defenses would not necessarily give rise to Account Holders claims to ownership of the cryptocurrency assets they deposited.”); *id.* at 30 (“Account Holders have unsecured claims against the Debtors . . . [t]he amount of [which] is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by Account Holders, including breach of contract, fraud or other theories of

---

[4]    To state a claim for fraudulent inducement under New York law, a plaintiff must allege: “a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury.” A claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule Civil Procedure 9(b), which requires that a party “state with particularity the circumstances constituting fraud.”  *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017).  A finding of unconscionability requires evidence of exceptional facts and circumstances.  Under New York law, an unconscionable contract is one which “is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms.”  *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).  Unconscionability generally requires that the contract was both procedurally and substantively unconscionable at the time of formation—*i.e.*, “some showing of an ‘absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.’”  *Id.*

liability."). The Debtors make these procedural points not to try to call out *pro se* plaintiffs on technicalities, but to further support the Debtors' position that their estates and all parties in interest will benefit from resolving these matters through a streamlined claims process.

4.       For these reasons, and as more fully set forth herein and in the Objection Chart, the Motions should be denied.

### **Background**

5.       On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.       The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53]. On July 27, 2022, the U.S. Trustee appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee"). On September 14, 2022, the Court entered an order authorizing the appointment of an examiner [Docket No. 820].

7.       On November 11, 2022 the Debtors filed the *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1325] (the "Stablecoin Motion"). The Debtors received dozens of responses to the Stablecoin Motion. On December 2, 2022, the Debtors filed the *Debtors' Reply in Support of Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1578].

8.       On December 5, 2022 the Court heard arguments regarding the Stablecoin Motion. On January 4, 2023, the Court issued the Earn Opinion, holding, *inter alia*, "that the Terms of Use

formed a valid, enforceable contract between the Debtors and Account Holders, and that the Terms unambiguously transfer title and ownership of Earn Assets deposited into Earn Accounts from Accounts Holders to the Debtors." Earn Opinion p. 30. In the Earn Opinion, the Court reserved ruling on "individual circumstances that present colorable contract defense claims that may have merit in the claims resolution process, but do not bear on the question of title and ownership presented in the Amended Motion," noting that "[e]ven valid contract defenses would not necessarily give rise to Account Holder claims to ownership of the cryptocurrency assets they deposited." Earn Opinion p. 43.

9.        On January 6, 2023, the Court entered the *Order Denying Kwok Mei Po's Motion Seeking a Ruling of Full Ownership of Funds* [Docket No. 1833] (the "Kwok Order"). The Kwok Order resolved Kwok Mei Po's motion [Docket No. 877], which raised breach-based arguments concerning the ownership of assets Ms. Mei Po transferred onto the Debtors' platform. The Kwok Opinion provided:

> "Any claim [] that Celsius breached its contract . . . or otherwise committed actionable wrongs by blocking or suspending [their] accounts would not affect the ownership of cryptocurrency deposited in [their] Earn Accounts. As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius. If [a creditor] believes [they have] compensable claims against Celsius (beyond the amount on deposit in [their] accounts) based on improperly suspending or freezing [their] accounts, or failing to return funds upon closing [their] accounts, [they] can file a proof of claim and assert such claims in the claims-allowance process. But the cryptocurrency in [a creditor's] Earn Accounts was and remains property of the estate." *Id.*

## Objection

**I.      The Relief Requested in the Motions Is Contrary to the Earn Opinion and Should Be Denied.**

10.       Subject to the reservation of rights for individuals to assert contract defense claims, the Earn Opinion broadly provides that the Earn Assets are property of the Debtors' estates. Further, the Earn Opinion and the Kwok Order suggest that any breach of the Terms of Use by

Celsius would result in general unsecured claims rather than a remedy that would provide Account

Holders with ownership of the Earn Assets.  For these reasons, the requests in the Motions for a

return of assets should be denied.

> **A.** **The Terms of Use Are a Valid Contract That Unambiguously Transfer Title and Ownership of Earn Assets to Celsius and Extrinsic Evidence Is Impermissible.**

11.     The Motions generally assert that Earn Assets are owned by the Account Holders

who transferred them to the Debtors.  The Earn Opinion establishes the opposite as a baseline—

the Debtors have all right and title to the Earn Assets.  *See id*. pp. 39–40 ("Terms Version 5

introduced the transfer of title clause that has been the subject of scrutiny in this matter.  Every

version of the Terms of Use beginning with Terms Version 5 includes a clause that Account

Holders "grant Celsius . . . all right and title to such Digital Assets, including ownership rights."

