**Hearing Date: January 24, 2023**
**Hearing Time: 10:00 a.m.**

David J. Adler
McCARTER & ENGLISH, LLP
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
E-mail: dadler@mccarter.com
*Attorneys for Ad Hoc Group of Borrowers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**AMENDED OBJECTION OF AD HOC GROUP OF BORROWERS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) THE TRANSFER OF CRYPTOCURRENCY ASSETS SERVING AS COLLATERAL ON ACCOUNT OF INSTITUTIONAL LOANS IN THE ORDINARY COURSE OF BUSINESS AND (B) THE EXERCISE OF THE DEBTORS' RIGHTS AND REMEDIES PROVIDED UNDER EACH MASTER LENDING AGREEMENT AND (II) GRANTING RELATED RELIEF (ECF DOC. #1818)**

The *Ad Hoc Group of Borrowers*[2] by and through their counsel, McCarter & English, LLP, hereby submits this amended objection (the "**Amended Objection**") to the motion of the above-captioned debtors and debtors in-possession (the "**Debtors**" or "**Celsius**") for the entry of an order (I) Authorizing (A) The Transfer of Cryptocurrency Assets Serving As Collateral On

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] *See* Verified Statement Pursuant to Bankruptcy Rule 2019 filed on December 5, 2022 (ECF Doc. #1607). Additional borrowers have joined the *Ad Hoc Group of Borrowers* since the filing of the Rule 2019 Statement and an Amended Rule 2019 statement will be filed prior to the hearing on the Motion.

Account of Institutional Loans In The Ordinary Course of Business And (B) The Exercise Of The Debtors' Rights and Remedies Provided Under Each Master Lending Agreement And (II) Granting Related Relief (the "**Motion**"; ECF Doc. #1818) and respectfully states as follows:

## AMENDED OBJECTION[3]

1. The Motion lacks basic information to determine whether the Debtors' requested relief is, in fact, in the ordinary course of business and satisfies the business judgment rule. As set forth herein, the Motion should be denied until the Debtors provide such information that would permit the Court (and the creditors) to evaluate whether or not the proposed relief is appropriate.

2. In the Motion, the Debtors seek authorization from this Court, *consistent with past practice and in the ordinary course of business*, to:

> (i) *transfer cryptocurrency assets serving as collateral on account of loans to institutional customers upon repayment of each loan*, (ii) exercise their rights provided under each Master Lending Agreement (each a "MLA") to apply cryptocurrency assets serving as collateral on account of institutional loans at the prevailing market price to the balance of such outstanding loans . . . or, in the alternative, to sell such collateral and retain the proceeds and close out such loans (iii) exercise other rights and remedies provided for under the MLAs including, but not limited to, netting, setoff, and amending terms through the mutual assent of the parties, and (iv) engage in other ordinary course of business transactions necessary to manage the Debtors' lending positions including, but not limited to, entry into workout agreements and acceptance of partial repayment in the form of digital assets, cash or equity.

*See* Motion at ¶1 (emphasis supplied).

3. In the Motion, the Debtors note that there are "approximately fourteen institutional borrowers with approximately $115 million of aggregate outstanding obligations, collateralized by approximately $16 million in cryptocurrency assets." Motion at ¶ 9.

---

[3] The only changes in this Amended Objection are the correction of some typographical errors in the original objection.

2

4.	Previously, the Debtors had indicated that the institutional borrowing program was substantially larger.  Specifically, Alex Mashinsky declared in his first day declaration:

> Through Celsius Network Limited ("CNL"), the Company engages in bespoke lending and borrowing relationships with institutional clients, such as hedge funds and market-makers, which helps Celsius generate revenue. Unlike retail lending, the terms and conditions of institutional loans are based on master loan agreements ("MLAs") and term sheets that set forth the detailed terms of any specific transaction. Transactions are arranged on an "over the counter" or "OTC" basis, and vary based on market conditions, internal deployment capabilities and needs, and risk policies. Depending on the creditworthiness of the counterparty, the Company may provide institutional borrowers with either secured or unsecured loans. Institutional loans are typically in the form of cryptocurrency coins, but can sometimes be loans of U.S. dollars or stablecoins.
>
> *As of July 11, 2022, CNL had approximately 47 institutional borrowers, with approximately $93 million of aggregate outstanding performing loans and the Company held collateral, with a market value of approximately $98.5 million in digital assets to cover such loans.*

*See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* ("**Mashinsky Declaration**"; ECF Doc. #23, ¶¶56-57)(emphasis supplied).

