Kulpreet Khanuja
Pro Se Celsius Claimant

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | |
| | Case No. 22-10964 (MG) |
| Debtors. | |
| | (Jointly Administered) |

**REPLY IN SUPPORT OF KULPREET KHANUJA'S (CLAIMANT) MOTION TO PRESERVE MY RIGHT FOR DETERMINATION THAT MY PERSONAL EARN PROGRAM ASSETS RECEIVE THE SAME STANDING AS CUSTODY ACCOUNTS AND ARE NOT PROPERTY OF THESE ESTATES AND REQUEST FOR HEARING**

I, Kulpreet Khanuja, Pro Se Celsius Claimant, hereby submit this reply in support of my Motion [Docket No. 1816] to (i) Preserve my right for determination that my personal Earn program assets receive the same standing as Custody accounts, and (ii) My assets are not property of debtors estates.

After reviewing the responses of the debtor(s), I want to respectfully state:

## Overview

The position of Debtors and the Official Committee of Unsecured Creditors (the "Committee"), adopted for now by this Court in its January 4th Memorandum Opinion and Order, that the determination whether digital assets in Earned Accounts (or commingled with other Accounts) is an asset of these Estates is based solely on an unambiguous reading of the four corners of the 'Terms of Use' is highly expedient because it allows for sale of Stablecoins creating immediate liquidity but is fundamentally flawed, violates due process, and is highly prejudicial in a case of limited and now diminishing resources to this Claimant.

There is no dispute that ambiguity is determined based on whether the contract is "reasonably "susceptible to only "one meaning…". See *Greenfield v. Philles Record*s, 98 N.Y. 2d 562, 570 (2002). Here, hundreds of claimants including Claimant maintain that the contract terms are ambiguous and meant different things to different people reading them and yet all have been set aside to arrive at an expedient but highly prejudicial result, on an expedited basis, without the full protections of the Federal Rules.

Critical issues that go to the heart of contract formation and hence whether the underlying contract is unenforceable and assets should be returned to the Claimant -such as Unconscionability- have been deferred to the claims process, the timing of which will largely now be within the control of the Debtors, while meantime assets are diminishing and the full panoply of remedies available to the holder of a claim under the Bankruptcy Code, including rescission and restitution of assets are slipping away. *See* 11 U.S.C. Section 101 (5)(A) (providing for monetary relief) and (B) (providing for equitable remedies).

Unconscionability is founded on unequal bargaining power and highly unfavorable contract terms, both of which are demonstrable here, and yet prematurely and without full due process, Claimant has been stripped of title and all its benefits, while saddling him with tax liability he has already incurred and paid for- the essence of unconscionability. *See In re MBM Entm't LLC,* 531 B.R. 363, 414-15 (Bankr. S.D.N.Y. 2015) and cases cited therein. The analysis on whether a contract is unconscionable is highly fact specific, involving an inquiry into the procedure and substance specific to both contract formation and contract terms, including meaningfulness of choice and opportunity to alter onerous unconscionable terms. See *Ragone v. Atlantic Video at The Manhattan Ctr.,* 595 F. 3d 115, 121-22 (2d Cir. 2010) (citations omitted). This determination is not susceptible to resolution as a matter of law. If Claimant is correct, the Terms of Use, as written, are not solely determinative of his rights in the digital assets at issue.

Furthermore, and in the alternative, a constructive trust should be imposed on the Estates' assets in the amount of Claimant's claim as full and undivided title never resided with the Debtors, but at most beneficial title, with legal title remaining with Claimant that resulted in tax consequences to him. A constructive trust may be imposed as long as the holding of property is inequitable and unconscionable and constitutes unjust enrichment. See *MBM Entm't,* at 414-15; 106 N.Y. Jur. 2d Trusts §§ 166 and 233 (Nov. 2022 revised).

Deferring resolutions on the contract formation issues while assets are being depleted and legal expenses are soaring is highly prejudicial and unfair to the Claimant.

Claimant believes his situation is distinguishable and warrants an opportunity for him to be heard in a more meaningful manner including through the presentation of evidence at the earliest opportunity as more fully explained below.

## **Background**

On January 4, 2023, the Court entered the Memorandum Opinion/Order Regarding Ownership of Earn Account Assets [Docket No. 1822] (the "Earn Opinion"). Debtors in their Omnibus Objection:
- State that the court order grants the relief requested in the Stablecoin Motion in ruling generally "that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders, and that the Terms unambiguously transfer title and ownership of Earn Assets deposited into Earn Accounts from Accounts Holders to the Debtors."
- Object to the sufficiency of the evidentiary basis for the Claimant's motion.
- Claim that the Claimant's Motion was filed prior to the release of the Earn Opinion, which established a baseline that Earn Assets are the Debtors' assets.
- Claim that the estates and all parties in interest will benefit from resolving certain claims through a streamlined claims process.
- Failed to address issues related to contract formation.

