Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF DEBTORS'
MOTION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING (A) THE TRANSFER
OF CRYPTOCURRENCY ASSETS SERVING AS COLLATERAL ON ACCOUNT OF
INSTITUTIONAL LOANS IN THE ORDINARY COURSE OF BUSINESS AND (B) THE
EXERCISE OF THE DEBTORS' RIGHTS AND REMEDIES PROVIDED UNDER
EACH MASTER LENDING AGREEMENT AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") in support of the *Debtors' Motion Seeking Entry of an Order (I) Authorizing (A) The Transfer of Cryptocurrency Assets Serving as Collateral on Account of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Institutional Loans in The Ordinary Course of Business and (B) the Exercise of The Debtors' Rights and Remedies Provided Under Each Master Lending Agreement and (II) Granting Related Relief* [Docket No. 1818] (the "Motion")[2] and in response to the *Amended Objection of Ad Hoc Group of Borrowers to Debtors' Motion for Entry of an Order (I) Authorizing (A) The Transfer of Cryptocurrency Assets Serving as Collateral on Account of Institutional Loans in The Ordinary Course of Business and (B) The Exercise of The Debtors' Rights and Remedies Provided Under Each Master Lending Agreement and (II) Granting Related Relief* [Docket No. 1874] (the "Objection") filed by the Ad Hoc Group of Borrowers (the "Borrower Group") with respect thereto. In support of this Reply, the Debtors state the following:

**Preliminary Statement**.

1. The downturn in the value of cryptocurrency since July 13, 2022 (the "Petition Date") has had a significant impact on the Debtors' institutional loan portfolio. As such, the risk that the loans provided by the Debtors will become uncollectible has greatly increased and made prompt action with respect to such loans necessary to maximize the value of the Debtors' estates. Because of these factors, among others, the Debtors seek authorization (not direction) to exercise their rights under the master lending agreements and enter into workout agreements with institutional borrowers, including to transfer cryptocurrency assets serving as collateral on account of institutional loans as part of workout agreements with institutional borrowers. This authorization will give the Debtors the flexibility they need to preserve assets of the Debtors' estates and improve the recovery for the Debtors' stakeholders.

2. The Objection questions whether the relief requested in the Motion satisfies the business judgment standard. *See* Objection at ¶ 5. This characterization misunderstands the

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

current climate of the cryptocurrency industry and nature of the Debtors' institutional lending program. Nonetheless, the Motion satisfies the requirements of section 363(b) of the Bankruptcy Code; the relief requested in the Motion is justified as a sound exercise of the Debtors' business judgment.

3. The Objection also posits that the Court's recent decision[3] regarding assets in the Debtors' Earn program "would appear to be highly relevant." *See* Objection at ¶ 7. Not so. Notably, the Opinion "[did] not determine the ownership of assets in the Debtors' . . . Borrow Program." *Id.* at 31. Furthermore, the Opinion was silent on the ownership of assets in the Debtors' institutional lending program. Rather, the Opinion addresses cryptocurrency assets held by account holders on the Debtors' retail platform in the Earn program, where those account holders had the ability to initiate retail loans secured by cryptocurrency assets in their Earn accounts. While all retail loans are governed by the same loan terms and conditions, each institutional loan is governed by a bespoke master lending agreement (each, an "MLA") under which each institutional loan borrower may initiate multiple lending transactions. Accordingly, the Opinion is irrelevant to the relief requested in the Motion.

4. Last, the Objection argues that, "[t]o the extent that the terms of the MLAs are similar the Loan Terms of Use, the Retail Borrowers should be entitled to the *same* relief that the Debtor [sic] is seeking to provide to the institutional borrowers." Objection at ¶10. The Objection cites no case law or Bankruptcy Code authority to demand such relief. The institutional and retail loan programs are totally different. The Debtors are still evaluating the treatment of the retail loan program–which is much larger than the institutional loan program and involves tens of thousands

---

[3] *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Opinion").

of individual borrowers, and there is no legal or logical reason to hold up consideration of the institutional loan program pending resolution of the retail loan program. Even if the same relief were granted to the retail borrowers, they would have no affirmative entitlement to specific treatment–the Debtors only seek authorization, not direction, to exercise their rights under the MLAs to the extent that any such exercise is beneficial to the estate. Accordingly, the Objection should be overruled, and the relief requested in the Motion should be granted.

## Reply

**I.    The Motion Satisfies the Requirements of Section 363(b) of the Bankruptcy Code.**

5.    The Motion satisfies section 363(b) of the Bankruptcy Code, which provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court may authorize non-ordinary course transactions using property of the estate pursuant to section 363(b) when "a sound business purpose dictates such action." *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (approving a sale of assets pursuant to section 363(b)); *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (requiring a "good business reason" to grant a section 363(b) application); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).

6.    A debtor's business judgment will be respected if the debtor made an informed decision in good faith and with "the honest belief that the action taken is in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2003 WL 22316543, at *29 (Bankr. S.D.N.Y. Mar. 4, 2003). If a debtor's decisions have any rational business purpose, courts traditionally defer to the debtor's business judgment. *Integrated Res.*, 147 B.R. at 656; *CRTF Corp. v. Federated Dep't Stores, Inc.*,

683 F. Supp. 422, 436 (S.D.N.Y. 1988). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

7. Furthermore, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). The general equitable powers granted under section 105(a) of the Bankruptcy Code confer upon a court the power to "exercise equity in carrying out the provisions of the Bankruptcy Code." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003). As explained by the Supreme Court, section 105(a) of the Bankruptcy Code is a "statutory directive consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *U.S. v. Energy Res. Co.*, 495 U.S. 545 (1990).

