Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF HEARING ON DEBTORS'
### SECOND MOTION FOR ENTRY OF AN ORDER (I) EXTENDING
### THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11
### PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION
### 1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that on January 25, 2023, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the *Debtors' Second Motion for Entry of*

*an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* (the "Motion").  A hearing (the "Hearing") on the Motion will be held on **February 15, 2023, at 10:00 a.m., prevailing Eastern Time.**  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on February 14, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on February 15, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on February 15, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **February 8, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: January 25, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in
Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in
Possession*

**Hearing Date:  February 15, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  February 8, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' SECOND MOTION**
**FOR ENTRY OF AN ORDER (I) EXTENDING**
**THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11**
**PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION**
**1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").

**Preliminary Statement**

1.      Following the onset of a "run on the bank," precipitated by a sudden and pervasive deterioration in the cryptocurrency sector, the Debtors paused customer withdrawals and commenced these chapter 11 cases to utilize the breathing spell afforded by the Bankruptcy Code and pursue a value-maximizing outcome.  In the first six months of these cases, the Debtors laid the groundwork for a value-maximizing exit from chapter 11.  For the benefit of all stakeholders, the Debtors actively pursued a dual-track process of marketing all of their assets for sale while simultaneously developing a path towards a standalone reorganization.

2.      Following a robust marketing process, the Debtors received several bids that contemplated various transaction structures involving some or all of the Debtors' assets, and the Debtors engaged with potential bidders to increase competitive tension and help bidders put their best bids forward.  Importantly, the Debtors have significant "illiquid" assets that cannot be harvested quickly, including (a) staked ETH (which is locked up until the staking periods conclude—the last of which expires in 2026), (b) the Debtors' mining business, (c) retail and institutional loan receivables, and (d) investments in other cryptocurrency companies.  These illiquid assets represent a significant percentage of the Debtors' total assets.  Accordingly, in order to maximize the value of their assets, the Debtors will need to either obtain fair prices from a buyer who is willing to recover the value of these illiquid assets over time, or enter into a transaction that allows the Debtors or their successors the time to realize the full value of these illiquid assets over time.

3.      To date, the Debtors received several bids for the illiquid assets.  Aside from certain interest in the mining business, however, these bids have not been compelling.  Indeed, other than the proposals for the mining business, these bids received to date have severely undervalued these

illiquid assets, and the Debtors do not believe it is appropriate to sell these assets at "firesale prices," which would lead to significantly less value to distribute to their account holders under a chapter 11 plan.

4.      Additionally, the Debtors received a bid that would migrate customer accounts to another cryptocurrency exchange. This bid was likewise not compelling because it did not provide value for the Debtors' illiquid assets, and would simply migrate the Debtors' existing liquid cryptocurrency to another platform in exchange for an insignificant cash payment.

5.      Accordingly, the Debtors, in consultation with the Committee, believe that given the bids received to date, the best path forward is to pursue a transaction that harvests the value of the Debtors' illiquid assets over time and distributes that value to account holders. That transaction would establish a new "recovery corporation," which will hold the Debtors' liquid and illiquid assets and manage them over time to maximize value as markets improve. Through the recovery corporation, the value of the Debtors' assets, including the Debtors' liquid and illiquid cryptocurrency, loan receivables, mining assets,[3] and proceeds from litigation claims, will be distributed to account holders.

6.      The Debtors received a bid from a potential plan sponsor (that is unaffiliated with Celsius or its founders) that could manage the recovery corporation, or the Debtors could manage the recovery corporation themselves if acceptable terms cannot be reached with the plan sponsor. If the parties are unable to reach a definitive agreement on the terms of the recovery corporation transaction, the Debtors may have no other choice but to liquidate their assets, either through a self-liquidation or through a transaction with a third party to wind down the company.

---

[3]    The Debtors are also continuing to pursue standalone options for the mining business that could be pursued in addition to the recovery corporation transaction.

7.      The Debtors, in consultation with the Committee, are negotiating with the potential plan sponsor to determine the best path forward.  As disclosed at the January 24, 2023 omnibus hearing, discussions are crystalizing around a framework with the following key features:

- **Recovery Corporation Features.**  The Debtors are considering operating the recovery corporation on a stand-alone basis or via a third party plan sponsor who would invest in and operate the recovery corporation.  In either formulation, the recovery corporation will be fully licensed and registered and will comply with all applicable federal and state regulations.  The recovery corporation will also have a dedicated management team and digital assets will be held by a licensed third-party custodian.  Discussions regarding the mining assets remain ongoing.

- **Form of Consideration for Creditors.**  The interests of the recovery corporation will be "tokenized" and distributed to account holders with claims above a certain threshold as "Asset Share Tokens" that reflect the value of the assets managed by the recovery corporation.  Asset Share Tokens will entitle their holders to dividends from the recovery corporation as assets are monetized and will be freely tradeable by holders.

- **Convenience Class.**  All creditors with claims under a certain threshold, or creditors who choose to reduce their claims to the threshold, will be offered a one-time distribution of liquid cryptocurrency (*e.g.*, stablecoins, Bitcoin, or Ethereum) at a discount to the value of their claims.

- **Establishment of a Litigation Trust.**  The Debtors also expect to create a litigation trust to pursue claims against certain insiders, claims identified in the Examiner's report, as well as other claims and causes of action that will be agreed upon by the Debtors and the Committee.

Once negotiations are completed and the documentation is finalized, the Debtors anticipate promptly filing a chapter 11 plan reflecting the value-maximizing path forward.

8.      Additionally, the Court has now issued rulings on a number of novel legal issues presented in these chapter 11 cases, clarifying which assets form part of the Debtors' estates, authorizing the sale of stablecoins, and paving the way for the return of cryptocurrency assets to certain customers with custody accounts.  With these threshold legal questions answered, the Debtors are well-positioned to finalize and file a chapter 11 plan, disclosure statement, and

solicitation materials in the near term.  As one additional gating issue, the Examiner's final report

is due on January 30, 2023.  Filing a chapter 11 plan prior to the Examiner's final report would be

premature, as the Debtors and all key constituencies in these chapter 11 cases will benefit from a

review of the Examiner's independent analysis.

9.      While considerable work remains before plan confirmation, the Debtors and their

advisors have made (and continue to make) substantial progress in these cases since obtaining the

first extension of exclusivity, including:

- researching, briefing, litigating, and obtaining the Court's ruling on a number of threshold legal issues in these chapter 11 cases, including the determination that Earn assets constitute property of the Debtors' estates, and authorizing the sale of stablecoins [Docket No. 1822] and that Custody and certain Withhold assets are not property of the estate [Docket No. 1767];

- initiating the distribution of digital assets that are not property of the estate to customers [Docket No. 1767];

- securing Court approval of the sale of the GK8 Debtors' assets to provide critical liquidity to fund the Debtors' operations through the plan confirmation process [Docket No. 1686], filing the GK8 Debtors for chapter 11 to consummate the approved sale transaction, obtaining critical first-day relief for such entities, and achieving recognition of the chapter 11 cases and sale order in Israeli courts;

- preparing and filing schedules of assets and liabilities and statements of financial affairs for each of the GK8 Debtors;

- obtaining entry of the general claims bar date order in these chapter 11 cases to facilitate the timely filing of claims;

- addressing hundreds of diligence requests from the Examiner, resulting in the *Interim Report of Shoba Pillay, Examiner* [Docket No. 1411] and culminating in the anticipated release of her final report on January 30, 2023 (the "Examiner's Final Report");

- cooperating with the Committee, the U.S. Trustee, and regulators in responding to ongoing diligence requests;

- completing the initial briefing regarding whether customers have claims at every Celsius entity, one of the principal unresolved legal issues [Docket Nos. 1795, 1796, 1797, 1798, 1799]; and

- negotiating the terms of a plan framework with a possible plan sponsor, the Committee, and coordinating outreach to the regulators.

10. Accordingly, the Debtors seek an additional extension of the exclusivity periods to ensure there are no disruptions caused by a competing chapter 11 plan during this critical period. The requested relief will not only afford the Debtors the necessary runway to file, solicit, and prosecute a value-maximizing chapter 11 plan but will also ensure that there is adequate time for all stakeholders to thoroughly review the Examiner's final report and make an informed decision regarding whether to vote on the plan.

11. The Debtors' actions to date have been achieved in no small part due to the breathing room provided by chapter 11. Cause exists under section 1121 of the Bankruptcy Code to further extend the Debtors' Exclusivity Periods to file and solicit acceptance of a chapter 11 plan for 44 and 135 days, thereby allowing the Debtors to complete the plan confirmation process and emerge from chapter 11 without costly and unnecessary delays. With this extension, the Debtors are poised to continue swiftly toward a value-maximizing conclusion.

**Relief Requested**

12. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) extending the Debtors' exclusive right to file a chapter 11 plan by 44 days through and including March 31, 2023 (the "Filing Exclusivity Period"), and to solicit votes thereon by 135 days through and including June 30, 2023 (the "Soliciting Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"),[4] without

---

[4]    Calculated in accordance with Bankruptcy Rule 9006(a).

prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods, and (b) granting related relief.

## Jurisdiction and Venue

13.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

14.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.    The statutory bases for the relief requested herein are section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

16.    The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

17.    On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the Campagna Declaration. The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

18.    On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of the GK8 Debtors' chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

19.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53, 1648]. On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee"). On September 14, 2022, the Court entered an order directing the appointment of an examiner (the "Examiner") [Docket No. 820]. On September 29, 2022, the U.S. Trustee appointed the Examiner [Docket No. 920].

20.    On November 9, 2022, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1317] (the "First Exclusivity Motion"), which was approved pursuant to the *Order*

*(I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1645] (the "<u>First Exclusivity Order</u>").  The First Exclusivity Order extended the Filing Exclusivity Period by 97 days through and including February 15, 2023, and the Soliciting Exclusivity Period by 37 days through and including February 15, 2023.  That extension was without prejudice to the Debtors' rights to seek further extensions of the Exclusivity Periods.

### Basis for Relief

21.      The Debtors seek an extension of the Exclusivity Periods to continue working toward their goal of confirming a consensual, value-maximizing chapter 11 plan.  A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code.  Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan.  "[T]he point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'"  *In re Burns and Roe Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994)).  In these chapter 11 cases, the Exclusivity Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code, as previously extended pursuant to the First Exclusivity Order, will expire on February 15, 2023, absent further order of the Court.  Extension of the Exclusivity Periods at this critical moment in these chapter 11 cases will preserve the Debtors' right to file a plan, solicit votes, and pursue

confirmation in a timely and orderly manner, without the expensive and time-wasting intrusion of extraneous plans.

22.     Section 1121(d)(1) permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.  Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."  Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 232 (1997); *see also In re Pub. Serv. Co. of N.H.*, 88 B.R. 521, 533–34 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to afford maximum flexibility").  Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors.  *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

23.     Courts in the Second Circuit and in other jurisdictions have held that the decision to extend the exclusivity periods is left to the sound discretion of the bankruptcy court and should be based on the totality of circumstances in each case.  *See, e.g.*, *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re McLean Indus., Inc.*, 87 B.R. 830, 833-34 (Bankr. S.D.N.Y. 1987); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (Bankr. D. Del. 1986).  In general, as long as debtors give the court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested extension of exclusivity . . . should be granted."  *In re Global Crossing Ltd.*, 295 B.R. 726, 730 (Bankr.

S.D.N.Y. 2003); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011)

(noting the debtors' "substantial efforts . . . to stabilize their business and develop a viable exit

strategy"). In particular, courts examine a number of factors to determine whether a debtor has

had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether

there is "cause" for extension of the exclusivity periods. *See In re Adelphia Commc'ns Corp.*, 336

B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184

(Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664–65

(identifying the below factors and noting that courts generally rely on the same factors to determine

whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga.

2005) (same). These factors include the following:

    a.    the size and complexity of the case;

    b.    the existence of good faith progress toward reorganization;

    c.    the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

    d.    whether the debtor is paying its bills as they become due;

    e.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    f.    whether the debtor has made progress negotiating with creditors;

    g.    the amount of time which has elapsed in the case;

    h.    whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands; and

    i.    whether an unresolved contingency exists.

*Adelphia Commc'ns Corp.*, 336 B.R. at 674 (citing *In re Dow Corning Corp.*, 208 B.R. 661,

664–65 (Bankr. E.D. Mich. 1997)).

11

24.    Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g.*, *In re Express One Int'l Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Texaco, Inc.*, 76 B.R. at 327 (holding that size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).  For example, both Congress and courts recognize that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan.  H.R. No. 95-595, at 231–32, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement.");  *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

25.    Since the First Exclusivity Extension, the Debtors have achieved many of the milestones previously identified as gating items to filing and confirming a viable chapter 11 plan. The Debtors have, among other things, (a) achieved a definitive ruling from the Court that Earn assets are property of the Debtors' estates; (b) confirmed Custody assets and certain Withhold assets are not property of the Debtors' estates and are implementing the reopening of withdrawals accordingly;  (c) advanced towards consummating the sale of the GK8 Debtors' assets; (d) continued to respond to the Examiner's diligence requests and provide certain current and

former employees for interviews, and anticipate the release of the Examiner's Final Report on January 30, 2023; (e) productively engaged with the Committee, regulators, other parties in interest, and the proposed plan sponsor to develop a framework for the soon-to-be-filed proposed chapter 11 plan; (f) received multiple bids for substantially all of the Debtors' assets that, following significant discussions with the Committee and its advisors, culminating in the proposed plan framework; and (g) are currently resolving certain additional threshold legal questions, including which Debtor entities are liable to customers.  Completing these milestones paved the way for proposing a chapter 11 plan framework and at this time, the Debtors seek an extension of the Exclusivity Periods to finish developing a viable plan and to finalize the definitive documents underlying the proposed plan sponsor transaction.

26.    Sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein.  Each of the relevant factors weighs in favor of an extension of the Exclusivity Periods, as follows:

- ***The Debtors' Chapter 11 Cases Are Large and Complex.***  These chapter 11 cases are effectively cases of first impression, as the reorganization of a cryptocurrency financial company is largely unprecedented.  These chapter 11 cases involve eleven Debtor entities and international operations with employees located across the United States, Australia, Canada, Serbia, Israel, and the United Kingdom.  Furthermore, the Debtors have engaged with thousands of contract counterparties, creditors, and other parties in interest.  Finally, the Debtors face an ever-evolving regulatory regime within the United States and abroad.  While the Debtors have no funded debt, liabilities to account holders total over approximately $6 billion as of the Petition Date.

- ***The Debtors Have Made Good Faith Progress Toward Exiting Chapter 11.***  Since the First Exclusivity Motion, the Debtors continued to advance these chapter 11 cases over the past months.  Specifically, the Debtors anticipate consummating the sale of the GK8 Debtors' assets within the next month, received rulings on the key threshold legal issues that Earn assets are property of the Debtors' estates while Custody and certain Withhold assets are not, and worked with the Committee to choose a path forward in the dual-track marketing and standalone reorganization process.

13

The Debtors also used this time to work collaboratively with the Examiner to provide the necessary diligence for her analysis and report to be filed on January 30, 2023. The Debtors have continued to engage with numerous stakeholders, including a potential plan sponsor, Committee, ad hoc creditor groups, and regulators, in developing the chapter 11 plan.

- ***The Debtors Will Imminently File a Viable Plan.*** The Debtors have developed a viable plan framework following a thorough marketing process and extensive negotiations with parties in interest. The soon-to-be-filed plan incorporates the Debtors' marketing and negotiating efforts and the rulings on the key legal issues. The Debtors have initiated conversations with regulators and look forward to engaging further with the regulators to ensure that the plan and the transactions contemplated therein comply with all applicable laws and regulations.

- ***An Extension of the Exclusivity Periods Will Not Prejudice Creditors.*** Continued exclusivity will permit the Debtors to continue advancing towards plan confirmation and eliminate the interference and confusion of superfluous plans. Negotiating two or more plans would muddy the waters and needlessly waste time and money, ultimately reducing creditor recoveries. Moreover, throughout these chapter 11 cases, the Debtors have had ongoing and transparent communications with their major creditor groups and continue to meet their postpetition obligations in the ordinary course. Ultimately, extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest especially when, as here, all stakeholders are working toward a consensual, value-maximizing restructuring.

- ***The Debtors Are Paying Their Bills as They Come Due.*** Since the Petition Date, the Debtors have paid their vendors in the ordinary course of business or as otherwise provided by orders of the Court. Furthermore, the Debtors' sale of the GK8 Debtors' assets and the ability to sell stablecoins as these cases progress provides additional runway to fund the restructuring.

- ***The Debtors Are Not Seeking an Extension to Pressure Creditors.*** The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. All creditor groups or their advisors have had an opportunity to actively participate in substantive discussions with the Debtors throughout these chapter 11 cases and the Debtors expect to continue to engage with them regarding the plan. Beyond these organized groups, numerous *pro se* creditors have engaged and conferred with the Debtors on important issues. In an effort to move these chapter 11 cases forward as efficiently as possible, the Debtors resolved certain threshold legal questions ahead of plan confirmation and in light of the Court's order permitting the Debtors to begin distributing cryptocurrency to customers, will return cryptocurrency in accordance with the Court's mandate as soon

14

as reasonably practicable.  The Debtors are seeking an extension of the Exclusivity Periods to preserve and capitalize on the progress made to date in their restructuring efforts.

27.    An objective analysis of the relevant factors demonstrates that the Debtors are taking all prudent measures to facilitate a successful conclusion to these chapter 11 cases. Accordingly, sufficient cause exists to extend the Exclusivity Periods as provided herein. Furthermore, similar relief is regularly granted in large chapter 11 cases in this district. *See, e.g.*, *In re All Year Holdings Ltd.*, No. 21–12051 (MG) (Bankr. S.D.N.Y Jan 20, 2023) (extending the debtor's filing and solicitation periods for the third time for a total of approximately 352 and 318 days, respectively); *In re Hermitage Offshore Servs. Ltd.*, No 20–11850 (MG) (Bankr. S.D.N.Y. Mar. 8, 2021) (extending the debtors' exclusive periods for the second time by a total of approximately 150 days); *In re Frontier Comm'cns Corp.*, No. 20–22476 (RDD) (Bankr. S.D.N.Y. Aug. 11, 2020) (extending the debtors' exclusivity periods for a second time for a total of approximately 249 days) *In re Windstream Holdings, Inc.*, No. 19–22312 (RDD) (Bankr. S.D.N.Y. June 22, 2020) (extending the debtors' exclusive periods for the fourth time for a total of 427 days); *In re Nine West Holdings, Inc.*, No. 18–10947 (SCC) (Bankr. S.D.N.Y. Mar. 4, 2019) (extending the debtors' exclusive periods for the fourth time for a total of 359 days).[5]

28.    This extension is critical to allow the Debtors to reach the finish line of these chapter 11 cases swiftly and efficiently, unobstructed by the disruption of competing plans.  The Debtors are well on their way to a value-maximizing conclusion to these chapter 11 cases with the imminent filing of the plan.  The plan represents months of negotiations, reflects the consideration of multiple bids, and incorporates feedback from stakeholders, including the Committee, creditors,

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

and regulators, among others. The threat of a competing plan would eliminate the substantial progress the Debtors have made in these chapter 11 cases thus far and needlessly impede the Debtors' straightforward path to emergence. Accordingly, the Debtors request an extension of the Exclusivity Periods, and reserve the right to request further extensions of the Exclusivity Periods, as circumstances require.

### Motion Practice

29.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### Notice

30.    The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

31.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: January 25, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

17

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### ORDER (I) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) extending the Debtors' exclusive right to file a chapter 11 plan by 44 days through and including March 31, 2023 (the "Filing Exclusivity Period"), and to solicit votes thereon by approximately 135 days through and including June 30, 2023 (the "Soliciting Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"), and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Any responses or objections to the Motion that have not been withdrawn or otherwise resolved are hereby overruled and denied.

3.      Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing Period is hereby extended by 44 days through and including March 31, 2023, and the Exclusive Solicitation Period is hereby extended by 135 days through and including June 30, 2023.

4.      Nothing herein shall prejudice the Debtors' rights to seek further extensions of the Exclusivity Periods consistent with section 1121(d) of the Bankruptcy Code or the rights of any party in interest to object to any further requests.

5.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis is expressly reserved.

6.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

7.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

8.    Notwithstanding anything to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE