**Hearing Date: February 15th, 2023, at 10:00 a.m. EST**
**Objection Deadline: February 12th, 2023, at 4:00 p.m. EST**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered.) |
| | ) | |

### NOTICE OF HEARING FOR IMMANUEL HERRMANN AND DANIEL A. FRISHBERG'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

**PLEASE TAKE NOTICE** that a hearing on *Immanuel Herrmann and Daniel A. Frishberg's Motion For The Appointment Of A Chapter 11 Trustee* (the "Motion"), will be held on February 15th, 2023, at 10:00 a.m., prevailing Eastern Time (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

**PLEASE TAKE FURTHER NOTICE** that in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

(eCourtAppearances) need to be made by 4:00 p.m. (prevailing Eastern Time), the business day

before the hearing (i.e., on February 14th, 2023.)

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected

participants in the Hearing and the Court's security requirements for participating in a Zoom for

Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m.,

prevailing Eastern Time on February 15h, 2023, must connect to the Hearing beginning at 9:00

a.m., prevailing Eastern Time on February 15th, 2023. When parties sign in to Zoom for

Government and add their names, they must type in the first and last name that will be used to

identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will

not be admitted into the Hearing. When seeking to connect for either audio or video participation

in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which

you seek to connect. Court personnel will admit each person to the Hearing from the Waiting

Room after confirming the person's name (and telephone number, if a telephone is used to

connect) with their eCourtAppearance. Because of the large number of expected participants,

you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings

filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[2] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered.) |
| | ) | |

<u>**IMMANUEL HERRMANN AND DANIEL A. FRISHBERG'S MOTION TO APPOINT A**</u>
<u>**CHAPTER 11 TRUSTEE**</u>

Daniel A. Frishberg ("<u>Mr. Frishberg</u>") and Immanuel Herrmann ("<u>Mr. Herrmann</u>") (the "<u>Movants</u>") file this Motion (the "Motion") to appoint a Chapter 11 Trustee pursuant to sections 1104(a)(1) and (a)(2) of the Bankruptcy Code. We respectfully state as follows:

<u>**INTRODUCTION**</u>

"The business model Celsius advertised and sold to its customers was not the business that Celsius actually operated." So begins the devastating examiner report by Shoba Pillay.

On the first page, she makes it clear what customers came to discover in the days, weeks, and months following Celsius Pause and Chapter 11 filing: Since the very beginning, Celsius' entire operation was a lie.

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

"Celsius abandoned its promise of transparency from its start," reports Ms. Pilay, "Celsius's first significant transaction after it was formed was to launch its ICO, a transaction that Celsius expected would raise $50 million. That did not happen. Instead, Celsius sold 203 million of the 325 million CEL offered for sale, raising $32 million. But Celsius never told its "community" that it failed to sell all of the CEL. Despite its promises of transparency, Celsius debated internally whether to tell its community how the ICO actually turned out but decided not to do so because it feared its community would be upset. Celsius also did not reveal that while Mr. Mashinsky originally pledged to purchase any unsold tokens from the ICO, he failed to close on that purchase. Those unsold tokens amounted to 117 million CEL."

From inception, Celsius also manipulated the CEL token to enrich Alex Mashinsky, the same insider who selected the Special Committee and the law firm who are, today, in charge of Celsius' reorganization. Mashinsky and other insiders cashed out tens of millions of dollars *using customer assets as their exit liquidity, while they lied to us about what they were doing.* And, in case the Examiner's report does not make it clear, this behavior continued *during* the bankruptcy process as well, including sales by Mr. Mashinsky of CEL token post-petition.

Even more damning is the fact that this company never had a viable financial model to begin with. Instead, the report shows that it operated similarly to a Ponzi scheme. "Cumulatively, from 2018 through June 30, 2022, Celsius accrued reward obligations to customers of $1.36

billion more than the net revenue it generated from customer deposits."[3] Additionally, the US entity was insolvent since inception.[4]

Is it any wonder that customers do not trust this company's leadership–leadership who *overlapped* with Mashinsky, who *was selected* by Mashinsky, and that the examiner's report shows *knew about* at least some of his wrongdoing, and the wrongdoing of his co-founders, but stood by and did nothing–or, in some cases–aided and abetted it?

**Now that the examiner's report is out, it's clear that the pre-petition conduct Celsius engaged in makes the appointment of a trustee an "open and shut" case.** Cause is there, and the bankruptcy code says, in cases like this, a trustee <u>shall</u> be appointed. But we're not filing this motion only because a trustee is (morally and legally) the right thing to do. We're filing it because it's the right thing to do for *creditors.*

We're filing this motion (although late in the case) not just because the level of fraud in the Examiner's report *cries out* for a Trustee. We're also filing it because the outlines of the plan that Celsius released in court recently *would deprive customers of any liquidity and are broadly opposed by creditors* (as we believe this court will see at the next hearing). But it isn't just the latest plan. It's a lack of good faith. The Debtors spent much of the case talking about "returning coins" and "returning liquidity." But now, they propose an illiquid token. They misled us on bids, telling them they were "not compelling" (but no details, which we had to learn via a leak.) They have *barely* spoken with regulators, after months of this Court and customers asking them to,

---

[3] See Examiners Report, D.R. 1956, p. 330
[4] Ibid. p. 376

they are misrepresenting and misinforming creditors and this Court about bids from creditors, telling us there's nothing viable, rather than being forthcoming, like we insisted they be when we agreed to a temporary and targeted extension of exclusivity.

We understand that Celius cannot share all the bid details, but mischaracterizing bids as just "not viable" and acting as if the bidding process is over, when leaks of bids show otherwise[5], and then putting forward a plan that would lock remaining user assets indefinitely in exchange for an illiquid "asset token" is unacceptable.

**We need an independent,** *neutral, third-party* **trustee now,** *urgently***, and to end exclusivity (which a trustee will do!)**

Professional fees are out-of-control in this case, but here are just some of the worst things Celsius has done post-bankruptcy:

- Celsius has thus far failed to pursue *any* meaningful recoveries for the estate. The *late* preference action against Voyager–and the Jason Stone case *which cost more money in legal fees than Celsius will recover from it*–both make customers worse off than if we made *no attempts* at recovery, though they enrich insiders and law firms.
- Since declaring Chapter 11, tens of millions of dollars have been plowed into mining. Celsius is *still* unable to share clear financials for its mining operation, but we now know from the examiner report that it is hanging by a thread because of the Core Scientific bankruptcy and other issues.

---

[5] "I'm Leaking the Bids on Celsius Network's Assets," Tiffany Fong,
https://tiffanyfong.substack.com/p/bids-on-celsius-networks-crypto-assets-09a

The Debtor's present financial condition is acute. The latest skeleton of a plan they put forward would roll **liquid and illiquid** obligations, together, into an **illiquid**, high-risk token. We had always counted the debtors would return the *remaining* liquid assets to customers as a **bare minimum floor** in any plan. If they cannot find a way to distribute value without forcing customers to lock up their remaining funds, and forcibly invest them in a cash-flow-negative mining company that could just land us back in bankruptcy court, then it's clear that the Debtors aren't serious about putting forward a viable plan, and it's time for a trustee to step in now.

Refusing to be constrained by the reality that customers simply do not trust them to keep our remaining funds, and that we are unwilling to "throw good money after bad" and gamble what's left on a failing mining operation, Celsius continues to profess that it can get some class of creditors (perhaps a convenience class, through cram-down, if we are honest) to go along with a plan. With the information we have so far, it looks like they are creating a convenience class, to distribute the last of the liquid crypto on the books to them, and lock the rest of us up, told to trust the company that got us into this mess to get us out of it. Such a class would not protect the most in-need unaccredited investors; rather, it would devastate many unaccredited and lower-net-worth investors who put their life savings into the platform, who would now be facing receiving an illiquid "asset share" token that could get them just pennies on the dollar if sold on the open market.

Viewed in the most charitable light, Celsius, so far, has recklessly engineered a wind down designed to protect the majority of its staff, to continue to pay exorbitant salaries, all at the

expense of its creditors, who they now propose to make forced investors in their plan, spending

the last of our crypto to fund salaries, electricity, and rent for their mining operation. They also

plan to book cryptocurrency price appreciation as "revenue," return dollars to us over time, and

keep whatever is left. It is clear, at this stage, that the most valuable assets that remain of Celsius

*aside* from liquid crypto—particularly claims against its insiders, its business partners, and the

illiquid assets such as the mining—can only be distributed fairly and competently by an

independent trustee.

The Movants, and the vast majority of the larger creditor body as a whole (who we are

not speaking for, just making the statement based upon public statements and observations from

inside and outside of this courtroom) have no confidence in the Debtors, nor in the outlines of the

plan they put forward recently in court (which, as we said, would grant illiquid "asset share"

tokens and continue to hold our remaining crypto hostage.)

Before an examiner was appointed to get to the bottom of some of the prepetition bad

conduct, Movants, and others (including loan customers, through counsel, and other *pro se*

filers), recommended that the court appoint a Chief Restructuring Officer with the powers

Trustee *sua sponte* or *in lieu* of an Examiner. However, knowing that the remedy was a serious

one, and has its pros and cons, no parties formally moved for a Trustee when this Court choose

the path of an examiner as the first step, while always preserving the rights of parties in interest,

if we truly thought it was warranted, to move for a trustee.[6]

---

[6] See, D.R. 820, Examiner Order at 14 "Nothing in this Order shall impede the right of the United States
Trustee or any other party to request any other lawful relief, including but not limited to the right of the
United States Trustee or any other party to request the appointment of a trustee."

Today, although it has its own challenges, in light of the examiner's report and the proposed restructuring plan, we are taking the extraordinary step of moving for a Chapter 11 Trustee–an *independent, neutral third-party*, who can oversee the restructuring and bring value back to creditors.

With the release of the examiner report, and emerging details on the Debtors' plan, the lack of their communications with regulators, and a leak that they rejected bids that may have warranted further creditor consideration, it is clear that a trustee is warranted.

We object to the debtors remaining in possession of, and further dissipating, customer assets, any longer. Cause has existed for a trustee all along, but now, we are formally moving for one; the time has come for a disinterested professional to be appointed to take possession of the debtors' property, manage their businesses, and otherwise to perform the duties of a Chapter 11 trustee under section 1106(a) of the Bankruptcy Code.

An independent trustee can also consider accepting outside bids, or convening a process to put bids together, to fund a solution. We ask that the United States Trustee's Office, and Your Honor, work with us to put forward an order that allows for creative solutions that are ***not*** run through the Special Committee, but an independent Trustee. An independent Chief Restructuring Officer could, perhaps *report* to this trustee. That said, our motion is for a trustee, full stop: The U.S. Trustee's Office would appoint them; we would ask for terms we believe are best; we would do our best to negotiate with the trustee to drive the best outcome we can. Movants believe that, given how this case is going and the plans the debtors have communicated so far, the

appointment of a Chapter 11 trustee, and an end to exclusivity, is in the best interests of creditors,

equity security holders, and other interests of the estate.

### CAUSE EXISTS FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE UNDER SECTION 1104(A)(1)

Section 1104(a) of the Bankruptcy Code[7] provides: At any time after the commencement

of the case but before confirmation of a plan, on request of a party in interest or the United States

trustee, and after notice and a hearing, the court **shall** order the appointment of a trustee— **(1)**

**for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the**

**affairs of the debtor by current management**, *either before or after the commencement of the*

*case*, or similar cause, but not including the number of holders of securities of the debtor or the

amount of assets or liabilities of the debtor;

(2) **if such appointment is in the interests of creditors**, any equity security holders, and other

interests of the estate, without regard to the number of holders of securities of the debtor or the

amount of assets or liabilities of the debtor; or

(3) if grounds exist to convert or dismiss the case under section 1112, but the court determines

that the appointment of a trustee or an Examiner is in the best interests of creditors and the estate.

A chapter 11 trustee may be appointed if there is "cause" or if the "appointment is in the

interest of creditors, any equity security holders, and other interests of the estate." 11 U.S.C.

section 1104(a)(1) and (2). Pursuant to Bankruptcy Code section 1104(a), courts have broad

---

[7] (Emphasis added).

discretion in determining whether to appoint a Chapter 11 trustee, and may even do so *sua*

*sponte*. *See In re Wings Digital Corp*., 2005 WL 3789334 at *4 (Bankr. S.D.N.Y. 2005). The

party requesting the appointment of a trustee has the burden of proof in demonstrating "cause."

*See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). There is more than

ample evidence to appoint a trustee in the record, once the examiner report is considered, and

sworn statements are not even needed to demonstrate cause. There is also other evidence that the

Movants will enter into the record, with notice, so that the Debtors may object or introduce their

own rebutting evidence.


The Movants recognize that the appointment of a Chapter 11 trustee is an extraordinary

remedy and do not file this motion lightly. Nonetheless, given the current state of the

reorganization, we believe the best person to wind Celsius down and distribute assets is an

independent, neutral, third-party Chapter 11 Trustee. *See Official Comm. Of Unsecured*

*Creditors of Cybergenics Corp. Ex rel. Cybergenics Corp. V. Chinery*, 330 F.3d 548, 577 (3d Cir.

2003). *See also In re Sharon Steel Corp*., 871 F.2d 1225 (3d Cir. 1989) (noting that the

appointment of a trustee should be the exception, rather than the rule). Nonetheless, the Debtor

has shown that it meets *all six factors* for the appointment of a trustee from the existing record in

this case. This case is ***crying out*** for a trustee given the record, and so while trustees may be

generally "the exception" rather than the rule for a "honest but unfortunate" debtor, it's clear

from the examiner's report that, if nothing else, this Debtor never was honest, and it is hard to

imagine ***any*** case that would warrant a trustee, if this case doesn't warrant one.

This court, in appointing an examiner earlier in this case, already recognized that the type of wrongdoing that could warrant a trustee was a possibility. Now, the report has shown, this type of conduct took place. Earlier in the case, the US Trustee's Office itself used case law outlining the cause for a **trustee** in their motion for an examiner (Doc No. 546, p. 22, among other places):

The offering of unregistered securities, failing to obtain proper licenses, failing to hedge against market volatility, and engaging in risky investments bear the hallmarks of "incompetence" or "gross mismanagement" warranting appointment of a neutral third party as a chapter 11 examiner. See, e.g., *In re Vascular Access Centers, L.P., 611 B.R. 742, 764* (Bankr. E.D. Pa. 2020) ("Accordingly, courts have found cause present pursuant to § 1104(a)(1) in circumstances demonstrating conflicts of interest; misuse of assets and funds; inadequate recordkeeping and reporting; failure to file required documents; lack of adequate disclosure; lack of appropriate cost controls; transgressions related to taxes; failure to make required payments; lack of credibility and creditor confidence; and breaches of fiduciary duties."); *Oklahoma Refining Co. v. Blaik* (In re Oklahoma Refining Co.), 838 F.2d 1133, 1136 (10th Cir. 1988) ("There are many cases holding that a history of transactions with companies affiliated with the debtor company is sufficient cause for **the appointment of a trustee** where the best interests of the creditors require"); see also *In re PRS Insurance Group,* 274 B.R. 381, 387 (Bankr. D. Del. 2001) (evidence of diversion of assets, or the absence of accurate financial records, constitutes "incompetence or gross mismanagement").

Courts uniformly hold that section 1104(a)(1) **_requires_** the appointment of a trustee if "cause" is found and that section 1104(a)(2) provides the court a more flexible, discretionary standard for the appointment of a trustee *even if* no "cause" exists. *See In re Marvel Entm't Grp.*, 140 F.3d 463, 474 (3d Cir. 1998); *In re Sharon Steel Corp.*, 871 F.2d at 1226. For the reasons set forth below, the appointment of a Chapter 11 trustee in these Chapter 11 cases is warranted for both "cause" and being in the best interests of creditors and other interests of the estate

Under section 1104(a)(1), the party requesting the appointment of a trustee must demonstrate fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, *either before or after the commencement* of the chapter 11 case. *See In re Adelphia Communications Corp.*, 342 B.R. 122, 129 (S.D.N.Y. 2006); *In re United States Communications of Westchester, Inc.*, 123 B.R. 491, 495 (Bankr. S.D.N.Y. 1991). Going further, the inquiry into whether "cause" exists for such an appointment is not limited to the enumerated list of fraud, dishonesty, incompetency or gross mismanagement, but extends to "similar cause."

Here, the record shows ongoing fraud ***particularly but not exclusively prepetition*** (from Alex Mashinsky and other insiders), dishonesty pre-and-post petition (prepetition about essentially the entire business model; postpetition about bids, and the mining operation, from Alex Mashinsky while he was in charge of the debtor in possession), incompetence (which the debtors have admitted to under oath in depositions, as they use their incompetence, such as not having reasonable books and records, an excuse to attempt to avoid criminal liability–because they were either criminal or incompetent–and admitting the latter is the safer bet. Incompetence

is also demonstrated by the complete incompetence by which Celsius' mining operation is run, which is now outlined in the examiner report.

The company has suffered from gross mismanagement pre-and-post petition (prepetition, the way they ran the business, including blatantly false AMAs that the examiner found were edited after the fact to cover up the truth[8], and post-petition, in addition to having no cashflow positive business activity to speak[9] of, from their failure to pursue post petition fraudulent transfers, missing the Voyager bar date, and spending more in legal fees to recover money from counterparties, such as Jason Stone, than is actually recoverable, while failing to pursue valuable claims that would actually add value to the Debtors Estates.)

The Movants have outlined just some of the bad conduct, the record is full of evidence of this bad conduct, and will soon work to enter more into the record for this Motion. This court has broad discretion in determining whether the challenged conduct establishes "cause" under section 1104(a)(1). See *In re Sharon Steel Corp.*, 871 F.2d at 1225 (applying abuse of discretion

---

[8] Among other things, the company lied constantly, and then covered it up. See Examiner's Report, p. 27: "Celsius's Efforts To Erase Its Misrepresentations. Internally, Celsius managers recognized that many of the statements that Mr. Mashinsky made during AMAs and in his tweets, particularly about how Celsius was deploying customer assets, were not true. Starting in May 2021 Celsius's Chief Risk Officer raised the prospect of editing the AMAs after the fact and before posting them to YouTube to eliminate any misleading statements. Mr. Mashinsky resisted that suggestion fearing that any delay would create "FUD" (Fear, Uncertainty, and Doubt) in the community. The AMA that prompted this initial concern continues to be available on the internet. Throughout 2021 and up through the bankruptcy filing, Celsius continued to identify incorrect statements Mr. Mashinsky made during the AMAs. Lists containing these misstatements were circulated internally. In some instances, Celsius was able to edit the AMAs after posting; in other instances, it was not. But what Celsius and Mr. Mashinsky never did was correct the record after the fact for the thousands of live audience members who heard these misstatements or for those who watched the recorded videos on YouTube before they were edited. Instead, in some instances, internal documents suggest that Celsius employees hoped viewers would not notice the discrepancies that had been edited from the videos."

[9] The mining business is not actually cashflow positive, nor has it ever been. The Debtors are playing games with accounting, such as claiming their electricity costs are lower by only counting the base rate, and not the significant added on fees which greatly increase the cost. The mining business would need upwards of half a billion dollars in investment, to have any chance of potentially turning a profit multiple years down the line. T

standard of review); *Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987) (same); In re Sundale, Ltd., 400 B.R. 890, 900 (Bankr. S.D. Fla. 2009) ("While appointment is mandatory once cause is found, it is within the court's discretion, on a case-by-case basis, "to determine whether conduct rises to the level of 'cause.'").

We believe that the record shows that all six factors, of which only one is required, are met in this case:

a. materiality of the misconduct;

b. evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;

c. the existence of prepetition voidable preferences or fraudulent transfers;

d. unwillingness or inability of management to pursue estate causes of action;

e. conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; and

f. self-dealing by management or waste or squandering of corporate assets.

One issue in this case that is crying out for a trustee was the Debtors' mismanagement of preference actions postpetition. *See In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005) (ruling cause included, *inter alia*, **failure of debtor to preserve or pursue avoidable transfer for benefit of estate**). The Debtors (as stated in their Objection to Mr. Frishberg's clawback motion) have refused to pursue clawbacks at this time, and have refused to allow anyone else (such as the UCC) to pursue them. This is yet another flagrant breach of fiduciary duty, and cause for a Trustee.

The Debtors have failed to pursue preferential transfers to insiders *at all* thus far, with the exception of an *untimely* proof of claim filed with Voyager Digital, which was late due to the gross incompetence of Celsius management, and the conflict of interest of Kirkland & Ellis with having both Celsius and Voyager as clients (notably, the Movants both objected to the retention of Kirkland & Ellis due to their conflict).

There have also been multiple reports of missing reports and delayed reports exposed during the Examiner's report. This highlights the consistent inability from the current Celsius management, and could have potentially delayed the examiner's report even further and delayed important procedural processes, costing creditors' even more. As quoted from Page 44 of the explainer report, "The Examiner learned that, while Celsius recorded some information contemporaneously, it was not always preserved. In some cases, often due to personnel changes, Celsius employees did not know if the requested records existed or where they were maintained. This lack of institutional knowledge led to confusion, delays, inconsistencies, and mistakes about what was available for the Examiner's review and resulted, in some circumstances, in the Examiner being told records did not exist, which were then subsequently discovered."

The Examiner also reported that, "In response to the Examiner's November 10, 2022 request for all Waterfall Reports, Celsius initially located and produced 15 reports dated May 1, 2022 to June 15, 2022. According to Celsius, additional versions of the Waterfall Report were unavailable because Celsius's practice when it prepared a new version of the Waterfall Report was to overwrite the last version. However, soon after the Examiner indicated that she would

report on Celsius's routine elimination of historical Waterfall Reports, Celsius located an

additional 1,700 Waterfall Reports on Celsius's server, spanning February 24 to June 22, 2022.

Because Waterfall Reports often were generated multiple times a day, the Examiner requested

that Celsius produce the latest-in-time report for each day between February 24 and June 22,

2022, which resulted in the production of 70 additional Waterfall Reports. According to Celsius,

the Waterfall Reports that Celsius generated between May 2021 and February 24, 2022 no longer

exist. To address this gap, the Examiner requested source data that could be used to recreate the

data reflected in the Waterfall Reports for periods prior to February 2022. Celsius reported that

the Waterfall Report source data prior to February 2022 does not exist. **This lack of source data**

**substantially limited the Examiner's ability to review Celsius's assessment of liquidity on a**

**periodic basis.** In addition, it impaired the Examiner's ability to analyze the net interest margin

between the yield Celsius was earning on its deployed assets as compared to the rewards it was

paying to its customers.


      The debtors also failed to take any action to recover deposits on FTX, even when they

were warned by Daniel A. Frishberg **multiple days in advance** that FTX was insolvent, thereby

losing more than $10 million in deposits. They also have failed to look into the pre petition

transfers that sent hundreds of millions of dollars of crypto currency to FTX mere days before

the petition was filed. When asked about it in court by Your Honor at the January 24th, 2023,

hearing, the Debtors counsel deflected the question. Blockchain date shows large transfers to

FTX (and other companies such as Wintermute and Binance) shortly before the petition was

filed. It will highly likely significantly benefit the estate, and the creditors' recovery, to appoint

an independent, third-party in this case: a Chapter 11 Trustee.

Once cause has been established, section 1104(a)(1) **requires** the appointment of a

Chapter 11 trustee. S*ee Oklahoma Refining Co. V. Blaik* (*In re Oklahoma Refining Co.*), 838 F.2d

1133, 1136 (10th Cir. 1988); *In re Plaza de Retiro, Inc.*, 417 B.R. 632, 640 (Bankr. D. N.M.

2009). The record before the Court, including the Examiner's Final Report (Docket No. 1956),

constitutes sufficient cause to appoint a Chapter 11 trustee. Accordingly, the appointment of a

Chapter 11 trustee under section 1104(a)(1) is **required**.


The Debtors clearly breached their fiduciary duties to their creditors, by both knowingly

allowing large preferential payments to insiders (including the at the time CEO, and other

executives), and dissipating user assets to purchase CEL token to enrich their founder, Alex

Mashinsky, and other insiders.


This operation also ran in a very Ponzi-like manner, and for a long time. The Interim

Examiner's report stated that Celsius's management stated that reserves were near 0 at the May

2nd, 2022, meeting, and the Final Examiner's report stated that Celsius US was insolvent for the

*entire time it existed* once you remove a few purported assets that greatly artificially inflate its

value (which the Debtors will likely claim are worth significant amounts of money, and use

estate money to hire experts to delude creditors, and this court, into beliving their ill fated

reorganization would be better for all creditors creditors than a Chapter 7 liquidation). In reality,

CEL has no value, the Debtors would be lucky if someone was willing to buy the entire treasury

(with a purported value of hundreds of millions of dollars, but no liquidity, and no demand for

any) for a few million dollars.

The Debtors have **not** taken any steps to recover fraudulent transfers, not even those to Alex Mashinsky. *See*, e.g., *In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3d Cir. 1989) (finding "cause" in management's failure to discharge fiduciary duty **to pursue prepetition voidable transfers** when debtor corporation and transferees shared common management[10]); *NBD Park Ridge Bank v. SRJ Enters., Inc.* (*In re SRJ Enters., Inc.*), 151 B.R. 189, 194–95 (Bankr. N.D. Ill. 1993) (**holding debtor in possession breaches its fiduciary duties to creditors of estate if it "unjustifiably fails to institute a suit to recover a voidable preference[11]"**); *In re Holly's, Inc.*, 140 B.R. 643, 686 (Bankr. W.D. Mich. 1992) (**finding cause for appointment of trustee where debtor breaches fiduciary duties[12]**); *In re William Vaughan & Co.*, Inc., 40 B.R. 524, 526 (Bankr. E.D. Pa. 1984) (**determining appointment of trustee appropriate following debtor's failure to commence proceedings for avoidance of transfer where transfer was to debtor's president and would not likely be subjected to scrutiny**).

Gross mismanagement is *also* sufficient "cause" to appoint a chapter 11 trustee. *See*, e.g., *In re Colby Constr. Corp.*, 51 B.R. 113, 117 (Bankr. S.D.N.Y. 1985) (finding "cause" upon, *inter alia*, majority shareholder's depletion of debtor's assets to pay exorbitant membership dues in his various clubs and for lavish Christmas party, while at same time not fully paying subcontractors funds received on their behalf); *In re McCorhill Pub., Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y.

---

[10] (Emphasis Added)
[11] (Emphasis Added)
[12] (Emphasis Added)

1987) (finding "cause" upon debtor's "**gross mismanagement**" in failure to **maintain complete and accurate financial records and substantiate undocumented transactions**[13]).


      The *McCorhill* court cited the fact that "the principals of the debtor occup[ied] conflicting position in the transferee companies," was grounds for appointment of a trustee. See 73 B.R. at 1017. The same applies in this case, as the (at the time) CEO and other insiders transferred money to themselves, at the expense of their (soon to be) creditors when knowingly insolvent.


The Examiner report clearly finds fraud and misrepresentation was rampant at Celsius. Additionally, they have admitted committing pre-petition insurance fraud, on the record in this court, when they stated that "the GK8 Debtors are not selling any insurance policies from which the Debtors' account holders could recover because no such insurance policy exists". This court also ruled: "as set forth, in the Workman Declaration, 'no Debtor in these chapter 11 cases, including the GK8 Debtors, ever purchased any insurance policy under the referral arrangement with Aon.'(Workman Declaration ¶ 5.)". This goes directly against the Debtors' claims prepetition, which is clear cut fraudulent misrepresentation of insurance, meant to lure customers to keep deposits on the platform. (See Declaration of Daniel A. Frishberg for the claims made on the Celsius website about non-existent insurance.)


### FORUM SHOPPING SHOULD NOT BE REWARDED; THIS COURT SHOULD APPOINT A TRUSTEE EVEN IF IT DOESN'T FIND CAUSE, BECAUSE IT IS IN CREDITORS' BEST INTERESTS

---

[13] (Emphasis Added). As the examiner's report notes, "Celsius also lacked the ability to accurately track and report on its assets and liabilities, a problem that became more acute as Celsius engaged in riskier deployments" (p. 25)

The Southern District Of New York is not the correct venue for these Chapter 11

Bankruptcy cases under 28 U.S.C. §§1408 and 1409 (or 1406, for that matter) since Celsius'

principal place of business is located in **Hoboken, New Jersey** and all of the Debtors are

Delaware entities (see *Voluntary Petition of Celsius US Holding LLC*, Case 22-10971, Docket

No. 1, **Exhibit A** (Page. 19) which is identifying that each of the seven Debtors are Delaware

entities).


The Debtors in this case have cited *Enron* numerous times, which is fitting since this case

is very similar to *Enron*. Both were fraudulent enterprises, both specifically picked the Southern

District of New York as, what they believed to be a favorable forum (forum shopping, and in

Celsius's case, the incorrect forum/venue). In both *Enron* and this case, the previous

management was allowed to stay in control long enough to have a say in their successors (and in

Celsius's case, old management is still effectively in control, bar Mr. Mashinsky who is no

longer directly at Celsius, but played a key role in choosing his successor, and appointed the

special committee that is in charge of Celsius). There was massive amounts of fraud pre-petition

(and potentially post petition), and the current management is in breach of their fiduciary duties

to the estate. The criterias for a Trustee certainly were met early in this case, and they are met

even more so now with the damning evidence that has emerged in the Examiner's Report; of the

six criterias for an appointment of a Trustee, all of them have been met numerous times (and

only one is needed for the appointment of a Trustee).


Ordering a Trustee in this case will send a message to companies that the Southern

District of New York is not "soft" on debtors who commit wrongdoing. Because **no** district

should be "soft." Your Honor should disavow this Debtor, and future Debtors, of that impression, and appoint a Trustee, even if "cause" has not been shown, because it is the right thing to do, and it is in the best interests of depositors, and because forum shopping is a "race to the bottom" that is bad for creditors, especially retail creditors like us, who have the least power and representation in a process like this. Section 1104(a)(2) of the Bankruptcy Code "create a flexible standard [that] … allows the appointment of a trustee even where no 'cause' exists, but where to do so would be in the best interest of the constituents." *See In re Ionosphere Clubs, Inc*., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Even in the absence of "cause" required under section 1104(a)(1) of the Bankruptcy Code, a court may exercise its discretion and still appoint a trustee under section 1104(a)(2) if doing so is in the best interest of the parties. *See In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 90-91 (Bankr. S.D.N.Y. 2007). Therefore, the court has even broader discretionary powers under section 1104(a)(2) and may consider equitable factors to determine whether appointing a trustee is in the interests of the estate and its creditors. *See*, e.g., *In re Cerleritas Techs., LLC*, 446 B.R. 514, 518 (Bankr. D. Kan. 2011); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).

The factors considered by courts when determining if the appointment of a trustee is warranted under section 1104(a)(2) include (a) the trustworthiness of the debtor, (b) the debtor's past and present performance and prospects for rehabilitation, (c) the confidence – or lack thereof – of the business community and of creditors in present management, and (d) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. *See In re Euro-Am. Lodging Corp*., 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007) (quoting *In re Ionosphere Clubs, Inc*., 113 B.R. at 168). The Debtors are not trustworthy, as the Examiner's report showed,

Celsius **lied about "every respect" of its business**[14] to customers, and was unable to provide the

Examiner critical documents, some of which seem to have been **either hidden or destroyed,**

**including postpetition**[15]. This includes Mr. Ferraro, who, according to the Examiner's report,

knew that insiders were cashing out CEL tokens with customer money.[16]


The Debtors also sent some critical documents[17] less than a day before the Examiner's

report was due. There is no confidence in current management; no one trusts them. The plan that

the Debtors floated at the 01/24/2023 hearing would lock everyone's (who is not in the

convenience class) assets into what effectively is an unregulated high risk hedge fund which is

solely betting on the price of cryptocurrencies to appreciate, and issuing them illiquid "asset

share" tokens in return, while keeping all liquid assets with this unregulated high risk hedge

fund. This hedge fund would also be a corporation, and corporations can go bankrupt **_again_**, so

they could easily go bankrupt again (once they spend more of creditors's remaining funds), and

then the creditors turned equity holders would be completely wiped out. There has been

extremely strong creditor opposition to this plan (other than a very small minority, mostly

consisting of Celsius insiders and former employees who hold large amounts of CEL token.)


## WE SHOULD NOT REPEAT THE ENRON DEBACLE, OR SIMILAR

---

[14] "In every key respect—from how Celsius described its contract with its customers to the risks it took with their crypto assets—how Celsius ran it business differed significantly from what Celsius told its customers." (Examiner report, p. 21)
[15] See, *inter alia*, "Celsius's Efforts To Erase Its Misrepresentations" (Examiner report, p. 21)
[16] See p. 323-324, where Mr. Tappen told Mr. Ferraro, among other things, that "We are using users USDC to pay for employees worthless CEL . . . All because the company is the one inflating the price to get the valuations to be able to sell back to the company"
[17] Examiner's footnote 571 "Mashinsky, Alex, Re: Daily CeFi Recap (Jan28th): Daily P&L: -$0.1M, Email (January 29, 2022), CEL_EXAM-00057241."

It's ironic that while the Debtors repeatedly cited the *Enron* case in their "<u>Earn</u>" Motion, they may actually be copying Enron's playbook for covering up wrongdoing and fraud, such as their pre-petition claim of "$750 million in insurance for assets in GK8,"[18] used to lure customers into keeping assets on their platform, and the numerous fraudulent misrepresentations that were exposed in the Examiner's report.[19]

In *Enron*, insider clawbacks were delegated to Enron's UCC by the SDNY Bankruptcy Court.[20] In the Celsius case, unlike in *Enron, even the UCC* has (thus far) abdicated its responsibility for clawbacks, leaving them with only Celsius itself–an unconscionable conflict of interest–along with a theoretical post-bankruptcy trust and post-bankruptcy process that will purportedly be established.[21]

On the topic of conflicts of interest, the Debtors counsel, Kirkland & Ellis, itself has numerous conflicts. Kirkland & Ellis also represents Voyager Digital, which is not only a competing crypto currency lender in a very similar industry, but also a customer creditor of Celsius. Celsius attempted to file a (late) preference action against Voyager, but was denied. The

---

[18] See *Declaration of Daniel A. Frishberg,* filed contemporaneously with this objection and the *Declaration of Dr. Jonathan Levy,* D.R. 1784, p. 4.

[19] See Docket No. 1559, page. 43 for a certified *Transcript of Celsius Network AMA, July 24, 2020* filed in response to the Debtors' Amended Stablecoin/Earn Property Rights Motion (in addition to numerous formal and informal filings on the docket.) In the certified transcript, Mashinsky is quoted as saying: "So, when you give us Bitcoin, it's not like it's ours, right? It's yours. Legally, it is still your Bitcoin. The only thing we do is when you lend us your Bitcoin, we lend them to people who pay us interest…"

[20] "Is Forum Shopping Corrupting America's Bankruptcy Courts?" (can be downloaded/accessed here: http://ssrn.com/abstract_id=781487) page. 1166 "Although the court appointed an examiner to investigate the fraud, the authority to sue was delegated not to the examiner, but to the creditors' committee, which made the decision on a case-by-case basis."

[21] See Docket No. 1212 *The Official Committee of Unsecured Creditors' Objection to Daniel A. Frishberg's Motion to Compel Insider Clawbacks*, ¶ 4 "Notwithstanding the Committee's great progress, its investigation is not complete and it may fall to a post-bankruptcy fiduciary (such as a litigation trustee) to investigate certain matters after the Debtors emerge from bankruptcy." This was months ago, and yet, there is still no sign of insider clawbacks.

responsibility for this lies with Kirkland and Ellis and the Debtors management, because they either knew, and did nothing, or (potentially worse) did not know about the bar date of one of their own clients, which is also the bar date for a valuable claim for another one of their clients (which again, is a reason why they should have never been allowed to take on both Celsius and Voyager).

Especially in light of the Examiner report that has just been released, it is important that courts do not send a message to these Debtors, and all Debtors, that certain jurisdictions may put them above the law or allow the "fox to guard the henhouse."

Within a short time after *Enron* landed in New York, *Global Crossing* (a Bermuda and Los Angeles, California corporation), *Adelphia Communications* (Coudersport, Pennsylvania), and *Worldcom* (Clinton, Mississippi) all filed in New York's bankruptcy court. Although each scandal-ridden corporation appeared to be an appropriate subject for the appointment of a trustee, in each case incumbent management was able to remain in control during the early "crucial stages of the case and to choose their own successors." Just as Alex Mashinsky was able to stay on and, with Kirkland and Ellis, choose his own successors. But, in this case, no party in interest has moved for a trustee. Now, creditors have. The question is: What will this court do about it?[22]

The Movants respectfully request that this Court enter an order, directing that a disinterested person be appointed as Chapter 11 trustee in these Chapter 11 cases pursuant to

---

[22] See: "Is Forum Shopping Corrupting America's Bankruptcy Courts?" (can be downloaded/accessed here: http://ssrn.com/abstract_id=781487) "Although sharp, LoPucki's attack has some *prima facie* merit. Under the clear text of the Bankruptcy Code, the failure to appoint a trustee considering the scope of these cases involving corporate fraud and managerial malfeasance is inexplicable."

section 1104(a) of the Bankruptcy Code and Bankruptcy Rule 2007.1(a), ending exclusivity, and

granting such other and further relief as is just and proper.

## MOTION PRACTICE

This Motion includes citations to the applicable rules and statutory authorities upon

which the relief requested herein is predicated and a discussion of their application to this

Motion. Accordingly, the Movants submit that this Motion satisfies Local Rule 9013-1(a).

## REQUEST TO INTRODUCE EVIDENCE INTO THE RECORD

We plan to introduce, at a minimum, the Examiner's Interim and Final reports into

evidence in support of this motion. We request either an evidentiary hearing, or the opportunity

to enter written evidence into the record in support of this motion in writing (based upon the

existing record, including depositions.)

## REQUEST FOR RELIEF AS *PRO SE* FILERS

As we are *Pro Se* filers, and do not understand the law as well as a lawyer would, we ask

that you do as The Supreme Court Of The United States[23] said: "a *pro se* complaint, 'however

inartful pleaded,' must be held to 'less stringent standards than formal pleadings drafted by

lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Id., at

520 521, quoting *Conley v. Gibson*, 355 U.S. 41,45 46 (1957)." Rule 8 provides that "'pleadings

shall be so construed as to do substantial justice." As SCOTUS stated: "We frequently have

---

[23] To be referred to as "SCOTUS" from henceforth.

stated that *pro se* pleadings are to be given a liberal construction. *Baldwin County Welcome Center v. Brown.*'" SCOTUS also noted that *pro se* plaintiffs should be afforded "special solicitude." *Rabin v. Dep't of State*. Your Honor has the ability "liberally" construe our requests. We ask that if anything is in the wrong format, or cites the wrong federal code, etc., that Your Honor allows us to fix it, instead of dismissing this Motion.[24]

Respectfully submitted,

*/s/ Daniel A. Frishberg*                              *s/ Immanuel Herrmann*
Daniel A. Frishberg                                         Immanuel Herrmann
*Pro Se*                                                            *Pro Se*
February 1, 2023                                            February 1, 2023

---

[24] As the Supreme Court said: "The district judge should have explain[ed] the correct form to the *pro se* plaintiff so that Owens could have amended his pleadings accordingly. Instead of simply dismissing the complaints for naming federal agencies as the defendants, it would have been appropriate for the district judge to explain the correct form to the *pro se* plaintiff so that Platsky could have amended his pleadings accordingly see *Henry Platsky, Plaintiff-appellant, v. Central Intelligence Agency*". As Your Honor noted, courts in this circuit protect *Pro Se* litigants from inadvertently forfeiting their legal rights due to a lack of legal training: "*See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing *pro se* submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.")."

**CERTIFICATE OF SERVICE**

We certify that on Wednesday, February 1, 2023, a true and correct copy of Immanuel Herrmann

and Daniel A. Frishberg's Motion to Appoint a Chamber 11 Trustee was filed with the Clerk of

the United States Bankruptcy Court in the Southern District of New York served upon the

Core/2002 service list by electronic mail, in accordance with the SDNY Bankruptcy Court's

*Amended Final Order (I) Establishing Certain Notice, Case Management, And Administrative*

*Procedures, And (II) Granting Related Relief* (ECF Docket No. 1181)


      */s/ Daniel A. Frishberg*              *s/ Immanuel Herrmann*
      Daniel A. Frishberg                 Immanuel Herrmann
      *Pro Se*                         *Pro Se*
      February 1, 2023                  February 1, 2023