UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,¹ | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered.) |

# DANIEL A. FRISHBERGS' OMNIBUS OBJECTION TO VARIOUS PROFESSIONALS' FEE APPLICATIONS

Daniel A. Frishberg ("Mr. Frishberg") files this Omnibus Objection (the "Omnibus Objection") to the various motions for compensation (Docket No.'s, 1895, 1896, 1897, 1898, 1899, 1943 and any other fee requests other than for the Examiner, and her professionals) (the "Requests"), by various professionals² (the "Various Professionals"). In support of his Omnibus Objection, Mr. Frishberg restates and realleges the following from his Objection (ECF Docket No. 1823):

## INTERPRETATION OF THIS MOTION

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

² Mr. Frishberg reserves all rights, including to object to any other fee requests that are posted after this Objection has been filed.

As I am a *Pro Se* filer, and I do not understand the law as well as a lawyer would, I ask that you do as The Supreme Court Of The United States[3] said: "a *pro se* complaint, 'however inartful pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Id., at 520 521, quoting *Conley v. Gibson*, 355 U.S. 41,45 46 (1957)." Rule 8 provides that "'pleadings shall be so construed as to do substantial justice." As SCOTUS stated: "We frequently have stated that *pro se* pleadings are to be given a liberal construction. *Baldwin County Welcome Center v. Brown.*'" SCOTUS also noted that *pro se* plaintiffs should be afforded "special solicitude." *Rabin v. Dep't of State*. Your Honor has the ability "liberally" construe my requests. I ask that if anything is in the wrong format, or cites the wrong federal code, etc, that Your Honor allows me to fix it, instead of dismissing this Objection. As SCOTUS said: "The district judge should have explain[ed] the correct form to the *pro se* plaintiff so that Owens could have amended his pleadings accordingly. Instead of simply dismissing the complaints for naming federal agencies as the defendants, it would have been appropriate for the district judge to explain the correct form to the *pro se* plaintiff so that Platsky could have amended his pleadings accordingly see *Henry Platsky, Plaintiff-appellant, v. Central Intelligence Agency*".

## Introduction

The Various Professionals's fees cannot be paid at this time, due to an improper venue. Under USC 28 §§ 1406, 1408, and 1409, the current venue **is not, and never was, correct, or**

---

[3] To be referred to as "SCOTUS" from henceforth.

**proper**.  The Debtor's state "Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409," but their statement is incorrect. The Various Professionals's request for fees should be **DENIED** for the time being (until there is a proper venue), and Mr. Frishberg's Objection be **SUSTAINED**, for the below reasons.

## Argument

The Southern District Of New York is **not the correct, or proper, venue** for these Chapter 11 Bankruptcy cases under 28 U.S.C. §§1408 and 1409 (or 1406, for that matter) since Celsius' principal place of business is located in **Hoboken, New Jersey** (which is **not** in the SDNY) and all of the Debtors are Delaware entities (see *Voluntary Petition of Celsius US Holding LLC*, Case 22-10971, Docket No. 1, **Exhibit A** (Page. 19) which is identifying that each of the seven Debtors are Delaware entities), and as such, the fees for the Various Professionals must be denied. Some of the Various Professionals's fees, billed at New York rates (which are *only* approved because this case is filed in the wrong district and may be the highest fees in the entire country) have been excessive. Such as Kirkland & Ellis, billing (by my counting) a *minimum* of $47,000 to fight my cost cutting and clawback motions, which is a violation of their fiduciary duty to the estate, as it would have maximized inflows, and minimized outflows from the estate, to start clawing back insiders.

Also, several of the Various Professionals have had (in the past, and likely still do) excessive fee billings, including but not limited to billing 17.6 hours of work within a single day, expensing meals above the $20 limit, and general excessive billings that many Various Professionals took part in. One of which was the Fee Examiner, who ironically seems to be the

worst offender when it comes to overcharging meals, with one meal costing over 7x the allowed limit, also, he took a _limo_ service, on the dime of a bankrupt company which is spending the savings of 100's of thousands of mostly unaccredited, retail investors. These abuses took only a few minutes to find, and more were mentioned in Víctor Ubierna de las Heras's Objection to fees (Docket No. 1063). Mr. Frishberg Objects to any and all expenses that are improper, such as, but not limited to, limos, private jets, first class flights, any meal over $20, etc. He includes the Examiner and her professionals in the objection to expenses.

The court **must** change the venue as was ruled in *In re Houghton Mifflin Harcourt Pub. Co.*, 474 B.R. 122, 124 (Bankr. S.D.N.Y. 2012), and this court may **not** delay doing so until the confirmation of the plan since in *Houghton all* of the creditors **unanimously** opposed changing the venue in a non-contentious "pre-pack" bankruptcy. This is **not** the case here. Section 1406(a) provides that:"[t]he district court of a district in which is filed a case lying venue in the wrong division or district **shall** dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"[4]. S*ee, e.g.*, *Thompson v. Greenwood*, 507 F.3d 416, 422 (6th Cir. 2007) (holding that a court **must** dismiss or transfer a case when venue is improper under Section 1408[5] and an interested party timely objects); *accord In re Washington, Perito & Dubuc*, 154 B.R. 853, 858 (Bankr. S.D.N.Y. 1993); *In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 866 (Bankr. S.D.N.Y. 1991).

---

[4] Emphasis added.
[5] Emphasis added.

In *In re Land*, 215 B.R. 398 (8th Cir. BAP 1997), the Bankruptcy Appellate Panel for the Eighth Circuit stated "if venue is not proper in a district, upon the filing of a timely motion to change venue, **<u>a bankruptcy court is without authority to retain the bankruptcy case[6]</u>**." Although not legally required to do so, courts generally follow opinions of the Bankruptcy Appellate Panel, while the 8th District and the 2nd District are different districts, courts typically also follow precedents from other districts.

Section 1412 of Title 28 states that a "district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. §1412. The prevailing view among various courts is that this section provides for the transfer of cases in which venue *is proper in the first place*, so it is not applicable here, and this court **must** transfer the venue. See, e.g., *In re Sorrells*, 218 B.R. 580, 587 (10th Cir. BAP 1998).

Section 1406 of Title 28 provides: "The district court of a district in which a case is filed in the wrong division or district **<u>shall</u>** dismiss, <u>or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought[7]</u>." 28 U.S.C. §1406(a). Although there is some dispute as to whether this section applies to bankruptcy cases, the majority view is that it does. *Houghton*, 474 B.R. at 133; *Sorrells*, 218 B.R. at 587, *In re McDonald*, 219 B.R. 804, 806 (Bankr. W.D.Tenn. 1998). This provision **requires** a case filed in the wrong district, as in this instance, to be dismissed or transferred. The second part of 1406(a) says "<u>or if it be in the interest of justice, transfer such case to any district or division in which it

---

[6] Emphasis added.
[7] Emphasis added.

could have been brought.[8]" I believe this request is timely because there is no Chapter 11 plan proposed, and minimal progress in these cases so far, and the Debtors' mining operation has now failed, which will likely now require a liquidation and doom reorganization prospects for that side of the business. However, even if this court decides that this objection is untimely, due to it being both in the interest of creditors, and of justice, Your Honor should *still* transfer it under Section 1404(a) of Title 28, which provides that: "for the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district where it might have been brought."

Back in 2006, the *Georgetown Law Journal* wrote a law research paper[9] on the question "*Is Forum Shopping Corrupting America's Bankruptcy Courts*?". The conclusion one draws from reading the paper is a resounding "**YES!!!**". The Debtors in this instance, specifically chose The Southern District of New York because they knew that the SDNY rarely appoints trustees (even when it is merited), which would allow (like in *Enron*, among other cases) the management (which committed all of those fraudulent acts) to stay in control, and pick their replacement(s) (such as how Alex Mashinnsky appointed the so called special committee which controls Celsius's supposed restructuring). The paper goes on further to argue that the "ability to manipulate the place of filing has led to inefficient practices, inefficient reorganizations, and subsequent serial bankruptcy filings that benefit (and sometimes even enrich) management and professionals, providing unwitting (or even witting) protection for managers who have been involved in the largest corporate frauds." The paper is completely correct in that regard, and it is clear that in the *Celsius Networks LLC* bankruptcy case, the same thing has happened, and

---

[8] Emphasis added.
[9] "Is Forum Shopping Corrupting America's Bankruptcy Courts?" (can be downloaded/accessed here: http://ssrn.com/abstract_id=781487)

continues to happen. When the article[10] says that a "new motivation for forum shopping has arisen in recent years with the influx of scandal-ridden mega-bankruptcies such as *Enron*, *WorldCom*, and *Global Crossing*. LoPucki charges, in scathing terms, that the new breed of forum shopping has been driven by efforts of corrupt corporate managers to select bankruptcy courts that would make it easier for them to avoid detection and prosecution for their misdeeds," they are completely right, that is the reason this case was filed in the SDNY, it was for dual purposes (both of which significantly hurt creditors), **1).** To hide the misdeeds and fraudulent activity that occurred pre-petition (and likely post-petition). **2).** To maximize rewards/benefit to insiders and bankruptcy professionals (at significant cost to creditors).

It's ironic that while the Debtors repeatedly cited *Enron* in their Earn Motion, they may have actually picked the (improper) venue for this case specifically to copy Enron's playbook for covering up wrongdoing and fraud, such as their pre-petition claim of "$750 million in insurance for assets in GK8,"[11] used to lure customers such as myself into keeping assets on their platform, and the numerous fraudulent misrepresentations that this court has received letters about, filings about, and even at least one certified transcript (that I know of) about.[12] "According to LoPucki, Bankruptcy Judge Arthur J. Gonzalez 'delayed a hearing [on the motion to appoint a trustee] until he brokered a deal that left most of Enron's management in place.' Instead of a trustee, the court acquiesced in the appointment by Enron's directors of turnaround expert Stephen Cooper as Enron's new CEO." It seems that the Celsius may well become a repeat of Enron, another case

---

[10] While relaying the original author's argument.
[11] See *Declaration of Daniel A. Frishberg,* filed contemporaneously with this objection and the *Declaration of Dr. Jonathan Levy,* D.R. 1784, p. 4.
[12] See Docket No. 1559, page. 43 for a certified *Transcript of Celsius Network AMA, July 24, 2020* filed in response to the Debtors' Amended Stablecoin/Earn Property Rights Motion (in addition to numerous formal and informal filings on the docket.) In the certified transcript, Mashinsky is quoted as saying: "So, when you give us Bitcoin, it's not like it's ours, right? It's yours. Legally, it is still your Bitcoin. The only thing we do is when you lend us your Bitcoin, we lend them to people who pay us interest…"

where a Trustee should have been appointed early in the case, as several creditors asked this Court to do so, but instead, an examiner was appointed, and many of the pre-petition managers were allowed to stay on. In *Enron*, insider clawbacks were delegated to Enron's UCC.[13] In the Celsius case, unlike in *Enron, even the UCC* has abdicated its responsibility for clawbacks, leaving them with only Celsius itself–an unconscionable conflict of interest–along with a theoretical post-bankruptcy trust and post-bankruptcy process that will purportedly be established.[14]

The paper also continues with "LoPucki argues that the leniency exhibited by New York's bankruptcy court in *Enron* compared to the tougher standard prevailing in the Third Circuit created a swift and devastating race to the bottom. Within a short time after *Enron* landed in New York, *Global Crossing* (a Bermuda and Los Angeles, California corporation), *Adelphia Communications* (Coudersport, Pennsylvania), and *Worldcom* (Clinton, Mississippi) all filed in New York's bankruptcy court. Although each scandal-ridden corporation appeared to be an appropriate subject for the appointment of a trustee, in each case incumbent management was able to remain in control during the early "crucial stages of the case[] and to choose their own successors." Just as Alex Mashinsky was able to choose his own successors. "Although sharp, LoPucki's attack has some *prima facie* merit. Under the clear text of the Bankruptcy Code, the failure to appoint a trustee considering the scope of these cases involving corporate fraud and managerial malfeasance is inexplicable.[15] LoPucki adds sarcastically that through its "deft

---

[13] "Is Forum Shopping Corrupting America's Bankruptcy Courts?" page. 1166 "Although the court appointed an examiner to investigate the fraud, the authority to sue was delegated not to the examiner, but to the creditors' committee, which made the decision on a case-by-case basis."

[14] See Docket No. 1212 *The Official Committee of Unsecured Creditors' Objection to Daniel A. Frishberg's Motion to Compel Insider Clawbacks*, ¶ 4 "Notwithstanding the Committee's great progress, its investigation is not complete and it may fall to a post-bankruptcy fiduciary (such as a litigation trustee) to investigate certain matters after the Debtors emerge from bankruptcy."

[15] See 11 U.S.C.A. § 1104 (West Supp. 2005) ("[T]he court **shall order** the appointment of a

handling" of these four huge and scandal-ridden cases, "the New York bankruptcy court surpassed Delaware in 2002 to become the nation's most attractive bankruptcy court.""

The Debtors are also contemplating a 363 sale as a probable way out of Chapter 11. In reference to 363 sales: "LoPucki argues that this combination of factors—speed, lack of transparency, and finality—creates the possibility of opportunistic or corrupt management purchasing the company at the expense of the creditor body. In addition, he contends that this opportunism combines with strategic bidding behavior by managers to exacerbate these structural problems:

> Managers seeking to deliver a company to themselves or their accomplices at a bargain price **tend to announce their intention to sell only at the last minute and then seek to conclude the sale as quickly as possible.** This minimizes the opportunity for discovery of the true identities of the buyers or the emergence of other bidders for the company." (emphasis added).

This could explain why the Debtors attempted to rush the sale of a large quantity of assets before the Examiner's interim report was set to come out. This could also explain why the Debtors are being so secretive with the identities of the bidders, and require bids to provide the Debtors with information on the treatment of Celsius employees in any bid. Notably, the GK8 sale was completed in a hurry, with minimal disclosures to creditors, and intense pressure on this court to quickly approve the sale without taking a careful look at things like insurance policies or

---

trustee . . . for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case... .").

wrongdoing committed by GK8's management, and, in particular whether claims can be brought against GK8 employees or others that might benefit the estate.

The paper also covers the topic of fees, which have been a major issue in this case: "The massiveness of the overall fee requests, the overwhelming pages of information unrelated to fees, and the need for sophisticated, highly technical analysis makes it almost impossible for courts to exercise any coherent supervision over the content of fee requests.[16] Nor do the other parties in the case have an incentive to object to excessive fees—the professionals employed by the creditors' committee are paid from the estate as well, thus they will have little incentive to object to excessive fees for unnecessary work for fear that the tables may turn when the time comes for their own fee requests". The fees in this case are not only excessive (partially due to the venue, which also **must** be changed, but part of the fees must be denied as well), but the excessiveness was caused by the location of the venue, which Kirkland & Ellis picked for their forum shopping.

Kirkland and Ellis may also have an adverse interest since they are the ones who picked the venue "professionals may encourage forum shopping with respect to the ethical and conflict of interest standards. Under § 327(a) of the Bankruptcy Code, a professional or attorney

---

[16] LoPucki calls this approach "hopeless," noting that "[n]o mechanisms exist by which judges can evaluate each of the thousands of charges that may comprise a single application." Id. at 142. Some judges have employed fee examiners or fee committees to review professionals' applications, but the absence of any comprehensible standard by which to adjudge the reasonableness of fees remains; thus contracting out the responsibility not only does not solve the problem but adds still *another* layer of administrative professionals charging fees to the estate, simply to review the fees of other professionals. In the *Enron* case, for example, the judge appointed **a fee examiner who was paid $300 per hour and who approved 95% of the fees and expenses requested in the case**. See Robert Manor, Bankruptcy Won't Come Cheap; Carrier Paying for Top Advisors, CHI. TRIB., Dec. 17, 2002, at N1.

employed by the debtor must be a "disinterested person," a concept defined in § 101(14) as requiring that the attorney "does not have an interest materially adverse to the interest of the estate," a vague and highly fact-intensive standard.[17]" Putting the case in New York, in and of itself, is adverse to the interests of the estate, given that the fees in New York are higher than in New Jersey or Delaware.

In *Houghton*, Judge Gerber of the U.S. Bankruptcy Court for the Southern District of New York reluctantly granted the U.S. Trustee's motion under Section 1406 to transfer venue, saying that his "hands [were] tied" by statutory law. In this case, the same is true with Your Honor. You **must** transfer the venue, and you should not delay like in *Houghton*, since creditors are **not** unanimous in keeping it in the SDNY. Nor is it in the interests of the creditors as a whole to keep this case in the SDNY. The SDNY does not often choose to appoint Chapter 11 Trustees, but generally prefers to appoint Examiners instead. In this case, a Chapter 11 Trustee will *not only* greatly increase the recovery for creditors, but is required to be appointed by statute/precedent (once a motion for one is filed). The Debtors forum shopped to have this case be filed in an improper venue, likely in part because they knew that the SDNY does not usually start out with the appointment of a Chapter 11 Trustee, even in cases like *Enron, WorldCom, and Global Crossing* that are crying out for such an appointment. The venue being improper and in the SDNY, and the lack of a Chapter 11 Trustee, not only prejudices me, but it also prejudices all creditors[18].

---

[17] See 11 U.S.C.A. §§ 101, 327(a) (West Supp. 2005); Todd J. Zywicki, *Mend It, Don't End It: The Case for Retaining the Disinterestedness Requirement for Debtor in Possession's Professionals*, 18 MISS. C. L. REV. 291, 293–94 (1998).
[18] Mr. Frishberg still insists that he should not be a creditor of Celsius, since they are illegally holding his funds since July of 2022, and are in effect thieves.

I would like to be clear that I never specifically waived the right to object to venue, and in fact preserved my right to object in my Adversary Proceeding, after learning of such a right. The *TC Heartland* decision says that courts can apply their equitable authority to excuse waiver of a defense that only became "available", after the time for the defendant to raise the argument has passed. While in the *TC Heartland* decision it was specifically referring to a SCOTUS decision, the spirit, if not the letter of the ruling, applies here. Courts regularly excuse waiver when the defense previously was "unavailable" because "it was for all practical purposes impossible for the defendants to interpose their respective defenses at the time of the answer." *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 n.9 (D.C. Cir. 1988). For me, it was "for all practical purposes impossible" to object to the venue at the beginning of the case, since I did not know the venue was improper at that time. The UCC, or the US Trustee, should have objected to the venue earlier in the case, but since they did not, and since I recently learned about the improper venue (due to being *Pro Se*, I did not know it was improper earlier in the case), my objection should be considered now.

## **CONCLUSION**

For all of the above reasons, the Various Professionals's Motions/Requests for fees/compensations should be **DENIED** until the venue *actually* is "is proper pursuant to 28 U.S.C. §§ 1408 and 1409" (and 28 U.S.C. § 1406.) No requests for compensation can be fulfilled until the venue is *truly* correct and proper; paying compensation at prevailing professionals at New York rates is an **unacceptable** dissipation of estate resources in any case, given that New York is improper venue to begin with, and any fees must be reconsidered before being paid, and be paid at New Jersey (or whatever the eventual venue, such as Delaware) rates.

Respectfully Signed,

Daniel Frishberg, *Pro Se*

02/02/2023

*/s/<u>Daniel A. Frishberg</u>*

## Certificate of Service

I, Daniel A. Frishberg, hereby certify under threat of perjury that I have served notice of this Objection to all relevant parties shortly after filing this Objection.

Respectfully Signed,

Daniel Frishberg, *Pro Se*

02/02/2023

*/s/<u>Daniel A. Frishberg</u>*