**Víctor Ubierna de las Heras**
**Email: victorub@protonmail.com**
**Telephone +34 699760721**

**Pro se Creditor**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### VÍCTOR UBIERNA DE LAS HERAS' STATEMENT IN SUPPORT OF IMMANUEL HERRMANN AND DANIEL A. FRISHBERG'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Víctor Ubierna de las Heras, *pro se* creditor, state as follows (i) in support of the *Immanuel Herrmann And Daniel A. Frishberg's Motion To Appoint A Chapter 11 Trustee* [Dkt. No. 1975] (the "Motion")

**Statement**

1. Víctor Ubierna de las Heras agrees with Mr. Herrman and Mr. Frishberg that appointing a Chapter 11 Trustee is both necessary and compulsory. Debtors cannot remain in possession after the serious mismanagement and potential fraud and other crimes committed. A trustee needs to be appointed both for cause and for it being in the best interest of creditors. Celsius tickes almost all of the boxes. Little or no books maintained, serious fraud allegations, insider trading… Accordingly, Víctor Ubierna de las Heras supports the relief sought in the Motion.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

2. The Examiner's report shed light on many aspects of the Debtor's business (or criminal enterprise). In this statement in support of the Motion we will cover some items of the report. However, cause to appoint a trustee exists without the need to study the Examiner's Report. Before the petition date multiple States issued either consumer warnings or some kind of cease-and-desist orders in which they affirmed that Celsius was not complying with state law, in particular, laws regulating loans and securities. For example, the Texas State Securities Board issued a Notice of Heating to the now Debtors in September, 2021[2]. The Texas Securities Act creates civil and criminal liability for violations of the law. For example, fraudulent conduct in connection with the offer or sale of securities that involves amounts over $100,000 is a first-degree felony. Also, the unauthorized sale of securities is a third-degree felony in Texas. Furthermore, in addition to the Debtors' liability, Section 4008.055 creates controlling person or aider liability.

Texas is not the only state to have issued these orders. For example, Vermont also issued an Ex Parte Order To Cease And Desist[3] based on multiple violations of Vermont Securities Law. California also issued a DESIST AND REFRAIN ORDER (For violations of section 25110 and 25401 of the Corporations Code)[4] and an Accusation And Statement In Support Of: (1) Notice Of Intention To Issue Order Revoking Cfl License; (2) Order Conditioning Surrender Of License (3) Order To Suspend All Cfl Business Operations[5].

Securities fraud in California can be prosecuted both as a misdemeanor and as a felony. Corporations Code 25540(b) – Violations of Corporate Securities Law or rules or orders thereunder; punishment. ("(b) Any person who willfully violates Section 25400, 25401, or

---

[2] Available https://www.ssb.texas.gov/sites/default/files/2021-09/20210917_FINAL_Celsius_NOH_js_signed.pdf
[3] Available https://dfr.vermont.gov/sites/finreg/files/regbul/Celsius%20Order%20for%20Ex%20Parte%20Cease%20and%20Desist.pdf
[4] https://dfpi.ca.gov/wp-content/uploads/sites/337/2022/08/D-R-Celsius-Network-Inc.pdf
[5] https://dfpi.ca.gov/wp-content/uploads/sites/337/2022/08/Admin.-Action-Celsius-Lending-LLC-Accusation.pdf

25402, or who willfully violates any rule or order under this division adopted pursuant to those provisions, shall upon conviction be fined not more than ten million dollars ($10,000,000), or imprisoned pursuant to subdivision (h) of Section 1170 of the Penal Code for two, three, or five years, or be punished by both that fine and imprisonment.")

**Given that the Debtors' business was grounded in multiple states for obvious, and potentially criminal, violations of money transmission laws, securities laws, and money lending laws it is unclear why the Debtors remain in possession and a trustee has not been appointed.**

3.  If we consider the facts from the Examiner's report it is even more clear that a trustee needs to be appointed. Celsius unlawful behavior was not only caused by Mr. Mashinsky, other senior and not senior employees that are still at the company were his accomplices. From example, Alex Mashinsky (and other key employees like Zach Wildes[6]) are reported to have continuously lied at AMAs and Twitter Spaces. While that is problematic (and potentially criminal), it is even more concerning that employees knew of this lies at the time and they did nothing to correct them in the public record. As shown in the Examiner's report:

---

[6] Although he has written in a tweet than he is no longer employed by Celsius, his LinkedIn says otherwise and he is listed in the Examiner's report as a key employee.

3

> The concern about inaccurate statements during livestreamed AMAs continued to grow amongst certain employees. In March 2022, Celsius Head of Intelligence and Credit Officer Peter Graham wrote to Mr. Sunada-Wong, "Issues are material misstatements on AMA, Twitter Spaces, potentially interviews."[1022]
>
> ---
> [1018] McCarthy, Tom, Re: Delete from the AMA: Direct Deposits, Email (September 17, 2021), CEL-UCC-00207328.
> [1019] Sunada-Wong, Rodney, AMA YouTube Dec 10 – needed edits, Email (December 10, 2021), CEL-UCC-00207526.
> [1020] Sunada-Wong, Rodney, AMA YouTube Dec 10 – needed edits, Email (December 10, 2021), CEL-UCC-00207526.
> [1021] Sunada-Wong, Rodney, Communication Risk, Email (January 28, 2022), CEL-UCC-00208957.
> [1022] Graham, Peter, Topics, Email (March 15, 2022), CEL-UCC-00208695.
>
> 262

22-10964-mg   Doc 1956   Filed 01/31/23   Entered 01/31/23 02:17:35   Main Document
Pg 269 of 476

> He continued, "I believe that regulatory has underestimated the risk of these [public] forums to Celsius."[1023] Graham added:
>
>> With respect to misrepresentations, this is defined under federal securities law as: Statements are material if reasonable investors *would consider truthful disclosure of the information significant in making their investment decisions.* Scienter is established where representation or opinions are given *without basis and in reckless disregard of their truth or falsity.*[1024]
>
> Mr. Graham explained in his March 15, 2022 email that Celsius "cannot edit" the Twitter Spaces. Unlike livestreamed Celsius-hosted AMAs posted to Celsius's YouTube channel, Twitter Spaces AMAs were hosted by third parties. Mr. Graham went on to list "a selection of recent misrepresentations made by Alex and other Celsius reps on Twitter Spaces AMAs," including:[1025]
>
>> We Don't Use Leverage (Alex) . . . And Celsius doesn't have any leverage, right? I mean, we, we have a little bit of leverage, because we sometimes lend out the collateral we get from third parties. So it's maybe again, instead of 1.0, it's 1.2 or something like that.[1026]
>>
>> You can use rewards explorer to prove that what we give you actually came from third parties and that's what is part of our proof of community effort to show you that Celsius does not rely on subsidies or does not kind of try to create some kind of monkey business where stuff comes from other investors.[1027]

This message is more serious than it may seem. It shows that employees knew of these representations and that while they seemed concerned, they did nothing to correct them. They only tried to hide them once they were said, but in no way they were corrected to people that listened to them live. What follows is also from the Examiner's report:

> In April and May 2022, Mr. Graham continued to identify inaccurate statements during livestreamed AMAs that needed to be removed from the posted videos, including:
>
>> Alex states that market downturns and CEL losing value does not impact Celsius. This is not true, please remove.[1033]
>>
>> Alex says that almost 2mm users have earned yield with us; while we have 1.8mm registered users, my understanding is that many of these have not transferred assets and therefore would not have earned yield. Please remove.[1034]
>>
>> Alex says that it's [business as usual] at Celsius and that we are unaffected by a downturn, this is incorrect, please remove.[1035]
>>
>> Alex insinuates that our operations are the same with [$2 billion] assets or [$20 billion], this is incorrect, please remove.[1036]
>>
>> Alex says that on Tuesday everyone will have swaps. Because Celsius cannot provide custody in several jurisdictions, and custody is required for swaps, we will not be providing swaps to everyone. Please remove.[1037]
>
> ---
> [1032] Graham, Peter, Re: AMA YouTube April 8 – Needed edits, Email (April 15, 2022), CEL-UCC-00208864.
> [1033] Graham, Peter, April 22 YouTube AMA – Needed edits, Email (April 22, 2022), CEL-UCC-00207932.
> [1034] Graham, Peter, May 27 YouTube AMA – Needed Edits, Email (May 27, 2022), CEL-UCC-00207086.
> [1035] Graham, Peter, May 27 YouTube AMA – Needed Edits, Email (May 27, 2022), CEL-UCC-00207086.
> [1036] Graham, Peter, May 27 YouTube AMA – Needed Edits, Email (May 27, 2022), CEL-UCC-00207086.
> [1037] Graham, Peter, May 27 YouTube AMA – Needed Edits, Email (May 27, 2022), CEL-UCC-00207086.
>
> 265
>
> ---
>
> 22-10964-mg   Doc 1956   Filed 01/31/23   Entered 01/31/23 02:17:35   Main Document
> Pg 272 of 476
>
>> Zach [Wildes; Celsius's then AMA Co-Host] says that we do not have directional positions. This is untrue and misrepresents material risk factors associated with yield accounts, please remove.[1038]

Not only the behavior of Celsius was problematic regarding misstatements. We now know some of the trading that Mashinsky did or ordered. While he made a fortune selling CEL token that Celsius bough using customer coins he also directed some tradings of BTC. Some employees were also concerned about this, but they did nothing. As shown in the Examiner's report they were even concerned that some of Mashinsky's trading would constitute proprietary trading, and Celsius did nothing to stop it:

> 22-10964-mg    Doc 1956    Filed 01/31/23    Entered 01/31/23 02:17:35    Main Document
> Pg 227 of 476
>
> directional positions, while claiming that he had not.[829] In contemporaneous emails, Mr. Sunada-Wong expressed skepticism about whether Mr. Mashinsky would "be receptive" to the assertion that "what Alex has instructed the team to do the past 8 days and . . . his continued requests for 'trading around the hedges'" in fact constituted proprietary trading.[830] Mr. Sunada-Wong told the

With Mashinsky gone, the problem is not completely gone. Debtors cannot remain in possession and cause exists to appoint a trustee.

Cause also exists because this behavior by Celsius was not only by managers prepetition. Ferraro, which at the very least has knowledge of some of the dubious things has been made interim CEO postpetition. Mr. Ferraro knew in May 2022 that "this is the worse [sic] performing book I've ever imagined . . . everything is double digit negative returns"[7]. He did nothing to abide by the transparency principle that supposedly guided Celsius and instead, he let Mr. Mashinsky lie about the books on those dates without any corrections. Mr. Ferraro, current leader, also knew that Celsius was purchasing CEL from insiders, as he asked in a Slack, "so we pay in CEL then we buy back what they sell?"[8]. He was also told that the company is the one inflating the price to get the valuations to be able to sell back to the company. He did nothing to stop this from happening. Instead, by doing nothing he has become CEO. These Debtors must

---

[7] Perman, Jason, Slack (May 11, 2022), CEL-UCC-00082725, at 1.
[8] Celsius, Slack between Tappen, Dean and Ferraro, Chris (April 13, 2022), CEL-UCC-0008309.

5

not remain in possession, cause exist to appoint a trustee.

Furthermore, David Barse has a conflict of interest, or at least looks like he might have, as a Series B shareholder in Celsius while serving as a Director leading the bankruptcy restructuring. Cause exists to appoint a trustee.

    4. Appointing a Chapter 11 trustee is an extraordinary remedy. However, "The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee." In re V. Savino Oil & Heating Co., Inc., 99 B.R. 518, 526 (Bankr. E.D. N.Y. 1989).

    5. There are numerous reasons why the appointment of a trustee is required under the standards set forth in section 1104(a) (1) and (2) of the Bankruptcy Code. Not only is there cause—including compelling evidence of fraud, dishonesty, and gross mismanagement of the affairs of Celsius and its multiple affiliates (the "Debtors") by current management, but appointment of a Chapter 11 trustee is in the interests of creditors, equity security holders, and other interests of this estate. The cause here includes, among others: (1) allegations of securities fraud.

In the Second Circuit, a party moving for the appointment of a trustee must demonstrate the existence of one of the factors mentioned in Section 1104(a)(1) by clear and convincing evidence standard. In re Bayou Group, LLC, 564 F.3d 541, 546 (2d Cir. 2009); see also In re Euro-American Lodging Corp., 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007). Once that burden is met, however, appointment of a trustee becomes mandatory. See 11 U.S.C. § 1104(a) (providing that court "shall order" appointment of trustee where cause exists); In re V. Savino Oil &

Heating Co., Inc., 99 B.R. 518, 525 (Bankr. E.D. N.Y. 1989) (holding that where a court finds cause under section 1104, "there is no discretion; an independent trustee must be appointed"). In this case, there is at the very least one ground for the appointment of a trustee under section 1104(a)(1): (a) the prepetition fraud and wrongdoing of the Debtor and its management, as set forth in the multiple Cease and Desist Orders from different States and in the Examiner's Report.

(i) Cause Is Established Under 11 U.S.C. § 1104(a)(1)

In the instant case, there is cause for the Court to appoint a Chapter 11 trustee under subsection (a)(1) of section 1104 of the Bankruptcy Code. "The sole question presented in a Section 1104(a)(1) motion is whether the acts or omissions of current management, whether committed before or after filing the Chapter 11 petition, supply the 'cause', as defined, to trigger the appointment of a trustee." See In re V. Savino Oil & Heating Co., Inc., 99 B.R. at 526; see also In re 1031 Tax Group, LLC, 374 B.R. at 86 ("A court may consider both the pre- and postpetition misconduct of the current management when making the determination that 'cause' exists for the appointment of a trustee."). A finding of "cause" mandates the appointment of a trustee. Sharon Steel, 871 F.2d at 1226 ("[11 U.S.C. § 1104](a)(1) requires the bankruptcy court, [ ] to appoint a trustee when the movant has proved 'cause,' which the statute defines to include incompetence and gross mismanagement."); Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.), 838 F.2d 1122, 1136 (10th Cir. 1988); In re 1031 Tax Group, LLC, 374 B.R. at 86;4 In re V. Savino Oil & Heating Co., Inc., 99 B.R. at 525; In re Bonded Mailings, Inc., 20 B.R. 781, 786 (Bankr. E.D.N.Y. 1982).

As explained in Case No. 10-13647(SMB), the list of wrongs constituting "cause" warranting the appointment of a trustee is non-exclusive, and "[f]actors relevant to the appointment of a trustee under § 1104(a)(1) include: conflicts of interest, including inappropriate relations

between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence." In re Altman, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), aff'd in part, vacated in part, 254 B.R. 509 (D. Conn. 2000). The "court need not find any of the enumerated wrongs to find cause for appointing a trustee." In re Oklahoma Refining Co., 838 F.2d at 1136. Here, Celsius ticks all the boxes.

**While the Court may consider the naked allegations of misconduct, from the Cease-and-Desist Orders or the Examiner's report, standing alone an insufficient basis for the appointment of a trustee, it is not necessary for this Court to conduct a mini-trial of each of the factual allegations. Rather, appointment of a trustee is mandated if this Court determines that the allegations of those complaints have a "substantial basis in the facts." In re American Resources, Ltd., 54 B.R. 245, 247 (Bankr. D. Hawaii 1985); see also Tradex Corp. v. Morse, 339 B.R. 823 (D. Mass. 2006) (finding, in case decided under preponderance of the evidence standard, that bankruptcy court properly ordered appointment of trustee based on credible, though disputed, allegations against debtor that were the subject of a grand jury proceeding).**

6. Courts have recognized that the best interests of the creditors test under section 1104(a)(2) is a flexible standard which gives courts wide discretion to appoint a chapter 11 trustee even when no cause exists. In re Ridgemour Meyer Properties, LLC, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008). It is a "fact-driven analysis, principally balancing the advantages and disadvantages of taking such a step, and mindful … that appointment of a trustee is an extraordinary remedy, and should be the exception rather than the rule." In re Adelphia Comm'n Corp., 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006). In determining whether a trustee should be appointed "in the interests of creditors," courts "look to practical realities and necessities." In re Ridgemour, 413 B.R. at

8

112, citing In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).

### Evidence

The Court should admit into evidence to decide this motion, at the very least, the different Orders from multiple States and the Examiner's report[9]. Further, the following documents, not in the possession of this party, would be very relevant and should be considered and admitted into evidence by the Court:

- CEL-UCC-00208695
- CEL-UCC-00207086
- CEL-UCC-00207932
- CEL-UCC-00208864
- CEL-UCC-00278037
- CEL-UCC-00240075
- CEL-UCC-00082725
- CEL-UCC-0008309
- CEL_EXAM-00059693
- CEL_EXAM-00172343
- CEL_EXAM-00161999

This *pro se* creditor reserves the right to file an exhibit and/or witness list before the hearing.

### Reservation of Rights

7.  Víctor Ubierna de las Heras reserve his rights to supplement or amend this Statement, raise additional issues regarding the Motion and present evidence at the hearing on the Motion.

---

[9] While some of the report may have been made with facts considered hearsay as interviews were not under oath, the Examiner has also reviewed hundreds, or probably thousands, of documents including contemporaneous emails and slack messages that are not hearsay.

Dated: February 9, 2022
      Madrid, Spain

Madrid, Spain                 Respectfully submitted,

                                                              Víctor Ubierna de las Heras
                                                  By: /s/ Víctor Ubierna de las Heras

Víctor Ubierna de las Heras
Pro se creditor
+34 699760721
victorub@protonmail.com

10