Hearing Date:  February 15, 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:  February 13, 2023, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF DEBTORS' MOTION
### SEEKING ENTRY OF AN ORDER (I) AUTHORIZING
### (A) THE SALE OF BITMAIN COUPONS AND (B) THE CONVERSION
### OF BITMAIN CREDITS INTO MINING RIGS AND ASSIGNMENT OF
### RIGHTS IN SUCH MINING RIGS, AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion Seeking Entry of an Order (I) Authorizing (A) the Sale of Bitmain Coupons and (B) the Conversion of Bitmain Credits Into Mining Rigs and Assignment of Rights in Such Mining Rigs, and (II) Granting Related Relief* (the "Motion"), will be held on **February 15, 2023, at 10:00 a.m., prevailing Eastern Time**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Hearing (*i.e.*, on February 14, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on February 15, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on February 15, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy

Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **February 13, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

      **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: February 9, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) ) ) ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | | Case No. 22-10964 (MG) |
| Debtors. | | (Jointly Administered) |

**DEBTORS' MOTION**
**SEEKING ENTRY OF AN ORDER (I) AUTHORIZING**
**(A) THE SALE OF BITMAIN COUPONS AND (B) THE CONVERSION**
**OF BITMAIN CREDITS INTO MINING RIGS AND ASSIGNMENT OF**
**RIGHTS IN SUCH MINING RIGS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Preliminary Statement**

1.      As part of their mining operations, the Debtors, in the ordinary course of business, purchased thousands of specialized machines that mine digital assets ("Mining Rigs"), from, among other vendors, Bitmain Technologies Ltd. ("Bitmain").  In connection with these purchases, Bitmain provided the Debtors with certain coupons, free of charge, as a means of incentivizing the Debtors to purchase additional Mining Rigs (the "Bitmain Coupons").  Bitmain also provided the Debtors with credits in connection with the Debtors' purchase of Mining Rigs to acquire additional Mining Rigs (the "Bitmain Credits").  Bitmain Coupons have expiration dates starting in mid-March and the Bitmain Credits may never be redeemable if Bitmain changes the terms of such credits, in which case both would be deemed worthless.

2.      The Debtors believe that immediate monetization of the Bitmain Coupons and Bitmain Credits is in the best interests of their estates and creditors.  The Debtors do not anticipate using the Bitmain Coupons and Bitmain Credits to purchase additional Mining Rigs from Bitmain for the Debtors' own mining operations.[2]  Indeed, the Debtors have already sold Bitmain Coupons pursuant to the *Order Approving Procedures for De Minimis Asset Sales* [Docket No. 692] (the "De Minimis Asset Sale Order").[3]  As such, the Debtors now request the authority to realize the Bitmain Coupons and Bitmain Credits' value through a sale process and thereby bring additional liquidity to the Debtors' estates.

---

[2]    The Debtors hold additional Bitmain Coupons that they do not intend to sell.  Rather, the Debtors plan on using such Bitmain Coupons to pay for Mining Rigs in connection with the Bitmain Credit Monetization process (such Bitmain Coupons, the "Excluded Bitmain Coupons").  The Excluded Bitmain Coupons have an approximate aggregate $3.5 million in face-value.  Unless otherwise noted, the discussion and any references to Bitmain Coupons excludes the Excluded Bitmain Coupons.

[3]    On January 27, 2023, the Debtors filed the *Notice of Sale of Certain De Minimis Assets* [Docket No. 1951], which contemplated the sale of certain Bitmain Coupons for $2,737,466 to MRKL Infrastructure LLC (the "MRKL Bitmain Coupons").  The deadline to object to the sale of the MRKL Bitmain Coupons was February 3, 2023, and the Debtors did not receive any objections.  As a result, pursuant to paragraph 3(b)(v) of the De Minimis Asset Sale Order, the sale of the MRKL Bitmain Coupons closed on or about February 4, 2023.

3.      As a result, the Debtors, in a sound exercise of their business judgement, seek authorization to monetize the Bitmain Coupons and Mining Rigs acquired with the Debtors' Bitmain Credits through a private marketing and sales process.  While the Debtors have the ability to sell the Bitmain Coupons to third-parties (the "Bitmain Coupon Sales"), the Bitmain Credits cannot be directly assigned under the Bitmain Credits' terms.  For that reason, the Debtors must first enter into agreements with third-parties to use the Debtors' Bitmain Credits to purchase Mining Rigs (with no additional cost of acquisition), and then assign the Debtors' rights under the purchase order to the third-party purchasers (the "Bitmain Credit Monetization").

## Relief Requested

4.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing, but not directing, the Debtors to (i) sell the Bitmain Coupons through a private sale process led by the Debtors, (ii) convert the Bitmain Credits into purchase orders for Mining Rigs and sell the Debtors' rights under such purchase orders, and (iii) granting related relief.[4]

## Jurisdiction and Venue

5.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that

---

[4]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Ferraro Declaration (as defined herein).

3

the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6004-1 and 9006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**Background**

8.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

9.      On July 13, 2022 (the "Petition Date"), certain of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22].  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

10.    On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (the "GK8 Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of the GK8 Debtors' chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

11.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53, 1648].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 14, 2022, the Court entered an order directing the appointment of an examiner [Docket No. 820].  On September 29, 2022, the U.S. Trustee appointed the Examiner [Docket No. 920].

12.    In support of this Motion, the Debtors submit the *Declaration of Christopher Ferraro, Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Support of the Debtors' Motion Seeking Entry of an Order (I) Authorizing (A) the Sale of Bitmain Coupons and (B) the Conversion of Bitmain Credits Into Mining Rigs and the Assignment of Rights in Such Mining Rigs, and (II) Granting Related Relief* (the "Ferraro Declaration"), filed contemporaneously herewith.

### The Bitmain Coupons

13.    In the ordinary course of the Debtors' mining business, the Debtors acquired thousands of Mining Rigs from Bitmain.  In connection with such purchases, Bitmain provided the Debtors with Bitmain Coupons as a means of incentivizing the Debtors to purchase additional

Mining Rigs.

14.    As of the date hereof, the Debtors estimate that they hold approximately $37 million in the aggregate of Bitmain Coupons.[5]  *See* Ferraro Declaration ¶ 5.  While the Bitmain Coupons can be redeemed in-kind for their face-value in full, only ten percent or thirty percent of the purchase price of any single order, depending on the Bitmain Coupon, can be paid with Bitmain Coupons.  *Id.*  For example, if the Debtors were to purchase $10 million worth of Mining Rigs using thirty percent coupons, they would only be allowed to use $3 million worth of Bitmain Coupons, thereby bringing the effective price down to $7 million.  The Bitmain Coupons are structured this way so that no single purchase can be made entirely with Bitmain Coupons.  Furthermore, in accordance with their terms, the Bitmain Coupons expire six months following their acquisition.  *Id.* Once a Bitmain Coupon expires, it can no longer be used to obtain a discount on Mining Rigs and is therefore worthless.  *Id.*

15.    The following chart details the Debtors' current holdings of Bitmain Coupons (including the Excluded Bitmain Coupons):

| Total Face Value | Percent of Purchase Price It May Be Used Towards | Expiration Date |
|---|---|---|
| $1,400,030 | 10% | March 20, 2023 |
| $14,500,000 | 30% | April 23, 2023 |
| $542,252 | 30% | May 30, 2023 |
| $11,500,000 | 30% | May 30, 2023 |
| $9,331,685 | 30% | July 12, 2023 |
| $3,474,21 (Excluded Bitmain Coupons) | 30% | July 12, 2023 |

---

[5]    Such estimate is net of the sale of the MRKL Bitmain Coupons.

| Total Face Value | Percent of Purchase Price It May Be Used Towards | Expiration Date |
|---|---|---|
| $40,748,184 | | |

16.     Particularly with respect to large purchase orders for Mining Rigs, such orders are payable in installments over several months, with an initial installment made several months in advance of the expected delivery date, and remittance of the final payment one month prior to delivery of the Mining Rigs.  *Id.* at ¶ 10.  Because of the limited number of potential interested purchasers of the Bitmain Coupons, if the Debtors are able to find interested purchasers, they must be in a position to act quickly to effectuate a sale.  *Id.*

17.     Based on the Debtors' marketing efforts for the sale of similar assets, the Debtors anticipate that the purchase price for the Bitmain Coupons will be significantly discounted from their face value.  *Id.* at ¶ 8.  The discount of Bitmain Coupons is the result of a number of factors including, among other things, the number of Bitmain Coupons and Mining Rigs available on the secondary market and the expiration date of the Bitmain Coupons.  *Id.*  Such expiration date dictates the timeframe any prospective buyer has to use the Bitmain Coupons.  *Id.*  The Debtors estimate that the total aggregate market value of their Bitmain Coupons is approximately $7.4 million dollars.  *Id.*  While $7.4 million is a significant discount from the Debtors' nearly $37 million in face-value, the Debtors believe that such a price is commensurate with the market and preferable to the Bitmain Coupons expiring worthless in the Debtors' possession.  *Id.*; *see also In re Core Scientific, Inc.*, *Order (I) Authorizing and Approving Sale of Bitmain Coupons, Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (II) Granting Related Relief*, 22-90341 (Bankr. S.D. Tex. Jan. 15, 2023) [Docket No. 429] (granting authorization, but not

direction, to sell Bitmain Coupons with a face-value of $6.7 million for approximately $1.0 million).

### The Bitmain Credits

18.     In addition to the Bitmain Coupons, the Debtors estimate that they hold approximately $8.1 million in aggregate of Bitmain Credits.  *See* Ferraro Declaration at ¶ 12.  In the case of large purchase orders, Mining Rigs are purchased from Bitmain in several installment payments to enable Bitmain to account for the significant lead time required to produce (and the fluctuation in value of) Mining Rigs.  *Id.* at ¶ 13.  Specifically in those circumstances, Bitmain customers often purchase Mining Rigs for delivery over the course of one year.  In those circumstances, once a price is agreed upon for the Mining Rigs, an initial payment for a portion of the purchase price is made.  *Id.* at ¶ 13.  Another payment is scheduled a few months later.  *Id.* Finally, one month before delivery, Bitmain estimates the then–current market value for the Mining Rigs based on energy and Bitcoin prices; if the estimated market value has not significantly changed or increased, a final payment is made such that all payments total the agreed upon purchase price.  *Id.*  If, on the other hand, the market value for the Mining Rigs has declined from the time in which the initial installment payments were made, the amount of the final installment is lowered in the same proportion.  *Id.*  Where the initial installment payments exceed the estimated market value of the Mining Rigs at the time the final payment is due, Bitmain awards Bitmain Credits to compensate the purchaser.  *Id.*  Thus, Bitmain Credits reflect the difference in market value of Mining Rigs at the time a party prepays Bitmain relative to the time when a party pays the last installment, depending on their market value.  *Id.*

19.     The Bitmain Credits do not expire and are redeemable for 100 percent of their face value from Bitmain in cash two years after the final delivery date of the purchased Mining Rigs

(in this instance, the Bitmain Credits are redeemable in December 2024). *Id.* at ¶ 14. Prior to their expiration, however, the Debtors may only redeem the credits to purchase Mining Rigs for their full face-value. *Id.* As of the date hereof, the Debtors anticipate that they can realize approximately 85–88 percent of the face-value of the Bitmain Credits (or approximately $7 million) through the Bitmain Credit Monetization process. *Id.* at ¶ 16. This discount reflects the difference in the price of the Mining Rigs that the Debtors will purchase in connection with the Bitmain Credit Monetization versus the price for which the Debtors anticipate they will receive for the assignment of their rights to such Mining Rigs. *Id.* Until recently the Bitmain Credits were transferable; however, at the beginning of 2023, Bitmain updated its terms of service, restricting the ability of parties to transfer the Bitmain Credits. *Id.* at ¶ 14. Thus, unlike the Bitmain Coupons, Bitmain Credits are non-assignable and must be converted into purchase orders for Mining Rigs before the Debtors can resell their interest in those Mining Rigs to third-parties. *See id.* at ¶ 15.

## **Basis for Relief**

20.    Section 363(b)(1) of the Bankruptcy Code allows a debtor "after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Second Circuit have granted a debtor's request to sell property outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that the debtor demonstrates a "sound business purpose" for the transaction. *See Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside of the ordinary course of business). The "business judgement rule" is not an unduly strict standard; it merely requires showing that a decision to sell the property was based on the debtor's sound business judgement. *See In re Chateaugay Corp.*, 973 F.2d 141, 145 (2d Cir.

1992) (holding that a judicial approval of a section 363(b) sale was appropriate if good business reason existed to proceed with such sale); *In re Ionosphere Clubs, Inc.,* 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "good business reason"); *In re Glob. Crossing Ltd.*, 295 B.R 726, 743 (Bankr. S.D.N.Y. 2003).

21.    The business judgement rule also shields a debtor's decision making from second guessing.  *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (noting a "presumption of reasonableness attaches to a debtor's management decisions" and courts will generally not entertain objections to a debtor's conduct after a reasonable basis is set forth); *see also Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (stating "the business judgement rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company," and has continued applicability in bankruptcy) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)) (internal quotation marks omitted).

22.    Furthermore, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgement that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see also In re Enron Corp.*, 335 B.R. 22 (S.D.N.Y. 2005) ("Section 105(a) provides the authority for the bankruptcy court to carry out the provisions of § 363(b)."); *In re Bethlehem Steel Corp.*, 2003 WL 21738964 at *6, 13 (S.D.N.Y. 2003) (same).

23.    Finally, Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate property of the estate outside of the ordinary course of business by private sale.  *See* Bankruptcy Rule 6004(f)(1).  Private sales by debtors outside of the ordinary course are appropriate where the

debtors demonstrate that the sale is permissible pursuant to section 363 of the Bankruptcy Code. *See, e.g.*, *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as independent appraisal); *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998) (trustee has ample authority to conduct a sale of estate property through private sale).

I.    **Selling the Bitmain Coupons Is a Reasonable Exercise of Debtors' Sound Business Judgement and In the Best Interests of the Debtors' Estates.**

24.    Selling the Bitmain Coupons, even at a significant discount, represents a reasonable exercise of the Debtors' business judgement and should be approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code as well as Bankruptcy Rule 6004(f).  The Bitmain Coupons provide no utility to the Debtors' estates because the Debtors do not intend to use these Bitmain Coupons to purchase new Mining Rigs prior to their expiration.  *See* Ferraro Declaration at ¶ 7. The sale of the Bitmain Coupons will generate significant liquidity to help fund the continued administration of these chapter 11 cases.  *See id.*  Absent the expeditious sale of the Bitmain Coupons, the Debtors face the possibility that the Bitmain Coupons expire unused and worthless, thereby wasting an opportunity to generate millions of dollars for the Debtors' estates.

25.    Likewise, the Debtors believe that the prompt sale of the Bitmain Coupons is preferable to waiting in hopes of a market recovery for Bitmain Coupon prices.  *See id.* at ¶ 9. ***First***, the Debtors do not foresee a rebound in Bitmain Coupon prices given the significant amount of Bitmain Coupons and Mining Rigs available on the secondary market as well as anticipated depreciation in market value as the Bitmain Coupons near their expiration dates. *Id.*  ***Second***, it would be imprudent for the Debtors to speculate on Bitmain Coupon prices, particularly because the Bitmain Coupons will expire worthless in the coming months.  *See id.*  ***Third***, realizing

approximately $7.4 million would be a major infusion of capital to the Debtors' estates at a time when liquidity is needed the most. *See id.* at ¶ 7.

26.     The value of the Bitmain Coupons decline as their expiration dates approach until they are worth nothing. *See id.* at ¶ 9. Given the limited universe of potential purchasers of Bitmain Coupons and an increase in supply of Bitmain Coupons available on the secondary market, the Debtors must move quickly to execute Bitmain Coupon Sales. *See id.* at ¶10. Indeed, the Debtors fear that absent the Bankruptcy Court's approval of this Motion, the Debtors' ability to close a sale will be jeopardized. *See id.* at ¶ 11.

27.     Upon approval of the Order, the Debtors intend to immediately reengage with six potential purchasers who inquired about purchasing some or all of the Debtors' Bitmain Coupons for approximately $7.4 million in the aggregate. *See id.* at ¶ 11. Simultaneously, the Debtors will begin an accelerated sale and marketing process, consistent with the Debtors' past practices. The Debtors intend to identify potential purchasers from three principal sources: (a) Bitooda, a leading broker of mining equipment with an extensive database of industry participants; (b) Bitmain, who has directed interested brokers and mining companies to the Debtors; and (c) the Debtors' industry contacts. *See id.* Through this process, the Debtors will reach thousands of industry participants and hold discussions with a range of prospective buyers. *See id.* The Debtors believe that through a private sale process, the Debtors can execute sales in the coming days and weeks. *See id.* Given that time is of the essence, a public auction, which could take over a month to organize and conduct, is unlikely to find the Debtors a superior price for the Bitmain Coupons and may very well lead to a loss of value. *See id.*

28.     Accordingly, the Court should authorize the Debtors to sell the Bitmain Coupons.

II.    **Monetizing the Bitmain Credits Is a Reasonable Exercise of Debtors' Sound Business Judgement and In the Best Interests of the Debtors' Estates.**

29.    The Debtors believe, in a sound exercise of their reasonable business judgement, that monetizing the Bitmain Credits is in the best interests of their estates and their creditors. Because the Bitmain Credits may not be assigned, the Debtors plan to use the Bitmain Credits to purchase Mining Rigs on behalf of third-party purchasers. After entering a contract with such third-party for cash, the Debtors will purchase Mining Rigs with their Bitmain Credits and upon Bitmain's receipt of such order, assign the Debtors' rights under the order to the third-party purchaser. *See id.* at ¶ 15. The Debtors estimate that they can realize approximately 85-88 percent of the face value of the Bitmain Credits through this process. *See id.* at ¶ 16.

30.    *First*, the Bitmain Credits provide no utility to the Debtors because the Debtors do not currently intend to purchase additional Mining Rigs from Bitmain using these credits (apart from the purchases made in connection with Bitmain Credit Monetization). *See id.* at ¶ 7. As such, securing liquidity as consideration for these credits is infinitely more advantageous than keeping such credits that are worthless to the Debtors. *See id.* at ¶ 17.

31.    *Second*, while the Bitmain Credits are redeemable in cash for their full face-value in nearly two years, the Debtors believe that holding the Bitmain Credits to redemption would be imprudent given the time value of money, the associated risk of the volatility in energy and Bitcoin prices, and the possibility that Bitmain further amends the rules governing the use of Bitmain Credits. *See id.*

32.    *Third*, as part of the Debtors' efforts to efficiently administer their estates and deliver creditor recoveries, monetizing the Bitmain Credits through the purchase and resale of Mining Rigs, which the Debtors anticipate may bring as much as $7 million to the Debtors' estates, is far preferable to holding onto an asset whose value is tied to the value of a volatile

cryptocurrency and energy prices. *See id.* at ¶ 16.

33.    The Debtors in their reasonable business judgement intend to conduct a marketing and sale process for Mining Rigs the Debtors intend to purchase with the Bitmain Credits in a manner consistent with the sale of the Bitmain Coupons and past business practice. *See id.* at ¶ 18. The Debtors have determined that a private sale is appropriate because a public auction would needlessly impose additional costs and delay, without delivering any incremental value. *See id.* Moreover, given that new Mining Rigs have a robust secondary market with established market prices, the Debtors' believe that a private sale will elicit comparable offers to an auction without the associated costs and risks. *See id.* at ¶ 18. Therefore, the Debtors believe that the ability to execute immediate private sales is necessary to successfully monetize the Bitmain Credits.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

34.    The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that cause exists to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## Motion Practice

35.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

36.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and

Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

37.    No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: February 9, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**ORDER (I) AUTHORIZING (A) THE SALE**
**OF BITMAIN COUPONS AND (B) THE CONVERSION**
**OF BITMAIN CREDITS INTO MINING RIGS AND ASSIGNMENT OF**
**RIGHTS IN SUCH MINING RIGS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), authorizing, but not requiring the Debtors to sell the Bitmain Coupons and to monetize the Bitmain Credits, all as more fully set forth in the Motion; and upon the Ferraro Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are : Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (the "Hearing") before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors are authorized, but not directed, in their reasonable business judgement and in consultation with the Committee, to (a) sell the Bitmain Coupons, in whole or in part, to any bona fide, third-party purchaser, and (b) monetize the Bitmain Credits by (i) using the Bitmain Credits to enter purchase orders for Mining Rigs from Bitmain for the express purpose of selling the rights to receive such Mining Rigs to a third-party purchaser, and (ii) selling any interest or future interest in such purchase orders to a third-party for cash consideration.

3.     Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

4.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

5.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.    To the extent the provisions of this Order are inconsistent with the Motion, the provisions of this Order shall control.

7.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE