| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF CHRISTOPHER FERRARO,
INTERIM CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING
OFFICER, AND CHIEF FINANCIAL OFFICER OF THE DEBTORS, IN
SUPPORT OF THE DEBTORS' MOTION SEEKING ENTRY OF AN ORDER
(I) AUTHORIIZNG (A) THE SALE OF BITMAIN COUPONS AND (B) THE
CONVERSION OF BITMAIN CREDITS INTO MINING RIGS AND ASSIGNMENT
OF RIGHTS IN SUCH MINING RIGS, AND (II) GRANTING RELATED RELIEF**

I, Christopher Ferraro, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1. I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius Network LLC ("Celsius," and together with the above-captioned debtors and debtors-in-possession, the "Debtors").[2]

2. I submit this Declaration in support of the *Debtors' Motion Seeking Entry of an Order (I) Authorizing (A) the Sale of Bitmain Coupons and (B) the Conversion of Bitmain Credits Into Mining Rigs and Assignments of Rights in Such Mining Rigs, and (II) Granting Related Relief* (the "Motion"), filed contemporaneously herewith, and to inform the Court and other parties in interest as to the factual background surrounding the Bitmain Coupons and Bitmain Credits.

3. I am generally familiar with the Debtors' day-to-day mining operations, business, the Bitmain Coupons and the Bitmain Credits (each as defined herein). Except as otherwise indicated, all facts in this declaration (this "Declaration") are based upon my personal knowledge, my discussions with other members of the Debtors' management team and advisors, and my review of relevant documents and information concerning the Debtors' mining operations, or my opinions based upon my experience and knowledge. I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

### The Bitmain Coupons

4. As part of their mining operations, the Debtors, in the ordinary course of business, acquired thousands of specialized machines that mine digital assets ("Mining Rigs"), from, among other vendors, Bitmain Technologies Ltd. ("Bitmain"). In connection with such purchases, Bitmain provided the Debtors with certain coupons, free of charge, to purchase additional Mining

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Rigs (the "Bitmain Coupons"). I understand that Bitmain uses the Bitmain Coupons as a means of incentivizing the Debtors to purchase additional Mining Rigs from Bitmain.

5.  As of the date hereof, the Debtors hold approximately $37 million in the aggregate of Bitmain Coupons.[3] While the Bitmain Coupons can be redeemed in-kind for their face-value in full, only ten percent or thirty percent of the purchase price of any single order, depending on the Bitmain Coupon, can be paid with Bitmain Coupons. The Bitmain Coupons are structured this way so that no single purchase can be made entirely with Bitmain Coupons. The Bitmain Coupons expire six months following their acquisition and once expired cannot be used and are worthless.

6.  The following chart details the Debtors' current holdings of Bitmain Coupons (including the Excluded Bitmain Coupons):

| Total Face Value | Percent of Purchase Price It May Be Used Towards | Expiration Date |
|---|---|---|
| $1,400,030 | 10% | March 20, 2023 |
| $14,500,000 | 30% | April 23, 2023 |
| $542,252 | 30% | May 30, 2023 |
| $11,500,000 | 30% | May 30, 2023 |
| $9,331,685 | 30% | July 12, 2023 |
| $3,474,21 (Excluded Bitmain Coupons) | 30% | July 12, 2023 |
| **$40,748,184** | | |

---

[3] Such estimate is net of the sale of Bitmain Coupons pursuant to paragraph 3(b) of the *Order Approving Procedures For De Minimis Asset Sales* [Docket No. 692] (the "De Minimis Asset Sale Order"). On January 27, 2023, the Debtors filed the *Notice of Sale of Certain De Minimis Assets* [Docket No. 1951], which contemplated the sale of certain Bitmain Coupons for $2,737,466 to MRKL Infrastructure LLC (the "MRKL Bitmain Coupons"). The deadline to object to the sale of the MRKL Bitmain Coupons was February 3, 2023, and the Debtors did not receive any objections. As a result, pursuant to paragraph 3(b)(v) of the De Minimis Asset Sale Order, the sale of the MRKL Bitmain Coupons closed on or about February 4, 2023.

7. I believe that a sale of the Debtors' Bitmain Coupons is value maximizing and in the best interest of the Debtors' estates. The Bitmain Coupons currently provide no utility to the Debtors' mining business. The Debtors do not anticipate using the Bitmain Coupons and Bitmain Credits to purchase additional Mining Rigs from Bitmain for the Debtors' own mining operations.[4] I do not foresee the Debtors being interested in using the Bitmain Coupons to acquire Mining Rigs. Therefore, the Bitmain Coupons provide no utility to the Debtors' estates because the Debtors do not intend to use these Bitmain Coupons to purchase new Mining Rigs prior to their expiration. The sale of the Bitmain Coupons, on the other hand, would allow the Debtors to realize approximately $7.4 million at a time when liquidity is needed the most. Absent the Debtors expeditious sale of the Bitmain Coupons, the Debtors face the possibility that the Bitmain Coupons expire unused and worthless, thereby wasting an opportunity to generate millions of dollars for the Debtors' estates.

8. The Debtors anticipate that they may be able to sell Bitmain Coupons for approximately $7.4 million in cash consideration. While $7.4 million is a significant discount from the Bitmain Coupons' nearly $37 million face-value, the Debtors believe that such a price is commensurate with the market and preferable to the Bitmain Coupons expiring worthless in the Debtors' possession. Based on the Debtors' marketing efforts for the sale of similar assets, the Debtors anticipate that selling the Bitmain Coupons at a significant discount to their face-value is required. The discount of Bitmain Coupons is the result of a number of factors including, among other things, the number of Bitmain Coupons and Mining Rigs available on the secondary market

---

[4] The Debtors hold additional Bitmain Coupons that they do not intend to sell. Rather, the Debtors plan on using such Bitmain Coupons to pay for Mining Rigs in connection with the Bitmain Credit Monetization process (such Bitmain Coupons, the "Excluded Bitmain Coupons"). The Excluded Bitmain Coupons have an approximate aggregate $3.5 million in face-value. Unless otherwise noted, the discussion and any references to Bitmain Coupons excludes the Excluded Bitmain Coupons.

and the expiration date of the Bitmain Coupons. Such expiration date dictates the timeframe any prospective buyer has to use the Bitmain Coupons.

9. The value of Bitmain Coupons on the secondary market depreciates significantly as the Bitmain Coupons' expiration dates near, with the rate of depreciation accelerating as the expiration nears. While the estimated discount is significant, it would be a mistake to hold onto the Bitmain Coupons hoping to realize more value in a sale at a later date. The alternative to selling the Bitmain Coupons is that they expire worthless. I believe that speculating on a rebound in Bitmain Coupon prices would be imprudent given the amount of Bitmain Coupons and Mining Rigs available on the secondary market and their nearing expiration dates.

10. The Debtors believe that current market conditions and the time to expiration offer the Debtors the greatest likelihood of obtaining maximum value for the Bitmain Coupons. Therefore, a private sale process, where sales can be executed in the coming days and weeks is appropriate under the circumstances. Particularly with respect to large purchase orders for Mining Rigs, such orders are payable in installments over several months, with an initial installment made months in advance of the expected delivery date, and remittance of the final payment one month prior to delivery of the Mining Rigs. Given the limited universe of potential purchasers of Bitmain Coupons and an increase in supply of Bitmain Coupons available on the secondary market, the Debtors must move quickly to execute Bitmain Coupon Sales.

11. The Debtors are in discussions with six potential purchasers who inquired about purchasing some or all of the Debtors' Bitmain Coupons for approximately $7.4 million in the aggregate. The Debtors intend to identify potential purchasers from three principal sources: (a) Bitooda, a leading broker of mining equipment with an extensive database of industry participants; (b) Bitmain, who has directed interested brokers and mining companies to the

5

Debtors; and (c) the Debtors' industry contacts. This process will allow the Debtors to reach thousands of industry participants and hold discussions with a range of prospective buyers. Critically, a private sales process will likely lead to the execution of the Bitmain Coupon Sales in the coming days and weeks. Given that time is of the essence, a public auction, which could take over a month to organize and conduct, is unlikely to find the Debtors a superior price for the Bitmain Coupons and may very well lead to a loss of value. The Debtors fear that absent authorization to conduct a private sale and marketing process, their ability to close a sale may be jeopardized.

### The Bitmain Credits

12. Bitmain also provided the Debtors with credits in connection with the Debtors' purchase of Mining Rigs to acquire additional Mining Rigs (the "Bitmain Credits"). The Debtors estimate that they hold approximately $8.1 million in aggregate of Bitmain Credits.

13. In the case of large purchase orders, Mining Rigs are purchased from Bitmain in several installment payments to enable Bitmain to account for the significant lead time required to produce (and the fluctuation in value of) Mining Rigs. Specifically in those circumstances, Bitmain customers, including the Debtors, often purchase Mining Rigs for delivery in over the course of one year. In those circumstances, once a price is agreed upon for the Mining Rigs, an initial payment for a portion of the purchase price is made. Another payment is scheduled a few months later. Finally, one month before delivery, Bitmain estimates the then–current market value for the Mining Rigs based on energy and Bitcoin prices; if the estimated market value has not significantly changed or increased, a final payment is made such that all payments total the agreed upon purchase price. If, on the other hand, the market value for the Mining Rigs has declined from the time in which the initial installment payments were made, the amount of the final installment

is lowered in the same proportion.  Where the initial installment payments exceed the estimated market value of the Mining Rigs at the time the final payment is due, Bitmain awards Bitmain Credits to compensate the purchaser.  Thus, Bitmain Credits reflect the difference in market value of Mining Rigs at the time a party prepays Bitmain relative to the time when a party pays the last installment, depending on their market value.

14.     The Bitmain Credits do not expire and are redeemable for 100 percent of their face value from Bitmain in cash two years after the final delivery date of the purchased Mining Rigs (in this instance, the Bitmain Credits are redeemable in December 2024).  Prior to their expiration, however, the Debtors may redeem the credits for Mining Rigs in-kind for their full face-value.  Until recently the Bitmain Credits were transferable; however, at the beginning of 2023, Bitmain updated its terms of service, restricting the ability of parties to transfer the Bitmain Credits.

15.     I believe, in a sound exercise of the Debtors' reasonable business judgement, that immediate monetization of the Bitmain Credits is in the best interests of the Debtors' estates and their creditors.  Because the Bitmain Credits cannot be directly assigned, the Debtors plan to use the Bitmain Credits to purchase Mining Rigs on behalf of third-party purchasers.  To monetize the Bitmain Credits, the Debtors must first enter into agreements with third-parties to use the Debtors' Bitmain Credits to purchase Mining Rigs (with no additional cost of acquisition), and then assign the Debtors' rights under the purchase order to the third-party purchasers (the "<u>Bitmain Credit Monetization</u>").

16.     As of the date hereof, the Debtors anticipate that they can realize approximately can realize approximately 85–88 percent of the face-value of the Bitmain Credits (or approximately $7 million) through the Bitmain Credit Monetization process.  This discount reflects the difference in the price of the Mining Rigs that the Debtors will purchase in connection with

7

the Bitmain Credit Monetization versus the price for which the Debtors anticipate they will receive for the assignment of their rights to such Mining Rigs.

17. While the Bitmain Credits are redeemable in cash for their full face-value in nearly two years, the Debtors believe that holding the Bitmain Credits to redemption would be imprudent given the time value of money, the associated risk of the volatility in energy and Bitcoin prices, and the possibility that Bitmain further amends the rules governing the use of Bitmain Credits. Securing liquidity as consideration for these credits is infinitely more advantageous than keeping such credits that are worthless to the Debtors. The sale of the Bitmain Credits offers the Debtors' a golden-opportunity to realize value on an illiquid and risky asset.

18. The Debtors in their reasonable business judgement intend to conduct a marketing and sale process for Mining Rigs the Debtors intend to purchase with the Bitmain Credits in a manner consistent with the sale of the Bitmain Coupons and past business practice. A private sale is appropriate because a public auction would needlessly impose additional costs and delay, without delivering any incremental value. Moreover, given that new Mining Rigs have a robust secondary market with established market prices, the Debtors believe that a private sale will elicit comparable offers to an auction without the associated costs and risks. Therefore, the Debtors believe that the ability to execute private sales immediately is necessary to successfully monetize the Bitmain Credits.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 9, 2023

*/s/ Christopher Ferraro*
Name: Christopher Ferraro
Title: Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network LLC