**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
John J. Ramirez
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
       sam.hershey@whitecase.com
       john.ramirez@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: mandolina@whitecase.com
       gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO IMMANUEL HERRMANN AND DANIEL A. FRISHBERG'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

**Page**

PRELIMIMINARY STATEMENT ...................................................................................................1

OBJECTION..................................................................................................................................3

    I.    No Cause Exists to Appoint a Chapter 11 Trustee. ................................................4

    II.    The Appointment of a Chapter 11 Trustee Is Against the Interests of Creditors, Equity Holders, and the Estates .............................................................................7

        A.    Appointment of a Chapter 11 Trustee Would Jeopardize the Progress That Has Been Made..........................................................................................7

        B.    The Investigatory Work Is Substantially Complete and Estate Claims Are Being Pursued ........................................................................................9

        C.    A Trustee will Impose Substantial Financial Burden on the Estates ...........9

CONCLUSION.............................................................................................................................11

RESERVATION OF RIGHTS .....................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Marwil (In re Bayou Grp., LLC)*,
    564 F.3d 541 (2d Cir. 2009) .................................................................................................. 4, 9

*In re 1031 Tax Grp., LLC*,
    374 B.R. 78 (Bankr. S.D.N.Y. 2007) ..................................................................................... 5, 7

*In re Adelphia Communs. Corp.*,
    336 B.R. 610 (Bankr. S.D.N.Y. 2006) ....................................................................................... 4

*In re Ashley River Consulting, LLC*,
    No. 14-13406 (MG), 2015 Bankr. LEXIS 1008 (Bankr. S.D.N.Y. Mar. 31, 2015) ............... 4, 7

*In re Bergeron*,
    No. 13-02912-8-SWH, 2013 Bankr. LEXIS 4556 (Bankr. E.D.N.C. Oct. 31, 2013) ................ 7

*In re Euro-Am. Lodging Corp.*,
    365 B.R. 421 (Bankr. S.D.N.Y. 2007) ....................................................................................... 4

*In re Ionosphere Clubs, Inc.*,
    113 B.R. 164 (Bankr. S.D.N.Y. 1990) ................................................................................... 4, 7

*In re LHC, LLC*,
    497 B.R. 281 (Bankr. N.D. Ill. 2013) ........................................................................................ 6

*In re RMS Titanic, Inc.*,
    No. 3:16-bk-2230-PMG, 2018 Bankr. LEXIS 2094 (Bankr. M.D. Fla. June 29, 2018) ......... 10

*In re V. Savino Oil & Heating Co.*,
    99 B.R. 518 (Bankr. E.D.N.Y. 1989) ........................................................................................ 7

*See In re Climate Control Mech. Servs.*,
    585 B.R. 192 (Bankr. M.D. Fla. 2018) ..................................................................................... 6

**STATUTES**

11 U.S.C. § 1104(a) ..................................................................................................................... 4, 7

**TREATISES**

7 COLLIER ON BANKRUPTCY ¶ 1104.02[2][a] (16th ed. 2022) ......................................................... 4

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") files this objection (the "**Objection**") to *Immanuel Herrmann and Daniel A. Frishberg's Motion to Appoint a Chapter 11 Trustee* (the "**Trustee Motion**")[2] and respectfully states as follows in support thereof:

### PRELIMIMINARY STATEMENT

1.    Mr. Frishberg and Mr. Herrmann (the "**Movants**") seek appointment of a trustee nearly seven months after the Petition Date, right as the Debtors have indicated that they intend to propose a plan to resolve these cases, and as the Committee has said that it will move to file its own plan should the Debtors fail to do so.  The Movants' request should be denied because the appointment of a trustee is unwarranted and would harm the interests of the Debtors' customers, creditors, and estates.  The Committee shares the frustration felt by the Debtors' customers.  It has worked hard to advance the interests of account holders in these chapter 11 cases and has been actively negotiating a plan that the Committee believes can maximize recoveries.  Those negotiations remain ongoing.  Progress will either be made in the next week or the Committee will proceed with its objection to the extension of the Debtors' exclusive periods.  The appointment of a trustee at this stage would discard all progress made toward a value-maximizing outcome, add additional expense as a trustee is brought up to speed, and end any hope for a reorganization.

2.    As support for their trustee request, the Movants cite the misdeeds of the Debtors' prepetition management and concerns about the fate of estate causes of action.  The actions of Mr. Mashinsky, Mr. Leon, and their co-conspirators were and are wrong and offensive.  The Committee is committed to ensuring that claims and causes of action are preserved and brought

---

[2] This Objection also responds to *Víctor Ubierna De Las Heras' Statement in Support of Immanuel Herrmann and Daniel A. Frishberg's Motion to Appoint a Chapter 11 Trustee* [Dkt. No. 2020].

against those bad actors. Those claims and causes of action against former management, however, do not establish cause to appoint a trustee.

3. Crucially, in determining whether to appoint a trustee, the relevant inquiry is with respect to the Debtors' current management. Messieurs Mashinsky and Leon are gone, as are many of the other individuals identified as participating in the previous bad acts that led to these chapter 11 cases. The Debtors' reorganization is being led by a special committee of directors, composed of David Barse and Alan Carr, who are independent from the Debtors' prepetition management. Moreover, the Debtors' day-to-day operations are being led by Christopher Ferraro as interim CEO, who joined the Debtors in March 2022 and is not alleged to have engaged in any mismanagement or other bad acts.

4. As for the causes of action against prior management, those actions have been (and remain) subject to investigation and will be pursued. The Committee has cooperated with the Examiner and conducted its own investigation. The Committee intends to take action in short order—either with the cooperation of the Debtors or unilaterally—to make sure that valuable causes of action are preserved for the benefit of creditors. The Movants express dissatisfaction that certain causes of action have not yet been brought (while simultaneously complaining about other litigation that has been brought). But disagreement about the strategy for bringing claims does not constitute cause to appoint a trustee.

5. The Movants' dissatisfaction with a plan of reorganization that has not been filed is also not a proper basis to appoint a trustee—especially insofar as the Movants' position is based on a summary description at a prior hearing of the plan that is currently being negotiated and on leaked incomplete information about alleged bids for the Debtors' assets. Far from establishing cause, the forthcoming proposal of a plan—whether by the Debtors or the Committee, should it be

2

permitted to do so—underscores the damage that appointing a trustee would do. Significant progress has been made over the last several months. The Court has heard and issued opinions with respect to issues regarding customer entitlements that are important to the development of a plan and distribution of the value of the Debtors' estates. The Debtors have worked, in consultation with the Committee, to develop what they believe is a value-maximizing plan based on those rulings, which the Debtors are expected to propose in the near-term. Although there has been no final agreement at this time, significant progress has been made, including confidential proposals to the Custody, Withhold, and Loan ad hoc groups.

6. Against this backdrop, the appointment of a trustee makes no sense. It will halt the progress that has been made in this case. It will cause the estates to incur substantial costs at a time when they have limited resources–value that is better allocated to creditors. And it will derail the plan negotiations in favor of a liquidation, which the Committee is ready to prosecute if negotiations fail and a better alternative is not available. Whether the Debtors retain exclusivity to propose a plan or the exclusivity is lifted and the Committee is permitted to do so, the appointment of a trustee is not warranted and would harm the interests of the Debtors' customers and creditors.

## **OBJECTION**

7. Section 1104(a) of the Bankruptcy Code provides that the court shall order the appointment of a trustee –

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard

>to the number of holders of securities of the debtor or the amount
of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

8. "The twin goals of the standard for appointment of a trustee should be protection of the public interest and the interests of creditors . . . and facilitation of a reorganization that will benefit both the creditors and the debtors. . . ." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (quoting H.R. REP. NO. 595, 95th Cong., 1st Sess. 232 (1977)). The party seeking to appoint a chapter 11 trustee bears the burden of showing by clear and convincing evidence that "cause" exists under section 1104(a)(1) or that there is a need for a trustee under section 1104(a)(2). *In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007); *In re Adelphia Communs. Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006). As the Second Circuit has made clear, the appointment of a trustee in a chapter 11 case is an unusual remedy, and "[t]he standard for [section] 1104 appointment is very high . . . ." *Adams v. Marwil (In re Bayou Grp., LLC)*, 564 F.3d 541, 546 (2d Cir. 2009) (quoting *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir. 2005)); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1104.02[2][a] (16th ed. 2022) (noting that appointment of a trustee in a chapter 11 case is an "extraordinary" remedy). Here, the Trustee Motion should be denied, as neither bases to appoint a trustee are present in these cases.

**I.    No Cause Exists to Appoint a Chapter 11 Trustee.**

9. The court's focus under section 1104(a)(1) "is on the debtor's ***current management***"—not, as is the case in the Trustee Motion, "the misdeeds of past management." *In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 Bankr. LEXIS 1008, at *29 (Bankr. S.D.N.Y. Mar. 31, 2015). Indeed, the Trustee Motion focuses entirely on the conduct of the Debtors' prepetition management. *See* Trustee Mot. at 5 (arguing that "pre-petition conduct" of

4

Celsius is grounds for appointment of a trustee); *id.* at 13 (discussing the alleged conduct of Alex Mashinsky); *id.* at 20 (alleging prepetition misconduct).

10.     The Committee agrees with the Movants that the Debtors' prior management committed a litany of bad acts, including fraud, dishonesty, incompetence, and gross mismanagement.  They will be held accountable.  But that fact "does not necessarily provide grounds for the appointment of a trustee under [section] 1104(a)(1), as long as a court is satisfied that the current management is free from the taint of prior management." *In re 1031 Tax Grp., LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007).

11.     Here, the Movants have failed to meet their burden.  The Debtors' co-founders, Alex Mashinsky and Daniel Leon, resigned approximately five months ago at the Committee's behest.  They have been replaced by Christopher Ferraro, as interim CEO.  Other members of the Debtors' former management team have also resigned since the Debtors paused withdrawals, including the chief operating officer, chief financial officer, chief executive officer of the mining business, head of corporate/VIP, vice president of finance, treasurer, and vice president of engineering. *See Supp. Dec. of Christopher Ferraro, Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Support of the Debtors' Amended Mot. for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* at 3-4 [Dkt. No. 1427].[3]  Even before former management

---

[3] Where former members have appointed current members of management, a debtor must "demonstrate that the new management is unconflicted by any association with the tainted members of the governing body that made the selection or appointment. If the parties opposing appointment meet this burden, the ultimate burden of establishing cause shifts back to the moving parties." *1031 Tax Grp.*, 374 B.R. at 88. While the Movants do not invoke this rule, to the extent it applies in this case, the Debtors will have to meet their burden. The Committee notes that the members of the special committee are restructuring professionals whose credentials are well established. The special committee, at the insistence of the Committee, caused Mr. Mashinsky and Mr. Leon to resign. The Debtors consulted with the Committee regarding the composition of current management, including the appointment of Christopher Ferraro as interim CEO. The special committee has also overseen the Debtors' position against the Preferred Series B Equityholders in the litigation regarding customer claims.

5

resigned, the Debtors' management in these chapter 11 cases was overseen by a special committee that composed of Alan Carr and David Barse. Those independent directors remain at the helm.

12.    It is the Committee's understanding that the special committee (a) does not answer to Mr. Mashinsky or any other members of the Debtors current or former management team and (b) has the full delegation of authority with respect to issues related to this restructuring. The special committee and current management, including Mr. Ferraro, have committed to provide transparency and cooperate with the examiner and the Committee in their respective investigations.[4] *See In re Climate Control Mech. Servs.*, 585 B.R. 192, 200 (Bankr. M.D. Fla. 2018) (denying the appointment of a chapter 11 trustee after finding that the tainted chief financial officer was no longer part of the "current management," and the new management was cooperating with the examiner to rectify the financial reporting deficiencies). The Movants do not assert any facts that indicate or demonstrate wrongdoing on the part of existing management or the special committee. *In re LHC, LLC*, 497 B.R. 281, 309 n. 23 (Bankr. N.D. Ill. 2013) (denying trustee motion because the court "will not place blame on current management for the actions of previous management").[5] To the extent there were, the Committee is ready to take appropriate action. Indeed, in connection with the Debtors' first request for an extension of their exclusive periods,

---

[4] *See* Nov. 1, 2022 Hr'g Tr. 74:23-25 [Dkt. No. 1280] (Mr. Kwasteniet: "[T]he Debtors remain happy and willing to cooperate and to facilitate [examiner's and others'] inquiries."); Nov. 15, 2022 Hr'g Tr. 35:22-36:3 [Dkt. No. 1386] (Mr. Ferraro: "The Debtor takes this reporting and diligence obligations seriously and many employees are working tirelessly to respond to information requests from the examiner, the UCC, aid and federal regulators, the Debtor Special Committee, potential bidders in the Debtor's sales processes and other stakeholders.")

[5] The Movants purport to cite the Examiner's Report to show that Mr. Ferraro "knew that insiders were cashing out CEL tokens with customer money." Trustee Mot. at 23. But a lone excerpt from the Examiner's Report cannot support the drastic measure of appointing a trustee—especially in light of this Court's statement that the Examiner's Report "is hearsay. . . not evidence." Feb. 6, 2023 Hr'g Tr. 100:10 [Dkt. No. 2016]. Additionally, while the special committee was appointed by Mr. Mashinsky, and while a trust settled by one of those members holds the Debtors' preferred equity, the special committee has demonstrated that neither fact creates a conflict. The special committee removed Mr. Mashinsky and litigated vigorously against the preferred equity.

6

the Committee served and received discovery to investigate the independence of the special committee. That investigation did not reveal any issues at that time.

## II. The Appointment of a Chapter 11 Trustee Is Against the Interests of Creditors, Equity Holders, and the Estates

13. The Movants have also failed to meet their burden under 1104(a)(2) to show that the appointment of a chapter 11 trustee is in the "interests of the creditors . . . and other interests of the estate." 11 U.S.C. § 1104(a)(2); *Ionosphere Clubs, Inc.*, 113 B.R. at 168; *Ashley River Consulting*, 2015 Bankr. LEXIS 1008, at \*34. Courts have found that this standard "entails the exercise of a spectrum of discretionary powers and equitable considerations, including a cost-benefit analysis." *In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989); *see also Ashley River Consulting*, 2015 Bankr. LEXIS 1008, at \*34; *Ionosphere Clubs*, 113 B.R. at 168 (noting that "courts look to the practical realities and necessities" in considering whether to appoint a chapter 11 trustee under section 1104(a)(2)). Moreover, "[e]ven in circumstances where fraud or mismanagement is present, the legislative history of [section] 1104(a)(1) suggests that the court . . . balance the benefit to be gained from such an appointment against the detriment to the reorganization effort and the rights of the debtor that may result from such an appointment." *In re Bergeron*, No. 13-02912-8-SWH, 2013 Bankr. LEXIS 4556, at \*22 (Bankr. E.D.N.C. Oct. 31, 2013) (internal quotations omitted).

14. The appointment of a chapter 11 trustee is contrary to the interests of the estates and stakeholders for at least three reasons.

### A. Appointment of a Chapter 11 Trustee Would Jeopardize the Progress That Has Been Made

15. "Where a case has an active creditors committee functioning effectively and working well with the debtors. . . there is little benefit in appointing a trustee." *1031 Tax Grp.*, 374 B.R. at 91. Such is the case here. For the past several months, the Committee and its advisors

7

have been working with the Debtors and their advisors to diligence and negotiate improved terms for various sale and plan sponsorship proposals submitted under the Court-approved bidding procedures. This process commenced in parallel with the Debtors' development and negotiation of a standalone plan. Contemporaneously with the plan and sale processes, the Committee and the Debtors have also worked to resolve various issues concerning claims associated with the Earn, Custody, and Withhold programs. Those issues would have had to be resolved even if a trustee had been appointed on the first day of these chapter 11 cases. The Debtors' and Committee's efforts have recently focused on discussions with an unaffiliated third-party investor regarding a potential plan of reorganization that would, among other things, return liquid cryptocurrency to a large majority of the Debtors' smaller account holders and provide the opportunity for a distribution of liquid cryptocurrency to other account holders.[6] Proposals have been made to the ad hoc groups of Custody, Withhold, and Loan claimants. The appointment of a chapter 11 trustee would delay the plan process, which means delaying the goal of these chapter 11 cases: returning value to the Debtors' customers.

---

[6] The Movants allege that they were "misled" with respect to the bids and that the Debtors have "barely spoken to regulators." Trustee Mot. at 5. The Movants are wrong on both points. The final bid deadline for the whole company sale process was December 12, 2022. As the Debtors explained at the January 24 hearing, the bids received generally fell into three categories: (a) bids for discrete assets, (b) bids for migration of accounts to a competitor's platform, (c) bids for migration of the Debtors' assets to a new, independently managed recovery platform. Jan. 24, 2023 Hr'g Tr. 32:18-33:14 [Dkt. No. 1949]. However, there were challenges related to realizing those bids. First, a significant portion of the assets in the Debtors' portfolio is illiquid (*e.g.*, staked Ethereum as well as the mining business, a retail loan portfolio, and investments in other crypto projects). This means the Debtors could not simply distribute their assets without a value destructive fire sale. Second, the advisors to the Committee have had discussions with regulators from states and have performed their own in-depth analysis of the regulatory requirements related to the different restructuring options available to the Debtors. Third, the Committee has always acknowledged that transparency is paramount in this bankruptcy. But the desire for more information should not be at the expense of maximizing value for account holders.

8

### B.  The Investigatory Work Is Substantially Complete and Estate Claims Are Being Pursued

16.     The Movants complain that the litigation that has been brought by the Debtors thus far is a waste of money (*e.g.*, the litigation against Mr. Stone related to the KeyFi transaction and claim to recover preferences against Voyager Digital Holdings, Inc.)[7] and that litigation has not yet been brought against prior members of the management team.  *See* Trustee Mot. at 6.  Neither of these complaints warrants appointment of a trustee.  To be clear, there has been no waiver of any claims against prior management or other any insiders.  To the contrary, the Committee intends to shortly take action to ensure those claims are preserved for the benefit of their victims, whether unilaterally or with the consent of the Debtors.

### C.  A Trustee will Impose Substantial Financial Burden on the Estates

17.     When considering whether a trustee is in the best interests of the estate, bankruptcy courts consider whether a trustee "may impose a substantial financial burden on a hard pressed debtor seeking relief under the Bankruptcy Code." *Bayou Grp.*, 564 F.3d at 546.  As this Court is aware, a trustee can impose significant costs on an estate, as evidenced by the recent cases in which a chapter 11 trustee was appointed:

---

[7] The Movants cite the Debtors' failure to file a proof of claim in the Voyager bankruptcy case as a reason for the Court to appoint a trustee.  *See* Trustee Mot. at 14, 24-25.  That mistake is plainly insufficient to justify a trustee.  In any case, the Committee is focused on this issue and working to identify an acceptable solution.

| Case | Total Fees | Total Expenses | Total Compensation | Duration |
|---|---|---|---|---|
| *In re Sentinel Management Group, Inc.*, 07-14987 (Bankr. N.D. Ill. Aug. 17, 2007) ($100M-$500M in liabilities; $500M-$1B in assets) | $24,692,255.26 | $531,220.17 | $25,223,475.43 | 15 months |
| *In re China Fishery Group Limited (Cayman)*, 16-11895 (Bankr. S.D.N.Y. June 30, 2016) ($10M-$50M in liabilities; $500M-$1B in assets) | $57,437,255.45 | $1,483,003.84 | $58,920,259.29 | 55 months |
| *In re MF Global Holdings Ltd.*, 11-15059 (Bankr. S.D.N.Y. Oct. 31, 2011) ($1B+ in both assets and liabilities) | $44,347,605.35 | $965,466.70 | $45,313,072.05 | 18 months |

18. There is no justification for the additional administrative costs associated with a trustee in these cases, at this time. In fact, the additional layer of administrative expenses will in all likelihood decrease creditor recoveries. A trustee would need to spend significant time learning about the Debtors' business and the events that have transpired in these cases over the last seven months, and to retain its own professionals. The Committee, the Debtors' current management team, and the Debtors' special committee have spent significant time and effort learning the Debtors' business and working to develop a plan that they hope will maximize the value of the Debtors' estates for creditors. Installing a trustee to repeat this work would create a substantial, and unnecessary, waste of estate resources.

19. Moreover, at least one bankruptcy court "has considered the unique nature of the [d]ebtor's assets, and the efforts currently in progress to liquidate the assets for the benefit of the estate" when declining to appoint a trustee. *In re RMS Titanic, Inc*., No. 3:16-bk-2230-PMG, 2018 Bankr. LEXIS 2094, *12 (Bankr. M.D. Fla. June 29, 2018). The crypto industry is the epitome of a unique asset, and this Court should deny the Trustee Motion for that reason as well.

## CONCLUSION

20.     For the reasons set forth herein, the Committee requests that the Court deny the Trustee Motion and grant such other and further relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

21.     The Committee reserves all of its rights to supplement or amend this Objection, to raise additional issues with the Trustee Motion at the hearing, and to present evidence at the hearing.

Dated: February 12, 2023            Respectfully submitted,
New York, New York

/s/ *Aaron E. Colodny*
**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
John J. Ramirez
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
         sam.hershey@whitecase.com
         john.ramirez@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
         gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*