| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:  (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:  (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois  60654 |
| | Telephone:  (312) 862-2000 |
| | Facsimile:  (312) 862-2200 |

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re Docket No.: 1975** |

**DEBTORS' OBJECTION TO IMMANUEL HERRMANN AND**
**DANIEL A. FRISHBERG'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (this "Objection") in response to *Immanuel Herrmann and Daniel A. Frishberg's Motion to Appoint a Chapter 11 Trustee* [Docket No. 1975] (the "Motion"), filed by Immanuel Herrmann and Daniel A. Frishberg (together, the "Movants").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Preliminary Statement**[2]

1. The Motion should be denied. The Movants make several arguments that there is "cause" to appoint a trustee under section 1104(a)(1) of the Bankruptcy Code, but none have merit. *First*, the Movants' allegations primarily concern actions by the former management team. These individuals no longer have any control over the Debtors or their operations. Moreover, all operational and strategic decision-making authority, including the power to oversee these chapter 11 cases and direct the Debtors' restructuring efforts, has been delegated to the special committee of the board (the "Special Committee"), consisting of two disinterested directors with significant restructuring experience. The Special Committee has broad powers to investigate potential misconduct, evaluate and approve restructuring transactions, and manage the Debtors' operations. Furthermore, the Debtors' former management team was replaced by the Special Committee in the months after the Petition Date, with Christopher Ferraro now serving as interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer and reporting directly to the Special Committee.

2. *Second*, several of Movants' arguments repeat allegations made in prior motions, which were rejected by this Court.[3] These allegations remain as untrue today as they were when they were first presented. Further, the Debtors are finalizing a stipulation with the Committee regarding the assignment of estate claims against Alex Mashinsky and certain members of former management to a litigation trust, which claims will be pursued for the benefit of the customers.

---

[2] Capitalized terms used but not defined in this section shall have the meanings ascribed to such terms elsewhere in this Objection.

[3] *See Memorandum Opinion and Order Denying Daniel A. Frishberg's Motion for Reconsideration of the GK8 Sale* [Docket No. 1947]; *Memorandum Opinion and Order Denying Daniel A. Frishberg's Motion for an Order Compelling the Debtors to Institute Cost Saving Measures* [Docket No. 1269]; *Memorandum Opinion and Order Denying Daniel A. Frishberg's Motion to Compel the Debtors or UCC to Bring Insider Clawback Actions* [Docket No. 1267].

3. Movants further allege that the appointment of a trustee would be in the best interests of the Debtors' stakeholders. Not so. The appointment of a trustee would be highly value destructive and scuttle the Debtors' efforts to bring these chapter 11 cases to a value-maximizing conclusion. The Debtors, in consultation with the Committee, have been evaluating potential restructuring transactions for months and expect to present a detailed description of their plans for an exit from chapter 11 prior to the hearing on the Motion. The appointment of a trustee would introduce substantial additional cost, delay, and inefficiency that would drastically reduce potential recoveries available to creditors, including Movants.

4. Additionally, as described in the Debtors' Second Exclusivity Motion,[4] the Debtors have made substantial progress in these chapter 11 cases, including:

- researching, briefing, litigating, and obtaining the Court's ruling on a number of threshold legal issues in these chapter 11 cases, including the determination that Earn assets constitute property of the Debtors' estates, and authorizing the sale of stablecoins [Docket No. 1822] and that Custody and certain Withhold assets are not property of the estate [Docket No. 1767];

- initiating the distribution of digital assets that are not property of the estate to customers [Docket No. 1767];

- litigating whether customers have claims at every Celsius entity, one of the principal unresolved legal issues;

- securing Court approval of the sale of the GK8 Debtors' assets to provide critical liquidity to fund the Debtors' operations through the plan confirmation process [Docket No. 1686], filing the GK8 Debtors for chapter 11 to consummate the approved sale transaction, obtaining critical first-day relief for such entities, and achieving recognition of the chapter 11 cases and sale order in Israeli courts;

- preparing and filing schedules of assets and liabilities and statements of financial affairs for each of the Debtors and GK8 Debtors;

---

[4] *Debtors' Second Motion for Entry of an Order (I) extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1940].

- obtaining entry of the general claims bar date order in these chapter 11 cases to facilitate the timely filing of claims;

- addressing hundreds of diligence requests from the Examiner, resulting in the *Interim Report of Shoba Pillay, Examiner* [Docket No. 1411] and culminating in the anticipated release of her final report on January 30, 2023 (the "Examiner's Final Report") [Docket No. 1956]; and

- cooperating with the Committee, the U.S. Trustee, and regulators in responding to ongoing diligence requests.

The Debtors understand that Movants have grievances regarding the Debtors' former management team, particularly in light of the Examiner's Final Report, but appointing a trustee at this time would not achieve the objectives Movants seek. Instead, it would unwind the substantial progress to date and set these chapter 11 cases back to square one.

5.     Ultimately, the issues raised in the Motion are unfounded, untimely, and concern allegations that were previously rejected by this Court. In circumstances similar to these, this Court and others have denied requests for the appointment of a trustee. The Court should do the same here.

## Objection

**I.     No Cause Exists for Appointment of a Chapter 11 Trustee.**

6.     Section 1104(a)(1) of title 11 of the United States Code (the "Bankruptcy Code") provides that a trustee shall be appointed for cause, which includes "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by ***current*** management." 11 U.S.C. § 1104(a) (emphasis added). The appointment of a trustee is considered an extraordinary remedy. *See In re Sharon Steel Corp.*, 871 F. 2d 1217, 1225 (3d Cir. 1989); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 655 (Bankr. S.D.N.Y. 2006).

7.     Thus, there is a strong presumption against appointing a chapter 11 trustee, which "must be considered a last resort." *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998);

4

*see also In re Sharon Steel Corp.*, 871 F.2d at 1225. "'Chapter 11 of the Code is designed to allow the debtor-in-possession to retain management and control of the debtor's business operations unless a party in interest can prove that the appointment of a trustee is warranted,' and there is a strong presumption that the debtor should be permitted to remain in possession absent a showing of need for the appointment of a trustee." *Adelphia Commc'ns Corp.*, 336 B.R. at 655 (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990)).

8.   Accordingly, the party seeking appointment of a trustee must meet a "very high" standard to justify appointment of a trustee. *In re Smart World Techs., LLC*, 423 F.3d 166, 176 (2d Cir. 2005). Clear and convincing evidence must be presented to support such requested relief. *See Adelphia Commc'ns Corp.*, 336 B.R. at 656; *Ionosphere Clubs*, 113 B.R. at 168. As set forth herein, Movants fall well short of establishing the need for a trustee under the clear and convincing evidence standard—or any standard.

      **A.**    **Movants Fail to Demonstrate Cause for Appointment of a Trustee.**

9.   Movants present a laundry list of allegations they assert are grounds for appointment of a trustee—which primarily relate to conduct by former management or regurgitate prior allegations that were rejected by this Court. To the extent that these allegations relate to current management, they are without merit. Such allegations do not support a finding that "cause" exists for the appointment of a trustee under section 1104(a)(1) of the Bankruptcy Code.

          **1.**    **Misconduct by Former Management Does Not Constitute "Cause" Under Section 1104(a)(1) Where Management Has Been Replaced.**

10.   The Movants place a heavy emphasis on alleged misconduct by former management; such allegations cannot provide "cause" for the appointment of a trustee. Section 1104 of the Bankruptcy Code provides that "cause" for a trustee's appointment includes misconduct "by current management." 11 U.S.C. § 1104(a)(1). This Court held in *In re The 1031 Tax Group, LLC* that

5

even where "the debtor's prior management might have been guilty of fraud, dishonesty, incompetence, or gross mismanagement [, that] does not necessarily provide grounds for the appointment of a trustee under § 1104(a)(1), as long as a court is satisfied that the current management is free from the taint of prior management." 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007). The Court held that where prior management had "irrevocably delegated" management authority to new management, and new management has not engaged in fraud, dishonesty, incompetence, or gross mismanagement, "cause" does not exist for the appointment of a trustee under section 1104(a)(1) of the Bankruptcy Code. *Id.* at 90.

11. Here, the Debtors are currently run by a new management team free from the allegations of misconduct levied against prior management. The Debtors' former management was replaced by the Special Committee. Specifically, on September 27, 2022, the Special Committee authorized the Debtors to immediately terminate Alex Mashinsky and Daniel Leon's employment if they did not resign. Both resigned on September 27, 2022. The Debtors' management team is now led by Mr. Ferraro, who serves as interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer and reports directly to the Special Committee.[5] The former management team that was responsible for the alleged misconduct has been replaced, and the Debtors now operate under new management. The allegations made by Movants with respect to prepetition conduct by former management cannot therefore constitute cause under section 1104(a)(1) of the Bankruptcy Code for the appointment of a trustee. Movants also cursorily allege postpetition fraud but provide no evidence, let alone clear and convincing evidence, of any such fraud.

---

[5] Mr. Ferraro was appointed as interim Chief Executive Officer and Chief Restructuring Officer on September 27, 2022.

### 2. Movants' Allegations Concerning a Potential Plan Are Untimely and Inappropriate.

12. Movants argue that because the terms of a potential plan discussed at the January 24, 2023 hearing before this Court are unsatisfactory to *them*, such displeasure is sufficient cause to justify the appointment of a trustee.[6] This argument is premature and lacks merit. **First**, Movants' arguments are disguised confirmation objections to a plan that has not been filed. To state that such arguments are premature is an understatement. **Second**, even if a plan of reorganization were filed, Movants' arguments would still be inappropriate and not constitute "cause" for appointment of a chapter 11 trustee—Movants, like all other similarly situated account holders, may express their displeasure by objecting to the plan at the appropriate time, not by seeking to replace the plan proponent just because the Movants would prefer a different plan.

### 3. The Timing for Commencement of Avoidance Actions is Within the Debtors' Discretion Absent a Showing of Cause.

13. Movants allege that because the Debtors have not yet pursued avoidance actions, cause exists to justify the appointment of a trustee. Not so. A debtor's power to commence litigation on behalf of the bankruptcy estate is permitted—not mandated—by the Bankruptcy Code. *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y. 1988) ("The responsibilities of a trustee or debtor in possession to collect assets and to effectuate the policy of equality of distribution do not per se compel litigation by such fiduciaries."). Pursuant to section 546(a) of the Bankruptcy Code, the Debtors have up to two years to commence avoidance actions. 11 U.S.C. § 546(a). As such, the debtor in possession has substantial discretion in choosing if, and when, to institute an estate cause of action. *Id.* Only when the debtor in possession abuses such

---

[6] *See* Motion at 5 ("We had always counted the debtors would return the *remaining* liquid assets to customers as a **bare minimum floor** in any plan. If they cannot find a way to distribute value without forcing customers to lock up their remaining funds, and forcibly invest them in a cash-flow-negative mining company that could just land us back in bankruptcy court, then it's clear that the Debtors aren't serious about putting forward a viable plan, and it's time for a trustee to step in now.").

7

discretion do creditors have the ability to request the right to intervene on behalf of the estate. *See* 11 U.S.C. §§ 1103(c)(5); 1107; 1109; *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985) (holding that the Bankruptcy Code "impl[ies] a qualified right for creditors' committees to initiate suit [on behalf of the bankruptcy estate] with the approval of the bankruptcy court"); *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 71, n.7 (2d Cir. 2002) (expanding derivative standing to individual creditors).

14. Movants already sought this relief on a previous occasion, which was denied by this Court. *See Memorandum Opinion and Order Denying Daniel A. Frishberg's Motion to Compel the Debtors or UCC to Bring Insider Clawback Actions* [Docket No. 1267]. The Court held that "now is not the time to launch litigation before potential claims have been fully investigated by the Committee or Examiner, or by the numerous state or federal regulatory agencies or prosecutors that are now or may in the future conduct investigations and evaluate claims." Of these investigations, only that of the Examiner is complete, which does not address the presence or validity of avoidance actions. However, the Debtors are finalizing a stipulation with the Committee that would assign estate claims against former management to a litigation trust, which would pursue these claims for the benefit of the customers. Accordingly, Movants' requested relief remains premature.

### 4. Movants' Allegations Concerning the Mining Operation are Unfounded.

15. Movants argue that the limited profitability of the Debtors' cryptocurrency mining operations indicates gross mismanagement. This argument lacks any basis in fact or law. Gross mismanagement for the purposes of section 1104(a)(1) of the Bankruptcy Code cannot be established by a mere lack of profitability or a failure to perform at the same level as comparable businesses. *In re Sundale, Ltd.*, 400 B.R. 890, 907 (Bankr. S.D. Fla. 2009). Instead, gross mismanagement requires a showing of "extreme ineptitude on the part of management to the detriment of the organization." *Id.*; *see, e.g., 1031 Tax Grp.*, 374 B.R. at 93 (holding that gross

mismanagement did not exist where there was a "continuing loss to the estate, due to the mounting administrative costs and the lack of any new business.").

16. The Debtors have effectively managed the mining business on a post-petition basis during a period of tremendous instability and significant industry-specific headwinds. As a result of Core Scientific's bankruptcy and subsequent contract rejection, more than 37,000 of the Debtors' mining rigs were unplugged. *See* Jan. 24, 2023 Hr'g Tr., at 23:21-25. The Debtors have arranged for these rigs to be moved to other sites or be placed in temporary storage while the Debtors seek new hosting opportunities. *See id.* at 24:1-3. Despite this, the Debtors have seen significant improvements in their mining operations. The concomitant decrease in energy prices and rise in the price of Bitcoin has resulted in positive cash flows and significant potential upside. *See id.* at 24:7-11 ("Given the favorable market trends and energy prices and the improving price of bitcoin, we believe that there are options for hosting in the market that will allow us to continue mining with positive operating cashflows and significant upside.") The Debtors also expect to finalize new, profitable hosting contracts for the mining rigs formerly hosted by Core Scientific in the near term. The Debtors continue to mine and sell Bitcoin, and Movants provide no evidence of gross mismanagement with respect to the Debtors' mining business—because there is none.

### 5. Movants' Allegations Regarding GK8's Insurance Policies Were Rejected By This Court.

17. Movants allege that the Debtors have concealed information concerning insurance policies supposedly held by GK8. This issue was previously litigated in the context of *Daniel A. Frishbergs'* [sic] *Motion for Reconsideration of GK8 Sale and Other Requested Relief* [Docket No. 1794]. This Court held that Mr. Frishberg's motion, "even when liberally construed, provide[d]

9

no legal support for his requested relief and [wa]s entirely without merit."[7] The allegations therefore cannot provide "cause" for the appointment of a trustee under section 1104(a)(1) of the Bankruptcy Code.

**II.    Movants Fail to Provide Sufficient Evidence in Support of Their Allegations.**

18.    Movants are required to present "clear and convincing evidence" that "cause" exists for the appointment of a trustee. *See Adelphia Commc'ns Corp.*, 336 B.R. at 656. The Motion relies almost entirely on the findings and conclusions set forth in the Examiner's Final Report. Although the report of an examiner "is a resource containing information and observations" that can be helpful to the Court and the parties in "understanding facts, [it] is not intended to establish evidence." *In re Fibermark*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006). As such, Movants cannot rely on the Examiner's Final Report to meet their burden to prove, by clear and convincing evidence, that there is cause to appoint a trustee. *See id.* at 325–27. The bankruptcy court in *Fibermark* directly addressed the evidentiary value of an examiner's report:

> [I]f the FiberMark parties wish to "prove" the accuracy of the Examiner's conclusions they must do so with admissible evidence. The facts, as found by the Examiner, are not "true" just because they are in the Report. They explain and justify the Examiner's conclusions. That is all. The Examiner's rendition of the facts may not be relied upon to prove the truth of the matter asserted.

*Id.* at 327; *In re Refco Inc. Secs. Litig.*, 2013 WL 121191891 at *11 (S.D.N.Y. Mar. 11, 2013) ("[A] Bankruptcy Examiner's report is hearsay when offered, as here, to prove the truth of the facts and conclusions propounded in it. And courts routinely find that there is no hearsay exception that would permit a Bankruptcy Examiner's report to be admitted into evidence"); *In re Granite Broad. Corp.*, 369 B.R. 120, 128, n.10 (Bankr. S.D.N.Y. 2007) ("The Court recognizes . . . that the Examiner's Report is not evidence, and that the Examiner's conclusions are not based on a full

---

[7]    *See Memorandum Opinion and Order Denying Daniel A. Frishberg's Motion for Reconsideration of the GK8 Sale* [Docket No. 1947] at 7.

10

factual record and are technically hearsay."). Because the Examiner's conclusions are hearsay, such conclusions are inadmissible without the opportunity to fully test their factual underpinnings. *See Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 272 B.R. 74, 87-88 (Bankr. S.D.N.Y. 2002) (examiner's report was hearsay and movant could not prevail on motion without more).

19.  The exclusion of the Examiner's Report is particularly justified here because it relies primarily on hearsay, in the form of diligence provided by the Debtors and Rule 2004 examinations.[8] The Examiner states that her primary sources of information concerning the affairs of the Debtors were the 213,000 documents provided by the Debtors and the thirty-four witness interviews she conducted. *See* Examiner's Report at 34; *see also id.* at n. 14 ("This Report includes quotes from contemporaneous interview notes. Although every effort was made to be accurate, ***these notes are not official verbatim transcripts***."). Such materials constitute out-of-court statements (not made under oath) that lack the indicia of reliability required for admission into evidence under the Federal Rules of Civil Procedure. *See Newby v. Enron Corp. (In re Enron Corp. Secs., Derivative & "ERISA" Litig.)*, 623 F. Supp.2d 798, 825, n.23 (S.D. Tex. 2009) ("[T]o the extent that [the Examiner's] reports consist of hearsay (out-of-court statements offered for the truth of the matter asserted), they should be excluded under Fed. R. Evid. 802."). Further, the Examiner's Report is focused primarily on former management and does not implicate current management and the Special Committee.

### III. Appointing a Trustee Would Not Be In the Best Interests of the Estates.

20.  Pursuant to section 1104(a)(2) of the Bankruptcy Code, the Court may appoint a trustee if it finds that such an appointment would be "in the interests of creditors, any equity security

---

[8]  *See* Feb. 6, 2023 Hr'g Tr., at 100:9-10, 21:23 ("I have the greatest respect for the examiner. But the report is hearsay. It is not evidence . . . . I asked whether [the interviews conducted by the examiner] were under oath, and it was explained to me they were not. So, at this stage, it's hearsay.").

holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). In making such a determination, courts "eschew rigid absolutes and look to the practical realities and necessities" of the case. *Ionosphere Clubs*, 113 B.R. at 168. While this standard is "amorphous and necessarily involves a great deal of judicial discretion," courts within the Second Circuit consider:

> "(i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects of the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of the creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of appointment.

*1031 Tax Grp.*, 374 B.R. at 91 (quoting *Euro-Am. Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007).

21.    The appointment of a trustee would be highly value-destructive and diminish the recoveries available to the Debtors' stakeholders. *First*, the Debtors intend to imminently announce the terms of their plan of reorganization, which will describe the path forward to a value-maximizing transaction—a path that is supported by the Committee. The appointment of a trustee would eliminate the Debtors' opportunity to seek approval of such a transaction. *Second*, the appointment of a trustee would result in an individual with less expertise than the Debtors' current management being put in charge of the Debtors' highly complex and technically-demanding business. A trustee would invariably take time to get up to speed, and the concomitant expenses and delay for the trustee and any new advisors to understand the complexity of the numerous issues in these chapter 11 cases would further erode creditor recoveries. *Third*, the Debtors' estates are currently well managed, making the appointment of a trustee unnecessary. During these chapter 11 cases, the Debtors have secured key operational relief, resolved crucial gating issues concerning the ownership of their assets, and operated the mining business during tumultuous times in the cryptocurrency markets and high energy prices. The appointment of a trustee would reverse that progress and return the Debtors to square one. *Fourth*, the Debtors' estates would not benefit from the appointment of a trustee.

The Debtors are working in close collaboration with the Committee, U.S. Trustee, and various *ad hoc* groups. This Court has held that '[w]here a case has an active creditors committee functioning effectively and working well with the debtors, as it does here, there is little benefit in appointing a trustee." *1031 Tax Grp.*, 374 B.R. at 91. For these reasons, the appointment of a trustee is not justified under section 1104(a)(2) of the Bankruptcy Code.

## Conclusion

22. For the reasons stated herein, the Court should find that neither cause nor discretionary grounds exists to appoint a trustee, and deny the Motion.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court deny the Motion and grant such other and further relief as the Court deems appropriate.

| | |
|---|---|
| New York, New York<br>Dated: February 12, 2023 | /s/ Joshua A. Sussberg<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:          jsussberg@kirkland.com<br><br>- and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:          patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |