**WIGGIN AND DANA LLP**
James I. Glasser
437 Madison Ave. Floor 35
New York, NY 10022
Telephone: (203) 498-4313
jglasser@wiggin.com

*Counsel for Connor Nolan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| | : | Case No. 22-10964 (MG) |
| CELSIUS NETWORK LLC, *et al.*[1], | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |
| | : | |

**APPLICATION OF CONNOR NOLAN PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Ltd. (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

JURISDICTION AND VENUE ...................................................................................... 3

FACTUAL BACKGROUND .......................................................................................... 3

RELIEF REQUESTED.................................................................................................... 8

BASIS FOR RELIEF ...................................................................................................... 10

    A.   Mr. Nolan has provided substantial contribution to this Chapter 11 proceeding. ........... 10

      1.   Benefit to estates and interested parties ...................................................... 10

      2.   Actual, significant, and demonstrable benefit to Debtors' estates ............... 11

      3.   No duplication of services ........................................................................... 12

    B.   Mr. Nolan's counsel's fees and expenses are reasonable. ................................. 13

      1.   Time and labor required, and skills necessary ............................................ 14

      2.   Customary fees and expenses ...................................................................... 15

NO PRIOR REQUEST .................................................................................................... 16

RESERVATION OF RIGHTS ......................................................................................... 16

MOTION PRACTICE/LOCAL RULE ............................................................................ 16

NOTICE ............................................................................................................................ 17

CONCLUSION ................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bayou Grp., LLC*,
   431 B.R. 549 (S.D.N.Y. 2010)...................................................................................9

*In re Best Products Co., Inc.*,
   173 B.R. 862 (Bankr. S.D.N.Y. 1994) ................................................................9, 12

*In re Dana Corp.*,
   390 B.R. 100 (Bankr. S.D.N.Y. 2008) ......................................................................8

*In re Granite Partners*,
   L.P., 213 B.R. 440 (Bankr. S.D.N.Y. 1997) ..........................................................8, 9

*In re U.S. Lines, Inc.*,
   103 B.R. 427 (Bankr. S.D.N.Y. 1989) ......................................................................8

*KeyFi, Inc. v. Celsius Network Ltd. and Celsius KeyFi LLC*,
   No. 642367/2022 (N.Y. Cty. filed July 7, 2022) ......................................................5

*Short Pump Ent't, L.L.C. v. Randall's Island Family Golf Ctrs.* (*In re Randalls
   Island Golf Ctrs., Inc.*),
   300 B.R. 590 (Bankr. S.D.N.Y. 2003) ......................................................................9

*Trade Creditor Grp. v. L.J. Hooker Corp., Inc.*,
   188 B.R. 117 (S.D.N.Y. 1995), *aff'd*, 109 F.3d 349 (2d. Cir. 1996) ....................8, 9

**Statutes**

11 U.S.C. § 503(b) ..............................................................................................2, 3, 10, 14

11 U.S.C. § 503(b)(3)(D).........................................................................................1, 8, 13

11 U.S.C § 503(b)(4) ........................................................................................1, 3, 8, 13, 16

28 U.S.C. §§ 157 and 1334 .............................................................................................3

28 U.S.C. § 157(b) ..........................................................................................................3

28 U.S.C. §§ 1408 and 1409 ...........................................................................................3

## PRELIMINARY STATEMENT

Connor Nolan, through undersigned counsel, hereby files this application (the "Application") pursuant to sections 503(b)(3)(D) and 503(b)(4) of Title 11 of the United States Code (the "Bankruptcy Code") for entry of an order allowing as administrative expenses the incurred reasonable fees and expenses and anticipated reasonable fees and expenses of Wiggin and Dana LLP ("Wiggin and Dana") through February 10, 2023 as well as the anticipated reasonable future fees and expenses of Wiggin and Dana through April 30, 2023 in an amount not to exceed $100,000 on behalf of Mr. Connor Nolan ("Mr. Nolan")[2].  Mr. Nolan has already and is likely to continue to make substantial contributions to this Chapter 11 bankruptcy case.

In support of this Application, Mr. Nolan states as follows:

1.      Mr. Nolan was first employed by Celsius Network Limited ("Celsius") in March 2020.  Mr. Nolan was hired as an operations analyst and, in the intervening two plus years, held various positions including his current position of head of institutional lending.  Despite the current Chapter 11 proceedings, Mr. Nolan has determined to remain at Celsius owing to his knowledge of Celsius' loan book and his desire to help maximize recovery for Celsius' investors.

2.      Since the Debtors' filing of a voluntary petition for Chapter 11 bankruptcy on July 13, 2022, and as a consequence of Mr. Nolan's relatively long tenure at Celsius, there have been many demands and requests made of him in connection with: 1) ongoing investigations of Celsius by regulators; 2) a claim brought by Jason Stone and an adversary proceeding brought in this Court to enjoin Stone from transferring or dissipating assets alleged to have been wrongfully converted from Celsius; 3) requests for interview and interview by the Examiner's Committee; 4) requests for interview and interview by the Unsecured Creditors' Committee; 5) requests by

---

[2] To the extent Wiggin and Dana incurs reasonable fees and expenses after May 1, 2023, it respectfully requests permission to file a separate, future motion seeking to recoup given expenses.

1

various regulatory authorities for the production of voluminous documents; and 6) requests for

interviews and interviews by various law firms.  As more fully detailed below, with the benefit

of the assistance of counsel, Mr. Nolan has cooperated fully with every demand and request that

has been made of him.

3.       Given Mr. Nolan's tenure at Celsius and the positions he has held, it appears he is

an important resource for the various constituents of this bankruptcy proceeding.  It further

appears that Mr. Nolan's past and anticipated future cooperation and assistance will help to

expedite this bankruptcy proceeding and thereby conserve resources of the creditors. To cite but

one illustrative example, the January 31, 2023 Final Report of the Examiner, Shoba Pillay, is

replete with citations to Mr. Nolan's interviews and cooperation, reflecting important

information he provided to assist the Examiner's investigation.

4.       Given his contributions to date and anticipated future contributions, Mr. Nolan

respectfully requests that the Court allow and authorize the fees and expenses of his counsel,

Wiggin and Dana, to be paid as administrative expenses.  More particularly, it is respectfully

requested that Wiggin and Dana's a) fees and expenses already incurred in the sum of

$207,641.48 be paid; and b) that future, reasonable legal fees and expenses his counsel incurs on

his behalf through April 30, 2023 in an amount not to exceed $100,000 be paid.  For the reasons

set forth herein, such relief is consistent with section 503(b) of the Bankruptcy Code and

applicable case law and this application should be granted in its entirety.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

## FACTUAL BACKGROUND

6.      Mr. Nolan began his employment with Celsius in March 2020 as an operations analyst when he was just 23 years old.  Mr. Nolan's work ethic and skills were apparently recognized by Celsius' management and in early 2021 he was promoted to head of coin deployment and on or about August 2021, he was later promoted to head of institutional lending.  During his tenure at Celsius, Mr. Nolan became knowledgeable about various aspects of Celsius' business, including, *inter alia*: Celsius' borrowing and lending books; CEL token repurchases; decentralized finance (DeFi); and other investment and marketing strategies employed by Celsius.

7.      In connection with Celsius' DeFi strategies, Mr. Nolan was introduced to Jason Stone, the majority owner of KeyFi.  The nature of the business relationship between Celsius, Stone and KeyFi has been extensively briefed in the Adversary Proceeding.  *See* Adversary Proceeding (Dkt. No. 1).

8.      As part of his job responsibilities at Celsius and at the direction of Celsius' CEO,

Mr. Nolan interacted with Mr. Stone on a near-daily basis from late Summer 2020 until Spring of

2021.

9.      In addition to his frequent interactions with Jason Stone, Mr. Nolan was often

directed to execute certain transactions and strategies conceived by Alex Mashinsky, Harumi

Urata-Thompson, Johannes Treutler, and others.  Mr. Nolan was invited to attend certain of

Celsius' committee meetings, such and the New Business Committee, where Celsius'

management discussed and decided issues important to Celsius' business and strategy which,

arguably, may have contributed to these bankruptcy proceedings.

10.      On June 13, 2022, facing liquidity challenges and the inability to meet the

demand of user withdrawals, Celsius paused all withdrawals, swaps and transfers on the Celsius

platforms.  Leading up to and following the pause, Mr. Nolan was directed to take specified

actions to  attempt to restore liquidity and to meet withdrawal demands.  Through this process,

Mr. Nolan became knowledgeable about the issues and discussions among Celsius employees

relating to liquidity, possible causes of the lack of liquidity, and plans to restore Celsius to

liquidity.

11.      On or about June 15, 2022, Mr. Nolan submitted to questions by law enforcement

authorities about his work at Celsius.   At the conclusion of that meeting, Mr. Nolan was handed

a federal grand jury subpoena that called for both the production of voluminous documents and

testimony.

12.      Although just 25 years old at the time, Mr. Nolan recognized the seriousness of

the federal grand jury subpoena and sought the assistance of independent counsel to advise him.

Mr. Nolan consulted Wiggin and Dana and its partner James Glasser to represent him in
connection with the government's investigation.

13.     Shortly after being contacted by Mr. Nolan, Wiggin and Dana communicated with
counsel from Latham & Watkins LLP and Akin Gump Strauss Hauer & Feld LLP to determine
whether Mr. Nolan's legal expenses would be covered by his employer.  Counsel for Celsius
thereafter drafted an undertaking agreeing to advance Mr. Nolan's legal fees, a copy of which is
attached as **Exhibit A**.  In reliance of the Company's undertaking, Wiggin and Dana commenced
its representation of Mr. Nolan in the belief that the legal fees and expenses incurred by Mr.
Nolan, strictly as a consequence of his work at Celsius, would be covered by his employer.

14.     Thereafter, on July 7, 2022, KeyFi initiated a state court proceeding against
Celsius entities.  *KeyFi, Inc. v. Celsius Network Ltd. and Celsius KeyFi LLC*, No. 642367/2022
(N.Y. Cty. filed July 7, 2022).

15.     Not long thereafter, on July 13, 2022, Celsius filed a petition for voluntary
bankruptcy pursuant to Chapter 11.

16.     Subsequently, on August 23, 2022, Celsius initiated the Adversary Proceeding
against Mr. Stone and KeyFi.

17.     Since June 2022, Mr. Nolan, with the assistance of counsel, has participated in
numerous preparation sessions, a deposition, court proceedings, and interviews designed to help
secure assets for creditors or to provide information to Examiner's or the Unsecured Creditors
Committee.  More particularly, to date, Mr. Nolan has participated in or responded to, *inter alia*,
the following:

- Mr. Nolan received a federal grand jury subpoena calling for the
  production of voluminous documents – which have been produced –
  and for testimony.

5

- Mr. Nolan has submitted to an interview by representatives of the U.S. Attorney's Office for the Southern District of New York.

- Mr. Nolan has been interviewed by the U.S. Securities and Exchange Commission.

- Mr. Nolan has been interviewed by representatives of the Commodity Futures Trading Commission.

- Defendants Stone and KeyFi subpoenaed Mr. Nolan for deposition in a preliminary injunction action brought within the Adversary Proceeding, case No. 22-01139-mg. The purpose of the action was to enjoin Mr. Stone from dissipating assets that are alleged to belong to the Debtors' bankruptcy estate.

- On December 20, 2022, Mr. Nolan was deposed in connection with that Adversary Proceeding.

- On January 11, 2023, Mr. Nolan testified in the Adversary Proceeding, pursuant to a subpoena by Mr. Stone. At the conclusion of the proceeding, this Court entered a temporary restraining order enjoining Defendants Stone and KeyFi from dissipating the assets that Plaintiffs seek to recover from Defendants in that case.

- On January 12, 2023, Mr. Nolan, participated in an interview by the Examiner's Committee in the underlying bankruptcy proceeding.

- On January 13, 2023 Mr. Nolan participated in an interview by the Unsecured Creditors Committee.

- Mr. Nolan has participated in numerous interviews by various law firms participating in these proceedings.

18.    Most recently, following Mr. Nolan's deposition on December 20, 2022 and court testimony on January 11, 2023 in the Adversary Proceeding, this Court entered a temporary restraining order enjoining Defendants Stone and KeyFi from dissipating the assets that Debtors seek to recover from Defendants in that case. *See* Adversary Proceeding (Dkt. No. 66).

19.    Given that Mr. Nolan received process from federal authorities for documents and testimony, was subpoenaed to be deposed and to testify in the Adversary Proceeding, and has been requested to submit to a myriad of interviews by various constituencies, Wiggin and Dana

6

has continued to represent Mr. Nolan for eight months despite not once being paid for its

services because Mr. Nolan was and is in need of counsel and because his participation in these

various proceedings and interviews are significantly assisting both the recovery of assets and

these bankruptcy proceedings.

20.     Wiggin and Dana expended substantial time and effort to produce voluminous

documents to government authorities and to prepare Mr. Nolan and represent him at deposition,

court proceedings, and many interviews.  Indeed, each of Debtors' counsel, as well as the

Unsecured Creditors Committee and the Examiner's Committee have repeatedly thanked Mr.

Nolan and presumably recognize the value flowing from Mr. Nolan's cooperation and

participation.  As indicated, information supplied by Mr. Nolan is ubiquitous in the Examiner's

Report. Undersigned counsel has been informed that Mr. Nolan's past cooperation and

anticipated future cooperation will help to expedite proceedings and thereby conserve

considerable Debtor resources.

21.     Absent Wiggin and Dana's representation of Mr. Nolan in responding to requests

for documents and testimony, those matters and proceedings would likely have been delayed and

a complete document production likely would not have been made.  There can be little doubt that

Mr. Nolan required independent and experienced counsel to represent him in order to adequately

meet these demands and protect his interests.

22.     Mr. Nolan remains employed at Celsius today where his current work focuses on

winding down the remainder of the Celsius lending book as well as providing historical data to,

and answering questions from, Celsius' regulatory and legal teams.  His continued presence at

Celsius has been critical to the company's ability to maximize value from its lending book and to

assist in the recovery of assets for the benefit of Celsius users.

**RELIEF REQUESTED**

23.     The Bankruptcy Code provides for the payment of "the actual, necessary

expenses" of "a committee ... [of] equity security holders" that have made a "substantial

contribution" in a Chapter 11 case.  11 U.S.C. § 503(b)(3)(D).  In addition, section 503(b)(4) of

the Bankruptcy Code requires allowance of:

> reasonable compensation for professional services rendered by an
> attorney or an accountant of an entity whose expense is allowable
> under subparagraph ... (D) of paragraph (3) of this subsection, based
> on the time, the nature, the extent, and the value of such services,
> and the cost of comparable services other than in a case under this
> title, and reimbursement for actual, necessary expenses incurred by
> such attorney or accountant.

11 U.S.C. § 503(b)(4) (emphasis added).

24.     Accordingly, sections 503(b)(3) and (4) permit a debtor to reimburse a party's

reasonable professional fees and expenses that were incurred in making a substantial contribution

to bankruptcy case.  *See, e.g*., *In re Granite Partners*, L.P., 213 B.R. 440, 445 (Bankr. S.D.N.Y.

1997).

25.     Whether a substantial contribution occurs is a question of fact.  *See Trade

Creditor Grp. v. L.J. Hooker Corp., Inc.*, 188 B.R. 117, 120 (S.D.N.Y. 1995), *aff'd*, 109 F.3d 349

(2d. Cir. 1996).  Courts have found that a substantial contribution was made when efforts have

led to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent

relevant, the debtor's shareholders.  *In re Dana Corp*., 390 B.R. 100, 108 (Bankr. S.D.N.Y.

2008) (quoting *In re U.S. Lines, Inc*., 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989)).  In general,

"services that confer a significant and demonstrable benefit upon the reorganization process

which have not been rendered *solely* on behalf of a creditor's own interest should be

compensated."  *U.S. Lines, Inc.*, 103 B.R. at 430 (emphasis added).

8

26.     Compensable services "foster and enhance - rather than retard and interrupt - the progress of reorganization.  Conversely, insubstantial services include those that do not actually increase the size of the estate, or deplete the assets of the estate without providing any corresponding greater benefit."  *Granite Partners*, 213 B.R. at 446 (citations omitted).  "A direct benefit also cannot be established merely by a movant's extensive participation in the case or be based on services that duplicated those of professionals already compensated by the estate, such as counsel for the debtor or an official committee."  *In re Bayou Grp., LLC*, 431 B.R. 549, 561 (S.D.N.Y. 2010) (holding that an applicant cannot recover for services that are duplicative of other professionals in the Chapter 11 case).

27.     Courts view "in hindsight" whether an applicant has made a substantial contribution in the case.  *Granite Partners*, 213 B.R. at 447.  An "applicant must show a 'causal connection' between the service and the contribution."  *Id.*  The burden of proof is on the applicant to demonstrate by a preponderance of the evidence that it has made a substantial contribution in the case.  *See Short Pump Ent't, L.L.C. v. Randall's Island Family Golf Ctrs*. (*In re Randalls Island Golf Ctrs., Inc*.), 300 B.R. 590, 598 (Bankr. S.D.N.Y. 2003); G*ranite Partners*, 213 B.R. at 445; *In re Best Products Co., Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994).

28.     Courts in the Second Circuit consider various factors when analyzing a request for substantial contribution, including: (i) whether the services benefited a creditor, the estate itself, or all interested parties; (ii) whether the services resulted in an actual, significant and demonstrable benefit to the estate; and (iii) whether the services were duplicated by the efforts of others involved in the case.  *See, e.g., Hooker Invs., Inc*., 188 B.R. at 120; *Best Prods*., 173 B.R. at 865.

9

22-10964-mg    Doc 2045-1    Filed 02/13/23    Entered 02/13/23 18:40:08    NOTICE OF
APPLICATION AND APPLICATION OF CONNOR NOLAN PURSUANT TO 11 U.S.C. &#1    Pg 13 of 34

**BASIS FOR RELIEF**

29.     The facts demonstrate that Mr. Nolan has easily satisfied the standard necessary

for compensation under section 503(b).  Mr. Nolan is a critical resource in the bankruptcy

proceeding by actively cooperating to resolve issues central to furthering the proceeding, which

contribute to substantial benefits to both the Debtors' estates and creditors.  As a result, and as

demonstrated below, each factor in the three-prong test established by the Second Circuit is

satisfied.

      **A.  Mr. Nolan has provided substantial contribution to this Chapter 11
proceeding.**

           **1.  Benefit to estates and interested parties**

30.     With respect to the first factor, the efforts of Mr. Nolan benefitted the Debtors'

estate and served to protect assets underlying creditors' claims.  Mr. Nolan, with his counsel,

took prompt action in response to each request directed to him and has endeavored to provide

full and accurate information that in turn has helped foster the progress of this bankruptcy

proceeding.  The knowledge and insight that Mr. Nolan provided to the Examiner's Committee

and the Unsecured Creditors' Committee as well as the testimony he has provided in the

Adversary Proceeding has benefitted the estate.

31.     The Examiner's Committee and the Unsecured Creditors' Committee elicited

detailed information from Mr. Nolan that contributed to the furthering of this Chapter 11

proceeding.  Specifically, Mr. Nolan was asked about and provided information and insight on

topics including but not limited to:

- Celsius' institutional lending business and risk analysis on counterparties;

- The topics discussed within the Celsius New Business Committee that affected Celsius' business decisions;

10

- Celsius' borrowing business, including posting collateral and risk analysis on counterparties and policies and procedures in place;

- Tracking of deployments and the freeze report;

- The "flywheel" business model at Celsius and the regular CEL token repurchases;

- Celsius' balance sheet and internal efforts to correct any asset-liability mismatch;

- Concerns relating to solvency and liquidity of Celsius and efforts to take measures to address such concerns;

- The decision-making processes in place at Celsius;

- The particular decision-making process leading to Celsius' investment in KeyFi, Inc.;

- Celsius' trading strategies;

- Celsius' strategies as to market makers;

- The activities of the "OTC desk" at Celsius;

- Particular communications among Celsius employees that Mr. Nolan was privy to.

32.     Upon Mr. Nolan's efforts to provide accurate and complete answers to such questions, members of both committees were thankful for his insights and cooperation.

## 2. Actual, significant, and demonstrable benefit to Debtors' estates

33.     As to the second factor, Mr. Nolan provided actual, significant and demonstrable benefit to the Debtors' estates, most evidently through his participation in the preliminary injunction action in the Adversary Proceeding.  At least partially as a result Mr. Nolan's testimony in his December 20, 2022 deposition and his court testimony on January 11, 2023, this Court entered a temporary restraining order enjoining Defendants Stone and KeyFi from dissipating the assets of Debtors.  Having these assets available will inure to the benefit of

11

creditors.  *See Best Prods*., 173 B.R. at 865 (substantial contribution services must facilitate

progress).

34.    Key testimony that Mr. Nolan provided in the Adversary Proceeding included but

is not limited to:

- Defendants Stone and KeyFi never provided Celsius with sufficient documentation or information to establish what profits (or losses) actually resulted from their activities.

- On more than one occasion, Celsius' CEO stated that he believed Defendants' actions were profitable and that upon information and belief, the CEO based this assessment not on verifiable data or independent analysis, but instead simply on what Mr. Stone had told the CEO.

- Stone and KeyFi failed on multiple occasions to supply sufficient information to Celsius to determine whether their activities were generating profits or losses.

- Despite his role as working directly with Stone to support the staking and DeFi relationship between Celsius and Stone, Mr. Nolan was unaware of any agreements or other documents, if any, that would result in Defendants becoming eligible for a profit share, or other compensation from Celsius.

- Mr. Nolan was unaware of the CEO or any other Celsius executive or employee, authorizing Defendants to take Debtors' assets for themselves as an advance on an alleged profit share.

### 3.  No duplication of services

35.    With regard to the third factor, Mr. Nolan's cooperation has not duplicated the

efforts of others in this bankruptcy proceeding.  Mr. Nolan possesses first-hand knowledge of

various facets of Celsius' business operations, including its relationship with Stone and KeyFi.

Moreover, Mr. Nolan's role as head of coin deployment and institutional lending have allowed

him to share valuable insights with those with interest in these bankruptcy proceedings.

36.     Mr. Nolan's counsel has assisted Mr. Nolan at every step of the proceedings including producing voluminous documents and records, preparing him for deposition and testimony, and preparing him and representing him during numerous interviews.

37.     Mr. Nolan's understanding of cryptocurrency and blockchain technologies, coupled with the various hats he has worn at Celsius, including but not limited to serving as the point of contact with Jason Stone and KeyFi, are critical to help further this bankruptcy proceeding. Mr. Nolan's value as a source of information is borne out by the frequent references to information he supplied in the Examiner's Report.

38.     For these reasons, the Court should find that Mr. Nolan has made a substantial contribution to this Chapter 11 proceeding, including, but not limited to, that it provided an actual, necessary or demonstrable benefit to the Debtors' estates under Section 503(b)(3)(D) of the Bankruptcy Code.

**B.    <u>Mr. Nolan's counsel's fees and expenses are reasonable.</u>**

39.     Having established a substantial contribution, the next issue this Court addresses is whether the fees of Wiggin and Dana, as counsel to Mr. Nolan, meet the remaining criteria of being reasonable based on the time, nature, extent, and value of the services rendered and whether related expenses are actual and necessary.  11 U.S.C. § 503(b)(4).  Wiggin and Dana's fees and expenses for which reimbursement is sought represent: 1) the actual and necessary fees and expenses to date in the amount of $207,641.48, and 2) reasonable future fees and expenses that are anticipated through April 30, 2023, in an amount not to exceed $100,000 in connection with future representation of Mr. Nolan both in this bankruptcy case, the ongoing investigation by federal regulators, and related matters.  These fees and expenses satisfy the requirements of

section 503(b) of the Bankruptcy Code based on the time and labor required, the skills necessary,

and the customary fees charged to clients in bankruptcy and non-bankruptcy cases.

### 1.  Time and labor required, and skills necessary

40.     When Mr. Nolan was asked to speak to federal regulators and produce

voluminous documents, he promptly retained Wiggin and Dana to assist him and protect his

interests.  Since he retained Wiggin and Dana, Mr. Nolan has been subpoenaed for deposition

and subpoenaed to testify in the Adversary Proceeding in this Court, and has been the subject of

a continuing stream of requests for interviews by various agencies, examiners, and creditor

committees, all exclusively as a consequence of his employment by Celsius.  Although it has not

once been paid in eight months of representation, Wiggin and Dana has chosen not to abandon

Mr. Nolan when he is very much in need of experienced counsel. Wiggin and Dana has

submitted regular monthly invoices to Celsius and to its counsel at Kirkland & Ellis, and has also

requested that its invoices be submitted to the Company's D&O insurer for reimbursement. To

date, the firm has not been reimbursed any of its fees and expenses.

41.     It is counsel's understanding that, for a period of time, Mr. Nolan was the only

individual approached by federal law enforcement authorities.  Wiggin and Dana, *inter alia*,

assisted Mr. Nolan collect and produce voluminous documents in response to various requests.

Wiggin and Dana also served as an intermediary between various requests of Mr. Nolan made by

the Department of Justice, the Securities and Exchange Commission, and the Commodities

Futures Trading Commission, and others.  Counsel has reviewed voluminous material with Mr.

Nolan to prepare him for deposition, testimony, and for interviews by numerous constituents to

these bankruptcy proceedings.

## 2. Customary fees and expenses

42.     Counsel at Wiggin and Dana is highly credentialed.  Responsible counsel began
his legal career at Mudge Rose Guthrie Alexander & Ferdon in New York, worked at the
Department of Justice as an Assistant United States Attorney, as Chief of Appeals, Chief of the
Criminal Division, and Counsel to the U.S. Attorney.  At Wiggin and Dana, counsel has served
as Chair of the firm's Litigation Department for nearly a decade.  The hourly fees and expenses
charged and incurred are reasonable and, upon information and belief, substantially less than
comparable professionals providing services in this matter.  The staffing consists of one partner
and one junior associate, with the occasional assistance of a paralegal.  It is respectfully
submitted that time spent on various tasks is reasonable as counsel makes every effort to be as
efficient as reasonably possible.  Significantly, the fees and expenses charged and incurred
represent only a fraction of the additional value conferred on the Debtors' estates given Mr.
Nolan's involvement in the Adversary Proceeding and other aspects of this Chapter 11 case.

43.     Wiggin and Dana's monthly charges are summarized in the below chart:

| Time Period | Charge |
|---|---|
| July 2022 | $3,695.00 |
| August 2022 | $8,777.50 |
| September 2022 | $17,174.50 |
| October 2022 | $7,171.50 |
| November 2022 | $17,771.00 |
| December 2022 | $37,211.02 |
| January 2023 | $67,749.26 |
| February 2023 (January fees and expenses, and February fees incurred through February 10, 2023) | $48,091.70 |
| Total to date: | $207,641.48 |

44.     Wiggin and Dana has maintained detailed records of time expended and resources
incurred by professionals and paraprofessionals in rendering services to Mr. Nolan in this

15

Chapter 11 case. A copy of Wiggin and Dana's time records for the months of June 2022 –

February 2023 (edited for confidentiality and privilege reasons) and itemization of expenses

incurred in connection with this Chapter 11 case will be made available, subject to appropriate

protections for confidentiality and legal privilege. Under the proposed order attached hereto as

**Exhibit B**, Wiggin and Dana shall provide copies of its invoices to the Debtors, the Unsecured

Creditors Committee and the Examiner's Committee, and the Examiner shall have fourteen (14)

days following receipt of an invoice to object to the payment of such invoice.

 45. As this Chapter 11 case progresses, and related matters progress, we believe

continued representation of Mr. Nolan will both facilitate and expedite future proceedings and

protect Mr. Nolan's interests.

 46. Accordingly, Wiggin and Dana respectfully submits that its fees and expenses

incurred to date are, and fees and expenses likely to be incurred in the future will be reasonable

and appropriate, and meet the criteria of section 503(b)(4) of the Bankruptcy Code.

## NO PRIOR REQUEST

 47. No prior request for the relief sought in this Application has been made to this or

any other court.

## RESERVATION OF RIGHTS

 48. This Application is without prejudice to Mr. Nolan's seeking payment of his fees

and expenses on any other applicable grounds, and Mr. Nolan specifically reserves all rights.

## MOTION PRACTICE/LOCAL RULE

 49. This Application includes citations to the applicable rules and statutory authorities

upon which the relief requested herein is predicated and a discussion of their application to this

Application. Accordingly, Mr. Nolan submits that this Application satisfies Local Rule 90131(a).

16

## **NOTICE**

50.     Notice of this Application will be provided in accordance with the Amended Final

Order Establishing Certain Notice, Case Management and Administrative Procedures and

Granting Related Relief [Dkt. No. 1181].  Mr. Nolan respectfully submits that no further notice

is required.

## **CONCLUSION**

51.     WHEREFORE, Mr. Nolan respectfully requests that the Court: (i) approve the

Application; (ii) enter an order substantially in the form attached hereto as **Exhibit B** authorizing

Debtors to pay Wiggin and Dana LLP the sum of $207,641.48 for reasonable professional fees

and expenses already incurred to date, and reimburse Wiggin and Dana LLP for future

reasonable fees and expenses, in an amount not to exceed $100,000 through April 30, 2023, on

account of the substantial contribution to these cases; and (iii) grant such other and further relief

as may be just and proper.


DATED: February 13, 2023

Respectfully submitted,

By: */s/ James I. Glasser*
WIGGIN AND DANA LLP
James I. Glasser
437 Madison Ave. Floor 35
New York, NY 10022
Telephone:     (203) 498-4313
jglasser@wiggin.com


*Counsel for Connor Nolan*

17

# EXHIBIT A

DocuSign Envelope ID: 9E5298ADC-EB34-40C3-A7F2-46B9F6C2EB9F5

### Undertaking to Repay Advanced Expenses

June 24, 2022

Celsius Network LLC
121 River Street, Ste PH05
Hoboken, NJ 07030
Attention: Board of Managers

I have been requested to produce documents and give testimony in response to a grand jury subpoena I received dated June 15, 2022 (the "Subpoena") in connection with a grand jury investigation conducted by the United States Attorney's Office for the Southern District of New York (the "Investigation"). The Subpoena requests documents and testimony relating to actions that were, at a minimum in part, engaged in by me as an employee of Celsius Network LLC, a Delaware limited liability company and indirect subsidiary of Celsius Network Limited (the "Company").

I understand that, pursuant to the terms of the Amended and Restated Limited Liability Company Agreement of the Company (the "LLC Agreement"), the Company has agreed to indemnify and hold harmless each Covered Person to the fullest extent permitted under the Delaware Limited Liability Company Act (the "Act"), as the same now exists or may hereafter be amended, substituted or replaced. As an employee of the Company, I qualify as a Covered Person. The LLC Agreement also provides that expenses, including reasonable attorneys' fees and expenses, incurred by any Covered Person in defending a proceeding shall be paid by the Company in advance of the final disposition of such proceeding, including any appeal therefrom, upon receipt of an undertaking by such Covered Person to repay such amount if, pursuant to the terms of the LLC Agreement, it is ultimately determined that such Covered Person is not entitled to be indemnified by the Company.

I understand that the Company is only required to authorize advance payments for those matters arising from the Investigation by reason of the fact of my position as an employee of the Company (any such matters, "Covered Matters" and any other matters, "Excluded Matters"). Furthermore, for the purposes of making advanced payments of expenses, I understand that it is within the Company's exercise of reasonable discretion to make the determination of which matters are Covered Matters and which matters are Excluded Matters.

I understand that the Company will require that my attorneys provide written statements with reasonable detail regarding the fees and expenses incurred, provide such statements on at least a monthly basis, and segregate my legal expenses so that those matters reasonably considered by them to be Covered Matters, i.e., those expenses reasonably considered by my counsel to be subject to indemnification are set apart from those matters considered Excluded Matters, i.e. those matters considered by my counsel not to be subject to indemnification. I also understand that the Company will only advance my legal expenses falling in the category of Covered Matters, while at the same time I reserve all rights to seek after the final disposition of the Investigation repayment of fees and expenses designated Excluded Matters or otherwise not advanced by the Company notwithstanding submittal therefor by me or my counsel. I further understand that the Company will only advance reasonable fees and expenses and that it reserves its right to refuse payment for any fees and expenses

1

DocuSign Envelope ID: 9E298ADC-EB34-40C3-A7E2-46B9E6C2F89E

that are not reasonable under the circumstances. Finally, I understand that the Company may, as permitted by the Act and the Company's LLC Agreement, require repayment of any expenses advanced that the Company later reasonably determines to be Excluded Matters.

I have retained James Glasser at the law firm of Wiggin & Dana LLP to represent me in connection with the Subpoena and the Investigation. I request that the Company approve my selection of counsel and further request that all reasonable legal fees and expenses expended by Wiggin & Dana LLP on my behalf concerning the Covered Matters be paid in advance of the final disposition of the Subpoena and the Investigation.

Please accept this letter as my undertaking to repay to the Company any expenses paid by it on my behalf in advance of the final disposition of the above proceeding, including but not limited to responding to the Subpoena, the Investigation and any proceedings related to the same subject matter, if it shall ultimately be determined that I am not entitled to be indemnified by the Company as authorized under the Company's LLC Agreement or otherwise.

Each of the Company and I reserve all other rights with respect to the matters described herein. The Company and I agree that this Undertaking along with the Company's LLC Agreement set forth the sole process by which the advancement of legal fees and costs will be governed in this matter, and further agree that but for the advancement of legal fees and costs in this matter, this Undertaking does not diminish any other rights I may possess by virtue of my status as an employee of the Company.

IN WITNESS WHEREOF, I have executed this Undertaking on this 24th day of June, 2022.

DocuSigned by:

*Connor Nolan*

52EB7EDEA2B7472...

Connor Nolan

cc: Ron Deutsch

2

**DocuSign**

## Certificate Of Completion

Envelope Id: 3E298ADCEB3440C3A77246B9F6C2F36E        Status: Completed
Subject: Please DocuSign: Nolan undertaking - updated June 24, 2022.pdf
Source Envelope:
Document Pages: 2      Signatures: 1      Envelope Originator:
Certificate Pages: 5      Initials: 0      Jessica Hammons
AutoNav: Enabled      JHammons@akingump.com
EnvelopeId Stamping: Enabled      IP Address: 66.117.53.5
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

## Record Tracking

Status: Original      Holder: Jessica Hammons      Location: DocuSign
     6/24/2022 12:00:12 PM      JHammons@akingump.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Connor Nolan | *Connor Nolan* (signature) | Sent: 6/24/2022 12:01:42 PM |
| connornolan05@gmail.com | 52EB7EDEA2B7472... | Viewed: 6/24/2022 12:34:02 PM |
| Security Level: Email, Account Authentication (None) | | Signed: 6/24/2022 12:36:59 PM |
| | Signature Adoption: Pre-selected Style | |
| | Signed by link sent to connornolan05@gmail.com | |
| | Using IP Address: 67.83.88.249 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:** Accepted: 6/24/2022 12:34:02 PM ID: 7367ecf4-d76e-4ec8-877d-4b84ed3e8ee0 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| James Glasser | COPIED | Sent: 6/24/2022 12:01:42 PM |
| JGlasser@wiggin.com | | Viewed: 6/24/2022 12:17:51 PM |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/24/2022 12:01:42 PM |
| Certified Delivered | Security Checked | 6/24/2022 12:34:02 PM |
| Signing Complete | Security Checked | 6/24/2022 12:36:59 PM |
| Completed | Security Checked | 6/24/2022 12:36:59 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 3/4/2022 6:49:38 AM
Parties agreed to: Connor Nolan

22-10964-mg    Doc 2045-1    Filed 02/13/23    Entered 02/13/23 18:40:08    NOTICE OF
APPLICATION AND APPLICATION OF CONNOR NOLAN PURSUANT TO 11 U.S.C. &#1    Pg 26 of 34

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Akin Gump Strauss Hauer & Feld LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Akin Gump Strauss Hauer & Feld LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: Esignatures@akingump.com

**To advise Akin Gump Strauss Hauer & Feld LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at Esignatures@akingump.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Akin Gump Strauss Hauer & Feld LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to Esignatures@akingump.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Akin Gump Strauss Hauer & Feld LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to Esignatures@akingump.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Akin Gump Strauss Hauer & Feld LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Akin Gump Strauss Hauer & Feld LLP during the course of your relationship with Akin Gump Strauss Hauer & Feld LLP.

# EXHIBIT B

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : |
| | : Chapter 11 |
| | : |
| | : Case No. 22-10964 (MG) |
| CELSIUS NETWORK LLC, *et al.*,[1] | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |
| | : |
| | : |

## ORDER GRANTING APPLICATION OF CONNOR NOLAN PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION

Upon consideration of the Application of Connor Nolan Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred and in Making a Substantial Contribution (the "Application")[2]; and this Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Application having been

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Ltd. (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

provided; and it appearing that no other or further notice need be provided; and it appearing that

the relief requested in the Application is in the best interest of the Debtors, their estates, and

stakeholders; and after due consideration and sufficient cause appearing therefor;

**IT IS HEREBY FOUND THAT** Connor Nolan has made a substantial contribution to

the Debtors' estate within the meaning of section 503(b)(3)(D) of the Bankruptcy Code; and

**IT IS FURTHER FOUND THAT** Connor Nolan is entitled to the allowance of an

administrative expense claim under section 503(b)(4) of the Bankruptcy Code for reasonable

compensation for professional services rendered by his counsel, Wiggin and Dana, in connection

with his substantial contribution in this Chapter 11 case.

Now, therefore, it is hereby:

**ORDERED**, that the Application is GRANTED as set forth herein; and it is further

**ORDERED**, that, subject to the following paragraph, the Debtors are authorized and

directed to pay Wiggin and Dana's: a) reasonable professional fees and expenses incurred to this

date in the amount of $207,641.48 as set forth in the attached Schedule A; and b) reasonable

future professional fees and expenses to be incurred in an amount not to exceed $100,000

through April 30, 2023; and it is further

**ORDERED**, that as soon as practicable after entry of this Order, Wiggin and Dana shall

provide copies of its invoices to the Debtors, the Committee and the U.S. Trustee. The U.S. Trustee

shall have fourteen (14) days following receipt of an invoice (the "U.S. Trustee Review Period") to

notify Wiggin and Dana (with a copy to the Debtors) of an objection to the payment of such invoice

and the reasons therefor. If the U.S. Trustee does not object to an invoice by the expiration of the

U.S. Trustee Review Period, then the Debtors are authorized and directed to pay the fees and

expenses associated with such invoice on the later of (a) three (3) business days following the

expiration of the U.S. Trustee Review Period and (b) the effective date of the Debtors' chapter 11

plan of reorganization. If the U.S. Trustee objects to the payment of an invoice before the expiration

of the U.S. Trustee Review Period, then the disputed portion of such fees and expenses shall not be

paid until any such objection of the U.S. Trustee is resolved (x) by agreement of the parties; or (y)

if the parties cannot reach agreement, by the Court after notice and a hearing. Pending such

resolution, the undisputed portion of any such invoice shall promptly be paid by the Debtors; and

it is further

**ORDERED**, that the terms and conditions of this Order shall be immediately effective

and enforceable upon entry of this Order; and it is further

**ORDERED**, that the Debtors are hereby authorized and empowered to take all actions

necessary to implement the relief granted in this Order; and it is further

**ORDERED**, that the Court shall retain jurisdiction with respect to all matters arising

from or related to the implementation and interpretation of this Order.

DATED: April __, 2023

_____
HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case No.: 22-10964 (MG)                          **CURRENT INTERIM FEE PERIOD**                          Schedule A
Case Name:  In re CELSIUS NETWORK LLC, *et al.*          June 2022 – February 10, 2023

| (1) Applicant | (2) Date/Document Number of Application | (3) Interim Fees Requested on Application | (4) Fees Allowed | (5) Fees to be Paid for Current Fee Period | (6) Fees to be Paid for Prior Fee Period(s) (if any) (i.e., Holdback Release) | (7) Total Fees to be Paid | (8) Interim Expenses Requested | (9) Expenses to be Paid for Current Fee Period |
|---|---|---|---|---|---|---|---|---|
| Wiggin and Dana LLP (July 2022 Invoice) | | $3,695.00 | - | $3,695.00 | - | $3,695.00 | $0.00 | $0.00 |
| Wiggin and Dana LLP (August 2022 Invoice) | | $8,777.50 | - | $8,777.50 | - | $8,777.50 | $0.00 | $0.00 |
| Wiggin and Dana LLP (September 2022 Invoice) | | $17,147.50 | - | $17,147.50 | - | $17,147.50 | $27.00 | $27.00 |
| Wiggin and Dana LLP (October 2022 Invoice) | | $7,140.00 | - | $7,140.00 | - | $7,140.00 | $31.50 | $31.50 |
| Wiggin and Dana LLP (November 2022 Invoice) | | $17,735.00 | - | $17,735.00 | - | $17,735.00 | $36.00 | $36.00 |
| Wiggin and Dana LLP (December 2022 Invoice) | | $35,822.00 | - | $35,822.00 | - | $35,822.00 | $1,389.02 | $1,389.02 |
| Wiggin and Dana LLP (January 2023 Invoice) | | $67,569.50 | - | $67,569.50 | - | $67,569.50 | $179.76 | $179.76 |
| Wiggin and Dana LLP (February 2023 Invoice) | | $45,007.50 | - | $45,007.50 | - | $45,007.50 | $126.70 | $126.70 |
| Wiggin and Dana LLP (February 1 – 10, 2023 Accruals) | | $2,957.50 | - | $2,957.50 | - | $2,957.50 | $0.00 | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Totals:** | | - | - | **$205,851.50** | - | **$205,851.50** | **$1,789.98** | **$1,789.98** |

Revised September 2011                     DATE ON WHICH ORDER WAS SIGNED: _____                     INITIALS: _____ USBJ

{Client/008387/BANK910/01003812.DOC;1 }