Kulpreet Khanuja, *Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF KULPREET KHANUJA IN SUPPORT OF IMMANUEL HERMANN AND DANIEL FISHBERG'S MOTION FOR APPOINTMENT OF A TRUSTEE.**

Kulpreet Khanua, a Pro Se Claimant, files this joinder in support of *Immanuel Herrmann and Daniel A. Frishberg's Motion to Appoint a Chapter 11 Trustee (the "Trustee Motion")* and respectfully states as follows in support thereof:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Debtors Inability to lead the Reorganization:**
The debtors and the UCC argue that the appointment of a trustee nearly seven months after the Petition Date may be unwarranted and harm the creditors. They contend that the Debtors have indicated that they intend to propose a plan to resolve these cases.

But the Debtors have already been granted multiple extensions for their bids and presenting a Reorg Plan. The progress on these fronts is doubtful and intangible as no viable plan has been presented to the claimants despite months into bankruptcy. The summary of a plan that was presented is a farce with heavy reliance on an illiquid new token and will continue to harm the customers while better external bids were rejected. Considering the track record, past behavior, ongoing fraud and criminal investigations, etc, the debtors have little credibility and as such the 'Reorg' from debtors should not be extended any further and compelled to be finished asap. A Trustee must be appointed to take over from the debtors and streamline the process.

Chapter 11 protections were created with an intent to allow honest companies to restructure their operations, which may enable them to meet their customer and creditor obligations. In this case, unfortunately, that is not the case. As a prime example of a dishonest organization, the debtors are claiming ownership of customers' assets with unconscionable and subtle contract changes across multiple versions. Hundreds of customers, many States and even Regulators are claiming fraud and regulatory violations against the debtor. Yet the debtors have continuously enjoyed tremendous leeway, credibility and unfair advantages over customers under Chapter 11. For example, the debtors were granted a ruling to sell stablecoins outside the ordinary course of business while they failed to meet their own obligations to return assets in the normal course of business.

**Celsius Executives leading the restructuring:**
The debtors and UCC argue that the Debtors' reorganization is being led by a special committee of directors, who are independent from the Debtors' prepetition management. Moreover, the Debtors' day-to-day operations are now being led by Christopher Ferraro as interim CEO, who joined the Debtors in March 2022 and is not alleged to have engaged in any mismanagement or other bad acts.

But the above is not entirely true. What the Debtors do not mention is that the Special Committee members, Mr. Barse and Mr. Carr, were appointed just days prior to the bankruptcy filing – presumably by existing Celsius management. The interim CEO himself was hired by the former CEO and executive team. The interim CEO himself acknowledged his lack of experience or even formal knowledge of Blockchain or Crypto businesses prior to joining the debtors. Nor did the

interim CEO work as a restructuring officer prior to the current role. The court appointed examiner reported delays due to debtors' lack of cooperation, inability or delays in providing requested evidence. The interim CEO as the lead is responsible for such delays and non-cooperation of his team with the examiner.

Secondly, the interim CEO was playing a significant role in Financial Planning and Analysis at the debtors since March 2022, where it is unfathomable he didn't realize the gaps in debtors' assets or failure to meet its customer obligations. He failed to report any such issues in his budget reports, let alone prevent misrepresentation to the customers by the Celsius leadership. On the contrary, despite no prior knowledge of the industry he seems to have benefited financially in salary increments, CEL tokens and through directorship of Celsius entities outside the US.

Furthermore, the interim CEO and the Chief Compliance Officer possibly lied under Oath. Their understanding of 'Terms of Use' was ambiguous at best per the depositions. Yet, in the declarations they confidently claimed unambiguity around Terms of Use with regards to ownership of assets. The Chief Compliance Officer failed to meet Chief Compliance Officer and Customer Protection responsibilities. Also failed to prevent unauthorized payments to the CEO's personal accounts and to relatives.

Considering the above, there is an obvious conflict of interest with the interim CEO and his team leading the restructuring efforts. These conflicts of interest were confirmed by the debtors' summary plan that was focused towards maximizing the value or transfer of the CEL token to another similar token that will further lock up the liquidity for the majority of the customers, while benefiting the insiders and executives including himself.

Current executives' conflict of interest, incompetence, possible lying under oath and possible complicity with former executives, who are being investigated for fraud and criminality, especially with regards to mismanagement and misrepresentation to the customers are all causes for an independent team managing the restructuring. The Claimant pointed out these issues may affect the Reorg plans put forward by the debtors to the court in hearings on 4th December 2022 and/or 20th December 2022.

**UCC Composition:**
The Unsecured Creditors Committee (UCC) has said that it will move to file its own plan should the Debtors fail to do so. The UCC claims that disagreement about the strategy for bringing claims does not constitute cause to appoint a trustee. But the Claimant is unsure who the UCC is representing and who all are driving the strategy. As per the information available publicly, the UCC have in their committee insiders with large CEL token holdings. The summary plan that was recently provided to the court in a hearing seems to be driven by insiders with large CEL

token holdings, while more straightforward and likely better external bids seem to have been rejected by the UCC and the debtors in possession.

The UCC claims that the trustee motion should not be based on a summary description at a prior hearing of the plan that is currently being negotiated and on leaked incomplete information about alleged bids for the Debtors' assets. But in the absence of transparency, no plans yet put forward to the broader customer bodies and past behavior of debtors, restructuring team and even the UCC, it is reasonable that broader customers have looked at the leaked information and expressed concerns with the summary plan put forward. Note that UCC has neither accepted or denied the leaked information. The Claimant too warned the court of such issues and possible opposition to debtor led plans with inherent conflicts of interest in a previous hearing.

The UCC says that "The twin goals of the standard for appointment of a trustee should be protection of the public interest and the interests of creditors . . . and facilitation of a reorganization that will benefit both the creditors and the debtors." But it is doubtful whether the UCC and the current debtors in possession have the necessary independence and no conflicts of interest to make a determination as to what is and isn't in the interest of creditors. The examiner's report, regulatory filings, depositions, customer claims, fraud evidence, etc. all prove without a doubt the dishonest operation behind the debtors and suspicious conduct of their officers, including current ones. The interest of debtors must certainly not be a priority, except the debtors' estate that should be maximized. Yet the summary plan is intended to provide a second life to the debtors at the expense of customer interests.

The Claimant and thousands of other creditors are unsure whether UCC's goals and strategy are coherent with broader creditors (customers) or with a few large account holders (whales) driving the strategy in their favor. While some of UCC decisions can be disagreed with but understood as a matter of strategy or timing, others are plain baffling to many creditors. Thousands of creditors hope but do not expect the UCC to take a stance in favor of the majority of customers.


**Debtors in Possession and failure to meet fiduciary duties:**
The Debtors in possession are responsible and supposed to represent all and each creditor. Yet the Debtors in possession have failed to perform their fiduciary duties and responsibilities. The Debtors in possession have been unfairly biased in favor of the former and current Celsius management. They argued against and failed to provide evidence and documentation that can help creditors, including the Claimant, prove ownership of assets; instead supporting the debtors' management unabashedly.

The debtors in possession mention in their filings progress with regards to diligence requests by the examiner, but failed to mention examiner's comments regarding lack of cooperation, the

delays in obtaining documents, evidence, interviews, etc. These delays were likely due to pre-screening all documents or interviews for anything unfavorable towards the debtors' or its management. In a later hearing and in their written statements, the debtors in possession argued against reliance on employee testimonies or debtors documents in the examiner's report, labeling them as hearsay. Note that it is the same debtors in possession who provided access to these employees and documents to the examiner and are now arguing against the report findings and its basis. This is a classic example of the debtors in possession putting the interests of debtors over the interests of broader creditors.

The debtors in possession mention progress with regards to Earn asset ownership for the estate while they have pushed many issues pertaining to contract formation, tax treatment, etc. to a claims process without due process. They continuously argued against using extrinsic evidence outside the Terms of Use. However, it should have been imperative as a fiduciary on the debtors in possession to provide all the evidence and let the court decide whether certain extrinsic or intrinsic evidence does or does not merit inclusion for certain rulings. As these rulings are being appealed, including by the Claimant, it allows debtors in possession to seek further extensions. The debtors' legal counsel particularly is a key beneficiary of not just the extensions, but also the claims process where together with Claims Trustee (or others) they review, and possibly litigate, thousands of claims guaranteeing them continued fees at the detriment of the creditors. Note that the legal fee by itself in this case has been exorbitantly high by any measure.

The debtors in possession also mismanaged filing the claims against Voyager, losing precious assets for the estate. This was a likely consequence of the conflicts of interest for the debtors' legal counsel representing both the debtors and the counterparty 'Voyager'. Note that the conflicts of interest and the appointment of the said legal counsel was objected to in a formal motion by Daniel Fishburg, which was denied.

The creditors' worst fears regarding the conflicts of interest are coming true and yet there is no guarantee the court will hold the debtors' legal counsel accountable for such glaring mistakes. The court should place a limit on the legal fees and the expenses should be curtailed. As a resort, the court must also order retaining a mid-size law firm who are still capable of providing restructuring advisory to the debtors. There are many capable law firms in NY/NJ that have partner and associate hourly fees/charges less than half what is being billed to the estate currently.

**Support for above assertions:**

- Court-appointed examiner's interim and final reports.
- States' and Regulators' fraud and criminal lawsuits against the debtors' former executives who are still associated with debtor firms.
- The debtors' failure to return the assets when called upon, in direct violation of their own 'Terms of Use'.
- Current executives conflict of interest, incompetence, possible lying under oath and possible complicity with former executives, who are being investigated for fraud and criminality, especially with regards to mismanagement and misrepresentation to the customers.
- Failure to meet Chief Compliance Officer and Customer Protection responsibilities.
- Failure to prevent unauthorized payments to CEO's personal accounts and to relatives.
- Examiners' report delays due to debtors' lack of cooperation, inability or delays in providing requested evidence.
- As demonstrated by Jason Stone Keyfi vs Celsius Network et al (debtors) case,
    - Improper processes, controls and failure of Treasury and cash management to prevent unauthorized withdrawal and transfer of assets.
    - Minimal to NO risk management, Profit and Loss bookings, or internal reporting at debtors'. Profit and Loss reports, identifying trading and market risks, backtesting strategies, etc. should have been an indispensable and primary function within both Celsius and KeyFi yet both the organizations unbelievably and blatantly claimed in their written declarations and testimonies that it was the responsibility of the other.
    - Debtors' previous CEO Alex Mashinsky's acceptance in KeyFi case testimony that he authorized payments in NFT to his wife; and Chief Compliance Office's inability to prevent or report this to FinCen.

## CONCLUSION

Despite having been pending since early July, the case is not yet in a position to move towards presentation of a plan for approval by the creditors. The debtors have consumed and depleted estate and customer assets at an unprecedented rate. The key decisions around ownership of assets and other issues are still being determined and being contested many months into the bankruptcy. Note that none of the delays can be attributed to Pro Se claimant proceedings as our own hearings have not occurred and/or have been postponed multiple times.

The employees and legal counsel retained by the debtors have at all instances delayed the request for documents by the examiner or other parties such as Pro Se filers, including the Claimant. The delay in producing documents isn't justified as these documents/reports are typically on systems

and databases and can be easily produced. As an example, under Dodd Frank rules, even very large broker dealers must be able to report complex and individual data sets like specific trades/transactions within a 3 day reporting window, even for historical datasets.

While there might be valid concerns, in terms of cost and delay, in bringing in a trustee if a plan proposal is imminent, it is still not clear if there is any plan truly on the horizon. Debtors have received multiple extensions with regards to reorganization and bidding/sale of assets. Yet none of these have moved forward. Instead the debtors are working towards a plan that puts further dent into customers' pockets as it is based on issuance of another illiquid token driven by the insiders and the incompetent Celsius team managing the assets years beyond Chapter 11. Further, despite the known incompetence, credibility issues and misrepresentations, largely intact debtors' executives have been allowed to lead restructuring.

## Reservation of Rights

I, as Movant/Declarant, fully reserve all my rights to supplement this Joinder at or prior to the Hearing, or any other relevant hearing.

*/s/ Kulpreet Khanuja*
Kulpreet Khanuja
*Pro Se*
February 13, 2023