| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**REPLY IN SUPPORT OF DEBTORS'
SECOND MOTION FOR ENTRY OF AN ORDER (I) EXTENDING
THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11
PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION
1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") in support of the *Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1940] (the "<u>Motion</u>")[2] and in response to the objections filed with respect thereto.[3] In support of this Reply, the Debtors state the following:

## **<u>Reply</u>**

1. Since the commencement of these chapter 11 cases, the Debtors have steadily and thoughtfully progressed towards a value-maximizing resolution. These cases presented several novel legal questions that were difficult to navigate and required the Debtors, Committee, and other stakeholders to work to apply the fundamental rules and principles of bankruptcy to this

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3] This Motion received the following objections and related responses: *Víctor Ubierna de las Heras Objection to Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1996] (the "<u>Ubierna de las Heras Objection</u>"); *Objection of the Ad Hoc Group of Withhold Account Holders and Other Transferees to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2008] (the "<u>Withhold Ad Hoc Group Objection</u>"); *Limited Objection to the Debtors' Second Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement* [Docket No. 2010] (the "<u>U.S. Trustee Objection</u>,"); *The Official Committee of Unsecured Creditors' Objection to the Debtors' Second Exclusivity Motion* [Docket No. 2011] (the "<u>Committee Objection</u>"); *Objection of the Ad Hoc Group of Borrowers and Joinder in Limited Objection of the United States Trustee to the Debtors' Second Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement* [Docket No. 2013] (the "<u>Borrowers Ad Hoc Group Objection</u>"); *Daniel A. Frishbergs'* [sic] *Limited Objection to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy C*ode *and (II) Granting Related Relief* [Docket No. 2014] (the "<u>Frishberg Objection</u>"); *Immanuel Herrmann's Objection to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2015] (the "<u>Herrmann Objection</u>" and together with the Ubierna de las Heras Objection, the Withhold Ad Hoc Group Objection, the U.S. Trustee Objection, the Committee Objection, the Borrowers Ad Hoc Group Objection, and the Frishberg Objection, the "<u>Objections</u>"); and the *Joinder of the Texas State Securities Board and Texas Department of Banking to the United States Trustee's Limited Objection to the Debtor's* [sic] *Second Motion to Extend Exclusivity Period For Filing a Chapter 11 Plan and Disclosure Statement* [Docket No. 2038] (the "<u>Texas Attorney General Joinder</u>"); the *Statement of Undersigned States With Respect to Motions for Extension and/or Modification of Exclusivity Order and Appointment of Trustee* [Docket No. 2043] (the "<u>Statement</u>"); the *Joinder of the New Jersey Bureau of Securities to (A) The United States Trustee's Limited Objection to the Debtors' Second Motion to Extend Exclusivity Period For Filing a Chapter 11 Plan and Disclosure Statement [Doc. 2010] and (B) the Joinder of the Texas State Securities Board and Texas Department of Banking [Doc. 2038]; and Reservation of Rights* [Docket No. 2058] (the "<u>New Jersey Bureau of Securities Joinder</u>"); and the *Letter from Five Hundred and Fourteen Celsius Creditors Opposing Exclusivity Extension* [Docket No. 2057] (the "<u>Letter</u>"). The Letter was untimely filed and procedurally improper and thus, will not be addressed further.

digital landscape. Notwithstanding these challenges, the Debtors have made considerable progress—the Court has issued rulings on a number of threshold legal questions regarding ownership of cryptocurrency assets and heard arguments regarding which Debtor entities are liable for customer claims; the Examiner has issued her interim and final reports; and the Debtors have monetized certain assets, including the GK8 assets, stablecoins, and bitcoin produced by the Debtors' mining operations. While the Debtors worked around-the-clock to resolve these gating legal issues, the Debtors have been simultaneously running a marketing process for substantially all of their assets, including their retail platform and mining business. For several months, the Debtors, in close consultation with the Committee, have been negotiating with potential buyers with the goal of selecting a successful bidder or plan sponsor and effectuating a value-maximizing restructuring transaction.

2. The Debtors are pleased to report that they have ***reached an agreement in principle with the Committee and a third-party plan sponsor***—Novawulf Digital Management ("Novawulf")—regarding a plan transaction that will distribute the vast majority of the Debtors' liquid cryptocurrency to account holders immediately, and maximize the value of the Debtors' illiquid assets over time for the benefit of account holders. As set out in greater detail in the Debtors' statement on the plan process filed contemporaneously herewith (the "Plan Update"),[4] the proposed Novawulf transaction includes the following key features:

- ***Creation of a new, independent entity to monetize the Debtors' illiquid assets.*** The plan contemplates the formation of a new entity ("NewCo"), which will be an independent entity with no affiliation to the Debtors or their founders. NewCo will operate as a going concern to maximize the value of the Debtors' illiquid assets over time and distribute that value to Earn creditors. NewCo will be a regulated entity that will have financial reporting obligations consistent with public-company best practices.

---

[4] *See Debtors' Statement With Respect to the Chapter 11 Plan Process*, filed contemporaneously herewith.

3

- *Proposed Plan distributions will provide a range of options for customers, depending on the type of account and their preferences.* Specifically:

  - **Convenience Class:** All Earn creditors with claims valued below $5,000 as of the Petition Date will be placed in a convenience class that will receive a one-time distribution of liquid cryptocurrency (in the form of BTC, ETH, or USDC) with a recovery equal to approximately 70% of their claim. Earn creditors with claims above $5,000 may elect to reduce their claim to $5,000 and participate in the convenience class. Over 85% of all Earn creditors are expected to be members of the convenience class.

  - **Earn Claims:** Earn account holders outside of the convenience class will receive:

    - a distribution of up to 100% of the Debtors' liquid cryptocurrency on the effective date (less other distributions of cryptocurrency under the Plan),

    - new tokens that represent equity in NewCo, which will be publicly traded and are expected to appreciate in value over time as illiquid assets are monetized, and

    - recoveries from litigation claims pursued by a litigation trustee to be appointed pursuant to the plan.

  - **Settlement of Custody Claims:** The Debtors have reached an agreement in principle with the ad hoc group of Custody holders and the Committee regarding a resolution of the ongoing preference litigation relating to transfer into the Debtors' Custody program, and the Debtors anticipate filing a motion to approve the settlement in the coming days.

  - **Settlement of Retail Borrower Claims:** The Debtors and the Committee have previewed a proposed settlement regarding the treatment of retail borrowers' claims with counsel to the ad hoc group of retail borrowers (the "Ad Hoc Borrower Group"). The Ad Hoc Borrower Group provided constructive initial feedback regarding the proposed treatment of Borrow claims, and discussions are continuing to progress in good faith—the Ad Hoc Borrower Group has agreed to withdraw its objection to the exclusivity motion given the ongoing constructive dialogue.

- *Pursuit of Certain Claims and Causes of Action*: The Debtors and the Committee entered into a stipulation that preserves claims and causes of action against Alex Mashinsky, S. Daniel Leon, and certain other insiders, as well as other claims and causes of action that will be agreed upon by the Debtors and the Committee.[5] These

---

[5] *See Motion of the Official Committee of Unsecured Creditors to Approve Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* [Docket No. 2054].

claims will be pursued by a litigation trustee under the Plan. This agreement ensures that this litigation will be properly funded and pursued for the benefit of the Debtors' stakeholders.

3. The Debtors have also agreed with the Committee to include incremental milestones in the proposed order extending exclusivity to ensure that the parties continue to make progress on the plan transaction over the coming weeks. With these inclusion of these milestones, the Committee now supports the Debtors' proposed exclusivity extension to allow time for the proposed Novawulf transaction to be developed into a chapter 11 plan, and for that plan to be solicited. The Debtors look forward to continuing to engage with the various stakeholders and incorporating their feedback into the chapter 11 plan that will be filed in the coming weeks. In addition, the Debtors have had preliminary discussions with certain state and federal regulatory agencies, and will continue to do so.

4. The substantial progress made by the Debtors to date, including the announcement of the proposed Novawulf transaction and the proposed settlement with the custody holders, is evidence that the chapter 11 process is working as intended to build consensus and maximize value for stakeholders. Despite the coalition of support that the Debtors are building, the objections of the U.S. Trustee, certain state regulators, the Withhold Ad Hoc Group, and certain *pro se* creditors remain outstanding. These objections recycle criticisms of the Debtors that have been asserted before—the process lacks transparency, the Debtors are untrustworthy, and not enough progress has been made to date. While it may be fair to criticize the Debtors' former management for their lack of transparency and cooperation, the same cannot be said of the Debtors' current management. Despite inheriting a company severely hampered by inadequate information systems and massive employee attrition, the Debtors' current management team, led by Christopher Ferraro at the direction of the Special Committee of the Board of Directors, has worked tirelessly to be transparent, respond to information requests, and cooperate with their key stakeholders to drive

these chapter 11 cases forward. Specifically, the Debtors created a first-of-its-kind "coin report" that is publicly filed monthly to provide transparency into the Debtors' assets; the Debtors have produced mountains of documents to the Examiner, the Committee, and other parties; and dozens of the Debtors' employees have given interviews with the Examiner and the Committee as part of their investigations. Additionally, Mr. Ferraro regularly provides live updates to the Court and creditors at omnibus hearings, and the Debtors communicate with their account holders through the Celsius app, e-mail, and via social media to alert account holders to key developments. The Committee has even recognized the efforts of the Debtors' management team and Special Committee to provide information and cooperate. *See Objection of the Official Committee of Unsecured Creditors to Immanuel Herrmann and Daniel A. Frishberg's Motion to Appoint a Chapter 11 Trustee* [Docket No. 2034] ¶ 12 ("The special committee and current management, including Mr. Ferraro, have committed to provide transparency and cooperate with the examiner and the Committee in their respective investigations.").

5. The concerns voiced in the remaining Objections that not enough progress has been made should be resolved by the Debtors' announcement of the value-maximizing Novawulf transaction. Notably, the Plan Update includes an illustrative timeline for confirmation of the plan, which is expected to occur by the end of June. Furthermore, the Debtors remain committed to running a transparent process and building on the momentum created over the last few months. These remaining objections fail identify a path to a more efficient, value-maximizing alternative because they cannot. Put simply—this is the best path forward at this juncture.

6. Now that the Debtors have selected the plan sponsor transaction that will form the basis of their chapter 11 plan—which is supported by the Committee—the Debtors request time to finalize and file the plan to implement this transaction and drive a prompt and value-maximizing

6

conclusion to these chapter 11 cases. With the finish line in sight, it is vital that the Debtors receive sufficient time to propose and prosecute a chapter 11 plan, and respectfully request that the Court grant the extension of the Exclusivity Periods.

**I.    The Debtors' Progress in These Chapter 11 Cases To Date Demonstrates Cause to Extend the Exclusivity Periods.**

7. The Debtors sought an extension of the Exclusivity Periods to continue working toward their goal of confirming a consensual, value-maximizing chapter 11 plan. The Plan Update sets out an attainable path out of chapter 11. In addition to announcing this proposed plan framework, the Debtors have demonstrated sufficient cause via the other relevant factors. Namely, the Debtors have made good faith progress throughout these chapter 11 cases, including obtaining the Earn ruling, the sale of GK8, litigating whether customers have claims at every Celsius entity, monetizing mined bitcoin and stablecoins after obtaining Court authority, and initiating distribution of certain customer Custody assets after the Court ruled on a number of threshold legal questions. An extension would neither prejudice nor pressure creditors. Far from it, this extension would harness the collective power of the Debtors, the Committee, and input from the various ad hoc groups to provide a meaningful and value-maximizing recovery to creditors.

8. Denial of the requested exclusivity extension would halt the Debtors' considerable progress in its tracks, siphon value from creditor recoveries, and irreversibly alter the forward trajectory of these chapter 11 cases. The Debtors' fear that terminating exclusivity would erase months of hard-fought progress is particularly justified when none of the other unresolved objections so much as hint at a reasonable alternative to the filed Plan Update. As the Committee notes in their now resolved objection, the Committee's favored path forward is "a restructuring transaction that distributes greater value than an orderly liquidation . . . ." Committee Objection ¶ 30. The Debtors' framework outlined in the filed Plan Update achieves just that.

7

II. **The Objecting Parties Fail to Offer a Credible Reason that the Court Should Not Find Cause to Extend the Exclusivity Periods.**

9. Not one of the unresolved objections proffers a cogent legal basis for denying the exclusivity extension. The objections recount similar themes of a desire for swift resolution and frustration that the chapter 11 cases are not further along. Such frustrations, however, are not a basis for terminating exclusivity and opening the floodgates for any number of competing plans. As set forth in the Motion and highlighted above, the Debtors have more than satisfied each of the applicable legal bases for granting an extension of exclusivity.

   1. **The U.S. Trustee's Limited Objection, Texas State Securities Board and Texas Department of Banking Joinder, and the New Jersey Bureau of Securities Joinder.**

10. The U.S. Trustee takes issue solely with the Debtors' proposed extension of the deadline to *solicit* a plan, not the proposed extension to file a plan, but fails to make any cogent argument about why the proposed deadline is inappropriate, particularly in light of the hundreds of thousands of account holders to solicit. After reiterating the relevant factors considered when determining whether there is cause to extend exclusivity that are set forth in *In re Adelphia Communications Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006) and its progeny, the U.S. Trustee asserts that there are an additional four new factors to consider in the context of whether it is appropriate to extend exclusivity. *See* U.S. Trustee Objection, at p. 3. In reality though, the cases cited were considered on motions to terminate or modify, not extend, exclusivity. *See In re Fansteel, Inc.*, No. 16-01823-11, 2017 WL 782865, at *1 (Bankr. S.D. Iowa Feb. 28, 2017) (ruling on an official unsecured creditor committee's motion to reduce the length of the plan exclusivity period and describing factors that are relevant to determining cause to terminate exclusivity); *In re Situation Mgmt. Sys., Inc.*, 252 B.R. 859, 859, 863 (Bankr. D. Mass. 2000) (ruling on Motion of the Unofficial Committee of Unsecured Creditors to Waive the Exclusivity Period and considering

8

22-10964-mg    Doc 2067    Filed 02/15/23    Entered 02/15/23 00:38:05    Main Document
Pg 9 of 14

"factors for determining whether to terminate the exclusivity period"); *In re Texaco Inc.*, 81 B.R. 806, 807, 812 (Bankr. S.D.N.Y. 1988) (moving party filed motion to terminate or modify debtor's exclusive periods and describing factors in context of "cases where the exclusivity periods were reduced"). Accordingly, it is not necessary to thoroughly examine these additional factors given this procedural posture.

11.   The U.S. Trustee's assertion that none of the cases the Debtors cited in their Motion extend the solicitation period for a commensurate amount of time as the Debtors' extension request is puzzling. *See* U.S. Trustee Objection at 3. The Debtors cited *In re Windstream Holdings, Inc.* which first extended the solicitation period from August 24, 2019 to February 20, 2020, a total of approximately 180 days, then further extended the solicitation period from February 20, 2020 to June 22, 2020, a total of 121 days. *See In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. June 20, 2019); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. December 23, 2019).

12.   Finally, while the time period between the proposed March 31, 2023 extension to file a plan and the proposed plan solicitation extension to June 30, 2023, is longer than some cases, the Debtors submit that this is warranted in these novel cases. Solicitation will be a sizeable undertaking, and the logistics of disseminating ballots to over 600,000 holders, tabulating votes, and getting to plan confirmation will be no small feat. Furthermore, solicitation in this case will entail significant communications with a customer constituency that is understandably less familiar with the process than sophisticated holders of funded debt typically found in other large chapter 11 cases. Accordingly, the Debtors chose to take a conservative approach and request what they believe is a reasonable extension for both deadlines.

13.   The Texas State Securities Board and Texas Department of Banking (together,

9

the "Office of the Texas Attorney General") and the New Jersey Bureau of Securities filed a joinder to the U.S. Trustee's objection. None of the U.S. Trustee, Office of the Texas Attorney General, or the New Jersey Bureau of Securities state plausible grounds for denying the requested extension, particularly in light of the progress the Debtors have made with the proposed Novawulf transaction.

### 2. The Withhold Ad Hoc Group's Objection.

14. Similarly, the Withhold Ad Hoc Group's objection is unpersuasive. The Withhold Ad Hoc Group's argument does not cite any legal authority for denying exclusivity and instead relies solely on inflammatory rhetoric. The Withhold Ad Hoc Group's concern that there is no viable plan should be assuaged by the filing of the Plan Update, which is supported by the Committee. The Withhold Ad Hoc Group also noted support for modifying exclusivity so that the Committee could propose a chapter 11 plan. Given the Committee's support for the Debtors' chosen path forward, the most efficient path forward is to execute on the proposed plan contemplated in the Plan Update, and the Debtors will continue to work with the Withhold Ad Hoc Group to try to reach a value-maximizing resolution of all pending litigation surrounding Withhold claims.

### 3. The *Pro Se* Creditors' Objections.

15. Three *pro se* creditors filed objections to the extension of exclusivity as well. Echoing arguments raised in the face of the first extension of exclusivity and in a number of other pleadings filed by these individuals, these objections express disappointment in the chapter 11 process while failing to suggest a viable alternative. In particular, Mr. Ubierna de las Heras's arguments are replete with factual inaccuracies, most egregiously asserting that the Debtors "lied to creditors" by using a bridge order to seek this second extension despite their agreement with the Committee to the contrary. Ubierna de las Heras Objection ¶ 1. This assertion is plainly wrong;

the Debtors did not use the bridge order to seek this extension, as this matter is being heard by the court on February 15, the day exclusivity expires.

16.     Mr. Ubierna de las Heras also asserts that "Celsius has not negotiated it[s] plan with [c]reditors" despite the Debtors' constant and robust engagement with the Committee and other ad hoc groups to develop the framework outlined in the Plan Update.  Ubierna de las Heras Objection ¶ 1; *see* Committee Objection ¶ 3, 39 n.5 ("Over the past several months, the Debtors and their advisors have been working in good faith, and in consultation with the Committee, to diligence and negotiate improved terms for various sale and plan sponsorship proposals . . . . the Committee is continuing to negotiate with the Debtors in good faith . . . ."). Mr. Ubierna de las Heras appears to conflate the Debtors not personally negotiating with *him* as the Debtors failing to negotiate with any creditors. Mr. Ubierna de las Heras "recognizes that the Court cannot sustain tens or hundreds of creditors filing their plans" but does not appear to realize the futility of negotiating with various creditors individually when the Debtors can engage with the Committee as a fiduciary for these similarly situated creditors. Ubierna de las Heras Objection ¶ 1. Furthermore, it would be impractical to negotiate with individual creditors given the need for confidentiality to preserve the integrity of the marketing process.

17.     Mr. Ubierna de las Heras's allegation that the Debtors have made "very little progress" by pointing to filing the schedules of assets and liabilities and statements of financial affairs and the leadership transition deliberately omits all of the Debtors' accomplishments described in the Motion, such as achieving resolution of the threshold legal issues, initiating distribution of customer assets, and securing the means to ensure sufficient liquidity to fund the plan confirmation process. *See* Motion ¶ 9. Mr. Ubierna de las Heras's decision to cherry pick excerpts from the Motion does not diminish the Debtors' accomplishments.

### 4. Mr. Frishberg's Objection.

18. Mr. Frishberg's objection is more of the same. Mr. Frishberg reiterates a common refrain from his other recent filings alleging that venue is improper, which does not demonstrate a basis for denying exclusivity. The Debtors have established proper venue in this Court through the principal assets of five Debtors being located in this District, as reflected in the Debtors' chapter 11 petitions. Venue for the other Debtors is proper as affiliates of the Debtors with principal assets in this District. Such a claim is not properly raised in this procedural posture and will not be addressed further in this context.

### 5. Mr. Herrmann's Objection.

19. Mr. Herrmann's objection takes a similar approach. After incorporating other previously described objections, Mr. Herrmann pivots to requesting the *Final Report of Shoba Pillay, Examiner* [Docket No. 1956] (the "Examiner's Final Report") be entered into evidence without acknowledging the report's inadmissibility under the Federal Rules of Evidence. Mr. Herrmann's failure to do so is especially baffling because this Court has previously stated that the Examiner's Final Report is hearsay and thus inadmissible. *See* Feb. 6, 2023 Hr'g Tr., at 100:9-10, 21:23 ("I have the greatest respect for the examiner. But the report is hearsay. It is not evidence . . . . I asked whether [the interviews conducted by the examiner] were under oath, and it was explained to me they were not. So, at this stage, it's hearsay.").

20. For the reasons set forth in the Motion and in this Reply, the Debtors believe that a number of factors, most importantly the filing of the Plan Update, the size and complexity of these chapter 11 cases, and judicial and economic efficiency, provide cause to extend the Exclusivity Periods as requested in the Motion. The requested extension is manifestly appropriate under the circumstances, and the Debtors have amply demonstrated cause to maintain their exclusivity at

this inflection point.  The interference of any competing plans with the efficient advancement of the framework outlined in the Plan Update would be value-destructive and cause further delays.

## Conclusion

21.     Accordingly, for the reasons set forth herein and in the Motion, the Debtors request that the Court approve the Motion and overrule the Objections.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors submit that the Court should overrule the Objections and grant the relief requested in the Motion.

| | |
|---|---|
| New York, New York<br>Dated: February 15, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:             jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:             patrick.nash@kirkland.com<br>                      ross.kwasteniet@kirkland.com<br>                      chris.koenig@kirkland.com<br>                      dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |