Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' STATEMENT
WITH RESPECT TO INTERCOMPANY CLAIMS HELD BY
DEBTOR CELSIUS NETWORK LLC AGAINST ITS DEBTOR AFFILIATES**

On February 9, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order Requiring Debtors to File Information Regarding Intercompany Claims* [Docket No. 2017] (the "Order") directing the above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Celsius") to file on the docket "information

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

regarding the amount and type of any potential intercompany claims held by [Debtor Celsius Network] LLC against Debtor affiliates." In response to the Order, the Debtors submit this *Debtors' Statement with Respect to Intercompany Claims Held by Debtor Celsius Network LLC Against Its Debtor Affiliates* (this "Statement")[2] and the *Declaration of Robert Campagna in Support of the Debtors' Statement with Respect to Intercompany Claims Held by Debtor Celsius Network LLC Against Its Debtor Affiliates* (the "Campagna Declaration") attached hereto as **Exhibit A**.

    A.    **The Debtors' Capital Structure**

1. Debtor Celsius US Holding LLC owns 100% of the equity in Debtor Celsius Network LLC ("LLC"). The Debtors' capital structure as of July 13, 2022 (the "Petition Date") is shown below:

---

[2] In preparing this Statement and the attached exhibits, the Debtors and their advisors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors and their advisors have made commercially reasonable efforts to ensure the accuracy and completeness of this Statement and attached exhibits, subsequent information or discovery may result in material changes to this Statement and attached exhibit. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors and their advisors hereby reserve all of their rights, including to amend and/or supplement this Statement and attached exhibits, as may be necessary or appropriate.



**B.    The Debtors' Schedules and Statements**

2.    Alvarez & Marsal North America, LLC ("A&M"), the Debtors' retained financial advisor, assisted the Debtors in the preparation of their Schedules and Statements[3] after compiling voluminous information from books, records, and documents from across the Debtors' international organization. The Debtors and their advisors confronted novel challenges in preparing the Schedules and Statements, in part due to the unique nature of cryptocurrency and

---

[3] "Schedules and Statements" refers to certain of the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs filed on or around October 5, 2022.

cryptocurrency transfers.[4] The intercompany claims and transactions set forth in the Schedules and Statements filed on October 5, 2022, reflect the Debtors' books and records as of the Petition Date.

3.  As set forth below, LLC's Schedules and Statements list the following intercompany claims against both Debtor and non-Debtor entities in Column A. Column B sets forth certain pro forma adjustments the Debtors and A&M believe should be made based on the assumptions set forth in this Statement and Column C sets forth the pro forma intercompany claims after considering the adjustments set forth in Column B. *See* Campagna Decl. ¶ 8.

Celsius Network LLC Intercompany Balances
(in millions of U.S. Dollars)

| Entity | Due to LLC / (Due from LLC) [A] | PF Adj. [B] | Adj. Due to LLC / (Due from LLC) [C] |
|---|---|---|---|
| **Debtor Entities** | | | |
| Celsius Network Ltd (UK) | 9,093.7 | (5,611.1) | 3,482.5 |
| Celsius Lending LLC | (1,127.9) | – | (1,127.9) |
| Celsius Mining LLC | 0.2 | – | 0.2 |
| Celsius Network Inc. | (14.5) | – | (14.5) |
| Celsius Networks Lending LLC | 505.9 | – | 505.9 |
| Celsius US Holding LLC | – | – | – |
| Celsius KeyFi LLC | 0.0 | – | 0.0 |
| **Debtor Total** | **$8,457.3** | **($5,611.1)** | **$2,846.1** |
| **Non-Debtor Entities** | | | |
| Celsius Network Ltd (ISR) | 75.5 | – | 75.5 |
| Celsius EU UAB (Lithuania) | – | – | – |
| Celsius Network Europe | (0.2) | – | (0.2) |
| Celsius Services CY Ltd | (0.8) | – | (0.8) |
| Celsius (AUS) Pty Ltd | – | – | – |
| Celsius Network (Gibraltar) Ltd. | – | – | – |
| **Non-Debtor Total** | **$74.5** | **–** | **$74.5** |

[A] Reflects intercompany balances as of the petition date, consistent with previous SOFA 4 filings.
[B] Reflects certain adjustments the Company and its advisors have elected to adjust.
[C] Reflects adjusted intercompany balances as of the petition date.

---

[4]  *See Debtors' Motion Granting a Second Extension of Time to File Schedules and Statements of Financial Affairs* [Docket No. 431].

### C. The Debtors' Prepetition Practices and Postpetition Reconciliation Efforts

4. Since the Petition Date, while simultaneously overseeing the management and reporting responsibilities of the chapter 11 process, the Debtors and A&M have continued to review and reconcile the Debtors' books and records to gain a clearer picture of the prepetition intercompany claims between all Debtors, including those held by LLC against other Debtors. This reconciliation process has only been completed, and is likely only possible, at a very high level given the enormous volume of historical intercompany transactions and severe deficiencies in intercompany record keeping as described further below.

*i.    The Debtors' Prepetition Practices*

5. Based on this review, the Debtors did not generally record prepetition intercompany transactions in their books and records contemporaneously with such transfers, and in many cases did not record intercompany transactions at all. *See* Campagna Decl. ¶ 9. This has resulted in a backlog of unaccounted for transactions that, to date, have not been fully reconciled. Moreover, with respect to certain intercompany entries that represent transfers of cryptocurrency, the Debtors did not record the full value of the assets that were transferred between Celsius Network Limited ("CNL") to LLC, but rather accounted for only the cost basis of such assets through intercompany accounting. In addition to not capturing the full market value of coins transferred via intercompany transactions, the Debtors did not engage in "mark to market" reconciliation practices to track the subsequent impact of market movements on any intercompany entries on an ongoing basis. *See* Campagna Decl. ¶ 9.

6. Prior to the Petition Date, LLC and CNL also executed an Intercompany Operation and Loan Agreement effective on August 19, 2021, and entered into an Asset Transfer Agreement on December 29, 2021, with an effective date of August 19, 2021. It is unclear at this time what amount of the intercompany claims are related to these agreements.

5

> ii.      *The Debtors' Postpetition Reconciliation Process*

7. With respect to the intercompany claim between CNL and LLC (the "Intercompany Claim"), based on a review of certain of the Debtors' prepetition accounting records and other relevant documents, A&M and the Debtors have prepared a summary of the Intercompany Claim as it relates to the most significant transactions (the "Intercompany Analysis"). A&M and the Debtors did not, however, complete a comprehensive analysis in light of the time and resources available. Given the dearth of record-keeping, it may not be possible to fully reconstruct the Intercompany Claim. If it were at all possible, it would be a time and cost intensive forensic accounting exercise that would likely require the engagement of a forensic accounting firm to manually reconstruct every intercompany transaction at a significant cost to the Debtors' estates. *See* Campagna Decl. ¶ 10.

8. The Intercompany Claim includes the following material activity: (a) approximately $10.3 billion of user deposit liabilities that were transferred from CNL to LLC, creating an equivalent receivable at LLC; (b) the cost basis of Defi assets of approximately $2.4 billion that were transferred from CNL to LLC, creating an equivalent payable at LLC; (c) the cost basis of certain undeployed crypto assets of approximately $610.2 million that were transferred from CNL to LLC, creating an equivalent payable at LLC; (d) the cost basis of certain staking assets of approximately $288.8 million that were transferred from CNL to LLC, creating an equivalent payable at LLC;[5] and (e) certain decentralized finance (DeFi) borrowing liabilities of approximately $1.3 billion that were transferred from CNL to LLC, creating an equivalent

---

[5] For the transactions described in (b)–(d), the total market value of these assets was $11.1 billion at the time of the transactions. As reflected above, however, only the $3.3 billion cost basis of these assets was recorded through intercompany accounts.

receivable at LLC. Prior to any adjustments this created an $8.4 billion receivable at LLC due from CNL based on the original accounting recorded

9.  Between July 2021 and the Petition Date, there were additional intercompany transactions between CNL and LLC which generated net receivables of $738.7 million due from CNL to LLC. As a result, the total Petition Date net receivable, based on the original accounting, was $9.1 billion due from CNL to LLC as cited above and included in the Statements and Schedules.

10. The Intercompany Analysis further identifies that between October 2021 and the Petition Date, CNL and LLC engaged in an estimated 7,000 unrecorded intercompany transfers through which the Debtors moved coins between LLC and CNL to support various deployment strategies. While these transfers involved the movement of coins between the wallets of the various Debtors, these coin transfers were not reflected via intercompany transactions in the accounting books and records. Thus, while the Debtors' Schedules and Statements, based on the Debtors' books and records as of the Petition Date, reflect an approximately $9.1 billion intercompany claim held by LLC against CNL based on the initial Intercompany Claim, such claim does not take into account the shortfalls in record keeping noted throughout this Statement.[6]

11. During the review of the Intercompany Claim, the Debtors and their advisors determined that certain pro forma adjustments should be made to the accounting entries listed above. These adjustments fell into three categories: (a) reflecting the full market value of the $11.1 billion of assets sent from CNL to LLC, which added additional payables of $7.8 billion at

---

[6] *See Global Notes and Statement of Limitations, Methodology and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* [Docket No. 974] ¶ 2 (Network LLC's Schedules and Statements); *see also Debtors' Reply in Support of Debtors' Motion Seeking Entry of an Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* [Docket No. 1619] ¶ 4.

LLC; (b) unwinding several entries in which crypto related assets were initially transferred from CNL to LLC and were subsequently returned, amounting to $984.5 million of additional net receivables at LLC; and (c) creating entries to reflect the inclusion of crypto assets transferred from LLC to CNL between the Pause Date and the Petition Date creating additional receivables of $1.2 billion at LLC.[7]  *See* Campagna Decl. ¶ 11.

12.    Despite best efforts to understand the complete universe of intercompany transactions, the Debtors and A&M believe that a comprehensive accounting of all intercompany transactions would require forensic analysis and be costly and time consuming, if it were even possible given the recordkeeping deficiencies.  *See* Campagna Decl. ¶ 12.  For example, determining the precise balance of the intercompany claims first requires establishing the coins associated with intercompany transactions on a customer-by-customer basis, and then would require reconciling subsequent customer withdrawals and mark to market adjustments. Furthermore, neither A&M nor the Debtors believe that even if such a reconciliation were theoretically possible, that a complete accounting and unwinding would add meaningful value to the estates considering the significant time investment and immense fees of a comprehensive forensic audit.  Thus, while the Intercompany Analysis did not reconstruct each and every intercompany transfer for the reasons described herein, after many months of analysis, the Debtors and A&M believe that the as-adjusted intercompany claim held by LLC against CNL is best reflected at the pro forma amount of $3.5 billion.  *See* Campagna Decl. ¶ 12.

---

[7]   LLC originally accounted for these movements in Other Comprehensive Income. The pro forma adjustment moves the entry to the intercompany account.

### D. Reservation of Rights

13. The Debtors and A&M are continuing to review the prepetition books and records and intend to identify and appropriately document all known intercompany claims and transactions. Given the magnitude of these transactions, however, the Debtors do not currently contemplate a full reconciliation of all intercompany claims and transactions, as this would be a nearly impossible, time consuming, and cost-prohibitive task. Rather, the Debtors, together with their advisors, are evaluating all equitable options to resolving intercompany claims between Debtor and non-Debtor entities as accurately and equitably as practicable given the costs required for a full reconciliation of every intercompany transaction.

14. This Statement is without prejudice to the rights of the Debtors to object to any claim on any grounds whatsoever. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Statement; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law. For the avoidance of doubt, nothing contained in this Statement is intended or should be construed as a waiver of the Debtors' rights with respect to any intercompany claim held by LLC against its Debtor and non-Debtor affiliates.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| New York, New York<br>Dated: February 16, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:           jsussberg@kirkland.com<br><br>- and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                      ross.kwasteniet@kirkland.com<br>                      chris.koenig@kirkland.com<br>                      dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |

# Exhibit A

**Campagna Declaration**

| | |
|---|---|
| Joshua A. Sussberg, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:       (212) 446-4900 | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:       (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF**
**ROBERT CAMPAGNA,**
**MANAGING DIRECTOR OF**
**ALVAREZ & MARSAL NORTH AMERICA,**
**LLC, IN SUPPORT OF DEBTORS' STATEMENT WITH**
**RESPECT TO INTERCOMPANY CLAIMS HELD BY DEBTOR**
**CELSIUS NETWORK LLC AGAINST ITS DEBTOR AFFILIATES**

I, Robert Campagna, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1. I am a Managing Director with Alvarez & Marsal North America, LLC (together with its wholly-owned subsidiaries and independent contractors and also with employees of its professional service provider affiliates, all of which are wholly-owned by its parent company and employees, "A&M"), a restructuring advisory services firm with numerous offices throughout the country. Celsius Network LLC ("LLC") along with certain of its subsidiaries and affiliates, are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

2. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have been informed of such matters by professionals of A&M. I am also familiar with the *Debtors' Statement with Respect to Intercompany Claims Held by Debtor Celsius Network LLC Against Its Debtor Affiliates* (the "Statement"),[2] filed contemporaneously herewith.

3. I submit this declaration (this "Declaration") in support of the Statement. Unless otherwise indicated, the statements set forth in this Declaration are based upon (a) my personal knowledge of the Debtors' business, (b) information learned from my review of relevant documents, (c) information I received from the A&M team working under my supervision or the Debtors' management team and other advisors, or (d) my experience as a restructuring professional. I am not being specifically compensated for this testimony other than through payments that are proposed to be received by A&M as a professional retained by the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

**Qualifications**

4. Since 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Statement.

2

operational areas. A&M's debtor advisory services have encompassed a wide range of activities targeted at stabilizing and improving a company's financial position, including developing and validating forecasts and business plans; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

5. Since the Debtors engaged A&M in June of 2022, I have worked closely with the Debtors' management and other professionals with respect to the Debtors' restructuring efforts, including assisting the Debtors in preparing cash flow projections, budgets, and other financial information. I lead the A&M team advising the Debtors.

6. I have over 25 years of distressed company advisory experience. Through roles in both senior management and as a restructuring advisor, I have substantial experience helping financially-distressed companies stabilize their financial condition, analyze their operations, and develop business plans to accomplish the necessary restructuring of their operations and finances. I have advised clients in numerous major bankruptcy cases, including *In re Murray Energy Holdings Co.*, No. 19-56885 (JEH); *In re Stearns Holdings, LLC*, No. 19-12226 (SCC); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ); *In re Payless Holdings LLC*, No. 17-42257 (KSS); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH); *GT Advanced Techs. Inc.*, No. 14-11916 (HJB); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS); *V2V Holding LLC*, No. 12-11385 (MG); *Education Holdings 1, Inc.*, No. 13-10101 (BLS); *Orchard Brands Corp.*, No. 20-10566 (MFW); *Cooper-Standard Auto.*, No. 09-12743; and *Interstate Bakeries Corp.*, No. 04-45814 (JWV). I received my bachelor's degree in business administration from Bucknell University. I am a Certified Public Accountant (inactive) and a Certified Insolvency and Restructuring Advisor.

## The Debtors' Schedules and Statements

7. In preparation for the filing of these chapter 11 cases, the Debtors' management retained A&M as a financial advisor to advise the Debtors on their fiscal responsibilities and assist with their financial reporting needs during the bankruptcy process. The A&M team assisted the Debtors with preparing numerous pleadings, including the Schedules and Statements.

8. As set forth below, LLC's Schedules and Statements list the following intercompany claims against both Debtor and non-Debtor entities in Column A. Column B sets forth certain pro forma adjustments A&M and the Debtors believe should be made based on the assumptions set forth in the Statement and this Declaration and Column C sets forth the pro forma intercompany claims after considering the adjustments set forth in Column B.

**Celsius Network LLC Intercompany Balances**
*(in millions of U.S. Dollars)*

| Entity | Due to LLC / (Due from LLC) [A] | PF Adj. [B] | Adj. Due to LLC / (Due from LLC) [C] |
|---|---|---|---|
| **Debtor Entities** | | | |
| Celsius Network Ltd (UK) | 9,093.7 | (5,611.1) | 3,482.5 |
| Celsius Lending LLC | (1,127.9) | – | (1,127.9) |
| Celsius Mining LLC | 0.2 | – | 0.2 |
| Celsius Network Inc. | (14.5) | – | (14.5) |
| Celsius Networks Lending LLC | 505.9 | – | 505.9 |
| Celsius US Holding LLC | – | – | – |
| Celsius KeyFi LLC | 0.0 | – | 0.0 |
| **Debtor Total** | **$8,457.3** | **($5,611.1)** | **$2,846.1** |
| **Non-Debtor Entities** | | | |
| Celsius Network Ltd (ISR) | 75.5 | – | 75.5 |
| Celsius EU UAB (Lithuania) | – | – | – |
| Celsius Network Europe | (0.2) | – | (0.2) |
| Celsius Services CY Ltd | (0.8) | – | (0.8) |
| Celsius (AUS) Pty Ltd | – | – | – |
| Celsius Network (Gibraltar) Ltd. | – | – | – |
| **Non-Debtor Total** | **$74.5** | **–** | **$74.5** |

[A] Reflects intercompany balances as of the petition date, consistent with previous SOFA 4 filings.
[B] Reflects certain adjustments the Company and its advisors have elected to adjust.
[C] Reflects adjusted intercompany balances as of the petition date.

## The Debtors' Prepetition Practices and Postpetition Reconciliation Efforts

9. Based on my team's analysis following discussions with the management team and a review of the Debtors' books and records, the Debtors did not record prepetition intercompany

4

transactions in their books and records contemporaneously with such transfers, and in many cases did not record intercompany transactions at all. This has resulted in a backlog of transactions that, to date, have not been fully reconciled. Moreover, with respect to certain intercompany entries that represent transfers of cryptocurrency, the Debtors did not record the full value of the assets that were transferred from CNL to LLC, but rather accounted for only the cost basis of such assets through intercompany accounting. Finally, in addition to not capturing the full market value of coins transferred via intercompany transactions, the Debtors did not engage in "mark to market" reconciliation practices to track the subsequent impact of market movements on any intercompany entries on an ongoing basis.

10. Nevertheless, A&M has worked with the Debtors to summarize the accounting supporting the intercompany claim between CNL and LLC between July 2021 and the Petition Date (the "Intercompany Claim") as it relates to the most significant transactions (the "Intercompany Analysis"). A&M and the Debtors did not, however, complete a comprehensive analysis in light of the time and resources available. It may not be possible to fully reconstruct the Intercompany Claim. If it were at all possible, it would be a time and cost intensive full forensic accounting exercise that would likely require the engagement of a forensic accounting firm to manually reconstruct every intercompany transaction at a significant cost to the Debtors' estates.

11. During the review of the Intercompany Claim, A&M and the Debtors determined that certain pro forma adjustments should be made to the accounting entries listed above. These adjustments fell into three categories: (a) reflecting the full market value of the $11.1 billion of assets sent from CNL to LLC, which added additional payables of $7.8 billion at LLC; (b) unwinding several entries in which crypto related assets were initially transferred from CNL

5

to LLC and were subsequently returned, amounting to $984.5 million of additional net receivables at LLC; and (c) creating entries to reflect the inclusion of crypto assets transferred from LLC to CNL between the Pause Date and the Petition Date creating additional receivables of $1.2 billion at LLC.[3]

12.    Despite best efforts to understand the complete universe of intercompany transactions, I believe that a comprehensive accounting of all intercompany transactions would require forensic analysis and be costly and time consuming, if it were even possible given the recordkeeping deficiencies. For example, determining the precise balance of the intercompany claims first requires establishing the coins associated with intercompany transactions on a customer-by-customer basis, and then would require reconciling subsequent customer withdrawals and mark to market adjustments. Furthermore, I believe that even if such a reconciliation were theoretically possible that a complete accounting and unwinding would not add meaningful value to the estates considering the significant time investment and immense fees of a comprehensive forensic audit. Thus, while the Intercompany Analysis did not reconstruct each and every intercompany transfer for the reasons described herein, after many months of analysis, I believe that the as-adjusted intercompany claim held by LLC agains CNL is best reflected at the pro forma amount of $3.5 billion.

---

[3]    LLC originally accounted for these movements in Other Comprehensive Income. The pro forma adjustment moves the entry to the intercompany account.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 16, 2023

*/s/ Robert Campagna*
Name: Robert Campagna
Title: Managing Director
Alvarez & Marsal North America, LLC