Hearing Date: **March 21, 2023, at 10:00 a.m. (prevailing Eastern Time)**
Response Deadline: **March 14, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING ON DEBTORS' OBJECTION**
**TO PROOF OF CLAIM NO. 24604 OF IMMANUEL HERRMANN**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* (the "Objection") will be held on **March 21, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge. In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on **March 20, 2023**.)

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on March 21, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on March 21, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses to the relief requested in the Objection shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No.

2

22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **March 14, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order) available on the case website of the Debtors at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Objection.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely response may result in entry of a final order granting the Objection as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Objection and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Objection and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York

Dated:  February 19, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com
                    chris.koenig@kirkland.com
                    dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

4

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' OBJECTION TO**
**PROOF OF CLAIM NO. 24604 OF IMMANUEL HERRMANN**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this objection (this "Objection") to the Proof of Claim filed by Immanuel Herrmann, No. 24604

on the Debtors' claims register (the "Claim"), and seek entry of an order (the "Proposed Order"),

substantially in the form attached hereto as **Exhibit A**, partially disallowing and reducing

Mr. Herrmann's Claim to the amount reflected on the Debtors' schedules pursuant to section 502

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 USA LLC (9450); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, PH05, Hoboken, New Jersey 07030.

of title 11 of the U.S. Code (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Preliminary Statement**

1.      As the Debtors have reiterated throughout these chapter 11 cases, bankruptcy is a collective process that is, at the same time, deeply personal to the Debtors' hundreds of thousands of account holders (collectively, the "Account Holders").  All Account Holders should have a claim against the Debtors for their cryptocurrency balance on the Debtors' platform.  Account Holders who insist on litigating additional claims for fraud, breach of contract, constructive trust, or other damages against the ***Debtors' estates***, however, will only take value away from other Account Holders—recoveries are a zero-sum game.  Therefore, to ensure equal recoveries for all Account Holders that transferred their digital assets in the Debtors' "Earn" program (the "Earn Program"), the Debtors will be objecting to proofs of claim that seek additional ***individual*** claims (beyond claims on account of cryptocurrency balances) on procedural and equitable grounds.  *See Debtors' Statement Regarding Commencement of Claims Reconciliation Process* [Docket No. [●]].[2]

2.      Mr. Herrmann filed one such Claim.  Further, it is the Debtors' understanding that Mr. Herrmann utilized his Telegram channel[3] to encourage other *pro se* creditors to file proofs of claim (or risk losing rights) and that Mr. Herrmann aggregated mock proof of claim addendums in

---

[2]    For the avoidance of doubt, the Debtors dispute certain characterizations and conclusions in the Examiner Report. Nothing herein shall be treated as an endorsement of the Examiner Report or admission regarding any matter therein, and the Debtors reserve all rights regarding the Examiner Report, including objections to its introduction in any proceeding.  *See* Feb. 6, 2023 Hr'g Tr. at 100 9–12 ("I have the greatest respect for the examiner.  But the report is hearsay.  It is not evidence.") (C.J. M. Glenn).

[3]    For months, Mr. Herrmann has worked to position himself as a leader among Earn and Borrow creditors, including on several of his pleadings that he is an "Admin of the worldwide Celsius Earn Customer Telegram group" and providing advice to those who have joined his channel.

2

a shared Google Drive such that several proofs of claim are likely patterned on Mr. Herrmann's Proof of Claim. It should not, however, be the case that certain Account Holders receive enhanced recoveries at the expense of other Account Holders merely because they filed a proof of claim when all Account Holders are similarly situated. It is for this reason that the Debtors object to Mr. Herrmann's Claim (and intend to object to all Proofs of Claim patterned thereon).

3.      Mr.Herrmann's Proof of Claim reserves "any and all associated derivative claims against . . . Alex Mashinsky[] and all other Celsius executives and parties connected with Celsius' operations and conduct, including but not limited to any claims covered by D&O insurance." *See* Claim Addendum at 2. To be clear, this Objection does not seek to eliminate that reservation. To the extent that Mr. Herrmann has claims against parties other than the Debtors, he is free to pursue them even if this Objection is sustained.[4] Furthermore, on February 14, 2023, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed a stipulation and agreed order that will preserve for prosecution through a litigation administrator certain estate claims and causes of action against (a) Alexander Mashinsky, (b) Shlomi Daniel Leon, (c) Hanoch ("Nuke") Goldstein, (d) Harumi Urata-Thompson, (e) Jeremie Beaudry, (f) Johannes Treutler, (g) Aliza Landes, (h) Kristine Meehan Mashinsky, and (i) entities related to the foregoing individuals. *See Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* [Docket No. 2054] (the "Committee Claim Stipulation"). This will allow for a centralized prosecution of these claims. As to claims against the Debtors' estates, however, the

---

[4]    For the avoidance of doubt, this statement is meant only to convey that this Objection will not serve as a barrier. Other barriers may exist (*e.g.*, standing).

Debtors must object to all Account Holder claims that seek additional recoveries to the detriment of other Account Holders.

4.      For these reasons, and as further detailed herein, the Debtors object to Mr. Herrmann's Claim and request that the Court either disallow it, with prejudice, to the extent that it requests amounts in excess of the value of the cryptocurrency associated with his Celsius account, or, in the alternative, estimate these additional claims at $0 pursuant to section 502(c) of the Bankruptcy Code.  For the avoidance of doubt, the Debtors do not object to the allowance of Mr. Herrmann's claim in the amount reflected on the Debtors' schedules.[5]

## Relief Requested

5.      The Debtors request entry of the Proposed Order, pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, reducing Claim No. 24604 to the amount set forth in the Debtors' Schedules (as defined herein).

## Jurisdiction and Venue

6.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5]   Mr. Herrmann contests the Debtors' scheduling of certain of his digital assets.  *See* Proof of Claim Addendum at 15.

8.      The bases for the relief requested herein are sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

**Background**

9.      On October 5, 2022, all Debtors except for GK8 Ltd., GK8 UK, and GK8 USA LLC (collectively, the "GK8 Debtors")[6] filed their respective schedules of assets and liabilities (as amended from time to time, the "Schedules") [Docket No. 974] pursuant to Bankruptcy Rule 1007 and the orders extending time to file schedules of assets and liabilities [Docket Nos. 57 and 431].

10.     On November 16, 2022, the Court entered an order [Docket No. 1368] (the "Bar Date Order") establishing January 3, 2023, at 5:00 p.m., prevailing Eastern Time (the "Bar Date"), as the last date and time for most retail Account Holders to file proofs of claims based on prepetition claims (collectively, the "Proofs of Claims") against any Debtor other than the GK8 Debtors in these chapter 11 cases, and January 10, 2023, at 5:00 p.m., prevailing Eastern Time (the "Governmental Bar Date") as the last date and time for each governmental unit to file Proofs of Claim against any Debtor other than the GK8 Debtors.  On January 10, 2023, the Court entered an order [Docket No. 1846] (the "Amended Bar Date Order") extending both the Bar Date and the Governmental Bar Date to February 9, 2023, at 5:00 p.m., prevailing Eastern Time (the "Extended Bar Date").  As of yet, no bar date has been set as to claims against the GK8 Debtors.  To date, approximately 23,000 Proofs of Claim have been filed against the Debtors, totaling approximately $78 billion.[7]

---

[6]    The GK8 Debtors filed their respective voluntary petitions for protection under chapter 11 of the Bankruptcy Code on December 7, 2022 and filed their respective schedules on January 20, 2023.

[7]    The total value of the filed Proofs of Claim does not include approximately 13,606 claims filed solely in cryptocurrency denominations (without including a liquidated claim amount), including one claim filed for cryptocurrency worth $117.9 quintillion as of the Petition Date.

11.     On January 4, 2023, the Bankruptcy Court entered the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Opinion"), finding that the Debtors' Terms of Use presumptively constitute a binding contract governing the relationship between the Debtors and their Account Holders, and that according to the unambiguous language of the Terms of Use, the assets associated with the Earn Program are property of the Debtors' estates.  *See* Earn Opinion at 31–42.  The Earn Opinion emphasized that Account Holders' "rights with respect to various defense to and breach of contract claims are reserved,"[8] and that "[c]reditors will have every opportunity to have a full hearing on the merits of these arguments during the claims resolution process."  *Id.* at 45.

12.     On February 9, 2023, Mr. Herrmann filed his Proof of Claim, asserting that the Terms of Use are "unconscionable, void, subject to rescission, ambiguous and/or unenforceable."  Claim Addendum at 8.  Mr. Herrmann further alleges numerous causes of action, including unjust enrichment and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), among others, as further discussed in the summary chart attached hereto as **Exhibit B**.  On these bases, Mr. Herrmann requests an in-kind return of the cryptocurrency he transferred to the Debtors as well as an unliquidated amount on account of his additional claims.

### Basis for Relief

13.     Mr. Herrmann's Proof of Claim raises a number of contract defenses and counterclaims that, if adequately pleaded and successfully proven in trial, could either be remedied by equitable relief or an award of damages.  **Exhibit B** hereto details why Mr. Herrmann's Claim is not adequately pleaded and would be prohibitively expensive and time consuming to litigate.

---

[8]     Such defenses and claims include fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable.  Earn Opinion at 43.

The body of this Objection first addresses why—even if Mr. Herrmann prevailed—equitable relief, such as rescission or non-enforcement of the Terms of Use, or imposition of a constructive trust, is not appropriate.  Next, the body of this Objection demonstrates that, for similar reasons, Mr. Herrmann should not be entitled to recover more than a claim in the amount of cryptocurrency reflected on the Debtors' schedules.

## I.    Mr. Herrmann Has Not Demonstrated that Equitable or Non-Enforcement Remedies Are Appropriate.

14.    Mr. Herrmann does not adequately plead or provide sufficient evidence to support his request for a full, in-kind recovery via rescission of the Terms of Use, nonenforcement of the Terms of Use, or imposition of a constructive trust.  Even if he did, such remedies would inequitably provide Mr. Herrmann with an enhanced recovery at the expense of other similarly situated Account Holders.  Accordingly, Mr. Herrmann's requests should be denied.[9]

### A.    Rescission or Nonenforcement of the Terms of Use Should Not be Granted to Mr. Herrmann Given the Adequate Remedy of Damages.

15.    The relief Mr. Herrmann requests with respect to the Terms of Use is atypical in a breach of contract action.  The principal "legal" remedy to enforce a contract is a judgment awarding a sum of money.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 550 N.E.2d 919, 922 (N.Y. 1990).  "Where an adequate remedy at law is provided, the reason for granting equitable relief disappears."  *Lichtyger v. Franchard Corp.*, 223 N.E.2d 869, 874 (N.Y. 1966).  The fact that an award of damages is reduced in bankruptcy does not render it inadequate.  *Cf.In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) (concerning imposition of a constructive trust in a chapter 7 case) ("While [a creditor] may understandably chafe at being required to accept less than

---

[9]    While Mr. Herrmann's Proof of Claim does not reference constructive trust and rescission by name, Mr. Herrmann did allege causes of action that may result, if successful, in these remedies, and Mr. Herrmann generally requests a return of the cryptocurrency reflected in his account balance.  Mr. Herrmann's Claim Addendum requests that his claim be liberally construed, and the Debtors have attempted to do so.

it was otherwise entitled to receive under [its agreement], the short—and conclusive—answer is that this is not injustice, it is bankruptcy.").

16.     The remedies Mr. Herrmann requests may be available under exceptional circumstances but are not appropriate here.  Rescission of a contract is available in lieu of actual damages only if (a) a breach of contract is either "material and willful" or "so substantial and fundamental" that it "strongly tend[s] to defeat" the purpose of the contract, (b) damages would not be a "complete and adequate" remedy, ***and*** (c) "the status quo may be substantially restored" by equitable relief.  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 227 (2d Cir. 2017) (describing the standard for rescission under New York law); *In re Ivan F. Boesky Sec. Litig.*, 825 F. Supp. 623, 637 (S.D.N.Y. 1993) (finding that rescission was not available where transaction could not be unwound and the parties returned to their pre-contractual positions).  Similarly, nonenforcement may be available as a remedy where a contract is unconscionable, but "courts have 'substantial flexibility' in determining the remedy for an unconscionable contract." *In re MBM Ent., LLC*, 531 B.R. 363, 418 (Bankr. S.D.N.Y. 2015); *see Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d 114, 137 (2d Cir. 2010) ("If a contract is unconscionable then it is also necessarily invalid and unenforceable.").  As such, a court may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."  *Id.* at 138 (quoting Restatement (Second) of Contracts § 208 (1981)) (internal quotation marks omitted).

17.     Even if Mr. Herrmann could establish a record on which rescission or nonenforcement were an available remedy, the Court should nonetheless decline Mr. Herrmann's request for such remedies.[10]  ***First***, Mr. Herrmann suffered an economic harm—the loss of his

---

[10]    While Mr. Herrmann's Claim Addendum is extensive, nearly all of the "evidence" he cites would be inadmissible under the Federal Rules of Evidence.  Furthermore, the various legal theories articulated in Mr. Herrmann's Claim

digital assets—for which damages offer a sufficient remedy. *Lichtyger v. Franchard Corp.*, 223 N.E.2d 869, 874 (N.Y. 1966) ("Where an adequate remedy at law is provided, the reason for granting equitable relief disappears."). *Cf. Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 339 (S.D.N.Y. 2003) (finding that if the publisher rejected an author's work in bad faith, such rejection would undermine the purpose of the parties' contract—to produce saleable works for the publisher—and thus rescission may be appropriate). Mr. Herrmann has not established otherwise.

**Second**, granting rescission may allow "the status quo [to] be substantially restored" for Mr. Herrmann, but it would do so at the expense of other Account Holders who entered the same contract with the Debtors, substituting a "run on the courthouse" for exactly the type of "run on the bank" the bankruptcy system was established to prevent. *Pyskaty*, 856 F.3d at 227.

18.    The Debtors simply do not have sufficient digital assets to make every creditor whole. The Debtors have raised this issue in response to Mr. arguments on multiple occasions, but Mr. has not articulated a reason why he should receive a greater recovery based on claims that, if sufficiently pleaded, are likely to be broadly applicable to all Account Holders. *See* Earn Opinion at 30 n. 26 ("The Court notes that even if the Terms of Use indicated that coins were property of the customers, which they do not, as Debtors' counsel pointed out at the December 5, 2022 hearing 'we do not have enough coins to give everybody their coin back in kind.' Thus, even if the contract's terms conferred title on customers, customers would still not get back 100% of their coins.") (citations omitted). No such reason exists. In fact, the opposite is true—granting

---

Addendum are deficiently pled and generally conclusory, as further detailed in **Exhibit B**. While the Debtors understand that Mr. Herrmann is a *pro se* claimant, it is difficult to respond to such arguments on the merits when numerous arguments are summarily raised and no supporting evidence is presented. In any event, the difficulty (and cost) of potentially thousands of *pro se* creditors litigating these highly fact-intensive matters further supports the Debtors' position that resolving the merits on each of these matters will only destroy value and delay these chapter 11 cases, particularly when the damages for such claims would duplicate Mr. Herrmann's claim for the return of his cryptocurrency as described further herein.

Mr. Herrmann a unique and enhanced recovery when all Earn Program Account Holders suffered

the same harm would be inequitable, if not unconscionable. Accordingly, the Court should decline

to apply the equitable remedies of rescission and non-enforcement.

### B.    The Court Should Decline to Impose a Constructive Trust.

19.    For similar reasons, a constructive trust is inappropriate. A constructive trust is a

state-law remedial device applied by courts "[w]hen property has been acquired in such

circumstances that the holder of the legal title may not in good conscious retain the beneficial

interest . . . ." *Simonds v. Simonds*, 396 N.Y.S.2d 547, 550 (N.Y. App. Div. 1977). State courts

impose a constructive trust as an equitable remedy to prevent unjust enrichment. *Counihan v.

Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir.1999). New York law requires a claimant to establish

four elements by clear and convincing evidence before a court will impose the remedy of a

constructive trust: (a) a confidential or fiduciary relationship; (b) a promise, express or implied;

(c) a transfer made in reliance on that promise; and (d) unjust enrichment. *In re First Cent. Fin.

Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *Miller v. Hartford Life Ins. Co.*, 64 F. App'x 795, 797

(2d Cir. 2003). Generally, the element of unjust enrichment "is the most important [because] the

purpose of the constructive trust is prevention of unjust enrichment." *First Cent. Fin. Corp.*, 377

F.3d at 212.

### 1.    The Elements of Constructive Trust Have Not Been Met.

20.    Under New York law, a claim for unjust enrichment requires proof "(1) that the

defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require

restitution." *See Beth Isr. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573,

586 (2d Cir. 2006). The basis for unjust enrichment—that "the defendant has obtained a benefit

which in 'equity and good conscience' should be paid to the plaintiff"—may be present in many

cases, but "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a

conventional contract or tort claim." *Corsello v. Verizon New York, Inc*., 18 N.Y.3d 777, 779

(N.Y. 2012) (explaining that an unjust enrichment claim is "available only in unusual situations

when, though the defendant has not breached a contract nor committed a recognized tort,

circumstances create an equitable obligation running from the defendant to the plaintiff," and that

"[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received

money to which he or she is not entitled"). As such, plaintiffs should not prevail when they are

party to a binding, written contract. "The theory of unjust enrichment lies as a quasi-contract

claim. It is an obligation the law creates *in the absence of any agreement*." *Goldman v.

Metropolitan Life Ins. Co*., 841 N.E.2d 742, 746 (N.Y. 2005) (citations omitted; emphasis added)

21.     In the Earn Opinion, the Court ruled, subject to the reserved defenses, "that the

Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders."

Earn Opinion at 30. "The existence of a valid and enforceable written contract governing a

particular subject matter ordinarily precludes recovery in quasi contract for events arising out of

the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R. Co*., 516 N.E.2d 190, 193 (N.Y.

1987).

22.     The other elements of a constructive trust are not met. The Terms of Use clearly

provide that "[t]hese Terms and your use of any Services do not create a fiduciary relationship

between us and you," and that "eligible digital assets represented in your Celsius account are not

held by Celsius as a fiduciary." Terms of Use § 10. Further, Account Holders were explicitly ***not***

promised an unconditional right to withdraw their cryptocurrency— the Terms of Use provided

that:

> Celsius and our third-party partners may experience cyber-attacks, extreme market
> conditions, or other operational or technical difficulties which could result in the immediate
> halt of transactions either temporarily or permanently. Provided that Celsius has taken
> reasonable commercial and operational measures to prevent such events in technical

> systems controlled by Celsius, Celsius is not and will not be responsible or liable for any
> loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or
> technical difficulties or suspensions of transactions.[11]

Terms of Use § 11.   Accordingly, Mr. Herrmann cannot demonstrate a promise or a transfer made in reliance on that promise.   As a result, Mr. Herrmann's claim of unjust enrichment—and, by extension, his request for a constructive trust—should be denied.

### 2.   Constructive Trusts Are Disfavored in Bankruptcy.

23.    Alternatively, even if the elements are met (which they are not), the the Court may deny a constructive trust on equitable grounds similar to those articulated in Part A, *supra*.  As the Court observed:

> Constructive trusts are disfavored in bankruptcy, precisely for the reason that recognizing the constructive trust and giving the beneficiaries of a constructive trust 100 percent results in a diminution in the recovery of unsecured creditors.  That's one of the reasons there's such a strong bias against—I won't say never, but that's why Courts are very reluctant to impose a constructive trust that gives everything to the beneficiaries of this constructive trust and takes it dollar-for-dollar away from the unsecured creditors.

Dec. 7 Hr'g Tr. 105:16–25; *see also In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) (same).

24.    Because Mr. Herrmann has not articulated any specific, unique harm to him, it would be inequitable to grant Mr. Herrmann, or any Account Holder, the remedy of a constructive trust at the expense of other similarly situated Account Holders.

## II.   Individual Contract Defenses and Counterclaims Do Not Result in Additional Recovery for Mr. Herrmann.

25.    In the absence of rescission, nonenforcement, or imposition of a constructive trust, the only remaining remedy available for Mr. Herrmann is additional damages claims.  *See* Earn

---

[11]   Under the Terms of Use, the Debtors retained the right to "prohibit use of part or all of the Services and/or close, freeze or suspend Celsius Accounts."  Terms of Use § 3.

Opinion at 30. ("Account Holders have unsecured claims against the Debtors in dollars or in kind (depending on the terms of any confirmed plan). The amount of allowed unsecured claims is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by Account Holders, including breach of contract, fraud or other theories of liability."); *id*. at 43 ("The Court takes seriously potential violations of state law and non-bankruptcy federal law, as well as the litany of allegations including, but not limited to, fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable. These allegations may (or may not) have merit, and the creditors' rights with respect to such claims are explicitly reserved for the claims resolution process.").

26.    As demonstrated in the summary chart attached hereto as **Exhibit B**, each additional claim for damages asserted in Mr. Herrmann's Proof of Claim is based on fact-intensive causes of action that are difficult, expensive, and time consuming to litigate. At the end of the day, the only theoretically available remedy—compensatory damages to recover calculable loss—is already covered by the claim the Debtors scheduled for Mr. Herrmann.[12] The Second Circuit has long held that where a claimant seeks to recover for the same injury under alternative legal theories, they can only recover once. *Indu Craft, Inc. v. Bank of Baroda* 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."); *Wickham Contracting Co., Inc. v. Bd. of Educ. of City of New York*, 715 F.2d 21, 28 (2d Cir. 1983) ("Since damages are sought for the same illegal acts under different legal theories, the verdicts should be identical and a single recovery allowed[.]"). This is

---

[12] Punitive damages are often categorically disallowed against insolvent debtors. *In re Motors Liquidation Co.*, 571 B.R. 565, 577 (Bankr. S.D.N.Y. 2017) (finding that "punitive damages are never available in the case of an insolvent debtor"); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 947 (Bankr. S.D.N.Y. 1994) ("[A] Bankruptcy Court can subordinate, disallow or limit punitive damage claims."); *In re Johns–Manvillle Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

true even where the claimant can "prove separate causes of action that result in the same injury."

*Hauser v. Fort Hudson Nursing Ctr., Inc.*, 161 N.Y.S.3d 374, 380 (N.Y. App. Div. 2021).  Where

the measure of damages differs between the various claims pled, the claimant is entitled to recover

the highest measure of damages among the claims actually proven.  *Hettinger v. Kleinman*, 733 F.

Supp. 2d 421, 450 (S.D.N.Y. 2010) (awarding claimants damages for breach of contract where the

measure of damages for breach of contract was higher than that for fraud).

27.    Though Mr. Herrmann articulates numerous additional potential grounds for relief,

including breach of contract, fraudulent misrepresentation, and securities fraud, he does not

establish that any of those theories would result in a claim larger than the scheduled claim on

account of his cryptocurrency balance as of the Petition Date.[13]  Indeed, each of Mr. Herrmann's

additional claim theories boil down to a request for the return of the cryptocurrency he ransferred

to the Debtors—whether because he was "tricked" into transferring in the first place, deceived into

maintaining his deposits on the platform, or whether the Debtors breached their contractual

obligations—it all boils down to a claim for the return of cryptocurrency, which is exactly what

the Debtors included in the schedules. As a result, the time and expense of litigating these

duplicative claims would accomplish nothing but value destruction.

28.    As described above, Mr. Herrmann's Proof of Claim relates only to his potential

recovery from the Debtors' estates, not to his recovery from any other individuals.  This Objection

---

[13]  The Debtors have generally attempted to layer Mr. Herrmann's factual allegations onto potentially applicable causes of action, regardless of whether he has specifically articulated such bases or not, but the Debtors cannot research each of these potential bases for Mr. Herrmann to determine if they could theoretically result in a higher recovery.  At the same time, the Debtors cannot state definitively that they do not.  It is for this reason that the Debtors emphasize Mr. Herrmann's burden, notwithstanding the fact that he is a *pro se* claimant.

In any event, for the reasons set forth herein, the Debtors believe that any incremental recoveries would need to be applied broadly to all Account Holders, at which point any benefit would be cancelled out (as the proportionate shares of the Debtors' estates would remain the same for all Account Holders).

has no effect on Mr. Herrmann's ability to pursue claims against third parties. Additional recoveries from the limited assets within the Debtors' estates, however, should not be disbursed to Mr. Herrmann alone based on allegations broadly applicable to all Account Holders. Therefore, such additional claims should be disallowed in their entirety or estimated at $0 pursuant to section 502(c)(1) of the Bankruptcy Code, and Mr. Herrmann's claim should be reduced to the amount scheduled by the Debtors. *See* 11 U.S.C. § 502(c)(1).

## **Reservation of Rights**

29. Nothing contained in this Objection or any actions taken pursuant to any order granting the relief requested by this Objection is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Objection are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Motion Practice**

30.     This Objection includes citations to the applicable rules and statutory authorities

upon which the relief requested herein is predicated and a discussion of their application to this

Objection.  Accordingly, this Objection satisfies Local Rule 9013–1(a).

**Notice**

31.     The Debtors will provide notice of this Objection to the following parties or their

respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50

largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States

Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the

offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and

Exchange Commission; (h) Mr. Herrmann; and (i) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need

be given.

WHEREFORE, the Debtors request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| New York, New York<br>Dated: February 19, 2023 | */s/ Joshua A. Sussberg* |

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:        (212) 446-4900
Email:            jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                   ross.kwasteniet@kirkland.com
                   chris.koenig@kirkland.com
                   dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER GRANTING DEBTORS' OBJECTION
## TO PROOF OF CLAIM NO. 24604 OF IMMANUEL HERRMANN

Upon the objection (the "Objection")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") partially disallowing and reducing Proof of Claim No. 24604 filed by Mr. Herrmann, as more fully set forth in the Objection; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012 and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Objection is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Objection and the opportunity for a hearing on the Objection under the circumstances; and the Court having reviewed

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this Order have the meanings given to such terms in the Objection.

the Objection; and the Court having determined that the legal and factual bases set forth in the

Objection establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.    The Objection is sustained as set forth herein.

2.    Proof of Claim No. 24604 filed by Mr. Herrmann shall be reduced to the amount

of his scheduled claim, Scheduled Claim No. 2423755.

3.    Stretto, Inc., the Debtors' noticing and claims agent, is authorized to update the

Claims Register to reflect the relief granted in this Order.

4.    Entry of this Order is without prejudice to the Debtors' right to object to any other

Claims in these chapter 11 cases or to further object to the Claim (to the extent it is not reduced,

disallowed, or expunged pursuant to this Order) on any grounds whatsoever, at a later date.

5.    The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

6.    The Debtors are authorized to take any and all actions reasonably necessary or

appropriate to effectuate the relief granted pursuant to this Order in accordance with the Objection.

7.    This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit B[1]**

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 1. Breach of Contract | To plead a cause of action for breach of contract, Mr. Herrmann must allege that: (1) a contract exists; (2) Mr. Herrmann performed in accordance with the contract; (3) Celsius breached its contractual obligations; and (4) Celsius' breach resulted in damages.  *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (internal citation omitted).<br><br>Judicial remedies for breach of contract may be characterized as either "legal" or "equitable." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 550 N.E.2d 919, 922 (N.Y. 1990).  The principal "legal" remedy to enforce a contract is a judgment awarding a sum of money.  *Id.*  In bankruptcy, a pre-petition claim for breach of contract against the debtor allows the claimant to have a general unsecured claim against the debtor's estate.  *See In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) (holding that "the Bankruptcy Code treats rejection as a breach so that the non-debtor party will have a viable claim against the debtor," and that "[w]hen a contract is rejected, the breach claim is treated as a pre-petition unsecured claim"). | First, Mr. Herrmann alleges Celsius breached the Terms of Use by instituting "the pause." The Terms of Use, however, specifically contemplate that a "pause" may be required:<br><br>"Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently.  Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions." Terms of Use § 11.<br><br>As a result, the existence of the pause alone is insufficient to establish a breach of contract.<br><br>Mr. Herrmann further alleges that Celsius breached the Terms of Use by failing to use its best commercial and operational efforts to prevent losses, but he has not demonstrated how Celsius failed to comply with this provision of the Terms of Use.<br><br>In any event, Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors.  *See* Objection ¶¶ 24–27.<br><br>For the reasons provided in the body of the Objection, nonenforcement and other equitable remedies are inappropriate under the circumstances.  *See* Objection ¶¶ 15–18. |
| 2. Fraudulent Misrepresentation and Fraudulent Inducement | To maintain a claim for fraudulent inducement under New York law, Mr. Herrmann must show: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017).  The misrepresentation must be made with an intent to deceive the claimant, and absent a concrete and personal benefit to the defendant resulting from the fraud, a claim for fraudulent inducement cannot be maintained.  *See Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CIV-4124, 2022 WL L3227875, at *9 (S.D.N.Y. Aug. 9, 2022) ("This Circuit has held that a generalized motive that does not result in concrete benefits to the defendant is insufficient to plead scienter."); *see also, Bigsby v. Barclays Cap.Real Estate, Inc.*, 170 F. Supp. 3d 568, 578 ("If a mere allegation of corporate profit were sufficient to allege scienter, the requirement would be effectively eliminated."); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. | Mr. Herrmann relies predominately on the Examiner Report—which is largely inadmissible as evidence—to support his arguments regarding fraudulent misrepresentation or inducement into contract.[2]  He also states, without support, that a popup notifying Account Holders that funds removed from the Debtors' Earn Program could never earn rewards again was intended to induce Earn Program Account Holders to keep their digital assets in the Earn Program.<br><br>Mr. Herrmann has not demonstrated that his reliance on the alleged misrepresentations was justified.<br><br>Mr. Herrmann has not stated with the requisite particularity the circumstances constituting the alleged fraud.<br><br>In any event, Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the |

---

[1]  Terms capitalized but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2]  While Mr. Herrmann cites to many statements of Alex Mashinsky, he relies primarily on the Examiner Report to demonstrate that the statements were untrue.  The other sources on which he relies (*e.g.*, the commencement of a civil action against Alex Mashinsky in New York state court) are similarly inadmissible.

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | 2001) ("Insufficient motives, we have held, can include (1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation."). | Debtors. *See* Objection ¶¶ 24–27. |
| | Mr. Herrmann must also allege facts to support the claim that he **justifiably** relied on the alleged misrepresentations. *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016) (quoting *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 32 N.E.3d 921, 922 (N.Y. 2015)) (emphasis added). | |
| | In addition, a claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule Civil Procedure 9(b), which requires that Mr. Herrmann "state with particularity the circumstances constituting fraud." *PetEdge*, 234 F. Supp. 3d at 490; *Goonewardena v. Forster & Garbus LLP*, No. 18-CV-00029, 2019 WL 121677, at *8 (E.D.N.Y. Jan. 7, 2019) (applying the heightened pleading standing to a claim by a *pro se* litigant). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a fraud claim must be supported by allegations "that give rise to a strong inference of fraudulent intent." *PetEdge*, 234 F. Supp. 3d at 491. False statements indicating an intent to perform under a contract are insufficient to support a claim of fraud. *Id.* | |
| | To maintain a claim of fraud relating to a contract, Mr. Herrmann "must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *see In re Andrew Velez Const., Inc.*, 373 B.R. 262, 278 (Bankr. S.D.N.Y. 2007) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract."). | |
| | The measure of damages recoverable for being fraudulently induced to enter into a contract which otherwise would not have been made is "indemnity for [the] loss suffered through that inducement." *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004 (N.Y. 1986); *In re Basic Food Group, LLC*, No. 15-10892 (JLG), 2018 WL 5805943, at *15 (Bankr. S.D.N.Y. Oct. 31, 2018) ("That is to say, that the [d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."). | |

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 3. Negligent Misrepresentation | To state a claim for negligent misrepresentation, Mr. Herrmann must show "(1) the existence of a special or privity-like relationship imposing a duty on [Celsius] to impart correct information to [Mr. Herrmann], (2) that the information was incorrect; and (3) reasonable reliance on the information." *Woori Bank v. RBS Secs., Inc.*, 910 F. Supp. 2d 697, 704 (S.D.N.Y. 2012); *see also, Gen. Elec. Cap. Corp. v. U.S. Trust Co. of New York*, 655 N.Y.S.2d 505, 505 (N.Y. App. Div. 1997) (holding a claimant could not reasonably rely on statements made by a fiduciary that contradicted the terms of the contract). A special relationship may exist where an individual has special or unique expertise or is in a position of confidence and trust that justifies the injured party's reliance on the misrepresentation. *See Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465, 470 (N.Y. Ct. App. 2011) ("A special relationship may be established by persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."). Where a contract exists, the duty to impact correct information "must spring from circumstances extraneous to, and not constituting elements of the contract, although it may be connected with and dependent upon the contract." *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004). | Mr. Herrmann has not established that a fiduciary relationship or special relationship existed between him and the Debtors, and the Terms of Use specifically disclaim such a relationship. Terms of Use § 4. Nor does the article cited by Mr. Herrmann state a fiduciary duty existed. *See Celsius Network is Nothing Like BlockFi. Here's Why.*, Celsius Network (March 12, 2019), https://web.archive.org/web/20190330071319/https://medium.com/@CelsiusNetwork/celsius-network-is-nothing-like-blockfi-heres-why-2f933412a51f ("In case there was confusion the clause above [sic], they go on to state, 'These Terms and the deposit relationship do not create a fiduciary relationship between us.' . . . If you're interested, I encourage you to read our own terms and conditions to see how we are acting in your best interest."). In the absence of an established fiduciary relationship or special relationship, there cannot be a claim for negligent misrepresentation.

Further, Mr. Herrmann relies predominately on the Examiner Report—which is largely inadmissible as evidence—to support his arguments regarding negligent misrepresentation.

Mr. Herrmann has not demonstrated that his reliance on the alleged misrepresentations was justified.

In any event, Mr. has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 24–27. |
| 4. Breach of Fiduciary Duty | Under New York law, "[t]he elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Nachbar v. Cornwall Yacht Club*, 75 N.Y.S.3d 494, 495 (N.Y. App. Div. 2018). A fiduciary relationship does not normally arise from an "arms-length business relationship." *Apogee Handcraft, Inc. v. Verragio, Ltd.*, 65 N.Y.S.3d 27, 29 (N.Y. App. Div. 2017). Nor can a fiduciary relationship be inferred absent an agreement providing for a trust relationship or "special circumstances indicating the same." *Id.* Mr. Herrmann's "subjective claims of reliance" on the expertise of another party does not give rise to a fiduciary relationship if Celsius' "high degree of dominance and reliance" did not exist *prior* to the arms-length business transaction. *See, e.g.*, *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324 (W.D.N.Y. 2012) ("New York courts and federal courts applying New York law have continued to follow the general rule of non-actionability for negligent misstatements made in the context of arms-length business transaction.").

In addition, Mr. Herrmann must meet a heightened pleading standard, setting forth the "circumstances constituting the wrong" in detail. N.Y. C.P.R.L. 3016 (McKinney 2022); *Herrmann v. CohnReznick LLP*, 63 N.Y.S.3d 380, 381–82 (N.Y. App. Div. 2017) (holding N.Y. C.P.R.L. 3016 applies to breach of fiduciary duty claims). | Mr. Herrmann has not established that a fiduciary relationship existed between him and the Debtors, and the Terms of Use specifically disclaim such a relationship. Terms of Use § 4. *See supra* "Negligent Misrepresentation."

In the absence of an established fiduciary relationship, there cannot be a breach of fiduciary duties.

This issue is separate from the fiduciary duties directors and officers owed **to the Debtors**. Any claims for a breach of duties owed to the Debtors belong to the estate, not individual creditors. |

3

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | The remedy for a breach of fiduciary duty is generally damages, though it may include punitive damages in cases where the breach "demonstrate[s] a very high degree of moral culpability." *Stein v. McDowell*, 905 N.Y.S.2d 242, 245 (N.Y. App. Div. 2010). As described in the Objection, however, punitive damages are strongly disfavored in bankruptcy. | |
| 5. Conversion | To state a claim for conversion, Mr. Herrmann must show that "(1) [he has a] possessory right or interest in the property; and (2) [Celsius exercised] dominion over the property or interfere[d] with it, in derogation of [Mr. Herrmann's] rights." *Colavito v. New York Organ Donor Network, Inc.*, 827 N.Y.S.2d 96, 100 (N.Y. Ct. App. 2006) (internal citations omitted). Generally, claims for conversion that are duplicative of breach of contract claims do not adequately state a claim for conversion. *PCS Wireless LLC v. A to Z Wireless Sols. Inc.*, 841 F.Supp.2d 649, 653 (E.D.N.Y. 2012) ("[A] claim of conversion cannot be predicated on a mere breach of contract and where there are no independent facts alleged arising to a tort claim."). Where funds become the property of the entity with which they are deposited, an action for conversion cannot be sustained. *Nwachukwu v. Chem. Bank*, No. 96 Civ. 5118, 1997 WL 441741, at *6 (S.D.N.Y. Aug. 6, 1997) ("[A] conversion claim, predicated on the unlawful use of funds belonging to another, is not sustainable between a bank and a depositor with a standard debtor-creditor relationship.").<br><br>Generally, damages for conversion equal the market value of the converted property at "the time and place of the conversion, plus interest." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 328 F. Supp. 3d 232, 237 (S.D.N.Y. 2018). Claims for postpetition interest, however, are generally disallowed in bankruptcy. *See* 11 U.S.C. § 502(b)(2) ("[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*, and shall allow such claim in such amount, *except to the extent that . . . such claim is for unmatured interest*.") (emphasis added). | Mr. Herrmann generally alleges that the Debtors committed conversion when they paused withdrawals and did not allow Mr. Herrmann to withdraw "his" Ethereum prior to a "hard fork" in late August 2022. Because Mr. Herrmann's claims arise out of an alleged breach of the Terms of Use, however, Mr. Herrmann's conversion claim is duplicative of his breach of contract claim and does not adequately state a claim for conversion.<br><br>Further, Mr. Herrmann has not demonstrated that he has a possessory right or interest in the property, and the Earn Opinion holds the opposite. Earn Opinion at 39 ("Thus, the Court finds that title to and ownership of all Earn Assets unequivocally transferred to the Debtors and became property of the Estates on the Petition Date.").<br><br>In any event, Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 24–27. |
| 6. Violations of the Racketeer Influence and Corrupt Organizations Act | To allege a civil RICO claim, Mr. Herrmann must establish a violation of the RICO statute and plead with particularity that Celsius' violation of the RICO statute resulted in an injury to Mr. Herrmann's person or property. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) ("To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.").<br><br>There are four manners in which a defendant may violate 18 U.S.C. § 1962, each with its own pleading standard.<br><br>• Under subsection (a), Mr. Herrmann is required to plead an injury "by reason of [Celsius'] investment of racketeering income in an enterprise" (not the | Mr. Herrmann does not specify which subsection of the RICO statute Celsius allegedly violated, much less plead with particularity that Celsius' violation of the RICO statute resulted in an injury to Mr. Herrmann's person or property.<br><br>Nor has he established a claim under subsection (d), as he has not alleged that Celsius itself consciously agreed to commit a predicate act or, if one of its directors or officers did, why the director's or officer's agreement should be imputed to Celsius.<br><br>In any event, Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 24–27. |

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | predicate acts alone). *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir. 1990).<br><br>• Under subsection (b), Mr. Herrmann is required to plead that "(1) [Celsius] acquired or maintained an interest in the alleged enterprise (2) through a pattern of racketeering activity (3) causing injury to [Mr. Herrmann] as a result of the acquisition of the enterprise." *In re Adelphia Commc'n Corp.*, No. 02-41729, 2007 WL 2403553, at *14 (Bankr. S.D.N.Y. Aug. 17, 2007).<br><br>• Under subsection (c), Mr. Herrmann must show that Celsius engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.*<br><br>• Under subsection (d), Mr. Herrmann must allege a factual basis to "support a conclusion that [Celsius] consciously agreed to commit predicate acts." *Id.* at *20. Though subsection (d) claims do not need to be plead with particularity, "[c]onclusory allegations of a conspiracy are insufficient." *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1990).<br><br>Where Mr. Herrmann must allege the existence of an enterprise, the enterprise and the defendant (*i.e.*, Celsius) must be distinct from one another, and generally a corporation's employees acting within the scope of their employment will not satisfy this requirement. *Riverwoods Chappaqua Corp. v. Marine Midlands Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented."). | |
| 7. Securities Fraud | Mr. Herrmann alleges a number of securities law violations as the basis of his "securities fraud" claim. Each violation has its own pleading standard.<br><br>• To state a claim under section 5 of the Securities Act, Mr. Herrmann must show that Celsius offered or sold, through the use of interstate commerce, securities for which a registration statement had not been filed. 15 U.S.C. § 77e.<br><br>• To state a claim under either section 15 of the Securities Act or section 20(a) of the Exchange Act, Mr. Herrmann must show (a) an underlying primary violation of the applicable act that has been committed by a control person and (b) that the Celsius had control over the primary violator. 15 U.S.C. §§ 77o and 78t; *see also Rombach v. Chang*, 335 F.3d 164, 177–78 (2d Cir. 2004) (dismissing the Section 20(a) claim where the claimant failed to properly allege a primary violation by a control person); *In re Wachovia Equity Sec. Litig.*, 753 F.Supp.2d 326, 379 (S.D.N.Y. 2011) (finding certain plaintiffs had failed to state a Section 15 where they failed to properly allege primary | Mr.'s argument regarding the existence of fraud is largely premised on inadmissible evidence, such as the Examiner's Report. Further, Mr. Herrmann has not pleaded any of these alleged violations with particularity, instead merely listing them out or pointing to ongoing investigations by regulators as conclusive proof that such violations had occurred.<br><br>In any event, Mr. has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 24–27.<br><br>For the reasons stated in the body of the Objection, nonenforcement is inappropriate under the circumstances. *See* Objection ¶¶ 15–18. |

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | violation by a control person). | |

| | |
|---|---|
| • | To state a claim under section 20A of the Exchange Act, Mr. Herrmann must show that Celsius violated a provision, rule, or regulation of the Exchange Act by trading a security of the same class held by Mr. Herrmann while in possession of material nonpublic information.  15 U.S.C. § 78t-1; *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) ("In order to state a claim under Section 20A(a), plaintiffs must (1) plead a predicate insider trading violation of the Exchange Act, and (2) allege sufficient facts showing that the defendant traded the security at issue contemporaneously with the plaintiff.") (internal citations omitted). |
| • | To state a claim under section 10(b) of the Exchange Act, Mr. Herrmann must allege Celsius (a) used or employed (b) a manipulative or deceptive device or contrivance (c) in contravention of the SEC's rules and regulations (d) in connection with the purchase or sale of any security.  15 U.S.C. § 78j. |

Where an alleged securities law violation is based on fraud, Mr. Herrmann must state "with particularity the circumstances constituting the fraud," meeting both the requirements of Fed. R. Civ. Pro. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  "Under Fed. R. Civ. Pro. 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate and Inv. Bank*, 924 F.Supp.2d 528, 534 (S.D.N.Y. 2013).  In addition, to satisfy the PSLRA, a plaintiff must "(1) specify each misleading statement [or omission], (2) set forth facts on which a belief that a statement [or omission] is misleading was formed, and (3) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.*  To be liable for securities fraud, the defendant must have acted with the intent to deceive, manipulate, or defraud.  *U.S. v. Litvak*, 808 F.3d 160, 178 (2d Cir. 2015) ("Liability for securities fraud [] requires proof that the defendant acted with scienter, which is defined as a mental state embracing intent to deceive, manipulate or defraud.").

Generally, the remedies for violations of securities regulations are either rescission or damages.  Where a creditor is entitled to rescission, they receive the consideration paid, in this case the digital assets, plus interest and minus the amount of income received on the security (*e.g.*, the Earn rewards).  15 U.S.C. § 77l.  Where a creditor is entitled to damages, damages are measured as the excess of the amount the creditor paid over the value of what was received. 15 U.S.C. § 77l; *In re MetLife Demutualization Litig.*, 156 F.Supp.2d 254, 269 (E.D.N.Y. 2001) (quoting *Fershtman v. Schectman*, 450 F.2d 1357, 1361

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | (2d Cir.1971)). | |
| 8.  Unjust Enrichment | To maintain a claim for unjust enrichment under New York law, Mr. Herrmann must show "(1) that [Celsius] benefitted; (2) at [Mr. Herrmann's] expense; and (3) that equity and good conscience require restitution."  *See Beth Isr. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). The basis for unjust enrichment—that "the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff"—may be relevant in many cases, but "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 779 (N.Y. 2012) (explaining that an unjust enrichment claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," and that "[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled").  As such, plaintiffs should not prevail when they are party to a binding, written contract.  "The theory of unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates *in the absence of any agreement.*"  *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (citations omitted; emphasis added). | Mr. Herrmann has not established that a fiduciary relationship existed, and the Terms of Use specifically disclaim such a relationship.  Terms of Use § 4.  Further, an unjust enrichment claim is not appropriate where a written, binding contract governs Mr. Herrmann's relationship with the Debtors.  *See* Objection ¶ 20.

In any event, Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 24–27. |
| 9.  Restitution[3] | The Debtors are unaware of an independent cause of action for restitution, and the Debtors understand restitution to be an equitable remedy.  For the reasons stated in the Objection, it would be inequitable for Mr. Herrmann to receive an enhanced recovery.  *See* Objection ¶ 18. | Mr. Herrmann has not articulated an independent basis for such claim.  Rather, the Debtors understand restitution to be an equitable remedy.  For the reasons stated in the Objection, it would be inequitable for Mr. Herrmann to receive an enhanced recovery.  *See* Objection ¶ 18. |
| 10. Civil Damages for Fraudulent Filing of Information Returns | To plead a claim for civil damages for the fraudulent filing of information returns, Mr. Herrmann must show "that: (1) [Celsius] issued an information return; (2) the information return was fraudulent; and (3) [Celsius] willfully issued the fraudulent information return."  *Munn v. APF Mgmt.t Co., LLC*, No. 19-CV-10791, 2020 WL 7264471, at *4 (S.D.N.Y. Dec. 10, 2020).  A willful violation is one that is voluntary and intentional.  *Czerw v. Lafayette Storage & Moving Corp.*, No. 16-CV-6701, 2018 WL 5859525 (W.D.N.Y. Nov. 9, 2018) ("[W]illfulness in this context connotes a voluntary, intentional violation of a legal duty."). | Mr. Herrmann broadly alleges that the Debtors improperly issued IRS Form 1099s to him showing "phantom income (aka 'rewards')."  Proof of Claim Addendum 18.  Mr. Herrmann's questions about how his Earn rewards were accounted for (either through an unregistered security or an increase in the Debtors' liabilities to him) do not make this transaction untaxable, nor does he state a cognizable reason for why his receipt of Earn rewards would not be taxable.  As a result, Mr. Herrmann has failed to establish that the Debtors issued any fraudulent returns at all, let alone that they did so with any requisite intent.

In any event, Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors.  *See* Objection ¶¶ 24–27. |

---

[3]    As with many of his asserted claims, Mr. Herrmann merely lists causes of action without further elaboration.  With respect to "unjust enrichment/restitution" Mr. Herrmann lists New Jersey common law "in the alternative."  Mr. Herrmann includes no explanation as to why New Jersey law is appropriate, and Mr. Herrmann does not list or discuss the applicable factors.  As such, the Debtors extend this objection to the alternative argument without further explanation.

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 11. Intentional Infliction of Emotional Distress | To plead a claim for intentional infliction of emotion distress ("IIED") under New York law, Mr. Herrmann must allege (1) Celsius' conduct was extreme and (2) Celsius intended to cause Mr. Herrmann severe emotional distress, "(3) a causal connection [exists] between the conduct and the injury, and (4) severe emotional distress." *Friedman v. Self Help Cmty. Servs., Inc.*, 647 Fed.Appx. 44, 47 (2d Cir. 2016). A defendant's conduct is "extreme and outrageous" when it "so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014). Where the defendant's conduct falls "well within the ambit of other traditional tort liability," a claim for IIED may not survive. *Id.* at 159. In addition, New York courts highly disfavor IIED, holding it should be invoked as a last resort. *See Id.* at 774 F.3d 140, 158 ("IIED, although providing relief for plaintiffs upon occasion post-*Howell,* remains a highly disfavored [tort] under New York law."); *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 245 (S.D.N.Y. 2000) ("Even today, [IIED] is highly disfavored under New York law, . . . New York courts have been very strict in applying [the] principles [of IIED].").  | Mr. Herrmann generally alleges that these chapter 11 cases have caused him "emotional distress" leading to several months of depression, weight gain, and a decline in his work performance. Proof of Claim Addendum at 39. He further alleges that his emotional distress was caused by listening to "horrifying stories from other depositors." *Id.*<br><br>Mr. Herrmann has not demonstrated that the Debtors intended to cause him severe emotional distress.<br><br>To the extent his claims relate to fraud or other traditional tort liability, his IIED claim cannot survive. |
| 12. Negligent Infliction of Emotional Distress | To establish a claim for negligent infliction of emotion distress ("NIED"), Mr. Herrmann must show "(1) extreme and outrageous conduct [on the part of Celsius], (2) a causal connection between the conduct and the injury, and (3) severe emotional distress.". *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-00209, 2022 WL 4357555, at *28 (E.D.N.Y. Sept. 20, 2022). Under New York law, there are two theories of NIED. Under the first theory, Mr. Herrmann would have to allege Celsius' conduct "creat[es] an unreasonable risk of bodily harm to the [Mr. Herrmann] and such conduct is a substantial factor in bringing about the injuries to the [Mr. Herrmann]" due to the "contemporaneous observation of serious physical injury or death" to Mr. Herrmann's immediate family member caused by Celsius' conduct. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Under the "direct duty" theory, Mr. Herrmann must show he "suffer[ed] an emotional injury from [Celsius'] breach of a duty which unreasonably endangered [his] own physical safety." *Mortise v. U.S.*, 102 F.3d 693, 696 (2d Cir. 1996). However, where a claim for NEID is "essentially duplicative of tort or contract causes of action," it cannot be sustained. *Boateng*, 2022 WL 4357555, at *28. | Mr. Herrmann generally alleges that these chapter 11 cases have caused him "emotional distress" leading to several month of depression, weight gain, and a decline in his work performance. Proof of Claim Addendum at 39. He further alleges that his emotional distress was caused by listening to "horrifying stories from other depositors." *Id.*<br><br>Mr. Herrmann has not demonstrated that his injuries result from a harm suffered by an immediate family member.<br><br>Mr. Herrmann has not alleged how the Debtors unreasonably endangered his physical safety.<br><br>In any event, Mr. Herrmann has alleged numerous contract and tort causes of action that would be duplicative of his claim for NIED, thus his NIED claim cannot survive. |
| 13. Violations of the Maryland Consumer Protection Act | To state a claim under the Maryland Consumer Protection Act (the "MCPA"), Mr. Herrmann must show "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes [him] actual injury." *Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F.Supp.3d 422, 432 (D. Md. 2015). In addition, Mr. Herrmann must show that the "false or misleading statement substantially induced [his] choice." *Currie v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 788, 798 (D. Md. 2013). Under the MCPA, damages are measured based on the injured party's actual injuries or losses. *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 510 (Md. Ct. Spec. App. 1999) ("In an action brought by a private party, the claimant may only recover damages for actual injury or loss."). | Mr. Herrmann relies predominately on the Examiner Report—which is largely inadmissible as evidence—to support his arguments regarding violations of the MCPA.<br><br>In any event, Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 24–27. |

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | An injured party may also recover under the MCPA for emotional distress where the emotional distress is accompanied by physical manifestations of the same. *Wheeling v. Selene Fin. LP*, 228 A.3d 791, 809 (Md. Ct. Spec. App. 2020) (denying damages resulting from emotion distress where claimant did not allege physical manifestations of the same). | |
| 14. Violations of the New Jersey Consumer Fraud Act | Under the New Jersey Consumer Fraud Act (the "NJCFA"), Mr. Herrmann must show "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss" in order to state a claim. *Harnish v. Widener University School of Law*, 833 F.3d 298, 305 (3d Cir. 2016). Under the NJCFA, an "unlawful practice" can be "(1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation." *Dugan v. TGI Fridays, Inc.*, 171 A.3d 620, 636 (N.J. 2017). A claimant must allege a defendant's intent where the unlawful practice is based on an omission, but not if it is based on an affirmative act or violation of a regulation. *Id.* Under the NJCFA, damages are measured as the difference between the price the claimant paid, and the actual value of the property acquired. *Harnish*, 833 F.3d at 307 ("Under the out-of-pocket rule, a plaintiff's damages are the difference between the price paid and the actual value of the property acquired."). | Mr. Herrmann relies predominately on the Examiner Report—which is largely inadmissible as evidence—to support his arguments regarding violations of the NJCFA.<br><br>Mr. Herrmann has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 24–27. |
| 15. Violations of the New York Consumer Fraud Act | To state a claim under New York General Business Law §§ 349 and 350 for false advertising or deceptive acts, Mr. Herrmann must show that the advertisement "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S. 2d 400, 403 (N.Y. App. Div. 2002). In addition, in the case of a claim under section 350, Mr. Herrmann must show he relied upon the advertisement at the time of entering into the contract. *McGill v. Gen. Motors Corp.*, 647 N.Y.S. 2d 209, 210 (N.Y. App. Div. 1996) (dismissing a claim under section 350 because the plaintiff failed to show reliance or even knowledge of the allegedly false advertisement). Under sections 349 and 350, the proper measure of a claimant's injury is not the entire cost of the service, but rather any premium the claimant may have paid based on the defendant's misrepresentations. *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361–62 (E.D.N.Y. 2014) ("The rationale for this is that deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying."). | Mr. Herrmann fails to meet the requirements of a claim under either section 349 or 350 because he fails to allege a specific injury beyond the cost of the service—the transfer of his digital assets onto the Celsius platform. Even if Mr. Herrmann did sufficiently plead a claim under section 349 or 350, his damages would amount to a general unsecured claim capped at the amount of his digital assets on the retail platform because he has not shown that he paid a premium for the Debtors' services (nor can he). *See* Objection ¶¶ 24–27. |
| 16. Unconscionability | Under New York law, an unconscionable contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).<br><br>Unconscionability generally requires that the contract was both procedurally and substantively unconscionable at the time of the contract's formation. *Id.* In other | Mr. Herrmann's assertions with respect to unconscionability predominately concern the way Celsius solicited acceptance of the Terms of Use (which was addressed by the Earn Opinion and was consistent with legal requirements for clickwrap contracts). Mr. Herrmann also attempts to relitigate the issue of whether the Terms of Use are ambiguous.<br><br>Additionally, Mr. Herrmann argues that statements from Alex Mashinsky contradicted the Terms of Use, but this does not make the Terms of Use themselves unconscionable. |

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | words, a finding of unconscionability requires "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* (internal quotation marks and citation omitted).<br><br>Under New York law, procedural and substantive unconscionability are "weighed on a 'sliding scale'" such that "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 247 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).<br><br>Procedural unconscionability requires "an examination of the contract formation process and the alleged lack of meaningful choice." *Id.* at 828.  The focus of such examination is generally on "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.*  Under New York law, the fact that a form contract was offered on a "take-it-or-leave-it" basis was not sufficient to render it procedurally unconscionable. *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (concerning an arbitration clause).<br><br>Substantive unconscionability requires an analysis of "the substance of the bargain to determine whether the terms were *unreasonably* favorable to the party against whom unconscionability is urged." *Gillman*, 534 N.E.2d at 829 (emphasis added).<br><br>The standard remedy for unconscionability is nonenforcement of the contract, but "courts have 'substantial flexibility' in determining the remedy for an unconscionable contract." *In re MBM Ent., LLC*, 531 B.R. 363, 418 (Bankr. S.D.N.Y. 2015); *see Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d 114, 137 (2d Cir. 2010) ("If a contract is unconscionable then it is also necessarily invalid and unenforceable.").  As such, a court may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d at 138 (quoting Restatement (Second) of Contracts § 208 (1981)) (internal quotation marks omitted). | Mr. Herrmann does not allege the Terms of Use are grossly unreasonable as compared to the terms imposed by similar services, nor that he had no choice but to take the terms as set forth in the Terms of Use—Mr. Herrmann was not required to use the Debtors' services, he chose to do so on take-it-or-leave-it terms.  At any time prior to "the pause," Mr. Herrmann could have withdrawn his assets from the Debtors' platform, including when the Terms of Use were modified, but he did not do so.<br><br>For the reasons provided in the body of the Objection, nonenforcement is inappropriate under the circumstances. *See* Objection ¶¶ 15–18. |

| Claim | Pleading Standard and Elements | Mr. Herrmann's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 17. Fraudulent Conveyance | Fraudulent conveyance is not a contract defense or counterclaim, but rather a way a trustee, or debtor, may avoid prior transfers to third parties that were "fraudulently" conveyed outside of the reach of creditors.  *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . ."); 11 U.S.C. § 1107 ("[A] debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, . . . of a trustee"). <br><br> In other words, Mr. Herrmann would not have a fraudulent conveyance claim against the Debtors, *the Debtors* would have a fraudulent transfer claim, which Mr. Herrmann would need to obtain derivative standing to prosecute. *See In re Celsius Network*, No. 22-10964 (MG), 2022 WL 16640639, at *3 (Bankr. S.D.N.Y. Nov. 2, 2022) ("A creditor has standing to [bring a fraudulent conveyance action] where the debtors or debtors in possession have abused their discretion to bring these claims in the first instance.") (citing *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985)). | Mr. Herrmann's arguments related to "fraudulent conveyance" are more accurately classified as fraudulent inducement claims, which are described above.  Mr. Herrmann has not requested derivative standing, nor would it be appropriate under the circumstances. |