Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF HEARING ON DEBTORS' OBJECTION
### TO PROOF OF CLAIM NO. 23959 OF REBECCA GALLAGHER

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Objection to Proof of Claim No. 23959 of Rebecca Gallagher* (the "Objection") will be held on **March 21, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on **March 20, 2023**.)

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on March 21, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on March 21, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses to the relief requested in the Objection shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No.

22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **March 14, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order) available on the case website of the Debtors at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Objection.

PLEASE TAKE FURTHER NOTICE that only those responses that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely response may result in entry of a final order granting the Objection as requested by the Debtors.

PLEASE TAKE FURTHER NOTICE that copies of the Objection and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Objection and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York                        /s/ Joshua A. Sussberg
Dated:  February 19, 2023                 **KIRKLAND & ELLIS LLP**
                                          **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                          Joshua A. Sussberg, P.C.
                                          601 Lexington Avenue
                                          New York, New York 10022
                                          Telephone:      (212) 446-4800
                                          Facsimile:      (212) 446-4900
                                          Email:          jsussberg@kirkland.com

                                          - and -

                                          Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
                                          Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
                                          Christopher S. Koenig
                                          Dan Latona (admitted *pro hac vice*)
                                          300 North LaSalle Street
                                          Chicago, Illinois 60654
                                          Telephone:      (312) 862-2000
                                          Facsimile:      (312) 862-2200
                                          Email:          patrick.nash@kirkland.com
                                                          ross.kwasteniet@kirkland.com
                                                          chris.koenig@kirkland.com
                                                          dan.latona@kirkland.com

                                          *Counsel to the Initial Debtors and Debtors in
                                          Possession*

                                          *Proposed Counsel to the GK8 Debtors and Debtors in
                                          Possession*

**Hearing Date:  March 21, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Response Deadline:  March 14, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' OBJECTION TO**
**PROOF OF CLAIM NO. 23959 OF REBECCA GALLAGHER**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (this "Objection") to the Proof of Claim filed by Rebecca Gallagher, No. 23959 on the Debtors' claims register (the "Claim"), and seek entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, partially disallowing and reducing Ms. Gallagher's Claim to the amount reflected on the Debtors' schedules pursuant to section 502

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 USA LLC (9450); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, PH05, Hoboken, New Jersey 07030.

of title 11 of the U.S. Code (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Preliminary Statement

1.      As the Debtors have reiterated throughout these chapter 11 cases, bankruptcy is a collective process that is, at the same time, deeply personal to the Debtors' hundreds of thousands of account holders (collectively, the "Account Holders").  All Account Holders should have a claim against the Debtors for their cryptocurrency balance on the Debtors' platform.  Account Holders who insist on litigating additional claims for fraud, breach of contract, constructive trust, or other damages against the ***Debtors' estates***, however, will only take value away from other Account Holders—recoveries are a zero-sum game.  Therefore, to ensure equal recoveries for all Account Holders that transferred their digital assets in the Debtors' "Earn" program (the "Earn Program"), the Debtors will be objecting to proofs of claim that seek additional ***individual*** claims (beyond claims on account of cryptocurrency balances) on procedural and equitable grounds.  *See Debtors' Statement Regarding Commencement of Claims Reconciliation Process* [Docket No. [●]].[2]

2.      Ms. Gallagher's Proof of Claim is comprehensive and well-organized, covering numerous grounds for relief that many other creditors have also asserted.  Ms. Gallagher has fiercely advocated for herself and surely inspired others to do the same.  Yet, to allow Ms. Gallagher—or any claimant—a greater recovery from the Debtors' estates solely because of these efforts, at the expense of other Account Holders, would be inequitable.

---

[2]    For the avoidance of doubt, the Debtors dispute certain characterizations and conclusions in the Examiner Report. Nothing herein shall be treated as an endorsement of the Examiner Report or admission regarding any matter therein, and the Debtors reserve all rights regarding the Examiner Report, including objections to its introduction in any proceeding.  *See* Feb. 6, 2023 Hr'g Tr. at 100 9–12 ("I have the greatest respect for the examiner.  But the report is hearsay.  It is not evidence.") (C.J. M. Glenn).

3.     Ms. Gallagher's Proof of Claim reserves her rights to "be a party to" or pursue similar claims against "all insiders / founders / executives / board members, their personal estates, and any insurance policies . . . they carry." *See* Claim Addendum at 1.  To be clear, this Objection does not seek to eliminate that reservation.  To the extent that Ms. Gallagher has claims against parties other than the Debtors, she is free to pursue them even if this Objection is sustained.[3] Furthermore, on February 14, 2023, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed a stipulation and agreed order that will preserve for prosecution through a litigation administrator certain estate claims and causes of action against (a) Alexander Mashinsky, (b) Shlomi Daniel Leon, (c) Hanoch ("Nuke") Goldstein, (d) Harumi Urata-Thompson, (e) Jeremie Beaudry, (f) Johannes Treutler, (g) Aliza Landes, (h) Kristine Meehan Mashinsky, and (i) entities related to the foregoing individuals. *See Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* [Docket No. 2054] (the "Committee Claim Stipulation").  This will allow for a centralized prosecution of these claims.  As to claims against the Debtors' estates, however, the Debtors must object to all Account Holder claims that seek additional recoveries to the detriment of other Account Holders.

4.     For these reasons, and as further detailed herein, the Debtors object to Ms. Gallagher's Claim and request that the Court either disallow it, with prejudice, to the extent that it requests amounts in excess of the value of the cryptocurrency associated with her Celsius account, or, in the alternative, estimate these additional claims at $0 pursuant to section 502(c) of the Bankruptcy Code.  For the avoidance of doubt, the Debtors do not object to the allowance of

---

[3]    For the avoidance of doubt, this statement is meant only to convey that this Objection will not serve as a barrier. Other barriers may exist (*e.g.*, standing).

Ms. Gallagher's claim in the amount reflected on the Debtors' schedules, which Ms. Gallagher confirmed in her Proof of Claim was accurate.

### Relief Requested

5.      The Debtors request entry of the Proposed Order, pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, reducing Claim No. 24913 to the amount set forth in the Debtors' Schedules (as defined herein).

### Jurisdiction and Venue

6.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

### Background

9.      On October 5, 2022, all Debtors except for GK8 Ltd., GK8 UK, and GK8 USA LLC (collectively, the "GK8 Debtors")[4] filed their respective schedules of assets and liabilities (as

---

[4]    The GK8 Debtors filed their respective voluntary petitions for protection under chapter 11 of the Bankruptcy Code on December 7, 2022 and filed their respective schedules on January 20, 2023.

amended from time to time, the "Schedules") [Docket No. 974] pursuant to Bankruptcy Rule 1007

and the orders extending time to file schedules of assets and liabilities [Docket Nos. 57 and 431].

10.     On November 16, 2022, the Court entered an order [Docket No. 1368] (the "Bar

Date Order") establishing January 3, 2023, at 5:00 p.m., prevailing Eastern Time (the "Bar Date"),

as the last date and time for most retail Account Holders to file proofs of claims based on

prepetition claims (collectively, the "Proofs of Claims") against any Debtor other than the GK8

Debtors in these chapter 11 cases, and January 10, 2023, at 5:00 p.m., prevailing Eastern Time

(the "Governmental Bar Date") as the last date and time for each governmental unit to file Proofs

of Claim against any Debtor other than the GK8 Debtors.  On January 10, 2023, the Court entered

an order [Docket No. 1846] (the "Amended Bar Date Order") extending both the Bar Date and the

Governmental Bar Date to February 9, 2023, at 5:00 p.m., prevailing Eastern Time (the "Extended

Bar Date").  As of yet, no bar date has been set as to claims against the GK8 Debtors.  To date,

approximately 23,000 Proofs of Claim have been filed against the Debtors, totaling approximately

$78 billion.[5]

11.     On November 29, 2022, Ms. Gallagher filed a motion (the "Gallagher Motion")

seeking a ruling that she retains right and title to all digital assets she transferred into the Debtors'

Earn Program "due to fraudulent misrepresentation, oral modification to the terms of service, the

terms of service being ambiguous and not plain, and because Celsius was operating illegally by

selling unregistered securities."  Gallagher Motion [Docket No. 1508] at 1.

12.     On January 4, 2023, the Bankruptcy Court entered the *Memorandum Opinion and

Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Opinion"),

---

[5]     The total value of the filed Proofs of Claim does not include approximately 13,606 claims filed solely in
cryptocurrency denominations (without including a liquidated claim amount), including one claim filed for
cryptocurrency worth $117.9 quintillion as of the Petition Date.

finding that the Debtors' Terms of Use presumptively constitute a binding contract governing the relationship between the Debtors and their Account Holders, and that according to the unambiguous language of the Terms of Use, the assets associated with the Earn Program are property of the Debtors' estates. *See* Earn Opinion at 31–42. The Earn Opinion emphasized that Account Holders' "rights with respect to various defense to and breach of contract claims are reserved,"[6] and that "[c]reditors will have every opportunity to have a full hearing on the merits of these arguments during the claims resolution process." *Id.* at 45.

13.    On January 24, 2023, the Court held a hearing on the Gallagher Motion. Following the hearing, the Court issued an order denying the Gallagher Motion, noting that Ms. Gallagher's claims for, among other things, fraudulent misrepresentation "are reserved for the claims resolution process." *Order Denying Rebecca Gallagher's Motion Seeking A Ruling That All the Coins Deposited in Celsius Earn Are Her Property* [Docket No. 1933].

14.    On February 8, 2023, Ms. Gallagher filed her Proof of Claim, asserting that the digital assets she deposited onto the Debtors' platform never became property of the Debtors' estate because, at the time Ms. Gallagher transferred such assets onto the Debtors' platform, the Debtors' Terms of Use were void on account of being "illegally solicited and fraudulent in the inducement." Claim Addendum at 2.[7] Ms. Gallagher further alleges numerous causes of action, including unjust enrichment and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), among others, as further discussed in the summary chart attached hereto as **Exhibit B**. On these bases, Ms. Gallagher requests an in-kind return of $1,022,131.20 worth of

---

[6]    Such defenses and claims include fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable. Earn Opinion at 43.

[7]    Ms. Gallagher's Proof of Claim confirmed that the Debtors accurately scheduled her account balance.

digital assets—the asserted value of Ms. Gallagher's digital assets on the date of the alleged fraudulent inducement and breach of contract—as well as to share in any damages awarded to other Account Holders in this or any other jurisdiction.

### Basis for Relief

15.     Ms. Gallagher's Proof of Claim raises a number of contract defenses and counterclaims that, if adequately pleaded and successfully proven in trial, could either be remedied by equitable relief or an award of damages.  **Exhibit B** hereto details why Ms. Gallagher's Claim is not adequately pleaded and would be prohibitively expensive and time consuming to litigate. The body of this Objection first addresses why—even if Ms. Gallagher prevailed—equitable relief, such as rescission or non-enforcement of the Terms of Use, or imposition of a constructive trust, is not appropriate.   Next, the body of this Objection demonstrates that, for similar reasons, Ms. Gallagher should not be entitled to recover more than a claim in the amount of cryptocurrency reflected on the Debtors' schedules.

**I.     Ms. Gallagher Has Not Demonstrated that Equitable or Non-Enforcement Remedies Are Appropriate.**

16.     Ms. Gallagher does not adequately plead or provide sufficient evidence to support her request for a full, in-kind recovery via rescission of the Terms of Use, nonenforcement of the Terms of Use, or imposition of a constructive trust.   Even if she did, such remedies would inequitably provide Ms. Gallagher with an enhanced recovery at the expense of other similarly situated Account Holders.   Accordingly, Ms. Gallagher's requests should be denied.[8]

---

[8]   While Ms. Gallagher's Proof of Claim does not reference constructive trust and rescission by name, Ms. Gallagher did allege causes of action that may result, if successful, in these remedies, and Ms. Gallagher generally requests a return of the cryptocurrency reflected in her account balance.  Ms. Gallagher's Claim Addendum requests that her claim be liberally construed, and the Debtors have attempted to do so.

**A.      Rescission or Nonenforcement of the Terms of Use Should Not be Granted to Ms. Gallagher Given the Adequate Remedy of Damages.**

17.      The relief Ms. Gallagher requests with respect to the Terms of Use is atypical in a breach of contract action.   The principal "legal" remedy to enforce a contract is a judgment awarding a sum of money.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 550 N.E.2d 919, 922 (N.Y. 1990).  "Where an adequate remedy at law is provided, the reason for granting equitable relief disappears." *Lichtyger v. Franchard Corp*., 223 N.E.2d 869, 874 (N.Y. 1966).  The fact that an award of damages is reduced in bankruptcy does not render it inadequate.  *Cf.In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) (concerning imposition of a constructive trust in a chapter 7 case) ("While [a creditor] may understandably chafe at being required to accept less than it was otherwise entitled to receive under [its agreement], the short—and conclusive—answer is that this is not injustice, it is bankruptcy.").

18.      The remedies Ms. Gallagher requests may be available under exceptional circumstances but are not appropriate here.  Rescission of a contract is available in lieu of actual damages only if (a) a breach of contract is either "material and willful" or "so substantial and fundamental" that it "strongly tend[s] to defeat" the purpose of the contract, (b) damages would not be a "complete and adequate" remedy, ***and*** (c) "the status quo may be substantially restored" by equitable relief.  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 227 (2d Cir. 2017) (describing the standard for rescission under New York law); *In re Ivan F. Boesky Sec. Litig.*, 825 F. Supp. 623, 637 (S.D.N.Y. 1993) (finding that rescission was not available where transaction could not be unwound and the parties returned to their pre-contractual positions).  Similarly, nonenforcement may be available as a remedy where a contract is unconscionable, but "courts have 'substantial flexibility' in determining the remedy for an unconscionable contract." *In re MBM Ent., LLC*, 531 B.R. 363, 418 (Bankr. S.D.N.Y. 2015); *see Oneida Indian Nation of*

*New York v. Cnty. of Oneida*, 617 F.3d 114, 137 (2d Cir. 2010) ("If a contract is unconscionable then it is also necessarily invalid and unenforceable."). As such, a court may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Id.* at 138 (quoting Restatement (Second) of Contracts § 208 (1981)) (internal quotation marks omitted).

19. Even if Ms. Gallagher could establish a record on which rescission or nonenforcement were an available remedy, the Court should nonetheless decline Ms. Gallagher's request for such remedies.[9] ***First***, Ms. Gallagher suffered an economic harm—the loss of her digital assets—for which damages offer a sufficient remedy. *Lichtyger v. Franchard Corp.*, 223 N.E.2d 869, 874 (N.Y. 1966) ("Where an adequate remedy at law is provided, the reason for granting equitable relief disappears."). *Cf. Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 339 (S.D.N.Y. 2003) (finding that if the publisher rejected an author's work in bad faith, such rejection would undermine the purpose of the parties' contract—to produce saleable works for the publisher—and thus rescission may be appropriate). Ms. Gallagher has not established otherwise. ***Second***, granting rescission may allow "the status quo [to] be substantially restored" for Ms. Gallagher, but it would do so at the expense of other Account Holders who entered the same contract with the Debtors, substituting a "run on the courthouse" for exactly the type of "run on the bank" the bankruptcy system was established to prevent. *Pyskaty*, 856 F.3d at 227.

---

[9] While Ms. Gallagher's Claim Addendum is extensive and well organized, nearly all of the "evidence" she cites would be inadmissible under the Federal Rules of Evidence. Furthermore, the various legal theories articulated in Ms. Gallagher's Claim Addendum are deficiently pled and generally conclusory, as further detailed in **Exhibit B**. While the Debtors understand that Ms. Gallagher is a *pro se* claimant, it is difficult to respond to such arguments on the merits when numerous arguments are summarily raised and no supporting evidence is presented. In any event, the difficulty (and cost) of potentially thousands of *pro se* creditors litigating these highly fact-intensive matters further supports the Debtors' position that resolving the merits on each of these matters will only destroy value and delay these chapter 11 cases, particularly when the damages for such claims would duplicate Ms. Gallagher's claim for the return of her cryptocurrency as described further herein.

20.    The Debtors simply do not have sufficient digital assets to make every creditor whole.  The Debtors have raised this issue in response to Ms. Gallagher's arguments on multiple occasions, but Ms. Gallagher has not articulated a reason why she should receive a greater recovery based on claims that, if sufficiently pleaded, are likely to be broadly applicable to all Account Holders.  *See* Earn Opinion at 30 n. 26 ("The Court notes that even if the Terms of Use indicated that coins were property of the customers, which they do not, as Debtors' counsel pointed out at the December 5, 2022 hearing 'we do not have enough coin to give everybody their coin back in kind.'  Thus, even if the contract's terms conferred title on customers, customers would still not get back 100% of their coins.") (citations omitted).  Notwithstanding Ms. Gallagher's individual circumstances, no such reason exists.  In fact, the opposite is true—granting Ms. Gallagher a unique and enhanced recovery when all Earn Program Account Holders suffered the same harm would be inequitable, if not unconscionable.  Accordingly, the Court should decline to apply the equitable remedies of rescission and non-enforcement.

### B.    The Court Should Decline to Impose a Constructive Trust.

21.    For similar reasons, a constructive trust is inappropriate.  A constructive trust is a state-law remedial device applied by courts "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscious retain the beneficial interest . . . ."  *Simonds v. Simonds*, 396 N.Y.S.2d 547, 550 (N.Y. App. Div. 1977).  State courts impose a constructive trust as an equitable remedy to prevent unjust enrichment.  *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir.1999).  New York law requires a claimant to establish four elements by clear and convincing evidence before a court will impose the remedy of a constructive trust: (a) a confidential or fiduciary relationship; (b) a promise, express or implied; (c) a transfer made in reliance on that promise; and (d) unjust enrichment.  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *Miller v. Hartford Life Ins. Co.*, 64 F. App'x 795, 797

10

(2d Cir. 2003).  Generally, the element of unjust enrichment "is the most important [because] the purpose of the constructive trust is prevention of unjust enrichment."  *First Cent. Fin. Corp.*, 377 F.3d at 212.

### 1. The Elements of Constructive Trust Have Not Been Met.

22.    Under New York law, a claim for unjust enrichment requires proof "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *See Beth Isr. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  The basis for unjust enrichment—that "the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff"—may be present in many cases, but "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 779 (N.Y. 2012) (explaining that an unjust enrichment claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," and that "[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled").  As such, plaintiffs should not prevail when they are party to a binding, written contract.  "The theory of unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates *in the absence of any agreement*."  *Goldman v. Metropolitan Life Ins. Co*., 841 N.E.2d 742, 746 (N.Y. 2005) (citations omitted; emphasis added)

23.    In the Earn Opinion, the Court ruled, subject to the reserved defenses, "that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders."  Earn Opinion at 30.  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of

the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).

24.    The other elements of a constructive trust are not met.  The Terms of Use clearly provide that "[t]hese Terms and your use of any Services do not create a fiduciary relationship between us and you," and that "eligible digital assets represented in your Celsius account are not held by Celsius as a fiduciary."  Terms of Use § 10.  Further, Account Holders were explicitly ***not*** promised an unconditional right to withdraw their cryptocurrency— the Terms of Use provided that:

> Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently.  Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions.[10]

Terms of Use § 11.  Accordingly, Ms. Gallagher cannot demonstrate a promise or a transfer made in reliance on that promise.  As a result, Ms. Gallagher's claim of unjust enrichment—and, by extension, her request for a constructive trust—should be denied.

### 2.    Constructive Trusts Are Disfavored in Bankruptcy.

25.    Alternatively, even if the elements are met (which they are not), the Court may deny a constructive trust on equitable grounds similar to those articulated in Part A, *supra*.  As the Court observed:

> Constructive trusts are disfavored in bankruptcy, precisely for the reason that recognizing the constructive trust and giving the beneficiaries of a constructive trust 100 percent results in a diminution in the recovery of unsecured creditors.  That's one of the reasons there's such a strong bias against—I won't say never, but that's why Courts are very reluctant to impose a constructive trust that gives everything

---

[10]    Under the Terms of Use, the Debtors retained the right to "prohibit use of part or all of the Services and/or close, freeze or suspend Celsius Accounts."  Terms of Use § 3.

to the beneficiaries of this constructive trust and takes it dollar-for-dollar away from the unsecured creditors.

Dec. 7 Hr'g Tr. 105:16–25; *see also In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) (same).

26.     Because Ms. Gallagher has not articulated any specific, unique harm to her, it would be inequitable to grant Ms. Gallagher, or any Account Holder, the remedy of a constructive trust at the expense of other similarly situated Account Holders.[11]

## II.     Individual Contract Defenses and Counterclaims Do Not Result in Additional Recovery for Ms. Gallagher.

27.     In the absence of rescission, nonenforcement, or imposition of a constructive trust, the only remaining remedy available for Ms. Gallagher is additional damages claims.  *See* Earn Opinion at 30. ("Account Holders have unsecured claims against the Debtors in dollars or in kind (depending on the terms of any confirmed plan).  The amount of allowed unsecured claims is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by Account Holders, including breach of contract, fraud or other theories of liability."); *id*. at 43 ("The Court takes seriously potential violations of state law and non-bankruptcy federal law, as well as the litany of allegations including, but not limited to, fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable.  These allegations may (or may not) have merit, and the creditors' rights with respect to such claims are explicitly reserved for the claims resolution process."); *Order*

---

[11]   Ms. Gallagher acknowledges this point in her Claim Addendum in arguing against Custody Account Holders receiving their cryptocurrency:  "[I]nexplicably, this depositor class, that existed for only 89 days prior to bankruptcy, gets to receive 94% of their assets back at the expense of Earn.  What a sorry travesty of justice." Claim Addendum at 4.  In contrast to Ms. Gallagher, however, Custody participants had no expectation of an economic benefit from the Debtors.  *Cf.*  Claim Addendum at 5 ("I was relying on the continuation of the $1000.00 a-week yield for retirement.").  Ms. Gallagher's expectation—documented objectively in the Terms of Use and described subjectively in her Proof of Claim—is what differentiates Ms. Gallagher and all other Earn Program participants from Custody Program participants on both contractual and equitable grounds.

*Denying Rebecca Gallagher's Motion Seeking A Ruling That All the Coins Deposited in Celsius Earn Are Her Property* [Docket No. 1933] ("Nonetheless, the Court concluded that [Ms. Gallagher's claims], which may (or may not) have merit, are reserved for the claims resolution process.").

28.      As demonstrated in the summary chart attached hereto as **Exhibit B**, each additional claim for damages asserted in Ms. Gallagher's Proof of Claim is based on fact-intensive causes of action that are difficult, expensive, and time consuming to litigate.  At the end of the day, the only theoretically available remedy—compensatory damages to recover calculable loss—is already covered by the claim the Debtors scheduled for Ms. Gallagher.[12]   The Second Circuit has long held that where a claimant seeks to recover for the same injury under alternative legal theories, they can only recover once.  *Indu Craft, Inc. v. Bank of Baroda* 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."); *Wickham Contracting Co., Inc. v. Bd. of Educ. of City of New York*, 715 F.2d 21, 28 (2d Cir. 1983) ("Since damages are sought for the same illegal acts under different legal theories, the verdicts should be identical and a single recovery allowed[.]").  This is true even where the claimant can "prove separate causes of action that result in the same injury." *Hauser v. Fort Hudson Nursing Ctr., Inc.*, 161 N.Y.S.3d 374, 380 (N.Y. App. Div. 2021).  Where the measure of damages differs between the various claims pled, the claimant is entitled to recover the highest measure of damages among the claims actually proven.  *Hettinger v. Kleinman*, 733 F.

---

[12]   Punitive damages are often categorically disallowed against insolvent debtors.  *In re Motors Liquidation Co.*, 571 B.R. 565, 577 (Bankr. S.D.N.Y. 2017) (finding that "punitive damages are never available in the case of an insolvent debtor"); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 947 (Bankr. S.D.N.Y. 1994) ("[A] Bankruptcy Court can subordinate, disallow or limit punitive damage claims."); *In re Johns–Manvillle Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

Supp. 2d 421, 450 (S.D.N.Y. 2010) (awarding claimants damages for breach of contract where the measure of damages for breach of contract was higher than that for fraud).

29.     Though Ms. Gallagher articulates numerous additional potential grounds for relief, including breach of contract, fraudulent misrepresentation, and securities fraud, she does not establish that any of those theories would result in a claim larger than the scheduled claim on account of her cryptocurrency balance as of the Petition Date.[13]  Indeed, each of Ms. Gallagher's additional claim theories boil down to a request for the return of the cryptocurrency she transferred to the Debtors—whether because she was "tricked" into transferring in the first place, deceived into maintaining her deposits on the platform, or whether the Debtors breached their contractual obligations—it all boils down to a claim for the return of cryptocurrency, which is exactly what the Debtors included in the schedules. As a result, the time and expense of litigating these duplicative claims would accomplish nothing but value destruction.

30.     As described above, Ms. Gallagher's Proof of Claim relates only to her potential recovery from the Debtors' estates, not to her recovery from any other individuals.  This Objection has no effect on Ms. Gallagher's ability to pursue claims against third parties.   Additional recoveries from the limited assets within the Debtors' estates, however, should not be disbursed to Ms. Gallagher alone based on allegations broadly applicable to all Account Holders.  Therefore, such additional claims should be disallowed in their entirety or estimated at $0 pursuant to section

---

[13]    The Debtors have generally attempted to layer Ms. Gallagher's factual allegations onto potentially applicable causes of action, regardless of whether she has specifically articulated such bases or not, but the Debtors cannot research each of these potential bases for Ms. Gallagher to determine if they could theoretically result in a higher recovery.  At the same time, the Debtors cannot state definitively that they do not.  It is for this reason that the Debtors emphasize Ms. Gallagher's burden, notwithstanding the fact that she is a *pro se* claimant.

In any event, for the reasons set forth herein, the Debtors believe that any incremental recoveries would need to be applied broadly to all Account Holders, at which point any benefit would be cancelled out (as the proportionate shares of the Debtors' estates would remain the same for all Account Holders).

502(c)(1) of the Bankruptcy Code, and Ms. Gallagher's claim should be reduced to the amount scheduled by the Debtors. *See* 11 U.S.C. § 502(c)(1).

## Reservation of Rights

31.     Nothing contained in this Objection or any actions taken pursuant to any order granting the relief requested by this Objection is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Objection are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Motion Practice

32.     This Objection includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Objection.  Accordingly, this Objection satisfies Local Rule 9013–1(a).

## Notice

33.     The Debtors will provide notice of this Objection to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50

largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States

Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the

offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and

Exchange Commission; (h) Ms. Gallagher; and (i) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need

be given.

WHEREFORE, the Debtors request that the Court enter the Proposed Order granting the

relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

New York, New York
Dated: February 19, 2023

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER GRANTING DEBTORS' OBJECTION
## TO PROOF OF CLAIM NO. 23959 OF REBECCA GALLAGHER

Upon the objection (the "Objection")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") partially disallowing and reducing Proof of Claim No. 23959 filed by Ms. Gallagher, as more fully set forth in the Objection; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012 and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Objection is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Objection and the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this Order have the meanings given to such terms in the Objection.

opportunity for a hearing on the Objection under the circumstances; and the Court having reviewed

the Objection; and the Court having determined that the legal and factual bases set forth in the

Objection establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.       The Objection is sustained as set forth herein.

2.       Proof of Claim No. 23959 filed by Ms. Gallagher shall be reduced to the amount of

her scheduled claim, Scheduled Claim No. 2423757.

3.       Stretto, Inc., the Debtors' noticing and claims agent, is authorized to update the

Claims Register to reflect the relief granted in this Order.

4.       Entry of this Order is without prejudice to the Debtors' right to object to any other

Claims in these chapter 11 cases or to further object to the Claim (to the extent it is not reduced,

disallowed, or expunged pursuant to this Order) on any grounds whatsoever, at a later date.

5.       The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

6.       The Debtors are authorized to take any and all actions reasonably necessary or

appropriate to effectuate the relief granted pursuant to this Order in accordance with the Objection.

7.       This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**[1]

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 1. Fraudulent Misrepresentation / Fraudulent Inducement into Contract | To maintain a claim for fraudulent inducement under New York law, Ms. Gallagher must show: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017). The misrepresentation must be made with an intent to deceive the claimant, and absent a concrete and personal benefit to the defendant resulting from the fraud, a claim for fraudulent inducement cannot be maintained. *See Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CIV-4124, 2022 WL L3227875, at *9 (S.D.N.Y. Aug. 9, 2022) ("This Circuit has held that a generalized motive that does not result in concrete benefits to the defendant is insufficient to plead scienter."); *see also*, *Bigsby v. Barclays Cap. Real Estate, Inc.*, 170 F. Supp. 3d 568, 578 ("If a mere allegation of corporate profit were sufficient to allege scienter, the requirement would be effectively eliminated."); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("Insufficient motives, we have held, can include (1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation.").<br><br>Ms. Gallagher must also allege facts to support the claim that she ***justifiably*** relied on the alleged misrepresentations. *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016) (quoting *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 32 N.E.3d 921, 922 (N.Y. 2015)) (emphasis added).<br><br>In addition, a claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule Civil Procedure 9(b), which requires that Ms. Gallagher "state with particularity the circumstances constituting fraud." *PetEdge*, 234 F. Supp. 3d at 490; *Goonewardena v. Forster & Garbus LLP*, No. 18-CV-00029, 2019 WL 121677, at *8 (E.D.N.Y. Jan. 7, 2019) (applying the heightened pleading standing to a claim by a *pro se* litigant). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a fraud claim must be supported by allegations "that give rise to a strong inference of fraudulent intent." *PetEdge*, 234 F. Supp. 3d at 491. False statements indicating an intent to perform under a contract are insufficient to support a claim of fraud. *Id.*<br><br>To maintain a claim of fraud relating to a contract, Ms. Gallagher "must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit* | Ms. Gallagher relies predominately on the Examiner Report to support her arguments regarding fraudulent misrepresentation or inducement into contract.[2]<br><br>Ms. Gallagher has failed to establish most, if not all, of the elements of fraudulent misrepresentation/inducement, including (i) justifiable reliance on a misrepresentation and (ii) the existence of a legal duty separate from the duty to perform under the contract. She also has not stated the circumstances constituting the alleged fraud with the requisite particularity.<br><br>In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. |

---

[1]   Terms capitalized but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2]   While Ms. Gallagher cites to many statements of Alex Mashinsky, she relies primarily on the Examiner Report to demonstrate that the statements were untrue. The other sources on which she relies (*e.g.*, the commencement of a civil action against Alex Mashinsky in New York state court) are similarly inadmissible.

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | *Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *see In re Andrew Velez Const., Inc.*, 373 B.R. 262, 278 (Bankr. S.D.N.Y. 2007) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.").<br><br>The measure of damages recoverable for being fraudulently induced to enter into a contract which otherwise would not have been made is "indemnity for [the] loss suffered through that inducement." *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004 (N.Y. 1986) ; *In re Basic Food Group, LLC*, No. 15-10892 (JLG), 2018 WL 5805943, at *15 (Bankr. S.D.N.Y. Oct. 31, 2018) ("That is to say, that the [d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."). | |
| 2.  Unjust Enrichment | To maintain a claim for unjust enrichment under New York law, Ms. Gallagher must show "(1) that [Celsius] benefitted; (2) at [Ms. Gallagher's] expense; and (3) that equity and good conscience require restitution." *See Beth Isr. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  The basis for unjust enrichment—that "the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff"—may be present in many cases, but "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 779 (N.Y. 2012) (explaining that an unjust enrichment claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," and that "[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled").  As such, plaintiffs should not prevail when they are party to a binding, written contract.  "The theory of unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates *in the absence of any agreement*." *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (citations omitted; emphasis added). | Ms. Gallagher has not established that a fiduciary relationship existed, and the Terms of Use specifically disclaim such a relationship.  Terms of Use § 4.  Further, an unjust enrichment claim is not appropriate where a written, binding contract governs Ms. Gallagher's relationship with the Debtors.  *See* Objection ¶ 22.<br><br>In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors.  *See* Objection ¶¶ 27–30. |
| 3.  Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 | To maintain a civil RICO claim, Ms. Gallagher must show a violation of the RICO statute and plead with particularity that Celsius' violation of the RICO statute resulted in an injury to Ms. Gallagher's person or property.  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) ("To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.").<br><br>There are four manners in which a defendant may violate 18 U.S.C. § 1962, each with its own pleading standard.<br><br>▪  Under subsection (a), Ms. Gallagher is required to plead an injury "by reason of | Ms. Gallagher does not specify which subsection of the RICO statute Celsius allegedly violated, much less plead with particularity that Celsius' violation of the RICO statute resulted in an injury to Ms. Gallagher's person or property.<br><br>To the extent she alleges a claim under subsections (a), (b), or (c), she has failed to establish the existence of an "enterprise" because she cites the statements of employees in their capacities as such.  *See* Proof of Claim Addendum at 13.  Even if she did adequately plead that an enterprise existed, she does not adequately plead a predicate act, such as wire fraud, with any particularity beyond a conclusory allegation.<br><br>Nor has she established a claim under subsection (d), as she has not alleged that Celsius itself |

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | [Celsius'] investment of racketeering income in an enterprise" (not the predicate acts alone). *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir. 1990).<br><br>▪ Under subsection (b), Ms. Gallagher is required to plead that "(1) [Celsius] acquired or maintained an interest in the alleged enterprise (2) through a pattern of racketeering activity (3) causing injury to [Ms. Gallagher] as a result of the acquisition of the enterprise." *In re Adelphia Commc'n Corp.*, No. 02-41729, 2007 WL 2403553, at *14 (Bankr. S.D.N.Y. Aug. 17, 2007).<br><br>▪ Under subsection (c), Ms. Gallagher must show that Celsius engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.*<br><br>▪ Under subsection (d), Ms. Gallagher must allege a factual basis to "support a conclusion that [Celsius] consciously agreed to commit predicate acts." *Id.* at *20. Though subsection (d) claims do not need to be plead with particularity, "[c]onclusory allegations of a conspiracy are insufficient." *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1990).<br><br>Where Ms. Gallagher must allege the existence of an enterprise, the enterprise and the defendant (*i.e.*, Celsius) must be distinct from one another, and generally a corporation's employees acting within the scope of their employment will not satisfy this requirement. *Riverwoods Chappaqua Corp. v. Marine Midlands Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented."). | consciously agreed to commit a predicate act or, if one of its directors or officers did, why the director's or officer's agreement should be imputed to Celsius.<br><br>In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 4.  False Advertisement | To maintain a claim for false advertising or deceptive acts under New York General Business Law §§ 349 and 350, Ms. Gallagher must show that the advertisement "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S. 2d 400, 403 (N.Y. App. Div. 2002).  In addition, in the case of a claim under section 350, Ms. Gallagher must show she relied upon the advertisement at the time of entering into the contract. *McGill v. Gen. Motors Corp.*, 647 N.Y.S. 2d 209, 210 (N.Y. App. Div. 1996) (dismissing a claim under section 350 because the plaintiff failed to show reliance or even knowledge of the allegedly false advertisement).  Under sections 349 and 350, the proper measure of a claimant's injury is not the entire cost of the service, but rather any premium the claimant may have paid based on the defendant's misrepresentations. *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361–62 (E.D.N.Y. 2014) ("The rationale for this is that deceived consumers may nevertheless receive—and retain the benefits of— something of value, even if it is not precisely what they believed they were buying."). | Ms. Gallagher fails to meet the requirements of a claim under either section 349 or 350 because she fails to allege a specific injury beyond the cost of the service—the transfer of her digital assets onto the Celsius platform.  Even if Ms. Gallagher did sufficiently plead a claim under section 349 or 350, her damages would amount to a general unsecured claim capped at the amount of her digital assets on the retail platform because she has not shown that she paid a premium for the Debtors' services (nor can she). *See* Objection ¶¶ 27–30. |

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 5. Omission of Material Facts | The Debtors are unaware of an independent cause of action/remedy for the omission of material facts, and Ms. Gallagher has not articulated an independent basis for such claims. | |
| 6. Unconscionability | To maintain a claim for unconscionability under New York law, Ms. Gallagher must show that the contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).

Unconscionability generally requires that the contract was both procedurally and substantively unconscionable at the time of the contract's formation. *Id.* In other words, a finding of unconscionability requires "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* (internal quotation marks and citation omitted).

Under New York law, procedural and substantive unconscionability are "weighed on a 'sliding scale'" such that "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 247 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).

Procedural unconscionability requires "an examination of the contract formation process and the alleged lack of meaningful choice." *Id.* at 828. The focus of such examination is generally on "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* Under New York law, the fact that a form contract was offered on a "take-it-or-leave-it" basis was not sufficient to render it procedurally unconscionable. *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (concerning an arbitration clause).

Substantive unconscionability requires an analysis of "the substance of the bargain to determine whether the terms were *unreasonably* favorable to the party against whom unconscionability is urged." *Gillman*, 534 N.E.2d at 829 (emphasis added).

The standard remedy for unconscionability is nonenforcement of the contract, but "courts have 'substantial flexibility' in determining the remedy for an unconscionable contract." *In re MBM Ent., LLC*, 531 B.R. 363, 418 (Bankr. S.D.N.Y. 2015); *see Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d 114, 137 (2d Cir. 2010) ("If a contract is unconscionable then it is also necessarily invalid and unenforceable."). As such, a court may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d at 138 (quoting | Ms. Gallagher's assertions with respect to unconscionability predominately concern the way Celsius solicited acceptance of the Terms of Use (which was addressed by the Earn Opinion and was consistent with legal requirements for clickwrap contracts).

Additionally, Ms. Gallagher argues that statements from Alex Mashinsky contradicted the Terms of Use, but this does not make the Terms of Use themselves unconscionable. Ms. Gallagher does not allege the Terms of Use are grossly unreasonable as compared to the terms imposed by similar services, nor that she had no choice but to take the terms as set forth in the Terms of Use—Ms. Gallagher was not required to use the Debtors' services, she chose to do so on a take-it-or-leave-it terms. At any time prior to "the pause," Ms. Gallagher could have withdrawn her assets from the Debtors' platform, including when the Terms of Use were modified, but she did not do so.

For the reasons provided in the body of the Objection, nonenforcement is inappropriate under the circumstances. *See* Objection ¶¶ 17–20. |

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | Restatement (Second) of Contracts § 208 (1981)) (internal quotation marks omitted). | |
| 7.  Fraudulent Conveyance | Fraudulent conveyance is not a contract defense or counterclaim, but rather a way a trustee, or debtor, may avoid prior transfers to third parties that were "fraudulently" conveyed outside of the reach of creditors.  *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . ."); 11 U.S.C. § 1107 ("[A] debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, . . . of a trustee").<br><br>In other words, Ms. Gallagher would not have a fraudulent conveyance claim against the Debtors, *the Debtors* would have a fraudulent transfer claim, which Ms. Gallagher would need to obtain derivative standing to prosecute.  *See In re Celsius Network*, No. 22-10964 (MG), 2022 WL 16640639, at *3 (Bankr. S.D.N.Y. Nov. 2, 2022) ("A creditor has standing to [bring a fraudulent conveyance action] where the debtors or debtors in possession have abused their discretion to bring these claims in the first instance.") (*citing In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985)) . | Ms. Gallagher's arguments related to "fraudulent conveyance" are more accurately classified as fraudulent inducement claims, which are described above.  Ms. Gallagher has not requested derivative standing, nor would it be appropriate under the circumstances. |
| 8.  Breach of Contract | To maintain a claim for breach of contract under New York law, Ms. Gallagher must show that: (1) a contract exists; (2) Ms. Gallagher performed in accordance with the contract; (3) Celsius breached its contractual obligations; and (4) Celsius' breach resulted in damages.  *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (internal citation omitted).<br><br>Judicial remedies for breach of contract may be characterized as either "legal" or "equitable."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 550 N.E.2d 919, 922 (N.Y. 1990).  The principal "legal" remedy to enforce a contract is a judgment awarding a sum of money.  *Id.*  In bankruptcy, a pre-petition claim for breach of contract against the debtor allows the claimant to have a general unsecured claim against the debtor's estate.  *See In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) (holding that "the Bankruptcy Code treats rejection as a breach so that the non-debtor party will have a viable claim against the debtor," and that "[w]hen a contract is rejected, the breach claim is treated as a pre-petition unsecured claim"). | The only facts Ms. Gallagher has alleged regarding a breach relate to "the pause." The Terms of Use, however, specifically contemplate that a "pause" may be required:<br><br>"Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently.  Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions."  Terms of Use § 11.<br><br>As a result, the existence of the pause alone is insufficient to establish a breach of contract.<br><br>In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors.  *See* Objection ¶¶ 27–30.<br><br>For the reasons provided in the body of the Objection, nonenforcement and other equitable remedies are inappropriate under the circumstances.  *See* Objection ¶¶ 17–20. |
| 9.  Aiding and Abetting | To maintain a claim for aiding and abetting under New York law, Ms. Gallagher must show that Celsius "substantially assisted in a fraud."  *Albion All. Mezzanine Fund, L.P. v. State Street Bank and Trust Co.*, 797 N.Y.S.2d 669, 705 (N.Y. Sup. Ct. 2003). "Allegations of mere inaction or silence are insufficient to sustain a claim for aiding and abetting unless the defendant has an independent duty to the plaintiff."  *Id.*  Where the defendant has no fiduciary duty to the plaintiff that includes a duty of disclosure, the defendant's silence does not constitute substantial assistance.  *King v. George* | Ms. Gallagher's argument regarding the existence of fraud is largely premised on inadmissible evidence.  *See supra* n.2.<br><br>Even if Ms. Gallagher established the existence of fraud, Ms. Gallagher has not established that a fiduciary relationship existed, and the Terms of Use specifically disclaim such a relationship.  Terms of Use § 4. |

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | *Schonberg & Co.*, 650 N.Y.S.2d 107, 108 (N.Y. App. Div. 1996) ("[I]n the absence of a confidential or fiduciary relationship between plaintiff and her brother's attorneys giving rise to a duty of disclosure, the silence of the attorneys did not amount to the substantial assistance that is a required element of aider or abettor liability.").<br><br>In addition, Ms. Gallagher must show that Celsius had actual knowledge of the fraud. *In re Sharp Intern. Corp.*, 281 B.R. 506, 514 (Bankr. E.D.N.Y. 2002) ("In the Second Circuit, the plaintiff is not required to prove that the alleged aider and abetter had an intent to harm, but is required to prove that the alleged aider and abetter had actual knowledge of the breach of duty and induced or participated in it."). | In the absence of an established fiduciary relationship, silence and inaction do not constitute substantial assistance of a fraud. To establish that any actions taken by the Debtors' employees constituted acts in furtherance of a fraud, Ms. Gallagher would need to demonstrate actual knowledge of such fraud.<br><br>In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 10. Conspiracy | Under New York law, a claim for civil conspiracy can only be alleged in connection with a tort. *In re Operations NY LLC*, 490 B.R. 84, 103 (Bankr. S.D.N.Y. 2013) ("Under New York state law, a plaintiff may claim civil conspiracy alongside an otherwise actionable tort."). To maintain a claim for conspiracy under New York law, Ms. Gallagher must "demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Haber v. ASN 50th St. LLC*, 847 F.Supp.2d 578, 589 (S.D.N.Y. 2012). In addition, Ms. Gallagher "must specify what each conspirator did." *In re Operations NY*, 490 B.R. at 103. | Ms. Gallagher does not allege the elements of any particular tort. By extension, Ms. Gallagher does not allege that the Debtors intentionally participated in the furtherance of a plan to commit a tort.<br><br>In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 11. Defalcation | In the bankruptcy context, defalcation is separate from fraud, embezzlement, or misappropriation. *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013) ("Nor are embezzlement, larceny, and fiduciary fraud simply special cases of defalcation as so defined."). Defalcation is defined as the "fraudulent misappropriation of money held in trust" or a "financial wrongdoing involving a breach of trust." Black's Law Dictionary (11th ed. 2019).<br><br>As a predicate, a court must find a fiduciary relationship existed between the claimant and the defendant before it can determine if a defalcation has occurred. *In re Hayes*, 183 F.3d 162, 170 (2d Cir. 1999) ("The question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made."). Where a debtor merely violated its contractual agreement with the creditor, there is no fiduciary relationship. *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998) ("The definition of fiduciary is to be narrowly construed so that it does not reach debtor-creditor transactions in which the debtor merely violated the terms of his commercial agreement with the creditor."). In addition, Ms. Gallagher must show that Celsius had "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *In re Snyder*, 939 F.3d, 92, 102 (2d Cir. 2019) (quoting *Bullock v. BankChampaign, N.A.*, 569 U.S. at 269). | Ms. Gallagher has not established that a fiduciary relationship existed, and the Terms of Use specifically disclaim such a relationship. Terms of Use § 4.<br><br>In the absence of an established fiduciary relationship, a claim for defalcation cannot be sustained.<br><br>In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 12. Breach of Fiduciary Duty | To maintain a claim to recover damages for breach of fiduciary duty under New York law, Ms. Gallagher must show "(1) the existence of a fiduciary relationship, | Ms. Gallagher has not established that a fiduciary relationship existed between her and the |

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
|  | (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Nachbar v. Cornwall Yacht Club*, 75 N.Y.S.3d 494, 495 (N.Y. App. Div. 2018). A fiduciary relationship does not normally arise from an "arms-length business relationship." *Apogee Handcraft, Inc. v. Verragio, Ltd.*, 65 N.Y.S.3d 27, 29 (N.Y. App. Div. 2017). Nor can a fiduciary relationship be inferred absent an agreement providing for a trust relationship or "special circumstances indicating the same." *Id.* Ms. Gallagher's "subjective claims of reliance" on the expertise of another party does not give rise to a fiduciary relationship if Celsius' "high degree of dominance and reliance" did not exist *prior* to the arms-length business transaction. *See, e.g.*, *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324 (W.D.N.Y. 2012) ("New York courts and federal courts applying New York law have continued to follow the general rule of non-actionability for negligent misstatements made in the context of arms-length business transaction.").

In addition, Ms. Gallagher must meet a heightened pleading standard, setting forth the "circumstances constituting the wrong" in detail. N.Y. C.P.R.L. 3016 (McKinney 2022); *Herrmann v. CohnReznick LLP*, 63 N.Y.S.3d 380, 381–82 (N.Y. App. Div. 2017) (holding N.Y. C.P.R.L. 3016 applies to breach of fiduciary duty claims).

The remedy for a breach of fiduciary duty is generally damages, though it may include punitive damages in cases where the breach "demonstrate[s] a very high degree of moral culpability." *Stein v. McDowell*, 905 N.Y.S.2d 242, 245 (N.Y. App. Div. 2010). As described in the Objection, however, punitive damages are strongly disfavored in bankruptcy. | Debtors, and the Terms of Use specifically disclaim such a relationship. Terms of Use § 4.

In the absence of an established fiduciary relationship, there cannot be a breach of fiduciary duties.

This issue is separate from the fiduciary duties directors and officers owed ***to the Debtors***. Any claims for a breach of duties owed to the Debtors belong to the estate, not individual creditors.

In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 13. Illegality | An illegal contract can be either void or voidable depending on the circumstances. *Lloyd Capital Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d 124, 128 (N.Y. App. Div. 2015) ("Illegal contracts are, as a general rule unenforceable. However, where contracts which violate statutory provisions are merely *malum prohibitum*, the general rule does not always apply.") (internal citations omitted). Illegal purposes render a contract (or a provision within it) unenforceable if it either: (a) violates the US or a state constitution, statute, or other law; (b) is contrary to the policy of an express law; or (c) is otherwise contrary to good morals or to public health, welfare, or safety. *See Lloyd Capital Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d 124, 128 (N.Y. App. Div. 2015)

Ms. Gallagher bears the burden of showing the contract is illegal and why under the pleading standard for the alleged illegality. *Dervan v. Gordian Group LLC*, No. 16-CV-1694, 2017 WL 719494, at *8 (S.D.N.Y. Feb. 28, 2017) (analyzing the defendant's illegality defense under the relevant framework of section 29(b) of the Exchange Act and finding the record did not show the defendant "carr[ied] its burden of showing" the contract was "illegal and unenforceable under Exchange Act Section 29(b).").

The "remedy" for illegal contracts *generally* is nonenforcement. *Schlessinger v.* | Ms. Gallagher has not demonstrated that the Terms of Use are illegal. Ms. Gallagher cites only to actions by state regulatory authorities suspending the Debtors' activities, subject to additional inquiry.

In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30.

For the reasons provided in the body of the Objection, nonenforcement is inappropriate under the circumstances. *See* Objection ¶¶ 17–20. |

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | *Valspar Corp.*, 686 F.3d 81, 85 (2d Cir. 2012) ("As a general rule, New York courts will not enforce illegal contracts."). Contracts that violate only technical laws may still be enforced. *Lloyd Capital Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d 124, 128 (N.Y. App. Div. 2015) ("[W]here contracts which violate statutory provisions are merely *malum prohibitum*, the general rule does not always apply.") (internal citations omitted). | |
| 14. Securities Fraud | To maintain a claim for securities fraud, Ms. Gallagher must show "with particularity the circumstances constituting the fraud," meeting both the requirements of Fed. R. Civ. Pro. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). "Under Fed. R. Civ. Pro. 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate and Inv. Bank*, 924 F.Supp.2d 528, 534 (S.D.N.Y. 2013). In addition, to satisfy the PSLRA, a plaintiff must "(1) specify each misleading statement [or omission], (2) set forth facts on which a belief that a statement [or omission] is misleading was formed, and (3) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* To be liable for securities fraud, the defendant must have acted with the intent to deceive, manipulate, or defraud. *U.S. v. Litvak*, 808 F.3d 160, 178 (2d Cir. 2015) ("Liability for securities fraud [] requires proof that the defendant acted with scienter, which is defined as a mental state embracing intent to deceive, manipulate or defraud."). Generally, the remedies for violations of securities regulations are either rescission or damages. Where a creditor is entitled to rescission, they receive the consideration paid, in this case the digital assets, plus interest and minus the amount of income received on the security (*e.g.*, the Earn rewards). 15 U.S.C. § 77l. Where a creditor is entitled to damages, damages are measured as the excess of the amount the creditor paid over the value of what was received. 15 U.S.C. § 77l; *In re MetLife Demutualization Litig.*, 156 F.Supp.2d 254, 269 (E.D.N.Y. 2001) (quoting *Fershtman v. Schectman*, 450 F.2d 1357, 1361 (2d Cir.1971)). | Ms. Gallagher's argument regarding the existence of fraud is largely premised on inadmissible evidence. In any event, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. For the reasons provided in the body of the Objection, nonenforcement is inappropriate under the circumstances. *See* Objection ¶¶ 17–20. |
| 15. Contract Modification | In the Earn Opinion, the Court generally rejected arguments regarding modification through advertisement: "[A]dvertisements and other statements like those identified by certain creditors generally do not constitute offers, and an offer is a necessary predicate for any 'amendment' to the terms of Use." Earn Opinion at 37. In any event, a finding that the contract was modified does not entitle a party to specific remedies. Rather, the party may seek enforcement of the contracts terms as modified, and Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 26–29. | |
| 16. Pain and Suffering | Ms. Gallagher does not state a legal basis for a claim for pain and suffering. To the extent her pain and suffering claim is based in a breach of contract action, damages for pain and suffering are not recoverable under New York law. *Perlbinder v. Vigilant Ins. Co.*, 141 N.Y.S.3d 141, 147 (N.Y. App. Div. 2021) ("A breach of a contractual | Ms. Gallagher has described emotional distress, pain, and suffering, but has not made a legal case for additional claims on account of such harms, stating that "[t]he value assigned to these are reserved for a different date." Proof of Claim Addendum at 22. |

| Claim | Pleading Standard and Elements | Ms. Gallagher's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | duty does not create a right of recovery for damages for emotion distress."); *Burnell v. Morning Star Homes, Inc.*, 494 N.Y.S.2d 488, 490 (N.Y. App. Div. 1985) ("Aggravation of plaintiffs' preexisting heart condition, pain and suffering, and emotional distress are not recoverable as such in a breach of contract action."); *Cianciotto v. Hospice Care Network*, 927 N.Y.S.2d 779, 785 (N.Y. Dist. Ct. 2011) ("Generally, mental suffering resulting from a breach of contract is not an element of the compensatory damages recoverable in an action for such breach."). <br><br> Where New York courts have allowed damages for pain and suffering, the defendant willfully breached the contract and the breach was accompanied by "foul language, abuse of the plaintiff, accusations of immorality, and special circumstances of humiliation and indignity." *Johnson v. Jamaica Hosp.*, 467 N.E.2d 502, 504 (N.Y. 1984). | Accordingly, Ms. Gallagher has not demonstrated that success on her claim would result in any additional amounts beyond a claim for the value of the cryptocurrency she transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 17. Attorneys' Fees | A prevailing party is not entitled to attorney's fees unless provided for by contract or statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."); *In re O.P.M. Leasing Servs.*, 61 B.R. 596, 602 (Bankr. S.D.N.Y. 1986) ("Under the so-called American Rule of damages, the prevailing party in litigation is precluded from recovering attorneys' fees and litigation expenses from the losing party unless statutory or contractual authority explicitly provides for such recovery."). | Ms. Gallagher has not stated a basis for recovering attorneys' fees, as she is *pro se*. |