Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF HEARING ON DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 24480 OF DANIEL A. FRISHBERG

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Objection to Proof of Claim No. 24480 of Daniel A. Frishberg* (the "Objection") will be held on **March 21, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on **March 20, 2023**.)

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on March 21, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on March 21, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses to the relief requested in the Objection shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No.

2

22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **March 14, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order) available on the case website of the Debtors at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Objection.

PLEASE TAKE FURTHER NOTICE that only those responses that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely response may result in entry of a final order granting the Objection as requested by the Debtors.

PLEASE TAKE FURTHER NOTICE that copies of the Objection and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Objection and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: February 19, 2023

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

4

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' OBJECTION TO
## PROOF OF CLAIM NO. 24480 OF DANIEL A. FRISHBERG

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this objection (this "Objection") to the Proof of Claim filed by Daniel A. Frishberg, No. 24480 on

the Debtors' claims register (the "Claim"), and seek entry of an order (the "Proposed Order"),

substantially in the form attached hereto as **Exhibit A**, partially disallowing and reducing

Mr. Frishberg's Claim to the amount reflected on the Debtors' schedules pursuant to section 502

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 USA LLC (9450); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, PH05, Hoboken, New Jersey 07030.

of title 11 of the U.S. Code (the "<u>Bankruptcy Code</u>") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

<u>**Preliminary Statement**</u>

1.     As the Debtors have reiterated throughout these chapter 11 cases, bankruptcy is a collective process that is, at the same time, deeply personal to the Debtors' hundreds of thousands of account holders (collectively, the "<u>Account Holders</u>").   All Account Holders should have a claim against the Debtors for their cryptocurrency balance on the Debtors' platform.   Account Holders who insist on litigating additional claims for fraud, breach of contract, constructive trust, or other damages against the ***Debtors' estates***, however, will only take value away from other Account Holders—recoveries are a zero-sum game.   Therefore, to ensure equal recoveries for all Account Holders that transferred their digital assets in the Debtors' "Earn" program (the "<u>Earn Program</u>"), the Debtors will be objecting to proofs of claim that seek additional ***individual*** claims (beyond claims on account of cryptocurrency balances) on procedural and equitable grounds. *See Debtors' Statement Regarding Commencement of Claims Reconciliation Process* [Docket No. [●]].

2.     The claimant, Mr. Frishberg, is a fierce advocate who has requested that his Claim not be objected to as part of an omnibus objection "due to how unique [his] case is."  Feb. 4, 2023 E-mail from D. Frishberg.   While the Debtors agreed to file an stand-alone objection to Mr. Frishberg's Claim, the Debtors believe that Mr. Frishberg's arguments are—at their core— just different flavors of the same arguments that other creditors have made throughout these cases. The Court has made the same point:  "The majority of the Debtors' creditors have unsecured claims exactly like Mr. Frishberg's—they are customers of Celsius who have been unable to access transferred cryptocurrency due to Celsius' June 12, 2022, decision to pause all withdrawals . . . ."

*Memorandum Opinion and Order Sustaining Objections to Lift Stay Motion Filed by Daniel A. Frishberg*." [Docket No. 695] ("Frishberg Stay Denial Order") at 4.

3.     The primary difference between Mr. Frishberg and the Debtors' other account holders is how tirelessly Mr. Frishberg has pursued his Claim. To allow Mr. Frishberg—or any claimant—a greater recovery from the Debtors' estates solely because of dogged advocacy, however, would inequitably reduce the recoveries of all other Account Holders.[2]  As such, Mr. Frishberg's requests for equitable remedies and additional damages should be denied, and Mr. Frishberg's Claim should be reduced to only the amount the Debtors scheduled, representing the cryptocurrency balance of his account with the Debtors.

4.     Mr. Frishberg's Proof of Claim contains a robust reservation of his rights, including his right to pursue similar claims against "insiders, 3rd parties and assets pursued by any trustee or litigation trust." *See* Addendum at 1, 15. To be clear, this Objection does not seek to eliminate that reservation as to third parties. To the extent Mr. Frishberg has claims against parties other than the Debtors, he is free to pursue them even if this Objection is sustained.[3]  Furthermore, on February 14, 2023, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed a stipulation and agreed order that will preserve for prosecution through a litigation administrator certain estate claims and causes of action against (a) Alexander Mashinsky, (b) Shlomi Daniel Leon, (c) Hanoch ("Nuke") Goldstein, (d) Harumi Urata-Thompson, (e) Jeremie Beaudry, (f) Johannes Treutler, (g) Aliza Landes, (h) Kristine Meehan

---

[2]     The Court previously made this point specifically with respect to Mr. Frishberg: "If some unsecured creditors of an insolvent debtor receive distributions of the full amount of their prepetition claims ahead of others, as Mr. Frishberg seeks here, it is less likely that other unsecured creditors will receive equal treatment—money to pay their unsecured claims will run out before each unsecured creditor receives equal treatment." Frishberg Stay Denial Order at 3.

[3]     For the avoidance of doubt, this statement is meant only to convey that this Objection will not serve as a barrier. Other barriers may exist (*e.g.*, standing).

Mashinsky, and (i) entities related to the foregoing individuals. *See Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* [Docket No. 2054] (the "Committee Claim Stipulation"). This will allow for a centralized prosecution of these claims. As to claims against the Debtors' estates, however, the Debtors must object to all Account Holder claims that seek additional recoveries to the detriment of other Account Holders.

5.    For these reasons, and as further detailed herein, the Debtors object to Mr. Frishberg's Claim and request that the Court either disallow it, with prejudice, to the extent that it requests amounts in excess of the value of the cryptocurrency associated with his Celsius account, or, in the alternative, estimate these additional claims at $0 pursuant to section 502(c) of the Bankruptcy Code. For the avoidance of doubt, the Debtors do not object to the allowance of Mr. Frishberg's claim in the amount reflected on the Debtors' schedules.[4]

### Relief Requested

6.    The Debtors request entry of the Proposed Order, pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, reducing Claim No. 24480 to the amount set forth in the Debtors' Schedules (as defined herein).

### Jurisdiction and Venue

7.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court

---

[4]    Mr. Frishberg appears to assert that the proper date for valuing his claim is July 5, 2022, the date that he purportedly sought to close his account with the Debtors, but does not otherwise appear to dispute the coin counts.

entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The bases for the relief requested herein are sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

## **Background**

10.     On August 3, 2022, Mr. Frishberg filed his *Motion for Relief for a Exemption From the Automatic Stay* [Docket No. 342], requesting authority to continue a prepetition lawsuit he commenced against the Debtors regarding an alleged breach of the Debtors' Terms of Use. On September 1, 2022, the Court entered the Frishberg Stay Denial Order, denying Mr. Frishberg's motion.

11.     On October 5, 2022, all Debtors except for GK8 Ltd., GK8 UK, and GK8 USA LLC (collectively, the "GK8 Debtors")[5] filed their respective schedules of assets and liabilities (as amended from time to time, the "Schedules") [Docket No. 974] pursuant to Bankruptcy Rule 1007 and the orders extending time to file schedules of assets and liabilities [Docket Nos. 57 and 431].

12.     On November 16, 2022, the Court entered an order [Docket No. 1368] (the "Bar Date Order") establishing January 3, 2023, at 5:00 p.m., prevailing Eastern Time (the "Bar Date"), as the last date and time for most retail Account Holders to file proofs of claims based on prepetition claims (collectively, the "Proofs of Claims") against any Debtor other than the GK8 Debtors in these chapter 11 cases, and January 10, 2023, at 5:00 p.m., prevailing Eastern Time

---

[5]     The GK8 Debtors filed their respective voluntary petitions for protection under chapter 11 of the Bankruptcy Code on December 7, 2022 and filed their respective schedules on January 20, 2023.

(the "Governmental Bar Date") as the last date and time for each governmental unit to file Proofs of Claim against any Debtor other than the GK8 Debtors.  On January 10, 2023, the Court entered an order [Docket No. 1846] (the "Amended Bar Date Order") extending both the Bar Date and the Governmental Bar Date to February 9, 2023, at 5:00 p.m., prevailing Eastern Time (the "Extended Bar Date").  As of yet, no bar date has been set as to claims against the GK8 Debtors.  To date, approximately 23,000 Proofs of Claim have been filed against the Debtors, totaling approximately $78 billion.[6]

13.    On December 9, 2022, Mr. Frishberg commenced an adversary proceeding (Adversary Proceeding No. 22-00179 (MG)) on the same basis as his prepetition breach of contract action.

14.    On January 4, 2023, the Bankruptcy Court entered the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Opinion"), finding that the Debtors' Terms of Use presumptively constitute a binding contract governing the relationship between the Debtors and their Account Holders, and that according to the unambiguous language of the Terms of Use, the assets associated with the Earn Program are property of the Debtors' estates.  *See* Earn Opinion at 31–42.  The Earn Opinion emphasized that Account Holders' "rights with respect to various defense to and breach of contract claims are reserved,"[7] and that "[c]reditors will have every opportunity to have a full hearing on the merits of these arguments during the claims resolution process."  *Id.* at 45.

---

[6]    The total value of the filed Proofs of Claim does not include approximately 13,606 claims filed solely in cryptocurrency denominations (without including a liquidated claim amount), including one claim filed for cryptocurrency worth $117.9 quintillion as of the Petition Date.

[7]    Such defenses and claims include fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable.  Earn Opinion at 43.

15.    On February 9, 2023, Mr. Frishberg filed his Proof of Claim, asserting that the digital assets he deposited onto the Debtors' platform were not property of the Debtors' estate because of a purported prepetition termination of his relationship with the Debtors on July 5, 2022, more than three weeks after Celsius paused all withdrawals on its platform on June 12, 2022 (the "Pause Date").    Mr. Frishberg further alleges numerous causes of action, including unjust enrichment and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), among others, as further discussed in the summary chart attached hereto as **Exhibit B**.   These claims culminate in Mr. Frishberg's request for (i) an in-kind return of the digital assets in his account on the date he purportedly requested that his account be closed, (ii) damages for interest and alleged lost profits from lost staking opportunities resulting from the Debtors' failure to close his account, and (iii) additional damages for other asserted claims (in an unspecified amount).[5]

## Basis for Relief

16.    Mr. Frishberg's Proof of Claim raises a number of contract defenses and counterclaims that, if adequately pleaded and successfully proven in trial, could either be remedied by equitable relief or an award of damages.   **Exhibit B** hereto details why Mr. Frishberg's Claim is not adequately pleaded and would be prohibitively expensive and time consuming to litigate. The body of this Objection first addresses why—even if Mr. Frishberg prevailed—equitable relief, such as rescission or non-enforcement of the Terms of Use, or imposition of a constructive trust, is not appropriate.   Next, the body of this Objection demonstrates that, for similar reasons,

---

[5]    *See* Frishberg Addendum at 4 ("I am claiming 1.74644 ETH as that is what I am owed.  For Bitcoin I am charging a flat 2% interest, and for UNI a 2% interest rate, since that is the inflation rate."); *id.* at 5 ("I am also claiming the max value of 1.66095 Proof Of Work ETH (a forked coin of ETH), due to being deprived of the ability to sell it due to Celsius stealing it from me after the contractual relationship ended.  So that would be (rounding down to the nearest cent) $234.79, plus 4.15% yearly interest (what I am able to get at a FDIC insured savings account at a bank), for a total of like $240.").

Mr. Frishberg should not be entitled to recover more than a claim in the amount of cryptocurrency reflected on the Debtors' schedules.

**I.    Mr. Frishberg Has Not Demonstrated that Equitable or Non-Enforcement Remedies Are Appropriate.**

17.    Mr. Frishberg does not adequately plead or provide sufficient evidence to support his request for a full, in-kind recovery via rescission of the Terms of Use, nonenforcement of the Terms of Use, or imposition of a constructive trust.  Even if he did, such remedies would inequitably provide Mr. Frishberg with an enhanced recovery at the expense of other similarly situated Account Holders.  Accordingly, Mr. Frishberg's requests should be denied.[8]

**A.    Rescission or Nonenforcement of the Terms of Use Should Not be Granted to Mr. Frishberg Given the Adequate Remedy of Damages.**

18.    The relief Mr. Frishberg requests with respect to the Terms of Use is atypical in a breach of contract action.  The principal "legal" remedy to enforce a contract is a judgment awarding a sum of money.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 550 N.E.2d 919, 922 (N.Y. 1990).  "Where an adequate remedy at law is provided, the reason for granting equitable relief disappears." *Lichtyger v. Franchard Corp.*, 223 N.E.2d 869, 874 (N.Y. 1966).  The fact that an award of damages is reduced in bankruptcy does not render it inadequate.  *Cf. In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) (concerning imposition of a constructive trust in a chapter 7 case) ("While [a creditor] may understandably chafe at being required to accept less than it was otherwise entitled to receive under [its agreement], the short—and conclusive—answer is that this is not injustice, it is bankruptcy.").

---

[8]    While Mr. Frishberg's Proof of Claim does not reference rescission and non-enforcement by name, but Mr. Frishberg generally requests a return of the cryptocurrency reflected in his account balance.  Mr. Frishberg's Claim Addendum requests that his claim be liberally construed, and the Debtors have attempted to do so.

19.    The remedies Mr. Frishberg requests may be available under exceptional circumstances but are not appropriate here.  Rescission of a contract is available in lieu of actual damages only if (a) a breach of contract is either "material and willful" or "so substantial and fundamental" that it "strongly tend[s] to defeat" the purpose of the contract, (b) damages would not be a "complete and adequate" remedy, *and* (c) "the status quo may be substantially restored" by equitable relief.  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 227 (2d Cir. 2017) (describing the standard for rescission under New York law); *In re Ivan F. Boesky Sec. Litig.*, 825 F. Supp. 623, 637 (S.D.N.Y. 1993) (finding that rescission was not available where transaction could not be unwound and the parties returned to their pre-contractual positions).  Similarly, nonenforcement may be available as a remedy where a contract is unconscionable, but "courts have 'substantial flexibility' in determining the remedy for an unconscionable contract." *In re MBM Ent., LLC*, 531 B.R. 363, 418 (Bankr. S.D.N.Y. 2015); *see Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d 114, 137 (2d Cir. 2010) ("If a contract is unconscionable then it is also necessarily invalid and unenforceable.").  As such, a court may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."  *Id.* at 138 (quoting Restatement (Second) of Contracts § 208 (1981)) (internal quotation marks omitted).

20.    Even if Mr. Frishberg could establish a record on which rescission or nonenforcement were an available remedy, the Court should nonetheless decline Mr. Frishberg's request for such remedies.[9] *First*, Mr. Frishberg suffered an economic harm—the loss of his digital

---

[9]    While Mr. Frishberg's Claim Addendum is extensive and well organized, nearly all of the "evidence" he cites would be inadmissible under the Federal Rules of Evidence.  Furthermore, the various legal theories articulated in Mr. Frishberg's Claim Addendum are deficiently pled and generally conclusory, as further detailed in **Exhibit B**.  While the Debtors understand that Mr. Frishberg is a *pro se* claimant, it is difficult to respond to such arguments on the merits when numerous arguments are summarily raised and no supporting evidence is presented.  In any event, the difficulty (and cost) of potentially thousands of *pro se* creditors litigating these highly fact-intensive matters further supports the Debtors' position that resolving the merits on each of these matters will

assets—for which damages offer a sufficient remedy. *Lichtyger v. Franchard Corp.*, 223 N.E.2d 869, 874 (N.Y. 1966) ("Where an adequate remedy at law is provided, the reason for granting equitable relief disappears."). *Cf. Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 339 (S.D.N.Y. 2003) (finding that if the publisher rejected an author's work in bad faith, such rejection would undermine the purpose of the parties' contract—to produce saleable works for the publisher—and thus rescission may be appropriate). Mr. Frishberg has not established otherwise. ***Second***, granting rescission may allow "the status quo [to] be substantially restored" for Mr. Frishberg, but it would do so at the expense of other Account Holders who entered the same contract with the Debtors, substituting a "run on the courthouse" for exactly the type of "run on the bank" the bankruptcy system was established to prevent. *Pyskaty*, 856 F.3d at 227.

21.    The Debtors simply do not have sufficient digital assets to make every creditor whole. The Debtors have raised this issue in response to Mr. Frishberg's arguments on multiple occasions, but Mr. Frishberg has not articulated a reason why he should receive a greater recovery based on claims that, if sufficiently pleaded, are likely to be broadly applicable to all Account Holders. *See* Earn Opinion at 30 n. 26 ("The Court notes that even if the Terms of Use indicated that coins were property of the customers, which they do not, as Debtors' counsel pointed out at the December 5, 2022 hearing 'we do not have enough coin to give everybody their coin back in kind.' Thus, even if the contract's terms conferred title on customers, customers would still not get back 100% of their coins.") (citations omitted). No such reason exists. In fact, the opposite is true—granting Mr. Frishberg a unique and enhanced recovery when all Earn Program Account

_____

only destroy value and delay these chapter 11 cases, particularly when the damages for such claims would duplicate Mr. Frishberg's claim for the return of his cryptocurrency as described further herein.

Holders suffered the same harm would be inequitable, if not unconscionable. Accordingly, the Court should decline to apply the equitable remedies of rescission and non-enforcement.

### B. The Court Should Decline to Impose a Constructive Trust.

22. For similar reasons, a constructive trust is inappropriate. A constructive trust is a state-law remedial device applied by courts "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscious retain the beneficial interest . . . ." *Simonds v. Simonds*, 396 N.Y.S.2d 547, 550 (N.Y. App. Div. 1977). State courts impose a constructive trust as an equitable remedy to prevent unjust enrichment. *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir.1999). New York law requires a claimant to establish four elements by clear and convincing evidence before a court will impose the remedy of a constructive trust: (a) a confidential or fiduciary relationship; (b) a promise, express or implied; (c) a transfer made in reliance on that promise; and (d) unjust enrichment. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *Miller v. Hartford Life Ins. Co.*, 64 F. App'x 795, 797 (2d Cir. 2003). Generally, the element of unjust enrichment "is the most important [because] the purpose of the constructive trust is prevention of unjust enrichment." *First Cent. Fin. Corp.*, 377 F.3d at 212.

### 1. The Elements of Constructive Trust Have Not Been Met.

23. Under New York law, a claim for unjust enrichment requires proof "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *See Beth Isr. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). The basis for unjust enrichment—that "the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff"—may be present in many cases, but "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 779

(N.Y. 2012) (explaining that an unjust enrichment claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," and that "[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled"). As such, plaintiffs should not prevail when they are party to a binding, written contract. "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (citations omitted; emphasis added)

24.    In the Earn Opinion, the Court ruled, subject to the reserved defenses, "that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders." Earn Opinion at 30. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).

25.    The other elements of a constructive trust are not met. The Terms of Use clearly provide that "[t]hese Terms and your use of any Services do not create a fiduciary relationship between us and you," and that "eligible digital assets represented in your Celsius account are not held by Celsius as a fiduciary." Terms of Use § 10. Further, Account Holders were explicitly ***not*** promised an unconditional right to withdraw their cryptocurrency— the Terms of Use provided that:

> Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently. Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any

loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions.[10]

Terms of Use § 11.  Accordingly, Mr. Frishberg cannot demonstrate a promise or a transfer made in reliance on that promise.  As a result, Mr. Frishberg's claim of unjust enrichment—and, by extension, his request for a constructive trust—should be denied.

### 2.    Constructive Trusts Are Disfavored in Bankruptcy.

26.    Alternatively, even if the elements are met (which they are not), the Court may deny a constructive trust on equitable grounds similar to those articulated in Part A, *supra*.  As the Court observed:

> Constructive trusts are disfavored in bankruptcy, precisely for the reason that recognizing the constructive trust and giving the beneficiaries of a constructive trust 100 percent results in a diminution in the recovery of unsecured creditors.  That's one of the reasons there's such a strong bias against—I won't say never, but that's why Courts are very reluctant to impose a constructive trust that gives everything to the beneficiaries of this constructive trust and takes it dollar-for-dollar away from the unsecured creditors.

Dec. 7 Hr'g Tr. 105:16–25; *see also In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004) (same).

27.    Because Mr. Frishberg has not articulated any specific, unique harm to him, it would be inequitable to grant Mr. Frishberg, or any Account Holder, the remedy of a constructive trust at the expense of other similarly situated Account Holders.

### III.    Individual Contract Defenses and Counterclaims Do Not Result in Additional Recovery for Mr. Frishberg.

28.    In the absence of rescission, nonenforcement, or imposition of a constructive trust, the only remaining remedy available for Mr. Frishberg is additional damages claims.  *See* Earn Opinion at 30. ("Account Holders have unsecured claims against the Debtors in dollars or in kind

---

[10]    Under the Terms of Use, the Debtors retained the right to "prohibit use of part or all of the Services and/or close, freeze or suspend Celsius Accounts."  Terms of Use § 3.

(depending on the terms of any confirmed plan).  The amount of allowed unsecured claims is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by Account Holders, including breach of contract, fraud or other theories of liability."); *id.* at 43 ("The Court takes seriously potential violations of state law and non-bankruptcy federal law, as well as the litany of allegations including, but not limited to, fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable.  These allegations may (or may not) have merit, and the creditors' rights with respect to such claims are explicitly reserved for the claims resolution process.").

29.     As demonstrated in the summary chart attached hereto as **Exhibit B**, each additional claim for damages asserted in Mr. Frishberg's Proof of Claim is based on fact-intensive causes of action that are difficult, expensive, and time consuming to litigate.  At the end of the day, the only theoretically available remedy—compensatory damages to recover calculable loss—is already covered by the claim the Debtors scheduled for Mr. Frishberg.[11]   The Second Circuit has long held that where a claimant seeks to recover for the same injury under alternative legal theories, they can only recover once.  *Indu Craft, Inc. v. Bank of Baroda* 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."); *Wickham Contracting Co., Inc. v. Bd. of Educ. of City of New York*, 715 F.2d 21, 28 (2d Cir. 1983) ("Since damages are sought for the same illegal acts under different legal theories, the verdicts should be identical and a single recovery allowed[.]").  This is true even where the claimant can "prove separate causes of action that result in the same injury."

---

[11]  Punitive damages are often categorically disallowed against insolvent debtors.  *In re Motors Liquidation Co.*, 571 B.R. 565, 577 (Bankr. S.D.N.Y. 2017) (finding that "punitive damages are never available in the case of an insolvent debtor"); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 947 (Bankr. S.D.N.Y. 1994) ("[A] Bankruptcy Court can subordinate, disallow or limit punitive damage claims."); *In re Johns–Manvillle Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

*Hauser v. Fort Hudson Nursing Ctr., Inc.*, 161 N.Y.S.3d 374, 380 (N.Y. App. Div. 2021). Where the measure of damages differs between the various claims pled, the claimant is entitled to recover the highest measure of damages among the claims actually proven. *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 450 (S.D.N.Y. 2010) (awarding claimants damages for breach of contract where the measure of damages for breach of contract was higher than that for fraud).

30.     Though Mr. Frishberg articulates numerous additional potential grounds for relief, including breach of contract, fraudulent misrepresentation, and securities fraud, he does not establish that any of those theories would result in a claim larger than the scheduled claim on account of his cryptocurrency balance as of the Petition Date.[12] Indeed, each of Mr. Frishberg's additional claim theories boil down to a request for the return of the cryptocurrency he transferred to the Debtors—whether because he was tricked into transferring in the first place, deceived into maintaining his deposits on the platform, or whether the Debtors breached their contractual obligations—it all boils down to a claim for the return of cryptocurrency, which is exactly what the Debtors included in the schedules. As a result, the time and expense of litigating these duplicative claims would accomplish nothing but value destruction.

31.     As described above, Mr. Frishberg's Proof of Claim relates only to his potential recovery from the Debtors' estates, not to his recovery from any other individuals. This Objection has no effect on Mr. Frishberg's ability to pursue claims against third parties. Additional

---

[12]   The Debtors have generally attempted to layer Mr. Frishberg's factual allegations onto potentially applicable causes of action, regardless of whether he has specifically articulated such bases or not, but the Debtors cannot research each of these potential bases for Mr. Frishberg to determine if they could theoretically result in a higher recovery. At the same time, the Debtors cannot state definitively that they do not. It is for this reason that the Debtors emphasize Mr. Frishberg's burden, notwithstanding the fact that he is a *pro se* claimant.

In any event, for the reasons set forth herein, the Debtors believe that any incremental recoveries would need to be applied broadly to all Account Holders, at which point any benefit would be cancelled out (as the proportionate shares of the Debtors' estates would remain the same for all Account Holders).

recoveries from the limited assets within the Debtors' estates, however, should not be disbursed to Mr. Frishberg alone based on allegations broadly applicable to all Account Holders. Therefore, such additional claims should be disallowed in their entirety or estimated at $0 pursuant to section 502(c)(1) of the Bankruptcy Code, and Mr. Frishberg's claim should be reduced to the amount scheduled by the Debtors. *See* 11 U.S.C. § 502(c)(1).

### **Reservation of Rights**

32.    Nothing contained in this Objection or any actions taken pursuant to any order granting the relief requested by this Objection is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Objection are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### **Motion Practice**

33.    This Objection includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Objection. Accordingly, this Objection satisfies Local Rule 9013–1(a).

**<u>Notice</u>**

34.     The Debtors will provide notice of this Objection to the following parties or their

respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50

largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States

Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the

offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and

Exchange Commission; (h) Mr. Frishberg; and (i) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need

be given.

WHEREFORE, the Debtors request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: February 19, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:             jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:             patrick.nash@kirkland.com
                      ross.kwasteniet@kirkland.com
                      chris.koenig@kirkland.com
                      dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER GRANTING DEBTORS' OBJECTION
## TO PROOF OF CLAIM NO. 24480 OF DANIEL A. FRISHBERG

Upon the objection (the "Objection")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") partially disallowing and reducing Proof of Claim No. 24480 filed by Mr. Frishberg as more fully set forth in the Objection; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012 and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Objection is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Objection and the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this Order have the meanings given to such terms in the Objection.

opportunity for a hearing on the Objection under the circumstances; and the Court having reviewed

the Objection; and the Court having determined that the legal and factual bases set forth in the

Objection establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Objection is sustained as set forth herein.

2.      Proof of Claim No. 24480 filed by Mr. Frishberg shall be reduced to the amount of

his scheduled claim, Scheduled Claim No. 2410317.

3.      Stretto, Inc., the Debtors' noticing and claims agent, is authorized to update the

Claims Register to reflect the relief granted in this Order.

4.      Entry of this Order is without prejudice to the Debtors' right to object to any other

Claims in these chapter 11 cases or to further object to the Claim (to the extent it is not reduced,

disallowed, or expunged pursuant to this Order) on any grounds whatsoever, at a later date.

5.      The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

6.      The Debtors are authorized to take any and all actions reasonably necessary or

appropriate to effectuate the relief granted pursuant to this Order in accordance with the Objection.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**[1]

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 1. Unmatured Interest or Lost Profits. | Unmatured interest is disallowed under section 502 of the Bankruptcy Code. *See* 11 U.S.C. § 502(b)(2) ("[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*, and shall allow such claim in such amount, *except to the extent that . . . such claim is for unmatured interest*.") (emphasis added).<br><br>To receive damages for lost profits, Mr. Frishberg must put forth evidence that he lost profits which were foreseen or foreseeable at the time the contract was made.  *See Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) ("The plaintiff faces an additional hurdle:  he must prove that lost profit damages were within the contemplation of the parties when the contract was made."). | Mr. Frishberg claims that he was entitled to the interest he would have gained on some of his assets had they been in his custody.  *See* Objection at 13.  If Mr. Frishberg is claiming that he should have received this unmatured interest pursuant to his relationship with the Debtors, such a claim is disallowed under section 502 of the Bankruptcy Code.<br><br>Alternatively, such claims for interest may just be additional claims for lost profits.  In any event, Mr. Frishberg has not demonstrated that his alleged lost profits was foreseen or foreseeable under the Terms of Use.  In fact, the Terms of Use specifically disclaim any liability for lost profits.  *See* Terms of Use Version 8 § 26 ("In no event shall Celsius . . . be liable . . . for any lost profits . . ."); *see also id.* § 11 ("Celsius . . . may experience . . . extreme market conditions . . . which could result in the immediate halt of transactions either temporarily or permanently.  Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such . . . suspensions of transactions.").  Accordingly, any claim on account of lost profits should also be denied. |
| 2. Fraud | "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages."  *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 910 N.E.2d 976, 979 (2009).  To plead such a claim, Mr. Frishberg must satisfy the heightened pleading standards of rule 9(b) of Federal Rules of Civil Procedure, which applies to any claim that "sounds in fraud."  *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 274 (S.D.N.Y. 2019). | Mr. Frishberg claims that "[b]efore, during and after I had a Celsius account, the company and its representatives engaged in a scheme to defraud me by using false and misleading representations to induce me to deposit my digital assets with [Celsius]."  Proof of Claim Addendum at 19.<br><br>Mr. Frishberg further claims that Celsius "repeatedly stated that the worst thing that could happen to the assets in my account was that I would get my coins returned," "reiterated constantly that my crypto was always my crypto, while fraudulently modifying my Terms Of Service (TOS) over time without my informed knowledge or consent."  Proof of Claim Addendum at 20.<br><br>Mr. Frishberg incorporated the Examiner Report and a YouTube video as evidence for this claim.[2]<br><br>Mr. Frishberg has failed to establish most, if not all, of the elements of fraud, including (i) a material misrepresentation of fact, (ii) Celsius' knowledge of the falsity of such fact, (iii) Celsius' intent to induce reliance, and (iv) Mr. Frishberg's justifiable reliance.  He has also not stated with the requisite particularity the circumstances constituting the alleged fraud.<br><br>In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to |

---

[1]   Terms capitalized but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2]   While Mr. Frishberg cites to multiple statements of Alex Mashinsky, he relies on the Examiner Report to demonstrate that the statements were untrue.  The Examiner Report, however, is not evidence.

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | | the Debtors. *See* Objection ¶¶ 27–30. |
| 3. Fraudulent Misrepresentation or Inducement into Contract | To maintain a claim for fraudulent inducement under New York law, Mr. Frishberg must show: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017). The misrepresentation must be made with an intent to deceive the claimant, and absent a concrete and personal benefit to the defendant resulting from the fraud, a claim for fraudulent inducement cannot be maintained. *See Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CIV-4124, 2022 WL 3227875, at *9 (S.D.N.Y. Aug. 9, 2022) ("This Circuit has held that a generalized motive that does not result in concrete benefits to the defendant is insufficient to plead scienter."); *see also, Bigsby v. Barclays Cap. Real Estate, Inc.*, 170 F. Supp. 3d 568, 578 ("If a mere allegation of corporate profit were sufficient to allege scienter, the requirement would be effectively eliminated."); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("Insufficient motives, we have held, can include (1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation.").

Mr. Frishberg must also allege facts to support the claim that he ***justifiably*** relied on the alleged misrepresentations. *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016) (quoting *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 32 N.E.3d 921, 922 (N.Y. 2015)) (emphasis added).

In addition, a claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule Civil Procedure 9(b), which requires that Mr. Frishberg "state with particularity the circumstances constituting fraud." *PetEdge*, 234 F. Supp. 3d at 490; *Goonewardena v. Forster & Garbus LLP*, No. 18-CV-00029, 2019 WL 121677, at *8 (E.D.N.Y. Jan. 7, 2019) (applying the heightened pleading standing to a claim by a *pro se* litigant). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a fraud claim must be supported by allegations "that give rise to a strong inference of fraudulent intent." *PetEdge*, 234 F. Supp. 3d at 491. False statements indicating an intent to perform under a contract are insufficient to support a claim of fraud. *Id.*

To maintain a claim of fraud relating to a contract, Mr. Frishberg "must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *see In re Andrew Velez Const., Inc.*, 373 B.R. 262, 278 (Bankr. S.D.N.Y. 2007) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for | Mr. Frishberg points to multiple statements made by Mr. Mashinsky during "AMA videos," twitters posted by creditor Mr. Cameron Crews, and an online article allegedly posted by Celsius on medium.com as evidence that the Debtors made misleading statements. Proof of Claim Addendum at 12. *See supra*, n.2.

Mr. Frishberg has failed to establish most, if not all, of the elements of fraudulent misrepresentation/inducement, including (i) justifiable reliance on a misrepresentation and (ii) the existence of a legal duty separate from the duty to perform under the contract. He also has not stated the circumstances constituting the alleged fraud with the requisite particularity.

In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | breach of contract."). The measure of damages recoverable for being fraudulently induced to enter into a contract which otherwise would not have been made is "indemnity for [the] loss suffered through that inducement." *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004 (N.Y. 1986) ; *In re Basic Food Group, LLC*, No. 15-10892 (JLG), 2018 WL 5805943, at *15 (Bankr. S.D.N.Y. Oct. 31, 2018) ("That is to say, that the [d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."). | |
| 4.  Consumer Fraud | Section 349 of New York State's General Business Law provides a private right of action for injuries to consumers resulting from deceptive practices. *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996). To state a claim under this section, Mr. Frishberg must allege that "(1) [Celsius] has engaged in an act or practice that is deceptive or misleading in a material way, and (2) [Mr. Frishberg] has been injured by reason thereof." *Id.* at 636 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)). "[P]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). The first element requires a showing that a reasonable consumer would have been misled by the defendant's conduct. *S.Q.K.F.C., Inc.*, 84 F.3d at 636, 636–637 (2d Cir. 1996) (affirming the dismissal of a section 349 claim because "a reasonable consumer would not have been misled by [the defendant's] conduct"). | Mr. Frishberg relies predominately on the Examiner Report—which is largely inadmissible as evidence—to support his arguments regarding consumer fraud. In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 25–29. |
| 5.  Insurance Fraud | Under New York law, a fraudulent insurance act is one that is "committed by any person who, knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer . . . any written statement . . . of self insurance for commercial insurance or commercial self insurance" that one knows to "contain materially false information concerning any material thereto" or "conceal, for the purpose of misleading, information concerning any material fact thereto." N.Y. Penal Law § 176.05 (McKinney). | Mr. Frishberg claims that during unspecified times and in unspecified manners, Celsius posted certain statements on its website that led him to believe that Celsius "had $750 million worth of insurance on assets it held up on [his] behalf." Proof of Claim Addendum at 13.  Mr. Frishberg further claims that in unspecified AMA videos, Mr. Mashinsky and Mr. Nuke Goldstein made various unspecified statements about "insurance coverage on deployed customer assets" and "how they are working on increasing it," which he "assumed" to be the "$750m they claimed to hold on the website." Not only has Mr. Frishberg failed to plead the elements of insurance fraud under New York law, but Mr. Frishberg overlooks that insurance fraud is a criminal offense in New York and as such, any criminal action alleging that the Debtors committed insurance fraud must be brought by the New York state governmental entity.  Because Mr. Frishberg lacks standing to bring such an action, his insurance fraud claim must be disallowed in its entirety. In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 6.  Securities Fraud and Illegal Sale | To maintain a claim for securities fraud, Mr. Frishberg must show "with particularity the | Mr. Frishberg's argument regarding the existence of fraud is largely premised on |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| of Unregistered Securities | circumstances constituting the fraud," meeting both the requirements of Fed. R. Civ. Pro. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). "Under Fed. R. Civ. Pro. 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate and Inv. Bank*, 924 F.Supp.2d 528, 534 (S.D.N.Y. 2013). In addition, to satisfy the PSLRA, a plaintiff must "(1) specify each misleading statement [or omission], (2) set forth facts on which a belief that a statement [or omission] is misleading was formed, and (3) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* To be liable for securities fraud, the defendant must have acted with the intent to deceive, manipulate, or defraud. *U.S. v. Litvak*, 808 F.3d 160, 178 (2d Cir. 2015) ("Liability for securities fraud [] requires proof that the defendant acted with scienter, which is defined as a mental state embracing intent to deceive, manipulate or defraud."). <br><br> Generally, the remedies for violations of securities regulations are either rescission or damages. Where a creditor is entitled to rescission, they receive the consideration paid, in this case the digital assets, plus interest and minus the amount of income received on the security (*e.g.*, the Earn rewards). 15 U.S.C. § 77l. Where a creditor is entitled to damages, damages are measured as the excess of the amount the creditor paid over the value of what was received. 15 U.S.C. § 77l; *In re MetLife Demutualization Litig.*, 156 F.Supp.2d 254, 269 (E.D.N.Y. 2001) (quoting *Fershtman v. Schectman*, 450 F.2d 1357, 1361 (2d Cir.1971)). | inadmissible evidence. <br><br> In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 28–31. <br><br> For the reasons provided in the body of the Objection, nonenforcement is inappropriate under the circumstances. *See* Objection ¶¶ 18–21. |
| 7. Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 | To allege a civil RICO claim, Mr. Frishberg must establish a violation of the RICO statute and plead with particularity that Celsius' violation of the RICO statute resulted in an injury to Mr. Frishberg's person or property. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) ("To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."). <br><br> There are four manners in which a defendant may violate 18 U.S.C. § 1962, each with its own pleading standard. <br><br> ▪ Under subsection (a), Mr. Frishberg is required to plead an injury "by reason of [Celsius'] investment of racketeering income in an enterprise" (not the predicate acts alone). *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir. 1990). <br><br> ▪ Under subsection (b), Mr. Frishberg is required to plead that "(1) [Celsius] acquired or maintained an interest in the alleged enterprise (2) through a pattern of racketeering activity (3) causing injury to [Mr. Frishberg] as a result of the acquisition of the enterprise." *In re Adelphia Commc'n Corp.*, No. 02-41729, 2007 | Mr. Frishberg only mentioned "RICO" in one sentence in his Claim. *See* Proof of Claim Addendum at 11. As such, Mr. Frishberg has not specified what subsection of the RICO statute Celsius allegedly violated, and much less plead with particularity that Celsius' violation of the RICO statute resulted in injury to Mr. Frishberg's person or property. <br><br> In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | WL 2403553, at *14 (Bankr. S.D.N.Y. Aug. 17, 2007).<br><br>▪ Under subsection (c), Mr. Frishberg must show that Celsius engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.*<br><br>▪ Under subsection (d), Mr. Frishberg must allege a factual basis to "support a conclusion that [Celsius] consciously agreed to commit predicate acts." *Id.* at *20. Though subsection (d) claims do not need to be plead with particularity, "[c]onclusory allegations of a conspiracy are insufficient." *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1990).<br><br>Where Mr. Frishberg must allege the existence of an enterprise, the enterprise and the defendant (*i.e.*, Celsius) must be distinct from one another, and generally a corporation's employees acting within the scope of their employment will not satisfy this requirement. *Riverwoods Chappaqua Corp. v. Marine Midlands Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may be circumvented."). | |
| 8.  Unjust Enrichment | To maintain a claim for unjust enrichment under New York law, Mr. Frishberg must show "(1) that [Celsius] benefitted; (2) at [Mr. Frishberg's] expense; and (3) that equity and good conscience require restitution." *See Beth Isr. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). The basis for unjust enrichment—that "the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff"—may be present in many cases, but "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 779 (N.Y. 2012) (explaining that an unjust enrichment claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," and that "[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled"). As such, plaintiffs should not prevail when they are party to a binding, written contract. "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (citations omitted; emphasis added). | Mr. Frishberg has not established that a fiduciary relationship existed, and the Terms of Use specifically disclaim such a relationship. Terms of Use § 4. Further, an unjust enrichment claim is not appropriate where a written, binding contract governs Mr. Frishberg's relationship with the Debtors. *See* Objection ¶ 24. |
| 9.  Breach of Contract | To plead a cause of action for breach of contract, a Mr. Frishberg must allege that: (1) a contract exists; (2) Mr. Frishberg performed in accordance with the contract; (3) Celsius breached its contractual obligations; and (4) Celsius' breach resulted in damages. *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (internal citation omitted).<br><br>Judicial remedies for breach of contract may be characterized as either "legal" or "equitable." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 550 N.E.2d 919, 922 (N.Y. 1990). The principal "legal" remedy to enforce a contract is a judgment awarding a sum | Mr. Frishberg has not demonstrated that Celsius breached its contractual obligations. Mr. Frishberg alleges that Celsius breached its contractual obligations under the Terms of Use by not returning his digital assets after he requested Celsius to close his Earn Account. However, Mr. Frishberg made the request more than three weeks after the Pause Date on July 5, 2023, when no withdrawal by any account holders was allowed.<br><br>The Terms of Use, however, specifically contemplate that a "pause" may be required:<br><br>"Celsius and our third-party partners may experience cyber-attacks, extreme market |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | of money.  *Id.*  In bankruptcy, a pre-petition claim for breach of contract against the debtor allows the claimant to have a general unsecured claim against the debtor's estate.  *See In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) (holding that "the Bankruptcy Code treats rejection as a breach so that the non-debtor party will have a viable claim against the debtor," and that "[w]hen a contract is rejected, the breach claim is treated as a pre-petition unsecured claim"). | conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently.  Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions."  Terms of Use § 11.<br><br>As a result, the existence of the pause alone is insufficient to establish a breach of contract.<br><br>In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors.  *See* Objection ¶¶ 27–30.<br><br>For the reasons provided in the body of the Objection, nonenforcement and other equitable remedies are inappropriate under the circumstances.  *See* Objection ¶¶ 16–19. |
| 10. Unconscionability | To maintain a claim for unconscionability under New York law, Mr. Frishberg must show that the contract is one which "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  *Gillman v. Chase Manhattan Bank, N.A.*, 554 N.E.2d 824, 828 (N.Y. 1988).<br><br>Unconscionability generally requires that the contract was both procedurally and substantively unconscionable at the time of the contract's formation.  *Id.*  In other words, a finding of unconscionability requires "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Id.* (internal quotation marks and citation omitted).<br><br>Under New York law, procedural and substantive unconscionability are "weighed on a 'sliding scale'" such that "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa."  *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 247 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).<br><br>Procedural unconscionability requires "an examination of the contract formation process and the alleged lack of meaningful choice."  *Id.* at 828.  The focus of such examination is generally on "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power."  *Id.*  Under New York law, the fact that a form contract was offered on a "take-it-or-leave-it" basis was not sufficient to render it procedurally unconscionable.  *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (concerning an arbitration clause). | Mr. Frishberg's assertions with respect to unconscionability predominately concern the way Celsius solicited acceptance of the Terms of Use (which was addressed by the Earn Opinion and was consistent with legal requirements for clickwrap contracts).<br><br>Mr. Frishberg does not allege the Terms of Use are grossly unreasonable as compared to the terms imposed by similar services, nor that he had no choice but to take the terms as set forth in the Terms of Use—Mr. Frishberg was not required to use the Debtors' services, she chose to do so on a take-it-or-leave-it terms.  At any time prior to "the pause," Mr. Frishberg could have withdrawn his assets from the Debtors' platform, including when the Terms of Use were modified, but he did not do so.<br><br>For the reasons provided in the body of the Objection, nonenforcement is inappropriate under the circumstances.  *See* Objection ¶¶ 18–21. |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | Substantive unconscionability requires an analysis of "the substance of the bargain to determine whether the terms were *unreasonably* favorable to the party against whom unconscionability is urged." *Gillman*, 534 N.E.2d at 829 (emphasis added).<br><br>The standard remedy for unconscionability is nonenforcement of the contract, but "courts have 'substantial flexibility' in determining the remedy for an unconscionable contract."  *In re MBM Ent., LLC*, 531 B.R. 363, 418 (Bankr. S.D.N.Y. 2015); *see Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d 114, 137 (2d Cir. 2010) ("If a contract is unconscionable then it is also necessarily invalid and unenforceable."). As such, a court may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Oneida Indian Nation of New York v. Cnty. of Oneida*, 617 F.3d at 138 (quoting Restatement (Second) of Contracts § 208 (1981)) (internal quotation marks omitted). | |
| 11. Fraudulent Conveyance | Fraudulent conveyance is not a contract defense or counterclaim, but rather a way a trustee, or debtor, may avoid prior transfers to third parties that were "fraudulently" conveyed outside of the reach of creditors.  *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . ."); 11 U.S.C. § 1107 ("[A] debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, . . . of a trustee").<br><br>In other words, Mr. Frishberg would not have a fraudulent conveyance claim against the Debtors, *the Debtors* would have a fraudulent transfer claim, which Mr. Frishberg would need to obtain derivative standing to prosecute.  *In re Celsius Network*, No. 22-10964 (MG), 2022 WL 16640639, at *3 (Bankr. S.D.N.Y. Nov. 2, 2022) ("A creditor has standing to [bring a fraudulent conveyance action] where the debtors or debtors in possession have abused their discretion to bring these claims in the first instance.") (citing *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985)). | Frishberg did not assert a "fraudulent conveyance" claim, but rather claims that Celsius breached its contract through "fraudulent conveyance of contract."  Proof of Claim Addendum at 27.<br><br>Frishberg did not explain what this claim entails, nor provided any evidence in support.<br><br>In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 12. Tortious Interference with Contract | Under New York law, the elements of tortious interference with contract are:  (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of such contract; (3) the defendant's "intentional procurement of the third-party's breach of the contract without justification;" (4) an actual breach of the contract; and (5) damages resulting therefrom. *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625 (S.D.N.Y. 2014).  It is well established under New York law "that only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract." *Ashby v. ALM Media, LLC*, 973 N.Y.S.2d 109, 110 (2013). | Mr. Frishberg claims that "Celsius regularly and continually interfered with the explicit and implicit contracts that I had with *them* for my personal account." *Id.* at 27–28.<br><br>Mr. Frishberg fails to allege a valid contract between him and a non-Debtor third party, or that the Debtors had intentionally procured a third-party's breach of the contract between him and Celsius. Even if Mr. Frishberg did successfully establish that the Debtors' breached their own Terms of Use, the Debtors were not strangers to their own contract, and as such, a claim of tortious interference with contract must fail as a matter of law.<br><br>In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 13. Aiding and Abetting | To maintain a claim for aiding and abetting under New York law, Mr. Frishberg must | Mr. Frishberg's argument regarding the existence of fraud is largely premised on |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | show that Celsius "substantially assisted in a fraud." *Albion All. Mezzanine Fund, L.P. v. State Street Bank and Trust Co.*, 797 N.Y.S.2d 669, 705 (N.Y. Sup. Ct. 2003). "Allegations of mere inaction or silence are insufficient to sustain a claim for aiding and abetting unless the defendant has an independent duty to the plaintiff." *Id.* Where the defendant has no fiduciary duty to the plaintiff that includes a duty of disclosure, the defendant's silence does not constitute substantial assistance. *King v. George Schonberg & Co.*, 650 N.Y.S.2d 107, 108 (N.Y. App. Div. 1996) ("[I]n the absence of a confidential or fiduciary relationship between plaintiff and her brother's attorneys giving rise to a duty of disclosure, the silence of the attorneys did not amount to the substantial assistance that is a required element of aider or abettor liability."). <br><br> In addition, Mr. Frishberg must show that Celsius had actual knowledge of the fraud. *In re Sharp Intern. Corp.*, 281 B.R. 506, 514 (Bankr. E.D.N.Y. 2002) ("In the Second Circuit, the plaintiff is not required to prove that the alleged aider and abetter had an intent to harm, but is required to prove that the alleged aider and abetter had actual knowledge of the breach of duty and induced or participated in it."). | inadmissible evidence. *See supra* n.2. <br><br> Even if Mr. Frishberg established the existence of fraud, Mr. Frishberg has not established that a fiduciary relationship existed, and the Terms of Use specifically disclaim such a relationship. Terms of Use § 4. <br><br> In the absence of an established fiduciary relationship, silence and inaction do not constitute substantial assistance of a fraud. To establish that any actions taken by the Debtors' employees constituted acts in furtherance of a fraud, Mr. Frishberg would need to demonstrate actual knowledge of such fraud. <br><br> In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 14. Emotional Damages/Distress | Under New York law, a breach of a contractual duty does not create a right of recovery for damages for emotion distress. *Perlbinder v. Vigilant Ins. Co.*, 141 N.Y.S.3d 141, 147 (N.Y. App. Div. 2021); *see Burnell v. Morning Star Homes, Inc.*, 494 N.Y.S.2d 488, 490 (N.Y. App. Div. 1985) ("Aggravation of plaintiffs' preexisting heart condition, pain and suffering, and emotional distress are not recoverable as such in a breach of contract action."); *Cianciotto v. Hospice Care Network*, 927 N.Y.S.2d 779, 785 (N.Y. Dist. Ct. 2011) ("Generally, mental suffering resulting from a breach of contract is not an element of the compensatory damages recoverable in an action for such breach."). Where New York courts have allowed damages for pain and suffering, the defendant willfully breached the contract and the breach was accompanied by "foul language, abuse of the plaintiff, accusations of immorality, and special circumstances of humiliation and indignity." *Johnson v. Jamaica Hosp.*, 467 N.E.2d 502, 504 (N.Y. 1984). | Mr. Frishberg claims that "Celsius's bankruptcy has caused me an immense amount of stress, anxiety, sleeplessness, etc, including heart issues due to the stress. I often have had to sleep 4-6 hours a night to keep up with this lawsuit, and have invested a massive amount of time into this case." Proof of Claim Addendum at 14. <br><br> Mr. Frishberg does not state a legal basis for his claim of emotional damages and distress. To the extent his emotional damages and distress claim is based in a breach of contract action, damages for emotional damages and distress are not recoverable under New York law. <br><br> In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 15. Omission of Material Facts | The Debtors are unaware of an independent cause of action/remedy for the omission of material facts, and Mr. Frishberg has not articulated an independent basis for such claims. | |
| 16. Breach of Financial Privacy | While Mr. Frishberg provides no statutory basis for this claim, the Right to Financial Privacy Act is "intended to protect the privacy of customer's financial records held by banks and other financial institutions." *Corley v. Vance*, 365 F. Supp. 3d 407 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020). As such, the statute limits governmental entities from accessing customers' financial records while protecting the government's interest in obtaining such records when "relevant to a legitimate law enforcement investigation." *Id.* Notably, the statute does not apply to state governmental entities, and only protects against "the disclosure of financial records to the federal government." *Id.* (quoting *Barroga-Hayes v. Susan D. Settenbrino, P.C.*, 2012 WL 1118194, at *4 (E.D.N.Y. Mar. 30, 2012) (emphasis omitted). Nor does the statute "create a constitutional right to privacy with respect to financial records." *United States v. Jenkins*, 90 F. Supp. 3d 76, 80 (N.D.N.Y. 2015). | Mr. Frishberg claims, without evidence, that "Celsius leaked my crypto wallet addresses when they carelessly posted them on the court docket." Proof of Claim Addendum at 15. <br><br> Mr. Frishberg's financial privacy claim must fail because Mr. Frishberg fails to allege that the Debtors wrongfully disclosed his financial information to the federal government. Rather, Mr. Frishberg broadly alleges that the Debtors' leaked his crypto wallet addresses by publishing such addresses on the Court's docket. Here, Mr. Frishberg's information was not disclosed at the request of the federal government nor because of an investigation by the federal government. Mr. Frishberg further ignored the fact that the Debtors requested the Court to redact certain personally identifiable information in two motions [Docket Nos 344, 639]. <br><br> In any event, Mr. Frishberg has not demonstrated that success on his claim would result in |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | Under the Right to Financial Privacy Act, the court's review is limited to whether there is a "demonstrable basis" to believe that a governmental agency attempting to obtain plaintiff's private information is "pursuing a legitimate inquiry" and whether such agency "has a reasonable belief that the requested documents are relevant to that inquiry." *See Lerman v. U.S. S.E.C.*, 928 F. Supp. 2d 798, 802 (S.D.N.Y. 2013). | any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 17. Breach of Privacy | There is no common law breach of privacy claim under New York law. *Lyman v. NYS OASAS*, 928 F. Supp. 2d 509, 527 (N.D.N.Y. 2013); *see Matthews v. Malkus*, 377 F. Supp. 2d 350, 358 (S.D.N.Y. 2005). While New York law provides for a limited statutory right of privacy, such right "only covers the use of one's name, portrait, picture, or voice . . . for advertising purposes or for the purposes of trade without the written consent first obtained." *Id.* (internal quotation marks and citation omitted). Generally, the appropriate relief for such a violation is damages and injunctive relief. *See Doe v. Roe*, 93 Misc. 2d 201, 218 (Sup. Ct. 1977) (awarding plaintiff damages and injunctive relief for defendant's violation of plaintiff's right to privacy). | Mr. Frishberg claims, without evidence, that "[m]y personal information has been disclosed in numerous hacks/breaches, as well as this court case (but the court case isn't the main issue)."<br><br>Mr. Frishberg's right to privacy claim must fail because Mr. Frishberg does not allege that the Debtors used his name, voice, or likeness for any type of advertising or trade purpose. Any disclosure of Mr. Frishberg's personal information resulted from alleged data breaches was outside of the Debtors' control or through routine filings made in the pendency of the Debtors' chapter 11 cases—not for the purposes of advertising or trade. Therefore, Mr. Frishberg's right to privacy claim must fail.<br><br>In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 18. Breach of Information | The Debtors are unaware of an independent cause of action/remedy for breach of information, and Mr. Frishberg has not articulated an independent basis for such claim. | |
| 19. Gross Incompetence | The Debtors are unaware of an independent cause of action/remedy for gross incompetence, and Mr. Frishberg has not articulated an independent basis for such claims. | |
| 20. Gross Negligence | To state a claim for gross negligence under New York law, Mr. Frishberg must allege four elements: (1) the existence of a duty; (2) breach of that duty; (3) injury as a result thereof; and (4) conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367–68 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009). | Mr. Frishberg has failed to establish most, if not all, of the elements of gross negligence, including (i) the existence of a legal duty to Mr. Frishberg, (ii) breach of such duty, (iii) injury as a result of such breach, and (iv) conduct evincing a reckless disregard for the rights of others or that smacks of intentional wrongdoing.<br><br>In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 21. Conversion | To state a claim for conversion, Mr. Frishberg must show that "(1) [he has a] possessory right or interest in the property; and (2) [Celsius exercised] dominion over the property or interfere[d] with it, in derogation of [Mr. Frishberg's] rights." *Colavito v. New York Organ Donor Network, Inc.*, 827 N.Y.S.2d 96, 100 (N.Y. Ct. App. 2006) (internal citations omitted). Generally, claims for conversion that are duplicative of breach of contract claims do not adequately state a claim for conversion. *PCS Wireless LLC v. A to Z Wireless Sols. Inc.*, 841 F.Supp.2d 649, 653 (E.D.N.Y. 2012) ("[A] claim of conversion cannot be predicated on a mere breach of contract and where there are no independent facts alleged arising to a tort claim."). Where funds become the property of the entity with which they are deposited, an action for conversion cannot be sustained. *Nwachukwu v. Chem. Bank*, No. 96 Civ. 5118, 1997 WL 441741, at *6 (S.D.N.Y. Aug. 6, 1997) ("[A] conversion claim, predicated on the unlawful use of funds belonging to | Mr. Frishberg generally alleges that the Debtors committed conversion by continuing to hold Mr. Frishberg's digital assets on its platform without a New York virtual currency license. Because Mr. Frishberg's claims arise out of an alleged breach of the Terms of Use, however, Mr. Frishberg's conversion claim is duplicative of his breach of contract claim and does not adequately state a claim for conversion.<br><br>Further, Mr. Frishberg has not demonstrated that he has a possessory right or interest in the property, and the Earn Opinion holds the opposite. Earn Opinion at 39 ("Thus, the Court finds that title and ownership of all Earn Assets unequivocally transferred to the Debtors and became property of the Estates on the Petition Date.").<br><br>In any event, Mr. Frishberg has not demonstrated that success on his claim would result in |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | another, is not sustainable between a bank and a depositor with a standard debtor-creditor relationship."). <br><br> Generally, damages for conversion equal the market value of the converted property at "the time and place of the conversion, plus interest." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 328 F. Supp. 3d 232, 237 (S.D.N.Y. 2018). Claims for postpetition interest, however, are generally disallowed in bankruptcy. *See* 11 U.S.C. § 502(b)(2) ("[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*, and shall allow such claim in such amount, *except to the extent that . . . such claim is for unmatured interest*.") (emphasis added). | any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 22. Conspiracy | New York does not recognize a freestanding claim for conspiracy. *Carlson v. Am. Int'l Grp., Inc.*, 89 N.E.3d 490, 504 (N.Y. 2017). "A mere conspiracy to commit a [tort] is never of itself a cause of action." *Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 102 (N.Y. 1986); *see In re Operations NY LLC*, 490 B.R. 84, 103 (Bankr. S.D.N.Y. 2013) ("Under New York state law, a plaintiff may claim civil conspiracy alongside an otherwise actionable tort."). <br><br> To state a claim for conspiracy under New York law, Mr. Frishberg must "demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Haber v. ASN 50th St. LLC*, 847 F.Supp.2d 578, 589 (S.D.N.Y. 2012). In addition, Mr. Frishberg "must specify what each conspirator did." *In re Operations NY*, 490 B.R. at 103. | Mr. Frishberg does not allege the elements of any particular tort. By extension, Mr. Frishberg does not allege that the Debtors intentionally participated in the furtherance of a plan to commit a tort. <br><br> In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 23. Defalcation | In the bankruptcy context, defalcation is separate from fraud, embezzlement, or misappropriation. *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013) ("Nor are embezzlement, larceny, and fiduciary fraud simply special cases of defalcation as so defined."). Defalcation is defined as the "fraudulent misappropriation of money held in trust" or a "financial wrongdoing involving a breach of trust." Black's Law Dictionary (11th ed. 2019). <br><br> As a predicate, a court must find a fiduciary relationship existed between the claimant and the defendant before it can determine if a defalcation has occurred. *In re Hayes*, 183 F.3d 162, 170 (2d Cir. 1999) ("The question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made."). Where a debtor merely violated its contractual agreement with the creditor, there is no fiduciary relationship. *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998) ("The definition of fiduciary is to be narrowly construed so that it does not reach debtor-creditor transactions in which the debtor merely violated the terms of his commercial agreement with the creditor."). In addition, Mr. Frishberg must show that Celsius had "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *In re Snyder*, 939 F.3d 92, 102 (2d Cir. 2019) (quoting *Bullock v. BankChampaign, N.A.*, 569 U.S. at 269). | To support his defalcation claim, Frishberg claimed that "there were multiple market plays that Celsius executed, that were not properly researched and had no real time up to date information." Proof of Claim Addendum at 13. Mr. Frishberg further claimed that his defalcation claim is "both based on the embezzlement and fraud done by various Celsius employees and insiders, such as Alex Mahsinsky [sic] by issuing commands to his employees as well as the teams practicing trades without sufficient information." *Id.* Mr. Frishberg further claimed that "My assets were deposited with Celsius so that they would act as a fiduciary custodian for my account." *Id.* at 30. <br><br> Mr. Frishberg has not established that a fiduciary relationship existed, and the Terms of Use specifically disclaim such a relationship. Terms of Use § 4. <br><br> In the absence of an established fiduciary relationship, a claim for defalcation cannot be sustained. <br><br> In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 28–31. |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| 24. Embezzlement | Under New York law, larceny includes "a wrongful taking, obtaining or withholding of another's property, with the intent [to deprive another of property or to appropriate the same to himself or to a third person]" through conduct, including, but not limited to, embezzlement.  N.Y. Penal Law § 155.05(2)(a) (McKinney).  "The essence of the crime of larceny by embezzlement is the conversion by the embezzler of property belonging to another which has been entrusted to the embezzler to hold on behalf of the owner".  *People v. Yannett*, 49 N.Y.2d 296, 301 (1980).  The crime of embezzlement is distinct from larceny in that "the original taking of the property must be lawful, *i.e.*, with the consent of the owner." *In re Scheller*, 265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001) | Mr. Frishberg argues that various employees and insiders of the Debtors, such as Mr. Alex Mashinsky, committed embezzlement and fraud by issuing commands to Debtor employees regarding cryptocurrency trading without sufficient information.  Mr. Frishberg fails to mention any specific wrongdoing on behalf of the Debtors committed with the requisite intent to deprive Mr. Frishberg of his digital assets stored on the Debtors' platform.  Embezzlement is a criminal offense under New York Penal Law, and as such, any criminal action alleging that the Debtors embezzled Account Holder's funds must be brought by the applicable governmental entity.  As such, Mr. Frishberg lacks standing to bring such an action, and his embezzlement claim must be disallowed in its entirety.  In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 25. Breach of Fiduciary Duty | Under New York law, "[t]he elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Nachbar v. Cornwall Yacht Club*, 75 N.Y.S.3d 494, 495 (N.Y. App. Div. 2018).  A fiduciary relationship does not normally arise from an "arms-length business relationship." *Apogee Handcraft, Inc. v. Verragio, Ltd.*, 65 N.Y.S.3d 27, 29 (N.Y. App. Div. 2017).  Nor can a fiduciary relationship be inferred absent an agreement providing for a trust relationship or "special circumstances indicating the same." *Id.*  Mr. Frishberg's "subjective claims of reliance" on the expertise of another party does not give rise to a fiduciary relationship if Celsius' "high degree of dominance and reliance" did not exist *prior* to the arms-length business transaction.  *See, e.g.*, *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324 (W.D.N.Y. 2012) ("New York courts and federal courts applying New York law have continued to follow the general rule of non-actionability for negligent misstatements made in the context of arms-length business transaction.").  In addition, Mr. Frishberg must meet a heightened pleading standard, setting forth the "circumstances constituting the wrong" in detail.  N.Y. C.P.R.L. 3016 (McKinney 2022); *Herrmann v. CohnReznick LLP*, 63 N.Y.S.3d 380, 381–82 (N.Y. App. Div. 2017) (holding N.Y. C.P.R.L. 3016 applies to breach of fiduciary duty claims).  The remedy for a breach of fiduciary duty is generally damages, though it may include punitive damages in cases where the breach "demonstrate[s] a very high degree of moral culpability." *Stein v. McDowell*, 905 N.Y.S.2d 242, 245 (N.Y. App. Div. 2010).  As described in the Objection, however, punitive damages are strongly disfavored in bankruptcy. | Mr. Frishberg has not established that a fiduciary relationship existed between him and the Debtors, and the Terms of Use specifically disclaim such a relationship.  Terms of Use § 4.  In the absence of an established fiduciary relationship, there cannot be a breach of fiduciary duties.  This issue is separate from the fiduciary duties directors and officers owed **to the Debtors**.  Any claims for a breach of duties owed to the Debtors belong to the estate, not individual creditors.  In any event, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |
| 26. False Advertisement | To maintain a claim for false advertising or deceptive acts under New York General Business Law §§ 349 and 350, Mr. Frishberg must show that the advertisement "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and | Mr. Frishberg fails to meet the requirements of a claim under either section 349 or 350 because he fails to allege a specific injury beyond the cost of the service—the transfer of his digital assets onto the Celsius platform.  Even if Mr. Frishberg did sufficiently plead a claim |

| Claim | Pleading Standard and Elements | Mr. Frishberg's Assertions/Purported Evidentiary Basis |
|---|---|---|
| | (3) resulted in injury." *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S. 2d 400, 403 (N.Y. App. Div. 2002). In addition, in the case of a claim under section 350, Mr. Frishberg must show he relied upon the advertisement at the time of entering into the contract. *McGill v. Gen. Motors Corp.*, 647 N.Y.S. 2d 209, 210 (N.Y. App. Div. 1996) (dismissing a claim under section 350 because the plaintiff failed to show reliance or even knowledge of the allegedly false advertisement). Under sections 349 and 350, the proper measure of a claimant's injury is not the entire cost of the service, but rather any premium the claimant may have paid based on the defendant's misrepresentations. *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361–62 (E.D.N.Y. 2014) ("The rationale for this is that deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying."). | under section 349 or 350, his damages would amount to a general unsecured claim capped at the amount of his digital assets on the retail platform because he has not shown that he paid a premium for the Debtors' services (nor can he). *See* Objection ¶¶ 27–30. |
| 27. Operating as an Unlicensed Broker, Custodian, or Lender | The Martin Act "authorizes the Attorney General [of New York] to investigate and enjoin fraudulent practices in the marketing of stocks, bonds and other securities within or from New York State." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 354, 357 (S.D.N.Y. 2010) (internal quotation marks omitted); N.Y. Gen. Bus. Law § 352 (McKinney); *see also id.* at 369 ("the Court also notes that Martin Act enforcement is not truly "exclusive" to the Attorney General—local District Attorneys may also use the Martin Act to prosecute crimes."). | Mr. Frishberg claims that "Celsius was conducting business illegally, without any of the regulated licenses required for operations, and was offering me products and services that it should not have been offering to me at any time for any reason." Proof of Claim Addendum at 35.<br><br>Mr. Frishberg incorporated the complaint by the New York Attorney General against Mashinsky as evidence for this claim. *See supra*, n.2.<br><br>While the Martin Act does not preclude Mr. Frishberg from asserting state common law causes of action that do not rely upon the Martin Act to establish an element of a claim, Mr. Frishberg lacks standing to assert a claim under the Martin Act against the Debtors, as such standing is reserved for the appropriate New York state authorities. Because Mr. Frishberg lacks standing under the Martin Act, his claim for a violation under such law must fail.<br><br>In any case, Mr. Frishberg has not demonstrated that success on his claim would result in any additional amounts beyond a claim for the value of the cryptocurrency he transferred to the Debtors. *See* Objection ¶¶ 27–30. |