Adrienne Woods
**The Law Offices of Adrienne Woods, P.C.**
105 West 86th Street, #314
New York, New York 10024
Tel: (917) 447-4321
adrienne@woodslawpc.com
*Counsel to Creditors Georges Georgiou,*
*Philip Stewart and Gilbert Castillo*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| GEORGES GEORGIOU, PHILIP HARRIS STEWART | ) |
| and GILBERT CASTILLO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) Adv. Pro. No. 23-_____ (MG) |
| CELSIUS NETWORK LLC; CELSIUS KEYFI LLC; | ) |
| CELSIUS LENDING LLC; CELSIUS MINING LLC; | ) |
| CELSIUS NETWORK INC.; CELSIUS NETWORK | ) |
| LIMITED; CELSIUS NETWORKS LENDING LLC; | ) |
| and CELSIUS US HOLDING LLC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **COMPLAINT**

Georges Georgiou, Philip Harris Stewart, and Gilbert Castillo, by and through their attorney

The Law Offices of Adrienne Woods, P.C., as and for their complaint (the "Complaint") against the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

debtors and debtors in possession (collectively, the "<u>Debtors</u>" or "<u>Celsius</u>") in the above-captioned

chapter 11 cases (the "<u>Chapter 11 Cases</u>"), respectfully represent:

## PRELIMINARY STATEMENT

1.      Complainants seek entry of a judgment declaring that certain Assets (defined below)

held by the Debtors are not property of the estates and must be returned to Complainants immediately.

## THE PARTIES

2.      Plaintiffs Georges Georgiou, Philip Stewart and Gilbert Raymond Castillo are all

natural persons represented by the Woods Firm.[2]

3.      The Defendants are the Debtors in the above-captioned Chapter 11 Cases.  The

Debtors' names and addresses are set forth in their voluntary petitions filed with this Court.  The

corporate organization of the Debtors, as well as their jurisdictions of formation, are set forth in

Exhibit A to the Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC,

In Support of Chapter 11 Petitions and First Day Motions, filed on July 14, 2022. [ECF Doc. No. 23]

## JURISDICTION AND VENUE

4.      This adversary proceeding arises in and relates to the Chapter 11 Cases pending before

the U.S. Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") under chapter 11 of

title 11 of the United States Bankruptcy Code §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>").

5.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

157 and 1334. The adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),

(G) and (O).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein are sections 105(a) and 541 of

---

[2] Details regarding each creditor is set forth in the Statement Pursuant to Federal Rule of Bankruptcy Procedure 2019 (the "<u>2019 Statement</u>") filed by The Law Offices of Adrienne Woods, P.C. (the "<u>Woods Firm</u>") substantially contemporaneously with this Complaint.  The 2019 Statement will be amended and updated as appropriate.

the Bankruptcy Code and Rules 7001(1) and 7001(9) of the Federal Rules of Bankruptcy Procedures

(the "<u>Bankruptcy Rules</u>").

<div align="center">

**<u>FACTUAL ALLEGATIONS</u>**[3]

</div>

**<u>A. PROCEDURAL HISTORY</u>**

8.      In March 2018, the Debtors launched their "crypto asset-based finance platform" (the

"<u>Celsius Platform</u>"). [ECF Doc. No. 1411, p. 7]

9.      The Celsius Platform offered various types of accounts, including those labeled

"Earn", "Borrow", "Custody" and "Withhold".  Each account was governed by certain agreements

(as amended, "<u>Account Agreements</u>").

10.      Late in the evening of June 12, 2022, at approximately 10:30 p.m. Eastern Standard

Time (the "<u>Freeze Date</u>"), the Debtors froze customers' ability to withdraw any funds from their

accounts on the Celsius Platform.

11.      On July 13, 2022 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition

under chapter 11 of the Bankruptcy Code.

12.      Since the Petition Date, the Debtors continue as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

13.      The day after the Petition Date, the Debtors filed the Declaration of Alex Mashinsky,

Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day

Motions [ECF Doc. No. 23] (the "<u>First Day Declaration</u>"), which is incorporated by reference as if

fully set forth herein.

14.      On or about August 8, 2022, the Debtors filed the Declaration of Alex Mashinsky,

Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February

---

[3] References to "ECF Doc. No. __" refer to documents filed on the main docket for the jointly administered Chapter 11
Cases under case number 21-10964 (MG).

<div align="center">4</div>

18, 2018 [ECF Doc. No. 393] (the "<u>Account Terms Declaration</u>"), which purports to include true and correct copies of the Loan Agreements with the Debtors, including, without limitation, the General Terms of Use  and the Celsius Loan Terms and Conditions as Exhibits A and B, respectively.  The Account Terms Declaration is incorporated by reference as if fully set forth herein.

15.    On January 4, 2023, the Bankruptcy Court filed the Memorandum Opinion and Order Regarding Ownership of Earn Account Assets [ECF Doc. No. 1822] (the "<u>Earn Account Opinion</u>"). All legal and factual findings articulated in the Earn Account Opinion are incorporated by reference as if fully set forth herein.

**B. FACTUAL HISTORY**

16.    Through the Celsius Platform, the Debtors provided financial services and generated revenue through, among other things, cryptocurrency trading, lending, and borrowing, as well as by engaging in proprietary trading.

17.    As of the Petition Date, the Debtors offered several types of deposit accounts on the Celsius Platform: Earn, Custody, Withhold and Borrow.  Pertinent to this Complaint, Earn Accounts were limited to accredited investors in the United States.[4]  Through the Debtors' Earn Program, users who transferred certain cryptocurrency to the Debtors received "Rewards" in the form of payment-in-kind interest or CEL Tokens (the Debtors' own cryptocurrency) on their deposits.[5]  Also relevant to this Complaint, the Borrow Program allowed customers to borrow fiat currency or stablecoin using cryptocurrency assets as collateral which was placed in Borrow Accounts.  *See* Celsius Loan Terms and Conditions.  While Celsius obtained property rights to collateral posted for a loan, it was limited to the period of time during which the Digital Assets were posted as Collateral.  Celsius Loan Terms and Conditions, Collateral at ¶ 3.

---

[4] Foreign investors were not required to be accredited.
[5] *See* First Day Decl. at ¶ 47.

18.    The Borrow Account Agreement provided the following with regard to early repayment of loans made under the Borrow Program:

> Should you make a full Early Repayment of your Loan in accordance with the terms hereof, Celsius shall release the Collateral to your **Celsius Account**, within ten (10) days of your full repayment. Upon Celsius' release of the Collateral, the Loan shall be immediately and automatically terminated.

Celsius Loan Terms and Conditions, Early Repayment at ¶ 6 (emphasis added). Notably, the Borrow Account Agreement made no reference to Earn Accounts. The term "Celsius Account" is not defined in the Celsius Loan Terms and Conditions, but *does* appear to be defined in the Earn Account Terms of Use, as:

> A User's designated user account on the Celsius website or mobile application, allowing a User to access and use the Services, view the User's balance of Eligible Digital Assets held in custody on the User's behalf or loaned by the User to Celsius, and any rewards gained on loaned Eligible Digital Assets, and manage the User's personal information and profile.

First Day Declaration, Ex. A-8, Terms of Use Version 8, dated April 14, 2022 (hereinafter "Terms of Use"), at 526. [ECF Doc. No. 393]. Once again, there is no reference to any particular *kind* of account.

19.    The Earn Account Agreement also provides for termination by the customer as follows:

> You may terminate any loan to Celsius *at any time*, and request that Celsius return the borrowed Eligible Digital Assets and deliver any Rewards accrued from the Earn Service, by transferring such Eligible Digital Assets and Rewards to your external Virtual Wallet (in accordance with Section 11 below, "Withdrawals") or to the Custody Service, if available.

Terms of Use, § 4 Services at 538 (emphasis added).

20.    Section 11 of the Terms of Use discusses the withdrawal process which is initiated by exercising a call option. Specifically, it provides:

> Subject to these Terms, for any of your Eligible Digital Assets that you elect to utilize in the Earn Service (if available to you), you have a call option on all loans made to

6

> Celsius to demand ***immediate, complete or partial repayment*** of any loan at any time through (i) transfer to a Custody Wallet, if available to you, or (ii) a complete or partial withdrawal of Eligible Digital Assets ***at any time***. Such repayment will terminate in whole or in part your loan to Celsius and you shall ***no longer accrue Rewards*** on the amount of loans as of the time of your exercise of the call option. Celsius initiates the withdrawal process immediately following a withdrawal request when possible, however, we may require up to three (3) days after you submit your withdrawal request to process the withdrawal.

Terms of Use, § 11 Withdrawals at 550 (emphasis added). The Terms of Use are unambiguous with regard to the Earn Account customers' right to exercise their call options "***to demand immediate, complete or partial repayment of any loan at any time.***" *Id.* (emphasis added). This language would be superfluous if such demand did not, in fact, result in substantially immediate return of such customers' loaned assets.

**Facts Specific to Georges Georgiou**

21.     On February 23, 2022, Mr. Georgiou became a customer under the Borrow Program. A copy of the Declaration of Georges Georgiou ("Georgiou Decl.") is annexed hereto as **Exhibit A**. His loan, in the amount of $250,000.00 (the "Loan"), was collateralized by his 26.532 Bitcoin (the "Collateral") held in a Borrow Account. Georgiou Decl. at ¶ 2. The Loan Agreement provides, in pertinent part:

> Within ten (10) days of your full repayment of the Principal amount and all outstanding Obligations, Celsius shall release all remaining Collateral to your ***Celsius Account***.

Celsius Loan Terms and Conditions, Early Repayment at ¶ 6 (emphasis added).

22.     On June 10, 2022, Mr. Georgiou contacted Celsius to determine the requirements to pay off his Loan and obtain return of his Collateral. Georgiou Decl. at ¶ 4.

23.     On June 12, 2022, Mr. Georgiou deposited $250,047.89 worth of stablecoin to pay off his Loan and requested release of his Collateral. Georgiou Decl. at ¶ 5. The repayment of the Loan

was received, and a few hours later Mr. Georgiou received confirmation that his Loan was closed.
*Id.*

24.    Upon repayment of the Loan, however, rather than simply releasing the Collateral by unlocking it from the Borrow Account, Celsius made the unilateral decision to transfer it into Mr. Georgiou's Earn Account.  Georgiou Decl. at ¶ 6.  The Borrow Account Agreement is ambiguous as to how collateral for the Borrow Program is to be released, providing only that "[s]hould you make a full Early Repayment of your Loan in accordance with the terms hereof, Celsius shall release the Collateral to your Celsius Account . . . .".  Celsius Loan Terms and Conditions, Early Repayment at ¶ 6.  Mr. Georgiou reasonably understood that the Collateral would merely be unlocked.  Georgiou Decl. at ¶ 6.  His understanding is supported by the verbiage in the Loan closure statement which notes that the Collateral is "unlocked."  Georgiou Decl. at ¶ 5.  Mr. Georgiou had no way of knowing that, instead of returning his Collateral to him, Celsius would move his now ***unencumbered*** Collateral to an Earn Account – essentially releasing the Collateral to itself.  Nowhere in the Loan Agreement does Celsius represent that, upon repayment of a loan, it is entitled to claim the Collateral for itself. At the time the Loan was paid off and the Collateral no longer pledged, Celsius no longer had any legal or equitable right to the Collateral.  Indeed, this action does not even comport with the terms of the Earn Program, which provides that the "Earn Service is available . . . ***upon your election***. . . ." Terms of Use at § 4 Services at 538-39.  Mr. Georgiou never made this election, and his intent was to regain possession and ownership of his Collateral.  Georgiou Decl. at ¶ 6.

25.    As the transfer of Mr. Georgiou's Collateral to the Earn Account was not made at his election, he immediately contacted Celsius and advised them as such, and exercised his call option. Georgiou Decl. at ¶ 7.  The call option entitles customers with Earn Accounts "to demand ***immediate***, complete or partial repayment of any loan at any time . . . ."  Terms of Use at § 11 Withdrawals at 550 (emphasis added).

8

26.     Exercising his call option, Mr. Georgiou initiated a withdrawal, and the Collateral was transferred out of the Earn Account into "Pending" status on the mobile application and "In Progress" on the Celsius website.  Georgiou Decl. at ¶¶ 8-10.  The initial test transfer of 0.0001 BTC reached Mr. Georgiou's wallet in approximately five (5) minutes.  Georgiou Decl. at ¶ 8.  Celsius contacted Mr. Georgiou and requested additional documentation to fulfill a "security review" for the second, larger withdrawal of 26.53284BTC (the "Georgiou Assets").  Georgiou Decl. at ¶ 9.  Mr. Georgiou provided the requisite information, and Celsius confirmed receipt and satisfaction of the security check.  *Id.*  Celsius then advised Mr. Georgiou that the withdrawal had been initiated and funds should arrive within 24 hours.  *Id.*

27.     As of June 12, 2022, when he first exercised his call option, the Georgiou Assets were removed from Mr. Georgiou's Earn Account.  Georgiou Decl. at ¶ 10-11.  The Georgiou Assets no longer appeared in the Earn Account, which reflected a value of $4,128.78 as of June 12, 2022.[6]  *Id.*  This is supported by a Celsius generated value graph that clearly shows when the 250,000.00USDT was deposited to repay the Loan, the movement of the released Collateral into the Earn Account and the subsequent withdrawals of assets from the Earn Account.  Georgiou Decl. at ¶ 12.  From that point forward, the Georgiou Assets were only visible in the transaction history within the Celsius Website designated as "In Progress", within the Celsius mobile Application designated as "Pending" and as "Confirmed" within Debtors' internal historical transaction data.  *Id.*

28.     Nor did the Georgiou Assets earn Rewards after the withdrawal, as would have been consistent with inclusion in an Earn Account.  Georgiou Decl. at ¶ 13.  Notably, Rewards continued to accrue on the assets in my Earn Account until the Petition Date.  *Id.*

---

[6] The Earn Account value was reduced to only 0.000001BTC, consisting of other coins (Ethereum, Tether, Celsius Token and Dai), which Mr. Georgiou does not dispute are property of the Debtors' estates.

29.    Upon exercising the call option, and well after the Petition Date, the Georgiou Assets

sat in limbo until on or about October 6, 2022, at which time the Debtors once again exercised

unilateral control over the Georgiou Assets, moving them – without notice to Mr. Georgiou – from

Pending back into his Earn Account, despite the fact that he had never authorized them to be placed

there in the first instance.  Georgiou Decl. at ¶ 14.

30.    Further, in what can only be called a questionable behavior, Celsius marked the

transaction as "Cancelled", overriding their own transaction data to suggest the withdrawal was never

actually confirmed.  Georgiou Decl. at ¶ 15.  Specifically, the Debtors overrode their own internal

historical transaction data[7] as shown on their January 21, 2023, transaction history report, at internal

identification number of e6eb60dd-054d-4c43-9762-19dfd29909ff, which was altered to suggest Mr.

Georgiou's withdrawal had not been confirmed by changing to an annotation "No" under the

Confirmed column of the transaction data.  *Id.*  This is patently inaccurate, as the Debtors' own

internal historical transaction data of July 1, 2022, with Celsius internal identification numbers of

7f01f54f-3ff8-4c98-8697-e115bdf874c2    for    0.0001BTC    and    e6eb60dd-054d-4c43-9762-

19dfd29909ff for 26.532841BTC, evidence that Mr. Georgiou's withdrawals were in fact confirmed

as can be seen by the annotation "Yes" under the Confirmed column of the transaction data.  *Id.*

31.    Mr. Georgiou never elected to have his unencumbered, released Collateral redeposited

into Celsius' ownership, nor did he elect to have his Collateral returned to the Earn Account after he

exercised his call option.

**<u>Facts Specific to Mr. Stewart</u>**

32.    On June 12, 2022, Mr. Stewart exercised his call option as to 6.100BTC then located

in his Earn Account.  A copy of the Declaration of Philip Harris Stewart ("<u>Stewart Decl.</u>") is annexed

---

[7] Celsius transaction history reports can be downloaded via a CSV file found in both the Celsius Mobile App and
through the Celsius Website.

10

hereto as **Exhibit B**.  The first call option exercised was for a small test amount of 0.100 BTC.

Stewart Decl. at ¶ 2.  This transfer went through within five (5) minutes and was received into Mr.

Stewart's external wallet less than three (3) hours later.  *Id.*  After receipt of the first withdrawal, Mr.

Stewart exercised a second call option for 6.000BTC (the "Stewart Assets").  Stewart Decl. at ¶ 3.

33.     The Debtors requested additional documentation to fulfill a "security review" before

initiating the withdrawal of the Stewart Assets, which Mr. Stewart promptly sent.  *Id.*  Celsius

confirmed that the security review was completed successfully and advised Mr. Stewart that his

withdrawal had been initiated and the Stewart Assets would be arriving within 24 hours.  *Id.*  At that

time, the Stewart Assets were moved out of Mr. Stewart's Earn Account and marked as "In Progress"

within the Celsius website and "Pending" within the Celsius mobile application – but the Stewart

Assets did not arrive in his wallet.[8]  *Id.*

34.     Mr. Stewart contacted Celsius again when the Stewart Assets still had not registered

in his wallet on June 16, 2022.  Stewart Decl. at ¶ 4.  Celsius confirmed that the Stewart Assets had

left his Earn Account.  *Id.*  Furthermore, Debtors internal historical transaction data with a Celsius'

internal identification numbers of  df90e4cb-701d-48af-9224-ff539d565b9b  for  0.1BTC  and

64547db0-d662-4ced-baea-1a383ad0df53  for the Stewart Assets, evidenced that the withdrawals

were both confirmed as can be seen by the annotation "Yes" under the Confirmed column of the

transaction data.  Stewart Decl. at ¶ 5.

35.     From the time Mr. Stewart exercised his call options, the Stewart Assets were

deducted from his Earn Account, and no longer appeared in his Earn Account on any Celsius

platform.  Stewart Decl. at ¶ 6.  Mr. Stewart did not receive any Rewards from the point the Stewart

Assets were deducted from his Earn Account, while Rewards continued to accrue on Earn Accounts

until the Petition Date.  *Id.*  After the withdrawals, Mr. Stewart's Earn Account consisted of only

---

[8] Transaction ID 64547db0-d662-4ced-baea-1a383ad0df53.

0.129BTC.[9]  *Id.*  As of June 13, 2022, according to Celsius' own records, Mr. Stewart's Earn Account

value was only $4,758.26.  *Id.*

36.     It was not until approximately October 20, 2022 – several months after the Petition

Date – that the Stewart Assets were transferred back into Mr. Stewart's Earn Account.  Stewart Decl.

at ¶ 7.  Mr. Stewart never elected to have the Stewart Assets placed back into the Earn Account – this

was done unilaterally by the Debtors, without notice or consent from Mr. Stewart.  *Id.*

37.     On or around October 12, 2022, the Debtors then marked the transaction "Cancelled"

and overrode their own transaction data to suggest the withdrawal of the Stewart Assets was never

actually confirmed.  Stewart Decl. at ¶ 8.  They also overrode their own internal historical transaction

data as shown on the January 21, 2023, transaction history report at internal identification number of

64547db0-d662-4ced-baea-1a383ad0df53, which was altered to suggest that Mr. Stewart's

withdrawal had never been confirmed as can be seen by the change to an annotation "No" under the

Confirmed column of the transaction data.  Stewart Decl. at ¶ 8.  This contradicts the July 1, 2022,

Transaction History Report evidencing confirmation of the withdrawal of the Stewart Assets.  *Id.*

The altering of their internal Transaction History Report is a blatant attempt by Debtors to change

historical facts and mislead customers and the Court.

**Facts Relevant to Gilbert Castillo**

38.     Mr. Castillo exercised his call option on June 12, 2022.  A copy of the Declaration of

Gilbert Castillo ("Castillo Decl.") is annexed hereto as **Exhibit C**.  Mr. Castillo started with a small

test withdrawal of 100USDC that was received in approximately five (5) minutes without issue.

Castillo Decl. at ¶ 2.  Mr. Castillo then initiated the larger withdrawal valued at $501,277.78USDC

---

[9] The Earn Account currently also includes other coins (Ethereum, Tether, Celsius Token and Dai), ownership of which
Mr. Stewart does not contest.

(the "Castillo Assets", with the Georgiou Assets and the Stewart Assets, the "Assets")) and received confirmation of the withdrawal shortly thereafter. *Id.*

39.    Unlike Messrs. Georgiou and Stewart, Mr. Castillo was not asked to complete any security check to complete his withdrawal of the Castillo Assets. *Id.* After initiating the withdrawal of the Castillo Assets, Mr. Castillo's account reflected the status of the transfer as "In Progress" or "Pending". Castillo Decl. at ¶ 3. Debtors' internal historical transaction data with a Celsius' internal identification numbers of 88f0c763-bb1d-452d-8a25-f01ad976ee82 for 501,277.78USDC and 03f8a090-a234-41ff-966f-835786a674b4 for 100USDC evidence that both withdrawals were confirmed, as seen by the annotation "Yes" under the Confirmed column of the transaction data report. *Id.* Despite this, the assets never arrived in Mr. Castillo's wallet. *Id.*

40.    From the time Mr. Castillo exercised his call options, the assets were deducted from his Earn Account, and no longer appeared in his Earn Account on any Celsius platform. Castillo Decl. at ¶ 4. As of August 17, 2022, according to Celsius' own records, Mr. Castillo's Earn Account value was only $19,540.00, and it contained no USDC. *Id.* Nor was Mr. Castillo issued Rewards on the Castillo Assets, despite the fact that all other Earn Accounts continued to receive Rewards through the Petition Date. *Id.*

41.    Later, on or about October 5, 2022 – several months after the Petition Date – the Debtors marked the withdrawal of the Castillo Assets as "Cancelled" and overrode their own transaction data to suggest the withdrawal was never actually confirmed. Castillo Decl. at ¶ 5. Celsius cancelled the withdrawal without Mr. Castillo's permission and placed the Castillo Assets back into his Earn account – also without his permission. *Id.* Aside from being done without his permission, placement of the Castillo Assets in the Earn Account also contradicts emails Mr. Castillo received from customer support, advising that if the withdrawal were cancelled, the Castillo Assets would be returned to a Custody account. Castillo Decl. at ¶ 7.

13

42.     On or about October 6, 2022 the Debtors also overrode their own internal historical transaction data at internal identification number of 88f0c763-bb1d-452d-8a25-f01ad976ee82, which has now been altered to suggest that Mr. Castillo's withdrawal of the Castillo Assets had never been confirmed as can be seen by the change to an annotation "No" under the Confirmed column of the transaction data. Castillo Decl. at ¶ 6. This contradicts the June 29, 2022, Transaction History Report evidencing confirmation of withdrawal of the Castillo Assets. *Id.*

43.     After changing their historical records to make it appear that the transaction was never confirmed, the Debtors then placed the Castillo Assets back into his Earn Account. Mr. Castillo never elected to have the Castillo Assets placed back into the Earn Account – this was done unilaterally by the Debtors, without notice to or consent from Mr. Castillo. Castillo Decl. at ¶ 5.

**Facts Relevant to All Complainants**

44.     Late in the evening of June 12, 2022, Celsius paused all customer withdrawals. At this time, however, the Assets were no longer in Complainants' respective Earn Accounts. Indeed, from the date each Complainant exercised his call options, the Assets were removed from their respective Earn Accounts and essentially held in limbo. During this time, no Rewards[10] were issued Complainants for the Assets they withdrew – as is appropriate, because the assets were no longer covered by the Earn Agreement.[11]

45.     As of the Petition Date, Complainants Assets were *still* not in Earn Accounts. Indeed, it was not until about October 6, 2022, that Debtors moved Complainants Assets, without

---

[10] Notably, Earn Program assets continued to accrue and receive rewards/interest ("Rewards") until the Petition Date. Complainants received no such Rewards from the time they exercised their call options and their Assets were moved out of the Earn Program, providing further evidence that the Assets were no longer in Earn Accounts and Celsius, by its actions, recognized this and treated the Assets accordingly.
[11] What is not appropriate, however, is that Complainants since have been denied access to their Assets such that they have been deprived the ability to earn interest elsewhere.

14

Complainants direction or consent, into their respective Earn Accounts and manipulated historical

data to make it appear that the Assets had never been withdrawn from the Earn Accounts.

## FIRST CLAIM FOR RELIEF AS TO ALL COMPLAINANTS
### (Fraud)

46.    Complainants repeat and reallege each of the foregoing paragraphs as if fully set forth

at length herein.

47.    Debtors intentionally altered their own historical data to make it appear that

Complainants' withdrawals were never processed in an attempt to mislead Complainants and the

Court as to treatment and classification of the Assets.

48.    Based on the Debtors' own historical records, they were aware that this was false and

misleading.

49.    Debtors altered the records to attempt to represent that the Assets did not leave the

Earn Accounts so they could assert ownership over Complainants' Assets.

50.    Complainants have been injured by this misrepresentation.

51.    Based on the foregoing and the facts incorporated herein by reference, Complainants

are entitled to a judgment returning the Assets to them.

## SECOND CLAIM FOR RELIEF AS TO ALL COMPLAINANTS
### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9)
### that Assets Are Not Property of the Estates)

52.    Complainants repeat and reallege each of the foregoing paragraphs as if fully set forth

at length herein.

53.    The Assets are not property of the Debtors' estates.

54.    Complainants exercised their call options, and thereby their rights to immediately

cancel the loans to Celsius and demand immediate return of their Assets before the Freeze Date.

55.     In each case, Celsius did in fact remove the Assets from Complainants' Earn Accounts prior to the Freeze Date.

56.     According to Celsius' own records, the Assets were not held in the Earn Accounts as of the Petition Date.

57.     The Assets were not treated as Earn Account Funds, and did not earn Rewards from the date they were removed from the Earn Accounts, establishing that Celsius understood them to no longer be pledged to Celsius.

58.     Based on the foregoing and the facts incorporated herein by reference, Complainants are entitled to a judgment declaring that the assets are not property of the Debtors' bankruptcy estates pursuant to section 541(d) of the Bankruptcy Code.

## THIRD CLAIM FOR RELIEF AS TO ALL COMPLAINANTS
### (Conversion)

59.     Complainants repeat and reallege each of the foregoing paragraphs as if fully set forth herein at length.

60.     Under the Earn Account Agreement, Complainants had the immediate right to exercise their call options and cancel their loans to Celsius.

61.     Each Complainant did in fact exercise his call option to cancel his loan to Celsius and regain ownership of his Assets.

62.     In each instance Celsius initiated the withdrawal, moved the Assets out of the Earn Accounts, held it without justification and then returned the Assets to the Earn Accounts after the Petition Date.

63.     By refusing to turn over the Assets after Complainants exercised their call options, unlawfully holding Complainants' Assets and subsequently returning the Assets to Complainants'

Earn Accounts, and thereby to Debtors' ownership, Celsius interfered with Complainants ownership rights to the Assets and Complainants were thereby damaged.

64.    Based on the foregoing and the facts incorporated herein by reference, Complainants are entitled to a judgment in their favor for conversion against Debtors and return of their Assets.

### FOURTH CLAIM FOR RELIEF AS TO ALL COMPLAINANTS
(Failure of Contract)

65.    Complainants repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

66.    Each Complainant exercised his call option, and his respective Assets were removed from his Earn Account.

67.    Exercise of the call option terminated the contract by which Celsius claimed ownership of the Assets.

68.    Celsius returned the Assets to Complainants' respective Earn Accounts months later and after the Petition Date.

69.    Celsius acted without Complainants permission, either express or implied.

70.    There was no consideration and no required meeting of the minds as to return of the Assets to the Earn Accounts, and thus no new contract was formed and the Earn Account Agreement cannot be deemed binding on Complainants.

71.    Based on the foregoing and the facts incorporated herein by reference, Complainants are entitled to immediate return of their Assets.

### FIFTH CLAIM FOR RELIEF AS TO ALL COMPLAINANTS
(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9)
that Assets Are Not Property of the Estates)

72.    Complainants repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

73.    The Earn Account Agreement provides that customers have a "call option on all loans made to Celsius to demand ***immediate, complete or partial repayment*** of any loan at any time . . . ." Terms of Use at § 11 (emphasis added).

74.    Prior to the Freeze Date, each Complainant exercised his call option thus terminating Celsius' rights to continue to hold and use Complainants' Assets.

75.    Each Complainant demanded immediate repayment of his Assets as provided in the Earn Account Agreement.

76.    Upon exercise of the call option, Celsius lost all legal and equitable rights to the Assets.

77.    Based on the foregoing and the facts incorporated herein by reference, Complainants are entitled to a judgment declaring that their Assets are not property of the Debtors' bankruptcy estates pursuant to section 541(d) of the Bankruptcy Code.

## SIXTH CLAIM FOR RELIEF AS TO COMPLAINANT GEORGIOU
(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9)
that Collateral is Not Property of the Estates)

78.    Complainant Georgiou repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

79.    Complainant Georgiou paid off his Loan and demanded return of his Collateral.

80.    Complainant Georgiou never elected to have his Collateral placed into an Earn Account.

81.    Celsius' Borrow Account Agreement does not indicate that released Collateral would be placed in an Earn Account, which would be releasing the Collateral to itself as the owner.

82.    Based on the foregoing and the facts incorporated herein by reference, Complainant Georgiou is entitled to a judgment declaring that the Collateral is not property of the Debtors' bankruptcy estates pursuant to section 541(d) of the Bankruptcy Code.

18

## SEVENTH CLAIM FOR RELIEF AS TO COMPLAINANT GEORGIOU
### (Declaratory Judgment Establishing a Constructive Trust)

83.     Complainant Georgiou repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

84.     Complainant Georgiou had a confidential or fiduciary relationship with Celsius.

85.     Complainant Georgiou contacted Celsius on June 10, 2022, to establish how to repay his Loan and reclaim the Collateral and was advised that, upon repayment of the Loan, the Collateral would be released to him.

86.     The terms of the Borrow Agreement provide that Collateral will be released upon the repayment in full of the Loan.

87.     In reasonable reliance on this, he transferred Stablecoin valued at $250,000 to Celsius in full satisfaction of his Loan.

88.     Instead of returning the Collateral, Celsius transferred the Collateral to an Earn Account – taking ownership of the Collateral for itself.

89.     Debtors were unjustly enriched as a result of the foregoing.

90.     Based on the foregoing and the facts incorporated herein by reference, Complainant Georgiou is entitled to a judgment declaring that the Collateral is held by Debtors in constructive trust for his benefit and must be returned immediately.

## EIGHTH CLAIM FOR RELIEF AS TO COMPLAINANT GEORGIOU
### (Failure of Contract)

91.     Complainant Georgiou repeats and realleges each of the foregoing paragraphs as if fully set forth at length herein.

92.     Complainant Georgiou paid off his Loan and demanded return of his Collateral.

93.     Complainant Georgiou never elected to have his Collateral placed into an Earn Account.

19

94.    Celsius' Borrow Account Agreement does not indicate that released Collateral would be placed in an Earn Account, which would be releasing the Collateral to itself as the owner.

95.    As Complainant Georgiou did not consent to the terms of the Earn Account Agreement, he is not bound by it.

96.    Based on the foregoing and the facts incorporated herein by reference, Complainant Georgiou is entitled to a judgment voiding the Earn Account Agreement as to him and returning his Collateral.

## NINTH CLAIM FOR RELIEF AS TO ALL COMPLAINANTS
(Unjust Enrichment)

97.    Complainants repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

98.    To the extent that the Assets are property of the Debtors' bankruptcy estates, the Debtors' bankruptcy estates have been unjustly enriched.

99.    Each Complainant exercised his call option in conformity with the Earn Account Agreement.

100.    Celsius removed each Complainant's Assets from his Earn Account for a period of months.

101.    After the Petition Date, the Debtors returned the Assets to Complainants' respective accounts without Complainants consent, either express or implied.

102.    Debtors exercised control over Complainants property, and Complainants have been harmed by this while Debtors have essentially stolen the Assets.

103.    It is inequitable and unjust to permit the Debtors' bankruptcy estates to continue to retain the stolen Assets.

104.    Based on the foregoing and the facts incorporated herein by reference, Complainants

are entitled to a judgment directing return of their Assets.

## **CONCLUSION**

**WHEREFORE**, Complainants respectfully request that this Court enter judgment returning

their Assets to them and awarding damages against the Debtors, plus pre-judgment interest, post-

judgment interest, attorneys' fees and costs of this litigation.

Dated:   New York, New York
        February 28, 2023                **THE LAW OFFICES OF
ADRIENNE WOODS, P.C.**

                                        */s/Adrienne Woods*
                                        105 West 86th Street, #314
                                        New York, New York 10024
                                        Telephone: 917.447.4321
                                        *adrienne@woodslawpc.com*

                                        *Counsel to Creditors Georges Georgiou,
Philip Stewart and Gilbert Castillo*

21

**EXHIBIT A**

Adrienne Woods
**The Law Offices of Adrienne Woods, P.C.**
*Counsel to Creditors Georges Georgiou,*
*Philip Stewart and Gilbert Castillo*
105 West 86th Street, #314
New York, New York 10024
Tel: (917) 447-4321
adrienne@woodslawpc.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| GEORGES GEORGIOU, PHILIP STEWART and | ) |
| GILBERT CASTILLO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) Adv. Pro. No. 23-_____ (MG) |
| CELSIUS NETWORK LLC; CELSIUS KEYFI LLC; | ) |
| CELSIUS LENDING LLC; CELSIUS MINING LLC; | ) |
| CELSIUS NETWORK INC.; CELSIUS NETWORK | ) |
| LIMITED; CELSIUS NETWORKS LENDING LLC; | ) |
| and CELSIUS US HOLDING LLC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **DECLARATION OF GEORGES GEORGIOU**

GEORGES GEORGIOU, pursuant to 28 U.S.C. § 1746, declares and respectfully says:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

1.      I am a creditor in the above-captioned bankruptcy case.  I submit this declaration in support of the Complaint.

2.      On February 23, 2022, I became a customer under the Borrow Program.  My loan was in the amount of $250,000.00 (the "<u>Loan</u>") and was collateralized by 26.532 Bitcoin (the "<u>Collateral</u>") held in a Borrow Account.  A true and correct copy of the Loan approval is annexed hereto as **<u>Exhibit A</u>**.

3.      In connection with the Loan, I executed the Loans Terms of Use Version 9 (the "<u>Loan Agreement</u>") on February 23, 2022, a true and correct copy of which is annexed hereto as **<u>Exhibit B</u>**. The Loan Agreement provided, in pertinent part:

> Within ten (10) days of your full repayment of the Principal amount and all outstanding Obligations, Celsius shall release all remaining Collateral to your ***Celsius Account***.

Celsius Loan Terms and Conditions, Early Repayment at ¶ 6 (emphasis added).

4.      On June 10, 2022, I contacted Celsius to determine the requirements to pay off my Loan and obtain return of the Collateral.  A true and correct copy of the communication with Celsius dated June 10, 2022, is annexed hereto as **<u>Exhibit C</u>**.

5.      Pursuant to my discussions with Celsius representatives, on June 12, 2022, I deposited $250,047.89 worth of Stablecoin with Celsius to pay off the Loan and requested release of my Collateral.  A true and correct copy of the email from Celsius dated June 12, 2022, acknowledging receipt of my deposit is annexed hereto as **<u>Exhibit D</u>**.  The repayment of the Loan was received, and a few hours later I received confirmation that my Loan was closed.  A true and correct copy of the email from Celsius dated June 12, 2022, acknowledging that my Loan was closed and my Collateral unlocked is annexed hereto as **<u>Exhibit E</u>**.  A true and correct copy of the screenshot of the Celsius mobile application evidencing that my Collateral was unlocked is annexed hereto as **<u>Exhibit F</u>**.

6.      Upon repayment of my Loan, however, rather than simply releasing my now unencumbered Collateral to me by unlocking it from the Borrow Account, Celsius made the unilateral decision to transfer it into my Earn Account.  This was never discussed with me, and I would not have agreed to it.

7.      As I did not want the Collateral transferred to my Earn Account, I immediately contacted Celsius and exercised my call option, which allowed me "to demand *immediate*, complete or partial repayment of any loan at any time . . . " according to the  Terms of Use at § 11 Withdrawals at 550 (emphasis added).

8.      I first initiated a small test transfer of 0.0001BTC, which reached my wallet in approximately five (5) minutes.  A true and correct copy of the screenshot of the completed transaction dated June 12, 2022, is annexed hereto as **Exhibit G**.

9.      When I then attempted the second, larger withdrawal in the amount of 26.53284BTC (the "Georgiou Assets"), Celsius contacted me and requested additional documentation to fulfill a "security review".  I provided the requisite information, and Celsius confirmed receipt and satisfaction of the security check.  A true and correct copy of the email from Celsius confirming that I had satisfied the security requirements is annexed hereto as **Exhibit H**.  Celsius then advised me that the withdrawal had been initiated and funds would arrive within 24 hours.  *Id.*

10.     From this point forward, my Celsius wallet showed that the transaction was "In Progress", and the Celsius mobile application stated that the transaction was "Pending".  True and correct copies of screenshots of my Celsius wallet and the Celsius mobile application evidencing this, dated June 12, 2022, are annexed hereto as **Exhibit I**.  Despite this, the Georgiou Assets did not reach my wallet.  Accordingly, on June 13, 2022, I reached out yet again and was advised by email, a true and correct copy of which is annexed hereto as **Exhibit J**, that the withdrawal was indeed initiated.

4

11.     After I exercised my call option, my account displayed that the Georgiou Assets were removed from my Earn Account, which reflected a value of $4,128.78.  A true and correct copy of the screenshot of my account on the Celsius mobile application dated June 12, 2022, is annexed hereto as **Exhibit K**.  The BTC value withing my earn account was reduced to only 0.000001BTC.  *Id.*  I do not dispute that these assets are property of the Debtors' estates.

12.     Indeed, a Celsius generated value graph, a true and correct copy of which is annexed hereto as **Exhibit L**, clearly shows when I deposited $250,000.00USDT to repay the Loan (A), the release of my Collateral into the Earn Account (B) and my subsequent withdrawals of assets from the Earn Program (C).  From that point forward, the Georgiou Assets were only visible in the transaction history within the Celsius Website designated as "In Progress", within the Celsius mobile Application designated as "Pending" and as "Confirmed" within Debtors' internal historical transaction data.  See Exhibit I.

13.     After I withdrew the Georgiou Assets from my Earn Account, I no longer received Rewards on the 26.53284 BTC I had withdrawn.  I understood that this was consistent with Celsius' Terms of Use.  I know that Rewards continued to accrue on active Earn Accounts until the Petition Date, and I continue to receive rewards on my remaining assets within the Earn Account (1.98Eth, 1956USDT) minimal as it was.

14.     I did not see the Georgiou Assets in any of my accounts again until on or about October 7, 2022, at which time Celsius marked the transaction as "Cancelled", overriding their own transaction data as if the withdrawal was never actually confirmed.  A true and correct copy of the screenshot of the Celsius mobile application dated October 7, 2022, is annexed hereto as **Exhibit M**. Sometime thereafter, the Georgiou Assets were redeposited into my Earn Account by Celsius and without my permission. A true and correct copy of the screenshot of the Celsius mobile application dated October 12, 2022, is annexed hereto as **Exhibit N**.

15.    The Debtors also overrode their own internal historical transaction data as shown on their January 21, 2023, Transaction History Report, at internal identification number of e6eb60dd-054d-4c43-9762-19dfd29909ff, which was altered to suggest that my withdrawal had not been confirmed by changing to an annotation "No" under the Confirmed column of the transaction data. A true and correct copy of the Celsius' internal transaction data dated January 21, 2023, is annexed hereto as **Exhibit O**.  This is not accurate, as the Debtors' internal historical transaction data of July 1, 2022, with Celsius internal identification numbers of 7f01f54f-3ff8-4c98-8697-e115bdf874c2 for 0.0001BTC and e6eb60dd-054d-4c43-9762-19dfd29909ff for 26.532841BTC, establish that my withdrawals were confirmed as can be seen by the annotation "Yes" under the Confirmed column of the transaction data.  A true and correct copy of the Celsius' internal transaction data dated July 1, 2022, is annexed hereto as **Exhibit P**.

I certify that the foregoing statements are true under penalty of perjury.

Dated: February 28, 2023

_____.
Georges Georgiou

**EXHIBIT A**

**Borrow loan Approval collateralized by 26.53294BTC - February 23, 2022**



**EXHIBIT B**

# Celsius Loan Terms and Conditions

Celsius Lending LLC ("we," "our," "us," "Celsius," "Lender," or the "Company") provides the following Loan Terms and Conditions (the "Loan Conditions") that apply to our borrowers ("you" or "Borrower") when you seek to initiate a transaction pursuant to which we, the Lender, will lend Fiat money or Stablecoins (as defined below) to you, and you will return Fiat money or Stablecoins to us in accordance with the terms hereof (each such transaction, a "Loan").

Each Loan is provided solely for use by you, and your application for a Loan is expressly conditioned on your consent to, and compliance with, these Loan Conditions. Please carefully review these Loan Conditions and use them to make informed decisions. By applying for a Loan, you agree to be bound by these Loan Conditions. If you do not agree to any of the provisions of these Loan Conditions you should not apply for a Loan. In addition, our [Terms of Use](#) (the "Network Terms"), and our [Privacy Policy](#) are incorporated into these Loan Conditions by reference.

# Definitions

Capitalized terms shall have the meanings assigned to them in these Loan Conditions, unless the context otherwise requires.

1. "**Account**" means your account with Celsius set up and maintained pursuant to the Network Terms.
2. "**Affiliate**" means an entity that owns or controls, is owned or controlled by, or is or under common control or ownership with a party, where control is defined as the direct or indirect power to direct or cause the direction of the management and policies of such party, whether through ownership of voting securities, by contract, or otherwise.
3. "**App**" means Celsius proprietary platform, accessible through our mobile and/or web-based applications
4. "**Collateral**" means an amount in Eligible Digital Assets, as provided by the Borrower to the Lender as security for a Loan.
5. "**CEL**" means Celsius' proprietary Digital Asset that is generated on the Celsius Network.
6. "**Digital Asset**" means a digital representation of value in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently from a central bank.
7. "**Eligible Digital Asset**" means the types of Digital Assets we may choose to accept and support from time to time, which are subject to change in our sole discretion, based on business and regulatory considerations.
8. "**Eligible Stablecoins**" means the types of Stablecoins we may choose to accept and support from time to time, which are subject to change in our sole

discretion, based on business and regulatory considerations.

9. "**Fiat**", when used in reference to money or currency, means any money that a recognized government declares as legal tender.

10. "**Loan Effective Date**" means the date upon which a Loan is granted.

11. "**Maturity Date**" means the date stated in the Term Sheet as the date of the last repayment of the Loan by Borrower.

12. "**Obligations**" means any debts, amounts owed, or liabilities incurred by you to Celsius.

13. "**Principal**" means the amount of a Loan granted under these Loan Conditions, as stated in the Term Sheet.

14. "**Stablecoin**" means a Digital Asset that is pegged to (its exchange rate is fixed to that of) a Fiat currency.

# Eligibility, Application

1. You must be a Celsius Account holder to apply for a Loan. You may apply for a Loan by providing all required information in the Loan application form available through the Account (the "**Application Form**"). Celsius shall have full and complete discretion whether to accept a Loan application, reject it, or offer you a Loan that is subject to different terms from those for which you applied. Approval of any Loan is subject to receipt by Celsius of any information and/or document required by Celsius.

2. A Loan is approved and is binding upon Celsius and you, only after Celsius has approved your loan application, a notification of which shall be delivered to you by electronic mail or within the App.

3. Celsius shall have the right to reject any loan application in its sole discretion (provided that it shall not do so on a discriminatory basis), to the extent permitted by applicable laws. The reasons for rejecting any loan application may include, but are not limited to, regulatory limitations, business considerations, previous interactions with the person applying for a loan (e.g. any inappropriate behavior, abuse of Celsius' services, previous termination or breach of any contract between Celsius and such person, etc.) and any suspicion Celsius may have that such person is or was involved in illicit activities of any kind or breached Celsius' Network Terms. The previous approval of any loan application does not guarantee the approval of any subsequent application.

4. Celsius' services, including the lending service, may not be available in all jurisdictions. Based on regulatory requirements, which may change from time to time and based on your location or residential address (or place of business), the services may not be available to you.

# Repayment

1. **Your obligation to repay the Principal amount upon the Maturity Date or earlier, in accordance with the terms hereof, shall be denominated in the same Fiat currency borrowed by you (including where Principal is disbursed in any Stablecoin pegged to such Fiat currency), and we may allow you to repay any loan Principal in such Fiat or in Eligible Stablecoins pegged thereto**. We may allow you to choose from a variety of supported repayment options, in our sole discretion, from time to time.

2. You shall repay the amount of the Principal upon the Maturity Date, or upon the earlier repayment or termination in accordance with the terms hereof.

3. If you fail to make any repayment of principal when due, in addition to any rights Celsius may have in connection with a Default Event, Celsius shall be entitled, and you hereby authorize Celsius, to:

- a). deduct from your Celsius Account any available Eligible Stablecoins to recover your repayment obligation in full or in part; and/or

- b). Liquidate the Collateral to recover your repayment obligation in full or in part, in accordance with the terms of Section 15 below.

## Interest

1. **You shall pay the interest on your Loan on a monthly basis**. Your interest obligations under any Loan shall be denominated in the same Fiat currency borrowed by you (including where Principal is disbursed in any Stablecoin pegged to such Fiat currency), and we may allow you to make any interest payment in the same Fiat currency, Eligible Stablecoins and other Eligible Digital Assets, such as BTC, ETH, and CEL. Celsius may change or limit the interest payment options available from time to time, with no prior notice.

2. Monthly payments of interest (and any other outstanding payment obligations, if applicable) shall be due and payable monthly on or before the calendar date the loan was initiated (e.g. if the origination date was September 23rd, interest will be due on or before the 23rd of each month for the duration of the loan, or any outstanding interest payment obligation shall be considered late).

3. If you fail to make any payment of interest when due, in addition to any rights Celsius may have in connection with a Default Event, Celsius shall be entitled, and you hereby authorize Celsius, to:

- a). Deduct from your Celsius Account any available, Eligible Digital Assets to recover your interest payment obligation in full or in part; and/or

- b). Liquidate the Collateral to recover your payment obligation in full or in part, in accordance with the terms of Section 15 below.

4. Your failure to pay any Principal, Interest, or other Obligations when due shall constitute a Default Event, and Celsius shall not be obligated to take any of the actions mentioned in Sections 3.3 or 4.3 above. The responsibility to cure any failure to timely pay your Obligations shall be solely yours.

## Term

1. Celsius Loans are granted for a fixed period of time to be agreed upon between Celsius and you and indicated in the Application Form (the "**Loan Term**"), unless earlier terminated or repaid in full in accordance with the terms hereof.

2. Celsius may offer Loan Terms of various durations for you to choose from, and may change or limit duration offerings in its sole discretion.

## Early Repayment

1. You may request an early repayment of your Loan in full, including any outstanding interest obligation (the "**Early Repayment**") by notifying Celsius, or, if available, through your Account.

2. Celsius will issue to you a settlement notice, detailing the outstanding Obligations and other relevant details. By settling your Obligations following an Early Repayment request, you accept all the terms specified in Celsius' settlement notice. If you have any comments or reservations regarding such terms, please inform Celsius in writing prior to delivering any Early Repayment.

3. **When making any Early Repayment, you will be charged the next monthly interest payment in full (e.g. when closing your Loan after 7 months and 10 days, you will be charged the full interest amount for the 8th month)**.

4. **In any event of Early Repayment, liquidation of Collateral (further explained in Section 15 below), or otherwise termination by you prior to the lapse of six (6) months of the Loan Effective Date, you will be nevertheless obligated to pay Celsius the interest for the full first six (6) month period**.

5. Celsius may request an Early Repayment by giving written notice to you, stating the amount it wishes you to repay. Upon such Celsius' request, you shall have thirty (30) days to make the Early Repayment as requested, or otherwise, Celsius will be entitled to terminate your Loan with immediate effect.

6. Should you make a full Early Repayment of your Loan in accordance with the terms hereof, Celsius shall release the Collateral to your Celsius Account, within ten (10) days of your full repayment. Upon Celsius' release of the Collateral, the Loan shall be immediately and automatically terminated.

# Termination

1. Both you and/or Celsius may, for any or no reason, terminate the Loan with thirty (30) days prior notice in writing to the other party.

2. Celsius may, upon the occurrence of a Default Event, terminate the Loan with immediate effect.

3. Once the Loan is terminated, the Principal amount and all outstanding Obligations shall become immediately due and payable. Should you fail to repay the full outstanding amounts within seven (7) days, Celsius shall be entitled to liquidate the Collateral, in accordance with the terms of Section 15 below.

# Currencies

1. Loan Principal disbursements are made in Fiat currency, or in Eligible Stablecoins. Loans shall be secured at all times by Eligible Digital Assets posted as Collateral. Celsius may change or limit the types of Digital Assets it accepts or supports at any time and without notice, provided that such changes or limitations will not affect outstanding Loans that were made prior to the date of such change.

2. Currency Exchange Risk. If Borrower's settlement currency is not USD, you agree and acknowledge that you will bear any and all risks associated with the exchange, settlement, or fluctuation of currency associated with currency exchange risk. You waive and release Lender and its subsidiaries from any potential claims arising out of the currency exchange risk.

# Collateral

1. The Principal will only be delivered to you pursuant to your provision of Collateral in the amount of Eligible Digital Asset agreed upon between you and Celsius, from your Celsius Account. The amount of Collateral will be calculated based on the Fiat amount of your Loan Principal, in such a way to represent a Loan-to-Value Ratio ("LTV") as agreed upon in the Application Form, as of the Loan Effective Date.

2. The LTVs offered by Celsius shall be subject to Celsius' policies, which are subject to change from time to time. We may offer or accept a range of LTVs, and we will not be obligated to match any LTV offered to or accepted by any other borrower or in relation to any previous Loan.

3. Digital Assets posted as Collateral shall be the exclusive property of Celsius, and you grant Celsius your explicit consent to use such Digital Assets in accordance

with Section 20 below, for the full term during which such Digital Assets are posted as Collateral.

4. Until the Loan is repaid in full and the Collateral is released and returned to your Celsius Account, you will not be able to withdraw, transfer or transact any of the Digital Assets which are posted as Collateral.

# Return of Collateral

Within ten (10) days of your full repayment of the Principal amount and all outstanding Obligations, Celsius shall release all remaining Collateral to your Celsius Account.

# Margin Calls

1. At all times throughout the Loan Term, you must maintain an LTV no higher than that stated in the Application Form. Should the Fiat value of your Collateral (the "Collateral Value") decrease (e.g. where the Digital Asset posted as Collateral decrease in Fiat value), making your LTV rise, Celsius may require you to take the necessary actions to decrease your LTV back to its original level ("Margin Call").

2. A Margin Call shall be initiated by Celsius by contacting you and requiring you to perform one of the actions below within the timeframe mentioned in the Margin Call:

- a). Furnish additional Eligible Digital Assets of the same type as posted by you as Collateral (the "Additional Collateral"); or

- b). Repay Celsius a portion of your Loan Amount as Celsius instructs you.

3. Any failure by you to comply with the Margin Call requirement within the timeframe mentioned in the Margin Call shall constitute a Default Event, and Celsius shall be authorized to exercise any of its rights related to the Collateral in whole or in part. Celsius shall further be entitled, and you hereby authorize Celsius, to take the required Additional Collateral, in full or in part, from Eligible Digital Assets available in your Celsius Account, by providing you notice of the same. Celsius' authority as above shall not release you from complying with the Margin Call requirements, which shall be your sole responsibility.

4. Under certain circumstances, e.g. extreme market volatility or low liquidity in the Digital Asset comprising your Collateral, Celsius may take additional measures to ensure that it can be reimbursed by your Collateral, including but not limited to shortening the timeframe of any Margin Call, take the required Additional Collateral, in full or in part, from Eligible Digital Assets available in your Celsius Account, or limiting, delaying or preventing withdrawal of such

Eligible Digital Assets until the Margin Call is complied with. Celsius may provide you with notice of any such action in real time or after the fact.

5. We will generally provide a timeframe of twelve (12) hours for you to react to a Margin Call, but we shall not be obligated to do so. For example, where the market continuously drops dramatically, we may provide shorter deadlines. Celsius will undertake reasonable efforts to provide you with alerts regarding market volatility which may bring about such occurrences, but we may not be able to do so and assume no responsibility in this regard.

6. Regardless of whether or not a Margin Call was made, if your Collateral Value continues to drop, raising your LTV over eighty percent (80%), we may, and you hereby explicitly authorize us to liquidate the Collateral and close out your Loan. Celsius will undertake reasonable efforts to provide you with a Margin Call or alerts regarding market volatility which may bring about such occurrences, but we may not be able to do so and assume no responsibility in this regard.

7. Regardless of positive market spikes or changes, Celsius may recalculate the Additional Collateral owed at the time of your compliance with the Margin Call, however, without explicit written instructions to the contrary, the Borrower will be obligated to the amount and rate at the time of the original Margin Call.

## Refinancing

1. If during the Loan Term, your LTV drops (e.g. where the Digital Asset posted as Collateral increase in Fiat value) to under one half (1/2) of the initial LTV stated in the Application Form, you will be allowed to request the refinancing of your Loan, by any of the following manners:

- a). Adjust your Collateral, by removing its excess to your Celsius Account; and/or

- b). Borrow additional Fiat Money or Stablecions against the same Collateral.

(Each, a "Refinancing Request").

2. Celsius will NOT be obligated to accept any Refinancing Request. If Celsius approves your Refinancing Request, the conversion rate applicable to such refinancing will be the ten (10) days low rate for the applicable Virtual Asset.

3. Any Refinancing Request will only be binding on Celsius upon Celsius' notice to you in writing of its acceptance of your request.

4. Once a Refinancing Request is accepted by Celsius, you will not be able to make another Refinancing Request for a period of thirty (30) days of the refinancing.

## Loan Consolidation

1. At the Lender's discretion and approval, Borrower may request to consolidate multiple loans into a single loan in the following manner:

   - a). The loans are the same collateral type;

   - b). The new maturity date for the consolidated loan shall be the latest date from the loans being consolidated;

   - c). Interest payments will accrue and the exchange rate will be calculated at the time of the loan consolidation.

## Default Events

1. The occurrence of any of the following events constitutes an event of default under the Loan (a "Default Event"):

- a). You fail to timely make a payment on account of any of your outstanding payment obligations in accordance with the payment schedule agreed in the Application Form;

- b). You fail to respond to a Margin Call within the deadline provided therein;

- c). You breach any term of these Loan Conditions, including any of your obligations, covenants or undertakings, or any of your representations or warranties are or become untrue.

- d). You breach any of your obligations in respect of the Loan, including but not limited to any obligation to pay any amount whatsoever (principal, interest or other) to Celsius in respect of the Loan;

- e). You breach another obligation in connection with your Account or relationship with Celsius (including any obligation resulting from the Collateral);

- f). You do not pay any amount owed to a third party under a contract with such third party in connection with your financial debt, or such financial debt becomes due and payable before its contractual maturity;

- g). You are unable to pay your debts as they become due, or you enter into an agreement or arrangement with any of your creditors related to the restructuring of your debts, or you become subject to any process to be declared bankrupt or to appoint a curator, administrator, trustee or liquidator over your assets;

- h). All or part of the Collateral is encumbered in favor of any person or entity other than Celsius, without Celsius' prior written consent;

- i). It is or becomes illegal for you to perform your obligations under the Loan, or your Account;

- k). It is or becomes illegal under any applicable regulatory framework for Celsius to perform its obligations or exercise its rights under the Loan or your Account, or regulatory or legal circumstances otherwise make the continuation of the relationship hereunder risky or detrimental to Celsius, each as Celsius may reasonably determine;

- j). Celsius is unable to contact you (or you fail to meaningfully respond to any communications from Celsius) in accordance with your most recent instructions for providing notices;

- l). A significant deterioration (determined in Celsius' sole reasonable discretion) in your business or financial position occurs during the Loan Term; or

- m). These Loan Conditions cease to be in full force and effect, or become unenforceable, at any time and for any reason.

2. Immediately upon Celsius becoming aware of a Default Event, Celsius may, in its sole discretion, take any of the actions specified below:

- a). Terminate the Loan;

- b). Declare payable any principal amount due in respect of the Loan, as well as the interest accrued and any other amount due in respect of the Loan;

- c). Realize all or part of the Collateral in accordance with the applicable contractual terms; and/or

- d). Take any other action Celsius reasonably deems legal and necessary to protect its rights and interests.

## Liquidation of Collateral

1. If Celsius liquidates any or all of your Collateral pursuant to any provision of these Loan Conditions (each, a "Liquidation Event"), the liquidated Fiat amount shall be first used by Celsius to cover your Obligations to Celsius (including any outstanding interest payments and Loan Amounts). Provided that no additional Obligations remain outstanding, and no other issues (e.g. any dispute or other legal issues) would require, in Celsius' reasonable discretion, to maintain the remaining Collateral - Celsius shall release the remaining Collateral back to your Celsius Account.

2. You understand and acknowledge that any Liquidation Event may cause Celsius to incur costs and expenses (whether directly or indirectly), including but not limited to exchange fees, gas fees and legal expenses. Any such costs and

expenses shall be deducted from the liquidated Collateral, up to a cap of three percent (3%) of the Fiat value of the liquidated Collateral. Celsius shall not be obligated to provide you with any proof of the costs and expenses incurred by it.

3. Celsius will not be obligated to provide any notice prior to any Liquidation Event. After a Liquidation Event occurs, Celsius will provide you with a notice detailing such liquidation, and the consequential status of your Loan (including any changes to the outstanding Loan amount, interest, etc., or the closure of your Loan, if applicable).

# Costs

1. To the extent permitted by law, Borrower agrees to pay and reimburse Celsius for any and all costs and expenses, including collection expenses, court costs, and reasonable attorneys' fees, incurred by Lender in the collection or enforcement of these Loan Conditions. The Borrower also agrees to pay any and all withholding taxes applicable to the Collateral, including any withholding taxes on any amounts so paid and, upon written request by Lender, shall furnish Lender with evidence of payment thereof.

2. Celsius has the right to offset any Obligation against any funds or obligations owed to you under any contract, and regardless of the currency of such Obligation, all amounts owed by you to Celsius must be paid to Celsius without invoking any offset or counterclaim, unless otherwise specifically authorized by these Loan Conditions.

3. If Celsius must incur any additional cost to maintain or finance your Account and/or Loan pursuant to a legal or regulatory requirement, you agree to pay Celsius the amount that we certify is necessary to offset this increased cost.

# Interest Rates

1. The annual interest rate applicable to the Loan is as prescribed in the Application Form. Interest rates offered by Celsius are determined by Celsius, in its sole discretion, based on the Principal amount, the LTV, market demand, and risk management (among other considerations). Interest rate information is available at https://celsius.network/borrow-dollars-using-crypto-as-collateral/, and may change from time to time. Interest is presented in an annual percentage, and payable monthly, such that the monthly interest payments remain fixed throughout the Term of the Loan (unless any changes to the terms of the Loan occur throughout its Term). In any event the interest rate is limited by applicable laws and regulations in such a way that the agreed-upon rate would not be compliant therewith, the effective interest rate shall be amended to the legal rate closest to the agreed-upon rate.

2. Discounts for interest payments paid in CEL are subject to change without prior notice, and may not be available to all Borrowers. The rates and benefits are published on the Celsius website: https://celsius.network/cel-token-explained/

# Borrower's Representations

You hereby represent and warrant to us that, as of the Loan Effective Date and throughout the Loan Term:

1. You are the sole owner of all Digital Assets used in connection with the Loan (including the Collateral and any Margin Call delivery);

2. You are the sole beneficial owner of the Celsius Account, digital wallet and/or bank account to which the Principal is delivered;

3. You represent and warrant that all Digital Assets used in connection with the Loan are not owned, controlled, received from, or are held for or on behalf of, any individual or legal entity subject to any sanctions, embargos or trading restrictions administered or enforced by any national or international government or organization;

4. You are validly authorized to carry out transactions using such Digital Assets, and that all transactions initiated with your Account are for your own Account and not on behalf of any other person or entity;

5. All Digital Assets used in connection with the Loan are, and will continue to be for the duration of the Term, free from any claims, indebtedness, liens, or third-party interests;

6. There are no actions, suits, litigation or proceedings, at law or in equity, pending by or against Borrower before any court, administrative agency, or arbitrator, which might affect these Conditions, the Loan or the Collateral;

7. Borrower is not subject to any laws or regulations that limit its ability to borrow funds, incur debt or grant Lender the rights granted hereunder, or which may otherwise render all or any portion of these Conditions unlawful, invalid or unenforceable;

8. Neither Borrower, any of its affiliates nor any of their respective officers, directors, brokers, employees, or agents: (i) has violated any anti-terrorism, anti-money laundering or counter-terrorism financing, anti-bribery or anti-corruption laws or regulations of any jurisdiction: (ii) has engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering; (iii) is publicly identified on

the most current list of "Specially Designated Nationals and Blocked Persons"
published by the Office of Foreign Assets Control of the U.S. Department of the
Treasury, the UK HM Treasury's Office for Financial Sanctions Implementation,
the EU Service for Foreign Policy Instruments, or other national, multinational
or international organization ("Sanction Lists"), or resides, is organized or
chartered, or has a place of business in a country or territory subject to any
Sanction List or embargo programs: (iv) is publicly identified as prohibited from
doing business with the United States or the United Kingdom under any
applicable law, order or regulation; (v) conducts any business or engages in
making or receiving any contribution of goods, services or money to or for the
benefit of any person described in clauses (iii) or (iv) above; (vi) deals in, or
otherwise engages in any transaction related to, any property or interests in
property blocked pursuant to any anti-terrorism law; or (vii) engages in or
conspires to engage in any transaction that evades or avoids, or has the
purpose of evading or avoiding, or attempts to violate, any of the prohibitions
set forth in any anti-terrorism law.

9. All Digital Assets used in connection with the Loan were obtained by you lawfully
   and from a legitimate source, and are not the proceeds of any illicit activities by
   you or any other person.

10. All information provided by you in connection with the Loan or with your
    Account is true, complete, accurate and not misleading;

11. The Loan is requested, and you will only use the Principal, for lawful purposes
    and in full compliance with all laws and regulations applicable to you in any
    jurisdiction. Without derogation from the generality of the above, you represent
    and warrant that you shall not, and shall not allow any third party to, use any
    Principal for any fraudulent scheme, tax evasion, money laundering or financing
    of terror, market manipulation, wash trading, insider trading or any other
    misconduct;

12. Borrower acknowledges that Lender is not, and does not act in the capacity of,
    Borrower's agent, advisor or loan broker, did not and will not provide Borrower
    with any professional advice (including financial, legal or tax advice), and
    Borrower did not rely on Lender when assessing the appropriateness of any
    Loan to Borrower and its financial circumstances and needs.

13. Borrower shall not use the Principal, or any other funds or assets it may obtain
    from Lender in connection with any Loan, to engage in any:

- a). transaction on a leveraged, margined, or financed basis, unless entered into
  in accordance with all applicable laws and regulations, including, where
  applicable, on a regulated market (e.g. securities or commodities exchange);

- b). commodities transaction, including the purchase of any Digital Asset or any derivative thereof, unless Borrower obtains actual delivery of the underlying within the period of time prescribed in the applicable rules and regulations applicable to Borrower;

- c). purchase of Digital Assets on or via the Celsius platform, including from third party fiat onramp providers whose services are offered on the Celsius platform, including but not limited to using Celsius' in-app 'swap' feature, where applicable. Borrower acknowledges that any transaction not in compliance with its representations in this Section 18.1.13 shall constitute a breach of these Loan Conditions, are strictly prohibited and discouraged by Lender, and will be at the sole risk and liability of Borrower.

# Conditions to Lender's Obligations

Lender's obligation to advance funds or release Digital Currency used as Collateral under these Loan Conditions shall be subject to the satisfaction of all of the conditions set forth in these Loan Conditions and the additional documents provided by or executed by Borrower in connection with the Loan ("Related Documents"), including, without limitation, the following specific conditions precedent:

1. Related Documents. Borrower shall electronically execute all Related Documents, in form and substance acceptable to Lender.

2. Representations and Warranties. Borrower's representations and warranties set forth in these Loan Conditions and the other Related Documents are true and correct in all material respects as of the date of their making and throughout the Term.

3. No Default Event. There shall not exist at the time of the advance, and after giving effect thereto, a condition which would constitute an Default Event under these Loan Conditions.

4. Collateral. Borrower shall have the Digital Asset to be posted as Collateral available in Borrower's Celsius Account (or otherwise add such Digital Assets thereto prior to the provision of the Loan principal), free and clear of any third party claims, interests or charges.

5. Notwithstanding the above, Borrower's failure to meet any of the conditions set forth in this Section 20 shall not provide any basis for Borrower to contest the enforceability of the Loan.

# Consent to Celsius' Use of Your Digital Assets

In consideration for the Loan, you grant Celsius and any of its Affiliates the right, subject to applicable laws, without further notice to you, to hold the Digital Assets

provided as Collateral in Celsius' name or in another name, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets at Celsius' own risk. You acknowledge that, with respect to Digital Assets used by Celsius pursuant to this paragraph:

1. You will not be able to exercise any rights of ownership;
2. Celsius may receive compensation in connection with its using the Digital Assets in its business, to which you have no claim or entitlement; and
3. You will not be entitled to receive any benefits granted to the holder of any Digital Asset from time to time, including any airdrops, New Currency resulting from a Hard Fork (as these terms are defined in the Network Terms).

## Pledge Agreement

Borrower hereby pledges in favor of Celsius and its Affiliates any and all assets regardless of their form or kind that currently are (or which may be in the future) held in Borrower's Celsius Account(s) as collateral for any present or future claims, including any interest, commissions, fees or other charges, that Celsius may have against the Borrower, including as a result of third-party claims related to the Borrower's Account (the "Right of Pledge"). The Right of Pledge granted to Celsius hereunder shall extend to any and all present or future interest, dividends, proceeds, subscription rights or any other matured rights deriving from, or appurtenant to, the pledged assets. The Right of Pledge shall extend in particular to:

1. Any and all assets currently or subsequently held in Borrower's Account;
2. Any and all assets, claims, cash or other objects and rights that have been (or which may be in the future) transferred in or credited to Borrower's Account. In the event the pledged assets are replaced by other assets, the latter shall also be subject to the Right of Pledge without further action.

Borrower authorizes Celsius to carry out all formalities that may be necessary for Celsius to exercise its rights as pledgee, including its registration in public records and undertakes to assist Celsius in doing so, upon Celsius' reasonable request. The Right of Pledge shall remain valid independently of any other present or future security interests or guarantees held by Celsius, and shall only expire upon Celsius' reimbursement in full by Borrower. Celsius shall be entitled to realize all or part of the pledged assets without having to serve formal notice.

## Conversion Rates

Unless otherwise provided herein, any conversion between a Digital Asset and another Digital Asset or Fiat currency shall be made by us in accordance with the

rates and prices applicable at the actual time of conversion. Applicable rates are indexed to those used by industry-leading platforms, as we may choose to use from time to time, in our sole discretion. We currently use rates provided by BitGo - http://www.bitgo.com/ , CMC Markets - https://coinmarketcap.com/ , and our own rates as determined by our liquidity providers. We may change these rate sources at any time and without giving prior notice or updating these Loan Conditions, and you shall not have any claims regarding our choice of rate sources or rates made available by any third party.

## Taxes

It is your sole responsibility to determine what, if any, taxes apply to the payments you make or receive, and to collect, report, and remit the correct tax to the appropriate tax authority. We may deduct or make any tax withholdings or filings that we are required by law to make, but we are not responsible for determining whether taxes apply to your Loan, or for collecting, reporting, or remitting any taxes arising from any Loan, its payment or repayment. You are responsible for complying with applicable laws. You agree that Celsius is not responsible for determining whether or which laws may apply to your transactions, including tax law.

## Indemnification and Limitation of Liability; Attorney's Fees and Costs for Lawsuit.

You agree to indemnify and hold harmless Celsius and its employees, managers, partners, and Affiliates from any losses, damages, suits, and expenses, of any kind, including reasonable attorneys' fees, that we incur in connection with or arising out of your use of the Principal, or our activities in connection with the Loan, and for your violation of any law, regulation, order or other legal mandate, or the rights of a third party, or any act or omission by you or any person acting on your behalf in connection with the Loan, regardless of whether the specific use was expressly authorized by you. You agree to comply with applicable law and not to use the Principal for any transaction or activity that is illegal or violates applicable laws, regulations or rules. Please note, your agreement to comply includes any and all applicable laws and regulations of the United States, as well as of your place of residency and any law applicable to you.

We are not liable to you for claims, costs, losses or damages caused by an event that is beyond our reasonable control (e.g. the acts or omissions of third parties, natural disasters, emergency conditions, government actions, equipment or communications malfunction). We are not liable for special, incidental, exemplary, punitive or consequential losses or damages of any kind. Except for any setoff permitted by applicable law, any Obligations of ours may be satisfied solely from the assets of Celsius. Without limiting the generality of the foregoing, in no event shall you have any recourse, whether by setoff or otherwise, with respect to our

Obligations, to or against any assets of any person or entity other than Celsius for Celsius' Obligations, including, without limitation, any member, Affiliate, investor, employee, officer, agent or advisor of Celsius.

Celsius reserves the right to withhold or delay the withdrawal of funds or assets belonging to you if you fail to comply with the Loan Conditions. Our total aggregate liability to you for any claim is limited to the face value of the applicable item or transaction or the actual value of any funds not properly credited or debited.

## Miscellaneous

1. **Transferable Record**. Borrower expressly agrees that these Loan Conditions constitute a "transferable record" as defined in applicable law relating to electronic transactions and that it may be created, authenticated, stored, transmitted and transferred in a manner consistent with and permitted by such applicable law.

2. **Lender's Affiliates**. Any and all rights and obligations of Lender under these Loan Conditions may be exercised or executed by Lender or any of its affiliated entities (which includes, for the avoidance of doubt, any entity that directly or indirectly controls, or is controlled by, or is under common control with, Borrower, including affiliated entities of such Lender's affiliated entities (each, a "Lender's Affiliate"). Without limitation to the foregoing, Lender's Affiliates may receive, hold, act as owners and exercise any rights in connection with any Collateral, make and receive payments due hereunder, act to enforce legal rights of Lender hereunder and require Borrower to perform any of its obligations hereunder. Lender shall not be required to inform Borrower of any such action taken or to be taken by any Lender's Affiliate. The Parties explicitly agree that each and any of Lender's Affiliates shall be regarded as third party beneficiaries to these Loan Conditions, for all intents and purposes, and expressly warrant not to bring any claim to the contrary.

3. **Bankruptcy**. The rights and priorities set forth in these Loan Conditions shall remain binding irrespective of the terms of any plan of reorganization in any proceeding commenced by or against Borrower under any provision of the United States Bankruptcy Code (11 U.S.C. § 101, et seq.), as amended, and any successor statute (the "Bankruptcy Code") or under any other federal, state or foreign bankruptcy or insolvency law, including assignments for the benefit of creditors, formal or informal moratoria, compositions, extensions generally with its creditors, or proceedings seeking reorganization, arrangement, or other similar relief, and all converted or succeeding cases in respect thereof or other provisions of the Bankruptcy Code or any similar federal or state statute.

4. **Usury Savings Clause**. It is the intent of Lender and Borrower to comply at all times with applicable usury laws. If at any time such laws would render usurious

22-10964-mg    Doc 2143    Filed 02/28/23    Entered 02/28/23 13:52:54    Main Document
Pg 46 of 123

any amounts called for under these Loan Conditions or any Related Document, then it is Borrower's and Lender's express intention that such excess amount be immediately credited on the principal balance of the Loan (or, if this Loan has been fully paid, refunded by Lender to Borrower, and Borrower shall accept such refund), and the provisions hereof and thereof be immediately deemed to be reformed and the amounts thereafter collectible hereunder reduced to comply with the then applicable laws, without the necessity of the execution of any further documents, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. To the extent permitted by law, any such crediting or refund shall not cure or waive any default by Borrower under these Loan Conditions or any of the other Related Documents. If at any time following any such reduction in the interest rate payable by Borrower, there remains unpaid any Principal due under these Loan Conditions and the maximum interest rate permitted by applicable law is increased or eliminated, then the interest rate payable hereunder shall be readjusted, to the extent permitted by applicable law, so that the total dollar amount of interest payable hereunder shall be equal to the dollar amount of interest which would have been paid by Borrower without giving effect to the reduction in interest resulting from compliance with the applicable usury laws theretofore in effect. Borrower agrees, however, that in determining whether or not any interest payable with respect to a Loan under these Loan Conditions or any of the other Related Documents is usurious, any non-principal payment (except payments specifically stated in these Loan Conditions or in any other Related Document to be interest), including, without limitation, prepayment fees and late charges, shall be deemed to the extent permitted by law, to be an expense, fee, premium or penalty rather than interest.

5. **USA Patriot Act Notice**. Lender hereby notifies Borrower that, pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "Act"), it may be required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

6. **Truth in Lending Act Disclosures**. Borrower, if a U.S. person or otherwise required to pay taxes in the U.S., acknowledges that it has been provided with the requisite Truth-in-Lending disclosure statement, in accordance with the Federal Truth in Lending Act.

7. **Military Lending Act**. The Military Lending Act (MLA), 10 U.S.C. § 987, provides protections for certain members of the US Armed Forces and their dependents ("Covered Borrowers"), inter alia relating to extensions of consumer credit. The provisions of this section apply to Covered Borrowers. In general, the cost of consumer credit for Covered Borrowers may not exceed an annual percentage rate of thirty-six percent (36%). This rate must include, as applicable to the

credit transaction or account: (i) the costs associated with credit insurance premiums; (ii) fees for ancillary products sold in connection with the credit transaction; (iii) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (iv) any participation fee charged (other than certain participation fees for a credit card account).

# General

1. **Assignment**. Borrower shall not have the right to assign Borrower's rights under these Loan Conditions or any interest therein, without the prior written consent of Lender. All representations, warranties, covenants and agreements by or on behalf of Borrower contained in these Loan Conditions or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns.

2. **Caption Headings**. Caption headings in these Loan Conditions and the Related Documents are for convenience purposes only and are not to be used to interpret or define the provisions of these Loan Conditions or the Related Documents.

3. **No Waiver**. No behavior by either party hereto shall be deemed to constitute a waiver of any rights according to these Loan Conditions, and/or a waiver of or consent to any breach or default in respect of any of the terms hereof, or a change, invalidation or addition to any term, unless expressly made in writing.

4. **Amendment**. No alteration, amendment, modification, termination, discharge or waiver of any provision of these Loan Conditions or any other Related Document, or consent to any departure by either party therefrom, shall be effective unless given in writing and signed by both parties

5. **Severability**. If any part or parts of these Loan Conditions shall be held unenforceable for any reason, the remainder of these Loan Conditions shall continue in full force and effect. If any provision of these Loan Conditions is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

6. **Notice**. Any notice required or otherwise given pursuant to these Loan Conditions shall be in writing and sent to the electronic mail address listed in the preamble to the Agreement (unless otherwise required by applicable law in which case it will be mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service. Either party may change such addresses from time to time by providing notice as set forth above.

7. **Counting of Days**. Except where otherwise specifically provided, any reference in these Loan Conditions to a period of "days" means calendar days and not

business days.

8. **Governing Law; Acceptable Forums; Waiver of Jury Trial**.THESE LOAN CONDITIONS WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS. BORROWER UNDERSTANDS THAT BORROWER'S ACCEPTANCE OF THE APPLICABILITY OF DELAWARE LAW AND VENUE ARE A MATERIAL FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THESE LOAN CONDITIONS. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of these Loan Conditions, shall, if Lender so elects, be instituted in any court sitting in Delaware. Borrower agrees that the above courts are convenient to it, and submits to the jurisdiction of such courts and waives any and all objections to jurisdiction or venue. Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to these Loan Conditions or any Related Document or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory).

9. **Waiver of Class Action**. To the extent permissible by law, the parties hereto irrevocably agree that all claims must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class, collective action, or representative proceeding.

10. **Counterparts; Electronic Acceptance**. these Loan Conditions and any signed agreement or instrument entered into in connection with these Loan Conditions, and any amendments hereto or thereto, may be executed in one or more counterparts, all of which shall constitute one and the same instrument. Any such counterpart, to the extent delivered by means of a facsimile machine or by .pdf, .tif, .gif, .jpeg or similar attachment to electronic mail (any such delivery, an "Electronic Delivery") shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. No Party shall raise the use of Electronic Delivery to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of Electronic Delivery as a defense to the formation of a contract, and each such party forever waives any such defense, except to the extent such defense relates to lack of authenticity.

**EXHIBIT C**

**Email to Celsius requesting information to closure my Borrow Loan and return my Coins**
**June 10, 2022 (8:17pm EDT)**



*Time within the Exhibit shows Japan time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT D**

**Celsius Email confirmation of deposit to be used to paid off my Borrow Loan -
June 12, 2022 (12:01am EDT)**



*Time within the Exhibit shows Japan time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT E**

**Email correspondence acknowledging to closure of my Borrow Loan -
June 12, 2022 (12:03am EDT) // June 12, 2022 (1:43am EDT) //**



**Chanda Shobert** (Celsius Network)

Jun 12, 2022, 17:43 UTC

Hi Georges,

Thank you for your reply!

We closed the loan and unlocked the collateral. You can see the coins are already available in your Celsius wallet :)

Feel free to let us know if there is anything else we can help with.

Thank you and have a great day!
Chanda

*Time within the Exhibits show Japan and UTC times and have been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT F**

**Borrow Loan Closure with 26.53294BTC Unlocked- June 12, 2022**



**EXHIBIT G**

**Celsius Website Screenshot of BTC Transaction Completed - June 12, 2022 (6:28pm EDT)**



*Time within the Exhibit shows as Japan time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT H**

**Email from Celsius verifying that all KYC requirements had been provided and completed and that withdrawal had been initiated. - June 12, 2022 (9:58pm EDT)**



**Jasmine Wyche** (Celsius Network)

Jun 13, 2022, 01:58 UTC

Hello Georges,

Thank you for successfully providing the video and document needed to complete this request.

We have initiated the withdrawal for you, the funds should be in the address specified within up to 24 hours and occasionally longer in rare cases. In addition, process time may be affected by the blockchain congestion.

If the coins have disappeared from your wallet, but have not yet arrived in the destination wallet, do not worry. This is normal, it has to do with our internal multi-step withdrawal process.

Please let us know if we can be of further assistance

Best Regards,
Corporate Agent | Celsius
Wish to know more?
Check out Celsius Help Center https://support.celsius.network/hc/en-us

*Time within the Exhibit shows as Coordinated Universal Time time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT I**

**Celsius Website Screenshot of BTC Transaction In Progress - June 12, 2022 (6:33pm EDT)**



*Time within the Exhibit shows as Japan time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**Celsius Mobile App Screenshot of BTC Transaction Pending - June 12, 2022 (6:33pm EDT)**



**EXHIBIT J**

**Email from Celsius reconfirming withdrawal had been initiated. - June 13, 2022 (4:16pm EDT)**



Jasmine Wyche (Celsius Network)
Jun 13, 2022, 20:16 UTC

Hello Georges,

Thank you for reaching back out.

Yes, we have initiated the withdrawal for you.

Please let us know if we can be of further assistance, have a great day.

Best Regards,
Corporate Agent | Celsius
Wish to know more?
Check out Celsius Help Center https://support.celsius.network/hc/en-us

*Time within the Exhibit shows as Coordinated Universal Time time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT K**

**June 12, 2022 Celsius Mobile App Screenshot of my Earn Account Balance and a BTC balance of 0.000001BTC after pre-Pause withdrawal request of June 12, 2022**



**EXHIBIT L**

**Celsius Website Screenshot of the Balance of my Earn Account - June 18, 2022**



*A - annotation has been added and shows the value of my Earn Account after I deposited 250K USDT into my Earn Account that was used to pay off my Borrow Loan.

**B** - annotation has been added and shows the value of the released 26.23294BTC Collateral moved to my Earn Account after the Closure of my Borrow Loan.

**C** - annotation has been added and shows the value of my Earn Account after I exercised my Call Option and that Celsius moved my Coins out of my Earn Account.

*$4,126.78 was the value of the assets that remained in my Earn Account as of June 18, 2022.

**EXHIBIT M**

**October 7, 2022 Celsius Mobile App Screenshot of my Earn Account Transactions now showing a BTC the 26.533016BTC transaction as canceled**



# EXHIBIT N

**October 12, 2022 Celsius Mobile App Screenshot of my Earn Account Balance now showing a BTC balance of 26.533016BTC**



**EXHIBIT O**

**Jan 21, 2023 Celsius internal transaction data data showing Withdrawal of 26.532BTC Confirmed "No" as of June 12, 2022 (6:33pm EDT)**

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Internal id | Date and time | Transaction | Coin type | Coin amount | USD Value | Original F | Rev | Confirmed |
| 2 | ecca73d1-1146-4bca-8d33-c7d69f4dc52c | 07/14/22 0:00 | Reward | ETH | 0.001852 | 2.06217929 | ETH | | Yes |
| 3 | c511e756-8147-4827-a5a9-61abf66e0108 | 07/14/22 0:00 | Reward | MCDAI | 0.000026 | 2.615E-05 | MCDAI | | Yes |
| 4 | f64ee008-ba27-4439-874d-c7b965101d7f | 07/14/22 0:00 | Reward | CEL | 0.002013 | 0.001568 | CEL | | Yes |
| 5 | e9336893-767c-4009-8d68-beb3cf1765aa | 07/14/22 0:00 | Reward | BTC | 0.000000 | 0.00354919 | BTC | | Yes |
| 6 | 068107e9-d14d-4372-9d65-e2eb02a83d8e | 07/14/22 0:00 | Reward | USDT ERC | 2.176395 | 2.1763954 | USDT ERC20 | | Yes |
| 7 | 84a9c89b-3824-43ba-a860-faf677ce9dbf | 07/08/22 5:00 | Reward | CEL | 0.002430 | 0.00176889 | CEL | | Yes |
| 8 | 3f005b22-fab6-442e-a789-b53c7b034b24 | 07/08/22 5:00 | Reward | MCDAI | 0.000032 | 3.1579E-05 | MCDAI | | Yes |
| 9 | c9f75503-7601-44a3-8774-c04e486553da | 07/08/22 5:00 | Reward | USDT ERC | 2.626994 | 2.62699355 | USDT ERC20 | | Yes |
| 10 | 63cfeaee-3feb-4863-9549-e114eeeabec6 | 07/08/22 5:00 | Reward | BTC | 0.000000 | 0.00465686 | BTC | | Yes |
| 11 | ba4ea963-620c-4000-bd61-d57a8d8b3d81 | 07/08/22 5:00 | Reward | ETH | 0.002236 | 2.80557331 | ETH | | Yes |
| 12 | ab4560a0-b225-465a-b2bb-b3171de83fcc | 07/01/22 5:00 | Reward | USDT ERC | 2.623533 | 2.62353251 | USDT ERC20 | | Yes |
| 13 | f23d292b-ff64-4d56-ba95-63d493b20a3b | 07/01/22 5:00 | Reward | BTC | 0.000000 | 0.00410619 | BTC | | Yes |
| 14 | f414ea9f-3ac8-45d2-ad7c-371fcf313378 | 07/01/22 5:00 | Reward | MCDAI | 0.000032 | 3.1497E-05 | MCDAI | | Yes |
| 15 | 537250c8-d5f6-4a1f-a7b6-7a9c793ca3df | 07/01/22 5:00 | Reward | CEL | 0.002428 | 0.00153442 | CEL | | Yes |
| 16 | 58ef881e-e751-4e0b-b66f-208b8e10f284 | 07/01/22 5:00 | Reward | ETH | 0.002233 | 2.34505987 | ETH | | Yes |
| 17 | b1e61f0b-acc0-4fcb-95f1-759dcab7d865 | 06/24/22 5:00 | Reward | CEL | 0.002425 | 0.00250789 | CEL | | Yes |
| 18 | 3abcd375-99f6-4aac-917b-f0d4e113e790 | 06/24/22 5:00 | Reward | USDT ERC | 2.620076 | 2.6200759 | USDT ERC20 | | Yes |
| 19 | 0d4250c9-04b9-4729-8a6c-b9c9161bf3fc | 06/24/22 5:00 | Reward | MCDAI | 0.000032 | 3.1524E-05 | MCDAI | | Yes |
| 20 | cf04f245-0e8f-4e80-9a30-f7b19bdf0491 | 06/24/22 5:00 | Reward | BTC | 0.000000 | 0.00443993 | BTC | | Yes |
| 21 | 3961cdf7-0b57-4dc3-9af5-db84ec90f9bc | 06/24/22 5:00 | Reward | ETH | 0.002231 | 2.56312729 | ETH | | Yes |
| 22 | f89e239a-c4aa-482c-bd25-da8307517334 | 06/17/22 5:00 | Reward | BTC | 0.000173 | 3.56716261 | BTC | | Yes |
| 23 | e4c7d583-4dad-4e5c-b33a-abaa8282b3e1 | 06/17/22 5:00 | Reward | MCDAI | 0.000031 | 3.1497E-05 | MCDAI | | Yes |
| 24 | 2da67f81-d4ba-47e9-bfc7-e7cb806c6dcd | 06/17/22 5:00 | Reward | USDT ERC | 29.753378 | 29.7533784 | USDT ERC20 | | Yes |
| 25 | 15c06823-b841-43fe-90cb-4fcbec4bae4c | 06/17/22 5:00 | Reward | CEL | 0.002422 | 0.00134809 | CEL | | Yes |
| 26 | 33ea36fe-3a1c-47ee-9cc1-6dce95bdfa31 | 06/17/22 5:00 | Reward | ETH | 0.002233 | 2.43486007 | ETH | | Yes |
| 27 | **e6eb60dd-054d-4c43-9762-19dfd29909ff** | **06/12/22 22:33** | **Withdrawal** | **BTC** | **-26.532841** | **-724346.549** | | | **No** |
| 28 | 7f01f54f-3ff8-4c98-8697-e115bdf874c2 | 06/12/22 22:28 | Withdrawal | BTC | -0.000100 | -2.7298 | | | Yes |
| 29 | f856c056-70b2-44b4-8173-3f56a66ca6e3 | 06/12/22 17:43 | Collateral | BTC | 26.532941 | 746530.063 | | | Yes |
| 30 | 8f33c600-3afa-4135-bed9-7445cd5199f3 | 06/12/22 17:42 | Loan Princip | USDT ERC | -250000 | -250000 | | | Yes |
| 31 | cf86553f-fa0e-423c-98e9-266168b41277 | 06/12/22 17:42 | Loan Interes | USDT ERC | -624.99 | -624.99 | | | Yes |

Highlighting added)

*Time within the Exhibit shows as UTC time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

# EXHIBIT P

**July 1, 2022 Celsius internal transaction data showing Withdrawal of 26.532BTC Confirmed "Yes" at June 12, 2022 (6:33pm EDT)**

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Internal id | Date and time | Transaction type | Coin type | Coin amount | USD Value | Original | Rew | Confirmed |
| 2 | 537250c8-d5f6-4a1f-a7b6-7a9c793ca3df | 07/01/22 5:00 | Reward | CEL | 0.002428 | 0.00153442 | CEL | | Yes |
| 3 | 58ef881e-e751-4e0b-b66f-208b8e10f284 | 07/01/22 5:00 | Reward | ETH | 0.002233 | 2.345059873 | ETH | | Yes |
| 4 | ab4560a0-b225-465a-b2bb-b3171de83fcc | 07/01/22 5:00 | Reward | USDT ERC20 | 2.623533 | 2.623532506 | USDT ERC20 | | Yes |
| 5 | f414ea9f-3ac8-45d2-ad7c-371fcf313378 | 07/01/22 5:00 | Reward | MCDAI | 0.000032 | 3.15517E-05 | MCDAI | | Yes |
| 6 | f23d292b-ff64-4d56-ba95-63d493b20a3b | 07/01/22 5:00 | Reward | BTC | 0.000000 | 0.004106193 | BTC | | Yes |
| 7 | 0d4250c9-04b9-4729-8a6c-b9c9161bf3fc | 06/24/22 5:00 | Reward | MCDAI | 0.000032 | 3.15244E-05 | MCDAI | | Yes |
| 8 | b1e61f0b-acc0-4fcb-95f1-759dcab7d865 | 06/24/22 5:00 | Reward | CEL | 0.002425 | 0.002507892 | CEL | | Yes |
| 9 | 3961cdf7-0b57-4dc3-9af5-db84ec90f9bc | 06/24/22 5:00 | Reward | ETH | 0.002231 | 2.563127286 | ETH | | Yes |
| 10 | 3abcd375-99f6-4aac-917b-f0d4e113e790 | 06/24/22 5:00 | Reward | USDT ERC20 | 2.620076 | 2.620075903 | USDT ERC20 | | Yes |
| 11 | cf04f245-0e8f-4e80-9a30-f7b19bdf0491 | 06/24/22 5:00 | Reward | BTC | 0.000000 | 0.004439932 | BTC | | Yes |
| 12 | f89e239a-c4aa-482c-bd25-da8307517334 | 06/17/22 5:00 | Reward | BTC | 0.000173 | 3.567162613 | BTC | | Yes |
| 13 | 15c06823-b841-43fe-90cb-4fcbec4bae4c | 06/17/22 5:00 | Reward | CEL | 0.002422 | 0.001348089 | CEL | | Yes |
| 14 | e4c7d583-4dad-4e5c-b33a-abaa8282b3e1 | 06/17/22 5:00 | Reward | MCDAI | 0.000031 | 3.14971E-05 | MCDAI | | Yes |
| 15 | 33ea36fe-3a1c-47ee-9cc1-6dce95bdfa31 | 06/17/22 5:00 | Reward | ETH | 0.002233 | 2.434860072 | ETH | | Yes |
| 16 | 2da67f81-d4ba-47e9-bfc7-e7cb806c6dcd | 06/17/22 5:00 | Reward | USDT ERC20 | 29.753378 | 29.75337838 | USDT ERC20 | | Yes |
| 17 | e6eb60dd-054d-4c43-9762-19dfd29909ff | 06/12/22 22:33 | Withdrawal | BTC | -26.532841 | -724346.5495 | | | Yes |
| 18 | 7f01f54f-3ff8-4c98-8697-e115bdf874c2 | 06/12/22 22:28 | Withdrawal | BTC | -0.000100 | -2.7298 | | | Yes |
| 19 | f856c056-70b2-44b4-8173-3f56a66ca6e3 | 06/12/22 17:43 | Collateral | BTC | 26.532941 | 746530.0629 | | | Yes |
| 20 | 8f33c600-3afa-4135-bed9-7445cd5199f3 | 06/12/22 17:42 | Loan Principal Payr | USDT ERC20 | -250000.000000 | -250000 | | | Yes |
| 21 | cf86553f-fa0e-423c-98e9-266168b41277 | 06/12/22 17:42 | Loan Interest Payn | USDT ERC20 | -624.990000 | -624.99 | | | Yes |

(Highlighting added)

*Time within the Exhibit shows as UTC time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT B**

Adrienne Woods
**The Law Offices of Adrienne Woods, P.C.**
*Counsel to Creditors Georges Georgiou,*
*Philip Stewart and Gilbert Castillo*
105 West 86th Street, #314
New York, New York 10024
Tel: (917) 447-4321
adrienne@woodslawpc.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| GEORGES GEORGIOU, PHILIP STEWART and GILBERT CASTILLO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) Adv. Pro. No. 23-_____ (MG) |
| CELSIUS NETWORK LLC; CELSIUS KEYFI LLC; CELSIUS LENDING LLC; CELSIUS MINING LLC; CELSIUS NETWORK INC.; CELSIUS NETWORK LIMITED; CELSIUS NETWORKS LENDING LLC; and CELSIUS US HOLDING LLC. | ) |
| | ) |
| Defendants. | ) |

## <u>DECLARATION OF PHILIP HARRIS STEWART</u>

PHILIP HARRIS STEWART, pursuant to 28 U.S.C. § 1746, declares and respectfully says:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2

1.      I am a creditor in the above-captioned bankruptcy case.  I submit this declaration in support of the Complaint.

2.      On June 12, 2022, I exercised my call option as to 6.100BTC in my Earn Account.  I first exercised a call option for a small test amount of 0.100 BTC.  This transfer went through within five (5) minutes and was received into my external wallet less than three (3) hours later.  A true and correct copy of the Celsius website screenshot dated June 12, 2022, evidencing completion of this transaction is annexed hereto as **Exhibit A**.

3.      After receipt of the first withdrawal, I exercised a second call option for 6.000BTC (the "Stewart Assets").  Celsius requested additional documentation to fulfill a "security review" before initiating the withdrawal of the Stewart Assets, which I promptly sent.  Celsius representative Alexis Martinez confirmed, via email, that the security review was completed successfully and advised me that the withdrawal had been initiated and the Stewart Assets would be arriving within 24 hours.  A true and correct copy of the email from Celsius representative Alexis Martinez dated June 12, 2022, is annexed hereto as **Exhibit B**.  At that time, the Stewart Assets were moved out of my Earn Account and marked as "In Progress" within the Celsius website and "Pending" within the Celsius mobile application.  True and correct copies of screenshots of the Celsius website and Celsius mobile application dated June 12, 2022, evidencing this are annexed hereto as **Exhibit C**.

4.      When the Stewart Assets still had not appeared in my digital wallet as of June 16, 2022, I again contacted Celsius and spoke with Celsius representative Anna Lee, who confirmed that the Stewart Assets had left my Earn Account.  I sent an email to Celsius representative Christiaan Hausman with Customer Service to document this conversation, a true and correct copy of which is annexed hereto as **Exhibit D**.  Mr. Hausman did not dispute the veracity of Ms. Lee's statements to me.

3

5.      I also noted that Celsius' internal historical transaction data, identification numbers of df90e4cb-701d-48af-9224-ff539d565b9b for 0.1BTC and 64547db0-d662-4ced-baea-1a383ad0df53 for the Stewart Assets, evidenced that the withdrawals were both confirmed as can be seen by the annotation "Yes" under the Confirmed column of the transaction data.  A true and correct copy of Celsius' internal transaction data showing the withdrawals as confirmed, dated June 12, 2022, is annexed hereto as **Exhibit E**.

6.      From the time I exercised my call options, the Stewart Assets were deducted from my Earn Account and no longer appeared in my Earn Account on any Celsius platform.[2]  A true and correct screenshot of the Celsius website dated June 13, 2022, showing the balance of my Earn Account is annexed hereto as **Exhibit F**.  From the time I exercised my call options, I received no Rewards on the amounts withdrawn from my Earn Account, but I know that Rewards continued to accrue on Earn Accounts until the Petition Date.

7.      On or around October 20, 2022 – several months after the Petition Date – I noticed that the Stewart Assets were transferred back into my Earn Account.  A true and correct copy of a screenshot of the Celsius mobile application dated October 20, 2022, is annexed hereto as **Exhibit G**.  I never elected to have the Stewart Assets placed back into the Earn Account – this was done unilaterally by the Debtors, without notice to me and without my consent.  I certainly never "elected" to have them placed there.

8.      I also noticed that on October 12, 2022, the Debtors marked the transaction "Cancelled" and overrode their own transaction data to suggest the withdrawal of the Stewart Assets was never actually confirmed.  True and correct copies of screenshots of the Celsius mobile application dated October 12, 2022 and June 12, 2022 are annexed hereto as **Exhibit H**.  The Debtors

---

[2] After the withdrawals, my Earn Account consisted of only 0.129BTC.  The Earn Account also includes other coins, including Ethereum, Tether, Celsius Token and Dai.  I do not contest that these assets are owned by the Debtors' estates.

4

also overrode their own internal historical transaction data as shown on the January 21, 2023, transaction history report at internal identification number of 64547db0-d662-4ced-baea-1a383ad0df53, which was altered to suggest that my withdrawal had never been confirmed as can seen by the change to an annotation "No" under the Confirmed column of the transaction data. A true and correct copy the transaction history report dated January 21, 2023, is annexed hereto as **Exhibit I**. This contradicts the July 1, 2022, transaction history report evidencing confirmation of the withdrawal of the Stewart Assets. See Exhibit E. By altering of their internal transaction history report the Debtors appear to be trying to change historical facts and mislead customers and the Court.

I certify that the foregoing statements are true under penalty of perjury.

Dated: February 28, 2023

<u>/s/ Philip Harris Stewart</u>  .
Philip Harris Stewart

5

**EXHIBIT A**

**Celsius website screenshot of 0.1 BTC withdrawal**

**"Completed" June 12, 2022 (11:04AM EDT)**



**EXHIBIT B**

**Email from Celsius verifying that all Know Your Customer requirements had been met and withdrawal had been initiated**

**June 12, 2022 (3:47PM EDT)**

**Alexis Martinez** (Celsius Network)
Jun 12, 2022, 20:47 UTC

Dear Philip,

We have initiated the withdrawal for you, the funds should be in the address specified within up to 24 hours and occasionally longer in rare cases. In addition, process time may be affected by the blockchain congestion.

If the coins have disappeared from your wallet, but have not yet arrived in the destination wallet, do not worry. This is normal, it has to do with our internal multi-step withdrawal process.

Please let us know if we can be of further assistance.

Best Regards,
Corporate Agent | Celsius
Wish to know more?
Check out Celsius Help Center

*Time within the Exhibit shows as Coordinated Universal Time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT C**

**Celsius website screenshot of 6.0 BTC withdrawal "In Progress"**

**June 12, 2022 (1:54pm EDT)**

| Type | Status | Date & Time ▲ | Coins Amount | Amount |
|------|--------|---------------|--------------|--------|
| 🅱 Send | In Progress | Jun 12, 2022 \| 01:54 PM | Ⓑ –6 BTC | –$168,799.56 |

**Celsius Mobile App Screenshot of BTC Transaction Pending**

**June 12, 2022**



**EXHIBIT D**

**Email to Celsius documenting Celsius customer service's verbal confirmation of 6.0BTC withdrawal from my Earn Account**

**June 16, 2022 (4:04pm EDT)**



Re: [Celsius Network] Re: Large withdraw BTC - 64547db0-d662-4ced-baea-1a383ad0df53          Yahoo/Sent ☆

phil stewart                                                Thu, Jun 16, 2022 at 4:04 PM ☆
To: Celsius Network

Hello Christiaan and Celsius Team,

Today I called 1866-HODL-NOW (866-463-5669) and spoke with customer service rep named Anna Lee

She confirmed that my 6 BTC have left my "Earn Account" (confirmed withdrawal under internal ID 64547db0-d662-4ced should be towards the front of the line to be approved for withdrawal once withdrawals are allowed again.

Please let me know if this is not your understanding.

Kind Regards,

Philip Stewart

**EXHIBIT E**

**Celsius Transaction History Report showing withdrawal of 6.0 BTC Confirmed by annotation "Yes"**

**June 12, 2022 (12:54PM EDT)**

| Internal id | Date and time | Transaction type | Coin type | Coin amount | USD Value | Confirmed |
|---|---|---|---|---|---|---|
| 64547db0-d662-4ced-baea-1a383ad0df53 | 6/12/2022 17:54 | Withdrawal | BTC | -6 | ($168,799.56) | Yes |
| df90e4cb-701d-48af-9224-ff539d565b9b | 6/12/2022 15:04 | Withdrawal | BTC | -0.1 | ($2,774.90) | Yes |
| ce62f27d-e70b-4f66-87d9-24a3749dde5f | 6/11/2022 10:15 | Transfer | BTC | 0.835 | $24,304.55 | Yes |
| 0342787d-fe30-4347-b2d1-c9b9d617d06d | 5/13/2022 15:24 | Transfer | BTC | 1.969 | $60,377.42 | Yes |
| 314f3da4-596a-431e-912f-a7eeba99da35 | 5/11/2022 3:09 | Transfer | BTC | 1 | $31,592.00 | Yes |
| 68be1dff-d89d-46a1-9787-2297992aa25d | 5/5/2022 20:39 | Collateral | BTC | 1.016 | $36,937.29 | Yes |
| 6726c031-620b-462c-b615-d9ff37d83c50 | 5/5/2022 20:36 | Collateral | BTC | 1.408 | $51,112.03 | Yes |

(Emphasis added)

*Time within the Exhibit shows as UTC time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

**EXHIBIT F**

**Celsius website screenshot of the balance of my Earn Account**

**June 13, 2022**



**Welcome Philip Harris**

Start earning in CEL

| Earn Account Balance | Rewards |
|---|---|
| $4,791.35 | $3,177.79 |

Coins | Available Coins

**Bitcoin** $3,123.53
2.88% APY     0.129478 BTC

**Ethereum** $1,245.72
6.93% APY     1.002092 ETH

**Celsius** $336.24
5.89% APY     1,576.513200 CEL

Portfolio  Transfer  Buy  Swap  Borrow

**\*$4,791 was the value of the assets that remained in my Earn Account as of June 13, 2022, after the 6.0BTC were withdrawn.**

**Celsius mobile application screenshot of my Earn Account balance and Bitcoin balance of 0.129478BTC after my withdrawal**

**June 13, 2022**



**EXHIBIT G**

**Celsius mobile application screenshot of my Earn Account balance showing returned Bitcoin**

**October 20, 2022**



**EXHIBIT H**

**Celsius mobile application screenshot of my Earn Account Bitcoin transactions. From June 12, 2022 to Oct 12, 2022, the 6.00BTC withdrawal transactions was marked as "PENDING". On or about October 12, 2022 it was changed to "Canceled" and remains that way to today.**

**12 June 2023 to 12 Oct 2022**

**12 Oct 2022 to today**



# EXHIBIT I

**Celsius internal Bitcoin Transaction History Report showing withdrawal of 6.0BTC previously confirmed, now with annotation "No"**

**January 21, 2023**

| Internal id | Date and time | Transaction type | Coin ty | Coin a | USD Value | Confirmed |
|---|---|---|---|---|---|---|
| 64547db0-d662-4ced-baea-1a383ad0df53 | 6/12/2022 17:54 | Withdrawal | BTC | -6 | -168799.5625 | No |
| df90e4cb-701d-48af-9224-ff539d565b9b | 6/12/2022 15:04 | Withdrawal | BTC | -0.1 | -2774.9 | Yes |
| ce62f27d-e70b-4f66-87d9-24a3749dde5f | 6/11/2022 10:15 | Transfer | BTC | 0.835 | $24,304.55 | Yes |
| 0342787d-fe30-4347-b2d1-c9b9d617d06d | 5/13/2022 15:24 | Transfer | BTC | 1.969 | $60,377.42 | Yes |
| 314f3da4-596a-431e-912f-a7eeba99da35 | 5/11/2022 3:09 | Transfer | BTC | 1 | $31,592.00 | Yes |
| 68be1dff-d89d-46a1-9787-2297992aa25d | 5/5/2022 20:39 | Collateral | BTC | 1.016054 | $36,937.29 | Yes |
| 6726c031-620b-462c-b615-d9ff37d83c50 | 5/5/2022 20:36 | Collateral | BTC | 1.408161 | $51,112.03 | Yes |

(Highlighting added)

*Time within the Exhibit shows as UTC time and has been converted to Eastern Daylight Time (EDT) within the exhibit title.

# EXHIBIT C

Adrienne Woods
**The Law Offices of Adrienne Woods, P.C.**
*Counsel to Creditors Georges Georgiou,*
*Philip Stewart and Gilbert Castillo*
105 West 86th Street, #314
New York, New York 10024
Tel: (917) 447-4321
adrienne@woodslawpc.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| ———————————————————— | ) |
| | ) |
| GEORGES GEORGIOU, PHILIP STEWART and | ) |
| GILBERT CASTILLO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) Adv. Pro. No. 23-_____ (MG) |
| CELSIUS NETWORK LLC; CELSIUS KEYFI LLC; | ) |
| CELSIUS LENDING LLC; CELSIUS MINING LLC; | ) |
| CELSIUS NETWORK INC.; CELSIUS NETWORK | ) |
| LIMITED; CELSIUS NETWORKS LENDING LLC; | ) |
| and CELSIUS US HOLDING LLC. | ) |
| | ) |
| Defendants. | ) |
| ———————————————————— | ) |

## <u>DECLARATION OF GILBERT CASTILLO</u>

GILBERT CASTILLO, pursuant to 28 U.S.C. § 1746, declares and respectfully says:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2

1.      I am a creditor in the above-captioned bankruptcy case.  I submit this declaration in support of the Complaint.

2.      On June 12, 2022, I exercised my call option related to my Earn Account.  I first withdrew a small test amount of 100USDC, which I received in approximately five (5) minutes without issue.  About fifteen (15) minutes after I received the 100USDC test amount, I initiated the larger withdrawal of 501,277.78USDC (the "Castillo Assets") and received confirmation of the withdrawal shortly thereafter.  A true and correct copy of the email confirmation dated June 12, 2022, is annexed hereto as **Exhibit A**.  I was not asked to complete any security check to complete my withdrawal of the Castillo Assets.

3.      After initiating withdrawal of the Castillo Assets, my account reflected the status of the transfer as "In Progress" or "Pending".   A true and correct copy of a screenshot of the Celsius mobile application dated June 14, 2022, is annexed hereto as **Exhibit B**.  Furthermore, Debtors internal historical transaction data with a Celsius' internal identification numbers of 88f0c763-bb1d-452d-8a25-f01ad976ee82 for 501,277.78USDC and 03f8a090-a234-41ff-966f-835786a674b4 for 100USDC evidence that the withdrawals were both confirmed as seen by the annotation "Yes" under the Confirmed column of the transaction data.  A true and correct copy of the Celsius transaction history report downloaded from Celsius on June 29, 2022, is annexed hereto as **Exhibit C**.  Despite this, the Castillo assets never arrived in my wallet.

4.      From the time I exercised my call options, the USDC was deducted from my Earn Account and no longer appeared in his Earn Account on any Celsius platform.  A true and correct copy of a screenshot of the Celsius mobile application August 17, 2022, is annexed hereto as **Exhibit D**.  As of August 17, 2022, according to Celsius' own records, my Earn Account value was only $19,540.89 and it contained no USDC.  *Id.*  I was issued no Rewards on the Castillo Assets from the

time I withdrew the assets, but I am aware that Earn Accounts did continue to accrue Rewards through the Petition Date.

5.      On or about October 5, 2022 – several months after the Petition Date – the Debtors cancelled my withdrawal without notifying me and without my permission.  A true and correct copy of a screenshot of the Celsius mobile application is annexed hereto as **Exhibit E**.

6.      On or about October 6, 2022, the Debtors overrode their own historical transaction data to suggest the withdrawal was never actually confirmed.  A true and correct copy of Celsius' historical transaction data, downloaded on October 6, 2022, is annexed hereto as **Exhibit F**.  Internal identification number of 88f0c763-bb1d-452d-8a25-f01ad976ee82 was altered to suggest that my withdrawal of the Castillo Assets had never been confirmed, as can seen by the change to an annotation "No" under the Confirmed column of the report.  *Id*.  This contradicts the June 29, 2022, transaction history report evidencing confirmation of withdrawal of the Castillo Assets.  *See* Exhibit C.

7.      On or around the same date that the Debtors overrode the historical transaction data, the Debtors also placed my USDC back into my Earn Account, also without notice to me and without my permission.  A true and correct copy of a screenshot of the Celsius mobile application dated February 26, 2023, is annexed hereto as **Exhibit G**.  Aside from being done without my permission, placement of the Castillo Assets into the Earn Account also contradicts emails I received from customer support, advising that if the withdrawal were cancelled, the Castillo Assets would be returned to a Custody Account.  A true and correct copy of an email exchange with Celsius customer service representative Aaron Pritchard is annexed hereto as **Exhibit H**.

4

8.      I exercised my election prior to the Freeze Date and withdrew the Castillo Assets from my Earn Account.  The Debtors unilaterally, and without notice to me or my consent, returned them to the Earn Account.

I certify that the foregoing statements are true under penalty of perjury.

Dated: February 28, 2023

_/s/  Gilbert Castillo_____.
Gilbert Castillo

# EXHIBIT A

**Confirmation Email From Celsius to Send coins to an external wallet June 12th at 3:34 PM**

| | |
|---|---|
| **From:** | **Celsius**  app@celsius.network |
| **Subject:** | [Celsius] Confirm Sending Coins |
| **Date:** | June 12, 2022 at 3:34 PM |
| **To:** | |

# Confirm Sending Coins

You requested to send **501277.78 USDC** to

For security reasons, Celsius keeps a limited amount of funds available in its outgoing account. If the amount of coins you're sending exceeds the available amount, we may need to manually replenish the outgoing account. Additionally, we may need to manually review and approve large transfers. This may take up to 24 hours, and occasionally longer in rare cases. Processing time may also be affected by blockchain congestion.

If this is the first time you have sent this coin, we will whitelist this external address after you confirm the transfer. You can manage your whitelisted addresses through the Celsius app.

If you have any questions, check out our Help Center .

This email is valid for only one use and will expire after 24 hours.

If it was not you who requested to send these coins **do not** confirm this transaction.

**EXHIBIT B**

**June 14, 2022 In app screen shot showing USDC transaction of 501277.78 "in Progress Waiting for Blockchain confirmation."**



# EXHIBIT C

**June 29ᵗʰ,2022 Celsius internal transaction data showing withdraw of 100 USDC at 3:24 PST and withdraw for 501277.78 USDC at 3:33 PST Confirmed "yes"**

| | Internal id | Date and time | Transaction | Coin type | Coin amount | USD Value | Original Rev | Reward Am | Confirmed |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | 0cf0f5d0-dbf9-41ee-a133-ceae1f1dd914 | 6/24/22 5:00 | Reward | ADA | 0.00020651 | 0.00010109 | ADA | | Yes |
| 3 | 271c59b0-b9ee-4e36-8ec0-a47a4039370a | 6/24/22 5:00 | Reward | UNI | 0.00021542 | 0.00117963 | UNI | | Yes |
| 4 | c713ab7d-471f-40f9-a941-e0f92f005c8d | 6/24/22 5:00 | Reward | SNX | 0.00337262 | 0.01037815 | SNX | | Yes |
| 5 | f20b02db-d3b5-4bab-af98-56f31d351d02 | 6/24/22 5:00 | Reward | BTC | 1.7923E-06 | 0.03773131 | BTC | | Yes |
| 6 | 6001287d-cae4-437e-8ba9-7e35279c9fe4 | 6/24/22 5:00 | Reward | ETH | 2.9321E-06 | 0.00336903 | ETH | | Yes |
| 7 | 5e8af783-313f-417f-8c70-23b4aa294028 | 6/24/22 5:00 | Reward | BAT | 3.4419E-05 | 1.4322E-05 | BAT | | Yes |
| 8 | 2d492b34-926a-4727-a323-015e70cbb1ad | 6/24/22 5:00 | Reward | USDC | 0.58021908 | 0.58021908 | USDC | | Yes |
| 9 | f3054b1b-96bc-4db4-ad57-03a2c1e4758f | 6/24/22 5:00 | Reward | CEL | 7.26400085 | 7.51229516 | CEL | | Yes |
| 10 | 0f578e74-7c90-42d5-9dfe-6f4a75061f55 | 6/24/22 5:00 | Reward | MATIC | 0.01626351 | 0.00971089 | MATIC | | Yes |
| 11 | 80ae5eba-b1a6-4e2e-9102-aef6cf128850 | 6/24/22 5:00 | Reward | MCDAI | 0.02745956 | 0.02745956 | MCDAI | | Yes |
| 12 | 27501e94-f935-4b72-b963-574087261683 | 6/24/22 5:00 | Reward | LINK | 5.1772E-05 | 0.00036663 | LINK | | Yes |
| 13 | ea9d2e7b-3f58-4e59-9424-6503fb5474c7 | 6/24/22 5:00 | Reward | DOT | 0.88752895 | 7.01941918 | DOT | | Yes |
| 14 | 4d0da3fd-52f8-4c7f-b3a2-86c6c1a3f2b7 | 6/24/22 5:00 | Reward | MANA | 4.7787E-05 | 4.3047E-05 | MANA | | Yes |
| 15 | 2bdc30e-8b5f-4c88-9d1b-354536fa155e | 6/17/22 5:00 | Reward | DOT | 0.88605673 | 6.38846905 | DOT | | Yes |
| 16 | 3a691a1d-eb21-48b3-baf1-6905fc3a04d4 | 6/17/22 5:00 | Reward | ETH | 2.9288E-06 | 0.00319383 | ETH | | Yes |
| 17 | b3b9a964-6bce-4a32-9a89-a4edb87c4dce | 6/17/22 5:00 | Reward | ADA | 0.00020635 | 0.00010185 | ADA | | Yes |
| 18 | 0e31724e-15dc-434e-9a4d-3d763eccdcf0 | 6/17/22 5:00 | Reward | BTC | 1.7901E-06 | 0.0368425 | BTC | | Yes |
| 19 | 95d7d4c3-df6c-4ccf-b151-e42b47daffc8 | 6/17/22 5:00 | Reward | MANA | 4.7785E-05 | 3.9912E-05 | MANA | | Yes |
| 20 | 8d5845a3-da74-4324-af10-f061f309bbdf | 6/17/22 5:00 | Reward | LINK | 5.1754E-05 | 0.00033847 | LINK | | Yes |
| 21 | 7c7aded1-7273-465b-b73a-9ef5791f2cbd | 6/17/22 5:00 | Reward | BAT | 3.4413E-05 | 1.122E-05 | BAT | | Yes |
| 22 | 9ff6194a-1c23-4764-bd18-56a47fd80612 | 6/17/22 5:00 | Reward | CEL | 7.25496842 | 4.03737541 | CEL | | Yes |
| 23 | f0676dff-3b6c-4032-afaf-34677f5d9cac | 6/17/22 5:00 | Reward | MATIC | 0.01624165 | 0.00638526 | MATIC | | Yes |
| 24 | 76bd3c3c-2272-4265-beda-5a9cfb517539 | 6/17/22 5:00 | Reward | MCDAI | 0.02743581 | 0.02743581 | MCDAI | | Yes |
| 25 | 61e94f0c-4177-40bd-9bd3-21ea3ed9cc53 | 6/17/22 5:00 | Reward | USDC | 258.368722 | 258.368722 | USDC | | Yes |
| 26 | dc4422d1-1cae-4a42-a93c-c83fc4415989 | 6/17/22 5:00 | Reward | UNI | 0.00021532 | 0.00083113 | UNI | | Yes |
| 27 | 0f60c028-60cd-4d9d-9b30-9febad449980 | 6/17/22 5:00 | Reward | SNX | 0.0033641 | 0.00585354 | SNX | | Yes |
| 28 | 88f0c763-bb1d-452d-8a25-f01ad976ee82 | 6/12/22 22:33 | Withdrawal | USDC | -501277.78 | -501277.78 | | | Yes |
| 29 | 03f8a090-a234-41ff-966f-835786a674b4 | 6/12/22 22:24 | Withdrawal | USDC | -100 | -100 | | | Yes |
| 30 | 20451105-2520-4e3f-8eb9-a721c5f304cb | 6/10/22 5:00 | Reward | MANA | 4.7782E-05 | 4.64E-05 | MANA | | Yes |
| 31 | a3e0a6ea-7567-465c-a64e-541c5b82e639 | 6/10/22 5:00 | Reward | UNI | 0.00021522 | 0.00110836 | UNI | | Yes |

*Time within exhibit shows UTC time and has been converted to Pacific Standard Time (PST) Within the exhibit title.

# EXHIBIT D

**August 17 2022 In App Screen shot of my portfolio with a balance of $19,540.00. No USDC is shown.**



**EXHIBIT E**

**October 5th ,2022 In App screen shot showing Unauthorized cancellation of USDC for 501,277.78**

| | Status | Date & Time ▲ | Coins Amount ▲ | Amount ▲ |
|---|---|---|---|---|
| **USDC Reward** | Received | Jul 7, 2022 \| 10:00 PM | ⓢ 0.581752 USDC | +$0.58 |
| **USDC Reward** | Received | Jun 30, 2022 \| 10:00 PM | ⓢ 0.580985 USDC | +$0.58 |
| **USDC Reward** | Received | Jun 23, 2022 \| 10:00 PM | ⓢ 0.580219 USDC | +$0.58 |
| **USDC Reward** | Received | Jun 16, 2022 \| 10:00 PM | ⓢ 258.368721 USDC | +$258.36 |
| **Send** | Canceled | Jun 12, 2022 \| 03:33 PM | ⓢ −501,277.780000 USDC | − $501,277.78 |
| **Send** | Completed | Jun 12, 2022 \| 03:24 PM | ⓢ −100 USDC | −$100 |

**EXHIBIT F**

**October 6th, 2022 Celsius internal transaction data showing withdraw of 501,277.78**
**Confirmed Column "No" June 12, 2022 at 3:33 pm PST**

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Internal id | Date and time | Transaction | Coin type | Coin amoun | USD Value | Original Rew | Reward Amc | Confirmed |
| 2 | 33f55326-d232-4b32-8caf-b5680e3d395e | 7/8/22 5:00 | Reward | ADA | 0.0002068 | 9.991E-05 | ADA | | Yes |
| 3 | b0429f42-275d-436f-9956-0f3e0cd5ef77 | 7/8/22 5:00 | Reward | BTC | 1.797E-06 | 0.0395747 | BTC | | Yes |
| 4 | 7e94a110-814f-4a30-9776-2b4c43f57f87 | 7/8/22 5:00 | Reward | DOT | 0.8904807 | 6.5222751 | DOT | | Yes |
| 5 | e0744f0b-e99e-4f7f-abbe-819e31225b62 | 7/8/22 5:00 | Reward | USDC | 0.5817521 | 0.5817521 | USDC | | Yes |
| 6 | b35e8e3f-24a2-46c2-8773-0e65c81bb8d9 | 7/8/22 5:00 | Reward | UNI | 0.0002156 | 0.0012514 | UNI | | Yes |
| 7 | b6ffc699-4850-476e-b007-066fee0ee4ef | 7/8/22 5:00 | Reward | LINK | 5.181E-05 | 0.0003511 | LINK | | Yes |
| 8 | 0b4cec21-60e8-4017-8b09-c4f42cea7e50 | 7/8/22 5:00 | Reward | SNX | 0.0033897 | 0.0091489 | SNX | | Yes |
| 9 | c3506454-9612-4fa0-b4a1-72b12d926a27 | 7/8/22 5:00 | Reward | MATIC | 0.0163073 | 0.0095268 | MATIC | | Yes |
| 10 | 32afe801-974f-42a7-af78-26d704cf9453 | 7/8/22 5:00 | Reward | BAT | 3.443E-05 | 1.539E-05 | BAT | | Yes |
| 11 | d10c0e99-0a33-4ab0-9211-368f892dc9a2 | 7/8/22 5:00 | Reward | MCDAI | 0.0275071 | 0.0275071 | MCDAI | | Yes |
| 12 | d831d00a-3f01-498e-9c10-bd5332e8056a | 7/8/22 5:00 | Reward | ETH | 2.939E-06 | 0.0036877 | ETH | | Yes |
| 13 | 59b3ccc66-4ff3-499f-92c2-2660d7e98958 | 7/8/22 5:00 | Reward | MANA | 4.779E-05 | 4.461E-05 | MANA | | Yes |
| 14 | fdb1c8a3-d6ba-4b9f-a3b4-8f0bdda8e3cb | 7/8/22 5:00 | Reward | CEL | 7.2820995 | 5.3006713 | CEL | | Yes |
| 15 | 7a60251a-c34f-416a-8365-7fb29938f649 | 7/1/22 5:00 | Reward | ADA | 0.0002067 | 9.338E-05 | ADA | | Yes |
| 16 | 21d3af25-05af-4edf-b1ed-9a5aa2d55c69 | 7/1/22 5:00 | Reward | ETH | 2.935E-06 | 0.0030824 | ETH | | Yes |
| 17 | 78ea8231-07ad-40d4-ab4e-367a092b7ddf | 7/1/22 5:00 | Reward | UNI | 0.0002155 | 0.0010429 | UNI | | Yes |
| 18 | d62de703-98d0-4e1c-9ada-48db7ad6785b | 7/1/22 5:00 | Reward | DOT | 0.8890036 | 6.0215548 | DOT | | Yes |
| 19 | 5a37d4f3-c1a4-4146-a36c-dd77025b45c3 | 7/1/22 5:00 | Reward | MANA | 4.779E-05 | 4.028E-05 | MANA | | Yes |
| 20 | c698b387-44e9-404b-bab5-9968fcdc3dcb | 7/1/22 5:00 | Reward | SNX | 0.0033812 | 0.0073667 | SNX | | Yes |
| 21 | 5e55550b-86d7-416d-bdf5-e1ddaf1d3b41 | 7/1/22 5:00 | Reward | MATIC | 0.0162854 | 0.0076047 | MATIC | | Yes |
| 22 | e3d32e61-1a07-4e85-bc2a-ec59c6218e15 | 7/1/22 5:00 | Reward | MCDAI | 0.0274833 | 0.0274833 | MCDAI | | Yes |
| 23 | 5fd0f159-0f6f-47b9-844d-c1954181ff18 | 7/1/22 5:00 | Reward | USDC | 0.5809856 | 0.5809856 | USDC | | Yes |
| 24 | 5e694ccb-4d97-42b2-bf97-5dd728fd4a7b | 7/1/22 5:00 | Reward | CEL | 7.2730445 | 4.5971751 | CEL | | Yes |
| 25 | ef344b49-efdc-4a5d-ab0b-de2a629dd30c | 7/1/22 5:00 | Reward | LINK | 5.179E-05 | 0.0003164 | LINK | | Yes |
| 26 | aac41150-3166-4a47-997c-0af453c2e7e2 | 7/1/22 5:00 | Reward | BAT | 3.443E-05 | 1.323E-05 | BAT | | Yes |
| 27 | 09b6c83f-aabb-49cc-a550-8ac3db325b0a | 7/1/22 5:00 | Reward | BTC | 1.794E-06 | 0.034895 | BTC | | Yes |
| 28 | f3054b1b-96bc-4db4-ad57-03a2c1e4758f | 6/24/22 5:00 | Reward | CEL | 7.2640008 | 7.5122952 | CEL | | Yes |
| 29 | 2d492b34-926a-4727-a323-015e70cbb1ad | 6/24/22 5:00 | Reward | USDC | 0.5802191 | 0.5802191 | USDC | | Yes |
| 30 | 6001287d-cae4-437e-8ba9-7e35279c9fe4 | 6/24/22 5:00 | Reward | ETH | 2.932E-06 | 0.003369 | ETH | | Yes |
| 31 | f20b02db-d3b5-4bab-af98-56f31d351d02 | 6/24/22 5:00 | Reward | BTC | 1.792E-06 | 0.0377313 | BTC | | Yes |
| 32 | 80ae5eba-b1a6-4e2e-9102-aef6cf128850 | 6/24/22 5:00 | Reward | MCDAI | 0.0274596 | 0.0274596 | MCDAI | | Yes |
| 33 | 27501e94-f935-4b72-b963-574087261683 | 6/24/22 5:00 | Reward | LINK | 5.177E-05 | 0.0003666 | LINK | | Yes |
| 34 | 0f578e74-7c90-42d5-9dfe-6f4a75061f55 | 6/24/22 5:00 | Reward | MATIC | 0.0162635 | 0.0097109 | MATIC | | Yes |
| 35 | 271c59b0-b9ee-4e36-8ec0-a47a4039370a | 6/24/22 5:00 | Reward | UNI | 0.0002154 | 0.0011796 | UNI | | Yes |
| 36 | 5e8af783-313f-417f-8c70-23b4aa294028 | 6/24/22 5:00 | Reward | BAT | 3.442E-05 | 1.432E-05 | BAT | | Yes |
| 37 | 0cf0f5d0-dbf9-41ee-a133-ceae1f1dd914 | 6/24/22 5:00 | Reward | ADA | 0.0002065 | 0.0001011 | ADA | | Yes |
| 38 | c713ab7d-471f-40f9-a941-e0f92f005c8d | 6/24/22 5:00 | Reward | SNX | 0.0033726 | 0.0103781 | SNX | | Yes |
| 39 | 4d00da3fd-52f8-4c7f-b3a2-86c6c1a3f2b7 | 6/24/22 5:00 | Reward | MANA | 4.779E-05 | 4.305E-05 | MANA | | Yes |
| 40 | ea9d2e7b-3f58-4e59-9424-6503fb5474c7 | 6/24/22 5:00 | Reward | DOT | 0.887529 | 7.0194192 | DOT | | Yes |
| 41 | b3b9a964-6bce-4a32-9a89-a4edb87c4dce | 6/17/22 5:00 | Reward | ADA | 0.0002064 | 0.0001019 | ADA | | Yes |
| 42 | 0fg0c028-60cd-4d9d-9b30-9febad449980 | 6/17/22 5:00 | Reward | SNX | 0.0033641 | 0.0058535 | SNX | | Yes |
| 43 | 61e94f0c-4177-40bd-9bd3-21ea3ed9cc53 | 6/17/22 5:00 | Reward | USDC | 258.36872 | 258.36872 | USDC | | Yes |
| 44 | f0676dff-3b6c-4032-afaf-34677f5d9cac | 6/17/22 5:00 | Reward | MATIC | 0.0162416 | 0.0063853 | MATIC | | Yes |
| 45 | 3a691a1d-eb21-48b3-baf1-6905fc3a04d4 | 6/17/22 5:00 | Reward | ETH | 2.929E-06 | 0.0031938 | ETH | | Yes |
| 46 | 95d7d4c3-df6c-4ccf-b151-e42b47daffc8 | 6/17/22 5:00 | Reward | MANA | 4.778E-05 | 3.991E-05 | MANA | | Yes |
| 47 | 8d5845a3-da74-4324-af10-f061f309bbef | 6/17/22 5:00 | Reward | LINK | 5.175E-05 | 0.0003385 | LINK | | Yes |
| 48 | 9ff6194a-1c23-4764-bd18-56a47fd80612 | 6/17/22 5:00 | Reward | CEL | 7.2549684 | 4.0373754 | CEL | | Yes |
| 49 | 76bd3c3c-2272-4265-beda-5a9cfb517539 | 6/17/22 5:00 | Reward | MCDAI | 0.0274358 | 0.0274358 | MCDAI | | Yes |
| 50 | dc4422d1-1cae-4a42-a93c-c83fc4415989 | 6/17/22 5:00 | Reward | UNI | 0.0002153 | 0.0008311 | UNI | | Yes |
| 51 | d2bdc30e-8b5f-4c88-9d1b-354536fa155e | 6/17/22 5:00 | Reward | DOT | 0.8860567 | 6.3884691 | DOT | | Yes |
| 52 | 0e31724e-15dc-434e-9a4d-3d763eccdcf0 | 6/17/22 5:00 | Reward | BTC | 1.79E-06 | 0.0368425 | BTC | | Yes |
| 53 | 7c7aded1-7273-465b-b73a-9ef5791f2cbd | 6/17/22 5:00 | Reward | BAT | 3.441E-05 | 1.122E-05 | BAT | | Yes |
| 54 | 88f0c763-bb1d-452d-8a25-f01ad976ee82 | 6/12/22 22:33 | Withdrawal | USDC | -501277.8 | -501277.8 | | | No |
| 55 | 03f8a090-a234-41ff-966f-835786a674b4 | 6/12/22 22:24 | Withdrawal | USDC | -100 | -100 | | | Yes |

*Time within exhibit shows UTC time and has been converted to Pacific Standard Time (PST)
Within the exhibit title.

**EXHIBIT G**

**Current in App screen shot now showing the cancelled amount of 501,277.78 added to my USDC portfolio balance totaling 501,719.82.**



# EXHIBIT H

**July 21, 2022 Customer Care email stating if I cancel the withdraw the funds will show in My Custody Account.**

**From:** Aaron Prichard aaron.prichard@celsius.network
**Subject:** Re: Celsius 0.1% Loans and much more
**Date:** July 21, 2022 at 1:17 PM
**To:**

Hi Gilbert,

I spoke with my support team and they said that they advised you to cancel the withdrawal so that the funds will show in your custody account, but mentioned that you do not want to do that.

They cannot finalize the original withdrawal - all transfers have been paused for a while now. Unfortunately, this was one of the transactions stuck in limbo during the withdrawal freeze.

Obviously, you make your own choices here - but I would encourage you to follow the advice of the support staff in canceling that withdrawal. I'm no expert but since we are going through Chapter 11 I would think you would want to see those funds in the account so that you can include them in your claim.

Please know that transparency is at the heart of the Chapter 11 process. Information about the Chapter 11 filing, including court documents, will be available throughout the process at https://cases.stretto.com/celsius. With any questions, you can email stretto@celsius.network or call our Claims Agent, Stretto, at +1 (855) 423-1530 (U.S.) or +1 (949) 669-5873 (international).

Best Regards,

**Aaron Prichard**
**Corporate Account Manager - Celsius.Network**
email - aaron.prichard@celsius.network
tel - (551) 486-1866
book a video call - https://calendly.com/aaron-prichard/15min



Some handy reminders:
**Whitelisting** an address takes 24 hours before a withdrawal can be made
**HODL mode** takes 24 hours to deactivate
**Large withdrawals** will go through additional security protocols

On Tue, Jul 19, 2022 at 9:39 AM Gilbert                    > wrote:
Thanks Aaron. No this doesn't help. If the funds are not shown in my earn portfolio account I need confirmation they are in a custody account. Because the" to address" in the transaction is my receiving wallet that I have never received. Please clarify where the funds in the transaction are. It shows withdraw completed in the csv file that I have downloaded

Thanks,

Gilbert

On Jul 19, 2022, at 9:13 AM, Aaron Prichard <aaron.prichard@celsius.network> wrote:

Hi Gilbert,

When I click into the transaction, this is what is shown (see attached)

Hopefully this is helpful for you.