**Hearing Date:  March 21, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  March 14, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON**
**THE DEBTORS' MOTION SEEKING**
**ENTRY OF AN ORDER (I) AUTHORIZING THE**
**DEBTORS TO ENTER INTO WITNESS COOPERATION**
**AGREEMENTS WITH CERTAIN CURRENT AND FORMER**
**EMPLOYEES, (II) AUTHORIZING REIMBURSEMENT OF PAST AND**
**FUTURE OUT-OF-POCKET EXPENSES OF COOPERATING WITNESSES,**
**INCLUDING ATTORNEY'S FEES, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion Seeking Entry of an*

*Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain*

*Current and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-of-*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Pocket Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Related Relief* (the "Motion") will be held on **March 21, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on March 20, 2023)**.

  **PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on March 21, 2023 must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on March 21, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, which are available on the Court's website at http://www.nysb.uscourts.gov; and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order") by **March 14, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List, as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius, and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: February 28, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE DEBTORS' MOTION SEEKING**
**ENTRY OF AN ORDER (I) AUTHORIZING THE**
**DEBTORS TO ENTER INTO WITNESS COOPERATION**
**AGREEMENTS WITH CERTAIN CURRENT AND FORMER**
**EMPLOYEES, (II) AUTHORIZING REIMBURSEMENT OF PAST AND**
**FUTURE OUT-OF-POCKET EXPENSES OF COOPERATING WITNESSES,**
**INCLUDING ATTORNEY'S FEES, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Preliminary Statement**

1.     Throughout these chapter 11 cases, certain of the Debtors' current and former employees (the "Cooperating Witnesses") have played a vital role in cooperating with numerous ongoing investigations into the Debtors' prepetition business practices.  Some of the Cooperating Witnesses have retained independent counsel while approximately a dozen Cooperating Witnesses have worked with a single firm serving as "pool counsel" (singularly or collectively, "Employee Counsel") in preparation for investigations by the Examiner and/or Committee, government or regulatory investigations, civil litigation, and other ongoing proceedings or disputes involving Celsius (the "Investigations").   In connection with such Investigations, many Cooperating Witnesses have voluntarily sat for interviews for many hours and answered questions about the Debtors' business and operations.

2.     Specifically, as a result of the *Order Approving the Appointment of Chapter 11 Examiner* [Docket No. 923], appointing Shoba Pillay as examiner (the "Examiner"), and as further described in the Examiner's Report,[2] counsel for the Examiner interviewed 26 individuals who are "current [or] former Celsius employees working in Risk, Compliance, Operations, Marketing, Business Processes/Controls, Finance, Tax, Treasury, and Strategy, among other areas," in interviews of up to two hours.  Examiner's Report at 34–35.  In addition to the Examiner's interviews, certain Cooperating Witnesses also sat for numerous interviews with the Committee, criminal governmental authorities, and state and federal regulators.  Given that Cooperating Witnesses are providing testimony and information relevant to ongoing criminal investigations, it is necessary and appropriate for them to have individual counsel to advise them in connection with interviews related to Celsius.

---

[2]    "Examiner's Report" means the *Final Report of Shoba Pillay, Examiner* [Docket No. 1956].

3.     Cooperating Witness participation in Investigations is expected to continue if not intensify going forward.  Notably, Cooperating Witnesses will be expected to participate with the Committee's investigations of certain claims and causes of action set forth in the *Motion of the Official Committee of Unsecured Creditors to Approve Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* [Docket No. 2054] (the "Litigation Stipulation").  In the Litigation Stipulation, the Debtors and the Committee have agreed that any plan of reorganization will include a litigation trust or similar entity (the "Litigation Trust") for the purpose of bringing certain "claims and causes of action against the Prospective Defendants" as "identified and agreed to by the Debtors and the Committee."  Lit. Stip. at 3.  Additionally, interviews with state and federal regulators are continuing on a regular basis that require the Debtors' cooperation, which typically results in Cooperating Witnesses needing to prepare for and attend interviews.  Moreover, this will continue further if criminal charges are brought.

4.     To date, many, if not all, of the Cooperating Witnesses have incurred fees in connection with Employee Counsel and other postpetition expenses, including transportation and lodging costs (collectively, the "Expenses"), related to assisting with the Investigations, and have paid such Expenses that have come due out of pocket or have been unable to pay such Expenses.  And while some of these employees have requested reimbursement from the Debtors' directors and officers insurance policies (collectively, the "D&O Policies"), no such requests for payment have yet been approved by the insurers.  Without a clear pathway to reimbursement of Expenses, many Cooperating Witnesses will no longer be able to voluntarily assist in the Investigations as

3

they can no longer afford to retain Employee Counsel and many of the attorneys who have assisted Cooperating Witnesses to date will be unbale to continue without payment.[3]

5.      Given the insights and institutional knowledge held by Celsius' employees, these employees' continued cooperation with the Investigations is crucial to the implementation of a restructuring plan and successful emergence from chapter 11, including the success of any Litigation Trust.  Accordingly, to maximize cooperation of the employees, the Debtors are seeking approval to enter into cooperating witness agreements (each, a "Cooperation Agreement") and to reimburse the Expenses of Cooperating Witnesses pursuant to sections 105, 363(b), 363(c), and 503 of title 11 of the United States Code (the "Bankruptcy Code") and consistent with the procedures set forth herein.

6.      The relief requested in this Motion will not be available to any of those defendants named in the Litigation Stipulation.[4]  The Debtors are not seeking to directly compensate Cooperating Witnesses for services rendered; rather, the Debtors are seeking to reimburse Cooperating Witnesses (either directly or by paying Employee Counsel at the direction of a Cooperating Witness) for Expenses incurred as part of the Cooperating Witnesses' ongoing cooperation with important inquiries and the Investigations related to the Debtors' operations on the procedures outlined in this Motion, and the Debtors will be subrogated to the rights of the directors and officers against the D&O Policies for any reimbursed Expenses.   Such reimbursement, which is not related to prepetition services or expenses, is key for the continued progress of and successful emergence from these chapter 11 cases.

---

[3]   *See Application of Connor Nolan Pursuant to 11 U.S.C. §§ 503(b)(3)(d) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred in Making a Substantial Contribution* [Docket No. 2045].

[4]   The parties named in the Litigation Stipulation as defendants are Alexander Mashinsky, Shlomi Daniel Leon, Hanoch "Nuke" Goldstein, Harumi Urata-Thompson, Jeremie Beaudry, Johannes Treutler, Aliza Landes, Kristine Meehan Mashinsky and entities owned by the foregoing individuals (collectively, the "Prospective Defendants").

## Relief Requested

7.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):  (a) authorizing the Debtors to enter into Cooperation Agreements with

certain current and former employees; (b) authorizing reimbursement of out of pocket expenses of

Cooperating Witnesses, including attorney's fees; and (c) granting related relief.

## Jurisdiction and Venue

8.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court

entering a final order in connection with this Motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The statutory bases for the relief requested herein are sections 105, 363(b), 363(c),

and 503(b) of the Bankruptcy Code, rule 6004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern

District of New York (the "Local Rules").

## Background

11.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are

one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and

provide financial services to institutional, corporate, and retail clients across more than

100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which

users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans

using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

12.     On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration").  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

13.     On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (the "GK8 Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of the GK8 Debtors' chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

14.     The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53, 1648].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 29, 2022, the Court entered an order directing the appointment of the Examiner [Docket No. 920].

6

**Overview of Expenses**

15.     As part of the Debtors' ongoing chapter 11 cases and general investigations into Celsius and its prepetition business practices, various employees, as Cooperating Witnesses, have been cooperating in Investigations.  Such engagement has resulted in the production of over 200,000 documents, over 1,000 individual diligence requests answered, weekly calls with the Committee, daily interactions between the Debtors' advisors and the Committee, and a number of in-person meetings with the Committee, the Examiner, and government agencies.

16.     To cooperate with the Investigations, certain Cooperating Witnesses have retained various attorneys and law firms as Employee Counsel.  Employee Counsel have assisted and are continuing to assist employees with their participation and cooperation with the Investigations.  That cooperation has included reviewing documents related to a Securities and Exchange Commission proffer, preparing them for interviews with the Examiner, the Committee, and/or the Debtors' Special Committee,[5] responding to subpoenas, reviewing documents and preparing for a Commodity Futures Trading Commission proffer, and responding to Rule 2004 Requests from the Committee.   In addition to attorneys' fees, Cooperating Witnesses have also incurred transportation and lodging costs as a result of participating in the Investigations.

17.     The reimbursement of Expenses on the terms set forth herein is in the best interests of the Debtors' estates, their creditors, and other parties in interest.  Cooperating Witnesses have now participated in many Investigations, and Employee Counsel have also gained significant knowledge, expertise, and familiarity with the Debtors and their operations.  Following the confirmation of a chapter 11 plan in these cases, current and former Celsius employees will also be needed to continue as Cooperating Witnesses in Investigations carried out for the benefit of the

---

[5]    "Special Committee" means the special committee of the board of directors of Debtor Celsius Network Limited.

Litigation Trust, as described more fully in the Litigation Stipulation.  Many Employee Counsel have informed the Debtors that they will no longer be able to represent Cooperating Witnesses and continue to work with them if they are not paid on a regular basis.  These Expenses are incurred by Cooperating Witnesses for the Debtors' benefit, and many of the Cooperating Witnesses cannot afford to pay Employee Counsel without assistance from the Debtors.  Accordingly, the Debtors' estates and their creditors are best served by avoiding any disruption in the Investigations that are required for the Debtors to emerge from these chapter 11 cases or maximize recoveries for the estate and, in turn, creditors.

### The Cooperating Witness Reimbursement Procedures

18.     The  Debtors  request  that  the  Court  approve  the  following  procedures  for reimbursement of Expenses associated with participating in Investigations (the "Reimbursement Procedures").  For the avoidance of doubt, Cooperating Witnesses cannot use the Reimbursement Procedures to seek reimbursement of Expenses incurred in relation to any criminal prosecution of such Cooperating Witness, and the Debtors will not authorize the reimbursement of any Expenses of Cooperating Witnesses related to criminal prosecution of such Cooperating Witness.  Finally, nothing  set  forth  in  the  Reimbursement  Procedures  shall  limit  any  party's  right  to  seek reimbursement of Expenses pursuant to a separate Court order or under the D&O Policies, including  the  Debtors'  right  to  seek  reimbursement  from  the  D&O  Policies  on  subrogation grounds, or otherwise.

19.     ***First***, the Debtors seek approval of the following procedures to designate current and/or former employees as Cooperating Witnesses:[6]

      a.     As soon as reasonably practicable after entry of the Order, the Debtors, in consultation with the Special Committee, shall provide the Committee with

---

[6]   For the avoidance of doubt, none of the Prospective Defendants shall be designated as Cooperating Witnesses.

8

a proposed list of current and/or former employees to serve as Cooperating Witnesses, which list may be updated from time to time.  The Debtors and the Committee shall determine which employees shall be required to enter into a Cooperation Agreement, whereby such employee will agree to cooperate in future Investigations, including those in connection with the Litigation Stipulation, and be deemed a Cooperating Witness.

b.     The Debtors shall notify any potential Cooperating Witnesses in writing (email being sufficient) of their eligibility to become a Cooperating Witness upon execution of a Cooperation Agreement and eligibility for reimbursement of Expenses on the terms set forth in the Reimbursement Procedures.  Any such potential Cooperating Witness shall be deemed a Cooperating Witness upon execution of a Cooperation Agreement.

20.     *Second*, the Debtors seek approval of the following procedures to reimburse Cooperating Witnesses for Past Reimbursement Requests (as defined below):[7]

a.     Within thirty days after executing a Cooperation Agreement, Cooperating Witnesses seeking reimbursement of Expenses incurred after the Petition Date through and including the date of his or her status as a Cooperating Witness (the "Past Reimbursement Request") shall provide (i) an invoice setting forth in reasonable detail the nature of the services rendered by Employee Counsel after the Petition Date, including Employee Counsel fees and expenses incurred from the Petition Date, and a copy of other Expenses incurred in connection with the Investigations (if any), (ii) a detailed list of the Investigations participated in to date, including the dates of interviews (if any), and (iii) a copy of Employee Counsel's engagement letter (collectively, the "Reimbursement Documents"), to (x) Celsius Network LLC, 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030, Attn:  Ron Deutsch (ron.deutsch@celsius.network), (y) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Joshua A. Sussberg, P.C. and Elizabeth H. Jones, and 300 North LaSalle, Chicago, Illinois 60654; Attn:  Patrick J. Nash, Jr., P.C., Ross M. Kwasteniet, P.C., Christopher S. Koenig, and Dan Latona, and (z) counsel to the Committee, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: David Turetsky (david.turetsky@whitecase.com) and Samuel P. Hershey (sam.hershey@whitecase.com), White & Case, 111 South Wacker Drive, Suite 5100, Chicago, Illinois 60606, Attn: Michael C. Andolina (mandolina@whitecase.com) and Gregory F. Pesce (gregory.pesce@whitecase.com), White & Case LLP, 200 South Biscayne Blvd., Suite 4900, Miami, Florida 33133, Attn: Keith H. Wofford (kwofford@whitecase.com), and White & Case LLP, 555 South Flower

---

[7]     For the avoidance of doubt, no employee shall be eligible for a Past Reimbursement Request without first being designated as a Cooperating Witness.

Street, Suite 2700, Los Angeles, California 90071, Attn: Aaron E. Colodny (aaron.colodny@whitecase.com) (collectively, the "Notice Parties").

b.    The Notice Parties shall have fourteen days after receiving the Reimbursement Documents to determine the amount of the Past Reimbursement Request that should be paid. In any event, the Debtors shall not pay more than **$3,000,000** on behalf of all Past Reimbursement Requests absent further order of the Court. If any objection to a Past Reimbursement Request cannot be resolved within fourteen days (the "Past Reimbursement Deadline"), the Debtors shall be authorized to satisfy only the undisputed amount of the Past Reimbursement Request until the outstanding objections can been resolved; *provided* that the Cooperating Witnesses, Employee Counsel, and the Notice Parties reserve all rights to seek satisfaction of any Past Reimbursement Request by separate Court order or under the D&O Policies.

c.    If no objection is received from any of the Notice Parties by the Past Reimbursement Deadline with respect to any particular Past Reimbursement Request, the Debtors shall be authorized to satisfy the Past Reimbursement Request. The Debtors shall notify the Cooperating Witness in writing (emailing being sufficient) within two business days after the Past Reimbursement Deadline of the amount of Past Reimbursement Request that shall be paid.

21.    ***Third***, the Debtors seek approval of the following procedures to reimburse Cooperating Witnesses for Future Reimbursement Requests (as defined below):[8]

a.    After any employee is designated a Cooperating Witness, the Debtors shall be authorized to pay, without formal application to the Court by any Cooperating Witness and/or Employee Counsel, 100 percent of Expenses to each of the Cooperating Witnesses and/or Employee Counsel (at the written direction of the Cooperating Witness) upon submission to the Notice Parties of (i) an appropriate invoice setting forth in reasonable detail the nature of the services rendered after payment of the Past Reimbursement Request (if any), (ii) a copy of any Cooperation Agreement entered into with the Committee, and (iii) a detailed list of the Investigations participated in as of the date of such request, including the dates of interviews (if any) (collectively, the "Future Reimbursement Requests"); *provided* that Cooperating Witnesses shall be required to provide the Debtors and the Committee notice one week in advance of any expected activity as a Cooperating Witness, and such notice shall contain a non-binding estimate of Expenses related to such activity; *provided further* that while these

---

[8]    For the avoidance of doubt, no employee shall be eligible for a Future Reimbursement Request without first being designated as a Cooperating Witness.

chapter 11 cases are pending, the following limitations, exclusive of costs and disbursements, shall apply to the Future Reimbursement Requests:

- **$40,000 per month** on average over a rolling three-month period per Cooperating Witness (the "<u>Reimbursement Cap</u>") or **$240,000 in the aggregate** (the "<u>Reimbursement Case Cap</u>"). [9]

b. The Reimbursement Cap or the Reimbursement Case Cap may be increased by mutual agreement between the Debtors, the Committee, and the U.S. Trustee (the "<u>Excess Reimbursement Fees</u>"); *provided* that the Debtors shall file a notice with the Court of any such agreed increase (the "<u>Notice of Excess Reimbursement Fees</u>"). Interested parties shall have fourteen days to file an objection to the Notice of Excess Reimbursement Fees with the Court, which objection shall be filed in compliance with the Case Management Procedures. If after fourteen days no objection is filed, the Excess Reimbursement Fees shall be deemed approved, and the Cooperating Witness may be paid 100 percent of his or her Expenses without the need to file a fee application.

c. To the extent there is no agreement with respect to the Reimbursement Cap and the Reimbursement Case Cap as indicated in subparagraph 21(b), the Cooperating Witnesses, Employee Counsel, and the Notice Parties reserve all rights to seek satisfaction of any Future Reimbursement Request by separate Court order.

d. Beginning on the quarter ending March 31, 2023, and for each quarter thereafter during which these chapter 11 cases are pending, the Debtors shall, within thirty days thereof, serve on the Notice Parties and the U.S. Trustee a statement with respect to each Cooperating Witness paid during the immediately preceding quarterly period (the "<u>Quarterly Statement</u>"). Each Quarterly Statement shall include: (i) the name of the Cooperating Witness; (ii) the aggregate amounts reimbursed as Expenses incurred by that Cooperating Witness during the reported quarter; and (iii) a general description of the Investigations participated in by that Cooperating Witness.

22. For the avoidance of doubt, by this Motion, the Debtors are not requesting authority to: (a) retain any Employee Counsel; (b) reimburse any prepetition amounts owed to Cooperating Witnesses; (c) reimburse any Cooperating Witness's Expenses incurred in relation to any criminal prosecution of such Cooperating Witness; (d) reimburse any Expenses incurred by the Prospective

---

[9] For the avoidance of doubt, payment of any Past Reimbursement Requests *shall **not*** apply to the Reimbursement Case Cap.

Defendants; or (e) impair any party's rights to seek reimbursement of Expenses through separate Court order and/or under the D&O Policies, or otherwise.

**Basis for Relief**

**I.      Reimbursing the Expenses is Warranted Under Section 363(c) of the Bankruptcy Code.**

23.      Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1); *see, e.g.*, *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) ("Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into transactions involving property of the estate within the ordinary course of business without notice or a hearing."); *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003) (same).

24.      Notably, "[t]he Bankruptcy Code is designed to allow a debtor-in-possession the flexibility to engage in ordinary transactions without unneeded oversight by creditors or the court, while at the same time giving creditors an opportunity to contest those transactions that are not ordinary.  This balance between allowing businesses to continue their daily operations . . . and protecting creditors from squandering the estate's assets . . . is reflected in section 363(c)(1) of the Bankruptcy Code."  *In re Dana Corp.*, 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006); *In re James A. Phillips, Inc.*, 29 B.R. 391, 395 n.2 (S.D.N.Y. 1983) ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval.").

25.      Moreover, "[t]he term 'ordinary course of business' generally has been accepted 'to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business.'"  *In re Lavigne*, 114 F.3d

12

at 384 (citing *In re Watford*, 159 B.R. 597, 599 (M.D.Ga.1993), *aff'd without opinion*, 61 F.3d 30 (11th Cir.1995)).  There is a dual-prong test that expands upon this point, featuring the "horizontal test" and the "vertical test."   *In re Crystal Apparel, Inc.*, 220 B.R. 816, 831 (Bankr. S.D.N.Y. 1998).  The horizontal test looks to industry-wide practices to inform which activities and transactions are generally carried out "in the ordinary course," while the vertical test looks to the reasonable expectations of parties, particularly creditors.  *Id.* at 831; *In re Lavigne*, 114 F.3d at 384.

26.    A review of the Debtors' employment agreements with certain key employees indicates that Celsius has routinely reimbursed employees for expenses related to Company activities in the ordinary course of business.  Prepetition, Celsius routinely reimbursed employees for various expenses, including transportation and lodging, deemed to be necessary in the advancement of the Debtors' business.[10]  Moreover, the practice of paying for, or reimbursing employees for the cost of, separate counsel to represent such employee in connection with matters related to their employment was already contemplated before the filing of these chapter 11 cases, and such an arrangement is typical in matters involving regulatory and criminal investigations.  Finally, reimbursing the Expenses that relate to the employees' cooperation with the Investigations falls within the reasonable expectations of parties in interest, particularly creditors, given the broad ongoing scrutiny of the Debtors and the cryptocurrency market.  Thus, the Debtors submit that reimbursing the Expenses is "ordinary course" under section 363(c) of the Bankruptcy Code.

---

[10]   Certain employee agreements provide for reimbursement of expenses incurred by employees in connection with business-related activities.

## II.    Reimbursing the Expenses is Warranted Under Section 363(b)(1) of the Bankruptcy Code.

27.    To the extent the Court determines that the Debtors' reimbursement of Expenses is not ordinary course, the Court should permit the Debtors to make such payments pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate. . . ."[11]  To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge considering a 363(b) motion seeking to use, sell, or lease estate property must find that there exists a good business reason to grant such application); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for evaluating a section 363(b) motion is "a good business reason"); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

28.    The business judgment rule shields the decisions of a debtor's management team from judicial second guessing.  *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (noting that a "presumption of reasonableness attaches to a [d]ebtor's management decisions," and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth).  Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside of the ordinary course of business with a strong

---

[11]    While the Debtors believe that reimbursing the Expenses postpetition is not outside of the ordinary course of business, out of an abundance of caution, the Debtors seek Court approval to continue these practices under section 363(b) of the Bankruptcy Code.

presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor's actions satisfy the business judgment rule, the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

29.    The Debtors believe that the reimbursement of the Expenses on a postpetition basis pursuant to the Reimbursement Procedures is a proper exercise of the Debtors' business judgment and will expedite the Debtors' progress in these chapter 11 cases by (a) allowing the Debtors' employees to focus on maximizing profitability by helping to cover the costs associated with retaining counsel that represents their interests, and (b) aligning employee incentives with the Debtors' business goals.

30.    *First*, by reimbursing Expenses for Cooperating Witnesses, Cooperating Witnesses will be able to cooperate with any ongoing Investigations on a voluntary basis, which will inure to the benefit of the Debtors' estates. Without adequate representation that is separate from that of the Debtors, the Cooperating Witnesses may be reticent to voluntarily engage with regulatory agencies. Diminished cooperation from Cooperating Witnesses would hinder the Debtors' progress towards emergence from chapter 11 and limit the success of any Litigation Trust. By helping to offset the Expenses, the Debtors would be ensuring that the information and institutional knowledge the Cooperating Witnesses have amassed over the course of the Debtors' operations can continue to be more readily shared and used for the benefit of all parties, including the Debtors. On the other hand, if Debtors are unable to reimburse such Expenses, Employee Counsel may stop providing representation for the Cooperating Witnesses if such employees do not or cannot pay

15

the attorney's fees in a timely manner, which may hinder Investigations and/or create other avoidable delays.

31.     *Second*, the reimbursement of the Expenses pursuant to the Reimbursement Procedures provides the Debtors and the Committee the appropriate level of control over when and to what extent reimbursements will be made.   For example, under the Reimbursement Procedures, the Debtors and the Committee condition payment of a Past Reimbursement Request on an employee's commitment to cooperate in the future through a Cooperation Agreement.   In addition, if the Debtors pay either a Past Reimbursement Request or Future Reimbursement Request, they may seek recovery from the D&O Policies on subrogation grounds.   Finally, the Reimbursement Cap and the Reimbursement Case Cap will act as necessary guardrails to prevent Cooperating Witnesses from seeking reimbursement of an unreasonably high amount of Expenses on a go-forward basis.

32.     *Finally*, as to the other expenses, such as transportation and lodging, incurred by some Cooperating Witnesses in connection with their participation in Investigations, reimbursement of those expenses is critical in ensuring continued cooperation.   Traveling to meet with various parties and government agencies, as noted above, is an expensive proposition—one that the Cooperating Witnesses are not obligated to undertake.   Shifting the costs of such cooperation to the Cooperating Witnesses would only disincentivize their ongoing efforts and potentially delay or complicate the Debtors' ability to cooperate with ongoing investigations and regulatory engagement.   Therefore, it is in the best interests of all parties to permit the Debtors to reimburse the Expenses and support such cooperation to generate the maximum possible value for the Debtors' estates, creditors, and other parties in interest.

33. In sum, if the Debtors do not assist with the Expenses that Cooperating Witnesses have incurred in connection with their ongoing cooperation with the Investigations, employees are likely to stop voluntarily cooperating with the Investigations. Such refusal to cooperate would greatly hinder the Debtors' ability to emerge from chapter 11.

34. For the aforementioned reasons, the Debtors believe that the reimbursement of the Expenses, on a postpetition basis, is a proper exercise of the Debtors' business judgment and is in the best interests of their estates and the interests of all stakeholders in these chapter 11 cases.

III. **Reimbursement of the Expenses is an Administrative Priority Claim Under Section 503 of the Bankruptcy Code.**

35. Section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate . . . ." And section 503(b)(4) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including reasonable compensation for professional services rendered by an attorney . . . ." Many of the Expenses related to services already rendered, if left unpaid, are likely to receive administrative priority by their very nature and the plain meaning of sections 503(b)(4) and 503(b)(1), respectively.[12] Therefore, reimbursement of the Expenses in an organized fashion pursuant to the Reimbursement Procedures provides the applicable parties with what they would likely be entitled to receive under a chapter 11 plan without the need for potential costly litigation associated with seeking and/or defending against such claims.

---

[12] *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *see also*, *e.g.*, *Ardestani v. INS*, 502 U.S. 129, 135 (1991) ("The starting point in statutory interpretation is the language of the statute itself . . . . The strong presumption that the plain language of the statute expresses congressional intent is rebutted only in rare and exceptional circumstances . . . .") (internal quotation marks omitted); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (internal quotation marks omitted).

36.     Moreover, the timing of such reimbursement lies squarely within the Court's discretion.  *See In re Photo Promotion Assocs., Inc.*, 881 F.2d 6, 8–9 (2d Cir. 1989) ("[f]oremost, of course, is the broad discretion a bankruptcy judge has in applying . . . 503(b)"); *In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of [a section 503] administrative expense claim is left to the discretion of the Court").

37.     The employees, through their time at Celsius, have amassed a depth of information and institutional knowledge.  Such information has been, and continues to be, crucial in terms of advancing these chapter 11 cases and satisfying requests related to ongoing investigations, such as the Examiner's Report and the Committee's ongoing investigations.  Given that the aim of these chapter 11 cases is to reorganize the Debtors' business and emerge from bankruptcy as an efficient and compliant business, these proceedings, the Investigations, and the respective cooperation of the employees are crucial in preserving the value of the Debtors' estates.  The continuation of services provided by the applicable Employee Counsel and the reimbursement of other Expenses are key in encouraging cooperation from the Cooperating Witnesses and are, in turn, critical in preserving that same value of the Debtors' estates.  As such, any claims related to already provided services and already incurred Expenses would receive administrative expense priority under section 503(b).

38.     Forcing employees to bear the cost of the Expenses and forgo Employee Counsel would only serve to disincentivize their ongoing efforts and potentially delay or complicate the Debtors' ability to cooperate with ongoing investigations and regulatory engagement.  Therefore, it is in the best interests of all parties for the Debtors to reimburse Expenses, thereby supporting such cooperation.  To that end, the Debtors seek to reimburse the Expenses without delay.

## **Waiver of Bankruptcy Rule 6004(h)**

39.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

40.    Except as otherwise explicitly set forth in this Motion, nothing contained herein or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Motion Practice

41.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

42.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

43.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: February 28, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:             jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:             patrick.nash@kirkland.com
                       ross.kwasteniet@kirkland.com
                       chris.koenig@kirkland.com
                       dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO WITNESS COOPERATION AGREEMENTS WITH CERTAIN CURRENT AND FORMER EMPLOYEES, (II) AUTHORIZING REIMBURSEMENT OF PAST AND FUTURE OUT-OF-POCKET EXPENSES OF COOPERATING WITNESSES, INCLUDING ATTORNEY'S FEES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to enter into Cooperation Agreements with certain current and former employees; (b) authorizing reimbursement of out of pocket expenses of Cooperating Witnesses, including attorney's fees; and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing thereon were appropriate under the circumstances and no other notice

need be provided; and this Court having reviewed the Motion and having heard the statements in

support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted on a final basis as set forth herein.

2.    The Debtors are authorized to implement the following procedures for
reimbursement of Expenses associated with participating in Investigations (the "Reimbursement
Procedures").

3.    The Debtors are authorized to designate current and/or former employees as
Cooperating Witnesses on the procedures set forth below: [3]

   a.    As soon as reasonably practicable after entry of the Order, the Debtors, in
consultation with the Special Committee, shall provide the Committee with
a proposed list of current and/or former employees to serve as Cooperating
Witnesses, which list may be updated from time to time. The Debtors and
the Committee shall determine which employees shall be required to enter
into a Cooperation Agreement, whereby such employee will agree to
cooperate in future Investigations, including those in connection with the
Litigation Stipulation, and be deemed a Cooperating Witness.

   b.    The Debtors shall notify any potential Cooperating Witnesses in writing
(email being sufficient) of their eligibility to become a Cooperating Witness
upon execution of a Cooperation Agreement and eligibility for
reimbursement of Expenses on the terms set forth in the Reimbursement
Procedures. Any such potential Cooperating Witness shall be deemed a
Cooperating Witness upon execution of a Cooperation Agreement.

---

[3]    For the avoidance of doubt, none of the Prospective Defendants shall be designated as Cooperating Witnesses.

4.      The Debtors are authorized to reimburse Cooperating Witnesses for Past

Reimbursement Requests (as defined below) on the procedures set forth below:[4]

> a.      Within thirty days after executing a Cooperation Agreement, Cooperating Witnesses seeking reimbursement of Expenses incurred after the Petition Date through and including the date of his or her status as a Cooperating Witness (the "Past Reimbursement Request") shall provide (i) an invoice setting forth in reasonable detail the nature of the services rendered by Employee Counsel after the Petition Date, including Employee Counsel fees and expenses incurred from the Petition Date, and a copy of other Expenses incurred in connection with the Investigations (if any), (ii) a detailed list of the Investigations participated in to date, including the dates of interviews (if any), and (iii) a copy of Employee Counsel's engagement letter (collectively, the "Reimbursement Documents"), to (x) Celsius Network LLC, 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030, Attn: Ron Deutsch (ron.deutsch@celsius.network), (y) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. and Elizabeth H. Jones, and 300 North LaSalle, Chicago, Illinois 60654; Attn: Patrick J. Nash, Jr., P.C., Ross M. Kwasteniet, P.C., Christopher S. Koenig, and Dan Latona, and (z) counsel to the Committee, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: David Turetsky (david.turetsky@whitecase.com) and Samuel P. Hershey (sam.hershey@whitecase.com), White & Case, 111 South Wacker Drive, Suite 5100, Chicago, Illinois 60606, Attn: Michael C. Andolina (mandolina@whitecase.com) and Gregory F. Pesce (gregory.pesce@whitecase.com), White & Case LLP, 200 South Biscayne Blvd., Suite 4900, Miami, Florida 33133, Attn: Keith H. Wofford (kwofford@whitecase.com), and White & Case LLP, 555 South Flower Street, Suite 2700, Los Angeles, California 90071, Attn: Aaron E. Colodny (aaron.colodny@whitecase.com) (collectively, the "Notice Parties").

> b.      The Notice Parties shall have fourteen days after receiving the Reimbursement Documents to determine the amount of the Past Reimbursement Request that should be paid. In any event, the Debtors shall not pay more than **$3,000,000** on behalf of all Past Reimbursement Requests absent further order of the Court. If any objection to a Past Reimbursement Request cannot be resolved within fourteen days (the "Past Reimbursement Deadline"), the Debtors shall be authorized to satisfy only the undisputed amount of the Past Reimbursement Request until the outstanding objections can been resolved; *provided* that the Cooperating Witnesses, Employee Counsel, and the Notice Parties reserve all rights to

---

[4]   For the avoidance of doubt, no employee shall be eligible for a Past Reimbursement Request without first being designated as a Cooperating Witness.

seek satisfaction of any Past Reimbursement Request by separate Court order or under the D&O Policies.

c.    If no objection is received from any of the Notice Parties by the Past Reimbursement Deadline with respect to any particular Past Reimbursement Request, the Debtors shall be authorized to satisfy the Past Reimbursement Request. The Debtors shall notify the Cooperating Witness in writing (emailing being sufficient) within two business days after the Past Reimbursement Deadline of the amount of Past Reimbursement Request that shall be paid.

5.    The Debtors are authorized to reimburse Cooperating Witnesses for Future Reimbursement Requests (as defined below) on the procedures set forth below:[5]

a.    After any employee is designated a Cooperating Witness, the Debtors shall be authorized to pay, without formal application to the Court by any Cooperating Witness and/or Employee Counsel, 100 percent of Expenses to each of the Cooperating Witnesses and/or Employee Counsel (at the written direction of the Cooperating Witness) upon submission to the Notice Parties of (i) an appropriate invoice setting forth in reasonable detail the nature of the services rendered after payment of the Past Reimbursement Request (if any), (ii) a copy of any Cooperation Agreement entered into with the Committee, and (iii) a detailed list of the Investigations participated in as of the date of such request, including the dates of interviews (if any) (collectively, the "Future Reimbursement Requests"); *provided* that Cooperating Witnesses shall be required to provide the Debtors and the Committee notice one week in advance of any expected activity as a Cooperating Witness, and such notice shall contain a non-binding estimate of Expenses related to such activity; *provided further* that while these chapter 11 cases are pending, the following limitations, exclusive of costs and disbursements, shall apply to the Future Reimbursement Requests:

- **$40,000 per month** on average over a rolling three-month period per Cooperating Witness (the "Reimbursement Cap") or **$240,000 in the aggregate** (the "Reimbursement Case Cap"). [6]

b.    The Reimbursement Cap or the Reimbursement Case Cap may be increased by mutual agreement between the Debtors, the Committee, and the U.S. Trustee (the "Excess Reimbursement Fees"); *provided* that the Debtors shall file a notice with the Court of any such agreed increase (the "Notice of Excess Reimbursement Fees"). Interested parties shall have fourteen

---

[5]    For the avoidance of doubt, no employee shall be eligible for a Future Reimbursement Request without first being designated as a Cooperating Witness.

[6]    For the avoidance of doubt, payment of any Past Reimbursement Requests ***shall not*** apply to the Reimbursement Case Cap.

days to file an objection to the Notice of Excess Reimbursement Fees with the Court, which objection shall be filed in compliance with the Case Management Procedures. If after fourteen days no objection is filed, the Excess Reimbursement Fees shall be deemed approved, and the Cooperating Witness may be paid 100 percent of his or her Expenses without the need to file a fee application.

c.    To the extent there is no agreement with respect to the Reimbursement Cap and the Reimbursement Case Cap as indicated in subparagraph 21(b), the Cooperating Witnesses, Employee Counsel, and the Notice Parties reserve all rights to seek satisfaction of any Future Reimbursement Request by separate Court order.

d.    Beginning on the quarter ending March 31, 2023, and for each quarter thereafter during which these chapter 11 cases are pending, the Debtors shall, within thirty days thereof, serve on the Notice Parties and the U.S. Trustee a statement with respect to each Cooperating Witness paid during the immediately preceding quarterly period (the "Quarterly Statement"). Each Quarterly Statement shall include: (i) the name of the Cooperating Witness; (ii) the aggregate amounts reimbursed as Expenses incurred by that Cooperating Witness during the reported quarter; and (iii) a general description of the Investigations participated in by that Cooperating Witness.

6.    None of the Prospective Defendants shall be designated as Cooperating Witnesses, and such parties shall not be entitled to receive reimbursement by the Debtors for any Expenses.

7.    Cooperating Witnesses may not use the Reimbursement Procedures to seek reimbursement of Expenses incurred in relation to any criminal prosecution of such Cooperating Witness, and the Debtors shall not authorize the reimbursement of any Expenses of Cooperating Witnesses related to criminal prosecution of such Cooperating Witness, absent further order of the Court.

8.    The Debtors shall have subrogation rights to directors and officers against the D&O Policies in connection with any reimbursed Expenses.

9.    The Debtors are authorized to reimburse the Expenses in their discretion, with the tacit approval of the Notice Parties pursuant to the Reimbursement Procedures (such approval not to be unreasonably withheld), subject to the completion of a Cooperation Agreement, as

applicable, and solely with respect to the employees' cooperation in connection with the Investigations, either by reimbursing the applicable employee or by paying the applicable service provider directly.

10.    Nothing herein (a) alters or amends the terms and conditions of an engagement letter between an employee and their respective Employee Counsel; (b) relieves the Debtors of any of their obligations under an employee's employment agreement; or (c) precludes or limits, in any way, the rights of any insurer or the Debtor to contest and/or litigate the existence, primacy, and/or scope of available coverage under applicable D&O liability insurance.

11.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, except as explicitly provided for in this Order, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12.    Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing

constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the rights of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

13.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE