Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF HEARING ON JOINT MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING**
**(A) THE SETTLEMENT BY AND AMONG THE DEBTORS,**
**THE COMMITTEE, AND THE CUSTODY AD HOC GROUP**
**AND (B) THE ELECTION FORM AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Joint Motion for Entry of an Order (I) Approving (A) the Settlement by and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* (the "Motion") will be held on **March 21, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Hearing (i.e., on March 20, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on March 21, 2023 must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on March 21, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius*

2

*Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov; and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief,* [Docket No. 1181] (the "<u>Case Management Order</u>") by **March 14, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

      **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: February 28, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com
                    chris.koenig@kirkland.com
                    dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**JOINT MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING (A) THE SETTLEMENT BY AND AMONG**
**THE DEBTORS, THE COMMITTEE, AND THE CUSTODY AD HOC**
**GROUP AND (B) THE ELECTION FORM AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Celsius"), the Official Committee of Unsecured Creditors (the "Committee"), and the Ad Hoc Group of Custodial Account Holders (the "Custody Ad Hoc Group," and together with the Debtors and the Committee, the "Parties") respectfully state the following in support of this joint motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## Preliminary Statement[2]

1.    As the Debtors work towards filing their chapter 11 plan (the "<u>Plan</u>") with Novawulf Digital Management as the proposed plan sponsor, building consensus among stakeholders is critical.  Now, after six months of litigation, the Debtors have reached agreement with the Custody Ad Hoc Group and the Committee on a settlement that fully resolves the disputes between the Parties and secures the support of an important group of account holders for the Plan.  In short, the Settlement provides for electing Custody Account Holders to receive 72.5% of the cryptocurrency in their Custody Accounts (minus certain transaction costs) over time.  In return for an agreed 27.5% "haircut" to the electing Custody Claims, the Parties will settle all causes of action held by the Debtors against such Custody Account Holders with respect to such holders' Custody Assets, including preference actions and setoff rights.[3]

2.    The Settlement is the result of good-faith, hard-fought negotiations between the Debtors, the Committee, and the Custody Ad Hoc Group and their respective advisors.  The Settlement will be offered to all Custody Account Holders, other than current and former employees and insiders.  The Settlement provides certainty and finality not only to the Debtors, who are working to file their Plan, but also for many Custody Account Holders, who will be able to withdraw a portion of their Custody Assets prior to the effective date of the Plan.

3.    If the Court approves the Settlement, all Custody Account Holders will have thirty days to elect to participate in the Settlement to receive 72.5% of their Custody Distribution Claims in exchange for certain mutual releases, including the estates' release of all claims and causes of action (including avoidance actions) against such Settling Custody Account Holder on

---

[2]    Capitalized terms used by not defined in this section shall have the meanings ascribed to them later in the Motion, as applicable.

[3]    The Debtors also intend to provide Custody Account Holders with the opportunity to elect the same 72.5% proposed distribution in the Plan.

account of such holders' Custody distribution. The payments will be made in two stages—Settling Custody Account Holders will receive half of such settlement (36.25%) after the expiration of the thirty-day Election Period. The second half (another 36.25%) will be distributed on the effective date of the Debtors' Plan. The Settlement provides that if the effective date does not occur, the distributions will still be made by a number of alternative dates, including a prescribed outside date. Custody Account Holders who choose not to participate in the Settlement during the Election Period may still opt-in to such Settlement by voting to accept the Plan and such holders will receive the entirety of 72.5% of their eligible Custody Assets on the effective date of the Debtors' Plan. The balance of Settling Custody Account Holders' accounts (27.5%) will become the Debtors' property upon the occurrence of the effective date of the Plan. Settling Custody Account Holders will benefit from a most favored nations clause and receive the benefit of any settlement of avoidance actions offered to other Custody Account Holders under the Plan.

4.      The Settlement is fair, equitable, and a carefully negotiated consensual solution to one of the Debtors' most important open legal issues. Participation in the Settlement is entirely optional—for those that "opt-in" to the Settlement, it results in a final resolution of the Custody Issues on mutually beneficial grounds. Every eligible Custody Account Holder will have the opportunity to review the Settlement and independently determine whether to participate. No Custody Account Holder will be forced to accept the Settlement. Thus, the Settlement will not unfairly impair the rights of any Custody Account Holder, who may elect not to participate and litigate their Custody Claim after the effective date of the Plan. Moreover, upon approval of the Settlement, the Parties agree that Custody Account Holders that are eligible for distributions

under the existing Withdrawal Order (as defined below) may withdraw the entire balance of their Withdrawable Custody Assets (instead of the 94% already authorized by the Court).[4]

5.	For the reasons set forth below, the Parties request that the Court approve the Settlement and the Election Form implementing the Settlement.

## Relief Requested

6.	The Parties seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) approving the settlement (the "Settlement") as embodied in the settlement term sheet attached to the Order as Exhibit 1 (the "Settlement Term Sheet"), by and among the Parties; (b) approving the form and manner of the election form to participate in the Settlement attached to the Order as Exhibit 2 (the "Election Form"); and (c) approving the letter from the Custody Ad Hoc Group to Custody Account Holders regarding the Settlement, which will be included with the Election Form and will be attached to the Order as Exhibit 3 (the "Custody Ad Hoc Group Letter").[5]

## Jurisdiction and Venue

7.	The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that

---

[4]	Contemporaneously herewith, the Debtors also filed the *Notice of Potential Increase to Amount of Distributable Custody Assets*, providing notice of this Motion and that if this Motion is approved, Eligible Users shall be entitled to withdraw 100% (minus transaction fees and costs) of their Withdrawable Custody Assets.

[5]	A copy of the Custody Ad Hoc Group Letter will be filed prior to the hearing on the Motion, and if approved, will be attached to the Order as Exhibit 3. Prior to the hearing on the Motion, and after the Custody Ad Hoc Group Letter is filed, the Debtors shall file a revised proposed Order incorporating a request for approval of such letter and attaching it as Exhibit 3.

the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

10. Since the start of these chapter 11 cases, the Debtors, the Committee, and the Custody Ad Hoc Group have been focused on the unique and complicated issues associated with the digital assets in the Debtors' "Custody" program (the "Custody Program," and such assets, the "Custody Assets," and an account in the Custody Program, a "Custody Account," and each holder of a Custody Account, a "Custody Account Holder"). [6] ***First***, following extensive discussions between the Parties regarding the rights to, and return of, Custody Assets, on August 31, 2022, the Custody Ad Hoc Group commenced an adversary proceeding captioned *Ad Hoc Group of Custodial Account Holders v. Celsius Network LLC, et. al.*, Case No. 22-10964, Adv. No. 22-01142 (MG) (Bankr. S.D.N.Y. Aug. 31, 2022) (the "Custody Complaint"), seeking a declaratory judgment that Custody Assets are property of Custody Account Holders, not of the Debtors' estates, and that the Debtors should return ***all*** Custody Assets to Custody Account Holders as promptly as possible. *Complaint for Declaratory Judgment* [Adv. Pro. Docket No. 1] ¶¶ 60–62.

11. ***Second***, on September 1, 2022, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers*

---

[6] A "Custody Claim" is a claim, as defined in section 101(5) of the Bankruptcy Code, held by a Custody Account Holder against Celsius on account of Custody Assets.

*With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 670] (the "Withdrawal Motion"), seeking the Court's authorization to return to Custody Account Holders the Custody Assets that the Debtors believed were not property of the Debtors' estates and not subject to the Debtors' potential preference avoidance or setoff actions, among other relief. Specifically, the Debtors sought to return digital assets that (a) were only ever in the Custody Program (the "Pure Custody Assets") and (b) transferred in the 90 days before July 13, 2022 (the "Petition Date") from the "Earn" program (the "Earn Program") or the "Borrow" program (the "Borrow Program") to the Custody Program and, at the time of such transfer(s), the aggregate value of such transfer(s) was less than $7,575 (valued as of the time of each such transfer) (the "Transferred Custody Assets," and together with the Pure Custody Assets and to the extent not subject to the Debtors' potential setoff actions, the "Withdrawable Custody Assets," and the holders of such assets, the "Eligible Users"). Withdrawal Motion ¶¶ 4, 5, 10.

12.     In the Withdrawal Motion, the Debtors requested to maintain possession of all Custody Assets (a) that had been transferred into the Custody Program from the Earn Program or the Borrow Program and the aggregate value of such transfer(s) was equal to or greater than $7,575, or (b) that belonged to a Custody Account Holder with an outstanding loan owed to the Debtors through the Debtors' Borrow Program (the "Non-Withdrawable Custody Assets," and the holders of such assets, the "Non-Withdrawal Custody Account Holders"). Withdrawal Motion ¶¶ 4, 6. The Debtors determined that this relief was appropriate even after concluding that the Custody Assets were not property of the estate, because certain Custody Assets may be subject to avoidance pending the outcome of potential preference actions and/or necessary to satisfy an obligation with respect to a different claim under the Debtors' Borrow Program.

13. Given the overlapping issues between the Custody Complaint and the Withdrawal Motion, the Debtors, the Custody Ad Hoc Group, the Ad Hoc Group of Withhold Account Holders (the "Withhold Ad Hoc Group"),[7] and the Committee negotiated a scheduling order to resolve the remaining legal issues. On October 13, 2022, the Court approved the *Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1044] (the "Scheduling Order") whereby the Parties and the Withhold Ad Hoc Group would brief certain issues related to the withdrawals of Custody Assets and Withhold Assets in two phases. Scheduling Order ¶¶ 5–9. In Phase I (as defined in the Scheduling Order), the Parties briefed the following custody issues (the "Custody Issues"): (a) whether Custody Assets are property of the Debtors' estates, including whether Celsius' Terms of Use are unambiguous on the issue of ownership of Custody Assets; and (b) if Custody Assets are not property of the Debtors' estates, whether the Debtors should nonetheless be allowed to continue to hold Custody Assets, and maintain the status quo, with respect to individuals and/or accounts where the Debtors have potentially viable claims, including, without limitation, preference claims. *Id.* ¶ 5.

14. Although the Parties agreed on many of the terms of the Withdrawal Motion, the Parties disagreed as to whether the withdrawal process should be affected by the six percent shortfall in the Debtors' total designated Custody Assets compared to aggregate liabilities of the

---

[7] The Withhold Ad Hoc Group filed the *Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay* [Docket No. 737] (the "Withhold Lift Stay Motion") on September 7, 2022, requesting that the Court lift the automatic stay and order the Debtors to reopen withdrawals for the members of the Withhold Ad Hoc Group with respect to all of their assets in Withhold Accounts. Withhold Lift Stay Motion ¶ 4. For the avoidance of doubt, this Motion and the Settlement do not resolve the Withhold Lift Stay Motion, address any claims or rights of the Withhold Ad Hoc Group, and do not resolve any claims or rights with respect to Withhold assets generally.

Custody Program (the "Shortfall Issue").[8] While the Debtors and the Custody Ad Hoc Group maintained that Eligible Users should be permitted to withdraw all Withdrawable Custody Assets notwithstanding the Shortfall Issue, the Committee proposed that Eligible Users should only be permitted to withdraw a *pro rata* share of their Withdrawable Custody Assets. *Compare* Debtors' Response Brief ¶¶ 11–13 and Custody Response Brief ¶¶ 6–8 *with* Committee's Response Brief ¶¶ 12–13.

15. On December 7, 2022, the Court held a hearing (the "December 7 Hearing") on the Custody Issues, and found that "[t]here's agreement by the Debtors, the Committee, and the Ad Hoc Custody Account Holders Group that title to crypto assets pass to the Custody [A]ccount [H]olders when assets were deposited in the Custody [A]ccounts . . . ." Dec. 7 Hr'g. Tr. 158:19–22. At the same time, the Court "decline[d] to order [Non-Withdrawable Custody Assets] turned over to the Custody [Account] [H]olders," telling the Parties instead that "[w]e're going to move forward with phase two." *Id.* at 200:21–23; 200:25–201:4. At the conclusion of the December 7 Hearing, the Court ordered the Parties to meet and confer to resolve the Shortfall Issue and propose an order authorizing the Debtors to immediately return the Withdrawable Custody Assets. *See id.* at 209:22–214:3.

16. On December 20, 2022, the Court entered the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767] (the "Withdrawal Order"), (a) finding that digital assets in the Custody Wallets (as defined in the

---

[8] As of October 21, 2022, there was a discrepancy of approximately $15 million between the digital assets (approximately $193 million) in the Custody Wallets (as defined in the Blonstein Declaration) and the balances of Custody Accounts on an aggregated basis (approximately $208 million). *Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, with Respect to Certain Phase I Issues Pursuant to the Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1192] (the "Blonstein Declaration") ¶ 13 n.7.

Blonstein Declaration) are not property of the Debtors' estates under section 541 of the Bankruptcy Code and (b) granting the Withdrawal Motion in part to authorize the Debtors to open withdrawals for all Withdrawable Custody Assets *pro rata* on a coin-by-coin basis based on the proportion of each type of digital asset in the Custody Wallets. Withdrawal Order ¶¶ 1–2.[9] The Withdrawal Order provided that the Debtors would wait to publish a Distribution Schedule (as defined in the Withdrawal Order) until the Court ruled on the Shortfall Issue. *Id.* ¶¶ 2–3. Custody Account Holders with an outstanding loan owed to the Debtors through the Debtors' Borrow Program were not eligible to withdraw any of their otherwise Pure Custody Assets or Transferred Custody Assets. *Id.* ¶ 9. Following entry of the Withdrawal Order, the Parties began preparing for Phase II.[10]

17.     On January 19, 2023, the Court entered an order directing the Parties to "confer on whether they [could] agree on a procedure to make distributions using the assets that all Parties agree are Custody Assets, setting aside for later determination, on a coin-by-coin basis, any shortfall as to which a further determination by the Court is necessary before such shortfall can be allocated." *Order Directing Certain Parties to Confer Regarding Custody Assets Shortfall Issue* [Docket No. 1880]. During the hearing on January 24, 2023, the Debtors informed the Court that the Parties agreed that each Eligible User would be permitted to

---

[9]     In the Withdrawal Order, the Court reserved decision "with respect to whether digital assets transferred into the Custody Program, but not held in the Custody Wallets are property of the Debtors' estates under section 541 of the Bankruptcy Code." *See* Withdrawal Order, Recitals.

[10]    In Phase II, the Debtors, the Custody Ad Hoc Group, and the Committee would each select, based on the relevant transaction history provided by the Debtors, an agreed-upon number of would-be defendants, whose transfers shall be subject to a motion by the Custody Ad Hoc Group for a declaratory judgment on potential preference defenses with respect to such defendants, including the safe harbor under section 546 of the Bankruptcy Code, the ordinary course of business defense under section 547(c)(2)(A) of the Bankruptcy Code, and the ordinary business terms defense under section 547(c)(2)(B) of the Bankruptcy Code. Scheduling Order ¶ 10.

withdraw ninety-four percent (94%) of such user's Custody Assets pending the resolution of the Shortfall Issue. Jan. 24 Hr'g. Tr. 63:14–64:6.

18.     On January 31, 2023, the Debtors filed the *Notice of Schedule of Custody Users Entitled to Withdraw Certain Assets* [Docket No. 1958] (the "Withdrawal Notice"), listing the Eligible Users who were entitled to withdraw the Withdrawable Custody Assets pursuant to the Withdrawal Order and the procedures with which such withdrawals would be implemented, including the return of ninety-four percent of eligible coin balances of Withdrawable Custody Assets.

19.     Shortly after the December 7 Hearing, while simultaneously negotiating the Withdrawal Order and preparing for Phase II, the Parties also began discussions on a potential settlement of the Phase II issues and the Non-Withdrawable Custody Assets.  On or around February 14, 2023, after two months of extensive good faith and arm's-length negotiations between the Parties and their respective advisors, the Parties reached an agreement in principle, and the Settlement was finalized on February 28, 2023, and the Settlement Term Sheet is attached to the Order as Exhibit 1.

### The Settlement[11]

20.     The Settlement resolves all outstanding Custody Issues under the Scheduling Order (including Phase II as among the Parties through the Standstill (as defined in the Settlement Term Sheet)), as well as the Shortfall Issue.  Subject to this Court's approval, the Settlement will be offered to all Custody Account Holders (not only the members of the Custody

---

[11]   Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Settlement Term Sheet.  The following summary of the Settlement is provided for illustrative purpose only and is qualified in its entirety by reference to the Settlement Term Sheet.  In the event of any inconsistency between this summary and the Settlement Term Sheet, the Settlement Term Sheet controls in all respects.  Further, this summary shall not be used to construe or interpret the terms of the Settlement Term Sheet or intent of the parties thereto.

Ad Hoc Group) other than any current or former employee or insider of the Debtors, including all Non-Withdrawal Custody Account Holders whose Custody Assets are subject to (a) potential preference avoidance actions or (b) potential setoff rights of the Debtors.

21.     The Settlement constitutes a full and final satisfaction of all allowed claims against Celsius on account of Custody Assets (each such claim, an "<u>Allowed Custody Claim</u>") held by the Settling Custody Account Holders (as defined below) and provides a final resolution of all Custody Issues set forth in the Scheduling Order with respect to Settling Custody Account Holders. [12]  Importantly, Settling Custody Account Holders that elect to participate in the Settlement will receive 72.5% of their Custody Distribution Claim (as defined below) in exchange for a full and final release of all claims and causes of action related to their Custody Assets on the terms set forth in the Settlement Term Sheet—36.25% of such claim will be available prior to the effective date of any Plan.

22.     Custody Account Holders, including those with an outstanding loan owed to the Debtors through the Debtors' Borrow Program, shall be afforded an opportunity to opt-in to the Settlement within 30 days of the entry of the Order (the "<u>Election Period</u>") in accordance with the procedures detailed below (such a Custody Account Holder, a "<u>Settling Custody Account Holder</u>").  Once the Settlement is approved, the Debtors will be authorized to distribute to all Eligible Users the entire balance of their Withdrawable Custody Assets.  As of the date of the filing of this Motion, the Consenting Member Threshold (as defined in the Settlement Term Sheet) has accepted the Settlement.

23.     The key terms of the Settlement are as follows:

---

[12]   For the avoidance of doubt, the Settlement *shall not* be made available to any current or former employee or insider of the Debtors.

| SETTLEMENT TERMS | |
|---|---|
| **Settlement Summary** | The Settlement constitutes the full and final satisfaction of Allowed Custody Claims, including a settlement of the Shortfall Issue, with respect to each Settling Custody Account Holder.<br><br>Each Settling Custody Account Holder shall receive a distribution comprising:<br><br>• Commencing on the Withdrawal Date,[13] the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim[14] in the currency associated with such balance (the "<u>First Custody Settlement Payment</u>"); ***plus***<br><br>• Upon the earliest of (i) the effective date of the Plan (the "<u>Plan Effective Date</u>"), (ii) the occurrence of a Rejection Event,[15] (iii) June 11, 2023 if the Debtors do not file a chapter 11 plan by such date, and (iv) December 31, 2023, the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim in the currency associated with such balance (the "<u>Second Custody Settlement Payment</u>" and, together with the First Custody Settlement Payment, the "<u>Custody Settlement Payments</u>");<br><br>• On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Settling Custody Account Holder on account of such holders' Custody Distribution Claim; and<br><br>• Notwithstanding the foregoing, if any sale or chapter 11 plan provides any holders, or subset thereof, of Allowed Custody Claims with treatment on terms better than those set forth in the Settlement, including as a result of a release of claims against holders of Allowed Custody |

---

[13] The "<u>Withdrawal Date</u>" is the first date on which Custody Assets may be withdrawn from the Debtors' platform following the entry of the Order, in accordance with the terms set forth therein. The Withdrawal Date shall occur as soon as reasonably practicable following the (i) entry of the Order and (ii) expiration of the Election Period.

[14] A "<u>Custody Distribution Claim</u>" means the balance of the Custody Account of a Custody Account Holder (such balance, the "<u>Custody Account Balance</u>") ***minus*** (a) any Withdrawable Custody Assets and (b) any further amounts for which such Custody Account Holder is alleged to be obligated or indebted to the Debtors, except on account of (1) avoidance actions or (2) an obligation with respect to an outstanding retail loan to the extent such loan obligation is supported by an allowed Borrow Claim (as will be defined in the Plan) in an amount that results in a loan to value ratio of equal to or less than 80% on the date of the entry of the Order (it is expected that no such claims exist). With respect to (b)(2), the Debtors shall be authorized to subtract from the Custody Account Balance any amounts necessary to make any such outstanding retail loan's loan to value ratio equal 80%, which shall be calculated as of the date such Custody Account Holder's Custody Distribution Claim is calculated.

[15] A "<u>Rejection Event</u>" means the date the Debtors' chapter 11 cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

| | |
|---|---|
| | Claims (including avoidance actions), then any Settling Custody Account Holder shall be entitled to receive the difference between the Custody Settlement Payments and the treatment set forth in the sale or chapter 11 plan, as applicable, on the same terms set forth in such sale or chapter 11 plan, as applicable. |
| | Upon entry of the Order, the Scheduling Order shall be subject to the Standstill (as defined below) and the Custody Ad Hoc Group shall withdraw the Custody Complaint, subject to the Standstill. |
| | On the Plan Effective Date, the Scheduling Order and the Custody Complaint shall be withdrawn with prejudice. |
| | Upon entry of the Order, the Debtors shall be authorized to distribute to Eligible Users the additional six percent of Withdrawable Custody Assets originally held back as a result of the Shortfall Issue. For the avoidance of doubt, only Eligible Users shall receive assets totaling 100% of such holders' entitlement to the amounts permitted to be withdrawn by such holders under the Withdrawal Order, minus applicable transaction costs and fees. |
| **Treatment of non-Settling Custody Account Holders** | Each Holder of an Allowed Custody Claim that does not opt into the above Settlement and is not a Settling Custody Account Holder within 30 days after entry of the Settlement Order *that votes to accept the Plan* shall receive, in full and final satisfaction and settlement of such Holder's Allowed Custody Claim, a distribution comprising: |
| | • Commencing on the Plan Effective Date, the Custody Settlement Payments. |
| | • On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Custody Account Holder on account of such holders' Custody Distribution Claim. |
| | Each Holder of an Allowed Custody Claim that does not "opt-in" to the Settlement and *that abstains from voting or votes to reject the Plan* shall not be a Settling Custody Account Holder (the "Non-Settling Custody Account Holders"), and shall have an amount escrowed corresponding to such Holder's Allowed Custody Claim, and the litigation trustee appointed under the Plan shall have a period of time to be set forth in the Plan to commence avoidance actions against any Non-Settling Custody Account Holders following the Plan Effective Date. For the avoidance of doubt, any Non-Settling Custody Account Holders shall not grant or receive a release with respect to their Custody Claims, and shall retain all rights to litigate with respect to their Custody Claims following the Plan Effective Date, and the litigation trustee shall be vested with all legal entitlements, and defenses, and other rights held by the Debtors with respect to such Custody Claims, including the right to pursue avoidance actions with respect to any such Custody Claims. |
| | For the avoidance of doubt, any Holder of an Allowed Custody Claim that *abstains from voting or votes to reject the Plan* and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody |

| | Assets under the Withdrawal Order as a result of an outstanding loan owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Borrow Claims (as will be defined in the Plan) under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order. |
|---|---|
| **Release & Exculpation Provisions** | Upon entry of the Order, neither the Debtors nor the Debtors' estate shall pursue any avoidance actions such entities may have against the Settling Custody Account Holders, and the Settling Custody Account Holders shall agree not to pursue any litigation, including seeking relief from the automatic stay, turnover, or other claims or causes of action, related to any such holder's Custody Claims, in each case until the earlier of (a) the occurrence of a Rejection Event, (b) Plan Effective Date, and (c) 90 days after the confirmation hearing on the Plan, regardless of whether such Plan is confirmed (the "<u>Standstill</u>").<br><br>The Settlement includes mutual releases as further explained in the "Release & Exculpation Provisions" of the Settlement Term Sheet. |
| **Minimum Distributions** | No holders of Custody Distribution Claims that aggregate less than $10.00 shall be entitled to a distribution under the Settlement, except as otherwise provided under the Plan. |
| **Undeliverable Distributions** | Any distribution under the Settlement Order that is an Unclaimed Distribution (as will be defined in the Plan) or otherwise remains undeliverable for a period of one year after the first attempt to deliver such distribution shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code, except as otherwise provided in the Plan. |
| **Fees and Expenses** | The Debtors have agreed not to object or otherwise oppose the Custody Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Togut, Segal & Segal LLP, as counsel for the Custody Ad Hoc Group, in connection with the chapter 11 cases. |

24.     The Debtors have determined, in the exercise of their business judgment, that entry into the Settlement is in the best interest of their estates and all stakeholders and avoids the delay and costs of potentially protracted litigation regarding the Custody Issues. The Settlement was negotiated at arm's length and in good faith among the Debtors, the Committee, and the Custody Ad Hoc Group and their respective advisors and provides clarity and certainty to the Debtors' stakeholders with respect to Custody Account Holders' recoveries in these chapter 11 cases.

25.     In addition to resolving litigation, for those that voluntarily elect to participate in the Settlement—either pursuant to the Election Notice or the Plan—the Debtors will receive title to 27.5% of such Settling Custody Account Holders' Custody Assets (unless certain events occur which entitle the holders to receipt of more than 72.5% of their balance).  Thus, the Settlement provides for the Debtors to recover material assets that the Court has found belong to Custody Account Holders but are subject to avoidance actions.

### Election Process and Distribution Procedures

26.     ***Election Process***.  Upon entry of the Order and at the start of the Election Period, the Debtors will communicate with each Custody Account Holder via the Debtors' mobile application (the "Celsius App") and email (the "Email Notice") at the email address associated with their Custody Account of the Court's approval of the Settlement and such user's opportunity to participate in the Settlement.  The communications to Custody Account Holders will include instructions on how to complete and return the Election Form, substantially in the form attached to the Order as Exhibit 2, to Stretto, Inc. on the Debtors' case website.  Custody Account Holders will have 30 days following entry of the Order to "opt-in" to the Settlement.  At the expiration of the Election Period, Custody Account Holders will not be able to "opt-in" to the Settlement until the Plan solicitation process.

27.     This Settlement is only binding on the Custody Account Holders who elect to participate in the Settlement during the Election Period or pursuant to the Plan.  Custody Account Holders who "opt-in" to the Settlement under the Plan—rather than pursuant to the Election Notice—shall receive, in full and final satisfaction and settlement of such of their Allowed Custody Claim, (a) the Custody Settlement Payments commencing on the Plan Effective Date, and (b) a release of any causes of action, including avoidance and setoff actions, that the Debtors' estates may assert against them on account of their Custody Distribution Claim.

28.     In comparison, Non-Settling Custody Account Holders shall not receive a distribution on the effective date of the Plan. Rather, they shall have an amount escrowed corresponding to their Allowed Custody Claims, and the litigation trustee, or other comparable entity appointed under the Plan, shall have a period of time to be set forth in the Plan to commence avoidance actions against any Non-Settling Custody Account Holders following the Plan Effective Date. For the avoidance of doubt, any Non-Settling Custody Account Holders shall not grant or receive a release with respect to their Custody Claims, and shall retain all rights to litigate with respect to their Custody Claims following the Plan Effective Date, and the litigation trustee shall be vested with all legal entitlements, and defenses, and other rights held by the Debtors with respect to such Custody Claims, including the right to pursue avoidance actions with respect to any such Custody Claims.

29.     It is intended that any holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding loan owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Borrow Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order.

30.     ***Distribution Procedures***. The Custody Settlement Payments shall be made in-kind and the Debtors shall be permitted to make such payments using any combination of digital assets currently held in Custody Wallets or Aggregator Wallets (each as defined in the Blonstein Declaration), respectively, in an amount sufficient to satisfy such in-kind distribution. In the event there are insufficient in-kind digital assets to satisfy the Custody Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner

that is tax-efficient. Within 15 days of expiration of the Election Period, the Debtors shall notify

Settling Custody Account Holders through the Celsius App and by email of the amount and type

of digital asset that such holder will receive. All Settling Custody Account Holders shall be

required to provide the Debtors with an external wallet address through the Celsius App and

comply with any KYC requirements prior to receiving the Custody Settlement Payment.

### Basis for Relief

**I.     The Settlement Represents a Favorable Resolution of the Custody Issues and Reflect
the Debtors' Sound Business Judgment.**

31.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may

approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). A settlement under

Bankruptcy Rule 9019 need not result in the best possible outcome for the debtors, but must not

"fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert

Grp., Inc.*, 134 B.R. 493, 595 (Bankr. S.D.N.Y. 1991). In determining the range of

reasonableness, the bankruptcy court need not decide issues of law and fact raised by the

settlement. *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)

(citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In other words, the court does not

need to conduct a "mini-trial" of the underlying facts and merits; it needs only to evaluate those

facts that are necessary to allow it to assess the settlement and to make an independent judgment

about the settlement. *See In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)

("The standard does not require that the settlement be the best the debtor could have obtained nor

does it require the court to conduct a mini-trial of the questions of law and fact.").

32.     Rather, the court must be "apprised of those facts that are necessary to enable it to

evaluate the settlement and to make a considered and independent judgment." *In re Dewey &

LeBoeuf LLP*, 478 B.R. 627, 640-41 (Bankr. S.D.N.Y. 2012) (Glenn, J.). In conducting this

assessment, "a court may rely on the opinions of the debtor, the parties to the settlement, and professionals in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement." *Id.* at 641.

33.     Ultimately, the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("Although a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim."); *Drexel Burnham*, 134 B.R. at 505; *see also Abeles v. Infotechnology (In re Infotechnology)*, 1995 U.S. App. LEXIS 39883, at *4–5 (2d Cir. Nov. 9, 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor).

34.     A court should exercise its discretion in favor of a settlement wherever possible, as settlements are generally favored in bankruptcy. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged."); *see also In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ("The decision to grant or deny a settlement or compromise lies squarely within the discretion of the bankruptcy court [and such] discretion should be exercised in light of the general public policy favoring settlements.") (citing *Nellis* 165 B.R. at 121); *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting the paramount public policy for settlements)).[16] Notably, "[s]ettlements and compromises are favored in bankruptcy

---

[16]     Further, under section 105(a) of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Authorizing the Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019 as well as the Bankruptcy Code's predilection for compromise. Thus, to the extent necessary, section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re LATAM Airlines Group S.A.*, 2022 WL 272167, at *12 (Bankr. S.D.N.Y. Jan. 28, 2022) (quoting *In re MF Global Inc.*, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (Glenn, J.)).

35.    In determining whether to approve a settlement as fair and equitable and in the best interests of the Debtors' estates under Bankruptcy Rule 9019, courts in the Second Circuit consider what is often referred to as the "*Iridium*" factors:    (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount interest of the creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) whether the competency and experience of counsel support the settlement; and (g) the extent to which the settlement is the product of arm's-length bargaining.  *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

36.    The Debtors' entry into the Settlement is an exercise of their business judgment and represents a fair and equitable compromise between the Parties, falls well within the range of reasonableness, and satisfies each of the *Iridium* factors.  More specifically, with respect to the **first** and **second** *Iridium* factors, litigating the Custody Issues would consume significant estate resources at this critical juncture.  For example, the Parties have already spent more than six months on the Custody Issues without getting to Phase II.  In contrast, the Settlement resolves the status of the Custody Issues in a consensual manner and provides certainty to the Debtors'

creditors, without the need for further litigation. Time is of the essence in these chapter 11 cases, and it is crucial that the Debtors avoid the costs and delays associated with litigation.

37. With respect to the ***third*** *Iridium* factor, entry into the Settlement benefits each of the Debtors' stakeholders by maximizing value to the Debtors' estates and resolving key issues that impact creditor recoveries. The costs associated with any related litigation would drain the Debtors' estates and further delay creditor recoveries. Moreover, each Custody Account Holder will have the opportunity to "opt-in" to the Settlement and no Custody Account Holder will be forced to accept the Settlement. Indeed, the Settlement represents a fair and consensual resolution and therefore are in the best interest of each of the Debtors' stakeholders.

38. With respect to the ***fourth*** *Iridium* factor, the Settlement is supported by both the Custody Ad Hoc Group and the Committee. As the two non-Debtor parties with the most interest in advocating for Custody Account Holders in these chapter 11 cases, their approval and acceptance of the Settlement is a good indication that such agreement is fair and equitable.

39. With respect to the ***fifth*** *Iridium* factor, the releases granted by the Settlement are mutual, narrow in scope, essential to the Settlement, and are similar in nature to other settlements of the same nature in other chapter 11 cases. Specifically, the releases granted by the Debtors in the Settlement are a necessary component of the Settlement and appropriate under the circumstances.

40. Finally, with respect to the ***sixth*** and ***seventh*** *Iridium* factors, the Settlement is the product of arm's-length bargaining between the Parties represented by independent, competent counsel. In addition, *pro se* Custody Account Holders are not bound by this Settlement; rather, such parties may elect to participate in the Settlement at multiple times prior to confirmation of the Plan. This provides all parties with a reasonable opportunity to review and understand the terms of the Settlement before being bound by such agreement.

41. Finally, the Parties engaged in fair and thorough arm's-length negotiations, culminating into the terms proposed in the Settlement Term Sheet. The Settlement was negotiated over more than two months by and among three independent parties. The Parties exchanged multiple term sheets before agreeing to the terms set forth in the Settlement Term Sheet with meaningful concessions made by all Parties.

42. Thus, the terms of the Settlement satisfy the requirements of Bankruptcy Rule 9019 and the Parties request that the Court approve the Settlement and authorize each of the Parties to perform thereunder.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

43. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

44. Except as explicitly set forth in this Motion and the Settlement (once approved by the Court and implemented in accordance with its terms), nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim

## Motion Practice

45.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

46.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; (h) all Custody Account Holders; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

47.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated: February 28, 2023

/s/ Aaron E. Colodny
**White & Case LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 819-8200
Facsimile:    (212) 354-8113
Email:  david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        kwofford@whitecase.com

-and-
**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60654
Telephone:    (312) 881-5400
Facsimile:    (312) 881-5450
Email:        mandolina@whitecase.com
              gregory.pesce@whitecase.com

-and-

**WHITE & CASE LLP**

Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90012
Telephone:    (213) 620-7700
Facsimile:    (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

/s/ Kyle J. Ortiz
**TOGUT, SEGAL & SEGAL LLP**
Kyle J. Ortiz
Bryan M. Kotliar
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:    (212) 594-5000
Email:        kortiz@teamtogut.com
              bkotliar@teamtogut.com

*Counsel to the Ad Hoc Group of Custodial Account Holders*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | )    Case No. 22-10964 (MG) |
| | ) |
| Debtors. | )    (Jointly Administered) |
| | ) |

## ORDER (I) APPROVING (A) THE SETTLEMENT BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE CUSTODY AD HOC GROUP AND (B) THE ELECTION FORM AND (II) GRANTING RELATED RELIEF

Upon the joint motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), the Committee, and the Custody Ad Hoc Group (collectively, the "Parties") for entry of an order (this "Order") (i) approving (a) the Settlement, as embodied in the Settlement Term Sheet attached hereto as **Exhibit 1**, by and among the Parties and (b) the Election Form, attached hereto as **Exhibit 2**, (ii) approving the letter from the Custody Ad Hoc Group to Custody Account Holders regarding the Settlement, which will be included with the Election Form (the "Custody Ad Hoc Group Letter"), attached hereto as **Exhibit 3**, and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Settlement (as embodied in the Settlement Term Sheet attached hereto as **Exhibit 1**) and the Settlement Term Sheet is approved.

3. Pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and perform the Settlement as embodied in the Settlement Term Sheet, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Term Sheet.

4. The Election Form attached hereto as **Exhibit 2** is approved.

5. The letter from the Custody Ad Hoc Group to Custody Account Holders regarding the Settlement attached hereto as **Exhibit 3** (the "Custody Ad Hoc Group Letter") is approved. The Debtors shall include the Custody Ad Hoc Group Letter with the Election Form sent to Custody Account Holders.

6. Notwithstanding anything to the contrary in the Withdrawal Order and the Withdrawal Notice, the Debtors are authorized to permit Eligible Users to withdraw the additional six percent of the balance of their Withdrawable Custody Assets. As soon as reasonably practicable after entry of this Order, the Debtors shall file a revised Withdrawal Notice accordingly.

7. The notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

8. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10. This Order shall bind the Parties, their estates and any successors or assigns, including without limitation any trustee, liquidating trustee, or other estate representative.

11. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## Settlement Term Sheet

*In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG)

# SETTLEMENT TERM SHEET

# REGARDING CUSTODY ASSETS

THIS SETTLEMENT TERM SHEET (THIS "<u>SETTLEMENT TERM SHEET</u>") CONTAINS CERTAIN MATERIAL TERMS AND CONDITIONS OF A PROPOSED SETTLEMENT BY AND BETWEEN THE DEBTORS IN THE JOINTLY-ADMINISTERED CASES CAPTIONED *IN RE CELSIUS NETWORK LLC, ET AL.*, CASE NO. 22-10964 (MG) (THE "<u>DEBTORS</u>" AND, TOGETHER WITH THEIR NON-DEBTOR AFFILIATES, "<u>CELSIUS</u>"), THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "<u>COMMITTEE</u>"), THE AD HOC GROUP OF CUSTODIAL ACCOUNT HOLDERS (THE "<u>CUSTODY AD HOC GROUP</u>" AND, TOGETHER WITH THE DEBTORS AND THE COMMITTEE, THE "<u>PARTIES</u>"). THIS SETTLEMENT TERM SHEET CONTEMPLATES A FULL AND FINAL SETTLEMENT OF ALL CLAIMS BETWEEN THE PARTIES RELATED TO THE CUSTODY ASSETS, INCLUDING PHASE II OF THE CUSTODY AND WITHHOLD ISSUES (WITH RESPECT TO THE CUSTODY AD HOC GROUP), AS DEFINED IN THE *JOINT STIPULATION AND AGREED SCHEDULING ORDER BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE AD HOC GROUPS WITH RESPECT TO THE CUSTODY AND WITHHOLD ISSUES* [DOCKET NO. 1044] (THE "<u>SCHEDULING ORDER</u>").[1]

THIS SETTLEMENT TERM SHEET DOES NOT ADDRESS ALL TERMS, CONDITIONS, OR OTHER PROVISIONS THAT WOULD BE REQUIRED IN CONNECTION WITH THE SETTLEMENT, WHICH SHALL BE SET FORTH IN THE SETTLEMENT MOTION AND SETTLEMENT ORDER (EACH AS DEFINED BELOW), WHICH ARE SUBJECT TO AGREEMENT IN ACCORDANCE WITH THIS SETTLEMENT TERM SHEET.

THIS SETTLEMENT TERM SHEET IS NOT AN OFFER, ACCEPTANCE OR SOLICITATION WITH RESPECT TO ANY SECURITIES, LOANS, OR OTHER INSTRUMENTS OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER, ACCEPTANCE OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE LAW, INCLUDING SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE TO THE EXTENT APPLICABLE. NOTHING CONTAINED IN THIS SETTLEMENT TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL APPROVAL OF THE SETTLEMENT MOTION OR CONFIRMATION OF THE PLAN CONTEMPLATED HEREBY (AND THEN ONLY AS PROVIDED THEREIN), AS APPLICABLE, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

| SETTLEMENT TERMS | |
|---|---|
| **Settlement Summary** | The settlement (the "<u>Settlement</u>") between the Parties will include the following, as set forth in further detail in this Settlement Term Sheet: |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Scheduling Order or the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767] (the "<u>Withdrawal Order</u>"), as applicable.

- The Parties will file a joint motion to approve the Settlement, including distribution procedures, which shall be in form and substance acceptable to each of the Parties and otherwise consistent with this Settlement Term Sheet (together with all exhibits attached thereto, the "Settlement Motion"), to be heard at the March 21, 2023 omnibus hearing.

- Subject to the terms set forth herein, it is contemplated that this Settlement shall be offered to all account holders with balances reflected in Custody Accounts that are not otherwise authorized to fully withdraw the substantial majority such holders' Custody Assets from Celsius' platform pursuant to the Withdrawal Order (the "Non-Withdrawal Custody Account Holders"), including any holder with both (1) a Custody Account and (2) an outstanding loan owed to the Debtors through the Debtors' Borrow Program. Each Non-Withdrawal Custody Account Holder shall be afforded an opportunity to become a Settling Custody Account Holder (as defined below).

- Any Non-Withdrawal Custody Account Holders that voluntarily agree to the terms of the Settlement (the "Settling Custody Account Holders") shall receive the treatment set forth herein.

- The Settlement constitutes the full and final satisfaction of all allowed Custody claims on account of Custody Assets (each such claim, an "Allowed Custody Claim") held by the Settling Custody Account Holders against Celsius, including a settlement with respect to the approximately six percent shortfall between the amount of digital assets in the Debtors' Custody wallets compared to aggregate Custody liabilities (the "Shortfall Issue").

- This Settlement is contingent on the Steering Committee of the Custody Ad Hoc Group accepting the Settlement such that the Custody Ad Hoc Group agrees to the Standstill (the "Consenting Member Threshold").

- Upon entry of an order approving the Settlement Motion, which shall be in form and substance acceptable to each of the Parties and otherwise consistent with this Settlement Term Sheet (together with all exhibits attached thereto, the "Settlement Order"), the Custody Ad Hoc Group shall withdraw, subject to the Standstill (as defined below), the complaint in the adversary proceeding captioned *Ad Hoc Group of Custodial Account Holders v. Celsius Network LLC, et al*, Adv. Pro. No. 22-01142 (MG) (Bankr. S.D.N.Y. Aug. 31, 2022) (the "Custody Complaint"). The Custody Complaint shall be withdrawn with prejudice on the Plan Effective Date (as defined below).

- Upon entry of the Settlement Order, the Scheduling Order shall be

|  | subject to the Standstill. The Scheduling Order shall be withdrawn with prejudice on the Plan Effective Date. |
|  | ▪ Upon entry of the Settlement Order, the Debtors shall be authorized to distribute to those account holders with balances associated with Custody Accounts authorized to withdraw assets pursuant to the Withdrawal Order the additional 6% originally held back as a result of the Shortfall Issue. For the avoidance of doubt, only those holders of Custody Accounts permitted to withdraw assets pursuant to the Withdrawal Order shall receive assets totaling 100% of such holders' entitlement to the amounts permitted to be withdrawn by such holders under the Withdrawal Order, minus applicable transaction costs and fees. |
|  | ▪ By agreeing to the Settlement, any Settling Custody Account Holder agrees that, following the distribution of a court-approved disclosure statement and balloting materials, he or she shall support and vote to accept all of its claims provided for hereunder in connection with a chapter 11 plan that provides for treatment of the Allowed Custody Claims that are subject to this Settlement held by Settling Custody Account Holders in accordance with the terms of this Settlement (the "Plan"). The disclosure statement for such Plan may include a statement that the Custody Ad Hoc Group supports such Plan as it relates to the treatment of Allowed Custody Claims that are subject to this Settlement held by the Settling Custody Account Holders or a letter from the Custody Ad Hoc Group to the same effect. For the avoidance of doubt, nothing in this Settlement shall dictate the manner in which a Settling Custody Account Holder votes any claim other than an Allowed Custody Claim. |
|  | For the avoidance of any doubt, nothing herein precludes any account holder from withdrawing any assets from Celsius' platform as permitted by the Withdrawal Order (the "Withdrawn Assets"). |
| **Settlement Motion** | The Custody Ad Hoc Group shall inform the Debtors and the Committee (a) of the members of the Custody Ad Hoc Group that have stated their intention to participate in the Settlement and (b) that the Consenting Member Threshold has been met no later than two (2) business days prior to the filing of the Settlement Motion. |
|  | Any account holders with balances reflected in Custody Accounts shall be permitted to sign on to the Settlement within 30 days of the entry of the Settlement Order (the "Election Period").[2] |
| **Custody Claims** | "Custody Distribution Claim" means the balance of the Custody Account Holder (such balance, the "Custody Account Balance") *minus* (a) any Withdrawn Assets and (b) any further amounts for which such Custody Account Holder is alleged to be obligated or indebted to the Debtors, except on account of (1) avoidance actions |

---

[2]     The process for joining the Settlement shall be set forth in the Settlement Motion as approved by the Settlement Order.

or (2) an obligation with respect to an outstanding retail loan to the extent such loan obligation is supported by an allowed Borrow Claim (as will be defined in the Plan) in an amount that results in a loan to value ratio of equal to or less than 80% on the date of the entry of the Settlement Order (it is expected that no such claims exist). With respect to (b)(2), the Debtors shall be authorized to subtract from the Custody Account Balance any amounts necessary to make any such outstanding retail loan's loan to value ratio equal 80%, which shall be calculated as of the date such Custody Account Holder's Custody Distribution Claim is calculated.

The "Withdrawal Date" is the first date on which digital assets corresponding to Custody digital assets are withdrawn from the Debtors' platform following the entry of the Settlement Order, in accordance with the terms set forth therein. The Withdrawal Date shall occur as soon as reasonably practicable following the (i) entry of the Settlement Order and (ii) expiration of the Election Period.

Each Settling Custody Account Holder must vote all of his or her Allowed Custody Claims to accept the Plan and shall receive, in full and final satisfaction and settlement of such Settling Account Holder's Allowed Custody Claim and in exchange for such Holder's agreement to abide by the Standstill, a distribution comprising:

- Commencing on the Withdrawal Date, the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim in the currency associated with such balance (the "First Custody Settlement Payment"); *plus*

- Upon the earliest of (i) the effective date of the Plan (the "Plan Effective Date"), (ii) the occurrence of a Rejection Event,[3] (iii) June 11, 2023 if the Debtors do not file a chapter 11 plan by such date, and (iv) December 31, 2023, the right to withdraw from the Debtors' platform an in-kind distribution of 36.25% of such Settling Custody Account Holder's Custody Distribution Claim in the currency associated with such balance (the "Second Custody Settlement Payment" and, together with the First Custody Settlement Payment, the "Custody Settlement Payments").

- On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Settling Custody Account Holder on account of such holders' Custody Distribution Claim;

- Notwithstanding the foregoing, if any sale or chapter 11 plan provides any holders, or subset thereof, of Allowed Custody Claims with treatment on terms better than those set forth in this Settlement, including as a result of a release of claims against holders of Custody

---

[3] "Rejection Event" means the date the Debtors' chapter 11 cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

Claims (including avoidance actions), then any Settling Custody Account Holders shall be entitled to receive the difference between the Custody Settlement Payments and the treatment set forth in the sale or chapter 11 plan, as applicable, on the same terms set forth in such sale or chapter 11 plan, as applicable.

Each Holder of an Allowed Custody Claim that does not opt into the above settlement and is not a Settling Custody Holder within 30 days after entry of the Settlement Order *that votes to accept the Plan* shall receive, in full and final satisfaction and settlement of such Holder's Allowed Custody Claim, a distribution comprising:

- Commencing on the Plan Effective Date, the Custody Settlement Payments.

- On the Plan Effective Date, a release of any causes of action, including avoidance actions, that the Debtors' estates may assert against such Custody Account Holder on account of such holders' Custody Distribution Claim.

Each Holder of an Allowed Custody Claim that does not "opt-in" to the Settlement within 30 days after entry of the Settlement Order and that abstains from voting or votes to reject the Plan shall not be a Settling Custody Account Holder (the "Non-Settling Custody Account Holders"), and shall have an amount escrowed corresponding to such Holder's Allowed Custody Claims, and the litigation trustee appointed under the Plan shall have a period of time to be set forth in the Plan to commence avoidance actions against any Non-Settling Custody Account Holders following the Plan Effective Date. For the avoidance of doubt, any Non-Settling Custody Account Holders shall not grant or receive a release with respect to their Custody Claims, and shall retain all rights to litigate with respect to their Custody Claims following the Plan Effective Date, and the litigation trustee shall be vested with all legal entitlements, and defenses, and other rights held by the Debtors with respect to such Custody Claims, including the right to pursue avoidance actions with respect to any such Custody Claims.

For the avoidance of doubt, any Holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding loan owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Borrow Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order.

| | |
|---|---|
| **Release & Exculpation Provisions** | Upon entry of the Settlement Order, neither the Debtors nor the Debtors' estates shall pursue any avoidance actions such entities may have against the Settling Custody Account Holders, and the Settling Custody Account Holders shall agree not to pursue any litigation, including seeking relief from the automatic stay, turnover, or other claims or causes of action, related to any such holder's Custody Claims, in each case until the earlier of (a) the occurrence of a Rejection Event, |

| | |
|---|---|
| | (b) Plan Effective Date, and (c) 90 days after the confirmation hearing on the Plan, regardless of whether such Plan is confirmed (the "<u>Standstill</u>"). |
| | Upon entry of the Settlement Order, the Parties agree that any and all digital assets (other than collateral on account of loan claims) in the Settling Custody Account Holders' accounts that are not distributed or required to be distributed to such Holders under the Withdrawal Order, the Settlement Order, or any order confirming the Plan, as applicable, shall be considered property of the Debtors' estates and any claims and/or causes of action held by any Party with respect to such assets shall be released and waived pursuant to such applicable order. For the avoidance of doubt, after the Plan Effective Date, Holders of Allowed Custody Claims that vote to accept the Plan agree that on the Plan Effective Date any and all digital assets in such Holders' accounts that are not distributed to such Holder under the order confirming the Plan, or were not distributed or required to be distributed to such Holder under the Withdrawal Order or the Settlement Order, shall be considered property of the Debtors' estates and any claims and/or causes of action held by any Party with respect to such assets shall be released and waived pursuant to such order. |
| | Upon the Plan Effective Date, each of the Parties shall mutually release each other Party from any and all claims and causes of action related to the applicable Custody Claims of Settling Custody Account Holders, including any avoidance actions or, with respect to such Settling Custody Account Holders' Custody Distribution Claims, setoff rights. |
| | Notwithstanding anything to the contrary set forth herein, the Parties are not releasing any rights or causes of action against any Parties with respect to any assets other than Custody Assets, subject to the terms set forth in this Settlement Term Sheet, including: (a) assets held in the Earn Program by an account holder party to the Settlement; (b) assets held in the Borrow Program by an account holder party to the Settlement; (c) assets held in the Withhold Accounts by an account holder party to the Settlement (if any); and (d) assets transferred off of Celsius' platform by an account holder party to the Settlement (other than in accordance with the Withdrawal Order and/or Settlement Order). |
| **Distribution Procedures** | The Custody Settlement Payments shall be made in-kind and the Debtors shall be permitted to make such payments using any combination of digital assets currently held in Custody Wallets or Aggregator Wallets, respectively, in an amount sufficient to satisfy such in-kind distribution; *provided that*, in the event there are insufficient in-kind digital assets to satisfy the Custody Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient. |
| | The Debtors shall notify Settling Custody Account Holders through the Debtors' mobile application (the "<u>Celsius App</u>") and by email of the amount and type of digital asset that such holder will receive within 15 days of expiration of the Election Period. |

| | Settling Custody Account Holders shall be required to provide the Debtors with an external wallet address through the Celsius App and comply with any KYC requirements prior to receiving the Custody Settlement Payment. |
|---|---|
| **Fees and Expenses** | The Debtors will not object to or otherwise oppose the Custody Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Togut, Segal & Segal LLP, as counsel for the Custody Ad Hoc Group, in connection with the chapter 11 cases. |
| **Minimum Distributions** | No holders of Custody Distribution Claims that aggregate less than $10.00 shall be entitled to a distribution under the Settlement, except as otherwise provided under the Plan. |
| **Undeliverable Distributions** | Any distribution under the Settlement Order that is an Unclaimed Distribution (as will be defined in the Plan) or otherwise remains undeliverable for a period of one year after the first attempt to deliver such distribution shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code, except as otherwise provided in the Plan. |
| **Tax Matters** | The Settlement shall be structured in a tax-efficient and cost-effective manner. |

<u>**EXHIBIT 2**</u>

**Election Form**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF ELECTION TO OPT IN TO**
**SETTLEMENT BY AND AMONG THE DEBTORS,**
**THE COMMITTEE, AND THE CUSTODY AD HOC GROUP**

---

**YOU ARE RECEIVING THIS NOTICE (THIS "NOTICE") BECAUSE OUR RECORDS SHOW YOU HOLD CUSTODY ASSETS AND ARE A CUSTODY ACCOUNT HOLDER.**

**CUSTODY ACCOUNT HOLDERS MAY VOLUNTARILY "OPT IN" TO THE SETTLEMENT IN FULL AND FINAL SATISFACTION OF SUCH CUSTODY ACCOUNT HOLDERS' ALLOWED CUSTODY CLAIM**

---

Celsius Network LLC and certain of its affiliates (collectively, the "Debtors") hereby offer all Custody Account Holders, other than current and former employees and insiders, the opportunity to accept the settlement (the "Settlement") described in the *Joint Motion for Entry of an Order (I) Approving (a) the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (b) the Election Form and (II) Granting Related Relief* [Docket No. [●]] (the "Motion").[2]  Copies of the Motion can be obtained by accessing the Debtors' case information website (located at https://cases.stretto.com/celsius).

The United States Bankruptcy Court for the Southern District of New York (the "Court") has approved the Settlement pursuant to the *Order (I) Approving (a) the Settlement By and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (b) the Election Form and (II) Granting Related Relief* [Docket No. [●]] (the "Order").  The Settlement Term Sheet is attached to the Order as Exhibit 1 and hereto as **Appendix 1**.  A letter form the Ad Hoc Group regarding the Settlement is attached to the Order as Exhibit 3 and attached hereto as **Appendix 2**.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]   Capitalized terms used and not otherwise defined herein have the meaning ascribed to them in the Motion.

**THE OPT IN ELECTION FORM ATTACHED HERETO AS <u>EXHIBIT A</u> (THE "<u>ELECTION FORM</u>") PROVIDES YOU WITH THE OPTION TO SETTLE ALL ACTIONS AND CLAIMS YOU MAY HAVE AGAINST THE DEBTORS RELATED TO YOUR CUSTODY ASSETS. THE RELEASES CONTAINED IN THE SETTLEMENT ARE A CONDITION TO RECEIVING THE CUSTODY SETTLEMENT PAYMENTS.**

Pursuant to the Settlement, as soon as reasonably practicable following the expiration of the Election Period (*i.e.*, 30 days after the Order is entered), Settling Custody Account Holders shall have the right to receive the First Custody Settlement Payment, equal to 36.25% of such account holder's Custody Distribution Claim,[3] and upon the earliest of (i) the effective date of the Plan, (ii) the occurrence of a Rejection Event,[4] (iii) June 11, 2023 if the Debtors do not file a chapter 11 plan by such date, and (iv) December 31, 2023, the Settling Custody Account Holders shall have the right to receive the Second Custody Settlement Payment, which is also equal to 36.25% of such account holder's Custody Distribution Claim; *provided*, *however*, that any Custody Account Holder must affirmatively opt in to the Settlement by submitting the Election Form attached hereto as **<u>Exhibit A</u>** to receive the payments set forth above on the date specified therein.

The Settlement provides for certain releases of claims by the Debtors, and certain releases of claims by the Custody Account Holders. These releases are described in greater detail in the Motion. By agreeing to this Settlement, you are irrevocably electing not to pursue any claims or causes of action prohibited by these releases. **Please read the following section carefully, as it describes these releases**:

**NEITHER THE DEBTORS NOR THE DEBTORS' ESTATE SHALL PURSUE ANY AVOIDANCE ACTIONS SUCH ENTITIES MAY HAVE AGAINST THE SETTLING CUSTODY HOLDERS, AND THE SETTLING CUSTODY HOLDERS SHALL AGREE NOT TO PURSUE ANY LITIGATION, INCLUDING SEEKING RELIEF FROM THE AUTOMATIC STAY, TURNOVER, OR OTHER CLAIMS OR CAUSES OF ACTION, RELATED TO ANY SUCH HOLDER'S CUSTODY CLAIMS, IN**

---

[3]    A "<u>Custody Distribution Claim</u>" means the balance of the Custody Account of a Custody Account Holder (such balance, the "<u>Custody Account Balance</u>") *minus* (a) any Withdrawable Custody Assets and (b) any further amounts for which such Custody Account Holder is alleged to be obligated or indebted to the Debtors, except on account of (1) avoidance actions or (2) an obligation with respect to an outstanding retail loan to the extent such loan obligation is supported by an Allowed Borrow Claim (as defined in the forthcoming plan) in an amount that results in a loan to value ratio of equal to or less than 80% on the date of the entry of the Order (it is expected that no such claims exist). With respect to (b)(2), the Debtors shall be authorized to subtract from the Custody Account Balance any amounts necessary to make any such outstanding retail loan's loan-to-value ratio equal 80%, which shall be calculated as of the date such Custody Account Holder's Custody Distribution Claim is calculated.

[4]    "<u>Rejection Event</u>" means the date the Debtors' chapter 11 cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

**EACH CASE UNTIL THE EARLIER OF (A) THE OCCURRENCE OF A REJECTION EVENT, (B) PLAN EFFECTIVE DATE, AND (C) THE STANDSTILL.[5]**

**ANY AND ALL DIGITAL ASSETS (OTHER THAN COLLATERAL ON ACCOUNT OF LOAN CLAIMS) IN THE SETTLING CUSTODY HOLDERS' ACCOUNTS THAT ARE NOT DISTRIBUTED OR REQUIRED TO BE DISTRIBUTED TO SUCH HOLDERS UNDER THE WITHDRAWAL ORDER, THE SETTLEMENT ORDER, OR ANY ORDER CONFIRMING THE PLAN, AS APPLICABLE, SHALL BE CONSIDERED PROPERTY OF THE DEBTORS' ESTATES AND ANY CLAIMS AND/OR CAUSES OF ACTION HELD BY ANY PARTY WITH RESPECT TO SUCH ASSETS SHALL BE RELEASED AND WAIVED PURSUANT TO THE ORDER. FOR THE AVOIDANCE OF DOUBT, AFTER THE PLAN EFFECTIVE DATE, HOLDERS OF ALLOWED CUSTODY CLAIMS THAT VOTE TO ACCEPT THE PLAN AGREE THAT ON THE PLAN EFFECTIVE DATE ANY AND ALL DIGITAL ASSETS IN SUCH HOLDERS' ACCOUNTS THAT ARE NOT DISTRIBUTED TO SUCH HOLDER UNDER THE PLAN, OR WERE NOT DISTRIBUTED OR REQUIRED TO BE DISTRIBUTED TO SUCH HOLDER UNDER THE WITHDRAWAL ORDER OR THE ORDER, SHALL BE CONSIDERED PROPERTY OF THE DEBTORS' ESTATES AND ANY CLAIMS AND/OR CAUSES OF ACTION HELD BY ANY PARTY WITH RESPECT TO SUCH ASSETS SHALL BE RELEASED AND WAIVED PURSUANT TO SUCH ORDER.**

**UPON THE PLAN EFFECTIVE DATE, EACH OF THE PARTIES SHALL MUTUALLY RELEASE EACH OTHER PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION RELATED TO THE APPLICABLE CUSTODY CLAIMS OF SETTLING CUSTODY ACCOUNT HOLDERS, INCLUDING ANY AVOIDANCE ACTIONS OR, WITH RESPECT TO SUCH SETTLING CUSTODY ACCOUNT HOLDERS' CUSTODY DISTRIBUTION CLAIMS, SETOFF RIGHTS.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH IN THE SETTLEMENT, THE PARTIES ARE NOT RELEASING ANY RIGHTS OR CAUSES OF ACTION AGAINST ANY PARTY WITH RESPECT TO ANY ASSETS OTHER THAN CUSTODY ASSETS, SUBJECT TO THE TERMS SET FORTH IN THE SETTLEMENT, INCLUDING: (A) ASSETS HELD IN THE EARN PROGRAM BY AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT; (B) ASSETS HELD IN THE BORROW PROGRAM BY AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT; (C) ASSETS HELD IN THE WITHHOLD ACCOUNTS BY AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT (IF ANY); AND (D) ASSETS TRANSFERRED OFF OF CELSIUS' PLATFORM BY AN ACCOUNT HOLDER PARTY TO THE SETTLEMENT (OTHER THAN IN ACCORDANCE WITH THE WITHDRAWAL ORDER AND/OR SETTLEMENT ORDER).**

---

[5] "Standstill" means 90 days after the confirmation hearing on the Plan, regardless of whether such Plan is confirmed.

**THE SETTLEMENT IS OPT IN ONLY. NO ACTION IS NECESSARY TO OPT OUT AND BE TREATED IN ACCORDANCE WITH ANY CHAPTER 11 PLAN OF THE DEBTORS. IF YOU FAIL TO PROPERLY COMPLETE AND SUBMIT THE OPT IN ELECTION FORM PRIOR TO THE OPT-IN DEADLINE, YOU MAY STILL OPT INTO THE SETTLEMENT UNDER ANY CHAPTER 11 PLAN OF THE DEBTORS.**

If you have any questions concerning this Notice, the Settlement, or the procedures set forth in the Election Form, please contact Stretto, Inc., the Debtors' claims, noticing, and solicitation agent by calling 855.423.1530 (toll free) or 949.669.5873 (international), or by email at Celsiusinquiries@stretto.com.

## **EXHIBIT A**

Opt In Election Form

<u>Opt In Instructions</u>

***If You Are a Custody Account Holder:***

Custody Account Holders who wish to opt into the Settlement must electronically deliver their instruction to opt in to the Settlement ("<u>Electronic Opt In</u>") in accordance with the procedures as set forth herein. If you do not wish to agree to the Settlement, the Election Form ***should not be*** submitted to the Debtors' Claims, Notice, and Solicitation Agent, Stretto, Inc. (the "<u>Agent</u>"). For the Electronic Opt In to be effective with respect to a Custody Account Holder's Claim, the Electronic Opt In must be received by the Agent by [April 24], 2023 at 5:00 p.m. (Prevailing Eastern Time) (the "<u>Opt In Deadline</u>").

**ONCE A HOLDER DELIVERS AN ELECTRONIC OPT IN TO THE AGENT, SUCH HOLDER WILL NO LONGER HAVE THE RIGHT TO SELL OR TRANSFER ANY CUSTODY ASSETS EXCEPT IF THE HOLDER WITHDRAWS THE OPT IN ELECTION PRIOR TO THE OPT IN DEADLINE OR, TO THE EXTENT PERMITTED AND APPLICABLE REQUIREMENTS ARE MET, IN CERTAIN OTHER LIMITED CIRCUMSTANCES.**

All questions as to the validity, form, eligibility (including time of receipt) and acceptance and revocation of an Election Form will be resolved by the Debtors, in the Debtors' sole discretion, which resolution shall be final and binding.

**Completed Election Forms must be received by the Agent by the Opt In Deadline.** If your Election Form is submitted after the Opt In Deadline, your Election Form will not be accepted. If your Election Form is submitted and the opt in box below is not checked, you will not be deemed to have accepted the Settlement. Any Election Form that does not provide sufficient information to identify the holder will not be valid.

If you are completing this Election Form on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label or if no such mailing label is attached to the Notice.

**Election Form**

**THIS ELECTION FORM PROVIDES THE OPPORTUNITY TO RECEIVE TREATMENT AS SPECIFIED IN THE SETTLEMENT. IF YOU (I) ABSTAIN FROM COMPLETING THIS ELECTION FORM OR (II) FAIL TO PROPERLY COMPLETE THIS ELECTION FORM AND SUBMIT IT BY THE OPT IN DEADLINE, YOU WILL RECEIVE AN ADDITIONAL OPPORTUNITY TO OPT INTO SIMILAR TREATMENT IN ACCORDANCE WITH THE DEBTORS' FORTHCOMING CHAPTER 11 PLAN.**

       If you wish to elect into the Settlement for Custody Account Holders, you must check the box below and submit this Electronic Opt In to the Debtors' claims, noticing, and solicitation agent, Stretto, Inc., **so that such Election Form is actually received on or before [April 24], 2023, at 5:00 p.m. (prevailing Eastern Time).** If you do not wish to "opt in" to the Settlement, there is no need to take any further action.

       The Custody Account Holder identified below:

       ☐  elects to "opt-in" to the Settlement.

Name: _____

Signature: _____

By: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

Date Completed: _____

       **You may obtain a copy of the (a) Settlement and (b) other important documents in these chapter 11 cases, by visiting the website of the Debtors' claims, noticing, and solicitation agent, Stretto, Inc., available at <u>https://cases.stretto.com/celsius</u> or by calling 855.423.1530 (toll free) or 949.669.5873 (international).**

## __EXHIBIT 3__

## Custody Ad Hoc Group Letter

[TO COME]