Daniel A. Frishberg,

*Pro Se*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered.) |
|  | ) |  |

# DANIEL A. FRISHBERGS' SECOND LIMITED OBJECTION TO THE DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER (I) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

Daniel A. Frishberg ("Mr. Frishberg") files this Limited Objection (the "Second Limited Objection") to the *Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*1121 of the Bankruptcy Code and (II) Granting Related Relief* (Docket No. 1940, the "Motion"), Mr. Frishberg also objects to the proposed plan, (as laid out in ECF Docket No. 2066). In support of his Second Limited Objection, Mr. Frishberg respectfully states the following:

**Pro Se Relief**

Mr. Frishberg repeats and reincorporates his previous requests around *pro se* relief.

# Introduction

The Debtors should not be allowed to once again extend exclusivity, as that would cause undue/unnecessary delays, and hurt creditors's recovery. The Debtor's proposed plan is fatally flawed in numerous ways. The Motion should be **DENIED** for the time being, and Mr. Frishberg's Objection[2] be **SUSTAINED**, for the below reasons. In the event that this court chooses to extend Exclusivity, I request that they also expand it to include the UCC and the other Ad Hoc groups (including, if possible, the unofficial Earn Ad Hoc).

# Argument

**CEL Scam 2.0**

---

[2] I apologize if there are any errors and such in this Objection, I have been extremely busy dealing with the Debtor's frivolous and meritless Motion to Strike (almost everything from our designation) and the Debtor's purported "test case" for claim objections (which it should be no surprise that two of the test cases are appellants). Since the other appellants, and myself, do not have an entire law firm full of lawyers (or any lawyers/legal professionals/legal help) to go through the designation line by line to rebuttal Kirkland, we have been doing it ourselves. What the Debtors did is very unprofessional, and frankly is just bullying (and a waste of estate money). It is clear that the entire Terms of Service are needed for the appeal, and that the claims process is not the place to (**once again**) attempt to bypass protections from my Adversary Proceedings. As such, I reserve all rights, including the right to submit supplemental evidence/statements until the day before the hearing (per local rules) and amend this Objection until a day before the hearing with non-material edits, and to amend this with material edits up to three days before the hearing.

Mr. Frishberg objects to the CEL token being paid out in any form, other than in kind. There are far more than enough CEL tokens to return every single CEL token holder 100% (or more) of their tokens. It would be a drain on the estate to force non-CEL token holders (which make up approximately 97%[3] of the user base, per the SOFA filings, with about 1000 accounts holding almost 60% of all the CEL[4] (*See* **Exhibit A**). All users (other than it seems, CEL token holders), want their coins to be distributed in-kind. 76.89% of customers hold **less** than $1 in CEL, and 91.29% of customers hold less than $50 in CEL. The holders of CEL are an extremely vocal minority, who literally committed market manipulation pre-petition, in an attempt to increase the price of CEL. Celsius customers have already (unknowingly) lost large amounts of their crypto to CEL, there is no sensible, or logical reason why we should be forced to do it again. The entire purpose of the CEL token (according to the Examiner's report) was effectively to enrich insiders at the expense of account holders. Investing in the CEL token, is effectively investing into the efforts of Celsius the company, and CEL token holders should sue insiders–not take value away from other customers. Their poor investment (like private equities) did not pay off, and other account holders should not be forced to socialize their losses (since I am sure that if the investment paid off, they would not want to socialize their gains). If I was to invest in a stock, such as Apple stock, and the company went bankrupt, I would receive nothing, and would be laughed at if I demanded that I am paid a price, a price which was (in CEL's case) a heavily manipulated unregistered security pre (and post) petition. It wasn't even a *preferred* security like the preferred shareholders. There was/is a group of individuals on Twitter (and other social media sites) that started a "short squeeze" to attempt to artificially increase the price of the CEL token, the "CEL Short Squeeze" (as it is called) started shortly after the Pause, and was

---

[3] This number only counts accounts that hold $5 or more (as of the petition date) worth of CEL.
[4] https://twitter.com/ChazzonKe/status/1630379837545144321?s=20

promoted/endorsed by Alex Mashinsky, Krissy Mashinsky, and other Celsius employees/defacto insiders such as Zach Wildes[5] (who did AMA's with Alex Mashisnky, and admitted to knowing that Celsius was, as he agreed it was, "a illegal, unregistered hedge fund"). This is the same as the CEL token, which should be distributed in-kind, and not have an effect on the general estate. Perhaps Section 510(b) can be used to effectuate this transaction, or else the estate can abandon CEL token and return it in-kind.

### Robbing Creditors Legally

Mr. Frishberg objects to the Debtor's attempt to dollarize claims, to allow them to distribute (in crypto) a % of the dollar value, *at the time of the petition*. The prices of cryptocurrency have appreciated since then, and creditors should be able to enjoy the full upside of their investment. As of now, the Debtor's plan puts all of the downside risk on creditors, and keeps all of the upside reward for themselves, and the equity holders (the largest of which is Alex Mashinsky, who got us all into this mess in the first place with his fraud). Since as the Debtors point out a every possible occasion (as if that somehow makes Earn property of the estate), there is not enough cryptocurrency to return everyone their full amount, but I as a account holder (and almost certainly all creditors also would want this) propose a different way that dollarizing claims (perhaps dollarizing[6] claims can be used to determine the pro rata share, and not have any effect on the amounts of cryptocurrency actually distributed). In the scenario that the Debtors currently propose, say a hypothetical creditor deposited 1 Bitcoin (and assume that the price of Bitcoin at the time of the petition was $20,000), if the price of 1 Bitcoin went to $100,000, (whenever distributions happen) the Debtors would be able to pay out .2 Bitcoin

---

[5] Who should be, among other individuals, be classified as a de facto insider.
[6] With the exception of CEL.

(purportedly making said creditor whole), while keeping .8 BTC for themselves. This would effectively rob the creditor of 80% of their claim. The amount that a creditor can receive should not, and must not be allowed to be limited. If the Debtors have 60% of the total assets that they owe, a creditor that deposited 10 BTC, should get back 6 BTC, and not a capped dollarized amount.

### The Plans Flaws

The Debtors and Nova Wulf's proposed plan is extremely predatory, and bad for account holders/creditors. Creditors would be assuming 100% of the risk, and Nova Wulf would be assuming none of it. It should be noted that Nova Wulf's parent company (TeraWulf) was recently insolvent, and has significant Debt. Nova Wulf would be allowed to take 20% of the purported "earnings", which would presumably also include the dollar value appreciation of cryptocurrency, and the staked ETH (which is passive, and either requires no work if it is a liquid staking token such as stETH[7], or effectively no work other than making sure that the node is powered on and functioning properly). The Debtors claim that Nova Wulf/the plan sponsors are providing $45-55 million in cash, (by cash, they should be required to provide US Dollars, in fiat and not a proprietary stablecoin which they can print infinite amounts of), which is fairly meaningless since they would receive far more than that in fees alone. Assuming that they charge a .5% of assets under management, they would easily make back the $50 million in the first year (or technically half year, since the fee is charged on the first of January). This is assuming that they value the assets at the actual market value, and not at an inflated value (such as CEL token, or the mining operation, which are both extremely overvalued, and would fetch a fraction of the claimed price on the open market). This is also ignoring the huge regulatory issues that likely

---

[7] stETH, and all liquid staking tokens have a fee. In stETH's case it is 10%.

will cause long delays. One would assume that the SEC (which already dislikes asset share tokens) would not be happy with unaccredited investors being given asset share tokens (mostly against their will), and issued equity in a de facto unregulated hedge fund.

The Debtors also claim that staked ETH cannot be unstaked until 2026. This (assuming they are referring to ETH staked on the blockchain, and not a DEFI protocol) is false. ETH can start to be withdrawn after the Shanghai update (to the Ethereum network). This update is currently planned[8] for **March, 2023**, which is not, as the Debtors claim, in 2026.

For judicial economy, Mr. Frishberg repeats, realleges and incorporates Mr. Ubierna de las Heras's objection (ECF Docket No. 1996[9], and the Withhold Ad Hoc's objection, (ECF Docket No. 2008). He also repeats, realleges, and incorporates all other objections to exclusivity (both ones that have, and have not been docketed), and reserves the right to unrepeat, unreallege, and unincorporate the objections which are still undocketed, and have not been filed yet. For judicial economy Mr. Frishberg also repeats and realleges his objections based on venue being not correct and proper (ECF Dockets 1823, and 1977). Mr. Frishberg, lastly, repeats, realleges and incorporates his arguments from his Motion for a Chapter 11 Trustee (ECF Docket No. 1975[10]).

**Conflict Of Interests**

---

[8] https://decrypt.co/resources/what-is-ethereums-shanghai-upgrade
**https://capital.com/ethereum-shanghai-capella-public-testnet-february-launch**
[9] https://cases.stretto.com/public/x191/11749/PLEADINGS/117492072380000000040.pdf
[10] https://cases.stretto.com/public/x191/11749/PLEADINGS/117492022380000000104.pdf

White and Case, who represents the UCC, and had a hand in picking both the proposed plan, and the proposed plan's sponsors, either used (fairly recently, as in after the petition date) to represent some of the sponsors, or still currently represents some of the sponsors, which is a clear conflict of interest. Figure, and TeraWulf (the recently insolvent parent company of the plan sponsor, NovaWulf) are/were represented by White and Case.

## Conclusion

For all of the aforementioned reasons, the Debtor's Motion should be **DENIED**, and this Objection should be **SUSTAINED**. In the alternative, the Exclusivity should be expanded to include the UCC and Ad Hoc groups, and current bidders, to allow them to propose their own plans (including any future groups, such as an Earn group). To be clear, Mr. Frishberg, is not, nor ever will advocate for totally lifting exclusivity, since as Your Honor said, 600,000 plans, would indeed be chaos. At a minimum, the proposals of the bidders (and ideally their identities) should be made public, so account holders have the opportunity to see if there is a option they like better. Mr. Frishberg does not trust the Debtors, and is concerned about the conflicts of interest around the UCC's representation of two of the plan sponsors.

Respectfully Signed,

Daniel Frishberg, *Pro Se*

03/01/2023

*/s/Daniel A. Frishberg*

**CERTIFICATE OF SERVICE**

I certify that on Wednesday, March 1st, 2023, a true and correct copy *Daniel A. Frishberg's Second Limited Objection to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* (Docket No. 1940), was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York served upon the Core/2002 service list by electronic mail, in accordance with the SDNY Bankruptcy Court's *Amended Final Order (I) Establishing Certain Notice, Case Management, And Administrative Procedures, And (II) Granting Related Relief* (ECF Docket No. 1181).

Respectfully Signed,

Daniel Frishberg, *Pro Se*

03/01/2023

*/s/Daniel A. Frishberg*

**EXHIBIT A:**



22-10964-mg    Doc 2163    Filed 03/01/23    Entered 03/02/23 10:32:58    Main Document
Pg 10 of 10

**EXHIBIT B[11]:**

| Cel Holders breakdown greater than / Less than |||||
|---|---|---|---|---|
| Total users | 576,867.00 | | | |
| ACC Value | Greater Than | Percent Greater | Less Than | Percent Less than |
| 500 | 16,140.00 | 2.80% | 560,722.00 | 97.20% |
| 250 | 23,649.00 | 4.10% | 553,213.00 | 95.90% |
| 100 | 37,309.00 | 6.47% | 539,553.00 | 93.53% |
| 50 | 50,230.00 | 8.71% | 526,632.00 | 91.29% |
| 25 | 64,749.00 | 11.22% | 512,113.00 | 88.77% |
| 15 | 75,039.00 | 13.01% | 501,823.00 | 86.99% |
| 10 | 83,343.00 | 14.45% | 493,519.00 | 85.55% |
| 5 | 98,661.00 | 17.10% | 478,201.00 | 82.90% |
| 1 | 133,287.00 | 23.11% | 443,575.00 | 76.89% |
| 0.5 | 171,426.00 | 29.72% | 405,436.00 | 70.28% |

---

[11] https://twitter.com/ChazzonKe/status/1630971103089684480?s=20