Daniel A. Frishberg, *Pro Se*
Georges Georgiou, *Pro Se*
Immanuel J. Herrmann, *Pro Se*
Christopher J. Little, *Pro Se*
Luke P. Nowak, *Pro Se*
Courtney Burks Steadman, *Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

_____

### OMNIBUS OBJECTION TO THE DEBTORS' MOTIONS TO STRIKE

This is an omnibus objection to the Debtors' Motions to Strike, which have a similar

records (D.R. 2085, 2126, and 2127), with a few additional items added by Courtney Burks

Steadman and Kulpreet Khanuja on their subsequent appeals. The appeals referenced in D.R.

2085 and 2126 have already been consolidated in the District Court, and the one referenced in

2127 is pending a decision on consolidation.

_____

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**RESERVATION OF RIGHTS**

This is an *initial* response to be on record in opposition to the Debtors first Motion to

Strike, D.R. 2085. We reserve the right to supplement or amend this reply, to submit

supplemental exhibits, or to move for additional time or ask for adjournment.

Appellant Kulpreet Khanuja was unavailable at the time of submission, but may respond

to D.R. 2127 at a later time, in any case, and address any any all items here (which are included

in his designation as well.) Appellants, including Courtney Burks Steadman, whose appeal has

been consolidated with the original appeal, are working together to prepare a joint list of items to

include on appeal and a joint response for judicial economy and overall economy, and will

submit it as soon as possible.[2]

We are still working to submit a consolidated list of items that the appellants consent to

strike, and those which require adjudication by this Court before the hearing date. We will share

a draft of the items confidentially with the Debtors and attempt to resolve what items we can

consensually to reduce the burden on this Court. We reserve the right to ask for more time to

finish a complete list of items for inclusion, particularly if the Debtors continue to insist on

striking nearly every relevant document from the record.

---

[2] D.R. 2127, the Motion to Strike from Courtney Burks Steadman's appeal, was filed on 2/23/2023, 13 days before the proposed March 8 hearing date; we are nevertheless working together to respond with a complete list of items before the noticed hearing date (but reserve the right to ask for more time if needed.)

**BACKGROUND**

Early in these cases, Earn customers convinced the Court to expand the scope of the examiner's report to include issues raised by *pro se* creditors. We were glad to see that done, it was clearly (in retrospect) incredibly necessary, and that work will help, in the future, to bring claims against insiders and others. Approximately $20 million of Earn customer funds will ultimately be spent to produce the report, which other creditor groups are able to use as they negotiate settlements to get a higher percentage of funds from the Estate at the expense of Earn customers.

Yet nearly two months *before* the Examiner report was final, with hundreds of creditors objecting, Earn creditors were deprived of the use of the examiner's report to advance our own interests *vis a vis* other creditor groups in these cases. Instead, we appear to have lost the majority of our procedural and substantive rights over what was, at the time, $1.5 billion of dollars in assets. Much more than any other smaller creditor group, with much less of a process. Those rights were not lost not through an adversary proceeding with a deep and well-developed record, or even via an alternative process that was substantially similar. Instead, those rights were lost via–of all things–a motion to sell a rather insignificant amount of stablecoins. Furthermore, the Debtors did not even *need* a declaratory judgment to sell the stablecoins they sought to sell; rather, the declaratory judgment the Debtors sought was explicitly included to dispose of claims that otherwise would have had to be heard with significant procedural protections, and that the appellants contend should have been brought in an Adversary Proceeding under FRBP 7001.

On Saturday, December 3, 2022, two days before December 5, 2022 hearing, the Debtors submitted an untimely *Witness List and Exhibit List for Matters Set for Hearing December 5, 2022* (D.R. 1590) listing the items they wished to enter into the record at the hearing.[3] The unsigned proposed scheduling order contained no mention of a deadline for evidence, or a process to enter it, but it's reasonable to read the deadline as December 2 at 5pm ET in the as the deadline to enter a written evidence and witness list. With the clerk's office closed, no *pro se* creditors were able to respond on the docket or submit their own exhibit and witness list in any case, and have it considered at the Monday December 5 hearing, nor would we have expected any opportunity to do so under the Proposed Scheduling Order with its "hard deadline." Creditors, up to this point, had no say in who was deposed in the first place, and who would be called at the hearing. That there was no real way to lodge a dispute about this 2 days beforehand (over the weekend). The only option to enter evidence was through a surprise oral opportunity at the hearing, which was easy to miss–and which everyone did miss, including experienced attorneys and *pro se* creditors alike.[4] There was no opportunity given to call witnesses, except the ones that were provided by the Debtors, only an oral opportunity to enter evidence.

As the hearing date approached, the situation was chaotic. The Debtors had minimized the purported purpose of the Earn hearing, stressing repeatedly that the findings it sought were narrow to begin with, and had been further narrowed at the behest of the UCC. One such example was when they said contract formation defenses and breach of contract claims would be "expressly preserved" and further stated in a footnote that "at least one Objector argues that

---

[3] According to the proposed (but unsigned) *Proposed Scheduling Order* (D.R. 1324), the Debtors' Witness List and Exhibit List was not timely, since the **Hard Deadline on All Filings (*pro se* included)"** was December 2 at 5pm ET.

[4] Several Earn customers had experienced bankruptcy lawyers representing them. Others were *pro se*. No lawyers representing Earn customers, or *pro se* creditors, were able to enter any evidence into the record for the Debtors' Amended Motion.

certain defenses are generally applicable and that the Debtors were not seeking to 'force

customers to file alternative claims, one at a time, to challenge their schedules. . . . [M]ost of

these defenses apply to large groups of customers, they are not just corner cases that apply to a

single individual.' See Supplemental Herrmann Objection at 13. This is not the Debtors'

intention. **To the extent that a fact-specific defense is established to be generally applicable,**

**the presumption could be widely rebutted.** As the same Objection notes, "some cornercase

defenses will be unique." Id at 14. **The Debtors' intent is to preserve such individuals'**

**arguments."** (Emphasis added.) The UCC decided to declare Earn assets property of the Debtors

Estates under 11 USC 541 at the last minute, which was unexpected.


     Having never resolved a mutually-agreeable list of witnesses with other parties to the

litigation to begin with (except, perhaps, the UCC), the hearing nonetheless moved forward on

December 5 over the objections of hundreds of creditors and regulators.[5] [6] As the UCC noted, the

*Proposed Scheduling Order* left no time to resolve discovery disputes or have them adjudicated

by the Court.

---

[5] "Finally, I will mention again, that you have not provided a process to deal with evidence disputes or questions that you do not want to be answered, where a motion and court order may be required to resolve the dispute. We have also not agreed on who will be deposed, I do not agree to limit that to those who submit declarations, or for how long, or when. We can continue to discuss these things, and hopefully come to a resolution, one way or the other." (Email from Immanuel Herrmann to Kirkland & Ellis, dated 11/8/2022; we never resolved this issue of declarants/deponents, and it was impossible to do so on the timeline granted; as there was no mechanism to resolve discovery disputes via the court before the 12/5/22 hearing, except, perhaps, via letter to the Court–the deadline of which would have been December 2, one day before the Debtors Proposed Witness and Evidence list was submitted.)

[6] The UCC stated on 11/20/2022 in D.R. 1412, in its *Response of the Official Committee of Unsecured Creditors to Daniel A. Frishberg's Objection to Debtors' Proposed Scheduling Order Regarding Title to Earn Program Assets and the Sale of Certain Stablecoins*, that "The schedule negotiated by the Committee does not have time built in for the discovery disputes that the Debtors now seem intent on having." Indeed, such discovery disputes were never resolved with any *pro se* creditors, but only with the UCC, or were narrowed once it was decided that the UCC would join the Debtors in declaring all Earn assets property of the Estate at the very last minute.

**THE APPEAL**

On January 18, 2023, 14 days after the *Memorandum Opinion and Order Regarding Ownership of Earn Assets*, Earn customers Kulpreet Khanuja, Georges Georgiou, Luke P. Nowak, Christopher Little, Daniel A. Frishberg, and Immanuel Herrmann filed a notice of appeal. On February 1, 2023, Courtney Burks Steadman filed her own notice of appeal. Kulpreet Khanuja also appealed his individual but related decision on February 1.

The Steadman appeal and the original appeal have already been consolidated by the District Court. Both the Debtors and the respondents/appellants have consented to consolidate the Khanuja appeal with the Earn appeal (should the appeals move forward), but we are waiting to hear back with a decision from the District Court on consolidation and confirmation that the order is a final order, or on leave to appeal.

**THE QUESTIONS ON APPEAL**

On February 1, 2023, the original appellants filed the *Designation of Contents and Statement of Issues.* The questions on appeal are:

1. Whether the Bankruptcy Court erred in limiting its determination of whether Earn Account assets were estate property to an examination of certain "Terms of Use," without regard to extrinsic and contrary evidence on contract formation and enforceability?

2. Whether the Bankruptcy Court erred in holding that certain "Terms of Use" were unambiguous, and that the Debtors' estates presumptively held title to such assets?

3. Whether the Bankruptcy Court erred and/or abused its discretion with regards to Appellants' due process rights when it ruled on the issue of title to Earn Account assets without the procedural safeguards of an adversary proceeding, instead imposing an *ad hoc* process that deprived Appellants of a full and fair opportunity to conduct discovery, enter evidence into the record, and be heard in a meaningful way?

4. Whether the Bankruptcy Court erred in characterizing contract formation questions and issues as contract "defenses?"

5. Whether the Bankruptcy Court erred when it relegated the issue of whether customers' purported Earn Account "contracts" were void, enforceable, or binding to the claims resolution process, thereby denying Appellants their right to be heard timely to their prejudice?

**BROAD CATEGORIES OF ITEMS TO INCLUDE ON THE RECORD ON APPEAL**

Anything relevant to the above questions on appeal, including items that provide background on these cases, on Earn accounts, and that and show procedural differences in how the ownership of Earn assets was decided, versus how the ownership of Custody, Withhold, and Borrow assets are (still) being decided, is relevant to questions on appeal and should be included in the record on appeal.

Bankruptcy Rule 806 should be construed liberally; the record on appeal should contain the documentation necessary to afford the reviewing court a **complete** understanding of the case. *In re W.T. Grant Co.,* 432 F.Supp. 105 (S.D.N.Y.1977); *In re Michaelis Corvette Supplies, Inc.,* 14 B.R. 365 (Bkrtcy.N.D.Ohio 1981). (Emphasis added)

To consider the appellants' questions on appeal and give the District Court a **complete** understanding of the case, the District Court will need to review items from, at a minimum, the following categories:

1. **Items that the Court did consider with respect to the original and amended motion.** The Court said that it read all responses to the Amended Motion. There was also the original (non-Amended) Motion, which received many responses and is relevant. There are also other responses relevant to the issue of Earn accounts and other types of accounts (to the extent that the Court reviewed documents related to other accounts and used those to differentiate between Earn accounts and other types of accounts.)

2. **Items that the Court considered with respect to related motions and adversary proceedings.** To the extent that this provided background to the Court to understand the Terms of Use, the potential extrinsic evidence related to users signing

3. **Items the court read and considered as background for this motion and in the leadup to it.** The Court read many items that, while not submitted into evidence, provided background.

4. **Items that creditors intended to enter into the record, but were unable to enter because we missed the Court's prompt to enter evidence.** Anything referenced in an objection or other reply to the original Stablecoin Motion and/or the Amended Motion

was likely intended to be entered by creditors. Such objections and replies referenced depositions, the Declaration of Alex Mashinsky (D.R. 393), a certified transcript of an AMA, and many other items from these cases.

5. **Background items showing procedural prejudice**. Questions on appeal include whether Earn customers were uniquely prejudiced with a fast/summary process. Items that show different procedural treatment for Custody, Withhold, and Loans are all relevant. Proposed scheduling orders and objections are, as well, expressly relevant.

6. **Items related to the status of customer property.** Much of this case was about *differentiating* between different types of accounts. It is impossible to, in a vacuum, review a decision about one type of account without information on how that type of account existed vis a vis other types of accounts.

7. **All items related to the original stablecoin motion, the amended stablecoin motion, and related scheduling-related documents.** The Court never explicitly clarified at the hearing whether it read all responses to the original stablecoin motion or only replies to the amended motion. Nonetheless, the Debtors and creditors referenced such responses in their papers around the amended motion, and they will be needed for background for the District Court to understand those papers and arguments made that led to the original motion, the amended motion, and the decision.


**THE BROAD QUESTIONS ON APPEAL, INCLUDING DUE PROCESS QUESTIONS, REQUIRE A BROAD RECORD**

In their questions on appeal, specifically question 3, the Appellants have raised the issue of being prejudiced by the procedural processes related to the hearing on the Amended

Stablecoin Motion, and the *ad hoc* process around Amended Stablecoin Motion, in lieu of the

protections of an adversary proceeding under Rule 7001.

This includes the (unsigned) scheduling order, the lack of being able to meaningfully

conduct discovery and enter evidence, and the lack of available evidence to enter in the first

place as a result of the rushed timeline (because we were deprived of the meaningful opportunity

to conduct discovery, including a wholesale rejection of 2004 examination requests by creditors).

Creditors were told for months by the Debtors and by the Court that such

evidence-gathering and discovery was duplicative because of the examiner's report. But then,

when we (and regulators and other creditors) argued a decision on the ownership of Earn assets

should wait until *after* the examiner's report (so that we would be in a better position to

negotiate, fairly settle with other creditor groups, and take a fair look at various corner cases of

Earn "account holders" who had coins placed into our accounts without our consent and without

a contractual basis for doing so, or in violation of the contracts), a broad decision on ownership

for all Earn assets was rushed via the *Amended Motion*. Now, the Debtors seek to strike nearly all

of the filings that this Court read and the background it used to familiarize itself with the issues

in the lead-up to the *Amended Motion*, as if the whole hearing happened in a vacuum.

The appellants have asked the District Court to consider "Whether the Bankruptcy Court

erred and/or abused its discretion with regards to Appellants' due process rights when it ruled on

the issue of title to Earn Account assets without the procedural safeguards of an adversary

proceeding, instead imposing an *ad hoc* process that deprived Appellants of a full and fair

opportunity to conduct discovery, enter evidence into the record, and be heard in a meaningful way?"

Had this case been an adversary proceeding or equivalent process[7], the hearing would not have taken place at all on December 5, but later, and the record would have almost certainly been different; a significant record on appeal is needed to show just how much was available in the record versus how much was entered, and why.

Where the lack of an adversary proceeding can be an issue of "form over substance" and "harmless errors" **if** the record in the alternative proceeding is well developed, and where the interests of the parties were substantially protected, and the label "adversary proceeding" doesn't change much about what happens; the Amended Stablecoin Motion, however, was a very different situation.[8]

The appellants argue that this is **not** an issue of form over substance and that there **was** harmful prejudice. To show that on appeal, we need a record that familiarizes the District Court with the case, everything the Court considered going into the Earn hearing, and thus, the filings

---

[7] See *In re Hasan* 287 B.R. 308, 314 (Bankr. D. Conn. 2002) for a situation, unlike the Amended Stablecoin Motion hearing, where an alternative to an adversary proceeding could be acceptable without prejudicing parties in interest: "Even if there isn't a waiver here and even if it should have been an adversary proceeding, I'm satisfied that the rights of the parties have been adequately presented so that **no prejudice will arise** by the fact that the piece of paper doesn't say adversary proceeding on it. That is my ruling, and we're going to go ahead with this hearing. I'm making reference to a 1995 decision in the Middle District of Georgia. The case is In Re: Tommy and Flecker, and it is cited at 181 BR 1017. There is ample authority to support the proposition that **technical errors, if they do not adversely impact on the parties' substantive rights, may well be harmless errors.** And this is a harmless error, if it is an error at all." (Emphasis added) In this case, at least one state, and several creditors, argued that an adversary proceeding was required, that the errors were far from harmless, and that there was significant prejudice with the abbreviated schedule and limited discovery.

[8] Ibid.

that led to that point in the case are relevant. Additionally, the record need not be limited to what the Bankruptcy Court considered, in particular, with regards to that specific motion on that specific date.

Documents not considered by the bankruptcy court in reaching its decision may also be included in the record on appeal provided that the appellate court is informed that such materials were not considered by the trial court in reaching its decision in the matter appealed. See *In re Food Fair, Inc.,* 15 B.R. 569 (Bkrtcy. S.D.N.Y. 1981)

Filings that the appellants contend show prejudice (such as a stipulation to exclude withhold from the Earn decision and treat their lift-stay as an Adversary Proceeding) are also relevant and were certainly considered with respect to the Amended Stablecoin motion, given that the motion itself expressly preserved the rights of these groups. For example, without background on what the "withhold" group is, and their case, the District Court cannot understand how that group was expressly carved out of the Amended Stablecoin Motion, and given a stipulation to treat their lift-stay motion as an Adversary Proceeding–procedural protections that Earn customers were not given, which the appellants allege created prejudice when many of us are similarly-situated (or at least have similar arguments for constructive trust, ambiguity, and other arguments.)

Furthermore, the record needs to show not just what was entered into the record, but **what we were not able to gather for the record, or enter into the record**, because of a rushed process (which prejudiced us), and because of a lack of a developed factual record created by the

rushed process and the denial of discovery requests (which prejudiced us). This process was

profoundly different from an adversary proceeding to our detriment; evidence wasn't entered

into the record for a variety of reasons, including but not limited to inadvertance and error on the

part of creditors but also chaos and a lack of a meaningful opportunity to enter evidence and call

witnesses (which we expressly experienced here, and and qualifies us to argue for a larger record

on appeal), a rushed timeline, no notice of and no opportunity whatsoever to respond to the

Debtors in writing regarding witnesses and evidence, and our *pro se* status, which are all

significant factors here.


As this Court correctly noted later in this case, when Daniel Frishberg inadvertently

missed the chance to enter evidence into the record with regards to another motion, "courts in

this Circuit adhere to the principle of liberally construing *pro se* filings and because Frishberg is

*pro se*, the Court will admit the Frishberg Declaration (ECF Doc. # 1826) into evidence. *See*

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck*,

710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing pro se submissions is driven

by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part

of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture

of important rights because of their lack of legal training.")" This Court did not, however, allow

for a similar correction during the Earn hearing, which had much higher stakes, and affected

hundreds of thousands of individuals and billions of dollars of assets. All filings relevant to

procedure, and procedural differences between how Earn, Custody, Withhold, and Borrowers

were handled in these cases, are relevant here.

**CASE LAW JUSTIFIES A SIGNIFICANT RECORD ON APPEAL**

From *In re Candor Diamond Corp.*, 26 B.R. 844 (Bankr. S.D.N.Y. 1983): "Bankruptcy Rule 806 should be construed liberally; the record on appeal should contain the documentation necessary to afford the reviewing court a complete understanding of the case. *In re W.T. Grant Co.*, 432 F.Supp. 105 (S.D.N.Y.1977); *In re Michaelis Corvette Supplies, Inc.*, 14 B.R. 365 (Bkrtcy.N.D.Ohio 1981).

"Similarly, the transcript of testimony of H.W. Fry Realty Co., by Harry Fry, and the accompanying exhibits (Items "4" and "5" of the Cross-Designation) are necessary to enable the District Court to have **a full understanding of the case being reviewed** and, therefore, are not to be stricken from the record on appeal." (Emphasis added) *John P. Maguire & Co. v. Sapir (In re Candor Diamond Corp.)*, 26 B.R. 844 (1983)

In *In re Hudson*, Case No. 00-11683, Adversary Pro. No. 04-90005 (Bankr. N.D.N.Y. Jul. 1, 2005), the Court said: "Courts have recognized an exception to the general rule when the interests of justice demand it." *In re Hervey,* 252 B.R. 763, 766 (8th Cir. B.A.P. 2000) (citing Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61 (8th Cir. 1993) (record on appeal supplemented with material not before lower court to contradict a material misrepresentation made to the lower court by a party)); see *In re Candor Diamond Corp.*, 30 B.R. 17 (Bankr. N.Y. 1983) (documents from adversary proceeding in a related case could be included in record on appeal where material was relevant to bankruptcy court's exercise of discretion in denying underlying motion to vacate default judgment)."

Adversary proceedings and related filings for other creditor groups, explicitly, should be included here. "The items Maguire seeks to include in the Record on Appeal arise from an examination taken in the course of this proceeding and from an adversary proceeding in a related case. Material from related proceedings may be included in the Record on Appeal." See *In re Food Fair, Inc.*,15 B.R. 569, 572 (Bkrtcy.S.D.N.Y. 1981)*; In re T. Michaelis Corvette Supplies, Inc.,*14 B.R. 365 (Bkrtcy.N.D.Ohio 1981); *In re Saco Local Development Corp.,13 B.R. 226, 230* (Bkrtcy.Me. 1981).*" In re Candor Diamond Corp., 30 B.R. 17, 18* (Bankr. S.D.N.Y. 1983)

The thin record that was entered into evidence in support of the Amended Stablecoin Motion was a direct result of error or accident on the part of *pro se* creditors, along with a lack of meaningful opportunity to enter that evidence. Case law that ignores that in the Debtors' Motions to Strike is largely irrelevant. See *In re Ames Dept. Stores, Inc.* citing *Dicola v. American S.S. Owners Mut. Prot. Indemn. Ass'n (In re Prudential Lines, Inc.),* 1994 WL 142017, at *1 (S.D.N.Y. Apr. 20, 1994) (Haight, J.) ( *"Prudential Lines")* (Since appellant seeking to supplement record on appeal **did not** argue that materials should be added to record by reason of their omission by error or accident, appellant "should have made its application to the bankruptcy court in the first instance.")

In this case, appellants **do argue omission by a combination of error, accident, and lack of due process,** and cite a lack of procedural protections as an explicit question on appeal. Furthermore, a number of appellants lodged objections to the process around the Stablecoin motion. Therefore, the 7001 / Adversary Proceeding issue was not an issue of "form over substance" like in many past cases, but rather, a fundamental due process issue.

The Debtors have moved the goalposts time and again, seeking to use the Earn order as "law of the case" to deprive so-called "earn customers" (presumably defined as people whom the debtors listed as "<u>Earn</u>" on their schedules with no actual evidence that they are properly earn customers, whether or not such a listing is correct) of their statutory rights, while expressly preserving such rights for withhold, loans, and custody customers.

The fact is: Creditors were offered no real opportunity to enter evidence on December 5.[9] Having not had the chance to conduct any negotiated discovery in the first instance, such as the 2004 examinations that were refused, and having relegated such investigations to the examiner, the trial was conducted on December 5 *by design* to deprive creditors of the chance to enter any relevant evidence in support of their position.

But that question is secondary to appellants due process question, which requires a broad record to answer, and goes far beyond just whether or not a few (limited) documents were entered on December 5. That question is: "Whether the Bankruptcy Court erred and/or abused its discretion with regards to Appellants' due process rights when it ruled on the issue of title to Earn Account assets without the procedural safeguards of an adversary proceeding, instead imposing an *ad hoc* process that deprived Appellants of a full and fair opportunity to conduct discovery, enter evidence into the record, and be heard in a meaningful way?"

---

[9] Earn Hearing Tr. 103:20–23 ("Do any of the objectors wish to offer evidence in support of their objections? The Court has read all the objections. Hearing no response, the Court determines that the objectors have rested as well."); id. at 106: 3–6 ("The objectors did not put in any evidence of any of Mr. Mashinsky's videos or anything else that he's allegedly said. It's not in the record. The record is closed. And so if objectors had evidence they wanted to offer, they had their chance and they didn't."); 163:8–10 ("The evidence, the record is closed and I'm not going to hear any additional evidence."). Id at 153:2–13 (MR. HERRMANN: "I'll start out by just respectfully asking if you would consider reopening the opportunity to submit evidence . . ."; THE COURT: "I'm not reopening the record, Mr. Herrmann. That's what this hearing was about. I understand that you're a *pro se* creditor and there are many other *pro se* creditors. But I follow the rules. Evidence was submitted in support and that's where we are.").

To answer this broad question, the District Court needs broad background. It needs to see what we could have entered, what the process was, how the hearing was scheduled, how other similar hearings (for Custody and Withhold, for example) were handled, and whether or not we were prejudiced.

In most case law on this issue, there is an important issue of form before substance that must be addressed before moving to the merits of whether something should have been an Adversary Proceeding. It is the appellants' contention that, in this instance, there was prejudice to our rights, and that this is expressly **not** an issue of form before substance. In other words, we contend that this process was a summary process that was profoundly different from an adversary proceeding or an alternative process that was substantively similar to an adversary proceeding, to our prejudice. To evaluate such prejudice, the District Court must have more of a record available, including what the appellants could have entered, including what we could have entered later had we had the appropriate procedural protections, which included more time, more protections on discovery, and other protections.

In any case, when considering which items to strike, the appellants ask the Court to take judicial notice of the indisputable fact that items were omitted by error or accident at the December 5 hearing. This is true because Mr. Herrmann and Ms. Gallagher both attempted to enter evidence at the hearing and were denied the chance to do so. That said, had we responded and attempted to enter items into the record at the hearing, it would have been extraordinarily difficult to do so in any reasonable number and actually get evidence entered, and it is debatable

how meaningful the spur-of-the-moment opportunity really was given the other procedural constraints imposed and the purported purpose of the motion and the related discovery, which was all within the four corners of just the Earn contracts (and even excluded loan contracts that may have modified and superceded earn contracts, as one example). Several of the appellants had ongoing discovery disputes with the Debtors going into the hearing and as the UCC had pointed out, there was no practical mechanism to resolve discovery disputes on the timeline for this hearing, except doing so in open court, line by line, item by item, or moving to adjourn the hearing.[10]

Creditors also had no chance to conduct real discovery going into the hearing: Not from 2004 examinations, which were denied by the Court, and not when we demanded depositions of Alex Mashinsky and Roni Cohen, which were denied by the Debtors. Now, when such evidence presents itself later in the case, the Debtors seek to prohibit us from submitting it on appeal to show how the timeline of the Stablecoin Motion prejudiced Earn creditors.

Courts have allowed the inclusion of other pleadings in a case even though they were not made exhibits and were not considered by the court if the pleading to be added is closely related to the matter at issue. This includes related Adversary Proceedings. *In re Purvi Petroleum III, LLC*, 2012 WL 360047 at *2 [(Bankr. M.D.Tenn. 2012)].

---

[10] While nobody outright moved to adjourn the hearing, at least 2 *pro se* creditors, in addition to regulators, noted that this should have been an adversary proceeding and that we objected to moving forward under the proposed scheduling order. Given that such objections were not responded to, it is clear that the hearing would not have been adjourned.

Given the specific questions on appeal, including whether this should have been an adversary proceeding, the appellants argue that the Court should include later-filed filings and Adversary Proceedings as well, such as the Loan Adversary proceeding, given that itshows the kinds of things appellants could have entered into evidence given us the protections of an Adversary Proceeding we had asked for, with the benefits of the examiner's report in hand (an Adversary Proceeding takes longer because of its procedural protections, including a conference which would have taken place 45 days after the initial filing of the proceeding.)

At a **bare minimum**, Adversary Proceedings Custody and Withhold, which were already on the docket, related stipulations granting them procedural protections, and all relevant background, and anything the Court read and considered to prepare for the hearing, are highly relevant to our record on appeal. See *Food Distribution Ctr. v. Food Fair, Inc.*, (*In re Food Fair, Inc.*), 15 B.R. 569, 572 (Bankr. S.D.N.Y. 1981) (finding record may be supplemented with materials from other adversary proceedings arising from the same bankruptcy case closely related to the appeal). See also: *Saco Local Development Corp. v. Armstrong Business Credit Corp.* (*In re Saco Local Development Corp.*), 13 B.R. 226, 230 (Bankr. D. Me. 1981).

In *In re Blasingame*, 559 B.R. at 700-01 a BAP determined that the bankruptcy court had improperly stricken two bankruptcy court orders from the designation of record. In so ruling, the BAP reasoned that "[a]lthough the bankruptcy court did not consider those documents in reaching its decision, they contain findings of fact and legal conclusions regarding the actions of Debtors' former counsel in this case." *Id*. Because those findings and conclusions related directly

to the issue on appeal, the BAP concluded the orders should have been included in the record on appeal "even though they were not considered by the bankruptcy court." *Id.*

In *Blasingame* the BAP cautioned, when upholding the decision to strike some documents, that the court should err on the side of caution, in general:

> When considering motions to strike designated items for the record on appeal, bankruptcy courts should be mindful that they should <u>only</u> strike documents that were <u>not filed</u> in the case, have <u>no bearing</u> on the appeal, or contain evidence which was not admitted at trial. <u>When in doubt, it is better to err on the side of caution, include the items, and allow the appellate court to determine the relevance of the designated items.</u> (Emphasis added.)

Documents filed by other parties (such as stipulations the withhold lift-stay motion and a stipulation to treat it as an adversary proceeding) are necessary for the District Court to compare how the Earn motion was handled (summarily) versus how Custody, Withhold, and Loans are being handled (with an extensive process that has not yet completed for any other group) and rule on whether appellants due process rights were violated, in addition to having sufficient background to answer the other questions on appeal.

**THE APPELLANTS' RECORD ON APPEAL SHOULD INCLUDE ITEMS REFLECTING SUBSEQUENT EVENTS MATERIAL TO AND CLARIFYING THE APPEAL**

Just because certain documents were filed after December 5 does not automatically mean all should be stricken. It is well-settled that a federal court has inherent equitable power to supplement the record on appeal to advance the principles of fairness, truth or judicial efficacy. George C. Harris and Xiang Li, *Supplementing the Record in the Federal Courts of Appeals: What If the Evidence You Need Is Not in the Record?*, 14 J. App. Prac. & Proc. (Vol. 2) 317, 325 (Fall 2013) and cases cited therein.

In the case of this appeal, given the questions on appeal and the complexity of these cases, providing the District court with significant background, including background on how the examiner's report is able to be used used by the Loan, Custody, and Withhold *ad hocs* (and in particular, the group of Borrowers shows what a difference the examiner's report makes, when it comes to such litigation).  Earn customers, on the other hand, were prejudiced by an early ruling on the Amended Stablecoin Motion on an expedited timeline without procedural protectionsl. See *In re Ames Dep't Stores, Inc.,* 320 B.R. 518, 521 (Bankr. S.D.N.Y. 2005) (finding application may be made to supplement the record on appeal for background clarifications even though matters were not considered by the court below); *In re Tabego Trading Co*., 142 B.R. 534, 536 (Bankr. N.D.GA. 1992 (same); see also, *In re Chateaugay Corp*., 64 B.R. 990, 995 (Bankr. S.D.N.Y. 1986) (supplement allowed to afford complete understanding of case below).

The Debtors' opposition to including anything except what *they* entered into the record, when even the Debtors concede that appellants missed their chance to enter anything and where

an appellant asked to re-open the record and was denied, goes against established precedent. By

sending the thinnest possible record, they are attempting to perpetuate a misrepresentation upon

the District Court and moot several of our questions on appeal before they are even considered.

The Debtors are already "flip-flopping" on whether this is a final order and what impact

the order has: On the one hand, they are arguing in this court that the order should end all

adversary proceedings and tall claims should be dismissed in favor of the Debtors' schedules,

and that even Adversary Proceedings are, essentially, barred for Earn customers.[11] On the other

hand, they are arguing in District Court that the Earn order is not a final order, and thus is not

appealable. The Debtors seek to deprive the district court from as much relevant background as

possible, and as much of the record as possible, in adjudicating whether the order is important,

and whether it is appealable as a matter of right, or, in the alternative as a matter of discretion. If

the Debtors' Motion succeeds, it will be impossible for the District Court to determine whether

the Earn order is final or interlocutory, and to decide whether to grant leave to appeal (if such

leave is required) let alone meaningfully review or respond to the questions on appeal.

The Supreme Court has long held that federal appellate courts are "bound to consider any

change, ***either in fact*** or law, which has supervened" since the disputed decision was issued.

*Patterson v. Ala.*, 294 U.S. 606, 607 (1935).

---

[11] See *Shanks v Celsius Network LLC*, D.R. 17, "The Law of the Case Bars Plaintiff from Litigating His
Breach-of-Contract Claim in this Adversary Proceeding"

In recognition of this principle, as noted, it is best for this Court to exercise restraint and "err on the side of caution, include the items, and allow the appellate court to determine the relevance of the designated items." *In re Blasingame*, 559 B.R. at 700-01

In light of the release of the Examiner's report, much has changed in these cases. The court has broad discretion to determine what new information is relevant to the questions on appeal. The fact that, had there been more procedural protections, more of the evidence from the examiner's report would have made it into arguments, is highly relevant. We ask that the Bankruptcy Court make use of its discretion to send needed background materials to the District Court, rather than force the District Court to consider the same questions (but with less background). See: *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208 (2d Cir. 1972) (taking into consideration a change that "drastically alters the nature of the case.").

We contend the that items such as the Examiner's Report, the Loans Adversary Proceeding, and other designated items that were filed after December 5 reflect material events affecting this case and that they would fall squarely within the scope of Bankruptcy Rules 8009(a)(4) and 8009(e)(2)(C) in the District Court, and that the District Court would include them. Therefore, they should be part of the record on appeal in the first instance to save the District Court the strain of having to re-litigate the same issue when it is less familiar with these cases than this court.

**OBJECTION**

The Debtors' motions to strike should be **DENIED.** To the extent parts of it are upheld, a line-by-line examination of the items are needed. Appellants will attempt to work with the Debtors to go through the long list to see if there can be a narrowing of the issues, and to save burden on the Court. We will follow up with a list of items we are not able to agree upon soon.


*/s/ Immanuel Herrmann*
Immanuel Herrmann
*Pro Se*
March 1, 2023

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
March 1, 2023

*/s/ Christopher J. Little*
Christopher J. Little
*Pro Se*
March 1, 2023

*/s/ Luke P. Nowak*
Luke P. Nowak
*Pro Se*
March 1, 2023

*/s/ Georges Georgiou*
Georges Georgiou
*Pro Se*
March 1, 2023

*/s/ Courtney Burks Steadman*
Courtney Burks Steadman
*Pro Se*
March 1, 2023