Joshua A. Sussberg, P.C.  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone:     (212) 446-4800  
Facsimile:      (212) 446-4900  

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)  
Christopher S. Koenig  
Dan Latona (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
300 North LaSalle Street  
Chicago, Illinois 60654  
Telephone:     (312) 862-2000  
Facsimile:      (312) 862-2200  

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**SUPPLEMENTAL REPLY IN SUPPORT OF DEBTORS'
SECOND MOTION FOR ENTRY OF AN ORDER (I) EXTENDING
THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11
PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION
1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this supplemental reply (this "Supplemental Reply") in support of the *Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Related Relief* [Docket No. 1940] (the "Motion").[2]  In support of this Supplemental Reply, the Debtors state the following:

### Reply

1. On the eve of the omnibus hearing on February 15, 2023, the Debtors—with the Committee's support—unveiled a framework for a value-maximizing chapter 11 plan. That framework proposed that account holders would receive distributions of most of the Debtors' liquid cryptocurrency upon exiting bankruptcy and that a NewCo (managed by the proposed plan sponsor, NovaWulf Digital Management, L.P.) would harvest the value of the Debtors' illiquid assets for the benefit of Earn creditors, who will be the equity owners of NewCo. Since the bridge order was entered in mid-February, the Debtors have made meaningful progress by turning this

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or the *Reply in Support of Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2067] (the "First Reply").

Following the adjournment, the Motion received the following objections and related responses: *Renewed Objection of the Ad Hoc Group of Withhold Account Holders and Other Transferees to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2157] (the "Withhold Ad Hoc Group Renewed Objection"); *Response of the Ad Hoc Group of Borrowers to the Debtors' Second Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement* [Docket No. 2158] (the "Borrowers Ad Hoc Group Objection"); *Statement of the Official Committee of Unsecured Creditors Regarding the Debtors' Exclusive Periods* [Docket No. 2159] (the "Committee Statement"); *Immanuel Herrmann's Objection and Reservation of Rights to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2162] (the "Herrmann Second Objection"); *Daniel A. Frishbergs'* [sic] *Second Limited Objection to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy C*ode *and (II) Granting Related Relief* [Docket No. 2163], and as amended, *Daniel A. Frishbergs'* [sic] *Amended Second Limited Objection to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2184] (the "Frishberg Second Objection" and together with the Withhold Ad Hoc Group Renewed Objection, the Borrowers Ad Hoc Group Objection, and the Hermann Second Objection, the "Objections") and *Víctor Ubierna de las Heras* [sic] *Joinder to Renewed Objection of the Ad Hoc Group of Withhold Account Holders and Other Transferees to the Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2168] (the "Joinder").

framework into a binding agreement with the proposed plan sponsor, through the execution of the Plan Sponsor Agreement and Plan Term Sheet on February 28, 2023.[3] The Debtors only seek an approximately three-week extension of the Filing Exclusivity Period to finalize and file the Plan consistent with the Plan Sponsor Agreement.

2. The execution of the Plan Sponsor Agreement demonstrates that the chapter 11 process is working as intended to maximize value, and an extension of the exclusive periods is clearly warranted. More specifically, the proposed transaction reflects back-and-forth negotiations, incorporates feedback from critics and supporters alike and would maximize the value of the Debtors' liquid and illiquid assets. In addition, as part of the Debtors' commitment to greater transparency, NewCo will operate as a public company, comply with all applicable regulatory requirements, and be managed by a board of directors, a majority of whom will be selected by the Committee.

3. Of course, ensuring regulatory compliance is mission critical to the success of the plan process. In furtherance of this goal, the Debtors are actively engaging with state and federal regulators regarding NewCo and the proposed plan structure. To be clear, NovaWulf is well positioned to ensure NewCo's regulatory compliance going forward, as NovaWulf has identified service providers who hold the necessary licenses to conduct go-forward operations. The Debtors will continue to engage with the Committee, NovaWulf, other key creditors, and regulators, and will provide additional detail regarding regulatory considerations in the forthcoming disclosure

---

[3]  *See Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2151] (the "Bid Protections Motion"). The plan term sheet (the "Plan Term Sheet") and plan sponsor agreement (the "Plan Sponsor Agreement") with Novawulf Digital Management, L.P. ("Novawulf") and the Committee are attached to the Bid Procedures Motion as Exhibit A and Exhibit B, respectively. The Debtors also filed a *Notice of (I) Selection of Stalking Horse Bidder and (II) Amended Dates and Deadlines with Respect to Bidding Procedures for the Potential Sale of Substantially All of the Debtors' Assets* [Docket No. 2150] designating NovaWulf as the stalking horse bidder.

3

statement. NewCo will also comply with ongoing financial reporting duties and conformity with public company procedures and internal controls.

4. The Committee shares the Debtors' enthusiasm for the proposed path forward, noting that it "believes that the NovaWulf [t]ransaction is the best, actionable alternative at this time" and that it "is excited about the opportunity [the transaction] provides to maximize value and move these chapter 11 cases towards their conclusion." Committee Statement ¶ 9. In partnership with the Committee and NovaWulf, the Debtors will continue to engage with the various stakeholders to reach consensus in preparation for filing the chapter 11 plan and disclosure statement later this month.

5. Although the Debtors believe that the NovaWulf transaction is value maximizing based on the bids received to date, the proposed NovaWulf transaction establishes a floor and a framework against which other parties can bid, and toward that end, the Debtors have extended the deadline for interested parties to submit additional bids through April 17, 2023. The Plan Sponsor Agreement contains a broad "fiduciary out" that enables the Debtors or the Committee to pivot to an alternative transaction in the event that any prospective party proposes a transaction superior to the one currently contemplated by the Plan Term Sheet and authorizes the Debtors and the Committee to field further proposals from any interested bidders. But, the Plan Sponsor Agreement and Plan Term Sheet send a strong message to the market by setting a floor for creditor recoveries while simultaneously allowing other prospective bidders to submit higher bids, which would inure to the benefit of all stakeholders.

6. In light of this progress, the Debtors were encouraged to see only a limited number of additional responses to the Motion. The additional responses fall in one of two categories: first, the Borrowers Ad Hoc Group and the Withhold Ad Hoc Group filed additional pleadings reserving

4

their rights regarding exclusivity and expressing their desire to continue ongoing discussions regarding the plan; and second, a few of the perpetually objecting *pro se* creditors reiterated their prior arguments, criticizing certain plan terms and rehashing their complaints about the process generally. As explained below, the Court should overrule the responses and grant the requested relief.

7. The Debtors continue to engage in good faith with the Borrowers Ad Hoc Group and the Withhold Ad Hoc Group. In particular, following receipt of the latest retail loan settlement proposal from the Borrowers Ad Hoc Group, advisors to the Debtors and the Committee had a productive meeting with members of the steering committee and are working to provide additional information and continue productive discussions. In parallel, the Debtors are also advancing settlement negotiations with the Withhold Ad Hoc Group. The concerns about regulatory approvals raised in both groups' objections should be assuaged by NovaWulf's commitment to deliver a schedule of regulatory approvals by March 17, 2023, its partnerships with other service providers who have key licenses and will support NovaWulf's operation, and the Debtors' continued discussions with various regulatory agencies. However, to the extent any concerns about the feasibility of the Plan remain, the appropriate time to raise those concerns would be in the context of plan confirmation. These objections do not demonstrate that exclusivity should not be extended for three weeks, particularly when good faith negotiations with these groups are ongoing.

8. The second category of objections repeat the issues and themes previously raised by the *pro se* creditors and generally suffer from the same flaw—these issues relate to plan confirmation and are not relevant to an extension of exclusivity. Complaints about the terms of the Plan are more akin to objections to plan confirmation than they are bona fide objections to an

extension of the Exclusivity Period. Indeed, stakeholders' preferences regarding the particularities of a plan are not part of the standard for extending exclusivity. Account holders will have an opportunity to continue to learn more about their plan treatment and express their opinion at the appropriate time via the solicitation and voting process. Similarly, Mr. Herrmann and Mr. Frishberg's apprehensions about the particularities of the bid protections should be directed at the relevant motion—the Bid Protections Motion.

9. Further, the additional objections offer no explanation as to why it would be in the best interests of creditors for the Court to permit other parties to file a plan, particularly now that the Debtors have entered into the Plan Sponsor Agreement. Denying an extension of the Exclusive Periods at this juncture would surely delay progress, as the advancement of these chapter 11 cases would be erased and creditors would be subjected to an avalanche of competing plans. Such an approach would waste both time and resources, depleting creditor recoveries.

10. For the reasons set forth in the Motion and in the First Reply, more than sufficient cause exists to extend the Exclusivity Periods. The proposed agreement with NovaWulf reflects the highest and best offer received to date to maximize stakeholder value. Furthermore, the sustained progress the Debtors have made, the proposed path to confirmation, the size and complexity of these chapter 11 cases, and judicial and economic efficiency, are compelling factors justifying an extension of the Exclusivity Periods as requested in the Motion. Over the coming weeks, the Debtors and their advisors will continue to work with the Committee and NovaWulf to finalize and file a chapter 11 plan and disclosure statement, another substantial step forward in bringing these turbulent chapter 11 cases to an end. The Debtors have achieved these results in no small part due to their extensive engagement with the Committee and other stakeholders. Extending the Exclusivity Periods will safeguard the significant value already embedded in the

Plan Sponsor Agreement and accelerate the path forward. While much work remains to be done, the Debtors are committed, now more than ever, to maximizing value for their stakeholders as these chapter 11 cases transition to the confirmation process.

## Conclusion

11. Accordingly, for the reasons set forth herein, the First Reply, and the Motion, the Debtors request that the Court approve the Motion and overrule the Objections and Joinder.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Court should overrule the Objections and Joinder and grant the relief requested in the Motion.

| | |
|---|---|
| New York, New York<br>Dated: March 6, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900<br>Email:  jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:  (312) 862-2000<br>Facsimile:  (312) 862-2200<br>Email:  patrick.nash@kirkland.com<br>            ross.kwasteniet@kirkland.com<br>            chris.koenig@kirkland.com<br>            dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |