Rebecca Gallagher                                    Hearing: March 21, 2023 10am

*Pro se creditor*

March 14, 2023

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ ) | | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al*, 1 | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered.) |
| _____ ) | | |

**RESPONSE TO DEBTORS' OBJECTION TO REBECCA GALLAGHER**

**PROOF OF CLAIM, CLAIM NO. 23959**

1. The Debtors seek entry of an order (the "Proposed Order"), that would partially disallow and reduce the Rebecca Gallagher Claim (my "Claim"), filed Claim No. 23959 in the Debtors' Claim register, to the amount reflected on the Debtors' schedules pursuant to section 502 of title 11 of the U.S. Code (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

*1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.*

2. The Debtors have not amended their reply to address the fact that on March 9, 2023, the Court issued the *Memorandum Opinion Regarding Which Entities Have Liability for Customer Claims Under the Terms of Use*. [Doc. No. 2205]. That opinion stated that "customers rights to assert non-contract claims [against non-LLC entities] are expressly reserved."

3. The Debtors' acknowledge the Proof of Claim is "comprehensive and well-organized, covering numerous grounds for relief " that are valid, and is "fiercely advocated". However, they assert that because these additional claims are preserved for prosecution through a central litigation administrator *after* Chapter 11, they should not be brought against the limited remaining assets of the estate.

• The Debtors' allege this is in order to ensure "fair and equal" distributions to all Account Holders.

• The Debtors also argue that to allow any claimant a greater recovery from the Debtors' estates at the expense of other Account Holders would be inequitable. But, to the extent this has any merit, it is only an argument relevant to LLC, and I have filed a claim against all Celsius entities.

• The Debtors' ask the court to disallow, with prejudice, any amounts in excess of the value of the cryptocurrency associated with my Celsius account, or estimate additional claims at $0 pursuant to section 502(c) of the Bankruptcy Code.

4. If a "fair and equitable" resolution cannot be achieved here, then discovery will be necessary to resolve this Objection. In which case, I request that it not be resolved without an evidentiary hearing, and March 21, 2023 be declared a status conference. In addition, I reserve

all rights, including the right to file an Adversary Proceeding, to have my claims addressed with the full protections of the Federal Rules of Civil Procedure, and to ask for a scheduling order that includes a process to resolve discovery disputes. Pursuant to paragraph 10 of the Order (i) Approving (a) Omnibus Claims Objection Procedures, (b) Omnibus Substantive Claims Objections and form of Notice, and (c) Satisfaction Procedures and Form of Notice and (ii) Modifying Bankruptcy Rule 3007(e)(6) (D.R. 2090), discovery is necessary to resolve the Debtors' objection. Therefore, the first hearing will be a status conference.

## **Background**

5. On November 9, 2022 I contacted the Court to request a hearing date for the Earn Motion I was preparing. (See Exhibits) On November 10, 2022, the Court asked me to request again when it was ready to file, and to let them know the nature of my Motion. I responded the same day to say it was ready and that the nature of the Motion was, I was seeking a ruling that I retain all right and title to the digital assets I transferred into the Debtors' Earn Program "due to fraudulent misrepresentation, oral modification to the terms of service, the terms of service being ambiguous and not plain, and because Celsius was operating illegally by selling unregistered securities".

6. I then did not hear back from the Court for 4 days, until November 14, 2022. That is to say until after the 21 days to timely file a Motion to be heard at the December 5, 2022 pivotal Earn Hearing had passed. On December 16, 2022 the Court told me the December 5, 2022 hearing was "no longer available", and offered me December 20, 2022 instead. This seemed to be a deliberate act of delay. It forced me into filing an Objection [Doc. No 1416] for the

December 5, 2022 Earn hearing instead of a Motion, an Objection I was not permitted to speak to at the hearing.

7. On November 29, 2022, I filed the Motion (the "Gallagher Motion") [Docket No. 1508] which the Court had assigned to the omnibus December 20, 2022 hearing. I was contacted by the Court on December 12 and informed, due to a "change in schedule the hearing scheduled for December 20, 2022 at 10 AM will need to be adjourned to the next omnibus hearing date in the Celsius case on January 24, 2023 at 10 AM." There were very few matters heard at the December 20 hearing, clearly there would have been time to hear my Motion.

8. On January 4, 2023, the Bankruptcy Court entered an Opinion, the Memorandum Opinion and Order Regarding Ownership of Earn Account Assets [Docket No. 1822] (the "Earn Opinion"). Ignoring all extrinsic evidence, all allegations of fraud, criminality, recklessness, negligent gross mismanagement, and breach of contract, the Opinion was based solely on a reading of the Terms of Service. It focused in particular on one sentence contained therein, a sentence surreptitiously added to a later version and buried deep in the fine print, which mentioned transferring "all right and title" to Celsius upon *loaning* your digital assets to their platform.  It is to be noted, the "Earn Opinion" was entered prior to the revelations of the Examiner's Final Report being available and before my Motion, and that of Pro Se Earn Account Holder, Kulpreet Khan, were even heard. This clearly violated the rights of Earn creditors to due process and was premature.

9. The Earn Opinion emphasized that Account Holders' rights with respect to various defenses to, and breach of contract claims, such as fraudulent inducement into contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable would be

reserved for the claims resolution process. **"Creditors will have every opportunity to have a full hearing on the merits of these arguments during the claims resolution process."** (The "Earn Opinion" at 45).

10. Any other interpretation of the Earn order would also go beyond the Debtors' requested relief. They requested "a presumption that each Account Holder is party to a binding contract with the Debtors, **which presumption is rebuttable to the extent an Account Holder succeeds on an individual contract formation defense in the future.**" (p. 4 of D.R. 1578) The Debtors further stated that "To the extent that a fact-specific defense is established to be generally applicable, the presumption could be widely rebutted." And that, at the same time, "some corner case defenses will be unique." Id at 14. The Debtors' intent is to preserve such individuals' arguments. (p. 4 of D.R. 1578, footnote 10)

11. On January 24, 2023, the Court held a hearing on my motion, (the Gallagher Motion). Following the hearing, the Court issued an order denying the Gallagher Motion, noting yet again that claims for such things as fraudulent misrepresentation "are reserved for the claims resolution process." *Order Denying Rebecca Gallagher's Motion Seeking A Ruling That All the Coins Deposited in Celsius Earn Are Her Property* [Docket No. 1933]. The Debtors are now seeking to keep my motion and related filings out of the Earn record on appeal, as if it is unrelated to the Earn decision and the court didn't consider it when ruling. In fact, the Earn decision was used to summarily dismiss my motion.

12. On February 8, 2023 I filed my Proof of Claim and set out 13 causes of action with the proofs and evidences that applied personally to me fully documented, and applied with particularity. This was done to the best of my ability, as a Pro Se. The Proof of Claim included an

Exhibit List of evidence containing the 179 Mashinsky AMAs, the Examiner's Interim and Final Reports, and the NYAG civil suit against Alex Mashinsky amongst other things.

13. I concluded that the contract was void and unenforceable because of, amongst other things, fraud. Fair and equitable relief would be the "rescission, or non enforcement of the Terms of Use, or the imposition of a constructive trust" (translation by Kirkland and Ellis, Debtor's Objection to Proof of Claim No. 23959 at 15), and that the digital assets I transferred to the Celsius platform, totaling $1,022,131.20, should be returned to me in kind. To be clear, I am not asking for $1,022,131.20 to be returned, but the coins themselves.

14. The Examiner's Final Report, [Doc No. 1956], filed on January 31, 2023, confirmed, from an impartial, independent, respected, third party source, and after a thorough and rigorous investigation, what I, and other Account Holders, had been trying to tell the Court all along. The fraud, misrepresentation, manipulation, and criminality did indeed exist, and was in fact worse than we all had realized.

## **Basis for my claim to be preserved**

15. The Debtors acknowledge my Claim raises "a number of contract defenses and counterclaims that, if adequately pleaded and successfully proven in trial, could either be remedied by equitable relief or an award of damages." (Claim Objection at 15) Notwithstanding this, the Debtors incorrectly assert that my claim is "not adequately pleaded" and that it "would be prohibitively expensive and time consuming to litigate." (Id. at 15) The Debtors proceed to steamroll over rescission, non enforcement, and constructive trust remedies with legalese and case history that is not applicable to the novel digital asset industry nor to this particular

situation. As for the adequately argued, justifiable damages claims I do make, and that the "Earn Opinion" allows a full hearing on, the Debtors assert that these are "fact-intensive causes of action that are difficult, expensive, and time consuming to litigate" (Id. 28). I do not disagree with that statement. But unless a "fair and equitable" outcome can be reached regarding the value of my specific claims, against all Debtor entities, I reserve the right to fully pursue those claims. In addition, I do not concede that my coins are properly "property of the estate" under 11 USC 541. There may not be enough coins to give everyone 100% back, but that is why settlements exist—to make the best of limited resources. Simply throwing out my claim because I can't get back 100% would be inequitable and inconsistent with the bankruptcy code.

16. As a Pro Se, with no legal training or background, (but with my life savings hanging in the balance), I am to be afforded to plead to a less "adequate" standard. My claim form is not a full litigation; it is an initial statement of the facts, which I can and shall amend in order to more fully plead my case at a later date, if necessary. I do not have the luxury of an army of attorneys at my disposal working round the clock to call upon, though my trapped assets are being used to afford the Debtors' just such a luxury. I assert that if my claim is not adequately pleaded in its current format, it is nevertheless thorough and clear enough for the claims I am making to be understood by the Court and the Debtors, and to be acknowledged as valid.

## Fair and Equitable Value

17. The Debtors assert that I am somehow claiming something that is not fair and not equitable; an "enhanced recovery" that would put me ahead of other Account Holders. I am simply asking for my coins to be returned at fair value. I am asking for the opposite of an "enhanced recovery". I am asking for a "fair and equitable" recovery. General Earn customers

are getting the most unfair, raw end of the deal and stand to suffer the greatest loss compared to other classes of Account Holders under the proposed New Plan, especially in light of the recent order that they only have claims against LLC.

18. We now know that Custody is a fictitious, illegal category; all funds were co-mingled. We know that Loans' collateral was co-mingled, rehypothecated and lost along with Earn's funds. Withhold is especially similar to many Earn corner cases. Yet we are going to say that Custody retains ownership of their coins and Loans retains ownership of their collateral, but somehow Earn does not? We are going to say that, if an Earn person takes out a loan, suddenly funds that were property of the estate become personal property again, when they become collateral. Or that when you pay off a loan, if your collateral moves back into Earn, it is suddenly no longer your property again. Or when an Earn person goes to withdraw their funds and they pass through Custody they suddenly become your property again. What nonsense is this! How have such unfair, and illogical, lines been drawn between Account Holders?

19. The largest class of Account Holders, Earn, are being given the shoddiest treatment of all and, under the New Plan proposal, stand very little chance of being made anywhere near as whole as Custody, Loans, Withhold, and the Convenience Class. **This is not "fair and equitable" treatment for General Earn,** all classes were equally deceived**.** The mining rigs have a remaining shelf life of one and a half to two years. How is a quarterly dividend going to make General Earn as whole as other classes in that short amount of time? Or even by the end of the initial 5 year term? Taking Earn's ETH, re-designating it as loan collateral and charging a management fee on the market upside of the price of ETH, plus the staking rewards, is not "fair

and equitable" to General Earn. Those staking rewards we could and should, collect directly ourselves, as well as benefit directly from the upside in the price of ETH.

20. As an unaccredited investor, who was trusting Celsius to be "safer than a Bank", I fail to see why my assets in Earn should not have been custodied and preserved with the same care afforded to someone in actual Custody. If there are not enough coins to go around, why in the world are pure Custody getting 100% back at the expense of Earn? Dirty Custody getting back 72.5 (or perhaps 100% back, based on the overall plan)? The Convenience Class 70%? These are artificially created classes with unfair assignments of value that do not reflect reality or equitability. From where I stand, it looks likely only 20% of liquid crypto, or less, will be left for distribution to General Earn? We get the crumbs. This is clearly not "fair and equitable" treatment, this is unconscionable. We are all similarly situated in that we all trusted Mashinsky and all fell for the lies.

21. I did not invest in a highly speculative start up hedge fund. I invested in crypto and should be allowed to directly reap the upside of my crypto investments over time. I did not withdraw a single penny of my Earn income, so there is not anything to distinguish me from a Custody Account Holder. I am not properly an Earn customer, given the material facts that were withheld from me regarding its suitability for me as a retail investor looking for some safe yield, and I believe my claim should rightly be reassigned to the Dirty Custody Class; I would gladly give up all the fake yield in order to be so assigned. Protecting retail customers like myself was clearly the intent of the New Jersey cease and desist order, as I laid out more fully in my Motion.

22. Given that there are not enough coins to go around, it is imperative that what coins there are be fairly distributed. My additional claims are valid, as demonstrated by the fact that

they will be taken up by the Litigation Trust and my right to pursue them is acknowledged by the Debtor at 3. However, I agree that litigating every cause of action would be difficult, expensive, time consuming, and take away from everybodies recovery from the estate. In order to do my part to avoid that outcome, but without giving up the right to pursue it should it prove necessary in the event of an adverse outcome for myself,  I therefore ask the Court to simply address what is "fair and equitable" regarding my Claim. What is my fair share, given that I am an unsophisticated, unaccredited retail investor with her life savings, including the proceeds of the sale of her home, locked on the Celsius platform. I am also of retirement age and not in a position to make back the losses that it took 45 years to build. Fair and equitable treatment should be afforded to me, and similarly situated retiree Account Holders, with deference to the fact that we are in the "AARP Class".

23. The Debtors claim I am asking for preferential treatment, when, on the contrary, I am simply asking to be given the opportunity to get the same portion of my life savings back as others, to be assigned a fair and equitable value to my claim, and, a fair and equitable distribution, over time, through any reorganization plan, and the proceeds of the litigation trust.

24. If, as this Court ruled, we are going strictly by the Terms of Service, *then the value of my digital assets on the dates I transferred them to the Celsius platform, should be the values that my Claim is based on*; *the dates on which the transfer of ownership occurred, and all 'rights and title" were granted to Celsius*. Had a bill of sale, or a transfer deed, been issued, it would have reflected those amounts as the true value of the property transferred, and form the "fair and equitable" basis on which to assign a value to my Claim. This is the value that should receive the 'missing coins' haircut.

25. It would not be "fair and equitable" to assign a value to my claim based on crypto prices on the date of filing, which happened to be at the bottom of the bear market. That value would subject my claim to an astronomical additional $437,065.38 market haircut just because the value of crypto was down at the time. The value will go back up and I will be able to recover, but only if I am able to regain possession of my fair share of the underlying crypto assets I deposited, the most important of which, after the Stablecoins, are my 4 BTC and 135 ETH. It would not cost anything near $1,022,131.20 to replace these coins currently, and I ask that the Debtor set my claim up in order to achieve that, if not at Plan Distribution, then over time.

26. In order to demonstrate how unfair my loss would be, compared to a similarly situated Creditor in the Earn Convenience Class, who at most will lose a few 1000 dollars, please note the digital assets I transferred to Celsius with their values on the dates of transfer, compared with their values on the date of bankruptcy.

| | Date of Transfer | Number of coins | $ Values Date of Xfer | $Values Date of BK |
|---|---|---|---|---|
| USDC | April  30, 2021 | 245,000.00 | | ) |
| | May    1,  2021 | 54,978.50 | 319,978.50 | )——- 350.065.822 |
| | April  14, 2022 | 20,000.00 | | ) |
| | | | | |
| BTC | May    3,  2021 | 2.8069 | 163,882.87 | ) |
| | May    3,  2021 | 0.006 | 352.01 | ) |
| | Jan    16, 2022 | 0.99636 | 42,974.37 | ) |
| | Total BTC value transferred | | 207,209.25 | 81,460.67 |

| | | | | |
|---|---|---|---|---|
| ETH | Oct   12, 2021 | 71 | 249,056.64   ) | |
| | Oct.   12, 2021 | 60 | 219,823.05   ) | |
| Total ETH value transferred | | 135 | <u>468,879.69</u> | 147,525.90 |
| ADA | Nov   12, 2021 | 12,204.91 | 25,063.76 | 5,598.008 |
| XTZ | March 26, 2022 | 269.921 | 1,000.00 (swapped) | 415.43 |

**TOTAL VALUE TRANSFERRED TO CELSIUS**      **1,022,131.20**

**VALUE ON DATE OF PETITION**                              **585,065.82**

**MARKET HAIRCUT**                              **437,065.38**

27. Crypto is a novel and cutting edge industry. Rules that were put in place nearly a century ago, and worked well in the past with Fiat denominated assets, do not, and should not, apply here; they will unfairly disadvantage and harm creditors such as myself. We do not still use the abacus now that we have the computer! These ancient rules call out to be modified by the Court in order to "fairly and equitably" treat victims of Celsius; bankruptcy code needs to be adapted to the nascent, emerging digital asset industry. The Celsius Case is complex and unique and calls for ground breaking new case law and precedent to be set. We should not be trying to treat this new asset class with an antiquated code which imposes a wholly inappropriate measure of value. Transfer of property ownership already dictates that value is assigned at the date of

transfer. The Court has already adapted bankruptcy code with the value of CEL Token and it can be done again here.

28. If my digital assets suffer a nearly 50% market haircut of $437,065.38 due to the arbitrary date of bankruptcy, and that reduced value becomes the capped value, the total amount considered needed to make me "whole" via tokens and the proceeds of the litigation trust, then I will be greatly disadvantaged and greatly harmed by that method of calculation compared to similarly situated Account Holders that bought in at lower values. That method is unfair and inequitable when applied to crypto. Dollarizing on the day of petition, and then subjecting General Earn assets to an additional 70% haircut, would mean a loss of $800,000 for me personally. How is that magnitude of loss "fair and equitable" compared to other Account Holders, to someone similarly situated in the Convenience Class who will lose at most less than 5,000 dollars? How can an $800,000 loss be made up via a quarterly dividend paid out over a five year period?

29. The Debtors claim I am asking for "a unique and enhanced recovery when all Earn Program Account Holders suffered the same harm." Yes it is unique, as it should be, as every case is different; but as for being enhanced, this is not true. The harm that Earn Account Holders suffer is **not the same** as I just demonstrated. It is not the same thing to have a haircut on a $3 BTC, or a $1000 BTC that gets assessed at $20,000, as it is to have a haircut on a $48,000.00 BTC that has already suffered a massive market haircut; I suffer *an enhanced loss not an enhanced recovery.*

30. Many Account Holders have been in the crypto space for a much longer time than myself and paid significantly less for their digital assets than I did. They are concerned about

Capital Gains consequences as they bought in so cheaply. I entered the crypto market in the Spring of 2021 and paid significantly more for all my coins. It would not be fair if that fact were not taken into account in assigning a fair value to the coins in my Claim.

## **Conclusion**

- I am willing to settle my case to avoid lengthy and costly litigation. To do so, I ask to receive a "fair and equal" distribution from the Debtors' Estate of the digital assets I transferred to the Debtors' platform.

- I ask that the base value of my Claim be set as the value of my coins on the date ownership was transferred to Celsius, such that I will neither be harmed by an additional huge market haircut and, such that I will ultimately receive nothing in excess of the number of coins associated with my account.

- I ask that I will not be forced to suffer a greater loss from the Debtors' estates to the benefit of other Account Holders, who paid significantly less for their crypto, or by an unfair calculation of Claim value that would result in such unfair loss.

- Another possibility is to transfer me to the Custody class, as I never once withdrew anything from Celsius. As an unaccredited retail investor, the Earn Program was a totally unsuitable investment for me, and had the proper material disclosures been made, I would never have chosen it. In which case I would surrender all yield.

- Should an amicable resolution of my claim not be achieved, I reserve the right to pursue the additional claims in my Proof of Claim through the Litigation Trust, a class action suit, or an

Adversary Proceeding (with proper discovery and entry of evidence into the record). I do not

concede that constructive trust would be an inappropriate remedy here, given how egregiously

I was misled.

- The filing of this Response is not, nor shall be deemed to be, a waiver or release of any of my

    Claimant's rights against any person, debtor entity, or property. I expressly reserve the rights to

    litigate these claims, and to seek any and all procedural protections afforded to me by law.

Dated: March 14, 2023

       Dickson, TN               Respectfully submitted,

                         By: /s/ Rebecca Gallagher

## <u>Exhibits</u>

 **Rebecca Gallagher**    November 9, 2022 at 11:35 AM
Scheduling of a Motion Rule 5070-1 Celsius Case 22-10964
To:  NYSBml_Glenn's_Chambers

Good morning Deanna

Pursuant to local rule 5070-1, a moving party must contact Chambers before filing a motion in order for it to be scheduled.

I am a pro se Creditor of Celsius in case 22-10964 and intend to file and serve a motion by the end of this week. I am contacting you to request a Hearing Date.

I also wondered if I could use a different email address for the purpose of this motion (such as a gmail account), rather than this one, to protect my identity and protect my crypto wallets from hacks. I would continue  to use this email for all other matters related to the case.

I wait for your instructions

Kind regards

Rebecca Gallagher

 Found in Inbox – Yahoo! Mailbox

 **NYSBdb_responsetomg.chambers**    November 10, 2022 at 9:44 AM
RE: Scheduling of a Motion Rule 5070-1 Celsius Case 22-10964
To:  Rebecca Gallagher,    NYSBml_Glenn's_Chambers

**Siri Found a Contact**
NYSBdb_responsetomg. chambers                    [ Add ]    
responsetomg.chambers@nysb.uscourts.gov

Rebecca,

Please email chambers for a hearing date once you have confirmed that the motion has been drafted and is ready to be filed.  Please confirm what type of motion you will be filing when it is ready to be filed.

Our chambers is unclear regarding what you mean by using a different email address for the purpose of this filing.  Can you please elaborate?

Best,

Chambers of Chief Judge Martin Glenn
U.S. Bankruptcy Judge
One Bowling Green

 **Rebecca Gallagher**    November 10, 2022 at 12:50 PM
Re: Scheduling of a Motion Rule 5070-1 Celsius Case 22-10964
To:  NYSBdb_responsetomg.chambers

Dear Deanna

Thank you for your response.

My motion has been drafted and is ready to be filed. I await a hearing date from you.

The title of my motion is:-

**Rebecca Gallagher hereby respectfully moves this Court for entry of an order to say that ownership of all the coins I deposited into the Celsius Earn platform belong to myself and not the Debtors, and that I retain all rights of title due to fraudulent misrepresentation, oral modification to the terms of service, the terms of service being ambiguous and not plain, and because Celsius was operating illegally by selling unregistered securities**



**NYSBdb_responsetomg.chambers**
RE: Scheduling of a Motion Rule 5070-1 Celsius Case 22-10964

November 14, 2022 at 12:37 PM

To:  NYSBdb_responsetomg.chambers,   Rebecca Gallagher   & 1 more

Details

Rebecca,

Chambers will get back to you once calendar availability is confirmed.

Chambers of Chief Judge Martin Glenn
U.S. Bankruptcy Judge
One Bowling Green
New York, NY 10004

See More from NYSBdb_responsetomg.chambers

**DA   Deanna Anderson**
Re: Scheduling of a Motion Rule 5070-1 Celsius Case 22-10964

November 16, 2022 at 10:13 AM

To:  NYSBdb_responsetomg.chambers,   Rebecca Gallagher   & 1 more

Details

Rebecca,

The omnibus hearing date and time on December 5th at 2 PM is no longer available for the Celsius case.  A new omnibus motion date has been reserved for December 20, 2022 at 10 AM using zoom for government. Please confirm if you will be using December 20, 2022 at 10 AM as the hearing date and time for your motion.  Also, please ensure that the Motion is filed with appropriate notice before the hearing and confirm by email to chambers.  Additionally, please email chambers regarding what type of motion you are filing.

The notice will need to specify that zoom for government will be used for the hearing, that eCourtAppearances need to be made by 4 PM on December 19, 2022 and include the link to make eCourtAppearances.  (The link can be found on Judge Glenn's chambers page under the eCourtAppearance tab).

Best,

Chambers of Judge Martin Glenn
Chief US Bankruptcy Judge
One Bowling Green
New York, NY 10004



**RG   Rebecca Gallagher**
Re: Scheduling of a Motion Rule 5070-1 Celsius Case 22-10964

November 19, 2022 at 8:30 AM

To:  Deanna Anderson,   Cc:  NYSBdb_responsetomg.chambers   & 1 more

Details

Dear Deanna

This is to confirm that I will be using the new omnibus motion date December 20,2022 at 10 AM for my motion.

As regards the type of motion, I am filing a motion regarding the ownership of coins and asking that my coins be ruled my property. That they should not be sold to fund the debtors business.

Please confirm that the date I use for filing objections to my motion is December 19, 2022.

Thank you

Rebecca Gallagher
Celsius per se filer



**NYSBdb_responsetomg.chambers**                                    December 12, 2022 at 9:38 AM
RE: Scheduling of a Motion Rule 5070-1 Celsius Case 22-10964, Doc no. 1508
To: Rebecca Gallagher

**Siri Found a Contact**                                                          [ Add ]   ✕
NYSBdb_responsetomg. chambers
responsetomg.chambers@nysb.uscourts.gov

Ms. Gallagher,

Due to a change in schedule, the hearing scheduled for December 20, 2022 at 10 AM will need to be adjourned to the next omnibus hearing date in the Celsius case on January 24, 2023 at 10 AM. Please consult the Bankruptcy Rules, Code and Chambers regarding service. File an amended notice of hearing including the following: The Court shall provide a Zoom link to those persons who have made an eCourtAppearance by 4 PM the business day before the hearing.  Any party appearing at, listening to, or observing the Hearing, must make an electronic appearance, an eCourtAppearance, by using the eCourtAppearance portal located on the Court's website, https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl, or by clicking the "eCourtAppearances" tab on Judge Glenn's page of the Court's website at, https://www.nysb.uscourts.gov/content/chief-judge-martin-glenn. Appearances must be entered on or before 4:00 p.m. prevailing Eastern Time on January 23, 2023. After the deadline to make appearances passes, the Court will send Outlook invitations to those persons who made eCourtAppearances, using the email addresses submitted with those appearances."

Best,

Chambers of Judge Martin Glenn
Chief US Bankruptcy Judge
One Bowling Green
New York, NY 10004