Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,
Celsius SPV Investors, LP, and Celsius
New SPV Investors, LP*

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
IN CONNECTION WITH THE DEBTORS' MOTION FOR AN ORDER
AUTHORIZING AND APPROVING CERTAIN BID PROTECTIONS
<u>FOR THE PROPOSED PLAN SPONSOR</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively, the "<u>Series B Preferred Holders</u>"), as beneficial holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares issued by Celsius Network Limited ("<u>CNL</u>" and, together with its above-captioned affiliates, the "<u>Debtors</u>"), by and through their undersigned counsel, hereby submit this limited objection and reservation of rights in connection with the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Dkt. No. 2151] (the "<u>Bid Protections Motion</u>"):[2]

### **Limited Objection**

1. By the Bid Protections Motion, the Debtors seek an order authorizing and approving certain Bid Protections for the Plan Sponsor of up to **$20 million**, consisting of payment of a $5 million Break-Up Fee and up to $15 million in Expense Reimbursement (the "<u>Bid Protections</u>"). The Bid Protections thus are equal to **44%** of the $45 million cash contribution by the Plan Sponsor envisioned in the Plan Sponsor Agreement.[3] Such a disproportionate fee should not be approved.

2. The Plan Sponsor has agreed to "make a direct cash contribution of $45 [million] to NewCo, furnish additional consideration to customers transacting on the NewCo platform to offset anticipated gas fees, and assume significant liquidation and winddown costs that would otherwise be incurred by the Debtors in a controlled liquidation of the Debtors' business."[4] Notably, much of the consideration offered to creditors under the plan is derived from the

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Protections Motion.
[3] Bid Protections Motion ¶ 25.
[4] Bid Protections Motion, Exhibit C (Plan Sponsor Presentation), at 2 (emphasis in original).

Debtors' own assets, not contributions from the Plan Sponsor. The Debtors do not, however, quantify the entirety of the Plan Sponsor's anticipated contribution, making it impossible to fully evaluate the reasonableness of the proposed Bid Protections. The Series B Preferred Holders object to the proposed Bid Protections on this significant shortcoming alone.

3. Evaluating the Bid Protections on the information available, however, indicates that they are wildly higher than amounts approved by courts. The Bid Protections in the aggregate equal nearly *half* of the $45 million Management Contribution. The $5 million Break-Up Fee alone is *11%* of the Management Contribution. Market standard, however, for break-up fees for stalking horse bidders is typically 1-3%. *See, e.g.*, *In re Integrated Res., Inc.*, 147 B.R. 650, 660 (S.D.N.Y. 1992) ("At its maximum, the fee was only 1.6 percent of the proposed purchase price of $565 million, or 3.2 percent of BT's 'out-of-pocket' expenses (excluding [the Debtor's] expected cash on hand)" and that percentage was "in accord with industry averages."); *see also Samjens Partners I v. Burlington Indus., Inc.*, 663 F. Supp. 614, 620 (S.D.N.Y. 1987) (noting that a "one percent [break-up] fee . . . was average" in approximately 20 leveraged buyouts); *In re JW Res., Inc.*, 536 B.R. 193, 195 (Bankr. E.D. Ky. 2015) (noting that break-up fees "in the range of 1% to 2% of the purchase price are often approved.") (collecting cases); *In re 995 Fifth Ave. Assocs., L. P.*, 96 B.R. 24, 27, 29 (Bankr. S.D.N.Y. 1989) (approving a break-up fee representing less than one percent of the purchase price); *In re Gen. Growth Props., Inc.*, No. 09-11977 (ALG), 2010 Bankr. LEXIS 5551, at *6-8 (Bankr. S.D.N.Y. July 26, 2010) (approving an order with language stating that "[i]n no case shall a break-up fee be greater than 3 percent of the Purchase Price in the corresponding Purchase Agreement[.]").

4. The cases cited by the Debtors fail to support approval of the excessive Bid Protections, which the Debtors attempt to obfuscate by describing solely the dollar amounts of

the approved break-up fees and expenses, rather than the relationship of those fees to the proposed purchase price. *See In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y Aug. 5, 2022) [Dkt Nos. 126 ¶ 31; 248] (authorizing a break-up fee up to 3% of purchase price); *In re All Year Holdings Ltd.*, No. 21-12051 (MG) (Bankr. S.D.N.Y. Apr. 19, 2022) [Dkt Nos. 66 ¶ 32; 85] (authorizing break-up fee *and* expenses of up to 3.5% of the purchase price); *In re Evergreen Gardens Mezz LLC*, No. 21-10335 (MG) (Bankr. S.D.N.Y. Oct.4, 2021) [Dkt Nos. 78 ¶ 29; 129] (authorizing break-up fee *and* expenses of approximately 3.98% of purchase price); *In re Aralez Pharmaceuticals US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Oct. 11, 2018) [Dkt Nos. 113 ¶ 53; 171] (authorizing break-up fee *and* expenses of up to 4.4% of purchase price); *In re Synergy Pharmaceuticals Inc.*, No. 18-14010 (LGB) (Bankr. S.D.N.Y. Jan. 7, 2019) [Dkt Nos. 17 ¶ 45; 181] (authorizing break-up fee *and* expenses up to 4.5% of purchase price).[5]

5.      Accordingly, the proposed Bid Protections are unreasonable and should not be approved.

## Reservation of Rights

6.      The Series B Preferred Holders also wish to express concern regarding the restructuring transactions contemplated by the Plan Term Sheet and the Plan Sponsor Agreement.

---

[5] Indeed, approval of other bid protections in this district also demonstrate that the proposed Bid Protections here are unreasonable. *See e.g.*, *In re Nine West Holdings Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) [Docket Nos. 20 ¶ 33; 223] (approving break-up fee and expenses of approximately 3.375% of purchase price); *In re Westinghouse Elec. Co.*, No. 17- 10751 (MEW) (Bankr. S.D.N.Y. Jan. 19, 2018) [Docket Nos. 2111 ¶ 37; 2184] (approving break-up fee and expenses of up to approximately 2.6% of purchase price); *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y. April 5, 2017) [Docket Nos. 223 ¶ 28; 356] (approving break-up fee and expenses of up to 3.75% of purchase price); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. Sept. 16, 2016) [Docket Nos. 1072 ¶ 48; 1206] (approving break-up fee and expenses of up to 4.33% of purchase price); *In re Gawker Media LLC*, No. 16-11700 (SMB) (Bankr. S.D.N.Y. July 8, 2016) [Docket No. 82 ¶ 13] (approving break-up fee and expenses of up to 4.14% of purchase price).

7. Notwithstanding that the Debtors have repeatedly acknowledged that, prior to confirmation of their chapter 11 plan, certain critical issues must be resolved, including (a) the intercompany claim between Celsius Network LLC ("LLC") and CNL (the "Intercompany Claim") and (b) which Debtors are liable to customers under the Terms of Use between LLC and its customers, the Debtors are now committing themselves to pursuing a plan that attempts to sweep these issues under the carpet instead of confronting them head-on.[6]

8. Specifically, the Plan Term Sheet is premised on the assumption that customer claims are senior to those of preferred equity because (i) customers have claims against every Debtor, (ii) the Intercompany Claim is of an amount no less than $3.5 billion, and/or (iii) CNL and LLC—and only those two Debtors—will be substantively consolidated.

9. *First*, since the Bid Protections Motion was filed, the Court has held that customers *do not* have contractual claims against every Debtor based on the Terms of Use. The proposed plan purports to obviate this Court's ruling on the issue.

10. *Second*, the amount of the Intercompany Claim contemplated by the Plan Term Sheet is uncertain—indeed, the Debtors admit that they "did not [ . . . ] complete a comprehensive analysis" of the Intercompany Claim, when determining it was approximately $3.48 billion.[7] The size of such claim must be determined or estimated by the Court.

11. *Third*, it will not be known until the hearing on plan confirmation whether or not the Court is going to allow the substantive consolidation of CNL and LLC; it should not.

---

[6] The Debtors have not yet made a filing seeking approval of their entry into the Plan Sponsor Agreement. Without this Court's approval, Debtors cannot be obligated under the agreement. *See* 11 U.S.C 105, 363.

[7] *See Debtors' Statement with Respect to Intercompany Claims Held by Debtor Celsius Network LLC Against its Debtor Affiliates* [Dkt. No. 2092] ¶ 7.

12.     Accordingly, the Series B Preferred Holders have asked the Debtors to include language in the proposed order that would clarify that the Court's approval of the Bid Protections Motion does not constitute approval of the Plan Sponsor Agreement or the proposed restructuring contemplated therein; however, as of the filing hereof, the Debtors have not included such language in the proposed order approving the Bid Protections Motion.

## **Conclusion**

13.     For the reasons set forth herein, the proposed Bid Protections are unreasonable, out of market, and should not be approved.

14.     To the extent the Court grants the Bid Protections Motion, however, the Series B Preferred Holders request that the Court (i) condition such approval on the clarifications requested herein and (ii) grant the Series B Preferred Holders such other and further relief as is just, proper, and equitable.

15.     The Series B Preferred Holders further reserve all of their rights regarding any arguments and determinations made with respect to the Plan Sponsor Agreement, the Plan Term Sheet, and any future plan of reorganization for the Debtors.

Dated: March 14, 2023
      New York, New York

| | |
|---|---|
| */s/ Dennis F. Dunne* | */s/ Joshua M. Mester* |
| Dennis F. Dunne | Joshua M. Mester (admitted *pro hac vice*) |
| Nelly Almeida | **JONES DAY** |
| **MILBANK LLP** | 555 South Flower Street |
| 55 Hudson Yards | Fiftieth Floor |
| New York, NY 10001 | Los Angeles, CA 90071 |
| Tel: (212) 530-5000 | Tel: (213) 489-3939 |
| Fax: (212) 660-5219 | Fax: (213) 243-2539 |
| | |
| - and - | *Counsel to CDP Investissements Inc.* |
| | |
| Andrew M. Leblanc | |
| Melanie Westover Yanez | |
| **MILBANK LLP** | |
| 1850 K Street, NW, Suite 1100 | |
| Washington, DC 20006 | |
| Tel: (202) 835-7500 | |
| Fax: (202) 263-7586 | |
| | |
| *Counsel to Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP* | |