Daniel A. Frishberg, *Pro Se*
Immanuel Herrman, *Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] ) | Case No. 22-10964 (MG) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |

**LIMITED OBJECTION TO THE JOINT MOTION FOR ENTRY OF AN ORDER (I) APPROVING (A) THE SETTLEMENT BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE CUSTODY AD HOC GROUP AND (B) THE ELECTION FORM AND (II) GRANTING RELATED RELIEF**

Daniel A. Frishberg and Immanel Herrmann (the "Objectors"), jointly file this Limited Objection (the "Limited Objection") to the *Joint Motion for Entry of an Order (I) Approving (A) the Settlement by and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief*. In support of the limited objection, we respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## Introduction

The Objectors would like to be clear that we are not objecting to a settlement *in general* being reached with the Custody Ad Hoc, and all Custody account holders.

In general, 72.5% (i.e. a haircut of 27.5%) is a high recovery relative to other account holders. However, in bankruptcy, we are told that in general everyone should be unhappy and it is perhaps at the very high upper end of "not unreasonable to end litigation" range.

In addition, we can even support legal fees being paid ***provided, however,*** that no legal fees be paid for future litigation past this point, such as Phase II (as the goal of a settlement, and paying legal fees of an *ad hoc*, should be to end litigation.)

That said, there are three issues that we submit for consideration by the Court in this limited objection.

## Limited Objection

First, there is the issue of customer clawbacks. Our understanding is that, under the current draft plan, the current custody settlement would allow custody account holders to ***ultimately*** receive 100% back up to $100,000–and if the preference threshold is raised in the future *for people who completely withdrew funds from the app*, it would also be raised for Custody account holders to be the same threshold as those who took funds off the app. So, while the settlement repeats again and again that there is a 27.5% haircut, the devil is in the details.

We do not believe that clawbacks *inside the app*–which are cheap and easy to do–should have the same threshold as clawbacks *outside the app.* Obviously, clawbacks are going to be uneven for a variety of reasons, such as the fact that we cannot likely claw back funds from people who have no assets, or those in Mainland China as just two examples. That is life. The current proposal would create a perverse incentive for Earn customers to push for *as low a retail clawback threshold as possible across the board,* just to make sure that assets that were "withdrawn" to custody are "clawed back". Which would not be as beneficial for the estate, since it does make sense to have a higher threshold outside the app, where litigation wouldn't make sense because the net recoveries would be significantly lower and more retail customers outside the app would be hurt. Setting a $100,000 threshold for Custody deposits, which are still inside the app, below which creditors get 100% back, ignores the reality that Celsius is able to quickly and easily recover assets that are in Custody accounts–instead of having to settle for cents on the dollar after expensive litigation (and possible limited funds available, etc.)

Just because it doesn't make *economic* sense to go after smaller clawbacks outside the app doesn't mean it doesn't make sense to settle preferences above the statutory cap of $7,575 at the 27.5% rate for Custody Customers with funds *inside the app*. (This statement applies equally to **all** customers who withdrew some funds but left other funds on the app.)

In other words: For obvious reasons, Clawbacks of Custody deposits (and other deposits) in the app should not be treated the same as withdrawals outside the app, just like we should not spend estate resources to claw back from someone with no assets, or someone in Mainland China. It's a bad precedent for Custody, and it's potentially a bad precedent for other account

types, as well (such as Earn customers who also made significant withdrawals into hardware wallets but have coins left on the app), to have the same threshold across the board.

Second, it is unclear to what extent the recent *Memorandum Opinion Regarding which Debtor Entities have Liability for Customer Claims under the Terms of Use* changes the impact of this settlement on Earn account holders (and Customers in general, for that matter.)

Unless and until there is substantive consolidation or some other resolution to inter-company claims, it raises questions about where Custody funds came from pre-petition, why, and what the remedies are for unsecured creditors who had their funds transferred to make Custody whole. For example, if Custody funds were transferred into the Custody workspace in FireBlocks exclusively (or partially) from Celsius Network LLC during "the Pause," when it was severely underfunded–while Celsius Network LLC was *knowingly insolvent*, there could be numerous issues: fraudulent transfer, a lack of transfer for reasonably equivalent value, etc. We need clarity on where Custody funds in Fireblocks came from. Was it all Earn customer deposits?

Finally, there is the matter of insider withdrawals from Earn to Custody. Below is a transcript from a Twitter Spaces hosted by Simon Dixon, in early July, prepetition, where a creditor admitted to moving assets from Earn to Custody based upon inside, non public info. This is highly likely to not be the only case of someone withdrawing from Earn to Custody based on inside info, it just appears to be one of the few, and potentially only case of someone *admitting* to it. This is why before *anyone* is allowed to withdraw from Custody without a

preference action that would restore their percentage to Earn (and if they have withdrawals outside of the app, Earn also) they should be required to sign a sworn statement saying that they had no inside/non-public knowledge of Celsius's issues at the time that they withdrew. Such information is different from information widely available online at the time, such as generalized concerns, and such requirements are common in other types of settlements and class action lawsuits, for example.

Understanding that entering such evidence into the record has its difficulties, we ask the Court to consider, presuming the below transcript is true, whether Custody account holders should sign a simple sworn statement that they did not rely on inside, non-public information when either withdrew funds from the platform (or from Earn to custody.) A creditor signing a statement that they did not rely on non-public, inside information in withdrawing to Custody or outside the app is a good precedent both for the Custody settlement, and for those settling clawbacks for those who withdrew completely (i.e. to an external account or hardware wallet.)

We have a good idea of who the creditor in the recording below may be, and it would not be difficult to find out using very basic discovery, to confirm their identity and enter the recording into the record. In addition, this Twitter Spaces was raised in a Declaration earlier in the following filings: D.R. 1058 and D.R. 1086, separate and apart from a Tweet that was shared with the Court (and later retracted by the sender as Mr. Herrmann noted in D.R. 1058). However, Mr. Herrmann had not located the original-source recording referenced in his declaration at that time. He now has; a transcript of the recording is below in Exhibit A. The bottom line is that those who withdrew based upon material, inside information like the Twitter spaces speaker

should not be protected by a settlement, particularly one that would let them get back 100% of their funds (depending on their account size and the ultimate clawback threshold) at the direct expense of other creditors.

## Conclusion

For all of the aforementioned reasons this Limited Objection should be **SUSTAINED**, and the Motion should be **DENIED**, until proper modifications can be made to it, including making sure that people with inside info do not benefit at the expense of others.


Respectfully Signed,


Daniel Frishberg, *Pro Se*
*/s/Daniel A. Frishberg*
March 14, 2023

Immanuel Herrmann, *Pro Se*
*/s/ Immanuel Herrmann*
March 14, 2023

**EXHIBIT A: TRANSCRIPT OF TWITTER SPACES WITH CREDITOR**

https://www.youtube.com/watch?v=BkX4hiqDjMk&feature=youtu.be starting at 1:09:04

CREDITOR: I met Simon [Dixon] a bunch of times, met Alex [Mashinsky] dozens of times at various crypto conferences, umm, I probably have 90% of my crypto net worth on Celsius, unfortunately including my son's college, uhh, education fund, uhh, I'm not kidding about that. During Consensus [a crypto currency conference], Alex was running around, telling friends of mine and people close to him that Celsius was in trouble, this was about 24 hours before he turned the lights off. When I got the phone call from someone who is very trustworthy, and somewhat within the Celsius community or team, I immediately, uhh, moved my funds from my Earn account to my, uhh, Custody account on Celsius. Do you think, Simon, that the Custody accounts are gonna be treated any differently if bankruptcy--if bankruptcy were to happen, umm, from the Earn accounts, meaning that the Custody accounts get paid out first over the Earn accounts?

# **CERTIFICATE OF SERVICE**

I certify that on Wednesday, March 14th, 2023, a true and correct copy *Limited Objection To The Joint Motion for Entry of an Order (I) Approving (A) the Settlement by and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief*, was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York, and served upon the Core/2002 service list by electronic mail, in accordance with the SDNY Bankruptcy Court's *Amended Final Order (I) Establishing Certain Notice, Case Management, And Administrative Procedures, And (II) Granting Related Relief* (ECF Docket No. 1181).

Respectfully Signed,

Daniel Frishberg, *Pro Se*
03/14/2023
*/s/Daniel A. Frishberg*