Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF
JOINT MOTION FOR ENTRY OF AN ORDER
(I) APPROVING (A) THE SETTLEMENT BY AND AMONG
THE DEBTORS, THE COMMITTEE, AND THE CUSTODY AD HOC
GROUP AND (B) THE ELECTION FORM AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this reply (this "Reply") in support of the *Joint Motion for Entry of an Order (I) Approving (A) the Settlement by and Among the Debtors, the Committee, and the Custody Ad Hoc Group and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*(B) the Election Form and (II) Granting Related Relief* [Docket No. 2148] (the "Motion")[2] and in response to the limited objection [Docket No. 2234] (the "Objection") filed with respect thereto by Daniel A. Frishberg and Immanuel Herrmann (together, the "Objectors"). In support of the Motion and this Reply, the Debtors state the following:

### Preliminary Statement

1. The settlement among the Debtors, the Committee, and the Custody Ad Hoc Group (the "Settlement") represents a major step forward in the Debtors' efforts to build consensus and maximize returns for all stakeholders. If approved, the Settlement will resolve all currently outstanding litigation relating to the Custody Assets and Custody Claims held by the Settling Custody Account Holders. In addition, the Settlement will resolve the Shortfall Issue and allow the remaining six percent (that had previously been held back) to now be distributed to Custody Account Holders entitled to withdraw under the Withdrawal Order.

2. Reaching the level of consensus required for the Settlement has taken months of negotiations among the parties and litigating the Phase II issues would take much longer and would involve significant costs and risks. The Settlement provides certainty and finality for the Debtors, who are quickly moving towards filing a proposed chapter 11 plan and disclosure statement. It also provides full resolution for those Settling Custody Account Holders who voluntarily elect to participate in the Settlement and will be able to withdraw a portion of their Custody Assets prior to the effective date of any plan.

---

[2] Capitalized terms used by not defined in this Reply shall have the meanings ascribed to them in the Motion. On March 20, 2023, the Debtors filed the Settlement Agreement by and among Celsius, the Committee, and the Custody Ad Hoc Group, dated March 20, 2023 (the "Settlement Agreement"), attached as Exhibit A to the *Notice of Filing of Custody Settlement Agreement and Custody Ad Hoc Group Letter* [Docket No. 2271].

3.      Notably, the Motion received only one objection—a remarkable achievement given the volume of litigation that has been present in these Chapter 11 Cases to date. Yet the arguments set forth in the Objection are not relevant to the Settlement. The Objectors oppose the Settlement primarily because some Settling Custody Account Holders may ultimately recover 100% of their digital assets in their Custody Accounts if their preference exposure is less than $100,000. That preference threshold, however, is not part of the Settlement. Rather, that proposed threshold is a component of the Debtors' proposed chapter 11 plan as further explained in the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2151] (the "Bid Protection Motion"). There is *no* preference avoidance threshold in the Settlement—the Settlement instead provides that to the extent better treatment is provided to holders of Custody Claims under a chapter 11 plan, then Settling Custody Account Holders shall receive that better treatment. Thus, the Objectors' primary argument in the Objection is nothing more than a premature confirmation objection that is irrelevant to the Court's decision of whether to approve the Motion and the Settlement.

4.      The Objectors' other arguments are equally unpersuasive and irrelevant. *First*, the Settlement will not affect other account holders because the Custody Settlement Payments will be made solely from digital assets in the Custody Wallets, which the Court has found are not property of the Debtors' estates. *Second*, requiring Settling Custody Account Holders to submit declarations regarding why such holders transferred assets into Custody Accounts before receiving Custody Settlement Payments ignores that the Settlement is intended to settle *all* claims the Debtors and the Debtors' estates may have against Settling Custody Account Holders with respect to their underlying Custody Accounts. Moreover, current and former employees and insiders of the Debtors cannot participate in the Settlement. Requiring a statement from non-employee, non-

3

insider Custody Account Holders that such holders did not possess inside information about the Debtors is unnecessary, irrelevant, and burdensome.

5. For these reasons, and as further set forth herein, the Court should overrule the Objection and approve the Settlement.

## Reply

I. **Entry into the Settlement is a Sound Exercise of the Debtors' Business Judgment and the Settlement Agreement Should Be Approved.**

6. The Objectors fail to put forward any evidence[3] or arguments relevant to the Court's consideration of the Settlement sufficient to deny approval of the Settlement. The Objectors argue that the Motion should be denied for three main reasons: (a) the Debtors should not "settle preferences above the statutory cap of $7,575 at the 27.5% rate for Custody Customers with funds inside the app," and the "threshold" for releasing Custody Account Holders from avoidance action should be lower than that for other customer groups;[4] (b) it is unclear where assets in the Custody Wallets "came from" and until that is decided, it is premature to approve the Settlement;[5] and (c) before any holder of a Custody Account can sign on to the Settlement, such holder "should be required to sign a sworn statement saying that they had no inside/non-public

---

[3] The Objectors provide a "Transcript of Twitter Spaces with Creditor" as <u>Exhibit A</u> to the Objection as "evidence" that certain users may have transferred assets into Custody Accounts prior to the Pause using "inside information." *See* Objection, <u>Ex. A</u>.

[4] Obj. at 3. *See e.g.*, *id.* ("We do not believe that clawbacks inside the app–which are cheap and easy to do–should have the same threshold as clawbacks outside the app."); *id.* ("Clawbacks of Custody deposits (and other deposits) in the app should not be treated the same as withdrawals outside the app.").

[5] *Id.* at 4.

4

knowledge of Celsius's issues at the time they withdrew."[6]  These arguments are irrelevant and unpersuasive and the Objection should be overruled.[7]

7.     As an initial matter, the Court should exercise its discretion in favor of a settlement wherever possible, as settlements are generally favored in bankruptcy. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged."). The Debtors believe the Settlement represents a fair and equitable compromise between the Parties that falls well within the range of reasonableness. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 595 (Bankr. S.D.N.Y. 1991) (finding that a settlement under Bankruptcy Rule 9019 must simply not "fall below the lowest point in the range of reasonableness"). In addition, the Court should consider the Debtors' business judgment when evaluating a potential settlement under Bankruptcy Rule 9019. *See In re Motors Liquidation Co.*, 555 B.R. 355, 365 (Bankr. S.D.N.Y. 2016) ("the business judgment of the debtor in recommending the settlement should be factored into the court's analysis"). For the following reasons, the Settlement satisfies the requirements of Bankruptcy Rule 9019 and each of the arguments raised in the Objection fails to demonstrate otherwise.

8.     ***First***, the Objectors' concern with the $100,000 preference avoidance threshold is a confirmation issue and not currently before the Court. Importantly, nowhere in the Settlement

---

[6]  *Id.* at 4–5.

[7]  The Objectors also appear to object to the payment of legal fees being paid. *See* Obj. at 2. It is unclear whether this is an objection to the "Fees and Expenses" provision of the Settlement Term Sheet or the Debtors' professional fees. In any event, such objection is premature as approval of any party's fees related to the Settlement, the Motion, or the issues therein is not currently before the Court. Pursuant to the Settlement, the Debtors have merely agreed not to object to or otherwise oppose the Custody Ad Hoc Group's filing of applications for reimbursement of professional fees related to the Settlement—approval of the Settlement does not constitute approval of the Custody Ad Hoc Group's professional fees. *See* Mot. ¶ 23 "Fees and Expenses." Furthermore, the Objectors recognize that the Debtors' estates should not be responsible for payment of fees and expenses for any further litigation in these Chapter 11 Cases, such as with respect to Phase II, which is precisely the point of the Settlement. *See* Obj. at 2.

5

Term Sheet or the Settlement Agreement do the Debtors explicitly provide that Settling Custody Account Holders will "ultimately receive 100% back up to $100,000" of their Custody Assets. Obj. at 2. Instead, the provision with which the Objectors appear to take issue is the following provision in the Settlement Term Sheet:

> Notwithstanding the foregoing, if any sale or chapter 11 plan provides any holders, or subset thereof, of Allowed Custody Claims with treatment on terms better than those set forth in this Settlement, including as a result of a release of claims against holders of Custody Claims (including avoidance actions), then any Settling Custody Account Holders shall be entitled to receive the difference between the Custody Settlement Payments and the treatment set forth in the sale or chapter 11 plan, as applicable, on the same terms set forth in such sale or chapter 11 plan, as applicable.[8]

That provision, combined with the current proposal in the Debtors' forthcoming chapter 11 plan, is what *could* result in certain Settling Custody Account Holders receiving a recovery of 100% under the plan. *See* Bid Protection Mot. ¶ 24, "Material Terms of Plan Sponsor Agreement - Releases" ("The Plan shall release Avoidance Actions against any current Account Holders that are not Insiders or Excluded Parties who (i) withdrew assets from the Debtors' platform totaling under $100,000 in the aggregate . . . .").[9] Thus, this argument is nothing more than an objection to a proposed preference avoidance threshold in the plan that is not up for approval as part of the Settlement.

9.  In any event, the Objectors' over-emphasis on the "ease of recovery" for assets "inside the app" as a reason to lower the preference avoidance threshold for Custody Account Holders over-simplifies the realities of the costs and time associated with litigating successful preference actions, which is a prerequisite to any recovery. *See* Mot. ¶ 36 ("[T]he Parties have

---

[8] *See* Settlement Term Sheet, "Custody Claims."

[9] The Objectors did not object to the Bid Protection Motion.

6

already spent more than six months on the Custody Issues without getting to Phase II"); Scheduling Order ¶ 10 (overviewing the complex issues and procedures involved in Phase II). The Objectors do not—and cannot—show that the Debtors' release of avoidance actions against the Settling Custody Account Holders pursuant to the Settlement "fall below the lowest point in the range of reasonableness." *Drexel Burnham*, 134 B.R. at 595. In short, the Debtors have determined, in their sound business judgment, that settling certain of the estates' legal claims is in the best interest of the estates. *See In re Smart World Techs., LLC*, 423 F.3d 166, 175 (2d Cir. 2005) ("It is the debtor-in-possession who controls the estate's property, including its legal claims, and it is the debtor-in-possession who has the legal obligation to pursue claims or to settle them, based upon the best interests of the estate."); *see also id*. ("In some instances, fiduciary duty requires the chapter 11 debtor to pursue a cause of action, but in other instances may require settlement.").

10.     **Second**, the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205] (the "<u>Opinion</u>") does not change the Court's holding that "digital assets in the Custody Wallets . . . are not property of the Debtors' estates[.]" *See* Withdrawal Order at 2. In addition, the Opinion provides that customers, which include Custody Account Holders, have contractual claims against Debtor Celsius Network LLC. *See* Opinion at 4 ("Considering the extrinsic evidence, the Court finds, based on a preponderance of the evidence, that the parties to the terms of use intended that only LLC, and not any other Debtor or non-Debtor affiliates, are liable to Customers *on contract claims* under the terms of use." (emphasis in original)). Thus, regardless of where the digital assets in the Custody Wallets come from, Custody Account Holders have a valid claim to a return of those assets based upon either one of the Court's holdings in the Withdrawal Order and the Opinion that

7

the Debtors may elect to settle—as they have done here.[10]  *Id.*  Further to this point, even the Series B Preferred Holders[11] have not opposed the Settlement.

11. Moreover, detailed information regarding the sources of digital assets in the Custody Wallets was available on the docket long before the Debtors filed the Motion or before this Court issued the Withdrawal Order.  For example, the *Interim Report of Shoba Pillay, Examiner* [Docket No. 1411] (the "Interim Report"), filed almost four months ago, addressed certain questions related to the sources of Custody Assets.[12]  The Debtors also filed the Blonstein Declaration addressing the sources of Custody Assets.[13]  Thus, the Opinion does not affect the Settlement and the proposed distributions under the Settlement are within the scope of this Court's findings already established in this case.[14]

12. ***Third***, the Settlement is a global resolution of all claims and causes of action against users with respect to their Custody Accounts, including any potential claims the Debtors may have

---

[10] The Custody Wallet Fireblocks workspace is owned by Debtor Celsius Network LLC.

[11] The Series B Preferred Holders are:  Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc.

[12] These questions are:  (a) how and when the Custody and Withhold wallets were created; (b) whether the Custody and Withhold wallets have only ever held Custody and Withhold coins, respectively, and whether the Custody and Withhold wallets include coins that have been designated as pledged collateral; (c) the process by which coins were transferred in and out of Custody and Withhold wallets; (d) the balance of assets in Custody and Withhold accounts and Custody and Withhold liabilities in the ten days before and after the pause by coin; and (e) the number and types of coin that are currently in Custody and Withhold wallets as a step in an unsuccessful attempt to withdraw coins off of the platform (to the extent ascertainable).  Interim Report at 2.

[13] *See* Blonstein Declaration, ¶¶ 4–26.

[14] The Objectors' issue of "where Custody funds came from pre-petition, why, and what remedies are for unsecured creditors who had their funds transferred to make Custody whole" should have been raised during Phase I and are now mooted by this Court's ruling in the Withdrawal Order that assets in the Custody Wallets are not property of the estate.  *See* Obj. at 4.

against users for "improperly" transferring assets into the Custody Program.[15] With respect to the Objectors' suggestion to require a signed sworn statement in connection with electing to participate in the Settlement, Mr. Herrmann raised a substantially similar objection and proposal on October 13, 2022, in response to the Withdrawal Motion. *See Amended Supplemental Response, Declaration, Exhibit, and Request for Relief* [Docket No. 1058], at 8. In response to Mr. Hermann's concerns, the Debtors stated that such a procedure would be unwieldy, costly, and ineffective. *Debtors' Omnibus Reply in Support of Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1565] ¶¶ 18–20.

13. Specifically, requiring Settling Custody Account Holders to review and submit declarations regarding their knowledge at the time of transfer would likely raise complex factual and legal questions regarding their individual circumstances, including what information was public, material, or would cause such holders to transfer balances—not to mention the potential litigation that would ensue should Mr. Herrmann or others seek to follow up on these declarations to prevent Settling Custody Account Holders from withdrawing assets. *Id.* ¶ 19.[16]

14. More importantly, however, these are some of the exact issues that the Settlement is seeking to resolve. The Settlement is a global resolution of **all** claims and causes of action against Settling Custody Account Holders related to their Custody Assets in exchange for those

---

[15] *See* Settlement Agreement ¶ 6 ("Upon the Plan Effective Date, each of the Parties shall mutually release each other Party from *any and all claims and causes of action* related to the applicable Allowed Custody Claims of Settling Custody Account Holders . . . ." (emphasis added)).

[16] The Court granted the Withdrawal Motion with respect to the Withdrawable Custody Assets without requiring Eligible Users to go through this procedure. *See* Withdrawal Order ¶¶ 3–11 (detailing the conditions of withdrawals); Withdrawal Notice (explaining the withdrawal procedures).

9

holders agreeing to recover only 72.5% of such assets. Carving out limited claims would significantly alter the agreement between the Parties and introduce new administrative costs and delays. Any potential benefit gained by requiring a "sworn statement" does not outweigh the costs associated with it, and thus, should not be a prerequisite for parties seeking to participate in the Settlement.

15. Finally, the Debtors tailored the Settlement to preclude participation from any current or former employee or insider of the Debtors. Mot. ¶¶ 2, 20. Besides providing an alleged "transcript from a Twitter Spaces hosted by Simon Dixon" purportedly showing that "a creditor admitted to moving assets from Earn to Custody based upon inside, non public info [*sic*]," the Objection did not provide any factual or legal basis to support requiring a sworn statement from each Settling Custody Account Holder.

## Conclusion

16. For the foregoing reasons, as well as the reasons set forth in the Motion, the Debtors request that the Court overrule the Objection and grant the Motion.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated: March 20, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:           joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                      ross.kwasteniet@kirkland.com<br>                      chris.koenig@kirkland.com<br>                      dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |