B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Immanuel Herrmann | DEFENDANTS<br>CELSIUS NETWORK LLC; CELSIUS KEYFI LLC; CELSIUS LENDING LLC; CELSIUS MINING LLC; CELSIUS NETWORK INC.; CELSIUS NETWORK LIMITED; CELSIUS NETWORKS LENDING LLC; CELSIUS US HOLDING LLC; GK8 LTD.; GK8 UK LTD.; and GK8 USA LLC |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>*Pro Se* | ATTORNEYS (If Known)<br>Kirkland & Ellis |

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) Declaratory judgment that released collateral, along with my other Earn deposits, are not property of the estate under 11 U.S.C. § 541 and other state and federal causes of action. The statutory predicates for the relief requested are Bankruptcy Rules 7001(2) and 7001(9). Declaratory relief is appropriate pursuant to Bankruptcy Rule 7001(a) and 28 U.S.C. § 2201(a). Securities law causes of action are 18 U.S.C. § 1348. Constructive trust and Terms of Use are under New York law, loan contracts are under Delaware law, and the consumer protection causes of action are under the laws of Maryland, New Jersey, and/or New York law.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint **All rights reserved** | Demand  $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Celsius Network LLC, *et al.* | BANKRUPTCY CASE NO.<br>22-10964 (MG) | |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of New York | DIVISION OFFICE<br>Manhattan | NAME OF JUDGE<br>Chief Judge Martin Glenn |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*s/ Immanuel Herrmann*<br>Immanuel Herrmann<br>*Pro se* | | |
| DATE<br><br>March 21, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Immanuel Herrmann | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Immanuel Herrmann
*Pro se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered.) |
| | ) | |
| IMMANUEL HERRMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. |
| v. | ) | |
| | ) | |
| CELSIUS NETWORK LLC; | ) | |
| CELSIUS KEYFI LLC; | ) | |
| CELSIUS LENDING LLC; | ) | |
| CELSIUS MINING LLC; | ) | |
| CELSIUS NETWORK INC.; | ) | |
| CELSIUS NETWORK LIMITED; | ) | |
| CELSIUS NETWORKS LENDING LLC; | ) | |
| CELSIUS US HOLDING LLC; | ) | |
| GK8 LTD.; | ) | |
| GK8 UK LTD; | ) | |
| and GK8 USA LLC; | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGEMENT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956) GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

I, Immanuel Herrmann ("**I**", "**me**," "**Plaintiff**"), hereby file this Complaint (the "**Complaint**")

against the debtors and debtors in possession (collectively, the "**Debtors**" or "**Celsius**")[2] in the

above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") and allege and state:

## PRELIMINARY SUMMARY

1. Prior to the petition date, I took out two loans, a Bitcoin Loan initiated on 11/2/2021 (the

   "**Bitcoin Loan**") and an Ethereum Loan initiated on 11/12/2021 (the "**Ethereum Loan**").

2. The loan agreements I signed (both the Loans Terms of Use V9) stated that:

   a. "You are the sole owner of all Digital Assets used in connection with the Loan

      (including the Collateral and any Margin Call delivery)"

   b. "Should you make a full Early Repayment of your Loan in accordance with the

      terms hereof, Celsius shall release the Collateral to your Celsius Account, within

      ten (10) days of your full repayment. Upon Celsius' release of the Collateral, the

      Loan shall be immediately and automatically terminated."

   c. Within ten (10) days of your full repayment of the Principal amount and all

      outstanding Obligations, Celsius shall release all remaining Collateral to your

      Celsius Account.

3. Under my Loan Agreements, I consented to Celsius's use of the Collateral during the

   loan periods. That consent terminated upon loan repayment when the Collateral was

   "release[d]" to my account. This was further explained to me in the by the loan

   agreements agreements I read and relied upon, as well as in a February 10, 2020 video by

   Aliza Landes, then Vice President of Retail Lending, who described taking a retail loan as

   "you're not going into debt, you're just borrowing against something you own." Celsius

---

[2] As used herein, the term "Celsius" refers generally to all of the Celsius group of entities, except where
otherwise noted.

Network AMA – Ask Aliza Anything!, YouTube (February 10, 2020),

https://www.youtube.com/watch?v=RIfECR1Ghhk In addition, the Terms of Use V8 was

unequivocal that the Coins would go into Custody, stating in ALL CAPS AND BOLD

that "**ANY ELIGIBLE DIGITAL ASSET TRANSFERRED TO YOUR CELSIUS**

**ACCOUNT ON OR AFTER THE MODIFICATION DATE [OF APRIL 15, 2022]**

**WILL BE INITIALLY TRANSFERRED TO A CUSTODY WALLET AS PART OF**

**THE CUSTODY SERVICE.**"

4.   My Bitcoin Collateral was not in the Earn program on April 15, 2022, or earning interest

on April 15, 2022, when Terms of Use V8 came into force. Instead, the Bitcoin Collateral

was in the Borrow Service on *and after* April 15, 2022, subjecting it to an "Earn Service

Termination Event" under the Terms of Use V8, defined as follows:

> "**ANY ELIGIBLE DIGITAL ASSET THAT YOU LOANED TO CELSIUS**
>
> **THROUGH THE EARN SERVICE PRIOR TO THE MODIFICATION**
>
> **DATE WILL CONTINUE TO EARN REWARDS PURSUANT TO THE**
>
> **TERMS HEREIN, UNTIL SUCH TIME AS ANY SUCH ELIGIBLE**
>
> **DIGITAL ASSET IS THEREAFTER USED IN A SERVICE OTHER THAN**
>
> **THE EARN SERVICE (E.G., THE SWAP SERVICE, CELPAY SERVICE,**
>
> **BORROW SERVICE, OR VOLUNTARILY MOVED TO THE CUSTODY**
>
> **SERVICE) OR OTHERWISE WITHDRAWN FROM YOUR CELSIUS**
>
> **ACCOUNT (EACH AN "EARN SERVICE TERMINATION EVENT").**

5.   On March 15, 2022, I paid off my Ethereum Loan and the Collateral was placed into an

Earn Account.

6.   On May 14, 2022, I paid off my Bitcoin Loan.

7.  On or around the date of the Pause, I learned that my Bitcoin Collateral had been placed into an Earn account, rather than a Custody Account.

8.  When I contacted Celsius by phone during the Pause, I was unable to have my Bitcoin Collateral (or any of my assets) transferred to Custody.

9.  The Bitcoin and Ethereum Collateral (the "**Collateral**") from both loans was placed (by Celsius) into an Earn account upon repayment.

10. I did not place, transfer or elect to place any the Collateral into an Earn account

11. Celsius did not have a contractual basis to place the Ethereum Collateral into an Earn account.

12. Celsius violated the express terms of the Loan Agreement V9, read in harmony with the Terms of Use V8, when they transferred my Bitcoin Collateral into Custody.

13. The Loan Agreement V9 modified and superceded the Terms of Use V7 because it was signed after the Terms of Use V7 came into force.

14. The Terms of Use V8, far from undoing the Loan Agreement V9, make it clear that any transfers into my wallet after April 15, 2023–the termination date–would be Custody deposits and would be my property.

15. With respect to the rest of my coins (and in the alternative with respect to all of my coins), I was defrauded into investing with Celsius.


### THE PARTIES

16. Plaintiff, Mr. Immanuel Herrmann, is a natural person, and a citizen of the United States. Plaintiff has filed Proof of Claim No. 24604 against each of the Defendants (except the

GK8 entities, which claim form is not yet due), in these Chapter 11 Cases in connection with his Account.

17. Defendant, Celsius Network, LLC ("**Celsius LLC**") is a Delaware limited liability company with offices in Hoboken, New Jersey. Celsius LLC is wholly owned by Celsius US Holding LLC.

18. Defendant, Celsius Networks Lending LLC ("**Networks Lending**") is a Delaware limited liability company with offices in Hoboken, New Jersey. Networks Lending is wholly owned by Celsius Network, Inc.

19. Defendant, Celsius US Holding LLC ("**Celsius Holding**") is a Delaware limited liability company with offices in Hoboken, New Jersey. Celsius Holding is wholly owned by Celsius Network Limited.

20. Defendant Celsius KeyFi LLC ("**KeyFi**") is a Delaware limited liability company with offices in Hoboken, New Jersey. KeyFi is wholly owned by Celsius Holding.

21. Defendant Celsius Lending LLC ("**Lending**") is a Delaware limited liability company with offices in Hoboken, New Jersey. Lending is wholly owned by Celsius Holding.

22. Defendant Celsius Mining LLC ("**Mining**") is a Delaware limited liability company with offices in Hoboken, New Jersey. Mining is wholly owned by Celsius Holding.

23. Defendant, Celsius Network Limited ("**Celsius Ltd.**") is a United Kingdom private limited company with offices in the United Kingdom and in Hoboken, New Jersey. Upon information and belief, Celsius Ltd. is owned as follows: 65.32% by Celsius Network, Inc. and 34.68% by institutional investors (which institutional investors acquired their equity interests through a series of funding investments from 2019 through 2022).

24. Defendant Celsius Network, Inc. ("Celsius Inc.") is a Delaware corporation with offices in Hoboken, New Jersey. Celsius Inc. is owned as follows: 83.7% by Alexander Mashinsky and 16.3% by S. Daniel Leon.

25. Defendant GK8 Ltd. ("**GK8**") is an Israeli corporation with offices in Tel Aviv, Israel and Hoboken, New Jersey. GK8 is wholly owned by non-debtor Celsius Network IL Ltd. which, in turn, is wholly owned by Celsius Ltd.

26. Defendant GK8 UK Limited ("**GK8 UK**") is an Israeli corporation with offices in Tel Aviv, Israel and Hoboken, New Jersey. GK8 UK is wholly owned by GK8.

27. Defendant GK8 USA LLC ("**GK8 USA**") is a Delaware limited liability corporation with offices in Hoboken, New Jersey. GK8 USA is wholly owned by GK8.

28. Celsius LLC, Networks Lending, Celsius Holding, KeyFi, Lending, Mining, Celsius Ltd., Celsius Inc., GK8, GK8 UK, and GK8 USA are all debtors and debtors-in possession in these Chapter 11 Cases.


## JURISDICTION AND VENUE

29. This Court has jurisdiction over this adversary proceeding (the "Adversary Proceeding") pursuant to 28 U.S.C. §§ 157 and 1334, because it arises in and relates to the above-captioned chapter 11 cases (the "Chapter 11 Cases").

30. The adversary proceeding is likely a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), (K) and/or (O) but may have "non-core" elements.

31.  Venue of the Chapter 11 Cases and this Adversary Proceeding in this District is proper under 28 U.S.C. §§ 1408 and 1409.

32. The statutory predicates for the relief requested herein are Bankruptcy Rules 7001(2) and 7001(9). Declaratory relief is appropriate pursuant to Bankruptcy Rule 7001 and 28 U.S.C. § 2201(a).

## **FACTUAL ALLEGATIONS**

33. I incorporate by reference my claim form 24604, which explains the factual allegations that lead to this complaint, and my *Response to Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann, D.R. 2238.*

34. I signed contracts that clearly, unambiguously–and, in fact, unequivocally–stated that my Bitcoin Collateral would be deposited into a Custody account, and not into an Earn Account.

35. I signed contracts that clearly and unambiguously stated that I was the "sole owner" of my Ethereum Collateral, not Celsius.

36. For the remainder of my deposits, I was defrauded into investing with Celsius and am entitled to equitable remedies and/or damages as outlined in this complaint.

## **FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that my Bitcoin Collateral is a Custody Deposit and is Not Property of the Estate)**

37. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

38. The Bitcoin Collateral is a Custody deposit, according to the plain language of Loan Agreement V9 read in harmony with the Terms of Use V8.

39. The Loan Agreement V9 did not transfer title to Celsius. Rather, under the Loan Agreement V9, I was the "sole owner" of the Collateral and I consented to Lending's use of the Collateral during the loan period only.

40. The Loan Agreement read in harmony with the terms of use clearly and unambiguously stated that collateral from a loan paid off after April 15, 2022, for all customers in the United States, including myself, would be deposited into Custody.

41. The Debtors repeatedly represented that the Collateral was my property. For example, the Loan Agreement I signed stated that I was the "sole owner" of the Bitcoin collateral. The Terms of Use Version 8 stated that the coins would go into Custody. In addition, during weekly livestream conversations, the Debtors' co-founder and majority owner, Alex Mashinsky, repeatedly represented that customer coins, including Collateral and Earn deposits "are your coins, not our coins." ECF Doc. # 1956, p. 10.

42. Based on the foregoing and the facts incorporated herein by reference, I am entitled to a judgment declaring that the Bitcoin Collateral is a Custody deposit, that I am entitled to a distribution from the Custody workspace in Fireblocks to the extent coins remain in the Fireblocks workspace, and that the Bitcoin Collateral is not property of the Debtors' bankruptcy estates pursuant to section 541(d) of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that my Ethereum Collateral is Not Property of the Estate)

43. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

44. The Ethereum Collateral is not property of the estate, according to a plain and unambiguous reading of Loan Agreement Version 9 read in harmony with Terms of Use Version 8.

45. The Loan Agreement Version 9 modified and superceded the Terms of Use Version 7 to state that I was the "sole owner" of the Ethereum Collateral, and such modification persisted upon the termination of the loan.

46. Any provision that would have returned the Ethereum collateral to an Earn account upon loan repayment is illegal and unenforceable.

47. Based on the foregoing and the facts incorporated herein by reference, I am entitled to a judgment declaring that the Ethereum Collateral is not property of the Debtors' bankruptcy estates pursuant to section 541(d) of the Bankruptcy Code.

## THIRD CLAIM FOR RELIEF
### (Conversion)

48. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

49. The Loan Agreement V9 read in harmony with the Terms of Use V7 stated that my Ethereum collateral was not property of the Debtors Estates, but that I was its "sole owner."

50. The Loan Agreement V9, read in harmony with the Terms of Use V8, stated that my Bitcoin collateral was not property of the Debtors Estates, that I was the "sole owner" of it, and that it was a Custody deposit.

51. When I exercised my option to make early repayment of each loan, the Collateral was released under the above terms.

52. Celsius placed the deposits into Earn, and I did not place them there, or give express or implied permission to do so.

53. In each instance, a Celsius employee closed the loan and manually initiated the transfer (to an Earn account) and I was not involved.

54. Celsius interfered with my ownership rights to the Bitcoin and Ethereum Collateral, and I were thereby damaged.

55. Based on the foregoing and the facts incorporated herein by reference, I am entitled to a judgment in my favor for conversion against the Debtors and return of my Assets.

## FORTH CLAIM FOR RELIEF
### (Failure of Contract)

56. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

57. When I repaid each Loan, the Collateral was removed from my Loans account and placed into an Earn account by Celsius.

58. Repayment of each loan terminated the contract by which Celsius claimed use of, or temporary ownership of, the Collateral (during the pendency of the loans only).

59. I never elected to have any of my Collateral released into an Earn account.[3]

60. In addition, on April 15, 2022, the Bitcoin Collateral was Collateral in the Borrow program, and not in the Earn service. It therefore underwent an "Earn Service Termination Event" under the Terms of Use because, on that date and well past that date, it was "used in a service other than the Earn Service."

61. Celsius' Loans Terms of Use V9 does not indicate that released Collateral would be placed in an Earn Account for either the Ethereum or the Bitcoin, which would be releasing the Collateral to itself as the owner.

62. Furthermore, the Terms of Use explicitly stated that after April 15, 2022, the Bitcoin Collateral would be placed into a Custody account, i.e. released to me as the owner.

---

[3] I dispute that the collateral was "returned;" rather, I take the position that four separate transactions took place upon release:
1. Deposit of coins into Earn
2. Loan initiation (initiated by me, with my consent, and subject to Celsius' manual approval)
3. Loan repayment (initiated by me, with my consent, and subject to Celsius' manual approval)
4. Release of collateral (completed by **Celsius**, manually–and **Celsius** decided where to send the Collateral, without my consent)

In addition, in the case of the Bitcoin Loan, another transaction, an "Earn Service Termination Event" under the Terms of Use took place for my Bitcoin Collateral on or around April 15, 2022.

63. As I did not consent to the terms of the Earn Account Agreement with respect to the Bitcoin or Ethereum Collateral, and I did not elect to place the released Collateral in Earn, I am not bound by it with respect to the Collateral.

64. Celsius acted without my permission, either express or implied.

65. There was no offer, acceptance, or meeting of the minds as to the return of the Collateral to my Earn Account, and the consideration was fraudulent (as Network was hopelessly insolvent since inception and such "consideration" was simply the reallocation of other users' coins to me) thus no new contract was formed and the Earn Account Agreement cannot be deemed binding.

66. To the extent the contracts can be read to allow for the Collateral to be placed in Earn, those terms are illegal and unenforceable, *in particular* after April 15, 2022.

67. Based on the foregoing and the facts incorporated herein by reference, I am entitled to immediate return of my Bitcoin and Ethereum Collateral.

### FIFTH CLAIM FOR RELIEF
### (Declaratory Judgment Establishing a Constructive Trust)

68. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

69. I had a confidential or fiduciary relationship with Celsius.

70. On May 12, 2022, I contacted Celsius to inquire as to the repayment of my Bitcoin loan.

71. I was told that "I have taken a close look at your account and can see your loan **98038** has since been completed and the collateral has been returned back to your account."

72. In the Loans Terms of Use V9, I was told I was the "sole owner" of all Collateral that went into the Borrow program.

73. The Terms of Use V8 in force at the time of my Bitcoin loan repayment explicitly stated that returned Collateral was to go to a Custody account using **ALL CAPS, BOLD, AND SOMETIMES UNDERLINED** language.

74. I relied on a BlockFi article that stated that Celsius had a fiduciary relationship with me *unlike BlockFi* among many other statements.

75. Instead of placing the Collateral in a Custody account, Celsius instead transferred the Collateral to an Earn Account – taking ownership of the Collateral for itself.

76. Even to the extent that Collateral was released to Earn before April 15, i.e. in the case of the Ethereum Collateral, the Loans Terms of Use had changed Celsius' relationship with me already by, *inter alia,* stating I was the "sole owner" of my Collateral.

77. Debtors were unjustly enriched as a result of the foregoing.

78. Based on the foregoing and the facts incorporated herein by reference, I am entitled to a judgment declaring that the Bitcoin Collateral is held by Debtors in constructive trust for my benefit and must be returned immediately.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)

79. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

80. To the extent that the Assets are property of the Debtors' bankruptcy estates, the Debtors' bankruptcy estates have been unjustly enriched.

81. The Loan Contract V9 read in harmony with the Terms of Use V7 and V8, taking into account the dates I signed the agreements and how the Loan Contract modifies and supercedes the Terms of Use, supports the position that I own all released Collateral.

82. Debtors exercised control over my property, and I have been harmed by this while Debtors have essentially stolen the "released" Assets (particularly the Bitcoin Collateral /

Custody assets, in express violation of the most prominent language in the Terms of Use V8).

83. Under the Terms of Use V8, in particular, the Debtors essentially stole my assets when they failed to honor the agreement–given the late date at which the transactions took place, and how hopelessly insolvent Network was at that time.

84. It is inequitable and unjust to permit the Debtors' bankruptcy estates to continue to retain the stolen Assets.

## SEVENTH CLAIM FOR RELIEF
### (Deceptive Trade Practices)

85. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

86. Each of the Debtors misrepresented material facts concerning the transfer of my coins and my Collateral to the Celsius platform.

87. As set forth above, the Debtors' co-founder and majority owner, Alex Mashinsky, repeatedly assured depositors and borrowers, including myself, that all coins used in the platform "are your coins, not our coins." ECF Doc. # 1956, p. 10.

88. The Debtors also represented in the loan contracts I signed that they would only possess, not own, the coins used in connection with the loans, including after repayment of loans. ECF Doc. # 393, p. 886 – "You are the sole owner of all Digital Assets used in connection with the Loan (including the Collateral and any Margin Call delivery)" and, upon repayment, the Debtors shall "release" the Collateral.

89. I signed the Loan Agreement V9 after the Terms of Use V7, and the Loan Contract modified and superceded the Terms of Use V7, with respect to all of my coins, or, at a minimum, with respect to all of my Collateral.

90. These Loan Contract V9, read in harmony with the Terms of Use V7 and V8, contained false and misleading statements (written into the contracts themselves), misleading me about the ownership of the coins involved in the lending program, and the ownership of all of my coins.

91. The Debtors further made false and misleading claims as set forth above and detailed in the Final Examiner's Report. Among other things, those false and misleading claims related to:

   a. Their relationship with me (Alex Mashinsky stated that it was a fiduciary relationship, unlike the relationship BlockFi had with its customers);

   b. their financial health;

   c. their compliance with applicable laws and regulations;

   d. their ability to meet obligations;

   e. their ability to safeguard customer assets;

   f. their revenue sources (including that 80% of their revenue was paid out in rewards); and

   g. the price of the CEL token.

92. The Debtors engaged in deceptive trade practices by, among other things: (1) advertising goods or services with intent not to sell them as advertised; and (2) engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding, including, without limitation, the Debtors' purported rights regarding all of his deposits, and in particular with regards to his returned Collateral

93. As a direct and proximate result of these deceptive trade practices, I suffered harm, including monetary damages, lost income, attorneys fees, and litigation costs.

## EIGHTH CLAIM FOR RELIEF
### (Consumer Fraud)

94. I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

95. Each of the Debtors misrepresented material facts concerning the Earn program and the "borrow" program.

96. For example, GK8 advertised insurance that I relied upon, mentioned in my claim form, and during weekly livestream conversations, the Debtors' co-founder and majority owner, Alex Mashinsky, repeatedly represented that the customer-deposited coins "are your coins, not our coins." ECF Doc. # 1956, p. 10.

97. The Debtors also represented that they would only possess, not own, my Collateral. They stated that I was the "sole owner" of the Collateral once such assets were transferred to the Celsius Platform for the loan program–and that, upon termination of the loan the collateral would be released to my account (Custody in the case of the Bitcoin collateral.)

98. The Debtors engaged in unlawful practices (i.e. consumer fraud) by, among other things misrepresenting, deceiving, fraudulently stating, fraudulently promising, unfairly endorsing, suppressing, or concealing material facts concerning Celsius, including, without limitation, false and misleading claims as detailed in the Examiner's Report concerning, *inter alia*:

   a.  the Debtors' financial health;

   b.  the Debtors' compliance with applicable laws and regulations;

   c.  the Debtors' ability to meet obligations;

    d.   the Debtors' ability to safeguard customer assets; and

    e.   the Debtors' revenue sources; and

    f.   the price of the CEL token.

99. The Debtors made these misrepresentations of material facts and/or actively concealed these material facts in connection with inducing me to open and maintain accounts on the Celsius Platform.

100.   The Debtors made these misrepresentations with the intent of inducing me to rely on such misrepresentations.

101.   I reasonably relied upon the Debtors' misrepresentations, to my detriment.

102.   As a direct and proximate result of these unlawful practices, I suffered harm, and am due compensation under state consumer fraud laws, including monetary damages, lost income, attorneys fees, potential treble damages, and litigation costs under the consumer fraud laws of Maryland, New Jersey, and/or New York.

## NINTH CLAIM FOR RELIEF
### (Unlawful Provision of Money Services)

103.   I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

104.   The Debtors advertised and held themselves out as providing money services through, among other things, their app and websites such as https://celsius.network.com.

105.   The Debtors engaged in the business of money transmission.

106.   The Debtors offered depository accounts to me, and originated Loans to me, without required money transmitter licenses from state and federal authorities, including accounts

that were advertised as a safe and secure way ("safer than a bank") to earn interest on stablecoins and other crypto.

107.    I am a natural person.

108.    The Debtors qualify as financial institutions by the nature of their business.

109.    I established a Deposit Account on the Celsius Platform for personal, family or household purposes.

110.    I transferred funds into my Deposit Account through an electronic terminal or computer.

111.    I properly instructed the Debtors to transfer funds from their respective Deposit Accounts through an electronic terminal or computer.

112.    The Debtors failed to honor requests to withdraw funds from my Deposit Accounts on or after June 12, 2022.

113.    The Debtors willfully violated federal and state money transmitter laws.


## TENTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

114.    I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

115.    The Debtors had a duty to communicate information to me in an accurate and truthful manner.

116.    As stated in my proof of claim form–and in this complaint–they did not.

117.    The representations I relied upon were material to my decision to transfer coins to the Celsius platform, to add more coins to the platform, and to take out and repay loans.

118.    Each of the Debtors' representations of material fact were false, as the Debtors intentionally and knowingly mischaracterized how the coins, Collateral, would be handled on the Celsius Platform, and how repayments would be handled, among other things.

119.    The Debtors:

a. knew that their representations of material fact were false and misleading at the time that they represented the information to me.

b. misrepresented the material facts with reckless indifference to their truth; and/or

c. should have known that their representations of material facts were false and misleading at the time that they represented the information to me.

120.    The Debtors intentionally communicated the inaccurate information to me for the purpose of inducing me to rely on those misrepresentations.

121.    I justifiably relied upon the Debtors' misrepresentations of material facts to my detriment.

122.    My reliance on the Debtors' misrepresentations of material fact was reasonable.

123.    If it were not for the Debtors' fraudulent misrepresentations, I would not have used the platform.

124.    As a direct and proximate result of the Debtors' misrepresentations of material fact, I suffered harm, including, but not limited to, monetary damages totaling not less than the value of my deposits and the released Collateral.

**ELEVENTH CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to Bankruptcy Rule 7001(9) that the Terms of Use and the Loan Agreements are not Enforceable)**

125.   I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

126.   I am an individual consumer.

127.   My loans were consumer loans.

128.   The loan of my coins to Celsius was a consumer loan.

129.   The Debtors did not hold the required licenses from the appropriate state and federal agencies to engage in the business of making consumer loans.

130.   The Debtors, in spite of not holding the required licenses, issued me a loan and converted the collateral upon my loan repayment, without my consent or any contractual basis for their conversion.

131.   The Debtors failed to comply with the state and federal regulations regarding disclosure concerning the terms of my Loans with the Debtors.

132.   State and federal regulations do not prevent the Debtors to take my Collateral, upon loan repayment, and convert it for its own use without my permission or any contractual basis for doing so.

133.   The Debtors lacked money transmitter licenses and custody licenses.

134.   The Debtors breached the Agreements I signed by, among other things, engaging in the fraudulent conduct described above, in my claim form, and as detailed in the Final Examiner's Report.

135.   The Debtors repeatedly misrepresented information to me, in the contracts I signed regarding how Celsius would treat returned Collateral during my loan, how it handled the collateral, and who owned the collateral. The public statements matched what the contracts stated, which was that I was the "sole owner" of the Collateral (and other

deposits). Celsius representatives also stated I owned the coins, i.e. they "are your coins, not our coins." ECF Doc. # 1956, p. 10.

136.    The Debtors knowingly misrepresented facts to me, to induce me to enter into agreements with Celsius.

137.    But for the Debtors' conduct, I would not have entered into the Agreements.

### TWELFTH CLAIM FOR RELIEF
### (Conversion of Collateral into Unregistered Securities / Securities Fraud)

138.    I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

139.    The Earn product is a security under the Howey test.

140.    I am an unaccredited investor.

141.    On September 17, 2021, the State of New Jersey Bureau of Securities (the "NJ Bureau") issued a Summary Cease and Desist Order (the "NJ Cease and Desist Order") to Celsius, finding that, as a matter of law, the Earn program (or Earn Rewards product) was a security as defined in N.J.S.A. 49:3-49(m), was required to be registered with the NJ Bureau pursuant to N.J.S.A. 49:3-60, was unregistered, and Celsius was offering and selling the security in violation of N.J.S.A. 49:3-60. Other state regulators also said Earn was a security.[4]

---

[4] See: In the Matter of Celsius Network, LLC, Summary Cease And Desist Order entered on September 17, 2021 by the New Jersey Bureau of Securities against Celsius Network LLC (available at https://www.nj.gov/oag/newsreleases21/Celsius-Order9.17.21.pdf); Department of Financial Institutions v. Celsius Network LLC, Administrative Action No. 2021-AH-00024, Emergency Order to Cease and Desist Order entered on September 23, 2021 (https://kfi.ky.gov/Documents/Celsius%20 Network%20LLC%202021AH00024.pdf); In the Matter of Determining there has been a violation of the Securities Act of Washington by Celsius Network Inc. et al., Order No. S-21-3212-21-SC01, Statement Of Charges And Notice Of Intent To Enter Order To Cease And Desist, To Impose A Fine, And To Charge Costs entered on October 20, 2021 https://dfi.wa.gov/documents/securities-orders/S-21-3212-21-SC01.pdf ; Texas State Securities Board v. Celsius Network Inc., et al., SOAH Docket No: 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 , Notice of Hearing by the State Security Board of Texas seeking entry of Cease and Desist Order dated September 17, 2021 (available at https://www.ssb.texas.gov/2021- 09/20210917_FINAL_Celsius_NOH_js_signed.pdf).

142.    Celsius continued to market and offer the Earn product subsequent to the issuance of

the NJ Cease and Desist Order and other cease and desist orders, and in spite of the fact

that it was a security under the Howey test, and upon information and belief, did not

register the Earn product with state or federal regulators.

143.    On April 15, 2022 and beyond, transfers into a Celsius deposit account were required

to be (at least initially) Custody deposits for all United States customers according to the

Terms of Use V8.

144.    Upon repayment of my Bitcoin and Ethereum loans, Celsius took my Collateral and,

without consent from me and in violation of the contracts, converted my property (the

Bitcoin and Ethereum Collateral) into a position in Earn Rewards Contract, an

unregistered security.

145.    With respect to the Bitcoin and Ethereum Collateral, I did not purchase–nor was I

sold–the Earn Rewards Product, upon repayment of the loan.

146.    As outlined in this complaint, and by reference, the Debtors defrauded me, made false

statements to me, omitted relevant material information, took my Collateral, converted it

for its own use, and used my Collateral in unregistered securities transactions without my

consent or any contractual basis to do so.

147.    Even if Celsius can claim my consent was somehow implied after-the-fact, which it

was not, there was no purchase of, or sale of, securities, by me, and no contract for the

purchase or sale of securities (particularly with respect to my Bitcoin Collateral, which

was released after April 15, 2022 and after an "Earn Service Termination Event.")

148.    Celsius informed me, via the Loan Agreement V9, that I was the "sole owner" of my

Bitcoin Collateral before taking out my loan, and the Loan Agreement V9 read in

harmony with the Terms of Use V8 stated it would be released to Custody. I was also

informed, via the Loan Agreement V9, that I was the "sole owner" of my Ethereum and

that it would be released to my account. In both cases, the Debtors converted the

proceeds into an investment in the Earn Rewards Product (without consent or a

contractual basis for doing so.)

149.    I have been harmed by the Debtors conversion of my Bitcoin and Ethereum Collateral

into an unsecured Earn Rewards Contract claim.

150.    The Debtors assert that after a loan was repaid, the loan terms and conditions required

them to transfer the cryptocurrency back to an earn account. I profoundly disagree, and

believe the opposite is required *in particular* when reading Loan TOU V9 read in

harmony with the TOU V8, where it is absolutely clear and unambiguous.

151.    An illegal act that has been prohibited by regulators is not a valid or enforceable

provision of the Terms of Use.

152.    In light of the clear and unambiguous contract language, and the cease and desist

orders, Celsius should have moved my Bitcoin Collateral into Custody instead of

converting it into an unregistered security without my express or implied consent.

153.    As a direct and proximate result of the Debtors' securities fraud and/or the

unauthorized conversion of my Collateral into Earn Rewards Contract claims, I suffered

harm and seek damages, including, but not limited to, treble damages under relevant

securities law statutes or other statutes.

154.    Because there was no "purchase or sale" of securities involved in these transactions,

but rather the conversion (by the Debtors) in each instance of my Collateral (which was

my property) into the Earn Rewards Contract without any request to purchase such

contract by me–or any sale of securities to me–this claim is not subject to subordination under 11 U.S.C. § 510(b) because it is not a claim related to "a purchase or sale of a security" but rather the taking of–and conversion of–my Collateral into a security.

## THIRTEENTH CLAIM FOR RELIEF
**(Declaratory Judgment that the Terms of Use and Loan Agreements I signed are Void and Unenforceable Due to Fraudulent Inducement and Securities Fraud)**

155.    I repeat and reallege each of the foregoing paragraphs as if fully set forth at length herein.

156.    As set forth in the Final Examiner's Report and in my claim form, the Debtors made numerous representations concerning the Debtors' financial health, the Debtors' compliance with applicable laws and regulations, the Debtors' ability to meet obligations, the Debtors' ability to safeguard customer assets and the Debtors' revenue sources.

157.    Those representations were false.

158.    As detailed in the Final Examiner's Report, the Debtors were aware of the falsity of these statements.

159.    I reasonably relied upon the Debtors' fraudulent misrepresentations when entering into the Terms of Use and Loan Agreements.

160.    I have been harmed by the Debtors' unlawful, unfair, fraudulent, and unconscionable behavior.

161.    I have been harmed by the Debtors' securities fraud.

162.    As a result, I am entitled to have the Agreements rescinded.

## CONCLUSION

I respectfully request that this Court enter judgment and award damages against the Debtors, plus

prejudgment interest, post-judgment interest, lost income, attorneys' fees, and costs of this

litigation.


## RESERVATION OF RIGHTS

I incorporate by Reference Daniel Frishberg's request for *pro se* relief from his Amended

Adversary Complaint (22-01179, D.R. 18). I reserve the right to, and plan to, amend this

complaint–and my proof of claim–to reflect new developments in the case and the Debtors'

recent response to my proof of claim–and to add, revise, or remove, claims for relief. At this

time, my rights under Article III of the Constitution are expressly reserved.


Dated: March 21, 2023

*s/ Immanuel Herrmann*
Immanuel Herrmann
*Pro Se*