**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
    sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
    gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT
IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING CERTAIN BID PROTECTIONS FOR
THE PROPOSED PLAN SPONSOR AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") states as follows in further support of the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2151] (the "**Motion**")[2] and in response to the objections and responses thereto:[3]

**Preliminary Statement**

1. The chapter 11 process is working as intended to maximize creditor recoveries. In September 2022, the Debtors—following extensive dialogue with the Committee and its advisors—began to solicit proposals from potentially interested investors to acquire their assets or sponsor a chapter 11 plan. Since that time, the Debtors, the Committee, and their advisors have worked collaboratively to identify potentially interested parties, develop potential transaction

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

[3] Three objections and two joinders were filed with respect to the Motion: the *Objection of the United States Trustee to Debtors' Motion for an Order (I) Authorizing and Approving Certain Bid Protections for Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2218]; the *Joinder and Supplement to Objection of the United States Trustee to Debtors' Motion for an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2224], filed by Ignat Tuganov; the *Limited Objection and Reservation of Rights in Connection with the Debtors' Motion for an Order Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor* [Docket No. 2229], filed by Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, and CDP Investissements Inc. (the "**Series B Preferred Holders**"); the *Joinder and Supplement to Objection of the United States Trustee to Debtors' Motion for an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief and Joinder to Joinder and Supplement Filed by Ignat Tuganov* [Docket No. 2236], filed by Víctor Ubierna de las Heras; the *Preliminary Joinder and Response of the Ad Hoc Group of Borrowers to the Debtors' Motion for an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief (ECF Doc. #2151)* [Docket No. 2225] (the "**Preliminary Borrower Objection**"); and the *Objection of the Ad Hoc Group of Borrowers to the Debtors' Motion for an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief (ECF Doc. #2151)* [Docket No. 2256] (together with the Preliminary Borrower Objection, the "**Borrower Objection**"). It is the Committee's understanding that the Borrower Objection has been resolved with terms that will be implemented into an amendment to the PSA. Therefore, the Borrower Objection is not addressed further in this statement.

constructs, meet with potential bidders and their professionals, and coordinate access to due diligence and other information, among other things. The Debtors, with the Committee's support, also extended that process on multiple occasions to afford potentially interested parties the time necessary to consider and resolve the numerous regulatory, operational, and other issues associated with a potential transaction. Ultimately, that months-long process resulted in the plan sponsorship proposal from NovaWulf Digital Management, LP ("**NovaWulf**"). Following further negotiation among the Debtors, the Committee, and NovaWulf, the parties entered the Plan Sponsor Agreement, dated February 28, 2023 (the "**PSA**"), which memorialized the terms of the NovaWulf proposal.

2.      Consistent with the PSA and to further advance the plan process, the Debtors have sought approval of the Bid Protections contemplated by the PSA. The Committee believes that the requested relief is in the best interests of the Debtors' creditors, and that the Court, therefore, should grant the Motion. More specifically, the proposed NovaWulf transaction—which has been heavily negotiated among the Debtors, NovaWulf, and the Committee—is not only the highest and best proposal on the table today; it is the only feasible transaction other than a value-destructive liquidation. Moreover, the proposed NovaWulf transaction would provide a host of benefits to the estates. Among other things, the proposed NovaWulf transaction would also incorporate settlements for Custody and Withhold account holders and release certain potential preference claims, which is intended to provide closure for the vast majority of account holders who may be subject to such claims. Finally, the Debtors and the Committee have also reached an agreement in principle with the Ad Hoc Group of Borrowers with respect to a proposed plan treatment, which would resolve a significant contingency in these cases regarding the treatment (and priority relative to Earn creditors) of the claims of loan borrowers.

3. The approval of the Bid Protections—which are appropriate when compared to the value of the assets which would be transferred to NewCo, the amount of work involved in establishing NewCo, and the complexity of the proposed plan transaction—would ensure NovaWulf's ongoing participation in the process and set a floor for the Debtors' competitive auction process. Importantly, the Debtors and the Committee each have a "fiduciary out" that will allow the parties to terminate the transaction if either party believes there is a higher or better proposal available. Indeed, the Committee is already actively engaged in discussions with the Debtors and a potentially interested party that has submitted an alternative proposal.

4. Notwithstanding the foregoing, certain parties object to the Motion on the grounds that the proposed Bid Protections are inappropriate, the relief requested is premature, and the Court's recent ruling regarding the preferred equity is a bar to pursuit of the proposed transaction. The Court should overrule the remaining objections. The objecting parties fail to identify *any* other potential transaction. Moreover, the Debtors and their creditors do not have the time, liquidity, or luxury of further prolonging these chapter 11 cases. NovaWulf has spent considerable time and money developing its proposal. Indeed, NovaWulf is unlikely to continue to pursue its transaction (for which it has already committed millions of dollars) if it is not provided with the agreed-upon Bid Protections. The requested relief is wholly appropriate in light of the extensive process to date that resulted in the NovaWulf transaction and the significant resources that NovaWulf has devoted to, and will continue to devote to, the Debtors' plan process. Finally, there is no need for the Court to address the various confirmation-related matters cited in certain objections, all of which can be properly considered at the confirmation hearing. Accordingly, the Court should overrule the objections and grant the Motion.

**Argument**

I. **The Court Should Overrule the Objections to the Reasonableness of the Proposed Bid Protections and Approve Them**

5. The U.S. Trustee and the Series B Preferred Holders object to the calculation and propriety of the proposed Break-Up Fee and the Expense Reimbursement. The Court should overrule those objections. The $5,000,000 Break-Up Fee—which was extensively negotiated between the parties—is payable only in the narrow circumstances where the Debtors or the Committee terminates the PSA pursuant to their "fiduciary out" and pursue an alternative transaction (and not an orderly wind-down of the Debtors' estates) or the Debtors are in material breach of the PSA. Similarly, the Expense Reimbursement—which the Committee understands has been reduced from $15 million to $13 million—is reasonable in light of the overall value of the transaction.

6. The remaining objectors focus on the fact that NovaWulf will invest $45,000,000 in cash under the proposed transaction. But courts in this District regularly assess the appropriateness of bid protections based on the *total value* the proposed transaction and not only the cash contributed by an investor.[4] Thus, the appropriate metric is not simply the cash purchase price paid by a potential investor but, rather, the overall magnitude and value of the transaction to the debtor's estate.[5] Here, the proposed NovaWulf transaction—which will sponsor an entire

---

[4] *See, e.g.*, *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 465 (Bankr. S.D.N.Y. 2014) (noting that the *total value* of the transaction should be considered) (emphasis added).

[5] *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 662 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (citing *In re 995 Fifth Ave. Assoc.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989)) (noting that break-up fees are permissible when reasonable in relation to the bidder's efforts and to the magnitude of the transaction); *In re Avaya, Inc.*, No. 17-10089 (Bankr S.D.N.Y. 2017) (approving break-up fee equal to 3 percent of purchase price, inclusive of assumed liabilities); *In re Sancilio Pharm. Co.*, Inc., No. 18-11333 (Bankr. D. Del. 2018) (approving break-up fee equal to 3 percent of purchase price, inclusive of credit component); *In re Katy Indus., Inc.*, No. 17-11101 (Bankr. D. Del. 2017) (approving break-up fee equal to 2.8 percent of DIP credit bid and assumed liabilities).

5

reorganization, rather than a simple disposition of certain assets—will likely exceed $2 billion. In other words, the Bid Protections (which will total up to $18 million in cash) will total—*at most*—less than 1 percent of the total value of the transaction—well below the 3-percent threshold cited by the objectors. The Court, therefore, should overrule the objections.

## II.     The Court's Customer Claims Decision Is Irrelevant to the Relief Requested

7.     The Series B Preferred Holders, the U. S. Trustee, and Ignat Tuganov each argue that approval of the Bid Protections requires the Court to determine the effect of the Court's *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205] (the "**Claims Opinion**") upon the proposed NovaWulf transaction. The gist of these objections is that the Debtors, the Committee, and NovaWulf must reconstruct the proposed transaction—which provides zero recovery to preferred equity holders—as a result of the Claims Opinion. Not so.

8.     These objections do not contest the propriety of the proposed Bid Protections, but rather the treatment of the Series B Preferred Holders under the proposed Plan Term Sheet. The Series B Preferred Holders will have the ability to raise those objections in connection with confirmation of the plan. Moreover, even if the Claims Opinion were somehow relevant here—and it is not—the objectors ignore that account holders are still entitled to all of the value of the Debtors' assets due to several factors.[6]

9.     *First*, the intercompany claim between Celsius Network Ltd. ("**CNL**") and Celsius

---

[6] Claims Opinion at 3 ("Not addressed in this Opinion are two arguments that could reduce or eliminate entirely any recovery for the Series B Preferred Equity holders, even if they prevail on the terms of use contract interpretation issue, and thereby increase recoveries for LLC's Customers. . . . Therefore, this decision could have little or no effect on the pool of assets available to satisfy Customer claims.").

6

Network LLC ("**LLC**"), which the Debtors assert totals $3.5 billion[7]—an amount the Committee disputes and believes may be significantly higher—must be satisfied in full to LLC, where holders are the only meaningful constituency, before the preferred equity can recover a dime.  *Second*, in the event the intercompany claim is disallowed or otherwise found to be invalid, the PSA and Plan Term Sheet contemplate the substantive consolidation of CNL and LLC for purposes of the Debtors' chapter 11 plan.  That result is well supported by the factual record that has been publicly developed by the Committee and the Examiner, and, to the extent challenged, should be litigated in connection with confirmation.  *Finally*, account holders have asserted billions of dollars of alleged fraud claims against CNL, all of which must be satisfied in full before the Series B Preferred Holders are entitled to *any* recovery.  These matters may be before the Court soon, but they are not today.  In any event, the Debtors have met their burden to demonstrate that the proposed Bid Protections are appropriate notwithstanding the issues that the Court will need to address as part of the forthcoming confirmation hearing.

### III.   The Remaining Objections Are Premature Confirmation Objections or Otherwise Lack Merit

10.     The remaining objections are premature confirmation objections and, in any event, lack merit.  For example, the U.S. Trustee and Víctor Ubierna de las Heras object because the Motion does not disclose anticipated creditor recovery levels.  That information will be set forth in detail in the Debtors' disclosure statement.  Each creditor (and the U.S. Trustee) will have the opportunity to determine whether the disclosure statement provides adequate information with respect to the proposed plan.  It is not relevant to the Debtors' decision to move forward with bid protections and whether that decision is an appropriate exercise of their business judgment,

---

[7]   *See Debtors' Statement With Respect to Intercompany Claims Held by Debtor Celsius Network LLC Against Its Debtor Affiliates* [Docket No. 2092].

7

especially in light of the competitive auction process that is to be undertaken by the Debtors. Similarly, the Court's consideration of whether the proposed NovaWulf transaction will pass regulatory muster is a matter for the confirmation hearing, not today. In any event, consistent with the PSA, the Committee, the Debtors, NovaWulf, and their respective advisors have been engaged in extensive discussions regarding a schedule of required regulatory approvals, which is in substantially final form. Accordingly, the Court should overrule those remaining objections.

*[Remainder of page intentionally left blank]*

Dated: March 22, 2023
       New York, New York

Respectfully submitted,

/s/ *Gregory F. Pesce*
**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
       sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
       gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*