



UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 22-10964-mg

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

CELSIUS NETWORK LLC,

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

United States Bankruptcy Court

One Bowling Green

New York, NY 10004

March 21, 2023

10:03 AM

B E F O R E :

HON MARTIN GLENN

U.S. BANKRUPTCY JUDGE

ECRO: F. FERGUSON

HEARING re Debtor's Motion Seeking Entry of an Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain Current and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-Of-Pocket Expenses of Cooperating Witnesses, Including Attorneys Fees, and (III) Granting Related Relief. Doc## 2147, 2223, 2227, 2230)

HEARING re Joint Motion for Entry of an Order (I) Approving (A) the Settlement by and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief. (Doc## 2148, 2234, 1958, 2149, 2176)

HEARING re Debtors Objection to Proof of Claim No. 23959 of Rebecca Gallagher. (Doc# 2106, 2119, 2228, 2267, 2268)

HEARING re Debtors Objection to Proof of Claim No. 24480 of Daniel A. Frishberg. (Doc# 2107, 2119, 2237, 2267, 2268)

HEARING re Debtor's First Omnibus Objection to Certain (A) Amended Claims, (B) Duplicate Claims, (C) Non-Debtor Claims, (D) Unsupported Claims, and (E) Inaccurately Supported Claims. (Doc## 2103, 2119, 1368, 1846, 2090, 2267)

HEARING re Debtor's Objection to Proof of Claim No. 24604 of Immanuel Herrmann. (Doc# 2105, 2119, 2238, 2267, 2268)

Transcribed by: Sonya Ledanski Hyde

A P P E A R A N C E S :

WHITE & CASE LLP

Attorneys for Official Committee of Unsecured Creditors

111 South Wacker Drive, Suite 5100

Chicago, IL 60606-4302

BY: GREGORY F. PESCE

WHITE & CASE LLP

Attorneys for the Official Committee of Unsecured Creditors

555 South Flower Street, Suite 2700

Los Angeles, CA 90071

BY: AARON COLODNY

KIRKLAND & ELLIS LLP

Attorneys for the Debtor

300 N. LaSalle

Chicago, IL 60654

BY: ROSS M. KWASTENIET

CHRISTOPHER KOENIG

KIRKLAND & ELLIS LLP
Attorneys for the Debtor
601 Lexington Avenue
New York, NY 10022

BY: ELIZABETH JONES

UNITED STATES DEPARTMENT OF JUSTICE
Attorneys for the U.S. Trustee
201 Varick Street, Suite 1006
New York, NY 10014

BY: SHARA CORNELL

MCELROY DEUTSCH MULVANEY & CARPENTER LLP
Attorneys for NJ Bureau of Securities
570 Broad Street
Newark, NJ 07102

BY: JEFFREY BERNSTEIN

MILBANK, TWEED, HADLEY & MCCLOY LLP

Attorneys for Series B Preferred Equity Holders

55 Hudson Yards

New York, NY 10001

BY: ANDREW LEBLANC

DENNIS DUNNE

TOGUT, SEGAL & SEGAL LLP

Attorneys for Ad Hoc Group Of Custodial Account Holders

One Penn Plaza, Suite 3335

New York, NY 10119

BY: BRYAN M. KOTLIAR

ASSISTANT ATTORNEYS GENERAL

BANKRUPTCY & COLLECTIONS DIVISION

Attorneys for State Securities Board and Banking

P. O. Box 12548

Austin, Texas 78711-2548

BY: LAYLA MILLIGAN

VERMONT DEPT. OF FINANCIAL REGULATION
89 Main Street, Third Floor
Montplier, VT 05620

BY: JENNIFER ROOD

JASON IOVINE, Pro Se Creditor

SANTOS CACERES, Pro Se Creditor

REBECCA GALLAGHER, Pro Se Creditor

MARVIN E. CLEMENTS, JR., Pro Se Creditor

COURTNEY BURKS STEADMAN, Pro Se Creditor

ROLAND JONES, Pro Se Creditor

EZRA SERRUR, Pro Se Creditor

IMMANUEL HERRMANN, Pro Se Creditor

P R O C E E D I N G S

THE COURT: Thank you very much, and good morning to everybody. I have the amended agenda for the hearing in front of me. Mr. Koenig, are you going to begin?

MR. KOENIG: Yes. Good morning, Your Honor. Chris Koenig from Kirkland and Ellis for the Debtors. We'll proceed. As you noted, we filed an amended agenda last night. That reflected two adjournments. First, we had filed a motion to approve bid protections for our Stalking Horse bidder and proposed plan sponsor. That's NovaWulf Digital Management.

Since the objections were filed to that bid protections motion last week, we've been in discussions with NovaWulf about ways to potentially improve the terms of the bid protections for the benefit of the Debtors and all of our stakeholders. We adjourned that motion to the hearing on Thursday morning to allow us to finalize the terms of our revised agreement with NovaWulf, but we expect to announce improved terms of the bid protections as part of our reply in support of the motion that we would file tomorrow ahead of the hearing on Thursday.

We had also filed a motion to reimburse expenses of cooperating witnesses. We adjourned that to a hearing on Thursday, March 30th to allow additional time for us to discuss potential changes to the proposed order with the

Committee and the United States Trustee, and then alternatively, amended agenda for today. So first up now is the Custody Settlement Motion, which was filed at Docket Number 2148. We announced the settlement and principal at the omnibus hearing on February 15th. This settlement fully resolves long-running litigation between the Debtors, the Committee, and the Custody Ad Hoc Group.

The settlement is not just with the members of the Custody Ad Hoc Group. It will be open to all custody accountholders that elect to participate in the settlement excluding current and former employees and insiders of the Debtors. And just to recap for a moment, the Custody Ad Hoc Group filed an adversary complaint in August against the Debtors seeking a declaratory judgment that assets that are held in custody are not property of the Debtor's estate and should be promptly returned to the applicable accountholders.

We the Committee and the Custody Ad Hoc Group entered into a scheduling stipulation that divided the issues into two phases. In phase one, the Court held a hearing in December on whether custody assets were property of the estate and whether the Debtors could nonetheless retain such assets for the time being in light of potential preferences and other claims and causes of action that the Debtors held.

Following phase one, although the Court determined that the assets and the custody wallets were not property of the Debtor's estate, the Debtors did not have to distribute those assets at this time, and the parties proceeded to phase two. Phase two would have included discovery and briefing and argument with respect to potential claims and causes of action and the defenses to preference claims, including the ordinary course of business defense and the safe harbor under Section 546(e) of the Bankruptcy Code. Phase one -- I'm sorry, Your Honor.

THE COURT: No, go ahead. I just coughed.

MR. KOENIG: Oh, I'm sorry. Phase one also resulted in the Debtors having to reserve six percent of the custody claims that could withdraw under our withdrawal order while the parties discussed this shortfall issue. Given the time, risk, and expense associated with litigating phase two, the Debtors, the Committee, and the Custody Ad Hoc Group engaged in good faith arm's length discussions, and ultimately agreed to the settlement embodied in the motion and the settlement agreement, which we filed yesterday at Docket Number 2271.

So, in short, the parties agreed to settle all claims and causes of action relating to the custody assets and the custody claims as follows. Participating custody accountholders will be entitled to withdraw a total of 72.5

percent of their digital assets in two stages. The first 36.25 percent can be withdrawn after the settlement is approved. The second half will be withdrawable after the effective date of a Chapter 11 plan, or another date if the Debtors' Chapter 11 cases are dismissed or converted, or if the effective date of the plan does not occur by the end of 2023.

This amounts to an agreed 27.5 haircut on account of the potential claims and causes of action that the Debtors' estates could bring with respect to custody claims that are being settled under today's settlement. That includes potential preference claims and offset claims for custody holders that also held loans with the Debtors.

This agreement also includes a waiver of claims that would have arisen pursuant to Bankruptcy Code Section 502(h) on account of successful preference claims. So this will fully and finally resolve the custody claims of the participating holders. This settlement will resolve phase two as to the Custody Ad Hoc Group. The settlement includes a standstill of that litigation until the plan effective date, and this also resolves the six percent shortfall issue.

Once this settlement is approved, all of the custody holders that can currently withdraw 94 percent under the withdrawal order will be able to withdraw the full 100

percent. That means that if an eligible custody holder has already withdrawn 94 percent, they can go back and withdraw the remaining 6 percent less transaction fees. And if an eligible custody holder is not withdrawn at all, they can simply withdraw the entire 100 percent in one slot.

So Your Honor, in light of the costs and risk and time associated with fully litigating phase two, including the discovery that would have to occur, the Debtors believe that the settlement is fair and reasonable, and should be approved as above the lowest point in the range of reasonableness as required by Drexel Burnham in this district. The settlement fully resolves the litigation with the Custody Ad Hoc Group, and allows all other custody accountholders to participate in the settlement should they choose to do so.

Participation in the settlement is an election, not mandatory. Custody accountholders would receive notice and will have 30 days to choose whether they want to participate in the settlement or not. To be clear, we're expecting to offer the same settlement in our forthcoming Chapter 11 plan as well. So if a custody accountholder misses the initial 30-day deadline, they'll have another opportunity to participate. And again, this settlement excludes current and former employees and insiders of the Debtors. There was just one objection to the motion filed

by Mr. Hermann and Mr. Frishberg. We filed a reply to their objection at Docket Number 2275 that addressed the items that were raised in their objection.

So Your Honor, with that introduction out of the way, you know, I'm happy to take whatever questions Your Honor has for me at this point. And if not, I concede the lectern to the other parties, and I can come back and respond to whatever objections are raised this morning by Mr. Hermann and Mr. Frishberg.

THE COURT: All right. I have some questions. I'm not sure whether you or someone on behalf of the Committee should be the one to answer them. Let me put the questions out. So first is with respect to the resolution of the shortfall issue. Essentially it's resolved solely in favor of the custody holders rather than some other split. And I want to ask -- I guess -- I don't know, Mr. Colodny, are you the one who's going to speak on behalf of the Committee? I would just like to hear from someone on behalf of the Committee with respect to the resolution of the shortfall issue.

MR. COLODNY: Yes, Your Honor. Aaron Colodny on behalf of White and Case. Your Honor, when we were addressing the shortfall issue, the main point was that there weren't enough coins in the custody account to satisfy all holders. Under the settlement, if we receive any

reasonable amount of participation, there will be enough coins. And so we became comfortable that the amounts that were (indiscernible) for custody users are going to be sufficient to pay the custody holders, which allowed us to get comfortable with the release of that additional six percent.

THE COURT: All right. Thank you. Mr. Koenig, is there anything you want to add on -- just on that point of the shortfall resolution?

MR. KOENIG: No, Your Honor. No, Your Honor. I agree with Mr. Colodny.

THE COURT: All right. So my next question is whether parties who opt in to the settlement during the election period have an obligation to vote in favor of the plan in order to receive the second payment.

MR. KOENIG: Your Honor, yes, that's right. That's the way that it's structured is if you opt in -- essentially, this is a settlement that would've been provided under the plan. And what we've tried to do is to allow an early election option to allow folks to get their assets earlier as part of a two-phase approach. But yes, they would have to vote yes as part of the second phase. And that's -- and we would require parties that vote -- to participate in the settlement under the plan will also have to vote yes to accept the plan.

THE COURT: Well, that's what my next question is. Let's assume that custody holders don't opt in, in the early period, and let's assume they either abstain or vote against the plan, but the plan is nevertheless confirmed. Will those custody accountholders benefit from essentially the settlement, which will be wrapped into the plan as well if the plan is confirmed either over their abstention or negative votes?

MR. KOENIG: Yes, Your Honor. So the -- what's going to happen under the plan is it's a party-by-party election because it's a settlement of claims and causes of action by and between the Debtors and that individual. And that individual may have facts and circumstances that make that cause of action stronger or weaker. And it's a party-by-party election rather than a class election under the plan.

What would happen is if a party abstains or votes against the plan, they won't participate in the settlement. We will set aside 100 percent of the balance of their custody account. And then what will happen is there will be a period of time after the plan where the successor to the Debtors, the litigation administrator is what we're calling it, will have the opportunity to bring preference actions against custody accountholders or not. It's up to the litigation administrator.

And you know, what happens with respect to non-participating custody holders will be decided following the plan effective date. Either the litigation administrator brings preferences or other claims and causes of action and this court resolves them, or the litigation administrator does not within that time period. And the custody holder would get 100 percent of the assets at that time. So it's sort of a, you know, wait-and-see approach. It would either be litigated or not, and then the result for that non-participating custody holder will be cited after the plan effective date after the litigation administrator decides what to do.

THE COURT: But there is the decision of custody holders not to opt in, will not preclude -- if the plan is confirmed, it will not preclude them from recovering. They may be subject to preference actions by the plan administrator or the trust, but they're not foreclosed from recovering. Is that correct?

MR. KOENIG: That's right. That's exactly right, Your Honor. What's happening is they're not settling claims and causes of actions. So they will get to argue that they're entitled to 100 percent of the custody assets, and the litigation administrator will be able to bring claims and causes of action. And that litigation will continue on a person-by-person basis.

What we're offering here is an option to settle those claims and causes of actions and obtain certainty, and they you don't have to wait to see what happens following the plan effective date, and whether the litigation administrator pursues those claims and causes of action, including preferences.

THE COURT: Okay. My next question is I didn't see the definition of insider for purposes of this settlement in the settlement agreement. Is it defined? Did I miss it?

MR. KOENIG: Your Honor, I'd have to go back and check. I mean, our intent would be for it to have the same meaning as in the bankruptcy code.

THE COURT: Could you just check? I didn't see it, and my clerks didn't see it, and I just want to be clear on -- since the settlement does not apply to insiders that it's clear who's precluded from taking advantage of it. During your initial remarks, you talked about present or former employees. Is that correct?

MR. KOENIG: Employees or -- present or former employees or insiders, Your Honor.

THE COURT: Okay.

MR. KOENIG: Yes, that's right.

THE COURT: Could you just have either you or someone else look and see if I just missed it?

MR. KOENIG: Yeah. I'll be sure to do so, Your Honor, and I'm just going to grab my phone so that somebody can tell me.

THE COURT: Okay.

MR. KOENIG: I'll just keep an eye on it. Thank you.

THE COURT: Let me see if I have other questions. Bear with me. All right. Let me ask Mr. Colodny, do you want to be heard?

MR. COLODNY: Sure, Your Honor. I think Mr. Koenig did a great job of summarizing the settlement, so I won't retread that ground. You know, a couple of points I wanted to emphasize is first, you know, we heard that custody holders wanted to receive a portion of their recovery sooner rather than later. This settlement allows that. The settlement is also entirely voluntary.

As you pointed out, Your Honor, if custody holders wish to assert their rights with respect to 100 percent, they'll have the opportunity to do that. What it does, though, is it puts off litigation about that issue now with the consensual resolution of Mr. Kotliar and his clients so that we can focus on getting these cases to a conclusion, which we've all been working very hard to do.

That said, we think that it presents a very reasonable settlement of the causes of action against the

custody holders, and we thank everyone for their efforts in reaching this result and the Court for resolving some of the gating issues, and we support the settlement.

THE COURT: Okay. Mr. Kotliar?

MR. KOTLIAR: Hi. Good morning. Bryan Kotliar, Togut Segal and Segal, counsel for the Ad Hoc Group of Custodial Accountholders. Can you hear me okay, Your Honor?

THE COURT: Yes, I can. Very well. Thank you.

MR. KOTLIAR: Thank you. We echo everything that the Debtors and the Committee have said. Some of the lengthy history of our involvement in these cases from August through the settlement is detailed in the pleadings and the support letter. I'm not going to repeat all of that history here, but I will say that even beyond what's described in the pleadings, behind the scenes has really been a roller coaster ride from diligence negotiations to litigation to back to negotiations.

There's been a lot of ups and downs, but I think where we've arrived at, we said at the last hearing, it's a settlement where I think everyone is just a little bit unhappy with it, which I think means we have (indiscernible).

THE COURT: It's usually the best settlement.

MR. KOTLIAR: I'm sorry, Your Honor. We echo all the comments about the uncertainty and time and expense that

the settlement avoids. I think importantly the settlement does a few things that I want to note for the record. It gets a portion of custody holders cryptocurrency back to them sooner rather than later. It provides a full mutual release with respect to the custody claims. Your Honor had questions about how the voting works. Custody accountholders that participate in the settlement are obligated to vote their custody claims in connection with the plan, but they're not obligated to vote any other interest or claims that they have with respect to the plan. That's all kind of dealt with separately.

The Ad Hoc Group led the negotiations, the litigation, and the diligence that I talked about, but this settlement is an offer that's made available to all custody accountholders other than current informer insiders and employees. There's no preferential treatment for the Ad Hoc Group. Or I guess I shouldn't use that word. There's no different treatment for the Ad Hoc Group as compared to other custody accountholders. Everyone gets the same offer.

And with that, we thank the Debtors and the Committee and the Court and your chambers for your time and everyone's efforts in getting us to the settlement today.

THE COURT: Thank you. Is there anybody else who wishes to speak in support of the settlement? All right. Hearing none, let me turn to Mr. Hermann who filed an

objection along with Mr. Frishberg.

MR. HERMANN: Thank you, Your Honor. Immanuel Herrmann, pro se Creditor. First off, I want to reiterate it was a limited objection. I support 72 and a half percent plain and simple, and agree that it's a good final settlement of all of this. Second, it's not correct that I objected to legal fees being paid. I did not. In other words, I support a final settlement of 72 and a half percent for custody and do not have a problem with the legal fees being paid.

That said, the leaders of the Custody Ad Hoc Group, the Creditors, not the lawyers, have been very clear that their goal is to get 100 percent for as many Creditors as possible upon plan confirmation for those who accept the settlement by getting a final plan that has a preference threshold of at least 100,000 if not more. And by tying the threshold and the plan, the overall preference threshold to withdrawals off the platform so that custody and withdrawals off the platform would have the same threshold.

So I wasn't happy to send in this objection, but when I had heard it was 72 and a half percent, I supported it. And then I actually come to wonder by the time this is all said and done if you end up with something like 90 percent or more of the accounts actually just it being 100 percent. So perhaps the Debtors are correct that this all

just can raised via the final plan. Perhaps not. More likely, the preference threshold is going to be the same for custody as it is for people who withdrew off the platform. So that's where the objection comes in. Then on the insider issues, I was just suggesting a simple checkbox people would check and that's it. And then --

THE COURT: Mr. Hermann, that I don't understand just if you could be clear about what you mean about that.

MR. HERMANN: Oh, sure. That if people just checked a checkbox that they didn't withdraw based on insider information. That's -- it's sort of lie when I take an Ikea class action settlement, and there's a checkbox to check, and it's electronic, and it's part of just accepting the class action.

THE COURT: All right. Anything else you want to add?

MR. HERMANN: Yeah, just one other thing, Your Honor. So you know, in terms of the evidence that I didn't want to go through the effort to enter here, I would prefer, frankly, not to deal with all of it through the court. You know, my feeling was if this evidence would actually make a difference we could deal with it, but if it wouldn't, then I just didn't want to go through all of that. So I guess the last thing I'll add is, you know, I'm concerned that basically unimpaired people may end up voting on a plan

also. I don't know if that's true or not or what not.

THE COURT: Unimpaired Creditors don't vote. The class of only impaired Creditors vote on a plan, which I -- whether there are any classes of unimpaired Creditors is certainly not a -- anyway, we're not at that stage, but only impaired Creditors vote.

MR. HERMANN: Yeah. And then the final thing is I'm just concerned what happens to those. You have disputed claims against custody, which includes my claim, and that's pretty much it.

THE COURT: Okay. All right. I think -- Mr. Frishberg, I don't think you've appeared today. If you're on, go ahead. I -- I'm happy to hear you.

CLERK: I don't see him on.

THE COURT: Okay.

MR. HERMANN: I believe, Your Honor, that he is on a flight this morning.

THE COURT: Okay. All right. Thank you, Mr. Hermann. All right. Is there anybody else who wishes to speak in opposition to the proposed settlement.

MS. CORNELL: Your Honor, Shara Cornell on behalf of the Office of the United States Trustee if I may?

THE COURT: Go ahead, Ms. Cornell.

MS. CORNELL: Thank you. The United States Trustee doesn't have an objection to the proposed

settlement. However, the United States Trustee just wishes to reserve its rights with respect to plan confirmation and disclosure, and --

THE COURT: What plan -- you don't have to reserve your right. You have that right.

MS. CORNELL: Exactly, but with respect to informed notice of any releases and exculpations for any of the custody holders and their votes in favor of the plan, obviously that's some concern, and we just wanted to put that on the record. Thank you.

THE COURT: Okay. Thank you. So there are two hands raised. Mr. Serrur. I may be mispronouncing your name, but if you want to unmute and go ahead and speak.

MR. SERRUR: Yes. Thanks, Your Honor. My name is Ezra Serrur. I'm a Creditor in this case via a transfer of a claim. I manage a partnership that acquired a claim. And as, you know, the professionals and Your Honor, you know, is aware, you know, claims trading is a very useful process, particularly in this case where not all original Creditors, you know, have the luxury to wait out a long bankruptcy, and depending on their, you know, particular circumstances might need liquidity.

I just had one comment, it's not an objection to this settlement. I'm for this settlement, but it's related to the logistics of the distribution. And just to give some

color related to the pure custody distribution, what was ultimately required in the process ultimately included four claims that were transferred to, you know, to claim buyers for the original Creditor to record a video of themselves requesting the specific amount to be transferred, you know, to the buyer.

And I can just tell you from experience, you know, many of the claim sellers, when they sell their claim, you know, they are under the impression that they're able to walk away from this situation, which is very traumatic to them as you can imagine. And you know, having to, you know, record a video of themselves being reminded, you know, of the situation, perhaps being reminded of the situation that they were, you know, in the situation that they have to sell their claim at a discount and perhaps, you know, maybe the distribution was different than what they might've expected.

I just want -- want to request for this custody distribution under the settlement, if the Debtor can work with transferees where it is very, very unambiguous that the custody account was (indiscernible), if we can work together in a way where we can avoid the original Creditor having to record a video of themselves specifically instructing exactly how much, you know, coins or money is to be transferred to the buyer of the claim just so that, you know, they don't have to, you know, be reminded of the

situation, or maybe, you know, be tormented by, you know, the fact that they were, you know, not in a position to hold their claim to the end of the bankruptcy.

THE COURT: Well, Mr. Serrur, I think the reason for the video was because of phishing and other attempts at hacking. And the last thing that I think the Debtors or the Committee or the Court wants is any issue of someone purporting to be an assignee of a claim that really isn't, didn't have a valid assignment of the claim. I'll hear Mr. Koenig and perhaps Mr. Colodny on this point, but my understanding of the reasons for that requirement was because of repeated phishing efforts that have gone on in this case and that have jeopardized the security of claimholders. But I've heard you. I'll give the Debtor and the Committee a chance. But first, Mr. Iovine, do you want to be heard?

MR. IOVINE: Yes. This is Jason Iovine, pro se Creditor. This isn't an objection as a question. For the people that sent in funds after petition date like me, I filled out my claim and I added those to the custody because that's where it is in an account if you look at your Celsius account. How does that affect anything, or is just that going to be distributed? Because the -- it was assets sent in after the petition date.

THE COURT: All right. Let me ask. Mr. Koenig,

you want to respond?

MR. IOVINE: Thank you.

MR. KOENIG: Yes, Your Honor. Chris Koenig, Kirkland and Ellis for the Debtor. So what's going to happen there is we're in the process of opening the withdrawals for the post-petition transfers. And what will happen is after individuals that have made those transfers have actually withdrawn off the platform, their claim will have to be adjusted in some way through our claims objection or otherwise. But this custody settlement doesn't affect that right. We're in the process of opening up those post-petition withdrawals, but we will certainly deal with that at the appropriate time.

THE COURT: So if I understand, the -- those deposits are being -- they're not subject to this haircut. Those are being returned in full. Am I correct?

MR. KOENIG: That's right, Your Honor. They would be returned in full. And what I believe the Claimant is talking about is he on his proof of claim form indicated that custody included this post-petition amount. The amount that's in the Debtor's schedules and the amount that would be returned pursuant to the settlement would not include that. That'll be part of a claims reconciliation process. And as I indicated, assuming the Claimant withdraws, I would expect that we would object to that claim and say, you know,

you already -- that piece of it's already been satisfied. So that's for the claims reconciliation process, not for today. But you're right, Your Honor.

THE COURT: From my standpoint, though, that portion of any claim is being paid in full rather than only the 72.5 percent.

MR. KOENIG: Correct, Your Honor. That will be paid in full as a post-petition deposit --

THE COURT: Right.

MR. KOENIG: -- and is not a custody claim that is subject to the haircut as part of the settlement agreement.

THE COURT: All right. Thank you very much. Now, could you respond to Mr. Serrur's comments about -- he seems -- he didn't file an objection, but he --

MR. KOENIG: Yes.

THE COURT: -- as an assignee of a claim has raised concerns about the procedure that was being applied.

MR. KOENIG: Understood, Your Honor. So the company has been very focused on security in these case, as has the Committee. We've been in close contact with the Committee about our security protocols. And of course as Your Honor mentioned, there's been a variety of phishing and scamming attempts as part of these cases. So we've been very careful to make sure that the people that withdraw coins off the platform are actually entitled to do so or are

actually the right people to do so.

And we've put in place procedures that, depending on the amount of the claim and if there are other, you know, yellow flags or red flags that come up as part of the security process that is undertaken as part of withdrawing coins from the platform, there may be additional security measures that are necessary in order to confirm the identity of the withdrawing party. And that can include, you know, making a video and ensuring that the person that is trying to withdraw is actually the person that they assert to be.

So you know, we believe that it is reasonable and appropriate to do so, and this is consistent with our pre-petition security efforts, which are heightened now that we're in bankruptcy, and that we need to make absolutely certain that people that are withdrawing pursuant to a court order are the right person.

So I mean, frankly, Your Honor, the fact that a claims buyer is objecting to our security protocols is, frankly a little bit offensive. I understand that it might make it easier for them to realize on the claim that they've purchased, but from our perspective, the most important thing is to ensure the safety and security of our withdrawals, and that transfers go to the person that they're intended to go to and not somebody else. So that's why we engaged in these protocols in this way.

THE COURT: All right. Mr. Colodny, do you want to be heard on this?

MR. COLODNY: Yes, Your Honor. I can confirm that we've been working with the Debtors on the withdrawal process. One of the things that we were focused on is the first custody withdrawals, and we've had regular meetings with the Debtors and their employees to make sure those are going according to plan. I think that -- I believe Mr. Koenig gave the Court an update on that at the last hearing, and we've been very happy with the level of security and engagement of the company in doing so.

I think that that is key for everyone here, right? The whole point of this case in bankruptcy is to equitably return people's assets. And one of the key aspects of that is making sure they go to the right people. And I think that Mr. Koenig and his team have been absolutely focused on that, and I thank them for those efforts.

THE COURT: All right. Mr. Kotliar, do you want to be heard on this point?

MR. KOTLIAR: Your Honor, I would just add that I think we understand the need for security, and there's heightened security concerns in this case. I just don't want to end up in a situation looking down the line where valid claim transfers have happened, but because that doesn't plug into the Debtor's account infrastructure, it

precludes people from getting back the assets they're entitled to. And then later on it's, well, that's unclaimed distributions, and that somehow goes back to the estate. So I think we're making baby steps towards getting to the right place, but on the back end I don't want this to hold up people getting back assets that they're entitled to.

THE COURT: Well, the only thing I would say is that if issues arise, for example, because the original claimholder declines to provide the video if that's what's required, the Court is certainly able to deal with that on a one-off basis. And so Mr. Serrur, if -- you may not like as a claim buyer this additional step, I have a feeling that if it arises at all, it will happen infrequently, and the Court will be prepared to deal with it if and when it happens.

So for example, if the transferor declines to provide what's required in order for the transferee to be able to recover assets off the platform, or later in the case if there's a confirmed plan, the Court will deal with it then. I'm very concerned about the efforts that have been made through phishing or otherwise in this case, and I think that the additional precautions that have been put in place are absolutely appropriate in the circumstances of this case. Not necessarily in every case, but the history of this case so far has shown that the concerns of the Debtor and the Committee and of others are clearly

appropriate here. Mr. Serrur, you can put your hand down because I'm not going to call on you again. Is there anybody else who wishes to be heard in opposition to the settlement? All right.

I'm not going to go through -- I'm going to rule now. I'm approving the settlement. I'm not going through a recitation of the terms. I think those are all quite clear, so I'm just going to briefly talk about the standards for approval of settlements and the reason for my approval here.

So Bankruptcy Rule 9019(a) sets forth the standards on a motion by a trustee, and after notice and a hearing, the court may approve a compromise or settlement. I won't read the entire thing, the entire rule, but the standards are settlements are favored in bankruptcy and are, in fact, encouraged. In -- before approving a settlement, a court must determine that it is fair and equitable and in the best interests of the estate. See In re Drexel Burnham, 134 B.R. 493 at 496 (Bankr. S.D.N.Y. 1991).

There are numerous cases that set forth that same proposition. In the Second Circuit, the Second Circuit decision in In re Iridium Operating LLC, 478 F.3d 452 (2nd Cir. 2007) set forth seven non-exclusive factors for courts to consider in deciding whether to approve a settlement. A couple of important points I think. In passing upon a proposed settlement, the bankruptcy court does not

substitute its judgment for that of the trustee.

The bankruptcy court is not required to decide the numerous questions of law and fact raised by objectors. Here, there's only a very limited objection, and I appreciate Mr. Hermann's comments about his concerns. So rather, the Court should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.

And while approval of the settlement rests in the court's sound discretion, the Debtor's business judgment should not be ignored. And in addition, the court may give weight to the informed judgment of the Trustees or Debtor-in Possession and their counsel that a compromise is fair and equitable. Here, this proposed settlement is the result of really a protracted effort by Debtors, the Committee, Mr. Kotliar's firm, other counsel as well. And I'm really quite satisfied that this is really an arm's length settlement. It is in the best interest of the estate.

Let me just briefly talk about, you know, Iridium sets forth the seven non-exclusive factors. Factors one and two, the balance between the litigation's possibility of success and the settlement's future benefits, and the likelihood of complex and protracted litigation. I find here that this proposed settlement satisfied all of those requirements in factors one and two of the Iridium test.

Factor three is the paramount interest of Creditors. I believe that this settlement does that as well. The costs associated with any related litigation would drain the Debtors' estates and further delay Creditor recoveries, and that because custody holders have the right to opt in, no one is being forced to accept the settlement. I think that's quite important here.

I've already asked my questions about whether people who opt into the settlement are committing to vote in favor of the plan. I'm satisfied by the answers I've received there. Certainly if people don't opt into the settlement and they nevertheless vote against the plan, while they may be subject to avoidance claims if the plan administrator decides to pursue them, they're not really giving away any rights that they would otherwise have.

In any event, I've considered each of the seven factors set forth in Iridium to the extent applicable in the circumstances. To the extent that the limited objection of Mr. Frishberg and Mr. Hermann remains, the Court overrules it and approves this proposed settlement for the reasons that I've explained. If you submit the order in Word format, I'll be entered.

MR. KOENIG: Thank you, Your Honor. And again, Chris Koenig. We've had a chance to look at the settlement agreement. I don't see insider defined, so what we will do

is we will add a definition to the proposed order that we upload later today if that works for Your Honor.

THE COURT: All right. Okay. I would appreciate it if you'd do that. Okay. All right. Let's move on, on the agenda. That was the only contested matter. In the uncontested matters, we have the first omnibus claims objection for amended claims, duplicate claims, non-debtor claims, unsupported claims, and inadequately supported claims. Mr. Koenig?

MR. KOENIG: Your Honor, my colleague Ms. Jones will be taking the lead on that matter.

THE COURT: Thank you very much. All right. Ms. Jones?

MS. JONES: Good morning, Your Honor. Elizabeth Jones of Kirkland and Ellis on behalf of the Debtors. Your Honor, we filed our first omnibus claims objection at Docket Number 2103, and the Affidavit of Service notifying which Claimants were being objected to was filed at Docket Number 2111.

Your Honor, as you previously noted, we're objecting or seeking to modify five different types of claims. The first is we're seeking to disallow and expunge 83 claims that have been subsequently amended leaving those subsequently amended claims on the register. We're seeking to disallow and expunge 20 exact duplicate claims, again

leaving the second file duplicate claim on the register.

We are -- third, we're seeking to disallow and expunge three claims that were filed against non-debtor entities. All three of these claims were filed related to the Celsius Energy drink, not the Celsius Debtors. The fourth category of claims is we're seeking to modify in the order we requested 33 unsupported claims with amounts that weren't -- we're seeking to modify them to the scheduled amounts. We had one reach out before the objection deadline to a pro se Creditor who had retained counsel. They were getting up to speed, asked if we would adjourn that claim. We were happy to adjourn it to the April 8th hearing. That's Claim Number 8743.

THE COURT: Right.

MS. JONES: We noted that.

THE COURT: I think it's adjourned to April 18th, not 8th.

MS. JONES: Oh, that's correct. Sorry if I said a different date. April 18th.

THE COURT: All right.

MS. JONES: And then the fifth category is modifying 12 inaccurately supported claims also to the amounts listed on the schedule. Your Honor, we received no objections, and the only communication we received was the one request for an adjournment. Otherwise we had no

responses or nothing else to resolve. So unless Your Honor has any questions, we respectfully request entry of the order. When we submit a proposed order to chambers, we will provide a revised Schedule 4 that shows the redline removing that one claim since it will be adjourned to April 18. Otherwise, we are asking that it's entered as filed with the motion.

THE COURT: All right. Does anybody else wish to be heard? All right. No responses were filed, and no one has asked to be heard during the hearing. The Court sustains the first omnibus objection reducing, modifying, or expunging the relevant claims as set forth in the schedules in support of the motion with the exception of the one claim that is being adjourned to April 18th. Thank you very much.

MS. JONES: Thank you, Your Honor. That's all from me, and I will pass the lectern back now to my colleague Mr. Koenig.

THE COURT: Thank you very much. All right. Go ahead.

MR. KOENIG: Thank you, Your Honor. So up next are the status conferences for three more substantive claims objections. So I just wanted to provide a little bit of context. We filed these claims objections to begin the process of cleaning up our claims register. We need to do that for both voting and distribution purposes. The Debtors

had obligations to return cryptocurrency assets worth approximately $4.2 billion as of the petition date to approximately 600,000 account holders. And as of the bar date, approximately 23,000 proofs of claim were filed totaling over $78 billion in claims, plus unliquidated claims on top of that.

If those claims were allowed, that would mean that just three percent of the accountholders would have claims for over 18 times the value of the assets deposited on the Debtor's platform. That's not fair and equitable in our view given that all accountholders suffered the same harm, the loss of their cryptocurrency in their Celsius accounts.

So we're working to clean up the claims register and to do so promptly. That's important so that we can make distributions as quickly as possible upon emergence from bankruptcy and to not have to litigate all of these claims before we can distribute our assets to accountholders. We want to do that as fast as possible. So we filed these claims objections really as Bellwethers, Your Honor.

Each of these Claimants has been very active in these cases and filed a very detailed proof of claim that had many different theories of recovery. And we understand that Mr. Hermann distributed a form proof of claim for other accountholders to fill out and submit. So we think that it will be very efficient for us to proceed in this way and to

seek rulings, substantive rulings, on these three proofs of claim that were filed. And that if we are able to obtain a ruling that the claims are limited to the amount of cryptocurrency in their account, that'll speed up the claims reconciliation process for everybody else.

Now, the main theory of our objections is that the Debtors are already obligated to return the cryptocurrency in the Celsius accounts contractually. So these additional theories of recovery advanced by the Claimants are duplicative and excessive. Now, of course after filing these claims objections, the Court issued its opinion in the Series B litigation, and found that the terms of use only provide contractual relief against Celsius Network LLC. So in light of that ruling, we're just proceeding as a status conference here today. We're not seeking any substantive relief at this time while we continue to plan our path forward in light of that ruling.

As we discussed before, there's other theories that could mean that the customers have claims against assets other than LLC from substantive consolidation to an intercompany claim, but we're still deciding and continuing to review how we want to proceed. So for today, it's just a status conference. And you know, we'd propose that the substantive hearing on these claims objections be set for April 18th, which is the next omnibus hearing date.

THE COURT: Let me say first my chambers were contacted by Mr. Frishberg who indicated he was unable to appear today and requested that the conference with respect -- the status conference with respect to his claim and the objection to it be adjourned. He indicated that he'd made the request of the Debtor, and Debtor's counsel declined to agree to adjourn the hearing. Is that correct as to his claim?

MR. KOENIG: Your Honor, what we -- that's correct. What we wanted to do was to make sure that these all went forward together. If we object Mr. -- if we adjourn Mr. Frishberg's claim, it sort of doesn't make sense. These all sort of go together (indiscernible) --

THE COURT: But they're all being adjourned. None of them are being heard today.

MR. KOENIG: Correct. We wanted to have the status --

THE COURT: (Indiscernible) --

MR. KOENIG: I'm sorry, Your Honor.

THE COURT: No, and I just -- as you're aware, Mr. Frishberg has regularly appeared at these hearings, been active throughout, and I'm certainly not precluding him at a subsequent hearing from raising anything that he would otherwise raise today. I think the Debtor's counsel has been quite cooperative when requests to adjourn specific

hearings -- you know, matters have been raised. And I guess I was a little surprised that you wouldn't agreed to Mr. Frishberg's request for today.

Let me raise some questions for you, not to be resolved today, but I understand that in the three claims that you listed for the status conference today, and it certainly applies more broadly, the issues of whether earn accountholders are limited in their recovery to the amounts -- amount of coins that were deposited in their accounts obviously is an important issue. I don't have the language of the terms of use in front of me. I believe they include in effect a no consequential damages provision in it.

I'm going to need briefing on the issue of whether a no consequential damages provision in terms of use would preclude recovery of consequential or other damages on non-contract theories. So I mean, I think first the issue of the enforceability of a limitation of damages provision in a contract, but more broadly the issue of whether that limitation, even if it applies as to contract claims, could limit damages on non-contract theories.

What I've seen so far I don't think you've really fully addressed that issue. In light of my opinion limiting contract claims to earn accounts -- to the LLC Debtor, I think that question will arise more broadly with respect to any damage claims against other than LLC, whether they're

Debtors or Non-Debtors. So I just want to lay down this place marker now, Mr. Koenig, that I'm going to need briefing that addresses limitations of liability provisions, whether they apply. A, do they apply to the contract claims; and B, do they apply to non-contract claims as well? Today is not the time to explore that, but I think it will have to be.

I'm also aware generally that a new adversary proceeding was filed by Mr. (Indiscernible) represented by counsel with claims against Debtors and Non-Debtors other than LLC. And I think I assume that that picks up from the Court's ruling on that nothing in my really -- in the last written opinion that it does not -- nothing precludes claims against -- other than LLC on tort claims, for example, or other statutory claims. So those will all have to be addressed, but let me stop there. I don't know whether you have any comment or Mr. Colodny on behalf of the Committee has any comments he wants to make.

MR. KOENIG: Your Honor, again, Chris Koenig. Thank you. That's very helpful feedback, and we'll be sure to submit briefing ahead of the April 18th hearing in advance enough for the other parties to have a chance to review the briefing and submit whatever they feel is appropriate. But thank you for that guidance. It's helpful in this status conference.

THE COURT: Look, I want to be sure that when you do file something that Creditors and the Committee have an opportunity to respond to that. And so we don't -- you know, the plan I think is to go forward on April 18th, but I want to be sure. What I would ask you to do -- well, let me ask Mr. Colodny what the position of the Committee is. Does it have a position at this point?

MR. COLODNY: Your Honor, we worked with the Debtors after your opinion was issued to ensure that we would be able to do just that, to respond in light of the changed legal circumstances to make sure that if the Court's ruling and what we believe these Creditors' rights are protected. And I think that you are getting exactly what we were trying to achieve, which is an opportunity to make sure that all Creditors have an opportunity to respond to these Bellwether cases if they're going to be used to enact the rights of all Creditors.

THE COURT: So is there -- have you agreed -- did you seek to agree on a schedule? Again, I don't want to find that, you know, the day before the hearing I suddenly get bombarded with a lot of briefs. I always try to be fully prepared when we go forward with a hearing. So I would like -- I guess I would like the Committee, and if these are the three claims that are going to be -- to use your term the Bellwether, I'm particularly focused on the

issue of -- I want -- my term, not yours, I want it to be a fair fight. I want to be sure that, you know, that it isn't three pro se Creditors who are forced to address serious important complex legal issues, you know. Let me leave it at that.

What I would urge you to do is try and agree on a schedule that can be put in a stipulation and that the Court can approve. Again, I want to be sure that the Court really has -- before I rule on these -- the objections to these three claims, that there's been a full airing and briefing of the legal issues that arise. I'm sure, you know -- well, let me leave it at that. I don't know. Mr. Colodny, do you have anything you want to add?

MR. COLODNY: No, Your Honor. I would say that we need to speak with the Claimants to make sure that they're okay with the schedule. Because ultimately, this is their claims and we need to make sure that they have the opportunity as you just pointed out.

THE COURT: Well, and it's -- you know, the -- in terms of that last opinion, the Committee agreed with the Debtor that the claims resided against all Debtor and Non-Debtor entities. Obviously, that view did not carry the day, except I made crystal clear that for non-contract claims there could be -- not that there was, but there could be claims. I don't know what position the Committee's going

to take.

Certainly, the Committee, for example, I think took the position that substantive consolidation appears to be appropriate. So I think the Committee position was trying to expand not necessarily the quantum of damages recoverable, but the entities against which recovery could be had. So you know, I'm -- this is an important issue from the Court's standpoint.

MR. COLODNY: It's an important issue for us, Your Honor, and I think that you, in a footnote of your opinion, noted that there were a number of different paths that, notwithstanding the opinion, all of the value would still go to accountholders. One of those is the substantial intercompany claim, which I know you requested the Debtors to submit briefing on. Another is the substantive consolidation.

And then there are other claims towards that may be asserted by a Debtor entity by individuals. There's a number of pathways here. We had previously sought to have all of those heard together in connection with confirmation. We understand that we went forward with the contract issue, but we don't think that that contract issue is determinative. At the end of the day, we think that there are a number of different things that we need to -- or hurdles that the preferred equity need to jump and prove

before they get to a recovery, and we intend to tee those up in the near future.

THE COURT: All right. Mr. Koenig, anything you want to add at this point?

MR. KOENIG: No. Thank you, Your Honor. We'll confer with the Committee and the parties and propose a schedule and a stipulation.

THE COURT: All right. Thank you. All right. So those are the status conferences. Then there's the list of adjourned matters. I did agree to have a hearing later this week with respect to some of those. Anything you want to add? Anything else for today?

MR. KOENIG: No, Your Honor. We're all set. We'll see you on Thursday morning.

THE COURT: All right. We are adjourned. Thank you very much.

MR. KOENIG: Thank you.

MR. COLODNY: Thank you, Your Honor.

(Whereupon these proceedings were concluded)

C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, certified that the foregoing transcript is a true and accurate record of the proceedings.

Sonya Ledanski Hyde

Veritext Legal Solutions
330 Old Country Road
Suite 300
Mineola, NY 11501

Date: March 23, 2023

**&**

**&** 4:3,10,18 5:1 5:15 6:1,9,17

**0**

**05620** 7:3
**07102** 5:18

**1**

**100** 11:25 12:5 15:19 16:7,22 18:18 21:13,24
**100,000** 21:16
**10001** 6:4
**10004** 1:14
**10014** 5:11
**10022** 5:4
**1006** 5:10
**10119** 6:12
**10:03** 1:17
**11** 11:4,5 12:21
**111** 4:5
**11501** 47:23
**12** 36:22
**12151** 47:7
**12548** 6:19
**134** 32:18
**1368** 2:24
**15th** 9:5
**18** 37:5 38:9
**1846** 2:24
**18th** 36:16,19 37:14 39:25 42:21 43:4
**1958** 2:12
**1991** 32:18

**2**

**20** 35:25
**2007** 32:22
**201** 5:10
**2023** 1:16 11:7 47:25
**2090** 2:24
**21** 1:16
**2103** 2:24 35:17
**2105** 3:2
**2106** 2:16
**2107** 2:19
**2111** 35:19
**2119** 2:16,19 2:24 3:2
**2147** 2:6
**2148** 2:12 9:4
**2149** 2:13
**2176** 2:13
**22-10964** 1:3
**2223** 2:6
**2227** 2:6
**2228** 2:16
**2230** 2:7
**2234** 2:12
**2237** 2:19
**2238** 3:2
**2267** 2:16,19 2:24 3:2
**2268** 2:16,19 3:2
**2271** 10:21
**2275** 13:2
**23** 47:25
**23,000** 38:4
**23959** 2:15
**24480** 2:18
**24604** 3:1
**27.5** 11:8
**2700** 4:13
**2nd** 32:21

**3**

**30** 12:18,22
**300** 4:20 47:22
**30th** 8:24
**33** 36:7
**330** 47:21
**3335** 6:11
**36.25** 11:2

**4**

**4** 37:4
**4.2** 38:2
**452** 32:21
**478** 32:21
**493** 32:18
**496** 32:18

**5**

**502** 11:16
**5100** 4:5
**546** 10:9
**55** 6:3
**555** 4:13
**570** 5:17

**6**

**6** 12:3
**600,000** 38:3
**601** 5:3
**60606-4302** 4:6
**60654** 4:21

**7**

**72** 21:4,8,21
**72.5** 10:25 28:6
**78** 38:5
**78711-2548** 6:20

**8**

**83** 35:23
**8743** 36:13
**89** 7:2
**8th** 36:12,17

**9**

**90** 21:23
**90071** 4:14
**9019** 32:10
**94** 11:24 12:2

**a**

**aaron** 4:16 13:21
**able** 11:25 16:23 25:9 31:10,17 39:2 43:10
**above** 12:10
**absolutely** 29:14 30:16 31:22
**abstain** 15:3
**abstains** 15:17
**abstention** 15:7
**accept** 14:25 21:14 34:6
**accepting** 22:13

**account** 6:10 11:8,16 13:24 15:20 25:20 26:21,22 30:25 38:3 39:4
**accountholder** 12:21
**accountholders** 9:10,17 10:25 12:14,17 15:5 15:24 19:7 20:7,15,19 38:8,11,17,24 41:8 45:13
**accounts** 21:24 38:12 39:8 41:9,23
**accurate** 47:4
**achieve** 43:14
**acquired** 24:16
**action** 9:24 10:7,23 11:9 15:12,14 16:4 16:24 17:5 18:25 22:12,14
**actions** 15:23 16:16,21 17:2
**active** 38:20 40:22
**actually** 21:22 21:24 22:21 27:8 28:25 29:1,10
**ad** 2:11 6:10 9:7,9,12,18 10:17 11:19 12:13 19:6 20:12,16,18 21:11
**add** 14:8 22:16 22:24 30:20 35:1 44:13 46:4,12
**added** 26:20
**addition** 33:11
**additional** 8:24 14:5 29:6 31:12,21 39:8
**address** 44:3
**addressed** 13:2 41:22 42:16
**addresses** 42:3
**addressing** 13:23
**adjourn** 36:11 36:12 40:7,12 40:25
**adjourned** 8:16,23 36:16 37:5,14 40:5 40:14 46:10,15
**adjournment** 36:25
**adjournments** 8:8
**adjusted** 27:9
**administrator** 15:22,25 16:3 16:5,11,17,23 17:5 34:14
**advance** 42:22
**advanced** 39:9
**advantage** 17:17
**adversary** 9:13 42:8
**affect** 26:22 27:10
**affidavit** 35:17
**agenda** 8:3,7 9:2 35:5
**agree** 14:11 21:5 40:7 43:19 44:6 46:10
**agreed** 10:19 10:22 11:8 41:2 43:18 44:20
**agreement** 8:18 10:20 11:14 17:9 28:11 34:25
**agreements** 2:3
**ahead** 8:20 10:11 23:13,23 24:13 37:19 42:21
**airing** 44:10
**allow** 8:17,24 14:20,20
**allowed** 14:4 38:7
**allows** 12:13 18:15
**alternatively** 9:2
**amended** 2:22 8:3,7 9:2 35:7 35:23,24
**amount** 14:1 25:5 27:20,20 27:21 29:3 39:3 41:9
**amounts** 11:8 14:2 36:7,9,23 41:8
**andrew** 6:6
**angeles** 4:14
**announce** 8:18
**announced** 9:4
**answer** 13:12
**answers** 34:10
**anybody** 20:23 23:19 32:3 37:8
**anyway** 23:5
**appear** 40:3
**appeared** 23:12 40:21
**appears** 45:3
**applicable** 9:16 34:17
**applied** 28:17
**applies** 41:7,19
**apply** 17:16 42:4,4,5
**appreciate** 33:5 35:3
**approach** 14:21 16:8
**appropriate** 27:13 29:12 31:22 32:1 42:24 45:4
**approval** 32:9 32:9 33:9

**approve** 8:9 32:12,23 44:8
**approved** 11:3 11:23 12:10
**approves** 34:20
**approving** 2:9 32:6,15
**approximately** 38:2,3,4
**april** 36:12,16 36:19 37:5,14 39:25 42:21 43:4
**argue** 16:21
**argument** 10:6
**arisen** 11:15
**arises** 31:13
**arm's** 10:18 33:17
**arrived** 19:19
**aside** 15:19
**asked** 34:8 36:11 37:10
**asking** 37:6
**aspects** 30:14
**assert** 18:18 29:10
**asserted** 45:18
**assets** 9:14,21 9:23 10:2,4,23 11:1 14:21 16:7,22 26:23 30:14 31:1,6 31:17 38:1,9 38:17 39:20
**assignee** 26:8 28:16
**assignment** 26:9
**assistant** 6:16
**associated** 10:16 12:7 34:3
**assume** 15:2,3 42:11
**assuming** 27:24
**attempts** 26:5 28:23
**attorneys** 2:5 4:4,11,19 5:2,9 5:16 6:2,10,16 6:18
**august** 9:13 19:12
**austin** 6:20
**authorizing** 2:2,4
**available** 20:14
**avenue** 5:3
**avoid** 25:21
**avoidance** 34:13
**avoids** 20:1
**aware** 24:18 40:20 42:8

**b**

**b** 1:21 2:11,22 6:2 39:12 42:5
**b.r.** 32:18
**baby** 31:4
**back** 12:2 13:7 17:11 19:17 20:3 31:1,3,5,6 37:16
**balance** 15:19 33:21
**banking** 6:18
**bankr** 32:18
**bankruptcy** 1:1,12,23 6:17 10:9 11:15 17:13 24:20 26:3 29:14 30:13 32:10,14 32:25 33:2 38:16
**bar** 38:3
**based** 22:10
**basically** 22:25
**basis** 16:25 31:11
**bear** 18:8
**behalf** 13:11 13:17,18,22 23:21 35:15 42:17
**believe** 12:8 23:16 27:18 29:11 30:8 34:2 41:11 43:12
**bellwether** 43:16,25
**bellwethers** 38:19
**benefit** 8:15 15:5
**benefits** 33:22
**bernstein** 5:20
**best** 19:23 32:17 33:18
**beyond** 19:14
**bid** 8:9,12,15 8:19
**bidder** 8:10
**billion** 38:2,5
**bit** 19:20 29:19 37:22
**board** 6:18
**bombarded** 43:21
**bowling** 1:13
**box** 6:19
**briefing** 10:6 41:13 42:3,21 42:23 44:10 45:15
**briefly** 32:8 33:19
**briefs** 43:21
**bring** 11:10 15:23 16:23
**brings** 16:4
**broad** 5:17
**broadly** 41:7 41:18,24
**bryan** 6:14 19:5
**bureau** 5:16
**burks** 7:15
**burnham** 12:11 32:17
**business** 10:8 33:10

**buyer** 25:6,24 29:18 31:12
**buyers** 25:3

**c**

**c** 2:22 4:1 8:1 47:1,1
**ca** 4:14
**caceres** 7:9
**call** 32:2
**calling** 15:22
**canvass** 33:6
**careful** 28:24
**carpenter** 5:15
**carry** 44:22
**case** 1:3 4:3,10 13:22 24:15,19 26:13 28:19 30:13,22 31:18 31:20,23,23,24
**cases** 11:5 18:22 19:11 28:23 32:19 38:21 43:16
**category** 36:6 36:21
**cause** 15:14
**causes** 9:24 10:7,23 11:9 15:11 16:4,21 16:24 17:2,5 18:25
**celsius** 1:7 26:21 36:5,5 38:12 39:8,13
**certain** 2:3,21 29:15
**certainly** 23:5 27:12 31:10 34:11 40:22 41:7 45:2
**certainty** 17:2
**certified** 47:3
**chambers** 20:21 37:3 40:1
**chance** 26:15 34:24 42:22
**changed** 43:11
**changes** 8:25
**chapter** 11:4,5 12:21
**check** 17:12,14 22:6,13
**checkbox** 22:5 22:10,12
**checked** 22:10
**chicago** 4:6,21
**choose** 12:15 12:18
**chris** 8:6 27:3 34:24 42:19
**christopher** 4:24
**cir** 32:22
**circuit** 32:20 32:20
**circumstances** 15:13 24:21 31:22 34:18 43:11
**cited** 16:10
**claim** 2:15,18 3:1 23:9 24:16 24:16 25:3,8,8 25:15,24 26:3 26:8,9,20 27:8 27:19,25 28:5 28:10,16 29:3 29:20 30:24 31:12 36:1,11 36:13 37:5,13 38:4,21,23 39:2,21 40:4,8 40:12 45:14
**claimant** 27:18 27:24
**claimants** 35:18 38:20 39:9 44:15
**claimholder** 31:9
**claimholders** 26:14
**claims** 2:22,22 2:22,23,24 9:24 10:6,7,14 10:23,24 11:9 11:10,12,12,14 11:16,17 15:11 16:4,20,23 17:2,5 20:5,8 20:10 23:9 24:18 25:3 27:9,23 28:2 29:18 34:13 35:6,7,7,8,8,9 35:16,22,23,24 35:25 36:3,4,6 36:7,22 37:12 37:21,23,24 38:5,6,7,8,13 38:16,19 39:3 39:4,11,19,24 41:5,19,23,25 42:5,5,10,13 42:14,15 43:24 44:10,17,21,24 44:25 45:17
**class** 15:15 22:12,14 23:3
**classes** 23:4
**clean** 38:13
**cleaning** 37:24
**clear** 12:19 17:15,17 21:12 22:8 32:7 44:23
**clearly** 31:25
**clements** 7:13
**clerk** 23:14
**clerks** 17:15
**clients** 18:21
**close** 28:20
**coaster** 19:16
**code** 10:9 11:15 17:13
**coins** 13:24 14:2 25:23 28:25 29:6 41:9
**colleague** 35:10 37:17
**collections** 6:17
**colodny** 4:16 13:16,21,21 14:11 18:8,10

26:10 30:1,3 42:17 43:6,8 44:12,14 45:9 46:18
**color** 25:1
**come** 13:7 21:22 29:4
**comes** 22:4
**comfortable** 14:2,5
**comment** 24:23 42:17
**comments** 19:25 28:13 33:5 42:18
**committee** 2:10 4:4,11 9:1 9:7,18 10:17 13:12,18,19 19:10 20:21 26:7,15 28:20 28:21 31:25 33:15 42:17 43:2,6,23 44:20 45:2,4 46:6
**committee's** 44:25
**committing** 34:9
**communicati...** 36:24
**company** 28:19 30:11
**compared** 20:18
**complaint** 9:13
**complex** 33:23 44:4
**compromise** 32:12 33:13
**concede** 13:6
**concern** 24:9
**concerned** 22:24 23:8 31:19
**concerns** 28:17 30:22 31:24 33:5
**concluded** 46:19
**conclusion** 18:22
**confer** 46:6
**conference** 39:15,23 40:3 40:4 41:6 42:25
**conferences** 37:21 46:9
**confirm** 29:7 30:3
**confirmation** 21:14 24:2 45:20
**confirmed** 15:4 15:7 16:15 31:18
**connection** 20:8 45:20
**consensual** 18:21
**consequential** 41:12,14,15
**consider** 32:23
**considered** 34:16
**consistent** 29:12
**consolidation** 39:20 45:3,16
**contact** 28:20
**contacted** 40:2
**contested** 35:5
**context** 37:23
**continue** 16:24 39:16
**continuing** 39:21
**contract** 41:16 41:18,19,20,23 42:4,5 44:23 45:21,22
**contractual** 39:13
**contractually** 39:8
**converted** 11:5
**cooperating** 2:5 8:23
**cooperation** 2:2
**cooperative** 40:25
**cornell** 5:13 23:21,21,23,24 24:6
**correct** 16:18 17:19 21:6,25
27:16 28:7 36:18 40:7,10 40:16
**costs** 12:6 34:3
**coughed** 10:11
**counsel** 19:6 33:13,16 36:10 40:6,24 42:10
**country** 47:21
**couple** 18:12 32:24
**course** 10:8 28:21 39:10
**court** 1:1,12 8:2 9:20 10:1 10:11 13:10 14:7,12 15:1 16:5,13 17:7 17:14,22,24 18:4,7 19:2,4,8 19:23 20:21,23 22:7,15,20 23:2,11,15,18 23:23 24:4,11 26:4,7,25 27:14 28:4,9 28:12,16 29:15 30:1,9,18 31:7 31:10,13,18 32:12,16,25 33:2,6,11 34:19 35:3,12 36:14,16,20 37:8,10,18 39:11 40:1,14 40:18,20 43:1 43:18 44:7,8

44:19 46:3,8 46:15
**court's** 33:10 42:12 43:11 45:8
**courtney** 7:15
**courts** 32:22
**creditor** 7:7,9 7:11,13,15,17 7:19,21 21:3 24:15 25:4,21 26:18 34:4 36:10
**creditors** 4:4 4:12 21:12,13 23:2,3,4,6 24:19 34:2 43:2,12,15,17 44:3
**cryptocurrency** 20:3 38:1,12 39:4,7
**crystal** 44:23
**current** 2:3 9:11 12:24 20:15
**currently** 11:24
**custodial** 6:10 19:7
**custody** 2:11 9:3,7,9,9,12,15 9:18,21 10:2 10:14,17,23,24 10:24 11:10,13 11:17,19,24 12:1,4,13,13 12:17,21 13:15 13:24 14:3,4 15:2,5,20,24 16:2,6,10,13 16:22 18:14,17 19:1 20:3,5,6,8 20:14,19 21:9 21:11,18 22:3 23:9 24:8 25:1 25:17,20 26:20 27:10,20 28:10 30:6 34:5
**customers** 39:19

**d**

**d** 2:23 8:1
**damage** 41:25
**damages** 41:12 41:14,15,17,20 45:5
**daniel** 2:19
**date** 11:4,4,6 11:21 16:3,11 17:4 26:19,24 36:19 38:2,4 39:25 47:25
**day** 12:22 43:20 44:23 45:23
**days** 12:18
**deadline** 12:22 36:9
**deal** 22:20,22 27:12 31:10,14 31:18
**dealt** 20:11
**debtor** 1:9 2:22 4:19 5:2 25:18 26:14 27:4 31:25 33:12 35:7 36:3 40:6 41:23 44:21,21 44:22 45:18
**debtor's** 2:1,21 3:1 9:15 10:3 27:21 30:25 33:10 38:10 40:6,24
**debtors** 2:2,10 2:15,18 8:6,15 9:6,12,14,22 9:25 10:3,13 10:17 11:5,10 11:13 12:8,25 15:12,22 19:10 20:20 21:25 26:6 30:4,7 33:15 34:4 35:15 36:5 37:25 39:7 42:1,1,10,10 43:9 45:14
**december** 9:21
**decide** 33:2
**decided** 16:2
**decides** 16:11 34:14
**deciding** 32:23 39:21
**decision** 16:13 32:21
**declaratory** 9:14
**declined** 40:6
**declines** 31:9 31:15
**defense** 10:8
**defenses** 10:7
**defined** 17:9 34:25
**definition** 17:8 35:1
**delay** 34:4
**dennis** 6:7
**department** 5:8
**depending** 24:21 29:2
**deposit** 28:8
**deposited** 38:9 41:9
**deposits** 27:15
**dept** 7:1
**described** 19:15
**detailed** 19:12 38:21
**determinative** 45:23
**determine** 32:16
**determined** 10:1
**deutsch** 5:15
**difference** 22:22
**different** 20:18 25:16 35:21 36:19 38:22 45:11,24

**digital** 8:11 11:1
**diligence** 19:16 20:13
**disallow** 35:22 35:25 36:2
**disclosure** 24:3
**discount** 25:15
**discovery** 10:5 12:8
**discretion** 33:10
**discuss** 8:25
**discussed** 10:15 39:18
**discussions** 8:13 10:18
**dismissed** 11:5
**disputed** 23:8
**distribute** 10:3 38:17
**distributed** 26:23 38:23
**distribution** 24:25 25:1,16 25:18 37:25
**distributions** 31:3 38:15
**district** 1:2 12:12
**divided** 9:19
**division** 6:17
**doc** 2:6,12,16 2:19,24 3:2
**docket** 9:3 10:21 13:2 35:16,18
**doing** 30:11
**downs** 19:18
**drain** 34:4
**drexel** 12:11 32:17
**drink** 36:5
**drive** 4:5
**dunne** 6:7
**duplicate** 2:22 35:7,25 36:1
**duplicative** 39:10

**e**

**e** 1:21,21 2:23 4:1,1 7:13 8:1 8:1 10:9 47:1
**earlier** 14:21
**early** 14:20 15:2
**earn** 41:7,23
**easier** 29:20
**echo** 19:9,24
**ecro** 1:25
**effect** 41:12
**effective** 11:4,6 11:20 16:3,11 17:4
**efficient** 38:25
**effort** 22:19 33:15
**efforts** 19:1 20:22 26:12 29:13 30:17 31:19
**either** 15:3,7 16:3,8 17:24
**elect** 9:10
**election** 2:11 12:16 14:14,20 15:11,15,15
**electronic** 22:13
**eligible** 12:1,4
**elizabeth** 5:6 35:14
**ellis** 4:18 5:1 8:6 27:4 35:15
**embodied** 10:19
**emergence** 38:15
**emphasize** 18:13
**employees** 2:3 9:11 12:24 17:19,20,21 20:16 30:7
**enact** 43:16
**encouraged** 32:15
**energy** 36:5
**enforceability** 41:17
**engaged** 10:18 29:25
**engagement** 30:11
**ensure** 29:22 43:9
**ensuring** 29:9
**enter** 2:2 22:19
**entered** 9:19 34:22 37:6
**entire** 12:5 32:13,13
**entirely** 18:16
**entities** 36:4 44:22 45:6
**entitled** 10:25 16:22 28:25 31:2,6
**entity** 45:18
**entry** 2:1,9 37:2
**equitable** 32:16 33:14 38:10
**equitably** 30:13
**equity** 6:2 45:25
**essentially** 13:14 14:18 15:5
**estate** 9:15,22 10:3 31:3 32:17 33:18
**estates** 11:10 34:4
**event** 34:16
**everybody** 8:3 39:5
**everyone's** 20:22
**evidence** 22:18 22:21
**exact** 35:25
**exactly** 16:19 24:6 25:23 43:13

example 31:8 31:15 42:14 45:2
except 44:23
exception 37:13
excessive 39:10
excludes 12:24
excluding 9:11
exclusive 32:22 33:20
exculpations 24:7
expand 45:5
expect 8:18 27:25
expected 25:16
expecting 12:20
expense 10:16 19:25
expenses 2:5 8:22
experience 25:7
explained 34:21
explore 42:6
expunge 35:22 35:25 36:3
expunging 37:12
extent 34:17,18
eye 18:5
ezra 7:19 24:15

**f**

f 1:21,25 4:8 47:1
f.3d 32:21
fact 26:2 29:17 32:15 33:3
factor 34:1
factors 32:22 33:20,20,25 34:17
facts 15:13
fair 12:9 32:16 33:13 38:10 44:2
faith 10:18
falls 33:7
far 31:24 41:21
fast 38:18
favor 13:15 14:14 24:8 34:10
favored 32:14
february 9:5
feedback 42:20
feel 42:23
feeling 22:21 31:12
fees 2:5 12:3 21:7,9
ferguson 1:25
fifth 36:21
fight 44:2
file 8:20 28:14 36:1 43:2
filed 8:7,9,12 8:22 9:3,13 10:20 12:25 13:1 20:25 35:16,18 36:3 36:4 37:6,9,23 38:4,18,21 39:2 42:9
filing 39:10
fill 38:24
filled 26:20
final 21:5,8,15 22:1 23:7
finalize 8:17
finally 11:17
financial 7:1
find 33:23 43:20
firm 33:16
first 2:21 8:8 9:2 11:1 13:13 18:13 21:3 26:15 30:6 35:6,16,22 37:11 40:1 41:16
five 35:21
flags 29:4,4
flight 23:17
floor 7:2
flower 4:13
focus 18:22
focused 28:19 30:5,16 43:25
folks 14:20
following 10:1 16:2 17:3
follows 10:24
footnote 45:10
forced 34:6 44:3
foreclosed 16:17
foregoing 47:3
form 2:11 27:19 38:23
format 34:22
former 2:3 9:11 12:24 17:19,20
forth 32:10,19 32:22 33:20 34:17 37:12
forthcoming 12:20
forward 39:17 40:11 43:4,22 45:21
found 39:12
four 25:2
fourth 36:6
frankly 22:20 29:17,19
frishberg 2:19 13:1,9 21:1 23:12 34:19 40:2,21
frishberg's 40:12 41:3
front 8:4 41:11
full 11:25 20:4 27:16,18 28:5 28:8 44:10
fully 9:5 11:17 12:7,12 41:22 43:22

**funds** 26:19
**further** 34:4
**future** 2:4 33:22 46:2

**g**

**g** 8:1
**gallagher** 2:16 7:11
**gating** 19:3
**general** 6:16
**generally** 42:8
**getting** 18:22 20:22 21:15 31:1,4,6 36:11 43:13
**give** 24:25 26:14 33:11
**given** 10:16 38:11
**giving** 34:15
**glenn** 1:22
**go** 10:11 12:2 17:11 22:19,23 23:13,23 24:13 29:23,24 30:15 32:5 37:18 40:13 43:4,22 45:12
**goal** 21:13
**goes** 31:3
**going** 8:4 13:17 14:3 15:10 18:2 19:13 22:2 26:23 27:4 30:8 32:2 32:5,5,6,8 41:13 42:2 43:16,24 44:25
**good** 8:2,5 10:18 19:5 21:5 35:14
**grab** 18:2
**granting** 2:6 2:12
**great** 18:11
**green** 1:13
**gregory** 4:8
**ground** 18:12
**group** 2:11 6:10 9:7,9,13 9:18 10:18 11:19 12:13 19:6 20:12,17 20:18 21:12
**guess** 13:16 20:17 22:23 41:1 43:23
**guidance** 42:24

**h**

**h** 11:16
**hacking** 26:6
**hadley** 6:1
**haircut** 11:8 27:15 28:11
**half** 11:3 21:4 21:8,21
**hand** 32:1
**hands** 24:12
**happen** 15:10 15:17,20 27:5 27:7 31:13
**happened** 30:24
**happening** 16:20
**happens** 16:1 17:3 23:8 31:14
**happy** 13:5 21:20 23:13 30:10 36:12
**harbor** 10:9
**hard** 18:23
**harm** 38:11
**hear** 13:18 19:7 23:13 26:9
**heard** 18:9,13 21:21 26:14,16 30:2,19 32:3 37:9,10 40:15 45:20
**hearing** 2:1,9 2:15,18,21 3:1 8:3,16,21,23 9:5,21 19:19 20:25 30:9 32:12 36:12 37:10 39:24,25 40:7,23 42:21 43:20,22 46:10
**hearings** 40:21 41:1
**heightened** 29:13 30:22
**held** 9:15,20,25 11:13
**helpful** 42:20 42:24
**hermann** 13:1 13:9 20:25 21:2 22:7,9,17 23:7,16,19 34:19 38:23
**hermann's** 33:5
**herrmann** 3:2 7:21 21:3
**hi** 19:5
**history** 19:11 19:14 31:23
**hoc** 2:11 6:10 9:7,9,12,18 10:18 11:19 12:13 19:6 20:12,16,18 21:11
**hold** 26:2 31:5
**holder** 12:1,4 16:6,10
**holders** 6:2,10 11:13,18,24 13:15,25 14:4 15:2 16:2,14 18:14,17 19:1 20:3 24:8 34:5 38:3
**hon** 1:22
**honor** 8:5 10:10 12:6 13:4,6,21,22 14:10,10,16 15:9 16:20 17:11,21 18:2 18:10,17 19:7 19:24 20:5

21:2 22:18 23:16,21 24:14 24:17 27:3,17 28:3,7,18,22 29:17 30:3,20 34:23 35:2,10 35:14,16,20 36:23 37:1,15 37:20 38:19 40:9,19 42:19 43:8 44:14 45:10 46:5,13 46:18
**horse** 8:10
**hudson** 6:3
**hurdles** 45:25
**hyde** 3:25 47:3 47:8

**i**

**identity** 29:7
**ignored** 33:11
**ii** 2:3,12
**iii** 2:6
**ikea** 22:12
**il** 4:6,21
**imagine** 25:11
**immanuel** 3:2 7:21 21:2
**impaired** 23:3 23:6
**important** 29:21 32:24 34:7 38:14 41:10 44:4 45:7,9
**importantly** 20:1
**impression** 25:9
**improve** 8:14
**improved** 8:19
**inaccurately** 2:23 36:22
**inadequately** 35:8
**include** 27:22 29:8 41:11
**included** 10:5 25:2 27:20
**includes** 11:12 11:14,19 23:9
**including** 2:5 10:8 12:7 17:6
**indicated** 27:19,24 40:2 40:5
**indiscernible** 14:3 19:22 25:20 40:13,18 42:9
**individual** 15:12,13
**individuals** 27:7 45:18
**information** 22:11
**informed** 24:7 33:12
**informer** 20:15
**infrastructure** 30:25
**infrequently** 31:13
**initial** 12:22 17:18
**insider** 17:8 22:4,11 34:25
**insiders** 9:11 12:24 17:16,21 20:15
**instructing** 25:22
**intend** 46:1
**intended** 29:24
**intent** 17:12
**intercompany** 39:21 45:14
**interest** 20:10 33:18 34:1
**interests** 32:17
**introduction** 13:4
**involvement** 19:11
**iovine** 7:7 26:15,17,17 27:2
**iridium** 32:21 33:19,25 34:17
**issue** 10:15 11:22 13:14,20 13:23 18:20 26:7 41:10,13 41:16,18,22 44:1 45:7,9,21 45:22
**issued** 39:11 43:9
**issues** 9:20 19:3 22:5 31:8 33:6 41:7 44:4 44:11
**items** 13:2

**j**

**jason** 7:7 26:17
**jeffrey** 5:20
**jennifer** 7:5
**jeopardized** 26:13
**job** 18:11
**joint** 2:9
**jones** 5:6 7:17 35:10,13,14,15 36:15,18,21 37:15
**jr** 7:13
**judge** 1:23
**judgment** 9:14 33:1,10,12
**jump** 45:25
**justice** 5:8

**k**

**keep** 18:5
**key** 30:12,14
**kind** 20:11
**kirkland** 4:18 5:1 8:6 27:4 35:15
**know** 13:5,16 16:1,8 18:12 18:13 22:18,21 22:24 23:1 24:17,17,18,20 24:21 25:3,5,7 25:9,11,11,12 25:14,15,23,25

25:25 26:1,1,2 27:25 29:3,8 29:11 33:19 39:23 41:1 42:16 43:4,20 44:2,4,11,12 44:19,25 45:7 45:14
**koenig** 4:24 8:4 8:5,6 10:12 14:7,10,16 15:9 16:19 17:11,20,23 18:1,5,11 26:10,25 27:3 27:3,17 28:7 28:10,15,18 30:9,16 34:23 34:24 35:9,10 37:17,20 40:9 40:16,19 42:2 42:19,19 46:3 46:5,13,17
**kotliar** 6:14 18:21 19:4,5,5 19:9,24 30:18 30:20
**kotliar's** 33:16
**kwasteniet** 4:23

**l**

**language** 41:10
**lasalle** 4:20
**law** 33:3
**lawyers** 21:12
**lay** 42:1
**layla** 6:22
**lead** 35:11
**leaders** 21:11
**leave** 44:4,12
**leaving** 35:23 36:1
**leblanc** 6:6
**lectern** 13:7 37:16
**led** 20:12
**ledanski** 3:25 47:3,8
**legal** 21:7,9 43:11 44:4,11 47:20
**length** 10:18 33:17
**lengthy** 19:11
**letter** 19:13
**level** 30:10
**lexington** 5:3
**liability** 42:3
**lie** 22:11
**light** 9:23 12:6 39:14,17 41:22 43:10
**likelihood** 33:23
**likely** 22:2
**limit** 41:20
**limitation** 41:17,19
**limitations** 42:3
**limited** 21:4 33:4 34:18 39:3 41:8
**limiting** 41:22
**line** 30:23
**liquidity** 24:22
**list** 46:9
**listed** 36:23 41:6
**litigate** 38:16
**litigated** 16:9
**litigating** 10:16 12:7
**litigation** 9:6 11:20 12:12 15:22,25 16:3 16:5,11,23,24 17:4 18:20 19:17 20:13 33:23 34:3 39:12
**litigation's** 33:21
**little** 19:20 29:19 37:22 41:2
**llc** 1:7 32:21 39:13,20 41:23 41:25 42:11,14
**llp** 4:3,10,18 5:1,15 6:1,9
**loans** 11:13
**logistics** 24:25
**long** 9:6 24:20
**look** 17:25 26:21 34:24 43:1
**looking** 30:23
**los** 4:14
**loss** 38:12
**lot** 19:18 43:21
**lowest** 12:10 33:7
**luxury** 24:20

**m**

**m** 4:23 6:14
**made** 20:14 27:7 31:20 40:5 44:23
**main** 7:2 13:23 39:6
**make** 15:13 22:21 28:24 29:14,20 30:7 38:14 40:10,12 42:18 43:11,14 44:15,17
**making** 29:9 30:15 31:4
**manage** 24:16
**management** 8:11
**mandatory** 12:17
**march** 1:16 8:24 47:25
**marker** 42:2
**martin** 1:22
**marvin** 7:13
**matter** 1:5 35:5,11
**matters** 35:6 41:1 46:10
**mccloy** 6:1
**mcelroy** 5:15

**mean** 17:12 22:8 29:17 38:7 39:19 41:16
**meaning** 17:13
**means** 12:1 19:21
**measures** 29:7
**meetings** 30:6
**members** 9:8
**mentioned** 28:22
**mg** 1:3
**might've** 25:16
**milbank** 6:1
**milligan** 6:22
**mineola** 47:23
**mispronounc...** 24:12
**missed** 17:25
**misses** 12:22
**modify** 35:21 36:6,8
**modifying** 36:22 37:11
**moment** 9:12
**money** 25:23
**montplier** 7:3
**morning** 8:2,5 8:17 13:8 19:5 23:17 35:14 46:14
**motion** 2:1,9 8:9,13,16,20 8:22 9:3 10:20 12:25 32:11 37:7,13
**move** 35:4
**mulvaney** 5:15
**mutual** 20:4

**n**

**n** 4:1,20 8:1 47:1
**name** 24:13,14
**near** 46:2
**necessarily** 31:23 45:5
**necessary** 29:7
**need** 24:22 29:14 30:21 37:24 41:13 42:2 44:15,17 45:24,25
**negative** 15:8
**negotiations** 19:16,17 20:12
**network** 1:7 39:13
**nevertheless** 15:4 34:12
**new** 1:2,14 5:4 5:11 6:4,12 42:8
**newark** 5:18
**night** 8:8
**nj** 5:16,18
**non** 2:22 16:1 16:9 32:22 33:20 35:7 36:3 41:15,20 42:1,5,10 44:21,23
**note** 20:2
**noted** 8:7 35:20 36:15 45:11
**notice** 12:17 24:7 32:11
**notifying** 35:17
**notwithstand...** 45:12
**novawulf** 8:10 8:14,18
**number** 9:4 10:21 13:2 35:17,18 36:13 45:11,19,24
**numerous** 32:19 33:3
**ny** 1:14 5:4,11 6:4,12 47:23

**o**

**o** 1:21 6:19 8:1 47:1
**object** 27:25 40:11
**objected** 21:7 35:18
**objecting** 29:18 35:21
**objection** 2:15 2:18,21 3:1 12:25 13:2,3 21:1,4,20 22:4 23:25 24:23 26:18 27:9 28:14 33:4 34:18 35:7,16 36:9 37:11 40:5
**objections** 8:12 13:8 36:24 37:22,23 38:19 39:6,11,24 44:9
**objectors** 33:3
**obligated** 20:8 20:9 39:7
**obligation** 14:14
**obligations** 38:1
**obtain** 17:2 39:2
**obviously** 24:9 41:10 44:22
**occur** 11:6 12:8
**offensive** 29:19
**offer** 12:20 20:14,19
**offering** 17:1
**office** 23:22
**official** 4:4,11
**offset** 11:12
**oh** 10:12 22:9 36:18
**okay** 17:7,22 18:4 19:4,7 23:11,15,18 24:11 35:3,4 44:16
**old** 47:21
**omnibus** 2:21 9:5 35:6,16 37:11 39:25

**once** 11:23
**open** 9:9
**opening** 27:5 27:11
**operating** 32:21
**opinion** 39:11 41:22 42:13 43:9 44:20 45:10,12
**opportunity** 12:23 15:23 18:19 43:3,14 43:15 44:18
**opposition** 23:20 32:3
**opt** 14:13,17 15:2 16:14 34:6,9,11
**option** 14:20 17:1
**order** 2:1,9 8:25 10:15 11:25 14:15 29:7,16 31:16 34:21 35:1 36:7 37:3,3
**ordinary** 10:8
**original** 24:19 25:4,21 31:8
**overall** 21:17
**overrules** 34:19

**p**

**p** 4:1,1 6:19 8:1
**paid** 21:7,10 28:5,8
**paramount** 34:1
**part** 8:19 14:21 14:22 22:13 27:23 28:11,23 29:4,5
**participate** 9:10 12:14,19 12:23 14:24 15:18 20:7
**participating** 10:24 11:18 16:2,10
**participation** 12:16 14:1
**particular** 24:21
**particularly** 24:19 43:25
**parties** 10:4,15 10:22 13:7 14:13,23 42:22 46:6
**partnership** 24:16
**party** 15:10,10 15:14,15,17 29:8
**pass** 37:16
**passing** 32:24
**past** 2:4
**path** 39:16
**paths** 45:11
**pathways** 45:19
**pay** 14:4
**payment** 14:15
**penn** 6:11
**people** 22:3,5,9 22:25 26:19 28:24 29:1,15 30:15 31:1,6 34:9,11
**people's** 30:14
**percent** 10:13 11:1,2,21,24 12:1,2,3,5 14:6 15:19 16:7,22 18:18 21:4,8 21:13,21,24,25 28:6 38:8
**period** 14:14 15:3,21 16:6
**person** 16:25 16:25 29:9,10 29:16,23
**perspective** 29:21
**pesce** 4:8
**petition** 26:19 26:24 27:6,12 27:20 28:8 29:13 38:2
**phase** 9:20 10:1,5,5,10,12 10:17 11:18 12:7 14:21,22
**phases** 9:20
**phishing** 26:5 26:12 28:22 31:20
**phone** 18:2
**picks** 42:11
**piece** 28:1
**place** 29:2 31:5 31:22 42:2
**plain** 21:5
**plan** 8:10 11:4 11:6,20 12:21 14:15,19,24,25 15:4,4,6,7,10 15:16,18,21 16:3,10,14,16 17:4 20:9,10 21:14,15,17 22:1,25 23:3 24:2,4,8 30:8 31:18 34:10,12 34:13 39:16 43:4
**platform** 21:18 21:19 22:3 27:8 28:25 29:6 31:17 38:10
**plaza** 6:11
**pleadings** 19:12,15
**plug** 30:25
**plus** 38:5
**pocket** 2:4
**point** 12:10 13:6,23 14:8 26:10 30:13,19 33:7 43:7 46:4
**pointed** 18:17 44:18
**points** 18:12 32:24

**portion** 18:14 20:3 28:5
**position** 26:2 43:6,7 44:25 45:3,4
**possession** 33:13
**possibility** 33:21
**possible** 21:14 38:15,18
**post** 27:6,11,20 28:8
**potential** 8:25 9:23 10:6 11:9 11:12
**potentially** 8:14
**pre** 29:12
**precautions** 31:21
**preclude** 16:14 16:15 41:15
**precluded** 17:17
**precludes** 31:1 42:13
**precluding** 40:22
**prefer** 22:19
**preference** 10:7 11:12,16 15:23 16:16 21:15,17 22:2
**preferences** 9:24 16:4 17:6
**preferential** 20:16
**preferred** 6:2 45:25
**prepared** 31:14 43:22
**present** 17:18 17:20
**presents** 18:24
**pretty** 23:10
**previously** 35:20 45:19
**principal** 9:4
**pro** 7:7,9,11,13 7:15,17,19,21 21:3 26:17 36:10 44:3
**problem** 21:9
**procedure** 28:17
**procedures** 29:2
**proceed** 8:7 38:25 39:22
**proceeded** 10:4
**proceeding** 39:14 42:9
**proceedings** 46:19 47:4
**process** 24:18 25:2 27:5,11 27:23 28:2 29:5 30:5 37:24 39:5
**professionals** 24:17
**promptly** 9:16 38:14
**proof** 2:15,18 3:1 27:19 38:21,23
**proofs** 38:4 39:1
**property** 9:15 9:21 10:2
**propose** 39:23 46:6
**proposed** 8:10 8:25 23:20,25 32:25 33:14,24 34:20 35:1 37:3
**proposition** 32:20
**protected** 43:13
**protections** 8:9 8:13,15,19
**protocols** 28:21 29:18,25
**protracted** 33:15,23
**prove** 45:25
**provide** 31:9 31:16 37:4,22 39:13
**provided** 14:19
**provides** 20:4
**provision** 41:12,14,17
**provisions** 42:3
**purchased** 29:21
**pure** 25:1
**purporting** 26:8
**purposes** 17:8 37:25
**pursuant** 11:15 27:22 29:15
**pursue** 34:14
**pursues** 17:5
**put** 13:12 24:9 29:2 31:21 32:1 44:7
**puts** 18:20

**q**

**quantum** 45:5
**question** 14:12 15:1 17:7 26:18 41:24
**questions** 13:5 13:10,13 18:7 20:6 33:3 34:8 37:2 41:4
**quickly** 38:15
**quite** 32:7 33:16 34:7 40:25

**r**

**r** 1:21 4:1 8:1 47:1
**raise** 40:24 41:4
**raised** 13:3,8 22:1 24:12

28:17 33:3 41:1
**raising** 40:23
**range** 12:10 33:7
**rather** 13:15 15:15 18:15 20:4 28:5 33:6
**reach** 36:9
**reaching** 19:2
**read** 32:13
**realize** 29:20
**really** 19:15 26:8 33:15,16 33:17 34:14 38:19 41:21 42:12 44:8
**reason** 26:4 32:9
**reasonable** 12:9 14:1 18:25 29:11
**reasonableness** 12:11 33:8
**reasons** 26:11 34:20
**rebecca** 2:16 7:11
**recap** 9:12
**receive** 12:17 13:25 14:15 18:14
**received** 34:11 36:23,24
**recitation** 32:7
**reconciliation** 27:23 28:2
39:5
**record** 20:2 24:10 25:4,12 25:22 47:4
**recover** 31:17
**recoverable** 45:6
**recoveries** 34:5
**recovering** 16:15,18
**recovery** 18:15 38:22 39:9 41:8,15 45:6 46:1
**red** 29:4
**redline** 37:4
**reducing** 37:11
**reflected** 8:8
**register** 35:24 36:1 37:24 38:13
**regular** 30:6
**regularly** 40:21
**regulation** 7:1
**reimburse** 8:22
**reimbursement** 2:4
**reiterate** 21:3
**related** 2:6,12 24:24 25:1 34:3 36:4
**relating** 10:23
**release** 14:5 20:5
**releases** 24:7
**relevant** 37:12
**relief** 2:6,12 39:13,16
**remaining** 12:3
**remains** 34:19
**remarks** 17:18
**reminded** 25:12,13,25
**removing** 37:4
**repeat** 19:13
**repeated** 26:12
**reply** 8:19 13:1
**represented** 42:9
**request** 25:17 36:25 37:2 40:6 41:3
**requested** 36:7 40:3 45:14
**requesting** 25:5
**requests** 40:25
**require** 14:23
**required** 12:11 25:2 31:10,16 33:2
**requirement** 26:11
**requirements** 33:25
**reserve** 10:13 24:2,4
**resided** 44:21
**resolution** 13:13,19 14:9 18:21
**resolve** 11:17 11:18 37:1
**resolved** 13:14 41:5
**resolves** 9:6 11:21 12:12 16:5
**resolving** 19:2
**respect** 10:6 11:10 13:13,19 16:1 18:18 20:5,10 24:2,6 40:3,4 41:24 46:11
**respectfully** 37:2
**respond** 13:8 27:1 28:13 43:3,10,15
**responses** 37:1 37:9
**rests** 33:9
**result** 16:9 19:2 33:14
**resulted** 10:13
**retain** 9:23
**retained** 36:10
**retread** 18:12
**return** 30:14 38:1 39:7
**returned** 9:16 27:16,18,22
**review** 39:22 42:23
**revised** 8:18 37:4

**ride** 19:16
**right** 13:10 14:7,12,16 16:19,19 17:23 18:8 20:24 22:15 23:11,18 23:19 24:5,5 26:25 27:11,17 28:3,9,12 29:1 29:16 30:1,12 30:15,18 31:4 32:4 34:5 35:3 35:4,12 36:14 36:20 37:8,9 37:18 46:3,8,8 46:15
**rights** 18:18 24:2 34:15 43:12,17
**risk** 10:16 12:6
**road** 47:21
**roland** 7:17
**roller** 19:16
**rood** 7:5
**ross** 4:23
**rule** 32:5,10,13 44:9
**ruling** 39:3,14 39:17 42:12 43:12
**rulings** 39:1,1
**running** 9:6

**s**

**s** 4:1 8:1
**s.d.n.y.** 32:18
**safe** 10:9
**safety** 29:22
**santos** 7:9
**satisfied** 28:1 33:17,24 34:10
**satisfy** 13:24
**scamming** 28:23
**scenes** 19:15
**schedule** 36:23 37:4 43:19 44:7,16 46:7
**scheduled** 36:8
**schedules** 27:21 37:12
**scheduling** 9:19
**se** 7:7,9,11,13 7:15,17,19,21 21:3 26:17 36:10 44:3
**second** 11:3 14:15,22 21:6 32:20,20 36:1
**section** 10:9 11:15
**securities** 5:16 6:18
**security** 26:13 28:19,21 29:5 29:6,13,18,22 30:10,21,22
**see** 16:8 17:3,8 17:14,15,25 18:7 23:14 32:17 33:6 34:25 46:14
**seek** 39:1 43:19
**seeking** 2:1 9:14 35:21,22 35:24 36:2,6,8 39:15
**seems** 28:13
**seen** 41:21
**segal** 6:9,9 19:6,6
**sell** 25:8,14
**sellers** 25:8
**send** 21:20
**sense** 40:13
**sent** 26:19,23
**separately** 20:11
**series** 6:2 39:12
**serious** 44:3
**serrur** 7:19 24:12,14,15 26:4 31:11 32:1
**serrur's** 28:13
**service** 35:17
**set** 15:19 32:19 32:22 34:17 37:12 39:24 46:13
**sets** 32:10 33:20
**settle** 10:22 17:1
**settled** 11:11
**settlement** 2:10 9:3,4,5,8,10 10:19,20 11:2 11:11,18,19,23 12:9,12,14,16 12:19,20,23 13:25 14:13,18 14:24 15:6,11 15:18 17:9,9 17:16 18:11,15 18:16,25 19:3 19:12,20,23 20:1,1,7,14,22 20:24 21:6,8 21:15 22:12 23:20 24:1,24 24:24 25:18 27:10,22 28:11 32:4,6,12,15 32:23,25 33:7 33:9,14,17,24 34:2,6,9,12,20 34:24
**settlement's** 33:22
**settlements** 32:9,14
**settling** 16:20
**seven** 32:22 33:20 34:16
**shara** 5:13 23:21
**short** 10:22
**shortfall** 10:15 11:21 13:14,20 13:23 14:9
**shown** 31:24
**shows** 37:4
**signature** 47:7

**simple** 21:5 22:5
**simply** 12:5
**situation** 25:10 25:13,13,14 26:1 30:23
**six** 10:13 11:21 14:5
**slot** 12:5
**solely** 13:14
**solutions** 47:20
**somebody** 18:2 29:24
**sonya** 3:25 47:3,8
**sooner** 18:15 20:4
**sorry** 10:10,12 19:24 36:18 40:19
**sort** 16:8 22:11 40:12,13
**sought** 45:19
**sound** 33:10
**south** 4:5,13
**southern** 1:2
**speak** 13:17 20:24 23:20 24:13 44:15
**specific** 25:5 40:25
**specifically** 25:22
**speed** 36:11 39:4
**split** 13:15
**sponsor** 8:10
**stage** 23:5
**stages** 11:1
**stakeholders** 8:16
**stalking** 8:9
**standards** 32:8 32:11,14
**standpoint** 28:4 45:8
**standstill** 11:20
**state** 6:18
**states** 1:1,12 5:8 9:1 23:22 23:24 24:1
**status** 37:21 39:14,23 40:4 40:17 41:6 42:25 46:9
**statutory** 42:15
**steadman** 7:15
**step** 31:12
**steps** 31:4
**stipulation** 9:19 44:7 46:7
**stop** 42:16
**street** 4:13 5:10,17 7:2
**stronger** 15:14
**structured** 14:17
**subject** 16:16 27:15 28:11 34:13
**submit** 34:21 37:3 38:24 42:21,23 45:15
**subsequent** 40:23
**subsequently** 35:23,24
**substantial** 45:13
**substantive** 37:21 39:1,15 39:20,24 45:3 45:15
**substitute** 33:1
**success** 33:22
**successful** 11:16
**successor** 15:21
**suddenly** 43:20
**suffered** 38:11
**sufficient** 14:4
**suggesting** 22:5
**suite** 4:5,13 5:10 6:11 47:22
**summarizing** 18:11
**support** 8:20 19:3,13 20:24 21:4,8 37:13
**supported** 2:23 21:21 35:8 36:22
**sure** 13:11 18:1 18:10 22:9 28:24 30:7,15 40:10 42:20 43:1,5,11,14 44:2,8,11,15 44:17
**surprised** 41:2
**sustains** 37:11

**t**

**t** 47:1,1
**take** 13:5 22:11 45:1
**talk** 32:8 33:19
**talked** 17:18 20:13
**talking** 27:19
**team** 30:16
**tee** 46:1
**tell** 18:3 25:7
**term** 43:25 44:1
**terms** 8:14,17 8:19 22:18 32:7 39:12 41:11,14 44:20
**test** 33:25
**texas** 6:20
**thank** 8:2 14:7 18:5 19:1,8,9 20:20,23 21:2 23:18,24 24:10 24:11 27:2 28:12 30:17 34:23 35:12 37:14,15,18,20 42:20,24 46:5 46:8,15,17,18

**thanks** 24:14
**theories** 38:22 39:9,18 41:16 41:20
**theory** 39:6
**thing** 22:17,24 23:7 26:6 29:22 31:7 32:13
**things** 20:2 30:5 45:24
**think** 18:10,24 19:18,20,21 20:1 23:11,12 26:4,6 30:8,12 30:15,21 31:4 31:21 32:7,24 34:7 36:16 38:24 40:24 41:16,21,24 42:6,11 43:4 43:13 45:2,4 45:10,22,23
**third** 7:2 36:2
**three** 34:1 36:3 36:4 37:21 38:8 39:1 41:5 43:24 44:3,10
**threshold** 21:16,17,17,19 22:2
**thursday** 8:17 8:21,24 46:14
**time** 8:24 9:23 10:4,16 12:7 15:21 16:6,7 19:25 20:21 21:22 27:13 39:16 42:6
**times** 38:9
**today** 9:2 20:22 23:12 28:3 35:2 39:15,22 40:3 40:15,24 41:3 41:5,6 42:6 46:12
**today's** 11:11
**together** 25:20 40:11,13 45:20
**togut** 6:9 19:6
**tomorrow** 8:20
**took** 45:3
**top** 38:6
**tormented** 26:1
**tort** 42:14
**total** 10:25
**totaling** 38:5
**towards** 31:4 45:17
**trading** 24:18
**transaction** 12:3
**transcribed** 3:25
**transcript** 47:4
**transfer** 24:15
**transferee** 31:16
**transferees** 25:19
**transferor** 31:15
**transferred** 25:3,5,24
**transfers** 27:6 27:7 29:23 30:24
**traumatic** 25:10
**treatment** 20:16,18
**tried** 14:19
**true** 23:1 47:4
**trust** 16:17
**trustee** 5:9 9:1 23:22,25 24:1 32:11 33:1
**trustees** 33:12
**try** 43:21 44:6
**trying** 29:9 43:14 45:5
**turn** 20:25
**tweed** 6:1
**two** 8:8 9:20 10:5,5,17 11:1 11:19 12:7 14:21 24:11 33:21,25
**tying** 21:16
**types** 35:21

**u**

**u.s.** 1:23 5:9
**ultimately** 10:19 25:2,2 44:16
**unable** 40:2
**unambiguous** 25:19
**uncertainty** 19:25
**unclaimed** 31:2
**uncontested** 35:6
**under** 10:9,14 11:11,24 13:25 14:19,24 15:10 15:15 25:9,18
**understand** 22:7 27:14 29:19 30:21 38:22 41:5 45:21
**understanding** 26:11
**understood** 28:18
**undertaken** 29:5
**unhappy** 19:21
**unimpaired** 22:25 23:2,4
**united** 1:1,12 5:8 9:1 23:22 23:24 24:1
**unliquidated** 38:5
**unmute** 24:13
**unsecured** 4:4 4:11
**unsupported** 2:23 35:8 36:7
**update** 30:9
**upload** 35:2

**ups** 19:18
**urge** 44:6
**use** 20:17 39:12 41:11,14 43:24
**used** 43:16
**useful** 24:18
**users** 14:3
**usually** 19:23

**v**

**valid** 26:9 30:24
**value** 38:9 45:12
**varick** 5:10
**variety** 28:22
**veritext** 47:20
**vermont** 7:1
**video** 25:4,12 25:22 26:5 29:9 31:9
**view** 38:11 44:22
**voluntary** 18:16
**vote** 14:14,22 14:23,25 15:3 20:8,9 23:2,3,6 34:9,12
**votes** 15:8,17 24:8
**voting** 20:6 22:25 37:25
**vt** 7:3

**w**

**wacker** 4:5
**wait** 16:8 17:3 24:20
**waiver** 11:14
**walk** 25:10
**wallets** 10:2
**want** 12:18 13:16 14:8 17:15 18:9 20:2 21:3 22:15,19,23 24:13 25:17,17 26:15 27:1 30:1,18,23 31:5 38:18 39:22 42:1 43:1,5,19 44:1 44:1,2,8,13 46:4,11
**wanted** 18:13 18:14 24:9 37:22 40:10,16
**wants** 26:7 42:18
**way** 13:5 14:17 25:21 27:9 29:25 38:25
**ways** 8:14
**we've** 8:13 14:19 18:23 19:19 28:20,23 29:2 30:4,6,10 34:24
**weaker** 15:14
**week** 8:13 46:11
**weight** 33:12
**went** 40:11 45:21
**white** 4:3,10 13:22
**wish** 18:18 37:8
**wishes** 20:24 23:19 24:1 32:3
**withdraw** 10:14,25 11:24 11:25 12:2,5 22:10 28:24 29:10
**withdrawable** 11:3
**withdrawal** 10:14 11:25 30:4
**withdrawals** 21:18,18 27:6 27:12 29:23 30:6
**withdrawing** 29:5,8,15
**withdrawn** 11:2 12:2,4 27:8
**withdraws** 27:24
**withdrew** 22:3
**witness** 2:2
**witnesses** 2:5 8:23
**wonder** 21:22
**word** 20:17 34:21
**words** 21:8
**work** 25:18,20
**worked** 43:8
**working** 18:23 30:4 38:13
**works** 20:6 35:2
**worth** 38:1
**would've** 14:18
**wrapped** 15:6
**written** 42:13

**x**

**x** 1:4,10

**y**

**yards** 6:3
**yeah** 18:1 22:17 23:7
**yellow** 29:4
**yesterday** 10:21
**york** 1:2,14 5:4 5:11 6:4,12