| | |
|---|---|
| Joshua A. Sussberg, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:     (212) 446-4900 | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:     (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**DEBTORS' STATEMENT IN FURTHER SUPPORT**
**OF DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING AND APPROVING CERTAIN BID PROTECTIONS FOR**
**THE PROPOSED PLAN SPONSOR AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this statement (this "Statement") in further support of the *Debtors' Motion for Entry of an Order*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*(I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2151] (the "Motion").[2]

## Statement

1. As set forth in the Motion and Reply, the Debtors, in their business judgment, and in consultation with the Committee, believe it is appropriate to provide NovaWulf with the Bid Protections in consideration for its commitment to continue to expend significant time and resources in furtherance of the NewCo transaction. From the start of these chapter 11 cases, the Debtors knew that any restructuring transaction would need to be fully regulatorily compliant, particularly given the scrutiny of the Debtors' prepetition business operations and the current regulatory environment regarding cryptocurrency-related businesses. In selecting NovaWulf as proposed plan sponsor and entering into the Plan Sponsor Agreement, the Debtors, in consultation with the Committee, carefully considered whether NovaWulf and its partners had the credentials and wherewithal to establish a fully regulatorily-compliant NewCo on the Effective Date. The Debtors did not make the decision to select NovaWulf as the Plan Sponsor, and to propose up to $18 million in bid protections lightly—the Debtors conducted significant diligence and analysis on NovaWulf and its partners, as well as the proposed NewCo operating model, to evaluate whether the proposed plan would be reasonably likely to result in a fully regulatorily-compliant NewCo. Following this analysis, the Debtors, the Committee, and NovaWulf gained confidence in their joint capacity to establish NewCo, including the satisfaction of all current regulatory

---

[2] On March 23, 2023 the United States Bankruptcy Court for the Southern District of New York (the "Court") held a hearing on the Motion. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Plan Sponsor Agreement, the Plan Term Sheet, or the *Reply in Support of Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2297] (the "Reply"), as applicable.

2

requirements, entered into the Plan Sponsor Agreement to pursue the transactions set forth therein, and sought approval of the Bid Protections.

2.      Since entering into the Plan Sponsor Agreement, the Debtors, the Committee, and NovaWulf have continued their diligence and analysis of NewCo—the progress of which has further validated their confidence in establishing a fully regulatorily-compliant NewCo. Importantly, as discussed in more detail below, NewCo's business segments do not raise the same concerns that have recently caused regulators to scrutinize certain other cryptocurrency-related businesses. Upon emergence and for the foreseeable future, NewCo intends to have no go-forward retail-facing business—NewCo will only interact with retail customers with respect to the structured settlements or the administration of their Claims under the Plan—and will provide no trading or market-making services. NewCo may, over time, provide services to United States Qualified Purchasers and/or Qualified Institutional Buyers (and potentially offshore investors) but will only do so after appropriate regulatory evaluation.

3.      To be clear, there could never be regulatory certainty (or anything approaching certainty) given the state of the current regulatory landscape for cryptocurrency companies. But the Debtors cannot sit by idly. The Debtors, the Committee, and NovaWulf have conducted significant diligence and analysis, and have determined that it is reasonably likely that the proposed NewCo will be in full regulatory compliance given the current regulatory environment. To continue pursuing the NewCo transaction, however, NovaWulf has reasonably insisted on the Bid Protections, a key component of the Plan Sponsor Agreement, given the significant time and resources that NovaWulf is and will continue expending and the risk that NovaWulf is assuming. The Debtors remain steadfast in their belief that the Bid Protections are necessary for the parties

to continue pursuing this value-maximizing transaction and are in the best interests of the Debtors' creditors and stakeholders.

4.      While the Debtors are confident that NewCo will be regulatorily compliant, to provide additional comfort to the Court, the Debtors and NovaWulf are prepared to delay approval of $5 million of the proposed Expense Reimbursement until the Disclosure Statement has been approved by the Court.  This would limit the Debtors' exposure regarding the Expense Reimbursement until the Plan process has advanced materially toward confirmation and all stakeholders and regulators will have had the opportunity to review and comment on the Disclosure Statement.

5.      For the reasons set forth herein, the Debtors have confidence that NewCo will satisfy all applicable regulatory requirements.  To the extent that the NewCo transaction cannot be consummated for regulatory reasons (or any other reason), however, the Plan contemplates a pivot to an Orderly Wind Down under chapter 11.  In any event, the Debtors believe that the NewCo transaction will deliver significantly more value to the Debtors' account holders than an Orderly Wind Down (or liquidation under chapter 7 of the Bankruptcy Code), and thus, taken together with the regulatorily compliant nature of the proposed NewCo,  pursuing the Restructuring Transactions and  providing the Bid Protections is a sound exercise of the Debtors' business judgment.

I.      **NovaWulf is Prepared to Manage a Fully Regulatorily-Compliant NewCo on the Effective Date.**

6.      As described in the Plan Sponsor Agreement and Plan Term Sheet, under the proposed transaction, NovaWulf will serve as the manager of NewCo, the entity that will effectuate the Debtors' customer-owned reorganization.  NovaWulf has spent thousands of hours and has made significant progress working with the Debtors, the Committee, and its partners, including Figure Technologies, Inc. (collectively with its subsidiaries, "Figure") and Anchorage Digital

4

Bank, National Association ("Anchorage"), to confirm the feasibility of the NewCo operating model and, in particular, that NewCo's business will be operated in compliance with all applicable regulatory requirements. This progress is a testament to NovaWulf and its management team, its conservative approach to regulatory compliance, risk, and reporting infrastructure, and its established industry partnerships. **First**, NovaWulf is a deeply experienced registered investment advisor with the Securities and Exchange Commission (the "SEC") (CRD #: 321277; SEC #: 801-126435), and NovaWulf's management team has decades of experience in finance, restructuring, and technology, having managed tens of billions of dollars in assets.[3] NovaWulf's co-founders and managing partners, Jason New and Michael Abbate, founded NovaWulf because they recognized the immense value they could create by leveraging their restructuring experience and success building and managing best-in-class financial platforms and risk-management systems to the cryptocurrency field. More importantly, NovaWulf's co-founders and managing partners recognized a tremendous need in the cryptocurrency market for an experienced registered investment advisor that placed regulation and compliance at the forefront—this vision forms the basis for NovaWulf, the architecture of NewCo, and is shared by NovaWulf's chosen partners for the NewCo transaction.

7.      As a threshold matter, NewCo is distinct from NovaWulf—NewCo is the new entity (or entities)[4] that will be established for the purposes of effectuating the Restructuring Transactions and will be wholly owned by the Debtors' customers. NovaWulf will serve as a third-party manager for the purposes of operating NewCo solely for the benefit of the Debtors'

---

[3]   NovaWulf will not be serving as an investment advisor to NewCo or NewCo's customers or shareholders. Rather, NewCo will be an operating business, not an investment business or financial advisor. Additional information on NovaWulf's co-founders and managing partners, Jason New and Michael Abbate, is attached to this Statement as **Exhibit A**.

[4]   A *pro forma* organizational structure for NewCo is attached to this Statement as **Exhibit B**.

customers, who will be NewCo's equity owners. NovaWulf will contribute $45 million in cash to NewCo. In return for its commitment and service as Manager of NewCo, NovaWulf will be paid the Management Fee. In its capacity as Manager of NewCo, NovaWulf will be subject to the oversight of the New Board, of which five of seven members will be appointed by the Committee.

8.    *Second*, NewCo will issue its common equity in the form of Equity Share Tokens or "ESTs." NovaWulf has partnered with Figure Securities, Inc., a member of the Financial Industry Regulatory Authority ("FINRA") and an SEC-registered broker-dealer (CRD #: 307093; SEC #: 8-70478) to support the secondary trading of ESTs on an SEC-regulated Alternative Trading System ("ATS") using the Provenance Blockchain. For cryptocurrency and fiat currency payments and transfers, NewCo will leverage NovaWulf's partnerships with Figure Payments Corporation, which has money transmitter licenses ("MTLs") in 49 states,[5] and Anchorage, which is exempt from the requirement for MTLs and can make transfers in all 50 states. Moreover, while the Debtors intend to provide distributions of Liquid Cryptocurrency to account holders on the Effective Date, to the extent that there are any regulatory barriers to such distributions, the Debtors could make distributions in fiat currency.

9.    *Third*, NovaWulf is finalizing a partnership with Anchorage to serve as the custodian for the NewCo Assets. Anchorage is federally chartered by the Office of the Comptroller of the Currency (Charter #: 25243) and is the only bank federally licensed to custody cryptocurrency assets. In addition to assets generated by NewCo through staking and mining operations, Anchorage will provide custody services for all cryptocurrency-related assets transferred from the Debtors to NewCo upon emergence, including the NewCo Capitalization

---

[5] Figure Payments Corporation (NMLS #: 2033432). A list of Figure's licenses is maintained at https://figure.com/licenses (last visited on March 28, 2023).

Amount, the Retail Loan Settlement Cryptocurrency Assets, the Institutional Loan Portfolio, and the Debtors' private equity and venture capital investments. Anchorage will also serve as the custodian for ESTs for holders that require a qualified custodian.[6]

10. Given NovaWulf's partnerships with Figure and Anchorage, the Debtors are confident that NewCo will be fully regulatorily compliant and that the consummation of the Restructuring Transactions will result in the distribution of significantly more value to the Debtors' creditors than an Orderly Wind Down or a liquidation under chapter 7 of the Bankruptcy Code.

**II.    NewCo Is Being Established for the Purpose of Maximizing the Value of the Debtors' Assets and Its Business Segments Do Not Raise Regulatory Concerns.**

11. The value that NewCo can return to account holders is substantially higher than a sale of the Debtors' assets, their piecemeal liquidation, or any other actionable alternative. NewCo plans to maximize the value of the Debtors' illiquid assets, and NewCo's business segments upon emergence will include: (a) operating the Mining business ("Mining"); (b) direct staking of NewCo's ETH ("Staking");[7] (c) maximizing and realizing the value of the Debtors' private equity and venture capital investments; (d) servicing the structured settlements with current retail borrowers; and (e) managing the Debtors' institutional loan portfolios. The Debtors and NovaWulf believe that these illiquid assets can deliver significant value to NewCo's shareholders—the Debtors' current customers—over time, especially compared to a liquidation of such assets. While NovaWulf foresees the possibility of developing future businesses within

---

[6]   The related integration mechanics with respect to the ATS are under consideration.

[7]   To be clear, if the proposed restructuring transaction is approved by this Court and consummated, NewCo will only stake ETH that it owns as a result of that transaction. Based upon the information available to the Debtors and the analysis conducted to date, the Debtors do not believe that NewCo directly staking ETH that it owns qualifies as "staking as a service," which regulators have recently asserted is subject to securities laws and regulations when offered to retail customers. *See* Securities & Exchange Comm'n, *Kraken to Discontinue Unregistered Offer and Sale of Crypto Asset Staking-As-A-Service Program and Pay $30 Million to Settle SEC Charges*, https://www.sec.gov/news/press-release/2023-25 (last visited March 27, 2023).

NewCo for the benefit of EST holders, those businesses will not be in place on the Effective Date and would only be launched after a complete assessment of the risks and after receiving all necessary regulatory approvals.

12.  Furthermore, despite the uncertain regulatory environment and significant concerns regarding cryptocurrency-related businesses, NewCo's business segments do not approach the fault lines regulators have identified as being potentially problematic. *First*, upon emergence and for the foreseeable future, NewCo intends to have no go-forward retail-facing business—NewCo will only interact with retail customers with respect to the structured settlements or the administration of their Claims under the Plan—and will provide no trading or market-making services. NewCo may, over time, provide services to United States Qualified Purchasers and/or Qualified Institutional Buyers (and potentially offshore investors) but will only do so after appropriate regulatory evaluation. *Second*, the only tokens issued by NewCo will be the EST and Management Share Tokens (or "MSTs"), which will represent the common equity interests and preferred equity interests, respectively, in NewCo. NewCo will provide no trading or market-making services (and Figure will facilitate the secondary trading of the ESTs and MSTs), thereby obviating concerns around marketing or selling unregistered securities. As discussed below, NewCo will be a public reporting company, providing holders of ESTs and MSTs with financial and other disclosures on an ongoing basis. *Third*, NewCo will only sell or make distributions in Bitcoin and ETH (or fiat currency) with respect to its (a) go-forward operations (*i.e.*, Mining and Staking) and (b) administration of the structured settlements under the Plan, thus minimizing the

8

risk of inadvertently engaging in the sale of unregistered securities.[8] **Fourth**, the Debtors are not aware of any specific licensing requirement with respect to NewCo's Mining operations. **Last**, to the extent that NewCo can realize value through the sale of certain legacy assets that could be considered an unregistered security, NewCo will *only* sell or market these assets to qualified institutional buyers and/or offshore investors.

13. The ESTs and MSTs will be issued to creditors under the Plan pursuant to the registration exemption under section 1145 of the Bankruptcy Code. NewCo is committed to filing a Registration Statement on Form 10 pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act") and, as a result, will be an SEC-registered public reporting company, which will provide transparency and public company disclosure for the benefit of investors. Going forward, NewCo will file all periodic reports and disclosures (*e.g.*, Forms 10-K and 10-Q) pursuant to reporting requirements under the Exchange Act. The NovaWulf team has extensive public company experience and is currently working with the Debtors to establish the technological, regulatory, and reporting infrastructure for NewCo.

### III. The Debtors, the Committee, and NovaWulf Are Working Closely With State and Federal Regulators.

14. Since filing the Plan Sponsor Agreement, the Debtors have held numerous telephone conferences with the Committee and various regulators to discuss the Restructuring Transactions, address any concerns, and provide any required diligence. The Debtors have also solicited and responded to dozens of questions from the various regulators on all aspects of the Plan including: (a) NewCo's structure and business segments; (b) the ESTs and MSTs;

---

[8] The Debtors intend to rebalance all of their coin holdings into Bitcoin and Ether ("ETH"). The SEC has currently taken the position that Bitcoin and ETH, the native token of the Ethereum blockchain, are not securities. *See* William Hinman, Director, Division of Corporation Finance, *Digital Asset Transactions: When Howey Met Gary (Plastic), Remarks at the Yahoo Finance All Markets Summit: Crypto*, available at https://www.sec.gov/news/speech/speech-hinman-061418 (June 14, 2018).

9

(c) NovaWulf's credentials and partners; and (d) NewCo's reporting capabilities.  The Debtors will continue to collaborate with state and federal regulators in the coming months as the parties work toward confirmation of the Plan and the Effective Date.  Importantly, the Debtors, the Committee, and NovaWulf share the same philosophy—feedback from the regulators now allows for meaningful iteration of the Plan, if necessary, thereby creating the best odds of success.

15. In the coming days, the Debtors will file their chapter 11 plan of reorganization and look forward to receiving any additional feedback from state and federal regulators.  The Debtors, the Committee, and NovaWulf plan to utilize the weeks ahead to address any concerns and make any appropriate adjustments well in advance of the Confirmation Hearing.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated:  March 28, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:            joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:            patrick.nash@kirkland.com<br>                        ross.kwasteniet@kirkland.com<br>                        chris.koenig@kirkland.com<br>                        dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

# Exhibit A

**NovaWulf Management Team Overview**

# NovaWulf Principals

**Jason New**
Co-Founder
Managing Partner

Jason New is Co-Founder and Managing Partner of NovaWulf and oversees the firm's portfolio construction, research, legal and regulatory review, deal origination, and execution. Prior to founding NovaWulf, Mr. New was the Chief Executive Officer of Onex Credit Partners, a $23 billion alternative credit manager. Prior to joining Onex, Mr. New spent 15 years at Blackstone where he was a Senior Managing Director and Co-Head of Distressed and Special Situation Investing for GSO Capital Partners ("GSO"). Mr. New was an original partner of GSO and a member of the GSO Investment Committee. Mr. New was the portfolio manager of several GSO funds. Mr. New is currently on the board of Kodak and TeraWulf Inc. Before joining GSO in 2005, Mr. New was a senior member of the Distressed Group at Credit Suisse. Mr. New started his career as an attorney with Sidley Austin. Mr. New holds a B.A., magna cum laude, from Allegheny College and a J.D. from Duke University.

**Michael Abbate**
Co-Founder
Managing Partner

Michael Abbate is Co-Founder and Managing Partner of NovaWulf and oversees the firm's portfolio construction, technology, risk, and trading operations. Prior to founding NovaWulf, Mr. Abbate spent 17 years at King Street Capital Management, in both NY and London, where he was a Partner. He sat on King Street's US Investment, Risk, and Brokerage Committees and was responsible for overseeing US trading operations. Mr. Abbate began his career at Morgan Stanley as part of the Global Technology Group within investment banking, advising technology companies on both corporate finance and M&A. Mr. Abbate holds a degree from Dartmouth College in Computer and Engineering Sciences with a minor in Economics.

# Exhibit B

**NewCo Organizational Structure**

# Summary of NewCo Org Structure



NewCo will be a new company with <u>100% of common equity held by Celsius creditors</u> with a scaled presence in Bitcoin mining and Ethereum staking, along with legacy asset portfolios to be monetized

NovaWulf will serve as the external manager of NewCo (e.g., outsourced C-suite) pursuant to a management agreement; The Plan does not provide for NovaWulf to own any of NewCo's common equity or assets

**Celsius Creditors**

100% ownership*

**NewCo Corp.** ← $45mm capital injection — **NovaWulf** *NewCo External Manager & RIA*
→ Management & incentive fees

**100% ownership** (indirectly through a chain of wholly-owned subsidiaries)

| Mining | Staking & Settlements | Legacy Illiquid Positions | Future Regulatory-Compliant Institutional Businesses |
|---|---|---|---|
| **Segment Description**: Bitcoin mining operations with over 12 EH/s deployable | Staking of NewCo owned ETH + ETH backing the retail loan settlement | Maximize value of legacy institutional loan and PE/VC portfolios – e.g. EFH loan, Core Scientific convertible note | |
| **Revenue Model**: Collect block rewards (mined BTC) and provide ancillary services to the power grid | Earn staking yield on ETH (~5%); Interest paid on settlement assets (~10% blended rate) | Harvest value from legacy investments | |

\* This figure does not account for certain preferred shares issued to NovaWulf pursuant to the Plan Sponsor Agreement and Management Agreement.