Hearing Date: **April 18, 2023, at 10:00 a.m. (prevailing Eastern Time)**
Objection Deadline: **April 11, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON JOINT MOTION FOR
ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT
BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE
WITHHOLD AD HOC GROUP AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Joint Motion for Entry of an Order
(I) Approving the Settlement by and Among the Debtors, the Committee, and the Withhold Ad Hoc
Group and (II) Granting Related Relief* (the "Motion") will be held on **April 18, 2023, at
10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief
United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius
Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks
Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8
USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors'
service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Hearing (i.e., on April 17, 2023)**.

PLEASE TAKE FURTHER NOTICE that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on April 18, 2023 must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on April 18, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius*

2

*Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov; and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief,* [Docket No. 1181] (the "Case Management Order") by **April 11, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: March 28, 2023

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:             joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:             patrick.nash@kirkland.com
                        ross.kwasteniet@kirkland.com
                        chris.koenig@kirkland.com
                        dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date: April 18, 2023 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: April 11, 2023 at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**JOINT MOTION FOR ENTRY OF**
**AN ORDER (I) APPROVING THE SETTLEMENT**
**BY AND AMONG THE DEBTORS, THE COMMITTEE, AND**
**THE WITHHOLD AD HOC GROUP AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Celsius"), the Official Committee of Unsecured Creditors (the "Committee"), and the Ad Hoc Group of Withhold Account Holders (the "Withhold Ad Hoc Group," and together with the Debtors and the Committee, the "Parties") respectfully state the following in support of this joint motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Preliminary Statement**[2]

1.      As the Debtors work towards filing their chapter 11 plan (the "Plan") with NovaWulf Digital Management as the proposed plan sponsor, building consensus among stakeholders is critical.  Now, after six months of litigation and following the settlement with the Custody Ad Hoc Group, the Debtors have reached agreement with the Withhold Ad Hoc Group and the Committee on a settlement that (i) fully resolves the disputes between the Parties, (ii) fully resolves all disputes set forth in the Scheduling Order, and (iii) secures the support of another important group of account holders for the Plan on the terms set forth in the Settlement Agreement.

2.      At this time, the Settlement will only be offered to members of the Withhold Ad Hoc Group and provides for each Settling Withhold Account Holder to receive, within 30 days of the entry of the Settlement Order, (a) an in-kind distribution equal to 15 percent of the value, as of the Petition Date, of such holder's Withhold Distribution Claim,[3] **and** (b) the treatment of such holder's remaining 85 percent of Withhold Distribution Claim as an Earn Claim[4] under the Plan. In return, the Parties will settle all causes of action held by (x) the Debtors against such Settling Withhold Account Holders, including preference avoidance actions, and (y) such Settling Withhold Account Holders against the Debtors, including seeking relief from the automatic stay,

---

[2]    Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them later in the Motion, as applicable.

[3]    A "Withhold Distribution Claim," as such term is defined in the Settlement Agreement, means an Allowed Withhold Claim **minus** any Ineligible Withhold Assets.  An "Allowed Withhold Claim" means any allowed Withhold Claim held by the Settling Withhold Account Holders, as identified in the signature pages to the Settlement Agreement, against Celsius.  A "Withhold Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, arising from transfers of cryptocurrency made in states in which the Debtors did not offer the Custody Program, which transfers were associated with balances in Withhold Accounts.

[4]    An "Earn Claim" means any account holder Claim, as defined in section 101(5) of the Bankruptcy Code, arising out of or related to the Earn Program.

turnover, or the conversion of such holder's Withhold Claim to an Earn Claim on the terms set forth in this Settlement, both only as related to such holder's Withhold Claim.

3.    In addition, all Withhold Account Holders who are not members of the Withhold Ad Hoc Group, or members of the Withhold Ad Hoc Group not participating in the Settlement, will have the opportunity to vote their Withhold Claims under the Plan, and to receive the treatment provided by this Settlement if the class of Withhold Claims votes to accept the Plan. If the class of Withhold Claims votes to reject the Plan, then 100 percent of each Non-Settling Withhold Account Holder's Withhold Distribution Claim will receive the same treatment as an Earn Claim under the Plan.

4.    The Settlement is the result of good-faith, hard-fought negotiations between the Debtors, the Committee, the Withhold Ad Hoc Group, and their respective advisors. The Settlement will only be offered to members of the Withhold Ad Hoc Group at this time.[5] Given that the Court has yet to determine whether the majority of Withhold Assets are property of the Debtors' estates, this Settlement provides certainty and finality not only to the Debtors, who are working to file their Plan, but also for a number of Withhold Account Holders, who will be able to withdraw a portion of their Withhold Assets prior to the effective date of the Plan if they choose to participate in the Settlement.

5.    The Settlement is fair, equitable, and a carefully negotiated consensual solution to one of the Debtors' most important open legal issues. Participation in the Settlement is entirely

---

[5]    Members of the Withhold Ad Hoc Group have declared, under penalty of perjury, that they are "non-insider customer[s] of Celsius." *See Ad Hoc Group of Withhold Account Holders' Phase I Brief Pursuant to the Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1289], Exhibit A-1 to Exhibit A-12. To the extent any current and former employees and insiders of the Debtors (the term "insider" shall have the meaning ascribed to it in section 101(31) of the Bankruptcy Code) are Withhold Account Holders, they are not eligible to participate in this Settlement.

optional—for those that "opt-in" to the Settlement, it results in a final resolution of the Withhold

Issues on mutually beneficial grounds.  Every member of the Withhold Ad Hoc Group will have

the opportunity to review the Settlement and independently determine whether to participate, and

Withhold Account Holders who are not members of the Withhold Ad Hoc Group will have the

opportunity to obtain the same benefits of the Settlement under the Plan.

6.      For the reasons set forth below, the Parties request that the Court approve the

Settlement.

### Relief Requested

7.      The Parties seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Settlement Order"):  (a) approving the settlement (the "Settlement") as embodied

in the settlement agreement attached to the Order as Exhibit 1 (the "Settlement Agreement"); by

and among the Parties, and (b) granting related relief.

### Jurisdiction and Venue

8.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court

entering a final order in connection with this Motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory bases for the relief requested herein are sections 105(a) and 363 of

title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

11.     Prior to July 13, 2022 (the "Petition Date"), members of the Withhold Ad Hoc Group—as well as certain individuals and entities—incurred balances associated with Celsius' "Withhold" accounts (the "Withhold Accounts," and holders of Withhold Accounts, the "Withhold Account Holders") by (i) transferring certain cryptocurrency assets to Celsius' platform that were not eligible for any given service and not supported on the platform (the "Ineligible Withhold Assets"), or (ii) making transfers of cryptocurrency assets from Celsius' "Earn" program (the "Earn Program") or "Borrow" program (the "Borrow Program") in states in which Celsius did not offer the "Custody" program (the "Custody Program," and such cryptocurrency, the "Transferred Withhold Assets," and together with the Ineligible Withhold Assets, the "Withhold Assets").[6]

12.     Since the start of these chapter 11 cases, the Debtors, the Committee, and the Withhold Ad Hoc Group have been focused on the unique and complicated issues associated with the Withhold Assets. *First*, on September 1, 2022, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 670] (the "Withdrawal Motion"), seeking the Court's authorization to return to Withhold Account Holders the Ineligible Withhold Assets that the Debtors believed were not property of the Debtors' estates and not subject to the Debtors' potential preference avoidance or setoff actions, among other relief. Withdrawal Mot. ¶¶ 4, 5, 10.

---

[6]     *See Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, with Respect to Certain Phase I Issues Pursuant to the Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1192] (the "Blonstein Declaration") ¶¶ 5–7 (explaining the origin and functions of Withhold Accounts).

13.    ***Second***, following extensive discussions between the Parties regarding the rights

to, and return of, Withhold Assets, on September 7, 2022, the Withhold Ad Hoc Group filed the

*Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay* [Docket

No. 737] (the "Withhold Lift Stay Motion"), seeking relief from the automatic stay with respect to

the Withhold Accounts and an order from the Bankruptcy Court to enable members of the

Withhold Ad Hoc Group to withdraw Withhold Assets from their Withhold Accounts.  Withhold

Lift Stay Mot. at 1.

14.    Given the overlapping issues between the Withdrawal Motion and the Withhold

Lift Stay Motion, the Debtors, the Withhold Ad Hoc Group, the Ad Hoc Group of Custodial

Account Holders (the "Custody Ad Hoc Group"),[7] and the Committee negotiated a scheduling

order to resolve the remaining legal issues.  On October 13, 2022, the Court approved the *Joint*

*Stipulation and Agreed Scheduling Order By and Among the Debtors, the Committee, and the Ad*

*Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1044] (the "Scheduling

Order") whereby the Parties and the Custody Ad Hoc Group would brief certain issues related to

the withdrawals of assets in the Custody Program and Withhold Assets in two phases.  Scheduling

Order ¶¶ 5–9.  In Phase I (as defined in the Scheduling Order), the Parties briefed the following

issues related to Withhold Accounts (the "Withhold Issues"):  (a) whether Withhold Assets are

property of the Debtors' estates, including whether Celsius' Terms of Use are unambiguous on the

---

[7]    On August 31, 2022, the Custody Ad Hoc Group commenced an adversary proceeding captioned *Ad Hoc Group*
*of Custodial Account Holders v. Celsius Network LLC, et. al.*, Case No. 22-10964, Adv. No. 22-01142 (MG)
(Bankr. S.D.N.Y. Aug. 31, 2022), seeking a declaratory judgment that assets in the Custody Program are not
property of the Debtors' estates, and that the Debtors should return all such assets to account holders under the
Custody Program as promptly as possible. Complaint for Declaratory Judgment [Adv. Pro. Docket No. 1] ¶¶ 60–
62.  On March 21, 2023, the Court approved the settlement by and among the Debtors, the Committee, and the
Custody Ad Hoc Group (the "Custody Settlement") that was offered to all account holders under the Custody
Program (the Custody account holders who participate in the Custody Settlement, the "Settling Custody Account
Holders").  *See Order (I) Approving (A) the Settlement by and Among the Debtors, the Committee, and the*
*Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* [Docket No. 2291].

issue of ownership of Withhold Assets, and (b) if Withhold Assets are not property of the Debtors' estates, whether the Debtors should nonetheless be allowed to continue to hold Withhold Assets, and maintain the status quo, with respect to individuals and/or accounts where the Debtors have potentially viable claims, including, without limitation, preference claims. *Id.* ¶ 5.

15.     On December 7, 2022, the Court held a hearing (the "December 7 Hearing") on the Withhold Issues. The Court did not decide whether Withhold Assets are property of the estates, but indicated a "strong preference" for the Withhold Ad Hoc Group to "actively proceed with" Phase II (as defined in the Scheduling Order). Dec. 7 Hr'g Tr. at 188:5–10. The Withhold Ad Hoc Group also indicated that it was "prepared to push forward" with Phase II. *Id.* at 199:23–200:2. In addition, the Court directed the Debtors and the Withhold Ad Hoc Group to meet and confer with respect to reserving enough cryptocurrency assets in the Aggregator Wallet (as defined in the Blonstein Declaration) to satisfy the Debtors' obligations in connection with the Withhold Accounts. *Id.* at 198:22–199:3.

16.     On December 20, 2022, the Court entered the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767] (the "Withdrawal Order"), (a) finding that Ineligible Withhold Assets were not property of the Debtors' estates, (b) directing the Parties to meet and confer to determine which digital assets on the Debtors' platform qualify as Ineligible Withhold Assets, and (c) granting the Withdrawal Motion in part to authorize the Debtors to open withdrawals for Ineligible Withhold Assets.

Withdrawal Order ¶¶ 1–2.  Following entry of the Withdrawal Order, the Parties began preparing for Phase II.[8]

17.    On January 31, 2023, the Debtors filed the *Notice of Schedule of Custody Users Entitled to Withdraw Certain Assets* [Docket No. 1958] (the "<u>Withdrawal Notice</u>"), noting that the Debtors are in the process of preparing a list and distribution schedule related to the Ineligible Withhold Assets.  Withdrawal Notice at 2.

18.    Shortly after the December 7 Hearing, while simultaneously negotiating the Withdrawal Order and preparing for Phase II, the Parties also began discussions on a potential settlement regarding the Phase II issues and the disposition of Transferred Withhold Assets.  On or around March 28, 2023, after three months of extensive good faith and arm's-length negotiations between the Parties and their respective advisors, the Parties reached an agreement.[9] The Settlement was finalized on March 28, 2023, and the Settlement Agreement is attached to the Order as <u>Exhibit 1</u>.

---

[8]    In Phase II, the Parties would each select, based on the relevant transaction history provided by the Debtors, an agreed-upon number of would-be defendants, whose transfers shall be subject to a motion by the Withhold Ad Hoc Group (separately or jointly with the Custody Ad Hoc Group) for a declaratory judgment on potential preference defenses with respect to such defendants, including the safe harbor under section 546 of the Bankruptcy Code, the ordinary course of business defense under section 547(c)(2)(A) of the Bankruptcy Code, and the ordinary business terms defense under section 547(c)(2)(B) of the Bankruptcy Code.  Scheduling Order ¶ 10.

[9]    Given the agreement in principle, the Withhold Ad Hoc Group withdrew its objections [Docket Nos. 2008, 2157] to the Debtors' *Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1940].  *See* Mar. 8 Hr'g Tr. at 24:21–25:1, 29:12–14.

### The Settlement[10]

19.     The Settlement will only be offered to members of the Withhold Ad Hoc Group. To participate in the settlement, members of the Withhold Ad Hoc Group will need to sign the Settlement Agreement before the entry of the Settlement Order.

20.     Under the Settlement, members of the Withhold Ad Hoc Group who elect in to the Settlement before the entry of the Settlement Order (the "Settling Withhold Account Holders") will each receive an in-kind distribution, in the cryptocurrency associated with his or her balance in the Withhold Account, of 15 percent of the dollar value of his or her Withhold Distribution Claim as of the Petition Date (the "Withhold Settlement Payment").  The Withhold Settlement Payment will be calculated by (a) converting the value of the Withhold Distribution Claim into a U.S. dollar amount according to the prices of any cryptocurrency that make up the Withhold Distribution Claim on the Petition Date as reflected in the Conversion Table,[11] (b) calculating what the value of 15 percent of that U.S. dollar amount equals, and (c) converting the value of 15 percent of that U.S. dollar amount into cryptocurrency based on the prices of such cryptocurrency on the date the Settlement Order is entered (the "Conversion Procedure").

21.     For example, if a member of the Withhold Ad Hoc Group that signs the Settlement Agreement has two Bitcoins in her Withhold Account on the Petition Date worth approximately $39,762 in the aggregate based on the Conversion Table,[12] and the hypothetical price of one

---

[10]     Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Settlement Agreement.  The following summary of the Settlement is provided for illustrative purpose only and is qualified in its entirety by reference to the Settlement Agreement.  In the event of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls in all respects.  Further, this summary shall not be used to construe or interpret the terms of the Settlement Agreement or intent of the parties thereto.

[11]     "Conversion Table" means Exhibit A attached to the *Notice of Filing of Cryptocurrency Conversion Rates* [Docket No. 1420].

[12]     Per the Conversion Table, the price of one Bitcoin as of 8:10 p.m. prevailing Eastern Time on the Petition Date was $19881.00134.

Bitcoin is $25,000 on the date the Settlement Order is entered, then she will receive approximately 0.238572 Bitcoin [13] as her Withhold Settlement Payment within 30 days of the entry of the Settlement Order.

22.    The Withhold Settlement Payment will be distributed to Settling Withhold Account Holders as soon as practicable within thirty days of the entry of the Settlement Order.  In addition, the Debtors will release each Settling Withhold Account Holders from all claims and causes of action, including preference avoidance actions, associated with such holder's Withhold Assets.  In exchange for receiving the Withhold Settlement Payment and the releases, each Settling Withhold Account Holder agrees that the remaining 85 percent of the dollar value of his or her Withhold Claim will be converted to an allowed Earn Claim and receive the treatment provided to all Earn Claims under the Plan, and that the Withhold Lift Stay Motion will be withdrawn with prejudice. In other words, Settling Withhold Account Holders will not have Withhold Claims under the Plan.

23.    The key terms of the Settlement are as follows:

| **SETTLEMENT TERMS** | |
|---|---|
| **Settlement Summary** | The Settlement constitutes the full and final satisfaction of Allowed Withhold Claims with respect to each Settling Withhold Account Holder.<br><br>Each Settling Withhold Account Holder shall receive a distribution comprising:<br><br>• Within 30 calendar days of the entry of the Settlement Order, the right to withdraw from the Debtors' platform the Withhold Settlement Payment, *i.e.* 15 percent of the value of such Settling Withhold Account Holder's Withhold Distribution Claim in an in-kind distribution in the cryptocurrency associated with such balance, calculated in accordance with the Conversion Procedure; ***plus***<br><br>• Upon entry of the Settlement Order, a release of all avoidance actions that the Debtors' estates may assert against any such Settling Withhold |

---

[13]    (2 * 19881.00134 * 0.15)∕25000, or [(Bitcoins in the Withhold Account on the Petition Date multiplied by price of Bitcoin in the Conversion Table) multiplied by 15 percent] divided by hypothetical price of Bitcoin on the date the Settlement Order was entered.

| **SETTLEMENT TERMS** | |
|---|---|
| | Account Holder on account of such Holder's Withhold Distribution Claim and not any other such avoidance actions.<br><br>Upon entry of the Settlement Order, the remaining 85 percent of the value of such Settling Withhold Account Holder's Withhold Distribution Claim shall be converted to an allowed Earn Claim and such Settling Withhold Account Holder shall no longer have a Withhold Claim.[14]<br><br>Nothing in the Settlement Agreement precludes any Withhold Account Holders from withdrawing any Ineligible Withhold Assets from Celsius' platform as permitted by the Withdrawal Order, regardless of whether such Withhold Account Holders are members of the Withhold Ad Hoc Group, or sign the Settlement Agreement. |
| **Treatment of Non-Settling Withhold Account Holders** | The Plan shall provide that all Holders of Allowed Withhold Claims that are either (i) not members of the Withhold Ad Hoc Group or (ii) members of the Withhold Ad Hoc Group that do not elect to participate in the Settlement (the "Non-Settling Withhold Account Holders") shall receive the following treatment in full and final satisfaction, compromise, settlement, and release of and in exchange for each such Holder's Allowed Withhold Claim:<br><br>• In the event that the class of Allowed Withhold Claims votes to accept the Plan, each Non-Settling Withhold Account Holder shall receive the Withhold Settlement Payment, calculated in accordance with the Conversion Procedure, **and** the remaining 85 percent of the value of such Holder's Withhold Distribution Claim shall be provided the same treatment as an Earn Claim under the Plan; or<br><br>• In the event that the class of Allowed Withhold Claims votes to reject the Plan, 100 percent of the value of each Non-Settling Withhold Account Holder's Withhold Distribution Claim shall be provided the same treatment as an Earn Claim under the Plan.<br><br>For the avoidance of any doubt, Non-Settling Withhold Account Holders shall not be permitted to become Settling Withhold Account Holders unless they are a member of the Withhold Ad Hoc Group and elect to participate in the Settlement prior to the entry of the Settlement Order. |
| **Release & Exculpation Provisions** | Upon entry of the Settlement Order, the Debtors and the Debtors' estates shall release all avoidance claims such entities may have against the Settling Withhold Account Holders, and the Settling Withhold Account Holders shall agree not to pursue any litigation, including seeking relief from the automatic stay, turnover, other claims or causes of action, or the recharacterization of such holder's |

---

[14]    For the avoidance of doubt, any such Holder's converted Earn Claim shall receive the same treatment as all other Earn Claims under the Plan.

11

| **SETTLEMENT TERMS** | |
|---|---|
| | Withhold Claim to an Earn Claim on the terms set forth in this Settlement, all only as related to any such holder's Withhold Claims.

The Settlement includes mutual releases as further explained in the "Release & Exculpation" paragraph of the Settlement Agreement. |
| **Minimum Distributions** | No holders of Withhold Distribution Claims that total, in the aggregate, less than $10.00 shall be entitled to a distribution under the Settlement, except as otherwise provided under the Plan. |
| **Undeliverable Distributions** | Any distribution authorized by the Settlement Order that is an Unclaimed Distribution (as will be defined in the Plan) or otherwise remains undeliverable for a period of one year after the first attempt to deliver such distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code, except as otherwise provided in the Plan. |
| **Fees and Expenses** | The Debtors will not object to or otherwise oppose the Withhold Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Troutman Pepper Hamilton Sanders LLP, as counsel for the Withhold Ad Hoc Group, in connection with the chapter 11 cases. |

24.     The Debtors have determined, in the exercise of their business judgment, that entry into the Settlement is in the best interest of their estates and all stakeholders and avoids the delay and costs of potentially protracted litigation regarding the Withhold Issues.  The Settlement was negotiated at arm's length and in good faith among the Debtors, the Committee, and the Withhold Ad Hoc Group and their respective advisors and provides clarity and certainty to the Debtors' stakeholders with respect to Withhold Account Holders' recoveries in these chapter 11 cases.

**Election Process and Distribution Procedures**

25.     *Election Process*.  The Settlement will only be offered to members of the Withhold Ad Hoc Group.  To participate in the settlement, members of the Withhold Ad Hoc Group will need to sign the Settlement Agreement before entry of the Settlement Order.

26.     This Settlement will only be binding on Settling Withhold Account Holders, *i.e.*, members of Withhold Ad Hoc Group who sign the Settlement Agreement before the entry of

the Settlement Order.  For the avoidance of any doubt, this Settlement represents the full and final satisfaction of Settling Withhold Account Holders' Allowed Withhold Claims, and such holders will not be deemed holders of Withhold Claims under the Plan.

27.    In comparison, Non-Settling Withhold Account Holders shall be deemed holders of Withhold Claims under the Plan and have the opportunity to vote their Withhold Claims thereunder.  If the class of Withhold Claims votes to accept the Plan, then each Non-Settling Withhold Account Holder shall receive the same treatment as provided in this Settlement:  (i) the Withhold Settlement Payment, *i.e.*, an in-kind distribution, in cryptocurrency associated with the balance in such holder's Withhold Account, of 15 percent of the dollar value of such holder's Withhold Distribution Claim as of the Petition Date, calculated in accordance with the Conversion Procedure; and (ii) the conversion of the remaining 85 percent of the dollar value of such holder's Withhold Distribution Claim as of the Petition Date to an Earn Claim and the same treatment provided to all Earn Claims under the Plan.  If, however, the class of Withhold Claims votes to reject the Plan, then 100 percent of each Non-Settling Withhold Account Holder's Withhold Distribution Claim will receive the same treatment as an Earn Claim under the Plan.[15]

28.    ***Distribution Procedures***.  The Withhold Settlement Payments shall be made in-kind and the Debtors shall be permitted to make such payments using any combination of digital assets currently held in the Aggregator Wallets (as defined in the Blonstein Declaration) in amounts sufficient to satisfy such in-kind distributions.  In the event there are insufficient in-kind digital assets to satisfy the Withhold Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax efficient.  Within thirty (30) calendar days

---

[15]    For the avoidance of doubt, the treatment of Withhold Claims under the Plan will be set forth in the Plan and may differ slightly from the description in this Motion.  In the event of any inconsistency between this Motion and the Plan, the Plan controls in all respects.

of the entry of the Settlement Order, the Debtors shall notify Settling Withhold Account Holders through the Debtors' mobile application (the "Celsius App") and by email of the amount and type of digital assets that such holder will receive.  Each Settling Withhold Account Holder shall be required to provide the Debtors with an external wallet address through the Celsius App and comply with any KYC requirements prior to receiving the Withhold Settlement Payment.

29.     Unlike the Custody Settlement, there will not be an additional election period for Withhold Account Holders to elect into the Settlement after entry of the Settlement Order.  Given that the Debtors anticipate commencing the plan solicitation process approximately 30 days after the hearing on this Motion,[16] it would not be administratively feasible to have a subsequent election period.  Moreover, the treatment proposed by the Settlement will be available to all Withhold Account Holders if the class of Withhold Claims votes to accept the Plan, such that no Withhold Account Holder will be excluded from the opportunity to receive the benefits of the Settlement.

## **Basis for Relief**

**I.     The Settlement Represents a Favorable Resolution of the Withhold Issues and Reflect the Debtors' Sound Business Judgment.**

30.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  A settlement under Bankruptcy Rule 9019 need not result in the best possible outcome for the debtors, but must not "fall below the lowest point in the range of reasonableness."  *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 595 (Bankr. S.D.N.Y. 1991).  In determining the range of reasonableness, the bankruptcy

---

[16]     *See Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2151] ¶ 24, "Material Terms of Plan Sponsor Agreement - Milestones" (providing that "by no later than May 10, 2023," the Court "shall have entered" an order approving the Debtors' disclosure statement and allowing solicitation of the Plan to commence).

court need not decide issues of law and fact raised by the settlement. *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In other words, the court does not need to conduct a "mini-trial" of the underlying facts and merits; it needs only to evaluate those facts that are necessary to allow it to assess the settlement and to make an independent judgment about the settlement. *See In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) ("The standard does not require that the settlement be the best the debtor could have obtained nor does it require the court to conduct a mini-trial of the questions of law and fact.").

31.    Rather, the court must be "apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640-41 (Bankr. S.D.N.Y. 2012). In conducting this assessment, "a court may rely on the opinions of the debtor, the parties to the settlement, and professionals in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement." *Id.* at 641.

32.    Ultimately, the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Sotomayor, J.) ("Although a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim."); *Drexel Burnham*, 134 B.R. at 505; *see also Abeles v. Infotechnology (In re Infotechnology)*, 1995 U.S. App. LEXIS 39883, at *4–5 (2d Cir. Nov. 9, 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor).

33.    A court should exercise its discretion in favor of a settlement wherever possible, as settlements are generally favored in bankruptcy. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140,

226 (Bankr. S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in

bankruptcy and, in fact, encouraged."); *see also In re Residential Cap., LLC*, 497 B.R. 720, 749

(Bankr. S.D.N.Y. 2013) (Glenn, J.) ("The decision to approve or deny a particular settlement

involving a bankruptcy estate lies within the discretion of the bankruptcy court.  A court may

exercise its discretion in light of the general public policy favoring settlements.") (internal citation

and quotation marks omitted); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–117

(2d Cir. 2005) (noting the strong judicial and public policy in favor of settlements)).[17]

34.    In determining whether to approve a settlement as fair and equitable and in the best

interests of the Debtors' estates under Bankruptcy Rule 9019, courts in the Second Circuit consider

what is often referred to as the "*Iridium*" factors:    (a) the balance between the litigation's

possibility of success and the settlement's future benefits; (b) the likelihood of complex and

protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount

interest of the creditors; (d) whether other parties in interest affirmatively support the proposed

settlement; (e) the nature and breadth of releases to be obtained by officers and directors;

(f) whether the competency and experience of counsel support the settlement; and (g) the extent to

which the settlement is the product of arm's-length bargaining.  *See Motorola, Inc. v. Official*

*Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007);

*see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere*

*Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

---

[17]    Further, under section 105(a) of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or
judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Authorizing the
Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019 as well as the
Bankruptcy Code's predilection for compromise.    Thus, to the extent necessary, section 105(a) relief is
appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy
Code.

35.     The Debtors' entry into the Settlement is a sound exercise of their business judgment, represents a fair and equitable compromise between the Parties, falls well within the range of reasonableness, and satisfies each of the *Iridium* factors.  More specifically, with respect to the ***first*** and ***second*** *Iridium* factors, litigating the Withhold Issues would consume significant estate resources at this critical juncture.  For example, the Parties have already spent more than six months on the Withhold Issues without getting to Phase II, and the Court has yet to decide whether Transferred Withhold Assets are property of the Debtors' estates.  In contrast, the Settlement resolves the status of the Withhold Issues in a consensual manner and provides certainty to the Debtors' creditors, without the need for further litigation.  Time is of the essence in these chapter 11 cases, and it is crucial that the Debtors avoid the costs and delays associated with litigation.

36.     With respect to the ***third*** *Iridium* factor, entry into the Settlement benefits each of the Debtors' stakeholders by maximizing value to the Debtors' estates and resolving key issues that impact creditor recoveries.  The costs associated with any related litigation would drain the Debtors' estates and further delay creditor recoveries.  Moreover, each Withhold Account Holder will have the opportunity to join the Withhold Ad Hoc Group and "opt-in" to the Settlement. Indeed, the Settlement represents a fair and consensual resolution and therefore are in the best interest of each of the Debtors' stakeholders.

37.     With respect to the ***fourth*** *Iridium* factor, the Settlement is supported by both the Withhold Ad Hoc Group and the Committee.  As the two non-Debtor parties with the most interest in advocating for Withhold Account Holders in these chapter 11 cases, their approval and acceptance of the Settlement is a good indication that such agreement is fair and equitable.

38.     With respect to the ***fifth*** *Iridium* factor, the releases granted by the Settlement are mutual, narrow in scope, essential to the Settlement, and are similar in nature to other settlements

17

of the same nature in this and other chapter 11 cases.[18]  Specifically, the releases granted by the Debtors in the Settlement are a necessary component of the Settlement and appropriate under the circumstances.

39.        Finally, with respect to the **sixth** and **seventh** *Iridium* factors, the Settlement is the product of arm's-length bargaining between the Parties represented by independent, competent counsel.  In addition, *pro se* Withhold Account Holders are not bound by this Settlement at this time; rather, such parties may evaluate the proposed treatment in accordance with the Plan and determine whether to vote in favor of such treatment.  Moreover, given that the Court has not determined whether Transferred Withhold Assets are property of the Debtors' estates, this Settlement provides Settling Withhold Account Holders with a projected recovery in between the projected recoveries that will be offered to Settling Custody Account Holders and holders of Earn Claims under the Plan.  This is an appropriate middle ground approach, and by providing this recovery to all holders of Withhold Claims under the Plan, all parties have a reasonable opportunity to review and understand the terms of the Settlement before determining whether to vote to accept the Plan.

40.        The Parties engaged in fair and thorough arm's-length negotiations, culminating into the terms proposed in the Settlement Agreement.  The Settlement was negotiated over more than three months by and among three independent parties.  The Parties exchanged multiple term sheets before agreeing to the terms set forth in the Settlement Agreement with meaningful concessions made by all Parties.

---

[18]    *See, e.g.*, *See Order (I) Approving (A) the Settlement by and Among the Debtors, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* [Docket No. 2291] (approving the Custody Settlement where the Debtors, the Committee, and the Custody Ad Hoc Group mutually releases each other from all claims and causes of action related to the applicable allowed Custody claims of Settling Custody Account Holders).

41.     The terms of the Settlement therefore satisfy the requirements of Bankruptcy Rule 9019 and the Parties request that the Court approve the Settlement and authorize each of the Parties to perform thereunder.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

42.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

43.     Except as explicitly set forth in this Motion and the Settlement (once approved by the Court and implemented in accordance with its terms), nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the

validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim

## Motion Practice

44.      This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

45.      The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; (h) all Withhold Account Holders; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

46.      No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated: March 28, 2023

/s/ Aaron E. Colodny

**White & Case LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone:     (212) 819-8200
Facsimile:     (212) 354-8113
Email:  david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        kwofford@whitecase.com

-and-

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60654

Telephone:     (312) 881-5400
Facsimile:     (312) 881-5450
Email:         mandolina@whitecase.com
               gregory.pesce@whitecase.com

-and-

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90012
Telephone:     (213) 620-7700
Facsimile:     (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

/s/ Deborah Kovsky-Apap

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, New York 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email: deborah.kovsky@troutman.com

*Counsel to the Ad Hoc Group of Withhold Account Holders*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE WITHHOLD AD HOC GROUP AND (II) GRANTING RELATED RELIEF

Upon the joint motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), the Committee, and the Withhold Ad Hoc Group (collectively, the "Parties") for entry of an order (this "Order") (i) approving the Settlement, as embodied in the Settlement Agreement attached hereto as **Exhibit 1**, by and among the Parties and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing thereon were appropriate under the circumstances and no other notice

need be provided; and this Court having reviewed the Motion and having heard the statements in

support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement Agreement, attached hereto as **Exhibit 1**, is approved.

3.      Pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and

perform the Settlement as embodied in the Settlement Agreement, and perform, execute, and

deliver all documents, and take all actions necessary, to immediately continue and fully implement

the Settlement in accordance with the terms, conditions, and agreements set forth or provided for

in the Settlement Agreement.

4.      Notwithstanding anything to the contrary in the Withdrawal Order and the

Withdrawal Notice, the Debtors are authorized to distribute to Settling Withhold Account Holders

the Withhold Settlement Payment.

5.      Withhold Settlement Payments shall be permitted to be withdrawn by Settling

Withhold Account Holders net of any gas fees or transaction costs (or a fee approximating such

costs) necessary to effectuate the withdrawal or transfer of Withhold Settlement Payments to

customers; *provided*, that no digital assets shall be permitted to be withdrawn unless the account

balance of the Settling Withhold Account Holder is sufficient to satisfy any gas fees or transaction

costs (or a fee approximating such costs) necessary to effectuate the withdrawal or transfer of digital assets to such Settling Withhold Account Holder.

6.      The notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

9.      This Order shall bind the Parties, their estates and any successors or assigns, including without limitation any trustee, liquidating trustee, or other estate representative.

10.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE

# EXHIBIT 1

**Settlement Agreement**

# SETTLEMENT AGREEMENT

     This Settlement Agreement (this "Settlement Agreement") is made as of March 28, 2023, among Celsius Network LLC and its debtor affiliates (collectively, the "Debtors" and, together with their non-debtor affiliates, "Celsius"),[1] the Official Committee of Unsecured Creditors (the "Committee"), and members of the Ad Hoc Group of Withhold Account Holders (the "Withhold Ad Hoc Group") that execute the Settlement Agreement prior to the entry of the Settlement Order (as defined herein) (such settling members, the "Settling Withhold Account Holders," and together with the Debtors, the Committee, and the Withhold Ad Hoc Group, the "Parties") signatory hereto.  The Parties hereby agree as follows.[2]

     A.    **WHEREAS**, on July 13, 2022 (the "Petition Date"), certain of the Debtors[3] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

     B.    **WHEREAS**, prior to the Petition Date, members of the Withhold Ad Hoc Group— as well as all other individuals and entities—incurred balances associated with Celsius' "Withhold" accounts (the "Withhold Accounts") by (i) transferring certain cryptocurrency assets to Celsius' platform that were not eligible for any given service and not supported on the platform (the "Ineligible Withhold Assets"); or (ii) making transfers of cryptocurrency assets from Celsius' "Earn" program in states in which Celsius did not offer the "Custody" program (the "Transferred Withhold Assets," and together with the Ineligible Withhold Assets, the "Withhold Assets").

     C.    **WHEREAS**, on September 1, 2022, the Debtors filed the Withdrawal Motion, seeking the Court's authorization to return to holders of Withhold Accounts the Ineligible Withhold Assets that the Debtors believed were not property of the Debtors' estates and not subject to the Debtors' potential preference avoidance or setoff actions, among other relief.[4]

---

[1]    The Debtors include the following:  Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd.; GK8 UK Limited; and GK8 USA LLC.

[2]    Capitalized terms used in the recitals but not otherwise defined therein shall have the meanings ascribed to them in the "Definitions" section.  Capitalized terms used but not otherwise defined in this Settlement Agreement shall have the meanings ascribed to them in the Withdrawal Order or the Settlement Term Sheet, as applicable.

[3]    Debtors GK8 Ltd., GK8 USA LLC, and GK8 UK Limited filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 7, 2022.

[4]    Withdrawal Motion ¶¶ 4, 5, 10.  In the Withdrawal Motion, the Debtors requested to maintain possession of all Withhold Assets (a) that had been transferred into the Withhold Accounts from the Earn Program or the Borrow Program, with respect to which the aggregate value of such transfer(s) was equal to or greater than $7,575, or (b) that belonged to holders of Withhold Account with outstanding obligations owed to the Debtors through the Debtors' Borrow Program.  *Id.* ¶¶ 4, 6.  As of the filing of the Withdrawal Motion, however, the Debtors believed that this second exclusion pertains only to holders of assets associated with the "Custody" program (the "Custody Program," and the accounts associated with Custody Program, the "Custody Accounts").  *Id.* ¶ 6, n.5.

D.    **WHEREAS**, on September 7, 2022, the Withhold Ad Hoc Group filed the Withhold Lift Stay Motion, seeking relief from the automatic stay with respect to the Withhold Accounts and an order from the Bankruptcy Court authorizing members of the Withhold Ad Hoc Group to withdraw Withhold Assets from their Withhold Accounts.[5]

E.    **WHEREAS**, the Parties agreed to negotiate a scheduling order to resolve certain issues related to Withhold Assets on a consolidated basis.

F.    **WHEREAS**, on October 13, 2022, the Court approved the Scheduling Order whereby in Phase I (as defined in the Scheduling Order), the Parties would brief (a) whether Withhold Assets are property of the Debtors' estates, including whether Celsius' Terms of Use are unambiguous on the issue of ownership of Withhold Assets; and (b) if Withhold Assets are not property of the Debtors' estates, whether the Debtors should nonetheless be allowed to continue to hold Withhold Assets, and maintain the status quo, with respect to individuals and/or accounts where the Debtors have potentially viable claims, including, without limitation, preference claims (collectively, the "Withhold Issues").

G.    **WHEREAS**, on November 5, 2022, the Parties filed their respective opening briefs [Docket Nos. 1289, 1290, and 1291]. On December 2, 2022, the Parties filed their respective response briefs [Docket Nos. 1567, 1571, and 1573].

H.    **WHEREAS**, on December 7, 2022, the Court held a hearing (the "December 7 Hearing") on the Withhold Issues and indicated a "strong preference" for the Withhold Ad Hoc Group to proceed with Phase II (as defined in the Scheduling Order).

I.    **WHEREAS**, on December 20, 2022, the Court entered the Withdrawal Order, (a) finding that Ineligible Withhold Assets are not property of the Debtors' estates under section 541 of the Bankruptcy Code, (b) directing the Parties to meet and confer to determine which digital assets on the Debtors' platform qualify as Ineligible Withhold Assets, and (c) granting the Withdrawal Motion in part to authorize the Debtors to open withdrawals for the Ineligible Withhold Assets.[6]

J.    **WHEREAS**, as of the date hereof, the Debtors are in the process of preparing a list and distribution schedule related to the Ineligible Withhold Assets, and the Court has not ruled on whether the Transferred Withhold Assets are property of the Debtors' estates.

K.    **WHEREAS**, shortly after the December 7 Hearing, the Parties began discussions on a potential settlement of the Phase II issues and the Transferred Withhold Assets.

L.    **WHEREAS**, during the hearing on March 8, 2023, the Debtors and the Withhold Ad Hoc Group represented to the Court that the Parties have reached an agreement in principle with respect to the Transferred Withhold Assets.

---

[5]    Withhold Lift Stay Motion at 1.

[6]    Withdrawal Order ¶¶ 1–2.

M. **WHEREAS**, following good faith and arm's-length negotiations, on March 28, 2023, the Parties reached an agreement on the terms of this settlement as set forth in the settlement term sheet attached hereto as **Exhibit A** (the "Settlement Term Sheet," and this settlement, the "Settlement").

NOW, THEREFORE, it is hereby agreed to by and among the Parties:

## Definitions

a.      "Allowed Withhold Claim" means any allowed Withhold Claim held by a Settling Withhold Account Holder, as identified in the signature pages to this Settlement Agreement, with respect to which the Debtors and the Settling Withhold Account Holder agree as to the amount.

b.      "Aggregator Wallets" has the meaning set forth in the Blonstein Declaration.

c.      "Bankruptcy Code" has the meaning set forth in the recitals.

d.      "Bankruptcy Court" has the meaning set forth in the recitals.

e.      "Blonstein Declaration" means the *Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, with Respect to Certain Phase I Issues Pursuant to the Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1192].

f.      "Celsius" has the meaning set forth in the preamble.

g.      "Celsius App" means the Debtors' mobile application.

h.      "Committee" has the meaning set forth in the preamble.

i.      "Conversion Table" means *Exhibit A* attached to the *Notice of Filing of Cryptocurrency Conversion Rates* [Docket No. 1420]

j.      "Debtors" has the meaning set forth in the preamble.

k.      "December 7 Hearing" has the meaning set forth in the recitals.

l.      "Earn Claim" means any account holder Claim arising out of or related to Celsius' "Earn" program.

m.      "Ineligible Withhold Assets" has the meaning set forth in the recitals.

n.      "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

o.      "Non-Settling Withhold Account Holders" means Holders of Withhold Claims that are either (i) not members of the Withhold Ad Hoc Group or (ii) members of the Withhold Ad Hoc Group that do not elect to participate in the Settlement.

p.      "Parties" has the meaning set forth in the preamble.

q.      "Petition Date" has the meaning set forth in the recitals.

r.      "Plan" means any joint chapter 11 plan filed by the Debtors.

s.      "Scheduling Order" means the *Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups with Respect to the Custody and Withhold Issues* [Docket No. 1044].

t.      "Settlement Agreement" has the meaning set forth in the preamble.

u.      "Settlement Motion" means the *Joint Motion for Entry of an Order (I) Approving the Settlement By and Among the Debtors, the Committee, and the Withhold Ad Hoc Group and (II) Granting Related Relief*, filed contemporaneously herewith.

v.      "Settlement Order" means any order entered by the Bankruptcy Court approving the Settlement Motion and this Settlement Agreement, which order shall be in a form reasonably acceptable to each of the Parties.

w.      "Settlement Term Sheet" has the meaning set forth in the recitals.

x.      "Settling Withhold Account Holders" has the meaning set forth in the preamble.

y.      "Transferred Withhold Assets" has the meaning set forth in the recitals.

z.      "Withdrawal Motion" means the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 670].

aa.      "Withdrawal Notice" means the *Notice of Schedule of Custody Users Entitled to Withdraw Certain Assets* [Docket No. 1958].

bb.      "Withdrawal Order" means the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767].

cc.      "Withhold Account" has the meaning set forth in the recitals.

dd.      "Withhold Ad Hoc Group" has the meaning set forth in the preamble.

ee.      "Withhold Assets" has the meaning set forth in the recitals.

ff.      "Withhold Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, arising from transfers of cryptocurrency made in states in which the Debtors did not offer the Custody Program, which transfers were associated with balances in Withhold Accounts.

gg.    "Withhold Distribution Claim" means an Allowed Withhold Claim *minus* any Ineligible Withhold Assets.

hh.    "Withhold Issues" has the meaning set forth in the recitals.

ii.    "Withhold Lift Stay Motion" means the *Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay* [Docket No. 737] (the "Withhold Lift Stay Motion").

jj.    "Withhold Settlement Payments" has the meaning set forth in paragraph 5.

## **Agreement**

1.    **Settlement Term Sheet**.  The Settlement Term Sheet attached hereto as **Exhibit A** is fully incorporated into this Settlement Agreement.  To the extent there is any inconsistency between this Settlement Agreement, on the one hand, and the Settlement Term Sheet, on the other, the terms of this Settlement Agreement shall govern and control.  For the avoidance of any doubt, any provisions set forth in the Settlement Term Sheet not otherwise explicitly discussed in this Settlement Agreement shall be deemed part of this Settlement Agreement.

2.    **For Settlement Purposes Only**.  This Settlement Agreement is for settlement purposes only.  Except as explicitly set forth in this Settlement Agreement, the fact of this Settlement Agreement or any provision herein, the negotiations or proceedings related hereto, and any actions taken hereunder shall not constitute or be construed as (a) any admission of the validity of any claim or any fact alleged by any of the Parties, (b) any admission of any wrongdoing, fault, violation of law, breach of contract, or liability of any kind on the part of Debtors, (c) any admission as to any claim or allegation made in any demand of, action against, or proceeding against Debtors, and/or (d) a waiver of any applicable defense, including, without limitation, any applicable statute of limitations.  This Settlement Agreement and its exhibits shall not be offered or admissible as evidence against Settling Withhold Account Holders or the Debtors in any action or proceeding in any forum for any purpose whatsoever, except any action or proceeding brought to enforce its terms.

3.    **Approval**.  This Settlement Agreement shall be effective on the date the Bankruptcy Court enters the Settlement Order.  Although the Parties shall sign this Settlement Agreement prior to the entry of the Settlement Order, this Settlement Agreement shall not be effective or binding on the Parties if the Settlement Order is not entered by the Bankruptcy Court.

Upon entry of the Settlement Order:

- the Withhold Ad Hoc Group shall withdraw the Withhold Lift Stay Motion with prejudice;

- the Withhold Ad Hoc Group shall be deemed to be dismissed from the Scheduling Order with prejudice;

- the Debtors and the Debtors' estates shall release any avoidance claims such entities may have against the Settling Withhold Account Holders, and the Settling Withhold Account Holders shall agree not to pursue any litigation, including seeking relief from the automatic stay, turnover, or other claims or causes of action, related to any such holder's Withhold Claims, including the recharacterization of such holder's Withhold Claim to an Earn Claim on the terms set forth in this Settlement; and

- the Parties agree that any distributions authorized by the Settlement Order that is an Unclaimed Distribution (as will be defined in the Plan) or otherwise remains undeliverable for a period of one year after the first attempt to deliver such distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code, except as otherwise provided in the Plan.

4.    **Offer to Members of Withhold Ad Hoc Group Only**.  The Settlement set forth in this Settlement Agreement shall be offered to only the members of the Withhold Ad Hoc Group that elect to sign the Settlement Agreement prior to the entry of the Settlement Order; *provided* that, as further set forth herein, the treatment proposed in this Settlement shall be offered to all holders of Withhold Claims pursuant to the Plan.  This Settlement is contingent on the Withhold Ad Hoc Group's agreement to dismiss the Withhold Lift Stay Motion with prejudice. Notwithstanding anything to the contrary set forth herein, the Settlement is not offered to any current or former employees or insiders of the Debtors, and no current or former employee or insider of the Debtors is eligible to participate in the Settlement.

5.    **Settlement Payments & Conditions**.  The Parties agree that any member of the Withhold Ad Hoc Group wishing to become a Settling Withhold Account Holder by executing this Settlement Agreement and becoming a Party hereto must do so prior to the entry of the Settlement Order and shall receive, in full and final satisfaction, compromise, settlement, and release of such Settling Withhold Account Holder's Allowed Withhold Claim and in exchange for such Settling Withhold Account Holder's agreement to withdraw the Withhold Lift Stay Motion with prejudice and settle the issues set forth in the Scheduling Order with respect to the Withhold Assets, a distribution comprising:

- the right to withdraw from the Debtors' platform 15 percent of the value of such Settling Withhold Account Holder's Withhold Distribution Claim in an in-kind distribution in the cryptocurrency associated with such balance (the "Withhold Settlement Payment") within 30 calendar days of the entry of the Settlement Order;[7] *plus*

---

[7]    The Withhold Settlement Payment shall be calculated by (a) converting the value of the Withhold Distribution Claim into U.S. dollar amount according to the prices of any cryptocurrency that make up the Withhold Distribution Claim on the Petition Date, as reflected in the Conversion Table, (b) calculating what the value of 15 percent of that U.S. dollar amount equals, and (c) converting the value of 15 percent of that U.S. dollar amount into cryptocurrency based on the prices of such cryptocurrency on the date the Settlement Order is entered (the "Conversion Procedure").

- Upon entry of the Settlement Order, a release of all avoidance actions that the Debtors' estates may assert against any such Settling Withhold Account Holder on account of such Holder's Withhold Distribution Claim.

Upon entry of the Settlement Order, the remaining 85 percent of the value of such Settling Withhold Account Holder's Withhold Distribution Claim shall be converted to an allowed Earn Claim and such Settling Withhold Account Holder shall no longer have a Withhold Claim.  For the avoidance of any doubt, any such Holder's converted Earn Claim shall receive the same treatment as all other Earn Claims under the Plan.

6.     **Treatment of Non-Settling Withhold Account Holders**.  The Parties agree that the Plan shall provide that Non-Settling Withhold Account Holders shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for each such Holder's Allowed Withhold Claim, the following treatment:

- In the event that the class of Allowed Withhold Claims votes to accept the Plan, each Non-Settling Withhold Account Holder shall receive the Withhold Settlement Payment, calculated in accordance with the Conversion Procedure, *and* the remaining 85 percent of the value of such Holder's Withhold Distribution Claim shall be provided the same treatment as Earn Claims under the Plan; or

- In the event that the class of Allowed Withhold Claims votes to reject the Plan, 100 percent of the value of each Non-Settling Withhold Account Holder's Withhold Distribution Claim shall be provided the same treatment as Earn Claims under the Plan.

For the avoidance of any doubt, nothing herein precludes any Withhold Account Holder from withdrawing any Ineligible Withhold Assets from Celsius' platform as permitted by the Withdrawal Order, regardless of whether such Withhold Account Holder is a member of the Withhold Ad Hoc Group, or signs the Settlement Agreement.

7.     **Release & Exculpation**.  Upon entry of the Settlement Order, the Debtors and the Debtors' estates shall release any avoidance claims such entities may have against the Settling Withhold Account Holders, and the Settling Withhold Account Holders shall agree not to pursue any litigation, including seeking relief from the automatic stay, turnover, other claims or causes of action, or the recharacterization of such holder's Withhold Claim to an Earn Claim on the terms set forth in this Settlement, in each case only as related to any such holder's Withhold Claims. Notwithstanding anything to the contrary set forth herein, the Parties do not release any rights or causes of action against any Parties with respect to any assets other than Withhold Assets or any claims other than Withhold Claims, subject to the terms set forth in this Settlement Agreement, including:  (a) assets held in the Earn Program by Holders party to the Settlement; (b) assets held in the Borrow Program by Holders party to the Settlement; (c) assets associated with balances in Custody Accounts held by Holders party to the Settlement (if any); and (d) assets transferred off of Celsius' platform by Holders party to the Settlement (other than in accordance with the Withdrawal Order and/or Settlement Order).

8.      **Distribution Procedures**.  The Withhold Settlement Payment shall be made in-kind and the Debtors shall be permitted to make such payments using any combination of digital assets currently held in Aggregator Wallets in amounts sufficient to satisfy such in-kind distribution; *provided* that, in the event there are insufficient in-kind digital assets to satisfy the Withhold Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient.  Any distribution made in alternative cryptocurrency shall be converted using the value of the original digital asset as of the Petition Date, in accordance with the Conversion Table, into U.S. dollars, which dollars will then be converted into alternative cryptocurrency using the value of such digital asset as of the date of entry of the Settlement Order. Within 15 days of the entry of the Settlement Order, the Debtors shall notify Settling Withhold Account Holders through the Celsius App and by email, or other means, such as filing a Notice with the Bankruptcy Court, of the amount and type of digital assets that such holder will receive. Each Settling Withhold Account Holder agrees to provide the Debtors with an external wallet address through the Celsius App and comply with any KYC requirements prior to receiving any Withhold Settlement Payments.

9.      **Minimum Distributions**.  No holders of Withhold Distribution Claims that total, in the aggregate, less than $10.00 shall be entitled to a distribution under the Settlement.  Withhold Settlement Payments shall be permitted to be withdrawn by Settling Withhold Account Holders net of any gas fees or transaction costs (or a fee approximating such costs) necessary to effectuate the withdrawal or transfer of Withhold Settlement Payments to such Settling Withhold Account Holders; *provided, further*, that no digital assets shall be permitted to be withdrawn unless the account balance of the Settling Withhold Account Holder is sufficient to satisfy any gas fees or transaction costs (or a fee approximating such costs) necessary to effectuate the withdrawal or transfer of Withhold Settlement Payment to such Settling Withhold Account Holder.

10.     **Fees & Expenses**.  The Debtors will not object to or otherwise oppose the Withhold Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Troutman Pepper Hamilton Sanders LLP, as counsel for the Withhold Ad Hoc Group, in connection with the chapter 11 cases.

11.     **Notice**.  All notices, demands, instructions, and other communications required or permitted under the Settlement Agreement to any Party (a "Notice") must be in writing, will be effective upon receipt, and must be delivered by hand delivery, overnight courier, or email.  Unless otherwise specified in a Notice sent or delivered in a manner indicated below, Notices must be sent to the Parties as indicated below:

**If to the Company:**
Celsius Network LLC
50 Harrison Street
Suite 209F
Hoboken, NJ 07030
Attn:  Ron Deutsch, General Counsel
Email: ron.deutsch@celsius.network

**with a copy to**:

8

Kirkland & Ellis LLP
     601 Lexington Avenue
     New York, New York 10022
     Attn:  Joshua A. Sussberg, P.C., Elizabeth Jones
     Telephone: (212) 446-4800
     Facsimile: (212) 446-4900
     Email: jsussberg@kirkland.com, elizabeth.jones@kirkland.com

     and

Kirkland & Ellis LLP
     300 N. LaSalle Street
     Chicago, Illinois 60654
     Attn:  Patrick J. Nash, Jr. P.C., Ross M. Kwasteniet, P.C., Christopher S. Koenig,
     and Dan Latona
     Telephone: (312) 862-2000
     Facsimile: (312) 862-2200
     Email:    patrick.nash@kirkland.com,    ross.kwasteniet@kirkland.com,
     chris.koenig@kirkland.com, dan.latona@kirkland.com

**If to the Withhold Ad Hoc Group:**
     Troutman Pepper Hamilton Sanders LLP
     875 Third Avenue
     New York, New York 10022
     Attn:  Deborah Kovsky-Apap
     Telephone:  (212) 704-6000
     Email: deborah.kovsky@troutman.com

**If to the Committee**
     White & Case LLP
     1221 Avenue of the Americas
     New York, New York 10020
     Attn:  David M. Turetsky, Samuel P. Hershey, Keith H. Wofford
     Telephone:  (212) 819-8200
     Facsimile:  (212) 354-8113
     Email:    david.turetsky@whitecase.com,    sam.hershey@whitecase.com,
     kwofford@whitecase.com

     and

     White & Case LLP
     111 South Wacker Drive
     Suite 5100
     Chicago, Illinois 60654
     Attn:  Michael C. Andolina, Gregory F. Pesce
     Telephone:  (312) 881-5400
     Facsimile:  (312) 881-5450

Email: mandolina@whitecase.com, gregory.pesce@whitecase.com

and

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90012
Attn: Aaron E. Colodny
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

12.    **Governing Law**.  This Settlement Agreement, and any disputes related thereto, shall be governed by and be construed in accordance with (a) applicable federal law, or (b) to the extent federal law does not apply, the laws of the state of New York without regard to the rule of conflict of laws of the state of New York or any other jurisdiction that would require the application of the law of another jurisdiction.  The Parties hereto consent to submit to the jurisdiction of the appropriate federal district court for any litigation relating to this Settlement Agreement and agree not to commence any litigation relating to this Settlement Agreement except in the appropriate federal district court.

13.    **Authority**.  Each of the Parties hereto represents and warrants that it has the authority to enter into this Settlement Agreement and to undertake the transactions contemplated hereunder.

14.    **Successors and Assigns**.  The rights and obligations of each of the Parties under this Settlement Agreement shall be binding upon, and inure to the benefit of, any successor or assign of each such Party.

15.    **Non-Severability**.  Each of the terms of this Settlement Agreement is a material and integral part hereof.  Should any provision of this Settlement Agreement be held to be unenforceable or contrary to law, the entire Settlement Agreement shall be deemed null and void.

16.    **Entire Understanding**.  This Settlement Agreement constitutes the entire understanding of the Parties hereto in connection with the subject matter covered herein, and may not be amended, modified, or altered except by an agreement in writing signed by each of the Parties.

17.    **No Party Deemed Drafter**.  The signatories to this Settlement Agreement are competent persons, each of whom is experienced in business and represented by counsel. Therefore, any ambiguous language in this Settlement Agreement will not be construed against any particular Party as the drafter of such language.

18.    **Failure to Enforce**.  The failure of any Party to enforce a provision of this Settlement Agreement will not constitute a waiver of such Party's right to enforce that provision.

19.      **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts and by the different Parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same document.  Delivery of an executed counterpart of this Settlement Agreement by electronic mail (to Christopher S. Koenig (chris.koenig@kirkland.com) for the Debtors; to Deborah Kovsky-Apap (deborah.kovsky@troutman.com) for the Withhold Ad Hoc Group; and to Aaron Colodny (aaron.colodny@whitecase.com) for the Committee) shall be equally effective as delivery of an original executed counterpart.

**Celsius Network LLC on behalf of itself and
its debtor affiliates**

By: _____

     **Name:  Christopher Ferraro**
     **Title: Authorized Signatory**

**Official Committee of Unsecured Creditors**

**By:** */s/ Thomas DiFiore*
_____
    **Name:**  Thomas DiFiore
    **Title:**  Co-Chair of Official Committee of
    Unsecured Creditors

**MEMBERS OF THE
WITHHOLD AD HOC GROUP**

/s/ Kaveh Bastani
Kaveh Bastani
Allowed Withhold Claim: [TBD]

/s/ Shane Coolen
Shane Coolen
Allowed Withhold Claim: [TBD]

/s/ Alvaro Drevon
Alvaro Drevon
Allowed Withhold Claim: [TBD]

/s/ Larry Fulton
Larry Fulton
Allowed Withhold Claim: [TBD]

/s/ Gavin Hoffman
Gavin Hoffman
Allowed Withhold Claim: [TBD]

/s/ Ryan Holz
Ryan Holz
Allowed Withhold Claim: [TBD]

/s/ Antonio Johnson
Antonio Johnson
Allowed Withhold Claim: [TBD]

/s/ Chris Lovette
Chris Lovette
Allowed Withhold Claim: [TBD]

/s/ Manuel Martinez
Manuel Martinez
Allowed Withhold Claim: [TBD]

/s/ Scott Reina
Scott Reina
Allowed Withhold Claim: [TBD]

/s/ Robert Riskin
Robert Riskin
Allowed Withhold Claim: [TBD]

/s/ Travis Schilling
Travis Schilling
Allowed Withhold Claim: [TBD]

/s/ Benny Wong
Benny Wong
Allowed Withhold Claim: [TBD]

## Exhibit A

**Settlement Term Sheet**

*In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG)

## SETTLEMENT TERM SHEET

## REGARDING WITHHOLD ASSETS

THIS SETTLEMENT TERM SHEET (THIS "SETTLEMENT TERM SHEET") CONTAINS CERTAIN MATERIAL TERMS AND CONDITIONS OF A PROPOSED SETTLEMENT BY AND BETWEEN THE DEBTORS IN THE JOINTLY-ADMINISTERED CASES CAPTIONED *IN RE CELSIUS NETWORK LLC, ET AL.*, CASE NO. 22-10964 (MG) (THE "DEBTORS" AND, TOGETHER WITH THEIR NON-DEBTOR AFFILIATES, "CELSIUS"), THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "COMMITTEE"), THE AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS (THE "WITHHOLD AD HOC GROUP" AND, TOGETHER WITH THE DEBTORS AND THE COMMITTEE, THE "PARTIES").    THIS SETTLEMENT TERM SHEET CONTEMPLATES A FULL AND FINAL SETTLEMENT OF ALL CLAIMS BETWEEN THE PARTIES RELATED TO THE WITHHOLD ASSETS, INCLUDING PHASE II OF THE CUSTODY AND WITHHOLD ISSUES (WITH RESPECT TO THE WITHHOLD AD HOC GROUP), AS DEFINED IN THE *JOINT STIPULATION AND AGREED SCHEDULING ORDER BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE AD HOC GROUPS WITH RESPECT TO THE CUSTODY AND WITHHOLD ISSUES* [DOCKET NO. 1044] (THE "SCHEDULING ORDER").[1]

THIS SETTLEMENT TERM SHEET DOES NOT ADDRESS ALL TERMS, CONDITIONS, OR OTHER PROVISIONS THAT WOULD BE REQUIRED IN CONNECTION WITH THE SETTLEMENT, WHICH SHALL BE SET FORTH IN THE SETTLEMENT AGREEMENT (AS DEFINED BELOW), WHICH IS SUBJECT TO AGREEMENT IN ACCORDANCE WITH THIS SETTLEMENT TERM SHEET.

THIS SETTLEMENT TERM SHEET IS NOT AN OFFER, ACCEPTANCE OR SOLICITATION WITH RESPECT TO ANY SECURITIES, LOANS, OR OTHER INSTRUMENTS OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.    ANY SUCH OFFER, ACCEPTANCE OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE LAW, INCLUDING SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE TO THE EXTENT APPLICABLE.    NOTHING CONTAINED IN THIS SETTLEMENT TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL APPROVAL OF THE SETTLEMENT MOTION OR CONFIRMATION OF THE PLAN CONTEMPLATED HEREBY (AND THEN ONLY AS PROVIDED THEREIN), AS APPLICABLE, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Scheduling Order or the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767] (the "Withdrawal Order"), as applicable.

| **SETTLEMENT TERMS** | |
| --- | --- |
| **Settlement Summary** | The settlement (the "<u>Settlement</u>") between the Parties will include the following, as set forth in further detail in this Settlement Term Sheet: <br><br> ■    The Parties will file a joint motion to approve the Settlement and a settlement agreement incorporating the terms of this Settlement Term Sheet (the "<u>Settlement Agreement</u>"), including distribution procedures, which shall be in form and substance acceptable to each of the Parties and otherwise consistent with this Settlement Term Sheet and the Settlement Agreement (together with all exhibits attached thereto, the "<u>Settlement Motion</u>"), to be heard at the April 18, 2023 omnibus hearing. <br><br> ■    Subject to the terms set forth herein, it is contemplated that this Settlement shall be offered to **only** the members of the Withhold Ad Hoc Group that execute the Settlement Agreement prior to the entry of the Settlement Order [as defined herein] (collectively, the "<u>Settling Withhold Account Holders</u>"); *provided* that, as further set forth herein, the treatment proposed in this Settlement shall be offered to all holders of claims arising from transfers of cryptocurrency made in states in which the Debtors did not offer the Custody Program, which transfers were associated with balances in "Withhold" accounts (the "<u>Withhold Accounts</u>" and such cryptocurrency, the "<u>Withhold Assets</u>" and such claims, the "<u>Withhold Claims</u>") pursuant to the Debtors' chapter 11 plan (the "<u>Plan</u>"). <br><br> ■    The Settlement constitutes the full and final settlement of all allowed Withhold Claims (each such claim, an "<u>Allowed Withhold Claim</u>") held by the Settling Withhold Account Holders, as identified in the signature pages to the Settlement Agreement, against Celsius. <br><br> ■    This Settlement is contingent on the Withhold Ad Hoc Group's agreement to dismiss the Withhold Lift Stay Motion (as defined below) with prejudice. <br><br> ■    Upon entry of an order approving the Settlement Motion, which shall be in form and substance acceptable to each of the Parties and otherwise consistent with this Settlement Term Sheet and the Settlement Agreement (together with all exhibits attached thereto, the "<u>Settlement Order</u>"), the Withhold Ad Hoc Group shall withdraw the *Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay* [Docket No. 737] (the "<u>Withhold Lift Stay Motion</u>") with prejudice. <br><br> ■    Upon entry of the Settlement Order, the Withhold Ad Hoc Group shall be deemed to be dismissed from the Scheduling Order with prejudice. |

| | |
|---|---|
| | For the avoidance of any doubt, nothing herein precludes any account holder from withdrawing any assets from Celsius' platform as permitted by the Withdrawal Order (the "Ineligible Withhold Assets"). |
| **Settlement Motion** | The Withhold Ad Hoc Group shall inform the Debtors and the Committee (a) of the members of the Withhold Ad Hoc Group that have stated their intention to participate in the Settlement and (b) that the Withhold Ad Hoc Group has agreed to withdraw the Withhold Lift Stay Motion no later than two (2) business days prior to the filing of the Settlement Motion. |
| **Withhold Claims** | "Withhold Distribution Claim" means an Allowed Withhold Claim *minus* any Ineligible Withhold Assets.<br><br>Each Settling Withhold Account Holder shall receive, in full and final satisfaction and settlement of such Settling Withhold Account Holder's Allowed Withhold Claim and in exchange for such Holder's agreement to withdraw with prejudice the Withhold Lift Stay Motion and settle the issues set forth in the Scheduling Order with respect to the Withhold Assets, a distribution comprising:<br><br>    ▪    Within 30 calendar days of entry of the Settlement Order, the right to withdraw from the Debtors' platform 15% of the value of such Settling Withhold Account Holder's Withhold Distribution Claim in an in-kind distribution in the currency associated with such balance (the "Withhold Settlement Payment").[2]<br><br>    ▪    Upon entry of the Settlement Order, a release of all avoidance actions that the Debtors' estates may assert against any such Settling Withhold Account Holder on account of such Holder's Withhold Distribution Claim and not any other such avoidance actions.<br><br>Upon entry of the Settlement Order, the remaining 85% of the value of such Settling Withhold Account Holder's Withhold Distribution Claim shall be converted to an allowed Earn Claim[3] and such Settling Withhold Account Holder shall no longer have a Withhold Claim.[4]<br><br>All Holders of Allowed Withhold Claims that are either (i) not members of the Withhold Ad Hoc Group or (ii) members of the Withhold Ad Hoc Group that do not elect to participate in the Settlement (the "Non-Settling Withhold Account Holders") shall receive the following treatment under the Plan in full and final satisfaction, compromise, settlement, and release of and in exchange for each such Holder's Allowed Withhold Claim: |

---

[2]    The Withhold Settlement Payment shall be calculated by (a) converting the value of the Withhold Distribution Claim into U.S. dollars as of the prices of any such digital assets that make up the Withhold Distribution Claim as of the Petition Date, as reflected in the *Notice of Filing of Cryptocurrency Conversion Rates* [Docket No. 1420], (b) calculating what the value of 15% of that U.S. dollar amount equals, and (c) converting that 15% U.S. dollar amount into cryptocurrency based on the value of such cryptocurrency on the date the Settlement Order is entered.

[3]    "Earn Claim" means any account holder Claim arising out of or related to the Earn Program.

[4]    For the avoidance of doubt, any such Holder's converted Earn Claim shall receive the same treatment as all other Earn Claims under the Plan.

|  | |
|---|---|
|  | ▪ In the event that the class of Allowed Withhold Claims votes to accept the Plan, each Non-Settling Withhold Account Holder shall receive 15% of the value of such Holder's Withhold Distribution Claim in an in-kind distribution in the currency associated with such balance **and** the remaining 85% of the value of such Holder's Withhold Distribution Claim shall be provided the same treatment as an Earn Claim under the Plan; or<br><br>▪ In the event that the class of Allowed Withhold Claims votes to reject the Plan, 100% of the value of each Non-Settling Withhold Account Holder's Withhold Distribution Claim shall be provided the same treatment as Earn Claims under the Plan.<br><br>For the avoidance of any doubt, Non-Settling Withhold Account Holders shall not be permitted to become Settling Withhold Account Holders unless they are a member of the Withhold Ad Hoc Group and elect to participate in the Settlement prior to the entry of the Settlement Order. |
| **Release & Exculpation Provisions** | Upon entry of the Settlement Order, the Debtors and the Debtors' estates shall release any avoidance claims such entities may have against the Settling Withhold Account Holders, and the Settling Withhold Account Holders shall agree not to pursue any litigation, including seeking relief from the automatic stay, turnover, other claims or causes of action, or the recharacterization of such holder's Withhold Claim to an Earn Claim on the terms set forth in this Settlement, all only as related to any such holder's Withhold Claims.<br><br>Notwithstanding anything to the contrary set forth herein, the Parties do not release any rights or causes of action against any Parties with respect to any assets other than Withhold Assets or any claims other than Withhold Claims, subject to the terms set forth in this Settlement Term Sheet, including: (a) assets held in the Earn Program by Holders party to the Settlement; (b) assets held in the Borrow Program by Holders party to the Settlement; (c) assets associated with balances in Custody Accounts held by Holders party to the Settlement (if any); and (d) assets transferred off of Celsius' platform by Holders party to the Settlement (other than in accordance with the Withdrawal Order and/or Settlement Order). |
| **Distribution Procedures** | The Withhold Settlement Payment shall be made in-kind and the Debtors shall be permitted to make such payments using any combination of digital assets currently held in Aggregator Wallets,[5] respectively, in amounts sufficient to satisfy such in-kind distribution; *provided* that, in the event there are insufficient in-kind digital assets to satisfy the Withhold Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient. |
| **Fees and Expenses** | The Debtors will not object to or otherwise oppose the Withhold Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Troutman Pepper Hamilton Sanders LLP, as counsel for the Withhold Ad Hoc Group, in connection with the chapter 11 cases. |

---

[5]    "Aggregator Wallets" shall have the meaning ascribed to it in the Blonstein Declaration.

4

| | |
|---|---|
| **Minimum Distributions** | No holders of Withhold Distribution Claims that total, in the aggregate, less than $10.00 shall be entitled to a distribution under the Settlement. |
| **Undeliverable Distributions** | Any distribution authorized by the Settlement Order that is an Unclaimed Distribution (as will be defined in the Plan) or otherwise remains undeliverable for a period of one year after the first attempt to deliver such distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code, except as otherwise provided in the Plan. |
| **Tax Matters** | The Settlement shall be structured in a tax-efficient and cost-effective manner. |