Hearing Date:  **April 18, 2023, at 10:00 a.m. (prevailing Eastern Time)**
Objection Deadline:  **April 11, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### NOTICE OF HEARING ON DEBTORS'
### MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'
### KEY EMPLOYEE INCENTIVE PROGRAM AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Incentive Program and (II) Granting Related Relief* (the "Motion") will be held on **April 18, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (i.e., on April 17, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on April 18, 2023 must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on April 18, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and

in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief,* [Docket No. 1181] (the "Case Management Order") by **April 11, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: March 28, 2023

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

4

**Hearing Date:  April 18, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  April 11, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS' KEY EMPLOYEE INCENTIVE PROGRAM AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

### Preliminary Statement

1.      Many of the key issues in the Debtors' chapter 11 cases are of first impression and, as a result, these chapter 11 cases have been exceedingly complex and challenging, all amidst the backdrop of a changing (and uncertain) regulatory environment.  Nevertheless, the Debtors are

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

actively working to push these chapter 11 cases toward a value-maximizing resolution. As discussed in the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2152], the Debtors have pursued a dual-track process of marketing the Debtors' retail platform and mining business while simultaneously evaluating a potential standalone reorganization. As a result of that process, the Debtors selected NovaWulf to serve as Plan Sponsor. In pursuit of that transaction, the Debtors' management has attended numerous meetings with the advisors to the official committee of unsecured creditors (the "Committee") and NovaWulf, and conducted extensive diligence on the regulatory hurdles facing the restructuring transactions, of which is incremental to the additional duties brought on by these chapter 11 cases. Moreover, the Debtors' management has assumed the burden of these additional responsibilities in the face of staggering workforce attrition: since the Petition Date, the Debtors have lost over 570 employees. Simply put, if the Debtors are to effectuate ***any*** restructuring transaction, they cannot afford further attrition, particularly in their senior ranks.

2.      Furthermore, the Debtors' compensation programs are no longer conducive to retaining and motivating employees. For example, the Debtors have not made payouts for 2022 under their annual incentive program. In addition, the Company historically provided a significant portion of employees' compensation through equity awards and awards of CEL Tokens; both of these elements of compensation have declined significantly in value (if not become completely worthless) due to the chapter 11 cases. As a result, compensation for the Debtors' senior management is at or below market, on an aggregate basis, relative to their peers.

3.      Accordingly, properly incentivizing senior management and key employees to remain with the Debtors and focus their collective efforts on the Debtors' restructuring is of

paramount importance.  Without an incentive to remain with the Debtors through the completion

of the chapter 11 process, these senior managers and key employees will likely seek alternative

employment opportunities.[2]

4.      To that end, the Debtors seek approval of the Debtors' proposed key employee

incentive plan, (the "KEIP"), which allows the Debtors to incentivize its senior management and

key employees.[3]  The KEIP, which provides for the payment of cash awards to ten of the Debtors'

senior management and key employees upon confirmation of a plan pursuant to the NewCo

transaction with NovaWulf (or a superior alternative transaction) (each, a "Transaction") or a

wind-down of the Debtors (the "Orderly Wind-Down").  KEIP Participants will receive a 100%

payout if the Debtors confirm a chapter 11 plan pursuant to a Transaction and a 50% payout if they

confirm a plan of liquidation pursuant to an Orderly Wind-Down by certain specified dates.  This

payment structure properly incentivizes the KEIP Participants to maximize value for all

stakeholders.

5.      Importantly, the KEIP complies with the requirements and mandates of the

Bankruptcy Code.  The Debtors consulted with outside advisors, including their restructuring

advisor Alvarez & Marsal North America, LLC ("A&M") and external legal counsel Kirkland &

Ellis LLP, to develop an incentive plan that is market-based, consistent with competitive practices,

and compliant with the Bankruptcy Code (as defined herein).  The KEIP was ultimately approved

by the special committee of the Board of Directors of Debtor Celsius Network Limited

---

[2]     On December 13, 2022, the Court approved the Debtors' Key Employee Retention Program to address the attrition
of non-insider employees.  *See Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting
Related Relief* [Docket No. 1683].

[3]     The Debtors provided details regarding the proposed KEIP Participants to counsel to the Committee (as defined
herein) before the filing of this Motion.

(the "Special Committee"), which is comprised of two directors with extensive restructuring experience that have no personal stake in the KEIP. The Special Committee undertook a deliberative process, convening frequently with the Debtors' various advisors, to understand how to best incentivize the workforce in the midst of an in-court restructuring. After considering various potential options, the Special Committee approved the KEIP, which will cost an aggregate amount of approximately $2.86 million if all KEIP Participants satisfy the applicable target incentive objectives.

6.     The KEIP complies with the applicable provisions of the Bankruptcy Code, is similar to plans recently approved in chapter 11 cases, is justified by the facts and circumstances of these chapter 11 cases, and is within the Debtors' sound and reasonable business judgment. The Debtors have provided diligence information to, and are engaging in discussions with, the Committee regarding the cost and scope of the KEIP. For these reasons and the reasons set forth below, the Court should enter an order authorizing the Debtors to implement the KEIP.

## Relief Requested

7.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) approving and authorizing the KEIP for ten senior management members and key employees (the "KEIP Participants") and (b) granting related relief. In support of the Motion, the Debtors submit the *Declaration of Allison Hoeinghaus, Managing Director at Alvarez & Marsal, in Support of Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Incentive Program and (II) Granting Related Relief* (the "Hoeinghaus Declaration"), filed contemporaneously herewith.

## Jurisdiction and Venue

8.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

4

*Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested herein are sections 105(a), 363(c), and 503(c) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

11.     On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors commenced these chapter 11 cases to stabilize their business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

12.     The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53]. On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee [Docket No. 241]. On September 29, 2022, the Court entered an order approving the appointment of an examiner [Docket No. 920] (the "Examiner").

**The Proposed KEIP**

13.     The ultimate success of the Debtors' chapter 11 cases is heavily reliant on the continued efforts of the Debtors' senior management and key employees. The KEIP Participants

each possess specific expertise, knowledge, and familiarity with the Debtors' business and operations, thus making them crucial to the Debtors' reorganization efforts, and cannot be easily replaced. The KEIP Participants are responsible not only for guiding the Debtors through chapter 11, but also for: (a) ensuring the safety and security of assets on the Celsius platform; (b) overseeing the processing of customer withdrawals from the custody and withhold accounts; (c) steering the Debtors' sale and marketing process; and (d) supervising all human resources, payroll matters, monthly financial reporting, and bankruptcy reporting. The demands placed upon the KEIP Participants have been, and will continue to be, significant in light of the demands of these chapter 11 cases.

14.     The Debtors' prepetition compensation program was highly reliant on equity and token-based compensation, both of which have significantly dropped in value in the volatile crypto markets and in light of these chapter 11 cases. Creating incentives for the KEIP Participants to continue to meet onerous demands—many of which go well beyond the demands of their prepetition day-to-day responsibilities—is an important tool that the Debtors must leverage. Ultimately, incentivizing the Debtors' senior management and key employees will inure to the benefit of all stakeholders by facilitating a value-maximizing resolution to these chapter 11 cases, thus ensuring the highest possible recovery for the Debtors' stakeholders.

15.     The KEIP Participants have and will continue to play an essential role in the effective administration of these chapter 11 cases, particularly at this important stage of the case. Simply put, the Debtors' senior management and key employees are the driving force behind the restructuring; the level of value in the estate will rise or fall with their efforts.

16.     Moreover, the KEIP Participants' aggregate compensation remains approximately at or below the market median even where target performance is achieved as more fully discussed

herein and in the Hoeinghaus Declaration.  Accordingly, the Debtors submit that the KEIP is reasonable and will appropriately incentivize the KEIP Participants in compliance with section 503(c)(1) of the Bankruptcy Code and should be approved by the Court.

**I.        The Need for the KEIP**.

17.        The KEIP Participants are responsible for guiding and implementing the Debtors' overall strategy for maximizing the value of their estates.  The mandates placed upon the KEIP Participants to realize that result will continue to be substantial and go well beyond the demands of their prepetition day-to-day jobs.  It is vital to the success of these chapter 11 cases that the KEIP Participants be incentivized to continue to meet these mandates.

18.        The Debtors' prepetition compensation structure included a cash salary, as well as equity awards and awards of CEL Tokens, a cryptocurrency that once had considerable value and offered significant upside potential.  The Debtors historically did not utilize any formal cash incentive plans.  Given the severe decrease in both the Debtors' equity value and the value of the CEL Token and the real possibility that all equity interests in the Debtors will be cancelled upon the Debtors' emergence from chapter 11, a significant portion of the KEIP Participants' compensation has been rendered effectively worthless.  As a result, the KEIP Participants are now significantly undercompensated, and their total compensation is currently positioned approximately thirty-three percent below the comparable market's 25th percentile.  *See* Hoeinghaus Decl. ¶ 20.  The Debtors must offer incentive compensation to the KEIP Participants to reward them should they achieve exceptional performance and stakeholder recoveries throughout the remainder of these chapter 11 cases.

**II.       The KEIP Participants' Role in Maximizing Value and Recoveries.**

19.        The Debtors have designated ten senior management members and key employees as KEIP Participants.  The KEIP Participants are responsible for overseeing the Debtors' daily

operations, determining the Debtors' strategic direction, and ensuring achievement of the Debtors' overall restructuring goals, all of which are vital to the Debtors' ability to preserve and enhance stakeholder value.    The KEIP Participants include:    (a) Christopher Ferraro, Interim Chief Executive Officer, Chief Financial Officer, and Chief Restructuring Officer; (b) Guillermo Bodnar, Chief Technology Officer; (c) Oren Blonstein, Chief Product Officer; (d) Ron Deutsch, General Counsel; (e) Trunshedda Ramos, Chief Human Resources Officer; (f) Roni Pavon Cohen, Chief Revenue Officer; (g) Adrian Alisie, Chief Compliance Officer; (h) Jenny Fan, Chief Financial Officer of Mining; (i) Dave Albert, Chief Administrative Officer of Mining; and (j) Quinn Lawlor, Chief Strategy Officer of Mining (Quinn Lawlor, together with Jenny Fan and Dave Albert, the "Mining Executives").    Due to the scope of their authority, the KEIP Participants are considered "insiders" within the meaning of section 101(31) of the Bankruptcy Code.

20.    The KEIP Participants are critical to the Debtors' ability to effectively oversee an orderly chapter 11 process that maximizes value for all stakeholders, and particularly, the Debtors' customers.    During these chapter 11 cases, the Debtors' advisors, with the assistance of their management team, have worked diligently to implement a process to consummate a unique and complex restructuring transaction.    The KEIP Participants have also assumed additional responsibilities, including: (a) expending significant effort to convince customers, vendors, and other employees to stay the course and provide comfort that the Debtors will resume operations at the appropriate time as part of a value-maximizing restructuring transaction; (b) responding to various inquiries and requests from the Debtors' customers and vendors, potential transaction counterparties, various federal and state governmental agencies and regulators, the Examiner, the Committee, and the U.S. Trustee; (c) developing and engaging in discussions regarding the Debtors' cryptocurrency security policies and protocols, (d) reopening custody withdrawals on the

Debtors' platform, and (e) supervising various human resources, payroll, financial reporting, and bankruptcy reporting functions that are critical to the chapter 11 process.

21.    The KEIP Participants have and will continue to respond to diligence inquiries, engage in discussions and negotiations with their investment bankers working on the sale process and interested parties regarding the sale process, coordinate and negotiate a complex transition process with potential transaction counterparties, and communicate with the Debtors' creditors, employees, customers, trade vendors, and other business partners regarding the restructuring and the implications thereof.

22.    Furthermore, many of the KEIP Participants have many years of industry experience and are relied upon for their intimate knowledge of the Debtors' business that will continue to be critical throughout the chapter 11 cases.  The KEIP Participants' critical roles are even more challenging due to the Debtors' depleted workforce.

23.    Absent the proposed KEIP, the KEIP Participants may not be properly motivated to work towards a value-maximizing transaction and may even want to leave the Debtors' employ during the pendency of these chapter 11 cases due to, among other things, the added responsibility and stress of the key roles and responsibilities they have had to take on as a result of the chapter 11 filing and the uncertainty of the chapter 11 process.  Additionally, as noted above, the KEIP Participants are meaningfully undercompensated relative to their market peers due to the depreciated equity component of their compensation structure and the cancellation of the Debtors' equity interests upon emergence from chapter 11.  The KEIP Participants are exceptionally hard to replace in the marketplace because of their invaluable institutional knowledge and understanding of the cryptocurrency industry.  Due to the rapid growth of the cryptocurrency industry, the labor market for employees who possess the qualifications and skills necessary to

9

operate a sophisticated cryptocurrency trading platform is extremely limited and therefore highly competitive—it is likely that the Debtors would struggle to even source potential candidates who could operate their platform effectively, let alone play a key role in effectuating a successful restructuring transaction.  Hiring new senior management (if even possible) would require the Debtors to incur significant operational and financial costs.

24.    The demands placed upon the KEIP Participants have been, and will continue to be, significant.  While heightened responsibilities are inherent to the KEIP Participants' duties as leaders of the Debtors' business, the additional challenges they face as a result of the chapter 11 filing must be taken into consideration when considering their overall ability to achieve targeted restructuring efforts.

## III.    The Development of the Debtors' Proposed KEIP.

25.    To ensure that the Debtors' senior management and key employees are properly incentivized to meet the significant challenges presented during the Debtors' chapter 11 proceedings as described above, the Debtors worked with their advisors, including A&M, to evaluate the Debtors' compensation and incentive programs in light of the compensation issues that arose as a result of the chapter 11 filing and current market environment.  As part of this review process, the Debtors and their advisors, including A&M, reviewed market data and analyses regarding compensation levels, program structure, and incentive program costs of similarly situated companies.  In light of the Debtors' circumstances, the Debtors, in consultation with their advisors, concluded that implementing a performance-based incentive program for the KEIP Participants is necessary to appropriately incentivize and align the KEIP Participants' interests with the interests of the Debtors' key stakeholders during this critical period in their restructuring efforts.

10

26.     To develop the key terms of the KEIP, the Debtors engaged in a thorough, deliberative process and worked closely with their advisors, including A&M, to ensure that the proposed terms of the KEIP are reasonable and in line with competitive practice for companies in chapter 11 that have undergone or contemplated some form of asset sale and/or tied incentives to other restructuring goals. *See* Hoeinghaus Decl. ¶¶ 8–9.

27.     The KEIP satisfies the requirements and mandates of the Bankruptcy Code. The Debtors consulted with outside advisors, including their restructuring advisor, A&M, and counsel, Kirkland & Ellis LLP, to ensure that the KEIP is market-based, consistent with competitive practices, and compliant with the Bankruptcy Code. With the assistance of their outside advisors, the Debtors developed incentive awards based on specific goals that align the KEIP Participants' interests with the objectives of maximizing value for the Debtors' estates and providing the highest possible recoveries to the Debtors' stakeholders.

## IV.     Overview of the KEIP Structure.

28.     The Debtors believe that appropriate, incentive-based compensation opportunities are an important tool to drive performance and maximize overall value. Thus, the Debtors evaluated the existing executive compensation programs with the benefit of independent oversight and guidance from A&M and their legal advisors, as discussed above. The proposed award opportunities reflect A&M's benchmarking analysis versus relevant market compensation data, the Debtors' performance relative to the targets in the KEIP, as well as a review of incentive-based compensation programs approved in other chapter 11 cases.

29.     The KEIP is multi-faceted, with incentive payouts earned based on the achievement of specifically defined restructuring goals. The KEIP contains the following primary design features:

11

- **KEIP Awards.** Each KEIP award will be a cash amount provided (to the extent earned based on performance) upon the conclusion of one of two performance periods. In the event of a Transaction, KEIP Participants will receive a cash payment upon confirmation of the plan. In the event of an Orderly Wind-Down, KEIP Participants will receive a cash payment upon confirmation of the plan in connection with the Orderly Wind-Down. Potential payments are based on achievement of specified metrics for each such performance period and subject to continued employment of the KEIP Participant through each such time (except as provided below).

- **Performance Periods.** The performance metrics will be measured over distinct performance periods for each metric. In the event of a Transaction, the KEIP award will be measured as of confirmation of the plan, with an outside date of September 30, 2023. In the event of an Orderly Wind-Down, the KEIP award will be measured as of confirmation of a plan reflecting the Orderly Wind-Down, with an outside date of December 31, 2023.

- **KEIP Payments.** Payments will be made as soon as practicable upon (i) the confirmation of a plan pursuant to a Transaction or (ii) confirmation of a plan in connection with an Orderly Wind-Down.

- **KEIP Payout Ranges.** The KEIP will provide for potential payments of 50 percent of target payment for threshold performance and 100 percent of target payment for target performance.

- **Performance Targets.** KEIP awards will be based on performance metrics tied to two potential restructuring transactions, either (i) a Transaction or (ii) an Orderly Wind-Down. Such awards are conditioned upon each KEIP Participant's full cooperation with all ongoing and future investigations, including those of federal and state governmental agencies or regulators and the Committee. The performance metrics consist of:

  - *Confirmation Metrics*. (i) target performance requires confirmation of a chapter 11 plan pursuant to a Transaction by September 30, 2023; and (ii) threshold performance requires confirmation of a plan pursuant to a Transaction after September 30, 2023, or confirmation of a plan of liquidation pursuant to an Orderly Wind-Down by December 31, 2023. For the Mining Executives, such metrics shall be weighted at 25% of each Participant's KEIP award. For Christopher Ferraro, such metrics are weighted at 75% of his KEIP award. For all other KEIP Participants, such metrics are weighed at 100% of their KEIP award.

  - *Mining Metrics*. For the Mining Executives and Christopher Ferraro, (i) target performance requires that the Debtors have 70,000 mining rigs hashing by June 30, 2023, and (ii) threshold

12

performance requires the Debtors have a minimum of 60,000 mining rigs hashing by June 30, 2023. For the Mining Executives, such metrics are weighted at 75% of each Participant's KEIP award. For Christopher Ferraro, such metrics are weighted at 25% of his KEIP award.

- ***Target Payouts.*** The target incentive payouts constitute the following percentages of the KEIP Participants' base salaries:

  - *Tier 1 Executives = 125%*

  - *Tier 2 Executives = 75%*

  - *Tier 3 Executives = 50%*

- ***Termination of Employment.*** If a KEIP Participant's employment is terminated by the Debtors without "cause," by the KEIP Participant for "good reason," or upon death or disability of the KEIP Participant, the KEIP Participant will be entitled to 100 percent of the KEIP payment that would otherwise have been earned for such performance period based on the percentage of the performance period the KEIP Participant was engaged by the Debtors. If a KEIP Participant's employment is terminated for any other reason (voluntary termination, termination by the Debtors for cause), any remaining unpaid portion of the KEIP payment will be forfeited.

30.    If approved, the KEIP would provide aggregate (for all KEIP Participants) threshold and target opportunities of approximately $1.43 million and $2.86 million, respectively, to be earned for performance through (a) confirmation of a chapter 11 plan pursuant to a Transaction, or (b) confirmation of a plan of liquidation pursuant to an Orderly Wind-Down, summarized as follows:

13

| Individual KEIP Values | | |
|---|---|---|
| **Participant** | **Threshold Award Opportunity** | **Target Award Opportunity** |
| Christopher Ferraro | $468,750 | $937,500 |
| Guillermo Bodnar | $187,500 | $375,000 |
| Oren Blonstein | $131,250 | $262,500 |
| Ron Deutsch | $120,000 | $240,000 |
| Trunshedda Ramos | $120,000 | $240,000 |
| Roni Pavon Cohen[4] | $119,625 | $239,250 |
| Adrian Alisie | $75,000 | $150,000 |
| Jenny Fan | $75,000 | $150,000 |
| Dave Albert | $70,000 | $140,000 |
| Quinn Lawlor | $62,500 | $125,000 |
| **Total Award Values** | $1.43 million | $2.86 million |

31.     The proposed KEIP awards are a reasonable, market-based approach and are justified under the circumstances of these chapter 11 cases. As set forth in the Hoeinghaus Declaration, the compensation opportunities will result in the KEIP Participants receiving at or below market compensation, on average, assuming target payouts under the program. *See* Hoeinghaus Decl. ¶¶ 20–21. As further set forth in the Hoeinghaus Declaration, the program's threshold cost of $1.43 million and target cost of $2.86 million are also reasonable in absolute terms when compared to aggregate annualized cost of key employee incentive programs approved in similarly sized chapter 11 cases, falling below the 25th percentile.

**a. Overview of Performance Targets.**

32.     Under the KEIP, awards are payable only upon the Debtors' achievement of certain targets, namely, (i) the confirmation of a chapter 11 plan pursuant to a Transaction or (ii) confirmation of a plan of liquidation pursuant to an Orderly Wind-Down. Achievement of the performance targets will require substantial effort from the KEIP Participants. The performance targets were developed carefully to ensure they are an appropriate "reach" to drive performance,

---

[4]     For purposes of calculating Roni Pavon Cohen's award, his base salary was converted from ILS to USD utilizing an exchange rate of 3.52 ILS = 1 USD.

on the one hand, but will not present unrealistic or unattainable goals, on the other hand—which would thwart the incentivizing nature of the program. The Debtors developed the performance targets in consultation with the Debtors' restructuring advisors and with an independent review of the total compensation award levels by A&M.

33.    The Debtors face severe business pressures as a function of the highly competitive and volatile landscape for the cryptocurrency market, as well as the challenges inherent to operating any business in chapter 11. This process has required a proactive approach by the KEIP Participants to engage extensively with customers and employees to ensure that such parties were kept apprised of the Debtors' restructuring transactions, goals, and strategies throughout these chapter 11 cases, and overall go-forward plan. The Debtors have been tirelessly working towards a value-maximizing transaction, with their customers and other stakeholders as the top priority throughout the process. Furthermore, the KEIP Participants have been actively working to assist the Debtors and their advisors with the administration of these chapter 11 cases, which has required countless hours of preparation, diligence responses, and meetings, including, but not limited to:

- receiving and reviewing nearly 300 diligence requests from the Committee, over 100 diligence requests from the U.S. Trustee, and producing over 100,000 documents;

- responding to over fifty requests from the Examiner and participating in numerous telephone and Zoom conferences with the Examiner;

- engaging in discussions and interviews with the Committee surrounding security policies and developed security protocols, which culminated in the security stipulation;

- responding to litigation and proceedings related to the chapter 11 cases, including employment matters and contract assumption and rejection analyses;

- reviewing information related to the Debtors' monthly operating reports required under the Bankruptcy Rules and U.S. Trustee Guidelines;

- overseeing the termination and departure procedures for over 500 employees;

- motivating and retaining employees in the course of these chapter 11 cases; and

- reopening custody withdrawals from the Debtors' platform.

34.     The performance targets will therefore require the KEIP Participants to continue to work effectively alongside the Debtors' advisors to achieve an overall value-maximizing transaction.

35.     The Debtors do not believe that KEIP Participants can achieve the performance targets simply by "showing up."  The targets fixed by the KEIP are tailored to incentivize the KEIP Participants to continue playing a key role in the Debtors' restructuring—to achieve maximum payout, the Debtors must confirm a chapter 11 plan pursuant to a Transaction by a specified deadline.  The KEIP Participants have the potential to drive significant upside, but it will require significant amounts of hard work and dedication.  The incentives created through their proposed KEIP are an important tool to achieve a favorable result for the benefit of all stakeholders.

### Basis for Relief

**I.      The KEIP Should be Approved Pursuant to Sections 363(b) and 503(c) of the Bankruptcy Code.**

**A.      The KEIP Is a Sound Exercise of the Debtors' Business Judgment.**

36.     The KEIP is a sound exercise of the Debtors' business judgment.  Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, a debtor must show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment.  *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a 363(b) application must find a good business reason to grant such application); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983)

(requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (holding that entry into a sale agreement including certain mutual release provisions was an exercise of reasonable business judgment); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a Section 363(b) motion is "a good business reason"); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011) ("In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment.").

37.     Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside the ordinary course of business with the strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *see also In re Johns Manville Corp.* 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (finding that a "presumption of reasonableness attaches to a debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth).  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

38.     Implementing the KEIP is a sound exercise of the Debtors' business judgment and in the best interests of their estates and all stakeholders in these Chapter 11 cases.  The KEIP is the result of an independent analysis undertaken by the Debtors in conjunction with market guidance from A&M and the Debtors' other advisors.  The KEIP was subject to further review and approval

by the Special Committee, none of whom are current KEIP Participants.  The KEIP further addresses the Debtors' business need to properly incentivize performance from KEIP Participants to maximize estate value, and the Debtors believe that creating proper incentives to achieve this goal is an essential means to this end.  The KEIP Participants possess the skills, knowledge, and experience that are critical to the Debtors' ability to execute value-maximizing transactions for the benefit of all stakeholders in these chapter 11 cases.  The KEIP is therefore structured to drive performance from these key parties, by providing incentives to achieve targeted goals in a manner that will benefit all parties—particularly the Debtors' customers—if the performance targets are achieved.

39.     As discussed above, the KEIP sets a threshold proposed award opportunity of approximately $1.43 million and a target proposed award opportunity of approximately $2.86 million.  The Debtors' proposed metrics will drive performance at levels where all parties will benefit if achieved.  Absent the relief requested here, the KEIP Participants may be undercompensated and under-incentivized at a critical juncture in the Debtors' restructuring.  As set forth in the Hoeinghaus Declaration, incentives are an important tool for driving performance by key personnel and effectively align the interest of the senior management with those of the Debtors' stakeholders.  *See* Hoeinghaus Decl. ¶ 14.  In sum, the KEIP is an appropriate and market-based tool to drive business performance, and implementation of the KEIP is an appropriate exercise of the Debtors' business judgment.

**B.    The KEIP Satisfies Section 503(c) of the Bankruptcy Code.**

**1.    The KEIP Is an Incentive Plan in Compliance with Section 503(c)(1) of the Bankruptcy Code.**

40.     Although section 503(c)(1) of the Bankruptcy Code imposes substantial limitations on retention-based insider compensation programs, section 503(c)(1) does not apply to

18

performance-based incentive plans. *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012). In determining whether an employee bonus plan is incentivizing, courts consider whether the plan is "designed to motivate insiders to rise to a challenge or merely report to work." *Id.* This analysis further recognizes that all compensation, to some degree, has a retentive element. *In re Glob. Home Prods., LLC*, 369 B.R. 778, 786 (Bankr. D. Del. 2007) ("The fact . . . that all compensation has a retention element does not reduce the Court's conviction that [the] Debtors' primary goal [is] to create value by motivating performance."); *In re Dana Corp.*, 358 B.R. 567, 572 (Bankr. S.D.N.Y. 2006) ("However, as noted, this Court also opined that incentivizing plans with ***some*** components that arguably have a retentive effect do not necessarily violate section 503(c)."). Rather, the focus remains on whether the plan is, on the whole, incentivizing in nature by demanding a "stretch" or a "reach" before an award opportunity is achieved. *Id.* at 581.

41.   The KEIP is an incentive-based compensation program. The KEIP does not contain retention-based components, as KEIP Participants are not paid merely for maintaining their employment for a certain time period. Rather, the KEIP awards are available only if the Debtors confirm a chapter 11 plan pursuant to a Transaction or confirm a plan of liquidation pursuant to an Orderly Wind-Down. The KEIP Participants will not be eligible to obtain any award simply as a result of "showing up." *Cf. In re Hawker Beechcraft*, 479 B.R. at 315 (denying KEIP approval where lower threshold was attainable so long as debtor did not encounter "any 'whoopsies'"). Rather, the Debtors and, in particular, the KEIP Participants, must perform in order for even a minimum award opportunity to be earned.

## 2. The KEIP Is Justified by the Facts and Circumstances of the Chapter 11 Cases Per Section 503(c)(3) of the Bankruptcy Code.

42.    Under section 503(c)(3) of the Bankruptcy Code, courts consider several factors in determining whether a particular program is justified under the facts and circumstances of a particular case, including:  (a) whether the plan is calculated to achieve the desired performance; (b) whether the cost of the plan is reasonable in the context of a debtor's assets, liabilities, and earning potential; (c) whether the scope of the plan is fair and reasonable or discriminates unfairly among employees; (d) whether the plan is consistent with industry standards; (e) whether the debtor performed due diligence in investigating the need for the plan; and (f) whether the debtor received independent advice in performing due diligence, creating, and authorizing the plan. *See Global Home Prods.*, 369 B.R. at 786; *Dana Corp.*, 358 B.R. at 576–77.  No single factor is dispositive, and the Court has discretion to weigh each of these factors based on the specific facts and circumstances before it.  *See In re AMR Corp.*, 490 B.R. 158, 166 (Bankr. S.D.N.Y. 2013) ("[S]ection 503(c)(3) gives the court discretion as to bonus and incentive plans, which are not primarily motivated by retention or in the nature of severance." (quoting *Dana Corp.*, 358 B.R. at 166)).

43.    In this case, the Debtors submit that consideration of such factors supports approval of the relief requested:

- *The KEIP Is Structured to Achieve the Desired Performance.*  The KEIP incentivizes the Debtors' leadership team to achieve value-driving restructuring targets.  As discussed above, achieving the performance targets will require substantial efforts from the KEIP Participants to ensure the Debtors receive the most value-maximizing transaction, notwithstanding the challenging and volatile landscape in the current cryptocurrency market.  The performance targets also require the KEIP Participants to fully cooperate with all ongoing or future investigations, including, but not limited to, investigations by federal or state governmental agencies or regulators and the Committee.

- ***The Cost of the KEIP Is Reasonable.***  The KEIP will cost a total of approximately $1.43 million at threshold payout levels and $2.86 million at target payout levels, assuming targeted performance is actually achieved; by comparison, the Debtors' prepetition assets were approximately $4.4 billion. As set forth in the Hoeinghaus Declaration, the KEIP's proposed cost is a reasonable, market-based approach that is consistent with award opportunities approved in comparable chapter 11 cases, and the KEIP Participants' target total direct compensation will remain approximately at or below the market median compensation levels.  *See* Hoeinghaus Decl. ¶ 21.

- ***The KEIP is Fair and Reasonable.***  The KEIP Participants are senior management and key employees, the very people who are driving the Debtors to achieve the goals outlined in the KEIP—rapid confirmation of a Plan and the successful completion of a restructuring transaction that will ensure the Debtors' stakeholders receive the greatest possible recovery.

- ***The KEIP Provides Incentives That Are Market-Based.***  The KEIP Participants are currently receiving only their base salaries.  Without these incentive opportunities, their compensation will lag their market opportunities by a massive amount.  *See* Hoeinghaus Decl. ¶¶ 20–21.

- ***The KEIP is Consistent with Industry Standards.***  A&M worked with the Debtors' advisors to ensure that the KEIP is similar in structure and scope to those of other companies in similar situations.  *See* Hoeinghaus Decl. ¶ 15.  In analyzing the Debtors' needs and circumstances, A&M relied on its experience formulating employee incentive plans for comparable organizations, and based on its extensive familiarity with corporate restructuring pay practices broadly within a variety of comparable industries, the Debtors' proposed total compensation is reasonable and within industry standards.  *See* Hoeinghaus Decl. ¶ 3.  A&M thus concluded that the design, structure, and award opportunities available under the KEIP are reasonable and consistent with market standards.  *See* Hoeinghaus Decl. ¶ 22.

- ***The Debtors Were Duly Diligent.***  The Debtors, with the assistance of A&M and their restructuring advisors, performed considerable diligence on their employees' existing compensation levels and market comparable data.  As a result of these efforts, the Debtors concluded that: (a) it was critical to establish the KEIP to ensure the competitiveness of the Debtors' compensation practices and maximize overall value of their estates; (b) the KEIP is reasonable and consistent with market practice and industry standards; and (c) the KEIP is appropriately tailored to incentivize outperformance of senior executives, thus positioning the Debtors to achieve the most value-maximizing restructuring transaction.  Furthermore, the Debtors reviewed the KEIP Participants' trading history on the Debtors' platform consistent with the Debtors' approach in the Key Employee Retention Program to determine the KEIP Participants' eligibility to participate in the KEIP.

21

- ***The Debtors Developed the KEIP with Independent Advice and Oversight.***
  The Debtors actively sought input from their legal and financial consultants
  during the KEIP development process and hired and consulted with A&M for
  its specific compensation-related expertise.

44.    For these reasons, the KEIP is a proper exercise of the Debtors' business judgment,

is justified by the facts and circumstances of these chapter 11 cases, and satisfies the requirements

of section 503(c)(3) of the Bankruptcy Code.  The KEIP will incentivize the KEIP Participants to

achieve the restructuring results needed to successfully steer the Debtors through these chapter 11

cases and maximize value for the benefit the Debtors' stakeholders.  Accordingly, the Debtors

respectfully request that the Court enter an order approving and authorizing the Debtors to

establish the KEIP and pay amounts owed thereto.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

45.    To implement the foregoing successfully, the Debtors request that the Court enter

an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the fourteen-day stay period

under Bankruptcy Rule 6004(h).

### Motion Practice

46.    This Motion includes citations to the applicable rules and statutory authorities upon

which the relief requested herein is predicated and a discussion of their application to this Motion.

Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### Notice

47.    The Debtors will provide notice of this Motion to the following parties or their

respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c)  the United States

Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the

offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and

Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy

Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

48.     No prior request for the relief sought in this motion has been made to this or any

other court.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: March 28, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING THE DEBTORS' KEY
## EMPLOYEE INCENTIVE PROGRAM AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) approving and authorizing the

Debtors' proposed key employee incentive plan (the "KEIP"), (b) authorizing the Debtors to make

payments to certain key senior management employees under the KEIP, and (c) granting related

relief, all as more fully set forth in the Motion, and the Hoeinghaus Declaration; and this Court

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* from the United States District Court for the Southern District of

New York, entered February 1, 2012; and this Court having the power to enter a final order

consistent with Article III of the United States Constitution; and this Court having found that venue

of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court

having found that the relief requested in the Motion is in the best interests of the Debtors' estates,

their creditors, and other parties in interest; and this Court having found that the Debtors' notice

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used in this Order not defined have the meanings given to them in the Motion.

of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to sections 363(b)(1) and 503(c) of the Bankruptcy Code, the KEIP is approved.

3.      The Debtors are authorized, but not directed, to implement the KEIP and make the payments contemplated thereunder at the times specified in the Motion.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

5.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE