UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |

### ORDER GRANTING THE DEBTORS'
### MOTION FOR BID PROTECTIONS AS MODIFIED

Pending before the Court is the motion (the "Motion," ECF Doc. # 2151) of the above captioned debtors and debtors in possession (collectively, "Celsius" or the "Debtors"), for entry of an order approving certain Bid Protections (as defined below) for the Debtors' proposed plan sponsor NovaWulf Digital Management, LP ("NovaWulf" or the "Plan Sponsor").  Attached to the motion as Exhibit A is the proposed order and as Exhibit B is the plan sponsor agreement (the "Plan Sponsor Agreement."  The Debtors also filed the Declaration of Marc D. Puntus in support of the Motion (the "Puntus Declaration," ECF Doc. # 2152.)  The Objection Deadline was March 14, 2023.  The following parties filed objections: The United States Trustee (the "UST" and her objection the "UST Objection," ECF Doc. # 2218); Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively, the "Series B Preferred Holders" and their objection the "Series B Objection," ECF Doc. # 2229), the Ad Hoc Group of Borrowers (the "Borrower Group," and their objection, the "Borrower Objection," ECF Doc. # 2256), Victor Ubierna de las Heras (the "Ubierna" and his objection the "Ubierna Objection," ECF Doc. # 2236.)  Ignat Tuganov, through his attorneys, filed a response and joinder (the "Tuganov Joinder," ECF Doc. # 2224) to the UST Objection.  The Official Committee of Unsecured Creditors (the "Committee") filed a statement in support of the Motion

(the "Committee Statement," ECF Doc. # 2302.) The Debtors filed a Reply (the "Reply, ECF Doc. # 2297.)

The Motion originally sought to provide NovaWulf with a break-up fee of $5 million (the "Break-Up Fee") and expense reimbursement of up to $15 million dollars ("Expense Reimbursement," and together with the Break-Up Fee the "Bid Protections"). (Motion ¶ 7.) In their Reply, the Debtors noted that they negotiated down the Expense Reimbursement to $13 million. (Reply ¶ 2.)

The Court held a hearing on the Motion on March 23, 2023. At the hearing the Court expressed concerns that since the Expense Reimbursement would be payable in the event that the NovaWulf or the Sponsor were not able to become regulatorily compliant, the structure of the Bid Protections put all the regulatory risk on the Debtor's estate and none of the risk on NovaWulf. (*See*, *e.g.*, March 23, 2023 Hr'g Tr. 69:16–20 (ECF Doc. # 2317).) Because of this concern, the Court directed securities regulators to file statements with respect to the Motion by Tuesday, March 28, 2023, at 12:00 P.M., and took the Motion under submission. (*Id.* at 87:22–88:2.) If the regulators expressed serious concerns that the proposed plan was not feasible from a regulatory perspective, the Court was reluctant to approve $13 million in expense reimbursement to a proposed Plan Sponsor. (*See id*. at 86:1–3 ("$13 million is a lot of money and if it turns out it's a nonstarter . . . that's . . .money out from the estate").)

Three statements were filed. First, the U.S. Securities and Exchange Commission ("SEC") filed a statement (the "SEC Statement," ECF Doc. # 2322). The SEC Statement indicated that the SEC is not aware of any published SEC guidance that addresses whether an expense reimbursement and/or breakup fee for a bidder are appropriate where the proposed transaction is contingent on obtaining regulatory approvals. (SEC Statement at 3.) The SEC further noted that it did not have enough facts at the time to fully evaluate whether the proposed plan would be

2

regulatory compliant. (*Id.*) The New Jersey Bureau of Securities (the "Bureau") filed a statement (the "NJ Statement," ECF Doc. # 2318) noting that it does not have sufficient information to determine whether the plan will be regulatory compliant, but that the plan terms outlined thus far show there is a path to regulatory compliance. (NJ Statement ¶ 3.) In particular, the NJ Statement notes that the Debtors have shared a list of various licenses already held by proposed entity partners. (*Id.*) Finally, the National Association of Attorneys General filed a statement (the "NAAG" and their statement, the "NAAG Statement," ECF Doc. # 2325) joined by the states of Alabama, Arkansas, California, District of Columbia, Hawaii, Maine, North Dakota, Oklahoma, Tennessee, Texas, Vermont, Washington, and Wisconsin (collectively, the "States"). The NAAG and the States reserve all rights to object to the plan, but the NAAG Statement notes that the States are not currently aware of any specific issues in the general plan outline that would inherently preclude the plan from being regulatory compliant. (NAAG Statement ¶ 6.) The NAAG Statement specifically notes that the States are not asking the Court to deny the Motion. (*Id.*) In sum, while all the regulators reserve rights to object to the plan, none of the statements identified regulatory concerns that doomed the Debtors' proposed plan or asked that the Court deny the Motion.

Following the filing of the regulator statements, the Debtors filed a statement (the "Debtor Statement," ECF Doc. # 2326) regarding the Motion. The Debtor Statement notes that the Debtor and NovaWulf are prepared to delay approval of $5 million, out of the proposed $13 million Expense Reimbursement, until the disclosure statement has been approved by the Court. (Debtor Statement ¶ 4.) The Debtor Statement notes that this would limit the Debtors' exposure regarding the Expense Reimbursement until the Plan process has advanced materially toward confirmation and all stakeholders and regulators have had the opportunity to review and comment on the disclosure statement. (*Id.*)

Since the regulators have not identified any immediate threats to the plan's regulatory compliance, and since NovaWulf is willing to delay part of the Expense Reimbursement until the

3

Disclosure Statement has been approved and a regulatory framework is more certain, the Court is satisfied that the proposed Bid Protections, as modified, are proper.

Further, the Debtors have otherwise satisfied the requirements for court approval of bid protections. The court in *Integrated Resources* adopted a three-part test for evaluating break-up fees: (1) is the relationship of the parties who negotiated the breakup fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; and (3) is the amount of the fee unreasonable relative to the proposed purchase price. *See In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992). Here, all three elements are satisfied. First, NovaWulf is not an insider. (*See Debtors' Statement With Respect to the Status of the Debtors' Chapter 11 Plan Process* (ECF Doc. # 2066), Exhibit A, at 4 (noting there will be no Celsius founder involvement or relationship).) Second, there is no evidence that the Bid Protections will hamper bidding. The Puntus Declaration attests that the Bid Protections will allow the Debtors to shop the stalking horse bid to get a potentially higher bid, while still compensating NovaWulf for the risk, and expenses, it is undertaking to enter in the Plan Sponsor Agreement. (Puntus Declaration ¶ 21.)

Finally, the proposed fee amounts are reasonable. While certain of the objectors raised concerns that the proposed Bid Protections ran afoul the guideline that bid protections should be no more than 3% of the total consideration offered, the Court rejects those arguments. (*See, e.g.*, UST Objection at 8.) Such objectors argued that the Bid Protections comprised well over 3% of the proposed cash consideration of $45 million. (*Id.*) But given the complexity of the transaction and the volume of assets that NovaWulf will control, the Court concludes that it would be inappropriate to determine the reasonableness of the fee by comparing it to NovaWulf's cash payment of $45 million. At the hearing, Mr. Puntus testified that the transaction would involve a billion-and-a-half to $2 billion in value, such that the proposed Bid Protections were reasonable. (March 23, 2023 H'rg Tr. 21:18–24.) The Court agrees.

The rest of the objections largely take issue with specific terms of the proposed plan. (*See, e.g.*, Ubierna Objection ¶ 7 (asking that the Court require the Debtors to disclose specific plan terms).) Such arguments are expressly reserved for the disclosure statement and plan confirmation hearings but are not relevant to the Motion at hand. Accordingly, the objections are **OVERRULED**. The Debtors' proposed Bid Protections as modified are as follows: a Break-Up Fee of $5 million and Expense Reimbursement up to $8 million, with an additional $5 million of Expense Reimbursement to be subject to further Court approval following the approval of the disclosure statement. These Bid Protections are **APPROVED.** Within seven (7) days from the date of this Order, counsel for the Debtors, the Committee, and the UST shall confer and submit any further order required to grant the relief requested in the Motion as modified consistent with the terms of this Order,

**IT IS SO ORDERED.**

Dated:  March 30, 2023
        New York, New York

                                        /s/ Martin Glenn
                                    MARTIN GLENN
                            Chief United States Bankruptcy Judge