# EXHIBIT C

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 22-10964-mg

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   CELSIUS NETWORK LLC,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  February 6, 2023

17                  1:59 PM

18

19

20

21  B E F O R E :

22  HON MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO: KS

Page 2

1   HEARING re Hybrid Evidentiary Hearing Using Zoom for

2   Government RE: Debtors' Motion (a) establishing certain

3   dates and deadlines governing the briefing and resolution of

4   the legal issue against which Debtor entities account

5   holders have claims on account of cryptocurrency deposited

6   on the Debtors' platform. (Doc ##1338, 1382, 1552, 1592,

7   1619, 1631, 1729, 1747, 1795, 1796, 1797, 1798, 1799, 1953,

8   1955, 1960 to 1962, 1965, 1986 to 1991)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    KIRKLAND & ELLIS LLP

4        Attorneys for the Debtor

5        601 Lexington Avenue

6        New York, NY 10022

7

8    BY:  CHRIS KOENIG

9

10   MILBANK, TWEED, HADLEY & MCCLOY LLP

11       Attorneys for Series B Preferred Holders

12       55 Hudson Yards

13       New York, NY 10001

14

15   BY:  ANDREW LEBLANC

16

17   WHITE & CASE LLP

18       Attorneys for Unsecured Creditors' Committee

19       1221 Avenue of the Americas

20       New York, NY 10020

21

22   BY:  SAM HERSHEY

23

24

25

**Page 4**

1   ALSO PRESENT IN THE COURTROOM:

2

3   JOSH MESTER

4   CHRISTOPHER KOENIG

5   ELIZABETH JONES

6   GRACE BRIER

7   JAMES RYAN

8   JUDSON BROWN

9   LEAH HAMLIN

10  NIMA MALEK KHOSRAVI

11  ROSS KWASTENIET

12  TANZILA ZOMO

13  DANIELLE WALKER

14  ROBERT ORREN

15  TERENCE JOHN MCCARRICK

16  ANDREW LEBLANC

17  DENNIS DUNNE

18  ISHMAEL TAYLOR.KAMARA

19  JORDYN PAPERNY

20  MELANIE WESTOVER YANEZ

21  NELLY ALMEIDA

22  RHODELY VALLON

23  CLAIRE O'BRIEN

24  FAITH GAY

25  DAVID TURETSKY

Page 5

1   KEITH NOYES

2   LUCAS CURTIS

3   MICHAEL JAOUDE

4   SAM HERSHEY

5   SHARA CORNELL

6

7   ALSO PRESENT TELEPHONICALLY:

8   ARTUR ABREU

9   DAVID J. ADLER

10  YOHANNES AFEWORK

11  KATHERINE AIZPURU

12  NELLY ALMEIDA

13  RICK ARCHER

14  BRIAN BARNES

15  CHRIS BECIN

16  EDWARD G. BIRCH

17  OCTAVE J. BOURGEOIS

18  GRACE BRIER

19  JOHAN BRONGE

20  JUDSON BROWN

21  MARK BRUH

22  CHRISTOPHER COCO

23  AARON COLODNY

24  MICHAEL CONLON

25  KAREN CORDRY

Page 6

1    SHARA CLAIRE CORNELL

2    CARL COTE

3    CAMERON CREWS

4    LUCAS CURTIS

5    THOMAS DIFIORE

6    TRISTAN LUIS DIAZ

7    SCOTT DUFFY

8    DENNIS DUNNE

9    SIMON ELIMELECH

10   JAMES ENGEL

11   DAVID AVERY FAHEY

12   FORREST L. FORMSMA

13   DEBORAH FRANKEL

14   DANIEL FRISHBERG

15   REBECCA GALLAGHER

16   CHRISTOPHER GASTELU

17   FAITH GAY

18   BRADLEY GIARDIELLO

19   LEAH HAMLIN

20   IMMANUEL HERRMANN

21   SAMUEL P. HERSHEY

22   LUCAS HOLCOMB

23   JASON IOVINE

24   JANKO JANKOVIC

25   MICHAEL JAOUDE

1    TIM JOHNSON

2    ELIZABETH JONES

3    GREG KACZKOWSKI

4    NIMA MALEK KHOSRAVI

5    GREGORY A. KIESER

6    BRYAN KOTLIAR

7    ROSS M. KWASTENIET

8    JOSEPH LAILA

9    CATHY LAU

10   VINCENT EDWARD LAZAR

11   OLEKSANDR LEONENKO

12   JESSE LUNCH

13   SARAH BETH MARONPOT

14   CHASE MARSH

15   BRIAN S. MASUMOTO

16   TERENCE JOHN MCCARRICK

17   BRIAN T. MCGARRY

18   KYLE MCKUHEN

19   JOSHUA MESTER

20   LAYLA MILLIGAN

21   PATRICK JAMES NASH

22   KEITH NOYES

23   CLAIRE O'BRIEN

24   LAWRENCE C. PORTER

25   SIDDHARTH PANDEY

Page 8

1   JORDYN PAPERNY

2   SHAWN P. PARPART

3   GREGORY F. PESCE

4   RICHARD PHILLIPS

5   SHOBA PILLAY

6   AMELIA POLLARD

7   ANNEMARIE V. REILLY

8   LINDA RIFFKIN

9   MARK ROBINSON

10  JAMES RYAN

11  ABIGAIL RYAN

12  JIMMY RYAN

13  ARACELI SANCHEZ

14  DAVIE SCHNEIDER

15  NOAH M. SCHOTTENSTEIN

16  WILLIAM D. SCHROEDER

17  JENNIFER SELENDY

18  CALIN THOMAS ST. HENRY

19  NIKHIL SURI

20  ISHMAEL TAYLOR-KAMARA

21  DAVID TURETSKY

22  VICTOR UBIERNA DE LAS HERAS

23  RHODELY VALLON

24  EZRA VAZQUEZ-D'AMICO

25  TONY VEJSELI

1   DANIELLE WALKER

2   CAROLINE WARREN

3   CARL N. WEDOFF

4   MELANIE WESTOVER YANEZ

5   KEITH WOFFORD

6   MER FARUK YAZ

7   ANNE YEILDING

8   ANDREW YOON

9   JEFFREY ZATS

10  TANZILA ZOMO

11  EMMANUEL ALBINO

12  SAMEER ALIFARAG

13  JASON AMERSON

14  JOSEPH AVINO

15  NEGISA BALLUKU

16  ROBERT BEAULAC

17  ANDREW BEGANSKI

18  HUGH BELLAMY

19  BRIANNA B. BILTER

20  SOMA BISWAS

21  DUSTIN BOROFF

22  GIORGIO BOVENZI

23  PAUL BREUDER

24  EDUARDO BUENVIAJE

25  AMY CASTOR

1    CAROLYN CHAMBERLAYNE

2    RICKIE CHANG

3    DEAN CHAPMAN

4    RYAN CHEN

5    ROB CHRISTIANSEN

6    MARIA CHUTCHIAN

7    CHRISTINA CIANCARELLI

8    GEOFFREY CIRKEL

9    DAKEN COLEMAN

10   LAFAYETTE A. COOK

11   MIA COOPER

12   SCOTT CRAIG

13   JESSICA CRANE

14   OONA E. CRUSELL

15   DAVID DALHART

16   STEFFAN DAVIES

17   CHRISTOPHER DESANTIS

18   CURT DELL

19   ALI DEMIRTAS

20   ZARYN ALEXANDER DENTZEL

21   JASON DIBATTISTA

22   THOMAS DIRCKS

23   SUMIT DUA

24   DREW DUFFY

25   JOHN P. DZARAN

1   BEN EADES

2   JANELL ECKHARDT

3   DANIEL EGGERMANN

4   KEN EHRLER

5   PAUL LAWRENCE FABSIK

6   SCOTT FLAHERTY

7   FLORENCE FLANNIGAN

8   TODD B. GORDON

9   JASLEIGH GEARY

10   UTSAV GOSH

11   MATTHEW J. GOLD

12   RYAN GOLDSTEIN

13   UDAY GORREPATI

14   MICHAEL D. GRAUBERT

15   BRIAN P. GUINEY

16   KATHRYN GUNDERSEN

17   MIRA HAQQANI

18   LOREN HARMAN

19   JON HATCHER

20   PHILIPPE HEGI

21   JULIE HENRY

22   JEREMY C. HILL

23   KAITLYN HITTELMAN

24   MITCHELL HURLEY

25   ROBIN JACOBS

1   TYLER KALIN

2   DANIEL D. KAPLAN

3   BRIAN KARPUK

4   DIETRICH KNAUTH

5   TOMAS KOKSTER

6   ISAAC R. LLEWELLYN

7   HUONG LAM

8   MARK D. LARRABEE

9   JEAN-PHILIPPE LATREILLE

10   TYLER NATHANIEL LAYNE

11   JOSEPH LHRFELD

12   MARK LINDSAY

13   DAVID LOS ARCOS CARCAMO

14   JASON LU

15   DAVE K. MALHOTRA

16   KEVIN M. MANUS

17   DANIEL J. MAREE

18   JAMES ALEXANDER GEORGE MATTHEWS

19   KEITH MCCORMACK

20   MATTHEW MCDERMOTT

21   JAMES MCNAMARA

22   MATT MCNAMARA

23   ERIK MENDELSON

24   TIMON MITRAKAS

25   CATARIANA MOURA

Page 13

1    STEVEN MULLIGAN

2    ANVAR NURULLAYEV

3    REGINA A. OSBORNE

4    EVAN OCHNSER

5    ROBERT ORREN

6    DONALD L. POYNTER

7    MILIN PATEL

8    ARIE PELED

9    KENNETH L. PERKINS

10   KHAI PHAM

11   LUKE PORCARI

12   CRAIG V. RASILE

13   TIMOTHY REILLY

14   ANUBHAV RICHARDS

15   RICHARD K. ROBISON

16   JONATHAN RODRIGUEZ

17   ANDREW RUDOLPH

18   DON SMITH

19   JEFFREY S. SABIN

20   THERESE SCHEUER

21   JACK SCHICKLER

22   MARC SCHWARZ

23   DAVID SENES

24   RAFFAELE SENESE

25   JAVIER SETOVICH

1    DON H. SMITH

2    NATHAN SMITH

3    NOAH SOLOWIEJCZYK

4    PETER J. SPROFERA

5    GERD W. STABBERT

6    GEORGE STANBURY

7    PAUL STAPLETON

8    COURTNEY BURKS STEADMAN

9    BRIAN STOUT

10   VINCE SULLIVAN

11   CATHY TA

12   KEYAN TAJI

13   CHARLES THOMASHOWER

14   BRIAN A. TRAN

15   ELVIN TURNER

16   FEMKE VESSIES

17   GRAHAM WARK

18   MORGAN WILLIS

19   JASON S. WISEMAN

20   SARAH WYNN

21   LILY YARBOROUGH

22   NATHAN YEARY

23   TAK YEUNG

24   KAILA ZAHARIS

25   TANZILA ZOMO

Page 15

1   JARNO BERG

2   ROBERT M. KAUFMANN

3   RAKESH PATEL

4   AUSTIN STRATTON

5   GAVRYELLE X. HUANG

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               P R O C E E D I N G S

2               THE COURT:  Please be seated.  All right, Mr.

3    Koenig?

4               MR. KOENIG:  Good afternoon, Your Honor.  Chris

5    Koenig with Kirkland & Ellis for the Celsius debtors.

6    Before I get to the main agenda today, which is the Series

7    B litigation, this isn't an omnibus hearing.  We're not

8    going to provide a significant case update.  We'll do that

9    at our next omnibus hearing on the 15th.

10              The Debtors did file just a few minutes before the

11   hearing began a notice of a recent phishing attempt.  We

12   have filed these before.  Just want to bring it to everybody

13   who is listening's attention.  You know, it's a very serious

14   and concerning matter.

15              Whoever is engaging in this phishing attempt has

16   we believe used PDF editing software to take one of the

17   court orders that was entered in this case, the taxes order,

18   and modify it to falsely suggest that the Court ordered that

19   accountholders pay a fee, a court fee and a taxes fee.  And

20   then they list a cryptocurrency address.

21              This is a scam, a hoax.  Obviously with the number

22   of accountholders we have, it's going to be impossible for

23   us to reach all of them.  We're trying to do so.  We've

24   alerted the Committee, the U.S. Trustee, we alerted chambers

25   just before the hearing.  We're going to continue to look

1   into it, and we want to continue to look into it with the

2   other parties.  But we just wanted to -- we know a lot of

3   folks listen to these hearings, and so we wanted to make

4   sure that everybody was aware of this hoax.  And please, if

5   you become aware of any other phishing attempts, please make

6   the Debtors aware or the Committee aware.  We will file a

7   notice and bring it to everyone's attention.

8           THE COURT:  Thank you very much, Mr. Koenig.

9           In light of the fact that they appear to have

10  taken an order of the Court and used it in part, we will

11  also report it to the U.S. Marshall.  Ordinarily they

12  wouldn't get involved, the U.S. Marshall wouldn't be

13  involved.  But since they seem to be trying to invoke

14  something that the Court did, we'll make sure we call it to

15  their attention promptly as well.  It obviously has been a

16  repeat serious problem.  Please, as you have, call it to our

17  attention as soon as you become aware of any such efforts.

18  Okay?

19          MR. KOENIG:  Thank you, Your Honor.  To the extent

20  we become aware of any additional information, we will of

21  course pass it along to chambers so that it can go along to

22  the U.S. Marshalls as well as everybody investigates.

23          THE COURT:  Thank you very much.

24          MR. KOENIG:  The parties have discussed -- turning

25  to the main event, the parties have discussed, and I believe

Page 18

1    we have now resolved any outstanding objections to exhibits

2    for purposes of today's hearing.  So absent objection, I

3    would move the exhibits on the Debtor's witness and exhibit

4    list into evidence.  Maybe we should just get that out of

5    the way at the start of the hearing if that works.

6              THE COURT:  Let me make sure -- as you can see,

7    I've got a lot of paper sitting here.  Do you have an extra

8    copy of that exhibit list?  That would be very helpful to

9    me.

10             MR. KOENIG:  We do not.

11             THE COURT:  Because I have to find it among this -

12   - I didn't try to sort that out before I came on the bench.

13   Oh, is it in the -- these are all numbered binders.  Is it

14   in one of the numbered binders?

15             MR. KOENIG:  Your Honor, I have another one of

16   those binders.

17             THE COURT:  What I don't need is another set of

18   binders.

19             MR. KOENIG:  I have a copy of just the exhibit

20   list if that's helpful.

21             THE COURT:  That would be good.  Actually, you

22   have ten exhibits.  Is that it?

23             MR. KOENIG:  Pardon?

24             THE COURT:  You have ten exhibits on your exhibit

25   list?

1      MR. KOENIG:  That's correct.  And it was filed at

2  Docket Number 1986, Your Honor.

3      THE COURT:  Actually, I do have that.

4      MR. KOENIG:  Okay.  I'll cede the lectern to

5  whoever else -- you know, so that the other parties can

6  enter their exhibits as well.

7      MR. LEBLANC:  Your Honor, Andrew LeBlanc of

8  Milbank on behalf of the Preferred B holders.  Your Honor,

9  we have no objection to the admission of the Debtor's

10  exhibits 1 through 10.

11      THE COURT:  All right.  So to make it clear then,

12  the Debtor's exhibits 1 through 10 are admitted into

13  evidence.

14      (Debtor's Exhibits 1 through 10 admitted into

15      evidence)

16      MR. LEBLANC:  And, Your Honor, again, Andrew

17  LeBlanc of Milbank on behalf of the Series B Preferred

18  Holders.  We are offering from our exhibit list -- and, Your

19  Honor, I have a copy of it if you would like it.

20      THE COURT:  I think I have -- that one was right

21  in front of me.  Thirty-four exhibits?

22      MR. LEBLANC:  Thirty-four, although the last three

23  are placeholders, Your Honor.  So it's really through 31.

24      THE COURT:  Okay.

25      MR. LEBLANC:  And, Your Honor, we are offering --

1    to resolve the objections that were noted to the Court, we

2    have agreed not to offer Exhibit 2, Exhibit 3, and Exhibit

3    7.  So, Your Honor, we are offering Exhibit 1, 4 through 6,

4    and 8 through 31 for admission.

5            THE COURT:  All right.

6            MR. LEBLANC:  And we understand that with those

7    withdrawals, there isn't an objection, but I'll let the

8    other parties speak for themselves.  Thank you, Your Honor.

9            THE COURT:  Mr. Hershey, I take it -- just the

10   point -- does the Committee and the Debtors agree that the

11   noteholders' exhibits with the exception of 2, 3, and 7, can

12   be admitted into evidence?

13           MR. HERSHEY:  Good afternoon, Your Honor.  Sam

14   Hershey from the Committee.  Yes, we do agree with that.  I

15   just want to know, and we've discussed with the other

16   parties, we have an argument in our brief that exhibits are

17   relevant because they are the unexpressed intent of a

18   contract party.  But that I think probably goes to weight

19   and not to exclusion.  So as long as we reserve that

20   argument, we have no objection.

21           THE COURT:  Mr. Koenig, you have no objection.

22           MR. KOENIG:  For the record, Chris Koenig.  We

23   have no objection to the Preferred --

24           THE COURT:  So the Series B Noteholder Exhibits 1

25   through 30 with the exceptions of 2, 3, and 7, are admitted

1    into evidence.

2              MR. LEBLANC:  Thank you, Your Honor.  Andrew

3    Leblanc again.  1 through 31

4              THE COURT:  1 through 31, okay.  Sorry, 1 through

5    31 with the exceptions of 2, 3, and 7 are admitted into

6    evidence.

7              (Series B Noteholder Exhibits 1, 4 through 6, and

8              8 through 31 admitted into evidence)

9              THE COURT:  Okay, Mr. Hershey, go ahead.

10             MR. HERSHEY:  Thank you, Your Honor.  Again, for

11   the record, Sam Hershey from White & Case on behalf of the

12   Unsecured Creditors' Committee.

13             Your Honor, we have 13 exhibits on our exhibit

14   list.  We have received no objection, so we would like to

15   offer those exhibits into evidence at this time.

16             THE COURT:  Let me see and make sure I have that -

17   -

18             MR. HERSHEY:  And I have a copy of our list, Your

19   Honor.

20             THE COURT:  I have actually 12 exhibits.  Is that

21   --

22             MR. HERSHEY:  I believe it's 13, Your Honor.

23             THE COURT:  You'd better give me your list.

24   Because the binder that I just opened has -- lists 12

25   exhibits.  Okay.  Does everybody -- there's no objections as

Page 22

1    to the Committee's exhibits 1 through 13?

2            MR. LEBLANC:  Andrew LeBlanc, Your Honor.  No

3    objection.

4            THE COURT:  All right.  So the Committee's Exhibit

5    1 through 13 are admitted into evidence as well.  Okay, so

6    we've dealt with that.

7            (Creditors' Committee Exhibits 1 through 13

8            admitted into evidence)

9            THE COURT:  Go ahead, Mr. LeBlanc.

10           MR. LEBLANC:  Thank you, Your Honor.  Andrew

11   LeBlanc from Milbank on behalf of the Preferred B holders.

12           Your Honor, we discussed and I think what the

13   parties have agreed is we will start on the Series B

14   Preferred side.  I'm going to argue primarily from our side.

15   Mr. Mester is here on behalf of CDPQ, another preferred

16   equity investor, joined on our -- is in our brief as well

17   and may argue or may argue on reply.  But I expect that

18   we'll carry the laboring oar on it.  And then the Debtor's

19   and the Creditor's Committee will argue after us and then

20   they've agreed that we'll respond as one would normally do

21   in a motion like this.

22           Your Honor, the issue before the Court is the

23   question under a contract of who is liable.  The starting

24   point for that question under any contract is you would look

25   to is there a provision of the contract that dictates --

Page 23

1                    THE COURT:  Well, I am correct though that you're

2      not claiming that the noteholders' contract has any

3      provisions that either silo the obligations of CNL.  This

4      dispute as I read a lot of -- all of the paper is about a

5      contract that you're not a party to, your clients are not a

6      party to.

7                    MR. LEBLANC:  That is correct, Your Honor.  This

8      is a -- the question that the Court is seeking to resolve is

9      to resolve the question of the contract of the -- the terms

10     of use, under the terms of use which Celsius entities are

11     liable.

12                   THE COURT:  But just so -- to put a fine point on

13     this, you agree that there is nothing in the noteholders'

14     contracts with CNL that limits what liability CNL could

15     agree to undertake, agree to assume, correct?

16                   MR. LEBLANC:  That's correct, Your Honor.  We are

17     not suggesting that.

18                   THE COURT:  Okay.

19                   MR. LEBLANC:  We are arguing about the

20     interpretation of the terms of use as they were presented to

21     customers.  And in particular, really starting with Version

22     6 because the issues I think -- and all the parties

23     generally agree on this -- is from Version 6 through Version

24     7 and Version 8, the one that's applicable as of the

25     petition date, those versions are substantially unchanged

Page 24

1       from one another.

2                    THE COURT:  If I'm understanding all of this

3       correctly, you argue that one word in the middle of Section

4       25 of Version 8 of the terms of use is what excludes

5       liability of CNL for customer claims.  One word only in one

6       place, in the middle -- you know, in your brief, you include

7       like three or four lines of a very long Section 25, right?

8       And it's that one word that is the basis for your argument

9       that CNL does not haver liability for customer claims.

10                   MR. LEBLANC:  Your Honor, that is the crux of the

11      argument.  Let me -- and let me be clear why I say that's

12      the crux of the argument.  Because I do think you have to

13      consider the context.  Now, there's other language in

14      Section 25.  It starts by --

15                   THE COURT:  Well, a lot of words in Section 25.

16                   MR. LEBLANC:  There's a lot of words.

17                   THE COURT:  Neither -- none of you put all of

18      Section 25 in your briefs.

19                   MR. LEBLANC:  We didn't, Your Honor --

20                   THE COURT:  When I went back and looked at all of

21      Section 25, here is this one word in the middle of this very

22      long paragraph.

23                   MR. LEBLANC:  Right.  But that word is the word

24      "affiliate".

25                   THE COURT:  I understand.

1                  MR. LEBLANC:  And it's in the very sentence that

2       excludes -- that defines what parties are excluded from

3       having liability under the terms of use.  The rest of that

4       section deals with -- the first two sentences, for example,

5       preclude parties from having punitive damages claims or

6       special damages claims.  It's all about the limitations on

7       liabilities that Celsius would have to its customers.

8                  THE COURT:  Let me ask this other -- and I do want

9       to hear -- I think this is a tough issue.  I don't have --

10      I'm not ruling from the bench, let me make it clear to

11      everybody.

12                 If Mr. Machinsky committed fraud, which seems to

13      be quite strongly alleged in the examiner's report and

14      elsewhere, Section 25 would not limit liability of CNL for

15      fraud claims.

16                 MR. LEBLANC:  Your Honor, I believe it would --

17                 THE COURT:  Really?  Where?

18                 MR. LEBLANC:  Under --

19                 THE COURT:  You didn't brief that.

20                 MR. LEBLANC:  We didn't, Your Honor.  The question

21      is under the terms of use -- Your Honor is talking about a

22      claim that would be brought under -- not under the terms of

23      use.

24                 THE COURT:  No.  I am saying -- you know, I've

25      heard from day one in this case about alleged misstatements

1   by Mr. Machinsky, among others, but mostly by Mr. Machinsky.

2   He was the head of CNL, right?

3          MR. LEBLANC:  He was.  He was the head of LLC and

4   --

5          THE COURT:  Okay.

6          MR. LEBLANC:  And of CNI, the parent entity, yes.

7          THE COURT:  And if he committed fraud, if he was

8   chairman of CNL and he committed fraud, actionable fraud,

9   Section 24 of the Terms of Use would not limit or -- would

10  not limit the ability of customers to assert and recover

11  claims against CNL for fraud, correct?

12         MR. LEBLANC:  If CNL committed fraud and was sued

13  for fraud, then I agree with you that Section 25 doesn't --

14  Section 25 is intended to limit the -- is intended to find

15  the contractual rights.

16         THE COURT:  It couldn't.  It couldn't limit --

17         MR. LEBLANC:  Agreed.

18         THE COURT:  -- CNL's liability for fraud.  Your

19  argument is it limits their liability for breach of

20  contract, but not for fraud, negligent misrepresentation,

21  RICOH.  I can't imagine all the claims that are going to get

22  asserted against Mr. Machinsky.

23         MR. LEBLANC:  And I think it's important, Your

24  Honor, to separate Mr. Machinsky from CNL.  And to be clear,

25  it's not -- and what I mean by that is those claims may be

Page 27

1    assertable against Mr. Machinsky, but it doesn't mean that

2    they're assertable against the mining company, against GK8.

3    Because it's important to recognize the Debtor's argument

4    here is that each and every entity in the corporate

5    structure is liable to customers contractually.

6            THE COURT:  Well, you don't -- do you have a claim

7    against Mining?

8            MR. LEBLANC:  We do not, Your Honor.  But to the

9    extent that Mining has value that doesn't owe that value to

10   customers that flows up the corporate chain, gets to CNL.

11   And if there's -- and if, as we assert and we believe is

12   clear, both the intent and the language of the contract is

13   that there is no customer claims at CNL, and that would

14   inure to the -- could inure to the benefit of the preferred

15   equity.

16           And let me be clear -- and I think it's an

17   important thing to say could.  Because I'm sure the Twitter

18   space is already blowing up about the arguments we're

19   making.  But to be clear, this is one of two very

20   significant issues.  And I think everybody acknowledges

21   that.  We believe that the right way to read this contract

22   is to conclude that contractually the only liability is to

23   LLC, the entity to which the obligations and the assets were

24   migrated.

25           THE COURT:  I understand that's your argument.  I

Page 28

1    just wanted to be clear that you're not contending that CNL

2    would not be liable for fraud claims, assuming they're

3    asserted and proved.

4              MR. LEBLANC:  That's certainly not part of this

5    argument, and we're not suggesting that, Your Honor.  But we

6    may defend CNL from a fraud claim were it brought --

7              THE COURT:  I'm sure you would try.

8              MR. LEBLANC:  -- if the Debtors didn't, Your

9    Honor.  But that's not the issue that's before the Court.

10   The brief legal issue is who has claims or which entities

11   are claims assertable against under the terms of use.  And

12   we've all briefed it in the same way, looking at the

13   contractual claim.

14             THE COURT:  I understand that.  I just wanted to

15   make sure we -- that you're all in agreement that it's got

16   nothing to do with whether CNL is liable for tort claims.

17             MR. LEBLANC:  We're not suggesting that, Your

18   Honor.  And let me take it one step further.  And this is

19   the point I was trying to make a moment ago, which is there

20   are two distinct issues.  One is the question of whether

21   there are claims against CNL.  There is also the issue of

22   the intercompany claims that Your Honor has already

23   acknowledged is not part of this proceeding.  That issue,

24   the extent to which there is and the size of any

25   intercompany claim we all concede that has to be an issue

Page 29

1   that is resolved.  And so were Your Honor to agree with us -

2   - and I would submit consistent with all of the evidence in

3   the record, were you to agree with us that it was never the

4   intent to create customer claims at CNL, we're not

5   suggesting that that means there's not an intercompany

6   claim.  That is an issue that is yet to be resolved and has

7   to be resolved.

8           THE COURT:  Your Honor, I have to say, Mr.

9   LeBlanc, the -- a surprising thing to me, not the only

10  surprising thing, but a surprising thing to me is that the

11  preferred holders' deal was not structured in such a way as

12  to silo off or cabin the potential liability or exposure of

13  CNL because I can -- it -- I can remember seeing plenty of

14  deals before I came on the bench where that was done.  And

15  I've seen litigation opinions where that was the key issue

16  where -- did you -- and I guess the answer is no evidence

17  has been offered by anybody to suggest that the preferred

18  holders sought an agreement from CNL that it would neither

19  guarantee nor incur any additional liability,

20  indemnification of subsidiaries or affiliates.  That's not

21  in your agreement.

22          MR. LEBLANC:  Your Honor, I can't speak to for

23  future whether there are covenants in there about the

24  future.  There was no covenant with respect to what existed

25  at the time.  I know that to be true.

1          THE COURT:  It also would be true that if there

2    were a Version 9 of the terms of use and Version 9 took out

3    the one word, affiliate, your argument would go away.

4          MR. LEBLANC:  If version --

5          THE COURT:  You would have had no control over

6    Celsius, CNL issuing Version 9 and taking that one word out.

7    That would do away with your argument.

8          MR. LEBLANC:  Your Honor, it would contractually.

9    But that would replace it with a series of other arguments.

10   And in particular -- and this is actually -- I think this

11   illustrates an important point, a critical, critical point.

12   I do not believe it to be disputed between the parties that

13   from Version 1, the initial creation of this company through

14   Version 5 that the only entity that was ever liable to

15   customers was the one entity that faced customers, which was

16   at that time CNL.  So no other affiliate was liable to

17   customers under every version of --

18          THE COURT:  Yeah, but if there had been any value,

19   it would flow up to CNL and it would all get sucked out at

20   CNL.

21          MR. LEBLANC:  But, Your Honor, there are other

22   entities that provided services to customers that may have

23   had their own separate third-party creditors.  That value

24   would not have inured to the benefit of customers.  And it

25   was set up very deliberately this way.  And the reason I say

1    it's not disputed is because the only argument that they

2    have as to why CNL and the -- and to be clear, it's not just

3    CNL.  CNL is an easy target.  But it's also GK8 and Mining.

4    And I don't think you can exclude --

5              THE COURT:  GK8, whatever value is going to flow

6    up to CNL is going to be sitting there.  And the question is

7    who gets it.  Do you get it?

8              MR. LEBLANC:  I'm not sure that's true, Your

9    Honor.  Because if the customers have claims against GK8 and

10   you are an individual creditor of GK8 --

11             THE COURT:  It's a free and clear sale.  Their

12   claims carry over to the proceeds from the sale.

13             MR. LEBLANC:  Mining.  If that's sold, same issue

14   there.  There are creditors of Mining.  And --

15             THE COURT:  I'm sure if anybody buys Mining,

16   they're going to want a free and clear sale order as well.

17   And then the issue is, Your Honor, the proceeds of the sale

18   will be subject to, you know, someone will have to figure

19   out whether they have claims against Mining.

20             MR. LEBLANC:  And, Your Honor, certainly CNL.  CNL

21   has its own creditors that are owed.  Those creditors are

22   going to be diluted by these customer claims if Your Honor

23   were to find, as the Committee is suggesting and the Debtor

24   is suggesting, that the customers share equally with them.

25             THE COURT:  They'll also be diluted by any fraud

Page 32

1   claims or any other claims against CNL.

2          MR. LEBLANC:  Right.  And they will be diluted by

3   intercompany claims.  But those at least -- those are the

4   claims that under the structure actually existed.

5          And, Your Honor, the reason I make the point about

6   the history here is I think that history is important

7   because the Debtors suggest that our suggestion that the

8   company would have structured itself in a way that only the

9   customer-facing entity was liable to customers, that that's

10  an absurd argument, that's exactly how this company operated

11  for its entire existence until the creation of Version 6.

12         And what happened in Version 6?  And the evidence

13  on this is uncontroverted.  The purpose of Version 6 was to

14  satisfy the U.K. regulator that CNL would no longer be the

15  customer-facing entity because it didn't want the UK --

16         THE COURT:  Go ahead.  No, finish your statement.

17         MR. LEBLANC:  It didn't want the U.K. entity to be

18  -- it was forbidding the U.K. entity from being a retail

19  customer-facing entity.

20         THE COURT:  What I didn't see in any of the briefs

21  was any evidence or argument that the U.K. regulators

22  insisted that CNL no longer have liability to customers.

23  They couldn't be the customer-facing entity.  But the fact

24  that LLC became the customer-facing entity doesn't answer

25  the question whether CNL continued to have liability.

1              The other side of it -- and I'm sure you'll

2      address this -- the Committee and the Debtors argue that

3      there was no written novation.  There is no -- I haven't

4      seen anything that said that yes they shifted the customer-

5      facing entity to LLC, but that doesn't -- I didn't see

6      anything that would say definitively yes, LLC assumed the

7      obligations to the customers.  Fully understand that.  But

8      what I didn't see is something that said, and CNL no longer

9      has liability to the customers.  Any liability they would

10     have, there's been a novation.

11             MR. LEBLANC:  Your Honor.

12             THE COURT:  Go ahead.

13             MR. LEBLANC:  I have responses to that.  Let me

14     just respond to that directly and I'll try to get back to

15     the other point I was making.

16             There is a document, Your Honor, that we cite in

17     our papers --

18             THE COURT:  The unsigned novation?

19             MR. LEBLANC:  Your Honor, and that's one of the

20     documents we actually didn't admit.  We -- that was what we

21     had prior to discovery in this case.  What we got was what

22     became of that novation agreement.  We got that in

23     discovery.  That's in our exhibit list.  Your Honor, I don't

24     know if you have -- we filed on the docket yesterday a slide

25     deck.

1           THE COURT:  I have it right here.

2           MR. LEBLANC:  I've got several copies here.

3           THE COURT:  No, I have a copy.  You already put a

4   copy here.

5           MR. LEBLANC:  Okay, great.  And, Your Honor, if

6   we've been -- if we could allow Jordan Paperny from our

7   office to screen share, we'll make sure that the people on

8   the Zoom can follow this.

9           THE COURT:  Yes.  Deanna.

10          CLERK:  Yes.  He is a co-host.

11          THE COURT:  Okay.

12          MR. LEBLANC:  And, Your Honor, to respond very

13  directly to your question, on Slide 12 of our deck, we

14  reference Exhibit 15 that's now been admitted Series B

15  Preferred Holders' Exhibit 15.

16          THE COURT:  Sure.

17          MR. LEBLANC:  That is what became of the novation

18  agreement.  That is signed by Mr. Machinsky and Mr. Leon on

19  behalf of CNL and LLC respectively.  That document expressly

20  says that they are assigning -- that LLC agrees to assume

21  the obligations and CNL is transferring the obligations and

22  the liabilities.

23          Now, we show on Slide 13 -- I'm sorry, Slide 12,

24  we show -- the recital is on the left side.  But, Your

25  Honor, I think it's worth -- in light of the importance of

1      this issue, I'm happy to go to the document itself.

2              So, Your Honor, if you have -- do you have you

3      exhibit binders there?  I apologize.

4              THE COURT:  Don't apologize.  It's okay.

5              MR. LEBLANC:  The secured holders' exhibit binder.

6              THE COURT:  Series B Preferred binder.  Which

7      exhibit?

8              MR. LEBLANC:  It is Exhibit 15, Your Honor.

9              THE COURT:  Fifteen, okay.

10             MR. LEBLANC:  Blissfully, this is a relatively

11     short --

12             THE COURT:  I've got it.  Okay.  It starts out by

13     saying Exhibit F.

14             MR. LEBLANC:  It does, Your Honor.  This was -- it

15     was attached as Exhibit F to our lawyer's declaration.

16             Your Honor, this is the asset transfer agreement.

17     And you can see on Page 127 of 158 that this document is

18     signed by Mr. Machinsky on behalf of CNL and Mr. Leon on

19     behalf of LLC.

20             THE COURT:  Yes.

21             MR. LEBLANC:  This is the document, if you go back

22     to Article 1.1 at the beginning, it says, "Upon the terms

23     and subject of the conditions set forth in this agreement

24     and effective upon the execution hereof, transferee --" and

25     that's LLC, "-- shall accept and assume from transferor --"

Page 36

1     that's CNL, "-- and transferor shall transfer and assign to

2     transferee the transferred assets and liabilities."  And if

3     you look, Your Honor, at the back, the last page with

4     writing on it, which is docket Exhibit 128 -- at Docket Page

5     128, transferred assets and liabilities.

6               THE COURT:  Wait, I'm not -- okay, 128.  Okay.

7     Yes, I see it.

8               MR. LEBLANC:  It's the page after the signature

9     page.

10              THE COURT:  Okay.

11              MR. LEBLANC:  Yes.  So, Your Honor, this is -- and

12    if you look at the draft novation, this is identical to it.

13    This just is the signed version which we had been unaware of

14    until the Debtor's production to us.

15              THE COURT:  Okay.

16              MR. LEBLANC:  They transfer all obligations

17    related to or resulting from the consenting user's use of

18    the Celsius app.  Then it goes on from there.  And they

19    transfer the business relationship, but customer lists, all

20    of the transferor's rights and the balances.  So this is the

21    document that evidences --

22              THE COURT:  But my question to you is it's one

23    thing to transfer -- when you get somebody else who agrees

24    they're going to become liable to the customers -- okay --

25    and I understand why CNL insisted, and perfectly

Page 37

1    appropriate, to say LLC, you're now agreeing you're liable

2    to all the customers.  But where is the language that says

3    that it's a novation and relieves CNL of all liability?

4              MR. LEBLANC:  Your Honor, that...

5              THE COURT:  It's one thing to transfer -- you

6    know, to say somebody else is going to be on the hook and

7    may be even primarily liable.  But what is it that absolves

8    CNL of the liability?

9              MR. LEBLANC:  Your Honor, what absolves CNL of the

10   liability, the reason is the entry by all customers into the

11   new contractual relationship with LLC.  And so the new

12   contract supersedes the prior contract.

13             THE COURT:  I understand, again, you're putting

14   all of the weight of your argument on the word affiliate in

15   the middle of a long Section 25.  But just to be clear,

16   there is nothing in Exhibit 15 that says that CNL is

17   absolved of liability to customers.  It says you, LLC, are

18   assuming those obligations, but it doesn't say that we, CNL,

19   will no longer be liable for it.  Am I correct?

20             MR. LEBLANC:  Not -- Your Honor, Exhibit 15 is not

21   a document with the customer.  So I agree with that.  But I

22   think it's important just to take --

23             THE COURT:  Whether it's a document with the

24   customers or not, as between CNL and LLC, they didn't enter

25   -- they didn't sign a document that says you, LLC, are

Page 38

1   liable to the customers.  We, CNL, are no longer liable.  I

2   understand.  You're absolutely right.  There would have to

3   be something with the customers that acknowledged that.  You

4   say that Version 6 through 8 in effect did that.  But

5   there's nothing in the agreement between CNL and LLC that

6   says we are absolved of liability to customers.

7            MR. LEBLANC:  Nothing in that agreement speaks to

8   the liability to -- I mean, it speaks clearly to the intent

9   of the parties who transferred the obligation, but it

10  doesn't -- that isn't designed to be a contract or a

11  communication to customers.  The communications to customers

12  come in the form of the communications to customers --

13           THE COURT:  But even as between -- you know, I

14  didn't read this whole thing.  But, you know, I don't know

15  whether there are any indemnification provisions, I don't

16  know whether there's any other theory of common-law

17  indemnification that would allow LLC to say yeah, we are

18  liable to the customers, but that doesn't mean you're no

19  longer liable to them as well, secondarily liable or

20  otherwise.

21           MR. LEBLANC:  Your Honor, this is the point that I

22  had held for a moment.  And this began with Your Honor

23  asking the question what's to stop them from taking

24  affiliates out of Version 9.

25           THE COURT:  Right.

1            MR. LEBLANC:  The answer is an independent

2    fiduciary acting for CNL would never do that.  No rational

3    company would assume liabilities that it doesn't have to

4    assume.  And what happened in this circumstance was the

5    company was directed by the U.K. FCA to have no contractual

6    relationship with customers.

7            THE COURT:  Where do I see that?

8            MR. LEBLANC:  Your Honor, you see that in the

9    direction agreement.

10           THE COURT:  Let me see the -- point it out to me.

11           MR. LEBLANC:  Your Honor, if you look at --

12           THE COURT:  That's what -- I didn't see -- I

13   understood that the financial regulator in the U.K. said you

14   can't be -- you are no longer going to be the customer-

15   facing entity.  Somebody else is going to be liable.  But

16   what I didn't -- what I want to see, it is important to me

17   if there's something where the regulator said and CNL can no

18   longer be liable to customers.

19           MR. LEBLANC:  Your Honor, if you look at our

20   slide, Page 10, that will refer -- and we can do the same

21   thing if we want to look at the exhibit behind it.

22           THE COURT:  Okay.  Give me a second.

23           MR. LEBLANC:  Yeah.

24           THE COURT:  Okay, slide page 10.

25           MR. LEBLANC:  And slide page 10, Your Honor, this

Page 40

1    is the direction agreement that was entered into with the

2    U.K. regulator and the migration plan that's part of that

3    direction agreement.  And we highlight at the very beginning

4    that Celsius -- this is what they're telling the regulators

5    that they're agreeing to do, and that is to notify all of

6    its existing customers of the migration of their customers'

7    contractual relationship to Celsius Networks LLC or UAB as

8    appropriate by the migration date.

9             THE COURT:  And what is it that says, and CNL

10   shall no longer have any liability to customers?

11            MR. LEBLANC:  Well, Your Honor, the --

12            THE COURT:  No, just -- is there anything?  Okay -

13   -

14            MR. LEBLANC:  I'll try to answer it.

15            THE COURT:  Go ahead.

16            MR. LEBLANC:  And the answer is -- the answer to

17   that question is the change to the terms of use and the

18   notification to customers -- the notification to customers

19   that their contractual relationship is now with LLC and

20   their rights and obligations are being transferred to

21   customers.  That's --

22            THE COURT:  Let me ask you this.  If they issued a

23   Version 9 and they took the word affiliate out, would it

24   violate the direction agreement with the FCL?

25            MR. LEBLANC:   I believe it would, Your Honor.

1           THE COURT: Why?

2           MR. LEBLANC:  Because the customers would have

3    liability -- would have a contractual relationship with CNL

4    and have claims against CNL.  And I think that's exactly

5    what the U.K. regulator was concerned about, that they

6    didn't want --

7           THE COURT:  Where does it say that?  Is it -- you

8    have a piece of paper from the FCA that says you, CNL, can

9    no longer have liability to customers?

10          MR. LEBLANC:  Your Honor, I think other than what

11   you're looking at, these -- and this -- it's important, Your

12   Honor.  This is from Roni Cohen-Pavon, who is one of the

13   drafters of the terms of use.  So he's telling the U.K.

14   regulator that we're migrating the customers' contractual

15   relationship from CNL to LLC.  And then he drafts the terms

16   of use.

17          THE COURT:  I understand that's what happened.

18   They made LLC the customer-facing entity.  It assumed all

19   the obligations.  But what I don't see, Mr. LeBlanc, is

20   where either the FCA or CNL with LLC said and we, CNL, will

21   no longer be liable to customers.  Why would the FCA -- why

22   would the FCA want to make sure that CNL was absolved of

23   customer liability?  I mean, I can understand that they

24   don't want CNL as the customer-facing entity, they want --

25   LLC was going to do it.  But what is it -- is there a

Page 42

1    written document from FCA?  Is there a regulation that FCA

2    issued that prohibited CNL from having customer liability?

3              MR. LEBLANC:  Your Honor, what we have with the

4    FCA is what we described, yes.

5              THE COURT:  This is it.  Okay.  Go ahead.

6              MR. LEBLANC:  There's also the migration --

7    there's a couple of documents in our exhibit list and in our

8    pleadings that we refer to.  There are communications

9    between the FCA and Roni Cohen-Pavon.

10             THE COURT:  And do any of those address the issue

11   of whether CNL would receive a novation of liability to

12   customers?

13             MR. LEBLANC:  They don't, Your Honor.  But this,

14   again, gets me back to the point.  Prior to -- because I

15   think Your Honor is focused on CNL.  And obviously we are

16   creditors there.

17             THE COURT:  That's what we are here about.

18             MR. LEBLANC:  Well, it is.  But the Debtor's

19   argument -- their plain language argument is not limited to

20   CNL.  It doesn't say that because CNL was obligated on

21   Versions 1 through 5 that they are continued to be obligated

22   on 6 through 8.  It says that the changes that were made in

23   Version 6 that are carried through to Version 8 made every

24   entity liable.  And without those changes, not every entity

25   would be liable because they have not asserted any basis for

Page 43

1    every other entity to be liable.  So that's what they're

2    hanging their hat on.

3          The problem with that is there is no rational

4    explanation, not a shred of evidence, not a document, not a

5    witness, no financial statement, no statement to the board

6    that says that as of Version 6, we are changing the way we

7    interact with our customers, that instead of one entity

8    being liable to customers within the entire Celsius family,

9    instead of one entity, now every entity is jointly and

10   severally liable to customers.  They didn't tell customers

11   that.

12          THE COURT:  Well, let me ask you this.  When they

13   put forth Version 6 to customers and asked them to check a

14   box, did Version 6 highlight that if you -- when you agree -

15   - if you don't agree, you can't do business with us.  When

16   you agree, CNL will be absolved of all liability and only

17   the -- the only party with liability to you as customers is

18   LLC?

19          MR. LEBLANC:  I believe it did, Your Honor.

20          THE COURT:  Where?  I'd like to see that.

21          MR. LEBLANC:  Yeah.  So, Your Honor, Slide 6 of

22   our deck.

23          THE COURT:  Okay.

24          MR. LEBLANC:  And it may be too small there.

25          THE COURT:  I can read it.

1          MR. LEBLANC:  Okay.  It's the middle box, Your

2     Honor.  This is the check the box.

3          THE COURT:  Sure.

4          MR. LEBLANC:  And I'm focused on the third one.

5     "I acknowledge that under the TOU, the services will be

6     provided to me by Celsius Networks LLC and that Celsius

7     Networks Limited shall transfer to Celsius Network LLC my

8     data, account balances, and its rights and obligations to

9     me.

10          THE COURT:  What that doesn't say -- it goes back

11     to this same point.  LLC assumed the obligations, but it

12     doesn't say that CNL is absolved of any liability to you.

13          MR. LEBLANC:  And, Your Honor, we disagree with

14     that, obviously.  The reason for that is Celsius operated in

15     a world where it had one entity that was customer-facing,

16     and that one entity had liabilities to customers.  And it

17     did that under Versions 1 through 5 with a limitation on

18     liability provision that is indistinguishable in relevant

19     part from the limitation on liabilities in Versions 6

20     through 8.

21          The Debtor's argument -- the limitation on

22     liability provision didn't change.  The Debtor's argument is

23     that when they took the steps that were required --

24          THE COURT:  Did it include the word affiliates?

25          MR. LEBLANC:  It did include the word affiliates.

 1    It excluded affiliates from liability.

 2              THE COURT:  Where do I find that?

 3              MR. LEBLANC:  The change to Version 6?

 4              THE COURT:  Where do I find Version 5 that said

 5    affiliates aren't liable.  I understand about officers,

 6    directors, agents, et cetera.  That's pretty common.

 7              MR. LEBLANC:  Just give me one second, Your Honor.

 8    So it's in --

 9              THE COURT:  Fitting affiliates in that line, in

10    the middle of it, that seems odd to me.

11              MR. LEBLANC:  It's in Exhibit 22, Your Honor.

12              THE COURT:  Okay.

13              MR. LEBLANC:  And the one issue is that Exhibit 22

14    has all of the terms of use.

15              THE COURT:  Oh, this is not -- yeah.

16              MR. LEBLANC:  So if you give me one second, I will

17    find --

18              THE COURT:  Okay.

19              MR. LEBLANC:  I will hope to find Version 4.  I

20    have the pages to Version 5.

21              THE COURT:  That's fine.

22              MR. LEBLANC:  So a redline of 5 to 6, Your Honor,

23    I've been told starts at Page 318.  So a redline shows the

24    changes from Version 5 to 6.

25              THE COURT:  Is that in the binder?

Page 46

1              MR. LEBLANC:  That's in the binder.  Page --

2              THE COURT:  Which tab?

3              MR. LEBLANC:  I'm sorry, all of this is in Tab 22.

4     There's 126 pages.

5              THE COURT:  Okay.  I've got nothing but a sheet

6     that says Docket Number 850.

7              MR. LEBLANC:  We were told Your Honor didn't want

8     ones that were so voluminous.

9              THE COURT:  That's fine.  Just bear with me.

10             MR. KOENIG:  Your Honor, if I may approach.  I

11    have a copy.

12             THE COURT:  You have a copy?  Thanks, Mr. Koenig.

13             Okay, all right.  Mr. Koenig has given me ECF

14    Docket 393 open to Page 318 of 1126.

15             And, Your Honor, I think if you go forward to Page

16    369 is where Section 25 --

17             THE COURT:  Hold on.  I'll flip to that.  Okay.  I

18    don't think so.

19             MR. LEBLANC:  Your Honor, the copy I have may not

20    have it right.  But, actually, Page 371 I think is -- yeah,

21    Page 371 has the section that begins with, "limiting the

22    generality of the foregoing".

23             THE COURT:  Yes.

24             MR. LEBLANC:  Okay.

25             THE COURT:  It doesn't begin, it's the...

Page 47

1          MR. LEBLANC:  Right.  It's in that paragraph.

2          THE COURT:  Fifth line down.  "Without limiting

3   the generality of the foregoing, in no event shall you have

4   any recourse, whether by setoff of otherwise, with respect

5   to our obligations to or against any assets of any person or

6   entity other than Celsius, including, without limitation,

7   any member, shareholder, affiliate, investor, employee.  And

8   it goes on from there.

9          THE COURT:  Right.  And this is my point.  And,

10   Your Honor, the argument that is made by the other side is

11   that what changed from Version 5 to Version 6 is not

12   anything relevant in this provision, but instead is in the

13   definition of Celsius.  Because this -- and we want to look

14   at the very beginning, Your Honor.  If you look back at 318,

15   this version did not define Celsius to include affiliates.

16          THE COURT:  It just says --

17          MR. LEBLANC:  It just says CNL.

18          THE COURT:  NO, it starts out -- well, I -- okay.

19   I see that's crossed out.

20          MR. LEBLANC:  This is the redline.  So you have

21   Celsius Network Limited was what it originally said.

22          THE COURT:  Correct.

23          MR. LEBLANC:  And it said, we, our, Celsius.

24   That's how it was defined.

25          THE COURT:  Yes.  Okay.

Page 48

1          MR. LEBLANC:  And so there isn't -- my point, Your

2     Honor, is this, that under every prior iteration of the

3     terms of use --

4          THE COURT:  That clearly it was there.

5          MR. LEBLANC:  (indiscernible) it was there.  And I

6     don't think, while it's not a stipulated fact, I don't know

7     that it is disputed that under every prior iteration of the

8     terms of use, affiliates were not in fact liable.  And that

9     includes Celsius Lending, for example, which did business

10    with customers through lending relationships.  That includes

11    Celsius Mining, which had become an entity prior to Version

12    5.

13         THE COURT:  I actually was curious about that.  So

14    if a customer had a -- you know, borrowed from Celsius

15    Lending and the customer accused Celsius Lending of a

16    breach, they wouldn't have had a claim against Celsius

17    Lending?

18         MR. LEBLANC:  Your Honor, they may have had a

19    separate contractual relationship, a borrowing relationship

20    with them.  But they would not have had a claim against

21    Celsius lending under the terms of use.

22         THE COURT:  Okay.

23         MR. LEBLANC:  Nor would they have had a claim

24    against Celsius mining, which existed at the time under the

25    terms of use.

Page 49

```
 1              THE COURT:  Okay.

 2              MR. LEBLANC:  And the point is that the question

 3    that we have never understood -- and the Debtors have

 4    offered -- they control the drafters of these terms of use

 5    who made the changes.  They're their employees.  They have

 6    not come to testify in a way that's consistent with their

 7    view to explain why when you went from Version 5 to Version

 8    6 to effectuate the migration that was required by the FCA,

 9    why when you did that did you change it, as they would

10    contend, to be liability by one entity to liability by all

11    entities?  And so while it's joint and several liability

12    presumably because customers can only recover once on their

13    claims, but they incurred conservatively $200 billion of

14    liabilities in one fell swoop without a single document

15    presented to any person that would ever suggest that.  And

16    not a document that -- not a document that existed at the

17    time, not a document that came after.  No reference.  They

18    didn't talk to a board member to say that just to be clear,

19    this is what we're doing when we make this change.

20              The reason, Your Honor, is that was never the

21    intent.  What was the intent?  The intent was to --

22              THE COURT:  You can't tell me what the intent is.

23    Nobody has offered proof of intent.

24              MR. LEBLANC:  Your Honor, I think the extrinsic

25    evidence proves the intent --
```

1            THE COURT:  What extrinsic evidence?

2            MR. LEBLANC:  Your Honor, the --

3            THE COURT:  Don't tell me what the intent was.

4    You can tell me what's on a piece of paper.

5            MR. LEBLANC:  Your Honor, the intent is what the

6    conclusion is in our view.  You look at the extrinsic

7    evidence --

8            THE COURT:  You can argue what the document says.

9            MR. LEBLANC:  Your Honor, that's what I'm doing.

10   So, for example -- and we've talked about some of these, but

11   there are others.

12           Every document leading up to it reflects the

13   intent to migrate the customer relationship from CNL to LLC.

14   This company operated in a world in which it only had the

15   customer-facing entity liable to customers.  That's how it

16   operated.  And what did it do?  It dealt with those

17   relationships between the Celsius entities through

18   intercompany agreements.

19           So in other words, they had -- and there's

20   evidence in this record about that being the very structure

21   that they engaged in here, because there is an intercompany

22   agreement between CNL and LLC that comes into place at the

23   same time that they executed the asset transfer agreement.

24           So what they do is they transfer the assets and

25   liabilities, all obligations to customers are transferred to

Page 51

1    LLC and then they enter into an intercompany agreement.

2              THE COURT:  Where do I find that?

3              MR. LEBLANC:  Your Honor, the intercompany

4    agreement, I believe it's -- I think it's Exhibit 16.

5              THE COURT:  Your Exhibit 16?

6              MR. LEBLANC:  Correct, Your Honor.  Our Exhibit

7    16, Series B Preferred Holders' Exhibit 16 is the

8    intercompany agreement.

9              THE COURT:  Yes.  What paragraph should I look at?

10             MR. LEBLANC:  Well, Your Honor, just -- this is an

11   intercreditor agreement that reflects that after they

12   transfer all of the assets, then LLC is going to send some

13   assets back to CNL for it to manage essentially, to operate.

14   It's a short agreement, but I'm not pointing to any

15   particular provision.  But I'm just talking about the

16   structure.

17             So what was intended there was -- let me not say

18   what was intended.  What the documents reveal is that upon

19   the migration of the customer relationship from CNL to LLC,

20   they moved the assets and obligations.  They told the

21   customers that's what they were doing, they told each other

22   that's what they were doing.  And then they moved assets

23   back to CNL to deploy in income-generating activities.  CNL,

24   for example, it was no longer a retail customer-facing

25   entity, but it continued to engage in a -- to have a

Page 52

1   deployment through an institutional loan portfolio, for

2   example, and it was involved in investing in its mining

3   operations.

4           So the intent was -- the documents reflect that

5   what the parties did, what CNL and LLC did is they migrate

6   the customer relationship and then they moved some assets

7   back with an intercompany relationship between them so the

8   customers who deposit their coins with LLC have a claim

9   against LLC.  And LLC in turn, if it has passed asset up to

10  CNL, has a claim against CNL to get those coins to the

11  extent that they need them.  That's the second part that I

12  mentioned at the beginning, which is the size of that

13  intercompany claim is something that has to be determined.

14          But, Your Honor, all of this I think leads to a

15  conclusion.  And then the additional evidence that we have

16  that I think is critical is the Debtors did not believe, or

17  at least the Debtor's own actions do not reflect that they

18  believed there were claims against all entities, which you

19  cannot reconcile their position today with there just being

20  a claim against -- at CNL.  It has to be against all

21  entities.  That's their argument.  That means it has to be a

22  claim against the mining entity as well.

23          And, Your Honor, the evidence shows that the

24  Debtors did not believe in real time that there was a claim

25  against the mining entity.

1           Your Honor, you've seen this before, but the

2     Mining S-1 agreement, we have a slide in this.  Let's see,

3     Page 13, Your Honor.

4           THE COURT:  Okay.

5           MR. LEBLANC:  And this refers to Series B

6     Preferred Holders' Exhibit 8, which is the Mining S-1.  This

7     is another document that's not in your binder, your chambers

8     --

9           THE COURT:  I'm looking on the screen.

10          MR. LEBLANC:  Okay.  And the Mining entity had a

11    balance sheet that they submitted a financial statement to

12    the SEC in this S-1.  In that, they do not reflect any

13    liability to customers, which is entirely inconsistent with

14    the Debtor's position.

15          Now, what the Debtors say -- and I think this is a

16    remarkable statement.  The Debtors in their reply say that

17    if they'd actually gone forward with the IPO, they would

18    have then amended the terms of use to eliminate Mining from

19    liability.  That's what they said.  That is a remarkable

20    statement.  Because what they're saying is we submitted to

21    the SEC in this S-1 a materially misleading financial

22    statement that did not reflect the financial condition of

23    the mining entity as it existed at that time.  And in doing

24    so, they -- but said but had we ever gone through with the

25    IPO, we would have corrected.

Page 54

1           Your Honor, I just don't think that's a credible

2     explanation.  I think what is far more credible is that

3     until this case started and the Committee started arguing

4     that the terms of use create liability at every entity, the

5     Debtors internally didn't believe that to be the case.  And

6     I say that because there's not a single document that is

7     consistent with that.  Every document is inconsistent with

8     that.  There aren't a ton of documents.  There were not a

9     lot of standalone financial statements for these companies

10    prior to the bankruptcy.  But this is one example of

11    something that was submitted to the SEC that is entirely

12    inconsistent with their current argument.  You cannot

13    reconcile this with their argument.

14          Your Honor, I do want -- there is -- Your Honor

15    had asked -- just one other example, Your Honor, in Exhibit

16    12.  So this is turning back to the question Your Honor had

17    asked about the communications with the regulators.  Do you

18    have Exhibit 12 there, Your Honor?

19          THE COURT:  I do.

20          MR. LEBLANC:  Your Honor, these are communications

21    with the U.K. regulators.  And if you look, Your Honor, at -

22    - if you look, Your Honor, at Page 6 and -- I'm sorry,

23    Internal Page 6, which is Page 100 of 158.  I apologize.

24          THE COURT:  Okay.  No, that's fine.

25          MR. LEBLANC:  And, Your Honor, you can see this at

Page 55

1    the top is an email from Roni Pavon responding to somebody

2    at the FCA.  And it says, "Please find our reference to

3    issues raised in your email below."

4              And at the bottom, in number three, Mr. Pavon

5    says, "Upon withdrawal and completion of the migration plan,

6    Celsius Networks Limited will have three main activities.

7    One, it will have control of assets that are attributable to

8    the accounts of users that did not agree to be migrated to

9    Celsius' non-U.K. affiliates and will continue to have a

10   debt relationship with those users with respect to

11   (indiscernible) assets, i.e. the rump of customers that it

12   has not transferred."

13             I think, Your Honor, that's entirely consistent

14   with the position that we've taken that they did intend to

15   not have a liability relationship with the customers.  There

16   is another reference that I think Your Honor makes the same

17   point.  And this comes at Page 110 of this same document.

18   And page 110 is part of the migration plan that Celsius

19   provided to the U.K. regulator.  So at Page 110.  You can

20   see if you look at Page 106, that's where the migration plan

21   itself starts.  And then this is the steps in the migration

22   plan.

23             And it says under Box A, "As noted above,

24   depending on the progress of the migration plan, additional

25   steps might need to be taken in connection with remaining

1   users.  Until such time, the remaining users' contractual

2   relationship will continue to be with Celsius Networks

3   Limited, who will continue to hold the liability to

4   remaining users on its balance sheet.

5          So again, Your Honor, I think all the evidence in

6   the record is consistent with the position that we have

7   taken, that the company in fact migrated those obligations

8   to Celsius LLC, had intended to do so, believed it had done

9   so, communicated to customers that it did so.

10          THE COURT:  But I -- the communication to the

11   customers is not all that clear, let's put it that way.  I

12   mean -- let me leave it at that.

13          MR. LEBLANC:  Well, Your Honor, I think if you're

14   a customer and you're told that --

15          THE COURT:  You don't read an S-1, you don't read

16   this emails to -- back and forth with the FCA.

17          MR. LEBLANC:  No.  But you're told your rights and

18   obligations are now with -- we're -- you agreed that your

19   relationship is with the LLC and the rights and obligations

20   are -- I'm just looking at it again here -- that Celsius

21   Networks Limited shall transfer to Celsius Networks LLC my

22   data, account balance, and its rights and obligations to me.

23   That's what customers were told.  So they lived in a world

24   up through Version 5 that they were told that they had no --

25   they only had a claim against CNL.  They were told once

1    Version 6 comes into place and Version 7 and 8, your

2    relationship is entirely with CNL.

3              And again, we believe that that is the right way

4    to read the terms themselves just on their face.  And to be

5    clear, Your Honor, I think the fact that -- it's not

6    surprising, and I wouldn't suggest for a second that it

7    would be unusual, but you don't need more than -- let me

8    take your example.  If they took affiliates out of the next

9    iteration of the terms of use, if they had expressly

10   excluded CNL from liability, something they didn't do but

11   they could have done -- if they had expressly done that, it

12   would have been equally one word, and it would have -- I

13   don't think they would even be arguing that there's

14   liability.

15             And so the point is, Your Honor, the fact that

16   it's one word, it is one word in a provision that expressly

17   and specifically limits liability against the Celsius

18   entities.  And which entities?  The affiliates of Celsius.

19   Celsius is defined as LLC and its affiliates, but you take -

20   - you've added the affiliates in the definition.  You take

21   them out in the exclusion.  You are left with Celsius LLC,

22   meaning you're left in exactly the position that you were

23   that customers were previously and exactly the position this

24   company always was in, which is the customer-facing entity

25   is the entity that is exposed to customers and has liability

Page 58

1    to them.

2            To hold otherwise, Your Honor, I think would fly

3    in the face of the extrinsic evidence.  Because -- fly in

4    the face of the words on the page itself and the extrinsic

5    evidence.  It also, Your Honor -- I don't know how you read

6    the rest of the provisions.  Because affiliates are --

7    notwithstanding the fact that affiliates re included in the

8    definition of Celsius, the words affiliates of Celsius is

9    used throughout the document in various different places.

10   And we highlight this in our brief and we do have a slide on

11   this.  We can look at it if Your Honor wants to.  But I

12   think Your Honor is probably more familiar with the terms of

13   use than literally any person on the planet, so I won't

14   belabor the point.  But I think it's critical.

15           The Debtors are asking you to give affiliates the

16   word in the middle of the exclusion, the limitation on

17   liabilities provision, they're asking you to give affiliates

18   a meaning that is different than the meaning that exists in

19   every other provision of the contract.  That, Your Honor,

20   would violate fundamental principles of contractual

21   interpretation.  They are also asking you -- to do that,

22   they're asking you to add words to that definition.  Because

23   their argument today is what that means is affiliates who

24   are not part of our capital structure.  Your Honor, you

25   cannot come up with that language.  And in fact, it's a

Page 59

1    tautology.  Because affiliates are defined in a way to

2    include every entity that is under the even effective or

3    even indirect control.

4              And so we have a slide on this, Your Honor.  Just

5    one second, Your Honor.  If you go to -- our Slide 20, Your

6    Honor, illustrates this point.

7              THE COURT:  Okay, I am there.

8              MR. LEBLANC:  So, Your Honor, Slide 20, the

9    organizational chart that is here, this is the entire

10   corporate structure of Celsius.  And the Debtors say that

11   every entity on this org. chart is liable to customers

12   because they are all affiliates.  And they are liable simply

13   because the definition includes the word affiliate and

14   they're not excluded because they are excluded from the

15   affiliate.  So, again, it's indistinguishable.  They do not

16   limit themselves to CNL.  And Your Honor I think should

17   avoid the inclination to do that.

18             THE COURT:  Are you going to address the

19   Committee's argument that Section 13.3 -- how that section

20   applies?

21             MR. LEBLANC:  Yes.

22             THE COURT:  I mean, you argue that the specific

23   should displace the general.  And I don't know if they

24   phrased it exactly this way, but the specific is 13.3 that

25   says (indiscernible) says bankruptcy.

Page 60

1          MR. LEBLANC:  Your Honor, that had us scratching

2    our heads enough that we actually put a slide in.  It's the

3    next slide, Slide 21.  The Debtors in their slide deck that

4    we saw that was served overnight as well, they have this

5    same section.

6          Your Honor, I think Your Honor dealt with this

7    very section extensively in connection with the earned

8    stable coin.  Because what this section does as a whole it's

9    very clear is it makes -- it puts customers on notice that

10   in the event of a bankruptcy, you have no rights of

11   ownership.  You don't have a constructive trust claim, you

12   have no indicia of ownership.  At best you are a creditor.

13   Nothing in this section -- and we quote the provision, the

14   three in the hole.

15         THE COURT:  Yeah, the sub three, 13.3.  Right.

16         MR. LEBLANC:  That doesn't create a creditor

17   claim.  That doesn't say you are a customer.  What it says

18   is --

19         THE COURT:  So under applicable law.  Is it

20   applicable non-bankruptcy law says your claim is only

21   against LLC, you've got a claim --

22         MR. LEBLANC:  Correct.  I mean, well, it says

23   that.  But even before that it says -- it says you may not

24   have any legal remedies or rights in connection with

25   Celsius' obligations to you other than your rights as a

Page 61

1   creditor of Celsius under applicable law.  So it's actually

2   in an exclusion.  The entire purpose of this provision --

3   remember, it's entitled Consent to Celsius' Use of Digital

4   Assets.  The entire purpose of this provision 13 is to

5   ensure that customers could not come to a bankruptcy court

6   and say that those coins deposited are mine.  And Your Honor

7   dealt with this.  All it says is --

8           THE COURT:  I'm still getting a lot of people who

9   are saying it's mine.

10          MR. LEBLANC:  I understand, Your Honor.  And Your

11  Honor refers to Section 13 repeatedly in your decision.

12  That's the purpose of Section 13.  It doesn't create any

13  rights or obligations, whether pursuant to bankruptcy law or

14  otherwise.  And it doesn't say you are a creditor of every

15  entity here.  It says you have no rights other than as a

16  creditor under applicable law.  So to the extent that you

17  have a claim, you have a claim as a creditor, not as a

18  secured creditor, not as a constructed trust, as a trust --

19  as a beneficiary of a trust or anything like that.

20          So, Your Honor, we believe that the question here

21  -- the only way to reconcile the arguments that have been

22  made, Your Honor, inconsistent.  And the Debtors, frankly,

23  they don't even suggest that there's any extrinsic evidence

24  that is supportive of their position.  They control the

25  witnesses, they control the documents.  There is none.

1              THE COURT:  Well, you control a lot of witnesses

2     and documents, too.  I mean, you know, none of you get a

3     pass on this.  You certainly don't.  I mean, your clients --

4     I don't know who the negotiators were, but someone

5     negotiated the preferred agreements.  This is the point I

6     made at the start.  There's nothing where I would expect to

7     see something if the goal was to silo the assets and

8     liabilities of CNL to assure that the preferred don't have

9     all these billions of dollars of customer claims is to draft

10    language that prohibits CNL from guaranteeing or

11    indemnifying or what have you.  That's the concept that I

12    usually see.  I don't see that yere.

13             MR. LEBLANC:  But, Your Honor, had that happened,

14    they would still be making the same argument.  They would be

15    saying even though you tried not to do it -- and let's be

16    clear, White & Case represented my clients in diligence

17    making this investment.  I think Your Honor is fully aware

18    of that.  That was disclosed by them.  But maybe the lawyers

19    that the company -- that our clients had diligence

20    (indiscernible).  It wasn't Mr. Mester and myself.

21             But, Your Honor, it wouldn't change the fact that

22    when our clients made their investment, this migration had

23    already occurred.

24             THE COURT:  But had been a Version 9 that said and

25    we agree that every entity is liable, you're out of luck.

Page 63

1          MR. LEBLANC:  We are, Your Honor.  But that takes

2    me back.  No rational operator or manager of Celsius

3    Networks Limited would just say I'm going to take on

4    billions of dollars of liability.  No one would.  And that's

5    the comfort that you get when you don't have a contractual

6    provision.

7          THE COURT:  I've never seen a sophisticated lawyer

8    rely upon, oh, they'd be crazy to do that.

9          MR. LEBLANC:  Your Honor, I think there are a lot

10   of people -- Mr. Machinsky was the manager of this company.

11   He was also the -- he stood to benefit greatly from equity

12   improvement in the company.  And so it just doesn't make

13   sense that they would voluntarily take on enormous

14   liabilities that there was no reason for them to do so.  And

15   we invested at a time when this is the state of play.  And

16   again, maybe --

17          THE COURT:  But usually the investors want to be

18   sure that this is documented, they can't do it.

19          MR. LEBLANC:  Well, Your Honor, I think our

20   clients were investing in a company that had a lot of assets

21   beyond this customer-facing business, in particular the

22   mining operation.  And our investment was used to buy GK8.

23   And so we certainly believe we have recourse there.

24          So, Your Honor, we think the terms of use are

25   clear and the evidence is consistent with it.  Thank you,

Page 64

1    Your Honor.

2              THE COURT:  Thank you, Mr. LeBlanc.

3              MR. KOENIG:  Good afternoon, Your Honor.  Again,

4    Chris Koenig, Kirkland & Ellis, for the Debtors.  I'm going

5    to start -- there was a lot of colloquy with Ms. LeBlanc, so

6    I'm going to probably start with some of the questions you

7    posed to him, and then I'll turn back to our affirmative

8    argument.

9              What I'll start with is where you started with,

10   which is there may be other -- this is just one issue for

11   today, which is what are the terms of use say.  There may be

12   other claims.  There may be claims for fraud, as Your Honor

13   pointed out, there may be an intercompany claim, as Mr.

14   LeBlanc was discussing.  There may be other claims arising

15   out of the examiner's report as well.  I know that

16   substantive consolidation is an extreme remedy and

17   disfavored, but there are certainly facts in the examiner's

18   report that may make that at the appropriate time if we end

19   up there.  That may be something that could be pursued.

20   Perhaps a constructive fraudulent transfer claim at the

21   appropriate time.  Again, not for today.

22             THE COURT:  It's usually not the debtor's lawyer

23   arguing that, but go ahead.

24             MR. KOENIG:  Pardon?  What I'll start with is

25   almost all of the colloquy that you had with Mr. LeBlanc

Page 65

1   about extrinsic evidence only matters to the extent the

2   contract is ambiguous.  And here, and what we've laid out in

3   our papers and in the presentation we filed last night is

4   the contract -- the terms of use are replete with references

5   to how Celsius owes obligations to the customers.  Now, I'll

6   come back to that.  But let me start with where you were

7   going with Mr. LeBlanc for a little bit.  So let me start

8   with the assignment of various documents that you pointed

9   to.  And again, this only matters to the extent the contract

10  is ambiguous.

11          It's an assignment, but not a novation.  There was

12  a novation agreement.  It was never signed.

13          THE COURT:  Well, is the unsigned novation

14  agreement an exhibit?

15          MR. KOENIG:  It's an exhibit.  I don't believe it

16  was admitted into evidence.

17          THE COURT:  Fine.  All right.

18          MR. KOENIG:  But the Series B have not pointed to

19  any novation document in existence.  There was one of the

20  letters between regulators that Mr. LeBlanc was referring

21  to.  That's not a contract with the customers, it wasn't in

22  any communications with the customers, and it wasn't part of

23  something that any of them signed.  And just because there's

24  an assignment doesn't mean that there is an extinguishment

25  of liabilities on behalf of the transferor.  And there's a

Page 66

1    section of the terms of use that I think illustrates this

2    well.  If you look at Paragraph 32 or Section 32 of the

3    terms of use --

4              THE COURT:  Where do I find that?

5              MR. KOENIG:  Section 8.  The version I have

6    doesn't have the numbers on the top.

7              THE COURT:  Is it in what you handed me?

8              MR. KOENIG:  That's Version 6, Your Honor.

9              THE COURT:  Okay.

10             MR. KOENIG:  Your Honor, this is a clean version.

11             THE COURT:  Okay.  Thank you, Mr. Koenig.  You're

12   pointing to Paragraph 32?

13             MR. KOENIG:  Thirty-two, the assignment provision.

14   So if you look -- it's actually -- I believe it's on the

15   next page of what I...

16             THE COURT:  Okay.  It starts on one page

17   (indiscernible) 31 and carries over to the next page.

18             MR. KOENIG:  Carried over to the next page.  And

19   that's the page that the first number is 33.

20             THE COURT:  Yes.

21             MR. KOENIG:  So it says, "Celsius may assign or

22   transfer these terms or any or all of its rights and/or

23   obligations here under at any time to any third party by

24   providing prior notice."  But it doesn't say anything about

25   if the transfer occurs that Celsius will no longer be

1    liable.  I mean, if this provision were to mean that, I

2    could create a new entity, Koenig LLC, and have Celsius

3    transfer all of its obligations to the customer to an empty

4    shell that has no assets that can't possibly be able to --

5    what it means.  There has to be a novation that has to

6    extinguish the liability.  It doesn't -- you know, none of

7    the documents that Mr. LeBlanc pointed to say that.  The

8    terms of use --

9            THE COURT:  You could do a Texas two-step and not

10   provide the guarantee of all obligations.

11           MR. KOENIG:  No comment on that, Your Honor.  All

12   right.  So a contractual -- I'm sorry.  And this is the

13   argument that we make in our reply brief that starts at

14   Paragraph 24 that a transfer of obligations is different

15   than a novation and different from extinguishing liability.

16           Let me turn to the redline that I had handed you

17   earlier.

18           THE COURT:  Let me ask you this.  So Mr. LeBlanc's

19   claim to both the communications with the FCA and then in

20   the -- I guess in the check box, the three -- you know, you

21   check the third box, it obviously clearly -- it does not say

22   in those precise words that CNL will no longer have

23   liability, is absolved of liability, and it said basically

24   that LLC is obligated.  Okay.  Why isn't that enough?

25           MR. KOENIG:  For purposes of Mr. LeBlanc?

Page 68

1              THE COURT:  Yes.

2              MR. KOENIG:  Because it doesn't say that hereafter

3      CNL shall have no obligation to you.  It says LLC will have

4      an obligation to you.  And the terms of use themselves are

5      littered with obligations to Celsius.  So starting with the

6      beginning of the document, it says that the document, the

7      terms of use is between accountholders and the defined term

8      Celsius, which is Celsius Network LLC and its affiliates.

9              Throughout the document there are references to --

10             THE COURT:  So the scrivener's error was in

11     defining Celsius as Celsius and its affiliates?  If they

12     wanted to limit against whom claims would lie, the error was

13     in that opening sentence that defines Celsius as Celsius and

14     its affiliates?

15             MR. KOENIG:  Your Honor, I think if there is an

16     error, it is in Section 1, not Section 25.  I don't think

17     it's a scrivener's error.  And if you look at the redline

18     that I handed you --

19             THE COURT:  Yes.

20             MR. KOENIG:  I think Mr. LeBlanc actually has it a

21     little bit backwards.  I think that there were other changes

22     to the terms of use that suggest that this result is exactly

23     what was intended.

24             So if you start in the first page of the --

25             THE COURT:  Show me what was intended or what you

Page 69

1    believe shows an intent for CNL to remain liable.

2             MR. KOENIG:  Sure.  So if you look at the first

3    page -- at the top it's Page 318 of 1126.  I'm sorry, of the

4    redline that I handed you earlier, the spiral bound.

5             THE COURT:  Okay.  Tell me again which page.

6             MR. KOENIG:  Sure.  It's the first page, Page 318

7    of 1126.

8             THE COURT:  Yes, okay.  I'm there.

9             MR. KOENIG:  So it says -- it used to say Celsius

10   Network Limited.

11            THE COURT:  Right.

12            MR. KOENIG:  And now it says Celsius Network LLC

13   and its affiliates.  And the word collectively is added

14   there.

15            THE COURT:  Yes.

16            MR. KOENIG:  And before, I mean, Celsius Network

17   Limited is the top company in the structure.  All of the

18   obligations flow up to it.  It owned all of the assets at

19   that point in time.  It made sense that there wouldn't be

20   affiliates at that point in time.  But at the time when the

21   contractual relationship -- and it's important to note the

22   contractual -- or the customer-facing relationship is

23   different from liabilities.  When it migrated down, it

24   became important to obligate all of the other entities --

25            THE COURT:  So let me just -- just -- I think that

Page 70

1    you agree with Mr. LeBlanc that it flows from your argument

2    that each and every one of the Celsius affiliates -- Mining,

3    GK8, which is now sold -- well, it hasn't closed yet -- GK8,

4    every one of them is liable for all customer claims.

5                MR. KOENIG:  That is our position, that every

6    debtor entity is liable for all customer claims.

7                And if you turn, Your Honor, to Page 371 of 1126

8    in the same binder, this is Section 25.

9                THE COURT:  I'm there.  Yeah.  I'm there.

10               MR. KOENIG:  This is the limitation of liability

11   here.

12               THE COURT:  Correct.

13               MR. KOENIG:  So there's an important word that's

14   added here.  It's the word shareholder.

15               THE COURT:  Yeah, it's added.  But what it struck

16   me as everything other than the word affiliate there would

17   be -- I've seen a dozen times.  You know, before I was a

18   judge, since I was a judge.  You know, everybody wants to

19   make clear that members, shareholders, investor, employee,

20   officer, director, agent, isn't vicariously liable just from

21   being in that position.

22               MR. KOENIG:  Right.  And the point is just this

23   provision, Your Honor, is to make sure the entities other

24   than Celsius are not liable.  Now, what Mr. LeBlanc I think

25   is saying is there are two clauses in this sentence.  The

1    first one says you don't have any recourse except with

2    respect to Celsius.  And then it says, you know,

3    notwithstanding the foregoing, you don't have any recourse

4    against affiliates of Celsius.  And he says, well, that

5    doesn't really make sense.  Shouldn't you just -- you should

6    remove the word affiliate there.  That couldn't possibly be

7    what was intended.  But it's entirely consistent because the

8    entire purpose of the terms of use is to have Celsius be the

9    obligor on account of customer claims.

10             THE COURT: I know.  I mean, what Mr. LeBlanc is

11   arguing, the purpose is to make LLC liable to customers, not

12   to have affiliates liable.  That's Mr. LeBlanc's argument.

13   That's why he says affiliate is put in there, to make clear

14   that affiliates are not liable to customers.

15             MR. KOENIG:  Well, if the intent was to make only

16   Celsius Network LLC liable to customers, this provision

17   would have been written you only have liability against

18   Celsius Network LLC.  You wouldn't say Celsius and then cut

19   out all affiliates.  If you cut out all affiliates, that

20   removes Celsius Network LLC as well because that's what the

21   words on the page say.  And they're all affiliates of each

22   other.  So Mr. LeBlanc in his reply brief says, you know,

23   what I like to call lawyer math, you know, LLC plus

24   affiliate, minus affiliate, equals LLC.  That's not actually

25   what it is.  It's Celsius minus affiliate, that would

Page 72

1   actually leave no one.  It doesn't leave LLC, because

2   they're all affiliates of each other.  That can't mean what

3   it's supposed to mean.  The words on the page are intended

4   to capture entities outside of the structure.

5           And this is maybe a little bit of a colloquy or

6   metaphor, but if I had a group of people with me and I

7   wanted to invite them to the barbecue that I was having this

8   weekend, and I said hey, you guys should come to the

9   barbecue this weekend, but don't bring your friends.  These

10  people are friends with each other.  I didn't negate the

11  invite by saying don't bring your friends.  It's understood

12  that these people -- that the positive invitation is part of

13  the first part and the exclusion, you know, excludes this

14  group of people.  The fact that affiliates is carved out

15  doesn't render the entire sentence meaningless.  It's

16  understood when read in harmony with the rest of the terms

17  of use that entities other than Celsius are excluded from

18  liability.  Section 1 says that Celsius is the contracting

19  entity.  Section 2 in the earn, in the custody, in the

20  obligations to return coins to customers.  Says Celsius is

21  obligated to do this.  So it would be very bizarre to have

22  all of these references throughout the document to say

23  Celsius owes the customer some sort of obligation and then

24  to bury in Section 25, in a word in the middle of this very

25  long provision, you know, actually, we didn't mean that

Page 73

1   Celsius has obligations here, we really meant Celsius

2   Network LLC has obligations to you.

3           THE COURT:  I have to say I didn't focus before

4   Mr. LeBlanc pointed this out to me, that the prior versions

5   of the terms of use, pre Version 6, included the word

6   affiliate in the limitation on liability.  That's not

7   something new that just got added in Version 8 or Version 6,

8   7, and 8.  And his argument -- what that means is when CNL

9   was the customer-facing entity, yeah, it was liable for

10  customer claims, but affiliates were not.  Do you agree with

11  that?

12          MR. KOENIG:  I think that -- I understand the

13  argument that Mr. LeBlanc is making.  But I think that part

14  of it is part of the migration of the customer relationship

15  --

16          THE COURT:  I know.  You refer to migration of the

17  customer relationship.  Do you agree that CNL and CNL alone,

18  not affiliates of CNL, were liable on customer claims?

19          MR. KOENIG:  That's the way that the document

20  reads.  It excluded Celsius' affiliates at that time.

21          THE COURT:  So the customer-facing entity was the

22  one that was liable on customer claims, not any of the

23  others?

24          MR. KOENIG:  That's right, at that time.  But

25  after the migration --

Page 74

1          THE COURT:  And you think that -- what is it after

2    the migration that suggests, oh, we didn't really mean that,

3    now we agree that every affiliate is liable for customer

4    claims?

5          MR. KOENIG:  Because of what I said earlier, Your

6    Honor, which is CNL is the top entity and was the entity

7    that held all of the coins and made the investments and made

8    the loans and all of those sorts of things.

9          The purpose of this language is that after the

10   prior customer relationship and some but not all of the

11   coins migrated down to LLC, there are now customer coins at

12   multiple entities.

13         THE COURT:  Let me ask this.  GK8 and Loan existed

14   before the migration?

15         MR. KOENIG:  No, Your Honor.  GK8 was purchased

16   after the migration.

17         THE COURT:  The lending affiliate existed before?

18         MR. KOENIG:  I believe that the lending affiliate

19   was created as part of the migration.  There was a new U.S.

20   entity that made the loan program.

21         THE COURT:  So tell me then which affiliates pre-

22   migration, which affiliates were not liable for customer

23   claims.

24         MR. KOENIG:  I think the mining company, Your

25   Honor, is what you're looking for.

1          THE COURT:  Okay.  And what is it to suggest in

2     the language that Celsius intended for mining to be liable

3     for customer claims after the migration?  Because that --

4     you agree I take it that if I accept your argument, mining

5     is liable for customer claims.

6          MR. KOENIG:  I agree with that, Your Honor.  And

7     your point is -- point to me where Celsius intended Mining

8     to now be liable when it was not -- when it was not liable.

9          THE COURT:  What am I looking at -- I mean, the

10    whole -- nobody has really pointed to a whole lot of what I

11    would consider extrinsic evidence.  But such as it is, I've

12    looked at it.  And I don't really see anything that suggests

13    that they did intend to make Mining liable for customer

14    claims after the migration.

15         MR. KOENIG:  Your Honor, what I would say is I

16    don't think that was something that was specifically

17    contemplated at the time.  What I think happened is when the

18    customer-facing relationship moved down from CNL to LLC,

19    there were now customer points at two legal entities where

20    there were not before, CNL and LLC.

21         THE COURT:  Because not everything migrated.

22         MR. KOENIG:  Because not everything migrated.  You

23    see in our schedules and statements we disclose that over a

24    billion dollars remains at CNL.  They continue to run the

25    institutional loan book, as Mr. LeBlanc said.  So it was

1   important to make sure that now more than one legal entity

2   became liable.  So the language was changed to ensure that

3   that was the case.

4           Now, when the language is clear and unambiguous,

5   we apply it as written.  I don't think the -- I can't point

6   to a document that says that somebody at Celsius intended to

7   make the mining company liable, but they did intend to keep

8   CNL and LLC liable.  And I think an offshoot of the language

9   --

10          THE COURT:  The unintended consequences that

11  Mining (indiscernible).

12          MR. KOENIG:  Exactly right, Your Honor.  I'm not

13  saying that they had to specifically intend that each and

14  every entity became liable --

15          THE COURT:  Then when they acquired GK8, it became

16  liable.

17          MR. KOENIG:  It became liable.  What they did

18  intend I think and what I believe the redline to the

19  document suggests is that they intended to make more than

20  one legal entity liable before the migration was only CNL.

21  Then it was CNL and LLC --

22          THE COURT:  And is there anything to suggest that

23  they intended to make anything other than customer-facing

24  entities liable to customers?

25          MR. KOENIG:  Well, Your Honor, after the

Page 77

1    migration, CNL was no longer a customer-facing entity.

2              THE COURT:  Well, I thought you said it has a

3    billion dollars in --

4              MR. KOENIG:  But it's no longer a customer-facing

5    -- it no longer interacts with customers directly.  That's

6    the whole point of migration.  It owes an intercompany claim

7    to LLC on account of those assets.

8              THE COURT:  Okay.

9              MR. KOENIG:  But then there's a lending entity

10   that was set up that issues loans.  And so I think it's

11   those three entities -- I think it's those three entities at

12   the very least.

13             THE COURT:  Okay, very good.  Can you address the

14   issue of 13.3?  The Committee is the one that really argued

15   that, but...

16             MR. KOENIG:  Certainly, Your Honor.  And we --

17   Section 13.3 is not -- there are many sections of the

18   provisions that I think if any of the lawyers here today

19   were to rewrite on a blank slate might be drafted a little

20   bit more artfully.

21             So what I would say about Section 13.3 is it

22   suggests that creditors have rights under applicable law.

23   Appliable law includes contract law, and contract law refers

24   back to the terms of use, which are replete with references

25   to how Celsius owes obligations to customers.  So --

1           THE COURT:  Basically you would agree with Mr.

2    LeBlanc that 13.3 doesn't really move the needle.  You have

3    to look at what the contract -- who -- it didn't create a

4    special rule to bankruptcy in the event of bankruptcy.  Non-

5    bankruptcy law, contract law says that only LLC is liable,

6    then 13.3 doesn't change that result.

7           MR. KOENIG:  Your Honor, what I would say is I

8    don't think that 13.3 is a tie-breaker.  I don't think it is

9    the important section.  What I do think is, as Your Honor

10   found in the earn opinion, courts should read contracts to

11   be harmonious with each other.  And I think that this

12   provision is harmonious with all of the other provisions

13   that suggest that Celsius is liable to customers.  I don't

14   think that this provision is the gotcha or the most

15   important provision in the document.  But I do think it's

16   relevant to Your Honor's analysis because you can look at

17   Section 1 and Section 2, Section 13, Section 9, Section 11,

18   Section 25 and read them all harmoniously to mean Celsius

19   owes obligations to customers.  I don't think that this

20   provision is the most important provision in the document

21   that says that though.

22           THE COURT:  So I really asked this of Mr. LeBlanc.

23   I'll ask of you.  Did the migration plan require CNL be

24   relieved of liability to accountholders?

25           MR. KOENIG:  Your Honor, that's not the way that

1    we read the documents.  It says that they intended to

2    transfer the customer-facing relationship to LLC.  But that

3    doesn't mean that it would be absolved of liabilities to

4    customers.

5              THE COURT:  So Mr. LeBlanc pointed to his Exhibit

6    12, an email between Roni Pavon and people at the FCA,

7    included people at the FCA, and he pointed to Page 100 of

8    158, Paragraph 3, upon withdrawal and completion of the

9    migration plan, Celsius Network Limited will have three main

10   activities.  It will control the assets that are

11   attributable to account -- accounts of users that did not

12   agree to be migrated will continue to have a debt

13   relationship with those users with respect to equivalent

14   asset.  But I don't see where it says and CNL will continue

15   to be liable to all accountholders.

16             MR. KOENIG:  Your Honor, I was listening to

17   everything that Mr. LeBlanc told you.  I would admit that

18   that is the document that is the most persuasive from his

19   perspective.  It is the one document that he has pointed to

20   that suggests that --

21             THE COURT:  there you go.

22             MR. KOENIG:  -- liabilities were not extinguished.

23   What I would say is that document is not in the terms of

24   use, that document is not in a relationship with customers.

25   And where Your Honor started with this is that Mr. LeBlanc's

Page 80

1   clients do not -- you know, Mr. LeBlanc is pointing to the

2   terms of use, not other documents.  An email between Celsius

3   and its regulators does not alter the words on the page and

4   the contractual relationship that they have with their

5   customers.

6            And just going back to my argument earlier about

7   the top holding company and the migration down.  As I said,

8   it's the top holding company, it owns the shares of the

9   affiliates.  So the obligations of the subsidiaries are

10  going to ultimately flow up to CNL.  And that's another

11  reason -- that's another reason for the change.

12           THE COURT:  A parent doesn't become liable for the

13  debts of its subsidiary.

14           MR. KOENIG:  No.

15           THE COURT:  Its stock may be worthless at that

16  point if the subsidiary is insolvent, but it doesn't mean

17  that the parent is liable.  I mean, that's the whole concept

18  of corporate separateness.

19           THE COURT:  No, I'm sorry, Your Honor.  You're

20  totally right.  I meant that the value of the subsidiaries

21  would be affected and it would indirectly affect CNL in that

22  way.  And that's one of the reasons why you wouldn't have it

23  that way.

24           THE COURT:  I think I know your answer to this,

25  but did the description of the changes in the terms of use

Page 81

1  Version 6 say that CNL would no longer be liable to Earn

2  account holders.  It just says -- transfers the obligations,

3  but there's nothing -- Mr. LeBlanc would argue that that

4  language about rights and obligations means that CNL is no

5  longer liable.  Those words aren't on the page, but

6  (indiscernible).  It's on a click box.

7             MR. KOENIG:  Yes, Your Honor.  And those words are

8  important words.  It's the difference between a mere

9  transfer and a novation, especially when -- especially when

10 faced with all of the different references in the terms of

11 use.

12            THE COURT:  I looked, again, last night at the

13 briefs.  Did anybody point to controlling New York law for

14 what's required for a novation?

15            MR. KOENIG:  I don't believe that I saw it, Your

16 Honor.

17            THE COURT:  I didn't --

18            MR. LEBLANC:  Your Honor, Andrew LeBlanc.  Yes.  I

19 was going to address this on reply.

20            THE COURT:  Okay, that's fine.  You can address it

21 on -- I didn't remember -- you know, I searched, it was

22 late, and I just didn't see it.  Go ahead.

23            MR. KOENIG:  Okay, Your Honor.  Your Honor, that's

24 all I have.

25            THE COURT:  Okay.  Let me see if I have any more

Page 82

1    questions for you.  Okay, I don't.  Go ahead.

2            Mr. Hershey?

3            MR. HERSHEY:  Yes.  Good afternoon, Your Honor.

4    Sam Hershey from White & Case on behalf of the Unsecured

5    Creditors' Committee.

6            Your Honor, one month ago, Your Honor ruled that

7    the assets the Debtor's accountholders transferred into the

8    Earn program are not property of those customers but are

9    rather property of the estate.

10           THE COURT:  And that's being appealed.

11           MR. HERSHEY:  I'm sorry, Your Honor?

12           THE COURT:  And it's being appealed.

13           MR. HERSHEY:  And it's being appealed.  That's

14   true, Your Honor.

15           The Series B seeks to take that ruling to an

16   extreme and unjustified result, which is that accountholders

17   somehow contractually released their claims to those coins,

18   and those coins now belong to the Debtor's equity.  To put a

19   finer --

20           THE COURT:  May I ask you this?  I don't remember,

21   but I think this is right, 55 percent of the account holders

22   were pre Version 6, is that correct?

23           MR. HERSHEY:  Correct, Your Honor.

24           THE COURT:  But does that mean that 45 percent of

25   the customers who are Version 6 forward all agreed that CNL

Page 83

1  is not liable?  In other words, I can understand if Versions

2  1 through 5 made CNL liable and there was no express

3  language the CNL is no longer going to be liable, okay,

4  maybe those 55 percent of the accountholders have an

5  argument we don't have a claim against CNL.  But would it be

6  true for the 45 percent that are Version 6 forward?

7              MR. HERSHEY:  Yes.  And we would be, Your Honor.

8              THE COURT:  Why?  I don't follow.

9              MR. HERSHEY:  Well, I think that's what the terms

10  of use say.  They say that --

11             THE COURT:  Do they really?

12             MR. HERSHEY:  Yeah, they do, Your Honor.  Because

13  all customers from Version 6 forward agree to terms of use

14  between themselves and Celsius Network LLC and all of its

15  affiliates.  That includes --

16             THE COURT:  But you argue in your brief that

17  there's no written novation.

18             MR. HERSHEY:  Correct, Your Honor.

19             So if CNL were liable before under Versions 1

20  through 5 and there's no novation as to the 55 percent of

21  the accountholders who were pre Version 6, those

22  accountholders say CNL, I never -- there was no release, I

23  didn't see anything about release.  Okay.  But that same

24  argument can't exist with respect to the 45 percent who are

25  Version 6 forward because they were never -- CNL was never

Page 84

1    the customer-facing entity.  CNL never had expressly said we

2    are obligated to you.  So do the 45 percent of Version 6

3    forward, are they differently situated than the 55 percent

4    that are pre Version 6?

5              THE COURT:  Yeah.  I think the point Your Honor is

6    making is that there are more arguments available to the 55

7    percent in terms of CNL's liability than there are to the 45

8    percent.  And I'm not going to contest that.  I would say

9    that a hundred percent of creditors though have the argument

10   that Version 6 forward of the terms of use provide that all

11   debtor affiliates are liable to customers.  And there may be

12   some who have additional arguments --

13             THE COURT:  You would agree that your argument

14   about no novation doesn't exist with respect to the Version

15   6 forward?

16             MR. HERSHEY:  To the extent they weren't

17   previously contracting CNL, yes, Your Honor.  Okay.

18             And, Your Honor, I just want to put a finer point

19   to that.  Because I think actually what's happening in

20   Version 6 is a maintenance of the status quo, not a change.

21   Because previously all customers had claims against the

22   enterprise value of Celsius.  Because it all flows up to

23   CNL.  And through Version 6, now there is a new customer-

24   facing entity.  That's LLC, the U.S. entity.  But going

25   along with that is a new --

1          THE COURT:  The creditor -- if Mining is solvent,

2     creditors of mining are going to have their claims satisfied

3     with Kroll before anything flows up to equity, correct?

4          MR. HERSHEY:  That's certainly true.  I'll note

5     that Mr. LeBlanc's clients are not creditors of Mining,

6     they're equity holders.

7          THE COURT:  That's a hypothetical.

8          MR. HERSHEY:  Yes.  And the residual value will

9     flow up to CNL and then there's a residual claim that all

10    creditors have against CNL.  This is just a maintenance of

11    that position.

12         Your Honor, I want to speak about the terms of

13    use.  I also want to talk about the extrinsic evidence.

14         Your Honor may recall that when Mr. LeBlanc first

15    stood at this podium to discuss this matter, he said that

16    the terms of use unambiguously favor his position, but there

17    is also extrinsic evidence.  And it seems like there has

18    been a very heavy reliance on extrinsic evidence and very

19    little reliance on the terms of use.  So I do want to

20    briefly address the extrinsic evidence just to ground set a

21    little bit.

22         The only question before the Court is whether the

23    customers have claims against every debtor entity.  And at

24    least for the 55 percent, as Your Honor recognized, the only

25    way those customers could no longer have claims against CNL

1   is if those claims were released.  The Debtors can't do it

2   for them.  They can't have some back room deal where they

3   sign a release and the customers never sign it, never see

4   it.  And that release has to be explicit.  That's what New

5   York law provides.  And I can cite the case that's in our

6   brief that we cited for this proposition.  It's the Elbit

7   Systems case.  And the Southern District of New York in that

8   case explicitly said, "A release will not be given effect

9   unless it contains an explicit, unequivocal statement of a

10  present promise to release a party from liability."  And I

11  think Your Honor honed in that issue, and that's exactly

12  right.  Nothing Mr. LeBlanc has pointed to shows an explicit

13  release by at least 55 percent of the customers of their

14  claims against CNL.

15          Now, we happen to believe, and we'll argue that

16  the terms of use create a claim for the other 45 as well.

17          THE COURT:  Well, let me ask you this.  So the 55

18  percent who were pre-Version 6, they checked the box and

19  accept Version 6, 7, and 8.  And let's assume hypothetically

20  that their account balance pre-Version 6 was 50 bitcoin.

21  And the account balance post Version 6 was 100 bitcoin.  Is

22  their claim different as to the first 50 versus the next 50

23  that were invested?

24          MR. HERSHEY:  I don't think it would be, Your

25  Honor.  Because they still have a contractual claim against

1    CNL.  And CNL is still providing services to them.  And

2    that's one thing I'll talk about in a minute, is that this

3    migration and supposed change of who CNL is contracting with

4    never actually happened.  And it wasn't, as the evidence

5    will show, the intent of Celsius for that to happen.

6              THE COURT:  I know.  You said it stayed the same

7    wallets and...

8              MR. HERSHEY:  All that.  Yeah.  Exactly, Your

9    Honor.

10             Your Honor, the second point I want to make that's

11   just sort of a broad overview of where I think the extrinsic

12   evidence leads us is that whatever evidence the Series B may

13   have, they claim evidence is the Debtor's intent.  These are

14   relevant to the extent that intent was not communicated to

15   the accountholders, right?  There may be statements that the

16   Debtors made to other parties other than the accountholders

17   that express an intent.  But if the other party to the

18   contract was not aware of that, then that evidence is

19   completely irrelevant.  And again, we have New York law that

20   stands for that proposition.

21             THE COURT:  So with respect to an accountholder

22   that opens this account, Version 6 or after, your argument

23   is that the opening clause that says Celsius and its

24   affiliates controls as opposed to Paragraph -- the word, the

25   one word in Paragraph 25, which I hadn't realized and Mr.

Page 88

1    LeBlanc pointed out was there all along.  It's not as if it

2    was just added in Version 6, it was there in prior versions.

3            MR. HERSHEY:  Yeah, that's correct, Your Honor.

4    Yes.  I'm happy actually -- it probably makes sense right

5    now, because I think the law directs us to examine the terms

6    of use first before we talk about extrinsic evidence.  I'll

7    start there.  And I'm actually going to use the redline that

8    Mr. Koenig handed up to you.  I realize that the changes in

9    the redline are technically extrinsic evidence.  It will

10   just be easier if I can make all my points regarding the

11   terms of use at once and not just what it says, but the

12   changes.

13           So Mr. Koenig stole my thunder a little bit

14   because I was also going to emphasize that if you look at

15   the first sentence, the first thing that a customer of

16   Celsius would see, the first thing the drafters chose to put

17   in, Celsius Network LLC and its affiliates, new language,

18   collectively, new language.  And also I will observe

19   provides, previously was singular, now it is plural, and now

20   provide the terms of use.  So there's no doubt that the

21   intention of the drafters was to make these terms of use

22   binding on Celsius Network LLC and its affiliates.

23           Going further down in that same paragraph, the

24   last sentence, the drafters of the terms of use identify a

25   specific Celsius entity, right?  Celsius EU UAB, showing us

1   that if they wanted to identify a specific Celsius entity,

2   they knew how to do so.  But if they're using the defined

3   term Celsius, which only exists in the context of these

4   terms of use -- it's not an actual entity, it's nowhere on

5   the Debtor's org chart.  If they're using that defined term,

6   it has to have the meaning that it has in the first sentence

7   of the terms of use.

8          Going to the next page, there are two paragraphs

9   in big block letters.  Again, these are new.  The drafters

10  chose to add them.  The first one says, "Celsius is a

11  lending and borrowing platform.  When you transfer digital

12  assets to Celsius, those digital assets are a loan from you

13  to Celsius."

14         The next paragraph.  "All digital assets

15  transferred to Celsius as part of the services --"  Yeah.

16         THE COURT:  Mr. Hershey, I understand all of that.

17  Move to Paragraph 25.

18         MR. HERSHEY:  Would Your Honor like me to stop at

19  Paragraph 13, or should I proceed to 25?

20         THE COURT:  If you want to go to 13, go ahead.  I

21  don't -- I mean, I thought you made a nifty argument from

22  Paragraph 13, but you sort of selectively chose the words

23  that you would quote in your brief.  And, you know, when I

24  printed out all of Paragraph 13 and all of Paragraph 25, you

25  know, my reading was, you know, affiliate is one word in the

Page 90

1   middle of a very long paragraph, the reference to bankruptcy

2   in 13.3, I don't know really whether it does anything other

3   than suggest that you may be a creditor, but it's all going

4   to depend on non-bankruptcy law.  Well, non-bankruptcy law

5   includes contract law.

6          And so if your contract right leaves you with a

7   claim only against LLC, Paragraph 13.3 doesn't change that.

8   Do you agree with that?

9          MR. HERSHEY:  Your Honor, I do agree with that.  I

10  don't think that this terms of use can modify the law if the

11  law provides something.

12         THE COURT:  No.  But just on this basic point.  If

13  Paragraph 25 were interpreted such that the customers only

14  had a contract claim against LLC, Paragraph 13.3 would not

15  change that result.

16         MR. HERSHEY:  So, I'm actually not sure that I

17  agree with that, Your Honor, for two reasons.  The first is

18  that the specific governs over the general, as Your Honor

19  said.  And this is a specific contemplation of a bankruptcy

20  scenario.  And this isn't a very broad grant of rights in a

21  bankruptcy scenario.  If you read the words, I'll start

22  second half of the sentence.

23         THE COURT:  Yes, but let me just --

24         MR. HERSHEY:  (indiscernible)

25         THE COURT:  In reading (iii), "In the event that

Page 91

1    Celsius becomes bankrupt, enters liquidation or is otherwise

2    unable to repay its obligations, you may not be able to

3    recover or regain ownership of such digital assets.  And

4    other than your rights as a creditor of Celsius, under any

5    applicable laws you may not have any legal remedies or

6    rights in connection with Celsius' obligations to you."

7            Doesn't that mean that your rights as a creditor

8    of Celsius by virtue of Paragraph 25 are limited to claims

9    against LLC?  13(iii) doesn't change that outcome.  In

10   bankruptcy, you get whatever your non-bankruptcy law rights

11   are.

12           So the basic point that I took away from it -- and

13   I'm asking whether you agree or disagree, and if you

14   disagree, explain to me -- 13(iii) does not add anything to

15   Section 25.  Whatever your rights are under Section 25, if

16   your rights are against CNL, 13 doesn't change it.  If your

17   rights are only against LLC, 13 doesn't change it.  It's

18   just agreeing with the Bankruptcy Code.  Do you agree with

19   that?

20           MR. HERSHEY:  So, I do agree with that, Your

21   Honor.

22           THE COURT:  Okay.

23           MR. HERSHEY:  I will note, though, that if we're

24   looking at the intent of the drafters, it specifically says

25   creditor of Celsius with a capital C.  It says under any

1    applicable law.  It says, you know, broad as possible

2    (indiscernible) available.  Celsius --

3              THE COURT:  If I agree with you that Section 25

4    doesn't absolve CNL of liability, then under Section 13, you

5    assert that right in the bankruptcy.  If Paragraph 25, if I

6    agreed with Mr. LeBlanc that Paragraph 25 is effective to

7    exclude liability of CNL, 13 doesn't change that result.

8              MR. HERSHEY:  So, I agree, Your Honor.  It makes

9    sense to turn to Section 25.

10             THE COURT:  Okay.

11             MR. HERSHEY:  (indiscernible)

12             THE COURT:  All right.

13             MR. HERSHEY:  So I think there are a few points

14   that need to be made on the Section.  And the first is the

15   most important.  It's the point that Mr. Koenig has already

16   made.  There is no need to read the Section any other way

17   than the way it's written.  There is a totally harmonious

18   way of reading Section that holds that the second mentioned

19   affiliates is affiliates of affiliates.  They can exist,

20   even if they're purely conceptual.  Parties routinely will

21   draft contracts to involve conceptual entities that may not

22   exist at the time.  Your Honor --

23             THE COURT:  I can't imagine any lawyer drafting a

24   section with these words if what they were trying to

25   communicate was that affiliates of affiliates aren't liable.

1           MR. HERSHEY:  Your Honor, I mean, I disagree.  I

2     think that if, for example -- I think Mr. Koenig gave this

3     example.  If an affiliate of Celsius had a contractual

4     relationship with a third party, it would make perfect sense

5     that Celsius would want to insulate -- Celsius would want to

6     insulate that third party from claims.

7           THE COURT:  They still wouldn't have drafted this

8     paragraph this way.  It would've been much clearer about

9     what the exculpation or limitation of liability would be.

10    They never would draft something like this.

11          MR. HERSHEY:  Well, then --

12          THE COURT:  It is what it is.

13          MR. HERSHEY:  Sure.  Absolutely, Your Honor.  So I

14    think, then, we have to look at how we should read Celsius,

15    to the extent the drafting is ambiguous.  And the first

16    thing is, as I said, there's no such thing as Celsius within

17    the Debtors' corporate enterprise, right?  It's not on the

18    org chart.  It only has meaning within the terms of use.  So

19    it means Celsius LLC and its affiliates.

20          But if we were to choose another meaning for it,

21    it would make much more sense if we had to choose one

22    (indiscernible) say it wouldn't make sense.  It wouldn't

23    make sense to choose Celsius (indiscernible) LLC.  There is

24    nothing in the terms of use indicating that Capitol C

25    Celsius could mean Celsius Network LLC.

1            Now, if the defined term Celsius did previously,

2    for all prior versions of the terms of use, means Celsius

3    Network Ltd, that's what it always meant.  So if we're

4    trying to identifying one Celsius entity that made the most

5    sense to substitute in for Celsius, to (indiscernible)

6    someone to do that, Celsius Network Ltd would make a lot

7    more sense.

8            But besides that, Your Honor, in another -- I

9    mean, another option that we could use is we could ignore

10   the second use of the word affiliates.  We could understand

11   there was a change in the meaning of Celsius and perhaps the

12   drafters --

13           THE COURT:  But that word was always there.  It's

14   not as if that word was added and --

15           MR. HERSHEY:  Sure.  But the fact that it was kept

16   in and not removed could be a reflection of the fact that

17   the drafters of the contract ignored or missed that they had

18   redefined Celsius to include affiliates and they kept it in.

19   That would be our harmonious reading too.

20           Whichever reading Your Honor chooses --

21           THE COURT:  You're arguing for scrivener's error.

22           MR. HERSHEY:  Well, that would be --

23           THE COURT:  Which has a very, very, very high

24   standard to satisfy.

25           MR. HERSHEY:  Well, I think that -- I think that

1    so are the serious (indiscernible).  I mean, I think

2    everyone who wants to advance a different interpretation of

3    this clause has to argue there is a mistake that has to be

4    rectified.  And I'm just running through the different

5    options.

6              THE COURT:  Well, Mr. LeBlanc doesn't say there's

7    a mistake that has to be rectified.

8              MR. HERSHEY:  I think he does, Your Honor.  He

9    says that it doesn't make sense for Celsius here to have the

10   meaning that it's clearly given in the terms of use.

11             THE COURT:  I don't think he's saying that.

12   (indiscernible) Look, what I understand the Series B

13   Noteholders to argue is that for the purposes of the

14   agreement as a whole, it refers to Celsius and its

15   affiliates.  Section 25, a portion of it, small portion of

16   it, creates a limitation of liability such that any

17   affiliates of LLC are excluded from liability for customer

18   claims.  That's what he's arguing.

19             MR. HERSHEY:  But the only to read it that way is

20   to change the defined term Capital C Celsius to something

21   the terms of use expressly says it must not mean.

22             THE COURT:  I don't think so.  I mean, I think --

23   I'm not sure I buy his argument, but he says, "For purposes

24   of this agreement as a whole, Celsius and affiliates."  But

25   when you get down to who the customers have claims against,

Page 96

1    it's just LLC, all because of this word affiliates stuck in

2    the middle of a long paragraph.

3            MR. HERSHEY:  I agree that's his argument, Your

4    Honor.  I don't see how he could make that argument without

5    arguing there was a mistake in use of the defined term

6    Celsius.  And that really what that means is LLC.  There is

7    nothing in the terms of use that says Celsius can mean LLC.

8    Quite the opposite.  It says Celsius Capital C, means

9    Celsius Network LLC and its affiliates.

10           THE COURT:  Except for purposes of Section 25.

11           MR. HERSHEY:  No -- but where does the terms of

12   use say that, Your Honor? Except for purposes of this

13   section, Celsius shall mean only Celsius Network --

14           THE COURT:  It says, "Without limiting the

15   generality of the foregoing, in no event shall you have any

16   recourse, whether by setoff or otherwise, with respect to

17   our obligations to or against any assets of any person or

18   entity other than Celsius, including without limitation, any

19   members, shareholder, affiliate, investors."  So that's the

20   carveout.

21           MR. HERSHEY:  I completely get that, Your Honor.

22   I guess where I don't understand --

23           THE COURT:  Okay.

24           MR. HERSHEY:  -- Your Honor's position,

25   respectfully, is --

1              THE COURT:  It's not my position, but --

2              MR. HERSHEY:  Oh, sorry.  Well, okay -- perhaps

3     Mr. LeBlanc's position.  Your question, I should say, is how

4     Celsius and what in this term says anything on Celsius

5     meaning anything other than what (indiscernible) -- it just

6     doesn't say in this term, Celsius means Celsius Network LLC.

7     Nothing in the terms of use says that any (indiscernible)

8     Celsius can mean Celsius Network LLC.  It's completely made

9     up.  It's a --

10             THE COURT:  Okay.  All right.

11             MR. HERSHEY:  -- it's the entity he wants it to

12    me.

13             THE COURT:  Okay.  I have your argument.  Go

14    ahead.

15             MR. HERSHEY:  Okay.  And the last thing I'll say,

16    Your Honor, is to the extent Your Honor is going to construe

17    the contract in either direction, this is a contract of

18    (indiscernible) and we also cite law (indiscernible) showing

19    that it should construed against the Debtors to provide

20    maximum liability among Debtor entities to protect customer

21    claims.

22             THE COURT:  Okay.  Thank you very much.

23             MR. HERSHEY:  Your Honor, may I address the

24    extrinsic evidence?

25             THE COURT:  Yes, please go ahead.

Page 98

1           MR. HERSHEY:  Thank you very much.  So, Your

2    Honor, on the checkboxes that Mr. LeBlanc mentions, I have

3    just a few points.  The first is, Your Honor has already

4    recognized this, almost half of the customers

5    (indiscernible) settlement.  And so that's why I think we

6    need to have recourse in the contract itself and not in the

7    checkboxes.

8           The second thing is that the first checkbox says,

9    "I have read and agreed to the new terms of use."  It would

10   be absurd to think that after agreeing to the terms of use,

11   the checkboxes somehow modify them.

12          And the third thing is the checkbox that Mr.

13   LeBlanc seizes on is not a release.  We have discussed this

14   release needs to be explicit.  There is no release there.

15          THE COURT:  Is the law on novation, New York law,

16   any different than the law on releases?  I asked this

17   question earlier today whether -- because I didn't see your

18   brief -- you raised the issue, it's a novation -- they're

19   arguing for a novation and say it's not.  But I don't -- if

20   I missed it, tell me.  I didn't see -- I'll look myself, but

21   I didn't see case law about what are the elements under New

22   York law for an argument about the claim of novation,

23   defense of novation.  I don't know (indiscernible) claimed

24   by the defense, but...

25          MR. HERSHEY:  So, Your Honor, I do not know the

1    answer right now off the top of my head.  I will say one

2    thing, which is that the case that I cited to earlier was

3    categorical in saying a release cannot occur.  That's

4    explicit.  I haven't seen any case that says, oh, actually,

5    you can get around a release and not have to be explicit if

6    you style it as a novation.

7              THE COURT:  My only question was do you have the

8    law?

9              MR. HERSHEY:  No.  And Your Honor, I don't at the

10   moment.  Happy to submit some supplemental (indiscernible),

11   if Your Honor you would like.

12             The last thing -- the last point I want to make,

13   Your Honor, is this much vaunted migration that Celsius

14   purportedly sought to (indiscernible).  Never actually

15   happened.  And we know this in a few ways.  The first is

16   that on the schedules, the schedules that the Debtors

17   submitted -- this is Exhibit 2 on our exhibit list -- the

18   schedule for Celsius Network Ltd. still reflects about $1

19   billion of assets.  And in the 341 meeting -- that's -- and

20   the transcript (indiscernible) that is Exhibit 6 on our list

21   -- we asked Mr. Ferraro what that billion dollar worth of

22   asset is.  And he said that it's predominantly customer

23   coins.

24             We also asked the Debtors in discovery to produce

25   all documents to us evidencing migration assets from CNL to

Page 100

1  LLC.  And the response we got was that were no documents

2  they could give to us, other than what's publicly available.

3          But the last piece of evidence I want to cite --

4  and this will conclude my presentation -- is the examiner's

5  report, which came out last week.  The examiner, among other

6  things, took a very thorough look, as she described it, and

7  I'll just read the section title.  It's Section 9 review of

8  where crypto assets were held pre and post-petition.

9          THE COURT:  I have the greatest respect for the

10  examiner.  But the report is hearsay.  It is not evidence.

11  And have you all agreed that it's evidence for purposes of

12  this hearing?

13          MR. LEBLANC:  We have not, Your Honor.  In fact --

14  Andrew LeBlanc -- we have not and it's not on any of our

15  exhibits.

16          THE COURT:  Okay.  You know, let's be careful.

17  And I -- by saying that, no disrespect at all for the

18  examiner, who I commented before I think she's done a

19  terrific job.  But I asked the question of Mr. Lazar at one

20  of the hearings, whether because it refers to the interviews

21  that the examiner conducted -- I asked whether they were

22  under oath, and it was explained to me they were not.  So,

23  at this stage, it's hearsay.

24          MR. HERSHEY:  So, Your Honor, a question and one

25  quick point.  Just to be clear --

Page 101

1          THE COURT:  It would be hearsay even if there were

2     interviews under oath.  But nevertheless --

3          MR. HERSHEY:  That was my question.  If you were

4     asking about interviews, whether the examiner's summarizing

5     interviews, if that's your concern, just stating --

6          THE COURT:  No, it's not.  It's --

7          MR. HERSHEY:  Okay.  I just wanted to clarify

8     that.  I am using the exhibit on -- or the report, I guess,

9     on rebuttal.  So I'm sure it was not our exhibit list.  I am

10    happy to walk through what the examiner says because she

11    does address this point directly and reaches the conclusion

12    that there was no migration or perhaps even intent.  But if

13    Your Honor would rather I --

14         THE COURT:  I'd rather you not do it.

15         MR. HERSHEY:  Okay.  Thank you, Your Honor.

16         THE COURT:  Okay.  Thank you.  Mr. LeBlanc?

17         MR. LEBLANC:  Thank you, Your Honor.  Andrew

18    LeBlanc.  Your Honor, let me just address a handful of

19    points.  And I think this -- I can do this quickly.

20         I actually think Mr. Hershey may have sort of

21    given up the game a little bit as to -- made a mistake in

22    his argument to say our interpretation doesn't make any

23    sense because nowhere is Celsius LLC the defined Celsius.

24         Our point is this.  And Mr. Koenig referred to it

25    as lawyer math.  I was an engineer, so I enjoy math.  But --

Page 102

1           THE COURT:  What kind of an engineer were you?

2           MR. LEBLANC:  Aeronautical, Your Honor.  So, when

3    I -- and it's funny, because we've had this debate

4    internally on our team.  It think of this quite simply as an

5    equation where you have Celsius equals LLC plus affiliates.

6    The limitation of liabilities --

7           THE COURT:  Yes, I saw the briefs with equations.

8           MR. LEBLANC:  Well, yes.  And Your Honor, that's

9    the way -- I mean, we tried to present it a number of

10   different ways because that's the way that I think of it.

11   And it makes sense to me that --

12          THE COURT:  I hate to break the news that I was an

13   engineer too, Mr. LeBlanc.

14          MR. LEBLANC:  May I ask what kind, Your Honor?

15          THE COURT:  But I try not to use equations in my

16   opinions.

17          MR. LEBLANC:  Well, we were trying to offer it a

18   number of different ways.  And I think what's important is,

19   because this is really the point, they made a conscious

20   choice to define Celsius to be LLC and its affiliates, and

21   not CNL and its affiliates.  They made that change from the

22   prior version.  So that when you take out affiliates, as

23   they do in Section 25, what is left is LLC, not CNL.

24          If all they intended to do was to create liability

25   at every entity, then they could have done that simply by

Page 103

1    saying CNL and its affiliates are now the counterparty, and

2    then you'd have the same issue with Paragraph -- with

3    Section 25.

4          But they made the second change of making LLC the

5    party.  And that, Your Honor, is -- and I think Your Honor

6    recognized this in your discussion, your colloquy -- we do

7    not argue there's a scrivener's error.  We argue that this

8    is what is intended, that the customer-facing entity is

9    supposed to be liable.

10          THE COURT:  Whether you really expected anybody to

11    understand what's in that Paragraph 25 is a different issue,

12    I think, you know?  That's why with clickwrap contracts,

13    when -- and maybe you're saying there was no change --

14    that's one of the reasons I was asking about whether this

15    was a change.  Ordinarily, when there's a material change,

16    there's something that describes, and there are three

17    important changes in this contract, one of which is to

18    absolve CNL of liability.  Well, I don't do that.

19          MR. LEBLANC:  Well, Your Honor, I mean, that is

20    exactly what they -- exactly what they do is the party

21    you're contracting with this changing to this party.  And

22    this is where the law of novation becomes critical.  It is

23    not -- the relevant law is not the law of releases.  It is

24    the law of novation.  And we cite, Your Honor -- and I

25    appreciate, it comes at the end of our brief --

1           THE COURT:  Okay.  I've got the brief here.

2           MR. LEBLANC:  Our opening brief, beginning at Page

3      27 -- so that's Docket Number 1795.

4           THE COURT:  I got -- turn to Page 27.  Okay.

5           MR. LEBLANC:  27.  We have -- the final section is

6      customers released CNL from liability by agreeing to Terms

7      of Use Version 6.  And this talks about -- this is the law

8      of novation in New York.

9           THE COURT:  Hold on.  I'm looking at the wrong one

10     of --

11          MR. LEBLANC:  (indiscernible)

12          THE COURT:  I've got it here?

13          MR. LEBLANC:  Docket 1795.

14          THE COURT:  Just a second.  I actually put them in

15     order too.  Okay.  I'm there.

16          MR. LEBLANC:  Okay.  Your Honor, this page and the

17     page that follows -- so we have two pages that talk about

18     the law of novation.  And what it says is, "It is well-

19     settled that where the parties have clearly expressed or

20     manifested their intention that a subsequent agreement

21     supersede or substitute for an old agreement, the subsequent

22     agreement extinguishes the old one, and the remedy for any

23     briefs thereof is to sue on the superseding agreement."

24     That is the law of novation.

25          THE COURT:  So the problem I had with that

Page 105

1   argument, that I have with the argument, is it clearly says

2   they transferred obligations, which makes perfect sense.  If

3   LLC becomes the customer-facing entity, if that's who you're

4   dealing with, they transferred the obligations.  Okay?  But

5   the words do not say, and discharge released the liability

6   of CNL.

7            MR. LEBLANC:  But Your Honor, the point is, we do

8   not -- I do not believe you need a release to have that be

9   effective.  You need to have a superseding contract that

10   provide -- if you agree with us on the interpretation of

11   Section 25 under Versions 6, 7 and 8, the fact that they

12   entered into Versions 6, 7 and 8, and people operated --

13   whether you did it through the clickthrough, the 55 percent,

14   or you're part of the 45 percent that joined later, you're

15   subject to Versions 6, 7 and 8 and you have no claim.  Not

16   because you granted a release, but because there was a

17   superseding contract into which you entered.  And so if you

18   agree with us on the interpretation, that's -- that answers

19   the question.

20            THE COURT:  Let me ask you this, because I didn't

21   read the cases you cited on this page.  I actually did

22   highlight it.  Do any of those cases deal with the issue of

23   whether the initial obligor is released or discharged of any

24   liability to the assignee of the contract?

25            MR. LEBLANC:  I believe they -- I think that's the

Page 106

1    point of these cases, Your Honor, so I think they all do.

2    They're not -- I don't believe any of them are click through

3    contracts --

4              THE COURT:  Yeah.

5              MR. LEBLANC:  -- to be clear.  But I think each

6    and every one of them --

7              THE COURT:  Okay.

8              MR. LEBLANC:  -- are facing the situation that

9    Your Honor is facing.  That is to say that I didn't release

10   somebody else.  The novation doesn't have that effect.  And

11   the Court is answering that question.  And under New York

12   law, that's exactly what the effect is.

13             THE COURT:  I'll go back and read the cases.

14             MR. LEBLANC:  Yes.  Thank you, Your Honor.  Your

15   Honor, a couple other points.  Mr. Kwasteniet said -- and I

16   think this is a point that I think best illustrates the fact

17   that it's not just the extrinsic evidence of the Debtors'

18   intent.  There is evidence and we cite this in our brief.

19   And we have a slide on it, but we don't need to go to it.

20   There is evidence that strongly suggests that customers

21   didn't even believe that they had claims against every

22   entity.

23             THE COURT:  I read that.  I saw that in your

24   brief.

25             MR. LEBLANC:  But there's two other -- so the one

1    point is the one that we made with respect to where claims

2    were filed before this issue -- before somebody suggested

3    that they had claims everywhere.

4              But I'm going to make another point, Your Honor,

5    and that is this.  Mr. Koenig said that -- he was very

6    careful to say that our position is that every Debtor is

7    responsible for creditor claims.  To be clear, every entity

8    in the Celsius family under their interpretation is liable.

9    That includes many that are not Debtor entities, some of

10   which have meaningful assets.

11             To the best of our knowledge, no one has come to

12   this Court and said we need 105 relief, we need an

13   injunction to extend to these non-debtor entities, because

14   customers are showing up in droves filing claims against

15   them.

16             So the fact is that there is no suggestion that

17   customers actually believed that they had claims against

18   every entity, and instead, what the claims data -- and that

19   action is consistent with the view that we have, which is

20   that customers understood they have claims against every --

21   only against LLC, the 10,000 claims that were filed and only

22   11 against all Debtors.  I think that just answers the

23   question that until a lawyer came up with this argument in

24   front of this Court --

25             THE COURT:  Well, but they -- with their -- and

1    you and Mr. (indiscernible) complained bitterly or loud

2    about this when they filed schedules saying -- listing the

3    claims as against all Debtors.  And one of the things that I

4    think -- I don't remember if it was Mr. Nash or Mr.

5    Kwasteniet, or who said, said we did that so they could

6    avoid having to file proofs of claims against all Debtors.

7                MR. LEBLANC:  Your Honor, but I want to -- it's a

8    very, very, very good point.  That is why we used claims

9    data from only going up to November 15th.  So, really,

10   before this issue is percolating, in the process, we used

11   the claim --

12               THE COURT:  When did they file the schedules?

13               MR. LEBLANC:  I don't remember when they file the

14   schedules, Your Honor.  But we had the litigation on it

15   thereafter.  We can -- I can get you the answer --

16               THE COURT:  (indiscernible)

17               MR. LEBLANC:  -- when the schedules are filed.

18   But when we picked an earlier date, like when you're doing

19   an event study, you want to be far enough away from the

20   event so it's not -- the event itself is not affecting it.

21   And so the Creditors' Committee standing up and saying

22   (indiscernible) claims of every Debtor, writing letters that

23   we've submitted as part of our exhibits to the Debtor saying

24   you'd better make sure you're serving claims of every

25   Debtor.  We tried to isolate it from that and just look at

1    what was the experience of creditors?  What did they do?

2    How did they act before the influence of those issues?

3             Your Honor, had asked some questions about

4    entities that existed before the novation.  Exhibit 9 in our

5    exhibits that have been admitted, that includes a pre-

6    migration org chart.  It is -- I believe it's a little bit

7    out of date because we know that the mining entity existed.

8    But you can see there that a Celsius lending entity exists,

9    and subsequent to that, that changed to a different entity.

10            But the point is, Your Honor, there's all of these

11   entities there, none of which are even argued to be liable

12   to creditors under the prior version -- under Versions 1

13   through 5.  In those entities all existed pre-migration.

14            Two more points, Your Honor, and then I'll

15   conclude.  One, the language Mr. Hirschi just looked at with

16   you -- and I know Your Honor moved him on from this -- but

17   the two bolded paragraphs that were added to the terms of

18   use on the second page, that says, "Celsius is a lending

19   platform."  And his argument to Your Honor was, see, that

20   means everybody in the Celsius family is a lending platform.

21            The problem is, that runs right headlong into the

22   limitations that the FCA put on this company.  The FCA

23   couldn't have been more clear.  You can't -- you, CNL, can't

24   have contractual relationships with the customers.  Mr.

25   Hershey's saying, well --

Page 110

1           THE COURT:  But what you still haven't shown me is

2     that CNL said that you can't assume liability to customers.

3           MR. LEBLANC:  Well, Your Honor, I mean --

4           THE COURT:  Required that they migrate the

5     customer-facing entity, but that to me is not the same thing

6     as saying, and you're all absolved of all liability.  We

7     won't let you continue to do business in the U.K. unless

8     you're absolving all liability to customers.  There's

9     nothing like that.

10          MR. LEBLANC:  But Your Honor, there are -- I mean,

11    we looked at this, and I know you talked about this with Mr.

12    Koenig -- it's the part that he very graciously said is

13    probably our best piece of evidence with respect to that

14    point.  That email is written by one of the drafters of the

15    terms of use.  And it's critical.  And I know Your Honor

16    appreciates this; that's, I think, why you asked the

17    question.  The fact that Mr. Cohen-Pavon is saying to the

18    FCA that we will continue to have liability to these rump

19    creditors, the clear implication --

20          THE COURT:  Is that they don't have liability --

21          MR. LEBLANC:  They don't have liability to the --

22    the rump creditors are going to be the handful that don't

23    accept clickthrough and accept the terms of use.  They're

24    not going to be the billions of dollars of customer claims.

25    So he is reporting, and it appears in the migration plan

Page 111

1      filed with them, and it appears in responses to questions

2      they ask, they are saying affirmatively to them that we are

3      migrating liabilities and we will not have those

4      liabilities.  I don't --

5                  THE COURT:  All right.

6                  MR. LEBLANC:  I'm not sure how much more clear he

7      could say it.  And critically, that is -- and this is in the

8      stipulated facts, Your Honor -- Mr. Cohen-Pavon is one of

9      the drafts-people of the terms of use.  So you have to

10     believe that he wrote that to the U.K. regulator and then

11     turned around and unambiguously incurred unlimited

12     liabilities to all customers at CNL the day after doing

13     that.

14                 And you'd also have to believe, Your Honor -- and

15     I think this connects to the last factual point I'd want to

16     make -- you would also have to believe that the company

17     entered into an asset transfer agreement and in intercompany

18     claim agreement.  And to be clear, I don't know if Mr.

19     Hershey just hasn't seen this in the intercompany claim

20     agreement.

21                 But the intercompany claim agreement -- we looked

22     at this, Your Honor, and I told you there weren't provisions

23     that I thought were particularly relevant -- but there is,

24     in light of the argument that was made, the suggestion that

25     there hasn't been a migration.  The intercompany claim

1      agreement actually specifically says that includes assets

2      that remained at CNL.

3              So, for example, if CNL had customer assets prior

4      to the migration because it was the customer-facing entity,

5      that it had deployed in an institutional loan, and therefore

6      wasn't able to transfer them down to LLC, that became part

7      of the customer -- the intercompany claim issue.  So that

8      became part of the intercompany claim.  That's what that

9      agreement says.

10             And so, the idea that --

11             THE COURT:  Which exhibit is that again, if you

12     would?

13             MR. LEBLANC:  Yes, Your Honor.  That is Exhibit

14     16.

15             THE COURT:  Okay.  All right.

16             MR. LEBLANC:  Okay.  That's the intercompany

17     operation and loan agreement, Your Honor.  And I'm looking

18     in particular at Section 2.1, which is on Page 131 of 158.

19             THE COURT:  Yep, I'm there.

20             MR. LEBLANC:  Bates Number 633 --

21             THE COURT:  Yes.  Yes.

22             MR. LEBLANC:  Section 2.1 in the second sentence

23     says, "The parties acknowledge that the assets also include

24     certain cryptographic assets that belong to lenders.  Users,

25     as such term is defined in that certain asset transfer

Page 113

1    agreement dated by and between, which were not transferred

2    from borrow to lender in connection with the transfer of the

3    transferred assets and liabilities, and that the parties

4    wish to include the assets covered -- which to include in

5    the assets covered by this agreement."

6              So, Your Honor would have to believe that when the

7    parties -- when Celsius as a company engaged in the

8    migration and determined to transfer the assets and

9    liabilities and the obligations between those two entities,

10   that it did so and included this intercompany claim

11   agreement, but did it in a way that didn't absolve, didn't

12   intend to resolve or absolve CNL of liabilities to

13   customers.  It doesn't make any sense.

14             If CNL was always going to be obligated to

15   customers, if that was the intent -- and not just CNL, but

16   every entity within the corporate family -- why would you

17   even have the intercompany loan agreement?  It doesn't make

18   any sense.

19             The only way that you could reconcile that is to

20   recognize that what was intended in this entire transaction

21   was to do exactly what we contend.

22             THE COURT:  What about the 55 percent of account

23   holders that didn't accept Versions 6 through 8?

24             MR. LEBLANC:  You mean the 40 -- do you mean the

25   45 percent that didn't --

Page 114

1              THE COURT:  Yeah.

2              MR. LEBLANC:  -- accept, or the 55?  I'm sorry,

3     Your Honor.

4              THE COURT:  I thought 55 --

5              MR. LEBLANC:  It was 55 percent prior to the

6     migration.

7              THE COURT:  Yes.

8              MR. LEBLANC:  They clicked through, checked the

9     box, actually accepted.

10             THE COURT:  Okay.  And 45 percent --

11             MR. LEBLANC:  45 percent came after.

12             THE COURT:  Okay.

13             MR. LEBLANC:  Right.  And --

14             THE COURT:  No, the Committees' and Debtors' point

15    is that for the 55 percent would have had claims against

16    CNL.  Mr. Hershey points to Second Circuit law on releases

17    that requires they be very specific.  And your answer is

18    what on that?

19             MR. LEBLANC:  My answer is the relevant law --

20             THE COURT:  Is --

21             MR. LEBLANC:  -- is the law of novation.

22             THE COURT:  Novation.  Okay.

23             MR. LEBLANC:  That the parties entered into a new

24    contract --

25             THE COURT:  I'll read those cases that your --

Page 115

```
 1              MR. LEBLANC:  Right.  That the parties --
 2              THE COURT:  -- in your brief.  I didn't read that.
 3      I actually highlighted that stuff --
 4              MR. LEBLANC:  Yeah.
 5              THE COURT:  -- but I didn't read the case.  Didn't
 6      have time to read the cases.
 7              MR. LEBLANC:  And Your Honor, what is interesting
 8      is I mentioned that that's in our opening brief.  We did not
 9      see a response to that in the Debtors' and the Committees'
10      reply briefs.  And I just -- I don't think there is a
11      response.  The relevant question is, when you have a
12      contract with a party, it's not a release.  If you enter
13      into a new party with that contract, that supersedes the
14      pre-existing contract.  That becomes the governing contract.
15              And if we are right on the interpretation, Your
16      Honor, and I think -- you know, we -- I believe we've
17      demonstrated both on the words of the contract, but also
18      more importantly on the drafting -- not more importantly,
19      because words are what are paramount -- but to the extent
20      Your Honor concludes that there is ambiguity, and the only
21      way you could do is if you believe the Debtors' argument,
22      which is that affiliates of affiliates are excluded and
23      that's all that's intended by that, and therefore, you're
24      really rendered that affiliate word just a dead letter?  If
25      you believe that that's reasonable, and you believe our
```

1    interpretation is reasonable, then you find ambiguity and

2    you turn to extrinsic evidence.

3         If you don't believe their interpretation is

4    reasonable, then you rule in our favor.  If you find it

5    ambiguous, we -- the Debtors haven't even offered extrinsic

6    evidence to support their -- the intent.  We have offered

7    extensive -- let me be clear.  I want to be precise.  They

8    offered one document, a financial statement from 2020.  So

9    over a year prior to -- it covered the financial year 2020,

10   so a year prior to the migration.  But the Debtors haven't

11   really offered any relevant extrinsic evidence.  And we

12   think there's very compelling extrinsic evidence that shows

13   exactly what the parties were doing.

14        And Your Honor, as I said at the outset and I'll

15   repeat again here, we understand that we're asking you to do

16   something that is difficult because the customers are

17   standing up saying how can -- and Mr. Hershey did it right

18   at the outset -- I'm sure the Committee will tweet something

19   out tonight about what we've argued -- how can the preferred

20   equity try to jump in front of the creditors?

21        What we are saying, Your Honor, is the Bankruptcy

22   Code and bankruptcy law and New York law compels an outcome

23   here.  That outcome is that the customers have claims

24   against LLC.  They do not have them against other entities.

25   Whether or not the other intercompany relationships -- the

1    inter-creditor loan agreement -- whether or not that leads

2    to a recovery from -- for the preferred equity, that remains

3    to be seen.

4         But that is the structure that was actually in

5    place here, that there would be a customer-facing entity and

6    everything else would be covered by intercompany

7    relationships.  And we believe that's what the law requires

8    here.  As difficult as it may be for customers to hear that

9    they don't have claims against CNL, that's the outcome that

10   is compelled, Your Honor, by the plain language and the full

11   range of extrinsic evidence.

12        THE COURT:  Okay.

13        MR. LEBLANC:  Your Honor, thank you very much.  I

14   know Your Honor is exhausted.  Been here for a long time.

15   But thank you very much for the time and attention you've

16   given to this.

17        THE COURT:  Thank you very much.  I'm going to

18   take it under submission.

19        (Whereupon these proceedings were concluded at

20   2:12 PM)

21

22

23

24

25

Page 118

1                     C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 8, 2023

[& - 45]                                                              Page 1

| & | | | |
|---|---|---|---|
| **&**  3:3,10,17 16:5 21:11 62:16 64:4 82:4 | 54:18 79:6 | **1795**  2:7 104:3 104:13 | 91:15 92:3,5,6 92:9 95:15 96:10 102:23 103:3,11 105:11 |

| 1 |
|---|

| | **12151**  118:6 | **1796**  2:7 | |
| | **1221**  3:19 | **1797**  2:7 | |
| | **126**  46:4 | **1798**  2:7 | |
| | **127**  35:17 | **1799**  2:7 | **27**  104:3,4,5 |
| | **128**  36:4,5,6 | **1953**  2:7 | **2:12**  117:20 |

**1**  19:10,12,14 20:3,24 21:3,4 21:4,7 22:1,5,7 30:13 42:21 44:17 53:2,6 53:12,21 56:15 68:16 72:18 78:17 83:2,19 99:18 109:12

**13**  21:13,22 22:1,5,7 34:23 53:3 61:4,11 61:12 78:17 89:19,20,22,24 91:9,14,16,17 92:4,7

**1955**  2:8
**1960**  2:8
**1962**  2:8
**1965**  2:8
**1986**  2:8 19:2
**1991**  2:8
**1:59**  1:17

| 3 |
|---|

**3**  20:2,11,25 21:5 79:8
**30**  20:25
**300**  118:22
**31**  19:23 20:4 21:3,4,5,8 66:17

**1.1**  35:22
**10**  19:10,12,14 39:20,24,25
**10,000**  107:21
**100**  54:23 79:7 86:21
**10001**  3:13
**10004**  1:14
**10020**  3:20
**10022**  3:6
**105**  107:12
**106**  55:20
**11**  78:17 107:22
**110**  55:17,18 55:19
**1126**  46:14 69:3,7 70:7
**11501**  118:23
**12**  21:20,24 34:13,23 54:16

**13.3**  59:19,24 77:14,17,21 78:2,6,8 90:2,7 90:14
**13.3.**  60:15
**131**  112:18
**1338**  2:6
**1382**  2:6
**15**  34:14,15 35:8 37:16,20
**1552**  2:6
**158**  35:17 54:23 79:8 112:18
**1592**  2:6
**15th**  16:9 108:9
**16**  51:4,5,7,7 112:14
**1619**  2:7
**1631**  2:7
**1729**  2:7
**1747**  2:7

| 2 |
|---|

**2**  20:2,11,25 21:5 72:19 78:17 99:17
**2.1**  112:18,22
**20**  59:5,8
**200**  49:13
**2020**  116:8,9
**2023**  1:16 118:25
**21**  60:3
**22**  45:11,13 46:3
**22-10964**  1:3
**24**  26:9 67:14
**25**  24:4,7,14,15 24:18,21 25:14 26:13,14 37:15 46:16 68:16 70:8 72:24 78:18 87:25 89:17,19,24 90:13 91:8,15

**318**  45:23 46:14 47:14 69:3,6
**32**  66:2,2,12
**33**  66:19
**330**  118:21
**341**  99:19
**369**  46:16
**371**  46:20,21 70:7
**393**  46:14

| 4 |
|---|

**4**  20:3 21:7 45:19
**40**  113:24
**45**  82:24 83:6 83:24 84:2,7 86:16 105:14 113:25 114:10 114:11

| 5 | 7 |
|---|---|
| **5**  30:14 42:21 44:17 45:4,20 45:22,24 47:11 48:12 49:7 56:24 83:2,20 109:13 | **7**  20:3,11,25 21:5 23:24 57:1 73:8 86:19 105:11 105:12,15 |

**50**  86:20,22,22
**55**  3:12 82:21
  83:4,20 84:3,6
  85:24 86:13,17
  105:13 113:22
  114:2,4,5,15

| 6 | 8 |
|---|---|
| **6**  1:16 20:3 21:7 23:22,23 32:11,12,13 38:4 42:22,23 43:6,13,14,21 44:19 45:3,22 45:24 47:11 49:8 54:22,23 57:1 66:8 73:5 73:7 81:1 82:22,25 83:6 83:13,21,25 84:2,4,10,15 84:20,23 86:18 86:19,20,21 87:22 88:2 99:20 104:7 105:11,12,15 113:23 | **8**  20:4 21:8 23:24 24:4 38:4 42:22,23 44:20 53:6 57:1 66:5 73:7 73:8 86:19 105:11,12,15 113:23 118:25 |

**601**  3:5
**633**  112:20

**850**  46:6

**9**

**9**  30:2,2,6
  38:24 40:23
  62:24 78:17
  100:7 109:4

**a**

**aaron**  5:23
**abigail**  8:11
**ability**  26:10
**able**  67:4 91:2
  112:6
**above**  55:23
**abreu**  5:8
**absent**  18:2
**absolutely**  38:2
  93:13
**absolve**  92:4
  103:18 113:11
  113:12

**absolved**  37:17
  38:6 41:22
  43:16 44:12
  67:23 79:3
  110:6
**absolves**  37:7,9
**absolving**
  110:8
**absurd**  32:10
  98:10
**accept**  35:25
  75:4 86:19
  110:23,23
  113:23 114:2
**accepted**  114:9
**account**  2:4,5
  44:8 56:22
  71:9 77:7
  79:11 81:2
  82:21 86:20,21
  87:22 113:22
**accountholder**
  87:21
**accountholders**
  16:19,22 68:7
  78:24 79:15
  82:7,16 83:4
  83:21,22 87:15
  87:16
**accounts**  55:8
  79:11
**accurate**  118:4
**accused**  48:15
**acknowledge**
  44:5 112:23
**acknowledged**
  28:23 38:3

**acknowledges**
  27:20
**acquired**  76:15
**act**  109:2
**acting**  39:2
**action**  107:19
**actionable**  26:8
**actions**  52:17
**activities**  51:23
  55:6 79:10
**actual**  89:4
**actually**  18:21
  19:3 21:20
  30:10 32:4
  33:20 46:20
  48:13 53:17
  60:2 61:1
  66:14 68:20
  71:24 72:1,25
  84:19 87:4
  88:4,7 90:16
  99:4,14 101:20
  104:14 105:21
  107:17 112:1
  114:9 115:3
  117:4
**add**  58:22
  89:10 91:14
**added**  57:20
  69:13 70:14,15
  73:7 88:2
  94:14 109:17
**additional**
  17:20 29:19
  52:15 55:24
  84:12

**address** 16:20
33:2 42:10
59:18 77:13
81:19,20 85:20
97:23 101:11
101:18
**adler** 5:9
**admission** 19:9
20:4
**admit** 33:20
79:17
**admitted** 19:12
19:14 20:12,25
21:5,8 22:5,8
34:14 65:16
109:5
**advance** 95:2
**aeronautical**
102:2
**afework** 5:10
**affect** 80:21
**affected** 80:21
**affecting**
108:20
**affiliate** 24:24
30:3,16 37:14
40:23 47:7
59:13,15 70:16
71:6,13,24,24
71:25 73:6
74:3,17,18
89:25 93:3
96:19 115:24
**affiliates** 29:20
38:24 44:24,25
45:1,5,9 47:15
48:8 55:9 57:8

57:18,19,20
58:6,7,8,15,17
58:23 59:1,12
68:8,11,14
69:13,20 70:2
71:4,12,14,19
71:19,21 72:2
72:14 73:10,18
73:20 74:21,22
80:9 83:15
84:11 87:24
88:17,22 92:19
92:19,19,25,25
93:19 94:10,18
95:15,17,24
96:1,9 102:5
102:20,21,22
103:1 115:22
115:22
**affirmative**
64:7
**affirmatively**
111:2
**afternoon** 16:4
20:13 64:3
82:3
**agenda** 16:6
**agent** 70:20
**agents** 45:6
**ago** 28:19 82:6
**agree** 20:10,14
23:13,15,15,23
26:13 29:1,3
37:21 43:14,15
43:16 55:8
62:25 70:1
73:10,17 74:3

75:4,6 78:1
79:12 83:13
84:13 90:8,9
90:17 91:13,18
91:20 92:3,8
96:3 105:10,18
**agreed** 20:2
22:13,20 26:17
56:18 82:25
92:6 98:9
100:11
**agreeing** 37:1
40:5 91:18
98:10 104:6
**agreement**
28:15 29:18,21
33:22 34:18
35:16,23 38:5
38:7 39:9 40:1
40:3,24 50:22
50:23 51:1,4,8
51:11,14 53:2
65:12,14 95:14
95:24 104:20
104:21,22,23
111:17,18,20
111:21 112:1,9
112:17 113:1,5
113:11,17
117:1
**agreements**
50:18 62:5
**agrees** 34:20
36:23
**ahead** 21:9
22:9 32:16
33:12 40:15

42:5 64:23
81:22 82:1
89:20 97:14,25
**aizpuru** 5:11
**albino** 9:11
**alerted** 16:24
16:24
**alexander**
10:20 12:18
**ali** 10:19
**alifarag** 9:12
**alleged** 25:13
25:25
**allow** 34:6
38:17
**almeida** 4:21
5:12
**alter** 80:3
**ambiguity**
115:20 116:1
**ambiguous**
65:2,10 93:15
116:5
**amelia** 8:6
**amended** 53:18
**americas** 3:19
**amerson** 9:13
**amy** 9:25
**analysis** 78:16
**andrew** 3:15
4:16 9:8,17
13:17 19:7,16
21:2 22:2,10
81:18 100:14
101:17
**anne** 9:7

annemarie 8:7
answer 29:16
  32:24 39:1
  40:14,16,16
  80:24 99:1
  108:15 114:17
  114:19
answering
  106:11
answers
  105:18 107:22
anubhav 13:14
anvar 13:2
anybody 29:17
  31:15 81:13
  103:10
apologize 35:3
  35:4 54:23
app 36:18
appealed 82:10
  82:12,13
appear 17:9
appears 110:25
  111:1
appliable
  77:23
applicable
  23:24 60:19,20
  61:1,16 77:22
  91:5 92:1
applies 59:20
apply 76:5
appreciate
  103:25
appreciates
  110:16

approach
  46:10
appropriate
  37:1 40:8
  64:18,21
araceli 8:13
archer 5:13
arcos 12:13
argue 22:14,17
  22:17,19 24:3
  33:2 50:8
  59:22 81:3
  83:16 86:15
  95:3,13 103:7
  103:7
argued 77:14
  109:11 116:19
arguing 23:19
  54:3 57:13
  64:23 71:11
  94:21 95:18
  96:5 98:19
argument
  20:16,20 24:8
  24:11,12 26:19
  27:3,25 28:5
  30:3,7 31:1
  32:10,21 37:14
  42:19,19 44:21
  44:22 47:10
  52:21 54:12,13
  58:23 59:19
  62:14 64:8
  67:13 70:1
  71:12 73:8,13
  75:4 80:6 83:5
  83:24 84:9,13

87:22 89:21
  95:23 96:3,4
  97:13 98:22
  101:22 105:1,1
  107:23 109:19
  111:24 115:21
arguments
  27:18 30:9
  61:21 84:6,12
arie 13:8
arising 64:14
artfully 77:20
article 35:22
artur 5:8
asked 43:13
  54:15,17 78:22
  98:16 99:21,24
  100:19,21
  109:3 110:16
asking 38:23
  58:15,17,21,22
  91:13 101:4
  103:14 116:15
assert 26:10
  27:11 92:5
assertable 27:1
  27:2 28:11
asserted 26:22
  28:3 42:25
asset 35:16
  50:23 52:9
  79:14 99:22
  111:17 112:25
assets 27:23
  36:2,5 47:5
  50:24 51:12,13
  51:20,22 52:6

55:7,11 61:4
  62:7 63:20
  67:4 69:18
  77:7 79:10
  82:7 89:12,12
  89:14 91:3
  96:17 99:19,25
  100:8 107:10
  112:1,3,23,24
  113:3,4,5,8
assign 36:1
  66:21
assignee
  105:24
assigning
  34:20
assignment
  65:8,11,24
  66:13
assume 23:15
  34:20 35:25
  39:3,4 86:19
  110:2
assumed 33:6
  41:18 44:11
assuming 28:2
  37:18
assure 62:8
attached 35:15
attempt 16:11
  16:15
attempts 17:5
attention 16:13
  17:7,15,17
  117:15
attorneys 3:4
  3:11,18

**attributable** 55:7 79:11
**austin** 15:4
**available** 84:6 92:2 100:2
**avenue** 3:5,19
**avery** 6:11
**avino** 9:14
**avoid** 59:17 108:6
**aware** 17:4,5,6 17:6,17,20 62:17 87:18

**b**

**b** 1:21 3:11 9:19 11:8 16:7 19:8,17 20:24 21:7 22:11,13 34:14 35:6 51:7 53:5 65:18 82:15 87:12 95:12
**back** 24:20 33:14 35:21 36:3 42:14 44:10 47:14 51:13,23 52:7 54:16 56:16 63:2 64:7 65:6 77:24 80:6 86:2 106:13
**backwards** 68:21
**balance** 53:11 56:4,22 86:20 86:21

**balances** 36:20 44:8
**balluku** 9:15
**bankrupt** 91:1
**bankruptcy** 1:1,12,23 54:10 59:25 60:10,20 61:5 61:13 78:4,4,5 90:1,4,4,19,21 91:10,10,18 92:5 116:21,22
**barbecue** 72:7 72:9
**barnes** 5:14
**basic** 90:12 91:12
**basically** 67:23 78:1
**basis** 24:8 42:25
**bates** 112:20
**bear** 46:9
**beaulac** 9:16
**becin** 5:15
**began** 16:11 38:22
**beganski** 9:17
**beginning** 35:22 40:3 47:14 52:12 68:6 104:2
**begins** 46:21
**behalf** 19:8,17 21:11 22:11,15 34:19 35:18,19 65:25 82:4

**belabor** 58:14
**believe** 16:16 17:25 21:22 25:16 27:11,21 30:12 40:25 43:19 51:4 52:16,24 54:5 57:3 61:20 63:23 65:15 66:14 69:1 74:18 76:18 81:15 86:15 105:8,25 106:2 106:21 109:6 111:10,14,16 113:6 115:16 115:21,25,25 116:3 117:7
**believed** 52:18 56:8 107:17
**bellamy** 9:18
**belong** 82:18 112:24
**ben** 11:1
**bench** 18:12 25:10 29:14
**beneficiary** 61:19
**benefit** 27:14 30:24 63:11
**berg** 15:1
**best** 60:12 106:16 107:11 110:13
**beth** 7:13
**better** 21:23 108:24

**beyond** 63:21
**big** 89:9
**billion** 49:13 75:24 77:3 99:19,21
**billions** 62:9 63:4 110:24
**bilter** 9:19
**binder** 21:24 35:5,6 45:25 46:1 53:7 70:8
**binders** 18:13 18:14,16,18 35:3
**binding** 88:22
**birch** 5:16
**biswas** 9:20
**bit** 65:7 68:21 72:5 77:20 85:21 88:13 101:21 109:6
**bitcoin** 86:20 86:21
**bitterly** 108:1
**bizarre** 72:21
**blank** 77:19
**blissfully** 35:10
**block** 89:9
**blowing** 27:18
**board** 43:5 49:18
**bolded** 109:17
**book** 75:25
**boroff** 9:21
**borrow** 113:2
**borrowed** 48:14

**borrowing** 48:19 89:11
**bottom** 55:4
**bound** 69:4
**bourgeois** 5:17
**bovenzi** 9:22
**bowling** 1:13
**box** 43:14 44:1 44:2 55:23 67:20,21 81:6 86:18 114:9
**bradley** 6:18
**breach** 26:19 48:16
**break** 102:12
**breaker** 78:8
**breuder** 9:23
**brian** 5:14 7:15 7:17 11:15 12:3 14:9,14
**brianna** 9:19
**brief** 20:16 22:16 24:6 25:19 28:10 58:10 67:13 71:22 83:16 86:6 89:23 98:18 103:25 104:1,2 106:18 106:24 115:2,8
**briefed** 28:12
**briefing** 2:3
**briefly** 85:20
**briefs** 24:18 32:20 81:13 102:7 104:23 115:10

**brier** 4:6 5:18
**bring** 16:12 17:7 72:9,11
**broad** 87:11 90:20 92:1
**bronge** 5:19
**brought** 25:22 28:6
**brown** 4:8 5:20
**bruh** 5:21
**bryan** 7:6
**buenviaje** 9:24
**burks** 14:8
**bury** 72:24
**business** 36:19 43:15 48:9 63:21 110:7
**buy** 63:22 95:23
**buys** 31:15

**c**

**c** 3:1 7:24 11:22 16:1 91:25 93:24 95:20 96:8 118:1,1
**cabin** 29:12
**calin** 8:18
**call** 17:14,16 71:23
**cameron** 6:3
**capital** 58:24 91:25 95:20 96:8
**capitol** 93:24
**capture** 72:4

**carcamo** 12:13
**careful** 100:16 107:6
**carl** 6:2 9:3
**caroline** 9:2
**carolyn** 10:1
**carried** 42:23 66:18
**carries** 66:17
**carry** 22:18 31:12
**carved** 72:14
**carveout** 96:20
**case** 1:3 3:17 16:8,17 21:11 25:25 33:21 54:3,5 62:16 76:3 82:4 86:5 86:7,8 98:21 99:2,4 115:5
**cases** 105:21 105:22 106:1 106:13 114:25 115:6
**castor** 9:25
**catariana** 12:25
**categorical** 99:3
**cathy** 7:9 14:11
**cdpq** 22:15
**cede** 19:4
**celsius** 1:7 16:5 23:10 25:7 30:6 36:18 40:4,7 43:8 44:6,6,7,14

47:6,13,15,21
47:23 48:9,11
48:14,15,16,21
48:24 50:17
55:6,9,18 56:2
56:8,20,21
57:17,18,19,21
58:8,8 59:10
60:25 61:1,3
63:2 65:5
66:21,25 67:2
68:5,8,8,11,13
68:13,13 69:9
69:12,16 70:2
70:24 71:2,4,8
71:16,18,18,20
71:25 72:17,18
72:20,23 73:1
73:1,20 75:2,7
76:6 77:25
78:13,18 79:9
80:2 83:14
84:22 87:5,23
88:16,17,22,25
88:25 89:1,3
89:10,12,13,15
91:1,4,6,8,25
92:2 93:3,5,5
93:14,16,19,23
93:25,25 94:1
94:2,4,5,6,11
94:18 95:9,14
95:20,24 96:6
96:7,8,9,13,13
96:18 97:4,4,6
97:6,8,8 99:13
99:18 101:23

101:23 102:5
102:20 107:8
109:8,18,20
113:7
**certain** 2:2
112:24,25
**certainly** 28:4
31:20 62:3
63:23 64:17
77:16 85:4
**certified** 118:3
**cetera** 45:6
**chain** 27:10
**chairman** 26:8
**chamberlayne**
10:1
**chambers**
16:24 17:21
53:7
**chang** 10:2
**change** 40:17
44:22 45:3
49:9,19 62:21
78:6 80:11
84:20 87:3
90:7,15 91:9
91:16,17 92:7
94:11 95:20
102:21 103:4
103:13,15,15
**changed** 47:11
76:2 109:9
**changes** 42:22
42:24 45:24
49:5 68:21
80:25 88:8,12
103:17

**changing** 43:6
103:21
**chapman** 10:3
**charles** 14:13
**chart** 59:9,11
89:5 93:18
109:6
**chase** 7:14
**check** 43:13
44:2 67:20,21
**checkbox** 98:8
98:12
**checkboxes**
98:2,7,11
**checked** 86:18
114:8
**chen** 10:4
**choice** 102:20
**choose** 93:20
93:21,23
**chooses** 94:20
**chose** 88:16
89:10,22
**chris** 3:8 5:15
16:4 20:22
64:4
**christiansen**
10:5
**christina** 10:7
**christopher**
4:4 5:22 6:16
10:17
**chutchian** 10:6
**ciancarelli**
10:7
**circuit** 114:16

**circumstance**
39:4
**cirkel** 10:8
**cite** 33:16 86:5
97:18 100:3
103:24 106:18
**cited** 86:6 99:2
105:21
**claim** 25:22
27:6 28:6,13
28:25 29:6
48:16,20,23
52:8,10,13,20
52:22,24 56:25
60:11,17,20,21
61:17,17 64:13
64:20 67:19
77:6 83:5 85:9
86:16,22,25
87:13 90:7,14
98:22 105:15
108:11 111:18
111:19,21,25
112:7,8 113:10
**claimed** 98:23
**claiming** 23:2
**claims** 2:5 24:5
24:9 25:5,6,15
26:11,21,25
27:13 28:2,10
28:11,16,21,22
29:4 31:9,12
31:19,22 32:1
32:1,3,4 41:4
49:13 52:18
62:9 64:12,12
64:14 68:12

70:4,6 71:9
73:10,18,22
74:4,23 75:3,5
75:14 82:17
84:21 85:2,23
85:25 86:1,14
91:8 93:6
95:18,25 97:21
106:21 107:1,3
107:7,14,17,18
107:20,21
108:3,6,8,22
108:24 110:24
114:15 116:23
117:9
**claire** 4:23 6:1
7:23
**clarify** 101:7
**clause** 87:23
95:3
**clauses** 70:25
**clean** 66:10
**clear** 19:11
24:11 25:10
26:24 27:12,16
27:19 28:1
31:2,11,16
37:15 49:18
56:11 57:5
60:9 62:16
63:25 70:19
71:13 76:4
100:25 106:5
107:7 109:23
110:19 111:6
111:18 116:7

[clearer - completely]                                              Page 8

| | | | |
|---|---|---|---|
| **clearer** 93:8 | 43:16 44:12 | **coins** 52:8,10 | **committees** |
| **clearly** 38:8 | 47:17 50:13,22 | 61:6 72:20 | 114:14 115:9 |
| 48:4 67:21 | 51:13,19,23,23 | 74:7,11,11 | **common** 38:16 |
| 95:10 104:19 | 52:5,10,10,20 | 82:17,18 99:23 | 45:6 |
| 105:1 | 56:25 57:2,10 | **coleman** 10:9 | **communicate** |
| **clerk** 34:10 | 59:16 62:8,10 | **collectively** | 92:25 |
| **click** 81:6 | 67:22 68:3 | 69:13 88:18 | **communicated** |
| 106:2 | 69:1 73:8,17 | **colloquy** 64:5 | 56:9 87:14 |
| **clicked** 114:8 | 73:17,18 74:6 | 64:25 72:5 | **communicati...** |
| **clickthrough** | 75:18,20,24 | 103:6 | 38:11 56:10 |
| 105:13 110:23 | 76:8,20,21 | **colodny** 5:23 | **communicati...** |
| **clickwrap** | 77:1 78:23 | **come** 38:12 | 38:11,12 42:8 |
| 103:12 | 79:14 80:10,21 | 49:6 58:25 | 54:17,20 65:22 |
| **clients** 23:5 | 81:1,4 82:25 | 61:5 65:6 72:8 | 67:19 |
| 62:3,16,19,22 | 83:2,3,5,19,22 | 107:11 | **companies** |
| 63:20 80:1 | 83:25 84:1,17 | **comes** 50:22 | 54:9 |
| 85:5 | 84:23 85:9,10 | 55:17 57:1 | **company** 27:2 |
| **closed** 70:3 | 85:25 86:14 | 103:25 | 30:13 32:8,10 |
| **cni** 26:6 | 87:1,1,3 91:16 | **comfort** 63:5 | 39:3,5 50:14 |
| **cnl** 23:3,14,14 | 92:4,7 99:25 | **comment** | 56:7 57:24 |
| 24:5,9 25:14 | 102:21,23 | 67:11 | 62:19 63:10,12 |
| 26:2,8,11,12 | 103:1,18 104:6 | **commented** | 63:20 69:17 |
| 26:24 27:10,13 | 105:6 109:23 | 100:18 | 74:24 76:7 |
| 28:1,6,16,21 | 110:2 111:12 | **committed** | 80:7,8 109:22 |
| 29:4,13,18 | 112:2,3 113:12 | 25:12 26:7,8 | 111:16 113:7 |
| 30:6,16,19,20 | 113:14,15 | 26:12 | **compelled** |
| 31:2,3,3,6,20 | 114:16 117:9 | **committee** | 117:10 |
| 31:20 32:1,14 | **cnl's** 26:18 | 3:18 16:24 | **compelling** |
| 32:22,25 33:8 | 84:7 | 17:6 20:10,14 | 116:12 |
| 34:19,21 35:18 | **coco** 5:22 | 21:12 22:7,19 | **compels** |
| 36:1,25 37:3,8 | **code** 91:18 | 31:23 33:2 | 116:22 |
| 37:9,16,18,24 | 116:22 | 54:3 77:14 | **complained** |
| 38:1,5 39:2,17 | **cohen** 41:12 | 82:5 108:21 | 108:1 |
| 40:9 41:3,4,8 | 42:9 110:17 | 116:18 | **completely** |
| 41:15,20,20,22 | 111:8 | **committee's** | 87:19 96:21 |
| 41:24 42:2,11 | **coin** 60:8 | 22:1,4 59:19 | 97:8 |
| 42:15,20,20 | | | |

**completion**
  55:5 79:8
**concede**  28:25
**concept**  62:11
  80:17
**conceptual**
  92:20,21
**concern**  101:5
**concerned**  41:5
**concerning**
  16:14
**conclude**  27:22
  100:4 109:15
**concluded**
  117:19
**concludes**
  115:20
**conclusion**
  50:6 52:15
  101:11
**condition**
  53:22
**conditions**
  35:23
**conducted**
  100:21
**conlon**  5:24
**connection**
  55:25 60:7,24
  91:6 113:2
**connects**
  111:15
**conscious**
  102:19
**consent**  61:3
**consenting**
  36:17

**consequences**
  76:10
**conservatively**
  49:13
**consider**  24:13
  75:11
**consistent**  29:2
  49:6 54:7
  55:13 56:6
  63:25 71:7
  107:19
**consolidation**
  64:16
**constructed**
  61:18
**constructive**
  60:11 64:20
**construe**  97:16
**construed**
  97:19
**contains**  86:9
**contemplated**
  75:17
**contemplation**
  90:19
**contend**  49:10
  113:21
**contending**
  28:1
**contest**  84:8
**context**  24:13
  89:3
**continue**  16:25
  17:1 55:9 56:2
  56:3 75:24
  79:12,14 110:7
  110:18

**continued**
  32:25 42:21
  51:25
**contract**  20:18
  22:23,24,25
  23:2,5,9 26:20
  27:12,21 37:12
  37:12 38:10
  58:19 65:2,4,9
  65:21 77:23,23
  78:3,5 87:18
  90:5,6,14
  94:17 97:17,17
  98:6 103:17
  105:9,17,24
  114:24 115:12
  115:13,14,14
  115:17
**contracting**
  72:18 84:17
  87:3 103:21
**contracts**
  23:14 78:10
  92:21 103:12
  106:3
**contractual**
  26:15 28:13
  37:11 39:5
  40:7,19 41:3
  41:14 48:19
  56:1 58:20
  63:5 67:12
  69:21,22 80:4
  86:25 93:3
  109:24
**contractually**
  27:5,22 30:8

  82:17
**control**  30:5
  49:4 55:7 59:3
  61:24,25 62:1
  79:10
**controlling**
  81:13
**controls**  87:24
**cook**  10:10
**cooper**  10:11
**copies**  34:2
**copy**  18:8,19
  19:19 21:18
  34:3,4 46:11
  46:12,19
**cordry**  5:25
**cornell**  5:5 6:1
**corporate**  27:4
  27:10 59:10
  80:18 93:17
  113:16
**correct**  19:1
  23:1,7,15,16
  26:11 37:19
  47:22 51:6
  60:22 70:12
  82:22,23 83:18
  85:3 88:3
**corrected**
  53:25
**correctly**  24:3
**cote**  6:2
**counterparty**
  103:1
**country**  118:21
**couple**  42:7
  106:15

**course** 17:21
**court** 1:1,12
  16:2,17,18,19
  17:8,10,14,23
  18:6,11,17,21
  18:24 19:3,11
  19:20,24 20:1
  20:5,9,21,24
  21:4,9,16,20
  21:23 22:4,9
  22:22 23:1,8
  23:12,18 24:2
  24:15,17,20,25
  25:8,17,19,24
  26:5,7,16,18
  27:6,25 28:7,9
  28:14 29:8
  30:1,5,18 31:5
  31:11,15,25
  32:16,20 33:12
  33:18 34:1,3,9
  34:11,16 35:4
  35:6,9,12,20
  36:6,10,15,22
  37:5,13,23
  38:13,25 39:7
  39:10,12,22,24
  40:9,12,15,22
  41:1,7,17 42:5
  42:10,17 43:12
  43:20,23,25
  44:3,10,24
  45:2,4,9,12,15
  45:18,21,25
  46:2,5,9,12,17
  46:23,25 47:2
  47:9,16,18,22

  47:25 48:4,13
  48:22 49:1,22
  50:1,3,8 51:2,5
  51:9 53:4,9
  54:19,24 56:10
  56:15 59:7,18
  59:22 60:15,19
  61:5,8 62:1,24
  63:7,17 64:2
  64:22 65:13,17
  66:4,7,9,11,16
  66:20 67:9,18
  68:1,10,19,25
  69:5,8,11,15
  69:25 70:9,12
  70:15 71:10
  73:3,16,21
  74:1,13,17,21
  75:1,9,21
  76:10,15,22
  77:2,8,13 78:1
  78:22 79:5,21
  80:12,15,19,24
  81:12,17,20,25
  82:10,12,20,24
  83:8,11,16
  84:5,13 85:1,7
  85:22 86:17
  87:6,21 89:16
  89:20 90:12,23
  90:25 91:22
  92:3,10,12,23
  93:7,12 94:13
  94:21,23 95:6
  95:11,22 96:10
  96:14,23 97:1
  97:10,13,22,25

  98:15 99:7
  100:9,16 101:1
  101:6,14,16
  102:1,7,12,15
  103:10 104:1,4
  104:9,12,14,25
  105:20 106:4,7
  106:11,13,23
  107:12,24,25
  108:12,16
  110:1,4,20
  111:5 112:11
  112:15,19,21
  113:22 114:1,4
  114:7,10,12,14
  114:20,22,25
  115:2,5 117:12
  117:17
**courtney** 14:8
**courtroom** 4:1
**courts** 78:10
**covenant** 29:24
**covenants**
  29:23
**covered** 113:4
  113:5 116:9
  117:6
**craig** 10:12
  13:12
**crane** 10:13
**crazy** 63:8
**create** 29:4
  54:4 60:16
  61:12 67:2
  78:3 86:16
  102:24

**created** 74:19
**creates** 95:16
**creation** 30:13
  32:11
**credible** 54:1,2
**creditor** 31:10
  60:12,16 61:1
  61:14,16,17,18
  85:1 90:3 91:4
  91:7,25 107:7
  117:1
**creditor's**
  22:19
**creditors** 3:18
  21:12 22:7
  30:23 31:14,21
  31:21 42:16
  77:22 82:5
  84:9 85:2,5,10
  108:21 109:1
  109:12 110:19
  110:22 116:20
**crews** 6:3
**critical** 30:11
  30:11 52:16
  58:14 103:22
  110:15
**critically** 111:7
**crossed** 47:19
**crusell** 10:14
**crux** 24:10,12
**crypto** 100:8
**cryptocurrency**
  2:5 16:20
**cryptographic**
  112:24

| | | **d** | **dealt** 22:6 |
|---|---|---|---|
| **curious** 48:13 | 30:24 31:9,24 | | 50:16 60:6 |
| **current** 54:12 | 32:9,22 33:7,9 | **d** 8:16 11:14 | 61:7 |
| **curt** 10:18 | 36:24 37:2,10 | 12:2,8 16:1 | **dean** 10:3 |
| **curtis** 5:2 6:4 | 37:17,24 38:1 | **d'amico** 8:24 | **deanna** 34:9 |
| **custody** 72:19 | 38:3,6,11,11 | **daken** 10:9 | **debate** 102:3 |
| **customer** 24:5 | 38:12,18 39:6 | **dalhart** 10:15 | **deborah** 6:13 |
| 24:9 27:13 | 39:18 40:6,6 | **damages** 25:5 | **debt** 55:10 |
| 29:4 31:22 | 40:10,18,18,21 | 25:6 | 79:12 |
| 32:9,15,19,23 | 41:2,9,14,21 | **daniel** 6:14 | **debtor** 1:9 2:4 |
| 32:24 33:4 | 42:12 43:7,8 | 11:3 12:2,17 | 3:4 31:23 70:6 |
| 36:19 37:21 | 43:10,10,13,17 | **danielle** 4:13 | 84:11 85:23 |
| 39:14 41:18,23 | 44:16 48:10 | 9:1 | 97:20 107:6,9 |
| 41:24 42:2 | 49:12 50:15,25 | **data** 44:8 | 107:13 108:22 |
| 44:15 48:14,15 | 51:21 52:8 | 56:22 107:18 | 108:23,25 |
| 50:13,15 51:19 | 53:13 55:11,15 | 108:9 | **debtor's** 18:3 |
| 51:24 52:6 | 56:9,11,23 | **date** 23:25 40:8 | 19:9,12,14 |
| 56:14 57:24 | 57:23,25 59:11 | 108:18 109:7 | 22:18 27:3 |
| 60:17 62:9 | 60:9 61:5 65:5 | 118:25 | 36:14 42:18 |
| 63:21 67:3 | 65:21,22 71:11 | **dated** 113:1 | 44:21,22 52:17 |
| 69:22 70:4,6 | 71:14,16 72:20 | **dates** 2:3 | 53:14 64:22 |
| 71:9 72:23 | 76:24 77:5,25 | **dave** 12:15 | 82:7,18 87:13 |
| 73:9,10,14,17 | 78:13,19 79:4 | **david** 4:25 5:9 | 89:5 |
| 73:18,21,22 | 79:24 80:5 | 6:11 8:21 | **debtors** 2:2,6 |
| 74:3,10,11,22 | 82:8,25 83:13 | 10:15 12:13 | 16:5,10 17:6 |
| 75:3,5,13,18 | 84:11,21 85:23 | 13:23 | 20:10 28:8 |
| 75:19 76:23 | 85:25 86:3,13 | **davie** 8:14 | 32:7 33:2 49:3 |
| 77:1,4 79:2 | 90:13 95:25 | **davies** 10:16 | 52:16,24 53:15 |
| 84:1,23 88:15 | 98:4 104:6 | **day** 25:25 | 53:16 54:5 |
| 95:17 97:20 | 106:20 107:14 | 111:12 | 58:15 59:10 |
| 99:22 103:8 | 107:17,20 | **de** 8:22 | 60:3 61:22 |
| 105:3 110:5,24 | 109:24 110:2,8 | **dead** 115:24 | 64:4 86:1 |
| 112:3,4,7 | 111:12 113:13 | **deadlines** 2:3 | 87:16 93:17 |
| 117:5 | 113:15 116:16 | **deal** 29:11 86:2 | 97:19 99:16,24 |
| **customers** | 116:23 117:8 | 105:22 | 106:17 107:22 |
| 23:21 25:7 | **cut** 71:18,19 | **dealing** 105:4 | 108:3,6 114:14 |
| 26:10 27:5,10 | | **deals** 25:4 | 115:9,21 116:5 |
| 30:15,15,17,22 | | 29:14 | |

116:10
**debts** 80:13
**decision** 61:11
**deck** 33:25
34:13 43:22
60:3
**declaration**
35:15
**defend** 28:6
**defense** 98:23
98:24
**define** 47:15
102:20
**defined** 47:24
57:19 59:1
68:7 89:2,5
94:1 95:20
96:5 101:23
112:25
**defines** 25:2
68:13
**defining** 68:11
**definition**
47:13 57:20
58:8,22 59:13
**definitively**
33:6
**deliberately**
30:25
**dell** 10:18
**demirtas** 10:19
**demonstrated**
115:17
**dennis** 4:17 6:8
**dentzel** 10:20
**depend** 90:4

**depending**
55:24
**deploy** 51:23
**deployed** 112:5
**deployment**
52:1
**deposit** 52:8
**deposited** 2:5
61:6
**desantis** 10:17
**described** 42:4
100:6
**describes**
103:16
**description**
80:25
**designed** 38:10
**determined**
52:13 113:8
**diaz** 6:6
**dibattista**
10:21
**dictates** 22:25
**dietrich** 12:4
**difference** 81:8
**different** 58:9
58:18 67:14,15
69:23 81:10
86:22 95:2,4
98:16 102:10
102:18 103:11
109:9
**differently**
84:3
**difficult** 116:16
117:8

**difiore** 6:5
**digital** 61:3
89:11,12,14
91:3
**diligence** 62:16
62:19
**diluted** 31:22
31:25 32:2
**dircks** 10:22
**directed** 39:5
**direction** 39:9
40:1,3,24
97:17
**directly** 33:14
34:13 77:5
101:11
**director** 70:20
**directors** 45:6
**directs** 88:5
**disagree** 44:13
91:13,14 93:1
**discharge**
105:5
**discharged**
105:23
**disclose** 75:23
**disclosed** 62:18
**discovery**
33:21,23 99:24
**discuss** 85:15
**discussed**
17:24,25 20:15
22:12 98:13
**discussing**
64:14
**discussion**
103:6

**disfavored**
64:17
**displace** 59:23
**dispute** 23:4
**disputed** 30:12
31:1 48:7
**disrespect**
100:17
**distinct** 28:20
**district** 1:2
86:7
**doc** 2:6
**docket** 19:2
33:24 36:4,4
46:6,14 104:3
104:13
**document**
33:16 34:19
35:1,17,21
36:21 37:21,23
37:25 42:1
43:4 49:14,16
49:16,17 50:8
50:12 53:7
54:6,7 55:17
58:9 65:19
68:6,6,9 72:22
73:19 76:6,19
78:15,20 79:18
79:19,23,24
116:8
**documented**
63:18
**documents**
33:20 42:7
51:18 52:4
54:8 61:25

62:2 65:8 67:7
79:1 80:2
99:25 100:1
**doing** 49:19
50:9 51:21,22
53:23 108:18
111:12 116:13
**dollar** 99:21
**dollars** 62:9
63:4 75:24
77:3 110:24
**don** 13:18 14:1
**donald** 13:6
**doubt** 88:20
**dozen** 70:17
**draft** 36:12
62:9 92:21
93:10
**drafted** 77:19
93:7
**drafters** 41:13
49:4 88:16,21
88:24 89:9
91:24 94:12,17
110:14
**drafting** 92:23
93:15 115:18
**drafts** 41:15
111:9
**drew** 10:24
**droves** 107:14
**dua** 10:23
**duffy** 6:7 10:24
**dunne** 4:17 6:8
**dustin** 9:21
**dzaran** 10:25

**e**

**e** 1:21,21 3:1,1
10:14 16:1,1
118:1
**eades** 11:1
**earlier** 67:17
69:4 74:5 80:6
98:17 99:2
108:18
**earn** 72:19
78:10 81:1
82:8
**earned** 60:7
**easier** 88:10
**easy** 31:3
**ecf** 46:13
**eckhardt** 11:2
**ecro** 1:25
**editing** 16:16
**eduardo** 9:24
**edward** 5:16
7:10
**effect** 38:4 86:8
106:10,12
**effective** 35:24
59:2 92:6
105:9
**effectuate** 49:8
**efforts** 17:17
**eggermann**
11:3
**ehrler** 11:4
**either** 23:3
41:20 97:17
**elbit** 86:6
**elements** 98:21

**elimelech** 6:9
**eliminate**
53:18
**elizabeth** 4:5
7:2
**ellis** 3:3 16:5
64:4
**elvin** 14:15
**email** 55:1,3
79:6 80:2
110:14
**emails** 56:16
**emmanuel**
9:11
**emphasize**
88:14
**employee** 47:7
70:19
**employees** 49:5
**empty** 67:3
**engage** 51:25
**engaged** 50:21
113:7
**engaging** 16:15
**engel** 6:10
**engineer**
101:25 102:1
102:13
**enjoy** 101:25
**enormous**
63:13
**ensure** 61:5
76:2
**enter** 19:6
37:24 51:1
115:12

**entered** 16:17
40:1 105:12,17
111:17 114:23
**enterprise**
84:22 93:17
**enters** 91:1
**entire** 32:11
43:8 59:9 61:2
61:4 71:8
72:15 113:20
**entirely** 53:13
54:11 55:13
57:2 71:7
**entities** 2:4
23:10 28:10
30:22 49:11
50:17 52:18,21
57:18,18 69:24
70:23 72:4,17
74:12 75:19
76:24 77:11,11
92:21 97:20
107:9,13 109:4
109:11,13
113:9 116:24
**entitled** 61:3
**entity** 26:6
27:4,23 30:14
30:15 32:9,15
32:17,18,19,23
32:24 33:5
39:15 41:18,24
42:24,24 43:1
43:7,9,9 44:15
44:16 47:6
48:11 49:10
50:15 51:25

52:22,25 53:10
53:23 54:4
57:24,25 59:2
59:11 61:15
62:25 67:2
70:6 72:19
73:9,21 74:6,6
74:20 76:1,14
76:20 77:1,9
84:1,24,24
85:23 88:25
89:1,4 94:4
96:18 97:11
102:25 103:8
105:3 106:22
107:7,18 109:7
109:8,9 110:5
112:4 113:16
117:5
**entry** 37:10
**equally** 31:24
57:12
**equals** 71:24
102:5
**equation** 102:5
**equations**
102:7,15
**equity** 22:16
27:15 63:11
82:18 85:3,6
116:20 117:2
**equivalent**
79:13
**erik** 12:23
**error** 68:10,12
68:16,17 94:21
103:7

**especially** 81:9
81:9
**essentially**
51:13
**establishing**
2:2
**estate** 82:9
**et** 45:6
**eu** 88:25
**evan** 13:4
**event** 17:25
47:3 60:10
78:4 90:25
96:15 108:19
108:20,20
**everybody**
16:12 17:4,22
21:25 25:11
27:20 70:18
109:20
**everyone's**
17:7
**evidence** 18:4
19:13,15 20:12
21:1,6,8,15
22:5,8 29:2,16
32:12,21 43:4
49:25 50:1,7
50:20 52:15,23
56:5 58:3,5
61:23 63:25
65:1,16 75:11
85:13,17,18,20
87:4,12,12,13
87:18 88:6,9
97:24 100:3,10
100:11 106:17

106:18,20
110:13 116:2,6
116:11,12
117:11
**evidences**
36:21
**evidencing**
99:25
**evidentiary** 2:1
**exactly** 32:10
41:4 57:22,23
59:24 68:22
76:12 86:11
87:8 103:20,20
106:12 113:21
116:13
**examine** 88:5
**examiner**
100:5,10,18,21
101:10
**examiner's**
25:13 64:15,17
100:4 101:4
**example** 25:4
48:9 50:10
51:24 52:2
54:10,15 57:8
93:2,3 112:3
**except** 71:1
96:10,12
**exception**
20:11
**exceptions**
20:25 21:5
**exclude** 31:4
92:7

**excluded** 25:2
45:1 57:10
59:14,14 72:17
73:20 95:17
115:22
**excludes** 24:4
25:2 72:13
**exclusion**
20:19 57:21
58:16 61:2
72:13
**exculpation**
93:9
**executed** 50:23
**execution**
35:24
**exhausted**
117:14
**exhibit** 18:3,8
18:19,24 19:18
20:2,2,2,3
21:13 22:4
33:23 34:14,15
35:3,5,7,8,13
35:15 36:4
37:16,20 39:21
42:7 45:11,13
51:4,5,6,7 53:6
54:15,18 65:14
65:15 79:5
99:17,17,20
101:8,9 109:4
112:11,13
**exhibits** 18:1,3
18:22,24 19:6
19:10,12,14,21
20:11,16,24

21:7,13,15,20
21:25 22:1,7
100:15 108:23
109:5
**exist** 83:24
84:14 92:19,22
**existed** 29:24
32:4 48:24
49:16 53:23
74:13,17 109:4
109:7,13
**existence** 32:11
65:19
**existing** 40:6
115:14
**exists** 58:18
89:3 109:8
**expect** 22:17
62:6
**expected**
103:10
**experience**
109:1
**explain** 49:7
91:14
**explained**
100:22
**explanation**
43:4 54:2
**explicit** 86:4,9
86:12 98:14
99:4,5
**explicitly** 86:8
**exposed** 57:25
**exposure** 29:12
**express** 83:2
87:17

**expressed**
104:19
**expressly**
34:19 57:9,11
57:16 84:1
95:21
**extend** 107:13
**extensive** 116:7
**extensively**
60:7
**extent** 17:19
27:9 28:24
52:11 61:16
65:1,9 84:16
87:14 93:15
97:16 115:19
**extinguish** 67:6
**extinguished**
79:22
**extinguishes**
104:22
**extinguishing**
67:15
**extinguishm...**
65:24
**extra** 18:7
**extreme** 64:16
82:16
**extrinsic** 49:24
50:1,6 58:3,4
61:23 65:1
75:11 85:13,17
85:18,20 87:11
88:6,9 97:24
106:17 116:2,5
116:11,12
117:11

**ezra** 8:24

**f**

**f** 1:21 8:3 35:13
35:15 118:1
**fabsik** 11:5
**face** 57:4 58:3
58:4
**faced** 30:15
81:10
**facing** 32:9,15
32:19,23,24
33:5 39:15
41:18,24 44:15
50:15 51:24
57:24 63:21
69:22 73:9,21
75:18 76:23
77:1,4 79:2
84:1,24 103:8
105:3 106:8,9
110:5 112:4
117:5
**fact** 17:9 32:23
48:6,8 56:7
57:5,15 58:7
58:25 62:21
72:14 94:15,16
100:13 105:11
106:16 107:16
110:17
**facts** 64:17
111:8
**factual** 111:15
**fahey** 6:11
**faith** 4:24 6:17
**falsely** 16:18

**familiar** 58:12
**family** 43:8
107:8 109:20
113:16
**far** 54:2 108:19
**faruk** 9:6
**favor** 85:16
116:4
**fca** 39:5 41:8
41:20,21,22
42:1,1,4,9 49:8
55:2 56:16
67:19 79:6,7
109:22,22
110:18
**fcl** 40:24
**february** 1:16
118:25
**fee** 16:19,19,19
**fell** 49:14
**femke** 14:16
**ferraro** 99:21
**fiduciary** 39:2
**fifteen** 35:9
**fifth** 47:2
**figure** 31:18
**file** 16:10 17:6
108:6,12,13
**filed** 16:12
19:1 33:24
65:3 107:2,21
108:2,17 111:1
**filing** 107:14
**final** 104:5
**financial** 39:13
43:5 53:11,21
53:22 54:9

116:8,9

**find** 18:11
26:14 31:23
45:2,4,17,19
51:2 55:2 66:4
116:1,4

**fine** 23:12
45:21 46:9
54:24 65:17
81:20

**finer** 82:19
84:18

**finish** 32:16

**first** 25:4 66:19
68:24 69:2,6
71:1 72:13
85:14 86:22
88:6,15,15,16
89:6,10 90:17
92:14 93:15
98:3,8 99:15

**fitting** 45:9

**flaherty** 11:6

**flannigan** 11:7

**flip** 46:17

**florence** 11:7

**flow** 30:19 31:5
69:18 80:10
85:9

**flows** 27:10
70:1 84:22
85:3

**fly** 58:2,3

**focus** 73:3

**focused** 42:15
44:4

**folks** 17:3

**follow** 34:8
83:8

**follows** 104:17

**forbidding**
32:18

**foregoing**
46:22 47:3
71:3 96:15
118:3

**form** 38:12

**formsma** 6:12

**forrest** 6:12

**forth** 35:23
43:13 56:16

**forward** 46:15
53:17 82:25
83:6,13,25
84:3,10,15

**found** 78:10

**four** 19:21,22
24:7

**frankel** 6:13

**frankly** 61:22

**fraud** 25:12,15
26:7,8,8,11,12
26:13,18,20
28:2,6 31:25
64:12

**fraudulent**
64:20

**free** 31:11,16

**friends** 72:9,10
72:11

**frishberg** 6:14

**front** 19:21
107:24 116:20

**full** 117:10

**fully** 33:7
62:17

**fundamental**
58:20

**funny** 102:3

**further** 28:18
88:23

**future** 29:23
29:24

**g**

**g** 5:16 16:1

**gallagher** 6:15

**game** 101:21

**gastelu** 6:16

**gavryelle** 15:5

**gay** 4:24 6:17

**geary** 11:9

**general** 59:23
90:18

**generality**
46:22 47:3
96:15

**generally**
23:23

**generating**
51:23

**geoffrey** 10:8

**george** 12:18
14:6

**gerd** 14:5

**getting** 61:8

**giardiello** 6:18

**giorgio** 9:22

**give** 21:23
39:22 45:7,16
58:15,17 100:2

**given** 46:13
86:8 95:10
101:21 117:16

**gk8** 27:2 31:3,5
31:9,10 63:22
70:3,3 74:13
74:15 76:15

**glenn** 1:22

**go** 17:21 21:9
22:9 30:3
32:16 33:12
35:1,21 40:15
42:5 46:15
59:5 64:23
79:21 81:22
82:1 89:20,20
97:13,25
106:13,19

**goal** 62:7

**goes** 20:18
36:18 44:10
47:8

**going** 16:8,22
16:25 22:14
26:21 31:5,6
31:16,22 36:24
37:6 39:14,15
41:25 51:12
59:18 63:3
64:4,6 65:7
80:6,10 81:19
83:3 84:8,24
85:2 88:7,14
88:23 89:8
90:3 97:16
107:4 108:9
110:22,24

113:14 117:17
**gold**  11:11
**goldstein**  11:12
**good**  16:4
18:21 20:13
64:3 77:13
82:3 108:8
**gordon**  11:8
**gorrepati**
11:13
**gosh**  11:10
**gotcha**  78:14
**governing**  2:3
115:14
**government**
2:2
**governs**  90:18
**grace**  4:6 5:18
**graciously**
110:12
**graham**  14:17
**grant**  90:20
**granted**  105:16
**graubert**  11:14
**great**  34:5
**greatest**  100:9
**greatly**  63:11
**green**  1:13
**greg**  7:3
**gregory**  7:5 8:3
**ground**  85:20
**group**  72:6,14
**guarantee**
29:19 67:10
**guaranteeing**
62:10

**guess**  29:16
67:20 96:22
101:8
**guiney**  11:15
**gundersen**
11:16
**guys**  72:8

**h**

**h**  14:1
**hadley**  3:10
**half**  90:22 98:4
**hamlin**  4:9
6:19
**handed**  66:7
67:16 68:18
69:4 88:8
**handful**  101:18
110:22
**hanging**  43:2
**happen**  86:15
87:5
**happened**
32:12 39:4
41:17 62:13
75:17 87:4
99:15
**happening**
84:19
**happy**  35:1
88:4 99:10
101:10
**haqqani**  11:17
**harman**  11:18
**harmonious**
78:11,12 92:17
94:19

**harmoniously**
78:18
**harmony**  72:16
**hat**  43:2
**hatcher**  11:19
**hate**  102:12
**haver**  24:9
**head**  26:2,3
99:1
**headlong**
109:21
**heads**  60:2
**hear**  25:9
117:8
**heard**  25:25
**hearing**  2:1,1
16:7,9,11,25
18:2,5 100:12
**hearings**  17:3
100:20
**hearsay**  100:10
100:23 101:1
**heavy**  85:18
**hegi**  11:20
**held**  38:22 74:7
100:8
**helpful**  18:8,20
**henry**  8:18
11:21
**heras**  8:22
**hereof**  35:24
**herrmann**  6:20
**hershey**  3:22
5:4 6:21 20:9
20:13,14 21:9
21:10,11,18,22
82:2,3,4,11,13

82:23 83:7,9
83:12,18 84:16
85:4,8 86:24
87:8 88:3
89:16,18 90:9
90:16,24 91:20
91:23 92:8,11
92:13 93:1,11
93:13 94:15,22
94:25 95:8,19
96:3,11,21,24
97:2,11,15,23
98:1,25 99:9
100:24 101:3,7
101:15,20
111:19 114:16
116:17
**hershey's**
109:25
**hey**  72:8
**high**  94:23
**highlight**  40:3
43:14 58:10
105:22
**highlighted**
115:3
**hill**  11:22
**hirschi**  109:15
**history**  32:6,6
**hittelman**
11:23
**hoax**  16:21
17:4
**holcomb**  6:22
**hold**  46:17
56:3 58:2
104:9

**holders**  2:5
   3:11 19:8,18
   22:11 29:11,18
   34:15 35:5
   51:7 53:6 81:2
   82:21 85:6
   113:23
**holding**  80:7,8
**holds**  92:18
**hole**  60:14
**hon**  1:22
**honed**  86:11
**honor**  16:4
   17:19 18:15
   19:2,7,8,16,19
   19:23,25 20:3
   20:8,13 21:2
   21:10,13,19,22
   22:2,10,12,22
   23:7,16 24:10
   24:19 25:16,20
   25:21 26:24
   27:8 28:5,9,18
   28:22 29:1,8
   29:22 30:8,21
   31:9,17,20,22
   32:5 33:11,16
   33:19,23 34:5
   34:12,25 35:2
   35:8,14,16
   36:3,11 37:4,9
   37:20 38:21,22
   39:8,11,19,25
   40:11,25 41:10
   41:12 42:3,13
   42:15 43:19,21
   44:2,13 45:7

45:11,22 46:7
46:10,15,19
47:10,14 48:2
48:18 49:20,24
50:2,5,9 51:3,6
51:10 52:14,23
53:1,3 54:1,14
54:14,15,16,18
54:20,21,22,25
55:13,16 56:5
56:13 57:5,15
58:2,5,11,12
58:19,24 59:4
59:5,6,8,16
60:1,6,6 61:6
61:10,11,20,22
62:13,17,21
63:1,9,19,24
64:1,3,12 66:8
66:10 67:11
68:15 70:7,23
74:6,15,25
75:6,15 76:12
76:25 77:16
78:7,9,25
79:16,25 80:19
81:7,16,18,23
81:23 82:3,6,6
82:11,14,23
83:7,12,18
84:5,17,18
85:12,14,24
86:11,25 87:9
87:10 88:3
89:18 90:9,17
90:18 91:21
92:8,22 93:1

93:13 94:8,20
95:8 96:4,12
96:21 97:16,16
97:23 98:2,3
98:25 99:9,11
99:13 100:13
100:24 101:13
101:15,17,18
102:2,8,14
103:5,5,19,24
104:16 105:7
106:1,9,14,15
107:4 108:7,14
109:3,10,14,16
109:19 110:3
110:10,15
111:8,14,22
112:13,17
113:6 114:3
115:7,16,20
116:14,21
117:10,13,14
**honor's**  78:16
   96:24
**hook**  37:6
**hope**  45:19
**host**  34:10
**huang**  15:5
**hudson**  3:12
**hugh**  9:18
**hundred**  84:9
**huong**  12:7
**hurley**  11:24
**hybrid**  2:1
**hyde**  2:25
   118:3,8

**hypothetical**
   85:7
**hypothetically**
   86:19

─── **i** ───

**i.e.**  55:11
**idea**  112:10
**identical**  36:12
**identify**  88:24
   89:1
**identifying**
   94:4
**ignore**  94:9
**ignored**  94:17
**iii**  90:25 91:9
   91:14
**illustrates**
   30:11 59:6
   66:1 106:16
**imagine**  26:21
   92:23
**immanuel**  6:20
**implication**
   110:19
**importance**
   34:25
**important**
   26:23 27:3,17
   30:11 32:6
   37:22 39:16
   41:11 69:21,24
   70:13 76:1
   78:9,15,20
   81:8 92:15
   102:18 103:17
**importantly**
   115:18,18

**impossible**
16:22
**improvement**
63:12
**inclination**
59:17
**include** 24:6
44:24,25 47:15
59:2 94:18
112:23 113:4,4
**included** 58:7
73:5 79:7
113:10
**includes** 48:9
48:10 59:13
77:23 83:15
90:5 107:9
109:5 112:1
**including** 47:6
96:18
**income** 51:23
**inconsistent**
53:13 54:7,12
61:22
**incur** 29:19
**incurred** 49:13
111:11
**indemnificat...**
29:20 38:15,17
**indemnifying**
62:11
**independent**
39:1
**indicating**
93:24
**indicia** 60:12

**indirect** 59:3
**indirectly**
80:21
**indiscernible**
48:5 55:11
59:25 62:20
66:17 76:11
81:6 90:24
92:2,11 93:22
93:23 94:5
95:1,12 97:5,7
97:18,18 98:5
98:23 99:10,14
99:20 104:11
108:1,16,22
**indistinguish...**
44:18 59:15
**individual**
31:10
**influence** 109:2
**information**
17:20
**initial** 30:13
105:23
**injunction**
107:13
**insisted** 32:22
36:25
**insolvent** 80:16
**institutional**
52:1 75:25
112:5
**insulate** 93:5,6
**intend** 55:14
75:13 76:7,13
76:18 113:12

**intended** 26:14
26:14 51:17,18
56:8 68:23,25
71:7 72:3 75:2
75:7 76:6,19
76:23 79:1
102:24 103:8
113:20 115:23
**intent** 20:17
27:12 29:4
38:8 49:21,21
49:21,22,23,25
50:3,5,13 52:4
69:1 71:15
87:5,13,14,17
91:24 101:12
106:18 113:15
116:6
**intention** 88:21
104:20
**inter** 117:1
**interact** 43:7
**interacts** 77:5
**intercompany**
28:22,25 29:5
32:3 50:18,21
51:1,3,8 52:7
52:13 64:13
77:6 111:17,19
111:21,25
112:7,8,16
113:10,17
116:25 117:6
**intercreditor**
51:11
**interesting**
115:7

**internal** 54:23
**internally** 54:5
102:4
**interpretation**
23:20 58:21
95:2 101:22
105:10,18
107:8 115:15
116:1,3
**interpreted**
90:13
**interviews**
100:20 101:2,4
101:5
**inure** 27:14,14
**inured** 30:24
**invested** 63:15
86:23
**investigates**
17:22
**investing** 52:2
63:20
**investment**
62:17,22 63:22
**investments**
74:7
**investor** 22:16
47:7 70:19
**investors** 63:17
96:19
**invitation**
72:12
**invite** 72:7,11
**invoke** 17:13
**involve** 92:21
**involved** 17:12
17:13 52:2

**iovine** 6:23
**ipo** 53:17,25
**irrelevant**
    87:19
**isaac** 12:6
**ishmael** 4:18
    8:20
**isolate** 108:25
**issue** 2:4 22:22
    25:9 28:9,10
    28:21,23,25
    29:6,15 31:13
    31:17 35:1
    42:10 45:13
    64:10 77:14
    86:11 98:18
    103:2,11
    105:22 107:2
    108:10 112:7
**issued** 40:22
    42:2
**issues** 23:22
    27:20 28:20
    55:3 77:10
    109:2
**issuing** 30:6
**iteration** 48:2
    48:7 57:9

**j**

**j** 5:9,17 11:11
    12:17 14:4
**jack** 13:21
**jacobs** 11:25
**james** 4:7 6:10
    7:21 8:10
    12:18,21

**janell** 11:2
**janko** 6:24
**jankovic** 6:24
**jaoude** 5:3
    6:25
**jarno** 15:1
**jasleigh** 11:9
**jason** 6:23 9:13
    10:21 12:14
    14:19
**javier** 13:25
**jean** 12:9
**jeffrey** 9:9
    13:19
**jennifer** 8:17
**jeremy** 11:22
**jesse** 7:12
**jessica** 10:13
**jimmy** 8:12
**job** 100:19
**johan** 5:19
**john** 4:15 7:16
    10:25
**johnson** 7:1
**joined** 22:16
    105:14
**joint** 49:11
**jointly** 43:9
**jon** 11:19
**jonathan** 13:16
**jones** 4:5 7:2
**jordan** 34:6
**jordyn** 4:19
    8:1
**joseph** 7:8 9:14
    12:11

**josh** 4:3
**joshua** 7:19
**judge** 1:23
    70:18,18
**judson** 4:8
    5:20
**julie** 11:21
**jump** 116:20

**k**

**k** 12:15 13:15
**kaczkowski**
    7:3
**kaila** 14:24
**kaitlyn** 11:23
**kalin** 12:1
**kamara** 8:20
**kaplan** 12:2
**karen** 5:25
**karpuk** 12:3
**katherine** 5:11
**kathryn** 11:16
**kaufmann** 15:2
**keep** 76:7
**keith** 5:1 7:22
    9:5 12:19
**ken** 11:4
**kenneth** 13:9
**kept** 94:15,18
**kevin** 12:16
**key** 29:15
**keyan** 14:12
**khai** 13:10
**khosravi** 4:10
    7:4
**kieser** 7:5
**kind** 102:1,14

**kirkland** 3:3
    16:5 64:4
**knauth** 12:4
**knew** 89:2
**know** 16:13
    17:2 19:5
    20:15 24:6
    25:24 29:25
    31:18 33:24
    37:6 38:13,14
    38:14,16 48:6
    48:14 58:5
    59:23 62:2,4
    64:15 67:6,20
    70:17,18 71:2
    71:10,22,23
    72:13,25 73:16
    80:1,24 81:21
    87:6 89:23,25
    89:25 90:2
    92:1 98:23,25
    99:15 100:16
    103:12 109:7
    109:16 110:11
    110:15 111:18
    115:16 117:14
**knowledge**
    107:11
**koenig** 3:8 4:4
    16:3,4,5 17:8
    17:19,24 18:10
    18:15,19,23
    19:1,4 20:21
    20:22,22 46:10
    46:12,13 64:3
    64:4,24 65:15
    65:18 66:5,8

66:10,11,13,18
66:21 67:2,11
67:25 68:2,15
68:20 69:2,6,9
69:12,16 70:5
70:10,13,22
71:15 73:12,19
73:24 74:5,15
74:18,24 75:6
75:15,22 76:12
76:17,25 77:4
77:9,16 78:7
78:25 79:16,22
80:14 81:7,15
81:23 88:8,13
92:15 93:2
101:24 107:5
110:12
**kokster** 12:5
**kotliar** 7:6
**kroll** 85:3
**ks** 1:25
**kwasteniet**
  4:11 7:7
  106:15 108:5
**kyle** 7:18

**l**

**l** 6:12 13:6,9
**laboring** 22:18
**lafayette** 10:10
**laid** 65:2
**laila** 7:8
**lam** 12:7
**language** 24:13
  27:12 37:2
  42:19 58:25
  62:10 74:9

75:2 76:2,4,8
81:4 83:3
88:17,18
  109:15 117:10
**larrabee** 12:8
**las** 8:22
**late** 81:22
**latreille** 12:9
**lau** 7:9
**law** 38:16
  60:19,20 61:1
  61:13,16 77:22
  77:23,23,23
  78:5,5 81:13
  86:5 87:19
  88:5 90:4,4,5
  90:10,11 91:10
  92:1 97:18
  98:15,15,16,21
  98:22 99:8
  103:22,23,23
  103:24 104:7
  104:18,24
  106:12 114:16
  114:19,21
  116:22,22
  117:7
**lawrence** 7:24
  11:5
**laws** 91:5
**lawyer** 63:7
  64:22 71:23
  92:23 101:25
  107:23
**lawyer's** 35:15
**lawyers** 62:18
  77:18

**layla** 7:20
**layne** 12:10
**lazar** 7:10
  100:19
**leading** 50:12
**leads** 52:14
  87:12 117:1
**leah** 4:9 6:19
**leave** 56:12
  72:1,1
**leaves** 90:6
**leblanc** 3:15
  4:16 19:7,7,16
  19:17,22,25
  20:6 21:2,3
  22:2,2,9,10,11
  23:7,16,19
  24:10,16,19,23
  25:1,16,18,20
  26:3,6,12,17
  26:23 27:8
  28:4,8,17 29:9
  29:22 30:4,8
  30:21 31:8,13
  31:20 32:2,17
  33:11,13,19
  34:2,5,12,17
  35:5,8,10,14
  35:21 36:8,11
  36:16 37:4,9
  37:20 38:7,21
  39:1,8,11,19
  39:23,25 40:11
  40:14,16,25
  41:2,10,19
  42:3,6,13,18
  43:19,21,24

44:1,4,13,25
45:3,7,11,13
45:16,19,22
46:1,3,7,19,24
47:1,17,20,23
48:1,5,18,23
49:2,24 50:2,5
50:9 51:3,6,10
53:5,10 54:20
54:25 56:13,17
59:8,21 60:1
60:16,22 61:10
62:13 63:1,9
63:19 64:2,5
64:14,25 65:7
65:20 67:7,25
68:20 70:1,24
71:10,22 73:4
73:13 75:25
78:2,22 79:5
79:17 80:1
81:3,18,18
85:14 86:12
88:1 92:6 95:6
98:2,13 100:13
100:14 101:16
101:17,18
102:2,8,13,14
102:17 103:19
104:2,5,11,13
104:16 105:7
105:25 106:5,8
106:14,25
108:7,13,17
110:3,10,21
111:6 112:13
112:16,20,22

113:24 114:2,5
114:8,11,13,19
114:21,23
115:1,4,7
117:13
**leblanc's** 67:18
71:12 79:25
85:5 97:3
**lectern** 19:4
**ledanski** 2:25
118:3,8
**left** 34:24
57:21,22
102:23
**legal** 2:4 28:10
60:24 75:19
76:1,20 91:5
118:20
**lender** 113:2
**lenders** 112:24
**lending** 48:9
48:10,15,15,17
48:21 74:17,18
77:9 89:11
109:8,18,20
**leon** 34:18
35:18
**leonenko** 7:11
**letter** 115:24
**letters** 65:20
89:9 108:22
**lexington** 3:5
**lhrfeld** 12:11
**liabilities** 25:7
34:22 36:2,5
39:3 44:16,19
49:14 50:25

58:17 62:8
63:14 65:25
69:23 79:3,22
102:6 111:3,4
111:12 113:3,9
113:12
**liability** 23:14
24:5,9 25:3,14
26:18,19 27:22
29:12,19 32:22
32:25 33:9,9
37:3,8,10,17
38:6,8 40:10
41:3,9,23 42:2
42:11 43:16,17
44:12,18,22
45:1 49:10,10
49:11 53:13,19
54:4 55:15
56:3 57:10,14
57:17,25 63:4
67:6,15,23,23
70:10 71:17
72:18 73:6
78:24 84:7
86:10 92:4,7
93:9 95:16,17
97:20 102:24
103:18 104:6
105:5,24 110:2
110:6,8,18,20
110:21
**liable** 22:23
23:11 27:5
28:2,16 30:14
30:16 32:9
36:24 37:1,7

37:19 38:1,1
38:18,19,19
39:15,18 41:21
42:24,25 43:1
43:8,10 45:5
48:8 50:15
59:11,12 62:25
67:1 69:1 70:4
70:6,20,24
71:11,12,14,16
73:9,18,22
74:3,22 75:2,5
75:8,8,13 76:2
76:7,8,14,16
76:17,20,24
78:5,13 79:15
80:12,17 81:1
81:5 83:1,2,3
83:19 84:11
92:25 103:9
107:8 109:11
**lie** 68:12
**light** 17:9
34:25 111:24
**lily** 14:21
**limit** 25:14
26:9,10,14,16
59:16 68:12
**limitation**
44:17,19,21
47:6 58:16
70:10 73:6
93:9 95:16
96:18 102:6
**limitations**
25:6 109:22

**limited** 42:19
44:7 47:21
55:6 56:3,21
63:3 69:10,17
79:9 91:8
**limiting** 46:21
47:2 96:14
**limits** 23:14
26:19 57:17
**linda** 8:8
**lindsay** 12:12
**line** 45:9 47:2
**lines** 24:7
**liquidation**
91:1
**list** 16:20 18:4
18:8,20,25
19:18 21:14,18
21:23 33:23
42:7 99:17,20
101:9
**listen** 17:3
**listening** 79:16
**listening's**
16:13
**listing** 108:2
**lists** 21:24
36:19
**literally** 58:13
**litigation** 16:7
29:15 108:14
**littered** 68:5
**little** 65:7
68:21 72:5
77:19 85:19,21
88:13 101:21
109:6

**lived** 56:23
**llc** 1:7 26:3
  27:23 32:24
  33:5,6 34:19
  34:20 35:19,25
  37:1,11,17,24
  37:25 38:5,17
  40:7,19 41:15
  41:18,20,25
  43:18 44:6,7
  44:11 50:13,22
  51:1,12,19
  52:5,8,9,9 56:8
  56:19,21 57:19
  57:21 60:21
  67:2,24 68:3,8
  69:12 71:11,16
  71:18,20,23,24
  72:1 73:2
  74:11 75:18,20
  76:8,21 77:7
  78:5 79:2
  83:14 84:24
  88:17,22 90:7
  90:14 91:9,17
  93:19,23,25
  95:17 96:1,6,7
  96:9 97:6,8
  100:1 101:23
  102:5,20,23
  103:4 105:3
  107:21 112:6
  116:24
**llewellyn** 12:6
**llp** 3:3,10,17
**loan** 52:1 74:13
  74:20 75:25

  89:12 112:5,17
  113:17 117:1
**loans** 74:8
  77:10
**long** 20:19 24:7
  24:22 37:15
  72:25 90:1
  96:2 117:14
**longer** 32:14
  32:22 33:8
  37:19 38:1,19
  39:14,18 40:10
  41:9,21 51:24
  66:25 67:22
  77:1,4,5 81:1,5
  83:3 85:25
**look** 16:25 17:1
  22:24 36:3,12
  39:11,19,21
  47:13,14 50:6
  51:9 54:21,22
  55:20 58:11
  66:2,14 68:17
  69:2 78:3,16
  88:14 93:14
  95:12 98:20
  100:6 108:25
**looked** 24:20
  75:12 81:12
  109:15 110:11
  111:21
**looking** 28:12
  41:11 53:9
  56:20 74:25
  75:9 91:24
  104:9 112:17

**loren** 11:18
**los** 12:13
**lot** 17:2 18:7
  23:4 24:15,16
  54:9 61:8 62:1
  63:9,20 64:5
  75:10 94:6
**loud** 108:1
**lu** 12:14
**lucas** 5:2 6:4
  6:22
**luck** 62:25
**luis** 6:6
**luke** 13:11
**lunch** 7:12

**m**

**m** 7:7 8:15
  12:16 15:2
**machinsky**
  25:12 26:1,1
  26:22,24 27:1
  34:18 35:18
  63:10
**made** 41:18
  42:22,23 47:10
  49:5 61:22
  62:6,22 69:19
  74:7,7,20 83:2
  87:16 89:21
  92:14,16 94:4
  97:8 101:21
  102:19,21
  103:4 107:1
  111:24
**main** 16:6
  17:25 55:6
  79:9

**maintenance**
  84:20 85:10
**make** 17:3,5,14
  18:6 19:11
  21:16 25:10
  28:15,19 32:5
  34:7 41:22
  49:19 63:12
  64:18 67:13
  70:19,23 71:5
  71:11,13,15
  75:13 76:1,7
  76:19,23 87:10
  88:10,21 93:4
  93:21,22,23
  94:6 95:9 96:4
  99:12 101:22
  107:4 108:24
  111:16 113:13
  113:17
**makes** 55:16
  60:9 88:4 92:8
  102:11 105:2
**making** 27:19
  33:15 62:14,17
  73:13 84:6
  103:4
**malek** 4:10 7:4
**malhotra**
  12:15
**manage** 51:13
**manager** 63:2
  63:10
**manifested**
  104:20
**manus** 12:16

marc  13:22
maree  12:17
maria  10:6
mark  5:21 8:9
  12:8,12
maronpot  7:13
marsh  7:14
marshall  17:11
  17:12
marshalls
  17:22
martin  1:22
masumoto
  7:15
material
  103:15
materially
  53:21
math  71:23
  101:25,25
matt  12:22
matter  1:5
  16:14 85:15
matters  65:1,9
matthew  11:11
  12:20
matthews
  12:18
maximum
  97:20
mccarrick  4:15
  7:16
mccloy  3:10
mccormack
  12:19
mcdermott
  12:20

mcgarry  7:17
mckuhen  7:18
mcnamara
  12:21,22
mean  26:25
  27:1 38:8,18
  41:23 56:12
  59:22 60:22
  62:2,3 65:24
  67:1,1 69:16
  71:10 72:2,3
  72:25 74:2
  75:9 78:18
  79:3 80:16,17
  82:24 89:21
  91:7 93:1,25
  94:9 95:1,21
  95:22 96:7,13
  97:8 102:9
  103:19 110:3
  110:10 113:24
  113:24
meaning  57:22
  58:18,18 89:6
  93:18,20 94:11
  95:10 97:5
meaningful
  107:10
meaningless
  72:15
means  29:5
  52:21 58:23
  67:5 73:8 81:4
  93:19 94:2
  96:6,8 97:6
  109:20

meant  73:1
  80:20 94:3
meeting  99:19
melanie  4:20
  9:4
member  47:7
  49:18
members
  70:19 96:19
mendelson
  12:23
mentioned
  52:12 92:18
  115:8
mentions  98:2
mer  9:6
mere  81:8
mester  4:3
  7:19 22:15
  62:20
metaphor  72:6
mg  1:3
mia  10:11
michael  5:3,24
  6:25 11:14
middle  24:3,6
  24:21 37:15
  44:1 45:10
  58:16 72:24
  90:1 96:2
migrate  50:13
  52:5 110:4
migrated  27:24
  55:8 56:7
  69:23 74:11
  75:21,22 79:12

migrating
  41:14 111:3
migration  40:2
  40:6,8 42:6
  49:8 51:19
  55:5,18,20,21
  55:24 62:22
  73:14,16,25
  74:2,14,16,19
  74:22 75:3,14
  76:20 77:1,6
  78:23 79:9
  80:7 87:3
  99:13,25
  101:12 109:6
  109:13 110:25
  111:25 112:4
  113:8 114:6
  116:10
milbank  3:10
  19:8,17 22:11
milin  13:7
milligan  7:20
mine  61:6,9
mineola  118:23
mining  27:2,7
  27:9 31:3,13
  31:14,15,19
  48:11,24 52:2
  52:22,25 53:2
  53:6,10,18,23
  63:22 70:2
  74:24 75:2,4,7
  75:13 76:7,11
  85:1,2,5 109:7
minus  71:24,25

**minute** 87:2
**minutes** 16:10
**mira** 11:17
**misleading**
 53:21
**misrepresent...**
 26:20
**missed** 94:17
 98:20
**misstatements**
 25:25
**mistake** 95:3,7
 96:5 101:21
**mitchell** 11:24
**mitrakas** 12:24
**modify** 16:18
 90:10 98:11
**moment** 28:19
 38:22 99:10
**month** 82:6
**morgan** 14:18
**motion** 2:2
 22:21
**moura** 12:25
**move** 18:3 78:2
 89:17
**moved** 51:20
 51:22 52:6
 75:18 109:16
**mulligan** 13:1
**multiple** 74:12

**n**

**n** 3:1 9:3 16:1
 118:1
**nash** 7:21
 108:4

**nathan** 14:2,22
**nathaniel**
 12:10
**need** 18:17
 52:11 55:25
 57:7 92:14,16
 98:6 105:8,9
 106:19 107:12
 107:12
**needle** 78:2
**needs** 98:14
**negate** 72:10
**negisa** 9:15
**negligent** 26:20
**negotiated**
 62:5
**negotiators**
 62:4
**neither** 24:17
 29:18
**nelly** 4:21 5:12
**network** 1:7
 44:7 47:21
 68:8 69:10,12
 69:16 71:16,18
 71:20 73:2
 79:9 83:14
 88:17,22 93:25
 94:3,6 96:9,13
 97:6,8 99:18
**networks** 40:7
 44:6,7 55:6
 56:2,21,21
 63:3
**never** 29:3
 39:2 49:3,20
 63:7 65:12

 83:22,25,25
 84:1 86:3,3
 87:4 93:10
 99:14
**nevertheless**
 101:2
**new** 1:2,14 3:6
 3:13,20 37:11
 37:11 67:2
 73:7 74:19
 81:13 84:23,25
 86:4,7 87:19
 88:17,18 89:9
 98:9,15,21
 104:8 106:11
 114:23 115:13
 116:22
**news** 102:12
**nifty** 89:21
**night** 65:3
 81:12
**nikhil** 8:19
**nima** 4:10 7:4
**noah** 8:15 14:3
**non** 55:9 60:20
 78:4 90:4,4
 91:10 107:13
**normally** 22:20
**note** 69:21 85:4
 91:23
**noted** 20:1
 55:23
**noteholder**
 20:24 21:7
**noteholders**
 20:11 23:2,13
 95:13

**notice** 16:11
 17:7 60:9
 66:24
**notification**
 40:18,18
**notify** 40:5
**notwithstand...**
 58:7 71:3
**novation** 33:3
 33:10,18,22
 34:17 36:12
 37:3 42:11
 65:11,12,13,19
 67:5,15 81:9
 81:14 83:17,20
 84:14 98:15,18
 98:19,22,23
 99:6 103:22,24
 104:8,18,24
 106:10 109:4
 114:21,22
**november**
 108:9
**noyes** 5:1 7:22
**number** 16:21
 19:2 46:6 55:4
 66:19 102:9,18
 104:3 112:20
**numbered**
 18:13,14
**numbers** 66:6
**nurullayev**
 13:2
**ny** 1:14 3:6,13
 3:20 118:23

**o**

o  1:21 16:1
118:1
o'brien  4:23
7:23
oar  22:18
oath  100:22
101:2
objection  18:2
19:9 20:7,20
20:21,23 21:14
22:3
objections  18:1
20:1 21:25
obligate  69:24
obligated
42:20,21 67:24
72:21 84:2
113:14
obligation  38:9
68:3,4 72:23
obligations
23:3 27:23
33:7 34:21,21
36:16 37:18
40:20 41:19
44:8,11 47:5
50:25 51:20
56:7,18,19,22
60:25 61:13
65:5 66:23
67:3,10,14
68:5 69:18
72:20 73:1,2
77:25 78:19
80:9 81:2,4
91:2,6 96:17

105:2,4 113:9
obligor  71:9
105:23
observe  88:18
obviously
16:21 17:15
42:15 44:14
67:21
occur  99:3
occurred  62:23
occurs  66:25
ochnser  13:4
octave  5:17
odd  45:10
offer  20:2
21:15 102:17
offered  29:17
49:4,23 116:5
116:6,8,11
offering  19:18
19:25 20:3
office  34:7
officer  70:20
officers  45:5
offshoot  76:8
oh  18:13 45:15
63:8 74:2 97:2
99:4
okay  17:18
19:4,24 21:4,9
21:25 22:5
23:18 26:5
34:5,11 35:4,9
35:12 36:6,6
36:10,15,24
39:22,24 40:12
42:5 43:23

44:1 45:12,18
46:5,13,17,24
47:18,25 48:22
49:1 53:4,10
54:24 59:7
66:9,11,16
67:24 69:5,8
75:1 77:8,13
81:20,23,25
82:1 83:3,23
84:17 91:22
92:10 96:23
97:2,10,13,15
97:22 100:16
101:7,15,16
104:1,4,15,16
105:4 106:7
112:15,16
114:10,12,22
117:12
old  104:21,22
118:21
oleksandr  7:11
omnibus  16:7
16:9
once  49:12
56:25 88:11
ones  46:8
oona  10:14
open  46:14
opened  21:24
opening  68:13
87:23 104:2
115:8
opens  87:22
operate  51:13

operated  32:10
44:14 50:14,16
105:12
operation
63:22 112:17
operations
52:3
operator  63:2
opinion  78:10
opinions  29:15
102:16
opposed  87:24
opposite  96:8
option  94:9
options  95:5
order  16:17
17:10 31:16
104:15
ordered  16:18
orders  16:17
ordinarily
17:11 103:15
org  59:11 89:5
93:18 109:6
organizational
59:9
originally
47:21
orren  4:14
13:5
osborne  13:3
outcome  91:9
116:22,23
117:9
outset  116:14
116:18

outside 72:4

outstanding 18:1

overnight 60:4

overview 87:11

owe 27:9

owed 31:21

owes 65:5 72:23 77:6,25 78:19

own 30:23 31:21 52:17

owned 69:18

ownership 60:11,12 91:3

owns 80:8

**p**

p 3:1,1 6:21 8:2 10:25 11:15 16:1

page 35:17 36:3,4,8,9 39:20,24,25 45:23 46:1,14 46:15,20,21 53:3 54:22,23 54:23 55:17,18 55:19,20 58:4 66:15,16,17,18 66:19 68:24 69:3,3,5,6,6 70:7 71:21 72:3 79:7 80:3 81:5 89:8 104:2,4,16,17 105:21 109:18 112:18

pages 45:20 46:4 104:17

pandey 7:25

paper 18:7 23:4 41:8 50:4

paperny 4:19 8:1 34:6

papers 33:17 65:3

paragraph 24:22 47:1 51:9 66:2,12 67:14 79:8 87:24,25 88:23 89:14,17,19,22 89:24,24 90:1 90:7,13,14 91:8 92:5,6 93:8 96:2 103:2,11

paragraphs 89:8 109:17

paramount 115:19

pardon 18:23 64:24

parent 26:6 80:12,17

parpart 8:2

part 17:10 28:4 28:23 40:2 44:19 52:11 55:18 58:24 65:22 72:12,13 73:13,14 74:19 89:15 105:14 108:23 110:12

112:6,8

particular 23:21 30:10 51:15 63:21 112:18

particularly 111:23

parties 17:2,24 17:25 19:5 20:8,16 22:13 23:22 25:2,5 30:12 38:9 52:5 87:16 92:20 104:19 112:23 113:3,7 114:23 115:1 116:13

party 20:18 23:5,6 30:23 43:17 66:23 86:10 87:17 93:4,6 103:5 103:20,21 115:12,13

pass 17:21 62:3

passed 52:9

patel 13:7 15:3

patrick 7:21

paul 9:23 11:5 14:7

pavon 41:12 42:9 55:1,4 79:6 110:17 111:8

pay 16:19

pdf 16:16

peled 13:8

people 34:7 61:8 63:10 72:6,10,12,14 79:6,7 105:12 111:9

percent 82:21 82:24 83:4,6 83:20,24 84:2 84:3,7,8,9 85:24 86:13,18 105:13,14 113:22,25 114:5,10,11,15

percolating 108:10

perfect 93:4 105:2

perfectly 36:25

perkins 13:9

person 47:5 49:15 58:13 96:17

perspective 79:19

persuasive 79:18

pesce 8:3

peter 14:4

petition 23:25 100:8

pham 13:10

philippe 11:20 12:9

phillips 8:4

phishing 16:11 16:15 17:5

phrased  59:24
picked  108:18
piece  41:8 50:4
  100:3 110:13
pillay  8:5
place  24:6
  50:22 57:1
  117:5
placeholders
  19:23
places  58:9
plain  42:19
  117:10
plan  40:2 55:5
  55:18,20,22,24
  78:23 79:9
  110:25
planet  58:13
platform  2:6
  89:11 109:19
  109:20
play  63:15
pleadings  42:8
please  16:2
  17:4,5,16 55:2
  97:25
plenty  29:13
plural  88:19
plus  71:23
  102:5
pm  1:17
  117:20
podium  85:15
point  20:10
  22:24 23:12
  28:19 30:11,11
  32:5 33:15

38:21 39:10
42:14 44:11
47:9 48:1 49:2
55:17 57:15
58:14 59:6
62:5 69:19,20
70:22 75:7,7
76:5 77:6
80:16 81:13
84:5,18 87:10
90:12 91:12
92:15 99:12
100:25 101:11
101:24 102:19
105:7 106:1,16
107:1,4 108:8
109:10 110:14
111:15 114:14
pointed  64:13
65:8,18 67:7
73:4 75:10
79:5,7,19
86:12 88:1
pointing  51:14
66:12 80:1
points  75:19
88:10 92:13
98:3 101:19
106:15 109:14
114:16
pollard  8:6
porcari  13:11
porter  7:24
portfolio  52:1
portion  95:15
  95:15

posed  64:7
position  52:19
  53:14 55:14
  56:6 57:22,23
  61:24 70:5,21
  85:11,16 96:24
  97:1,3 107:6
positive  72:12
possible  92:1
possibly  67:4
  71:6
post  86:21
  100:8
potential  29:12
poynter  13:6
pre  73:5 74:21
  82:22 83:21
  84:4 86:18,20
  100:8 109:5,13
  115:14
precise  67:22
  116:7
preclude  25:5
predominantly
  99:22
preferred  3:11
  19:8,17 20:23
  22:11,14,15
  27:14 29:11,17
  34:15 35:6
  51:7 53:6 62:5
  62:8 116:19
  117:2
present  4:1 5:7
  86:10 102:9
presentation
  65:3 100:4

presented
  23:20 49:15
presumably
  49:12
pretty  45:6
previously
  57:23 84:17,21
  88:19 94:1
primarily
  22:14 37:7
principles
  58:20
printed  89:24
prior  33:21
  37:12 42:14
  48:2,7,11
  54:10 66:24
  73:4 74:10
  88:2 94:2
  102:22 109:12
  112:3 114:5
  116:9,10
probably  20:18
  58:12 64:6
  88:4 110:13
problem  17:16
  43:3 104:25
  109:21
proceed  89:19
proceeding
  28:23
proceedings
  117:19 118:4
proceeds  31:12
  31:17
process  108:10

produce   99:24

production
   36:14

program   74:20
   82:8

progress   55:24

prohibited
   42:2

prohibits   62:10

promise   86:10

promptly
   17:15

proof   49:23

proofs   108:6

property   82:8
   82:9

proposition
   86:6 87:20

protect   97:20

proved   28:3

proves   49:25

provide   16:8
   67:10 84:10
   88:20 97:19
   105:10

provided   30:22
   44:6 55:19

provides   86:5
   88:19 90:11

providing
   66:24 87:1

provision
   22:25 44:18,22
   47:12 51:15
   57:16 58:17,19
   60:13 61:2,4
   63:6 66:13

67:1 70:23
71:16 72:25
78:12,14,15,20
78:20

provisions   23:3
   38:15 58:6
   77:18 78:12
   111:22

publicly   100:2

punitive   25:5

purchased
   74:15

purely   92:20

purportedly
   99:14

purpose   32:13
   61:2,4,12 71:8
   71:11 74:9

purposes   18:2
   67:25 95:13,23
   96:10,12
   100:11

pursuant   61:13

pursued   64:19

put   23:12
   24:17 34:3
   43:13 56:11
   60:2 71:13
   82:18 84:18
   88:16 104:14
   109:22

puts   60:9

putting   37:13

q

question   22:23
   22:24 23:8,9
   25:20 28:20

31:6 32:25
34:13 36:22
38:23 40:17
49:2 54:16
61:20 85:22
97:3 98:17
99:7 100:19,24
101:3 105:19
106:11 107:23
110:17 115:11

questions   64:6
   82:1 109:3
   111:1

quick   100:25

quickly   101:19

quite   25:13
   96:8 102:4

quo   84:20

quote   60:13
   89:23

r

r   1:21 3:1 12:6
   16:1 118:1

raffaele   13:24

raised   55:3
   98:18

rakesh   15:3

range   117:11

rasile   13:12

rather   82:9
   101:13,14

rational   39:2
   43:3 63:2

reach   16:23

reaches   101:11

read   23:4
   27:21 38:14

43:25 56:15,15
57:4 58:5
72:16 78:10,18
79:1 90:21
92:16 93:14
95:19 98:9
100:7 105:21
106:13,23
114:25 115:2,5
115:6

reading   89:25
   90:25 92:18
   94:19,20

reads   73:20

real   52:24

realize   88:8

realized   87:25

really   19:23
   23:21 25:17
   71:5 73:1 74:2
   75:10,12 77:14
   78:2,22 83:11
   90:2 96:6
   102:19 103:10
   108:9 115:24
   116:11

reason   30:25
   32:5 37:10
   44:14 49:20
   63:14 80:11,11

reasonable
   115:25 116:1,4

reasons   80:22
   90:17 103:14

rebecca   6:15

rebuttal   101:9

recall  85:14
receive  42:11
received  21:14
recent  16:11
recital  34:24
recognize  27:3
  113:20
recognized
  85:24 98:4
  103:6
reconcile  52:19
  54:13 61:21
  113:19
record  20:22
  21:11 29:3
  50:20 56:6
  118:4
recourse  47:4
  63:23 71:1,3
  96:16 98:6
recover  26:10
  49:12 91:3
recovery  117:2
rectified  95:4,7
redefined
  94:18
redline  45:22
  45:23 47:20
  67:16 68:17
  69:4 76:18
  88:7,9
refer  39:20
  42:8 73:16
reference
  34:14 49:17
  55:2,16 90:1

references  65:4
  68:9 72:22
  77:24 81:10
referred
  101:24
referring  65:20
refers  53:5
  61:11 77:23
  95:14 100:20
reflect  52:4,17
  53:12,22
reflection
  94:16
reflects  50:12
  51:11 99:18
regain  91:3
regarding
  88:10
regina  13:3
regulation  42:1
regulator
  32:14 39:13,17
  40:2 41:5,14
  55:19 111:10
regulators
  32:21 40:4
  54:17,21 65:20
  80:3
reilly  8:7 13:13
related  36:17
relationship
  36:19 37:11
  39:6 40:7,19
  41:3,15 48:19
  48:19 50:13
  51:19 52:6,7
  55:10,15 56:2

56:19 57:2
  69:21,22 73:14
  73:17 74:10
  75:18 79:2,13
  79:24 80:4
  93:4
relationships
  48:10 50:17
  109:24 116:25
  117:7
relatively
  35:10
release  83:22
  83:23 86:3,4,8
  86:10,13 98:13
  98:14,14 99:3
  99:5 105:8,16
  106:9 115:12
released  82:17
  86:1 104:6
  105:5,23
releases  98:16
  103:23 114:16
relevant  20:17
  44:18 47:12
  78:16 87:14
  103:23 111:23
  114:19 115:11
  116:11
reliance  85:18
  85:19
relief  107:12
relieved  78:24
relieves  37:3
rely  63:8
remain  69:1

remained
  112:2
remaining
  55:25 56:1,4
remains  75:24
  117:2
remarkable
  53:16,19
remedies  60:24
  91:5
remedy  64:16
  104:22
remember
  29:13 61:3
  81:21 82:20
  108:4,13
remove  71:6
removed  94:16
removes  71:20
render  72:15
rendered
  115:24
repay  91:2
repeat  17:16
  116:15
repeatedly
  61:11
replace  30:9
replete  65:4
  77:24
reply  22:17
  53:16 67:13
  71:22 81:19
  115:10
report  17:11
  25:13 64:15,18
  100:5,10 101:8

**reporting**
110:25
**represented**
62:16
**require** 78:23
**required** 44:23
49:8 81:14
110:4
**requires**
114:17 117:7
**reserve** 20:19
**residual** 85:8,9
**resolution** 2:3
**resolve** 20:1
23:8,9 113:12
**resolved** 18:1
29:1,6,7
**respect** 29:24
47:4 55:10
71:2 79:13
83:24 84:14
87:21 96:16
100:9 107:1
110:13
**respectfully**
96:25
**respectively**
34:19
**respond** 22:20
33:14 34:12
**responding**
55:1
**response** 100:1
115:9,11
**responses**
33:13 111:1

**responsible**
107:7
**rest** 25:3 58:6
72:16
**result** 68:22
78:6 82:16
90:15 92:7
**resulting** 36:17
**retail** 32:18
51:24
**return** 72:20
**reveal** 51:18
**review** 100:7
**rewrite** 77:19
**rhodely** 4:22
8:23
**richard** 8:4
13:15
**richards** 13:14
**rick** 5:13
**rickie** 10:2
**ricoh** 26:21
**riffkin** 8:8
**right** 16:2
19:11,20 20:5
22:4 24:7,23
26:2 27:21
32:2 34:1 38:2
38:25 46:13,20
47:1,9 57:3
60:15 65:17
67:12 69:11
70:22 73:24
76:12 80:20
82:21 86:12
87:15 88:4,25
90:6 92:5,12

93:17 97:10
99:1 109:21
111:5 112:15
114:13 115:1
115:15 116:17
**rights** 26:15
36:20 40:20
44:8 56:17,19
56:22 60:10,24
60:25 61:13,15
66:22 77:22
81:4 90:20
91:4,6,7,10,15
91:16,17
**road** 118:21
**rob** 10:5
**robert** 4:14
9:16 13:5 15:2
**robin** 11:25
**robinson** 8:9
**robison** 13:15
**rodriguez**
13:16
**roni** 41:12 42:9
55:1 79:6
**room** 86:2
**ross** 4:11 7:7
**routinely** 92:20
**rudolph** 13:17
**rule** 78:4 116:4
**ruled** 82:6
**ruling** 25:10
82:15
**rump** 55:11
110:18,22
**run** 75:24

**running** 95:4
**runs** 109:21
**ryan** 4:7 8:10
8:11,12 10:4
11:12

**s**

**s** 3:1 7:15
13:19 14:19
16:1 53:2,6,12
53:21 56:15
**sabin** 13:19
**sale** 31:11,12
31:16,17
**sam** 3:22 5:4
20:13 21:11
82:4
**sameer** 9:12
**samuel** 6:21
**sanchez** 8:13
**sarah** 7:13
14:20
**satisfied** 85:2
**satisfy** 32:14
94:24
**saw** 60:4 81:15
102:7 106:23
**saying** 25:24
35:13 53:20
61:9 62:15
70:25 72:11
76:13 95:11
99:3 100:17
103:1,13 108:2
108:21,23
109:25 110:6
110:17 111:2
116:17,21

says  34:20
  35:22 37:2,16
  37:17,25 38:6
  40:9 41:8
  42:22 43:6
  46:6 47:16,17
  50:8 55:2,5,23
  59:25,25 60:17
  60:20,22,23,23
  61:7,15 66:21
  68:3,6 69:9,12
  71:1,2,4,13,22
  72:18,20 76:6
  78:5,21 79:1
  79:14 81:2
  87:23 88:11
  89:10 91:24,25
  92:1 95:9,21
  95:23 96:7,8
  96:14 97:4,7
  98:8 99:4
  101:10 104:18
  105:1 109:18
  112:1,9,23
scam  16:21
scenario  90:20
  90:21
schedule  99:18
schedules
  75:23 99:16,16
  108:2,12,14,17
scheuer  13:20
schickler  13:21
schneider  8:14
schottenstein
  8:15

schroeder  8:16
schwarz  13:22
scott  6:7 10:12
  11:6
scratching
  60:1
screen  34:7
  53:9
scrivener's
  68:10,17 94:21
  103:7
searched  81:21
seated  16:2
sec  53:12,21
  54:11
second  39:22
  45:7,16 52:11
  57:6 59:5
  87:10 90:22
  92:18 94:10
  98:8 103:4
  104:14 109:18
  112:22 114:16
secondarily
  38:19
section  24:3,7
  24:14,15,18,21
  25:4,14 26:9
  26:13,14 37:15
  46:16,21 59:19
  59:19 60:5,7,8
  60:13 61:11,12
  66:1,2,5 68:16
  68:16 70:8
  72:18,19,24
  77:17,21 78:9
  78:17,17,17,17

78:17,18 91:15
  91:15 92:3,4,9
  92:14,16,18,24
  95:15 96:10,13
  100:7,7 102:23
  103:3 104:5
  105:11 112:18
  112:22
sections  77:17
secured  35:5
  61:18
see  18:6 21:16
  32:20 33:5,8
  35:17 36:7
  39:7,8,10,12
  39:16 41:19
  43:20 47:19
  53:2 54:25
  55:20 62:7,12
  62:12 75:12,23
  79:14 81:22,25
  83:23 86:3
  88:16 96:4
  98:17,20,21
  109:8,19 115:9
seeing  29:13
seeking  23:8
seeks  82:15
seem  17:13
seems  25:12
  45:10 85:17
seen  29:15 33:4
  53:1 63:7
  70:17 99:4
  111:19 117:3
seizes  98:13

selectively
  89:22
selendy  8:17
send  51:12
senes  13:23
senese  13:24
sense  63:13
  69:19 71:5
  88:4 92:9 93:4
  93:21,22,23
  94:5,7 95:9
  101:23 102:11
  105:2 113:13
  113:18
sentence  25:1
  68:13 70:25
  72:15 88:15,24
  89:6 90:22
  112:22
sentences  25:4
separate  26:24
  30:23 48:19
separateness
  80:18
series  3:11
  16:6 19:17
  20:24 21:7
  22:13 30:9
  34:14 35:6
  51:7 53:5
  65:18 82:15
  87:12 95:12
serious  16:13
  17:16 95:1
served  60:4
services  30:22
  44:5 87:1

89:15
serving 108:24
set 18:17 30:25
  35:23 77:10
  85:20
setoff 47:4
  96:16
setovich 13:25
settled 104:19
settlement 98:5
several 34:2
  49:11
severally 43:10
shara 5:5 6:1
share 31:24
  34:7
shareholder
  47:7 70:14
  96:19
shareholders
  70:19
shares 80:8
shawn 8:2
sheet 46:5
  53:11 56:4
shell 67:4
shifted 33:4
shoba 8:5
short 35:11
  51:14
show 34:23,24
  68:25 87:5
showing 88:25
  97:18 107:14
shown 110:1
shows 45:23
  52:23 69:1

86:12 116:12
shred 43:4
siddharth 7:25
side 22:14,14
  33:1 34:24
  47:10
sign 37:25 86:3
  86:3
signature 36:8
  118:6
signed 34:18
  35:18 36:13
  65:12,23
significant
  16:8 27:20
silo 23:3 29:12
  62:7
simon 6:9
simply 59:12
  102:4,25
single 49:14
  54:6
singular 88:19
sitting 18:7
  31:6
situated 84:3
situation 106:8
size 28:24
  52:12
slate 77:19
slide 33:24
  34:13,23,23
  39:20,24,25
  43:21 53:2
  58:10 59:4,5,8
  60:2,3,3,3
  106:19

small 43:24
  95:15
smith 13:18
  14:1,2
software 16:16
sold 31:13 70:3
solowiejczyk
  14:3
solutions
  118:20
solvent 85:1
soma 9:20
somebody
  36:23 37:6
  39:15 55:1
  76:6 106:10
  107:2
sonya 2:25
  118:3,8
soon 17:17
sophisticated
  63:7
sorry 21:4
  34:23 46:3
  54:22 67:12
  69:3 80:19
  82:11 97:2
  114:2
sort 18:12
  72:23 87:11
  89:22 101:20
sorts 74:8
sought 29:18
  99:14
southern 1:2
  86:7

space 27:18
speak 20:8
  29:22 85:12
speaks 38:7,8
special 25:6
  78:4
specific 59:22
  59:24 88:25
  89:1 90:18,19
  114:17
specifically
  57:17 75:16
  76:13 91:24
  112:1
spiral 69:4
sprofera 14:4
st 8:18
stabbert 14:5
stable 60:8
stage 100:23
stanbury 14:6
standalone
  54:9
standard 94:24
standing
  108:21 116:17
stands 87:20
stapleton 14:7
start 18:5
  22:13 62:6
  64:5,6,9,24
  65:6,7 68:24
  88:7 90:21
started 54:3,3
  64:9 79:25
starting 22:23
  23:21 68:5

starts 24:14
35:12 45:23
47:18 55:21
66:16 67:13
state 63:15
statement
32:16 43:5,5
53:11,16,20,22
86:9 116:8
statements
54:9 75:23
87:15
states 1:1,12
stating 101:5
status 84:20
stayed 87:6
steadman 14:8
steffan 10:16
step 28:18 67:9
steps 44:23
55:21,25
steven 13:1
stipulated 48:6
111:8
stock 80:15
stole 88:13
stood 63:11
85:15
stop 38:23
89:18
stout 14:9
stratton 15:4
strongly 25:13
106:20
struck 70:15
structure 27:5
32:4 50:20

51:16 58:24
59:10 69:17
72:4 117:4
structured
29:11 32:8
stuck 96:1
study 108:19
stuff 115:3
style 99:6
sub 60:15
subject 31:18
35:23 105:15
submission
117:18
submit 29:2
99:10
submitted
53:11,20 54:11
99:17 108:23
subsequent
104:20,21
109:9
subsidiaries
29:20 80:9,20
subsidiary
80:13,16
substantially
23:25
substantive
64:16
substitute 94:5
104:21
sucked 30:19
sue 104:23
sued 26:12
suggest 16:18
29:17 32:7

49:15 57:6
61:23 68:22
75:1 76:22
78:13 90:3
suggested
107:2
suggesting
23:17 28:5,17
29:5 31:23,24
suggestion
32:7 107:16
111:24
suggests 74:2
75:12 76:19
77:22 79:20
106:20
suite 118:22
sullivan 14:10
sumit 10:23
summarizing
101:4
supersede
104:21
supersedes
37:12 115:13
superseding
104:23 105:9
105:17
supplemental
99:10
support 116:6
supportive
61:24
supposed 72:3
87:3 103:9
sure 17:4,14
18:6 21:16

27:17 28:7,15
31:8,15 33:1
34:7,16 41:22
44:3 63:18
69:2,6 70:23
76:1 90:16
93:13 94:15
95:23 101:9
108:24 111:6
116:18
suri 8:19
surprising 29:9
29:10,10 57:6
swoop 49:14
systems 86:7

**t**

t 7:17 118:1,1
ta 14:11
tab 46:2,3
taji 14:12
tak 14:23
take 16:16 20:9
28:18 37:22
57:8,19,20
63:3,13 75:4
82:15 102:22
117:18
taken 17:10
55:14,25 56:7
takes 63:1
talk 49:18
85:13 87:2
88:6 104:17
talked 50:10
110:11
talking 25:21
51:15

| | | | |
|---|---|---|---|
| **talks** 104:7 | 65:4 66:1,3,22 | 98:8,12 99:2 | 95:22 98:5,10 |
| **tanzila** 4:12 | 67:8 68:4,7,22 | 99:12 110:5 | 100:18 101:19 |
| 9:10 14:25 | 71:8 72:16 | **things** 74:8 | 101:20 102:4 |
| **target** 31:3 | 73:5 77:24 | 100:6 108:3 | 102:10,18 |
| **tautology** 59:1 | 79:23 80:2,25 | **think** 19:20 | 103:5,12 |
| **taxes** 16:17,19 | 81:10 83:9,13 | 20:18 22:12 | 105:25 106:1,5 |
| **taylor** 8:20 | 84:7,10 85:12 | 23:22 24:12 | 106:16,16 |
| **taylor.kamara** | 85:16,19 86:16 | 25:9 26:23 | 107:22 108:4 |
| 4:18 | 88:5,11,20,21 | 27:16,20 30:10 | 110:16 111:15 |
| **team** 102:4 | 88:24 89:4,7 | 31:4 32:6 | 115:10,16 |
| **technically** | 90:10 93:18,24 | 34:25 37:22 | 116:12 |
| 88:9 | 94:2 95:10,21 | 41:4,10 42:15 | **third** 30:23 |
| **telephonically** | 96:7,11 97:7 | 46:15,18,20 | 44:4 66:23 |
| 5:7 | 98:9,10 104:6 | 48:6 49:24 | 67:21 93:4,6 |
| **tell** 43:10 49:22 | 109:17 110:15 | 51:4 52:14,16 | 98:12 |
| 50:3,4 69:5 | 110:23 111:9 | 53:15 54:1,2 | **thirty** 19:21,22 |
| 74:21 98:20 | **terrific** 100:19 | 55:13,16 56:5 | 66:13 |
| **telling** 40:4 | **testify** 49:6 | 56:13 57:5,13 | **thomas** 6:5 |
| 41:13 | **texas** 67:9 | 58:2,12,14 | 8:18 10:22 |
| **ten** 18:22,24 | **thank** 17:8,19 | 59:16 60:6 | **thomashower** |
| **terence** 4:15 | 17:23 20:8 | 62:17 63:9,19 | 14:13 |
| 7:16 | 21:2,10 22:10 | 63:24 66:1 | **thorough** |
| **term** 68:7 89:3 | 63:25 64:2 | 68:15,16,20,21 | 100:6 |
| 89:5 94:1 | 66:11 97:22 | 69:25 70:24 | **thought** 77:2 |
| 95:20 96:5 | 98:1 101:15,16 | 73:12,13 74:1 | 89:21 111:23 |
| 97:4,6 112:25 | 101:17 106:14 | 74:24 75:16,17 | 114:4 |
| **terms** 23:9,10 | 117:13,15,17 | 76:5,8,18 | **three** 19:22 |
| 23:20 24:4 | **thanks** 46:12 | 77:10,11,18 | 24:7 55:4,6 |
| 25:3,21,22 | **theory** 38:16 | 78:8,8,9,11,14 | 60:14,15 67:20 |
| 26:9 28:11 | **thereof** 104:23 | 78:15,19 80:24 | 77:11,11 79:9 |
| 30:2 35:22 | **therese** 13:20 | 82:21 83:9 | 103:16 |
| 40:17 41:13,15 | **thing** 27:17 | 84:5,19 86:11 | **thunder** 88:13 |
| 45:14 48:3,8 | 29:9,10,10 | 86:24 87:11 | **tie** 78:8 |
| 48:21,25 49:4 | 36:23 37:5 | 88:5 90:10 | **tim** 7:1 |
| 53:18 54:4 | 38:14 39:21 | 92:13 93:2,2 | **time** 21:15 |
| 57:4,9 58:12 | 87:2 88:15,16 | 93:14 94:25,25 | 29:25 30:16 |
| 63:24 64:11 | 93:16,16 97:15 | 95:1,8,11,22 | 48:24 49:17 |

50:23 52:24
53:23 56:1
63:15 64:18,21
66:23 69:19,20
69:20 73:20,24
75:17 92:22
115:6 117:14
117:15
**times** 70:17
**timon** 12:24
**timothy** 13:13
**title** 100:7
**today** 16:6
52:19 58:23
64:11,21 77:18
98:17
**today's** 18:2
**todd** 11:8
**told** 45:23 46:7
51:20,21 56:14
56:17,23,24,25
79:17 111:22
**tomas** 12:5
**ton** 54:8
**tonight** 116:19
**tony** 8:25
**took** 30:2
40:23 44:23
57:8 91:12
100:6
**top** 55:1 66:6
69:3,17 74:6
80:7,8 99:1
**tort** 28:16
**totally** 80:20
92:17

**tou** 44:5
**tough** 25:9
**tran** 14:14
**transaction**
113:20
**transcribed**
2:25
**transcript**
99:20 118:4
**transfer** 35:16
36:1,16,19,23
37:5 44:7
50:23,24 51:12
56:21 64:20
66:22,25 67:3
67:14 79:2
81:9 89:11
111:17 112:6
112:25 113:2,8
**transferee**
35:24 36:2
**transferor**
35:25 36:1
65:25
**transferor's**
36:20
**transferred**
36:2,5 38:9
40:20 50:25
55:12 82:7
89:15 105:2,4
113:1,3
**transferring**
34:21
**transfers** 81:2
**tried** 62:15
102:9 108:25

**tristan** 6:6
**true** 29:25 30:1
31:8 82:14
83:6 85:4
118:4
**trust** 60:11
61:18,18,19
**trustee** 16:24
**try** 18:12 28:7
33:14 40:14
102:15 116:20
**trying** 16:23
17:13 28:19
92:24 94:4
102:17
**turetsky** 4:25
8:21
**turn** 52:9 64:7
67:16 70:7
92:9 104:4
116:2
**turned** 111:11
**turner** 14:15
**turning** 17:24
54:16
**tweed** 3:10
**tweet** 116:18
**twitter** 27:17
**two** 25:4 27:19
28:20 66:13
67:9 70:25
75:19 89:8
90:17 104:17
106:25 109:14
109:17 113:9
**tyler** 12:1,10

**u**

**u.k.** 32:14,17
32:18,21 39:5
39:13 40:2
41:5,13 54:21
55:9,19 110:7
111:10
**u.s.** 1:23 16:24
17:11,12,22
74:19 84:24
**uab** 40:7 88:25
**ubierna** 8:22
**uday** 11:13
**uk** 32:15
**ultimately**
80:10
**unable** 91:2
**unambiguous**
76:4
**unambiguou...**
85:16 111:11
**unaware** 36:13
**unchanged**
23:25
**uncontroverted**
32:13
**under** 22:23,24
23:10 25:3,18
25:21,22,22
28:11 30:17
32:4 44:5,17
48:2,7,21,24
55:23 59:2
60:19 61:1,16
66:23 77:22
83:19 91:4,15
91:25 92:4

98:21 100:22
101:2 105:11
106:11 107:8
109:12,12
117:18
**understand**
20:6 24:25
27:25 28:14
33:7 36:25
37:13 38:2
41:17,23 45:5
61:10 73:12
83:1 89:16
94:10 95:12
96:22 103:11
116:15
**understanding**
24:2
**understood**
39:13 49:3
72:11,16
107:20
**undertake**
23:15
**unequivocal**
86:9
**unexpressed**
20:17
**unintended**
76:10
**united**  1:1,12
**unjustified**
82:16
**unlimited**
111:11
**unsecured**  3:18
21:12 82:4

**unsigned**  33:18
65:13
**unusual**  57:7
**update**  16:8
**use**  23:10,10,20
24:4 25:3,21
25:23 26:9
28:11 30:2
36:17 40:17
41:13,16 45:14
48:3,8,21,25
49:4 53:18
54:4 57:9
58:13 61:3
63:24 64:11
65:4 66:1,3
67:8 68:4,7,22
71:8 72:17
73:5 77:24
79:24 80:2,25
81:11 83:10,13
84:10 85:13,16
85:19 86:16
88:6,7,11,20
88:21,24 89:4
89:7 90:10
93:18,24 94:2
94:9,10 95:10
95:21 96:5,7
96:12 97:7
98:9,10 102:15
104:7 109:18
110:15,23
111:9
**used**  16:16
17:10 58:9
63:22 69:9

108:8,10
**user's**  36:17
**users**  55:8,10
56:1,1,4 79:11
79:13 112:24
**using**  2:1 89:2
89:5 101:8
**usually**  62:12
63:17 64:22
**utsav**  11:10

**v**

**v**  8:7 13:12
**vallon**  4:22
8:23
**value**  27:9,9
30:18,23 31:5
80:20 84:22
85:8
**various**  58:9
65:8
**vaunted**  99:13
**vazquez**  8:24
**vejseli**  8:25
**veritext**  118:20
**version**  23:21
23:23,23,24
24:4 30:2,2,4,6
30:13,14,17
32:11,12,13
36:13 38:4,24
40:23 42:23,23
43:6,13,14
45:3,4,19,20
45:24 47:11,11
47:15 48:11
49:7,7 56:24
57:1,1 62:24

66:5,8,10 73:5
73:7,7 81:1
82:22,25 83:6
83:13,21,25
84:2,4,10,14
84:20,23 86:18
86:19,20,21
87:22 88:2
102:22 104:7
109:12
**versions**  23:25
42:21 44:17,19
73:4 83:1,19
88:2 94:2
105:11,12,15
109:12 113:23
**versus**  86:22
**vessies**  14:16
**vicariously**
70:20
**victor**  8:22
**view**  49:7 50:2
107:19
**vince**  14:10
**vincent**  7:10
**violate**  40:24
58:20
**virtue**  91:8
**voluminous**
46:8
**voluntarily**
63:13

**w**

**w**  14:5
**wait**  36:6
**walk**  101:10

**walker** 4:13
9:1
**wallets** 87:7
**want** 16:12
17:1 20:15
25:8 31:16
32:15,17 39:16
39:21 41:6,22
41:24,24 46:7
47:13 54:14
63:17 84:18
85:12,13,19
87:10 89:20
93:5,5 99:12
100:3 108:7,19
111:15 116:7
**wanted** 17:2,3
28:1,14 68:12
72:7 89:1
101:7
**wants** 58:11
70:18 95:2
97:11
**wark** 14:17
**warren** 9:2
**way** 18:5 27:21
28:12 29:11
30:25 32:8
43:6 49:6
56:11 57:3
59:1,24 61:21
73:19 78:25
80:22,23 85:25
92:16,17,18
93:8 95:19
102:9,10
113:11,19

115:21
**ways** 99:15
102:10,18
**we've** 16:23
20:15 22:6
28:12 34:6
50:10 55:14
65:2 102:3
108:23 115:16
116:19
**wedoff** 9:3
**week** 100:5
**weekend** 72:8
72:9
**weight** 20:18
37:14
**went** 24:20
49:7
**westover** 4:20
9:4
**whichever**
94:20
**white** 3:17
21:11 62:16
82:4
**william** 8:16
**willis** 14:18
**wiseman** 14:19
**wish** 113:4
**withdrawal**
55:5 79:8
**withdrawals**
20:7
**witness** 18:3
43:5
**witnesses**
61:25 62:1

**wofford** 9:5
**word** 24:3,5,8
24:21,23,23
30:3,6 37:14
40:23 44:24,25
57:12,16,16
58:16 59:13
69:13 70:13,14
70:16 71:6
72:24 73:5
87:24,25 89:25
94:10,13,14
96:1 115:24
**words** 24:15,16
50:19 58:4,8
58:22 67:22
71:21 72:3
80:3 81:5,7,8
83:1 89:22
90:21 92:24
105:5 115:17
115:19
**works** 18:5
**world** 44:15
50:14 56:23
**worth** 34:25
99:21
**worthless**
80:15
**would've** 93:8
**writing** 36:4
108:22
**written** 33:3
42:1 71:17
76:5 83:17
92:17 110:14

**wrong** 104:9
**wrote** 111:10
**wynn** 14:20

|              x              |
| :-------------------------: |

**x** 1:4,10 15:5

|              y              |
| :-------------------------: |

**yanez** 4:20 9:4
**yarborough**
14:21
**yards** 3:12
**yaz** 9:6
**yeah** 30:18
38:17 39:23
43:21 45:15
46:20 60:15
70:9,15 73:9
83:12 84:5
87:8 88:3
89:15 106:4
114:1 115:4
**year** 116:9,9,10
**yeary** 14:22
**yeilding** 9:7
**yep** 112:19
**yere** 62:12
**yesterday**
33:24
**yeung** 14:23
**yohannes** 5:10
**yoon** 9:8
**york** 1:2,14 3:6
3:13,20 81:13
86:5,7 87:19
98:15,22 104:8
106:11 116:22

| z |
|---|
| **zaharis**  14:24 |
| **zaryn**   10:20 |
| **zats**   9:9 |
| **zomo**   4:12 9:10 |
|   14:25 |
| **zoom**   2:1 34:8 |