Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' STATEMENT REGARDING PLAN PROCESS**

**THIS STATEMENT IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN FILED AND APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS STATEMENT IS SUBJECT TO CHANGE. THIS STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

1.     On February 28, 2023, the above-captioned debtors and debtors in possession (the "Debtors"), the official committee of unsecured creditors (the "Committee"), and NovaWulf Digital Management, L.P. (together with its affiliates, "NovaWulf" or the "Plan Sponsor" and,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

together with the Committee and the Debtors, the "Parties") executed the Plan Sponsor Agreement and announced the transactions documented therein as the "stalking horse bid" for the sale/reorganization process with respect to the Debtors' assets.[2] Following the entry into the Plan Sponsor Agreement, the United States Bankruptcy Court for the Southern District of New York (the "Court") granted the Debtors' request to extend their exclusive period to file a chapter 11 plan through March 31, 2023 (the "Filing Exclusivity Period").[3]

2. Earlier this week, the Court approved the Debtors' motion to approve certain bid protections for NovaWulf, in its capacity as the proposed plan sponsor.[4] The current deadline for other parties to submit competing bids to sponsor a plan of reorganization or another transaction with respect to the Debtors' assets is **April 17, 2023**.[5]

3. Today, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (the "Plan"), which reflects the proposed transaction sponsored by NovaWulf.[6] The key terms of the Plan that were outlined in the summary attached to the Bid Protections Motion remain substantially unchanged and are outlined further below.

---

[2] *See Debtors' Motion for Entry of an Order (I) Authorizing and Approving Certain Bid Protections for the Proposed Plan Sponsor and (II) Granting Related Relief* [Docket No. 2151] (the "Bid Protections Motion"). The plan term sheet (the "Plan Term Sheet") and plan sponsor agreement (the "Plan Sponsor Agreement") with Novawulf and the Committee are attached to the Bid Procedures Motion as Exhibit A and Exhibit B, respectively. The Debtors also filed a *Notice of (I) Selection of Stalking Horse Bidder and (II) Amended Dates and Deadlines with Respect to Bidding Procedures for the Potential Sale of Substantially All of the Debtors' Assets* [Docket No. 2150] designating NovaWulf as the stalking horse bidder.

[3] *See Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2203] (the "Second Exclusivity Order").

[4] *Order Granting the Debtors' Motion for Bid Protections as Modified* [Docket No. 2334].

[5] *See Notice of (I) Selection of Stalking Horse Bidder and (II) Amended Dates and Deadlines with Respect to Bidding Procedures for the Potential Sale of Substantially All of the Debtors' Assets* [Docket No. 2150].

[6] All terms used but not defined herein shall have the meaning ascribed to them in the Plan.

4. The Bankruptcy Code requires that prior to the solicitation of acceptances or rejection of the Plan, the Debtors file, and the Court approve, a summary of the plan and written disclosure statement containing information of a kind, and in sufficient detail, that would enable a hypothetical investor to make an informed judgment about the plan.[7] The disclosure statement in these chapter 11 cases (the "Disclosure Statement") will be voluminous. And because of the complexity of these chapter 11 cases and the proposed plan transaction, the Debtors are continuing to draft and refine a disclosure statement, so that the version that is filed provides adequate information regarding the Plan to account holders and other stakeholders.

5. To ensure that the Disclosure Statement is comprehensive and accurate, the Debtors and the Committee have agreed that the Debtors will file the Disclosure Statement by **April 12, 2023** (or such later date as may be agreed to by the Debtors and the Committee and filed in a notice on the Court's docket). As a result, the Debtors will not be filing the Disclosure Statement today, but are filing this statement (the "Statement") to provide an overview of the Plan, an update on the timing of the process for the Disclosure Statement, and to preview the information that will be contained in the Disclosure Statement.

A. **The Disclosure Statement**

6. As stated above, the primary purpose of the Disclosure Statement is to provide "adequate information" to allow parties entitled to vote on a proposed plan to make an informed decision about whether to vote to accept or reject the plan. The Court will ultimately have to approve the Disclosure Statement and all parties will have the opportunity to argue that more

---

[7] *See* 11 U.S.C. § 1125(a)(1).

3

information is required. Here, to provide the Debtors' stakeholders with adequate information, the Disclosure Statement will contain, among other things:

- a plain English summary of the Plan terms and the proposed restructuring contemplated by the Plan;

- typical questions and answers about the Disclosure Statement and the Plan that the Debtors anticipate many stakeholders may have when reviewing both documents;

- a detailed summary of the Plan, including the projected recoveries for different stakeholders under the Plan if the Plan is confirmed, and the recoveries that could be expected in both an orderly liquidation under chapter 11 and a liquidation under chapter 7 of the Bankruptcy Code;

- a detailed summary of the settlements contained in the Plan and examples of the recoveries under each such settlement;

- an overview of the Debtors' prepetition obligations and operations as well as an overview of the Debtors' current corporate structure;

- a summary of the events leading up to these chapter 11 cases;

- a summary of the chapter 11 cases from the Petition Date through the date of filing of the Disclosure Statement;

- the risk factors associated with the Plan, confirmation of the Plan, and consummation of the Plan;

- a description of the solicitation and explanation of who is allowed to vote, and how to vote, on the Plan;

- an overview on the process related to confirming the Plan;

- a description of certain securities law matters related to the Plan; and

- a description of the potential material Federal tax consequences of the Plan to the Debtors, any successor of the Debtors, and a hypothetical investor typical of the holders of claims against and interests in the Debtors.

7.   In addition, the Disclosure Statement will include a "Liquidation Analysis" and other financial summaries that will demonstrate that the transactions contemplated by the Plan are better than a chapter 7 liquidation and are feasible. Finally, the Debtors anticipate that the

Disclosure Statement will also include an exhibit containing "Frequently Asked Questions" that will include more questions and answers about the Plan and Disclosure Statement to assist all creditors, including *pro se* creditors, in understanding the transactions contemplated by the Plan. In sum, the Disclosure Statement will be a comprehensive document designed to help stakeholders understand the Plan so that they may make an informed decision on whether to accept or reject the Plan.

8. The following table provides the currently contemplated proposed timeline for the filing and approval of the Disclosure Statement.

| **Event** | **Date**[8] |
|---|---|
| Deadline for Debtors to File Disclosure Statement | April 12, 2023, 11:59 p.m., prevailing Eastern Time (subject to further extension) |
| Deadline to Object to Approval of the Disclosure Statement | May 10, 2023, 5:00 p.m., prevailing Eastern Time |
| Deadline for Replies in Support of the Disclosure Statement | May 15, 2023, 5:00 p.m., prevailing Eastern Time |
| **Hard Deadline on All Filings Other than Agendas/Witness and Exhibit Lists** (*pro se* **included**) | Agendas and witness and exhibit lists shall be filed in accordance with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Case Management Procedures attached to the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181]. |
| Hearing Regarding Approval of the Disclosure Statement | May 17, 2023, 10:00 a.m., prevailing Eastern Time |
| Voting on the Plan | To begin after the Court approves the Disclosure Statement |

---

[8] The dates contained herein are illustrative and assume that the Debtors and the Committee do not further extend the April 12, 2023 deadline to file the Disclosure Statement.

**B.    A Summary of the Plan**

9.    Prior to the Disclosure Statement being filed, the Debtors want to provide some guidance to their stakeholders on how to read the Plan. The Plan is a contract between the Debtors and its creditors and other stakeholders. It is a complex legal document and should be read in its entirety in detail. For the avoidance of doubt, this Statement is intended to provide a plain English summary of the Plan. To the extent there is a discrepancy between this Statement and the Plan, parties should rely on the Plan. Moreover, almost inevitably, the Plan will be changed in some regard prior to the hearing on the Disclosure Statement. This Statement only reflects the Plan on file as of the date of this Statement. Once the Debtors file the Disclosure Statement, stakeholders should refer to the Disclosure Statement, rather than this Statement.

10.    The Plan provides for (a) the distribution of a significant amount of the Debtors' liquid cryptocurrency to account holders on the effective date of the plan and (b) creation of a new public-reporting, regulatorily compliant entity ("NewCo") that will manage the Debtors' illiquid assets (including the mining business, retail and institutional loan portfolios, staked cryptocurrency, and other alternative investments) and whose common equity will be 100% owned by creditors at emergence. NewCo will be predicated on transparency and governed by a board of directors, a majority of which will be appointed by creditors. Certain claims and causes of action of the Debtors will be preserved and pursued by a litigation administrator for the benefit of General Earn Creditors (and those other creditors that receive the treatment provided to General Earn Creditors).

11.    In general, the Plan is divided into several key sections:

- Article I.A contains the definitions of various capitalized terms that are used throughout the Plan. The defined terms are an essential part of the Plan. Creditors should cross-reference capitalized terms used in the Plan to the definitions provided in this section to understand what is being described

throughout the Plan.

- Article III.B describes the treatment to be given to holders of Claims against the Debtors and Interests in the Debtors. Claims and Interests are separated into different Classes and provided treatment based on their relative legal rights against the Debtors. Article III sets forth the distributions that the Debtors are proposing to provide to their various stakeholders, including account holders.

- Article IV describes various provisions for implementing the Plan, including the NewCo transaction, the substantive consolidation of Celsius Network Limited and Celsius Network LLC, the creation of the Litigation Administrator and Litigation Oversight Board, and the various settlements proposed to be implemented under the Plan.

- Article VI has certain provisions regarding distributions to be made under the Plan.

- Article VII contains the procedures for the allowance of claims and resolving, among other things, disputed claims.

- Article VIII has certain release, exculpation, and injunction provisions.

- Article IX has certain conditions that must be satisfied before the Plan can become effective and distributions can be made.

12. A summary of the treatment set forth in Article III.B. is included below:

| Account Holder Class | Description |
|---|---|
| *Convenience Claims* | "Convenience Claim" is any aggregate Account Holder claim (excluding Custody Claims and Retail Borrower Deposit Claims) valued greater than $10 but less than or equal to $5,000. |
| | Each holder of a Convenience Claim will receive Liquid Cryptocurrency in an amount sufficient to provide a 70% recovery on such claim, with such claim calculated in accordance with the Distribution Valuation Table. |
| | Holders of Convenience Claims valued below $5,000 but at or above $1,000 can opt out of the Convenience Class and receive Earn Claim treatment (referred to in the Plan as "General Earn Claim" treatment to clarify the exclusion of Convenience Claims). |
| | Holders of claims valued at more than $5,000 may elect to have their Claims reduced to the Convenience Class Threshold (*i.e.* $5,000) and be treated as Convenience Claims. |
| | Each election will be made on the applicable ballot soliciting votes with respect to the Plan. |
| *General Earn Claims* | Each holder of a General Earn Claim (*i.e.* an Earn Claim that does not elect to be treated as a Convenience Claim) and any other |

7

| | |
|---|---|
| | Account Holder claim that receives the same treatment as a General Earn Claim will receive its Pro Rata share of:<br><br>- the Liquid Cryptocurrency Distribution Amount;<br><br>- Equity Share Tokens and Management Share Tokens reflecting common and preferred equity interests in the NewCo; and<br><br>- proceeds from the litigation of "Recovery Causes of Action," which will include (but are not limited to) the causes of action described in the draft complaint attached as <u>Exhibit 2</u> to the UCC Claims Stipulation Motion.[9]<br><br>*Election*: Elections for more or less Liquid Cryptocurrency or ESTs/MSTs will only be honored as possible based on the elections of all other Account Holders. Elections to receive more EST/MSTs would result in an Account Holder receiving a 30% premium in EST/MSTs when compared to the amount of Liquid Cryptocurrency such Account Holder would otherwise receive. Elections to receive more Liquid Cryptocurrency would result in an Account Holder receiving a 30% discount in Liquid Cryptocurrency when compared to the EST/MSTs such Account Holder would otherwise receive.<br><br>Such elections will be made on applicable ballots soliciting votes with respect to the Plan. More information on the Election can be found in the definitions of "EST/MST Weighted Distribution Election" and "Liquid Cryptocurrency Weighted Distribution Election."<br><br>Additionally, Management Share Tokens associated with Equity Share Tokens that are traded in the first year after the Effective Date will be mandatorily redeemed (for no consideration) and will not be redistributed by NewCo or any other party. More information on that mechanic can be found in Article IV.D.4 of the Plan titled "Equity Share Tokens and Management Share Tokens." |
| *Custody Claims* | <u>Withdrawable Custody Claims</u>:<br><br>Custody Claims that the Court previously authorized for withdrawal under the Custody Withdrawal Order[10] (Pure Custody Claims and Eligible Transferred Custody Claims) may continue to be withdrawn in full pursuant to the Custody Withdrawal Order and are accordingly unimpaired (and not entitled to vote) under the Plan.<br><br><u>General Custody Claims</u>:<br><br>All other Holders of Custody Claims ("General Custody Claims") will have the opportunity to either (a) opt into the Custody Settlement |

---

[9] A revised complaint was recently filed and can be accessed at Docket No. 2349.

[10] *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767].

8

| | |
|---|---|
| | through the Plan or (b) have the Cryptocurrency associated with their General Custody Claim reserved in a segregated wallet pending resolution of any Causes of Action (including Avoidance Actions) against such Account Holder.<br><br>Each Holder of a General Custody Claim that opts into the Custody Settlement will receive a 72.5% recovery on their General Custody Claim and a release of all Causes of Action against them. They will forfeit any right to the remaining 27.5% of their Custody Claim.<br><br>Any Custody Settlement Participant that is not an Excluded Party and that has Withdrawal Preference Exposure[11] under $100,000 will receive a 100% recovery as a result of the Account Holder Avoidance Action Release provided under the Account Holder Avoidance Action Settlement, described in Article IV.B.3 of the Plan. |
| *Withhold Claims* | The treatment of Withhold Claims depends on how the Class of Withhold Claims votes on the Plan.<br><br>If the Class of Withhold Claim votes to accept the Plan, each holder of a Withhold Claim will receive 15% of their Withhold Claim through a distribution of in-kind Cryptocurrency, and the remaining 85% of their Withhold Claim will be treated as an General Earn Claim (each valued as of the Petition Date).<br><br>If the Class of Withhold Claims votes to reject the Plan, each holder of a Withhold Claim will have 100% of their Withhold Claim treated as an Earn Claim. |
| *Borrow Program Claims* | Holders of "Retail Borrower Deposit Claims" (previously referred to as "Borrow Claims") that (i) vote in favor of the Plan, (ii) elect to opt into the Retail Borrower Deposit Claim Settlement, (iii) are not Excluded Parties, and (iv) hold Retail Borrower Deposit Claims valued over $5,000 (not including any such claims on account of CEL Tokens, FTT Tokens, or LUNC Tokens), will have the opportunity to enter into a Retail Borrower Deposit Claim Settlement Agreement that will allow the Electing Retail Borrower to ultimately recover up to the entire amount of such Account Holder's Retail Borrower Deposit Claim over a six-year period.<br><br>All other holders of Retail Borrower Deposit Claims (either by election or default) will have such Retail Borrower Deposit Claims set off against their outstanding obligations to the Debtors and have any remaining Retail Borrower Deposit Claims treated as General Earn Claims. |

---

[11] "Withdrawal Preference Exposure" refers to exposure to so-called "clawbacks" and means (i) the aggregate value of all assets an Account Holder withdrew from the Debtors' platform in the 90 days prior to the Petition Date (i.e., on or after April 14, 2022), valued as of the time of such withdrawals less (ii) the aggregate value of any deposits such Account Holder made after such Account Holder's first withdrawal in such period, valued as of the time of such deposits.

9

13. As detailed above, Account Holders will have various elections and options depending on which class they are in. Those elections will take place as part of the voting on the Plan, which will not occur until after the Court approves the Disclosure Statement (which is not expected to occur prior to a hearing scheduled for May 17, 2023). Additional detail about the elections and the process will be included in the Disclosure Statement.

### C. The Proposed Retail Borrow Obligation Settlement

14. As announced at the hearing on March 23, 2023, the Debtors, the Committee, the Plan Sponsor, and the Borrow Ad Hoc Group have reached an agreement in principle on the terms of a revised treatment for retail borrowers under the Plan. That settlement is currently being documented. Most notably, it will include the revisions to Treatment A that provide additional flexibility and safeguards for retail borrowers who are electing the structured settlement. Specifically, the revised terms of the Retail Borrower Deposit Claims Settlement provide for, among other things:

- Electing Retail Borrowers to receive up to 100% of their Retail Borrower Deposit Claim after the conclusion of the six-year term of the proposed structured settlement;

- a prepayment schedule that allows Electing Retail Borrowers to prepay, for a fee, Retail Advance Obligations beginning in year three of the term of the structured settlement;

- revised interest-rate tiers based on a Retail Advance Obligation's "Obligation to Value" ratio;

- a Cryptocurrency Settlement Agreement that provides Electing Retail Borrowers who have BTC denominated Deposit Claims the ability, for a fee to swap the Deposit Claim Assets supporting such Retail Borrower's Settlement Obligation into BTC instead of ETH; and

- safeguards, including investment guidelines, monthly financial reporting, and restrictions on NewCo Advance Settlement Company's ability to incur funded debt or make dividend payments.

The parties are working to document the Retail Borrower Deposit Claims Settlement, and

the specifics will be included in the Disclosure Statement and in a revised Plan to be filed with the Disclosure Statement. The terms of the settlement remain subject to final documentation in all respects.

15. For the avoidance of doubt, the Debtors are not soliciting votes on the Plan, and will not solicit votes on the Plan unless and until the Court approves the Disclosure Statement and authorizes the Debtors to commence the voting and solicitation process on the Plan. The Plan will not be binding on any party unless and until the Court enters an order confirming the Plan and the conditions precedent to the Effective Date occur. All parties will have the right to object to the Disclosure Statement and the Plan and will receive separate notice of the relevant objection deadlines.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated:  March 31, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:             joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:             patrick.nash@kirkland.com<br>                       ross.kwasteniet@kirkland.com<br>                       chris.koenig@kirkland.com<br>                       dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |