**Hearing Date and Time:  April 18, 2023 at 10:00 a.m. (prevailing Eastern Time)**

GODFREY & KAHN, S.C.
1 East Main Street
Madison, Wisconsin 53701
Telephone: (608) 257-3911
Facsimile: (608) 257-0609

Katherine Stadler

*Attorneys for the Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | | |
|---|---|---|---|
| | x | | |
| **In re** | : | **Chapter 11** | |
| | : | | |
| **CELSIUS NETWORK, LLC, *et al.*,[1]** | : | **Case No. 22-10964 (MG)** | |
| | : | | |
| **Debtors.** | : | **(Jointly Administered)** | |
| | x | | |

**FEE EXAMINER'S SUMMARY REPORT ON FEE REVIEW PROCESS AND FIRST INTERIM FEE APPLICATIONS SCHEDULED FOR UNCONTESTED HEARING ON APRIL 18, 2023**

TO:    THE HONORABLE MARTIN GLENN
        UNITED STATES BANKRUPTCY JUDGE:

The Fee Examiner appointed in the above-captioned chapter 11 cases (the "Fee

Examiner") submits this summary report (the "Summary Report") pursuant to the *Amended*

*Order Appointing Independent Fee Examiner and Establishing Related Procedures for the*

*Review of Fee Applications of Retained Professionals* [Dkt. No.1746 ] (the "Amended Fee

Examiner Order"), and the *First Amended Order (I) Establishing Procedures for Interim*

*Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting*

---

[1]The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Related Relief* [Dkt. No. 1745] (the "<u>First Amended Interim Compensation Order</u>"),

recommending the Court's approval of the interim fees and expenses outlined on the attached

**<u>Exhibit A</u>**, as requested by the Retained Professionals[2] listed therein (the "<u>Uncontested</u>

<u>Applicants</u>") and adjusted with their consent.  The Fee Examiner further requests that the Court

defer consideration of the interim applications listed on the attached **<u>Exhibit B</u>,** either for the

Court's consideration at the July 2023, uncontested fee hearing, or at a contested fee hearing

separately scheduled for that purpose.

## PRELIMINARY STATEMENT

The Uncontested Applicants have reached agreement with the Fee Examiner, subject to

the Court's approval, to resolve their applications for fees and expenses incurred during the

"<u>First Interim Fee Period</u>" (July 13, 2022 - October 31, 2022).  These negotiated resolutions are

consistent with the principles and standards—discussed in detail below—that the Fee Examiner

has developed and applied to each interim fee application.  The negotiated adjustments satisfy

the Fee Examiner that the fees and expenses recommended for Court approval are both

reasonable and necessary to the administration of these cases pursuant to 11 U.S.C. §330 and

related authorities.  All negotiated resolutions have considered, addressed, and resolved to the

Fee Examiner's satisfaction, the issues raised in *Daniel A. Frishberg's Omnibus Objection to the*

*First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP,*

*Attorneys for the Debtors and Debtors in Possession, for the Interim Fee Period from July 13,*

*2022 Through and Including October 31, 2022 and Other Various Professionals Fee*

*Applications* [Dkt. No. 1823] (the "<u>Frishberg Fee Objection</u>"), which the Fee Examiner

recommends that the Court overrule.

---

[2] Capitalized terms not otherwise defined shall have the meanings set forth in the Fee Examiner and Interim Compensation Orders.

## BACKGROUND

1.      The Court appointed the Fee Examiner on October 20, 2022, to:

A.      review and assess all Applications filed by Retained Professionals, and the fees and reimbursement of expenses for which allowance is sought pursuant to the Applications for compliance with (1) Bankruptcy Code sections 329, 330 and 331, as applicable, (2) Rule 2016 of the Federal Rules of Bankruptcy Procedure, (3) the Interim Compensation Order (as amended herein), and (4) Local Bankruptcy Rule 2016-1 and the applicable guidelines for compensation;

B.       prepare reports for the Court to aid in the review and approval of interim and final fee Applications, which may include such matters as the efficiency and reasonableness of staffing and expenses and the appropriateness of periodic increases in hourly rates;

C.      require applicants for compensation to provide him such supplemental information as he may reasonably require in order to evaluate the reasonableness of any particular fee item;

D.      conduct such discovery as may be pertinent and necessary to the performance of his other duties and responsibilities after first securing approval of this Court; and

E.      object to the allowance of fees or expenses sought by any Retained Professional in a fee application on the same grounds as any party in interest in this case, including based on the reasonableness standard provided in Bankruptcy Code § 330.

2.      The Fee Examiner retained the law firm of Godfrey & Kahn, S.C. ("Godfrey & Kahn") to assist him in carrying out his duties. *See Order Authorizing the Employment and*

*Retention of Godfrey & Kahn, S.C., as Attorneys for the Fee Examiner, Effective as of October 13, 2022* [Dkt. No. 1568].

3.      On November 29, 2022, the Fee Examiner and counsel held introductory in-person meetings with professionals for the Debtors, the Official Committee of Unsecured Creditors, and the Chapter 11 Examiner, to discuss the background of these cases, significant case events occurring prior to the Fee Examiner's appointment, and any issues the professionals believed pertinent to the consideration of the reasonableness and necessity of professional fees. The Fee Examiner and counsel also asked questions of Retained Professionals about these cases and their respective roles in it.

4.      On November 30, 2022, the Fee Examiner distributed the memorandum attached to this report as **<u>Exhibit C</u>** (the "<u>Fee Protocol</u>") to all Retained Professionals, outlining the fee application review process and the standards the Fee Examiner intended to apply.

### THE FEE REVIEW PROCESS

5.      Most professionals filed applications for the First Interim Fee Period on or around December 15, 2022, and began submitting fee and expense data pursuant to the Fee Protocol. The Fee Examiner's counsel immediately began importing the data and communicating with Retained Professionals about any missing or improperly formatted data.

6.      Godfrey & Kahn assigned each fee application to a review team consisting of one supervising attorney and one fee review associate.  One team reviewed Applications from the Debtors' professionals, another for the UCC's professionals, and a third for the Chapter 11 Examiner's professionals.

4

7.    The fee review associates, under the supervision of a Godfrey & Kahn shareholder or special counsel, reviewed each professional's retention application, retention order, and the fee application itself.  In addition, the review teams:

A.    Reviewed each fee and expense entry in electronic format using database software developed for bankruptcy fee review;

B.    Assigned codes to each fee or expense entry not in apparent compliance with the Fee Protocol;

C.    Reviewed record materials, including pleadings and transcripts, to obtain background and context;

D.    Generated a comprehensive set of exhibits itemizing each potentially non-compliant fee or expense entry and calculating the dollar amounts of any deficiencies;

E.    Developed preliminary recommendations to the Fee Examiner on potential treatment of each fee or expense item of concern, typically including:

i.    Requesting supplemental detail, explanation, or documentation of fees and expenses; and/or

ii.    Calculating adjustments to offset the financial impact of the identified irregularity.

8.    Godfrey & Kahn attorneys then drafted Confidential Letter Reports (as defined at ¶ 7(a) of the Amended Fee Examiner Order) outlining the findings and explaining the substance of each exhibit.

9.    Godfrey & Kahn provided drafts of each Confidential Letter Report and supporting exhibit to the Fee Examiner, who reviewed them.  Members of each review team met with the Fee Examiner in person to discuss the draft letter reports and exhibits in detail, to

present alternatives for the resolution of identified issues, and to obtain detailed instruction from the Fee Examiner.

10.     After this meeting, in some instances, counsel re-analyzed issues or re-drafted Confidential Letter Reports or exhibits to reflect the Fee Examiner's comments and concerns.

11.     After obtaining the Fee Examiner's final approval, Godfrey & Kahn issued Confidential Letter Reports, with exhibits, to each Applicant on or around February 15, 2023, inviting the Applicants to respond to the issues identified.  With the consent of the Retained Professionals, copies of all letter reports and exhibits were provided to the U.S. Trustee.

12.     Counsel then communicated with each Applicant, reviewed supplemental explanation or materials, discussed areas of concern, and engaged in constructive dialogue to address problems.

13.     Counsel summarized each professional's response, conducted additional analysis where necessary, and presented all Retained Professional responses to the Fee Examiner with explanations, summaries, and recommendations for each Applicant.

14.     The Fee Examiner reviewed the Retained Professional responses and counsel's recommendations, sought additional information when necessary, and ultimately approved each of the resolutions outlined on the attached **Exhibit A**.

### GENERAL OBSERVATIONS AND COMMON ISSUES

15.     ***Pro Se Party Participation.***  Almost without exception, professionals remarked on the unprecedented involvement and participation of *pro se* creditors and interested parties as a factor amplifying the professional fee burden in these cases.  The Fee Examiner and counsel reviewed many of the *pro se* filings and the professionals' written responses.  Counsel also reviewed transcripts and orders reflecting the Court's observations and treatment of *pro se* filings

to understand their impact on professional fees.  In the First Interim Fee Period, the extraordinary attention from and participation of unrepresented creditors and other parties was a significant factor in exacerbating the complexity of the already novel and challenging issues facing this Court.  Professionals could not ignore *pro se* objections and motion practice, nor could they address such filings summarily and risk an incomplete record for the inevitable appellate litigation that has followed.  The Fee Examiner has asked professionals to create separate task codes for responding to *pro se* inquiries and filings, and will attempt to quantify the monetary impact of *pro se* participation in future reports.

16.    ***Retention Activities.***  Each Retained Professional had to identify connections to an extensive list of interested parties.  Many were subject to formal or informal objection, necessitating sometimes extensive negotiations and revisions to retention orders.  Such activities do not directly add value for creditors, but they are nonetheless necessary to establish disinterestedness, secure professional appointments, and advance the case.  In some instances, the Fee Examiner recommended—and secured—downward adjustments to retention application time.  In others, the Fee Examiner was satisfied that the scope of the list of interested parties and the contested nature of some professional appointments justified the additional expense.

17.    ***Time Detail Review and Fee Applications.***  As the Court noted in *In re Mesa Air Group, Inc.*, 449 B.R. 441 (Bankr. S.D.N.Y. 2011), "the review and editing of time records—as opposed to fee applications—is not compensable." *Id.* at 445, *citing In re CCT Commc'ns, Inc.*, 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010).  The *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines") ask applicants to answer the question: "Does the fee application include time or fees related to

reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees." *Id*. at ¶ C(5)(d). While *Mesa Air* did not endorse a cap on the amount charged for preparing fee applications, the Court noted that "the 3-5% range is a useful metric." The Fee Examiner's process tests each fee application against these standards. In some cases, exceedingly large or small fee requests may limit the utility of the 3-5 percent metric, so the Fee Examiner evaluates the task descriptions and the amount of time expended in comparison to similarly situated professionals to further gauge reasonableness. After applying all of these measures, the Fee Examiner has asked some professionals to adjust their compensation requests to ensure fairness and consistency as well as objective reasonableness.

18. ***Duplicative Efforts.*** One of the Fee Examiner's primary areas of focus has been the duplication of efforts between and among professionals. For example, when a law firm and a financial advisory firm worked in concert, the Fee Examiner carefully considered instances where financial advisors may have duplicated the efforts of attorneys and vice versa. Similarly, the Fee Examiner asked fee review teams to pay particular attention to whether counsel for the debtors, on the one hand, and counsel for the UCC or Examiner, on the other, may have unnecessarily performed the same work when their interests were aligned. One example is the Core Scientific automatic stay enforcement litigation, which consumed significant time and energy from both the Debtors' and the UCC's professionals during the First Interim Fee Period. In most instances, the Fee Examiner has concluded that professionals appropriately divided tasks among firms to avoid duplication wherever possible. Where concerns about duplication

remained, the Fee Examiner requested and obtained professional consent for voluntary adjustments to offset the financial impact of any such duplication.

19.    ***Multiple Attendees - Hearings.***    The Fee Examiner carefully evaluated professionals' attendance at hearings.  When multiple timekeepers from a single professional firm attended a hearing, counsel reviewed the associated transcripts to identify speaking and participating professionals.  When a timekeeper's role at a hearing was not apparent, the Fee Examiner questioned that timekeeper's attendance in the Confidential Letter Report and exhibits. In many instances, professionals identified compelling reasons for attendance not immediately apparent from the record.  For example, often professionals anticipated a line of questioning or inquiry at a hearing that did not materialize.  Nonetheless, the Fee Examiner generally agreed that these professionals needed to prepare for, attend, and be ready to participate in hearings if discrete issues arose.  In other instances, the Fee Examiner considered a topic too attenuated to justify a "just-in-case" timekeeper's attendance, instead asking professionals to waive compensation for a non-participating timekeeper.

20.    ***Multiple Attendees - Meetings and Calls.***    In the absence of transcripts, the Fee Examiner asked each professional to delineate the role and contribution of each questioned timekeeper attending a meeting or call.  At the outset of the case, many professionals appropriately deployed an all-hands approach given the tumult surrounding the filing.  The Fee Examiner has advised all professionals that, as the exigencies of the early days give way to more routine proceedings, he expects professionals to be more conservative in staffing meetings and calls.

21.    ***Unusual Expenses.***    With the possible exception of legal research software, the Fee Examiner considers most hardware and software expenses to be firm overhead—

inappropriate for reimbursement by the estates.  In this case, however, some professionals were required to obtain, process, analyze, and store enormous volumes of data solely to trace and document property of the estate.  The Fee Examiner considers out-of-pocket data storage expenses compensable here because they were needed for use only in these cases and were not procured for the benefit of a professional's clients more generally.

22.    ***Guideline Non-Compliance***.  Most applications presented at least a few instances where tasks or communications were not described with sufficient detail for a reviewer to easily discern their necessity, were not recorded in tenth-hour increments, or were improperly aggregated or "lumped."  The Fee Examiner either negotiated adjustments to offset these deficiencies or obtained supplemental information resolving guideline concerns.  The Fee Examiner advised professionals that deductions for guideline violations may increase in future fee periods if deficiencies persist.

## FRISHBERG FEE OBJECTION

23.    The Fee Examiner has reviewed and carefully considered the Frishberg Fee Objection, along with certain of Mr. Frishberg's other letters, motions, objections, and responses. Indeed, in addition to filing a formal objection, Mr. Frishberg has communicated directly with counsel to the Fee Examiner about his concerns with professional fees in this case.  Much of the Frishberg Fee Objection addresses venue—a procedural issue on which the Fee Examiner is not empowered to take a position.  Frishberg's specific fee objections include "billing 17.6 hours of work within a single day, expensing meals above the $20 limit, and general excessive billings that many Various Professionals took part in."[3]

---

[3] The Frishberg Objection also challenges several of the Fee Examiner's monthly fee statement expenses.  The Fee Examiner will respond to those assertions in his interim fee application at a later date.

24.     The Fee Examiner's counsel has reviewed each expense request to ensure compliance with the limitations stated in the Fee Protocol.  To the extent an expense did not comply, the Fee Examiner requested proper documentation and/or an adjustment to the request. In all instances, the recommendations contained in this report reflect those adjustments.

25.     Unfortunately, a 17.6-hour workday is not unheard of in bankruptcy practice, but the Fee Examiner's counsel nonetheless flagged all instances of work days in excess of 12 hours for additional scrutiny.  Counsel reviewed the related time entries with particular care to ensure that each task description is sufficient and that the amount of time expended is consistent with the nature and complexity of each task.  The Fee Examiner also identified timekeepers who appear to record long billing days frequently or consistently, considering the possibility that sustained periods of such billing could impair the timekeeper's overall efficacy and efficiency.

26.     The recommendations in this report include adjustments to billing reflecting inadequately described tasks, apparently excessive work on a project, or time inappropriately billed in blocks rather than by task.  None of the recommendations, however, include a disallowance solely because a timekeeper worked 12 or more hours on a billing day.  All such instances were either justified in the fee application, in the supporting time records, in the pleadings of record, or through supplemental documentation and explanation provided to the Fee Examiner.

27.     The Fee Examiner shares the objector's concern about "general excessive billings," and has deployed fee review processes to identify, quantify, and adjust for such practices.  The Fee Examiner will not, in this report or any other, recommend Court approval of any fee or expense he deems generally excessive.  All fees and expenses recommended for Court approval on an uncontested basis have been adjusted with the professionals' consent, where

necessary, to eliminate any observed and persistently unexplained excess.  The Fee Examiner further recommends that applications *not* yet voluntarily adjusted to his satisfaction be deferred for consideration at a subsequent fee hearing.  The Fee Examiner will object to any deferred fee application that remains of concern after additional discussions between the Fee Examiner and applicant, and the objection will proceed separately as a contested matter.

## UNCONTESTED APPLICATIONS RECOMMENDED FOR COURT APPROVAL WITH ADJUSTMENTS

### DEBTOR PROFESSIONALS

### *Kirkland & Ellis LLP*

28.     On September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022* [Dkt. No. 845] (the "K&E Retention Order").

29.     On December 16, 2022, K&E filed the *First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Interim Fee Period from July 13, 2022 Through and Including October 31, 2022* [Dkt. No. 1721] (the "K&E First Fee Application"), seeking $19,844,014.00 in fees and $258,925.90 in expenses.

30.     During the first interim fee period, K&E advised the Debtors on a variety of complex matters, including stabilizing the Debtors' business operations while in Chapter 11 and obtaining relief to provide the Debtors' operational liquidity.  K&E also advised the debtors on numerous contested matters and adversary proceedings, conducted internal investigations, prepared and filed schedules of assets and liabilities, and assisted with the development of a business plan for a standalone reorganization.

31.     The Fee Examiner's Confidential Letter Report identified a number of areas of concern, including retention and fee application time, possible overstaffing, apparently excessive meeting and hearing attendance, and potential duplication of another professional's work.  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner now recommends Court approval of the K&E First Fee Application, as adjusted and outlined on **Exhibit A**.

***Akin Gump Strauss Hauer & Feld LLP***

32.     On September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession Effective as of the Petition Date* [Dkt. No. 843] (the "Akin Gump Retention Order").

33.     On December 15, 2022, Akin Gump filed the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period July 13, 2022 Through and Including October 31, 2022* [Dkt. No. 1707] (the "Akin Gump First Fee Application"), requesting $2,322,174.60 in fees and $107,347.68 in expenses.

34.     As the Debtors' special litigation counsel, Akin Gump represents the Debtors on specified litigation matters, primarily in disputes with Jason Stone, KeyFi, Inc., Prime Trust LLC, Rhodium Enterprises, Inc., and Voyager Digital Ltd.  *See* Akin Gump Retention Order.

35.    During the first interim fee period, Akin Gump worked on its own retention and disclosures and continued representing the Debtors in several significant and ongoing litigation matters.

36.    The Confidential Letter Report identified potential areas of overstaffing, including the participation of multiple timekeepers performing similar tasks on the same litigation matters. The Fee Examiner also questioned Akin Gump's allocation of work, questioning the need for experienced partners at relatively high billing rates to perform seemingly basic litigation tasks. The Fee Examiner also questioned whether some attorney tasks may more appropriately have been delegated to paraprofessionals.  Finally, the Fee Examiner identified several non-compliant expenses—requesting more detail on apparently excessive legal research charges.

37.    In response to the Confidential Letter Report, Akin Gump explained and justified some of its staffing decisions and agreed to adjustments for others.  Akin Gump also agreed to adjust its expense requests to conform with the Fee Protocol.  With these adjustments, the Fee Examiner now recommends Court approval of the Akin Gump First Fee Application as adjusted and outlined on the attached **Exhibit A**.

***Alvarez & Marsal North America, LLC***

38.    On September 16, 2022, the Court entered the *Order Authorizing Debtors to Employ and Retain Alvarez & Marsal North America, LLC as Financial Advisor to the Debtors and Debtors in Possession Effective as of July 13, 2022* [Dkt. No. 842] (the "A&M Retention Order").

39.    On December 15, 2022, A&M filed the *First Application of Alvarez & Marsal North America, LLC as Financial Advisors for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary*

*Expenses Incurred from July 14, 2022 Through and Including October 31, 2022* [Dkt. No. 1710] (the "A&M First Fee Application"), requesting $6,511,737.00 in fees and $10,180.91 in expenses.

40.    During the first interim fee period, A&M assisted the Debtors with various asset sale discussions, including developing analysis and forecasts to assist with potential asset sales. A&M also advised and assisted the Debtors with the planning, development, evaluation and implementation of strategic business and operating plans, performed cash flow forecasts and analysis, and advised the Debtors on the operation of their business under Chapter 11.

41.    The Fee Examiner's Confidential Letter Report identified apparently inefficient staffing, potentially excessive retention and fee application time, minor guideline issues, and a few non-compliant expense requests.  A&M responded with sufficient additional detail to address the Fee Examiner's concerns and, in several instances, agreed to the downward adjustment of some of its requested fees and expenses.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends the approval of the A&M First Fee Application as adjusted and outlined on **Exhibit A**.

***Centerview Partners LLC***

42.    On September 16, 2022, the Court entered the *Order (I) Authorizing the Employment and Retention of Centerview Partners LLC as Investment Banker for the Debtors Effective as of July 13, 2022, (II) Approving the Terms of the Centerview Agreement, (III) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-2, and (IV) Granting Related Relief* [Dkt. No. 846] (the "Centerview Retention Order").

43.    On December 15, 2022, Centerview filed the *First Interim Fee Application of Centerview Partners LLC, as Investment Banker to the Debtors for Allowance of Compensation*

*and Reimbursement of Expenses for the Period July 13, 2022 Through October 31, 2022* [Dkt.
No. 1709] (the "Centerview First Fee Application"), seeking $650,000.00 in flat monthly fees
and $3,167.98 in expenses.

44.     The Debtors retained Centerview as its investment banker pursuant to 11 U.S.C.
§328(a).  Generally, courts will not disturb such pre-arranged fees unless the terms and
conditions of the retention "prove to have been improvident in light of developments not capable
of being anticipated at the time of the fixing of such terms and conditions." *Id.*

45.     Notwithstanding section 328(a), the Centerview Retention Order exempts
Centerview from many bankruptcy billing requirements, but empowers the U.S. Trustee (and, by
extension, the Court and the Fee Examiner) to evaluate Centerview's fee requests for
reasonableness pursuant to 11 U.S.C. §330.  "'[R]easonableness' for this purpose shall be
evaluated by comparing (among other things) the fees payable in these Chapter 11 cases to fees
paid to comparable investment banking firms with similar experience and reputation offering
comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly
or length-of-case based criteria."  Centerview Retention Order at ¶ 6.

46.     During the first interim fee period, Centerview prepared and led comprehensive
sale processes for certain of the Debtors' businesses and assets.  Centerview also led a process to
raise DIP financing for the Debtors' Bitcoin mining business.

47.     The Fee Examiner's Confidential letter report identified a number of expense
guideline issues necessitating adjustment or disallowance.  Centerview either provided
supplemental detail supporting the expenses or agreed to their disallowance.

48.     Consistent with the modified section 330 reasonableness standard outlined in the
Centerview Retention Order, the Fee Examiner reviewed Centerview's summary task

descriptions and time records, merely confirming that they conform with the timekeeping
practices of similarly situated flat fee professionals.

49.     The Fee Examiner now recommends the Court's approval of the Centerview
monthly flat fees incurred during the First Interim Fee Period and its adjusted expenses, as
outlined on **Exhibit A**.

**UCC PROFESSIONALS**

*White & Case, LLP*

50.     On September 15, 2022, the Court entered the *Order Authorizing the Employment
and Retention of White & Case LLP as Counsel Effective as of July 29, 2022* (the "White & Case
Retention Order") [Dkt. No. 829].

51.     On December 15, 2022, White & Case filed the *First Interim Fee Application of
White & Case LLP for Compensation for Services Rendered and Reimbursement of Expenses as
Counsel to the Official Committee of Unsecured Creditors for the Period from July 29, 2022
Through October 31, 2022* (the "White & Case First Fee Application") [Dkt. No. 1715],
requesting $10,219,205.00 in fees and $12,457.18 in expenses.

52.     During the first interim period, White & Case worked on its own retention and
disclosures as well as those of M3 Advisory Partners, Elementus Inc., and Perella Weinberg
Partners; analyzed the various first and second-day motions; engaged in discovery and due
diligence related to potential causes of action against insiders of Debtors and other potential
avoidance actions; communicated with general unsecured creditors; and advised the UCC on
various matters in these cases.  White & Case further advised creditors on the Examiner
appointment motion, the resignation of Alex Mashinski and Daniel Leon, and creditors' potential
recovery in these cases. White & Case also assisted the Debtors' counsel in litigation against

Core Scientific, pursued the return of digital assets to account holders, and objected to the formation of an official equity committee.

53.    The Fee Examiner's Confidential Letter Report identified some White & Case professionals with apparently minimal involvement during the First Interim Fee Period or whose time entries did not comply with the guidelines. The Fee Examiner also identified minor non-compensable expenses. White & Case adequately explained the roles of some questioned timekeepers and agreed to the disallowance of fees for others.  White & Case accepted the Fee Examiner's proposed adjustments for guideline violations and agreed to the disallowance of all questioned expenses. With the negotiated adjustments outlined on **Exhibit A**, the Fee Examiner recommends Court approval of the White & Case First Fee Application.

*M3 Advisory Partners, LP*

54.    On October 18, 2022, the Court entered the *Order Authorizing the Employment and Retention of M3 Advisory Partners, LP as Financial Advisor Effective as of August 1, 2022* (the "M3 Retention Order") [Dkt. No. 1098].

55.    M3 filed the *First Interim Fee Application of M3 Advisory Partners, LP for Compensation for Services Rendered and Reimbursement of Expenses as Financial Advisor to the Official Committee of Unsecured Creditors for the Period of August 1, 2022, through October 31, 2022* (the "M3 First Fee Application") [Dkt. No. 1716], requesting $4,026,092.00 in fees and $5,994.95 in expenses.

56.    During the First Interim Fee Period, M3 analyzed the Debtors' schedules and statements of financial affairs, cash flow projections, budgets, assets and liabilities, capital structure, and the terms of potential sale and restructuring transactions.  In addition, M3 attended the meetings of creditors and the UCC, identified potential avoidance claims and claims against

the Debtors insiders, and assisted White & Case on litigation related to Core Scientific's alleged breach of the automatic stay.

57.     The Fee Examiner's Confidential Letter Report questioned the time entries of several M3 timekeepers that attended court hearings but did not testify, and isolated time entries that did not comply with the guidelines or were insufficiently detailed. The Fee Examiner also identified minor instances of non-compensable working meals and overhead telecommunications costs.  M3 either provided explanation for the participation of apparently duplicative timekeepers or agreed to the disallowance of their fees.  M3 accepted the disallowance of non-compensable expenses.  With these negotiated adjustments, the Fee Examiner recommends the M3 First Fee Application for approval as outlined on **Exhibit A**.

### *Perella Weinberg Partners LP*

58.     On October 18, 2022, the Court entered the *Order (i) Authorizing the Employment and Retention of Perella Weinberg Partners LP as Investment Banker to the Official Committee of Unsecured Creditors Effective as of August 2, 2022, (ii) Approving the Terms of the Perella Engagement Letter, (iii) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016, and (iv) Granting Related Relief* (the "PWP Retention Order") [Dkt. No. 1096].

59.     The *First Interim Fee Application of Perella Weinberg Partners LP for Compensation for Services Rendered and Reimbursement of Expenses as Investment Banker to the Official Committee of Unsecured Creditors for the Period of August 2, 2022 through October 31, 2022* (the "PWP First Fee Application") [Dkt. No. 1720], was filed on December 15, 2022, requesting $296,774.19 in flat monthly fees and $70,542.52 in expenses.

60.     The UCC retained PWP as investment banker pursuant to 11 U.S.C. §328(a). Generally, courts will not disturb such pre-arranged fees unless the terms and conditions of the

retention "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.*

61.    Notwithstanding section 328(a), the PWP Retention Order exempts PWP from many traditional bankruptcy billing requirements, but empowers the U.S. Trustee (and, by extension, the Court, and the Fee Examiner) to evaluate PWP's fee requests for reasonableness pursuant to 11 U.S.C. §330.  "'[R]easonableness' for this purpose shall be evaluated by comparing (among other things) the fees payable in these Chapter 11 cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria."  PWP Retention Order at ¶ 8.

62.    During the first interim period, PWP familiarized itself with the Debtors' operations and business plans, met with representatives of the Debtors, and analyzed the Debtors' finances and operations. In addition, PWP spent significant time communicating with and advising the UCC and its other professionals, attending hearings and committee meetings, and identifying potential sources of financing.  PWP also analyzed proposals for a reorganization or a sale of the Debtors' assets and communicated with third parties regarding the Debtors' mining operations and assets.

63.    The Fee Examiner's Confidential Letter Report identified a number of expense guideline issues necessitating adjustment or disallowance, the most noteworthy being fees incurred by Katten Muchin Rosenman LLP to prepare PWP's retention application.  Unlike PWP, Katten was not exempted from bankruptcy billing requirements, so the Fee Examiner evaluated Katten's fees using the same guidelines and standards applied to other retained professionals.

64.    Through Katten, PWP either provided supplemental documentation of questioned expenses or agreed to their disallowance.  Katten also agreed to an appropriate reduction of its own fees.

65.    Consistent with the modified section 330 reasonableness standard outlined in the PWP Retention Order, the Fee Examiner reviewed PWP's summary task descriptions and time records, confirming that they conform with the timekeeping practices of similarly situated flat fee professionals.

66.    The Fee Examiner recommends the Court's approval of the PWP monthly flat fees incurred during the First Interim Fee Period and the adjusted expenses outlined on **Exhibit A**.

***Elementus, Inc.***

67.    On October 18, 2022, the Court entered the *Order Authorizing the Employment and Retention of Elementus Inc. as Blockchain Forensics Advisor Effective as of August 1, 2022* (the "Elementus Retention Order") [Dkt. No. 1097].

68.    On December 15, 2022, Elementus filed the *First Interim Fee Application of Elementus Inc. for Compensation for Services Rendered and Reimbursement of Expenses as Blockchain Forensics Advisor to the Official Committee of Unsecured Creditors of Celsius Network LLC, et. al., for the Period of August 1, 2022 through October 31, 2022* (the "Elementus First Fee Application") [Dkt. No. 1718], requesting $876,470.00 in fees and $263,370.42 in expenses.

69.    As blockchain forensics advisor to the UCC, Elementus analyzed the Debtors' on-chain flow of funds and traced intercompany transfers and transfers to insiders and other parties. Elementus also assessed the security of the Debtors' crypto assets, attended committee meetings

and conferences, and advised committee members and other professionals on technical aspects of crypto currency, and Elementus' work, and findings.

70.    The Fee Examiner's Confidential Letter report to Elementus identified a few billing errors and incomplete task descriptions, but generally focused on seeking explanation of the role of a blockchain forensics advisor—a new category of retained professional in Chapter 11.

71.    Elementus principals spent time with the Fee Examiner's counsel, explaining the firm's background, its work, and elucidating some of the technical language in the Elementus time records.  Through counsel, Elementus also submitted a written response to the Fee Examiner, specifically addressing each fee or expense issue the Fee Examiner identified.

72.    Elementus ultimately agreed to the Fee Examiner's requested disallowances or adequately addressed the Fee Examiner's concerns.  Further, Elementus has agreed to the provisional disallowance of certain in-house, proprietary software licensing expenses, agreeing that the Fee Examiner will reconsider their compensability at the conclusion of the case.  With the negotiated adjustments, the Fee Examiner recommends Court approval of the Elementus fee application as adjusted and outlined on **Exhibit A**.

EXAMINER PROFESSIONALS

*Huron Consulting Services LLC*

73.    On November 1, 2022, the Court entered the *Order Authorizing Employment of Huron Consulting Services LLC as Financial Advisor for the Examiner Effective as of October 10, 2022* [Dkt. No. 1262] (the "Huron Retention Order").

74.    On December 15, 2022, Huron Consulting Services LLC ("Huron") filed the *First Interim Fee Application of Huron Consulting Services LLC as Financial Advisor to the*

22

*Examiner for the Period from October 10, 2022, through and including October 31, 2022* [Dkt. No. 1719] (the "Huron First Fee Application"), requesting $518,063.00 in fees and no expenses.

75.     During the brief First Interim Fee Period, as the Chapter 11 Examiner's financial consultant, Huron analyzed financial and valuation data relating to the CEL tokens, the movements of those CEL tokens between the Earn and Custody accounts, coin balances, and mining analyses.  Huron also participated in four witness interviews and analyzed financial issues presented in the Examiner's reports.

76.     In the Confidential Letter Report, the Fee Examiner identified isolated non-compensable billing activities subject to adjustment, and time entries that did not comply with the Fee Examiner guidelines.  Huron either provided adequate explanation for all matters questioned, agreed to the Fee Examiner's proposed disallowances, or counter-proposed acceptable reductions.

77.     The Fee Examiner now recommends the Huron First Fee Application for Court approval, as adjusted and outlined on **Exhibit A**.

**FEE APPLICATIONS RECOMMENDED FOR DEFERRAL**

***Ernst & Young LLP***

78.     On December 20, 2022, the Court entered the *Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider, Effective As of July 13, 2022, and (II) Granting Related Relief* [Dkt. No. 1766] ("The E&Y Retention Order").

79.     On March 2, 2023, E&Y filed the *First Interim Fee Application of Ernst & Young LLP for Compensation for Services Rendered and Reimbursement of Expenses as Tax Compliance and Tax Advisory Services Provider for the Time Period July 13, 2022 Through*

*October 31, 2022* [Dkt. No. 2170] (the "E&Y First Fee Application"), requesting $778,680.00 in

fees and no expenses.  E&Y submitted its electronic fee and expense data pursuant to the Fee

Protocol on March 8, 2022.

80.    In light of E&Y's delayed retention and its filing the E&Y First Fee Application

more than 75 days after the December 15, 2022 deadline for First Interim Fee Period applications

set forth in the Amended Fee Examiner Order, the Fee Examiner has not yet completed his

review.

81.    The Fee Examiner asks the Court to defer consideration of the E&Y First Fee

Application to the July 2022, uncontested fee hearing.

### *Latham & Watkins LLP*

82.    On September 16, 2022, the Court entered the *Order Authorizing the Retention*

*and Employment of Latham & Watkins LLP as Special Counsel to the Debtors Effective as of the*

*Petition Date* [Dkt. No. 838] (the "L&W Retention Order").

83.    On December 15, 2022, L&W filed the *First Interim Application of Latham &*

*Watkins LLP for Compensation for Services and Reimbursement of Expenses Incurred as Special*

*Counsel to the Debtors for the Period from July 13, 2022 Through October 31, 2022* [Dkt. No.

1712] (the "L&W First Fee Application"), requesting $5,097,947.00 in fees and $137,073.92 in

expenses.

84.    L&W serves as special counsel to the Debtors in various federal and state

regulatory proceedings.  *See* L&W Retention Order.  During the first interim fee period, L&W

advised the Debtors in relation to unspecified regulatory matters and conducted extensive

document review and production in response to inquiries by unidentified regulators.

85.    The Fee Examiner's Confidential Letter Report to L&W noted the firm's failure to comply with the Project Billing Format required by paragraph (A)(4) of the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, General Order M-447.  Though L&W states that it worked on more than 20 separate U.S. regulatory and criminal investigations, its time records include only *two* project categories: "US Investigations Work" and "Retention and Fee Applications."  Many L&W time entries describe tasks such as "prepare work product relating to regulatory investigations," "analyze regulator communications and draft work product related to same," or "revise work product relating to document production," with no other identifying details that could provide context for a reasonableness analysis.

86.    In response, L&W stated that it could not record time on a project basis or provide additional detail on the nature of its "work product" due to grand jury or other secrecy requirements. The Fee Examiner directed L&W to paragraph 6(b) of the Amended Fee Examiner Order, which ensures professionals that they may share confidential information with the Fee Examiner without waiving privilege or confidentiality.  The Fee Examiner also invited L&W to seek a protective order from this Court to address its secrecy concerns.  Nonetheless, L&W has not agreed to provide the Fee Examiner with supplemental information to facilitate a reasonableness review.

87.    The Fee Examiner recommends that the Court defer consideration of the L&W First Fee Application to provide L&W the opportunity to remedy the deficiencies in its application materials in an appropriately confidential manner.

*Jenner & Block LLP*

88.    On September 14, 2022, the Court entered the *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. No. 820] and, on September 29, 2022, the Court entered the *Order Approving the Appointment of Chapter 11 Examiner* [Dkt. No. 923] (collectively the "Examiner Appointment Orders").

89.    On November 1, 2022, the Court entered the *Order Authorizing Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. No. 1259] (the "Jenner Retention Order").

90.    On December 15, 2022, Jenner filed the *First Interim Fee Application of Shoba Pillay, Examiner and Jenner & Block LLP for Professional Services Rendered and Reimbursement of Expenses Incurred as Attorneys for Examiner for the Period from September 29, 2022 through October 31 ,2022* [Dkt. No. 1717] (the "Jenner First Fee Application"), requesting $1,863,035.50 in fees and $1,135.09 in expenses for the first 33 days of the Examiner's four-month engagement.

91.    The Court appointed the Examiner to perform the duties outlined in §§1106(a)(3) and 1106(a)(4) of the Bankruptcy Code and enumerated in the Examiner Appointment Orders.

92.    The Court expanded the scope of the Examiner's investigation pursuant to the November 1, 2022 *Order Approving Examiner's Motion to Confirm Examination Scope or Alternatively for Expansion of the Scope of the Examination* [Dkt. No. 1260] and the November 14, 2022 *Stipulation and Agreed Order Modifying Scope of Examiner Order* [Dkt. No. 1343].

93.    During the brief first interim fee period, Jenner established teams to carry out the Examiner's instructions, coordinated document review, prepared for and interviewed four witnesses, and assisted the Examiner in preparing her preliminary report.

94.    The Examiner filed her interim report [Dkt. No. 1411] on November 19, 2022 and her final report [Dkt. No. 1956] on January 31, 2021—both *after* the conclusion of the First Interim Fee Period.  The Court discharged the Examiner on April 4, 2023, pursuant to the *Order Discharging Examiner* [Dkt. No. 2364].  In light of the limited duration of the Examiner's engagement and the fact that the engagement is now substantially complete, the parties have agreed to defer reporting on the Jenner First Fee Application until Jenner has filed its second (and last) interim application.  This process will allow the Fee Examiner to perform a holistic review of the fees and expenses of the Examiner engagement, thus avoiding tentative or provisional recommendations based on a 33-day fee period viewed in isolation.

## NOTICE

95.    Pursuant to ¶7(b) of the Amended Fee Examiner Order, the filing of this report on the Court's Electronic Case Filing System shall be deemed suitable notice to all interested parties of the Fee Examiner's findings and conclusions.  A copy of this report is available on the website of the Debtors' notice and claims agent at https://cases.stretto.com/celsius. The Fee Examiner submits that, in light of the nature of this report, no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Fee Examiner respectfully requests the entry of an order, substantially in the form annexed hereto as **Exhibit D**, granting the relief requested and such other and further relief as the Court may deem just and proper.

Dated:  April 7, 2023.

**GODFREY & KAHN, S.C.**
*Counsel for Fee Examiner*

By  */s/ Katherine Stadler*
Katherine Stadler (NYSB #4938064)
One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 297-3911
E-mail: kstadler@gklaw.com

29013952.6

# EXHIBIT A

Recommended

**First Interim Fee Period Applications Recommended:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expenses Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| 1 | **Akin Gump Strauss Hauer & Feld LLP** [Dkt. No. 1707]<br>*Special Litigation Counsel to the Debtors* | 7/13/2022-10/31/2022 | $ 2,322,174.60 | $ 58,326.86 | $ 107,347.68 | $ 33,386.46 | $ 2,263,847.74 | $ 73,961.22 |
| 2 | **Alvarez & Marsal North America, LLC** [Dkt. No. 1710]<br>*Financial Advisors for the Debtors* | 7/14/2022-10/13/2022 | $ 6,511,737.00 | $ 59,065.50 | $ 10,180.91 | $ 3,138.59 | $ 6,452,671.50 | $ 7,042.32 |
| 3 | **Centerview Partners LLC** [Dkt. No. 1709]<br>*Investment Banker to the Debtors* | 7/13/2022-10/31/2022 | $ 650,000.00 | $ - | $ 3,167.98 | $ 485.36 | $ 650,000.00 | $ 2,682.62 |
| 4 | **Elementus Inc.** [Dkt. No. 1718]<br>*Blockchain Forensics Advisor to the Official Committee of Unsecured Creditors* | 8/1/2022-10/31/2022 | $ 876,470.00 | $ 240.00 | $ 263,370.42 | $ 84,922.50 **FN1** | $ 876,230.00 | $ 178,447.92 |
| 5 | **Huron Consulting Services LLC** [Dkt. No. 1719]<br>*Financial Advisor to the Chapter 11 Examiner* | 10/10/2022-10/31/2022 | $ 518,063.00 | $ 16,552.94 | $ - | $ - | $ 501,510.06 | $ - |
| 6 | **Kirkland & Ellis LLP and Kirkland & Ellis International LLP** [Dkt. No. 1721]<br>*Attorneys for the Debtors* | 7/13/2022-10/31/2022 | $ 19,844,014.00 | $ 373,213.69 | $ 258,925.90 | $ 22,131.37 | $ 19,470,800.31 | $ 236,794.53 |
| 7 | **M3 Advisory Partners, LP** [Dkt. No. 1716]<br>*Financial Advisor to the Official Committee of Unsecured Creditors* | 8/1/2022-10/31/2022 | $ 4,026,092.00 | $ 9,883.40 | $ 5,994.95 | $ 118.52 | $ 4,016,208.60 | $ 5,876.43 |
| 8 | **Perella Weinberg Partners LP** [Dkt. No. 1720]<br>*Investment Banker to the Official Committee of Unsecured Creditors* | 8/2/2022-10/31/2022 | $ 296,774.19 | $ - | $ 70,542.52 | $ 5,418.31 | $ 296,774.19 | $ 65,124.21 |
| 9 | **White & Case LLP** [Dkt. No. 1715]<br>*Counsel to the Official Committee of Unsecured Creditors* | 7/29/2022-10/31/2022 | $ 10,219,205.00 | $ 252,398.45 **FN2** | $ 12,457.18 | $ 118.16 | $ 9,966,806.55 | $ 12,339.02 |

**FN1** - This adjustment includes $75,000 in licensing fees for the use of in-house proprietary software.  Elementus and the Fee Examiner have agreed that the Fee Examiner will reconsider the compensability of these expenses at the conclusion of these proceedings.

**FN2** - This recommended fee adjustment includes a credit of $32,104.80 reflected in White & Case's First Monthly Statement [Dkt. No. 1224] but inadvertently excluded from White & Case's First Interim Fee Application [Dkt. No. 1715].

# EXHIBIT B

Deferred

In re: Celsius Network LLC, et al.
NYSB Case No. 22-10964 (MG)

Exhibit B

**First Interim Fee Period Applications Deferred:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expenses Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| 1 | **Ernst & Young LLP** [Dkt. No. 2170] *Tax Compliance and Tax Advisory Services Provider for Debtors* | 7/13/2022 - 10/31/2022 | $  778,680.00 | | $        - | | | |
| 2 | **Latham & Watkins LLP** [Dkt. No. 1712] *Special Counsel to the Debtors* | 7/13/2022-10/31/2022 | $  5,097,947.00 | | $  137,073.92 | | | |
| 3 | **Pillay, Shoba and Jenner & Block LLP** [Dkt. No. 1717] *Chapter 11 Examiner and Counsel* | 9/29/2022-10/31/2022 | $  1,863,035.50 | | $    1,135.09 | | | |

# EXHIBIT C

Memo to Retained Professionals

Exhibit C



ONE EAST MAIN STREET, SUITE 500 • POST OFFICE BOX 2719
MADISON, WISCONSIN 53701-2719

TEL • 608.257.3911   FAX • 608.257.0609

WWW • GKLAW.COM

# MEMORANDUM

| | |
|---|---|
| **TO:** | Celsius Network, LLC Chapter 11 Retained Professionals |
| **FROM:** | Christopher Sontchi, Fee Examiner |
| **DATE:** | November 30, 2022 |
| **SUBJECT:** | Fee Review—Timeline and Process |

On August 17, 2022, the Court entered the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Dkt. No. 521] (the "Interim Compensation Order"). On October 20, 2022, the Court entered the *Order Appointing Independent Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals* [Dkt. No. 1151] (the "Fee Examiner Order"). On November 8, 2022, the Fee Examiner filed the *Application of the Fee Examiner for Entry of an Order Authorizing the Retention and Employment of Godfrey & Kahn, S.C., as Attorneys for the Fee Examiner, Effective as of October 13, 2022* [Dkt. No. 1302] (the "Godfrey & Kahn Retention Application"). On November 23, the Fee Examiner filed a *Notice of Presentment of Proposed Amended Interim Compensation and Fee Examiner Orders*, [Dkt. No. 1445] (the "Proposed Amended Interim Compensation and Fee Examiner Orders"), anticipating the Court will enter the Proposed Amended Interim Compensation and Fee Examiner Orders at or before the December 5, 2022 omnibus hearing. Please review both revised orders prior to submitting your fee applications.

As you prepare your first interim fee submissions, this introductory memorandum will supplement the court orders and provide additional guidance on the fee review process. This memorandum is based upon the Fee Examiner's experience in Chapter 11 cases generally, on the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases (the "U.S. Trustee Guidelines"),[1] and on a preliminary review of the limited number of monthly fee statements filed to date.

Retained Professionals[2] may receive memoranda like this one, periodically, providing updates on the review process and addressing common matters, questions, and concerns that

---

[1] Though the U.S. Trustee Guidelines apply on their face only to attorneys, the Fee Examiner will require all Retained Professionals to comply with the guidelines, with limited exceptions outlined herein.

[2] Capitalized terms used in this memorandum shall have the meanings set forth in the Interim Compensation and Fee Examiner Orders, as subsequently amended.

arise.  This process is collaborative and, to that end, we are always available for individual discussion.  Please do not hesitate to contact us at any time to discuss fee applications or provide feedback on the fee review process.

This memorandum provides basic information about the initial timing of the fee examination process and instructions for submitting fee applications for review, including the substantive standards that the Fee Examiner will apply.  The goal is a constructive and collaborative process that aids the Court in reviewing and approving professional fee applications efficiently and promptly.  As of today, no professional has submitted an interim fee application, though we have received Monthly Fee Statements and data from some firms.

### *Schedule*

Pursuant to the contemplated amendment to the Interim Compensation and Fee Examiner Orders, the Fee Examiner's proposed schedule is outlined below:

| INTERIM FEE PERIOD | FIRST | SECOND | THIRD | FOURTH |
|---|---|---|---|---|
| DATES | July 13, 2022[3] - October 31, 2022 | November 1, 2022-February 28, 2023 | March 1, 2023-June 30, 2023 | July 1, 2023-October 31, 2023 |
| APPLICATION DEADLINE | December 15, 2022 | April 14, 2023 | August 14, 2023 | December 18, 2023 |
| CONFIDENTIAL LETTER REPORT | February 15, 2023 | May 29, 2023 | September 28, 2023 | January 6, 2024 |
| SUMMARY REPORT FOR UNCONTESTED APPLICATIONS | Ten days prior to hearing | Ten days prior to hearing | Ten days prior to hearing | Ten days prior to hearing |
| HEARING DATE FOR UNCONTESTED APPLICATIONS | April, 2023, omnibus hearing | July, 2023, omnibus hearing | November, 2023, omnibus hearing | March, 2024, omnibus hearing |

### *Budgets & Staffing Plans*

Retained Professionals, including non-attorney advisors, should comply with the U.S. Trustee Guidelines' requirement for budgets and staffing plans, using the formats of Exhibits C-1 and C-2 to the U.S. Trustee Guidelines.

### *Fee Review Criteria*

The Fee Examiner Order provides, among other things, that the Fee Examiner shall determine whether requested fees and expenses comply with:

---

[3] Or the effective date of the professional's retention.

1.    11 U.S.C. §§ 329, 330 and 331, as applicable;
2.    Rule 2016 of the Federal Rules of Bankruptcy Procedure
3.    The Interim Compensation Order, as amended, and
4.    Local Bankruptcy Rule 2016-1 and the applicable guidelines for compensation, including the U.S. Trustee Guidelines.

### *Initial Points*

The guidelines that follow are just that, guidelines and not rigid rules. On the face of the guidelines or as applied in the confidential letter reports that you will receive, the process invites dialogue. The Fee Examiner is well aware that a significant amount of professionals' work occurred prior to the date of this memorandum. While these parameters are generally consistent with the requirements of the Bankruptcy Code and the U.S. Trustee Guidelines, and accordingly considered standard bankruptcy billing practice, in some instances strict compliance may not be possible. Nevertheless, please try to conform your fee and expense requests to the guidelines below, keeping in mind that significant deviations from the requested formats may result in a delay in processing the application.

A number of firms have submitted Monthly Fee Statements pursuant to the Interim Compensation Order. With some exceptions, it will not be our practice to object to monthly statements, in whole or in part. The Fee Examiner may formally or informally object to unusual fees or expenses requested in a Monthly Fee Statement, such as significant transactional or success fees or unusual expenses.

### *Rate Increases*

The Fee Examiner will monitor compliance with the requirement in Retained Professionals' retention orders that, prior to any increases in a Retained Professional's rates for any individual timekeeper, the Retained Professional must file a supplemental declaration with the Court and provide ten business days' notice to the Debtors, the U.S. Trustee, the Official Committee of Unsecured Creditors, and any other official committee appointed in this case. The supplemental affidavit must explain the basis for the requested rate increases in accordance with 11 U.S.C. §330(a)(3)(F) and state whether the Retained Professional's client has consented to the rate increase. The U.S. Trustee and Fee Examiner retain all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in 11 U.S.C. § 330.

## GUIDELINES

### *Contents of Interim Fee Applications*

Based upon the criteria outlined in the Fee Examiner Order and on the Fee Examiner's experience, each interim fee application should disclose:

1.    The authority under which the Retained Professional requests the fees and expenses;

2.      A summary of the terms and conditions of the Retained Professional's employment and compensation, including a statement consistent with Bankruptcy Rule 2016 and, for the first application, a copy of the engagement letter, if not already included in the Retained Professional's retention application;

3.      Identification of all professionals who billed time during the relevant period, including each professional's billing rate and year of bar admission;

4.      A list of all rate increases of any kind—including rate increases due to increasing seniority—by timekeeper and amount, proposed by the Retained Professional since it began working on these cases;

5.      A statement that the Retained Professional's client has (or has not) explicitly consented to all rate increases;

6.      The precise time period covered by the application;

7.      Time and service entries in the appropriate electronic format, discussed below, identifying participants, activities, and subject matters, arranged by specific project categories, including brief narrative summaries of each project and its benefit to the estate (non-working travel time should be a specific project category);[4]

8.      Time entries, in tenths of an hour, without "lumping" services together unless the aggregate amount of time spent for those lumped services does not exceed 0.5 hours;

9.      Explanations of tasks involving multiple individuals and the contributions of each individual; and

10.     A detailed itemization of actual, necessary expenses.

### *Means of Service Upon the Fee Examiner*

Interim Fee Applications and supporting data should be provided in the appropriate electronic format (described below) by e-mail to CelsiusFeeExaminer@gklaw.com.  In addition, please provide supporting data to the Office of the U.S. Trustee by e-mail to Shara.Cornell@usdoj.gov, Brian.Masumoto@usdoj.gov, and Mark.Bruh@usdoj.gov. Notwithstanding any contrary requirements in the case management procedures, to minimize expense, please ***DO NOT SERVE HARD COPIES OF FEE APPLICATIONS AND***

---

[4] Electronic data should mirror precisely the amounts sought in the interim or final fee application.  If write-offs or other adjustments are made to the timekeeping, in the exercise of billing judgment, the electronic data will need to reflect those adjustments.  Data submitted on time, complete and consistent with the amounts requested in the application, are all essential to the schedule outlined above.

**_SUPPORTING MATERIALS_**.  Expenses for duplicating or mailing fee applications will be recommended for disallowance.

### Electronic Data Format for Billing and Expense Detail

All fee and expense detail should be submitted only in electronic format.  **_YOU NEED NOT PROVIDE PAPER COPIES OF BILLS OR INVOICES_**.

1.    For law firms:  simultaneously with the submission of any interim or final fee application, please provide electronic versions of any billing information in unedited LEDES™ (Legal Electronic Data Exchange Standard) file format.

2.    For non-law firms:  simultaneously with the submission of any interim or final fee application, Retained Professionals other than law firms should provide electronic versions of any billing information in Excel format, containing, at a minimum, the following fields for fees: invoice number, matter name, date, timekeeper name, timekeeper position/title, hourly rate, hours, fees, task description; and the following fields for expenses: invoice number, matter name, date, name of timekeeper who incurred expense, expense category, unit cost, number of units, expense total, expense description.  Failure to serve the Fee Examiner with timely fee detail in the required format will delay the Fee Examiner's review and recommendation of a fee application.

3.    In the event that any documentation accompanying an Interim Fee Application contains internal codes that could assist in evaluating the Interim Fee Application (such as codes for fee, project or expense categories), the professional should submit an explanation of how the codes relate to any fee, project or expense categories.

4.    When submitting a summary or cover sheet of all individuals who billed time in the Interim Fee Application, the summary should list the individuals alphabetically by last name within their particular category (e.g., all partners should be listed alphabetically).

### Expenses

The parameters set forth here are not hard and fast rules, and the Fee Examiner will consider atypical reimbursement requests that are reasonable, actual, and necessary.  With that in mind, the review and analysis generally will follow these principles:

### Overhead and Administrative Charges

- In general, overhead and administrative expenses are not reimbursable, nor are infrastructure improvements, rent, utilities, office equipment, furnishings, insurance, custodial fees, internal storage fees, and property taxes.

- Internal photocopying is reimbursable at 10 cents per page for black and white and, where color copies are necessary, 50 cents per page. Please provide vendor invoices for outside photocopying projects in excess of $300.

- Charges for internal printing, converting documents to electronic formats, scanning charges, and charges to convert and upload documents are not reimbursable.

- Word processing, proofreading, secretarial and other support expenses are not reimbursable, nor are overtime charges.

- Telephone charges—including cellular phone fees and subscriptions, text fees, data fees, and roaming charges, other than actual charges for multi-party calls incurred by counsel in connection with the cases—are not reimbursable.

- Subscription, publication, or library charges are not reimbursable, nor are office supplies.

### *Travel Expenses*

- Meetings should be conducted telephonically or by video conference wherever possible.

- Clothing, dry-cleaning, accessories, and travel sundries are not reimbursable.

- Local travel expenses (train, bus, subway, mileage, car service, taxi) to or from a professional's home are not reimbursable unless a professional *has worked at least four hours on these cases on the day for which the expense is sought* and works after 9:00 p.m. local time *on these cases.*

- Ground transportation to or from airports from a city center to an appropriate airport will be reimbursable at the actual cost of an Uber, Lyft, or taxi. Those preferring to use private car service should not seek reimbursement for those charges.

- While professionals are free to travel in any manner they wish, the Fee Examiner will not recommend reimbursement for first or business class travel within the United States. Business class travel is allowable for case-related airline trips outside the United States. Please provide receipts for any travel expense exceeding $300.00.

- Tips or other service charges are reimbursable only if part of another itemized expense (for example, taxi or rideshare gratuity included on the receipt). Documented wait staff tips are reimbursable up to the applicable expense caps outlined below. Housekeeping, valet, concierge, and bell services tips are not reimbursable.

- Hotel expenses should be limited to reasonable market rates for the locale, and in any event will not be reimbursed above $600.00. Taxes, service fees, and other charges

are *included* in this reimbursement cap.  Health or athletic facilities, in-room movies, or other entertainment charges are not reimbursable.  In addition, in-room dining or other hotel food and beverage charges are subject to the meal guidelines in this memorandum.

### *Meals*

- In-office meals are capped at $40.00 per person per meal and are reimbursable if:

    - The professional attends a necessary lunch-hour business meeting; or

    - The professional works *on these cases* after 8:00 p.m. and has worked more than four hours *on these cases* during the billing day for which meal reimbursement is sought.

- Coffee and snack charges are not reimbursable unless charged *in lieu of* in office meals allowable under the above-stated guideline.

- All catering orders must be supported by receipts or invoices.  Catering expenses (internal and external) must indicate both the number of persons actually attending a business meeting and the amount charged per person.

- Out-of-office meals are capped at $60.00 per person per meal, reimbursable only if the professional has travelled to prepare for or attend a hearing, client or third-party meeting, or other event.  If a professional's attendance at a hearing, meeting, or other event is unnecessary, the Fee Examiner will recommend both the professional's fees and associated travel and meal expenses for disallowance.

- Regardless of the number of attendees, please provide receipts for any single meal costing more than $300.00 in the aggregate.

- Alcohol is never reimbursable.

Note that the meal reimbursement cap is *not* a per diem.  Applicants may be reimbursed for either the actual cost of the meal, or the reimbursement cap, whichever is less.

### *Other Expenses*

- Contract attorneys are reimbursable at their actual cost (that is, the rate charged by the agency or other provider placing the attorneys) without markup.  Professionals should submit detailed billing statements for all contract attorneys, who are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness as any other professional.

- In general, Retained Professionals should not submit reimbursement requests for any other firm's professional (legal, financial advisory, investment banking, or accounting) services.  If retention terms allow for sub-retentions, contract

professionals must nonetheless submit detailed billing statements. All professional fees are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness.

- Consulting or testifying expert fees may be submitted as expenses within a Retained Professional's fee application provided that:

    o  the expert's fees do not exceed the amounts set forth in the *Order Authorizing the Retention and compensation of Professionals Utilized in the Ordinary Course of Business* [Dkt. No. 519] for a Tier 1 Ordinary Course Professional ($150,000 per month or $900,000 in the aggregate); and

    o  the Retained Professional provides the Fee Examiner with supporting detailed billing statements outlining the services performed and the expert compensation requested.

- Charges for electronic research services (Westlaw, Lexis-Nexis) should be accompanied by a general description of the research performed.

- Expenses related to seeking committee or other representation (pitching) are not reimbursable, nor is client entertainment.

- Expenses incurred prior to the Retained Professional's retroactive retention date are not reimbursable unless otherwise permitted by the Court's order authorizing the Retained Professional's employment.

- Please provide receipts for all unusual or extraordinary expenses.

Please note that this list is not meant to be exhaustive, nor does it preclude individual explanations for unusual items, any of which may meet applicable standards under appropriate circumstances.

### *Fee Examiner Analysis of Billing Detail*

The Fee Examiner's review is both quantitative and qualitative, including, at a minimum and without limitation, examining:

The hourly rates charged:

- Ensure that billing rates for each professional are the rates approved in the applicable engagement agreement, retention order, or supplement;

- Evaluate reasonableness of rates and the time spent in relation to the nature and character of the work and each professional's role and experience;

- Calculate blended rates;

Exhibit C

- Evaluate multiple rates billed to particular projects; and,

- Eliminate charges for work performed by law students, interns, law clerks, and or summer associates.

Hours billed:

- Evaluate hours billed against any limitations in the engagement agreement or retention order;

- Analyze average billable hours each day and identify extended periods of above average billing days;

- Calculate fees or billable hours for preparation of firm retention documents and fee applications as a percentage of total fees and hours—time spent preparing and editing time records is never compensable;

- Evaluate legal research to determine whether it is being conducted appropriately and at the lowest appropriate rate;

- Review clerical and administrative tasks to determine either the propriety of the billing rate for the task or whether the task is non-compensable;

- Ensure that time is billed in one-tenth of an hour increments unless a retention order permits another time increment;

- Identify vague task descriptions that do not permit a reviewer to determine the task's necessity;

- Identify improperly "lumped" or "block billed time";

- Ensure the use of properly segregated matter numbers for project categories, generally consistent with the following, where applicable:

  - Financing and Cash Collateral

  - Communications with Creditors/debtors

  - Customer and Vendor Communications

  - Hearings

  - Committee or Board Meetings

  - U.S. Trustee Communications

  - Business Operations

9

- o  Bitcoin Mining and Crypto Matters

- o  Custody and Withhold Matters

- o  Chapter 11 Examiner

- o  Asset analysis and disposition

- o  Asset valuation

- o  Due diligence-investigation and analysis of loan and other security documents

- o  Automatic stay matters

- o  Utility and adequate protection matters

- o  Employee issues

- o  Insurance issues

- o  SOFAs, Schedules, and Reports

- o  Assumption and rejection of leases or executory contracts

- o  Avoidance actions (significant avoidance actions should have their own matter identifier)

- o  Budgeting

- o  Business operations

- o  Case administration

- o  Claims and claims objections

- o  Communications with the U.S. Trustee

- o  Communications with *pro se* parties

- o  Governance matters

- o  Retention applications and disclosures-self

- o  Retention applications and disclosures-others

- o  Fee applications-self

- o  Fee applications-others

- o  Litigation (each litigation matter should have its own matter identifier)

- o  Non-working travel

- o  Plan and disclosure statement

- o  SEC Investigation

- o  State attorney general investigations (each state investigation should have its own matter identifier)

- o Tax issues (individual governmental entity audits should have their own matter identifiers)

- o Monitoring or participating in related cryptocurrency bankruptcy proceedings

- Identify meetings, hearings, or other events attended by an excessive number of timekeepers given the nature of the hearing or meeting and the necessity of multiple attendees;

- Ensure that non-working travel is billed only at 50 percent of the timekeeper's standard hourly rate;

- Identify all calculation or billing errors;

- Identify instances of duplication or overlap in work performed by multiple Retained Professionals;

- Ensure that tasks are appropriately delegated to the professional with the lowest suitable billing rate for the task performed;

- Evaluate time spent monitoring or overseeing others' work without substantial contribution to work product; and

- Waiting time or "standby time" is not reimbursable.

*Fee Examiner Contacts*

We look forward to working you and trust that this memorandum will begin an open and productive dialogue with professionals subject to the Fee Examiner Order. The Fee Examiner and counsel can be reached using the contact information below. Please do not hesitate to contact the Fee Examiner's counsel if you have comments, questions or concerns about the fee review process.

Attorneys: Katherine Stadler
kstadler@gklaw.com

Mark Hancock
mhancock@gklaw.com

Data Specialist/Attorney: W. Andrew Dalton
adalton@gklaw.com

Paralegal: Kathleen Boucher
kboucher@gklaw.com

**Fee Examiner**

Christopher S. Sontchi
CelsiusFeeExaminer@gklaw.com

DelawareADR, LLC
P.O. Box 7908
Wilmington, DE 19803

28273189.2

# EXHIBIT D

Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| CELSIUS NETWORK, LLC, *et al.*,[1] | : | Case No. 22-10964 (MG) |
| Debtors. | : | (Jointly Administered) |
|  | : | Re: Dkt. Nos. 1707, 1709, 1710, 1715, 1716, 1718, 1719, 1720, 1721 |

**OMNIBUS ORDER GRANTING APPLICATIONS FOR ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES FOR THE FIRST INTERIM COMPENSATION
PERIOD FROM JULY 13, 2022 THROUGH OCTOBER 31, 2022**

Upon consideration of the applications for allowance of interim compensation and

reimbursement of expenses incurred during the period from July 13, 2022 through October 31,

2021 (the "**First Interim Compensation Period**") indicated as "Recommended for Approval"

on the attached **Exhibit A** (Dkt. Nos. 1707, 1709, 1710, 1715, 1716, 1718, 1719, 1720, and

1721) (together, the "**Uncontested Applications**"), filed pursuant to the *First Amended Order (I)*

*Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained*

*Professionals and (II) Granting Related Relief* [Dkt. No. 1745] (the "**Interim Compensation**

**Order**"); the *Amended Order Appointing Independent Fee Examiner and Establishing Related*

*Procedures for the Review of Fee Applications of Retained Professional* [Dkt. No. 1746] (the

"**Fee Examiner Order**"); and pursuant to 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Rules of Bankruptcy Procedure, and Rule 2016-1 of the Local Bankruptcy Rules for the

Southern District of New York; and notice having been given pursuant to Federal Rules of

Bankruptcy Procedure 2002(a)(6) and (c)(2); and the Court having reviewed the Uncontested

Applications and/or the summary report filed by the Fee Examiner with respect to the

Uncontested Applications [*see* Dkt. No. _____]; and *Daniel A. Frishberg's Omnibus Objection to*

*the First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International*

*LLP, Attorneys for the Debtors and Debtors in Possession, for the Interim Fee Period From July*

*13, 2022 Through and Including October 31, 2022 and other Various Professionals' Fee*

*Applications* [Dkt. No. 1823] (the "**Frishberg Objection**"); and the Court finding that:  (a) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334; (b)notice of the

Uncontested Applications was adequate under the circumstances; and (c) all parties with notice

of the Applications have been afforded the opportunity to be heard on the Uncontested

Applications, and upon the full record of all proceedings in this case; and sufficient cause having

been shown therefor, it is hereby;

ORDERED THAT:

1.    The Frishberg Objection is overruled to the extent it applies to any of the

Uncontested Applications outlined on the attached **Exhibit A**.

2.    Each Uncontested Application is granted on an interim basis, to the extent set

forth on the attached **Exhibit A**.

3.    Each of the Uncontested Applicants is allowed (a) interim compensation for

services rendered during the Compensation Period and (b) interim reimbursement for actual and

necessary expenses incurred during the Compensation Period, each in the respective amounts set

forth on the attached **Exhibit A**, including, except as otherwise indicated, any and all holdbacks.

2

4.      To the extent not already paid pursuant to the Interim Compensation Order, the Debtors are hereby authorized and directed to pay, except as otherwise indicated on **Exhibit A**, each of the Uncontested Applicants 100 percent of the fees and 100 percent of the expenses listed on **Exhibit A** under the columns "Interim Fees Recommended for Approval" and "Interim Expenses Recommended for Approval," respectively, for services rendered and expenses incurred during the Compensation Period.

4.      All fees and expenses allowed herein shall be subject to final allowance by the Court without regard to whether such amounts have been paid to the Applicant.

5.      This Order shall be deemed a separate order with respect to each of the Interim Applications.  Any stay of this Order pending appeal with respect to any one Uncontested Application shall only apply to the Uncontested Applicant that is the subject of such appeal and shall not operate to stay the applicability and/or finality of this Order with respect to any other Uncontested Application.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this order.

4.      Pursuant to the Fee Examiner's summary report, the interim fee applications listed on the attached **Exhibit B** are hereby adjourned for consideration at a later hearing date.

IT IS SO ORDERED.

Dated:  April __, 2023.
        New York, New York

_____
Martin Glenn
Chief United States Bankruptcy Judge

29104092.2

3

22-10964-mg   Doc 2387   Filed 04/07/23   Entered 04/07/23 14:52:18   Main Document
Pg 50 of 51

In re: Celsius Network LLC, et al.
NYSB Case No: 22-10964 (MG)

Exhibit A

**First Interim Fee Period Applications Recommended:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expenses Adjustments | | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| 1 | **Akin Gump Strauss Hauer & Feld LLP** [Dkt. No. 1707] *Special Litigation Counsel to the Debtors* | 7/13/2022-10/31/2022 | $ 2,322,174.60 | $ 58,326.86 | $ 107,347.68 | $ 33,386.46 | | $ 2,263,847.74 | $ 73,961.22 |
| 2 | **Alvarez & Marsal North America, LLC** [Dkt. No. 1710] *Financial Advisors for the Debtors* | 7/14/2022-10/13/2022 | $ 6,511,737.00 | $ 59,065.50 | $ 10,180.91 | $ 3,138.59 | | $ 6,452,671.50 | $ 7,042.32 |
| 3 | **Centerview Partners LLC** [Dkt. No. 1709] *Investment Banker to the Debtors* | 7/13/2022-10/31/2022 | $ 650,000.00 | $ - | $ 3,167.98 | $ 485.36 | | $ 650,000.00 | $ 2,682.62 |
| 4 | **Elementus Inc.** [Dkt. No. 1718] *Blockchain Forensics Advisor to the Official Committee of Unsecured Creditors* | 8/1/2022-10/31/2022 | $ 876,470.00 | $ 240.00 | $ 263,370.42 | $ 84,922.50 | FN1 | $ 876,230.00 | $ 178,447.92 |
| 5 | **Huron Consulting Services LLC** [Dkt. No. 1719] *Financial Advisor to the Chapter 11 Examiner* | 10/10/2022-10/31/2022 | $ 518,063.00 | $ 16,552.94 | $ - | $ - | | $ 501,510.06 | $ - |
| 6 | **Kirkland & Ellis LLP and Kirkland & Ellis International LLP** [Dkt. No. 1721] *Attorneys for the Debtors* | 7/13/2022-10/31/2022 | $ 19,844,014.00 | $ 373,213.69 | $ 258,925.90 | $ 22,131.37 | | $ 19,470,800.31 | $ 236,794.53 |
| 7 | **M3 Advisory Partners, LP** [Dkt. No. 1716] *Financial Advisor to the Official Committee of Unsecured Creditors* | 8/1/2022-10/31/2022 | $ 4,026,092.00 | $ 9,883.40 | $ 5,994.95 | $ 118.52 | | $ 4,016,208.60 | $ 5,876.43 |
| 8 | **Perella Weinberg Partners LP** [Dkt. No. 1720] *Investment Banker to the Official Committee of Unsecured Creditors* | 8/2/2022-10/31/2022 | $ 296,774.19 | $ - | $ 70,542.52 | $ 5,418.31 | | $ 296,774.19 | $ 65,124.21 |
| 9 | **White & Case LLP** [Dkt. No. 1715] *Counsel to the Official Committee of Unsecured Creditors* | 7/29/2022-10/31/2022 | $ 10,219,205.00 | $ 252,398.45 FN2 | $ 12,457.18 | $ 118.16 | | $ 9,966,806.55 | $ 12,339.02 |

**FN1** - This adjustment includes $75,000 in licensing fees for the use of in-house proprietary software. Elementus and the Fee Examiner have agreed that the Fee Examiner will reconsider the compensability of these expenses at the conclusion of these proceedings.

**FN2** - This recommended fee adjustment includes a credit of $32,104.80 reflected in White & Case's First Monthly Statement [Dkt. No. 1224] but inadvertently excluded from White & Case's First Interim Fee Application [Dkt. No. 1715].

In re: Celsius Network LLC, et al.
NYSB Case No. 22-10964 (MG)

Exhibit B

**First Interim Fee Period Applications Deferred:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expenses Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| 1 | **Ernst & Young LLP** [Dkt. No. 2170]<br>*Tax Compliance and Tax Advisory Services Provider for Debtors* | 7/13/2022 - 10/31/2022 | $ 778,680.00 | | $ - | | | |
| 2 | **Latham & Watkins LLP** [Dkt. No. 1712]<br>*Special Counsel to the Debtors* | 7/13/2022-10/31/2022 | $ 5,097,947.00 | | $ 137,073.92 | | | |
| 3 | **Pillay, Shoba and Jenner & Block LLP** [Dkt. No. 1717]<br>*Chapter 11 Examiner and Counsel* | 9/29/2022-10/31/2022 | $ 1,863,035.50 | | $ 1,135.09 | | | |