Hearing Date: April 18, 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: April 14, 2023

**IMPORTANT NOTICE:**

**THIS MOTION SEEKS AUTHORIZATION FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO FILE A CLASS OR OTHER REPRESENTATIVE CLAIM (COLLECTIVELY, A "CLASS CLAIM") ASSERTING NON-CONTRACT CLAIMS—SUCH AS CLAIMS FOR FRAUD, NEGLIGENT MISREPRESENTATION, OR OTHER STATUTORY OR COMMON LAW CLAIMS—ON BEHALF OF ACCOUNT HOLDERS. THE FILING AND PURSUIT OF ANY SUCH CLASS CLAIM IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT, AND THE BANKRUPTCY COURT HAS NOT YET AUTHORIZED THE COMMITTEE OR ANY OTHER PERSON OR ENTITY TO FILE ANY SUCH CLAIM. THE CURRENT AMENDED DEADLINE TO FILE CLAIMS IS APRIL 28, 2023. *SEE* DOCKET NO. 2310. CREDITORS SHOULD TAKE STEPS TO PROTECT THEIR RIGHTS BY FILING THEIR OWN PROOFS OF CLAIM OR TAKING ANY OTHER APPROPRIATE STEPS IF CREDITORS WISH TO ASSERT NON-CONTRACT CLAIMS—SUCH AS CLAIMS FOR FRAUD, NEGLIGENT MISREPRESENTATION, OR OTHER STATUTORY OR COMMON LAW CLAIMS.**

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Email: david.turetsky@whitecase.com
        sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Email: mandolina@whitecase.com
        gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**NOTICE OF HEARING ON THE MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS (I) FOR AUTHORITY TO FILE A CLASS CLAIM
ASSERTING NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS OR
(II) TO APPOINT A THIRD-PARTY FIDUCIARY TO ASSERT A CLASS CLAIM
ON BEHALF OF ACCOUNT HOLDERS**

**PLEASE TAKE NOTICE** that a hearing on the *Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* (the "**Motion**") will be held on **April 18, 2023, at 10:00 a.m., prevailing Eastern Time** (the "**Hearing**").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on April 17, 2023).**

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on April 18, 2023 must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on April 18, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their

eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181]; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC,* No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by the objection deadline of **April 14, 2023**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "**Debtors**") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Committee.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.


[*Remainder of page left intentionally blank*]

Dated:  April 10, 2023                                     Respectfully submitted,
        New York, New York

                                                          */s/ Samuel P. Hershey*
                                                          **WHITE & CASE LLP**
                                                          David M. Turetsky
                                                          Samuel P. Hershey
                                                          1221 Avenue of the Americas
                                                          New York, New York 10020
                                                          Telephone: (212) 819-8200
                                                          Facsimile:  (212) 354-8113
                                                          Email:  david.turetsky@whitecase.com
                                                                  sam.hershey@whitecase.com


                                                          – and –

                                                          **WHITE & CASE LLP**
                                                          Michael C. Andolina (admitted *pro hac vice*)
                                                          Gregory F. Pesce (admitted *pro hac vice*)
                                                          111 South Wacker Drive, Suite 5100
                                                          Chicago, Illinois 60606
                                                          Telephone: (312) 881-5400
                                                          Facsimile:  (312) 881-5450
                                                          Email:  mandolina@whitecase.com
                                                                  gregory.pesce@whitecase.com


                                                          – and –

                                                          **WHITE & CASE LLP**
                                                          Keith H. Wofford
                                                          Southeast Financial Center
                                                          200 South Biscayne Blvd., Suite 4900
                                                          Miami, Florida 33131
                                                          Telephone: (305) 371-2700
                                                          Facsimile:  (305) 358-5744
                                                          Email:  kwofford@whitecase.com


                                                          – and –

                                                          **WHITE & CASE LLP**
                                                          Aaron E. Colodny (admitted *pro hac vice*)
                                                          555 South Flower Street, Suite 2700
                                                          Los Angeles, California 90071
                                                          Telephone: (213) 620-7700
                                                          Facsimile:  (213) 452-2329
                                                          Email:  aaron.colodny@whitecase.com

                                                          *Counsel to the Official Committee of*
                                                          *Unsecured Creditors*

Hearing Date: April 18, 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: April 14, 2023

**IMPORTANT NOTICE:**

**THIS MOTION SEEKS AUTHORIZATION FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO FILE A CLASS OR OTHER REPRESENTATIVE CLAIM (COLLECTIVELY, A "CLASS CLAIM") ASSERTING NON-CONTRACT CLAIMS—SUCH AS CLAIMS FOR FRAUD, NEGLIGENT MISREPRESENTATION, OR OTHER STATUTORY OR COMMON LAW CLAIMS—ON BEHALF OF ACCOUNT HOLDERS. THE FILING AND PURSUIT OF ANY SUCH CLASS CLAIM IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT, AND THE BANKRUPTCY COURT HAS NOT YET AUTHORIZED THE COMMITTEE OR ANY OTHER PERSON OR ENTITY TO FILE ANY SUCH CLAIM. THE CURRENT AMENDED DEADLINE TO FILE CLAIMS IS APRIL 28, 2023. *SEE* DOCKET NO. 2310. CREDITORS SHOULD TAKE STEPS TO PROTECT THEIR RIGHTS BY FILING THEIR OWN PROOFS OF CLAIM OR TAKING ANY OTHER APPROPRIATE STEPS IF CREDITORS WISH TO ASSERT NON-CONTRACT CLAIMS—SUCH AS CLAIMS FOR FRAUD, NEGLIGENT MISREPRESENTATION, OR OTHER STATUTORY OR COMMON LAW CLAIMS.**

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Email: david.turetsky@whitecase.com
       sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Email: mandolina@whitecase.com
       gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I) FOR
AUTHORITY TO FILE A CLASS CLAIM ASSERTING NON-CONTRACT CLAIMS
ON BEHALF OF ACCOUNT HOLDERS OR (II) TO APPOINT A THIRD-PARTY
FIDUCIARY TO ASSERT A CLASS CLAIM ON BEHALF OF ACCOUNT HOLDERS**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases
of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**" and,
together with their non-Debtor affiliates, "**Celsius**") states as follows in support of this motion
(this "**Motion**"):

### Preliminary Statement

1.      On March 9, 2023, the Court determined that account holders who transferred
digital assets to the Debtors may only assert *contract* claims under the Terms of Use (as such term
is defined below) against Celsius Network LLC ("**LLC**") and not against any affiliates of LLC,
such as Celsius Network Limited ("**CNL**").[2]  The Customer Claims Opinion also recognized that
account holders may hold non-contract claims—"such as claims for fraud, negligent
misrepresentation, or other statutory or common law claims"— against not just LLC but also its
affiliates, including CNL, and that the Terms of Use did not preclude such claims.[3]  As a result of
the Customer Claims Opinion, the Debtors were required to amend their schedules of assets and
liabilities and reopen the bar date for affected claimants, including account holders who had
previously relied on the Debtors' schedules to assert claims against CNL or its affiliates.  The
amended claims bar date for affected claims is April 28, 2023 (the "**Amended Bar Date**").[4]
However, the Debtors have publicly stated that they do not intend to amend their schedules to

---

[2]     *See Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the
Terms of Use* [Docket No. 2205] (the "**Customer Claims Opinion**") at 4.

[3]     *Id.*

[4]     *Notice of Amended Bar Date for Submission of Proofs of Claim* [Docket No. 2310] (the "**Amended Bar Date
Notice**") at 2.

reflect potential claims for fraud, negligent misrepresentation, or other statutory or common law claims.

2.      As the Committee has uncovered through its investigation, and as the Examiner aptly stated, "[t]he business model Celsius advertised and sold to its customers was not the business that Celsius actually operated."[5]  Indeed, Alexander Mashinsky, the former Chairman and CEO of CNL, repeatedly misrepresented, among other things, the risks undertaken by Celsius, the nature of its investments and trading strategies, its compliance with applicable laws and regulatory requirements, and the ownership of assets that account holders transferred to the platform.  Mr. Mashinsky and CNL also failed to inform its account holders of significant information regarding Celsius's investments and operations, including information regarding large losses incurred by Celsius, Celsius's deployment and investment decisions, and that the Financial Conduct Authority of the United Kingdom ("**FCA**") notified CNL that it was operating an unregistered collective investment scheme.[6]  In response to the FCA, CNL did not change its business to become compliant, but instead "migrated" its obligations to all account holders from the United Kingdom parent company (CNL) to a subsidiary Delaware limited liability company (LLC).[7]  It failed to inform its account holders of the FCA's claims, that the migration was to a subsidiary with little to no assets, or that the migration separated Celsius's obligations from the assets that account holders had transferred to the Celsius platform (or the investments it had made with those assets). It also did not inform account holders that customers would no longer be able to look to the value of all of Celsius' businesses, including the mining business, to satisfy their contract claims.[8]

---

[5]   *Final Report of Shoba Pillay, Examiner* [Docket No. 1956] (the "**Final Examiner Report**") at 3.

[6]   *Id.* at 363-64; *see also* CEL-UCC-00192903 (FCA letter taking the position that CNL was operating as an unregistered collective investment scheme).

[7]   *Id.* at 364.

[8]   Prior to the adoption of version 6 of the Terms of Use, CNL was contractually liable for account holder

3.    To the contrary, Mr. Mashinsky stated in a public broadcast that "all the services to all of our users remain the same . . . we haven't changed anything.  The only thing that we are changing [is] how can we stay compliant in the best way and still achieve all of the goals that the Company has set both for itself and all of the Celsians."[9]  Mr. Mashinsky's co-host, Celsius employee Zachary Wildes, then stated, "The big takeaway here is that [for] all current users there is no effect, so no matter where you are if you are a current Celsius user this is not going to affect you in any way."[10]  Mr. Mashinsky responded, "Right."[11]  YouTube reports that this broadcast— which is only one of the more than 150 "Ask Mashinsky Videos" broadcast to customers—was viewed over 13,000 times.  Those comments were echoed by a Medium blog post issued by CNL.[12] After the migration, Mr. Mashinsky stated that the Debtors' mining business (which is a subsidiary of CNL) was a "sustainable way" to "earn yield" in order to "pay yield" to account holders, representing to account holders that the mining assets would be available to support Celsius's account holder obligations.[13]

---

obligations.  Because CNL was the parent entity over all of Celsius' businesses, account holders could look to the residual value of each of those businesses (including the Debtors' mining assets) to satisfy their contractual claims.  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 189 (Bankr. S.D.N.Y. 2007) (recognizing that ordinarily the value of subsidiaries "flow[s] up to" their "corporate parents").  By contrast, in the Customer Claims Opinion, the Court found that following the adoption of version 6, liability for account holder contract claims was only at LLC and thus those contract claims were not contractually supported by any of the Debtors' other businesses based on a limitation of liability that the Court also determined was facially ambiguous.  Customer Claims Op. at 26.  The Committee has appealed the Customer Claims Opinion but submits that if the Court's opinion is correct, it provides additional support for fraud claims against CNL.

[9]    *Celsius AMA*, YOUTUBE (June 25, 2021), available at https://www.youtube.com/watch?v=DdYrYPvY5OU at 5:50.

[10]    *Id.* at 7:40.

[11]    *Id.* at 7:50.

[12]    *Celsius Community Update* (June 23, 2021), available at https://celsiusnetwork.medium.com/celsius-community-update-june-23-2021-a28fca899091 (explaining that "due to regulatory uncertainty happening in the UK today . . . [Celsius] will be migrating its main business activity and headquarters from the United Kingdom to the United States. . . . For the avoidance of doubt, all Celsius services for all existing customers remain unchanged" following the migration).

[13]    *What Does Investment in Bitcoin Mining Mean for Celsius*, YOUTUBE (Feb. 7, 2022), available at https://www.youtube.com/watch?v=ymHIfpxXv04 at 00:30.

4.      Mr. Mashinsky and CNL knew the statements and omissions referenced above were false and misleading when they were made, and/or Mr. Mashinsky and CNL made those statements and omissions with reckless disregard for the truth.  There is no question that Mr. Mashinsky and other members of Celsius's prepetition leadership made these statements and omissions to induce account holders to transfer digital assets to the Celsius platform or to leave their digital assets on the platform.  As intended, account holders relied on those statements and omissions, which inflicted billions of dollars of damages upon them as a result.

5.      Due to the actions of CNL, Mr. Mashinsky, and other members of Celsius's prepetition leadership, hundreds of thousands of account holders have common claims against CNL (and potentially other Debtors) for, among other things, fraud and negligent misrepresentation.  In recognition of this fact, the Debtors selected three claimants to serve as bellwethers for purposes of objecting to their claims for, among other things, fraud and related claims.  However, as noted above, the Debtors do not plan at this time to amend the schedules to reflect potential claims for fraud, negligent misrepresentation, or other statutory or common law claims.  Accordingly, as suggested by the Court, the Committee has worked diligently with those claimants and the Debtors to create a schedule for those claimants to prosecute their proofs of claim.  However, Celsius's prepetition fraudulent statements and material omissions were pervasive, both in terms of the number of such statements and omissions and the number of account holders affected.  It is not feasible for all account holders to file proofs of claim for common non-contract claims against CNL and its affiliates by the Amended Bar Date.  Nor is it feasible for the Debtors to sort through each such claim, as will be required to facilitate voting on a plan of reorganization and distribute the consideration proposed to be provided by that plan.  Moreover, many of the Debtors' account holders lack the experience with chapter 11 or the resources to have

dedicated individual counsel prosecute their individual claims. The selective filing by a few creditors with greater resources than others would potentially allow those creditors to receive disproportionate recoveries compared to those creditors who suffered the same harm but do not take immediate action.

6.      In light of this unprecedented collective action problem and the impending Amended Bar Date, it is necessary and appropriate for the Committee as a fiduciary for all account holders to file a class proof of claim or other representative action, as appropriate, against CNL and certain other non-debtors.

7.      Accordingly, for the reasons set forth herein, the Court should exercise its discretion under Bankruptcy Rule 9014(c) to apply Bankruptcy Rule 7023 to this matter and authorize the Committee to file a class claim on behalf of all account holders or such other representative action as may be appropriate. In the alternative, if the Court does not authorize the Committee to file the class claim, it should appoint a third-party fiduciary to file and prosecute a class claim against CNL and other Debtor entities on behalf of all account holders, or such other representative action as may be appropriate.

## Jurisdiction and Venue

8.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012. The Committee confirms its consent to the Court entering a final order in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.    The bases for the relief requested herein are sections 105(a), 1103(c), and 1109(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 3001(b), 7023, and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**Relief Requested**

11.    To ensure that account holders receive equal and equitable treatment and to ease the administration of these chapter 11 cases, the Committee seeks entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Committee to file a class claim or other representative action (as appropriate) asserting non-contract claims against CNL (and potentially certain of its Debtor and non-Debtor affiliates) on behalf of all account holders, or (b) appointing a third-party fiduciary (identified by the Committee and approved by the Court) to file such class claim or other representative action (as appropriate) on behalf of account holders.

**Relevant Background**

## I.    **The Customer Claims Order**

12.    On November 14, 2022, the Debtors filed their *Motion Seeking Entry of an Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* [Docket No. 1338] (the "**Customer Claims Motion**"), which requested that the Court direct parties in interest to brief the issue of "which Debtors are liable to account holders under the global contract (the '**Terms of Use**') between Celsius Network LLC [and its Affiliates] and its account holders" (the "**Customer Claims Issue**"). Customer Claims Motion ¶¶ 4-5. The Court granted the Customer Claims Motion on December 19, 2022 and set a schedule for interested parties, including the Debtors, the Committee, and certain holders of Series B preferred shares of CNL (the "**Preferred Equity Holders**"), to litigate the Customer Claims Issue. *See Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* [Docket No. 1747] ¶¶ 3-4.

13.    Following a hearing on the matter, the Court entered an order determining that "only Celsius Network LLC is liable for customer contract claims under the Terms of Use, affiliates of LLC are excluded from contract liability under the Terms of Use, and Customers may assert contract claims arising under the Terms of Use against only LLC and not against any other entity."  *Order Regarding Which Debtor Entities Have Liability For Customer Contract Claims Under the Terms of Use* [Docket No. 2265] (the "**Customer Claims Order**") ¶ 1.

14.    The Court made clear that its ruling was limited to ***contract*** claims.  The Court found and concluded that: "the terms of use do not limit Customers (***or the Committee***) from asserting non-contract claims against CNL, or against other Debtor or non-Debtor affiliates, such as claims for fraud, negligent misrepresentation, or other statutory or common law claims." Customer Claims Op. at 4 (emphasis added).

15.    As further described below, the Committee's investigation, as well as the Final Examiner Report, make clear that CNL and Mr. Mashinsky, who was the CEO and director of CNL, and CNL's other directors and officers, management, and agents persistently defrauded and misled account holders.  As a result, account holders hold valuable non-contract claims to recover from CNL and certain of its Debtor and non-Debtor affiliates.

## II.    The Amended Bar Date

16.    Following the entry of the Customer Claims Order, on March 24, 2023, the Debtors amended their schedules of assets and liabilities and statements of financial affairs (the "**Amended Schedules and Statements**") "to reflect that (a) contract claims related to the Debtors' Earn, Custody, and Withhold programs are only against Celsius Network LLC and not any other Debtor entity and (b) contract claims related to the Debtors' Borrow program are only against Celsius Lending LLC."  Amended Bar Date Notice at 2.

17.    The Amended Schedules and Statements do not include non-contract claims of account holders, whether against LLC, CNL, or any other Debtor.  *Id.* at 3 ("The Debtors have not scheduled any claims of account holders for fraud, negligent misrepresentation, or other statutory or common law claims, and have only scheduled account holder contract claims against Celsius Network LLC on account of the [] Terms of Use.").

18.    If account holders wish to assert non-contract claims against CNL or its Debtor-affiliates, they must file proofs of claim asserting those non-contract claims by the April 28, 2023 Amended Bar Date.  *Id.* at 2-3.  The Debtors provided notice of the Amended Bar Date on March 27, 2023—*i.e.*, 32 days prior to April 28, 2023.  *See Affidavit of Service* [Docket No. 2351].

## III.    <u>The Committee's Investigation</u>

19.    Since its appointment, the Committee has investigated the Debtors and the actions of Mr. Mashinsky and their other directors, officers, management, employees, and agents.  The Committee's investigation uncovered significant claims and causes of action based on fraud, recklessness, negligent misrepresentation, gross mismanagement, and self-dealing by CNL, Mr. Mashinsky, and certain of Celsius's other employees and agents.

20.    The Committee therefore requested that the Court enter an order, among other things, preserving certain claims and causes of action **the Debtors hold** against their former directors and officers to be brought by a litigation vehicle after confirmation of a plan of reorganization.  The claims detailed in the Committee's proposed Complaint, and requested to be preserved, include claims for breach of fiduciary duties and avoidance of fraudulent and preferential transfers.  *See Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* [Docket No. 2201] ¶¶ 1-2 (order approving pursuit of claims

asserted in complaint by Committee); *see also Notice of Filing of Revised Proposed Complaint of the Official Committee of Unsecured Creditors* [Docket No. 2349] (the "**Committee Complaint**").

21.    The facts alleged in the Committee Complaint and those set forth in detail in the Final Examiner Report also demonstrate that account holders possess viable non-contract claims against CNL, LLC, and their affiliates, including, but not limited to, claims for fraud and negligent misrepresentations.  For instance, in widely disseminated YouTube videos, marketing materials, and other public statements, Celsius, CNL and its directors, officers, employees, and agents consistently made false statements and material omissions that, together, misrepresented Celsius's business operations and downplayed the risks that account holders would face if they transferred digital assets to Celsius, including on CNL's weekly "Ask Mashinsky Anything" videos ("**AMAs**").[14]  Celsius was aware of the misrepresentations and conspired to cover them up by removing certain information from the AMAs after they had been broadcast live to thousands of people (and, in any event, failed to prevent those false statements from being made, correct the misinformation, or add important missing facts and context).[15]  Moreover, Celsius could not—and did not—cover up Mr. Mashinsky's misrepresentations in public news broadcasts, on third party platforms, or in other live broadcasts.[16]  Account holders were unaware of Celsius's deceit, and

---

[14]    Committee Compl. ¶¶ 66-75 ("Throughout the AMAs, Mr. Mashinsky failed to disclose material facts and Celsius' massive losses. He repeatedly lied to account holders and the public about the legal status of their deposits, the risk of Celsius' investments, and Celsius' financial condition.").

[15]    *Id.* ¶ 75 ("Instead of correcting Mr. Mashinsky's misrepresentations to the public, Celsius employees covered them up—pretending that taking the statements off YouTube after the fact would make them go away. At no time did Mr. Mashinsky, Celsius, or the Defendants involved in the editing of AMAs retract or correct any of Mr. Mashinsky's misrepresentations."); *see also* Examiner Report at 5 ("Celsius conducted its business in a starkly different manner than how it marketed itself to its customers in every key respect."); *Celsius AMA*, YOUTUBE (June 25, 2021), available at https://www.youtube.com/watch?v=DdYrYPvY5OU.

[16]    *See Celsius CEO on Best Practices For Retail Investing in Cryptocurrencies*, CNBC (Apr. 13, 2022), available at www.cnbc.com/video/2022/04/13/celsius-ceo-on-best-practices-for-retail-investing-in-cryptocurrencies.html, 1:02 (Mr. Mashinsky falsely misrepresenting that Celsius "did not offer any non-collateralized loans," even though, on or about that time, Celsius had more than $1.3 billion in outstanding uncollateralized loans).

therefore reasonably relied upon Celsius's misrepresentations and omissions when deciding to open or maintain their accounts with Celsius.[17]

22.     Account holders, as a constituency, ultimately suffered common injuries from Celsius's misconduct.  That misconduct includes, among many other things, when CNL purported to migrate its account holder obligations to LLC while retaining significant account holder assets, all while omitting to inform account holders of these events, and instead misinforming them that "all the services to all of our users remain the same . . . we haven't changed anything."[18]  That is in addition to the common injuries account holders suffered when Celsius deployed account holders' digital assets in speculative investments without proper risk controls, suffered massive losses, paused withdrawals, commenced these chapter 11 cases, and deprived account holders of the value of their digital assets for the nine months that have passed since the petition date.[19]

## Basis for Relief

## I.     The Court Should Apply Rule 9014(c) and Permit the Filing of the Class Claim

23.     This court has previously recognized that "most courts agree that class proofs of claim are allowed in bankruptcy," although the right to file class proofs of claim is not absolute. *In re MF Glob. Inc.*, 512 B.R. 757, 762 (Bankr. S.D.N.Y. 2014) (Glenn, J.) (authorizing filing of class proof of claim).

24.     Bankruptcy Rule 9014(c) provides bankruptcy courts with the ability to authorize the filing of a class claim under Bankruptcy Rule 7023, which incorporates the requirements of Federal Rule of Civil Procedure 23 governing class actions.  *See* Fed. R. Bankr. P. 9014(c) ("The

---

[17]    Committee Compl. ¶ 75.

[18]    *Celsius AMA*, YOUTUBE (June 25, 2021), available at https://www.youtube.com/watch?v=DdYrYPvY5OU at 5:50.

[19]    Committee Compl. ¶¶ 76-83.

court may at any stage in a particular matter direct that one or more of the other rules in Part VII

[including Bankruptcy Rule 7023] shall apply"); Fed. R. Bankr. P. 7023.  Bankruptcy courts

evaluate three factors when determining to allow the filing of a class claim: (a) whether class

certification will adversely affect the administration of the case, such as by causing undue delay;

(b) whether the members of the putative class received notice of the bar date; and (c) whether the

class was certified prepetition.  *See In re MF Glob.*, 512 B.R. at 763; *accord In re Motors

Liquidation Co.*, 447 B.R. 150, 166 (Bankr. S.D.N.Y. 2011).  The factors are not weighed equally;

the first factor—the effect of class certification on the administration of the case—is the "'principal

consideration'" in cases such as this one, in which the class could not have been certified prior to

the petition date given timing and in which the bar date could be tolled. *In re MF Glob.*, 512 B.R.

at 765 (quoting *In re Connaught Group, Ltd.*, 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013)).

25.    Here, each factor favors allowing the Committee to file a class claim.

**A.    The Class Claim Will Not Unduly Delay the Administration of These Chapter 11 Cases**

26.    Allowing the filing of the class claim will promote the efficient administration of

these chapter 11 cases and not result in undue delay.  Bankruptcy courts have authorized the filing

of class claims in cases that raised similar considerations.  For instance, in *In re MF Global*, former

employees of the debtor filed a class claim alleging that it had wrongfully withheld their vacation

pay. 512 B.R. at 760.  This Court allowed the claimants to proceed on their class claim because

class litigation would "result in the most expeditious administration of the estate," would avoid

unnecessary "multiplicity" in litigation over large numbers of individual claims, and also would

"not jeopardize the consummation of the plan." *Id.* at 764-65 n.5.  Likewise, in *In re Think Finance,

LLC*, creditors filed class claims alleging that the debtors "ran an illegal payday lending scheme

and charged an unlawful amount of interest to over one million consumer borrowers." 2018 WL

9801454, at *1 (Bankr. N.D. Tex. Aug. 30, 2018). The court permitted the class claims to proceed because "the more streamlined claims resolution process provided by the class claims" would promote the administration of the case by limiting claims allowance litigation and associated costs. *Id.* at *6. On the other hand, courts have denied motions to file class claims where class action litigation would "materially increase[e] the administrative costs of [an] already very expensive case," *In re Motors Liquidation Co.*, 447 B.R. 150, 165 (Bankr. S.D.N.Y. 2011), or "gum up the works of distributing the estate." *In re Ephedra Products Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005).

27.    Here, filing the class claim will promote the administration of these chapter 11 cases by avoiding the unnecessary litigation, distraction, and costs that would accompany the filing of individual non-contract claims. Over 600,000 account holders are creditors in these chapter 11 cases.[20] According to the Debtors, approximately 300,000 of those account holders have claims over $100.[21] Each of those account holders likely has similar non-contract claims against CNL and its affiliates based upon, among other things, Celsius and its agents' omissions and material misrepresentations about the risks associated with transferring digital assets to Celsius, including misrepresentations made to the public through YouTube videos, news stories, marketing materials, and other public statements.[22] Without the relief requested in this Motion, each of those 600,000

---

[20]    *Declaration in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] ¶ 49.

[21]    *Id.* ¶ 9.

[22]    In fact, certain individual account holders filed non-contract claims and the Debtors objected to those claims, asserting they did not plausibly plead non-contract claims and that account holders should not recover more than their account balances with the Debtors. *Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* [Docket No. 2105]; *Debtors' Objection to Proof of Claim No. 23959 of Rebecca Gallagher* [Docket No. 2106]; *Debtors' Objection to Proof of Claim No. 24480 of Daniel A. Frishberg* [Docket No. 2107]. The Committee should be permitted to assist account holders by filing the class claim and ensuring their non-contract claims are plausibly pled and preserved. The Committee is already participating in the negotiation of a schedule with respect to those bellwether claims objections and expects that the inclusion of a class proof of claim in the process will not elongate any litigation with respect to those claims objections.

account holders will have to file individual proofs of claim against CNL and its affiliates to recover on their non-contract claims arising from Celsius's misconduct.  If any creditors do not assert such claims by the Amended Bar Date, given the short period of time within which such creditors were expected to research, prepare, and file proofs of claim following entry of the Customer Claims Order, either because they do not know how to assert those claims or have the resources to prepare such materials, those who do successfully file claims by the Amended Bar Date will benefit disproportionately compared to those similarly situated creditors who do not.

28.     Forcing the filing of hundreds of thousands additional proofs of claim against the Debtors would also impose significant incremental costs on the Debtors' estates.  The Debtors will have to process (and potentially object to) those hundreds of thousands of claims, the costs of which will be passed onto the Debtors' estates and their creditors.  And the Debtors' advisors will have to review those claims for compliance with the Customer Claims Opinion and applicable law, again at great cost to the estates.  The expected deluge of claims will also likely lead to a tidal wave of claims allowance litigation that will distract the Debtors and their advisors from their principal obligation to negotiate and confirm a value-maximizing restructuring transaction. Granting the relief proposed in this Motion and permitting the Committee to file a class claim asserting non-contract claims common to all account holders, which all affected account holders will be able to join, will avoid many of those significant costs and distractions.  Under these circumstances, proceeding through the proposed class claim ***promotes***, rather than delays, the administration of these chapter 11 cases.

29.     Under this factor, some courts also examine the impact that filing a class claim will have on other creditors of the debtor.  *In re Motors Liquidation*, 447 B.R. at 166; *In re Think Fin.*, 2018 WL 9801454, at *6.  Here, the potential impact on other creditors is minimal and also weighs

in favor of filing the class claim. The Debtors have also reached important settlements with other creditor groups and permitting the Debtors' largest creditor constituency to file a single claim as a class, rather than hundreds of thousands of individual claims, would not impact those other creditors' ability to assert claims or pursue recoveries in any respect.

**B.**     <u>**The Notice Provided to Account Holders Supports the Filing of the Class Claim**</u>

30.     The second factor—whether members of the proposed class received notice of the Amended Bar Date—favors granting the Motion. While account holders may have received notice of the Amended Bar Date, they were only provided 32 days to file their non-contract claims against any affiliates of LLC. *See Affidavit of Service* [Docket No. 2351]. That limited period is insufficient in these cases because of the complexity of the issues involved, the fact that most account holders are *pro se*, and the impact that the Customer Claims Opinion had on account holders who previously were relying on the Debtors' schedules to preserve their claims against affiliates of LLC. All account holders simply have not had enough time to review the Customer Claims Opinion, obtain counsel to research and formulate their non-contract claims (or do so *pro se*), and file proofs of claim asserting such claims by the Amended Bar Date. At most, the limited notice period may have given sophisticated account holders with counsel enough time to assert their non-contract claims, but it would be unfair for this minority of account holders to obtain disproportionate recoveries in comparison to *pro se* account holders. *See In re Think Fin.*, 2018 WL 9801454, at *6 (approving filing class claim on behalf of consumer borrowers who might face difficulty determining if they "have a claim against the entity in bankruptcy, or what legal theory would support their claim"). In these circumstances, the notice factor does not preclude filing the class claim.

31.    In addition, in *MF Global*, this Court noted that the "notice factor should be given minimal weight" and has "limited utility" where the bar date can be tolled for members of the putative class.  *In re MF Glob.*, 512 B.R. at 764-65.  There the Court explained, "if the class representative files a timely adversary proceeding *or* class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims."  *Id.* (emphasis added).  "Furthermore," the Court continued, "class members are not required to show that they relied on the class adversary proceeding (or class proof of claim), and penalizing the class members for failing to file individual claims prior to the bar date would result in precisely the multiplicity of activity which Rule 23 was designed to avoid." *Id.*  Accordingly, if this Court adheres to its view that the bar date is tolled upon the filing of a class proof of claim, the notice factor does not weigh against authorizing the class claim here.

### C.    <u>No Class Could Have Been Certified Prepetition</u>

32.    The third factor—whether there was a class certified prepetition—also does not preclude filing the class claim.  Even though no class was certified prepetition,[23] the scope of the Debtors' fraud and other misconduct was only revealed postpetition as a result of the Committee's and Examiner's investigations.  The "issue of prepetition certification loses its relevance" when claimants could not "file a class action complaint and certify a class before the petition date."  *In re MF Glob.* 512 B.R. at 763; *see also In re Think Fin.*, 2018 WL 9801454, at *4 (permitting class claim where claimants "had little or no opportunity to seek classification prepetition"); *In re Kaiser Group Intern., Inc.*, 278 B.R. 58, 63 (Bankr. D. Del. 2002) (permitting class claim even without

---

[23]    An Account Holder filed a putative class action complaint against LLC, Celsius Lending LLC, Celsius KeyFi LLC, and certain directors and officers of the Debtors on July 13, 2022, the Debtors' petition date. *See Goines v. Celsius Network LLC, et. al*, No. 22-cv-4560 (D.N.J. July 13, 2022). While the complaint asserted certain non-contract claims, including claims for securities fraud and unjust enrichment, the putative class was never certified.

prepetition certification).  Because account holders did not have a reasonable opportunity to assert

their non-contract claims prepetition, it is appropriate to authorize the filing of the class claim here.

**D.**    **If the Court Permits the Filing of the Class Claim, Class Certification May Be Litigated on an Appropriate Schedule Prior to Confirmation**

33.    The Committee will file a motion for class certification, which will set forth in

detail the allegations supporting liability by the Debtors on account holders' non-contract claims

and why the requirements for class certification are met here.  If the Court authorizes the filing of

the class claim pursuant to Bankruptcy Rules 9014(c) and 7023, the class claim requirements can

be briefed quickly.  Indeed, the Debtors have indicated that they do not oppose the filing of a class

claim.  Once filed, the class claim can be litigated on an appropriate schedule in parallel with

confirmation of the Debtors' proposed plan of reorganization.  *See In re MF Glob.*, 512 B.R. at

768 (approving filing of class claim pursuant to Bankruptcy Rules 9014(c) and 7023 and directing

the class representatives to "file a motion for class certification as soon as practicable").

**II.**    **The Committee Is the Appropriate Fiduciary to File the Class Claim on Behalf of Account Holders But, in the Alternative, the Court Should Appoint a Non-Committee Fiduciary to Assert the Class Claim**

**A.**    **The Committee Is an Appropriate Fiduciary to File the Class Claim on Behalf of Account Holders**

34.    The Committee is a fiduciary to all unsecured creditors.  As such, it has a fiduciary

duty to maximize recoveries for the unsecured creditors that it represents.  *In re Refco Inc.*, 336

B.R. 187, 195 (Bankr. S.D.N.Y. 2006).  The Committee is also empowered to provide any

"services as are in the interest of those [unsecured creditors] represented." 11 U.S.C. § 1103(c)(5);

*see also* 7 COLLIER ON BANKRUPTCY ¶ 1103.05 ("Although section 1103(c) states that a committee

'may' exercise these powers, the members of a committee have a fiduciary duty to their

constituents and are *obligated* to exercise those powers as necessary to protect the interests of those

constituents") (emphasis added).  In light of its statutory mandate, the Committee believes that it

17

should not sit idly by and risk that these chapter 11 cases will be held up by the piecemeal resolution of hundreds of thousands of claims, or that a select few creditors will file claims to the detriment of hundreds of thousands of members of the Committee's constituency.

35.    Bankruptcy Rule 3001(b) permits any "creditor *or the creditor's authorized agent*" to file a proof of claim.  Fed. R. Bankr. P. 3001(b) (emphasis added).  A putative class representative becomes the authorized agent of members of the class once the bankruptcy court applies Bankruptcy Rule 7023 to the proposed class claim and certifies the class.  *See In re Musicland Holding Corp.*, 362 B.R. 644, 652 (Bankr. S.D.N.Y. 2007) ("if the court declines to apply Rule 23 to the proof of claim, the putative agent never obtains the requisite authority" to file the claim).  The Committee will provide appropriate notice and opt-out procedures regarding its class claim that will provide individual account holders (a) notice of the class claim, and (b) an opportunity to opt out of the class claim in favor of pursuing any non-contract claims they may have filed on their own.  *See Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (consent to agency may be implied); Restatement (Second) of Agency § 7 cmt. c ("manifestation" of consent to agency "may be made by words or other conduct, including acquiescence").  Under these circumstances, it is appropriate for the Committee to file the class claim (or other appropriate representative action) prior to the impending Amended Bar Date to ensure those claims are preserved for all account holders.

### B.    Alternatively, the Court Should Appoint a Non-Committee Fiduciary to Assert the Class Claim

36.    If the Court declines to authorize the Committee to file the class claim, it should appoint an independent and qualified third-party to act as a fiduciary to assert such a claim on behalf of account holders.

37.    In every chapter 11 case, "anyone holding a direct financial stake in the outcome of the case should have an opportunity to participate" and protect their rights.  *In re Matter of Xclaim Inc.*, 647 B.R. 269, 280 (Bankr. S.D.N.Y. 2022).   To that end, section 1109(b) of the Bankruptcy Code provides that any "party in interest," including any "creditor," "may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  But, in cases where a class of creditors may face difficulties asserting their claims and protecting their rights, courts have appointed third-party fiduciaries to act on their behalf.  *See, e.g., Kane v. Johns-Manville Corp.*, 843 F.2d 636, 645 n.5 (2d Cir. 1988) (recognizing that fiduciaries may be appointed to represent future claimants); *In re Cent. Brass Products, Inc.*, 795 F.2d 265, 275 (2d Cir. 1986) (appointing fiduciary to represent retirees); *In re Westmoreland Coal Co.*, No. 18-35672 (Bankr. S.D. Tex. Jan. 10, 2019) [Docket No. 1023] ¶ 4 (same).  Appointing a third-party fiduciary to vindicate creditors' interests, including by filing proofs of claim on their behalf, is appropriate where doing so is in the best interests of those creditors and the estate.  *In re Johns-Manville Corp.*, 36 B.R. 743, 749 & 759 n.7 (Bankr. S.D.N.Y. 1984).

38.    For the same reasons given above, that standard is met here.   The Debtors' customers currently have significant claims against the assets trapped on the Debtors' platform. Without a representative to protect their interests, many account holders will likely forfeit their non-contract claims, whether because they do not have counsel, are not actively monitoring these chapter 11 cases, cannot prepare a proof of claim in the limited time provided, or otherwise lack the wherewithal or ability to file their non-contract claims by the Amended Bar Date.  It is in their best interests to authorize a fiduciary to file and prosecute a class claim (or other representative action), ensuring that all account holders receive similar recoveries on non-contract claims they hold in common.  In addition, appointing a fiduciary is also in the estates' best interests, as the

fiduciary could channel litigation over the allowance of non-contract claims into a single proceeding, compared to a potentially elongated and value-destructive individualized claims resolution process. Accordingly, it is appropriate on the facts and circumstances of these chapter 11 cases for the Court to appoint a fiduciary to assert the non-contract class claim on behalf of all account holders (to the extent that the Court does not permit the filing of the class claim by the Committee).

## Motion Practice

39.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief herein is predicated and a discussion of their application to this Motion. Accordingly, the Committee submits that this Motion satisfies Local Rule 9013-1(a).

## Notice

40.    The Committee will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Debtors; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; (h) the Chapter 11 examiner; (i) counsel to the Series B Preferred Equity Group; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## Reservation of Rights

41.    The Committee reserves all of its rights to supplement or amend this Motion.

## Conclusion

42.    For the reasons set forth herein, the Committee respectfully requests that the Court enter the Proposed Order, authorizing the Committee and any specified lead claimant or claimants

to file the class claim or other representative action (as appropriate) asserting non-contract claims on behalf of account holders or appointing an independent, third-party fiduciary (identified by the Committee and approved by the Court) to file such class claim or other representative action (as appropriate) on behalf of account holders, and granting such other relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated:  April 10, 2023                    Respectfully submitted,
        New York, New York

                                          /s/ *Samuel P. Hershey*
                                          **WHITE & CASE LLP**
                                          David M. Turetsky
                                          Samuel P. Hershey
                                          1221 Avenue of the Americas
                                          New York, New York 10020
                                          Telephone: (212) 819-8200
                                          Facsimile:  (212) 354-8113
                                          Email: david.turetsky@whitecase.com
                                                  sam.hershey@whitecase.com

                                          – and –

                                          **WHITE & CASE LLP**
                                          Michael C. Andolina (admitted *pro hac vice*)
                                          Gregory F. Pesce (admitted *pro hac vice*)
                                          111 South Wacker Drive, Suite 5100
                                          Chicago, Illinois 60606
                                          Telephone: (312) 881-5400
                                          Facsimile:  (312) 881-5450
                                          Email:  mandolina@whitecase.com
                                                  gregory.pesce@whitecase.com

                                          – and –

                                          **WHITE & CASE LLP**
                                          Keith H. Wofford
                                          Southeast Financial Center
                                          200 South Biscayne Blvd., Suite 4900
                                          Miami, Florida 33131
                                          Telephone: (305) 371-2700
                                          Facsimile:  (305) 358-5744
                                          Email: kwofford@whitecase.com

                                          – and –

                                          **WHITE & CASE LLP**
                                          Aaron E. Colodny (admitted *pro hac vice*)
                                          555 South Flower Street, Suite 2700
                                          Los Angeles, California 90071
                                          Telephone: (213) 620-7700
                                          Facsimile:  (213) 452-2329
                                          Email:  aaron.colodny@whitecase.com

                                          *Counsel to the Official Committee of*
                                          *Unsecured Creditors*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### ORDER GRANTING THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I) FOR AUTHORITY TO FILE A CLASS CLAIM ASSERTING NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS OR (II) TO APPOINT A THIRD-PARTY FIDUCIARY TO ASSERT NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS

Upon the motion [Docket No. [●]] (the "**Motion**")[2] of the Committee for entry of an order

(this "**Order**") authorizing the Committee and any specified lead claimant or claimants to file the

class claim or other representative action (as appropriate) asserting non-contract claims of account

holders against the Debtors, all as more fully set forth in the Motion; and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of*

*Reference from the United States District Court for the Southern District of New York*, entered

February 1, 2012; and this Court having found that it may enter a final order consistent with Article

III of the United States Constitution and that this matter is a core matter pursuant to 28 U.S.C.

§ 157; and this Court having found that venue in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Motion.

found that the notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      The Motion is granted as set forth in this Order.

2.      Under Bankruptcy Rule 9014(c), Bankruptcy Rule 7023 shall apply in this matter. The Committee and any specified lead claimant or claimants are authorized to file a class proof of claim asserting non-contract claims on behalf of account holders against CNL and any other Debtor. The Committee shall serve this Order and its class claim on account holders by publication on the Committee's case website and by electronic mail.

3.      The Committee is directed to file a motion under Bankruptcy Rule 7023 for class certification of the class claim as soon as is practicable after the filing of such class claim. The Committee and other parties in interest shall meet and confer on a discovery and briefing schedule with respect to class certification, which schedule shall be subject to approval by this Court. To the extent the Court conducts a hearing on class certification, such hearing shall occur at or before any hearing in connection with confirmation of a proposed chapter 11 plan for the Debtors. For the avoidance of doubt, litigation regarding class certification shall not preclude or delay any litigation regarding the merits of the class claim.

4.      Nothing in this Order shall preclude the Committee from seeking any other relief or asserting any other claim or cause of action.

5.      The Committee is authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order in accordance with the Motion.

6.      This Court shall retain exclusive jurisdiction to hear and determine all matters

arising from the implementation of this Order.


Dated: _____          _____
New York, New York                          The Honorable Martin Glenn
                                            Chief United States Bankruptcy Judge