Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) ) ) ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | | Case No. 22-10964 (MG) |
| Debtors. | | (Jointly Administered) |

**DECLARATION OF CHRISTOPHER FERRARO,**
**INTERIM CHIEF EXECUTIVE OFFICER, CHIEF**
**RESTRUCTURING OFFICER, AND CHIEF FINANCIAL OFFICER**
**OF THE DEBTORS IN SUPPORT OF THE DEBTORS' MOTION FOR**
**ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT BY AND AMONG**
**THE DEBTORS AND ODETTE WOHLMAN AND (II) GRANTING RELATED RELIEF**

I, Christopher Ferraro, hereby declare under penalty of perjury that the following is true

and correct to the best of my knowledge, information, and belief:

1.      I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief

Financial Officer of Celsius Network LLC ("Celsius," and together with the above-captioned

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

debtors and debtors-in-possession, the "Debtors"). I joined Celsius on March 21, 2022. I was appointed as Chief Financial Officer on July 11, 2022, and I was appointed as interim Chief Executive Officer and Chief Restructuring Officer by the Special Committee of Debtor Celsius Network Limited ("Celsius Network") on September 27, 2022.

2.      I am familiar with the *Debtors' Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors and Odette Wohlman and (II) Granting Related Relief* [Docket No. 2331] (the "Motion")[2] and submit this declaration (this "Declaration") in support of thereof.

3.      In my capacity as the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and the ongoing restructuring efforts. Except as otherwise indicated, all facts in this Declaration are based upon (a) my personal knowledge of the Debtors' operations, (b) my discussions with other members of the Debtors' management team and advisors, and (c) my review of relevant documents and information concerning the Debtors' operations. I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

### Qualifications

4.      I have approximately two decades of experience in financial planning and analysis activities, asset and liability management, and product control. Before my roles with Celsius, I was a Senior Managing Director at Cerberus Operations & Advisory Company ("Cerberus"), where I focused on improving the operating returns for two legacy portfolio positions. In this role,

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

I advised the chief executive officer and leadership team on increasing profitability by changing and repricing business mix, restructuring costs, and optimizing the balance sheet.

5.      Prior to Cerberus, I served in various roles at JPMorgan Chase & Co. from 2001 to 2018.  I was the head of Financial Analysis and a Senior Leader, where I was responsible for all financial, planning, and analysis activities, developed analytical tools, and authored a patent application in forecasting.  Before my role as head of Financial Analysis and a Senior Leader, I was the Treasurer of the Consumer Bank and the Retail Loan Pricing Manager.

6.      I hold a Bachelor's degree in Economics, Finance, & Accounting from the University of Washington.  I also passed the Washington state Uniform Certified Public Accountant Examination.

### The Settlement

7.      The Settlement resolves the dispute between Celsius Network and its former employee Odette Wohlman ("Ms. Wohlman" and together with Celsius Network, the "Parties") regarding the alleged wrongful termination of Ms. Wohlman's employment with Celsius Network. The terms of the Settlement are memorialized in the Settlement Agreement, which provides that the Debtors will pay Ms. Wohlman a one-time payment of £85,000 without an admission of liability.  The Settlement resolves all outstanding disputes between the Parties and constitutes a full and final satisfaction of any and all existing and future claims brought by Ms. Wohlman against Celsius Network, its Group Members—including all of the Debtors in these chapter 11 cases—or any of its or their officers, employees, shareholders, consultants, or agents arising out of Ms. Wohlman's employment with Celsius Network and subsequent termination.

8.      I believe the Settlement is in the best interests of the Debtors, their estates, and their creditors, is a sound exercise of the Debtors' business judgment, resolves a significant dispute

between the Parties, and saves the Debtors the additional expense, resources, and distraction of further litigation with Ms. Wohlman.

9.      ***First***, the Settlement resolves significant disputes between the Parties.  I understand that continuing litigation with Ms. Wohlman could be lengthy and costly and would expend significant time that the Debtors could use towards charting a path to confirmation of a go-forward plan.   For example, the Parties have already spent approximately four months litigating Ms. Wohlman's claims in the Employment Tribunal, with an upcoming evidentiary hearing scheduled for July 2023.  We have estimated that continuing such litigation would cost the Debtors' estates approximately £100,000[3] in professionals' and court fees, in addition to any judgment that would be awarded to Ms. Wohlman if she prevailed, which could exceed £350,000. In contrast, the Settlement resolves Ms. Wohlman's claims in a consensual manner and provides certainty of recovery for Ms. Wohlman without the need for further litigation.  As such, I believe the Settlement represents a fair and consensual resolution and therefore is in the best interests of the Debtors' estates.

10.     ***Second***, I understand that the Settlement benefits the Debtors' stakeholders by eliminating the uncertainty regarding the outcome of the Employment Tribunal litigation and allowing management to concentrate its efforts on consummating a value-maximizing restructuring transaction.  The costs associated with any litigation would drain the Debtors' resources at this critical juncture of these chapter 11 cases.

11.     ***Third***, I understand that the Settlement is supported by the official committee of unsecured creditors (the "Committee").  As one of the non-Debtor parties with the most interest in

---

[3]   The Motion inadvertently stated that litigating Ms. Wohlman's claims would cost the Debtors' estates approximately $100,000 in professional and court fees instead of £100,000.

advocating for unsecured creditors in these chapter 11 cases, I believe the Committee's approval and acceptance of the Settlement is a strong indication that the Settlement is fair and equitable.

12.    *Fourth*, I understand that the releases granted by the Settlement are mutual, narrow in scope, and essential to the Settlement. I believe that the releases granted by the Parties in the Settlement are a necessary component of the Settlement and appropriate under the circumstances.

13.    *Fifth*, the Settlement arises out of good faith, arm's-length negotiations between the Parties. The Parties reached consensus on the settlement terms embodied in the Settlement Agreement after several weeks of negotiations as Ms. Wohlman's complaint was pending in the Employment Tribunal. The Parties exchanged multiple drafts before agreeing to the terms set forth in the Settlement Agreement. I believe the Settlement represents a favorable outcome for the Debtors at the culmination of protracted but successful arm's-length negotiations.

## Conclusion

14.    In light of the foregoing, I believe that the Settlement is a reasonable compromise of the outstanding disputes between the Debtors and Ms. Wohlman, which will inure to the benefit of all parties in interest. In my opinion, the Settlement is fair, equitable, in the best interest of the Debtors' estates, and will allow the Debtors' management to concentrate its efforts on consummating a value-maximizing restructuring transaction.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  April 13, 2023

_/s/ Christopher Ferraro_
Name:   Christopher Ferraro
Title:     Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network LLC