AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
John P. Kane
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**SECOND INTERIM FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS
SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
<u>PERIOD NOVEMBER 1, 2022 THROUGH AND INCLUDING FEBRUARY 28, 2023</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin") |
| Authorized to Provide Services to: | Debtors and Debtors in Possession |
| Petition Date: | July 13, 2022 |
| Retention Date: | September 16, 2022, *nunc pro tunc* to July 13, 2022 |
| Prior Applications: | 1 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | November 1, 2022 through and including February 28, 2023 (the "Compensation Period") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $4,884,132.60 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $61,571.97 |
| Total Compensation and Expenses Requested for the Compensation Period: | $4,945,704.57 |

| Summary of Fees, Professionals, Rates and Budget in this Application | |
|---|---|
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order[2] But Not Yet Allowed (80% of Fees): | $3,107,840.40 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses): | $51,389.61 |

---

[2] "Interim Compensation Order" means that certain *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief, dated December 19, 2022* [Docket No. 1745].

| | |
|---|---|
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $3,159,230.01 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $1,786,474.56 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $256,088.76[3] |

| **Summary of Fees and Expenses Sought in this Application** | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $1,072.95 |
| Blended Rate in this Application for All Timekeepers: | $1,051.48 |
| Number of Timekeepers Included in this Application: | 21 (16 attorneys; 5 paraprofessional) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 0 |
| Increase in Rates Since Date of Retention: | 1[4] |
| Interim or Final Application: | Interim |

---

[3]    Akin agreed to bill its time at 90% of its standard rates. In addition, Akin voluntarily reduced its fees and expenses prior to the filing of each applicable Monthly Fee Statement (defined herein). The aggregated amounts of such voluntary reductions were: (i) $236,300.40 for fee reductions and (ii) $28,047.49 for expense reductions.

[4]    In the Akin Retention Application, Akin disclosed that its hourly rates are subject to periodic adjustments (typically on January 1st of each year). Pursuant to the Initial Retention Order (defined herein), on December 15, 2022, Akin filed a notice of rate increase [Docket No. 1708], disclosing Akin's rate increases that went into effect on January 1, 2023.

## SUMMARY OF MONTHLY FEE STATEMENTS

| FEE STATEMENT | DATE FILED | DOCKET NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|---|
| Fourth Monthly Fee Statement | 1/20/2023 | 1896 | 11/1/2022 – 11/30/2022 | $877,515.84 (80% of $1,096,894.80) | $12,023.62 | $877,515.84 | $12,023.62 |
| Fifth Monthly Fee Statement | 2/21/2023 | 2114 | 12/1/2022 – 12/31/2022 | $965,106.72 (80% of $1,206,383.40) | $14,857.55 | $965,106.72 | $14,857.55 |
| Sixth Monthly Fee Statement | 3/21/2023 | 2289 | 1/01/2023 – 1/31/2023 | $1,265,217.84 (80% of $1,581,522.30) | $24,508.44 | $1,265,217.84 | $24,508.44 |
| Seventh Monthly Fee Statement | 4/13/2023 | 2420 | 2/01/2023 – 2/28/2023 | $799,465.68 (80% of $999,332.10) | $10,182.36 | $0.00 Objections due 4/27/2023, 12:00 p.m. ET | $0.00 Objections due 4/27/2023, 12:00 p.m. ET |

Summary of Any Objections to Monthly Fee Statements:  On February 2, 2023, *pro se* creditor Daniel A. Frishberg filed an omnibus objection to the monthly fee statements of several retained professionals [Docket No. 1977], including Akin's Fourth Monthly Fee Statement (defined herein).  Mr. Frishberg, however, did not identify any specific objection to Akin's fees.  Pursuant to the Interim Compensation Order, only the Monthly Fee Statement Recipients may object to the monthly fee statements served by Retained Professionals (each as defined in the Interim Compensation Order).  *See* Interim Compensation Order at ¶ 3.d.  Mr. Frishberg does not fall within the definition of Monthly Fee Statement Recipients.  All parties will have an opportunity to review and object to the Retained Professionals' second interim fee applications.

Compensation and Expenses Sought in This Application Not Yet Paid:  $1,786,474.56

## COMPENSATION BY PROFESSIONAL
## NOVEMBER 1, 2022 THROUGH AND INCLUDING FEBRUARY 28, 2023

| Name of Professional | Position | Department | Year Admitted | 2022 Hourly Billing Rate | 2023 Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Dean L. Chapman | Partner | Litigation | 2009 | $1,260.00[1] | $1,552.50 | 595.60 | $842,037.75 |
| Mitchell P. Hurley | Partner | Litigation | 1997 | $1,597.50 | $1,795.50 | 553.60 | $931,896.00 |
| Elizabeth Scott | Partner | Litigation | 2007 | $1,120.50 | $1,278.00 | 393.00 | $470,754.00 |
| Sarah K. Withers | Partner | Corporate | 2014 | N/A | $1,224.00 | 6.10 | $7,466.40 |
| Joanna F. Newdeck | Senior Counsel | Financial Restructuring | 2005 | $1,170.00 | $1,350.00 | 134.30 | $168,219.00 |
| Braden Allman | Counsel | Litigation | 2018 | N/A | $1,008.00 | 48.90 | $49,291.20 |
| Nathaniel B. Botwinick | Counsel | Litigation | 2017 | $949.50 | N/A | 28.70 | $27,250.65 |
| Kristen W. Chin | Counsel | Litigation | 2015 | $981.00 | N/A | 33.30 | $32,667.30 |
| Nicholas R. Lombardi | Counsel | Litigation | 2018 | N/A | $1,188.00 | 74.70 | $88,743.60 |
| Jessica Mannon | Counsel | Litigation | 2017 | N/A | $1,008.00 | 368.10 | $371,044.80 |
| Heather L. Peckham | Counsel | Litigation | 2000 | $985.50 | $1,111.50 | 360.80 | $395,434.80 |
| Sarah K. Withers | Counsel[2] | Corporate | 2014 | $963.00 | N/A | 11.60 | $11,170.80 |
| Braden Allman | Associate[3] | Litigation | 2018 | $846.00 | N/A | 161.00 | $136,206.00 |
| Richard A. Cochrane | Associate | Litigation | 2019 | $697.50 | $891.00 | 275.60 | $236,542.50 |
| Patrick Glackin | Associate | Litigation | 2019 | $832.50 | N/A | 31.60 | $26,307.00 |
| Jillian R. Kulikowski | Associate | Litigation | 2019 | $832.50 | N/A | 209.90 | $174,741.75 |

[1]   All rates reflect a 10% discount off of Akin's standard rates.

[2]   Sarah Withers was promoted to the position of Partner, effective as of January 2023. Accordingly, the time Ms. Withers billed during November and December of 2022, as Counsel, is listed apart from the time that she billed during January and February 2023, as Partner.

[3]   Braden Allman was promoted to the position of Counsel, effective as of January 2023. Accordingly, the time Mr. Allman billed during November and December of 2022, as Associate, is listed apart from the time that she billed during January and February 2023, as Counsel.

| Name of Professional | Position | Department | Year Admitted | 2022 Hourly Billing Rate | 2023 Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Jessica Mannon | Associate[4] | Litigation | 2017 | $846.00 | N/A | 497.00 | $420,462.00 |
| Michael Stanley | Associate | Litigation | 2022 | $544.50 | $661.50 | 645.70 | $388,157.85 |
| Kaila Zaharis | Associate | Financial Restructuring | 2022 | $639.00 | $787.50 | 65.10 | $44,108.55 |
| Frank J. Castro | Paralegal | Labor | N/A | $360.00 | $391.50 | 49.90 | $18,354.60 |
| Julie Hunter | Project Coordinator | E-Discovery | N/A | N/A | $409.50 | 5.30 | $2,170.35 |
| Amy Laaraj | Paralegal | Financial Restructuring | N/A | $427.50 | $459.00 | 75.50 | $34,178.85 |
| Jennifer Langmack | Paralegal | Litigation | N/A | N/A | $391.50 | 10.00 | $3,915.00 |
| Frank Racanati | Specialist | Trial Services | N/A | N/A | $310.50 | 9.70 | $3,011.85 |

**TOTAL FEES**

**NOVEMBER 1, 2022 THROUGH AND INCLUDING FEBRUARY 28, 2023**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,454.60 | 1,548.30 | $2,252,154.15 |
| Senior Counsel / Counsel | $1,078.67 | 1,060.40 | $1,143,822.15 |
| Associates | $756.42 | 1,885.90 | $1,426,525.65 |
| Paraprofessionals and Other Non-Legal Staff | $409.78 | 150.40 | $61,630.65 |
| **Blended Attorney Rate** | **$1,072.95** | | |
| **Blended Rate for All Timekeepers** | **$1,051.48** | | |
| **Total Fees Incurred** | | **$4,884,132.60** | **4,645.00** |

---

[4]    Jessica Mannon was promoted to the position of Counsel, effective as of January 2023. Accordingly, the time Ms. Mannon billed during November and December of 2022, as Associate, is listed apart from the time that she billed during January and February 2023, as Counsel.

## COMPENSATION BY PROJECT CATEGORY
### NOVEMBER 1, 2022 THROUGH AND INCLUDING FEBRUARY 28, 2023

| Task Code | Matter | Hours | Value ($) |
|---|---|---|---|
| 2 | Akin Gump Monthly and Interim Fee Applications | 159.30 | $166,150.35 |
| 3 | Retention of Professionals | 66.50 | $56,670.30 |
| 4 | Case Administration | 77.00 | $74,690.55 |
| 5 | Stone/KeyFi | 3,572.30 | $3,717,612.45 |
| 6 | Prime Trust | 169.90 | $181,857.15 |
| 8 | Hearings | 17.40 | $24,958.80 |
| 9 | Rhodium | 70.40 | $89,760.15 |
| 10 | Voyager Digital | 497.60 | $557,105.85 |
| 11 | Travel Time | 14.60 | $15,327.00 |
| **TOTAL:** | | **4,645.00** | **$4,884,132.60** |

## EXPENSE SUMMARY
## NOVEMBER 1, 2022 THROUGH AND INCLUDING FEBRUARY 28, 2023

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $1,221.50 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $15,237.18 |
| Computerized Legal Research - Westlaw - Out of Contract | $196.14 |
| Computerized Legal Research - Courtlink - In Contract 50% Discount | $1,139.45 |
| Computerized Legal Research - Other | $123.34 |
| Color Copy | $2,408.70 |
| Contact Labor - Attorney | $5,850.00 |
| Courier Service / Messenger Services - Off Site | $1,543.95 |
| Document Retrieval | $34.00 |
| Duplication - In House | $3,145.40 |
| Filing Fees | $200.00 |
| Meals - Overtime | $200.00 |
| Meals - Business | $672.35 |
| Meals - In House Catered | $232.82 |
| Postage | $39.25 |
| Professional Fees - Legal | $12,033.76 |
| Professional Fees - Misc. | $1,001.40 |
| Professional Fees - Process Server | $2,708.50 |
| Research | $205.43 |
| Telephone - Long Distance | $280.00 |
| Transcripts | $3,771.98 |
| Travel - Airfare | $2,102.35 |
| Travel - Ground Transportation | $1,563.66 |
| Travel - Incidentals - Out of Town Travel | $216.00 |
| Travel - Lodging (Hotel, Apt, Other) | $4,317.23 |
| Travel - Telephone & Fax | $8.00 |
| Local Transportation - Overtime | $1,119.58 |
| **Total:** | **$61,571.97** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
John P. Kane
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[5] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**SECOND INTERIM FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS**
**SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR**
**SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD NOVEMBER 1, 2022 THROUGH AND INCLUDING FEBRUARY 28, 2023**

Akin Gump Strauss Hauer & Feld LLP ("Akin"), special litigation counsel to the debtors

and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(the "Chapter 11 Cases"), hereby submits its first application (the "Application"), pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the

Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), requesting

---

[5] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

interim allowance of compensation for services rendered to the Debtors for the period November 1, 2022 through and including February 28, 2022 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith. In support of this Application, Akin submits the declaration of Mitchell P. Hurley, a partner at Akin, which declaration is attached hereto as **Exhibit A** and incorporated by reference into this Application. In further support of this Application, Akin respectfully represents as follows:

## INTRODUCTION

1. By this Application, Akin seeks (i) interim allowance of compensation for the professional services rendered by Akin during the Compensation Period in the amount of $4,884,132.60, representing 4,494.60 hours of professional services and 150.40 hours of paraprofessional and other non-legal services and (ii) reimbursement of actual and necessary expenses incurred by Akin during the Compensation Period in the amount of $61,571.97.

2. This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief, dated December 19, 2022* [Docket No. 1745] (the "Interim Compensation Order"), the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York* (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the *United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      In accordance with Local Rule 2016-1, the Debtors have been given the opportunity to review this Application and have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-1.

## BACKGROUND

A.      **The Debtors' Chapter 11 Cases**

7.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these Chapter 11 Cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "Mashinsky First Day Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").[6]

8.      On August 17, 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order (i) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (ii) Granting Related Relief* [Docket No. 521].

---

[6]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky First Day Declaration or the Application (defined herein), as applicable.

**B.      Retention of Akin as Special Litigation Counsel**

9.       On August 8, 2022, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 392] (the "Initial Retention Application").  On August 31, 2022, Akin filed the supplemental declaration of Mitchell P. Hurley in further support of the Initial Retention Application [Docket No. 649].

10.      On September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 843] (the "Initial Retention Order").

11.      On November 11, 2022, the Debtors filed and served the *Notice of Proposed Additional Services, Effective as of October 14, 2022, With Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1330] (the "Notice of Additional Services") in accordance with the Initial Retention Order.  On November 30, 2022, the Court entered an order approving the Notice of Additional Services [Docket No. 1521] (the "Additional Services Order"). On January 10, 2023, at the request of the United States Trustee, the Debtors filed and served the *Supplemental Declaration of Mitchell Hurley Regarding the Notice of Proposed Additional Services, Effective as of October 14, 2022, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP, as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1847] in support of the Notice of Additional Services.

12.      On March 31, 2023, the Debtors filed and served the *Second Notice of Proposed Additional Services, Effective as March 15, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and*

*Debtors in Possession* [Docket No. 2290] (the "Second Notice of Additional Services") in accordance with the Initial Retention Application (together with the Initial Retention Application and the Notice of Additional Services, the "Akin Retention Application").  On April 7, 2023, the Court entered an order approving the Second Notice of Additional Services [Docket No. 2385] (together with the Initial Retention Order and Additional Services Order, the "Retention Order").

13.    The Retention Order authorizes the Debtors to retain and employ Akin as its special litigation counsel in the Chapter 11 Cases in accordance with Akin's normal hourly rates – subject to an agreed-upon 10% discount on its standard billing rates for all timekeepers – and disbursement policies, as of the Petition Date, as contemplated by the Akin Retention Application.  Specifically, the Retention Order authorizes Akin to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.  This Application is Akin's second interim application for compensation and reimbursement of expenses.

**C.    Prior Fee Statements Filed During the Compensation Period**

14.    On December 15, 2022, Akin filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period July 13, 2022 Through and Including October 31, 2022* [Docket No. 1707] (the "First Interim Fee Application").  Pursuant to the First Interim Fee Application, Akin requested interim allowance of fees in the amount of $2,322,174.60 and reimbursement of expenses in the amount of $107,347.68 for the period of July 13, 2022 through and including October 31, 2022.  On January 4, 2023, *pro se* creditor Daniel A. Frishberg filed an omnibus objection (the "First Objection") [Docket No. 1823] to the interim fee applications of substantially all of the professionals whose fees are paid for by the Debtors' estates, including the Akin First Interim Fee Application, though Mr. Frishberg did not identify any objection specific to Akin's fees.  In addition, on April 7, 2023, the fee examiner appointed in these Chapter 11 Cases (the "Fee

Examiner") filed *Fee Examiner's Summary Report on Fee Review Process and First Interim Fee Applications Scheduled for Uncontested Hearing on April 18, 2023* (the "Fee Examiner Report") [Docket No. 2387]. As noted in the Fee Examiner Report, Akin agreed to certain reductions in connection with the fees ($58,326.86) and expenses ($33,386.46) requested in the First Interim Fee Application. Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved. A hearing on the First Interim Fee Application is scheduled for April 18, 2023.

15.    On January 20, 2023, Akin filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of November 1 through November 30, 2022* [Docket No. 1896] (the "Fourth Monthly Fee Statement"),[7] pursuant to which Akin sought payment of (i) $877,515.84 (80% of $1,096,894.80) as compensation for professional services rendered and (ii) $12,023.62 for reimbursement of expenses. Akin did not receive any objections to the Fourth Monthly Fee Statement and received payment in respect thereof on February 10, 2023.[8]

16.    On February 21, 2023, Akin filed and served the *Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of December 1, 2022 Through December 31, 2022* [Docket No. 2114] (the "Fifth Monthly Fee Statement"),[9] pursuant to which Akin sought payment of (i) $965,106.72 (80% of $1,206,383.40) as compensation for professional services rendered and (ii) $14,857.55 for reimbursement of

---

[7]    A copy of the Fourth Monthly Fee Statement can be accessed at:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174901202380000000132.pdf.

[8]    On February 2, 2023, Mr. Frishberg filed an omnibus objection to the monthly fee statements of several retained professionals [Docket No. 1977], including Akin's Fourth Monthly Fee Statement. Pursuant to the Interim Compensation Order, only the Monthly Fee Statement Recipients may object to the monthly fee statements served by Retained Professionals (each as defined in the Interim Compensation Order). *See Interim Compensation Order* at ¶ 3.d. Mr. Frishberg does not fall within the definition of Monthly Fee Statement Recipients. All parties will have an opportunity to review and object to the Retained Professionals' second interim fee applications.

[9]    A copy of the Fifth Monthly Fee Statement can be accessed at:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902212380000000162.pdf.

expenses.  Akin did not receive any objections to the Fifth Monthly Fee Statement and received

payment in respect thereof on March 10, 2023.

17.     On March 21, 2023, Akin filed and served the *Sixth Monthly Fee Statement of Akin
Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of
Expenses as Special Litigation Counsel to the Debtors for the Period of January 1, 2023 Through
January 31, 2023* [Docket No. 2289] (the "Sixth Monthly Fee Statement") pursuant to which Akin

sought payment of (i) $1,265,217.84 (80% of $1,581,522.30)[10] as compensation for professional

services rendered and (ii) $24,508.44 for reimbursement of expenses.  Akin did not receive any

objections to the Sixth Monthly Fee Statement and received payment in respect thereof on April

6, 2023.

18.     On April 13, 2023, Akin filed and served the *Seventh Monthly Fee Statement of
Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and
Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of
February 1, 2023 Through February 28, 2023* [Docket No. 2420] (the "Seventh Monthly Fee

Statement" and, together with the Fourth Monthly Fee Statement, Fifth Monthly Fee Statement

and the Sixth Monthly Fee Statement, the "Monthly Fee Statements"),[11] pursuant to which Akin

sought payment of (i) $799,465.68 (80% of $999,332.10) as compensation for professional

services rendered and (ii) $10,182.36 for reimbursement of expenses.  As of the date of this

Application, Akin has not received any objections to the Seventh Monthly Fee Statement.

### SUMMARY OF PROFESSIONAL COMPENSATION
### AND REIMBURSEMENT OF EXPENSES REQUESTED

19.     By this Application, Akin requests allowance of interim compensation for

professional services rendered during the Compensation Period in the amount of $4,884,132.60

---

[10]   A copy of the Sixth Monthly Fee Statement can be accessed at:
       https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903212380000000188.pdf.
[11]   A copy of the Seventh Monthly Fee Statement can be accessed at:
       https://cases.stretto.com/public/x191/11749/PLEADINGS/1174904132380000000153.pdf.

and expense reimbursements of $61,571.97.[12]  During the Compensation Period, Akin attorneys and paraprofessionals expended a total of 4,645.00 hours for which compensation is sought.

20.    The fees charged by Akin in the Chapter 11 Cases are billed in accordance with Akin's existing billing rates and procedures in effect during the Compensation Period.  The rates Akin charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters, subject to an agreed-upon 10% discount on its standard rates for all timekeepers.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

21.    Akin maintains computerized records of the time spent by all Akin professionals and paraprofessionals in connection with the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of compensation by task code against budgeted hours and fees for the Compensation Period is attached hereto in **Exhibit D**.  The itemized time records for Akin professionals and paraprofessionals performing services during the Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

22.    Akin also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

---

[12]    Akin voluntarily reduced its fees and expenses prior to the filing of each applicable Monthly Fee Statement.  The aggregated amounts of such voluntary reductions were: (i) $236,300.40 for fee reductions and (ii) $19,788.36 for expense reductions. For the avoidance of doubt, these voluntary reductions do not include the aggregated fee reduction resulting from the agreed-upon 10% discount.

23.     Akin's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

**SUMMARY OF SERVICES PERFORMED BY**
**AKIN DURING THE COMPENSATION PERIOD**

24.     The services provided by Akin during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Debtors and commensurate with the complexity and significance of the Specified Litigation Matters and the Additional Matters (together, the "Litigation Matters").  The variety and complexity of the Litigation Matters and the need to act or respond to such issues on an expedited basis during the Compensation Period required the expenditure of significant time by Akin professionals and paraprofessionals from numerous legal disciplines.

25.     The following is a summary of the professional services rendered by Akin during the Compensation Period.  This summary is organized in accordance with Akin's internal system of task codes established in connection with Akin's retention based on the Fee Guidelines.   In classifying services into task codes, Akin attempted to place the services performed in the category that most closely related to the services provided.

26.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered, as well as to identify certain of the matters and issues that Akin was required to address during the Compensation Period.

A.     **Akin Monthly and Interim Fee Applications (Task Code 2)**

| Total Hours | Fees |
|---|---|
| 159.30 | $166,150.35 |

27.     This category includes time spent by Akin attorneys and paraprofessionals in connection with the preparation of Akin's Monthly Fee Statements and the First Interim Fee Application.  Akin attorneys expended significant time during the Compensation Period reviewing Akin's monthly invoices in order to protect privileged and confidential information and to ensure

14

accuracy and compliance with the Interim Compensation Order, Local Rules and U.S. Trustee Guidelines. Pursuant to the Interim Compensation Order, each of the Monthly Fee Statements and this Application contain a list of individuals who rendered services to the Debtors during the relevant compensation period, information as to each individual's title, billing rate and hours worked and a comprehensive breakdown of the fees incurred and disbursements expended.

28.     In addition, this category includes time spent by Akin attorneys in connection with responding to, and successfully resolving, the *Fee Examiner's Confidential Letter Report on the First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period July 13, 2022 Through and Including October 31, 2022.*

**B.     Retention of Professionals (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 66.50 | $56,670.30 |

29.     This category includes time spent by Akin attorneys and paraprofessionals in connection with various retention matters. Specifically, during the Compensation Period, Akin spent time drafting and filing the *Notice of Proposed Additional Services, Effective as of October 14, 2022, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP, as Special Litigation Counsel to the Debtors and Debtors in Possession* [Docket No. 1330], on November 22, 2022 and a supplemental declaration in support thereof [Docket No. 1847], on January 24, 2023 (together, the "First Notice of Additional Services") with respect to the Rhodium Matter and the Voyager Matter (each as defined in the First Notice of Additional Services) and analyzing various issues with respect thereto. On November 30, 2022, the Court entered an order approving the Debtors' retention of Akin to perform the additional services set forth in the *First Notice of Additional Services* [Docket No. 1521]. Moreover, Akin attorneys spent time considering additional retention issues that, among other things, resulted in the filing of the *Notice*

*of Proposed Additional Services, Effective as of March 15, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP, as Special Litigation Counsel to the Debtors and Debtors in Possession* [Docket No. 2290] (the "Second Notice of Additional Services") with respect to the BlockFi Matter (as defined in the Second Notice of Additional Services).

30.    During the Compensation Period, Akin prepared and, on January 24, 2023, filed a second supplemental declaration in support of its retention application [Docket No. 1932] (the "Second Supplemental Declaration").  In connection therewith, Akin, among other things, submitted the names of additional parties in interest to its conflict databases and analyzed the results thereto, in connection with preparing the schedules to the Second Supplemental Declaration.

31.    The time spent by Akin attorneys and paraprofessionals in this category ensured that the Debtors were able to retain Akin to address certain additional litigation matters that have arisen during the course of the Chapter 11 Cases without undue delay, as well as adhere to their disclosure obligations under Bankruptcy Rule 2014(a).

**C.    Case Administration (Task Code 4)**

| Total Hours | Fees |
|:---:|:---:|
| 77.00 | $74,690.55 |

32.    This category includes time spent by Akin attorneys and paraprofessionals in connection with various case administration matters in furtherance of the Chapter 11 Cases. Specifically, during the Compensation Period, Akin, among other things, spent time:  (i) monitoring the Court's docket in the Chapter 11 Cases and circulating relevant filings to members of the Akin team; (ii) considering budget issues with respect to Akin's services; (iii) communicating with the Debtors' bankruptcy counsel with respect to general case issues; (iv) preparing, and filing, Akin's notice of rate increase [Docket No. 1708]; (v) reviewing and analyzing general case materials and pleadings, including those with respect to the examiner's

reports and certain deposition materials and (vi) performing other administrative tasks that enabled

Akin to represent the Debtors in the Chapter 11 Cases with respect to the Litigation Matters in an

efficient and cost effective manner.

33.     Akin's attention to the administrative matters reflected in this category enabled the

Akin team to function in a coordinated manner and avoid duplicating efforts with respect to various

work streams.

**D.      Stone/KeyFi (Task Code 5)**[13]

| Total Hours | Fees |
|:---:|:---:|
| 3,572.30 | $3,717,612.45 |

34.     This category includes time spent by Akin professionals engaged in connection

with the adversary proceeding styled, *Celsius Network Limited and Celsius Network LLC v. Jason*

*Stone and KeyFi, Inc.*, Adv. No. 22-01139 (MG), which was filed on August 23, 2022 (the "Stone

Adversary Proceeding").   As alleged in the Stone Adversary Proceeding, the Defendants were

provided with, but did not return, millions of Celsius coins collectively worth substantially in

excess of $100 million (or more), even at recent prices, and engaged in other conduct giving rise

to additional substantial liability.

35.     Prior to the Compensation Period, on October 13, 2022, Akin prepared and filed an

Amended Complaint against Jason Stone ("Stone") and KeyFi, Inc. ("KeyFi" and together with

Stone, the "Stone Defendants") pursuant to Bankruptcy Code section 542, which, among other

things, asserted claims for turnover, conversion, fraudulent representation, breach of fiduciary

duty, unjust enrichment, replevin and accounting, against one or both of the Stone Defendants.

*See generally* Adversary Complaint, *Celsius Network Limited and Celsius Network LLC v. Jason*

*Stone and KeyFi, Inc.*, Adv. No. 22-01139 (Bankr. S.D.N.Y. Aug. 23, 2022) [Adv. Pro. No. 10]

(the "Amended Stone Complaint").

---

[13]    Capitalized terms used in this Stone/KeyFi summary, but not otherwise defined herein, shall have the meanings
given to them in the Stone Adversary Proceeding (defined herein).

36.    Thereafter, during the Compensation Period and in connection with the Amended Stone Complaint, Akin attorneys engaged in initial discovery and case management efforts in coordination with the Stone Defendants' counsel, including (i) preparing and serving written discovery, including requests for documents and interrogatories; (ii) responding and objecting to written discovery served by the Stone Defendants and (iii) negotiating data collection efforts and search terms with the Stone Defendants.   Akin attorneys also spent time analyzing relevant background documents to respond to discovery and confer with the Stone Defendants.

37.    Moreover, during the Compensation Period, Akin attorneys engaged in extensive communications with counsel for the Stone Defendants, which included multiple calls and conferences as well as written communications.

38.    Further, on October 27, 2022, the Stone Defendants filed a motion to dismiss all claims alleged in the Amended Stone Complaint other than Celsius' claim for breach of fiduciary duty (the "Stone Motion to Dismiss") [Adv. Pro. No. 17] to which Akin subsequently analyzed and researched issues in connection therewith and began to draft a response.  The response to the Stone Motion to Dismiss ultimately was filed on November 28, 2022 [Adv. Pro. No. 31] and heard by the Court on December 5, 2022.  The Court indicated it would deny the Stone Motion to Dismiss [Adv. Pro. No. 47] in its entirety during the December 5, 2022 hearing, and issued a 28-page written opinion to that effect dated December 8, 2022.

39.    Moreover, critically, during the Compensation Period, Akin attorneys searched, collected and reviewed more than 30,000 documents from many Celsius custodians.  During the course of the review, Akin attorneys prepared certain analyses and chronologies for use in briefing and upcoming hearings, as well as in written discovery and depositions.  Akin attorneys also prepared and produced approximately 10,000 documents responsive to the Stone Defendants' discovery requests as part of plenary case discovery, and engaged in significant third-party discovery, including drafting, serving and negotiating responses to multiple third party subpoenas.

40.     Due to the nature of the activities alleged in the Stone Complaint, Akin attorneys engaged in extensive review of relevant records, communications and documents during the Compensation Period to determine what, if any, injunctive relief should be sought against the Stone Defendants to, among other things, preserve the status quo and preserve the possibility of obtaining and collecting a judgment following the conclusion of the action.  This work ultimately resulted in the filing of the *Motion of Plaintiffs for Preliminary Injunction Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure* [Adv. Pro. Nos. 20, 21] (the "Preliminary Injunction Motion"), on November 14, 2022.  In that regard, during the Compensation Period, Akin attorneys engaged in numerous calls and discussions with key individuals concerning the evidentiary basis for the Preliminary Injunction Motion, legal research and preparation of memoranda of law, witness declarations and other supporting materials.

41.     The Preliminary Injunction Motion originally was scheduled to be heard on December 5, 2022, and as of November 23, 2022, neither party had indicated any intention to take discovery in advance of the hearing.  During a status conference convened by the Court on November 23, 2022, the Court advised the Preliminary Injunction Motion would be heard in January, 2023, and in response to the Court's inquiry the Defendants indicated they wished to take some expedited discovery,  On December 16, 2022, the Bankruptcy Judge entered an Order [Adv. Pro. No. 51] governing the taking of depositions and limited discovery in advance of the hearing on the Preliminary Injunction Motion, which was eventually held on January 11 and 12, 2023 (the "Preliminary Injunction Hearing").  In connection with the expedited discovery requested during the November 23, 2022 conference, Akin attorneys collected, reviewed and produced thousands of documents in advance of the Preliminary Injunction Hearing and reviewed documents produced by the Stone Defendants on an expedited basis.  Akin attorneys engaged in extensive analysis and preparation to for the deposition of key witnesses and Defendant Stone, as well as the compilation of evidentiary materials and the preparation of witness declarations.

42.     In advance of the Preliminary Injunction Hearing, Akin attorneys engaged in multiple phone calls and correspondence with Defendants on a myriad of evidentiary issues and witness lists, including appearing before the Court on contested issues regarding the testimony of witnesses at the Preliminary Injunction Hearing.  During the Compensation Period, Akin attorneys developed an extensive trial strategy and created robust trial materials and exhibits for use in the Preliminary Injunction Hearing.  Akin attorneys appeared at the Preliminary Injunction Hearing on January 11 and 12, 2022 in support of the Preliminary Injunction Motion, seeking the freezing of assets in the Defendants' possession, custody or control.  Akin attorneys presented opening and closing statements and examined and cross-examined four witnesses.

43.     At the conclusion of closing arguments, the Court entered a temporary restraining order (the "Temporary Restraining Order") immediately freezing assets in the Defendants' possession, custody or control, and ordered the parties to submit an agreed written proposed stipulation and order memorializing the terms of the Temporary Restraining Order, which ultimately was entered on February 14, 2023 [Adv. Pro. No. 76].  In addition, at the conclusion of the Preliminary Injunction Hearing, the Court requested reciprocal post-trial briefing from the parties.  Akin attorneys engaged in intense review of additional documents and records, as well as witness interviews, which were incorporated when Akin attorneys drafted the post-trial brief ("Plaintiff's Post-Trial Brief") [Adv. Pro. No. 79], which was filed on February 16, 2023.  Akin attorneys analyzed, researched and incorporated issues raised by the Court during the Preliminary Injunction Hearing when drafting the Plaintiff's Post-Trial Brief.

44.     During the Compensation Period, Akin attorneys also analyzed and developed a robust strategy to respond to the Stone Defendants' post-trial brief [Adv. Pro. No. 78], which was filed on February 15, 2023, and began drafting a response thereto.

45.     Following numerous calls and discussions with the Stone Defendants, as well as the compilation of drafts by Akin attorneys, the parties entered into a *Joint Stipulation and Order*,

signed on February 28, 2023 (the "Stay Order") [Adv. Pro. No. 82], providing that certain deadlines be stayed for a period of sixty (60) days to permit the parties to ascertain the possibility of resolving the dispute out of Court by settlement.  Under the pendency of the Stay Order, Akin attorneys are focused on analyzing key evidence and documentation, including review of regular reports by the Stone Defendants and numerous conferences, in order to determine if a framework for any future resolution of this litigation may be identified.

E.    **Prime Trust (Task Code 6)**[14]

| Total Hours | Fees |
|---|---|
| 169.90 | $181,857.15 |

46.    During the Compensation Period, Akin negotiated, obtained final Court approval for, and received full payment on a settlement with Prime Trust, LLC ("Prime Trust"), resulting in Celsius getting substantially all of the relief it sought in connection with the adversary proceeding commenced by Akin on behalf of Celsius styled, *Celsius Network Limited and Celsius Network LLC v. Prime Trust, LLC*, Adversary Proceeding No. 22-01140, which was filed on August 23, 2022 (the "Prime Trust Adversary Proceeding" and, together with the Stone Adversary Proceeding, the "Adversary Proceedings").

47.    Akin professionals engaged in extensive negotiations with counsel for Prime Trust regarding the allegations in the Prime Trust Adversary Proceeding and related demand letters and other efforts to reach a consensual resolution of Celsius' claims.  In connection therewith, Akin attorneys held multiple calls and conferences and engaged in extensive correspondence with Prime Trust's counsel.  Through Akin's negotiations with counsel for Prime Trust, Prime Trust and Celsius were ultimately able to reach a resolution of the Prime Trust Adversary Proceeding, and Akin attorneys spent time during the Compensation Period preparing, revising and negotiating the *Stipulation to Settle and Discontinue Adversary Proceeding* [Adv. Pro. No. No. 13-2] (the

---

[14]    Capitalized terms used in this Prime Trust summary, but not otherwise defined herein, shall have the meanings given to them in the Prime Trust Adversary Proceeding (defined herein).

"Stipulation" or the "Prime Trust Settlement").  The Stipulation resulted in, among other things, the return to Celsius of crypto assets worth in excess of $20 million (at then-current prices).

48.    Following execution of the Stipulation, Akin attorneys prepared and, on November 14, 2022 filed, a *Motion to Approve the Settlement with Prime Trust, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Adv. Pro. No. 13] (the "9019 Motion"), as well as a proposed *Order Granting Motion to Approve Settlement with Prime Trust, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Adv. Pro. No. 13-1] (the "9019 Order"), including conducting research, analyzing various issues and coordinating with counsel for Prime Trust in connection with same.

49.    During the Compensation Period, Akin worked with Prime Trust and the Official Committee of Unsecured Creditors ("UCC") regarding the relief requested in the 9019 Motion, ultimately resolving any potential objection by the UCC with respect to the Prime Trust Settlement. In connection therewith, Akin attorneys held multiple calls and conferences and engaged in extensive correspondence with counsel for UCC and counsel for Prime Trust and prepared, revised and negotiated revisions to the Stipulation and the proposed 9019 Order.  Akin filed a *Notice of Amended Stipulation and Proposed Order Granting Motion to Approve Settlement with Prime Trust, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Adv. Pro. No. 18] on November 30, 2022.

50.    Akin prepared for and presented to the Court regarding the 9019 Motion during the Court's December 5, 2022 hearing.  The Court granted the 9019 Motion at the hearing and entered the *Order Granting Motion to Approve Settlement with Prime Trust, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Adv. Pro. No. 20] on December 6, 2022.

51.    Akin attorneys thereafter coordinated with counsel for Prime Trust regarding Prime Trust's transfer of the Subject Property to Celsius in accordance with the Stipulation, including preparing a detailed letter regarding Prime Trust's obligations under the 9019 Order.  Upon receipt

of the subject property from Prime Trust, Akin prepared and served a formal Confirmation of

Receipt of Transfer and prepared and filed *Plaintiffs' Notice of Voluntary Dismissal* [Adv. Pro.

No. 22] with respect to the Prime Trust Adversary Proceeding.  In accordance with the Stipulation,

Akin attorneys additionally prepared *a Notice to Celsius Users to Cease Deposits to Prime Trust*,

which enclosed a copy of the 9019 Order and Stipulation and was served on all potentially

impacted Celsius parties.

52.     Throughout the preparation and filing of the Stipulation, the 9019 Motion and

related filings and hearings, Akin attorneys worked closely with Celsius' other advisors and

internal legal team and communicated regularly with the special committee regarding the Prime

Trust Adversary Proceeding.

**F.     Hearings (Task Code 8)**

| Total Hours | Fees |
|---|---|
| 17.40 | $24,958.80 |

53.     This category includes time spent by Akin attorneys in connection with Court

hearings held during the Compensation Period, including omnibus hearings in the Chapter 11

Cases.  In light of Akin's role as special litigation counsel in these Chapter 11 Cases, Akin

attorneys, among other things (i) reviewed upcoming hearing agendas and kept apprised of issues

on connection therewith and (i) attended such hearings in order to stay apprised of information

that could be relevant with respect to general case matters and the Litigation Matters.

**G.     Rhodium (Task Code 9)**

| Total Hours | Fees |
|---|---|
| 70.40 | $89,760.15 |

54.     During the Compensation Period, Akin worked to preserve value for the Debtors'

and their creditors related to the Debtors' *Simple Agreement for Future Equity* ("SAFE") with

Rhodium Enterprises, Inc. ("Rhodium").   Rhodium recently announced a plan of merger

("Merger") with SilverSun Technologies, Inc. ("SilverSun"), as described in the SilverSun Form

8-K dated September 29, 2022.  In connection therewith, Akin attorneys researched issues concerning the Debtors' rights under the SAFE in light of the Merger.  Akin attorneys prepared legal memoranda and analyses regarding Celsius' rights under the SAFE.  In addition, on behalf of the Debtors, Akin has engaged with Rhodium and the UCC on these issues, including a potential settlement of matters raised by Akin in its correspondence on behalf of Celsius and diligence requests related to same.  These discussions are ongoing.

**H.      Voyager Digital (Task Code 10)**

| Total Hours | Fees |
|:---:|:---:|
| 497.60 | $557,105.85 |

55.      On November 5, 2022, Celsius asked Akin to act as conflicts counsel to Celsius in connection with transfers Celsius recently had identified during the 90 days prior to Celsius' bankruptcy filing by Voyager Digital Holdings, Inc. and its affiliated debtors (collectively, "Voyager"), entities which are presently involved in their own chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York (consolidated as Case No. 22-10943 (MEW), the "Voyager Bankruptcy Cases" and, such court, the "Voyager Bankruptcy Court").

56.      The primary work performed by Akin during the Compensation Period related to certain amounts withdrawn and/or transferred by Voyager from accounts it held at Celsius Network LLC ("Celsius") in the 90-day period prior to the commencement of these Chapter 11 Cases.  Beginning on and after Celsius' November 5, 2023 request, Akin reviewed written materials related to these withdrawals and interviewed Celsius personnel and advisors.  Ultimately, Akin determined a preference claim may exist against Voyager on account of these withdrawals,

but also learned that the bar date to file unsecured claims in the Voyager Bankruptcy Cases was October 3, 2022.[15]

57.     Akin promptly contacted Voyager's bankruptcy counsel to see whether a negotiated resolution of its claims could be reached.  Akin engaged with Voyager's initial conflicts counsel (Quinn Emanuel) as soon as it was available to discuss whether a settlement could be reached that would avoid motion practice that would be costly to both estates.  Later, Quinn advised that Voyager had engaged Paul Hastings to act as its conflict counsel with respect to the matter.  Akin sought to engage with Paul Hastings to seek a resolution of the matter, but still had not succeeded despite the passage of several weeks.

58.     Thus, Akin researched, drafted and filed a motion in the Voyager Bankruptcy Cases (the "Preference Motion") to (i) lift the automatic stay in the Voyager Bankruptcy Cases to allow Celsius to prosecute the preference action in these Chapter 11 Cases and (ii) permit Celsius to file a late claim in the Voyager Bankruptcy Cases on account of any judgment it may obtain in such preference action.

59.     Both Voyager and Voyager's official committee of unsecured creditors (the "Voyager UCC") opposed the Preference Motion and, in response, Akin researched, drafted and filed a reply in further support of the Preference Motion.  On January 24, 2023, the Voyager Bankruptcy Court conducted a hearing on the Preference Motion during which the Voyager UCC cross-examined each of Celsius' three witnesses, and the Voyager Bankruptcy Court heard argument.  The Voyager Bankruptcy Court ultimately denied the Preference Motion without prejudice to Celsius' right to re-file with additional evidence in support of a finding that Celsius' failure to file a claim by the October 3, 2022 Voyager bar date was the result of excusable neglect. Since that time, Akin has pursued settlement discussions with Voyager, though no settlement has

---

[15]   Celsius asked Akin to act as conflicts counsel with respect to Voyager on November 5, 2022, more than a month after the bar date ran.

been reached as of this time.  Recently was informed that Paul Hastings no longer will be acting as Voyager's conflicts counsel in connection with this matter, and that Voyager's new conflicts counsel, Arent Fox, will contact Akin to continue settlement discussions.

## **ACTUAL AND NECESSARY DISBURSEMENTS**

60.     Akin seeks allowance of reimbursement of expenses in the amount of $61,571.97 for expenses incurred during the Compensation Period in the course of providing professional services to the Debtors.  Akin's disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example, as it relates to computerized research, Akin believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain.  Other reimbursable expenses (whether the service is performed by Akin in-house or through a third-party vendor) include, but are not limited to, overtime meals, deliveries, court costs and filing fees, transcript fees, computerized research and overtime travel.

## **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

61.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]"  *See* 11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

62.     The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

63.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method."  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977)

27

have been adopted by most courts.[16] *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y.

1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-

13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir.

2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King

ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered

in determining a reasonable allowance of compensation").

       64.    Akin respectfully submits that a consideration of these factors should result in the

Court's allowance of the full compensation sought in this Application.

      a.  <u>Time and Labor Required</u>.  Akin billed a total of 4,494.60 hours of professional services and 150.40 hours of paraprofessional services during the Compensation Period.  Akin has taken care to ensure that the time spent by its professionals and paraprofessionals was actually necessary and appropriate to ensure adequate representation of the Debtors.  As evidenced by this Application, Akin attorneys and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period.  Akin's representation of the Debtors has required it to balance the need to provide quality services with the need to act quickly and represent the Debtors in the Litigation Matters in an effective, efficient and timely manner.  Akin submits that the hours spent were reasonable given the complexity of the Litigation Matters, the significant legal and business issues raised, the pleadings filed in the Adversary Proceedings and the obstacles faced by the Debtors with respect thereto.

      b.  <u>Novelty and Difficulty of the Questions</u>.  Akin tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex issues with respect to the Litigation Matters.  As further described herein, Akin's skilled teams assisted the Debtors in filing and prosecuting the Adversary Proceedings and otherwise assisting with the Litigation Matters.

      c.  <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin believes that its recognized experience and expertise with respect to, among other things, the Litigation Matters as well as general litigation matters, its ability to draw from highly experienced professionals in Akin's practice and its creative approach to issues has benefited the Debtors and their creditors.  Due to the nature and complexity of the legal issues presented with respect to the Litigation Matters, Akin was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy and litigation matters.

---

[16]   The factors articulated by the Fifth Circuit in *First Colonial*, were first articulated by the Fifth Circuit in *Johnson*, with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

d. **Preclusion of Other Employment by Applicant Due to Acceptance of the Engagement**. Due to the size of Akin's financial restructuring and litigation departments, Akin's representation of the Debtors as special litigation counsel did not preclude its acceptance of new clients, but the demands for immediate and substantive action with respect to the Litigation Matters imposed significant burdens on Akin professionals working concurrently on other matters.

e. **Customary Fee**. As set forth herein and in the Initial Retention Application, Akin agreed to provide a 10% discount to its standard billing rates for this engagement. With the exception of this 10% discount, the rates Akin charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin's fee structure also is equivalent to the fee structure used by Akin for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Except with respect to the 10% discount described herein, Akin's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f. **Whether the Fee is Fixed or Contingent**. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin increased the risk Akin was assuming by representing the Debtors in the Chapter 11 Cases. Despite this risk, Akin has achieved and will continue to strive for excellent and tangible results for the Debtors and the estates.

g. **Time Limitations Imposed by the Client or Other Circumstances**. During the Compensation Period, Akin was under time pressure with respect to certain of the Litigation Matters as it was in the best interests of the estates to reach court-approved settlements in the Adversary Proceedings and otherwise begin to pursue the other Litigation Matters expeditiously. Among other things, and as further described herein, (i) the Preference Motion in the Voyager Chapter 11 Cases and reply in support of the same were prepared on a highly expedited timeframe and only after Akin made considerable efforts to try and resolve the dispute without litigation and (ii) Akin prepared for, and completed, a two-day trial in the Stone Adversary Proceeding on its Preliminary Injunction Motion, including the review of thousands of documents, taking and defending three depositions, taking testimony from four trial witnesses and arguing the motion, over approximately six weeks.

h. **Amount Involved and Results Obtained**. Akin attorneys and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors. As

29

a result of its efforts during the Compensation Period, Akin was able to obtain significant positive results for the Debtors. Among other things, as more fully described herein, during the Compensation Period, Akin (i) obtained court approval of the Prime Trust Settlement, which resulted in the return of crypto assets worth in excess of $20 million (at recent prices), (ii) successfully obtained entry of the Temporary Restraining Order in the Stone Adversary Proceeding and, subsequently, put in place procedures to monitor, and prevent the further depletion of estates assets in connection therewith, (iii) worked to preserve value for the Debtors' estates related to the SAFE with Rhodium and (iv) diligently pursued Voyager matters, in each instance for the benefit of the Debtors and their creditors. Akin submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of the Debtors as more fully described herein.

i.  <u>Experience, Reputation and Ability of Attorneys</u>. Akin is a full-service law firm with extensive experience handling a broad range of legal issues in a wide range of industries. Further, Akin has extensive experience representing companies in litigation matters, both in and out of chapter 11 cases. Akin's experience enabled it to perform the services described herein competently and expeditiously.

j.  <u>"Undesirability" of the Cases</u>. This factor is not applicable to the Chapter 11 Cases.

k.  <u>Nature and Length of Professional Relationship</u>. This Court (i) entered the Initial Retention Order on September 16, 2022 authorizing the Debtors to employ Akin as special litigation counsel with respect to the Specified Litigation Matters, as of the Petition Date and (ii) on November 30, 2022, entered the order approving the Notice of Additional Services. In addition, since March 2021, Akin has performed legal work for Celsius Network and certain of its affiliates.

65.     For the reasons set forth above, the services rendered by Akin were necessary and beneficial to the Debtors and consistently performed in a timely manner. The compensation sought in this Application is reasonable in light of the value of such services to the Debtors, Akin's demonstrated skill and expertise in bankruptcy and litigation (as well as other areas of expertise relevant to the Litigation Matters) and the customary compensation charged by comparably skilled practitioners at Akin. Accordingly, Akin respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

66.     No agreement or understanding exists between Akin and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in

connection with the Chapter 11 Cases. No prior application has been made in this Court or in any

other court for the relief requested herein as it relates to the Compensation Period.

## **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

67. The following is provided in response to the request for additional information set

forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response: Yes, as set forth in the Initial Retention Application and herein, Akin agreed to provide a 10% discount to its standard billing rates for this engagement, which standard rates are consistent with (i) market rates for comparable services and (ii) the rates that Akin charges and will charge other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

**Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response: As further detailed on <u>Exhibit D</u> attached hereto, Akin did not exceed the total fees budgeted for the Compensation Period

**Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response: No.

**Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response: Yes. During the Compensation Period 159.30 hours and $166,150.35 in fees were billed to Task Code 2 (Akin Gump Monthly and Interim Fee Applications). As further described herein, the work billed in this category included, without limitation, time spent reviewing time records for compliance with the Fee Guidelines.

**Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response: See above.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Yes.  In the Akin Retention Application, Akin disclosed that its hourly rates are subject to periodic adjustments (typically on January 1st of each year).  Pursuant to the Initial Retention Order, on December 15, 2022, Akin filed a notice of rate increase [Docket No. 1708], disclosing Akin's rate increases that went into effect on January 1, 2023.

## RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

*[Reminder of page intentionally left blank.]*

## **CONCLUSION**

WHEREFORE, Akin respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $4,884,132.60 and expense reimbursement in the amount of $61,571.97; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: April 14, 2023
New York, New York

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  */s/ Mitchell P. Hurley*
     Mitchell P. Hurley
     Dean L. Chapman
     John P. Kane
     One Bryant Park
     New York, New York 10036
     Telephone: (212) 872-1000
     Facsimile: (212) 872-1002
     mhurley@akingump.com
     dchapman@akingump.com
     jkane@akingump.com

     *Special Litigation Counsel to the Debtors and Debtors*
     *in Possession*

## EXHIBIT A

**CERTIFICATION OF MITCHELL P. HURLEY**

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE SECOND
INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS
SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD NOVEMBER 1, 2022 THROUGH AND INCLUDING FEBRUARY 28, 2023**

I, Mitchell P. Hurley, hereby certify that:

1.        I am a partner with Akin,[2] with responsibility for the Litigation Matters in these Chapter 11 Cases.  Akin is special litigation counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.        In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.        In respect of section B.1 of the Local Guidelines, I certify that:

(a)        I have read the Application;

(b)        to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

(c)     the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin and generally accepted by Akin's clients, subject to the 10% discount that Akin has agreed to provide to the Debtors in connection with the Litigation Matters; and

(d)     in providing a reimbursable service, Akin does not make a profit on that service, whether the service is performed by Akin in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin has complied with those provisions requiring it to provide the Debtors with a statement of Akin's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors and the U.S. Trustee are each being provided with a copy of the Application.

Dated: New York, New York                    By:  _/s/ Mitchell P. Hurley_
April 14, 2023                                       Mitchell P. Hurley

## **EXHIBIT B**

### **CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY and Dallas Offices for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,311.55 | $1,454.60 |
| Senior Counsel and Counsel | $1,002.82 | $1,078.67 |
| Associate | $710.94 | $756.42 |
| Paraprofessionals and Other Non-Legal Staff | $343.36 | $409.78 |
| **All Timekeepers Aggregated** | **$971.29** | **$1,051.48** |

---

[1] Consistent with the U.S. Trustee Guidelines, this Exhibit B discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York and Dallas offices), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group. This data is based on information from a rolling 12-month period ending February 28, 2023.

## EXHIBIT C

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Year Admitted | 2022 Hourly Billing Rate | 2023 Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Dean L. Chapman | Partner | Litigation | 2009 | $1,260.00 | $1,552.50 | 595.60 | $842,037.75 |
| Mitchell P. Hurley | Partner | Litigation | 1997 | $1,597.50 | $1,795.50 | 553.60 | $931,896.00 |
| Elizabeth Scott | Partner | Litigation | 2007 | $1,120.50 | $1,278.00 | 393.00 | $470,754.00 |
| Sarah K. Withers | Partner | Corporate | 2014 | N/A | $1,224.00 | 6.10 | $7,466.40 |
| Joanna F. Newdeck | Senior Counsel | Financial Restructuring | 2005 | $1,170.00 | $1,350.00 | 134.30 | $168,219.00 |
| Braden Allman | Counsel | Litigation | 2018 | N/A | $1,008.00 | 48.90 | $49,291.20 |
| Nathaniel B. Botwinick | Counsel | Litigation | 2017 | $949.50 | N/A | 28.70 | $27,250.65 |
| Kristen W. Chin | Counsel | Litigation | 2015 | $981.00 | N/A | 33.30 | $32,667.30 |
| Nicholas R. Lombardi | Counsel | Litigation | 2018 | N/A | $1,188.00 | 74.70 | $88,743.00 |
| Jessica Mannon | Counsel | Litigation | 2017 | N/A | $1,008.00 | 368.10 | $371,044.80 |
| Heather L. Peckham | Counsel | Litigation | 2000 | $985.50 | $1,111.50 | 360.80 | $395,434.80 |
| Sarah K. Withers | Counsel[1] | Corporate | 2014 | $963.00 | N/A | 11.60 | $11,170.80 |
| Braden Allman | Associate[2] | Litigation | 2018 | $846.00 | N/A | 161.00 | $136,206.00 |
| Richard A. Cochrane | Associate | Litigation | 2019 | $697.50 | $891.00 | 275.60 | $236,542.50 |
| Patrick Glackin | Associate | Litigation | 2019 | $832.50 | N/A | 31.60 | $26,307.00 |
| Jillian R. Kulikowski | Associate | Litigation | 2019 | $832.50 | N/A | 209.90 | $174,741.75 |
| Jessica Mannon | Associate[3] | Litigation | 2017 | $846.00 | N/A | 497.00 | $420,462.00 |
| Michael Stanley | Associate | Litigation | 2022 | $544.50 | $661.50 | 645.70 | $388,157.85 |
| Kaila Zaharis | Associate | Financial Restructuring | 2022 | $639.00 | $787.50 | 65.10 | $44,108.55 |

[1]    Sarah Withers was promoted to the position of Partner, effective as of January 2023. Accordingly, the time Ms. Withers billed during November and December of 2022, as Counsel, is listed apart from the time that she billed during January and February 2023, as Partner.

[2]    Braden Allman was promoted to the position of Counsel, effective as of January 2023. Accordingly, the time Mr. Allman billed during November and December of 2022, as Associate, is listed apart from the time that she billed during January and February 2023, as Counsel.

[3]    Jessica Mannon was promoted to the position of Counsel, effective as of January 2023. Accordingly, the time Ms. Mannon billed during November and December of 2022, as Associate, is listed apart from the time that she billed during January and February 2023, as Counsel.

| Name of Professional | Position | Department | Year Admitted | 2022 Hourly Billing Rate | 2023 Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Frank J. Castro | Paralegal | Labor | N/A | $360.00 | $391.50 | 49.90 | $18,354.60 |
| Julie Hunter | Project Coordinator | E-Discovery | N/A | N/A | $409.50 | 5.30 | $2,170.35 |
| Amy Laaraj | Paralegal | Financial Restructuring | N/A | $427.50 | $459.00 | 75.50 | $34,178.85 |
| Jennifer Langmack | Paralegal | Litigation | N/A | N/A | $391.50 | 10.00 | $3,915.00 |
| Frank Racanati | Specialist | Trial Services | N/A | N/A | $310.50 | 9.70 | $3,011.85 |

# EXHIBIT D

**SUMMARY OF COMPENSATION BY TASK CODE
AGAINST BUDGETED HOURS AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | Akin Gump Monthly and Interim Fee Applications | 180.00 - 260.00 | $198,000.00 - $312,000.00 | 159.30 | $166,150.35 |
| 3 | Retention of Professionals | 30.00 - 80.00 | $33,000.00 - $96,000.00 | 66.50 | $56,670.30 |
| 4 | Case Administration | 40.00 - 140.00 | $44,000.00 - $154,000.00 | 77.00 | $74,690.55 |
| 5 | Stone/KeyFi | 3,000.00 - 3,750.00 | $3,435,000.00 - $4,220,000.00 | 3,572.30 | $3,717,612.45 |
| 6 | Prime Trust | 170.00 - 340.00 | $187,000.00 - $434,000.00 | 169.90 | $181,857.15 |
| 8 | Hearings | 20.00 - 60.00 | $22,000.00 - $66,000.00 | 17.40 | $24,958.80 |
| 9 | Rhodium | 145.00 - 280.00 | $159,500.00 - $347,500.00 | 70.40 | $89,760.15 |
| 10 | Voyager | 340.00 - 580.00 | $380,000.00 - $740,000.00 | 497.60 | $557,105.85 |
| 11 | Travel | N/A | N/A | 14.60 | $15,327.00 |
| **TOTAL** | | **3,925.00 – 5,490.00** | **$4,458,500.00 - $6,369,500.00** | **4,645.00** | **$4,884,132.60** |

Akin did not provide a separate task code estimate for travel time.  Notwithstanding the foregoing, as noted herein, the total fees sought for the Compensation Period are within the total budgeted amount.

## **EXHIBIT E**

## **SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $1,221.50 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $15,237.18 |
| Computerized Legal Research - Westlaw - Out of Contract | $196.14 |
| Computerized Legal Research - Courtlink - In Contract 50% Discount | $1,139.45 |
| Computerized Legal Research - Other | $123.34 |
| Color Copy | $2,408.70 |
| Contact Labor - Attorney | $5,850.00 |
| Courier Service / Messenger Services - Off Site | $1,543.95 |
| Document Retrieval | $34.00 |
| Duplication - In House | $3,145.40 |
| Filing Fees | $200.00 |
| Meals – Overtime | $200.00 |
| Meals - Business | $672.35 |
| Meals - In House Catered | $232.82 |
| Postage | $39.25 |
| Professional Fees - Legal | $12,033.76 |
| Professional Fees - Misc. | $1,001.40 |
| Professional Fees - Process Server | $2,708.50 |
| Research | $205.43 |
| Telephone - Long Distance | $280.00 |
| Transcripts | $3,771.98 |
| Travel - Airfare | $2,102.35 |
| Travel - Ground Transportation | $1,563.66 |
| Travel - Incidentals - Out of Town Travel | $216.00 |
| Travel - Lodging (Hotel, Apt, Other) | $4,317.23 |
| Travel - Telephone & Fax | $8.00 |
| Local Transportation - Overtime | $1,119.58 |
| **Total:** | **$61,571.97** |

# EXHIBIT F

## STAFFING PLAN

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate (with 10% discount) (2022) |
|---|---|---|
| Partner | 4 | $1,347.00 |
| Senior Counsel and Counsel | 6 | $1,012.00 |
| Associate | 10 | $784.00 |
| Paralegals & Non-Legal Staff | 2 | $394.00 |