Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF FILING OF REVISED PROPOSED
### ORDER (I) AUTHORIZING THE RETENTION AND
### EMPLOYMENT OF STOUT RISIUS ROSS, LLC AS VALUATION ADVISOR,
### EFFECTIVE AS OF FEBRUARY 21, 2023, AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that on March 28, 2023, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the *Debtors' Application for Entry of an*

*Order (I) Authorizing the Retention and Employment of Stout Risius Ross, LLC as Valuation*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Advisor, Effective as of February 21, 2023, and (II) Granting Related Relief* [Docket No. 2335] (the "Application").[2]

PLEASE TAKE FURTHER NOTICE that the Debtors hereby file a revised proposed *Order (I) Authorizing the Retention and Employment of Stout Risius Ross, LLC as Valuation Advisor, Effective as of February 21, 2023, and (II) Granting Related Relief* attached hereto as **Exhibit A** (the "Revised Proposed Order") reflecting comments the Debtors received from the United States Trustee for the Southern District of New York and the Official Committee of Unsecured Creditors.

PLEASE TAKE FURTHER NOTICE that a comparison between the Revised Proposed Order and the Order is attached hereto as **Exhibit B**.

PLEASE TAKE FURTHER NOTICE that copies of the Application, the Revised Proposed Order, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

New York, New York
Dated:  April 14, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:         joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:         patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## ORDER (I) AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF STOUT
## RISIUS ROSS, LLC AS VALUATION ADVISOR, EFFECTIVE
## AS OF FEBRUARY 21, 2023, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to retain and employ Stout Risius Ross, LLC ("Stout"), as the Debtors' valuation advisor, effective as of February 21, 2023, in accordance with the terms and conditions set forth in the Engagement Letter, a copy of which is attached as **Exhibit 1** hereto, and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

that Stout does not hold or represent an adverse interest to the Debtors or their estates and is

disinterested under 11 U.S.C. § 101(14); and this Court having found that the relief requested in

the Application is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and this Court having found that the Debtors' notice of the Application and opportunity

for a hearing thereon were appropriate under the circumstances and no other notice need be

provided; and this Court having reviewed the Application and having heard the statements in

support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Application and at the Hearing

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefore, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy

Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain

Stout, effective as of February 21, 2023, in accordance with the terms and conditions set forth in

the Application and Engagement Letter, as modified by this Order.

3.      Stout shall be compensated in accordance with sections 330 and 331 of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, this Order,

and any other applicable orders of this Court.

4.      The terms of the Engagement Letter, including without limitation, the

compensation provisions, are reasonable terms and conditions of employment and are hereby

approved.

5.      Consistent with, and subject to, the terms of the Engagement Letter and this Order, Stout is hereby authorized to perform the Services provided for in the Engagement Letter.

6.      Stout is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

7.      Stout shall file monthly statements, interim fee applications, and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of this Court and consistent with the proposed compensation set forth in the Engagement Letter.  Stout shall keep reasonably detailed time records in one-tenth of an hour increments in accordance with the U.S. Trustee Guidelines and will submit, with any monthly fee statements, and interim and final fee applications, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered, and the total amount of compensation requested by Stout.

8.      Prior to any increases in Stout's hourly rates pertaining to the Debtors, Stout shall file a supplemental declaration with this Court, and provide ten business days' notice to the Debtors and the U.S. Trustee, any official committee, and the Fee Examiner.  The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in Section 330 of the Bankruptcy Code.

3

9.      Notwithstanding anything to the contrary in the Application or the Engagement Letter, Stout shall not seek nor shall Stout be entitled to reimbursement for fees and expenses of its counsel incurred in connection with any objection to its fees or defending any of its fee applications in these chapter 11 cases.  In the event that, during the pendency of these cases, Stout seeks reimbursement for any attorneys' fees or expenses in connection with payment of an indemnification claim pursuant to the Engagement Letter, as modified by the Order, the invoices and supporting time records from such attorneys shall be included in the respective fee applications and such invoices and time records shall be in compliance with the Local Rules and shall be subject to any U.S. Trustee Guidelines and Court approval under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327.

10.      Stout and the Debtors shall use their reasonable efforts to avoid any duplication of services provided by Stout and any of the Debtors' other retained professionals in these chapter 11 cases.

11.      Notwithstanding anything in this Application or the Engagement Letter to the contrary, (i) to the extent that Stout uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, they shall pass through the cost of the Contractors to the applicable Debtors at the same rate that they pay the Contractors and (ii) seek reimbursement for actual costs only.  Contractors from whom Stout seeks to pass through fees on an hourly basis to the applicable Debtors shall be subject to the same conflict checks as required for Stout, and such Contractors shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

12.    Such services other than set forth in the Application that the Debtors may request that Stout provide during the course of these chapter 11 cases, and as agreed to by Stout, shall be subject to separate application and order of this Court.

13.    Notwithstanding anything to the contrary in the Engagement Letter, the indemnification provisions are hereby reinstated and modified only as follows:

(a)    All requests of Stout for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided*, *however*, that in no event shall Stout be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, fraud, or willful misconduct.

(b)    In the event that Stout seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Stout for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Stout's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

(c)    Stout shall not be entitled to reimbursement by the Debtors for any fees, disbursements, and other charges of Stout's counsel other than those incurred in connection with a request of Stout for payment of indemnity, retention of Stout and preparation of fee applications.

(d)    In no event shall Stout be indemnified if the Debtors or representatives of the estates assert a claim for, and a court determines by final order that such claim arose out of, Stout's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, fraud, or willful misconduct.

14.    Stout will review its files periodically during the pendency of these chapter 11 cases to determine whether any disqualifying conflicts or other circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Stout will use reasonable efforts to identify

5

such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

15.    The Debtors and Stout are authorized to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

16.    Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

17.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.    Notwithstanding anything to the contrary in the Engagement Letter, Stout cannot terminate the Engagement Letter absent order of the Bankruptcy Court.

20.    Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order and Stout's retention.

21.    To the extent that there is any inconsistency between the Engagement Letter, the Application, the Cohen Declaration, and this Order, the provisions of this Order shall apply.

22.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Engagement Letter**

DocuSign Envelope ID: 23A643C4-16F8-4104-829B-2A84C7CC392B



<b>CONFIDENTIAL</b>

February 21, 2023

Chris Ferraro
Interim Chief Executive Officer, Chief Financial Officer, Chief Restructuring Officer
Celsius Network LLC et al[1]
50 Harrison Street
Suite 209F
Hoboken, NJ 07030

c/o Kirland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

RE:  *In re: Chapter 11 CELSIUS NETWORK LLC, et al., Case No. 22-10964* (the "Matter" or the "Chapter 11 Cases")

Dear Mr. Ferraro:

On behalf of Stout Risius Ross, LLC ("Stout"), I am pleased to confirm the arrangement under which we will provide certain Services (as defined herein) to Celsius Network LLC and its affiliated entities set forth in footnote one (the "Client", "you," or "your") in the Matter pursuant to this engagement letter (the "Engagement Letter"), which amends and supersedes any and all engagement agreements, written or otherwise, previously executed between you and Stout in their entirety.

<h2 align="center">Our Services and Scope</h2>

In connection with the Matter, we will perform the following services (the "Services"):

We understand that the Client intends to reorganize as a going concern (the "Transaction"). We further understand the engagement objectives to consist of assisting in the determination of the Fair Value (as defined herein) of the Client's reorganization value upon emergence. In calculating the reorganization value, our scope will include calculating a net asset value of certain assets of the Client.  The scope will include calculating the Fair Value of certain assets and/or liabilities of the Client based on mutually agreed to terms between the Client, its advisors, and us. We understand that our scope will include performing a preliminary valuation as of a current date, and updating this valuation as of the emergence date.

We will perform our analysis in accordance with Financial Accounting Standards Board Accounting Standards Codification ("ASC") Topic 852, *Reorganizations* ("ASC 852") and related accounting promulgations including ASC Topic 805, *Business Combinations* ("ASC 805") and Topic 820, *Fair Value Measurement* ("ASC 820"). In addition, when we need to perform valuation of digital assets, which possess an inherent uncertainty and price volatility, we will leverage established valuation methods following ASC 820 guidance.

---

[1] The entities covered by this Engagement Letter include: Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd.; GK8 UK Limited; and GK8 USA LLC.

DocuSign Envelope ID: 23A643C4-16E8-4104-8398-2A84C7CC392D

Chris Ferraro
February 21, 2023
Page 2

The term "Fair Value" is defined as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date (ASC 820-10-20). In particular, ASC 820 prescribes that the measurement of the Fair Value of an asset or liability should be based on assumptions that market participants would use when pricing the asset or liability. Accordingly, we will determine Fair Value based on the price that would be received to sell an asset or transfer a liability at the measurement date, assuming a transaction takes place at that date (i.e., an exit price).

We understand that our Services will be utilized to satisfy financial reporting requirements and for purposes of the Client's Chapter 11 Cases.  Neither our verbal conclusions nor our work product are in any way intended for, nor may they be relied upon, by any other person or used for any other purpose without our express, prior written consent.  Notwithstanding the foregoing, the Client is authorized to include and otherwise reference our analysis generally (with the prior consent of Stout, which consent shall not be unreasonably withheld, conditioned or denied) and report in its Chapter 11 Cases in connection with its disclosure statement and/or any other necessary pleading, which will be filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") and accessible by the public on the Court's docket, and make an informational copy of our analysis and report available to its advisors and auditors in support of their evaluation of management's assertions; however, we are not undertaking any duty or obligation to your auditors or establishing any other direct relationship with them.

Stout further understands that Client is interested in obtaining objective and independent analyses in connection with this Matter. Stout will report to Client verbally from time to time, and at Client's direction, on the progress of the work and preliminary findings.

The Services to be provided are intended for use only in connection with the Matter and no other purpose. It is expressly understood that any reports or other documents produced by Stout will not be provided to nor may they be relied upon by any third parties except as expressly stated in this Agreement, without first obtaining Stout's prior written consent.

## Staffing

This engagement will be under the overall supervision of Joel Cohen; however, other members of Stout will assist in the engagement. In the event it becomes necessary to reassign this engagement to another Stout professional, we will notify you promptly and give you an opportunity to evaluate with us the appropriate professional whose skill sets and experience most closely match the requirements of the engagement. We may also use contractors, as appropriate, to assist in performing the Services; *provided* that Stout is required to receive prior written consent (email being sufficient) from the Client before using any contractors.

## Client's Responsibilities

Client acknowledges that the successful delivery of our Services, and the fees charged, are dependent on (i) providing Stout timely, accurate and complete data within Client's control; (ii) the Client obtaining applicable licenses and authorizations required for Stout to use the data or materials provided by Client; and (iii) timely notice to Stout of any material direction or any material event or change that may impact the Services. You are solely responsible for all management decisions and implementing, maintaining, and monitoring any actions identified during the course of the Services.

Client shall be solely responsible for the work and fees of any other party engaged by Client to provide services in connection with the engagement hereunder regardless of whether such party was introduced to Client by Stout.

Investment Banking & Restructuring  |  Transaction Advisory  |  Valuation Advisory  |  Disputes, Claims, & Investigations

DocuSign Envelope ID: 23A643C4-16F8-4104-829B-2A84C7CC302B

Chris Ferraro
February 21, 2023
Page 3

## Fees, Expenses and Billing Arrangements

*Fees*

Our hourly rates are based on experience, training, and level of professional achievement. It is often necessary to consider other factors such as the complexity of the work, prior experience, and engagement timing in establishing staffing for the engagement and our fees. Current hourly rates for our professional staff range from $220 to $800. Our standard hourly rates are reconsidered annually with changes effective October 1st of each year.

In the event that the Client terminates this engagement prior to the completion of the Services and/or this Matter is resolved such that Stout's total fees are less than $20,000, Stout shall be entitled to receive $20,000 as its total payment for this engagement.

*Expenses*

Direct expenses (including but not limited to transportation, lodging, meals, specialized research, etc.) will be billed on a pass-through basis; *provided* that Stout shall be required to receive prior written consent from the Company before incurring direct expenses that exceed $10,000 in the aggregate. Direct expenses may also include professional fees associated with our legal counsel's review of our work product on this engagement.

*Billing*

We will submit our invoices to Client on a monthly or other periodic basis as our work progresses. Invoices will be presented to Client and paid by Client in accordance with the attached Professional Terms, subject to approval by the Court. All payments required hereunder shall be paid by wire or ACH transfer, as instructed by Stout. Stout shall be entitled to reimbursement for all expenses, including attorneys' fees, incurred in enforcing the terms of this Agreement, subject to approval by the Court.

## Professional Terms

The attached Professional Terms apply to this engagement. Please execute and return a copy of this letter. Please note that the terms of this offer will expire 15 days from the date of the letter.

\*    \*    \*    \*    \*    \*    \*

We appreciate the opportunity to be of service to you and look forward to working with you on this engagement.

Very truly yours,

**STOUT**

By:

Chris Ferraro
February 21, 2023
Page 4


Joel E. Cohen
Managing Director

Attachments:    Professional Terms
                Retainer Invoice

Acknowledged and Accepted:

**CELSIUS NETWORK LLC**

Signed: _Chris Ferraro_ _____

Name: Chris Ferraro _____

Title: CRO, CFO and Interim CEO _____

Date: 3/28/2023 _____

DocuSign Envelope ID: 23A643C4-16F8-4404-8208-2A84C7CC392B



## STOUT PROFESSIONAL TERMS

*In the event that Stout's engagement is subject to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, local bankruptcy rules of procedure, the guidelines of the Office of the United States Trustee, and/or the terms of any order of the Court ("Bankruptcy Order") approving the terms of Stout's engagement, the Engagement Letter and these Professional Terms may be subject to written modification executed by Stout and the Client. In addition, to the extent there is a binding Bankruptcy Order governing Stout's Services and/or the services of any Stout personnel, the terms and conditions of such Bankruptcy Order shall control.*

**1.  Our Services**  We will provide the Services as described in our Engagement Letter, as may be modified from time to time by mutual consent.  Stout's verbal conclusions and work product may only be used by the parties to the Engagement Letter for the purposes expressly set forth therein, and are in no way intended for, nor may they be relied upon by or disclosed to, any other person or entity, or used for any other purpose, without our express, prior written consent.

**2.  Independent Contractor**  We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our Services.  We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

**3.  Fees, Expenses and Billing**  Our fees and expenses are set out in our Engagement Letter.  Those fees do not include taxes.  You will be responsible for and pay all applicable sales, use, excise, value added, and other taxes associated with the provision or receipt of the Services, excluding taxes on our income generally. Invoices are due upon presentation and will be considered past due forty-five (45) days after the invoice date; *provided* that such payment is subject to approval by the Court.  We reserve the right to defer rendering further Services until payment is received on past due invoices, in which event we will not be responsible or liable for any resulting loss, damage or expense connected with such suspension.   In the event Client disagrees with or questions any amount due under any invoice, Client agrees to communicate such disagreement to us in writing within forty-five (45) days of the Client's receipt of the invoice specifying the question or reason for the disagreement.  Any claim not made within this time period will be deemed waived.

**4.  Confidentiality**  With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, to only disclose confidential information to those that need to know the information, and to use confidential information only to perform its obligations under this engagement and for no other purpose.  This will not apply to information which is: (i) publicly known, (ii) already known to the recipient prior to its initial disclosure by the disclosing party, (iii) disclosed by a third party without restriction, (iv) independently developed without use of any confidential information of the other party, or (v) disclosed pursuant to legal requirement or order.  Following the completion of our engagement, but not before such time, we may mention the name of the Client and/or use the Client logo and provide a general description of the engagement in our printed or electronic materials, or in our marketing presentation to others with the prior written consent of the Client (email being sufficient), which shall not be unreasonably withheld.

We are not to be characterized as an "expert" for purposes of securities law and we are not to be referred to, either by name or inference, in any public (e.g., S-1) or nonpublic security filing or private placement.  (Any such disclosure document is defined herein as a "Filing".)  Moreover, we are not obligated to provide, nor will we provide, any consent to be named in any such Filing either during the performance of our Services or after the conclusion of our engagement.

**5.  Use of Financial & Other Information**  In the course of our engagement, we will use financial and other information, including prospective financial information, obtained from you, the Client, and/or your representatives, and other public and private sources.  The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information.  While our work may involve analysis of various records, our engagement does not include an examination, audit, review, compilation, or other form of attestation in accordance with generally accepted auditing standards known as "GAAS", or standards under the Public Company Accounting Oversight Board known as "PCAOB".  Accordingly, we will not express an opinion or any other form of assurance thereon.  Additionally, our Services should not be relied upon to detect errors, irregularities, fraud, or other illegal acts.  Furthermore, we will take no responsibility for the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the Client or its representatives, whether relied upon by us or not.

DocuSign Envelope ID: 23A643C4-16F8-4104-8398-2A84C7CC392D

Chris Ferraro
February 21, 2023
Page 6

**6. Our Work Product and Your License**  Upon full payment of all amounts due to us in connection with this engagement, all right, title and interest in our deliverables will become your sole and exclusive property, except as set forth below.  We will retain sole and exclusive ownership of all right, title and interest in our work papers, proprietary information, processes, methodologies, know how, and software, including such information as existed prior to the delivery of our Services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of Services for you (collectively, "Stout Property").  To the extent our deliverables to you contain Stout Property, we grant you a non-exclusive, non-assignable, royalty-free, perpetual license to use it in connection with the subject of the engagement and for no other or further use without our express, prior written consent.

**7.   Our Warranty**   We warrant that our Services will be performed with reasonable care in a diligent and competent manner.  Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 60 days after the Services are performed or, if applicable, deliverables are delivered.  The notice will specify and detail the non-conformance, and if the parties, acting in good faith, agree that a non-conformance exists, we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.  No claim may be brought after the notice and cure period provided for herein has run.  You acknowledge that you possess sufficient expertise to review Stout's performance of its Services and any reports or opinions delivered by Stout, and that you will review any reports or opinions delivered by Stout prior to using Stout's reports or opinions to negotiate or approve any transaction.

We do not warrant and are not responsible for any third party products or services relied upon by the Client, used by the Client, and/or provided to Stout by the Client. For the avoidance of doubt, with respect to any third party products or services that are not selected by Stout, your sole and exclusive rights and remedies are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE.

**8.  Liability and Indemnification**

(a)  The Client, its successors and assigns, will to the fullest extent allowable by law, defend, indemnify, and hold harmless Stout, its affiliates, and its and their respective owners, employees, contractors, and agents (each an "Indemnified Party") from any and all obligations, charges, claims, losses, costs, fees, expenses, damages, and liabilities (including reasonable attorneys' fees and costs) (collectively, "Losses") relating to, or arising out of, or directly or indirectly in consequence of, as a result of our Services or this engagement, regardless of the cause of the alleged injury or damage, except to the extent such Losses are finally determined by a court of competent jurisdiction to have resulted from the gross negligence, willful misconduct, or fraud of an Indemnified Party.

(b)  Neither Stout's nor Client's total liability relating to this engagement will exceed an amount equal to the fees Stout receives for the portion of the engagement giving rise to liability, and will not include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The foregoing limitation of liability shall not apply to Client's obligation to pay Stout's fees.

(c)  To the extent allowed by law, any action against Stout or the Client in connection with this engagement must be brought within 12 months after the last date of Services rendered by Stout.  If applicable law does not allow for the shortening of the statute of limitations regarding actions referenced herein, the parties hereby agree that the statute of limitations for all such actions shall begin on the last date of Services rendered.  The parties agree that they will not, on behalf of themselves or any other person or entity, assert any tolling doctrine seeking to extend the time within which a claim can be asserted, under any theory recognized in law or equity under any state's law deemed to apply to the statute of limitations applicable to any such claim.

(d)  For the avoidance of doubt, the obligations of Stout are solely corporate obligations.  No director, officer, employee, agent, shareholder or controlling person of Stout shall be subject to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to or beneficiary of this Agreement.

**9.  Response to Subpoena**  In the event we receive or are served with a subpoena, court, governmental, or other legal order, notice, or request for investigation or information (collectively, "Subpoena") that requires us to produce documents in our possession, provide testimony, cooperate with your legal counsel, or hire outside counsel, etc.in any way related

DocuSign Envelope ID: 23A643C4-16F8-4104-829B-2A84C7CC392D

Chris Ferraro
February 21, 2023
Page 7

to this engagement (regardless of whether such Subpoena is served during or subsequent to the completion of our work), we will invoice you at our standard hourly rates applicable at the time such Services are rendered.  We will also invoice you for our related out-of-pocket expenses, including, but not limited to, copying charges, courier fees, travel expenses and reasonable attorney fees.  Notwithstanding anything to the contrary in this Agreement, expenses incurred related to Stout's response to a Subpoena do not require your advance approval.

**10.  Non-Solicitation**   During the term of this engagement, and for a period of one year following its expiration or termination, you will not actively solicit, employ or otherwise engage any of our employees (including former employees) who were involved directly in the engagement.

**11.  Termination**

(a)  Any party may terminate our engagement at any time upon 10 days' written notice.  In the event that Stout terminates this engagement prior to the completion of the Matter and upon 10 days' written notice, Stout shall not be entitled to receive $20,000 as its total payment.

(b)  Stout may suspend or terminate this engagement immediately and without notice in the event of non-payment of amounts due us.

(c)  You will pay us for all Services rendered, expenses incurred or commitments made by us to the effective date of termination, and will reimburse us for all reasonable costs associated with any termination, subject to the terms of this Agreement.

**12.  Our Financial Interest / Compensation / Waiver of Conflicts**   None of our employees who will work on this engagement have any known financial interest in the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach.  We do not warrant or predict results or final developments in this Matter.

Stout's determination of conflicts is based on the substance of the work to be performed on an engagement as opposed to the parties involved.  We have performed an internal search for potential conflicts based on the names of the parties you have provided.  We have not found any situations which, in our view, constitute actual conflicts of interest and which would impair our ability to objectively provide assistance in the Matter.  We reserve the right to resign from this Matter at any time if conflicts of interest arise or become known to us that, in our judgment, would impair our ability to perform Services objectively. We also reserve the right to accept engagements with other parties consistent with internal, prior practices, and will not be required to advise Client of such engagements.  If approprioate, Stout will institute procedures to protect the confidentiality of information provided by Client on this Matter.

**13.  Staffing**   While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel (including contractors), as appropriate, to perform the Services.

**14. Conclusion of Engagement**   Except as otherwise required by law or special circumstances, at the end of this engagement or upon its termination as set forth above, Stout will notify you outlining Stout's case closing procedures. Stout will return all case information provided by Client, and provide Client with Stout's final work product in appropriate media as agreed by Stout and Client. In the event that there are special circumstances (such as a Subpoena, court order or other legal hold, or storing of case records and information for Client for a specified period of time after the scope of work is complete), Client will be responsible within thirty (30) days for providing Stout with written instructions for Stout to follow. Client shall be responsible for payment of associated expenses (such as storage, destruction and return shipment costs) incurred by Stout in preserving documents due to such special circumstances. These associated expenses may be submitted to Client after the final invoice for Stout's Services has been rendered.

**15. [Reserved.]**

**16. Stout's Role as Officer/Director**   Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (1) Client, including without limitation, the Client's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand; and (b) Stout, Stout's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, subcontractors, attorneys, agents, successors or assigns of Stout or Stout's affiliates including without limitation the Stout MD, on the other hand.

Chris Ferraro
February 21, 2023
Page 8

**17. General**

(a)  These Professional Terms, together with the Engagement Letter, including all its attachments (collectively, the "Agreement"), constitute the entire understanding and agreement between us with respect to the Services and deliverables described in the Engagement Letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties.  If there is a conflict between these Professional Terms and the terms of the Engagement Letter, the terms of the Engagement Letter will govern.

(b)  The Agreement may be executed in counterparts and signature pages exchanged by email, and each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement.

(c)  No term of this Agreement will be deemed waived, and no breach of this Agreement shall be excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(d)  The terms of this Agreement which by their nature are to survive this Agreement will survive its expiration or termination.

(e)  We will retain files related to this engagement in accordance with our document retention policy, which shall include any computer files or documents that have been created as a result of our automatic archiving and backup procedures.  Any retained confidential information must remain subject to any and all confidentiality restrictions between the parties.

(f)  We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail.  Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(g)  We are not authorized to practice law or provide legal advice.  No Services provided under this Agreement are intended to be, nor should be construed to be, legal services.  Further, we are not a licensed CPA firm.  No Services provided hereunder shall be construed as providing tax advice, audit assurances or attestations.  Stout has not been engaged to provide investment advice, and is not and shall not be construed as a fiduciary of the Client or any other party to or beneficiary of this Agreement.

(h)  Any delay or failure on our part to perform the obligations provided herein shall be excused if we are unable to provide the deliverable as the result of an event or occurrence beyond our reasonable control and without our fault or negligence, including, but not limited to, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, epidemics, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns); *provided* that written notice of such delay (including the anticipated duration of the delay) shall be given to the Client as soon as possible after the event or occurrence (but in no event more than 10 days thereafter).  If requested by Client, we shall, within 10 days, provide adequate assurances that the delay shall not exceed 30 days.  If the delay lasts more than 30 days or we do not provide adequate assurance that the delay will cease within 30 days, Client may immediately terminate this Agreement without liability beyond the time and expenses incurred to date.  Notwithstanding the Professional Terms, if Stout delays or fails to perform the obligations provided herein pursuant to this provision 17(h), Stout shall not be entitled to retain 50% of the retainer as its total payment.

(i)  Any controversy or claim arising out of or relating to this Agreement shall be in accordance with New York law and shall be filed in the appropriate court in the State of New York.  Further, you agree that venue in this court is proper, convenient, and to submit to the in personam jurisdiction of this court.

The prevailing party shall be entitled to an award of reasonable attorney fees as well as costs and fees incurred.  Any party attempting to resolve the dispute outside of the prescribed methods outlined herein shall pay the opposing party's attorney fees as well as related costs and fees incurred.

(j) Each person executing this Agreement on behalf of a certain party represents and warrants that he or she is authorized to execute this Agreement on behalf of said party.

\*   \*   \*   \*   \*   \*   \*

**FOR STOUT LEGAL USE ONLY [DO NOT REMOVE] DCI-CORPORATE RECOVERY 2023.01.31**

Investment Banking & Restructuring  |  Transaction Advisory  |  Valuation Advisory  |  Disputes, Claims, & Investigations

**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### ORDER (I) AUTHORIZING THE
### RETENTION AND EMPLOYMENT OF STOUT
### RISIUS ROSS, LLC AS VALUATION ADVISOR, EFFECTIVE
### AS OF FEBRUARY 21, 2023, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to retain and employ Stout Risius Ross, LLC ("Stout"), as the Debtors' valuation advisor, effective as of February 21, 2023, in accordance with the terms and conditions set forth in the Engagement Letter, a copy of which is attached as **Exhibit 1** hereto, and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to  28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that Stout does not hold or represent an adverse interest to the Debtors or their estates and is disinterested under 11 U.S.C. § 101(14); and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Stout, effective as of February 21, 2023, in accordance with the terms and conditions set forth in the Application and Engagement Letter, as modified by this Order.

3.      Stout shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, this Order, and any other applicable orders of this Court.

4.      The terms of the Engagement Letter, including without limitation, the compensation provisions, are reasonable terms and conditions of employment and are hereby approved.

5.      Consistent with, and subject to, the terms of the Engagement Letter and this Order, Stout is hereby authorized to perform the Services provided for in the Engagement Letter.

6.      Stout is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

7.      Stout shall file monthly statements, interim fee applications, and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of this Court and consistent with the proposed compensation set forth in the Engagement Letter.  Stout shall keep reasonably detailed time records in one-tenth of an hour increments in accordance with the U.S. Trustee Guidelines and will submit, with any monthly fee statements, and interim and final fee applications, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered, and the total amount of compensation requested by Stout.

8.      Prior to any increases in Stout's hourly rates pertaining to the Debtors, Stout shall file a supplemental declaration with this Court, and provide ten business days' notice to the Debtors and the U.S. Trustee, any official committee, and the Fee Examiner.  The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in Section 330 of the Bankruptcy Code.

9.       Notwithstanding anything to the contrary in the Application or the Engagement Letter, Stout shall not seek nor shall Stout be entitled to reimbursement for fees and expenses of its counsel incurred in connection with any objection to its fees or defending any of its fee applications in these chapter 11 cases.  In the event that, during the pendency of these cases, Stout seeks reimbursement for any attorneys' fees or expenses in connection with payment of an indemnification claim pursuant to the Engagement Letter, as modified by the Order, the invoices and supporting time records from such attorneys shall be included in the respective fee applications and such invoices and time records shall be in compliance with the Local Rules and shall be subject to any U.S. Trustee Guidelines and Court approval under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327.

10.       Stout and the Debtors shall use their reasonable efforts to avoid any duplication of services provided by Stout and any of the Debtors' other retained professionals in these chapter 11 cases.

11.       Notwithstanding anything in this Application or the Engagement Letter to the contrary, (i) to the extent that Stout uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, they shall pass through the cost of the Contractors to the applicable Debtors at the same rate that they pay the Contractors and (ii) seek reimbursement for actual costs only.  Contractors from whom Stout seeks to pass through fees on an hourly basis to the applicable Debtors shall be subject to the same conflict checks as required for Stout, and such Contractors shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

12.     Such services other than set forth in the Application that the Debtors may request that Stout provide during the course of these chapter 11 cases, and as agreed to by Stout, shall be subject to separate application and order of this Court.

13.     Notwithstanding anything to the contrary in the Engagement Letter, the indemnification provisions are hereby reinstated and modified only as follows:

(a)     All requests of Stout for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided*, *however*, that in no event shall Stout be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, fraud, or willful misconduct.

(b)     In the event that Stout seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Stout for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Stout's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

(c)     Stout shall not be entitled to reimbursement by the Debtors for any fees, disbursements, and other charges of Stout's counsel other than those incurred in connection with a request of Stout for payment of indemnity, retention of Stout and preparation of fee applications.

(d)     (c) In no event shall Stout be indemnified if the Debtors or representatives of the estates assert a claim for, and a court determines by final order that such claim arose out of, Stout's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, fraud, or willful misconduct.

14.     Stout will review its files periodically during the pendency of these chapter 11 cases to determine whether any disqualifying conflicts or other circumstances exist or arise. If

any new relevant facts or relationships are discovered or arise, Stout will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

15.    The Debtors and Stout are authorized to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

16.    Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

17.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.    Notwithstanding anything to the contrary in the Engagement Letter, Stout cannot terminate the Engagement Letter absent order of the Bankruptcy Court.

20.    19. Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order and Stout's retention.

21.    20. To the extent that there is any inconsistency between the Engagement Letter, the Application, the Cohen Declaration, and this Order, the provisions of this Order shall apply.

22.    21. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE