**Hearing Date and Time:** July 2023 Omnibus Hearing (TBD)
**Objection Deadline** (for parties other than the Fee Examiner and U.S. Trustee): May 5, 2023, 12:00 p.m. EDT

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### SUMMARY COVER SHEET TO SECOND INTERIM APPLICATION OF SHOBA PILLAY, EXAMINER AND JENNER & BLOCK LLP FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR EXAMINER FOR THE PERIOD OF NOVEMBER 1, 2022 THROUGH MARCH 31, 2023

| Name of applicant: | Shoba Pillay, Examiner, and Jenner & Block LLP |
|---|---|
| Authorized to provide professional services to: | Shoba Pillay, Examiner |
| Date of order approving employment: | November 1, 2022 (effective as of September 29, 2022) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Ltd. (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

| | |
|---|---|
| Period for which compensation and reimbursement are sought: | November 1, 2022 through March 31, 2023 |
| Total fees sought this period: | $9,534,819.50 |
| Total expenses sought this period: | $66,595.09[2] |
| Total fees and expenses requested: | $9,601,419.59 |
| Total compensation approved to date by Interim Order: | None |
| Total expenses approved to date by Interim Order: | None |
| Total allowed compensation paid to date: | None |
| Total allowed expenses reimbursed to date: | None |
| Number of professionals included in this application: | 64 |
| Number of professionals billing fewer than 15 hours: | 19 |
| Type of fee statement or application | Interim Fee Application |
| Blended rate in this application for all attorneys: | $1,014.68 |
| Blended rate in this application for all timekeepers: | $1,000.14 |
| Are any rates higher than those approved or disclosed at retention? | Yes. *See Notice of Rate Increases of Jenner & Block LLP, Counsel to the Examiner* [Dkt. 1732] |
| Difference between fees budgeted and compensation sought: | N/A[3] |

---

[2] Jenner & Block's requested expenses are $5.00 less than those requested in its monthly statements. Specifically, Jenner & Block has reduced its request for reimbursement for a December 25, 2022 overtime meal expense by $5.00 (from $45.00 to $40.00) to comply with the Fee Examiner's *Fee Review Standards Memorandum.*

[3] As described in the Examiner's Final Report, challenges were encountered during the latter part of the investigation with respect to the timing and availability of information, documents and witnesses which resulted in adjustments to the work scope and schedule. The Examiner was regularly apprised of these developments, but no formal budget was submitted to the Court.

| Name of Professional | Title | Year Admitted | Department | Hourly Billing Rate (2022) | Total Billed Hours (2022) | Hourly Billing Rate (2023) | Total Billed Hours (2023) | Total Fees Requested |
|---|---|---|---|---|---|---|---|---|
| CATHERINE L. STEEGE | Partner | 1982 | Restructuring & Bankruptcy | $1,595.00 | 103.20 | $2,130.00 | 195.60 | $581,232.00 |
| VINCENT E. LAZAR | Partner | 1990 | Restructuring & Bankruptcy | $1,540.00 | 147.90 | $1,735.00 | 179.90 | $539,892.50 |
| SHOBA PILLAY | Partner | 2003 | Investigations, Compliance & Defense | $1,455.00 | 242.10 | $1,590.00 | 265.90 | $775,036.50 |
| GAIL H. MORSE | Partner | 1982 | Tax | $1,320.00 | 86.60 | $1,440.00 | 37.90 | $168,888.00 |
| DAVID M. GREENWALD | Partner | 1986 | Litigation | $1,275.00 | 2.80 | N/A | N/A | $3,570.00 |
| MELISSA M. ROOT | Partner | 2003 | Restructuring & Bankruptcy | $1,265.00 | 161.90 | $1,430.00 | 202.40 | $494,235.50 |
| HOWARD S. SUSKIN | Partner | 1983 | FIFL | N/A | N/A | $1,390.00 | 0.50 | $695.00 |
| ANDRIANNA D. KASTANEK | Partner | 2005 | Appellate | $1,300.00 | 11.10 | $1,300.00 | 27.60 | $50,310.00 |
| LANDON S. RAIFORD | Partner | 2008 | Restructuring & Bankruptcy | $1,185.00 | 373.20 | $1,290.00 | 300.90 | $830,403.00 |
| KAYVAN B. SADEGHI | Partner | 2003 | Securities Litigation & Enforcement | $1,150.00 | 149.30 | $1,260.00 | 132.90 | $339,149.00 |
| SARAH F. WEISS | Partner | 2010 | Investigations, Compliance & Defense | $1,090.00 | 167.70 | $1,240.00 | 217.90 | $452,989.00 |
| HANNA M. CONGER | Partner | 2012 | Energy | $1,085.00 | 0.50 | N/A | N/A | $542.50 |
| AARON R. COOPER | Partner | 2011 | Investigations, Compliance & Defense | $1,085.00 | 315.70 | $1,240.00 | 251.40 | $654,270.50 |
| EMILY M. SAVNER | Partner | 2013 | Investigations, Compliance & Defense | $1,075.00 | 95.50 | $1,240.00 | 61.00 | $178,302.50 |
| CARL N. WEDOFF | Special Counsel | 2010 | Restructuring & Bankruptcy | $1,095.00 | 169.50 | $1,195.00 | 108.90 | $315,738.00 |
| LAURA E. PELANEK | Special Counsel | 2004 | Litigation | $905.00 | 421.80 | $990.00 | 282.70 | $661,602.00 |
| MICHELLE A. ONIBOKUN | Associate | 2018 | Government Contracts | $905.00 | 137.00 | $1,105.00 | 93.00 | $226,750.00 |
| PHILIP B. SAILER | Associate | 2018 | Investigations, Compliance & Defense | $905.00 | 206.10 | $1,105.00 | 171.90 | $376,470.00 |
| SARA M. STAPPERT | Associate | 2019 | Investigations, Compliance & Defense | $825.00 | 118.30 | $1,050.00 | 121.10 | $224,752.50 |
| ERIC E. PETRY | Associate | 2019 | Litigation | $825.00 | 84.50 | $1,050.00 | 55.80 | $128,302.50 |
| SARA M. CROOK | Associate | 2020 | Litigation | $750.00 | 63.30 | $960.00 | 69.40 | $114,099.00 |
| SOLANA R. GILLIS | Associate | 2020 | Corporate | $750.00 | 103.10 | $960.00 | 51.10 | $126,381.00 |
| ARIANA J. KANAVY | Associate | 2020 | Investigations, Compliance & Defense | $750.00 | 12.20 | $960.00 | 63.60 | $70,206.00 |
| KETURAH R. JAMES | Associate | 2019 | Investigations, Compliance & Defense | $710.00 | 11.20 | N/A | N/A | $7,952.00 |
| ADINA HEMLEY-BRONSTEIN | Associate | 2021 | Litigation | $710.00 | 178.20 | $860.00 | 76.30 | $192,140.00 |
| BREANNA K. DROZD | Associate | 2021 | Restructuring & Bankruptcy | N/A | N/A | $860.00 | 7.10 | $6,106.00 |

| Name of Professional | Title | Year Admitted | Department | Hourly Billing Rate (2022) | Total Billed Hours (2022) | Hourly Billing Rate (2023) | Total Billed Hours (2023) | Total Fees Requested |
|---|---|---|---|---|---|---|---|---|
| KATE E. FINTEL | Associate | 2021 | Litigation | N/A | N/A | $860.00 | 55.30 | $47,558.00 |
| COURTNEY B. SHIER | Associate | 2021 | Litigation | $700.00 | 125.50 | $860.00 | 104.40 | $177,634.00 |
| RAYMOND B. SIMMONS | Associate | 2021 | Litigation | $700.00 | 211.70 | $860.00 | 157.10 | $283,296.00 |
| CHERRISSE R. WOODS | Associate | 2021 | Litigation | $700.00 | 172.60 | $860.00 | 50.70 | $164,422.00 |
| VINCENT WU | Associate | 2021 | Litigation | $700.00 | 1.00 | $860.00 | 34.00 | $29,940.00 |
| ISHA Z. ABBASI | Associate | 2022 | Litigation | $700.00 | 31.60 | $745.00 | 73.20 | $76,654.00 |
| NICHOLAS S. JOHN | Associate | 2022 | Litigation | $700.00 | 252.30 | $745.00 | 224.30 | $343,713.50 |
| MICHAEL D. PEARSON | Associate | 2022 | Litigation | $700.00 | 27.90 | $745.00 | 40.80 | $49,926.00 |
| ETHAN M. LEVY | Associate | 2022 | Litigation | $700.00 | 42.20 | $745.00 | 67.00 | $79,455.00 |
| LAURA K.M. KOELLER | Associate | 2022 | Litigation | $700.00 | 26.40 | $745.00 | 62.80 | $65,266.00 |
| PATRICIA A. PETERS | Associate | 2022 | Litigation | $700.00 | 29.70 | $745.00 | 49.30 | $57,518.50 |
| OLUWATOMISIN T. JOHNSON | Associate | 2022 | Litigation | $700.00 | 40.60 | N/A | N/A | $28,420.00 |
| BLAINE R. VALENCIA | Associate | 2022 | Litigation | $700.00 | 15.10 | $745.00 | 30.30 | $33,143.50 |
| NICOLE R. ALLICOCK | Associate | 2022 | Litigation | $700.00 | 31.80 | $745.00 | 45.20 | $55,934.00 |
| ZACHARY A. MARINO | Law Clerk | 2022 | Litigation | $710.00 | 22.50 | $745.00 | 36.50 | $43,167.50 |
| PAMELA A. MARINO-GIAKOU | Staff Attorney | 2000 | Litigation | $595.00 | 164.10 | N/A | N/A | $97,639.50 |
| CONSTANCE J.B. PURTILL | Discovery Attorney | 2011 | Litigation | $330.00 | 13.50 | N/A | N/A | $4,455.00 |
| DAVID C. GUI | Discovery Attorney | 2013 | Litigation | $330.00 | 115.60 | N/A | N/A | $38,148.00 |
| CHRISTINE C. CORSO | Discovery Attorney | 1999 | Litigation | $330.00 | 87.00 | $330.00 | 79.20 | $54,846.00 |
| NOELLE M. DUPUIS | Discovery Attorney | 2009 | Litigation | $330.00 | 98.70 | $330.00 | 95.30 | $64,020.00 |
| MICHELLE A. MCDONALD | Discovery Attorney | 2005 | Litigation | $330.00 | 53.80 | N/A | N/A | $17,754.00 |
| MIKKEL R. MICHELSON | Discovery Attorney | 2007 | Litigation | $330.00 | 37.90 | N/A | N/A | $12,507.00 |
| LEAH J. STARKMAN | Discovery Attorney | 2002 | Litigation | $330.00 | 25.50 | N/A | N/A | $8,415.00 |
| STEFANO VIOLA | Discovery Attorney | 2013 | Litigation | $330.00 | 40.20 | $365.00 | 33.50 | $25,493.50 |
| DANIEL O. GARCIA | Senior Paralegal | N/A | | $560.00 | 123.00 | $590.00 | 128.20 | $144,518.00 |
| DEBRA E. ABELSON | Senior Paralegal | N/A | | N/A | N/A | $590.00 | 5.00 | $2,950.00 |
| CHERYL J. KRAS | Senior Paralegal | N/A | | N/A | N/A | $590.00 | 5.70 | $3,363.00 |
| JESSICA M. MERKOURIS | Senior Paralegal | N/A | | N/A | N/A | $590.00 | 7.30 | $4,307.00 |
| CHRISTOPHER R. WARD | Senior Paralegal | N/A | | N/A | N/A | $590.00 | 3.50 | $2,065.00 |
| KELSEY HYUNJEE CHOI | Paralegal | N/A | | N/A | N/A | $505.00 | 2.70 | $1,363.50 |
| SAM A. ROSEN | Paralegal | N/A | | N/A | N/A | $505.00 | 3.00 | $1,515.00 |

| Name of Professional | Title | Year Admitted | Department | Hourly Billing Rate (2022) | Total Billed Hours (2022) | Hourly Billing Rate (2023) | Total Billed Hours (2023) | Total Fees Requested |
|---|---|---|---|---|---|---|---|---|
| ADAM H. WEIDMAN | Paralegal | N/A | | N/A | N/A | $320.00 | 4.80 | $1,536.00 |
| BRYAN A. POWER | Senior Litigation Support Specialist | N/A | | $455.00 | 1.30 | N/A | N/A | $591.50 |
| PAUL S. RAMONAS | Senior Research Librarian | N/A | | $405.00 | 9.40 | N/A | N/A | $3,807.00 |
| JAMES P. WALSH | Senior Research Librarian | N/A | | $405.00 | 1.00 | $420.00 | 1.50 | $1,035.00 |
| M. KRISTINA DEGUZMAN | Research Librarian | N/A | | $405.00 | 0.50 | N/A | N/A | $202.50 |
| STEPHEN S. MELLIN | Research Librarian | N/A | | $405.00 | 6.20 | N/A | N/A | $2,511.00 |
| TRICIA J. PEAVLER | Research Librarian | N/A | | $405.00 | 0.60 | $420.00 | 1.30 | $789.00 |
| **Sub-Total\*** | | | | | | | | **$9,549,894.50** |
| Less 50% Discount on Non-working Travel Matter | | | | | | | | $15,075.00 |
| Total | | | | | | | **9,548.60 hours** | **$9,534,819.50** |

**Hearing Date and Time:** July 2023 Omnibus Hearing (TBD)
**Objection Deadline** (for parties other than the Fee Examiner and U.S. Trustee): May 5, 2023, 12:00 p.m. EDT

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**SECOND INTERIM APPLICATION OF SHOBA PILLAY, EXAMINER
AND JENNER & BLOCK LLP FOR COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED AS ATTORNEYS FOR EXAMINER
FOR THE PERIOD OF NOVEMBER 1, 2022 THROUGH MARCH 31, 2023**

Shoba Pillay, Examiner in these chapter 11 cases (the "**Examiner**"), and Jenner & Block

LLP ("**Jenner & Block**"), counsel to the Examiner, hereby submit this interim application for

compensation for professional services rendered and reimbursement of expenses incurred (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Ltd. (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

"**Interim Fee Application**") for the period from November 1, 2022 through and including March 31, 2023 (the "**Interim Period**")[2] in accordance with sections 327, 330, and 331 of title 11 of the United States Code, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, and the *Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Dkt. 1745] ("**Interim Compensation Order**"); the Court's *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated July 17, 2013 (the "**Local Guidelines**"); the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Guidelines**"); and the *Amended Order Appointing Independent Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals* (the "**Fee Examiner Order**") [Dkt. 1746]. In support of this Application, Jenner & Block submits the *Certification of Vincent E. Lazar* (the "**Lazar Certification**"), attached hereto as **Exhibit A**, and respectfully represent as follows:

**Preliminary Statement**

1.      On November 1, 2022, this Court entered the *Order Authorizing Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. 1259] (the "**Retention Order**"), approving the Examiner's employment of Jenner & Block, effective as of September 29, 2022. A copy of the Retention Order is attached hereto as **Exhibit B**. During the

---

[2] By agreement with the Fee Examiner, Jenner & Block includes its March 2023 time in this Interim Fee Application.

Interim Period, the Examiner and Jenner & Block conducted a wide-ranging investigation, collecting and reviewing hundreds of thousands of pages of documents (more than 500 gigabytes of data over the course of her investigation), interviewing more than 45 current and former Celsius personnel and customers (and more than 50 over the course of her investigation), and engaging in extensive information-gathering discussions with the various interested parties, including the Debtors, the Debtors' customers, the U.S. Trustee, the Official Committee of Unsecured Creditors (the "**Committee**"), state and federal regulatory agencies, and the ad hoc committees. The Examiner's investigation culminated in the 302-page Interim Report ("**Interim Report**"), filed with the Court on November 19, 2022 [Dkt. 1411], and the 689-page Final Report ("**Final Report**"), filed with the Court on January 31, 2023 [Dkt. 1956]. Jenner & Block submits that its work during the Interim Period was necessary for, and beneficial to, the Examiner in these chapter 11 cases, and respectfully requests that the Court award the fees and expenses requested in this Interim Fee Application.

## Jurisdiction

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## Background and Case Status

5.      On July 13, 2022 and December 7, 2022, each of the Debtors filed voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3] The Debtors have continued to

---

[3] Debtors Celsius Network LLC, Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining LLC, Celsius Network Inc., Celsius Network Limited, Celsius Networks Lending LLC, and Celsius US Holding LLC

operate their businesses and manage their affairs as debtors and debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

6.       On July 27, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**"), comprised of seven of the Debtors' account holders. [Dkt. 241.]

7.       On August 18, 2022, the United States Trustee filed a motion seeking appointment of an examiner. [Dkt. 546.]

8.       On September 14, 2022, the Court entered the *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. 820] ("**Examiner Order**"), directing the appointment of an examiner under section 1104(c) to conduct an investigation of:

   a.  the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled;

   b.  why there was a change in account offerings beginning in April 2022 from the Earn Program to the Custody Service for some customers while others were placed in a 'Withhold Account';

   c.  the Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto"; and

   d.  the current status of the utility obligations of the Debtors' mining business.

(Examiner Order ¶ 3.)

9.       The Examiner Order also directed the examiner to "otherwise perform the duties of an examiner set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code," subject to the terms of the Examiner Order. (*Id.*)

---

filed voluntary petitions on July 13, 2022. Debtors GK8 Ltd., GK8 UK Ltd., and GK8 USA LLC filed voluntary petitions on December 7, 2022.

10.     On September 29, 2022, the United States Trustee appointed Shoba Pillay as Examiner and filed a notice of the appointment [Dkt. 920] and an application to approve the appointment of the Examiner. [Dkt. 921.] The Court entered an Order approving the appointment of the Examiner the same day. [Dkt. 923.]

11.     On October 11, 2022, the Examiner filed her Work Plan, in accordance with paragraph 7 of the Examiner Order [Dkt. 1013-1] ("**Initial Work Plan**"). Under the Examiner Order, the Examiner's final report was due 60 days after the filing of her Initial Work Plan—*i.e.*, December 10, 2022—absent further order of the Court on notice to all parties. (Examiner Order ¶ 8.)

12.     On October 11, 2022, the Bankruptcy Court entered a scheduling order to address claims made by two *ad hoc* groups. These groups claim that the crypto assets held in what Celsius called Custody and Withhold accounts are property of the account holders, rather than property of Celsius's bankruptcy estates. (*See Joint Stipulation and Agreed Scheduling Order By and Among the Debtors, The Committee, The Ad Hoc Groups With Respect to Custody and Withhold Issues* [Dkt. 1044] ("**Phase I Order**").) Because of factual overlap between this claim and the Examiner's investigation, the Court directed the Examiner to file an Interim Report by November 19, 2022 addressing several factual issues:

- how and when the Custody and Withhold wallets were created;

- whether the Custody and Withhold wallets have only ever held Custody and Withhold Coins, respectively, and whether the Custody and Withhold wallets include coins that have been designated as pledged collateral;

- the process by which coins were transferred in and out of Custody and Withhold wallets;

- the balance of assets in Custody and Withhold accounts and Custody and Withhold liabilities in the ten (10) days before and after the pause by coin;

- the number and types of coins that are currently in Custody and Withhold wallets as a step in an unsuccessful attempt to withdraw coins off of the platform (to the extent ascertainable).

(*Id.* ¶ 7.)

13.     On November 1, 2022, the Court entered an *Order Approving Examiner's Motion to Confirm Examination Scope or Alternatively for Expansion of the Scope of the Examination* [Dkt. 1260] ("**First Scope Order**"), which clarified that:

a.  Topic (i) set forth in the Examiner Order includes an examination of the Debtors' CEL tokens, including why and how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded – including whether any of the Debtors' trading practices involving CEL tokens generally or determinations of CEL tokens awarded as part of the Earn Rewards program – impacted their value, and

b.  Topic (ii) set forth in the Examiner Order includes an examination of the representations Debtors generally made in public representations to customers to attract them to their platform and about their cryptocurrency holdings and account offerings.

(*Id.* ¶¶ 2-3.)

14.     On November 14, 2022, the Court entered a *Stipulation and Agreed Order Modifying Scope of Examiner Order* [Dkt. 1343] ("**Second Scope Order**," and together with the First Scope Order, the "**Examiner Orders**") under which the "[t]he scope of the Examiner's factual investigation and report is expanded to include an investigation and report on whether the Debtors used new deposits being made by customers to make payments or otherwise meet obligations to existing customers at a time when the Debtors had no other sources (whether liquid or which could have been monetized) from which to make such payments or meet such obligations." (*Id.* ¶ 1.).

15.     On November 19, 2022, the Examiner filed the Interim Report, addressing the issues identified in the Phase I Order.

16.    On December 2, 2022, the Court entered an *Order Approving Amended Work Plan* [Dkt. 1562], which approved the Examiner's Amended Work Plan [Dkt. 1438-1] ("**Amended Work Plan**") and extended the Examiner's deadline to file her Final Report to January 17, 2023. (*Id.* ¶ 29.)

17.    On December 8, 2022, the Court entered an order [Dkt. 1645] extending the Debtors' exclusive periods to file and solicit acceptances to a chapter 11 plan to February 15, 2023.

18.    On January 11, 2023, the Examiner moved to extend the deadline for the Final Report to January 30, 2023 [Dkt. 1850]. As set forth in that motion, the Examiner required the extension because of delays in document production and witness interviews. (*Id.* at ¶¶ 11-14.) the Court entered an order [Dkt. 1851] extending the Examiner's deadline to January 30, 2023.

19.    On January 31, 2023, the Examiner filed the Final Report.

20.    On March 21, 2023, the Examiner filed her *Motion for Entry of Order Discharging Examiner* [Dkt. 2284] ("**Discharge Motion**").

21.    On April 4, 2023, the Court entered an order [Dkt. 2364] (the "**Discharge Order**") granting the Discharge Motion and terminating the appointment of the Examiner subject to certain conditions provided therein.

## Jenner & Block's Retention and Fee Request

22.    On September 29, 2022, the Examiner selected Jenner & Block as her counsel. *See Disinterestedness Declaration of Shoba Pillay* [Dkt. 921-1] (the "**Pillay Declaration**").

23.    On October 4, 2022, the Examiner filed her *Application to Employ Jenner & Block LLP as Attorneys to the Examiner* [Dkt. 962].

24.    On November 1, 2022, the Court entered the Retention Order.

25.     On December 15, 2022, the Examiner filed the *First Interim Application of Shoba Pillay, Examiner and Jenner & Block LLP for Professional Services Rendered and Reimbursement of Expenses Incurred as Attorneys for Examiner for the Period of September 29, 2022 through October 31, 2022* [Dkt. 1717] (the "**First Interim Application**"), seeking $1,863,035.50 in fees and $1,135.09 in expenses. Given that the First Interim Application covered only the first 33 days of the Examiner's investigation, the Examiner agreed with the Fee Examiner to defer reporting on its First Interim Application until Jenner filed this Interim Application.

26.     Jenner & Block's fees are based upon hours charged, recorded in tenth-of-an-hour increments, at Jenner & Block's ordinary and customary hourly rates in effect as of January 1 of the calendar year in which the services are rendered, plus reimbursement of actual, necessary, out-of-pocket expenses and other charges incurred by Jenner & Block on behalf of the Examiner. Jenner & Block adjusts its rates annually at the start of each calendar year, as disclosed in its Retention Application and approved by the Retention Order. These rates are consistent with the rates charged to other clients, including outside of bankruptcy. Jenner & Block has shared its hourly rates with the Examiner, and the Examiner has approved these rates.

27.     The summary cover sheet to this Interim Fee Application contains a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services on behalf of the Examiner during the Interim Period, the capacity in which each individual is employed by Jenner & Block, the hourly billing rate charged for services performed by each such individual, the aggregate number of hours expended by all such professionals and paraprofessionals, the aggregate fees billed, and, for attorneys, the year in which each professional was first licensed to practice law.

28.     By this Interim Application, and after taking into account certain voluntary discounts and reductions, Jenner & Block requests (i) interim allowance of $9,534,819.50 for the reasonable compensation for actual, necessary legal services that Jenner & Block rendered to the Examiner during the Interim Period; and (ii) interim allowance of $66,595.09 for the actual and necessary costs and expenses that Jenner & Block incurred in connection with such services during the Interim Period.

29.     This is Jenner & Block's second request for interim compensation in these chapter 11 cases. As set forth in the Lazar Certification, all the services for which interim compensation is sought herein were rendered for and on behalf of the Examiner in connection with these chapter 11 cases. To the best of Jenner & Block's knowledge and as disclosed in the *Pillay Declaration*; *Declaration of Vincent E. Lazar in Support of the Application Authorizing the Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. 962, Ex. C]; the *Supplemental Declaration of Vincent E. Lazar in Support of the Application Authorizing the Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. 1608]; and the *Second Supplemental Declaration of Vincent E. Lazar in Support of the Application Authorizing the Employment of Jenner & Block LLP as Attorneys for the Examiner Effective as of September 29, 2022* [Dkt. 2282] (together, the "**Retention Declarations**"), Jenner & Block is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and except as otherwise specified in the Retention Declarations, Jenner & Block's partners, associates, and special attorneys do not hold or represent any interest adverse to the Examiner.

30.     Jenner & Block might have in the past represented, might currently represent, and likely in the future will represent parties that are parties in interest in these cases in connection

with matters unrelated to the Examiner or the chapter 11 cases. In the Retention Declarations, Jenner & Block disclosed its connections to parties in interest in the chapter 11 cases that it has been able to ascertain using reasonable efforts. Jenner & Block will update such disclosures, as appropriate, if Jenner & Block becomes aware of material new information relevant to the time period during which it was providing services.

31.     Jenner & Block performed the services for which it is seeking compensation solely on behalf of the Examiner and not on behalf of any of the other Debtors, any committee, creditor, or other entity.

32.     Jenner & Block has not received payment or a promise of payment from any source other than the Debtors' estates for its services rendered and expenses incurred on behalf of the Examiner or to be rendered or incurred in any capacity whatsoever in connection with the Chapter 11 cases.

33.     Jenner & Block does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

34.     The Application is supported by the following Exhibits, which are attached hereto and patterned on the U.S. Trustee Guidelines:

35.     **Exhibit C** is a schedule of Jenner & Block attorneys and paraprofessionals including the standard hourly rate for each attorney and paraprofessional who rendered services to the Examiner in connection with these chapter 11 cases during the Fee Period and the title, hourly rate, aggregate hours worked, and the amount of fees attributed to each attorney and paraprofessional.

36.    **Exhibit D** is a schedule of the number of hours expended and fees incurred (on an aggregate basis) by Jenner & Block with respect to each project category that Jenner & Block established in accordance with its internal billing procedures.

37.    **Exhibit E** contains a disclosure of "customary and comparable compensation" charged by Jenner & Block's professionals and paraprofessionals. The blended hourly billing rate of attorneys for all services provided during the Fee Period is $1,014.68. The blended hourly billing rate of all paraprofessionals is $559.19.

38.    **Exhibit F** is a schedule for the Fee Period setting forth the total amount of payment sought with respect to each category of expenses for which Jenner & Block is seeking payment in this Fee Statement. These disbursements total $66,595.09.

39.    **Exhibit G** contains Jenner & Block's detailed time records, which provide a daily summary of the time spent by each Jenner & Block professional and paraprofessional during the Fee Period.

40.    **Exhibit H** contains Jenner & Block's records of expenses incurred in the rendition of professional services to the Examiner during the Interim Period.

**Fees and Expenses Incurred During Interim Period**

**A.    Fees Incurred During Interim Period**

41.    In the ordinary course of Jenner & Block's practice, Jenner & Block maintains records of the time spent on the professional services provided to the Examiner. **Exhibit C** is a summary of fees incurred and hours worked during the Interim Period for which compensation is sought on an hourly basis in this Application, setting forth the following information:

   a.    the name of each attorney and paraprofessional for whose work compensation is sought;

   b.    each attorney's year of bar admission and area of practice concentration;

c. the aggregate time worked and fees billed by each attorney and each paraprofessional during the Interim Period;

d. the hourly billing rates for each such attorney and paraprofessional at Jenner & Block's applicable billing rates; and

e. a calculation of total compensation requested using the rates disclosed in the Interim Fee Application.

## B.   Customary Billing Disclosures

42.   Jenner & Block's hourly rates are set at a level designed to compensate Jenner & Block fairly for the work of its attorneys and paraprofessionals and to cover overhead and operating expenses. The hourly rates and corresponding rate structure utilized by Jenner & Block in these chapter 11 cases are the same as the hourly rates and corresponding rate structure Jenner & Block uses for other restructuring matters and are comparable to the hourly rates and corresponding rate structure that Jenner & Block uses for corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. Jenner & Block's rates and rate structure reflect the complex and time-sensitive nature of restructuring and other matters handled by Jenner & Block. **Exhibit E** is a summary of blended hourly rates for timekeepers during the Interim Period and a comparison to blended hourly rates on other matters.

## C.   Expenses Incurred During Interim Period

43.   In the ordinary course of Jenner & Block's practice, it maintains a record of expenses incurred in rendering professional services to the Examiner and for which reimbursement is sought. **Exhibit F** to this Application is a summary of the total amount of expenses for which Jenner & Block seeks reimbursement with respect to each category of expenses for the Interim Period. The out-of-pocket disbursement sum is broken down into categories of charges.

**<u>Summary of Legal Services Provided During the Interim Period</u>**

44.    During the Interim Period, Jenner & Block provided important professional services to the Examiner in connection with these chapter 11 cases. A summary of the various services Jenner & Block provided to the Examiner during the Interim Period is set forth in paragraphs 47 through 69 below.

45.    Jenner & Block has established, in accordance with its internal billing procedures, project categories for keeping time records of the work performed for the Examiner. A schedule setting forth a description of each project category utilized in this case, the number of hours worked by Jenner & Block attorneys and paraprofessionals for each project category, and the aggregate fees associated with each project category is attached as **Exhibit D**.

46.    The following is a non-exhaustive summary, by project category, of the professional services provided by Jenner & Block during the Interim Period. This summary is organized in accordance with Jenner & Block's internal system of matter numbers.

**Celsius Examiner**
Total Hours: 499.00          Fees: $760,726.50

47.    Jenner & Block's recorded time entries in this project category include all the Examiner's time entries in performing her duties under the Examiner Order and Bankruptcy Code during the Interim Period, which include, among other things: (a) communicating with various parties in interest to facilitate her examination, arrange for cooperation, and avoid duplication of effort; (b) drafting and revising the Interim Report; (c) reviewing background materials and court filings; (d) coordinating leadership team meetings; (e) leading weekly team strategy meetings; (f) preparing a work plan and budget for the investigation; (g) meeting with the Debtors, the UCC, the ad hoc groups, and individual customers; (h) attending key witness interviews; (i) preparing for and taking the interview of Mr. Mashinsky; (j) communicating with regulators and government

13

parties; (k) reviewing customer communications and court filings to consider revisions to the scope of the investigation; and (*l*) drafting and revising the Final Report. Only the Examiner recorded time to this matter.

### Investigation Planning and Coordination
Total Hours: 315.00          Fees: $375,977.50

48.    Jenner & Block's recorded time entries in this project category include, among other things: (a) counseling and assisting the Examiner in the performance of her investigation; (b) preparing investigative workstreams; (c) participating in leadership team meetings with the Examiner to ensure the coordinated and efficient undertaking of her investigation; (d) reviewing and analyzing authority governing the Examiner's investigation; (e) analyzing documents not attributable to another project category; (f) reviewing, analyzing, and preparing memoranda regarding court filings relevant to the Examiner's investigation; and (g) rendering other services related to the Examiner's investigation not attributable to another project category. The Examiner generally conducted a weekly coordination meeting on Fridays that was attended by leads for each of the Examiner's workstream teams. During these meetings, each participant was responsible for presenting to and/or otherwise advising the Examiner or the Jenner team on specific agenda items and the status of that workstream's investigation. The meetings were designed to facilitate the sharing of information to create efficiencies across all workstreams.

### Crypto Analysis
Total Hours: 699.10          Fees: $785,566.50

49.    Jenner & Block's recorded time entries in this project category include, among other things: (a) analyzing all aspects of the Debtors' storage and transfer of cryptocurrency consistent with the investigation scope ordered by the Court (Examiner Order ¶ 3(i)); (b) preparing an investigative plan and workstreams for cryptocurrency analysis, including workstreams focused

on treatment and marketing of the Debtors' CEL token, asset tracking mechanisms, the Debtor's "custody" solution and response to regulatory scrutiny, the Earn program and setting of reward rates, the "flywheel" concept, and the Debtor's financial position and ability to meet customer obligations; (c) reviewing and analyzing coin reports (which included extensive information and detail of the Debtor's holdings and liabilities on a coin-by-coin basis and across multiple areas of coin deployment) and other internal financial data that the Debtor used to keep track of the location and use of its crypto assets; (d) preparing third-party inquiries regarding the Debtors' cryptocurrency storage and transfer of cryptocurrency; (e) reviewing and analyzing information regarding crypto tracing, asset tracking, and related data forensics, including matching on-chain activity with internal business records; (f) preparing for 15 witness interviews relating to cryptocurrency tracing and the Debtor's utilization of its crypto assets (interview time was billed to witness interviews); (g) engaging in dozens of meetings with the Debtor's professionals and Fireblocks (the company that provided Celsius' crypto management platform), which involved extensive discussions concerning the accuracy, availability, and completeness of records produced by Debtors; (h) meeting internally to strategize and coordinate allocation of efforts; and (i) coordinating cryptocurrency tracing aspects of the Examiner's investigation with the Examiner's financial advisor and the Debtors' and Committee's professionals.

50.     As the Final Report lays out in detail, coming to a comprehensive understanding of the Debtor's crypto holdings was a Herculean effort given that (a) the Debtor's company records often were incomplete and/or inaccurate; and (b) due to the large turnover in employee composition, the Debtor often struggled to be able to provide institutional knowledge about certain key facets of its business.

51.    Moreover, time in this category includes efforts to understand how Celsius deployed the billions of dollars of crypto assets under its control in its attempts to obtain yield to pay out the rewards it promised its customers. Over time, the Debtor's deployment strategies grew in terms of size, breadth, and complexity. Jenner engaged in a comprehensive analysis of how the Debtor chose to deploy its crypto assets, how it kept track of those deployments, the return those deployments produced and how the corresponding return (often negative) affected the Debtor's business. As a result of these efforts, the Final Report—marking the first comprehensive examiner's report to be issued in a crypto bankruptcy matter—comprehensively explained how Celsius's storage and use of crypto assets changed over time, the challenges Celsius faced in achieving profitability on its deployment of crypto assets, how Celsius's response to regulatory inquires led the company to take certain actions that potentially affected the legal ownership among Celsius entities, the viability of Celsius's business model and promotion of its CEL token, the location of Celsius crypto assets both pre- and post-petition, and Celsius's ultimately unsuccessful attempts to survive the crypt winter that gripped the industry in 2022.

52.    As the Examiner noted in her Final Report (Section III.C), the Examiner and Jenner encountered several challenges collecting data, records, and information from Celsius. These challenges existed across all scopes of the Examiner's work, but were particularly evident in this matter. As described in Part Two, Section VII of the Final Report, Celsius lacked an effective technical infrastructure to track its assets and liabilities. The Examiner and her team observed inconsistencies and inaccuracies in the financial data that Celsius was unable to explain, and Jenner, in coordination with Huron, had to devote a significant amount of time to piecing together information from various sources. In addition, Celsius's lack of institutional knowledge led to confusion, delays, inconsistencies and mistakes about what was available for the Examiner's

review and resulted in, in some circumstances (in this matter and others), The Examiner being told

records did not exist, which were then subsequently discovered and required her team to backtrack

and analyze belatedly produced documents.

### Document Management and Review

Total Hours: 2,115.60          Fees: $1,317,073.50

53.     Jenner & Block's recorded time entries in this project category include, among

other things: (a) preparing external document requests; (b) preparing document review

workstreams and protocols; (c) coordinating document management with e-discovery vendors;

(d) collecting and processing documents for attorney review; (e) reviewing and analyzing

hundreds of thousands of pages of documents totaling more than 500 gigabytes; and

(f) summarizing and tracking key documents for the Examiner's investigation.

54.     These documents, which the Examiner relied upon to prepare her Interim Report

and Final Report, included (among other things) (a) Celsius organizational charts, rosters, and job

descriptions; (b) Celsius product development documents, policies, and procedures, including

drafts; (c) Celsius Customer Terms of Use; (d) financial and coin reports that Celsius used in the

ordinary course of its business; (e) reports from Celsius's Fireblocks workspaces; (f) emails, Slack

channels, and other communications involving Celsius employees; (g) wallet and asset mapping

documents; (h) materials produced by Celsius to state and federal regulators; (i) Celsius

presentations, agendas, and minutes; (j) financial and accounting data, reports, and projections;

.(k) Celsius's marketing and communications policies, procedures, and style guides; (*l*) documents

related to Celsius's domestic and international tax filings, returns, exemption certificates, and other

related documents, letters, and notifications; (m) communications involving Celsius and its tax

advisors and/or domestic or international taxation authorities; (n) payment records, invoices, and

other financial records associated with Celsius's mining business; and (o) internal reports, analysis, contracts, agreements, and other documents related to Celsius's mining business.

55.    The Examiner and Jenner encountered several challenges collecting data, records, and information from Celsius. The lack of full cooperation created significant challenges for the Examiner as she and her team worked diligently to meet Court-imposed deadlines. For example, Celsius's belated document productions required the Examiner's team to deploy resources to quickly review massive numbers of documents, often on the eve of significant interviews. These and other external document collection and review challenges led to substantial additional work in this project category.

### Communications with Parties In Interest
Total Hours: 174.50          Fees: $162,334.00

56.    Jenner & Block's recorded time entries in this project category include, among other things: (a) meeting and communicating with the Debtors, the Debtors' professionals, the Debtors' customers, the Office of the U.S. Trustee, the Committee, the Committee's professionals, state and federal regulatory agencies, the ad hoc committees, and others regarding sharing of information, coordination of efforts, and avoiding duplication of work; (b) communicating and coordinating with federal and state government agencies to avoid unnecessary interference with, or duplication of, any investigations conducted by such agencies; (c) consulting with the Committee, the Debtors, and the United States Trustee to consider revisions to the scope of the investigation; (d) responding to numerous inquiries from customers and collecting and reviewing information submitted to the Examiner by customers; and (e) other third-party communication not attributable to a specific project category.

**Tax Law Compliance**
Total Hours: 269.70          Fees: $292,157.50

57.    Jenner & Block's recorded time entries in this project category reflect work conducted in connection with an examination of "the Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto" (Examiner Order ¶ 3(iii)), and include, among other things: (a) analyzing all aspects of the Debtors' tax practices; (b) requesting, reviewing, and analyzing tax documents relevant to the Examiner's investigative mandate; (c) meeting internally and with the Examiner's financial advisor regarding strategy and coordination of tax investigation; (d) meeting with representatives from the Debtors, Debtors' professionals, and other third parties regarding tax issues; and (e) preparing for 10 witness interviews relating to tax issues (interview time was billed to witness interviews).

58.    As the Examiner notes in her Final Report, the document challenges described above also led to more time billed to this matter. At the outset of the Examiner's investigation, the Examiner requested certain tax documents and was told those documents did not exist. On December 1, 2022, during a key interview, the Examiner learned that, in fact, those documents did exist. As a result, Celsius agreed to undertake a more comprehensive document and email collection. On December 10, 2022, Celsius began producing thousands of relevant documents and emails that contained information critical to the Examiner's tax investigation. As a result of this belated production, the Examiner had to interview four witnesses a second time (and one of those witnesses a third time) to follow up on information learned through newly provided documents.

**Utility Obligations**
Total Hours: 204.10          Fees: $176,763.00

59.     Jenner & Block's recorded time entries in this project category reflect work conducted in connection with an examination of "the current status of the utility obligations of the Debtors' mining business" (Examiner Order ¶ 3(iv)), and include, among other things: (a) analyzing the Debtors' mining and energy practices relevant to the Examiner's investigative mandate; (b) requesting, reviewing, and analyzing mining and energy documents relevant to the mining and energy aspect of the Examiner's investigative mandate; (c) meeting internally and with the Examiner's financial advisor regarding strategy and coordination of mining and energy aspect of investigation; (d) meeting with representatives from the Debtors, Debtors' professionals, and other third parties regarding mining and energy issues; and (e) preparing for four witness interviews and three meetings with Debtors' vendors relating to mining and utility issues (interview time was billed to witness interviews).

60.     Again, the Examiner's work on this matter was challenged by document production issues, including belated productions of key documents that required additional time to be billed to this matter and piecemeal productions of critical financial documents that necessitated multiple rounds of revisions to the Examiner's analysis of mining-related expenses paid and owed.

**Public Representations to Customers**
Total Hours: 490.10          Fees: $405,849.00

61.     Jenner & Block's recorded time entries in this project category reflect work conducted in connection with an examination of "the Debtors' public representations about their cryptocurrency holdings and account offerings and to attract customers to the Debtors' platform" (First Scope Order ¶ 3) and include, among other things: (a) analyzing the Debtors' pre-Petition Date public representations regarding their business; (b) requesting, reviewing, and analyzing

documents relevant to this aspect of the Examiner's investigative mandate; (c) meeting with representatives from the Debtors, Debtors' professionals, and other third parties regarding the Debtors' public representations; (d) reviewing the Debtors' evolving terms and conditions of use; and (e) preparing for ten witness interviews relating to the Debtors' public representations to customers (interview time was billed to witness interviews).

### Report Preparation and Drafting
Total Hours: 3,564.30          Fees: $4,007,755.00

62.    Jenner & Block's recorded time entries in this project category include, among other things: (a) preparing and drafting the 302-page Interim Report and 689-page Final Report; (b) meeting internally to structure, outline, revise, and finalize the Interim Report and Final Report; (c) collecting and incorporating key documents and background materials into the Interim Report and Final Report; (d) coordinating preparation of appendices and tables with the Examiner's financial advisor; and (e) conducting research and analysis for Interim Report and Final Report not attributable to another project category.

63.    As detailed in paragraphs 8–16 above, orders of the Court modified the timing of the Examiner's reports and the issues to be addressed. In addition to these Court-ordered modifications, the Examiner's preparation of her Interim Report and Final Report was complicated by less than full cooperation from Celsius. As noted above, Celsius's belated document productions forced the Examiner to deploy additional resources to conduct her investigation. By way of example, during the first week of January 2023, Celsius produced 369,962 additional pages of documents. Celsius also caused delays in scheduling the interviews of key witnesses and imposed numerous limitations on those interviews. For example, Celsius required that the Examiner preview her interview topics, limited many interviews to two hours (requiring the

Examiner to re-interview certain witnesses), and, for many key witnesses, produced relevant documents and information after the interviews concluded.

64.     Notwithstanding these challenges, the Examiner and Jenner & Block produced over 1,100 pages of exhaustive public reporting in four months' time. The Examiner's Interim Report and Final Report were well received by the Court, (*see Transcript of Nov. 22, 2022 Hearing* at 33 [Dkt. 1465] (noting appreciation for timely and "very comprehensive" Interim Report, which was admitted by stipulation of the parties in Phase I litigation on Custody and Withhold issues)), Celsius customers, and the public, through extensive coverage of the Final Report in both traditional media (including the Wall Street Journal, Financial Times, Reuters, and Fortune) and industry publications (including the National Law Review, Law360, CoinTelegraph, Decrypt, and many others). In addition, the Examiner's factual findings have been used by parties in litigation within and outside the chapter 11 cases. For example, on March 27, 2023, the New York State Attorney General filed an amended complaint against Alex Mashinsky in which the Attorney General cited directly to the Examiner's Interim Report, Final Report, and the factual findings in the reports. (*The People of the State of New York v. Alex Mashinsky*, Index No. 450040/2023 (N.Y. Sup. Ct.)).

**Witness Interviews**
Total Hours: 696.70          Fees: $705,974.50

65.     Jenner & Block's recorded time entries in this project category include, to the extent not associated with another specific project category: (a) preparing outlines and other materials in advance of witness interviews; (b) conducting more than 50 witness interviews; (c) communicating with third parties in connection with witness interviews; and (d) preparing summaries and memoranda of witness interviews for use in Interim Report and Final Report. The

witness interviews were not recorded, so it was critical for a junior member of the Examiner's team to attend each interview to record detailed, contemporaneous notes and mental impressions.

### Court Hearings
Total Hours: 73.80          Fees: $91,897.00

66.    Jenner & Block's recorded time entries in this project category include, among other things: (a) attending and appearing on behalf of the Examiner at Court hearings; (b) preparing for Court hearings; (c) reviewing pleadings and other submissions considered at or relevant to Court hearings; and (d) preparing memoranda summering key aspects of Court hearings for the Examiner and Jenner team.

### Billing and Fee Applications
Total Hours: 151.40          Fees: $179,164.50

67.    Jenner & Block's recorded time entries in this project category include, among other things: (a) preparing Jenner & Block's monthly fee statements; (b) preparing Jenner & Block's first and second interim fee applications; (c) assisting Huron Consulting Services LLC with its billing and fee submissions; and (d) communicating with the Debtors' counsel concerning conflicts and retention issues.

### Case Administration
Total Hours: 272.30          Fees: $258,506.00

68.    Jenner's recorded time entries in this project category include, among other things: (a) case and project management; (b) reviewing and summarizing pleadings and court filings not attributable to another project category; (c) preparing and updating the master case calendar; (d) attending section 341 meetings of creditors to identify issues relevant to the investigation; (e) internal communications not attributable to another project category; and (f) preparing and filing pleadings and court filings not attributable to another project category.

**Non-Working Travel Time**
Total Hours: 23.00                    Fees: $15,075.00 (after 50% discount)

69.    Jenner's recorded time entries in this project category reflect non-working out-of-town travel in connection with the Examiner's interview of Alex Mashinsky. Jenner is seeking compensation at one-half of its normal rate for these time entries.

### Actual and Necessary Expenses Incurred by Jenner & Block During the Interim Period

70.    As summarized in **Exhibit F** and as set forth in detail in **Exhibit H**, Jenner & Block has incurred a total of $66,595.09 in expenses on behalf of the Examiner during the Interim Period. The expenses identified in Exhibit H are intended to reimburse Jenner & Block's direct costs that are not included in Jenner & Block's hourly billing rates. Only clients who use services of the types set forth in Exhibit H of this Fee Application are charged for such services.

### Jenner & Block's Requested Compensation and Reimbursement Should be Allowed.

71.    The services for which Jenner & Block seeks compensation in this Application were, at the time provided, reasonably calculated to be necessary for and beneficial to the Examiner. Jenner & Block performed these services economically, effectively, and efficiently. Jenner & Block submits that the compensation requested is reasonable considering the nature, extent, and value of such services to the Examiner. Accordingly, Jenner & Block submits that the compensation sought in this Application is warranted and should be approved.

72.    Section 331 of the Bankruptcy Code provides for interim and final compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered … and reimbursement for actual,

necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award

of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded, the court should consider the nature, extent, and the value
> of such services, taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of,
> or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
>
> (e)    whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

73.    Jenner & Block respectfully submits that the professional services provided were

necessary to the administration of these cases and performed economically and efficiently, and

that the compensation requested herein is reasonable in light of the nature, extent, and value of

such services, performed at the direction of the Examiner.

**Reasonable and Necessary Expenses Incurred in Providing Services to the Examiner**

74.    As set forth in Exhibit H attached hereto, and as summarized in Exhibit F attached

hereto, Jenner & Block has incurred a total of $66,595.09 in expenses on behalf of the Examiner

during the Interim Period. These charges are intended to reimburse Jenner's direct operating costs, which are not incorporated into the Jenner & Block hourly billing rates.

## **Statement by Jenner & Block Under Paragraph C(5) of the UST Guidelines**

75.    The following is provided in response to the questions set forth in ¶ C.5 of the U.S. Trustee Guidelines:

> **Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

> **Response:** No.

> **Question:** If the fees sought in this fee application as compared to the fees budgeted for the time covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

> **Response:** As described in the Examiner's Final Report, challenges were encountered during the latter part of the investigation with respect to the timing and availability of information, documents and witnesses which resulted in adjustments to the work scope and schedule. The Examiner was regularly apprised of these developments, but no formal budget was submitted to the Court.

> **Question:** Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

> **Response:** No.

> **Question:** Does this fee application include time or fees related to reviewing the time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

> **Response:** Yes. Jenner & Block spent approximately 20 hours and $26,000 revising its invoices so that privileged and confidential information would not appear in public filings.

> **Question:** Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

**Response:** No. Jenner & Block did not redact its invoices, but as noted immediately above, spent time revising its invoices to protect privileged and confidential information.

**Question:** If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Response:** Jenner & Block increased its hourly rates on January 1, 2023. *See Notice of Rate Increases of Jenner & Block LLP, Counsel to the Examiner* [Dkt. 1732]. The Examiner approved the rate increases and, as a Jenner & Block partner, was aware of Jenner & Block's practice of adjusting its rates at the start of each calendar year.

## Reservation of Rights and Notice

76.     It is possible that some professional time expended or expenses incurred during the Interim Period are not reflected in the Interim Fee Application. Jenner & Block reserves the right to include such amounts in future fee applications. Notice of the Application has been provided to all necessary parties in accordance with the Interim Compensation Order. Accordingly, Jenner & Block submits that no other or further notice need be given.

*(Signature page follows.)*

Dated: April 14, 2023

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ *Vincent E. Lazar*
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com
csteege@jenner.com

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
ksadeghi@jenner.com

*Counsel to the Examiner*