Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,
Celsius SPV Investors, LP, and Celsius
New SPV Investors, LP*

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**SERIES B PREFERRED HOLDERS' OBJECTION TO THE MOTION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I) FOR AUTHORITY TO
FILE A CLASS CLAIM ASSERTING NON-CONTRACT CLAIMS ON BEHALF OF
ACCOUNT HOLDERS OR (II) TO APPOINT A THIRD-PARTY FIDUCIARY TO
ASSERT A CLASS CLAIM ON BEHALF OF ACCOUNT HOLDERS**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Table of Contents**

Preliminary Statement ................................................................................................. 1

Objection ...................................................................................................................... 3

    I.       The Committee Does Not Have Standing to File a Class Claim ......................... 3

    II.     The Criteria for a Class Claim Have Not Been Satisfied. .................................... 5

         A.     The Discretionary Factors Militate Against Applying Rule 23 to the
Proposed Class Claim. ............................................................................ 5

               1.     The putative class was not certified pre-petition ........................... 6

               2.     Putative class members had ample notice of the bar dates. ........... 6

               3.     A class proof of claim would adversely affect administration of
the cases ....................................................................................... 9

         B.     The Proposed Class Claim Does Not Satisfy the Requirements of
Rule 23 .................................................................................................. 12

               1.     Rule 23(a) cannot be satisfied. .................................................... 13

               2.     Rule 23(b)(3) cannot be satisfied ................................................ 14

    III.    The Committee's Fiduciary Duties Preclude It From Pursuing A Class Claim
on Behalf of Account Holders. .......................................................................... 17

Reservation of Rights .................................................................................................. 20

Conclusion ................................................................................................................... 21

## Table of Authorities

**Page(s)**

**Cases**

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*,
 269 F.R.D. 252 (S.D.N.Y. 2010) ...................................................................................... 16

*In re Altair Airlines*,
 25 B.R. 223 (Bankr. E.D. Pa. 1982) ................................................................................... 3

*Bailey v. Jamesway Corp. (In re Jamesway Corp.)*,
 Case No. 95-44821 (JLG), 1997 Bankr. LEXIS 825 (Bankr. S.D.N.Y. June 11,
 1997) ................................................................................................................................... 9

*In re Bally Total Fitness of Greater N.Y., Inc.*,
 402 B.R. 616 (Bankr. S.D.N.Y. 2009) ...................................................................... *passim*

*In re Dana Corp.*,
 574 F. 3d 129 (2d Cir. 2009) ............................................................................................ 18

*In re Dygert*,
 232 B.R. 155 (Bankr. D. Minn. 1999) ................................................................................ 3

*In re Ephedra Products Liab. Litig.*,
 329 B.R. 1 (S.D.N.Y. 2005) ................................................................................................ 6

*In re Grand Theft Auto Video Game Consumer Litig.*,
 251 F.R.D. 139 (S.D.N.Y. 2008) ...................................................................................... 15

*Hughes v. The Ester C Co.*,
 317 F.R.D. 333 (E.D.N.Y. 2016) ...................................................................................... 15

*In re Innkeepers USA Tr.*,
 442 B.R. 227 (Bankr. S.D.N.Y. 2010) .............................................................................. 20

*In re Integra Realty Res., Inc.*,
 262 F.3d 1089 (10th Cir. 2001) .......................................................................................... 5

*In re Ionosphere Clubs*,
 101 B.R. 844 (Bankr. S.D.N.Y. 1989) ................................................................................ 4

*In re Jamesway Corp.*,
 No. 95-B-44821 (JLG), 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) ...................... 6

*Kottler v. Deutsche Bank AG*,
 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010) ............................................................. 14, 16

*Litig. v. Thomson Corp.*,
    654 F.3d 242 (2d Cir. 2011) .................................................................. 13

*In re Major Model Mgmt., Inc.*,
    641 B.R. 302 (Bankr. S.D.N.Y. 2022) ................................................. 6, 9

*In re McLean Indus., Inc.*,
    70 B.R. 852 (Bankr. S.D.N.Y. 1987) ..................................................... 18

*In re MF Glob., Inc.*,
    512 B.R. 757 (Bankr. S.D.N.Y. 2014) ................................................ 5, 10

*Mirant Ams. Energy Mktg., L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*,
    No. 02-CV-6274 (GBD), 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003) ............................. 4

*Moore v. PaineWebber Inc.*,
    306 F. 3d 1247 (2d Cir. 2002) ......................................................... 15, 16

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ............................................. 5, 6, 12

*In re New Century TRS Holdings, Inc.*,
    No. 07-10416, 2013 WL 5377962 (Bankr. D. Del. Sept. 26, 2013) ..................... 17

*Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*,
    493 F.3d 82 (2d Cir. 2007) .................................................................. 3

*In re Parkway Calabasas Ltd.*,
    89 B.R. 832 (Bankr. C.D. Cal. 1988) ................................................... 17

*Poplawski v. Metroplex on the Atl., LLC*,
    2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) .......................................... 13

*In re Residential Cap., LLC*,
    480 B.R. 550 (Bankr. S.D.N.Y. 2012) .................................................. 17

*Ruskin v. TIG Holdings*,
    98 Civ. 1068 (LLS), 1999 WL 756466 (S.D.N.Y. Sep. 23, 1999) ................... 11

*In re Sacred Heart Hospital of Norristown*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ...................................................... 6

*In re Think Fin., LLC*,
    No. 17-33964 (HDH), 2018 WL 9801454 (Bankr. N.D. Tex. Aug. 30, 2018) ........... 5, 8

*In re Tronox Inc.*,
    855 F. 3d 84 (2d Cir. 2017) ........................................................................ 18

*Vincent v. Money Store*,
    304 F.R.D. 438 (S.D.N.Y. 2015) ................................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................... 4

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) .......................................... 9, 10, 14, 15

*In re Worldcom, Inc.*,
    343 B.R. 412 (Bankr. S.D.N.Y. 2006) ........................................................ 15

## Statutes

11 U.S.C. § 524(g) ...................................................................................... 19

## Other Authorities

Federal Rule of Bankruptcy Procedure 2002(a)(7) ........................................ 7

Federal Rule of Bankruptcy Procedure 3001 ................................................ 3

Federal Rule of Bankruptcy Procedure 3007(d)-(e) ................................... 11

Federal Rule of Bankruptcy Procedure 7023 ............................................ 1, 5

Federal Rule of Civil Procedure 23 ..................................................... *passim*

Federal Rule of Civil Procedure 23, 1966 Amendment, comments ........... 14

Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (collectively, the "Series B Preferred Holders"), as beneficial holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares issued by Celsius Network Limited ("CNL" and, together with its above-captioned affiliates, the "Debtors"), by and through their undersigned counsel, hereby submit this objection (this "Objection") to the *Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* [Dkt. No. 2399] (the "Motion"): [2]

## PRELIMINARY STATEMENT

1.      The Motion should be denied.  None of the factors typically considered in determining application of Federal Rule of Bankruptcy Procedure 7023 ("Bankruptcy Rule 7023") are present nor would permitting the vaguely described proposed class claim promote the efficient administration of these cases.

2.      At the eleventh hour (after a plan has already been filed), the Committee seeks to bring an unspecified fraud-type claim or claims, against CNL and other unspecified Debtors, based on pure speculation that each of the more than 600,000 account holders could or would assert such claim or claims.  This should not be permitted.

3.      First, the Committee has no standing to assert non-contract (or any other) claims against CNL or any other Debtor on behalf of all account holders: it is neither a claimant nor a putative class member.  Second, even were that not an unsurmountable hurdle in itself (it is), the Committee has not established that permitting the filing of a class proof of claim would be a

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in Motion.

sound exercise of this Court's discretion.  No similar class of all account holders was certified or even proposed pre-petition, the putative class members had ample notice of both potential fraud-based claims and the bar date, and a class claim would adversely impact the administration of the estates.  Moreover, the Committee is inherently conflicted with respect to this issue. The Committee is a fiduciary for all unsecured creditors.  Proposing to assert non-contract claims on behalf of just account holders of LLC against CNL or other Debtors harms the unsecured creditors at CNL and the other Debtors.  The Committee cannot pick and choose one set of constituents to represent adversely to other of its constituents.

4.    The Committee's suggestion of it identifying and the Court appointing an independent fiduciary does not solve the Committee's conflict problem and is not appropriate in this situation.  The Committee's alternative is not analogous to appointing a future claimants' representative in mass tort cases.  Future claimants are not aware that they have claims, but account holders in these cases are aware of whether they have claims and have actively participated in these cases by filing claims, objecting to relief sought, and submitting correspondence to the Court airing their grievances and concerns.

5.    In addition, the Motion is replete with sweeping generalizations that preclude any real assessment of the propriety of a class claim; it does not specify: (i) who would be in the putative class; (ii) what are the non-contract claims to be asserted; (iii) what allegations give rise to these claims; or (iv) against which Debtors the claims would be asserted.  From the limited information available, the non-contract claims are not likely to be susceptible to class resolution, and there is certainly no basis to justify such a procedure, which should only be used "sparingly."

6.    The Committee's goal throughout these cases has been to assure that no value is "leaked" to the preferred equity holders, regardless of the parties' legal entitlements.  To that

end, the Committee persuaded the Debtors to schedule account holders' contract claims against every Debtor and, because that strategy failed, the Committee now seeks another way to achieve its goal. Indeed, the Motion appears to be nothing but the Committee's attempt to achieve an end-run around the Customer Claims Opinion. An April 11, 2023 tweet from the Committee says as much; the Committee tweeted that if this Motion is granted, it "would allow account holders [to] receive a recovery from CNL and other debtors despite the court's ruling in favor of preferred equity holders." Such misuse of the claims process should not be countenanced, and the Motion should be denied.

## OBJECTION

### I.    The Committee Does Not Have Standing to File a Class Claim.

7.    The Committee does not have standing to file a class claim. Bankruptcy Rule 3001 provides that a proof of claim must set forth "***a creditor's*** claim" and be "executed by ***the creditor or the creditor's authorized agent***." (emphasis added). The Committee is not a creditor as it holds no claim against any Debtor. *See Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P.* (*In re AppliedTheory Corp.*), 493 F.3d 82, 87 (2d Cir. 2007) ("Since the Committee is not itself a creditor, it does not have any rights held by any creditor to assert . . . a claim against another creditor."); *In re Dygert*, 232 B.R. 155, 156 (Bankr. D. Minn. 1999) (finding that "the Committee is not itself a creditor. It holds no claim against Debtor."); *see also In re Altair Airlines*, 25 B.R. 223, 225 (Bankr. E.D. Pa. 1982) ("[W]e are bound by Congress' obvious intention to exclude from the present definition of 'creditor' under the Code any language empowering a 'duly authorized agent, attorney, or proxy' of an entity that has a claim against the debtor to be considered a creditor, in and of itself, of the debtor.").

8.      Nor can the Committee advise or act for the benefit of just one creditor or a subset of creditors. *See Mirant Ams. Energy Mktg., L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*, No. 02-CV-6274 (GBD), 2003 WL 22327118, at \*6 (S.D.N.Y. Oct. 10, 2003) ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.") (internal citations and quotation marks omitted); *In re Ionosphere Clubs*, 101 B.R. 844, 855 (Bankr. S.D.N.Y. 1989) ("[T]he Unsecured Creditors' Committee, as appointed by the United States Trustee, is charged with the responsibility of representing the interests of all unsecured creditors"). In fact, the Committee acknowledged that it could not even assist any creditor in filing a proof of claim. *See* Mar. 30, 2023 UCC Update Town Hall, https://twitter.com/i/spaces/1ypKddNQVYoKW?s=20 (stating that although the UCC could not give individual customers legal advice on filing new, non-contract claims, it could share helpful facts for filing non-contract claims); *see also* @CelsiusUcc, Twitter (Apr. 4, 2023 9:10AM), https://twitter.com/CelsiusUcc/status/1643239508505133056?s=20 ("As promised during the town hall, we have prepared a FAQ…with info you can utilize to prepare a proof of claim for non-contract claims (fraud, etc.) against Celsius Network Limited.").

9.      Similarly, Federal Rule of Civil Procedure 23 ("Rule 23"), permits a class action to be filed by "[o]ne of more members of a class . . . ." A class representative must be a member of the class and "possess the same interest and suffer the same injury" as the class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (citing *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Because the Committee is not a member of the proposed class (as it is neither an account holder nor a creditor), it cannot act on

behalf of the class members.  *See In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1098 (10th Cir.

2001) ("The [ad hoc group of stockholders] itself was not a member of the class.  Thus, it is clear

that the [ad hoc group of stockholders] cannot act as a representative party on behalf of the

unnamed class members.").

10.     Given this fundamental failing, it is not surprising that the Series B Preferred

Holders have not been able to locate, nor has the Committee cited, a single case in which an

official creditors' committee was allowed to file a class claim on behalf of all or a subset of

unsecured creditors.[3]

## II.    **The Criteria for a Class Claim Have Not Been Satisfied.**

### A.     **The Discretionary Factors Militate Against Applying Rule 23 to the Proposed Class Claim.**

11.      Bankruptcy Rule 7023 allows class actions in federal bankruptcy adversary

proceedings.  Although the rule does not expressly provide for class proofs of claim, they may be

allowed at a court's discretion.  *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 619

(Bankr. S.D.N.Y. 2009); *In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y.

2007).  The right is not absolute and should be used "sparingly."  *See In re Musicland*, 362 B.R.

at 650 (citing *In re Sacred Heart Hospital of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa.

1995)).  In exercising their discretion to allow the filing of a class proof of claim, courts consider

whether: (i) a class was certified pre-petition by a non-bankruptcy court; (ii) there has been no

---

[3]     The Committee relies primarily on two cases—*In re MF Global, Inc.* and *In re Think Finance, LLC*, both of which are distinguishable.  Motion ¶¶ 23-32.  In both of those cases, individual claimants filed the class claim, not an official committee.  *See In re MF Glob., Inc.*, 512 B.R. 757, 760 (Bankr. S.D.N.Y. 2014) (authorizing class claim brought by former employee for unpaid accrued vacation time); *In re Think Fin., LLC*, No. 17-33964 (HDH), 2018 WL 9801454, at *1 (Bankr. N.D. Tex. Aug. 30, 2018) (allowing class claim brought by consumer borrowers for violation of the Racketeer Influenced and Corrupt Organizations Act, state usury laws, and consumer protection laws).

actual or constructive notice to the class members of the bankruptcy case and/or the bar date; and (iii) class certification will adversely affect the administration of the case. *See In re Ephedra Products Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. at 620; *In re Jamesway Corp.*, No. 95-B-44821 (JLG), 1997 WL 327105, at *5 (Bankr. S.D.N.Y. June 12, 1997); *see also In re Major Model Mgmt., Inc.*, 641 B.R. 302, 320 (Bankr. S.D.N.Y. 2022) (finding that the plaintiff did not satisfy the burden for the court to exercise its discretion to permit a class proof of claim in part because the class was not certified pre-petition); *In re Musicland Holding Corp.*, 362 B.R. at 655 (noting that pre-petition certification and notice of the bar date are critical considerations in a court's determination of whether to permit a class proof of claim); *In re Sacred Heart Hosp.*, 177 B.R. at 22 (noting that classes certified pre-petition are the "best candidates" for being allowed to file a class proof of claim). The class proof of claim proposed by the Committee fails to satisfy any of these factors.

### 1. *The putative class was not certified pre-petition.*

12.     First, the class proposed by the Committee was not certified prepetition. Nor was any class comprising all account holders proposed prepetition or at any time before this week. Accordingly, there is no reason to think that any creditor thought that they were included within a proposed class and need not file a fraud-based proof of claim.

### 2. *Putative class members had ample notice of the bar dates.*

13.     Second, the account holders have had ample notice of the original bar date and both amended bar dates: in November, the Court entered an order setting the original bar date in January, which was then extended to February.[4] The bar date was further extended until April

---

[4]     *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Dkt. No. 1368]; *Order (I) Extending the Bar Dates for Submitting Proofs of Claim, (II) Approving Notice Thereof, and (III) Granting Related Relief* [Dkt. No. 1846].

28, 2023 for claims affected by the Customer Claims Opinion. *See Notice of Amended Bar Date for Submission of Proofs of Claim* [Dkt. No. 2310] at 2. The Debtors provided rapid and direct notice of relevant case information to account holders through email and push notifications.[5] The Committee nevertheless complains that the months that account holders have had to file fraud claims, more if one includes the additional 32 days given to account holders to amend their proofs of claim following the Customer Claims Opinion, was "insufficient." *See* Motion ¶ 30.[6]

14.    The Committee is wrong. Congress has determined that a 21-day notice is sufficient to apprise claimants of the need to file proofs of claim. See Bankruptcy Rule 2002(a)(7). Not only have account holders had much more notice than this, but in a fairly unique situation, the Committee has taken advantage of social media platforms to communicate regularly with account holders, even holding virtual town halls and tweeting extensive guidance encouraging account holders to file proofs of claim and informing them of the procedures to do so. Specifically, the Committee has been urging account holders to file fraud claims against CNL. *See, e.g.,* @CelsiusUcc, TWITTER (Apr. 4, 2023 9:10AM), https://twitter.com/CelsiusUcc/status/1643239508505133056?s=20 ("As promised during the town hall, we have prepared a FAQ . . . with info you can utilize to prepare a proof of claim for non-contract claims (fraud, etc.) against Celsius Network Limited."); @CelsiusUcc, TWITTER (Mar. 26, 2023 9:20PM), https://twitter.com/CelsiusUcc/status/1640161729853153281?s=20

---

[5]    *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Dkt. No. 1019] at ¶ 17; *Order (I) Extending the Bar Dates for Submitting Proofs of Claim, (II) Approving Notice Thereof, and (III) Granting Related Relief* [Dkt. No. 1803] at ¶ 8.

[6]    In addition, the Committee actively supported a proof of claim form that permitted account holders to assert claims against "All Debtors." *The Official Committee of Unsecured Creditors' Statement (A) in Support of the Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief and (B) in Response to the Preferred Equity Objection* [Dkt. No. 1332] at ¶ 4.

("You have until April 28 to file a proof of claim against any of the Debtors based on the [customer claims] ruling."); Mar. 30, 2023 UCC Update Town Hall, https://twitter.com/i/spaces/1ypKddNQVYoKW?s=20 (stating that although the UCC could not give individual customers legal advice on filing new non-contract claims, it could share helpful facts for filing non-contract claims). With these communications, in addition to the mandatory notice procedures, any account holder interested in pursuing non-contract claims against CNL or any other Debtor has received more than adequate notice of the opportunity to do so.

15.    Moreover, the account holders had ample notice of potential fraud-based claims long before the Customer Claims Opinion was issued. The Committee and individual creditors have not been shy in flagging alleged fraud by Mr. Mashinsky, submitting several letters to point the Court to his alleged misdeeds. *See e.g.,* Dkt. Nos. 12, 182, 210, 212, 236, 256, 491. In fact, certain account holders did file fraud claims against CNL and other Debtors. *See, e.g., Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* [Dkt. No. 2105] (objecting to account holder's fraud claim); *Debtors' Objection to Proof of Claim No. 23959 of Rebecca Gallagher* [Dkt. No. 2106] (similar); *Debtors' Objection to Proof of Claim No. 24480 of Daniel A. Frishberg* [Dkt. No. 2107] (similar). On these facts, it is disingenuous for the Committee to suggest that the notice account holders received was somehow "insufficient."

16.    The Committee attempts to support its contention that the notice factor weighs in its favor by citing *In re Think Finance, LLC.* However, in that case, the court identified "significant weaknesses" in the notice procedures employed, resulting in claimants not receiving effective notice as they "probably would not have recognized any of the entities identified on the [] notice" and "had no idea why they received it." *In re Think Fin., LLC*, No. 17-33964 (HDH), 2018 WL 9801454, at *4 (Bankr. N.D. Tex. Dec. 2, 2019). That is not the case here.

8

### 3.    *A class proof of claim would adversely affect administration of the cases.*

17.    The third factor, like the others, weighs against applying Rule 23 to the class

claim because doing so "would adversely affect the administration of the[ ] cases adding layers

of procedural and factual complexity that accompany class-based claims, siphoning the Debtors'

resources and interfering with the orderly progression of the reorganization." *In re Bally Total*

*Fitness of Greater N.Y., Inc.*, 402 B.R. at 620-21; *In re Woodward & Lothrop Holdings, Inc.*, 205

B.R. 365, 376 (Bankr. S.D.N.Y. 1997) ("[A] bankruptcy case can proceed no faster than its

slowest matter . . . and a class action may 'gum up the works' because until complete, the

bankruptcy court cannot determine the entitlement of other creditors").[7]

18.    As described above, the information to which the Committee points as creating a

basis for filing a class claim has been known for months, if not longer.  The Debtors paused

account holders' withdrawals on June 12, 2022, one month before the Petition Date in July 2022.

Account holders have been pointing to the alleged misrepresentations by Mr. Mashinsky since at

least the Petition Date, the Examiner Report was published on January 31, 2022, and the Court

posed questions regarding fraud claims at the February 6, 2023 hearing and expressly

emphasized, in the Customer Claims Opinion issued on March 17, 2023, that it did not affect

non-contract claims against non-LLC Debtors.  The Debtors and the Committee have been

liaising with the bellwether claimants since at least March 21, 2023, to schedule a claims

---

[7]    The Committee focuses on the final factor, proclaiming it the "principal consideration" (*see* Motion ¶ 25).
Some courts, however, look only at the first two factors.  *See In re Major Model Mgmt., Inc.*, 641 B.R. at 313
(noting that some courts focus on the first two factors only); *In re Bally Total Fitness*, 402 B.R. at 620 ("The
filing of a class proof of claim is consistent with the Bankruptcy Code generally in two principal situations: (i)
where a class has been certified prepetition by a non-bankruptcy court; and (ii) where there has been no actual
or constructive notice to the class members of the bankruptcy case and Bar Date.") (citations omitted), *aff'd*,
411 B.R. 142 (S.D.N.Y. 2009); *Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, Case No. 95-44821 (JLG),
1997 Bankr. LEXIS 825, at *16 (Bankr. S.D.N.Y. June 11, 1997) ("[T]here are two instances in which courts
grant class certification motions.  The first is when the class has been certified pre-petition . . . The second is
when notice of the case or bar date is inadequate or where unnamed class members are in large part 'unknown
creditors.'") (citations omitted).

resolution process for the bellwether claims, which include fraud claims.  *See* 3/21/2023 Hr'g Tr.

At 44:14-18, 46:5-7.[8]  Yet, the Motion was filed only days before the Amended Bar Date and

after a plan had been filed.  Beginning litigation over class certification and any putative class

claims at this late stage is sure to adversely impact administration of the cases.

19.    Additional resources will be required to adjudicate class certification, which, as

discussed below, is improper and bound to be contested.  Account holders' right to pursue their

fraud claims (to the extent asserted) is "amply protected by the chapter 11 claims process itself,"

which makes class status "unnecessary to protect the rights of the various members of the

putative class."  *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. at 620-21; *In re

Woodward*, 205 B.R. at 376.

20.    In support of its assertion that a class proof of claim would not adversely affect

the administration of the estates, the Committee relies on *In re MF Global, Inc.  See* Motion ¶¶

23-32.  In that case, however, a putative class action was filed mere weeks after the SIPA filing

in which the same cause of action was asserted, the debtor's liability had been conceded, and the

only remaining issue was the determination of the amount of the claims.  *In re MF Global, Inc.*,

512 B.R. 757, 765 (Bankr. S.D.N.Y. 2014).  Under those circumstances, the court determined

that allowing a class proof of claim would result in the most expeditious administration of the

estate.  *Id.*  In contrast, here, the issue of liability is far from determined—it is not even clear

what fraud-based claims exactly will be pursued and against which Debtors.  Far from increasing

administrative efficiency, a class proof of claim will "gum-up" the claims process by adding

---

[8]    Interestingly, the Motion contemplates continued litigation of the bellwether claims, which could serve as an efficient resolution of any fraud claims.  *See* Motion ¶ 27 n.22.

layers of procedural and factual complexity, including the briefing necessary to certify a class in the first instance. *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. at 620-21.

21.    The Committee asserts that the administration of these cases will benefit from the class proof of claim route because (i) somehow, it would place an additional burden on the estates if each account holder filed its own amended proof of claim asserting fraud and (ii) the Debtors will have to process (and potentially object to) hundreds of thousands of these individual claims. Motion ¶ 5. Both assertions are nothing more than speculation. Until now, no party in interest in these cases thought that "forcing" the account holders to file non-contract proofs of claim under the original bar date order was too burdensome either on them or on the estates. And if account holders file fraud claims, they can be addressed through omnibus objection procedures. *See* Bankruptcy Rule 3007(d)-(e). But notably, the Committee has not shown that there is any reason to believe 600,000 account holders would file fraud claims against CNL or any other Debtor.[9] There is no reason to believe that all 600,000 account holders saw or heard any of the handful of alleged misrepresentations to which the Committee points, or when they did, or that they spoke the language in which the misrepresentation was made, or in any way relied on such alleged misrepresentations to deposit or keep money at any particular Debtor.[10]

22.    As to the other matters, to sustain fraud-based causes of action, the Committee would have to make sufficiently particularized allegations with respect to the class claims. *See*

---

[9]    Interestingly, the Committee points to a number of statements by Mr. Mashinsky as perhaps giving rise to the purported fraud claim attributing all of these statements to CNL. *See, e.g*, Motion ¶ 3. In fact, Mr. Mashinsky was the Chief Executive Officer of LLC since its founding (*see Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, In Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 23] at ¶ 17).

[10]    The Committee notes that one YouTube video was viewed 13,000 times. Motion ¶ 3. Even assuming that each such viewing was by a unique person, that each such unique person is an account holder, or that such viewing was at the time the representation was made, it amounts to 2% of the 600,000 account holders referenced in the Motion.

*e.g., Ruskin v. TIG Holdings*, 98 Civ. 1068 (LLS), 1999 WL 756466, at *4 (S.D.N.Y. Sep. 23, 1999) (granting motion to dismiss plaintiffs' class action complaint for failure to plead fraud with particularity). Instead, the Committee vaguely alleges misrepresentations: there is no clarity as to which account holder relied on what statements made on behalf of which Debtor nor what portion of which statement gives rise to the fraud claim. The Committee's conclusory assertions, like "account holders relied on those statements and omissions, which inflicted billions of dollars of damages upon them as a result," (Motion ¶ 4) do not come anywhere close to the particularity requirement for pleading fraud-based allegations.

### B.    The Proposed Class Claim Does Not Satisfy the Requirements of Rule 23.[11]

23.    To assert a class claim, a movant must satisfy both Rule 23(a) and 23(b). Rule 23(a) requires that a class action meets four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See In re Musicland* Holding *Corp.*, 362 B.R. at 652. If those criteria are met, Rule 23(b)(3) as is relevant here with respect to class actions for money damages, requires the movant also to establish that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As discussed herein, the Committee fails to meet the requirements of Rule 23.

24.    The Motion fails to define, among other things, the scope of the class, the proposed class claim, and the Debtors against which the class claim would be asserted. Accordingly, it is impossible to present a full response on whether the proposed class claim

---

[11]    In the event the Court determines to permit the Committee to file a class claim, the Series B Preferred Holders reserve all rights to challenge class certification.

satisfies Rule 23. Based on the limited information included in the Motion, however, the proposed class claim suffers fundamental failures that preclude it from proceeding.

### 1.    *Rule 23(a) cannot be satisfied.*

25.    The Committee has not and cannot make a showing that Rule 23(a) requirements are satisfied. The Motion contains no more than speculation as to the number of account holder fraud claims, whether the underlying facts of the fraud claims are the same or arise from the same events, or that the Committee would adequately represent the class.

26.    Furthermore, Rule 23(a)(4) requires that representative parties of a class fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). Inquiry into the adequacy of representation "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Literary Works in Elec. Databases* Copyright *Litig. v. Thomson Corp.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 626, (1997)); *Poplawski v. Metroplex on the Atl., LLC*, 2012 WL 1107711, at *9 (E.D.N.Y. Apr. 2, 2012) (same). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 249. To that end, to satisfy Rule 23(a), the named plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Poplawski*, 2012 WL 1107711, at *23 (quoting *Amchem Prods.*, 521 U.S. at 626); *see Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 249.

27.    Again, the Committee is not a creditor or account holder and thus is not a part of the proposed class; it does not suffer *any* of the alleged injuries suffered by the members of the proposed class. Furthermore, as discussed *infra*, the Committee owes fiduciary duties to *all* creditors, including those who are not members of the proposed class. The Committee's

successful prosecution of the proposed class action would necessarily result in a diluted recovery

of the Debtors' unsecured creditors who are not account holders. Thus, as discussed below,

serving as a class representative for the account holders is fundamentally at odds with the

Committee's fiduciary duties. The Committee cannot fulfill the obligation to fairly and

adequately represent the proposed class.[12]

>    **2.    Rule 23(b)(3) cannot be satisfied.**

28.    Even if there were some common questions of fact presented, the common

questions of law and fact do not *predominate* over the purported class members. The Committee

seeks to have this Court certify an extraordinarily broad class, consisting of **all account**

**holders**—over 600,000 claimants—who "**likely** [have] similar non-contract claims against CNL

and its affiliates based upon, among other things, Celsius and its agents' omission and material

misrepresentations about the risks associated with transferring digital assets to Celsius, including

Misrepresentations . . . ." Motion ¶ 27 (emphasis added). Accordingly, if "there [is] material

variation in the representation made or in the kinds or degrees of reliance by the persons to

whom they were addressed," then the claim is not susceptible to class action. *See* Advisory

Committee Notes to Federal Rule of Civil Procedure 23, 1966 Amendment, comments

concerning Rule 23(b)(3); *see also Kottler v. Deutsche Bank AG*, 2010 WL 1221809, at *4

(S.D.N.Y. Mar. 29, 2010) (finding that Rule 23(b)(3)'s requirement was not satisfied where

individualized proof of fraud claims would predominate at trial); *In re Woodward*, 205 B.R. at

---

[12]    Class counsel must also fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). White & Case LLP and Selendy Gay Elsberg PLLC, as the Committee's counsel, suffer from the same conflict of interest as the Committee itself. Assuming this is the intention, the Committee's counsel cannot simultaneously pursue the conflicting interests of both account holders and other unsecured creditors, and thus does not meet the requirements of fair and adequate representation under Rule 23(g)(4).

375 (Bankr. S.D.N.Y. 1997) (concluding that fraud claims did not satisfy Rule 23 requirements

because defendant did not make uniform allegedly fraudulent representations).

29.    Specifically, the preponderance requirement of Rule 23(b)(3) is not satisfied

where (1) the reliance element of fraud claims requires individualized proof of reliance for each

putative class member or (2) variation between states' fraud laws prevents uniformity of

claims.  *See In re Worldcom, Inc.*, 343 B.R. 412, 429 (Bankr. S.D.N.Y. 2006) ("the [c]lass is not

maintainable under the predominance requirement of Rule 23(b)(3) because the individual

questions of each [c]lass member's reliance predominate and because the [c]ourt would be

required to apply diverse laws and varied burdens of proof to the [c]lass members' claims"); *In

re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 155-56 (S.D.N.Y. 2008)

(decertifying settlement class where reliance element of consumer fraud claims was too

individualized to admit of common proof); *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 353-56

(E.D.N.Y. 2016) (denying consumer fraud class certification motion *inter alia* because reliance

turned on individualized proof and because of material variation between state's common law

fraud claims); *In re Woodward*, 205 B.R. at 371 ("[a] class action is generally not appropriate to

resolve claims based upon common law fraud because each class member must prove his or her

own reliance. This is especially true when the claim is based on false advertising."); *McManus v.

Fleetwood Enters.*, Inc., 320 F.3d 545, 550 (5th Cir. 2003) ("Claims for money damages in

which individual reliance is an element are poor candidates for class treatment, at best.").

30.    Further, contrary to the Committee's suggestion, "liability for fraudulent

misrepresentations cannot be established simply by proof of a central, coordinated

scheme." *Moore v. PaineWebber Inc.*, 306 F. 3d 1247, 1253 (2d Cir. 2002); *see also Vincent v.

Money Store*, 304 F.R.D. 438, 444 (S.D.N.Y. 2015) (quoting *Moore* and denying class

certification for fraud claim that would require "looking to what was sent to each individual borrower"), *aff'd sub nom. Garrido v. Money Store*, 649 F. App'x 103 (2d Cir. 2016). To sustain fraud-based class claims, the claims must be "based on uniform misrepresentations made to all members of the class," as opposed to "fraud claims based on individualized misrepresentations." *Moore v. PaineWebber Inc.*, 306 F. 3d at 1253; *see also Kottler v. Deutsche Bank AG*, No. 08 CIV.7773(PAC), 2010 WL 1221809, at *3 (S.D.N.Y. Mar. 29, 2010) (quoting *Moore* and holding that "[v]aried misrepresentations preclude class certification in a fraud claim"). To this end, when individual reliance is required for a claim, class certification "is the exception, rather than the rule." *Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 257 (S.D.N.Y. 2010).

31.    The Committee must—but has not and cannot—demonstrate that each individual in the entire proposed class relied on uniform alleged misrepresentations. *See Moore v. PaineWebber Inc.*, 306 F. 3d at 1255 ("each plaintiff must prove that he or she personally received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss."). Indeed, the Committee relies on the entirely unsupported allegation that **all** 600,000 account holders may hold non-contract claims against all Debtors—this is a farfetched allegation. Each of these claimants is differently situated, which results in an extremely diverse population, that may or may not have been aware of the alleged misrepresentations. In addition, 45% of the account holders listed on the Debtors' schedules opened accounts post-migration and may have never had any interaction with CNL.[13]

---

[13]    *Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of the Debtors, in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin* [Dkt. No. 1327] ¶ 14.

Accordingly, there will inevitably be "material variation in the representation made or in the
kinds or degrees of reliance by the persons to whom they were addressed."

### III. The Committee's Fiduciary Duties Preclude It From Pursuing A Class Claim on Behalf of Account Holders.

32.     By seeking authority to file the class claim on behalf of just one group of
unsecured creditors against unspecified Debtors, the Committee is breaching its fiduciary duties
to all other unsecured creditors of all Debtors.[14]   The Committee's fiduciary duty is to **all**
unsecured creditors in these chapter 11 cases, not just those unsecured creditors who are account
holders.  *See, e.g.*, *In re Residential Cap., LLC*, 480 B.R. 550, 559 (Bankr. S.D.N.Y. 2012) ("It is
well settled that statutory unsecured creditors committees owe a fiduciary duty to the entire class
of creditors represented by such committee . . . [and] this fiduciary obligation is present 'whether
or not a member of a particular group is included in its membership.'") (quoting *Mirant
Americas Energy Mktg. L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-
CV-6274, 2003 WL 22327118, \*7 (S.D.N.Y. Oct. 10, 2003)); *In re New Century TRS Holdings,
Inc.*, No. 07-10416, 2013 WL 5377962, \*4 (Bankr. D. Del. Sept. 26, 2013) ("An official
committee of unsecured creditors has a duty to represent all general unsecured creditors, to the
extent they have general unsecured claims.").

33.     When there is a single official committee of unsecured creditors in a complex,
multi-debtor case, conflicts of interest may arise where unsecured creditors of one debtor may
have interests diametrically opposed to those of the creditors of one or more other debtors.  *See,
e.g., In re Parkway Calabasas Ltd.*, 89 B.R. 832, 834 n.3 (Bankr. C.D. Cal. 1988) (noting that, in

---

[14]   The Committee is even breaching its fiduciary duties to certain account holders—those account holders who
filed non-contract claims against CNL or other Debtors themselves will have their claims diluted by a class
claim filed on behalf of potentially 600,000 account holders.  Motion ¶ 27.

cases with multiple debtors, "[w]here there are no separate trustees, creditors' committees or counsel, each has a hopelessly irresolvable conflict of interest on a motion for substantive consolidation."); *In re McLean Indus., Inc.*, 70 B.R. 852, 862 (Bankr. S.D.N.Y. 1987) (noting that "[s]election of one committee for two or more jointly administered cases does give rise to the concern that the committee not be overloaded with the creditors of one debtor to the detriment of the representational needs of the creditors of another debtor").

34.    Any recovery by account holders from any Debtor other than LLC would dilute the recoveries of all other unsecured creditors of such Debtor.  In attempting to help account holders recover on non-contract claims against Debtors other than LLC at the expense of all other unsecured creditors of such Debtors, the Committee is inherently conflicted, and therefore cannot prosecute such claims without breaching its fiduciary duties.

35.    The Committee apparently recognizes the existence of this conflict, as it suggests as an alternative that a third-party fiduciary could be appointed to file the class claim and pursue the proposed class action.  Motion ¶ 11.  However, the Committee proposes that it will identify such third-party fiduciary (and presumably heavily coordinate with its appointee), and therefore this proposal is a distinction without a difference, merely elevating form over substance. *See In re Tronox Inc.*, 855 F. 3d 84, 100 (2d Cir. 2017) ("[W]e are wary of putting form over substance."); *In re Dana Corp.*, 574 F. 3d 129, 150 (2d Cir. 2009) (declining to exalt form over substance).[15]  Additionally, by seeking to appoint such a fiduciary, the Committee is already improperly favoring LLC's account holders over all other unsecured creditors—the Committee has not proposed any additional fiduciary to look after the interests of unsecured creditors who

---

[15]    A third-party independent fiduciary (*i.e.*, a party without a claim) would face the same issues as the Committee with respect to standing to file a claim on behalf of a class of creditors.

are not account holders, either in connection with the proposed class action or any other matter in these cases.[16]

36.    The cases cited by the Committee as precedent for the appointment of a third-party fiduciary have no bearing on the circumstances under which the Committee is seeking such appointment here.  In *Kane v. Johns-Manville Corporation*, the bankruptcy court appointed a legal guardian to represent the interests of future asbestos-related personal injury claimants where the official committee of personal injury claimants expressly took the position that it represented only the interests of the present claimants.  843 F. 2d 636, 639 (2d Cir. 1988).[17] Future claimants that are not even aware that they have claims bear no resemblance to the existing account holders in these cases that know they may be creditors and have had ample notice of the potential for fraud claims.[18]  None of the cases cited by the Committee involved a third-party fiduciary appointed solely for the purpose of filing a claim on behalf of a class. Instead, they involved the court appointing third-party fiduciaries (in official committee-like roles) for parties that did not already have a fiduciary representing their interests.

---

[16]    The Committee has not proposed an additional fiduciary to look after the interests of unsecured creditors of CNL in connection with any of the issues of whether (i) account holders have contract claims against each Debtor, (ii) CNL and LLC should be substantively consolidated, or (iii) LLC has a multi-billion dollar intercompany claim against CNL.  The Committee's pursuit towards resolving each of these issues in favor of account holders is unquestionably to the detriment of CNL's unsecured creditors.

[17]    Cases in the mass tort personal injury context are inapplicable here, where claims are based on alleged fraud. Specialized rules and proceedings have been implemented specifically in the asbestos claim context.  *See, e.g.,* 11 U.S.C. § 524(g) (setting forth certain Bankruptcy Code provisions applicable only in asbestos cases).

[18]    The Committee's other cited cases are also distinguishable.  In *In re Century Brass Products, Inc.*, the Second Circuit instructed the bankruptcy court to appoint a representative for the debtor's retirees where the labor union was conflicted from representing such retirees due to its representation of the debtor's active employees.  795 F. 2d 265, 275–76 (2d Cir. 1986).  In *In re Westmoreland Coal Company*, the bankruptcy court appointed third-party representatives for certain retirees only because the U.S. Trustee in that case was unable to locate any such retirees willing to serve on an official retiree committee.  No. 18-35672 ¶¶ 2–4 (Bankr. S.D. Tex. Jan. 10, 2019) [Dkt. No. 1023].

37.     Here, there is no question that LLC's account holders, including those with potential non-contract claims against any Debtor, already have their interests more than adequately represented by the Committee.  Such representation is evidenced by the Committee's numerous acts and statements even before the filing of the Motion, such as statements that the Committee's purpose is to advocate for account holders' recoveries, and the position taken by the Committee during the Customer Claims Issue.[19]  If anything, the cases cited by the Committee indicate that a third-party representative may be warranted for the Debtors' unsecured creditors who are not account holders—exactly the opposite of the Committee's proposal.

38.     Similarly, the Debtors should be objecting to the Motion given their fiduciary duties to maximize the value of each of their estates.  *See In re Innkeepers USA Tr.*, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010) (noting that, "[i]n a bankruptcy case, it is 'Bankruptcy 101' that a debtor and its board of directors owe fiduciary duties to the debtor's creditors to maximize the value of . . . each of the estates in a multi-debtor case," and "in a case with multiple debtors, debtors, as fiduciaries, have ***duties to refrain from favoring or appearing to favor one or another of their estates and its creditors over another***") (emphasis added).  The Debtors cannot sit idly by and allow billions of dollars of non-contract claims to be asserted against one or more of them impacting recoveries of creditors of separate Debtors.

## RESERVATION OF RIGHTS

39.     The Series B Preferred Holders reserve all rights to supplement or amend this Objection.

---

[19]     *See, e.g.*, 8/16/22 Hr'g Tr. at 42:4-10.

## CONCLUSION

40.     For the reasons set forth herein, the Series B Preferred Holders respectfully request that this Court deny the Motion seeking to authorize the Committee to file the class claim or other representative action asserting non-contract claims on behalf of account holders or appointing an independent, third-party fiduciary (identified by the Committee and approved by the Court) to file such class claim or other representative action on behalf of account holders.

*[Remainder of page intentionally left blank]*

Dated:   April 14, 2023
         New York, New York

/s/ Dennis F. Dunne

Dennis F. Dunne
Nelly Almeida
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 660-5219

- and -

Andrew M. Leblanc
Melanie Westover Yanez
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 835-7500
Fax: (202) 263-7586

*Counsel to Community First Partners, LLC,*
*Celsius SPV Investors, LP, and Celsius*
*New SPV Investors, LP*

/s/ Joshua M. Mester

Joshua M. Mester (admitted *pro hac vice*)
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

*Counsel to CDP Investissements Inc.*