**IMPORTANT NOTICE:**

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS HAS SOUGHT AUTHORIZATION TO FILE A CLASS OR OTHER REPRESENTATIVE CLAIM (COLLECTIVELY, A "CLASS CLAIM") ASSERTING NON-CONTRACT CLAIMS—SUCH AS CLAIMS FOR FRAUD, NEGLIGENT MISREPRESENTATION, OR OTHER STATUTORY OR COMMON LAW CLAIMS—ON BEHALF OF ACCOUNT HOLDERS. THE FILING AND PURSUIT OF ANY SUCH CLASS CLAIM IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT, AND THE BANKRUPTCY COURT HAS NOT YET AUTHORIZED THE COMMITTEE OR ANY OTHER PERSON OR ENTITY TO FILE ANY SUCH CLAIM. THE CURRENT AMENDED DEADLINE TO FILE CLAIMS IS APRIL 28, 2023.** *SEE* **DOCKET NO. 2310. CREDITORS SHOULD TAKE STEPS TO PROTECT THEIR RIGHTS BY FILING THEIR OWN PROOFS OF CLAIM OR TAKING ANY OTHER APPROPRIATE STEPS IF CREDITORS WISH TO ASSERT NON-CONTRACT CLAIMS—SUCH AS CLAIMS FOR FRAUD, NEGLIGENT MISREPRESENTATION, OR OTHER STATUTORY OR COMMON LAW CLAIMS.**

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Email: david.turetsky@whitecase.com
sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Email: mandolina@whitecase.com
gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OMNIBUS REPLY IN SUPPORT OF THE MOTION (I) FOR AUTHORITY TO FILE A CLASS CLAIM ASSERTING NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS OR (II) TO APPOINT A THIRD-PARTY FIDUCIARY TO ASSERT A CLASS CLAIM ON BEHALF OF ACCOUNT HOLDERS**

The Committee files this reply (this "**Reply**") in further support of the *Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* [Docket No. 2399] (the "**Motion**")[1] and in response to the objections and responses filed thereto:[2]

### Preliminary Statement

1. The Examiner's final report, the Committee's investigation, and the facts that have emerged during the course of the chapter 11 cases all demonstrate that the Debtors misrepresented the business they operated, the manner in which accounts holders' assets were held and deployed, and material risks assumed by the Debtors. The Debtors' misrepresentations and omissions were manifold, and included, without limitation, lies about the investments the Debtors made and that the Debtors had complied with all applicable regulations when, in fact, the Financial Conduct Authority of the United Kingdom and many U.S. federal and state regulators had asserted that the Debtors were operating illegal or unlicensed businesses. The Debtors' misrepresentations and omissions were not limited to one public filing or a single piece of marketing material. Rather, they pervaded the Debtors' sales pitch and a substantial portion of their communications with

---

[1] Capitalized terms used herein but not defined shall have the meanings given to them in the Motion.

[2] Two objections and one response were filed with respect to the Motion: (i) the *Proposed Securities Litigation Lead Plaintiffs' Statement and Reservation of Rights With Respect to the Committee's Class Claim Motion* [Docket No. 2432] (the "**Securities Plaintiffs' Objection**"); (ii) *Series B Preferred Holders' Objection to the Committee's Class Claim Motion* [Docket No. 2467] (the "**Series B Objection**" filed by the "**Series B Preferred Holders**"); and (iii) *Ignat Tuganov's Response to the Committee's Class Claim Motion* [Docket No. 2474] (the "**Tuganov Response**"). In addition, the *Response By Immanuel J. Herrmann, Daniel A. Frishberg, and Rebecca Gallagher to the Committee's Class Claim Motion* (the "**Bellwether Response**") has been submitted but not yet docketed.

account holders. No party has questioned, or can credibly question, that the Debtors lied to their account holders.

2.  Account holders and unsecured creditors only learned after the Petition Date that "[t]he business model Celsius advertised and sold to its customers was not the business that Celsius actually operated."[3] Consistent with the Committee's fiduciary duties, the Court's observation that its ruling on customer contract claims was without prejudice to the rights of the Committee to assert non-contract claims, and the Court's direction that it wanted the claims process to be a fair fight, the Committee filed the Motion requesting authority to file a class proof of claim or other representative action bringing common claims against CNL and its Debtor-affiliates on behalf of *all* account holders.

3.  The only parties who have outright opposed the Motion are the Series B Preferred Holders.[4] The Series B Preferred Holders do not contest that the company they owned has been widely and credibly accused of fraud.[5] Yet they oppose any collective procedure to determine whether account holders have non-contract claims against CNL.[6] In doing so, the Series B Preferred Holders seek to deprive account holders of any kind of a fair fight and capitalize on the lack of resources and bankruptcy expertise of individual account holders, so that the Series B Preferred Holders may receive recoveries on their *equity* investments in the Debtors' fraudulent

---

[3] Final Examiner Report at 3.

[4] The Securities Plaintiffs and certain account holders requested that the Committee make certain changes to the proposed order submitted with the Motion. Certain of those changes have been incorporated into a revised version of the Committee's proposed order with is attached as **Exhibit A** to this Reply. Other requests raised by creditors are premature and should be deferred to the hearing regarding class certification.

[5] Series B Obj. ¶ 15.

[6] In fact, the Series B Preferred Holders have consistently opposed any comprehensive proceeding to resolve the issues related to their relative entitlement to the Debtors' assets. Their strategy is a transparent attempt to drag these cases out through piecemeal litigation with the goal of creating leverage against the account holders who have been held hostage by the Debtors' prepetition conduct. *See Limited Objection to the Committee's Motion to Establish Procedures to Estimate the Intercompany Claim Between Celsius Network LLC and Celsius Network Limited* [Docket No. 2473].

2

enterprise. In support of this tactic, the Series B Preferred Holders accuse the Committee (and the Debtors) of violating their fiduciary duties and attempt to obscure the issue before the Court by attacking a claim and class certification motion that have not been filed. Yet, the sole question before the Court today is whether it should permit the Committee (and the prospective lead plaintiff(s)) to file a class claim or other representative action. It should.[7]

4. The Series B Preferred Holders first argue that the Committee lacks standing to file the claim because the Committee itself is not a creditor of the Debtors. While the Committee does not hold claims, each of its members do, as do members of the constituency the Committee represents. As in all class actions, if the Motion is granted, the Committee will select a lead plaintiff (or plaintiffs) to bring the class claim who will authorize the Committee to act as its agent and prosecute the action. The Committee will file a motion to certify the class and proposed class claim and all parties with standing will have the opportunity to argue against certification of the class. And, like in all other class actions, if the class is certified, any creditor who wishes to opt-out of the proposed class claim may do so and pursue their own claims against CNL.

5. Second, while the relief requested is somewhat novel, it satisfies the paramount consideration when determining whether to allow the filing of a class claim—the claim will not adversely affect the administration of the cases. As described in the Motion, the filing of a class or other representative claim will aid the reorganization in two different ways. First, it avoids the need for numerous *pro se* creditors to assert and defend non-contract claims against CNL. Second, it avoids the need for another set of professionals to investigate the Debtors' prepetition conduct, presumably at additional expense to creditors. The burden in processing multiple fraud based

---

[7] Alternatively, the Court should direct the appointment of an independent fiduciary to do so.

claims is far "more than speculation."[8] Indeed, the Debtors admitted as much in their bellwether claims objections.[9] And, after initially seeking to adjudicate fraud claims through objections to three *pro se* creditors' claims, the Debtors now agree that a class claim or other representative action is the most efficient and equitable means to determine account holders' non-contract claims against CNL and its Debtor-affiliates.

6.      Third, the Series B Preferred Holders argue that the Court should not allow the filing of a class claim because a class action complaint was not filed prior to the bankruptcy case. The Series B Preferred Holders' attempt to use Celsius' fraud against its customers and their argument that those defrauded customers should have recognized that they were lied to sooner is astonishing. While as equity owners of CNL with representatives and observers on its board of directors, the Series B Preferred Holders may have known what was occurring behind closed doors at CNL, account holders did not. If account holders did, they would not be in this situation.

7.      Finally, the Series B Preferred Holders argue that putative class claimants had ample notice of the April 28, 2023 amended bar date. However, based on the filed affidavit of service, it appears that the Debtors only served the amended bar date notice on the Rule 2002 service list, and not all affected creditors, as required by the Court's bar date order.[10] Even if notice was proper, it is impractical for thousands of creditors to formulate and file claims based on fraud or other non-contract causes of action in the limited period before the Amended Bar Date. As the Series B Preferred Holders note, the Committee has sought to provide information to its

---

[8] Series B Obj ¶ 21.

[9] *See, e.g. Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* [Docket No. 2105] ¶ 13 (objecting that litigating individual non-contract claims, including claims for fraud, "would be prohibitively expensive and time consuming").

[10] *See Affidavit of Service* [Docket No. 2351]; *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 1368] (the "**Bar Date Order**") ¶ 5 (after amending their schedules, Debtors must provide notice of supplemental bar date "to the holders of Claims affected thereby").

constituents regarding the Court's Customer Claims Opinion and the Amended Bar Date through social media and other channels. The Series B Preferred Holders inappropriately characterize those efforts as urging account holders to file fraud claims. No so. Rather, the Committee has sought to fulfill its fiduciary duty to inform its constituents of the Court's ruling and the effect of that ruling and the amended bar date.[11] Through those efforts the Committee has experienced firsthand the significant confusion among account holders regarding the claims process and concern regarding their ability to protect their rights against the Debtors. The Court should reject the Series B Preferred Holders' attempts to take advantage of account holders.

8. The Series B Holders' arguments that the Committee's filing of the Motion violate its fiduciary duty to unsecured creditors are similarly off base. First, the Committee has sought to bring a claim against CNL on behalf of *all* account holders based on the documented, pervasive misrepresentations and omissions by CNL and its management relating to, among other things, the Debtors' business, material regulatory actions, and purported transfer of obligations from CNL to LLC. As described in detail in the Final Examiner Report, and as will be set forth in the proposed class claim, that position is supported by the facts. The claims are also common to the overwhelming majority of the Committee's constituents. The Series B Preferred Holders' attempt to silence the Committee because there are some creditors who have contractual claims against CNL is without merit. Indeed, such an approach would tie the Committee's hands in many important issues in this case. From the beginning of these cases the Committee has responsibly navigated the interests of its constituents and acted in their best interest in an informed manner. It will not sit idle to the detriment of hundreds of thousands of its constituents. Indeed, no creditor

---

[11] The Committee provided its constituents with answers to frequently asked questions regarding the Court's Customer Claims Opinion and the Amended Bar Date, including the elements of the two non-contract claims identified in the Customer Claims Opinion. That document can be accessed at the following link: cases.ra.kroll.com/CelsiusCommittee/Home-DownloadPDF?id1=MjM3OTU5MQ%3D%3D&id2=0.

5

has taken the position that a class claim or representative action should not be filed given the present circumstances. The Series B Preferred Holders are not a member of the Committee's constituency, and therefore lack standing to assert that it has violated any such duties.

9. To the extent that the existence of contract claims at CNL or any other factor disqualifies the Committee from participating in the class claim process—it does not—the Committee has alternatively sought the appointment of a third-party fiduciary to bring such a claim on behalf of all account holders. The appointment of a separate third-party fiduciary could impose additional cost and delay on what is already an expensive chapter 11 process. But such cost and delay outweighed by the burden of asserting and processing thousands of additional claims. With that said, to the extent the Court determines the appointment of an additional creditor representative is necessary, the Committee is prepared to work with the U.S. Trustee to determine how to select such a representative.

10. Finally, the Court should disregard the Series B Preferred Holders' objections regarding a hypothetical class's ability to satisfy Rule 23, as those arguments are premature and properly addressed in connection with a class certification motion. Neither a class claim nor a certification motion has been filed. Court authorization is required before that occurs. It is inappropriate to prejudge the merits of any such claim or motion before it is filed and the Committee (or other representative) presents its case for why each Rule 23 element is satisfied.

## Reply

**I.     The Series B Objection Should Be Overruled**

11. The Series B Preferred Holders argue that the Motion should be denied because: (1) the Committee is not an appropriate representative of account holders to file and prosecute the class claim, Series B Obj. ¶¶ 7-10, 25-27, 32-38; (2) the Committee cannot satisfy Rule 23's other requirements for class certification, *id.* ¶¶ 23-31; and (3) the Court should not exercise its discretion

6

to apply Rule 23 to this matter, *id.* ¶¶ 11-22. None of these arguments has merit.

### A. The Committee May Identify Lead Plaintiffs and Prosecute a Class Proof of Claim on their Behalf

12. Prior to the filing of a class proof of claim, the Committee will identify a lead plaintiff or plaintiffs to bring the class claim on behalf of ***all account holders***.[12] Those lead plaintiffs will be account holders and authorize the Committee to act as their agent in prosecuting the class claim. The class claim will be brought for the benefit of all account holders. Those account holders who do not wish to participate in the class claim will have the opportunity to opt out of the class claim through appropriate procedures, which the Court will approve if it determines the class should be certified under Bankruptcy Rule 7023. The proposed class claim, and the Committee's determination to seek authority to bring such a claim, is based on the facts and circumstances of these cases and an informed evaluation of how to best maximize value for all creditors. The class claim strikes the appropriate balance between all of the Committee's constituents and promotes an efficient, effective, and viable reorganization of the Debtors' estates, which is entirely consistent with the Committee's fiduciary duty. *See Mirant Ams. Energy Mktg., L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*, 2003 WL 22327118, at *6 (S.D.N.Y. Oct. 10, 2003).

13. To the extent the Court believes that the appointment of a separate third-party fiduciary is necessary, the Motion requests that relief in the alternative. However, here the appointment of such a representative may result in delay and the incurrence of additional expense than if the Committee is permitted to identify a lead plaintiff(s) and bring a common claim on behalf of all account holders.

---

[12] Such lead plaintiffs may be members of the Committee or other creditors who have actively participated in these chapter 11 cases.

7

## B. The Court Should Exercise Its Discretion to Apply Bankruptcy Rule 7023

14. Bankruptcy courts evaluate three factors before permitting the filing of a class claim: (1) whether class certification will adversely affect the case's administration, such as by causing undue delay; (2) whether putative class members received notice of the bar date; and (c) whether the class was certified prepetition. *See In re MF Glob.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014). These factors all favor allowing the filing of the class claim.

### 1. The Class Claim Will Promote the Efficient Administration of These Chapter 11 Cases

15. The filing of a class claim will promote the efficient administration of these chapter 11 cases by avoiding the cost and delay imposed on the Debtors' estates through the filing of thousands of additional claims against CNL and the defense of those claims. The Series B Preferred Holders respond that the class claim will unduly delay the administration of these cases because (1) the Committee waited too long to request that the Court and the parties engage in class certification litigation, (2) class certification will add "layers of procedural and factual complexity" to these cases, and (3) the Committee may be unable to plead fraud-based claims plausibly and with specificity. Series B Obj. ¶¶ 17-22. They are wrong on all counts.

16. On the first point, following the Court's Customer Claims Opinion, the Committee acted diligently to take appropriate steps to protect its constituency's rights, while also addressing the numerous other issues necessary to move these cases along. Indeed, the Customer Claims Opinion acknowledges that "the terms of use do not limit Customers (or the Committee) from asserting non-contract claims against CNL, or against other Debtor or non-Debtor affiliates, such as claims for fraud, negligent misrepresentation, or other statutory or common law claims." Customer Claims Op. at 4. Moreover, the Committee proposes to litigate class certification quickly, in parallel with confirmation of the Plan. *See* Mot. ¶ 33. The conclusory statements that

8

class certification litigation is complex are true, but do not establish a persuasive basis for the Court to refuse to allow the Committee to bring a class claim.

17. On the second point, litigating the class certification issues will be more cost-effective and efficient than litigating individual claims allowance issues with thousands of account holders. As the bellwether process has shown (involving three *pro se* account holders), individualized claims litigation with claimants who are not familiar with the bankruptcy or litigation process will take significant time and effort. That litigation on the scale proposed by the Series B Preferred Holders would derail the Plan process, to the detriment of all parties in interest. Indeed, the Debtors agree that filing the class Claim is appropriate here because it will aid the administration of these cases.

18. Finally, whether the class claim is pled with specificity is an issue that can be addressed in any claim objection filed by any party with standing, but need not be addressed in the abstract before the class claim is actually filed.

### 2. Account Holders Did Not Receive Sufficient Notice Under the Circumstances to Assert Non-Contract Claims by the Amended Bar Date

19. The notice factor also weighs in favor of permitting the filing the class claim. As an initial matter, based on the filed affidavit of service, it appears that the Debtors only served the Amended Bar Date Notice on the Rule 2002 service list and not every affected account holder, as required by the Bar Date Order.[13] It is possible that the Debtors provided all affected claimants with notice and have not yet filed the corresponding proof of service. However, to the extent such

---

[13] *Compare Affidavit of Service* [Docket No. 2351], *with* Bar Date Order ¶ 5 ("If the Debtors amend or supplement their Schedules subsequent to the date hereof, the Debtors shall provide notice of any amendment or supplement to the holders of Claims affected thereby. The Debtors shall also provide such holders with notice that they will be afforded at least thirty-five days from the date of such notice to submit Proofs of Claim with respect to Claims affected by the amendment or supplement of the Schedules or otherwise be forever barred from doing so.").

9

notice was not provided, the Bar Date Order requires that all affected claimants have *at least* thirty-five days from the date such notice is provided to file a proof of claim.

20. The Series B Preferred Holders argue that account holders should not receive any more time because (1) the bar date was originally set for January 2023, and (2) account holders had notice of "fraud-based claims long before the Customer Claims Opinion was issued" in March 2023. Series B Obj. ¶¶ 13-15. However, the Customer Claims Opinion fundamentally altered account holders' legitimate expectations. Before the Customer Claims Opinion, account holders whose claims were scheduled in the correct amount could rely on their scheduled claims at every Debtor entity for the balance of their claim. Indeed, the Debtors have argued that is the full measure of damages that account holders may claim in any scenario.[14] After the Customer Claims Opinion and the Debtors' subsequent amendment of the schedules, however, account holders only have scheduled claims against LLC or Celsius Lending LLC.[15] If account holders wish to assert claims against CNL, they now need to file non-contract claims against CNL which satisfy the requirements of valid proofs of claim.[16] That is significantly more difficult that disputing a scheduled contract claim, and requires more assistance from counsel. And while the formulation of such claims is aided by the Final Examiner Report, it is a tall task for a *pro se* account holder to digest the full report, research applicable causes of action, and properly assert a claim in one month.

21. The Series B Preferred Holders highlight that Mr. Frishberg, Ms. Gallagher, and Mr. Herrmann filed timely non-contract claims. *Id.* ¶ 15. But, far from proving their point, the

---

[14] *Debtors' Objection to Proof of Claim No. 23959 of Rebecca Gallagher* [Docket No. 2106] (the "**Gallagher Objection**") ¶ 28 ("the only theoretically available remedy—compensatory damages to recover calculable loss—is already covered by the [contract] claim the Debtors scheduled for Ms. Gallagher").

[15] Amended Bar Date Notice at 2-3.

[16] Bar Date Order ¶ 5.

experience of those three account holders out of the approximately 600,000 creditor population highlights the issues of compelling account holders to proceed without legal representation. Indeed, the Debtors objected to each claim made by Ms. Gallagher, Mr. Frishberg, and Mr. Herrmann as not providing enough detail to support the applicable claim.[17] The Court should not allow the Series B Preferred Holders to deprive account holders of the fair fight to which they are entitled so that the preferred equity may benefit from the legal hurdles placed before account holders, and, as *In re The Connaught Group*, the bar date should be tolled pending the certification of the class to avoid all account holders having to file protective claims. 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013).

### 3. Account Holders Could Not Have Certified the Class Prepetition

22. Finally, the Series B Preferred Holders argue that a proposed class claim should not be allowed because no claim was certified prior to the Petition Date. Series B. Obj. ¶ 12. But this Court has explained that "the issue of prepetition certification loses its relevance" when claimants could not "file a class action complaint ***and certify a class*** before the petition date." *In re MF Glob.* 512 B.R. at 763 (emphasis added). Here, while one complaint alleging Celsius's fraudulent misconduct was filed prior to the Petition Date by Mr. Stone, a former employee of the Debtors, the chapter 11 cases were filed six days later and the claim did not proceed.[18] More important, account holders did not have a similar opportunity to file non-contract claims against CNL prior to the Petition Date because the misrepresentations and omissions of CNL, its Debtor-affiliates, and its directors, officers, and other agents had not been uncovered at that time. It was only after

---

[17] *See* Gallagher Obj. ¶ 19 n.9 ("the various legal theories articulated in Ms. Gallagher's Claim Addendum are deficiently pled and generally conclusory"); *Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* [Docket No. 2105] ¶ 17 n.10 (same); *Debtors' Objection to Proof of Claim No. 24480 of Daniel A. Frishberg* [Docket No. 2107] ¶ 20 n.9 (same).

[18] *KeyFi, Inc. v. Celsius Network Ltd., et al.*, No. 652367/2022 (N.Y. Sup. Ct. July 7, 2022).

11

the Examiner and Committee investigated the facts and circumstances leading to the Debtors' bankruptcies that the fraud perpetrated by CNL came to light.

### C.   The Committee Has Diligently Upheld its Fiduciary Duty to Unsecured Creditors

23.   The Series B Objection asserts, among other things, that by seeking to file the class claim, "the Committee is breaching its fiduciary duties" to unsecured creditors. *See* Series B. Obj. ¶ 32. Since the outset of these cases, the Committee has sought to vigorously pursue the rights of account holders and maximize value for the benefit of all unsecured creditors. The vast majority of its constituents are account holders that now hold over $4 billion of contract claims at LLC. There are also several unsecured claims, including certain trade claims and two institutional unsecured loan claims at CNL. After careful evaluation of the facts, the Committee has determined that all account holders likely have non-contract claims against CNL, there were significant logistical issues with each account holder asserting those claims, and equitable issues if certain account holders asserted those claims, while others did not. Therefore, rather than idly sit by while the Amended Bar Date passed, and in a considered exercise of its fiduciary duties, the Committee sought to inform its constituency regarding the Customer Claims Opinion and the Amended Bar Date and seek to bring the class claim on behalf of all account holders. To the extent the Court does not believe that the Committee (and its chosen lead plaintiff(s)) are the appropriate parties to bring the class claim, it supports the appointment of an independent fiduciary to do so.

24.   Moreover, the Series B Preferred Holders lack standing to object based on the Committee's alleged breach of its duties to other parties. No account holder has raised this objection—to the contrary, account holders support the Motion. *See generally* Bellwether Response. It is black-letter law that the Series B Preferred Holders, to whom the Committee owes no duties, lack standing to make these arguments, and the Court should disregard them. *Kane v.*

*Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988) (finding no third-party standing where "one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan").

### D. The Series B Preferred Holders' Arguments Regarding Class Certification Are Premature

25. The Series B Objection asserts that the class claim will not satisfy Rule 23's requirements for class certification. Series B Obj. ¶¶ 23-31. But objections based on Rule 23's requirements are not ripe, as neither the class claim nor a motion to certify the class has been filed. Rather than address these objections in the abstract, the Court should defer them to the class certification process, where they can be considered on full briefing and an appropriate record.

### II. The Tuganov Response Does Not State a Basis to Deny the Motion

26. Mr. Tuganov "does not object to the filing of an appropriate class claim on behalf of all account holders." Tuganov Resp. ¶ 17. Instead, Mr. Tuganov asserts that the Proposed Order attached to the Motion does not build in sufficient safeguards to protect the interests of all account holders, including account holders with claims arising from the Debtors' Earn program. The Committee has discussed these comments with counsel for Mr. Tuganov and made certain changes to its proposed order in to accommodate certain of Mr. Tuganov's requests. The Court should overrule the remaining requests as either unnecessary or premature.

27. *First*, Mr. Tuganov argues that the Committee should not act as a class representative on behalf of all account holders because the Committee is not "impartial." Tuganov Resp. ¶¶ 16, 20. As stated above, the Committee intends to select one or more lead plaintiffs. Mr. Tuganov's objection bears directly on whether those lead plaintiffs are an adequate representative under Rule 23(a)(4) and should be deferred to class certification.

28. *Second*, Mr. Tuganov requests clarity on "whether the class claim will be voted in

13

connection with the Plan, and if so, who will be entitled to direct the vote on it." *Id*. ¶ 18. Courts that have addressed this issue have concluded that, once a class is certified, the class representative may vote the class claim on the plan. *In re Am. Fam. Enterprises*, 256 B.R. 377, 404 (D.N.J. 2000); *In re Mortgage & Realty Tr.*, 125 B.R. 575, 583 (Bankr. C.D. Cal. 1991). But the class representative's vote will not bind any class members who submitted their votes on claims included in the class before the class was certified. *Id.*

29. Here, the Committee is not seeking to influence account holder voting on the plan in any way through the class claim. The Committee understands that the Debtors' forthcoming disclosure statement motion will seek to allow all claims for voting purposes in their scheduled amounts, unless a claimant files a motion to have its claim allowed in a different amount for voting purposes under Bankruptcy Rule 3018. The Committee will work with the Debtors to ensure any class claim is properly accounted for in the proposed order authorizing solicitation procedures such that it does not affect the voting process and all parties' rights under Bankruptcy Rule 3018 are preserved.

30. ***Third***, Mr. Tuganov flags that the Motion does not disclose "who will be entitled to settle the class claim." Tuganov Resp. ¶ 18. Rule 23 sets specific standards for settling a class claim after certification. *See* Fed. R. Civ. P. 23(e). That rule provides that the representatives for the certified class will have authority to propose a settlement of the class claim, and the Court will decide whether to approve the settlement only after a hearing and notice to account holders. *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000); Fed. R. Civ. P. 23(e)(2). The time to address account holders' potential objections to any prospective settlement is not now, as the Committee only seeks authorization to file the class claim and seek class certification.

31. ***Finally***, Mr. Tuganov requests information regarding "the amount of the

14

contemplated class claim" and the specific theories of liability the class claim will assert. Tuganov Resp. ¶¶ 18-19. If the Court grants the Motion, the Committee will file the class claim as soon as practicable and serve it on all account holders. Any account holders that disagree with the damages that the class claim seeks or its theory of liability, and wish to pursue their own non-contract claims against CNL and its Debtor-affiliates, will have an opportunity to opt-out. All account holders' rights to assess whether they agree with the Committee's formulation of the class claim are reserved and not impacted by the Proposed Order.

### III. The Committee has Included Language in the Proposed Order to Address the Securities Plaintiffs' Objection

32. To resolve the Securities Plaintiffs' Objection, the Committee has included language in the Proposed Order that provides (1) unless otherwise approved by the Court, the Proposed Order does not provide the Committee with standing to assert claims against any party other than the Debtors, (2) the Committee shall consult with the Securities Plaintiffs regarding the claims to be asserted in the class claim, and (3) the rights of all creditors and other parties in interest to object to any class claims filed pursuant to the Motion and any motion to certify a class under Bankruptcy Rule 7023 are preserved.

### Conclusion

33. For the reasons set forth in this Reply and in the Motion, the Committee respectfully requests that the Court enter the Revised Proposed Order and grant such other relief as the Court deems just and proper.

15

Dated: April 17, 2023  
       New York, New York

Respectfully submitted,

/s/ Aaron Colodny  
**WHITE & CASE LLP**  
David M. Turetsky  
Samuel P. Hershey  
1221 Avenue of the Americas  
New York, New York 10020  
Telephone: (212) 819-8200  
Facsimile: (212) 354-8113  
Email: david.turetsky@whitecase.com  
       sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**  
Michael C. Andolina (admitted *pro hac vice*)  
Gregory F. Pesce (admitted *pro hac vice*)  
111 South Wacker Drive, Suite 5100  
Chicago, Illinois 60606  
Telephone: (312) 881-5400  
Facsimile: (312) 881-5450  
Email: mandolina@whitecase.com  
       gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**  
Keith H. Wofford  
Southeast Financial Center  
200 South Biscayne Blvd., Suite 4900  
Miami, Florida 33131  
Telephone: (305) 371-2700  
Facsimile: (305) 358-5744  
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**  
Aaron E. Colodny (admitted *pro hac vice*)  
555 South Flower Street, Suite 2700  
Los Angeles, California 90071  
Telephone: (213) 620-7700  
Facsimile: (213) 452-2329  
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*