Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| Debtors. | ) (Jointly Administered) |

### DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO
### FIRST INTERIM FEE APPLICATIONS OF RETAINED PROFESSIONALS

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, file this omnibus reply (this "Reply") to *Daniel A. Frishbergs' [sic] Omnibus Objection to the First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Interim Fee Period from July 13, 2022 Through and Including October 31, 2022 and Other Various Professionals' Fee Applications* [Docket No. 1823] (the "First Frishberg Objection"),[2] filed on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] In the First Frishberg Objection, *pro se* creditor Daniel Frishberg objected to: (i) the first interim fee applications (each an "Interim Fee Application" and collectively, the "Interim Fee Applications") of Akin Gump Strauss

January 4, 2023, *Daniel A. Frishbergs'* [sic] *Omnibus Objection to Various Professionals' Fee Applications* [Docket No. 1977] (the "Second Frishberg Objection" and together with the First Frishberg Objection, the "Frishberg Objections"),[3] filed on February 2, 2023, and the *Notice of Objection to Fee Statement (Dk 1071)* [Docket No. 1163] (the "Ubierna de las Heras Objection" and, together with the Frishberg Objections, the "Objections"). In support of this Reply, the Debtors state the following:

**Preliminary Statement**

1. As noted before, these chapter 11 cases are at a critical juncture: since July, the Debtors have made tremendous progress in stabilizing their operations in the midst of the tumult brought about by the "crypto winter," exploring all avenues for a value-maximizing outcome, and obtaining rulings on a number of novel legal issues. These achievements would not have been possible without the efforts of the professionals retained by the Debtors, the Committee, and the Examiner, who have worked tirelessly to advance these chapter 11 cases and provide the creditors

---

Hauer & Feld LLP [Docket No. 1707], Centerview Partners LLC [Docket No. 1709], Alvarez & Marsal North America, LLC [Docket No. 1710], Latham & Watkins LLP [Docket No. 1712], and Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland" and, collectively, the "Debtor Professionals") [Docket No. 1721], counsel to the Official Committee of Unsecured Creditors (the "Committee"), White & Case LLP ("White & Case") [Docket No. 1715], financial advisor to the Committee, M3 Advisory Partners, LP ("M3") [Docket No. 1716], blockchain forensics advisor to the Committee, Elementus Inc. ("Elementus") [Docket No. 1718], investment banker to the Committee, Perella Weinberg Partners LP ("Perella Weinberg") [Docket No. 1720]; (ii) the *Second Monthly Fee Statement of DelawareADR, LLC for Compensation for Services and Reimbursement of Expenses as Court-Appointed Independent Fee Examiner, for the Period from November 1, 2022 Through November 30, 2022* [Docket No. 1773] (the "Second DelawareADR Fee Statement"); (iii) the *Fourth Monthly Fee Statement of Elementus Inc. for Interim Compensation and Reimbursement of Expenses as Blockchain Forensics Advisor for the Official Committee of Unsecured Creditors for the Period From November 1, 2022 Through November 30, 2022* [Docket No 1776] (the "Fourth Elementus Fee Statement"); and (iv) the *Omnibus Notice of Filing of First Interim Fee Applications for Debtor Professionals* [Docket No. 1736] (the "Omnibus Notice"). Mr. Frishberg did not explain why he objected to the Omnibus Notice. While the Debtors believe the Omnibus Notice was listed in error, the Debtors include it here for completeness.

[3] The Second Frishberg Objection objected to additional monthly fee statements [Docket Nos. 1895, 1896, 1897, 1898, 1899, and 1943]. The Second Frishberg Objection also purported to object to "any other fee requests other than for the Examiner[] and her professionals" and "any and all expenses that are improper . . . includ[ing] the Examiner and her professionals." Second Frishberg Obj. at 1, 7.

with the highest recoveries possible. Judge Christopher S. Sontchi was appointed as the fee examiner (the "Fee Examiner") in these chapter 11 cases [Docket No. 1746] to (a) review and assess all professionals' interim and final fee applications, (b) determine whether such fee applications comply with the Bankruptcy Code and the applicable fee guidelines, and (c) prepare reports for the Court to aid in the review and approval of such fee applications.

2. In advance of the upcoming April omnibus hearing, and in accordance with the *Amended Order Appointing Independent Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals* [Docket No. 1746] and the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 1745] (the "Amended Interim Compensation Order"), the Fee Examiner recently filed the *Fee Examiner's Summary Report on Fee Review Process and First Interim Fee Applications Scheduled for Uncontested Hearings on April 18, 2023* [Docket No. 2387] (the "Fee Examiner Report"). As detailed in the Fee Examiner Report, the professionals worked with the Fee Examiner and his counsel to discuss any issues raised following the Fee Examiner's review of the Interim Fee Applications and provide additional detail on the appropriateness of fees and expenses when requested. A number of professionals reached consensus with the Fee Examiner on any reductions to the fees requested during the first interim fee period. *See* Fee Examiner Report, Exhibit A. The Fee Examiner noted that all negotiated resolutions "satisfy the Fee Examiner that the fees and expenses recommended for Court approval are both reasonable and necessary to the administration of the cases" and that the Fee Examiner will work with the professionals who have deferred hearing on their applications to a later date to resolve any outstanding issues. *See id.* at 2. As detailed in the Fee Examiner Report, this process is working to ensure that professionals only receive

3

compensation for reasonable fees and expenses, and in conformity with the applicable requirements for the allowance of professional fees.

3. The Fee Examiner noted the unprecedented involvement of *pro se* creditors in these chapter 11 cases and carefully considered the papers filed by such creditors related to professional fee applications. Following the consensual resolution of all outstanding issues related to the professionals' fees and expenses, the Fee Examiner recommended that the Court overrule the Frishberg Objections. *Id.* at 2. In light of the holistic resolution of all issues regarding the Interim Fee Applications, the Debtors echo the Fee Examiner's sentiments and assert that the Objections to the professionals' Interim Fee Applications, fee statements, and Omnibus Notice are without merit and should be overruled.

## Reply

### I. The Ubierna de las Heras Objection Should Be Overruled.

4. Mr. Ubierna de las Heras objected to Kirkland's July monthly fee statement, arguing that certain time entries in the Automatic Stay Matter Number related to a motion to extend the automatic stay to directors should not be billed because the motion was never filed and certain former directors, including Mr. Alex Mashinsky, should not be defended. *See* Ubierna de las Heras Objection at 3–5. Section 330 of the Bankruptcy Code requires only that "services were . . . beneficial at the time at which the service was rendered . . . ." 11 U.S.C. § 330(a)(3)(C). At the direction of the Debtors and based on the Debtors' reasonable belief at the time that it would be beneficial to the Debtors' estates, Kirkland prepared the motion to extend the automatic stay to directors. While the circumstances that would have precipitated the filing of this motion did not occur, the Debtors believed at the time that preparing this motion was necessary and that it was reasonable and appropriate to seek such relief, as reasonableness is not determined in hindsight. *See, e.g.*, *In re Keene*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997) (*citing In re Ames Dept. Stores,*

4

*Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)) (explaining that "[a] court should not apply this test through hindsight . . . as a decision reasonable at first may turn out wrong in the end. Rather, the test is an objective one, and considers 'what services a reasonable lawyer or legal firm would have performed in the same circumstances.'").[4] Instead, what is "reasonable" should be determined based on what was reasonable at the time Kirkland rendered its services.

5.  Further, Kirkland engaged in discussions with the Fee Examiner on a number of topics related to Kirkland's fees and expenses. In the course of these discussions, the Fee Examiner asked questions about the time spent working on the motion to extend the automatic stay that Mr. Ubierna de las Heras referenced in his objection. Kirkland took this into account when agreeing to an overall reduction in fees of $373,213.69 to settle all outstanding issues related to the reasonableness of Kirkland's fees, which the Fee Examiner agreed to. Kirkland submits that in light of the agreement reached with the Fee Examiner and the agreement to reduce fees on account of this motion, the Ubierna de las Heras Objection be overruled.

## II. The Frishberg Objections Regarding Professional Fees and Venue Should Be Overruled.

6.  Mr. Frishberg argues, *inter alia*, that (i) the Southern District of New York (the "District") is an improper venue for these chapter 11 cases, (ii) the United States Bankruptcy Court for the Southern District of New York (the "Court") should transfer these chapter 11 cases to a different venue (either Delaware or New Jersey), and (iii) certain fees and expenses of the

---

[4] Importantly, this Court has cited *Keene* approvingly in *In re Kohl*, 421 B.R. 115 (Bankr. S.D.N.Y. 2009), and in addressing the issue of reasonableness, highlighted a provision of *Collier on Bankruptcy,* which stated that "[w]hether services are necessary is determined from the perspective of the time at which the services were rendered." 3 *Collier on Bankruptcy* ¶ 330.04[1][b][iii]. This Court, in analyzing this provision, explained that the Second Circuit gives a broad interpretation to the necessary standard situated in section 330 of the Bankruptcy Code. *Kohl* 421 B.R. at 125. Further, and citing to *Keene*, this Court highlighted that when "the passage of time makes a reasonable decision appear questionable in the end," attorneys should not be penalized. *Id.* at 127 (citing *Keene*, 205 B.R. at 695).

professionals were inappropriate for various reasons. *See, e.g.*, First Frishberg Obj. at 3. The Second Frishberg Objection largely restates the First Frishberg Objection and does not substantively address the new fee statements cited therein.

7. To the extent the First and Second Frishberg Objections pertained to professional fees, the Fee Examiner has "reviewed and carefully considered" them along with certain other filings by Mr. Frishberg. Fee Examiner Report ¶ 23. As the Fee Examiner noted, Mr. Frishberg's specific fee objections include "billing 17.6 hours of work within a single day, expensing meals above the $20 limit, and general excessive billings." First Frishberg Obj. at 4; Second Frishberg Obj. at 3–4. The Fee Examiner shared Mr. Frishberg's concern about "general excessive billings," and deployed fee review processes to identify, quantify, and adjust for such practices, including adjusting billings that reflected "inadequately described tasks, apparently excessive work on the project, or time inappropriately billed in blocks rather than by tasks." Fee Examiner Report ¶ 26. However, after reviewing all instances of work days in excess of 12 hours with "additional scrutiny," the Fee Examiner recognized that such instances are "not unheard of in bankruptcy practice," found that all such instances recommended for approval were "justified," and recommended that the Court overrule the First Frishberg Objection. Fee Examiner Report at 2, ¶ 26.

8. With regard to Mr. Frishberg's other objections—that venue is not proper and that the fees charged by the retained professionals are higher in this District relative to Delaware or New Jersey—each should be overruled. Disguising a venue objection as an objection over professional fees is not procedurally proper. If Mr. Frishberg wants to assert that venue should be in another district, he should have filed a timely motion to transfer venue. Filing such a request now is certainly untimely given Mr. Frishberg's active participation in these chapter 11 cases since

they were filed in July 2022 and continued vigorous representation of his interests. *See, e.g.*, *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990) (affirming the district court's affirmation of the bankruptcy court's denial of a motion to transfer venue, in part because the motion for transfer venue was untimely); *Bryan v. Land (In re Land)*, 215 B.R. 398, 403 (8th Cir. BAP 1997) (denying a creditor's "tardy motion" to change venue, despite improper venue, when the creditor had actual notice of the debtor's bankruptcy case for at least twenty days but failed to file a motion to change venue until after the chapter 13 plan confirmation hearing), *cited in* Frishberg Objections. While *pro se* creditors ought to be provided with greater leeway than parties represented by counsel, this does not excuse plainly improper procedure. Of course, transferring these chapter 11 cases to another venue at this late stage in the restructuring efforts would unduly delay the resolution of these chapter 11 cases and dramatically increase professional fees, to the detriment of all stakeholders.

9. Moreover, the Debtors have proper venue in this District and reserve all rights to address the matter further should Mr. Frishberg file a motion to transfer venue. A case under title 11 may be commenced in the district court for the district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eight days immediately preceding such commencement" or where there is a "pending case under title 11 concerning such person's affiliate." 28 U.S.C. § 1408(a)(1)–(2). This District is a proper venue for these chapter 11 cases because the principal assets of certain of the Debtors are located in New York. For the Debtor entities without principal assets in this District, they were properly filed as affiliates. Key stakeholders and this Court have acknowledged that venue is proper. Indeed, Mr. Frishberg himself has submitted to this Court's jurisdiction by filing numerous pleadings on the

docket as well as two adversary proceedings. Transferring these properly situated cases at this stage would be highly prejudicial to the Debtors and all parties in interest, given the progress highlighted in the professionals' Interim Fee Applications. *See* Fed. R. Bankr. Pro. 1014(a)(1) (providing that if a bankruptcy case is filed in the proper district, the court, "on the *timely* motion of a party in interest . . . *may* transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties") (emphasis added).

10.  Mr. Frishberg's primary reason for objecting to venue at this time was driven by professional fees. His assertion, however, that professionals are charging "New York rates" that "may be the highest fees in the entire country," is completely baseless. *See* First Frishberg Obj. at 3. As detailed in many of the professionals' retention applications, their hourly rates are market-based and national in scope, meaning they would be billing at the same rates if these cases were pending in any other district.[5] Transferring venue would not save any hourly rates for

---

[5] *See, e.g.*, *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for The Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 360] ¶ 11, Exhibit B ¶ 8 ("The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other debtor representations, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures."); *Debtors' Application to Employ and Retain Alvarez & Marsal North America, Llc as Financial Advisor to the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 410] Exhibit B ¶ 12 ("A&M's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application."); *Debtors' Application for Authority to Retain and Employ Latham & Watkins LLP as Special Counsel to the Debtors Effective as of the Petition Date* [Docket No. 363] Exhibit B ¶ 24 ("L&W's proposed hourly rates reflect that matters in which it is involved are typically national in scope and typically involve great complexity, high stakes, and significant time pressures. These hourly rates . . . are consistent with the rates charged elsewhere."). Courts in the Second Circuit will approve fees for out-of-district attorneys in highly complex chapter 11 cases, such as these, where specialized expertise is necessary. S*ee Simmons v. New York City Transit Authority*, 575 F.3d 170, 175–76 (2d Cir. 2009) (explaining that out-of-district rates may be reasonable where "counsel's special expertise in litigating the particular type of case" is likely to benefit the case and/or "no in-district counsel possessed [the necessary special] expertise" for the case). Courts in other districts share consistent views. *See In re Busy Beaver Bldg. Ctrs., Inc.* 19 F.3d 833, 853 (3d Cir. 1994) (utilizing a "market-driven approach" to fees and directing bankruptcy courts to act like "sophisticated consumers of legal services," and "compare the costs of 'equivalent' practitioners of the art (including their billing structures) as well as the applicant's billing practices with

professionals and, instead, the transfer of venue would simply add to the costs of these chapter 11 cases at the expense of the Debtors' estates and to the detriment of all stakeholders.

## **Conclusion**

11. For the reasons set forth herein, the Court should overrule the Objections.

[*Remainder of page intentionally left blank*]

---

'equivalent' clients")*; Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.* 50 F.3d 253, 259 (3d Cir. 1995) (clarifying the "market approach" stating that "[t]he baseline rule is for firms to receive their customary rates.").

| | |
|---|---|
| New York, New York<br>Dated: April 17, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:	(212) 446-4800<br>Facsimile:	(212) 446-4900<br>Email:	joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:	(312) 862-2000<br>Facsimile:	(312) 862-2200<br>Email:	patrick.nash@kirkland.com<br>	ross.kwasteniet@kirkland.com<br>	chris.koenig@kirkland.com<br>	dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |