Immanuel J. Herrmann, *Pro Se*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

# **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2023, a true and correct copy of the *RESPONSE TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I) FOR AUTHORITY TO FILE A CLASS CLAIM ASSERTING NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS OR (II) TO APPOINT A THIRD-PARTY FIDUCIARY TO ASSERT A CLASS CLAIM ON BEHALF OF ACCOUNT HOLDERS* (D.R. 2476) was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York and served upon Chambers and the Core/2002 service list, and that it was served to the Preferred Series B Shareholders on April 15.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

I further certify that on April 15, a true and correct copy of the *OMNIBUS RESERVATION OF RIGHTS IN RESPONSE TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) ESTABLISHING PROCEDURES TO ESTIMATE THE INTERCOMPANY CLAIM THAT CELSIUS NETWORK, LLC HAS AGAINST CELSIUS NETWORK LIMITED AND (II) GRANTING RELATED RELIEF AND THE SERIES B PREFERRED HOLDERS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING ESTIMATION PROCEDURE FOR THE INTERCOMPANY CLAIM BETWEEN CELSIUS NETWORK LLC AND CELSIUS NETWORK LIMITED IN FURTHERANCE OF FORMULATING THE DEBTORS' PLAN OF REORGANIZATION* (D.R. 2480) was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York and served upon Chambers, the Preferred Series B Shareholders, and the Core/2002 service list.

I further certify that on April 17, true and correct copy of the *SUPPLEMENTAL STATEMENT REGARDING THE DEBTORS' SO-CALLED "KEIP" (THAT IS REALLY A KERP) AND JOINDER TO THE UNITED STATES TRUSTEE'S OBJECTION AND OTHER OBJECTIONS TO THE SAME* (D.R. 2481) was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York and served upon Chambers and the Core/2002 service list.

I further certify that the *JOINDER TO IGNAT TUGANOV'S RESPONSE–AND REBUTTAL TO THE SERIES B PREFERRED HOLDERS' OBJECTION–TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I) FOR AUTHORITY TO FILE

*A CLASS CLAIM ASSERTING NON-CONTRACT CLAIMS ON BEHALF OF ACCOUNT HOLDERS OR (II) TO APPOINT A THIRD-PARTY FIDUCIARY TO ASSERT A CLASS CLAIM ON BEHALF OF ACCOUNT HOLDERS* (D.R. 2482) was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York and served upon Chambers, the Preferred Series B Shareholders, and the Core/2002 service list.

Respectfully Signed,

<u>*/s/ Immanuel J. Herrmann*</u>
*Pro se*
Immanuel J. Herrmann
April 18, 2023

# **OBJECTION**

We object to the Debtor's proposed Key Employee Incentive Plan (KEIP). The plan, as proposed, is impermissible under section 503(c) of the Bankruptcy Code and should be DENIED.

The KEIP is a disguised Key Employee Retention Plan (KERP). It does not meet the strict requirements of section 503(c)(1) and is not justified by the facts and circumstances of the case under section 503(c)(3). Courts have differentiated primarily incentivizing compensation plans from those that are primarily retentive by looking at whether "the goals [are] almost certain to be met regardless of the [relevant] participants' actions." *United Mine Workers of Am.* 1974 Pension Plan & Tr. v. *Alpha Nat. Res., Inc.*, 553 B.R. 556, 563 (E.D. Va. 2016); see also *Residential Capital*, 478 B.R. at 171 ("When a plan is designed to motivate employees to achieve specified performance goals, it is primarily incentivizing, and thus not subject to section 503(c)(1)."). **Under this metric, courts have rejected compensation plans that are conditioned <u>solely on the occurrence of a transaction or emergence,</u>** as this plan appears to do for certain non-mining executives, apart from its time-bound nature. See, e.g., *Residential Capital*, 478 B.R. at 171–72.

Here, the proposed plan pays most insider executives whether there's a confirmed plan <u>**OR**</u> an orderly liquidation. The only factor that isn't almost guaranteed to be met, is the timeline. But the timeline is extremely generous *to say the least* – and paying out **<u>solely on the occurrence of a transaction or emergence</u>** as this plan does, but simply date-limiting it, is a clear end-run around the Bankruptcy Code's strict requirements under 503(c)(1), which that

prohibits exactly the type of "heads I win, tails I win bigger" non-performance-based payments that the Debtors are proposing–unless they are made under the exacting requirements of 503(c)(1).

### AN "ORDERLY LIQUIDATION" BONUS IS NOT PERFORMANCE-BASED

It is not in dispute that proposed KEIP recipients are considered "insiders" within the meaning of section 101(31) of the Bankruptcy Code.[2] And, as the Debtors admit, "section 503(c)(1) of the Bankruptcy Code imposes substantial limitations on retention-based insider compensation programs."

As this Court has said, "payments to 'insiders' **must** satisfy the exacting requirements of section 503(c)(1) of the Bankruptcy Code to be approved." See: *Order Denying Debtors' Sealing Motion and Denying Without Prejudice Debtors' KERP Motion.* [D.R. 1268]

The exception is *truly* incentive-based plans. The Debtors' attempt to label this an incentivizing plan to avoid the strict strictures of Section 503(c)(1) must be viewed with extreme skepticism by the Court, however. In this case, nobody contemplates a Chapter 7 liquidation, given that it would be "starting over" and worse than an orderly liquidation. Plus, it would deny the participating firms and staff releases and exculpations, which the Debtors have already announced they are seeking as part of a Chapter 11 Plan.

Under the proposed plan, if these employees merely show up at work, we are getting one of two things: a Chapter 11 Plan, or, an orderly liquidation. Period. So long as the latter happens

---

[2] Debtors' KEIP motion, paragraph 19.

by December 31, there is a bonus paid. If they fail to meet the deadlines, they can just re-file a new KEIP. This doesn't pass the laugh test.

Paying a bonus if there's an orderly liquidation by **December 31, 2023** is not an incentive. That is paying people just to show up for work and do their jobs. *Velo Holdings*, 472 B.R. at 209 ("Attempts to characterize what are essentially prohibited retention programs as 'incentive' programs in order to bypass the requirements of section 503(c)(1) are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages"); see also *Hawker Beechcraft,* 479 B.R. at 313 ("The concern ... is that the debtor has dressed up a KERP to look like a KEIP in the hope that it will pass muster under the less demanding 'facts and circumstances' standard in ... §503(c)(3)."); *Dana I,* 351 B.R. at 102 n.3 ("If it walks like a duck (KERP) and quacks like a duck (KERP), it's a duck (KERP).").

If the Debtors disagree, they need to produce **evidence** showing that it is an actual challenge to meet that timeline, in particular for an orderly liquidation, and that a guaranteed cash payment is incentive-based.

There is no evidence that this plan is beneficial to creditors or to the estate. Not only **must** bonus plans comply with Section 503(c), but as administrative expenses they must also be "actual, necessary costs and expenses of preserving the estate," as required by Section 503(b). 11 U.S.C. § 503(b); *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) (administrative expenses may not be allowed unless they are actual and necessary to preserve the estate); *In re*

*Regensteiner Printing Co.*, 122 B.R. 323 (N.D. Ill. 1990) (reversing approval of severance agreements for key employees, because debtors presented no evidence that severance payments were necessary to preserve bankruptcy estate). A payment for a liquidation is, quite literally, a severance payment–a severance payment for *failure* at that.

## **THE DEBTORS HAVE NOT EVEN TRIED TO MEET THEIR HIGH BURDEN UNDER 503(c)(1), NOR CAN THEY**

The law is clear that the burden is on the Debtors to either show that the proposed bonus plan either complies with the requirements of section 503(c)(1) or that it is not a disguised retention plan. See *Dana I*, 351 B.R. at 100; *In re Mesa Air Group, Inc.*, No. 10-10018 (MG), 2010 WL 3810899 (Bankr. S.D.N.Y. Sept. 24, 2010), at *2 (citing Global Home Prods., 369 B.R. at 785).

Retention plans usually are intended "to encourage certain crucial employees to remain with the company through a critical, transitional time period when the exact future of the company is unclear and when those employees would be most likely to search for other employment." *In re The Brooklyn Hosp. Ctr. and Caledonian Health Ctr., Inc.,* 341 B.R. 405, 413 (Bankr. E.D.N.Y. 2006).

Although the Debtors style the KEIP as an incentive plan, by listing the only two realistic outcomes that can occur in this case while the Debtors actually remain "Debtors in Possession," they fail to satisfy the stringent criteria that it is not merely retentive. Instead, their plan is a "head's, I win, tails, I win bigger" scenario–a guaranteed payday. The only real argument the

Debtors have that there is any ***performance*** whatsoever in this proposal (apart from the mining incentives for mining executives and Christopher Ferraro), is that it is time bound. But there, too, the Debtors fail. The proposed KEIP gives an ***unduly generous*** amount of time to hit either target, in particular, the orderly liquidation target.

In the end, it is the substance of how and why the proposed payments are made, not the label put on the plan, that is determinative of whether this is a KERP, or a KEIP. *Mesa Air Group, Inc.,* 2010 WL 3810899, at *4 (incentive plans are designed to motivate employees to achieve performance goals).

### **"ORDERLY LIQUIDATION" BY 12/31/23 IS NOT DIFFICULT TO ACHIEVE**

The Debtors produce no evidence that achieving an orderly liquidation by December 31 would require any extra work whatsoever on the part of the proposed recipients, apart from showing up at work and doing their jobs. The whole principle of paying a bonus for an orderly liquidation is fundamentally flawed and is not based on performance (*but* in fact, would indicate poor performance and would indicate that the estate had been milked for professional fees, and we *should* have just liquidated on Day One.)

Undoubtedly, **no matter how bad a job** these employees do, the Counsel to Debtors would fight tooth and nail to avoid Chapter 7–and do either a Chapter 11 Plan or Chapter 11 orderly liquidation. Otherwise, they would be seen as a failure[3], could lose the releases and exculpations already contemplated in the plan, and could otherwise lose control of the case and

---

[3] A failure of the various professionals, including Kirkland & Ellis, who may seek to avoid such a failure, and potential damage to their reputation, at the expense of creditors.

lose future business for their firm. Therefore, no incentive for an orderly liquidation is needed; the incentive is already there. If the Debtors or their counsel disagree with this, they can state under what circumstances they, or these proposed bonus recipients, would ever support the appointment of a Trustee or a Chapter 7 liquidation *in lieu* of an Orderly Liquidation.

Again: Until the Debtors prove otherwise, the Court should be skeptical of this *purported* KEIP. A bonus for an orderly liquidation by December 31 seems, on its face, merely retentive in nature and does not represent a difficult target to reach. That is an insufficient standard for a performance-based reward. See *Hawker Beechcraft*, 479 B.R. at 314 (denying bonus motion where (i) sale price target was not "much of a challenge" and (ii) cash flow targets would be met if debtors do not encounter any "whoopsies"). There is no reason that creditors should have to further compensate insiders, for simply doing their job, and not making too many (more) critical mistakes.

## **ANY BONUS SHOULD BE PAID IN NEWCO EQUITY TO ALIGN INCENTIVES**

If any bonus is to be paid, it should be in locked equity of the NewCo, rather than in cash. The equity should unlock over many years[4]. That will assure incentives are aligned with creditors, and make it truly performance-based. On the other hand, cash bonuses just reward executives for showing up for work and doing their jobs.

Even if the Court finds that the plan, in some form, is permissible under 503(c)(3), it should be highly skeptical and use its discretion to deny, or curtail, the plan as proposed, and

---

[4] The equity should unlock only after the equity of creditors unlocks, so that we do not have another event of insiders dumping (like with CEL token) on creditors.

align incentives between creditors and management, after an appropriate evidentiary hearing on the matter.

## THERE ARE SERIOUS, AND CREDIBLE, ACCUSATIONS REGARDING MISCONDUCT BY PROPOSED KEIP RECIPIENTS

There are serious and credible allegations that certain KEIP recipients may have engaged in wrongdoing, including participating in efforts to hide misrepresentations from customers. As just one example, Roni Cohen, along with several other[5] KEIP recipients, appear to have known certain statements were false, and participated in efforts to remove such statements from Celsius videos while failing to correct the record with customers, or to report the misrepresentation to the company (except in the context of working with a group to remove the offending content without correcting the record).[6] And, so far as we know, none of the proposed KEIP recipients reported the company's wrongdoing to law enforcement (even though one of the proposed recipients was in charge of Celsius's whistleblower policy).

## ANY KEIP NEEDS A DISGORGEMENT CLAUSE

There are ongoing criminal and civil investigations in this case. There is also claims litigation that involves allegations of fraud perpetrated by the company in general, and by certain proposed KEIP recipients in particular. Should this plan move forward before that evidence

---

[5] Such as Mr. Ferraro.
[6] See Exhibit A, where Roni Cohen and some other proposed KEIP recipients made efforts to delete information from AMAs *without* making any effort to correct the record with customers (but rather to hide the record of misstatements): "Let's get your team to send it to him and CC me, Oren, Ron, Aslihan and Rod.I think we all agree on the necessity on fixing it and not only by editing (especially since it's live and there are cases we are unable to edit, like twitter space and 3rd party interviews) Thoughts?" There are also substantial **redacted** portions of the attached documents, which may need to be entered into the record under seal if we cannot agree with the Debtors. See also, Exhibits B and C.

comes to light over our objection, then similar to how Judge Drain did in the *Purdue* case, there should be the ability to seek disgorgement (or cancellation, for not-yet-paid KEIP bonuses) at a later time, including post-confirmation, based on evidence that emerges within this case or from future cases.

We respectfully request that, if the Court moves forward with the proposed KEIP, then all parties' right to seek cancellation or disgorgement of any payments made to 2023 KEIP participants should be preserved, if beneficiaries are later "determined by a final order of this Court or any other court of competent jurisdiction to have (a) participated in any fraudulent or criminal misconduct in connection with his or her employment with the Debtors, (b) been aware, other than from public sources, of acts or omissions of others that such participant knew at the time were fraudulent or criminal with respect to the Company's practices and failed to report such fraudulent or criminal acts or omissions internally at the Company or to law enforcement authorities at any time during his or her employment with the Company or (c) been aware of misrepresentations and engaged in efforts to aid, abet, or otherwise participate in furthering those misrepresentations, or in hiding those misrepresentations from customers without correcting the record" should have their bonuses subject to cancellation and/or disgorgement, and, under no circumstances should such acts receive releases or exculpations in any plan (such releases and exculpations, in any case, are likely unconstitutional, as they would end private causes of action against individuals, including unmatured causes of action that are not yet ripe for adjudication. No court has power to reach beyond its Article III powers.)

**THE MOTION SHOULD BE CONSIDERED AT AN EVIDENTIARY HEARING**

To the extent the KEIP motion moves forward, it should be adjourned until after discovery that is already planned during the claims litigation process, and it should be considered as part of future evidentiary hearing, with cross-examination of the Debtors' expert(s) and potential recipients.

The Motion should be considered at a future evidentiary hearing. We object to the inclusion of the *Declaration of Allison Hoeinghaus* (D.R. 2337) into the record in this matter on declaration alone, without the cross-examination of Ms. Hoeinghaus. We have questions, including whether Ms. Hoeinghaus reviewed the duties of each employee individually, and confirmed that their specific work responsibilities were crucial to achieving the goal of a confirmed Chapter 11 Plan (the only appropriate circumstance in which a KEIP payment may be a true *incentive* as we have outlined), and why, in Ms. Hoeinghaus' opinion, an orderly liquidation result by December 31, 2023 warrants a performance-based bonus at all.

## **BONUSES SHOULD BE DONE IN THE CONTEXT OF A CHAPTER 11 PLAN**

Creditors are waiting for a plan to find out what our distributions will be in the event of a Chapter 11 Plan or Chapter 11 Liquidation. Executives should wait their turn, too, not be given guarantees in the event of either outcome. Any bonus should be done in the context of plan confirmation hearings. Such bonuses should only be awarded if there is a confirmed Chapter 11 plan that provides value to creditors–and could be included in such a plan and paid in locked equity–but no such bonuses should be paid in the event of an orderly liquidation.  This will align interests. Also, if creditors are happy with a plan, opposition may be low at that time–and

creditors may even be willing to forgive some past mistakes, if current management truly worked to maximize value for all creditors, or can raise their objections at that time.

### REQUEST TO EXTEND THE OBJECTION DEADLINE FOR ALL PARTIES

Given the Debtors' adjournment of their Motion, we respectfully request that the Court extend the Objection Deadline to May 11, 2023 at 5pm ET–7 days out from the May 18 Omnibus Hearing, to allow more parties in interest to respond. Individual parties, such as the U.S. Trustee and U.C.C. have requested, and received, additional time, and it would be inequitable to not grant the same opportunity to everyone. All parties in interest should be able to respond, not just parties who are hand-selected by the Debtors. Therefore, rather than requesting an extension from the Debtors, we respectfully request that the Court extend that deadline for all parties in interest to respond.

### RESERVATION OF RIGHTS

We reserve any and all rights with respect to the Motion, including but not limited to amending or supplementing this filing, submitting an evidence and witness list for the hearing on this Motion, and have our evidence entered into the record, to seek to unseal or enter sealed evidence into the record based upon the examiner's report, and to raise additional objections and arguments at the status conference and future hearings.

Respectfully Signed,

Immanuel J. Herrmann
*Pro Se*
*/s/ Immanuel J. Herrmann*
April 10, 2023

Daniel A. Frishberg
*Pro Se*
*/s/ Daniel A. Frishberg*
April 10, 2023