# EXHIBIT C

EXECUTION VERSION

Celsius Core LLC
221 River Road, 9th Flr
Hoboken, New Jersey 07030

June 2, 2021

Rhodium Enterprises, Inc.
7546 Pebble Drive
Fort Worth, Texas
Attention: Nathan Nichols, Chief Executive Officer

Dear Nathan:

    Reference is hereby made to (i) that certain Simple Agreement for Future Equity attached hereto as <u>Exhibit A</u> (the "***Safe***") pursuant to which Celsius Core LLC, a Delaware limited liability company ("***Celsius***") will pay Fifty Million Dollars ($50,000,000) to Rhodium Enterprises, Inc., a Delaware corporation ("***Rhodium***") in exchange for the right to certain shares of Rhodium's Capital Stock, all on the terms set forth in the Safe, and (ii) two purchase orders pursuant to which Celsius will order 15,000 Micro BT M31S+ or better cryptocurrency mining rigs from Shenzhen MicroBT Electronics Technology Co., Ltd. ("***MicroBT***"), with 5,000 being ordered at the current spot price pursuant to the purchase order attached hereto as <u>Exhibit B-1</u>, and 10,000 being ordered at pre-order pricing pursuant to the purchase order attached hereto as <u>Exhibit B-2</u>. This agreement (this "***Agreement***") is entered into in connection with the investment by Celsius in Rhodium pursuant to the Safe. Capitalized terms not explicitly defined herein shall have the meanings ascribed to such terms by the Safe.

    In exchange for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party, the parties hereto, intending to be legally bound, hereby agree as set forth below.

    1.    <u>Safe Funding</u>. On or prior to June 15, 2021, Celsius shall fund the Purchase Amount (as defined in the Safe). Rhodium's obligations set forth in <u>Sections 3</u>, <u>4</u>, <u>8</u>, <u>9</u>, and <u>10</u> of this Agreement shall not become binding upon Rhodium until Celsius has fully funded the Purchase Amount. If Celsius does not fund the Purchase Amount (as defined in the Safe) on or prior to June 15, 2021, then Rhodium shall have the option at Rhodium's election to require Celsius to assign to Rhodium (i) the purchase order attached hereto as <u>Exhibit B-1</u> for the 5,000 cryptocurrency mining rigs that are being ordered at the current spot price, (ii) the purchase order attached hereto as <u>Exhibit B-2</u> for the 10,000 cryptocurrency mining rigs that are being ordered at the pre-order price, or (iii) both such purchase orders; <u>provided</u>, that with respect to each purchase order to be assigned pursuant to this <u>Section 1</u>, Rhodium shall pay to Celsius, concurrently with the closing of such assignment, by wire transfer of immediately available funds, an amount equal to any deposit previously paid by Celsius to MicroBT with respect to such purchase order. Rhodium may exercise its election by written notice to Celsius, specifying the purchase order(s) to be assigned. Celsius, upon receipt of such notice and subject in all events to Rhodium's obligation to pay Celsius for any deposits previously made under the purchase order(s) to be assigned, agrees to irrevocably assign to Rhodium the specified purchase order(s) and to execute such other

documents, and undertake such other and further actions reasonably requested by Rhodium to assign Celsius's title and interest in and to such purchase order(s) to Rhodium.

2. <u>Additional Investments</u>. Celsius shall have the right (but not the obligation), from time to time after the date hereof until the closing of an Equity Financing that results in the conversion of the Safe, to contribute up to an additional One Hundred Million Dollars ($100,000,000) to Rhodium in exchange for the right to certain shares of Rhodium's Capital Stock, such contributions to be made pursuant to one or more additional Simple Agreement for Future Equity agreements on the same terms (including, without limitation, the Valuation Cap and Discount Rate) as set forth in the Safe.

3. <u>Mandatory Distributions</u>. Rhodium shall use its reasonable best efforts to make regular (and in any event no less frequently than quarterly) distributions of operating cash flow to its stockholders. Without limiting the foregoing, if, as of April 1, 2022, a Listing Event has not occurred, then, from April 1, 2022 until the consummation of a Listing Event, (a) Rhodium shall make regular (and in any event no less frequently than quarterly) distributions to its stockholders of Available Cash (such distributions to be made either in cash or in cryptocurrency) and (b) for so long as there are any outstanding Simple Agreement for Future Equity agreements between Celsius and Rhodium, concurrently upon Rhodium making any distribution to its stockholders, Rhodium shall also make a payment (in cash or in cryptocurrency) to Celsius equal to the amount Celsius would have received in connection with such distribution if any such outstanding Simple Agreement for Future Equity had converted to Capital Stock of Rhodium in accordance with its terms immediately prior to the record date for the applicable dividend or other distribution. As used in this Agreement, "*Available Cash*" at any time means an amount equal to (x) 75% multiplied by (y) that portion of the cash (including cryptocurrency) then on hand or in accounts of Rhodium or its subsidiaries at a bank or other financial institution, including cryptocurrency held in wallets directly or through any custodian, that is available for distribution at such time, less any cash and cryptocurrency subject to (i) any restrictions on distributions set forth in any debt agreements or other contracts to which Rhodium or its subsidiaries is a party and (ii) the amount of cash and cash reserves reasonably required (as determined by Rhodium's board of directors, acting reasonably and in good faith) for (A) one year of anticipated energy costs (including additional power capacity to be built within such period) and salary expenses (the amount in this clause (A) not to exceed an aggregate amount equal to 110% of Rhodium's actual energy costs and salary expenses for 12 months prior to the date of this Agreement, as adjusted for anticipated additional power capacity), (B) the development of currently contemplated computing datacenters located in or near Rockdale, Texas and Waco, Texas, and (C) hedging activities on binding purchase orders for cryptocurrency mining rigs. Celsius and Rhodium shall confer with one another in good faith regarding Rhodium's obligations set forth in this <u>Section 3</u> upon request by Rhodium within 30 days after June 1, 2022.

4. <u>Information Rights</u>. Rhodium shall furnish to Celsius the following information:

(a) within 60 days after the end of each fiscal quarter, an unaudited, consolidated balance sheet of Rhodium and its controlled subsidiaries as of the end of such quarter and an unaudited consolidated income statement, statement of stockholders' equity and statement of cash flows of Rhodium and its controlled subsidiaries for such quarter prepared in accordance

with GAAP (with the exception of normal year-end adjustments and the absence of footnotes), consistently applied; and

(b)  within 180 days after the end of each fiscal year, an audited, consolidated balance sheet of Rhodium and its controlled subsidiaries as of the end of such fiscal year and a consolidated income statement, statement of stockholders' equity and statement of cash flows of Rhodium and its controlled subsidiaries for such fiscal year prepared in accordance with GAAP, consistently applied, and a signed audit letter from Rhodium's auditors.

5.  Current Order for Mining Rigs. With respect to the purchase orders attached as Exhibit B-1 and Exhibit B-2, Celsius assumes all risk of loss associated with the purchase order after the purchase order has been accepted by MicroBT and agrees that Celsius shall have no claims against Rhodium or any of its subsidiaries or controlled affiliates (collectively, the "**Rhodium Group**") for any losses incurred by Celsius in respect of such purchase orders, except to the extent such losses arise from Rhodium's breach of this Agreement.

6.  Certain Approval Rights. The prior written consent of Celsius will be required with respect to the following matters: (a) a change in domicile or tax status of Rhodium; (b) any transaction between Rhodium, on the one hand, and any affiliate, stockholder, manager, director, officer or employee of Rhodium or any affiliate of Rhodium, on the other hand, in each case except for (i) transactions by and among Rhodium and/or wholly owned subsidiaries of Rhodium, and (ii) transactions on fair and reasonable terms no less favorable to Rhodium than would be obtainable in a comparable arm's length transaction with a unaffiliated third party; (c) commencement of a voluntary bankruptcy by Rhodium, or Rhodium's consent to the appointment of a receiver, liquidator, assignee, custodian, or trustee for the purposes of winding up the affairs of Rhodium; and (d) any amendment of the organizational documents of Rhodium that is adverse to holders of Rhodium's Class A Common Stock. Celsius shall respond within 48 hours to any written request (including via e-mail) for consent pursuant to this Section 6 and, if Celsius fails to respond within 48 hours, Celsius shall be deemed to have consented to the matter described in such request.

7.  Financial Covenant. Rhodium shall not permit the Leverage Ratio to exceed 3.00:1.00 at any time. For purposes of this Section 7, the following definitions apply:

"*EBITDA*" means, with respect to Rhodium and its subsidiaries on a consolidated basis, earnings before interest, taxes, depreciation and amortization, as adjusted to reflect the acquisition or disposition of persons or assets and other extraordinary or one-time events.

"*Indebtedness*" means, as to Rhodium and its subsidiaries as of any date of determination, without duplication, all of the following: (a) indebtedness for borrowed money, (b) outstanding letters of credit and performance bonds or similar instruments (in each case, to the extent drawn), (c) net obligations of such person under any swap agreements, (d) all obligations of such person to pay the deferred purchase price of property or services (other than trade accounts and accrued expenses payable in the ordinary course of business), (e) capital lease obligations, and (f) to the extent not otherwise included above, all guarantees by such person in respect of any of the foregoing obligations incurred by a third party. Notwithstanding the foregoing, "Indebtedness" shall not include the outstanding principal amount of any convertible notes of the Rhodium Group so long as (i) the interest on such

3

notes is payable exclusively in-kind (i.e., by capitalizing the amount thereof and adding it to the outstanding principal amount of such note(s), and not in cash or cryptocurrency) and (ii) the terms of such note provide for mandatory conversion of all outstanding principal and interest thereunder to Capital Stock on or prior to maturity.

"***Leverage Ratio***" means, as of any date of determination, the ratio of (x) Indebtedness to (y) EBITDA for the trailing 12-month period.

8.    Future Orders for Mining Rigs. For a period of three (3) years from the date hereof, in the event that any member of the Rhodium Group proposes to submit a bid to acquire cryptocurrency mining rigs from a third party (a "***Seller***"), Rhodium shall provide Celsius with advance notice (a "***Bid Notice***") of such bid submission. Such Bid Notice shall include all relevant terms and conditions of the proposed bid (including, without limitation, pricing and delivery terms). Upon receipt of a Bid Notice, Celsius shall promptly, but no later than two (2) business days after receiving the Bid Notice, respond to Rhodium and indicate whether Celsius desires to participate in the proposed bid. If Celsius desires to participate in the proposed bid, Celsius shall concurrently provide Rhodium with notice indicating the number of rigs Celsius desires to bid upon, the applicable delivery location, and any other information reasonably requested by Rhodium (the "***Piggyback Bid***"). Rhodium shall use reasonable best efforts to include the Piggyback Bid with Rhodium's bid to the applicable Seller; provided, however, that in the event a Seller enforces bid limitations, Rhodium shall not be obligated to reduce its own bid to accommodate Celsius's Piggyback Bid. Celsius acknowledges and agrees that any Piggyback Bid shall be subject to the same terms and conditions (other than delivery location) applicable to Rhodium's bid, as set forth in the Bid Notice. Celsius further acknowledges that Celsius assumes all risk of loss associated with a Piggyback Bid after a Piggyback Bid has been accepted by a Seller and agrees that Celsius shall have no claims against the Rhodium Group for any losses incurred by Celsius in respect of such Piggyback Bid, except to the extent such losses arise from Rhodium's breach of this Agreement. Rhodium represents and warrants to Celsius that it has not granted similar rights to those set forth in this Section 8 to any other person, and Rhodium further covenants that it shall not offer any other person the opportunity to participate (directly or indirectly) in any such bid without first either (a) first obtaining Celsius's prior written consent or (b) complying with its obligations set forth in this Section 8. Notwithstanding anything to the contrary herein, Rhodium shall use reasonable best efforts to procure for Celsius the opportunity to purchase additional cryptocurrency mining rigs from MicroBT on the same terms and conditions (other than delivery location) applicable to Rhodium's contemporaneous purchase order.

9.    Available Inventory. For a period of three (3) years from the date hereof, Rhodium shall notify Celsius promptly upon becoming aware of available inventory of cryptocurrency mining rigs from Sellers, regardless of whether or not any member of the Rhodium Group proposes to submit a bid for such inventory. Without limiting the foregoing, Rhodium shall inquire periodically (and in no event less frequently than quarterly) as to inventory availability with up to five (5) Sellers specified by Celsius; provided, that Rhodium shall not be required to make an inquiry of a specific Seller if Rhodium makes a good faith determination that such inquiry would have a material adverse impact on the relationship between Rhodium and such Seller. If any member of the Rhodium Group intends to submit a bid, the provisions of Section 8 shall apply. If no member of the Rhodium Group intends to submit a bid, then Rhodium shall so notify Celsius and, upon Celsius's request, Rhodium shall use its reasonable best efforts to obtain a quote from

the applicable Seller of relevant terms and conditions (including, without limitation, pricing and delivery terms) and, at Celsius's direction, promptly submit a bid to such Seller. Celsius acknowledges and agrees that any such bid shall be subject to the same terms and conditions (other than delivery location) as would otherwise be applicable to a bid by a member of the Rhodium Group. Celsius further acknowledges that Celsius assumes all risk of loss associated with any such bid after it has been accepted by a Seller and agrees that Celsius shall have no claims against the Rhodium Group for any losses incurred by Celsius in respect of such bid, except to the extent such losses arise from Rhodium's breach of this Agreement.

10. Right of First Offer. For a period of three (3) years from the date hereof, but with the exception of anticipated third-party financing by NYDIG and/or existing investors in an amount not to exceed $75 Million in the aggregate, Rhodium agrees that it will approach Celsius first with respect to any third-party lending or financing transaction that Rhodium or any member of the Rhodium Group anticipates undertaking. Within a reasonable time thereafter, Celsius shall provide Rhodium with the pricing and other material terms and conditions pursuant to which Celsius would be willing to meet such third-party lending or financing needs. If Celsius fails to respond to Rhodium pursuant to the immediately preceding sentence, Celsius shall be deemed to have declined such opportunity. Rhodium hereby agrees that Celsius shall be entitled to service, on an annual basis, 25% (based on annual transaction value) of all such third-party lending and financing transactions of the Rhodium Group for which Celsius offers commercially reasonable terms, subject to Celsius providing reasonable assurances to Rhodium in respect of Celsius's risk management and cybersecurity functions.

11. Charter Amendment. As soon as reasonably practicable, and in any event on or prior to June 11, 2021, Rhodium shall deliver to Celsius (a) copies of resolutions of the board of directors of Rhodium, authorizing and approving this Agreement, the Safe, and the filing of an amendment to Rhodium's certificate of incorporation providing for an increase in the number of authorized shares of Class A Common Stock sufficient to allow Rhodium to issue shares of Class A Common Stock to Celsius upon conversion of the Safe in accordance with its terms (the "*Charter Amendment*"), (b) copies of resolutions of the stockholders of Rhodium, authorizing and approving the Charter Amendment, and (c) evidence of the filing of the Charter Amendment with the Secretary of State of the State of Delaware. In the event Rhodium fails to comply with the provisions of this Section 11, then, at Celsius's election and upon written notice to Rhodium, this Agreement and the Safe shall each terminate automatically and be of no further force or effect.

12. Miscellaneous.

(a) Term. This Agreement shall remain in full force and effect until the date on which Celsius no longer holds any capital stock of any member of the Rhodium Group (including rights in or to capital stock pursuant to a Simple Agreement for Future Equity).

(b) Notices. Any notices pursuant to this Agreement shall be in writing and shall be deemed sufficiently given upon the earlier of actual receipt, or (i) personal delivery to the party to be notified, (ii) when sent, if sent by electronic mail during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, or (iii) one business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All

communications shall be sent to the respective addresses of the parties set forth above, or to any other address specified by any party by written notice to the other party in accordance with this Section 12(b).

(c)    Governing Law. This Agreement shall be governed by and construed in accordance with the applicable laws of the State of New York, without giving effect to any choice of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the applicable laws of any jurisdiction other than the State of New York to be applied.

(d)    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, that neither party may assign its rights or obligations under this Agreement without the prior written approval of the other party; provided, further, that Celsius may assign its rights and obligations under this Agreement, in whole or in part, to one or more of its Affiliates without the consent of Rhodium.

(e)    Amendment. This Agreement may be amended only with the consent of Celsius and Rhodium. Any such amendment shall be by a written instrument duly executed and delivered on behalf of each of the parties.

(f)    Effect of Waiver or Consent. The failure of any person to insist upon strict performance of a covenant hereunder or of any obligation hereunder, irrespective of the length of time for which such failure continues, shall not be a waiver of such person's right to demand strict compliance in the future. No consent or waiver, express or implied, to or of any breach or default in the performance of any obligation hereunder shall constitute a consent or waiver to or of any other breach or default in the performance of the same or any other obligation hereunder.

(g)    Further Assurances. In connection with this Agreement, each party hereto shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of this Agreement.

(h)    Counterparts. This Agreement may be executed in multiple counterparts which, taken together, shall constitute one and the same agreement.

[Remainder of Page Intentionally Left Blank]

If the above correctly reflects our understanding and agreement with respect to the foregoing matters, please so confirm by signing and returning to us the enclosed copy of this Agreement.

CELSIUS CORE LLC

By: *[signature]*
Name: Ron Deutsch
Title: General Counsel

**ACCEPTED, ACKNOWLEDGED AND AGREED**:

RHODIUM ENTERPRISES, INC.

By: *Cameron Blackmon*
Name: Cameron Blackmon
Title: Authorized Signatory

[Signature Page to Side Letter Agreement]