**SELENDY GAY ELSBERG PLLC**
Jennifer M. Selendy
Faith E. Gay
Temidayo Aganga-Williams
Claire O'Brien
1290 Avenue of the Americas
New York, New York 10104
Tel.: 212-390-9000
Email:  jselendy@selendygay.com
       fgay@selendygay.com
       tagangawilliams@selendygay.com
       cobrien@selendygay.com

*Co-Counsel for the Official Committee of Unsecured Creditors of Celsius Network LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' *EX PARTE* APPLICATION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 2004(a) AND 9016, AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ISSUE SUBPOENAS *DUCES TECUM* UPON THE FTX DEBTORS**

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned Chapter 11 cases (collectively, the "Chapter 11 Cases"), by and through its counsel, Selendy Gay Elsberg PLLC ("SGE"), respectfully submits this application (the "Application") pursuant to Sections 105(a) and 1103(c)(2) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York for entry of the proposed order attached hereto as Exhibit A authorizing the Committee to issue subpoenas *duces tecum* (each a "Subpoena," collectively, the "Subpoenas") upon the FTX Debtors.[2] In support of the Application, the Committee respectfully states as follows:

**Preliminary Statement**

1. The Debtors proposed plan of reorganization seeks to value the cryptocurrency token native to the Debtors' cryptocurrency platform (the "CEL Token") at $0.20 per token. One argument, among others, for this proposed valuation is that the market price of the CEL Token on July 13, 2022 (the "Petition Date") is not an accurate reflection of the fair market value of the CEL Token on that date.

2. On June 12, 2022, Celsius paused all customer withdrawals from its platform (the "Pause Date"). After the Pause Date, approximately 92% of all CEL Tokens were locked on the Celsius platform. The Committee has identified what appear to be patterns of sizable trades of some of the remaining 8% of CEL Tokens on the digital asset exchange and related digital asset trading platforms operated by the FTX Debtors and certain of their non-debtor affiliates (the "FTX Exchange"). These identified trades occurred between the Pause Date and the Petition Date and may have impacted the CEL Token's market price. Additionally, according to public reporting, significant short positions were taken with respect to the CEL Token on the FTX Exchange. These

---

[2] "FTX Debtors" refers to the entities that have filed voluntary petitions under chapter 11 of the Bankruptcy Code in the jointly administered cases styled *In re FTX Trading Ltd., et al.*, No. 22-11068 (Bankr. D. Del.), a list of which can be found under "List of Debtors" at https://restructuring.ra.kroll.com/FTX/Home-Index.

2

short positions are also relevant to whether the market price of the CEL Token on the Petition Date reflected the fair market value of the CEL Token.

3. The Committee is investigating whether the market price of the CEL Token as of the Petition Date reflects its fair market value, which is information that will impact the formulation of the Debtors' proposed plan. Obtaining limited and narrowly tailored discovery from the FTX Debtors is necessary to complete this work.[3] The Committee seeks information solely within the possession of the FTX Debtors about the above-described transactions, including the identity of the individuals who engaged in them.

4. While the Committee has sought this information informally from the FTX Debtors, the FTX Debtors have not agreed to provide the requested discovery. The Committee believes that this information can be obtained more quickly through targeted requests on the FTX Debtors. This relief is particularly important given the serious concerns raised by certain *pro se* creditors regarding the fair market value of the CEL Token as of the Petition Date and the transactions identified by experts for the Committee.

5. For the Court's reference, the Committee has attached as Exhibit B hereto copies of the discovery requests that the Committee seeks authorization to serve on the FTX Debtors.

---

[3] The FTX Debtors are currently subject to an automatic stay pursuant to Section 362(a) of Title 11 of the Bankruptcy Code. Seeking third-party discovery from a debtor does not, standing alone, violate Section 362(a)'s automatic stay. *See In re Kenoyer*, 489 B.R. 103, 117 (Bankr. N.D. Cal. 2013) (noting "it does not violate the automatic stay for a debtor to be compelled to testify in a proceeding against a non-debtor when the debtor has been severed from the proceeding"); *In re Residential Cap., LLC*, 480 B.R. 529 (Bankr. S.D.N.Y. 2012) (MG) (holding that "section 362(a) does not, standing alone, protect the Debtors from discovery in third-party actions"). Accordingly, narrowly tailored discovery requests, such as those here, that do not significantly interfere with a debtor's reorganization efforts during a chapter 11 case do not violate an automatic stay.

**Jurisdiction And Venue**

6. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are Section 105 of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016.

**Background**

**A. The Chapter 11 Cases**

9. On the Petition Date, the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in the Chapter 11 Cases. On August 18, 2022, the U.S. Trustee filed a motion requesting appointment of an examiner, Docket No. 546, which was granted on September 14, 2022, Docket No. 820.

10. On July 27, 2022, the U.S. Trustee appointed the Committee, which is comprised of seven members, each of whom holds cryptocurrency (or digital) assets through the Celsius platform. Docket No. 241.

11. On January 11, 2023, the Committee retained SGE as its co-counsel, effective as of January 8, 2023, subject to Bankruptcy Court approval. On January 31, 2023, the Committee filed its application seeking an order authorizing its employment and retention of SGE as co-counsel for the Committee, to act on its behalf in certain "Specified Matters," including future matters that might require the Committee to be adverse to the FTX Debtors. Docket No. 1964. On March 7, 2023, SGE filed a supplemental declaration in support of its January 31, 2023 application. Docket No. 2194.

12. On March 16, 2023, the Court entered an order approving the employment and retention of SGE as co-counsel for the Committee, effective as of January 8, 2023. Docket No. 2251.

### B. The Fair Market Value of the CEL Token at the Petition Date Is Disputed

13. As described in the *Statement of the Official Committee of Unsecured Creditors Regarding the Debtors' Exclusive Periods*, the price of the CEL Token was subject to significant volatility between the Pause Date and the Petition Date. Docket No. 2159 at 9. There are also arguments that the CEL Token should be subordinated or given no value. *Id.* (citing 11 U.S.C. § 510(b)).

14. The *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* values the CEL Token at $0.20 per token. Docket No. 2358, Exhibit B, Article IV.B.2.

15. On March 2, 2023, *pro se* creditor Santos Caceres filed a *Motion for an Order (I) allowing non-insider CEL Token claim holders to join the Earn group for equitable treatment and have access to the same optionality of equity and liquid cryptocurrency at the Petition Date Price of $0.81565, If Otherwise, (II) I Request the Debtors To Submit Evidence Supporting Inequitable Treatment of Unsecured Creditors in the Earn Group (III) Granting Related Relief*. Docket No. 2169. On March 10, 2023, Caceres filed an amended motion seeking the same relief. Docket No. 2208. On March 13, 2023, Caceres filed a document titled "*Amended Notice of Hearing on Santos Caceres' Motion for Entry of an Order (i) To Dollarize Non-Insider CEL Token Claims at the Petition Date Price of $0.81565; if Otherwise, (ii) I Request the Debtors to Submit Evidence Supporting Inequitable Treatment of Unsecured Creditors in the Earn Group (iii) Granting Related Relief.*" Docket No. 2215. On March 13, 2023, *pro se* creditor Sean StJohn filed a corollary *Motion For Entry of an Order (I) to Dollarize Non-Insider CEL Token Claims at the Petition Date Price*

5

*of $0.81565; If Otherwise, (II) Request the Debtors to Submit Evidence Supporting Inequitable Treatment Of Unsecured Creditors In The Earn Group (III) Granting Related Relief*. Docket No. 2216. On March 15, 2023, Caceres filed a second amended motion (the "Second Amended Motion"), Docket No. 2240, seeking the same relief as his earlier motion, and an Amended Notice of Hearing, Docket No. 2241. Both Caceres and StJohn seek to have the CEL Token valued at $0.81 per token—its market price on the Petition Date. A hearing on the Second Amended Motion is scheduled for May 17, 2023. Docket No. 2260.

     C.     **CEL Token Valuation and the FTX Exchange**

16.     The CEL Token was first listed on the FTX Exchange in 2021. Thereafter Celsius purchased (and its insiders sold) CEL Tokens on the FTX Exchange.

17.     After the Pause Date, approximately 92% of the total supply of CEL Tokens were locked on the Celsius platform and could not be traded on the open market. Following the Pause Date, there were multiple reports that certain entities had taken large short positions on the CEL Token on the FTX Exchange.[4]

18.     The Committee retained blockchain consultant Elementus Inc. ("Elementus"). Elementus identified patterns of suspicious trades on the FTX Exchange between the Pause Date and the Petition Date. Specifically, Elementus identified 947 transactions involving a near one-to-one relationship of CEL Token deposits and withdrawals over three-day periods between ten private wallets and ten FTX-operated wallets (the "Identified FTX Wallets"). Otherwise stated, within a short amount of time, nearly the same volume of CEL Tokens moved from ten private wallets onto

---

[4] *See, e.g.*, *Celsius Up 50% Amid GameStop-Style Short Squeeze Attempt*, Decrypt (June 21, 2022), https://decrypt.co/103406/celsius-up-50-amid-gamestop-style-short-squeeze-attempt; Timothy Cloud, *Celsius Token Up 65% as Traders Pull Short Squeeze*, Crypto Briefing (June 21, 2022), https://cryptobriefing.com/celsius-token-up-65-traders-pull-short-squeeze/.

the FTX Exchange, and then back into the private wallets. These transactions represent an outsized volume of CEL Token movement compared to the number of trades that were happening at this time: These ten wallets moved approximately 15% of the total CEL Token volume transacted between the Pause Date and the Petition Date but only accounted for 3% of the total number of transactions (947 out of 30,515 transactions). Such material, one-to-one withdrawals within a concentrated group of wallets suggests that there may have been an effort to artificially increase the price of the CEL Token on the FTX Exchange between the Pause Date and the Petition Date by the individuals or entities associated with those ten wallets. The identities of the individuals or entities associated with those ten wallets and information demonstrating whether these transactions were in fact legitimate market activity or instead a form of market manipulation, such as wash trading, is in the FTX Debtors' possession. These transactions may have contributed to the market price of the CEL Token reaching $0.81 per token as of the Petition Date.

### D. The Committee's Proposed Discovery on the FTX Debtors

19. Upon discovery of the ten private wallets with suspicious trading activity and emails from unsecured creditors alleging CEL Token price manipulation, the Committee prepared the proposed Subpoenas on the FTX Debtors, including the requests for production at Exhibit B. The Subpoenas request information on the identities and user accounts of the entities or individuals associated with the Identified FTX Wallets, any other FTX user accounts that those individuals or entities had, the complete transaction history of all the user accounts identified for those individuals or entities, the identities and user accounts of the entities or individuals associated with all short positions with respect to CEL Tokens on the FTX Exchange from April 1, 2022 to August 30, 2022, and any borrow or loan transactions associated with such short positions.

20. On April 10, 2023, on behalf of the Committee, SGE contacted the FTX Debtors' counsel at Sullivan & Cromwell LLP with the requests for production at Exhibit B, proposing to

7

engage in informal discovery. To date, the FTX Debtors have not agreed to engage in informal discovery.

**Relief Requested**

21. The Committee requests that the Court enter an order, in substantially the same form as the proposed order at Exhibit A, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016, authorizing the Committee to serve the FTX Debtors with the Subpoenas, each of which will append a copy of the discovery requests proposed at Exhibit B at the time of service.

**Basis For Relief**

22. Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Bankruptcy Rule 2004(b) provides in turn that "[t]he examination of an entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

23. It is well established that the investigation envisioned by Bankruptcy Rule 2004 is broad-based, relating to any and all matters affecting the administration of the Debtors' estate. "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). And while discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure, *In re Drexel Burnham Lambert Grp., Inc.*,

123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991), in this instance, the Committee proposes to serve narrowly tailored discovery requests on the FTX Debtors, targeted at obtaining factual information related to specifically identified transactions.

24. In connection with the discharge of its duties and its statutory mandate under 11 U.S.C. § 1103(c)(2) to "investigate the acts, conduct, assets, liabilities, and financial condition of [Celsius], ... and any other matter relevant to the [chapter 11] case[s] or to the formulation of a plan," it is necessary to obtain information regarding the entities or individuals, and their user accounts and transaction history, associated with the Identified FTX Wallets and all FTX Exchange CEL Token short positions between April 1, 2022 to August 30, 2022. Understanding the extent of any CEL Token price manipulation that occurred during this period is one data point that could inform the value of the CEL Token.

25. The Committee's discovery requests seek the identities of the individuals or entities associated with the Identified FTX Wallets and accompanying FTX user accounts to further inform its investigation. *See* Ex. B Request Nos. 1-2. This information would allow the Committee to investigate whether the suspicious transactions with those wallets were intended to manipulate the CEL Token price.

26. The Committee seeks information identifying other FTX user accounts or FTX wallets associated with the individuals or entities connected to the Identified FTX Wallets. *See id.* at Request Nos. 3-5. This information will help the Committee investigate whether there were other potentially suspicious trades of the CEL Token that constitute price manipulation.

27. The Committee seeks a complete transaction history for all user accounts associated with the individuals or entities related to the Identified FTX Wallets and any other related FTX wallets. *See id.* at Request No. 6. The transaction history flowing from these private wallets would

show any attempts to manipulate the price of the CEL Token. For example, where the public blockchain shows a one-to-one movement of CEL Tokens in and out of the FTX Exchange, the FTX Debtors' internal transaction history will reveal if the movement was accompanied by a proper and lawful transaction, or if the same entity or individual simply moved the CEL Token in and out of the FTX Exchange to generate a false impression of market activity, thus driving up the market price of the CEL Token.

28. The Committee also seeks information about short positions taken between April 1, 2022 to August 30, 2022. *See id.* at Request Nos. 7-11. Any such short positions could have put pressure on the market price for CEL Tokens while the price of CEL Tokens was highly susceptible to manipulation. The Committee would use this information to investigate the proper valuation of the CEL Token and, if there is evidence that the short positions were taken in bad faith, potential claims and causes of action of the Debtors' estate.

## Proposed Procedure

29. The Committee proposes to serve all Subpoenas at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files.

30. The Committee does not presently intend to take any depositions.

## Notice

31. Pursuant to this Court's Individual Rules, "[r]equests for 2004 orders may be submitted *ex parte* but the Court, in its discretion, may require notice and a hearing."

32. The Committee has filed the Application *ex parte*. Requests for relief under Rule 2004(a) are usually granted *ex parte*. 9 Collier on Bankruptcy ¶ 2004.01[2] (15th ed. 2009), *citing 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004*, *reprinted in* ch. 2004, App. 2004; *In re Sutera*, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D.

Ill. 1985); *In re Silverman*, 36 B.R. 254, 256-57 (Bankr. S.D.N.Y. 1984). Indeed, bankruptcy courts in this district have recently granted similar requests to serve subpoenas *ex parte*. *See, e.g.*, *In re Premiere Jewellery Inc., et al.*, Case No. 20-11484 (JLG), Docket No. 178 (S.D.N.Y. Bankr. 2020) (granting *ex parte* application to serve subpoena).

33. While the Application has been filed *ex parte*, the FTX Debtors will have ample opportunity to seek from this Court protection from any Subpoenas or information sought by the Subpoenas issued by the Committee that the FTX Debtors believe they have a basis to challenge. The FTX Debtors' due process rights are thus fully preserved.

34. Based on the foregoing, the Committee submits that the Application can and should be granted *ex parte*, and that no notice should be required.

## Reservation Of Rights

35. The Committee reserves all rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Application, to seek additional discovery from any party, add additional parties, or to raise additional grounds for granting this Application during any hearing on the Application, if one should be held.

## No Prior Relief

36. No prior request for the relief requested herein has been made to this or any other court.

11

**WHEREFORE**, the Committee respectfully requests that this Court grant the Application and enter an order, in substantially the same form as the proposed order attached as Exhibit A, and grant such other and further relief as the Court determines to be just and proper.

Dated: April 26, 2023

*/s/ Jennifer M. Selendy*
**SELENDY GAY ELSBERG PLLC**
Jennifer M. Selendy
Faith E. Gay
Temidayo Aganga-Williams
Claire O'Brien
1290 Avenue of the Americas
New York, New York 10104
Tel.: 212-390-9000
jselendy@selendygay.com
fgay@selendygay.com
tagangawilliams@selendygay.com
cobrien@selendygay.com

*Co-Counsel to the Official Committee of Unsecured Creditors*