**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 |
| | ) | (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## APPELLANTS' AMENDED[2] STATEMENT OF ISSUES TO BE PRESENTED AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

Appellants Immanuel J. Herrmann and Daniel A. Frishberg respectfully

submit this amended statement of the issues to be presented and designation of

items to be included in the record on appeal under Federal Rules of Bankruptcy

Procedure FRBP 8002(a)(3) and 8009(a)(1) in connection to our appeal of the

*Order Regarding Which Debtor Entities Have Liability for Customer Claims*

*Under the Terms of Use* (the "Customer Claims Order") Case No. 23-cv-03144

(S.D.N.Y. 2023) [rel. 23-cv-02882 (S.D.N.Y. 2023)]. We reserve all of our rights,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] This amended document is intended to resolve clerical errors.

including the right to amend this statement and designation, to designate additional

items for inclusion in the record, or restate or modify issues presented on appeal.

## APPELLANTS' STATEMENT OF ISSUES ON APPEAL

We respectfully state the following issues for the appeal:

1. In the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* (the "Earn Decision"), the Bankruptcy Court ruled that Celsius' Terms of Use constituted a binding contract between Earn account holders and "Celsius," a broadly defined term that includes all Celsius entities. In *Order Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use,* however, the Bankruptcy Court declined to apply this contractual definition of "Celsius" to the limitation of liability clause (Section 25)and instead, redefined "Celsius" (based on extrinsic evidence) to refer only to Celsius Network LLC. As the Court acknowledged, this re-interpretation leaves account holders with claims against only one Celsius entity that is **"hopelessly insolvent."** The Bankruptcy Court re-interpreted "Celsius" within the limitation of liability clause in this manner despite (a) its finding that the "plain language" of the limitation of liability "could reasonably be interpreted" in accordance with the agreement's plain text and such reading "would allow the Court to read Section 25 in harmony;" (b) the fact that the Terms of Use consistently impose obligations to return account holders' digital assets on the defined term "Celsius," i.e. all Celsius entities; and (c) a specific provision in the agreement referencing, in the event of a bankruptcy, each account holder's "rights as a creditor of Celsius under any applicable laws." Did the Bankruptcy Court err in declining to apply the express definition of "Celsius" in this instance and ruling instead that the Terms of Use are ambiguous?

2. The Bankruptcy Court acknowledged that the Terms of Use are a contract of adhesion drafted by Celsius and as to which account holders had no bargaining power. The Court found the Terms of Use, and especially the limitation of liability in Section 25, were "careless[ly] draft[ed]" by Celsius. Did the Bankruptcy Court err in construing what it determined to be an ambiguous limitation of liability provision in favor of Celsius, the "careless drafter," and *against* account holders, *the non-drafting party* and customer in

this contract of adhesion?

3. The Bankruptcy Court recognized that "extrinsic evidence of one party's []
undisclosed, subjective understanding of a contract does not provide support
for a particular contract interpretation, particularly where, as here, the
contract is one of adhesion." Yet the Bankruptcy Court's decision was based
in part on evidence that "w[as] not shared with the contract counterparty, the
"Customers[3]" *at any time*, and other evidence that was <u>not available to the
customers (or did not exist) at the time the contract was executed</u>. At the
same time, the Bankruptcy Court did not consider contemporaneous
communications between Celsius and account holders regarding the Terms
of Use, as well as other public statements to customers by Celsius' founder
and CEO[4], that contradicts the assertion that Version 6 of the Terms of Use
left account holders materially more vulnerable in their ability to recover
their assets. Did the Bankruptcy Court err in the extrinsic evidence it did and
did not consider in resolving what it had found to be **an ambiguity *against*
account holders**?

4. The Bankruptcy Court found that "the most probative evidence" of
customers' agreement to limit Celsius' liability under the Terms of Use to
just one Celsius entity was "a pop-up screen[] accompanying [customers']
acceptance of Terms of Use Version 6," which customers "were specifically
required to accept." However, the Bankruptcy Court acknowledged that 44%
of account holders were never shown these pop-up screens, much less
required to accept them. Rather, these account holders accepted a contract
with "Celsius Network LLC and its Affiliates." Did the Bankruptcy Court
err in resolving an ambiguous limitation of liability provision against all
customers based on extrinsic evidence that nearly *half* of customers had
never seen?

5. In interpreting contractual provisions that purport to limit liability under
New York law, a release will not be given effect unless it contains an
explicit, unequivocal statement of a present promise to release a party from
liability. Moreover, a covenant not to sue **must** be clear and unequivocal,
and **must** be strictly construed *against* the ***party asserting it***. All versions of

---

[3] As Celsius customers, we can confirm that the company operated as if it was one company, and nothing
materially changed after the purported transfer of customer claims to just Celsius Network LLC.
Unfortunately, no evidence from the customer side of the equation is in the record.
[4] Alex Mashinsky, who is currently being sued by the New York Attorney General (in a civil case), among
many other cases, for a massive amount of fraud.

the Terms of Use before Version 6 made Celsius Network Limited ("CNL")
liable to account holders for their contract claims, and Version 6 itself was a
contract between account holders and *all* Celsius entities. The Bankruptcy
Court held that the limitation of liability provision "is ambiguous" but,
*nonetheless*, the Bankruptcy Court held that "Terms of Use Version 6 acted
as novation releasing [CNL] from liability" and enforced the ambiguous
limitation of liability to preclude liability for all Celsius entities but one. Did
the Bankruptcy Court err in holding that an <u>ambiguous</u> waiver of liability
and release in a contract of adhesion was effective?

6.  In *Mullane v. Central Hanover Bank & Trust Corporation,* 339 U.S. 306,
    313 (1950), the Supreme Court found that "Many controversies have raged
    about the cryptic and abstract words of the Due Process Clause, but there
    can be no doubt that at a minimum they require that deprivation...of property
    by adjudication be preceded by notice and opportunity for hearing
    appropriate to the nature of the case."  This matter was litigated between the
    UCC and Debtors on one side, and the Preferred Series B on the other.
    Given that customer interests may not have been adequately represented and
    there was a lack of actual notice that this decision could impact customer
    claims for a substantial percentage of the estate's assets, were customers
    denied *<u>reasonable notice and opportunity</u>* to present their objections in
    violation of due process?[5]

7.  The Bankruptcy Court referred to the provision that is under review as
    "careless[ly] draft[ed]" in the order on appeal. In the *Memorandum Opinion
    and Order Regarding Ownership of Earn Account Assets* (the "Earn
    Decision")*,* however, the Court stated that "Celsius' Terms of Use formed a
    valid, enforceable contract between the Debtors and the Account Holders."
    There were major due process and equal protection irregularities during the
    Earn Order hearing that did not occur in other hearings in these cases (we

---

[5] Notably, not a single Celsius customer, represented or *pro se,* individual or *ad hoc* group, briefed this
matter. The parties to the briefing were the UCC (our co-appellant), the Debtors, and the Preferred Series
B. The order on appeal was drafted by the UCC, the Debtors, and Preferred Series B holders, and
proposed to Chief Judge Glenn for his signature after the Opinion came out. As customers did not have
adequate notice that their rights were impacted and the ability to interpose objections, this matter should
be remanded for a rehearing with customer participation, in our view. "The fundamental requisite of due
process of law is the opportunity to be heard and present objections." *Grannis v. Ordean* 234 U.S. 385,
394 (1914). The result of lack of customer participation was a sparse evidentiary record (as Chief Judge
Glenn noted and expressed frustration with in this decision) should dictate a remand in the interests of
justice to give retail customers with pertinent information about the contract an opportunity to participate
to avoid the draconian consequence here of channeling significant contract claims held by customers to
an entity that, as Chief Judge Glenn notes, is "hopelessly insolvent."

believe Chief Judge Glenn is an accomplished and fair judge, but everyone makes mistakes, and that he was misled by Kirkland & Ellis into narrowing issues too far; we further believe that the Court's initial error in the Earn Decision may have led to further error in this decision due to the thin record on contract matters in these cases, one thin record compounded by yet another thin record here. In other words, one erroneous decision informs the next, since, like the game "Jenga" one decision is balanced atop another). Did the thin evidentiary record on contract issues in the Bankruptcy Court (originating with the Earn Order, which then was used as background for the Customer Claims order which had an equally thin record) lead to errors of law or interpretation, or else clear error of fact based upon a thin record, when it comes to the contracts themselves–because the court did not consider the controlling contracts in their entirety, in harmony, and in tandem (including Loans contracts read in harmony with the Terms of Use[6] as just one example), but rather certain clauses of the contracts on a piecemeal basis without enough evidence in the record?

8. The Bankruptcy Court's understanding of the Terms of Use came from two decisions: the Customer Claims Decision and the Earn Decision. For both decisions, the record was ***extremely*** thin. In the case of the Customer Claims decision, this was partially due to the lack of *any* customer participation. In the case of the Earn Decision, there was massive customer participation which should have led to a rich and detailed record for the Bankruptcy Court to take judicial notice of in future decisions. However, the Bankruptcy Court closed the record in the Earn Decision hearing after giving only a few moments during a Zoom hearing (which attorneys and *pro se* participants alike missed) and declined to reopen the record when asked shortly thereafter. There was no signed scheduling order, nor any meaningful opportunity to file an evidence and witness list (the Debtors filed theirs over the weekend, while the Clerk's office was closed.) The fleeting verbal opportunity, at a Zoom hearing, was not meaningful given the need to enter large numbers of documents and have a proper process–documents which would have had to have been emailed to the Court in advance. No such opportunity was meaningfully given. It should also be noted that *pro se* participants requested to be able to enter evidence shortly after the window had closed once they realized what had occurred. Did the Bankruptcy Court

---

[6] The loans contract was raised in at least one objection to the Earn order which is included in the record on appeal; the Court did not address the loan agreements in either order, in part, because the Court may have erred in leaving off the full terms of use, including lending agreements, from the record in its Earn Decision.

err with respect to the Earn Decision in not protecting *pro se* participants from inadvertently giving up their rights due to a lack of legal training, resulting in an *overall* thin evidentiary record on contract matters in these cases?

9. Did the thin evidentiary record on contract matters, created by the Earn Decision and the Customer Claims Decision taken together,influence the law of the case in a way that caused an incorrect result in the Customer Claims Decision–and if so, is a remand and rehearing on both decisions–i.e. on Terms of Use matters for Earn property rights, and the entities against which customers have claims against under the Terms of Use–warranted? (See *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir.1983)) "This policy of liberally construing *pro se* submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.")

## **APPELLANTS' RECORD ON APPEAL**

For items designated, the designation includes all documents referenced with the particular document number including, without limitation, all statements, appendices, exhibits, attachments, declarations, transcripts, and/or related affidavits.

We incorporate by reference the designation of the Celsius Committee of Unsecured Creditors filed in *Celsius Network LLC, et al.* 22-10964 (MG) D.R. 2454 (the "UCC Record") as if fully set forth at length herein. These items shall remain in our record on appeal even if the appeal of the Committee of Unsecured

Creditors is withdrawn, settled, or otherwise modified. For avoidance of doubt, we have attached this record as Exhibit A.

We respectfully submit our own additional items below. Items docketed after the decision on appeal in blue are filed after the decision, to demonstrate to the District Court the impact of this decision, and how it has resulted in months of litigation on various matters, including inter-company loans, constructive fraudulent transfer, and substantive consolidation (likely, through the end July at the earliest.[7]) We have done our best to de-duplicate the records between the UCC record and our record, to minimize work and support judicial economy in constructing the record.[8]

| ECF No | Title/Description |
|---|---|
| 546 | Motion for Entry of an Order Directing the Appointment of an Examiner |
| 737 | Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay |
| 820 | Order Directing the Trustee to Appoint an Examiner |
| 832 | Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief |
| 853 | Objection to sale of stablecoins |

[7] See *Order Setting Schedule Regarding (i) Estimation of Certain Intercompany Contract Claims Between Celsius Network LLC and Celsius Network Limited (ii) Substantive Consolidation of Celsius Network Limited and (iii) Constructive Fraudulent Transfer Claims* [Bkr. Docket No. 2522] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174904242380000000059.pdf

[8] If there are items that appear in both records (the UCC record and our record), we consent to each designated item appearing only one time in the combined record on appeal without further order of any Court. However, for avoidance of doubt, if the UCC appeal is withdrawn, dismissed, or settled, this appeal continues with the full record provided herein, including the record incorporated by reference, until withdrawn by us.

| | |
|---|---|
| 877 | Kwok Mei Po Motion |
| 882 | Order Setting Hearing on Kwok Mei Po Motion |
| 901 | Gallagher Objection to docket #832, the Debtor's motion permitting the sale of stablecoins |
| 914 | Crews Objection [intended to be an objection to Earn stablecoin motion] |
| 920 | US Trustee Notice of Appointment of Examiner |
| 922 | Texas Objection to original stablecoin order |
| 923 | Order Appointing Examiner |
| 925 | Vermont Stablecoin Objection |
| 933 | US Trustee Omnibus Objection to Stablecoin and Reopening Withdrawals |
| 951 | Joinder to Crews Objection [intended to be an objection to Earn stablecoin motion] |
| 954 | Herrmann Omnibus Objection to Motions Taking Positions on Which Coins are Customer Property |
| 967 | Wisconsin Stablecoin Joinder |
| 970 | Victor Ubierna de las Heras Joinder to Objections to stablecoin motion |
| 1085 | Washington Joinder to Stablecoin Objection |
| 1106 | Debtors Objection to Kwok Motion |
| 1121 | Joinder to Kwok Motion |
| 1152 | Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Related Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief |
| 1166 | Memorandum Opinion and Order Denying Motion for the Appointment of an Official Preferred Equity Committee |
| 1167 | Memorandum Opinion and Order Granting Motion to Approve Bidding Procedures in Connection with the Sale of Substantially All the Debtors' Assets |
| 1186 | UCC Objection to Stablecoin Sales |

| | |
|---|---|
| 1198 | Hearing Transcript [Motion for the Appointment of an Official Preferred Equity Committee] |
| 1228 | Debtors Statement Re November 1 Stablecoin Hearing |
| 1251 | Kwok Mei Po Objection |
| 1253 | Khanuja Response to Stablecoin Motion |
| 1263 | Herrmann Response and Reservation of Rights Re Stablecoin Order |
| 1277 | Reservation of Rights |
| 1280 | Transcript from 11/1 Hearing [Kwok Mei Po and Stablecoin Scheduling] |
| 1307 | Debtors Objection to Kwok Motion |
| 1324 | Proposed Earn Scheduling Order [unsigned] |
| 1325 | Amended Stablecoin Motion |
| 1326 | Declaration of Chris Ferraro |
| 1327 | Original Blonstein Declaration |
| 1328 | Campagna Declaration |
| 1340 | Order requiring debtors to provide transaction records to Kwok Mei Po |
| 1345 | Written deposition questions for Debtors |
| 1346 | Kulpreet Khanuja Motion |
| 1347 | Frishberg statement and reservation of rights |
| 1373 | Kwok supplemental motion |
| 1374 | Letter in support of Kwok motion |
| 1396 | Order requiring debtors and UCC to respond to Frishberg objection |
| 1400 | Frishberg Objection to proposed scheduling order |
| 1401 | Herrmann joinder to Kwok motion |
| 1406 | Debtors written responses to UCC |
| 1411 | Examiners Interim Report |
| 1412 | UCC Reply to Frishberg Scheduling Order objection |
| 1414 | Debtors' Reply to Frishberg Scheduling Order objection |
| 1416 | Gallagher Objection |
| 1417 | Herrmann Omnibus Objection and Reservation of Rights to Proposed Scheduling Order and Amended Stablecoin order |
| 1418 | UCC Deposition Notice |
| 1430 | Eric Wohlwend Objection |

| | |
|---|---|
| 1463 | Little Objection |
| 1464 | Flora Objection |
| 1484 | Vermont Objection |
| 1485 | Saraiva Objection |
| 1486 | Breher Joinder |
| 1489 | U.S. Trustee Objection |
| 1490 | Ryals Objection |
| 1491 | McLean Objection |
| 1492 | Coordinating States Objection |
| 1493 | Preferred Series B Response to Amended Stablecoin Motion |
| 1495 | Tuganov Objection |
| 1496 | Texas Objection |
| 1497 | Washington Joinder |
| 1498 | New Jersey Objection |
| 1499 | Pinto Joinder |
| 1502 | Committee Objection |
| 1503 | Tornetta Joinder |
| 1504 | Colodny Declaration in Support of Limited Objection |
| 1506 | Hoffing Objection |
| 1507 | Objection to the amended motion |
| 1508 | Gallagher Motion |
| 1511 | Altunbay Objection |
| 1513 | Cancellation of Carr depositions |
| 1515 | Crews Objection |
| 1517 | Georgiou Objection |
| 1519 | Herrmann Supplemental Omnibus Objection (referred to as "Herrmann Omnibus Objection" in the order) |
| 1533 | Frishberg Joinder |
| 1534 | Frishberg Letter re: Depositions |
| 1535 | Ubierna Objection |
| 1537 | Steadman Joinder |
| 1538 | Flora Joinder |
| 1540 | Letter requesting additional deposition time with Blonstein |

| | |
|---|---|
| 1542 | Order requiring Debtors to allow Daniel Frishberg to depose Mr. Blonstein |
| 1545 | Jelbert Objection |
| 1554 | Romauld Objection |
| 1559 | 397 Creditor Statement |
| 1573 | Ad Hoc Group of Withhold Account Holders' Phase I Response Brief with Respect to the Custody and Withhold Issues |
| 1578 | Debtors' Reply in Support of Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief |
| 1584 | Supplemental Blonstein Declaration |
| 1590 | Debtors Witness and Evidence List |
| 1599 | 452 Creditor Joinder |
| 1602 | 340 Creditor Joinder |
| 1603 | Oberg Joinder |
| 1656 | Transcript of Earn Hearing |
| 1684 | Transcript of Withhold Hearing |
| 1767 | Custody Withdrawal Order |
| 1816 | Amended Khanuja Motion |
| 1830 | Order denying Saker motion |
| 1831 | Order denying Holcomb motion |
| 1832 | Order denying Barstow motion |
| 1833 | Order denying Kwok motion |
| 1872 | Debtors' Omnibus Objection to Certain Motions Set for the January 24, 2023 Omnibus Hearing |
| 1908 | Gallagher reply |
| 1909 | Khanuja reply |
| 1933 | Order denying Gallagher motion |
| 1934 | Order denying Khanuja motion |
| 1935 | Order denying Benzaken motion |
| 1949 | Transcript From Omnibus Hearing Held on January 24, 2023 |
| 1956 | Final Examiner's Report |

| | |
|---|---|
| 2092 | Statement with Respect to Intercompany Claims Held By Debtor Celsius Network LLC Against Its Debtor Affiliates |
| 2350 | Hyperlinked Examiner's Reports and all attached hyperlinked documents (Notice of Filing and Full Hyperlinked Reports With All Hyperlinked Exhibits) |
| 2367 | Series B Preferred Holders' Motion for Entry of an Order Establishing Estimation Procedure for The Intercompany Claim Between Celsius Network LLC and Celsius Network Limited in Furtherance of Formulating The Debtors' Plan of Reorganization filed by Nelly Cessiska Almeida on behalf of CDP Investissements Inc., Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC |
| 2369 | Motion of The Official Committee of Unsecured Creditors for Entry of an Order (I) Establishing Procedures to Estimate the Intercompany Claim that Celsius Network, LLC has against Celsius Network Limited and (II) Granting Related Relief filed by Samuel P Hershey on behalf of The Official Committee of Unsecured Creditors |
| 2396 | The Official Committee of Unsecured Creditors' Motion for Entry of an Order (A) Shortening Notice for Its Motion (I) for Authority to File a Class Claim Asserting Non-Contract Claims on behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on behalf of Account Holders or (B) Alternatively, Extending the Amended Bar Date filed by Samuel P Hershey on behalf of The Official Committee of Unsecured Creditors |
| 2399 | Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders filed by Samuel P Hershey on behalf of The Official Committee of Unsecured Creditors |
| 2400 | Order, Signed on 4/11/2023, Granting The Official Committee of Unsecured Creditors' Motion for Entry of an Order (A) Shortening Notice for Its Motion (I) for Authority to File a Class Claim Asserting Non-Contract Claims on behalf of Account Holders or (II) to Appoint |

| | |
|---|---|
| | a Third-Party Fiduciary to Assert a Class Claim on behalf of Account Holders or (B) Alternatively, Extending the Amended Bar Date |
| 2467 | Objection to Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders (related document(s)[2399]) filed by Nelly Cessiska Almeida on behalf of CDP Investissements Inc., Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC |
| 2471 | Limited Objection of the Official Committee of Unsecured Creditors to the Series B Preferred Holders' Motion for Entry of an Order Establishing Estimation Procedures for the Intercompany Claim between Celsius Network LLC and Celsius Network Limited in Furtherance of Formulating the Debtors' Plan of Reorganization |
| 2472 | Debtors' Limited Objection to (I) the Series B Preferred Holders' Motion for Intercompany Claim Estimation Procedures and (II) the Official Committee of Unsecured Creditors' Motion for Intercompany Claim Estimation Procedures (related document(s)[2367], [2369]) filed by Joshua Sussberg on behalf of Celsius Network LLC |
| 2473 | Limited Objection to the Committee's Motion to Establish Procedures to Estimate the Intercompany Claim Between Celsius Network LLC and Celsius Network Limited LLC, filed by Nelly Cessiska Almeida on behalf of CDP Investissements Inc., Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC |
| 2474 | Ignat Tuganov Response to Class Claims Motion |
| 2475 | Class Claims Reply from UCC |
| 2476 | Herrmann/Frishberg/Gallagher Response to UCC Class Claims Motion |
| 2477 | Notice of Revised Proposed Order in Connection with the Motion of The Official Committee of Unsecured Creditors for Entry of an Order (I) Establishing Procedures to Estimate the Intercompany Claim that Celsius Network, LLC has against Celsius Network Limited and (II) Granting Related Relief |
| 2478 | Reply in Further Support of The Series B Preferred Holders' Motion to Establish Estimation Procedures for The Intercompany Claim Between |

| | |
|---|---|
| | Celsius Network LLC and Celsius Network Limited |
| 2480 | Herrmann/Frishberg Omnibus Reservation of Rights |
| 2482 | Herrmann/Frishberg Joinder to Ignat Tuganov and Rebuttal to the Preferred Series B |
| 2484 | Statement in Response to Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders |
| 2496 | Order, Signed on 4/18/2023, Granting the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders |
| 2497 | Letter to The Honorable Martin Glenn, dated 4/17/2023 Re: Constructive Consolidation of the Celsius companies is the most logical and equitable way to respond to massive accounting issues. Filed by Anne Yeilding |
| 2510 | Series B Holders' Statement Regarding Proposed Litigation Schedule |
| 22-01190, D.R. 17 | Motion to Dismiss Adversary Proceeding / Debtors' Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law |
| | Copy of the docket of 22-10964 and all related adversary proceedings (list of filings and titles of docket entries that the clerk keeps; we reserve the rights to reference the docket and to use titles of documents as entered by filers) |
| 2521 | Transcript from 4/18/2023 Hearing |

## <u>MOTION FOR LEAVE TO AMEND OUR QUESTIONS AND DESIGNATION</u>

We provided all parties to this appeal with a redline on Saturday, April 22.

No parties objected. In the event that any parties object to our amended designation

and questions at a later date, or that leave of any Court is needed to amend, we ask

that this filing be considered as a motion for leave to amend.

.

Respectfully submitted,


<u>*/s/ Daniel A. Frishberg*</u>
Daniel A. Frishberg
*Pro Se*
April 25, 2023

<u>*/s/ Immanuel Herrmann*</u>
Immanuel Herrmann
*Pro Se*
April 25, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on Tuesday, April 25, 2023, I filed a true and correct copy of the *Appellants' Amended Statement of Issues to Be Presented and Designation of Items to Be Included in the Record of Appeal* with the Clerk of the United States Bankruptcy Court in the Southern District of New York.

I hereby further certify that on Tuesday, April 25, 2023, I served a true and correct copy of the *Appellants' Amended Statement of Issues to Be Presented and Designation of Items to Be Included in the Record of Appeal* upon noticed appellants, noticed appellees, and the Core/2002 service list by electronic mail in accordance with the SDNY Bankruptcy Court's *Amended Final Order (I) Establishing Certain Notice, Case Management, And Administrative Procedures, And (II) Granting Related Relief* (ECF Docket No. 1181).

Respectfully submitted,

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
Dated: April 25, 2023
Hillsborough County, Florida

# Exhibit A - UCC Record Incorporated By Reference

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### APPELLANT'S DESIGNATION OF THE RECORD
### AND STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

Pursuant to Federal Rule of Bankruptcy Procedure 8009, Appellant, the Official Committee of Unsecured Creditors of the above-captioned debtors and debtors-in-possession (the "**Committee**"), respectfully designates the following items to be included in the Record on Appeal in connection with the appeal styled *Celsius Network LLC, et al. v. Celsius SPV Investors, LP, et al.*, Case No. 23-cv-02882 (JLR) (S.D.N.Y. 2023). The Committee reserves its right to designate additional items for inclusion in the record or restate or modify issues presented on appeal. For items designated, the designation includes all documents referenced

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

with the particular document number including, without limitation, all statements,

appendices, exhibits, attachments, declarations, and/or related affidavits.

**Designation of Items to be Included in the Record on Appeal**

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 1. | 07/13/2022 | 1 | Chapter 11 Voluntary Petition for Non-Individual. Order for Relief Entered. Case Designated as Mega per LBR 1073-1. Filed by Joshua Sussberg of Kirkland & Ellis LLP on behalf of Celsius Network LLC. | -- |
| 2. | 07/13/2022 | 2 | Motion for Joint Administration / Debtors' Motion Seeking Entry of an Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 3. | 07/14/2022 | 7 | Amended Motion for Joint Administration / Debtors' Amended Motion Seeking Entry of an Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 4. | 07/14/2022 | 22 | Declaration / Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, In Support of Chapter 11 Petitions and First Day Motions filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |

---

[2] Docket references refer to *In re: Celsius Network LLC*, Docket No. 1:22-bk-10964 (MG) (Bankr. S.D.N.Y. Jul 13, 2022), unless otherwise indicated.

2

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 5. | 07/14/2022 | 23 | Affidavit Pursuant to LR 1007-2 / Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions Filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 6. | 08/01/2022 | 301 | Order, Signed on 8/1/2022, That Debtors File Terms of Use. | -- |
| 7. | 08/08/2022 | 393 | Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018 filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 8. | 08/08/2022 | 394 | Statement/Notice of Filing of Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018 filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 9. | 10/05/2022 | 973 | Statement of Financial Affairs – Non-Individual filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 10. | 10/05/2022 | 974 | Schedules filed: Schedule A/B - Non-Individual, Schedule D - Non-Individual, Schedule E/F - Non-Individual, Schedule G - Non-Individual, Schedule H - Non-Individual Filed by Joshua Sussberg on behalf of Celsius Network LLC. (Attachments: # 1 Part 2 # 2 Part 3). | -- |
| 11. | | 1327 | Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of the Debtors, | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | | in Support of the Debtor' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin (related document(s) [1325]) filed by Joshua Sussberg on behalf of Celsius Network LLC. | |
| 12. | 11/14/2022 | 1338 | Motion to Approve/Debtors' Motion Seeking Entry of an Order (I) Setting A Briefing Schedule and (II) Granting Related Relief filed by Joshua Sussberg on behalf of Celsius Network LLC with hearing to be held on 12/5/2022 at 02:00 PM at Videoconference. | -- |
| 13. | 12/13/2022 | 1682 | Transcript regarding Hearing Held on 12/08/2022 At 9:00 AM RE: Debtors Motion Seeking Entry Of An Order (I) Setting A Briefing Schedule And (II) Granting Related Relief. Debtors' Motion For Entry Of An Order (I) Applying Certain Orders In The Initial Debtors' Chapter 11 Cases To GK8 Ltd., GK8 USA LLC, And GK8 UK Limited And (II) Granting Related Relief. | -- |
| 14. | 12/16/2022 | 1729 | Notice of Proposed Order / Notice of Filing of Revised Proposed Order (I) Setting A Briefing Schedule and (II) Granting Related Relief filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 15. | 12/19/2022 | 1747 | Order, Signed on 12/19/2022, (I) Setting A Briefing Schedule and (II) Granting Related Relief. Evidentiary Hearing to be held on 2/6/2023 at 02:00 PM at Videoconference. | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 16. | 12/28/2022 | 1795 | Memorandum of Law/Series B Preferred Holders' Opening Brief on the Issue of which Debtors are Liable to Customers Under the Terms of Use filed by Nelly Cessiska Almeida on behalf of Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC. | -- |
| 17. | 12/28/2022 | 1796 | Declaration of Melanie Westover Yanez in Support of Series B Preferred Holders' Opening Brief on the Issue of which Debtors are Liable to Customers Under the Terms of Use filed by Nelly Cessiska Almeida on behalf of Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC. (Attachments: # 1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J, #11 Exhibit K) | -- |
| 18. | 12/28/2022 | 1797 | Memorandum of Law/The Official Committee of Unsecured Creditors' Opening Brief Regarding Debtors that are Liable to Account Holders Under the Global Contract (the "Terms of Use") between Celsius and Account Holders filed by Aaron Colodny on behalf of The Official Committee of Unsecured Creditors. | -- |
| 19. | 12/28/2022 | 1798 | Declaration of Aaron Colodny in support of The Official Committee of Unsecured Creditors' Opening Brief Regarding Debtors that are Liable to Account Holders Under | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | | the Global Contract (the "Terms of Use") between Celsius and Account Holders filed by Aaron Colodny on behalf of The Official Committee of Unsecured Creditors. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9) | |
| 20. | 12/28/2022 | 1799 | Memorandum of Law/Debtors' Opening Brief Regarding Account Holders' Claims Issues filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 21. | 01/04/2023 | 1822 | Memorandum Opinion and Order, Signed on 1/4/2023, Regarding Ownership of Earn Account Assets. | -- |
| 22. | 01/30/2023 | 1953 | Notice of Hearing/Notice of Evidentiary Hearing on the Customer Claims Briefed Legal Issue (Hearing to Take Place in Hybrid Fashion Both in Person and via Zoom for Government) filed by Joshua Sussberg on behalf of Celsius Network LLC. with hearing to be held on 2/6/2023 at 02:00 PM at Videoconference. | -- |
| 23. | 01/30/2023 | 1955 | Statement of Undisputed Facts / Joint Stipulation of Undisputed Facts Filed by Joshua Sussberg on behalf of Celsius Network LLC. with hearing to be held on 2/6/2023 at 02:00 PM at Videoconference. | -- |
| 24. | 01/31/2023 | 1960 | Memorandum of Law/ Series B Preferred Holders' Response Brief on the Issue of Which Debtors are Liable to Customers Under the Terms of Use filed by Nelly | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | | Cessiska Almeida on behalf of Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC. | |
| 25. | 01/31/2023 | 1961 | Declaration of Melanie Westover Yanez in Support of Series B Preferred Holders' Response Brief on the Issue of Which Debtors are Liable to Customers Under the Terms of Use filed by Nelly Cessiska Almeida on behalf of Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC (Attachments: # 1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F, #7 Exhibit G, #8 Exhibit H, #9 Exhibit I, #10 Exhibit J). | -- |
| 26. | 01/31/2023 | 1962 | Memorandum of Law/Debtors' Response Brief Regarding Account Holders' Claims Issues filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 27. | 01/31/2023 | 1965 | Memorandum of Law/The Official Committee of Unsecured Creditors' Response Brief Regarding Debtors that are Liable to Account Holders Under the Global Contract (the Terms of Use) between Celsius and Account Holders filed by Aaron Colodny on behalf of The Official Committee of Unsecured Creditors. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2). | -- |
| 28. | 02/05/2023 | 1986 | Statement/Debtors' Witness and Exhibit List for Account Holders' Claims Issues Set for Hearing | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | | February 6, 2023 filed by Joshua Sussberg on behalf of Celsius Network LLC. with hearing to be held on 2/6/2023 at 02:00 PM at Videoconference. | |
| 29. | 02/05/2023 | 1986, Ex. 1 | Debtors' Exhibit No. 1 – Declaration of Alex Mashinsky on Terms of Use and Terms of Use attached as Exhibits A-1 through A-8 to [Docket No. 393] | Debtors' Ex. 1 |
| 30. | 02/05/2023 | 1986, Ex. 2 | Debtors' Exhibit No. 2 – Celsius Network Organizational Structure Chart attached as Exhibit A to Debtors' Opening Brief Regarding Account Holders' Claims Issues [Docket No. 1799] | Debtors' Ex. 2 |
| 31. | 02/05/2023 | 1986, Ex. 3 | Debtors' Exhibit No. 3 – Declaration of Status as a Substantial Shareholder (CDP Investissements Inc.) [Docket No. 336] | Debtors' Ex. 3 |
| 32. | 02/05/2023 | 1986, Ex. 4 | Debtors' Exhibit No. 4 – Declaration of Status as a Substantial Shareholder (Celsius New SPV Investors, LP, Celsius SPV Investors, LP; Community First Partners, LLC) [Docket No. 444] | Debtors' Ex. 4 |
| 33. | 02/05/2023 | 1986, Ex. 5 | Debtors' Exhibit No. 5 – Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions [Docket No. 23] | Debtors' Ex. 5 |
| 34. | 02/05/2023 | 1986, Ex. 6 | Debtors' Exhibit No. 6 – Celsius Community Update, June 23, 2021, posted on Medium | Debtors' Ex. 6 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 35. | 02/05/2023 | 1986, Ex. 7 | Debtors' Exhibit No. 7 – Monthly Operating Report [Docket No. 1903] | Debtors' Ex. 7 |
| 36. | 02/05/2023 | 1986, Ex. 8 | Debtors' Exhibit No. 8 – Declaration of Christopher Ferraro, Director and Chief Financial Officer of GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions [Docket No. 1629] | Debtors' Ex. 8 |
| 37. | 02/05/2023 | 1986, Ex. 9 | Debtors' Exhibit No. 9 – Celsius Network – Organizational Chart as of 7/15/2021 | Debtors' Ex. 9 |
| 38. | 02/05/2023 | 1986, Ex. 10 | Debtors' Exhibit No. 10 – Nyman Libson Paul LLP, Celsius Network Limited Annual Report and Financial Statements for the Period Ended 31 December 2020, dated October 8, 2021 | Debtors' Ex. 10 |
| 39. | 02/05/2023 | 1987 | Series B Preferred Holders' Witness and Exhibit List | -- |
| 40. | 02/05/2023 | 1987, Ex. 1 | Series B Preferred Holders Exhibit No. 1 – Declaration of Oren Blonstein in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin with Exhibits A-C [Dkt. No. 1327] | SBPH Ex. 1 |
| 41. | 02/05/2023 | 1987, Ex. 4 | Series B Preferred Holders Exhibit No. 4 – Yanez Decl. Exhibit E, Celsius Mining January 2022 Transaction & Business Update Presentation | SBPH Ex. 4 |
| 42. | 02/05/2023 | 1987, Ex. 5 | Series B Preferred Holders Exhibit No. 5 – Annual Report and Financial Statements for the Period Ended 31 December 2020, dated October 8, 2021 | SBPH Ex. 5 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 43. | 02/05/2023 | 1987, Ex. 6 | Series B Preferred Holders Exhibit No. 6 – Board Discussion Presentation, dated May 2022 | SBPH Ex. 6 |
| 44. | 02/05/2023 | 1987, Ex. 8 | Series B Preferred Holders Exhibit No. 8 – Form S-1 Registration Statement filed with the United States Security and Exchange Commission filed by Celsius Mining Inc. on February 14, 2022 | SBPH Ex. 8 |
| 45. | 02/05/2023 | 1987, Ex. 9 | Series B Preferred Holders Exhibit No. 9 – Yanez Decl. Exhibit J, Celsius Network – Organizational Chart, dated as of July 15, 2021 | SBPH Ex. 9 |
| 46. | 02/05/2023 | 1987, Ex. 10 | Series B Preferred Holders Exhibit No. 10 – Transcript of the deposition of Oren Blonstein, dated on November 22, 2022 | SBPH Ex. 10 |
| 47. | 02/05/2023 | 1987, Ex. 11 | Series B Preferred Holders Exhibit No. 11 – Yanez Response Decl. Exhibit B, Voluntary Application for Imposition of Direction, dated July 21, 2021 | SBPH Ex. 11 |
| 48. | 02/05/2023 | 1987, Ex. 12 | Series B Preferred Holders Exhibit No. 12 – Yanez Response Decl. Exhibit C, emails between Yarden Noy, Roni Pavon Cohen, Ele Vasina, and Lauren Pittas, regarding "FCA – confirming next steps" and attaching a document titled "Celsius Network Limited – Migration Plan," dated June 17, 22-24, and July 1, 2021 | SBPH Ex. 12 |
| 49. | 02/05/2023 | 1987, Ex. 13 | Series B Preferred Holders Exhibit No. 13 – Yanez Response Decl. Exhibit D, letter from Gregory F. Pesce to Ross M. Kwasteniet, dated September 15, 2022 | SBPH Ex. 13 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 50. | 02/05/2023 | 1987, Ex. 14 | Series B Preferred Holders Exhibit No. 14 – Yanez Response Decl. Exhibit D, emails between Gregory Pesce, Tommy Scheffer, and Chris Koenig, regarding "CEL – Global Notes," dated October 4-5, 2021 | SBPH Ex. 14 |
| 51. | 02/05/2023 | 1987, Ex. 15 | Series B Preferred Holders Exhibit No. 15 – Yanez Response Decl. Exhibit F, Asset Transfer Agreement by and between CNL and LLC, dated as of August 19, 2021 | SBPH Ex. 15 |
| 52. | 02/05/2023 | 1987, Ex. 16 | Series B Preferred Holders Exhibit No. 16 – Yanez Response Decl. Exhibit G, Intercompany Operation and Loan Agreement by and between CNL and LLC, dated as of August 19, 2021 | SBPH Ex. 16 |
| 53. | 02/05/2023 | 1987, Ex. 17 | Series B Preferred Holders Exhibit No. 17 – Yanez Response Decl. Exhibit H, Omnibus Wallet Service Agreement by and between CNL, LLC, Celsius EU UAB, and Voyager Digital LLC, dated August 19, 2021 | SBPH Ex. 17 |
| 54. | 02/05/2023 | 1987, Ex. 18 | Series B Preferred Holders Exhibit No. 18 – Yanez Response Decl. Exhibit I, Assignment and Amendment to Omnibus Wallet Service Agreement by and between CNL, LLC, Celsius EU UAB, and Voyager Digital LLC, dated August 19, 2021 | SBPH Ex. 18 |
| 55. | 02/05/2023 | 1987, Ex. 19 | Series B Preferred Holders Exhibit No. 19 – Yanez Response Decl. Exhibit J, Declaration of Christopher Ferraro in Support of Motion of Celsius Network LLC for | SBPH Ex. 19 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | | Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 326(d)(1) and Bankruptcy Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1), In re: Voyager Digital Holdings, Inc., et al., Case No. 22-10943-mew (Bankr. S.D.N.Y.) | |
| 56. | 02/05/2023 | 1987, Ex. 20 | Series B Preferred Holders Exhibit No. 20 – Colodny Decl., Exhibit 4, Celsius Community Update – June 23, 2021, posted on Medium | SBPH Ex. 20 |
| 57. | 02/05/2023 | 1987, Ex. 21 | Series B Preferred Holders Exhibit No. 21 – Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions with Exhibits A-M [Dkt. No. 23] | SBPH Ex. 21 |
| 58. | 02/05/2023 | 1987, Ex. 22 | Series B Preferred Holders Exhibit No. 22 – Declaration of Alex Mashinsky Providing Terms of Use Dating Back to February 18, 2018 with Exhibits A-L | SBPH Ex. 22 |
| 59. | 02/05/2023 | 1987, Ex. 23 | Series B Preferred Holders Exhibit No. 23 – Periodic Report Regarding Value, Operations, and Profitability Entities in Which Debtor's Estate Holds a Substantial or Controlling Interest [Dkt. No. 850] | SBPH Ex. 23 |
| 60. | 02/05/2023 | 1987, Ex. 24 | Series B Preferred Holders Exhibit No. 24 – Monthly Operating Reports [Dkt. Nos. 858-872] | SBPH Ex. 24 |
| 61. | 02/05/2023 | 1987, Ex. 25 | Series B Preferred Holders Exhibit No. 25 – Debtors' Schedules [Dkt. Nos. 4, 5, 6, 7, 947] | SBPH Ex. 25 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 62. | 02/05/2023 | 1987, Ex. 26 | Series B Preferred Holders Exhibit No. 26 – Declaration of Christopher Ferraro, Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Support of Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin | SBPH Ex. 26 |
| 63. | 02/05/2023 | 1987, Ex. 27 | Series B Preferred Holders Exhibit No. 27 – Debtors' Response and Objections to UCC Deposition Questions for the Debtors [Dkt. No. 1406] | SBPH Ex. 27 |
| 64. | 02/05/2023 | 1987, Ex. 28 | Series B Preferred Holders Exhibit No. 28 – Supplemental Declaration of Oren Blonstein in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin with Exhibits A-G [Dkt. No. 1584] | SBPH Ex. 28 |
| 65. | 02/05/2023 | 1987, Ex. 29 | Series B Preferred Holders Exhibit No. 29 – Asset Purchase Agreement by and Between Galaxy Digital Trading LLC, GK8 Ltd., and other sellers listen therein [Dkt. No. 1586] | SBPH Ex. 29 |
| 66. | 02/05/2023 | 1987, Ex. 30 | Series B Preferred Holders Exhibit No. 30 – Celsius Network Announces Confidential Submission of Draft Registration Statement by Bitcoin mining subsidiary, Celsius Mining LLC, PRNEWSWIRE (May 16, 2022) | SBPH Ex. 30 |
| 67. | 02/05/2023 | 1987, Ex. 31 | Series B Preferred Holders Exhibit No. 31 – Debtors' Response and Objections to Series B Preferred Holders' First Set of Interrogatories | SBPH Ex. 31 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | | Related to the Briefed Legal Issue, dated January 17, 2023 | |
| 68. | 02/05/2023 | 1988 | Statement/Notice of Filing of February 6, 2023 Hearing Presentation filed by Nelly Cessiska Almeida on behalf of Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC (Attachments: # 1 Exhibit A) | CFP Ex. A |
| 69. | 02/05/2023 | 1989 | Statement/The Official Committee of Unsecured Creditors' Exhibit List for Matters Set for Hearing on February 6, 2023 Regarding Debtors That Are Liable to Account Holders Under the Global Contract (the "Terms of Use") Between Celsius and Account Holders filed by Samuel P Hershey on behalf of The Official Committee of Unsecured Creditors | -- |
| 70. | 02/05/2023 | 1989, Ex. 1 | The Official Committee of Unsecured Creditors' Exhibit No. 1 – Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018 [Docket No. 393] | UCC Ex. 1 |
| 71. | 02/05/2023 | 1989, Ex. 2 | The Official Committee of Unsecured Creditors' Exhibit No. 2 – Debtors' Schedules [Docket Nos. 4, 5, 6, 7, 973, 974] | UCC Ex. 2 |
| 72. | 02/05/2023 | 1989, Ex. 3 | The Official Committee of Unsecured Creditors' Exhibit No. 3 – Declaration of Alexander Mashinsky in Support of Chapter 11 Petitions and First Day Motions [Docket No. 23] | UCC Ex. 3 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 73. | 02/05/2023 | 1989, Ex. 4 | The Official Committee of Unsecured Creditors' Exhibit No. 4 – Celsius Network article posted on Medium and titled Community Update – June 23, 2021 | UCC Ex. 4 |
| 74. | 02/05/2023 | 1989, Ex. 5 | The Official Committee of Unsecured Creditors' Exhibit No. 5 – Deposition Transcript of Oren Blonstein, Chief Innovation Officer and Compliance Officer of the Debtors, dated November 22, 2022 | UCC Ex. 5 |
| 75. | 02/05/2023 | 1989, Ex. 6 | The Official Committee of Unsecured Creditors' Exhibit No. 6 – Transcript of the continued section 341(a) meeting held on October 13, 2022 | UCC Ex. 6 |
| 76. | 02/05/2023 | 1989, Ex. 7 | The Official Committee of Unsecured Creditors' Exhibit No. 7 – New Jersey Bureau of Securities Cease and Desist Order, dated September 17, 2021, available at www.nj.gov | UCC Ex. 7 |
| 77. | 02/05/2023 | 1989, Ex. 8 | The Official Committee of Unsecured Creditors' Exhibit No. 8 – PR Newswire article titled Celsius Network Announces an Investment Led by WestCap and CDPQ at a Valuation More than US $3 Billion, dated October 12, 2021 | UCC Ex. 8 |
| 78. | 02/05/2023 | 1989, Ex. 9 | The Official Committee of Unsecured Creditors' Exhibit No. 9 – CoinDesk article titled Celsius Network Series B Expands to $750M, dated November 24, 2021 | UCC Ex. 9 |
| 79. | 02/05/2023 | 1989, Ex. 10 | The Official Committee of Unsecured Creditors' Exhibit No. 10 – Debtors' Responses and | UCC Ex. 10 |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
|  |  |  | Objections to the Official Committee of Unsecured Creditors' First Set of Requests for the Production of Documents and Interrogatories dated January 10, 2023 |  |
| 80. | 02/05/2023 | 1989, Ex. 11 | The Official Committee of Unsecured Creditors' Exhibit No. 11 – Series B Preferred Holders' Responses and Objections to the Official Committee of Unsecured Creditors' First Set of Requests for Production of Documents and Interrogatories dated January 11, 2023 | UCC Ex. 11 |
| 81. | 02/05/2023 | 1989, Ex. 12 | The Official Committee of Unsecured Creditors' Exhibit No. 12 – Celsius Network, uploaded June 28, 2021, Celsius mining Bitcoin helps the company and the community [video] | UCC Ex. 12 |
| 82. | 02/05/2023 | 1989, Ex. 13 | The Official Committee of Unsecured Creditors' Exhibit No. 13 – Celsius Network, uploaded Feb. 7, 2022, What Does Investment in Bitcoin Mining Mean for Celsius? [video] | UCC Ex. 13 |
| 83. | 02/06/2023 | 1990 | Statement/Notice of Filing of February 6, 2023, Hearing Presentation filed by Joshua Sussberg on behalf of Celsius Network LLC (Attachments: # 1 Exhibit A) | Debtors' Ex. A |
| 84. | 02/09/2023 | 2016 | Transcript regarding Hearing Held on 2/6/2023 at 1:59pm RE: Debtors' Motion (a) establishing certain dates and deadlines governing the briefing and | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | | resolution of the legal issue against which Debtor entities account holders have claims on account of cryptocurrency deposited on the Debtors' platform. | |
| 85. | 02/16/2023 | 2092 | Statement / Debtors' Statement with Respect to Intercompany Claims Held By Debtor Celsius Network LLC Against Its Debtor Affiliates filed by Joshua Sussberg on behalf of Celsius Network LLC. | -- |
| 86. | 03/09/2023 | 2205 | Memorandum Opinion signed on 3/9/2023, Regarding Which Debtor Entities have Liability for Customer Claims Under the Terms of Use. | -- |
| 87. | 03/16/2023 | 2259 | Notice of Proposed Order / Notice of Filing of Agreed Proposed Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under The Terms of Use filed by Nelly Cessiska Almeida on behalf of CDP Investissements Inc., Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC. (Attachments: #1 Exhibit A) | -- |
| 88. | 03/17/2023 | 2265 | Order, Signed on 3/17/2023, Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use. | -- |
| 89. | 03/31/2023 | 2356 | Notice of Appeal filed by Kimberly Anne Havlin on behalf of The Official Committee of Unsecured Creditors. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Civil Cover Sheet) | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| 90. | 10/05/2022 | *In re Celsius Mining LLC,* No. 1:22-bk-10968 (MG) (Bankr. S.D.N.Y. Jul 13, 2022), Docket No. 4 | Statement of Financial Affairs - Non-Individual Filed by Joshua Sussberg on behalf of Celsius Mining LLC. | -- |
| 91. | 10/05/2022 | *In re Celsius Mining LLC,* No. 1:22-bk-10968 (MG) (Bankr. S.D.N.Y. Jul 13, 2022), Docket No. 5 | Schedules filed: Schedule A/B - Non-Individual, Schedule D - Non-Individual, Schedule E/F - Non-Individual, Schedule G - Non-Individual, Schedule H - Non-Individual Filed by Joshua Sussberg on behalf of Celsius Mining LLC. | -- |
| 92. | 3/24/2023 | *In re Celsius Mining LLC,* No. 1:22-bk-10968 (MG) (Bankr. S.D.N.Y. Jul 13, 2022), | Statement / Notice of Filing of Amended Global Notes, Statement of Financial Affairs 3 and 4, and Schedule F filed by Joshua Sussberg on behalf of Celsius Mining LLC. | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | Docket No. 13. | | |
| 93. | 10/05/2022 | *In re Celsius Network Limited,* No. 1:22-bk-10966 (MG) (Bankr. S.D.N.Y. Jul 13, 2022), Docket No. 6. | Statement of Financial Affairs - Non-Individual Filed by Joshua Sussberg on behalf of Celsius Network Limited. | -- |
| 94. | 10/05/2022 | *In re Celsius Network Limited,* No. 1:22-bk-10966 (MG) (Bankr. S.D.N.Y. Jul 13, 2022), Docket No. 7. | Schedules filed: Schedule A/B - Non-Individual, Schedule D - Non-Individual, Schedule E/F - Non-Individual, Schedule G - Non-Individual, Schedule H - Non-Individual Filed by Joshua Sussberg on behalf of Celsius Network Limited. | -- |
| 95. | 3/24/2023 | *In re Celsius Network Limited,* No. 1:22-bk-10966 (MG) (Bankr. S.D.N.Y. Jul 13, | Statement / Notice of Filing of Amended Global Notes, Statement of Financial Affairs 3 and 4, and Schedule F filed by Joshua Sussberg on behalf of Celsius Network Limited. | -- |

| Item No. | Date | Docket No.[2] | Document Title | Hearing Exhibit |
|---|---|---|---|---|
| | | 2022), Docket No. 15. | | |

## **Appellant's Statement of Issues on Appeal**

The Committee respectfully states the following issues for the appeal:

1)   Celsius' Terms of Use were expressly stated to be a contract between account holders and "Celsius," a broadly defined term that includes all Celsius entities. The Bankruptcy Court declined to apply this contractual definition of "Celsius" to the limitation of liability clause (Section 25), and instead, re-defined "Celsius" (based on extrinsic evidence) to refer only to Celsius Network LLC.  As the Court acknowledged, this re-interpretation leaves account holders with claims against only one Celsius entity that is "hopelessly insolvent."   The Bankruptcy Court re-interpreted "Celsius" within the limitation of liability clause in this manner despite (a) its finding that the "plain language" of the limitation of liability "could reasonably be interpreted" in accordance with the agreement's plain text and such reading "would allow the Court to read Section 25 in harmony," (b) the fact that the Terms of Use consistently impose obligations to return account holders' digital assets on the defined term "Celsius," *i.e.*, all Celsius entities; and (c) a specific provision in the agreement referencing, in the event of a bankruptcy, each account holder's "rights as a creditor of *Celsius* under any applicable laws."   Did the Bankruptcy Court err in declining to apply the express definition of "Celsius," and ruling instead that the Terms of Use are ambiguous?

2)   The Bankruptcy Court acknowledged that the Terms of Use are a contract of adhesion, drafted by Celsius and as to which account holders had no bargaining power.  The Court found the Terms of Use, and especially the limitation of liability in Section 25, were "careless[ly] draft[ed]" by Celsius. Did the Bankruptcy Court err in construing what it determined to be an ambiguous limitation of liability provision in favor of Celsius, the "careless drafter," and against account holders, the non-drafting party and customer in this contract of adhesion?

3) The Bankruptcy Court recognized that "extrinsic evidence of one party's []
undisclosed, subjective understanding of a contract does not provide support
for a particular contract interpretation, particularly where, as here, the contract
is one of adhesion." Yet the Bankruptcy Court's decision was based in part
on evidence that "w[as] not shared with the contract counterparty, the
Customers" at any time, and other evidence that was not available to the
customers (or did not exist) at the time the contract was executed. At the same
time, the Bankruptcy Court did not consider contemporaneous
communications between Celsius and account holders regarding the Terms of
Use, as well as other public statements to customers by Celsius' founder and
CEO, that contradict the assertion that Version 6 of the Terms of Use left
account holders materially more vulnerable in their ability to recover their
assets. Did the Bankruptcy Court err in the extrinsic evidence it did and did
not consider in resolving what it had found to be an ambiguity against account
holders?

4) The Bankruptcy Court found that "the most probative evidence" of customers'
agreement to limit Celsius' liability under the Terms of Use to just one Celsius
entity was "a pop-up screen[] accompanying [customers'] acceptance of
Terms of Use Version 6," which customers "were specifically required to
accept." However, the Bankruptcy Court acknowledged that 44% of account
holders were never shown these pop-up screens, much less required to accept
them. Rather, these account holders accepted a contract with "Celsius
Network LLC and its Affiliates." Did the Bankruptcy Court err in resolving
an ambiguous limitation of liability provision against all customers based on
extrinsic evidence that nearly half of customers had never seen?

5) In interpreting contractual provisions that purport to limit liability under New
York law, a release will not be given effect unless it contains an explicit,
unequivocal statement of a present promise to release a party from
liability. Moreover, a covenant not to sue must be clear and unequivocal, and
must be strictly construed against the party asserting it. All versions of the
Terms of Use before Version 6 made Celsius Network Limited ("CNL") liable
to account holders for their contract claims, and Version 6 itself was a contract
between account holders and all Celsius entities. The Bankruptcy Court held
that the limitation of liability provision "is ambiguous," but nonetheless, the
Bankruptcy Court held that "Terms of Use Version 6 acted as novation
releasing [CNL] from liability" and enforced the ambiguous limitation of
liability to preclude liability for all Celsius entities but one. Did the

Bankruptcy Court err in holding that an ambiguous waiver of liability and release in a contract of adhesion was effective?

Dated:       April 14, 2023
             New York, New York

### WHITE & CASE LLP

By:   */s/ Kimberly A. Havlin*
      David M. Turetsky
      Kimberly A. Havlin
      Samuel P. Hershey
      Joshua Weedman
      1221 Avenue of the Americas
      New York, NY 10020
      Telephone: (212) 819-8200
      Facsimile:  (212) 354-8113

      Michael C. Andolina (admitted *pro hac vice*)
      Gregory F. Pesce (admitted *pro hac vice*)
      111 South Wacker Drive, Suite 5100
      Chicago, Illinois 60606
      Telephone: (312) 881-5400
      Facsimile: (312) 881-5450

      Keith H. Wofford
      Southeast Financial Center, Suite 4900
      200 South Biscayne Blvd.
      Miami, Florida 33131
      Telephone: (305) 371-2700
      Facsimile: (305) 358-5744

      Aaron E. Colodny (admitted *pro hac vice*)
      555 South Flower Street, Suite 2700
      Los Angeles, California 90071
      Telephone: (213) 620-7700
      Facsimile: (213) 452-2329

*Counsel to the Official Committee of
Unsecured Creditors*

# Exhibit B - Redline

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 |
| | ) | (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## APPELLANTS' AMENDED[2] STATEMENT OF ISSUES TO BE PRESENTED AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ~~OF~~ON APPEAL

Appellants Immanuel J. Herrmann and Daniel A. Frishberg respectfully submit this amended statement of the issues to be presented and designation of items to be included in the record on appeal under Federal Rules of Bankruptcy Procedure FRBP 8002(a)(3) and 8009(a)(1) in connection to our appeal of the *Order Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* (the "Customer Claims Order") Case No. 23-cv-03144

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] This amended document is intended to resolve clerical errors.

(S.D.N.Y. 2023), which has been accepted as related to [rel. 23-cv-02882

(S.D.N.Y. 2023)]. We reserve all of our rights, including the right to amend this

statement and designation, to designate additional items for inclusion in the record,

or restate or modify issues presented on appeal.

### APPELLANTS' STATEMENT OF ISSUES ON APPEAL

We respectfully state the following issues for the appeal:

1. In the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* (the "Earn Decision"), the Bankruptcy Court ruled that Celsius' Terms of Use constituted a binding contract between Earn account holders and "Celsius," a broadly defined term that includes all Celsius entities. In *Order Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use,* however, the The Bankruptcy Court declined to apply this contractual definition of "Celsius" to the limitation of liability clause (Section 25), however, and instead, redefined "Celsius" (based on extrinsic evidence) to refer only to Celsius Network LLC. As the Court acknowledged, this re-interpretation leaves account holders with claims against only one Celsius entity that is **"hopelessly insolvent."** The Bankruptcy Court re-interpreted "Celsius" within the limitation of liability clause in this manner despite (a) its finding that the "plain language" of the limitation of liability "could reasonably be interpreted" in accordance with the agreement's plain text and such reading "would allow the Court to read Section 25 in harmony;" (b) the fact that the Terms of Use consistently impose obligations to return account holders' digital assets on the defined term "Celsius," i.e., all Celsius entities; and (c) a specific provision in the agreement referencing, in the event of a bankruptcy, each account holder's "rights as a creditor of Celsius under any applicable laws." Did the Bankruptcy Court err in declining to apply the express definition of "Celsius," in this instance, and ruling instead that the Terms of Use are ambiguous?

2. The Bankruptcy Court acknowledged that the Terms of Use are a <u>contract of adhesion</u>, drafted by Celsius and as to which account holders had <u>no bargaining power</u>. The Court found the Terms of Use, and especially the limitation of liability in Section 25, were "careless[ly] draft[ed]" by Celsius.

Did the Bankruptcy Court err in construing what it determined to be an ambiguous limitation of liability provision in favor of Celsius, the "careless drafter," and *against* account holders, *the non-drafting party* and customer in this contract of adhesion?

3. The Bankruptcy Court recognized that "extrinsic evidence of one party's [] undisclosed, subjective understanding of a contract does not provide support for a particular contract interpretation, particularly where, as here, the contract is one of adhesion." Yet the Bankruptcy Court's decision was based in part on evidence that "w[as] not shared with the contract counterparty, the "Customers[3]" *at any time*, and other evidence that was <u>not available to the customers (or did not exist) at the time the contract was executed</u>. At the same time, the Bankruptcy Court did not consider contemporaneous communications between Celsius and account holders regarding the Terms of Use, as well as other public statements to customers by Celsius' founder and CEO[4], that contradicts the assertion that Version 6 of the Terms of Use left account holders materially more vulnerable in their ability to recover their assets. Did the Bankruptcy Court err in the extrinsic evidence it did and did not consider in resolving what it had found to be **an ambiguity *against* account holders**?

4. The Bankruptcy Court found that "the most probative evidence" of customers' agreement to limit Celsius' liability under the Terms of Use to just one Celsius entity was "a pop-up screen[] accompanying [customers'] acceptance of Terms of Use Version 6," which customers "were specifically required to accept." However, the Bankruptcy Court acknowledged that 44% of account holders were never shown these pop-up screens, much less required to accept them. Rather, these account holders accepted a contract with "Celsius Network LLC and its Affiliates." Did the Bankruptcy Court err in resolving an ambiguous limitation of liability provision against all customers based on extrinsic evidence that nearly *half* of customers had never seen?

5. In interpreting contractual provisions that purport to limit liability under New York law, a release will not be given effect unless it contains an

---

[3] As Celsius customers, we can confirm that the company operated as if it was one company, and nothing materially changed after the purported transfer of customer claims to just Celsius Network LLC. Unfortunately, no evidence from the customer side of the equation is in the record.
[4] Alex Mashinsky, who is currently being sued by the New York Attorney General (in a civil case), among many other cases, for a massive amount of fraud.

explicit, unequivocal statement of a present promise to release a party from liability. Moreover, a covenant not to sue **must** be clear and unequivocal, and **must** be strictly construed *against* the ***party asserting it***. All versions of the Terms of Use before Version 6 made Celsius Network Limited ("CNL") liable to account holders for their contract claims, and Version 6 itself was a contract between account holders and *all* Celsius entities. The Bankruptcy Court held that the limitation of liability provision "is ambiguous," but, *nonetheless*, the Bankruptcy Court held that "Terms of Use Version 6 acted as novation releasing [CNL] from liability" and enforced the ambiguous limitation of liability to preclude liability for all Celsius entities but one. Did the Bankruptcy Court err in holding that an <u>ambiguous</u> waiver of liability and release in a contract of adhesion was effective?

6. In *Mullane v. Central Hanover Bank & Trust Corporation,* 339 U.S. 306, 313 (1950), the Supreme Court found that "Many controversies have raged about the cryptic and abstract words of the Due Process Clause, but there can be no doubt that at a minimum they require that deprivation ... of property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." This matter was litigated between the UCC and Debtors on one side, and the Preferred Series B on the other. Given that customer interests may not have been adequately represented and there was a lack of actual notice that this decision could impact customer claims for a substantial percentage of the estate's assets, were customers denied *<u>reasonable notice and opportunity</u>* to present their objections in violation of due process?[5]

7. The Bankruptcy Court referred to the provision that is under review as "careless[ly] draft[ed]" in the order on appeal. In the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* (the "Earn Decision")*,* however, the Court stated that "Celsius' Terms of Use formed a

---

[5] Notably, not a single Celsius customer, represented or *pro se,* individual or *ad hoc* group, briefed this matter. The parties to the briefing were the UCC (our co-appellant), the Debtors, and the Preferred Series B. The order on appeal was drafted by the UCC, the Debtors, and Preferred Series B holders, and proposed to Chief Judge Glenn for his signature after the Opinion came out. As customers did not have adequate notice that their rights were impacted, and the ability to interpose objections, this matter should be remanded for a rehearing with customer participation, in our view. "The fundamental requisite of due process of law is the opportunity to be heard and present objections." *Grannis v. Ordean* 234 U.S. 385, 394 (1914). The result of lack of customer participation was a sparse evidentiary record (as Chief Judge Glenn noted and expressed frustration with in this decision) should dictate a remand in the interests of justice to give retail customers with pertinent information about the contract an opportunity to participate to avoid the draconian consequence here of channeling significant contract claims held by customers to an entity that, as Chief Judge Glenn notes, is "hopelessly insolvent."

valid, enforceable contract between the Debtors and the Account Holders." There were major due process and equal protection irregularities during the Earn Order hearing that did not occur in other hearings in these cases (we believe Chief Judge Glenn is an accomplished and fair judge, but everyone makes mistakes, and that he was misled by Kirkland & Ellis into narrowing issues too far; we further believe that the Court's initial error in the Earn Decision may have led to further error in this decision due to the thin record on contract matters in these cases, one thin record compounded by yet another thin record here. In other words, one erroneous decision informs the next, since, like the game "Jenga" one decision is balanced atop another). Did the thin evidentiary record on contract issues in the Bankruptcy Court (originating with the Earn Order, which then was used as background for the Customer Claims order which had an equally thin record) lead to errors of law or interpretation, or else clear error of fact based upon a thin record, when it comes to the contracts themselves–because the court did not consider the controlling contracts in their entirety, in harmony, and in tandem (including Loans contracts read in harmony with the ~~terms of use~~Terms of Use[6] as just one example), but rather certain clauses of the contracts on a piecemeal basis without enough evidence in the record?

8. The Bankruptcy Court's understanding of the Terms of Use came from two decisions: ~~The~~the Customer Claims Decision, and the Earn Decision. For both ~~the Customer Claims Decision and the Earn Decision~~decisions, the record was ***extremely*** thin. In the case of the Customer Claims decision, this was partially due to the lack of *any* ~~creditor~~customer participation. In the case of the Earn Decision, there was massive ~~creditor~~customer participation which should have led to a rich and detailed record for the Bankruptcy Court to take judicial notice of in future decisions. However, the Bankruptcy Court closed the record in the Earn Decision hearing after giving only a few moments during a Zoom hearing (which attorneys and *pro se* participants alike missed)~~,~~ and declined to reopen the record when asked shortly thereafter. There was no signed scheduling order, nor any meaningful opportunity to file an evidence and witness list (the Debtors filed theirs over the weekend, while the Clerk's office was closed.) The fleeting verbal opportunity, at a Zoom hearing, was not meaningful given the need to enter large numbers of documents and have a proper process–documents which

---

[6] The loans contract was raised in at least one objection to the Earn order which is included in the record on appeal; the Court did not address the loan agreements in either order, in part, because the Court may have erred in leaving off the full terms of use, including lending agreements, from the record in its Earn Decision.

would have had to have been emailed to the Court in advance, but no. No such opportunity was meaningfully given. It should also be noted that *pro se* participants requested to be able to enter evidence shortly after the window had closed once they realized what had occurred. Did the Bankruptcy Court err with respect to the Earn Decision in not protecting *pro se* participants from inadvertently giving up their rights due to a lack of legal training, resulting in an *overall* thin evidentiary record on contract matters in these cases and did such?

9. Did the thin evidentiary record on contract matters, created by the Earn Decision and the Customer Claims Decision taken together, influence the law of the case in a way that caused an incorrect result in the Customer Claims Decision, and and if so, is a remand and rehearing on both decisions–i.e. on Terms of Use matters for Earn property rights, and the entities against which customers have claims against under the Terms of Use–warranted? (See *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citing Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir.1983)) "This policy of liberally construing *pro se* submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.")

## APPELLANTS' RECORD ON APPEAL

For items designated, the designation includes all documents referenced with the particular document number including, without limitation, all statements, appendices, exhibits, attachments, declarations, transcripts, and/or related affidavits.

We incorporate by reference the designation of the Celsius Committee of Unsecured Creditors filed in *Celsius Network LLC, et al.* 22-10964 (MG) D.R.

2454 (the "UCC Record") as if fully set forth at length herein. These items shall

remain in our record on appeal even if the appeal of the Committee of Unsecured

Creditors is withdrawn, settled, or otherwise modified. For avoidance of doubt, we

have attached this record as Exhibit A.

We respectfully submit our own additional items below. Items docketed after

the decision on appeal in blue are filed after the decision, and to demonstrate to the

District Court the impact of this decision, and how it has resulted in months of

litigation on various matters, including inter-company loans, constructive

fraudulent transfer, and substantive consolidation (likely, through Julythe end July

at the earliest.[7]) We have done our best to de-duplicate the records between the

UCC record and our record, to minimize work and support judicial economy in

constructing the record.[8]

| ECF No | Title/Description |
|---|---|
| 546 | Motion for Entry of an Order Directing the Appointment of an Examiner |
| 737 | Ad Hoc Group of Withhold Account Holders' Motion for Relief from the Automatic Stay |
| 820 | Order Directing the Trustee to Appoint an Examiner |

[7] See *Order Setting Schedule Regarding (i) Estimation of Certain Intercompany Contract Claims Between Celsius Network LLC and Celsius Network Limited (ii) Substantive Consolidation of Celsius Network Limited and (iii) Constructive Fraudulent Transfer Claims* [Bkr. Docket No. 2522]
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174904242380000000059.pdf

[8] If there are items that appear in both records (the UCC record and our record), we consent to each designated item appearing only one time in the combined record on appeal without further order of any Court. However, for avoidance of doubt, if the UCC appeal is withdrawn, dismissed, or settled, this appeal continues with the full record provided herein, including the record incorporated by reference, until withdrawn by us.

| | |
|---|---|
| 832 | Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief |
| 853 | Objection to sale of stablecoins |
| 877 | Kwok Mei Po Motion |
| 882 | Order Setting Hearing on Kwok Mei Po Motion |
| 901 | Gallagher Objection to docket #832, the Debtor's motion permitting the sale of stablecoins |
| 914 | Crews Objection [intended to be an objection to Earn stablecoin motion] |
| 920 | US Trustee Notice of Appointment of Examiner |
| 922 | Texas Objection to original stablecoin order |
| 923 | Order Appointing Examiner |
| 925 | Vermont Stablecoin Objection |
| 933 | US Trustee Omnibus Objection to Stablecoin and Reopening Withdrawals |
| 951 | Joinder to Crews Objection [intended to be an objection to Earn stablecoin motion] |
| 954 | Herrmann Omnibus Objection to Motions Taking Positions on Which Coins are Customer Property |
| 967 | Wisconsin Stablecoin Joinder |
| 970 | Victor Ubierna de las Heras Joinder to Objections to stablecoin motion |
| 1085 | Washington Joinder to Stablecoin Objection |
| 1106 | Debtors Objection to Kwok Motion |
| 1121 | Joinder to Kwok Motion |
| 1152 | Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Related Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief |
| 1166 | Memorandum Opinion and Order Denying Motion for the Appointment of an Official Preferred Equity Committee |

| | |
|---|---|
| 1167 | Memorandum Opinion and Order Granting Motion to Approve Bidding Procedures in Connection with the Sale of Substantially All the Debtors' Assets |
| 1186 | UCC Objection to Stablecoin Sales |
| 1198 | Hearing Transcript [Motion for the Appointment of an Official Preferred Equity Committee] |
| 1228 | Debtors Statement Re November 1 Stablecoin Hearing |
| 1251 | Kwok Mei Po Objection |
| 1253 | Khanuja Response to Stablecoin Motion |
| 1263 | Herrmann Response and Reservation of Rights Re Stablecoin Order |
| 1277 | Reservation of Rights |
| 1280 | Transcript from 11/1 Hearing [Kwok Mei Po and Stablecoin Scheduling] |
| 1307 | Debtors Objection to Kwok Motion |
| 1324 | Proposed Earn Scheduling Order [unsigned] |
| 1325 | Amended Stablecoin Motion |
| 1326 | Declaration of Chris Ferraro |
| 1327 | Original Blonstein Declaration |
| 1328 | Campagna Declaration |
| 1340 | Order requiring debtors to provide transaction records to Kwok Mei Po |
| 1345 | Written deposition questions for Debtors |
| 1346 | Kulpreet Khanuja Motion |
| 1347 | Frishberg statement and reservation of rights |
| 1373 | Kwok supplemental motion |
| 1374 | Letter in support of Kwok motion |
| 1396 | Order requiring debtors and UCC to respond to Frishberg objection |
| 1400 | Frishberg Objection to proposed scheduling order |
| 1401 | Herrmann joinder to Kwok motion |
| 1406 | Debtors written responses to UCC |
| 1411 | Examiners Interim Report |
| 1412 | UCC Reply to Frishberg Scheduling Order objection |
| 1414 | Debtors' Reply to Frishberg Scheduling Order objection |
| 1416 | Gallagher Objection |

| | |
|---|---|
| 1417 | Herrmann Omnibus Objection and Reservation of Rights to Proposed Scheduling Order and Amended Stablecoin order |
| 1418 | UCC Deposition Notice |
| 1430 | Eric Wohlwend Objection |
| 1463 | Little Objection |
| 1464 | Flora Objection |
| 1484 | Vermont Objection |
| 1485 | Saraiva Objection |
| 1486 | Breher Joinder |
| 1489 | U.S. Trustee Objection |
| 1490 | Ryals Objection |
| 1491 | McLean Objection |
| 1492 | Coordinating States Objection |
| 1493 | Preferred Series B Response to Amended Stablecoin Motion |
| 1495 | Tuganov Objection |
| 1496 | Texas Objection |
| 1497 | Washington Joinder |
| 1498 | New Jersey Objection |
| 1499 | Pinto Joinder |
| 1502 | Committee Objection |
| 1503 | Tornetta Joinder |
| 1504 | Colodny Declaration in Support of Limited Objection |
| 1506 | Hoffing Objection |
| 1507 | Objection to the amended motion |
| 1508 | Gallagher Motion |
| 1511 | Altunbay Objection |
| 1513 | Cancellation of Carr depositions |
| 1515 | Crews Objection |
| 1517 | Georgiou Objection |
| 1519 | Herrmann Supplemental Omnibus Objection (referred to as "Herrmann Omnibus Objection" in the order) |
| 1533 | Frishberg Joinder |
| 1534 | Frishberg Letter re: Depositions |

| 1535 | Ubierna Objection |
|---|---|
| 1537 | Steadman Joinder |
| 1538 | Flora Joinder |
| 1540 | Letter requesting additional deposition time with Blonstein |
| 1542 | Order requiring Debtors to allow Daniel Frishberg to depose Mr. Blonstein |
| 1545 | Jelbert Objection |
| 1554 | Romauld Objection |
| 1559 | 397 Creditor Statement |
| 1573 | Ad Hoc Group of Withhold Account Holders' Phase I Response Brief with Respect to the Custody and Withhold Issues |
| 1578 | Debtors' Reply in Support of Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief |
| 1584 | Supplemental Blonstein Declaration |
| 1590 | Debtors Witness and Evidence List |
| 1599 | 452 Creditor Joinder |
| 1602 | 340 Creditor Joinder |
| 1603 | Oberg Joinder |
| 1656 | Transcript of Earn Hearing |
| 1684 | Transcript of Withhold Hearing |
| 1767 | Custody Withdrawal Order |
| 1816 | Amended Khanuja Motion |
| 1830 | Order denying Saker motion |
| 1831 | Order denying Holcomb motion |
| 1832 | Order denying Barstow motion |
| 1833 | Order denying Kwok motion |
| 1872 | Debtors' Omnibus Objection to Certain Motions Set for the January 24, 2023 Omnibus Hearing |
| 1908 | Gallagher reply |
| 1909 | Khanuja reply |
| 1933 | Order denying Gallagher motion |

| | |
|---|---|
| 1934 | Order denying Khanuja motion |
| 1935 | Order denying Benzaken motion |
| 1949 | Transcript From Omnibus Hearing Held on January 24, 2023 |
| 1956 | Final Examiner's Report |
| 2092 | Statement with Respect to Intercompany Claims Held By Debtor Celsius Network LLC Against Its Debtor Affiliates |
| 2350 | Hyperlinked Examiner's Reports and all attached hyperlinked documents (Notice of Filing and Full Hyperlinked Reports With All Hyperlinked Exhibits) |
| 2367 | Series B Preferred Holders' Motion for Entry of an Order Establishing Estimation Procedure for The Intercompany Claim Between Celsius Network LLC and Celsius Network Limited in Furtherance of Formulating The Debtors' Plan of Reorganization filed by Nelly Cessiska Almeida on behalf of CDP Investissements Inc., Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC |
| 2369 | Motion of The Official Committee of Unsecured Creditors for Entry of an Order (I) Establishing Procedures to Estimate the Intercompany Claim that Celsius Network, LLC has against Celsius Network Limited and (II) Granting Related Relief filed by Samuel P Hershey on behalf of The Official Committee of Unsecured Creditors |
| 2396 | The Official Committee of Unsecured Creditors' Motion for Entry of an Order (A) Shortening Notice for Its Motion (I) for Authority to File a Class Claim Asserting Non-Contract Claims on behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on behalf of Account Holders or (B) Alternatively, Extending the Amended Bar Date filed by Samuel P Hershey on behalf of The Official Committee of Unsecured Creditors |
| 2399 | Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders filed by Samuel P Hershey on behalf of The Official Committee of Unsecured Creditors |

| | |
|---|---|
| 2400 | Order, Signed on 4/11/2023, Granting The Official Committee of Unsecured Creditors' Motion for Entry of an Order (A) Shortening Notice for Its Motion (I) for Authority to File a Class Claim Asserting Non-Contract Claims on behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on behalf of Account Holders or (B) Alternatively, Extending the Amended Bar Date |
| 2467 | Objection to Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders (related document(s)[2399]) filed by Nelly Cessiska Almeida on behalf of CDP Investissements Inc., Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC |
| 2471 | Limited Objection of the Official Committee of Unsecured Creditors to the Series B Preferred Holders' Motion for Entry of an Order Establishing Estimation Procedures for the Intercompany Claim between Celsius Network LLC and Celsius Network Limited in Furtherance of Formulating the Debtors' Plan of Reorganization |
| 2472 | Debtors' Limited Objection to (I) the Series B Preferred Holders' Motion for Intercompany Claim Estimation Procedures and (II) the Official Committee of Unsecured Creditors' Motion for Intercompany Claim Estimation Procedures (related document(s)[2367], [2369]) filed by Joshua Sussberg on behalf of Celsius Network LLC |
| 2473 | Limited Objection to the Committee's Motion to Establish Procedures to Estimate the Intercompany Claim Between Celsius Network LLC and Celsius Network Limited LLC, filed by Nelly Cessiska Almeida on behalf of CDP Investissements Inc., Celsius New SPV Investors, LP, Celsius SPV Investors, LP, Community First Partners, LLC |
| 2474 | Ignat Tuganov Response to Class Claims Motion |
| 2475 | Class Claims Reply from UCC |
| 2476 | Herrmann/Frishberg/Gallagher Response to UCC Class Claims Motion |
| 2477 | Notice of Revised Proposed Order in Connection with the Motion of The Official Committee of Unsecured Creditors for Entry of an Order (I) Establishing Procedures to Estimate the Intercompany Claim that |

|  |  |
|---|---|
|  | Celsius Network, LLC has against Celsius Network Limited and (II) Granting Related Relief |
| 2478 | Reply in Further Support of The Series B Preferred Holders' Motion to Establish Estimation Procedures for The Intercompany Claim Between Celsius Network LLC and Celsius Network Limited |
| 2480 | Herrmann/Frishberg Omnibus Reservation of Rights |
| 2482 | Herrmann/Frishberg Joinder to Ignat Tuganov and Rebuttal to the Preferred Series B |
| 2484 | Statement in Response to Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders |
| 2496 | Order, Signed on 4/18/2023, Granting the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders |
| 2497 | Letter to The Honorable Martin Glenn, dated 4/17/2023 Re: Constructive Consolidation of the Celsius companies is the most logical and equitable way to respond to massive accounting issues. Filed by Anne Yeilding |
| 2510 | Series B Holders' Statement Regarding Proposed Litigation Schedule |
| 22-01190, D.R. 17 | Motion to Dismiss Adversary Proceeding / Debtors' Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law |
|  | Copy of the docket of 22-10964 and all related adversary proceedings (list of filings and titles of docket entries that the clerk keeps; we reserve the rights to reference the docket and to use titles of documents as entered by filers) |
| 2521 | Transcript from 4/18/2023 Hearing |

## MOTION FOR LEAVE TO AMEND OUR QUESTIONS AND DESIGNATION

We provided all parties to this appeal with a redline on Saturday, April 22. No parties objected. In the event that any parties object to our amended designation and questions at a later date, or that leave of any Court is needed to amend, we ask that this filing be considered as a motion for leave to amend.

.

Respectfully submitted,


*/s/ Daniel A. Frishberg*                          */s/ Immanuel Herrmann*
Daniel A. Frishberg                                Immanuel Herrmann
*Pro Se*                                           *Pro Se*
April ~~19~~25, 2023                               April ~~19~~25, 2023¶