KAUFMAN DOLOWICH & VOLUCK, LLP
40 Exchange Place, 20th Floor
New York, NY 10005
Phone: (212) 485-9600
Fax: (212) 485-9700
Kevin J. Windels
kwindels@kdvlaw.com
*Attorneys for Euclid Financial Institution Underwriters,
LLC, a duly authorized agent of Certain Underwriters at
Lloyds of London and Republic Vanguard  Insurance
Company*

**Hearing Date and Time:**

**June 28, 2023 at 10:00 a.m.**


**Objection Deadline Date and Time:**

**June 21, 2023 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| CELSIUS NETWORK LLC, et al.,[1] | ) | **Case No. 22-10964 (MG)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |

**NOTICE OF HEARING ON MOTION OF
EUCLID FINANCIAL INSTITUTION UNDERWRITERS, LLC, A DULY
AUTHORIZED AGENT OF CERTAIN UNDERWRITERS AT LLOYDS OF LONDON
AND REPUBLIC VANGUARD INSURANCE COMPANY
FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT APPLICABLE**

 **PLEASE TAKE NOTICE** that a hearing on the motion of Euclid Financial Institution

Underwriters, LLC, a duly authorized agent of Certain Underwriters at Lloyds of London and

Republic Vanguard Insurance Company (collectively "Underwriters") for entry of the proposed

order pursuant to 11 U.S.C. §362(d), attached hereto as Exhibit A, for relief from the automatic

---

[1]  The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining
LLC (1387); Celsius Network Limited (1219); Celsius Network Inc. (8554); Celsius Networks Lending LLC (3390);
Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location
of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11
cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

stay, to the extent applicable, to permit the advancement and/or payment of certain defense costs under a Directors & Officer's Liability and Corporate Securities Liability insurance policy issued by Underwriters to one of the Debtors, namely, Celsius Network, Inc., will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the omnibus hearing to be held on **June 28, 2023 at 10:00 a.m., prevailing Eastern Time** (the "Hearing") or as soon thereafter as counsel may be heard. In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. The Court shall provide a Zoom link to those persons who have made an eCourtAppearance by 4 PM the business day before the hearing (June 27, 2023). Any party appearing at, listening to, or observing the Hearing, must make an electronic appearance, an eCourtAppearance, by using the eCourtAppearance portal located on the Court's website, https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl, or by clicking the "eCourtAppearances" tab on Judge Glenn's page of the Court's website at, https://www.nysb.uscourts.gov/content/chief-judge-martin-glenn. After the deadline to make appearances passes, the Court will send Outlook invitations to those persons who made eCourtAppearances, using the email addresses submitted with those appearances.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on June 28, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on June 28, 2023. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for

Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of In re Celsius Network LLC, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, which are available on the Court's website at http://www.nysb.uscourts.gov; and (d) be served in accordance with the Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief [Docket No. 1181] (the "Case Management Order") by June 21, 2023, at 4:00 p.m., prevailing Eastern Time, to (i) the entities on the Master Service List, as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius, and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the movant.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these Chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these Chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion, must (i) be made in writing; (ii) state with particularity the grounds therefore; (iii) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court; (iv) be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, preferably in Portable Document Format (.pdf), WordPerfect, Microsoft Word or any other Windows-based word processing format (with a hard copy delivered directly to Judge Glenn's Chambers); and (v) be served in accordance with General Order M-399, and upon counsel for Underwriters, Kaufman Dolowich & Voluck, LLP,  40 Exchange Place, 20th floor New York, New York 10005, Attention: Kevin J. Windels, together with proof of service therein, so as to be received by no later than 4:00 p.m. (Eastern, Daylight Savings Time) on June 21, 2023.

Date:   New York, New York                  KAUFMAN DOLOWICH & VOLUCK, LLP
        May 3, 2023

                                            By: *Kevin J. Windels*
                                             Kevin J. Windels

40 Exchange Place, 20th Floor
New York, New York 10005
Tel: (212) 485-9600
kwindels@kdvlaw.com
*Attorneys for Euclid Financial Institution*
*Underwriters, LLC a duly authorized agent of*
*Certain Underwriters at Lloyds of London and*
*Republic Vanguard Insurance Company*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| CELSIUS NETWORK LLC, et al.,[2] | ) | **Case No. 22-10964 (MG)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |

**ORDER GRANTING MOTION OF EUCLID FINANCIAL INSTITUTION
UNDERWRITERS, LLC, A DULY AUTHORIZED AGENT OF CERTAIN
UNDERWRITERS AT LLOYDS OF LONDON AND REPUBLIC VANGUARD
INSURANCE COMPANY
<u>FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE</u>**

Upon the motion of Euclid Financial Institution Underwriters, LLC, a duly authorized

agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company

(collectively "Underwriters") Docket No. _____ (Case No. 22-10964)[3] for relief from the

Automatic Stay, to the extent applicable, seeking authority to reimburse from a Directors &

Officer's Liability and Corporate Securities Liability insurance policy, Policy No. EFI1203088-

00, (the "Policy") issued by Underwriters to one of the Debtors[4], namely, Celsius Network, Inc.

("Celsius Network"), for certain defense costs being incurred by the Individual Insureds under the

Policy issued to Celsius Network and its subsidiaries (collectively, "Celsius"), and notice of the

---

[3] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

[4] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

motion having been properly given, and having considered all objections or other responses to the motion (if any), and the Court having reviewed the motion pursuant to 11 U.S.C. §§362(d), 541(a) and 105(a), and Fed. R. Bankr. P. 4001(a) and 9014, and found good cause to enter the relief requested by the motion, now therefore,

**IT IS HEREBY ORDERED**

1.      To the extent applicable, the automatic stay imposed by 11 U.S.C. §362(a) in the respective proceedings is hereby modified solely to the extent necessary to allow Underwriters to advance and/or make payments under the Policy for Defense Costs incurred by the Individual Insureds who have been sued in an arbitration and in multiple state and federal court lawsuits (including a draft of an adversary proceeding in this court), and who have received demand letters and/or emails, subpoenas, formal and/or informal requests for documents and information or formal letters, received subpoenas or formal letters announcing investigations or requests for documents or information in connection with various investigations by multiple state and federal regulators and/or Attorneys General, as well as from certain foreign regulators situated in Canada and the United Kingdom, subject to Underwriters' determination that the above are potentially covered under the Policy and subject to a reservation of rights by Underwriters or by any of the Insureds under the Policy and applicable law.

2.      Nothing herein shall constitute a finding by the Court that the proceeds of the Policy are or are not property of the Debtors' estates, and the Court makes no finding as to the applicability of the automatic stay imposed by 11 U.S.C. §362(a) to the Policy proceeds.

3.      Underwriters shall provide written quarterly updates on the amount of Defense Costs advanced on behalf of the Individual Insureds under the Policy to the U. S. Trustee until the Limits of Liability of  the Policy are fully eroded.

4.      Nothing herein shall prejudice the current or future position of Underwriters or any Insured under the Policy, and the parties reserve all rights, with respect to (1) the appropriateness of any obligation on Underwriters or restriction on the operation of the Policy contemplated by this Order; or (2) the appropriateness of any other obligation on Underwriters or restriction on the operation of the Policy. The parties also reserve their rights to seek to modify this order.

5.      Any and all advancements or payments by Underwriters shall reduce the Policy's Limits of Liability in a like amount to the extent permitted under the terms and conditions of the Policy, unless or until such amounts are repaid to Underwriters.

6.      Nothing in this Order shall constitute (1) a waiver, modification or limitation of Underwriters' reservation of all rights, remedies and defenses under the Policy and otherwise; (2) a waiver, modification or limitation of any of the terms or conditions of the Policy; or (3) a finding that such sums are due and owing, or in what amount, under the Policy. Similarly, nothing in this Order shall constitute a waiver, modification of limitation of any rights of the U.S. Trustee or any other Insured under the Policy.

7.      This Order is immediately valid and fully effected upon its entry and the 14 day stay pursuant to Fed. R. Bankr. Proc. 4001(a) is hereby waived.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**SO ORDERED.**

Date:  June ___, 2023
       New York, New York

_____
MARTIN GLENN, U.S.B.J.
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| CELSIUS NETWORK LLC, et al., | ) | **Case No. 22-10964 (MG)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |

**MOTION OF EUCLID FINANCIAL INSTITUTION UNDERWRITERS, LLC, A DULY AUTHORIZED AGENT OF CERTAIN UNDERWRITERS AT LLOYDS OF LONDON AND REPUBLIC VANGUARD INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT APPLICABLE**

KAUFMAN DOLOWICH & VOLUCK, LLP
40 Exchange Place, 20th Floor
New York, NY 10005
Phone: (212) 485-9600
Fax: (212) 485-9700
Kevin J. Windels
kwindels@kdvlaw.com
*Attorneys for Euclid Financial Institution Underwriters, LLC*, a *duly authorized agent of Certain Underwriters at Lloyds of London and Republic Vanguard  Insurance Company*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.    JURISDICTION ...................................................................................................................... 2

II.   FACTUAL BACKGROUND .................................................................................................... 2

      A.    The Pending Investigations and Lawsuits Involving Celsius and its Directors and Officers 2

      B.    The Directors and Officers Liability Policy Issued to Celsius Network by Underwriters .... 5

      C.    Multiple Notices of Claims Have Been Reported Under Underwriters' Policy ................. 10

III.  RELIEF REQUESTED AND BASIS THEREFOR .......................................................... 10

IV.   WAIVER OF MEMORANDUM OF LAW ........................................................................ 17

V.    NO PRIOR REQUEST .......................................................................................................... 17

VI.   CONCLUSION ........................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Homsy v. Floyd (In re Vitek, Inc.)*,
   51 F. 3d 530 (5th Cir. 1995)..................................................................................... 13

*In re Adelphia Commc'ns Corp.*,
   285 B.R. 580 (Bankr. S.D.N.Y. 2002), *vacated and remanded on other grounds*, 298 B.R. 49
   (Bankr. S.D.N.Y. 2003)................................................................................. 15, 16

*In re Adelphia Commc'ns Corp.*,
   298 B.R. 49 (S.D.N.Y. 2003) ............................................................................. 11

*In re Continental Airlines*,
   203 F.3d 203 (3d Cir. 2000) .............................................................................. 11

*In re CyberMedica, Inc.*,
   280 B.R. 12 (Bankr. D. Mass. 2002).............................................................. 12, 15

*In re Downey Fin. Corp.*,
   428 B.R. 595 (Bankr. D. Del. 2010) ...................................................................... 15

*In re Eastwind Group, Inc.*,
   303 B.R. 743 (Bankr. E.D. Pa. 2004).................................................................... 12

*In Re Edgeworth*,
   993 F.2d 51 (5th Cir. 1993)................................................................................. 13

*In re Enron Corp.*,
   2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) ................................................ 15

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004)..................................................................... 11, 12

*In re Louisiana World Exposition, Inc.*,
   832 F.2d 1391 (5th Cir. 1987) ............................................................................. 11

*In re MF Global*,
   469 B.R. 177 (S.D.N.Y. 2012) ...................................................................... passim

*Ochs v. Lipson (In re First Central Fin. Corp.)*,
   238 B.R. 9 (Bankr. E.D.N.Y. 1999), *aff'd in an unreported decision*, No. 99-CV-6730 (TCP),
   2000 U.S. Dist. LEXIS 22005 (E.D.N.Y. Mar. 2, 2000) ...................................... 11, 12, 13, 15

**Other Authorities**

11 U.S.C. § 101 ................................................................................................... 2

11 U.S.C. § 362(d) ...................................................................................... passim

11 U.S.C. § 541 ............................................................................................ 10, 11

28 U.S.C. § 1334 ................................................................................................ 2

28 U.S.C. § 1409 ................................................................................................ 2

28 U.S.C. §§ 157 ................................................................................................ 2

Rule 9013-1(a) S.D.N.Y. Bankruptcy Court.............................................................. 17

KAUFMAN DOLOWICH & VOLUCK, LLP
40 Exchange Place, 20th Floor
New York, NY 10005
Phone: (212) 485-9600
Fax: (212) 485-9700
Kevin J. Windels
kwindels@kdvlaw.com
*Attorneys for Euclid Financial Institution Underwriters, LLC*, a *duly authorized agent of*
     *Certain Underwriters at Lloyds of London and Republic Vanguard  Insurance Company*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| CELSIUS NETWORK LLC, et al.,[5] | ) | **Case No. 22-10964 (MG)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |


**MOTION OF EUCLID FINANCIAL INSTITUTION UNDERWRITERS, LLC, A DULY
AUTHORIZED AGENT OF CERTAIN UNDERWRITERS AT LLOYDS OF LONDON
AND REPUBLIC VANGUARD INSURANCE COMPANY FOR RELIEF FROM THE
AUTOMATIC STAY TO THE EXTENT APPLICABLE**


1.      Euclid Financial Institution Underwriters, LLC ("EFIU"),  a duly authorized

agent of  Certain Underwriters at Lloyds of London and  Republic Vanguard Insurance Company

(collectively "Underwriters") by and through its undersigned counsel, enters a limited

appearance solely for the purpose of moving the Court pursuant to 11 U.S.C. § 362(d) and

Bankruptcy Rule 4001(a) for relief from the automatic stay, to the extent applicable, for the

---

[5]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining
LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390);
Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location
of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11
cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

purpose of the advancement and/or payment of certain defense costs under a Directors & Officer's Liability and Corporate Securities Liability insurance policy (the "Policy") issued by Underwriters to one of the Debtors, namely, Celsius Network, Inc. ("Celsius Network") for certain defense costs being incurred by the insured persons of the Debtor and its subsidiaries (collectively, "Celsius"). A true and accurate copy of the Policy is annexed as Exhibit 1. The General Terms and Conditions Section (the "GTC Coverage Section") of the Policy defines the term **Insurers** as "the insurance compan[ies] set forth in Item 4 of the General Declarations", which, in turn, identifies those companies as Certain Underwriters at Lloyds of London (55%) and Republic Vanguard Insurance Company (45%) (Ex.1, GTC Coverage Section at p.2 of 9 and General Declarations at p.1 of 2). Neither Underwriters nor EFIU consent to jurisdiction for any other purpose. The grounds for this Motion are set forth below.

## I.  JURISDICTION

2.       The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(G). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## II.  FACTUAL BACKGROUND

### A.  The Pending Investigations and Lawsuits Involving Celsius and its Directors and Officers

3.       In July 13, 2022, the Debtor, Celsius Network LLC and certain of its subsidiaries and affiliates, namely, Celsius Network Inc., Celsius KeyFi LLC, Celsius Lending LLC, Celsius Mining LLC, Celsius Network Limited, Celsius Networks Lending LLC, and Celsius US Holding LLC (collectively "the Debtors") filed voluntary bankruptcy petitions and for joint administration of their respective cases under the case number assigned to the Chapter 11 case filed by Celsius Network LLC under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (Doc. Nos. 1,

2 and 7 ). On July 9, 2022, this Court ordered that the Debtors' estates be jointly administered (Doc. 53).

4.      Beginning in July 2022, Celsius Network and its subsidiaries, as well as numerous directors, officers and employees of Celsius, including Adrian Alisie, Amir Ayalon, Tal Bentov, Guillermo Bodnar, Rod Bolger, Ron Deutsch, Chris Ferraro, Hanoch ("Nuke") Goldstein, Shiran Kleiderman, Jason Perman, Trunshedda Ramos, Alex Mashinsky, Shlomi Daniel Leon, Jeremie Beaudry, Rodney Sunada-Wong, Kristine Meehan Mashinsky, Aliza Landes, Roni Cohen-Pavon, Johannes Treutler, Asaf Iram, Dean Tappan, Harumi Urata-Thompson, David Barse and Alan Jeffrey, have either: (a) been sued in in court cases or in arbitration, (b) received demand letters and/or emails (*i.e.*, Albert Yao (employment matter); Matthew Bowen; Brad Hart; Erik Jan Smulder), (c) received subpoenas, formal and/or informal requests for documents and information or formal letters, and/or (d) received subpoenas or formal letters announcing investigations and/or requests for documents or information in connection with various investigations being conducted by the United States Department of Justice, the Securities and Exchange Commission, the Commodity Future Trading Commission, the Federal Trade Commission, by Shoba Pillay, the Chapter 11 Examiner this Court approved by Order dated September 29, 2022 (who interviewed 26 current and former Celsius directors, officers and/or employees and others, propounded Rule 2400 requests and reviewed approximately 231,000 documents, and issued a Final Report on January 30, 2023) and by multiple state regulators and/or Attorneys General, including Alabama, Alaska, California, Georgia, Hawaii, Idaho, Illinois, Kentucky, Massachusetts, Minnesota, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Vermont, Washington and the District of Columbia. In addition, certain of the states have initiated proceedings (i.e., the Texas State

Securities Board [Docket No.: 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] on September 17, 2021; the Texas State Securities Board [no Docket No.] on August 4, 2022; the California Department of Financial Protection and Innovation (proceeding regarding revocation of license) on August 19, 2022) and issued cease and desist Orders (i.e., the New Jersey Bureau of Securities on September 17, 2021; the Kentucky Department of Financial Institutions, Securities Division on September 23, 2021; the California Business, Consumer Services and Housing Agency Department of Financial Protection and Innovation dated August 8, 2022; the Alaska Department of Commerce, Community, and Economic Development Division of Banking and Securities dated October 19, 2022) or Orders to Show Cause why a Cease and Desist Order should not be issued or Ex Parte Motions for a Cease and Desist Order or Notice to Cease and Desist and Opportunity for a Hearing (i.e., the Vermont State Department of Financial Regulation on August 12, 2022; the Alabama Securities Commission on September 16, 2021; the District of Columbia, Department of Insurance, Securities and Banking on October 13, 2022). Investigations have also been initiated by certain foreign regulatory agencies, including the Quebec Authority on Financial Markets, the Ontario Securities Commission and the UK Financial Conduct Authority against Celsius Network, Celsius Network Ltd and Celsius Network LLC. The following actions, adversary proceedings or arbitrations have also been commenced: a) *Plutus21 Blockchain Opportunities Fund, I, LP, et al. v. Alex Mashinsky and S. Daniel Leon* (Arbitration); b) Ray M. Langley (customer complaint against Celsius Network dated June 14, 2022 filed just with the State of California Department of Justice); c) Hugh Minton (customer complaint) against Celsius Network, LLC dated June 24, 2022, filed just to the South Dakota Dep't of Labor & Regulation); d) *Samuel Taylor Goines v. Celsius Network, LLC, Celsius Lending, LLC, Celsius KeyFi, LLC, Alexander Mashinsky, Shlomi "Daniel" Leon, David Barse and Alan Jeffrey Carr* filed in the United States District Court,

District of New Jersey on July 13, 2022 (securities class action); d) *KeyFi, Inc. v. Celsius Network Ltd. and Celsius KeyFi, LLC* filed in New York County Supreme Court on July 7, 2022; e) *Valentin Komarovskiy v. Celsius Network, LLC, Alexander Mashinsky and Shlomi "Daniel" Leo*n, (filed in the Commonwealth of Massachusetts, Superior Court Department, Worcester on December 9, 2022) ; f) *The People of the State of New York v. Alex Mashinsky* filed in New York County Supreme Court on January 5, 2023; g) *Official Committee of Unsecured Creditors of Celsius Network, LLC, et al. v. Alexander Mashinsky, et al.* [draft Adversary Proceeding dated February 14, 2023, and as amended in draft March 30, 2023]; and h) *Thomas Bull v. Alex Mashinsky and Kristine Mashinsky* (filed in the United States District Court, Southern District of New York on February 16, 2023).

5.      There are also ongoing investigations being conducted by the United States Attorneys' Offices for the Southern District of New York, the Securities and Exchange Commission, the Commodity Future Trading Commission, the Federal Trade Commission and other state regulatory agencies in connection with the events leading up the Debtors' bankruptcy filings.

**B.      The Directors and Officers Liability Policy Issued to Celsius Network by Underwriters**

6.      Before the Debtors' bankruptcy filings, Underwriters issued the Policy, No. EFI1203088-00,  to Celsius Network, Inc. for the period May 30, 2021 to May 30, 2022, extended to June 15, 2023 by Endorsement # 13, with a Directors and Officers and Corporate Securities Liability Limit of $1,500,000 subject to a retention of $2,500,000 per **Claim** for Insuring Agreements B and C and no retention for Coverage A (non-indemnifiable Loss) pursuant to Endorsement # 14. Subject to all of its terms and conditions, the Policy potentially affords

coverage up to a maximum aggregate limit of liability of $1,500,000, inclusive of **Defense Costs**.[6]
A true and correct copy of the Policy is attached hereto as Exhibit 1.

7.      In relevant part, the Directors & Officers and Corporate Securities Liability
Coverage Section (the "D&O Coverage Section") of the Policy contains three types of coverage
under its Insuring Agreements. (Ex. 1, D&O Coverage Section p.1 of 12).  First, under **Coverage
A: Individual Insurance Coverage**, coverage is provided for a covered **Loss** incurred by
**Individual Insureds** arising from **Claims** made against them if such **Loss** is not indemnified by
the **Company**. Second, under **Coverage B: Company Reimbursement Coverage**, coverage is
provided for a covered **Loss** by the **Company** to the extent it indemnifies the **Individual Insureds**
for covered **Loss** in connection with **Claims** made against **Individual Insureds**.  Third, **Coverage
C: Company Coverage**, provides coverage for the **Company** for covered **Loss** resulting from
**Claims** for covered **Loss** made against it.

8.      The term **Company** is defined in the GTC Coverage Section of the Policy to mean,
in pertinent part, the **Named Insured**, any **Subsidiary,** and the **Named Insured** or any
**Subsidiary** as a debtor-in-possession under United States of America Bankruptcy law or similar
legal statutes under foreign law. (Ex. 1, GTC Coverage Section at p.1 of 9).

9.       In addition to the Definitions in the GTC Section of the Policy, additional relevant
terms of the Policy are defined in the D&O Coverage Section of the Policy (Ex. 1, D&O Coverage
Section pp.1-6 of 12). A **Claim** is defined (at p. 1 of 12) in pertinent part to mean:

1. a written demand, other than a **Derivative Demand,** for monetary,
nonmonetary or injunctive relief (including any request to toll or waive
any statute of limitations and including any demand for mediation,
arbitration or any other alternative dispute resolution process);

2. a civil, criminal, administrative, regulatory or arbitration proceeding for
monetary, nonmonetary or injunctive relief which is commenced by:

---

[6] Words appearing in **bold** are defined terms under the Policy.

        (i)      service of a complaint or similar pleading;

        (ii)     return of an indictment, information or similar document (in the case of a criminal proceeding); or

        (iii)    receipt or filing of a notice of charges;

3.    a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

        (i)      once such **Individual Insured** is identified in writing by such investigating authority or enforcement body as a person against whom a proceeding described in subparagraph 2 of this Definition may be commenced; or

        (ii)     in the case of an investigation by the Securities and Exchange Commission("**SEC**") or a similar state or foreign government authority, after:

            (a) the service of a subpoena upon such **Individual Insured**; or

            (b) the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**;

10.    The D&O Coverage Section of the Policy (Ex. 1, p.5 of 12) defines a **Securities Claim** as a **Claim** made against any **Insured:**

1.    alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

        (i)   brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company;** or

        (ii)  brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company;** or

2.    brought derivatively on behalf of a **Company** by a security holder of such **Company.**

11.     The D&O Coverage Section (Ex. 1, p.2 of 12) defines an **Employee**, in pertinent part, to mean any past, present or future employee of the **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee.

12.     The D&O Coverage Section (Ex.1, pp.3-4 of 12) defines the terms of **Executive**, **Individual Insured**, and **Insured** as set forth below:

C.     **Executive** means:

1.  any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, governor, general partner, managing general partner, venture partner, administrative general partner, principal, management committee member of a duly constituted committee, or member of the Board of Managers of a **Company**;

2.  any past, present or future person in a duly elected or appointed position in a **Company** which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in paragraph 1. of this Definition; or

3.  any past, present or future General Counsel, Chief Compliance Officer, or Risk Manager (or equivalent position) of the **Named Insured**.

D.     **Individual Insured** means any: 1. **Executive**;
                                         2. **Employee**; or
                                         3. **Outside Entity Executive**.

E.     **Insured** means any:   1. **Company**; or
                               2. **Individual Insured**.

13.     The D&O Coverage Section defines the term **Loss** (Ex. 1, at p.4 of 12) as follows:

J.     **Loss** means:

1.  the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to: (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and (ii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages to the extent allowed by applicable law. The enforceability of this subparagraph (ii)

shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

    2.  **Defense Costs**

14.    The D&O Coverage Section defines the term **Wrongful Act** (Ex. 1, p.6 of 12) as follows:

    P.  **Wrongful Act** means:

    1.  any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act, including but not limited to an **Employment Practices Violation**, by an **Individual Insured** in his or her capacity as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive**, **Employee**, or **Outside Entity Executive**; or

    2.  any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company** in connection with a **Securities Claim**.

15.    Section VI.A. of the D&O Coverage Section provides, in pertinent part, that the **Insurers** do not have any duty to defend a **Claim,** that an **Insured** shall defend and contest any **Claim** made against them and that the **Insurer** shall advance **Defense Costs** in excess of the applicable retention on behalf of the Insured prior to the final disposition of the **Claim**. (Ex. 1, pp. 9-10 of 12).

16.    Section X. of the D&O Coverage Section contains an "**Order of Payments**" provision, which provides, in pertinent part, that in the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **Coverage Section** but which **Loss,** in the aggregate, exceeds the remaining available Limits of Liability applicable to this **Coverage Section** (including by virtue of the depletion of the Policy Aggregate Limit of Liability), then the **Insurers** shall first pay **Loss** under the Policy for which coverage is provided under Coverage A of this **Coverage Section** and that the "**Financial Insolvency** of any **Company** or any **Individual**

**Insured** shall not relieve the **Insurer** of its obligations to prioritize payment of covered **Loss** under the **Coverage Section** pursuant to this Section X." (Ex. 1, pp. 11-12 of 12).

### C.    Multiple Notices of Claims Have Been Reported Under Underwriters' Policy

17.    Since May 6, 2022, Underwriters have received numerous notices seeking coverage under the Policy on behalf of the directors, officers and certain employees of the Debtors in connection with the lawsuits and investigations that are now pending, including multiple requests from **Individual Insureds** requesting the payment of **Defense Costs** incurred in connection with the aforementioned investigations, lawsuits and arbitration proceeding.  Although Underwriters have reserved their rights to deny and/or limit coverage for these matters under the Policy, they are agreeable at this time to advancing those reasonable **Defense Costs** incurred by those **Individual Insureds** that are potentially covered subject to its full reservation of rights under the Policy, including those set forth in Section VI of the Policy.

### III.    RELIEF REQUESTED AND BASIS THEREFOR

18.    Because the case law is not uniform on the question of whether the proceeds of liability insurance policies are property of the estate under 11 U.S.C. § 541 and thereby subject to the automatic stay contained in 11 U.S.C. § 362, Underwriters have filed this motion out of an abundance of caution so as to avoid violating the stay. While Underwriters take no position in this case on whether the proceeds of the Policy are property of the Debtors' estates, if it is determined that the stay applies both to the Policy and its proceeds, Underwriters seek entry of an order granting relief from the stay, if applicable, for purposes of advancing reasonable and necessary **Defense Costs** incurred by **Individual Insureds** under the Policy in connection with the arbitration, the pending lawsuits and investigations, as well as additional matters that may arise in

the future, subject to Underwriters' determination that such matters are potentially covered under the Policy.[7]

19.     Although it is well established that a Debtor's liability policy is considered property of a Debtor's estate under 11 U.S.C. § 541, the proceeds are not necessarily so. See, *In re Continental Airlines*, 203 F.3d 203, 216 (3d Cir. 2000) (the "proceeds from [an] insurance policy should be evaluated separately from the Debtor's interest in the policy itself"); see also *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1400-01 (5th Cir. 1987) (proceeds of D&O policy which did not provide liability coverage for third-party claims against the Debtor not property of the estate); *In re MF Global*, 469 B.R. 177, 191 (S.D.N.Y. 2012) ("In cases where liability policies provide direct coverage to both directors and officers and debtors, courts have held that 'the proceeds will be the property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'") (citations omitted); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) ("individual insureds...have a right to use the policies' proceeds to cover their defense and settlement costs in litigation"); *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 52-54 (S.D.N.Y. 2003) (debtor did not have property interest in proceeds of D&O policies where it had made no payments for which it would be entitled to indemnity coverage under the policies); *Ochs v. Lipson (In re First Central Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999), *aff'd in an unreported decision*, No. 99-CV-6730 (TCP), 2000 U.S. Dist. LEXIS 22005 (E.D.N.Y. Mar. 2, 2000) ("While a majority of courts consider a D&O policy estate property, there is an increasing view that a distinction should be drawn when considering treatment of proceeds arising under such policies.") (citation omitted). Cf. *In re Eastwind Group, Inc.*, 303 B.R. 743, 748 (Bankr. E.D.

---

[7]   Underwriters are not requesting that this Court approve, review or otherwise become involved in coverage determinations under the Policy.

Pa. 2004) (where securities laws violations were asserted both against the directors and officers and the Debtor, the proceeds of a D&O policy providing entity coverage for securities claims were property of the estate); *In re CyberMedica, Inc.*, 280 B.R. 12 (Bankr. D. Mass. 2002) (proceeds of D&O policy which provided coverage to Debtor for indemnity and third-party claims were property of the Chapter 7 Debtor's estate).

20.    In *In re MF Global*, this court found that "Courts in this circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors and officers even though the insurance policies provided direct coverage to the debtor." 469 B.R. at 192 (citations omitted). This court also observed that "[t]he District Court for the Southern District of New York has also held that where the insurance proceeds are available to both a debtor and individual insureds, "the individual insureds have a right to use the policies' proceeds to cover their defense and settlement costs in litigation." *Id.* (citing *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004). In *MF Global*, this Court also found that "[l]ifting the automatic stay to permit U.S. Specialty to advance defense costs on behalf of the Individual Insureds would not severely prejudice the Debtors' estates. But failure to do so would significantly injure the Individual Insureds whose defense costs were covered by the Specialty Policies." 469 B.R. at 193. This Court also cited to the case of *Ochs v. Lipson*,  in which the Bankruptcy Court for the Eastern District of New York explained that even if a D&O liability policy provides coverage to the Debtor for claims against it -- in addition to providing coverage for claims against the directors and officers -- it does not necessarily follow that all proceeds of such a policy are property of the estate. 238 B.R. at 16-17. In that case, the D&O policy provided coverage for claims against the directors and officers, coverage to the Debtor for indemnity payments made to the directors and officers for claims against them, and coverage to the Debtor for securities claims

against it. A shareholder class action securities lawsuit had been filed against the directors and officers, and the Chapter 7 Trustee also had filed suit against the directors and officers alleging mismanagement and waste of corporate assets. The Trustee sought to enjoin the payment from the D&O policy of any amount incurred by the directors and officers in their defense of the lawsuits and also sought to enjoin payment of any amount to the shareholder plaintiffs, arguing instead that the policy should be preserved for satisfaction of his own claim against the directors and officers. *Id.* The court rejected the Trustee's position, and held instead that the proceeds of the D&O Policy were not property of the Debtor's estate in the circumstances of that case, notwithstanding that the policy provided securities claims coverage to the Debtor:

> The mere appendage of entity coverage to this Policy by way of a rider, providing the Debtor with protection from securities claims, does not provide sufficient predicate, per se, to metamorphose the proceeds into estate property. It may well be that proceeds of certain D&O insurance policies, which provide direct entity coverage to a corporate debtor, can be considered property of the estate. *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F. 3d 530, 535 (5th Cir. 1995) (commenting that the court has "not yet grappled with how to treat the proceeds of [a D & O policy] when the policy-owning debtor is but one of two or more coinsureds or additional named insureds"). Perhaps, this determination would be appropriate when many and/or large entity coverage claims against the debtor threaten to become a "free-for-all" that might exhaust the insurance proceeds and thereby jeopardize estate assets over and above the limits of the policy. *In Re Edgeworth*, 993 F. 2d at 56 n. 21. In such situations, the debtor's entity coverage competes for proceeds with the officer and director liability portion of the insurance policy. For every dollar paid out to the officers and directors there is one less dollar of coverage protecting the debtor's estate.

238 B.R. at 17 (citations omitted). Similar to this Court's holding in *MF Global*, the court in *Ochs v. Lipson* found that payment of the D&O policy proceeds for the directors' and officers' defense costs did not violate the stay.

21.    Similar to the Specialty Policies at issue in the *MF Global* case, the Policy here provides the **Individual Insureds** with priority to any interest that may be asserted by the Debtors. The **Order of Payments** section of the Policy provides in pertinent part that "[i]n the event of Loss

13

arising from any **Claim** for which payment is due under the provisions of [the] **Coverage Section** but for which **Loss**, in the aggregate, exceeds the remaining Limits of Liability…then the Insurer shall: A. first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**." (Ex. 1, D&O Coverage Section, Section X., pp.11-12 of 12). The **Individual Insureds'** needs far outweigh the Debtors' need for coverage. Here, the Policy potentially provides coverage for non-indemnifiable **Loss** incurred by **Individual Insureds**. As detailed above, the Policy also potentially provides coverage to the Debtors to the extent the Debtors indemnify the **Individual Insureds**, and for **Securities Claims** and fiduciary liability **Claims** made against the Debtors. To date, Underwriters have received multiple requests for coverage for **Loss** in the form of unreimbursed **Defense Costs** on behalf of the **Individual Insureds** referenced in paragraph 4 herein.  It is Underwriters' understanding that the Debtors will not be indemnifying the **Individual Insureds** for their **Defense Costs** incurred in connection with the pending lawsuits and investigations described in paragraph 4.  At this point, the Debtors' interest in coverage under the Policy for direct claims that may be asserted against the Debtors is subject to this Court's oversight. Nevertheless, even if the Court were to conclude that the proceeds of the Policy should be deemed property of the Debtors' estates, "cause" exists under 11 U.S.C. § 362(d) for relief from the stay for the purpose of permitting Underwriters to advance payments under the Policy for reasonable and necessary **Defense Costs** incurred by the **Individual Insureds**.

22.     Section 362(d) provides that the Court may grant relief from the automatic stay on request from a party in interest "for cause." 11 U.S.C. § 362(d)(1). Whether "cause" exists for purposes of this section is determined on a case-by-case basis and is left to the discretion of the bankruptcy judge. See, *In re MF Global*, 469 B.R. at 191; *In re Adelphia Commc'ns Corp.*, 285 B.R. 580, 593 (Bankr. S.D.N.Y. 2002), *vacated and remanded on other grounds*, 298 B.R. 49

(Bankr. S.D.N.Y. 2003). Among other things, the Court should consider the relative harm to interested parties if the stay is not lifted. *See id.* at 594 (considering multiple factors, including the impact of the stay on the parties and the balance of harms).

23.    Here, "cause" exists for granting relief from the stay in order to permit Underwriters to advance **Defense Costs** on behalf of the **Individual Insureds** under the Policy.  As detailed above, the Policy provides coverage to **Individual Insureds**, who have a present need for payment of their **Defense Costs** that outweighs the Debtors' need for coverage. In the *MF Global* case, this Court followed the court's finding in *Ochs v. Lipson*, that "'D&O policies are obtained for the protection of individual directors and officers. . .. In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.'" *In re MF Global*, 469 B.R. at 192 (citing *Ochs v. Lipson*, 238 B.R. at 16).

24.    In recognition of the separate and distinct interests of non-debtor co-insureds, a number of courts in this district and elsewhere have granted relief from the automatic stay to permit the advancement of defense costs to a Debtor's directors and officers even though the insurance policies also provided direct coverage to the co-insured Debtor. See *In re MF Global,* 469 B.R. at 191-192 (granting relief from stay in order to Specialty Policies to advance defense costs *In re Adelphia Commc'ns Corp.*, 285 B.R. at 598 (granting relief from stay in order to permit primary insurer to advance defense costs); *In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010) (granting relief from stay for cause in order to permit use of D&O policy proceeds for payment of defense costs *In re Enron Corp.*, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. at 18-19 (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense

payments under D&O policy).  As explained by Judge Gerber in *In re Adelphia*, "bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity coverage." 285 B.R. at 598.

25.     The **Individual Insureds'** interests in Policy's proceeds should be given priority to any interest that may be asserted by the Debtors. Section X. of the D&O Coverage Section of the Policy expressly prioritizes providing insurance coverage to the individual directors and officers, and there is no provision in the contract subordinating their rights to coverage to those of the Debtors. If the stay is not lifted, the harm to the **Individual Insureds** would outweigh any harm to the Debtors.  Even assuming that the Debtors had a property interest in the Policies' proceeds, the Priority of Payment provisions in the Policy makes clear that the coverage potentially afforded to the **Individual Insureds** for non-indemnifiable **Loss** must be paid prior to any payments made for matters implicating coverage potentially provided to the debtors for amounts they might pay as indemnification to the **Individual Insureds** or for covered **Claims** made against them. The "**Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of its obligations to prioritize payment of covered **Loss** under the **Coverage Section** pursuant to this Section X."  Thus, under the Policy, the Debtors' potential rights to coverage are subordinated to the rights of the **Individual Insureds**. (Ex.1, D&O Coverage Section pp.11-12 of 12).

26.     Based on the foregoing, "cause" under 11 U.S.C. § 362(d) exists to warrant relief from the stay to permit Underwriters to advance payments of **Defense Costs** pursuant to the Policy on behalf of the **Individual Insureds**.

## IV.    <u>WAIVER OF MEMORANDUM OF LAW</u>

27.    This motion includes, directly or by reference, citations to applicable authorities and a discussion of their application to the relief sought. Therefore, Underwriters respectfully request that service and filing of a memorandum of law as required under  Rule 9013-1(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

## V.    <u>NO PRIOR REQUEST</u>

28.    No prior motion or application for the relief sought herein by Underwriters or EFIU has been made to this or any other Court.

## VI.    <u>CONCLUSION</u>

29.    For the foregoing reasons, Underwriters respectfully request relief from the automatic stay provision in 11 U.S.C. § 362, to the extent applicable, in order to advance reasonable and necessary **Defense Costs** incurred by **Individual Insureds** under the Policy in connection with the pending lawsuits and investigations, as well as any additional matters that may arise in the future, subject to Underwriters' determination that such matters are potentially covered under the Policy and subject to a full reservation of its rights under the Policy and applicable law. Underwriters further request that the Court's order be effective upon entry, and that the 14-day stay period provided under Rule 4001(a)(3) not apply.

Date:  New York, NY
       May 3, 2023

KAUFMAN DOLOWICH & VOLUCK, LLP

By: *Kevin J. Windels*
Kevin J. Windels, Esq.
40 Exchange Place, 20th Floor
New York, New York 10005
Tel: (212) 485-9600
kwindels@kdvlaw.com
*Attorneys for Euclid Financial Institution*
*Underwriters, LLC a duly authorized agent of*

*Certain Underwriters at Lloyds of London and
Republic Vanguard Insurance Company*

# EXHIBIT 1



# CONCENTRIC

## Financial Institution Liability Portfolio

# Certificate of Insurance

1. Signature Required. This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. Correspondent Not Insurer. The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Insurers set forth herein.

3. Cancellation. If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. The above-named are authorized and directed to accept service of process on behalf of Insurers in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Insurers' behalf in the event such a suit shall be instituted.

5. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Insurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

6. Assignment. This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

7. Attached Conditions Incorporated. This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

8. Short Rate Cancellation. If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

All inquiries regarding this Certificate should be addressed to the following Correspondent:
Euclid Financial Institution Underwriters, LLC
234 Spring Lake Drive
Itasca, IL 60143

## Short Rate Cancellation Table For Term of One Year.

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A. If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written a term of one year.

B. If insurance has been in force for more than one year:

   1. Determine full annual premium as for insurance written for a term of one year.

   2. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

   3. Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

**This Declaration Page is attached to and forms part of Certificate provisions**

Previous No. EFI0701487 00       Authority Ref. No. B087520E02R5002       Certificate No. EFI1203088-00

1.   Name and address of the Assured:
     Celsius Network, Inc.
     221 River Street, 9th Floor
     Hoboken, NJ 07030

2.   Effective from May 30, 2021 to May 30, 2022
     both days at 12:01 a.m. standard time.

3.   Insurance is effective with:

     **Underwriters at Lloyd's of London**                    55%
     **RenaissanceRe Syndicate 1458**
     **One Lime Street, London,**
     **EC3M 7HA, UK**

     **Republic Vanguard Insurance Company, Inc.**            45%
     **800 Superior Ave. E., 21st Floor**
     **Cleveland, OH 44114**

4.   Amount              Coverage                  Rate              Premium

     As per Items 3 and 6 of the attached Euclid Financial Declaration page

5.   Forms attached hereto and special conditions:
     1.  Certificate of Insurance
     2.  LMA5218 (12/1/15) U.S. Terrorism Risk Insurance Act of 2002
     3.  LMA9104 (12/01/15) Policyholder Disclosure Notice of Terrorism Ins.
     4.  NMA1998 (24/04/1986) Service of Suit Clause (U.S.A.)
     5.  LMA3100 (15/09/2010) Sanction Limitation and Exclusion Clause
     6.  LMA5096 (07/03/2008) Several Liability Clause
     7.  NMA1256 (17/03/1960) Nuclear Incident Exclusion Clause-Liability-Direct (Broad) (U.S.A.)
     8.  NMA1477 Radioactive Contamination Exclusion Clause -Liability -Direct- USA
     9.  LMA9063 (01/09/2013) New Jersey Surplus Lines Notice
     10. LMA9064 (01/09/2013) New Jersey Surplus Lines Disclosure Notice
     11. EF GT 001 0116 General Terms and Conditions
     12. EF DO 020 0116 Directors & Officers and Corporate Securities Liability Coverage Section
     13. CG 008 0715 Prior Acts Exclusion
     14. CG 044 0416 TCPA Exclusion
     15. CG 109 0221 Cyber and Data Exclusion
     16. CM 044 1216 Employment Practices Liability Exclusion
     17. CM 096 0620 Theft or Loss of Cryptocurrency Exclusion
     18. CM 097 0620 Split Continuity Date
     19. CM 098 0620 Initial Coin Offering Exclusion
     20. CM 041 1016 Amend Cooperation Clause Endorsement
     21. CD 002 0815 Professional Services E&O Exclusion
     22. CD 059 0721 Securities Exclusion

6.   Service of Suit may be made upon:

The party as named in form NMA1998

---

7.    In the event of a claim, please notify the following:

As per Item 4 of the attached Euclid Financial Declaration page

---

Dated: <u>June 24, 2021</u>                                   By:

                                                                        Correspondent

### U.S. Terrorism Risk Insurance Act of 2002 as amended  New &
### Renewal Business Endorsement

*This Endorsement is issued in accordance with the terms and conditions of the "U.S.  Terrorism Risk Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an additional premium of USD $0.00 paid, it is  hereby noted and agreed with effect from inception that the Terrorism exclusion to which  this Insurance is subject, shall not apply to any "insured loss" directly resulting from any  "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended  ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the  type insured by this Insurance directly resulting from an "act of terrorism" as defined in  TRIA.  The coverage provided by this Endorsement shall expire at 12:00 midnight December  31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date   of the policy whichever occurs first, and shall not cover any losses or events which arise  after the earlier of these dates.  The Terrorism exclusion, to which this Insurance is  subject, applies in full force and effect to any other losses and any act or events that are  not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject.  All other terms, conditions, insured coverage and exclusions of this Insurance including  applicable limits and deductibles remain unchanged and apply in full force and effect to   the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are nul  responsible under the terms of TRIA (including subsequent action of Congress pursuant to  the Act) due to the application of any clause which results in a cap on the Underwriter's  liability for payment for terrorism losses.

LMA5218
12 January 2015

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:** The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

| | |
|---|---|
| | I hereby elect to purchase coverage for acts of terrorism for a prospective premium of USD $0.00 |
| | I hereby elect to have coverage for acts of terrorism excluded from my policy. I understand that I will have no coverage for losses arising from acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____
1458 Syndicate on behalf of certain underwriters at Lloyd's

_____
Print Name

_____
Policy Number

_____
Date

LMA9104
12 January 2015

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Messrs Mendes & Mount,
750 Seventh Avenue,
New York
New York 10019-6829
U.S.A

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.


NMA1998


24/04/1986

**Sanction Limitation and Exclusion Clause**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

## SEVERAL LIABILITY CLAUSE

**PLEASE NOTE – This notice contains important information.  PLEASE READ CAREFULLY**

The liability of an insurer under this contract is several and not joint with other insurers party to this contract.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this contract.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

LMA5096 (Combined Certificate)

7 March 2008

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the  isotopes of uranium or plutonium, (2) processing or utilizing spent fuel,   or   (3)    handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or   used    for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

NMA1256

17/03/1960

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)**

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

NMA1477

13/02/1964

## NEW JERSEY SURPLUS LINES NOTICE

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance.  Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.  The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

LMA9063
01 September 2013

## NEW JERSEY SURPLUS LINES DISCLOSURE NOTICE

The undersigned applicant has been advised by the undersigned originating insurance producer and understands that an insurance policy written by a surplus lines insurer is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.

LMA9064
01 September 2013

 

**General Declarations**

NOTICES: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS LIMITED TO LIABILITY FOR (I) **CLAIMS** FIRST MADE AGAINST **INSUREDS** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, THE **EXTENDED REPORTING PERIOD**, AND (II) OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI. OF THE GENERAL TERMS AND CONDITIONS. ANY COVERED **DEFENSE COSTS**, AND **INVESTIGATION COSTS** SHALL REDUCE THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND MAY BE APPLIED AGAINST THE RETENTION AMOUNT. EXCEPT AS EXPRESSLY PROVIDED FOR IN THE EMPLOYMENT PRACTICES LIABILITY **COVERAGE SECTION** AND THE FIDUCIARY LIABILITY **COVERAGE SECTION**, THE **INSURER** DOES NOT ASSUME ANY DUTY TO DEFEND. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

POLICY NUMBER:     EFI1203088-00
UMR:     B087520E02R5002

1. **NAMED INSURED:**    Celsius Network, Inc.
**Named Insured** Address:    221 River Street, 9th Floor
    Hoboken, NJ 07030

2. **POLICY PERIOD**:    Inception:    May 30, 2021
    Expiration:    May 30, 2022
    The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Insured** Address.

3. COVERAGES AND LIMITS OF LIABILITY APPLICABLE TO THIS POLICY:

| | Limit of Liability |
|---|---|
| ☒ (a) Directors & Officers and Corporate Securities Liability **Coverage Section** | $1,500,000 |
| ☐ (b) Private Company Management Liability **Coverage Section** | |
| ☐ (c) Investment Adviser Professional Liability **Coverage Section** | |
| ☐ (d) Investment Fund **Coverage Section** | |
| ☐ (e) Insurance Company Professional Liability **Coverage Section** | |
| ☐ (f) Bankers Professional Liability **Coverage Section** | |
| ☐ (g) Employment Practices Liability **Coverage Section** | |
| ☐ (h) Fiduciary Liability **Coverage Section** | |

POLICY AGGREGATE LIMIT OF LIABILITY
(i) For all **Coverage Sections** combined:    $1,500,000

4. **INSURER**:

    (a) **Insurers:**    Certain Underwriters at Lloyd's of London    55%
        Republic Vanguard Insurance Company    45%

    (b) Notice of **Claim** or circumstances:
        By E-Mail:    claimsmailbox@euclidfinancial.com
        By Mail:    Euclid Financial Institution Underwriters, LLC
            234 Spring Lake Drive
            Itasca IL 60143

EF GT DEC 0116        1 of 2

(c) All other notices:

        Euclid Financial Institution Underwriters, LLC
        234 Spring Lake Drive
        Itasca IL 60143

5.  EXTENDED REPORTING PERIOD:

    Period:     12 Months
    Premium:   200% of the annual premium

6.  PREMIUM:    $277,500

IN WITNESS WHEREOF, the **Insurer** has caused this policy to be signed below by its President, Secretary or duly authorized representative.

*[signature]*

_____

AUTHORIZED REPRESENTATIVE

      

**General Terms and Conditions**

In consideration of the premium charged, and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

**I. TERMS AND CONDITIONS**

In addition to the terms and conditions set forth in these General Terms and Conditions, the terms and conditions of each **Coverage Section** shall apply to, and only to that particular **Coverage Section** and in no way shall be construed to apply to any other **Coverage Section**. If any provision of the General Terms and Conditions is inconsistent or in conflict with terms and conditions of any **Coverage Section**, the terms and conditions of such **Coverage Section** shall control for purposes of that **Coverage Section**.

**II. DEFINITIONS**

The following terms whenever set forth in boldface type in this policy, whether in singular or in plural, shall have the meanings indicated. Any other terms set forth in boldface type in the General Terms and Conditions will have the meanings indicated in the applicable **Coverage Section**.

A. **Application** means

  1. the signed application for this policy, if any; all applications for any policy of which this policy is a renewal or replacement; and any attachments, information, warranty, or other materials submitted therewith or incorporated therein; and
  2. any filings made by the **Company** to the Securities Exchange Commission or any similar state, local, or foreign governmental entity, within the 12 months preceding the inception date of this policy.

  The materials defined in 1. and 2. above shall be deemed attached to and part of this policy.

B. **Company** means

  1. the **Named Insured**;
  2. any **Subsidiary**; and
  3. the **Named Insured** or any **Subsidiary** as a debtor-in-possession under United States of America bankruptcy law or similar legal status under foreign law.

  **Company** does not include and coverage shall not apply under any **Coverage Section** to, any **Subsidiary**, or any **Executive** or **Employee** of any **Subsidiary**, for any **Wrongful Act** committed, attempted, or allegedly committed or attempted, prior to or subsequent to such entity having met the definition of **Subsidiary** as defined in that **Coverage Section**.

C. **Coverage Section** means collectively or individually the Directors and Officers Liability **Coverage Section**, the Investment Adviser Management Liability

**Coverage** Section, the Investment Adviser Professional Liability **Coverage Section**, the Investment Fund **Coverage Section**, the Insurance Company Professional Liability **Coverage Section**, the Bankers Professional Liability **Coverage Section**, the Employment Practices Liability **Coverage Section**, or the Fiduciary Liability **Coverage Section**, but only with respect to those indicated as included as part of this policy by all three of the following:

1. indicated by ☒ in the General Declarations. (☐ indicates the **Coverage Section** is not included)
2. for which a **Coverage Section** Limit of Liability is indicated in Item 4 of the General Declarations; and
3. for which such **Coverage Section** Declarations and coverage form are attached to and form part of this policy.

D. **Domestic Partner** means a person legally recognized as a domestic or civil union partner under the provisions of any applicable federal, state or local statutory or common law under the provisions of any formal program established by a **Company**.

E. **Financial Insolvency** means:

1. the appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate a **Company**;
2. the filing of a petition under the bankruptcy laws of the United States of America by a **Company**; or
3. as to both 1. or 2. of this Definition, any equivalent events outside the United States of America.

F. **Indemnifiable Loss** means **Loss** for which a **Company**, **Fund Organization** or **Outside Entity** is permitted or required to indemnify or advance to the **Individual Insureds**.

G. **Insurer** means the insurance company set forth in Item 4 of the General Declarations.

H. **Management Control** means

1. owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or
2. having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

I. **Named Insured** means the entity set forth in Item 1. of the General Declarations.

J. **Non-indemnifiable Loss** means **Loss** which an **Individual Insured** becomes legally obligated to pay on account of any **Claim**, for which a **Company**, **Fund Organization** or **Outside Entity** fails to indemnify such **Individual Insured** and:

EF GT DEC 0116                                    2 of 9

1. such entity's failure to indemnify is a result of such entity's insolvency; or
2. such entity is not permitted to indemnify such **Individual Insured** pursuant to statutory or common law.

K. **Policy Period** means the period of time from the inception date set forth in Item 2 of the General Declarations to the earlier of the expiration date set forth in Item 2 of the General Declarations or the effective date of cancellation of this policy. In the event of cancellation of this policy, the effective date of cancellation shall replace the expiration date in Item 2 of the General Declarations.

L. **Related Wrongful Acts** means **Wrongful Acts** which are the same, repeated or continuous **Wrongful Acts**, or **Wrongful Acts** which arise from a common causal connection or cause the same or related damages, or have a common nexus or nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

## III. SPOUSES, ESTATES

Subject otherwise to the terms, conditions and limitations of this policy, this policy provides coverage for any **Claim** solely for **Wrongful Acts** committed or allegedly committed by the **Individual Insureds** made against:

A.    the estates, heirs, or legal representatives of such **Individual Insureds**, in the event of their incompetency, insolvency or bankruptcy; or

B.    the lawful spouse or legally recognized **Domestic Partner** (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world and hereinafter included in the term "spouse") of any such **Individual Insured** for all **Claims** arising solely out of his or her status as spouse of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse, or property transferred from the **Individual Insured** to the spouse.

This extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

## IV. LIMITS OF LIABILITY

A. The Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability for all **Loss**, including **Defense Costs**, under all **Coverage Sections** combined. The purchase of the Extended Reporting Period shall not in any way increase or reinstate any Limits of Liability.

B. The **Coverage Section** Limit of Liability set forth in Items 4(a), 4(b), 4(c), 4(d), 4(e), 4(f), 4(g), and 4(h) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability under each applicable **Coverage Section** for all **Loss**, including **Defense Costs**, under that respective **Coverage Section**. Each such **Coverage Section** Limit of Liability shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations. The Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations

EF GT DEC 0116                              3 of 9

shall be reduced and may be exhausted by payments of **Loss** under any one or more of the applicable **Coverage Sections**.

C. Any sub-limits of liability set forth in any applicable **Coverage Section** Declarations shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations and the applicable **Coverage Section** Limit of Liability set forth in that respective **Coverage Section** Declarations.

D. The **Insurer**'s obligations for all **Claims** shall cease upon exhaustion of the Policy Aggregate Limit of Liability and, to the extent any individual applicable **Coverage Section** Limit of Liability is exhausted, the **Insurer**'s obligations for all **Claims** under that particular **Coverage Section** shall cease.

E. **Defense Costs** incurred by the **Insurer** or by the **Insureds** shall be part of and not in addition to the applicable limits of liability. Payment of **Defense Costs** by the **Insurer** shall reduce and may exhaust all applicable limits of liability.

F. All **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be deemed a single **Claim** and shall be deemed to be first made against the **Insureds** on the date the earliest of such **Claims** is first made against any **Insureds.**

## V. RETENTIONS

A. The Retentions set forth in the respective **Coverage Section** Declarations are separate Retentions pertaining only to **Claims** under that applicable **Coverage Section**. The application of a Retention under one **Coverage Section** shall not reduce or eliminate the Retention under any other applicable **Coverage Section**.

B. With respect to a **Claim** under any applicable **Coverage Section**, the **Insurer** shall only pay **Loss** which is in excess of the amount set forth in the **Coverage Section** Declarations as the Retention applicable to each such **Claim** under the applicable **Coverage Section**. Such Retention shall be borne by the **Insureds** and shall remain uninsured.

C. If more than one Retention is applicable to any one **Claim**, the applicable Retentions will be applied separately to the **Loss** resulting from such **Claim**, and the payment of any Retention under one **Coverage Section** will not reduce or eliminate the Retention under any other.

D. Amounts incurred for **Defense Costs** shall be applied against the applicable Retention.

## VI. REPORTING AND NOTICE

A. The **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give notice to the **Insurer** by mail or electronically to the address set forth in Item 4(b) of the General Declarations of:

  1. any **Claim** made against an **Insured,**
  2. any matter which could involve the payment of **Voluntary Compliance Loss** under the **Fiduciary Liability Coverage Section,** if purchased; or
  3. any **Derivative Demand** under the Directors and Officers Liability **Coverage Section**, Investment Adviser Management Liability **Coverage Section**, or Investment Fund **Coverage Section**, if purchased,

EF GT DEC 0116                         4 of 9

as soon as practicable but no later than (i) the earlier of 60 days after the expiration date shown in Item 2 of the General Declarations or cancellation of the policy or (ii) prior to the end of the Extended Reporting Period, if applicable.

Any subsequent **Claim** which is made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts, circumstances, or a **Wrongful Act** alleged in a prior **Claim** for which notice already has been given, or which alleges any **Wrongful Act** which is a **Related Wrongful Act** shall be deemed a **Claim** first made at the time the prior **Claim** was first noticed to the **Insurer**.

B.  If during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insureds** become aware of any circumstances and a **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and notice is given to the **Insurer** by mail or electronically to the address set forth in Item 4 (b) of the General Declarations of such circumstances, along with a description of the alleged **Wrongful Act,** the allegations anticipated, the reasons for anticipating a **Claim**, and full particulars as to dates, persons and entities involved, then any **Claim** which subsequently is made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances and a **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or **Wrongful Act** originally was reported.

Notice pursuant to A. or B. above shall reference the policy number set forth in the General Declarations. If mailed, the date received by the **Insurer** shall constitute the date that such notice was given.

C.  All notices other than those notices provided for in A. and B. above shall be sent to the **Insurer** at the address set forth in Item 4(c) of the General Declarations.

## VII. CANCELLATION

This policy or any individual **Coverage Section** may be canceled by the **Named Insured** at any time by mailing written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire policy is to be canceled and when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy Period** either for the entire policy or for that respective **Coverage Section**, whichever is cancelled.

This policy may be canceled by or on behalf of the **Insurer** only in the event of non-payment of premium by the **Named Insured**. In the event of non-payment of premium by the **Named Insured**, the **Insurer** may cancel this policy by delivering to the **Named Insured** or by mailing to the **Named Insured**, by registered, certified or other first class mail, at the **Named Insured**'s address as stated in Item 1 of the General Declarations, written notice stating when, not less than 10 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice.

If the policy or any **Coverage Section** shall be canceled by the **Named Insured**, the **Insurer** shall retain the short rate proportion of the applicable premium herein.

EF GT DEC 0116                    5 of 9

If the Policy is canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the applicable premium herein.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

## VIII. EXTENDED REPORTING PERIOD

Upon expiration or cancellation of this policy, other than for non-payment of premium, the **Insureds** shall have the right, upon payment of the additional premium indicated in Item 5. of the General Declarations, to an extension of the Notice of Claim provision described in VI. Reporting and Notice of these General Terms and Conditions, for the length of time shown in Item 5 of the General Declarations, commencing on the earlier of the expiration date or effective date of cancellation. Such extension of time to report a **Claim** (herein referred to as the Extended Reporting Period wherever it appears in this policy) shall apply only to **Wrongful Acts** committed, attempted, or allegedly committed or attempted, prior to the earlier of the expiration date or effective date of cancellation, and which are not otherwise excluded by any terms and conditions of this policy. Any **Claim** first made during the Extended Reporting Period shall be deemed to have been made during the **Policy Period**.

As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this policy must have been paid and the premium for the Extended Reporting Period must be paid in full with written notice of the **Insured**'s election to purchase the Extended Reporting Period not more than 30 days after the earlier of the expiration date or effective date of cancellation. The **Insured**'s right to purchase the Extended Reporting Period shall otherwise lapse.

If the Extended Reporting Period is purchased, the additional premium shall be deemed fully earned, and the Extended Reporting Period cannot be canceled by any **Insured** or the **Insurer**.

If any premium is owed for the policy, any premium received from the **Named Insured** shall first be applied to the premium owing for the policy with the remainder applied to the premium for the Extended Reporting Period. The Extended Reporting Period shall not take effect unless the outstanding premium for the policy is paid in full and the premium for the Extended Reporting Period is paid when due.

The purchase of the Extended Reporting Period shall not in any way increase or reinstate any limits of liability.

## IX. CHANGE OF CONTROL

If during the **Policy Period**:

A. the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert, or

B. any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Insured**,

(A. and/or B. herein referred to as a Change In Control), then this policy may not be cancelled thereafter and it shall not, in any event, apply to any **Claim** alleging in whole or in part any **Wrongful Acts** committed, attempted or allegedly committed or attempted by any **Insured** subsequent the date of such Change In Control.

The **Named Insured** shall give the **Insurer** written notice of the Change In Control as soon as practicable, but no later than 30 days after the effective date of the Change In Control together with such other information as the **Insurer** may require.

## X. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit effectively in the name of any **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this policy unless such **Individual Insured** has been convicted of a criminal act or been determined by a final, non-appealable adjudication in any underlying proceeding to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the applicable Retention, the **Insurer** shall have a direct contractual right under this policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States), such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Section X. and any other rights the **Insurer** may have under applicable law.

## XI. REPRESENTATIONS AND SEVERABILITY

A. The **Insureds** represent that the information contained in the **Application** is true, accurate and complete. This policy is issued in reliance upon the material representations contained in the **Application**. If the **Application** contains material misrepresentations or omissions made with intent to deceive or that materially affect the acceptance of the risk or the hazard assumed by the **Insurer**, this policy shall not afford any coverage for any **Insured** who knew at the inception of the **Policy Period** of the facts that were misrepresented in, or were omitted from, the **Application**. The **Application** shall be deemed attached to, and incorporated into, this policy.

B. For the purpose of determining coverage for each **Insured**:

   1. the **Application** shall be construed as a separate application for coverage by each **Insured**;
   2. knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and

3. only knowledge possessed by the **Named Insured's** chief executive officer, chief financial officer, or general counsel or the person signing the **Application** shall be imputed to a **Company**.

C. Except as described above, knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

D. Notwithstanding any other provision of this policy, the **Insurer** shall not rescind this Policy.

## XII. NOTICE AND AUTHORITY

The **Named Insured** shall act on behalf of all **Insureds** with respect to the giving of notice of any **Claim**, the giving and receiving of notice of cancellation and non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer,** and the exercising or declining to exercise any right to an Extended Reporting Period.

## XIII. ASSIGNMENT

No change in, modification of or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the **Insurer**.

## XIV. ACTION

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured**'s obligation to pay shall have been finally determined either by final judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or entity, or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join the **Insurer** as a party to any action against the **Insured** or a **Company** to determine the **Insured**'s liability, nor shall the **Insurer** be impleaded by the **Insured** or a **Company** or their legal representative.

## XV. BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or the **Insured**'s estate shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this policy.

## XVI. COVERAGE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

For **Claims** made and maintained and **Wrongful Acts** committed in any jurisdiction other than the United States of America or any of its territories or possessions, all premiums, limits of liability, Retentions, **Loss** and other amounts are expressed and payable in the currency of the United States of America. If judgment is rendered,

EF GT DEC 0116                              8 of 9

settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Insured**) or in United States of America dollars at the rate of exchange published in The Wall Street Journal on the next publication date of The Wall Street Journal after the **Insurer**'s obligation to pay such **Loss** is established.

## XVII. GOVERNMENTAL RESTRICTIONS

This policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the **Insurer** from providing insurance.

## XVIII. HEADINGS

The descriptions in the headings and subheadings of this policy, including in any **Coverage Section**, are solely for convenience and form no part of the terms and conditions of coverage.

 

**Directors & Officers and Corporate Securities Liability Coverage Section Declarations**

1. **NAMED INSURED**:          Celsius Network, Inc.

2. **POLICY PERIOD**:          Inception:      May 30, 2021
                               Expiration:     May 30, 2022
                               The **Policy Period** incepts and expires as of 12:01 A.M. at the
                               **Named Insured** Address.

3. (a) **COVERAGE SECTION** LIMIT OF LIABILITY:              $1,500,000
   (b) **Derivative Demand** Investigation Sub-Limit of Liability:     $250,000

4. RETENTIONS:

(a) Each **Claim** under Coverage A:                         $0
(b) Each **Claim** other than a **Securities Claim** under Coverage B: $1,500,000
(c) Each **Securities Claim** under Coverage B or C:         $1,500,000
(d) Each **Derivative Demand** under Coverage D:             $0

5. CONTINUITY DATE:      See Endorsement

EF DO DEC 0116                          1 of 1



### Directors & Officers and Corporate Securities Liability Coverage Section

In consideration of the premium charged, in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, and subject to all terms and conditions, the **Insurer** agrees as follows:

### I. Insuring Agreements

### Coverage A: Individual Insurance Coverage

The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.

### Coverage B: Company Reimbursement Coverage

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss**.

### Coverage C: Company Coverage

The **Insurer** shall pay **Loss** of a **Company** arising from a **Securities Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period if applicable for any **Wrongful Act** of a **Company**.

### Coverage D: Derivative Demand Investigation Costs Coverage

The **Insurer** shall pay **Investigation Costs** up to the amount of the **Derivative Demand** Investigation Sub-Limit of Liability set forth in Item 3(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations incurred by a **Company** solely in response to a **Derivative Demand** first made and reported to the **Insurer** during the **Policy Period**. Payment of any **Investigation Costs** under this **Coverage Section** shall not waive any of the **Insurer**'s rights under this policy or at law.

### II.    Definitions

In addition to the Definitions in the General Terms and Conditions, the following terms whenever set forth in boldface type in this **Coverage Section**, whether in singular or in plural, shall have the meanings indicated.

A. **Claim** means

   1. a written demand, other than a **Derivative Demand,** for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute

of limitations and including any demand for mediation, arbitration or any other
alternative dispute resolution process);

2. a civil, criminal, administrative, regulatory or arbitration proceeding for
monetary, nonmonetary or injunctive relief which is commenced by:

    (i)    service of a complaint or similar pleading;
    (ii)   return of an indictment, information or similar document (in the case
           of a criminal proceeding); or
    (iii)  receipt or filing of a notice of charges;

3. a civil, criminal, administrative or regulatory investigation of an **Individual
Insured**:

    (i)  once such **Individual Insured** is identified in writing by such
       investigating authority or enforcement body as a person against whom
       a proceeding described in subparagraph 2 of this Definition may be
       commenced; or
    (ii) in the case of an investigation by the Securities and Exchange
       Commission("**SEC**") or a similar state or foreign government authority,
       after:

        (a) the service of a subpoena upon such **Individual Insured**; or
        (b) the **Individual Insured** is identified in a written "Wells" or other
            notice from the **SEC** or a similar state or foreign government
            authority that describes actual or alleged violations of laws by
            such **Individual Insured**;

4. a formal request for the extradition of an **Individual Insured** in any country by
another country for trial or to answer a criminal accusation.

B. **Defense Costs** means reasonable and necessary fees, costs and expenses
consented to by the **Insurer** (including premiums for any appeal bond, attachment
bond or similar bond arising out of a covered judgment, but without any obligation
to apply for or furnish any such bond), resulting solely from the investigation,
adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding
compensation of any **Individual Insured**. **Defense Costs** shall not include any
fees, costs or expenses incurred prior to the time that a **Claim** is first made against
an **Insured**.

C. **Derivative Demand** means a written demand by one or more security holders of
a **Company,** without the assistance, participation or solicitation of any **Executive**,
upon the board of directors (or equivalent management body) of such **Company**
requesting that it file on behalf of the **Company** a civil proceeding in a court of law
against any **Executive** for a **Wrongful Act.**

D. **Employee** means any past, present or future employee of a **Company**, whether
such employee is in a supervisory, co-worker or subordinate position or otherwise,
including:

1. any part-time, seasonal and temporary employee,
2. volunteer, individual who is contracted to perform work for a **Company**, or
independent contractor for a **Company** in his or her capacity as such, or
3. any individual who is leased to a **Company,**

EF DO 020 0116          2 of 12

but only if such **Company** provides indemnification to such employees, volunteers or individuals in the same manner as is provided to such **Company's** own employees; provided, however, a **Company** may request that no coverage be provided under this **Coverage Section** for an independent contractor or leased employee named in a specific **Claim**. Such request must be made in writing and within 90 days of the **Claim** being reported to the **Insurer**. If no such request is made, this **Coverage Section** shall apply as if the **Company** determined that such independent contractor or leased employee shall receive coverage.

E. **Employment Practices Violation** means the following actual or alleged acts whether committed directly or indirectly, intentionally or unintentionally:

1. wrongful, including constructive termination of employment (actual or constructive),dismissal or discharge;
2. breach of an implied contract of employment;
3. harassment, sexual harassment or creation of a hostile work environment;
4. discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
5. **Retaliation**;
6. employment-related misrepresentations to an **Employee** of a **Company** or applicant for employment with a **Company** or an **Outside Entity**;
7. employment-related libel, slander, humiliation, defamation or invasion of privacy;
8. wrongful failure to employ or promote;
9. wrongful deprivation of a career opportunity with a **Company**, wrongful discipline, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;
10. failure to grant tenure; or
11. with respect to 1 through 10 above, negligent hiring, retention, training, supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent organizational policies and procedures, or violation of an individual's civil rights;

but only if the actual or alleged **Employment Practices Violation** is brought by an **Employee** or an **Outside Entity Employee**, or by an applicant for employment with a **Company** or an **Outside Entity**.

F. **Executive** means

1. any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, governor, general partner, managing general partner, venture partner, administrative general partner, principal, management committee member of a duly constituted committee, or member of the Board of Managers of a **Company**;
2. any past, present or future person in a duly elected or appointed position in a **Company** which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in paragraph 1. of this Definition; or
3. any past, present or future General Counsel, Chief Compliance Officer, or Risk Manager (or equivalent position) of the **Named Insured**.

G. **Individual Insured** means any

    1. **Executive**;
    2. **Employee**; or
    3. **Outside Entity Executive**

H. **Insured** means any

    1. **Company**; or
    2. **Individual Insured**.

I. **Investigation Costs** means the reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** (including, but not limited to, attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors(or any equivalent management body), solely in connection with the investigation or evaluation of a **Derivative Demand.**

J. **Loss** means

    1. the amount that any Insured becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

        (i)    judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and
        (ii)   damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages to the extent allowed by applicable law. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

    2. **Defense Costs**;
    3. with respect to Coverage D of this **Coverage Section**, **Investigation Costs**.

**Loss** shall not include, other than **Defense Costs**:

    1. any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**;
    1. matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed, provided that the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this **Coverage Section**;
    2. civil or criminal fines or penalties;
    3. taxes or tax penalties (whether imposed by federal, state, local or other governmental authority);
    4. the costs and expenses of complying with any injunctive relief or other form of nonmonetary relief;
    5. compensation, salary, wages, fees, benefits, overhead, charges or expenses of any **Insured;**

6. any amounts owed pursuant to the terms of any contract or agreement, including any amounts related to any such exposures based on the contract or agreement;

7. any amount representing the increase in price or consideration where the **Claim** involves allegations that the price or consideration paid or offered to be paid for a merger, consolidation or acquisition of all or a majority of stock issued by or assets owned by any person or entity is inadequate or unfair; or

8. any reimbursement required under the Sarbanes-Oxley Act of 2002 or any rules, regulations or amendments promulgated thereunder, or any other type of reimbursement, restitution or disgorgement.

K. **Outside Entity** means any not-for-profit organization, other than a **Subsidiary.**

L. **Outside Entity Executive** means any **Executive** of a **Company** serving in the capacity as director, officer, trustee, trustee emeritus or governor of an **Outside Entity**, but only if such service is at the specific request or direction of a **Company**. In the event of a disagreement between a **Company** and an individual as to whether such individual was acting at the specific request or direction of such **Company**, this **Coverage Section** shall abide by the determination of the **Named Insured** on this issue and such determination shall be made by written notice to the **Insurer** within 90 days after the **Claim** first is reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this **Coverage Section** shall apply as if the **Named Insured** determined that such **Executive** was not acting at such **Company**'s specific request or direction.

M. **Pollutants** means any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

N. **Securities Claim** means a **Claim** made against any **Insured**:
1. alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:
    (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or
    (ii) brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or
2. brought derivatively on behalf of a **Company** by a security holder of such **Company**.

O. **Subsidiary** means
1. any entity in which the **Company** has or had **Management Control** on or before the inception date of the policy either directly or indirectly through one or more other **Subsidiaries**;
2. any entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries**; and whose assets do not exceed 35% of the assets of the **Company**, prior to the **Company** acquiring **Management Control** of the **Subsidiary**; or
3. any entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries** and whose assets exceed 35% of the assets of the Company,

prior to the Company acquiring **Management Control** of the **Subsidiary** but only for a period of 90 days subsequent to the **Company** acquiring **Management Control** of the **Subsidiary.**

P. **Wrongful Act** means
1. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act, including but not limited to an **Employment Practices Violation**, by an **Individual Insured** in his or her capacity as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive, Employee,** or **Outside Entity Executive**; or
2. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company** in connection with a **Securities Claim.**

## III. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A. alleging, arising out of, based upon or attributable to:
1. gaining of any profit, remuneration or advantage to which the **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding establishes the gaining of such profit, remuneration or advantage; or
2. committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed.

For purposes of determining the applicability of this Exclusion, (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer or chief financial officer shall be imputed to such **Company;**

B. alleging, arising out of, based upon or attributable to the circumstances alleged or the same **Wrongful Act** or **Related Wrongful Act** alleged or contained in any claim or demand which has been reported, or to any circumstances, **Wrongful Act** or **Related Wrongful Act** of which notice has been given, under any prior insurer's policy or policy of which this **Coverage Section** is a renewal or replacement or which it may succeed in time;

C. alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against, any **Insured** on or prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations, or the alleging of any **Wrongful Act** which is the same as or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit or proceeding or in the underlying demand, order, decree or judgment;

D. alleging, arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed by an **Individual Insured** in his or her capacity as an **Outside Entity Executive** prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations if any **Insured**, as of such **Continuity Date**, knew or could have

reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **Coverage Section**;

E. alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity other than as an **Executive** or **Employee** of a **Company** or as an **Outside Entity Executive** of an **Outside Entity**;

F. which is brought by or on behalf of any **Insured** in any capacity, or by any entity that owns more than 50% of the outstanding securities of the **Named Insured**. This Exclusion shall not apply to:

    1. any **Claim** brought or maintained derivatively on behalf of a **Company** by one or more securityholders of such **Company**; provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by any **Individual Insured**, other than assistance, for which 18 U.S.C. 1514A(a) (the Sarbanes-Oxley Act of 2002), or any similar "whistleblower" protection provision of any applicable federal, state, local or foreign securities law, affords protection to such **Individual Insured**;

    2. any employment **Claim** brought or maintained by or on behalf of an **Individual Insured**;

    3. any **Claim** brought or maintained by an **Individual Insured** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this **Coverage Section**;

    4. any **Claim** brought or maintained against an **Individual Insured** by a bankruptcy or insolvency trustee, examiner, receiver, any assignee of such trustee, examiner or receiver, or any creditors' committee, that has been appointed to take control of, supervise, manage or liquidate the **Named Insured**;

    5. any **Claim** brought or maintained by an **Individual Insured** if such **Individual Insured** has not served in the capacity of an **Individual Insured** within any of the three (3) years immediately preceding the date the **Claim** was made, and such **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation, or intervention of any other **Insured**;

    6. any **Claim** brought and maintained outside the United States of America or any of its territories or possessions, Canada or any other common law country (including any territories thereof); or

    7. any **Claim** brought or maintained by an **Employee** of a **Company**; provided such **Employee** is not and has never been an **Executive** of any **Company**;

G. for bodily injury, personal injury, emotional distress, mental anguish, sickness, disease or death of any person, or damage to, loss of use or destruction of any data or tangible property. This Exclusion shall not apply to a **Securities Claim**;

H. for any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**. Other than for expenses (including, but not limited to, legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants,** this Exclusion shall not apply to:

    A. a **Claim** under Coverage A of this **Coverage Section;** or
    B. **Loss** in connection with a **Securities Claim**;

I.  for any actual or alleged violations of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any workers' compensation, unemployment compensation, unemployment insurance, retirement benefits, social security benefits, disability benefits, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto, or any similar federal, state, local or foreign statutory law or common law. This Exclusion shall not apply to a **Securities Claim**;

J.  The **Insurer** shall not be liable to make any payment for any **Investigation Costs** in connection with any **Derivative Demand** under Coverage D:

1.  alleging, arising out of, based upon or attributable to any fact, circumstance, situation, transaction, event or **Wrongful Act** which has been reported under any policy of which this **Coverage Section** is a renewal or replacement or which it may succeed in time;

2.  alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against, any **Insured** on or prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations, or involving any **Derivative Demand** which is the same or related to that at issue in any pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment;

**IV. Limit of Liability**

The following provisions shall apply in addition to the provisions of Section IV. Limit of Liability of the General Terms and Conditions:

A.  Subject to the Policy Aggregate Limit of Liability set forth in Item 3 of the General Declarations, the **Coverage Section** Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall be the maximum aggregate limit of the **Insurer's** liability for all **Loss** under this **Coverage Section.** Upon exhaustion of the Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations, or the Policy Aggregate Limit of Liability in Item 3 of the General Declarations, the **Insurer's** obligations under this **Coverage Section** shall be deemed completely fulfilled and extinguished.

B.  The maximum limit of the **Insurer's** liability for all **Investigation Costs** incurred in response to **Derivative Demands** made during the **Policy Period**, in the aggregate, shall be the **Derivative Demand Investigation** Sub-Limit of Liability set forth in Item 3(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations. The **Derivative Demand Investigation** Sub-Limit of Liability shall be the maximum limit of the **Insurer** under this **Coverage Section** for all **Investigation Costs** regardless of the number of **Derivative Demands** made during the **Policy Period** or the number of **Executives** subject to such **Derivative Demands** and shall be part of, and not in addition to, the **Coverage Section** Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations which is also part of and not in addition to the Policy Aggregate Policy Limit of Liability set forth in Item 3 of the General Declarations.

**V. Retentions**

The following provisions shall apply in addition to the provisions of Section V. Retentions of the General Terms and Conditions:

A. The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations. The Retention shall be borne by the **Insureds** and shall remain uninsured, with regard to:

   1. all **Loss** for which the **Company** is required or permitted to provide indemnification to an **Individual Insured**; and
   2. **Loss** of a **Company**.

B. A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

C. The Retention set forth in Item 4(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Claim** under Coverage A of this **Coverage Section**. The Retention set forth in Item 4(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Claim** other than a **Securities Claim** under Coverage B of this **Coverage Section**. The Retention set forth in Item 4(c) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Securities Claim** under Coverage B or Coverage C of this **Coverage Section**. The Retention set forth in Item 4(d) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Derivative Demand** under Coverage D of this **Coverage Section**.

D. The Retention applicable to Coverage B shall apply to **Indemnifiable Loss**, whether or not actual indemnification is made, unless such indemnification is not made by a **Company** solely by reason of its **Financial Insolvency**. A **Company**'s certificate of incorporation, charter or other organization documents, including by-laws and resolutions, shall be deemed to require indemnification and advancement to an **Individual Insured** to the fullest extent permitted by law. In the event a **Company** is unable to pay the applicable Retention due to **Financial Insolvency**, then the **Insurer** shall advance payment for **Loss** within the applicable Retention. The **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from such **Company** pursuant to Section VI.B. of this **Coverage Section** and Section X. Subrogation of the General Terms and Conditions.

**VI. Defense Costs, Defense Counsel, Settlements & Judgments**

A. Defense

   The **Insurer** does not assume any duty to defend a **Claim**. The **Insureds** shall defend and contest any **Claim** made against them. An **Insured** shall not retain defense counsel or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. An **Insured** may select a defense counsel different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest and only with the express prior written consent of the **Insurer**.

B. Advancement

EF DO 020 0116                              9 of 12

The **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** prior to final disposition of the **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the Terms and Conditions of this **Coverage Section** to payment of such **Loss**.

C. Cooperation

The **Insurer** shall have the right to associate fully and effectively with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insurer**'s judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

D. Prior Written Consent

The **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** or **Investigation Costs** without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments, **Defense Costs** and **Investigation Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **Coverage Section**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **Coverage Section**. In addition, the **Insured** shall not take any action which prejudices the **Insurer**'s rights under this **Coverage Section.**

**VII. Other Insurance**

Such insurance as is provided by this **Coverage Section** shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over any applicable Limit of Liability for this policy or any **Coverage Section**. This policy specifically shall be excess of any other policy pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. For any **Claim** involving an **Outside Entity Executive**, this policy shall be specifically excess of any indemnification by the **Outside Entity** and any insurance coverage afforded to any such **Outside Entity Executive** or **Outside Entity.**

**VIII. Allocation**

If both **Loss** covered under this **Coverage Section** and loss not covered under this **Coverage Section** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters and/or includes both covered and non-covered parties, then amounts incurred by the **Insured** on account of such **Claim** shall be allocated between covered **Loss** and non-covered loss based on the relative legal liability and financial exposure of the **Insureds**

to covered and non-covered matters and/or based on the relative legal and financial exposure of the covered and non-covered parties. The **Insureds** and **Insurer** agree to use their best efforts to determine a fair and proper allocation.

If the **Insureds** and the **Insurer** cannot agree on an allocation of covered **Loss** and non-covered loss:

A. the **Insurer** shall pay the amount of **Loss** that the **Insurer** and **Insureds** agree is not in dispute until a different allocation is negotiated, arbitrated, or judicially determined;

B. no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

C. the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators.

### IX. Coverage under Coverage D

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **Coverage Section** for **Investigation Costs** not greater than 90 days after the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and such decision has been communicated to the security holders who made the demand upon the **Company**.

Nothing in this **Coverage Section**, including Coverage D, shall be construed to afford coverage for any **Claim** brought by the **Company** against one or more of its own **Executives**, other than **Investigation Costs** incurred in a covered **Derivative Demand** or as otherwise provided under Section III.F. of this **Coverage Section**.

### X. Order of Payments

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available Limits of Liability applicable to this **Coverage Section**, (including by virtue of the depletion of the Policy Aggregate Limit of Liability), then the **Insurer** shall:

A. first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**;

B. then pay such **Loss** for which coverage is provided under Coverage B of this **Coverage Section**; and

C. then pay such other **Loss** for which coverage is provided under this policy.

Upon the written request of the **Named Insured**, the **Insurer** shall either pay or withhold payment for **Loss** otherwise payable under Coverages B, C, or D. In the event that the **Insurer** withholds payment as requested by the **Named Insured**, then the **Insurer** shall at any time in the future, at the request of the **Named Insured**, release such **Loss** payment to a **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of any **Claim** under Coverage A of this **Coverage Section**. The **Insurer**'s liability with respect to any payments of **Loss** withheld shall not be increased, and shall not include any interest, as a result of such withholding.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **Coverage Section** pursuant to this Section X.

**ENDORSEMENT NUMBER**    1
**NAMED INSURED**    Celsius Network, Inc.
**POLICY NUMBER**    EFI1203088-00
**EFFECTIVE DATE**    May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐    Directors & Officers and Corporate Securities Liability Coverage Section
☒    Private Company Management Liability Coverage Section
☐    Investment Adviser Professional Liability Coverage Section
☐    Investment Fund Coverage Section
☐    Insurance Company Professional Liability Coverage Section
☐    Bankers Professional Liability Coverage Section
☐    Employment Practices Liability Coverage Section
☐    Fiduciary Liability Coverage Section

# PRIOR ACTS EXCLUSION

The coverage afforded by this policy shall not apply to any **Claims** based upon, arising out of, attributable to, or alleging any **Wrongful Act** committed or alleged to have been committed

- Solely as regards "Coverage A: Individual Insurance Coverage": **None**

- As regards all other coverage otherwise provided by this Policy: **04/24/2020**

All other terms, conditions and limitations of this Policy shall remain unchanged.

CG 008 0715           Page **1** of **1**

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 2 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐ Directors & Officers and Corporate Securities Liability Coverage Section
☒ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# TCPA EXCLUSION

In consideration of the Premium charged, it is agreed that this Policy does not apply to any **Loss** or **Claim** based upon, arising out of or attributable to any actual or alleged violation of the Telephone Consumer Protection Act of 1991 or any similar foreign or state law restricting telemarketing.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CG 044 0416                    Page **1** of **1**

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 3 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# CYBER AND DATA EXCLUSION

In consideration of the Premium charged, it is agreed that:

1. Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any **Loss** arising out of:

   - a **Cyber Incident**;

   - a **Cyber Act**; or

   - a breach of **Data Protection Law** by the **Insured**, or parties acting for the **Insured**, involving access to, processing of, use of or operation of any **Computer System** or **Data**.

### Definitions

2. **Computer System** means any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility, owned or operated by the Insured or any other party.

3. **Cyber Act** means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or

hoax thereof involving access to, processing of, use of or operation of any **Computer System**.

4.    **Cyber Incident** means:

    4.1    any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any **Computer System**; or

    4.2    any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any **Computer System**.

5.    **Data** means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a **Computer System**.

6.    **Data Protection Law** means all applicable data protection and privacy legislation, regulations in any country, province, state, territory or jurisdiction which governs the use, confidentiality, integrity, security and protection of personal data, and any guidance or codes of practice issued by any data protection regulator or authority from time to time (all as amended, updated or re-enacted from time to time).

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NUMBER**    4
**NAMED INSURED**    Celsius Network, Inc.
**POLICY NUMBER**    EFI1203088-00
**EFFECTIVE DATE**    May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐ Directors & Officers and Corporate Securities Liability Coverage Section
☒ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# EMPLOYMENT PRACTICES LIABILITY EXCLUSION

In consideration of the premium charged and irrespective of anything contained in this Policy to the contrary there shall be no coverage under the **Private Company Management Liability Coverage Section** for any **Employment Practice Claim** arising from an **Employment Practice Wrongful Act**. It is further agreed that for the purpose of this endorsement **Employment Practice Claim** and **Employment Practice Wrongful Act** shall be defined as follows:

**"Employment Practices Claim"** means any **Claim** brought by or on behalf of an **Employee**, an applicant for employment with the **Company**, or an **Independent Contractor** that is:

**(1)** a written demand for monetary or non-monetary relief (including, as example, a written demand for reinstatement of employment), including any arbitration or mediation that is commenced by a written request or demand for such proceeding, or a written request to waive or toll a statute of limitation;

**(2)** a civil judicial proceeding seeking monetary or non-monetary relief, including any appeal therefrom;

**(3)** a formal administrative or regulatory proceeding (including a proceeding brought by, on behalf of or before the Equal Employment Opportunity Commission (EEOC) or similar federal, state or local governmental agencies, including any appeal therefrom.

**"Employment Practices Claim"** also means an audit conducted by the United States of America Office of Federal Contract Compliance Programs (OFCCP).

An **Employment Practices Claim** shall be deemed to have been first made at the

earliest date of receipt by the **Company, Insured Person** or their agent of a written demand, notice of violation or charges or service of summons, subpoena, order to show cause or similar document commencing an investigation, lawsuit or proceeding against such **Insured Person** or the **Company**.

**"Employment Practices Wrongful Act"** means any actual or alleged:

 **(1)** wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

**(2)** sexual or other workplace harassment, including quid pro quo and hostile work environment;

**(3)** employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

**(4) Retaliation**;

**(5)** breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

**(6)** violation of the Family and Medical Leave Act.

**Employment Practices Wrongful Act** shall also mean the following, but only when alleged in addition to or as part of any **Employment Practices Wrongful Act** described above:

**(a)** employment-related wrongful infliction of emotional distress;

**(b)** failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

**(c**) negligent retention, supervision, hiring or training; or

**(d)** employment-related invasion of privacy, defamation, or misrepresentation.

It is further agreed that **"Retaliation"** as used in this endorsement shall mean:

**"Retaliation"** means adverse treatment of an **Employee** or **Independent Contractor** based upon such person:

**(1)** exercising any rights under law, including, without limitation, rights under any workers compensation laws, the Family and Medical Leave Act, **ERISA**, or the Americans with Disabilities Act;

CM 044 1216                          Page **2** of **3**

(2) refusing to violate any law;

(3) assisting, testifying, or cooperating with a proceeding or investigation regarding alleged violations of law by any **Insured**; or

(4) disclosing or threatening to disclose alleged violations of law to a superior or to any governmental agency;

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NUMBER**     5
**NAMED INSURED**     Celsius Network, Inc.
**POLICY NUMBER**     EFI1203088-00
**EFFECTIVE DATE**     May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

- ☐ Directors & Officers and Corporate Securities Liability Coverage Section
- ☒ Private Company Management Liability Coverage Section
- ☐ Investment Adviser Professional Liability Coverage Section
- ☐ Investment Fund Coverage Section
- ☐ Insurance Company Professional Liability Coverage Section
- ☐ Bankers Professional Liability Coverage Section
- ☐ Employment Practices Liability Coverage Section
- ☐ Fiduciary Liability Coverage Section

# THEFT OR LOSS OF CRYPTO CURRENCY EXCLUSION

In consideration of the premium charged, it is agreed that Section III, Exclusions, of the Private Company Management Liability Coverage Section is amended by the addition of the following:

The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** alleging, arising out of, based upon, in consequence of or attributable to any theft, appropriation, misappropriation, conversion, loss, or disappearance of any crypto currency, crypto token or coin, digital token or coin, utility token or coin, or similar digital asset

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 6 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

- ☐ Directors & Officers and Corporate Securities Liability Coverage Section
- ☐ Private Company Management Liability Coverage Section
- ☐ Investment Adviser Professional Liability Coverage Section
- ☐ Investment Fund Coverage Section
- ☐ Insurance Company Professional Liability Coverage Section
- ☐ Bankers Professional Liability Coverage Section
- ☐ Employment Practices Liability Coverage Section
- ☐ Fiduciary Liability Coverage Section

# <u>SPLIT CONTINUITY DATE</u>

Item 5. of the applicable **Coverage Section** DECLARATIONS as indicated by above is deleted in its entirety and replaced with:

As regards the first $1,000,000 of limit:

- Solely as regards "Coverage A: Individual Insurance Coverage": **03/22/2018**

- As regards all other coverage otherwise provided by this Policy: **04/24/2020**

As regards the $500,000 x $1,000,000:

- **05/30/2021**

All other terms, conditions and limitations of this Policy shall remain unchanged.

Page **1** of **1**

CM 097 0620

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 7 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## CELSIUS NETWORK INITIAL COIN OFFERING EXCLUSION

In consideration of the premium charged, it is understood and agreed that Section III, Exclusions, is amended by the addition of the following:

The **Insurer** shall not be liable to pay any **Loss** in connection with any Claim alleging, arising out of, based upon, in consequence of, or attributable to any of the following:

1. any initial coin offering(s )("ICO") or follow-on coin or token offering, including but not limited to any offering of the "CEL Token," executed by the **Insured**, whether such ICO is offered to the general public or other any other investor;
2. any matter involving (1) above, brought by or on behalf of, or instigated by or continued with the assistance, solicitation, participation or intervention of any State or Federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental orself-regulatory entity;

Provided, however, that this exclusion shall not apply to an action brought against the **Company** or any **Individual Insured** by a shareholder of the **Company** who:

   a) possesses an ownership in the **Company** that is not in the form of crypto currency, crypto token or coin, digital token or coin, or utility token or coin;
   b) did not acquire an ownership interest in the **Company** in an initial coin offering ("ICO") or any exchange where any crypto currency, crypto token or coin, digital token or coin, or utility token or coin, are traded; and
   c) did not acquire an ownership interest in the **Company** through any digital asset, utility coin, digital investment contract, or SAFT.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Page **1** of **1**

CM 098 0620

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 8 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

- [ ] Directors & Officers and Corporate Securities Liability Coverage Section
- [x] Private Company Management Liability Coverage Section
- [ ] Investment Adviser Professional Liability Coverage Section
- [ ] Investment Fund Coverage Section
- [ ] Insurance Company Professional Liability Coverage Section
- [ ] Bankers Professional Liability Coverage Section
- [ ] Employment Practices Liability Coverage Section
- [ ] Fiduciary Liability Coverage Section

## AMEND COOPERATION CLAUSE ENDORSEMENT

In consideration of the premium charged, it is agreed that Section VI, "Defense Costs, Defense Counsel, Settlements & Judgments," is amended by adding the following to the end of paragraph C:

The failure of any **Individual Insured** to give the **Insurer** cooperation and information as required in the preceding paragraph shall not impair the rights of any other **Individual Insured** under this **Coverage Section**.

All other terms and conditions remain unchanged.

CM 041 1016                    Page **1** of **1**

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 9 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# PROFESSIONAL SERVICES E&O EXCLUSION

The **Insurer** shall not be liable to pay any **Loss** from any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **Coverage Section**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CD 002 0815                     Page **1** of **1**

**ENDORSEMENT NUMBER**       10
**NAMED INSURED**           Celsius Network, Inc.
**POLICY NUMBER**           EFI1203088-00
**EFFECTIVE DATE**          May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒    Directors & Officers and Corporate Securities Liability Coverage Section
☐    Private Company Management Liability Coverage Section
☐    Investment Adviser Professional Liability Coverage Section
☐    Investment Fund Coverage Section
☐    Insurance Company Professional Liability Coverage Section
☐    Bankers Professional Liability Coverage Section
☐    Employment Practices Liability Coverage Section
☐    Fiduciary Liability Coverage Section

# SECURITIES EXCLUSION

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.  the public offer, sale, solicitation, or distribution of securities of a **Company** or an **Outside Entity**; or

2.  the actual or alleged violation of any federal, state, local or provincial statute relating to securities, including but not limited to the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder;

provided, however, this exclusion will not apply to: i) any offer, purchase or sale of securities of a **Company**, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction"); or ii) any **Claim** made by a security holder of a **Company** for the failure of such **Company** to undertake or complete a public offering or sale of securities of such **Company**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Page 1 of 1

CD 059 0721

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 11 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | February 7, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐   Directors & Officers and Corporate Securities Liability Coverage Section
☒   Private Company Management Liability Coverage Section
☐   Investment Adviser Professional Liability Coverage Section
☐   Investment Fund Coverage Section
☐   Insurance Company Professional Liability Coverage Section
☐   Bankers Professional Liability Coverage Section
☐   Employment Practices Liability Coverage Section
☐   Fiduciary Liability Coverage Section

## AMENDED NAMED INSURED ADDRESS

The **Named Insured** Address shown in Item 1. **NAMED INSURED** of the General Declarations is amended to read:

121 River Street, Suite PH05
Hoboken, NJ 07030

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NUMBER**    12
**NAMED INSURED**    Celsius Network, Inc.
**POLICY NUMBER**    EFI1203088-00
**EFFECTIVE DATE**    May 30, 2022

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒    Directors & Officers and Corporate Securities Liability Coverage Section
☐    Private Company Management Liability Coverage Section
☐    Investment Adviser Professional Liability Coverage Section
☐    Investment Fund Coverage Section
☐    Insurance Company Professional Liability Coverage Section
☐    Bankers Professional Liability Coverage Section
☐    Employment Practices Liability Coverage Section
☐    Fiduciary Liability Coverage Section

## AMENDED POLICY PERIOD

In consideration of the additional premium of $12,164 charged, it is understood and agreed that Item 2. **POLICY PERIOD** of the General Declarations, and the applicable **Coverage Section** Declarations as indicated by above, is amended to read:

2.    **POLICY PERIOD**:    Inception:    May 30, 2021
                                Expiration:    June 15, 2022

The **Policy Period** incepts and expires as of 12:01 A.M. at the Named Insured Address.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CG 019 0715                Page **1** of **1**

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 13 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | June 15, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

- ☒ Directors & Officers and Corporate Securities Liability Coverage Section
- ☐ Private Company Management Liability Coverage Section
- ☐ Investment Adviser Professional Liability Coverage Section
- ☐ Investment Fund Coverage Section
- ☐ Insurance Company Professional Liability Coverage Section
- ☐ Bankers Professional Liability Coverage Section
- ☐ Employment Practices Liability Coverage Section
- ☐ Fiduciary Liability Coverage Section

## **AMENDED POLICY PERIOD**

In consideration of the additional premium of $600,000 charged, it is understood and agreed that Item 2. **POLICY PERIOD** of the General Declarations, and the applicable **Coverage Section** Declarations as indicated by above, is amended to read:

2.  **POLICY PERIOD**:   Inception:   May 30, 2021
                          Expiration:  June 15, 2023

The **Policy Period** incepts and expires as of 12:01 A.M. at the Named Insured Address.

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 14 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | June 15, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒     Directors & Officers and Corporate Securities Liability Coverage Section
☐     Private Company Management Liability Coverage Section
☐     Investment Adviser Professional Liability Coverage Section
☐     Investment Fund Coverage Section
☐     Insurance Company Professional Liability Coverage Section
☐     Bankers Professional Liability Coverage Section
☐     Employment Practices Liability Coverage Section
☐     Fiduciary Liability Coverage Section

# <u>AMEND DECLARATION PAGE – ITEM 4</u>

In consideration of the Premium charged, it is understood and agreed that:

Item 4. of the Declarations is deleted in its entirety and replaced with the following:

4.    RETENTIONS

| | |
|---|---|
| (a) Each **Claim** under Coverage A: | $0 |
| (b) Each **Claim** other than a **Securities Claim** under Coverage B: | $2,500,000 |
| (c) Each **Securities Claim** under Coverage B or C: | $2,500,000 |
| (d) Each **Derivative Demand** under Coverage D: | $0 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 15 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | July 22, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# NOTICE TO OTHERS ENDORSEMENT – SPECIFIC PARTY

If the **Insurer** cancels, non-renews, or materially modifies the Policy by notice to the **Named Insured** for any reason other than nonpayment of premium, it will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as it determines, to the persons or organizations listed in the schedule set out below (the "Schedule"). The **Named Insured** or its representative must provide the **Insurer** with both the physical and e-mail address of such persons or organizations, and it will endeavor to utilize such e-mail address or physical address that is provided to it on the Schedule.

The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation, non-renewal, or material modification of coverage. The **Insurer** has no legal obligation of any kind to any such person(s) or organization(s). The **Insurer's** failure to provide notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon the **Insurer**, its agents, or its representatives, nor will it extend any Policy cancellation date, nor negate any cancellation of the Policy.

The **Insurer** is not responsible for verifying any information provided to it in any Schedule, nor is it responsible for any incorrect information that the **Named Insured** or its representative provide to it.

The **Insurer** may arrange with the **Named Insured's** representative to send such notice in the event of any such cancellation.

The **Named Insured** will cooperate with the **Insurer** in providing, or in causing its representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

CG 122 0722                    Page **1** of **2**

This endorsement does not apply if the **Named Insured** cancels the Policy.

### SCHEDULE

Office of the United States Trustee
Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY   10014

Email: USTPRegion02.NYECF@UST.DOJ.GOV

All other terms, conditions and limitations of this Policy shall remain unchanged.

CG 122 0722                           Page **2** of **2**

**ENDORSEMENT NUMBER**    16
**NAMED INSURED**    Celsius Network, Inc.
**POLICY NUMBER**    EFI1203088-00
**EFFECTIVE DATE**    06/15/2022

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## <u>AMENDED SECURITIES EXCLUSION – TO INCLUDE ADDITIONAL CARVEBACK FOR IPO ROADSHOW COVERAGE ENDORSEMENT</u>

Endorsement #10 "Securities Exclusion" is deleted in its entirety and replaced with the following:

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. the public offer, sale, solicitation, or distribution of securities of a **Company** or an **Outside Entity**; or

2. the actual or alleged violation of any federal, state, local or provincial statute relating to securities, including but not limited to the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder;

provided, however, this exclusion will not apply to: i) any offer, purchase or sale of securities of a **Company**, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction"); ii) any **Claim** made by a security holder of a **Company** for the failure of such **Company** to undertake or complete a public offering or sale of securities of such **Company**; or iii) any **Claim** relating to a **Company's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Company** and its **Executives** via any medium in connection with such public offering, but solely if such public offering does not occur;

All other terms, conditions and limitations of this Policy shall remain unchanged.

CD 065 0423          Page **1** of **1**