Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) |
| | ) Case No. 22-10964 (MG) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) **RE: Docket Nos. 2235, 2252,** |
| | ) **2314, 2333** |

**DEBTORS' OMNIBUS OBJECTION**
**TO THE COMMUNICATIONS MOTION AND AMENDED CLAIM MOTION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this omnibus objection (the "Objection") to (a) *Jason Amerson's Amended\* Motion for Entry of an Order (I) To Request an Injunction or Sanction on Inappropriate Communications Between Debtor and Unsecured Creditor, (II) Granting Related Relief* [Docket No. 2314] (the "Communications Motion") and (b) *Jason Amerson's Amended\* Motion for Entry of an Order*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*(I) To Request the Court to Investgate if The Debtor and/or Debtor's Legal Counsel Aided in Granting Financial Relief to an Unsecured Creditor After the February 9th, 2023 Proof of Claim Bar Date Occurred, (II) To Request the Court to Remedy Any Such Act Determined to be a Violation of Bankruptcy Law, (III) Granting Related Relief* [Docket No. 2333] (the "Amended Claim Motion," and together with the Communications Motion, the "Motions").[2]  In support of this Objection, the Debtors state as follows.

**Preliminary Statement**

1. The Motions baselessly allege that the Debtors have provided an individual creditor, Simon Dixon, with heightened access and preferential treatment, thus enabling Mr. Dixon to exert undue influence over the Debtors to the detriment of other creditors.  In reality, Mr. Dixon is one of the Debtors' largest customers and he, through the company he owns, has executed non-disclosure agreements and has participated in the Debtors' sale process. The Debtors did revise Mr. Dixon's scheduled Claim, but this correction was the result of Mr. Dixon notifying the Debtors of an error in his account balance and after the Debtors investigated the matter and determined that there was a clear error resulting from the Debtors' systems removing "collateral" from Mr. Dixon's Earn account to support a loan that was applied for but was never funded to Mr. Dixon.

2. The Debtors object to the Motions because neither Motion states a cognizable basis for relief under the Bankruptcy Code.  Moreover, the Motions fundamentally misunderstand the

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief.* [Docket No. 1368] (the "Bar Date Order") or the *Order (I) Extending the Bar Dates for Submitting Proofs of Claim. (II) Approving Notice Thereof, and (III) Granting Related Relief* [Docket No. 1846] (the "Extended Bar Date Order"), as applicable.

Debtors' ability to freely communicate with all interested parties (including unsecured creditors), consensually resolve disputes, and amend the Debtors' Schedules to correct for errors.

## Argument

**I. The Communications Motion Fails To Allege that the Debtors Inappropriately Communicated with Mr. Dixon or Provided Preferential Treatment.**

3.      The Motions mischaracterize the nature of the Debtors' communications with Mr. Dixon as preferential and the result of heightened access.  *See, e.g.*, Communications Motion at 3; Amended Claim Motion at 4.  The Communications Motion implies that because Mr. Dixon may have certain personal interests regarding his company, BNK to the Future, which may differ from the Debtors or that of other creditors, the Debtors should be prohibited from communicating with Mr. Dixon.  *See* Communications Motion at 3.  The Communications Motion requests that the Bankruptcy Court bar the Debtors from communicating with unsecured creditors "without the express written consent and direct supervision" of the official committee of unsecured creditors (the "Committee") except for communications "which may support typical business activities." *Id.* at 5.  In the alternative, the Communications Motion requests that the Bankruptcy Court compel the Debtors to allow for equal access to all creditors.

4.      ***First***, the Communications Motion fails to allege facts that demonstrate Mr. Dixon's personal interests posed a conflict of interest for the Debtors.  ***Second***, the Communications Motion provides no basis for showing that Mr. Dixon received inappropriate or heighted accesses relative to that of other creditors.  The Debtors have frequently communicated with individual creditors throughout the course of these chapter 11 cases, and such communications are essential to the effective administration of these chapter 11 cases and driving to a consensual and value-maximizing outcome.  The ability to freely and directly communicate with interested parties allows the Debtors to seek input from the community, achieve favorable

3

outcomes, and, where appropriate, take action as a result of those communications. Furthermore, the Debtors provide opportunities for all creditors to directly communicate with them. As an example, the Debtors' case website, maintained by Stretto, the Debtors' Notice and Claims Agent, prominently displays a "Contact Us" tab, which invites all interested parties to contact the Debtors via telephone or email.

5. *Third*, the Communications Motion relies on section 1103 of the Bankruptcy Code, which describes the powers and duties of the Committee, as the statutory basis for limiting the Debtors' ability to directly communicate with creditors without the consent of the Committee. *See id.* at 3. The Communications Motion contends that creditor communications are limited to channels established and supervised by the Committee, as described on the "Committee FAQ" page, and that the Debtors having communications outside of these channels amounts to a "subversion of due process." *See* Communications Motion at 34. Nothing in section 1103 of the Bankruptcy Code, however, prevents the Debtors from communicating with individual creditors. The Communications Motion mischaracterizes the Committee's instructions—even a cursory review of the Committee FAQ page shows that the Committee acknowledges, and in certain cases recommends, creditors to contact the Debtors directly. *See Celsius Network LLC Committee* https://cases.ra.kroll.com/CelsiusCommittee/Home-Index (last visited May 10, 2023) (discussing account balances).

6. *Last*, the Communications Motion acknowledges that "Debtor's legal counsel holds the proper experience and resources to navigate the Debtors successfully though the bankruptcy process without unsolicited influence from potentially hostile Creditors." *See* Communications Motion at 5. Recognizing the Debtors' competency rebuts the argument that the Bankruptcy Court or the Committee are necessary to protect the Debtors from creditor influence—the Debtors are

fully capable of managing their affairs, including communicating with creditors, without succumbing to any undue influence.

7. For these reasons, the Communications Motion should be denied.

**II. The Amended Claim Motion Fails to Demonstrate that the Debtors Provided Mr. Dixon an Inappropriate Financial Benefit.**

8. The Amended Claim Motion argues that by revising Mr. Dixon's scheduled claim after the Bar Date on February 9, 2023, the Debtors acted without authorization and contrary to the Bar Date Order. *See* Amended Claim Motion at 4. The Amended Claim Motion misconstrues the Debtors' ability to amend their Schedules (and to amend or supplement any scheduled Claims).

9. On November 16, 2022, the Bankruptcy Court entered the Bar Date Order, which established the Bar Date and procedures for **creditors** to submit Proofs of Claims. The Amended Claim Motion argues that the Bar Date is also the date by which the Debtors can no longer revise any Claim amounts. Not so. ***First***, the Amended Claim Motion does not identify language in the Bar Date Order or elsewhere to support the argument that the Debtors lack the authority to revise scheduled Claims. To the contrary, the Bar Date Order and Extended Bar Date Order make clear that the Bar Date is the time by which a **creditor** "shall submit" its Proofs of Claim. *See* Bar Date Order ¶ 2; Extended Bar Date Order ¶ 2. Moreover, the Bar Date Order explicitly contemplates revisions to the Debtors' Schedules and requires that the Debtors give notice of any such amendment and the ability to submit a revised Proof of Claim by any Supplemental Bar Date as a result of such amendments to the holders of any affected claim. *See* Bar Date Order at Exhibit C. The Debtors have utilized these procedures throughout their chapter 11 cases. For example, on March 24, 2023, the Debtors amended their Schedules and established April 28, 2023 as a Supplemental Bar Date for any affected claims. *See Notice of Filing of Amended Global Notes,*

5

*Statement of Financial Affairs 3 and 4, and Schedule F* [Docket No. 2311]; *Notice of Amended Bar Date for Submission of Proofs of Claim* [Docket No. 2310].

10. **Second**, the Debtors' authority to amend their Schedules, which would include any scheduled Claims, has been expressly preserved during these proceedings. The *Amended Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* [Docket No. 2311] (the "Global Notes"), which are incorporated by reference into the Debtors' Schedules, acknowledges the possibility of "inadvertent errors or omissions" to the Schedules, and the Debtors' authority to amend or supplement "as may be necessary or appropriate." *See* Global Notes at 2. As a result, the Debtors have the authority to correct scheduled Claims where they do not accurately reflect the Debtors' Books and Records (not to mention the Debtors' ability to freely communicate with creditors). While the Amended Claim Motion suggests that correcting an individual creditor's scheduled Claim on the Debtors' own accord amounts to special treatment and an unauthorized financial recovery, the alternative scenario, where the Debtors are unable to correct for inadvertent error, is far more unjust to all creditors.

11. **Third**, the Amended Claim Motion alleges that Mr. Dixon's scheduled Claim was revised due to "special or elevated access" to Debtors' counsel, which allowed Mr. Dixon to "reach out directly for assistance to the Kirkland & Ellis." *See* Amended Claim Motion at 2. The Debtors ***only*** corrected Mr. Dixon's scheduled Claim because such scheduled Claim did not accurately reflect the amount of Mr. Dixon's prepetition Claim after appropriate investigation. Specifically, Mr. Dixon alerted the Debtors that approximately 289.17 BTC (valued at approximately $5.7 million as of the Petition Date) was missing from his account and not reflected in his scheduled Claim. The 289.17 BTC, which was to serve as collateral, was removed from Mr. Dixon's account

6

in connection with a loan application, which was submitted prior to the Pause.[3] As a result of the Pause, the loan was never funded. That is, the loan was never funded, and the collateral was erroneously not returned to Mr. Dixon's account. After conducting a full investigation, the Debtors discovered that the transferred BTC were not properly reflected in the Schedules and that Mr. Dixon's scheduled Claim was indeed understated by this amount. The Debtors corrected this error and confirmed that there were no other creditors in similar situations. This is precisely the "equitable" result that the Amended Claim Motion demands for all creditors: the Debtors were made aware of an inadvertent error in their Schedules and took corrective action after appropriate investigation.

12. For these reasons, the Amended Claim Motion should be denied.

*[Remainder of page intentionally left blank]*

---

[3] "Pause" refers to the pause on all withdrawals, swaps, and transfers of Tokens on the Celsius platform on June 12, 2022 (the "Pause").

| | |
|---|---|
| New York, New York<br>Dated:  May 10, 2023 | */s/  Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:             joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:             patrick.nash@kirkland.com<br>                       ross.kwasteniet@kirkland.com<br>                       chris.koenig@kirkland.com<br>                       dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |