**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
      sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
      gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO APPLICATION OF CONNOR NOLAN PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(B)(4) FOR ALLOWANCE AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION**

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively the "**Debtors**") files this objection to the *Application of Connor Nolan Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*and Payment of Professional Fees and Expenses Incurred in Making a Substantial Contribution* [Docket No. 2045] (the "**Application**")[2] and respectfully states as follows:

### Preliminary Statement

1.  Mr. Nolan is an employee of the Debtors. After Celsius paused withdrawals due to liquidity shortfalls, but shortly before the Debtors filed these chapter 11 cases, Mr. Nolan received a federal grand jury subpoena requiring him to produce documents and provide testimony about his work at Celsius. Mr. Nolan acknowledged the seriousness of the matter and engaged independent counsel—Wiggin & Dana LLP—to advise him during the pendency of the chapter 11 cases and protect his personal interests when acting as a witness for various investigations.

2.  On February 13, 2023, Mr. Nolan filed the Application requesting that the Court allow, and authorize the Debtors to pay, $207,641.48 in fees and expenses incurred after the Petition Date by Wiggin & Dana as administrative expenses in connection with its representation of Mr. Nolan as a witness in an adversary proceeding, two to four hour interviews with the Examiner and the Committee, and various investigations by law enforcement agencies. Mr. Nolan also seeks up to $100,000.00 in additional future legal fees incurred from the date the Application was filed until April 30, 2023, which time has now passed due to adjournment of the hearing on the Application.

3.  Mr. Nolan argues that his efforts as a witness provided a "substantial contribution" to the Debtors' estate, which warrants payment of his personal counsel's fees and expenses. Mr. Nolan has not submitted any declaration or other evidence in support of his Application.[3]

4.  Substantial contribution applications are granted sparingly, and only to those

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Application.

[3] Mr. Nolan's counsel sent redacted time records to the Committee's counsel, which cover through February 14, 2023. To the Committee's knowledge, it has not provided those time records to the Court.

applicants that have clearly demonstrated a benefit to the Debtors' estate as a whole. A party who is acting in its own self-interest, such as a participant who is seeking to protect its own rights in litigation, is generally not found to have made a "substantial contribution." To date, Mr. Nolan's efforts (and the participation of his counsel in those efforts) have provided investigators with facts regarding the prepetition operations of Celsius. Mr. Nolan's testimony has not resulted in any funds being paid or returned to the estate at this point. His in-court testimony was pursuant to a subpoena issued by Mr. Jason Stone, who the Debtors have accused of various causes of action. Mr. Nolan has not demonstrated how his effort (or the efforts of his counsel) have benefitted creditors as a whole, as opposed to protecting his personal legal interests.

5. Shortly after the Application was filed, the Debtors filed the Employee Counsel Motion (as defined below), which is being heard on the same day as the Application. The Employee Counsel Motion seeks Court authority to establish procedures to govern reimbursement of legal fees for certain current and former employees that cooperate in investigations of the Debtors. In the motion, the Debtors argue that it is a proper exercise of their business judgment to reimburse such expenses to the extent they benefit the estate by expediting the Debtors' progress in the chapter 11 cases and maximizing the value of the estate.

6. The Committee has negotiated the parameters of a proposed order with the Debtors that establishes procedures (the "**Employee Counsel Procedures**") to approve and pay the legal fees of certain qualified current and former employees (as defined in the proposed order for the Employee Counsel Procedures, "**Eligible Individuals**"). The Debtors and Committee must agree on the reimbursement of expenses of any Eligible Individual, and any repayment on behalf of an Eligible Individual will require that individual to agree to provide truthful testimony without the need for a subpoena. The Eligible Individual must submit certain documentation on the proposed

fees to be reimbursed, including invoices and information on the investigations such individual has participated in or may participate in, to the Debtors, the Committee, and the U.S. Trustee, and provide such parties an opportunity to object to reimbursement. Prior to the payment of a reimbursement request to an Eligible Individual, the Debtors are required to file a notice on the docket disclosing the proposed payment, supporting information, and any objection by either the Debtors, the Committee, or the U.S. Trustee to the payment of the fees. The Court would then have the ability to review the propriety of the proposed payment. Within fourteen days of filing any such notice, absent further order of the Court, the Debtors will then be authorized to reimburse the Eligible Individual in the amounts set forth in the notice filed on the docket. The Employee Counsel Procedures are designed to provide a negotiated and efficient framework for determining whether an Eligible Individual's contribution provided an actual and necessary benefit to the estate and proper oversight of that process.

7.      The Committee will seek to apply a similar standard of review to requests for legal expenses under the Employee Counsel Procedures as is described in this objection if such procedures are approved. The Committee reserves the right to reconsider the payment of Mr. Nolan's past and future legal expenses as part of those procedures and in light of whether Mr. Nolan demonstrates that his participation has provided a substantial contribution to the Debtors' estates or his contributions are actual and necessary to preserve the value of the estate.

**Background**

8.      On February 13, 2023, Mr. Nolan filed the Application seeking the payment of up to $307,641.48 as administrative expenses for his contribution to these Chapter 11 Cases, which is comprised of $207,641.48 incurred as of the date the Application was filed and an amount not to exceed $100,000 in connection with its future representation of Mr. Nolan through April 30,

2023. Mr. Nolan argues that participating in "numerous preparation sessions, a deposition, court proceedings, and interviews," such as with government investigators, the Court-appointed Examiner, and the Committee, constitute a substantial contribution to the Debtors' estate. Application ¶ 17. Specifically, Mr. Nolan references (i) producing documents related to a federal grand jury subpoena, (ii) interviews with representatives of the U.S. Attorneys' office, other government agencies, the Examiner, and the Committee, and (iii) in response to a subpoena from the defendants, providing testimony in a deposition and in the Debtors' adversary proceeding against defendants Stone and KeyFi (Case No. 22-01139). *Id.*

9.  Shortly thereafter, on February 28, 2023, the Debtors filed the *Motion Seeking Entry of an Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain Current and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-of-Pocket Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Related Relief* [Docket No. 2147] (the "**Employee Counsel Motion**"). The hearing on the Employee Counsel Motion has been adjourned until May 17, 2023, the same date as the hearing of this Application. *See* Docket No. 2520. The Committee objected to the Employee Counsel Motion asserting, among other things, that employees seeking reimbursement of attorneys' fees should file claims or applications for administrative expenses on account of a substantial contribution to the Debtors' estates. *See* Docket No 2227. Since then, the Debtors and the Committee have negotiated an agreed proposed order granting the Employee Counsel Motion.[4] The revised proposed order will include provisions that: (i) require the Committee to consent to any payment, (ii) require any eligible individual provide the U.S. Trustee and the Committee with

---

[4] The Debtors and Committee have reached an agreement in principal on a proposed order granting the Employee Counsel Motion which will be filed shortly after this Objection. To the extent any summary herein contradicts the terms of the filed proposed order, the terms of the filed proposed order control to the extent and in the form such order is entered by the Court.

detailed time records and the opportunity to object to a reimbursement request, (iii) reduce the proposed cap of total potential reimbursements for legal fees; and (iv) require the Debtors to file a notice on the docket before making any past reimbursement request, which will include the identity of the employee and the relevant counsel, a description of the participation by the employee, the proposed payment, and provide the Court with the opportunity to review the request and request additional information. The revised proposed order also requires the Committee and Court approval of any future reimbursement request and reduces the amount of monthly fees payable for future reimbursement requests.

10. If the Employee Counsel Motion is approved, Mr. Nolan could be considered an Eligible Individual that is permitted to submit a request to receive past and future reimbursement of Wiggin & Dana's fees and expenses as an administrative claim through the Employee Counsel Procedures. To determine whether Mr. Nolan's fees to Wiggin & Dana were "actual and necessary" to the estate, the Committee would consider the direct benefit to the estate, such as whether the testimony advanced the progress of the chapter 11 cases and would otherwise be unavailable or prohibitively expensive without the payment of such fees. The Committee would also review the details of each invoice and underlying time entry submitted by Wiggin & Dana to determine if the requested compensation and expenses were reasonable and necessary.

## Objection

### I. Mr. Nolan's Actions Do Not Qualify as "Substantial Contribution" under Section 503(b)(3)(D).

11. At this time, Mr. Nolan has not provided sufficient evidence to demonstrate that he has provided a substantial contribution that benefitted the Debtors' estate as a whole. Accordingly, he has not met the high burden required to receive payment as an administrative expense under section 503(b)(3)(D) of the Bankruptcy Code.

12. Section 503(b) provides:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(3) . . . the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) allows for reasonable compensation for an attorney of an entity whose expense is allowable under, among other things, section 503(b)(3)(D).

13. Courts have narrowly construed section 503(b)(3)(D). *Synergy Pharm., Inc.*, 621 B.R. at 609 ("[T]hese statutory provisions are to be narrowly construed . . . and that any recovery is subject to strict scrutiny by the court . . . .") (internal citation omitted); *In re Dana Corp.,* 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) ("The substantial contribution test is intended to promote meaningful creditor participation in the reorganization process, but not to encourage mushrooming administrative expenses.") (internal citation omitted). "To qualify for administrative priority status under section 503[(b)(3)(D)], the contribution must be (i) substantial, (ii) directly benefit the estate — and not merely a class of creditors or interest holders — and (iii) not duplicative of services performed by others." *Synergy Pharm., Inc.*, 621 B.R. at 609.

14. Creditors must clear a high burden to be entitled to a substantial contribution award because creditors and individuals "are presumed to act primarily in their own interests" and "[e]fforts undertaken by creditors solely to further their own self-interest are not compensable" under section 503(b)(3)(D). *See In re Westinghouse Elec. Co. LLC*, Case No. 17-10751 (MEW), 2019 Bankr. LEXIS 2981, at *37-38, 40 (Bankr. S.D.N.Y. Sept. 19, 2019) (citing *In re Dana Corp*,

390 B.R. at 108). "The burden of proof as to the substantial benefit rendered to the estate is on the applicant, and the entitlement to an award must be established by a preponderance of the evidence." *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989).

### 1. Mr. Nolan's Contributions Are Not Substantial.

15. For an individual's contribution to be considered substantial, the benefit received by the estate from such efforts must be more than an incidental benefit arising from activities the applicant has pursued in protecting his or her own interests. *In re Dana Corp.*, 390 B.R. at 108. "[C]ompensation under section 503 is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *Synergy Pharm., Inc.*, 621 B.R. at 609 (internal citations omitted).

16. Complying with discovery requests or providing fact testimony alone typically do not qualify as a substantial contribution. *See In re Summit Metals, Inc.*, 379 B.R. 40, 51-52 (Bankr. D. Del. 2007) (denying requested reimbursement under section 503(b)(3)(D) for applicant's voluntary assistance and cooperation in discovery, depositions, and criminal investigations); *see also In re Lease-A-Fleet, Inc.*, 148 B.R. 419, 427-28 (Bankr. E.D. Pa. 1992) (denying administrative expense claim for payments to non-operating debtors' employees in part because the "employees [were] needed only as gatherers of data and witnesses for trial to be conducted by their counsel.").

17. For instance, in *Summit Metals*, the applicant participated in the chapter 11 case, an adversary proceeding, and in several related proceedings (including a criminal proceeding) by testifying, meeting with interested parties, providing deposition testimony, reviewing and assembling files, and attending meetings with the Official Committee of Unsecured Creditors. *Summit Metals, Inc.*, 379 B.R. at 51. The applicant argued that its contribution warranted the payment of its fees and expenses as a substantial contribution to the estate. The Court disagreed

22-10964-mg    Doc 2616    Filed 05/10/23    Entered 05/10/23 15:49:40    Main Document
Pg 9 of 12

and found that, although helpful, the testimony and activities of the applicant failed to confer a direct benefit on the estate such as by increasing the assets of the estate or preventing assets from diminishing. *Id.* at 52. Moreover, the court found that the applicant's motivation for participating was due to his own economic self-interest, and any benefit to the estate was merely incidental to protecting that self-interest. *Id.* at 52. While the Court concluded that the applicant participated extensively, "extensive participation in a case, without more, is insufficient to compel compensation." *Id.* at 52 (internal citations omitted). The Court specifically remarked that "[v]irtually 'all litigation is dependent to some degree upon the testimony and, therefore, the time and effort, of lay witnesses. A witness subject to a court's subpoena power, who voluntarily furnishes evidence, is simply performing a civic duty.' Reimbursing a lay witness who provides testimony for the prevailing party would encourage lay witnesses to demand reimbursement from a debtor regardless of the substance or significance of the testimony, thereby adding an unwelcome incentive to the process." *See Summit Metals, Inc.*, 379 B.R. at 54 (citing *In re Gherman*, 105 B.R. 714, 717 (Bankr. S.D. Fla. 1989)).

18. Mr. Nolan argues that preparing for interviews, answering subpoenas, sitting for depositions, and testifying in court benefitted the estate and protected assets. Application ¶¶ 17, 30. However, these actions are not out of the ordinary for a failed institution when there are serious allegations of fraud and malfeasance. Certain of that testimony was also required by law. Moreover, Mr. Nolan is still an employee of the Company and is receiving a salary for his time and effort related to the investigations and chapter 11 cases. Although Mr. Nolan's assistance in discovery and criminal investigations may have helped with the fact-gathering process (and is appreciated), such actions were taken at least in part with his personal interests in mind, and to date no funds have been returned to the estate.

### 2. There Is Insufficient Evidence that Nolan's Alleged Contributions Have Yielded Tangible Results to the Estate.

19. Even if Mr. Nolan's actions were considered substantial, the contribution must provide tangible, clearly demonstrable benefits to the estate. *See Summit Metals, Inc.*, 379 B.R. at 53. The applicant must show a "causal connection between the service and the contribution." *In re Granite Partners, L.P.*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997). For example, the Bankruptcy Court for the District of Delaware held that a lienholder's negotiation of an additional $32 million in the DIP Facility's lienholder reserve was a substantial contribution because it allowed for the sale of substantially all of the Debtors' assets free and clear. *In re M & G USA Corp.*, 599 B.R. 256, 264 (Bankr. D. Del. 2019).

20. Although the Application contains alleged contributions made by Mr. Nolan, it does not draw a straight line from Mr. Nolan's actions to any direct benefit to the estate. Mr. Nolan does not offer any concrete examples or admissible evidence of tangible benefits to the estate directly caused by Mr. Nolan's contributions. *See* Application ¶ 20 (asserting that Mr. Nolan's cooperation will "help to expedite proceedings and thereby conserve considerable Debtor resources"); ¶ 22 (Mr. Nolan's "continued presence at Celsius has been critical to the company's ability to maximize value from its lending book and to assist in the recovery of assets for the benefit of Celsius users."); ¶ 32 ("Upon Mr. Nolan's efforts to provide accurate and complete answers to such questions, members of both committees were thankful for his insights and cooperation.").

21. Participating in discovery and conclusory statements regarding the benefit to the estate does not warrant a substantial contribution award without evidence that the services directly increased assets available for distribution. *See In re AMR Corp.*, Case No. 11-15463 (SHL), 2014 Bankr. LEXIS 3298 at *8 (Bankr. S.D.N.Y. Aug. 5, 2014) (denying an equity holder's request for a substantial contribution award, finding that the equity holder "'present[ed] nothing more than a

blanket assertion that his work made a substantial contribution . . .' [and] mere conclusory statements regarding the causation or provision of a substantial contribution are insufficient to establish that a substantial contribution was made," and "extensive participation alone is insufficient to justify an award"); *Synergy Pharm., Inc.*, 621 B.R. at 610 ("Services that warrant a substantial contribution award generally take the form of constructive contributions in key reorganizational aspects, when *but for* the role of the creditor, the movement towards final reorganization would have been substantially diminished.") (internal citations omitted).

22. While the Application does refer to the temporary restraining order issued by this Court that enjoined Defendants Stone and KeyFi from dissipating estate assets, the estate has not recovered any assets from that proceeding at this time, and the Application fails to show the necessary causal connection between the Court's order and Mr. Nolan's testimony. Moreover, Mr. Nolan's testimony and deposition in that proceeding was mandated by subpoena and not voluntarily offered as a contribution to the estate. Application at ¶ 17.

### Reservation of Rights

23. For the aforementioned reasons, the Court should deny the relief requested in the Application. The Committee reserves all rights related to any fees and expenses Mr. Nolan may seek under the relief requested in the Employee Counsel Motion and proposed Employee Counsel Procedures. However, if the Court does grant the Application, the Proposed Order (attached as Exhibit B to the Application) should be amended such that the Committee has the opportunity to review and object to the reasonableness of the proposed fees.

### Conclusion

24. WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court deny the relief requested in the Application.

Dated: May 10, 2023  
New York, New York

Respectfully submitted,

/s/ Aaron E. Colodny
**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
  sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
  gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*