WILLIAM K. HARRINGTON
United States Trustee
U.S. Department of Justice                          <u>**Hearing Date:**</u> June 28, 2023
Office of the United States Trustee                 <u>**Hearing Time:**</u> 10:00 a.m.
One Bowling Green
New York, NY 10004
Tel. (212) 510-0500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
In re                                            :  Chapter 11
                                                 :
CELSIUS NETWORK LLC., et al.,¹                   :  Case No. 22-10964 (MG)
                                                 :
                        Debtors.                 :  (Jointly Administered)
------------------------------------------------- x
```

### NOTICE OF HEARING FOR UNITED STATES TRUSTEE'S MOTION FOR ORDER DIRECTING DISGORGEMENT OF ALL ESTATE FUNDS PAID TO WILLIS TOWERS WATSON

**PLEASE TAKE NOTICE** that upon this Notice of Hearing, the United States Trustee for Region 2 (the "<u>United States Trustee</u>"), will move this Court before the Honorable Martin Glenn, Bankruptcy Judge, in the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 on **<u>June 28, 2023 at 10:00 a.m.</u>**, (the "<u>Hearing</u>") or as soon thereafter as counsel can be heard, for the United States Trustee's Motion for Order Directing Disgorgement of All Estate Funds Paid to Willis Towers Watson (the "<u>Motion</u>"). The original Motion is on file with the Clerk of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing will be held via Zoom for Government. Participants are required to register their appearance by 4:00 PM the day before the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Hearing by using the eCourtAppearance portal located on the Court's website, https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl, or by clicking the "eCourtAppearances" tab on Judge Glenn's page of the Court's website at, http://www.nysb.uscourts.gov/content/judge-martin-glenn.

Dated: New York, New York
        May 15, 2023

                                        Respectfully submitted,

                                        WILLIAM K. HARRINGTON
                                        UNITED STATES TRUSTEE, REGION 2

                            By:        /s/ Shara Claire Cornell
                                        Shara Claire Cornell
                                        Trial Attorney
                                        Office of the United States Trustee
                                        One Bowling Green
                                        New York, NY 10004
                                        Tel. (212) 510-0500

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
Office of the United States Trustee
One Bowling Green
New York, New York 10004
Telephone: (212) 510–0500
By:    Shara Cornell, Esq.
       Trial Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
In re                                                    :    Chapter 11
                                                         :
CELSIUS NETWORK LLC, *et al.*,[1]                        :    Case No. 22-10964 (MG)
                                                         :
                                                         :    Jointly Administered
                                       Debtors.          :
-------------------------------------------------------- x

### UNITED STATES TRUSTEE'S MOTION FOR ORDER DIRECTING DISGORGEMENT OF ALL ESTATE FUNDS PAID TO WILLIS TOWERS WATSON

**TO:    THE HONORABLE MARTIN GLENN,**
**       CHIEF UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"),

hereby respectfully moves the Court (the "Motion") for an order pursuant to title 11, United States

Code (the "Bankruptcy Code") §§ 327, 328, and 105(a), Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") 2014, 2016, and 2017, and Local Bankruptcy Rules 2014-1 and 2016-1

of the Southern District of New York (the "Local Bankruptcy Rules"), directing that all

compensation paid by or on behalf of Celsius Network LLC and its affiliated debtors ("Debtors")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

to or on behalf of Willis Towers Watson ("Willis Towers") be disgorged and to grant such other

and further relief as the Court may deem just and proper. In support thereof, the United States

Trustee respectfully alleges as follows:

## INTRODUCTION

The Debtors hired a financial advisory firm, Willis Towers, to "serve as restructuring

advisor" in these bankruptcy cases. Willis Towers is experienced in the bankruptcy area, and is

allegedly staffed with qualified professionals.[2] Each of the professionals – the Debtors' bankruptcy

counsel, Kirkland & Ellis US LLP, and Willis Towers – should have been aware that the integrity

of the bankruptcy system depends upon full disclosure by all debtors, creditors, and professionals.

As such, each knew that the Bankruptcy Code, Bankruptcy Rules, and the caselaw interpreting

them, impose specific and mandatory requirements governing the depth and breadth of retention

documents, including disclosures, that must be provided by professionals such as themselves –

which disclosures must continue to be evaluated and made throughout the pendency of the

bankruptcy proceeding.

As courts have observed on multiple occasions, the bankruptcy system is self-policing. It

is not the responsibility of the United States Trustee, the Court, or other interested parties to discern

---

[2] *See, e.g.*, Gartrell Declaration (defined below) at ¶ 7:

> During my tenure at [Willis Towers], I have worked closely with a range of companies undergoing financial restructurings to develop a variety of prepetition and postpetition compensation arrangements, including compensation plans and programs for senior executive and non-executive employees. Specifically, I have led or co-led the review and design of key employee incentive plans, key employee retention plans, and other similar plans in a number of chapter 11 cases, including: *In re Mallinckrodt plc*, No: 20-12522 (JTD) (Bankr. D. Del. Apr. 5, 2021); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Nov. 14, 2019); *In re Cloud Peak Energy Inc.*, No. 19-11047 (KG) (Bankr. D. Del. July 1, 2019); *In re FULLBEAUTY Brands Holdings Corp.*, No. 19-22185 (RDD) (Bankr. S.D.N.Y.*); In re Parker Drilling Co.*, No. 18-36958 (MI) (Bankr. S.D. Tex.); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y.); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex.); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del.); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. June 13, 2018).

gaps in the disclosures provided, or to ferret out every last piece of information that may not have been disclosed completely. In essence, the bankruptcy system relies upon the integrity of professionals appearing in bankruptcy cases to make forthright, complete, and candid disclosures to fulfill the spirit of the Bankruptcy Code, even where the professionals know that making these disclosures may result in a court's determination that they may not be retained in the case. This determination is for the courts to decide, and not the professionals themselves.

Willis Towers is an unretained professional that has received at least $375,000 in unauthorized post-petition transfers from the Debtors for restructuring services. Under the Bankruptcy Code's plain language, no provision allows or authorizes compensation awards to professionals of the debtors from estate funds, unless they are employed and retained by the Court. *Lamie v. U.S. Tr.,* 540 U.S. 526, 124 S. Ct. 1023, 1025, 157 L. Ed. 2d 1024 (2004).

The Bankruptcy Rules and Bankruptcy Code further require that in order to be retained and subsequently paid by the bankruptcy estate, such professionals must submit to certain requirements, including, but not limited to, declaring their disinterestedness, performing conflict checks, and providing contemporaneous and accurate time entries. Even though Willis Towers was hired by the Debtors a mere ten days in advance of this bankruptcy filing and was clearly engaged for the purposes of furthering the Debtors' restructuring efforts, Willis Towers has failed to perform any of the prerequisites for retention and payment.

In order to more fully investigate the relationship and payments made by or on behalf of the Debtors in these bankruptcy cases, the United States Trustee requested, and the Court granted, the Rule 2004 Application. According to the documents received by the United States Trustee pursuant to the Rule 2004 Order, it became clear that Willis Towers (1) was retained by the Debtors as a restructuring advisor on July 3, 2023 (countersigned on July 5, 2023), (2) had billed the

3

Debtors' estates $525,000, (3) had received at least $375,000 and (4) had not performed any connection or conflict check. The United States Trustee then requested, and the Court entered, an Order to Show Cause why Willis Towers Should not be retained in these bankruptcy cases. To date, no such retention documents have been filed.

The bankruptcy system must be protected from failures by the very professionals upon whose integrity the Court and other parties rely. Therefore, in light of the facts presented in this Motion, the United States Trustee respectfully requests that the court direct Willis Towers to (a) provide an accounting of all compensation received in these bankruptcy cases and (b) to disgorge all compensation received by Willis Towers from the Debtors' estates.

## FACTS

1.      On July 13, 2022 ("Petition Date"), the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.  ECF Dkt. No. 1.

2.      On October 11, 2022, the Debtors filed their Motion for Entry of Order (I) Approving the Debtors' Key Employee Retention Plan (the "KERP") and (II) Granting Related Relief ("Bonus Motion").  ECF Dkt. No. 1021.  In tandem, the Debtors filed the Declaration of Josephine Gartrell in Support of the Bonus Motion ("Gartrell Declaration").  ECF Dkt. No. 1023. Ms. Gartrell is a Senior Director at Willis Towers.  *Id*. at ¶ 1, at 1.[3]

3.      The Gartrell Declaration states that the Debtors "engaged Willis Towers to provide certain compensation consulting services."  *Id*.

---

[3] On March 28, 2023, the Debtors filed their Key Employee Incentive Program Motion (the "KEIP Motion"). ECF Dkt. No. 2336. In support of the KEIP Motion, the Debtors filed the Declaration of Allison Hoeinghaus (the "Hoeinhgaus Declaration"). ECF Dkt. No. 2337. The Hoeinhgaus Declaration was written by Allison Hoeinhaus in her capacity as a managing director at Alvarez and Marsal, the Debtors' retained financial advisors. *See* KEIP Motion at ¶ 1; *see also* Order Authorizing Debtors to Employ and Retain Alvarez and Marsal North America, LLC as Financial Advisor to the Debtors and Debtors in Possession Effective as of July 13, 2022 [ECF Dkt. No. 842].

4

4.     The Gartrell Declaration describes Willis Towers as:

an international professional services firm offering a wide variety of services to public and private clients, including expert analysis of executive and management compensation. [Willis Towers] designs and delivers solutions that manage risk, optimize benefits, cultivate talent, and expand the power of capital to protect and strengthen institutions and individuals. [Willis Towers] focuses on two key business segments: health, wealth, and career & risk and broking.

Gartrell Declaration at ¶ 5, at 3.

5.     The Gartrell Declaration does not state when Willis Towers was engaged or how fees are calculated. *See* Declaration of Shara Cornell ("Cornell Decl.") at ¶ 5.

6.     The Gartrell Declaration does not attach its engagement letter with the Debtors. *Id.*

7.     The Gartrell Declaration does not state the scope of services provided by Willis Towers. *Id.*

8.     The Gartrell Declaration does not state that any conflict checks were performed. *Id.*

9.     Bank statements provided to the United States Trustee pursuant to the Rule 2004 Order in support of the Debtors' monthly operating reports reflect that the Debtors have made at least five (5) unauthorized post-petition payments totaling $375,000 to Willis Towers, as follows:

| Date of Payment | Payment Amount |
| --- | --- |
| August 9, 2022 | $ 75,000 |
| August 18, 2022 | $ 75,000 |
| September 27, 2022 | $ 75,000 |
| October 3, 2022 | $ 75,000 |
| October 28, 2022 | $ 75,000 |
| **Total** | **$375,000** |

Cornell Decl. at ¶ 6.

10.     On November 17, 2022, the United States Trustee filed his Application for an Order

Authorizing the United States Trustee to Conduct a 2004 Examination of Willis Towers ("Rule

2004 Application"). ECF Dkt. No. 1392.

11.     On November 22, 2022, the Debtors filed the Supplemental Declaration of

Josephine Gartrell in Support of Debtors' Amended Bonus Motion. ECF Dkt. No. 1428.

12.     On January 24, 2023, after multiple requests by Willis Towers to continue and

extend the deadline to respond, the Court entered the Order (i) Authorizing the Issuance of

Subpoena Duces Tecum and (ii) an Order Compelling Willis Towers to Appear for Examination

Pursuant to FRBP 2004 (the "Rule 2004 Order"). ECF Dkt. No. 1928

13.     In response to the Rule 2004 Application, Willis Towers provided the United States

Trustee with certain documents relating to its engagement with the Debtors.

14.     One of those documents was Willis Towers' engagement letter with the Debtors,

which was signed by Ms. Gartrell on behalf of Willis Towers on July 3, 2022 ("Engagement

Letter"). Cornell Decl. at ¶ 7. The Debtors counter-signed, and "accepted and agreed" to the terms

of, the Engagement Letter on July 5, 2022, just six days prior to the Petition Date. *Id.*

15.     The Engagement Letter stated that Willis Towers would "serve as a restructuring

advisor to Celsius Network Limited." Cornell Decl. at ¶ 7.

16.     In addition to the Engagement Letter, the United States Trustee received copies of

seven (7) invoices issued by Willis Towers to the Debtors after the Petition Date. Each invoice is

in the sum of $75,000, totaling invoices to the bankruptcy estates of at least $525,000. Cornell

Decl. at ¶ 8.

17.     To date, despite engaging Willis Towers as their "restructuring advisor" over ten

months ago, and despite receiving invoices of at least $525,000 from Willis Towers and paying at

6

least $375,000 post-petition, the Debtors have not filed an application in this Court to retain Willis Towers in these cases pursuant to 11 U.S.C. §§ 327, 328, or other Bankruptcy Code provision. Cornell Decl. at ¶ 3.

18.     On February 13, 2023, the United State Trustee filed his Motion for an Order to Show Cause Why the Debtors Should Not Retain Willis Towers (the "Motion for Order to Show Cause"). ECF Dkt. No. 2042.

19.     On February 15, 2023, the Court held a preliminary status on the Motion for Order to Show Cause (the "February 15 Hearing").  At the February 15 Hearing, the Court, *inter alia*, warned that:

> I can just tell you, if you and Willis loses this issue, this far into the case, I have at least one case where I required an attorney to disgorge all the fees that he had received, because he hadn't been retained. So, the stakes are more than just whether they can go forward or not. If I conclude that they were required to be retained -- and maybe I'm wrong, okay. That's why I asked were there any reported decisions. The consequences -- I was surprised when I read the briefing about how much money they had been paid post-petition, for this work. And do they want to be in a position where they might have to disgorge all of that? But you can decide.

February 15, 2023 Transcript at 101:14-25.

20.     Counsel for Willis Towers was present at the hearing and given an opportunity to be heard. *See* February 15, 2023 Transcript at 103:3-5 ("I'm joined by counsel to Willis Towers Watson, who's on the phone, in case he wants to make any remarks as well.")

21.     On February 16, 2023, the Court entered the Order Directing Debtors to Show Cause Why they Should Not Retain Willis Towers Watson (the "Order to Show Cause"). ECF Dkt. No. 2087.

22.     The Order to Show Cause required that no later than March 1, 2023, that the Debtors "shall file with this Court a writing as to why Willis Towers Watson should not be retained in these bankruptcy cases." Order to Show Cause at ¶ 1.

23.     As of the date of filing this Motion, neither the Debtors nor Willis Towers have filed any retention documents with the Court or provided copies to the United States Trustee in connection with these bankruptcy cases.

24.     No application for similar relief has been made.

## ARGUMENT

### 1.  Willis Towers is Not Entitled to Any Fees Because it Never Obtained a Court Order Authorizing Retention

#### a.  Retention Requirements Generally

The Bankruptcy Code permits the debtor in possession to retain one or more professionals.

11 U.S.C. § 327. Section 327(a) of the Bankruptcy Code provides in pertinent part:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[4]

11 U.S.C. § 327(a). No service performed by a debtor's professionals is compensable under Sections 330 or 331 of the Bankruptcy Code unless the court approves the retention. *See Lamie*, 540 U.S. 526 (Section 330(a)(1) does not authorize compensation to debtors' attorneys from estate funds, unless they are employed under Section 327); *see also In re CCT Commc'ns., Inc.*, No. 07-10210 (SMB), 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (citations omitted).

---

[4] Section 1107(a) of the Bankruptcy Code gives the debtor in possession the rights and powers of a chapter 11 trustee and also imposes on the debtor in possession most of the obligations of a trustee. 11 U.S.C. § 1107(a).

To be retained by the estate, professionals must be both disinterested[5] and not hold or represent any adverse interest to the estate. *In re Project Orange Assocs., LLC*, 431 B.R. 363, 369 (Bankr. S.D.N.Y. 2010) (citing *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 107 (2d Cir. 2001) (citing *Bank Brussels Lambert v. Coen (In re AroChem Corp.)*, 176 F.3d 610, 621 (2d Cir. 1999)).

The purpose of the retention application is to provide the court (and the United States Trustee) with information necessary to determine whether the professional's employment is: (i) in the best interest of the estate and (ii) necessary. *See In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); see also Fed. R. Bankr. P. 2014(a). Failure to disclose any fact that may influence the court's decision on retention may result in a later determination that disclosure was inadequate, and sanctions should be imposed upon the professional. *See In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228 (Bankr. E.D. Cal. 1988); *accord Leslie Fay*, 175 B.R. at 525.

The professional's duty to disclose is self-policing. *Granite Partners*, 219 B.R. at 35 (citing *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 839 (7th Cir. 1998)); *see also generally* Fed. R. Bankr. P. 2014 and 2016; UST Fee Guidelines b(1)(ii) and (iii) (requiring disclosure of fee arrangements). The court relies primarily on forthright disclosure to determine qualification under Section 327 of the Bankruptcy Code. *Id.* (citing *Rome*, 19 F.3d at 59); *see also MF Global*, 464 B.R. at 602 (a lack of candor in "disclosing [] potential problem[s] for independent court review before a [professional's] appointment . . . in itself, presents an appearance of

---

[5] Section 101(14)(A) of the Bankruptcy Code provides that a person is "disinterested" if that person "is not a creditor, an equity holder, or an insider."[5] 11 U.S.C. § 101(14)(A). Section 101(14)(C) of the Bankruptcy Code provides that a "disinterested person" is someone who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). Courts determine whether an adverse interest exists on a case-by-case basis, examining the specific facts in a case. *AroChem*, 176 F.3d3 at 623.

impropriety.") (quotation omitted). "Absent the spontaneous, timely and complete disclosure required by Section 327(a) and Fed. R. Bankr. P. 2014(a), the court appointed counsel proceed at their own risk." *Fibermark*, 2006 WL 723495, at \*9 (emphasis in original) (*quoting Rome*, 19 F.3d at 59-60)); *see also In re Roger J. Au & Son, Inc.*, 71 B.R. 238, 242 (Bankr. N.D. Ohio 1986) (failure to disclose fact material to potential conflict may provide totally independent ground for denial of fees quite apart from the actual representation of competing interests).

### b. The Failure to Comply with Retention Obligations is Sanctionable

Failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the professional had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule. *See I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005) (holding that "[w]e have observed that these standards are 'strict' and that attorneys engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest . . . [a]ccordingly, we are 'sensitive to preventing conflicts of interest' and require a 'painstaking analysis of the facts and precise application of precedent") (internal citations omitted); *see also Matter of Olsen Indus., Inc.*, 222 B.R. 49, 60 (Bankr. D. Del. 1997) (because nondisclosure was intentional and serious, it was not necessary for the court to determine the firm's disinterestedness to order disgorgement of fees); *In re eToys, Inc.*, 331 B.R. 176, 190 (Bankr. D. Del. 2005) ("So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees.") (quoting *Leslie Fay*, 175 B.R. at 533).

Nondisclosure of relevant information under Bankruptcy Rule 2014 is sanctionable even if the failure to disclose was negligent or inadvertent. *See, e.g., In re BH & P, Inc.*, 949 F.2d 1300, 1318 (3d Cir. 1991) ("[n]egligence does not excuse the failure to disclose possible conflict of interests"); *see also In re Jore*, 298 B.R. 703, 729 (Bankr. D. Mo. 2003) (same) (citations omitted).

10

Where the failure to disclose is willful, disallowance of fees is almost assured. In fact, willful nondisclosure of relationships in connection with the retention of professionals may rise to the level of a fraud upon the court. *See Pearson v. First NH Mort. Corp.*, 200 F.3d 30, 35-41 (1st Cir. 1999); *see also Crivello*, 134 F.3d at 836-37 (stating that "a bankruptcy court should punish a willful failure to disclose the connections required by Fed. R. Bankr. P. 2014 as severely as an attempt to put forth a fraud on the court."); *accord In re ACandS, Inc.*, 297 B.R. 395, 405 (Bankr. D. Del. 2003) (disallowing *nunc pro tunc* retention and ordering disgorgement of all fees of professional which willfully concealed relationships and potential and actual conflicts).

Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 – (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 30(a)(1)(A) and (B). Only a professional whose retention is approved by order of the court may be compensated from the estate. *Lamie v*, 540 U.S. at 526; *see also In re Bronx 439 E. 135th St. D.T. Bldg. Corp.*, No. 11-15855 (MG), 2014 WL 200996, at *3 (Bankr. S.D.N.Y. Jan. 17, 2014).

Section 328(c) gives the court the power to deny compensation for services previously rendered by the professional and order the disgorgement of fees already paid. 1 Collier on Bankruptcy P 8.07 (16th 2023); *see also In re Big Rivers Elec. Corp.*, 355 F.3d 415 (6th Cir. 2004) (failure of examiner to disclose fee arrangement resulted in disgorgement of all fees paid to examiner and counsel); *In re Condor Sys., Inc.*, 302 B.R. 55, 74 (Bankr. N.D. Cal. 2002) (failure to disclose warranted denial of all compensation for financial advisors); *In re Action Video Inc.*,

11

2003 Bankr. LEXIS 2369 (Bankr. M.D.N.C. June 9, 2003) (all fees must be disgorged by unapproved accountant).

In the Second Circuit, there is a *per se* prohibition against compensating professionals for services rendered prior to a retention order. *Futuronics Corp. v. Arutt, Nachamie & Benjamin* (*In re Futuronics Corp.*), 655 F.2d 463, 469 (2d Cir. 1981), *cert. denied*, 455 U.S. 941 (1982); *Smith v. Winthrop, Stimson, Putnam & Roberts* (*In re Sapphire Steamship Lines, Inc.*)*,* 509 F.2d 1242, 1245-46 (2d Cir. 1975); *In re 245 Assocs.*, 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995). Enforcement of such a strict rule enables the court to examine any potential conflicts of interest that a professional may have prior to the rendering of services*, see Futuronics*, 655 F.2d at 469, thereby avoiding the emotional pressure to award fees which can arise if services have already been rendered. *In re Bennett Funding Group, Inc.*, 213 B.R. 234, 242 (Bankr. N.D.N.Y. 1997) (citing *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988, 992 (2d Cir. 1931)). It also discourages volunteer services and maintains control of costs to the estate by avoiding payment for services that may not otherwise have been authorized. *Id.* (citing *In re Eureka Upholstering Co.*, 48 F.2d 95, 96 (2d Cir. 1931)).

## 2. Willis Towers' Willful Disregard for Bankruptcy Requirements Requires Disgorgement

The law is plain. The burden lies with the Debtors to show that its professionals are qualified for retention and to obtain an order from the Court authorizing the Debtors to retain and to compensate its professionals. *See Hutter*, 215 B.R. at 313 (1997) *aff'd*, *Hutter*, 40 Fed. Appx. at 640 (2002) (citations omitted*); In re Bronx 439 E. 135th St. D.T. Bldg. Corp.*, No. 11-15855 (MG), 2014 WL 200996, at *3 (Bankr. S.D.N.Y. Jan. 17, 2014). The failure to obtain court approval of retention "imposes a per se bar on [a professional's] ability to receive compensation

for services." *In re Bronx 439 E. 135th St. D.T. Bldg. Corp.*, No. 11-15855 (MG), 2014 WL 200996, at *3 (Bankr. S.D.N.Y. Jan. 17, 2014).

Bankruptcy courts have inherent authority to sanction parties for improper conduct.[6] *In re Residential Cap., LLC*, 512 B.R. 179, 191 (Bankr. S.D.N.Y. 2014); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996) ("Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct."); *In re 680 Fifth Ave. Assoc.*, 218 B.R. 305, 323 (Bankr.S.D.N.Y.1998) ("Bankruptcy courts have the same inherent sanction authority as district courts...."); *In re FairPoint Commc'ns, Inc.*, 445 B.R. 271, 276 (Bankr. S.D.N.Y. 2011) (sanctions may be imposed through the inherent power of the court); *In re Plumeri*, No. 10-10050 (MG), 2010 WL 3087685, at *2 (Bankr. S.D.N.Y. Mar. 25, 2010) ("Bankruptcy Courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.") (quotation omitted). A court possesses wide discretion when imposing these sanctions. *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

Willis Towers has failed to file <u>any</u> retention papers in these bankruptcy cases, despite having been paid hundreds of thousands of dollars and despite multiple requests by the United States Trustee. Willis Towers clearly believes that they are outside the strict retention requirements but has failed to provide any reason why. For over ten months, Willis Towers has received payment from the Debtors without filing any retention papers. The failure to file <u>any</u> retention papers has made it an utter impossibility for the Court, the United States Trustee, or interested parties, to make

---

[6] Bankruptcy Courts also have authority pursuant to Section 105(a). "Section 105(a) is understood as providing courts with discretion to accommodate the unique facts of a case consistent with the policies or directives set by the other applicable substantive provisions of the Bankruptcy Code" *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 201 (Bankr. S.D.N.Y. 2017).

any evaluation of Willis Towers' retention.[7] Because the Court never authorized Willis Towers' retention (because no papers have ever been filed), it is not entitled to any fees incurred in connection to its work as professional to the Debtors or the Debtors' estates.

The facts in these cases do not present isolated instances of oversight. Rather, they reveal a cavalier disregard for the myriad of laws and rules governing the Court. Willis Towers' blatant disregard for professional standards, court orders, and bankruptcy norms, requires this Court to sanction Willis Towers and require they disgorge all fees, expenses, or any other compensation received in connection with these bankruptcy cases.

---

[7] *Nunc pro tunc* relief has not been sought, as no retention papers have been filed. However, any *nunc pro tunc* relief would be inappropriate under the circumstances. *In re Keren Ltd. P'ship*, 189 F.3d 86, 87 (2[d] Cir. 1999) ("*Nunc pro tunc* approval should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances."); *see also In re Jarvis*, 53 F.3d 416, 420 (1st Cir. 1995) (applicant must demonstrate extraordinary circumstances to excuse the failure to file a timely application); *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988, 991 (2d Cir. 1931) (*nunc pro tunc* retention based upon applicant's hardship disallowed where hardship was of applicant's own making). Here, any delay has been caused by the Debtors and Willis Towers' failure to act. In fact, the parties have ignored the United States Trustee and this Court's demands to file a retention application. The United States Trustee reserves all rights to amend, supplement, or otherwise modify this Motion or file an objection should such relief be sought.

## CONCLUSION

**WHEREFORE,** the United States Trustee respectfully requests that the Court order (1) Willis Towers to provide an accounting of all compensation, including any charges, fees, or reimbursement of expenses, received in connection with these bankruptcy cases; (2) disgorgement of all compensation received in connection with these bankruptcy cases; and (3) all other relief that is just and proper.

Dated: New York, New York
      May 15, 2023

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Shara Cornell*
Shara Cornell, Esq.
Trial Attorney
One Bowling Green
New York, New York 10004
Tel. (212) 510-0500
