Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' REPLY IN SUPPORT
OF DEBTORS' MOTION SEEKING
ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTORS TO ENTER INTO WITNESS COOPERATION
AGREEMENTS WITH CERTAIN CURRENT AND FORMER
EMPLOYEES, (II) AUTHORIZING REIMBURSEMENT OF PAST AND
FUTURE OUT-OF-POCKET EXPENSES OF COOPERATING WITNESSES,
INCLUDING ATTORNEY'S FEES, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") in support of the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain Current and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-of-Pocket*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Related Relief* [Docket No. 2147] (the "Motion") and the *Notice of Filing of Revised Proposed Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain Current and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-of-Pocket Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Related Relief* [Docket No. 2643] (the "Revised Order"), and in response to the *Response to Debtors' Motion Seeking Order (I) Authorizing the Debtors to Enter Into Witness Cooperation Agreements, (II) Authorizing Reimbursement of Past and Future Out of Pocket Expenses of Cooperating Witnesses and (III) Granting Related Relief* [Docket No. 2223] (the "Response") filed by counsel to Ignat Tuganov and the *Objection of the United States Trustee to Debtors' Motion for an Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain Current And Former Employees, (II) Authorizing Reimbursement of Past and Future Out-of-Pocket Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Related Relief* [Docket No. 2230] (the "UST Objection") filed by the United States Trustee for the Southern District of New York (the "U.S. Trustee"), with respect thereto.[2] In support of this Reply, the Debtors state the following:[3]

---

[2]  The official committee of unsecured creditors (the "Committee") also filed the *Official Committee of Unsecured Creditors' Objection to the Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Enter into Witness Cooperation Agreements with Certain Current and Former Employees, (II) Authorizing Reimbursement of Past and Future Out-Of-Pocket Expenses of Cooperating Witnesses, Including Attorney's Fees, and (III) Granting Related Relief* [Docket No. 2227] (the "Committee Objection"). Since the filing of the Committee Objection, however, the Debtors and the Committee have resolved the issues set forth therein. The Revised Order incorporates the Committee's comments and resolves the Committee Objection.

[3]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or Revised Order, as applicable.

**Preliminary Statement**.

1.    Certain of the Debtors' current and former employees have played a vital role in cooperating with numerous ongoing Investigations into the Debtors' prepetition business practices, and such cooperation is expected to continue, if not intensify.  Notably, Eligible Individuals (previously referred to as "Cooperating Witnesses") will be asked to participate in the Committee's investigation of certain claims and causes of action set forth in the Litigation Stipulation and various other potential investigations, including those by the United States Attorney's Office for the Southern District of New York, the United States Securities and Exchange Commission, the United States Commodity Futures Trading Commission, and the United States Federal Trade Commission.  Enabling cooperation from the Eligible Individuals through the Reimbursement Procedures set forth in the Motion and the Revised Order will materially accelerate the Investigations and could assist the Litigation Administrators, which would inure to the benefit of the Debtors and their stakeholders.

2.    The Debtors received three formal objections and/or responses to the Motion.  The Committee Objection, which the Debtors and the Committee have mutually resolved, the Response, and the UST Objection.  In the Response, Mr. Tuganov does not object to the relief requested in the Motion, but submits that creditors should have access to transcripts from the interviews that Eligible Individuals participate in.  Providing all creditors with such access, however, is not within the Debtors' control as the Debtors do not participate in many of the interviews and such Investigations are usually confidential due to their ongoing nature.

3.    In the UST Objection, among other things, the U.S. Trustee misunderstands the purpose of the Motion, which is procedural in nature, and argues that either Kirkland & Ellis LLP ("Kirkland") can represent the interests of the Debtors in these Investigations such that the Eligible

Individuals do not need their own counsel and/or the cooperation required by such Eligible Individuals falls within the scope of their employment and can be fairly compensated through the Key Employee Retention Program awards. *See generally* UST Objection. As an initial matter, Kirkland cannot represent any Eligible Individuals in their individual capacity as such representation would be a conflict of interest. More importantly, however, the U.S. Trustee ignores the fact that the Debtors will not reimburse Expenses related to an employee's own civil or criminal investigations and that the Reimbursement Procedures explicitly provide for a complete review and objection process which includes the Committee, U.S. Trustee, and the Court. In consultation with the Committee and in an attempt to resolve the U.S. Trustee's objections, the Debtors further improved that review process as set forth in the Revised Order.

4. None of the issues raised in the Response or the UST Objection warrant denial of the Motion. Many of the issues raised by the U.S. Trustee are resolved through the Revised Order. More importantly, given the insights and institutional knowledge held by Celsius' current and former employees, these employees' continued cooperation with the Investigations is crucial to the implementation of a restructuring plan and successful emergence from chapter 11 such that these employees should have a process by which to seek reimbursement of their reasonably incurred costs and expenses. The Reimbursement Procedures provide an open and transparent process that is streamlined and cost effective, which will benefit all parties in interest, including the Committee, the U.S. Trustee, and account holders.

5. Thus, for these reasons and as further set forth herein, the Response and the UST Objection should be overruled, and the relief requested in the Revised Order should be granted.

## The Revised Order

6. On March 14, 2023, the Committee filed the Committee Objection. Since then, the Debtors and the Committee have worked together to resolve and address the Committee's

concerns, culminating in the filing of the Revised Order. The Revised Order provides for additional Committee consent rights, a specific seven-day U.S. Trustee objection period, and a public filing on the docket (the "Reimbursement Notice") whereby the Court can review Past Reimbursement Requests before they are paid. Moreover, the Revised Order limits reimbursement of Past Reimbursement Requests to $2.5 million (down from $3 million) and places specific individual and aggregate caps on Future Reimbursement Requests, subject to increase upon agreement and notice by certain parties.[4]

7. Crucially, the Revised Order also includes a disgorgement provision whereby an Eligible Individual must repay any reimbursed Expenses if such Eligible Individual is (i) found to not be entitled to reimbursement of Expenses, (ii) found to have given false testimony or made untruthful representations (including not acting in good faith), or (iii) convicted of any crime in connection with such Eligible Individual's employment with Celsius or conduct in the Investigations.

8. Finally, the Revised Order includes a copy of the form Reimbursement Agreement so that all parties may review and understand what Eligible Individuals are required to sign before being eligible for any reimbursement.

## Reply

**I. The Relief Requested in the Motion and the Revised Order Satisfies the Requirements of the Bankruptcy Code and is Necessary and Appropriate.**

9. Pursuant to the Motion, as further revised by the Revised Order, the Debtors are seeking to establish clear guidelines and procedures by which Eligible Individuals may seek

---

[4] Pursuant to the Revised Order, while these chapter 11 cases are pending, payment on account of Future Reimbursement Requests is limited to $30,000 per month on average over a rolling three-month period per Eligible Individual (the "Reimbursement Cap") or $90,000 in the aggregate per Eligible Individual (the "Reimbursement Case Cap"). Moreover, all payments on account of Future Reimbursement Requests shall be limited to $1,500,000 in the aggregate (the "Aggregate Reimbursement Cap").

5

reimbursement for certain Expenses.[5]  Motion ¶¶ 19–22; Revised Order ¶¶ 3–5.  Since the filing of the Motion, the Debtors have engaged with the Committee to further supplement the record by filing the *Declaration of Christopher Ferraro, Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Support of the Debtors' Motion Seeking Authorization to Enter into Witness Cooperation Agreements and Reimburse Certain Out-of-Pocket Expenses of Cooperating Witnesses* (the "Ferraro Declaration") contemporaneously herewith and the Revised Order.  In addition, the Debtors have engaged with the U.S. Trustee to address his concerns and have provided the U.S. Trustee with additional notice and participation rights throughout the procedural process as further set forth in the Revised Order.  *See* Revised Order ¶¶ 4(a), 4(b), 5(f), 6.  For these and the following reasons, the UST Objection should be overruled.

10.     ***First***, it would be a significant conflict of interest for Kirkland to represent Eligible Individuals in their individual capacity during these chapter 11 cases.  Kirkland represents the Debtors, not the Debtors' employees, and the U.S. Trustee's argument that Kirkland's representation of the Debtors negates the need for employees to retain individual counsel to represent their own individual interests is ironic given the U.S. Trustee's focus on professional retentions and conflicts.  Kirkland has a responsibility to the Company that differs from any responsibility to individual employees.  As such, current and former employees cooperating in the Investigations often, if not always, require their own counsel to ensure that their own interests are adequately protected.  This is neither unusual nor surprising and it is appropriate for the Debtors

---

[5]   The members of the Debtors' Special Committee, who are not beneficiaries of the relief requested in the Motion or Revised Order, made the decision to file the Motion.

to reimburse these employees for their incursion of additional Expenses related to these Investigations.

11. Moreover, the notion of paying for counsel for employees in the scope of investigations, given the circumstances, is not new. In *In re Enron*, the bankruptcy court held that retention of independent counsel for employees participating in investigations, including investigations by the Securities and Exchange Commission (as is the case in these chapter 11 cases), was proper under section 363(b).[6] *Official Comm. of Unsecured Creditors of Enron Corp. v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27 (S.D.N.Y. 2005). In that case, the debtors' counsel "determined that independent legal advice was necessary for the many . . . employees who were required to give interviews and testimony during the governmental investigations . . . ." *Id.* at 25. Further, as here, the independent counsel in *Enron* represented employees "who were not targets of the investigation but whose assistance in the investigations had been, or was likely to be, sought . . . . and would not represent any employee . . . who became a target of any investigation." *Id*. The Enron debtors, just as the Debtors in these chapter 11 cases, reasoned that a quick completion of the investigations would be beneficial for the company's reorganization and reassure employees that they were protected. *Id.* at 30.

12. While the independent counsel in *Enron* represented approximately all 105 employees cooperating with the investigations, the Debtors are not seeking blanket authorization to retain independent counsel for employees. *Id.* at 30. Approximately a dozen employees have worked with Paul Hastings LLP serving as "pool counsel" to streamline costs and increase

---

[6] Specifically, the Court found that "[n]othing in § 327(e) suggests that Congress intended it to be the exclusive authority for approving the payment of legal fees in the bankruptcy code. . . . [and] that a transaction outside the ordinary course of business may be approved under § 363(b) if the transaction meets the requirements of that section, even if another provision of the code touches upon the subject matter of the transaction." *Enron*, 335 B.R. at 29.

7

efficiency, and the Debtors are seeking to establish procedures, the Reimbursement Procedures, which provide for cooperation with the Committee in determining which employees should be considered as Eligible Individuals (and therefore eligible for reimbursement of Expenses).

13. ***Second***, appearing for and voluntarily cooperating in Investigations does not fall within the Eligible Individuals' scope of employment. Employees asked to cooperate with different Investigations work in many different business lines including Risk, Compliance, Operations, Marketing, Business Processes/Controls, Finance, Tax, Treasury, and Strategy. Employees are being questioned confidentially by various government and regulatory agencies not about their day to day, but about the Debtors' history and previous activities. The mere fact that employees, including former employees, are being questioned without Debtors' counsel present (or even invited) indicates that such appearance is not made on behalf of the Debtors and is outside the scope of an employee's employment with the Debtors.

14. In addition, the bonuses provided under the *Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 1683] the ("KERP") pertain to retention of employees, whereas the reimbursement of expenses applies to cooperation costs incurred by current and former employees. While the KERP was meant to reward employees for their diligence, the Revised Order merely aims to reimburse and cover costs—the current and former employees do not profit from the Reimbursement Procedures nor should they be required to use their bonuses to cover such costs.

15. ***Third***, the Motion is a procedural motion that provides an avenue for reimbursements. As set forth in the Revised Order, any reimbursements made will be subject to review period by the U.S. Trustee and filed on the docket for the Court to review. *See* Revised Order ¶ 4. Once again, the U.S. Trustee misunderstand the purpose of the Motion by arguing that

the Motion does not explain who is receiving payment for a Past Reimbursement Expense. This is because such determination has not yet been made. The Debtors, in consultation with the Committee, will designate current and former employees who are eligible to become Eligible Individuals. Moreover, given the procedural nature of the Motion (and Revised Order), the Debtors seek to create a platform whereby Eligible Individuals or their counsel can demonstrate their own value to ongoing Investigations. All of which will be subject to review by the U.S. Trustee and filed publicly on the docket.

16. **Fourth**, the Debtors have complied with section 503(b)(1) of the Bankruptcy Code. As explained in the Ferraro Declaration, different regulatory entities have noted that productions of requested documents from certain current and former employees, and interviews with those current or former employees, have been delayed because of nonpayment of such employees' lawyers. *See* Ferraro Decl. ¶ 9. Completion of the Investigations is necessary for a successful and compliant emergence from these chapter 11 proceedings, and hindering cooperation with the Investigations only serves to delay stakeholder recovery and create additional potential liability. The Debtors' current and former employees have amassed a great deal of institutional knowledge and forcing employees to shoulder the cost of cooperation or forgo Employee Counsel would only serve to disincentivize cooperation. *See generally* Motion ¶¶ 35–38.

17. **Finally**, the Revised Order addresses the U.S. Trustee's complaint that "the Debtors must disclose what prepetition and postpetition payments have been made to or on behalf of Employees, as well as any commitments to make such payments." UST Objection at 6. Paragraph 6 of the Revised Order provides that: "No later than fourteen (14) calendar days after the entry of this Order, the Debtors shall provide the U.S. Trustee and the Committee with all documents related to any disbursements made by the Debtors to any Prospective Defendants or their counsel

with respect to any Investigation or other proceeding involving a Prospective Defendant from July 13, 2021 to the date of the entry of this Order." In addition, Paul Hastings does not represent the Debtors and cannot, and should not, be retained by the Debtors in these chapter 11 cases. Paul Hastings represents employees of the Debtors, and such retention was entered into prior to the Petition Date.[7]

18.   The Debtors believe that without adequate representation, the Eligible Individuals will be reticent to voluntarily engage with the Investigations and diminished cooperation from such current and former employees would hinder the Debtors' progress towards emergence from chapter 11. Finally, in *Enron*, the debtors argued, like the Debtors in these chapter 11 cases have, that the retention of independent counsel would facilitate employee cooperation in order to expediently complete investigations and allow employees to focus on work because "[t]here would be transaction costs associated with the employees' distraction by the investigations and unease about their legal rights." *Enron* 335 B.R. at 30.

## II.   Other Matters are Addressed or Simply Cannot be Resolved by the Debtors.

19.   While the Debtors understand the desire of parties to receive transcripts from the interviews of employees relating to the Investigations, Kirkland has not participated in all such investigations, does not represent the employees, and cannot access the transcripts of ongoing investigations due to their confidential nature. As such, while the Debtors appreciate the suggestion in the Response, they are not in a position to act on it. For these reasons, the relief requested in the Response should also be denied.

---

[7]   *See Enron*, 335 B.R. at 29 ("And, as the Committee itself emphasizes, § 327(e) is directed to the retention of an attorney to represent the debtor, not third parties such as the debtor's employees.").

10

## **Conclusion**

20.     Accordingly, for the reasons set forth herein and in the Motion and in the Ferraro Declaration, the Debtors request that the Court approve the Revised Order and overrule the pending UST Objection.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Court should overrule the UST Objection and grant the relief requested in the Motion.

| | |
|---|---|
| New York, New York<br>Dated: May 16, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email: patrick.nash@kirkland.com<br>ross.kwasteniet@kirkland.com<br>chris.koenig@kirkland.com<br>dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |