UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>　　CELSIUS NETWORK LLC, *et al.*,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

### ORDER DENYING THE MOTIONS FILED BY JASON AMERSON

Pending before the Court are two motions filed by *pro se* creditor Jason Amerson: 1) *Motion for Entry of an Order (I) To Request an Injunction or Sanction on Inappropriate Communications Between Debtor and Unsecured Creditor(s), (II) Granting Related Relief.* ("Communications Motion," ECF Doc. # 2314) and 2) *Motion for Entry of an Order (I) to Request the Court to Investigate if the Debtor and/or Debtor's Legal Counsel Aided in Granting Financial Relief to an Unsecured Creditor After the February 9th, 2023 Proof of Claim Bar Date Occurred, (II) to Request the Court to Remedy and Such Acts Determined to be a Violation of Bankruptcy Law, (III) Granting Related Relief* ("Amended Claim Motion," ECF Doc. # 2333, and together with the Communication Motions, the "Motions"). The Debtors filed an omnibus objection (the "Objection," ECF Doc. # 2615) to the Motions. For the reasons explained below, the Objection is **SUSTAINED** and the Motions are **DENIED**.

This case has been very contentious from the start and has generated extremely strong feelings, many of which are entirely reasonable under the circumstances. But far too many of these feelings have taken the form of unfounded accusations directed at the professionals for the Debtors and the Official Committee of Unsecured Creditors (the "Committee"). From the start of these cases the Court has urged the professionals for the Debtors and the Committee to have open communications with creditors. This often results, as it should, in resolving questions that

do not require Court intervention.  Such out-of-court resolutions conserve judicial resources and reduce professional expenses, ensuring that the estate's creditors receive the maximum possible recovery.  The Court concludes that Mr. Amerson's Motions, which take issue with routine and, in-fact, vital out-of-court communications, are entirely without merit.  Further, these Motions required the Debtors' counsel to expend time responding to frivolous accusations and incurring needless estate expenses to the detriment of all the estates' creditors, including Mr. Amerson.

The Court finds that, notwithstanding Mr. Amerson's unsupported allegations in the Amended Claim and Communication Motion, the Debtors' and their professionals' actions were entirely proper.  The Court will not set forth Mr. Amerson's allegations, which are entirely without factual or legal support, but will briefly set forth the reasons why the Debtors' actions were clearly proper.

As to the Communication Motion, there is no evidence that the Debtors inappropriately communicated with Mr. Dixon or provided preferential treatment.  The Debtors have frequently communicated with individual creditors throughout the course of these chapter 11 cases, and such communications are essential to the effective administration of these chapter 11 cases and driving to a consensual and value-maximizing outcome.  The ability to freely and directly communicate with interested parties allows the Debtors to seek input from the community, achieve favorable outcomes, and where appropriate, take action as a result of those communications.  Contrary to Mr. Amerson's contention in the Communication Motion, nothing in section 1103 of the Bankruptcy Code prevents the Debtors from communicating with individual creditors.  (*See* Communications Motion at 34.) Further, the Communications Motion provides no basis for showing that Mr. Dixon received

inappropriate or heighted access relative to other creditors or that Mr. Dixon's personal interests posed a conflict of interest for the Debtors.

As to the Amended Claim Motion, there is no evidence that the Debtors provided Mr. Dixon any inappropriate financial benefit. To the contrary, the Debtors acted ethically and expeditiously in fixing an obvious error without intervention from the Court. The Debtors' authority to amend their Schedules, which would include any scheduled claims, has been expressly preserved during these proceedings. The *Amended Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (ECF Doc. # 2311) (the "Global Notes"), which are incorporated by reference into the Debtors' Schedules, acknowledges the possibility of "inadvertent errors or omissions" to the Schedules, and the Debtors' authority to amend or supplement "as may be necessary or appropriate." *See* Global Notes at 2. As a result, the Debtors have the authority to correct scheduled claims where they do not accurately reflect the Debtors' Books and Records. In the case of Mr. Dixon's claim, the Debtors did just that. The Debtors corrected Mr. Dixon's scheduled claim because such scheduled claim did not accurately reflect the amount of Mr. Dixon's prepetition claim after appropriate investigation. (Objection ¶ 11.)

Mr. Amerson and other creditors are forewarned that the consequences for filing frivolous motions can be serious.

**IT IS SO ORDERED.**

Dated: May 17, 2023
New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge

3