**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
          sam.hershey@whitecase.com
          jweedman@whitecase.com


– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
          gregory.pesce@whitecase.com


– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF ANDREA AMULIC IN SUPPORT OF THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) CERTIFY THE CLASS OF ACCOUNT HOLDERS ASSERTING NON-CONTRACT CLAIMS AGAINST THE DEBTORS, (II) APPOINT THOMAS DIFIORE, REBECCA GALLAGHER, AND IGNAT TUGANOV AS THE CLASS REPRESENTATIVES, AND (III) APPOINT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**WHITE & CASE LLP AS CLASS COUNSEL, IN EACH CASE PURSUANT TO
BANKRUPTCY RULE 7023**

I, Andrea Amulic, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I submit this declaration (this "**Declaration**") in support of the *Motion of the*
*Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting*
*Non-Contract Claims Against the Debtors Pursuant to Bankruptcy Rule 7023, (II) Appoint Thomas*
*DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint*
*White & Case LLP as Class Counsel* (the "**Motion**").[2]

2.      Attached to this Declaration as <u>Exhibit 1</u> is a true and correct copy of a letter from
Vivien De Melo of the Unauthorised Business Department (the "**UBD**") of the Financial Conduct
Authority of the United Kingdom (the "**FCA**") to the Directors of Celsius Network Limited
("**CNL**") dated June 18, 2021, bearing the Bates numbers CEL-UCC-00068306 through CEL-
UCC-00068313.

3.      Attached to this Declaration as <u>Exhibit 2</u> is a true and correct copy of an email chain
between Alex Mashinsky, Kimberley Gantz, Johannes Treutler, Waseem Shabout, and others
dated from March 12–15, 2020, bearing the Bates numbers CEL-UCC-01647137 through CEL-
UCC-01647147.

4.      Attached to this Declaration as <u>Exhibit 3</u> is a true and correct copy of an email sent
by CNL to an individual dated October 24, 2019, bearing the Bates number CEL-UCC-00001824.

5.      Attached to this Declaration as <u>Exhibit 4</u> is a true and correct copy of an email sent
by CNL to an individual dated December 6, 2020, bearing the Bates numbers CEL-UCC-00001669
through CEL-UCC-00001671.

---

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

6.      Attached to this Declaration as <u>Exhibit 5</u> is a true and correct copy of relevant excerpts from a Media Statement Assessment prepared by Prescient for Celsius covering the date range April 9, 2020 to September 25, 2020, and dated May 10, 2022, bearing the Bates numbers CEL-UCC-00023785, CEL-UCC-00023794–97, CEL-UCC-00023806–08; CEL-UCC-00023811–13; CEL-UCC-00023835–36; and CEL-UCC-00023842–45.

7.      Attached to this Declaration as <u>Exhibit 6</u> is a true and correct copy of relevant excerpts from a Media Statement Assessment prepared by Prescient for Celsius covering the date range September 28, 2020 to November 28, 2020, and dated May 10, 2022, bearing the Bates numbers CEL-UCC-00023849 and CEL-UCC-00023860-69.

8.      Attached to this Declaration as <u>Exhibit 7</u> is a true and correct copy of relevant excerpts from a Media Statement Assessment prepared by Prescient for Celsius covering the date range December 21, 2010 to February 15, 2022, and dated May 24, 2022, bearing the Bates numbers CEL-UCC-00023603 and CEL-UCC-00238707-09.

9.      Attached to this Declaration as <u>Exhibit 8</u> is a true and correct copy of a letter from John J. Sikora, Jr. of Latham & Watkins LLP (Celsius's former counsel) ("**L&W**") to Stacy L. Bogert, Assistant Director of the Division of Enforcement of the U.S. Securities and Exchange Commission  (the "**SEC**") dated August 23, 2021, bearing the Bates numbers CEL-UCC-00022923 through CEL-UCC-00022982.

10.      Attached to this Declaration as <u>Exhibit 9</u> is a true and correct copy of an email from Ashley Harrell to Young Cho dated December 20, 2019, bearing the Bates numbers CEL-UCC-00023460 through CEL-UCC-00023461.

11.      Attached to this Declaration as <u>Exhibit 10</u> is a true and correct copy of the Full Minutes of the Board of Directors of CNL dated April 7, 2020, bearing the Bates numbers CEL-

UCC-00000095 through CEL-UCC-00000101.

12.     Attached to this Declaration as <u>Exhibit 11</u> is a true and correct copy of a Unanimous

Written Consent of the Board of Directors of CNL in Lieu of Meeting dated August 19, 2021,

bearing the Bates numbers CEL-UCC-00000211 through CEL-UCC-00000212.

13.     Attached to this Declaration as <u>Exhibit 12</u> is a true and correct copy of Slack

messages between Aaron Patchen, Nuke Goldstein, Ashley Harrell, S. Daniel Leon, and others

dated March 1, 2019, bearing the Bates numbers CEL-UCC-00182002 through CEL-UCC-

00182006.

14.     Attached to this Declaration as <u>Exhibit 13</u> is a true and correct copy of Slack

messages between Harumi Urata-Thompson and Johannes Treutler dated June 3, 2020, bearing

the Bates numbers CEL-UCC-00277650 through CEL-UCC-00277658.

15.     Attached to this Declaration as <u>Exhibit 14</u> is a true and correct copy of an email

from Tom McCarthy to Monica Varzea dated June 21, 2022, forwarding an earlier email chain

between Gal Cohen, Shakti Tailor, Peter Graham, and others dated March 13, 2022, bearing the

Bates numbers CEL-UCC-00209368 through CEL-UCC-00209374.

16.     Attached to this Declaration as <u>Exhibit 15</u> is a true and correct copy of an undated

Celsius advertisement, bearing the Bates number CEL_EXAM-00123118.

17.     Attached to this Declaration as <u>Exhibit 16</u> is a true and correct copy of an email

chain between Frank van Etten, Jason Perman, Dean Tappen, Connor Nolan, and others dated

December 16, 2021, bearing the Bates numbers CEL_EXAM-00057814 through CEL_EXAM-

00057830.

18.     Attached to this Declaration as <u>Exhibit 17</u> is a true and correct copy of a letter from

Roni Cohen-Pavon to the FCA dated June 11, 2021, bearing the Bates numbers CEL-UCC-

00192896 through CEL-UCC-00192899.

19.     Attached to this Declaration as <u>Exhibit 18</u> is a true and correct copy of Slack messages between Alex Mashinsky and Rod Bolger dated February 23, 2022, bearing the Bates number CEL-UCC-01461178.

20.     Attached to this Declaration as <u>Exhibit 19</u> is a true and correct copy of an email chain between Frank van Etten and Alex Mashinsky dated December 30, 2021, bearing the Bates numbers CEL_EXAM-00057186 through CEL_EXAM-00057187.

21.     Attached to this Declaration as <u>Exhibit 20</u> is a true and correct copy of an email chain between Charles Roberts from Celsius and Lauren Pitas and Lucy Castledine of the FCA dated June 11, 2021, bearing the Bates numbers CEL_EXAM-00107374 through CEl_EXAM-00107380.

22.     Attached to this Declaration as <u>Exhibit 21</u> is a true and correct copy of a letter from Roni Cohen-Pavon to Vivien De Melo of the UBD of the FCA dated July 2, 2021, bearing the Bates numbers CEL-UCC-00192947 through CEL-UCC-00192956.

23.     Attached to this Declaration as <u>Exhibit 22</u> is a true and correct copy of an undated set of graphs, illustrating CNL's exposure and bearing the Bates number CEL_EXAM-00059393.

24.     Attached to this Declaration as <u>Exhibit 23</u> is a true and correct copy of a slide deck from a meeting of the Celsius Risk Committee dated December 16, 2021, bearing the Bates numbers CEL-UCC-00041681 through CEL-UCC-00041710.

25.     Attached to this Declaration as <u>Exhibit 24</u> is a true and correct copy of a letter from John J. Sikora, Jr. of L&W to the New Jersey Office of the Attorney General (the "**NJ OAG**") dated August 19, 2021, bearing the Bates numbers CEL-UCC-00023216 through CEL-UCC-00023242.

26.     Attached to this Declaration as <u>Exhibit 25</u> is a true and correct copy of an email from Rodney Sunada-Wong to Ashilan Denizkurdu dated January 28, 2022, forwarding an earlier email chain between Tom McCarthy, Rodney Sunada-Wong, Bethany Davis, Ron Deutsch, and others dated May 14, 2021, bearing the Bates numbers CEL-UCC-00208957 through CEL-UCC-00208966.

27.     Attached to this Declaration as <u>Exhibit 26</u> is a true and correct copy of a letter from John J. Sikora, Jr. of L&W to the NJ OAG dated August 10, 2021, bearing the Bates numbers CEL-UCC-00023212 through CEL-UCC-00023215.

28.     Attached to this Declaration as <u>Exhibit 27</u> is a true and correct copy of a slide deck from a meeting of the Celsius Risk Committee dated May 12, 2022, bearing the Bates numbers CEL-UCC-00042349 through CEL-UCC-00042391.

29.     Attached to this Declaration as <u>Exhibit 28</u> is a true and correct copy of the Celsius Network Credit Risk Policy dated June 9, 2021, bearing the Bates numbers CEL-UCC-00015907 through CEL-UCC-00015913.

30.     Attached to this Declaration as <u>Exhibit 29</u> is a true and correct copy of screenshots from Alex Mashinsky's Twitter dated September 29, 2020, bearing the Bates number PV_C9436160S.

31.     Attached to this Declaration as <u>Exhibit 30</u> is a true and correct copy of Slack messages between Harumi Urata-Thompson and Johannes Treutler dated September 20, 2020, bearing the Bates numbers CEL-UCC-00277873 through CEL-UCC-00277880.

32.     Attached to this Declaration as <u>Exhibit 31</u> is a true and correct copy of a letter from John J. Sikora, Jr. of L&W to Huong Lam, Financial Legal Examiner in the Securities Division of the Enforcement Unit of the State of Washington Department of Financial Institutions dated

August 31, 2021, bearing the Bates numbers CEL-UCC-00023264 through CEL-UCC-00023295.

33.    Attached to this Declaration as <u>Exhibit 32</u> is a true and correct copy of a letter from John J. Sikora, Jr. of L&W to Kirsten Soltner, Securities Examiner in the Pennsylvania Bureau of Securities Compliance and Examinations dated September 17, 2021, bearing the Bates numbers CEL-UCC-00023296 through CEL-UCC-00023325.

34.    Attached to this Declaration as <u>Exhibit 33</u> is a true and correct copy of a letter from John J. Sikora, Jr. of L&W to Rob Fagnant, Enforcement Attorney in the Oklahoma Department of Securities dated October 1, 2021, bearing the Bates numbers CEL-UCC-00018300 through CEL-UCC-00018337.

35.    Attached to this Declaration as <u>Exhibit 34</u> is a true and correct copy of a letter from John J. Sikora, Jr. of L&W to Lucinda Rivera of the Enforcement Section of the Massachusetts Securities Division dated October 29, 2021, bearing the Bates numbers CEL-UCC-00004650 through CEL-UCC-00004667.

36.    Attached to this Declaration as <u>Exhibit 35</u> is a true and correct copy of an email from Adrian Alisie to Vanessa Joasaint dated February 2, 2022, bearing the Bates numbers CELSIUSNETWORK_02718489 through CELSIUSNETWORK_02718496.

37.    Attached to this Declaration as <u>Exhibit 36</u> is a true and correct copy of a slide deck from Celsius's CeFi Trading, Hedging & Investment Strategies Targeted Review dated February 16, 2022, bearing the Bates numbers CEL-UCC-00076695 through CEL-UCC-00076711.

38.    Attached to this Declaration as <u>Exhibit 37</u> is a true and correct copy of an email chain between a CNL officer and an Ernst & Young advisor dated December 7, 2021, bearing the Bates numbers CEL_EXAM-00028829 through CEL_EXAM-00028835.

39.    Attached to this Declaration as <u>Exhibit 38</u> is a true and correct copy of an email

from Tom McCarthy to Monica Varzea dated June 21, 2022, forwarding an earlier email chain between Shakti Tailor, Peter Graham, Gal Cohen, and others dated April 22, 2022, bearing the Bates numbers CEL-UCC-00209166 through CEL-UCC-00209179.

40.     Attached to this Declaration as Exhibit 39 is a true and correct copy of a letter from Amy Kopleton, Deputy Bureau Chief of the NJ OAG to Ron Deutsch dated May 14, 2021, bearing the Bates numbers CEL-UCC-00068302 through CEL-UCC-00068303.

41.     Attached to this Declaration as Exhibit 40 is a true and correct copy of a letter from Kristina Littman, Chief of the Cyber Unit of the SEC to CNL dated July 23, 2021, bearing the Bates numbers CEL-UCC-00068085 through CEL-UCC-00068095.

42.     Attached to this Declaration as Exhibit 41 is a true and correct copy of an email from Yarden Noy to Alex Mashinsky dated November 25, 2021, bearing the Bates numbers CEL-UCC-02010066 through CEL-UCC-02010067.

43.     Attached to this Declaration as Exhibit 42 is a true and correct copy of an email chain between Roni Cohen-Pavon, Vijay Konduru, Alex Mashinsky, Yarden Noy, and others dated June 11, 2021, bearing the Bates numbers CEL-UCC-02011601 through CEL-UCC-02011602.

44.     Attached to this Declaration as Exhibit 43 is a true and correct copy of an email from Peter Graham to Rodney Sunada-Wong dated March 15, 2022, bearing the Bates numbers CELSIUSNETWORK_00081305 through CELSIUSNETWORK_00081306.

45.     Attached to this Declaration as Exhibit 44 is a true and correct copy of an email chain between Alex Mashinsky, Roni Cohen-Pavon, Yarden Noy, and others dated November 9, 2021, bearing the Bates numbers CELSIUSNETWORK_03212282 through CELSIUSNETWORK_03212283.

46.     Attached to this Declaration as Exhibit 45 is a true and correct copy of an email

chain between Alex Mashinsky, Rodney Sunada-Wong, Vijay Konduru, and others dated May 3, 2021, bearing the Bates numbers CEL-UCC-00209093 through CEL-UCC-00209095.

47.    Attached to this Declaration as Exhibit 46 is a true and correct copy of an email chain between Rodney Sunada-Wong and Yarden Noy dated June 2, 2022, bearing the Bates numbers CEL-UCC-01704147 through CEL-UCC-01704150.

48.    Attached to this Declaration as Exhibit 47 is a true and correct copy of an email chain between Rodney Sunada-Wong and Bethany Davis dated May 11, 2021, bearing the Bates numbers CEL-UCC-00207348 through CEL-UCC-00207352.

49.    Attached to this Declaration as Exhibit 48 is a true and correct copy of an email chain between Peter Graham, Shakti Tailor, Tom McCarthy, Zach Wildes, and others dated June 2, 2022, bearing the Bates numbers CEL-UCC-00207086 through CEL-UCC-00207094.

50.    Attached to this Declaration as Exhibit 49 is a true and correct copy of an email from Yarden Noy to Roni Cohen-Pavon dated April 20, 2022, bearing the Bates numbers CELSIUSNETWORK_03212245 through CELSIUSNETWORK_03212249.

51.    Attached to this Declaration as Exhibit 50 is a true and correct copy of an email chain between Rodney Sunada-Wong, Alex Mashinsky, Roni Cohen-Pavon, and others dated July 26, 2021, bearing the Bates numbers CELSIUSNETWORK_03212250 through CELSIUSNETWORK_03212253.

52.    Attached to this Declaration as Exhibit 51 is a true and correct copy of an email chain between Yarden Noy, Bethany Davis, Tushar Nadkarni, Alex Mashinsky, and others dated November 29, 2021, bearing the Bates numbers CELSIUSNETWORK_03212272 through CELSIUSNETWORK_03212274.

53.    Attached to this Declaration as Exhibit 52 is a true and correct copy of notes from

a meeting of the Celsius Risk Committee dated December 11, 2020, bearing the Bates numbers CEL-UCC-00042583 through CEL-UCC-00042589.

54.    Attached to this Declaration as Exhibit 53 is a true and correct copy of a slide deck from a meeting of the Celsius Risk Committee dated August 5, 2021, bearing the Bates numbers CEL-UCC-00041119 through CEL-UCC-00041120.

55.    Attached to this Declaration as Exhibit 54 is a true and correct copy of a Memorandum of Understanding between CNL and KeyFi, Inc. dated October 1, 2020, bearing the Bates numbers CEL_EXAM-00081440 through CEL_EXAM-00081448.

56.    Attached to this Declaration as Exhibit 55 is a true and correct copy of an Asset Purchase Agreement between KeyFi, Inc. and CNL dated December 31, 2020, bearing the Bates numbers CEL_KEY_00001451 through CEL_KEY_00001482.

57.    Attached to this Declaration as Exhibit 56 is a true and correct copy of an email chain between Aliza Landes and Sid Nayak dated December 23, 2020, bearing the Bates numbers CELSIUSNETWORK_00574939 through CELSIUSNETWORK_00574940.

58.    Attached to this Declaration as Exhibit 57 is a true and correct copy of an email chain between Glenn Williams and Rod Bolger dated February 24, 2022, bearing the Bates numbers CEL-UCC-00064349 through CEL-UCC-00064350.

59.    Attached to this Declaration as Exhibit 58 is a true and correct copy of an email chain between Rod Bolger, Rodney Sunada-Wong, Dean Tappen, and others dated February 25, 2022, bearing the Bates numbers CEL-UCC-00065489 through CEL-UCC-00065491.

60.    Attached to this Declaration as Exhibit 59 is a true and correct copy of an email chain between Dean Tappen, Paul Lang, Glenn Williams, and others dated March 24, 2022, bearing the Bates numbers CEL-UCC-00064374 through CEL-UCC-00064376.

61.     Attached to this Declaration as <u>Exhibit 60</u> is a true and correct copy of an email chain between Tat Chan and Tamas Antal dated February 26, 2022, bearing the Bates numbers CEL-UCC-00076625 through CEL-UCC-00076626.

62.     Attached to this Declaration as <u>Exhibit 61</u> is a true and correct copy of Slack messages between Harumi Urata-Thompson and Johannes Treutler dated August 5, 2020, bearing the Bates numbers CEL-UCC-00277814 through CEL-UCC-00277822.

63.     Attached to this Declaration as <u>Exhibit 62</u> is a true and correct copy of Slack messages between Harumi Urata-Thompson and Johannes Treutler dated August 6, 2020, bearing the Bates numbers CEL-UCC-00277823 through CEL-UCC-0077825.

64.     Attached to this Declaration as <u>Exhibit 63</u> is a true and correct copy of Slack messages between Harumi Urata-Thompson, Johannes Treutler, and Connor Nolan dated December 30, 2020, bearing the Bates numbers CEL-UCC-00238274 through CEL-UCC-00238275.

65.     Attached to this Declaration as <u>Exhibit 64</u> is a true and correct copy of Slack messages between Alex Mashinsky and Johannes Treutler dated January 3, 2021, bearing the Bates numbers CEL-UCC-00336290 through CEL-UCC-00336291.

66.     Attached to this Declaration as <u>Exhibit 65</u> is a true and correct copy of Slack messages between Harumi Urata-Thompson, Johannes Treutler, and Connor Nolan dated January 8, 2021, bearing the Bates number CEL-UCC-00196126.

67.     Attached to this Declaration as <u>Exhibit 66</u> is a true and correct copy of Slack messages between Harumi Urata-Thompson, Johannes Treutler, and Connor Nolan dated March 21, 2021, bearing the Bates numbers CEL-UCC-00196135 through CEL-UCC-00196137.

68.     Attached to this Declaration as <u>Exhibit 67</u> is a true and correct copy of a slide deck

from a meeting of the Celsius Asset-Liability Committee dated April 13, 2022, bearing the Bates numbers CEL-UCC-00042816 through CEL-UCC-00042825.

69.    Attached to this Declaration as Exhibit 68 is a true and correct copy of a slide deck from a meeting of the Celsius Executive Committee dated May 4, 2021, bearing the Bates numbers CEL-UCC-00274748 through CEL-UCC-00274790.

70.    Attached to this Declaration as Exhibit 69 is a true and correct copy of a slide deck from a meeting of the Celsius Asset-Liability Committee dated May 25, 2022, bearing the Bates numbers CEL-UCC-00042883 through CEL-UCC-00042895.

71.    Attached to this Declaration as Exhibit 70 is a true and correct copy of Celsius's Postmortem Analysis dated February 11, 2022, bearing the Bates numbers CEL-UCC-00073959 through CEL-UCC-00074001.

72.    Attached to this Declaration as Exhibit 71 is a true and correct copy of CNL's Annual Report and Financial Statements for the Year Ended 29 February 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  May 17, 2023
              New York, New York

                                    /s/ *Andrea Amulic*
                                    Andrea Amulic
                                    White & Case LLP
                                    1221 Avenue of the Americas
                                    New York, New York 10020
                                    Telephone: (212) 819-7061
                                    Email: andrea.amulic@whitecase.com

                                    *Counsel to the Official Committee of
                                    Unsecured Creditors*

# EXHIBIT 1

**Filed Under Seal**

# EXHIBIT 2

**Filed Under Seal**

# EXHIBIT 3

**Filed Under Seal**

# EXHIBIT 4

**Filed Under Seal**

# EXHIBIT 5

## Filed Under Seal

# EXHIBIT 6

**Filed Under Seal**

# EXHIBIT 7

**Filed Under Seal**

# EXHIBIT 8

**Filed Under Seal**

# EXHIBIT 9

**Filed Under Seal**

# EXHIBIT 10

**Filed Under Seal**

# EXHIBIT 11

**Filed Under Seal**

# EXHIBIT 12

**Filed Under Seal**

# EXHIBIT 13

**Filed Under Seal**

# EXHIBIT 14

**Filed Under Seal**

# EXHIBIT 15

**Filed Under Seal**

# EXHIBIT 16

**Filed Under Seal**

# EXHIBIT 17

**Filed Under Seal**

# EXHIBIT 18

**Filed Under Seal**

# EXHIBIT 19

**Filed Under Seal**

# EXHIBIT 20

**Filed Under Seal**

# EXHIBIT 21

**Filed Under Seal**

# EXHIBIT 22

**Filed Under Seal**

# EXHIBIT 23

**Filed Under Seal**

# EXHIBIT 24

**Filed Under Seal**

# EXHIBIT 25

**Filed Under Seal**

# **EXHIBIT 26**

**Filed Under Seal**

# EXHIBIT 27

**Filed Under Seal**

# EXHIBIT 28

**Filed Under Seal**

# EXHIBIT 29

**Filed Under Seal**

# EXHIBIT 30

**Filed Under Seal**

# EXHIBIT 31

**Filed Under Seal**

# EXHIBIT 32

**Filed Under Seal**

# EXHIBIT 33

**Filed Under Seal**

# EXHIBIT 34

**Filed Under Seal**

# EXHIBIT 35

**Filed Under Seal**

# EXHIBIT 36

**Filed Under Seal**

# EXHIBIT 37

**Filed Under Seal**

# EXHIBIT 38

**Filed Under Seal**

# EXHIBIT 39

**Filed Under Seal**

# <u>EXHIBIT 40</u>

**Filed Under Seal**

# <u>EXHIBIT 41</u>

**Filed Under Seal**

# EXHIBIT 42

**Filed Under Seal**

# EXHIBIT 43

**Filed Under Seal**

# EXHIBIT 44

**Filed Under Seal**

# EXHIBIT 45

**Filed Under Seal**

# EXHIBIT 46

**Filed Under Seal**

# EXHIBIT 47

**Filed Under Seal**

# EXHIBIT 48

**Filed Under Seal**

# EXHIBIT 49

**Filed Under Seal**

# EXHIBIT 50

**Filed Under Seal**

# EXHIBIT 51

**Filed Under Seal**

# EXHIBIT 52

**Filed Under Seal**

# EXHIBIT 53

**Filed Under Seal**

# EXHIBIT 54

**Filed Under Seal**

# EXHIBIT 55

**Filed Under Seal**

# EXHIBIT 56

**Filed Under Seal**

# EXHIBIT 57

**Filed Under Seal**

# EXHIBIT 58

**Filed Under Seal**

# EXHIBIT 59

**Filed Under Seal**

# EXHIBIT 60

**Filed Under Seal**

# EXHIBIT 61

**Filed Under Seal**

# **<u>EXHIBIT 62</u>**

**Filed Under Seal**

# EXHIBIT 63

**Filed Under Seal**

# EXHIBIT 64

**Filed Under Seal**

# EXHIBIT 65

**Filed Under Seal**

# EXHIBIT 66

**Filed Under Seal**

# EXHIBIT 67

**Filed Under Seal**

# EXHIBIT 68

**Filed Under Seal**

# EXHIBIT 69

**Filed Under Seal**

# EXHIBIT 70

**Filed Under Seal**

# **<u>EXHIBIT 71</u>**

Registered number: 11198050

# CELSIUS NETWORK LIMITED

## ANNUAL REPORT AND FINANCIAL STATEMENTS

## FOR THE YEAR ENDED 29 FEBRUARY 2020

## CELSIUS NETWORK LIMITED

## COMPANY INFORMATION

| | |
|---|---|
| **Directors** | A Mashinsky |
| | S D Leon |
| | MF Partners Limited (appointed 7 April 2020) |
| | |
| **Registered number** | 11198050 |
| | |
| **Registered office** | 1 Bartholomew Lane |
| | London |
| | England |
| | EC2N 2AX |
| | |
| **Independent auditor** | Nyman Libson Paul LLP |
| | Chartered Accountants & Statutory Auditors |
| | 124 Finchley Road |
| | London |
| | NW3 5JS |

**CELSIUS NETWORK LIMITED**

## CONTENTS

|  | Page |
|---|---|
| **Strategic Report** | 1 - 2 |
| **Directors' Report** | 3 - 4 |
| **Independent Auditor's Report** | 5 - 7 |
| **Statement of Comprehensive Income** | 8 |
| **Statement of Financial Position** | 9 - 10 |
| **Statement of Changes in Equity** | 11 |
| **Statement of Cash Flows** | 12 - 13 |
| **Analysis of Net Debt** | 14 |
| **Notes to the Financial Statements** | 15 - 31 |

**CELSIUS NETWORK LIMITED**

---

**STRATEGIC REPORT**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

### Introduction

Celsius Network Limited ("the Company") was created to create a community centric organization that will always act in the best interest of its customers and depositors, providing two services:

1. The ability to deposit digital assets and earn yield on such assets

2. The ability to borrow or take a loan against such assets.

The Company has built a mobile application that provides these services and has onboarded over 82,500 users from over 200 countries, all of whom have downloaded the application. There is an intention to keep adding more utilities to the service and to continue to improve the community offering.

### Business review

### Technology

The Company uses a combination of centralized and decentralized technologies. The application supports 35 different blockchains such as BTC, ETH, XRP, LTC and others as well as Tokens such as USDT, CEL, PAX and others. There is a plan to add many more decentralized services to provide further transparency and resilience to our platform.

### Business model

The Company's business model contrasts drastically with that of a bank or financial institution, by giving depositors 80% of the weekly net gains from their coins (where possible). This key product feature helps to engender a feeling of mutual trust between the Company and depositors.

### Customers

The Company helps a diverse customer base to create income on their assets, in a world where banks and financial institutions have stopped paying out interest income and depositors often are at a disadvantage. The Company spends very little on advertising and instead focuses on scaling-up its community of users.

### Principal risks and uncertainties

The Company is primarily exposed to credit risks related to its financial assets. In addition, the Company is exposed to risks from movements in exchange rates that affect the cash flows arising from financial assets and liabilities. Since the financing of the Company is done exclusively from equity, interest rate risk is limited. The Company manages these risks primarily through regular monitoring of ongoing operational and finance activities. The Company manages counterparty risk with its borrowers and may face losses and unrepairable damage should some of them fail or not return the aforementioned assets.

Additionally, the company is exposed to operational risk driven by potential hacking/infiltration. While there are robust controls in place to mitigate these risks, the risk of service interruption from external infiltration needs to be continuously monitored and measured.

The Company is part of the global FinTech industry and complies with all the relevant rules and regulations across the world. While the Company applies its best efforts in areas such as KYC and AML, there is no guarantee that the Company will identify all 'bad' users who may cause harm to its network (which may impede the Company's ability to operate in one or more jurisdiction). There is also the risk that future unknown regulations could impede the Company's ability to operate in a number of jurisdictions.

**CELSIUS NETWORK LIMITED**

**STRATEGIC REPORT (CONTINUED)**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

**Financial key performance indicators**

The Company's main Financial KPIs are Revenue, Gross Profit ($ and %), Operating Profit ($ and %), Net Profit ($ and %) and Net Assets.

This report was approved by the board on 28 February 2021 and signed on its behalf.

**A Mashinsky**
Director

**CELSIUS NETWORK LIMITED**

---

**DIRECTORS' REPORT**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

The directors present their report and the financial statements for the year ended 29 February 2020.

**Directors' responsibilities statement**

The directors are responsible for preparing the Strategic Report, the Directors' Report and the financial statements in accordance with applicable law and regulations.

Company law requires the directors to prepare financial statements for each financial year. Under that law the directors have elected to prepare the financial statements in accordance with applicable law and United Kingdom Accounting Standards (United Kingdom Generally Accepted Accounting Practice), including Financial Reporting Standard 102 'The Financial Reporting Standard applicable in the UK and Republic of Ireland'. Under company law the directors must not approve the financial statements unless they are satisfied that they give a true and fair view of the state of affairs of the Company and of the profit or loss of the Company for that period.

In preparing these financial statements, the directors are required to:

- select suitable accounting policies for the Company's financial statements and then apply them consistently;

- make judgments and accounting estimates that are reasonable and prudent;

- prepare the financial statements on the going concern basis unless it is inappropriate to presume that the Company will continue in business.

The directors are responsible for keeping adequate accounting records that are sufficient to show and explain the Company's transactions and disclose with reasonable accuracy at any time the financial position of the Company and to enable them to ensure that the financial statements comply with the Companies Act 2006. They are also responsible for safeguarding the assets of the Company and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.

**Results and dividends**

The loss for the year, after taxation, amounted to $34,223,598 (2019 - loss $1,492,877).

The directors do not propose the payment of a dividend.

**Directors**

The directors who served during the year were:

A Mashinsky
S D Leon

**Future developments**

The Company's plan is to continue to serve the wider community and scale to over 100m users worldwide.

**Qualifying third party indemnity provisions**

The parent company on behalf of the group maintains liability insurance for its directors and officers against liabilities which directors or officers may incur personally as a consequence of claims made against them alleging breach of duty or unlawful acts of or omissions in their capacity as a director or officer.

**CELSIUS NETWORK LIMITED**

**DIRECTORS' REPORT (CONTINUED)
FOR THE YEAR ENDED 29 FEBRUARY 2020**

**Disclosure of information to auditor**

Each of the persons who are directors at the time when this Directors' Report is approved has confirmed that:

·       so far as the director is aware, there is no relevant audit information of which the Company's auditor is unaware, and

·       the director has taken all the steps that ought to have been taken as a director in order to be aware of any relevant audit information and to establish that the Company's auditor is aware of that information.

**Post balance sheet events**

The Company's management continues to have faith in its business model and believes it will continue to be a going concern for the next 12 months.  However, it must be acknowledged that there is an unfolding economic crisis due to the COVID-19 virus, which may have an impact on the Company's probability and ultimate viability.  The management team will endeavour to mitigate these inherent risks (where possible) but remain cautious and cannot make any guarantees, in light of this unprecedented event and future unknown developments that may arise.

Subsequent to the reporting date, the company successfully raised over $22,500,000 as part of its Series A equity round.

**Auditor**

The auditor, Nyman Libson Paul LLP, will be proposed for reappointment in accordance with section 485 of the Companies Act 2006.

This report was approved by the board on 28 February 2021 and signed on its behalf.

**A Mashinsky**
Director

**CELSIUS NETWORK LIMITED**

---

### INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF CELSIUS NETWORK LIMITED

---

**Opinion**

We have audited the financial statements of Celsius Network Limited (the 'Company') for the year ended 29 February 2020, which comprise the Statement of Comprehensive Income, the Statement of Financial Position, the Statement of Cash Flows, the Statement of Changes in Equity and the related notes, including a summary of significant accounting policies. The financial reporting framework that has been applied in their preparation is applicable law and United Kingdom Accounting Standards, including Financial Reporting Standard 102 'The Financial Reporting Standard applicable in the UK and Republic of Ireland' (United Kingdom Generally Accepted Accounting Practice).

In our opinion the financial statements:

·    give a true and fair view of the state of the Company's affairs as at 29 February 2020 and of its loss for the year then ended;
·    have been properly prepared in accordance with United Kingdom Generally Accepted Accounting Practice; and
·    have been prepared in accordance with the requirements of the Companies Act 2006.

**Basis for opinion**

We conducted our audit in accordance with International Standards on Auditing (UK) (ISAs (UK)) and applicable law. Our responsibilities under those standards are further described in the Auditor's responsibilities for the audit of the financial statements section of our report. We are independent of the Company in accordance with the ethical requirements that are relevant to our audit of the financial statements in the United Kingdom, including the Financial Reporting Council's Ethical Standard and we have fulfilled our other ethical responsibilities in accordance with these requirements. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion.

**Material uncertainty related to going concern**

We draw attention to note 2.2 in the financial statements, which indicates that while the directors consider that the company has adequate resources to continue in operational existence for the foreseeable future, there is uncertainty due to the impact of the COVID-19 virus which cannot yet be fully quantified. As stated in note 2.2, these events or conditions, along with the other matters as set forth in note 2.2, indicate that a material uncertainty exists that may cast significant doubt on the Company's ability to continue as a going concern. Our opinion is not modified in respect of this matter.

**CELSIUS NETWORK LIMITED**

**INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF CELSIUS NETWORK LIMITED (CONTINUED)**

**Other Information**

The directors are responsible for the other information. The other information comprises the information included in the Annual Report, other than the financial statements and our Auditor's Report thereon. Our opinion on the financial statements does not cover the other information and, except to the extent otherwise explicitly stated in our report, we do not express any form of assurance conclusion thereon.

In connection with our audit of the financial statements, our responsibility is to read the other information and, in doing so, consider whether the other information is materially inconsistent with the financial statements or our knowledge obtained in the audit or otherwise appears to be materially misstated. If we identify such material inconsistencies or apparent material misstatements, we are required to determine whether there is a material misstatement in the financial statements or a material misstatement of the other information. If, based on the work we have performed, we conclude that there is a material misstatement of this other information, we are required to report that fact.

We have nothing to report in this regard.

**Opinion on other matters prescribed by the Companies Act 2006**

In our opinion, based on the work undertaken in the course of the audit:

- the information given in the Strategic Report and the Directors' Report for the financial year for which the financial statements are prepared is consistent with the financial statements; and
- the Strategic Report and the Directors' Report have been prepared in accordance with applicable legal requirements.

**Matters on which we are required to report by exception**

In the light of the knowledge and understanding of the Company and its environment obtained in the course of the audit, we have not identified material misstatements in the Strategic Report or the Directors' Report.

We have nothing to report in respect of the following matters in relation to which the Companies Act 2006 requires us to report to you if, in our opinion:

- adequate accounting records have not been kept, or returns adequate for our audit have not been received from branches not visited by us; or
- the financial statements are not in agreement with the accounting records and returns; or
- certain disclosures of directors' remuneration specified by law are not made; or
- we have not received all the information and explanations we require for our audit.

**CELSIUS NETWORK LIMITED**

**INDEPENDENT AUDITOR'S REPORT TO THE MEMBERS OF CELSIUS NETWORK LIMITED (CONTINUED)**

**Responsibilities of directors**

As explained more fully in the Directors' Responsibilities Statement set out on page 3, the directors are responsible for the preparation of the financial statements and for being satisfied that they give a true and fair view, and for such internal control as the directors determine is necessary to enable the preparation of financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, the directors are responsible for assessing the Company's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless the directors either intend to liquidate the Company or to cease operations, or have no realistic alternative but to do so.

**Auditor's responsibilities for the audit of the financial statements**

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an Auditor's Report that includes our opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with ISAs (UK) will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these financial statements.

A further description of our responsibilities for the audit of the financial statements is located on the Financial Reporting Council's website at: www.frc.org.uk/auditorsresponsibilities. This description forms part of our Auditor's Report.

**Use of our report**

This report is made solely to the Company's members, as a body, in accordance with Chapter 3 of Part 16 of the Companies Act 2006. Our audit work has been undertaken so that we might state to the Company's members those matters we are required to state to them in an Auditor's Report and for no other purpose. To the fullest extent permitted by law, we do not accept or assume responsibility to anyone other than the Company and the Company's members, as a body, for our audit work, for this report, or for the opinions we have formed.

Richard Lloyd (Senior Statutory Auditor)

for and on behalf of
**Nyman Libson Paul LLP**

Chartered Accountants
Statutory Auditors

124 Finchley Road
London
NW3 5JS

28 February 2021

**CELSIUS NETWORK LIMITED**

**STATEMENT OF COMPREHENSIVE INCOME**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

| | Note | 2020 $ | 2019 $ |
|---|---|---|---|
| Turnover | 4 | 15,331,999 | 25,948,377 |
| Cost of sales | | (34,109,466) | (18,601,127) |
| **Gross (loss)/profit** | | (18,777,467) | 7,347,250 |
| Distribution costs | | (890,847) | (1,097,024) |
| Administrative expenses | | (10,064,660) | (6,167,104) |
| Other operating income | | 1,452,244 | 5,088 |
| **Operating (loss)/profit** | 6 | (28,280,730) | 88,210 |
| Net realised losses and income from investments | 9 | (635,412) | - |
| Unrealised losses and amounts written off investments | | (1,167,429) | - |
| Interest payable and expenses | 10 | (9,745,516) | (369,276) |
| **Loss before tax** | | (39,829,087) | (281,066) |
| Tax on loss | 11 | 5,605,489 | (1,211,811) |
| **Loss for the financial year** | | (34,223,598) | (1,492,877) |
| **Other comprehensive income for the year** | | | |
| Unrealised surplus on revaluation of intangible assets | | 77,589,330 | 8,702,712 |
| Deferred tax on revaluation of intangible assets | | (14,714,353) | (1,653,515) |
| **Other comprehensive income for the year** | | 62,874,977 | 7,049,197 |
| **Total comprehensive income for the year** | | 28,651,379 | 5,556,320 |

The notes on pages 15 to 31 form part of these financial statements.

**CELSIUS NETWORK LIMITED**
**REGISTERED NUMBER: 11198050**

**STATEMENT OF FINANCIAL POSITION**
**AS AT 29 FEBRUARY 2020**

| | Note | 29 February 2020 $ | 29 February 2020 $ | 28 February 2019 $ | 28 February 2019 $ |
|---|---|---|---|---|---|
| **Fixed assets** | | | | | |
| Intangible assets | 12 | | 292,804,864 | | 51,669,481 |
| Investments | 13 | | 1,338,230 | | 2,123,094 |
| | | | 294,143,094 | | 53,792,575 |
| **Current assets** | | | | | |
| Debtors: amounts falling due within one year | 14 | 250,673,938 | | 14,076,710 | |
| Current asset investments | 15 | 48,554,547 | | - | |
| Cash at bank and in hand | 16 | 3,924,722 | | 1,026,610 | |
| | | 303,153,207 | | 15,103,320 | |
| Creditors: amounts falling due within one year | 17 | (506,540,772) | | (60,474,248) | |
| **Net current liabilities** | | | (203,387,565) | | (45,370,928) |
| **Total assets less current liabilities** | | | 90,755,529 | | 8,421,647 |
| Creditors: amounts falling due after more than one year | 18 | | (44,573,639) | | - |
| **Provisions for liabilities** | | | | | |
| Deferred tax | 20 | (11,974,190) | | (2,865,326) | |
| | | | (11,974,190) | | (2,865,326) |
| **Net assets** | | | 34,207,700 | | 5,556,321 |

**CELSIUS NETWORK LIMITED**
**REGISTERED NUMBER: 11198050**

**STATEMENT OF FINANCIAL POSITION (CONTINUED)**
**AS AT 29 FEBRUARY 2020**

| | Note | 29 February 2020 $ | As restated 28 February 2019 $ |
|---|---|---|---|
| **Capital and reserves** | | | |
| Called up share capital | 21 | 1 | 1 |
| Revaluation reserve | 22 | 69,778,808 | 7,049,197 |
| Other reserves | 22 | (18,730,942) | 5,166,144 |
| Profit and loss account | 22 | (16,840,167) | (6,659,021) |
| | | 34,207,700 | 5,556,321 |

The financial statements were approved and authorised for issue by the board and were signed on its behalf on 28 February 2021.


**A Mashinsky**                                    **S D Leon**
Director                                               Director

The notes on pages 15 to 31 form part of these financial statements.

**CELSIUS NETWORK LIMITED**

**STATEMENT OF CHANGES IN EQUITY**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

| | Called up share capital | Revaluation reserve | Other reserves | Profit and loss account | Total equity |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |
| **Comprehensive income for the period** | | | | | |
| Loss for the period | - | - | - | (1,492,877) | (1,492,877) |
| Unrealised surplus on revaluation of intangible assets | - | 8,702,712 | - | - | 8,702,712 |
| Deferred tax on revaluation of intangible assets | - | (1,653,515) | - | - | (1,653,515) |
| **Total comprehensive income for the period** | - | 7,049,197 | - | (1,492,877) | 5,556,320 |
| Shares issued during the period | 1 | - | - | - | 1 |
| Transfer to/from profit and loss account | - | - | 5,166,144 | (5,166,144) | - |
| **As restated at 1 March 2019** | 1 | 7,049,197 | 5,166,144 | (6,659,021) | 5,556,321 |
| **Comprehensive income for the year** | | | | | |
| Loss for the year | - | - | - | 34,223,598 | 34,223,598 |
| Unrealised surplus on revaluation of intangible assets | - | 77,589,330 | - | - | 77,589,330 |
| Deferred tax on revaluation of intangible assets | - | 14,714,353 | - | - | 14,714,353 |
| **Total comprehensive income for the year** | - | 62,874,977 | - | 34,223,598 | 28,651,379 |
| Transfer to/from profit and loss account | - | (145,366) | 23,897,086 | 24,042,452 | - |
| **At 29 February 2020** | 1 | 69,778,808 | 18,730,942 | 16,840,167 | 34,207,700 |

**CELSIUS NETWORK LIMITED**

**STATEMENT OF CASH FLOWS**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

| | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| **Cash flows from operating activities** | | |
| Loss for the financial year | (34,223,598) | (1,492,877) |
| **Adjustments for:** | | |
| Interest paid | 9,745,516 | 369,276 |
| Net realised losses and income from investments | 635,412 | - |
| Unrealised losses and amounts written off investments | 1,167,429 | - |
| Taxation charge | (5,605,489) | 1,211,811 |
| Utilisation of treasury cryptocurrencies | 145,366 | - |
| Net increase in traded cryptocurrencies | (163,691,419) | (42,966,769) |
| Net increase in loans and advances | (126,654,909) | (12,960,424) |
| Net increase in loan collateral receivable | (108,844,116) | - |
| Net (decrease)/increase in amounts owed by group undertakings | 569,933 | (1,082,061) |
| Net increase in debtors | (1,668,136) | (34,225) |
| Net increase in customer deposits | 319,838,502 | 36,553,912 |
| Net increase in loan collateral payable | 86,780,667 | 18,131,750 |
| Net (decrease)/increase in creditors | (3,552,645) | 5,788,586 |
| **Net cash generated from operating activities** | (25,357,487) | 3,518,979 |
| | | |
| **Cash flows from investing activities** | | |
| Purchase of listed investments | - | (1,057,471) |
| Purchase of other investments | (100,100) | (1,065,623) |
| Purchase of short term unlisted investments | (49,472,424) | - |
| **Net cash from investing activities** | (49,572,524) | (2,123,094) |

**CELSIUS NETWORK LIMITED**

**STATEMENT OF CASH FLOWS (CONTINUED)**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

|  | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| **Cash flows from financing activities** |  |  |
| Issue of ordinary shares | - | 1 |
| Other new loans | 87,573,639 | - |
| Interest paid | (9,745,516) | (369,276) |
| **Net cash used in financing activities** | 77,828,123 | (369,275) |
| **Net increase in cash and cash equivalents** | 2,898,112 | 1,026,610 |
| Cash and cash equivalents at beginning of year | 1,026,610 | - |
| **Cash and cash equivalents at the end of year** | 3,924,722 | 1,026,610 |
| **Cash and cash equivalents at the end of year comprise:** |  |  |
| Cash at bank and in hand | 3,924,722 | 1,026,610 |
|  | 3,924,722 | 1,026,610 |

The notes on pages 15 to 31 form part of these financial statements.

**CELSIUS NETWORK LIMITED**

**ANALYSIS OF NET DEBT**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

| | At 1 March 2019 $ | Cash flows $ | At 29 February 2020 $ |
|---|---|---|---|
| Cash at bank and in hand | 1,026,610 | 2,898,112 | 3,924,722 |
| Debt due after 1 year | - | (44,573,639) | (44,573,639) |
| Debt due within 1 year | - | (43,000,000) | (43,000,000) |
| | 1,026,610 | (84,675,527) | (83,648,917) |

The notes on pages 15 to 31 form part of these financial statements.

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

1.   **General information**

Celsius Network Limited is a private company limited by shares and is incorporated in England and Wales. The registered office of the company is 1 Bartholomew Lane, London, England, EC2N 2AX. The address of its principal place of business is 43 W 23rd Street, 2nd Floor, New York, NY 10010.

2.   **Accounting policies**

2.1   **Basis of preparation of financial statements**

The financial statements have been prepared under the historical cost convention unless otherwise specified within these accounting policies and in accordance with Financial Reporting Standard 102, the Financial Reporting Standard applicable in the UK and the Republic of Ireland and the Companies Act 2006.

The preparation of financial statements in compliance with FRS 102 requires the use of certain critical accounting estimates. It also requires management to exercise judgment in applying the Company's accounting policies (see note 3).

The following principal accounting policies have been applied:

2.2   **Going concern**

The company meets its day to day working capital requirements through the utilisation of its own funds, cryptocurrencies from depositers and loans from third party institutions.

Existing funding facilities, forecasts and projections indicate that the company has adequate resources to continue with some level of activity from a minimal to full levels.

Although the potential effects of the COVID-19 virus can be modelled, it is very difficult to determine the assumptions that will prove to be most appropriate and therefore there is an element of doubt existing that cannot be quantified.

After reviewing the company's forecasts and projections, the directors have a reasonable expectation that the company has adequate resources to continue in operational existence for the foreseeable future. The company therefore continues to adopt the going concern basis in preparing its financial statements, but with the proviso that a material uncertainly exists over the company's future.

2.3   **Foreign currency translation**

Items included in the financial statements of the Company are measured using the currency of the primary economic environment in which the entity operates (the functional currency).   The functional and presentational currency of the Company is United States Dollars (USD).

Foreign currency transactions are translated into the functional currency using the exchange rates prevailing at the transaction or valuation date where items are re-measured. Foreign exchange gains and losses resulting from the settlement of such transactions as well as from the translation at year-end exchange rates of monetary assets and liabilities denominated in foreign currencies are recognised in the Statement of Comprehensive Income. Non-monetary items that are measured in terms of historical cost in a foreign currency are translated using the exchange rate at the date of the initial transaction.

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

2.   **Accounting policies (continued)**

2.4   **Revenue**

Revenue comprises the fair value of the consideration received or receivable for the provision of services in the ordinary course of the company's activities.

The company recognises revenue when the amount of revenue can be reliably measured; it is probable that future economic benefits will flow into the entity; and specific criteria have been met for each of the company's activities.

Revenues generated by the Company mainly consist of (i) CEL token sales, (ii) exchange lending, (iii) interest receivable from institutional loans, (iv) interest receivable from retail loans, and (v) discretionary trading of cryptocurrencies. Below is a detailed explanation of all the Company's sources of revenue:

**CEL Token Sales**

For the Company's initial sale of CEL tokens, in which multiple purchasers made payments using cryptocurrency, revenue is recognised at the fair value of the relevant cryptocurrency at the transaction date and is recognised over the period to which the tokens were activated in May 2019. The cryptocurrency holdings received as payment for CEL tokens were subsequently converted to USD in Q4 2018. As such, any associated gains or losses generated upon sale of the cryptocurrency to USD are also recognised in the Statement of Comprehensive Income.

**Exchange Lending**

The Company lends both fiat and cryptocurrencies to centralized and decentralized exchanges for durations ranging from two days to thirty days. These exchanges are marketplaces where their users are the ultimate borrowers of the assets we are lending and the exchanges manage the collateral and settlement of all lending transactions. Revenue is reported by the exchanges on a daily basis.

**Institutional Lending**

The Company lends both fiat and cryptocurrencies to institutional borrowers that generally qualify as ECP's (eligible contract participant) if they have greater than $10 million in gross assets (or $5 million in gross assets if they are hedging). These institutional loans are generally open term so are short in duration and the overall portfolio is collateralized 0.5 to 1. Revenue is derived from interest income which is invoiced monthly to all institutional counterparties.

**Retail Lending**

The Company lends both fiat and US dollar stablecoins to individual borrowers from within the United States (eligible in 35 states only) and internationally. Duration ranges from 6 months to 2 years, and loan-to-value ratios ranges from 25% to 50% for our standard loans. Revenue comes from interest income that is invoiced monthly, as well as from collateral liquidations (2% of principal) in the case of defaults.

**Discretionary Trading**

The Company allocates a portion of the portfolio to put on hedged and unhedged positions to monetize on price discrepancies among exchanges, and speculative trades on the price movements of cryptocurrencies.

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

2.   **Accounting policies (continued)**

   2.5   **Research and development**

   In the research phase of an internal project it is not possible to demonstrate that the project will generate future economic benefits and hence all expenditure on research is recognised as an expense when it is incurred. Intangible assets are recognised from the development phase of a project if and only if certain specific criteria are met in order to demonstrate the asset will generate probable future economic benefits and that its cost can be reliably measured. The capitalised development costs are subsequently amortised on a straight line basis over their useful economic lives.

   If it is not possible to distinguish between the research phase and the development phase of an internal project, the expenditure is treated as if it were all incurred in the research phase only.

   2.6   **Borrowing costs**

   All borrowing costs are recognised in profit or loss in the year in which they are incurred.

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

2.    **Accounting policies (continued)**

2.7   **Intangible assets**

Intangible assets are recognised at their cost of acquisition less accumulated amortisation and any impairment.

The useful lives of intangible assets are assessed as either finite or indefinite.

Intangible assets with finite lives are amortised over their useful economic life and assessed for impairment whenever there is an indication that the intangible assets may be impaired.  The amortisation period and the amortisation method for an intangible asset with a finite useful life are reviewed at least at the end of each reporting period.

Intangible assets with indefinite useful lives are not amortised, but are tested for impairment annually, either individually or at the cash-generating unit level.

Gains and losses arising from derecognition of an intangible asset are measured as the difference between the net disposal proceeds and the carrying amount of the asset and are recognised in the Statement of Comprehensive Income when the asset is derecognised.

**Traded cryptocurrencies**

The Company considers that traded cryptocurrencies are an intangible asset with an indefinite useful life as the Company considers that they do not have an expiry date nor have a foreseeable limit to the period of which they will be exchanged with a willing counterparty for cash or goods and services.

After initial recongnition, cryptocurrencies are held at fair value at the reporting date. Gains or losses on revaluation are recognised through other comprehensive income and accumulated in the revaluation reserve.

When traded cryptocurrencies are utilised in business activities, the base cost is reduced by the fair value at the transaction date.

**Treasury cryptocurrencies**

The Company considers that treasury cryptocurrencies are an intangible asset with an indefinite useful life as the Company considers that they do not have an expiry date nor have a foreseeable limit to the period of which they will be exchanged with a willing counterparty for cash or goods and services. Treasury cryptocurrencies relate to CEL tokens held by the company and can be issued at the company's discretion. No costs were capitalised in respect of treasury tokens in line with the company's policy on research and development.

After initial recongnition, treasury cryptocurrencies are held at fair value at the reporting date. Gains or losses on revaluation are recognised through other comprehensive income and accumulated in the revaluation reserve.

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

2.    **Accounting policies (continued)**

   2.8   **Current and deferred taxation**

   Tax is recognised in the Statement of Comprehensive Income, except that a change attributable to an item of income or expense recognised as other comprehensive income is also recognised directly in other comprehensive income.

   The current income tax charge is calculated on the basis of tax rates and laws that have been enacted or substantively enacted by the reporting date in the countries where the company operates and generates taxable income.

   Deferred tax is recognised in respect of all timing differences between taxable profits and profits reported in the financial statements.

   Unrelieved tax losses and other deferred tax assets are recognised when it is probable that they will be recovered against the reversal of deferred tax liabilities or other future taxable profits.

   Deferred tax is measured using the tax rates and laws that have been enacted or substantively enacted by the reporting date and that are expected to apply to the reversal of the timing difference.

   2.9   **Valuation of investments**

   Investments in listed company shares are remeasured to market value at each reporting date. Gains and losses on remeasurement are recognised in profit or loss for the period.

   Other investments which are not publicly traded and where fair value cannot be measured reliably are measured at cost less impairment. The impairment loss is calculated as the difference between the asset's carrying amount and the best estimate of the amount that the entity would receive for the asset if it were to be sold at the reporting date.

   2.10  **Debtors**

   Short term debtors are measured at transaction price, less any impairment.

   Other financial assets, such as loans receivable or loan collateral, are measured initially at fair value, net of transaction costs, and are measured subsequently at amortised cost using the effective interest method, less any impairment.

   Financial assets receivable in cryptocurrencies are marked to market at the reporting date with any corresponding gain or loss recognised in the Statement of Comprehensive Income.

   2.11  **Cash and cash equivalents**

   Cash is represented by cash in hand and deposits with financial institutions repayable without penalty on notice of not more than 24 hours.

   Cash balances held by cryptocurrency exchanges are recognised within intangible assets until paid to the Company.

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

2.    **Accounting policies (continued)**

### 2.12 Creditors

Short term creditors are measured at transaction price.

Other financial liabilities, such as customer deposits or loan collateral, are measured initially at fair value, net of transaction costs, and are measured subsequently at amortised cost using the effective interest method, less any impairment.

Financial liabilites payable in cryptocurrencies are marked to market at the reporting date with any corresponding gain or loss recognised in the Statement of Comprehensive Income.

### 2.13 Financial instruments

The Company primarily enters into basic financial instrument transactions that result in the recognition of financial assets and liabilities like trade and other debtors and creditors, loans from other third parties, loans to related parties and investments in ordinary shares.

Financial assets that are measured at cost and amortised cost are assessed at the end of each reporting period for objective evidence of impairment. If objective evidence of impairment is found, an impairment loss is recognised in the Statement of Comprehensive Income.

Derivatives, including forward contracts, are not basic financial instruments. Derivatives are initially recognised at fair value on the date a derivative contract is entered into and are subsequently re-measured at their fair value. Changes in the fair value of derivatives are recognised in the Statement of Comprehensive Income. The company does not currently apply hedge accounting for interest rate and foreign exchange derivatives.

### 2.14 Comparatives

The comparatives shown are for the 13 month period ended 28 February 2019.

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

3.    **Judgments in applying accounting policies and key sources of estimation uncertainty**

The preparation of the financial statements requires management to make judgments, estimates and assumptions that affect the amounts reported for assets and liabilities as at the reporting date and the amounts reported for revenues and expenses during the year. It also requires management to exercise judgment in applying the company's accounting policies. As such, the nature of estimation means that actual outcomes could differ from those estimates.

The following are the company's key sources of estimation uncertainty:

**Valuation of treasury and traded cryptocurrencies**

Cryptocurrencies held within intangible assets are carried at fair value with changes being recognised through other comprehensive income.

Loans receivable, customer desposits and loan collateral based upon cryptocurrencies are also carried at the recoverable or payable amount if such a balance were to be settled at the reporting date with changes being recognised through the Statement of Comprehensive Income.

Fair values are based on the closing valuation at the reporting date provided by readily available market information for each cryptocurrency.

**Impairment of debtors**

The company makes an estimate of the recoverable value of trade and loans receivable. When assessing impairment, management considers factors including the current credit rating of the debtor, the ageing profile and historical experience.

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

4.    **Turnover**

An analysis of turnover by class of business is as follows:

|  | 2020<br>$ | 2019<br>$ |
|---|---|---|
| CEL token sales | 5,721,556 | 25,219,787 |
| Exchange lending | 5,327,287 | 402,115 |
| Retail lending | 1,443,285 | 200,940 |
| Institutional lending | 2,839,871 | 125,535 |
|  | 15,331,999 | 25,948,377 |

Analysis of turnover by country of destination:

|  | 2020<br>$ | 2019<br>$ |
|---|---|---|
| United Kingdom | 333,430 | 778,655 |
| Rest of Europe | 949,002 | 2,296,326 |
| Rest of the world | 14,049,567 | 22,873,396 |
|  | 15,331,999 | 25,948,377 |

5.    **Other operating income**

|  | 2020<br>$ | 2019<br>$ |
|---|---|---|
| Utilisation of treasury cryptocurrencies | 1,448,949 | - |
| Other operating income | 3,295 | 5,088 |
|  | 1,452,244 | 5,088 |

6.    **Operating (loss)/profit**

The operating (loss)/profit is stated after charging:

|  | 2020<br>$ | 2019<br>$ |
|---|---|---|
| Research & development charged as an expense | 917,887 | 11,990 |

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

7.  **Auditor's remuneration**

| | 2020<br>$ | 2019<br>$ |
|---|---|---|
| Fees payable to the Company's auditor and its associates for the audit of the Company's annual financial statements | 205,250 | - |

8.  **Employees**

The average monthly number of employees, including the directors, during the year was as follows:

| | 2020<br>No. | 2019<br>No. |
|---|---|---|
| Directors | 2 | 2 |

9.  **Income from investments**

| | 2020<br>$ | 2019<br>$ |
|---|---|---|
| Net realised losses and income from investments | (635,412) | - |

10. **Interest payable and similar expenses**

| | 2020<br>$ | 2019<br>$ |
|---|---|---|
| Rewards paid to community | 8,973,517 | 369,276 |
| Other loan interest payable | 771,999 | - |
| | 9,745,516 | 369,276 |

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

11. **Taxation**

|  | 2020 $ | 2019 $ |
|---|---|---|
| **Deferred tax** | | |
| On unrealised movements on cryptocurrency debtors and creditors | (5,407,330) | 1,211,811 |
| On unrealised losses on investments | (115,489) | - |
| On unrealised losses on derivatives | (82,670) | - |
| **Total deferred tax** | (5,605,489) | 1,211,811 |
| **Taxation on (loss)/profit on ordinary activities** | (5,605,489) | 1,211,811 |

**Factors affecting tax charge for the year/period**

The tax assessed for the year/period is higher than (2019 - higher than) the standard rate of corporation tax in the UK of  19% (2019 -  19%). The differences are explained below:

|  | 2020 $ | 2019 $ |
|---|---|---|
| Loss on ordinary activities before tax | (39,829,087) | (281,066) |
| Loss on ordinary activities multiplied by standard rate of corporation tax in the UK of 19% (2019 - 19%) | (7,567,527) | (53,403) |
| **Effects of:** | | |
| Expenses not deductible for tax purposes | 1,474,533 | 248,546 |
| Non-taxable income | - | (967) |
| Taxable transfers between reserves | 27,620 | - |
| Unrelieved tax losses carried forward | 459,885 | 1,017,635 |
| **Total tax charge for the year/period** | (5,605,489) | 1,211,811 |

**Factors that may affect future tax charges**

There were no factors that may affect future tax charges.

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

12.    **Intangible assets**

| | Treasury crypto currencies | Traded crypto currencies | Total |
|---|---|---|---|
| | $ | $ | $ |
| **Cost** | | | |
| At 1 March 2019 | 6,668,649 | 45,000,832 | 51,669,481 |
| Additions | - | 620,686,946 | 620,686,946 |
| Disposals | (145,366) | (456,995,527) | (457,140,893) |
| Revaluation surplus | 15,061,768 | 62,527,562 | 77,589,330 |
| At 29 February 2020 | 21,585,051 | 271,219,813 | 292,804,864 |
| **Net book value** | | | |
| At 29 February 2020 | 21,585,051 | 271,219,813 | 292,804,864 |
| **At 28 February 2019** | 6,668,649 | 45,000,832 | 51,669,481 |

13.    **Fixed asset investments**

| | Listed investments | Other fixed asset investments | Total |
|---|---|---|---|
| | $ | $ | $ |
| **Cost or valuation** | | | |
| At 1 March 2019 | 1,057,471 | 1,065,623 | 2,123,094 |
| Additions | - | 100,100 | 100,100 |
| Revaluations | (325,374) | - | (325,374) |
| Amounts written off | - | (559,590) | (559,590) |
| At 29 February 2020 | 732,097 | 606,133 | 1,338,230 |

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

14. **Debtors**

|  | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| Trade debtors | 549,645 | 34,225 |
| Loans receivable | 139,615,333 | 12,960,424 |
| Loan collateral receivable | 108,844,116 | - |
| Other debtors | 947,585 | - |
| Prepayments and accrued income | 205,131 | - |
| Amounts owed by group undertakings | 512,128 | 1,082,061 |
|  | 250,673,938 | 14,076,710 |

15. **Current asset investments**

|  | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| Unlisted investments | 48,554,547 | - |
|  | 48,554,547 | - |

16. **Cash and cash equivalents**

|  | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| Cash at bank and in hand | 3,924,722 | 1,026,610 |
|  | 3,924,722 | 1,026,610 |

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

17.    **Creditors: Amounts falling due within one year**

|  | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| Trade creditors | 235,059 | 1,600 |
| Customer deposits | 356,392,414 | 36,553,912 |
| Loan collateral payable | 104,912,417 | 18,131,750 |
| Other loans | 43,000,000 | - |
| Other creditors | 1,380,456 | - |
| Accruals and deferred income | 620,426 | 5,786,986 |
|  | 506,540,772 | 60,474,248 |

The amount included in other loans is secured against the amount included in loan collateral receivable.

18.    **Creditors: Amounts falling due after more than one year**

|  | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| Other loans | 44,573,639 | - |
|  | 44,573,639 | - |

The amount included in other loans is secured against the amount included in loan collateral receivable.

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

19.    **Financial instruments**

| | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| **Financial assets** | | |
| Financial assets measured at fair value through profit or loss | 267,892,558 | 7,337,064 |
| Financial assets that are debt instruments measured at amortised cost | 32,469,026 | 8,862,740 |
| | 300,361,584 | 16,199,804 |
| **Financial liabilities** | | |
| Financial liabilities measured at fair value through profit or loss | 401,051,289 | 53,162,982 |
| Financial liabilities measured at amortised cost | 149,442,696 | 1,524,280 |
| | 550,493,985 | 54,687,262 |

Financial assets measured at fair value through profit or loss comprise investments, derivatives receivable and debtors receivable in cryptocurrencies.

Financial assets that are debt instruments measured at amortised cost comprise trade debtors, other fiat debtors and amounts owed by group undertakings.

Other financial liabilities measured at fair value through profit or loss comprise derivatives payable and creditors payable in cryptocurrencies.

Financial liabilities measured at amortised cost comprise trade creditors and other fiat creditors.

**CELSIUS NETWORK LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

20. **Deferred taxation**

|  | 2020<br>$ |
|---|---|
| At beginning of year | (2,865,326) |
| Charged to profit or loss | 5,605,489 |
| Charged to other comprehensive income | (14,714,353) |
| **At end of year** | (11,974,190) |

The provision for deferred taxation is made up as follows:

|  | 29 February<br>2020<br>$ | 28 February<br>2019<br>$ |
|---|---|---|
| On revaluation of intangible assets | (16,367,868) | (1,653,515) |
| On unrealised movements on cryptocurrency debtors and creditors | 4,195,519 | (1,211,811) |
| On unrealised losses on investments | 115,489 | - |
| On unrealised losses on derivatives | 82,670 | - |
|  | (11,974,190) | (2,865,326) |

21. **Share capital**

|  | 29 February<br>2020<br>$ | 28<br>February<br>2019<br>$ |
|---|---|---|
| **Allotted, called up and fully paid** |  |  |
| 1 (2019 - 1) Ordinary share of £1.00 | 1 | 1 |

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS**
**FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

**22.    Reserves**

**Revaluation reserve**

This reserve is comprised of the unrealised surplus on revaluation of intangible assets net of deferred taxation.

**Other reserves**

Due to the high level of unrealised gains and losses on assets and liabilites measured in cryptocurrencies, the directors consider it more appropriate to recognise the non-distributable reserves as seperate other reserves and have restated the comparatives accordingly.

The other reserves are comprised of unrealised gains and losses on cryptocurrency assets and liabilities, investments and derivative financial instruments net of deferred taxation.

**23.    Capital commitments**

At the reporting date, the company had capital commitments for the purchase of cryptocurrencies to be acquired as follows:

|  | 29 February 2020 $ | 28 February 2019 $ |
|---|---|---|
| Contracted for but not provided in these financial statements | 21,347,068 | 1,761,476 |
|  | 21,347,068 | 1,761,476 |

**24.    Transactions with directors**

During the previous period, the company provided a loan of $1,836,000 to one of the directors. This loan was unsecured and repayable on demand. This loan was repaid in full prior to 28 February 2019.

Interest was charged on the loan at an annual rate of 6% and interest paid in the previous period was $33,541.

**25.    Related party transactions**

The company is a wholly owned subsidiary within a group and accordingly has taken advantage of the exemptions provided by "Financial Reporting Standard 102" not to disclose transactions with the other group entities including its parent and fellow subsidiary undertakings.

**26.    Post balance sheet events**

Subsequent to the reporting date, the company disposed of its current asset investments and realised a loss on disposal of approximately $11,000,000.

**CELSIUS NETWORK LIMITED**

---

**NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 29 FEBRUARY 2020**

---

27.    **Controlling party**

The ultimate parent company is Celsius Network Inc., incorporated in Delaware, USA, which is controlled by A. Mashinsky by virtue of his shareholding.

This document was delivered using electronic communications and authenticated in accordance with the registrar's rules relating to electronic form, authentication and manner of delivery under section 1072 of the Companies Act 2006.