**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
         sam.hershey@whitecase.com
         jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: mandolina@whitecase.com
         gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**DECLARATION OF IGNAT TUGANOV IN SUPPORT OF THE
MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO (I) CERTIFY THE CLASS OF ACCOUNT HOLDERS ASSERTING
NON-CONTRACT CLAIMS AGAINST THE DEBTORS, (II) APPOINT
THOMAS DIFIORE, REBECCA GALLAGHER, AND IGNAT TUGANOV AS
THE CLASS REPRESENTATIVES, AND (III) APPOINT WHITE & CASE LLP AS
CLASS COUNSEL, IN EACH CASE PURSUANT TO BANKRUPTCY RULE 7023**

I, Ignat Tuganov, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I submit this declaration in support of the *Motion of the Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in Each Case Pursuant to Bankruptcy Rule 7023* (the "**Motion**").[2]

2. I am and have been an account holder at Celsius (as defined below) at all times relevant to the Motion and the Class Claim. I am a retail investor.

3. I have been advocating for maximum returns to account holders in the chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**Celsius**").

4. I was a resident of Russia when I first became an account holder at Celsius. As of October 2021, I am a resident of Cyprus.

5. I am the founder and CEO of Clain, a leading blockchain analytics company. I have a background in crypto-related analytics and compliance.

6. I have been a Celsius Earn account holder since February 2020. After making an initial transfer to CNL in February 2020, I continued to transfer digital assets to CNL in 2020 and 2021.

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

7.     At the time I became a Celsius account holder, I was familiar with multiple platforms on which I could deploy my crypto assets from my work in blockchain. I chose Celsius because I was persuaded by CNL's public statements that it shared 80% of its revenue with account holders, did not issue uncollateralized loans, did not make risky investments, was regulatory compliant, and was a safe and reliable platform. I saw or heard these statements in AMAs and other interviews with Mr. Mashinsky, such as on the Digital Asset News YouTube channel at various times during 2020 and 2021. In connection with my use of Celsius's services, I primarily relied on Celsius press releases and other content CNL and its representatives published on Celsius's website and elsewhere on the Internet for information about Celsius. I occasionally watched or read summaries of AMAs. I have never met or spoken directly with Mr. Mashinsky or any other senior personnel at CNL.

8.     The fact that Mr. Mashinsky, the founder and CEO of CNL, made these statements and representations repeatedly in public gave me comfort that they were credible and convinced me that Celsius was a safe and reliable platform. I believed and relied on such statements (now known to be misrepresentations and omissions) in deciding to transfer digital assets to CNL and to remain a Celsius account holder.

9.     I also performed my own research through the blockchain and attempted to confirm that Celsius was moving significant BTC and ETH to customers. Because many of Celsius's transactions were recorded on its own internal ledger, however, I could not ascertain a significant amount of information from the blockchain, including Celsius's obligations and the nature of those obligations. The only information I could verify was the amount of assets held at Celsius, but not the amount of its obligations to account holders or others. I could not determine whether those assets were collateral for, or exceeded the outstanding amounts under, any loans.

10. I believed and relied on Mr. Mashinsky's promise that CNL would pass 80% of its revenue back to account holders. Based on this promise, I believed that CNL would provide high yields to its customers. I also found it relevant that Celsius offered top-of-the-market interest rates to customers, as compared to other cryptocurrency companies, and claimed to generate the revenue to pay for those interest rates. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that Celsius did not pass 80% of its revenue back to its customers.

11. I believed and relied on Mr. Mashinsky's and CNL's repeated public statements that all customer obligations were secure and that Celsius was completely collateralized, always had sufficient funds or collateral to meet its obligations, and did not issue uncollateralized loans. I believed and relied on Mr. Mashinsky's statements that a "run on the bank" could never occur at Celsius because, unlike a traditional bank, which holds funds totalling 20-30% of its obligations, Celsius held 100% of collateral at all times. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that Celsius issued uncollateralized loans.

12. I believed and relied on Mr. Mashinsky's and CNL's repeated statements that Celsius did not make risky investments. I would not expect a reputable cryptocurrency company to engage in unsecured lending or other risky strategies with assets that retail account holders had transferred to it. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that Celsius engaged in risky directional trading or swing trading.

13. I believed and relied on the Celsius website and CNL's and Mr. Mashinsky's public statements that CNL was regulatory compliant across multiple jurisdictions and registered multinationally. I believed that Celsius held licenses in Delaware and with the Financial Conduct Authority of the United Kingdom (the "**FCA**"). Celsius's regulatory compliance was fundamental to my decision to transfer cryptocurrency to CNL. Prior to the commencement of these Chapter

4

11 Cases, I had no knowledge that the FCA had accused Celsius of operating an unlicensed investment scheme.

14. At the time of the purported migration from CNL to Celsius Network LLC ("**LLC**") in the summer of 2021, I remember being required to accept revised Terms of Use through an in-app pop-up screen. I read the pop-up and understood that the assets then held at CNL corresponding to my account balance would be moved to LLC. I learned that LLC was insolvent after the Petition Date. Had I known that CNL was transferring its obligations but not all of the assets associated with those obligations to LLC, I would not have agreed to the revised Terms of Use and would have then withdrawn my assets from CNL. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that the "migration" was in response to a FCA investigation. Had I known that the FCA was investigating CNL and had accused it of operating an illegal investment scheme, I then would have withdrawn from the Celsius platform.

15. The statements made by CNL and Mr. Mashinsky, as well as the information and statements on Celsius's website and in its promotional materials, were important to my decision to use and/or continue to use Celsius's services. I was convinced by Mr. Mashinsky's and CNL's public statements that I could entrust my assets with Celsius. I would not have transferred my assets to CNL or kept my assets on the platform had CNL and Mr. Mashinsky not made these assurances or if I had known the truth.

16. As a result of my reliance on these misrepresentations and omissions, I now stand to lose a significant amount as a result of these Chapter 11 Cases that I would not have lost had I not transferred my cryptocurrency to CNL.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  May 16, 2023
              Limassol, Cyprus

_____
Ignat Tuganov
Proposed Class Representative