AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
Jeffrey A. Latov
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1001
mhurley@akingump.com
dchapman@akingump.com
jlatov@akingump.com

Elizabeth D. Scott (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com

*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

***EX PARTE* MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 105 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016 AUTHORIZING THE <u>EXAMINATION OF RHODIUM ENTERPRISES, INC.</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893) and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................1

JURISDICTION AND VENUE ................................................................................................3

RELEVANT BACKGROUND ..................................................................................................4

RELIEF REQUESTED...............................................................................................................9

BASIS FOR RELIEF .................................................................................................................9

      I.       The Debtors Are Entitled to Discovery from Rhodium under Bankruptcy
              Rules 2004 and 9016...........................................................................................9

      II.     Expedited Procedures for Resolving Discovery Disputes Are Appropriate. .........12

RESERVATION OF RIGHTS ................................................................................................13

NOTICE......................................................................................................................................14

NO PRIOR REQUEST .............................................................................................................14

CONCLUSION...........................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Drexel Burnham Lambert Grp., Inc.*,
   123 B.R. 702 (Bankr. S.D.N.Y. 1991) ...............................................................................11

*In re Ecam Publ'ns, Inc.*,
   131 B.R. 556 (Bankr. S.D.N.Y. 1991) ...............................................................................11

*In re Enron Corp.*,
   281 B.R. 836 (Bankr. S.D.N.Y. 2002) ...............................................................................11

*In re Hughes*,
   281 B.R. 224 (Bankr. S.D.N.Y. 2002) ...............................................................................10

*In re Madison Williams & Co., LLC*,
   No. 11-15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ...........................................10

*In re Metiom, Inc.*,
   318 B.R. 263 (S.D.N.Y. 2004) ..........................................................................................11

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*,
   339 F.2d 440 (2d Cir. 1964) .............................................................................................12

*In re Recoton Corp.*,
   307 B.R. 751 (Bankr. S.D.N.Y. 2004) .........................................................................10, 11

*In re Riding*,
   44 B.R. 846 (Bankr. D. Utah 1984) ..................................................................................12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
   Madoff)*,
   No. 09-11893 (SMB), 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014) ........................10

*Sussman v. Bank of Israel*,
   56 F.3d 450 (2d Cir. 1995) ...............................................................................................12

*United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave.,
   Brooklyn, N.Y.*,
   55 F.3d 78 (2d Cir. 1995) .................................................................................................12

**Statutes**

11 U.S.C. § 105(a) .............................................................................................1, 4, 12

28 U.S.C. § 157 ....................................................................................................3

ii

28 U.S.C. § 1334 .................................................................................................................3

28 U.S.C. § 1408 .................................................................................................................3

28 U.S.C. § 1409 .................................................................................................................3

**Other Authorities**

9 COLLIER ON BANKRUPTCY (16th ed. 2023) .................................................................14

Fed. R. Bankr. P. 2004(a), (b) ................................................................................ *passim*

Fed. R. Bankr. P. 9006(c)(1) ...............................................................................................12

Fed. R. Bankr. P. 9016 ..............................................................................................1, 4, 9

Celsius Network LLC and each of its associated debtors and debtors in possession (the "Debtors" or "Celsius"), in the above-captioned chapter 11 cases (the "Chapter 11 Cases") by and through their undersigned counsel, respectfully submit this *ex parte* motion (the "Motion") for entry of an order authorizing the examination of Rhodium Enterprises, Inc. ("Rhodium") pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**PRELIMINARY STATEMENT**

1.      Rhodium's appetite for gamesmanship in these cases apparently is unsated. Rhodium commenced a supposedly "emergency" adversary proceeding against Celsius late last month to head off Celsius' prior planned Rule 2004 examination.  Now, after Rhodium's bid to railroad Celsius and this Court into premature, pre-answer and pre-discovery summary judgment motion briefing failed, Rhodium has suddenly reversed course.  On Thursday, May 18, 2023, with no prior notice to or discussion with Celsius, Rhodium unilaterally dismissed its "urgent" Complaint,[2] apparently to avoid having to respond to litigation discovery that Celsius served promptly after the initial conference with this Court on May 2, 2023.  Celsius now seeks authority to proceed with a Rule 2004 examination of Rhodium concerning its apparent bad faith conduct and breaches of duty to Celsius.

2.      As the Court is aware, Celsius invested $50 million in Rhodium in 2021 through a Simple Agreement for Future Equity ("SAFE").  *See* Declaration of Mitchell P. Hurley filed contemporaneously herewith (the "Hurley Decl.") Ex. 1.  On or around October 3, 2022, SilverSun

---

[2] Compl., *Rhodium Enters., Inc. v. Celsius Mining LLC*, Adv. Proc. No. 23-01101-mg, ECF No. 1 (the "Complaint").

1

Technologies Inc. ("SilverSun") filed a form 8-K (the "October 8-K") announcing a planned

merger with Rhodium (the "Transaction"), which purported to provide Celsius only a fraction of

the consideration to which it is entitled under the SAFE in connection with the Transaction.  By

letter dated October 27, 2022, Celsius advised Rhodium that the treatment of Celsius described in

the 8-K breached the terms of the SAFE.  *See* Hurley Decl. Ex. 2. Celsius also requested a

production of documents from Rhodium in its October 27 letter—and reiterated that request

multiple times since—but Rhodium has yet to produce a single responsive document.  *Id.*

3.      On April 21, 2023—nearly six months after receiving Celsius' letter, after the close

of business, and without any prior notice to Celsius—Rhodium filed its Complaint concerning the

claims Celsius first articulated on October 27, 2022.  Despite having told Celsius repeatedly, and

for months, that Rhodium could (and would) close the Transaction regardless of Celsius' claims,

Rhodium suddenly asserted in April that closing the Transaction could be "legally or practically

impossible" unless the Court immediately rendered judgment on Celsius' claims.  *See* Apr. 24,

2023 Letter Requesting Pre-Motion Conference, *Rhodium Enters., Inc. v. Celsius Mining LLC*,

Adv. Proc. No. 23-01101-mg, ECF No. 7 [hereinafter Apr. 24, 2023 Letter].  Rhodium advised that

it would file a pre-answer, pre-discovery motion for summary judgment, and demanded it be

resolved by the Court on or before June 15, 2023.  *Id.*

4.      Rhodium never made more than a cursory effort to explain how the pendency of

Celsius' claims could "legally" prevent the Transaction from closing, or attempt to justify having

told Celsius the exact opposite for many months.  In fact, Rhodium's brand new claim that an

"emergency" exists appears to have been a pretext.  Rhodium's real motivations for filing its

Complaint were to (i) head-off a Rule 2004 examination that Celsius had previously advised it

intended to undertake and (ii) give Rhodium the chance to abandon the Transaction if it appeared that the SAFE would actually be enforced according to its terms.

5.      During a pre-motion conference on May 2, 2023, the Court advised Rhodium that Rhodium could file a motion for summary judgment if it wished, but the motion would be considered on a standard schedule—after Celsius had the opportunity to answer or otherwise respond to the Complaint and following discovery in the ordinary course.  The Court entered a scheduling order consistent with that directive, and Celsius promptly served interrogatories and document requests on Rhodium.  Celsius also prepared to respond to the Complaint by the May 22, 2023 deadline.  On May 18, 2023, the parties convened the settlement video-conference mandated by the Case Management and Scheduling Order ("CMO"), and Rhodium mentioned nothing about any plans to withdraw its Complaint.  A few hours later, Rhodium unilaterally dismissed its supposedly "emergency" adversary Complaint, presumably in an effort to forestall responding to Celsius' discovery and further delay any inquiry concerning SilverSun, the Transaction, or the SAFE.

6.      Rhodium's continuing attempts to evade and delay Celsius' investigation should not be rewarded.  Celsius respectfully asks the Court to enter the order attached as Exhibit A (i) authorizing Celsius to proceed with a Rule 2004 examination and (ii) providing expedited procedures to resolve any disputes concerning Rhodium's responses to discovery served by Celsius in connection with the Rule 2004 examination.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

8.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

9.      The bases for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rules 2004 and 9016.

## RELEVANT BACKGROUND

10.     Celsius Core LLC (now known as Debtor Celsius Mining LLC) and Rhodium are parties to a pre-petition SAFE dated June 2, 2021 (the "Celsius SAFE"). *See* Hurley Decl. Ex. 1. Pursuant to the Celsius SAFE, Celsius paid Rhodium $50,000,000 (the "Purchase Price") for the right to receive shares of stock worth **_at least_** $50 million in the event Rhodium enters into certain transactions identified in the SAFE. Upon the occurrence of a "Listing Event,"[3] the Celsius SAFE converts into shares "equal to" $50 million, with the number of shares required to equal the Purchase Price calculated based on the "price per share . . . upon the closing of the Listing Event" multiplied by the 85% discount rate. Upon the occurrence of a "Liquidity Event," Celsius is entitled to share proceeds "equal to" the $50 million Purchase Price, without reference to the Discount Rate. Rhodium now plans to enter into a triggering transaction with SilverSun, but purports to supply consideration to Celsius worth only a fraction of the $50 million to which Celsius is entitled.

11.     The October 8-K noted that the Transaction will be accomplished through a sequence of mergers (each, a "Merger") between Rhodium and certain subsidiaries of SilverSun. The October 8-K asserted that the Transaction would trigger SAFE rights, but it indicated that the number of shares in the merged entity to be provided to Celsius would be calculated not based on the actual value of that entity but upon a value "agreed" to by Rhodium and SilverSun. Despite the Merger having the hallmarks of a Listing Event, the October 8-K purported to calculate the

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Celsius SAFE.

number of shares due to Celsius without applying the 85% Discount Rate, thus depriving Celsius of the share premium to which it is entitled.

12.    Even more significantly, Rhodium and SilverSun set the so-called "Rhodium Valuation" at $650,375,000, despite indications that the new company's actual value is far less. For example, SilverSun's publicly traded stock price suggests that the merged company will be worth substantially less than $250 million.[4]  If the Rhodium Valuation were nevertheless used to calculate the number of shares due to Celsius, instead of delivering enough shares to equal $50 million plus a premium, as the SAFE requires, Rhodium would deliver an amount of shares equal to less than $19 million, shortchanging Celsius and its creditors by $38 million or more. Remarkably, Rhodium never has sought to defend the Rhodium Valuation as reflecting fair value for the merged company, arguing instead that it is permitted to set Rhodium's value arbitrarily, and without reference to fair value, as long as the valuation it contrives does not exceed $3 billion.

13.    In a letter dated October 27, 2022, Celsius informed Rhodium that the treatment of SAFEs in connection with the Transaction described by the October 8-K was not consistent with Celsius' rights under the Celsius SAFE.  *See* Hurley Decl. Ex. 2.  Celsius additionally requested from Rhodium certain documents and information relating to the Transaction, including, *inter alia*, documents and information concerning Rhodium's rationale for the proposed distributions to SAFE holders and the Rhodium Valuation upon which such distribution amounts had been calculated.  *See id.*  Celsius also advised it would commence a Rule 2004 examination if Rhodium refused to produce the information requested.

---

[4] SilverSun's current trading price is not a perfect proxy for the value of the merged company, including because SilverSun shareholders will receive two kinds of consideration in the Transaction *in addition* to shares in the new company: (i) a substantial cash dividend and (ii) ownership of a company to be spun off from SilverSun in connection with the Transaction.  Backing that consideration out of SilverSun's current trading price would imply an even lower value for the remaining post-merger company.

14.     Although Celsius agreed to engage in settlement discussions with Rhodium, it repeatedly reiterated its request for documents and noted that it would seek 2004 relief if documents were not produced.  Celsius also advised that the Unsecured Creditors' Committee (the "UCC") would be involved in considering any proposed settlement.  On or around January 9, 2023, Celsius relayed diligence requests from the UCC.  On or around January 20, 2023, Rhodium provided narrative responses to the UCC's diligence request, but produced no documents.  During the course of the parties' discussions, and contrary to recent claims before this Court, Rhodium repeatedly asserted that it could, and would, close the Merger with or without first resolving Celsius' claims based on its SAFE.  For example, on February 14, 2023, Rhodium's CFO emailed Celsius to warn that "*we will not delay our merger under any circumstances*."  Hurley Decl. Ex. 3 (emphasis added).

15.     As the Court is aware, Celsius and the UCC were engaged in a number of critical, time consuming activities in these bankruptcy cases in early 2023.  Nevertheless, they continued to consider the limited information supplied by Rhodium and continued to analyze potential paths to settlement of Celsius' claims against Rhodium.  Ultimately, they concluded that the terms of settlement then under discussion were not acceptable.  On March 10, 2023, Celsius so advised Rhodium by telephone, and made a counteroffer, which Rhodium asked Celsius to put in writing. Meanwhile, on March 13, 2023, without notice to Celsius, SilverSun filed an additional 8-K (the "March 8-K"), in which it announced the parties to the Merger had agreed to extend the date by which the Transaction could be voluntarily terminated or abandoned by either party if the closing of the First Merger did not occur from March 31, 2023 to June 30, 2023.  On March 16, 2023, Celsius described its settlement proposal to Rhodium in writing as Rhodium had requested earlier in the month.

6

16.     Rhodium did not agree to Celsius' proposal or make a counter-offer.  On April 3,

2023, Celsius sent a letter to Rhodium reiterating its concerns with respect to the Transaction's

treatment of SAFEs, renewing the requests for documents it initially propounded in October 2022,

and adding certain additional requests.  *See* Hurley Decl. Ex. 4.  Celsius again advised that it

planned to proceed with Rule 2004 discovery absent agreement with Rhodium.  Rhodium did not

respond substantively to Celsius' April 3 letter until April 14, 2023.  In its April 14 letter, Rhodium

disputed Celsius' interpretation of the SAFE and claimed that none of Celsius' requests had "a

sufficient relationship to Celsius' bankruptcy estates" to warrant any disclosures by Rhodium.

17.     In an effort to save the time and expense of motion practice, by letter dated April

19, 2023, Celsius asked Rhodium to consent to a Rule 2004 examination, and it enclosed a

proposed stipulation.  *See* Hurley Decl. Ex. 5.  Celsius asked Rhodium to respond by 12:30 Eastern

time on April 21, 2023.  On the morning of April 21, 2023, Rhodium promised by email that it

would "get back to you asap today (and in no event later than COB)."  *See* Hurley Decl. Ex. 6.

Instead, at 8:04 p.m. on April 21, 2023, Rhodium shared a copy of its Complaint, which it hastily

filed to preempt Celsius' investigation and avoid inquiry into the merger and valuation.  In its

Complaint, Rhodium sought a declaration that claims first asserted in writing by Celsius on

October 27, 2022 are not meritorious.

18.     Despite having waited nearly six months after Celsius' letter before filing its

Complaint, Rhodium suddenly claimed, for the first time, that Celsius' claims must be resolved

before June 30, 2023, or closing the Merger could be "legally or practically impossible."  *See* Apr.

24, 2023 Letter.  Rhodium's brand new claim was the precise opposite of what Rhodium had been

telling Celsius for nearly six months, when it had argued that it could, and would, close the deal

with or without a resolution of Celsius' claims.  *See, e.g.*, Hurley Decl. Ex. 3 (stating that Rhodium

would "not delay [its] merger under any circumstances"). Notably, Rhodium never has denied that it sought for months to lead Celsius to believe Rhodium could close the Transaction over Celsius' objection. *See, e.g.*, Hurley Decl. Ex. 9, *passim*.

19.     After commencing its adversary proceeding, Rhodium sought to immediately file a motion for summary judgment, before Celsius could file an answer and counterclaims or take any discovery, insisted that Celsius respond just seven days later, and asked the Court to enter judgment on or before June 15, 2023. *See* Apr. 24, 2023 Letter. During a pre-motion conference on May 2, 2023, among other things, Rhodium confirmed that it contends it can set the Rhodium Valuation wherever it wants (up to $3 billion) regardless of actual fair value. *See* Hurley Decl. Ex. 9 at 23:14-24:13. The Court advised that it would consider any motion filed by Rhodium in the ordinary course and not on the expedited schedule Rhodium preferred and ordered the parties to meet and confer concerning a standard CMO. *See* Hurley Decl. Ex. 9 at 32:10-33:6.

20.     The parties did so, and submitted, a proposed CMO on May 3, 2023, which the Court entered on May 4, 2023. *See* Case Management and Scheduling Order, *Rhodium Enters., Inc. v. Celsius Mining LLC*, Adv. Proc. No. 23-01101-mg, ECF No. 23. The so-ordered CMO also provided for intervention in the action by the UCC. Celsius promptly served its first sets of interrogatories and document requests on May 3, 2023, *see* Hurley Decl. Exs. 7 & 8, and began to prepare an answer and counterclaims for filing on the agreed and so-ordered deadline of May 22, 2023. At 12:30 p.m. Eastern Time on May 18, 2023, Celsius, the UCC and Rhodium engaged in the face-to-face settlement conference mandated by paragraph 8 of the CMO. At no point during the settlement video-conference did Rhodium so much as mention that it planned to withdraw its Complaint. But just hours later, Rhodium purported to unilaterally dismiss its adversary proceeding, presumably at least in part to avoid having to respond to Celsius' discovery requests,

and further forestall any inquiry into the made-up Rhodium Valuation upon which Rhodium hopes to rely in order to pay Celsius a fraction of the consideration to which it is entitled in connection with the Merger.

21.     Unfortunately, Rhodium's extraordinary appetite for gamesmanship has resulted in exactly what Rhodium apparently intended:  a substantial delay in Celsius' ability to gather evidence concerning Rhodium's breaches of contract and other misconduct relating to the SAFE and Merger.  Celsius respectfully asks the Court to grant its application to proceed with a Rule 2004 motion promptly and approve expedited dispute resolution procedures to limit Rhodium's ability to engage in further tactical delays.

## RELIEF REQUESTED

22.     Celsius requests that the Court enter an order pursuant to Rules 2004 and 9016 of the Bankruptcy Rules, substantially in the form of the Proposed Order attached to this Motion as Exhibit A, permitting Celsius to conduct an examination of Rhodium.  Celsius further requests that the Court establish a framework for the prompt resolution of any discovery disputes, as described below and in Exhibit A, that closely tracks the framework to which the parties agreed in connection with the CMO that was submitted to and approved by the Court in Rhodium's adversary proceeding.

## BASIS FOR RELIEF

I.     **The Debtors Are Entitled to Discovery from Rhodium under Bankruptcy Rules 2004 and 9016.**

23.     Bankruptcy Rule 2004 provides, in relevant part, that "[o]n motion of any party in interest, the court may order examination of any entity" related to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the

administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P.

2004(a), (b).

24. The purpose of Bankruptcy Rule 2004 is to "assist a party in interest in determining

the nature and extent of the bankruptcy estate, revealing assets, examining transactions and

assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr.

S.D.N.Y. 2004). Rule 2004 permits discovery "to determine the extent of the estate's assets and

recover those assets for the benefit of creditors." *In re Madison Williams & Co., LLC*, No. 11-

15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Jan. 7, 2014); *see also Sec. Inv'r Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, No. 09-11893 (SMB), 2014 WL

5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014) ("The underlying purpose of Rule 2004 is to 'allow

the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate.'"

(quoting *Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362, 364

(S.D.N.Y. 1984))).

25. The scope of discovery allowed under Bankruptcy Rule 2004 is "'very broad and

great latitude of inquiry is ordinarily permitted.'" *In re Madison Williams*, 2014 WL 56070, at *3

(quoting *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)). Courts repeatedly have

recognized that discovery provided for under Rule 2004 encompasses "broader discovery than is

available under the Federal Rules of Civil Procedure." *In re Bernard L. Madoff*, 2014 WL

5486279, at *2 (citing *In re Recoton Corp.*, 307 B.R. at 755); *see also In re Hughes*, 281 B.R. 224,

226 (Bankr. S.D.N.Y. 2002) ("[T]he scope of examination allowed under Rule 2004 is broader

than discovery allowed under the Federal Rules of Civil Procedure and may be in the nature of a

'fishing expedition.'" (quoting *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993)));

*In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (noting the same).

26.     Emphasizing Bankruptcy Rule 2004's broad purpose, courts routinely allow examination of third parties who have had dealings with the debtor.  *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559–60 (Bankr. S.D.N.Y. 1991); *see also In re Recoton Corp.*, 307 B.R. at 755 ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation"); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[T]he Court may authorize the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate."). Good cause for a Rule 2004 examination of a third party is shown "if denial of such request would cause the examiner undue hardship or injustice."  *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)).

27.     Here, the discovery sought in this Motion is critical for Celsius' ongoing investigation of potential claims or causes of action against Rhodium, including in connection with the Transaction and its treatment of the Celsius SAFE, which are potentially significant assets and sources of recovery for the bankruptcy estates.  The information sought therefore relates directly to the "acts, conduct, or property or to the liabilities and financial condition" of the Debtors within the scope of Rule 2004, *see* Fed. R. Bankr. P. 2004(b), and absent 2004 relief, Debtors would be subjected to undue hardship with respect to their efforts to assess the Transaction's impact on their estates and the value of distributable assets resulting from the Transaction's treatment of the Celsius SAFE and/or claims arising therefrom.  Good cause accordingly exists to permit the Rule 2004 examination of Rhodium.

**II.      Expedited Procedures for Resolving Discovery Disputes Are Appropriate.**

28.      This Court has inherent authority to control its own proceedings and to set the

parameters of authorized discovery. *See United States v. Certain Real Prop. & Premises Known*

*as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 80 (2d Cir. 1995) ("[T]rial courts must have

broad discretion to control and fashion remedies in the discovery process."); *Sussman v. Bank of*

*Israel*, 56 F.3d 450, 459 (2d Cir. 1995) ("A court has the inherent power to supervise and control

its own proceedings . . . ."); *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339

F.2d 440, 441 (2d Cir. 1964) (recognizing the "inherent [power] in every court to control the

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants"); *see also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title.").

29.      Bankruptcy Rule 9006(c)(1) further provides that "when an act is required or

allowed to be done at or within a specified time by [the Bankruptcy Rules] or by a notice given

thereunder or by order of court, the court for cause shown may in its discretion with or without

motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1); *see also In re Riding*, 44

B.R. 846, 858 (Bankr. D. Utah 1984) (noting that the exigent nature of bankruptcy proceedings

"will usually warrant reduction of time under Bankruptcy Rule 9006(c)" and that the Court would

also "give special consideration to requests to reduce the time for responses to discovery").

30.      In accordance with this authority and in light of Rhodium's announced intention of

closing the Transaction on or before June 30, 2023, Celsius respectfully requests that the Court

establish the following Rule 2004 framework for prompt judicial intervention so that Celsius can

seek relief swiftly in the event the parties are not able to agree on the proper scope and timing for

productions in response to Celsius' Rule 2004 requests. The framework described below closely

tracks the framework the parties agreed to in connection with the CMO[5] that was entered in

Rhodium's adversary proceeding:

(a)    The parties shall meet and confer in good faith in an effort to resolve any objection

to disclosure that may be asserted by Rhodium or any other dispute concerning the

discovery that may arise.

(b)    To the extent such objections or other disputes are not resolved consensually, either

party may send a brief, non-substantive email to mg.chambers@nysb.uscourts.gov

requesting a telephonic conference with the Court which the Court will endeavor to

schedule promptly.

(c)    If such telephonic Court conference does not result in a resolution of the objection

or other dispute, and written submissions are required, unless the Court orders otherwise,

> (i) if either party wishes to pursue the dispute, it shall file on the docket in the
>
> above-referenced cases a letter brief ("Initial Letter") not to exceed three (3) pages
>
> setting forth its position concerning the objection or other dispute;
>
> (ii) if the other party wishes to respond, it shall file on the docket within three (3)
>
> business days of the date of filing of the Initial Letter, a letter brief in response not
>
> to exceed three (3) pages; and
>
> (iii) the Court shall rule on the objection or other dispute at its earliest convenience.

## RESERVATION OF RIGHTS

31.    The Debtors reserve all of their respective rights, claims, defenses and remedies,

including, without limitation, the right to amend, modify, or supplement this Motion, to seek

---

[5] *See* Case Management and Scheduling Order at ¶¶ 10–11, *Rhodium Enters., Inc. v. Celsius Mining LLC*, Adv. Proc. No. 23-01101-mg, ECF No. 23.

additional discovery, add additional parties or to raise additional grounds for granting this Motion during any hearing on the Motion.

## NOTICE

32.     Celsius is proceeding with this Motion on an *ex parte* basis.

33.     Motions seeking discovery pursuant to Rule 2004 are often filed and granted *ex parte*. *See* 9 COLLIER ON BANKRUPTCY ¶ 2004.01[2] (16th ed. 2023).  Indeed, this Court approved an *ex parte* motion for Rule 2004 discovery as recently as a few weeks ago.  *See Ex Parte Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing the Official Committee of Unsecured Creditors to Issue Subpoenas Duces Tecum Upon the FTX Debtors*, *In re Celsius Network LLC*, Case No. 22-10964-mg (May 11, 2023), ECF No. 2626.

34.     While the Motion has been filed *ex parte*, Rhodium, as the target of the Debtors' Rule 2004 discovery, will have ample opportunity to seek protection from this Court with respect to any subpoena or information sought by the subpoena issued by the Debtors that Rhodium believes it has a basis to challenge.  Rhodium's due process rights are thus fully preserved.

35.     Based on the foregoing, the Debtors submit that the Motion can and should be granted *ex parte*, and that no notice should be required.

## NO PRIOR REQUEST

36.     No prior request for the relief sought in this Motion has been made.

## CONCLUSION

37.     For the foregoing reasons, Celsius respectfully requests that the Court enter an order, substantially in the form of Exhibit A, that (1) permits Celsius to conduct an examination pursuant to Rule 2004 of Rhodium and (2) establishes a Rule 2004 framework for prompt judicial intervention should any disputes arise with respect to the scope and timing for productions in response to the Rhodium examination.

14

Dated: May 22, 2023
New York, New York

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: */s/ Mitchell P. Hurley*
       Mitchell P. Hurley
       Dean L. Chapman Jr.
       Jeffrey A. Latov
       One Bryant Park
       New York, New York 10036
       Telephone: (212) 872-1000
       Facsimile: (212) 872-1002
       mhurley@akingump.com
       dchapman@akingump.com
       jlatov@akingump.com

       Elizabeth D. Scott (admitted *pro hac vice*)
       2300 N. Field Street, Suite 1800
       Dallas, TX 75201
       Telephone: (214) 969-2800
       Facsimile: (214) 969-4343
       edscott@akingump.com

       *Special Litigation Counsel*
       *to the Debtors and the Debtors in Possession*

15