Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON DEBTORS'**
**APPLICATION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**WILLIS TOWERS WATSON US LLC AS COMPENSATION CONSULTANT,**
**EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Willis Towers Watson US LLC as Compensation Consultant, Effective as of July 13, 2022, and (II) Granting Related Relief* (the "Application"), will be held on **June 28, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on June 27, 2023)**.

 **PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on **June 28, 2023**, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on **June 28, 2023**.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

 **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the

2

Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief,* [Docket No. 2560] (the "Case Management Order") by **June 21, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated:  May 30, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

  - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date: June 28, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: June 21, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' APPLICATION FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF**
**WILLIS TOWERS WATSON US LLC AS COMPENSATION CONSULTANT,**
**EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF**

Celsius Network LLC and certain of its affiliates, as debtors and debtors in possession

(collectively, the "Debtors") state as follows in support of this application (this "Application"):

**Relief Requested**

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) authorizing the Debtors to retain and employ Willis Towers Watson

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

US LLC ("WTW") as the Debtors' compensation consultant, effective as of July 13, 2022, in accordance with the terms and conditions set forth in that certain amended and clarified statement of work between WTW and the Debtors, dated as of May 26, 2023, and the Master Services Agreement, dated July 3, 2022 (collectively, the "SOW"), attached as Exhibit 1 to the Order. The original statement of work dated July 3, 2022 was amended on May 26, 2023, to clarify WTW's role as compensation consultant in these chapter 11 cases. For the reasons set forth below, the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest and therefore should be granted.

2.      In support of this Application, the Debtors submit, and incorporate by reference herein, the *Declaration of Josephine Gartrell, Esq. in Support of Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Willis Towers Watson US LLC as Compensation Consultant, Effective as of July 13, 2022, and (II) Granting Related Relief* (the "Gartrell Declaration"), which is attached hereto as **Exhibit B**.

### Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 327(a), 328, and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rule 2014(a) of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>").

## <u>Preliminary Statement</u>[2]

6.      The Debtors file this Application out of an abundance of caution in order to address the U.S. Trustee's concerns raised in the Show Cause Motion (as defined herein).  The Debtors and WTW, however, acknowledge that the SOW signed by the parties prior to the bankruptcy filing imprecisely referred to WTW as a "restructuring advisor," although WTW's actual role was much more limited in scope.  To clarify this issue, the Debtors and WTW have amended the SOW to correctly reflect WTW's limited role as a compensation consultant for the Debtors in the bankruptcy cases.

## <u>Background</u>

7.      The Debtors, together with their non-Debtor affiliates (collectively, "<u>Celsius</u>"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than one hundred countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

8.      On July 13, 2022, certain of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").[3]  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

9.      On December 7, 2022, each of the GK8 Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of the GK8 Debtors' chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of the GK8 Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

10.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53 and 1648].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 14, 2022, the Court entered an order directing the appointment of an examiner in the Initial Debtors' cases [Docket No. 820].  On April 5, 2023, the Court entered an order discharging the Examiner [Docket No. 2364].  On October 20, 2022, the Court entered an order approving the appointment of an independent fee examiner [Docket No. 1151] (the "Fee Examiner").

---

[3]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Campagna Declaration.

**Retention of WTW**

11.    The Debtors chose WTW to act as a compensation consultant for the purpose of developing certain management incentive and other employee restructuring compensation programs.  As set forth below, WTW and its professionals have extensive experience consulting with companies, including financially distressed companies, both in and out of chapter 11, regarding compensation programs.

12.    The Debtors seek to employ and retain WTW because of its experience and extensive knowledge of compensation consulting as well as related issues.  WTW is qualified and well-positioned to provide the services contemplated herein to the Debtors in an efficient and cost-effective manner.  WTW has considerable experience providing compensation consulting services to businesses in a chapter 11 environment and has advised debtors in numerous chapter 11 cases, including as compensation consulting services provider in:  *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Apr. 5, 2021) (provided compensation consultant services, including assistance with the proposed key employee incentive plan in the case); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Nov. 14, 2019) (provided compensation consultant services, including assistance with the proposed key employee incentive plan in the case); *In re Cloud Peak Energy Inc.*, No. 19-11047 (KG) (Bankr. D. Del. July 1, 2019) (provided compensation consultant services, including assistance with the proposed key employee incentive plan in the case); *In re FULLBEAUTY Brands Holdings Corp.*, No. 19-22185 (RDD) (Bankr. S.D.N.Y. 2019) (provided compensation consultant services); *In re Parker Drilling Co.*, No. 18-36958 (MI) (Bankr. S.D. Tex. 2018) (provided compensation consultant services); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. 2018) (provided compensation consultant services); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. 2018) (provided compensation consultant services); *In re ATD Corp.*,

No. 18-12221 (KJC) (Bankr. D. Del. 2018) (provided compensation consultant services); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. June 13, 2018) (provided compensation consultant services). Accordingly, the Debtors have determined that WTW has the resources and experience necessary to perform compensation consulting services in these chapter 11 cases. The Debtors believe that WTW's employment is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest.

13.    On November 17, 2022, the United States Trustee (the "U.S. Trustee") filed his *Application of the United States Trustee for an Order Authorizing the United States Trustee to Conduct a 2004 Examination of Willis Towers Watson* [Docket No. 1392] (the "Rule 2004 Application") in connection with WTW's engagement by the Debtors. In response to the Rule 2004 Application, WTW provided the U.S. Trustee with documents relating to its engagement with the Debtors. WTW contends that the document production supports the Debtors' and WTW's position that WTW's role was, in fact, limited to the role of compensation consultant. The U.S. Trustee did not make any further requests for additional documentation from WTW after WTW responded to the Rule 2004 Application.

14.    On February 13, 2023, the U.S. Trustee filed the *United States Trustee's Motion for Order to Show Cause Why the Debtors Should Not Retain Willis Towers Watson* [Docket No. 2042] (the "Show Cause Motion"). On February 15, 2023, at a hearing on the Show Cause Motion, the parties agreed that the Debtors would file an application to retain WTW, reserving all parties' rights regarding the issue of whether WTW was indeed a "professional" whose retention is required under the Bankruptcy Code.

15.     On May 15, 2023, the U.S. Trustee filed the *United States Trustee's Motion for Order Directing Disgorgement of All Estate Funds Paid to Willis Towers Watson* [Docket No. 2640].

16.     WTW agreed to file this Application to resolve the U.S. Trustee's concerns, however, the filing of this Application is not an admission that WTW is a professional in this or any other case pursuant to section 327 of the Bankruptcy Code.

## **Retention Should be Approved as of July 13, 2022**

17.     While WTW has never been formally retained pursuant to a retention application in the chapter 11 cases cited in paragraph 12, the Debtors nonetheless file this Application based on the U.S. Trustee's request, and the Debtors request that the retention be approved effective as of the Petition Date.

18.     The exercise of discretion by courts in the Second Circuit in granting retroactive approval regarding the existence of "extraordinary circumstances" that warrant such relief, bankruptcy courts consider factors such as:

> "[W]hether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors."

*In re Keren Ltd. P'ship*, 225 B.R. 303, 306–7 (S.D.N.Y. 1998), *aff'd*, 189 F.3d 86 (2d Cir. 1999). This list is not exhaustive. *Id.*

19.     Here, the SOW was executed prepetition, and WTW has been diligently providing compensation services to the Debtors since the Petition Date and throughout these chapter 11 cases.  For example, WTW was primarily responsible for the creation of the Debtors' key

7

employee retention plan (the "KERP"), including the relevant analysis and benchmarking.[4]   The

Court, in approving the KERP, found that that the program was a reasonable exercise of the

Debtors' business judgment to address the high attrition rates.[5]

20.    When WTW received the Rule 2004 Application in November 2022, it worked

diligently to respond to the requests and make itself available for any questions or comments from

the U.S. Trustee regarding WTW's production of documents.  The U.S. Trustee had none.

21.    Accordingly, in response to the U.S. Trustee's Show Cause Motion, and after the

hearing on February 15, 2023 on the Show Cause Motion, the Debtors file this Application.  Under

these circumstances, and the work performed by WTW throughout these chapter 11 cases, it would

be unfair for WTW not to be retained effective as of the Petition Date.

## Services to Be Provided

22.    Under    the    SOW,    WTW    performs    the    following    services

(collectively, the "Services"):[6]

- Review market pay practices and develop restructuring compensation
  programs; and

- Prepare for and participate in any in-court proceedings.

---

[4]    *See Declaration of Josephine Gartrell in Support of Debtors' Motion for Entry of an Order (I) Approving the
Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 1023]; *Supplemental
Declaration of Josephine Gartrell in Support of Debtors' Amended Motion for Entry of an Order (I) Approving
the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 1428].

[5]    Dec. 5, 2022 Hr'g Tr. at 192:21–24 ("I am satisfied the Debtors have met their burden of showing that the KERP
is justified in a reasonable exercise of their business judgment."); *Order (I) Approving the Debtors' Key Employee
Retention Plan and (II) Granting Related Relief* [Docket No. 1683].

[6]    To the extent that any summary set forth herein differs from the terms of the SOW, the terms of the SOW shall
control.  Capitalized terms used but not defined in this section shall have the meanings ascribed to them in the
SOW.

23.     Should the Debtors request WTW to perform additional services not contemplated by the SOW, the Debtors and WTW will mutually agree upon such services and fees for those in writing, in advance.  The Debtors shall file notice of any proposed additional services and any underlying engagement agreement or statement of work with the Court and serve such notice on the U.S. Trustee, counsel for the Committee, and any party requesting notice under Bankruptcy Rule 2002.  If no such party files an objection within fourteen days of the Debtors filing such notice, such additional services and any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

**Professional Compensation**

24.     Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of WTW on the fee terms and at the rates set forth in the SOW.  The following is a brief summary of the terms of the SOW, and the SOW sets forth the compensation and expense reimbursement provisions that shall apply thereunder.

25.     WTW will provide the Services pursuant to the SOW based on WTW's hourly rates for such Services, which currently are as follows:

| Consultant | Hourly Fees |
|---|---|
| Senior Director | $950 – $1,130 |
| Director | $800 – $925 |
| Associate Director | $625 – $750 |
| Senior Associate | $525 – $585 |
| Associate | $425 – $520 |
| Analyst | $360 – $385 |

26.     WTW's fees are exclusive of taxes or similar charges, as well as customs, duties, or tariffs imposed in respect of the Services, all of which the Debtors shall pay.

9

27.    In addition to the fees set forth above, the Debtors shall reimburse WTW for any direct expenses incurred in connection with the retention in these chapter 11 cases and the performance of the Services set forth in the SOW, including, but not limited to, any potential value-added taxes, income or sales taxes, and other any similar tax incurred in connection with the delivery of the Services unless such tax is required to be included pursuant to a statutory requirement.  WTW's direct expenses shall include, but not be limited to, reasonable, customary, and documented out-of-pocket expenses for items such as travel and other vendor expenses, and itemized extraordinary expenses such as large volume color printing, large volume courier shipments, and the like.  WTW will charge the Debtors for these direct expenses at WTW's cost.

28.    If WTW is requested or authorized by the Debtors, or is required by government regulation, subpoena, or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the SOW, the Debtors would, so long as WTW is not a party to the proceeding in which the information is sought, reimburse WTW for its professional time and expenses, as well as the fees and expenses of its counsel, incurred in responding to such requests.

29.    Prior to the Petition Date, the Debtors paid WTW $75,000.00 on account of the Services.  Since the Petition Date, the Debtors have paid WTW $375,000.00 on account of the Services.  Upon approval of this Application, WTW intends to file monthly fee statements and interim and final fee applications pursuant to any applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee guidelines, and any other applicable procedures and orders of the Court.

30.    The hourly rates and corresponding rate structure that WTW will use in these chapter 11 cases are the same that WTW uses in similar matters regardless of whether a retention application is required and reflect the normal and customary billing practices for engagements of

10

this complexity and magnitude.  The hourly rates vary with the experience and seniority of the individuals assigned.  These compensation arrangements are market-based and reasonable considering the vast knowledge and experience of WTW.

31.    The Debtors believe the SOW and the fees contemplated therein are consistent with and typical of compensation arrangements entered into by WTW with other comparable firms in connection with the rendering of similar services under similar circumstances.  The Debtors believe that the terms and conditions in the SOW are reasonable, consistent with the market, and designed to compensate WTW fairly for its work and expenses.

**WTW's Disinterestedness**

32.    In connection with the proposed retention by the Debtors in these chapter 11 cases, WTW received and reviewed a list of parties in interest (the "Parties in Interest") from the Debtors.

33.    WTW, which employs approximately 45,000 associates, has a large and diversified consulting practice and provides consulting services for many financial institutions and commercial corporations.  However, a limited group of twenty-three employees are specifically involved in the work described in the Scope of Services (the "Compensation Consultant Team"). In addition, the Compensation Consultant Team and certain administrative staff are the only individuals who have access to the Compensation Consultant Team's work files.  WTW has, in the past, performed services for, currently performs services for, and may, in the future, perform services for, entities that are claimants or interest holders of the Debtors in matters unrelated to these chapter 11 cases.  Some of those entities are, or may consider themselves to be, creditors or parties in interest in these chapter 11 cases or otherwise have interests in these cases.

34.    In preparing this Application, a general inquiry was sent by electronic mail to the Compensation Consultant Team to determine whether any such individuals or any members of their households (i) have any connection or relationship with individuals or entities that may be

11

parties in interest in these chapter 11 cases; (ii) own any debt or equity securities of the Debtors; (iii) hold a claim against or interest adverse to the Debtors; (iv) are or were one of the Debtors' customers; (v) are or were officers, directors, or employees of the Debtors or any of the affiliates or subsidiaries; (vi) are related to or have any connections to bankruptcy judges or their staff in the Southern District of New York; or (vii) are related to or have any connections to anyone employed by the U.S. Trustee or his staff in the Southern District of New York.

35.     To the best of the Debtors' knowledge, WTW (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors or their estates; and (c) has no connection to the Debtors, their creditors, or their related parties.  To the extent that WTW discovers any new relevant facts or relationships bearing on the matters described herein during the period of its retention, it will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

36.     For these reasons, to the best of the Debtors' knowledge, information, and belief, based on the Gartrell Declaration, none of WTW's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, creditors, or equity security holders in these chapter 11 cases.  As such, the Debtors believe that WTW is disinterested and holds no materially adverse interest to the Debtors' estates.

### **Certain Other Terms of the SOW**

37.     The Debtors or WTW may terminate the SOW on thirty-days' written notice to the other party.  Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses for Services rendered as of the effective date of such termination.  Moreover, certain other terms of the SOW will continue (either indefinitely or for a specified period of time) following termination.

**<u>Limitation of Liability</u>**

38.     As part of the overall compensation payable to WTW under the SOW, the SOW

provides WTW certain limitation of liability rights (the "<u>Limitation of Liability Rights</u>").   The

Limitation of Liability of Rights were negotiated between the Debtors and WTW at arm's-length

and in good faith.   The Debtors believe that the Limitation of Liability Rights are reasonable and

in the best interests of the Debtors, their estates, and their creditors.

39.     The Limitation of Liability Rights provide for the limitation of liability for any

incidental, special, punitive, or consequential damages of any kind (including, without limitation,

loss of income, loss of profits, or other pecuniary loss), except to the extent such liability may not

be excluded as a matter of law.

**<u>No Duplication of Services</u>**

40.     The Debtors intend that the services of WTW will complement, and not duplicate,

the services rendered by any other professional retained in these chapter 11 cases.   To the best of

the Debtors' knowledge, WTW understands that the Debtors have retained, and may retain,

additional professionals during the term of the engagement and will work cooperatively with such

professionals to integrate any respective work conducted by the professionals on behalf of the

Debtors.

**<u>Basis for Relief</u>**

41.     The employment and retention of WTW under the terms described herein is

appropriate under sections 327(a) and 1107(b) of the Bankruptcy Code, to the extent section 327(a)

of the Bankruptcy Code is applicable.   Section 327(a) of the Bankruptcy Code empowers the

trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest

adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying

out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy

Code defines a "disinterested person" as a person that:

> (a)     "is not a creditor, an equity security holder, or an insider;
>
> (b)     is not and was not, within [two] years before the date of the filing of the
>          petition, a director, officer, or employee of the debtor; and
>
> (c)     does not have an interest materially adverse to the interest of the estate or
>          of any class of creditors or equity security holders, by reason of any direct
>          or indirect relationship to, connection with, or interest in, the debtor, or for
>          any other reason."

11 U.S.C. § 101(14).

42.     Furthermore, section 1107(b) of the Bankruptcy Code provides that "a person is not

disqualified for employment under section 327 of this title by a debtor in possession solely because

of such person's employment by or representation of the debtor before the commencement of the

case." 11 U.S.C. § 1107(b). WTW's prepetition relationship with the Debtors is therefore not an

impediment to their retention to provide postpetition services to the Debtors.

43.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional

person "on any reasonable terms and conditions of employment, including on a retainer. . .".

11 U.S.C. § 328(a). The terms and conditions of WTW's retention as described herein are

reasonable and in keeping with the terms and conditions typical for engagements of this size and

character. It is reasonable for the Debtors to seek to retain and employ WTW to provide

compensation consulting services on the terms and conditions set forth herein.

44.     WTW intends to apply for compensation for professional services rendered and

reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the

Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the U.S. Trustee guidelines, and any other applicable

procedures and orders of the Court.

14

45.     For all the reasons stated above and in the Gartrell Declaration, the Debtors' retention and employment of WTW is warranted.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

46.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Motion Practice

47.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application.  Accordingly, this Application satisfies Local Rule 9013-1(a).

### Notice

48.     The Debtors will provide notice of this Application to the following parties or their respective counsel:   (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) counsel to the Fee Examiner; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

49.     No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief

requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: May 30, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**WILLIS TOWERS WATSON US LLC AS COMPENSATION CONSULTANT,**
**EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the

Debtors to retain and employ Willis Towers Watson US LLC as the Debtors' compensation

consultant, effective as of July 13, 2022, in accordance with the terms and conditions set forth in

the SOW, a copy of which is attached as **Exhibit 1** to this Order, and (b) granting related relief,

all as more fully set forth in the Application; and this Court having jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the

United States District Court for the Southern District of New York, entered February 1, 2012; and

upon the Gartrell Declaration; and this Court having the power to enter a final order consistent

with Article III of the United States Constitution; and this Court having found that venue of these

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

that WTW does not hold or represent an adverse interest to the Debtors or their estates and is

disinterested under 11 U.S.C. § 101(14); and this Court having found that the relief requested in

the Application is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and this Court having found that the Debtors' notice of the Application and opportunity

for a hearing thereon were appropriate under the circumstances and no other notice need be

provided; and this Court having reviewed the Application; and this Court having determined that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY

ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      In accordance with section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014,

and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain WTW as the

Debtors' compensation consultant, effective as of July 13, 2022, in accordance with the terms and

conditions set forth in the Application and SOW, as modified by this Order.

3.      The terms of the SOW, including without limitation, the compensation provisions,

are reasonable terms and conditions of employment and are hereby approved.

4.      Consistent with, and subject to, the terms of the SOW and this Order, WTW is

hereby authorized to perform the Services provided for in the SOW, *provided*, that notwithstanding

anything to the contrary to the Application, WTW shall not perform additional services outside

the scope of the SOW without further order of the Court, to be obtained pursuant to the process set

forth in paragraph 9 of this Order.

5.      WTW shall be compensated for fees and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee guidelines, this Order, and any other applicable orders of this Court.

6.      WTW shall file monthly, interim, and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee guidelines, and any other applicable procedures and orders of this Court and consistent with the proposed compensation set forth in the SOW.

7.      WTW is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code.

8.      WTW shall keep reasonably detailed time records in fifteen-minute (0.25 of an hour) increments and will submit, with any monthly fee statements, and interim and final fee applications, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered, and the total amount of compensation requested by WTW.

9.      To the extent the Debtors and WTW enter into any additional SOW or statements of work, the Debtors will file such SOW or statements of work with the Court and serve such SOW or statements of work upon the U.S. Trustee, counsel for the Committee, and any party requesting notice under Bankruptcy Rule 2002.  If any party objects to the additional services to be provided by WTW within fourteen days of such new SOW or statements of work being filed and served, the Debtors will promptly schedule a hearing before the Court.  All additional services will be subject to the provisions of this Order.  To the extent no related timely objections are filed, such additional SOW shall be deemed approved pursuant to this Order.

3

10.     Prior to any increases in WTW's hourly rates pertaining to the Debtors, WTW shall file a supplemental declaration with this Court, and provide ten business days' notice to the Debtors, the U.S. Trustee, the Committee, and the Fee Examiner.  The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

11.     Notwithstanding anything to the contrary in the Application or the SOW, WTW will not charge the Debtors' estates for time spent preparing or reviewing any invoices or time records submitted in support of any fee application or monthly fee statement filed in these chapter 11 cases; *provided* that time spent on privilege analysis related to such fee applications or monthly fee statements may be compensable by the Debtors' estates; *provided*, *further*, that WTW shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of their fee applications in these chapter 11 cases.  In the event that, during the pendency of these chapter 11 cases, WTW seeks reimbursement for any attorneys' fees or expenses, the invoices and supporting time records from such attorneys shall be included in the respective fee applications, and such invoices and time records shall be in compliance with the Local Rules and subject to any U.S. Trustee guidelines and Court approval under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code.

12.     Notwithstanding anything in the SOW to the contrary, WTW shall apply any remaining amount of its prepetition retainer or credit balance as a credit toward postpetition fees

4

and expenses after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to WTW.

13.     In the event that WTW seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Application and/or SOW, the invoices and supporting time records for the attorneys' fees and expenses shall be included in WTW's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, as the case may be, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

14.     WTW will review its files periodically during the pendency of these chapter 11 cases to determine whether any disqualifying conflicts or other circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, WTW will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

15.     WTW shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

16.     Notwithstanding anything in this Application or the SOW to the contrary, (a) to the extent that WTW uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these chapter 11 cases, WTW shall pass through the cost of the Contractors to the applicable Debtors at the same rate that it pays the Contractors and (b) seek reimbursement for actual costs only.  Contractors from whom WTW seeks to pass through fees on an hourly basis to the applicable Debtors shall be subject to the same

5

conflict checks as required for WTW, and such Contractors shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

17.     Notwithstanding any provision to the contrary in the SOW, any dispute relating to the services provided by WTW shall be referred to arbitration or non-binding mediation consistent with the terms of the SOW only to the extent that this Court does not have, retain, or exercise jurisdiction over the dispute.

18.     To the extent that the express provisions of this Order are inconsistent with the provisions of the Application, the Gartrell Declaration, or the SOW, the provisions of this Order shall control.

19.     The Debtors and WTW are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

20.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23.    Notwithstanding any provision to the contrary in the Application or the SOW, the

Court shall retain jurisdiction to hear and to determine all matters arising from or related to

implementation, interpretation, or enforcement of this Order and WTW's retention.


New York, New York
Dated: _____, 2023

                                          _____
                                          THE HONORABLE MARTIN GLENN
                                          CHIEF UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**SOW**



May 26, 2023

Ms. Trunshedda Ramos
Chief Human Resources Officer
Celsius Network LLC
121 River Street, PH05
Hoboken, NJ 07030

(sent via email: trunshedda.ramos@celsius.network)

Dear Ms. Ramos,

This statement of work ("SOW") amends the SOW entered into by the parties on July 3, 2022 by clarifying the scope of Willis Towers Watson's engagement.

We appreciate the opportunity to serve as a compensation consultant to Celsius Network Limited ("Celsius" or the "Company"). This agreement will confirm the proposed Statement of Work and terms of the potential engagement of the Willis Towers Watson entity identified below or any of its affiliates ("WTW," "we" or "us"), by Celsius and its affiliate entities.

As part of its ongoing restructuring-related discussions, the Company is reviewing its compensation plans for executives and other employees to determine how these programs and related practices can best be structured to incent these employees to achieve the Company's restructuring priorities.

Celsius is interested in having WTW work with K&E, Celsius' management, its Special Committee (as appropriate), and its other advisors on the review of certain restructuring-based compensation programs that would align with the Company's anticipated restructuring path.

In particular, we understand the immediate priority for Celsius is to have WTW advise on a: (i) a Key Employee Incentive Plan ("KEIP") for certain key senior executives (insiders) and (ii) a Key Employee Retention Plan ("KERP") for non-insiders. There may be other compensation-related programs that are necessary for us to benchmark and design throughout the engagement that are not explicitly addressed in this scope of work.

Josephine Gartrell, Esq.
Senior Director
525 Market Street
Suite 3400
San Francisco, CA 94105

D +1 615 881 5608
E Josephine.gartrell@wtwco.com
W willistowerswatson.com

Willis Towers Watson US LLC

Page 1 of 1

**<u>Exhibit B</u>**

**Gartrell Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF JOSEPHINE GARTRELL, ESQ.**
**IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**WILLIS TOWERS WATSON US LLC AS COMPENSATION CONSULTANT,**
**EFFECTIVE AS OF JULY 13, 2022, AND (II) GRANTING RELATED RELIEF**

I, Josephine Gartrell, Esq., declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief.

1.      I am a Senior Director of Willis Towers Watson US LLC ("WTW"), with offices located at 800 North Glebe Road, Floor 10, Arlington, VA 22203.

2.      I submit this Declaration in connection with the *Debtors' Application for Entry of an Order (I) Authorizing the Retention* and *Employment of Willis Towers Watson US LLC as Compensation Consultant, Effective as of July 13, 2022, and (II) Granting Related Relief* (the "Application"), of Celsius Network LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, for authority to employ and retain WTW as a compensation consultant, effective as of July 13, 2022 (the "Petition

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Date"), at its normal hourly rate in effect from time to time and in accordance with its normal reimbursement policies, in compliance with section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), and to provide the disclosure required under Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 2014-1 and rule 2016-1 of the Local Rules for the Southern District of New York (the "Local Rules").

3.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.   To the extent any information disclosed herein requires amendment or modification upon WTW's completion of further review, or as additional information regarding parties in interest becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

4.      Neither I, WTW, nor any consultant of, counsel to, or analyst of WTW involved in performing work for the Debtors performs services for any entity other than the Debtors in connection with these chapter 11 cases.   In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, WTW, nor any consultant of, counsel to, or analyst of WTW performs services for any party in interest in these chapter 11 cases in matters related to these chapter 11 cases.

## I.      WTW'S QUALIFICATIONS

5.      WTW is an international professional services firm that offers a wide variety of services to public and private clients, including expert analysis of executive and management compensation.   WTW designs and delivers solutions that manage risk, optimize benefits, and cultivate talent to protect and strengthen institutions and individuals.   WTW focuses on two key business segments:  Health, Wealth & Career ("HWC") and Risk & Broking ("R&B").

6.      The Services that WTW proposed to provide under the SOW mimic its services in all compensation consulting engagements regardless of whether such services are conducted for

distressed or non-distressed companies.  Specifically, benchmarking pay for executives and non-executives is one of the most common services WTW provides.  Incentive plan, retention plan, and other pay program design also constitute typical offerings by WTW to its clients. Notably, WTW has consulted with many distressed clients in circumstances similar to that of the Debtors, including certain clients set forth in paragraph 12 of the Application.  Not all of WTW's distressed clients file for chapter 11.

7.      Regardless of whether a client may file for chapter 11, companies in distress have commonalities.  For example, they often operate in uncertain environments where layoffs and voluntary attrition pressure remaining employees to perform additional work, often without commensurate increases in pay.  Consequently, distressed companies generally experience higher retention risk than their non-distressed competitors in the talent market.  For this reason, typical compensation programs quickly become ineffective to compete for necessary talent.  WTW's job then pivots to modifying compensation program design to shore up talent during a restructuring process regardless of whether inside or outside of chapter 11.

8.      Similarly, distressed companies are often unable to pay annual bonuses nor can they forecast long-term financial and operational metrics for the typical three-year period used by non-distressed companies.  However, distressed companies' competition for talent would provide incentive programs with a higher likelihood of achieving the necessary metrics for participants to receive a payout.  In short, without any perceived opportunity to earn a short-term bonus or long-term incentive payout, a distressed company's base pay would not suffice from a market competitiveness perspective.  Consequently, distressed companies without proper incentive plans that drive their nuanced business objectives typically experience increased attrition rates.  In these

3

situations, WTW advised them on how to effectively modify their incentive programs to remain competitive in the talent market.

## II.    SCOPE OF SERVICES

9.    The Debtors propose that WTW be employed upon the terms and conditions set forth in that certain statement of work between WTW and the Debtors, dated as of July 3, 2022, and the Master Services Agreement, dated July 3, 2022, signed and agreed to concurrently with the statement of work (collectively, as may be amended, supplemented, or modified from time to time, the "SOW").

10.    Pursuant to the SOW, the Debtors retained WTW to advise on: (i) a Key Employee Incentive Plan ("KEIP") for certain key senior executives (insiders) and (ii) a Key Employee Retention Plan ("KERP") for non-insiders (the "Services"). Because it is difficult to anticipate other compensation-related program design needs and potential benchmarks that could arise during WTW's engagement, the SOW also notes that WTW may perform services that are not explicitly addressed in the SOW. In such instances, our practice is to mutually agree upon the additional service requested by our respective client.

11.    The original SOW dated July 3, 2022, was amended on May 26, 2023, to clarify WTW's role solely as an independent compensation consultant during the company's distressed state and potentially in preparation for these chapter 11 cases.

12.    Prior to the Petition Date, WTW was hired to provide the Debtors with independent compensation consulting services that, in my and WTW's experience, required WTW to evaluate Debtors current pay programs, and analyze whether the current pay programs would remain effective as the company enters into and exists in a distressed environment.

13.    The Debtors, at the time of contracting, indicated that they would require WTW to commence work immediately.

4

14.     At the time WTW was hired, the definitive decision to file a chapter 11 case had

not been communicated to WTW.  However, WTW knew that the Debtors were operating in a

distressed environment with the filing of a chapter 11 case being a possibility.  Therefore, WTW

applied its methodology to design distressed company programs that could help ensure competitive

pay programs that could still compete with the Debtors' non-distressed market for talent and

withstand the additional scrutiny they would undergo if a chapter 11 case were filed.  This

approach to compensation program enhances a company's ability to attract, motivate and retain

key talent without having to spend additional time and money to "rework" a compensation

program if and when a company were to file chapter 11.  Additionally, I and WTW often apply a

fairly consistent methodology to distressed companies that have no contemplation of filing for

chapter 11; assuming programs are fluid and iterative as a company works through an out-of-court

or in-court restructuring process.

15.     During the time that WTW and the Debtors were contracting to hire WTW as an

independent compensation consultant, the Debtors employed WTW under the impression that

WTW was not an ordinary business professional under section 327(a) of the Bankruptcy Code—

a position that WTW and various debtors in other bankruptcy cases have taken around the country

including most recently in the *In re Voyager Digital Holdings, Inc.* chapter 11 case,

Case No. 22-10943-MEW, in the Southern District of New York.  To be clear, since the Debtors

and WTW were under the impression that in these chapter 11 cases WTW did not have to be

retained under section 327(a) of the Bankruptcy Code, the Debtors and WTW did not file the

Application sooner.

16.     On November 17, 2022, the United States Trustee for the Southern District of New

York (the "U.S. Trustee") filed an *Application of the United States Trustee for an Order*

*Authorizing the United States Trustee to Conduct a 2004 Examination of Willis Towers Watson*
[Docket No. 1392] (the "Rule 2004 Application").

17.     In response to the Rule 2004 Application, WTW provided the U.S. Trustee with documents relating to its engagement with the Debtors.  The U.S. Trustee did not ask WTW to provide additional documents after WTW responded.

18.     On February 13, 2023, the U.S. Trustee filed the *United States Trustee's Motion for Order to Show Cause Why the Debtors Should Not Retain Willis Towers Watson* [Docket No. 2042] (the "Show Cause Motion").

19.     On February 15, 2023, at a hearing on the Show Cause Motion, the Court suggested that filing a retention application would be the most sensible resolution.  Feb. 15, 2023, Hr'g Tr. 102:7–10 ("Why don't you just file a . . . retention application, that usually gets negotiated out with the US Trustee, and becomes a nonissue.").

20.     On May 15, 2023, the U.S. Trustee filed the *United States Trustee's Motion for Order Directing Disgorgement of All Estate Funds Paid to Willis Towers Watson* [Docket No. 2640] (the "Disgorgement Motion").

21.     As discussed above, until the hearing on the Show Cause Motion, the Debtors and WTW had not contemplated filing a retention application under section 327(a) of the Bankruptcy Code for the Services.  WTW is routinely involved in other bankruptcy cases for similar, if not identical services rendered to the Debtors in these chapter 11 cases and has not had to be retained under section 327(a) of the Bankruptcy Code.

22.     Nevertheless, in an effort to resolve the Show Cause Motion with the U.S. Trustee, the Debtors and WTW agreed to file this Application to retain WTW, effective July 13, 2022, in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code.

23.     Since the decision to file this Application was made, WTW has worked in good faith with the Debtors and their counsel to finalize the Application.  WTW has identified the Services the Debtors believe are necessary to be continued postpetition, has run a conflicts check, and has assisted the Debtors in preparation of the Application and related materials, each of which took significant time and effort.

24.     WTW has never been ordered by a bankruptcy court to file a retention application in any of its chapter 11 cases.  Because this is the first time WTW has been ordered to do so, it took WTW significant time to coordinate internally to both respond to the U.S. Trustee's motions and run its connections search.  This required thoughtful consideration which necessarily took more time than the retention process and applications typically submitted to the Court by those who do so in the normal course.  Specifically, unlike most professionals who regularly file retention applications, WTW lacks the capability to perform a connections search in a timely manner.  WTW respectfully submits that its retention be approved effective as of the Petition Date and that relief sought in the Disgorgement Motion be denied.

25.     WTW's fees, though called into question by the U.S. Trustee, are fair, reasonable, proper, and benefitted and still benefit the Debtors' estates.  WTW's fees for services provided to the Debtors are in line with the fees charged for the same services to companies that are not in an active chapter 11 case.  Indeed, the services provided by WTW are and were designed to ensure the long-term success of the Debtors after any type of restructuring process.  This purpose is in line with that of chapter 11—*i.e.*, to allow distressed companies to reorganize outside or through the chapter 11 process and emerge from a bankruptcy case as functioning and ongoing business entities.

26.    The filing of the Application was a process that WTW was unfamiliar with, and it therefore took longer to ensure complete accuracy and transparency.  The disgorgement of fees incurred by WTW for the crucial work that was performed by WTW, used by the Debtors, and relied on by parties in interest—including the Court and the U.S. Trustee—would be a gross injustice.

## III.    WTW'S DISCLOSURE PROCEDURES

27.    WTW, which employs approximately 45,000 associates, has a large and diversified consulting practice and provides consulting services for many financial institutions and commercial corporations.  However, a limited group of approximately twenty-three employees are involved in the work described in the Scope of Services (the "Compensation Consultant Team"). In addition, the Compensation Consultant Team and certain administrative staff are the only individuals who have access to the Compensation Consultant Team's work files.  Access to these files can only be granted by myself and other senior members of the Compensation Consultant Teams.  WTW has, in the past, performed services for, currently performs services for, and may, in the future, perform services for, entities that are claimants or interest holders of the Debtors in matters unrelated to these chapter 11 cases.  Some of those entities are, or may consider themselves to be, creditors or parties in interest in these chapter 11 cases or otherwise have interests in these chapter 11 cases.

28.    None of the members of the Compensation Consultant Team perform work for any client as a creditor in a chapter 11 case.  As a policy, WTW only advises its clients as potential debtors and as debtors, if and when they file for chapter 11.

29.    In preparing this Declaration, a general inquiry was sent by electronic mail to the Compensation Consultant Team and, in an abundance of caution, all WTW personnel involved in

8

performing ordinary course compensation consulting services for the Debtors to determine whether any such individuals or any members of their households have (i) any connection or relationship with individuals or entities that may be parties in interest in these chapter 11 cases; (ii) own any debt or equity securities of the Debtors; (iii) hold a claim against or interest adverse to the Debtors; (iv) are or were one of the Debtors' customers; (v) are or were officers, directors, or employees of the Debtors or any of the affiliates or subsidiaries; (vi) are related to or have any connections to bankruptcy judges or their staff in the Southern District of New York; or (vii) are related to or have any connections to anyone working in the Office of the U.S. Trustee.

30.     Additionally, any WTW personnel that may join the Compensation Consultant Team or review the Compensation Consultant Team's work product will be required to undergo the same evaluation to determine disinterestedness as described herein.

## IV.    WTW'S CONNECTIONS WITH THE DEBTORS

31.     WTW compiled responses to the foregoing inquiries for the purpose of preparing this Declaration.  Responses to the inquiry described above reflect that, as of the Petition Date, no WTW personnel involved in performing work for the Debtors or member of the household of any WTW personnel involved in performing work for the Debtors holds any claims against, direct stock ownership of, or other interests in the Debtors and that no such individuals held significant employment with the Debtors.

## V.    WTW'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THESE CHAPTER 11 CASES

32.     WTW does not hold or perform services for an interest that is adverse to the Debtors' estates.  WTW is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, for the reasons discussed below.

9

33.    In addition to the foregoing, through diligent inquiry, I have ascertained no connection among the personnel involved in performing work for the Debtors, as such term is used in section 101(14)(C) of the Bankruptcy Code, as modified by section 1107(b), and Bankruptcy Rule 2014(a), between (i) WTW personnel involved in performing work for the Debtors; (ii) the U.S. Trustee or any person employed by the U.S. Trustee, (iii) any attorneys, accountants, or financial consultants in these chapter 11 cases, or (iv) any investment bankers who perform services for or may perform services for the Debtors, claimants, or other parties in interest in these chapter 11 cases, except as set forth herein and on the Disclosure Schedule.

34.    As part of its Compensation Consulting Practice, WTW appears in cases and proceedings, and assists with many types of corporate transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now, or may in the future, perform services for claimants and other parties in interest in these cases. WTW personnel involved in performing work for the Debtors have not performed services for, and will not perform services for, any such parties in relation to the Debtors or their chapter 11 cases.

35.    Additionally, WTW has performed services for, and may currently perform services for, entities that hold, or may, in the future, hold certain of the Debtors' debt in beneficial accounts on behalf of unidentified parties. Because distressed debt is actively traded in commercial markets, WTW may be unaware of the actual holder of such debt at any given moment. WTW also performs services for numerous entities in unrelated matters that may buy and/or sell distressed debt, claims, or equity interests of chapter 11 debtors. Similarly, as a large firm, WTW may perform services for creditors/investors of or parties interested in investing in one or more parties in interest in these cases. Despite the efforts described herein to identify and disclose WTW's connections with the parties in interest in these chapter 11 cases, and because the Debtors

have numerous relationships, WTW is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if any new material, relevant facts, or relationships are discovered or arise, WTW will promptly file a supplemental disclosure with the Court.

## VI.    WTW IS DISINTERESTED

36.    Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe WTW does not hold or perform services for an interest adverse to the Debtors' estates in the matters upon which WTW is to be employed, and that WTW is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

37.    WTW is not a creditor of the Debtors.

38.    Prior to the Petition Date, the Debtors paid WTW approximately $75,000.00 on account of the Services.  Since the Petition Date, the Debtors have paid WTW approximately $375,000.00 on account of the Services.

## VII.   NO DUPLICATION OF SERVICES

39.    The Services of WTW will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases.  WTW understands that the Debtors have retained and may retain additional professionals during the term of the engagement. WTW will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## VIII.  PROFESSIONAL COMPENSATION

40.    WTW will apply to the Court for allowances and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Administrative Order M-447 (*Amended Guidelines for Fees and*

*Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)) (the "Local Guidelines"), the U.S. Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines," and together with the Local Guidelines, the "Fee Guidelines"), the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 1745] and any further orders of the Court in these chapter 11 cases regarding professional compensation and reimbursement of expenses (the "Orders"). Subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and the Orders, the Debtors propose to compensate WTW as contemplated in the SOW on an hourly basis subject to the fee limit as described below:

| Consultant | Hourly Fees |
|---|---|
| Senior Director | $950 – $1,130 |
| Director | $800 – $925 |
| Associate Director | $625 – $750 |
| Senior Associate | $525 – $585 |
| Associate | $425 – $520 |
| Analyst | $360 – $385 |

41.    Pursuant to the SOW, WTW will charge the Debtors on a time and expense basis and previously received an initial retainer in the amount of $75,000.00 (the "Initial Retainer"). Since the Petition Date, WTW received from the Debtors six subsequent retainers of $75,000.00 (each, the "Subsequent Retainers") for a total of $375.000.00. WTW may apply the Initial Retainer and Subsequent Retainers to fees as they are approved by the Court. Billing rates are

12

evaluated periodically to ensure they are consistent with market practice and may change over time.  The current hourly rates for the levels of personnel expected to work on this matter are as follows:

**Hourly Fees**

| Position | Hourly Rate |
|---|---|
| Senior Directors | $950 – $1,130 |
| Directors | $800 – $925 |
| Associates | $415 – $545 |
| Support | $210 |

42.     WTW recognizes and has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim and final fee awards are subject to approval by the Court.  The compensation structure described above and set forth in the SOW is consistent with the compensation structure and amounts generally charged to compensation consulting clients of WTW for comparable engagements, both in and out of bankruptcy, though facts and circumstances of each case dictate the final fees payable to WTW.  Furthermore, the compensation structure is consistent with WTW's normal and customary billing practices for cases of comparable size and complexity requiring the level and scope of services to be provided in these chapter 11 cases.  Additionally, in accordance with the terms of the SOW, WTW will invoice the Debtors for its reasonable out-of-pocket expenses charged during these chapter 11 cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use, or value added tax, as well as non-ordinary costs such as secretarial and other overtime.  It is not the practice of WTW's professionals to keep detailed time records in one-tenth of an hour increments (*i.e.*, six-minute increments) as customarily kept by attorneys who are compensated subject to

13

approval of the Bankruptcy Court.  Instead, the customary practice of WTW's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in one-quarter of an hour increments (*i.e.*, fifteen-minute increments).  Thus, WTW requests that this Court allow WTW's professionals to provide the following in its monthly, interim, and final fee applications:  (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly, interim, and final fee application that WTW files in these chapter 11 cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in fifteen-minute increments, describing the services rendered by each professional and the amount of time spent on each date.

43.     No promises have been received by WTW, or any consultant of, counsel to, or analyst of WTW, as to payment or compensation in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Fee Guidelines.  Furthermore, WTW has no agreement with any other entity to share compensation received by WTW or by such entity.

44.     The Application requests approval of WTW's retention on rates, terms, and conditions consistent with what WTW charges non-chapter 11 debtors, namely, prompt payment of WTW's hourly rates, as adjusted from time to time, and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable.  Subject to these terms and conditions, WTW intends to apply for allowance of compensation for professional services rendered in these chapter 11 cases and for reimbursement of actual and necessary expenses relating thereto, in accordance with the applicable

14

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Fee Guidelines.

## IX.    INDEMNIFICATION

45.    The MSA, which the SOW incorporates by reference, does not contain indemnification rights.

## X.    LIMITATION OF LIABILITY

46.    The MSA, which the SOW incorporates by reference, contains standard limitations of liability provisions with respect to WTW's Services.  Such provisions are customary and reasonable terms of consideration for professionals such as WTW for proceedings both out of court and in chapter 11.  The terms and conditions of the SOW, including the limitation of liability provisions, were negotiated by the Debtors and WTW at arm's length and in good faith.

47.    The foregoing constitutes the statement of WTW pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016.

*[Remainder of page intentionally left blank]*

15

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.

San Francisco, California                          _/s/ Josephine Gartrell_
Dated:  May 30, 2023                     Name:       Josephine Gartrell, Esq.
                                         Title:      Senior Director