Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 1766** |

**NOTICE OF THIRD ADDITIONAL STATEMENT OF WORK RELATED
TO THE RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP
AS TAX COMPLIANCE AND TAX ADVISORY SERVICES PROVIDER**

PLEASE TAKE NOTICE that, on July 13, 2022, certain of the above-captioned debtors and debtors in possession (collectively, the "Original Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). On December 7, 2022, debtors and debtors in possession GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under chapter 11 of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Bankruptcy Code in this Court (the GK8 Debtors together with the Original Debtors, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, on November 18, 2022, the Debtors filed the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider, Effective as of July 13, 2022 and (II) Granting Related Relief* [Docket No. 1404] (the "Retention Application").

**PLEASE TAKE FURTHER NOTICE** that, on December 20, 2022, the Court entered the *Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider, Effective as of July 13, 2022 and (II) Granting Related Relief* [Docket No. 1766] (the "Retention Order"), pursuant to which the Court authorized the Debtors to retain and employ Ernst & Young LLP ("E&Y") as the Debtors' tax compliance and tax advisory services provider on the terms set forth in the Retention Application and the Retention Order.[2]

**PLEASE TAKE FURTHER NOTICE** that, on March 17, 2023, the Debtors filed the *Notice of Additional Statement of Work Related to the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider* [Docket No. 2266] to enter into an additional statement of work for the engagement of E&Y to provide certain income tax compliance services pursuant to the terms of the Master Services Agreement attached to the Retention Application as Exhibit 1 (the "Master Services Agreement").

**PLEASE TAKE FURTHER NOTICE** that, on May 30, 2023, the Debtors filed the *Notice of Second Additional Statement of Work Related to the Retention and Employment of Ernst & Young LLP as Tax Compliance and Tax Advisory Services Provider* [Docket No. 2730] to enter

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Retention Application or Retention Order.

into an additional statement of work for the engagement of E&Y to provide certain services to ensure audit readiness and transaction readiness of the Debtors pursuant to the terms of the Master Services Agreement.

**PLEASE TAKE FURTHER NOTICE** that E&Y and the Debtors desire to enter into an additional statement of work (the "Third Additional Statement of Work"), attached hereto as **Exhibit A**, dated as of June 9, 2023, for the engagement of E&Y to provide certain transfer pricing services pursuant to the terms of the Master Services Agreement.

**PLEASE TAKE FURTHER NOTICE** that fees will be paid by the Debtors for the services, as set forth in the Third Additional Statement of Work and the Engagement Letters attached to the Retention Application.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to paragraph 14 of the Retention Order, the Debtors must file the Third Additional Statement of Work with the Court, serve the Third Additional Statement of Work upon the applicable notice parties (the "Notice Parties"), and any of the Notice Parties may object to the proposed Third Additional Statement of Work and file an objection with the Court within fourteen days of service of this notice. To the extent any party timely files an objection, the Debtors will promptly request that the Court set a hearing on the matter.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to paragraph 14 of the Retention Order, absent an objection within fourteen days of the filing and service of the Third Additional Statement of Work, such Third Additional Statement of Work shall be deemed approved pursuant to the Retention Order (without any further order being required to be entered by the Court).

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| New York, New York<br>Dated: June 14, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900<br>Email:  jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:  (312) 862-2000<br>Facsimile:  (312) 862-2200<br>Email:  patrick.nash@kirkland.com<br>  ross.kwasteniet@kirkland.com<br>  chris.koenig@kirkland.com<br>  dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

## Exhibit A

**Additional Statement of Work**



Ernst & Young LLP  Tel: +1 212 773 3000
One Manhattan West  ey.com
New York, NY 10001

**Statement of Work**

This Statement of Work, dated June 9, 2023 (this "SOW") is made by Ernst & Young LLP ("EY") and Celsius Network, LLC on behalf of itself and its affiliated entities ("Client"), pursuant to the Agreement, dated July 13, 2022 (the "Agreement"), between EY and Celsius Network, LLC which was executed in connection with the Client filing a petition under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on July 13, 2022 with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and describes certain services that EY will perform for the Client during the Client's Chapter 11 proceedings. This SOW shall be effective as of the date of its approval by the Bankruptcy Court in the proceedings captioned, In re Celsius Network LLC, et al., No. 22-10964 (MG) (Bankr. S.D.N.Y.), pursuant to the procedures set forth in the Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Consulting Services Provider, Effective as of July 13, 2022, and (II) Granting Related Relief [Docket No. 1766].

This SOW incorporates the Agreement by reference to form a contract. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement.

**Scope of Services**

In connection with the Client's bankruptcy proceedings (the "Transaction"), EY will advise and assist with various matters as described below. Refer to the table for additional details.

Audit Readiness and Transaction Readiness:

Assist the Client in drafting various technical accounting and financial reporting memos, as determined by management, as well as assisting with the preparation of financial documents including, but not limited to, annual and interim financial statements and Form 10 Registration Statement. Additionally, assist the Client to with their assessment of audit and/or public company readiness.

Refer to the table below for additional details:

| Category | Activities | Deliverables |
|---|---|---|
| Assistance with SEC pre-clearance letter | 1) Assist the Client in their review of their SEC pre-clearance letter related to predecessor analysis<br>2) Assist the Client with their preparation related to communication with SEC staff and related follow-up communications.<br>3) Assist the Client in drafting a predecessor analysis memo, if requested | 1) Commentary on the SEC pre-clearance letter and process<br>2) Predecessor analysis whitepaper |
| Ad-hoc technical accounting and financial reporting support, if requested | 1) Assist the Client in benchmarking financial statement disclosures against industry practice<br>2) Assist the Client in providing guidance/suggested interpretations of accounting standards, including general provisions and high-level application to an illustrative fact pattern. This support may include any Fresh Start accounting topics to the extent determined applicable by management<br>3) Assist the Client to identify relevant existing authoritative guidance or literature<br>4) Assist the Client with the assessment of the accounting impact of emergence from bankruptcy, including income tax accounting, to allow Client to apply fresh-start accounting in accordance with ASC 852, if applicable:<br>   a. Assist the Client with the technical fresh-start accounting and reporting requirements, including the applicability of fresh-start, identification of accounts (including income tax accounts) impacted by fresh-start accounting and the fresh start reporting date. Such assistance could include preparation of spreadsheets and journal entries to be approved and recorded by the client to summarize the implications of fresh start accounting.<br>   b. Assist the Client with your preparation of templates for the financial statement disclosure requirements for the financial statements upon emergence. | 1) Peer company benchmarking analysis<br>2) As requested by management on as needed basis:<br>   a. Examples of application of accounting standards, financial statement presentations and disclosure practices in public filings or other materials<br>   b. Technical accounting whitepapers/policies documenting your conclusions related to the accounting treatment for management review and approval<br>3) Draft supporting spreadsheets and example journal entries, if fresh-start |

| | | |
|---|---|---|
| | | accounting is applicable<br>4) Preparation of templates for financial statement disclosure requirements, if fresh-start accounting is applicable |
| Technical Accounting Policies and Positions Papers | 1) Assist the Client in drafting critical, as determined by the Client, accounting whitepapers, accounting policies, and compiling related supporting documentation. | 1) Draft white papers and accounting policies |
| Audit Readiness Support | 1) Assist the Client with drafting and / or enhancing existing audit supporting documentation which may include the periods related to the audit of the December 31, 2020, 2021, and 2022 financial statements.<br>2) Assist the Client with documenting critical internal controls over financial reporting and related IT general controls, including, but not limited to:<br>   a. Document process flows, policies, and risk control matrices f<br>   b. Document the Service Organization Control (SOC) report review process, requirements, and Complimentary User Entity Controls (CUEC) mapping.<br>   c. Assist with documentation of design and implementation of monitoring controls over third party data and operations.<br>3) Assist the Client with developing and documenting key business processes and controls, including, but not limited to:<br>   a. Develop policies, procedures, controls around Information Used by the Entity (IUE) and Information Provided by the Entity (IPE) maintenance.<br>   b. Develop and document key business processes, which includes process flowcharts, narratives, and / or risk control matrices | 1) Draft supporting audit documentation<br>2) Draft risk control matrices<br>3) Draft process flow diagrams or narratives.<br>4) Draft IUE / IPE Tracker |

| Annual Historical Financial Statement Support (December 31, 2020, 2021 and 2022) | 1) Assist the Client in their review of the December 31, 2020 and 2021 historical predecessor financial statements. Provide comments and feedback, as appropriate<br>2) Assist the Client with the compilation of the predecessor's December 31, 2022 financial statements in accordance with US GAAP and SEC requirements<br>3) Assist the Client drafting US GAAP Disclosure Checklist and provide comments and, based on your current disclosures, provide comments and observations related to required US GAAP and SEC disclosures | 1) Comments related to the December 31, 2020 and 2021 financial statements<br>2) Draft financial statements with footnote disclosures for management review and approval for December 31, 2022<br>3) Draft US GAAP Disclosure and SEC Reporting Checklist with identified gaps |
|---|---|---|
| Interim Financial Statement Compilation Support (3/31/2023 & 6/30/2023) and other interim periods as necessary | 1) Assist the Client in the compilation of the March 31, 2023 and June 30, 2023 interim, unaudited financial statements<br>2) Assist the Client drafting US GAAP Disclosure Checklist and provide comments and, based on your current disclosures, provide comments and observations related to required US GAAP and SEC disclosures | 1) Draft US GAAP Disclosure and SEC Reporting Checklist<br>2) Draft financial statements with footnote disclosures for management review and approval |
| Support of Tax Provision | 1) Assist the Client with the preparation of the income tax provision for the historical 2022 predecessor financial statements along with related footnotes<br>2) Assist the Client with preparation or review of uncertain tax position reserve analysis, including review of organizational structure, historical tax filings and technical positions, tax attributes, and other potential exposure areas | 1) Income tax footnote disclosure and supporting documentation<br>2) Uncertain Tax Position Analysis |
| Initial Registration Statement on Form 10 Support | 1) Assist the Client, with drafting the form and content of the Management's Disclosure & Analysis ("MD&A") to be included in the initial filing with the SEC related to the Transaction, if needed<br>2) Assist the Client, in drafting the S-X Article 11 pro forma financial statements, along with supporting document, if needed | 1) Draft MD&A to be included in the initial Form 10 submission for management review and approval<br>2) Draft Article 11 pro forma financial |

| | | |
|---|---|---|
| | 3) Assist the Client in drafting a business combination memo or other memos related to the Transaction, as needed<br>4) Assist the Client in preparing NewCo financial statements for the Form 10 Registration Statement, if requested | statements and note disclosures to be included in the initial filing for management review and approval<br>3) Draft NewCo financial statements for management review and approval, if requested |
| Public Company Readiness Assessment | 1) Assist the Client in their assessment of public company readiness as it relates to various functional areas including, but not limited to, finance and accounting, human capital, corporate governance, legal, etc.<br>2) Assist the Client in drafting a high-level gap analysis in relation to public company readiness for in-scope activities and/or functional areas<br>3) Assist the Client in drafting a high-level roadmap to address public readiness gaps | 1) Public company readiness assessment report for selected in scope areas<br>2) High-level roadmap to address public company readiness gaps |

**Limitations on scope**

EY will not render an assurance report or opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. EY will also not provide any legal opinion or legal advice.

The specific nature of the Services will depend both on the amount of detail Client provides to EY and the timeframe within which Client requires EY's assistance.

Any additional services to be performed by EY outside the scope of the Services set forth above ("Additional Services") or any change in the scope of the Services will be mutually agreed in writing by the Parties.

**Client specific obligations and general assumptions**

1. Our ability to perform the Services are dependent upon Client's timely and accurate performance of its responsibilities under this SOW and the Agreement. EY will not be responsible for any delays in the performance of the Services if any of the Client responsibilities are not reasonably fulfilled. Should any of the scope of Services, assumptions and responsibilities of either party change, then the impact to timeline, resources and fees will be reassessed and mutually agreed by the Parties in writing.

2. The Services are advisory in nature. Client will assign a qualified person to oversee the Services. Client is responsible for all management decisions relating to the Services, the use or implementation of the output of the Services and for determining whether the Services are appropriate for Client's purposes. Client will provide timely and adequate access to project sponsors, project managers, key stakeholders and subject matter resources necessary for EY to perform the Services.

3. Client will provide qualified and experienced resources ("Client Resources") to support the Project. The ongoing support and/or replacement of the Client Resources will be the responsibility of Client. The Client Resources must be stable and available during normal working hours and outside of normal working hours as may be reasonably necessary to allow EY to perform the Services. Client shall promptly make any changes to the Client Resources necessary to be compatible with EY requirements.

4. Client will provide timely and adequate access to facilities, equipment, tools, supplies, systems, relevant applications, data, documentation and other information reasonably necessary for EY to perform the Services.

5. Client shall complete all process and organizational changes required to support the Services. Except to the extent expressly provided in this SOW, EY shall not provide process analysis, design or reengineering as part of the Services.

6. Client will provide timely and adequate access to any third-party software, as reasonably required, to be used by EY in performing the Services. Client has previously obtained or will promptly obtain all necessary consents from Client's licensors and third-party service providers in connection with the Services.

7. Client is responsible for the performance of the hardware, any third-party software, databases and communications networks (including access for internal and external users).

8. All hardware and any third-party software provided by the Client will perform in accordance with their respective specifications. EY is not responsible for faults in hardware, or any third-party software, including faults that delay or increase the cost of the Services. Faults may include product bugs, failure of a product to perform advertised functionality, or failure of a product to properly integrate with other products.

9. Client shall identify and comply with all legal and other requirements applicable to the conduct of its business and other activities.

10. EY's ability to perform the Services may be adversely affected by the lack of availability of internal Client personnel and/or lack of access to internal Client data, and environments. EY will work with Client to determine the specific Client resource needs during the discovery phase of the project.

11. EY will have no liability to Client for any nonperformance, delayed performance or increased fees resulting from Client's breach of its obligations under this SOW or the Agreement that has not been cured by the Client within fifteen (15) days from EY's written notice of such breach. Client shall cooperate fully with EY in the provision of the Services and assign personnel with relevant training and experience to work with EY. In order to enable EY to perform the Services, Client will meet its assigned milestones.

12. Client alone is responsible for any decisions to implement actions identified in the Services, including as necessary to apply generally accepted accounting principles ("GAAP") appropriately and for compliance with applicable regulatory requirements, including the determination of Client's accounting policies. While EY will assist Client in drafting the financial statements, Client is solely responsible for

the financial statements, including making all of the judgments inherent in preparing them. Client is responsible for all management decisions relating to the Services, for the use or implementation of the output of the Services, for determining whether the Services are appropriate and for Client's purposes. Client shall assign a qualified person to oversee the Services.

13. Client is responsible for notifying Client's independent auditor of the performance of the Services and consulting with them on the application of accounting principles and Client's related accounting policies. Client agrees that EY may make inquiries of Client's independent auditor in connection with the performance of the Services, provided that, representatives from Client are present during the discussion.

14. EY will not render an assurance report or opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation, as those terms are identified by the American Institute of Certified Public Accountants ("AICPA") or by the Public Company Accounting Oversight Board ("PCAOB"). Accordingly, EY will not express any form of assurance on accounting matters, financial statements, any financial or other information or internal controls as part of the Services. None of the Services or any Reports will constitute any legal opinion or legal advice. EY will not conduct a review to detect fraud or illegal acts.

15. EY will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by Client solely on information provided by Client's vendors, directly or through Client. EY is not responsible for the completeness or accuracy of any such third-party information or for confirming any of it.

16. Notwithstanding anything to the contrary in the Agreement or this SOW, Client may provide Deliverables relating to the Accounting Services to Client's external auditor without its signing such a letter, provided that Client inform Client's external auditor in writing that it does not acquire any rights against EY and EY does not assume any duties or obligations, to the auditor or otherwise, as a result of such access.

17. The U.S. Department of Labor (DOL) regulations, at 20 CFR § 655.734(a)(1)(ii)(A), require the posting of notice of a Labor Condition Application (LCA) in instances where individuals holding certain visas (e.g., H-1B) will be working onsite. Where applicable, EY and the Client will work together to develop an appropriate notice to enable compliance with this requirement.

18. EY will not identify, address, or correct any errors or defects in Client computer systems, other devices, or components thereof ("Systems"), whether or not due to imprecise or ambiguous entry, storage, interpretation, processing of, or reporting of data, provided that EY should be liable for any damages it causes to the extent resulting from its negligence or willful misconduct in the performance of the Services. EY will not be responsible for any defect or problem directly arising out of or related to data processing in any Systems by the Client.

19. In performing the services, EY will not take any action that EY reasonably believes could impair its independence with respect to any of its audit clients or those of other EY member firms. For example, EY will not instruct, supervise, or contract with an entity, without first determining in its sole discretion that such an action would not impair our independence.

20. Managing any relationships with 3rd party applications will be the responsibility of the Client.

21. Because EY is Oracle's external auditor, EY's roles and responsibilities in connection with the services that relate to certain activities or deliverables of Oracle are subject to certain restrictions as determined solely by EY. For example, EY will not direct, manage, oversee or have any direct responsibility for any activities by or on behalf of Oracle or any other audit clients. Client will lead all combined meetings between Celsius Networks, Inc, Oracle, and EY. Client will manage any Oracle personnel assigned to production support. EY may log Service Requests (SRs) with Oracle on behalf of the client for defects

under the client's standard support and maintenance contract. EY will not perform such tasks if the SR is related to an enhancement. Furthermore, if EY logs a defect with Oracle on behalf of Celsius Networks, Inc and it is later deemed an enhancement, Client will be responsible for managing the request and any correspondence with Oracle.

**Other Provisions**

EY will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by Client solely on information provided by Client vendors, directly or through Client. EY is not responsible for the completeness or accuracy of any such information or for confirming any of it.

Notwithstanding anything to the contrary in the Agreement In connection with the Services, either party may use certain data, tools, models, methodologies and other materials owned or developed by such party, or licensed from third parties, prior to, or independently from, its engagement hereunder (including all intellectual property rights thereto and any related improvements and knowledge developed while performing the Services, the "Pre-Existing Materials").  All Pre-Existing Materials used by a party or its authorized users in the course of the performance of the Services shall remain such party's or its licensor's property, and neither party shall have any rights in or to any Pre-Existing Materials of the other party as a result of the performance of the Services, except to the extent necessary to permit Client to use, and EY to provide, the Services and Deliverables under the applicable Contract. EY hereby grants to Client a license to use in the course of Client's business operations and for Client's business purposes the Pre-Existing Materials (including any intellectual property therein), solely to the extent required for Client to use the Deliverables or Services as contemplated in the applicable Statement of Work. Similarly, Client grants to EY a license to use Client's Pre-Existing Materials to deliver the Services as contemplated in the applicable Statement of Work.

The following provisions apply to all Deliverables and new developments that are not Pre-Existing Materials:

    (i) "Custom Deliverables" shall mean all newly developed Deliverables developed for Client under the applicable Contract that are uniquely applicable to Client's business or are based on Client's specific requirements. As between the parties, Client is and shall be deemed the owner throughout the world of all rights (including intellectual property rights) in and to the Custom Deliverables, subject to the license rights provided in connection with EY's Pre-Existing Materials contained in the Custom Deliverables (if any).  Without limiting the generality of the foregoing, to the extent any Custom Deliverables are copyrightable subject matter, except with respect to EY's Pre-Existing Materials, the Custom Deliverables shall constitute "works made for hire" for Client, within the meaning of the US Copyright Act of 1976, as amended, and Client shall be deemed to be the "author" and owner of all such works.  If it is determined that the Custom Deliverables do not qualify as "works made for hire," then the copyright in such Custom Deliverables shall be deemed transferred and assigned, in perpetuity, to Client by this Agreement. Furthermore, at Client's request and expense, EY shall timely assist Client in perfecting, and registering, all copyrights relating to the Custom Deliverables.  If it is determined that the Custom Deliverables do not qualify as "works made for hire" and are not assignable hereunder, then EY hereby grants Client an irrevocable, perpetual, non-exclusive, worldwide, non-transferrable, royalty-free right and license to the copyright in the Custom

                Deliverables, subject to the license rights provided in connection with EY's Pre-Existing Materials.

     (ii)  EY retains all rights (including intellectual property rights) in and to any Deliverables or other work product developed in the course of the provision of the Services that are generally-applicable tools, methodologies or developments (i.e., those that do not constitute Custom Deliverables) ("collectively, the "EY Materials"), provided that EY hereby grants to Client a right to use such EY Materials as EY's Pre-Existing Materials pursuant to the clause (a) of this Agreement. For clarity, all working papers (excluding Custom Deliverables maintained therein) are deemed to be EY Materials.

Client is permitted to use information in EY's Deliverables that are not issued on EY letterhead and do not bear any EY branding or otherwise refer to EY ("Whitepaper Deliverable"), or excerpts from such Deliverables, in communication with third parties without the restrictions on disclosure set forth in the Agreement, as long as (i) there is no reference to, or communication of, EY's or any of EY Firm's involvement in the development of such Deliverable, and (ii) Client assumes sole responsibility for the contents of the Deliverable.

**Timetable**

Unless otherwise agreed, and subject to the terms of the Agreement, EY expects to perform the Services during the period from June 27, 2023 to October 31, 2023, subject to extension.

**Contacts**

Client has identified Chris Ferraro as Client's contact with whom EY should communicate about these Services. Client has additionally authorized Joel Block to communicate with EY about these services. Client's contact at EY for these Services will be Sabina Zaman and Steve Beattie.

**Fees**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

Client shall pay fees for the Services based on the actual time that our professionals spend performing them, billed at the following agreed upon rates for each level listed below while the Services under this SOW are being performed.

The professional fees for the Services will be charged at the rates per hour in the table below.

| Level | Rate per hour (USD) |
|---|---:|
| Partner / Principal / Managing Director | $850 |
| Senior Manager | $695 |
| Manager | $595 |
| Senior | $450 |
| Staff | $295 |

EY will provide the Client with regular updates of its estimated total incurred fees and expenses to date under this SOW biweekly or at increments of $500,000 of incurred fees and expenses, whichever occurs sooner. Such updates shall be provided for the Client's information only and shall not alter the invoice schedule detailed below.

The Client may, at any time, provide written notice to EY to cease activity under this SOW, and EY shall not incur any further fees or expenses following the receipt of such notice.

**Invoice Schedule**

EY will bill Client for our fees, expenses, and applicable taxes or other charges, if any, on a monthly basis, in accordance with the Agreement and will be paid pursuant to the procedures set forth in the *Order (I) Authorizing the Retention and Employment of Ernst & Young LLP as Consulting Services Provider, Effective as of July 13, 2022, and (II) Granting Related Relief* [Docket No. 1766].

**Expenses**

Client shall reimburse EY for expenses incurred in connection with the performance of the Services, including reasonable and customary out-of-pocket expenses such as travel, meals accommodations and other expenses specifically related to this engagement. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients. Actual out-of-pocket costs incurred by EY while executing the Services will be billed separately.

Client shall also pay all applicable taxes (including VAT and others imposed) incurred in connection with the delivery of the Services or the Reports (except for taxes imposed on EY's income). Client shall also pay any administrative costs that result from billing arrangements specifically requested by Client.

**Billing and Payment**
Payment is due as agreed to in the Agreement.

In witness whereof, the parties have executed this SOW as of the date set forth above.

Ernst & Young LLP

By: *Sabina Zaman*
Sabina Zaman
Partner

Celsius Network, LLC

By: *Chris Ferraro*
Chris Ferraro
Interim Chief Executive Officer, Chief Financial Officer, Chief Restructuring Officer