**Hearing Date: June 28, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: June 21, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## NOTICE OF HEARING ON
## DEBTORS' THIRD MOTION FOR ENTRY
## OF AN ORDER (I) EXTENDING THE DEBTORS'
## EXCLUSIVE PERIOD TO SOLICIT ACCEPTANCES
## OF A CHAPTER 11 PLAN PURSUANT TO SECTION 1121
## OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Third Motion for Entry of an*

*Order (I) Extending the Debtors' Exclusive Period to Solicit Acceptances of a Chapter 11 Plan*

*Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "Motion") will be held on **June 28, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will take place in a hybrid fashion both in person and via Zoom for Government.  Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408.  For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.    When making an eCourtAppearance, parties must specify whether they are making a "live" or "listen only" appearance.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on Tuesday, June 27, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on June 28, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on June 28, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials will not be admitted

into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order") by **June 21, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: June 14, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DEBTORS' THIRD MOTION FOR ENTRY
OF AN ORDER (I) EXTENDING THE DEBTORS'
EXCLUSIVE PERIOD TO SOLICIT ACCEPTANCES
OF A CHAPTER 11 PLAN PURSUANT TO SECTION 1121
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state

the following in support of this motion (this "<u>Motion</u>"):[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "<u>Campagna Declaration</u>").

**Preliminary Statement**

1.        In October 2022, the Debtors commenced a marketing and sale process to identify the party that would maximize the value of the Debtors' liquid and illiquid assets for the benefit of their account holders.  That extended sale process has now reached its conclusion: following a competitive auction process, the Debtors and the Committee jointly designated Fahrenheit, LLC as the winning bidder.  As illustrated in the chart attached hereto as **Exhibit B**, the winning bid has vastly improved terms compared to the initial NovaWulf stalking horse bid, which will result in hundreds of millions of dollars of additional value for the Debtors' creditors.[3]  Through the improved terms of the Fahrenheit bid, the Debtors' creditors will receive much more liquid cryptocurrency in the initial distribution to be made shortly after the effective date of the Debtors' chapter 11 plan.  Additionally, Fahrenheit's members are proven leaders in bitcoin mining, cryptocurrency staking, and alternative cryptocurrency investments, and their leadership and expertise will increase the value of the "NewCo" that will operate and manage the Debtors' illiquid assets for the Debtors' creditors, who will receive the equity of the NewCo under the Plan.  The Debtors and the Committee also designated the Blockchain Recovery Investment Consortium (the "BRIC") as the "backup bid," so that the Debtors can promptly pivot to an orderly wind-down in case the Fahrenheit bid cannot be confirmed or consummated for any reason.[4]

---

[3]    A comparison of the stalking horse bid and the Fahrenheit bid is set forth in more detail in the comparison chart attached hereto as **Exhibit B**.  The comparison chart attached hereto as **Exhibit B** is for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan Sponsor Agreement and Plan Term Sheet (each as defined in the Plan Sponsor Agreement Notice and attached thereto as Exhibit A and Exhibit B, respectively).  To the extent there is any discrepancy between the summary contained in **Exhibit B** and the terms set forth in the Plan Sponsor Agreement and the Plan Term Sheet, as applicable, the terms of the Plan Sponsor Agreement and the Plan Term Sheet shall govern.

[4]    The terms of the Fahrenheit bid and BRIC backup bid are set forth in the *Notice of Successful Bidder and Backup Bidder* [Docket No. 2713].

2.      Prior to the commencement of the auction, the Debtors filed the initial version of

their chapter 11 plan that was to be sponsored by NovaWulf as stalking horse bidder.  Since the

conclusion of the auction, the Debtors and the Committee have finalized the documentation for

the winning bid and the backup bid with Fahrenheit and the BRIC, including entering into plan

sponsor agreements.  On June 7, 2023, the Debtors filed the *Notice of Debtors' Entry Into a Plan*

*Sponsor Agreement* [Docket No. 2759] (the "Plan Sponsor Agreement Notice") and the *Debtors'*

*Motion for Entry of an Order (I) Authorizing and Approving Certain Fees and Expenses for the*

*Backup Plan Sponsor, and (II) Granting Related Relief* [Docket No. 2774].  Additionally,

contemporaneously herewith, the Debtors are filing a revised chapter 11 plan that includes the

terms of the Fahrenheit winning bid and the BRIC backup bid.  The Debtors, the Committee,

Fahrenheit and the BRIC are diligently working to finalize and file the accompanying disclosure

statement, which will be filed prior to the hearing on this Motion on June 28, 2023.

3.      The Debtors and the Committee are also working to generate additional consensus

for the Plan.  Specifically, the Custody Ad Hoc Group and Withhold Ad Hoc Group already

support the Plan, and the Debtors and the Committee intend to mediate the proposed treatment of

General Earn Claims and Retail Borrower Deposit Claims (as each such term is defined in the

Plan) with the Borrower Ad Hoc Group, the Earn Ad Hoc Group, and other active Earn creditors

to attempt to build additional support for the Plan.

4.      Although much progress has been made in the past few months, additional time

will be needed to obtain approval of the disclosure statement and solicit votes to accept or reject

the revised Plan.  Accordingly, the Debtors seek an additional extension of their exclusive right

to solicit a chapter 11 plan by 91 days—through September 29, 2023.  That date coincides with

the milestone for the entry of the confirmation order in the Plan Sponsor Agreement by and

between the Debtors, the Fahrenheit Group, and the Committee.  *See* Plan Sponsor Agreement

Notice at 7.  Cause exists under section 1121 of the Bankruptcy Code for this extension, which

will ensure that all stakeholders can thoroughly review and understand the revised Plan and

related disclosure statement—which have both materially changed since the filing of the

NovaWulf Plan—to decide whether to vote to accept or reject the plan in an efficient, organized

fashion.  With this extension, the Debtors are positioned to expeditiously move towards plan

confirmation.

## Relief Requested

5.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), extending the Debtors' exclusive right to solicit votes on a chapter 11

by 91 days through and including September 29, 2023 (the "Solicitation Exclusivity Period")[5]

without prejudice to the Debtors' right to seek further extensions to the Solicitation Exclusivity

Period, and (b) granting related relief.

## Jurisdiction and Venue

6.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

Amended Standing Order of Reference from the United States District Court for the Southern

District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court

entering a final order in connection with this Motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5]    Calculated pursuant to Bankruptcy Rule 9006(a).

8.      The statutory bases for the relief requested herein are section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

9.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

10.     On July 13, 2022 (the "Petition Date"), certain of the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the Campagna Declaration. The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

11.     On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of the GK8 Debtors' chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief*

*Financial Officer of GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

12.     The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 53, 1648].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 14, 2022, the Court entered an order directing the appointment of an examiner (the "Examiner") [Docket No. 820].  On September 29, 2022, the U.S. Trustee appointed the Examiner [Docket No. 920].  On April 5, 2023, the Court entered an order discharging the Examiner [Docket No. 2364].

13.     On November 9, 2022, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1317] (the "First Exclusivity Motion"), which was approved pursuant to the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1645] (the "First Exclusivity Order").  The First Exclusivity Order extended the Debtors' exclusive right to file a chapter 11 plan by ninety-seven days (the "Filing Exclusivity Period") and the Solicitation Exclusivity Period (together with the Filing Exclusivity Period, the "Exclusivity Periods") by thirty-seven days, through and including February 15, 2023.  On January 25, 2023, the Debtors filed the *Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances*

*Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1940] (the "Second Exclusivity Motion"), which was approved pursuant to the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2203] (the "Second Exclusivity Order"). The Second Exclusivity Order extended the Filing Exclusivity Period by twenty-three days through and including March 31, 2023, and the Solicitation Exclusivity Period by 114 days through and including June 30, 2023. That extension was without prejudice to the Debtors' rights to seek further extensions of the Exclusivity Periods.

14.     The Debtors filed the initial version of the Plan on March 31, 2023, and therefore no longer need to extend the deadline by which to file a chapter 11 plan. Instead, the Debtors only seek to extend the Solicitation Exclusivity Period to solicit votes on the revised Plan.

### Basis for Relief

15.     The Debtors seek an extension of the Solicitation Exclusivity Period to continue working toward their goal of confirming a value-maximizing chapter 11 plan. A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code. Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan. "[T]he point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'" *In re Burns and Roe Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994)). In these chapter 11 cases, the Solicitation Exclusivity Period set forth in section 1121(c)

of the Bankruptcy Code, as previously extended pursuant to the Second Exclusivity Order, will expire on June 30, 2023, absent further order of the Court. Extension of the Solicitation Exclusivity Period at this critical moment in these chapter 11 cases will preserve the Debtors' right to solicit votes on the revised Plan and pursue confirmation without the expensive and time-wasting intrusion of extraneous plans.

16.     Section 1121(d)(1) permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here. Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1997); *see also In re Pub. Serv. Co. of N.H.*, 88 B.R. 521, 533–34 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to afford maximum flexibility"). Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

17.     Courts in the Second Circuit and in other jurisdictions have held that the decision to extend the exclusivity periods is left to the sound discretion of the bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g., In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re McLean Indus., Inc.*, 87 B.R. 830, 833-34 (Bankr. S.D.N.Y. 1987); *First Am. Bank of N.Y. v. Sw. Gloves & Safety*

*Equip., Inc.*, 64 B.R. 963, 965 (Bankr. D. Del. 1986). In general, as long as debtors give the

court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested

extension of exclusivity . . . should be granted." *In re Glob. Crossing Ltd.*, 295 B.R. 726, 730

(Bankr. S.D.N.Y. 2003); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y.

2011) (noting the debtors' "substantial efforts . . . to stabilize their business and develop a viable

exit strategy"). In particular, courts examine a number of factors to determine whether a debtor

has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus

whether there is "cause" for extension of the exclusivity periods. *See In re Adelphia Commc'ns

Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*,

282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*,

208 B.R. at 664–65 (identifying the below factors and noting that courts generally rely on the

same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*,

336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same). These factors include the following:

    a.    the size and complexity of the case;

    b.    the existence of good faith progress toward reorganization;

    c.    the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

    d.    whether the debtor is paying its bills as they become due;

    e.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    f.    whether the debtor has made progress negotiating with creditors;

    g.    the amount of time which has elapsed in the case;

    h.    whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands; and

i.    whether an unresolved contingency exists.

*Adelphia Commc'ns Corp.*, 336 B.R. at 674 (citing *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997)).

18.    Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g.*, *In re Express One Int'l Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Texaco, Inc.*, 76 B.R. at 327 (holding that size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).  For example, both Congress and courts recognize that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231–32, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement.");  *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

19.    Since the Second Exclusivity Extension, the Debtors have continued to progress toward confirmation.  The Debtors have, among other things: (a) completed a weeks-long, competitive auction that resulted in a bid that improved upon the stalking horse bid by hundreds of millions of dollars; (b) entered into and filed plan sponsor agreements for both Fahrenheit and

10

the BRIC; (c) filed the revised Fahrenheit Plan and drafted the related disclosure statement;

(d) had regular calls with the regulators to ensure that the revised Plan remained in compliance

with applicable regulations; (e) obtained approval of settlements with both Custody and

Withhold users; and (f) continued to distribute assets that are not property of the Debtors' estates.

20.    Sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to

extend the Soliciting Exclusivity Period as provided herein.  Each of the relevant factors weighs

in favor of an extension of the Soliciting Exclusivity Period, as follows:

- ***The Debtors' Chapter 11 Cases Are Large and Complex.***  These chapter 11 cases
  are effectively cases of first impression, as the reorganization of a cryptocurrency
  financial company is largely unprecedented.  These chapter 11 cases involve
  eleven Debtor entities and international operations with employees located across
  the United States, Australia, Canada, Serbia, Israel, and the United Kingdom.
  Furthermore, the Debtors have engaged with thousands of contract counterparties,
  creditors, and other parties in interest.  Finally, the Debtors face an ever-evolving
  regulatory regime within the United States and abroad.  While the Debtors have
  no funded debt, liabilities to account holders total over $6 billion as of the Petition
  Date.

- ***The Debtors Have Made Good Faith Progress Toward Exiting Chapter 11.***
  Since the Second Exclusivity Motion, the Debtors continued to advance these
  chapter 11 cases.  The Debtors managed a robust auction process resulting in a
  vastly improved bid, selected a backup bidder, and settled all claims between the
  Debtors, Custody Ad Hoc Group, and Withhold Ad Hoc Group.

- ***The Debtors Have Filed a Revised Plan.***  The Debtors have filed a revised Plan
  incorporating the terms of the Fahrenheit bid and BRIC backup bid.  The Debtors
  have continued working with regulators to ensure that the plan and the
  transactions contemplated therein comply with all applicable laws and
  regulations.  Furthermore, given that the NovaWulf Plan contemplated NovaWulf
  as the successful bidder, the Debtors required additional time to revise the
  existing Plan and disclosure statement to accommodate the materially different
  terms and new winning bidder, including finalizing the definitive documents with
  Fahrenheit.

- ***Extending the Exclusivity Periods Will Not Prejudice Creditors.***  Extending the
  Exclusivity Periods will allow the Debtors to complete the confirmation process
  unimpeded by distractions in the form of competing plans.  Continued exclusivity
  will permit the Debtors to continue advancing towards confirmation and eliminate
  the interference and confusion of superfluous plans.  Oscillating between two or

11

more plans would muddy the waters and needlessly waste time and money, ultimately reducing creditor recoveries. Moreover, throughout these chapter 11 cases, the Debtors have had ongoing and transparent communications with their major creditor groups and continue to meet their postpetition obligations in the ordinary course. Ultimately, extending the Solicitation Exclusivity Period will benefit the Debtors' estates, their creditors, and all other key parties in interest.

- ***The Debtors Are Paying Their Bills as They Come Due.*** Since the Petition Date, the Debtors have paid their vendors in the ordinary course of business or as otherwise provided by orders of the Court. Furthermore, the Debtors' sale of the GK8 Debtors' assets and the ability to sell stablecoins as these cases progress provides additional runway to fund the restructuring.

- ***The Debtors Are Not Seeking an Extension to Pressure Creditors.*** The Debtors are not seeking an extension of the Solicitation Exclusivity Period to pressure or prejudice their stakeholders. All creditor groups or their advisors have had an opportunity to actively participate in substantive discussions with the Debtors throughout these chapter 11 cases, and the Debtors expect to continue to engage with them regarding the plan, including through mediation with the Earn Ad Hoc Group, Borrower Ad Hoc Group, and other active creditors. Beyond these organized groups, numerous *pro se* creditors have engaged and conferred with the Debtors on important issues. To move these chapter 11 cases forward as efficiently as possible, the Debtors resolved certain threshold legal questions ahead of plan confirmation and in light of the Court's order permitting the Debtors to begin distributing cryptocurrency to customers and the Custody settlement, are returning cryptocurrency in accordance with the Court's orders. The Debtors are seeking an extension of the Solicitation Exclusivity Period to preserve and capitalize on the progress made to date in their restructuring efforts.

21. An objective analysis of the relevant factors demonstrates that the Debtors are taking all prudent measures to facilitate a successful conclusion to these chapter 11 cases. Accordingly, sufficient cause exists to extend the Solicitation Exclusivity Period as provided herein. Furthermore, similar relief is regularly granted in large chapter 11 cases in this district. *See, e.g.*, *In re All Year Holdings Ltd.*, No. 21-12051 (MG) (Bankr. S.D.N.Y Jan 20, 2023) (extending the debtor's filing and solicitation periods for the third time for a total of approximately 352 and 318 days, respectively); *In re Hermitage Offshore Servs. Ltd.*, No 20-11850 (MG) (Bankr. S.D.N.Y. Mar. 8, 2021) (extending the debtors' exclusive periods for the second time by a total of approximately 150 days); *In re Frontier Comm'cns Corp.*,

No. 20-22476 (RDD) (Bankr. S.D.N.Y. Aug. 11, 2020) (extending the debtors' exclusive periods

for a second time for a total of approximately 249 days) *In re Windstream Holdings, Inc.*,

No. 19-22312 (RDD) (Bankr. S.D.N.Y. June 22, 2020) (extending the debtors' exclusive periods

for the fourth time for a total of 427 days); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC)

(Bankr. S.D.N.Y. Mar. 4, 2019) (extending the debtors' exclusive periods for the fourth time for

a total of 359 days).[6]

22.    This extension is essential so that the Debtors may steer these chapter 11 cases to

their value-maximizing conclusion.  The Debtors understand that time is of the essence to

complete the confirmation process and anticipate filing the disclosure statement prior to the

hearing on this Motion.  The revised plan incorporating the Fahrenheit and BRIC bids is the

value-maximizing transaction resulting from the competitive auction and lengthy negotiations

that resulted in considerable and meaningful improvements to the original stalking horse bid.

Accordingly, the Debtors request an extension of the Solicitation Exclusivity Period, and reserve

the right to request further extensions of the Solicitation Exclusivity Period, as circumstances

require.

**Motion Practice**

23.    This Motion includes citations to the applicable rules and statutory authorities

upon which the relief requested herein is predicated and a discussion of their application to this

Motion.  Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

**Notice**

24.    The Debtors will provide notice of this Motion to the following parties or their

respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request of the Debtors' counsel.

Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission;(g) Fahrenheit; (h) the BRIC; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

25.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: June 14, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

   - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
             ross.kwasteniet@kirkland.com
             chris.koenig@kirkland.com
             dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) EXTENDING THE DEBTORS'**
**EXCLUSIVE PERIOD TO SOLICIT ACCEPTANCES**
**OF A CHAPTER 11 PLAN PURSUANT TO SECTION 1121**
**OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) extending the Debtors' exclusive right to solicit votes on a chapter 11 plan by 91 days through and including September 29, 2023 (the "Solicitation Exclusivity Period"), and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Any responses or objections to the Motion that have not been withdrawn or otherwise resolved are hereby overruled and denied.

3.      Pursuant to section 1121(d) of the Bankruptcy Code, the Solicitation Exclusivity Period is hereby extended by 91 days through and including September 29, 2023.

4.      Nothing herein shall prejudice the Debtors' rights to seek further extensions of the Exclusivity Periods consistent with section 1121(d) of the Bankruptcy Code or the rights of any party in interest to object to any further requests.

5.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis is expressly reserved.

6.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

8.      Notwithstanding anything to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

## Stalking Horse Bid and Fahrenheit Successful Bid Comparison

| | Stalking Horse Bid | Fahreneheit Successful Bid | Benefits |
|---|---|---|---|
| **NewCo Liquid Crypto Holdback** | $1.15+ billion | $450-$500 million | – More Liquid Cryptocurrency returned to Customers |
| **Fees** | **Variable Management Fee:** NewCo valued <$2 billion at 1.95%; $2-$3 billion at 1.75%; $3 billion+ at 1.50%. **Incentive Fee:** 10% of EST value gains in excess of 8% hurdle rate to be paid in 50% cash and 50% ESTs. Fees are not indexed to the performance of NewCo equity or the cryptocurrency market. Fees do not cover expenses for executive compensation or mining costs. | **Fixed Management Fee:** $35 million per year inclusive of (i) a $20 million management fee and (ii) a $15 million mining management fee. **Incentive Stock Units and Options:** – 5% of NewCo Equity to vest ratably over 5 years. – Stock options to purchase 5% of NewCo Equity structured in 5 tranches of 5-year options of 1.0% with one tranche vesting each year, with strike prices for each tranche determined by (i) the closing price of NewCo equity the prior year or (ii) an agreed upon cryptocurrency index. | – Significantly reduced fees<br>– Better aligned incentives with crypto market performance and customers<br>– Manager does not receive increased fees only due to cryptocurrency price appreciation<br>– Fixed Management Fee covers all C-Suite executives |
| **Management Contribution** | $45 million and 450 million HASH tokens | $50 million to purchase NewCo common stock in the primary or secondary market at the Debtors and UCC's discretion; and Mining Consideration. **Mining Consideration:** – US Bitcoin will provide the site-level employees (excluding security) for all existing facilities and any facilities developed subject to a cost cap of $2 million per 100 MW cap (any excess cost to offset mining management fees). – $395,000 per MW cap for 24 months for the construction of medium voltage ready-to-plug infrastructure (any excess cost to offset mining management fees). – $100 million in non-expiring coupons from a leading ASIC miner manufacturer (20% discount on future purchases). | – Substantial increase in total consideration to NewCo |
| **Trading** | Provenance Blockchain | **Public Listing** – Intend to publicly list a NewCo security on an exchange such as Nasdaq. – Fahrenheit has secured MOUs to provide a digital asset based security token offering that is one-to-one redeemable for exchange-listed common stock once an exchange listing is completed. – To work with the Debtors and Committee on a secondary offering. | – Publicly traded NewCo common stock with backup as a secondary security token |
| **Growth Strategy** | Not discussed | **Staking** – At NewCo's option, Proof Group will (i) provide NewCo with a royalty-free perpetual license of IP owned by Proof Group with respect to staking services ("Proof Group IP"), and (ii) commit to support new staking in NewCo through Proof Group IP. – Option for Celsius to start staking immediately through Proof Group IP at pass-through cost. **Lending:** At NewCo's option (i) Valon Technologies, Inc. ("Valon") will provide licenses and services for NewCo's lending business, and (ii) Valon and Arrington Capital will develop a crypto-secured lending business. | – Commitment to building staking and lending businesses<br>– Fahrenheit's team and partners are leaders in crypto and provide NewCo with significant domain expertise |
| **Mining** | Proposals specific to mining operations were not addressed in detail in the Stalking Horse Bid. | US Bitcoin will manage mining operations and has committed to making significant investments into NewCo's mining business, including, among other things: development of new facilities, options to purchase additional facilities and other infrastructure, and a joint venture with a leading ASIC miner manufacturer. | – Enhanced Strategy and Commitment for Developing Staking and Lending Businesses |