Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Adv. Case No. 23-01025-mg

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   HERRMANN,

14                   Plaintiff,

15           v.

16   CELSIUS NETWORK LLC ET AL.,

17

18                   Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20   Adv. Case No. 22-01179-mg

21   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

22   FRISHBERG,

23                   Plaintiff,

24           v.

25   CELSIUS NETWORK LLC ET AL.,

Page 2

1

2              Defendants.

3

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5                    United States Bankruptcy Court

6                    One Bowling Green

7                    New York, NY  10004

8

9                    May 17, 2023

10                    10:00 AM

11

12

13

14    B E F O R E :

15    HON MARTIN GLENN

16    U.S. BANKRUPTCY JUDGE

17

18    ECRO:  KS

19

20

21

22

23

24

25

1   HEARING re Hearing Using Zoom for Government Re: Debtors'

2   Motion Seeking Entry of an Order (I) Authorizing the Debtors

3   to Enter into Witness Cooperation Agreements with Certain

4   Current and Former Employees, (II) Authorizing Reimbursement

5   of Past and Future Out-Of-Pocket Expenses of Cooperating

6   Witnesses, Including Attorneys Fees, and (III) Granting

7   Related Relief. Doc## 2147, 2223, 2227, 2230, 2269, 2308,

8   2328, 2341, 2390, 2393, 2395, 2441, 2504, 2520, 2643, 2644)

9

10  HEARING re Hearing Using Zoom for Government RE: Application

11  of Connor Nolan Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and

12  503(b)(4) for Allowance and Payment of Professional Fees and

13  Expenses Incurred in Making a Substantial Contribution (ECF

14  Doc. # 2045, 2434, 2373, 2374, 2382, 2386, 2387, 2441, 2520,

15  2599, 2616)

16

17  HEARING re Hearing Using Zoom for Government RE: Motion for

18  Stay Pending Appeal (Doc## 2545, 2375, 2612)

19

20  HEARING re Motion for Entry of an Order (I) to Investigate

21  if the Debtor and/or Debtors Legal Counsel Aided in Granting

22  Financial Relief to an Unsecured Creditor after the February

23  9th, 2023 Proof of Claim Bar Date Occurred, (II) to Remedy

24  Any Clear Violations of Bankruptcy Law if Such Acts are

25  Found to be True, (III) Granting Related Relief filed by

Page 4

1   Jason Amerson. (Doc. no. 2252, 2330, 2333, 2530, 2532,

2   2615).

3

4   HEARING re AMENDED Motion for Entry of an Order (I) To

5   Request an Injunction or Sanction on Inappropriate

6   Communications Between Debtor and Unsecured Creditor(s),

7   (II) Granting Related Relief. (Doc. no. 2314, 2235, 2332,

8   2532, 2615).

9

10  Adversary proceeding: 23-01025-mg Herrmann v. Celsius

11  Network LLC et al

12  HEARING re Pre-Trial Conference Using Zoom for Government.

13  (Doc #1 to 6)

14

15  Adversary proceeding: 22-01179-mg Frishberg v. Celsius

16  Network LLC et al

17  HEARING re Pretrial Conference Using Zoom for Government.

18  (Doc ## 1, 16 to 19, 21 to 27).

19

20  HEARING re Status Conference RE: Celsius/Core Scientific

21  Dispute. (Doc ## 917, 997, 1003, 1114, 1130, 1132, 1133,

22  1140, 1139 to 1144, 1177, 1182, 1200, 1204, 1283, 1366,

23  1694, 1841, 1907, 2055, 2413))

24

25  Transcribed by:  Sonya Ledanski Hyde

Page 5

1    A P P E A R A N C E S :

2

3    KIRKLAND & ELLIS LLP

4         Attorneys for the Debtor

5         300 N La Salle Street

6         Chicago, IL 60654

7

8    BY:  ROSS M. KWASTENIET

9         CHRIS KOENIG

10

11   WHITE & CASE LLP

12        Attorneys for Official Committee of Unsecured Creditors

13        555 South Flower Street, Suite 2700

14        Los Angeles, CA 90071

15

16   BY:  AARON COLODNY

17

18   UNITED STATES DEPARTMENT OF JUSTICE

19   Attorneys for the U.S. Trustee

20   201 Varick Street

21   New York, NY 10014

22

23   BY:  SHARA CORNELL

24

25

```
 1   WIGGIN AND DANA LLP

 2        Attorney for Connor Nolan

 3        265 Church Street

 4        New Haven, CT 06510

 5

 6   BY:  JAMES I. GLASSER

 7

 8   IMMANUEL HERRMANN, Pro Se Creditor

 9

10   ALSO PRESENT:

11   CHRISTOPHER FERRARO, Celsius Network LLC

12   DEAN ADLER

13   NELLY ALMEIDA

14   JASON AMERSON

15   PHILIPPE NIMMA AZIMZADEH

16   DAVID BARSE

17   CHRIS BECIN

18   ED G. BIRCH

19   OCTAVE J. BOURGEOIS

20   JOHAN BRONGE

21   SANTOS CACERES

22   ALEXIS CASSIS

23   DEAN CHAPMAN

24   STEVEN CHURCH

25   CHRISTINA CIANCARELLI
```

1   CHRISTOPHER COCO

2   DAKEN COLEMAN

3   KAREN CORDRY

4   CARL COTE

5   CAMERON CREWS

6   THOMAS DIFIORE

7   TRISTAN DIAZ

8   SHARON M. DOW

9   SCOTT DUFFY

10   DENNIS DUNNE

11   GABRIEL EISENBERGER

12   JAMES ENGEL

13   DAVID AVERY FAHET

14   ALEXANDER FERNANDEZ

15   LAWRENCE FOGELMAN

16   DEBORAH FRANKEL

17   DANIEL FRISHBERG

18   REBECCA GALLAGHER

19   BRADLEY GIARDIELLO

20   JON HATCHER

21   SAMUEL P. HERSHEY

22   LUCAS J. HOLCOMB

23   MITCHELL HURLEY

24   JASON IOVINE

25   LEIF JONES

```
 1    DANIEL D. KAPLAN

 2    ROBERT M. KAUFMANN

 3    MIKAELA KENSINGTON

 4    DIMITRY L. KIRSANOV

 5    BRYAN KOTILAR

 6    CORY J. KRIEGER

 7    JOYCE A. KUHNS

 8    DAN LATONA

 9    ANDREW LEBLANC

10    JOE LEHR

11    BRIAN S. LENNON

12    NICOLE A. LEONARD

13    JESSE LUND

14    JEREMY LYNCH

15    CHASE MARSH

16    BRIAN S. MASUMOTO

17    JOSHUA MESTER

18    DUSTIN MILLER

19    LAYLA MILLIGAN

20    MICHAEL D. MORRIS

21    JASON A. NAGI

22    NANCY NGUYEN

23    KEITH NOYES

24    REGINA OSBORNE

25    MILIN PATEL
```

Page 9

1   ARIE PELED

2   GREGORY F. PESCE

3   RICHARD PHILLIPS

4   BRAD RAWE

5   MARK ROBINSON

6   DAVID RYAN

7   JEFFREY S. SABIN

8   KYLE SATTERFIELD

9   DAVID SCHNEIDER

10   NOAH M. SCHOTTENSTEIN

11   WILLIAM D. SCHROEDER

12   MATTHEW W. SILVERMAN

13   JESSICA SIMON

14   CALIN T. ST. HENRY

15   KATHERINE STADLER

16   COURTNEY BURKS STEADMAN

17   LUCY L. THOMSON

18   DAVID TURETSKY

19   VICTOR UBIERNA DE LAS HERAS

20   EZRA L. VAZQUEZ-D'AMICO

21   TONY VEJSELI

22   CHRISTOPHER D. WALL

23   CAROLINE WARREN

24   JOSHUA WEEDMAN

25   MELANIE WESTOVER YANEZ

1    KEITH WOFFORD

2    ALAN WOHLMAN

3    ADRIENNE WOODS

4    ANNE YEILDING

5    ANDREW YOON

6    KEN ZIMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  All right.  For the parties that have

3    joined, if anyone is speaking on the record this morning and

4    has not given their appearance yet, please unmute your line

5    and I will take your appearance.  All right.  Final call.

6    Judge, would you like me to read the information into the

7    record?

8              THE COURT:  Yes, please.  Go ahead Deanna.

9              CLERK:  All right.  Please note the following.

10   All parties are strictly prohibited from making any

11   recording of court proceedings whether via video, audio,

12   screenshot, or otherwise.  Violation of the prohibition may

13   result in the imposition of monetary and nonmonetary

14   sanctions.  The Clerk of the Court maintains an audio

15   recording of all proceedings, which constitutes the official

16   record.

17             Parties must state their name each time they speak

18   on the court record.  A party must join with the both of

19   first and last name to be admitted from the waiting room.

20   Parties that join with initials or partial name,

21   designations such as iPhone, et cetera, will not be

22   admitted.

23             Would you like to begin, Judge?

24             THE COURT:  Yes, I would.  Thank you very much,

25   Deanna.  All right.  Good morning, everyone.  We're

Page 12

1    obviously on the record in Celsius Network LLC, 22-10964.  I

2    have the amended agenda in front of me.  I want to advise

3    everyone that we have a very tight time schedule today.  We

4    need to end this hearing by 10 minutes to 11:00.  I have

5    another large hearing beginning at 11:00.  There are certain

6    matters that are on the calendar for today that when we get

7    to them, I may not hear argument and may rule just based on

8    the papers.  But let's begin who's going to begin for the

9    Debtors.

10           MR. KWASTENIET:  Thank you, Your Honor.  Ross

11   Kwasteniet from Kirkland and Ellis on behalf of the Debtors

12   can you see me and hear me okay, Your Honor?

13           THE COURT:  I can, very well.  Go ahead.

14           MR. KWASTENIET:  Thank you, Your Honor.  Your

15   Honor, as has been customary, we were prepared to open the

16   hearing with a -- with a brief business update from Mr.

17   Ferraro --

18           THE COURT:  And I think you should, let's do that.

19           MR. KWASTENIET:  -- well, let -- let us do that,

20   we'll try to be quick about it.  We did file a presentation

21   on the docket last night for anybody who wants to follow

22   along.  It was filed at Docket Number 2655.

23           And Deanna, if I can request that my colleague,

24   Mr. Koenig, be made a co-host for purposes of screen

25   sharing, we'll -- we'll jump right into it.

Page 13

1            Good morning, Mr. Ferraro, I'm wondering if you

2     can please tell the Court about the current status of the

3     custody and withhold account withdrawal processes.

4            MR. FERRARO:  Yeah, hi, Ross, and good morning,

5     Your Honor.  Thanks for your time today.  I will be quick.

6     The company's continuing to process withdrawals to eligible

7     custody accountholders.  Since February 15th, 53 percent of

8     the users with balances sufficient withdrawal fees have

9     successfully passed KYC.  When measured in value, those

10    users represent almost 90 percent.  Today we have completed

11    $30 million of share custody withdrawals, or accounts below

12    the preference threshold, totaling about 75 percent of the

13    distributable value, with approximately $9 million remaining

14    to be withdrawn.

15           With respect to the remaining assets in the

16    custody accounts that were not part of the pure custody

17    tranche, users who opted into the custody settlement will

18    receive 72.5 percent of the assets that remain in their

19    custody accounts in two payments of 36.25 percent each, less

20    any withdrawal fees.  Overall, more than 70 percent of

21    eligible users opted into the settlement before the April

22    24th deadline, representing 85 percent of the value.  We

23    began processing these withdrawals on May 9th and have

24    completed over 27 million of withdrawals to date.

25           On April 20th, the Court approved a settlement

Page 14

1    amongst Celsius, the Withhold Ad Hoc Group, and the UCC that

2    provided participating members of the Withhold Ad Hoc Group

3    an in-kind distribution of 15 percent of their eligible

4    claim, with the remaining 85 percent of the electing

5    creditor's claim to be treated as an earned claim under the

6    plan.  In the next week, we will be -- we will start the KYC

7    process and withdrawals from the platform for these

8    participating withhold accounts, as well as creditors who

9    made deposits after the petition date.

10          Now, turning to the next slide.

11          MR. KWASTENIET:  Thanks, Mr. Ferraro.  Can you

12   please provide an update on the company's current mining

13   operations?

14          MR. FERRARO:  Yeah.  We ended April with 53,000

15   rigs deployed.  Since March we have deployed 8,000 machines.

16   The increase was driven by the deployment of 7,000 rigs at

17   the Heart of Montana facility.  We expect to be at full

18   capacity at the Harden facility with 13,500 rigs online and

19   hashing by the end of June.

20          For April, we had an adjusted EBITA of 1.4

21   million.  Up 53 percent from March on higher margins and

22   improved up time.  Quick reminder EBITA for this business is

23   effectively the pretax income adjusted to add back

24   depreciation and is a good proxy for cash flow from

25   operations.  Mining revenue was $8.4 million in April, up 31

Page 15

1    percent to March.  The adjusted gross margin was 26 percent

2    in April, up ten percent from the prior month, largely

3    driving by favorable bitcoin price performance.  The out

4    time or the percentage of time our machines are hashing

5    increased to 68 percent in April, an improvement of nine

6    percent to March.

7           Moving on to the next slide.  This slide notes a

8    longer trend of the metrics I've just discussed.  On the

9    bottom left graph, you'll see the 53,000 rigs deployed at

10   the end of April, which is almost double the 28,000 deployed

11   immediately the Core Scientific contract rejection in early

12   January.  With the new hosting agreements, we expect the

13   rigs deployed to increase to 58,000 by the end of May and

14   expect 68,000 rigs to be deployed by the end of June.  So,

15   we're continuing to successfully mitigate the impact from

16   the 33,000 or the 37,000 that were part of the core

17   restructuring.

18           Now, turning to the last slide.

19           MR. KWASTENIET:  Thanks, Mr. Ferraro, can you now

20   provide an update on the company's financial condition?

21           MR. FERRARO:  Yes, Ross.  As a quick reminder, we

22   started the case with $138 million of cash.  We now have

23   $142 million on hand as of April, month end, an increase of

24   $4 million since the petition date.

25           MR. KWASTENIET:  Thanks.  Just one last question

Page 16

1    for you, Mr. Ferraro, the Debtors recently filed, last night

2    an updated budget and coin report at Docket Number 2648.

3    Are you familiar with that report?  And can you please give

4    an update to the Court on the latest liquidity forecast and

5    how that compares to prior forecasts?

6         MR. FERRARO:  Yeah, I am familiar with the report.

7    With respect to the latest or two-week cash flow forecasts,

8    we project approximately $77 million of cash and $57 million

9    of baseline liquidity in the middle of the -- of August.

10   And the difference between the 77 and the 57 is the $20

11   million of kind of operating cash buffer.

12        Operating cash still remains positive, supported

13   by the price of Bitcoin, which is currently around $27,000,

14   up 60 percent year-to-date, making the mining operation more

15   attractive and productive.  The latest liquidity forecast is

16   roughly 9 million lower than our previous forecast, which is

17   largely the result of non-operating activity, including from

18   expected sales and use taxes related to the legacy purchase

19   of mining rigs.

20        That's all I have for you today, Your Honor,

21   unless you have any questions, I'm finished.

22        THE COURT:  No, I don't, thank you very much, Mr.

23   Ferraro.  Mr. Kwasteniet, go ahead.

24        MR. KWASTENIET:  Thank you, Your Honor.  Before

25   turning to the agenda, I was prepared to give Your Honor and

Page 17

1    the parties in interest a brief update on the Debtors'

2    auction process, which has been ongoing since late April, if

3    Your Honor would like me to do that.

4           THE COURT:  Yeah, I do want to hear about that,

5    I'm sure all of the parties in interest want to hear about

6    that.

7           MR. KWASTENIET:  Great.  Thank you, Your Honor,

8    and I'll try to keep it brief, and I believe that Mr.

9    Colodny from the Committee also has a few comments to make

10   about the status of the auction, and I'll kick it to him

11          But at a high level, Your Honor, the auction

12   commenced on April 25th, as disclosed in the Notice of

13   Auction that we filed on April 22nd at Docket Number 2519,

14   there were three bidders who were qualified to participate

15   in the auction.  There was NovaWulf, who was a stalking

16   horse bidder, Fahrenheit LLC, and the Blockchain Recovery

17   Investment Committee, or BRIC.

18          Your Honor, the auction remains ongoing and while

19   the auction terms are confidential, there's a few highlights

20   I can share at this time.  First, the auction is working as

21   intended and participation has been robust and active.  Each

22   bidder has been in the lead of the auction at least once.

23   And the value of the Debtors' estates have achieve, thus

24   far, can be measured in the hundreds of millions of dollars.

25          Second, while this auction process has been slower

Page 18

1    than we all would have hoped, the Debtors, the Committee,

2    and the bidders have been hard at work behind the scenes.

3    This is not a typical bankruptcy auction involving the mere

4    sale of assets where bidders are simply competing with each

5    other to see who can bid the highest number.  That type of

6    auction could be concluded in a day or two.  But here, the

7    bidders are competing for the right to be selected to manage

8    the Debtors' assets on a post-bankruptcy basis and the

9    Debtors and the Committee are having to evaluate what the

10   bidders bring to the table, including their visions for the

11   future, and this process has involved extensive discussions

12   and due diligence, and involves many factors that are not

13   easy to quantify or compare.

14           I would also note that as contemplated by the

15   bidding procedures, the Debtors and the Committee have

16   worked very well together in evaluating the bids and

17   determining how to proceed through the auction.  While the

18   Debtors and Committee have not always agreed on how to score

19   each individual aspect of each individual bid, the Debtors

20   and the Committee have agreed on each leading bidder

21   throughout the process and have been aligned on how to best

22   maximize value through the auction.

23           Your Honor, the Debtors and the Committee did

24   select the BRIC bid as a Plan B, backup bid and are working

25   to document the terms of that bid.  At a high level, what

Page 19

1    the BRIC plan provides for is for (a) a pure play, publicly

2    trading mining business in which the Celsius creditors would

3    receive 100 percent of the interests in the mining company,

4    with a potential management contract with GXD; (b) a liquid

5    crypto distribution to the Celsius creditors on or as soon

6    as practical after the effective date; (c) a timely

7    monetization of the remining assets of the Debtors estates

8    and subsequent liquid crypto distributions to creditors; and

9    (d) an orderly wind down.

10            The BRIC bid differs from the Fahrenheit and

11   NovaWulf bids in that it does not envision the creation of a

12   going concern NewCo outside of the mining business and the

13   monetization and wind down activities I just mentioned.  The

14   Debtors and the Committee believe it will be useful to have

15   the BRIC bid as a backup, if for some reason, the Plan A,

16   going concern bid, cannot be completed.

17            Your Honor, NovaWulf and Fahrenheit continue to

18   bid for the right to be the Plan A going concern bidder.  At

19   present, Fahrenheit is the lead bidder of record.  NovaWulf

20   has made a new bid that the Debtors and the Committee are

21   presently evaluating to determine whether it is superior to

22   the last Fahrenheit bid.  While the Debtors and the

23   Committee have been committed to giving each party the time,

24   they need to formulate superior bids and put their best foot

25   forward, I do believe that the auction is now in the late

Page 20

1    stages and I expect that one way or another, the auction

2    will be completed in the relative near future.

3              Your Honor, that concludes my remarks on the

4    auction and with, Your Honor's permission, I turn it over to

5    Mr. Colodny for any comments from the Committee.

6              THE COURT:  Sure.  Go ahead Mr. Colodny.

7              MR. COLODNY:  Good afternoon, Your Honor, Aaron

8    Colodny of White and Case on behalf of the Official

9    Committee of Unsecured Creditors.  I'll drop many of the

10   things, given the time limit that I was going to say.

11             You know, one point I really want to make clear is

12   that this has been a cooperative process between the Debtors

13   and the Committee, which I certainly appreciate.  I also

14   want to make clear that we've made our committee members

15   available to each of the bidders to ask all of the questions

16   that they needed to ask.  You know, as Mr. Kwasteniet

17   mentioned, this is not your typical bankruptcy auction where

18   we are looking at cash, stock, valuable consideration.

19   There's lots of soft factors that we're all considering

20   about how to get these companies out of bankruptcy.

21             During the auction, certain parts of the

22   structures of the bids have also changed.  Prior to the

23   auction, the Debtors and the Committee were unable to reach

24   terms with the Ad Hoc Group of Borrowers and instructed the

25   bidders to proceed assuming that the loan settlement is not

Page 21

```
1    part of the bids.  The Committee believes that a settlement

2    with the Borrowers may still be possible; however, the

3    previous construction of that loan settlement became not

4    feasible, and we were required to move in a different

5    direction.

6            I'll note that we've instructed the bidders not to

7    negotiate or bid based off a settlement with the Borrowers

8    and any such settlement will have to be negotiated after the

9    conclusion of the auction and prior to the approval of the

10   disclosure statement by this Court.  Any settlement also

11   will need to balance the rights of the Earn and Loan

12   Claimants to make sure their respective legal rights are

13   respected with respect to the Debtors.

14           I think that the selection of the BRIC bid is

15   incredibly important here.  We are focused on -- we all know

16   we have one shot, and we're focused on getting out of

17   bankruptcy.  And so, to the extent one of the Plan A's does

18   not work for any given reason, we think it's incredibly

19   important that we are able to get coins back to customers in

20   an efficient manner, as soon as possible, hence the

21   selection of the backup bid.

22           As Mr. Kwasteniet concluded, we're now considering

23   with NewCo proposal is the highest and best.  But this

24   auction process must come to a close and we need to move

25   towards confirmation.  We have given everybody a lot of time
```

Page 22

1    and access to determine what is the highest and best bid.

2    We anticipate concluding the auction shortly, filing a

3    Notice of the Successful Bidder with the Court, enter a

4    Revised Plan and Disclosure Statement in short order.

5            THE COURT:  Have you given the bidders a date for

6    best and final?

7            MR. COLODNY:  We have not at this time, Your

8    Honor.

9            THE COURT:  Has the Committee and the Debtor

10   discussed agreeing on a date for a best and final?

11           MR. COLODNY:  Mr. Kwasteniet and I have had a lot

12   of discussions on how to move this forward in an expedited

13   manner and I think that we would like to have this wrapped

14   up this week.  I don't want to put Mr. Kwasteniet on the

15   spot or accelerate the schedule if we still have meaningful

16   movement in value.  But I am looking -- I and my

17   constituents are looking to wrap this up quickly.

18           THE COURT:  All right.  And either you, Mr.

19   Colodny or Mr. Kwasteniet can address this.  If the -- if

20   this goes forward with BRIC as the backup bidder, tell me

21   what the contemplated structure for returning value to

22   creditors would be.

23           MR. COLODNY:  So, if BRIC is the back --

24           MR. KWASTENIET:  Your Honor.

25           MR. COLODNY:  Go ahead.

Page 23

1           MR. KWASTENIET:  I'm sorry.  Go ahead, Aaron.

2           MR. COLODNY:  If BRIC is the backup bidder, my

3     understanding of the structure is there will be an initial

4     distribution of liquid crypto.  There would be an entity

5     created to hold the illiquid investments of the Debtors,

6     that's the Institutional Loan Book, the BC Investments, and

7     other things that may take time to wind down in a value

8     maximizing manner, and those would be distributed over time.

9     There would likely be interest in a vehicle that would be

10    owned by creditors that would be used to distribute those

11    assets to creditors, and then there would be equity

12    distributed in a reorganized mining company, which would

13    operate as a going concern.  So, while it's been described

14    as a wind down, I think that's an inaccurate description, I

15    think it's more of a reorganized mining company, a

16    distribution of liquid crypto, and then a vehicle created to

17    distribute the illiquid assets over time.

18           THE COURT:  Mr. Kwasteniet, do you want to add

19    something?

20           MR. KWASTENIET:  Nope, I agree with that, Your

21    Honor.  And in response to your previous question about time

22    for a last and final, Mr. Colodny and I, the Debtors and the

23    Committee have been keeping that under, you know,

24    consideration, but the amount of value that's been achieved

25    through the subsequent rounds of bidding has been

Page 24

1    substantial enough that we haven't wanted to artificially

2    truncate the auction process.  So, it's a delicate balance,

3    Your Honor, but we may be getting to the point of

4    diminishing returns in sort of going back and forth.  And if

5    that's the case, I think a best and final is something that

6    we've certainly discussed and would consider implementing,

7    but we're just -- we're not quite there yet.

8           THE COURT:  So, as I've asked at each of these

9    hearings when I've had this update and on the possible

10   structures, to what extent, I mean, always -- have there

11   been discussions with the regulators?  I'm quite concerned

12   about you headed down the road only to find that, you know,

13   I mean, what happened in Voyager that hit a roadblock with

14   regulators --

15          MR. KWASTENIET:  Understood, Your Honor, we --

16   that's a daily and for me, sometimes a nightly concern that

17   I have.  We have had several conversations with the

18   regulators about the Fahrenheit bid and the -- and the

19   members of the Fahrenheit group, it's a consortium bid, Your

20   Honor, and the good news from -- from my perspective is that

21   the Fahrenheit bid is largely following the NovaWulf bid

22   structure.  There's some differences.  The Fahrenheit bid

23   contemplates issuing equity and not a stock token, if you

24   will.  And we've described those changes at a high level

25   with the regulators.  Of course, the regulators need to and

1    will reserve judgment until they see final documents and

2    conduct due diligence on the various licenses that the

3    Fahrenheit parties have.  But at this point, Your Honor, we

4    have kept the regulatory concerns front of mind and we're

5    confident that either party would be able to execute a

6    transaction.

7              THE COURT:  Okay.  Any further update on the

8    auction and bidding?

9              MR. KWASTENIET:  No, that concludes my update,

10   Your Honor.

11             THE COURT:  Okay.  Mr. Colodny, anything you

12   wanted to add?

13             MR. COLODNY:  No, Your Honor, I agree with Mr.

14   Kwasteniet's description of the auction process and the

15   conclusion of it.

16             THE COURT:  Okay.  All right.  Let's move on with

17   the agenda then.

18             MR. KWASTENIET:  Great.  Your Honor, the first

19   item on the agenda for today is what we refer to as the

20   cooperating witness motion, which was filed on the docket at

21   Docket Number 2147.  Your Honor, the motion seeks authority

22   to reimburse legal expenses of certain current and former

23   employees incurred in connection with various ongoing

24   criminal and civil investigations.  I am pleased to report

25   that after extensive negotiations, discussions with the

Page 26

1    Creditor's Committee, we have resolved their objection and

2    we've agreed to a set of procedures, which are embodied in a

3    revised form of order that we filed two nights ago at Docket

4    Number 2643.

5            THE COURT:  And very quickly, I was advised about

6    the revised order.  I kept looking at the agenda to see

7    whether it reflected any agreement, it didn't.  So, why

8    don't you -- I take it though that there remain objections?

9            MR. KWASTENIET:  Yes, Your Honor, there was one

10   objection.  The one remaining objection filed by the U.S.

11   Trustee, and then there was a statement which wasn't really

12   an objection, but rather a request for access to some of the

13   information related to the investigations.

14           THE COURT:  Right.

15           MR. KWASTENIET:  And let me start with the one

16   objection to the motion which was filed by the U.S. Trustee.

17   As noted in the reply brief that we filed last night at

18   Docket 2653, we believe that the U.S. Trustee's objection

19   misses the mark and should be overruled.  Your Honor, I

20   won't go into detail on all of the arguments in our paper,

21   but at a high level, I'd like to make the following few

22   points.  First, we don't believe that Kirkland can serve as

23   independent counsel to the employees in these circumstances.

24   And in fact, if we attempted to do that, something tells me

25   that folks higher up in the U.S. Trustee's office might

Page 27

1    object to that.  We think that it's important that the

2    employees have their own counsel, and in fact, in many

3    circumstances whether it be a grand jury interview or other

4    criminal interview, company counsel is not invited to

5    participate, and we, of course, first and foremost and in

6    this case, only company counsel.  So, we don't think that

7    Kirkland serving -- we could certainly play a role in the

8    background, gathering materials and helping to prepare

9    witnesses and facilitating, which we have -- have done and

10   will continue to do.  But we don't believe that we can serve

11   as counsel -- individual counsel for these -- for these

12   individuals.

13            Second, Your Honor, the U.S. Trustee argues that

14   the relief that we are seeking is unprecedented, but we

15   noted in our papers, and I'll note again, that very similar

16   relief was approved in the ENRON case, and I'll point to the

17   citation 335 B.R. 22, 2005, it was a United States District

18   Court opinion.  In the ENRON case, Your Honor, over the

19   objection of the Creditor's Committee, the Bankruptcy Court

20   authorized the Debtors to retain a law firm under Section

21   363(B)(1) of the Code to advise current and former employees

22   who are cooperating with investigations, very, very similar

23   to our fact pattern.  The Bankruptcy Court's approval was

24   affirmed on appeal to the District Court and many of the

25   terms and conditions in the ENRON case related to payment

Page 28

1   are similar to what we're proposing here.  Your Honor, the

2   U.S. Trustee's objection really doesn't address 363(B)(1),

3   but instead focuses its argument on 503B, which is not the

4   primary basis for the relief that we're -- that we're

5   seeking.

6          Your Honor, third, cooperating with government

7   investigations including criminal investigations is simply

8   not within the ordinary course of an employee's duties.  And

9   obviously former employees have no ongoing performance

10  obligations to the company.  Moreover, absent advice from

11  counsel, an employee is likely to be very distracted by the

12  investigation to the detriment of performing their day job,

13  and they may overuse or underuse their constitutional right

14  against self-incrimination, which would ultimately be to the

15  detriment of the investigations.

16         Your Honor, lastly, the U.S. Trustee doesn't

17  address or refute the Debtors' business judgment.  And we

18  submit that there are sound reasons which are supported by

19  the Committee to use a limited amount of estate resources to

20  pay counsel fees to current and former employees who

21  cooperate with investigations.

22         Your Honor, the first reason is that customers,

23  understandably, want to see justice done and want wrongdoers

24  to be held accountable for what happened here.  That sounds

25  great, but the overwhelming majority of Celsius' employees,

Page 29

1   current and former, are not wrongdoers, and yet their

2   cooperation is needed to hold the wrongdoers to account.

3          Two, Celsius has valuable claims against certain

4   former executives, which we have agreed to assign to a trust

5   for the benefit of the creditors.  To successfully bring

6   those claims, we will need cooperating witnesses.  Your

7   Honor has noted previously that the examiners report, while

8   very helpful, is not itself evidence and we will need to

9   build a factual record with the assistance of a great many

10  witnesses.

11         Three, cooperation with government investigations

12  will facilitate the resolution of government claims and will

13  hasten the Debtors' emergence from bankruptcy, which will

14  speed recoveries to creditors and lower the administrative

15  burn of these cases.

16         Your Honor, four, the failure to cooperate could

17  result in sanctions or penalties that could disrupt the

18  reorganization and potentially dilute the recoveries to

19  other creditors.

20         And my last point, Your Honor, is I submit that

21  it's simply not fair or reasonable to expect individuals to

22  cooperate in criminal investigations, or in civil

23  investigations that are being conducted about the backdrop

24  of criminal proceedings without the advice of counsel.

25  People have a constitutional right to not incriminate

Page 30

1   themselves, and it's entirely customary and reasonable to

2   seek counsel when asked to -- for somebody -- to participate

3   in criminal or criminally related investigations.

4           Your Honor, in sum, the Debtors believe, and I

5   think the Committee agrees that there may be circumstances

6   where it benefits the estate to reimburse legal fees for

7   current and former employees, who are cooperating with the

8   ongoing investigations.  I'll note that the motion is

9   procedural and if granted, does not obligate the Debtors to

10  make any specific payments, but merely provides for a set of

11  procedures that could authorize payments if the Debtors and

12  the Committee both consent with notice to the U.S. Trustee

13  and notice on the docket.

14          Your Honor, we filed the declaration from the

15  Debtors' CEO, Mr. Christopher Ferraro at Docket Number 2654

16  in connection with our reply brief last night.  That further

17  supports the business judgment to seek this relief.  Mr.

18  Ferraro's available to testify if Your Honor or any parties

19  have any questions.  And unless Your Honor has questions for

20  me, I would yield the podium to Mr. Colodny.

21          THE COURT:  Mr. Colodny, go ahead.

22          MR. COLODNY:  Thank you, Your Honor, Aaron Colodny

23  on behalf of White and Case on behalf of the Official

24  Committee of Unsecured Creditors.  I think the key in what

25  Mr. Kwasteniet said is that this is a procedural motion.

Page 31

1    Now, we initially objected, and in that objection, we

2    raised, among other things, that these are the type of

3    requests that should be handled through the claims process

4    or the substantial contribution process.  Following that

5    objection, we worked with the Debtors to develop procedures

6    and we believe those procedures provide an acceptable

7    mechanism for resolving these sort of requests in an

8    efficient manner.

9            One of the things that I was focused on was making

10   sure that the Committee has consent rights, the U.S. Trustee

11   is able to review the requests and ultimately the Court is

12   able to review these requests because we understand that any

13   payment of any administrative claim is ultimately within the

14   purview of this Court and subject to this Court's approval.

15   I think that the procedures, if Your Honor is inclined to

16   approve them, achieve all of those goals, and allow all of

17   the parties in interest the opportunity to receive -- to

18   review and evaluate those expenses, if and when the Debtors

19   and the Committee agree that they should be paid.

20           You're muted, Your Honor.

21           THE COURT:  Ms. Cornell.

22           MS. CORNELL:  Thank you, Your Honor.  Shara

23   Cornell from the office of the United States Trustee.  With

24   all due respect, I think Debtors' counsel's framing the

25   question wrong.  It isn't a question about whether or not

Page 32

1    these folks should have counsel, it's about who should pay

2    for it.  And that really is what we're talking about here.

3            Either the employees are testifying as witnesses

4    for their employer and Kirkland can represent them, or they

5    are some type of independent informer or bad actor type, in

6    which case, they need their own counsel.  But if they're not

7    representing the employer, the Debtor -- then there is no

8    benefit to the estate.  If they're a benefit to the estate,

9    then Kirkland should represent them.  If the individuals

10   have potentially adverse interest to the estate, why should

11   the estate foot the bill?  It's effectively a bonus if it

12   doesn't benefit the estate.

13           There are people on the list that we know are

14   subject to adverse claims from the estate, as well as other

15   potential claims, specifically, while the list wasn't

16   provided to the Court, we know that the list includes Alex

17   Mashinsky as a potential recipient of funds.  There is

18   absolutely --

19           THE COURT:  (Indiscernible) --

20           MS. CORNELL:  -- I'm sorry?

21           THE COURT:  Go ahead, Ms. Cornell.

22           MS. CORNELL:  There is absolutely no evidence in

23   the record of a benefit to the estate.  The Ferraro

24   declaration, itself, provides no benefit to the estate and

25   it's also completely self-serving.  He is also on the list

1    of recipients.  He wants his own attorneys to be paid.  And

2    we happen to know that he is represented by Paul Hastings

3    from the Paul Hastings disclosures in Voyager.  There are a

4    lot of issues going on here, and instead of addressing their

5    burden, the Debtor would have --

6              THE COURT:  You -- you would have -- do you agree

7    that under the amended order, you would have the opportunity

8    to object to any payments for counsel for specific people

9    that have been identified?  Yes or no.

10             MS. CORNELL:  Well, the answer is yes and no.

11   Because yes, we'll be notified, but what documents we're

12   going to be provided is not clear.  Whether or not we're

13   just going to be getting a statement with, you know,

14   employee X is getting -- is requesting $500, or if we're

15   going to be getting detailed time records, that is yet to be

16   known.

17             MR. KWASTENIET:  Your Honor, if I -- if I may just

18   briefly --

19             THE COURT:  No, let Ms. Cornell finish and then

20   I'll give you a chance to respond.

21             MR. KWASTENIET:  Thank you.

22             MS. CORNELL:  Please.  Thank you very much, Your

23   Honor.  Instead of meeting their burden, the Debtors, and

24   the Committee, they keep just changing the procedures.  But

25   as I said the fundamental --

1          THE COURT:  Well, they keep changing the procedure

2     in light of the objections trying to meet some of the

3     concerns that have been raised by the objection.  Don't make

4     it sound like they're just changing the game every time this

5     comes up.  They're trying -- they -- they've worked out an

6     agreement with the Committee.  They've proposed an order,

7     which I only looked at last night, that gives you the

8     opportunity to object as to specific people.

9          So, you make it sound like they just keep -- every

10    time this comes forward, without letting you know, they've

11    changed the -- the approach.  That's not what's happened.

12         MS. CORNELL:  No.  No, I apologize --

13         THE COURT:  (Indiscernible) --

14         MS. CORNELL:  -- Your Honor --

15         THE COURT:  -- finish up with your argument.

16         MS. CORNELL:  -- that was what was suggested.

17    That -- that was not my intention.  I apologize.

18         THE COURT:  Finish up -- finish up with your

19    argument.

20         MS. CORNELL:  Yes -- yes, Your Honor.  The

21    question here is what is the benefit to the estate of either

22    -- of what the Debtors are proposing, and the Committee's

23    are now in agreement, but the Committee's objection to the

24    Nolan application, which I know we'll get to later, makes

25    the exact point that I'm making.  Paragraph 4 of the

Page 35

1    Committee's objection says, "a party who is acting in its

2    own self-interest, such as a participant who is seeking to

3    protect its own rights in litigation is generally not found

4    to have made a substantial contribution".  Mr. Nolan's

5    testimony has not resulted in any funds being paid or

6    returned to the estate.  And their objection --

7              THE COURT:  Okay.  We'll deal with Mr. -- we'll

8    deal with Mr. Nolan when that comes on.

9              MS. CORNELL:  He -- I know but --

10             THE COURT:  Anything else?

11             MS. CORNELL:  -- the -- Mr. Nolan's included on

12   the list.

13             THE COURT:  But I am pressed for time.  I'm going

14   to cut you all off.  Any last comments you want to make?

15             MS. CORNELL:  Yes, Your Honor.

16             THE COURT:  Well, then go ahead and do it.

17             MS. CORNELL:  The only -- okay.  The only case

18   provided by either the Committee or the Debtors is an 18

19   years old decision from ENRON which focused solely on

20   government investigation.  Here the Debtors are looking to

21   enlarge this in an unprecedented way by paying nunc pro tunc

22   fees for interview and cooperation with the examiner and

23   with the Committee's own investigation, and that is truly

24   unprecedented.  Do we really want our precedent where a

25   person can hold up production of documents until they get

Page 36

1    their personal attorney fees paid?  Compliance with

2    production and interviews has been the basis of the Debtors'

3    key and cart motions as well.  How many times, you know,

4    must a Debtors' creditors bear the burden of paying these

5    employees?  You know --

6              THE COURT:  Okay.  Thank you very much, Ms.

7    Cordell.

8              MS. CORNELL:  Okay.  Thank you.

9              THE COURT:  Any -- any response Mr. Kwasteniet?

10             MR. KWASTENIET:  Your Honor, I will be very brief.

11   And it's funny that Ms. Cornell talks about precedent

12   because that's exactly what I want to talk about.  There's

13   an unfortunate precedent in this case of the company trying

14   to cooperate with the U.S. Trustee's office, providing

15   information and then we hear wild accusations in the hearing

16   that have no basis in reality.  For Ms. Cornell to suggest

17   that we are proposing to pay fees to Alex Mashinsky, when

18   we've told her 10 times that that's not the case and our

19   very procedures provide that any individuals listed in the -

20   - in the stipulation with the Committee about the

21   prosecution of future claims --

22             MS. CORNELL:  Your -- Your Honor -- Your Honor I'm

23   going to have to --

24             THE COURT:  Ms. Cornell --

25             MS. CORNELL:  -- I'm going to have to object --

1            THE COURT:  Ms. Cornell --

2            MS. CORNELL:  I'm going to have to --

3            THE COURT:  Ms. Cornell, I'm going to cut you off.

4    Do not interrupt.  I prevented people from interrupting you.

5    Do not interrupt Ms. Kwasteniet.

6            MR. KWASTENIET:  It is wildly unprofessional, Your

7    Honor, and inflammatory to suggest that we are proposing pay

8    money to Mr. Mashinsky.  The procedures have been crystal

9    clear --

10            THE COURT:  Okay.

11            MR. KWASTENIET:  -- since day one.

12            THE COURT:  Mr. Kwasteniet, that was clear to me,

13    before.  Okay.

14            MR. KWASTENIET:  Thank you, Your Honor.  Thank

15    you, Your Honor, but we have a lot of people listening --

16            THE COURT:  All right.

17            MR. KWASTENIET:  -- and people tweeting, and word

18    gets out and this is how misconceptions spread and this is

19    not the first time --

20            THE COURT:  Stop.

21            MR. KWASTENIET:  -- that we've had a problem with

22    Ms. Cornell's comments.

23            THE COURT:  Stop it.  I'm taking this motion under

24    submission.  I don't want to hear any further argument on

25    it.  Let's move on on the agenda.

1          MR. KWASTENIET:  Your Honor, the next item on the

2    agenda is the Connor Nolan motion.

3          THE COURT:  Right.

4          MR. KWASTENIET:  And I would cede the podium to

5    Mr. Nolan's counsel.  I would just note, Your Honor, we've

6    had discussions with Mr. Nolan's counsel that if the

7    procedures motion that we just dealt with was to be

8    addressed, he might perhaps consider adjourning his motion,

9    because he is, in fact, the exact kind of person who we

10   would envision being potentially eligible for reimbursement

11   under the procedures, Your Honor.  So, with that, as a

12   procedural background, I'll yield the podium.

13         THE COURT:  Okay.  Thank you, Mr. Kwasteniet.

14         MR. GLASSER:  Good morning, Your Honor.  Jim

15   Glasser, Wiggin, and Dana on behalf of Connor Nolan.  Your

16   Honor, I understand you're pressed for time, so I'm going to

17   keep it very brief and frankly, just make a couple of

18   comments for the Court's consideration.

19         Mr. Nolan was 23 years old when he began working

20   at Celsius.  He was 25 when Celsius paused all withdrawals.

21   Two days later he was approached by federal law enforcement

22   authorities and presented with a grand jury subpoena.  A 25-

23   year-old, being handed a grand jury subpoena, he did reach

24   out to counsel, retained me.  I've been representing him

25   for, I guess we're coming up on a year now, without payment

Page 39

1   of any fees.

2           In response to Ms. Cornell's comment about holding

3   up proceedings, the Court should know we've made voluminous

4   document productions.  We've -- we're paying hosting fees to

5   host Mr. Nolan's data.  Everything that the U.S. Attorney's

6   Office has asked for that the SEC has asked for, the CFPC

7   has asked for, we've produced in a timely manner, nothing is

8   being held up.

9           THE COURT:  May -- hold on, may I ask you this,

10  Mr. Glasser?

11          MR. GLASSER:  Sure, of course.

12          THE COURT:  You know, Mr. Nolan is entitled to a

13  ruling.  It's the Court's intention to rule, hopefully

14  expeditiously with respect to the cooperating witness

15  motion, which I've just heard.  What I would like to do,

16  particularly in light of Mr. Kwasteniet's comments, is

17  adjourn this hearing with respect to Nolan a little further.

18  I will enter a ruling on the cooperating witness motion.  If

19  it's granted, talk with Mr. Kwasteniet, and you know, Mr.

20  Colodny, and see if you can satisfactorily resolve the

21  issue.  Otherwise, we'll just put this back on.

22          I will decide it, but this may get resolved by

23  whatever ruling I enter on the cooperating witness motion.

24          MR. GLASSER:  Understood, Your Honor, and that's

25  perfectly fine.

1          THE COURT:  Okay.  So, that's what I'd like to do.

2     The motion will be adjourned.  We'll set another time,

3     hopefully after I've ruled, you can one way or the other,

4     you can talk with Mr. Kwasteniet and Mr. Colodny and see if

5     you can resolve the issue as to Mr. Nolan, okay?

6          MR. GLASSER:  That's fine, Your Honor.  Thank you,

7     for the Court's time.

8          THE COURT:  Thanks -- thanks very much, Mr.

9     Glasser.

10          MR. GLASSER:  Sure.

11          THE COURT:  Okay.  The next item on the agenda is

12     Jason Amerson's motion.  What I'd like to deal with -- he

13     has two motions.  The motion to -- I'll call it motion to

14     investigate, ECF 2252, and also his motion for an injunction

15     to bar what he considers inappropriate communications with

16     the Debtor, which is ECF 2233.  I am not going to hear

17     argument on either other those motions.  I intend to enter

18     an order resolving both of those issues -- both of those

19     motions without further argument.  So, I'm taking those both

20     under submission and expect to rule promptly.

21          All right.  Next, Mr. Kwasteniet, what's next?

22          MR. KWASTENIET:  Thanks, Your Honor, Ross

23     Kwasteniet again, from Kirkland for the record.  I believe

24     the next item up was the stay motion, and I would yield the

25     podium to my colleague Mr. Koenig.

Page 41

```
1              THE COURT:  Okay.

2              MR. KOENIG:  Good morning, Your Honor, Chris

3     Koenig, Kirkland and Ellis, for the Debtor.  This is a

4     motion filed by Mr. Frishberg and -- Mr. Frishberg and Mr.

5     Herrmann, I believe.

6              THE COURT:  Right.  Let me very briefly hear from

7     either -- either one of Mr. Frishberg and Mr. Herrmann, very

8     briefly and then Mr. Koenig, I'll give you a chance to

9     respond.

10             MR. HERRMANN:  All right.  Hello, Your Honor,

11    Immanuel Herrmann, pro se creditor.  Before I begin, I'll

12    try to be very brief.  I have a couple of quick housekeeping

13    things.  First, Mr. Frishberg and I would like to enter into

14    the record for this motion Exhibits A, B, and C of our

15    filing DR2650.  Exhibit A is our letter to the Debtors, and

16    Exhibits B and C are declarations regarding service that Mr.

17    Frishberg and I received.  Is that all right with you?

18             THE COURT:  I don't have them in front of me.  I

19    am not going to -- I will consider it after the hearing.

20    But go ahead.

21             MR. HERRMANN:  All right, that's fine, Your Honor.

22    Thank you.  So, now I wanted to quickly ask if Your Honor,

23    will be considering issuing a recommendation that the

24    District Court vacate this order today?  I know that that's

25    discretionary on your part --
```

1            THE COURT:  Well, let me kind of cut -- let me cut

2     through this.  I'm going to enter an order -- this motion is

3     filed as ECF 2545.  It's the motion of Mr. Herrmann and Mr.

4     Frishberg seeking to stay the effectiveness or

5     implementation by this Court of the order I entered

6     regarding which entity -- which Debtor entities have

7     liability to customers.  That order was ECF 2265.  The

8     appeal is pending before the District Court.  I'm going to

9     enter a written order denying the motion.  The written order

10    will speak for itself, but I conclude that the creditors,

11    Mr. Herrmann and Mr. Frishberg, have not demonstrated a

12    strong likelihood of success on the merits, nor have they

13    shown a substantial risk of injury absent the stay.

14            There is no plan currently proposed that would

15    result in a distribution to the Series B preferred holders.

16    If and when such plan is proposed, they can come back to me

17    and ask for a further stay.  They can do what they want in

18    the District Court, but you know, I'm going to enter an

19    order denying the motion.  I don't need to hear further

20    argument on it.  All right.

21            Next is Mr. Amerson's motion.  He has two motions.

22            MR. KOENIG:  Your Honor, I believe we covered

23    these motions already.  We just skipped -- we had skipped

24    over Item 4; you had dealt with Items 5 and 6.

25            THE COURT:  Right.

1            MR. KOENIG:  And we skipped --

2            THE COURT:  All right.  Well, I --

3            MR. KOENIG:  -- I think we're now on status

4    conferences.

5            THE COURT:  Okay.

6            MR. KOENIG:  Your Honor, we'll take the Herrmann

7    and the Frishberg case together and certainly let the

8    Plaintiffs speak for themselves.  I can represent that we

9    spoke with both the Plaintiffs last night.  We've agreed in

10   principle to a stipulation that will extend out the

11   company's deadline to file responsive pleadings to their

12   complaint through June 20th, and we expect to have -- we

13   expect to have that stipulation filed in the next day or

14   two.

15           THE COURT:  That's right -- that's fine.  And --

16   because I looked back at the docket, I saw there'd been a

17   series of stipulations and orders entered that had moved the

18   dates.  I don't underestimate the importance of the issues

19   that each of them raise in their adversary proceedings, but

20   the issue's maybe moot by what happens in the case going

21   forward.  So, that's fine.  Submit the -- the new

22   stipulations and they'll be -- they'll be entered.  Okay?

23           MR. KOENIG:  Great.  Thanks, Your Honor.  And that

24   -- that leaves us with the Core Scientific matter.  I don't

25   know if counsel for Core is able to join, I know that they

1    had a conflicting trial this morning, but we spoke last

2    night.  We just wanted to update, Your Honor.  In the Core

3    Scientific Bankruptcy Case, Celsius filed a proof of claim.

4    A series of proofs of claim and a motion for an

5    administrative claim.  The Core Debtors objected to both the

6    administrative claim and the proof of claim.  We have agreed

7    with the Core Debtors to seek mediation over the claims that

8    Celsius has against Core, the claims that Core has against

9    Celsius.  So, we are still working through the details of

10   what the mediation will look like, but we know it's been a

11   while since this issue was brought to your attention, so we

12   wanted to be sure to just update you on the current status

13   and the state of play.

14           THE COURT:  All right.  That's fine.

15           MR. KOENIG:  I believe that that is -- I believe

16   that that's it on the agenda, Your Honor.

17           THE COURT:  Okay.  Yeah, and look I've -- in past

18   hearings I've certainly tried to allow as much time as

19   people want to speak, but the Court is really pressed for

20   time today.  I've got another large omnibus hearing in

21   another large matter and I'm on a train to DC this

22   afternoon.  That's one of the reasons and I'm going to be

23   out for a period of time.  So, all right.

24           Obviously, keep me -- keep the Court and the

25   parties advised with respect to the developments in the

Page 45

1   auction and I look forward to see where we go from here.

2   Okay.

3            MR. KWASTENIET:  Thank you.

4            MR. KWASTENIET:  Thank you, Your Honor.

5            THE COURT:  Thank you, very much.  Okay, we're

6   adjourned.

7            MR. KWASTENIET:  Bye, bye.

8            (Whereupon these proceedings were concluded at

9   10:44 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            I N D E X

2

3                           RULINGS

4                                               Page        Line

5    Motions by Adversary Plaintiffs Herrmann and

6    Frishberg, DENIED                           41          9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 47

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *Sonya M. Ledanski Hyde*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 19, 2023

**[& - 57]**

Page 1

| **&** | |
|---|---|
| **&**   5:3,11 | |

| **0** | |
|---|---|
| **06510**   6:4 | |

| **1** | |
|---|---|
| **1**   4:13,18 27:21 28:2 | |
| **1.4**   14:20 | |
| **10**   12:4 36:18 | |
| **100**   19:3 | |
| **10004**   2:7 | |
| **10014**   5:21 | |
| **1003**   4:21 | |
| **10:00**   2:10 | |
| **10:44**   45:9 | |
| **11**   3:11 | |
| **1114**   4:21 | |
| **1130**   4:21 | |
| **1132**   4:21 | |
| **1133**   4:21 | |
| **1139**   4:22 | |
| **1140**   4:22 | |
| **1144**   4:22 | |
| **11501**   47:23 | |
| **1177**   4:22 | |
| **1182**   4:22 | |
| **11:00**   12:4,5 | |
| **1200**   4:22 | |
| **1204**   4:22 | |
| **12151**   47:7 | |
| **1283**   4:22 | |
| **13,500**   14:18 | |
| **1366**   4:22 | |
| **138**   15:22 | |
| **142**   15:23 | |

**15**   14:3
**15th**   13:7
**16**   4:18
**1694**   4:23
**17**   2:9
**18**   35:18
**1841**   4:23
**19**   4:18 47:25
**1907**   4:23

| **2** | |
|---|---|
| **20**   16:10 | |
| **2005**   27:17 | |
| **201**   5:20 | |
| **2023**   2:9 3:23 47:25 | |
| **2045**   3:14 | |
| **2055**   4:23 | |
| **20th**   13:25 43:12 | |
| **21**   4:18 | |
| **2147**   3:7 25:21 | |
| **22**   27:17 | |
| **22-01179**   1:20 4:15 | |
| **22-10964**   1:3 12:1 | |
| **2223**   3:7 | |
| **2227**   3:7 | |
| **2230**   3:7 | |
| **2233**   40:16 | |
| **2235**   4:7 | |
| **2252**   4:1 40:14 | |
| **2265**   42:7 | |
| **2269**   3:7 | |
| **22nd**   17:13 | |
| **23**   38:19 | |

**23-01025**   1:11 4:10
**2308**   3:7
**2314**   4:7
**2328**   3:8
**2330**   4:1
**2332**   4:7
**2333**   4:1
**2341**   3:8
**2373**   3:14
**2374**   3:14
**2375**   3:18
**2382**   3:14
**2386**   3:14
**2387**   3:14
**2390**   3:8
**2393**   3:8
**2395**   3:8
**2413**   4:23
**2434**   3:14
**2441**   3:8,14
**24th**   13:22
**25**   38:20,22
**2504**   3:8
**2519**   17:13
**2520**   3:8,14
**2530**   4:1
**2532**   4:1,8
**2545**   3:18 42:3
**2599**   3:15
**25th**   17:12
**26**   15:1
**2612**   3:18
**2615**   4:2,8
**2616**   3:15
**2643**   3:8 26:4

**2644**   3:8
**2648**   16:2
**265**   6:3
**2653**   26:18
**2654**   30:15
**2655**   12:22
**27**   4:18 13:24
**27,000**   16:13
**2700**   5:13
**28,000**   15:10

| **3** | |
|---|---|
| **3**   3:11 | |
| **30**   13:11 | |
| **300**   5:5 47:22 | |
| **31**   14:25 | |
| **33,000**   15:16 | |
| **330**   47:21 | |
| **335**   27:17 | |
| **36.25**   13:19 | |
| **363**   27:21 28:2 | |
| **37,000**   15:16 | |

| **4** | |
|---|---|
| **4**   3:12 15:24 34:25 42:24 | |
| **41**   46:6 | |

| **5** | |
|---|---|
| **5**   42:24 | |
| **500**   33:14 | |
| **503**   3:11,12 | |
| **503b**   28:3 | |
| **53**   13:7 14:21 | |
| **53,000**   14:14 15:9 | |
| **555**   5:13 | |
| **57**   16:8,10 | |

| | | | |
|---|---|---|---|
| **58,000**  15:13 | **accelerate** | **adjourning** | 29:4 43:9 44:6 |
| **6** | 22:15 | 38:8 | **agreeing**  22:10 |
| **6**  4:13 42:24 | **acceptable** | **adjusted**  14:20 | **agreement** |
| **60**  16:14 | 31:6 | 14:23 15:1 | 26:7 34:6,23 |
| **60654**  5:6 | **access**  22:1 | **adler**  6:12 | **agreements**  3:3 |
| **68**  15:5 | 26:12 | **administrative** | 15:12 |
| **68,000**  15:14 | **account**  13:3 | 29:14 31:13 | **agrees**  30:5 |
| **7** | 29:2 | 44:5,6 | **ahead**  11:8 |
| **7,000**  14:16 | **accountable** | **admitted**  11:19 | 12:13 16:23 |
| **70**  13:20 | 28:24 | 11:22 | 20:6 22:25 |
| **72.5**  13:18 | **accountholders** | **adrienne**  10:3 | 23:1 30:21 |
| **75**  13:12 | 13:7 | **adv**  1:11,20 | 32:21 35:16 |
| **77**  16:8,10 | **accounts**  13:11 | **adversary**  4:10 | 41:20 |
| **8** | 13:16,19 14:8 | 4:15 43:19 | **aided**  3:21 |
| **8,000**  14:15 | **accurate**  47:4 | 46:5 | **al**  1:16,25 4:11 |
| **8.4**  14:25 | **accusations** | **adverse**  32:10 | 4:16 |
| **85**  13:22 14:4 | 36:15 | 32:14 | **alan**  10:2 |
| **9** | **achieve**  17:23 | **advice**  28:10 | **alex**  32:16 |
| **9**  13:13 16:16 | 31:16 | 29:24 | 36:17 |
| 46:6 | **achieved**  23:24 | **advise**  12:2 | **alexander**  7:14 |
| **90**  13:10 | **acting**  35:1 | 27:21 | **alexis**  6:22 |
| **90071**  5:14 | **active**  17:21 | **advised**  26:5 | **aligned**  18:21 |
| **917**  4:21 | **activities**  19:13 | 44:25 | **allow**  31:16 |
| **997**  4:21 | **activity**  16:17 | **affirmed**  27:24 | 44:18 |
| **9th**  3:23 13:23 | **actor**  32:5 | **afternoon**  20:7 | **allowance**  3:12 |
| **a** | **acts**  3:24 | 44:22 | **almeida**  6:13 |
| **aaron**  5:16 | **ad**  14:1,2 20:24 | **agenda**  12:2 | **amended**  4:4 |
| 20:7 23:1 | **add**  14:23 | 16:25 25:17,19 | 12:2 33:7 |
| 30:22 | 23:18 25:12 | 26:6 37:25 | **amerson**  4:1 |
| **able**  21:19 25:5 | **address**  22:19 | 38:2 40:11 | 6:14 |
| 31:11,12 43:25 | 28:2,17 | 44:16 | **amerson's** |
| **absent**  28:10 | **addressed**  38:8 | **ago**  26:3 | 40:12 42:21 |
| 42:13 | **addressing** | **agree**  23:20 | **amount**  23:24 |
| **absolutely** | 33:4 | 25:13 31:19 | 28:19 |
| 32:18,22 | **adjourn**  39:17 | 33:6 | **andrew**  8:9 |
| | **adjourned** | **agreed**  18:18 | 10:5 |
| | 40:2 45:6 | 18:20 26:2 | |

angeles  5:14
anne  10:4
answer  33:10
anticipate  22:2
anybody  12:21
apologize
    34:12,17
appeal  3:18
    27:24 42:8
appearance
    11:4,5
application
    3:10 34:24
appreciate
    20:13
approach
    34:11
approached
    38:21
approval  21:9
    27:23 31:14
approve  31:16
approved
    13:25 27:16
approximately
    13:13 16:8
april  13:21,25
    14:14,20,25
    15:2,5,10,23
    17:2,12,13
argues  27:13
argument  12:7
    28:3 34:15,19
    37:24 40:17,19
    42:20
arguments
    26:20

arie  9:1
artificially
    24:1
asked  24:8
    30:2 39:6,6,7
aspect  18:19
assets  13:15,18
    18:4,8 19:7
    23:11,17
assign  29:4
assistance  29:9
assuming
    20:25
attempted
    26:24
attention  44:11
attorney  6:2
    36:1
attorney's  39:5
attorneys  3:6
    5:4,12,19 33:1
attractive
    16:15
auction  17:2
    17:10,11,13,15
    17:18,19,20,22
    17:25 18:3,6
    18:17,22 19:25
    20:1,4,17,21
    20:23 21:9,24
    22:2 24:2 25:8
    25:14 45:1
audio  11:11,14
august  16:9
authorities
    38:22

authority
    25:21
authorize
    30:11
authorized
    27:20
authorizing
    3:2,4
available  20:15
    30:18
avery  7:13
azimzadeh
    6:15

**b**

b  2:14 3:11,12
    18:24 19:4
    27:21 28:2
    41:14,16 42:15
b.r.  27:17
back  14:23
    21:19 22:23
    24:4 39:21
    42:16 43:16
backdrop
    29:23
background
    27:8 38:12
backup  18:24
    19:15 21:21
    22:20 23:2
bad  32:5
balance  21:11
    24:2
balances  13:8
bankruptcy
    1:1 2:5,16 3:24
    18:3,8 20:17

    20:20 21:17
    27:19,23 29:13
    44:3
bar  3:23 40:15
barse  6:16
based  12:7
    21:7
baseline  16:9
basis  18:8 28:4
    36:2,16
bc  23:6
bear  36:4
becin  6:17
began  13:23
    38:19
beginning  12:5
behalf  12:11
    20:8 30:23,23
    38:15
believe  17:8
    19:14,25 26:18
    26:22 27:10
    30:4 31:6
    40:23 41:5
    42:22 44:15,15
believes  21:1
benefit  29:5
    32:8,8,12,23
    32:24 34:21
benefits  30:6
best  18:21
    19:24 21:23
    22:1,6,10 24:5
bid  18:5,19,24
    18:24,25 19:10
    19:15,16,18,20
    19:22 21:7,14

[bid - coins]                                                                Page 4

21:21 22:1
24:18,19,21,21
24:22
**bidder** 17:16
17:22 18:20
19:18,19 22:3
22:20 23:2
**bidders** 17:14
18:2,4,7,10
20:15,25 21:6
22:5
**bidding** 18:15
23:25 25:8
**bids** 18:16
19:11,24 20:22
21:1
**bill** 32:11
**birch** 6:18
**bitcoin** 15:3
16:13
**blockchain**
17:16
**bonus** 32:11
**book** 23:6
**borrowers**
20:24 21:2,7
**bottom** 15:9
**bourgeois** 6:19
**bowling** 2:6
**brad** 9:4
**bradley** 7:19
**brian** 8:11,16
**bric** 17:17
18:24 19:1,10
19:15 21:14
22:20,23 23:2

**brief** 12:16
17:1,8 26:17
30:16 36:10
38:17 41:12
**briefly** 33:18
41:6,8
**bring** 18:10
29:5
**bronge** 6:20
**brought** 44:11
**bryan** 8:5
**budget** 16:2
**buffer** 16:11
**build** 29:9
**burden** 33:5,23
36:4
**burks** 9:16
**burn** 29:15
**business** 12:16
14:22 19:2,12
28:17 30:17
**bye** 45:7,7

c

**c** 5:1 11:1 19:6
41:14,16 47:1
47:1
**ca** 5:14
**caceres** 6:21
**calendar** 12:6
**calin** 9:14
**call** 11:5 40:13
**cameron** 7:5
**capacity** 14:18
**carl** 7:4
**caroline** 9:23
**cart** 36:3

**case** 1:3,11,20
5:11 15:22
20:8 24:5 27:6
27:16,18,25
30:23 32:6
35:17 36:13,18
43:7,20 44:3
**cases** 29:15
**cash** 14:24
15:22 16:7,8
16:11,12 20:18
**cassis** 6:22
**cede** 38:4
**celsius** 1:7,16
1:25 4:10,15
4:20 6:11 12:1
14:1 19:2,5
28:25 29:3
38:20,20 44:3
44:8,9
**ceo** 30:15
**certain** 3:3
12:5 20:21
25:22 29:3
**certainly** 20:13
24:6 27:7 43:7
44:18
**certified** 47:3
**cetera** 11:21
**cfpc** 39:6
**chance** 33:20
41:8
**changed** 20:22
34:11
**changes** 24:24
**changing**
33:24 34:1,4

**chapman** 6:23
**chase** 8:15
**chicago** 5:6
**chris** 5:9 6:17
41:2
**christina** 6:25
**christopher**
6:11 7:1 9:22
30:15
**church** 6:3,24
**ciancarelli**
6:25
**circumstances**
26:23 27:3
30:5
**citation** 27:17
**civil** 25:24
29:22
**claim** 3:23 14:4
14:5,5 31:13
44:3,4,5,6,6
**claimants**
21:12
**claims** 29:3,6
29:12 31:3
32:14,15 36:21
44:7,8
**clear** 3:24
20:11,14 33:12
37:9,12
**clerk** 11:2,9,14
**close** 21:24
**coco** 7:1
**code** 27:21
**coin** 16:2
**coins** 21:19

[coleman - cooperation]

coleman 7:2
colleague
  12:23 40:25
colodny 5:16
  17:9 20:5,6,7,8
  22:7,11,19,23
  22:25 23:2,22
  25:11,13 30:20
  30:21,22,22
  39:20 40:4
come 21:24
  42:16
comes 34:5,10
  35:8
coming 38:25
commenced
  17:12
comment 39:2
comments 17:9
  20:5 35:14
  37:22 38:18
  39:16
committed
  19:23
committee
  5:12 17:9,17
  18:1,9,15,18
  18:20,23 19:14
  19:20,23 20:5
  20:9,13,14,23
  21:1 22:9
  23:23 26:1
  27:19 28:19
  30:5,12,24
  31:10,19 33:24
  34:6 35:18
  36:20

committee's
  34:22,23 35:1
  35:23
communicati...
  4:6 40:15
companies
  20:20
company 19:3
  23:12,15 27:4
  27:6 28:10
  36:13
company's
  13:6 14:12
  15:20 43:11
compare 18:13
compares 16:5
competing
  18:4,7
complaint
  43:12
completed
  13:10,24 19:16
  20:2
completely
  32:25
compliance
  36:1
concern 19:12
  19:16,18 23:13
  24:16
concerned
  24:11
concerns 25:4
  34:3
conclude 42:10
concluded 18:6
  21:22 45:8

concludes 20:3
  25:9
concluding
  22:2
conclusion
  21:9 25:15
condition
  15:20
conditions
  27:25
conduct 25:2
conducted
  29:23
conference
  4:12,17,20
conferences
  43:4
confident 25:5
confidential
  17:19
confirmation
  21:25
conflicting
  44:1
connection
  25:23 30:16
connor 3:11
  6:2 38:2,15
consent 30:12
  31:10
consider 24:6
  38:8 41:19
consideration
  20:18 23:24
  38:18
considering
  20:19 21:22

41:23
considers
  40:15
consortium
  24:19
constituents
  22:17
constitutes
  11:15
constitutional
  28:13 29:25
construction
  21:3
contemplated
  18:14 22:21
contemplates
  24:23
continue 19:17
  27:10
continuing
  13:6 15:15
contract 15:11
  19:4
contribution
  3:13 31:4 35:4
conversations
  24:17
cooperate
  28:21 29:16,22
  36:14
cooperating
  3:5 25:20
  27:22 28:6
  29:6 30:7
  39:14,18,23
cooperation
  3:3 29:2,11

[cooperation - debtors]                                                                 Page 6

35:22
cooperative
  20:12
cordell  36:7
cordry  7:3
core  4:20 15:11
  15:16 43:24,25
  44:2,5,7,8,8
cornell  5:23
  31:21,22,23
  32:20,21,22
  33:10,19,22
  34:12,14,16,20
  35:9,11,15,17
  36:8,11,16,22
  36:24,25 37:1
  37:2,3
cornell's  37:22
  39:2
cory  8:6
cote  7:4
counsel  3:21
  26:23 27:2,4,6
  27:11,11 28:11
  28:20 29:24
  30:2 32:1,6
  33:8 38:5,6,24
  43:25
counsel's  31:24
country  47:21
couple  38:17
  41:12
course  24:25
  27:5 28:8
  39:11
court  1:1 2:5
  11:8,11,14,18

11:24 12:13,18
13:2,25 16:4
16:22 17:4
20:6 21:10
22:3,5,9,18
23:18 24:8
25:7,11,16
26:5,14 27:18
27:19,24 30:21
31:11,14,21
32:16,19,21
33:6,19 34:1
34:13,15,18
35:7,10,13,16
36:6,9,24 37:1
37:3,10,12,16
37:20,23 38:3
38:13 39:3,9
39:12 40:1,8
40:11 41:1,6
41:18,24 42:1
42:5,8,18,25
43:2,5,15
44:14,17,19,24
45:5
court's  27:23
31:14 38:18
39:13 40:7
courtney  9:16
covered  42:22
created  23:5
  23:16
creation  19:11
creditor  3:22
  4:6 6:8 41:11
creditor's  14:5
  26:1 27:19

creditors  5:12
14:8 19:2,5,8
20:9 22:22
23:10,11 29:5
29:14,19 30:24
36:4 42:10
crews  7:5
criminal  25:24
27:4 28:7
29:22,24 30:3
criminally  30:3
crypto  19:5,8
23:4,16
crystal  37:8
ct  6:4
current  3:4
13:2 14:12
25:22 27:21
28:20 29:1
30:7 44:12
currently
16:13 42:14
custody  13:3,7
13:11,16,16,17
13:19
customary
12:15 30:1
customers
21:19 28:22
42:7
cut  35:14 37:3
42:1,1

        d

d  3:11 8:1,20
9:11,22 11:1
19:9 46:1

d'amico  9:20
daily  24:16
daken  7:2
dan  8:8
dana  6:1 38:15
daniel  7:17 8:1
data  39:5
date  3:23 13:24
14:9 15:24
16:14 19:6
22:5,10 47:25
dates  43:18
david  6:16
7:13 9:6,9,18
day  18:6 28:12
37:11 43:13
days  38:21
dc  44:21
de  9:19
deadline  13:22
43:11
deal  35:7,8
40:12
dealt  38:7
42:24
dean  6:12,23
deanna  11:8,25
12:23
deborah  7:16
debtor  1:9 3:21
4:6 5:4 22:9
32:7 33:5
40:16 41:3
42:6
debtors  3:1,2
3:21 12:9,11
16:1 17:1,23

18:1,8,9,15,18
18:19,23 19:7
19:14,20,22
20:12,23 21:13
23:5,22 27:20
28:17 29:13
30:4,9,11,15
31:5,18,24
33:23 34:22
35:18,20 36:2
36:4 41:15
44:5,7
**decide**  39:22
**decision**  35:19
**declaration**
   30:14 32:24
**declarations**
   41:16
**defendants**
   1:18 2:2
**delicate**  24:2
**demonstrated**
   42:11
**denied**  46:6
**dennis**  7:10
**denying**  42:9
   42:19
**department**
   5:18
**deployed**  14:15
   14:15 15:9,10
   15:13,14
**deployment**
   14:16
**deposits**  14:9
**depreciation**
   14:24

**described**
   23:13 24:24
**description**
   23:14 25:14
**designations**
   11:21
**detail**  26:20
**detailed**  33:15
**details**  44:9
**determine**
   19:21 22:1
**determining**
   18:17
**detriment**
   28:12,15
**develop**  31:5
**developments**
   44:25
**diaz**  7:7
**difference**
   16:10
**differences**
   24:22
**different**  21:4
**differs**  19:10
**difiore**  7:6
**diligence**  18:12
   25:2
**dilute**  29:18
**diminishing**
   24:4
**dimitry**  8:4
**direction**  21:5
**disclosed**  17:12
**disclosure**
   21:10 22:4

**disclosures**
   33:3
**discretionary**
   41:25
**discussed**  15:8
   22:10 24:6
**discussions**
   18:11 22:12
   24:11 25:25
   38:6
**dispute**  4:21
**disrupt**  29:17
**distracted**
   28:11
**distributable**
   13:13
**distribute**
   23:10,17
**distributed**
   23:8,12
**distribution**
   14:3 19:5 23:4
   23:16 42:15
**distributions**
   19:8
**district**  1:2
   27:17,24 41:24
   42:8,18
**doc**  3:7,14,18
   4:1,7,13,18,21
**docket**  12:21
   12:22 16:2
   17:13 25:20,21
   26:3,18 30:13
   30:15 43:16
**document**
   18:25 39:4

**documents**
   25:1 33:11
   35:25
**dollars**  17:24
**double**  15:10
**dow**  7:8
**dr2650**  41:15
**driven**  14:16
**driving**  15:3
**drop**  20:9
**due**  18:12 25:2
   31:24
**duffy**  7:9
**dunne**  7:10
**dustin**  8:18
**duties**  28:8

**e**

**e**  2:14,14 5:1,1
   11:1,1 46:1
   47:1
**early**  15:11
**earn**  21:11
**earned**  14:5
**easy**  18:13
**ebita**  14:20,22
**ecf**  3:13 40:14
   40:16 42:3,7
**ecro**  2:18
**ed**  6:18
**effective**  19:6
**effectively**
   14:23 32:11
**effectiveness**
   42:4
**efficient**  21:20
   31:8

eisenberger
  7:11
either  22:18
  25:5 32:3
  34:21 35:18
  40:17 41:7,7
electing  14:4
eligible  13:6,21
  14:3 38:10
ellis  5:3 12:11
  41:3
embodied  26:2
emergence
  29:13
employee
  28:11 33:14
employee's
  28:8
employees  3:4
  25:23 26:23
  27:2,21 28:9
  28:20,25 30:7
  32:3 36:5
employer  32:4
  32:7
ended  14:14
enforcement
  38:21
engel  7:12
enlarge  35:21
enron  27:16,18
  27:25 35:19
enter  3:3 22:3
  39:18,23 40:17
  41:13 42:2,9
  42:18

entered  42:5
  43:17,22
entirely  30:1
entities  42:6
entitled  39:12
entity  23:4
  42:6
entry  3:2,20
  4:4
envision  19:11
  38:10
equity  23:11
  24:23
estate  28:19
  30:6 32:8,8,10
  32:11,12,14,23
  32:24 34:21
  35:6
estates  17:23
  19:7
et  1:16,25 4:11
  4:16 11:21
evaluate  18:9
  31:18
evaluating
  18:16 19:21
everybody
  21:25
evidence  29:8
  32:22
exact  34:25
  38:9
exactly  36:12
examiner
  35:22
examiners  29:7

execute  25:5
executives  29:4
exhibit  41:15
exhibits  41:14
  41:16
expect  14:17
  15:12,14 20:1
  29:21 40:20
  43:12,13
expected  16:18
expedited
  22:12
expeditiously
  39:14
expenses  3:5
  3:13 25:22
  31:18
extend  43:10
extensive
  18:11 25:25
extent  21:17
  24:10
ezra  9:20

                f

f  2:14 9:2 47:1
facilitate  29:12
facilitating
  27:9
facility  14:17
  14:18
fact  26:24 27:2
  27:23 38:9
factors  18:12
  20:19
factual  29:9
fahet  7:13

fahrenheit
  17:16 19:10,17
  19:19,22 24:18
  24:19,21,22
  25:3
failure  29:16
fair  29:21
familiar  16:3,6
far  17:24
favorable  15:3
feasible  21:4
february  3:22
  13:7
federal  38:21
fees  3:6,12
  13:8,20 28:20
  30:6 35:22
  36:1,17 39:1,4
fernandez  7:14
ferraro  6:11
  12:17 13:1,4
  14:11,14 15:19
  15:21 16:1,6
  16:23 30:15
  32:23
ferraro's  30:18
file  12:20 43:11
filed  3:25
  12:22 16:1
  17:13 25:20
  26:3,10,16,17
  30:14 41:4
  42:3 43:13
  44:3
filing  22:2
  41:15

| | | | |
|---|---|---|---|
| **final** 11:5 22:6 22:10 23:22 24:5 25:1 | **forecasts** 16:5 16:7 | 42:17,19 | 20:10 23:13 24:4 33:4,12 |
| **financial** 3:22 15:20 | **foregoing** 47:3 | **future** 3:5 18:11 20:2 36:21 | 33:13,15 35:13 36:23,25 37:2 |
| **find** 24:12 | **foremost** 27:5 | | 37:3 38:16 |
| **fine** 39:25 40:6 41:21 43:15,21 44:14 | **form** 26:3 **former** 3:4 25:22 27:21 28:9,20 29:1,4 30:7 | **g** | 40:16 41:19 42:2,8,18 43:20 44:22 |
| **finish** 33:19 34:15,18,18 | **formulate** 19:24 | **g** 6:18 11:1 **gabriel** 7:11 **gallagher** 7:18 | **good** 11:25 13:1,4 14:24 20:7 24:20 |
| **finished** 16:21 | **forth** 24:4 | **game** 34:4 | 38:14 41:2 |
| **firm** 27:20 | **forward** 19:25 22:12,20 34:10 43:21 45:1 | **gathering** 27:8 **generally** 35:3 | **government** 3:1,10,17 4:12 |
| **first** 11:19 17:20 25:18 26:22 27:5 28:22 37:19 41:13 | **found** 3:25 35:3 | **getting** 21:16 24:3 33:13,14 33:15 | 4:17 28:6 29:11,12 35:20 |
| **flow** 14:24 16:7 | **four** 29:16 | **giardiello** 7:19 | **grand** 27:3 38:22,23 |
| **flower** 5:13 | **framing** 31:24 | **give** 16:3,25 33:20 41:8 | **granted** 30:9 39:19 |
| **focused** 21:15 21:16 31:9 35:19 | **frankel** 7:16 **frankly** 38:17 **frishberg** 1:22 | **given** 11:4 20:10 21:18,25 22:5 | **granting** 3:6 3:21,25 4:7 |
| **focuses** 28:3 | 4:15 7:17 41:4 41:4,7,13,17 42:4,11 43:7 46:6 | **gives** 34:7 **giving** 19:23 | **graph** 15:9 **great** 17:7 |
| **fogelman** 7:15 **folks** 26:25 32:1 | **front** 12:2 25:4 41:18 | **glasser** 6:6 38:14,15 39:10 39:11,24 40:6 40:9,10 | 25:18 28:25 29:9 43:23 |
| **follow** 12:21 | **full** 14:17 | **glenn** 2:15 | **green** 2:6 |
| **following** 11:9 24:21 26:21 31:4 | **fundamental** 33:25 | **go** 11:8 12:13 16:23 20:6 22:25 23:1 | **gregory** 9:2 **gross** 15:1 **group** 14:1,2 |
| **foot** 19:24 32:11 | **funds** 32:17 35:5 | 26:20 30:21 32:21 35:16 41:20 45:1 | 20:24 24:19 **guess** 38:25 |
| **forecast** 16:4 16:15,16 | **funny** 36:11 **further** 25:7 30:16 37:24 39:17 40:19 | **goals** 31:16 **goes** 22:20 **going** 12:8 19:12,16,18 | **gxd** 19:4 |
| | | | **h** |
| | | | **hand** 15:23 **handed** 38:23 |

[handled - incurred]                                                    Page 10

| | | | |
|---|---|---|---|
| handled 31:3 | 41:10,11,21 | 31:15,20,22 | impact 15:15 |
| happen 33:2 | 42:3,11 43:6 | 33:17,23 34:14 | implementati... |
| happened | 46:5 | 34:20 35:15 | 42:5 |
| 24:13 28:24 | hershey 7:21 | 36:10,22,22 | implementing |
| 34:11 | hi 13:4 | 37:7,14,15 | 24:6 |
| happens 43:20 | high 17:11 | 38:1,5,11,14 | importance |
| hard 18:2 | 18:25 24:24 | 38:16 39:24 | 43:18 |
| harden 14:18 | 26:21 | 40:6,22 41:2 | important |
| hashing 14:19 | higher 14:21 | 41:10,21,22 | 21:15,19 27:1 |
| 15:4 | 26:25 | 42:22 43:6,23 | imposition |
| hasten 29:13 | highest 18:5 | 44:2,16 45:4 | 11:13 |
| hastings 33:2,3 | 21:23 22:1 | honor's 20:4 | improved |
| hatcher 7:20 | highlights | hoped 18:1 | 14:22 |
| haven 6:4 | 17:19 | hopefully | improvement |
| headed 24:12 | hit 24:13 | 39:13 40:3 | 15:5 |
| hear 12:7,12 | hoc 14:1,2 | horse 17:16 | inaccurate |
| 17:4,5 36:15 | 20:24 | host 12:24 39:5 | 23:14 |
| 37:24 40:16 | holcomb 7:22 | hosting 15:12 | inappropriate |
| 41:6 42:19 | hold 23:5 29:2 | 39:4 | 4:5 40:15 |
| heard 39:15 | 35:25 39:9 | housekeeping | inclined 31:15 |
| hearing 3:1,1 | holders 42:15 | 41:12 | included 35:11 |
| 3:10,10,17,17 | holding 39:2 | hundreds | includes 32:16 |
| 3:20 4:4,12,17 | hon 2:15 | 17:24 | including 3:6 |
| 4:20 12:4,5,16 | honor 12:10,12 | hurley 7:23 | 16:17 18:10 |
| 36:15 39:17 | 12:14,15 13:5 | hyde 4:25 47:3 | 28:7 |
| 41:19 44:20 | 16:20,24,25 | 47:8 | income 14:23 |
| hearings 24:9 | 17:3,7,11,18 | | increase 14:16 |
| 44:18 | 18:23 19:17 | **i** | 15:13,23 |
| heart 14:17 | 20:3,7 22:8,24 | identified 33:9 | increased 15:5 |
| held 28:24 39:8 | 23:21 24:3,15 | ii 3:4,23 4:7 | incredibly |
| hello 41:10 | 24:20 25:3,10 | iii 3:6,25 | 21:15,18 |
| helpful 29:8 | 25:13,18,21 | il 5:6 | incriminate |
| helping 27:8 | 26:9,19 27:13 | illiquid 23:5,17 | 29:25 |
| henry 9:14 | 27:18 28:1,6 | immanuel 6:8 | incrimination |
| heras 9:19 | 28:16,22 29:7 | 41:11 | 28:14 |
| herrmann 1:13 | 29:16,20 30:4 | immediately | incurred 3:13 |
| 4:10 6:8 41:5,7 | 30:14,18,19,22 | 15:11 | 25:23 |

| independent | interview 27:3 | j | k |
|---|---|---|---|
| 26:23 32:5 | 27:4 35:22 | **j** 6:19 7:22 8:6 | **kaplan** 8:1 |
| **indiscernible** | **interviews** | **james** 6:6 7:12 | **karen** 7:3 |
| 32:19 34:13 | 36:2 | **january** 15:12 | **katherine** 9:15 |
| **individual** | **investigate** | **jason** 4:1 6:14 | **kaufmann** 8:2 |
| 18:19,19 27:11 | 3:20 40:14 | 7:24 8:21 | **keep** 17:8 |
| **individuals** | **investigation** | 40:12 | 33:24 34:1,9 |
| 27:12 29:21 | 28:12 35:20,23 | **jeffrey** 9:7 | 38:17 44:24,24 |
| 32:9 36:19 | **investigations** | **jeremy** 8:14 | **keeping** 23:23 |
| **inflammatory** | 25:24 26:13 | **jesse** 8:13 | **keith** 8:23 10:1 |
| 37:7 | 27:22 28:7,7 | **jessica** 9:13 | **ken** 10:6 |
| **information** | 28:15,21 29:11 | **jim** 38:14 | **kensington** 8:3 |
| 11:6 26:13 | 29:22,23 30:3 | **job** 28:12 | **kept** 25:4 26:6 |
| 36:15 | 30:8 | **joe** 8:10 | **key** 30:24 36:3 |
| **informer** 32:5 | **investment** | **johan** 6:20 | **kick** 17:10 |
| **initial** 23:3 | 17:17 | **join** 11:18,20 | **kind** 14:3 |
| **initially** 31:1 | **investments** | 43:25 | 16:11 38:9 |
| **initials** 11:20 | 23:5,6 | **joined** 11:3 | 42:1 |
| **injunction** 4:5 | **invited** 27:4 | **jon** 7:20 | **kirkland** 5:3 |
| 40:14 | **involved** 18:11 | **jones** 7:25 | 12:11 26:22 |
| **injury** 42:13 | **involves** 18:12 | **joshua** 8:17 | 27:7 32:4,9 |
| **institutional** | **involving** 18:3 | 9:24 | 40:23 41:3 |
| 23:6 | **iovine** 7:24 | **joyce** 8:7 | **kirsanov** 8:4 |
| **instructed** | **iphone** 11:21 | **judge** 2:16 | **know** 20:11,16 |
| 20:24 21:6 | **issue** 39:21 | 11:6,23 | 21:15 23:23 |
| **intend** 40:17 | 40:5 44:11 | **judgment** 25:1 | 24:12 32:13,16 |
| **intended** 17:21 | **issue's** 43:20 | 28:17 30:17 | 33:2,13 34:10 |
| **intention** 34:17 | **issues** 33:4 | **jump** 12:25 | 34:24 35:9 |
| 39:13 | 40:18 43:18 | **june** 14:19 | 36:3,5 39:3,12 |
| **interest** 17:1,5 | **issuing** 24:23 | 15:14 43:12 | 39:19 41:24 |
| 23:9 31:17 | 41:23 | **jury** 27:3 38:22 | 42:18 43:25,25 |
| 32:10 35:2 | **item** 25:19 | 38:23 | 44:10 |
| **interests** 19:3 | 38:1 40:11,24 | **justice** 5:18 | **known** 33:16 |
| **interrupt** 37:4 | 42:24 | 28:23 | **koenig** 5:9 |
| 37:5 | **items** 42:24 | | 12:24 40:25 |
| **interrupting** | | | 41:2,3,8 42:22 |
| 37:4 | | | 43:1,3,6,23 |

44:15

kotilar  8:5
krieger  8:6
ks  2:18
kuhns  8:7
kwasteniet  5:8
  12:10,11,14,19
  14:11 15:19,25
  16:23,24 17:7
  20:16 21:22
  22:11,14,19,24
  23:1,18,20
  24:15 25:9,18
  26:9,15 30:25
  33:17,21 36:9
  36:10 37:5,6
  37:11,12,14,17
  37:21 38:1,4
  38:13 39:19
  40:4,21,22,23
  45:3,4,7
kwasteniet's
  25:14 39:16
kyc  13:9 14:6
kyle  9:8

## l

l  8:4 9:17,20
la  5:5
large  12:5
  44:20,21
largely  15:2
  16:17 24:21
las  9:19
lastly  28:16
late  17:2 19:25
latest  16:4,7,15

latona  8:8
law  3:24 27:20
  38:21
lawrence  7:15
layla  8:19
lead  17:22
  19:19
leading  18:20
leaves  43:24
leblanc  8:9
ledanski  4:25
  47:3,8
left  15:9
legacy  16:18
legal  3:21
  21:12 25:22
  30:6 47:20
lehr  8:10
leif  7:25
lennon  8:11
leonard  8:12
letter  41:15
letting  34:10
level  17:11
  18:25 24:24
  26:21
liability  42:7
licenses  25:2
light  34:2
  39:16
likelihood
  42:12
likely  23:9
  28:11
limit  20:10
limited  28:19

line  11:4 46:4
liquid  19:4,8
  23:4,16
liquidity  16:4,9
  16:15
list  32:13,15,16
  32:25 35:12
listed  36:19
listening  37:15
litigation  35:3
little  39:17
llc  1:7,16,25
  4:11,16 6:11
  12:1 17:16
llp  5:3,11 6:1
loan  20:25 21:3
  21:11 23:6
longer  15:8
look  44:10,17
  45:1
looked  34:7
  43:16
looking  20:18
  22:16,17 26:6
  35:20
los  5:14
lot  21:25 22:11
  33:4 37:15
lots  20:19
lower  16:16
  29:14
lucas  7:22
lucy  9:17
lund  8:13
lynch  8:14

## m

m  5:8 7:8 8:2
  9:10
machines
  14:15 15:4
made  12:24
  14:9 19:20
  20:14 35:4
  39:3
maintains
  11:14
majority  28:25
make  17:9
  20:11,14 21:12
  26:21 30:10
  34:3,9 35:14
  38:17
makes  34:24
making  3:13
  11:10 16:14
  31:9 34:25
manage  18:7
management
  19:4
manner  21:20
  22:13 23:8
  31:8 39:7
march  14:15
  14:21 15:1,6
margin  15:1
margins  14:21
mark  9:5 26:19
marsh  8:15
martin  2:15
mashinsky
  32:17 36:17
  37:8

masumoto 8:16
materials 27:8
matter 1:5 43:24 44:21
matters 12:6
matthew 9:12
maximize 18:22
maximizing 23:8
mean 24:10,13
meaningful 22:15
measured 13:9 17:24
mechanism 31:7
mediation 44:7 44:10
meet 34:2
meeting 33:23
melanie 9:25
members 14:2 20:14 24:19
mentioned 19:13 20:17
mere 18:3
merely 30:10
merits 42:12
mester 8:17
metrics 15:8
mg 1:3,11,20 4:10,15
michael 8:20
middle 16:9

mikaela 8:3
milin 8:25
miller 8:18
milligan 8:19
million 13:11 13:13,24 14:21 14:25 15:22,23 15:24 16:8,8 16:11,16
millions 17:24
mind 25:4
mineola 47:23
mining 14:12 14:25 16:14,19 19:2,3,12 23:12,15
minutes 12:4
misconcepti... 37:18
misses 26:19
mitchell 7:23
mitigate 15:15
monetary 11:13
monetization 19:7,13
money 37:8
montana 14:17
month 15:2,23
moot 43:20
morning 11:3 11:25 13:1,4 38:14 41:2 44:1
morris 8:20
motion 3:2,17 3:20 4:4 25:20

25:21 26:16 30:8,25 37:23 38:2,7,8 39:15 39:18,23 40:2 40:12,13,13,14 40:24 41:4,14 42:2,3,9,19,21 44:4
motions 36:3 40:13,17,19 42:21,23 46:5
move 21:4,24 22:12 25:16 37:25
moved 43:17
movement 22:16
moving 15:7
muted 31:20

**n**

n 5:1,5 11:1 46:1 47:1
nagi 8:21
name 11:17,19 11:20
nancy 8:22
near 20:2
need 12:4 19:24 21:11,24 24:25 29:6,8 32:6 42:19
needed 20:16 29:2
negotiate 21:7
negotiated 21:8

negotiations 25:25
nelly 6:13
network 1:7,16 1:25 4:11,16 6:11 12:1
new 1:2 2:7 5:21 6:4 15:12 19:20 43:21
newco 19:12 21:23
news 24:20
nguyen 8:22
nicole 8:12
night 12:21 16:1 26:17 30:16 34:7 43:9 44:2
nightly 24:16
nights 26:3
nimma 6:15
nine 15:5
noah 9:10
nolan 3:11 6:2 34:24 35:8 38:2,15,19 39:12,17 40:5
nolan's 35:4,11 38:5,6 39:5
non 16:17
nonmonetary 11:13
nope 23:20
note 11:9 18:14 21:6 27:15 30:8 38:5

noted  26:17
  27:15 29:7
notes  15:7
notice  17:12
  22:3 30:12,13
notified  33:11
novawulf
  17:15 19:11,17
  19:19 24:21
noyes  8:23
number  12:22
  16:2 17:13
  18:5 25:21
  26:4 30:15
nunc  35:21
ny  2:7 5:21
  47:23

**o**

o  2:14 11:1
  47:1
object  27:1
  33:8 34:8
  36:25
objected  31:1
  44:5
objection  26:1
  26:10,10,12,16
  26:18 27:19
  28:2 31:1,5
  34:3,23 35:1,6
objections  26:8
  34:2
obligate  30:9
obligations
  28:10
obviously  12:1
  28:9 44:24

occurred  3:23
octave  6:19
office  26:25
  31:23 36:14
  39:6
official  5:12
  11:15 20:8
  30:23
okay  12:12
  25:7,11,16
  35:7,17 36:6,8
  37:10,13 38:13
  40:1,5,11 41:1
  43:5,22 44:17
  45:2,5
old  35:19 38:19
  38:23 47:21
omnibus  44:20
once  17:22
ongoing  17:2
  17:18 25:23
  28:9 30:8
online  14:18
open  12:15
operate  23:13
operating
  16:11,12,17
operation
  16:14
operations
  14:13,25
opinion  27:18
opportunity
  31:17 33:7
  34:8
opted  13:17,21

order  3:2,20
  4:4 22:4 26:3,6
  33:7 34:6
  40:18 41:24
  42:2,5,7,9,9,19
orderly  19:9
orders  43:17
ordinary  28:8
osborne  8:24
outside  19:12
overall  13:20
overruled
  26:19
overuse  28:13
overwhelming
  28:25
own  27:2 32:6
  33:1 35:2,3,23
owned  23:10

**p**

p  5:1,1 7:21
  11:1
page  46:4
paid  31:19
  33:1 35:5 36:1
paper  26:20
papers  12:8
  27:15
paragraph
  34:25
part  13:16
  15:16 21:1
  41:25
partial  11:20
participant
  35:2

participate
  17:14 27:5
  30:2
participating
  14:2,8
participation
  17:21
particularly
  39:16
parties  11:2,10
  11:17,20 17:1
  17:5 25:3
  30:18 31:17
  44:25
parts  20:21
party  11:18
  19:23 25:5
  35:1
passed  13:9
past  3:5 44:17
patel  8:25
pattern  27:23
paul  33:2,3
paused  38:20
pay  28:20 32:1
  36:17 37:7
paying  35:21
  36:4 39:4
payment  3:12
  27:25 31:13
  38:25
payments
  13:19 30:10,11
  33:8
peled  9:1
penalties  29:17

pending   3:18
   42:8
people   29:25
   32:13 33:8
   34:8 37:4,15
   37:17 44:19
percent   13:7
   13:10,12,18,19
   13:20,22 14:3
   14:4,21 15:1,1
   15:2,5,6 16:14
   19:3
percentage
   15:4
perfectly   39:25
performance
   15:3 28:9
performing
   28:12
period   44:23
permission
   20:4
person   35:25
   38:9
personal   36:1
perspective
   24:20
pesce   9:2
petition   14:9
   15:24
philippe   6:15
phillips   9:3
plaintiff   1:14
   1:23
plaintiffs   43:8
   43:9 46:5

plan   14:6
   18:24 19:1,15
   19:18 21:17
   22:4 42:14,16
platform   14:7
play   19:1 27:7
   44:13
pleadings
   43:11
please   11:4,8,9
   13:2 14:12
   16:3 33:22
pleased   25:24
pocket   3:5
podium   30:20
   38:4,12 40:25
point   20:11
   24:3 25:3
   27:16 29:20
   34:25
points   26:22
positive   16:12
possible   21:2
   21:20 24:9
post   18:8
potential   19:4
   32:15,17
potentially
   29:18 32:10
   38:10
practical   19:6
pre   4:12
precedent
   35:24 36:11,13
preference
   13:12

preferred
   42:15
prepare   27:8
prepared
   12:15 16:25
present   6:10
   19:19
presentation
   12:20
presented
   38:22
presently
   19:21
pressed   35:13
   38:16 44:19
pretax   14:23
pretrial   4:17
prevented   37:4
previous   16:16
   21:3 23:21
previously
   29:7
price   15:3
   16:13
primary   28:4
principle   43:10
prior   15:2 16:5
   20:22 21:9
pro   6:8 35:21
   41:11
problem   37:21
procedural
   30:9,25 38:12
procedure   34:1
procedures
   18:15 26:2
   30:11 31:5,6

31:15 33:24
   36:19 37:8
   38:7,11
proceed   18:17
   20:25
proceeding
   4:10,15
proceedings
   11:11,15 29:24
   39:3 43:19
   45:8 47:4
process   13:6
   14:7 17:2,25
   18:11,21 20:12
   21:24 24:2
   25:14 31:3,4
processes   13:3
processing
   13:23
produced   39:7
production
   35:25 36:2
productions
   39:4
productive
   16:15
professional
   3:12
prohibited
   11:10
prohibition
   11:12
project   16:8
promptly
   40:20
proof   3:23 44:3
   44:6

[proofs - requests]                                                    Page 16

proofs  44:4
proposal  21:23
proposed  34:6
  42:14,16
proposing  28:1
  34:22 36:17
  37:7
prosecution
  36:21
protect  35:3
provide  14:12
  15:20 31:6
  36:19
provided  14:2
  32:16 33:12
  35:18
provides  19:1
  30:10 32:24
providing
  36:14
proxy  14:24
publicly  19:1
purchase
  16:18
pure  13:16
  19:1
purposes  12:24
pursuant  3:11
purview  31:14
put  19:24
  22:14 39:21

**q**

qualified  17:14
quantify  18:13
question  15:25
  23:21 31:25,25
  34:21

questions
  16:21 20:15
  30:19,19
quick  12:20
  13:5 14:22
  15:21 41:12
quickly  22:17
  26:5 41:22
quite  24:7,11

**r**

r  2:14 5:1 11:1
  47:1
raise  43:19
raised  31:2
  34:3
rather  26:12
rawe  9:4
reach  20:23
  38:23
read  11:6
reality  36:16
really  20:11
  26:11 28:2
  32:2 35:24
  44:19
reason  19:15
  21:18 28:22
reasonable
  29:21 30:1
reasons  28:18
  44:22
rebecca  7:18
receive  13:18
  19:3 31:17
received  41:17
recently  16:1

recipient  32:17
recipients  33:1
recommenda...
  41:23
record  11:3,7
  11:16,18 12:1
  19:19 29:9
  32:23 40:23
  41:14 47:4
recording
  11:11,15
records  33:15
recoveries
  29:14,18
recovery  17:16
refer  25:19
reflected  26:7
refute  28:17
regarding
  41:16 42:6
regina  8:24
regulators
  24:11,14,18,25
  24:25
regulatory
  25:4
reimburse
  25:22 30:6
reimbursement
  3:4 38:10
rejection  15:11
related  3:7,25
  4:7 16:18
  26:13 27:25
  30:3
relative  20:2

relief  3:7,22,25
  4:7 27:14,16
  28:4 30:17
remain  13:18
  26:8
remaining
  13:13,15 14:4
  26:10
remains  16:12
  17:18
remarks  20:3
remedy  3:23
reminder
  14:22 15:21
remining  19:7
reorganization
  29:18
reorganized
  23:12,15
reply  26:17
  30:16
report  16:2,3,6
  25:24 29:7
represent
  13:10 32:4,9
  43:8
represented
  33:2
representing
  13:22 32:7
  38:24
request  4:5
  12:23 26:12
requesting
  33:14
requests  31:3,7
  31:11,12

required 21:4
reserve 25:1
resolution
  29:12
resolve 39:20
  40:5
resolved 26:1
  39:22
resolving 31:7
  40:18
resources
  28:19
respect 13:15
  16:7 21:13
  31:24 39:14,17
  44:25
respected
  21:13
respective
  21:12
respond 33:20
  41:9
response 23:21
  36:9 39:2
responsive
  43:11
restructuring
  15:17
result 11:13
  16:17 29:17
  42:15
resulted 35:5
retain 27:20
retained 38:24
returned 35:6
returning
  22:21

returns 24:4
revenue 14:25
review 31:11
  31:12,18
revised 22:4
  26:3,6
richard 9:3
right 11:2,5,9
  11:25 12:25
  18:7 19:18
  22:18 25:16
  26:14 28:13
  29:25 37:16
  38:3 40:21
  41:6,10,17,21
  42:20,25 43:2
  43:15 44:14,23
rights 21:11,12
  31:10 35:3
rigs 14:15,16
  14:18 15:9,13
  15:14 16:19
risk 42:13
road 24:12
  47:21
roadblock
  24:13
robert 8:2
robinson 9:5
robust 17:21
role 27:7
room 11:19
ross 5:8 12:10
  13:4 15:21
  40:22
roughly 16:16

rounds 23:25
rule 12:7 39:13
  40:20
ruled 40:3
ruling 39:13,18
  39:23
rulings 46:3
ryan 9:6

          s

s 4:6 5:1 8:11
  8:16 9:7 11:1
sabin 9:7
sale 18:4
sales 16:18
salle 5:5
samuel 7:21
sanction 4:5
sanctions
  11:14 29:17
santos 6:21
satisfactorily
  39:20
satterfield 9:8
saw 43:16
says 35:1
scenes 18:2
schedule 12:3
  22:15
schneider 9:9
schottenstein
  9:10
schroeder 9:11
scientific 4:20
  15:11 43:24
  44:3
score 18:18

scott 7:9
screen 12:24
screenshot
  11:12
se 6:8 41:11
sec 39:6
second 17:25
  27:13
section 27:20
see 12:12 15:9
  18:5 25:1 26:6
  28:23 39:20
  40:4 45:1
seek 30:2,17
  44:7
seeking 3:2
  27:14 28:5
  35:2 42:4
seeks 25:21
select 18:24
selected 18:7
selection 21:14
  21:21
self 28:14
  32:25 35:2
series 42:15
  43:17 44:4
serve 26:22
  27:10
service 41:16
serving 27:7
  32:25
set 26:2 30:10
  40:2
settlement
  13:17,21,25
  20:25 21:1,3,7

21:8,10
**several** 24:17
**shara** 5:23
  31:22
**share** 13:11
  17:20
**sharing** 12:25
**sharon** 7:8
**short** 22:4
**shortly** 22:2
**shot** 21:16
**shown** 42:13
**signature** 47:7
**silverman** 9:12
**similar** 27:15
  27:22 28:1
**simon** 9:13
**simply** 18:4
  28:7 29:21
**skipped** 42:23
  42:23 43:1
**slide** 14:10
  15:7,7,18
**slower** 17:25
**soft** 20:19
**solely** 35:19
**solutions** 47:20
**somebody** 30:2
**sonya** 4:25
  47:3,8
**soon** 19:5
  21:20
**sorry** 23:1
  32:20
**sort** 24:4 31:7
**sound** 28:18
  34:4,9

**sounds** 28:24
**south** 5:13
**southern** 1:2
**speak** 11:17
  42:10 43:8
  44:19
**speaking** 11:3
**specific** 30:10
  33:8 34:8
**specifically**
  32:15
**speed** 29:14
**spoke** 43:9
  44:1
**spot** 22:15
**spread** 37:18
**st** 9:14
**stadler** 9:15
**stages** 20:1
**stalking** 17:15
**start** 14:6
  26:15
**started** 15:22
**state** 11:17
  44:13
**statement**
  21:10 22:4
  26:11 33:13
**states** 1:1 2:5
  5:18 27:17
  31:23
**status** 4:20
  13:2 17:10
  43:3 44:12
**stay** 3:18 40:24
  42:4,13,17

**steadman** 9:16
**steven** 6:24
**stipulation**
  36:20 43:10,13
**stipulations**
  43:17,22
**stock** 20:18
  24:23
**stop** 37:20,23
**street** 5:5,13,20
  6:3
**strictly** 11:10
**strong** 42:12
**structure**
  22:21 23:3
  24:22
**structures**
  20:22 24:10
**subject** 31:14
  32:14
**submission**
  37:24 40:20
**submit** 28:18
  29:20 43:21
**subpoena**
  38:22,23
**subsequent**
  19:8 23:25
**substantial**
  3:13 24:1 31:4
  35:4 42:13
**success** 42:12
**successful** 22:3
**successfully**
  13:9 15:15
  29:5

**sufficient** 13:8
**suggest** 36:16
  37:7
**suggested**
  34:16
**suite** 5:13
  47:22
**sum** 30:4
**superior** 19:21
  19:24
**supported**
  16:12 28:18
**supports** 30:17
**sure** 17:5 20:6
  21:12 31:10
  39:11 40:10
  44:12

### t

**t** 9:14 47:1,1
**table** 18:10
**take** 11:5 23:7
  26:8 43:6
**talk** 36:12
  39:19 40:4
**talking** 32:2
**talks** 36:11
**taxes** 16:18
**tell** 13:2 22:20
**tells** 26:24
**ten** 15:2
**terms** 17:19
  18:25 20:24
  27:25
**testify** 30:18
**testifying** 32:3
**testimony** 35:5

**thank** 11:24
12:10,14 16:22
16:24 17:7
30:22 31:22
33:21,22 36:6
36:8 37:14,14
38:13 40:6
41:22 45:3,4,5
**thanks** 13:5
14:11 15:19,25
40:8,8,22
43:23
**things** 20:10
23:7 31:2,9
41:13
**think** 12:18
21:14,18 22:13
23:14,15 24:5
27:1,6 30:5,24
31:15,24 43:3
**third** 28:6
**thomas** 7:6
**thomson** 9:17
**three** 17:14
29:11
**threshold**
13:12
**tight** 12:3
**time** 11:17
12:3 13:5
14:22 15:4,4
17:20 19:23
20:10 21:25
22:7 23:7,8,17
23:21 33:15
34:4,10 35:13
37:19 38:16

40:2,7 44:18
44:20,23
**timely** 19:6
39:7
**times** 36:3,18
**today** 12:3,6
13:5,10 16:20
25:19 41:24
44:20
**together** 18:16
43:7
**token** 24:23
**told** 36:18
**tony** 9:21
**totaling** 13:12
**towards** 21:25
**trading** 19:2
**train** 44:21
**tranche** 13:17
**transaction**
25:6
**transcribed**
4:25
**transcript** 47:4
**treated** 14:5
**trend** 15:8
**trial** 4:12 44:1
**tried** 44:18
**tristan** 7:7
**true** 3:25 47:4
**truly** 35:23
**truncate** 24:2
**trust** 29:4
**trustee** 5:19
26:11,16 27:13
28:16 30:12
31:10,23

**trustee's** 26:18
26:25 28:2
36:14
**try** 12:20 17:8
41:12
**trying** 34:2,5
36:13
**tunc** 35:21
**turetsky** 9:18
**turn** 20:4
**turning** 14:10
15:18 16:25
**tweeting** 37:17
**two** 13:19 16:7
18:6 26:3 29:3
38:21 40:13
42:21 43:14
**type** 18:5 31:2
32:5,5
**typical** 18:3
20:17

**u**

**u.s.** 2:16 5:19
26:10,16,18,25
27:13 28:2,16
30:12 31:10
36:14 39:5
**u.s.c.** 3:11
**ubierna** 9:19
**ucc** 14:1
**ultimately**
28:14 31:11,13
**unable** 20:23
**under** 14:5
23:23 27:20
33:7 37:23
38:11 40:20

**underestimate**
43:18
**understand**
31:12 38:16
**understanda...**
28:23
**understanding**
23:3
**understood**
24:15 39:24
**underuse**
28:13
**unfortunate**
36:13
**united** 1:1 2:5
5:18 27:17
31:23
**unmute** 11:4
**unprecedented**
27:14 35:21,24
**unprofessional**
37:6
**unsecured** 3:22
4:6 5:12 20:9
30:24
**update** 12:16
14:12 15:20
16:4 17:1 24:9
25:7,9 44:2,12
**updated** 16:2
**use** 16:18
28:19
**used** 23:10
**useful** 19:14
**users** 13:8,10
13:17,21

| | | | |
|---|---|---|---|
| **using** 3:1,10,17 4:12,17 | 35:24 36:12 37:24 42:17 44:19 | **withhold** 13:3 14:1,2,8 | **year** 16:14 38:23,25 |
| **v** | **wanted** 24:1 25:12 41:22 44:2,12 | **witness** 3:3 25:20 39:14,18 39:23 | **years** 35:19 38:19 |
| **v** 1:15,24 4:10 4:15 | **wants** 12:21 33:1 | **witnesses** 3:6 27:9 29:6,10 32:3 | **yeilding** 10:4 |
| **vacate** 41:24 | **warren** 9:23 | **wofford** 10:1 | **yield** 30:20 38:12 40:24 |
| **valuable** 20:18 29:3 | **way** 20:1 35:21 40:3 | **wohlman** 10:2 | **yoon** 10:5 |
| **value** 13:9,13 13:22 17:23 18:22 22:16,21 23:7,24 | **we've** 20:14 21:6 24:6,24 26:2 36:18 37:21 38:5 39:3,4,7 43:9 | **wondering** 13:1 | **york** 1:2 2:7 5:21 |
| **varick** 5:20 | **weedman** 9:24 | **woods** 10:3 | **z** |
| **various** 25:2 25:23 | **week** 14:6 16:7 22:14 | **word** 37:17 | **ziman** 10:6 |
| **vazquez** 9:20 | **westover** 9:25 | **work** 18:2 21:18 | **zoom** 3:1,10,17 4:12,17 |
| **vehicle** 23:9,16 | **white** 5:11 20:8 30:23 | **worked** 18:16 31:5 34:5 | |
| **vejseli** 9:21 | **wiggin** 6:1 38:15 | **working** 17:20 18:24 38:19 44:9 | |
| **veritext** 47:20 | **wild** 36:15 | **wrap** 22:17 | |
| **victor** 9:19 | **wildly** 37:6 | **wrapped** 22:13 | |
| **video** 11:11 | **william** 9:11 | **written** 42:9,9 | |
| **violation** 11:12 | **wind** 19:9,13 23:7,14 | **wrong** 31:25 | |
| **violations** 3:24 | **withdrawal** 13:3,8,20 | **wrongdoers** 28:23 29:1,2 | |
| **visions** 18:10 | **withdrawals** 13:6,11,23,24 14:7 38:20 | **x** | |
| **voluminous** 39:3 | **withdrawn** 13:14 | **x** 1:4,10,12,19 1:21 2:4 33:14 46:1 | |
| **voyager** 24:13 33:3 | | **y** | |
| **w** | | **yanez** 9:25 | |
| **w** 9:12 | | **yeah** 13:4 14:14 16:6 17:4 44:17 | |
| **waiting** 11:19 | | | |
| **wall** 9:22 | | | |
| **want** 12:2 17:4 17:5 20:11,14 22:14 23:18 28:23,23 35:14 | | | |