Immanuel J. Herrmann, *Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.,*[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**IMMANUEL J. HERRMANN'S DECLARATION IN SUPPORT OF THE
MOTION TO VACATE THE OPINION AND ORDER REGARDING WHICH
DEBTOR ENTITIES HAVE LIABILITY FOR CUSTOMER CONTRACT
CLAIMS UNDER THE TERMS OF USE AND THE ORDER (I) SETTING A
BRIEFING SCHEDULE AND (II) GRANTING RELATED RELIEF**

I, Immanuel J. Herrmann, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I submit this declaration in support of the *Motion to Vacate the Opinion and Order
    Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under
    the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related
    Relief.*

2.  I have personal knowledge of the facts stated herein, unless stated on information and
    belief, and if called upon to testify to those facts I could and would competently do so.

3.  All (or substantially all) Celsius creditors are known creditors. I have personally
    reviewed portions of the Debtors' schedules, as filed on the docket, and can confirm that
    the company knows the identity of their creditors and that account holders are known to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Celsius. I have also come to know that Celsius creditors are known creditors during my participation in these cases and through being a customer. For example, I know for a fact that Celsius requires customers to submit KYC, or, "know your customer" information that includes email and street address for all its customers, and that Celsius sought to redact such information earlier in these cases, and that the Court ruled on that request for relief.

4. I am and have been an account holder at Celsius (as defined below) at all times relevant to the above Motion. I am an unaccredited retail investor.

5. I have contractual disputes with Celsius. I contacted them by phone during the Pause and requested to move my funds to Custody, but they would not do it. In addition, I take the position that the contracts I signed stated that my returned loan collateral was contractually supposed into Custody for my Bitcoin Collateral from my loan closed after April 15, 2022, and that I was the "sole owner" of all of my returned collateral (including the Bitcoin collateral and Ethereum collateral that was deposited into an Earn account before the creation of Custody accounts.)

6. The Debtors take the position that I am an unsecured Earn creditor bound purely by the terms of use (and thereby this order) and seek to classify me (and similar-situated customers) as such.

7. I am a United States Citizen and reside in the United States in the state of Maryland.

8. I have actively been participating in these Chapter 11 Cases as an individual creditor since the beginning. I have been advocating for maximum returns to account holders, and Earn customers in particular, throughout.

9. The above-captioned debtors and debtors in possession (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Celsius") selected me along with two other claimants (Daniel A. Frishberg and Rebecca Gallagher) to serve as bellwether claimants in these Chapter 11 Cases. It is my understanding that the purpose of choosing me to serve as one of the bellwether claimants was for me to represent complex and nuanced contract (and breach of contract) claims against the Debtors and/or Celsius, in part because I had collateral that was contractually required to go into a Custody account or be otherwise held in express or constructive trust under the contracts I signed, but it was instead placed by the Debtors into an Earn account pre-petition, among other claims and causes of action, and in part because I would show up in court and argue my case (versus it being handled by default.)

10. Before the entry of this Order, I filed a timely proof of claim that included contract and non-contract claims against all Celsius debtor entities. Therefore, my claim form is materially impacted by the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**Order**"), including with respect to the Bellwether Claims process.

11. My understanding of the Order is that, in addition to forcing an update to the Debtors' schedules, and a re-opening of the bar date indefinitely, the Order seeks to prevent me from asserting claims under the contracts I signed against any Celsius debtor entities except Celsius Network LLC, and will ultimately require me to re-submit my claim to comply with the order (if it is not reversed or vacated.)

12. At the time of the purported migration from CNL to Celsius Network LLC ("LLC") in the summer of 2021, I had an account with Celsius. I recall reading about the purported

migration sometime close to when it happened and listening to an AMA in which it was stated that nothing material would change due to the migration.

13. I only learned that Celsius was illiquid on or around the date of The Pause (when they stopped withdrawals) and (in the instance of Celsius Network LLC "hopelessly") insolvent sometime after the Petition Date.

14. Had I known that CNL was purportedly transferring all of its obligations but not all of the assets associated with those obligations to LLC, I would not have continued my relationships with Celsius. Instead, I would have withdrawn my crypto.

15. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that the "migration" was in response to a FCA investigation. Had I known that the FCA was investigating CNL and had accused it of operating an illegal investment scheme, I would have withdrawn from the Celsius platform.

16. Sometime in either late June or early July of 2021, I read the *Celsius Community Update – June 23, 2021*, Medium (Jun. 23, 2021), which can be found at:

https://celsiusnetwork.medium.com/celsius-community-update-june-23-2021-a28fca899091

17. The above *Celsius Community Update* assured me that "for the avoidance of doubt, all Celsius services for all existing customers remain unchanged." I relied on this statement in continuing to use their services. Had I known that something material had changed around the time of the migration, such as purportedly only having claims against a hopelessly insolvent entity, converting my property into unsecured debt, or even the fact that a material amount of assets were purportedly left with another entity during the migration that I did not have access to, I would have ended my business relationship with Celsius and withdrawn my crypto.

18. I did not fully read the Terms of Use Version 8 until "The Pause" (the period before Celsius filed for Chapter 11.) I may have skimmed an earlier version of the Terms of Use when I signed up (though I did not study it closely).

19. I am one of the most active creditors in these cases. I read my emails from Celsius, such as bar date announcements. If I had received service of the Briefing Schedule via email, I would have read it and filed a brief by December 28.

20. I didn't see the Briefing Schedule which states that "Any interested parties shall brief the issue of 'which Debtors are liable to account holders under the global contract (the 'Terms of Use') between Celsius Network LLC and its account holders' (the 'Briefed Legal Issue')" as an express pre-condition of participation until May 10, 2023 – so, while I generally had a sense, sometime in January, that I had "missed my chance" to participate and that it was "too late" to participate, I did not know until May 10, 2023 the full potential consequences of the Briefed Legal Litigation, nor that the Court had required me to be served.

21. Had I filed a brief and thereby participated in the Briefed Legal Issue process, I would have requested discovery. I would have entered both the *Celsius Community Update* and various other statements, including AMA that I relied on in regards to the purported migration. I would have filed a declaration like this one. I also would have briefed the question of whether the purported liability limitation under the Terms of Use, even if it can be read the way Chief Judge Glenn read it, is unenforceable and/or void under New York law, and sought to defer consideration until there was a more developed evidentiary record.

22. The lack of notice and the opportunity to be heard in express violation of Paragraph 9 of the Briefing Schedule prevented me from making these arguments and entering this evidence into the record to my significant prejudice.

23. There are additional arguments that I was unable to make because there was evidence that I could not have gotten via diligence (in part due to being refused discovery) at that time, but also arguments that came to light after the Examiner's report and in the UCC's recent Class Certification Motion. (Dkt. No. 2670.)

24. My understanding at the end of December was that the Court was not allowing "private party" discovery until the examiner's report was completed because of its decision with respect to Victor Urberna de las Heras' 2004 examinations. I believe that, ***even had I participated*** in the Briefed Legal Issue, I would have likely been denied the type of comprehensive discovery that later became available for the UCC to use in the Class Claims process, which is the type of discovery that may have been required to brief the question of whether that the limitation of liability was void under New York law due to unconscionability and thus unenforceable.

25. After conducting an investigation, I can confirm that I was never, to the best of my knowledge, served with the *Debtors' Motion Seeking Entry of an Order (I) Setting A Briefing Schedule and (II) Granting Related Relief* (Dkt. No. 1338), nor the final draft of the Briefing Order.

26. I was not aware that I was required to be served with the Briefing Order until I discovered it May 10, 2023 while I was reviewing items in the UCC's record on appeal.

27. On May 10, 2023, I searched through my emails from Celsius and confirmed that I was not served with the Briefing Scheduling via email as Paragraph 9 of Briefing Schedule

required, and confirmed with Mr. Frishberg that the same occurred with him. I then asked

a group of other Celsius creditors if they had been served. None had been.

28. On May 11, 2023, Mr. Frishberg and I first wrote to the Debtors to inquire regarding

service via email.

29. On May 15, 2023, I sent a formal letter, along with Mr. Frishberg, to the Debtors

requesting this same information (also via email). Mr. Frishberg and I heard back the

same day via email, with the 2 following replies:

   a. From Christopher Koenig: "Thanks, Daniel--the affidavits of service speak for

      themselves, and the Debtors are not aware of any service outside of what is

      referenced in the affidavits of service."

   b. From Gabriela Zamfir Hensley, "There is one other affidavit [referencing the

      supplemental affidavit], but it does not change the substantive answer to the

      question."

30. The copies of the emails from the Debtors, and the letter we sent to them, and have

submitted as exhibits with our motion, are true and correct copies and were prepared by

me.

31. Had I discovered that the briefing schedule required to be served on all customers

including myself before May 10, 2023, I would have investigated earlier and filed under

Rule 59 / 9023, or otherwise sought to intervene, in addition to even more expressly

raising the issue on appeal. (For the avoidance of doubt, I believe the issue is,

nonetheless, well preserved on appeal.)

32. I was unable, through diligence, to read every sentence of the Briefing Schedule before

May 10, because more than 2,700 documents (with some of them being 100s of pages

long) have been filed in these cases and it was styled on the docket as an "*Order, Signed on 12/19/2022, (I) Setting A Briefing Schedule and (II) Granting Related Relief.*"

33. I only read the entire Briefing Order, including Paragraph 9, because I already had concerns about whether this *should have* been served on myself and other customers under *Mullane,* but not because I had express knowledge of the Briefing Order itself. I was instead wondering about a *likely* failure to serve us with something as we were preparing to write an appellate brief, and other issues under *Mullane*, such as the fact that no customers participated in the litigation but only the Debtors, the UCC, and the Series B Preferred Holders.

34. Throughout all of my interactions with Celsius, I believed them to be a single entity. When I saw a pop-up about the migration, I believed that the entire Celsius operation (the whole company) was transitioning from a UK operation to a US operation. I also believed the Medium post which stated that nothing had changed.

35. If I knew that I purportedly held my assets with a "hopelessly insolvent" entity, and had I known about Celsius' corporate structure, I would have withdrawn my crypto in the Summer of 2021.

36. I had no way of knowing the corporate structure until after the petition date. The corporate structure was not disclosed to me. On information and belief, it was not disclosed to other customers either.

37. I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 14, 2023 at Silver Spring, MD

*/s/ Immanuel J. Herrmann*
Immanuel J. Herrmann
*Pro Se*

# CERTIFICATE OF SERVICE

I certify that on Wednesday, June 14, 2023, a true and correct copy of the *Motion to Vacate the Opinion and Order Regarding Which Debtors Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* and *Immanuel J. Herrmann's Declaration in Support of the Motion to Vacate the Opinion and Order Regarding Which Debtors Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* were served upon counsel to the parties to the appeal and the Bankruptcy Court's Core/2002 Service list.

*/s/ Immanuel Herrmann*
Immanuel Herrmann
*Pro Se*
June 14, 2023