Daniel A. Frishberg, *Pro Se*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) | (Jointly Administered) |

**DANIEL A. FRISHBERG'S DECLARATION IN SUPPORT OF THE MOTION
TO VACATE THE OPINION AND ORDER REGARDING WHICH DEBTOR
ENTITIES HAVE LIABILITY FOR CUSTOMER CONTRACT CLAIMS UNDER
THE TERMS OF USE AND THE ORDER (I) SETTING A
BRIEFING SCHEDULE AND (II) GRANTING RELATED RELIEF**

I, Daniel Frishberg, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I submit this declaration in support of the *Motion to Vacate the Opinion and Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief*.

2. I have personal knowledge of the facts stated herein, unless stated on information and belief, and if called upon to testify to those facts I could and would competently do so.

3. All (or substantially all) Celsius creditors are known creditors. I have personally reviewed portions of the Debtors' schedules, as filed on the docket, and can confirm that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

the company knows the identity of their creditors and that account holders are known to Celsius. I have also come to know this during my participation in these cases and through being a customer. For example, I know for a fact that Celsius requires customers to submit KYC, or, "know your customer" information that includes email and street address for its creditors.

4. I am not contractually an account holder at Celsius, as I closed my account with Celsius before the petition date. The Debtors purportedly did not follow my instructions, however. They purportedly failed to close my account and they failed to return my crypto before the petition date. I have so far been treated as, and according to the Debtors purportedly am, an account holder at Celsius (as defined below), at all times relevant to the above Motions and the Appeal. I am an unaccredited retail investor.

5. I am a United States Citizen and currently reside in the United States in the state of California.

6. I have actively been participating in these Chapter 11 Cases as an individual creditor since the beginning. I have been advocating for maximum returns to account holders, and Earn customers in particular, throughout.

7. The above-captioned debtors and debtors in possession (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Celsius") selected me along with two other claimants (Immanuel J. Herrmann and Rebecca Gallagher) to serve as bellwether claimants in these Chapter 11 Cases. It is my understanding that the purpose of choosing me to serve as one of the bellwether claimants was for me to represent complex and nuanced contract (and breach of contract) claims against the Debtors and/or Celsius, in part because I closed my account pre petition, which terminated most of my contractual

relationship with Celsius (if it was closed, if it was not closed, the contract was materially breached, and then voided by me), and in part because I would show up in court and argue my case (versus it being handled by default.)

8. Before the entry of this Order, I filed a timely proof of claim that included contract and non-contract claims against all Celsius debtor entities. The Debtors are also seeking to defeat my stated claim and classify me as a general Earn creditor. Therefore, my claim is materially impacted by the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**Order**").

9. My understanding of the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* (the "**Order**") is that, in addition to forcing an update to the Debtors' scheduling and a re-opening of the bar date, the Order seeks to prevent me from asserting claims under the contracts I signed against any Celsius debtor entities except Celsius Network LLC, and will ultimately require me to re-submit my claim to comply with the order (if it is not reversed or vacated.)

10. At the time of the purported migration from CNL to Celsius Network LLC ("LLC") in the summer of 2021, I did not have an account with Celsius. I do recall reading about the purported migration sometime in the late summer or early fall of 2021, and listening to some AMA's, in which it was stated that nothing material would change due to the migration.

11. I only learned that Celsius was illiquid on or around the date of The Pause (when they stopped withdrawals) and (in the instance of Celsius Network LLC "hopelessly") insolvent some time after the Petition Date.

12. Had I known that CNL was purportedly transferring all of its obligations but not all of the assets associated with those obligations to LLC, I would not have agreed or signed up for Celsius at all, let alone deposited my assets onto the platform.

13. Prior to the commencement of these Chapter 11 Cases, I had no knowledge that the "migration" was in response to a FCA investigation. Had I known that the FCA was investigating CNL and had accused it of operating an illegal investment scheme, I would have withdrawn from the Celsius platform (or depending on the timing of me finding out, not created an account).

14. Some time in the Late Summer or early Fall of 2021, I read the *Celsius Community Update* – June 23, 2021, Medium (Jun. 23, 2021), which can be found at: https://celsiusnetwork.medium.com/celsius-community-update-june-23-2021-a28fca899091

15. The above *Celsius Community Update* assured me that "for the avoidance of doubt, all Celsius services for all existing customers remain unchanged." I relied on this statement in my decision to use Celsius' services. Had I known that something material had changed, such as purportedly only having claims against a "hopelessly insolvent" entity, or even the fact that a material amount of assets were purportedly left with another entity during the migration that purportedly I did not have access to, I would have never deposited my assets to the Celsius platform or continued using their services.

16. I did not fully read the Terms of Use Version 8 until "The Pause" (the period before Celsius filed for Chapter 11.) I read an earlier version of the Terms of Use when I signed up (though I did not read it closely).

17. I am one of the most active creditors in these cases. If I had received service of the Briefing Schedule, I would have read it and filed a brief by December 28.

18. I didn't expressly see the Briefing Schedule which states that "Any interested parties shall brief the issue of 'which Debtors are liable to account holders under the global contract (the 'Terms of Use') between Celsius Network LLC and its account holders' (the 'Briefed Legal Issue')" as an express pre-condition of participation until May 10, 2023 – so, while I generally had a sense, some time in January, that I had "missed my chance" to participate and that it was "too late" to participate, I did not know until May 10 the full potential consequences of the Briefed Legal Litigation, nor that the Court had required me to be served.

19. Had I filed a brief and thereby participated in the Briefed Legal Issue process, I would have entered both the *Celsius Community Update* and various other statements, including AMA's, that I relied on in regards to the purported migration. I would have filed a declaration. I also would have briefed the question of whether that the purported liability limitation under the Terms of Use, even if it can be read the way Chief Judge Glenn read it, is unenforceable and/or void under New York law, and sought to defer consideration until there was a more full evidentiary record.

20. The lack of notice and the opportunity to be heard in express violation of Paragraph 9 of the Briefing Schedule prevented me from making these arguments and entering this evidence into the record to my significant prejudice.

21. There are additional arguments that I was unable to find via diligence (in part due to being refused discovery) at that time, but also arguments that came to light after the Examiner's report and in the UCC's recent Class Certification Motion. (Dkt. No. 2670.)

22. My understanding at the end of December was that the Court was not allowing "private party" discovery until the examiner's report was completed because of its decision with

respect to Victor Urberna de las Heras' 2004 examinations. I believe that, *even had I participated* in the Briefed Legal Issue, I would have been denied the type of comprehensive discovery that later became available for the UCC to use in the Class Claims process, which is the type of discovery that may have been required to avoid that the limitation of liability was void.

23. After conducting an investigation, I can confirm that I was never, to the best of my knowledge, served with the *Debtors' Motion Seeking Entry of an Order (I) Setting A Briefing Schedule and (II) Granting Related Relief* (Dkt. No. 1338), nor the final draft of the Briefing Schedule, nor the Order that specifically required service, in paragraph 9.

24. I was not aware that I was required to be served with the Briefing Schedule until May 10, 2023. I read it when Mr. Herrmann sent it to me.

25. On May 10, 2023, I investigated my email and confirmed that I was not served with the Briefing Scheduling via email as Paragraph 9 of Briefing Schedule required, and confirmed with Mr. Herrmann that the same occurred with him.

26. On May 11, 2023, Mr. Herrmann and I first wrote to the Debtors to inquire regarding service via email.

27. On May 15, 2023, I sent a formal letter, along with Mr. Herrmann, to the Debtors requesting this same information (also via e-mail). Mr. Herrmann and I heard back the same day via email, with the 2 following replies:

    a. From Christopher Koenig: "Thanks, Daniel--the affidavits of service speak for themselves, and the Debtors are not aware of any service outside of what is referenced in the affidavits of service."

    b. From Gabriela Zamfir Hensley, "There is one other affidavit [referencing the supplemental affidavit], but it does not change the substantive answer to the question."

28. Had I discovered that the briefing schedule required to be served on all customers including myself, before May 10, 2023, I would have investigated earlier and filed under Rule 59 / 9023 or otherwise sought to intervene in the litigation, and I would have even more carefully sought to preserve the issue on appeal (though I believe it is well preserved because of the way our questions on appeal are worded).

29. I was unable, through diligence, to read every sentence of the Briefing Schedule before May 10, because more than 2,800 documents (with some of them being 100s of pages long) have been filed in these cases.

30. I only read the entire Briefing Schedule, including Paragraph 9, because Mr. Herrmann and I already had concerns about whether this *should have* been served on myself and other customers under *Mullane,* but not because I had knowledge of the Briefing Order itself. Mr. Herrmann and I were wondering about a *likely* failure to serve us with something as we were preparing to write an appellate brief, but did not know about the Briefing Order.

31. Throughout all of my interactions with Celsius, I believed them to be a single entity. That is why in my small claims court lawsuit that I filed on July 11th, 2022, I only named Celsius Network LLC: as I assumed that Celsius was one company. If I knew that I purportedly held my assets with a "hopelessly insolvent" entity, and had I known about Celsius' corporate structure, I would have sued all Debtor entities instead. Later, when I learned about Celsius' corporate structure, I filed my Adversary Proceeding against all

Debtor entities. In short, the way I understood it, and the way it was presented to me, Celsius was one company, and operated as such. I had no way of knowing the corporate structure until after the petition date.

32. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 14th, 2023, in Santa Clara County, California
*/s/Daniel A. Frishberg*
Daniel Frishberg
*Pro Se*

## CERTIFICATE OF SERVICE

I certify that on Wednesday, June 14, 2023, a true and correct copy *Daniel A. Frishberg's Declaration in Support of the Motion to Vacate the Opinion and Order Regarding Which Debtors Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* were served upon counsel to the parties to the appeal Bankruptcy Court's Core/2002 Service list.

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg
*Pro Se*
June 14, 2023