**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
       sam.hershey@whitecase.com
       jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: mandolina@whitecase.com
       gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
LIMITED OBJECTION TO EUCLID FINANCIAL INSTITUTION UNDERWIRTERS,
LLC, A DULY AUTHORIZED AGENT OF CERTAIN UNDERWRITERS AT LLOYDS
OF LONDON AND REPUBLIC VANGUARD INSURANCE COMPANY FOR RELIEF
FROM THE AUTOMATIC STAY TO THE EXTENT APPLICABLE AND MOTION OF
SHLOMI DANIEL LEON AND ALIZA LANDES FOR RELIEF FROM THE**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

AMERICAS 124008781

**AUTOMATIC STAY, AS APPLICABLE, TO PERMIT PAYMENTS UNDER D & O INSURANCE AND JOINDER IN INSURERS' MOTION SEEKING THE SAME RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") files this limited objection to (1) *Euclid Financial Institution Underwriters, LLC, a Duly Authorized Agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company for Relief from the Automatic Stay to the Extent Applicable* [Docket No. 2585] (the "**Underwriters Motion**") and (2) *Motion of Shlomi Daniel Leon and Aliza Landes for Relief from the Automatic Stay, as Applicable, to Permit Payments Under D & O Insurance and Joinder in Insurers' Motion Seeking the Same Relief* [Docket No. 2760] (the "**Leon Motion**" and together, the "**Motions**") and respectfully states as follows:

**Preliminary Statement**

1. Euclid Financial Institution Underwriters, LLC, a duly authorized agent of certain underwriters at Lloyds of London, and Republic Vanguard Insurance Company (the "**Underwriters**") seek relief from the automatic stay to advance certain defense costs under a Directors & Officer's Liability and Corporate Securities Liability insurance policy issued by Underwriters to Debtor Celsius Network, Inc. *See* Mot., Ex. 1 (the "**Policy**").

2. The Policy potentially affords coverage up to a maximum aggregate limit of liability of $1,500,000 of coverage related to Directors & Officers and Corporate Securities Liabilities, inclusive of Defense Costs. *See* Underwriters Motion at 47; ¶ 6. The Underwriters have confirmed to the Committee and Debtors that the claims made to date likely exceed the $1,500,000 policy. *See* Policy § IV.D-E.[2]

---

[2] The Committee understands that the Underwriters have not made any coverage decisions at this time.

3.  This Court recently granted relief from the automatic stay in *In re SVB Financial Group* with respect to $200 million of D&O coverage. Though the circumstances in that case are different than here, the Policy at issue similarly contains a priority of payment provision that provides that in the event aggregate payment obligations exceed the remaining available coverage, payment must be first made on any Side A claim, which covers losses of individual directors and officers, before it may be used to satisfy claims against the Debtors. *See* D&O Coverage Section X. There, the Court found that priority of payment provision provided the primary support to lift the automatic stay. In light of that decision, the Committee does not wholly oppose relief from the automatic stay but believes that such relief should be subject to certain conditions.

4.  First, in *SVB Financial Group*, this Court imposed reporting requirements and required court approval before paying out a settlement using insurance proceeds. *In re SVB Fin. Grp.*, No. 23-10367(MG), 2023 Bankr. LEXIS 1339 (Bankr. S.D.N.Y. May 22, 2023). Similar oversight conditions are warranted here.

5.  Second, because the requests for reimbursement under the policy exceed the total amount of such policy, and the Debtors have requested authority to potentially use estate resources to pay certain cooperating witnesses, the total amount distributed to Insured's should be apportioned pro rata to avoid the scenario where one individual is able to exhaust the entire policy to the detriment of the Estate.

6.  Finally, the Policy at issue here provides an exclusion for any loss arising out of any "deliberate criminal or fraudulent act. . . if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act . . . was committed." Policy, D&O Coverage Section III.A. The Policy also excludes any loss in connection with any claims arising out of the ICO of the CEL Token. Policy, Endorsement No. 7.

Thus, the Underwriters may advance defense costs that are ultimately excluded from coverage and will then need to recover such payments.

7. Certain former directors and officers of the Debtors, such as Shlomi Daniel Leon and Aliza Landes, seek relief from the stay, but may argue that they are not subject to the jurisdiction of this Court. Upon information and belief, Leon currently resides in Israel, and may argue that he is therefore outside of the jurisdiction of this Court. Leon entered a "limited appearance" purporting to appear solely for the purposes of filing the Leon Motion and joining in the Underwriters Motion. Leon Mot. at 1-2. Leon should not be able to seek relief from this Court, use proceeds of the D&O Policy to fund his defense, and then hide in Israel and avoid the obligation to repay such proceeds if the litigation does not go his way and he is found liable for conduct that is excluded from the Policy coverage. Any relief from stay and any payment to an Insured should be conditioned on such Insured submitting to the jurisdiction of this Court so that the Committee can enforce the terms of the policy if appropriate.

**Factual Background**

8. On May 3, 2023, Euclid Financial Institution Underwriters, LLC, a duly authorized agent of certain underwriters at Lloyds of London and Republic Vanguard Insurance Company (collectively the "**Underwriters**") moved for relief from the automatic stay, to the extent applicable, to modify the stay solely to the extent necessary to allow the Underwriters to advance and/or make payments under the Policy for Defense Costs incurred by the Individual Insureds.

9. The Directors & Officers and Corporate Securities Liability Coverage Section (the "**D&O Coverage Section**") of the Policy contains four types of coverage: Coverage A: Individual Insurance Coverage; Coverage B: Company Reimbursement Coverage; Coverage C: Company Coverage; Coverage D: Derivative Demand Investigation Costs Coverage. Policy, D&O Coverage Section at I.

10. Section X of the D&O Coverage Section of the Policy includes "Order of Payments" provision, which provides, in relevant part, as follows:

> **X. Order of Payments**
>
> In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available Limits of Liability applicable to this **Coverage Section**, (including by virtue of the depletion of the Policy Aggregate Limit of Liability), then the **Insurer** shall:
>
> A. first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**;
> B. then pay such **Loss** for which coverage is provided under Coverage B of this **Coverage Section**; and
> C. then pay such other **Loss** for which coverage is provided under this policy.
>
> Upon the written request of the **Named Insured**, the **Insurer** shall either pay or withhold payment for **Loss** otherwise payable under Coverages B, C, or D. In the event that the **Insurer** withholds payment as requested by the **Named Insured**, then the **Insurer** shall at any time in the future, at the request of the **Named Insured**, release such **Loss** payment to a **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of any **Claim** under Coverage A of this **Coverage Section**. The **Insurer**'s liability with respect to any payments of **Loss** withheld shall not be increased, and shall not include any interest, as a result of such withholding.

11. The Policy provides an exclusion for any loss arising out of any "deliberate criminal or fraudulent act. . . if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act . . . was committed." Policy III.A. It also provides an exclusion for claims relating to the initial coin offering of the CEL Token.

12. According to the Underwriters, since May 6, 2022, they have received numerous notices seeking coverage under the Policy on behalf of the directors, officers and certain employees of the Debtors, including multiple requests from Individual Insureds requesting the payment of Defense Costs incurred in connection with investigations, lawsuits and arbitration proceedings. Underwriters Mot. ¶ 17.

13. On June 7, 2023, Shlomi Daniel Leon and Aliza Landes filed a "limited appearance solely for the purpose of" filing the Leon Motion and joining the Underwriters Motion. Leon and Landes purport to be insured under the Policy and allege that they have submitted claims for

reimbursement of their defense costs arising out of matters they allege are covered by the Policy. Leon Mot. ¶ 1.

## Limited Objection

14. While the Underwriters do not seek a finding by the Court that the proceeds of the Policy are or are not property of the Debtors' estates, because this is a "wasting policy," meaning that any amounts advanced to the directors and officers on account of their defense costs will directly reduce the amount of coverages available to the Debtors' estate under the Policy, such proceeds are property of the estate. *See In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 191 (Bankr. S.D.N.Y. 2012) (noting that other "courts have held that 'the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'").

15. Here, although the $1,500,000 of coverage may be initially exhausted by the directors and officers under Coverage A, should a final, non-appealable adjudication in any underlying proceeding establishes that a deliberate criminal or deliberate fraudulent act was committed, the Underwriters may recuperate the fees advanced to the directors and officers, thereby freeing coverage available to the Debtors. As such, the policy is property of the estate and the *Sonnax* factors apply in determining whether there is "cause" to modify the automatic stay. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re New York Medical Grp., PC*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

16. In *In re SVB Financial Group*, this Court recently granted relief from the automatic stay to certain current and former directors of a debtor to permit insurers who issued certain directors' and officers' liability insurance policies to make payments, including the advancement of defense costs, in accordance with those policies. 2023 Bankr. LEXIS 1339, at *24. The "ABC Policies" at issue in *In re SVB Financial Group*, provided for Side A Coverage, which provided

"protection directly to directors and officers where the Debtor ha[d] not indemnified, or will not indemnify, the directors and/or officers," Side B Coverage, which "generally allow[ed] for the [d]ebtor to receive reimbursement when it indemnifies a director or officer for costs associated with covered claims or governmental investigations", and Side C Coverage which "generally applie[d] to any loss suffered by the [d]ebtor from securities claims made against it in its own right." *Id.* at *7. The policies at issue also included a "Priority of Payments" provision. *Id.*

17.    The Court found that it "need not decide whether the ABC Policies are property of the estate, because even if they are property of the estate, there is cause to lift the stay." *Id.* at *18. The Court evaluated the *Sonnax* Factors, noting that "[c]ourts have routinely found that where such priority of payments provisions are present, the insureds are entitled to access the proceeds, notwithstanding the fact that the debtor also has an interest in proceeds of the policy." *Id.* at *20. However, the Court adopted the Committee's suggested oversight conditions that the insurers provide quarterly reporting of fees and expenses and requirement that the insurers get court approval before paying out a settlement using insurance proceeds. *Id.* at *25.

18.    Similarly here, the Court need not decide whether the Policy is property of the estate. *See In re SVB Fin. Grp.*, 2023 Bankr. LEXIS 1339, at *17 ("This Court has previously held, in the context of directors and officers seeking to access insurance policies that are shared with a debtor, that if there is cause to lift the stay, the Court need not determine whether such shared policies are property of the estate."). In light of this Court's ruling in *In re SVB Financial Group*, and the Order of Payments provision in the instant Policy, the Committee does not oppose the modification of the automatic stay for the limited purpose of allowing Underwriters to advance defense costs to Individual Insureds solely under this Policy, subject to certain protections for the benefit of the estate. The Committee submits that such protections are not only reasonable, but

necessary where, as here, there have been credible allegations of fraud with respect to the Debtors, including by parties who are likely to seek coverage under the applicable insurance.

### A. This Court Should Impose Oversight Conditions on the Underwriters.

19. As this Court found in *In re SVB Financial Group*, even where "cause" exists to modify the automatic stay, certain oversight conditions, such as reporting requirements and settlement approval, are reasonable. *Id.* at *25-27. Underwriters' proposed order provides that it "shall provide written quarterly updates on the amount of Defense Costs advanced on behalf of the Individual Insureds under the Policy to the U.S. Trustee until the Limits of Liability of the Policy are fully eroded." *Proposed Order* at ¶ 3. The Committee respectfully requests that such written quarterly updates include on a per individual basis, (1) the name of the Individual Insured who received advances and/or payments; (2) the nature of the claim(s); (3) the dollar amount of the claim(s) submitted and the amount actually advanced and/or paid; (4) the identity of counsel representing the Individual Insured (if applicable); (5) confirmation that the Individual Insured receiving the advances and/or payments under the Policy has consented to the jurisdiction of this Court with respect to the Policy (including coverage exclusions and payment clawbacks thereunder); and (6) the amount of liability coverage remaining under the Policy and be provided not only to the U.S. Trustee, but also the Debtors and the Committee.

20. In addition, the Committee respectfully requests that this Court require the Underwriters to seek further relief from this Court before utilizing policy proceeds to pay any settlement of claims. This Court imposed such requirement in *In re SVB Financial Group*. That requirement is reasonable here, as well. *See id.* at *25-27.

21. The Committee also respectfully requests that this Court direct a more equitable distribution for the payment of defense costs than on a first-come first-served basis. The

Committee requests that the Court require the Underwriters to evaluate all requests for defense costs submitted by individual insureds to the Underwriters prior to June 15, 2023 before approving and paying any defense costs. If the aggregate amount of requested defense costs is less than the Policy's limits of liability (i.e., $1,500,000), then the Underwriters shall be permitted to approve and pay the defense costs in its sole discretion, subject to the requirements set forth in the Policy and this Court's order. If, however, the aggregate amount of requested defense costs is equal to or greater than the Policy's limits of liability, then the Underwriters shall only be permitted to approve and pay the defense costs in an amount equal to the lesser of (a) the amount of defense costs requested as of the date of entry of this Court's order and (b) the pro rata amount of the Policy's limits of liability such that no one individual insured is entitled to receive a greater percentage of the Policy's limits of liability (e.g., if there are 10 Individual Insureds entitled to payment under the Policy, each shall be entitled of up to $150,000); provided that if after all approved defense costs are paid in accordance with this Court's order, and the limits of liability have not been exhausted, then the Underwriters shall be permitted to equally allocate the remaining amounts to any individual insured with outstanding approved defense costs. Such procedures will more equitably distribute Policy proceeds among the individual insureds.

**B. This Court Should Require Parties Benefitting from Relief from the Stay Submit to the Jurisdiction of this Court.**

22. Parties that benefit from this Court granting relief from the automatic stay may have costs advanced to them that would ultimately be recoverable by the Underwriters. The Policy provides an exclusion for any loss arising out of any "deliberate criminal or fraudulent act... if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act... was committed." Policy III.A. It also provides an exclusion for claims relating to the initial coin offering of the CEL Token. Policy, Endorsement

No. 7. Thus, the Underwriters may advance defense costs that are ultimately excluded from coverage and will then need to recuperate such payments.

23. Although the Policy proceeds may initially be exhausted under Coverage A by the directors and officers, if a final, non-appealable adjudication in any underlying proceeding establishes that a deliberate criminal or deliberate fraudulent act was committed—a strong possibility given the facts of these cases—Policy proceeds may be available to the Debtors under Coverage B or C. Policy, D&O Coverage Section I.

24. The parties from whom Underwriters may ultimately need to recuperate advanced defense costs, however, may be outside the jurisdiction of this Court and the United States. For example, Mr. Leon has come before this Court seeking relief from the automatic stay for the advancement of defense funds, yet has purported to enter a "limited appearance" solely for the purpose of filing the Leon Motion and joining the Underwriters Motion. Upon information and belief, Mr. Leon resides in Israel and may contend that he is outside of the jurisdiction of this Court and the United States.

25. This Court should require that any party benefitting from relief from the automatic stay submit to the jurisdiction of this Court by filing a statement to that effect on the docket of these Chapter 11 Cases as a precondition to receiving insurance proceeds.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court impose certain oversight conditions on the Underwriters and require any party benefiting from relief from the automatic stay consent to the jurisdiction of this Court, and grant such other and further relief as may be just and proper.

| | |
|---|---|
| Dated:  June 21, 2023<br>           New York, New York | Respectfully submitted,<br><br>*/s/ Aaron E. Colodny*<br>**WHITE & CASE LLP**<br>David M. Turetsky<br>Samuel P. Hershey<br>Joshua Weedman<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile:  (212) 354-8113<br>Email: david.turetsky@whitecase.com<br>        sam.hershey@whitecase.com<br>        jweedman@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile:  (312) 881-5450<br>Email:  mandolina@whitecase.com<br>        gregory.pesce@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Keith H. Wofford<br>Southeast Financial Center<br>200 South Biscayne Blvd., Suite 4900<br>Miami, Florida 33131<br>Telephone: (305) 371-2700<br>Facsimile:  (305) 358-5744<br>Email: kwofford@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Aaron E. Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Facsimile:  (213) 452-2329<br>Email:  aaron.colodny@whitecase.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |