Hearing Date: June 28, 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: June 21, 2023, at 4:00 p.m. (prevailing Eastern Time)

| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone: (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile: (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' LIMITED OBJECTION AND RESERVATION
OF RIGHTS REGARDING EUCLID FINANCIAL INSTITUTION
UNDERWRITERS, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors," together with their non-Debtor affiliates, the "Company") file this limited objection and reservation of rights (this "Limited Objection") in response to the *Motion of Euclid Financial Institution Underwriters, LLC, a Duly Authorized Agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company for Relief from the Automatic Stay to the Extent Applicable* [Docket No. 2585] (the "Euclid Motion") filed by Euclid Financial Institution

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Underwriters, LLC ("Euclid" or the "Agent") and the *Motion of Shlomi Daniel Leon and Aliza Landes for Relief from the Automatic Stay, as Applicable, to Permit Payments under D & O Insurance and Joinder in Insurers' Motion Seeking the Same Relief* [Docket No. 2760] (the "Joinder") filed by Shlomi Daniel Leon and Aliza Landes.  The Debtors respectfully state as follows:[2]

**Preliminary Statement**

1.  Euclid filed the Euclid Motion seeking relief from the automatic stay so that it could evaluate and potentially approve payments for Defense Costs in connection with requests for coverage submitted by certain of the Debtors' current and former directors, officers, and employees under the Euclid Policy issued by the Underwriters to Celsius Network Inc.  The Euclid Policy is a "wasting" policy whereby any amounts advanced under the Euclid Policy directly reduce the amount of coverage available to the Debtors or other Individual Insureds.  After the Euclid Motion was filed, on June 7, 2023, two of the Debtors' former executives, Shlomi Daniel Leon and Aliza Landes, filed the Joinder.

2.  The Euclid Policy provides $1,500,000 of coverage for former and current directors and officers and employees of the Company, and for the Company itself.  Notably, the Euclid Policy includes a priority payment provision providing that if Losses incurred and covered under the Euclid Policy, in the aggregate, exceed the remaining limits of liability, Individual Insureds are entitled to payment under the Policy before payments are made to the Company.[3]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Euclid Motion.

[3] The Euclid Policy, and the Debtors' other D&O insurance policies (the "Other Insurance Policies"), are attached hereto as **Exhibit A**.

2

3.     As described in greater detail below and in the Euclid Motion, the Euclid Policy is the primary or "base" D&O policy for the Company. In relevant part, it contains three forms of coverage: "Coverage A: Individual Insurance Coverage, coverage is provided for a covered Loss incurred by Individual Insureds arising from Claims made against them if such Loss is not indemnified by the Company" ("Side A"); "Coverage B: Company Reimbursement Coverage, coverage is provided for a covered Loss by the Company to the extent it indemnifies the Individual Insureds for covered Loss in connection with Claims made against Individual Insureds" ("Side B"); and "Coverage C: Company Coverage, provides coverage for the Company for covered Loss resulting from Claims for covered Loss made against it" ("Side C"). *See* Euclid Motion ¶ 7. Pursuant to the priority payment provision, Side A Losses are paid before Side B or Side C Losses in the event Losses, in the aggregate, exceed the remaining limits of liability.

4.     Whether the proceeds of the Euclid Policy are property of the Debtors' estate is a fact specific question, and even if such proceeds are property of the Debtors' estate, courts frequently find that cause exists to lift the stay to pay expenses of covered individuals when—like here—the policy prioritizes payment of claims of Individual Insureds over claims of the Company. As such, the Debtors believe that under the facts and circumstances of these chapter 11 cases, it is appropriate for Euclid to administer the proceeds of the Euclid Policy subject to certain reporting requirements and fair allocation of the proceeds, all as further set forth herein. The Debtors are currently engaged in discussions with Euclid with the goal of reaching a consensual resolution prior to the hearing on the Euclid Motion. To be clear, the Debtors' proposals set forth in this Objection and any consensual resolution reached with Euclid apply only to the Euclid Policy. The Debtors reserve all rights with respect to any payments under the Debtors' other insurance policies

and do not consent to any relief from the automatic stay with respect to any of the Other Insurance Policies or for any claims asserted in the Joinder.

5.  For these reasons, and as further set forth herein, the Debtors object to the relief requested in the Euclid Motion on a limited basis and propose certain modifications as set forth in this Objection.

## D&O Insurance Overview

6.  Through the Euclid Motion, Euclid seeks relief from the automatic stay (to the extent applicable) to distribute the proceeds under a certain Directors & Officer's Liability and Corporate Securities Liability Insurance Policy, No. EFI1203088-00, issued by the Underwriters to Celsius Network, Inc. (the "Euclid Policy") for certain Defense Costs (as defined in the Euclid Policy) incurred by the Debtors' current and former directors, officers, and employees (the "Individual Insureds").

7.  While the Euclid Motion only applies to the Euclid Policy, the below table provides an overview of the Debtor's directors' and officers' liability ("D&O") insurance policies applicable to the pending claims, including coverage types (*e.g.*, Side A), policy limits of liability, retention amounts, and connection to any excess policies.

4

| Celsius D&O Program Overview | | | |
|---|---|---|---|
| **Coverage Type** | **Policy Limits (Total: $30 million)** | **Policy Period** | **Retention Details** |
| Sides A/B/C coverage Primary Carrier: Euclid | $7.5 million | May 30, 2021 – June 15, 2023 | As is customary, Celsius's Side A insurance has no self-insured retention.<br><br>The Sides B and C coverage, however, have a $2.5 million retention. |
| Side A (non-indemnifiable loss) coverage for all directors and officers | $12.5 million.<br>• $6.25 million provides coverage for prior acts<br>• $6.25 million does not provide coverage for prior acts | July 8, 2022 – July 12, 2029 (i.e., a one-year policy period and a six-year tail period) | |
| Side A (non-indemnifiable loss) coverage for Alan Carr and David Barse | $10 million | July 8, 2022 – July 8, 2029 (i.e., a one-year policy period and a six-year tail period) | |

8.      The Euclid Policy contains three provisions key to these chapter 11 cases and the Debtors' and Individual Insureds' interests in the Euclid Policy and its proceeds, all of which are regularly included in D&O policies: (a) a priority of payments provision (the "Priority Provision"); and (b) a coverage exclusion provision (the "Exclusion Provision"); and (c) an advancement provision (the "Advancement Provision").

9.      Pursuant to the Priority Provision, in the event that Losses, in the aggregate, exceed the remaining limits of liability, Individual Insureds are entitled to payment for non-indemnifiable loss under Side A before payments are made under the Euclid Policy's Side B or Side C

5

coverages.[4] Specifically, the Euclid Policy provides $1,500,000 of aggregate coverage (making it a "wasting" policy), subject to no retention for Side A coverage and a retention of $2,500,000 per claim for Side B and C coverage. The Euclid Policy's Priority Provision provides that:

> "[i]n the event of Loss arising from any Claim for which payment is due under the provisions of [the] Coverage Section but for which Loss, in the aggregate, exceeds the remaining Limits of Liability…then the Insurer shall: A. first pay such Loss for which coverage is provided under Coverage A of this Coverage Section." Directors & Officers and Corporate Securities Liability Coverage Section, § X, at 11–12.

10. Pursuant to the Exclusion Provision, no coverage is available under the Euclid Policy in the event of an adverse final, non-appealable adjudication establishing that an Individual Insured committed a deliberate criminal act, deliberate fraudulent act, or willful violation of any statute, rule or law (such claims, "Excluded Claims"). The Exclusion Provision provides, in relevant part, that:

> "[t]he Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured . . . alleging, arising out of, based upon or attributable to . . . . committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed." Directors & Officers and Corporate Securities Liability Coverage Section, § III, at 6.

The Exclusion Provision is important in light of certain allegations made against a number of the Debtors' former directors, officers, and employees currently seeking payment of Defense Costs.

11. Finally, pursuant to the Advancement Provision, Euclid is required to advance Defense Costs in excess of the Policy's self-insured retention in connection with a covered Claim,

---

[4] For the avoidance of doubt, the Debtors do not take a position at this time as to whether the Priority Provision has been triggered.

6

but Euclid may be entitled to repayment of those advanced amounts in the event it is ultimately determined that such losses are not covered under the Euclid Policy. The Advancement Provision provides, in relevant part, that:

> "[t]he Insurer shall advance Defense Costs in excess of the applicable Retention on behalf of the Insured prior to final disposition of the Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by each and every Insured, severally according to their respective interests, in the event and to the extent that any such Insured shall not be entitled under the Terms and Conditions of this Coverage Section to payment of such Loss." Directors & Officers and Corporate Securities Liability Coverage Section, § VI.B.

12. Because of the Priority Provision, the Exclusion Provision, and the Advancement Provision, the Debtors submit that it is necessary to preserve all parties' rights under the Euclid Policy and the Other Insurance Policies before Euclid advances any Defense Costs to any Individual Insureds.

## Limited Objection

13. Section 541 of title 11 of the United States Code (the "Bankruptcy Code") defines property of a debtor's estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "It is well-settled that a debtor's liability insurance is considered property of the estate." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012). Whether D&O policy proceeds are also property of a debtor's estate, however, is dependent on the specific policies at issue and the factual circumstances. *See In re SVB Financial Group*, 2023 WL 3578447 at *1 (Bankr. S.D.N.Y. May 22, 2023).

14. Courts typically find that "[w]hen an insurance policy only provides direct coverage to a debtor . . . the proceeds are property of the estate." *In re MF Glob. Holdings Ltd.*, 469 B.R. at 190 (internal citations omitted). Conversely, where a policy covers only the directors and

7

officers, "courts have generally held that proceeds are not property of the estate." *Id.* (internal citations omitted). Generally, in instances where policies provide direct coverage to the debtors as well as to directors and officers, "courts have held that 'the proceeds will be the property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'" *Id.* at 191–92 (Bankr. S.D.N.Y. 2012) (internal citation omitted); *In re Downey Fin. Corp.*, 428 B.R. 595, 605 (Bankr. D. Del. 2010) ("when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.") (citing *In re Allied Digital Techs.*, Corp., 306 B.R. 505, 512 (Bankr. D. Del. 2004)).

15.   Here, the Euclid Policy provides direct coverage to both the Debtors and the Debtors' current and former directors, officers, and employees. Specifically, the Debtors have a direct right to coverage under the Euclid Policy's Side B and Side C coverages. The directors, officers, and employees have a direct right to coverage under the Euclid Policy's Side A coverage. Moreover, because the Euclid Policy is a "wasting" policy, any proceeds provided under Side A directly reduces the coverage available to the Debtors under Side B and Side C. Thus, to the extent the Euclid Policy's proceeds are property of the Debtors' estates, the automatic stay would prevent Euclid from making payments under Side A of the Euclid Policy absent relief from the Court. *See* 11 U.S.C. § 362

16.   The Debtors recognize that circumstances may exist that warrant lifting the automatic stay. Section 362(d)(1) of the Bankruptcy Code provides, in part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause." 11 U.S.C. § 362(d). On multiple occasions,

this Court has addressed whether "cause" exists to lift the stay without resolving the question of whether D&O policy proceeds are property of a debtor's estate. *See In re MF Glob. Holdings Ltd.*, 469 B.R. at 187; *In re SVB Financial Group*, 2023 WL 3578447 at *18 (Bankr. S.D.N.Y. May 22, 2023).

17. In *SVB Financial*, this Court noted that courts in the Second Circuit analyze twelve factors (the "Sonnax Factors") when evaluating whether cause exists to lift the stay. *In re SVB Financial Group*, 2023 WL 3578447 at *16 (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). There, certain directors and officers named in securities class actions or involved in certain investigations sought relief from the stay to access coverage under side A of the company's D&O insurance policies. This Court authorized lifting the stay to pay for the D&Os defense costs subject to certain conditions, which included quarterly reporting requirements and court approval prior to paying out any settlement. In fashioning this relief, the Court focused its analysis on the second and twelfth Sonnax Factors (interference with bankruptcy case, and the impact of the stay on the parties and the balance of harms, respectively), noting that because the priority of payments provision already provided for payment of directors and officers before the company, no additional harm would befall the company if directors and officers were paid first under the wasting policy. *In re SVB Financial Group*, 2023 WL 3578447 at *25–27.

18. Following the filing of the Euclid Motion, the Debtors, the official committee of unsecured creditors (the "Committee"), and Euclid engaged in discussions and are currently working collaboratively on a revised proposed order (the "Revised Order"), to be filed prior to the hearing on the Euclid Motion, to address a number of the Debtors' and the Committee's concerns with the relief requested in the Euclid Motion, as further explained in this Objection. The revisions that the Debtors are requesting to the currently proposed order align with this Court's findings in

9

*SVB Financial* and the Debtors believe are appropriate here. Importantly, the Debtors are not seeking to impose a "soft cap" or otherwise limit Euclid from evaluating requests for Defense Costs. Rather, the Debtors are seeking to provide all parties in interest with transparency in how the proceeds are being distributed and to ensure that the proceeds are distributed as fairly as possible in light of the multiple claims for coverage that have been submitted.

19.  *First*, the Debtors are requesting that the Revised Order include certain additional reporting requirements and require this Court's approval should Euclid seek to enter into a settlement with any of the Individual Insureds. In addition, the Debtors are requesting that the Revised Order provide that the Underwriters be required to submit written quarterly updates on the amount of Defense Costs advanced and/or paid on behalf of the Individual Insureds. These reports shall include, among other things, the names of the Individual Insureds receiving payments, the nature of each such Individual Insureds' claims, the amounts paid, and the amount of liability coverage remaining. Finally, the Debtors have requested that the Revised Order also require Euclid or the Underwriters to seek further order from the Court prior to paying any non-Defense Costs (*e.g.*, settlement payments). Both of these are consistent with the relief requested and granted in *SVB Financial*.

20.  *Second*, the Debtors have requested that the Revised Order also require Individual Insureds to explicitly consent to the jurisdiction of this Court before any payment of proceeds is made under the Euclid Policy to such Individual Insureds. The Debtors believe that such a request is necessary and appropriate to preserve all parties' rights to enforce the Advancement Provision. This is particularly true given that certain individuals seeking payment of Defense Costs do not live in the United States—as demonstrated by the Joinder filed by Mr. Leon and Ms. Landes. Failure to effectively enforce the Advancement Provision's repayment obligations not only harms

10

the other Individual Insureds and the Debtors' estates, but also may indirectly harm the Debtors' account holders. The Debtors' proposed chapter 11 plan of reorganization contemplates a Litigation Administrator to pursue certain causes of action, including actions against certain of the Debtors' former directors and officers, for the benefit of the Debtors' account holders.[5] The Debtors respectfully submit that if an Individual Insured warrants the benefit of relief from the automatic stay to receive reimbursement from the Euclid Policy, it is fair and appropriate for that individual to have to consent to the jurisdiction of this Court for all purposes—including any potential claims under the Advancement Provision.

21.     *Third*, the Debtors have requested that the Revised Order includes a coverage allocation scheme for equal access to the Euclid Policy's proceeds to avoid a "run on the bank," whereby a few parties rush to exhaust the Euclid Policy's limited ($1,500,000) coverage to the exclusion of other Individual Insureds. Moreover, given the nature of some of the claims submitted to Euclid, the Debtors believe that there may be a higher than usual probability for the need to clawback some of the Euclid Policy proceeds pursuant to the Advancement Provision. Accordingly, the Debtors believe that the Revised Order should require Euclid to evaluate all requests for coverage of Defense Costs submitted by Individual Insureds prior to June 15, 2023 before approving and paying any Defense Costs to any Individual Insured. To the extent the Claims for Defense Costs incurred by the Individual Insureds through August 31, 2023 (and submitted by September 30, 2023), exceed the Euclid Policy's Limits of Liability (*i.e.*, $1,500,000), then coverage should be apportioned to the Individual Insureds on a pro rata basis. Specifically, to the extent the aggregate amount of approved Defense Costs incurred through

---

[5] The Debtors filed the *Revised Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* at Docket No. 2807.

11

August 31, 2023 (and submitted before September 30, 2023) on account of covered Losses exceeds the Policy's Limits of Liability, Euclid is only permitted to pay the Defense Costs of any Individual Insured in an amount equal to the lesser of (a) the amount of Defense Costs requested through and including August 31, 2023, and (b) the pro rata amount of the Policy's Limits of Liability, such that no one Individual Insured is entitled to receive a greater percentage of the Policy's Limits of Liability than any other Individual Insured. If, after the initial payments, the Euclid Policy's coverage has not been fully exhausted, Euclid is authorized (but not required) to allocate the remaining coverage to the Individual Insureds with outstanding unpaid approved Defense Costs incurred through August 31, 2023 (and submitted before September 30, 2023).

22. For example, if ten Individual Insureds submit requests for Defense Costs in an aggregate amount of $2 million, Euclid is authorized to approve and pay the Defense Costs of any such Insured Individual up to a maximum of $150,000 (one-tenth of the Policy's $1,500,000 aggregate limit). In this scenario, an individual with approved Defense Costs of $210,000 ("Individual A") would only be entitled to receive up to $150,000. An individual with Defense Costs of $90,000 would be entitled to the full amount requested (*i.e.*, $90,000) but not more. If after all ten Individual Insureds (or fewer if Euclid determines that not all that submitted requests are eligible to receive the proceeds) receive payments for Defense Costs pursuant to this arrangement the Euclid Policy's coverage has not been fully exhausted, Euclid can allocate the remaining coverage to any Individual Insureds with outstanding unpaid approved Defense Costs. Therefore, to the extent the other nine Individual Insureds who submitted Claims for Defense Costs incurred through August 31, 2023 (and submitted before September 30, 2023) received complete payment for Defense Costs, Euclid would be authorized to provide the remaining proceeds to Individual A.

23. The Debtors believe that the relief requested in this Objection is appropriate under the circumstances. As noted, this Court has fashioned similar relief in a number of other cases. In *SVB Financial*, this Court imposed reporting requirements and required separate court approval before paying out any settlement. Similarly, in *MF Global*, this Court approved reporting requirements and initially imposed a soft cap on D&O and E&O payments. *In re MF Glob. Holdings Ltd.*, 469 B.R. at 197; *In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 207 (Bankr. S.D.N.Y. 2014). The Debtors believe that the procedures requested in this Objection will establish a process that reasonably balances the interests of all Individual Insureds seeking coverage, provides an equitable distribution of funds consistent with the terms of the Euclid Policy, and reduces the likelihood that a substantial portion of the policy is wasted away at the expense of other Individual Insureds. The Debtors are continuing to discuss the above points with Euclid with the hopes of reaching a consensus on as many points as possible in advance of the June 28, 2023, hearing.

## Reservation of Rights

24. Notwithstanding the Debtors' conditional agreement to allow Euclid to administer Side A of the Euclid Policy if the procedures set forth in this Objection are adopted, this Objection is not and should not be construed as an admission that the proceeds of the Euclid Policy or the proceeds of the Other Insurance Policies are not property of the Debtors' estates. The Debtors reserve all rights with respect to the Euclid Policy, the Other Insurance Policies, and their respective proceeds being property of the Debtors' estate, and nothing related to this Objection shall be a waiver of such claim.

25. This Objection and any corresponding agreement reached with Euclid are limited *solely* to Euclid and Side A coverage under the Euclid Policy. The Debtors expressly reserve all rights with respect to Side B and/or Side C coverages under the Euclid Policy and any and all

Other Insurance Policies, and nothing herein shall be construed as consent to the payment of claims under Side B and/or Side C coverages or the Other Insurance Policies. Further, nothing herein shall constitute an approval of the claims contained in the Joinder and the payment of any such Defense Costs under the Euclid Policy to Shlomi Daniel Leon and Aliza Landes shall be determined by Euclid consistent with the terms of the Euclid Policy as may be revised by the procedures set forth in this Objection. Nothing contained herein is intended or should be construed as a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

[*Remainder of Page Intentionally Left Blank*]

| | |
|---|---|
| New York, New York<br>Dated: June 21, 2023 | /s/ Joshua A. Sussberg<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:             joshua.sussberg@kirkland.com<br><br>- and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:             patrick.nash@kirkland.com<br>                         ross.kwasteniet@kirkland.com<br>                         chris.koenig@kirkland.com<br>                         dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

# Exhibit A

## D&O Insurance Policies

[*Intentionally Omitted*]