**Víctor Ubierna de las Heras**
**Email: victorub@protonmail.com**
**Telephone +34 699760721**

Pro se Creditor

**UNITED STATES BANKRUPTCY COURTSOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| | **Related documents: 2585, 2760** |

**VÍCTOR UBIERNA DE LAS HERAS' OMNIBUS OBJECTION TO MOTION OF EUCLID FINANCIAL INSTITUTION UNDERWRITERS, LLC, A DULY AUTHORIZED AGENT OF CERTAIN UNDERWRITERS AT LLOYDS OF LONDON AND REPUBLIC VANGUARD INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT APPLICABLE AND TO MOTION OF SHLOMI DANIEL LEON AND ALIZA LANDES FOR RELIEF FROM THE AUTOMATIC STAY, AS APPLICABLE, TO PERMIT PAYMENTS UNDER D & O INSURANCE AND JOINDER IN INSURERS' MOTION SEEKING THE SAME RELIEF**

Víctor Ubierna de las Heras, *pro se* creditor, states as follows in support of this

Omnibus Objection to the *Motion Of Euclid Financial Institution Underwriters, Llc, A*

*Duly Authorized Agent Of Certain Underwriters At Lloyds Of London And Republic*

*Vanguard Insurance Company For Relief From The Automatic Stay To The Extent*

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030

*Applicable*, filed with docket number 2585 *And To Motion Of Shlomi Daniel Leon And Aliza Landes For Relief From The Automatic Stay, As Applicable, To Permit Payments Under D & O Insurance And Joinder In Insurers' Motion Seeking The Same Relief*, filed with docket number 2760:

**OBJECTION**

1. The Examiner's report made very clear what was behind Celsius fall. Failure to comply with any standard, lies by founders on AMAs and social media, misrepresentations, manipulation of CEL price and a long list of both negligence and incompetence. Furthermore, while customers still have their savings locked some of the founders withdrew their money at the same time that they were lying customers about Celsius condition. S. Daniel Leon, also a founder of Celsius, sold at least 2.6 million CEL tokens for at least $9.74 million. At the same time, Mashinsky was saying: Twitter (December 9, 2021) ("*All @CelsiusNetwork founders have made purchases of #CEL and are not sellers of the token @sdanielleon and @NukeGold believe in the value of CEL and still hold the vast majority of their tokens 4 years after launch other projects already dumped on their community in first year*"). Thanks to the Examiner's Report we now know that "*Mr. Holert also recommended that Celsius develop written policies and procedures to govern risk management, which he offered to draft.642 But Mr. Leon directed Mr. Holert to stand down and said someone else would draft the policy. But nothing was drafted (…)"* Page 183 Examiner's Report. Furthermore, On February 10, 2020, Aliza Landes, then Vice President of Retail Lending, described taking a retail loan as "you're not going into debt, you're just borrowing against something you own.

We now know that the Court has found that coins are the property of Celsius. Furthermore, the Directors and Officers requesting the proceeds of the insurance withdrew their money when they knew Celsius was in a dire situation. For example, from the SOFAs and Schedules, on April 2022 Mr. Leon:

| Date | Account | Direction | Type | Coin | Amount | Value |
|---|---|---|---|---|---|---|
| 4/11/2022 | Earn | Outgoing | Withdrawal | CEL | (100,000.0) | ($265,575.58) |
| 4/13/2022 | Earn | Outgoing | Withdrawal | CEL | (8,000,002.0) | ($18,240,004.64) |
| 4/13/2022 | Earn | Outgoing | Withdrawal | USDC | (52.0) | ($52.00) |
| 4/14/2022 | Earn | Outgoing | Withdrawal | USDC | (2,200,000.0) | ($2,200,000.00) |

. In May 2022, the board was also aware that Celsius was in a bad situation although they assured customers that everything was fine. However, Mr. Leon continued the withdrawals:

| Date | Account | Direction | Type | Coin | Amount | Value |
|---|---|---|---|---|---|---|
| 5/27/2022 | Earn | Outgoing | Internal Account Transfer | CEL | (7,023,636.20338285) | ($3,822,614.00) |
| 5/27/2022 | Custody | Incoming | Internal Account Transfer | CEL | 7,023,636.20338285 | $3,822,614.00 |
| 5/27/2022 | Custody | Outgoing | Withdrawal | CEL | (7,023,636.0) | ($3,817,936.15) |
| 5/29/2022 | Earn | Outgoing | Internal Account Transfer | USDC | (2,370,633.82359889) | ($2,370,633.82) |
| 5/29/2022 | Custody | Incoming | Internal Account Transfer | USDC | 2,370,633.82359889 | $2,370,633.82 |
| 5/29/2022 | Custody | Outgoing | Withdrawal | USDC | (2,370,633.823598) | ($2,370,633.82) |
| 5/31/2022 | Earn | Outgoing | Internal Account Transfer | ADA | (47,420.8854294141) | ($30,978.07) |
| 5/31/2022 | Earn | Outgoing | Internal Account Transfer | BTC | (13.3398806860572) | ($420,804.74) |
| 5/31/2022 | Earn | Outgoing | Internal Account Transfer | DOT | (5,128.14886226743) | ($52,574.58) |
| 5/31/2022 | Earn | Outgoing | Internal Account Transfer | ETH | (56.0468786707447) | ($110,179.07) |
| 5/31/2022 | Earn | Outgoing | Internal Account Transfer | SNX | (11,312.9185775007) | ($35,975.08) |
| 5/31/2022 | Earn | Outgoing | Internal Account Transfer | USDC | (3,127.41306904537) | ($3,127.41) |
| 5/31/2022 | Custody | Incoming | Internal Account Transfer | ADA | 47,420.8854294141 | $30,978.07 |
| 5/31/2022 | Custody | Incoming | Internal Account Transfer | BTC | 13.3398806860572 | $420,804.74 |
| 5/31/2022 | Custody | Incoming | Internal Account Transfer | DOT | 5,128.14886226743 | $52,574.58 |
| 5/31/2022 | Custody | Incoming | Internal Account Transfer | ETH | 56.0468786707447 | $110,179.07 |
| 5/31/2022 | Custody | Incoming | Internal Account Transfer | SNX | 11,312.9185775007 | $35,975.08 |
| 5/31/2022 | Custody | Incoming | Internal Account Transfer | USDC | 3,127.41306904537 | $3,127.41 |
| 5/31/2022 | Custody | Outgoing | Withdrawal | BTC | (13.33988068) | ($423,375.69) |

These same people are now requesting money that the Estate has an interest in and that is property of the Estate. Despite the claims made by the Directors and Officers, it should be noted that the funds obtained from the Policies are assets belonging to the estate of the Debtor. Therefore, due to the automatic stay, the Directors and Officers are prohibited from utilizing said funds to cover their defense expenses unless authorized by the Court. The unrestrained disbursement of defense costs has the potential to significantly reduce the available funds that would otherwise be beneficial to the Debtor's estate. Consequently, it is imperative to establish appropriate measures and limitations to safeguard the assets of the Debtor's estate and protect the interests of its unsecured creditors prior to granting the requested relief as stated in the Motion.

    The Court should deny both motions.

The Proceeds of the Policies Are Property of the Debtor's Estate

2.     It is well settled that that insurance policies encompassing a debtor fall within the ambit of the debtor's estate as property (See In re MF Glob. Holdings Ltd., 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012) (noting that "[i]t is well settled that a debtor's liability insurance is considered property of the estate"). Nevertheless, the determination of whether the proceeds stemming from an insurance policy constitute property of the debtor's estate hinges upon an assessment of " "the language and scope of the specific policies at issue." Id. (citing In re Downey Fin. Corp., 428 B.R. 595, 603 (Bankr. D. Del. 2010)).

The proceeds of the policy will be property of the estate "'if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'" In re MF Glob. Holdings Ltd., 469 B.R. at 190-91 (quoting In re Downey Fin. Corp., 428 B.R. 595, 603, (Bankr. D. Del. 2010)); see also In re Boy Scouts of Am. & Del. BSA, LLC, 642 B.R. 504, 572-73 (Bankr. D. Del. 2022) (discussing whether the proceeds of an insurance policy providing coverage to both the debtor and directors and officers are property of the estate). If a policy does provide direct coverage to the debtor, the "debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers." In re Allied Digit. Techs. Corp., 306 B.R. 505, 511 (Bankr. D. Del. 2004).

Here, the Company is also insured, and thus, is there a need to maintain the stay to avoid depletion. Considering the circumstances of this case, the Policies are property of the Debtor's estate. If the Directors and Officers and their plethora of law firms are

granted unfettered access to the proceeds of the Policies, it could potentially deplete all of the coverage available under the ABC Policies, leaving the Debtor's estate with no available coverage. See, e.g., In re MF Glob. Holdings Ltd., 469 B.R. at 190-91 (stating that the proceeds of a policy are property of the estate where the policy provides coverage to both the debtor and directors and officers); In re SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.), 388 B.R. 579, 584 (Bankr. D. Del. 2008) (holding that proceeds of a policy were property of the estate where policy provided coverage to debtor and directors and officers and depletion of proceeds from payment of defense costs would adversely affect the debtor's estate); Metro. Mortg. & Secs. Co., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.), 325 B.R. 851, 855-56 (Bankr. E.D. Wash. 2005) (finding "wasting" policies were property of estates even where the debtors were not yet entitled to recovery on the proceeds); In re Sacred Heart Hosp. of Norristown, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) (holding that where "[p]roceeds available for the [d]ebtor's liability exposure are not segregated from the [p]roceeds available to the directors and officers," the debtor had "a sufficient interest in the [p]roceeds as a whole to bring them into the estate").

<u>Cause does not exist to lift the stay</u>

3. In the present context, only two of the Sonnax criteria hold significance, namely: (a) whether there is a lack of any connection with or interference with the bankruptcy case; and (b) the impact of the stay on the parties and the balance of harms.

    First, granting a modification to the automatic stay, which would enable the Directors and Officers to access the proceeds from the Policies for the purpose of covering their defense costs, would result in an interference with the ongoing Chapter

11 Case. Firstly, such a modification could impede the ability of the Debtor's estate to recover under the coverage in the event of defending against claims asserted by other parties, potentially causing substantial losses that would burden the Debtor's estate to the detriment of unsecured creditors.

Furthermore, considering that the motion mentions multiple state investigations and legal proceedings, with the likelihood of further increase, it is highly probable that any depletion of the proceeds from the Policies would be significant. Secondly, the Committee is presently investigating potential claims and causes of action against the Directors and Officers concerning their prepetition mismanagement of the Debtor. Taking into account the findings outlined in the Examiner's Report it becomes apparent that there exist valuable claims and causes of action against the Directors and Officers. See for Example the Joint Stipulation And Agreed Order Between The Official Committee Of Unsecured Creditors And The Debtors With Respect To Certain Claims And Causes Of Action Belonging To The Debtors' Estates (docket 2201). The Committee is seeking

**COUNT X**
**(Avoidance and Recovery of Actual Fraudulent Transfers — 11 U.S.C. §§ 544(b)(1); 550; and Applicable Law (including, but not limited, to the Uniform Fraudulent Transfer Act as enacted in the states of New York, New Jersey, and Delaware) — Defendant Shlomi Daniel Leon and Any Other Immediate or Mediate Transferees)**

and

**COUNT IX**
**(Avoidance and Recovery of Actual Fraudulent Transfers — 11 U.S.C. §§ 548(a)(1)(A); 550 — Defendant Shlomi Daniel Leon and Any Other Immediate or Mediate Transferees)**

241. Mr. Leon's actual intent to hinder, delay, or defraud Plaintiff and Celsius is further established by, among other things, the following badges of fraud:

   a. The close relationship between the Debtors and Mr. Leon, who was a director, the COO, or the CSO of the Debtors at the time of the transfers;

   b. Mr. Leon's continued retention of possession, benefit, or use of the cryptocurrencies withdrawn in the Leon Transfers;

   c. The timing of the transactions shortly before the Pause as Celsius was experiencing extreme financial distress;

   d. Contemporaneous communications that establish Mr. Leon knew Celsius was insolvent and in dire financial condition;

   e. The fact that Mr. Leon withdrew all of his BTC, ETH, and a majority of his stablecoins on deposit with Celsius;

   f. The fact that Mr. Leon moved nearly all of his CEL tokens between associated entities;

   g. Mr. Leon had not previously conducted a large withdrawal of all of his cryptocurrency holdings on the platform;

   h. Mr. Leon, through initiating the Leon Transfers, engaged in a pattern, or series of transactions, or course of conduct after the Debtors incurred debt, the onset of financial difficulties on Debtors, or pendency of threat of suits by creditors of Debtors;

   i. That Mr. Leon's transactions were conducted in secret and not disclosed until significantly after the Debtors filed voluntary petitions for protection under Chapter 11;

   j. The Leon Transfers were to an insider; and

   k. The Debtors were insolvent or became insolvent shortly after the Leon Transfers were made.

At a suitable juncture within the Chapter 11 Case, legal proceedings shall be initiated against the Directors and Officers, with any resulting judgments rendered against them being considered as losses under the Policies. Should the automatic stay be modified to allow the Directors and Officers to presently access the Policies for defense cost payments, it would diminish the available coverage for funding potential reimbursements to unsecured creditors, in the event that the Committee achieves success in prosecuting claims against the Directors and Officers. Moreover, such modification may introduce additional complexities that could impede the attainment of a favorable resolution in this Chapter 11 Case. The Stay should not be modified.

Notwithstanding the assertions of the Directors and Officers to the contrary, the proceeds of the Policies are a critical estate asset and necessary to facilitating progress toward a successful restructuring in the Chapter 11 Case.

In order to safeguard against any unwarranted or excessive diminishment of the Policies, it is imperative that the Committee and the Debtor possess the authority to regulate the extent to which the Directors and Officers may access the proceeds of said Policies.

### Reservation of rights

Víctor Ubierna de las Heras reserves all of its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Objection, to seek discovery, to raise additional objections at the hearing to consider the Motion and filing a joinder to any other objections.

### Conclusion

For the foregoing reasons, the Court should sustain the objection and deny both the motion *Of Euclid Financial Institution Underwriters, Llc, A Duly Authorized Agent Of Certain Underwriters At Lloyds Of London And Republic Vanguard Insurance Company* and the Motion Of Shlomi Daniel Leon And Aliza Landes.

Dated: June 21, 2023

Madrid, Spain          Respectfully submitted,

                                                                     Víctor Ubierna de las Heras
                                                               By: /s/ Víctor Ubierna de las Heras

Víctor Ubierna de las Heras
Pro se creditor
+34 699760721
victorub@protonmail.com