Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) |
| | ) Case No. 22-10964 (MG) |
| Debtors. | ) |
| | ) (Jointly Administered) |

**NOTICE OF FILING**
**OF EXHIBIT A TO THE DEBTORS'**
**LIMITED OBJECTION AND RESERVATION**
**OF RIGHTS REGARDING EUCLID FINANCIAL INSTITUTION**
**UNDERWRITERS, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

**PLEASE TAKE NOTICE** that on May 3, 2023, Euclid Financial Institution Underwriters, LLC filed the *Motion of Euclid Financial Institution Underwriters, LLC, a Duly Authorized Agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company for Relief from the Automatic Stay to the Extent Applicable* [Docket No. 2585] (the "Motion").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that on June 7, 2023, Shlomi Daniel Leon and Aliza Landes filed the *Motion of Shlomi Daniel Leon and Aliza Landes for Relief from the Automatic Stay, as Applicable, to Permit Payments Under D & O Insurance and Joinder in Insurers' Motion Seeking the Same Relief* [Docket No. 2760] (the "Joinder").

**PLEASE TAKE FURTHER NOTICE** that on June 21, 2023, the Debtors filed the *Debtors' Limited Objection and Reservation of Rights Regarding Euclid Financial Institution Underwriters, LLC's Motion for Relief from the Automatic Stay* [Docket No. 2842] (the "Limited Objection").[2]  Attached hereto as **Exhibit 1** is Exhibit A to the Limited Objection, which includes the relevant D&O policies.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, Joinder, and Limited Objection, and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Limited Objection.

New York, New York
Dated: June 21, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    patrick.nash@kirkland.com
    ross.kwasteniet@kirkland.com
    chris.koenig@kirkland.com
    dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 1**

**Exhibit A to the Limited Objection**





# Certificate of Insurance

1. Signature Required. This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. Correspondent Not Insurer. The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Insurers set forth herein.

3. Cancellation. If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. The above-named are authorized and directed to accept service of process on behalf of Insurers in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Insurers' behalf in the event such a suit shall be instituted.

5. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Insurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

6. Assignment. This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

7. Attached Conditions Incorporated. This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

8. Short Rate Cancellation. If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

All inquiries regarding this Certificate should be addressed to the following Correspondent:
Euclid Financial Institution Underwriters, LLC
234 Spring Lake Drive
Itasca, IL 60143

**Short Rate Cancellation Table For Term of One Year.**

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.  If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.  If insurance has been in force for more than one year:

1.  Determine full annual premium as for insurance written for a term of one year.

2.  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

3.  Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

**This Declaration Page is attached to and forms part of Certificate provisions**

Previous No. EFI0701487 00      Authority Ref. No. B087520E02R5002      Certificate No. EFI1203088-00

| 1. | Name and address of the Assured: |
|---|---|
| | Celsius Network, Inc. |
| | 221 River Street, 9th Floor |
| | Hoboken, NJ 07030 |

| 2. | Effective from May 30, 2021 to May 30, 2022 |
|---|---|
| | both days at 12:01 a.m. standard time. |

3. Insurance is effective with:

| **Underwriters at Lloyd's of London** | **55%** |
|---|---|
| **RenaissanceRe Syndicate 1458** | |
| **One Lime Street, London,** | |
| **EC3M 7HA, UK** | |
| | |
| **Republic Vanguard Insurance Company, Inc.** | **45%** |
| **800 Superior Ave. E., 21st Floor** | |
| **Cleveland, OH 44114** | |

| 4. | Amount | Coverage | Rate | Premium |
|---|---|---|---|---|
| | As per Items 3 and 6 of the attached Euclid Financial Declaration page | | | |

5. Forms attached hereto and special conditions:
   1. Certificate of Insurance
   2. LMA5218 (12/1/15) U.S. Terrorism Risk Insurance Act of 2002
   3. LMA9104 (12/01/15) Policyholder Disclosure Notice of Terrorism Ins.
   4. NMA1998 (24/04/1986) Service of Suit Clause (U.S.A.)
   5. LMA3100 (15/09/2010) Sanction Limitation and Exclusion Clause
   6. LMA5096 (07/03/2008) Several Liability Clause
   7. NMA1256 (17/03/1960) Nuclear Incident Exclusion Clause-Liability-Direct (Broad) (U.S.A.)
   8. NMA1477 Radioactive Contamination Exclusion Clause -Liability –Direct- USA
   9. LMA9063 (01/09/2013) New Jersey Surplus Lines Notice
   10. LMA9064 (01/09/2013) New Jersey Surplus Lines Disclosure Notice
   11. EF GT 001 0116 General Terms and Conditions
   12. EF DO 020 0116 Directors & Officers and Corporate Securities Liability Coverage Section
   13. CG 008 0715 Prior Acts Exclusion
   14. CG 044 0416 TCPA Exclusion
   15. CG 109 0221 Cyber and Data Exclusion
   16. CM 044 1216 Employment Practices Liability Exclusion
   17. CM 096 0620 Theft or Loss of Cryptocurrency Exclusion
   18. CM 097 0620 Split Continuity Date
   19. CM 098 0620 Initial Coin Offering Exclusion
   20. CM 041 1016 Amend Cooperation Clause Endorsement
   21. CD 002 0815 Professional Services E&O Exclusion
   22. CD 059 0721 Securities Exclusion

| 6. | Service of Suit may be made upon: |
|---|---|

The party as named in form NMA1998

---

**7.**       In the event of a claim, please notify the following:

As per Item 4 of the attached Euclid Financial Declaration page

---

Dated: <u>June 24, 2021</u>                                        By:

                                                                                                Correspondent

**U.S. Terrorism Risk Insurance Act of 2002 as amended  New &
Renewal Business Endorsement**

*This Endorsement is issued in accordance with the terms and conditions of the "U.S.  Terrorism Risk
Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an additional premium of USD $0.00 paid, it is  hereby noted and agreed with effect
from inception that the Terrorism exclusion to which  this Insurance is subject, shall not apply to any
"insured loss" directly resulting from any  "act of terrorism" as defined in the "U.S. Terrorism Risk
Insurance Act of 2002", as amended  ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the  type insured by
this Insurance directly resulting from an "act of terrorism" as defined in  TRIA.  The coverage provided by
this Endorsement shall expire at 12:00 midnight December  31, 2020, the date on which the TRIA Program
is scheduled to terminate, or the expiry date   of the policy whichever occurs first, and shall not cover any
losses or events which arise  after the earlier of these dates.  The Terrorism exclusion, to which this
Insurance is  subject, applies in full force and effect to any other losses and any act or events that are  not
included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject.  All other terms,
conditions, insured coverage and exclusions of this Insurance including  applicable limits and deductibles
remain unchanged and apply in full force and effect to   the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not  responsible
under the terms of TRIA (including subsequent action of Congress pursuant to  the Act) due to the
application of any clause which results in a cap on the Underwriter's  liability for payment for terrorism
losses.

LMA5218
12 January 2015

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:**  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE.  YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

| | |
|---|---|
| | I hereby elect to purchase coverage for acts of terrorism for a prospective premium of USD $0.00 |
| | I hereby elect to have coverage for acts of terrorism excluded from my policy.  I understand that I will have no coverage for losses arising from acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____
1458 Syndicate on behalf of certain underwriters at Lloyd's

_____
Print Name

_____
Policy Number

_____
Date

LMA9104
12 January 2015

### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Messrs Mendes & Mount,
750 Seventh Avenue,
New York
New York 10019-6829
U.S.A

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA1998

24/04/1986

**Sanction Limitation and Exclusion Clause**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

## SEVERAL LIABILITY CLAUSE

**PLEASE NOTE – This notice contains important information.  PLEASE READ CAREFULLY**

The liability of an insurer under this contract is several and not joint with other insurers party to this contract.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this contract.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

LMA5096 (Combined Certificate)

7 March 2008

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the   isotopes of uranium or plutonium, (2) processing or utilizing spent  fuel,   or   (3)   handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or   used    for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

NMA1256

17/03/1960

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)**

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

NMA1477

13/02/1964

## NEW JERSEY SURPLUS LINES NOTICE

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance.  Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.  The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

LMA9063
01 September 2013

## NEW JERSEY SURPLUS LINES DISCLOSURE NOTICE

The undersigned applicant has been advised by the undersigned originating insurance producer and understands that an insurance policy written by a surplus lines insurer is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance.

LMA9064
01 September 2013





**General Declarations**

NOTICES: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS LIMITED TO LIABILITY FOR (I) **CLAIMS** FIRST MADE AGAINST **INSUREDS** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, THE **EXTENDED REPORTING PERIOD**, AND (II) OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI. OF THE GENERAL TERMS AND CONDITIONS. ANY COVERED **DEFENSE COSTS**, AND **INVESTIGATION COSTS** SHALL REDUCE THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND MAY BE APPLIED AGAINST THE RETENTION AMOUNT. EXCEPT AS EXPRESSLY PROVIDED FOR IN THE EMPLOYMENT PRACTICES LIABILITY **COVERAGE SECTION**AND THE FIDUCIARY LIABILITY **COVERAGE SECTION**, THE **INSURER** DOES NOT ASSUME ANY DUTY TO DEFEND. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

POLICY NUMBER:          EFI1203088-00
UMR:                            B087520E02R5002

1. **NAMED INSURED**:          Celsius Network, Inc.
**Named Insured** Address:      221 River Street, 9th Floor
                                Hoboken, NJ 07030

2. **POLICY PERIOD**:          Inception:      May 30, 2021
                               Expiration:     May 30, 2022
                               The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Insured** Address.

3.  COVERAGES AND LIMITS OF LIABILITY APPLICABLE TO THIS POLICY:

|  | Limit of Liability |
|---|---|
| ☒ (a) Directors & Officers and Corporate Securities Liability **Coverage Section** | $1,500,000 |
| ☐ (b) Private Company Management Liability **Coverage Section** | |
| ☐ (c) Investment Adviser Professional Liability **Coverage Section** | |
| ☐ (d) Investment Fund **Coverage Section** | |
| ☐ (e) Insurance Company Professional Liability **Coverage Section** | |
| ☐ (f)  Bankers Professional Liability **Coverage Section** | |
| ☐ (g) Employment Practices Liability **Coverage Section** | |
| ☐ (h) Fiduciary Liability **Coverage Section** | |

POLICY AGGREGATE LIMIT OF LIABILITY
(i) For all **Coverage Sections** combined:                              $1,500,000

4. **INSURER**:

(a) **Insurers:**      Certain Underwriters at Lloyd's of London    55%
                       Republic Vanguard Insurance Company          45%

(b) Notice of **Claim** or circumstances:
      By E-Mail:      claimsmailbox@euclidfinancial.com
      By Mail:        Euclid Financial Institution Underwriters, LLC
                      234 Spring Lake Drive
                      Itasca IL 60143

(c)  All other notices:

Euclid Financial Institution Underwriters, LLC
234 Spring Lake Drive
Itasca IL 60143

5.  EXTENDED REPORTING PERIOD:

Period:          12 Months
Premium:       200% of the annual premium

6.  PREMIUM:          $277,500

IN WITNESS WHEREOF, the **Insurer** has caused this policy to be signed below by its President, Secretary or duly authorized representative.

_____

AUTHORIZED REPRESENTATIVE

 

**General Terms and Conditions**

In consideration of the premium charged, and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

## I. TERMS AND CONDITIONS

In addition to the terms and conditions set forth in these General Terms and Conditions, the terms and conditions of each **Coverage Section** shall apply to, and only to that particular **Coverage Section** and in no way shall be construed to apply to any other **Coverage Section**. If any provision of the General Terms and Conditions is inconsistent or in conflict with terms and conditions of any **Coverage Section**, the terms and conditions of such **Coverage Section** shall control for purposes of that **Coverage Section**.

## II. DEFINITIONS

The following terms whenever set forth in boldface type in this policy, whether in singular or in plural, shall have the meanings indicated. Any other terms set forth in boldface type in the General Terms and Conditions will have the meanings indicated in the applicable **Coverage Section**.

A. **Application** means

1. the signed application for this policy, if any; all applications for any policy of which this policy is a renewal or replacement; and any attachments, information, warranty, or other materials submitted therewith or incorporated therein; and
2. any filings made by the **Company** to the Securities Exchange Commission or any similar state, local, or foreign governmental entity, within the 12 months preceding the inception date of this policy.

The materials defined in 1. and 2. above shall be deemed attached to and part of this policy.

B. **Company** means

1. the **Named Insured**;
2. any **Subsidiary**; and
3. the **Named Insured** or any **Subsidiary** as a debtor-in-possession under United States of America bankruptcy law or similar legal status under foreign law.

**Company** does not include and coverage shall not apply under any **Coverage Section** to, any **Subsidiary**, or any **Executive** or **Employee** of any **Subsidiary**, for any **Wrongful Act** committed, attempted, or allegedly committed or attempted, prior to or subsequent to such entity having met the definition of **Subsidiary** as defined in that **Coverage Section**.

C. **Coverage Section** means collectively or individually the Directors and Officers Liability **Coverage Section**, the Investment Adviser Management Liability

**Coverage** Section, the Investment Adviser Professional Liability **Coverage Section**, the Investment Fund **Coverage Section**, the Insurance Company Professional Liability **Coverage Section**, the Bankers Professional Liability **Coverage Section**, the Employment Practices Liability **Coverage Section**, or the Fiduciary Liability **Coverage Section**, but only with respect to those indicated as included as part of this policy by all three of the following:

1. indicated by ☒ in the General Declarations. (☐ indicates the **Coverage Section** is not included)
2. for which a **Coverage Section** Limit of Liability is indicated in Item 4 of the General Declarations; and
3. for which such **Coverage Section** Declarations and coverage form are attached to and form part of this policy.

D. **Domestic Partner** means a person legally recognized as a domestic or civil union partner under the provisions of any applicable federal, state or local statutory or common law under the provisions of any formal program established by a **Company**.

E. **Financial Insolvency** means:

1. the appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate a **Company**;
2. the filing of a petition under the bankruptcy laws of the United States of America by a **Company**; or
3. as to both 1. or 2. of this Definition, any equivalent events outside the United States of America.

F. **Indemnifiable Loss** means **Loss** for which a **Company**, **Fund Organization** or **Outside Entity** is permitted or required to indemnify or advance to the **Individual Insureds**.

G. **Insurer** means the insurance company set forth in Item 4 of the General Declarations.

H. **Management Control** means

1. owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or
2. having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

I. **Named Insured** means the entity set forth in Item 1. of the General Declarations.

J. **Non-indemnifiable Loss** means **Loss** which an **Individual Insured** becomes legally obligated to pay on account of any **Claim**, for which a **Company**, **Fund Organization** or **Outside Entity** fails to indemnify such **Individual Insured** and:

1. such entity's failure to indemnify is a result of such entity's insolvency; or
2. such entity is not permitted to indemnify such **Individual Insured** pursuant to statutory or common law.

K. **Policy Period** means the period of time from the inception date set forth in Item 2 of the General Declarations to the earlier of the expiration date set forth in Item 2 of the General Declarations or the effective date of cancellation of this policy. In the event of cancellation of this policy, the effective date of cancellation shall replace the expiration date in Item 2 of the General Declarations.

L. **Related Wrongful Acts** means **Wrongful Acts** which are the same, repeated or continuous **Wrongful Acts**, or **Wrongful Acts** which arise from a common causal connection or cause the same or related damages, or have a common nexus or nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

## III. SPOUSES, ESTATES

Subject otherwise to the terms, conditions and limitations of this policy, this policy provides coverage for any **Claim** solely for **Wrongful Acts** committed or allegedly committed by the **Individual Insureds** made against:

A.    the estates, heirs, or legal representatives of such **Individual Insureds**, in the event of their incompetency, insolvency or bankruptcy; or

B.    the lawful spouse or legally recognized **Domestic Partner** (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world and hereinafter included in the term "spouse") of any such **Individual Insured** for all **Claims** arising solely out of his or her status as spouse of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse, or property transferred from the **Individual Insured** to the spouse.

This extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

## IV. LIMITS OF LIABILITY

A.  The Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability for all **Loss**, including **Defense Costs**, under all **Coverage Sections** combined. The purchase of the Extended Reporting Period shall not in any way increase or reinstate any Limits of Liability.

B.  The **Coverage Section** Limit of Liability set forth in Items 4(a), 4(b), 4(c), 4(d), 4(e), 4(f), 4(g), and 4(h) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability under each applicable **Coverage Section** for all **Loss**, including **Defense Costs**, under that respective **Coverage Section**. Each such **Coverage Section** Limit of Liability shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations. The Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations

shall be reduced and may be exhausted by payments of **Loss** under any one or more of the applicable **Coverage Sections**.

C. Any sub-limits of liability set forth in any applicable **Coverage Section** Declarations shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations and the applicable **Coverage Section** Limit of Liability set forth in that respective **Coverage Section** Declarations.

D. The **Insurer**'s obligations for all **Claims** shall cease upon exhaustion of the Policy Aggregate Limit of Liability and, to the extent any individual applicable **Coverage Section** Limit of Liability is exhausted, the **Insurer**'s obligations for all **Claims** under that particular **Coverage Section** shall cease.

E. **Defense Costs** incurred by the **Insurer** or by the **Insureds** shall be part of and not in addition to the applicable limits of liability. Payment of **Defense Costs** by the **Insurer** shall reduce and may exhaust all applicable limits of liability.

F. All **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be deemed a single **Claim** and shall be deemed to be first made against the **Insureds** on the date the earliest of such **Claims** is first made against any **Insureds.**

## V. RETENTIONS

A. The Retentions set forth in the respective **Coverage Section** Declarations are separate Retentions pertaining only to **Claims** under that applicable **Coverage Section**. The application of a Retention under one **Coverage Section** shall not reduce or eliminate the Retention under any other applicable **Coverage Section**.

B. With respect to a **Claim** under any applicable **Coverage Section**, the **Insurer** shall only pay **Loss** which is in excess of the amount set forth in the **Coverage Section** Declarations as the Retention applicable to each such **Claim** under the applicable **Coverage Section**. Such Retention shall be borne by the **Insureds** and shall remain uninsured.

C. If more than one Retention is applicable to any one **Claim**, the applicable Retentions will be applied separately to the **Loss** resulting from such **Claim**, and the payment of any Retention under one **Coverage Section** will not reduce or eliminate the Retention under any other.

D. Amounts incurred for **Defense Costs** shall be applied against the applicable Retention.

## VI. REPORTING AND NOTICE

A. The **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give notice to the **Insurer** by mail or electronically to the address set forth in Item 4(b) of the General Declarations of:

   1. any **Claim** made against an **Insured,**
   2. any matter which could involve the payment of **Voluntary Compliance Loss** under the **Fiduciary Liability Coverage Section,** if purchased; or
   3. any **Derivative Demand** under the Directors and Officers Liability **Coverage Section**, Investment Adviser Management Liability **Coverage Section**, or Investment Fund **Coverage Section**, if purchased,

as soon as practicable but no later than (i) the earlier of 60 days after the expiration date shown in Item 2 of the General Declarations or cancellation of the policy or (ii) prior to the end of the Extended Reporting Period, if applicable.

Any subsequent **Claim** which is made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts, circumstances, or a **Wrongful Act** alleged in a prior **Claim** for which notice already has been given, or which alleges any **Wrongful Act** which is a **Related Wrongful Act** shall be deemed a **Claim** first made at the time the prior **Claim** was first noticed to the **Insurer**.

B.   If during the **Policy Period** or the Extended Reporting Period**,** if applicable, the **Insureds** become aware of any circumstances and a **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and notice is given to the **Insurer** by mail or electronically to the address set forth in Item 4 (b) of the General Declarations of such circumstances, along with a description of the alleged **Wrongful Act,** the allegations anticipated, the reasons for anticipating a **Claim**, and full particulars as to dates, persons and entities involved, then any **Claim** which subsequently is made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances and a **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or **Wrongful Act** originally was reported.

Notice pursuant to A. or B. above shall reference the policy number set forth in the General Declarations. If mailed, the date received by the **Insurer** shall constitute the date that such notice was given.

C.   All notices other than those notices provided for in A. and B. above shall be sent to the **Insurer** at the address set forth in Item 4(c) of the General Declarations.

## VII. CANCELLATION

This policy or any individual **Coverage Section** may be canceled by the **Named Insured** at any time by mailing written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire policy is to be canceled and when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy Period** either for the entire policy or for that respective **Coverage Section**, whichever is cancelled.

This policy may be canceled by or on behalf of the **Insurer** only in the event of non-payment of premium by the **Named Insured**. In the event of non-payment of premium by the **Named Insured**, the **Insurer** may cancel this policy by delivering to the **Named Insured** or by mailing to the **Named Insured**, by registered, certified or other first class mail, at the **Named Insured**'s address as stated in Item 1 of the General Declarations, written notice stating when, not less than 10 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice.

If the policy or any **Coverage Section** shall be canceled by the **Named Insured**, the **Insurer** shall retain the short rate proportion of the applicable premium herein.

If the Policy is canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the applicable premium herein.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

## VIII. EXTENDED REPORTING PERIOD

Upon expiration or cancellation of this policy, other than for non-payment of premium, the **Insureds** shall have the right, upon payment of the additional premium indicated in Item 5. of the General Declarations, to an extension of the Notice of Claim provision described in VI. Reporting and Notice of these General Terms and Conditions, for the length of time shown in Item 5 of the General Declarations, commencing on the earlier of the expiration date or effective date of cancellation. Such extension of time to report a **Claim** (herein referred to as the Extended Reporting Period wherever it appears in this policy) shall apply only to **Wrongful Acts** committed, attempted, or allegedly committed or attempted, prior to the earlier of the expiration date or effective date of cancellation, and which are not otherwise excluded by any terms and conditions of this policy. Any **Claim** first made during the Extended Reporting Period shall be deemed to have been made during the **Policy Period**.

As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this policy must have been paid and the premium for the Extended Reporting Period must be paid in full with written notice of the **Insured**'s election to purchase the Extended Reporting Period not more than 30 days after the earlier of the expiration date or effective date of cancellation. The **Insured**'s right to purchase the Extended Reporting Period shall otherwise lapse.

If the Extended Reporting Period is purchased, the additional premium shall be deemed fully earned, and the Extended Reporting Period cannot be canceled by any **Insured** or the **Insurer**.

If any premium is owed for the policy, any premium received from the **Named Insured** shall first be applied to the premium owing for the policy with the remainder applied to the premium for the Extended Reporting Period. The Extended Reporting Period shall not take effect unless the outstanding premium for the policy is paid in full and the premium for the Extended Reporting Period is paid when due.

The purchase of the Extended Reporting Period shall not in any way increase or reinstate any limits of liability.

## IX. CHANGE OF CONTROL

If during the **Policy Period**:

A.  the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert, or

B.  any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Insured**,

(A. and/or B. herein referred to as a Change In Control), then this policy may not be cancelled thereafter and it shall not, in any event, apply to any **Claim** alleging in whole or in part any **Wrongful Acts** committed, attempted or allegedly committed or attempted by any **Insured** subsequent the date of such Change In Control.

The **Named Insured** shall give the **Insurer** written notice of the Change In Control as soon as practicable, but no later than 30 days after the effective date of the Change In Control together with such other information as the **Insurer** may require.

## X. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit effectively in the name of any **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this policy unless such **Individual Insured** has been convicted of a criminal act or been determined by a final, non-appealable adjudication in any underlying proceeding to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the applicable Retention, the **Insurer** shall have a direct contractual right under this policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States), such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Section X. and any other rights the **Insurer** may have under applicable law.

## XI. REPRESENTATIONS AND SEVERABILITY

A. The **Insureds** represent that the information contained in the **Application** is true, accurate and complete. This policy is issued in reliance upon the material representations contained in the **Application**. If the **Application** contains material misrepresentations or omissions made with intent to deceive or that materially affect the acceptance of the risk or the hazard assumed by the **Insurer**, this policy shall not afford any coverage for any **Insured** who knew at the inception of the **Policy Period** of the facts that were misrepresented in, or were omitted from, the **Application**. The **Application** shall be deemed attached to, and incorporated into, this policy.

B. For the purpose of determining coverage for each **Insured**:

1. the **Application** shall be construed as a separate application for coverage by each **Insured**;
2. knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and

3. only knowledge possessed by the **Named Insured's** chief executive officer, chief financial officer, or general counsel or the person signing the **Application** shall be imputed to a **Company**.

C. Except as described above, knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

D. Notwithstanding any other provision of this policy, the **Insurer** shall not rescind this Policy.

## XII. NOTICE AND AUTHORITY

The **Named Insured** shall act on behalf of all **Insureds** with respect to the giving of notice of any **Claim**, the giving and receiving of notice of cancellation and non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer,** and the exercising or declining to exercise any right to an Extended Reporting Period**.**

## XIII. ASSIGNMENT

No change in, modification of or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the **Insurer**.

## XIV. ACTION

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured**'s obligation to pay shall have been finally determined either by final judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or entity, or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join the **Insurer** as a party to any action against the **Insured** or a **Company** to determine the **Insured**'s liability, nor shall the **Insurer** be impleaded by the **Insured** or a **Company** or their legal representative.

## XV. BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or the **Insured**'s estate shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this policy.

## XVI. COVERAGE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

For **Claims** made and maintained and **Wrongful Acts** committed in any jurisdiction other than the United States of America or any of its territories or possessions, all premiums, limits of liability, Retentions, **Loss** and other amounts are expressed and payable in the currency of the United States of America. If judgment is rendered,

settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Insured**) or in United States of America dollars at the rate of exchange published in The Wall Street Journal on the next publication date of The Wall Street Journal after the **Insurer**'s obligation to pay such **Loss** is established.

## XVII. GOVERNMENTAL RESTRICTIONS

This policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the **Insurer** from providing insurance.

## XVIII. HEADINGS

The descriptions in the headings and subheadings of this policy, including in any **Coverage Section**, are solely for convenience and form no part of the terms and conditions of coverage.





**Directors & Officers and Corporate Securities Liability Coverage Section Declarations**

1. **NAMED INSURED**:  Celsius Network, Inc.

2. **POLICY PERIOD**:  Inception:      May 30, 2021
Expiration:    May 30, 2022
The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Insured** Address.

3. (a) **COVERAGE SECTION** LIMIT OF LIABILITY:            $1,500,000
   (b) **Derivative Demand** Investigation Sub-Limit of Liability:      $250,000

4. RETENTIONS:

(a) Each **Claim** under Coverage A:                       $0
(b) Each **Claim** other than a **Securities Claim** under Coverage B: $1,500,000
(c) Each **Securities Claim** under Coverage B or C:       $1,500,000
(d) Each **Derivative Demand** under Coverage D:            $0

5. CONTINUITY DATE:      See Endorsement



**Directors & Officers and Corporate Securities Liability Coverage Section**

In consideration of the premium charged, in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, and subject to all terms and conditions, the **Insurer** agrees as follows:

## I. Insuring Agreements

### Coverage A: Individual Insurance Coverage

The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.

### Coverage B: Company Reimbursement Coverage

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the Extended Reporting Period**,** if applicable, for any **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss.**

### Coverage C: Company Coverage

The **Insurer** shall pay **Loss** of a **Company** arising from a **Securities Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period if applicable for any **Wrongful Act** of a **Company**.

### Coverage D: Derivative Demand Investigation Costs Coverage

The **Insurer** shall pay **Investigation Costs** up to the amount of the **Derivative Demand** Investigation Sub-Limit of Liability set forth in Item 3(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations incurred by a **Company** solely in response to a **Derivative Demand** first made and reported to the **Insurer** during the **Policy Period.** Payment of any **Investigation Costs** under this **Coverage Section** shall not waive any of the **Insurer**'s rights under this policy or at law.

## II.    Definitions

In addition to the Definitions in the General Terms and Conditions, the following terms whenever set forth in boldface type in this **Coverage Section**, whether in singular or in plural, shall have the meanings indicated.

A. **Claim** means

    1. a written demand, other than a **Derivative Demand,** for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute

     of limitations and including any demand for mediation, arbitration or any other alternative dispute resolution process);

2. a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, nonmonetary or injunctive relief which is commenced by:

    (i)    service of a complaint or similar pleading;

    (ii)   return of an indictment, information or similar document (in the case of a criminal proceeding); or

    (iii)  receipt or filing of a notice of charges;

3. a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

    (i)   once such **Individual Insured** is identified in writing by such investigating authority or enforcement body as a person against whom a proceeding described in subparagraph 2 of this Definition may be commenced; or

    (ii)  in the case of an investigation by the Securities and Exchange Commission("**SEC**") or a similar state or foreign government authority, after:

        (a)  the service of a subpoena upon such **Individual Insured**; or

        (b)  the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**;

4. a formal request for the extradition of an **Individual Insured** in any country by another country for trial or to answer a criminal accusation.

B. **Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

C. **Derivative Demand** means a written demand by one or more security holders of a **Company,** without the assistance, participation or solicitation of any **Executive**, upon the board of directors (or equivalent management body) of such **Company** requesting that it file on behalf of the **Company** a civil proceeding in a court of law against any **Executive** for a **Wrongful Act.**

D. **Employee** means any past, present or future employee of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including:

1. any part-time, seasonal and temporary employee,
2. volunteer, individual who is contracted to perform work for a **Company**, or independent contractor for a **Company** in his or her capacity as such, or
3. any individual who is leased to a **Company**,

but only if such **Company** provides indemnification to such employees, volunteers or individuals in the same manner as is provided to such **Company's** own employees; provided, however, a **Company** may request that no coverage be provided under this **Coverage Section** for an independent contractor or leased employee named in a specific **Claim**. Such request must be made in writing and within 90 days of the **Claim** being reported to the **Insurer**. If no such request is made, this **Coverage Section** shall apply as if the **Company** determined that such independent contractor or leased employee shall receive coverage.

E. **Employment Practices Violation** means the following actual or alleged acts whether committed directly or indirectly, intentionally or unintentionally:

1. wrongful, including constructive termination of employment (actual or constructive),dismissal or discharge;
2. breach of an implied contract of employment;
3. harassment, sexual harassment or creation of a hostile work environment;
4. discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
5. **Retaliation**;
6. employment-related misrepresentations to an **Employee** of a **Company** or applicant for employment with a **Company** or an **Outside Entity**;
7. employment-related libel, slander, humiliation, defamation or invasion of privacy;
8. wrongful failure to employ or promote;
9. wrongful deprivation of a career opportunity with a **Company**, wrongful discipline, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;
10. failure to grant tenure; or
11. with respect to 1 through 10 above, negligent hiring, retention, training, supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent organizational policies and procedures, or violation of an individual's civil rights;

but only if the actual or alleged **Employment Practices Violation** is brought by an **Employee** or an **Outside Entity Employee**, or by an applicant for employment with a **Company** or an **Outside Entity**.

F. **Executive** means

1. any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, governor, general partner, managing general partner, venture partner, administrative general partner, principal, management committee member of a duly constituted committee, or member of the Board of Managers of a **Company**;
2. any past, present or future person in a duly elected or appointed position in a **Company** which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in paragraph 1. of this Definition; or
3. any past, present or future General Counsel, Chief Compliance Officer, or Risk Manager (or equivalent position) of the **Named Insured**.

G. **Individual Insured** means any

1. **Executive**;
2. **Employee**; or
3. **Outside Entity Executive**

H. **Insured** means any

1. **Company**; or
2. **Individual Insured**.

I. **Investigation Costs** means the reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** (including, but not limited to, attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors(or any equivalent management body), solely in connection with the investigation or evaluation of a **Derivative Demand.**

J. **Loss** means

1. the amount that any Insured becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

    (i)    judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and
    (ii)   damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages to the extent allowed by applicable law. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

2. **Defense Costs**;
3. with respect to Coverage D of this **Coverage Section**, **Investigation Costs**.

**Loss** shall not include, other than **Defense Costs**:

1. any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**;
1. matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed, provided that the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this **Coverage Section**;
2. civil or criminal fines or penalties;
3. taxes or tax penalties (whether imposed by federal, state, local or other governmental authority);
4. the costs and expenses of complying with any injunctive relief or other form of nonmonetary relief;
5. compensation, salary, wages, fees, benefits, overhead, charges or expenses of any **Insured;**

6. any amounts owed pursuant to the terms of any contract or agreement, including any amounts related to any such exposures based on the contract or agreement;

7. any amount representing the increase in price or consideration where the **Claim** involves allegations that the price or consideration paid or offered to be paid for a merger, consolidation or acquisition of all or a majority of stock issued by or assets owned by any person or entity is inadequate or unfair; or

8. any reimbursement required under the Sarbanes-Oxley Act of 2002 or any rules, regulations or amendments promulgated thereunder, or any other type of reimbursement, restitution or disgorgement.

K. **Outside Entity** means any not-for-profit organization, other than a **Subsidiary.**

L. **Outside Entity Executive** means any **Executive** of a **Company** serving in the capacity as director, officer, trustee, trustee emeritus or governor of an **Outside Entity**, but only if such service is at the specific request or direction of a **Company**. In the event of a disagreement between a **Company** and an individual as to whether such individual was acting at the specific request or direction of such **Company**, this **Coverage Section** shall abide by the determination of the **Named Insured** on this issue and such determination shall be made by written notice to the **Insurer** within 90 days after the **Claim** first is reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this **Coverage Section** shall apply as if the **Named Insured** determined that such **Executive** was not acting at such **Company**'s specific request or direction.

M. **Pollutants** means any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

N. **Securities Claim** means a **Claim** made against any **Insured**:
1. alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:
    (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or
    (ii) brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or
2. brought derivatively on behalf of a **Company** by a security holder of such **Company**.

O. **Subsidiary** means
1. any entity in which the **Company** has or had **Management Control** on or before the inception date of the policy either directly or indirectly through one or more other **Subsidiaries**;
2. any entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries**; and whose assets do not exceed 35% of the assets of the **Company**, prior to the **Company** acquiring **Management Control** of the **Subsidiary**; or
3. any entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries** and whose assets exceed 35% of the assets of the Company,

prior to the Company acquiring **Management Control** of the **Subsidiary** but only for a period of 90 days subsequent to the **Company** acquiring **Management Control** of the **Subsidiary.**

P. **Wrongful Act** means
1. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act, including but not limited to an **Employment Practices Violation**, by an **Individual Insured** in his or her capacity as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive, Employee,** or **Outside Entity Executive**; or
2. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company** in connection with a **Securities Claim**.

## III. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A. alleging, arising out of, based upon or attributable to:
1. gaining of any profit, remuneration or advantage to which the **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding establishes the gaining of such profit, remuneration or advantage; or
2. committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed.

For purposes of determining the applicability of this Exclusion, (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer or chief financial officer shall be imputed to such **Company;**

B. alleging, arising out of, based upon or attributable to the circumstances alleged or the same **Wrongful Act** or **Related Wrongful Act** alleged or contained in any claim or demand which has been reported, or to any circumstances, **Wrongful Act** or **Related Wrongful Act** of which notice has been given, under any prior insurer's policy or policy of which this **Coverage Section** is a renewal or replacement or which it may succeed in time;

C. alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against, any **Insured** on or prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations**,** or the alleging of any **Wrongful Act** which is the same as or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit or proceeding or in the underlying demand, order, decree or judgment;

D. alleging, arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed by an **Individual Insured** in his or her capacity as an **Outside Entity Executive** prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations if any **Insured**, as of such **Continuity Date**, knew or could have

reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **Coverage Section**;

E. alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity other than as an **Executive** or **Employee** of a **Company** or as an **Outside Entity Executive** of an **Outside Entity**;

F. which is brought by or on behalf of any **Insured** in any capacity, or by any entity that owns more than 50% of the outstanding securities of the **Named Insured**. This Exclusion shall not apply to:
   1. any **Claim** brought or maintained derivatively on behalf of a **Company** by one or more securityholders of such **Company**; provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by any **Individual Insured**, other than assistance, for which 18 U.S.C. 1514A(a) (the Sarbanes-Oxley Act of 2002), or any similar "whistleblower" protection provision of any applicable federal, state, local or foreign securities law, affords protection to such **Individual Insured**;
   2. any employment **Claim** brought or maintained by or on behalf of an **Individual Insured**;
   3. any **Claim** brought or maintained by an **Individual Insured** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this **Coverage Section**;
   4. any **Claim** brought or maintained against an **Individual Insured** by a bankruptcy or insolvency trustee, examiner, receiver, any assignee of such trustee, examiner or receiver, or any creditors' committee, that has been appointed to take control of, supervise, manage or liquidate the **Named Insured**;
   5. any **Claim** brought or maintained by an **Individual Insured** if such **Individual Insured** has not served in the capacity of an **Individual Insured** within any of the three (3) years immediately preceding the date the **Claim** was made, and such **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation, or intervention of any other **Insured**;
   6. any **Claim** brought and maintained outside the United States of America or any of its territories or possessions, Canada or any other common law country (including any territories thereof); or
   7. any **Claim** brought or maintained by an **Employee** of a **Company**; provided such **Employee** is not and has never been an **Executive** of any **Company**;

G. for bodily injury, personal injury, emotional distress, mental anguish, sickness, disease or death of any person, or damage to, loss of use or destruction of any data or tangible property. This Exclusion shall not apply to a **Securities Claim**;

H. for any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**. Other than for expenses (including, but not limited to, legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants,** this Exclusion shall not apply to:

   A. a **Claim** under Coverage A of this **Coverage Section;** or
   B. **Loss** in connection with a **Securities Claim**;

I.   for any actual or alleged violations of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any workers' compensation, unemployment compensation, unemployment insurance, retirement benefits, social security benefits, disability benefits, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto, or any similar federal, state, local or foreign statutory law or common law. This Exclusion shall not apply to a **Securities Claim**;

J.   The **Insurer** shall not be liable to make any payment for any **Investigation Costs** in connection with any **Derivative Demand** under Coverage D**:**

1.   alleging, arising out of, based upon or attributable to any fact, circumstance, situation, transaction, event or **Wrongful Act** which has been reported under any policy of which this **Coverage Section** is a renewal or replacement or which it may succeed in time;
2.   alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against, any **Insured** on or prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations**,** or involving any **Derivative Demand** which is the same or related to that at issue in any pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment;

## IV. Limit of Liability

The following provisions shall apply in addition to the provisions of Section IV. Limit of Liability of the General Terms and Conditions:

A.   Subject to the Policy Aggregate Limit of Liability set forth in Item 3 of the General Declarations, the **Coverage Section** Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall be the maximum aggregate limit of the **Insurer**'s liability for all **Loss** under this **Coverage Section.** Upon exhaustion of the Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations, or the Policy Aggregate Limit of Liability in Item 3 of the General Declarations, the **Insurer**'s obligations under this **Coverage Section** shall be deemed completely fulfilled and extinguished.

B.   The maximum limit of the **Insurer**'s liability for all **Investigation Costs** incurred in response to **Derivative Demands** made during the **Policy Period**, in the aggregate, shall be the **Derivative Demand Investigation** Sub-Limit of Liability set forth in Item 3(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations. The **Derivative Demand Investigation** Sub-Limit of Liability shall be the maximum limit of the **Insurer** under this **Coverage Section** for all **Investigation Costs** regardless of the number of **Derivative Demands** made during the **Policy Period** or the number of **Executives** subject to such **Derivative Demands** and shall be part of, and not in addition to, the **Coverage Section** Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations which is also part of and not in addition to the Policy Aggregate Policy Limit of Liability set forth in Item 3 of the General Declarations.

## V. Retentions

The following provisions shall apply in addition to the provisions of Section V. Retentions of the General Terms and Conditions:

A. The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations. The Retention shall be borne by the **Insureds** and shall remain uninsured, with regard to:

1. all **Loss** for which the **Company** is required or permitted to provide indemnification to an **Individual Insured**; and
2. **Loss** of a **Company**.

B. A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

C. The Retention set forth in Item 4(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Claim** under Coverage A of this **Coverage Section**. The Retention set forth in Item 4(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Claim** other than a **Securities Claim** under Coverage B of this **Coverage Section**.  The Retention set forth in Item 4(c) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Securities Claim** under Coverage B or Coverage C of this **Coverage Section**.  The Retention set forth in Item 4(d) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Derivative Demand** under Coverage D of this **Coverage Section**.

D. The Retention applicable to Coverage B shall apply to **Indemnifiable Loss**, whether or not actual indemnification is made, unless such indemnification is not made by a **Company** solely by reason of its **Financial Insolvency**. A **Company**'s certificate of incorporation, charter or other organization documents, including by-laws and resolutions, shall be deemed to require indemnification and advancement to an **Individual Insured** to the fullest extent permitted by law.  In the event a **Company** is unable to pay the applicable Retention due to **Financial Insolvency**, then the **Insurer** shall advance payment for **Loss** within the applicable Retention. The **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from such **Company** pursuant to Section VI.B. of this **Coverage Section** and Section X. Subrogation of the General Terms and Conditions.

## VI. Defense Costs, Defense Counsel, Settlements & Judgments

A. Defense

The **Insurer** does not assume any duty to defend a **Claim**. The **Insureds** shall defend and contest any **Claim** made against them. An **Insured** shall not retain defense counsel or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. An **Insured** may select a defense counsel different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest and only with the express prior written consent of the **Insurer**.

B. Advancement

The **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** prior to final disposition of the **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the Terms and Conditions of this **Coverage Section** to payment of such **Loss**.

C.  Cooperation

The **Insurer** shall have the right to associate fully and effectively with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insurer**'s judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

D.  Prior Written Consent

The **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** or **Investigation Costs** without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments, **Defense Costs** and **Investigation Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **Coverage Section**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **Coverage Section**. In addition, the **Insured** shall not take any action which prejudices the **Insurer**'s rights under this **Coverage Section.**

## VII. Other Insurance

Such insurance as is provided by this **Coverage Section** shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over any applicable Limit of Liability for this policy or any **Coverage Section**. This policy specifically shall be excess of any other policy pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. For any **Claim** involving an **Outside Entity Executive**, this policy shall be specifically excess of any indemnification by the **Outside Entity** and any insurance coverage afforded to any such **Outside Entity Executive** or **Outside Entity.**

## VIII. Allocation

If both **Loss** covered under this **Coverage Section** and loss not covered under this **Coverage Section** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters and/or includes both covered and non-covered parties, then amounts incurred by the **Insured** on account of such **Claim** shall be allocated between covered **Loss** and non-covered loss based on the relative legal liability and financial exposure of the **Insureds**

to covered and non-covered matters and/or based on the relative legal and financial exposure of the covered and non-covered parties. The **Insureds** and **Insurer** agree to use their best efforts to determine a fair and proper allocation.

If the **Insureds** and the **Insurer** cannot agree on an allocation of covered **Loss** and non-covered loss:

A. the **Insurer** shall pay the amount of **Loss** that the **Insurer** and **Insureds** agree is not in dispute until a different allocation is negotiated, arbitrated, or judicially determined;
B. no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and
C. the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators.

## IX. Coverage under Coverage D

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **Coverage Section** for **Investigation Costs** not greater than 90 days after the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and such decision has been communicated to the security holders who made the demand upon the **Company**.

Nothing in this **Coverage Section**, including Coverage D, shall be construed to afford coverage for any **Claim** brought by the **Company** against one or more of its own **Executives**, other than **Investigation Costs** incurred in a covered **Derivative Demand** or as otherwise provided under Section III.F. of this **Coverage Section**.

## X. Order of Payments

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available Limits of Liability applicable to this **Coverage Section**, (including by virtue of the depletion of the Policy Aggregate Limit of Liability), then the **Insurer** shall:

A. first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**;
B. then pay such **Loss** for which coverage is provided under Coverage B of this **Coverage Section**; and
C. then pay such other **Loss** for which coverage is provided under this policy.

Upon the written request of the **Named Insured**, the **Insurer** shall either pay or withhold payment for **Loss** otherwise payable under Coverages B, C, or D. In the event that the **Insurer** withholds payment as requested by the **Named Insured**, then the **Insurer** shall at any time in the future, at the request of the **Named Insured**, release such **Loss** payment to a **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of any **Claim** under Coverage A of this **Coverage Section**. The **Insurer**'s liability with respect to any payments of **Loss** withheld shall not be increased, and shall not include any interest, as a result of such withholding.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **Coverage Section** pursuant to this Section X.

**ENDORSEMENT NUMBER**        1
**NAMED INSURED**                Celsius Network, Inc.
**POLICY NUMBER**                EFI1203088-00
**EFFECTIVE DATE**               May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐   Directors & Officers and Corporate Securities Liability Coverage Section
☒   Private Company Management Liability Coverage Section
☐   Investment Adviser Professional Liability Coverage Section
☐   Investment Fund Coverage Section
☐   Insurance Company Professional Liability Coverage Section
☐   Bankers Professional Liability Coverage Section
☐   Employment Practices Liability Coverage Section
☐   Fiduciary Liability Coverage Section

# PRIOR ACTS EXCLUSION

The coverage afforded by this policy shall not apply to any **Claims** based upon, arising out of, attributable to, or alleging any **Wrongful Act** committed or alleged to have been committed

- Solely as regards "Coverage A: Individual Insurance Coverage": **None**

- As regards all other coverage otherwise provided by this Policy: **04/24/2020**

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 2 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐      Directors & Officers and Corporate Securities Liability Coverage Section
☒      Private Company Management Liability Coverage Section
☐      Investment Adviser Professional Liability Coverage Section
☐      Investment Fund Coverage Section
☐      Insurance Company Professional Liability Coverage Section
☐      Bankers Professional Liability Coverage Section
☐      Employment Practices Liability Coverage Section
☐      Fiduciary Liability Coverage Section

# TCPA EXCLUSION

In consideration of the Premium charged, it is agreed that this Policy does not apply to any **Loss** or **Claim** based upon, arising out of or attributable to any actual or alleged violation of the Telephone Consumer Protection Act of 1991 or any similar foreign or state law restricting telemarketing.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CG 044 0416                 Page **1** of **1**

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 3 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## <u>CYBER AND DATA EXCLUSION</u>

In consideration of the Premium charged, it is agreed that:

1.  Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any **Loss** arising out of:

    •   a **Cyber Incident**;

    •   a **Cyber Act**; or

    •   a breach of **Data Protection Law** by the **Insured**, or parties acting for the **Insured**, involving access to, processing of, use of or operation of any **Computer System** or **Data**.

### <u>Definitions</u>

2.  **Computer System** means any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility, owned or operated by the Insured or any other party.

3.  **Cyber Act** means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or

hoax thereof involving access to, processing of, use of or operation of any **Computer System**.

4.  **Cyber Incident** means:

    4.1   any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any **Computer System**; or

    4.2   any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any **Computer System**.

5.  **Data** means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a **Computer System**.

6.  **Data Protection Law** means all applicable data protection and privacy legislation, regulations in any country, province, state, territory or jurisdiction which governs the use, confidentiality, integrity, security and protection of personal data, and any guidance or codes of practice issued by any data protection regulator or authority from time to time (all as amended, updated or re-enacted from time to time).

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 4 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐ Directors & Officers and Corporate Securities Liability Coverage Section
☒ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## EMPLOYMENT PRACTICES LIABILITY EXCLUSION

In consideration of the premium charged and irrespective of anything contained in this Policy to the contrary there shall be no coverage under the **Private Company Management Liability Coverage Section** for any **Employment Practice Claim** arising from an **Employment Practice Wrongful Act.** It is further agreed that for the purpose of this endorsement **Employment Practice Claim** and **Employment Practice Wrongful Act** shall be defined as follows:

**"Employment Practices Claim"** means any **Claim** brought by or on behalf of an **Employee**, an applicant for employment with the **Company**, or an **Independent Contractor** that is:

**(1)** a written demand for monetary or non-monetary relief (including, as example, a written demand for reinstatement of employment), including any arbitration or mediation that is commenced by a written request or demand for such proceeding, or a written request to waive or toll a statute of limitation;

**(2)** a civil judicial proceeding seeking monetary or non-monetary relief, including any appeal therefrom;

**(3)** a formal administrative or regulatory proceeding (including a proceeding brought by, on behalf of or before the Equal Employment Opportunity Commission (EEOC) or similar federal, state or local governmental agencies, including any appeal therefrom.

**"Employment Practices Claim"** also means an audit conducted by the United States of America Office of Federal Contract Compliance Programs (OFCCP).

An **Employment Practices Claim** shall be deemed to have been first made at the

earliest date of receipt by the **Company, Insured Person** or their agent of a written demand, notice of violation or charges or service of summons, subpoena, order to show cause or similar document commencing an investigation, lawsuit or proceeding against such **Insured Person** or the **Company**.

**"Employment Practices Wrongful Act"** means any actual or alleged:

(1) wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

**(2)** sexual or other workplace harassment, including quid pro quo and hostile work environment;

**(3)** employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

**(4) Retaliation**;

**(5)** breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

**(6)** violation of the Family and Medical Leave Act.

**Employment Practices Wrongful Act** shall also mean the following, but only when alleged in addition to or as part of any **Employment Practices Wrongful Act** described above:

**(a)** employment-related wrongful infliction of emotional distress;

**(b)** failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

**(c**) negligent retention, supervision, hiring or training; or

**(d)** employment-related invasion of privacy, defamation, or misrepresentation.

It is further agreed that **"Retaliation"** as used in this endorsement shall mean:

**"Retaliation"** means adverse treatment of an **Employee** or **Independent Contractor** based upon such person:

**(1)** exercising any rights under law, including, without limitation, rights under any workers compensation laws, the Family and Medical Leave Act, **ERISA**, or the Americans with Disabilities Act;

**(2)** refusing to violate any law;

**(3)** assisting, testifying, or cooperating with a proceeding or investigation regarding alleged violations of law by any **Insured**; or

**(4)** disclosing or threatening to disclose alleged violations of law to a superior or to any governmental agency;

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 5 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐ Directors & Officers and Corporate Securities Liability Coverage Section
☒ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## THEFT OR LOSS OF CRYPTO CURRENCY EXCLUSION

In consideration of the premium charged, it is agreed that Section III, Exclusions, of the Private Company Management Liability Coverage Section is amended by the addition of the following:

The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** alleging, arising out of, based upon, in consequence of or attributable to any theft, appropriation, misappropriation, conversion, loss, or disappearance of any crypto currency, crypto token or coin, digital token or coin, utility token or coin, or similar digital asset

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 6 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐     Directors & Officers and Corporate Securities Liability Coverage Section
☐     Private Company Management Liability Coverage Section
☐     Investment Adviser Professional Liability Coverage Section
☐     Investment Fund Coverage Section
☐     Insurance Company Professional Liability Coverage Section
☐     Bankers Professional Liability Coverage Section
☐     Employment Practices Liability Coverage Section
☐     Fiduciary Liability Coverage Section

## SPLIT CONTINUITY DATE

Item 5. of the applicable **Coverage Section** DECLARATIONS as indicated by above is deleted in its entirety and replaced with:

As regards the first $1,000,000 of limit:

- Solely as regards "Coverage A: Individual Insurance Coverage": **03/22/2018**

- As regards all other coverage otherwise provided by this Policy: **04/24/2020**

As regards the $500,000 x $1,000,000:

- **05/30/2021**

All other terms, conditions and limitations of this Policy shall remain unchanged.

CM 097 0620

**ENDORSEMENT NUMBER**       7
**NAMED INSURED**                    Celsius Network, Inc.
**POLICY NUMBER**                     EFI1203088-00
**EFFECTIVE DATE**                     May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐        Directors & Officers and Corporate Securities Liability Coverage Section
☐        Private Company Management Liability Coverage Section
☐        Investment Adviser Professional Liability Coverage Section
☐        Investment Fund Coverage Section
☐        Insurance Company Professional Liability Coverage Section
☐        Bankers Professional Liability Coverage Section
☐        Employment Practices Liability Coverage Section
☐        Fiduciary Liability Coverage Section

## CELSIUS NETWORK INITIAL COIN OFFERING EXCLUSION

In consideration of the premium charged, it is understood and agreed that Section III, Exclusions, is amended by the addition of the following:

The **Insurer** shall not be liable to pay any **Loss** in connection with any Claim alleging, arising out of, based upon, in consequence of, or attributable to any of the following:

1.  any initial coin offering(s )("ICO") or follow-on coin or token offering, including but not limited to any offering of the "CEL Token," executed by the **Insured**, whether such ICO is offered to the general public or other any other investor;
2.  any matter involving (1) above, brought by or on behalf of, or instigated by or continued with the assistance, solicitation, participation or intervention of any State or Federal regulatory or administrative agency or bureau or any other governmental, quasi-governmental orself-regulatory entity;

Provided, however, that this exclusion shall not apply to an action brought against the **Company** or any **Individual Insured** by a shareholder of the **Company** who:

a)  possesses an ownership in the **Company** that is not in the form of crypto currency, crypto token or coin, digital token or coin, or utility token or coin;
b)  did not acquire an ownership interest in the **Company** in an initial coin offering ("ICO") or any exchange where any crypto currency, crypto token or coin, digital token or coin, or utility token or coin, are traded; and
c)  did not acquire an ownership interest in the **Company** through any digital asset, utility coin, digital investment contract, or SAFT.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Page **1** of **1**

CM 098 0620

**ENDORSEMENT NUMBER**     8
**NAMED INSURED**     Celsius Network, Inc.
**POLICY NUMBER**     EFI1203088-00
**EFFECTIVE DATE**     May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

- ☐ Directors & Officers and Corporate Securities Liability Coverage Section
- ☒ Private Company Management Liability Coverage Section
- ☐ Investment Adviser Professional Liability Coverage Section
- ☐ Investment Fund Coverage Section
- ☐ Insurance Company Professional Liability Coverage Section
- ☐ Bankers Professional Liability Coverage Section
- ☐ Employment Practices Liability Coverage Section
- ☐ Fiduciary Liability Coverage Section

## AMEND COOPERATION CLAUSE ENDORSEMENT

In consideration of the premium charged, it is agreed that Section VI, "Defense Costs, Defense Counsel, Settlements & Judgments," is amended by adding the following to the end of paragraph C:

The failure of any **Individual Insured** to give the **Insurer** cooperation and information as required in the preceding paragraph shall not impair the rights of any other **Individual Insured** under this **Coverage Section**.

All other terms and conditions remain unchanged.

CM 041 1016        Page **1** of **1**

**ENDORSEMENT NUMBER**    9
**NAMED INSURED**    Celsius Network, Inc.
**POLICY NUMBER**    EFI1203088-00
**EFFECTIVE DATE**    May 30, 2021

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒    Directors & Officers and Corporate Securities Liability Coverage Section
☐    Private Company Management Liability Coverage Section
☐    Investment Adviser Professional Liability Coverage Section
☐    Investment Fund Coverage Section
☐    Insurance Company Professional Liability Coverage Section
☐    Bankers Professional Liability Coverage Section
☐    Employment Practices Liability Coverage Section
☐    Fiduciary Liability Coverage Section

## <u>PROFESSIONAL SERVICES E&O EXCLUSION</u>

The **Insurer** shall not be liable to pay any **Loss** from any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **Coverage Section**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 10 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2021 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## SECURITIES EXCLUSION

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. the public offer, sale, solicitation, or distribution of securities of a **Company** or an **Outside Entity**; or

2. the actual or alleged violation of any federal, state, local or provincial statute relating to securities, including but not limited to the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder;

provided, however, this exclusion will not apply to: i) any offer, purchase or sale of securities of a **Company**, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction"); or ii) any **Claim** made by a security holder of a **Company** for the failure of such **Company** to undertake or complete a public offering or sale of securities of such **Company**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CD 059 0721

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 11 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | February 7, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☐ Directors & Officers and Corporate Securities Liability Coverage Section
☒ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## AMENDED NAMED INSURED ADDRESS

The **Named Insured** Address shown in Item 1. **NAMED INSURED** of the General Declarations is amended to read:

121 River Street, Suite PH05
Hoboken, NJ 07030

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 12 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | May 30, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒    Directors & Officers and Corporate Securities Liability Coverage Section
☐    Private Company Management Liability Coverage Section
☐    Investment Adviser Professional Liability Coverage Section
☐    Investment Fund Coverage Section
☐    Insurance Company Professional Liability Coverage Section
☐    Bankers Professional Liability Coverage Section
☐    Employment Practices Liability Coverage Section
☐    Fiduciary Liability Coverage Section

## AMENDED POLICY PERIOD

In consideration of the additional premium of $12,164 charged, it is understood and agreed that Item 2. **POLICY PERIOD** of the General Declarations, and the applicable **Coverage Section** Declarations as indicated by above, is amended to read:

2.    **POLICY PERIOD**:    Inception:    May 30, 2021
                            Expiration:    June 15, 2022

The **Policy Period** incepts and expires as of 12:01 A.M. at the Named Insured Address.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NUMBER**      13
**NAMED INSURED**            Celsius Network, Inc.
**POLICY NUMBER**            EFI1203088-00
**EFFECTIVE DATE**           June 15, 2022

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒     Directors & Officers and Corporate Securities Liability Coverage Section
☐     Private Company Management Liability Coverage Section
☐     Investment Adviser Professional Liability Coverage Section
☐     Investment Fund Coverage Section
☐     Insurance Company Professional Liability Coverage Section
☐     Bankers Professional Liability Coverage Section
☐     Employment Practices Liability Coverage Section
☐     Fiduciary Liability Coverage Section

## AMENDED POLICY PERIOD

In consideration of the additional premium of $600,000 charged, it is understood and agreed that Item 2. **POLICY PERIOD** of the General Declarations, and the applicable **Coverage Section** Declarations as indicated by above, is amended to read:

2.    **POLICY PERIOD**:    Inception:    May 30, 2021
                            Expiration:   June 15, 2023

The **Policy Period** incepts and expires as of 12:01 A.M. at the Named Insured Address.

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 14 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | June 15, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## <u>AMEND DECLARATION PAGE – ITEM 4</u>

In consideration of the Premium charged, it is understood and agreed that:

Item 4. of the Declarations is deleted in its entirety and replaced with the following:

4. RETENTIONS

| | |
|---|---|
| (a) Each **Claim** under Coverage A: | $0 |
| (b) Each **Claim** other than a **Securities Claim** under Coverage B: | $2,500,000 |
| (c) Each **Securities Claim** under Coverage B or C: | $2,500,000 |
| (d) Each **Derivative Demand** under Coverage D: | $0 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

CD 050 0519                     Page **1** of **1**

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 15 |
| **NAMED INSURED** | Celsius Network, Inc. |
| **POLICY NUMBER** | EFI1203088-00 |
| **EFFECTIVE DATE** | July 22, 2022 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# NOTICE TO OTHERS ENDORSEMENT – SPECIFIC PARTY

If the **Insurer** cancels, non-renews, or materially modifies the Policy by notice to the **Named Insured** for any reason other than nonpayment of premium, it will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as it determines, to the persons or organizations listed in the schedule set out below (the "Schedule"). The **Named Insured** or its representative must provide the **Insurer** with both the physical and e-mail address of such persons or organizations, and it will endeavor to utilize such e-mail address or physical address that is provided to it on the Schedule.

The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation, non-renewal, or material modification of coverage. The **Insurer** has no legal obligation of any kind to any such person(s) or organization(s). The **Insurer's** failure to provide notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon the **Insurer**, its agents, or its representatives, nor will it extend any Policy cancellation date, nor negate any cancellation of the Policy.

The **Insurer** is not responsible for verifying any information provided to it in any Schedule, nor is it responsible for any incorrect information that the **Named Insured** or its representative provide to it.

The **Insurer** may arrange with the **Named Insured's** representative to send such notice in the event of any such cancellation.

The **Named Insured** will cooperate with the **Insurer** in providing, or in causing its representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.

CG 122 0722                          Page **1** of **2**

This endorsement does not apply if the **Named Insured** cancels the Policy.

## SCHEDULE

Office of the United States Trustee
Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY   10014

Email: USTPRegion02.NYECF@UST.DOJ.GOV

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NUMBER**     16
**NAMED INSURED**          Celsius Network, Inc.
**POLICY NUMBER**          EFI1203088-00
**EFFECTIVE DATE**         06/15/2022

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X"
below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the
COVERAGE SECTION(s) indicated by an "X" below

☒    Directors & Officers and Corporate Securities Liability Coverage Section
☐    Private Company Management Liability Coverage Section
☐    Investment Adviser Professional Liability Coverage Section
☐    Investment Fund Coverage Section
☐    Insurance Company Professional Liability Coverage Section
☐    Bankers Professional Liability Coverage Section
☐    Employment Practices Liability Coverage Section
☐    Fiduciary Liability Coverage Section

# AMENDED SECURITIES EXCLUSION – TO INCLUDE ADDITIONAL CARVEBACK FOR IPO ROADSHOW COVERAGE ENDORSEMENT

Endorsement #10 "Securities Exclusion" is deleted in its entirety and replaced with the following:

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way
involving:

1.  the public offer, sale, solicitation, or distribution of securities of a **Company** or an
    **Outside Entity**; or

2.  the actual or alleged violation of any federal, state, local or provincial statute relating
    to securities, including but not limited to the Securities Act of 1933 and the Securities
    and Exchange Act of 1934, or any rules or regulations promulgated thereunder;

provided, however, this exclusion will not apply to: i) any offer, purchase or sale of securities of
a **Company**, whether debt or equity, in a transaction that is exempt from registration under the
Securities Act of 1933 (an "Exempt Transaction"); ii) any **Claim** made by a security holder of a
**Company** for the failure of such **Company** to undertake or complete a public offering or sale of
securities of such **Company**; or iii) any **Claim** relating to a **Company's** preparation for any public
offering, including any road show presentation to potential investors or other similar
presentation, made by the **Company** and its **Executives** via any medium in connection with such
public offering, but solely if such public offering does not occur;

All other terms, conditions and limitations of this Policy shall remain unchanged.

CD 065 0423                          Page **1** of **1**

Underwritten by: Professional Solutions Insurance Company, 14001 University Avenue, Clive, IA 50325

## FOLLOW FORM EXCESS LIABILITY POLICY

## DECLARATIONS

**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED TO THE UNDERWRITER IN ACCORDANCE WITH THIS POLICY. DEFENSE EXPENSES ARE PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE EXPENSES. ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES OR OTHERWISE, NO COVERAGE IS AVAILABLE UNDER THIS POLICY FOR THE PAYMENT OF SETTLEMENTS OR JUDGMENTS. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**ITEM 1**

| NAMED INSURED AND ADDRESS | UNDERWRITER |
|---|---|
| Celsius Network, Inc.<br>221 River Street, 9th Floor, Suite 9129<br>Hoboken, NJ 07030 | Professional Solutions Insurance Company,<br>14001 University Avenue, Clive, IA 50325 |
| POLICY NUMBER | PRODUCER |
| FS461DMLA210 | RT ProExec (Chicago) |

**ITEM 2**    **POLICY AGGREGATE LIMIT OF LIABILITY:** $1,500,000

**ITEM 3**    **POLICY PERIOD:**        FROM  06/30/2021      TO  05/30/2022
                12:01 A.M. LOCAL TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE

**ITEM 4**    **NOTICE TO UNDERWRITER:**

Notice of Claim or Circumstances:                    All Other Notices:

Nexus Specialty, Inc.                    Nexus Specialty, Inc.
Attn: Claims                    Attn: Underwriting
25 Broadway, 9th Floor                    25 Broadway, 9th Floor
New York, NY 10004                    New York, NY 10004
notifications@nexusclaims.com                    NSIsubs@nexusunderwriting.com

**ITEM 5**    **POLICY PREMIUM:** $215,841.78        POLICY PREMIUM:$215,841.78
                            PLIGA Tax: $1,295.05
**ITEM 6**    **UNDERLYING INSURANCE:**        Policy Fee: $150.00
                            TOTAL: $217,286.83

(A)    **Followed Policy:**

| Insurer: | Coverage: | Policy Number: | Policy Period: | Limits of Liability: | Retention: |
|---|---|---|---|---|---|
| Certain Underwriters at Lloyd's | D&O | TBD | 05/30/21 to 05/30/22 | $1,500,000 | D&O - $1,500,000 |

(B)    Other **Underlying Insurance:**

| Insurer: | Policy Number: | Policy Period: | Limits of Liability: | Attachment: |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

**ITEM 7**        **FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE DATE THIS POLICY IS ISSUED**
**See attached Schedule of Forms and Endorsements**

nexus

<h1 style="text-align:center">FOLLOW FORM EXCESS LIABILILITY POLICY</h1>

In consideration of payment of the premium and in reliance on all statements made in the Application (as defined in the Followed Policy), and subject to the terms, conditions and limitations of this policy, including the Declarations and all endorsements hereto ("this Policy"), the Underwriter (shown on the Declarations) and the **Insured** agree as follows:

**I.      INSURING AGREEMENT**

Except as specifically set forth herein, and subject to the applicable Limit of Liability shown in ITEM 2 of the Declarations, this Policy shall provide insurance excess of the **Underlying Insurance** in conformance with all provisions of the **Followed Policy**. Liability shall attach to the Underwriter only after the full amount of the applicable **Underlying Limit**, and any applicable retention or deductible, has been paid, in legal currency, by the insurers of the **Underlying Insurance**, the **Insureds**, or others on behalf of the **Insureds**, in any combination, in accordance with the terms of the **Underlying Insurance**.

For the purposes of determining when the coverage afforded under this Policy shall attach, only actual payments for covered loss, including defense expenses, count towards reduction or exhaustion of the applicable retention(s) and the limits of liability of the Underlying Insurance.

**II.     DEFINITIONS**

When used in this Policy, the following terms, whether in the singular or plural, are defined as follows:

A.    **Followed Policy** means the policy scheduled as such in ITEM 6(A) of the Declarations.

B.    **Insured** means the person or organization shown in ITEM 1 of the Declarations and any person or organization included within the definition of **Insured** in the **Underlying Insurance**.

C.    **Underlying Insurance** means all insurance policies scheduled in ITEM 6 of the Declarations, including the **Followed Policy**.

**III.    LIMITS OF LIABILITY**

The amount stated in ITEM 2 of the Declarations is the Underwriter's maximum aggregate Limit of Liability under this Policy for all loss, including defense expenses. This Policy shall attach only in the event of exhaustion of the limits of liability of the **Underlying Insurance** and shall not drop down for any reason, including partial or total uncollectibility of the **Underlying Insurance**.

**IV.    CONDITIONS**

A.    Underlying Insurance: The **Insureds** shall give written notice to the Underwriter if any **Underlying Insurance** is changed or terminated or if any insurer of the **Underlying Insurance** becomes financially unable to pay its limit of insurance. No such event shall affect coverage under this Policy, unless the Underwriter so agrees in writing. The failure of the **Insureds** to comply with this section shall not invalidate coverage. However, the Underwriter shall not be liable to a greater extent than it would have been had no such event occurred.

B.    Sublimited Coverage: This Policy shall not apply to any coverage under the **Followed Policy** that is subject to a sublimit of liability of a lesser amount than that is Scheduled in ITEM 6 of

the Declarations, but payment for such coverage in any manner described in the INSURING AGREEMENT section of this Policy shall reduce the **Underlying Limit** by the amount of such payment.

C.  Association: The Underwriter has the right, but not the duty, to associate in the defense, investigation, or settlement of any claim reasonably likely to reach the attachment point of this Policy, even if the **Underlying Insurance** has not been exhausted.

D.  Cooperation: The **Insured** will cooperate with the Underwriter and provide the Underwriter with all information that the Underwriter reasonably requests.

E.  Changes and Assignment: No change in or modification of this Policy shall be effective, and no assignment of any interest under this Policy shall bind the Underwriter, unless agreed to in writing by the Underwriter.

F.  Notice: All notices to the Underwriter must be in writing and delivered to the address designated in ITEM 4 of Declarations. Notice to any other insurer shall not constitute notice to the Underwriter unless also given to the Underwriter as provided herein.

G.  Claims Control:  The Underwriter shall maintain full and complete control as respects coverage for claims under this Policy, and no action by any other insurer, or positions taken by any other insurer, shall bind the Underwriter under this Policy.

## V.    STATE AMENDATORY ENDORSEMENTS

In the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy, then, where permitted by law, the Underwriter shall apply those terms and conditions of either the state amendatory endorsement or this Policy which are more favorable to the **Insured**.

**ENDORSEMENT NO.** MXE-10003-12-19

SPECIFIC CLAIM OR MATTER EXCLUSION

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| Policy No. | FS461DMLA210 |
|---|---|
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

In consideration of the premium charged, no coverage will be available under this Policy for any claim or loss based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the claim or matter shown in the schedule below.

SPECIFIC CLAIM OR MATTER:

      WA State matter

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10009-12-19

PRIOR OR PENDING LITIGATION EXCLUSION ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| Policy No. | FS461DMLA210 |
|------------|--------------|
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

In consideration the premium charged, the following is added to Section I INSURING AGREEMENT:

This Policy excludes coverage for any claim or loss based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any (1) any demand, litigation, or alternative dispute resolution, administrative, regulatory, investigative, or arbitration proceeding which was pending as of, or existed prior to, the date shown in the SCHEDULE below; or (2) the same or substantially similar fact, circumstance, situation, transaction, event, act, error, or omission underlying or alleged in such demand, litigation, or alternative dispute resolution, administrative, regulatory, investigative, or arbitration proceeding.

| **Prior or Pending Litigation Date:** |
|---|
| 06/30/2021 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10011-07-20

DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| Policy No. | FS461DMLA210 |
|---|---|
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

1.  In accordance with the Terrorism Risk Insurance Act, the Underwriter is required to provide the Insured with a notice disclosing the premium, if any, attributable to coverage for Certified Acts of Terrorism.  The premium attributable to such coverage is $0.

2.  If coverage is provided by the Coverage Section(s) identified above for losses resulting from **Certified Acts of Terrorism**, such losses may be partially reimbursed by the United States Government under a formula established by federal law.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

3.  If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a calendar year and the Underwriter has met its insurer deductible under the Terrorism Risk Insurance Act ("the Act"), the Underwriter shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

4.  For the purposes of this endorsement, the DEFINITIONS Section of the Coverage Section identified above is amended to include the following terms:

     **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("the Act"), to be an act of terrorism pursuant to the Act.  The criteria contained in the Act for a **Certified Act of Terrorism** include the following:

a.  the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Act;

b.  the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NO.** MXE-10013-07-20

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on 06/30/2021, forms part of:

| Policy No. | FS461DMLA210 |
| Issued to | Celsius Network, Inc. |
| Issued by | Professional Solutions Insurance Company |

In consideration of the premium charged:

1.  If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a calendar year and the Underwriter has met its insurer deductible under the Terrorism Risk Insurance Act ("the Act"), the Underwriter shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

2.  For the purposes of this endorsement, the DEFINITIONS Section of the Coverage Section identified above is amended to include the following terms:

    **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("the Act"), to be an act of terrorism pursuant to the Act.  The criteria contained in the Act for a **Certified Act of Terrorism** include the following:

    a.  the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Act;

    b.  the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.



# TruXS Excess
# Liability Insurance Policy

**PLEASE READ YOUR POLICY CAREFULLY**
**If it is not correct, please return it immediately to:**

**HUDSON EXCESS INSURANCE COMPANY**
**100 William Street, 5th Floor**
**New York, NY 10038**
**212.978.2800**

# Hudson Excess Insurance Company

100 William Street, 5th Floor, New York, NY 10038 hereinafter "Insurer"

## TruXS℠ EXCESS LIABILITY POLICY

**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY AND COVERS ONLY CLAIMS FIRST MADE DURING THE POLICY PERIOD OR THE DISCOVERY PERIOD, IF EXERCISED, AND REPORTED TO THE INSURER AS PROVIDED HEREIN.  PLEASE READ THIS POLICY CAREFULLY.**

## <u>DECLARATIONS</u>

<u>Policy No.</u>
**HE-0303-7685**

Item 1.  Parent Company:    **Celsius Network Inc**
         Address:           **221 River Street**
                            **9th Floor**
                            **Hoboken, NJ  07030**

Item 2.  Policy Period:

         From 12:01 A.M.  **June 30, 2021**
         To    12:01 A.M.  **May 30, 2022**
         Local time at the address shown in Item 1.

Item 3.  Limit of Liability:

         **$1,500,000**  All Claims first made during each Policy Period

Item 4.  Underlying Insurance:

(A) Primary Policy:

| <u>Insurer</u> | <u>Policy Number</u> | <u>Limits</u> | <u>Policy Period</u> |
|---|---|---|---|
| **Certain Underwriters at Lloyd's of London - RenaissanceRe Syndicate 1458; Republic Vanguard Insurance Company** | **EFI1203088-00** | **$1,500,000** | **May 30, 2021 to May 30, 2022** |

(B) Underlying Excess Policy(ies):

| <u>Insurer</u> | <u>Policy Number</u> | <u>Limits</u> | <u>Policy Period</u> |
|---|---|---|---|
| **Professional Solutions Insurance Company** | **FS461DMLA210** | **$1,500,000** | **June 30, 2021 to May 30, 2022** |

Item 5.  Premium:        **$191,020**

Item 6.  Discovery Period:

         (A)  Additional Premium: **$382,040**

         (B)  Additional Period:    **One year**

**Hudson Excess Insurance Company**
100 William Street, 5th Floor
New York, NY 10038
hereinafter "Insurer"

Item 7.  Form number and endorsements attached at issuance:
Form No.:  **TruXS HG  Ed. 2/07**
Endorsements:
1.  **SS-NJ (05/17) - Service of Suit Endorsement - New Jersey**
2.  **HSIC TruXS E1   Ed.  2/07 - Pending or Prior Litigation Exclusion**
3.  **HSIC TRU-XS.A38 (02/21) - Amend Item 8 of the Declarations (FI)**
4.  **IL 09 85 01 21 (01/21) - Disclosure Pursuant to Terrorism Risk Insurance Act**
5.  **X-19 (01/21) - Cap on Losses from Certified Acts of Terrorism**

Item 8.  Notice to Insurer:

Hudson Insurance Group
100 William Street, 5th Floor
New York, NY 10038
Fax:  516.739.1862

Or

HFP-Claims@Hudsoninsgroup.com

Item 9.  Followed Policy:

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| **Certain Underwriters at Lloyd's of London - RenaissanceRe Syndicate 1458; Republic Vanguard Insurance Company** | **EFI1203088-00** | **$1,500,000** | **May 30, 2021 to May 30, 2022** |

In witness whereof, the Insurer has caused this Policy to be signed by its President and Secretary, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

08/24/2021          By: _____
Date                              Authorized Representative

## I.  INSURING AGREEMENT

The Insurer designated in the Declarations ("Insurer"), in consideration of the payment of the premium and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the **Insured**, and subject to all of the terms, conditions and other provisions of this policy, including endorsements hereto, agrees with the **Insured** that the Insurer shall provide the **Insured** with insurance during the **Policy Period** which is in excess of the total limits of liability and any retention or deductible amounts under the **Underlying Insurance**, as set forth in Item 4 of the Declarations, and shall pay **Loss** arising from a **Claim** for a **Wrongful Act** first made during the **Policy Period**.

## II.  POLICY DEFINITIONS

**A.**   **Insured** means any natural person or entity designated as such in the **Underlying Insurance**.

**B.** The terms **Followed Policy, Primary Policy, Policy Period,** and **Underlying Insurance** shall each have the same meaning as attributed to them in the Declarations.

**C.**  The terms **Wrongful Act**, **Loss** and **Claim** shall each have the same meaning as defined in the **Primary Policy**.

## III.  POLICY LIMIT OF LIABILITY AND PAYMENTS UNDER UNDERLYING INSURANCE

**A.**  The Insurer shall be liable to pay **Loss** only after any combination of the **Insured** and all insurers constituting the **Underlying Insurance** shall have paid the full amount of  liability provided by the **Underlying Insurance**, or  any insurer providing a coverage that is otherwise excess of this policy but with a difference in conditions provision shall have paid the full amount of any such insurer's liability solely due to the financial insolvency of that insurer. The Insurer shall then be liable to pay only such additional amount up to the Limit of Liability set forth in Item 3 of the Declarations.

**B.**  In the event of the reduction or exhaustion of the aggregate limits of liability in the **Underlying Insurance** by reason of **Loss** paid thereunder for **Claim(s)** first made during the **Policy Period**, this policy shall (1) in the event of reduction, continue in force in excess of the remaining amount of **Underlying Insurance**; or (2) in the event of total exhaustion, continue in force as primary insurance, subject to all terms, conditions and other provisions of this policy, including endorsements hereto; provided that in the event of this policy becoming primary insurance, it shall only pay excess of the retention or deductible amount set forth in the **Primary Policy**, which shall be applied to any subsequent loss. Notice of reduction or exhaustion of any limits of liability within the **Underlying Insurance** shall be given to the Insurer promptly upon such reduction or exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Insurer to defend any **Insured** or to pay defense costs or any other part of **Loss** in addition to the Limit of Liability set forth in Item 3 of the Declarations.

## IV.  MAINTENANCE OF UNDERLYING INSURANCE

**A.**  This policy is subject to the same terms, conditions, other provisions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in the **Followed Policy** identified in Item 9 of the Declarations  as such policy has been represented to the Insurer as to be issued, or as may be added at a later time to restrict coverage. Any changes made to such **Followed Policy** to expand or broaden it shall only be effective as part of this policy if accepted in writing by the Insurer.

**B.**  The **Underlying Insurance** shall be maintained in full effect while this policy is in force, except for any reduction of the aggregate limits contained therein (as provided for in Section III.B. above), and such maintenance shall be a condition precedent to the attachment of any liability of the Insurer under this policy. To the extent that any **Underlying Insurance** is not maintained in full effect while this policy is in force, the **Insured** shall be deemed to be self-insured for the amount of the limit of liability of the **Underlying Insurance,** which is not so maintained.

## V.   CLAIM AND OTHER NOTICES

The Insurer shall be given notice in writing as soon as practicable: (a) in the event of cancellation or non-renewal of any **Underlying Insurance**; and (b) of any additional or return premiums assessed in connection with any **Underlying Insurance**.  Any changes in policy provisions in the **Underlying Insurance** or any changes in the **Insured** that would require notice under the **Underlying Insurance** shall be reported to the Insurer in writing as soon as practicable, provided always that the Insurer shall not be bound by any such changes without its consent.

Written notice of **Claim** made against any **Insured** or any circumstances or matters that might later result in a **Claim** shall be given to the Insurer in the same manner and at the same time as given to the **Primary Policy** and shall be sent to the Insurer at the address set forth in Item 8 of the Declarations.

*IN WITNESS WHEREOF, We have caused this policy to be executed by our President and our Corporate Secretary at New York, New York.*

President                                            Secretary

Policy Number: **HE-0303-7685**                              Endorsement Number: **1**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

## SERVICE OF SUIT ENDORSEMENT - NEW JERSEY

It is hereby agreed by the Company and the Named Insured that:

In the event of a failure by the Company to pay any amount claimed to be due under this policy, the Company will, at the Named Insured's request, submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the court jurisdiction. Nothing in this endorsement constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  In a suit instituted against the Company under this contract, the Company agrees to abide by the final decision of the court or of any appellate court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision therefore, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or its beneficiary arising out of this contract of insurance.

The officer named below is authorized and directed to accept service of process on the Company's behalf:

**Commissioner of Insurance**
**20 West State Street**
**Trenton, NJ  08625-0325**

Having accepted service of process on the Company's behalf, the officer is authorized to mail the process or a true copy to:

**Dina G Daskalakis**
**Hudson Excess Insurance Company**
**Administrative Office**
**100 William Street, 5th floor**
**New York, NY  10038**

**All Other Terms and Conditions of This Policy Remain Unchanged.**

Policy Number: **HE-0303-7685**                    Endorsement Number: **2**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

PENDING OR PRIOR LITIGATION EXCLUSION
FOLLOW FORM UNDERLYING EXCEPT AS TO DATE

It is hereby agreed that:

The Insurer shall not be liable to make any payment under this policy for **Loss** resulting from any **Claim** made against an **Insured** for, based upon, arising from, or in any way related to any demand, suit, administrative or regulatory proceeding against or involving an **Insured** which was pending on or existed prior to 06/30/2021, or any **Claim** arising from the same or substantially the same facts, circumstances or allegations which are the subject of or basis for such demand, suit or proceeding described in this paragraph.

Notwithstanding the preceding paragraph, which is provided solely for identification and reference purposes, the Insurer shall follow form of and incorporate into this Policy, the substantively similar exclusion or endorsement found in Policy No. EFI1203088-00 issued by Certain Underwriters at Lloyd's of London - RenaissanceRe Syndicate 1458; Republic Vanguard Insurance Company as part of the **Underlying Insurance,** except that the operative date of such exclusion or endorsement shall remain as set forth in the preceding paragraph.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

Policy Number: **HE-0303-7685**                                Endorsement Number: **3**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

## AMEND ITEM 8 OF THE DECLARATIONS (FI)

It is hereby agreed that Item 8. of the DECLARATIONS is deleted in its entirety and replaced with the following:

Item 8. Address for Notices to Insurer:

**Send Claims related notices to:**          **Send all other notices to:**

Hudson Insurance Group                  Hudson Insurance Group
ATTN: **Claims Department**             ATTN: **Underwriting**
100 William Street, 5th Floor           100 William Street, 5th Floor
New York, NY  10038                     New York, NY  10038

or                                       or
HFP-Claims@HudsonInsGroup.com   HFI-Underwriting@HudsonInsGroup.com


**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE EFFECT THE PROVISIONS OF THIS ENDORSEMENT.**

Policy Number: **HE-0303-7685**                                Endorsement Number: **4**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT**

**SCHEDULE**

**SCHEDULE – PART I                    (Enter charge, even if -0-)**
**Terrorism Premium (Certified Acts) $0**

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**

**Excess Directors and Officers Liability Policy**
**Directors and Officers Liability Policy**


**Additional information, if any, concerning the terrorism premium:**
**N/A**

**SCHEDULE – PART II**
**Federal share of terrorism losses 80% Year: 20 20**
**(Refer to Paragraph B. in this endorsement.)**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.


**A. Disclosure Of Premium**
   In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**
   The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations)  of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the

IL 09 85 01 21 (01/21)                                                        Page 1

Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Includes material copyrighted by Insurance Services Office, Inc.**

Policy Number: **HE-0303-7685**                                             Endorsement Number: **5**
Effective at 12:01 a.m. Standard Time: **June 30, 2021**
Insurer: **Hudson Excess Insurance Company**
Named Insured: **Celsius Network Inc**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**Excess Directors and Officers Liability Policy**
**Directors and Officers Liability Policy**

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Program Reauthorization Act of 2019 - H.R. 1865 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.   The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to  the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.


**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED. THE TITLE OR HEADING TO THIS ENDORSEMENT IS INCLUDED SOLELY FOR EASE OF REFERENCE AND DOES NOT IN ANY WAY LIMIT, EXPAND, INTERPRET OR OTHERWISE AFFECT THE PROVISIONS OF THIS ENDORSEMENT.**


**Includes material copyrighted by Insurance Services Office, Inc.**



100 William Street, 5th Floor, New York, NY 10038



**DECLARATIONS**

**STARSTONE SPECIALTY INSURANCE COMPANY**
Harborside Five
185 Hudson Street, Suite 2600
Jersey City, New Jersey 07311
855-275-6041

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM EXCESS INSURANCE

**NOTICE: THIS IS A CLAIMS-MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY COVERS CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DEFENSE COSTS AND DAMAGES.  PLEASE READ THIS POLICY CAREFULLY.**

**NOTICE: THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THE NAMED INSURED'S STATE OF DOMICILE AND IS ISSUED AND DELIVERED AS A SURPLUS LINE COVERAGE PURSUANT TO THE INSURANCE STATUTES.**

POLICY NO: F77130210ASP

ITEM 1.   NAMED INSURED:   Celsius Network, Inc.

ADDRESS:   221 River Street
9th Floor
Hoboken, NJ 07030

ITEM 2.   POLICY PERIOD:   From:  June 30, 2021 to May 30, 2022
(12:01 A.M. local time at the address stated in Item 1.)

ITEM 3.   LIMIT OF LIABILITY:   a.  $1,500,000 each **Claim** (inclusive of defense costs)
b.  $1,500,000 in the aggregate (inclusive of defense costs)

ITEM 4.   PENDING & PRIOR DATE:   a.  06/25/2021
RETROACTIVE DATE:   b.  N/A

This Policy follows any Pending & Prior Litigation Exclusion or similar exclusion in the **Followed Policy**, except that the applicable date in such Exclusion shall be the date indicated in this Item 4.a.

This Policy follows any Retroactive Date Exclusion or similar exclusion in the **Followed Policy**, except that the applicable date in such Exclusion shall be the date indicated in this Item 4.b.

ITEM 5.   FOLLOWED POLICY:

| Insurer | Policy No. | Policy Term | Limits of Liability | Attachment |
|---|---|---|---|---|
| Lloyd's of London RenaissanceRe Syndicate 1458 | EFI1203088-00 | 05/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000each **Claim** |

ITEM 6.   UNDERLYING POLICY(IES):

| Insurer | Policy No. | Policy Term | Limits of Liability | Attachment |
|---|---|---|---|---|
| Lloyd's of London RenaissanceRe Syndicate 1458 | EFI1203088-00 | 05/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000 each **Claim** |

Whenever printed in this Declarations, the boldface type terms shall have the same meanings as indicated in the Policy Form.
SSS-MPL-EFF-DEC (01-17)



| Professional Solutions Insurance Company | FS461DMLA210 | 06/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000 each **Claim** |
| Hudson Excess Insurance Company | HE-0303-7685 | 06/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $3,000,000 each **Claim** |

ITEM 7.    POLICY PREMIUM:          $162,367

ITEM 8.    EXTENDED REPORTING PERIOD PREMIUM:  As per **Followed Policy**.

ITEM 9.    FORMS & ENDORSEMENTS:

These Declarations, together with the attached Policy Form and Endorsements as stated in the SSS-MPL-EFF-END-CW-001 (01-17) Policy Form Schedule and the **Application** (including all information furnished by the **Insured's** in the underwriting of this Policy), shall constitute the contract between the **Insureds** and the **Insurer** ("Policy").

ITEM 10.    NOTICE TO THE INSURER:

| A.    Address for Notice of Claim or Potential Claim: | B.    Address for all other Notices: |
| Attn:  StoneStone US Services Claims Office<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (877) 412-7985<br>Tel: (201) 830-2568<br>Email: claims@starstone.com | Attn:  StarStone US Services<br>Specialty Underwriting Department<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (201) 743-7701<br>Tel: (201) 743-7700 |

The **Insurer** hereby causes this Policy to be signed by a duly authorized representative of the **Insurer**.

_____
President

_____
Secretary

08/30/2021
DATE

POLICY PREMIUM: $162,367.00
SURPLUS LINES TAX: $8,118.35
TOTAL: $170,485.35



**STARSTONE**

Part of the Enstar Group

**Named Insured:** Celsius Network, Inc.      **Policy No:** F77130210ASP

**Endorsement No:** 1      **Effective Date:** June 30, 2021

**Premium:** Included

## Management and Professional Liability Follow Form Excess Insurance
## Policy Form Schedule

It is agreed that:

1. Item 9. Forms and Endorsements of the Declarations of this Policy is amended by the addition of the following:

   Item 9.  Forms and Endorsements:

| Form | Form Title |
|------|-----------|
| SSS-MPL-EFF-GTC (01-17) | Management and Professional Liability Follow Form Excess Insurance |
| SSS-MPL-EFF-END-CW-36 (10-19) | Enhancement Endorsement |
| SSS-MPL-EFF-END-CW-60 (01-17) | War And Terrorism Exclusion Endorsement |
| SSS-NOT-NJ (04.16) | New Jersey Notice |

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund

_Thomas J. Balkan_

_____      _____
President                          Secretary

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

SSS-MPL-EFF-END-CW-001 (01-17)                                      Page 1 of 1

**STARSTONE**

*Part of the Enstar Group*

Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
855-275-6041
www.starstone.com

# STARSTONE SPECIALTY INSURANCE COMPANY

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM  EXCESS INSURANCE

In consideration of the premium paid and in reliance on all statements made and information furnished by the **Insureds** in the **Application** and the underwriting of this Policy, and subject to the terms, conditions and limitations of this Policy, the **Insureds** agree with the **Insurer** as follows:

## I.  INSURING AGREEMENT

The **Insurer** shall provide excess coverage for **Claims** first made during the **Policy Period** or, if applicable, the extended reporting period. This Policy, except as stated herein, is subject to all of the terms, conditions, representations, limitations and restrictions contained in the **Followed Policy** as of the inception date of this Policy. In no event shall this Policy grant broader coverage than would be provided by the most restrictive **Underlying Policy**.

## II. CONDITIONS

### A. UNDERLYING INSURANCE

1. Liability for any covered **Loss** resulting from covered **Claims** shall attach to the **Insurer** only after the insurers of the **Underlying Policy(ies)**, the **Insureds** or any **DIC Insurer** have paid in legal currency **Loss** covered under the respective **Underlying Policy(ies)** equal to the full amount of the **Underlying Limit**. The **Insurer** shall then be liable to pay only covered **Loss** in excess of such **Underlying Limit** up to the Limit(s) of Liability specified in Item 3 of the Declarations.

2. This Policy shall drop down to the extent the **Underlying Limit** is paid as described in paragraph A.1. above and shall not drop down for any other reason including but not limited to uncollectability, in whole or in part, of any **Underlying Policy** or any insurance provided by a **DIC Insurer**. The risk of such uncollectability, whether because of financial impairment or insolvency or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the **Insurer**.

3. If any **Underlying Policy** contains a specific grant of coverage that is subject to a sublimit of liability or a supplementary payment, then this Policy shall not provide such coverage.  However, this Policy shall recognize any reduction and, if applicable, exhaustion of the **Underlying Limit** by payment under such coverage.

4. Any and all **Underlying Policy(ies)** shall be maintained in full force and effect. In the event of failure to maintain any **Underlying Policy(ies)**, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been maintained.

### B. LIMITS OF LIABILITY AND RETENTION

1. If an each **Claim** Limit of Liability is specified in Item 3.a. of the Declarations, the maximum liability of the **Insurer** for all **Loss**, including without limitation defense costs, arising from each **Claim** covered under this Policy shall not exceed the each **Claim** Limit of Liability specified in Item 3.a. of the Declarations.

2. The maximum liability of the **Insurer** for the combined total of all **Loss**, including without limitation defense costs, arising from any and all **Claims** covered under this Policy shall not exceed the aggregate Limit of Liability specified in Item 3.b. of the Declarations.

3. If this Policy drops down because of the exhaustion of the **Underlying Limit**, the applicable deductible, retention and/or coinsurance of the **Followed Policy** shall apply to each **Claim** handled by the **Insurer** on a primary basis.

### C. REPORTING AND NOTICE REQUIREMENTS

1. All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** shall be given to the **Named Insured** at the address as shown in Item 1 of the Declarations.

2. Where the **Followed Policy** permits or requires notice to its insurer, including notice of a **Claim** or potential **Claim**, then as a condition precedent to the obligations of the **Insurer** under this Policy, the **Insureds** shall, contemporaneously with and according to the terms of the **Followed Policy**, give the same written notice to the **Insurer** at the applicable address shown in Item 10 of the Declarations.

**STARSTONE**
Part of the Enstar Group

3. The **Insurer** may, at its sole discretion, fully and effectively associate with the **Insureds** in the investigation, defense and/or settlement of any **Claim** or potential **Claim** reported to the **Insurer** under this Policy even if the **Underlying Limit** has not been exhausted. The **Insureds** shall give the **Insurer** all information and cooperation as the **Insurer** may reasonably require.

### D. EXTENDED REPORTING PERIOD COVERAGE

If the **Insureds** elect and secure extended reporting period coverage in all unexhausted **Underlying Policies**, the **Insureds** shall also be entitled to elect an extended reporting period under this Policy; provided however, in no event shall the duration of the extended reporting period under this Policy be greater than the duration of the extended reporting period under any unexhausted **Underlying Policy**. Such extended reporting period shall follow form to, and apply in conformance with, the provisions of the **Followed Policy**.

The right to purchase the extended reporting period under this Policy is conditioned upon satisfaction of the same conditions as specified in the **Followed Policy**. The additional premium for the extended reporting period under this Policy shall be calculated at the same percentage of this Policy's annual premium as the percentage stated in the **Followed Policy** for calculating the extended reporting period premium thereunder. The right to purchase extended reporting period coverage under this Policy shall lapse unless written notice of such election, together with payment of the additional premium due, is given to the **Insurer** within the time specified in the **Followed Policy**. The entire premium for the extended reporting period shall be deemed fully earned and non-refundable upon payment.

The Limit(s) of Liability for the extended reporting period, if exercised, shall be part of and not in addition to the Limit(s) of Liability specified in Item 3 of the Declarations. The purchase of the extended reporting period shall not increase or reinstate the Limit(s) of Liability of this Policy.

### E. CHANGES

To the extent any term, condition, representation, limitation or restriction of any of the **Underlying Policy(ies)** is changed during the **Policy Period** and/or, if applicable, the extended reporting period, this Policy shall automatically become subject to any such change that limits or restricts coverage. This Policy shall become subject to any such change that expands or broadens coverage only if and to the extent the **Insurer** agrees to such change in writing. Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

## III. DEFINITIONS

Whenever printed in boldface type, and whether in singular or plural form in this Policy, the following terms shall have the meanings indicated below. Any term used in this Policy that is defined in the **Followed Policy**, including but not limited to **Application**, **Claim** and **Loss**, shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy** unless otherwise stated herein.

1. **DIC Insurer** means any insurer of an insurance policy written specifically excess of this Policy that is contractually obligated to drop down and pay covered **Loss** that is not paid by any **Underlying Policy**. This Policy does not follow form to the provisions of the policy of such **DIC Insurer**.

2. **Followed Policy** means the policy specified in Item 5 of the Declarations.

3. **Insurer** means the insurance company shown at the top of the Declarations.

4. **Insureds** means all natural persons and entities insured by the **Followed Policy**.

5. **Named Insured** means the person or entity named in Item 1 of the Declarations.

6. **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination in accordance with the **Followed Policy**.

7. **Underlying Limit** means an amount equal to the total limits of liability of all **Underlying Policies**, plus the retention, deductible, and/or coinsurance, if any, applicable under the **Underlying Policy(ies)**.

8. **Underlying Policy(ies)** means the **Followed Policy** and any other policies listed in Item 6 of the Declarations.

## IV. SERVICE OF SUIT CLAUSE

The **Insurer** appoints the highest state official in charge of insurance affairs (Commissioner of Insurance, Director of Insurance, Insurance Commissioner, Executive Secretary, Superintendent of Insurance, or such other official title as designated by the state) of the **Insured's** domiciliary state and his/her successor or successors in office as his/her and their duly authorized deputies, as the **Insurer's** true and lawful attorney in and for the aforesaid state, upon whom all lawful process may be served in any action, suit or proceeding instituted in the **Insured's** domiciliary state by or on behalf of any **Insured** or beneficiary against the **Insurer** arising out of this Policy, provided a copy of any process, suit, complaint or summons is sent by certified or registered mail to:

**STARSTONE**

Part of the Enstar Group

Thomas Balkan
Secretary
StarStone US Companies
150 2nd Avenue North
Third Floor
St Petersburg, FL 33701
Facsimile: (727) 576-3627
Tel: (727) 217-2908
Email: thomas.balkan@enstargroup.com

IN WITNESS WHEREOF, the **Insurer** has caused this Policy to be signed by its President and Secretary, and, if required by state law, this Policy will not be valid unless countersigned by a duly authorized representative of the **Insurer**.

_____
President

_____
Secretary



**STARSTONE**
Part of the Enstar Group

**Named Insured:** Celsius Network, Inc.                    **Policy No:** F77130210ASP

**Endorsement No:** 2                                       **Effective Date:** June 30, 2021

**Premium:** Included


## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM  EXCESS INSURANCE POLICY ENHANCEMENT ENDORSEMENT


It is agreed that:

I.   Section I. Insuring Agreement of this Policy is deleted in its entirety and replaced with the following:

**I.   INSURING AGREEMENT**

The **Insurer** shall provide excess coverage for **Claims** first made during the **Policy Period** or, if applicable, the extended reporting period. This Policy, except as stated herein, is subject to all of the terms, conditions, representations, limitations and restrictions contained in the **Followed Policy** as of the inception date of this Policy. In no event shall this Policy grant broader coverage than would be provided by the **Followed Policy**.

II.  With respect to Section II. Conditions, A. Underlying Insurance of this Policy, subsections 1 and 2 are deleted in their entirety and replaced with the following:

1.   Liability for any covered **Loss** resulting from covered **Claims** shall attach to the **Insurer** only after the insurers of the **Underlying Policy(ies)**, the **Insureds** or any **DIC Insurer** or other party have paid in legal currency **Loss** covered under the respective **Underlying Policy(ies)** equal to the full amount of the **Underlying Limit**. The **Insurer** shall then be liable to pay only covered **Loss** in excess of such **Underlying Limit** up to the Limit(s) of Liability specified in Item 3 of the Declarations.

2.   This Policy shall drop down to the extent the **Underlying Limit** is paid as described in paragraph A.1. above and shall not drop down for any other reason including but not limited to uncollectability, in whole or in part, of any **Underlying Policy** or any insurance provided by a **DIC Insurer**.

III. Section II. Conditions, C. Reporting and Notice Requirements of this Policy is deleted in its entirety and replaced with the following:

**C.   REPORTING AND NOTICE REQUIREMENTS**

1.   All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** shall be given to the **Named Insured** at the address as shown in Item 1 of the Declarations.

2.   Where the **Followed Policy** permits or requires notice to its insurer, including notice of a **Claim** or potential **Claim**, then as a condition precedent to the obligations of the **Insurer** under this Policy, the **Insureds** shall, contemporaneously with and according to the terms of the **Followed Policy**, give the same written notice to the **Insurer** at the applicable street address or email address shown in Item 10 of the Declarations.

3.   The **Insurer** may, at its sole discretion, associate with the **Insureds** in the investigation, defense and/or settlement of any **Claim** or potential **Claim** reported to the **Insurer** and reasonably expected to involve this Policy even if the **Underlying Limit** has not been exhausted.

IV.  Section II. Conditions, D. Extended Reporting Period Coverage of this Policy is deleted in its entirety and replaced with the following:

**D. EXTENDED REPORTING PERIOD COVERAGE**

If the **Insureds** elect and secure extended reporting period coverage in all unexhausted **Underlying Policies**, the **Insureds** shall also be entitled to elect an extended reporting period under this Policy; provided however, in no event shall the duration of the extended reporting period under this Policy be greater than the duration of the extended reporting period under any unexhausted **Underlying Policy**. The right to purchase the extended reporting period under this Policy is conditioned upon satisfaction of the same conditions as specified in the **Followed Policy** and such extended reporting period shall follow form to, and apply in conformance with, the provisions of the **Followed Policy**.

The Limit(s) of Liability for the extended reporting period, if exercised, shall be part of and not in addition to the Limit(s) of Liability specified in Item 3 of the Declarations. The purchase of the extended reporting period shall not increase or reinstate the Limit(s) of Liability of this Policy.

V. Section II. Conditions, E. Changes of this Policy is deleted in its entirety and replaced with the following:

**E. CHANGES**

To the extent any term, condition, representation, limitation or restriction of the **Followed Policy** is changed during the **Policy Period** and/or, if applicable, the extended reporting period, this Policy shall automatically become subject to any such change that limits or restricts coverage. This Policy shall become subject to any such change that expands or broadens coverage only if and to the extent the **Insurer** agrees to such change in writing. Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

VI. Section III. Definitions, 4. **Insureds** and 5. **Named Insured** are deleted in their entirety and replaced with the following:

4. **Insureds** shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy**.

5. **Named Insured** shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy**.

_____
President

_____
Secretary

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



**Named Insured:** Celsius Network, Inc.

**Policy No:** F77130210ASP

**Endorsement No:** 3

**Effective Date:** June 30, 2021

**Premium:** Included

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM EXCESS INSURANCE WAR, TERRORISM AND MILITARY ACTION EXCLUSION ENDORSEMENT

It is agreed that:

1. The following exclusion is added to this Policy:

   This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action to defend against or hinder an actual or expected attack by any government, sovereign or other authority using military personnel or other agents;

   c. **Terrorism**, including any action taken to defend against or hinder any actual or expected **Terrorism**; or

   d. Insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, riot, usurped power, rebellion, revolution, or action taken by governmental authority to defend against or hinder any of these;

2. As used in this endorsement, **Terrorism** means activities against persons, organizations or property that involve the following or preparation for the following:

   a. use of threat or violence, or commission or threat of a dangerous act; or

   b. commission or threat of an act that interferes with or disrupts infrastructure or any electronic, communication, information or mechanical system;

   when the effect is to intimidate or coerce the civilian population, any segment of the economy, or to influence the policy or conduct of the government by coercion, or to further political, ideological, religious, social or economic objectives or to express a philosophy or opposition to a philosophy.

_____
President

_____
Secretary

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



# STARSTONE SPECIALTY INSURANCE COMPANY

**Harborside 5**
**185 Hudson Street, Suite 2600**
**Jersey City, New Jersey  07311**
**855-275-6041**

**NEW JERSEY SURPLUS LINES POLICY NOTICE**

**THIS POLICY IS WRITTEN BY A SURPLUS LINES INSURER AND IS NOT SUBJECT TO THE FILING OR APPROVAL REQUIREMENTS OF THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. SUCH A POLICY MAY CONTAIN CONDITIONS, LIMITATIONS, EXCLUSIONS AND DIFFERENT TERMS THAN A POLICY ISSUED BY AN INSURER GRANTED A CERTIFICATE OF AUTHORITY BY THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. THE INSURER HAS BEEN APPROVED BY THE DEPARTMENT AS AN ELIGIBLE SURPLUS LINES INSURER, BUT THE POLICY IS NOT COVERED BY THE NEW JERSEY INSURANCE GUARANTY FUND, AND ONLY A POLICY OF MEDICAL MALPRACTICE LIABILITY INSURANCE AS DEFINED IN N.J.S.A. 17:30D-3D OR A POLICY OF PROPERTY INSURANCE COVERING OWNER-OCCUPIED DWELLINGS OF LESS THAN FOUR DWELLING UNITS ARE COVERED BY THE NEW JERSEY SURPLUS LINES GUARANTY FUND.**



**DECLARATIONS**

**STARSTONE SPECIALTY INSURANCE COMPANY**
Harborside Five
185 Hudson Street, Suite 2600
Jersey City, New Jersey 07311
855-275-6041

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM EXCESS INSURANCE

**NOTICE: THIS IS A CLAIMS-MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY COVERS CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DEFENSE COSTS AND DAMAGES. PLEASE READ THIS POLICY CAREFULLY.**

**NOTICE: THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THE NAMED INSURED'S STATE OF DOMICILE AND IS ISSUED AND DELIVERED AS A SURPLUS LINE COVERAGE PURSUANT TO THE INSURANCE STATUTES.**

POLICY NO: F77130210ASP

ITEM 1.   NAMED INSURED:   Celsius Network, Inc.

ADDRESS:        221 River Street
                9th Floor
                Hoboken, NJ 07030

ITEM 2.   POLICY PERIOD:       From:  June 30, 2021 to May 30, 2022
                               (12:01 A.M. local time at the address stated in Item 1.)

ITEM 3.   LIMIT OF LIABILITY:   a.  $1,500,000 each **Claim** (inclusive of defense costs)
                                b.  $1,500,000 in the aggregate (inclusive of defense costs)

ITEM 4.   PENDING & PRIOR DATE:   a.  06/25/2021
          RETROACTIVE DATE:       b.  N/A
          This Policy follows any Pending & Prior Litigation Exclusion or similar exclusion in the **Followed Policy**, except that the applicable date in such Exclusion shall be the date indicated in this Item 4.a.
          This Policy follows any Retroactive Date Exclusion or similar exclusion in the **Followed Policy**, except that the applicable date in such Exclusion shall be the date indicated in this Item 4.b.

ITEM 5.   FOLLOWED POLICY:

| Insurer | Policy No. | Policy Term | Limits of Liability | Attachment |
|---|---|---|---|---|
| Lloyd's of London RenaissanceRe Syndicate 1458 | EFI1203088-00 | 05/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000each **Claim** |

ITEM 6.   UNDERLYING POLICY(IES):

| Insurer | Policy No. | Policy Term | Limits of Liability | Attachment |
|---|---|---|---|---|
| Lloyd's of London RenaissanceRe Syndicate 1458 | EFI1203088-00 | 05/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000 each **Claim** |

Whenever printed in this Declarations, the boldface type terms shall have the same meanings as indicated in the Policy Form.
SSS-MPL-EFF-DEC (01-17)



| Professional Solutions Insurance Company | FS461DMLA210 | 06/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $1,500,000 each **Claim** |
| Hudson Excess Insurance Company | HE-0303-7685 | 06/30/2021 to 05/30/2022 | $1,500,000 each **Claim** $1,500,000 Aggregate | $3,000,000 each **Claim** |

ITEM 7.  POLICY PREMIUM:         $162,367

ITEM 8.  EXTENDED REPORTING PERIOD PREMIUM:  As per **Followed Policy**.

ITEM 9.   FORMS & ENDORSEMENTS:

These Declarations, together with the attached Policy Form and Endorsements as stated in the SSS-MPL-EFF-END-CW-001 (01-17) Policy Form Schedule and the **Application** (including all information furnished by the **Insured's** in the underwriting of this Policy), shall constitute the contract between the **Insureds** and the **Insurer** ("Policy").

ITEM 10.  NOTICE TO THE INSURER:

| A.  Address for Notice of Claim or Potential Claim: | B.  Address for all other Notices: |
| Attn:  StarStone US Services Claims Office<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (877) 412-7985<br>Tel: (201) 830-2568<br>Email: claims@starstone.com | Attn:  StarStone US Services<br>Specialty Underwriting Department<br>Harborside Five<br>185 Hudson Street, Suite 2600<br>Jersey City, New Jersey 07311<br>Facsimile: (201) 743-7701<br>Tel: (201) 743-7700 |

The **Insurer** hereby causes this Policy to be signed by a duly authorized representative of the **Insurer**.

_____
President

_____
Secretary

08/30/2021
DATE

POLICY PREMIUM: $162,367.00
SURPLUS LINES TAX: $8,118.35
TOTAL: $170,485.35

Whenever printed in this Declarations, the boldface type terms shall have the same meanings as indicated in the Policy Form.



**Named Insured:** Celsius Network, Inc.

**Policy No:** F77130210ASP

**Endorsement No:** 1

**Effective Date:** June 30, 2021

**Premium:** Included

## Management and Professional Liability Follow Form Excess Insurance
## Policy Form Schedule

It is agreed that:

1. Item 9. Forms and Endorsements of the Declarations of this Policy is amended by the addition of the following:

   Item 9.  Forms and Endorsements:

   | Form | Form Title |
   | --- | --- |
   | SSS-MPL-EFF-GTC (01-17) | Management and Professional Liability Follow Form Excess Insurance |
   | SSS-MPL-EFF-END-CW-36 (10-19) | Enhancement Endorsement |
   | SSS-MPL-EFF-END-CW-60 (01-17) | War And Terrorism Exclusion Endorsement |
   | SSS-NOT-NJ (04.16) | New Jersey Notice |

**This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund**

_Thomas J. Balkan_

_____                          _____
President                                             Secretary

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
855-275-6041
www.starstone.com

**STARSTONE**

Part of the Enstar Group

# STARSTONE SPECIALTY INSURANCE COMPANY

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM  EXCESS INSURANCE

In consideration of the premium paid and in reliance on all statements made and information furnished by the **Insureds** in the **Application** and the underwriting of this Policy, and subject to the terms, conditions and limitations of this Policy, the **Insureds** agree with the **Insurer** as follows:

## I. INSURING AGREEMENT

The **Insurer** shall provide excess coverage for **Claims** first made during the **Policy Period** or, if applicable, the extended reporting period. This Policy, except as stated herein, is subject to all of the terms, conditions, representations, limitations and restrictions contained in the **Followed Policy** as of the inception date of this Policy. In no event shall this Policy grant broader coverage than would be provided by the most restrictive **Underlying Policy**.

## II. CONDITIONS

## A. UNDERLYING INSURANCE

1. Liability for any covered **Loss** resulting from covered **Claims** shall attach to the **Insurer** only after the insurers of the **Underlying Policy(ies)**, the **Insureds** or any **DIC Insurer** have paid in legal currency **Loss** covered under the respective **Underlying Policy(ies)** equal to the full amount of the **Underlying Limit**. The **Insurer** shall then be liable to pay only covered **Loss** in excess of such **Underlying Limit** up to the Limit(s) of Liability specified in Item 3 of the Declarations.

2. This Policy shall drop down to the extent the **Underlying Limit** is paid as described in paragraph A.1. above and shall not drop down for any other reason including but not limited to uncollectability, in whole or in part, of any **Underlying Policy** or any insurance provided by a **DIC Insurer**. The risk of such uncollectability, whether because of financial impairment or insolvency or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the **Insurer**.

3. If any **Underlying Policy** contains a specific grant of coverage that is subject to a sublimit of liability or a supplementary payment, then this Policy shall not provide such coverage.  However, this Policy shall recognize any reduction and, if applicable, exhaustion of the **Underlying Limit** by payment under such coverage.

4. Any and all **Underlying Policy(ies)** shall be maintained in full force and effect. In the event of failure to maintain any **Underlying Policy(ies)**, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been maintained.

## B. LIMITS OF LIABILITY AND RETENTION

1. If an each **Claim** Limit of Liability is specified in Item 3.a. of the Declarations, the maximum liability of the **Insurer** for all **Loss**, including without limitation defense costs, arising from each **Claim** covered under this Policy shall not exceed the each **Claim** Limit of Liability specified in Item 3.a. of the Declarations.

2. The maximum liability of the **Insurer** for the combined total of all **Loss**, including without limitation defense costs, arising from any and all **Claims** covered under this Policy shall not exceed the aggregate Limit of Liability specified in Item 3.b. of the Declarations.

3. If this Policy drops down because of the exhaustion of the **Underlying Limit**, the applicable deductible, retention and/or coinsurance of the **Followed Policy** shall apply to each **Claim** handled by the **Insurer** on a primary basis.

## C. REPORTING AND NOTICE REQUIREMENTS

1. All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** shall be given to the **Named Insured** at the address as shown in Item 1 of the Declarations.

2. Where the **Followed Policy** permits or requires notice to its insurer, including notice of a **Claim** or potential **Claim**, then as a condition precedent to the obligations of the **Insurer** under this Policy, the **Insureds** shall, contemporaneously with and according to the terms of the **Followed Policy**, give the same written notice to the **Insurer** at the applicable address shown in Item 10 of the Declarations.



3.  The **Insurer** may, at its sole discretion, fully and effectively associate with the **Insureds** in the investigation, defense and/or settlement of any **Claim** or potential **Claim** reported to the **Insurer** under this Policy even if the **Underlying Limit** has not been exhausted. The **Insureds** shall give the **Insurer** all information and cooperation as the **Insurer** may reasonably require.

**D. EXTENDED REPORTING PERIOD COVERAGE**

If the **Insureds** elect and secure extended reporting period coverage in all unexhausted **Underlying Policies**, the **Insureds** shall also be entitled to elect an extended reporting period under this Policy; provided however, in no event shall the duration of the extended reporting period under this Policy be greater than the duration of the extended reporting period under any unexhausted **Underlying Policy**. Such extended reporting period shall follow form to, and apply in conformance with, the provisions of the **Followed Policy**.

The right to purchase the extended reporting period under this Policy is conditioned upon satisfaction of the same conditions as specified in the **Followed Policy**. The additional premium for the extended reporting period under this Policy shall be calculated at the same percentage of this Policy's annual premium as the percentage stated in the **Followed Policy** for calculating the extended reporting period premium thereunder. The right to purchase extended reporting period coverage under this Policy shall lapse unless written notice of such election, together with payment of the additional premium due, is given to the **Insurer** within the time specified in the **Followed Policy**.  The entire premium for the extended reporting period shall be deemed fully earned and non-refundable upon payment.

The Limit(s) of Liability for the extended reporting period, if exercised, shall be part of and not in addition to the Limit(s) of Liability specified in Item 3 of the Declarations. The purchase of the extended reporting period shall not increase or reinstate the Limit(s) of Liability of this Policy.

**E. CHANGES**

To the extent any term, condition, representation, limitation or restriction of any of the **Underlying Policy(ies)** is changed during the **Policy Period** and/or, if applicable, the extended reporting period, this Policy shall automatically become subject to any such change that limits or restricts coverage. This Policy shall become subject to any such change that expands or broadens coverage only if and to the extent the **Insurer** agrees to such change in writing. Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

## III. DEFINITIONS

Whenever printed in boldface type, and whether in singular or plural form in this Policy, the following terms shall have the meanings indicated below.  Any term used in this Policy that is defined in the **Followed Policy**, including but not limited to **Application**, **Claim** and **Loss**, shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy** unless otherwise stated herein.

1.  **DIC Insurer** means any insurer of an insurance policy written specifically excess of this Policy that is contractually obligated to drop down and pay covered **Loss** that is not paid by any **Underlying Policy**. This Policy does not follow form to the provisions of the policy of such **DIC Insurer**.

2.  **Followed Policy** means the policy specified in Item 5 of the Declarations.

3.  **Insurer** means the insurance company shown at the top of the Declarations.

4.  **Insureds** means all natural persons and entities insured by the **Followed Policy**.

5.  **Named Insured** means the person or entity named in Item 1 of the Declarations.

6.  **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination in accordance with the **Followed Policy**.

7.  **Underlying Limit** means an amount equal to the total limits of liability of all **Underlying Policies**, plus the retention, deductible, and/or coinsurance, if any, applicable under the **Underlying Policy(ies)**.

8.  **Underlying Policy(ies)** means the **Followed Policy** and any other policies listed in Item 6 of the Declarations.

## IV. SERVICE OF SUIT CLAUSE

The **Insurer** appoints the highest state official in charge of insurance affairs (Commissioner of Insurance, Director of Insurance, Insurance Commissioner, Executive Secretary, Superintendent of Insurance, or such other official title as designated by the state) of the **Insured's** domiciliary state and his/her successor or successors in office as his/her and their duly authorized deputies, as the **Insurer's** true and lawful attorney in and for the aforesaid state, upon whom all lawful process may be served in any action, suit or proceeding instituted in the **Insured's** domiciliary state by or on behalf of any **Insured** or beneficiary against the **Insurer** arising out of this Policy, provided a copy of any process, suit, complaint or summons is sent by certified or registered mail to:

**STARSTONE**
Part of the Enstar Group

Thomas Balkan
Secretary
StarStone US Companies
150 2nd Avenue North
Third Floor
St Petersburg, FL 33701
Facsimile: (727) 576-3627
Tel: (727) 217-2908
Email: thomas.balkan@enstargroup.com

IN WITNESS WHEREOF, the **Insurer** has caused this Policy to be signed by its President and Secretary, and, if required by state law, this Policy will not be valid unless countersigned by a duly authorized representative of the **Insurer**.

_____
President

_____
Secretary



**Named Insured:** Celsius Network, Inc.

**Policy No:** F77130210ASP

**Endorsement No:** 2

**Effective Date:** June 30, 2021

**Premium:** Included

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM  EXCESS INSURANCE POLICY ENHANCEMENT ENDORSEMENT

It is agreed that:

I.  Section I. Insuring Agreement of this Policy is deleted in its entirety and replaced with the following:

   **I.  INSURING AGREEMENT**

   The **Insurer** shall provide excess coverage for **Claims** first made during the **Policy Period** or, if applicable, the extended reporting period. This Policy, except as stated herein, is subject to all of the terms, conditions, representations, limitations and restrictions contained in the **Followed Policy** as of the inception date of this Policy. In no event shall this Policy grant broader coverage than would be provided by the **Followed Policy**.

II.  With respect to Section II. Conditions, A. Underlying Insurance of this Policy, subsections 1 and 2 are deleted in their entirety and replaced with the following:

   1.  Liability for any covered **Loss** resulting from covered **Claims** shall attach to the **Insurer** only after the insurers of the **Underlying Policy(ies)**, the **Insureds** or any **DIC Insurer** or other party have paid in legal currency **Loss** covered under the respective **Underlying Policy(ies)** equal to the full amount of the **Underlying Limit**. The **Insurer** shall then be liable to pay only covered **Loss** in excess of such **Underlying Limit** up to the Limit(s) of Liability specified in Item 3 of the Declarations.

   2.  This Policy shall drop down to the extent the **Underlying Limit** is paid as described in paragraph A.1. above and shall not drop down for any other reason including but not limited to uncollectability, in whole or in part, of any **Underlying Policy** or any insurance provided by a **DIC Insurer**.

III.  Section II. Conditions, C. Reporting and Notice Requirements of this Policy is deleted in its entirety and replaced with the following:

   **C.  REPORTING AND NOTICE REQUIREMENTS**

   1.  All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** shall be given to the **Named Insured** at the address as shown in Item 1 of the Declarations.

   2.  Where the **Followed Policy** permits or requires notice to its insurer, including notice of a **Claim** or potential **Claim**, then as a condition precedent to the obligations of the **Insurer** under this Policy, the **Insureds** shall, contemporaneously with and according to the terms of the **Followed Policy**, give the same written notice to the **Insurer** at the applicable street address or email address shown in Item 10 of the Declarations.

   3.  The **Insurer** may, at its sole discretion, associate with the **Insureds** in the investigation, defense and/or settlement of any **Claim** or potential **Claim** reported to the **Insurer** and reasonably expected to involve this Policy even if the **Underlying Limit** has not been exhausted.

IV.  Section II. Conditions, D. Extended Reporting Period Coverage of this Policy is deleted in its entirety and replaced with the following:



#### D. EXTENDED REPORTING PERIOD COVERAGE

If the **Insureds** elect and secure extended reporting period coverage in all unexhausted **Underlying Policies**, the **Insureds** shall also be entitled to elect an extended reporting period under this Policy; provided however, in no event shall the duration of the extended reporting period under this Policy be greater than the duration of the extended reporting period under any unexhausted **Underlying Policy**. The right to purchase the extended reporting period under this Policy is conditioned upon satisfaction of the same conditions as specified in the **Followed Policy** and such extended reporting period shall follow form to, and apply in conformance with, the provisions of the **Followed Policy**.

The Limit(s) of Liability for the extended reporting period, if exercised, shall be part of and not in addition to the Limit(s) of Liability specified in Item 3 of the Declarations. The purchase of the extended reporting period shall not increase or reinstate the Limit(s) of Liability of this Policy.

V.  Section II. Conditions, E. Changes of this Policy is deleted in its entirety and replaced with the following:

#### E. CHANGES

To the extent any term, condition, representation, limitation or restriction of the **Followed Policy** is changed during the **Policy Period** and/or, if applicable, the extended reporting period, this Policy shall automatically become subject to any such change that limits or restricts coverage. This Policy shall become subject to any such change that expands or broadens coverage only if and to the extent the **Insurer** agrees to such change in writing. Assignment of interest under this Policy shall not bind the **Insurer** unless its consent is endorsed hereon.

VI. Section III. Definitions, 4. **Insureds** and 5. **Named Insured** are deleted in their entirety and replaced with the following:

4.  **Insureds** shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy**.

5.  **Named Insured** shall have the same meaning as assigned to that term or the equivalent term in the **Followed Policy**.

_____
President

_____
Secretary

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



**Named Insured:** Celsius Network, Inc.          **Policy No:** F77130210ASP

**Endorsement No:** 3                             **Effective Date:** June 30, 2021

**Premium:** Included

## MANAGEMENT AND PROFESSIONAL LIABILITY FOLLOW FORM EXCESS INSURANCE WAR, TERRORISM AND MILITARY ACTION EXCLUSION ENDORSEMENT

It is agreed that:

1.  The following exclusion is added to this Policy:

    This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    a.  War, including undeclared or civil war;

    b.  Warlike action by a military force, including action to defend against or hinder an actual or expected attack by any government, sovereign or other authority using military personnel or other agents;

    c.  **Terrorism**, including any action taken to defend against or hinder any actual or expected **Terrorism**; or

    d.  Insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, riot, usurped power, rebellion, revolution, or action taken by governmental authority to defend against or hinder any of these;

2.  As used in this endorsement, **Terrorism** means activities against persons, organizations or property that involve the following or preparation for the following:

    a.  use of threat or violence, or commission or threat of a dangerous act; or

    b.  commission or threat of an act that interferes with or disrupts infrastructure or any electronic, communication, information or mechanical system;

    when the effect is to intimidate or coerce the civilian population, any segment of the economy, or to influence the policy or conduct of the government by coercion, or to further political, ideological, religious, social or economic objectives or to express a philosophy or opposition to a philosophy.

_____          _____
President                                Secretary

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



# STARSTONE SPECIALTY INSURANCE COMPANY

**Harborside 5**
**185 Hudson Street, Suite 2600**
**Jersey City, New Jersey  07311**
**855-275-6041**

**NEW JERSEY SURPLUS LINES POLICY NOTICE**

**THIS POLICY IS WRITTEN BY A SURPLUS LINES INSURER AND IS NOT SUBJECT TO THE FILING OR APPROVAL REQUIREMENTS OF THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. SUCH A POLICY MAY CONTAIN CONDITIONS, LIMITATIONS, EXCLUSIONS AND DIFFERENT TERMS THAN A POLICY ISSUED BY AN INSURER GRANTED A CERTIFICATE OF AUTHORITY BY THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. THE INSURER HAS BEEN APPROVED BY THE DEPARTMENT AS AN ELIGIBLE SURPLUS LINES INSURER, BUT THE POLICY IS NOT COVERED BY THE NEW JERSEY INSURANCE GUARANTY FUND, AND ONLY A POLICY OF MEDICAL MALPRACTICE LIABILITY INSURANCE AS DEFINED IN N.J.S.A. 17:30D-3D OR A POLICY OF PROPERTY INSURANCE COVERING OWNER-OCCUPIED DWELLINGS OF LESS THAN FOUR DWELLING UNITS ARE COVERED BY THE NEW JERSEY SURPLUS LINES GUARANTY FUND.**

SSS-NOT-NJ (01/17)



**POLICY DECLARATIONS**

## EXCESS LIABILITY INSURANCE POLICY

This policy is a claims made and reported policy which covers only claims first made against the insured during the policy period. The limit of liability available to pay loss, including judgments or settlement amounts, may be reduced by amounts incurred for costs of defense. Further note that amounts incurred for costs of defense may be applied against the applicable retention amount.

Please read this policy carefully.

**Item A**

Policy Number: **ANV156364A**

<table>
<tr><td>

**ANV GLOBAL SERVICES INC.
ON BEHALF OF:**
ASSOCIATED INDUSTRIES INSURANCE COMPANY INC. – 100%

Policy No. :　**ANV156364A**

</td></tr>
</table>

Renewal of Policy Number: **N/A**

Insurer: **Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc.**

**Item B**

| **Named Insured:** | **Broker Name:** |
|---|---|
| **Celsius Network, Inc.** | **RT Specialty** |

| **Mailing Address:** | **Mailing Address**: |
|---|---|
| 221 River Street 9th Floor | 500 W Monroe, 30th Floor |
| Hoboken, NJ 07030 | Chicago, IL, 60661 |

**Item C**

Policy Period:

From **June 30, 2021** to **May 30, 2022** at 12:01 A.M. Standard Time at your mailing address shown above.

**Item D**

| LIMITS OF LIABILITY* | AGGREGATE LIMIT |
|---|---|
| Maximum Per **Claim** | $1,500,000 |
| Aggregate All **Claim** | $1,500,000 |

| UNDERLYING LIMITS | |
|---|---|
| Total Underlying Limits | $6,000,000 |



## Item E

**Notice of Claim or Potential Claim:**

Attn: Claims Department

ANV Global Services, Inc.,
200 Hudson Street, Suite 800
Jersey City, NJ 07311
Email: mgaclaims@anv.us.com

**All other notices**

ANV Global Services, Inc.
200 Hudson Street, Suite 800
Jersey City, NJ 07311
PLUnderwriting@anv.us.com

## Item F

**Premium:** **$142,883**

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY INCLUDING INFORMATION FURNISHED IN CONNECTION THEREWITH, AND THE COVERAGE FORM AND ANY ENDORSEMENTS ATTACHED HERETO, CONSTITUTE THE ABOVE NUMBERED INSURANCE POLICY.

August 31, 2021

_____
**(Date)**

_____
**(Authorized Representative)**

POLICY PREMIUM: $142,883.00
SURPLUS LINES TAX: $7,144.15
TOTAL: $150,027.15

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund



# Schedule of Underlying Insurance

## Schedule A: Underlying Insurance

### A. Followed Policy:

| | |
|---|---|
| **Coverage:** | Directors and Officers Liability |
| **Carrier:** | Certain Underwriters at Lloyd's |
| **Policy Term:** | May 30, 2021 to May 30, 2022 |
| **Policy Number:** | EFI1203088-00 |
| **Limits:** | 1500000 |

### B. All Other Underlying Policies:

| | |
|---|---|
| **Carrier:** | Professional Solutions Insurance Company |
| **Policy Term:** | June 30, 2021 to May 30, 2022 |
| **Policy Number:** | FS461DMLA210 |
| **Limits:** | $1,500,000 |
| **Excess:** | $1,500,000 |

| | |
|---|---|
| **Carrier:** | Hudson Excess Insurance Company |
| **Policy Term:** | June 30, 2021 to May 30, 2022 |
| **Policy Number:** | HE-0303-7685 |
| **Limits:** | $1,500,000 |
| **Excess:** | $3,000,000 |

| | |
|---|---|
| **Carrier:** | StarStone Specialty Insurance Company |
| **Policy Term:** | June 30, 2021 to May 30, 2022 |
| **Policy Number:** | F77130210ASP |
| **Limits:** | $1,500,000 |
| **Excess:** | $4,500,000 |



## Schedule of Forms:

| Form Number: | Description: |
|---|---|
| **ANV EX 0001** | **ANV Excess Professional Liability Insurance Policy** |
| **ANV EX 0105** | **Service of Suit Endorsement** |
| **ANV PL 0028** | **Cap On Losses From Certified Acts of Terrorism** |
| **ANV PL 0102** | **U.S. Treasury Department OFAC Advisory Notice** |
| **ANV EX 0078** | **Pending or Prior Litigation Exclusion** |
| **ANV EX 0148** | **RT Specialty Amend Excess Professional Policy Endorsement** |

# Contents

**I.    Insuring Agreement**

**II.    Definitions**

**III.    Attachment; Limit of Liability**

**IV.    Underlying Insurance**

**V.    Claims; Notices**

UNLESS OTHERWISE PROVIDED IN THE FOLLOWED POLICY, THIS IS A CLAIMS MADE AND REPORTED POLICY WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY.  COVERAGE APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE DURING THE POLICY PERIOD AND REPORTED DURING THE POLICY PERIOD OR ANY DISCOVERY PERIOD, IF APPLICABLE.  WORDS PRINTED IN BOLD FACE, OTHER THAN CAPTIONS, ARE DEFINED IN THE POLICY. VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY.

# Excess Liability Insurance Policy

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Insurer** shown in the Declarations, including those furnished in the **Application,** and subject to all terms, conditions and limitations of this Policy, the **Insureds** and **Insurer** agree:

## I.    Insuring Agreement

In consideration of the payment of the premium and in reliance upon all statements made in the Application for this Policy and the **Followed Policy**, including the information furnished in connection therewith, whether directly or through public filings, the **Insurer** agrees to provide insurance coverage to the **Insureds** in accordance with the terms, definitions, warranties, conditions, exclusions and limitations of the **Followed Policy** and, to the extent coverage is further limited or restricted thereby, of any other **Underlying Policy**, except as otherwise provided herein.

## II.    Definitions

A. The term "**Insurer**" means the insurance company identified in the Declarations.

B. The term "**Followed Policy**" means the policy designated as such in Schedule A of this Policy.

C. The term "**Insureds**" means those individuals and entities insured by the **Followed Policy**.

D. The terms "**Claim**," "**Loss**" and "**Discovery Period**" have the meanings attributed to them, or to comparable terms, in the **Followed Policy**.

E. The term "**Primary Policy**" means the first listed **Underlying Policy** in Schedule A of the Declarations.

F. The term "**Policy Period**" means the policy period set forth in the Declarations, subject to prior termination in accordance with the **Followed Policy**.

G. The term "**Underlying Limit(s)**" means an amount equal to the aggregate of all limits of liability as set forth in Schedule A for all **Underlying Policies**, plus the uninsured retention, if any, applicable under the **Followed Policy**.

H. The term "**Underlying Policy(ies)**" means the **Followed Policy** and all other policies listed in Schedule A of this Policy.

## III.    Attachment; Limit Of Liability

A. Liability under this Policy shall attach to the **Insurer** only after the insurers of the **Underlying Policies** and/or the **Insureds** shall have paid in legal currency the full amount of the **Underlying Limit**. The aggregate limit of liability set forth in the LIMITS OF LIABILITY section of the Declarations shall be the **Insurer's** maximum liability under this Policy with respect to all covered **Claims** against all **Insureds**.

B. Only in the event of the reduction or exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Policies** and/or the **Insureds** paying in legal currency **Loss** covered under the respective **Underlying Policy**, this Policy shall: (i) in the event of reduction, pay excess of the reduced **Underlying Limit**, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention, if any, applicable under the **Primary Policy**, which retention shall be applied to any subsequent **Loss** in the same manner as specified in the **Primary Policy**.

C. Notwithstanding any of the terms of this Policy which might be construed otherwise, this Policy shall drop down only in the event of reduction or exhaustion of the **Underlying Limit** as described above, and shall not drop down for any other reason including, but not limited to, uncollectability (in whole or in part) of any **Underlying Policy**. The risk of uncollectability of the **Underlying Policies** (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the **Insurer**.

D. If any Underlying Policy contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any **Claim** which is otherwise subject to such grant of coverage. However, any **Loss** paid under the **Underlying Policies** on account of such **Claim** shall reduce or exhaust the **Underlying Limit**, as provided in Section III.B. above, for purposes of this Policy.

## IV.  *Underlying Insurance*

A. If the **Underlying Policies** are canceled or terminate during the **Policy Period**, including the **Discovery Period** if exercised, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policies** not been canceled or terminated.

B. To the extent the terms, definitions, conditions, exclusions or limitations of any of the **Underlying Policies** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Underlying Policy**. To the extent the terms, definitions, conditions, exclusions or limitations of any of the **Underlying Policies** are changed after the **Underlying Policy** is bound to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the **Insurer** agrees to such changes by written endorsement to this Policy and the **Insureds** pay any additional premium reasonably required by the **Insurer** for such changes.

## V. *Claims; Notices*

A. The **Insureds** shall, as a condition precedent to their rights under this Policy, give to the **Insurer** written notice of:
(i) any **Claim** at the same time and in the same manner required by the terms and conditions of the **Followed Policy**, regardless of the amount of the **Claim** or the **Underlying Limit** applicable to the **Claim**, and
(ii) any circumstances which could give rise to a **Claim** at the same time and with the same specificity as notice of such circumstances is given under all **Underlying Policies**. To be effective under this Policy, such notice of circumstances shall contain the information required by and shall otherwise

comply with the terms and conditions of the **Followed Policy** and shall also be given under all **Underlying Policies**.

B.   The **Insurer** may, at its sole discretion, participate in the investigation, defense or settlement of any **Claim** or circumstance reported to the **Insurer** under this Policy even if the **Underlying Limit** has not been exhausted.

C.   All notices under this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party.   Notice to the **Insureds** may be given to the Parent Company at the address as shown in the Named Insured section of the Declarations.   Notice to the **Insurer** of any **Claim** or potential **Claim** shall be given to the **Insurer** at the address set forth in the Notices to Insurer section of the Declarations.   All other notices to the **Insurer** under this Policy shall be given to the **Insurer** at the address set forth in Notices to Insurer section of the Declarations.   Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is properly sent, whichever is earlier.   Any notice to an insurer of an **Underlying Policy** shall not constitute notice to the **Insurer** unless also given to the **Insurer** as provided in this Section V.C.

# Insured Education Document

### Representative of the Insurer

ANV Global Services, Inc., (200 Hudson Street , Suite 800, Jersey City, NJ 07311) shall act on behalf of the Insurer for all purposes including, but not limited to, the giving and receiving of all notices and correspondence, provided, however, notice of Claims shall be given pursuant to Section VII of the Policy.

### Insurer

This Policy is underwritten by Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc.

### Law

All matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York notwithstanding New York's conflicts of law rules.

### Queries

Any query or question about this Policy or any claim under it should be addressed in the first instance to your broker.

### Complaints

ANV aims to provide a professional service to its customers. Should you have any questions or concerns about your Policy or the handling of a Claim you should, in the first instance, contact your broker.  If your broker does not provide you with a satisfactory response, please contact ANV Global Services, Inc., at 200 Hudson Street, Suite 800, Jersey City, NJ 07311, email: PLUnderwriting@anv.us.com or for any Claims matters, Attn: Claims Department at the same address.  The Claims Department email is: MGAClaims@anv.us.com.  In the event that you remain dissatisfied and wish to make a complaint, please contact ANV´s compliance department at complaints@anv.eu.com.

Endorsement No:   1                                          Policy Number: ANV156364A

Named Insured:  Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the service of process in any **Claim** or suit on the policy against ANV Global Services, Inc. may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued.  The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued is hereby authorized and directed to accept service of process on our behalf in any such **Claim** or suit.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

**ANV**

Endorsement No:   2                                                      Policy Number:   ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**EXCESS PROFESSIONAL LIABILITY POLICY**
**NOT FOR PROFIT ORGANIZATION MANAGEMENT LIABILITY INSURANCE POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**PUBLIC COMPANY MANAGEMENT LIABILITY INSURANCE POLICY**
**SIDE-A DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY**

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that this policy is amended as follows:

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

Endorsement No:   3                                                    Policy Number: ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site — http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Endorsement No:   4

Policy Number:   ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PENDING OR PRIOR LITIGATION EXCLUSION**

This endorsement modifies insurance provided under the following:

**EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY**

| Pending or Prior Litigation Date: | 06/25/2021 |
|---|---|

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that the **Insurer** shall not be liable for **Loss** resulting from any **Claim** based upon, arising out of, or attributable to any civil or criminal demand, suit or proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the date specified above or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.

Endorsement No:   5

Policy Number:   ANV156364A

Named Insured:   Celsius Network, Inc.

Endorsement Effective Date:   June 30, 2021

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### RT SPECIALTY AMEND EXCESS PROFESSIONAL POLICY ENDORSEMENT

This endorsement modifies insurance provided under the following:

### EXCESS PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium charged, it is agreed by the **Insured** and **Insurer** that this Policy shall be amended as follows:

**1.** Section III. ATTACHMENT; LIMIT OF LIABILITY, paragraphs A. and B. are deleted and replaced with the following:

A. Liability under this Policy shall attach to the **Insurer** only after the insurers of the **Underlying Policies**, the **Insureds** and/or a third party on behalf of the **Insureds** shall have paid in legal currency the full amount of the **Underlying Limit**.  The aggregate limit of liability set forth in the LIMITS OF LIABILITY section of the Declarations shall be the **Insurer's** maximum liability under this Policy with respect to all covered **Claims** against all **Insureds**.

B. Only in the event of the reduction or exhaustion of the **Underlying Limit** by reason of the insurers of the **Underlying Policies**, the **Insureds** and/or a third party on behalf of the **Insureds** paying in legal currency **Loss** covered under the respective **Underlying Policy**, this Policy shall:  (i) in the event of reduction, pay excess of the reduced **Underlying Limit**, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention, if any, applicable under the **Primary Policy**, which retention shall be applied to any subsequent **Loss** in the same manner as specified in the **Primary Policy**.

**2.** Section IV. UNDERLYING INSURANCE, paragraph B. is deleted and replaced with the following:

B. To the extent the terms, definitions, conditions, exclusions or limitations of any of the **Underlying Policies** are changed after the **Underlying Policy** is bound, this Policy shall become subject to such changes only if and to the extent the **Insurer** agrees to such changes by written endorsement to this Policy and the **Insureds** pay any additional premium reasonably required by the **Insurer** for such changes. In no event shall any such change or modification affect this Policy's excess position or attachment point.

**3.** Section V. CLAIMS; NOTICES, paragraph C. is deleted and replaced with the following:

C. All notices under this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party. Notice to the **Insureds** may be given to the Parent Company at the address as shown in the Named Insured section of the Declarations. Notice to the **Insurer** of any **Claim** or potential **Claim** shall be given to the **Insurer** at the address, or email address if notice is given via email, set forth in the Notices to Insurer section of the Declarations. All other notices to the **Insurer** under this Policy shall be given to the **Insurer** at the address set forth in Notices to Insurer section of the Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is properly sent, whichever is earlier. Any notice to an insurer of an **Underlying Policy** shall not constitute notice to the **Insurer** unless also given to the **Insurer** as provided in this Section V.C.

All other terms, conditions and exclusions under the policy are applicable to this endorsement and remain unchanged.





**AXA XL - Professional Insurance**
100 Constitution Plaza, 17th  Floor,
Hartford, CT 06103
Phone 860-246-1863, Fax 860-246-1899

August 12, 2022

Brad McDonald
Cobbs Allen Capital, LLC
250 Fillmore Street
Suite 450
Denver, CO 80206

**Re: Celsius Network, Inc.**
      **Cornerstone A-Side Policy**

Dear Brad,

Enclosed, please find the policy for **Celsius Network, Inc.** Thank you for choosing AXA XL Insurance.
Please call if you have any questions or concerns.

Sincerely,

Stu Perry

ko

**Policy Number:** **ELU184271-22**

**Renewal of Number:** N/A

**Indian Harbor Insurance Company**

Members of the XL America Companies

> ### CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE POLICY DECLARATIONS

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES AND SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

---

**Item 1.**   **Name and Mailing Address of Parent Corporation:**

Celsius Network, Inc.
221 River Street
9th Floor
Hoboken, NJ  07080

---

**Item 2.**   **Policy Period:**   **From:**   July 08, 2022   **To:**   July 12, 2023

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

---

**Item 3.**   **Limit of Liability:**

$2,500,000  Aggregate each **Policy Period** (including **Defense Expenses**)

---

**Item 4.**   **Optional Extension Period and Premium:**

Length of Optional Extension Period:   One Year

Optional Extension Premium:   N/A

---

**Item 5.**   **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

---

**Item 6.**   **Premium:**

| | |
|---|---|
| Premium: | $1,925,000.00 |
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $1,925,000.00 |

---

**Item 7.**   **Policy Forms and Endorsements Attached at Issuance:**

CS 71 00 09 06   XL 82 01 07 07   XL_NJSOP 0118   CS 80 450 08 17   CS 80 541 11 20   XL 80 66 03 11
CS 80 50 12 07   CS 83 58 10 14   CS 80 77 09 08   CS 80 81 01 09   CL 80 63 04 04   CS 80 05 10 06
CS 80 95 09 09   CS 80 344 11 16   CS 83 06 06 07   CL 80 105 05 05

---

Countersigned: _____   By: _____

Date   Authorized Representative

## CORNERSTONE A-SIDE MANAGEMENT LIABILITY POLICY

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**


David B. Duclos                                          Kenneth P. Meagher
President                                                      Secretary

**Indian Harbor Insurance Company**

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

| | |
|---|---|
| Joseph Tocco | Toni Ann Perkins |
| President | Secretary |

LAD 400 0314 IHIC

©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

**POLICYHOLDER DISCLOSURE
NOTICE OF TERRORISM
INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that the Terrorism Risk Insurance Act, as amended in 2019, defines an act of terrorism in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States —to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is waived and does not include any charges for the portion of losses covered by the United States government under the Act.

PN161 12 20 T

© 2020 X.L. America, Inc.
Includes copyrighted material of National Association of Insurance Commissioners, with its permission.

NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1]. Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc. All rights reserved. May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NOTICE TO POLICYHOLDERS

---

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

**Our Privacy Promise**

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

**Collection and Sources of Information**

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

• Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
• Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Alabama | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
|---------|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **California** | **General: All applications for commercial insurance, other than liability insurance:** Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.<br><br>**All applications for liability insurance and all claim forms:** For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance that such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

|  | imprisonment, fines, or denial of insurance benefits. |
|---|---|
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.<br><br>**WARNING: All Workers Compensation Insurance**:<br>Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:<br>1.  obtaining any benefit or payment,<br>2.  increasing any claim for benefit or payment, or<br>3.  obtaining workers' compensation coverage under the Administrative Workers' Compensation Act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

| | |
|---|---|
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDER

# NEW JERSEY

NOTICE TO POLICYHOLDER:  This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

PN NJ 01 0416                                                                                                  Page 1 of 1

© 2016 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**Endorsement No.: 1**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184271-22**

**Effective: July 08, 2022**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 2**                    **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**   **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**              **Insurer: Indian Harbor Insurance Company**

# SERVICE OF PROCESS

The Commissioner of Insurance of the State of New Jersey is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates:

Sarah Mims
General Counsel
505 Eagleview Boulevard, Suite 100
Exton, PA 19341-1120

as its agent in New Jersey to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this Policy remain unchanged.

XL-NJSOP 0118

Page 1 of 1

© 2018 X.L. America, Inc. All Rights Reserved. May not be copied without permission.

| | |
|---|---|
| **Endorsement No.: 3** | **Effective: July 08, 2022** |
| **Named Insured: Celsius Network, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU184271-22** | **Insurer: Indian Harbor Insurance Company** |
| **Policy Form: CORNERSTONE A-SIDE MANAGEMENT LIABILITY** | |

**CS 80 450 08 17**

# CONVERT POLICY TO RUN-OFF UPON HAPPENING OF SPECIFIC EVENT

In consideration of the premium charged:

(1)    If, during the Policy Period, the event described in paragraph (2) below occurs:

(a)    Coverage under this Policy will continue in full force and effect with respect to any Claim for a Wrongful Act committed or allegedly committed before such event, but coverage will cease with respect to any Claim for a Wrongful Act committed or allegedly committed on or after such event (hereinafter, the date of such event, "Conversion Date").

(b)    The Expiration Date set forth in Item 2 of the Declarations shall be amended to that date exactly six (6) years after the Conversion Date.

(d)    The term "Company," as defined in Section II Definitions (D) of the Policy, shall not include those Subsidiaries created or acquired after the Conversion Date.

(e)    Section IV Conditions (J) of the Policy and Item 4 of the Declarations, and all other references in the Policy to an Optional Extension Period, are deleted in their entirety.

(f)    Section IV Conditions (C) of the Policy is deleted in its entirety.

(g)    After the Conversion Date, this Policy may not be cancelled by the Insured or the Insurer, except for the nonpayment of premium.   Section IV Conditions (I) of the Policy is deleted in its entirety.

(h)    Section IV Conditions (D)(2) of the Policy is deleted in its entirety.

(2)    The event upon the happening of which coverage under this Policy will cease with respect to continuing Wrongful Acts described in paragraph (1) above, is as follows:

The sooner of:
- July 12, 2023, and
- A specific 'run-off date' furnished by the Insured Persons to the Insurer, provided that such date precedes July 12, 2023.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*© 2017 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

CS 80 541 11 20

**Endorsement No.: 4**                                **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**             **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**                          **Insurer: Indian Harbor Insurance Company**
**Policy Form: CORNERSTONE A-SIDE MANAGEMENT LIABILITY**

# PRESUMPTIVE INDEMNIFICATION ENDORSEMENT

In consideration of the premium charged, with respect to the Company's indemnification of its Insured Persons, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the Parent Company, each Subsidiary and each Non-Profit Entity or Joint Venture, will be deemed to require indemnification to the Insured Persons to the fullest extent permitted by law.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 80 541 11 20                                                                              Page 1 of 1
© 2020 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.: 5**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184271-22**

**Effective: July 08, 2022**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# FULLY EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, the entire premium for this Policy, as set forth in Item 6. of the Declarations, shall be deemed to be fully earned as of the Inception Date of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2011 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

CS 80 50 12 07

**Endorsement No.: 6**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184271-22**

**Effective: July 08, 2022**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# CANCELLATION ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (I)(1) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 83 58 10 14

**Endorsement No.: 7**                          **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**        **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**                    **Insurer: Indian Harbor Insurance Company**

# DELETE EXCLUSION (B) ENDORSEMENT

In consideration of the premium charged, Section III Exclusions (B) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*© 2014 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

CS 80 77 09 08

**Endorsement No.: 8**                          **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**        **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**                     **Insurer: Indian Harbor Insurance Company**

# INJUNCTIVE RELIEF ENDORSEMENT

In consideration of the premium charged, Section II Definition (C) of the Policy will specifically include any written demand for injunctive relief.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**CS 80 81 01 09**

**Endorsement No.: 9**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184271-22**

**Effective: July 08, 2022**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that the term "Claim" will include a civil, criminal, administrative or regulatory investigation of an Insured Person once such Insured Person is identified in writing by a relevant investigating authority as a person against whom a proceeding as described in Section II. DEFINITIONS (C)(1), (2) or (3) may be commenced, including but not limited to any "Wells" or other notice from the Securities and Exchange Commission or a similar state or foreign governmental authority that describes actual or alleged violations of securities or other laws by such Insured Person, and Section II. DEFINITIONS (C) will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 80 81 01 09 (12/10 ed.)                                                                                          Page 1 of 1
*© 2009 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

**CL 80 63 04 04**

**Endorsement No.: 10**    **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**  **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**    **Insurer: Indian Harbor Insurance Company**

# AMEND DEFINITION OF CHANGE IN CONTROL ENDORSEMENT

In consideration of the premium charged, Section II Definitions (B)(3) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 80 05 10 06

**Endorsement No.: 11**                      **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**      **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**                  **Insurer: Indian Harbor Insurance Company**

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (I)(2) of the Policy shall include the domestic partner of any person set forth in Section II Definition (I)(1), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner of such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 12**           **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**    **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**         **Insurer: Indian Harbor Insurance Company**

# EMAIL NOTICES ENDORSEMENT

In consideration of the premium charged, the last sentence of Section IV Condition (D) of the Policy is amended to read in its entirety as follows:

"All notices under CONDITIONS (D)(1) and (2) must be sent by:

    (a)    certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations:  Attention Claim Department; or

    (b)    electronic mail (email) to:  proclaimnewnotices@axaxl.com."

All other terms, conditions and limitations of this Policy shall remain unchanged.

                                         
*© 2009 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

**Endorsement No.: 13**                                    **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**                   **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**                               **Insurer: Indian Harbor Insurance Company**
**Policy Form: CORNERSTONE A-SIDE MANAGEMENT LIABILITY**

# AMEND CONDITION (F)(1) ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (F)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured Persons and the Company agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will not, subsequent to a Claim, intentionally increase the Insurer's exposure under this Policy in a manner which prejudices the Insurer's potential or actual rights of recovery with respect to such Claim.  The failure of any Insured Person to give the Insurer cooperation and information as required in this paragraph shall not impair the rights of any other Insured Person under this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2016 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**CS 83 06 06 07**

**Endorsement No.: 14**                          **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**         **12:01 A.M. Standard Time**
**Policy No.: ELU184271-22**                     **Insurer: Indian Harbor Insurance Company**

# AMEND EXCLUSION (A)(2)(a) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (A)(2)(a) of the Policy is amended to read in its entirety as follows:

"(a)      intentionally fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or"

All other terms, conditions and limitations of this Policy shall remain unchanged.

**CL 80 105 05 05**

| | |
|---|---|
| **Endorsement No.: 15** | **Effective: July 08, 2022** |
| **Named Insured: Celsius Network, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU184271-22** | **Insurer: Indian Harbor Insurance Company** |

# DEBTOR IN POSSESSION ENDORSEMENT

In consideration of the premium charged, the term "Company," as defined in Section II Definition (D) of the Policy, is amended to include the Parent Company and any covered Subsidiary as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.

# CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

## I.    INSURING AGREEMENT

The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification or advancement from any source. In the event that **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions (including, but not limited to, CONDITION (B)) and limitations and without prejudice to the Insurer's excess position.

## II.   DEFINITIONS

(A)    "**Application**" means:

    (1)    the **Application** attached to and forming part of this Policy; and

    (2)    any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)    "**Change In Control**" means:

    (1)    the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets, by another entity such that the **Parent Company** is not the surviving entity;

    (2)    the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)    the court appointment of any person or entity with authority comparable to that of the **Insured Persons**, as defined in DEFINITION (I)(1), to liquidate or reorganize the **Parent Company**.

(C)    "**Claim**" means:

    (1)    a written demand for monetary or non-monetary relief;

    (2)    any civil or criminal judicial proceeding in a court of law or equity, arbitration or other alternative dispute resolution; or

    (3)    a formal civil, criminal, administrative, or regulatory proceeding or formal investigation.

(D)    "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITION (C).

(E)    "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense or investigation of any **Claim**. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F)    "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1)    wrongful termination of employment whether actual or constructive;

    (2)    employment discrimination of any kind;

    (3)    sexual or other harassment in the workplace; or

    (4)    wrongful deprivation of career opportunity, employment-related misrepresentation, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)    "**Insurance Program**" means

    (1)    any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance; and

    (2)    any other existing insurance under which coverage may be owed.

(I)    "**Insured Person**" means:

    (1)    any past, present, or future director or officer, general counsel, or member of the Board of Managers of the **Company** and any person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States; and

    (2)    the lawful spouse of any person set forth in DEFINITION (I)(1), but only to the extent the spouse is a party to any **Claim** solely in his or her capacity as a spouse of such person and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and his or her spouse, or property transferred from any such person to his or her spouse.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

(J)    "**Interrelated Wrongful Acts**" means **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events.

(K)    "**Loss**" means damages, judgments, settlements or other amounts (including pre- & post-judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay.  **Loss** will not include:

    (1)    matters which are uninsurable under the law pursuant to which this Policy is construed; or

    (2)    fines, penalties or taxes imposed by law; provided, that this DEFINITION (K)(2) will not apply to fines, penalties or taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person's** service with respect to an entity included within the definition of **Company** that is financially insolvent.

Note:  With respect to coverage for punitive, exemplary or multiplied damages or fines, penalties or taxes, the law of the applicable jurisdiction most favorable to the insurability of such amounts shall control.

(L)    "**Outside Capacity Wrongful Act**" means any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, trustee, regent, or governor of any **Outside Entity**, if serving in such capacity at the specific request of the **Company**.

(M)     "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person**, as defined in DEFINITION (I)(1), serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific request of the **Company**.

(N)     "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(O)     "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(P)     "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(Q)     "**Wrongful Act**" means:

    (1)     any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, general counsel, or member of the Board of Managers of the **Company** or a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2)     any matter asserted against an **Insured Person** solely by reason of his or her status as a director, officer, general counsel, or member of the Board of Managers of the **Company**;

    (3)     any **Employment Practices Wrongful Act**; and

    (4)     any **Outside Capacity Wrongful Act**.

## III.   EXCLUSIONS

(A)     Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

    (1)     brought by or on behalf of, or at the direction of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity**, except and to the extent such **Claim**:

        (a)     is brought and maintained by a security holder of the **Company** or such **Outside Entity**, but only if such security holder is acting independently of, and without the solicitation, assistance, participation or intervention of, the **Company**, any **Insured Person**, or any **Outside Entity**;

        (b)     is brought by the Bankruptcy Trustee or Examiner of the **Company** or such **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or such **Outside Entity**;

        (c)     is brought and maintained in a non-common law jurisdiction outside the United States of America or its territories or possessions; or

        (d)     is made after the **Parent Company** has undergone a **Change of Control**; or

    (2)     brought about or contributed to in fact by any:

        (a)     intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

        (b)     profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

    as determined by a final adjudication in the underlying action.

(B)     The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim**:

(1)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof; provided, that this EXCLUSION (B)(1) shall not apply to any **Claim**:

    (a)    brought by a security holder of the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

    (b)    in the form of a derivative action, but only if such **Claim** is brought by or on behalf of, or in the name or right of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** and is brought and maintained independently of, and without the solicitation, assistance, participation or intervention of the **Company**, any **Insured Person**, or any **Outside Entity**; or

(2)    based upon, arising out of, directly or indirectly resulting from, in  consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or other similar insurance.

Note:  EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**.

No **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

### (A)    Limit of Liability

The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy.  Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

### (B)    Indemnification and Other Insurance

(1)    The **Insured Persons** and the **Company** understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

    (a)    all indemnification and advancement to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**; and

    (b)    any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position.

(2)    This Policy shall not be subject to the terms or conditions of any other insurance.  The Insurer does not waive, compromise or release any of its rights to recover **Loss** paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification or advancement, including the **Company** and any **Outside Entity**.

### (C)    Mergers and Acquisitions

(1)    If, during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage

shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2)    With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in CONDITION (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against any **Insured Person** for any **Wrongful Act** in connection with the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary** or liability committed at any time during which such entity, asset, **Subsidiary** or liability is not included within the definition of "**Company**."

(3)    If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4)    If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**, and

    (a)    coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

    (b)    the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(D)    **Notice**

(1)    As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)    If, during the **Policy Period**, the **Insured Persons** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

    (a)    provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

    (b)    request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

(E)    **Defense and Settlement of Claims**

(1)    It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**. No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2)    Upon written request, the Insurer will pay on a current basis any covered **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage. In the event of such advancement, the **Insured Persons** agree that they shall repay the Insurer, severally according to

their interests, any **Loss**, including **Defense Expenses**, paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(3)    Except for such **Defense Expenses**, the Insurer shall pay **Loss** only upon the final disposition of any **Claim**.

(F)    **Assistance, Cooperation and Subrogation**

(1)    The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and  further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons**, including any such rights of recovery against the **Company** or any **Outside Entity**.  The **Insured Persons** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)    **Interrelated Claims**

All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) or (2) above, if applicable.

(H)    **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **Cancellation and Renewal of Coverage**

(1)    The Chairman of the Board of Directors and the Chief Executive Officer of the **Parent Company** shall have the exclusive right to cancel this Policy on behalf of the **Insured Persons**.  Such cancellation may be effected by mailing to the Insurer written notice stating when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations.  In such event, the Insurer shall retain the customary short rate portion of the earned premium.  Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may cancel this Policy only for nonpayment of premium.  The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled.  Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Persons**, if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration.  Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(4)    The Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

(J)    **Optional Extension Period**

(1)    If either the **Insured Persons** or the Insurer does not renew this Policy, the **Insured Persons** shall have the right, upon payment of the additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the

period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)     As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full.  The right of the **Insured Persons** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Insured Persons** advising they wish to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)     If the **Insured Persons** elect to purchase the Optional Extension Period as set forth in CONDITIONS (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)     The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)     **Representation Clause**

The **Application** for coverage shall be construed as a separate **Application** for coverage for each **Insured Person**.  Each **Insured Person** represents that, to the best of his or her knowledge, the statements and particulars contained in the **Application** are true, accurate and complete, and each **Insured Person** agrees that this Policy is issued in reliance on the truth of that representation and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy.  In the event that any statements and particulars contained in the **Application** are untrue, inaccurate or incomplete, this Policy will be void with respect to any **Insured Person** who had actual knowledge as of the Inception Date of facts or information that were not accurately or completely disclosed as required in the **Application**.  No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against such other **Insured Person**.

(L)     **Action Against the Insurer, Assignment, and Changes to Policy**

(1)     No action may be taken against the Insurer unless, as a condition precedent thereto:

(a)     there has been full compliance with all of the terms and conditions of this Policy; and

(b)     the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)     Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Persons** to determine their liability, nor may the **Insured Persons** implead the Insurer in any **Claim**.

(3)     Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)     Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy.  The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)     **Authorization and Notices**

It is understood and agreed that, except as provided elsewhere in this Policy, the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)    the payment of the premiums,

(2)    the receiving of any return premiums that may become due under this Policy,

(3)    the giving of all notices to the Insurer as provided herein, and

(4)    the receiving of all notices from the Insurer.

(N)    **Entire Agreement**

The **Insured Persons** agree that the Declarations, the Policy, including any endorsements and attachments, and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** in relation to the insurance.

(O)    **Worldwide Coverage**

In consideration of the premium charged, coverage under this Policy shall extend anywhere in the world.

(P)    **Bankruptcy**

In the event that a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the **Insured Persons** and the **Company** hereby (1) waive and release any automatic stay or injunction which may apply in such proceeding in connection with this Policy or its proceeds under such Bankruptcy Code or law; and (2) agree not to oppose or object to any efforts by the Insurer or any **Insured Person** or the **Company** to obtain relief from any such stay or injunction.

**Berkley**
PROFESSIONAL
LIABILITY
*a Berkley Company*

757 Third Avenue, 10th Floor
New York, NY 10017
(212) 618-2900
Fax (212) 618-2940

# Excess Side A Directors and Officers Liability Insurance

August 26, 2022

Sir / Madam
Celsius Network, Inc.
121 River Street
PH05
Hoboken, NJ 07030

Binder/Policy Number: BPRO8087123

Dear Sir / Madam,

Thank you for choosing Berkley Professional Liability and the W.R. Berkley Corporation for your professional liability insurance needs. We know that you have many choices for your insurance and we appreciate your choosing BerkleyPro.

BerkleyPro and all its employees are proud of our tradition of providing an exceptional insurance facility and making every effort to assure your satisfaction with our product and service. The people behind the promise to pay are critical to the value of any insurance policy. Like most services, you get what you pay for - the premium is only one part of the value of an insurance policy.

The most important service we provide and the greatest value you receive does not come from delivering the policy - it comes from handling your claims. While we help our policyholders with loss control and crisis avoidance, if the day comes when you face a claim, we will be there to help you navigate through the complexities of a professional liability claim.

Attached is a narrative outlining claims reporting guidelines in the event that a claim does occur, with many years of experience handling complex professional liability claims - I am confident you will be pleased to have BerkleyPro on your side.

Once again, thank you for choosing BerkleyPro and the W.R. Berkley Corporation. We hope that you will see the value in the people behind the promise and we hope to be your choice for your professional liability needs for years to come. Please call your professional liability insurance agent if you have any questions about BerkleyPro, or any comments about our service to you. Your satisfaction is important to us.

Regards,

*John R. Benedetto*

John R. Benedetto
President

## Claims Reporting Guidelines for the Insured

These guidelines should be followed to help Berkley Professional Liability provide efficient claims service.

### Claim Notices

All claim notices shall be sent to Berkley Professional Liability, Claims Department.  The notices must be reported as required by the policy to avoid problems regarding timely notice.  The address of the Berkley Professional Liability Claims, c/o Claims Department is as follows:

Berkley Professional Liability

Berkley Professional Liability Claims, c/o Claims Department

757 Third Avenue ■ 10th Floor ■ New York, NY 10017

Phone: (212) 618-2920

Claim Dept. Fax: (212) 618-2948

E-mail: claims@berkleypro.com

Notice of claim requiring immediate action:

If immediate action on the notice is needed the Insured should express mail the notice to BerkleyPros Claims Department.  Situations requiring immediate action may include:

1.    The Insured being served with a summons and complaint.

2.    The Insured needs to provide a response to the claimant immediately.

### Correspondence from the Insured

The claim notice should include a written narrative of the circumstances surrounding the claim or potential claim. The narrative should include, but not be limited to:

1.    Names of the insureds, policy number and effective dates.

2.    Names and addresses of the claimant.

3.    Details of the underlying claim, including its current status and the amount in controversy or relief demanded.

4.    All pertinent letters or documents necessary to properly evaluate the claim.

Please provide carbon copies to your professional liability insurance agent

of all claim notices and correspondence sent to Berkley Professional Liability

MI0PI2  (06-06)

# Berkley Insurance Company

475 Steamboat Road Greenwich, CT 06830

**Declarations Page**

## Excess Insurance

**CLAIMS MADE WARNING FOR DECLARATION: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS.  THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).**
**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in this Policy.

Policy Form:  EX 30200 (01-09)

Policy Number:
BPRO8087123

Item 1.    Name and Address of **Insured**:
Celsius Network, Inc.
121 River Street
PH05
Hoboken, NJ  07030

Person designated to receive all correspondence from the **Insurer**:
Sir / Madam

Item 2.    **Policy Period**:                 From July 8, 2022 (inception date) to  July 12, 2023 (expiration date)
*(Both dates at 12:01 a.m. Standard Time at the address of the **Insured**)*

Item 3.    Aggregate Limit of Liability for the **Policy Period** (inclusive of Costs of Defense):          $1,250,000
Item 4.    Premium:          $1,000,000
New Jersey Property Liability Insurance Guaranty Association (PLIGA) Surcharge:          $6,000

Item 5.    Endorsements attached:

| | | |
|---|---|---|
| 1. | 265 (01-15) | NOTICE OF TERRORISM INSURANCE COVERAGE. |
| 2. | EX 300151 (01-09) | Modifies the Policy to include state amendatory provisions. |
| 3. | EX 300999 (03-11) | Fully Earned Premium Endorsement |
| 4. | EX 304150 (01-09) | Amends section IV. of the Policy to add Quota Share provisions. |
| 5. | EX 306999 (rev. 05-10) | Follow Form Run-off Endorsement |

Item 6.    Notice to the **Insurer** shall be sent to:  Berkley Professional Liability, Berkley Professional Liability Claims, c/o Claims Department,
Address:   757 Third Avenue, 10th Floor, New York, NY  10017
Fax:       (212) 618-2948   Email:    claims@berkleypro.com

All other notices required to be given to the **Insurer** under this Policy shall be sent to:  Berkley Professional Liability
Address:   757 Third Avenue, 10th Floor, New York, NY  10017
Fax:       (212) 618-2940

Item 7.    Schedule of **Underlying Insurance**:

A.    **Followed Policy**:
Policy Period:                 From July 8, 2022 (inception date) to  July 12, 2023 (expiration date)
*(Both dates at 12:01 a.m. Standard Time at the address of the **Insured**)*

| Insurance Carrier | Policy Number | Limit of Liability |
|---|---|---|
| Indian Harbor Insurance Company | ELU184271-22 | $2,500,000 |

B.    Underlying Policy(ies):

| Insurance Carrier | Policy Number | Limit of Liability |
|---|---|---|
| Euclid | EFI1203088-00 | $1,500,000 |
| Indian Harbor Insurance Company | ELU183445-22 | $1,500,000 |
| Hudson Excess Insurance Company | HE-0303-7685 | $1,500,000 |
| Starstone Specialty Insurance Company | F77130210ASP | $1,500,000 |
| Associated Industries Insurance Company, Inc. | ANV156364A | $1,500,000 |
| Indian Harbor Insurance Company | ELU184271-22 | $2,500,000 |

Aggregate Underlying Limits of Liability:     $10,000,000

By accepting this Policy, the **Insureds** and the **Insurer**  agree that these Declarations, the completed and signed application (and its attachments), the Excess Insurance Policy and any written endorsements attached hereto constitute the entire contract between the **Insured** and the **Insurer**. This Policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

The **Insured** named in Item 1. of the Declarations shall act on behalf of all **Insureds** with respect to giving and receiving notices, paying premiums and receiving any premiums that may become due under this Policy.

August 26, 2022

Authorized Representative: _____    Date Issued: _____

**BERKLEY INSURANCE COMPANY**

# Excess Insurance Policy

*This is a Claims Made Policy.  Please read it carefully.*

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

# CLAIMS MADE WARNING FOR POLICY

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, in reliance on all statements in the application for this Policy and the **Followed Policy** and all other information provided to the **Insurer**, and subject to all provisions of this Policy, the **Insurer** and **Insureds** agree as follows:

## I. Insuring Agreement

This Policy provides excess coverage over the **Underlying Insurance** during the **Policy Period**.  Coverage hereunder attaches only after the **Underlying Insurance** has been exhausted by payments for losses and shall then apply in conformance with the provisions of the **Followed Policy** at its inception, except for premium, limit of liability and as otherwise specifically set forth in this Policy and any attached endorsements. In no event shall this Policy grant coverage other than that which is provided by the **Underlying Insurance**.

## II. Extended Reporting Period

If the **Insureds** purchase an extended reporting period under the **Followed Policy**, then the **Insureds** shall have the right to purchase an extension of this Policy in conformance with the terms, conditions and limitations of the extended reporting period of the **Followed Policy**. The right to purchase this Extended Reporting Period is contingent upon payment of an additional premium which will be calculated as a percentage of the full annual premium for this Policy. The additional percentage of premium charged for the Extended Reporting Period under the **Followed Policy** will be used as the percentage of the annual premium charged for purchasing the Extended Reporting Period under this Policy.  There is no separate or additional Limit of Liability for this Extended Reporting Period.

## III. Definitions

Whenever printed in boldface type, and whether in the singular or plural form in this Policy, the following terms shall have the meanings indicated below.

A.  "**Followed Policy**" means the policy listed in Item 7. A. of the Declarations.

B.  "**Insured**" means those persons or entities insured under the **Followed Policy**.

C.  "**Insurer**" means the entity issuing this Policy as listed on the Declarations Page.

D.  "**Policy Period**" means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy.

E.  "**Underlying Insurance**" means all policies scheduled in Item 7. of the Declarations.

## IV. Additional Policy Terms

Refer to attached endorsements, if applicable.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

## V. Limit of Liability

The Limit of Liability stated in Item 3. of the Declarations is the maximum limit of the **Insurer's** liability for all losses under this Policy. Costs of defense are not payable by the **Insurer** in addition to the Limit of Liability. The Limit of Liability available to pay damages or settlements shall be reduced, and may be exhausted by, amounts incurred as costs of defense.

## VI. Maintenance of Underlying Insurance

A. The **Underlying Insurance** shall be maintained in full effect during the **Policy Period**, except for any reduction of the limits of liability available under the **Underlying Insurance** solely by reason of payment of losses thereunder. Failure to comply with the foregoing shall not invalidate this coverage, but the **Insurer** shall not be liable to a greater extent than if this condition had been complied with. To the extent that the **Underlying Insurance** is not maintained in full effect during the **Policy Period**, then the **Insured** shall be deemed to retain any loss for the amount of the limit of liability of the **Underlying Insurance** which is not maintained. A condition of this coverage is that the **Insurer** be notified in writing, as soon as practicable, of any cancellation or alteration of any provision of the **Underlying Insurance**.

B. If the limits of liability of the **Underlying Insurance** are depleted solely as the result of actual payment of losses thereunder by the applicable insurers, this Policy shall, subject to the **Insurer's** Limit of Liability and to the other terms of this Policy, continue to apply to losses as excess insurance over the amount of insurance remaining under the **Underlying Insurance**. If the limits of liability of the **Underlying Insurance** are exhausted solely as a result of payment of losses thereunder, subject to this Policy's provisions the remaining Limit of Liability available under this Policy shall continue for subsequent losses as primary insurance and any retention specified in the **Followed Policy** shall be imposed under this Policy as to each claim made; otherwise no retention shall be imposed under this Policy.

C. This Policy only provides coverage excess of the **Underlying Insurance**. This Policy does not cover any loss not covered by the **Underlying Insurance** except and to the extent that such loss is not paid under the **Underlying Insurance** solely by reason of the reduction or exhaustion of the available **Underlying Insurance** through payment of loss thereunder. If the insurer issuing any of the **Underlying Insurance** fails to pay loss in connection with any claim covered thereunder as a result of the insolvency, bankruptcy, or liquidation of such insurer, then the **Insureds** shall be deemed to be self-insured for the amount of the limit of liability of such **Underlying Insurance** issued by such insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

## VII. Notices / Claims

The **Insureds** shall, as a condition precedent to their rights under this Policy, notify the **Insurer** of any claim, at the **Insurer's** address stated on the Declarations, in the same manner required by the provisions of the **Followed Policy**. The **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require. The **Insurer** may, at its sole discretion, participate in the investigation, settlement or defense of any claim against any of the **Insureds** even if the **Underlying Insurance** has not been exhausted.

The **Insured** shall not admit liability for or settle any claim or incur costs of defense, which are reasonably likely to involve the Limit of Liability of this Policy, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld.

In witness whereof, the **Insurer** has caused this Policy to be signed by its President and Chairman and Secretary, but this Policy shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**.

*President and Chairman*                    *Secretary*

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy. You are hereby notified that under the Act the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act is $0.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087123 |

| Effective Date of This Endorsement | Authorized Representative |
|---|---|
| 07/08/2022 | |

EX 30200 (01-09)            50639-BPRO8087123-766115            265 (01-15)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

## New Jersey
## State Amendatory

---

**THIS NOTICE IS REQUIRED BY LAW, IT DOES NOT CONSTITUTE AN ADMISSION OF LIABILITY BY THE INSURANCE COMPANY.**

Required Notice of Internal Appeals Procedures pursuant to N. J. A. C. 11:25 - 2.5(a)

In the event of any final coverage determination is unacceptable to you, Berkley Professional Liability provides an internal appeals process to review the decision.  Upon receipt of your appeal, a panel of at least 3 employees, who have had no prior involvement with the handling of your claim, will review the disputed decision.

If you wish to request an internal appeal follow these procedures:

1.      Send legible correspondence stating the specifics of the dispute to:

**Internal Claim Appeal**
**Berkley Professional Liability**
**757 Third Avenue, 10th Floor**
**New York, NY  10017**
**Tel: (212) 618-2900**
**Fax: (212) 618-2948**
**Email:  jbenedetto@berkleypro.com  (if via email include "NJ Internal Appeal" in subject line)**

2.      A written response will be forwarded to you within 10 days of receipt.

3.      If resolution is not possible, present your disputed claim to:

**Department of Banking and Insurance**
**Office of Claims Ombudsman**
**20 West State Street**
**P. O. Box 472**
**Trenton, NJ  08625**
**Fax: 1-609-292-2431**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087123 |
| Effective Date of This Endorsement 07/08/2022 | Authorized Representative |

EX 30200 (01-09)                    21333-BPRO8087123-766115                    EX 300151 (01-09)

**Berkley Insurance Company**

475 Steamboat Road  Greenwich, CT 06830

### Fully Earned Premium Endorsement

In consideration of the premium paid, it is understood and agreed that Section VII. General Conditions, A. Termination, Cancellation, and Non-Renewal of Policy is hereby deleted and replaced with the following:

It is a condition precedent to the issuance of this policy that the premium for this policy shall be fully earned at inception. This policy may be cancelled by the Insurer only for non-payment of premium when due. The Insurer shall provide at least 20 days written notice to the Parent Organization prior to any cancellation for non-payment of any premium.

Any notices to be given to the Parent Organization under this Section VIII. shall be provided to the Parent Organization at the last known principal address and to its insurance agent or broker. Certified mail of such notice shall be sufficient to perfect notice.

All other terms and conditions shall remain the same

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087123 |
| Effective Date of This Endorsement 07/08/2022 | Authorized Representative |

# Berkley Insurance Company
475 Steamboat Road  Greenwich, CT 06830

## Addition to Section IV.
## Quota Share Endorsement

In consideration of the premium paid for this Policy, it is understood and agreed that:

1. Item 3. of the Declarations is deleted in its entirety and replaced by the following:

    Item 3.
    A. Total Quota Share Layer Aggregate Limit of Liability for all losses during the **Policy Period**: $3,750,000

    B. Quota Share Layer Attachment Point: $10,000,000

    C. **Insurer's** Quota Share Participation: 33%%

    D. **Insurer's** Aggregate Quota Share Limit of Liability for the **Policy Period** (inclusive of Costs of Defense): $1,250,000

2. Item 4. of the Declarations is deleted in its entirety and replaced by the following:

    Item 4.
    A. Total Quota Share Layer Premium: $3,000,000

    B. **Insurer's** Quota Share Pro-Rata Premium: $1,000,000

3. Item 7. Schedule of **Underlying Insurance** of the Declarations is amended by the addition of the following:

    Item 7.   C. Quota Share Layer Participants:

| Insurance Carrier: | Policy Number: | Limit of Liability ($): |
|---|---|---|
| QBE Insurance Corporation | 130003109 | $1,250,000 |
| Endurance American Insurance Company | FIX30022351900 | $1,250,000 |

4. Section I. Insuring Agreement of this Policy is amended by the addition of the following:

    I.: It is further agreed that the **Insurer** shall pay on behalf of the **Insureds** under this Policy that proportion of covered loss set forth in the manner provided in Item 3. of the Declarations and in full conformance with the terms and conditions of this Policy.

5. Section IV. Additional Policy Terms of this Policy is amended by the addition of the following:

    IV.: Any covered loss within the Total Limit of Liability stated in Item 3. A. of the Declarations shall be paid *pro rata* by each of the insurers subscribing to this Quota Share Endorsement.  The participation of such insurers is set forth in Item 7. C. of the Declarations.  The obligations of such insurers who subscribe to the Quota Share Endorsement are several and not joint, and are limited to the extent of their individual subscriptions. Therefore, none of the subscribing insurers is responsible for the obligation of any co-subscribing insurer.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087123 |
| Effective Date of This Endorsement 07/08/2022 | Authorized Representative |

EX 30200 (01-09)                    21361-BPRO8087123-766115                    EX 304150 (01-09)

**Berkley Insurance Company**

475 Steamboat Road  Greenwich, CT 06830

IV.:    The **Insurer's** participation is set forth in Items 3. C. and 3. D. of the Declarations.  The **Insurer** has full claims and underwriting control of this portion of the Quota Share Endorsement and no action or omission by any of the co-subscribing insurers shall bind the **Insurer** or be deemed a waiver of any coverage defense the **Insurer** has under this Policy or available at law.  The **Insurer** shall act on its own behalf with respect to all other matters concerning this Policy, and no other insurer subscribing to this Policy may act on behalf of or bind the **Insurer** with respect to this Policy terms or any matter concerning this Policy.  All notices by the **Insureds** to the insurers under this Policy shall be provided to the **Insurer** at the address specified in the Declarations.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087123 |
| Effective Date of This Endorsement | Authorized Representative |
| 07/08/2022 | |

EX 30200 (01-09)                    21361-BPRO8087123-766115                    EX 304150 (01-09)

**Berkley Insurance Company**
475 Steamboat Road  Greenwich, CT 06830

---

# Addition to Section VI.
# Follow Form of Specific Underlying Endorsement

In consideration of the premium paid, it is understood and agreed that section VI. Maintenance of Underlying Insurance of this Policy is amended by the addition of the following:

VI.:     Notwithstanding the foregoing, the Policy shall provide coverage excess of the **Underlying Insurance** in conformance with the provisions of the endorsements set forth below and attached Indian Harbor Insurance Company  Policy # ELU184271-22

| Endorsement Number | Endorsement Name |
|---|---|
| 3 | CONVERT POLICY TO RUN-OFF UPON HAPPENING OF SPECIFIC EVENT |

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087123 |
| Effective Date of This Endorsement 07/12/2023 | Authorized Representative |

EX 30200 (01-09)                   50524-BPRO8087123-766115                   EX 306999 (rev. 05-10)

POLICY NUMBER:   130003109

QBEX-3001  (01-14)



**QBE Insurance Corporation**
55 Water Street, New York, NY 10041

Home Office:  co C/T Corporation System, 116 Pine Street, Suite 320, Harrisburg, PA 17101

# EXCESS INSURANCE POLICY DECLARATIONS

**THIS POLICY IS A CLAIMS MADE POLICY AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**THIS PREMIUM INCLUDES THE SURCHARGE REQUIRED BY KRS 136.392**

**Item 1**:     Named Insured:      Celsius Network, Inc.
            Mailing Address:     211 River Street, 9th Floor
                            Hoboken, NJ 07030

**Item 2**:     Policy Period
                From: July 08, 2022      To: July 12, 2023
                At 12:01 A.M. Standard Time at the mailing address stated in Item 1

**Item 3**:     Limit of Liability (Excess of $10,000,000)
                A.  $1,250,000           any one Claim (subject to Quota Share Endorsement)
                B.  $1,250,000           in the aggregate (subject to Quota Share Endorsement)

**Item 4**:     A.  Followed Policy
                Insurer:              Indian Harbor Insurance Company
                Policy Number:        ELU184271-22
                Limits of Liability:   $2,500,000/$2,500,000
                Policy Period:        July 08, 2022 to July 12, 2023

            B.  Underlying Insurance: See Schedule of Underlying Insurance

**Item 5**:     Premium and Applicable Charges
                Premium: $1,000,000.00
                New Jersey Property Liability Insurance Guaranty Association: $6,000.00
                Total Premium: $1,006,000.00

**Item 6**:     A. Notice to Insurer of a Claim or circumstance:            B. All Other Notices to Insurer:

            QBE Insurance Corporation                          QBE Insurance Corporation
            Attn: The Claims Manager                           Attn: Underwriting
            55 Water Street                                    55 Water Street
            New York, NY 10041                                 New York, NY 10041
            1-877-772-6771                                     1-877-772-6771
            professional.liability.claims@us.qbe.com           mlpladmin@us.qbe.com

In witness whereof, the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

**QBEX-3001  (01-14)**                                                           Page **1** of **2**

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

Russell Johnston
President

Jose Ramon Gonzalez Jr.
Secretary

July 18, 2022
Date

QBE and the links logo are registered service marks of  QBE Insurance Group Limited.

POLICY NUMBER:   130003109                                                   QBEX-1000 (01-14)



# EXCESS INSURANCE POLICY

**I.  INSURING CLAUSE**

The Insurer shall provide insurance coverage in accordance with the same terms, conditions and limitations of the **Followed Policy**, including those involving policy termination, representations and severability, notice and extended reporting period, and in accordance with the terms and conditions set forth herein.

**II.  GENERAL CONDITIONS**

The conditions set forth in this Section **II. GENERAL CONDITIONS** are in addition to those set forth in the **Followed Policy**, and are specific to the coverage provided by this Policy.

(a)  Coverage under this Policy shall attach only after exhaustion of the limits of liability of the **Underlying Insurance.** The Insurer shall recognize monetary contribution by or on behalf of an Insured to such exhaustion of the limits of liability of the **Underlying Insurance**.

(b)  The limits of liability set forth in Item 3 of the Declarations represent the maximum amount payable under this Policy during the Policy Period for any one Claim and in the aggregate.

(c)  If the limits of liability of the **Underlying Insurance** are reduced, this Policy shall continue in force as excess insurance for the remaining amount of the limits of liability of the **Underlying Insurance.**  If the limits of liability of the **Underlying Insurance** are exhausted, this Policy shall continue in force as primary insurance, subject to any applicable retention.

(d)  The Policy does not provide excess insurance above any sub-limit of liability available under any **Underlying Insurance**, unless the Insurer has agreed to provide such excess coverage by separate endorsement to this Policy. However, where payment of amounts subject to a sublimit erode or reduce the limits of liability of the **Underlying Insurance,** this Policy shall recognize such erosion or reduction of the limits of liability of the **Underlying Insurance**.

(e)  All notices to the Insurer shall be sent to the applicable address set forth in Item 6 of the Declarations.

(f)  The Insurer may elect to effectively associate in the investigation, settlement or defense of any claim reasonably likely to be covered under this Policy.

(g)  Any change in or modification to **Underlying Insurance** or this Policy or assignment of interest under this Policy must be agreed to in writing by Insurer, and in no event shall any such change, modification or assignment affect this Policy's excess position or attachment point.

**III.  EXCESS POLICY DEFINITIONS**

Any term used in this Policy that is defined in the **Followed Policy** shall have the same meaning as assigned to such term in the **Followed Policy**.

(a)  **Followed Policy** means the insurance policy set forth in Item 4A. of the Declarations.

(b)  **Underlying Insurance** means the **Followed Policy** and any other insurance policies set forth in Item 4B. of the Declarations.

# SCHEDULE OF UNDERLYING INSURANCE

1.  Insurer:                      Euclid Financial
    Policy Number.                EFI1203088-00
    Policy Period:                From: May 30, 2021   To: June 15, 2023
    Limits of Liability:          $1,500,000 excess of $1,500,000

2.  Insurer:                      Indian Harbor Insurance Company
    Policy Number.                ELU183445-22
    Policy Period:                From: May 30, 2021    To: June 15, 2023
    Limits of Liability:          $1,500,000 excess of $1,500,000

3.  Insurer:                      Hudson Excess Insurance Company
    Policy Number.                HE-0303-7685
    Policy Period:                From: May 30, 2021   To: June 15, 2023
    Limits of Liability:          $1,500,000 excess of $3,000,000

4.  Insurer:                      Starstone Specialty Insurance Company
    Policy Number.                F77130210ASP
    Policy Period:                From: May 30, 2021   To: June 15, 2023
    Limits of Liability:          $1,500,000 excess of $4,500,000

5.  Insurer:                      Associated Industries Insurance Company, Inc.
    Policy Number.                ANV156364A
    Policy Period:                From: May 30, 2021   To: June 15, 2023
    Limits of Liability:          $1,500,000 excess of $6,000,000

6.  Insurer:                      Indian Harbor Insurance Company
    Policy Number.                ELU184271-22
    Policy Period:                From July 08, 2022      To: July 12, 2023
    Limits of Liability:          $2,500,000 excess of $7,500,000



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# QUOTA SHARE ENDORSEMENT

| Name of Parent Company: | Celsius Network, Inc. |
|---|---|
| Policy Number: | 130003109 |
| Endorsement Number: | 001 |
| Effective Date of Endorsement: | July 12, 2022 |
| Name of Insurer: | QBE Insurance Corporation |

This Policy is part of a quota share arrangement. The Insurer shall be liable only for its agreed upon share of the Limit of Liability set forth in Item 3 of the Declarations, as set forth in the table below. In no event shall the Insurer be liable for any amount greater than such agreed upon share of the Item 3 Limit of Liability coverage. The quota share participants provide the following limits of liability:

| Participating Insurer | Participating Insurer's Policy Number | Participating Insurer's Limit any one Claim/in the Aggregate |
|---|---|---|
| Berkley Insurance Company | BPRO8087124 | $1,250,000/$1,250,000 |
| Endurance American Insurance Company | FIX30022351900 | $1,250,000/$1,250,000 |
| QBE Insurance Corporation | 130003109 | $1,250,000/$1,250,000 |

The failure, refusal or inability of any Participating Insurer to pay its respective share of the Item 3 Limit of Liability, including an inability based upon insolvency, shall have no affect on the liability of any other Participating Insurer.

All other terms and conditions of this Policy remain unchanged.

QBEX-2026 (01-14)                                    © QBE , 2014                                    Page 1 of 1



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FULLY EARNED PREMIUM ENDORSEMENT

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network, Inc. |
| **Policy Number:** | 130003109 |
| **Endorsement Number:** | 002 |
| **Effective Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance Corporation |

It is hereby agreed that all premiums charged for coverage under this Policy are considered fully earned regardless of any other provisions for return premium contained elsewhere in this Policy. In the event of termination of this Policy by the Insured or Insurer, no portion of the premium shall be repayable to the Insured.

All other terms and conditions of this Policy remain unchanged.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## FOLLOW FORM TO SPECIFIC ENDORSEMENT

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network, Inc. |
| **Policy Number:** | 130003109 |
| **Endorsement Number:** | 003 |
| **Effective Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance Corporation |

This endorsement modifies insurance provided under the following:

THE EXCESS POLICY

It is agreed that the following is added to the Policy:

Notwithstanding anything to the contrary, this Policy shall follow endorsement # 3, entitled CONVERT POLICY TO RUN-OFF UPON HAPPENING OF SPECIFIC EVENT of policy number ELU184271-22 issued by Indian Harbor Insurance Company.

All other terms and conditions of this Policy remain unchanged.

© **QBE**, 2017



# Notice to Policyholders
# U.S. TREASURY DEPARTMENT'S
# OFFICE OF FOREIGN ASSETS
# CONTROL ("OFAC")

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

**PLEASE READ THIS NOTICE CAREFULLY**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

> ➢ Foreign agents;
> ➢ Front organizations;
> ➢ Terrorists;
> ➢ Terrorist organizations; and
> ➢ Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



# US Insurance

## Excess Liability

**Policy Number:** FIX30022351900
**Effective Dates:** July 08, 2022 To: July 12, 2029
**Endurance American Insurance Company**



**Issuing Office:**
1221 Avenue of the Americas
New York, NY 10020
www.sompo-intl.com

PN 0027 0221



## Endurance American Insurance Company
### Wilmington, Delaware

## EXCESS LIABILITY POLICY DECLARATIONS

NOTICE:  Depending on the terms and conditions of the Followed Form, this Policy may (1) only provide coverage for Loss from Claims first made or first made and reported during the Policy Period; and (2) have its Limit of Liability reduced by payment for defense costs.  Please read the Followed Form and this Policy carefully to determine your rights, duties and what is and what is not covered.  In the event of any conflict between the terms and conditions of this Policy and the Underlying Policy(ies), the terms and conditions of this Policy shall control.  Terms defined in the Followed Form are used herein with the meaning assigned to them in the Followed Form unless otherwise indicated.

POLICY NUMBER:          FIX30022351900

| Item 1. | Named Insured:<br>Address: | Celsius Network, Inc.<br>221 River Street,<br>9th Floor<br>Hoboken, NJ 07030 |

Item 2.    Policy Period:          From: July 08, 2022          To: July 12, 2029

(12:01 AM Standard Time on both dates at the address of the  Named Insured noted above.)

Item 3.    Limit of Liability:          $1,250,000 part of $3,750,000 excess of $10,000,000

Item 4.    Pending & Prior Litigation
Date:          TBD

| Item 5. | Premium:<br>TRIA<br>State Surcharge:<br>Total: | $1,000,000<br>*Premium includes TRIA coverage<br>$6,000<br>$1,006,000 |

| Item 6. | Producer:<br>Address: | Cobbs Allen Capital, LLC dba CAC Specialty<br>250 Filmore Street<br>Suite 450<br>Denver, CO 80206 |

Item 7.    A.  Underlying Policy(ies):

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| Indian Harbor Insurance Company | ELU184271-22 | $2,500,000 | Primary |

B.  Followed Form:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| Indian Harbor Insurance Company | ELU184271-22 | $2,500,000 | Primary |

Item 8.    Forms and Endorsements Effective at Inception:
See attached Forms and Endorsements Schedule, IL 0101.

Item 9.    Notice:

A.  Claims or Potential Claims:    Financial Institutions
Attn:  Claims Department
1221 Avenue of The Americas
New York, NY 10020
Insuranceclaims@sompo-intl.com
1-877-676-7575

B.  All Other:    Financial Institutions
Attn: Professional Lines Underwriting Department
1221 Avenue of The Americas
New York, NY 10020

This Policy shall constitute the contract between the Insureds and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_____          August 31, 2022
_____
Authorized Representative                              Date

# EXCESS LIABILITY POLICY

In consideration of the premium paid and in reliance on all statements made and information furnished by the Insureds in the Application or the underwriting of this Policy, and subject to the terms and conditions of this Policy, the Insurer, and the Named Insured, on behalf of all Insureds, agree as follows:

I.   INSURING CLAUSE

This Policy shall provide to the Insureds insurance coverage for any covered Loss resulting from covered Claims, and shall attach to the Insurer only after (i) the insurers of the Underlying Policy(ies), the Insureds, and/or any other party shall have paid in legal currency the full amount of the Underlying Limit, and (ii) the Insureds shall have paid any applicable retention or deductible under the Primary Policy. The Limit of Liability set forth in Item 3. of the Declarations shall be the maximum amount payable by the Insurer under this Policy.

II.  TERMS AND CONDITIONS

A.  This Policy, except as stated herein, is subject to all terms, conditions and limitations as contained in the Followed Form as of inception of this Policy, and to the extent coverage is further limited or restricted thereby, in any other Underlying Policy(ies).

B.  If any coverage under the Underlying Policy(ies) is subject to a sublimit of liability, this Policy shall not apply to such coverage, but the Insurer shall recognize any Loss paid under such coverage in any manner described in the Insuring Clause as reducing the Underlying Limit by the amount of such paid Loss.

C.  If any Underlying Policy(ies) is changed or terminated the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policy(ies) been so maintained, unless the Insurer agrees to the change in writing.  The risk of uncollectability of the Underlying Policy(ies) whether because of insolvency of an underlying insurer or for any other reason is expressly retained by the Insureds.

D.  Notice to the Insureds may be given to the Named Insured at the address shown in Item 1. of the Declarations.  Notice to the Insurer shall be given to the Insurer at the address shown in Item 9. of the Declarations.  Notice to any insurer of an Underlying Policy(ies) shall not constitute notice to the Insurer unless also given to the Insurer as provided above.

E.  The Insurer may, at its sole discretion, participate in the investigation, defense or settlement of any Claim or other matter to which coverage under this Policy could apply even if the Underlying Limit has not been exhausted.  No action by any other insurer shall bind the Insurer under this Policy.  The Insurer shall not be liable under this Policy for any settlements, stipulated judgments or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

III.  DEFINITIONS

1.  Followed Form, Underlying Policy(ies) and Limit of Liability have the meanings attributed to them in the Declarations.

2.  Insureds mean all natural persons and entities insured by the Followed Form.

3.  Named Insured means the entity named in Item 1. of the Declarations.

4.  Primary Policy means the first listed policy in Item 7.A. of the Declarations.

5.  Policy Period means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with the Followed Form.

6.  Underlying Limit means an amount equal to the aggregate of all limits of liability, as set forth in Item 7. of the Declarations, for all Underlying Policy(ies), plus any applicable retention or deductible under the Primary Policy.

# FORMS AND ENDORSEMENT SCHEDULE

### EXCESS LIABILITY

| End. No. | Title | Number |
|---|---|---|
| | Excess Liability Policy Declarations | PEO 0001 0413 |
| | Excess Liability Policy | PEO 0201 0413 |
| | Forms and Endorsement Schedule | IL 0101 0712 |
| 1 | New Jersey Changes | PEO 0339 0413 NJ |
| 2 | Follow Run-Off Endorsement | PEO 0380 1219 |
| 3 | Several Liability for Quota Share Coverage | PEO 1310 0413 |
| 4 | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| 5 | Disclosure Pursuant to Terrorism Risk Insurance Act | IL 1214 1220 |
| | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0721 |
| | Signature Page | IL 1007 0114 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*

# ENDORSEMENT

Named Insured:  Celsius Network, Inc.                    Policy Number:  FIX30022351900

Endorsement                                              Endorsement
Effective Date:  July 08, 2022                           Number:        1
                (12:01 AM Standard Time at the address of the
                Named Insured as shown in the Declarations)

## NEW JERSEY CHANGES

It is agreed that:

1.  Notwithstanding anything in this Policy to the contrary, the insurance coverage as is afforded by this Policy, as respects coverage for operations in New Jersey, shall conform to the coverage requirements of the applicable insurance laws and regulations of New Jersey.

2.  This Policy and the Policy Period shall terminate at the earliest of the effective date of nonrenewal of the Policy Period shown in Item 2 of the Declarations or the effective date of cancellation, as described below.

    A.  CANCELLATION

        1.  The Named Insured may cancel this Policy by surrender of this Policy to the Insurer or by giving prior written notice to the Insurer stating when such cancellation shall take effect.

        2.  The Insurer may cancel this Policy only for nonpayment of premium.  In such event, the Insurer shall mail written notice of cancellation for nonpayment of premium to the Named Insured.  Such notice shall state the effective date of cancellation, which shall not be less than ten (10) days after mailing such notice.

        3.  In the event of cancellation, the Insurer shall refund the unearned premium computed pro rata.

    B.  NONRENEWAL

        1.  The Insurer shall mail to the Named Insured written notice, at least thirty (30) days, but not more than one hundred and twenty (120) days, prior to the expiration of the Policy Period:

            a.  if the Insurer elects not to renew this Policy, including the reason for nonrenewal; or,

            b.  if the Insurer elects to renew this Policy with a change in contract terms; the amount of the renewal premium, and the changed contract terms.

    C.  NOTICE
        The Insurer shall send all notices required under this endorsement by certified mail to the Named Insured at the address in Item 1 of the Declarations, and by mail or electronic mail to the Named Insured's authorized agent, if any.  Proof of mailing will be sufficient proof of notice.

3.  Pursuant to New Jersey law, this Policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the Named Insured. The underwriting reasons or guidelines that an Insurer can use to cancel or nonrenew this Policy are maintained by the Insurer in writing and will be furnished to the Named Insured and/or the Named Insured's lawful representative upon written request. However, this provision shall not apply if this Policy has been in effect for less than sixty (60) days at the time notice of cancellation is mailed or delivered, unless the Policy is a renewal Policy.

_____
                    Authorized Representative


This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# E N D O R S E M E N T

| | |
|---|---|
| Named Insured:  Celsius Network, Inc. | Policy Number:  FIX30022351900 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | July 08, 2022 | Endorsement Number: | 2 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | | |

## FOLLOW RUN-OFF ENDORSEMENT

In consideration of an additional premium of $1,000,000 it is agreed that:

Notwithstanding any provision in this Policy to the contrary, this Policy shall provide excess insurance coverage in conformance with Endorsement #3, Convert Policy To Run-Off upon Happening of Specific Event CS 80 450 08 17 of the Followed Form and such endorsement shall apply to this Policy to the same extent that it applies to the Followed Form.

_Thomas Nash_

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | |
|---|---|---|
| Named Insured: Celsius Network, Inc. | Policy Number: | FIX30022351900 |

Endorsement
Effective Date:    July 08, 2022

12:01 AM Standard Time at the address of the Named
Insured as shown in the Declarations.

Endorsement
Number:    3

## SEVERAL LIABILITY FOR QUOTA SHARE COVERAGE

It is agreed that:

1.  This Policy is part of a quota share layer of insurance coverage for the Insureds, which consists of the following participants:

| Insurer | Limit of Liability |
|---|---|
| Berkley Insurance Company | $ 1,250,000 |
| QBE Insurance Corporation | $ 1,250,000 |
| Endurance American Insurance Company | $ 1,250,000 |

Total Quota Share Layer Limit of Liability:  $3,750,000

The Insurer shall be liable only for such portion of any covered Loss as this Policy's aggregate Limit of Liability bears to the total quota share layer limit of liability as set forth above. In no event shall the Insurer be liable for an amount greater than such portion of covered Loss, whether or not the other insurer(s) in the quota share layer pay their respective portion of such Loss.

2.  The Insurer shall separately have all of the rights granted to the Insurer under this Policy and/or any Underlying Policy(ies) with respect to any Claim, including without limitation the right to consent to any defense costs, settlement or other Loss and the right to participate in the investigation, settlement or defense of any covered Claim. No other insurer shall exercise any such rights on behalf of the Insurer without the express written consent of the Insurer. In addition, the Insureds shall give any notice under this Policy to the Insurer, and any notice given to any other insurer shall not constitute notice to the Insurer.

_____
                Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Date of Issuance:  August 31, 2022                                    Policy Form: PEO 0201 0413
Endurance American Insurance Company        Page 1 of 1        Endorsement Form: PEO 1310 0413

# E N D O R S E M E N T

| | |
|---|---|
| Named Insured:  Celsius Network, Inc. | Policy Number:  FIX30022351900 |

| | |
|---|---|
| Endorsement Effective Date:  July 08, 2022 | Endorsement Number:  4 |

12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

E N D O R S E M E N T

| | | | |
|---|---|---|---|
| Named Insured: | Celsius Network, Inc. | Policy Number: | FIX30022351900 |

Endorsement
Effective Date: July 08, 2022

12:01 AM Standard Time at the address of the
Named Insured as shown in the Declarations.

Endorsement
Number:        5

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO
THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS
ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND
CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

It is agreed that:

SCHEDULE:   Terrorism Premium (Certified Acts): Included in Premium

A.   Disclosure of Premium
     In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you
     with a notice disclosing the portion of your premium (shown in the Schedule above), if any,
     attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as
     amended and reauthorized. The portion of your premium attributable to such coverage is
     shown in the Schedule of this endorsement.

B.   Disclosure of Federal Participation in Payment of Terrorism Losses
     The United States government, Department of the Treasury, will pay a share of terrorism
     losses insured under the federal program. The federal share equals 80% of that portion of the
     amount of such insured losses that exceeds the applicable insurer retention.  However, if
     aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk
     Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment
     for any portion of the amount of such losses that exceeds $100 billion.

C.   Cap On Insurer Participation In Payment Of Terrorism Losses
     If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk
     Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible
     under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion
     of the amount of such losses that exceeds $100 billion, and in such case insured losses up to
     that amount are subject to pro rata allocation in accordance with procedures established by
     the Secretary of the Treasury.

# E N D O R S E M E N T



_____
         Authorized Representative


This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.


Date of Issuance: August 31, 2022                                                    Policy Form: PEO 0201 0413
Endurance American Insurance Company                    Page 2 of 2        Endorsement Form: IL 1214 1220

## POLICYHOLDER NOTICE

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website - http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.



# Endurance American Insurance Company
## 1221 Avenue Of the Americas
## New York, NY  10020

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

_____
Senior Vice President

_____
President



**XL Insurance**

**AXA XL - Professional Insurance**
100 Constitution Plaza, 17th  Floor,
Hartford, CT 06103
Phone 860-246-1863, Fax 860-246-1899

September 13, 2022


Brad McDonald
Cobbs Allen Capital, LLC
250 Fillmore Street
Suite 450
Denver, CO 80206


**Re: Celsius Network, Inc.**
     **Excess Policy**


Dear Brad,


Enclosed, please find the policy for **Celsius Network, Inc.** Thank you for choosing XL Insurance.
Please call if you have any questions or concerns.


Sincerely,


Stu Perry

mk

**Policy Number:** **ELU184274-22**

**Renewal of Number:** N/A

**XL Specialty Insurance Company**

(Hereafter called the Insurer)

---

## EXCESS POLICY DECLARATIONS

---

Executive Offices:
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

Regulatory Office:
505 Eagleview Blvd., Ste. 100
Exton, PA 19341-1120
Telephone: 800-327-1414

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**Item 1.**     **Name and Mailing Address of Insured Entity:**

Celsius Network, Inc.
221 River Street
9th Floor
Hoboken, NJ 07080

The Insured Entity will be the sole agent for and will act on behalf of the Insured with respect to all matters under this Policy.

---

**Item 2.**     **Policy Period:**     **From:**     July 12, 2022     **To:**     July 12, 2023

**At 12:01AM Standard Time at your Mailing Address Shown Above**

---

**Item 3.**     **Limit of Liability:**

$2,500,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**     **Schedule of Underlying Insurance:**

|     |     | Insurer | Policy No | Limit of Liability |
|-----|-----|---------|-----------|--------------------|
| (a) | Primary Policy | Euclid Financial | EFI1203088-00 | $1,500,000 |
| (b) | Underlying Excess Policy | Indian Harbor Insurance Company | ELU183445-22 | $1,500,000 |
|     |     | Hudson Excess Insurance Company | HE-0303-7685 | $1,500,000 |
|     |     | Starstone Specialty Insurance Company | F77130210ASP | $1,500,000 |
|     |     | Associated Industries Insurance Company, Inc. | ANV156364A | $1,500,000 |
|     |     | Indian Harbor Insurance Company | ELU184271-22 | $2,500,000 |
|     |     | QBE Insurance Corporation | 130003109 | $1,250,000 part of $3,750,000 |
|     |     | Berkley Insurance Company | BPRO8087123 | $1,250,000 part of $3,750,000 |
|     |     | Endurance American Insurance Company | FIX30022351900 | $1,250,000 part of $3,750,000 |

---

XS 70 01 05 14

Page 1 of 2

© 2014 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

| | |
|---|---|
| **Item 5.** | **Notices required to be given to the Insurer must be addressed to:** |

XL Professional Insurance
100 Constitution Plaza, 13th Floor
Hartford, CT 06103
by electronic mail (email) to: <u>proclaimnewnotices@axaxl.com</u>.
Toll Free Telephone: 877-953-2636

| | |
|---|---|
| **Item 6.** | **Premium:** |

| | |
|---|---|
| NJ Property & Liability Guaranty Association (PLIGA): | $9,000.00 |
| Total Policy Premium: | $1,500,000.00 |

| | |
|---|---|
| **Item 7.** | **Policy Forms and Endorsements Attached at Issuance:** |

XS 71 00 05 14   XS 80 224 11 21   XS 80 07 12 14   XL 80 66 03 11   XS 83 09 03 15   XS 83 07 03 15
XS 83 02 12 14   XL 83 65 05 06

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

© 2014 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____          _____
Joseph Tocco                                      Toni Ann Perkins
President                                         Secretary

LAD 400 0915 XLS
© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that the Terrorism Risk Insurance Act, as amended in 2019, defines an act of terrorism in  Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States —to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $waived, and does not include any charges for the portion of losses covered by the United States government under the Act.

PN161 12 20 T

© 2020 X.L. America, Inc.
Includes copyrighted material of National Association of Insurance Commissioners, with its permission.

NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

<u>Our Privacy Promise</u>

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

<u>Collection and Sources of Information</u>

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

•   Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
•   Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;

PN CW 02 0119                                                                                          Page 1 of 3

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

PN CW 02 0119                                                                                         Page 2 of 3
© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Alabama** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **California** | **General: All applications for commercial insurance, other than liability insurance:** Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.<br><br>**All applications for liability insurance and all claim forms:** For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance that such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| | imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.<br><br>**WARNING: All Workers Compensation Insurance**:<br>Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:<br>1.  obtaining any benefit or payment,<br>2.  increasing any claim for benefit or payment, or<br>3.  obtaining workers' compensation coverage under the Administrative Workers' Compensation Act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**Endorsement No.: 1**

**Named Insured: Celsius Network, Inc.**

**Policy No.: ELU184274-22**

**Policy Form: EXCESS POLICY**

**XS 80 224 11 21**

**Effective: July 12, 2022**

**12:01 A.M. Standard Time**

**Insurer: XL Specialty Insurance Company**

# EXCESS TERRORISM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that any endorsement of the Underlying Insurance which specifically precludes coverage for an "insured loss" resulting from an "act of terrorism" (as such terms are defined in the Terrorism Risk Insurance Program Reauthorization Act of 2019) which would otherwise be provided coverage under the Underlying Insurance shall be inapplicable to this Policy (any such endorsement, a "Terrorism Endorsement").  Subject to all other terms, conditions and limitations of the Policy and the Underlying Insurance, other than the Terrorism Endorsement, coverage for acts of terrorism is included in this Policy as set forth in the Policy Holder Notice of Terrorism Insurance Coverage notice to this Policy.  In any event, coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of loss by the applicable insurers thereunder, regardless of whether any such Terrorism Endorsement is included in any Underlying Insurance.  The Insurer will not be liable under this Policy to any earlier degree than the Insurer would have had this Endorsement not been a part of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2021 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.: 2**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184274-22**

**Effective: July 12, 2022**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCESS ENDORSEMENT

In consideration of the premium charged:

(1)     It is understood and agreed that the Limit of Liability for this Policy as set forth in Item 3 of the Declarations is the maximum amount payable, including Defense Expenses, by the Insurer under this Policy.  Any provision of the Underlying Insurance indicating any ability or right to any reinstatement of such policy's limit of liability shall be inapplicable to this Policy, including any provision indicating a reinstatement of such policy's limit of liability during any extended discovery or reporting period.  The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

(2)     It is understood and agreed that the Insurer is under no obligation to renew this Policy upon its expiration. Any provision of the Underlying Insurance indicating any automatic renewal of this Policy shall be inapplicable to this Policy.   The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**XL 80 66 03 11**

**Endorsement No.: 3**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184274-22**

**Effective: July 12, 2022**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# FULLY EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, the entire premium for this Policy, as set forth in Item 6. of the Declarations, shall be deemed to be fully earned as of the Inception Date of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*© 2011 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

**Endorsement No.: 4**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184274-22**

**Effective: July 12, 2022**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PRIOR ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, or wrongful act committed or allegedly committed prior to July 12, 2022.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.: 5**
**Named Insured: Celsius Network, Inc.**
**Policy No.: ELU184274-22**

**Effective: July 12, 2022**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PRIOR NOTICE EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for any claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, which, before the Inception Date of this Policy, was the subject of any notice given under any other insurance policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc. All Rights Reserved. May not be copied without permission.

**XS 83 02 12 14**

**Endorsement No.: 6**                    **Effective: July 12, 2022**
**Named Insured: Celsius Network, Inc.**   **12:01 A.M. Standard Time**
**Policy No.: ELU184274-22**               **Insurer: XL Specialty Insurance Company**

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to July 12, 2022.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

| | |
|---|---|
| **Endorsement No.: 7** | **Effective: July 12, 2022** |
| **Named Insured: Celsius Network, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU184274-22** | **Insurer: XL Specialty Insurance Company** |

# SPECIFIED CLAIM EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from or in consequence of any such proceeding or any fact, circumstance or situation underlying or alleged therein:

KEYFI, INC.  v. CELSIUS NETWORK LIMITED AND CELSIUS KEYFI LLC, filed in the Supreme Court of the State of New York on July 7, 2022.

BRADLEY CONDIT VS. CELSIUS NETWORK LLC AND YARON SHALEM, filed in the United States District Court, Southern District, on June 28, 2022.

All other terms, conditions and limitations of this Policy shall remain unchanged.

# EXCESS POLICY COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (the Insurer) and to the issuer(s) of the Underlying Insurance, the Insurer and the insureds agree as follows:**

## I.      INSURING AGREEMENT

The Insurer will provide coverage excess of the Underlying Insurance stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of both the Primary Policy stated in ITEM 4 (A) of the Declarations and of any other Underlying Excess Policy stated in ITEM 4 (B) of the Declarations. The coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of covered amounts under the Underlying Insurance by the applicable insurers thereunder or by any other source. To the extent that any terms, conditions, and endorsements of the Policy may be inconsistent with any terms, conditions, and endorsements of the Underlying Insurance, the terms, conditions, and endorsements of this Policy shall govern.

## II.      DEPLETION OF UNDERLYING LIMITS OF LIABILITY

The coverage hereunder shall attach only after the limits of all Underlying Insurance have been exhausted by payment of covered amounts. Subject to the terms, conditions, and endorsements of this Policy and the Underlying Insurance, this Policy will continue to apply to covered amounts as primary insurance in the event of the exhaustion of all of the limits of liability of such Underlying Insurance as the result of the actual payment of covered amounts by the applicable insurer thereunder or by any other source. Any risk of uncollectibility with respect to the Underlying Insurance will be expressly retained by the insureds and will not be assumed by the Insurer.

## III.      RIGHTS AND CLAIM PARTICIPATION

The Insurer shall have the same rights, privileges and protections afforded to the insurer(s) of the Underlying Insurance and may, at its sole discretion, elect to participate in the investigation, settlement and/or defense of any claim against the insureds even if the Underlying Insurance has not been exhausted. The insureds will provide such information and cooperation as is reasonably requested. The insureds shall not do anything that prejudices the Insurer's position or potential rights of recovery, including, but not limited to, terminating any Underlying Insurance.

## IV.      LIMIT OF LIABILITY

The amount stated in ITEM 3 of the Declarations is the limit of liability of the Insurer and shall be the maximum amount payable, including defense expenses, by the Insurer under this Policy. Defense expenses are part of and not in addition to the limit of liability and the payment of such will reduce the limit of liability.

## V.      NOTICE, ALTERATION, AND TERMINATION

(A)      Where the Underlying Insurance permits or requires notice to the Insurer, the insureds shall have the same obligations and rights to notify the Insurer under this Policy. All notices required under the Underlying Insurance policies and this Policy shall be sent to the address set forth in ITEM (5) of the Declarations: Attention Claim Department or by electronic mail to: proclaimnewnotices@xlgroup.com. Notice given to any underlying insurer will not be deemed notice to the Insurer.

(B)      No change in or modification of this Policy shall be effective unless made by endorsement. In the event of a change of any kind to any Underlying Insurance that broadens or expands coverage, this Policy will become subject to such change only if and to the extent that the Insurer consents to such change in writing and the insured pays any additional premium that may be required by the Insurer.

(C)      This Policy will terminate immediately upon the termination of any of the Underlying Insurance, whether cancelled by the insured or the applicable insurer. Notice of cancellation or non-renewal of any such policies duly given by any of the applicable insurers shall serve as notice of the cancellation or non-renewal of this Policy by the Insurer.

757 Third Avenue, 10th Floor
New York, NY 10017
(212) 618-2900
Fax (212) 618-2940

# Excess Side A Directors and Officers Liability Insurance

September 28, 2022

Sir / Madam
Celsius Network, Inc.
121 River Street
PH05
Hoboken, NJ 07030

Binder/Policy Number: BPRO8087124

Dear Sir / Madam,

Thank you for choosing Berkley Professional Liability and the W.R. Berkley Corporation for your professional liability insurance needs. We know that you have many choices for your insurance and we appreciate your choosing BerkleyPro.

BerkleyPro and all its employees are proud of our tradition of providing an exceptional insurance facility and making every effort to assure your satisfaction with our product and service. The people behind the promise to pay are critical to the value of any insurance policy. Like most services, you get what you pay for - the premium is only one part of the value of an insurance policy.

The most important service we provide and the greatest value you receive does not come from delivering the policy - it comes from handling your claims. While we help our policyholders with loss control and crisis avoidance, if the day comes when you face a claim, we will be there to help you navigate through the complexities of a professional liability claim.

Attached is a narrative outlining claims reporting guidelines in the event that a claim does occur, with many years of experience handling complex professional liability claims - I am confident you will be pleased to have BerkleyPro on your side.

Once again, thank you for choosing BerkleyPro and the W.R. Berkley Corporation. We hope that you will see the value in the people behind the promise and we hope to be your choice for your professional liability needs for years to come. Please call your professional liability insurance agent if you have any questions about BerkleyPro, or any comments about our service to you. Your satisfaction is important to us.

Regards,

John R. Benedetto
President

## Claims Reporting Guidelines for the Insured

These guidelines should be followed to help Berkley Professional Liability provide efficient claims service.

### Claim Notices

All claim notices shall be sent to Berkley Professional Liability, Claims Department.  The notices must be reported as required by the policy to avoid problems regarding timely notice.  The address of the Berkley Professional Liability Claims, c/o Claims Department is as follows:

Berkley Professional Liability

Berkley Professional Liability Claims, c/o Claims Department

757 Third Avenue ■ 10th Floor ■ New York, NY 10017

Phone: (212) 618-2920

Claim Dept. Fax: (212) 618-2948

E-mail: claims@berkleypro.com

Notice of claim requiring immediate action:

If immediate action on the notice is needed the Insured should express mail the notice to BerkleyPros Claims Department.  Situations requiring immediate action may include:

1.    The Insured being served with a summons and complaint.

2.    The Insured needs to provide a response to the claimant immediately.

### Correspondence from the Insured

The claim notice should include a written narrative of the circumstances surrounding the claim or potential claim.  The narrative should include, but not be limited to:

1.    Names of the insureds, policy number and effective dates.

2.    Names and addresses of the claimant.

3.    Details of the underlying claim, including its current status and the amount in controversy or relief demanded.

4.    All pertinent letters or documents necessary to properly evaluate the claim.

Please provide carbon copies to your professional liability insurance agent

of all claim notices and correspondence sent to Berkley Professional Liability

MI0PI2  (06-06)

# Berkley Insurance Company

475 Steamboat Road Greenwich, CT 06830

**Declarations Page**

## Excess Insurance

**CLAIMS MADE WARNING FOR DECLARATION: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS.  THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).**
**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in this Policy.

Policy Form:  EX 30200 (01-09)

Policy Number:
BPRO8087124

| | |
|---|---|
| Item 1. | Name and Address of **Insured**: |
| | Celsius Network, Inc. |
| | 121 River Street |
| | PH05 |
| | Hoboken, NJ  07030 |

Person designated to receive all correspondence from the **Insurer**:
Sir / Madam

Item 2.     **Policy Period**:         From July 12, 2022 (inception date) to  July 12, 2023 (expiration date)
                              *(Both dates at 12:01 a.m. Standard Time at the address of the **Insured**)*

Item 3.     Aggregate Limit of Liability for the **Policy Period** (inclusive of Costs of Defense):          $1,250,000

Item 4.     Premium:          $500,000
              New Jersey Property Liability Insurance Guaranty Association (PLIGA) Surcharge:          $3,000

Item 5.     Endorsements attached:

| | | |
|---|---|---|
| 1. | 265 (01-15) | NOTICE OF TERRORISM INSURANCE COVERAGE. |
| 2. | EX 300151 (01-09) | Modifies the Policy to include state amendatory provisions. |
| 3. | EX 300999 (03-11) | Fully Earned Premium Endorsement |
| 4. | EX 304150 (01-09) | Amends section IV. of the Policy to add Quota Share provisions. |
| 5. | EX 304310 (01-09) | Adds to section IV. of the Policy to exclude coverage for Loss arising out of any Wrongful Act which occurred prior to a specific date. |
| 6. | EX 302999 (rev. 05-10) | Follow Form Run-off Endorsement |
| 7. | EX 304999 (rev. 05-10) | Prior Notice Exclusion |
| 8. | EX 304300 (01-09) | Adds to section IV. of the Policy to exclude coverage for Loss arising out of any litigation which occurred prior to a specific date. |

Item 6.     Notice to the **Insurer** shall be sent to:  Berkley Professional Liability, Berkley Professional Liability Claims, c/o Claims Department,
              Address:  757 Third Avenue, 10th Floor, New York, NY  10017
              Fax:        (212) 618-2948    Email:    claims@berkleypro.com
              All other notices required to be given to the **Insurer** under this Policy shall be sent to:  Berkley Professional Liability
              Address:  757 Third Avenue, 10th Floor, New York, NY  10017
              Fax:        (212) 618-2940

Item 7.     Schedule of **Underlying Insurance**:
     A.     **Followed Policy**:
              Policy Period:                          From July 12, 2022 (inception date) to  July 12, 2029 (expiration date)
                                                    *(Both dates at 12:01 a.m. Standard Time at the address of the **Insured**)*

| Insurance Carrier | Policy Number | Limit of Liability |
|---|---|---|
| Indian Harbor Insurance Company | ELU184271-22 | $2,500,000 |

     B.     Underlying Policy(ies):

| Insurance Carrier | Policy Number | Limit of Liability |
|---|---|---|
| Not Applicable | | |

              Aggregate Underlying Limits of Liability:      $16,250,000

By accepting this Policy, the **Insureds** and the **Insurer**  agree that these Declarations, the completed and signed application (and its attachments), the Excess Insurance Policy and any written endorsements attached hereto constitute the entire contract between the **Insured** and the **Insurer**. This Policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

The **Insured** named in Item 1. of the Declarations shall act on behalf of all **Insureds** with respect to giving and receiving notices, paying premiums and receiving any premiums that may become due under this Policy.

September 28, 2022

Authorized Representative: _____      Date Issued: _____

**BERKLEY INSURANCE COMPANY**

# Excess Insurance Policy

*This is a Claims Made Policy.  Please read it carefully.*

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

## CLAIMS MADE WARNING FOR POLICY

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, in reliance on all statements in the application for this Policy and the **Followed Policy** and all other information provided to the **Insurer**, and subject to all provisions of this Policy, the **Insurer** and **Insureds** agree as follows:

## I. Insuring Agreement

This Policy provides excess coverage over the **Underlying Insurance** during the **Policy Period**. Coverage hereunder attaches only after the **Underlying Insurance** has been exhausted by payments for losses and shall then apply in conformance with the provisions of the **Followed Policy** at its inception, except for premium, limit of liability and as otherwise specifically set forth in this Policy and any attached endorsements. In no event shall this Policy grant coverage other than that which is provided by the **Underlying Insurance**.

## II. Extended Reporting Period

If the **Insureds** purchase an extended reporting period under the **Followed Policy**, then the **Insureds** shall have the right to purchase an extension of this Policy in conformance with the terms, conditions and limitations of the extended reporting period of the **Followed Policy**. The right to purchase this Extended Reporting Period is contingent upon payment of an additional premium which will be calculated as a percentage of the full annual premium for this Policy. The additional percentage of premium charged for the Extended Reporting Period under the **Followed Policy** will be used as the percentage of the annual premium charged for purchasing the Extended Reporting Period under this Policy. There is no separate or additional Limit of Liability for this Extended Reporting Period.

## III. Definitions

Whenever printed in boldface type, and whether in the singular or plural form in this Policy, the following terms shall have the meanings indicated below.

A.  "**Followed Policy**" means the policy listed in Item 7. A. of the Declarations.

B.  "**Insured**" means those persons or entities insured under the **Followed Policy**.

C.  "**Insurer**" means the entity issuing this Policy as listed on the Declarations Page.

D.  "**Policy Period**" means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy.

E.  "**Underlying Insurance**" means all policies scheduled in Item 7. of the Declarations.

## IV. Additional Policy Terms

Refer to attached endorsements, if applicable.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

## V. Limit of Liability

The Limit of Liability stated in Item 3. of the Declarations is the maximum limit of the **Insurer's** liability for all losses under this Policy. Costs of defense are not payable by the **Insurer** in addition to the Limit of Liability. The Limit of Liability available to pay damages or settlements shall be reduced, and may be exhausted by, amounts incurred as costs of defense.

## VI. Maintenance of Underlying Insurance

A.  The **Underlying Insurance** shall be maintained in full effect during the **Policy Period**, except for any reduction of the limits of liability available under the **Underlying Insurance** solely by reason of payment of losses thereunder. Failure to comply with the foregoing shall not invalidate this coverage, but the **Insurer** shall not be liable to a greater extent than if this condition had been complied with. To the extent that the **Underlying Insurance** is not maintained in full effect during the **Policy Period**, then the **Insured** shall be deemed to retain any loss for the amount of the limit of liability of the **Underlying Insurance** which is not maintained. A condition of this coverage is that the **Insurer** be notified in writing, as soon as practicable, of any cancellation or alteration of any provision of the **Underlying Insurance**.

B.  If the limits of liability of the **Underlying Insurance** are depleted solely as the result of actual payment of losses thereunder by the applicable insurers, this Policy shall, subject to the **Insurer's** Limit of Liability and to the other terms of this Policy, continue to apply to losses as excess insurance over the amount of insurance remaining under the **Underlying Insurance**. If the limits of liability of the **Underlying Insurance** are exhausted solely as a result of payment of losses thereunder, subject to this Policy's provisions the remaining Limit of Liability available under this Policy shall continue for subsequent losses as primary insurance and any retention specified in the **Followed Policy** shall be imposed under this Policy as to each claim made; otherwise no retention shall be imposed under this Policy.

C.  This Policy only provides coverage excess of the **Underlying Insurance**. This Policy does not cover any loss not covered by the **Underlying Insurance** except and to the extent that such loss is not paid under the **Underlying Insurance** solely by reason of the reduction or exhaustion of the available **Underlying Insurance** through payment of loss thereunder. If the insurer issuing any of the **Underlying Insurance** fails to pay loss in connection with any claim covered thereunder as a result of the insolvency, bankruptcy, or liquidation of such insurer, then the **Insureds** shall be deemed to be self-insured for the amount of the limit of liability of such **Underlying Insurance** issued by such insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

## VII. Notices / Claims

The **Insureds** shall, as a condition precedent to their rights under this Policy, notify the **Insurer** of any claim, at the **Insurer's** address stated on the Declarations, in the same manner required by the provisions of the **Followed Policy**. The **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require. The **Insurer** may, at its sole discretion, participate in the investigation, settlement or defense of any claim against any of the **Insureds** even if the **Underlying Insurance** has not been exhausted.

The **Insured** shall not admit liability for or settle any claim or incur costs of defense, which are reasonably likely to involve the Limit of Liability of this Policy, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld.

In witness whereof, the **Insurer** has caused this Policy to be signed by its President and Chairman and Secretary, but this Policy shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**.

_President and Chairman_                                        _Secretary_

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy. You are hereby notified that under the Act the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act is $0.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |

| Effective Date of This Endorsement | Authorized Representative | |
|---|---|---|
| 07/12/2022 | | |

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## New Jersey
## State Amendatory

**THIS NOTICE IS REQUIRED BY LAW, IT DOES NOT CONSTITUTE AN ADMISSION OF LIABILITY BY THE INSURANCE COMPANY.**

Required Notice of Internal Appeals Procedures pursuant to N. J. A. C. 11:25 - 2.5(a)

In the event of any final coverage determination is unacceptable to you, Berkley Professional Liability provides an internal appeals process to review the decision.  Upon receipt of your appeal, a panel of at least 3 employees, who have had no prior involvement with the handling of your claim, will review the disputed decision.

If you wish to request an internal appeal follow these procedures:

1.      Send legible correspondence stating the specifics of the dispute to:

**Internal Claim Appeal**
**Berkley Professional Liability**
**757 Third Avenue, 10th Floor**
**New York, NY  10017**
**Tel: (212) 618-2900**
**Fax: (212) 618-2948**
**Email:  jbenedetto@berkleypro.com  (if via email include "NJ Internal Appeal" in subject line)**

2.      A written response will be forwarded to you within 10 days of receipt.

3.      If resolution is not possible, present your disputed claim to:

**Department of Banking and Insurance**
**Office of Claims Ombudsman**
**20 West State Street**
**P. O. Box 472**
**Trenton, NJ  08625**
**Fax: 1-609-292-2431**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |
| Effective Date of This Endorsement 07/12/2022 | Authorized Representative |

EX 30200 (01-09)                              21333-BPRO8087124-767373                              EX 300151 (01-09)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## Fully Earned Premium Endorsement

In consideration of the premium paid, it is understood and agreed that Section VII. General Conditions, A. Termination, Cancellation, and Non-Renewal of Policy is hereby deleted and replaced with the following:

It is a condition precedent to the issuance of this policy that the premium for this policy shall be fully earned at inception. This policy may be cancelled by the Insurer only for non-payment of premium when due. The Insurer shall provide at least 20 days written notice to the Parent Organization prior to any cancellation for non-payment of any premium.

Any notices to be given to the Parent Organization under this Section VIII. shall be provided to the Parent Organization at the last known principal address and to its insurance agent or broker. Certified mail of such notice shall be sufficient to perfect notice.

All other terms and conditions shall remain the same

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |
| Effective Date of This Endorsement<br>07/12/2022 | Authorized Representative |

EX 30200 (01-09)            50318-BPRO8087124-767373            EX 300999 (03-11)

# Berkley Insurance Company
475 Steamboat Road  Greenwich, CT 06830

## Addition to Section IV.
## Quota Share Endorsement

In consideration of the premium paid for this Policy, it is understood and agreed that:

1.  Item 3. of the Declarations is deleted in its entirety and replaced by the following:

Item 3.   A.   Total Quota Share Layer Aggregate Limit of Liability for all
losses during the **Policy Period**: $3,750,000

B.   Quota Share Layer Attachment Point: $16,250,000

C.   **Insurer's** Quota Share Participation: 33.33%

D.   **Insurer's** Aggregate Quota Share Limit of Liability for the
**Policy Period** (inclusive of Costs of Defense): $1,250,000

2.  Item 4. of the Declarations is deleted in its entirety and replaced by the following:

Item 4.   A.   Total Quota Share Layer Premium: $1,500,000

B.   **Insurer's** Quota Share Pro-Rata Premium: $500,000

3.  Item 7. Schedule of **Underlying Insurance** of the Declarations is amended by the addition of the following:

Item 7.   C. Quota Share Layer Participants:

| Insurance Carrier: | Policy Number: | Limit of Liability ($): |
|---|---|---|
| QBE Insurance Corporation | 130003111 | $1,250,000 |
| Endurance American Insurance Company | FIX30022365500 | $1,250,000 |

4.  Section I. Insuring Agreement of this Policy is amended by the addition of the following:

I.:   It is further agreed that the **Insurer** shall pay on behalf of the **Insureds** under this Policy that proportion of covered
loss set forth in the manner provided in Item 3. of the Declarations and in full conformance with the terms and
conditions of this Policy.

5.  Section IV. Additional Policy Terms of this Policy is amended by the addition of the following:

IV.:   Any covered loss within the Total Limit of Liability stated in Item 3. A. of the Declarations shall be paid *pro rata* by each
of the insurers subscribing to this Quota Share Endorsement.  The participation of such insurers is set forth in Item 7.
C. of the Declarations.  The obligations of such insurers who subscribe to the Quota Share Endorsement are several
and not joint, and are limited to the extent of their individual subscriptions. Therefore, none of the subscribing insurers
is responsible for the obligation of any co-subscribing insurer.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of
the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |
| Effective Date of This Endorsement<br>07/12/2022 | Authorized Representative |

EX 30200 (01-09)                    21361-BPRO8087124-767373                    EX 304150 (01-09)

**Berkley Insurance Company**

475 Steamboat Road  Greenwich, CT 06830

IV.:    The **Insurer's** participation is set forth in Items 3. C. and 3. D. of the Declarations.  The **Insurer** has full claims and underwriting control of this portion of the Quota Share Endorsement and no action or omission by any of the co-subscribing insurers shall bind the **Insurer** or be deemed a waiver of any coverage defense the **Insurer** has under this Policy or available at law.  The **Insurer** shall act on its own behalf with respect to all other matters concerning this Policy, and no other insurer subscribing to this Policy may act on behalf of or bind the **Insurer** with respect to this Policy terms or any matter concerning this Policy.  All notices by the **Insureds** to the insurers under this Policy shall be provided to the **Insurer** at the address specified in the Declarations.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |
| Effective Date of This Endorsement 07/12/2022 | Authorized Representative |

EX 30200 (01-09)                21361-BPRO8087124-767373                EX 304150 (01-09)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## Addition to Section IV.
## Past Acts Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Additional Policy Terms of this Policy is amended by the addition of the following:

IV.:    The **Insurer** shall not be liable to make any payment for Loss in connection with any Claim based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.    any actual or alleged Wrongful Act which occurred on or before 07/12/2022, or

2.    any actual or alleged Wrongful Act occurring on or subsequent to 07/12/2022 which, together with an actual or alleged Wrongful Act occurring prior to such date, would constitute a Related Wrongful Act.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |

| Effective Date of This Endorsement | Authorized Representative | |
|---|---|---|
| 07/12/2023 | | |

EX 30200 (01-09)                    21369-BPRO8087124-767373                    EX 304310 (01-09)

# Berkley Insurance Company
475 Steamboat Road  Greenwich, CT 06830

## Addition to Section VI.
## Follow Form of Specific Underlying Endorsement

In consideration of the premium paid, it is understood and agreed that section VI. Maintenance of Underlying Insurance of this Policy is amended by the addition of the following:

VI.:   Notwithstanding the foregoing, the Policy shall provide coverage excess of the **Underlying Insurance** in conformance with the provisions of the endorsements set forth below and attached Indian Harbor Insurance Company Policy # ELU184271-22

| Endorsement Number | Endorsement Name |
|---|---|
| 3 | CONVERT POLICY TO RUN-OFF UPON HAPPENING OF SPECIFIC EVENT |

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |

| Effective Date of This Endorsement | Authorized Representative | |
|---|---|---|
| 07/12/2022 | | |

EX 30200 (01-09)                    50520-BPRO8087124-767373                    EX 302999 (rev. 05-10)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

**Addition to Section IV.**
**Prior Notice Exclusion**

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Additional Policy Terms of this Policy is amended by the addition of the following:

IV.:    The **Insurer** shall not be liable to make any payment for Loss based upon, arising out of or resulting from any fact, circumstance or claim that has been the subject of any notice given prior to July 12, 2022 to any insurer under any policy of insurance.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8087124 |
| Effective Date of This Endorsement 07/12/2023 | Authorized Representative |

EX 30200 (01-09)                    50522-BPRO8087124-767373                    EX 304999 (rev. 05-10)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

## Addition to Section IV.
## Prior and Pending Litigation Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that section IV. Additional Policy Terms of this Policy is amended by the addition of the following:

IV.:    The **Insurer** shall not be liable to make any payment for Loss in connection with a Claim made against any **Insured** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.    any prior or pending litigation, administrative or arbitration proceeding, or investigation as of 07/12/2022, or

2.    any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, administrative or arbitration proceeding, or investigation,

regardless of the legal theory upon which such Claim is predicated.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>Celsius Network, Inc. | Policy Number<br>BPRO8087124 |
|---|---|
| Effective Date of This Endorsement<br>07/12/2023 | Authorized Representative |

EX 30200 (01-09)                    21366-BPRO8087124-767373                    EX 304300 (01-09)



# SOMPO INTERNATIONAL
## INSURANCE

# US Insurance

## Excess Liability

**Policy Number:**  FIX30022365500
**Effective Dates:**  July 12, 2022 To: July 12, 2023
**Endurance American Insurance Company**



**Issuing Office:**
1221 Avenue of the Americas
New York, NY 10020
www.sompo-intl.com

 SOMPO INTERNATIONAL

# Endurance American Insurance Company
### Wilmington, Delaware

## EXCESS LIABILITY POLICY DECLARATIONS

NOTICE:  Depending on the terms and conditions of the Followed Form, this Policy may (1) only provide coverage for Loss from Claims first made or first made and reported during the Policy Period; and (2) have its Limit of Liability reduced by payment for defense costs.  Please read the Followed Form and this Policy carefully to determine your rights, duties and what is and what is not covered.  In the event of any conflict between the terms and conditions of this Policy and the Underlying Policy(ies), the terms and conditions of this Policy shall control.  Terms defined in the Followed Form are used herein with the meaning assigned to them in the Followed Form unless otherwise indicated.

POLICY NUMBER:             FIX30022365500

| | | |
|---|---|---|
| Item 1. | Named Insured: | Celsius Network, Inc. |
| | Address: | 221 River Street, |
| | | 9th Floor |
| | | Hoboken, NJ 07030 |

| | | |
|---|---|---|
| Item 2. | Policy Period: | From: July 12, 2022        To: July 12, 2023 |
| | | (12:01 AM Standard Time on both dates at the address of the Named Insured noted above.) |

| | | |
|---|---|---|
| Item 3. | Limit of Liability: | $1,250,000 part of $3,750,000 excess of $16,250,000 |

| | | |
|---|---|---|
| Item 4. | Pending & Prior Litigation Date: | 7/12/2022 |

| | | |
|---|---|---|
| Item 5. | Premium: | $500,000 |
| | TRIA | *Premium includes TRIA coverage |
| | State Surcharge: | $3,000 |
| | Total: | $503,000 |

| | | |
|---|---|---|
| Item 6. | Producer: | Cobbs Allen Capital, LLC dba CAC Specialty |
| | Address: | 250 Filmore Street |
| | | Suite 450 |
| | | Denver, CO 80206 |

Item 7.    A.  Underlying Policy(ies):

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| Indian Harbor Insurance Company | ELU184274-22 | $2,500,000 | Primary |
| Berkley Insurance Company | BPRO8087124 | $1,250,000 part of $3,750,000 | $8,750,000 |

| | | | |
|---|---|---|---|
| Policy Issuance Date: | September 28, 2022 | Endurance American Insurance Company |
| Policy Issuance Office: | New York, NY | PEO 0001 0413 |

B.  Followed Form:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---------|---------------|--------------------|------------|
| Indian Harbor Insurance Company | ELU184274-22 | $2,500,000 | Primary |

Item 8.    Forms and Endorsements Effective at Inception:
See attached Forms and Endorsements Schedule, IL 0101.

Item 9.    Notice:

A.  Claims or Potential Claims:    Financial Institutions
Attn:  Claims Department
1221 Avenue of The Americas
New York, NY 10020
Insuranceclaims@sompo-intl.com
1-877-676-7575

B.  All Other:    Financial Institutions
Attn: Professional Lines Underwriting Department
1221 Avenue of The Americas
New York, NY 10020

This Policy shall constitute the contract between the Insureds and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_____
Authorized Representative

September 28, 2022
_____
Date

Policy Issuance Date:    September 28, 2022    Endurance American Insurance Company
Policy Issuance Office:    New York, NY    PEO 0001 0413

Page 2 of 2

# EXCESS LIABILITY POLICY

In consideration of the premium paid and in reliance on all statements made and information furnished by the Insureds in the Application or the underwriting of this Policy, and subject to the terms and conditions of this Policy, the Insurer, and the Named Insured, on behalf of all Insureds, agree as follows:

I. INSURING CLAUSE

This Policy shall provide to the Insureds insurance coverage for any covered Loss resulting from covered Claims, and shall attach to the Insurer only after (i) the insurers of the Underlying Policy(ies), the Insureds, and/or any other party shall have paid in legal currency the full amount of the Underlying Limit, and (ii) the Insureds shall have paid any applicable retention or deductible under the Primary Policy. The Limit of Liability set forth in Item 3. of the Declarations shall be the maximum amount payable by the Insurer under this Policy.

II. TERMS AND CONDITIONS

A. This Policy, except as stated herein, is subject to all terms, conditions and limitations as contained in the Followed Form as of inception of this Policy, and to the extent coverage is further limited or restricted thereby, in any other Underlying Policy(ies).

B. If any coverage under the Underlying Policy(ies) is subject to a sublimit of liability, this Policy shall not apply to such coverage, but the Insurer shall recognize any Loss paid under such coverage in any manner described in the Insuring Clause as reducing the Underlying Limit by the amount of such paid Loss.

C. If any Underlying Policy(ies) is changed or terminated the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policy(ies) been so maintained, unless the Insurer agrees to the change in writing. The risk of uncollectability of the Underlying Policy(ies) whether because of insolvency of an underlying insurer or for any other reason is expressly retained by the Insureds.

D. Notice to the Insureds may be given to the Named Insured at the address shown in Item 1. of the Declarations. Notice to the Insurer shall be given to the Insurer at the address shown in Item 9. of the Declarations. Notice to any insurer of an Underlying Policy(ies) shall not constitute notice to the Insurer unless also given to the Insurer as provided above.

E. The Insurer may, at its sole discretion, participate in the investigation, defense or settlement of any Claim or other matter to which coverage under this Policy could apply even if the Underlying Limit has not been exhausted. No action by any other insurer shall bind the Insurer under this Policy. The Insurer shall not be liable under this Policy for any settlements, stipulated judgments or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

III. DEFINITIONS

1. Followed Form, Underlying Policy(ies) and Limit of Liability have the meanings attributed to them in the Declarations.

2. Insureds mean all natural persons and entities insured by the Followed Form.

3. Named Insured means the entity named in Item 1. of the Declarations.

4. Primary Policy means the first listed policy in Item 7.A. of the Declarations.

5. Policy Period means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with the Followed Form.

6. Underlying Limit means an amount equal to the aggregate of all limits of liability, as set forth in Item 7. of the Declarations, for all Underlying Policy(ies), plus any applicable retention or deductible under the Primary Policy.

# FORMS AND ENDORSEMENT SCHEDULE

## EXCESS LIABILITY

| End. No. | Title | Number |
|:---:|---|:---:|
|  | Excess Liability Policy Declarations | PEO 0001 0413 |
|  | Excess Liability Policy | PEO 0201 0413 |
|  | Forms and Endorsement Schedule | IL 0101 0712 |
| 1 | Follow Run-off Endorsement | IL 1001 0712 |
| 2 | New Jersey Changes | PEO 0339 0413 NJ |
| 3 | Prior Knowledge Exclusion Endorsement | PEO 0391 1219 |
| 4 | Prior Acts Exclusion | PEO 0510 0413 |
| 5 | Several Liability for Quota Share Coverage | PEO 1310 0413 |
| 6 | Pending and Prior Litigation Exclusion | PEO 1313 0413 |
| 7 | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| 8 | Disclosure Pursuant to Terrorism Risk Insurance Act | IL 1214 1220 |
|  | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0721 |
|  | Signature Page | IL 1007 0114 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*

# ENDORSEMENT

| | | | |
|---|---|---|---|
| **Named Insured**: | Celsius Network, Inc. | Policy Number: | FIX30022365500 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | June 1, 2020 | Endorsement Number: | 1 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | | |

## FOLLOW RUN-OFF ENDORSEMENT

In consideration of an additional premium of $500,000 it is agreed that:

Notwithstanding any provision in this Policy to the contrary, this Policy shall provide excess insurance coverage in conformance with the Run-Off Coverage Endorsement of the **Followed Form** and such endorsement shall apply to this Policy to the same extent that it applies to the **Followed Form**.

_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | |
|---|---|
| Named Insured:  Celsius Network, Inc. | Policy Number:  FIX30022365500 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | July 12, 2022 | Endorsement Number: | 2 |
| | (12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations) | | |

## NEW JERSEY CHANGES

It is agreed that:

1. Notwithstanding anything in this Policy to the contrary, the insurance coverage as is afforded by this Policy, as respects coverage for operations in New Jersey, shall conform to the coverage requirements of the applicable insurance laws and regulations of New Jersey.

2. This Policy and the Policy Period shall terminate at the earliest of the effective date of nonrenewal of the Policy Period shown in Item 2 of the Declarations or the effective date of cancellation, as described below.

    A.   CANCELLATION

        1.   The Named Insured may cancel this Policy by surrender of this Policy to the Insurer or by giving prior written notice to the Insurer stating when such cancellation shall take effect.

        2.   The Insurer may cancel this Policy only for nonpayment of premium.  In such event, the Insurer shall mail written notice of cancellation for nonpayment of premium to the Named Insured.  Such notice shall state the effective date of cancellation, which shall not be less than ten (10) days after mailing such notice.

        3.   In the event of cancellation, the Insurer shall refund the unearned premium computed pro rata.

    B.   NONRENEWAL

        1.   The Insurer shall mail to the Named Insured written notice, at least thirty (30) days, but not more than one hundred and twenty (120) days, prior to the expiration of the Policy Period:

           a.   if the Insurer elects not to renew this Policy, including the reason for nonrenewal; or,

           b.   if the Insurer elects to renew this Policy with a change in contract terms; the amount of the renewal premium, and the changed contract terms.

    C.   NOTICE
The Insurer shall send all notices required under this endorsement by certified mail to the Named Insured at the address in Item 1 of the Declarations, and by mail or electronic mail to the Named Insured's authorized agent, if any.  Proof of mailing will be sufficient proof of notice.

3. Pursuant to New Jersey law, this Policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the Named Insured. The underwriting reasons or guidelines that an Insurer can use to cancel or nonrenew this Policy are maintained by the Insurer in writing and will be furnished to the Named Insured and/or the Named Insured's lawful representative upon written request. However, this provision shall not apply if this Policy has been in effect for less than sixty (60) days at the time notice of cancellation is mailed or delivered, unless the Policy is a renewal Policy.

_Thomas Nash_

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# E N D O R S E M E N T

| | |
|---|---|
| Named Insured:  Celsius Network, Inc. | Policy Number:  FIX30022365500 |

| | |
|---|---|
| Endorsement Effective Date:  July 12, 2022 | Endorsement Number:  3 |

12:01 AM Standard Time at the address of the  Named Insured as shown in the Declarations.

## PRIOR KNOWLEDGE EXCLUSION ENDORSEMENT

It is agreed that:

The Insurer shall not be liable for Loss on account of a Claim based upon, arising from, or attributable to any act, error, omission, fact, circumstance, or situation of which an Insured had knowledge as of July 12, 2022 and which as of such date reasonably could give rise to a Claim.

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in  this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | |
|---|---|
| Named Insured:  Celsius Network, Inc. | Policy Number:  FIX30022365500 |

Endorsement
Effective Date:     July 12, 2022

(12:01 AM Standard Time at the address of the
Named Insured as shown in the Declarations)

Endorsement
Number:          4

## PRIOR ACTS EXCLUSION

It is agreed that:

The Insurer shall not be liable for Loss on account of any Claim based upon, arising from, attributable to or in any way relating to any alleged Wrongful Act or Interrelated Wrongful Acts committed, attempted or allegedly committed or attempted in whole or in part prior to  07/12/2022 .

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Celsius Network, Inc. | Policy Number: | FIX30022365500 |
| Endorsement Effective Date: | July 12, 2022 | Endorsement Number: | 5 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | | |

## SEVERAL LIABILITY FOR QUOTA SHARE COVERAGE

It is agreed that:

1.  This Policy is part of a quota share layer of insurance coverage for the Insureds, which consists of the following participants:

| Insurer | Limit of Liability |
|---|---|
| QBE Insurance Corporation | $ 1,250,000 |
| Endurance American Insurance Company | $ 1,250,000 |

Total Quota Share Layer Limit of Liability:  $3,750,000

The Insurer shall be liable only for such portion of any covered Loss as this Policy's aggregate Limit of Liability bears to the total quota share layer limit of liability as set forth above.  In no event shall the Insurer be liable for an amount greater than such portion of covered Loss, whether or not the other insurer(s) in the quota share layer pay their respective portion of such Loss.

2.  The Insurer shall separately have all of the rights granted to the Insurer under this Policy and/or any Underlying Policy(ies) with respect to any Claim, including without limitation the right to consent to any defense costs, settlement or other Loss and the right to participate in the investigation, settlement or defense of any covered Claim.  No other insurer shall exercise any such rights on behalf of the Insurer without the express written consent of the Insurer.  In addition, the Insureds shall give any notice under this Policy to the Insurer, and any notice given to any other insurer shall not constitute notice to the Insurer.

_Thomas Nash_
_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

| | |
|---|---|
| Date of Issuance:  September 28, 2022 | Policy Form: PEO 0201 0413 |
| Endurance American Insurance Company | Endorsement Form: PEO 1310 0413 |

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Celsius Network, Inc. | Policy Number: | FIX30022365500 |
| Endorsement Effective Date: | July 12, 2022 | Endorsement Number: | 6 |
| | (12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations) | | |

## PENDING AND PRIOR LITIGATION EXCLUSION

It is agreed that:

This Policy shall not apply to that portion of any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from any litigation or administrative or regulatory proceeding or investigation against any Insured pending on or before the date indicated in Item 4 of the Declarations, or substantially the same wrongful act, fact, circumstance or situation underlying or alleged therein.

The foregoing exclusion shall not apply if there is a Prior and Pending Litigation exclusion in the Followed Form.  In such event this Policy will follow the Prior and Pending Litigation exclusion in the Followed Form, except that the applicable date in such exclusion shall be the date indicated in Item 4 of the Declarations.

_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Celsius Network, Inc. | Policy Number: | FIX30022365500 |
| Endorsement Effective Date: | July 12, 2022 | Endorsement Number: | 7 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | | |

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

_____

Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

E N D O R S E M E N T

Named Insured:  Celsius Network, Inc.                    Policy Number:  FIX30022365500

Endorsement                                              Endorsement
Effective Date:   July 12, 2022                          Number:        8
                 12:01 AM Standard Time at the address of the
                 Named Insured as shown in the Declarations.

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO
THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS
ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND
CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

It is agreed that:

SCHEDULE:   Terrorism Premium (Certified Acts): Included in Premium

A.   Disclosure of Premium
     In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you
     with a notice disclosing the portion of your premium (shown in the Schedule above), if any,
     attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as
     amended and reauthorized. The portion of your premium attributable to such coverage is
     shown in the Schedule of this endorsement.

B.   Disclosure of Federal Participation in Payment of Terrorism Losses
     The United States government, Department of the Treasury, will pay a share of terrorism
     losses insured under the federal program. The federal share equals 80% of that portion of the
     amount of such insured losses that exceeds the applicable insurer retention.  However, if
     aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk
     Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment
     for any portion of the amount of such losses that exceeds $100 billion.

C.   Cap On Insurer Participation In Payment Of Terrorism Losses
     If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk
     Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible
     under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion
     of the amount of such losses that exceeds $100 billion, and in such case insured losses up to
     that amount are subject to pro rata allocation in accordance with procedures established by
     the Secretary of the Treasury.

# ENDORSEMENT

_[signature: Thomas Nash]_

_____

Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

POLICYHOLDER NOTICE

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's website - http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



# Endurance American Insurance Company
## 1221 Avenue Of the Americas
## New York, NY  10020

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

_____
Senior Vice President

_____
President

POLICY NUMBER:  130003111

QBEX-3001 (01-14)



**QBE Insurance Corporation**
55 Water Street, New York, NY 10041

Home Office:  co C/T Corporation  System, 116 Pine Street, Suite 320, Harrisburg,  PA 17101

# EXCESS INSURANCE POLICY DECLARATIONS

**THIS POLICY IS A CLAIMS MADE POLICY AND COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**THIS PREMIUM INCLUDES THE SURCHARGE  REQUIRED  BY KRS 136.392**

| | | |
|---|---|---|
| **Item 1**: | Named Insured: | Celsius Network Inc. |
| | Mailing Address: | 221 River Street, 9th Floor |
| | | Hoboken, NJ 07030 |

**Item 2**:   Policy Period
From: July 12, 2022      To: July 12, 2023
At 12:01 A.M. Standard Time at the mailing address stated in Item 1

**Item 3**:   Limit of Liability  Excess of $16,250,000
A.  $1,250,000        any one Claim  (subject to Quota Share Endorsement)
B.  $1,250,000        in the aggregate  (subject to Quota Share Endorsement)

**Item 4**:   A.  Followed Policy
Insurer:              Indian Harbor Insurance Company
Policy Number:    ELU184271-22
Limits of Liability:  $2,500,000/$2,500,000
Policy Period:      July 12, 2022 to July 08, 2023

B.  Underlying Insurance: See Schedule of Underlying  Insurance

**Item 5**:   Premium and Applicable Charges
Premium: $500,000.00
New Jersey Property Liability Insurance  Guaranty  Association: $3,000.00
Total Premium: $503,000.00

**Item 6**:   A. Notice to Insurer of a Claim or circumstance:          B. All Other Notices to Insurer:

QBE Insurance Corporation                    QBE Insurance Corporation
Attn: The Claims Manager                     Attn: Underwriting
55 Water Street                              55 Water Street
New York, NY 10041                           New York, NY 10041
1-877-772-6771                               1-877-772-6771
professional.liability.claims@us.qbe.com     mlpladmin@us.qbe.com

In witness whereof,  the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized  representative  of the Insurer.

QBEX-3001 (01-14)                                                                Page **1** of **2**

QBE and the links logo are registered  service marks  of  QBE Insurance Group Limited.

Russell Johnston
President

Jose Ramon Gonzalez Jr.
Secretary

July 18, 2022
Date

**QBEX-3001  (01-14)**

Page **2** of **2**

QBE and the links logo are registered serv ice marks of  QBE Insurance Group Limited.

**POLICY NUMBER:**   130003111                                      QBEX-1000 (01-14)



# EXCESS INSURANCE POLICY

## I.   INSURING CLAUSE

The Insurer shall provide insurance coverage in accordance with the same terms, conditions and limitations of the **Followed Policy**, including those involving policy termination, representations and severability, notice and extended reporting period, and in accordance with the terms and conditions set forth herein.

## II.   GENERAL CONDITIONS

The conditions set forth in this Section **II. GENERAL CONDITIONS** are in addition to those set forth in the **Followed Policy**, and are specific to the coverage provided by this Policy.

(a)   Coverage under this Policy shall attach only after exhaustion of the limits of liability of the **Underlying Insurance.** The Insurer shall recognize monetary contribution by or on behalf of an Insured to such exhaustion of the limits of liability of the **Underlying Insurance**.

(b)   The limits of liability set forth in Item 3 of the Declarations represent the maximum amount payable under this Policy during the Policy Period for any one Claim and in the aggregate.

(c)   If the limits of liability of the **Underlying Insurance** are reduced, this Policy shall continue in force as excess insurance for the remaining amount of the limits of liability of the **Underlying Insurance.** If the limits of liability of the **Underlying Insurance** are exhausted, this Policy shall continue in force as primary insurance, subject to any applicable retention.

(d)   The Policy does not provide excess insurance above any sub-limit of liability available under any **Underlying Insurance**, unless the Insurer has agreed to provide such excess coverage by separate endorsement to this Policy. However, where payment of amounts subject to a sublimit erode or reduce the limits of liability of the **Underlying Insurance,** this Policy shall recognize such erosion or reduction of the limits of liability of the **Underlying Insurance**.

(e)   All notices to the Insurer shall be sent to the applicable address set forth in Item 6 of the Declarations.

(f)   The Insurer may elect to effectively associate in the investigation, settlement or defense of any claim reasonably likely to be covered under this Policy.

(g)   Any change in or modification to **Underlying Insurance** or this Policy or assignment of interest under this Policy must be agreed to in writing by Insurer, and in no event shall any such change, modification or assignment affect this Policy's excess position or attachment point.

## III.   EXCESS POLICY DEFINITIONS

Any term used in this Policy that is defined in the **Followed Policy** shall have the same meaning as assigned to such term in the **Followed Policy**.

(a)   **Followed Policy** means the insurance policy set forth in Item 4A. of the Declarations.

(b)   **Underlying Insurance** means the **Followed Policy** and any other insurance policies set forth in Item 4B. of the Declarations.

# SCHEDULE OF UNDERLYING INSURANCE

1.   Insurer:                    Euclid Financial
       Policy Number.       EFI1203088-00
       Policy Period:        From: May 30, 2021  To: June 15, 2023
       Limits of Liability:     $1,500,000

2.   Insurer:                    Indian Harbor Insurance Company
       Policy Number.       ELU183445-22
       Policy Period:        From: May 30, 2021  To: June 15, 2023
       Limits of Liability:     $1,500,000 excess of $1,500,000

3.   Insurer:                    Hudson Excess Insurance Company
       Policy Number.       HE-0303-7685
       Policy Period:        From: May 30, 2021  To: June 15, 2023
       Limits of Liability:     $1,500,000 excess of $3,000,000

4.   Insurer:                    Starstone Specialty Insurance Company
       Policy Number.       F77130210ASP
       Policy Period:        From: May 30, 2021  To: June 15, 2023
       Limits of Liability:     $1,500,000 excess of $4,500,000

5.   Insurer:                    Associated Industries Insurance Company,  Inc.
       Policy Number.       ANV156364A
       Policy Period:        From: May 30, 2021  To: June 15, 2023
       Limits of Liability:     $1,500,000 excess of $6,000,000

6.   Insurer:                    Indian Harbor Insurance Company
       Policy Number.       ELU184271-22
       Policy Period:        From: July 12, 2022  To: July 08, 2023
       Limits of Liability:     $2,500,000 excess of $7,500,000

7A.  Insurer:                    Berkley Insurance Company
       Policy Number.       BPRO8087124
       Policy Period:        From: July 12, 2022   To: July 08, 2023
       Limits of Liability:     $1,250,000  part of $3,750,000 excess of $10,000,000

7B.  Insurer:                    QBE Insurance Corporation
       Policy Number.       130003109
       Policy Period:        From: July 12, 2022   To: July 08, 2023
       Limits of Liability:     $1,250,000 part of $3,750,000 excess of $10,000,000

7C.  Insurer:                    Endurance American Insurance Company
       Policy Number.       FIX30022365500
       Policy Period:        From: July 12, 2022   To: July 08, 2023
       Limits of Liability:     $1,250,000 part of $3,750,000 excess of $10,000,000

8.   Insurer:                    XL Specialty Insurance Company
       Policy Number.       ELU184274-22
       Policy Period:        From: July 12, 2022    To: July 12, 2023
       Limits of Liability:     $2,500,000 excess of $13,750,000



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIOR ACTS EXCLUSION

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network  Inc. |
| **Policy Number:** | 130003111 |
| **Endorsement  Number:** | 001 |
| **Effective  Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance  Corporation |

It is hereby  agreed  that this Policy shall not provide  coverage  for any loss based upon, arising  out of or resulting  from any wrongful  act actually  or allegedly  committed  or attempted,  in whole  or in part,  prior to July 12,  2022.

All other terms and conditions  of this policy  remain unchanged.



**THIS ENDORSEMENT  CHANGES  THE POLICY.  PLEASE  READ  IT CAREFULLY.**

# PRIOR AND PENDING DATE EXCLUSION

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network  Inc. |
| **Policy Number:** | 130003111 |
| **Endorsement  Number:** | 002 |
| **Effective  Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance  Corporation |

It is hereby  agreed that this Policy shall not provide  coverage for any loss based upon, arising out of or resulting from  any demand, investigation, administrative  or regulatory  proceeding, litigation  or suit commenced on or before  the Prior and Pending Date listed below.

Prior and Pending Date: July 12, 2022

All other terms and conditions of this policy remain unchanged.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIOR NOTICE EXCLUSION

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network  Inc. |
| **Policy Number:** | 130003111 |
| **Endorsement  Number:** | 003 |
| **Effective Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance  Corporation |

It is hereby  agreed that this Policy shall not provide  coverage  for any loss based upon, arising out of or resulting from  any fact, circumstance or  claim that has been  the subject of any notice given  prior  to July 12, 2022 to any  insurer under  any policy of insurance.

All other terms and conditions of this policy remain unchanged.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# QUOTA SHARE ENDORSEMENT

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network Inc. |
| **Policy Number:** | 130003111 |
| **Endorsement Number:** | 004 |
| **Effective Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance Corporation |

This Policy is part of a quota share arrangement. The Insurer shall be liable only for its agreed upon share of the Limit of Liability set forth in Item 3 of the Declarations, as set forth in the table below. In no event shall the Insurer be liable for any amount greater than such agreed upon share of the Item 3 Limit of Liability coverage. The quota share participants provide the following limits of liability:

| Participating Insurer | Participating Insurer's Policy Number | Participating Insurer's Limit any one Claim/in the Aggregate |
|---|---|---|
| Berkley Insurance Company | BPRO8087124 | $1,250,000/$1,250,000 |
| Endurance American Insurance Company | FIX30022365500 | $1,250,000/$1,250,000 |
| QBE Insurance Corporation | 130003111 | $1,250,000/$1,250,000 |

The failure, refusal or inability of any Participating Insurer to pay its respective share of the Item 3 Limit of Liability, including an inability based upon insolvency, shall have no affect on the liability of any other Participating Insurer.

All other terms and conditions of this Policy remain unchanged.

QBEX-2026 (01-14)                                       © QBE , 2014                                       Page 1 of 1



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FULLY EARNED PREMIUM ENDORSEMENT

| Name of Parent Company: | Celsius Network Inc. |
|---|---|
| Policy Number: | 130003111 |
| Endorsement Number: | 005 |
| Effective Date of Endorsement: | July 12, 2022 |
| Name of Insurer: | QBE Insurance Corporation |

It is hereby agreed that all premiums charged for coverage under this Policy are considered fully earned regardless of any other provisions for return premium contained elsewhere in this Policy. In the event of termination of this Policy by the Insured or Insurer, no portion of the premium shall be repayable to the Insured.

All other terms and conditions of this Policy remain unchanged.



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## FOLLOW FORM TO SPECIFIC ENDORSEMENT

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network Inc. |
| **Policy Number:** | 130003111 |
| **Endorsement Number:** | 006 |
| **Effective Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance Corporation |

This endorsement modifies insurance provided under the following:

   THE EXCESS POLICY

It is agreed that the following is added to the Policy:

Notwithstanding anything to the contrary, this Policy shall follow endorsement # 7, entitled Specified Claim Exclusion of policy number ELU184274-22 issued by XL Specialty Insurance Company.

All other terms and conditions of this Policy remain unchanged.

© QBE, 2017



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## FOLLOW FORM TO SPECIFIC ENDORSEMENT

| | |
|---|---|
| **Name of Parent Company:** | Celsius Network Inc. |
| **Policy Number:** | 130003111 |
| **Endorsement Number:** | 007 |
| **Effective Date of Endorsement:** | July 12, 2022 |
| **Name of Insurer:** | QBE Insurance Corporation |

This endorsement modifies insurance provided under the following:

THE EXCESS POLICY

It is agreed that the following is added to the Policy:

Notwithstanding anything to the contrary, this Policy shall follow endorsement # 3, entitled Convert Policy to Run-Off Upon Happening of Specific Event of policy number ELU184271-22 issued by Indian Harbor Insurance Company.

All other terms and conditions of this Policy remain unchanged.

© QBE, 2017

# Notice to Policyholders
# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")



**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

**PLEASE READ THIS NOTICE CAREFULLY**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

 ➢ Foreign agents;
 ➢ Front organizations;
 ➢ Terrorists;
 ➢ Terrorist organizations; and
 ➢ Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

757 Third Avenue, 10th Floor
New York, NY 10017
(212) 618-2900
Fax (212) 618-2940

# Excess Directors, Officers and Corporate Liability Insurance

October 25, 2022

Sir / Madam
Celsius Network, Inc.
121 River Street
PH05
Hoboken, NJ 07030

Binder/Policy Number: BPRO8086972

Dear Sir / Madam,

Thank you for choosing Berkley Professional Liability and the W.R. Berkley Corporation for your professional liability insurance needs. We know that you have many choices for your insurance and we appreciate your choosing BerkleyPro.

BerkleyPro and all its employees are proud of our tradition of providing an exceptional insurance facility and making every effort to assure your satisfaction with our product and service. The people behind the promise to pay are critical to the value of any insurance policy. Like most services, you get what you pay for - the premium is only one part of the value of an insurance policy.

The most important service we provide and the greatest value you receive does not come from delivering the policy - it comes from handling your claims. While we help our policyholders with loss control and crisis avoidance, if the day comes when you face a claim, we will be there to help you navigate through the complexities of a professional liability claim.

Attached is a narrative outlining claims reporting guidelines in the event that a claim does occur, with many years of experience handling complex professional liability claims - I am confident you will be pleased to have BerkleyPro on your side.

Once again, thank you for choosing BerkleyPro and the W.R. Berkley Corporation. We hope that you will see the value in the people behind the promise and we hope to be your choice for your professional liability needs for years to come. Please call your professional liability insurance agent if you have any questions about BerkleyPro, or any comments about our service to you. Your satisfaction is important to us.

Regards,

John R. Benedetto
President

# Claims Reporting Guidelines for the Insured

These guidelines should be followed to help Berkley Professional Liability provide efficient claims service.

## Claim Notices

All claim notices shall be sent to Berkley Professional Liability, Claims Department.  The notices must be reported as required by the policy to avoid problems regarding timely notice.  The address of the Berkley Professional Liability Claims, c/o Claims Department is as follows:

Berkley Professional Liability

Berkley Professional Liability Claims, c/o Claims Department

757 Third Avenue ■ 10th Floor ■ New York, NY 10017

Phone: (212) 618-2920

Claim Dept. Fax: (212) 618-2948

E-mail: claims@berkleypro.com

Notice of claim requiring immediate action:

If immediate action on the notice is needed the Insured should express mail the notice to BerkleyPros Claims Department.  Situations requiring immediate action may include:

1.   The Insured being served with a summons and complaint.

2.   The Insured needs to provide a response to the claimant immediately.

## Correspondence from the Insured

The claim notice should include a written narrative of the circumstances surrounding the claim or potential claim.  The narrative should include, but not be limited to:

1.   Names of the insureds, policy number and effective dates.

2.   Names and addresses of the claimant.

3.   Details of the underlying claim, including its current status and the amount in controversy or relief demanded.

4.   All pertinent letters or documents necessary to properly evaluate the claim.

Please provide carbon copies to your professional liability insurance agent

of all claim notices and correspondence sent to Berkley Professional Liability

MI0PI2  (06-06)

# Berkley Insurance Company

475 Steamboat Road Greenwich, CT 06830

**Declarations Page**

## Side A Directors and Officers Liability Insurance Policy with Difference in Conditions

### CLAIMS MADE WARNING FOR DECLARATION

NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AND PRELIMINARY INQUIRIES FIRST RECEIVED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).

NOTICE:  ALL LOSS, INCLUSIVE OF DEFENSE COSTS,  PRELIMINARY INQUIRY COSTS, PERSONAL ASSET COSTS, AND SOX 304/DODD-FRANK 954 COSTS, IS INCLUDED WITHIN THE LIMIT OF LIABILITY, SHALL REDUCE, AND MAY EXHAUST THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS.

NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.

PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in the Policy.

Policy Form:  BIC 30001 (01-14)                                        Policy Number: BPRO8086972

Item 1.    Name and Address of **Parent Organization**:
Celsius Network, Inc.
121 River Street
PH05
Hoboken, NJ  07030

Person designated to receive all correspondence from the **Insurer**:
Sir / Madam

Item 2.    **Policy Period**:          From July 8, 2022 (inception date) to  July 8, 2023 (expiration date)
*(Both dates at 12:01 a.m. Standard Time at the address of the **Parent Organization**)*

Item 3.    *Aggregate Limit of Liability for the **Policy Period** for all **Loss** (inclusive of all **Defense Costs, Derivative*** $5,000,000
***Demand Investigation Costs, SOX 304 Costs/Dodd-Frank 954 Costs, Personal Assets Costs, and***
***Preliminary Inquiry Costs)***

Item 4.    Extended Reporting Period:

Item 5.    Premium:                                                                                                      $500,000
New Jersey Property Liability Insurance Guaranty Association (PLIGA) Surcharge:        $3,000

Item 6.    Endorsements attached:

| | | |
|---|---|---|
| 1. | 265 (01-15) | NOTICE OF TERRORISM INSURANCE COVERAGE. |
| 2. | BIC 30702 (01-14) | States the insurer's intent to comply with US economic and trade sanctions law with respect to loss payments. |
| 3. | BIC 39999 (01-14) | Amend Definition of Insured Person |
| 4. | BIC 39999 (01-14) | Delete Additional Limit of Liability |
| 5. | BIC 39999 (01-14) | Follow Form Run-off Endorsement |
| 6. | BIC 39999 (01-14) | Fully Earned Premium |

Item 7.    Notice to the **Insurer** as provided in sections VI. A. and VI. B. and any information furnished to the **Insurer** as provided in section VI. B. shall be sent to:
Berkley Professional Liability, Berkley Professional Liability Claims, c/o Claims Department,
Address:  757 Third Avenue, 10th Floor, New York, NY  10017
Fax:      (212) 618-2948    Email:   claims@berkleypro.com

All other notices required to be given to the **Insurer** under this Policy shall be sent to:
Berkley Professional Liability
Berkley Professional Liability Claims, c/o Claims Department
Address:  757 Third Avenue, 10th Floor, New York, NY  10017
Fax:      (212) 618-2940

These Declarations along with the Side A Directors and Officers Liability Insurance Policy with Difference in Conditions and any endorsements attached hereto shall constitute the contract between the **Insured Persons** and the **Insurer**.

Authorized Representative: _____    Date Issued: October 25, 2022

BIC 30002 (01-14)                          BPRO8086972 Celsius Network, Inc.                          Page 1 of 1

BERKLEY INSURANCE COMPANY

# Side A Difference in Conditions Directors and Officers Insurance Policy

*This is a Claims Made Policy.  Please read it carefully.*

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

## CLAIMS MADE WARNING FOR POLICY

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST OR PRELIMINARY INQUIRIES FIRST RECEIVED BY THE INSURED PERSONS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE).**

**ALL LOSS, INCLUSIVE OF DEFENSE COSTS, PRELIMINARY INQUIRY COSTS, PERSONAL ASSET COSTS, AND SOX 304/DODD-FRANK 954 COSTS, IS INCLUDED WITHIN THE LIMIT OF LIABILITY, SHALL REDUCE, AND MAY EXHAUST, THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS.**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, and subject to the provisions of this policy, the **Insurer** and the **Insured Persons** agree as follows:

## I. Insuring Agreement

The **Insurer** shall pay to or on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** for a **Wrongful Act,** or **Preliminary Inquiry** first received by the **Insured Persons,** during the **Policy Period** or the **Extended Reporting Period** (if applicable), except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification or advancement from any source. In the event that **Loss** is not paid by any other **Insurance Program** or as indemnification or advancement from any source, this policy shall respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions, and limitations, including but not limited to Section IV. Limit of Liability, and without prejudice to the **Insurer's** excess position.

## II. Definitions

Whenever printed in boldface type, and whether in the singular or plural form, the following terms shall have the meanings indicated below.

A.  "**Change in Control**" means the:

   1. merger or acquisition of the **Parent Organization**, or of all or substantially all of its assets by another entity such that the **Parent Organization** is not the surviving entity, or

   2. acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than 50 percent of the directors of the **Parent Organization**.

B.  "**Claim**" means:

   1. a written demand for monetary, non-monetary, injunctive, or equitable relief, or

   2. any civil or criminal judicial proceeding in a court of law or equity, or

   3. a civil, criminal, administrative, or regulatory investigation or proceeding, which is commenced by the filing or notice of charges, a Wells Notice, "target letter", formal investigative order, or any similar document identifying any **Insured Person** as a person against whom a formal proceeding may be commenced, or

   4. an official request for **Extradition** of an **Insured Person**, or

   5. an arbitration, mediation, or other alternative dispute resolution proceeding, or

   6. a request to toll or waive a statute of limitations or contractual time-bar, or

   7. a formal or informal investigation involving an **Insured Person** by any governmental or self-regulatory authority (including the U. S. Securities and Exchange Commission, the U.S. Department of Justice or any state attorney general, or their equivalents in a **Foreign Jurisdiction**), which the **Insured Person** is advised of in writing by the investigating authority.

C.  "**Company**" means the **Parent Organization** and any **Subsidiary** created or acquired on or before the inception date set forth in Item 2. of the Declarations or during the **Policy Period**, subject to section VII. B. Change in Control. **Company** shall also mean any foundation, charitable trust or political action committee controlled by the **Parent Organization** and or any **Subsidiary**. In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, **Company** shall also mean the resulting debtor-in-possession (or equivalent status outside the United States), if any.

D.  "**Defense Costs**" means reasonable legal fees and expenses incurred in the defense, investigation, adjustment, or appeal of any **Claim** (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond). **Defense Costs** shall not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

BERKLEY INSURANCE COMPANY

E.   "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Parent Organization**.

F.   "**Enforcement Body**" means any federal, state, local or foreign enforcement authority or government investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and the attorney general of any state); or the enforcement arm of any securities or commodities exchange or other self-regulatory agency.

G.   "**Extradition**" means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

H.   "**Foreign Jurisdiction**" means any jurisdiction, other than the United States or any of its territories or possessions.

I.   "**Independent Director(s)**" means any past, present or future director of the **Parent Organization** who is not and has never been an officer or employee of any **Company**, or a holder of an equivalent position in a **Company** that is chartered in any jurisdiction other than the United States of America.

J.   "**Insurance Program**" means any:

   1. existing Management Liability insurance, Directors and Officers Liability insurance, Fiduciary Liability insurance, Employment Practices Liability insurance, or similar insurance, or

   2. other existing insurance under which coverage may be owed.

K.   "**Insured Person**" means:

   1. any past, present, or future director, including an **Independent Director**, or officer, or member of the Board of Managers, or trustee, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Organization** or any **Subsidiary** operating or incorporated outside the United States of America; or

   2. any past, present and future person in a duly elected or appointed position in an entity organized and operated in a foreign jurisdiction that is comparable to any position listed in 1. above; or

   3. the lawful spouse or **Domestic Partner** of any **Insured Person** for a **Claim** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Insured Person**, including a **Claim** that seeks damages recoverable from property jointly held by the **Insured Person** and the spouse or **Domestic Partner**, or property transferred from the **Insured Person** to the spouse or **Domestic Partner**; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Act** of an **Insured Person**, subject to this policy's terms, conditions and exclusions; or

   4. in the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** shall be deemed to be a **Claim** against such **Insured Person**; or

   5. any past, present, or future General Counsel and Risk Manager (or equivalent position) of a **Company**.

L.   "**Insurer**" means the entity issuing this policy as listed on the Declarations Page.

M.   "**Loss**" means **Defense Costs, Preliminary Inquiry Costs, Personal Asset Costs, Sox 304/Dodd-Frank 954 Costs**, damages, judgments, settlements or other amounts (including pre-judgment and post-judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law) and that the **Insured Persons** are obligated to pay. **Loss** shall include fines, penalties or taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person's** service with respect to an entity included within the definition of **Company**. Further, **Loss** shall include taxes paid by an **Insured Person** in a **Foreign Jurisdiction** in connection with the **Insurer's** payment of **Loss** to the **Insured Person**.

   **Loss,** other than **Defense Costs**, shall not include matters which are uninsurable under the law pursuant to which this policy is construed.

   Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B).

   Further, with respect to coverage for punitive, exemplary or multiplied damages, the law of the applicable jurisdiction most favorable to the insurability of such amounts shall control. With respect to punitive or exemplary damages, or to the multiplied portion of any damage award, the **Insurer** shall not challenge the written legal opinion of independent counsel selected by the **Insured** and consented to by the **Insurer**, such consent not to be unreasonably withheld or delayed, as to the insurability of such matters.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

It is agreed that if a **Claim** against the **Insured Persons** alleges violations of Section 11 or 12 or 15 of the Securities Act of 1933, as amended, the **Insurer** shall not assert that any portion of any settlement in such **Claim** constitutes uninsurable loss and shall treat that portion of such settlements and **Defense Costs** as constituting **Loss** under this policy.

N.    **"Outside Capacity Wrongful Act"** means:

1. any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, while acting in his or her capacity as a director, officer, trustee, regent, governor, or member of the board of managers of an LLC, or as a fiduciary of any employee benefit plan (or the functional equivalent of any of these if outside the United States of America), of an **Outside Entity**, if serving in such capacity at the specific request of the **Company**; or

2. matter asserted against any **Insured Person** solely by reason of his or her status as director, officer, trustee, regent, governor, or member of the board of managers of an LLC, or as a fiduciary of any employee benefit plan (or the functional equivalent of any of these if outside the United States of America), of an **Outside Entity**, if serving in such capacity at the specific request of the **Company**.

O.    "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person** serves as a director, officer, trustee, regent, governor, or member of the board of managers of an LLC, (or the functional equivalent of any of these if outside the United States of America), but only if such service is at the specific request of the **Company**.

P.    "**Parent Organization**" means the entity designated in Item 1. of the Declarations.

Q.    "**Personal Asset Costs**" means the reasonable fees, costs and expenses arising from a **Claim**, consented to by the **Insurer** and incurred by an **Insured Person** to oppose any efforts by (i) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including without limitation the U.S. Department of Justice, the U.S. Securities and Exchange Commission and the attorney general of any state); or (ii) the enforcement arm of any securities or commodities exchange or other self-regulatory agency, to seize, attach, or otherwise enjoin the use of the personal assets or real property of an **Insured Person** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof. The **Insurer's** maximum aggregate limit of liability for all **Personal Asset Costs** under this policy shall not exceed $500,000 and is part of and not in addition to the Aggregate Limit of Liability listed in Item 3 of the Declarations ("**Personal Asset Costs Sublimit**").

R.    "**Policy Period**" means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this policy.

S.    "**Preliminary Inquiry**" means a pre-**Claim** request received by an **Insured Person** for a meeting, interview, deposition, or for production of documents relating to the **Insured Person's** capacity with the **Company** by:
(1) an **Enforcement Body**; or
(2) the **Company**, including the board of directors (or foreign equivalent) or any committee thereof, arising out of (i) an inquiry or investigation by a **Enforcement Body** concerning the business of the   **Company** or of the **Insured Person's** capacity with the **Company** or (ii) the investigation or evaluation of a **Shareholder Derivative Demand**; or
(3) arrest or confinement of an **Insured Person** to a (i) specific residence or (ii) to a custodial premises operated by an **Enforcement Body** in connection with the business of the **Company** or the **Insured Person**'s capacity with the **Company**.

Preliminary Inquiry shall not include any routine or regularly scheduled regulatory inspection, compliance, review, examination, production or audit conducted in an **Enforcement Body**'s routine or ordinary review or compliance process.

T.    "**Preliminary Inquiry Costs**" means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with the **Insured Person's** preparation and response to a **Preliminary Inquiry**. **Preliminary Inquiry Costs** shall not include the costs of any routine or regularly scheduled regulatory inspection, compliance, review, examination, production or audit conducted in an **Enforcement Body's** routine or ordinary review or compliance process.

U.    "**Related Wrongful Act**" means **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts circumstances, situations, transactions, or events.

V.    "**Shareholder Derivative Demand**" means a written request by one or more shareholders of the **Company**, in their capacity as such, upon the board of directors of the **Company** to investigate or evaluate any fact, circumstance, or situation that may reasonably be expected to give rise to a **Claim** being made against an **Insured Person**.

A **Shareholder Derivative Demand** shall be deemed to have been first made at the time an **Insured** receives such written request by a shareholder(s).

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

W.    "**SOX 304/Dodd-Frank 954 Costs**" means the reasonable and necessary fees, costs and expenses (including the premium or origination fee for a bond or a loan) incurred by an **Insured Person** of the **Parent Organization** and consented to by the **Insurer** solely to facilitate the return of amounts required to be repaid by such persons pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act; provided however, **SOX 304 Costs/Dodd-Frank 954 Costs** shall not include the payment, return, reimbursement, disgorgement or restitution of any amounts requested or required to be repaid by such persons pursuant to either Sarbanes-Oxley or Dodd-Frank.

X.    "**Subsidiary**" means:

1. any for-profit entity of which the **Parent Organization** has **Management Control** on or before the inception of the **Policy Period** either directly or indirectly through one or more of the **Parent Organization's Subsidiaries**; and

2. any not-for-profit entity sponsored exclusively by a **Company;** and

3. any entity acquired or created during the **Policy Period.**

As used herein, "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company , (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company; or (3) possessing greater than 50% of the voting power of a partnership pursuant to the partnership agreement of such partnership.

Y.    "**Wrongful Act**" means any:

1. actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, while acting in his or her capacity as a director, officer, general counsel, or member of the Board of Managers of the **Company** or a functionally equivalent role for the **Company** operating or incorporated outside the United States, or

2. matter asserted against an **Insured Person** solely by reason of his or her status as a director, officer, general counsel, or member of the Board of Managers of the **Company**, or as a fiduciary of any employee benefit plan sponsored by any **Company** or any matter claimed against such **Insured Person** solely by reason of his or her status as such, or

3. **Wrongful Employment Act**, or

4. **Outside Capacity Wrongful Act**.

Z.    "**Wrongful Employment Act**" means any actual or alleged:

**(1)**    discrimination or harassment because of race, color, religion, age, sex, disability, pregnancy, or national origin, sexual orientation, marital status, or any other basis prohibited by law that results in termination of the employment relationship, or demotion or failure or refusal to hire or promote, or failure to accommodate an employee or potential employee, or denial of an employment privilege, or the taking of any adverse or differential employment action, or

**(2)**    sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that is made a condition of employment, is used as a basis for employment decisions, or creates an intimidating, hostile or offensive work environment that interferes with work performance, or

**(3)**    termination, constructive discharge, wrongful failure to hire, wrongful demotion, negligent retention, negligent supervision, negligent hiring, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of any implied contract or implied agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation.

## III. Exclusions

Except for **Defense Costs**, the **Insurer** shall not be liable to make any payment for that portion of **Loss** in connection with any **Claim** for:

A. deliberate fraudulent or deliberate criminal act, or

B. profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

as determined by a final non-appealable adjudication or proceeding in the underlying action; provided, however, Exclusion B shall not apply to any portion of **Loss** in connection with any **Claim** alleging violations of Section 11 or 12 or 15 of the Securities Act of 1933, as amended, or to that portion of any **Loss** attributable to such violations.

Exclusions A and B shall not apply to an **Independent Director**. Further, the imposition of criminal fines or penalties pursuant to the law of a **Foreign Jurisdiction** shall not constitute, by itself, proof that an **Insured Person** has committed a deliberate criminal act.

No conduct or knowledge or fact pertaining to or **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person** to determine the application of any of the above **Exclusions**.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

## IV. Limit of Liability

A.  The Limit of Liability stated in Item 3. of the Declarations is the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against or **Preliminary Inquiries** first received by the **Insured Persons** during the **Policy Period** and the Extended Reporting Period (if purchased).

B.  All **Loss, inclusive of Defense Costs, Preliminary Inquiry Costs, Personal Asset Costs, and Sox 304/Dodd-Frank 954 Costs,** is part of, and not in addition to, the Limit of Liability set forth in Item 3. of the Declarations. Payment by the **Insurer** of **Defense Costs, Preliminary Inquiry Costs, Personal Asset Costs, and Sox 304/Dodd-Frank 954 Costs** shall reduce and may exhaust the Limit of Liability.

C.  The **Insured Persons** and the **Company** understand and agree that, other than for insurance that is written to be specifically excess of the insurance afforded by this policy and for personal umbrella policies maintained by the **Insured Persons**, all coverage under this policy shall be specifically excess over, and shall not contribute with:

1.  all indemnification and advancement to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity,** and

2.  any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess, or otherwise.

Provided, however, if **Loss** is not paid by such other insurance or as indemnification or advancement, this policy shall respond on behalf of the **Insured Persons** as if it were primary, subject to all its terms, conditions and limitations and without prejudice to the **Insurer's** excess position.

D.  This policy shall not be subject to the terms or conditions of any other insurance. The **Insurer** does not waive, compromise or release any of its rights to recover **Loss** paid under this policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification or advancement, including the **Company** and any **Outside Entity.**

E.  If the **Insurer's** Limit of Liability as set forth in Item 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in Item 5. of the Declarations shall be fully earned, all obligations of the **Insurer** under this policy will be completely fulfilled and exhausted, and the **Insurer** shall have no further obligations of any kind whatsoever under this policy.

F.  **Additional Limit of Liability for Independent Directors**

Notwithstanding anything to the contrary in this policy, including without limitation Clauses A and E of this Section IV, solely with respect to any **Claim** made against or **Preliminary Inquiry** received by **Independent Directors** for which coverage is provided by this policy, the **Insurer** shall provide a $1,000,000 Limit of Liability, which amount shall be separate and in addition to the Aggregate Limit of Liability set forth in Item 3 of the Declarations; provided, however, that in no event shall this separate additional limit exceed $1,000,000 for the **Policy Period**. This additional limit solely for **Independent Directors** shall be excess of any valid insurance that is specifically excess to this policy and such excess insurance must be completely exhausted by payment of loss, damages or defense or inquiry costs thereunder before the **Insurer** shall have any obligation to make any payment on account of this additional limit of liability solely for **Independent Directors**.

## V. Defense, Cooperation and Settlement

A.  It shall be the duty of the **Insured Persons** and not the duty of the **Insurer** to defend **Claims** and to defend, or otherwise prepare for and respond to **Preliminary Inquiries**. No **Insured Person** may settle, make any offer to settle, assume any obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** consent, such consent not to be unreasonably withheld. No **Insured Person** incur any **Preliminary Inquiry Costs** or **SOX 304/Dodd-Frank 954 Costs** without the **Insurer's** consent , such consent not to be unreasonably withheld.

B.  Upon written request, the **Insurer** shall pay on a current basis any **Defense Costs** and **Preliminary Inquiry Costs** before the disposition of the **Claim** or **Preliminary Inquiry** for which this policy provides coverage. In the event of such advancement, the **Insured Persons** agree that they shall repay the **Insurer**, severally according to their interests, any **Loss**, including **Defense Costs** or **Preliminary Inquiry Costs,** paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this policy.

C.  The **Insured Persons** and the **Company** agree to provide the **Insurer** with all information, assistance and cooperation that the **Insurer** may reasonably request, and further agree that they shall do nothing which in any way increases the **Insurer's** exposure under this policy or in any way prejudices the **Insurer's** potential or actual rights of recovery. The failure of any **Insured Person** to give the **Insurer** cooperation and information as required herein shall not impair the rights of any other **Insured Person** under this policy.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

## VI. Notice of Claim and Multiple Claims

A.  As a condition precedent to the right to any payment under this policy, the **Insured Persons** or the **Company** shall give written notice to the **Insurer** of any **Claim** or **Preliminary Inquiry** as soon as practicable after the General Counsel or Risk Manager of the **Parent Organization** first becomes aware of the **Claim** or **Preliminary Inquiry.**

B.  If during the **Policy Period** or Extended Reporting Period (if applicable), the **Insured Persons** or the **Company** first becomes aware of a specific **Wrongful Act** or **Preliminary Inquiry**, and, if during the **Policy Period** or **Extended Reporting Period** (if applicable), the **Insured Persons** or the **Company**:

1.  provide the **Insurer** with written notice of the specific **Wrongful Act** or **Preliminary Inquiry**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act** or **Preliminary Inquiry**, and

2.  request coverage under this policy for any subsequently resulting **Claim** for such **Wrongful Act** or **Preliminary Inquiry**, then any **Claim** subsequently made arising out of such **Wrongful Act** shall be treated as if it had been first made during the **Policy Period**.

C.  All **Claims** arising from the same **Related Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to section VI. A. or B. above, if applicable.

D.  All **Preliminary Inquiries** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts circumstances, situations, transactions, or events shall be deemed to constitute a single **Preliminary Inquiry** and shall be deemed to have been received at the earliest time at which the earliest such **Preliminary Inquiry** is received.

E.  If a **Claim** is first received during the **Policy Period** or the **Extended Reporting Period** (if applicable) and is reported pursuant to Section VI. A. above, then any **Preliminary Inquiry** subsequently received by an **Insured Person** alleging, arising out of, based upon, attributable to the same or related circumstances or matters as alleged or contained in the **Claim** will be deemed to have been made at the time the **Claim** was first received. If a **Preliminary Inquiry** is first received during the **Policy Period** or the **Extended Reporting Period** (if applicable) and is reported pursuant to Section VI. A. above, then any **Claim** subsequently made against an **Insured Person** alleging, arising out of, based upon, attributable to the same or related circumstances or matters as alleged or contained in the **Preliminary Inquiry** will be deemed to have been made at the time the **Preliminary Inquiry** was first received.

F.  With respect to any **Preliminary Inquiry** subsequently received by an **Insured Person** alleging, arising out of, based upon, attributable to the same or related circumstances or matters as alleged or contained in a **Claim** made against an **Insured Person** or which is the subject of another **Preliminary Inquiry** received by an **Insured Person**, this policy shall not cover **Loss** incurred before such subsequent **Preliminary Inquiry** is actually received by an **Insured Person**, and with respect to any subsequent **Claim** as described in this Section VI, this policy shall not cover **Loss** incurred before such subsequent **Claim** is actually made against an **Insured Person**.

G.  In addition to furnishing the notice as provided in sections VI. A. and VI. B. above, the **Insured Persons** or the **Company** shall give the **Insurer** such information and cooperation as it may reasonably require and shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith. The failure of any **Insured Person** to give the **Insurer** cooperation and information as required in this paragraph VI.D. shall not impair the rights of any other **Insured Person** under this policy.

H.  In the event that written notice of **Claim** or **Preliminary Inquiry** to the **Insurer** is made after the **Policy Period** or **Extended Reporting Period** (if applicable) has expired (hereinafter, "late notice"), the **Insurer** shall, subject to all other terms, conditions, definitions, and exclusions of this policy, be required to accept such "late notice" of **Claim** or **Preliminary Inquiry** under this policy unless the **Insurer** can demonstrate that it was materially prejudiced by such late notice.

## VII. General Conditions

A.  **Termination, Cancellation, and Non-Renewal of Policy**

This policy may be cancelled by the **Insurer** only for non-payment of any premium when due. This policy may not be cancelled by the **Company** or by any **Insured Persons**, other than by the Chairman and CEO of the **Parent Organization**, who shall have the exclusive right to cancel this policy on behalf of **Insured Persons**. The **Insurer** shall provide at least 20 days written notice to the **Parent Organization** prior to any cancellation for non-payment of any premium. Any notices to be given to the **Parent Organization** under this Section VII. shall be provided to the **Parent Organization** at the last known principal address and to its insurance agent or broker.  Certified mail of such notice shall be sufficient to perfect notice. If the **Insurer** decides not to renew this policy, the **Insurer** shall provide written notice to the **Parent Organization** at least 60 days prior to the end of the **Policy Period**. The notice shall include the reason for such non-renewal.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

BERKLEY INSURANCE COMPANY

B.  **Change in Control**

If during the **Policy Period**:

1.  the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction; provided, however, there shall be no coverage available under this policy for any **Claim** made against any **Insured Person** for any **Wrongful Act** in connection with the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, or liability, committed at any time during which such entity, asset, liability, or **Subsidiary** is not included within the definition of **Company**, or

2.  any entity ceases to be a **Subsidiary**, the coverage provided under this policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**, or

3.  there is a **Change in Control**, the coverage provided under this policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change in Control**, then coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change in Control**, and the entire premium for the policy will be deemed to be fully earned immediately upon the consummation of a **Change in Control**.

C.  **Extended Reporting Period**

1.  If the **Insured Persons** or the **Insurer** cancel or nonrenew this policy, then the **Insured Persons** shall have the right, upon payment of an additional premium set forth in Item 4. of the Declarations, to a period of one to six years following the effective date of such cancellation or nonrenewal ("**Extended Reporting Period")** an extension of the coverage provided by this policy with respect only to any **Claim** or **Preliminary Inquiry** first made during the period of time set forth in Item 4. of the Declarations after the policy expiration date, but only with respect to a **Wrongful Act** occurring prior to policy expiration date.

2.  As a condition precedent to the right to purchase the **Extended Reporting Period** the total premium for this policy must have been paid in full. The right of the **Insured Persons** to purchase the **Extended Reporting Period** shall be immediately terminated if the **Insurer** does not receive written notice by the **Insured Persons** advising they wish to purchase the **Extended Reporting Period** together with full payment of the premium for the **Extended Reporting Period** within 30 days after the policy expiration date.

3.  Pursuant to Section VII. B. of this policy, in the event of a **Change in Control**, the **Insured Persons** shall have the right to request an offer from the **Insurer** for an **Extended Reporting Period** with respect to **Wrongful Acts** occurring prior to the effective time of the **Change in Control**, and the **Insurer** shall offer such **Extended Reporting Period** pursuant to such terms, conditions, exclusions, and additional premium as the **Insurer** may reasonably decide. In the event of a **Change in Control** pursuant to Section VII.B., the right to an **Extended Reporting Period** shall not otherwise exist

4.  If the **Insured Persons** elect to purchase the **Extended Reporting Period**, the entire premium for the **Extended Reporting Period** shall be deemed to be fully earned at the inception date of the **Extended Reporting Period**.

5.  The purchase of the **Extended Reporting Period** shall not in any way increase the Limit of Liability set forth in Item 3. of the Declarations and the Limit of Liability with respect to **Claims** made during the **Extended Reporting Period** shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

D.  **Application, Severability, and Nonrescindability**

1.  No application shall be required for this policy.

2.  No knowledge possessed or **Wrongful Act** by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining the availability of coverage with respect to any **Claim** made against such other **Insured Person**.

3.  The **Insurer** shall not be entitled, under any circumstances, to rescind or void this policy in whole or in part.

E.  **Action  Against The Insurer**

No action may be taken against the **Insurer** unless there has been full compliance with all of the terms and conditions of this policy, and the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the **Insurer**.

Nothing contained herein shall give any person or entity any right to join the **Insurer** as a party to any **Claim** or **Preliminary Inquiry** against the **Insured Person** to determine their liability, nor may the **Insured Person** implead the **Insurer** in any **Claim** or **Preliminary Inquiry**. Assignment of interest under this policy shall not bind the **Insurer** unless its consent is endorsed hereon.

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Insurer** shall not cause a waiver or change in any part of this policy or prevent the **Insurer** from asserting any right under the terms, conditions and limitations of this policy. The terms, conditions and limitations of this policy may only be waived or changed by written endorsement signed by the **Insurer**.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

F. **Bankruptcy**

In the event that a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the **Insured Persons** and the **Company** hereby: (1) waive and release any automatic stay or injunction which may apply in such proceeding in connection with this policy or its proceeds under such Bankruptcy Code or law; and (2) agree not to oppose or object to any efforts by the **Insurer** or any **Insured Person** or the **Company** to obtain relief from any such stay or injunction.

In the event the **Company** becomes a debtor in possession or an equivalent status under the United States Bankruptcy Code or the equivalent law of any other country and the aggregate **Loss** due under this policy exceeds the remaining available **Limit of Liability**, the **Insurer** shall: (a) first pay such **Loss** allocable to **Wrongful Acts** that are actually or allegedly caused, committed, or attempted prior to the **Company** becoming a debtor in possession or such equivalent status, then (b) with respect to whatever remaining amount of the **Limit of Liability** is available after payment under (a) above, pay such **Loss** allocable to **Wrongful Acts** that are actually or alleged caused, committed, or attempted after the **Company** became a debtor in possession or such equivalent status.

G. **Subrogation**

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insured Person's** rights of recovery thereof, including but not limited to any or all of the **Insured Persons'** right to advancement or indemnification from the **Company**, and the **Insured Person** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Insured Person**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured Person.**

Any amount recovered pursuant to the exercise of such rights of subrogation shall be applied as follows: 1) to the repayment of expenses incurred by the **Insurer** in the exercising of any rights of subrogation; 2) to damages and/or **Defense Costs** and/or **Preliminary Inquiry Costs** paid by the **Insured Person** in excess of the Limits of Liability hereunder; and 3) to damages and/or **Defense Costs** and/or **Preliminary Inquiry Costs** paid by the **Insurer.** Further, any recoveries by the **Insurer** pursuant to subrogation for payments made under this policy shall reinstate, in an amount equal to such recoveries, the **Limits of Liability** of this policy that were eroded or exhausted by such payments.

H. **Currency**

All **Loss**, limits of liability, and any other amounts under this policy are expressed and payable in the currency of the United States of America.  If any settlement, judgment, **Defense Costs** or other **Loss** under the policy is incurred, stated, determined or adjudicated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in the Wall Street Journal on the date the obligation of the **Insurer** to pay such **Loss** is established.

I. **Assignment**

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

J. **Entire Agreement**

By acceptance of this policy, the **Insured Persons** and the **Insurer** agree that this policy and any written endorsements attached hereto constitute the entire agreement between the parties.

K. **Representation by Parent Organization**

It is agreed that the **Parent Organization** shall act on behalf of the **Insured Persons** with respect to the giving and receiving of notices, the payment of premiums and the receiving of any return premiums that may become due under this policy, and the receipt and acceptance of any endorsements issued to form a part of this policy.

L. **Coverage Territory**

This policy shall apply to any **Wrongful Act** occurring, **Loss** incurred, or **Claim** made anywhere in the world.

M. **Severability of Company Obligations**

The failure of the **Company** to perform any of its obligations under this policy shall not impair the rights of any **Insured Person** under this policy.

N. **Advancement For Refusal or Failure of Company Indemnity or Underlying Insurers**

This policy shall drop down and advance the covered **Loss** of any **Insured Person** for any **Wrongful Act** in the place and to the extent of any: (i) failed or refused indemnification from the **Company** and (ii) failed or denied insurance coverage in the directors and officers liability insurance program underlying this policy (henceforth, solely for purposes of this Clause L, "**Underlying Insurers"**). Insurance coverage is deemed "denied" if the **Underlying Insurers** give a written notice of the denial to the **Insured Person**. Indemnification is deemed "refused" if the **Company** gives a written notice of the refusal to the **Insured Person**. Indemnification or insurance coverage is deemed "failed" if it has been requested by any **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation of such **Company** or **Underlying Insurers**, as the

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

case may be, to such **Insured Person** within 60 days of his or her request. In any such case, such indemnification or insurance coverage shall only be deemed "failed" or "refused" while and to the extent such indemnification is not provided, or agreed to be provided or acknowledged by and collectible from the **Company**, **Underlying Insurers** or other source. Advances by the **Insurer** under this Clause N are without prejudice to the **Insurer's** excess position established by Clause 1 and subject to the **Aggregate Limit of Liability**, inclusive of **Defense Costs**, stated in Item 3. of the Declarations to this policy.

O.   **Liberalization To Underlying**

The coverage provided under this policy for **Insured Person(s)** shall be provided pursuant to the terms and conditions of this policy or shall follow form to any terms and conditions of the primary policy of the underlying program that are more favorable to the **Insured Person(s)**, provided that in all events, coverage under this policy shall always remain subject to **Section 1, Insuring Agreement**, **Section II Extended Reporting Period, Section IV, Clause C, Aggregate Limit of Liability** stated in Item 3 of the Declarations, **Policy Period,** and **Insured Person(s)** as defined in this policy.

P.   **Recognition of Erosion of Attachment Point**

Subject to this policy's terms, conditions and exclusions, in the event of reduction or exhaustion of the limit(s) of any insurance underlying this policy by reason of the insurers of the underlying insurance or the **Insured Person(s)**, or any other party on behalf of the **Insured Person(s),** paying **Loss** covered thereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced underlying insurance, and (ii) in the event of exhaustion, continue in force as primary insurance.

Q.   **State Amendatory Inconsistency**

In the event that there is an inconsistency between a state amendatory endorsement attached to this policy and any term or condition of this policy, then where permitted by law, the **Insurer** shall apply those terms and conditions of the coverage which are more favorable to the **Insured Person(s)**.

In witness whereof, the **Insurer** has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**

President                                    Secretary

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Berkley Insurance Company
475 Steamboat Road  Greenwich, CT 06830

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy. You are hereby notified that under the Act the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act is $0.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8086972 |
| Effective Date of This Endorsement 07/08/2022 | Authorized Representative |

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## OFAC Compliance Endorsement

In consideration of the premium charged, it is understood and agreed that payment of Loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8086972 |
| Effective Date of This Endorsement 07/08/2022 | Authorized Representative |

BIC 30001 (01-14)                    50654-BPRO8086972-769278                    BIC 30702 (01-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## Amend Definition of Insured Person

In consideration of the premium paid for this Policy, it is understood and agreed that Section II. Definitions K.

"**Insured Person**" is hereby deleted and replaced with the following:

K. "**Insured Person**" means: Alan Carr and David Barse

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8086972 |
| Effective Date of This Endorsement 07/08/2022 | Authorized Representative |

BIC 30001 (01-14)                    50655-BPRO8086972-769278                    BIC 39999 (01-14)

## Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## Delete Additional Limit of Liability

In consideration of the premium paid for this Policy, it is understood and agreed that Section IV. Limit of Liability F. is deleted in its entirety.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8086972 |
| Effective Date of This Endorsement 07/08/2022 | Authorized Representative |

BIC 30001 (01-14)    50655-BPRO8086972-769278    BIC 39999 (01-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## Follow Form of Specific Underlying Endorsement

In consideration of the premium paid, it is understood and agreed that section VII. General Conditions, C. of this Policy is amended by the addition of the following:

6.     Notwithstanding the foregoing, the Policy shall provide coverage excess of the **Underlying Insurance** in conformance with the provisions of the endorsements set forth below and attached Indian Harbor Insurance Company Policy # ELU184271-22

| Endorsement Number | Endorsement Name |
| --- | --- |
| 3 | CONVERT POLICY TO RUN-OFF UPON HAPPENING OF SPECIFIC EVENT |

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
| --- | --- |
| Celsius Network, Inc. | BPRO8086972 |
| Effective Date of This Endorsement 07/08/2023 | Authorized Representative |

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

### Fully Earned Premium Endorsement

In consideration of the premium paid, it is understood and agreed that Section VII. General Conditions, A. Termination, Cancellation, and Non-Renewal of Policy is hereby deleted and replaced with the following:

It is a condition precedent to the issuance of this policy that the premium for this policy shall be fully earned at inception. This policy may be cancelled by the Insurer only for non-payment of premium when due. The Insurer shall provide at least 20 days written notice to the Parent Organization prior to any cancellation for non-payment of any premium.

Any notices to be given to the Parent Organization under this Section VIII. shall be provided to the Parent Organization at the last known principal address and to its insurance agent or broker. Certified mail of such notice shall be sufficient to perfect notice.

All other terms and conditions shall remain the same

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Celsius Network, Inc. | BPRO8086972 |
| Effective Date of This Endorsement<br>07/08/2022 | Authorized Representative |

BIC 30001 (01-14)                    50655-BPRO8086972-769278                    BIC 39999 (01-14)





**AXA XL - Professional Insurance**
100 Constitution Plaza, 17th  Floor,
Hartford, CT 06103
Phone 860-246-1863, Fax 860-246-1899

October 26, 2022

Brad McDonald
Cobbs Allen Capital, LLC
250 Fillmore Street
Suite 450
Denver, CO 80206

**Re: Celsius Network, Inc.**
      **Excess Policy**

Dear Brad,

Enclosed, please find the policy for **Celsius Network, Inc**. Thank you for choosing XL Insurance.
Please call if you have any questions or concerns.

Sincerely,

Stu Perry

rf

| Policy Number: | **ELU184224-22** | **XL Specialty Insurance Company** |
|---|---|---|
| Renewal of Number: | N/A | (Hereafter called the Insurer) |

## EXCESS POLICY DECLARATIONS

Executive Offices:
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

Regulatory Office:
505 Eagleview Blvd., Ste. 100
Exton, PA 19341-1120
Telephone:  800-327-1414

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**Item 1.**    **Name and Mailing Address of Insured Entity:**

Celsius Network, Inc.
221 River Street
9th Floor
Hoboken, NJ  07080

The Insured Entity will be the sole agent for and will act on behalf of the Insured with respect to all matters under this Policy.

---

**Item 2.**    **Policy Period:**    **From:**    July 08, 2022    **To:**    July 08, 2023

At 12:01AM Standard Time at your Mailing Address Shown Above

---

**Item 3.**    **Limit of Liability:**

$2,500,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**    **Schedule of Underlying Insurance:**

| | | **Insurer** | **Policy No** | **Limit of Liability** |
|---|---|---|---|---|
| (a) | Primary Policy | Berkley Insurance Company | BPRO8086972 | $5,000,000 |

**Item 5.**    **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 13th Floor
Hartford, CT 06103
by electronic mail (email) to:  proclaimnewnotices@axaxl.com.
Toll Free Telephone: 877-953-2636

---

**Item 6.**    **Premium:**

| | |
|---|---|
| NJ Property & Liability Guaranty Association (PLIGA): | $1,350.00 |
| Total Policy Premium: | $225,000.00 |

---

**Item 7.**    **Policy Forms and Endorsements Attached at Issuance:**

XS 71 00 05 14   XS 80 224 11 21   XS 80 07 12 14   XL 80 66 03 11

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

© 2014 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

| | |
|---|---|
| Joseph Tocco | Toni Ann Perkins |
| President | Secretary |

LAD 400 0915 XLS
© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that the Terrorism Risk Insurance Act, as amended in 2019, defines an act of terrorism in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States —to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $waived, and does not include any charges for the portion of losses covered by the United States government under the Act.

PN161 12 20 T

© 2020 X.L. America, Inc.
Includes copyrighted material of National Association of Insurance Commissioners, with its permission.

NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

---

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NOTICE TO POLICYHOLDERS
_____

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

<u>Our Privacy Promise</u>

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

<u>Collection and Sources of Information</u>

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

•   Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
•   Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;

PN CW 02 0119                                                                                      Page 1 of 3

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Alabama | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
|---|---|
| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| California | **General: All applications for commercial insurance, other than liability insurance:** Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.

**All applications for liability insurance and all claim forms:** For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance that such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.<br><br>**WARNING: All Workers Compensation Insurance**:<br>Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:<br>1.   obtaining any benefit or payment,<br>2.   increasing any claim for benefit or payment, or<br>3.   obtaining workers' compensation coverage under the Administrative Workers' Compensation Act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

PN CW 01 0122    Page 3 of 3

© 2022 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**XS 80 224 11 21**

| | |
|---|---|
| **Endorsement No.: 1** | **Effective: July 08, 2022** |
| **Named Insured: Celsius Network, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU184224-22** | **Insurer: XL Specialty Insurance Company** |
| **Policy Form: EXCESS POLICY** | |

# EXCESS TERRORISM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that any endorsement of the Underlying Insurance which specifically precludes coverage for an "insured loss" resulting from an "act of terrorism" (as such terms are defined in the Terrorism Risk Insurance Program Reauthorization Act of 2019) which would otherwise be provided coverage under the Underlying Insurance shall be inapplicable to this Policy (any such endorsement, a "Terrorism Endorsement").  Subject to all other terms, conditions and limitations of the Policy and the Underlying Insurance, other than the Terrorism Endorsement, coverage for acts of terrorism is included in this Policy as set forth in the Policy Holder Notice of Terrorism Insurance Coverage notice to this Policy.  In any event, coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of loss by the applicable insurers thereunder, regardless of whether any such Terrorism Endorsement is included in any Underlying Insurance.  The Insurer will not be liable under this Policy to any earlier degree than the Insurer would have had this Endorsement not been a part of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2021 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.: 2**                    **Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**   **12:01 A.M. Standard Time**
**Policy No.: ELU184224-22**               **Insurer: XL Specialty Insurance Company**

# EXCESS ENDORSEMENT

In consideration of the premium charged:

(1)     It is understood and agreed that the Limit of Liability for this Policy as set forth in Item 3 of the Declarations is the maximum amount payable, including Defense Expenses, by the Insurer under this Policy.  Any provision of the Underlying Insurance indicating any ability or right to any reinstatement of such policy's limit of liability shall be inapplicable to this Policy, including any provision indicating a reinstatement of such policy's limit of liability during any extended discovery or reporting period.  The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

(2)     It is understood and agreed that the Insurer is under no obligation to renew this Policy upon its expiration. Any provision of the Underlying Insurance indicating any automatic renewal of this Policy shall be inapplicable to this Policy.   The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**XL 80 66 03 11**

**Endorsement No.: 3**　　　　　　　　　**Effective: July 08, 2022**
**Named Insured: Celsius Network, Inc.**　　**12:01 A.M. Standard Time**
**Policy No.: ELU184224-22**　　　　　　**Insurer: XL Specialty Insurance Company**

# FULLY EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, the entire premium for this Policy, as set forth in Item 6. of the Declarations, shall be deemed to be fully earned as of the Inception Date of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2011 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

# EXCESS POLICY COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (the Insurer) and to the issuer(s) of the Underlying Insurance, the Insurer and the insureds agree as follows:**

## I.    INSURING AGREEMENT

The Insurer will provide coverage excess of the Underlying Insurance stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of both the Primary Policy stated in ITEM 4 (A) of the Declarations and of any other Underlying Excess Policy stated in ITEM 4 (B) of the Declarations.  The coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of covered amounts under the Underlying Insurance by the applicable insurers thereunder or by any other source. To the extent that any terms, conditions, and endorsements of the Policy may be inconsistent with any terms, conditions, and endorsements of the Underlying Insurance, the terms, conditions, and endorsements of this Policy shall govern.

## II.    DEPLETION OF UNDERLYING LIMITS OF LIABILITY

The coverage hereunder shall attach only after the limits of all Underlying Insurance have been exhausted by payment of covered amounts.  Subject to the terms, conditions, and endorsements of this Policy and the Underlying Insurance, this Policy will continue to apply to covered amounts as primary insurance in the event of the exhaustion of all of the limits of liability of such Underlying Insurance as the result of the actual payment of covered amounts by the applicable insurer thereunder or by any other source.  Any risk of uncollectibility with respect to the Underlying Insurance will be expressly retained by the insureds and will not be assumed by the Insurer.

## III.    RIGHTS AND CLAIM PARTICIPATION

The Insurer shall have the same rights, privileges and protections afforded to the insurer(s) of the Underlying Insurance and may, at its sole discretion, elect to participate in the investigation, settlement and/or defense of any claim against the insureds even if the Underlying Insurance has not been exhausted.  The insureds will provide such information and cooperation as is reasonably requested.  The insureds shall not do anything that prejudices the Insurer's position or potential rights of recovery, including, but not limited to, terminating any Underlying Insurance.

## IV.    LIMIT OF LIABILITY

The amount stated in ITEM 3 of the Declarations is the limit of liability of the Insurer and shall be the maximum amount payable, including defense expenses, by the Insurer under this Policy.  Defense expenses are part of and not in addition to the limit of liability and the payment of such will reduce the limit of liability.

## V.    NOTICE,  ALTERATION, AND TERMINATION

(A)    Where the Underlying Insurance permits or requires notice to the Insurer, the insureds shall have the same obligations and rights to notify the Insurer under this Policy.  All notices required under the Underlying Insurance policies and this Policy shall be sent to the address set forth in ITEM (5) of the Declarations: Attention Claim Department or by electronic mail to:  proclaimnewnotices@xlgroup.com.  Notice given to any underlying insurer will not be deemed notice to the Insurer.

(B)    No change in or modification of this Policy shall be effective unless made by endorsement.  In the event of a change of any kind to any Underlying Insurance that broadens or expands coverage, this Policy will become subject to such change only if and to the extent that the Insurer consents to such change in writing and the insured pays any additional premium that may be required by the Insurer.

(C)    This Policy will terminate immediately upon the termination of any of the Underlying Insurance, whether cancelled by the insured or the applicable insurer. Notice of cancellation or non-renewal of any such policies duly given by any of the applicable insurers shall serve as notice of the cancellation or non-renewal of this Policy by the Insurer.



# US Insurance

## Excess Liability

**Policy Number:** FIX30022208200
**Effective Dates:** July 08, 2022 To: July 08, 2023
**Endurance American Insurance Company**



**Issuing Office:**
1221 Avenue of the Americas
New York, NY 10020
www.sompo-intl.com

PN 0027 0221

 **SOMPO INTERNATIONAL**

# Endurance American Insurance Company
### Wilmington, Delaware

## EXCESS LIABILITY POLICY DECLARATIONS

NOTICE:  Depending on the terms and conditions of the Followed Form, this Policy may (1) only provide coverage for Loss from Claims first made or first made and reported during the Policy Period; and (2) have its Limit of Liability reduced by payment for defense costs.  Please read the Followed Form and this Policy carefully to determine your rights, duties and what is and what is not covered.  In the event of any conflict between the terms and conditions of this Policy and the Underlying Policy(ies), the terms and conditions of this Policy shall control.  Terms defined in the Followed Form are used herein with the meaning assigned to them in the Followed Form unless otherwise indicated.

POLICY NUMBER:  FIX30022208200

| | | |
|---|---|---|
| Item 1. | Named Insured: | Celsius Network LLC |
| | Address: | 121 River Street |
| | | PH05 |
| | | Hoboken, NJ 07030 |

Item 2.    Policy Period:         From: July 08, 2022         To: July 08, 2023

(12:01 AM Standard Time on both dates at the address of the Named Insured noted above.)

Item 3.    Limit of Liability:      $2,500,000 excess of $7,500,000

Item 4.    Pending & Prior Litigation
           Date:                 Policy Inception

Item 5.    Premium:              $200,000
           TRIA                  *Premium includes TRIA coverage
           State Surcharge:      $1,200
           Total:                $201,200

Item 6.    Producer:             Cobbs Allen Capital, LLC dba CAC Specialty
           Address:              250 Filmore Street
                                 Suite 450
                                 Denver, CO 80206

Item 7.    See attached Difference in Conditions (DIC into DIC) endorsement, PEO 0369

Item 8.    Forms and Endorsements Effective at Inception:
           See attached Forms and Endorsements Schedule, IL 0101.

Item 9.    Notice:

A.  Claims or Potential Claims:   Financial Institutions
Attn:  Claims Department
1221 Avenue of The Americas
New York, NY 10020
Insuranceclaims@sompo-intl.com
1-877-676-7575

B.  All Other:   Financial Institutions
Attn: Professional Lines Underwriting Department
1221 Avenue of The Americas
New York, NY 10020

This Policy shall constitute the contract between the Insureds and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_____                     October 26, 2022
                                                      _____
Authorized Representative                             Date

# EXCESS LIABILITY POLICY

In consideration of the premium paid and in reliance on all statements made and information furnished by the Insureds in the Application or the underwriting of this Policy, and subject to the terms and conditions of this Policy, the Insurer, and the Named Insured, on behalf of all Insureds, agree as follows:

I.    INSURING CLAUSE

This Policy shall provide to the Insureds insurance coverage for any covered Loss resulting from covered Claims, and shall attach to the Insurer only after (i) the insurers of the Underlying Policy(ies), the Insureds, and/or any other party shall have paid in legal currency the full amount of the Underlying Limit, and (ii) the Insureds shall have paid any applicable retention or deductible under the Primary Policy. The Limit of Liability set forth in Item 3. of the Declarations shall be the maximum amount payable by the Insurer under this Policy.

II.    TERMS AND CONDITIONS

A.    This Policy, except as stated herein, is subject to all terms, conditions and limitations as contained in the Followed Form as of inception of this Policy, and to the extent coverage is further limited or restricted thereby, in any other Underlying Policy(ies).

B.    If any coverage under the Underlying Policy(ies) is subject to a sublimit of liability, this Policy shall not apply to such coverage, but the Insurer shall recognize any Loss paid under such coverage in any manner described in the Insuring Clause as reducing the Underlying Limit by the amount of such paid Loss.

C.    If any Underlying Policy(ies) is changed or terminated the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policy(ies) been so maintained, unless the Insurer agrees to the change in writing.  The risk of uncollectability of the Underlying Policy(ies) whether because of insolvency of an underlying insurer or for any other reason is expressly retained by the Insureds.

D.    Notice to the Insureds may be given to the Named Insured at the address shown in Item 1. of the Declarations.  Notice to the Insurer shall be given to the Insurer at the address shown in Item 9. of the Declarations.  Notice to any insurer of an Underlying Policy(ies) shall not constitute notice to the Insurer unless also given to the Insurer as provided above.

E.    The Insurer may, at its sole discretion, participate in the investigation, defense or settlement of any Claim or other matter to which coverage under this Policy could apply even if the Underlying Limit has not been exhausted.  No action by any other insurer shall bind the Insurer under this Policy.  The Insurer shall not be liable under this Policy for any settlements, stipulated judgments or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

III.    DEFINITIONS

1.    Followed Form, Underlying Policy(ies) and Limit of Liability have the meanings attributed to them in the Declarations.

2.    Insureds mean all natural persons and entities insured by the Followed Form.

3.    Named Insured means the entity named in Item 1. of the Declarations.

4.    Primary Policy means the first listed policy in Item 7.A. of the Declarations.

5.    Policy Period means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with the Followed Form.

6.    Underlying Limit means an amount equal to the aggregate of all limits of liability, as set forth in Item 7. of the Declarations, for all Underlying Policy(ies), plus any applicable retention or deductible under the Primary Policy.

# FORMS AND ENDORSEMENT SCHEDULE

## EXCESS LIABILITY

| End. No. | Title | Number |
|---|---|---|
| | Excess Liability Policy Declarations | PEO 0001 0413 |
| | Excess Liability Policy | PEO 0201 0413 |
| | Forms and Endorsement Schedule | IL 0101 0712 |
| 1 | New Jersey Changes | PEO 0339 0413 NJ |
| 2 | Claims Participation Amended Endorsement | PEO 0365 1219 |
| 3 | Difference in Conditions (DIC into DIC) Endorsement | PEO 0369 1219 |
| 4 | Following Form Amended Endorsement | PEO 0383 1219 |
| 5 | Insuring Clause Amended Endorsement | PEO 0386 1219 |
| 6 | Preamble Amended Endorsement | PEO 0389 1219 |
| 7 | State Amendatory Inconsistency Endorsement | PEO 3303 1219 |
| 8 | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| 9 | Disclosure Pursuant to Terrorism Risk Insurance Act | IL 1214 1220 |
| | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0721 |
| | Signature Page | IL 1007 0114 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*

# ENDORSEMENT

Named Insured:  Celsius Network LLC                    Policy Number:  FIX30022208200

Endorsement                                            Endorsement
Effective Date:  July 08, 2022                         Number:       1
                 (12:01 AM Standard Time at the address of the
                 Named Insured as shown in the Declarations)

## NEW JERSEY CHANGES

It is agreed that:

1.  Notwithstanding anything in this Policy to the contrary, the insurance coverage as is afforded by this Policy, as respects coverage for operations in New Jersey, shall conform to the coverage requirements of the applicable insurance laws and regulations of New Jersey.

2.  This Policy and the Policy Period shall terminate at the earliest of the effective date of nonrenewal of the Policy Period shown in Item 2 of the Declarations or the effective date of cancellation, as described below.

   A.  CANCELLATION

      1.  The Named Insured may cancel this Policy by surrender of this Policy to the Insurer or by giving prior written notice to the Insurer stating when such cancellation shall take effect.

      2.  The Insurer may cancel this Policy only for nonpayment of premium.  In such event, the Insurer shall mail written notice of cancellation for nonpayment of premium to the Named Insured.  Such notice shall state the effective date of cancellation, which shall not be less than ten (10) days after mailing such notice.

      3.  In the event of cancellation, the Insurer shall refund the unearned premium computed pro rata.

   B.  NONRENEWAL

      1.  The Insurer shall mail to the Named Insured written notice, at least thirty (30) days, but not more than one hundred and twenty (120) days, prior to the expiration of the Policy Period:

         a.  if the Insurer elects not to renew this Policy, including the reason for nonrenewal; or,

         b.  if the Insurer elects to renew this Policy with a change in contract terms; the amount of the renewal premium, and the changed contract terms.

   C.  NOTICE
      The Insurer shall send all notices required under this endorsement by certified mail to the Named Insured at the address in Item 1 of the Declarations, and by mail or electronic mail to the Named Insured's authorized agent, if any.  Proof of mailing will be sufficient proof of notice.

3.  Pursuant to New Jersey law, this Policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the Named Insured. The underwriting reasons or guidelines that an Insurer can use to cancel or nonrenew this Policy are maintained by the Insurer in writing and will be furnished to the Named Insured and/or the Named Insured's lawful representative upon written request. However, this provision shall not apply if this Policy has been in effect for less than sixty (60) days at the time notice of cancellation is mailed or delivered, unless the Policy is a renewal Policy.

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Date of Issuance: October 26, 2022
Endurance American Insurance Company

Policy Form: PEO 0201 0413
Endorsement Form: PEO 0339 0413 NJ

## ENDORSEMENT

| | | |
|---|---|---|
| Named Insured: | Celsius Network LLC | Policy Number: FIX30022208200 |

| | | |
|---|---|---|
| Endorsement Effective Date: | July 08, 2022 | Endorsement Number:    2 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | |

## CLAIMS PARTICIPATION AMENDED ENDORSEMENT

It is agreed that:

Subsection II.E. of the TERMS AND CONDITIONS is replaced with the following:

E.   The Insurer may, at its sole discretion, participate in the investigation, defense, or settlement of any Claim or other matter to which coverage under this Policy could apply even if the Underlying Limit has not been exhausted, provided that such Claim or other matter is reasonably expected to impact this Policy. No action by any other insurer shall bind the Insurer under this Policy. The Insurer shall not be liable under this Policy for any settlements, stipulated judgments, or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

ENDORSEMENT

| Named Insured: Celsius Network LLC | Policy Number: FIX30022208200 |
|---|---|

| Endorsement Effective Date: July 08, 2022 | Endorsement Number: 3 |
|---|---|

12:01 AM Standard Time at the address of the Named
Insured as shown in the Declarations.

## DIFFERENCE IN CONDITIONS (DIC INTO DIC) ENDORSEMENT

It is agreed that:

I.    The term "Followed Form," when used in this Policy, is amended to read "Base DIC Policy," which means the following Excess DIC Policy issued to the Insureds:

| Insurer | Policy No. | Limit of Liability | Attachment |
|---|---|---|---|
| Berkley Insurance Company | BPRO8086972 | $5,000,000 | Primary |

II.   The term "Underlying Policy(ies)," when used in this Policy, is amended to read "Underlying DIC Insurance," which means the Base DIC Policy and the following Excess DIC Policies specifically excess of the Base DIC Policy, if any:

| Insurer | Policy No. | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | ELU184224-22 | $2,500,000 | $5,000,000 |

III.  The term "Underlying Limit," when used in this Policy, is amended to read "Underlying DIC Limit," which means the amount equal to the aggregate of all limits of liability as set forth in Paragraphs 1. and 2. above for all Underlying DIC Insurance.

IV.   Notwithstanding anything in this Policy to the contrary:

A.   if and to the extent the Base DIC Policy or any other Underlying DIC Insurance drops down pursuant to the difference-in-conditions ("DIC") provision in the Base DIC Policy, this Policy shall also drop down excess of such Underlying DIC Insurance; and

B.   if and to the extent an insurer of any Underlying DIC Insurance does not pay Loss otherwise covered hereunder, this Policy shall drop down and pay such Loss if and to the extent such drop down is required pursuant to the DIC provision in the Base DIC Policy, subject to this Policy remaining excess of any Underlying DIC Insurance which pays such Loss.

V.    Item 7. of the Declarations is amended to read in its entirety as follows:

Item 7. Policies Underlying Base DIC Policy:

| Insurer | Policy No. | Limit of Liability | Attachment |
|---|---|---|---|
| N/A | | | |

VI.   Subsection II.C. is replaced with the following:

C.   If any Underlying Policy(ies) is changed or terminated the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policy(ies) been so maintained, unless the Insurer agrees to the change in writing.



_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in  this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

| | |
|---|---|
| Named Insured: Celsius Network LLC | Policy Number: FIX30022208200 |

| | |
|---|---|
| Endorsement Effective Date: July 08, 2022 | Endorsement Number: 4 |

12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations.

## FOLLOWING FORM AMENDED ENDORSEMENT

It is agreed that:

Subsection II.A. of the TERMS AND CONDITIONS is replaced with the following:

A. This Policy, except as stated herein, is subject to all terms, conditions, and limitations as contained in the Followed Form as of the inception of this Policy.


_____

Authorized Representative


This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Celsius Network LLC | Policy Number: | FIX30022208200 |
| Endorsement Effective Date: | July 08, 2022 | Endorsement Number: | 5 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | | |

## INSURING CLAUSE AMENDED ENDORSEMENT

It is agreed that:

Section I. INSURING CLAUSE is replaced with the following:

I.  INSURING CLAUSE

This Policy shall provide to the Insureds insurance coverage for any Loss resulting from Claims, and shall attach to the Insurer only after: (i) the insurers of the Underlying Policy(ies), the Insureds, the insurer of any difference-in-conditions policy, or any other source shall have paid in legal currency the full amount of the Underlying Limit; and (ii) the Insureds or the insurer of any difference-in-conditions policy shall have paid any applicable retention or deductible under the Primary Policy. The Limit of Liability set forth in Item 3. of the Declarations shall be the maximum amount payable by the Insurer under this Policy.

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in  this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

| | | | |
|---|---|---|---|
| Named Insured: | Celsius Network LLC | Policy Number: | FIX30022208200 |

| | | | |
|---|---|---|---|
| Endorsement Effective Date: | July 08, 2022 | Endorsement Number: | 6 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | | |

## PREAMBLE AMENDED ENDORSEMENT

It is agreed that:

The preamble of this Policy is replaced with the following:

In consideration of premium paid and in reliance upon the Application, and subject to the terms, conditions, and limitations of this Policy, the Named Insured, on behalf of all Insureds, and the Insurer agree as follows:

_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

| | |
|---|---|
| Named Insured: **Celsius Network LLC** | Policy Number: **FIX30022208200** |

| | |
|---|---|
| Endorsement Effective Date: **July 08, 2022** | Endorsement Number: **7** |

12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations.

## STATE AMENDATORY INCONSISTENCY ENDORSEMENT

It is agreed that:

If there is an inconsistency between any terms contained in this Policy and any similar terms contained in any state amendatory endorsement attached to this Policy, then the Insurer shall apply those terms that are more favorable to the Insureds with respect to coverage under this Policy, to the extent permitted by law.

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

## E N D O R S E M E N T

| | |
|---|---|
| Named Insured:  Celsius Network LLC | Policy Number:  FIX30022208200 |
| Endorsement Effective Date:  July 08, 2022 | Endorsement Number:      8 |

July 08, 2022
12:01 AM Standard Time at the address of the
Named Insured as shown in the Declarations.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

E N D O R S E M E N T

| | |
|---|---|
| Named Insured:  Celsius Network LLC | Policy Number:  FIX30022208200 |

| | | |
|---|---|---|
| Endorsement Effective Date: | July 08, 2022 | Endorsement Number:    9 |
| | 12:01 AM Standard Time at the address of the Named Insured as shown in the Declarations. | |

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

It is agreed that:

SCHEDULE:   Terrorism Premium (Certified Acts): Included in Premium

A.   Disclosure of Premium
In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium (shown in the Schedule above), if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as amended and reauthorized. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

B.   Disclosure of Federal Participation in Payment of Terrorism Losses
The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C.   Cap On Insurer Participation In Payment Of Terrorism Losses
If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

| | |
|---|---|
| Date of Issuance:  October 26, 2022 | Policy Form: PEO 0201 0413 |
| Endurance American Insurance Company | Endorsement Form: IL 1214 1220 |

# ENDORSEMENT



_____

Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

POLICYHOLDER NOTICE

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's website - http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



# Endurance American Insurance Company
## 1221 Avenue Of the Americas
### New York, NY 10020

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

_____
Senior Vice President

_____
President