KAUFMAN DOLOWICH & VOLUCK, LLP
40 Exchange Place, 20th Floor
New York, NY 10005
Phone: (212) 485-9600
Fax: (212) 485-9700
Kevin J. Windels
kwindels@kdvlaw.com
*Attorneys for Euclid Financial Institution Underwriters, LLC*, a *duly authorized agent of*
   *Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| CELSIUS NETWORK LLC, et al.,[1] | ) | **Case No. 22-10964 (MG)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |

**REPLY OF EUCLID FINANCIAL INSTITUTION UNDERWRITERS, LLC, A DULY**
**AUTHORIZED AGENT OF CERTAIN UNDERWRITERS AT LLOYDS OF LONDON**
**AND REPUBLIC VANGUARD INSURANCE COMPANY IN SUPPORT OF ITS**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT**
<u>**APPLICABLE**</u>

Euclid Financial Institution Underwriters, LLC ("EFIU"), a duly authorized agent of

Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company

(collectively "Underwriters") submits this reply ("Reply") in further support of its motion pursuant

to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a) for relief from the automatic stay to the extent

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Limited (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

applicable, for the purpose of the advancement and/or payment of certain defense costs under a Directors & Officer's Liability and Corporate Securities Liability insurance policy (the "Policy") issued by Underwriters to one of the Debtors, namely, Celsius Network, Inc. ("Celsius Network") for certain defense costs being incurred by the insured persons of the Debtor and its subsidiaries (collectively, "Celsius") [Doc. 2585], and in response to the Debtors' Limited Objection and Reservation of Rights Regarding Euclid Financial Institution Underwriters. LLC's Motion for Relief From Automatic Stay [Doc. 2842] (the Debtors' Limited Objections"), The Official Committee of Unsecured Creditors' Limited Objection to Euclid Financial Institution Underwriters, LLC, a Duly Authorized Agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company for Relief From the Automatic Stay to the Extent Possible and Motion of Joinder Shlomi Daniel Leon and Aliza Landes [Doc. 2839] (the "Committee's Objections") and Objection to Underwriters Motion to Lift Stay filed by filed by Victor Ubierna de las Heras, Pro Se Creditor [Doc. 2849] (the "Heras Objection") (collectively" the Objections") respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Objections largely do not refute the facts or legal arguments set forth in Underwriters' motion to lift stay and plainly acknowledge the well-developed case law which supports the relief sought in Underwriters' motion, including this Court's decisions in *In re MF Global*, 469 B.R. 177, 191 (S.D.N.Y. 2012), and most recently in *In re SVB Bank Financial Group*, 650 B.R. 790 (S.D.N.Y. 2023). In both cases, this Court found that the law in this jurisdiction and others has consistently found that relief from the automatic stay should be granted to permit insurers to fund **Defense Costs** in such instances as presented herein. In fact, the limited objections filed by the Debtors and the Committee of Unsecured Creditors do not dispute that Underwriters should be

entitled to advance reasonable and necessary covered **Defense Costs** under Side A of the Policy with its priority of payments provision because the **Individual Insureds** are incurring fees and costs in connection with the multiple pending subpoenas, lawsuits and government investigations for which they are not receiving indemnification from the Debtor. They nevertheless incorrectly seek to have the Court impose certain conditions and restrictions on Underwriters' payment of **Defense Costs**, including that **Defense Costs** be paid on a pro rata basis and that, as a prerequisite to any payment of **Defense Costs**, the **Individual Insureds** seeking payment first agree to the jurisdiction of the court for "all purposes", neither of which is provided for by the Policy. The Heras Objection simply offers no justifiable legal basis to explain why this Court should not grant Underwriters' motion and wholly ignores the well-established precedents set forth in *MF Global* and *SVB Bank* and generally argues that the proceeds of the Policy are an asset of the Estate and may be needed for a successful restructuring in the Chapter 11 case.

## **ARGUMENT**

**I.** **Underwriters are Entitled to Relief from the Automatic Stay, to the Extent it Applies, for the Advancement and Payment of the Individual Insureds' Defense Costs.**

2. The Objections to the instant motion do not take issue with or seek to challenge that the **Individual Insureds** are facing a significant number of lawsuits, arbitrations, demand letters, subpoenas, formal letters announcing investigations and/or requests for documents or information from federal and state agencies, regulators and attorneys general. Underwriters have received numerous notices seeking coverage under the Policy on behalf of the directors, officers and certain employees of the Debtors in connection with the lawsuits and investigations that are now pending, including multiple requests from **Individual Insureds** requesting the payment of **Defense Costs**

incurred in connection with the aforementioned investigations, lawsuits and arbitration proceeding. Although Underwriters have reserved their rights to deny and/or limit coverage for these matters under the Policy, they are agreeable at this time to advancing those reasonable **Defense Costs** incurred by those **Individual Insureds** that are potentially covered subject to their full reservation of rights under the Policy, including those set forth in Section VI of the Policy. [Doc. 2585, pp. 3-5] and "cause" exists for granting relief from the stay in order to permit Underwriters to advance **Defense Costs** on behalf of the **Individual Insureds** under the Policy.

3.      As detailed in Underwriters' motion [Doc. 2585, at pp. 12-15], the Policy provides coverage to **Individual Insureds** who have a present need for payment of their **Defense Costs** that outweighs the Debtors' need for coverage. There is well-established case law that directors' and officers' insurance policies, such as the Policy at issue here, exist primarily for the purpose of protecting directors and officers. *See Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("D & O policies are obtained for the protection of individual directors and officers . . .. In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."); *see also In re MF Glob. Holdings Ltd.*, 469 B.R. at 194 ("if the Individual Insureds are not provided access to the MFGA Policies, the Individual Insureds would be deprived of the benefits of payment of defense costs that the insurance was intended to provide").

4.      Moreover, the **Individual Insureds'** interests in the Policy's proceeds should be given priority to any interest that may be asserted by the Debtors. The Priority of Payments provision (Section X.) of the D&O Coverage Section of the Policy expressly prioritizes providing insurance coverage to the individual directors and officers, and there is no provision in the contract subordinating their rights to coverage to those of the Debtors or anyone else. Even if the Debtors

had a property interest in the Policy's proceeds, the Priority of Payment provisions in the Policy makes clear that the coverage potentially afforded to the **Individual Insureds** for non-indemnifiable **Loss** must be paid prior to any payments made for matters implicating coverage potentially provided to the Debtors for amounts they might pay as indemnification to the **Individual Insureds** or for covered **Claims** made against them. The "**Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of its obligations to prioritize payment of covered **Loss** under the **Coverage Section** pursuant to this Section X." Thus, under the Policy, the Debtors' potential rights to coverage are subordinated to the rights of the **Individual Insureds**. (Doc. 2585, Ex.1, D&O Coverage Section pp.11-12 of 12).

## II.    Underwriters are Agreeable Certain of the Conditions to Stay Relief Proposed by Debtor and the Committee of Unsecured Creditors.

5.      The Debtors and the Unsecured Creditors Committee have  essentially acknowledged that: (a) circumstances may exist in this case to warrant lifting the automatic stay, (b) Section 362(d)(1) of the Bankruptcy Code provides, in part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause." 11 U.S.C. § 362(d), (c) on multiple occasions, this Court has addressed whether "cause" exists to lift the stay without resolving the question of whether D&O policy proceeds are property of a Debtor's estate. See *In re MF Glob. Holdings Ltd.*, 469 B.R. at 187; *In re SVB Financial Group*, 2023 WL 3578447 at *18 (Bankr. S.D.N.Y. May 22, 2023). The Debtors have also acknowledged that they "are not seeking to impose a "soft cap" or otherwise limit Underwriters from evaluating requests for **Defense Costs**. Rather, the Debtors are seeking to provide all parties in interest with transparency in how the proceeds are being distributed and to ensure that the proceeds are distributed as fairly as possible in light of the multiple claims for coverage that have been submitted" but are seeking to impose three conditions on their agreement.

6.      Specifically, the Debtors and the Committee for Unsecured Creditors are essentially requesting that the Court revise Underwriters' proposed Order to include the following three conditions or restrictions on Underwriters, namely, that the Revised Order include: (a) certain additional reporting requirements on Underwriters and obtain this Court's approval should they seek to enter into a settlement with any of the **Individual Insureds**, (b) a requirement that the **Individual Insureds** explicitly consent to the jurisdiction of this Court before any payment of proceeds is made under the Policy to such **Individual Insureds**, and (c) a coverage allocation scheme for "equal access' to the Policy's proceeds to avoid a "run on the bank," whereby a few parties rush to exhaust the Policy's limited ($1,500,000) coverage to the exclusion of other **Individual Insureds**. [Docs. 2839, pp.8-9 and 2842, pp. 10-11]. As set forth in more detail below, Underwriters wholly object to certain of the above conditions, namely conditions (b) and (c).

7.      As an initial matter, Underwriters agree to the imposition of reasonable reporting requirements. There are currently at least twenty-three (23) **Individual Insureds** who are potentially seeking coverage under the Policy. Underwriters do not object to the request that the Revised Order imposes a requirement that Underwriters submit written quarterly updates on the amount of **Defense Costs** advanced and/or paid on behalf of the **Individual Insureds** that would also include counsel for the Debtors and the Committee of Unsecured Creditors. Underwriters points out that its original proposed Order, like the order entered in *MF Global*, requires providing such quarterly updates to the U.S. Trustee. Underwriters also have no objection to the content of the reports being requested, including the names of the **Individual Insureds** receiving payments, the nature of each such **Individual Insureds**' claims, the amounts paid, and the amount of liability coverage remaining on the Policy. Finally, Underwriters agree to the inclusion of a requirement in the Revised Order that Underwriters needs to seek a further order from the Court prior to paying

any non-**Defense Costs** (e.g., settlement payments). As the Court is well aware, the instant motion is being made for the purpose of lifting the stay to allow Underwriters to only advance **Defense Costs**.

8. Underwriters are opposed to the Debtors' and the Unsecured Creditors Committee's second request that the Revised Order require **Individual Insureds** to explicitly consent to the jurisdiction of this Court "for all purposes", before any payment of Policy proceeds is made under the Policy to such **Individual Insureds.** There is no legal or factual support offered for such a requirement, and it places an unreasonable and unnecessary burden on both Underwriters and wrongfully places a condition precedent to Underwriters' payment of **Defense Costs** which is not provided for under the Policy. Moreover, Underwriters have no ability to unilaterally alter the terms of the Policy and therefore cannot agree to such a condition.

9. While the Debtors and Committee of Unsecured Creditors have argued that such a broad condition is necessary and appropriate to preserve "all parties' rights to enforce the Advancement Provision" re-payment provisions, since certain **Individual Insureds** live out of the United States, they have offered no legal precedent to support such a requirement to extend the consent to jurisdiction "for all purposes".  However, the objections also signaled that it is intended to facilitate "the proposed Chapter 11 plan of reorganization [which] contemplates a Litigation Administrator to pursue certain causes of action, including actions against certain of the Debtors' former directors and officers, for the benefit of the Debtors' account holders." Underwriters have no involvement in the prosecution of the above. Therefore, while it seems clear that the purpose of this request is to obtain jurisdiction not just for purposes of enforcing the repayment provision of the Advancement Provision, but for all other possible purposes as well. Underwriters are not

opposed to the imposition of a requirement that the **Individual Insureds** subject themselves to the jurisdiction of this Court with respect to the Policy.

10.    Finally, the Debtors and the Committee of Unsecured Creditors are requesting that the Revised Order include a pro rata coverage allocation scheme requiring Underwriters to evaluate all requests for coverage of **Defense Costs** submitted by **Individual Insureds** prior to June 15, 2023 before approving and paying any **Defense Costs** in order to provide equal access to the Policy's proceeds and to avoid a "run on the bank," whereby "certain parties" rush to exhaust the Policy's $1,500,000 limit to the exclusion of other **Individual Insureds**.  The proffered rationale for this is that given the nature of some of the claims submitted to Underwriters, they believe there may be a higher than usual probability for the need to "claw back" some of the Policy's proceeds from certain **Individual Insureds** pursuant to the Advancement Provision. Underwriters disagree with this proposal, since: (a) the Policy does not provide for claims of **Defense Costs** to be paid on a pro rata basis, (b) it is unsupported by any legal precedent whatsoever, and (c) the selection of June 15, 2023 as an arbitrary date may effectively freeze out **Individual Insureds** who did not submit invoices prior to then. In addition, such pro rata restrictions would likely severely distort and disrupt the orderly and efficient administration of **Claims** not only under the Policy, but also the excess policies that are referenced in Debtors' Objections [Doc. 2842, p.5] that may very well also come into play in the event the Policy's $1.5 million Limit of Liability is exhausted.

11.    The advancement of **Defense Costs** provision of the Policy (Section VI. B.) simply does not provide for the pro rata payment of **Defense Costs.** (See Doc 2585, Underwriters Motion Ex. 1, p. 9 of 12).  Unless it is otherwise provided for in the insurance contract, the typical way that claims for advancement of **Defense Costs** are paid under a liquidating directors and officers'

policy is on a first come, first served basis.    See *In re First Central Financial Corp.*, 238 B.R. 9,14 (E.D.N.Y. 1999) ("Characteristically, [D & O] policies often provide a fixed amount of monies available for aggregate coverage, i.e., a cap, under both the reimbursement and liability sections. In other words, payment under the policy is normally provided on a first-come, first-served basis and each such payment reduces the total amount of coverage to pay claims."). In addition, the imposition of an arbitrary cut off (e.g., June 15, 2023) could prejudice certain **Individual Insureds** who did not submit their invoices before that date.

12.    Finally, the imposition of a pro rata payment scheme on Underwriters' payment of **Defense Costs** would likely severely distort and disrupt the orderly and efficient administration of claims not only under the Policy, but also the excess policies that are referenced at page 5 of Debtors' Objections.  Under the payment structure proposed by the Debtors and the Committee of Unsecured Creditors, at a minimum Underwriters' $ 1,500,000 Policy would be divided by 23,, the number of **Individual Insureds** who have to date filed claims under the Policy and each would be allocated a 1/23rd share for their **Defense Costs**, which is equal to maximum $65,217. For all intents and purposes such a plan would create 23 different sub-limits of coverage. Certain of the **Individual Insureds** will likely significantly exceed that amount if they have not already exceeded it and others may not.  The objectors' proposed Revised Order fails to consider not only what happens if additional **Individual Insureds** submit claims to the Policy before the entire Policy limits are exhausted, but how the excess carriers will treat claims of **Individual Insureds** when one or more sub-limits are exhausted, but not all.  No doubt the **Individual Insureds** will file claims and seek advancement of **Defense Costs** with the excess carriers once their sub-limit is exhausted.  The resulting chaos from the imposition of a pro rata payment scheme would be disastrous and would likely spawn  insurance coverage litigation.  In the alternative, should the

Court rule in favor of the Objectors and require the pro rata payment of **Defense Costs** as proposed, Underwriters respectfully request that they be permitted to interplead the full amount of the Policy into the Registry of the Court and that an Administrator be appointed to administer the payments being requested.

13.     Underwriters have prepared the Revised Proposed Order attached hereto as <u>Exhibit A</u> (the "<u>Revised Proposed Order</u>") to address the requested changes by the Debtors and the Committee of Unsecured Creditors and their agreement to certain of the changes in their respective objections. A redline comparing the revisions to the initial proposed order filed with Underwriters' Motion is attached hereto as <u>Exhibit B</u>.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Underwriters respectfully request that the Court

enter the Revised Proposed Order, substantially in the form annexed hereto, granting the relief

requested in their Motion to Lift Stay and such other and further relief as the Court deems just and

proper.

Dated: June 25, 2023
New York, New York                    KAUFMAN DOLOWICH & VOLUCK, LLP

By:    *Kevin J. Windels*
Kevin J. Windels, Esq.
40 Exchange Place, 20th Floor
New York, New York 10005
Tel: (212) 485-9600
kwindels@kdvlaw.com
*Attorneys for Euclid Financial Institution*
*Underwriters, LLC a duly authorized agent of*
*Certain Underwriters at Lloyds of London and*
*Republic Vanguard Insurance Company*

4890-2329-7132, v. 1

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| CELSIUS NETWORK LLC, et al.,[1] | ) | **Case No. 22-10964 (MG)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |

### [PROPOSED REVISED] ORDER GRANTING MOTION OF EUCLID FINANCIAL INSTITUTION UNDERWRITERS, LLC, A DULY AUTHORIZED AGENT OF CERTAIN UNDERWRITERS AT LLOYDS OF LONDON AND REPUBLIC VANGUARD INSURANCE COMPANY <u>FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE</u>

Upon the motion of Euclid Financial Institution Underwriters, LLC, a duly authorized agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company (collectively "Underwriters") Docket No. 2585 (Case No. 22-10964)[2] for relief from the Automatic Stay, to the extent applicable, seeking authority to reimburse from a Directors & Officer's Liability and Corporate Securities Liability insurance policy, Policy No. EFI1203088-00, (the "Policy") issued by Underwriters to one of the Debtors[3], namely, Celsius Network, Inc. ("Celsius Network"), for certain defense costs being incurred by the Individual Insureds under the Policy issued to Celsius Network and its subsidiaries (collectively, "Celsius"), and notice of the

---

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

motion having been properly given, and having considered all objections or other responses to the motion (if any), and the Court having reviewed the motion pursuant to 11 U.S.C. §§362(d), 541(a) and 105(a), and Fed. R. Bankr. P. 4001(a) and 9014, and found good cause to enter the relief requested by the motion, now therefore,

**IT IS HEREBY ORDERED**

1.      To the extent applicable, the automatic stay imposed by 11 U.S.C. §362(a) in the respective proceedings is hereby modified solely to the extent necessary to allow Underwriters to advance and/or make payments under the Policy for **Defense Costs** incurred by the **Individual Insureds** who have been sued in an arbitration and in multiple state and federal court lawsuits (including a draft of an adversary proceeding in this court), and who have received demand letters and/or emails, subpoenas, formal and/or informal requests for documents and information or formal letters, received subpoenas or formal letters announcing investigations or requests for documents or information in connection with various investigations by multiple state and federal regulators and/or Attorneys General, as well as from certain foreign regulators situated in Canada and the United Kingdom, subject to Underwriters' determination that the above are potentially covered under the Policy and subject to a reservation of rights by Underwriters or by any of the **Insureds** under the Policy and applicable law.

2.      Nothing herein shall constitute a finding by the Court that the proceeds of the Policy are or are not property of the Debtors' estates, and the Court makes no finding as to the applicability of the automatic stay imposed by 11 U.S.C. §362(a) to the Policy proceeds.

3.      Underwriters shall provide written quarterly updates on the amount of Defense Costs advanced on behalf of the Individual Insureds under the Policy to the U. S. Trustee, Kirkland & Ellis LLP as counsel to the Debtors, and White & Case LLP as counsel to the Official Committee

of Unsecured Creditors (the "Committee") until the Limits of Liability of the Policy are fully

eroded. Such quarterly updates shall include, on a per individual basis, (1) the name of the

Individual Insured who received advances and/or payments; (2) the nature of the claim(s); (3) the

dollar amount of the claim(s) submitted and the amount actually advanced and/or paid; (4) the

identity of counsel representing the **Individual Insured** (if applicable); and (5) the amount of

liability coverage remaining under the Policy.

4.      For the avoidance of doubt, this Order only authorizes Underwriters to make

advances and/or payments for the **Defense Costs** of the **Individual Insureds**. Nothing herein

authorizes Underwriters to make any payments in connection with any other type of **Loss** (i.e., a

non-**Defense Cost Loss**). A further order from this Court is required for the payment of any non-

**Defense Costs Loss**, including any settlement.

5.      Nothing herein shall prejudice the current or future position of Underwriters or any

**Insured** under the Policy, and the parties reserve all rights, with respect to (1) the appropriateness

of any obligation on Underwriters or restriction on the operation of the Policy contemplated by

this Order; or (2) the appropriateness of any other obligation on Underwriters or restriction on the

operation of the Policy. The parties also reserve their rights to seek to modify this order.

6.      Any and all advancements or payments by Underwriters shall reduce the Policy's

Limits of Liability in a like amount to the extent permitted under the terms and conditions of the

Policy, unless or until such amounts are repaid to Underwriters.

7.      Nothing in this Order shall constitute (1) a waiver, modification or limitation of

Underwriters' reservation of all rights, remedies and defenses under the Policy and otherwise; (2)

a waiver, modification or limitation of any of the terms or conditions of the Policy; or (3) a finding

that such sums are due and owing, or in what amount, under the Policy. Similarly, nothing in this

Order shall constitute a waiver, modification of limitation of any rights of the U.S. Trustee or any other **Insured** under the Policy.

8.      This Order is immediately valid and fully effected upon its entry and the 14 day stay pursuant to Fed. R. Bankr. Proc. 4001(a) is hereby waived.

9.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**SO ORDERED.**

Date:    June ___, 2023
         New York, New York

_____
MARTIN GLENN, U.S.B.J.
Chief United States Bankruptcy Judge

4873-6870-9740, v. 1

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| CELSIUS NETWORK LLC, et al.,[1] | ) | **Case No. 22-10964 (MG)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |

**[PROPOSED REVISED] ORDER GRANTING MOTION OF EUCLID FINANCIAL**
**INSTITUTION UNDERWRITERS, LLC, A DULY AUTHORIZED AGENT OF**
**CERTAIN UNDERWRITERS AT LLOYDS OF LONDON AND REPUBLIC**
**VANGUARD INSURANCE COMPANY**
**FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE**

Upon the motion of Euclid Financial Institution Underwriters, LLC, a duly authorized

agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company

(collectively "Underwriters") Docket No. 2585———— (Case No. 22-10964)[2] for relief from the

Automatic Stay, to the extent applicable, seeking authority to reimburse from a Directors &

Officer's Liability and Corporate Securities Liability insurance policy, Policy No. EFI1203088-

00, (the "Policy") issued by Underwriters to one of the Debtors[3], namely, Celsius Network, Inc.

("Celsius Network"), for certain defense costs being incurred by the Individual Insureds under the

Policy issued to Celsius Network and its subsidiaries (collectively, "Celsius"), and notice of the

---

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

motion having been properly given, and having considered all objections or other responses to the motion (if any), and the Court having reviewed the motion pursuant to 11 U.S.C. §§362(d), 541(a) and 105(a), and Fed. R. Bankr. P. 4001(a) and 9014, and found good cause to enter the relief requested by the motion, now therefore,

**IT IS HEREBY ORDERED**

1.      To the extent applicable, the automatic stay imposed by 11 U.S.C. §362(a) in the respective proceedings is hereby modified solely to the extent necessary to allow Underwriters to advance and/or make payments under the Policy for **Defense Costs** incurred by the **Individual Insureds** who have been sued in an arbitration and in multiple state and federal court lawsuits (including a draft of an adversary proceeding in this court), and who have received demand letters and/or emails, subpoenas, formal and/or informal requests for documents and information or formal letters, received subpoenas or formal letters announcing investigations or requests for documents or information in connection with various investigations by multiple state and federal regulators and/or Attorneys General, as well as from certain foreign regulators situated in Canada and the United Kingdom, subject to Underwriters' determination that the above are potentially covered under the Policy and subject to a reservation of rights by Underwriters or by any of the **Insureds** under the Policy and applicable law.

2.      Nothing herein shall constitute a finding by the Court that the proceeds of the Policy are or are not property of the Debtors' estates, and the Court makes no finding as to the applicability of the automatic stay imposed by 11 U.S.C. §362(a) to the Policy proceeds.

3.      Underwriters shall provide written quarterly updates on the amount of Defense Costs advanced on behalf of the Individual Insureds under the Policy to the U. S. ~~Trustee~~Trustee, Kirkland & Ellis LLP as counsel to the Debtors, and White & Case LLP as counsel to the ~~o~~Official

2

eCommittee of uUnsecured Cereditors (the "Committee") until the Limits of Liability of the Policy are fully eroded. Such quarterly updates shall include, on a per individual basis, (1) the name of the Individual Insured who received advances and/or payments; (2) the nature of the claim(s); (3) the dollar amount of the claim(s) submitted and the amount actually advanced and/or paid; (4) the identity of counsel representing the **Individual Insured** (if applicable); and (5) the amount of liability coverage remaining under the Policy.

3.4.    For the avoidance of doubt, this Order only authorizes Underwriters to make advances and/or payments for the **Defense Costs** of the **Individual Insureds**. Nothing herein authorizes Underwriters to make any payments in connection with any other type of **Loss** (i.e., a non-**Defense Cost Loss**). A further order from this Court is required for the payment of any non-**Defense Costs Loss**, including any settlement.

4.5.    Nothing herein shall prejudice the current or future position of Underwriters or any **Insured** under the Policy, and the parties reserve all rights, with respect to (1) the appropriateness of any obligation on Underwriters or restriction on the operation of the Policy contemplated by this Order; or (2) the appropriateness of any other obligation on Underwriters or restriction on the operation of the Policy. The parties also reserve their rights to seek to modify this order.

5.6.    Any and all advancements or payments by Underwriters shall reduce the Policy's Limits of Liability in a like amount to the extent permitted under the terms and conditions of the Policy, unless or until such amounts are repaid to Underwriters.

6.7.    Nothing in this Order shall constitute (1) a waiver, modification or limitation of Underwriters' reservation of all rights, remedies and defenses under the Policy and otherwise; (2) a waiver, modification or limitation of any of the terms or conditions of the Policy; or (3) a finding that such sums are due and owing, or in what amount, under the Policy. Similarly, nothing in this

Order shall constitute a waiver, modification of limitation of any rights of the U.S. Trustee or any other **Insured** under the Policy.

7.8.    This Order is immediately valid and fully effected upon its entry and the 14 day stay pursuant to Fed. R. Bankr. Proc. 4001(a) is hereby waived.

8.9.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**SO ORDERED.**

Date:    June ___, 2023
         New York, New York

_____
MARTIN GLENN, U.S.B.J.
Chief United States Bankruptcy Judge

4873-6870-9740, v. 14876-7128-8684, v. 14895-1619-9009, v. 2