Re: Chapter 11 Case No. 22-10964 (MG)

Dear Chief Judge Martin Glenn,

I hope this letter finds you well. I am writing to provide comprehensive arguments regarding the valuation, treatment of CEL tokens, allocation of legal fees, and the fiduciary responsibility of the UCC in the ongoing Chapter 11 case. It is essential to consider the circumstances surrounding the bankruptcy filing, the precedent set by similar cases, and the need for adequate representation in light of the conflict between the CEL token ad-hoc group.

First and foremost, I would like to draw your attention to a relevant precedent involving the VGX token in a bankruptcy case where the same law firm, Kirkland & Ellis, represented Voyager. In that case, the VGX token was valued at the petition date price, underscoring the importance of considering the market value at the time of the filing. Consistency in valuation methodology is crucial to ensure fair treatment of token holders and establish a precedent that fosters stability.

Furthermore, it is imperative to address the issue of legal fees for the CEL token ad-hoc group. Given the direct argument and conflict between the ad-hoc group and the UCC, it is crucial for the estate to bear the responsibility of covering the legal expenses of the group representing the interests of CEL token holders.

In addition, it is essential to consider the implications of the 510(b) bankruptcy rule. This rule is designed to protect creditors from unjust or inequitable treatment and prevent debtors from manipulating the valuation of assets to the detriment of creditors. Allowing the proposed devaluation of CEL tokens to the pre-ICO price of $0.20 would not only undermine the market value of the assets but also violate the spirit of the 510(b) bankruptcy rule. Upholding the true market value of CEL tokens at the petition date price of $0.81 is necessary to ensure compliance with the 510(b) bankruptcy rule and to protect the rights of creditors.

Moreover, it is important to highlight that the CEL token was never promoted or marketed as a security. The company explicitly stated that the token was not linked to the performance of the company. This classification of the CEL token as a utility token further emphasizes the significance of valuing the token based on its market value rather than any potential connection to the debtor's financial situation. Treating CEL

tokens as a utility token, respects the intentions of the issuer and ensures fair treatment for creditors.

Additionally, it is crucial to note that the decision by the debtor to pause withdrawals and file for bankruptcy was a deliberate choice made by the company. Such announcements have the potential to create volatility in the markets leading to fluctuations in market prices.

In conclusion, I respectfully urge Your Honor to consider the relevant precedent set by the VGX token case, the obligation of the estate to cover legal fees for the CEL token ad-hoc group due to the direct argument with the UCC, the implications of the 510(b) bankruptcy rule, and the fiduciary responsibility of the UCC. Upholding the market value of CEL tokens at the petition date price would protect the rights of creditors, establish a precedent for future cases involving tokens in bankruptcy proceedings, and prevent any breach of fiduciary responsibility.

Thank you for your attention to this matter, and I trust in your wisdom and dedication to justice.

Respectfully,

Jason