HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Phone: (212) 909-0661
Fax: (212) 918-3100
Pieter Van Tol
pieter.vantol@hoganlovells.com

**Hearing Date and Time:**
**June 28, 2023 at 10:00 a.m.**

*Attorneys for Shlomi Daniel Leon and Aliza Landes*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| CELSIUS NETWORK, LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | **(Jointly Administered)** |

**REPLY OF SHLOMI DANIEL LEON AND ALIZA LANDES**
**IN FURTHER SUPPORT OF MOTION FOR RELIEF**
**FROM THE AUTOMATIC STAY, AS APPLICABLE,**
**TO PERMIT PAYMENTS UNDER D & O INSURANCE**

Shlomi Daniel Leon and Aliza Landes (the "Movants") respectfully submit this reply (the "Reply") in further support of the *Motion of Shlomi Daniel Leon and Aliza Landes for Relief from the Automatic Stay, as Applicable, to Permit Payment Under D & O Insurance and Joinder in Insurers' Motion Seeking the Same Relief* [Docket No. 2760] (the "Motion")[2] and in response to

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms that are not defined below shall have the same meaning as in the Motion.

1

the following objections: (1) *The Official Committee of Unsecured Creditors' Limited Objection to Euclid Financial Institution Underwriters, LLC, a Duly Authorized Agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company for Relief from the Automatic Stay to the Extent Applicable and Motion of Shlomi Daniel Leon and Aliza Landes for Relief from the Automatic Stay, as Applicable, to Permit Payments Under D & O Insurance and Joinder in Insurers' Motion Seeking the Same Relief* [Docket No. 2839] (the "UCC Limited Objection"); (2) *Debtors' Limited Objection and Reservation of Rights Regarding Euclid Financial Institution Underwriters, LLC's Motion for Relief from the Automatic Stay* [Docket No. 2842] (the "Debtors Limited Objection"), and (3) *Víctor Ubierna de las Heras' Omnibus Objection to Moton of Euclid Financial Institution Underwriters, LLC, a Duly Authorized Agent of Certain Underwriters at Lloyds of London and Republic Vanguard Insurance Company for Relief from the Automatic Stay to the Extent Applicable and to Motion of Shlomi Daniel Leon and Aliza Landes for Relief from the Automatic Stay as Applicable to Permit Payments Under D & O Insurance and Joinder in Insurers' Motion Seeking the Same Relief* [Docket No. 2849] (the "Heras Objection").[3] In support of the Reply, the Movants state as follows:

## ARGUMENT

**I.    The UCC Limited Objection**

1.    In general, Movants do not disagree with the various conditions sought by the Official Committee of Unsecured Creditors (the "UCC" or the "Committee") because they will provide protection for all the directors and officers covered under the D & O Policy (the "Individual Insureds"). Movants, however, object to two of the proposed conditions.

---

[3]    Given the substantial overlap between the UCC Limited Objection and the Debtors Limited Objection with regard to the proposed conditions for the release of insurance proceeds, the Movants will focus on the former submission and will note where the two objections differ.

2

### A.  Consent to Personal Jurisdiction

2. There is no need for the proposed requirement that all Individual Insureds who seek to receive insurance payments must consent to the personal jurisdiction of this Court "so that the Committee can enforce the terms of the policy if appropriate." (UCC Limited Objection, 4.) This proposal stems from the UCC's speculation that (a) Mr. Leon may contest the Court's personal jurisdiction over him; and (b) the Committee will need to "claw back" defense costs payments made to Mr. Leon pursuant to an exclusion in the D & O policy for any "deliberate criminal or fraudulent act . . . if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act . . . was committed." (*See id.*, 3-6, 9-10.)

3. The UCC has no basis to claim that Mr. Leon may assert a personal jurisdiction defense in the future. Mr. Leon has filed a Proof of Claim in this matter, and is now seeking relief from the Court through this Motion. In addition, the Committee has not cited any authority for the proposition that a director or officer must surrender potential defenses in Bankruptcy Court in order to receive the reimbursement of defense costs under a D & O policy. The D & O Policy itself imposes no such condition on payment.

4. The UCC's "claw back" argument suffers from similar deficiencies. The Committee is piling assumption upon assumption. It is assuming that Mr. Leon will be found to have committed a "deliberate criminal or fraudulent act," even though the UCC has not accused Mr. Leon of such acts in its draft adversary proceeding complaint. The Committee is also assuming that, even if it were established that Mr. Leon committed criminal or fraudulent acts, the D & O Insurers would take no action and the UCC would have to step in. The D & O Insurers, however, have every incentive to seek reimbursement if there is an applicable exclusion. Finally, the UCC is assuming that it would have standing to pursue reimbursement from Mr. Leon because the

proceeds of the D & O policy are the property of the estate. But neither the Motion nor the D & O Insurers' Motion seeks an adjudication of this issue and, in fact, the Committee (and the Debtors) agree that "the Court need not decide whether the Policy is property of the estate." (UCC Limited Objection, 7; *accord* Debtors Limited Objection, 9.)

5. Therefore, the consent condition – in addition to having no basis in the law or the Policy language – is wholly unnecessary because it relates to circumstances that are unlikely to occur and it depends on a sequence of uncertain events.

B. *Pro Rata* **Allocation**

6. The UCC has requested that the Court "direct a more equitable distribution for the payment of defense costs than on a first-come first-served basis." (*Id.*, 8.) The Committee's proposed solution (which is echoed in the Debtors Limited Objection) is that the Court should prohibit the D & O Insurers from paying an Individual Insured more than his or her *pro rata* share of the $1.5 million limits in the D & O Policy. In the UCC's example, if there are ten Individual Insureds, then each may receive no more than $150,000 in reimbursement for defense costs, subject to increase if the aggregate payments do not result in exhaustion of the $1.5 million limit. (*See id.*, 8-9.)[4] It also appears that the UCC's example of ten Individual Insureds is a vast underestimate of the situation. According to a recent filing by the D & O Insurers in support of their motion, there are at least twenty-three Individual Insureds seeking reimbursement, which would mean, under the *pro rata* approach, a payment of only about $65,000 each.[5]

---

[4] The Committee's proposal only applies if the amount of reimbursement requested through June 15, 2023 meets or exceeds the $1.5 million limit. (The Debtors propose another date, August 31, 2023, as the date for determining whether the reimbursement requests exceed $1.5 million.) If the amount does not exceed $1.5 million, the D & O Insurers would not be bound by the *pro rata* approach. (*Id.*, 9.) The UCC has not explained why the alleged "first-come, first-served" problem does not exist in the latter situation.

[5] The Movants have not seen the list of Individual Insureds seeking reimbursement and, accordingly, they reserve all rights to object to certain payments.

4

7. As an initial matter, it is not clear how the UCC has standing to insert itself into an issue that is between the Individual Insureds and the D & O Insurers. The Committee has argued that the estate is affected because the D & O Policy is a "wasting" policy, but the *pro rata* allocation would not reduce the overall quantum of payments made. Instead, the allocation issue only affects the amounts paid to respective Individual Insureds. In addition, the UCC's argument presupposes that the D & O Policy proceeds are property of the estate, which is not being determined now.

8. To the extent the UCC is concerned that an Individual Insured will receive proceeds to the exclusion of others, there is a less drastic solution. It is commonplace in situations where D & O insurers have multiple claimants for the insurers to engage with those claimants and develop a percentage allocation that reflects the number of claims against each claimant, the nature and severity of those claims, etc. Indeed, Movants anticipated that the D & O Insurers would begin those discussions after gaining the Court's approval to make payments.

9. The D & O Policy provisions on a related topic (the allocation between covered and non-covered matters) is illuminating. It provides that the amounts deemed incurred by the insureds shall be "based on the relative legal liability and financial exposure of the Insureds to covered and non-covered matters." (Docket No. 2585, D & O Policy, General Terms and Conditions, Section 8.) Thus, the D & O Policy contemplates (in a related context) that allocation depends on factors particular to the insured's claim.

10. The main problem with the UCC's proposal is that it does not similarly account for the material variations in the claims submitted by Individual Insureds. Some Individual Insureds may be minimally involved in just one matter covered by the D & O Policy, yet they would receive the same amount from the D & O Insurers as an Individual Insured facing multiple lawsuits and

5

investigations with significant exposure (and commensurately higher defense costs).[6] Thus, under the UCC's proposal, Individual Insureds with minimal defense costs may be reimbursed in full, while Individual Insureds with far greater defense costs would need to fund their own defense (above the *pro rata* allocation) until such time as they receive access to proceeds from the excess D&O policies, the timing of which is unclear. In that way, the *pro rata* approach proposed by the UCC and the Debtors would interfere with the defense of some Individual Insureds, which is contrary to the letter and spirit of the D & O Policy.

11.    The UCC also notes that "the Debtors have requested authority to potentially use estate resources to pay certain cooperating witnesses" and they argue that the *pro rata* approach would "avoid the scenario where one individual is able to exhaust the entire policy to the detriment of the Estate." (UCC Limited Objection, 3.) There are several problems with this argument. *First*, as discussed above, saying that the Individual Insureds' use of the proceeds would be "to the detriment of the Estate" assumes that the proceeds are property of the estate, which, at the request of all parties, will not be determined in connection with the Motion and the D & O Insurers' Motion. *Second*, while the Debtors have asked for the authority to make payments to cooperating witnesses, they have not yet obtained Court approval. *Third*, even if such approval were obtained, the Debtors have said that they first will use "estate resources" to pay those witnesses, and then <u>might</u> seek reimbursement under the D & O Policy. The Court should not adopt the *pro rata* approach simply because the Debtors could, in theory, seek to recover payments made to cooperating witnesses. *Fourth*, even assuming that the Debtors obtain approval and seek to use the D & O Proceeds to pay witnesses, the *pro rata* approach would not be the best way to deal

---

[6]    For example, Mr. Leon has been named as a defendant in actions that certain defendants in the UCC's proposed adversary proceeding are not named in.

with the issue. Instead, the proposed payments to cooperating witnesses (if allowed under the D & O Policy) could be factored into the orderly allocation process that the Movants are suggesting.

12. In sum, the Court should not endorse the unnecessary and unfair *pro rata* approach urged by the UCC and the Debtors. Instead, the Court should allow the D & O Insurers to work with the Individual Insureds to devise an allocation that reflects the reality of the potential liability, financial exposure, and incurred defense costs of the Individual Insureds. If the interested parties cannot work out an allocation among themselves, they can return to the Court for assistance or they can agree to mediate their dispute.[7]

## II. The Heras Objection

13. The Heras Objection is unavailing. It cites inapplicable case law (*see id.*, 4-5), and it ignores this Court's holding in *In re SVB Financial Group*, 2023 WL 3578447 (Bankr. S.D.N.Y. May 22, 2023). Both the UCC and the Debtors have acknowledged that the *SVB Financial* holding applies here and supports a lifting of the automatic stay.

14. The other assertions in the Heras Objection are not relevant to the Motion and, as a result, they will not be addressed here.

15. Accordingly, the Court should overrule the Heras Objection.

## CONCLUSION

For the reasons discussed above, and in the Motion and D & O Insurers' Motion, the Movants respectfully request that the Court grant relief from the automatic stay, to the extent it is applicable, to permit the payment of defense costs under the D & O Policy.

---

[7] As with the consent condition, the UCC and Debtors have not pointed the Court to another case where the court imposed a *pro rata* allocation of D & O proceeds.

Dated: June 26, 2023
New York, New York

Respectfully submitted,

By: /s/ Pieter Van Tol

Pieter Van Tol

HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Phone: (212) 909-0661
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com

*Attorneys for Shlomi Daniel Leon and Aliza Landes*