June 26, 2023

Re: Chapter 11 Case No. 22-10964

Dear Judge Glenn,

I hope this letter finds you well. I am writing to provide arguments regarding the valuation, treatment of CEL tokens, and the allocation of legal fees in the ongoing Chapter 11 case. It is essential to consider the circumstances surrounding the bankruptcy filing, the potential market volatility resulting from related announcements, the precedent set by similar cases, and the need for adequate representation in light of the conflict between the CEL token ad-hoc group and the UCC.

First and foremost, I would like to draw your attention to a relevant precedent involving the VGX token in a bankruptcy case where the same law firm, Kirkland & Ellis, represented Voyager. In that case, the VGX token was valued at the petition date price, underscoring the importance of considering the market value at the time of the filing. Consistency in valuation methodology is crucial to ensure fair treatment of token holders and establish a precedent that fosters stability.

Furthermore, it is imperative to address the issue of legal fees for the CEL token ad-hoc group. The UCC is not honoring their fiduciary duty by spending Estate assets on Legal fees in an attempt to subordinate and/or devalue CEL token claims for the 56% of Creditors who own CEL. Given the direct argument and conflict between the ad-hoc group and the UCC, it is crucial for the estate to bear the responsibility of covering the legal expenses incurred by the group representing the interests of CEL token holders. These legal fees are necessary to ensure adequate representation of the creditors and to safeguard their rights throughout this complex bankruptcy process. Allocating funds for legal representation demonstrates the estate's commitment to upholding principles of fairness, equity, and protection of the creditors' interests.

In addition, it is essential to consider the implications of the 510(b) bankruptcy rule. This rule is designed to protect creditors from unjust or inequitable treatment and prevent debtors from manipulating the valuation of assets to the detriment of creditors. Allowing the proposed devaluation of CEL tokens to the pre-ICO price of $0.20 would not only undermine the market value of the assets but also violate the spirit of the 510(b) bankruptcy rule. Upholding the true market value of CEL tokens at the petition date price of $0.81 is necessary to ensure compliance with the 510(b) bankruptcy rule and to protect the rights of creditors.

Moreover, it is important to highlight that the CEL token was never promoted or marketed as a security. The company explicitly stated that the token was not linked to the performance of the company. This classification of the CEL token as a utility token further emphasizes the significance of valuing the token based on its market value rather than any potential connection to the debtor's financial situation. Treating CEL tokens as a utility token, with their true market value intact, respects the intentions of the issuer and ensures fair treatment for creditors.

In conclusion, I respectfully urge Your Honor to consider the relevant precedent set by the VGX token case, the obligation of the estate to cover legal fees for the CEL token ad-hoc group due to the direct argument with the UCC, and the implications of the 510(b) bankruptcy rule. Upholding the market value of CEL tokens at the petition date price would protect the rights of creditors, promote market stability, and establish a precedent for future cases involving tokens in bankruptcy proceedings.

Thank you for your attention to this matter, and I trust in your wisdom and dedication to justice.

Respectfully,

Patrick Martin
Celsius Creditor