Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**REPLY IN SUPPORT OF DEBTORS'
THIRD MOTION FOR ENTRY OF AN ORDER
(I) EXTENDING THE DEBTORS' EXCLUSIVE PERIOD TO SOLICIT
ACCEPTANCES OF A CHAPTER 11 PLAN PURSUANT TO SECTION
1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") in support of the *Debtors' Third Motion for Entry of an Order (I) Extending the Debtors Exclusive Period to Solicit Acceptances of a Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2805] (the "Motion") and in response to the *Objection of the Ad Hoc Group of Borrowers to the Debtors'*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Third Motion for Entry of an Order (I) Extending the Debtors' Exclusive Period to Solicit Acceptances of a Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 2841] (the "Objection").[2]  In support of this Reply, the Debtors state the following:

## Reply

1. Following the Debtors' weeks-long, highly completive auction process, on June 15, 2023, the Debtors filed an amended Plan that is fully supported by the Committee[3] and embodies significantly improved economic terms compared to the NovaWulf stalking horse bid. *See* Docket No. 2358.  Notably, the Debtors' revised Plan increases the amount of liquid cryptocurrency immediately available for distributions to account holders by hundreds of millions of dollars.  In addition, account holders will receive substantially all of the equity in NewCo, which will be managed by Fahrenheit, whose expertise in bitcoin mining, staking, and digital asset investment will enhance the value of NewCo.  Contemporaneously herewith, the Debtors also filed their disclosure statement relating to the Plan (the "Disclosure Statement").  While the Debtors have made significant progress towards confirmation, additional time is needed to obtain Court approval of the Disclosure Statement and solicit votes on the Plan. Accordingly, the Debtors seek a 91-day extension of the Solicitation Exclusivity Period to solicit votes on their revised Plan.

2. The Debtors and the Committee have also reached a settlement with the Series B Preferred Holders[4] that completely resolves all litigation between the parties in exchange for a $25

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3] *See The Official Committee of Unsecured Creditors' Statement in Support of the Debtors' Third Exclusivity Motion* [Docket No. 2838] (the "Committee's Statement in Support").

[4] Contemporaneously herewith, the Debtors, the Series B Preferred Holders, and the Committee Filed the *Joint Motion for Entry of an Order (I) Approving the Settlement By and Among the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders and (II) Granting Related Relief*.

million cash payment and the mutual release of all claims, thereby resolving a highly contested and gating issue facing these chapter 11 cases since their commencement—namely, whether the Series B Preferred Holders are entitled to any recovery from the Debtors' estates. The settlement avoids the continued time and expense that would be devoted to litigating such issues and instead allows the Debtors to focus their efforts on soliciting and confirming the Plan and bring these chapter 11 cases to a much-needed conclusion.

3. Importantly, the Committee fully supports the amended Plan and the Debtors' request for an extension of the Solicitation Exclusivity Period, noting that the Debtors have "made substantial progress and the requested extension is necessary" especially when "it would be value-destructive" to permit competing plans at this juncture. Committee Statement of Support ¶ 7-9. Moreover, the Committee "will recommend to all account holders and general unsecured creditors that they vote to accept the plan." Committee Statement of Support ¶ 9.

4. In addition to these recent achievements, the Debtors continue to progress these chapter 11 cases toward confirmation by:

- Negotiating and filing a plan sponsor agreement reflecting the terms of Fahrenheit's bid [Docket No. 2759];

- Selecting the BRIC as backup plan sponsor and negotiating and filing a backup plan sponsor agreement if the Debtors elect to pivot toward an orderly wind down [Docket No. 2774];

- Obtaining Court approval of a highly negotiated settlement between the Debtors, the Committee, and the Custody Ad Hoc Group that will provide Custody account holders with 72.5% of the cryptocurrency in their Custody Accounts in exchange for a release of causes of actions held by the Debtors against the Custody account holders and resolves the shortfall issue so that users already eligible for withdrawal may now withdraw 100% of eligible assets [Docket No. 2291];

- Obtaining Court approval of a settlement between the Debtors, the Committee, and the Withhold Ad Hoc Group that will provide Withhold account holders with a 15% liquid cryptocurrency distribution and treats the remaining 85% of their claim as an Earn Claim [Docket No. 2509];

3

- Continuing to engage with regulators to ensure the proposed transactions under the Plan are fully regulatorily compliant; and

- Continuing to distribute assets that are not property of the Debtors' estates, including the return of assets that were mistakenly transferred to the Debtors after the Petition Date [Docket Nos. 2491, 2667].

5. Notwithstanding the Debtors' significant progress to date, the Debtors received one objection to the Motion from the Borrower Ad Hoc Group, which requests limiting the proposed extension to 60 days. The Objection, while styled as an objection to exclusivity, is a disguised confirmation objection that serves as a vehicle to air grievances about purported lack of engagement with the Borrower Ad Hoc Group and the Plan's treatment of creditors under the Debtors' borrow program. Despite what the Borrower Ad Hoc Group posits in its Objection, the Debtors were fully engaged in discussions with the Borrower Ad Hoc Group prior to the auction, which included extensive back and forth negotiations and the exchange of multiple iterations of term sheets regarding the borrower treatment under the Plan. More specifically, on April 23, 2023, two days prior to the commencement of the auction, the Debtors and the Committee sent a final term sheet to counsel to the Borrower Ad Hoc Group. Given that the settlement being discussed would have required the Debtors to send cryptocurrency worth over a billion dollars to NewCo to serve as collateral for new loans with the borrowers, the Debtors insisted on having a response from the Borrower Ad Hoc Group prior to the auction, as the settlement would have been critical information for the bidders who were formulating their proposed transactions. Counsel to the Borrower Ad Hoc Group did not respond to this final proposal. As a result, the Debtors and Committee had no choice but to proceed with the auction because no settlement with Borrower Ad Hoc Group had been reached. Over the subsequent weeks, the Debtors and Committee conducted a competitive, hard-fought auction resulting in the successful bid with Fahrenheit. The Debtors then revised the terms of the Plan and Disclosure Statement to reflect that transaction.

Once the Plan was substantially revised, the Debtors and Committee sent a revised proposal to the Borrower Ad Hoc Group on June 13 and discussed potential mediation. The Borrower Ad Hoc Group was welcome to reach out to the Debtors at any time as they have throughout the course of these chapter 11 cases. In fact, the Debtors were in constant communication with the Borrower Ad Hoc Group, including multiple weekly calls. The Borrower Ad Hoc Group's contention of "radio silence" is entirely of its own making, belied by the record, and revisionist history.

6. The Borrower Ad Hoc Group also laments that the Plan treatment for Retail Borrowers is "inconsistent with consumer lending laws or Section 1129 of the Bankruptcy Code." Objection ¶ 7. Gripes about creditor treatment, however, are not relevant to an exclusivity extension motion and rather will be resolved at confirmation. *In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) ("[M]ere 'dislike' of the Debtors' proposals is, by itself, not considered a factor analyzed when considering an extension of the [d]ebtors' [e]xclusive [p]eriods . . . ."); *In re Spansion, Inc.*, 426 B.R. 114, 140 (Bankr. D. Del. 2010) (citing *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 134 (D.N.J. 1995)) ("[A] creditor constituency's unhappiness or dissatisfaction with a debtor's proposed plan, without more, does not constitute cause to end exclusivity and undermine the debtor's chance of obtaining confirmation of its plan during that period."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 588 n.18 (Bankr. S.D.N.Y. 2006) ("[T]he merits of the plan are to be examined at confirmation and don't play a meaningful role in the court's decision as to whether or not to terminate exclusivity.").

7. The Borrower Ad Hoc Group will have every opportunity to voice its concerns with its proposed treatment at confirmation. Until then, such concerns have no bearing on whether the Debtors—who have the full support of the Committee (a body mandated to represent the interest of all unsecured creditors in these chapter 11 cases, including those members of the Borrower Ad

5

Hoc Group)—have shown sufficient cause to extend the time by which they are allowed to solicit votes on their recently-filed Plan.

8. Although the Objection leverages the Motion in an attempt to litigate plan confirmation issues, under the legal standard, the Debtors only need to show the Court that an extension is warranted based on the totality of circumstances. *See, e.g.*, *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013). In these large and highly complex chapter 11 cases, the Debtors' progress to date has been achieved in no small part due to the breathing room afforded by this Court's recognition that the exclusivity periods should be extended. *See In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."). The Debtors have used the previous extensions to build consensus between many stakeholders, including the Committee, regulators, and a diverse creditor body, and direct their creditors' efforts towards a value maximizing and confirmable plan of reorganization. The Debtors seek an additional extension of the exclusivity periods to continue to seek confirmation of a chapter 11 plan.

9. The Debtors have made significant progress throughout the course of these chapter 11 cases and concurrently herewith are filing their Disclosure Statement, which describes the novel and complex transactions contemplated under the Plan. The amended Plan and Disclosure Statement reflect the highest and best offer received to maximize stakeholder value. The Debtors should be afforded the necessary time to seek Court approval of the Disclosure Statement and, if approved, to solicit votes on the Plan. Understanding that time is of the essence,

6

the Debtors remain steadfast in their commitment to advancing these chapter 11 cases towards their conclusion.

10. For the reasons set forth herein and the Motion, the Court should overrule the Objection and grant the relief requested in the Motion.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| New York, New York<br>Dated: June 27, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>Email:             joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:      (312) 862-2200<br>Email:             patrick.nash@kirkland.com<br>                       ross.kwasteniet@kirkland.com<br>                       chris.koenig@kirkland.com<br>                       dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |