| | |
|---|---|
| Joshua A. Sussberg, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:     (212) 446-4900 | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:     (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
|              Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF CHRISTOPHER
FERRARO, INTERIM CHIEF EXECUTIVE
OFFICER, CHIEF RESTRUCTURING OFFICER,
AND CHIEF FINANCIAL OFFICER OF THE DEBTORS,
IN SUPPORT OF THE JOINT MOTION FOR ENTRY OF AN
ORDER (I) APPROVING THE SETTLEMENT BY AND AMONG
THE DEBTORS, THE COMMITTEE, AND THE INITIAL CONSENTING
SERIES B PREFERRED HOLDERS AND (II) GRANTING RELATED RELIEF**

I, Christopher Ferraro, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.     I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius Network LLC ("Celsius" or "LLC," and together with the above-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

captioned debtors and debtors-in-possession, the "Debtors"). I joined Celsius on March 21, 2022. I was appointed as Chief Financial Officer on July 11, 2022, and I was appointed as interim Chief Executive Officer and Chief Restructuring Officer by the Special Committee (the "Special Committee") of Debtor Celsius Network Limited ("CNL") on September 27, 2022 following the resignation of the Debtors' co-founder and former chief executive officer, Alex Mashinsky.

2. I am familiar with the *Joint Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders and (II) Granting Related Relief* [Docket No. 2899] (the "Motion") and the settlement agreement which it seeks to approve (the "Settlement Agreement" and the settlement therein, the "Settlement"), and submit this declaration (this "Declaration") in support thereof.[2]

3. In my capacity as the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and the ongoing restructuring efforts. Except as otherwise indicated, all facts in this Declaration are based upon (a) my personal knowledge of the Debtors' operations, (b) my discussions with other members of the Debtors' management team and advisors, and (c) my review of relevant documents and information concerning the Debtors' operations. I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

## Qualifications

4. I have approximately two decades of experience in financial planning and analysis activities, asset and liability management, and product control. Before my roles with Celsius,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or Settlement Agreement, as applicable. In the event of any inconsistency between this Declaration, the Motion, and/or the Settlement Agreement, the Settlement Agreement controls in all respects.

I was a Senior Managing Director at Cerberus Operations & Advisory Company ("Cerberus"), where I focused on improving the operating returns for two legacy portfolio positions. In this role, I advised the chief executive officer and leadership team on increasing profitability by changing and repricing business mix, restructuring costs, and optimizing the balance sheet.

5. Prior to Cerberus, I served in various roles at JPMorgan Chase & Co. from 2001 to 2018. I was the head of Financial Analysis and a Senior Leader, where I was responsible for all financial, planning, and analysis activities, developed analytical tools, and authored a patent application in forecasting. Before my role as head of Financial Analysis and a Senior Leader, I was the Treasurer of the Consumer Bank and the Retail Loan Pricing Manager.

6. I hold a Bachelor's degree in Economics, Finance, & Accounting from the University of Washington. I also passed the Washington state Uniform Certified Public Accountant Examination.

**Responsibilities**

7. In my roles as interim Chief Executive Officer and Chief Restructuring Officer, I oversee the Debtors' day-to-day business operations, including supporting the Debtors' restructuring efforts and managing the Debtors' mining business, among other responsibilities. I regularly engage with the Debtors' advisors, and I report directly to the Special Committee, with conferences being held multiple times a week (sometimes daily), as needed. During these meetings with the Special Committee and the Debtors' advisors, we regularly discuss the status of various litigated matters involving the official committee of unsecured creditors (the "Committee" and together with the Debtors, the "Estate Parties") and Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP (collectively, the "Community First Holders") and CDP Investissements Inc. (together with the Community First Holders, the "Initial Consenting

3

Series B Preferred Holders" and, the Initial Consenting Series B Preferred Holders together with the Debtors and the Committee, the "Initial Parties").

8. More specifically, for months, we have discussed the recovery waterfall for CNL's estate, which has been the topic of multiple contested matters (collectively, the "Series B Matters"). Certain of the Series B Matters, including (a) the estimation of the intercompany claim held by LLC against CNL for allowance purposes, (b) the substantive consolidation of LLC and CNL, and (c) an alleged constructive fraudulent transfer claim held by LLC's estate against CNL (together, the "Confirmation Issues"), were set to culminate in a trial at the end of July 2023 that we anticipated would last for multiple days. Discovery for the trial, which included more than 20 depositions and would have included complicated expert testimony on several topics, was under way on an expedited timeline.

## The Settlement

9. The Initial Parties have spent nearly a year litigating the Confirmation Issues and other issues concerning parties' entitlement to the value of CNL's estate, without reaching a resolution. Facing an intensive litigation schedule and the associated costs, the Initial Parties reengaged in settlement negotiations following the completion of written discovery, but before a substantial number of depositions were taken. These negotiations were successful—the Initial Parties reached agreement on a $25 million cash settlement (the "Settlement Funds") to be paid from proceeds of the prior sale of the GK8 assets. In addition to the $25 million cash payment, the Settlement Agreement includes mutual releases that the Initial Parties required to ensure that the Settlement provides a full and final resolution of all relevant claims between the Parties (the "Settled Claims").

10. Further, I understand that the proposed Settlement Approval Order provides for either the substantive consolidation of CNL and LLC or allowance of an intercompany claim owing from CNL to LLC in an amount to be agreed between the Estate Parties. It is my understanding that the Consenting Series B Preferred Holders will not oppose any relief sought by the Committee or the Debtors in these chapter 11 cases that is not inconsistent with the Settlement Agreement—including any substantive consolidation of the Debtors' estates, the allowance of intercompany claims, and the Committee's pursuit of a class claim on behalf of account holders. I have been informed that, if approved, these negotiated outcomes would remove the Initial Parties' need for further contested hearings regarding the Series B Matters.

11. Without the settlement, the litigation on the Series B Matters would require a considerable dedication of time from the Debtors' advisors and employees and the incurrence of significant additional legal and administrative expenses by both the Debtors and the Committee (all of which would be paid for by the Debtors' estates). I have been informed that the amount of those administrative expenses would likely be higher than in a typical litigation because of the compressed timeline and number of complicated and fact intensive intertwined issues to be resolved at the July trial.

12. Moreover, time is of the essence in these chapter 11 cases. It is possible that litigating and resolving the Confirmation Issues would delay confirmation of the Debtors' proposed chapter 11 plan. Any such delay could result in the incurrence of millions of dollars in additional administrative expenses. I believe it is crucial that the Debtors avoid the costs and delays associated with litigation and any delay of confirmation, if possible.

13. While the Debtors believe that the Confirmation Issues would be decided in their favor, in addition to costs, there is also significant litigation risk involved. If the Confirmation

Issues were litigated and the Debtors and Committee were not successful, the Series B Preferred Holders may have been entitled to recover up to the full amount of their investment—several hundred million dollars—ahead of account holders, particularly in light of the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205], in which the Court found that only LLC, not CNL or any other Debtor or non-Debtor affiliate, is contractually liable to account holders under the Terms of Use. That potential downside further supports the reasonableness of the $25 million settlement.

14. Therefore, I believe that entry into the Settlement Agreement is in the best interest of the Debtors' estates and all stakeholders as it avoids the delay, costs, and risks of litigating the remaining Series B Matters (including the Confirmation Issues) and any other potential future issues between the Initial Parties related to the Settled Claims. The Settlement Agreement also increases certainty moving forward and reduces the time the Debtors' employees must spend preparing for or participating in court related processes regarding ongoing litigation, allowing them to focus their efforts on other issues to maximize the value of the Debtors' estates and exit these chapter 11 cases, including maximizing the value of the Debtors' mining operations and preparing for distributions if the Debtors' plan is confirmed. Lastly, I understand that the releases granted by the Settlement Agreement are a necessary component of the Settlement, and I believe that they are appropriate under the circumstances. The Settlement is the result of good-faith, hard-fought negotiations between the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders and their respective advisors.

15. Entry into the Settlement Agreement benefits each of the Debtors' stakeholders by building consensus and minimizing costs and risks. The litigation with the Initial Consenting Series B Preferred Holders is one of the largest outstanding challenges standing between the

Debtors and confirmation. Accordingly, resolving the litigation at a practical cost is invaluable to the Debtors' estates. Therefore, I believe that the Settlement is entirely reasonable and in the best interests of the Debtors' estates and all stakeholders.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  July 6, 2023

/s/ Christopher Ferraro
Name:  Christopher Ferraro
Title:   Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network LLC