**Hearing Date: August 10, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: August 3, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF THE DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) APPROVING**
**THE ADEQUACY OF THE DEBTORS' DISCLOSURE STATEMENT,**
**(II) APPROVING THE SOLICITATION AND VOTING PROCEDURES**
**WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT PLAN OF**
**REORGANIZATION, (III) APPROVING THE FORM OF BALLOTS AND NOTICES**
**IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES**
**WITH RESPECT THERETO, (V) AUTHORIZING AND APPROVING**
**REIMBURSEMENT OF CERTAIN OF THE PLAN SPONSOR'S FEES AND**
**EXPENSES, AND (VI) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order*

*(I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation*

*and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization,*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*(III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* (the "Motion") will be held on **August 10, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will take place in a hybrid fashion both in person and via Zoom for Government.  Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408.  For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  When making an eCourtAppearance, parties must specify whether they are making a "live" or "listen only" appearance.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on August 9, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on August 10, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on August 10, 2023.  When parties sign in to Zoom for Government and

add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing. When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order") by **August 3, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

New York, New York
Dated:  July 6, 2023

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

  - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| Debtors. | ) | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
THE ADEQUACY OF THE DEBTORS' DISCLOSURE STATEMENT,
(II) APPROVING THE SOLICITATION AND VOTING PROCEDURES
WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT PLAN OF
REORGANIZATION, (III) APPROVING THE FORM OF BALLOTS AND NOTICES
IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES
WITH RESPECT THERETO, (V) AUTHORIZING AND APPROVING
REIMBURSEMENT OF CERTAIN OF THE PLAN SPONSOR'S FEES
AND EXPENSES, AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2902] (as may be amended from time to time, the "Disclosure Statement"), or the *Joint*

**Preliminary Statement**

1.      Since the outset of these Chapter 11 Cases, the Debtors have been focused on selecting and completing a transaction that maximizes recoveries for their Account Holders.  To that end, the Debtors pursued a dual-track process over many months of marketing the Debtors' retail platform and mining business while simultaneously evaluating a potential standalone reorganization.  Identifying a value-maximizing transaction for the Debtors' assets proved particularly challenging in light of the market-wide "crypto-winter," and the Debtors have faced many novel legal issues that required resolution during these Chapter 11 Cases.  Moreover, the Debtors identified the need for an entirely new business model to maximize the value of the Debtors' liquid and illiquid assets while complying with all regulatory requirements.

2.      The extended sale process was a resounding success.  The Debtors, in consultation with the Committee, identified NovaWulf Digital Management, LP ("NovaWulf" or the "Initial Plan Sponsor") as the stalking horse bidder and Initial Plan Sponsor, and the Debtors and the Committee continued to engage with prospective bidders to market check the NovaWulf transaction.  Indeed, while the Debtors viewed the entry into the NovaWulf plan sponsor agreement [Docket No. 2151] as an important milestone in these Chapter 11 Cases, the Debtors and the Committee reserved their rights to pursue a higher or better offer—or another alternative—that was superior to the proposed NovaWulf transaction.

3.      Notably, after announcing NovaWulf as the initial plan sponsor and as set forth in the *Notice of Auction* [Docket No. 2519], the Debtors' robust marketing process identified two additional qualified bidders (together with NovaWulf, the "Qualified Bidders").  The Qualified

---

*Chapter 11 Plan of Reorganization of Celsius Network LLC, and Its Debtor Affiliates* (as may be amended from time to time, the "Plan") [Docket No. 2807], as applicable.

Bidders included (1) NovaWulf as the stalking horse bidder, (2) Fahrenheit, LLC ("Fahrenheit" or the "Plan Sponsor"), a consortium of crypto-native operators consisting of US Bitcoin Corp., Arrington Capital, Proof Group Capital Management, Steven Kokinos, and Ravi Kaza, and (3) the Blockchain Recovery Investment Consortium (the "BRIC"), which includes Van Eck Absolute Return Advisers Corporation and GXD Labs LLC.    Fahrenheit's proposal maintained the "NewCo" transaction structure that was also contemplated by the NovaWulf stalking horse bid, including both (a) the distribution of a significant amount of the Debtors' liquid cryptocurrency to account holders, and (b) the establishment of "NewCo" that would be owned by Account Holders and would manage the Debtors' illiquid assets, including the mining business, institutional loan portfolio, certain staked cryptocurrency, and other alternative investments.    The BRIC proposal, on the other hand, contemplated:    (a) the establishment of a pure play, publicly traded mining business in which the Debtors' creditors will receive 100% of the equity interests (with a potential management contract with Global[X]Digital); (b) a distribution of all of the Debtors' liquid cryptocurrency on or as soon as practicable after the effective date of the chapter 11 plan; (c) the timely monetization of the Debtors' remaining assets and subsequent liquid cryptocurrency distributions to Celsius creditors; and (d) an orderly wind down of the chapter 11 estates ((a) through (d) collectively, the "BRIC Plan").    The BRIC also expressed a willingness to provide consultation services to the Debtors during their process of analyzing claims, developing distribution procedures and making distributions to creditors, all of which are more complicated here than in other chapter 11 cases given the complexities associated with cryptocurrency assets. After reviewing the Qualified Bids, on April 25, 2023, the Debtors, in consultation with the Committee, commenced the Auction to select a successful bidder to manage the Debtors' assets for the benefit of creditors.    The Auction ended on May 24, 2023, and resulted in the Debtors, in

consultation with the Committee, announcing Fahrenheit as the successful bidder and the BRIC as the backup bidder.  *See* Docket No. 2713.

4.      By all accounts, the Auction was a resounding success.  As a result of the competitive process, the successful bid from Fahrenheit substantially reduced fees by hundreds of millions of dollars when compared to the Stalking Horse Bid and also increased the amount of liquid cryptocurrency distributable to account holders by hundreds of millions of dollars. At the same time, the Debtors secured a path forward to bring these chapter 11 cases to a timely conclusion.  The Debtors presently anticipate holding a confirmation hearing by September 29, 2023.

5.      The Plan is the culmination of months of discussions and negotiations with the Debtors' stakeholders and dozens of parties in the cryptocurrency and finance industries.  The Plan memorializes the NewCo transaction, which contemplates a complex and unique series of transactions that will, among other things, (a) distribute a significant amount of the Debtors' liquid cryptocurrency to Account Holders on the Effective Date of the Plan, (b) create a new entity ("NewCo") that will operate and/or manage the Debtors' substantial illiquid assets (including the mining business, institutional loan portfolio, and other alternative investments), (c) implement the terms of the settlement with the Series B Preferred Equity Holders that fully resolves all litigation between the parties for a cash payment to the Series B Preferred Equity Holders of $25 million, and (d) preserve Claims and Causes of Action with respect to the Debtors' prepetition operations for the benefit of Holders entitled to receive Litigation Proceeds under the Plan for prosecution by a litigation vehicle.  Importantly, Holders of Account Holder Claims will receive nearly all of the common equity of NewCo, subject only to dilution by the Management Compensation.

6.     Moreover, NewCo will be a public-reporting and fully regulatorily-compliant company predicated on transparency and governed by a board of directors, five of seven of whom will be appointed by the Committee on behalf of Account Holders. The NewCo structure will—and was expressly designed to—deliver value to the Debtors' Account Holders over time as the cryptocurrency market continues to improve. At the same time, the NewCo Transaction seeks to provide creditors who would prefer to monetize their stake in NewCo with maximum liquidity and flexibility to do so through a listing of the NewCo Common Stock on Nasdaq (or a similar stock exchange).

7.     To the extent that the NewCo Transaction cannot be consummated, the Plan contemplates that the Debtors and the Committee may, at any time, pivot to an Orderly Wind Down to ensure that significant value is returned to Account Holders without the need to restart the Plan development and negotiation process and delay confirmation, and without resorting to a fire-sale liquidation that would yield significantly lower recoveries. In short, the Orderly Wind Down provides for the organized and methodical sale of the Debtors' assets, creation of a publicly reporting mining company, and distribution of the value realized from the Debtors' assets to the Holders of Claims. An Orderly Wind Down will yield significantly more value than a chapter 7 liquidation, which would undoubtedly be more costly, time consuming, and lead to lesser recoveries than the Orderly Wind Down.

8.     In addition, following the conclusion of the Auction, the Debtors and the Committee reached out to the ad hoc group of Holders of Retail Borrower Deposit Claims, the ad hoc group of Holders of General Earn Claims, and several other Earn creditors to discuss mediation of the proposed treatment for Holders of Retail Borrower Deposit Claims and General Earn Claims. The Debtors, the Committee, both ad hoc groups, and certain other creditors intend to

commence such mediation on July 17, 2023, in an effort to come to an agreement. Furthermore, the Debtors have been working in close consultation with the Committee and the Plan Sponsor to draft the Disclosure Statement, which explains the complex transactions underlying the Plan as simply as possible. The more than 300-page Disclosure Statement is a tome, which, among other things, explains in plain English the Plan and the accompanying options and outcomes that can be expected for Account Holders and other stakeholders, answers frequently asked questions, analyzes various risk factors associated with the restructuring transactions, and provides valuations of the Debtors' assets and financial projections regarding the Plan transactions. Simply put, the Disclosure Statement is a comprehensive document designed to help stakeholders understand the Plan so that they may make informed decisions when voting on the Plan and making certain elections in connection therewith.

9.    As further described in the Disclosure Statement, the Debtors have reached consensus with a myriad of key stakeholders in these Chapter 11 Cases. As a result, the Debtors seek approval of the Disclosure Statement and the process for soliciting votes to approve the Plan, which will safeguard the significant value embedded in the Plan and facilitate a successful conclusion to these Chapter 11 Cases, all for the benefit of the Debtors' Account Holders.

10.    For these reasons, as well as the reasons further detailed herein, the Court should approve the Disclosure Statement and framework for the final stage of these Chapter 11 Cases.

## Jurisdiction and Venue

11.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The statutory bases for the relief requested herein are sections 105, 363, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 3017-1, 3018-1, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

14.     On July 13, 2022 (the "Petition Date"), certain of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these Chapter 11 Cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22].  The Debtors commenced these Chapter 11 Cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

15.     On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC (collectively, the "GK8 Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of the GK8 Debtors' Chapter 11 Cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of GK8 Ltd., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

16.     The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases

have been consolidated for procedural purposes only and are jointly administered pursuant to

Bankruptcy Rule 1015(b) [Docket Nos. 53, 1648].  On July 27, 2022, the United States Trustee

for the Southern District of New York (the "U.S. Trustee") appointed an official committee of

unsecured creditors [Docket No. 241] (the "Committee").  On September 14, 2022, the Court

entered an order directing the appointment of an examiner (the "Examiner") [Docket No. 820].

On September 29, 2022, the U.S. Trustee appointed the Examiner [Docket No. 920].  On April 5,

2023, the Court entered an order discharging the Examiner [Docket No. 2364].

## **Relief Requested**

17.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):

a.    ***Disclosure Statement.***  Approving the Disclosure Statement, substantially in the form attached hereto as **Exhibit B**, as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.    ***Solicitation and Voting Procedures.***  Approving the procedures for: (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "Solicitation and Voting Procedures"), substantially in the form attached to the Order as Exhibit 1;

c.    ***Non-Voting Status Notices.***  Approving: (i) the form of notice applicable to Holders of Claims that are (a) Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan or (b) unclassified; (ii) the form of notice applicable to Holders of Claims or Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (iii) the form of notice applicable to Holders of Claims that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim (each, a "Non-Voting Status Notice"), substantially in the forms attached to the Order as Exhibit 2A, Exhibit 2B, and Exhibit 2C, respectively;

d.    ***Ballots.***  Approving the: (i) Account Holder Ballot for Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, and Class 7 Withhold Claims; (ii) Class 8 Unsecured Loan Claims Ballot; (iii) Class 9 General Unsecured Claims Ballot; and (iv) Class 13 Series B Preferred Interests

Ballot (collectively, the "Ballots"), substantially in the forms attached to the Order as Exhibit 3A, Exhibit 3B, Exhibit 3C, and Exhibit 3D, respectively;

e.   ***Cover Letter.***  Approving the form of letter (the "Cover Letter") that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan urging such parties to vote in favor of the Plan, substantially in the form attached to the Order as Exhibit 4;

f.   ***Committee Letter.***  Approving the form and manner of the Committee's letter that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan recommending that such parties vote to accept the Plan, substantially in the form attached to the Order as Exhibit 5 (the "Committee Letter")[3];

g.   ***Confirmation Hearing Notice.***  Approving the form and manner of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), substantially in the form attached to the Order as Exhibit 6;

h.   ***Plan Supplement Notice.***  Approving the notice related to the filing of the Plan Supplement (the "Plan Supplement Notice"), substantially in the form attached to the Order as Exhibit 7;

i.   ***Assumption and Rejection Notices.***  Approving the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be rejected pursuant to the Plan (the "Rejection Notice"), substantially in the form attached to the Order as Exhibit 8, or assumed pursuant to the Plan (the "Assumption Notice"), substantially in the form attached to the Order as Exhibit 9;

j.   ***Confirmation Timeline.***  Establishing the following dates and deadlines related to the Confirmation of the Plan, subject to modification as necessary:

   i.   ***Voting Record Date.*** **July 24, 2023**, as the date for determining: (i) which Holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, Class 7 Withhold Claims, Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, and Class 13 Series B Preferred Interests are entitled to vote to accept or reject the Plan and receive Solicitation Packages in connection therewith; and (ii) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as

---

[3]   The Committee Letter will be filed at a later date in advance of the hearing on this Motion.

the Holder of the respective Claim (the "<u>Voting Record Date</u>");

ii.     ***Solicitation Deadline.*** **<u>August 21, 2023</u>**, as the deadline for distributing Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan (the "<u>Solicitation Deadline</u>");

iii.    ***Publication Deadline.*** **<u>Five business days after entry of the Order</u>**, or as soon as practicable thereafter, as the last date by which the Debtors shall submit the Confirmation Hearing Notice for publication in a format modified for publication in *The New York Times* (National Edition), *The New York Times* (International Edition), and on *CoinDesk* (CoinDesk.com) (the "<u>Publication Notice</u>");

iv.     ***Plan Supplement Filing Deadline***. **<u>September 4, 2023</u>**, as the deadline by which the Debtors must file the Plan Supplement, except as otherwise provided in the Plan (the "<u>Plan Supplement Filing Deadline</u>"), and subject to amendment as authorized by the Plan;

v.      ***Voting Deadline.*** **<u>September 18, 2023, at 4:00 p.m.</u>**, prevailing Eastern Time, as the deadline by which **<u>all</u>** Ballots must be properly executed, completed, and delivered so that they are **<u>actually received</u>** (the "<u>Voting Deadline</u>") by Stretto, Inc. (the "<u>Claims, Noticing, and Solicitation Agent</u>");

vi.     ***Plan Objection Deadline.*** **<u>September 18, 2023, at 4:00 p.m.</u>**, prevailing Eastern Time, as the deadline by which objections to the Plan must be filed with the Court and be served pursuant to the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief,* [Docket No. 2560] (the "<u>Plan Objection Deadline</u>");

vii.    ***Deadline to File Motion Pursuant to Bankruptcy Rule 3018.*** **<u>September 18, 2023, at 4:00 p.m.</u>**, as the date by which Holders of Claims shall file a motion to vote a Claim amount that is different than the Claim amount listed on the Schedules pursuant to Bankruptcy Rule 3018(a) (the "<u>3018 Motion Deadline</u>");

viii.   ***Deadline to File Voting Report.*** **<u>September 22, 2023, at 4:00 p.m.</u>**, prevailing Eastern Time, as the date by which the

report tabulating the voting on the Plan (the "<u>Voting Report</u>") shall be filed with the Court;

ix. ***Confirmation Brief, Plan Objection Reply, and 3018 Motion Response Deadline.*** **[September 25], 2023, at 4:00 p.m.**, prevailing Eastern Time as the deadline by which the Debtors shall file their brief in support and Confirmation of the Plan (the "<u>Confirmation Brief Deadline</u>"), deadline by which any other statements in support of the Plan or replies to objections to the Plan must be filed with the Court (the "<u>Plan Objection Reply Deadline</u>"), and deadline by which the Debtors or other parties in interest must file objections to any 3018 Motions; and

x. ***Confirmation Hearing Date.*** **[September 29], 2023,** or as soon thereafter as the Debtors may be heard, as the date for the hearing at which the Court will consider Confirmation of the Plan (the "<u>Confirmation Hearing Date</u>");[4]

k. ***Solicitation Packages.*** Finding that the solicitation materials and documents included in the solicitation packages (the "<u>Solicitation Packages</u>") that will be sent to, among others, Holders of Claims entitled to vote to accept or reject the Plan, comply with Bankruptcy Rules 3017(d) and 2002(b); and

l. ***Fees and Expenses***: Authorizing and approving the payment and/or reimbursement of all of the Plan Sponsor's reasonable and documented out-of-pocket fees (including success fees, transaction fees, or similar fees) and expenses, capped at $5 million (the "<u>Fees and Expenses</u>") pursuant to the plan sponsor agreement, attached as <u>Exhibit A</u> to the *Notice of Debtors' Entry Into Plan Sponsor Agreement* [Docket No. 2759] (the "<u>Plan Sponsor Agreement</u>").

## <u>Summary of Plan</u>

18. The Plan provides for the reorganization of the Debtors and the establishment of NewCo—a customer–owned, newly–formed entity to be managed by the Plan Sponsor that has no affiliation with the Debtors' prior management team. The NewCo Transaction proposed under the Plan contemplates the following key terms:

---

[4] The bracketed dates in this Motion and the Order are subject to change as a Confirmation Hearing has not yet been set.

- the establishment of a fully regulatorily-compliant, publicly traded NewCo, which is intended to manage the Debtors' illiquid assets over time for the benefit of Account Holders who will receive substantially all of the common equity interests in NewCo;

- the distribution of approximately $1.9 billion worth of liquid cryptocurrency to Account Holders;

- the investment by the Plan Sponsor of $50 million to purchase NewCo common stock in the primary or secondary market (at the Debtors' and the Committee's discretion);

- a recovery to Holders of Allowed Retail Borrower Deposit Claims in the form and manner provided in the Plan and described herein;

- a recovery to Holders of Allowed General Earn Claims in the form and manner provided in the Plan and described herein;

- the treatment of Claims associated with the Custody and Withhold Programs pursuant to settlements included in the Plan and in the form and manner provided in the Plan and described herein;

- the establishment of a Convenience Class to receive at least a 70% recovery in Liquid Cryptocurrency, as provided in the Plan and described herein;

- the implementation of the terms of the settlement reached with the Series B Preferred Equity Holders;

- standard release and exculpation provisions applicable only to specific parties, as provided in the Plan and described herein;

- the prosecution of the Recovery Causes of Action and appointment of a Litigation Administrator to pursue the Recovery Causes of Action, which will include, among others:  (a) Causes of Action against Alexander Mashinsky, Shlomi Daniel Leon, the other UCC Stipulation Defendants, and certain other parties that are not released under the Plan; and (b) Avoidance Actions that are not released under the Plan; and

- an Orderly Wind-Down Toggle, as provided in the Plan and described in the Disclosure Statement, that will allow the Debtors and the Committee to pursue a value maximizing alternative transaction if they determine the NewCo Transaction is not achievable.

19.    The Plan classifies Holders of Claims or Interests into the following Classes of Claims or Interests for all purposes, including with respect to voting and distributions under the Plan:[5]

| Class | Description | Treatment | Status and Voting Rights |
|-------|-------------|-----------|--------------------------|
| Class 1 | Other Secured Claims | Pursuant to Article III.B.1 of the Plan, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor(s) as agreed by the Debtors and the Committee, either:<br><br>(i)    payment in full in Cash;<br><br>(ii)    the collateral securing such Allowed Other Secured Claim;<br><br>(iii)    Reinstatement of such Allowed Other Secured Claim; or<br><br>(iv)    such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | Unimpaired<br><br>Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Retail Borrower Deposit Claims | Pursuant to Article III.B.2 of the Plan, each Holder of an Allowed Retail Borrower Deposit Claim shall receive the Set Off Treatment. To the extent that a Retail Borrower Post-Set Off Claim remains following the Set Off Treatment, such Holder shall receive, on account of such Retail Borrower Post Set Off Claim, the Unsecured Claim Distribution Consideration (i.e., Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock) sufficient to provide a recovery of the same percentage as the Class 5 (General Earn Claim) recovery set forth in Article III.M of the Disclosure Statement.<br><br>In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed Retail Borrower Post-Set Off Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) Litigation Proceeds, and (c) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections. | Impaired<br><br>Entitled to Vote |
| Class 3 | Other Priority Claims | Pursuant to Article III.B.3 of the Plan, each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code, as agreed by the Debtors and the Committee. | Unimpaired |

---

[5]    If the settlement agreement as set forth in the *Joint Motion for Entry of an Order (I) Approving the Settlement By and Among the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders and (II) Granting Related Relief* [Docket No. 2899] is approved by the Bankruptcy Court, the Debtors intend to file a revised Plan and Disclosure Statement reflecting the settlement agreement with the Series B Preferred Holders, which entitles the Series B Preferred Holders to vote to accept or reject the Plan.

| Class | Description | Treatment | Status and Voting Rights |
|-------|-------------|-----------|--------------------------|
| | | | Not Entitled to Vote (Presumed to Accept) |
| Class 4 | Convenience Claims | Pursuant to <u>Article III.B.4</u> of the Plan, each Holder of an Allowed Convenience Claim shall receive Liquid Cryptocurrency in an amount sufficient to provide the same percentage recovery to Holders of Convenience Claims that Holders of General Earn Claims will be provided, as set forth in the final version of the Disclosure Statement that is approved pursuant to the Disclosure Statement Order, but in no case less than 70% recovery (calculated in accordance with the Distribution Valuation Table) on account of such Convenience Claim. | Impaired<br><br>Entitled to Vote |
| Class 5 | General Earn Claims | Pursuant to <u>Article III.B.5</u> of the Plan, subject to a redistribution of consideration to accommodate Unsecured Claim Distribution Mix Elections, each Holder of an Allowed General Earn Claim shall receive its Pro Rata share of the Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock).<br><br>In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed General Earn Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) Litigation Proceeds, and (c) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections. | Impaired<br><br>Entitled to Vote |
| Class 6A | General Custody Claims | Pursuant to <u>Article II.B.6A</u> of the Plan, each such Holder of a General Custody Claim shall have the opportunity to elect, through its Ballot in accordance with the procedures set forth in Article IX of the Disclosure Statement, one of two treatments:<br><br>a.    **Treatment <u>A</u>**:  (a) a distribution of Cryptocurrency equal to 72.5% of the amount of such Allowed General Custody Claim on the Effective Date in-kind and (b) a full and final release of all Causes of Action, including Avoidance Actions, with respect to such Allowed General Custody Claim; provided that Custody Settlement Participants that (1) are not Excluded Parties and (2) have Withdrawal Preference Exposure under $100,000 shall receive a 100% recovery under Treatment A, as provided in <u>Article IV.B.3</u> of the Plan.<br><br>b.    **Treatment B**: The Cryptocurrency associated with the applicable Allowed General Custody Claim will be transferred to a segregated wallet held by the Post Effective Date Debtors and shall be subject to all Avoidance Actions and other claims with respect to such Allowed General Custody Claim.  The Litigation Administrator(s) shall have 180 days to bring any Avoidance Action or other claim against such Account Holder with respect to such assets, such time period | Impaired<br><br>Entitled to Vote |

14

| Class | Description | Treatment | Status and Voting Rights |
|---|---|---|---|
| | | subject to extension by the Bankruptcy Court following notice and a hearing.  To the extent no such action is brought and no settlement is reached in the time period set forth in the immediately preceding sentence (as extended), such assets shall be released to the Holder of the applicable Allowed General Custody Claim.  Any such Allowed General Custody Claim will be subject to the ADR Procedures.<br><br>For Custody Settlement Participants:  Each such Holder of an Allowed General Custody Claim shall receive a distribution on the Effective Date equal to the amount set forth in Treatment A, above, minus any amounts already received under such settlement; provided that any votes cast by such Holder on account of such General Custody Claim, whether to accept or reject the Plan, shall be deemed votes to accept the Plan consistent with the terms of the Custody Settlement Motion and any such Holder that abstains from voting on the Plan shall also be deemed to accept the Plan on account of such General Custody Claim consistent with the terms of the Custody Settlement Motion; provided, further, that Custody Settlement Participants that (1) are not Excluded Parties and (2) have Withdrawal Preference Exposure under $100,000 shall receive a 100% recovery, as provided in Article IV.B.3 of the Plan. | |
| Class 6B | Withdrawable Custody Claims | Pursuant to Article III.B.6B of the Plan, each Holder of an Allowed Withdrawable Custody Claim that is not an Excluded Party shall be permitted to withdraw such Holder's Cryptocurrency in accordance with the Custody Withdrawal Order. | Unimpaired<br><br>Not Entitled to Vote (Presumed to Accept) |
| Class 7 | Withhold Claims | Pursuant to Article II.B.7 of the Plan, each Holder of an Allowed Withhold Claim that is not an Excluded Party shall receive the following treatment, as applicable:<br><br>a. **Treatment A**:  If Class 7 votes to accept the Plan described herein, each such Holder of an Allowed Withhold Claim shall receive (a) a distribution of Cryptocurrency equal to 15% of the value of such Holder's Withhold Distribution Claim, calculated in accordance with the Conversion Procedure, and (b) the remaining 85% of the value of such Holder's Allowed Withhold Distribution Claim shall be satisfied with a Pro Rata share of the Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock).<br><br>b. **Treatment B**:  If Class 7 does not vote to accept the Plan described herein, each such Holder of an Allowed Withhold Claim shall be satisfied with a Pro Rata share of the Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock). | Impaired<br><br>Entitled to Vote |

| Class | Description | Treatment | Status and Voting Rights |
|---|---|---|---|
| | | In the event that the Debtors pursue the Orderly Wind Down, the above Treatment A and Treatment B shall remain, but the Unsecured Claim Distribution Consideration shall consist of (a) the Liquid Cryptocurrency Distribution Amount, (b) Litigation Proceeds, and (c) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections.<br><br>For the avoidance of doubt, any former Holder of an Allowed Withhold Claim that participated in the Withhold Settlement no longer has a Withhold Claim and has an Earn Claim in accordance with the terms of the Withhold Settlement. | |
| Class 8 | Unsecured Loan Claims | Pursuant to Article III.B.8 of the Plan, each Holder of an Allowed Unsecured Loan Claim shall receive Unsecured Claim Distribution Consideration (i.e., Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock) sufficient to provide a recovery of the same percentage as the Class 5 (General Earn Claim) recovery set forth in Article III.M the Disclosure Statement.<br><br>In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed Unsecured Loan Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) Litigation Proceeds, and (c) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections.[6] | Impaired<br><br>Entitled to Vote |
| Class 9 | General Unsecured Claims | Pursuant to Article III.B.9 of the Plan, Each Holder of an Allowed General Unsecured Claim shall receive Unsecured Claim Distribution Consideration (i.e., Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock) sufficient to provide a recovery of the same percentage as the Class 5 (General Earn Claim) recovery set forth in Article III.M of the Disclosure Statement.<br><br>In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) Litigation Proceeds, and (c) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections.[7] | Impaired<br><br>Entitled to Vote |
| Class 10 | *De Minimis* Claims | Pursuant to Article III.B.10 of the Plan, all *De Minimis* Claims shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect. | Impaired<br><br>Not Entitled to Vote (Deemed to Reject) |

---

[6]    The Debtors, in consultation with their advisors, determined not to provide a range of estimated recoveries.  Thus, there is no "midpoint." This will be revised in any future filed amended Plans and Disclosure Statements.

[7]    The Debtors, in consultation with their advisors, determined not to provide a range of estimated recoveries. Thus, there is no "midpoint." This will be revised in any future filed amended Plans and Disclosure Statements.

| Class | Description | Treatment | Status and Voting Rights |
|-------|-------------|-----------|--------------------------|
| Class 11 | Intercompany Claims | Pursuant to Article III.B.11 of the Plan, each Allowed Intercompany Claim shall, at the option of the applicable Debtor(s) with the consent of the Committee, be:<br><br>(i)    Reinstated; or<br><br>(ii)    set off, settled, distributed, addressed, converted to equity, contributed, cancelled, or released, in each case, in accordance with the Transaction Steps Memorandum. | Impaired/ Unimpaired Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 12 | Intercompany Interests | Pursuant to Article III.B.12 of the Plan, each Intercompany Interest shall, at the option of the applicable Debtor(s) with the consent of the Committee, be:<br><br>(i)    Reinstated; or<br><br>(ii)    set off, settled, addressed, distributed, contributed, merged, cancelled, or released, in each case, in accordance with the Transaction Steps Memorandum. | Impaired/ Unimpaired Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 13 | Series B Preferred Interests | Pursuant to Article III.B.13 of the Plan, each Holder of an Allowed Series B Preferred Interest shall receive its Pro Rata share of the Series B Settlement Consideration, to the extent not already received pursuant to any order approving the Series B Settlement Motion. | Impaired<br><br>Entitled to Vote |
| Class 14 | Other Interests | Pursuant to Article III.B.14 of the Plan, Holders of Other Interests shall not receive any distribution on account of such Other Interests, which will be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect. | Impaired<br><br>Not Entitled to Vote (Deemed to Reject) |
| Class 15 | Section 510(b) Claims | Pursuant to Article III.B.15 of the Plan, Holders of Allowed Section 510(b) Claims shall not receive any distribution on account of such Claims, which will be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect. | Impaired<br><br>Not Entitled to Vote (Deemed to Reject) |
| Class 16 | Equitably Subordinated Claims | Pursuant to Article III.B.16 of the Plan, Holders of Equitably Subordinated Claims shall not receive any distribution on account of such Claims, which will be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect. | Impaired<br><br>Not Entitled to Vote (Deemed to Reject) |

20.     The Plan also includes certain Debtor releases, third-party releases, and exculpation provisions, which release Debtor entities, Post-Effective Date Debtor entities, and certain other parties who played an integral role in formulating the Plan from certain claims and causes of action

(solely as set forth in the Plan).  For the avoidance of doubt, former management members including, among others, Alexander Mashinsky, Shlomi Daniel Leon, and the other UCC Claims Stipulation Defendants, are not Released Parties or Exculpated Parties under the Plan.  Consistent with the forms and procedures described herein, parties will be given an opportunity to opt out of the Third-Party Release or manifest their consent thereto by not opting out.  As described below, and as will be further developed on the record at the Confirmation Hearing, the Debtor Release, Third-Party Release, and Exculpation were an integral part of the Debtors' overall restructuring efforts and are an essential element of the Plan and global settlement contained therein.

21.    The Debtors propose to solicit votes to accept or reject the Plan from holders of Claims and Interests in Classes 2, 4, 5, 6A, 7, 8, 9, and 13 (the "Voting Classes").  The Debtors will not solicit votes to accept or reject the Plan from holders of Claims and Interests in Classes 1, 3, 6B, 10, 11, 12, 14, 15, or 16 (collectively, the "Non-Voting Classes").  Holders in the Voting Classes and the Non-Voting Classes alike will be given an opportunity to opt out of the Third-Party Release.

**Basis for Relief**

**II.    The Court Should Approve the Disclosure Statement.**

**A.    The Disclosure Statement Contains Adequate Information.**

22.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code states, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to

the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

23.     A disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan.[8]   "Adequate information" is a flexible standard, based on the facts and circumstances of each case.[9]   This Court and others have acknowledged that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.[10]

---

[8]     *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995) (adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties" (internal citation omitted)); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (same); *In re Amfesco Indus., Inc.*, No. CV-88-2952 (JBW), 1988 WL 141524, at *5 (E.D.N.Y. Dec. 21, 1988) (stating that "[u]nder section 1125 of the Bankruptcy Code, a reasonable and typical creditor or equity security holder must be provided 'adequate information' to make an informed judgment regarding a proposed plan."); *BSL Operating Corp. v. 125 E Taverns, Inc. (In re BSL Operating Corp.)*, 57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986) (stating that "[s]ection 1125 might be described as a non-rigid 'how-to-inform' section . . . . A disclosure statement . . . is evaluated only in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests.").

[9]     11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . ."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case[.]").

[10]    *See, e.g., Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a): 'Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case.'" (*quoting* H.R. Rep. No. 595, at 408–09 (1977))); *see also In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (same); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate

24.     When determining whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics, including:

a.     the events that led to the filing of a bankruptcy petition;

b.     the relationship of the debtor with its affiliates;

c.     a description of the available assets and their value;

d.     the company's anticipated future;

e.     the source of information stated in the disclosure statement;

f.     the debtor's condition while in chapter 11;

g.     claims asserted against the debtor;

h.     the estimated return to creditors under a chapter 7 liquidation;

i.     the future management of the debtor;

j.     the chapter 11 plan or a summary thereof;

k.     financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.     information relevant to the risks posed to creditors under the plan;

m.     the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.     litigation likely to arise in a nonbankruptcy context; and

o.     tax attributes of the debtor.[11]

---

information' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case.").

[11]     *See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).

25.     What constitutes "adequate information" is determined on a case-specific basis, and disclosure regarding all topics is not necessary in every case.[12]

26.     The Disclosure Statement provides "adequate information" to allow Holders of Allowed Claims and Interests in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including:

a.      ***The Debtors' Business Operations and Capital Structure.***  An overview of the Debtors' corporate history, business operations, assets, organizational structure, and capital structure, which are described in detail in <u>Article V</u> of the Disclosure Statement;

b.      ***Questions and Answers About the Plan.***  Detailed, plain English answers for close to 60 common questions that Account Holders and other creditors may have, which are described in detail in <u>Article III</u> of the Disclosure Statement.

c.      ***Events Leading to these Chapter 11 Cases.***  An overview of the events leading to the commencement of the Debtors' Chapter 11 Cases, including descriptions of and references to the independent report submitted by the Examiner, which are described in detail in <u>Article VI</u> of the Disclosure Statement;

d.      ***Events of the Chapter 11 Cases***.  An overview of key events in the Debtors' Chapter 11 Cases, which are described in detail in <u>Article VII</u> of the Disclosure Statement;

e.      ***Liquidation Analysis.***  A liquidation analysis, which is attached to the Disclosure Statement as <u>Exhibit B</u>;

f.      ***Risk Factors.***  Certain risks associated with the Debtors' businesses and the NewCo transaction, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement, which are described in <u>Article VIII</u> of the Disclosure Statement;

---

[12]    *See In re U.S. Brass Corp.*, 194 B.R. at 425; *see also In re Phoenix Petroleum Co.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

g.  ***Notice of the Injunction, Exculpation, and Release Provisions of the Plan.***
A description of the entities subject to an injunction under the Plan and the
acts that they are enjoined from pursuing, including bolded language related
to the Debtor Release, Third-Party Release, Exculpation, and Injunction,
which are described in detail in Article III.LL, Article III.MM, Article
III.NN, and Article III.OO of the Disclosure Statement;

h.  ***Solicitation and Voting Procedures.***   A description of the procedures for
soliciting votes to accept or reject the Plan and voting on the Plan, which
are described in Article IX of the Disclosure Statement;

i.  ***Confirmation of the Plan.***   Confirmation procedures and statutory
requirements for Confirmation and Consummation of the Plan, which are
described in Article X of the Disclosure Statement;

j.  ***Certain Securities Law Matters.***   A description of certain securities law
matters, including the applicability of section 1145 of the Bankruptcy Code
and the issuance of Securities under the Plan, which are described in detail
in Article XI of the Disclosure Statement;

k.  ***Certain United States Federal Income Tax Consequences of the Plan.***
A description of certain U.S. federal income tax law consequences of the
Plan, which are described in Article XII of the Disclosure Statement; and

l.  ***Recommendation of the Debtors.***   A recommendation by the Debtors that
Holders of Claims in the Voting Classes should vote to accept the Plan,
stated in Article XIII of the Disclosure Statement.

27.   Based on the foregoing, the Disclosure Statement satisfies section 1125 of the

Bankruptcy Code and addresses the information set forth above in a manner that provides adequate

information to Holders of Claims entitled to vote to accept or reject the Plan.   Therefore, the

Disclosure Statement contains "adequate information" and should be approved.

## III.   The Disclosure Statement Provides Sufficient Notice of Injunction, Exculpation, and Release Provisions in the Plan.

28.   Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against

conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must

describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

29.    <u>Article III</u> of the Disclosure Statement describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtor Release, Third-Party Release, Exculpation, and Injunction. Furthermore, the relevant language in Article VIII of the Plan regarding the Debtor Release, Third-Party Release, Exculpation, and Injunction is in bold font, making it conspicuous to anyone who reads it. The Confirmation Hearing Notice states in clear and bolded text that the Plan contains release, exculpation, and injunction provisions, including a third-party release. In addition, Questions LL, MM, NN, and OO in <u>Article III</u> of the Disclosure Statement address specific questions regarding the release, exculpation, and injunction provisions of the Plan. The Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan, and the Confirmation Hearing Notice complies with Bankruptcy Rule 2002(c)(3) by conspicuously describing the nature and entities subject to the injunction under the Plan. Importantly, the Third-Party Release and Exculpation will not release or exculpate, among others, Alexander Mashinsky, Shlomi Daniel Leon, the other UCC Claims Stipulation Defendants, any party not identified as a Released Party, or any party specifically identified as an Excluded Party. The Plan also does not release any Avoidance Actions against any party, except for those released by the Account Holder Avoidance Action Settlement.

## IV.    The Confirmation Schedule Complies with Applicable Bankruptcy Law.

30.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least twenty-eight days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto."

23

Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing

on confirmation of a plan." Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given

to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail

of the time fixed for filing objections and the hearing to consider approval of a disclosure

statement." Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed

and served "within a time fixed by the court." Moreover, under Local Rule 3020–1, "[u]nless the

Court orders otherwise, objections to confirmation of a plan in a chapter 9 or chapter 11 case must

be filed not later than seven (7) days prior to the first date set for the hearing to consider

confirmation of the plan." Local Rule 3020–1.

     **A.**    **The Confirmation Hearing Date and the Procedures for Filing Objections to the Plan.**

    31.    The Debtors request that the Court schedule the Confirmation Hearing to

commence on [September 29], 2023 and schedule the Plan Objection Deadline at 4:00 p.m.,

prevailing Eastern Time, on September 18, 2023. The Debtors also request that the Court require

that objections to Confirmation of the Plan be timely filed and properly served in accordance with

this Order and the *Second Amended Final Order (I) Establishing Certain Notice, Case

Management, and Administrative Procedures and (II) Granting Related Relief*,

[Docket No. 2560]. Specifically, all objections to Confirmation of the Plan or requests for

modifications to the Plan, if any, **must**: (a) be in writing; (b) conform to the Bankruptcy Rules

and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and,

if practicable, a proposed modification to the Plan (or related materials) that would resolve such

objection; and (d) be filed on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by

registered users of the Court's electronic filing system and in accordance with all General Orders

applicable to Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of

New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 18, 2023, at 4:00 p.m.**, prevailing Eastern Time.  For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses:  to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).  The Debtors also request that they (and other parties in support of the Plan) be permitted to file a reply to any objections to Confirmation of the Plan and a memorandum in support of Confirmation by [September 25], 2023, at [4:00 p.m.] (prevailing Eastern Time).  Such dates and procedures will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications to the Plan prior to the Confirmation Hearing, and therefore, should be approved.

32.    ***First***, the proposed Plan Objection Deadline of September 18, 2023 is twenty–eight days following the expected completion date for service of the Solicitation Packages (including the Confirmation Hearing Notice), and the proposed Confirmation Hearing on [September 29], 2023, is [thirty-nine] days following the expected completion date for service of the Solicitation Packages (including the Confirmation Hearing Notice), both of which comply with the time periods required by the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The

Disclosure Statement and other solicitation materials are being distributed to each Holder of a Claim in a Voting Class and are readily available at no cost on the Debtors' chapter 11 website at https://cases.stretto.com/Celsius.

33.     *Second*, it is in the best interests of the Debtors, their stakeholders, and all parties in interest to proceed on the timeline contemplated by this Motion, which is intended to preserve value for the Debtors' creditors by reducing the administrative costs of an extended chapter 11 proceeding.  Given the novel nature of these Chapter 11 Cases and the restructuring transactions proposed by the Plan, the Confirmation Schedule is appropriate and in the best interests of the Debtors, their estates, and all parties in these Chapter 11 Cases.

34.     *Third*, the Holders of Claims and Interests not entitled to vote to accept or reject the Plan will not be denied due process because such Holders will be served with a Non-Voting Status Notice, which includes notice of the applicable deadlines thereto and an opportunity to opt out of the Third-Party Release.

35.     *Fourth*, the Debtors will implement a robust noticing plan that will provide all known parties in interest with (i) notice of the Confirmation Hearing and related deadlines, the material terms of the Plan, including the Third-Party Release, and (ii) the opportunity to opt out of such release.  Not only will Account Holders receive e-mail notice of the Confirmation Hearing from the Claims, Noticing, and Solicitation Agent, but they will also receive a "push" notification in the Debtors' mobile application.[13]  In addition, to the extent that the Claims, Noticing, and Solicitation Agent receives a return message that its email to Account Holders has failed to deliver, the Claims, Noticing, and Solicitation Agent will mail the Solicitation Package to such Account

---

[13]     Importantly, the Debtors only have e-mail addresses (and not physical mailing addresses) for a substantial amount of their creditors and, based on the nature of their creditors, believe that e-mail is more likely to provide notice to such creditors.  *See* ¶ 46, *infra*.

Holder solely to the extent their address is known to the Debtors.  In addition to distributing the

Solicitation Packages (and the Confirmation Hearing Notice therein) and Non-Voting Status

Notices, the Debtors will submit the Publication Notice five business days after entry of the Order,

or as soon as reasonably practicable thereafter, for publication on one occasion each in *The New

York Times* (National Edition), *The New York Times* (International Edition), and on *CoinDesk*

(CoinDesk.com).

36.    For the foregoing reasons, the Confirmation Schedule is reasonable, appropriate, in

compliance with the applicable rules, and, most importantly, provides due process to all of the

Debtors' stakeholders and advances an efficient, but appropriate, timeline that will bring these

complex and novel Chapter 11 Cases to a close.

**V.    The Court Should Approve the Solicitation Materials and Timeline for Soliciting
Votes on the Plan.**

**A.    The Court Should Approve the Voting Record Date, Solicitation Deadline, and
Voting Deadline.**

37.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes

regarding the confirmation of a plan, "creditors and equity security holders shall include holders

of stocks, bonds, debentures, notes, and other securities of record on the date the order approving

the disclosure statement is entered or another date fixed by the court, for cause, after notice and a

hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision

regarding determination of the record date for voting purposes.  Fed. R. Bankr. P. 3018(a).

Additionally, Bankruptcy Rule 3017(c) provides that before approving a disclosure statement, the

Court must fix a time within which the holders of claims and interests may accept or reject a plan

and may fix a date for the hearing on confirmation of a plan.  *See* Fed. R. Bankr. P. 3017(c).

38.    The Debtors request that the Court exercise its authority under

Bankruptcy Rules 3017(c), 3017(d), and 3018(a) to establish **July 24, 2023**, as the Voting Record

Date, **August 21, 2023**, as the Solicitation Deadline, and **September 18, 2023, at 4:00 p.m.**, prevailing Eastern Time, as the Voting Deadline.  Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if:  (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  If a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

39.    The Debtors request that, after the Debtors distribute Solicitation Packages to Holders of Claims entitled to vote on the Plan as part of the Solicitation Deadline, the Court require that all Holders of Claims entitled to vote on the Plan complete, execute, and return their Ballots so that they are **actually received** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline by submitting their Ballots electronically.  The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan at least twenty-eight days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules.[14]    Holders of Transferred Claims that have fulfilled the requirements of Bankruptcy Rule 3001(e) and the transfer is reflected on the Claims Register by the Voting Record Date may vote their Transferred Claim to accept or reject the Plan.

---

[14]    *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).

40.    Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to Holders of Claims in the Voting Classes and the deadline for Holders of Claims in the Voting Classes to vote to accept or reject the Plan.

**B.    The Court Should Approve the Forms of the Ballots.**

41.    Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).    Pursuant to Bankruptcy Rule 3018(c), the Debtors have prepared customized Ballots to provide Holders of Claims in the Voting Classes with substantial information regarding the particular Class treatments and elections available to such Holders. Although based on Official Form No. 314, the Ballots have been modified to (a) address the particular circumstances of these Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in the Voting Classes, including specific information about the elections available to certain creditors under the Plan.    The proposed Ballots for the Voting Classes are annexed as Exhibit 3A, Exhibit 3B, Exhibit 3C, and Exhibit 3D to the Order.

42.    The Solicitation Package will be distributed via e-mail in electronic format to Holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, and Class 7 Withhold Claims (together, the "Account Holder Voting Classes").[15]    Holders of Claims in Account Holder Voting Classes

---

[15]    The Debtors expect there to be numerous Account Holders who have filed Proofs of Claim with email addresses that are not the same as the email addresses on file with the Debtors.  To ensure that the proposed noticing plan is comprehensive as possible, the Claims, Noticing, and Solicitation Agent will email the Solicitation Package to such email addresses but the email message will not contain a link to the electronic Ballot; rather, the email

will also receive a "push" notification to the Debtors' mobile application, which will link to the ballot for the Account Holder Voting Classes (the "Account Holder Ballot") on the Claims, Noticing, and Solicitation Agent's online voting portal.  The Account Holder Ballot will be pre-populated with the amount of each Claim held by the Holder in each of the Account Holder Voting Classes as reflected on the Debtors' Schedules.  As discussed further herein, Account Holders will only be permitted to vote a Claim amount that is different than the Claim amount listed on the Schedules if the Court enters an order approving such relief for that Account Holder pursuant to Bankruptcy Rule 3018(a).  The Account Holder Ballot includes detailed descriptions of a number of elections available to Account Holders in addition to seeking votes to accept or reject the Plan.  The Account Holder Ballot will also contain the net preference exposure of the Account Holder, which is relevant to whether such Account Holder is eligible to participate in the Account Holder Avoidance Action Settlement and whether distributions may be held back on account of potential Avoidance Actions against such Account Holder.  The Account Holder Ballot on the online voting portal will provide user-friendly prompts to ensure that any elections the Holder makes are consistent, thus preventing Holders from inadvertently submitting a defective ballot and ensuring that votes to accept or reject the Plan from Holders in the Account Holder

---

message will contain a note that an electronic Ballot can be accessed on the Claims, Noticing, and Solicitation Agent's website by inputting the email address associated with the Holder's Account.

Voting Classes will be properly counted.  The Debtors worked closely with the Committee to construct the Account Holder Ballot and to minimize any confusion or difficulty in voting.

43.     Accordingly, the form of the Ballots complies with Bankruptcy Rule 3018(c) and should therefore be approved.

### C.     The Court Should Approve the Form and Distribution of Solicitation Packages to Parties Entitled to Vote on the Plan.

44.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and/or equity interests upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).  Consistent with this requirement, the Debtors propose to send the Solicitation Packages to provide Holders of Claims in the Voting Classes with the information they need to make informed decisions with respect to how to vote on the Plan.  Specifically, by the Solicitation Deadline, the Debtors will cause the Solicitation Packages to be distributed through the Claims, Noticing, and Solicitation Agent by e-mail to those Holders of Claims in Account Holder Voting Classes, and by e-mail (to the extent the Debtors have such e-mail addresses) or by first-class U.S. mail to those Holders of Claims in Classes 8 and 9.  Furthermore, consistent with the Court–approved form and manner of notice of the bar dates, the Debtors will provide each Account Holder with a "push" notification via the Debtors' mobile application, with a link to the Confirmation Hearing Notice on the Claims, Noticing, and Solicitation Agent's website, to provide additional notice to Account Holders in the manner in which they are used to interacting with the Debtors.

45.     Each Solicitation Package will include the following materials:

a.      a copy of the Solicitation and Voting Procedures;

b.      the applicable form of Ballot, substantially in the form attached as <u>Exhibit 3A</u>, <u>Exhibit 3B</u>, <u>Exhibit 3C</u>, and <u>Exhibit 3D</u> to the Order, as applicable;

c.      the Cover Letter, which describes the contents of the Solicitation Package and urges Holders of Claims in each of the Voting Classes to vote to accept the Plan;

d.      the Committee Letter,

e.      the Disclosure Statement (and exhibits thereto, including the Plan);

f.      the Order (excluding exhibits);

g.      the Confirmation Hearing Notice; and

h.      any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

46.      The Debtors request that they be authorized to distribute the Solicitation Packages via e-mail to Holders of Claims in the Voting Classes, using the email address maintained by the Debtors as of the Voting Record Date, and to provide each Account Holder with a "push" notification via the Debtors' mobile application with a link to the Confirmation Hearing Notice on the Claims, Noticing, and Solicitation Agent's website. Holders of Claims in the Account Holder Voting Classes include over 400,000 individual Account Holders, each of which is entitled to vote on the Plan and, accordingly, will receive a Solicitation Package. Account Holders are not required to provide their home address when creating an account on the Debtors' platform. Rather, each Account Holder provided the Debtors with their e-mail address when they registered on the Debtors' platform, and the Debtors send Account Holders information regarding their account via e-mail. Service via e-mail is consistent with the Debtors' business practices and the means by which Account Holders receive a majority, if not all, of communications regarding their account. Additionally, even if it were possible, the Debtors estimate that the cost of soliciting Holders of Claims in Classes 2, 4, 5, 6A, and 7 via first-class mail would be approximately $3–4 million.

Soliciting Holders of Claims in the Voting Classes via e-mail will provide greater notice and save significant time and expense that will directly inure to the benefit of the Debtors' stakeholders and enhance recoveries under the Plan in these highly complex and novel Chapter 11 Cases. Accordingly, the Debtors believe that e-mail service to Holders of Claims in the Account Holder Voting Classes as well as the push notification on the Debtors' mobile application that will link to the Confirmation Hearing Notice is in the best interest of such Holders, consistent with the Debtors' historical practices and Holders' expectations, and maximizes recoveries under the Plan.[16] To the extent e-mail addresses are available for Holders of Class 8 Unsecured Loan Claims and Class 9 General Unsecured Claims, the Debtors request that they be authorized to distribute the Solicitation Packages via e-mail to these Holders as well. Given the length of the Plan, Disclosure Statement, and proposed Order, distributing the Solicitation Packages in this manner will translate into significant cost savings for the Debtors' estates.

47.    Additionally, the Debtors will serve via e-mail all the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.

48.    Any party that receives the materials in electronic format but would prefer paper format may contact the Claims, Noticing, and Solicitation Agent and request paper copies of the corresponding materials already provided in electronic format (to be provided at the Debtors' expense). To the extent applicable, the Debtors will not e-mail or mail Solicitation Packages or other solicitation materials to (a) Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant

---

[16]    *See Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 1368] ¶¶ 7, 11 (authorizing service of bar date notices on Account Holders via e-mail).

to an order previously entered by this Court, (b) any party to whom the Confirmation Hearing Notice was sent but was subsequently returned as undeliverable, (c) Holders of Claims in the Voting Classes unless (i) a request for paper copies is made to the Claims, Noticing, and Solicitation Agent or (ii) an e-mail address is not on file for such holder of a Claim and a mailing address is on file for such Holder, (d) Holders of Claims or Interests in Classes 1, 3, 6B, 10, 11, 12, 14, 15, and 16 who will receive the Non-Voting Status Notice, or (e) Holders of Claims that are unclassified under the Plan.

49.    The Debtors request that the Claims, Noticing, and Solicitation Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in:  (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors; (c) responding to inquiries from Holders of Claims or Interests and other parties-in-interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding balloting of the Plan.

**D.    The Court Should Approve the Confirmation Hearing Notice.**

50.    The Debtors will serve the Confirmation Hearing Notice, substantially in the form attached to the Order as <u>Exhibit 6</u>, on all known Holders of Claims and Interests, the U.S. Trustee, and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) no later than the Solicitation Deadline.  The Debtors will serve the Confirmation Hearing Notice on Account Holders via e-mail and send a "push" notification via the Debtors' mobile application with a link to the Confirmation Hearing Notice on the Claims, Noticing, and Solicitation Agent's website. The Confirmation Hearing Notice will include the following:  (a) instructions as to how to view or

obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims, Noticing, and Solicitation Agent's and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan Objection Deadline; and (e) the Confirmation Hearing Date and information related thereto.

51.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).  In addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors shall submit the Publication Notice for publication in *The New York Times* (National Edition), *The New York Times* (International Edition), and *CoinDesk* (CoinDesk.com) five business days following the entry of the Order, or as soon as practicable thereafter.  The Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail.  Additionally, service of the Confirmation Hearing Notice and publication of the Publication Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

52.    Accordingly, the Confirmation Hearing Notice should be approved as appropriate and in compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules.

**E.    The Court Should Approve the Plan Supplement Notice.**

53.    The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed by the Debtors no later than fourteen days prior to the Plan Objection Deadline or such later date as may be approved by the

Court on notice to parties-in-interest.[17]  The Plan Supplement will include the following materials in connection with confirmation, as applicable:   (a) the Management Agreement;  (b) the New Organizational Documents; (c) the identities of the members of the New Board; (d) the Schedule of Rejected Executory Contracts and Unexpired Leases; (e) the Schedule of Assumed Executory Contracts and Unexpired Leases; (f) the Schedule of Released and Exculpated Parties; (g) the Schedule of Retained Causes of Action; (h) the Schedule of Additional Recovery Causes of Action; (i) the Schedule of Equitably Subordinated Claims; (j) the Schedule of Excluded Parties; (k) the Transaction Steps Memorandum; (l) the Litigation Administrator Agreement(s); (m) the identity of the Litigation Administrator(s); (n) the identity and proposed compensation (if known) of the members of the Litigation Oversight Committee; (o) the Valon Agreements (if applicable); (p) the US Bitcoin Agreements; (q) the Proof Group IP License (if applicable); (r) the Plan Sponsor Contribution Agreement; (s) the Custody Provider Agreements; (t) the Employee Transition Services Agreement; (u) the Plan Administrator Agreement; (v) the Plan Administrator Budget; and (x) the Emergence Incentive Plan.

54.    To ensure that all known Holders of Claims or Interests, the U.S. Trustee, and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.  Accordingly, the Plan Supplement Notice should be approved.

**F.    The Court Should Approve the Form of Notices to Non-Voting Classes.**

55.    As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages and instead, the Debtors propose that such

---

[17]    *See* Plan at Art. I.

parties receive a Non-Voting Status Notice, which includes the mechanisms for (a) opting out of the Third-Party Release contained in Article VIII.D of the Plan and (b) electing to contribute Contributed Claims. Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims or Interests in Non-Voting Classes:

    a.    ***Unimpaired Claims—Conclusively Presumed to Accept.*** Holders of Claims in Classes 1, 3, and 6B are unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan. As such, Holders of such Claims will receive a notice, substantially in the form attached to the Order as Exhibit 2A, in lieu of a Solicitation Package;

    b.    ***Other Impaired Interests and Claims—Deemed to Reject.*** Holders of Claims or Interests in Classes 10, 14, 15, and 16 are not entitled to a distribution under the Plan and, therefore, are deemed to reject the Plan and will receive a notice, substantially in the form attached to the Order as Exhibit 2B, in lieu of a Solicitation Package;

    c.    ***Unclassified Claims.*** Holders of Claims that are not classified will receive a notice, substantially in the form attached hereto as Exhibit 2C, in lieu of a Solicitation Package; and

    d.    ***Disputed Claims.*** Holders of Claims that are subject to a pending objection by the Debtors filed on or before the Solicitation Deadline are not entitled to vote the disputed portion of their Claim. As such, Holders of such Claims will receive a notice, substantially in the form attached to the Order as Exhibit 2D.

56.    The Debtors will not provide the Holders in Class 11 (Intercompany Claims) and Class 12 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with the solicitation. Intercompany Claims and Intercompany Interests will either be reinstated or converted to equity, otherwise set off, settled, distributed, contributed, or cancelled. Thus, the Holders of Intercompany Claims or Intercompany Interests will not be entitled to vote to accept or reject the Plan. Nevertheless, in light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors are requesting a waiver from any requirement to serve such Holders of Intercompany Claims or Intercompany Interests with any notices or the Solicitation Package.

57.    Each Non-Voting Status Notice will include, among other things:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims, Noticing, and Solicitation Agent's and/or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (c) notice of the Plan Objection Deadline; and (d) notice of the Confirmation Hearing Date and information related thereto.

58.    E-mailing or mailing the Non-Voting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes.

**G.    The Court Should Approve the Forms of Notice to Contract and Lease Counterparties.**

59.    Article V.A of the Plan provides that each of the Debtors' Executory Contracts and Unexpired Leases not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected unless such Executory Contract or Unexpired Lease:  (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the NewCo Transaction or Orderly Wind Down; or (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

60.    To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of the assumption or rejection of their Executory Contract or Unexpired Lease, if any, pursuant to the Plan, the Debtors will mail the Assumption Notice and the Rejection Notice by the Plan Supplement Filing Deadline.   Accordingly, the Assumption Notice and Rejection Notice should be approved.

## VI.    The Court Should Approve the Solicitation and Voting Procedures.

61.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

62.    Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."   Fed. R. Bankr. P. 3018(c).   Consistent with these requirements, the Debtors propose using the Solicitation and Voting Procedures.   The Solicitation and Voting Procedures include specific voting and tabulation requirements and procedures, as described below.

### A.    Completion of Ballots

63.    To ease and clarify the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria.   Specifically, the Solicitation and Voting Procedures provide that the Debtors will not count a Ballot if it is, among other things, illegible, submitted by a Holder of a Claim that is not entitled to vote on the Plan, unsigned, or not clearly marked; *provided* that Ballots submitted

through the Claims, Noticing, and Solicitation Agent's online portal shall be deemed electronically signed. Furthermore, the Debtors may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report. The Solicitation and Voting Procedures contemplate that Holders of Claims in the Account Holder Voting Classes must vote all of their Claims either to accept or reject the Plan—that is, they may not split their vote across Voting Classes. Additionally, if a Holder of a Class 6A General Custody Claim has previously accepted the Custody Settlement, such Holder will be deemed to have automatically accepted the Plan with respect to the Holder's General Custody Claim and may not vote to reject the Plan with respect to such General Custody Claim. The Debtors believe that this process will streamline the hundreds of thousands of Ballots the Debtors expect to receive and is in the best interest of the Debtors' estates and all key stakeholders.

### B.     General Ballot Tabulation and Voting Procedures

64.     The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and tabulation of such votes, including that the Debtors intend to convert each Claim asserted in currency other than U.S. dollars (other than Cryptocurrency) to the equivalent U.S. dollar value using the conversion rate for the applicable currency at prevailing market prices as of 8:00 a.m. (prevailing Eastern Time) on the Petition Date, and to convert each Claim in cryptocurrency using the fair market value of the cryptocurrency as of the Petition Date (based in U.S. Dollars set forth in the Cryptocurrency Conversion Table), *provided* that such conversion shall be for voting tabulation purposes only and shall not be binding for any other purpose on the Debtors, including, without limitation, for purposes of the allowance of, and distribution with respect to, Claims under the Plan.

65.    As discussed herein, the Account Holder Ballot will be pre-populated with the amount of each Claim held by the Holder in each of the Account Holder Voting Classes as reflected on the Schedules.  Holders will only be permitted to vote a Claim amount that is different than the Claim amount listed on the Schedules if the Court enters an order approving such relief for that Holder after that Holder files a motion seeking such relief under Bankruptcy Rule 3018(a) by the 3018 Motion Deadline.  The vast majority of Account Holders did not file proofs of claim asserting "extra" damages and are relying on the Schedules as an accurate accounting of what they are owed by the Debtors.  The Debtors and their professionals are undergoing a claims reconciliation process and have concluded that a fair and equitable voting process is one that treats all similarly situated Account Holders equitably.  Absent further order of the Court, all Account Holders will be able to vote in respect of their Scheduled Claims.  The Debtors are simply seeking to ensure that all Account Holders are allowed to vote the amount of their claim equal to the amount of cryptocurrency the Debtors were obligated to return based on cryptocurrency prices on the Petition Date, rather than duplicate or excessive recoveries simply because certain Account Holders filed multiple claims, overstated the amounts that they were owed, or added claims for "fraud" or "breach of contract" when other Account Holders did not.

66.    The proposed Solicitation and Voting Procedures will facilitate the Plan confirmation process.  Specifically, the procedures clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code.  The Solicitation and Voting Procedures also avoid significant expense and delay that would result if the Debtors were required to object to each of the approximately 23,000 filed claims.  If an Account Holder believes they are entitled to vote in

a different amount (provided that they filed a Proof of Claim), they may request that the Court

allow them to do so by filing an appropriate motion under Bankruptcy Rule 3018(a).  Similarly, if

an Account Holder seeks to vote on account of a claim that was not scheduled (*i.e.*, a claim that is

not simply seeking the return of cryptocurrency the Account Holder transferred to the Debtors),

the Account Holder may seek authority to do so under Bankruptcy Rule 3018(a).  The Solicitation

and Voting Procedures are in the best interests of the Debtors' estates, Holders of Claims and

Interests, and other parties in interest, and that good cause supports the relief requested herein.

## VII.    The Court Should Authorize and Approve the Payment and/or Reimbursement of the Plan Sponsor's Reasonable and Documented Out-of-Pocket Fees and Expenses.

67.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor],

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate . . . ." 11 U.S.C. § 363(b)(1).  In this district, "[t]he standard used for judicial

approval of the use of estate property outside of the ordinary course of business is [] the business

judgment of the debtor."  *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 464 (Bankr.

S.D.N.Y. 2014) (citing *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003)).

The "business judgement rule" is not an unduly strict standard; it merely requires showing that a

decisions was based on the debtor's sound business judgement.  *See In re Ionosphere Clubs, Inc.*,

100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section

363(b) motion is "good business reason"); *Glob. Crossing Ltd.*, 295 B.R at 743 (Bankr. S.D.N.Y.

2003).  The business judgement rule also shields a debtor's decision making from second guessing.

*In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (noting a "presumption

of reasonableness attaches to a debtor's management decisions" and courts will generally not

entertain objections to a debtor's conduct after a reasonable basis is set forth); *see also Official

Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R.

650, 656 (S.D.N.Y. 1992) (stating "the business judgement rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company," and has continued applicability in bankruptcy) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)) (internal quotation marks omitted). Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

68.     The Debtors conducted a robust marketing and sale process designed to identify the value-maximizing path forward. That marketing process led the Debtors, in consultation with the Committee, to select the Plan Sponsor's bid as the winning bid because it represents the best option available to maximize the value of the Debtors' assets (including their substantial illiquid assets) in an efficient and regulatorily compliant manner. In exercising their sound business judgment, the Debtors, with full support of the Committee, concluded that securing a Plan Sponsor and entering the Plan Sponsor Agreement with Fahrenheit is in the best interests of their estates and all stakeholders. Thus, on June 7, 2023, the Debtors, the Committee, and Fahrenheit entered into the Plan Sponsor Agreement, whereby the Debtors are required to seek Court approval to pay and/or reimburse all of the Plan Sponsor's reasonable and documented out-of-pocket Fees (including success fees, transaction fees, or similar fees) and Expenses as set forth in the Plan Sponsor Agreement.

69.     Furthermore, the Plan Sponsor would not agree to enter into the Plan Sponsor Agreement, including the terms set forth in the Plan Term Sheet, absent the payment and/or reimbursement of the Fees and Expenses and the Debtors' commitment to seek approval thereof. Importantly, under plan Sponsor Agreement, the Fees and Expenses are capped at $5 million in

the aggregate and are not payable in the event that the Plan Sponsor (a) breaches any representations, warranties, or commitments as required under the Plan Sponsor Agreement, or (b) fails to satisfy any of the conditions precedent under the terms of the Plan Sponsor Agreement. *See* Plan Sponsor Agreement §§ 12.02(a), 12.02(e), and 13.  Thus, The Fees and Expenses are necessary consideration to secure Fahrenheit's' commitment to serve as the Plan Sponsor.

70.    Accordingly, in light of the complex structure of the Plan and restructuring transactions contemplated thereunder and the significant efforts and costs incurred to date, which will continue to be incurred by the Plan Sponsor in furtherance of the implementation of the Plan, authorizing the Debtors to pay or reimburse the Plan Sponsor's Fees and Expenses is a sound exercise of the Debtors' business judgment, is fair and reasonable under the circumstances, and should therefore be approved.  Importantly, this $5 million is the same amount that the Debtors were obligated to seek to reimburse under the Stalking Horse Bid, which the Court deferred approval of until after the approval of the Disclosure Statement.  *See Order Granting the Debtors' Motion for Bid Protections As Modified* [Docket No. 2344] at 5.

### A.    Paying the Plan Sponsor's Fees and Expenses is a Sound Exercise of the Debtors' Business Judgment and the Fees and Expenses are Reasonable and Appropriate Under the Circumstances.

71.    Courts in this District regularly approve the payment of fees that secure value-maximizing transactions for the estate (*e.g.*, in connection with backstop agreements) under the business judgement rule.  *See, e.g., In re Stearns Holdings, LLC*, Case No. 19-12226 (SCC) (Bankr. S.D.N.Y. Sept. 26, 2019) [Docket No. 350] (authorizing entry into a postpetition restructuring support agreement and payment by the debtors of all reasonable and documented fees and expenses incurred by certain restructuring support parties); *In re Aegean Marine Petroleum Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 15, 2019) [Docket No. 291] (same); *In re AOG Entm't, Inc.*, Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 29, 2016)

[Docket No. 184] (same); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (S.D.N.Y. May 12, 2020) [Docket No. 1806] (approving the Debtors' reimbursement of fees and expenses incurred by backstop parties in connection with Debtors' rights offering); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 6, 2017) [Docket No. 3283] (same); *see also Integrated Res.*, 147 B.R. at 657 (applying "business judgment rule" standard in context of bid incentive and focusing analysis on following questions: "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; [and] (3) is the amount of the fee unreasonable relative to the proposed purchase price?"); *Genco Shipping & Trading Ltd.*, 509 B.R. at 465; *Metaldyne Corp.*, 409 B.R. at 670.

72.    ***First***, as the Plan Sponsor, Fahrenheit has committed to serve as the go-forward manager of NewCo.  To that end, Fahrenheit has spent hundreds of hours over the past two months developing the Plan, participating in the Auction and negotiating the terms of the NewCo Transactions with the Debtors and the Committee.  In light of the Plan Sponsor's substantial effort and the considerable time and resources that the Plan Sponsor will expend in negotiating and drafting the definitive documentation with respect to the Restructuring Transactions, the payment of the Fees and Expenses is necessary to incentivize and compensate the Plan Sponsor for the risk that the Restructuring Transactions are not consummated due to, for example, regulatory issues or termination on account of the exercise of the Debtors' fiduciary duties.

73.    ***Second***, the Fees and Expenses are the product of hard-fought, good faith, arm's-length negotiations among the Debtors, the Committee, and the Plan Sponsor, and each party's respective advisors.  They were also subject to a competitive auction process and were weighed in connection with the selection of Fahrenheit as the winning bidder.  The Debtors and

the Plan Sponsor are wholly unrelated, sharing no officers, directors, shareholders, incorporators, employees or economic interests—other than as embodied in these transactions—in common. Additionally, the Plan Sponsor is not an "insider" as that term is defined in the Bankruptcy Code. 11 U.SC. § 101(31).

74.     ***Third***, the Fees and Expenses are actual and necessary costs and expenses to preserve the NewCo Transaction, which the Debtors and Committee have determined maximizes the value of the Debtors' estates.  These protections, individually and collectively, were a material inducement for, and a condition of, the Plan Sponsor's entry into the Plan Sponsor Agreement. The Plan Sponsor was unwilling to serve as Plan Sponsor without the assurance of payment of the Fees and Expense under the terms and conditions set forth in the Plan Sponsor Agreement.  The Restructuring Transactions embodied in the Plan Sponsor Agreement lay the foundation for the Debtors' proposed reorganization and provide the Debtors with a feasible path forward that maximizes the value of their estates.  Accordingly, authorizing and approving the Fees will enhance, rather than hamper, a successful emergence from chapter 11.

75.     ***Fourth***, the amount of the Fees and Expenses is fair and reasonable relative to the benefits that have inured and will continue to inure to the Debtors and their stakeholders from the proposed transaction with the Plan Sponsor.  As discussed above, the Fees and Expenses are capped at $5 million in the aggregate.  In addition, the Fees and Expenses will only be paid if actually incurred and determined to be reasonable and necessary.  The capped Fees and Expenses are reasonable and justified here given the substantial expenses that have been, and will continue to be, incurred by the Plan Sponsor to address the complex challenges raised by the Plan transactions.  Moreover, the significant time and expenses expended by the Plan Sponsor in formulating the Restructuring Transactions and preparing for the establishment of NewCo will

provide substantial benefits to the Debtors' estates even in the event that the Debtors pursue an alternative transaction since such an alternative transaction would capture the value of the investments and progress made in establishing and structuring NewCo, such as actions taken by the Plan Sponsor to stabilize and improve the Debtors' mining operations.

76.     Accordingly, the Court should approve the proposed payment and/or reimbursement of the Fees and Expenses.

### Non-Substantive Modifications

77.     The Debtors request authority to make non-substantive changes to the Disclosure Statement, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice, Rejection Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

### Motion Practice

78.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### Reservation of Rights

79.     The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Hearing and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise not previously approved by Final Order of the Court embodied in the Plan (including the fixing or limiting to an amount certain of

the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory

Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed

pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan shall

(x) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity,

(y) prejudice in any manner the rights of any Debtor or any other Entity, or (z) constitute an

admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

### Notice

80.     The Debtors will provide notice of this Motion to the following parties or their

respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States

Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the

offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and

Exchange Commission; (g) the Plan Sponsor; (i) the BRIC; and (j) any party that has requested

notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or

further notice need be given.

### No Prior Request

81.     No prior request for the relief sought in this Motion has been made to this or any

other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief

requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| New York, New York | */s/ Joshua A. Sussberg* |
| Dated:  July 6, 2023 | **KIRKLAND & ELLIS LLP** |

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER (I) APPROVING THE ADEQUACY**
**OF THE DEBTORS' DISCLOSURE STATEMENT,**
**(II) APPROVING THE SOLICITATION AND VOTING PROCEDURES**
**WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT PLAN OF**
**REORGANIZATION, (III) APPROVING THE FORM OF BALLOTS AND NOTICES IN**
**CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH**
**RESPECT THERETO, (V) AUTHORIZING AND APPROVING REIMBURSEMENT OF**
**CERTAIN OF THE PLAN SPONSOR'S FEES AND EXPENSES, AND**
**(VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order pursuant to

sections 105, 363, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016,

3017, 3018, 3020, and 9006 and Local Rules 3017-1, 3018-1, and 3020-1 (i) approving the

*Disclosure Statement Relating to the Joint Plan of Reorganization of Celsius Network LLC and Its*

*Debtor Affiliates Pursuant* (the "Disclosure Statement"), (ii) scheduling a Plan confirmation

hearing, (iii) approving:  (a) the Solicitation and Voting Procedures; (b) the Confirmation Hearing

Notice; (c) the Non-Voting Status Notices; (d) the Ballots; (e) the manner and form of the

Solicitation Packages and the materials contained therein; (f) the Plan Supplement Notice; (g) the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion, the Plan, or the Disclosure Statement, as applicable.

Assumption Notice and Rejection Notice; (h) the Voting Record Date; (i) the Plan Objection Deadline; (j) the Solicitation Deadline; (k) the Publication Deadline; (l) the Plan Supplement Filing Deadline; (m) the Voting Deadline; (n) the deadline to file the Voting Report; (o) the Confirmation Brief Deadline and Plan Objection Reply Deadline; (p) the Confirmation Hearing Date; (q) the dates and deadlines related thereto; (iv) authorizing and approving the reimbursement of certain of the Plan Sponsor's Fees and Expenses, and (v) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein.

I.    **Approval of the Disclosure Statement.**

2.    The Disclosure Statement is hereby approved as providing Holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

3.    The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims or Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in <u>Article VIII</u> of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

4.    The Debtors' request for a hearing on the Confirmation of the Plan, and the Confirmation dates and deadlines provided herein, are approved.

II.    **Approval of the Confirmation Hearing Notice.**

5.    The Confirmation Hearing Notice, in the form attached hereto as **<u>Exhibit 6</u>** to be filed by the Debtors and served upon parties in interest in these Chapter 11 Cases by no later than the Solicitation Deadline via electronic mail, constitutes adequate and sufficient notice of the hearing to consider Confirmation of the Plan, the manner in which a copy of the Plan and Disclosure Statement can be obtained, and the time fixed for filing objections to the Plan, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Five business days following the entry of this Order, or as soon as practicable thereafter, the Debtors shall submit the Publication Notice for publication in *The New York Times* (National Edition), *The New York Times* (International Edition), and on *CoinDesk* (CoinDesk.com).

6.    Service of the Confirmation Hearing Notice on Account Holders and other creditors by electronic mail and "push" notifications from the Debtors' mobile application constitutes

adequate and sufficient notice of the hearing to consider Confirmation of the Plan and is reasonably

calculated to provide notice to Account Holders of that hearing.

## III.    Approval of the Materials and Timeline for Soliciting Votes.

### A.    Approval of Key Dates and Deadlines with Respect to the Plan and Disclosure Statement.

The following dates are hereby established (subject to modification as necessary) with

respect to the solicitation of votes to accept or reject, and voting on, the Plan:

a.    ***Voting Record Date.***  **July 24, 2023**, as the date for determining:  (i) which Holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, Class 7 Withhold Claims, Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, and Class 13 Series B Preferred Interests are entitled to vote to accept or reject the Plan; and (ii) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the respective Claim (the "Voting Record Date");

b.    ***Solicitation Deadline.***  **August 21, 2023**, as the deadline for distributing Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan (the "Solicitation Deadline");

c.    ***Publication Deadline.***  **Five business days after entry of this Order**, or as soon as reasonably practicable thereafter, as the last date by which the Debtors shall submit the Confirmation Hearing Notice for publication in a format modified for publication in *The New York Times* (National Edition), *The New York Times* (International Edition), and on *CoinDesk* (CoinDesk.com) (the "Publication Notice");

d.    ***Plan Supplement Filing Deadline***.  **September 4, 2023**, as the deadline by which the Debtors must file the Plan Supplement (the "Plan Supplement Filing Deadline");

e.    ***Deadline to File Motion Pursuant to Bankruptcy Rule 3018.*** **September 18, 2023, at 4: p.m.**, as the date by which Holders of Claims shall file a motion to vote a Claim amount that is different than the Claim amount listed on the Schedules pursuant to Bankruptcy Rule 3018(a) (the "3018 Motion Deadline"); and

f.    ***Voting Deadline.***  **September 18, 2023, at 4:00 p.m.**, prevailing Eastern Time, as the deadline by which **all** Ballots must be properly executed, completed, and delivered so that they are **actually received**

(the "<u>Voting Deadline</u>") by Stretto, Inc. (the "<u>Claims, Noticing, and Solicitation Agent</u>").

**B.    Approval of the Form of, and Distribution of, Solicitation Packages to Parties Entitled to Vote on the Plan.**

7.    The Solicitation Packages to be transmitted by the Solicitation Deadline to those Holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, shall include the following, the form of each of which is hereby approved:

    a.    a copy of the Solicitation and Voting Procedures;

    b.    the applicable form of Ballot, substantially in the form attached as **Exhibit 3A**, **Exhibit 3B**, **Exhibit 3C**, **Exhibit 3D** to this Order, as applicable;

    c.    the Cover Letter, which describes the contents of the Solicitation Package and urges Holders of Claims in each of the Voting Classes to vote to accept the Plan;

    d.    the Committee Letter,

    e.    the Disclosure Statement (and exhibits thereto, including the Plan);

    f.    this Order (excluding exhibits);

    g.    the Confirmation Hearing Notice; and

    h.    any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

8.    The Solicitation Packages provide the Holders of Allowed Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code, and the Local Rules.

9.    The Debtors shall distribute Solicitation Packages to all Holders of Allowed Claims entitled to vote on the Plan on or before the Solicitation Deadline via electronic mail and first class mail as described in the Motion, with Account Holders only receiving notice via electronic mail.

Such service satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and due process.

10.     The Debtors are authorized, but not directed or required, to cause the Solicitation Packages to be distributed through the Claims, Noticing, and Solicitation Agent by e-mail (using the email address maintained by the Debtors as of the Voting Record Date) to the Holders of Claims in Class 2, Class 4, Class 5, Class 6A, and Class 7, and, to the extent e-mail addresses are available, to the Holders of Claims in Class 8, Class 9, and Class 13.  In addition, the Debtors shall cause a "push" notification to be delivered to Holders of Claims in Class 2, Class 4, Class 5, Class 6A, and Class 7 through the Debtors' mobile application linking such Holders to electronic copies of the Solicitation Packages.  On or before the Solicitation Deadline, the Debtors (through the Claims, Noticing, and Solicitation Agent) shall provide complete Solicitation Packages (other than Ballots) to the U.S. Trustee and to all parties on the 2002 List as of the Voting Record Date via e-mail where e-mail addresses are on file.

11.     Any party that receives the materials in electronic format but would prefer to receive materials in paper format may contact the Claims, Noticing, and Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

12.     The Claims, Noticing, and Solicitation Agent is authorized to assist the Debtors in:  (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors; (c) responding to inquiries from Holders of Claims or Interests and other parties-in-interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to

accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if

necessary, contacting stakeholders regarding the Plan.

### C.    Approval of Notice of Filing of the Plan Supplement.

13.    The Debtors are authorized to send notice of the filing of the Plan Supplement

substantially in the form attached hereto as **Exhibit 7** on the Plan Supplement Filing Deadline or

as soon as reasonably practicable thereafter.

### D.    Approval of the Form of Notices to Non-Voting Classes.

14.    Except to the extent the Debtors determine otherwise, the Debtors are not required

to provide Solicitation Packages to Holders of Claims or Interests in Non-Voting Classes, as such

Holders are not entitled to vote on the Plan.  Instead, on or before the Solicitation Deadline, the

Claims, Noticing, and Solicitation Agent shall e-mail or mail (first-class postage pre-paid) a Non-

Voting Status Notice in lieu of Solicitation Packages, the form of each of which, including the

mechanisms for (i) opting out of the Third-Party Release contained in Article VIII.D of the Plan

and (ii) electing to contribute Contributed Claims to those parties, outlined below, who are not

entitled to vote on the Plan:

a.    ***Unimpaired Claims—Conclusively Presumed to Accept.***  Holders of
Claims in Classes 1, 3, and 6B are unimpaired under the Plan and, therefore,
are conclusively presumed to have accepted the Plan.  As such, Holders of
such Claims will receive a notice, substantially in the form attached hereto
as Exhibit 2A, in lieu of a Solicitation Package;

b.    ***Other Impaired Interests and Claims—Deemed to Reject.***  Holders of
Claims or Interests in Classes 10, 14, 15, and 16 are not entitled to a
distribution under the Plan and, therefore, are deemed to reject the Plan and
will receive a notice, substantially in the form attached hereto as Exhibit 2B,
in lieu of a Solicitation Package;

c.    ***Unclassified Claims.***  Holders of Claims that are not classified will receive
a notice, substantially in the form attached hereto as Exhibit 2C, in lieu of a
Solicitation Package; and

    d.    ***Disputed Claims.*** Holders of Claims that are subject to a pending objection by the Debtors filed on or before the Solicitation Deadline are not entitled to vote the disputed portion of their Claim. As such, Holders of such Claims will receive a notice, substantially in the form attached hereto as Exhibit 2D.

15.    Service of the Non-Voting Status Notice via electronic mail on Holders that are not entitled to vote on the Plan is approved and constitutes adequate and sufficient notice of the hearing to consider Confirmation of the Plan and is reasonably calculated to provide notice to such Holders of that hearing.

16.    The Debtors are not required to mail Solicitation Packages or other solicitation materials to: (a) Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (b) any party to whom the Confirmation Hearing Notice was sent but was subsequently returned as undeliverable; (c) Holders of Claims in the Voting Classes unless (i) a request for paper copies is made to the Claims, Noticing, and Solicitation Agent or (ii) an e-mail address is not on file for such holder of a Claim and a mailing address is on file for such Holder; (d) Holders of Claims or Interests in Classes 1, 3, 6B, 10, 11, 12, 14, 15, and 16 who will receive the Non-Voting Status Notice; or (e) Holders of Claims that are unclassified under the Plan.

17.    The Debtors will not provide the Holders of Class 11 Intercompany Claims or Class 12 Intercompany Interests with a Solicitation Package or any other type of notice in connection with solicitation.

**E.**    **Approval of Notices to Contract and Lease Counterparties.**

18.    The Debtors are authorized to mail a notice of rejection or assumption of any Executory Contracts or Unexpired Leases, in the forms attached hereto as **Exhibit 8** and **Exhibit 9**, respectively, to the applicable counterparties to Executory Contracts and Unexpired Leases that

will be rejected or assumed pursuant to the Plan, respectively, within the time periods specified by the Plan Supplement Filing Deadline.

**IV.    Approval of the Solicitation and Voting Procedures.**

19.    The Debtors are authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **<u>Exhibit 1</u>**, which are hereby approved in their entirety.  The Debtors are authorized to convert each Claim asserted in currency other than U.S. dollars (other than Cryptocurrency) to the equivalent U.S. dollar value using the conversion rate for the applicable currency at prevailing market prices as of 8:00 a.m. (prevailing Eastern Time) on the Petition Date, and to convert each Claim in Cryptocurrency using the fair market value of the Cryptocurrency (based in U.S. Dollars in accordance with the Cryptocurrency Conversion Table), *provided* that such conversion shall be for voting tabulation purposes only and shall not be binding for any other purpose on the Debtors, including, without limitation, for purposes of the allowance of, and distribution with respect to, Claims under the Plan as set forth in Section 4(iii)(a) and (b) of the Solicitation and Voting Procedures.

20.    Holders of Account Holder Claims that (a) filed a Proof of Claim and (b) seek to vote amounts that differ from the amounts Scheduled by the Debtors are not entitled to vote a different amount, unless such Account Holder Claim is temporarily allowed by this Court for voting purposes pursuant to Bankruptcy Rule 3018(a).

**V.    Approval of Procedures for Confirming the Plan.**

**A.    Approval of the Timeline for Filing Objections to the Plan.**

21.    The following dates are hereby established (subject to modification as needed) with respect to filing objections to the Plan and confirming the Plan:

a.    ***Plan Objection Deadline.*  <u>September 18, 2023, at 4:00 p.m.</u>**, prevailing Eastern Time, as the deadline by which objections to the Plan must be filed

with the Court and served so as to be **actually received** by the appropriate notice parties (the "Plan Objection Deadline");

b. ***Deadline to File Voting Report.*** **September 22, 2023, at 4:00 p.m.** prevailing Eastern Time, as the date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court;

c. ***Confirmation Brief, Plan Objection Reply, and 3018 Motion Response Deadline.*** **[September 25], 2023, at 4:00 p.m.**, prevailing Eastern Time as the deadline by which the Debtors shall file their brief in support and Confirmation of the Plan (the "Confirmation Brief Deadline"), deadline by which any other statements in support of the Plan or replies to objections to the Plan must be filed with the Court (the "Plan Objection Reply Deadline"), and deadline by which the Debtors or other parties in interest must file objections to any 3018 Motions; and[3]

d. ***Confirmation Hearing Date.*** **[September 29], 2023**, or as soon thereafter as the Debtors may be heard, as the date for the hearing at which the Court will consider and Confirmation of the Plan (the "Confirmation Hearing Date").

**B.** **Approval of the Procedures for Filing Objections to the Adequacy of the Disclosure Statement or Confirmation of the Plan.**

22. Objections to confirmation of the Plan will not be considered by the Court unless such objections are timely filed and properly served in accordance with this Order and the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief*, [Docket No. 2560]. Specifically, all objections to final approval of the Disclosure Statement or confirmation of the Plan or requests for modifications to the Plan, if any, **must**: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Court and served upon the notice parties so as to be **actually received** on or

---

[3] The bracketed dates in this Order and the Motion are subject to change as a Confirmation Hearing has not yet been set.

before the **September 18, 2023, at 4:00 p.m.**, prevailing Eastern Time, by each of the notice

parties identified in the Confirmation Hearing Notice.

**VI.    Authorizing and Approving the Plan Sponsor's Fees and Expenses.**

23.    The Fees and Expenses are approved in their entirety, subject to an aggregate cap

of $5 million and the terms of the Plan Sponsor Agreement.

24.    The Debtors are authorized to pay the Fees and Expenses in cash or by wire transfer

of immediately available funds in accordance with the terms of the Plan Sponsor Agreement

without further action or order by the Court.

**VII.    Miscellaneous.**

25.    The Debtors reserve the right to modify the Plan in accordance with <u>Article X</u>

thereof, including the right to withdraw the Plan as to any or all Debtors at any time before the

Confirmation Date.

26.    Nothing in this Order shall be construed as a waiver of the right of the Debtors or

any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

27.    Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, this

Order, or any findings announced at the Confirmation Hearing, nothing in the Disclosure

Statement, the Plan, this Order, or announced at the Confirmation Hearing constitutes a finding

under the federal securities laws as to whether crypto tokens or transactions involving crypto

tokens are securities, and the right of the United States Securities and Exchange Commission to

challenge transactions involving crypto tokens on any basis is expressly reserved.

28.    All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

29.    Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

30.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

31.    The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE