**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | **FOR PUBLICATION** |
| CELSIUS NETWORK LLC, et al., | ) | |
| | | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 22-10964 (MG) |
| | ) | |

**MEMORANDUM OPINION GRANTING MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY, TO ALLOW ADVANCEMENT AND PAYMENT OF INSUREDS'**
**DEFENSE COSTS UNDER D&O POLICIES**

*A P P E A R A N C E S :*

KIRKLAND & ELLIS LLP
*Counsel to the Debtors and Debtors in Possession*
601 Lexington Avenue
New York, NY 10022
By:    Joshua A. Sussberg, Esq.
          Patrick J. Nash, Jr., Esq.
          Christopher S. Koenig, Esq.
          Dan Latona, Esq.

WHITE & CASE LLP
*Counsel to the Official Committee of Unsecured Creditors*
1221 Avenue of the Americas
New York, NY 10020
By:    Aaron E. Colodny, Esq.
          David M. Turetsky, Esq.
          Samuel P. Hershey, Esq.
          Joshua Weedman, Esq.

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Euclid Financial Institution Underwriters, LLC,*
*a duly authorized agent of Certain Underwriters at Lloyds of*
*London and Republic Vanguard Insurance Company*
40 Exchange Place, 20th Floor
New York, NY 10005
By:    Kevin J. Windels, Esq.

HOGAN LOVELLS US LLP
*Attorneys for Shlomi Daniel Leon and Aliza Landes*
390 Madison Avenue
New York, NY 10017
By:    Pieter Van Tol, Esq.

VÍCTOR UBIERNA DE LAS HERAS
*Pro Se Creditor*
By:    Víctor Ubierna De Las Heras


**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Euclid Financial Institution Underwriters, LLC, a duly authorized agent of Certain

Underwriters at Lloyds of London and Republic Vanguard Insurance Company (collectively, the

"D&O Insurers") filed a motion seeking relief from the automatic stay pursuant to 11 U.S.C. §

362 with respect to certain insurance policies issued to one of the Debtors, namely, Celsius

Network, Inc. ("Celsius Network") in the above-captioned case.   ("Motion," ECF Doc. # 2585.)

The relevant insurance policy is attached as Exhibit 1 to the Motion.

Shlomi Daniel Leon and Aliza Landes filed a joinder ("Joinder," ECF Doc. # 2760) to the

Motion.  The Official Committee of Unsecured Creditors (the "Committee") filed a limited

objection ("Committee Objection," ECF Doc. # 2839).  The Debtors also filed a limited

objection ("Debtor Objection," ECF Doc. # 2842).  An objection was filed by Víctor Ubierna de

las Heras ("Ubierna Objection," ECF Doc. # 2849).  The D&O Insurers filed a reply ("D&O

Insurer Reply," ECF Doc. # 2859).  Mr. Leon and Ms. Landes also filed a reply ("Leon Reply,"

ECF Doc. # 2873).

The Court held a hearing on the Motion on June 28, 2023.  For the reasons discussed

below, the Motion is **GRANTED** and the limitations proposed in the objections are **GRANTED**

**IN PART**.

# I.    BACKGROUND

## A.  The D&O Insurance Policies

### 1.   Policy Summary

The D&O Insurers issued the Policy[1] to Celsius Network before the Debtors filed for bankruptcy.  The Directors & Officers and Corporate Securities Liability Coverage Section (the "D&O Coverage Section") of the Policy contains three types of coverage under its insuring agreements.  (Policy, D&O Coverage Section at p.1 of 12.)

- Coverage A – Individual Insurance Coverage: covers a Loss incurred by Individual Insureds arising from Claims made against them if such Loss is not indemnified by the Company.

- Coverage B – Company Reimbursement Coverage: covers a Loss by the Company to the extent it indemnifies the Individual Insureds for covered Loss in connection with Claims made against Individual Insureds.

- Coverage C – Company Coverage: provides coverage for the Company for covered Loss resulting from Claims for covered Loss made against it.

(Motion ¶ 7.)

### 2.   Definitions of Covered Parties

Under the Policy, an Insured[2] refers to either of: (1) the Company; or (2) an Individual Insured.

The term Company is defined in the GTC Coverage Section of the Policy to mean, in pertinent part, the Named Insured, any Subsidiary, and the Named Insured or any Subsidiary as a debtor-in-possession under United States of America Bankruptcy law or similar legal statutes under foreign law.  (Policy, GTC Coverage Section at p.1 of 9.)  The Named Insured is Celsius Network.

---

[1]    The Policy is attached as Exhibit 1 to the Motion, and the Policy number is EFI1203088-00.  The coverage period for the Policy is from May 30, 2021 to May 30, 2022, extended to June 15, 2023 by Endorsement # 13.

[2]    Capitalized terms not otherwise defined herein are defined terms under the Policy.

An Individual Insured means any: (1) Employee; (2) Executive; or (3) Outside Entity Executive.  An Employee is defined as any past, present or future employee of the Company, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee.  An Executive is defined as:

1. any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, governor, general partner, managing general partner, venture partner, administrative general partner, principal, management committee member of a duly constituted committee, or member of the Board of Managers of a Company;

2. any past, present or future person in a duly elected or appointed position in a Company which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in paragraph 1. of this Definition; or

3. any past, present or future General Counsel, Chief Compliance Officer, or Risk Manager (or equivalent position) of the Named Insured.

(Policy, D&O Coverage Section at pp. 3–4 of 12.)

3.  <u>Covered Claims & Losses</u>

The D&O Coverage Section defines the term Loss as:

1. the amount that any Insured becomes legally obligated to pay in connection with any covered Claim, including, but not limited to: (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and (ii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages to the extent allowed by applicable law. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

2. Defense Costs . . .

(*Id.* at p. 4 of 12.)

4

A Claim is defined in pertinent part to mean:

1.  a written demand, other than a Derivative Demand, for monetary, nonmonetary or injunctive relief (including any request to toll or waive any statute of limitations and including any demand for mediation, arbitration or any other alternative dispute resolution process);

2.  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, nonmonetary or injunctive relief which is commenced by:

    (i)    service of a complaint or similar pleading;

    (ii)   return of an indictment, information or similar document (in the case of a criminal proceeding); or

    (iii)  receipt or filing of a notice of charges;

3.  a civil, criminal, administrative or regulatory investigation of an Individual Insured:

    (i)    once such Individual Insured is identified in writing by such investigating authority or enforcement body as a person against whom a proceeding described in subparagraph 2 of this Definition may be commenced; or

    (ii)   in the case of an investigation by the Securities and Exchange Commission ("SEC") or a similar state or foreign government authority, after:

           (a) the service of a subpoena upon such Individual Insured; or

           (b) the Individual Insured is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of laws by such Individual Insured;

(*Id.* at pp. 1–2 of 12.)

The D&O Coverage Section of the Policy defines a Securities Claim as a Claim made against any Insured:

1. alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

   (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a Company; or

   (ii) brought by a security holder of a Company with respect to such security holder's interest in securities of such Company; or

2. brought derivatively on behalf of a Company by a security holder of such Company.

(*Id.* at p.5 of 12.)

### 4. Order of Payments

Section VI.A of the D&O Coverage Section provides, in pertinent part, that the Insurers do not have any duty to defend a Claim, that an Insured shall defend and contest any Claim made against them and that the Insurer shall advance Defense Costs in excess of the applicable retention on behalf of the Insured prior to the final disposition of the Claim. (*Id.* at pp. 9–10 of 12).

Section X of the D&O Coverage Section contains an "Order of Payments" provision, which provides, in pertinent part, that in the event of Loss arising from any Claim for which payment is due under the provisions of this Coverage Section but which Loss, in the aggregate, exceeds the remaining available Limits of Liability applicable to this Coverage Section (including by virtue of the depletion of the Policy Aggregate Limit of Liability), then the Insurers shall first pay Loss under the Policy for which coverage is provided under Coverage A of this Coverage Section and that the "Financial Insolvency of any Company or any Individual Insured shall not relieve the Insurer of its obligations to prioritize payment of covered Loss under the Coverage Section pursuant to this Section X." (*Id.* at pp. 11–12 of 12).

### B.  Actions Necessitating Insurance Coverage

Since July 2022, Celsius Network and its subsidiaries, as well as numerous directors,

officers and employees of Celsius[3] have either: (a) been sued in court cases or in arbitration, (b)

received demand letters and/or emails, (c) received subpoenas, formal and/or informal requests

for documents and information or formal letters, and/or (d) received subpoenas or formal letters

announcing investigations and/or requests for documents or information in connection with

various investigations being conducted by various federal and state authorities as well as the

Chapter 11 Examiner in this case.  (Motion ¶ 4.)  Certain state authorities have also commenced

proceedings (e.g., orders to show cause why cease and desist orders should not be issued) and

foreign authorities have commenced investigations.  (*Id.*)  The D&O Insurers also list a number

of legal actions that have been commenced against Celsius and affiliated parties.  (*See id.*)

Since May 6, 2022, the D&O Insurers have received numerous notices seeking coverage

under the Policy on behalf of the directors, officers and certain employees of the Debtors in

connection with the lawsuits and investigations that are now pending, including multiple requests

from Individual Insureds requesting the payment of Defense Costs incurred in connection with

the aforementioned investigations, lawsuits and arbitration proceeding.  Although D&O Insurers

have reserved their rights to deny and/or limit coverage for these matters under the Policy, they

have agreed at this time to advance reasonable Defense Costs incurred by those Individual

Insureds that are potentially covered subject to its full reservation of rights under the Policy,

including those set forth in Section VI of the Policy.

---

[3]       Those individuals include Adrian Alisie, Amir Ayalon, Tal Bentov, Guillermo Bodnar, Rod Bolger, Ron
Deutsch, Chris Ferraro, Hanoch ("Nuke") Goldstein, Shiran Kleiderman, Jason Perman, Trunshedda Ramos, Alex
Mashinsky, Shlomi Daniel Leon, Jeremie Beaudry, Rodney Sunada-Wong, Kristine Meehan Mashinsky, Aliza
Landes, Roni Cohen-Pavon, Johannes Treutler, Asaf Iram, Dean Tappan, Harumi Urata-Thompson, David Barse
and Alan Jeffrey.  (Motion ¶ 4.)

### C.  Relief Requested

The D&O Insurers seek entry of an order granting relief from the stay, if applicable, for purposes of advancing reasonable and necessary Defense Costs incurred by Individual Insureds under the Policy in connection with the arbitration, pending lawsuits, and investigations, as well as additional matters that may arise in the future, subject to D&O Insurers' determination that such matters are potentially covered under the Policy.  (*Id.* ¶ 18.)

### D.  Joinder

Shlomi Daniel Leon and Aliza Landers entered a limited appearance to file this Joinder to the Motion to request (1) entry of an order granting relief from the automatic stay, to permit payments under the D&O insurance policy and (2) to join in the Motion filed by the D&O insurers.  (Joinder at 1–2.)  The movants are insureds under the D&O policy and have submitted their claims for reimbursement of their defense costs arising out of certain matters covered by the Policy.  (*Id.* ¶ 1.)

### E.  Limited Objections

The Committee and the Debtor have filed limited objections to the Motion.  The Committee argues that the Policy is a "wasting policy," meaning that any amount advanced to the Directors or Officers on account of their defense costs will directly reduce the amount of coverage available to the Debtors' estate under the Policy, and that such proceeds are property of the estate as a result.  (Committee Objection ¶ 14.)  Despite that position, neither the Committee nor the Debtor wholly oppose relief from the automatic stay, but argue that such relief should be subject to certain conditions.  (*Id.* ¶ 3; Debtor Objection ¶ 4.)

First, both objections request that any lift stay order impose reporting requirements in the form of quarterly updates.  Both objections request that such written quarterly updates include (1) the name of the Individual Insured who received advances and/or payments; (2) the nature of

the claim(s); (3) the dollar amount of the claim(s) submitted and the amount actually paid; and (4) the amount of liability coverage remaining under the policy which will be provided to the Debtors and Committee.  (Committee Objection ¶ 19; Debtor Objection ¶ 19.)  The Committee Objection further requests that the identity of counsel representing the Individual Insured (if applicable) be included in the quarterly update.  (Committee Objection ¶ 19.)  Both objections request that the Court require the D&O Insurers to seek further relief from this Court before utilizing Policy proceeds to pay any settlements.  (*Id.* ¶ 20; Debtor Objection ¶ 19.)

Second, both objections request that this Court require parties benefitting from relief from the stay to submit to the jurisdiction of this Court.  (Committee Objection ¶ 22; Debtor Objection ¶ 20.)  Specifically, the Committee Objection cites the Policy provision which provides an exclusion for any loss arising out of any "deliberate criminal or fraudulent act . . . if a final, non-appealable adjudication in any underlying proceedings establishes that such deliberate criminal or deliberate fraudulent act . . . was committed."  (Committee Objection ¶ 22.)  The objections note that the parties from whom they may ultimately need to recuperate advanced defense costs from may be outside the jurisdiction of the Court and the United States. (*Id.* ¶ 24; Debtor Objection ¶ 20.)  Both parties cite the Joinder filed by Mr. Leon and Ms. Landes as an example of why this provision is necessary, as both are seeking payment of defense costs, but do not live in the United States nor have they submitted to the jurisdiction of this Court.  (Committee Objection ¶ 24; Debtor Objection ¶ 20.)

Finally, both objections request that the Order require the D&O Insurers to evaluate all requests for coverage of defense costs submitted by individuals prior to June 15, 2023 before approving and paying any defenses costs to any Individual Insured.  (Committee Objection ¶ 21; Debtor Objection ¶ 21.)  If the aggregate amount of requested defense costs is below the Policy's

limit of liability ($1,500,000), then both objections agree that the D&O Insurers should be permitted to approve and pay the defense costs in its sole discretion. (Committee Objection ¶ 21; Debtor Objection ¶ 21.) However, if the aggregate amount of defense costs requested is equal to or greater than the Policy's limits of liability, both objections argue that coverage should then be apportioned on a pro rata basis. (Committee Objection ¶ 21; Debtor Objection ¶ 21.) Specifically, Debtors argue that in this case, the D&O Insurers should only be permitted to pay the defense costs of any Individual Insured in an amount equal to the lesser of (a) the amount of defense costs requested through and including August 31, 2023, and (b) the pro rata amount of the Policy's limited liability, such that no one Individual Insured is entitled to receive a greater percentage of the Policy than any other. (Debtor Objection ¶ 21.) The Committee Objection, in such a situation, argues that the D&O Insurers should only be permitted to pay the defense costs of any Individual Insured in an amount equal to the lesser of (a) the amount of defense costs requested as of the date of entry of this Court's order and (b) the pro rata amount of the Policy's limited liability, such that no one Individual Insured is entitled to receive a greater percentage of the Policy than any other. (Committee Objection ¶ 21.)

## F. The D&O Insurer Reply

In their Reply, the D&O Insurers agree to the imposition of reporting requirements as requested by the Committee and Debtors. (D&O Insurer Reply ¶ 7.) They also agree to seek further approval from the Court before making any settlement payments using Policy proceeds. (*Id.*) The D&O Insurers oppose the objectors' request that Individual Insureds explicitly consent to the jurisdiction of this Court "for all purposes." (*Id.* ¶ 9.) However, they are not opposed to the imposition of a requirement that Individual Insureds submit themselves to the jurisdiction of this Court with respect to the Policy only. (*Id.*) Lastly, the D&O Insurers object to the imposition of the pro rata allocation scheme requested by the limited objections. (*Id.* ¶ 10.)

They argue that (a) the Policy does not call for payment of defense costs to be apportioned on a pro rata basis, (b) the request is unsupported by any legal precedent, and (c) the selection of June 15, 2023 is an arbitrary date that may freeze out Individual Insureds who did not submit invoices prior to then.  (*Id.*)

## II.    <u>LEGAL STANDARD</u>

### A.  The Scope of the Automatic Stay

The commencement of a bankruptcy case imposes an automatic stay on "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ."  11 U.S.C. § 362(a)(3).  The Bankruptcy Code further provides that property of the estate includes "all legal or equitable interests of the debtors as of the commencement of the case."  11 U.S.C. § 541(a)(1).

### B.  Insurance Proceeds as Property of the Estate

"[I]t is well-settled that a debtor's liability insurance is considered property of the estate." *In re MF Global Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012).  "However, the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate."  *Id.* (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)). Courts that have addressed whether the proceeds of a liability insurance policy are property of the estate are guided by the language and scope of the specific policies at issue.  *See Downey*, 428 B.R. at 603; *In re Medex Reg'l Labs., LLC*, 314 B.R. 716, 720 (Bankr. E.D. Tenn. 2004) ("In making its determination, the court must analyze the facts of each particular case, focusing primarily upon the terms of the actual policy itself.") (internal quotation marks omitted); *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002) ("Whether the proceeds of a D&O

liability insurance policy is [sic] property of the estate must be analyzed in light of the facts of each case.").

When an insurance policy only provides direct coverage to a debtor, courts generally rule that the proceeds are property of the estate. *See In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2010). However, when an insurance policy provides exclusive coverage to directors and officers, courts have generally held that the proceeds are not property of the estate. *Id.* at 510; *see also La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1399–1401 (5th Cir. 1987) (holding that the debtor has no ownership interest in proceeds of an insurance policy where the obligation of the insurance company is only to the directors and officers).

In cases where liability insurance policies provide direct coverage to both directors and officers and debtors, courts have held that "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Downey*, 428 B.R. at 603 (citing *In re Allied Digital Techs. Corp.*, 306 B.R. at 512).

### C.  Lifting the Automatic Stay

Pursuant to section 362(d) of the Code, a party in interest can seek relief from the automatic stay. Section 362(d), in relevant part, provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

Although section 362(d)(1) explicitly identifies a lack of adequate protection as cause for stay relief, "there are other bases for a cause finding." 3 COLLIER ON BANKRUPTCY ¶ 362.07[3] (16th ed. 2023). The Bankruptcy Code does not define "cause," but bankruptcy courts have stated that "[c]ause is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re Project Orange Associates, LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (quoting *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)). Bankruptcy courts have discretion whether to lift the automatic stay on this basis. *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001) (citing *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir.1990)). The burden of proof is on the moving party to initially show cause, and then shifts to the debtor "for all issues other than the debtor's equity in the property." *Id*.; *see also In re Project Orange Associates*, 432 B.R. at 103 ("Once the moving party establishes a *prima facie* case for 'cause,' the burden shifts to the debtor to disprove its existence.").

In determining whether cause exists, courts in the Second Circuit analyze the following factors:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interest of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's succession to other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc.*, 907 F.2d at 1286; *see also In re N.Y. Med. Grp., PC*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

Not all of the *Sonnax* factors are relevant in every case; again, "cause" is a flexible concept that must be determined on a case-by-case basis. *See Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2nd Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2nd Cir. 1999)).

### III.    **DISCUSSION**

The issue before the Court is whether cause exists to lift the automatic stay to allow Directors and Officers access to D&O Policy proceeds to fund their defenses. The Court holds that with respect to the D&O Policy, cause exists to lift the stay to allow the D&O Insurers to pay Policy proceeds to the Individual Insureds. The Court does not decide one way or another whether the proceeds are property of the estate, because even if they are, the D&O Insurers are still entitled to the relief they request. In lifting the stay, the Court also adopts certain of the conditions argued for by the Debtor and Committee in their limited objections, while rejecting others.

#### A.  **Cause Exists to Lift the Automatic Stay to Allow Access to Policy Proceeds**

The D&O Insurers argue that even if the Policy proceeds are property of the estate, there is cause to lift the stay to advance defense costs to Individual Insureds under section 362(d)(1).

Specifically, the D&O Insurers point to decisions in this district and others in which courts, including this Court, have lifted the automatic stay to permit the advancement of defense costs to a debtor's directors and officers even though the insurance policies also provided direct coverage to the co-insured debtor. *See In re MF Global Holdings Ltd.*, 469 B.R. 177, 191–192

(Bankr. S.D.N.Y. 2012) (granting relief from stay in order to permit use of Specialty Policies to advance defense costs); *In re Adelphia Commc'ns Corp.*, 285 B.R. 580, 598 (Bankr. S.D.N.Y. 2002) (granting relief from stay in order to permit primary insurer to advance defense costs), *vacated on other grounds*, 298 B.R. 49 (S.D.N.Y. 2003); *Downey*, 428 B.R. 595 (Bankr. D. Del. 2010) (granting relief from stay for cause in order to permit use of D&O policy proceeds for payment of defense costs).[4]

Under these authorities, the D&O Insurers argue that the Court should consider the relative harm to interested parties if the stay is not lifted. *See In re Adelphia Commc'ns Corp.*, 285 B.R. at 594 (considering multiple factors, including the impact of the stay on the parties and the balance of harms). The D&O Insurers argue that the Individual Insureds have the greatest need under the policy, given that the policy itself reflects that it is primarily geared toward protecting the Debtors' directors, officers, and employees. *In re MF Global*, 469 B.R. at 192 ("D&O policies are obtained for the protection of individual directors and officers . . . . In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.") (citing *Ochs v. Lipson (In re First Cent. Financial Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)).

More importantly, however, the D&O Insurers highlight that the "Order of Payments" section of the Policy prioritizes paying the defense costs for the Individual Insureds before any payments made to the Debtor. This fact was critical to the decision to lift the stay in *MF Global*, where this Court noted that imposition of the stay would effectively rewrite the priority provision

---

[4]    The D&O Insurers do not undertake an independent analysis of the *Sonnax* factors in the Motion, and instead focus on these narrower precedents regarding lift stays for shared insurance proceeds; these cited in-circuit cases did, however, apply *Sonnax* in finding cause to the lift the stay. *See In re MF Global*, 469 B.R. at 191–192; *In re Adelphia Commc'ns Corp.*, 285 B.R. at 598.

out of the insurance policy in question that covered the debtor and non-debtor, which goes beyond the reach of section 541 of the Code. *See In re MF Global*, 469 B.R. at 193.

This Court also encountered the same issue recently in *In re SVB Financial Group*, and the Court granted a lift stay motion to allow certain individuals to access insurance proceeds under the debtor's D&O Insurance. *See* 650 B.R. 790, 800 (Bankr. S.D.N.Y. 2023). That policy had similar provisions that prioritized payments to the individuals seeking relief from the stay over the debtor, which allowed the Court to conclude that there was cause to lift the stay under section 362. *See id.*

Here, the Court finds that cause exists to lift the stay as well, subject to certain conditions discussed below. The relevant provisions of the Policy are analogous to the policy considered in *In re SVB Financial Group*, and the stay is lifted here for effectively all of the same reasons. *See id.* at 800–802 As discussed above, the D&O Insurers have shown that there are pending actions that warrant the immediate use of insurance proceeds for defense costs of Individual Insureds. Importantly, because of the priority provision in the policy in favor of the Individual Insureds, the Individual Insureds are only using proceeds that they are already contractually entitled to in the first instance. The Debtor and Committee do not oppose lifting the stay as a general matter, and no other parties have shown that there would be any harm posed to the Debtor by the use of the insurance proceeds as contemplated in the Policy that would warrant denial of relief.[5]

---

[5] The Ubierna Objection's sole argument is that the proceeds are property of the estate and should not be paid to the Individual Insureds. It does not address the priority of payments provision, which is critical to the analysis here, and for that reason, the objection lacks merit and is OVERRULED.

**B. The Court Adopts the Limited Objections Proposed Requirements of Reporting, Settlement Approval, and Consent to Jurisdiction, but Declines to Impose a Pro Rata Coverage Allocation Scheme**

In their limited objections, the Committee and the Debtor do not oppose relief from the automatic stay, but request the Court grant such relief subject to certain conditions. (Committee Objection ¶ 3; Debtor Objection ¶ 4.) Both parties request this Court require (1) certain reporting requirements, (2) Individual Insureds to consent to the Jurisdiction of this Court for the purposes of the Insurance Policy, and (3) that the total amount distributed to the Individual Insureds should be distributed pro rata, if the requests for reimbursement under the Policy exceed the total amount of the policy. The first two requirements (quarterly reporting and consent to jurisdiction) are reasonable and have sufficient legal bases, and the Court adopts them. The aggregate quarterly reporting requirements align with the limited conditions adopted by this Court recently in similar cases. *See In re SVB Financial Group*, 650 B.R. at 802. Further, considering certain clauses in the Policy, the requirement that parties consent to the jurisdiction of this Court for purposes of the Policy, but not for all purposes, is consistent with the Court's legal justification for lifting the stay in the first place.

The Court thus adopts two out of the three lift stay conditions proposed by the Committee and the Debtor. The Court, for reasons discussed in further detail below, declines to adopt a pro rata coverage scheme condition.

1. Reporting Requirements

In their limited objections, the Committee and Debtor request that any order lifting the stay include certain reporting requirements as well as require the Court's approval should the D&O Insurers seek to utilize any policy proceeds to pay any settlements of claims. Neither the D&O Insurer Reply nor the Leon Reply oppose the reporting requirements. The Court finds that these requirements are reasonable and adopts them in full.

The reporting requirements requested here are in the form of quarterly updates.  Both limited objections request that such written quarterly updates include: (1) the name of the Individual Insured who received advances and/or payments; (2) the nature of the claim(s); (3) the dollar amount of the claim(s) submitted and the amount actually paid; and (4) the amount of liability coverage remaining under the policy which will be provided to the Debtors and Committee.  (Committee Objection ¶ 19; Debtor Objection ¶ 19.)  The Committee Objection further requests that the identity of counsel representing the Individual Insured (if applicable) be included in the quarterly update.  (Committee Objection ¶ 19.)  Both objections request that the Court require the D&O Insurers to seek further relief from this Court before utilizing Policy proceeds to pay any settlements.  (*Id.* ¶ 20; Debtor Objection ¶ 19.)

The reporting requirements requested here are similar to the requirements this Court imposed in *SVB Financial Group*.  *See* 650 B.R. at 802.  There, the Court required quarterly aggregate reporting of fees and expenses paid by the D&O policies as well as Court approval before any settlement could be paid out using insurance proceeds; the Court explained that such requirements are reasonable limitations on stay relief and common in large Chapter 11 cases.  *Id.* at 802.  Here, the requested requirements of (i) reporting the dollar amount of the claim(s) submitted and amount actually paid and (ii) the requirement that the D&O Insurers seek further relief from the Court before utilizing policy proceeds to pay any settlements fall within the scope of limitations already approved by this Court in *SVB Financial Group*.  The further reporting requirements requested including the name of the Individual Insured, the nature of the claim, the amount of coverage remaining under the policy, and the identity of counsel representing the Individual Insured are also reasonable and unopposed by the D&O Insurer.

The Court adopts the proposed reporting requirements in full.

    2.  <u>The Court Requires Individual Insureds to Consent to the Jurisdiction of this
Court with Respect to the Policy</u>

Both limited objections request that the Court require Individual Insureds to explicitly

consent to the jurisdiction of this Court before any payments of proceeds are made under the

policy to such individuals.  (Debtor Objection ¶ 20; Committee Objection ¶ 22.)  The D&O

Insurer Reply opposes the Debtor and Committee's request regarding the submission of

jurisdiction to this Court "for all purposes," but does *not* oppose the request to the extent that it

requires the Individual Insureds to subject themselves to jurisdiction for purposes of the Policy.

At the hearing on this matter, the Debtor and Committee clarified that they only actually seek to

establish jurisdiction for purposes of the Policy.  Put simply, there is no longer a dispute between

the D&O Insurers and the Debtor and Committee on this point.[6]  The Leon Reply, however, still

opposed this limitation.  As further discussed below, the limitation agreed upon by the D&O

Insurers, Debtor, and Committee is warranted and the Court adopts it here.

The Debtor and Committee argue that while certain Individual Insureds may be entitled

to insurance proceeds under the Policy as of now, some of those proceeds may become

recoverable by the D&O Insurers.  That is because the policy provides an exclusion for any loss

arising out of any "deliberate criminal or fraudulent act . . . if a final, non-appealable

adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate

fraudulent act . . . was committed."  (Policy, D&O Coverage Section at p.6 of 12.)  Specifically,

the Debtor Objection contends that given the nature of some of the claims submitted to the D&O

Insurers, the Debtors believe that there may be a higher than usual probability for the need to

claw back some of the policy proceeds.  (Debtor Objection ¶ 21.)  Given the facts and allegations

---

[6]    The proposed order submitted to the Court granting the relief sought here should make this distinction
clear.

present in these cases, it is reasonable to believe that enforcement of the above clause may become necessary.

The subsequent problem that the Debtors and Committee point to is that they believe certain recipients who receive insurance proceeds may later contest the Court's basis for jurisdiction in the event that policy proceeds need to be clawed back.  Both parties point to the Joinder filed by Mr. Leon and Ms. Landes as illustrative.  Leon and Landes have come before the Court seeking relief from the automatic stay for the advancement of defense funds, yet have entered only a "limited appearance" solely for the purpose of filing the Joinder.  (Joinder at 1.) The Debtor and Committee observe that such individuals have not explicitly consented to the jurisdiction of this Court, and live in Israel, outside the jurisdiction of this Court and the United States.  (Committee Objection ¶ 24.)

In opposing the limitation, the Leon Reply first argues that the Policy itself has no such conditions on payment, and the Committee has not cited any authority for the proposition that a director or officer must submit to the jurisdiction of a Bankruptcy Court in order to receive the reimbursement of defense costs under a D&O policy.  (Leon Reply ¶ 3.)  This is a fair point— neither the Debtor nor the Committee cite to any precedent where similar restrictions have been imposed on recipients of insurance proceeds pursuant to a lift stay order.

Nevertheless, the Court concludes that it is justified in requiring any party receiving insurance proceeds to consent to jurisdiction with respect to the Policy.  The entire basis for lifting the stay here is that proceeds belonging to the estate will not be affected;  tailoring this relief to protect any proceeds that redound to the estate in the future is consistent with the Court's broader ability to grant relief from the automatic stay in the first place.

Here, the Individual Insureds' only entitlement to the insurance proceeds is rooted in the priority provisions, by way of this Court lifting the automatic stay.  However, the scenario contemplated by the Debtor and Committee is one in which the Individual Insureds would have *no* entitlement to proceeds, let alone a priority entitlement.  And in a scenario where Coverage A proceeds are exhausted, any proceeds used by Individual Insureds under Coverage A that are subject to claw back due to fraud or other wrongdoing would otherwise be going to Coverage B or C (the coverage sides that provide direct protection to Celsius Network).[7]  At that point, the priority provisions would be completely irrelevant in providing the Individual Insureds with an entitlement to the proceeds over the Debtors, and there would likely be strong arguments that such proceeds are property of the estate.  *See, e.g.*, *In re Roman Cath. Diocese of Rockville Ctr., New York*, No. 20-12345 (MG), 2023 WL 3750442, at *16 (Bankr. S.D.N.Y. June 1, 2023) (recognizing that proceeds of insurance policy shared between debtor and non-debtor were property of the estate where there was no priority of payments provision).  Thus, the limitations on relief proposed by the Committee specifically focus on a scenario in which parties like Mr. Leon would have no entitlement to the proceeds over the estate.  And while the requested limitations may be somewhat novel, the Leon Reply completely lacks any substantive legal basis for opposing the limitations in this scenario.

As such, the remainder of the Leon Reply contends that it is unnecessary and premature to impose limitations based on this future scenario contemplated by the Committee and Debtor.

With respect to Mr. Leon himself, the Leon Reply argues that the relief is unnecessary because the Committee has no basis to claim that Mr. Leon may assert a personal jurisdiction

---

[7]      This assumes that the Committee's description of how the proceeds would be used in this scenario is correct.  (*See* Committee Objection ¶ 23.)  This explanation of the policy has not been contested by any party.

defense in the future.  (Leon Reply ¶ 3.)  The reply observes that Mr. Leon has filed a Proof of

Claim in this matter and is now seeking relief from the Court through this Motion.  (*Id.*)  The

Court accepts that Mr. Leon may already be subject to the Court's jurisdiction and has

represented that he will not contest it, at least for certain purposes.  The Debtor and Committee's

arguments do not pertain solely to Mr. Leon, however.  It is clear that the Debtor and Committee

pose the jurisdictional concern with respect to any Individual Insured that may attempt to contest

jurisdiction.[8]

The Leon Reply also claims that the relief requested here is premature, even if he—or

any other party for that matter—were to contest jurisdiction.  The Leon Reply argues that the

claw back argument assumes that if Mr. Leon were found to have committed criminal or

fraudulent acts, the D&O Insurers would take no action and the Committee would need to step in

to recover Policy proceeds as property of the estate—which would require adjudication of issues

that are not ripe here.  (*Id.* ¶ 4.)

The simple fact here, however, is that every Individual Insured's ability to obtain

insurance proceeds rests on this Court lifting the stay.  This Court's decision to lift the stay is

premised on the notion that doing so will not impact property of the estate.  To the extent that

this Court's decision may allow parties to obtain proceeds that may later become property of the

estate, the Court has the ability to place prospective limitations on its own relief.  *See SVB

Financial Group*, 650 B.R. at 802 (imposing conditions on the insured's access to estate, despite

the fact that there was a priority of payment provision).

---

[8]        Notably, the Joinder and Leon Reply were filed on behalf of both Ms. Landes and Mr. Leon, but the Leon
Reply only makes these arguments with respect to Mr. Leon.

This condition is especially warranted here where the amount of Coverage A proceeds available is relatively small, and the Court can easily envision a situation in which those proceeds are exhausted, the priority provisions are no longer at issue, and any proceeds subject to clawback would otherwise be going to the estate. For that reason, the Leon Reply's arguments that the issues here are premature and should not be accounted for in the lift stay relief lack merit.

For these reasons, the Court will require that any Individual Insureds receiving insurance proceeds pursuant to this Court's decision consent to the jurisdiction of this Court, with respect to the Policy.

### 3.   The Court Declines to Impose the Pro Rata Coverage Allocation Scheme

Both limited objections request the Court impose a coverage allocation scheme for equal access to the Policy proceeds to avoid a "run on the bank" whereby a few parties rush to exhaust the Policy to the exclusion of other Individual Insureds. Both objections request that the D&O Insurers evaluate all requests for defense costs submitted to the D&O Insurers prior to June 15, 2023 before approving and paying any costs. Both the D&O Insurer Reply and the Leon Reply object to this pro rata coverage allocation scheme. For reasons discussed below, the Court denies this requested form of relief.

Under this scheme, if the aggregate amount of requested defense costs is less than the Policy's limit of liability, the D&O Insurer would be permitted to approve and pay defense costs at its sole discretion. However, if the aggregate amount of defense costs requested is equal to or greater than the Policy's limits of liability, both objections argue that coverage should then be apportioned on a pro rata basis. (Committee Objection ¶ 21; Debtor Objection ¶ 21.) Specifically, Debtors argue that in this case, the D&O Insurers should only be permitted to pay the defense costs of any Individual Insured in an amount equal to the lesser of (a) the amount of

defense costs requested through and including August 31, 2023, and (b) the pro rata amount of
the Policy's limited liability, such that no one Individual Insured is entitled to receive a greater
percentage of the Policy than any other.  (Debtor Objection ¶ 21.)  The Committee Objection, in
such a situation, argues that the D&O Insurers should only be permitted to pay the defense costs
of any Individual Insured in an amount equal to the lesser of (a) the amount of defense costs
requested as of the date of entry of this Court's order and (b) the pro rata amount of the Policy's
limited liability, such that no one Individual Insured is entitled to receive a greater percentage of
the Policy than any other.  (Committee Objection ¶ 21.)

Neither the Debtor nor the Committee cite to any precedent that would support this type
of condition on a lift stay motion.  This is unsurprising, as the relief requested does not implicate
the Court's basis for lifting the stay whatsoever.

As discussed above, whether the stay should be lifted here depends on an analysis that
compares the rights of non-debtor insureds to the debtor insured.  The basis for lifting the stay
here is that the non-debtor insureds are entitled to access insurance proceeds before the debtor
insureds.  However, the Debtor and the Committee ask the Court to go a step beyond that
inquiry, and to impose conditions for monitoring and payment of proceeds as between the non-
debtor insureds themselves.  This dispute does not implicate the scope of the automatic stay as
between the debtor and non-debtors, and as a result, there is no ostensible basis for granting this
form of relief in the context of a lift stay motion.  The Debtor and Committee, in effect, seek to
impose conditions that are not included in the terms of the insurance policies; they provide no
legal basis for the Court to impose such requirements.  Because of the quarterly reporting
requirements and the need for Court approval for a settlement payment with Policy proceeds,
there is enough oversight to prevent wasteful or unequitable depletion of Policy funds.

As a result, the Court **DENIES** this requested form of relief.

## IV.    <u>CONCLUSION</u>

For the reasons discussed herein, the Court **GRANTS** the Motion, and adopts the limitations requested by the Debtor and Committee to the extent set forth herein.  Within seven (7) days from the date of this Opinion, counsel for the D&O Insurers, Mr. Leon and Ms. Landes, the Debtor, and the Committee shall confer and submit any order required to grant the relief requested in the Motion consistent with the terms of this Opinion.

Dated:    July 10, 2023
          New York, New York

                              _Martin Glenn_
                           MARTIN GLENN
                  Chief United States Bankruptcy Judge