Hearing Date: July 18, 2023
Hearing Time: 10:00 AM

Susan Adler, Esq
630 Third Avenue
New York, New York 10017
212-867-9595
Email: nycsa@aol.com
Attorney for Andersen Invest Luxembourg S.A SPF,
J.R. Investment Trust and David Hoffman

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF ANDERSEN INVEST
LUXEMBOURG S.A. SPF, J.R. INVESTMENT TRUST
AND DAVID HOFFMAN TO THE PROPOSED SETTLEMENT**

**ANDERSEN INVEST LUXEMBOURG S.A. SPF, J.R. INVESTMENT TRUST AND DAVID HOFFMAN** (referred to hereto as "Ordinary Series B Shareholders") by and through their attorney, Susan Adler, Esq. hereby file this limited objection (the "Objection") to the Joint Motion for Entry of Order (I) approving the settlement by and among the Debtors, the Committee and the Initial Consenting Series B Preferred Holders and Granting Related Relief (ECF Doc. #2899; the "Motion") and respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC(7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

**LIMITED OBJECTION**

On June 27, 2023, the Debtors, the Committee, Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP and CDP Investissements Inc. (collectively, the "Initial Consenting Series B Holders") filed the Motion seeking approval of a proposed settlement agreement (the "Settlement Agreement"). The Settlement Agreement provides that the Debtors will pay $25 million (the "Settlement Payment") to resolve the claims of the Initial Consenting Series B Holders and other Series B holders who elect to opt into the settlement.

Of the $25 million, $24 million will be distributed to the Initial Consenting Series B Holders. That payment is based on the following statement: "[t]he Parties agree that (a) the Initial Consenting Series B Preferred Holders shall receive, in the aggregate, $24,000,000.00 of the Settlement Funds on account of the fees and expenses incurred by the Initial Consenting Series B Preferred Holders in connection with the Series B Matters and the Chapter 11 Cases." There is no Declaration or other admissible evidence that has been filed that reflects that the actual fees and expenses of the Initial Series B Preferred Holders was $24 million.[2] Accordingly, the Ordinary Series B Holders object to the Motion because of the lack of transparency concerning the actual amount of the fees and expenses incurred by the Initial Consenting Series B Holders.

The remaining $1 million will be distributed to Series B Holders *pro rata* who elect to opt into the settlement. It is unclear from the Settlement Agreement whether the Initial Consenting Series B Preferred Holders will receive a *pro rata* share of the $1 million (in addition

---

[2] The Motion references the Initial Consenting Preferred Holders' motion to appoint a preferred Equity Committee as part of their efforts and expenses. It should be noted that one of the Ordinary Holders, Andersen Invest Luxembourg S.A SPF also joined in that motion and incurred expenses. *See In re Celsius Network, LLC*, 645 B.R. 165 (Bankr. S.D.N.Y 2022).

to the $24 million being paid on account of fees and expenses).

Assuming that the $24 million does not reflect the actual expenses and fees of the Initial Consenting Series B Holders, the Court will need to determine whether the recovery is disproportionately large. In In re Cosmoledo, LLC., 2022 Bankr. LEXIS 1137 (Bankr S.D.N.Y 2022), the Bankruptcy Court of this District found that although "this is a fair and reasonable resolution of this matter and complies with all of the relevant criteria for approval of a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure" the Court required certain modifications and information prior to approval. Significantly, the Court did not approve an incentive fee for the class representative because there were no special circumstances justifying a service award in this case, and they particularly did not justify an award that would provide a drastically disproportionate recovery that was more than 2,000 times greater than the recoveries of other class members.

In Cosmoledo, the attorneys for the class provided a supplemental declaration estimating the time spent (although some time was not based on actual contemporaneous time records). In the instant case, there are no declarations. Without more, we do not know whether there is an incentive fee and, if so, in what amount to determine whether there is a disproportionately large recovery to the Initial Consenting Series B Preferred Holders.

The Cosmoledo Court stated that although many courts have approved "incentive fees," "it also appears that most of the courts who have approved such awards have done so without objection and without making any apparent ruling at all as to the authority to approve such payments. *See Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013)("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn — present more by inattention than by design.") Indeed, some

3

of the reported "decisions" on this subject actually appear to be just copies of orders that were proposed by class counsel and that were entered without modification."

The Cosmoledo Court described "incentive awards" as follows:

Incentive awards in the worst cases can act as invitations for class representatives to approve deals that ensure the class representatives' own recoveries while possibly leaving others behind. *See, e.g., Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 720 (E.D.N.Y. 1989)("If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.") That potential incentive is the opposite of the incentive that a class representative is supposed to have in litigating a case or in negotiating a settlement. The temptation can be especially strong in a case where recoveries are likely to be very low, and where the proposed incentive fee is likely to produce a recovery by the class representative that will be disproportionate when compared to what other members will receive." *Id.* at 16-17

In the instant case where the Settlement Agreement provides that $24 million will be paid to the Initial Class B settling parties with the remainder to be distributed to the other Series B holders on a *pro rata* basis, where there is no evidence that demonstrates the actual amount of attorneys' fees and other expenses that were incurred, where there is confusing information concerning the amount of the proposed distribution to the Series B holders, the Court should require that these issues be addressed prior to determining whether the proposed settlement should be approved under Rule 9019. The lack of this information directly impacts whether the fourth Iridium factor is satisfied ("whether other parties in interest affirmatively support the proposed settlement")

4

## CONCLUSION

**WHEREFORE,** the Ordinary Series B Holders respectfully requests that this Court require the Movants to provide additional disclosures to address the issues noted above prior to approving the Settlement Agreement and grant such other relief as may just and appropriate.

Dated: New York, New York
July 11, 2023

/s/ **Susan Adler**
Susan Adler, Esq
630 Third Avenue
New York, New York 10017
(212) 867-9595
Email nycsa@aol.com