Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC,

8

9             Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY  10004

15

16                    June 6, 2023

17                    3:00 PM

18

19

20

21    B E F O R E :

22    HON MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  DEIRDRA AND KAREN

1    HEARING re Discovery Conference Conducted Using Zoom for

2    Government.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

Page 3

```
 1   A P P E A R A N C E S :

 2

 3   KIRKLAND & ELLIS LLP

 4        Attorneys for the Debtor

 5        300 N La Salle Street

 6        Chicago, IL 60654

 7

 8   BY:  T.J. MCCARRICK

 9        GRACE BRIER

10        JUDSON BROWN

11

12   UNITED STATES DEPARTMENT OF JUSTICE

13        Attorneys for the U.S. Trustee

14        201 Varick Street

15        New York, NY 10014

16

17   BY:  SHARA CORNELL

18        MARK BREW

19

20

21

22

23

24

25
```

```
 1   MILBANK LLP

 2        Attorneys for Community First Investors Group of the

 3        Series B Preferred Holders

 4        55 Hudson Yards

 5        New York, NY 10001

 6

 7   BY:  KATHERINE FELL

 8        ATARA MILLER

 9        ANDREW M. LEBLANC

10        CALIN T. ST. HENRY

11        MELANIE WESTOVER YANEZ

12

13   JONES DAY

14        Attorneys for CDP Investments, Inc.

15        555 South Flower Street, 50th Floor

16        Los Angeles, CA 90071

17

18   BY:  JOSHUA MESTER

19

20   VENABLE, LLP

21        Attorneys for Ignat Tuganov

22        151 West 42nd Street

23        New York, NY 10036

24

25   BY:  JEFFREY SABIN
```

Page 5

1

2    MCCARTER ENGLISH, LLP

3         Attorneys for Ad Hoc Group of Borrowers

4         245 Park Avenue

5         New York, NY 10167

6

7    BY:  DAVID ADLER

8

9    SELENDY GAY ELSBERG PLLC

10         Attorneys The Official Committee of Unsecured Creditors

11         1290 Avenue of the Americas

12         New York, NY 10104

13

14    BY:  TEMIDAYO AGANGA-WILLIAMS

15         CLAIRE O'BRIEN

16

17    OFFIT KURMAN

18         Attorneys for Ad Hoc Group of Earn Account Holders

19         300 East Lombard Street, Suite 2010

20         Baltimore, MD 21202

21

22    BY:  JOYCE A. KUHNS

23

24

25

Page 6

1    WHITE & CASE LLP

2        Attorneys for Official Committee of Unsecured Creditors

3        555 South Flower Street, Suite 2700

4        Los Angeles, CA 90071

5

6    BY:  SAMUEL P. HERSHEY

7

8    TEXAS OFFICE OF ATTORNEY GENERAL

9        Attorneys for Texas SSB, DOB

10       PO Box 12548

11       Austin, TX 78711-2548

12   BY:  JAMES I. GLASSER

13

14   REGINA OSBORNE, Pro Se Creditor

15

16   DANIEL FRISHBERG, Pro Se Creditor

17

18   ALSO PRESENT:

19   RICKIE CHANG

20   MIA COOPER

21   KAREN R. CORDRY

22   SEAN T. FLYNN

23   BRADLEY GIARDIELLO

24   MIRA HAQQANI

25   JOSEPH LEHRFELD

1   JONATHAN RODRIGUEZ

2   ABIGAIL RYAN

3   WILLIAM D. SCHROEDER

4   TAK YEUNG

5   TANZILA ZOMO

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  All right, good afternoon, everyone.

3     This is Judge Glenn.  We're here in Celsius with respect to

4     a discovery dispute.  Who's going to argue for the Debtor?

5              MR. MCCARRICK:  That's me, Your Honor.  TJ

6     McCarrick, Kirkland & Ellis, on behalf of the Debtors.

7              THE COURT:  Okay.  Please go ahead.

8              MR. MCCARRICK:  Thank you, Your Honor.  Good

9     afternoon.  Just to level-set to give Your Honor some

10    background context for where we are in these proceedings,

11    we're in the middle of discovery on three related items.

12    The intercompany claims estimation motion, the substantive

13    consolidation motion, and the fraudulent conveyance action.

14              The deadline for substantial completion of

15    production of documents was on May 31st, and that's followed

16    by a two-week deposition window, which ends on June 15th.

17    The Series B Holders have known that for over a month after

18    Your Honor entered the scheduling order governing these

19    three actions.

20              After reviewing certain documents in the Series B

21    Holders' written interrogatory responses, which identified

22    33 individuals with knowledge of relevant issues, the

23    Debtors identified 13 current employees for depositions on

24    May 31st.  From the WestCap side of the house, we identified

25    Laurence Tosi, Alex Goodman, Larry Katz, Brian Reinken, Adi

1    Hemrajani, Jeff Mullen and Sharon Khoo.  Subsequently, we've

2    substituted Ms. Khoo and requested a different opponent,

3    Daphne Tong.

4         On the CDPQ side of the house, we've requested

5    depositions of Mathieu Provost, Thomas Birch, Georges Azzi,

6    Alexander Guyot Desjardins, and Jonathan Gagnon.  The Series

7    B Holders have only been willing to make four of those

8    individuals available.  They've only been willing to make

9    Mr. Tosi, Mr. Goodman, Mr. Provost and Mr. Birch available.

10   And they have refused to offer even dates for anyone else.

11   So we're here in an all or nothing position.

12        Our view is that the nine additional deponents

13   have relevant and material knowledge, and I can give Your

14   Honor just some very quick background on what that knowledge

15   is.  Based on their responses to Interrogatory Number 1,

16   which asked whether who of the CDPQ and WestCap individuals

17   had material knowledge of WestCap's and CDPQ's investment in

18   Celsius, including the due diligence process, they

19   identified in addition to the four individuals that they

20   have offered, Mr. Hemrajani, Mr. Katz, Mr. (indiscernible)

21   Mr. Gagnon, and Mr. Guyot Dejardins.

22        In response to Interrogatory Number 6, for

23   example, which asked for who had material knowledge or

24   access to Celsius materials, including financial statements

25   and the like, they identified Mr. Katz, Mr. Azzi, Mr.

Page 10

1    (indiscernible), Mr. Gagnon, and again, Mr. Guyot Dejardins.

2           The documents also support that these individuals

3    have unique and relevant knowledge.  Mr. Tosi, Mr. Goodman,

4    Mr. Provost and Mr. Birch are not on all emails relevant to

5    this case, and in fact, they're not even on some of the most

6    relevant and I think most interesting emails.

7           I want to tick through very briefly, based on the

8    Series B Holders submission an hour ago, their excuses for

9    why they don't think they should have to offer these

10   deponents.  The first is that the depositions would be

11   entirely duplicative or cumulative.  When they had told that

12   to us, we had asked the Series B Holders, what did you do to

13   confirm that these individuals had only duplicative or only

14   cumulative knowledge, because we wanted to give them the

15   benefit of the doubt based on the documents we saw that was

16   not accurate.  But we wanted to understand what process the

17   Series B Holders had undertaken in order to assure

18   themselves and give us comfort that they weren't just trying

19   to hide deponents they didn't wish to be deposed.  They have

20   never responded to that request.  They still haven't

21   responded to that request as of today.

22          I think the reason is obvious.  And if we just

23   take one example from one of the two groups, Mr. Katz, from

24   WestCap.  Mr. Katz from WestCap was identified to the Series

25   B investors as the individual who is leading due diligence

Page 11

```
1    along with Deloitte and working on Celsius's Financial

2    systems.  He is the guy.  That's just providing you one

3    example.  We could provide you additional documents at a

4    later date if Your Honor would -- be happy to.  And I'm

5    happy to tick through all the individuals, but that's just

6    to give you one example.

7              The second excuse that the Series B Holders

8    deployed for the first time about an hour ago was the 10-

9    deposition limit from the Federal Rules of Civil Procedure.

10   They have never raised that to us before, and at the end of

11   the day, Your Honor, it's a red herring.  What we're arguing

12   over here isn't the difference between 10 and 13

13   depositions.  They haven't even been willing to move off of

14   four, which is the reason that we contacted Your Honor in

15   the first place.

16             I would note that between us and the UCC, who has

17   also cross-noticed these individuals, we think we're going

18   to get to that 13 number anyway, or would be able to,

19   between the two groups here, because the UCC is going to

20   have to be able to notice up to 10 depositions themselves.

21   But I'll let them speak to that to the extent that they

22   want.

23             The last argument or excuse that the UC -- excuse

24   me -- that the Series B Holders make is undue burden.  And

25   frankly, Your Honor, that one is frivolous.  There are
```

Page 12

1  hundreds of millions of dollars at stake that the Series B

2  Holders are seeking to carve out of the estate for their own

3  benefit.  There are two parties who are represented by

4  global law firms, Milbank and Jones Day, with almost double

5  digits of lawyers and almost every discovery correspondence

6  we have.

7          We are also -- the Debtors are not asking for

8  anything that we aren't willing to do.  The Series B Holders

9  have requested that the Debtors -- and we are going to put

10  up by the end of the discovery period the following.  Mr.

11  Ferraro is going to be deposed on June 12th.  Mr.

12  (indiscernible) going to be deposed on the 13th.  Mr.

13  (indiscernible) has been offered on the 14th.  Mr.

14  Blonstein, we're working on additional deposition time for.

15  We're giving them a 30(b)(6) deposition of CNL.  We're

16  giving them a 30(b)(6) deposition of LLC.  We're working to

17  get dates for Mr. (indiscernible), and we're giving him the

18  opportunity to cross notice any depositions that the UCC

19  had, which takes us to at least sitting here right now about

20  eight.

21          So the notion that WestCap or CDPQ each couldn't

22  offer at least seven a pop is a little bit much for the

23  Debtors to take.

24          THE COURT:  Am I correct that each of the

25  individuals that you wish to depose has been identified in

Page 13

1      their interrogatory answers?

2              MR. MCCARRICK:  Your Honor, the answer would be

3      there's two who have not.  It's 11 of the 13 total have been

4      deposed.  Off the top of my head, I don't remember exactly

5      which two were not.  But 11 out of the 13 were identified as

6      individuals either with knowledge or material knowledge.  It

7      is at least the phrasing that the requests were issued in.

8              The last thing that I would say, Your Honor, is

9      that they made a point about the case law that we had cited,

10     and this may just be for another day if we get there.  They

11     had noted that the case law we cited was post-dated by the

12     proportionality amendments to the Federal Rules of Civil

13     Procedure.  I just did a quick check before --

14             THE COURT:  There's too much at stake in this

15     matter, in my view, respectfully, to believe that the

16     proportionality requirement is an impediment to taking

17     depositions that otherwise should be taken.

18             MR. MCCARRICK:  Your Honor, the Debtors entirely

19     agree.  And just to give you comfort, all of the cases that

20     we cited have been cited with approval and compelling

21     depositions after 2015, just based on a quick check of

22     citing references.

23             With that, the Debtors -- we're happy to answer

24     any questions that you have, but we're also happy to respond

25     to whatever the --

1          THE COURT:  Yeah, my other question would be, to

2     come back to this point, who are the two witnesses that you

3     wish to depose that were not identified in their

4     interrogatory answers?

5          MR. MCCARRICK:  Your Honor, let me just get with

6     my team on this and I'll get you an answer to that,

7     certainly by the end of the conference.

8          THE COURT:  Okay.  All right.  All right, anybody

9     else wish to argue in support of being able to take all 13

10    depositions?  All right.  Let me hear from the Series B

11    Preferred Holders.  Who's going to argue for them?

12         MS. FELL:  Good afternoon, Your Honor.  Katherine

13    Kelly Fell, from Milbank LLP, on behalf of the Community

14    First Investor Group of the Series B Preferred Holders.

15         THE COURT:  Sure.  Go ahead.

16         MS. FELL:  Thank you, Your Honor.  Your Honor, the

17    13 depositions that are requested by the Debtors are wildly

18    disproportionate to the needs of these cases.  And the

19    Debtors have referenced that individuals were disclosed in

20    interrogatories as having certain knowledge.  But what's

21    important here under Rule 26(b)(1) is what is the

22    information that is important to resolution of these issues?

23    And you have to weigh that against the burden to the

24    parties.

25         The Series B Preferred Holders have already

Page 15

1    designated and proffered for deposition the four most

2    knowledgeable people about the CNL investment.  That

3    includes for WestCap the founder and most senior person,

4    Laurence Tosi, as well as WestCap principal Alex Goodman,

5    who was the lead on the day-to-day supporting an investment

6    from day one.  The remaining people were largely --

7              THE COURT:  The remaining two people that you've

8    tendered.  Or the remaining people they've asked for?

9              MS. FELL:  I'm sorry.  So there are -- those are

10   the two designated individuals from WestCap and there are

11   two designated individuals from CDPQ.

12             THE COURT:  Okay.

13             MS. FELL:  There are an additional nine witnesses

14   that the Debtors are requesting.  Those individuals all have

15   overlapping testimony of the two primary individuals that we

16   have designated.  They -- and the testimony of the Series B

17   Preferred Holders as a whole in these matters is largely not

18   relevant to resolution of this these issues.  And because

19   it's only marginally --

20             THE COURT:  Why do you say that?

21             MS. FELL:  The matters set for hearing on July

22   24th are an intercompany estimation, fraudulent transfer,

23   and substantive consolidation matters.  With respect to

24   intercompany estimation and fraudulent transfer, those

25   matters are largely going to turn on the transactional and

Page 16

1    financial information that's in the possession, custody and

2    control of the Debtors.

3              With respect to the substantive consolidation

4    motion, there are two prongs in that analysis under Second

5    Circuit precedent.  There is the hopeless entanglement

6    prong, which is also going to be resolved largely with

7    reference to the transactional and financial information of

8    the Debtors.

9              The second prong of that motion is about creditor

10   reliance and expectations regarding issues like corporate

11   separateness.  The Series B Preferred Holders' testimony is

12   relevant to that issue, although I will note that both the

13   Debtors and the creditors in their substantive consolidation

14   motions dispute that relevance.

15             And so, in our view, the testimony of the Series B

16   Preferred Holders really is only relevant to that prong on

17   one of the three motions set for hearing.  And it's not the

18   entirety of the question, right?  There's of course other

19   creditors who will speak to that issue.

20             So, in light of that, it seems wildly

21   disproportionate to have 13 employees of two institutional

22   holders speak to --

23             THE COURT:  So you've offered four witnesses of

24   your client, right?

25             MS. FELL:  We offered two witnesses from my client

Page 17

1    and two witnesses from CDPQ for --

2              THE COURT:  Okay.

3              MS. FELL:  -- four for the Series B Preferred

4    Holders.

5              THE COURT:  All right.

6              MS. FELL:  So, in in light of the fact that our

7    testimony is really only issue relevant to one narrow issue

8    on one motion, and in fact the Debtors and the Committee

9    dispute its relevance in that respect, it's not proportional

10   to seek testimony of 13 employees.  And importantly, these

11   are not 13 individual equity holders.  These are 13

12   employees of two institutional equity holders.  Their

13   individual knowledge is not relevant to the creditor

14   reliance prong at all.

15             We've identified the most senior and most involved

16   people.  The remaining individuals for WestCap, there are --

17   a very young, junior, 24-year-old analyst is one of the

18   deponents, who worked entirely at the direction of the more

19   senior employees.

20             There are people who worked on narrow projects,

21   like a human resources professional who supported executive

22   search efforts, which is not relevant to these three

23   matters; a capital markets professional who was working on a

24   project that never got off the ground of a coin-backed

25   security, which is not relevant to this matter.  And if it

1    does come up, the other witnesses have relevant knowledge

2    about that.

3            And so our view is that we have proffered these

4    two individuals.  CDPQ has proffered their most relevant

5    individuals.  We're offering them in both their individual

6    and corporate representative capacities, and they can cover

7    the entire waterfront of anything that's relevant to these

8    matters.

9            So, in addition to that, as counsel mentioned, the

10   request exceeds the presumptive limit under Rule 30.  To

11   exceed that limit, they need good cause and an order from

12   this Court, which they have not yet obtained.

13           But we really just think it illustrates why this

14   is so wildly disproportionate.  It exceeds the rules.  It's

15   a issue for which we're relevant.  There's just an excessive

16   -- 119 hours, I think, of total testimony was initially

17   requested from these two institutional holders.  And so,

18   it's just not appropriate here.

19           And finally, Your Honor, as you're aware, this is

20   an extremely expedited schedule.  And courts consider in the

21   proportionality and burden analysis the timing and phase of

22   litigation, and they require parties, the requesting party,

23   to affirmatively refrain from requesting testimony that is

24   not proportional.

25           And we think here under the expedited timeframe,

Page 19

1    the marginal relevance, and the sheer -- compared to the

2    sheer number of depositions that they're asking for, it just

3    -- it doesn't weigh out in their favor.  And we'd ask Your

4    Honor to limit their ability to take depositions to just

5    four of the Series B Preferred Holders.

6              THE COURT:  Let me ask this question.  What's the

7    amount in controversy?  I mean your clients -- what's the

8    aggregate claims of the Preferred Holders?

9              MS. FELL:  I think I will have to phone a friend

10   with Mr. Mester on that issue, if he has the number at his

11   fingertips.

12             MR. MESTER:  Your Honor, Josh Mester, Jones Day,

13   on behalf of CDP Investments.  I believe the total amount of

14   the Series B Preferred is somewhere in the range of 600

15   million to 750 million dollars.

16             THE COURT:  All right.  Yeah, I wasn't sure if it

17   was 550, but that sounds -- I was -- I haven't looked -- I

18   didn't look today, but it's certainly north of $500 million

19   and maybe far north of $500 million.  Mr. Mester, do you

20   want to be heard?

21             MR. MESTER:  I do, Your Honor.  Thank you.  I echo

22   Ms. Fell's comments and arguments and adopt them.  What I

23   wanted to address, Your Honor, is I wanted to give you more

24   specifics about the particular individuals at CDPQ that the

25   Debtors would like to depose.

Page 20

1            Again, we've offered Messrs. Birch and Provost.

2    Mr. Birch not only was leading the investment team, but is

3    also a member of the investment committee at CDPQ.  So he's

4    the seniormost person involved in the investment.  Mr.

5    Provost was on the investment team leading the investment

6    efforts.

7            Three of the individuals, Messrs. (indiscernible),

8    Gagnon, and Desjardins are all junior analysts on the

9    investment team that worked under Mr. Provost's direction.

10   They generally participated in meetings with Mr. Provost.

11   We don't think they had any individual communications that

12   would be considered unique.  They definitely didn't have any

13   decision-making authority.  And Mr. Provost is quite

14   familiar with the same facts that the three analysts have.

15           The other individual, Mr. Azzi, he works in a

16   group that supports this particular investment team at CDPQ.

17   Again, not involved in individualized direct communications

18   with Celsius.  He actually got his information most likely

19   from the investment team and the diligence they were

20   conducting or the outside consultants, and also doesn't have

21   any decision-making authority.

22           So, between Mr. Birch and Mr. Provost and the

23   30(b)(6) depositions, the landscape should be covered.  And

24   any individualized unique knowledge that the analysts or Mr.

25   Azzi may have will be of limited value.

Page 21

1              THE COURT:  All right.  Thank you.  Mr. McCarrick,

2      first, have you identified who the two witnesses that you

3      want to depose, who weren't identified in interrogatory

4      answers.

5              MR. MCCARRICK:  Yes, and -- yes, Your Honor.  It's

6      Mr. Reinken, Brian Reinken, and Jeff Mullen.  I believe Mr.

7      Reinken was described as a talent acquisition executive or

8      someone involved in, you know, finding high level executives

9      on behalf of WestCap.

10             All I would note about that is that we've seen Mr.

11     Reinken's notes of conversations that he had with Celsius

12     individuals about their books and records, their financial

13     oversight policies.  And I can tell you that in due

14     diligence memos, Mr. Mullen and Mr. Reinken were both

15     disguised as "members of the WestCap deal team."  They

16     worked "closely with Celsius and Deloitte" to "assess the

17     company's accounting, risk management, financial reporting."

18             Now, Ms. Fell would like to say that their views -

19     - it's disputed whether or not the Series B Holders' views

20     or WestCap's views of Celsius' corporate separateness is

21     irrelevant.  And we can fight over whether or not they're a

22     creditor or whether or not they're equity, or whether or not

23     there's something in between at different times.

24             But I can tell you, if the Series B Holders are

25     going to stand here and tell Your Honor that there was

1    corporate separateness between these Celsius entities and

2    their own employees at the time thought there was anything

3    but, we are entitled to put on and get discovery into that

4    evidence.  So, that addresses those two people.

5              THE COURT:  Yeah, what about Mr. Mullen?  You

6    addressed Mr. Reinken, but what about Mr. Mullen?

7              MR. MCCARRICK:  Mr.  Mullen was also identified in

8    the same due diligence memos as a member of the WestCap Deal

9    team and worked "closely with Celsius and Deloitte" to

10   "assess the company's accounting, risk management financial

11   reporting."  There was four or five individuals who were

12   described as members of the WestCap deal team and they all -

13   - excuse me -- there were seven individuals who are

14   identified as members of the WestCap deal team with that

15   description.  I could provide more color if it would be

16   helpful here.

17             THE COURT:  Now, let me -- hold on.  Did you

18   discuss the proposed length of the depositions?  Do you need

19   seven hours for each of these witnesses?  I mean, there's a

20   presumptive limit of seven hours.  Do you need seven hours

21   for each of the 13 that you've identified?

22             MR. MCCARRICK:  Your Honor, we would be willing to

23   negotiate that with the Series B Holders.  We're willing to

24   be reasonable here.  I expect that we won't need seven hours

25   for each and every one of these folks.  But the position we

Page 23

1    were put in is four or bust.

2           THE COURT:  Okay.  And did you discuss -- I know

3    they didn't offer very many witnesses, but did -- what dates

4    were you proposing?  How many -- are you taking -- different

5    members of your team taking simultaneous depositions?

6           MR. MCCARRICK:  Yes, Your Honor.  We're going to

7    be double-tracking, and we're happy to do that and we're

8    prepared to do that.  We're willing to depose people as

9    early as Thursday, Friday, Saturday, Sunday, all the way

10   through the 15th.  We're ready to roll.

11          THE COURT:  All right.  Anything further that you

12   want to respond?

13          MS. FELL:  Your Honor, if I may --

14          THE COURT:  Just a second.  I'll give you a chance

15   --

16          MS. FELL:  I'm sorry.

17          THE COURT:  -- Ms. Fell.  Okay?

18          MS. FELL:  I'm sorry.

19          THE COURT:  Go ahead, Mr. McCarrick.  Is there

20   anything else you wanted to add?

21          MR. MCCARRICK:  Your Honor, I could -- I would

22   just note with respect to CDPQ, the one individual that Mr.

23   Mester spoke at some length about was Mr. Azzi.  I can tell

24   you that there is a 2020 risk management report for which he

25   is the author that speaks to Celsius' internal controls that

Page 24

```
1    I think puts him in a unique situation, even if he was

2    working at someone else's direction, sometime you'd like to

3    talk to the author.

4              THE COURT:  Okay.  All right.  Ms. Fell, what did

5    you want to say?

6              MS. FELL:  I'm sorry, Your Honor.  I thought you

7    were opening up the floor earlier.

8              THE COURT:  No, I'm opening it up to you now.

9              MS. FELL:  Thank you very much.  Just a few points

10   to respond to.  Mr. McCarrick said that Mr. Reinken and Mr.

11   Mullen are not on the interrogatories.  That's appropriate

12   because they have exceedingly limited knowledge about the

13   Debtors.  Mr. Reinken was referenced as on the deal team.

14             The senior group that was making decisions about

15   the investment was -- included a few people at WestCap, the

16   most important of whom is Mr. Tosi, who is the founder and

17   most senior person at WestCap, who led the entire investment

18   operation.  Any information about the decision to invest

19   from that sort of senior team is going to be in the

20   possession, custody and control of Mr. Tosi.

21             Mr. Reinken is a human resources professional.

22   That is his role in supporting executive search and things

23   of that nature.  Mr. Mullen, again, is a capital markets

24   specialist.  Importantly, we're not contesting that these

25   individuals don't have any knowledge of the Debtors.  They,
```

1   of course, did and worked on the investment.  But that's not

2   the question here.  You don't need, you know, every person

3   in a meeting to testify as to what happened at the meeting.

4   So we're asking for a little bit of rationality to be imbued

5   into this schedule.

6           I will also note that in terms of the timing of

7   the witnesses for the depositions that we're taking of the

8   Debtor witnesses, they have taken the position that we have

9   to share time with the Committee.  So we are limited in our

10  ability to take depositions from a time perspective as well.

11          And because the information that is most important

12  to resolution of these matters is in the Debtors' own

13  possession, custody and control, it's appropriate that more

14  of the discovery would be of the Debtors, including the

15  Debtors' witnesses.  And I'll note that Mr. McCarrick said

16  that the witnesses they would like, Mr. Mullen and Mr.

17  Reinken, are on emails about the Debtors' books and records.

18          Of course, the Debtors do not need to conduct

19  discovery of the WestCap employees about their own books and

20  records.  They have the ability to discover that information

21  themselves.  They have a burden to discharge here.  The

22  Series B Preferred Holders do not.  And so we would ask that

23  the schedule here reflect that.

24          And finally, I would just say in terms of limiting

25  the depositions, as I mentioned, Mr. Hemrajani is a 24-year-

Page 26

1    old analyst and worked entirely at the direction of more

2    senior people.  We'd ask that the Court not permit that

3    deposition to go forward.  We'd also ask Mr. Mullen and Mr.

4    Reinken, who are not on the interrogatories and who had

5    limited roles, that the Court not let those depositions go

6    forward.

7            We understand that Mr. Katz is the only other

8    person other than Mr. Tosi and Mr. Goodman, who's on our

9    list.  Mr. Katz is -- held a similar role to Mr. Goodman.

10   He was very involved in the investment, but he has similar

11   knowledge to Mr. Goodman.  So it would be overlapping.

12           Additionally, Mr. Katz is currently -- his current

13   status with the company is as a contractor, and he's not in

14   our control to the same degree as other employees.  He also

15   has a lot of foreign near term travel scheduled.  And

16   although we're talking to him, he's not yet agreed to sit

17   for a deposition and there are a lot of issues related to

18   sitting in for a deposition.  So we'd ask --

19           THE COURT:  Where does he reside?

20           MS. FELL:  His primary residence, I believe, is in

21   California, although someone can correct me on that.  He's a

22   consultant and he does -- he does travel, you know, usually

23   four days a week for work.  So he's sort of a citizen of the

24   world.

25           THE COURT:  Is he a full-time consultant for one

Page 27

1    of your client?

2                MS. FELL:  I'm not sure if he's full-time, but he

3    is in a consulting role for our client.

4                MR. MCCARRICK:  Your Honor, if I may be heard on

5    Mr. Katz?

6                THE COURT:  Let Ms. Fell finish and then I'll give

7    you a chance again.  Go ahead, Ms. Fell.

8                MS. FELL:  Thank you, Your Honor.  So, just to sum

9    it up, Mr. Tosi and Mr. Goodman, we have agreed to.  Mr.

10   Katz, you know, does have relevant knowledge, we

11   acknowledge, but it's similar to Mr. Goodman's knowledge and

12   there's some practical issues with his deposition testimony.

13   And the remaining individuals had very limited roles.  Their

14   knowledge is going to be completely subsumed by the

15   proffered witnesses.  And we'd ask that Your Honor limit

16   those depositions.

17                I will also say that we would be happy to allow

18   the Debtors to take the two proffered depositions and then

19   after taking those depositions in their individual and

20   corporate capacities, if they want to come back to us with a

21   reasonable limited targeted suggestion for additional

22   testimony, not full-day, on particular issues, we would be

23   happy to consider that request.

24                THE COURT:  All right.  Mr.  McCarrick, you wanted

25   -- something you wanted to say, Mr. McCarrick?

```
 1              MR. MCCARRICK:  Yes, just to on Mr. Katz, Your

 2    Honor, three points.  One, he is a resident of California.

 3    Second, this hearing is the first time that we've heard he's

 4    not an employee, that he is just a consultant.  We had

 5    correspondence with the Series B Holders about who was and

 6    was not in their control, and who was current or former

 7    employees.  And we learned today for the first time that

 8    they may not be able to produce him.  That's incredibly it's

 9    incredibly prejudicial.

10              And the third thing I will say, Your Honor, is

11    having seen Mr. Katz's documents, including Mr. Katz's

12    documents with himself, with no one else on them, the

13    statements that he is of "marginal relevance" and has

14    "similar knowledge to other people" are ones we will be

15    quoting back to Your Honor in our briefing.  We can promise

16    you that.

17              THE COURT:  Okay.

18              MS. FELL:  I'm sorry, Your Honor.

19              THE COURT:  All right, stop.

20              MS. FELL:  (indiscernible) relevant --

21              THE COURT:  That's enough.  No, no, no, no.  I've

22    heard enough.

23              MS. FELL:  Okay.

24              MR. MESTER:  Your Honor --

25              THE COURT:  No --
```

Page 29

1           MR. MESTER:  (indiscernible)

2           THE COURT:  Go ahead.

3           MR. MESTER:  I'm sorry.  I'd like to address a

4    couple of points in --

5           THE COURT:  Go ahead, Mr. Mester.

6           MR. MESTER:  So, just two points.  First with Mr.

7    Azzi, he's referencing a five-page document that has

8    essentially two paragraphs about the Debtors' books and

9    records that --

10          THE COURT:  It ought to be a short deposition,

11   then.

12          MR. MESTER:  -- that was actually prepared largely

13   by an outside consultant whose reports have been produced.

14   There's a difference between having material knowledge and

15   having unique knowledge.  If all the witnesses have the same

16   material knowledge, it's not necessary to take all the

17   depositions.

18          THE COURT:  All right.  The Court's ready to rule.

19   So the objections to taking of the 13 -- all 13 depositions

20   is overruled.  First, with respect to proportionality, this

21   matter involves over $600 million.  And it's a matter that

22   essentially has been raised by the Preferred Holders that

23   have pressed this issue.  The matter is and needs to be on a

24   very expedited schedule.

25          While in some circumstances I might say, all

Page 30

```
 1    right, take the first few depositions, come back and tell me

 2    more, it's really inappropriate in these circumstances.

 3    This matter has to be fully ready for hearing on the

 4    schedule in which it's already set.  So, first.

 5              On proportionality, the scope of the discovery

 6    that's been sought, the number of deponents is clearly

 7    relevant.  With respect to the issue of the presumptive

 8    limit of 10 depositions, it's acknowledged that 11 of the

 9    proposed deponents have been identified in interrogatory

10    answers.  And as to the other two, Mr. McCarrick has

11    identified with respect to Mr. Reinken and Mr. Mullen

12    specific documents that relate to due diligence to

13    conversations with Celsius about the books and records,

14    clearly relevant to the subject of this upcoming hearing.

15              What I would urge you to do, Mr. McCarrick, is to

16    confer.  You know, what I've often found both when I was in

17    practice and in my years on the bench is that I'm not quite

18    clear on why you need seven hours for each of the deponents.

19    I suspect you don't.  I suspect very strongly that you

20    don't.

21              What I think you should try and agree on with

22    counsel is, you know, prioritize the witnesses, the ones

23    where you -- based on the documents you have and seen, that

24    you need the seven hours and those that you don't.  Okay.

25              I would be very disinclined to increase the
```

Page 31

1    presumptive seven-hour limit.  There have been many cases

2    when I've imposed four-hour limits.  I'm not prepared to do

3    that now.  With sophisticated counsel, I think you should be

4    able to resolve this.  But I certainly believe that the

5    discovery that's being sought is proportional to the

6    dispute.  It's a very, very substantial dispute, very

7    important to the Celsius reorganization and the Celsius

8    case.

9            So, do you want a written order?  If you want a

10   written order, I will have Mr. McCarrick prepare a written

11   order, or I'll so order the transcript.  You can order the

12   transcript.  But I'm ordering that all thirteen of these

13   depositions go forward, and they have to go forward quickly.

14   There will be some simultaneous depositions, but you know

15   this is the case where very, very sophisticated, large firms

16   represent parties and are able to provide multiple lawyers.

17   Multiple lawyers have been involved in the Celsius case for

18   quite some time to be able to take or defend depositions.

19            Anything else for today?

20            MR. MCCARRICK:  Not from the Debtors, Your Honor.

21   And we're happy with a transcript.  We'll work with the

22   other side to limit the time where that's -- where that

23   makes sense.

24            THE COURT:  All right.  So, I'm so ordering the

25   transcript.  If the Preferred Holders want a written order,

Page 32

1    I'd ask Mr. McCarrick to prepare a written order.  I don't

2    think it's necessary, but if you want it, he'll be happy to

3    get it.  All right, we are adjourned.

4              MS. FELL:  Thank you, Your Honor.

5              MR. MCCARRICK:  Thank you, Your Honor.

6              MR. MESTER:  Thank you, Your Honor.

7              (Whereupon these proceedings were concluded at

8    3:31 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            **I N D E X**

2

3                          RULINGS

4                                              **Page**      **Line**

5

6    **Objection to Taking 13 depos, Overruled**    29        18

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 34

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 10, 2023

## &

**&** 3:3 6:1 8:6

## 1

**1** 9:15 14:21
**10** 11:8,12,20
 30:8 34:25
**10001** 4:5
**10004** 1:14
**10014** 3:15
**10036** 4:23
**10104** 5:12
**10167** 5:5
**11** 13:3,5 30:8
**11501** 34:23
**119** 18:16
**12151** 34:7
**12548** 6:10
**1290** 5:11
**12th** 12:11
**13** 8:23 11:12
 11:18 13:3,5
 14:9,17 16:21
 17:10,11,11
 22:21 29:19,19
 33:6
**13th** 12:12
**14th** 12:13
**151** 4:22
**15th** 8:16
 23:10
**18** 33:6

## 2

**201** 3:14
**2010** 5:19
**2015** 13:21

**2020** 23:24
**2023** 1:16
 34:25
**21202** 5:20
**22-10964** 1:3
**24** 17:17 25:25
**245** 5:4
**24th** 15:22
**26** 14:21
**2700** 6:3
**29** 33:6

## 3

**30** 12:15,16
 18:10 20:23
**300** 3:5 5:19
 34:22
**31st** 8:15,24
**33** 8:22
**330** 34:21
**3:00** 1:17
**3:31** 32:8

## 4

**42nd** 4:22

## 5

**500** 19:18,19
**50th** 4:15
**55** 4:4
**550** 19:17
**555** 4:15 6:3

## 6

**6** 1:16 9:22
 12:15,16 20:23
**600** 19:14
 29:21
**60654** 3:6

## 7

**750** 19:15
**78711-2548**
 6:11

## 9

**90071** 4:16 6:4

## a

**abigail** 7:2
**ability** 19:4
 25:10,20
**able** 11:18,20
 14:9 28:8 31:4
 31:16,18
**access** 9:24
**account** 5:18
**accounting**
 21:17 22:10
**accurate** 10:16
 34:4
**acknowledge**
 27:11
**acknowledged**
 30:8
**acquisition**
 21:7
**action** 8:13
**actions** 8:19
**actually** 20:18
 29:12
**ad** 5:3,18
**add** 23:20
**addition** 9:19
 18:9
**additional** 9:12
 11:3 12:14
 15:13 27:21

**additionally**
 26:12
**address** 19:23
 29:3
**addressed** 22:6
**addresses** 22:4
**adi** 8:25
**adjourned**
 32:3
**adler** 5:7
**adopt** 19:22
**affirmatively**
 18:23
**afternoon** 8:2
 8:9 14:12
**aganga** 5:14
**aggregate** 19:8
**ago** 10:8 11:8
**agree** 13:19
 30:21
**agreed** 26:16
 27:9
**ahead** 8:7
 14:15 23:19
 27:7 29:2,5
**alex** 8:25 15:4
**alexander** 9:6
**allow** 27:17
**amendments**
 13:12
**americas** 5:11
**amount** 19:7
 19:13
**analysis** 16:4
 18:21
**analyst** 17:17
 26:1

**analysts**  20:8
  20:14,24
**andrew**  4:9
**angeles**  4:16
  6:4
**answer**  13:2,23
  14:6
**answers**  13:1
  14:4 21:4
  30:10
**anybody**  14:8
**anyway**  11:18
**appropriate**
  18:18 24:11
  25:13
**approval**  13:20
**argue**  8:4 14:9
  14:11
**arguing**  11:11
**argument**
  11:23
**arguments**
  19:22
**asked**  9:16,23
  10:12 15:8
**asking**  12:7
  19:2 25:4
**assess**  21:16
  22:10
**assure**  10:17
**atara**  4:8
**attorney**  6:8
**attorneys**  3:4
  3:13 4:2,14,21
  5:3,10,18 6:2,9
**austin**  6:11

**author**  23:25
  24:3
**authority**
  20:13,21
**available**  9:8,9
**avenue**  5:4,11
**aware**  18:19
**azzi**  9:5,25
  20:15,25 23:23
  29:7

**b**

**b**  1:21 4:3 8:17
  8:20 9:7 10:8
  10:12,17,25
  11:7,24 12:1,8
  12:15,16 14:10
  14:14,21,25
  15:16 16:11,15
  17:3 19:5,14
  20:23 21:19,24
  22:23 25:22
  28:5
**back**  14:2
  27:20 28:15
  30:1
**backed**  17:24
**background**
  8:10 9:14
**baltimore**  5:20
**bankruptcy**
  1:1,12,23
**based**  9:15
  10:7,15 13:21
  30:23
**behalf**  8:6
  14:13 19:13
  21:9

**believe**  13:15
  19:13 21:6
  26:20 31:4
**bench**  30:17
**benefit**  10:15
  12:3
**birch**  9:5,9
  10:4 20:1,2,22
**bit**  12:22 25:4
**blonstein**
  12:14
**books**  21:12
  25:17,19 29:8
  30:13
**borrowers**  5:3
**bowling**  1:13
**box**  6:10
**bradley**  6:23
**brew**  3:18
**brian**  8:25 21:6
**briefing**  28:15
**briefly**  10:7
**brier**  3:9
**brown**  3:10
**burden**  11:24
  14:23 18:21
  25:21
**bust**  23:1

**c**

**c**  3:1 8:1 34:1,1
**ca**  4:16 6:4
**california**
  26:21 28:2
**calin**  4:10
**capacities**  18:6
  27:20

**capital**  17:23
  24:23
**carve**  12:2
**case**  1:3 6:1
  10:5 13:9,11
  31:8,15,17
**cases**  13:19
  14:18 31:1
**cause**  18:11
**cdp**  4:14 19:13
**cdpq**  9:4,16
  12:21 15:11
  17:1 18:4
  19:24 20:3,16
  23:22
**cdpq's**  9:17
**celsius**  1:7 8:3
  9:18,24 20:18
  21:11,16,20
  22:1,9 23:25
  30:13 31:7,7
  31:17
**celsius's**  11:1
**certain**  8:21
  14:20
**certainly**  14:7
  19:18 31:4
**certified**  34:3
**chance**  23:14
  27:7
**chang**  6:19
**check**  13:13,21
**chicago**  3:6
**circuit**  16:5
**circumstances**
  29:25 30:2

cited  13:9,11
  13:20,20
citing  13:22
citizen  26:23
civil  11:9 13:12
claims  8:12
  19:8
claire  5:15
clear  30:18
clearly  30:6,14
client  16:24,25
  27:1,3
clients  19:7
closely  21:16
  22:9
cnl  12:15 15:2
coin  17:24
color  22:15
come  14:2 18:1
  27:20 30:1
comfort  10:18
  13:19
comments
  19:22
committee
  5:10 6:2 17:8
  20:3 25:9
communicati...
  20:11,17
community  4:2
  14:13
company  26:13
company's
  21:17 22:10
compared  19:1
compelling
  13:20

completely
  27:14
completion
  8:14
concluded  32:7
conduct  25:18
conducted  2:1
conducting
  20:20
confer  30:16
conference  2:1
  14:7
confirm  10:13
consider  18:20
  27:23
considered
  20:12
consolidation
  8:13 15:23
  16:3,13
consultant
  26:22,25 28:4
  29:13
consultants
  20:20
consulting
  27:3
contacted
  11:14
contesting
  24:24
context  8:10
contractor
  26:13
control  16:2
  24:20 25:13
  26:14 28:6

controls  23:25
controversy
  19:7
conversations
  21:11 30:13
conveyance
  8:13
cooper  6:20
cordry  6:21
cornell  3:17
corporate
  16:10 18:6
  21:20 22:1
  27:20
correct  12:24
  26:21
corresponde...
  12:5 28:5
counsel  18:9
  30:22 31:3
country  34:21
couple  29:4
course  16:18
  25:1,18
court  1:1,12
  8:2,7 12:24
  13:14 14:1,8
  14:15 15:7,12
  15:20 16:23
  17:2,5 18:12
  19:6,16 21:1
  22:5,17 23:2
  23:11,14,17,19
  24:4,8 26:2,5
  26:19,25 27:6
  27:24 28:17,19
  28:21,25 29:2

29:5,10,18
  31:24
court's  29:18
courts  18:20
cover  18:6
covered  20:23
creditor  6:14
  6:16 16:9
  17:13 21:22
creditors  5:10
  6:2 16:13,19
cross  11:17
  12:18
cumulative
  10:11,14
current  8:23
  26:12 28:6
currently
  26:12
custody  16:1
  24:20 25:13

d

d  7:3 8:1 33:1
daniel  6:16
daphne  9:3
date  11:4 34:25
dated  13:11
dates  9:10
  12:17 23:3
david  5:7
day  4:13 11:11
  12:4 13:10
  15:5,5,6 19:12
  27:22
days  26:23
deadline  8:14

**deal** 21:15 22:8
22:12,14 24:13
**debtor** 1:9 3:4
8:4 25:8
**debtors** 8:6,23
12:7,9,23
13:18,23 14:17
14:19 15:14
16:2,8,13 17:8
19:25 24:13,25
25:12,14,15,17
25:18 27:18
29:8 31:20
**decision** 20:13
20:21 24:18
**decisions** 24:14
**defend** 31:18
**definitely**
20:12
**degree** 26:14
**deirdra** 1:25
**dejardins** 9:21
10:1
**deloitte** 11:1
21:16 22:9
**department**
3:12
**deployed** 11:8
**deponents** 9:12
10:10,19 17:18
30:6,9,18
**depos** 33:6
**depose** 12:25
14:3 19:25
21:3 23:8
**deposed** 10:19
12:11,12 13:4

**deposition**
8:16 11:9
12:14,15,16
15:1 26:3,17
26:18 27:12
29:10
**depositions**
8:23 9:5 10:10
11:13,20 12:18
13:17,21 14:10
14:17 19:2,4
20:23 22:18
23:5 25:7,10
25:25 26:5
27:16,18,19
29:17,19 30:1
30:8 31:13,14
31:18
**described** 21:7
22:12
**description**
22:15
**designated**
15:1,10,11,16
**desjardins** 9:6
20:8
**difference**
11:12 29:14
**different** 9:2
21:23 23:4
**digits** 12:5
**diligence** 9:18
10:25 20:19
21:14 22:8
30:12
**direct** 20:17

**direction** 17:18
20:9 24:2 26:1
**discharge**
25:21
**disclosed** 14:19
**discover** 25:20
**discovery** 2:1
8:4,11 12:5,10
22:3 25:14,19
30:5 31:5
**discuss** 22:18
23:2
**disguised**
21:15
**disinclined**
30:25
**disproportio...**
14:18 16:21
18:14
**dispute** 8:4
16:14 17:9
31:6,6
**disputed** 21:19
**district** 1:2
**dob** 6:9
**document** 29:7
**documents**
8:15,20 10:2
10:15 11:3
28:11,12 30:12
30:23
**dollars** 12:1
19:15
**double** 12:4
23:7
**doubt** 10:15

**due** 9:18 10:25
21:13 22:8
30:12
**duplicative**
10:11,13

**e**

**e** 1:21,21 3:1,1
8:1,1 33:1 34:1
**earlier** 24:7
**early** 23:9
**earn** 5:18
**east** 5:19
**echo** 19:21
**ecro** 1:25
**efforts** 17:22
20:6
**eight** 12:20
**either** 13:6
**ellis** 3:3 8:6
**elsberg** 5:9
**else's** 24:2
**emails** 10:4,6
25:17
**employee** 28:4
**employees** 8:23
16:21 17:10,12
17:19 22:2
25:19 26:14
28:7
**ends** 8:16
**english** 5:2
**entanglement**
16:5
**entered** 8:18
**entire** 18:7
24:17

| | | | |
|---|---|---|---|
| **entirely** 10:11 13:18 17:18 26:1 | **extremely** 18:20 | **first** 4:2 10:10 11:8,15 14:14 21:2 28:3,7 29:6,20 30:1,4 | **further** 23:11 |
| **entirety** 16:18 | **f** | **five** 22:11 29:7 | **g** |
| **entities** 22:1 | **f** 1:21 34:1 | **floor** 4:15 24:7 | **g** 8:1 |
| **entitled** 22:3 | **fact** 10:5 17:6 17:8 | **flower** 4:15 6:3 | **gagnon** 9:6,21 10:1 20:8 |
| **equity** 17:11 17:12 21:22 | **facts** 20:14 | **flynn** 6:22 | **gay** 5:9 |
| **essentially** 29:8,22 | **familiar** 20:14 | **folks** 22:25 | **general** 6:8 |
| **estate** 12:2 | **far** 19:19 | **followed** 8:15 | **generally** 20:10 |
| **estimation** 8:12 15:22,24 | **favor** 19:3 | **following** 12:10 | **georges** 9:5 |
| **evidence** 22:4 | **federal** 11:9 13:12 | **foregoing** 34:3 | **giardiello** 6:23 |
| **exactly** 13:4 | **fell** 4:7 14:12 14:13,16 15:9 15:13,21 16:25 17:3,6 19:9 21:18 23:13,16 23:17,18 24:4 24:6,9 26:20 27:2,6,7,8 28:18,20,23 32:4 | **foreign** 26:15 | **give** 8:9 9:13 10:14,18 11:2 13:19 19:23 23:14 27:6 |
| **example** 9:23 10:23 11:3,6 | | **former** 28:6 | **giving** 12:15,16 12:17 |
| **exceed** 18:11 | | **forward** 26:3,6 31:13,13 | **glasser** 6:12 |
| **exceedingly** 24:12 | | **found** 30:16 | **glenn** 1:22 8:3 |
| **exceeds** 18:10 18:14 | | **founder** 15:3 24:16 | **global** 12:4 |
| **excessive** 18:15 | **fell's** 19:22 | **four** 9:7,19 11:14 15:1 16:23 17:3 19:5 22:11 23:1 26:23 31:2 | **go** 8:7 14:15 23:19 26:3,5 27:7 29:2,5 31:13,13 |
| **excuse** 11:7,23 11:23 22:13 | **ferraro** 12:11 | | **going** 8:4 11:17 11:19 12:9,11 12:12 14:11 15:25 16:6 21:25 23:6 24:19 27:14 |
| **excuses** 10:8 | **fight** 21:21 | | |
| **executive** 17:21 21:7 24:22 | **finally** 18:19 25:24 | **frankly** 11:25 | |
| **executives** 21:8 | **financial** 9:24 11:1 16:1,7 21:12,17 22:10 | **fraudulent** 8:13 15:22,24 | **good** 8:2,8 14:12 18:11 |
| **expect** 22:24 | | **friday** 23:9 | **goodman** 8:25 9:9 10:3 15:4 26:8,9,11 27:9 |
| **expectations** 16:10 | **finding** 21:8 | **friend** 19:9 | |
| **expedited** 18:20,25 29:24 | **fingertips** 19:11 | **frishberg** 6:16 | |
| **extent** 11:21 | **finish** 27:6 | **frivolous** 11:25 | **goodman's** 27:11 |
| | **firms** 12:4 31:15 | **full** 26:25 27:2 27:22 | |
| | | **fully** 30:3 | |

governing 8:18
government
2:2
grace 3:9
green 1:13
ground 17:24
group 4:2 5:3
5:18 14:14
20:16 24:14
groups 10:23
11:19
guy 11:2
guyot 9:6,21
10:1

**h**

happened 25:3
happy 11:4,5
13:23,24 23:7
27:17,23 31:21
32:2
haqqani 6:24
he'll 32:2
head 13:4
hear 14:10
heard 19:20
27:4 28:3,22
hearing 2:1
15:21 16:17
28:3 30:3,14
held 26:9
helpful 22:16
hemrajani 9:1
9:20 25:25
henry 4:10
herring 11:11
hershey 6:6

hide 10:19
high 21:8
hoc 5:3,18
hold 22:17
holders 4:3
5:18 8:17,21
9:7 10:8,12,17
11:7,24 12:2,8
14:11,14,25
15:17 16:11,16
16:22 17:4,11
17:12 18:17
19:5,8 21:19
21:24 22:23
25:22 28:5
29:22 31:25
hon 1:22
honor 8:5,8,9
8:18 9:14 11:4
11:11,14,25
13:2,8,18 14:5
14:12,16,16
18:19 19:4,12
19:21,23 21:5
21:25 22:22
23:6,13,21
24:6 27:4,8,15
28:2,10,15,18
28:24 31:20
32:4,5,6
hopeless 16:5
hour 10:8 11:8
31:1,2
hours 18:16
22:19,20,20,24
30:18,24

house 8:24 9:4
hudson 4:4
human 17:21
24:21
hundreds 12:1
hyde 2:25 34:3
34:8

**i**

identified 8:21
8:23,24 9:19
9:25 10:24
12:25 13:5
14:3 17:15
21:2,3 22:7,14
22:21 30:9,11
ignat 4:21
il 3:6
illustrates
18:13
imbued 25:4
impediment
13:16
important
14:21,22 24:16
25:11 31:7
importantly
17:10 24:24
imposed 31:2
inappropriate
30:2
included 24:15
includes 15:3
including 9:18
9:24 25:14
28:11
increase 30:25

incredibly 28:8
28:9
indiscernible
9:20 10:1
12:12,13,17
20:7 28:20
29:1
individual
10:25 17:11,13
18:5 20:11,15
23:22 27:19
individualized
20:17,24
individuals
8:22 9:8,16,19
10:2,13 11:5
11:17 12:25
13:6 14:19
15:10,11,14,15
17:16 18:4,5
19:24 20:7
21:12 22:11,13
24:25 27:13
information
14:22 16:1,7
20:18 24:18
25:11,20
initially 18:16
institutional
16:21 17:12
18:17
intercompany
8:12 15:22,24
interesting
10:6
internal 23:25

**interrogatories**
  14:20 24:11
  26:4
**interrogatory**
  8:21 9:15,22
  13:1 14:4 21:3
  30:9
**invest**  24:18
**investment**
  9:17 15:2,5
  20:2,3,4,5,5,9
  20:16,19 24:15
  24:17 25:1
  26:10
**investments**
  4:14 19:13
**investor**  14:14
**investors**  4:2
  10:25
**involved**  17:15
  20:4,17 21:8
  26:10 31:17
**involves**  29:21
**irrelevant**
  21:21
**issue**  16:12,19
  17:7,7 18:15
  19:10 29:23
  30:7
**issued**  13:7
**issues**  8:22
  14:22 15:18
  16:10 26:17
  27:12,22
**items**  8:11

**j**

**james**  6:12
**jeff**  9:1 21:6
**jeffrey**  4:25
**jonathan**  7:1
  9:6
**jones**  4:13 12:4
  19:12
**joseph**  6:25
**josh**  19:12
**joshua**  4:18
**joyce**  5:22
**judge**  1:23 8:3
**judson**  3:10
**july**  15:21
**june**  1:16 8:16
  12:11 34:25
**junior**  17:17
  20:8
**justice**  3:12

**k**

**karen**  1:25
  6:21
**katherine**  4:7
  14:12
**katz**  8:25 9:20
  9:25 10:23,24
  26:7,9,12 27:5
  27:10 28:1
**katz's**  28:11,11
**kelly**  14:13
**khoo**  9:1,2
**kirkland**  3:3
  8:6
**know**  21:8 23:2
  25:2 26:22

27:10 30:16,22
  31:14
**knowledge**
  8:22 9:13,14
  9:17,23 10:3
  10:14 13:6,6
  14:20 17:13
  18:1 20:24
  24:12,25 26:11
  27:10,11,14
  28:14 29:14,15
  29:16
**knowledgeable**
  15:2
**known**  8:17
**kuhns**  5:22
**kurman**  5:17

**l**

**la**  3:5
**landscape**
  20:23
**large**  31:15
**largely**  15:6,17
  15:25 16:6
  29:12
**larry**  8:25
**laurence**  8:25
  15:4
**law**  12:4 13:9
  13:11
**lawyers**  12:5
  31:16,17
**lead**  15:5
**leading**  10:25
  20:2,5
**learned**  28:7

**leblanc**  4:9
**led**  24:17
**ledanski**  2:25
  34:3,8
**legal**  34:20
**lehrfeld**  6:25
**length**  22:18
  23:23
**level**  8:9 21:8
**light**  16:20
  17:6
**likely**  20:18
**limit**  11:9
  18:10,11 19:4
  22:20 27:15
  30:8 31:1,22
**limited**  20:25
  24:12 25:9
  26:5 27:13,21
**limiting**  25:24
**limits**  31:2
**line**  33:4
**list**  26:9
**litigation**  18:22
**little**  12:22
  25:4
**llc**  1:7 12:16
**llp**  3:3 4:1,20
  5:2 6:1 14:13
**lombard**  5:19
**look**  19:18
**looked**  19:17
**los**  4:16 6:4
**lot**  26:15,17

| m | | | |
|---|---|---|---|
| **m**  4:9 | 25:15 27:4,24 | **mineola**  34:23 | 5:12 |
| **made**  13:9 | 27:25 28:1 | **mira**  6:24 | **nine**  9:12 15:13 |
| **make**  9:7,8 | 30:10,15 31:10 | **month**  8:17 | **north**  19:18,19 |
| 11:24 | 31:20 32:1,5 | **motion**  8:12,13 | **note**  11:16 |
| **makes**  31:23 | **mccarter**  5:2 | 16:4,9 17:8 | 16:12 21:10 |
| **making**  20:13 | **md**  5:20 | **motions**  16:14 | 23:22 25:6,15 |
| 20:21 24:14 | **mean**  19:7 | 16:17 | **noted**  13:11 |
| **management** | 22:19 | **move**  11:13 | **notes**  21:11 |
| 21:17 22:10 | **meeting**  25:3,3 | **mullen**  9:1 | **notice**  11:20 |
| 23:24 | **meetings**  20:10 | 21:6,14 22:5,6 | 12:18 |
| **marginal**  19:1 | **melanie**  4:11 | 22:7 24:11,23 | **noticed**  11:17 |
| 28:13 | **member**  20:3 | 25:16 26:3 | **notion**  12:21 |
| **marginally** | 22:8 | 30:11 | **number**  9:15 |
| 15:19 | **members** | **multiple**  31:16 | 9:22 11:18 |
| **mark**  3:18 | 21:15 22:12,14 | 31:17 | 19:2,10 30:6 |
| **markets**  17:23 | 23:5 | | **ny**  1:14 3:15 |
| 24:23 | **memos**  21:14 | | n | 4:5,23 5:5,12 |
| **martin**  1:22 | 22:8 | **n**  3:1,5 8:1 33:1 | 34:23 |
| **material**  9:13 | **mentioned** | 34:1 | | o | |
| 9:17,23 13:6 | 18:9 25:25 | **narrow**  17:7 | **o**  1:21 8:1 34:1 |
| 29:14,16 | **messrs**  20:1,7 | 17:20 | **o'brien**  5:15 |
| **materials**  9:24 | **mester**  4:18 | **nature**  24:23 | **objection**  33:6 |
| **mathieu**  9:5 | 19:10,12,12,19 | **near**  26:15 | **objections** |
| **matter**  1:5 | 19:21 23:23 | **necessary** | 29:19 |
| 13:15 17:25 | 28:24 29:1,3,5 | 29:16 32:2 | **obtained**  18:12 |
| 29:21,21,23 | 29:6,12 32:6 | **need**  18:11 | **obvious**  10:22 |
| 30:3 | **mg**  1:3 | 22:18,20,24 | **offer**  9:10 10:9 |
| **matters**  15:17 | **mia**  6:20 | 25:2,18 30:18 | 12:22 23:3 |
| 15:21,23,25 | **middle**  8:11 | 30:24 | **offered**  9:20 |
| 17:23 18:8 | **milbank**  4:1 | **needs**  14:18 | 12:13 16:23,25 |
| 25:12 | 12:4 14:13 | 29:23 | 20:1 |
| **mccarrick**  3:8 | **miller**  4:8 | **negotiate** | **offering**  18:5 |
| 8:5,6,8 13:2,18 | **million**  19:15 | 22:23 | **office**  6:8 |
| 14:5 21:1,5 | 19:15,18,19 | **network**  1:7 | **official**  5:10 |
| 22:7,22 23:6 | 29:21 | **never**  10:20 | 6:2 |
| 23:19,21 24:10 | **millions**  12:1 | 11:10 17:24 | **offit**  5:17 |
| | | **new**  1:2,14 | |
| | | 3:15 4:5,23 5:5 | |

**okay** 8:7 14:8
  15:12 17:2
  23:2,17 24:4
  28:17,23 30:24
**old** 17:17 26:1
  34:21
**ones** 28:14
  30:22
**opening** 24:7,8
**operation**
  24:18
**opponent** 9:2
**opportunity**
  12:18
**order** 8:18
  10:17 18:11
  31:9,10,11,11
  31:11,25 32:1
**ordering** 31:12
  31:24
**osborne** 6:14
**ought** 29:10
**outside** 20:20
  29:13
**overlapping**
  15:15 26:11
**overruled**
  29:20 33:6
**oversight**
  21:13
**own** 12:2 22:2
  25:12,19

**p**

**p** 3:1,1 6:6 8:1
**page** 29:7 33:4
**paragraphs**
  29:8

**park** 5:4
**participated**
  20:10
**particular**
  19:24 20:16
  27:22
**parties** 12:3
  14:24 18:22
  31:16
**party** 18:22
**people** 15:2,6,7
  15:8 17:16,20
  22:4 23:8
  24:15 26:2
  28:14
**period** 12:10
**permit** 26:2
**person** 15:3
  20:4 24:17
  25:2 26:8
**perspective**
  25:10
**phase** 18:21
**phone** 19:9
**phrasing** 13:7
**place** 11:15
**please** 8:7
**pllc** 5:9
**pm** 1:17 32:8
**po** 6:10
**point** 13:9 14:2
**points** 24:9
  28:2 29:4,6
**policies** 21:13
**pop** 12:22
**position** 9:11
  22:25 25:8

**possession**
  16:1 24:20
  25:13
**post** 13:11
**practical** 27:12
**practice** 30:17
**precedent** 16:5
**preferred** 4:3
  14:11,14,25
  15:17 16:11,16
  17:3 19:5,8,14
  25:22 29:22
  31:25
**prejudicial**
  28:9
**prepare** 31:10
  32:1
**prepared** 23:8
  29:12 31:2
**present** 6:18
**pressed** 29:23
**presumptive**
  18:10 22:20
  30:7 31:1
**primary** 15:15
  26:20
**principal** 15:4
**prioritize**
  30:22
**pro** 6:14,16
**procedure** 11:9
  13:13
**proceedings**
  8:10 32:7 34:4
**process** 9:18
  10:16

**produce** 28:8
**produced**
  29:13
**production**
  8:15
**professional**
  17:21,23 24:21
**proffered** 15:1
  18:3,4 27:15
  27:18
**project** 17:24
**projects** 17:20
**promise** 28:15
**prong** 16:6,9
  16:16 17:14
**prongs** 16:4
**proportional**
  17:9 18:24
  31:5
**proportionality**
  13:12,16 18:21
  29:20 30:5
**proposed**
  22:18 30:9
**proposing** 23:4
**provide** 11:3
  22:15 31:16
**providing** 11:2
**provost** 9:5,9
  10:4 20:1,5,10
  20:13,22
**provost's** 20:9
**put** 12:9 22:3
  23:1
**puts** 24:1

[question - rules]                                                    Page 10

| q | referenced | remember 13:4 | respect 8:3 |
|---|---|---|---|
| question 14:1 16:18 19:6 25:2 | 14:19 24:13 | reorganization 31:7 | 15:23 16:3 17:9 23:22 29:20 30:7,11 |
| questions 13:24 | references 13:22 | report 23:24 | respectfully 13:15 |
| quick 9:14 13:13,21 | referencing 29:7 | reporting 21:17 22:11 | respond 13:24 23:12 24:10 |
| quickly 31:13 | reflect 25:23 | reports 29:13 | responded 10:20,21 |
| quite 20:13 30:17 31:18 | refrain 18:23 | represent 31:16 | response 9:22 |
| quoting 28:15 | refused 9:10 | representative 18:6 | responses 8:21 9:15 |
| **r** | regarding 16:10 | represented 12:3 | reviewing 8:20 |
| r 1:21 3:1 6:21 8:1 34:1 | regina 6:14 | request 10:20 10:21 18:10 27:23 | rickie 6:19 |
| raised 11:10 29:22 | reinken 8:25 21:6,6,7,14 22:6 24:10,13 24:21 25:17 26:4 30:11 | requested 9:2 9:4 12:9 14:17 18:17 | right 8:2 12:19 14:8,8,10 16:18,24 17:5 19:16 21:1 23:11 24:4 27:24 28:19 29:18 30:1 31:24 32:3 |
| range 19:14 | reinken's 21:11 | requesting 15:14 18:22,23 | risk 21:17 22:10 23:24 |
| rationality 25:4 | relate 30:12 | requests 13:7 | road 34:21 |
| ready 23:10 29:18 30:3 | related 8:11 26:17 | require 18:22 | rodriguez 7:1 |
| really 16:16 17:7 18:13 30:2 | relevance 16:14 17:9 19:1 28:13 | requirement 13:16 | role 24:22 26:9 27:3 |
| reason 10:22 11:14 | relevant 8:22 9:13 10:3,4,6 15:18 16:12,16 17:7,13,22,25 18:1,4,7,15 27:10 28:20 30:7,14 | reside 26:19 | roles 26:5 27:13 |
| reasonable 22:24 27:21 | | residence 26:20 | roll 23:10 |
| record 34:4 | | resident 28:2 | rule 14:21 18:10 29:18 |
| records 21:12 25:17,20 29:9 30:13 | reliance 16:10 17:14 | resolution 14:22 15:18 25:12 | rules 11:9 13:12 18:14 |
| red 11:11 | remaining 15:6 15:7,8 17:16 27:13 | resolve 31:4 | |
| reference 16:7 | | resolved 16:6 | |
| | | resources 17:21 24:21 | |

| | | | |
|---|---|---|---|
| rulings 33:3 | sense 31:23 | sonya 2:25 | strongly 30:19 |
| ryan 7:2 | separateness | 34:3,8 | subject 30:14 |
| **s** | 16:11 21:20 | sophisticated | submission |
| s 3:1 8:1 | 22:1 | 31:3,15 | 10:8 |
| sabin 4:25 | series 4:3 8:17 | sorry 15:9 | subsequently |
| salle 3:5 | 8:20 9:6 10:8 | 23:16,18 24:6 | 9:1 |
| samuel 6:6 | 10:12,17,24 | 28:18 29:3 | substantial |
| saturday 23:9 | 11:7,24 12:1,8 | sort 24:19 | 8:14 31:6 |
| saw 10:15 | 14:10,14,25 | 26:23 | substantive |
| schedule 18:20 | 15:16 16:11,15 | sought 30:6 | 8:12 15:23 |
| 25:5,23 29:24 | 17:3 19:5,14 | 31:5 | 16:3,13 |
| 30:4 | 21:19,24 22:23 | sounds 19:17 | substituted 9:2 |
| scheduled | 25:22 28:5 | south 4:15 6:3 | subsumed |
| 26:15 | set 8:9 15:21 | southern 1:2 | 27:14 |
| scheduling | 16:17 30:4 | speak 11:21 | suggestion |
| 8:18 | seven 12:22 | 16:19,22 | 27:21 |
| schroeder 7:3 | 22:13,19,20,20 | speaks 23:25 | suite 5:19 6:3 |
| scope 30:5 | 22:24 30:18,24 | specialist | 34:22 |
| se 6:14,16 | 31:1 | 24:24 | sum 27:8 |
| sean 6:22 | shara 3:17 | specific 30:12 | sunday 23:9 |
| search 17:22 | share 25:9 | specifics 19:24 | support 10:2 |
| 24:22 | sharon 9:1 | spoke 23:23 | 14:9 |
| second 11:7 | sheer 19:1,2 | ssb 6:9 | supported |
| 16:4,9 23:14 | short 29:10 | st 4:10 | 17:21 |
| 28:3 | side 8:24 9:4 | stake 12:1 | supporting |
| security 17:25 | 31:22 | 13:14 | 15:5 24:22 |
| seek 17:10 | signature 34:7 | stand 21:25 | supports 20:16 |
| seeking 12:2 | similar 26:9,10 | statements | sure 14:15 |
| seems 16:20 | 27:11 28:14 | 9:24 28:13 | 19:16 27:2 |
| seen 21:10 | simultaneous | states 1:1,12 | suspect 30:19 |
| 28:11 30:23 | 23:5 31:14 | 3:12 | 30:19 |
| selendy 5:9 | sit 26:16 | status 26:13 | systems 11:2 |
| senior 15:3 | sitting 12:19 | stop 28:19 | **t** |
| 17:15,19 24:14 | 26:18 | street 3:5,14 | t 4:10 6:22 |
| 24:17,19 26:2 | situation 24:1 | 4:15,22 5:19 | 34:1,1 |
| seniormost | solutions 34:20 | 6:3 | t.j. 3:8 |
| 20:4 | | | |

**tak**  7:4
**take**  10:23
 12:23 14:9
 19:4 25:10
 27:18 29:16
 30:1 31:18
**taken**  13:17
 25:8
**takes**  12:19
**talent**  21:7
**talk**  24:3
**talking**  26:16
**tanzila**  7:5
**targeted**  27:21
**team**  14:6 20:2
 20:5,9,16,19
 21:15 22:9,12
 22:14 23:5
 24:13,19
**tell**  21:13,24,25
 23:23 30:1
**temidayo**  5:14
**tendered**  15:8
**term**  26:15
**terms**  25:6,24
**testify**  25:3
**testimony**
 15:15,16 16:11
 16:15 17:7,10
 18:16,23 27:12
 27:22
**texas**  6:8,9
**thank**  8:8
 14:16 19:21
 21:1 24:9 27:8
 32:4,5,6

**thing**  13:8
 28:10
**things**  24:22
**think**  10:6,9,22
 11:17 18:13,16
 18:25 19:9
 20:11 24:1
 30:21 31:3
 32:2
**third**  28:10
**thirteen**  31:12
**thomas**  9:5
**thought**  22:2
 24:6
**three**  8:11,19
 16:17 17:22
 20:7,14 28:2
**thursday**  23:9
**tick**  10:7 11:5
**time**  11:8
 12:14 22:2
 25:9,10 26:25
 27:2 28:3,7
 31:18,22
**timeframe**
 18:25
**times**  21:23
**timing**  18:21
 25:6
**tj**  8:5
**today**  10:21
 19:18 28:7
 31:19
**told**  10:11
**tong**  9:3
**top**  13:4

**tosi**  8:25 9:9
 10:3 15:4
 24:16,20 26:8
 27:9
**total**  13:3
 18:16 19:13
**tracking**  23:7
**transactional**
 15:25 16:7
**transcribed**
 2:25
**transcript**
 31:11,12,21,25
 34:4
**transfer**  15:22
 15:24
**travel**  26:15,22
**true**  34:4
**trustee**  3:13
**try**  30:21
**trying**  10:18
**tuganov**  4:21
**turn**  15:25
**two**  8:16 10:23
 11:19 12:3
 13:3,5 14:2
 15:7,10,11,15
 16:4,21,25
 17:1,12 18:4
 18:17 21:2
 22:4 27:18
 29:6,8 30:10
**tx**  6:11

**u**

**u.s.**  1:23 3:13
**uc**  11:23

**ucc**  11:16,19
 12:18
**under**  14:21
 16:4 18:10,25
 20:9
**understand**
 10:16 26:7
**undertaken**
 10:17
**undue**  11:24
**unique**  10:3
 20:12,24 24:1
 29:15
**united**  1:1,12
 3:12
**unsecured**  5:10
 6:2
**upcoming**
 30:14
**urge**  30:15
**using**  2:1
**usually**  26:22

**v**

**value**  20:25
**varick**  3:14
**venable**  4:20
**veritext**  34:20
**view**  9:12
 13:15 16:15
 18:3
**views**  21:18,19
 21:20

**w**

**want**  10:7
 11:22 19:20
 21:3 23:12

[want - zoom]                                                          Page 13

24:5 27:20
31:9,9,25 32:2
**wanted**  10:14
10:16 19:23,23
23:20 27:24,25
**waterfront**
18:7
**way**  23:9
**we've**  9:1,4
17:15 20:1
21:10 28:3
**week**  8:16
26:23
**weigh**  14:23
19:3
**west**  4:22
**westcap**  8:24
9:16 10:24,24
12:21 15:3,4
15:10 17:16
21:9,15 22:8
22:12,14 24:15
24:17 25:19
**westcap's**  9:17
21:20
**westover**  4:11
**white**  6:1
**wildly**  14:17
16:20 18:14
**william**  7:3
**williams**  5:14
**willing**  9:7,8
11:13 12:8
22:22,23 23:8
**window**  8:16
**wish**  10:19
12:25 14:3,9

**witnesses**  14:2
15:13 16:23,25
17:1 18:1 21:2
22:19 23:3
25:7,8,15,16
27:15 29:15
30:22
**work**  26:23
31:21
**worked**  17:18
17:20 20:9
21:16 22:9
25:1 26:1
**working**  11:1
12:14,16 17:23
24:2
**works**  20:15
**world**  26:24
**written**  8:21
31:9,10,10,25
32:1

**x**

**x**  1:4,10 33:1

**y**

**yanez**  4:11
**yards**  4:4
**yeah**  14:1
19:16 22:5
**year**  17:17
25:25
**years**  30:17
**yeung**  7:4
**york**  1:2,14
3:15 4:5,23 5:5
5:12

**young**  17:17

**z**

**zomo**  7:5
**zoom**  2:1