Daniel A. Frishberg
Immanuel J. Herrmann
*Pro Se*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**LIMITED OBJECTION TO THE JOINT MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS, THE COMMITTEE, AND THE INITIAL CONSENTING SERIES B PREFERRED HOLDERS AND (II) GRANTING RELATED RELIEF**

Immanuel J. Herrmann and Daniel A. Frishberg, Celsius Network LLC *et al.* customers, hereby file this limited objection and reservation of rights (this "**Limited Objection**") in response to the *Joint Motion for Entry of an Order (i) Approving the Settlement By and Among the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders and (ii) Granting Related Relief* [Dkt. No. 2899]. We respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**Limited Objection**

1. After more than a year of hard-fought litigation with the Series B Preferred Holders, we are happy for the litigation to, at long last, ***hopefully, finally*** come to an end.

2. The Debtors, the Committee, and the Series B Preferred Holders have filed a proposed settlement that would pay $25 million to the Series B Holders in exchange for certain mutual releases between the parties to the settlement.

3. We do not object to the Debtors' Estates paying the Series B Preferred Holders that ***amount*** of $25 million to end the litigation, but seek to protect our rights as GK8 claims filers.

4. We also object to the releases as written, as they are ambiguous, broad and unclear. We do not consent to any releases to the extent that they release claims that are not property of the Debtors' estates under Section 541 of the Bankruptcy Code; this settlement is not an appropriate vehicle for non-consensual third-party releases of any sort, given that ***we do not know what claims are being released***. Whether specific released claims are property of the Debtors' estates or belong to customers is a fact-specific question that goes beyond whether they are "personal, non-derivative" claims. In addition, the word "personal" could be potentially read to prevent groups from bringing individual claims that are both particularized and substantially similar. It is not realistically justiciable as part of the review of this settlement. Therefore, we propose clarifying that customers can bring any claim that was not property of the Debtors estates as of the commencement of these cases **or** is non-derivative, and preserve the rights of parties in interest to adjudicate such questions in the future by changing the following language on p. 52-23 of Dkt. No 2899 to add the following language in red: "For the avoidance of doubt, this Settlement

1

Agreement, and the obligations and releases hereunder, shall not impose any non-consensual releases on account holders <span style="color:red">to the extent such account holders make claims that are were not property of the Debtors' estates under Section 541 of the Bankruptcy Code as of the commencement of these cases</span>, or to the extent that account holders make any ~~personal,~~ non-derivative claims." We object to releasing any claims that were not property of the Debtors' Estates as of the commencement of these cases and there needs to be a process to adjudicate, and sort out later, which claims were, and were not, property of the Debtors estates. We oppose limiting the ability of account holders to bring direct claims of any type or releasing any claims that are not property of the Debtors' estates.

5. We also note that the proposed settlement would, as of the date of this objection, include *partial* substantive consolidation of two Debtor entities. This would ***not*** restore the pre-decision *status quo*. We remain parties aggrieved by the TOU Order and, accordingly, intend to continue our appeal and request relief under Federal Rule of Bankruptcy Procedure Rule 8007(e)(2) to protect our rights as appellants.

**Requested Relief to Protect Our Rights as GK8 Claims Filers**

We have filed individualized, particularized claims against the GK8 entities for fraud; specifically, in deciding to maintain our deposits with Celsius we both relied upon advertising, on the Celsius website, that indicated that GK8 provided insurance to retail deposits. Pursuant to paragraph 31 of the *Motion Seeking Entry of Interim and Final Orders (i) Authorizing the GK8 Debtors to (a) Continue to Operate the GK8 Cash Management System, (b) Honor Certain Prepetition Obligations Related Thereto, (c) Maintain Existing GK8 Business Forms, and (d)*

*Continue to Perform GK8 Intercompany Transactions, (ii) Granting Superpriority Administrative Expense Status to Postpetition GK8 Intercompany Balances, and (iii) Granting Related Relief* (Dkt. No. 1627) approved pursuant to the *Final Order (i) Authorizing the GK8 Debtors to (a) Continue to Operate the GK8 Cash Management System, (b) Honor Certain Prepetition Obligations Related Thereto, (c) Maintain Existing GK8 Business Forms and (d) Continue to Perform GK8 Intercompany Transactions, (ii) Granting Superpriority Administrative Expense Status to Postpetition GK8 Intercompany Balances, and (iii) Granting Administrative Relief* (Dkt. No 2115). Until those claims are ***fully*** adjudicated, we need to be protected from any dilution in value to those claims, except to the extent that the sum of $25 million, in total, reduces the combined Debtors' assets on a *pro rata* basis. While we object to reducing our claims more than a *pro rata* share across all Debtor affiliates and believe that we should be protected from such a dilution given that our GK8 claims should be higher priority than that of the Series B Preferred Holders, at a bare minimum, we seek to ensure that remaining assets at the GK8 entities remain available for GK8 claimants such as ourselves or that the Court otherwise fashions relief to protect us.

### Requested Relief to Protect Our Rights as Appellants Under Rule 8007(e)(2)

The *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under The Terms of Use.* [Dkt. No 2259] is on appeal. Which customers will have access to which assets–and who will get "first dibs" at which entities, is on the line.

We know that the substantive consolidation proposal ***taken alone*** in this settlement leaves Earn customers without access to Celsius Networks Lending, an entity with more than $1 billion on the balance sheet and which sits above the consolidated entities. *See* **Exhibit 1**. No parties

3

dispute this. It also appears that certain customers may get "last dibs" on access to billions more on the balance sheet of other non-consolidated, *and* non-Debtor affilates. Our understanding is that, under the absolute priority rule, direct claims against such companies would take priority at each subsidiary company. Only *after* direct claims are paid at each subsidiary company, would the remaining funds then "flow up" to the parent company, Celsius Network Limited. In addition, it appears, customers would have *no access* to non-Debtor affiliates (with respect to contract claims).

In other words, our understanding is that, for companies that sit under Celsius Network Limited, claims would be adjudicated at each non-substantively-consolidated entity first, and only after those claims were paid would the remainder "flow up" to the parent company. Thus, access to funds at entities *holding billions* rides on this decision. We are still studying the decision to find out more about how funds would flow. On the other hand, had the decision gone the other way, we believe that all customers would have had contract claims against every single Celsius debtor and non-debtor affiliate in a multi-billion-dollar bankruptcy.

A *future plan* purports to unscramble this mess; the Parties are downplaying the stakes here, in a dramatic way, and, we contend, a proposed plan that pays customers out of non-consolidated entities would likely violate the absolute priority rule with respect to individual Debtors anyway, and would therefore be unconfirmable as written once creditors at individual entities start objecting. That is a matter for another day. The matter for today is not mooting our pending appeal that can help untangle this situation by restoring customer claims at all Debtor entities.

4

There is a danger that parties to the settlement may be trying to moot our appeal because the settlement requires the parties to the settlement to "stipulate" to remove themselves from it upon approval of the settlement. On Wednesday, July 5, 2023, via e-mail, we were informed that the Series B Preferred Holders were taking the position that "that if the settlement is approved by the Bankruptcy Court as requested, ***it will moot the appeals entirely and negate the need for any briefing to [the District] Court.***" (Emphasis added.)[2]

After meeting and Conferring with the Series B Preferred Holders and the Committee, refining our joint letter, and pointing out that the relief contained in the settlement potentially deprives customers of access to entities that we would have had access to, had the decision gone the other way, they ultimately re-considered their position and modified the letter, to the District Court, to state that "if the settlement is approved by the Bankruptcy Court as requested, ***and a plan of reorganization consistent with the settlement is confirmed***, such settlement and plan will moot the appeals entirely and negate the need for any briefing to this Court." (Emphasis added).

We request that this Court consider the settlement as a way to end the litigation; in effect, a "nuisance settlement," but that this Court ***not*** predicate its approval of the settlement on any findings that implicate the pending appeal of the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under The Terms of Use* (the "**TOU Order**") [Dkt. No 2259]. To be clear, we do not believe that the Court approving the settlement based upon the

---

[2] *See In Re Celsius Network LLC,* S.D.N.Y. District Court Case No. 1:23-CV-02882-JLR, *Joint letter* at Dkt. No. 21, **Exhibit 2**

5

decision **would** moot the appeal of the TOU Appeal.[3] But, it seems the Series B Preferred Holders do.

To be clear, we do not object to the $25 million payment to end the litigation. In addition, our understanding is that this Court need not rely upon the decision on appeal to approve the settlement.

## Conclusion

We do not object to a settlement of the amount of $25 million to end the litigation with the Series B Preferred Holders, subject to the conditions, protections, and other relief requested herein, and subject to our rights as appellants being expressly preserved.

| | |
|---|---|
| */s/ Daniel A. Frishberg* | */s/ Immanuel Herrmann* |
| Daniel A. Frishberg | Immanuel Herrmann |
| *Pro Se* | *Pro Se* |
| July 11, 2023 | July 11, 2023 |

---

[3] Even then, the question of which entities proofs of claim can be filed against by customers may still be an open question. In other words, there is a ton to resolve before this appeal is resolved.

6

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2023, a true and correct copy of the *Limited Objection to the Joint Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders and (II) Granting Related Relief* was filed with the Clerk of the United States Bankruptcy Court in the Southern District of New York and served upon Chambers and the Core/2002 service list, including the Series B Preferred Holders, via electronic mail.

Respectfully Signed,

*/s/ Immanuel J. Herrmann*
*Pro se*
Immanuel J. Herrmann
July 11, 2023

# EXHIBIT 1



**Would customers have claims at all debtor *and* non-debtor affiliates, had the decision gone the other way?**

# EXHIBIT 2

July 7, 2023

**VIA ECF**

Hon. Jennifer Rochon

United States District Judge
United States District Court
Southern District of New York
500 Pearl St., Courtroom 20B
New York, NY 10007-1312

*Re: In re Celsius Network LLC*, No. 23-CV-02882-JLR (S.D.N.Y.)

Dear Judge Rochon:

We submit this joint letter on behalf of Appellants, the Official Committee of Unsecured Creditors (the "**Committee**") and Immanuel Herrmann and Daniel Frishberg (the "**Customer-Appellants**"), and Appellees, Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (the "**Series B Preferred Holders**"), in the above-referenced appeal number 23-CV-02882-JLR (the "**Terms of Use Appeal**") in response to the Court's order dated June 26, 2023 [ECF No. 16] and the memorandum endorsement dated June 28, 2023 [ECF No. 18].[1]

On June 20, 2023, Customer-Appellants filed their notice of appeal from the Bankruptcy Court's *Order Denying Immanuel Herrmann and Daniel Frishberg's Motion to Vacate the Customer Claims Opinion and Order* [Bankr. ECF No. 2819].[2] That appeal has been docketed in this Court as case number 23-CV-05570 (the "**Rule 60 Appeal**").

In its order and endorsement, the Court directed the parties to advise the Court of their position regarding the consolidation of the Terms of Use Appeal and the Rule 60 Appeal, to propose a briefing schedule in the Terms of Use Appeal in light of the possibility of consolidation with the Rule 60 Appeal, and to address how a possible settlement between Celsius Network LLC and its debtor-affiliates, the Committee, and the Series B Preferred Holders would impact briefing in this action.

---

[1] "ECF No." refers to the docket in the Terms of Use Appeal. "Bankr. ECF No." refers to the docket in *In re Celsius Network LLC, et al.*, Case No. 22-10964 (Bankr. S.D.N.Y.).

[2] Customer-Appellants' *Motion to Vacate the Customer Claims Opinion and Order* was filed in the chapter 11 cases at Bankruptcy Docket Number 2811 (the "**Motion to Vacate**").

**COMMITTEE AND SERIES B PREFERRED HOLDERS' POSITION**

Neither the Committee nor the Series B Preferred Holders oppose consolidating the Rule 60 Appeal with the Terms of Use Appeal.[3]

The Series B Preferred Holders assert that if the settlement is approved by the Bankruptcy Court as requested, *see* ECF No. 17, and a plan of reorganization consistent with the settlement is confirmed, such settlement and plan will moot the appeals entirely and negate the need for any briefing to this Court. Accordingly, to provide the maximum efficiency and preservation of resources, the Series B Preferred Holders submit that briefing in the appeals should be held in abeyance pending Bankruptcy Court review of the settlement and confirmation of a plan consistent with such settlement.

The Committee also supports holding briefing in abeyance for these reasons, and because the Committee anticipates voluntarily dismissing its Terms of Use Appeal after Bankruptcy Court approval of the settlement.

**CUSTOMER-APPELLANTS' POSITION**

Customer-Appellants do not object to holding both appeals in abeyance until the Bankruptcy Court acts on the settlement or by July 31, 2023, whichever is earlier.

Customer-Appellants assert that the Series B Preferred Holders are properly appellees in the Rule 60 Appeal, and respectfully request that the Court permit the Customer-Appellants to file an *Amended Notice of Appeal* in the future, should future briefing resolve the question differently. Furthermore, the Customer-Appellants have been informed by the Debtors that the Debtors are "not a party to the [Rule 60] appeal." The requested relief in Customer-Appellants' *Motion to Vacate the Opinion and Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use and the Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* [Bkr. Dkt. No. 2811], which is the motion underlying the order now on appeal as the **Rule 60 Appeal**, included vacating the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under The Terms of Use* [Bankr. ECF No. 2265] (the "**Terms of Use Order**"), the *Opinion Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* [Bkr. Dkt. No. 2205] (the "**Terms of Use Opinion**") and the *Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* [Bkr. Dkt No. 1747] (the "**Briefing Order**"). The Series B Preferred Holders supported the **Briefing**

---

[3] The Series B Preferred Holders assert that the Customer-Appellants improperly designated the Series B Preferred Holders as appellees in the Rule 60 Appeal. Customer-Appellants' Motion to Vacate was based on an alleged lack of service by the Debtors in the chapter 11 cases and the Series B Preferred Holders did not file an objection (nor did any party). The Motion to Vacate was denied by the Bankruptcy Court *sua sponte*. Should briefing on the Rule 60 Appeal become necessary, the Series B Preferred Holders reserve their rights to determine whether to respond.

2

**Order** in the Bankruptcy Court over the Committee's Objection after "months of negotiations" with the Debtors.[4,5]

Customer-Appellants assert that the only party aggrieved by vacatur of the **Terms of Use Order** is the Series B Preferred Holders given that the Debtors took the Committee's side (and Customers' side averse to the Series B Preferred Holders) in the Terms of Use litigation, also known as the "Briefed Legal Issue" in the Bankruptcy Court. Similar to the Committee, the Debtors argued that customers had claims against all Debtor entities. The Debtors and the Committee argued together "on behalf of" customers against the Series B Preferred Holders, and the Debtors and the Committee lost.

The Debtors were served with the Notice of Appeal and were listed as "other parties" in that Notice; they are well aware of the appeal and can move to intervene at any time if they wish to defend the **Terms of Use Opinion and Order** and still can, given that deadlines are adjourned. While the Debtors can be added as mandatory appellees if the Court so orders, or can be otherwise ordered to brief issues around lack of service, Customer-Appellants take the position that the Series B Preferred Holders are the proper appellees, and the only required appellees in this matter. The Customer-Appellants support consolidation for the reasons stated in their letter dated June 20, 2023 [ECF No. 15].

Finally, Customer-Appellants assert that the proposed settlement does not and cannot moot these appeals. As just one example of why, the settlement, as proposed, does not include substantive consolidation of Celsius Networks Lending LLC, which holds more than $1 billion in assets.[6] Customer-Appellants are also studying the rest of the substantive consolidation proposal. For these and other reasons, Customer-Appellants assert that the proposed settlement does not restore the pre-decision *status quo* and therefore, they remain parties aggrieved by the decision. The proposed settlement also does not vacate or reverse the *Order Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Bankr. ECF No. 2265] (and Customer-Appellants contend it cannot vacate an order on appeal without the approval of the District Court).

**CONCLUSION**

The parties will file a status report with respect to the settlement and propose a briefing schedule once the Bankruptcy Court acts on the settlement or by July 31, 2023, whichever is earlier. Thank you for your time and attention to this matter.

---

[4] *See Series B Preferred Holders' Statement (a) In Support of Debtors Motion Seeking Entry of an Order (i) Setting a Briefing Schedule and (ii) Granting Related Related Relief and (b) In Response to the Committee's Objection* [Bkr. Dkt. No. 1631]

[5] *See The Official Committee of Unsecured Creditors' Objection to Debtors' Motion Seeking Entry of an Order (i) Setting a Briefing Schedule and (ii) Granting Related Relief* [Bkr. Dkt. No. 1592]

[6] *See* Bkr. Case. No. 22-10969-mg , Dkt. No 5, p. 20, Celsius Networks Lending LLC Schedules
https://cases.stretto.com/public/x191/11828/PLEADINGS/1182810062280000000021.pdf

*See also* 1:23-cv-03920-JHR, Dkt. No. 11, *Exhibit: Celsius Organizational Structure* (Noting Celsius Networks Lending LLC sits above the substantively consolidated entities.)

3

Respectfully submitted,

| | |
|---|---|
| **THE COMMITTEE** | **SERIES B PREFERRED HOLDERS** |
| White & Case LLP | Milbank LLP |
| | |
| /s/ *Samuel P. Hershey* | /s/ *Melanie Westover Yanez* |
| David M. Turetsky | Dennis F. Dunne |
| Samuel P. Hershey | Nelly Almeida |
| Joshua D. Weedman | 55 Hudson Yards |
| 1221 Avenue of the Americas | New York, NY 10001 |
| New York, New York 10020 | Telephone: (212) 530-5000 |
| Telephone: (212) 819-8200 | Facsimile: (212) 660-5219 |
| Facsimile: (212) 354-8113 | Email: ddunne@milbank.com |
| Email: david.turetsky@whitecase.com | nalmeida@milbank.com |
| sam.hershey@whitecase.com | |
| jweedman@whitecase.com | Andrew M. Leblanc |
| | Melanie Westover Yanez |
| Michael C. Andolina | 1850 K Street, NW, Suite 1100 |
| Gregory F. Pesce | Washington, DC 20006 |
| 111 South Wacker Drive, Suite 5100 | Telephone: (202) 835-7500 |
| Chicago, Illinois 60606 | Facsimile: (202) 263-7586 |
| Telephone: (312) 881-5400 | Email: aleblanc@milbank.com |
| Facsimile: (312) 881-5450 | mwyanez@milbank.com |
| Email: mandolina@whitecase.com | |
| gregory.pesce@whitecase.com | *Counsel to Appellees Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP* |
| Keith H. Wofford | |
| Southeast Financial Center, Suite 4900 | |
| 200 South Biscayne Blvd. | – and – |
| Miami, Florida 33131 | |
| Telephone: (305) 371-2700 | Jones Day |
| Facsimile: (305) 358-5744 | |
| Email: kwofford@whitecase.com | /s/ *Joshua M. Mester* |
| | Joshua M. Mester (*pro hac vice* application forthcoming) |
| Aaron E. Colodny | 555 South Flower Street |
| 555 South Flower Street, Suite 2700 | Fiftieth Floor |
| Los Angeles, California 90071 | Los Angeles, CA 90071 |
| Telephone: (213) 620-7700 | Telephone: (213) 489-3939 |
| Facsimile: (213) 452-2329 | Facsimile: (213) 243-2539 |
| Email: aaron.colodny@whitecase.com | Email: jmester@jonesday.com |
| | |
| *Counsel to the Appellant Official Committee of Unsecured Creditors* | *Counsel to Appellee CDP Investissements Inc.* |

**IMMANUEL J. HERRMANN**

*/s/ Immanuel J. Herrmann*
Immanuel J. Herrmann

*Pro Se Customer-Appellant*

**DANIEL A. FRISHBERG**

*/s/ Daniel A. Frishberg*
Daniel A. Frishberg

*Pro Se Customer-Appellant*