# EXHIBIT 1

**Settlement Agreement**

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (as may be amended, supplemented, or otherwise modified from time to time, this "Settlement Agreement") is made and entered into as of June 27, 2023 (the "Execution Date"), by and among the following parties (each of the following described in sub-clauses (i) through (iv) of this preamble, collectively, the "Parties" and each, a "Party"):[1]

(i)      Celsius Network LLC ("LLC") and its debtor affiliates (collectively, the "Debtors" and, together with their non-debtor affiliates, "Celsius");[2]

(ii)     the official committee of unsecured creditors of the Debtors, appointed by the United States Trustee pursuant to section 1102 of the Bankruptcy Code (the "Committee" and, together with the Debtors, the "Estate Parties");

(iii)    the undersigned beneficial holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares (as defined below), which shall include Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. (the "Initial Consenting Series B Preferred Holders" and, collectively with the Estate Parties, the "Initial Parties"); and

(iv)     any beneficial holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares that execute and deliver counterpart signature pages to this Settlement Agreement to counsel to the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders prior to the start of the hearing before the Bankruptcy Court regarding approval of this Settlement Agreement, solely in their capacity as beneficial holders of Series B Preferred Shares (the Entities in this clause (iv) together with the Initial Consenting Series B Preferred Holders, collectively, the "Consenting Series B Preferred Holders").

---

[1]      Capitalized terms used but not otherwise defined in this Settlement Agreement (including in Annex A hereto) shall have the meanings ascribed to them in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807] dated June 15, 2023 (the "June 15 Plan") or the *Joint Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders and (II) Granting Related Relief* (the "Settlement Motion") filed contemporaneously herewith, as applicable. For the avoidance of any doubt, to the extent that any of the defined terms in the June 15 Plan are revised, modified, or amended in an amended, supplemented, or otherwise modified joint chapter 11 plan of reorganization of the Debtors filed after the date of this Settlement Agreement (a "Plan"), the defined terms in the June 15 Plan shall govern with respect to this Settlement Agreement.

[2]      The Debtors are: Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd.; GK8 UK Limited; and GK8 USA LLC.

## RECITALS

A.    **WHEREAS**, as of the Petition Date (as defined below), a total of approximately 33,821 shares of series B preferred stock in Celsius Network Limited ("CNL" and such shares, the "Series B Preferred Shares") were held by all beneficial holders, or investment advisors or managers of beneficial holders, of Series B Preferred Shares (the "Series B Preferred Holders").

B.    **WHEREAS**, on July 13, 2022 (the "Petition Date"), certain of the Debtors[3] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

C.    **WHEREAS**, on July 27, 2022, the United States Trustee for Region 2 appointed the Committee.

D.    **WHEREAS**, the Initial Parties have been engaged in litigation regarding the recovery waterfall for CNL's estate since September 2022, including, but not limited to, the following filings, events, and disputes (collectively, the "Series B Matters"):

   (i)    on September 22, 2022, the Initial Consenting Series B Preferred Holders filed the *Motion of Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. for Entry of an Order Directing the Appointment of an Official Preferred Equity Committee* [Docket No. 880] (the "Preferred Equity Committee Motion");

   (ii)    on October 13, 2022, (a) the Debtors filed the *Debtors' Objection to Motion for Entry of an Order Directing the Appointment of an Official Preferred Equity Committee* [Docket No. 1045] and (b) the Committee filed *The Official Committee of Unsecured Creditors' Objection to the Motion of Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP, and CDP Investissements Inc. for Entry of an Order Directing the Appointment of an Official Preferred Equity Committee* [Docket No. 1048];

   (iii)    on October 20, 2022, the Bankruptcy Court held a contested hearing regarding the Preferred Equity Committee Motion;

   (iv)    on October 24, 2022, the Bankruptcy Court entered the *Memorandum Opinion and Order Denying Motion for the Appointment of an Official Preferred Equity Committee* [Docket No. 1166], denying the Preferred Equity Committee Motion without prejudice;

   (v)    on October 25, 2022, the Initial Consenting Series B Preferred Holders filed the *Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009*

---

[3]    Debtors GK8 Ltd., GK8 USA LLC, and GK8 UK Limited filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 7, 2022.

*for Entry of an Order Directing the Debtors to Amend Their Schedules* [Docket No. 1183] (the "Dollarization Motion"), seeking an order that the Debtors be required to schedule all Claims (as defined in section 101(5) of the Bankruptcy Code) against their Estates in U.S. dollars as of the Petition Date;

(vi)      on November 8, 2022, (a) the Debtors filed the *Debtors' Objection to the Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Docket No. 1304], objecting to the Dollarization Motion, and (b) the Committee filed *The Official Committee of Unsecured Creditors' Statement and Reservation of Rights With Regards to the Series B Preferred Holders' Motion Pursuant to Bankruptcy Rule 1009 for Entry of an Order Directing the Debtors to Amend Their Schedules* [Docket No. 1303], stating its position regarding the Dollarization Motion;

(vii)      on November 14, 2022, (a) the Initial Consenting Series B Preferred Holders filed the *Notice of Filing Revised Proposed Order Pursuant to Bankruptcy Rule 1009 Directing the Debtors to Amend Their Schedules* [Docket No. 1342] (the "Conversion Table Order"), reflecting a consensual resolution of the Dollarization Motion that preserved the ultimate issue of "dollarization" and (b) the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* [Docket No. 1338], requesting a court-ordered briefing schedule regarding "which Debtors are liable to account holders under the global contract (the "Terms of Use") between Celsius Network LLC and its account holders" (the "Contract Liability Issue");

(viii)      on November 17, 2022, the Bankruptcy Court entered the *Order Pursuant to Bankruptcy Rule 1009 Directing the Debtors to Amend Their Schedules in Certain Circumstances* [Docket no. 1387];

(ix)      on December 19, 2022, the Bankruptcy Court entered the *Order (I) Setting a Briefing Schedule and (II) Granting Related Relief* [Docket No. 1747], approving a revised, agreed briefing schedule for the Contract Liability Issue;

(x)      on December 28, 2022, the Initial Parties filed their respective opening briefs regarding the Contract Liability Issue [Docket Nos. 1795, 1797, and 1799], and on January 31, 2023, the Initial Parties filed their respective response briefs [Docket Nos. 1960, 1962, and 1965], with the Debtors and the Committee arguing that all Celsius entities were liable under the Terms of Use, and the Initial Consenting Series B Preferred Holders arguing that only LLC was liable under the Terms of Use;

(xi)      on February 6, 2023, the Initial Parties presented argument in a contested hearing regarding the Contract Liability Issue;

(xii)    on February 9, 2023, the Bankruptcy Court entered the *Order Requiring Debtors to File Information Regarding Intercompany Claims* [Docket No. 2017], requiring the Debtors to file information on the docket regarding the amount and nature of any intercompany claim held by LLC against any other Debtor entity;

(xiii)    on February 16, 2023, the Debtors filed the *Debtors' Statement with Respect to Intercompany Claims Held by Debtor Celsius Network LLC Against its Debtor Affiliates* [Docket No. 2092] (the "Intercompany Statement");

(xiv)    on March 9, 2023, the Bankruptcy Court issued the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205] (the "Contract Liability Opinion"), finding that only LLC, not CNL or any other Debtor or non-Debtor affiliate, is contractually liable to account holders under the Terms of Use, and on March 17, 2023, the Bankruptcy Court entered the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* [Docket No. 2265] (the "Contract Liability Order"), implementing the Contract Liability Opinion;

(xv)    on March 31, 2023, (a) the Debtors filed the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2358], which provided that Series B Preferred Holders would not receive any distributions, because of either (i) a substantive consolidation of CNL and LLC for Plan purposes or (ii) the allowance of significant intercompany claims held by LLC against CNL and (b) the Committee filed a *Notice of Appeal* [Docket No. 2356] regarding the Contract Liability Opinion and Contract Liability Order (the "Contract Liability Appeal");

(xvi)    on April 4, 2023, (a) the Initial Consenting Series B Preferred Holders filed the *Series B Preferred Holders' Motion for Entry of an Order Establishing Estimation Procedure for the Intercompany Claim Between Celsius Network LLC and Celsius Network Limited in Furtherance of Formulating the Debtors' Plan of Reorganization* [Docket No. 2367] and (b) the Committee filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order (I) Establishing Procedures to Estimate the Intercompany Claim that Celsius Network, LLC has Against Celsius Network Limited and (II) Granting Related Relief* [Docket No. 2369] (together, the "Estimation Motions");

(xvii)    on April 10, 2023, the Committee filed the *Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* [Docket. No. 2399];

(xviii)    on April 14, 2023, (a) the Initial Consenting Series B Preferred Holders filed the *Series B Preferred Holders' Objection to the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* [Docket No. 2467] and (b) certain account holders appealed the Contract Liability Opinion and Contract Liability Order (the "Account Holder Appeal" filed by the "Appealing Account Holders");

(xix)    on April 15, 2023, (a) the Debtors filed the *Debtors' Limited Objection to (I) the Series B Preferred Holders' Motion for Intercompany Claim Estimation Procedures and (II) the Official Committee of Unsecured Creditors' Motion for Intercompany Claim Estimation Procedures* [Docket No. 2471], arguing that intercompany claim estimation, substantive consolidation, and fraudulent transfer issues should be briefed in parallel, and (b) the Committee filed the *Limited Objection of the Official Committee of Unsecured Creditors to the Series B Preferred Holders' Motion for Entry of an Order Establishing Estimation Procedure for the Intercompany Claim Between Celsius Network LLC and Celsius Network Limited in Furtherance of Formulating the Debtors' Plan of Reorganization* [Docket No. 2471];

(xx)    on April 18, 2023, the Bankruptcy Court entered the *Order Granting the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert Non-Contract Claims on Behalf of Account Holders* [Docket No. 2496] (the "Class Claim Order");

(xxi)    on April 24, 2023, the Bankruptcy Court entered the *Order Setting Schedule Regarding (I) Estimation of Certain Intercompany Contract Claims Between Celsius Network LLC and Celsius Network Limited, (II) Substantive Consolidation of Celsius Network LLC and Celsius Network Limited, and (III) Constructive Fraudulent Transfer Claim* [Docket No. 2522] (the "Phase II Scheduling Order") establishing a schedule for briefing (a) the estimation of the intercompany claim held by LLC against CNL for allowance purposes, (b) the substantive consolidation of LLC and CNL, and (c) a constructive fraudulent transfer claim that the Committee alleged may be brought on behalf of LLC's estate against CNL (together, the "Confirmation Issues");

(xxii)    on April 27, 2023, the Appealing Account Holders filed the *Customer-Appellants' Motion for a Stay Pending Appeal of the Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use Pursuant to Federal Rule of Bankruptcy Procedure 8007* [Docket No. 2545];

(xxiii)    on April 29, 2023, the Committee filed Proof of Claim No. 29068 on the Debtors' claims register (the "<u>Class Claim</u>") [Docket No. 2556];

(xxiv)    on May 1, 2023, in accordance with the Phase II Scheduling Order, (a) the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Substantively Consolidating the Estates of Celsius Network Limited and Celsius Network LLC and (II) Granting Related Relief* [Docket No. 2563], (b) the Committee filed the *Motion by the Official Committee of Unsecured Creditors for Entry of an Order Substantively Consolidating the Estates of Celsius Network Limited and Celsius Network LLC, and Joinder in the Debtors' Motion Seeking the Same Relief* [Docket No. 2565] ((a) and (b) together, the "<u>Substantive Consolidation Motions</u>"), (c) the Debtors filed the *Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors With Respect to Certain Claims and Causes of Action Set Forth in the Scheduling Order* [Docket No. 2562] (the "<u>Fraudulent Transfer Standing Stipulation</u>"), agreeing to provide the Committee with derivative standing to pursue a constructive fraudulent transfer claim that the Committee alleged may be brought on behalf of LLC's estate against CNL; and (d) the Committee, on behalf of LLC's estate, commenced an adversary proceeding and filed a complaint against CNL [Adv. No. 23-01104, Docket No. 1] (the "<u>Fraudulent Transfer Complaint</u>"), alleging that certain transfers between CNL and LLC constituted fraudulent transfers;

(xxv)    on May 2, 2023, the Initial Consenting Series B Preferred Holders filed a *Notice of Appeal* [Docket No. 2576] regarding the Class Claim Order (the "<u>Class Claim Appeal</u>");

(xxvi)    on May 10, 2023, the Initial Consenting Series B Preferred Holders filed the *Series B Preferred Holders' Statement Regarding the Customer-Appellants' Motion for a Stay Pending Appeal* [Docket No. 2612];

(xxvii)    on May 17, 2023, the Committee filed the *Motion of the Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in Each Case Pursuant to Bankruptcy Rule 7023* [Docket No. 2670] (the "<u>Class Certification Motion</u>");

(xxviii)    on May 26, 2023, the Bankruptcy Court approved the Fraudulent Transfer Standing Stipulation [Docket No. 2716];

(xxix)    on June 6, 2023, the Initial Parties participated in a discovery conference before the Bankruptcy Court to resolve discovery disputes in connection with the Confirmation Issues;

(xxx)    between June 9, 2023 and June 12, 2023, the Initial Parties participated in eight depositions, with eleven other depositions scheduled but paused as a result of the settlement contemplated by this Settlement Agreement;[4]

(xxxi)    on June 12, 2023, the Bankruptcy Court entered the *Order Establishing Schedule for Litigation of the Motion of the Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in Each Case Pursuant to Bankruptcy Rule 7023* [Docket No. 2795] (the "Class Certification Scheduling Order");

(xxxii)    on June 12, 2023, the Initial Consenting Series B Preferred Holders stipulated with the Committee for voluntary dismissal without prejudice of the Class Claim Appeal;

(xxxiii)    the response brief of the Initial Consenting Series B Preferred Holders in the Contract Liability Appeal proceedings is due on July 10, 2023;

(xxxiv)    under the Phase II Scheduling Order, (a) the deadline for the Initial Parties to file opening briefs regarding the Confirmation Issues is June 30, 2023, (b) the deadline for the Initial Parties to file response briefs is July 10, 2023, and (c) a trial is to be held the week of July 24, 2023; and

(xxxv)    under the Class Certification Scheduling Order, (a) the deadline for the Committee to file any affirmative expert reports is July 12, 2023, (b) the deadline for any rebuttal expert reports is July 24, 2023, (c) the deadline for the Committee to file a brief in support of the Class Certification Motion is July 28, 2023, (d) the deadline for the Series B Preferred Holders to file a brief in opposition is August 10, 2023, (e) the deadline for the Committee to file a response brief is August 16, 2023, and (f) a hearing is to be held during the week of September 25, 2023.

E.    **WHEREAS**, following good-faith and arm's-length negotiations, the Parties have reached agreement on a settlement resolving all of the disputes between the Parties, including, but not limited to, the Series B Matters, on the terms set forth in this Settlement Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby contract, covenant, and agree that all disputes, claims, and causes of action between the Estate Parties and the Consenting Series B Preferred Holders (including, but not limited to, the recovery waterfall for CNL's estate and the Series B Matters) (the "Settled Claims") be fully resolved, settled, compromised, extinguished and dismissed with

---

[4]    Additional depositions were requested but not yet scheduled.

prejudice, as applicable, subject to the approval of the Bankruptcy Court, on the following terms and conditions:

## AGREEMENT

1.    **For Settlement Purposes Only**.  This Settlement Agreement is for settlement purposes only.  Except as explicitly set forth in this Settlement Agreement, the fact of this Settlement Agreement or any provision herein, the negotiations or proceedings related hereto, and any actions taken hereunder shall not constitute or be construed as (a) any admission of the validity of any claim or any fact alleged by any of the Parties, (b) any admission of any wrongdoing, fault, violation of law, breach of contract, or liability of any kind on the part of any of the Parties, (c) any admission as to any claim or allegation made in any demand of, action against, or proceeding against any of the Parties, and/or (d) a waiver of any applicable defense by any of the Parties.  This Settlement Agreement shall not be offered or admissible as evidence against any Party in any action or proceeding in any forum for any purpose whatsoever, except as evidence of its existence or terms or in any action or proceeding brought to enforce its terms.

2.    **Approval**.  This Settlement Agreement shall be effective on the date the Bankruptcy Court enters an order approving the motion seeking approval of this Settlement Agreement (the "Settlement Motion"), which order shall be substantially in the form attached hereto as **Exhibit A** or as provided herein and otherwise in form and substance reasonably acceptable to each of the Parties (the "Settlement Approval Order").  Although the Parties shall sign this Settlement Agreement prior to the entry of the Settlement Approval Order, this Settlement Agreement shall not be effective or binding on the Parties if the Settlement Approval Order is not entered by the Bankruptcy Court.

3.    **Settlement Payment**.  In full and final settlement of all Settled Claims, an aggregate amount of $25,000,000.00 cash (the total amount, the "Settlement Funds") shall be distributed among the Series B Preferred Holders as set forth in this Settlement Agreement and funded from the cash proceeds referenced in paragraph 9 (the "GK8 Proceeds") of the *Order (I) Approving the Sale of the GK8 Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Authorizing the GK8 Debtors to Enter into and Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1686] (the "GK8 Sale Order").  The Settlement Approval Order shall provide that the Debtors may use the remaining GK8 Proceeds (*i.e.*, all GK8 Proceeds other than the Settlement Funds) in the ordinary course of their business and pursuant to the *Final Order (I) Authorizing the GK8 Debtors to (A) Continue to Operate the GK8 Cash Management System, (B) Honor Certain Prepetition Obligation Related Thereto, (C) Maintain Existing GK8 Business Forms, and (D) Continue to Perform GK8 Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition GK8 Intercompany Balances, and (III) Granting Related Relief* [Docket No. 2115].

4.    **Settlement Payment Distributions**.  The Parties agree that (a) the Initial Consenting Series B Preferred Holders shall receive, in the aggregate, $24,000,000.00 of the Settlement Funds on account of the fees and expenses incurred by the Initial Consenting Series B Preferred Holders in connection with the Series B Matters and the Chapter 11 Cases to be

distributed within three (3) business days of the entry of the Settlement Approval Order in accordance with the wire instructions provided by the Initial Consenting Series B Preferred Holders to the Debtors, and (b) each Series B Preferred Holder shall receive its Pro Rata Share of $1,000,000.00 of the Settlement Funds distributed (x) in the case of any Series B Preferred Holder who is a Consenting Series B Preferred Holder as of the date of entry of the Settlement Approval Order, within three (3) business days of the entry of the Settlement Approval Order in accordance with the wire instructions provided by such Consenting Series B Preferred Holder to the Debtors, and (y) in the case of all other Series B Preferred Holders, on the effective date of the Plan (as revised in accordance with Section 5 below) pursuant to and in accordance therewith, in each case in full and final settlement and release of such Consenting Series B Preferred Holder's Series B Preferred Shares and any Claims arising out of or related thereto; *provided*, for the avoidance of any doubt, that such Series B Preferred Shares shall remain outstanding until the occurrence of the Effective Date, upon which such Series B Preferred Shares shall be deemed discharged and extinguished in accordance with the terms of the Plan. Notwithstanding the foregoing, Settlement Funds to be distributed in accordance with clauses (a) and (b)(x) hereof shall be immediately due and payable to the applicable Consenting Series B Preferred Holders upon entry of the Settlement Approval Order. For the avoidance of doubt, all distributions of Settlement Funds to Series B Preferred Holders in accordance with this Settlement Agreement shall be irrevocable and not subject to clawback, absent a material breach of this Settlement Agreement by the particular Series B Preferred Holder from whom clawback is sought. Notwithstanding anything to the contrary in the Plan if, for any reason, any Settlement Funds have not actually been distributed to Series B Preferred Holders in accordance with this Section 4 as of the date that is 3 months after the Effective Date, each Consenting Series B Preferred Holder shall, upon request, receive its Consenting Pro Rata Share of such undistributed Settlement Funds within three (3) business days of such date, in accordance with the wire instructions provided by the Consenting Series B Preferred Holders to the Debtors.

5.    **Revised Plan**. As soon as reasonably practicable after entry of the Settlement Approval Order, the Debtors shall file a revised Plan reflecting the terms of this Settlement Agreement. For the avoidance of any doubt, such revised Plan shall provide that each Series B Preferred Holder who did not receive its Pro Rata Share of the Settlement Funds in accordance with Section 4(b)(x) hereof shall receive its Pro Rata Share of the Settlement Funds pursuant to the Plan, subject to any unclaimed distribution being redistributed in accordance with Section 4 hereof. The Plan, as revised in accordance with this Section 5 and as may be further amended, supplemented, revised, or otherwise modified, shall provide that (i) the Initial Series B Preferred Holders, the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders, and the other Consenting Series B Preferred Holders (solely in their capacity as Consenting Series B Preferred Holders) and their Related Parties are "Released Parties" under the Plan and shall not need to be specifically enumerated notwithstanding subpart (d) of the Excluded Parties definition and (ii) no Initial Series B Preferred Holders, former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders, or other Consenting Series B Preferred Holders (solely in their capacity as Consenting Series B Preferred Holders), nor any of their Related Parties are "Excluded Parties" under the Plan unless already expressly named as Excluded Parties in the June 15 Plan or subsequently agreed between the Estate Parties and the Initial Consenting Series B Preferred Holders.

6.      **Class Certification**.  Immediately upon the filing of the Settlement Motion, and in no event later than June 28, 2023, the Initial Parties shall jointly request from the Bankruptcy Court a temporary stay or extension of the Class Certification Scheduling Order until the entry of the Settlement Approval Order.  Upon execution of this Settlement Agreement, the Initial Consenting Series B Preferred Holders shall refrain from objecting to the Class Certification Motion, any proposed schedule for the certification of the Class Claim submitted to the Bankruptcy Court by the Estate Parties, or the allowance of the Class Claim in the amount asserted therein solely for the purposes of claims administration; *provided* that, if the Settlement Approval Order is not entered, (i) the foregoing shall be of no force and effect and (ii) the Initial Parties shall jointly propose to the Bankruptcy Court a new schedule for litigation concerning the Class Certification Motion.

7.      **CNL-LLC Substantive Consolidation and Intercompany Migration Claim**. The Parties agree that the Settlement Motion shall seek to implement the substance of the settled disputes between the Parties concerning the allowance of the Intercompany Claim, the Substantive Consolidation Motions, and the Fraudulent Transfer Complaint, by either (a) deeming the Substantive Consolidation Motions granted and approving the substantive consolidation of CNL and LLC for Plan purposes as described therein (the "Consolidation Approval") or (b) resolving the Estimation Motions through the allowance of an Intercompany Claim owing from CNL to LLC in an amount to be agreed between the Estate Parties (the "Intercompany Claim Allowance"). Prior to the start of the hearing before the Bankruptcy Court regarding approval of this Settlement Agreement, the Debtors, in consultation with the Committee, shall elect whether to include in the proposed Settlement Approval Order either the Consolidation Approval or Intercompany Claim Allowance.  In the event that the entered Settlement Approval Order includes the Consolidation Approval, the Fraudulent Transfer Complaint shall be voluntarily dismissed and the Estimation Motions shall be deemed withdrawn, both without prejudice.  In the event that the entered Settlement Approval Order includes the Intercompany Claim Allowance, the Substantive Consolidation Motions shall be deemed withdrawn and the Fraudulent Transfer Complaint shall be voluntarily dismissed, both without prejudice.  If for any reason the Settlement Approval Order is modified such that it does not include either the Consolidation Approval or Intercompany Claim Allowance, (i) none of the Substantive Consolidation Motions, the Estimation Motions, the Fraudulent Transfer Complaint, or the Contract Liability Appeal shall be deemed withdrawn or voluntarily dismissed upon entry of the Settlement Approval Order, (ii) the Parties shall deem this Settlement Agreement amended to provide the relief and conditions otherwise set forth herein, including that the Initial Consenting Series B Preferred Holders will refrain from objecting to the Substantive Consolidation Motions, Estimation Motions, Fraudulent Transfer Complaint, Contract Liability Appeal and Class Certification Motion, and (iii) the Parties shall immediately seek approval of the amended Settlement Agreement under the Settlement Motion.  Immediately upon the filing of the Settlement Motion, and in no event later than June 28, 2023, the Initial Parties shall jointly request from the Bankruptcy Court a temporary stay or extension of the Phase II Scheduling Order with respect to the Initial Series B Holders and the Estate Parties until the entry of the Settlement Approval Order.  If the Settlement Approval Order (including as modified pursuant to this Section 7) is not entered, the Initial Parties will jointly propose to the Bankruptcy Court a new schedule for litigation concerning the Confirmation Issues solely with respect to the Consenting Series B Holders and the Estate Parties.

8.    **Contract Liability Appeal**.  Except as set forth in Section 7, above, within two (2) days after entry of the Settlement Approval Order, the Initial Consenting Series B Preferred Holders and the Committee shall stipulate for voluntary dismissal with prejudice of the Contract Liability Appeal.  Immediately upon the filing of the Settlement Motion, and in no event later than June 27, 2023, the Initial Parties shall jointly request from the United States District Court for the Southern District of New York (the "District Court") a temporary stay or extension of the deadlines applicable to any of the Initial Parties in the Contract Liability Appeal proceedings until the entry of the Settlement Approval Order.  If the Settlement Approval Order is not entered, the Initial Parties will jointly propose to the District Court a new schedule for litigation concerning the Contract Liability Appeal.

9.    **Restructuring Support**.  Upon the execution of this Settlement Agreement, the Consenting Series B Preferred Holders shall (i) not directly or indirectly oppose (or support any party who opposes) any relief sought by the Committee or the Debtors in these Chapter 11 Cases that is not inconsistent with this Settlement Agreement and (ii) subject to approval of a disclosure statement, vote for (if applicable) any Plan that is not inconsistent with this Settlement Agreement, and shall not directly or indirectly oppose such Plan (or support any party who opposes such Plan), including, for the avoidance of any doubt, any substantive consolidation of the Debtors' Estates, allowance of intercompany claims in amounts determined by the Debtors and Committee, and/or allowance of the Class Claim on behalf of account holders.  Notwithstanding the foregoing, upon the filing of any Plan that is inconsistent with this Settlement Agreement, and upon written notice from counsel to the Initial Series B Consenting Preferred Holders to counsel to the Estate Parties of such filing, any and all ballots tendered by the Consenting Series B Preferred Holders shall be deemed, for all purposes, to be null and void from the first instance and shall not be considered or otherwise used in any manner in connection with the Plan (without the need to seek an order of a court of competent jurisdiction or consent from or any other Party allowing such change); *provided* that the Estate Parties may request an emergency hearing upon receipt of any such notice from counsel to the Initial Series B Consenting Preferred Holders and such notice shall not be effective until completion of such emergency hearing in the event that the Estate Parties reasonably dispute the propriety of such a notice; *provided* further that if such written notice is provided at a time when permission of the Bankruptcy Court shall be required for a Consenting Series B Preferred Holder to change or withdraw (or cause to change or withdraw) its vote to accept the Plan, the Estate Parties shall consent to any attempt by such Consenting Series B Preferred Holder to change or withdraw (or cause to change or withdraw) such vote at such time.

10.    **Offer to All Holders of Series B Preferred Shares**.  The settlement set forth in this Settlement Agreement will be offered to all Series B Preferred Holders.  Series B Preferred Holders have the right to opt in to this Settlement Agreement by returning a signature page to this Settlement Agreement to counsel to the Debtors, the Committee, and the Initial Consenting Series B Preferred Holders before the hearing regarding approval of the Settlement Motion and this Settlement Agreement.  Upon returning a signature page, such Series B Preferred Holder shall be a Consenting Series B Preferred Holder under this Settlement Agreement (but not, for the avoidance of any doubt, an Initial Consenting Series B Preferred Holder).

11.    **Release**.  Effective as of the entry of the Settlement Approval Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest

extent allowed by applicable law, the Estate Parties on one hand, and the Initial Series B Preferred Holders, the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders, and the other Consenting Series B Preferred Holders (solely in their capacity as Consenting Series B Preferred Holders) on the other, each on behalf of themselves, their successors, assigns, and each of their Related Parties (including, for the avoidance of doubt, the Litigation Administrator contemplated under the Plan and the Post-Effective Date Debtors), shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever mutually released and discharged the Initial Series B Preferred Holders, the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders, the other Consenting Series B Preferred Holders (solely in their capacity as Consenting Series B Preferred Holders), and each of their Related Parties on one hand, and the Estate Parties and their Related Parties on the other, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest (including, but not limited to, the Series B Preferred Shares), the business or contractual arrangements between any Debtor and any Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the disclosure statement related to the Plan, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the entry of the Settlement Approval Order; *provided* that all Series B Preferred Shares shall remain outstanding until the occurrence of the Effective Date, upon which such Series B Preferred Shares shall be deemed discharged and extinguished in accordance with the terms of the Plan; *provided*, *further*, that the only rights any Series B Holders shall have to recover from the Debtors' estates on account of any Series B Preferred Shares are set forth in this Settlement Agreement. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations arising under this Settlement Agreement or the Settlement Approval Order nor any rights or claims under any D&O Liability Insurance Policy as set forth in Section 12 herein. For the avoidance of doubt, this Settlement Agreement, and the

obligations and releases hereunder, shall not impose any non-consensual releases on account holders to the extent such account holders file any personal, non-derivative claims.

12.    **Preservation of Insurance Rights**.  Notwithstanding the release in Section 11, Related Parties of the Initial Consenting Series B Preferred Holders shall maintain any existing rights to pursue any D&O Liability Insurance Policy solely to the extent of any proceeds thereunder; *provided* that under no circumstances shall the Debtors' Estates be required to provide any additional consideration beyond the Settlement Funds to any Series B Preferred Holder or their Related Parties.  The Estate Parties and their Related Parties reserve all rights with respect to the availability of insurance and retain the right to assert any defense, objection, or claim in opposition to any future claims of the Initial Consenting Series B Preferred Holders and their Related Parties under the Debtors' Indemnification Provisions or D&O Liability Insurance Policy.

13.    **Fees & Expenses**.  No fees and expenses shall be due to the Series B Preferred Holders hereunder; *provided* that the Consenting Series B Preferred Holders may utilize Settlement Funds to satisfy fees and expenses, including as set forth in Section 4 hereof with respect to the Initial Consenting Series B Preferred Holders' fees and expenses.

14.    **Notice**.  All notices, demands, instructions, and other communications required or permitted under the Settlement Agreement to any Party (a "Notice") must be in writing, will be effective upon receipt, and must be delivered by hand delivery, overnight courier, or e-mail.

**If to the Company:**

Celsius Network LLC
50 Harrison Street
Suite 209F
Hoboken, NJ 07030
Attn: Ron Deutsch, General Counsel
E-mail: ron.deutsch@celsius.network

**with a copy to**:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn: Joshua A. Sussberg, P.C.
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
E-mail: joshua.sussberg@kirkland.com

and

Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, Illinois 60654
Attn: Patrick J. Nash, Jr. P.C., Ross M. Kwasteniet, P.C., Christopher S. Koenig, Dan Latona

Telephone: (312) 862-2000
Facsimile: (312) 862-2200
E-mail: patrick.nash@kirkland.com, ross.kwasteniet@kirkland.com,
      chris.koenig@kirkland.com, dan.latona@kirkland.com

**If to the Initial Consenting Series B Preferred Holders:**

Milbank LLP
55 Hudson Yards
New York, NY 10001
Attn: Dennis F. Dunne, Nelly Almeida
Telephone: (212) 530-5000
Facsimile: (212) 660-5219
E-mail: ddunne@milbank.com, nalmeida@milbank.com

and

Milbank LLP
1850 K Street, NW, Suite 1100
Washington, DC 20006
Attn: Andrew M. Leblanc, Melanie Westover Yanez
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
E-mail: aleblanc@milbank.com, mwyanez@milbank.com

and

Jones Day
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Attn: Joshua M. Mester
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
E-mail: jmester@jonesday.com

**If to the Committee**

White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Attn: David M. Turetsky, Samuel P. Hershey, Keith H. Wofford
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
E-mail: david.turetsky@whitecase.com, sam.hershey@whitecase.com,
kwofford@whitecase.com

and

White & Case LLP
111 South Wacker Drive
Suite 5100
Chicago, Illinois 60654
Attn: Gregory F. Pesce
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com

and

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90012
Attn: Aaron E. Colodny
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
E-mail: aaron.colodny@whitecase.com

and

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
Attn: Jennifer M. Selendy, Faith E. Gay, Temidayo Aganga-Williams, Claire
O'Brien
Telephone: (212) 390-9000
E-mail: jselendy@selendygay.com, fgay@selendygay.com,
tagangawilliams@selendygay.com, cobrien@selendygay.com

15.    **Governing Law**.  This Settlement Agreement, and any disputes related thereto, shall be governed by and be construed in accordance with (a) applicable federal law, or (b) to the extent federal law does not apply, the laws of the state of New York without regard to the rule of conflict of laws of the state of New York or any other jurisdiction that would require the application of the law of another jurisdiction.  The Parties hereto consent to submit to the jurisdiction of the appropriate federal district court for any litigation relating to this Settlement Agreement and agree not to commence any litigation relating to this Settlement Agreement except in the appropriate federal district court.  For the avoidance of any doubt, during the pendency of the Chapter 11 Cases, all proceedings shall be brought in the Bankruptcy Court.

16.    **Authority**.  Each of the Parties hereto represents and warrants that it has the authority to enter into this Settlement Agreement and to undertake the transactions contemplated hereunder, subject only to the Bankruptcy Court's approval.

17.    **Successors and Assigns; Third Parties**.  The rights and obligations of each of the Parties under this Settlement Agreement shall be binding upon, and inure to the benefit of, any successor or assign of each such Party, including, for the avoidance of doubt, the Litigation Administrator contemplated under the Plan.  A Consenting Series B Preferred Holder shall not assign its interest in the Debtors to any party unless such party agrees in writing to be bound by the terms of this Settlement Agreement and such assignment is consented to in writing by the Estate Parties.  Any purported assignment that does not comply with the foregoing sentence shall be void *ab initio*.

18.    **Non-Severability**.  Each of the terms of this Settlement Agreement is a material and integral part hereof.  Except as otherwise provided herein, should any provision of this Settlement Agreement be held to be unenforceable or contrary to law, the entire Settlement Agreement shall be deemed null and void.

19.    **Entire Understanding**.  This Settlement Agreement constitutes the entire understanding of the Parties hereto in connection with the matters covered herein, and may not be amended, modified, or altered except by an agreement in writing signed by each of the Parties.

20.    **No Party Deemed Drafter**.  The signatories to this Settlement Agreement are competent persons, each of whom is experienced in business and represented by counsel. Therefore, any ambiguous language in this Settlement Agreement will not be construed against any particular Party as the drafter of such language.

21.    **Failure to Enforce**.  The failure of any Party to enforce a provision of this Settlement Agreement will not constitute a waiver of such Party's right to enforce that provision.

22.    **Publicity**.  Prior to publication of any disclosures or statements by or on behalf of the Debtors or the Committee, by press release or any official social media account of the Debtors or the Committee, regarding the terms or substance of this Settlement Agreement, the Debtors and Committee shall notify the Initial Consenting Series B Preferred Holders of all such disclosures or statements to be issued, the contents of which publications shall be subject to, and shall not be made without, the prior approval of the Initial Consenting Series B Preferred Holders (not to be unreasonably withheld).

23.    **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts and by the Parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same document. Delivery of an executed counterpart of this Settlement Agreement by electronic mail to the contacts listed in Section 13 shall be equally effective as delivery of an original executed counterpart.

**Celsius Network LLC on behalf of itself and
its debtor affiliates**

By: _____

    **Name:  Christopher Ferraro**
    **Title: Authorized Signatory**

**Official Committee of Unsecured Creditors**

By: _____

    **Name:**  Thomas DiFiore
    **Title:**  Co-Chair of Official Committee of
    Unsecured Creditors

**Community First Partners, LLC**

By: _____
      **Name:  Michael Davis**
      **Title:    CFO/CAO**

**Celsius SPV Investors, LP**

By: _____
      **Name:  Michael Davis**
      **Title:    CFO/CAO**

**Celsius New SPV Investors, LP**

By: _____
      **Name:  Michael Davis**
      **Title:    CFO/CAO**

**Wire Instructions provided separately.**

DocuSign Envelope ID: 23E949E3-5D34-4B8A-A5B3-F8BB7284C037

**CDP Investissements Inc.**

By:  Name:  **Thomas Birch**
Title:  **Authorized Signatory**

By:  Name:  **Mathieu Provost**
Title:  **Authorized Signatory**

**Wire Instructions provided separately.**

*[CONSENTING SERIES B PREFERRED HOLDERS SIGNATURE PAGE TO SETTLEMENT AGREEMENT]*

## **Exhibit A**

**Form of Settlement Approval Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING THE
## SETTLEMENT BY AND AMONG THE DEBTORS,
## THE COMMITTEE, AND THE CONSENTING SERIES B
## PREFERRED HOLDERS AND (II) GRANTING RELATED RELIEF

Upon the joint motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), the Committee, and the Initial Consenting Series B

Preferred Holders (collectively, the "Initial Parties") for entry of an order (this "Order")

(i) approving the Settlement, as embodied in the Settlement Agreement attached hereto as

**Exhibit 1**, by and among the Parties, and (ii) granting related relief, all as more fully set forth in

the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

Southern District of New York, entered February 1, 2012; and this Court having the power to enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. Terms used but not defined in this Order nor the Motion shall have the meanings ascribed to them in the Settlement Agreement or, if not defined in the Settlement Agreement, in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807].

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

Initial Parties' notice of the Motion and opportunity for a hearing thereon were appropriate under

the circumstances and no other notice need be provided; and this Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and this

Court having found that the Settlement is the product of good faith, arm's length negotiations

between the Initial Parties thereto; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Each of the Settlement (as embodied in the Settlement Agreement attached hereto

as **Exhibit 1**), the Settlement Agreement, and the payment of the Settlement Funds, which shall

be (i) made and distributed in the manner set forth in the Settlement Agreement, (ii) funded from

the cash proceeds referenced in paragraph 9 (the "GK8 Proceeds") of the *Order (I) Approving the*

*Sale of the GK8 Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and*

*Encumbrances, (II) Authorizing the GK8 Debtors to Enter into and Perform Their Obligations*

*Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1686],

and (iii) in full and final settlement of all Settled Claims, is approved.  For the avoidance of any

doubt, the Debtors may use the remaining GK8 Proceeds (*i.e.*, all GK8 Proceeds other than the

Settlement Funds) in the ordinary course of their business and pursuant to the *Final Order*

*(I) Authorizing the GK8 Debtors to (A) Continue to Operate the GK8 Cash Management System,*

*(B) Honor Certain Prepetition Obligation Related Thereto, (C) Maintain Existing GK8 Business Forms, and (D) Continue to Perform GK8 Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition GK8 Intercompany Balances, and (III) Granting Related Relief* [Docket No. 2115].

3.    Pursuant to Bankruptcy Rule 9019, the Parties (as defined in the Settlement Agreement) are authorized and directed to enter into and perform the settlement as embodied in the Settlement Agreement, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Agreement.

4.    At the election of the Debtors, in consultation with the Committee:

(a)    the estates of Celsius Network Limited and Celsius Network LLC are hereby substantively consolidated for purposes of the Plan, including for purposes of voting, confirmation, and Plan distributions, and subject to the following sentence: (i) all assets and all liabilities of the Consolidated Debtors shall be treated as though they were merged; (ii) all guarantees of any Consolidated Debtor of the payment, performance, or collection of obligations of another Consolidated Debtor shall be eliminated and cancelled; (iii) all joint obligations of two or more Consolidated Debtors and multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the Consolidated Debtors; (iv) all Claims between any Consolidated Debtors shall be deemed cancelled; and (v) each Claim filed or scheduled in the Chapter 11 Case of any Consolidated Debtor shall be deemed

filed against the Consolidated Debtors and a single obligation of the Estate of
the Consolidated Debtors[3]; *or*

(b) the intercompany claim owing from Celsius Network Limited to Celsius
Network LLC in connection with the migration is hereby allowed in an amount
to be agreed between the Debtors and the Committee.

5.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings
announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing
constitutes a finding under the federal securities laws as to whether crypto tokens or transactions
involving crypto tokens are securities, and the right of the United States Securities and Exchange
Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

6.      The notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order
are immediately effective and enforceable upon its entry.

8.      The Parties are authorized and directed to take all actions necessary to effectuate
the relief granted in this Order in accordance with the Motion.

9.      This Order shall bind the Parties, their estates and any successors or assigns,
including without limitation any trustee, liquidating trustee, litigation administrator, or other estate
representative.

---

[3]     The substantive consolidation and deemed merger effected pursuant hereto (if elected by the Debtors) shall not
affect (other than for purposes of the Plan as set forth in this Order and the Plan) (x) the legal and organizational
structure of the Consolidated Debtors, except as provided in the Transaction Steps Memorandum, including, for
the avoidance of doubt, the legal existence of any Claim of one Consolidated Debtor against another Consolidated
Debtor; (y) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a
right of setoff; provided that any Claim that is Allowed against any Consolidated Debtor shall be deemed Allowed
against the Estate of the Consolidated Debtors; or (z) distributions out of any insurance contracts or any Entity's
or Person's rights, if any, to proceeds of such insurance contracts.

10.    The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated:  [●], 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE

**Annex A**

**Certain Definitions**

| Term | Definition |
|------|------------|
| *"Chapter 11 Cases"* | When used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and when used with reference to all Debtors, the procedurally consolidated and jointly administered cases styled *In re Celsius Network LLC*, Case No. 22-10964 (MG). |
| *"Confirmation"* | Entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021. |
| *"Confirmation Order"* | The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| *"Consenting Pro Rata Share"* | With respect to any Consenting Series B Preferred Holder, the proportion that the aggregate amount of such Consenting Series B Preferred Holder's Series B Preferred Shares, valued as of the Petition Date, bears to the aggregate amount of Series B Preferred Shares held by all Consenting Series B Preferred Holders, valued as of the Petition Date. |
| *"Consummation"* | The occurrence of the Effective Date. |
| *"Effective Date"* | The date on which (a) all conditions precedent to the occurrence of the Effective Date of the Plan have been satisfied or waived in accordance with the Plan and (b) the Plan is declared effective in accordance with its terms. |
| *"Entity"* | An "Entity" as defined in in section 101(15) of the Bankruptcy Code. |
| *"Estate"* | The estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case. |
| *"Excluded Party"* | Each of the following: (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) the other UCC Claims Stipulation Defendants; (d) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party; (e) any party on the Schedule of Excluded Parties (as defined in the June 15 Plan); and (f) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified as a |

| Term | Definition |
|---|---|
| | Released Party.  Notwithstanding anything to the contrary herein, no Excluded Party shall constitute a Released Party or an Exculpated Party (as defined in the June 15 Plan) in any capacity.  For the avoidance of doubt, the Initial Consenting Series B Preferred Holders, WestCap Management LLC, Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec inc., CDPQ Placements privés inc., and CDPQ U.S. Inc. and each of their current and former managing partners, directors, officers, and employees, and the other Consenting Series B Preferred Holders (solely in their capacity as Consenting Series B Preferred Holders), and each of their Related Parties are not "Excluded Parties." |
| *"Indemnification Provisions"* | Each of the Debtors' indemnification provisions in place immediately prior to the Effective Date, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, equity holders, attorneys, other professionals, and agents and such current and former directors, officers, and managers' respective Affiliates. |
| *"Interest"* | Any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor. |
| *"Litigation Administrator"* | Any Person or Entity appointed by the Committee, in consultation with the Special Committee, to fulfill the duties described in Article IV.G of the June 15 Plan (in a fiduciary capacity), including any successors thereto. |
| *"NewCo"* | The Entity to be managed by the Plan Sponsor following the Effective Date, which shall hold and operate the NewCo Assets (as defined in the June 15 Plan) for the benefit of holders of NewCo Common Stock (as defined in the June 15 Plan). |
| *"NewCo Transaction"* | The transactions contemplated by the June 15 Plan, other than Article IV.E of the June 15 Plan, which shall occur on the Effective Date if the Debtors do not elect to pursue the Orderly Wind Down. |
| *"Orderly Wind Down"* | The orderly wind down of the Debtors' Estates pursuant to the Wind-Down Procedures (as defined in the June 15 Plan), as set forth in |

| Term | Definition |
|------|-----------|
|  | Article IV.E of the June 15 Plan, solely to the extent applicable as set forth therein. |
| *"Pause"* | The pause by the Debtors, effective June 12, 2022, of all withdrawals, swaps, and transfers of Tokens (as defined in the June 15 Plan) on the Celsius platform. |
| *"Person"* | A "Person" as defined in section 101(41) of the Bankruptcy Code. |
| *"Plan Sponsor"* | Fahrenheit, LLC (together with any successors thereto). |
| *"Plan Supplement"* | The compilation of documents and forms of documents, agreement, schedules, and exhibits to the Plan, in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with its terms, the Plan Sponsor Agreement (as defined in the June 15 Plan), the Bankruptcy Code, and the Bankruptcy Rules. |
| *"Post-Effective Date Debtors"* | Collectively, all Debtors and successors thereto after the Effective Date that are not acquired by NewCo or any of its subsidiaries or otherwise managed by the Plan Sponsor, which shall be responsible for winding down the Debtors' Estates pursuant to the terms of the Plan. |
| *"Pro Rata Share"* | With respect to any Series B Preferred Holder, the proportion that the aggregate amount of such Series B Preferred Holder's Series B Preferred Shares, valued as of the Petition Date, bears to the aggregate amount of Series B Preferred Shares outstanding as of the Petition Date.  The Initial Parties agree that the Initial Consenting Series B Preferred Holders' aggregate Pro Rata Share is 87.23%. |
| *"Related Party"* | With respect to an Entity (as defined in the Bankruptcy Code), each of the following solely in its capacity as such:  (a) such Entity's current and former Affiliates (as defined in the Bankruptcy Code but extended to apply to non-debtors) and (b) such Entity's, and such Entity's current and former Affiliates', current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, associated Entities, managed or advised Entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys (solely in such attorneys' capacity as counsel in these Chapter 11 Cases to an Estate Party or a Consenting |

| Term | Definition |
|------|------------|
| | Series B Preferred Holder and not in any prior or other capacity), accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, servants, and nominees of the foregoing; *provided, however*, that each of the following is not a "Related Party" hereunder:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) the other UCC Claims Stipulation Defendants; (d) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity with a contractual or employment relationship with the Debtors, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec inc., CDPQ Placements privés inc., and CDPQ U.S. Inc.; and (e) any party on the Schedule of Excluded Parties. |
| *"Security"* | A "Security" as defined in in section 2(a)(1) of the Securities Act. |
| *"Securities Act"* | The Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, or any similar federal, state, or local law. |
| *"UCC Claims Stipulation Defendants"* | Each of the defendants identified in the complaint attached as <u>Exhibit 2</u> to the *Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* [Docket No. 2054], including Alexander Mashinsky, Shlomi Daniel Leon, Hanoch Goldstein, Harumi Urata-Thompson, Jeremie Beaudry, Johannes Treutler, Kristine Meehan Mashinsky, Aliza Landes, AM Ventures Holding, Inc., Koala1 LLC, Alchemy Capital Partners LP, Bits of Sunshine LLC, and any mediate or intermediate transferee of the foregoing. |