**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) NOT FOR PUBLICATION |
| | ) |
| | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**MEMORANDUM OPINION APPROVING THE SETTLEMENT AMONG THE DEBTORS, THE COMMITTEE, AND THE INITIAL CONSENTING SERIES B PREFERRED HOLDERS**

*A P P E A R A N C E S:*

KIRKLAND & ELLIS LLP
*Attorneys for the Debtor*
601 Lexington Avenue
New York, NY 10022
  By:    Joshua A. Sussberg, Esq.

300 North LaSalle Street
Chicago, IL 60654
  By:    Patrick J. Nash, Jr., Esq.
          Ross M. Kwasteniet, Esq.
          Christopher S. Koenig, Esq.
          Dan Latona, Esq.

WHITE & CASE LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1221 Avenue of the Americas
New York, NY 10020
  By:    David M. Turetsky, Esq
          Samuel P. Hershey, Esq.
          Keith H. Wofford, Esq.

111 South Wacker Drive, Suite 5100
Chicago, IL 60654
  By:    Michael C. Andolina, Esq.
          Gregory F. Pesce, Esq.

555 South Flower Street, Suite 2700
Los Angeles, CA 90012
By:    Aaron E. Colodny, Esq.

SELENDY GAY ELSBERG PLLC
*Co-Counsel for the Official Committee of Unsecured Creditors*
290 Avenue of the Americas
New York, NY 10104
By:    Jennifer M. Selendy, Esq.
       Faith E. Gay, Esq.
       Temidayo Aganga-Williams, Esq.
       Claire O'Brien, Esq.

MILBANK LLP
*Attorneys for Community First Partners, LLC, Celsius SPV Investors, LP, and Celsius New SPV Investors, LP*
55 Hudson Yards
New York, NY 10001
By:    Dennis F. Dunne, Esq.
       Nelly Almeida, Esq.

1850 K Street, NW, Suite 1100
Washington, DC 20006
By:    Andrew M. Leblanc, Esq.
       Melanie Westover Yanez, Esq.

JONES DAY
*Attorneys to CDP Investissements Inc.*
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
By:    Joshua M. Mester, Esq.

Susan Adler, Esq.
*Attorney to Andersen Invest Luxembourg S.A SPF, J.R. Investment Trust, and David Hoffman*
630 Third Avenue
New York, New York 10017

Daniel A. Frishberg and Immanuel J. Herrmann
*Pro Se Creditors*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the joint motion (the "Motion," ECF Doc. # 2899) of the above captioned debtors and debtors in possession (collectively, "Celsius" or the "Debtors"), the official committee of unsecured creditors (the "Committee," and together with the Debtors, the "Estate Parties"), Community First Partners, LLC, Celsius SPV Investors, LP, Celsius New SPV Investors, LP (collectively, the "Community First Holders") and CDP Investissements Inc. (together with the Community First Holders, the "Initial Consenting Series B Preferred Holders" and, the Initial Consenting Series B Preferred Holders together with the Debtors and the Committee, the "Initial Parties") as beneficial holders, or investment advisors or managers of beneficial holders, of series B preferred stock issued by Celsius Network Limited ("CNL" and such shares, the "Series B Preferred Shares," and such shareholders, the "Series B Preferred Holders") for entry of an order substantially in the form attached to the Motion as Exhibit A (the "Settlement Approval Order"), approving the settlement (the "Settlement") as embodied in the settlement agreement attached to the Settlement Approval Order as Exhibit 1 (the "Settlement Agreement").

In support of the Motion, the Debtors rely on the declaration of Christopher Ferraro (the "Ferraro Decl.," ECF Doc. # 2967). The objection deadline was July 11, 2023. Andersen Invest Luxembourg S.A. SPF, J.R. Investment Trust, and David Hoffman (referred to hereto as "Ordinary Series B Shareholders") filed a limited objection (the "Ordinary Series B Objection," ECF Doc. # 3002) as did *pro se* creditors Daniel Frishberg and Immanuel Herrmann (the "Pro Se Objection," ECF Doc. # 3013). The Pro Se Objection was subsequently consensually resolved with the filing of a revised proposed order (the "Revised Order," ECF Doc. # 3036). The Debtor filed a reply (the "Debtor Reply," ECF Doc. # 3035), as did the Initial Consenting Series B

3

Preferred Holders (the "Series B Reply," ECF Doc. # 3037). The Court held a hearing (the "Hearing") on the Motion on July 18, 2023. The Court entered an order (ECF Doc.# 3058) granting the Motion on July 20, 2023. The Court writes separately here to explain its reasoning for approving the Settlement.

The Settlement finally resolves a lengthy litigation over the Initial Consenting Series B Preferred Holders' estimated $600 million dollar claim. Without the Settlement, customers may have been unable to access the assets of the potentially valuable mining business. The Settlement will allow customers to access assets at CNL, and therefore assets of the mining business, and will save the estate millions of dollars in professional fees in exchange for a $25 million payment to the Series B Preferred Holders. For the reasons discussed herein, the Court **GRANTS** the Motion, **APPROVES** the Settlement, and **OVERRULES** the Limited Objections.

## I.     BACKGROUND

### A.     Prepetition Series B Investment

On or about September 2, 2021 and October 8, 2021, certain Series B Preferred Holders made secured loans (in the form of convertible secured notes) to CNL. On or about December 3, 2021, these Series B Preferred Holders converted their secured notes to preferred equity. (Motion ¶ 8.) Between December 2021 and January 2022, certain Series B Preferred Holders purchased additional Series B Preferred Shares, for a total of approximately 29,503 shares. (*Id.*)

### B.     Post-Petition Litigation

Since the petition date, the Initial Consenting Series B Preferred Holders have taken several steps to protect their interests. First, they filed a motion (ECF Doc. # 880) requesting the appointment of a preferred equity committee, which the court denied in a memorandum opinion

4

(ECF Doc. # 1168).[1]  Second, the Initial Consenting Series B Preferred Holders filed a motion (ECF Doc. # 1183) seeking an order requiring the Debtors to schedule claims in U.S. Dollars. This motion was resolved by the filing of a conversion table showing the U.S. dollar conversions of cryptocurrency, but all parties reserved rights with regard to conversion rates.  (Motion ¶ 14.) The Settlement finally resolves both the request for a preferred equity committee and the dollarization and conversion rate issues.  (*Id.* ¶¶ 12, 14.)

Next, the parties sought to litigate which Debtor entities were liable to customers.  The litigation was important because if customers could not access assets at CNL where the Series B Preferred Holders had invested, the Series B Preferred Holders had at least some chance of recovery.  Following that litigation, the Court issued the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* (the "Contract Liability Opinion," ECF Doc. # 2205), finding that only Celsius Network LLC ("LLC"), not CNL or any other Debtor or non-Debtor affiliate, is contractually liable to customers under the Terms of Use.  *See In re Celsius Network LLC*, 649 B.R. 87, 91 (Bankr. S.D.N.Y. 2023).  But the Court left open the possibility that customers could recover based on non-contract claims, including fraud and statutory claims, against all Debtor entities, including CNL.  *Id.*  In order to allow creditors access to other Debtor entities based on non-contract claims, the Committee filed a Motion seeking authority to file a class claim (ECF Doc. # 2399), which the Court granted (ECF Doc. #2494), and the Committee subsequently filed a motion seeking class certification (ECF Doc. # 2670).

---

[1] On May 17, 2023, the Initial Consenting Series B Preferred Holders renewed their equity committee request via letter to the United States Trustee.  On May 26, 2023, the Debtors and the Committee submitted letters opposing the renewed request. This request remains pending (but would be resolved by the Settlement Agreement). (Motion ¶ 12.)

Following the Contract Liability Opinion, the Committee and Debtors sought to litigate other issues that, if decided in their favor, would potentially allow customers to access assets at CNL. Specifically, the parties had agreed to a schedule to litigate 1) whether LLC and CNL should be substantively consolidated via the Committee and Debtors' substantive consolidation motions (together the "Consolidation Motions," ECF Doc. ## 2563 and 2565); 2) the value of LLC's intercompany claim against CNL via the Series B and Committee estimation motions (together, the Estimation Motions," ECF Doc. ## 2367 and 2369); and 3) constructive fraudulent transfer issues via the Committee's adversary proceeding (the "Fraudulent Transfer Complaint," Adv. Pro. No. 23-01104, ECF Doc. # 1). (Motion ¶¶ 23–24.)

The parties had set an aggressive litigation schedule for these issues. Between June 9, 2023 and June 12, 2023, the Initial Parties participated in eight depositions, with eleven other depositions scheduled. (*Id.* ¶ 25.) Following good-faith and arm's-length negotiations, the Initial Parties reached an agreement resolving all of the disputes between the Parties, and the Settlement Agreement was finalized on June 27, 2023. (*Id.* ¶ 26.)

### C.     Terms of the Settlement

The Settlement Agreement resolves all the disputes between the Estate Parties, on the one hand, and any Series B Preferred Holders who opt into the Settlement (the "Consenting Series B Preferred Holders," on the other hand. Pursuant to the Settlement Agreement, an aggregate amount of $25,000,000.00 (the total amount, the "Settlement Funds"), funded from the proceeds of the sale of the Debtors' GK8 business, shall be distributed among the Series B Preferred Holders as set forth in the Settlement Agreement. (*Id.* ¶ 27.) The Initial Consenting Series B Preferred Holders, as well as any directors they appointed, and the Estate Parties will receive releases pursuant to the Settlement Agreement, in each case in full and final settlement of all

6

settled claims. (*Id.* ¶ 30.) The parties agree that $24,000,000 of the Settlement Funds will go to the Initial Consenting Series B Preferred Holders on account of the fees and expenses they incurred. (*Id.*) Each Series B Preferred Holder, including the Initial Consenting Series B Preferred Holders, shall receive its *pro rata* share of the remaining $1,000,000 of the Settlement. (*Id.* ¶ 30.)

The Settlement also seeks approval of the substantive consolidation of CNL and LLC for purposes of the Debtors' plan of reorganization and deems the Substantive Consolidation Motions granted (the "Consolidation Approval").[2] This relief resolves the Substantive Consolidation Motions, the Estimation Motions, and the Fraudulent Transfer Complaint. (*Id.*) Finally, the Consenting Series B Preferred Holders agree to vote for the Debtors' plan and to not oppose the Debtors' request for certain relief including substantive consolidation of the Debtors' estates, allowance of an intercompany claim, and certification of a class claim. (*Id.* ¶ 29.)

## II. THE LIMITED OBJECTIONS

### A. The Ordinary Series B Shareholders Limited Objection

The Ordinary Series B Shareholders are additional shareholders who are not part of the group of Initial Consenting Series B Preferred Holders who have been litigating and who have negotiated the Settlement. While the Ordinary Series B Shareholders do not object to the Settlement in whole, they seek more information on the $25 million payment. (*See* Ordinary Series B Objection at 5) (asking the Court to require the Movants to provide additional disclosures before approving the Settlement).) The Ordinary Series B Shareholders argue that the Initial Consenting Series B Preferred Holders will receive $24 million for fees and expenses

---

[2] The Motion states that the Debtors would inform the Court prior to the Hearing whether they sought substantive consolidation or allowance of the intercompany claim as part of the Settlement. At the Hearing counsel advised the Court they were seeking approval of substantive consolidation of CNL and LLC as part of the Settlement.

7

out of the $25 million settlement, despite the fact that there is no declaration or other evidence establishing that their fees were actually $24 million. (*Id*. at 2.) If the $24 million does not reflect the actual fees and expenses, the Ordinary Series B Shareholders argue that the Court will need to consider whether the recovery to the Initial Consenting Series B Holders is disproportionate to the rest of the holders. (*Id.* at 3.)

### B.     The Pro Se Limited Objection

The Pro Se Objection did not object to the Settlement altogether but objected on two limited grounds. First, they objected on the grounds that the Debtors should not be able to release claims that do not belong to the estate. (Pro Se Objection ¶ 4.) Second, they objected on the grounds that the Settlement should not moot a *pro se* appeal of the Court's order holding that only Celsius Network LLC is liable to customers, since the Settlement only consolidates CNL and LLC, not all Debtor entities. (*Id.* ¶5.) The Pro Se Objection argued that their right to pursue their appeal of *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under The Terms of Use* (the "TOU Order," ECF Doc. # 2259) should survive the Settlement, since they believe they have claims against GK8 and Celsius Networks Lending but cannot pursue them because of the TOU Order. The Revised Proposed Order includes language that resolves the Pro Se Limited Objection.

### III.     LEGAL STANDARD

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

"[S]ettlements . . . are favored in bankruptcy and, in fact, encouraged." *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010). However, before approving a settlement, a court must determine that it "is fair and equitable and in the best interests of the estate." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (internal quotation marks omitted) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

The Second Circuit in *In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007) outlined the following seven factors (the "*Iridium* Factors") to be considered by a court in deciding whether to approve a compromise or settlement:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;" (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors;" and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Id.*

In passing upon a proposed settlement, "the bankruptcy court does not substitute its judgment for that of the trustee." *Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 384 (N.D.N.Y. 1987), *aff'd sub nom. Depo v. Lincoln Bank*, 863 F.2d 45 (2d Cir. 1988) (citations omitted). The bankruptcy court is not required "to decide the numerous questions of law and fact raised by [objectors] . . . . [R]ather [the Court should] canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ohio), *aff'd*, 87 B.R. 472 (N.D. Ohio 1987). Settlements and "[c]ompromises are favored in bankruptcy" as they minimize costly litigation and further parties'

9

interests in expediting the administration of the bankruptcy estate. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (15th ed. 1993)).

### IV.    DISCUSSION

The Court finds that the *Iridium* Factors overwhelmingly weigh towards approving the Settlement. The *Iridium* Factors are discussed in turn below.

### A.    Factors 1 and 2: The Balance Between the Litigation's Possibility of Success and the Settlement's Future Benefits and the Likelihood of Complex and Protracted Litigation

The Initial Parties have already spent nearly a year working to resolve the settled claims without reaching a resolution. (Motion ¶ 37.) The remaining litigation schedule would require the dedication of significant resources and would incur millions of dollars in legal and administrative expenses because of the compressed timeline and number of complicated and fact intensive issues to be tried at the trial. (*Id.*) The Settlement eliminates all future litigation between the Estate Parties and the Consenting Series B Preferred Holders, saving both significant time and expense. (*Id.*) Therefore, these factors favor approval of the Settlement.

### B.    The Third Factor: The Paramount Interests of Creditors

The Debtors contend that the Settlement benefits each of the Debtors' stakeholders by building consensus (providing the Debtors with certainty) and minimizing costs. (Motion ¶ 38.) The litigation with the Initial Consenting Series B Preferred Holders (and the complications and associated uncertainty the litigation brings to the Debtors' chapter 11 process) is one of the largest outstanding challenges standing between the Debtors and confirmation. (*Id.* ¶ 39.) Resolving this key issue at a reasonable cost is invaluable to the Debtors' estates. Accordingly, this factor favors approval of the Settlement.

        **C.**      **The Fourth Factor: Whether Other Parties in Interest Support the Settlement**

The Settlement is supported by nearly all the primary constituencies in the case: the Initial Consenting Series B Preferred Holders, the Committee, and the Debtors. (Motion ¶ 40.) The only remaining objection, the Ordinary Series B Objection, is without merit and does not alter the Court's conclusion that parties in interest largely support the Settlement.

As noted above, the Ordinary Series B Shareholders do not object to the Settlement but seek more information about how the fees will be allocated. The thrust of their objection is that if the Initial Consenting Series B Holders are being paid $24 out of the $25 million dollars, and if those fees are not just compensating attorneys' fees, then the fees they are receiving are really an "incentive fee" which the Court needs to scrutinize more closely. (Ordinary Series B Objection at 3.)

As an initial matter, the Initial Consenting Series B Preferred Holders have represented that their legal fees actually *exceeded* $24 million. (Series B Reply ¶ 2.) But even if these fees were not just compensating the Initial Consenting Series B Preferred Holders for legal fees, this breakdown of fees is proper. For the proposition that these fees are "incentive fees," the Ordinary Series B Shareholders cite to a decision where a court in this district denied an incentive fee for a class representative. *In re Cosmoledo, LLC*, No. 20-12117 (MEW), 2022 WL 1241504 (Bankr. S.D.N.Y. Apr. 27, 2022). There, the Court did not approve an incentive fee for the class representative because there were no special circumstances justifying a service award to the class representative that was more than 2,000 times greater than the recoveries of other class members. *Id.* at *6.

But *Cosmoledo* is inapposite. *Cosmoledo* considered an incentive fee in the context of a Federal Rule of Civil Procedure Rule 23 class action and had concerns that incentive fees could

11

give the fiduciary an "interest that potentially conflicts with the interests of the persons for whom the fiduciary acts." *Id.* at *6. Here, the Initial Series B Holders are not a class representative and have no fiduciary duty to any other shareholder. The Series B Preferred Shareholders are simply a group of litigants who have negotiated a settlement of their own litigation and thus it would be improper for the Court to bring in the type of fairness concerns present in a class action to a Rule 9019 context. This Settlement in no way affects the rights of the Ordinary Series B Shareholders, who have not consented to the Settlement, to further litigate these issues if they believe they can get a better recovery. But none of their concerns call into question the propriety of the Settlement.

### D.     The Fifth Factor: The Nature and Breadth of the Releases

The Debtors state that the releases granted by the Settlement Agreement are consensual, mutual, and substantially mirror the releases contained in the plan, which are standard in this context. (Motion ¶ 41.) The Court notes that some of the parties getting releases are board members that were appointed by the Initial Series B Preferred Holders. (*Id.* ¶ 30.) At the Hearing, counsel for the Committee described the investigations the Committee did into potential claims against the Series B Preferred Holders, which led the Committee to the conclusion that the Debtors were not releasing valuable claims against these parties through the Settlement. The Court is satisfied that the releases are proper.

### E.     The Sixth and Seventh Factors: The Extent to Which the Settlement Is the Product of Arm's-Length Bargaining

The Settlement appears to be the product of arm's-length bargaining over extensive negotiations between the parties and their respective counsels. (Motion ¶ 43.) The Parties aver they exchanged multiple term sheets before agreeing to the terms set forth in the Settlement Agreement with meaningful concessions made by all parties. (*Id.*) The parties were all

represented by highly competent, independent counsel. (*Id.*) These factors favor approval of the Settlement.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Motion and **APPROVES** the Settlement.

**IT IS SO ORDERED.**

Dated: July 24, 2023
       New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge