*Otis Davis, Pro Se*

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | ) |
| CELSIUS NETWORK LLC, *et al.*, | ) Chapter 11 |
| Debtors. | ) Case No. 22-10964 (MG) |
| | ) (Jointly Administered) |
| | ) Chapter 11 |
| _____) | |

**(I) OBJECTION TO THE ADEQUACY OF THE DISCLOSURE STATEMENT IN REGARDS TO CEL TOKEN SUBORDINATION UNDER RULE 510(B)**

**(II) REQUEST FOR RELIEF IN DECLARING THE CEL TOKEN NOT A SECURITY AND**

**(III) REQUEST FOR THE FORMATION OF A CEL TOKEN CLASS WITH PROFESSIONALS PAID FOR BY THE ESTATE**

**INTRODUCTION**

The UCC and the Debtors have wrongfully and without justification pursued actions to subordinate CEL Token holders' valuation claims from $0.81 to $0.00. After first declaring the token worthless, the UCC internally realized that they could not sell a $0 valuation to the token holders or the Court, they then internally and disingenuously decided to bump it up to a mere $0.20 after refusing to and failing to have any communication with CEL Token holders.

I believe it is important to restate that the UCC and the Debtors did not negotiate with the CEL Token holders at any time, in any way or manner when they wrongfully arrived at the $0.20 valuation. The $0.20 settlement offer was **NEVER** discussed with CEL Token creditors before it was first announced.

As I am certain that you are aware, your Honor, the July 13, 2023 precedent-setting ruling in the Ripple/XRP case has full applicability to the matter before the Court. Justice Analisa Torres of the United States District Court, Southern District of New York ruled on what is and is not a security in regards to cryptocurrency tokens and coins. She stated, "Defendants' motion for summary judgment is **GRANTED** as to the Programmatic Sales, the other Distributions, and Larsen's and Garlinghouse's sales, and **DENIED** as to the Institutional Sales."

Justice Analisa Torres clearly ruled that the XRP Token was NOT a security in regards to programmatic sales, digital asset exchanges, employee distributions, and certain other

circumstances. Applied to the matter before the Court, the ruling suggests that this Court also find that CEL Tokens being held by customers are not securities as well.

## ARGUMENT

As your Honor has stated many times, petition date price can be altered by the UCC with the sole caveat and requirement being that the UCC must have a good reason to do so. The facade of a viable reason that the UCC came up with in respect to the subordination of CEL Token holders' claims was price manipulation based on the Examiner's report.

We have proven beyond any doubt through Santos Caceres' response to the UCC's objection to his motion ([Carceres Response](#)) and evidence presented, that this claim is without foundation in any fact and is completely false. Through an objective analysis of the public blockchain data, we can see that Celsius netted at least $155 million in profits via its OTC desk.

The UCC's false and unsupported claim, based on their reading of the Examiner's report, was that the CEL Token resulted in a loss of $558 million. (see EXHIBIT A)

It can be now adopted by this Court that, based upon facts that have been proven via Santos Caceres' motion, CEL Token was not manipulated by Celsius and that the Examiner's report needs to be discarded or redone.

# EXHIBIT A

In total, Celsius spent at least $558 million[363] buying its own token on the market. From 2018 through the Petition Date, Celsius purchased at least 223 million CEL[364] from the secondary market, a greater number than the total amount of CEL (203 million)[365] released to the public in the ICO. In effect, Celsius bought every CEL token in the market at least one time and in some instances, twice.

The UCC then, unilaterally and without merit, moved the goalpost by then claiming that they are subordinating CEL Token holders' claims to $0.00 and offering $0.20 as a middle-ground settlement with the reason given that CEL Token is a security subject to Rule 510(B). Clearly, this is no longer the case and the CEL Token is not a security as per the new controlling precedent in the Ripple case.

Once again, as per US District Court Justice Analisa Torres on July 13, 2023, the XRP Tokens held and traded by retail users are **NOT** a security and does not meet the Howey test because there was no investment contract with retail users.

To be clear about the status of CEL Tokens with reference to the Ripple decision, Celsius exactly followed the rules, as suggested by the decision in Ripple, during the ICO by filing a Reg D exemption with the SEC ([Reg D Exemption](#)) and limited the sale of the CEL Token to U.S. accredited investors and international investors only. In addition, and as a result of the above according to Justice Torres's decision, all

subsequent transactions of CEL Tokens in the secondary market are not securities and the deposit of such assets on the Celsius platform are not securities either.

It then follows legally and logically that since all these tokens are NOT securities of Celsius, they cannot be subordinated by the company or by declaration by the UCC, since all the claims for such assets are not subject to Rule 510(B). We ask the Court solely for fair and equitable treatment under the law.

As a brief history, for the past year, we have been openly trying to engage with the UCC to resolve this matter and were met with stonewalling, lack of transparency and self-dealing. As a result of the UCC not working in good faith, we are forced to make this application and now request a quick resolution that involves a valuation analysis beyond the petition date pricing.

We can state that, at the June 28, 2023 hearing, Mr. Artur Abreu provided incontrovertible evidence ([Docket Number 2840](#)) to the Court that external forces purposefully caused CEL Token to be lower on the petition date than it otherwise would have been.

On April 14, 2022, the price of CEL Token was $2.14 (Exhibit B) and on August 14, 2022, the price of CEL Token was $3.81 (Exhibit C). Since the last court hearing, Celsius has filed a $2 billion claim against FTX and Alameda Research ([Claim 3851](#)),

and such claims mostly relate to the price manipulation of the CEL Token by FTX and Alameda Research.

Thus, the artificially low price of CEL Token on the day of the pause and on the petition date are unequivocally **NOT** a fair valuation of CEL Token due to the documented outside manipulation. If this Court directed FTX to purchase the open naked short positions — meaning close their short positions by buying CEL token on the open market —  that they hold today, the price of CEL Token would conservatively be in excess of $3.00.

**EXHIBIT B**



**EXHIBIT C**



Myself and other CEL creditors have a plethora of evidence from the FTX Exchange representing all of the artificial price and purposeful manipulation, including illegal naked short-selling of CEL Token that drastically reduced the price of CEL Token before the petition date, on the petition date and all the way through the collapse of FTX on November 11, 2022. If the Court would give us the opportunity to present this evidence either within the next week or at another date for a proper hearing to establish such, we would be pleased to submit and participate.

We also ask the Court to direct the UCC to produce and share all of the materials and evidence that they received from FTX regarding CEL Token. This is public information and they have no right to withhold it. To date, the UCC has failed to respond to my

requests for disclosure and access to any and all documentation that they have with the CEL Token group. I would request sanctions against them as well.

The treatment of CEL Token creditors as well as the Earn creditors should be equal; in other words, your Honor, all classes of creditors should be treated equitably. The Court should follow Judge Torres' decision, with reference to the fact that all CEL Tokens deposited on the platform are not to be treated as securities; the claims for such assets as a matter of law must be treated exactly the same way as all other claims.

As an alternative, I would be amenable to accepting a petition date valuation of $0.81, but if the UCC insists on conducting a valuation of such claims, then they can expect us to prove that fair value for CEL token during the bankruptcy filing will be far in excess of $2.00. This we can prove and with no doubt. We look forward to it and are ready. We have even been in contact with certain news outlets who will be reporting this week on the events described within. We will not allow this to be a public travesty.

As another show of bad faith, in our negotiations with the UCC prior to the Ripple/XRP ruling, we, as an unofficial class, offered to take most of the settlement in equity which would have helped both existing creditors and NewCo going forward. We did not receive any responses to our offer from the UCC. This is the definition of

bad faith and unfair dealing. The UCC was and is just looking to run out the clock which we will not allow to happen. They should be sanctioned!

I would add, for the Court's knowledge, that the petition date price can also be higher than $0.81 for CEL Token based purely on Alameda Research illegally naked shorting CEL Token to the tune of 15 million CEL Tokens on the FTX Exchange. Conservative estimates will show that the fair price of CEL Token should be above $3.00 per Token. Of this we are certain and have proof.

## (II) THE FORMATION OF A CEL TOKEN CLASS WITH PROFESSIONALS PAID FOR BY THE ESTATE.

As a Pro Se, I am trying to address this issue as best as I can, but as your Honor mentioned in a previous hearing from the bench, this needs to be a fair fight. As such and with the Court's patience and understanding, I am requesting the Court approve the formation of a CEL Token Class and retain professionals at the expense of the estate so that we may thoroughly and conclusively resolve the very important matters regarding the CEL Token and its valuation. We require equal and equitable treatment.

The UCC and Debtors have been unwilling to offer any settlement beyond the original and illegitimate price of $0.20 that they unilaterally and without any basis came up with. It appears the UCC and the Debtors would rather litigate this issue before the Court rather than come to a reasonable settlement. I and the informal class are more than okay with this because we know the facts and evidence better than anyone. We actually look forward to this with zeal and the openness that our Justice System enshrines.

I would prefer to settle with the UCC and the Debtors, but they have shown themselves to be completely incapable of providing any level of openness, honesty in communication or dealing, flexibility or fairness towards CEL Token creditors. I also understand that additional litigation adds expense and time to this case, which nobody wants; however, the actions of the UCC and the Debtor attempting to reduce CEL Token creditors' claims by an excess of 75% or more leaves me no choice but to pursue this issue with the Court.

## CONCLUSION

For all of the aforementioned reasons stated above, we respectfully request that this Motion should be **GRANTED by the Court,** allowing non-insider CEL Token claim holders to join the Earn group for equitable treatment and have

access to the same optionality of equity and liquid cryptocurrency distribution at petition date prices. CEL Tokens are not securities.

### **RELIEF**

The relief that I am respectfully seeking from this Court is that the Court recognize the legal precedent that has been set in the Ripple/XRP case and declare that (1) the CEL Tokens held by users are not a security; (2) that the UCC 's attempt to subordinate the Token holders be set aside and declared nullified; (3) that the settlement made by the UCC be nullified as being predicated upon no basis in fact or law and that a valuation hearing be scheduled for a proper determination of the petition date price; (4) a separate new class of CEL Token holders be established to protect their rights fairly and equitably.

Respectfully Signed,

Otis Davis, *Pro Se*

07/24/2023
/s/Otis Davis