Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Grace C. Brier (admitted *pro hac vice*)

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:    (202) 389-5200

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' *EX PARTE* MOTION FOR AN ORDER UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016 FOR SUBPOENAS FOR EXAMINATION OF, AND PRODUCTION OF DOCUMENTS FROM, MAWSON INFRASTRUCTURE GROUP INC., LUNA SQUARES LLC, AND COSMOS INFRASTRUCTURE LLC

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion").

## Preliminary Statement

1.    On February 23, 2022, Celsius Mining LLC ("Celsius"), Mawson Infrastructure Group Inc. ("Mawson"), Luna Squares LLC ("Luna"), and Cosmos Infrastructure LLC ("Cosmos," and together with Mawson and Luna, the "Mawson Entities") entered into several agreements under which Celsius loaned Luna $20 million to assist Luna in obtaining certain equipment necessary for Luna to meet its obligations under a customer equipment co-location agreement (the "Co-Location Agreement") signed that same day.  In exchange, Luna and Cosmos provided Celsius with security interests in specified collateral and Mawson provided a guarantee for Luna's obligations under the secured promissory note underlying the loan.  These agreements also placed restrictions on the Mawson Entities' ability to dispose of the collateral securing the loan from Celsius.

2.    The current issue, among others, which is centered around which Mawson Entity actually has title to the collateral securing Celsius' loan to Luna, is the latest in a long line of issues that have arisen between Celsius and the Mawson Entities in the last few months.  The Debtors have previously requested documents evidencing the Debtors' security interest to no avail.  The Debtors are therefore forced to bring this motion to compel discovery of crucial information about the collateral securing the loan to Luna, the status of $15 million that Celsius paid to the Mawson Entities as deposits under the Co-Location Agreement, and Mawson's potential breach of the Co-Location Agreement and Cooperation Agreement.

## Relief Requested

3.    Pursuant to Rules 2004, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure and Rules 26 and 34 of the Federal Rules of Civil Procedure, the Debtors hereby move

the Court for entry of an order directing the Mawson Entities to produce to the Debtors the documents described in **Exhibit A** to this motion (the "Request for Production of Documents") within fourteen days from the date of service or at such other time and place as counsel may agree. The Mawson Entities are further charged with the duties imposed by Federal Rule of Civil Procedure 26(e) and Federal Rule of Bankruptcy Procedure 7026 to supplement their answers to this Request for Production of Documents if they later learn that such answers are in some respect incomplete or incorrect.  The Debtors respectfully request that the Court enter an order pursuant to Bankruptcy Rule 2004, substantially in the form of the Proposed Order attached hereto as **Exhibit B**, authorizing the Debtors to serve their request for production of documents.

### Jurisdiction and Venue

4.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The statutory bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

7.    The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and

3

provide financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

8.      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration").[2]  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

9.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53].  On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee").  On September 14, 2022, the Court entered an order directing the appointment of an examiner [Docket No. 820] and on April 4, 2023, the Court entered an order discharging the examiner [Docket No. 2364].

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Campagna Declaration.

### Factual Background

10.     On February 23, 2022, Celsius and Luna entered into the customer equipment co-location agreement (the "Co-Location Agreement"), pursuant to which Luna promised to provide a hosting facility, electrical power, and internet access for Celsius's mining rigs for an initial term of one year.  In addition, the Co-Location Agreement contemplated that Celsius may be required to pay Luna a deposit to reserve space in Luna's facility and an allocation of power for the running of Celsius's mining rigs.  Between April 4, 2022 and July 1, 2022, Celsius paid six deposits to Luna totaling approximately $15.3 million in the aggregate.

11.     At the same time, Celsius and Mawson entered into a cooperation agreement (the "Cooperation Agreement") to cooperate on future projects together as strategic partners.  The Cooperation also required the Mawson Entities to offer any additional availability to host additional mining rigs at its facilities to Celsius prior to offering such hosting services to third parties.

12.     Celsius loaned Luna $20 million for the purchase of modular data centers and transformers and installation of the same to assist Luna with meeting its obligations under the Co-Location Agreement.  In exchange, Luna provided Celsius with a secured promissory note (the "Promissory Note") for the loaned amount.  Pursuant to the Promissory Note, Luna was required to pay Celsius the net cash proceeds from any asset sales of the collateral securing the Promissory Note (the "Collateral") with an aggregate fair market value in excess of $100,000 within three business days of such sale.  If no default or event of default exists, however, Luna was permitted to reinvest the net cash proceeds from asset sales in assets that are useful or usable in its business.  Luna was also required to notify Celsius if a default or event of default existed. With respect to the Collateral, Luna was prohibited from creating, granting, incurring, or suffering

to exist a lien on the collateral other than the lien securing the Promissory Note and other defined permitted liens.

13.     Celsius and the Mawson Entities also entered into a guaranty and security agreement (the "Security Agreement") providing Celsius with a security interest in Cosmos' interests in the temporary and permanent collateral miners and Luna's interests in the personal property, equipment, and fixtures purchased with the proceeds of the Promissory Note.  Luna further covenanted not to dispose of the Collateral except through an asset sale permitted under the Promissory Note.

14.     On June 16, 2023, Celsius sent the Mawson Entities certain diligence requests to better understand the extent of the financial issues facing the Mawson Entities.  Many of these requests remain outstanding.

15.     On July 13, 2023, Luna sent Celsius an invoice for amounts due pursuant to the Co-Location Agreement.

16.     On July 20, 2023, Celsius requested that Luna, pursuant to Section 3.1 of the Co-Location Agreement, use the deposits it had previously paid, totaling in excess of $15 million, to pay the amount due under the invoice.

17.     On July 21, 2023, counsel to the Mawson Entities informed Celsius that it would not apply the previously paid deposits to pay the July 13, 2023 invoice because it considered those deposits forfeited alleging that Celsius failed to deliver the equipment within sixty days of the deployment date.

18.     In addition, throughout the duration of the Co-Location Agreement, Celsius has provided the Mawson Entities with instructions regarding the curtailment of power costs, including identifying a strike price above which Celsius requested its rigs be powered down.  Despite these

requests, and the requirement that the Mawson Entities work with the Debtors to coordinate curtailment efforts contained in the Co-Location Agreement, the Mawson Entities frequently ran Celsius's rigs when power prices exceeded the strike price. To further compound the issue, though the Co-Location Agreement was meant to capture the actual costs of power consumption used by Celsius's equipment, the Mawson Entities were able to reduce their overall power costs and did not pass on any associated benefit or reduction to Celsius when the reduced power costs were in significant part a result of Celsius's voluntary curtailment of its rigs.

19. On July 25, 2023, the Mawson Entities announced they were inviting submissions of indications of interest for their hosting services without ever offering any capacity to Celsius first.

20. As of the date of this request, approximately $8 million plus interest is outstanding under the Promissory Note.

## **Requested Examination**

21. To maximize the value of the estate for all creditors, the Debtors seek to examine materials in connection with the Collateral and the disposition of Celsius's deposits under the Co-Location Agreement. The requested examination will permit the Debtors to evaluate the status of its liens against the Collateral and whether they have viable claims against the Mawson Entities in connection with the collateral or the deposits paid under the Co-Location Agreement. The Debtors have attempted to obtain information from the Mawson Entities regarding these issues but have ultimately been unsuccessful.

22. The discovery that the Debtors seek is narrowly tailored to the critical information about the Collateral and the disposition of Celsius's deposits under the Co-Location Agreement.

The requested information should be readily available to the Mawson Entities, given that the information pertains to the property and finances of the Mawson Entities.

23.     To facilitate the necessary discovery, the Debtors respectfully request that the Court enter the proposed order granting their motion and requiring the Mawson Entities to produce documents responsive to the requests contained in **Exhibit A**.

## **Basis for Relief**

24.     Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).  The purposes of Rule 2004 discovery are to assist with "determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re MF Glob. Inc.*, No. 11–02790 (MG), 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) ("'The purpose of a Rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate.'") (quoting *In re McLaren*, 158 B.R. at 657).  Rule 2004 is a key pre-litigation device for assessing potential claims in connection with the bankruptcy estate, *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005), and permits the examination without the requirement of an adversary proceeding, *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

25.     In light of Rule 2004's purpose of facilitating the proper administration of the bankruptcy estate, a third party who has a relationship with the debtor may be the subject of a Rule 2004 examination in order to aid in the discovery of assets.  *See In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002).  The Mawson Entities so qualify because the Mawson Entities are party to various agreements with the Debtors.  The Debtors may properly bring this motion because

they are parties in interest.  *See In re Washington Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009) (granting the debtors' Rule 2004 motion).

26.    Bankruptcy Rule 2004 authorizes a broad scope of examination that includes both document production and testimony related to the "property" of a debtor.  Fed. R. Bankr. P. 2004(b)-(c).  The permissible scope of a Rule 2004 examination is "unfettered and broad." *In re Washington Mut., Inc.*, 408 B.R. at 49; *see also In re Hughes*, 281 B.R. at 226.  Notably, "[t]he scope of examination permitted pursuant to Rule 2004 is wider than that allowed under the Federal Rules of Civil Procedure."  *St. Clair v. Cadles of Grassy Meadows II, L.L.C.*, 550 B.R. 655, 668 (E.D.N.Y. 2016); *see also In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005).

27.    Rule 2004 discovery is warranted when the movant has good cause for a Rule 2004 examination.  *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004).  Good cause exists when "the examination is necessary to establish the claim of the party seeking the examination, or if the denial of such request would cause the examiner undue hardship or injustice."  *Id.* at 268, 270. The court may also "balance[e] the competing interests of the parties, weighing the relevance of and necessity for the information sought by the examiner against the extent of inconvenience and intrusion to the witness."  *In re Kreiss*, 46 B.R. 164, 165 (Bankr. E.D.N.Y. 1985); *see also In re Pub. Serv. Co. of New Hampshire*, 91 B.R. 198, 199 (Bankr. D.N.H. 1988).

28.    Rule 2004 discovery is appropriate here because the Debtors have good cause for a Rule 2004 examination.  *See In re Metiom, Inc.*, 318 B.R. at 268.  The examination is necessary to enable the Debtors to obtain key documents and information for evaluating the status of the Collateral and disposition of the deposits paid under the Co-Location Agreement and whether they have a claim against the Mawson Entities for breach of the Co-Location Agreement and Cooperation Agreement that may impact the bankruptcy estate.  The evidence that the Debtors

have about the Collateral, the deposits paid to the Mawson Entities, and the potential breaches of the Co-Location Agreement and Cooperation Agreement is insufficient for determining whether the Debtors have claims against the Mawson Entities. The Mawson Entities alone have key information and documents about the Collateral, the disposition of the deposits Celsius paid under the Co-Location Agreement, their actual curtailment practices, and whether offers were made to entities other than Celsius in violation of the Cooperation Agreement. Because the Debtors have no other way to obtain these documents and information, denial of this motion would impose undue hardship on the Debtors and preclude them from assessing whether they have potential claims against the Mawson Entities, which may materially affect recovery for the secured and unsecured creditors.

29. The Debtors anticipate that this initial request for production and examination set forth in **Exhibits A** hereto will need to be supplemented as the Debtors learn more facts, and therefore request that the Court impose a continuing obligation on the Mawson Entities to respond to discovery requests made by the Debtors.

## **Reservation of Rights**

30. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise)

satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

31.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

32.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; (h) the Mawson Entities; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

33.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: July 25, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com

-and

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Grace C. Brier (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:    (202) 839-5200
Email:        jdbrown@kirkland.com
              tj.mccarrick@kirkland.com
              grace.brier@kirkland.com

-and-

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Requests for Production**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
*Counsel to the Debtors and Debtors in Possession*

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Grace C. Brier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:   (202) 389-5000
Facsimile:   (202) 389-5200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## DEBTORS' RULE 2004 DISCOVERY REQUESTS

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the above-captioned

debtors and debtors in possession (collectively, the "<u>Debtors</u>") request that Mawson Infrastructure

Group Inc. ("<u>Mawson</u>"), Luna Squares LLC ("<u>Luna</u>"), and Cosmos Infrastructure LLC

("<u>Cosmos</u>," and together with Mawson and Luna, the "<u>Mawson Entities</u>") respond to the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Interrogatories below and produce for their inspection and copying all documents and tangible

things requested below (each such request, a "Request") in accordance with the Definitions and

Instructions set forth below at the offices of their counsel, Kirkland & Ellis LLP, 300 North LaSalle

Street, Chicago, Illinois 60654.  Each of the following Requests is continuing in nature, such that

if the Mawson Entities obtain or discover additional responsive Documents and things at a later

date, such Documents and things are to be made available promptly to Defendants for inspection

and copying.

## INSTRUCTIONS AND DEFINITIONS

For purposes of these requests, the following instructions and definitions apply:

1.      If you object to any request, state the basis for that objection.

2.      The definitions of "Document," "Identify (with respect to persons)," "Identify (with respect to documents)," "Parties," "Person," and "Concerning," found in Local District Rule 26.3, as well other definitions or rules of construction found in Local District Rule 26.3, apply to these requests regardless of capitalization.

3.      If you object to any Request, state the basis for that objection.

4.      "You" or "Your" means Mawson Infrastructure Group Inc., Luna Squares LLC, and Cosmos Infrastructure LLC including any and all of their agents, counsel, and other persons acting on their behalf.

5.      The "Company" means Celsius Mining LLC, including any and all of its current and former affiliates and/or subsidiaries, expressly including, but not limited to Celsius Network LLC, Celsius Network Limited, Celsius Network Inc., Celsius US Holding LLC, and Celsius Mining IL Ltd.

6.      "Collateral" means the collateral securing that Secured Promissory Note dated February 23, 2022, by and among Celsius Mining LLC and Luna Squares LLC.

7.      "Promissory Note" means that certain Secured Promissory Note dated February 23, 2022, by and among Celsius Mining LLC and Luna Squares LLC.

8.      The time period for these requests is from January 1, 2021 to the present.

## REQUESTS FOR PRODUCTION

1.      All documents evidencing the receipt of the deposits paid by the Company pursuant to the Co-Location Agreement.

2.      All documents related to the use or disposition of the deposits paid by the Company.

3.      All documents evidencing your recognition of your continuing obligation to return the deposits.

4.      All documents related to the deployment of Celsius's equipment, including documents related to the date of deployment for Celsius's equipment.

5.      All documents related to the use of proceeds of the Promissory Note.

6.      All documents related to the ownership of the Collateral.

7.      All documents related to liens against the Collateral.

8.      All documents related to any dispositions of the Collateral.

9.      All documents related to the use of proceeds from any dispositions of Collateral or of any mining facilities.

10.      All documents related to the deployment or operation of Celsius rigs, including documents related to scheduled deployments, the date of deployment, Your capacity to host and deploy rigs, and delays in deployments.

11.      All documents related to the curtailment of energy usage by Celsius's rigs and/or equipment, including any policies regarding curtailment requests or communications with Celsius regarding the same.

12.      All documents related to any agreements, programs, policies, strategies, procedures, or other approaches You have pursued to reduce power costs.

13.      All documents reviewed or considered in responding to the below Interrogatories.

## INTERROGATORIES

1.      Describe in detail any analysis conducted by you or your advisors in determining whether the deposits paid by Celsius were continuing obligations.

2.      Identify all transactions and/or dealings related to the Collateral, including but not limited to the purchase of Collateral and any dispositions of Collateral.

3.      Identify any liens of any kind against the Collateral.

4.      Identify and describe in detail all uses of the proceeds of the Promissory Note.

3

5.      Identify and describe in detail all uses of the deposits paid by the Company.

6.      Identify and describe in detail all uses of the proceeds of any dispositions of Collateral or of any mining facilities.

7.      Describe in detail Your capacity to host and deploy Celsius rigs under the Co-Location Agreement, including any delays or shortfalls in capacity that did not allow You to host the number of rigs delivered by Celsius.

8.      Describe in detail Your procedure for responding to curtailment requests by Celsius, including any delays in curtailment.

9.      Describe in detail Your agreements, programs, policies, strategies, procedures, or other approaches to reduce power costs.

[*Remainder of page intentionally left blank*]

New York, New York
Dated: July 25, 2023

_/s/ Joshua A. Sussberg_

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com

-and

Judson Brown, P.C. (admitted _pro hac vice_)
T.J. McCarrick (admitted _pro hac vice_)
Grace C. Brier (admitted _pro hac vice_)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:     (202) 389-5000
Facsimile:     (202) 839-5200
Email:          jdbrown@kirkland.com
                 tj.mccarrick@kirkland.com
                 grace.brier@kirkland.com

-and-

Patrick J. Nash, Jr., P.C. (admitted _pro hac vice_)
Ross M. Kwasteniet, P.C. (admitted _pro hac vice_)
Christopher S. Koenig
Dan Latona (admitted _pro hac vice_)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

_Counsel to the Debtors and Debtors in Possession_

**Exhibit B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) AUTHORIZING THE DEBTORS TO ISSUE SUBPOENAS UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016 TO MAWSON INFRASTRUCTURE GROUP INC., LUNA SQUARES LLC, AND COSMOS INFRASTRUCTURE LLC AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the debtors to issue subpoenas under Federal Rules of Bankruptcy Procedure 2004 and 9016 to the Mawson Entities and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

their creditors, and other parties in interest; and this Court having found that the Debtors' notice

of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and

no other notice need be provided; and this Court having reviewed the Motion; and this Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and upon al the proceedings had before this Court; and after due

deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted.

2.    The Mawson Entities shall comply with the document requests attached to the

Motion as <u>Exhibit B</u> by no later than fourteen days after the entry of this Order and provide the

productions to the Debtors and the Official Committee of Unsecured Creditors (the "<u>Committee</u>").

3.    To the extent necessary, the Debtors' and the Committees' rights are reserved to

request depositions and any additional documents under Bankruptcy Rule 2004 based on any other

information that may be revealed as a result of the documents provided pursuant to this Order.

4.    This Order is without prejudice to the Debtors' and the Committees' rights to file

further motions seeking additional documents and testimony pursuant to Bankruptcy Rule 2004(a)

or any other applicable law.

5.    Notwithstanding the relief granted in this Order and any actions taken pursuant to

such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any

particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular

claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication

or admission that any particular claim is of a type specified or defined in this Order or the Motion;

(e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365

of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy

Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.       Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

7.       The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.       This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including, but not limited to, any discovery disputes that may arise between or among the parties and to interpret, implement and enforce the provisions of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE