UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

**MOTION OF TERRAFORM LABS PTE LTD. FOR LEAVE TO SERVE RULE 45 DOCUMENT SUBPOENA(S) ON DEBTORS**

Terraform Labs PTE Ltd. ("TFL"), by and through the undersigned counsel, respectfully submits its motion ("Motion"), pursuant to §§ 105(a) and 362(d)(1) of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"),[2] Rule 45 of the Federal Rules of Civil Procedure ("FRCP 45"), Rules 4001(a), 7004, 9006(d), 9014, and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-1(a) and 9006-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), requesting the United States Bankruptcy Court for the Southern District of New York (the "Court") enter of an order substantially in the form attached to the Motion as **Exhibit A** (the "Order"): (a) permitting TFL to serve Debtor Celsius Network Inc., inclusive of any of its affiliates or subsidiaries within its control, which may include but is not limited to one or more of the above-captioned debtors (collectively, the "Debtors"), with subpoena(s) under FRCP 45 seeking the Proposed Limited Discovery (as defined below) on unrelated claims that do not affect the Debtors;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] All references herein to "section" or "§" are to sections of the Bankruptcy Code unless otherwise so stated.

1

(b) either (i) confirming that the automatic stay permits TFL's Proposed Limited Discovery, or (ii) modifying the automatic stay so that TFL can effectuate such Proposed Limited Discovery through the United States District Court for the Southern District of New York (the "District Court"); (c) waiving the optional fourteen-day stay period after any such Order is entered; and (d) granting such other relief as is just and equitable under the circumstances. In support of this Motion, TFL submits the declaration of Chris Amani as **Exhibit B** ("Amani Decl."), and further states as follows.

## PRELIMINARY STATEMENT

1. On April 3, 2023, the United States Securities and Exchange Commission ("SEC") filed an amended complaint (the "SEC Action Complaint")[3] against TFL and one of its co-founders in the District Court, in that certain case captioned as *Securities and Exchange Commission v. Terraform Labs PTE Ltd. And Do Hyeong Kwon*, Civ. No. 1:23-cv-01346-JSR (S.D.N.Y.) (the "SEC Action"). A true and correct copy of the SEC Action Complaint is attached hereto as **Exhibit C**. The SEC Action is unrelated to the Debtors: no Debtor is a defendant, and it does not affect any Debtor. Amani Decl. at ¶ 12.

2. One of the SEC's claims alleges that TFL falsely represented the ability of the algorithmic "mint/burn" mechanism utilized by the UST stablecoin, one of the cryptocurrencies developed by TFL, to withstand market forces in the event of a depeg, which led to the depeg of UST from its price peg in May 2021 and May 2022. Specifically, the SEC alleges that after the market price of UST declined from its peg of one United States ("U.S.") Dollar in May 2021 and then recovered shortly thereafter, Defendants misrepresented UST's recovery by claiming that the algorithm was able to restore and maintain the price peg. *Id.* at ¶ 5. According to the SEC, UST

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the SEC Action Complaint.

2

instead recovered its price peg because Defendants entered an arrangement with a U.S. trading firm, Jump Trading LLC ("Jump"), to purchase substantial amounts of UST to support the price. *Id.* at ¶ 5. TFL disputes these allegations. *Id.* at ¶ 5.

3.  The SEC also contends that the actions it alleges that Defendants took led to a $40 billion loss in market capital, including devasting losses for U.S. retail and institutional investors. Amani Decl. at ¶ 13. TFL contends that a coordinated "short" attack by third parties caused the May 2022 depeg. *Id.* at ¶ 13. Large UST holder(s) executed the short via multiple platforms, wallets/accounts, and assets, including swapping Terra-native assets (UST, LUNA, MIR, mAssets, and ANC) for non-native assets (BTC, USDT, USDC, etc.). Amani Decl. at ¶¶ 6, 13. The attack catalyzed massive asset withdrawals from protocol(s) developed by TFL, and flooded Celsius and other markets with sell/offer orders, transfers, deposits, and withdrawals. *Id.* at ¶ 8.

4.  To establish these defenses, TFL needs Debtors' records about wallets, accounts, and assets used to engage in transactions relating to the May 2022 depeg through Debtors' trading and custody platforms. *Id.* at ¶ 14. This evidence is in the Debtors' possession, custody, and/or control. *Id.* at ¶ 14. TFL seeks information about wallets used by Jump to trade UST or LUNA on these exchanges from May 1 to May 31, 2021 and May 1 to May 31, 2022; wallets and trading accounts used to deposit/transfer/trade Terra assets used by third parties from March 1 to May 31, 2022; other wallets and trading accounts that could have been used by these or other parties engaging is short selling of these assets; their balances/holdings; and identities of owners/controllers for the period between January 1, 2018 to the present ("Subpoena Period") (the "Proposed Limited Discovery"), which can be produced subject to the Protective Order entered in the SEC Action attached to this Motion as **Exhibit D**. *See also* Amani Decl. at ¶ 14, attached as **Exhibit B**.

3

5. While TFL believes service of its Proposed Limited Discovery under narrowly tailored FRCP 45 subpoena(s) issued in connection with the SEC Action on the Debtors would not violate the automatic stay under § 362(a), TFL seeks authorization and confirmation from this Court that TFL may serve such discovery. In the alternative, TFL has "cause" for this Court to provide limited relief from the automatic stay for TFL to serve such discovery. TFL can *only* obtain this information—which is proprietary to the Debtors—via FRCP 45 subpoena(s) on the Debtors, and it is vital to TFL's defense. Without such discovery, TFL will be substantially and irreparably harmed.

6. Should this Court grant the Motion, TFL also asks such Order take effect immediately. Expedience is crucial: trial is expected after November 30, 2023, and the District Court with the pending SEC Action will need time to issue the FRCP 45 subpoena(s) to Debtors.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012. TFL confirms its consent to the Court entering a final order in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicate for the relief requested herein are §§ 105(a) and 362(d)(1) of the Bankruptcy Code, as well as FRCP 45, Bankruptcy Rules 4001(a), 7004, 9006(d), 9014, and 9016, and Local Rules 4001-1(a) and 9006-1.

## BACKGROUND

### I. General Background.

10. On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. *See* ECF No. 2.

11. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. *Id*.

12. On July 27, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

### II. Background Specific to Motion.

13. TFL is a Singaporean open-source software development firm, founded to address the interference of price volatility of cryptocurrencies with the ability to use cryptocurrencies as a medium of exchange. Amani Decl. at ¶ 3. In 2018, TFL developed a novel approach to this problem by creating the Terra protocol, a decentralized and open-source public blockchain protocol for algorithmic stablecoins. *Id.* Unlike the Debtors, TFL did not operate a market or have customers or customer funds. *Id.*

14. The Terra protocol relied upon a dual native cryptocurrency token system: a stablecoin TerraUSD ("UST") and a companion non-stablecoin LUNA. *Id.* at ¶ 4. UST and LUNA were designed to maintain a stable price peg—targeting a 1:1 exchange rate—to the U.S. Dollar or other fiat currency. *Id.* LUNA operated as a stabilization mechanism to maintain the 1:1 UST price peg for UST by minting and burning tokens. *Id.* TFL also developed two protocols, the Mirror Protocol, which created synthetic assets (Mirrored Assets or "mAssets") to provide exposure to assets with publicly available price feeds without holding the underlying assets; and Anchor Protocol ("ANC"), a borrowing and saving protocol. Amani Decl. at ¶ 4.

15. Kwon Do-Hyung ("Mr. Kwon") co-founded TFL in December 2018 and was

5

initially the chief executive officer of TFL. *Id.* at ¶ 1. Mr. Kwon has departed TFL, and since his departure, Chris Amani became the Chief Executive Officer ("CEO"), in addition to his roles as Chief Operating Officer and Chief Financial Officer. *Id.*

16. Between May 1 through May 31, 2021, the market price of UST declined from its peg of one U.S. Dollar but later recovered. *Id.* at ¶ 5. Although the SEC alleges that Defendants misrepresented UST's recovery in May 2021 by claiming that the algorithm was able to restore and maintain the price peg; when—according to the SEC—it instead recovered because Defendants entered an arrangement with Jump to purchase substantial amounts of UST to support the price, TFL contends that trades of UST by Jump was not the cause for the restoration of the peg in 2021. *Id.* at ¶ 5.

17. Between March 1, 2022, through May 31, 2022, short sellers likely used the Debtors' Celsius platform to purchase options and to conduct purchases, sales and related trades of TFL's cryptocurrencies and other cryptocurrencies to prepare for and use throughout the short attack. *Id.* at ¶ 6. Publicly available blockchain data shows that when the short attack began on May 7, 2022, just after 10:00 AM UTC, Celsius accounts transferred and/or sold massive amounts of UST into liquidity pools, exchanges, and blockchain protocol. Amani Decl. at ¶ 6. This same blockchain data shows these accounts continued to facilitate deposits and transfers of tokens and proceeds in the days following the attack. *Id.*

18. In May 2022, there was a demonstrably large wave of UST sales, *i.e.*, "a run" on the Anchor protocol, executed by large UST holder(s) via multiple platforms, wallets/accounts, and assets, including Terra-native tokens (UST, LUNA, MIR, mAssets, and ANC) and non-native tokens (BTC, USDT, USDC, etc). *Id.* at ¶ 7.

    a.    On May 7, 2022, unknown large UST holders started a flood of "sell orders" for

6

        UST, resulting in withdrawals of over $2 billion worth of UST from the Anchor Protocol. *Id.* at ¶ 8.

b. One of the largest of these initial withdrawals was precipitated by a Celsius account with the wallet address 0x4b5e60cb1cd6c5e67af5e6cf63229d1614bb781c. This address withdrew over $125 million worth of UST from Anchor and subsequently transferred over $150 million worth of UST from the Terra network to Ethereum, resulting in the collection of hundreds of millions of dollars in proceeds via swaps for USDC.

c. Hundreds of millions of U.S. Dollars of UST were quickly liquidated, decreasing the UST price slightly below its peg. *Id.* As other UST holders monitored the blockchain, they withdrew their Anchor holdings and/or quickly redeemed their UST for Luna, creating an explosion in the supply of Luna. *Id.* The sudden increase in UST sell orders made it more difficult to match them with corresponding "buy" orders, which created more downward price pressure on UST, causing it to depeg. Amani Decl. at ¶ 8.

d. On May 9, 2022, the rate of Anchor withdrawals intensified as the market capitalization of LUNA became equal to the outstanding UST supply. *Id.* at ¶ 9. The value of UST dropped to $0.75. *Id.*

e. By the end of May 13, Anchor had fewer than 2 billion UST remaining, and the value of UST had declined to below $0.2. *Id.* at ¶ 10. Although LFG and TFL expended billions of U.S. Dollars attempting to defend the UST peg, the sell pressure overwhelmed the resources available to defend the peg and both tokens lost the majority of their values. *Id.*

19. On February 16, 2023, the SEC commenced the SEC Action against TFL and Mr. Kwon in the District Court. SEC Action Complaint; *see also* Amani Decl. at ¶ 12.

20. The SEC Action Complaint alleges that between April 2018 through May 2022, TFL and Mr. Kwon offered and sold what the SEC calls an inter-connected suite of "crypto asset securities" in violation of the U.S. Securities Act and the Exchange Act. *See e.g.*, SEC Action Complaint at ¶ 1; *see also* Amani Decl. at ¶ 13. The SEC asserts, *inter alia*, that losses that may have happened during the May 2022 depeg are the result of fraud by TFL and Mr. Kwon. *See e.g.*, SEC Action Complaint at ¶ 1; *see also* Amani Decl. at ¶ 13. However, TFL intends to assert the defense that the depeg was due to an intervening causal event—the short—such that neither TFL nor Mr. Kwon may be held liable. Amani Decl. at ¶ 13.

21. No Debtor is a party to the SEC Action, and no claim is being asserted against any Debtor in the SEC Action. Amani Decl. at ¶ 12.

22. To effectively defend itself against the SEC Action, TFL requires certain narrow categories of suspected short-selling activity, including specific account, wallets, and the identity of their controllers over the Subpoena Period, which are records in the Debtors' possession. *Id.* at ¶ 14. These records are crucial to TFL's defense in the SEC Action—for example, for TFL's experts to perform crucial blockchain analysis of the short-sellers' trading and market activity to combat the SEC's allegations, among other things. *Id.* at ¶ 15. TFL cannot obtain—and Debtors cannot provide—such information by any other means. *Id.* TFL seeks to discover these narrow records solely as they pertain to TFL's claims and defenses of TFL. *Id.*

## RELIEF REQUESTED

23. Since no Debtor is a defendant in the SEC Action and no claims are asserted in the SEC Action against any Debtor, TFL submits that TFL's proposed service of limited discovery— narrowly-tailored FRCP 45 subpoena(s)—on the Debtors does not run afoul of the automatic stay

8

under § 362(a) of the Bankruptcy Code. Out of an abundance of caution, TFL seeks entry of an order authorizing TFL to effectuate its Proposed Limited Discovery and confirming that such action does not violate the automatic stay, or in the alternative, granting TFL limited relief from the automatic stay solely to the extent necessary for TFL to effectuate such discovery. TFL also asks that any such order take effect immediately.

## BASIS FOR RELIEF

### I.    TFL's Requested Action Does Not Violate the Automatic Stay Under § 362(a) of the Bankruptcy Code

24. Federal Rule of Bankruptcy Procedure 9016 provides that FRCP 45 applies to bankruptcy proceedings. Although the scope of the automatic stay pursuant to § 362 of the Bankruptcy Code is broad, "[b]y its terms, [s]ection 362 applies only to actions against debtors . . . ." *Ng v. Adler*, 518 B.R. 228, 246 (E.D.N.Y. 2014). While the automatic stay can be extended to proceedings against non-debtors, such action is typically appropriate "only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie Ltd. V. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).

25. "Section 362(a) does not prevent litigants from obtaining discovery from a debtor as a third-party witness where the requests pertain to claims against the nondebtor parties." *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, Case No. 13 Civ. 4650 (JFK), 2014 WL 4783008, at *5 (S.D.N.Y. Sept. 25, 2014) (citing *In re Residential Capital, LLC*, 480 B.R. 529, 536) (Bankr. S.D.N.Y. 2012); *see also Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-CV-9612 (LJL), 2023 WL 3568807, at *2 (S.D.N.Y. May 18, 2023) ("Thus, Plaintiff is permitted to subpoena Bankrupt Defendants' testimony and documents in so far as Plaintiff seeks to use this information against Non-Bankrupt Defendants."); *Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, Case No. 04 C 0767, 2004 WL 2973822, at *3 (N.D. Ill. Nov. 30, 2004)

9

("[I]t is clear that plaintiff would be entitled to serve and proceed with discovery against [the debtor], even if [the debtor] were a defendant in this action, provided the discovery is directed towards the claims against [non-debtor] defendants. . . .") (citing *id.*); *Groner v. Miller (In re Miller)*, 262 B.R. 499, 503 (9th Cir. BAP 2001) (holding automatic stay did not prevent subpoenas to debtor for discovery on claims against non-debtors that were not stayed, even if the information to be elicited from the debtor may later be used against the debtor); *In re Irwin*, 457 B.R. 413, 426, n.26 (Bankr. E.D. Pa. 2011) ("[I]t is well accepted that the automatic stay does not prevent discovery aimed at a debtor as long as the discovery pertain[s] to claims and defenses of a non-debtor party.") (citation omitted); *In re Hillsborough Hldgs. Corp.*, 130 B.R. 603, 605 (Bankr. M.D. Fla. 1991) (holding automatic stay did not prevent discovery aimed at debtor as long as the discovery pertained to claims and defenses of a non-debtor party).

26. As explained herein, no Debtor is a named defendant in the SEC Action, the SEC Action poses no potential detrimental effect to the Debtors, and the SEC Action is wholly unrelated to the Debtors. TFL requires certain limited discovery from the Debtors solely as it "pertain[s] to claims against the nondebtor part[y] [, TFL]." *Le Metier Beauty Inv. Partners LLC*, 2014 WL 4783008, at *5. The limited and narrow proposed discovery will place virtually no burden upon the Debtors and will not interfere in any respect with their ability to rehabilitate under chapter 11. As such, the relief requested herein does not run afoul of § 362(a) of the Bankruptcy Code, and TFL respectfully submits that it is appropriate for the Court to enter an order authorizing TFL to effectuate its Proposed Limited Discovery by serving the Debtors with narrow FRCP 45 subpoena(s) relating to the SEC Action and confirming such action does not violate the automatic stay.

## II. Even if the Automatic Stay Extends to TFL's Proposed Limited Discovery, Cause Exists for Limited Relief from the Automatic Stay to Effectuate the Proposed Limited Discovery

27. "The purpose of the automatic stay is to allow a debtor to maintain the status quo . . . ." *In re Synergy Dev. Corp.*, 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992), *see also Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582, 589 (2020) ("The [automatic] stay serves to maintai[n] the status quo . . . .") (internal quotations and citations omitted, alteration in original). Section 362(d)(1) of the Bankruptcy Code provides that "the court shall grant relief from the stay . . . for cause." The Bankruptcy Code does not define "cause." *See Sonnax Indus., Inc. v. TRI Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1285 (2d Cir. 1990) (explaining that neither the statute nor legislative history define the term "for cause"). Rather, the "legislative history indicates that the facts of each request will determine whether relief is appropriate under the circumstances." *Id.* at 1286 (internal quotations and citation omitted). Thus, whether "cause exists should be decided on a case-by-case basis. *See Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 142 (2d Cir. 1999) ("Thus, the facts of each request will determine whether relief is appropriate under the circumstances.") (internal quotations and citations omitted); *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004) ("cause" is determined on a case-by-case basis).

28. The burden of proof for a motion under § 362(d)(1) of the Bankruptcy Code is a shifting one. *Sonnax*, at 1285. Specifically, § 362(d)(1) of the Bankruptcy Code "requires an initial showing of cause by the movant, while [section] 362(g) [of the Bankruptcy Code] places the burden of proof on the debtor for all issues other than the debtors' equity in property." *Id.* (internal quotations and citations omitted), *see also In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("Whereas [movant] has the

11

initial burden of production of evidence that 'cause' exists . . . the Debtor has the burden of proof that stay relief is not warranted.") (internal citations omitted).

29.    TFL submits that "cause" within the meaning of § 362(d) of the Bankruptcy Code exists to lift the automatic stay to allow TFL to serve and conduct its Proposed Limited Discovery of the Debtors.  The Proposed Limited Discovery is crucial to TFL's defense of the SEC Action, and TFL would suffer substantial and potentially irreparable harm if denied the ability to seek such discovery.  The Debtors possess specific information concerning the suspected short sellers' wallet activity, trading activity, and accounts during the Subpoena Period, in addition to other information relevant to the short.  This day-to-day wallet and trading activity is directly relevant to the SEC's allegations about TFL's operations over the same time period and TFL's defense thereof.  TFL seeks affirmative pre-petition relief:  the Debtors did not file for bankruptcy until July, 2022, well after TFL's May 2022 depeg.  TFL can and should be able to obtain these records from the Debtors, who should have held and maintained these records during the ordinary course of its business. TFL cannot obtain this information in any other way.

30.    TFL would suffer extreme prejudice absent such discovery, whereas the Proposed Limited Discovery would not prejudice the Debtors, creditors, or any other party in interest.  The proposed discovery is narrow in scope:  TFL only seeks specific and relevant records over a limited time period relevant to the SEC Action.  All of these records are in the Debtors' possession.  *See* Amani Decl. at ¶ 14.  The continuation of litigation in the District Court likewise would not prejudice any party in interest:  the Debtors are not parties to the SEC Action, and the underlying policies of the Bankruptcy Code would be promoted by the relief sought herein as the Proposed Limited Discovery would only serve to "maintain the status quo" that exists at the time of the Debtors' bankruptcy filing.  *In re Synergy Dev. Corp.*, 140 B.R at 959.

### III. After the Entry of any Order Granting this Motion, TFL Should be Permitted to Serve its Proposed Limited Discovery Immediately

31. Should this Court grant the Motion, TFL respectfully asks that this Court waive the optional fourteen-day stay period, as it benefits no party and only prejudices TFL. TFL requires expedient action on its Proposed Limited Discovery in order to effectively defend against the SEC Action, especially since trial is anticipated for after November 30, 2023.

32. Federal Rule of Bankruptcy Procedure 4001(a)(3) provides "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Federal Rule of Bankruptcy Procedure 4001(a)(3) is only a default rule, which can be modified if the Court orders otherwise. *See In re Koch*, Case No. 23-22321 (CGM), 2023 WL 3856334, at *3 (Bankr. S.D.N.Y. Jun. 6, 2023) ("The court may, in its discretion, order that Rule 4001(a)(3) is not applicable so that the prevailing party may immediately enforce and implement the order granting relief from the automatic stay.") (citing Fed. R. Bankr. P., committee notes on rules—1999 amendment). TFL respectfully submits that this optional fourteen-day stay period serves no relevant purpose here and should be waived in any order granting relief from the automatic stay, so that any order granting relief from the automatic stay be effective immediately upon entry.

### NOTICE

33. Notice of this Motion will be provided to: (i) the Debtors and their counsel; (ii) the Committee and their counsel; (iii) U.S. Trustee; (iv) the SEC; (v) the Internal Revenue Service; (vi) the U.S. Department of Justice; (vii) the U.S. Attorney for the Southern District of New York; (viii) holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (ix) the attorneys general in the states where the Debtors conduct their business operations; and (x) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the

13

relief requested, TFL submits no further notice is required.

## CONCLUSION

WHEREFORE, TFL respectfully requests entry of an Order, substantially in the form attached hereto as **Exhibit A**, (a) permitting TFL to serve Debtor Celsius Network Inc., inclusive of any of its affiliates or subsidiaries within its control, which may include but is not limited to one or more of the Debtors, with subpoena(s) under FRCP 45 seeking the Proposed Limited Discovery on unrelated claims that do not affect the Debtors; (b) either (i) confirming that the automatic stay permits TFL's Proposed Limited Discovery, or (ii) modifying the automatic stay so that TFL can effectuate such Proposed Limited Discovery through the District Court; (c) waiving the optional fourteen-day stay period after any such Order is entered; and (d) granting such other relief as is just and equitable under the circumstances.

Date: August 1, 2023

*/s/ Sarah M. Schrag*
**DENTONS US LLP**
Claude D. Montgomery
Sarah M. Schrag
Douglas W. Henkin
David L. Kornblau
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
claude.montgomery@dentons.com
sarah.schrag@dentons.com
douglas.henkin@dentons.com
david.kornblau@dentons.com

Mark G. Califano (*pro hac vice* application forthcoming)
Matthew A. Lafferman (*pro hac vice* application forthcoming)
1900 K Street, NW
Washington, DC 20006-1102
Tel: (202) 496-7500
mark.califano@dentons.com
matthew.lafferman@dentons.com

*Counsel to Terraform Labs PTE Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2023, a true and correct copy of the foregoing *Motion of Terraform Labs PTE Ltd. for Leave to Serve Rule 45 Document Subpoena(s) on Debtors* was caused to be served via the Court's CM/ECF system on all parties authorized to receive electronic notice in this chapter 11 case.

Date: August 1, 2023                                       */s/ Sarah M. Schrag*
                                                           Sarah M. Schrag