Michael S. Etkin  
Phillip Khezri  
**LOWENSTEIN SANDLER LLP**  
1251 Avenue of the Americas  
17th Floor  
New York, New York 10020  
Telephone: (212) 262-6700  
Facsimile:  (212) 262-7402  
metkin@lowenstein.com  
pkhezri@lowenstein.com  

Andrew Behlmann  
**LOWENSTEIN SANDLER LLP**  
One Lowenstein Drive  
Roseland, New Jersey 07068  
Telephone: (973) 597-2500  
Facsimile:  (973) 597-2333  
abehlmann@lowenstein.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
: 
In re : Chapter 11
: 
CELSIUS NETWORK LLC, et al.,[1] : Case No. 22-10964 (MG)
: 
Debtors. : (Jointly Administered)
: 
-----------------------------------------------------------------x

**SECURITIES PLAINTIFFS' LIMITED OBJECTION TO APPROVAL OF THE DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES RELATING TO THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

Lead Plaintiffs Zack Kaplan, Ben Kaplan, Michael Kaplan, Eli Kaplan, and Michael Mazzotta (collectively, "Lead Plaintiffs"), the court-appointed lead plaintiffs in the federal securities class action captioned as *Goines v. Celsius Network, LLC, et al.*, Case No. 2:22-cv-04560-KM-ESK (the "Securities Litigation"), filed in the United States District Court for the District of New Jersey (the "New Jersey District Court"), together with named plaintiffs Taylor Goines, Matthew Coffey, and Jonathan Holt (collectively with Lead Plaintiffs, "Securities

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

Plaintiffs"), for themselves and the putative class they represent in the Securities Litigation (the "Class"), hereby submit this limited objection (the "Limited Objection") to (a) approval of the disclosure statement (the "Disclosure Statement") [Doc. No. 3117] for the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (the "Plan") [Doc. No. 3116] and (b) approval of the procedures and forms of notice (the "Solicitation Procedures") the debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") have proposed for soliciting votes on the Plan, as set forth in the Debtors' motion for entry of an order approving the Disclosure Statement and Solicitation Procedures (the "Motion") [Doc No. 2970]. As and for this Limited Objection, Securities Plaintiffs respectfully state as follows:

**PRELIMINARY STATEMENT**

1.  Based upon a detailed review of the definition of "Released Parties" in the Plan, it appears claims against the Non-Debtor Defendants (defined below), including the claims asserted against them in the Securities Litigation, are not subject to the third-party release contained in the Plan. However, the effort necessary to reach that conclusion demonstrates that the level of disclosure in the Disclosure Statement in respect of the third-party release is inadequate. At a minimum, the Disclosure Statement should clearly explain that the Non-Debtor Defendants are not Released Parties and that claims asserted against them in the Securities Litigation are not being released or otherwise impacted through the Plan.

2.  The Plan's mechanism for creditors to contribute their direct claims against third parties to the estate for collective prosecution by a litigation administrator is not appropriate with respect to the claims asserted against the Non-Debtor Defendants on behalf of the Class in the Securities Litigation. Those claims belong exclusively to purchasers and sellers of securities. Moreover, given the nascent stage of the Securities Litigation, most Class members likely do not

-2-

yet even know they *have* claims in that litigation. Accordingly, it is inappropriate to blindly lump such claims into a wholesale assignment.

3. Finally, the Disclosure Statement does not – but should – disclose and clearly describe (a) whether or how claims of the Class against the Debtors will be preserved to the extent of available insurance, (b) the meaning and impact of certain Plan provisions regarding the treatment of the D&O insurance policies, (c) the background and nature of the Securities Litigation, or (d) whether or how the Debtors' books, records, and other evidence potentially relevant to the Securities Litigation will be preserved and accessible for the duration of the Securities Litigation after the effective date of the Plan.

4. Unless and until the Plan, Disclosure Statement, and Solicitation Procedures are modified to remedy the defects identified in this Limited Objection, the Disclosure Statement and Solicitation Procedures should not be approved.

## BACKGROUND

**The Securities Litigation**

5. The Securities Litigation is a federal securities class action filed on July 13, 2022. By order dated April 14, 2023 [Sec. Litig. Doc. No. 41], the New Jersey District Court appointed Lead Plaintiffs as lead plaintiffs and Scott+Scott Attorneys at Law LLP and Radice Law Firm as Lead and Liaison Counsel, respectively, in the Securities Litigation.

6. The amended complaint filed in the Securities Litigation (the "Securities Complaint")[2] on June 19, 2023 [Sec. Litig. Doc. No. 46] asserts claims against a number of non-Debtor defendants (the "Non-Debtor Defendants") on behalf of the Class, comprised of all persons,

---

[2] References to the Securities Complaint and the allegations therein are for informational purposes only, are qualified in their entirety by the Securities Complaint itself, and do not constitute an admission or stipulation with respect to any factual allegations in the Securities Litigation.

other than the Defendants, who purchased Celsius Financial Products from February 9, 2018 to July 13, 2022 .

7. The Securities Complaint asserts claims against certain of the Debtors' current and former directors and officers, as well as three non-Debtor entities (collectively, the "Non-Debtor Defendants") under the Securities Act of 1933, the Securities Exchange Act of 1934, and common law, on behalf of Lead Plaintiffs and all other persons or entities, other than the Non-Debtor Defendants, who purchased Celsius financial products by way of a Celsius Earn Rewards Account, CEL Tokens (as defined in the Plan) and/or Celsius loans (collectively referred to as the "Celsius Financial Products") from February 9, 2018 to July 13, 2022 (the "Class Period") and were damaged thereby.

8. The Non-Debtor Defendants named in the Securities Complaint are:

   a. Alexander Mashinsky,

   b. Shlomi "Daniel" Leon,

   c. Hanoch Goldstein,

   d. Harumi Urata-Thompson,

   e. Jeremie Beaudry,

   f. Kristine Mashinsky,

   g. Am Ventures Holding, Inc.,

   h. Koala1 LLC, and

   i. Wintermute Trading Ltd.

9. Among other things, the Securities Complaint alleges that the Non-Debtor Defendants made a series of misleading statements that induced unsuspecting investors to purchase the Celsius Financial Products at inflated rates and that the Non-Debtor Defendants engaged in,

and financially benefitted from, a multifaceted scheme to commit acts of malfeasance such that they should be held personally liable.

10.     On July 6, 2023, the Debtors filed the Motion and, on July 29, 2023, filed the most recent version of the Plan and Disclosure Statement. A hearing on the Motion is presently scheduled for August 10, 2023.

## LIMITED OBJECTION

**A.    The Disclosure Statement should expressly clarify that the Non-Debtor Defendants are not Released Parties.**

11.     Article VIII of the Plan contains a deemed release (the "Third-Party Release") of numerous non-Debtors' claims against the Debtors and myriad non-Debtors. The "Releasing Parties" deemed to grant the Third-Party Release include, among others, all holders of claims that vote to accept the Plan, abstain from voting and do not opt out, or are deemed to reject the Plan but fail to take the affirmative step of opting out. Class members likely will fit into one of those categories, depending upon whether they are current account holders or otherwise hold claims against the Debtors beyond those asserted in the Securities Litigation.

12.     The Plan defines the "Released Parties" that would receive the benefits of the Third-Party Release to include numerous categories of parties, then expressly defines a list of "Excluded Parties" that are expressly excluded from the Released Parties. *See* Plan, Art. I.A.108, 200. The Non-Debtor Defendants do not appear to fit into any of the categories of Released Parties, and it in fact appears that substantially all of the Non-Debtor Defendants constitute Excluded Parties.

13.     However, the list of categories of Released Parties includes "any other Person or Entity identified in the Schedule of Released and Exculpated Parties." *Id.* Art. I.A.200(q). That schedule has not yet been filed and will not be filed until the Debtors file the plan supplement. While Securities Plaintiffs have no reason to believe that any of the Non-Debtor Defendants would

-5-

be added to that schedule since the individuals all have long since left the Debtors' employ and the entities (including two Mashinsky affiliates) are not associated with the Debtors in any way, the existence of the schedule leaves open the narrow possibility of a Non-Debtor Defendant somehow being added. Under the circumstances of these Chapter 11 Cases, there would never be any rational basis for making such an addition.

14. Accordingly, (a) the Disclosure Statement and Plan should simply say, for the avoidance of any doubt, that all of the Non-Debtor Defendants in the Securities Litigation are not Released Parties and (b) Securities Plaintiffs reserve all rights with respect to the Third-Party Release in connection with confirmation of the Plan.

**B.    Claims against the Non-Debtor Defendants in the Securities Litigation must be excluded from the "Contributed Claims" mechanism.**

15. The Plan and Solicitation Procedures contemplate an election mechanism whereby creditors in voting classes can opt to contribute their own direct claims "against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius" ("Contributed Claims") to the estate for collective adjudication by a litigation administrator. *See* Plan, Art. I.A. 60, 61; IV.N, O.

16. Claims under the federal securities laws belong to purchasers and sellers of securities. As a result, "[i]t is established beyond question that in order to have standing to bring a 10b-5 claim the plaintiff must be either a purchaser or seller." *In re Saxon Sec. Litig.*, 644 F.Supp. 465, 470 (S.D.N.Y. 1985), citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 823 (1975); *see also Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 85 F.3d 970, 973-74 (2d Cir. 1996) ("The federal courts have consistently determined that federal law governs the assignability of claims under the federal securities laws."). The one situation in which some courts have recognized a

right to assign claims under the federal securities laws is in connection with a sale of the underlying security. *See In re Nat'l Smelting of New Jersey, Inc. Bondholders' Litig.*, 722 F.Supp. 152, 176-77 (D.N.J. 1989).

17. The litigation administrator to be appointed pursuant to the Plan is not a purchaser or seller of securities, nor is it slated to purchase securities from members of the Class. As a result, the claims of the Class against the Non-Debtor Defendants under the federal securities laws *cannot* be contributed to the estate and the litigation administrator would lack standing to bring such claims. The appropriate fix is to expressly exclude those claims from the definition of "Contributed Claim" and make appropriate disclosures in the contribution election section of the ballots to be sent to creditors in voting classes.

**C.  The Disclosure Statement does not describe whether or how the claims of the Class will be preserved to the extent of available insurance.**

18. Securities Plaintiffs timely filed proofs of claim on behalf of themselves and the Class against the Debtors. The claims of Securities Plaintiffs and the Class against the Debtors appear to be subject to subordination pursuant to section 510(b) of the Bankruptcy Code and not entitled to any distribution under the Plan. *See* Plan, Art. I.A.163, 223, III.B.15.

19. However, the Debtors' existing insurance policies are left intact by the Plan and deemed assumed to the extent they are executory contracts. *See* Plan, Art. V.F. The Debtors' D&O insurance policies likely provide "Side C" entity-level coverage that would be available after payment of all claims by individual insureds.

20. Residual coverage under Side C typically exists *exclusively* for payment of securities claims. Side C coverage does not respond to direct or derivative claims against individual insureds. Thus, the only parties that stand to benefit from a failure to preserve the claims of the Class against the Debtors to the extent of available insurance are the insurers themselves.

To avoid providing the relevant insurers a windfall at the expense of the Class, the claims of the Class against the Debtors should be preserved to the extent of available insurance coverage, if any.

**D.     The treatment of the D&O insurance policies under the Plan is unclear.**

21.     The Plan provides that the duties of the litigation administrator to be appointed under the Plan will include "*managing the rights* to D&O Liability Insurance Policies provided to the Litigation Administrator(s) under the UCC Claims Stipulation and Article IV.G.3 hereof[.]" Plan, Art. IV.G.2.  The Disclosure Statement lacks any detail as to what "managing the rights" entails.  Any alteration of parties' rights under insurance policies, such as the rights of the individual Non-Debtor Defendants to access coverage, is improper.  As such, the Plan and Disclosure Statement must make clear that these provisions (and any other Plan provisions related to D&O insurance) do not alter the rights or priorities of any insured parties with respect to the coverage under the D&O Liability Insurance Policies.

**E.     The Disclosure Statement does not describe the Securities Litigation.**

22.     The Disclosure Statement does not provide any mention of the Securities Litigation at all.  The Securities Litigation asserts claims against the Non-Debtor Defendants, all but one of whom are either former insiders of the Debtors, or related parties of such former insiders.  As such, creditors and parties in interest are entitled to be advised of the pendency of the Securities Litigation when deciding how to vote on the Plan.  *See In re Bally Total Fitness of Greater N.Y., Inc.*, 2007 Bankr. Lexis 4729, at *23 (Bankr. S.D.N.Y. Sept. 17, 2007) (taking into account pending litigation when determining feasibility of a Plan).  Yet, the Disclosure Statement contains no meaningful description, or even a mention, of the Securities Litigation.  To resolve this omission, the following paragraph should be added to the Disclosure Statement:

> A putative securities class action against the Debtors and certain Insiders and Related Parties thereto is currently pending in the United States Court for the District of New Jersey, captioned as *Goines v. Celsius Network, LLC, et al.*, Case

No. 2:22-cv-04560-KM-ESK (the "Securities Litigation"). The Securities Litigation asserts claims on behalf of the class, comprised of all persons, other than the defendants in such action, who purchased Celsius financial products by way of a Celsius Earn Rewards Account, CEL Tokens and/or Celsius loans from February 9, 2018 to the July 13, 2022. The Securities Litigation asserts claims under the Securities Act of 1933, the Securities Exchange Act of 1934, and common law.

**F.    The Disclosure Statement does not disclose whether or how the Debtors intend to preserve evidence potentially relevant to the Securities Litigation.**

23.    As the issuers of the Celsius Financial Products that are the subject of the Securities Litigation, the Debtors likely possess much or even most of the evidence potentially relevant to the Securities Litigation. Given the significance of such information to the prosecution of the Securities Litigation, the Plan should include a mechanism for the preservation of such evidence through the conclusion of the Securities Litigation and the Disclosure Statement should describe that mechanism.

24.    The Securities Litigation is subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which, among other things, mandates that

> any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(b)(3)(C)(i). This mandatory requirement is subject to "sanction for willful violation." 15 U.S.C. § 78u-4(b)(3)(C)(ii).

25.    While no longer named in the Securities Litigation due to the filing of these Chapter 11 Cases, the PSLRA's document preservation mandate and the Debtors' presently existing duties under the Federal Rules of Civil Procedure and common law should continue to apply to the Debtors and later, the Post-Effective Date Debtors.

-9-

26. Continuing preservation of the Debtors' books, records, electronically stored information, and other items of evidence that are potentially relevant to the Securities Litigation post-confirmation is absolutely crucial to avoid prejudice to Securities Plaintiffs and the putative Class.

27. The Plan contains a provision requiring the Post-Effective Date Debtors not to destroy or otherwise abandon books, records, electronically stored information, and other documents without permission of the litigation administrator *or* authorization from the Bankruptcy Court. Plan, Art. VIII.J.

28. Because Article VIII.J of the Plan is not tethered in any way to the duration of the Securities Litigation, and gives the litigation administrator discretion to decide when books, records, and other evidence may be destroyed or abandoned, that provision creates a severe risk of potentially relevant evidence becoming unavailable before the completion of the Securities Litigation.

29. To remedy that significant concern, the Plan should provide, and the Disclosure Statement should describe, an express evidence preservation requirement, as follows:

> Until the entry of a final and non-appealable order of judgment or settlement with respect to all defendants now or hereafter named in the litigation captioned as *Goines v. Celsius Network, LLC, et al.*, Case No. 2:22-cv-04560-KM-ESK (the "Securities Litigation"), the Debtors, the Post-Effective Date Debtors, and any transferee or custodian of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format, and from every source and location, including but not limited to all hard drives, servers, and cloud-based storage located in the United States and overseas), or any tangible object or other item of evidence relevant or potentially relevant to the Securities Litigation, wherever stored (collectively, the "Potentially Relevant Books and Records"), shall preserve and maintain the Potentially Relevant Books and Records as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure, and shall not destroy, abandon, transfer, or otherwise render unavailable such Potentially Relevant Books and Records. For the avoidance of doubt, the Plan Injunction shall not impact in any manner any rights of the lead plaintiff and the class in the Securities Litigation to

seek and obtain Potentially Relevant Books and Records through discovery in the Securities Litigation.

### **RESERVATION OF RIGHTS**

30. Neither the filing of this Limited Objection nor anything contained herein are intended to limit, prejudice, or otherwise impact any rights of Securities Plaintiffs or any member of the Class in connection with the filing, solicitation, or confirmation of the Plan (or any other plan) or approval of the Disclosure Statement and Solicitation Procedures. Securities Plaintiffs, on behalf of themselves and the Class, hereby reserves all such rights, including but not limited to the rights to (a) object on any and all grounds to (i) approval of the Disclosure Statement and Solicitation Procedures for the Plan on other grounds and (ii) confirmation of the Plan, (b) opt out of the Third-Party Release and take any other action permitted or required under the Bankruptcy Code and other applicable law, on behalf of themselves and the Class, and (c) seek, on behalf of itself and the Class, any other relief in connection with the foregoing.

31. For the avoidance of doubt, this Objection does not, shall not, and shall not be deemed to:

a. constitute a submission by Securities Plaintiffs, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

b. constitute consent by Securities Plaintiffs, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order in any non-core proceeding, which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter;

c. waive any substantive or procedural rights of Securities Plaintiffs or the Class or any member thereof, including but not limited to (i) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment on any matter, (ii) the right to have final orders in non-core matters entered only after de novo review by a District Court judge, (iii) the right to trial by jury in any proceedings so triable herein, in the Debtors' chapter 11 cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, their chapter 11

cases, any Related Proceedings, or the Securities Litigation, (iv) the right to have the reference withdrawn by a United States District Court in any matter subject to mandatory or discretionary withdrawal, or (v) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Securities Plaintiffs or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

59. For the further avoidance of doubt, Securities Plaintiffs, on behalf of themselves and the Class and the members thereof, do not consent, and expressly object, to this Court's entry of any final order or judgment that this Court lacks jurisdiction or statutory and/or constitutional adjudicatory authority to enter without the affirmative and knowing consent of all parties affected thereby, and reserves all rights to object to confirmation of the Plan, or any other plan proposed in the Chapter 11 Cases, on any basis, including but not limited to the fact that the Court lacks constitutional adjudicatory authority pursuant to *Stern v. Marshall*, 564 U.S. 462 (2011), and its progeny to approve a release of the claims of Securities Plaintiffs and the putative Class against the Non-Debtor Defendants.

## CONCLUSION

For all of the foregoing reasons, the Disclosure Statement and Solicitation Procedures should not be approved unless the issues raised in this Objection are addressed through appropriate modifications of the Disclosure Statement, Plan, and Solicitation Procedures, as applicable.

[ *signature page follows* ]

**WHEREFORE**, Securities Plaintiffs respectfully submit that the Disclosure Statement and Solicitation Procedures should not be approved, and the Motion should not be granted, unless the issues addressed in this Objection are appropriately addressed as set forth herein.

Dated: August 3. 2023

        Respectfully submitted,

        */s/ Michael S. Etkin*
Michael S. Etkin
Phillip Khezri
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Telephone:    (212) 262-6700
Email:    metkin@lowenstein.com
Email:    pkhezri@lowenstein.com

-and-

Andrew Behlmann
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone:    (973) 597-2500
Facsimile:    (973) 597-2333
Email:    abehlmann@lowenstein.com

*Bankruptcy Counsel to the
Securities Plaintiffs and the Class*