Sheryl P. Giugliano
Ruskin Moscou Faltischek, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-0190
(516) 663-6600
sgiugliano@rmfpc.com

*Attorneys for AM Ventures Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------------x

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
BY AM VENTURES HOLDINGS INC. TO APPROVAL OF REVISED DISCLOSURE
STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES (ECF DOC. NO. 3117)**

AM Ventures Holdings Inc. ("**AMVH**") respectfully submits this limited objection and reservation of rights (the "**Limited Objection**") to approval of the adequacy of the revised *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* (ECF Doc. No. 3117) (the "**Disclosure Statement**") for failure to provide adequate information. In support of the Limited Objection, AMVH respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

1

**BACKGROUND**

1. On July 13, 2022 (the "**Petition Date**"), certain of the Debtors filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**").

2. On July 27, 2022, the Office of the U.S. Trustee for Region 2 appointed the Official Committee of Unsecured Creditors (the "**Committee**") in these cases.

3. On October 5, 2022, the Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs. Celsius Network LLC filed its Schedules as ECF Doc. No. 974, and it lists a retail customer claim on behalf of AMVH as held in Earn Accounts BTC 4.20952624456817, CEL 41299560.6245872, ETH 317.25774886892, TUSD 386.94891887345, USDC 6.10310919138742, and WBTC 4.48727815407676. The AMVH retail customer claim is not listed as disputed, contingent or unliquidated.

4. On December 7, 2022, certain additional Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the Court.

5. On February 7, 2023, the Committee sent the Debtors a draft of the proposed complaint (the "**Complaint**") attached as Exhibit 2 to the *Motion of the Official Committee of Unsecured Creditors to Approve Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* (ECF Doc. No. 2054) (the "**Standing Motion**") and requesting standing to pursue the claims set forth therein.

6. The Complaint names as potential defendants, among others, AMVH, and alleges, among other things, that AMVH, is wholly owned by Alexander Mashinsky, agreed to purchase CEL tokens in connection with the ICO of Celsius Network Limited, and received avoidable prepetition avoidable transfers. As a result, according to the Complaint, the Committee seeks to

2

avoid certain prepetition transfers to AMVH as an alleged non-statutory insider.

7. On March 7, 2023, the Committee filed the *Notice of Revised Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors with Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* (ECF Doc. No. 2193).

8. On March 8, 2023, the Court entered and approved the *Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors With Respect to Certain Claims and Causes of Action Belonging to the Debtors' Estates* (ECF Doc. No. 2201) (the "**Standing Stipulation and Order**"). The Standing Stipulation and Order provides that, among other things: (a) the Debtors and the Committee shall coordinate in good faith to identify claims and causes of action, including but not limited to those arising out of, or related to prepetition conduct of current and former directors, officers, and employees of Celsius which may be transferred to a "litigation trust" or other similar entity under the plan; and (b) any proposed defendants in the Complaint, as amended, shall not be released or exculpated in any plan proposed or supported by the Debtors. The Standing Stipulation and Order does not offer a basis for equitable subordination of claims held by the proposed defendants named therein.

9. On July 28, 2023, the Debtors filed the *Notice of Filing of Plan Supplement* (ECF Doc. No. 3115) including "Exhibit A – Schedule of Released and Exculpated Parties" and "Exhibit B – Alternative Dispute Resolution Procedures," but failed to include any information about the "Excluded Parties"

10. On July 29, 2023, the Debtors filed the *Second Notice of Filing of Revised Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* (ECF Doc. No. 3116) which included as Exhibit A further revised *Joint Chapter 11 Plan of Reorganization*

3

*of Celsius Network LLC and its Debtor Affiliates* (as amended, revised and supplemented, the "**Plan**").

11. Article I.A.108 in the Plan defines "Excluded Party" to mean, among others, "(a) Alexander Mashinsky; . . . (d) the other UCC Claims Stipulation Defendants. . . [and] (f) any party on the Schedule of Excluded Parties" and "(g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified as a Released Party."

12. Article I.A.245 in the Plan defines "UCC Claims Stipulation Defendants" to mean the defendants identified in the Complaint, including AMVH.

13. Article IV of the Plan "Means for Implementation of the Plan," Section B "Plan Settlement Provisions Regarding Claims and Interests", Subsection 2 "CEL Token Settlement" provides that Claims on account of CEL Token held by UCC Claims Stipulation Defendants, among others, "will be subordinated without distribution as provided in Article III.B.15 or 16 as applicable." No other basis is mentioned for subordination of CEL Token Claims held by UCC Claims Stipulation Defendants.

14. Article III of the Plan "Classification, Treatment, and Voting of Claims and Interests," Section B "Treatment of Classes of Claims and Interests", Section 16 refers to Class 16 – Equitably Subordinated Claims, and provides that Holders of Equitably Subordinated Claims will not receive any distribution on account of such Claims, and they shall be "cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect."

15. Article I.A.104 defines "Equitably Subordinated Claims" to mean, among others, "those Claims identified by the Committee and agreed to by the Debtors to be subordinated pursuant to the Plan" without any basis or legal support whatsoever.

4

**OBJECTION**

**The Disclosure Statement Fails to Provide Adequate Information**

16. Bankruptcy Code §1125(a)(1) defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan, . . . ." 11 U.S.C. §1125(a)(1).

17. Bankruptcy Code §1125(b) provides that a debtor may only solicit votes accepting or rejecting a plan if "at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. §1125(b).

18. "What constitutes adequate information is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (denying motion to approve disclosure statement for failure to provide adequate information required under Bankruptcy Code §1125) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess., 224, 408-409 ("House Report"), *reprinted in* 1978 U.S. Code Cong. & Admin. News., pp. 57, 5963, 6183-6184, 6365, quoted in *Kirk v. Texaco, Inc.,* 82 B.R. 678, 682 (S.D.N.Y. 1988), *In re Monnier Bros.,* 755 F.2d 1336, 1342 (8th Cir. 1985) and *First American Bank of New York v. Century Glove Inc.,* 81 B.R. 274, 278 (D. Del. 1988)). *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973 (Bankr. N.D.N.Y. 1988)

19. A bankruptcy court should deny approval of a disclosure statement in two circumstances: (a) the proposed plan does not satisfy the confirmation requirements of Bankruptcy

Code §1129(a)[2]; and (b) the disclosure statement fails to provide information necessary for creditors and interest holders to make "an intelligent and informed decision as to whether to accept or reject the plan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (citing *In re Unichem Corp.,* 72 B.R. 95, 97 (Bankr. N.D.Ill. 1987); *In re Pecht,* 53 B.R. 768, 772 (Bankr. E.D. Va. 1985); *In re McCall,* 44 B.R. 242, 243 (Bankr. E.D.Pa. 1984)). *See also, In re Dakota Rail, Inc.,* 104 B.R. 138 (Bankr. D. Minn. 1989) ("A disclosure statement is misleading where it contains glowing opinions or projections, having little or no basis in fact and/or contradicted by known fact.") (citing *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988); *In re Civitella,* 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981)).

20. Here, the Disclosure Statement offers no legal basis and provides wholly inadequate disclosure with respect to equitable subordination and extinguishment of AMVH's claims in the Debtors' cases. Neither the Disclosure Statement nor the Plan offer any basis for the conclusion that entities which may be owned directly or indirectly in whole or in part by Mr. Mashinsky, an insider of the Debtors, accused of receiving allegedly fraudulent or preferential transfers from the Debtors, should have their claims equitably subordinated at the whim of the Committee and the Debtors, without any due process, notice and a hearing, and a ruling from this Court.

**Equitable Subordination is an Extreme Remedy Requiring Specific Findings and Conclusions Absent from the Disclosure Statement and the Plan**

21. "Equitable subordination is an extraordinary remedy that is to be used sparingly."

---

[2] AMVH and any related or affiliated parties or entities expressly reserve any and all rights, remedies and defenses with respect to their ability to object to confirmation of the Plan and its failure to satisfy the requirements of Bankruptcy Code §1129, and do not by this Limited Objection concede any of the issues or legal arguments with respect to confirmation of the Plan. This Limited Objection need not focus on the Debtors' inability to confirm the Plan, because the Debtors fail in the Disclosure Statement to disclose necessary information relating to the proposed equitable subordination of AMVH's claims in the cases.

*In re Kalisch,* 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008) (citing *In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (6th Cir. 1991)).

22. Bankruptcy Code §510(c) provides that "after notice and a hearing, the court may --- (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest ot all or party of another allowed interest; . . . ." 11 U.S.C. §510(c).

23. Under Rule 7001(8) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), a proceeding to subordinate any allowed claim or interest must take place in an adversary proceeding except when a chapter 11 plan provides for subordination. But, the plan (and the disclosure statement in the first instance) must include the information that would be included in a complaint seeking to equitably subordinate a claim, and that proposed form of extreme relief must be reviewed and approved by a bankruptcy court.

24. The Bankruptcy Code does not provide circumstances under which equitable subordination is appropriate or warranted, but case law has provided guidance for courts in whether to grant this extreme remedy. *In re Wooley v. Faulkner (In re SI Restructuring, Inc.),* 532 F.3d 355, 361 (5th Cir. 2008) ("[E]quitable subordination is remedial, not penal, and in the absence of actual harm, equitable subordination is inappropriate.") (citing *Benjamin v. Diamond (In re Mobile Steel Corp.),* 563 F.d 692 (5th Cir. 1977)).

25. The three-prong test for equitable subordination is as follows: "(1) the claimant must have engaged in inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code." *In re SI Restructuring, Inc.,* 532 F.3d 355, 360 (5th Cir. 2008) (citing *In re Mobile Steel Corp.,*

563 F.d 692, 700 (5th Cir. 1977)). *See also In re Kalisch,* 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008) ("In all cases concerning equitable subordination actual harm to creditors is a necessary component to application of the doctrine.") (citing *Wooley v. Faulkner (In re SI Restructuring Inc.),* 532 F.3d 355, 361 (5th Cir. 2008)).

26. In addition, "a claim should be subordinated only to the extent necessary to offset the harm which the debtor or its creditors have suffered as a result of the inequitable conduct." *In re SI Restructuring, Inc.,* 532 F.3d 355, 361 (5th Cir. 1977) (citing *In re Mobile Steel Co.,* 563 F.2d at 701; *80 Nassau Assoc. v. Crossland Federal Savings Bank (In re 80 Nassau Assoc.),* 169 B.R. 832, 840 (Bankr. S.D.N.Y. 1994)).

27. Last, "a determination of equitable subordination must be supported by 'specific findings and conclusions with respect to each requirement'" *In re SI Restructuring, Inc.,* 532 F.3d 355, 361 (5th Cir. 2008) (quoting *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.,* 926 F.2d 1458, 1465 (5th Cir. 1991); *Citicorp Venture Capital, Ltd. v. Comm. Of Creditors Holding Unsecured Claims,* 323 F.3d 228, 231-32 (3d Cir. 2003)).

28. Neither the Disclosure Statement nor the Plan include specific findings or conclusions by the Court with respect to the requirements for establishing equitable subordination of AMVH's claim is appropriate or necessary relief. Further, neither the Plan nor the Disclosure Statement offer an explanation for how the treatment of the Equitably Subordinated Claims (including the claims held by the UCC Claims Stipulation Defendants) is proportionate to the alleged harm which the Debtors and/or its creditors suffered as a result of the alleged inequitable conduct at the hands of AMVH, among others.

29. Holders of proposed Equitably Subordinated Claims, especially those held by UCC Claims Stipulation Defendants like AMVH, have had no opportunity to analyze or understand the

8

basis for the proposed equitable subordination of their claims and they will necessarily object to confirmation of the Plan which will lead to unnecessary protracted and expensive litigation. Further, there could be a meaningful difference in recoveries for other creditors if there is no valid or legal basis for equitable subordination of the Equitable Subordinated Claims, and the Court strikes or removes that treatment from the Plan.

30.     Last, the Disclosure Statement does not and cannot show that any of the alleged prepetition transfers to AMVH and the other UCC Claims Stipulation Defendants harmed creditors, because upon information and belief the Debtors had and have now an excess of CEL Tokens which are the type allegedly transferred to AMVH.

**CONCLUSION**

The Debtors' Disclosure Statement should not be approved because it lacks adequate disclosure with respect to the Equitably Subordinated Claims. The Disclosure Statement and the Plan lack any specific factual evidence and findings for this Court's consideration and approval establishing that equitable subordination of claims held by the UCC Claims Stipulation Defendants like AMVH is necessary and appropriate under applicable case law (a conclusion AMVH vehemently contests).

**WHEREFORE,** for the reasons set forth above, AMVH respectfully requests that this Court:

i. enter an order denying approval of the Disclosure Statement; and
ii. grant such other and further relief as is just and proper.

Dated: Uniondale, New York
August 3, 2023

> RUSKIN MOSCOU FALTISCHEK, P.C.
> *Attorneys for AM Ventures Holdings Inc.*
>
> By:  */s/ Sheryl P. Giugliano*
> Sheryl P. Giugliano
> 1425 RXR Plaza
> East Tower, 15th Floor
> Uniondale, NY 11556-1425
> (516) 663-6600