Hearing Date: August 10, 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: August 3, 2023, at 4:00 p.m. (prevailing Eastern Time)

**KLEINBERG KAPLAN WOLFF & COHEN, P.C.**
Matthew J. Gold
Dov R. Kleiner
500 Fifth Avenue
New York, New York 10110
(212) 986-6000

*Counsel to Harrison Schoenau*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*, | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# OBJECTION OF HARRISON SCHOENAU TO DEBTORS' REQUEST FOR APPROVAL OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

Harrison Schoenau, by and through his undersigned counsel, hereby submits this (1) limited objection to the Debtors' motion for entry of an order approving their proposed disclosure statement and approving their proposed procedures leading to a confirmation hearing (docket 2970), and (2) objection to the Debtors' indirectly and improperly proposed Alternative Dispute Resolution (ADR) procedures (docket 2971), and in support of his objection respectfully states as follows:

**Preliminary Statement**

1.   The ADR procedures have been improperly presented to the Court in violation of the Local Bankruptcy Rules and standing orders, and are substantively flawed as well. The Court should strip the ADR procedures from the package of relief sought from this Court in connection with the confirmation process of the Debtors unless and until the Debtors present a proper motion, on proper notice to the affected parties.

2.      The proposed ADR procedures are contained in the plan supplement (docket 2971), which was not made public until just before midnight on Friday July 28, 2023, three business days before the objection deadline. On their face the ADR procedures would be binding, at the Debtors' unilateral election, on substantially all preference defendants in actions that the Debtors have not commenced, as well as on creditors whose claims are objected to in the future. The Debtors have not provided *any* argument in support of the ADR, let alone provide points and authorities in support of the extraordinary relief sought. Nor have they identified who would be bound by the ADR procedures, let alone attempt to engage with such parties to negotiate such procedures in good faith.

3.      The Debtors have indirectly asked the Court to bless their improper method for seeking approval of the ADR Procedures by including them as part of a package to be presented to the Court at confirmation. The proposed Plan Procedures Order (docket 2970) would effectively relieve the Debtors of any obligation to seek relief by motion, and would impose an objection deadline, requiring anyone who might conceivably be subject to the ADR Procedures to object to a motion that has not yet been made. Accordingly, this objection is appropriately submitted at this time.

4.      Furthermore, as set forth below, the proposed ADR procedures are inappropriate because they are biased in favor of the Debtors and are ill-suited to preference litigation in cases like this.

5.      Harrison Schoenau is a Celsius customer who transacted in his account during the 90 days before the Celsius petition date. He is potentially a preference defendant and thus potentially subject to the ADR procedures. He should not be forced to raise objections to the ADR Procedures now, in the context of a disclosure statement/confirmation procedures hearing and plan

12461924.3 - 08/03/23

confirmation process, when the applicability of the procedures to him are contingent on later decisions by the Debtors. But the Debtors' choice to seek court approval at this stage, and in advance of commencing adversary proceedings, leaves him no choice.

## Procedural Background

6.   The Debtors have not filed a motion seeking approval of the ADR, or indeed any pleading that explains or justifies the ADR. Instead, the proposed ADR procedures are laid out in the Plan Supplement (filed a mere three business days ago), which, pursuant to Section I.A.181 of the Plan, shall be deemed incorporated into and part of the Plan as if set forth therein in full.

7.   The Debtors' motion (docket 2970) seeks entry of the Plan Procedures Order that would, among other things, approve the proposed disclosure statement and approve the proposed solicitation and voting procedures. That motion contains no mention of the ADR procedures.

8.   Included in the relief sought is approval of a notice related to filing of the Plan Supplement (Exhibit 7 to the proposed Plan Procedures Order). The proposed Plan Supplement notice does not mention the ADR procedures at all. Indeed, it describes the Plan Supplement by stating that it contains 24 separate documents, none of which are the ADR procedures.

9.   The briefing schedule proposed by the Debtors in the proposed Plan Procedures Order provides that the Debtors' confirmation brief, which might, perhaps, contain support for the ADR procedures, will not be filed until nine days after the deadline for the filing of objections to the plan.

10.   No specific notice was given to potential avoidance action defendants, which is especially prejudicial to potential defendants who are not creditors and who therefore might not be closely following the docket pre-confirmation.

**Relief Requested and Reasons Therefore**

11.     The proposed ADR procedures should be stricken from the Plan Supplement and removed from consideration in connection with a confirmation hearing, subject to being added to the calendar should the Debtors file a proper motion on proper notice.

12.     A proper motion must, among other things, comply with the requirements of Local Rule 9013-1(a), which provides that "Each motion shall specify the rules and statutory provisions upon which it is predicated and the legal authorities that support the requested relief, either in the motion or in a separate memorandum of law. If such specification has not been made, the Court may strike the motion from the calendar."

13.     The Debtors have not complied with Local Rule 9013-1(a) with regard to the ADR procedures. They have not specified the rules and statutory provisions that would justify the ADR procedures, nor have they cited any legal authorities. It is patently insufficient to simply file the proposed ADR procedures themselves just a few days before the objection deadline.

14.     Furthermore the Debtors have violated the requirements of this Court's Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/ Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings (the "SDNY ADR Procedures")[1], which expressly requires a motion by a party in interest (Section 1.1).

15.     The provision in the Plan Procedures Order scheduling the filing of the Debtors' confirmation brief turns the requirements of Local Rule 9013-1(a) upside down. It would permit the Debtors to defer providing the legal justification for the ADR procedures until after objections are filed. It prejudices objectors by forcing them to guess at the Debtors' justifications and

---

[1] The SDNY ADR Procedures are applicable pursuant to Local Bankruptcy Rule 9019-1 and are available on the Court's web site (http://www.nysb.uscourts.gov/content/mediation-procedures).

Page **4**

arguments, and leaves objectors without an opportunity to address those justifications and arguments in writing.

16. In addition, the Debtors must provide proper notice of their motion. The ADR procedures apply to at least two groups, holders of claims that are objected to, and avoidance action defendants, and the Debtors have not identified the members of either group. Due process requires that specific notice be provided to the parties who will be affected by the relief sought.

17. For preference defendants, it seems simplest to defer consideration of ADR procedures until after complaints have been filed and the parties in interest identified. That is what is contemplated by the SDNY ADR Procedures, which provide for the filing of an ADR motion "promptly after filing the initial document in the matter" (Section 1.1), that is, after the proceeding or contested matter has been commenced and the parties have been identified.

18. It is not apparent why ADR for adversary proceedings must be resolved this far in advance, but if the Debtors need to have ADR procedures put in place before filing complaints they should identify as part of proper notice who they will be suing and in what amounts. Either way it seems self-evident that better ADR procedures will result if the Debtors engage in advance with the parties in interest before presenting them to the Court.

19. Furthermore, the conduct of avoidance action adversary proceedings is not a proper subject of a plan of reorganization. To be clear, it is appropriate for a plan of reorganization to dictate who will have standing and authority to bring avoidance actions on behalf of the estate. But the Debtors' proposal goes far beyond that in seeking to dictate how the adversary proceedings will be conducted and in ways that materially affect defendants.

20. In sum, the procedural defects set out above demonstrate why issues regarding the ADR procedures are not simply "plan objections" that can be deferred until the confirmation

hearing. The proposed Plan Procedures Order would set in place a series of improper procedures that would improperly shape the consideration of the merits at a subsequent hearing. Accordingly, if the Debtors wish to have the ADR procedures considered at the confirmation hearing they should be required to observe the procedural requirements, and the proposed Plan Procedures Order should be modified accordingly.

## The Proposed ADR Procedures Should Be Revised

21.  It appears that the Debtors made no effort to include the views of unnamed defendants in fashioning the ADR Procedures as the proposed ADR procedures are far from neutral. Should the Debtors engage with true parties in interest their discussions should include the following issues:

- The procedures are imposed on a mandatory basis[2] on anyone designated by the Debtors, at their sole option, which could include all preference defendants (other than a small class of ADR-Ineligible Potential Defendants as designated in the Plan). Preference defendants are not given the option whether to participate. Preference defendants and creditors that are not designated by the Debtors are not given the opportunity to request inclusion in the ADR program.
- Defendants are required to bear half of the cost of ADR. Since the Debtors are requesting ADR, and since they presumably believe that the estate will benefit, the estate should pay the cost of ADR.
- Once a defendant (or a potential defendant) is designated by the Debtors for inclusion in ADR all proceedings before this Court are stayed. (Section 2.6) This provision would strip a defendant of its right to move to dismiss a complaint. The stay would also preclude discovery by a defendant, as the one exception to the discovery stay, "discovery conducted pursuant to these ADR Procedures," offers nothing to defendants because the ADR procedures do not provide for defendant discovery.
- The Debtors have the unilateral right to select a mediator (section 5.1), and the mediation will be conducted pursuant to that mediator's rules, which are not disclosed to anyone but the Debtors.
- There are specific provisions to enforce against non-debtors any failure to comply with the ADR procedures or negotiate in good faith (section 2.11) but no equivalent provisions enforceable against the Debtors.

---

[2] The inclusion in the ADR Procedures of limited opt-out rights does not change the mandatory nature of the proposed program. Certain elements of the procedures are imposed notwithstanding an attempt to opt out, and the opt-out appears to be impermissibly conditioned upon the Participating Claimant's beliefs regarding the anticipated result of the ADR.

Page **6**

12461924.3 - 08/03/23

- The attendance of the Participating Claimant is mandatory, but the Debtors can delegate the attendance requirement to a Litigation Administrator (section 5.3). Since the Litigation Administrator is subject to supervision by a Board, and indeed the scope of the Litigation Administrator's autonomy is expressly limited (section 3.4), the ultimate unfettered authority of the Litigation Administrator to settle is unclear if not lacking, rendering the attendance requirement one-sided.

22. In addition, as described below, defendants in similar positions should be encouraged to work together to streamline the process. The ADR process should be configured to permit the formation and participation of defendant groups, and confidentiality provisions should permit the sharing of information among defendants with a common interest, regardless of whether those defendants have common counsel or separate counsel. It would be grossly unfair to permit the Debtors access to the positions of all defendants in the ADR while those defendants are barred from communicating with each other.

23. Some of the proposed ADR procedures seem to be more suited to claims objections litigation than preference actions. For example, the mandatory first step, an Initial Assessment Procedure (section 1.2) requires parties designated by the Debtors for inclusion in ADR to provide information to the Debtors. Likewise, the Debtors may serve the defendants at the outset with a Valuation Form (sections 1.37, 3.1), but there is no provision for initial disclosures by the Debtors. These may make sense in the context of claims objections, but radically rewrite the rules for an avoidance action. Under the Federal Rules, in avoidance actions as in all federal litigation, it is the plaintiff who has to show its hand first. Moreover, in preference actions, pursuant to section 547(b) the plaintiff has the burden to conduct reasonable due diligence into the circumstances of the case and the reasonably knowable affirmative defenses. In addition, as discussed below, in the particular context of this case it is especially appropriate that initial discovery comes from the Debtors rather than from Defendants.

24. Other ADR procedures are simply vague. It is unclear how the ADR procedures are meant to intersect with the Federal Rules of Civil Procedure and the Bankruptcy Rules governing adversary proceedings. Among other things, it is not clear whether the Debtors are required to serve a summons and complaint before designating a defendant for inclusion in the ADR program.

**The ADR Procedures Are Inappropriate to Preference Litigation in a Case Like This**

25. More importantly, the ADR procedures are poorly designed for preference cases in a case like this.

26. It has been abundantly clear for some time that the most important gating issues for preference defendants in this case will be the viability of preference defenses, especially the Safe Harbor defense (section 546(e)) and the ordinary course of business defense (section 547(c)(2)) *See, e.g.,* Joint Stipulation and Agreed Scheduling Order by and among the Debtors, the Committee, and the Ad Hoc Groups With Respect to the Custody and Withhold Issues (docket 1044) ¶10 (setting forth Phase 2 issues regarding preference defenses).

27. The most important aspects of these defenses will be largely if not entirely applicable to all defendants. For example, the Safe Harbor defense will be applicable if the Debtors fit the definition of Financial Participant and if the standard agreements used by the Debtors with their customers fit the definition of Securities Contract. Likewise, determining the ordinary course of business for the Debtors will likely be a common issue for most defendants.

28. Most if not all of the relevant evidence for such defenses will be in the possession of the Debtors and not defendants. Thus the prejudicial effect of the ADR procedures will be that the Debtors will be able to conduct their own privileged review of the material evidence (which they may have done already) and then embark on negotiations with defendants who are in the dark. The Debtors should make this evidence available to defendants in advance of negotiations in order

to facilitate open and fair negotiations and to maximize the chance that a settlement can be achieved.

29.  In cases with significant, common issues among wide-spread avoidance action defendants, parties often recognize the value in facilitating consideration of legal issues common to most, if not all defendants, in an organized, rather than piece-meal fashion.

30.  Such an approach makes eminent sense here for the same reasons. The ADR procedures, which contemplate engagement between the Debtors and individual defendants to the exclusion of a comprehensive unified approach, thus starts the preference litigation by prejudging the procedural aspects of common defenses before the parties have even been joined.

31.  The preference defense issues discussed above are, to be sure, not yet before the Court. This is another unfortunate consequence of the Debtors' decision to propose the ADR procedures prematurely and through an inappropriate procedural mechanism – the Court is being placed in the position of having to consider now issues that would ordinarily arise in a pre-trial conference in an adversary proceeding.

32.  It may be a good thing for the Debtors to provide an ADR alternative to those claimants who want to participate. But that is not what these overbroad ADR procedures provide.

## Conclusion

Wherefore Harrison Schoenau respectfully requests entry of an order striking the ADR Procedures from the Plan Supplement and providing such other and further relief as the Court deems just.

New York, New York  
August 3, 2023

/s/ Dov R. Kleiner  
Matthew J. Gold  
Dov R. Kleiner  
**KLEINBERG KAPLAN WOLFF & COHEN, P.C.**  
500 Fifth Avenue

Page **9**

12461924.3 - 08/03/23

                                            New York, New York  10110
                                            (212) 986-6000

                                            *Counsel to Harrison Schoenau*

12461924.3 - 08/03/23