August 3, 2023

Re: Support for Objections to Adequacy of Disclosure Statement and Request for CEL Token Class Formation
Case No. 22-10964 (MG)
Doc 3118 and Doc 3084

The Honorable Martin Glenn
Chief Judge
United States Bankruptcy Court
Southern District of New York

Honorable Chief Judge Glenn,

I am writing to express my full support for the motions raised by Mr. Santos Caceres and Mr. Otis Davis, acting Pro Se, advocating for fair and equal treatment of the CEL Token for non-insiders. Their request is that the CEL Token receives the same pricing treatment as all other coins/tokens held by other creditors. Additionally, I support their objections pertaining to the adequacy of the disclosure statement, the proposed settlement between Earn and Loans, and their call for the formation of a CEL Token Class in the Chapter 11 bankruptcy case of Celsius Network LLC and its affiliated entities.

I firmly oppose the actions taken by the Celsius UCC, through their legal counsel, to subordinate the CEL token claims. I also strongly denounce any attempt by other creditor classes and external entities to employ bullying tactics aimed at intimidating and undermining efforts for equal treatment of CEL Token and the pursuit of a fair resolution, as Your Honor has previously expressed.

Allow me to provide the reasons supporting my stance on this matter:

1. Aaron Colodny of White & Case has inaccurately combined criteria 3 and 4 of the Howey test in his objection, Docket #2840, thereby misrepresenting the legal criteria applied.

2. White & Case has not presented any supporting evidence in their objection to demonstrate that the Howey test has been met. Furthermore, the opinions expressed by White & Case cannot be considered equivalent to the positions of regulators who have not yet issued formal rulings.

3. In the recent Ripple/XRP case, Judge Analisa Torres applied the Howey factors to indisputable facts at summary judgment. Similarly, the CEL Token does not seem to meet the criteria of a security or investment contract.

4. The Debtor has never officially or formally stated that the CEL token is a security.

5. The Examiner's Report does not assert that the CEL token was treated as a security.

6. Simon Dixon, a top 10 Celsius Creditor, explicitly states that the CEL token is NOT a security. You can find the video link here: https://twitter.com/crypto___btc/status/1569590103592546304?s=20

7. Based on the screenshot from the Debtors' own website provided below (Exhibit A), it is evident that 56% of Celsius Creditors currently hold CEL tokens. Subordinating these tokens would have an adverse impact on the majority of creditors.

8. The Debtor describes CEL token on its website as "Meet CEL. Think of it as a rewards program, with actual financial rewards like even higher earning rates and ridiculously low rates on loans." (Exhibit B) Its function is that of a utility token as shown in Exhibit C.

9. Many individuals, including myself, acquired CEL Tokens for non-investment purposes.

10. Celsius Creditors currently hold numerous other tokens, and the Celsius UCC is not seeking to subordinate claims related to those tokens.

11. Despite the Securities and Exchange Commission (SEC) asserting that the VGX token
12. is a security in their lawsuits against Binance and Coinbase, creditors holding VGX tokens from Voyager are not facing subordination.

13. Following the SEC's recent lawsuits against Binance and Coinbase, there are now only a total of 68 named tokens that the SEC officially considers securities, and the CEL token is not among them.

14. The Celsius UCC is failing to fulfill its fiduciary duty to maximize recovery for all creditors. The argument that the value of the CEL Token is predicated on the continued operation of Celsius Network after the Effective Date is false. As an example of why this statement is false, look at Voyager's VGX Token performance on July 30, 2023 (Exhibit D).

15. The acknowledgment and protection of supporters of the CEL Token who oppose subordination and advocate for the rights and interests of CEL Token holders are essential. Stereotyping should not be applied to these individuals as they exercise their right to express their views and protect their stake in the token (Exhibit E).

Therefore, I respectfully request that the court take into consideration the following Actions:

1. Recognize the legal precedent set by the Ripple/XRP case and rule that CEL Tokens are not securities, thereby nullifying the UCC's attempt to subordinate the Token holders in the Disclosure Statement.

2. Invalidate the settlement made by the UCC, as it lacks any basis in fact or law, and schedule a valuation hearing to determine the proper petition date price for CEL Token.

3. Approve the formation of a CEL Token class, with professionals paid for by the Estate, to thoroughly and conclusively resolve the valuation matters, allowing for equal treatment and representation.

I firmly believe that granting the relief sought in these objections will ensure fair and equitable treatment of CEL Token holders, as well as the rest of the creditors, fostering an environment of transparency and justice in this bankruptcy case.

Sincerely,
Sean StJohn
Celsius Creditor



Exhibit A

> Meet CEL. Think of it as a rewards program, with actual financial rewards like even higher earning rates and ridiculously low rates on loans.

Exhibit B

| Reward Status | CEL Ratio | or CEL Balance | Bonus Rewards | Loan Interest Discount |
|---|---|---|---|---|
| NONE | 0%–5% | 0 CEL | 0% | 5% |
| BRONZE | 5%–10% | 1 CEL | 10% | 5% |
| SILVER | 10%–15% | 1,000 CEL | 15% | 10% |
| GOLD | 15%–25% | 10,000 CEL | 20% | 15% |
| PLATINUM | 25%–100% | 25,000 CEL | 30% | 25% |

Exhibit C



Exhibit D



Exhibit E