Cameron Crews
*Pro se creditor*
camcrews@proton.me

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| Celsius Network LLC, et al.,[1] ) | Case No. 22-10964 (MG) |
| ) | |
| Debtors. ) | Jointly Administered |

**(I)    Limited Objection to the Adequacy of the Disclosure Statement with Regards to CEL Token Treatment**

**(II)    Objection to Santos Caceres' Motion to Certify a Class of Creditors for Non-Insider CEL Token Claim Holders (i) Allowing the Retention of Legal Representation Paid by the Estate (ii) Granting Related Relief**

The Plan currently proposes to make distributions to CEL token holders as if each token were worth $0.2. This is improper; CEL has no discernible value now that Celsius is a dead platform that caused billions in losses. CEL's main utility was as <u>a mechanism to defraud investors</u> while enriching insiders. As such, the proper distribution mechanism for victims of the CEL fraud would compensate Creditors based on how many dollars they lost acquiring CEL on the platform, rather than amount of CEL they are left with in their accounts.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The motion requesting certification of a CEL class of Creditors (ECF #3118) should be denied along similar grounds to the Courts ruling (#1166) on the motion for formation of a Preferred Equity Committee (ECF #880). Furthermore, should the movants prevail upon the Court that CEL should not be deemed a security, it would be proper for the Debtors to make CEL token holders whole by paying out their claims in-kind.

**BACKGROUND — CEL Token Is Worthless and its Investors Have Been Defrauded**

1. Any value ascribed to CEL token depended upon Celsius. The company's whitepaper described CEL as its "backbone" and provided incentives for holding the token on their App. But when revealed in Bankruptcy that Celsius was inexcusably missing over $3B owed to stakeholders and therefore was not viable for emergence with the same fraudulent business model, the CEL token no longer had a discernable purpose or value.

2. Even while Celsius was a going concern, employees realized CEL lacked value. The examiner directly quotes employees describing the token as "worthless" and saying its price "should be 0." Furthermore, in minutes from Celsius's December 11, 2020 Risk Committee Meeting, the following words are attributed to former CEO Alex Mashinsky, "Think of CEL as fake money, need to use for competitive advantage."[2] This "fake money" cost his victims lots of real money.

3. The examiner found astonishing manipulation of CEL token. The fraud started during the CEL "initial coin offering," a pre-equity round of financing for Celsius. While publicly proclaiming all 325M CEL had been acquired by investors for $50M, in truth, they had fallen 117M tokens short

---

[2] The quote about CEL being fake money is listed under the heading "Alex" such that they appear to be attributed to him. Pages 5-6 of Risk Committee Minutes from 12/11/20 document CEL-UCC-00042583

and only raised $32M.[3] Due largely to this shortfall in demand for the token relative to circulating supply, the price of CEL quickly sunk from the ICO pre-sale price of $0.2 to $0.05.

4. Starting in mid-2020, Celsius started its campaign to manipulate the price of CEL token, spending $558M to acquire the token in public markets[4]. Celsius traders were focused upon driving the price higher, because investors would confuse the rising price action with confirmation of genuine value. As one Celsius trader put it in a private Slack conversation in Fall of 2020, "prices drive price." In this conversation, the two traders, who would later get promoted to Head of CeFi Trading and Head of Institutional Lending, were conspiring to create "FOMO" to raise the price of CEL.[5] And they succeeded, eventually driving the price to upwards of $6 by the Spring of 2021.

5. In fact, the price of CEL had risen so quickly by January of 2021, disgraced former CEO Alex Mashinsky ordered trader Johannes Treutler to halt CEL purchases because "CEL going up too fast is not good for us." In response, Treutler asked for more time because, if he stopped buying and the price retreated, he might lose sales to OTC CEL buyers he was hoping to defraud. As he put it, "Please let us maintain this for another 24 hours to give me ability to close all OTC deals that are still on the table .. we would lose them if I jus [sic] delete all Liquid buy orders."[6]

6. Notably, Celsius employees were rewarded handsomely for their improper manipulation of CEL, triggering CEL bonuses after the token held $1.5, $3, and $5 price levels. In total, Celsius employees reaped $85.5M at floor trigger prices for these CEL bonuses.[7]

---

[3] Former-CEO Alex Mashinsky pledged to acquire the 117M tokens Celsius had failed to sell at the ICO
[4] As found by the Examiner Report.
[5] From a 9/8/2020 Slack conversation disclosed in the Examiner's footnotes in document CEL-UCC-00195412_R.
[6] Whatsapp conversation dated 1/3/2021 between Alex Mashinsky and Johannes Truetler cited in the examiner's report footnotes in document CEL-UCC-00336290_R
[7] This is covered in detail in the KEIP objection ECF #2411 paragraphs 7-8

7. Employees enriched themselves by cashing out at the expense of retail investors. In April of 2022 a month after starting at Celsius, now-CEO Chris Ferraro was alerted over a Slack conversation that the top 6 employees at Celsius were cashing out $40M of CEL tokens using the same OTC desk that was fobbing off worthless CEL on victims at the manipulated prices.[8]

8. The Court and the Debtors should recognize and address the pain of OTC CEL purchasers, who were on the other side of this fraud. Those who purchased CEL at $5 in 2021 rather than the $0.05 CEL was available for in early 2019 have suffered 100x more. Under rule 9019, the Debtors and aggrieved creditors should seek a better distribution mechanism.

**Compensate CEL Holders Pro-Rata Based Upon Dollars Lost**

9. The disclosure statement proposes offering $0.2 per CEL token to holders on the Celsius platform. This treatment would result in associated Earn claims totaling approximately $39M. From this claim, the proposed Plan would distribute approximately $15M in liquid crypto and $13M in NewCo equity to these claimants. While the amounts are reasonable, the mechanism for distribution is unfair. As established in paragraphs 1-8, CEL token is worthless.

10. To illustrate the inadequacy of the currently proposed Plan treatment, there is no better example than Creditor Otis Davis (Davis), who filed the CEL-related objection under ECF #3084. In this objection, Davis contends that he can "prove" CEL deserves a valuation "far in excess of $2." While proffering such unsubstantiated claims before the Court has added much needed humor to the bankruptcy proceedings, what he declined to acknowledge, is that he accumulated much of his wealth by investing in CEL token early. Davis was congratulated by former CEO Alex Mashinsky during Celsius's August 28, 2020 livestream, "[Otis] is a top 100 guy,

---

[8] From a 4/13/22 Slack conversation between Chris Ferraro and Dean Tappen document CEL-UCC-00083099

one of our best supporters… we added him to the top 1% [by wealth in the United States]… he's one of those guys in the community who believed in it from the beginning."[9]

11. The $0.2 treatment would lock in profits for Creditors like Davis who bought in at pennies, while ignoring the pain of victims who bought in at far higher prices. A proper solution would recognize CEL for what it is; a worthless token that facilitated defrauding Celsius customers.

12. Under an Improved CEL Distribution Proposal (ICDP) to be reached by 9019 Negotiations, the Debtors or their advisors would calculate the Outstanding CEL Cost (OCC) value for all customers. For any user, this would be obtained by summing the aggregate value of all CEL acquisitions (dollar value on the day of deposits/swaps in) less disposals of CEL tokens (dollar value on the day of withdrawals/swaps out/liquidations).

13. For the avoidance of doubt, all CEL-liquidated loans would be eligible for treatment under this calculation. The liquidation event would qualify as a disposal of CEL but they would be eligible for CEL acquisition value to the extent they deposited/swapped in CEL tokens at higher values.

14. As described in Paragraph 9, the same net value to the estate as proposed under the Plan (or an agreeable amount as determined by the UCC) would then be dispensed to CEL Creditors on a pro-rata basis. Each creditor would receive a proportional share of their OCC value relative to the sum of all OCC values.

**CEL Token Class Certification Should be Denied**

15. The request to divert estate resources to fund a CEL class is unnecessary and would further deplete the estate. This request suffers similar deficiencies to the request for a Preferred Equity

---

[9] From Celsius's 8/28/20 AMA livestream where Alex Mashinsky congratulated Otis Davis on his wealth accumulated – apparently from purchasing CEL token. Occurs at timepoint 1:16:48.

Committee; an out-of-the-money interest group looking for a free ride at the expense of the greater Creditor body. The court should deny this request.

**CEL Should be Distributed In-Kind, if Deemed Not a Security**

16. Movants Davis and Caceras are claiming that the XRP decision demonstrates CEL should be determined to not be a security, despite compelling evidence to the contrary. Should the Court rule that CEL is not a security, CEL tokens should be distributed 100% in-kind to creditors with CEL claims. The regulatory uncertainty the Debtors have cited as reason to not distribute CEL in-kind would no longer apply. Satisfying CEL liabilities with CEL assets on its books would be sound business judgement.

17. To preserve equitable treatment for Creditors, should there be those who feel it unfair that CEL token holders would be receiving 100% in-kind on their CEL claims (despite it being worthless), Creditors would be able to request swapping their Celsius balances in other assets at Petition prices (7/13/22) for CEL token at $0.2 (**CEL Swap Election**). CEL movants have claimed the token is worth far more than $0.2, so this would be provide them opportunity to put their words into action by converting their claim into more CEL tokens at bargain prices. Exercise of the CEL Swap Election has the added benefit of freeing up value within the estate to pay out other Creditors, to the extent it is exercised.

18. For the avoidance of doubt, any CEL tokens received through a CEL Swap Election would be ineligible for OCC value calculations and pro-rata distributions to CEL token holders.

Respectfully submitted,

Dated August 3, 2023                                    /s/Cameron Crews  
                                                        Cameron Crews  
                                                        *pro se creditor*