Account Holders who agreed to Terms of Use Version 5 or later, whether by signing up for the

first time or by continuing to use the platform with an existing account, entered a contract which

contained unambiguous and clear language regarding transfer of title and ownership of assets in

Earn Accounts. . . . The Account Holders argue that a layperson's understanding of the term "loan"

means the Account Holder retains ownership of their Earn Assets but temporarily allows the use

of the assets by the Debtors—but the Court cannot ignore the plain and clear language in the

Transfer of Title Clause." (internal citations omitted)); *see also id*. p. 44 ("[T]he Court finds that

there was a valid contract between Celsius Account Holders and Celsius and that the contract terms

unambiguously transferred all right and title of digital assets to Celsius.").

12.     Further, because the Terms of Use are unambiguous, it is improper to consider

extrinsic evidence.  *See id*. p. 29 ("Extrinsic evidence of the parties' intent may be considered only

if the agreement is ambiguous.") (citing *W.W.W. Assoc. v Giancontieri*, 77 N.Y.2d 157, 162

(1990)).  Thus, the requests that the Debtors be required to provide (and that the Court consider) tax documents when interpreting the Terms of Use should be denied.

**B.      Any Breach of the Terms of Use by Celsius Gives the Non-Breaching Party an Unsecured Claim Against the Debtors for Damages, Not a Separate Remedy.**

13.      Certain Motions allege that the Debtors breached the Terms of Use, and that as a result the Debtors invalidated the Terms of Use and forfeited any right and title to the Earn Assets. But, as described in the Kwok Order (and previewed in the Earn Opinion), a breach of contract generally only gives rise to a claim for damages.  *See* Kwok Order p. 4 ("Any claim [] that Celsius breached its contract . . . or otherwise committed actionable wrongs . . . would not affect the ownership of cryptocurrency deposited in [their] Earn Accounts.  As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius.  If [a creditor] believes [they have] compensable claims against Celsius (beyond the amount on deposit in [their] accounts) . . . [they] can file a proof of claim and assert such claims in the claims-allowance process. But the cryptocurrency in [a creditor's] Earn Account[] was and remains property of the estate.").  Because the breaches alleged in the Motions were all prepetition, such claims for damages would be general unsecured claims and are best resolved in connection with a broader claims reconciliation process, as contemplated by the Earn Opinion.

14.      Similarly, many of the contract formation defenses reserved for the claims process, if successful, would only lead to general unsecured claims.  *See* Earn Opinion p. 43 ("Even valid contract defenses would not necessarily give rise to Account Holders claims to ownership of the cryptocurrency assets they deposited.").

**II.      Grandfathered Earn Assets Should Be Treated as All Other Earn Assets.**

15.      One of the few arguments in the Motions that is not directly addressed by the Earn Opinion (or an individualized, fact-specific defense reserved for the claims process) is the

argument that "grandfathered" assets (*i.e.*, Earn Assets transferred to the Debtors prior to April 14, 2022 by Account Holders who were only eligible for Custody services following such date) should have been put in Custody accounts and that such Earn Assets should be placed in a Custody account now.  Such arguments fail as a matter of contract law.

16.     More specifically, Mr. Marc Benzaken alleges that he opened his Earn Account and accepted the Terms of Use on June 7, 2021.  Marc Benzaken Motion p. 4.[5]  Mr. Marc Benzaken further alleges that the only other time prior to the Petition Date that he logged into his account was around December 27, 2021, prior to the creation of the Custody Program.  *Id.*  As a result, Mr. Marc Benzaken argues that he is not bound by Terms Version 8 and that, because he is an unaccredited investor, the Earn Assets he transferred to the Debtors should have been transferred into a Custody account for his benefit when he did not manually accept the updated Terms of Use.

17.     As an initial matter, the Earn Opinion rules that the updates to the Terms of Use were legally valid and binding contract modifications for Account Holders that continued to use the Celsius platform.  *See* Earn Opinion p. 33 ("The Terms of Use, beginning with Terms Version 1, provide that (i) the Debtors can unilaterally modify the Terms of Use without notice and (ii) the Account Holders' continued use of the platform following an update constitutes consent to the amended Terms of Use.  The Terms Affidavit and Original Blonstein Declaration provide evidence that the Debtors could modify the contract and that Account Holders' continued use of the platform constituted acceptance of the updated Terms of Use, even if the Account Holders did not affirmatively accept the updated terms." (internal citations omitted)); *id.* p. 38 ("The Court concludes that updates to the Terms of Use constituted valid modifications of the contract that an

---

[5]     For purposes of this Objection, the Debtors are treating Mr. Marc Benzaken's factual assertions regarding his account creation as true.  For the avoidance of doubt, the Debtors reserve all rights and do not concede the truth of any matter asserted in Mr. Marc Benzaken's Motion.

Account Holder entered when they created an account with Celsius.").  As a result, Mr. Marc Benzaken's assertion that he did not accept Terms Version 8 is disputed.  The Court, however, does not need to resolve this issue because Mr. Marc Benzaken's arguments fail on their face regardless of whether he accepted Terms Version 8 or not.

18.     Mr. Marc Benzaken does not point to any language in the Terms of Use providing that the Debtors were supposed to transfer assets from the Earn Program to the Custody Program in the event that an Account Holder did not accept the updated Terms of Use.  In fact, the plain language of the Terms of Use specifically provide the opposite:  "Beginning April 15, 2022 . . . Any eligible digital asset that you loaned to Celsius through the earn service prior to the modification date will continue to earn rewards pursuant to the terms herein, until such time as any such eligible digital asset is thereafter used in a service other than the earn service (e.g., the Swap service, CelPay service, Borrow service, or voluntarily moved to the Custody service) or otherwise withdrawn from your Celsius account (each an "earn service termination event")."  *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018*, filed on August 8, 2022 [Docket No. 393] Exhibit A-8 § 1.

19.     As detailed in the *Supplemental Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of the Debtors, in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin* [Docket No. 1584] (the "Blonstein Declaration"), communications to Account Holders provided an explanation of the changes implemented in Terms Version 8 and the consequences of not accepting them.  *See* Blonstein Declaration ¶ 13–14.  If Mr. Marc Benzaken did not affirmatively accept Terms Version 8, he would have been precluded from accessing Celsius' services and from earning rewards but his

account would not have been automatically cancelled or transferred, a fact he was informed of up front. *See id.* ¶ 12 ("Custody-Eligible Users who did not affirmatively accept Terms [] Version 8 were immediately precluded from accessing any of Celsius' services, and their account balances no longer earned rewards."). Instead, Mr. Marc Benzaken's account would remain frozen until he contacted Celsius to either affirmatively agree to Terms Version 8 or, alternatively, to withdraw funds and cancel his account. *See id.* ¶ 14 ("If you do not agree to our updated Terms of Use, please contact Celsius support to withdraw your funds and close your account.") (internal citations omitted).

20.      Notwithstanding the foregoing, Mr. Marc Benzaken's argument is that, in the absence of his manual consent to the Debtors' most recent terms of use (which created the Custody Program), the Debtors should have replaced his contract with an entirely new contract (transferring his account balance to a Custody Program account) rather than maintaining the status quo of his relationship with the Debtors under his existing contract (the Terms of Use). This position is not supported by the Earn Opinion and has no basis in contact law—had the Debtors done what Mr. Marc Benzaken suggests, the Debtors may very well have been in violation of the Terms of Use. As a result, these arguments must fail. But, as the Kwok Order suggests, even if Mr. Marc Benzaken's argument succeeds, the result is a breach of contract by Celsius that grants him a claim for damages to be reserved for resolution in connection with the claims process. *See supra* Part I.B.

## Conclusion

21.      For the reasons set forth herein, including the Objection Chart, the Debtors request that the Court deny the Motions.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter an order denying the Motions.

New York, New York
Dated: January 17, 2023

_/s/ Joshua A. Sussberg_

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted _pro hac vice_)
Ross M. Kwasteniet, P.C. (admitted _pro hac vice_)
Christopher S. Koenig
Dan Latona (admitted _pro hac vice_)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

_Counsel to the Initial Debtors and Debtors in
Possession_

_Proposed Counsel to the GK8 Debtors and Debtors in
Possession_

**<u>Exhibit A</u>**

**Objection Chart**

**In re Celsius Network LLC, et al., Case No. 22-10964 (MG)**

**CHART OF MOTIONS AND OBJECTIONS[1]**

*The following chart summarizes the Motions and provides high-level objections thereto in light of the Earn Opinion and Kwok Order.*

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| Rebecca Gallagher ("Gallagher") [Docket No. 1508] (the "Gallagher Motion") | 1. The assets Gallagher deposited belong to her because the Terms of Use are not legally valid due to Alex Mashinsky's fraudulent misrepresentations. Gallagher relied on Alex Mashinsky's fraudulent representations when depositing and storing her digital assets on the Celsius platform. | 1. All creditor rights with respect to claims such as "fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable" are reserved for the claim resolution process. Earn Opinion p. 43.<br><br>Further, to state a claim for fraudulent inducement under New York law, a plaintiff must allege: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." A claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule Civil Procedure 9(b), which requires that a party "state with particularity the circumstances constituting fraud." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017). The Gallagher Motion fails to meet this heightened standard. |
| | 2. The Company's lies and misrepresentations render the Terms of Use unconscionable. | 2. All creditor rights with respect to claims such as "fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable" are reserved for the claim resolution process. Earn Opinion p. 43.<br><br>Further, a finding of unconscionability requires evidence of |

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Objection or Earn Opinion, as applicable.

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | | exceptional facts and circumstances. Under New York law, an unconscionable contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). Unconscionability generally requires that the contract was both procedurally and substantively unconscionable at the time of formation—*i.e.*, "some showing of an 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Id.* The Gallagher Motion fails to meet this heightened standard. |
| | 3. The digital assets Gallagher deposited belong to her because Mashinsky orally modified the Terms of Use in various AMA videos and interviews. | 3. The Court explained in the Earn Opinion that advertisements generally cannot modify a contract. *See* Earn Opinion p. 37 ("These videos are not submitted into evidence and not considered by the court; second, even if these videos are submitted into evidence, advertisement and similar statements generally do not constitute offer and any offer is a necessary predicate for any 'amendment to the terms of use.'"). |
| | 4. The digital assets Gallagher deposited belong to her because the Terms of Use are ambiguous. | 4. The Court ruled in the Earn Opinion that the Terms of Use are unambiguous. *See* Earn Opinion p. 39. ("Terms Version 5 introduced the transfer of title clause that has been the subject of scrutiny in this matter. Every version of the Terms of Use beginning with Terms Version 5 includes a clause that Account Holders "grant Celsius . . . all right and title to such Digital Assets, including ownership rights" (the "Transfer of Title Clause"). (Terms Affidavit, Ex. A-5 § 14, A-6 § 13, A-7 § 13, A-8 § 13.) Account Holders who agreed to Terms of Use Version 5 or later, whether by signing up for the first time or by continuing to use the |

2

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | | platform with an existing account, entered a contract which contained unambiguous and clear language regarding transfer of title and ownership of assets in Earn Accounts."). |
| | 5.  The coins Gallagher deposited belong to her because users were forced into accepting the Terms of Use passively, by default and through trickery. | 5.  The Court ruled in the Earn Opinion that the pop-up notices met the standard of "clear and conspicuous," so that "updates to the Terms of Use constituted valid modifications of the contract that an Account Holder entered when they created an account with Celsius." Earn Opinion pp. 36, 38; *see also id.* p. 33 ("The law in the Second Circuit is clear that clickwrap contracts such as the Terms of Use are valid and binding. The Debtors have sufficiently shown the mutual assent element of contract formation."). |
| | 6.  Celsius does not have a valid legal claim to ownership of Gallagher's digital assets because Celsius states it is not a Bank and does not hold any banking licenses. | 6.  The Court ruled in the Earn Opinion that the Terms of Use are a valid contract that transferred right and title of the Earn Assets to Celsius. *See* Earn Opinion p. 44 ("[T]he Court finds that there was a valid contract between Celsius Account Holders and Celsius and that the contract terms unambiguously transferred all right and title of digital assets to Celsius."). |
| | 7.  Celsius does not have a valid legal claim to ownership of Gallagher's digital assets because Celsius breached the contract through various actions. | 7.  As the Court held for a similarly situated Earn Account holder in the Kwok Order, any claim by Earn Account holders "that Celsius breached its contract . . . or otherwise committed actionable wrongs . . . would not affect the ownership of cryptocurrency deposited in [their] Earn Accounts." Kwok Order p. 4. "As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius.   If [a creditor] believes [they have] compensable claims against Celsius (beyond the amount on deposit in [their] accounts) . . . [they] can file a proof of claim and assert such claims in the claims-allowance process. But the |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | | cryptocurrency in [a creditor's] Earn Account[] was and remains property of the estate." *Id.* |
| | 8. The Terms of Use are not a valid contract because Celsius did not provide adequate notice and information when modifying the Terms of Use. | 8. The Court ruled in the Earn Opinion that the modifications to the Terms of Use were valid contract modifications. *See* Earn Opinion p. 33 ("The Terms of Use, beginning with Terms Version 1, provide that (i) the Debtors can unilaterally modify the Terms of Use without notice and (ii) the Account Holders' continued use of the platform following an update constitutes consent to the amended Terms of Use. The Terms Affidavit and Original Blonstein Declaration provide evidence that the Debtors could modify the contract and that Account Holders' continued use of the platform constituted acceptance of the updated Terms of Use, even if the Account Holders did not affirmatively accept the updated terms.") (internal citations omitted); *see also id.* p. 38 ("The Court concludes that updates to the Terms of Use constituted valid modifications of the contract that an Account Holder entered when they created an account with Celsius."). |
| | 9. The Terms of Use is an illegal contract because Celsius doesn't have money transmitter licenses and Earn Assets are unregistered securities. | 9. All creditor rights with respect to claims such as "fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable" are reserved for the claim resolution process. Earn Opinion p. 43; *see also id.* p. 31 ("The Court makes no determination as to these security issues but notes that if Earn Assets are determined to be securities, it is likely that Earn Account holders would still be unsecured creditors. Section 510(b) of the Bankruptcy Code subordinates claims "arising from" the purchase or sale of a security to the claims of general unsecured creditors. 11 U.S.C. § 510(b). Thus, here to the extent that creditors argue that they have recission claims for the unlawful sale of security, these claims would likely |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | | squarely fall within the broad reach of section 510(b)'s claim 'arising from' the purchase or sale of a security. 11 U.S.C. § 510(b); *see In re Worldcom, Inc.*, 329 B.R. 10, 14 (Bankr. S.D.N.Y. 2005) ("So long as the nature of the damage or harm complained of by a shareholder can be said to result as a consequence of his having purchased or sold share of stock or other securities of the debtor, the claimant falls within the scope of Section 510(b).").). |
| Marc Benzaken [Docket No. 1510] (the "Marc Benzaken Motion") | 1. Marc Benzaken alleges he set up his account on June 7, 2021, and that he never consented to any other version of the Terms of Use after that day.  Thus, he alleges his account is governed by Terms of Use Version 7 and that Terms of Use Version 7 does not transfer ownership of the digital assets to the Debtors. | 1. The Court ruled in the Earn Opinion that the Terms of Use unambiguously transfer right and title to Celsius. *See* Earn Opinion p. 39. ("Terms Version 5 introduced the transfer of title clause that has been the subject of scrutiny in this matter. Every version of the Terms of Use beginning with Terms Version 5 includes a clause that Account Holders "grant Celsius . . . all right and title to such Digital Assets, including ownership rights" (the "Transfer of Title Clause"). (Terms Affidavit, Ex. A-5 § 14, A-6 § 13, A-7 § 13, A-8 § 13.) Account Holders who agreed to Terms of Use Version 5 or later, whether by signing up for the first time or by continuing to use the platform with an existing account, entered a contract which contained unambiguous and clear language regarding transfer of title and ownership of assets in Earn Accounts."). |
| | 2. As an unaccredited investor, failure to accept Terms of Use Version 8 should have led to the transfer of account assets from Earn to Custody. | 2. The Court ruled in the Earn Opinion that the modifications to the Terms of Use were valid contract modifications. *See* Earn Opinion p. 33 ("The Terms of Use, beginning with Terms Version 1, provide that (i) the Debtors can unilaterally modify the Terms of Use without notice and (ii) the Account Holders' continued use of the platform following an update constitutes consent to the amended Terms of Use. The Terms Affidavit and Original Blonstein Declaration provide evidence that the Debtors could modify the contract and that Account Holders' continued use of the |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | | platform constituted acceptance of the updated Terms of Use, even if the Account Holders did not affirmatively accept the updated terms.") (internal citations omitted); *see also id*. p. 38 ("The Court concludes that updates to the Terms of Use constituted valid modifications of the contract that an Account Holder entered when they created an account with Celsius.").<br><br>Marc Benzaken fails to point to any language in the Terms of Use or Blonstein Declaration providing that the Debtors were supposed to transfer assets from the Earn Program to the Custody Program in the event that an Account Holder did not manually accept the updated Terms of Use. *See* Objection ¶ 18–19.<br><br>Further,  as the Court held for a similarly situated Earn Account holder in the Kwok Order, any claim by Earn Account holders "that Celsius breached its contract . . . or otherwise committed actionable wrongs . . . would not affect the ownership of cryptocurrency deposited in [their] Earn Accounts."  Kwok Order p. 4.  "As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius. If [a creditor] believes [they have] compensable claims against Celsius (beyond the amount on deposit in [their] accounts) . . . [they] can file a proof of claim and assert such claims in the claims-allowance process. But the cryptocurrency in [a creditor's] Earn Account[] was and remains property of the estate." *Id*. |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | 3. Debtors did not provide reasonable notice of changes to the Terms of Use because login history shows he did not frequent the app or website. | 3. The Court ruled in the Earn Opinion that the modifications to the Terms of Use were valid contract modifications. *See* Earn Opinion p. 33 ("The Terms of Use, beginning with Terms Version 1, provide that (i) the Debtors can unilaterally modify the Terms of Use without notice and (ii) the Account Holders' continued use of the platform following an update constitutes consent to the amended Terms of Use. The Terms Affidavit and Original Blonstein Declaration provide evidence that the Debtors could modify the contract and that Account Holders' continued use of the platform constituted acceptance of the updated Terms of Use, even if the Account Holders did not affirmatively accept the updated terms.") (internal citations omitted); *see also id*. p. 38 ("The Court concludes that updates to the Terms of Use constituted valid modifications of the contract that an Account Holder entered when they created an account with Celsius."). |
| | 4. Asset ownership transfer is a taxable event and therefore Debtors should have provided a Form 1099. The absence of a Form 1099 proves that Celisus did not receive ownership of the digital Assets placed in Earn Accounts. | 4. The Court ruled in the Earn Opinion that the Terms of Use were unambiguous, making it improper to consider extrinsic evidence. *See* Earn Opinion p. 29 ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous." *See, e.g., W.W.W. Assoc. v Giancontieri*, 77 N.Y.2d 157, 162 (1990); *see id*. p. 30 "[T]he Court finds, on the evidence before it, that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders, and that the Terms unambiguously transfer title and ownership of Earn Assets deposited into Earn Accounts from Accounts Holders to the Debtors."). |
| Michael Benzaken | 1. The clear and unambiguous language of the Terms of Use | 1. The Court ruled in the Earn Opinion that the Terms of Use unambiguously transfer right and title to Celsius. *See* Earn Opinion p. 39. ("Terms Version 5 introduced the transfer of title clause that has been the subject of scrutiny in this matter. Every version of the |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| [Docket No. 1512]<br><br>(the "Original Michael Benzaken Motion")<br><br>[Docket No. 1814]<br><br>(the "Amended Michael Benzaken Motion") | provides that there was no transfer of title of Earn Assets. | Terms of Use beginning with Terms Version 5 includes a clause that Account Holders "grant Celsius . . . all right and title to such Digital Assets, including ownership rights" (the "Transfer of Title Clause"). (Terms Affidavit, Ex. A-5 § 14, A-6 § 13, A-7 § 13, A-8 § 13.) Account Holders who agreed to Terms of Use Version 5 or later, whether by signing up for the first time or by continuing to use the platform with an existing account, entered a contract which contained unambiguous and clear language regarding transfer of title and ownership of assets in Earn Accounts."). |
| | 2.  Asset ownership transfer is a taxable event and therefore Debtors should have provided a Form 1099.  The absence of a Form 1099 proves that Celsius did not receive ownership of the digital Assets placed in Earn Accounts. | 2.  The Court ruled in the Earn Opinion that the Terms of Use were unambiguous, making it improper to consider extrinsic evidence. *See* Earn Opinion p. 29 ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous." *See*, *e.g.*, *W.W.W. Assoc. v Giancontieri*, 77 N.Y.2d 157, 162 (1990); *see id.* p. 30 "[T]he Court finds, on the evidence before it, that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders, and that the Terms unambiguously transfer title and ownership of Earn Assets deposited into Earn Accounts from Accounts Holders to the Debtors."). |
| | 3.  No ruling should be made on Earn accounts due to the commingling of assets demonstrated in the Interim Examiner Report. | 3.  The Court ruled in the Earn Opinion that the Terms of Use are a valid contract that transferred right and title of the Earn Assets to Celsius. *See* Earn Opinion p. 44 ("[T]he Court finds that there was a valid contract between Celsius Account Holders and Celsius and that the contract terms unambiguously transferred all right and title of digital assets to Celsius."). |
| | 4.  Because the Earn Program no longer allows withdrawals, assets | 4.  All creditor rights with respect to claims such as "fraudulent inducement into the contract, fraudulent conveyance, breach of |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | in Earn should be migrated to Custody Accounts. | contract, and that the contract was unconscionable" are reserved for the claim resolution process.  Earn Opinion p. 43.<br><br>Further, as the Court held for a similarly situated Earn Account holder in the Kwok Order, any claim by Earn Account holders "that Celsius breached its contract . . . or otherwise committed actionable wrongs . . . would not affect the ownership of cryptocurrency deposited in [their] Earn Accounts."  Kwok Order p. 4.  "As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius.  If [a creditor] believes [they have] compensable claims against Celsius (beyond the amount on deposit in [their] accounts) . . . [they] can file a proof of claim and assert such claims in the claims-allowance process.  But the cryptocurrency in [a creditor's] Earn Account[] was and remains property of the estate."  *Id.* |
| | 5.  Debtors did not provide reasonable notice of changes to the Terms of Use. | 5.  The Court ruled in the Earn Opinion that the modifications to the Terms of Use were valid contract modifications.  *See* Earn Opinion p. 33 ("The Terms of Use, beginning with Terms Version 1, provide that (i) the Debtors can unilaterally modify the Terms of Use without notice and (ii) the Account Holders' continued use of the platform following an update constitutes consent to the amended Terms of Use. The Terms Affidavit and Original Blonstein Declaration provide evidence that the Debtors could modify the contract and that Account Holders' continued use of the platform constituted acceptance of the updated Terms of Use, even if the Account Holders did not affirmatively accept the updated terms.") (internal citations omitted); *see also id.* p. 38 ("The Court concludes that updates to the Terms of Use constituted valid |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | | modifications of the contract that an Account Holder entered when they created an account with Celsius."). |
| | 6. Michael Benzaken's closed loans should have returned the collateral to his custody account after April 14, 2022. | 6. As the Court held for a similarly situated Earn Account holder in the Kwok Order, any claim by Earn Account holders "that Celsius breached its contract . . . or otherwise committed actionable wrongs . . . would not affect the ownership of cryptocurrency deposited in [their] Earn Accounts." Kwok Order p. 4. "As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius.   If [a creditor] believes [they have] compensable claims against Celsius (beyond the amount on deposit in [their] accounts) . . . [they] can file a proof of claim and assert such claims in the claims-allowance process. But the cryptocurrency in [a creditor's] Earn Account[] was and remains property of the estate." *Id.* |
| Kulpreet Khanuja ("Khanuja") [Docket No. 1346] (the "Original Khanuja Motion") [Docket No. 1816] (the "Amended Khanuja Motion"). | 1. Earn accounts are customer assets and earning rewards does not convert them to property of Celsius. | 1. The Court ruled in the Earn Opinion that the Terms of Use unambiguously transfer right and title to Celsius. *See* Earn Opinion p. 39. ("Terms Version 5 introduced the transfer of title clause that has been the subject of scrutiny in this matter. Every version of the Terms of Use beginning with Terms Version 5 includes a clause that Account Holders "grant Celsius . . . all right and title to such Digital Assets, including ownership rights" (the "Transfer of Title Clause"). (Terms Affidavit, Ex. A-5 § 14, A-6 § 13, A-7 § 13, A-8 § 13.) Account Holders who agreed to Terms of Use Version 5 or later, whether by signing up for the first time or by continuing to use the platform with an existing account, entered a contract which contained unambiguous and clear language regarding transfer of title and ownership of assets in Earn Accounts."). |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | 2. Khanuja owned the assets because he paid taxes on 1099 forms provided by Celsius. | 2. The Court ruled in the Earn Opinion that the Terms of Use were unambiguous, making it improper to consider extrinsic evidence. *See* Earn Opinion p. 29 ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous." *See, e.g., W.W.W. Assoc. v Giancontieri*, 77 N.Y.2d 157, 162 (1990); *see id.* p. 30 ("[T]he Court finds, on the evidence before it, that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders, and that the Terms unambiguously transfer title and ownership of Earn Assets deposited into Earn Accounts from Accounts Holders to the Debtors."). |
| | 3. Updates and modifications to the Terms of Use were inconspicuous and obfuscated. | 3. The Court ruled in the Earn Opinion that the modifications to the Terms of Use were valid contract modifications. *See* Earn Opinion p. 33 ("The Terms of Use, beginning with Terms Version 1, provide that (i) the Debtors can unilaterally modify the Terms of Use without notice and (ii) the Account Holders' continued use of the platform following an update constitutes consent to the amended Terms of Use. The Terms Affidavit and Original Blonstein Declaration provide evidence that the Debtors could modify the contract and that Account Holders' continued use of the platform constituted acceptance of the updated Terms of Use, even if the Account Holders did not affirmatively accept the updated terms.") (internal citations omitted); *see also id.* p. 38 ("The Court concludes that updates to the Terms of Use constituted valid modifications of the contract that an Account Holder entered when they created an account with Celsius."). |
| | 4. The Terms of Use had contradictory clauses that should be construed against Celsius to result in Earn Assets being owned | 4. The Court ruled in the Earn Opinion that the Terms of Use unambiguously transfer right and title to Celsius. *See* Earn Opinion p. 39. ("Terms Version 5 introduced the transfer of title clause that has been the subject of scrutiny in this matter. Every version of the |

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | by customers who loaned them to Celsius. Also, various statements made by officers of Celsius show that the Terms of Use are ambiguous about the ownership of assets. | Terms of Use beginning with Terms Version 5 includes a clause that Account Holders "grant Celsius . . . all right and title to such Digital Assets, including ownership rights" (the "Transfer of Title Clause"). (Terms Affidavit, Ex. A-5 § 14, A-6 § 13, A-7 § 13, A-8 § 13.) Account Holders who agreed to Terms of Use Version 5 or later, whether by signing up for the first time or by continuing to use the platform with an existing account, entered a contract which contained unambiguous and clear language regarding transfer of title and ownership of assets in Earn Accounts."); *see also id.* p. 40 ("It is blackletter law that a loan of money or property to another creates a debtor-creditor relationship.") (internal citations omitted). |
| | 5.  Celsius breached their contract with Khanuja by deliberately delaying withdrawal of funds from Khanuja's account between May 6, 2022 and June 2, 2022. | 5.  As the Court held for a similarly situated Earn Account holder in the Kwok Order, any claim by Earn Account holders "that Celsius breached its contract . . . or otherwise committed actionable wrongs . . . would not affect the ownership of cryptocurrency deposited in [their] Earn Accounts." Kwok Order p. 4. "As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius.  If [a creditor] believes [they have] compensable claims against Celsius (beyond the amount on deposit in [their] accounts) . . . [they] can file a proof of claim and assert such claims in the claims-allowance process. But the cryptocurrency in [a creditor's] Earn Account[] was and remains property of the estate." *Id.* |
| | 6.  The Terms of Use are unconscionable. | 6.  All creditor rights with respect to claims such as "fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable" are reserved for the claim resolution process.  Earn Opinion p. 43. |

12

| Moving Party and Docket No. | Movant's Argument | Debtors' Objection |
|---|---|---|
| | | Further, a finding of unconscionability requires evidence of exceptional facts and circumstances.  Under New York law, an unconscionable contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).  Unconscionability generally requires that the contract was both procedurally and substantively unconscionable at the time of formation—i.e., "some showing of an 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Id.*  The Amended Khanuja Motion fails to meet this heightened standard. |
| | 7.  Khanuja was fraudulently misled by Celsius to his detriment. | 7.  All creditor rights with respect to claims such as "fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable" are reserved for the claim resolution process.  Earn Opinion p. 43.

Further, to state a claim for fraudulent inducement under New York law, a plaintiff must allege: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." A claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule Civil Procedure 9(b), which requires that a party "state with particularity the circumstances constituting fraud." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017).  The Amended Khanuja Motion fails to meet this heightened standard. |