5.	Thus, the Motion reflects that the institutional borrowing program has changed significantly since the Petition Date.  Specifically, the number of institutional borrowers has dropped from forty-seven to fourteen (a decrease of 33 borrowers) . In addition, the market value of the collateral posted in connection with such institutional loans has dropped from $98.5 million to $16 million (a decrease of $82.5 million).  The Motion provides no information concerning whether the 33 institutional borrowers paid off their loans and whether the Debtors returned the $82.5 million in cryptocurrency collateral upon repayment to such borrowers.

6.	In addition, the Debtors do not identify in the Motion: (i) the remaining fourteen institutional borrowers, (ii) the amounts owed by each, and (iii) whether the cryptocurrency collateral being held by the Debtors is more than or less than the amount of the respective loan.

7.  Finally, the Debtors failed to attach <u>any</u> of the "bespoke" MLAs to the Motion.[4] Did the MLAs provide that the lender (Celsius) was permitted to "pledge, repledge, hypothecate or rehypothecate" the collateral provided for these loans? In light of the Court's recent decision, that information would appear to be highly relevant. *See In re Celsius Network LLC*, 2023 WL 34106 (Bankr. S.D.N.Y. January 4, 2023).[5]

8.  In support of the proposed relief, the Debtors argue that the return of collateral after a borrower repays an outstanding loan is in the ordinary course of the Debtors' business and satisfies both the objective horizontal test and the subjective vertical test as articulated in the Second Circuit decision in *In re Lavigne*, 114 F.3d 379, 384 (2nd Cir. 1997). Motion at ¶ 15. Specifically, the Debtors note that the:

> release of cryptocurrency assets serving as collateral upon repayment of the Debtors' . . . institutional loans satisfies both the horizontal test and vertical test. With respect to the horizontal test . . . a lender will typically release its security interest in. or otherwise return, the underlying collateral once a loan has . . . been paid off. Thus, it is reasonably expected that a cryptocurrency platform, such as the Debtors which provides secured loans to customers would retain collateral in the form of digital assets to secure the provision of such loans.

Motion at ¶16.

9.  This same argument – the release of cryptocurrency collateral upon repayment of an outstanding loan -- applies with equal force to the 23,000 retail borrowers of Celsius (the "**Retail Borrowers**"). The Retail Borrowing program was described by Alex Mashinsky in his first day declaration as follows:

---

[4] Similar to what the Court previously ordered on August 1, 2022 (ECF Doc. # 301), the *Ad Hoc Group of Borrowers* respectfully requests that the Court direct the Debtors to file all forms of MLAs that were utilized by the Debtors in connection with the institutional borrowing program. *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* (ECF Doc. #393). Exhibits B-1-9 of that document are the Celsius Loan Terms and Conditions (the "**Loan Terms of Use**") for the retail lending programs for borrowers outside of the United Kingdom.

[5] It appears that under the institutional borrowing program, the institutional borrowers transferred title to Celsius. *See Mashinsky Declaration* at ¶53 ("[s]imilar to the Earn program, Celsius holds title to digital assets transferred by borrowers as collateral and is permitted to rehypothecate such collateral.")

4

> The Company's retail lending is generally conducted through Celsius Lending LLC ("**Lending**"). Borrowers in certain domestic states and foreign jurisdictions in which Lending operates are able to choose from different loan products based upon loan to value ("**LTV**") ratios of posted collateral ranging from 25%, 33%, 50%, and 70%, with applicable interest rates being higher for higher LTV loans. . . . As of the Petition Date, Lending had approximately 23,000 outstanding loans to retail borrowers in the aggregate amount of approximately $411 million backed by collateral with a market value of approximately $765.5 million in digital assets.

*Mashinsky Declaration* at ¶¶ 54-55.

10. To the extent that the terms of the MLAs are similar to the Loan Terms of Use, the Retail Borrowers should be entitled to the *same* relief that the Debtor is seeking to provide to the institutional borrowers. In other words, to the extent a Retail Borrower wishes to repay her/his loan, the Debtors should be required to return the cryptocurrency collateral that was provided by the Retail Borrower in connection with such loan.

**WHEREFORE,** the *Ad Hoc Group of Borrowers* respectfully requests that this Court deny the Motion Authorizing (A) The Transfer of Cryptocurrency Assets Serving As Collateral On Account of Institutional Loans In The Ordinary Course of Business And (B) The Exercise Of The Debtors' Rights and Remedies Provided Under Each Master Lending Agreement and grant such other relief as is just and appropriate.

Dated: New York, New York
January 17, 2023

                            **McCARTER & ENGLISH, LLP**

                  By: */s/ David J. Adler*
                        David J. Adler
                        (A member of the Firm)
                        Email: dadler@mccarter.com
                        825 8th Avenue
                        Worldwide Plaza
                        New York, New York 10019
                        Telephone: (212) 609-6847
                        Facsimile: (212) 609-6921

                        *Attorneys for the Ad Hoc Group of Borrowers*