### Response to Debtors' objections

1. **Earn Asset Ownership:** The January 4th order was unduly restrictive. It didn't resolve the Tax implications around ownership or refer to the Securities Laws that will void the contracts.

   Tax 1099 statements that the debtors created and provided to the Claimant are evidence that the legal ownership of the assets resided with the Claimant. The delivery of 1099 Statements to and payment of taxes on Earn Account assets by the Claimant creates a question of fact as to the ownership of the Earn Account Assets of Claimant that cannot be finally resolved by the January 4th order. The tax documents also provide conclusive facts that the 'Terms of Use' contract is unconscionable, if the contract grants the ownership of assets to debtors while the burden of taxes remains with the Claimant. Finally, the Claimant providing tax proof disproves the debtors' claim that the unconscionability argument in Claimant's motion does not meet the higher standards of proof.

   The Securities Agreements and Laws are the basis for the State Boards' and Regulators' position around the Securities Fraud perpetrated by the debtors. Note that the Securities Lending Agreements provide temporary ownership of assets to the debtors but not permanent ownership or economic control as claimed by the debtors and the court when interpreting the 'Terms of Use' in isolation. As argued in the Claimant's motion but the debtors failed to respond in their omnibus objection, the legal and beneficial ownership of the account resided with the Claimant, even if temporary or partial ownership was granted to Celsius for the purposes of earning rewards for both the Claimant and the debtors. Tax 1099 statements that the debtors created for the Claimant are evidence of such an arrangement and the debtors have failed to furnish their own tax details that will possibly refute Claimant's assertion.

   Considering the above arguments and tax evidence provided as proof of title ownership, Claimant's assets must be considered for constructive trust and Claimant as a trustee as opposed to being considered an unsecured creditor.

   "A constructive trust is the formula through which the conscience of equity finds expression. When asset has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him [or her] into a trustee" "(*Simonds v Simonds,* 45 NY2d 233, 241 [1978], quoting *Beatty v Guggenheim Exploration Co.,* 225 NY 380, 386 [1919])." The constructive

trust in this case is established by the **1) Confidential and fiduciary relation** with debtors as evidenced by the 'Contract/Terms of Use', **2) a promise** of rewards and by debtors to return Claimant's assets when called upon as evidenced in 'Terms of Use'; **3) a temporary transfer** of Claimant's digital assets to debtors **in reliance thereon**; and **4) unjust enrichment** if Claimant's assets are deemed estate assets and the Claimant an unsecured creditor (*see Sharp v Kosmalski*, 40 NY2d 119, 121 [1976]). While the courts do not require strict satisfaction of each of the above elements but rather use them more as flexible considerations (*Lester v Zimmer,* 147 AD2d 340, 341 [3d Dept 1989]), in Claimant's case all elements of constructive trust are satisfied without any doubt.

2. **Contract Formation:** The Debtors state in their objection that remaining claims can be addressed through claims-allowance process. However, in the Claimant's case, critical issues that go to the heart of contract formation and hence whether the underlying contract is unenforceable and assets should be returned to the Claimant -such as Unconscionability- must be resolved now.

3. **Terms of Use ambiguity:** The debtors in their omnibus objection refer to 'Terms of Use' as unambiguous, also providing Celsius' executives' declaration in support. The Celsius executives' declarations were drafted by their lawyers and contradicted by the sworn deposition testimony of Mr. Blonstein in which he acknowledged how the customers may interpret the 'Terms of Use' differently. Similarly, Mr. Ferraro likened customer assets with debtors as a 'lien', which is contrary to debtors' position around asset ownership.

   The objective principle of contract interpretation is premised on how a reasonable person would interpret the meaning of contract terms. Here, both executives of the debtors and hundreds of claimants have differed on what the "Terms of Use" meant, showing that in fact reasonable persons could and did differ on whether absolute title was transferred to the debtors under the contracts.

The January 4th order is not final or conclusive as to Claimant's claims. Consistent with fundamental fairness and due process, Claimant is entitled to a full and fair opportunity to present evidentiary support promptly. Deferring resolution of contract formation issues while assets are being dissipated and legal expenses are soaring is highly and unnecessarily prejudicial to Claimant's chances of any meaningful recovery.

## Reservation of Rights

I, as Movant/Declarant, fully reserve all of my rights and claims to fully supplement this Motion. I hereby assert a lack of due process in determining my property rights in this bankruptcy proceeding. I further maintain that the issue of whether my Earn Account assets constitute property of these estates is not properly before this Court at this time.

*/s/ Kulpreet Khanuja*
Kulpreet Khanuja
*Pro Se Celsius Claimant*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on January 22, 2023.

_____
Kulpreet Khanuja, Declarant