8. The relief requested in the Motion is justified under both sections 105(a) and 363(b) of the Bankruptcy Code as a sound exercise of the Debtors' business judgment. It maximizes the value of the Debtors' estates by authorizing the Debtors to take action on their institutional lending portfolio to recover value that might otherwise be permanently depleted as a result of the current turbulence in cryptocurrency markets. The actions contemplated by the Debtors would be accretive to and in the best interests of their estates. In exchange for the return of the institutional counterparties' collateral, the Debtors will receive repayment of their loans in an amount

5

significantly exceeding the amount of collateral returned. The net effect would be an increase in value of the Debtors' estates and of the assets available for distributions to stakeholders.

9. Consequently, the transfer of cryptocurrency serving as collateral on account of outstanding institutional loans and the Debtors' exercise of rights and remedies under the MLAs, with this Court's approval, falls squarely within the parameters of sections 363(b) and 105(a).

## II. The Court Should Not Expand the Relief Requested in the Motion to Include the Debtors' Retail Lending Program.

10. The Borrower Group asks the Court to extend the relief requested in the Motion to the retail borrowers, arguing that, "[t]o the extent that the terms of the MLAs are similar to the Loan Terms of Use, the Retail Borrowers should be *entitled* to the *same* relief that the Debtor [sic] is seeking to provide to the institutional borrowers." Objection at ¶ 10. As a threshold matter, the Objection does not specify a proper basis for its requested relief under the Bankruptcy Code. Without such a statutory predicate, the Objection offers no grounds to alter the relief requested by the Debtors to force the Debtors to also engage with tens of thousands of retail borrowers.

11. Furthermore, the Debtors' rationale for seeking the relief requested in the Motion does not extend equally to the retail borrowers and does not entitle such borrowers to such relief. *First*, the number of retail borrowers makes a bespoke resolution of each loan highly impractical. Rather, the only reasonable solution is to address such borrowers as a class through a chapter 11 plan of reorganization. The Debtors' institutional lending portfolio includes only fourteen loan counterparties, making negotiating and implementing workout agreements an efficient, value-maximizing solution. *Second*, the Debtors currently have no articulable business reason to close out their retail loans. The downturn in the value of cryptocurrency assets has had a significant impact on the Debtors' institutional loan counterparties. The risk that the institutional loans provided by the Debtors will become uncollectible has greatly increased and made collection of

6

such loans necessary to maximize the value accruing to the Debtors' estates. No concomitant urgency to return collateral to retail borrowers currently exists, and the Debtors are not taking any efforts to collect on retail loans.[4] It is well within the valid business judgment of the Debtors to act proactively to resolve the issues presented by the institutional loan portfolio and reserve the claims of retail borrowers to be dealt with as part of a future plan of reorganization. ***Third***, the Borrower Group misunderstands the relief sought by the Debtors. The Motion, if granted, does not create an entitlement on the part of the institutional lenders to have their collateral returned. Instead, it grants the Debtors authorization, not direction, to exercise their respective rights under the respective MLAs to the extent any such exercise is accretive to their estates as part of workout agreements.

### III. There are no Substantive Discrepancies Between the First Day Declaration and the Motion.

12. The Objection also alleges certain discrepancies between the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "First Day Declaration") and the Motion. See Objection at ¶¶ 3–5. The First Day Declaration, on the one hand, sets forth the total aggregate number of performing and non-performing loans in the Debtors' institutional lending program (*i.e.*, forty-seven). First Day Declaration ¶¶ 56–57. The Motion, on the other hand, describes the total aggregate number of unique lending counterparties (*i.e.*, fourteen). Motion at ¶ 9. The difference in the description of the institutional loan portfolio between the First Day Declaration and the Motion is wholly technical and does not reflect the acceptance of payment by the Debtors

---

[4] *See, e.g., Debtors' Statement Regarding Account Holder Loan Obligations* [Docket No. 943].

7

or the return of institutional borrowers' collateral. The reason for the difference is simply that this is not an "apples to apples" comparison.

13. Furthermore, the loans provided by the Debtors were primarily denominated in stablecoin or other cryptocurrencies which have either remained consistent or increased in value since the Petition Date (*i.e.*, from approximately $93 million to approximately $115 million), whereas the collateral received by the Debtors is primarily composed of cryptocurrencies which have decreased in value since the Petition Date (*i.e.*, from approximately $98.5 million to approximately $16 million). As such, the reconciliation of numbers between the First Day Declaration and Motion is the result of the fluctuations in the value of the various cryptocurrencies.

## Conclusion

14. Accordingly, for the reasons set forth herein and in the Motion, the Debtors request that the Court approve the Motion and overrule the pending Objection.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Court should overrule the Objection and grant the relief requested in the Motion.

| | |
|---|---|
| New York, New York<br>Dated: January 23, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:   (212) 446-4900<br>Email:   jsussberg@kirkland.com<br><br>- and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois  60654<br>Telephone:   (312) 862-2000<br>Facsimile:   (312) 862-2200<br>Email:   patrick.nash@kirkland.com<br>   ross.kwasteniet@kirkland.com<br>   chris.koenig@kirkland.com<br>   dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |