**FOX ROTHSCHILD LLP**
101 Park Avenue, 17th Floor
New York, NY 10178
Telephone: (212) 878-7900
Facsimile: (212) 692-0940
Michael A. Sweet, Esq.
Michael R. Herz, Esq.

*Attorneys for Mawson Entities*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------  x
    In re                                                :
                                                         :   Chapter 11
    CELSIUS NETWORK LLC, et al.,[1]                       :
                                                         :   Case No. 22-10964 (MG)
                              Debtors.                    :
                                                         :   Jointly Administered
-------------------------------------------------------  x
```

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MAWSON
INFRASTRUCTURE GROUP, INC., LUNA SQUARES LLC, AND COSMOS
INFRASTRUCTURE FOR ENTRY OF AN ORDER PURSUANT TO FED.R.CIV.P. 60(b)
GRANTING RELIEF FROM ORDER (I) AUTHORIZING THE DEBTORS TO ISSUE
SUBPOENAS UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND
9016 TO MAWSON INFRASTRUCTURE GROUP IN., LUNA SQUARES, LLC, AND
COSMOS INFRASTRUCTURE LLC AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

JURISDICTION AND VENUE ......................................................................................... 2

BACKGROUND ................................................................................................................. 3

REQUESTED RELIEF ....................................................................................................... 6

ANALYSIS ......................................................................................................................... 7

CONCLUSION ................................................................................................................... 18

RESERVATION OF RIGHTS ......................................................................................... 18

NOTICE ............................................................................................................................ 18

NO PRIOR REQUEST ..................................................................................................... 19

148161959.4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
   293 B.R. 337 (Bankr. S.D.N.Y. 2003) ....................................................................10

*In re Adelphia Communications Corp.*,
   639 B.R. 657 (Bankr. S.D.N.Y. May 27, 2022) ...................................................9, 10

*In re AL and LP Realty Co.*,
   164 B.R. 231 (Bankr. S.D.N.Y. 1994) ...................................................................8, 9

*City of New York v. Mickalis Pawn Shop, L.L.C.*,
   645 F.3d 114 (2d Cir. 2011) ...................................................................................8

*In re Combustion Engineering, Inc.*,
   391 F.3d 190 (3d Cir. 2004) ..................................................................................10

*In re Ditech Holding Corporation*,
   2021 WL 2258291 (Bankr. S.D.N.Y. June 2, 2021) ...............................................8

*In re Enron Creditors Recovery Corp.*,
   2009 WL 3756951 (Bankr. S.D.N.Y. Nov. 6, 2009) ...............................................9

*Grace v. Bank Leumi Trust Co. of NY*,
   443 F.3d 180 (2d Cir. 2006) ...................................................................................8

*International Controls Corp. v. Vesco*,
   556 F.2d 665 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730 (1978) ......................9

*Klapprott v. United States*,
   335 U.S. 601, 69 S.Ct. 384 (1949) ........................................................................10

*In re Krautheimer*,
   210 B.R. 37 (Bankr. S.D.N.Y. 1997) ......................................................................9

*Liljeberg v. Health Services Acquisition Corp.*,
   486 U.S. 847, 108 S.Ct. 2194 (1988) .....................................................................9

*Marrero Pichardo v. Ashcroft*,
   374 F.3d 46 (2d Cir. 2004) .....................................................................................9

*Matarese v. LeFevre*,
   801 F.2d 98 (2d Cir. 1986), *cert denied* 480 U.S. 908, 107 S.Ct. 1353 (1987) ......................10

ii

*Medical Diagnostic Imaging, PLLC v. CareCore Nat., LLC,*
    2008 WL 3833238 (S.D.N.Y. Aug. 15, 2008) ........................................................13

*Nemaizer v. Baker,*
    793 F.2d 58 (2d Cir. 1986)..............................................................................7, 8

*In re Neuman,*
    71 B.R. 567 (S.D.N.Y. 1987)............................................................................10

*No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.,*
    2022 WL 18399477 (E.D.N.Y. Dec. 12, 2022) .....................................................9

*In re PBS Foods, LLC,*
    549 B.R. 586 (Bankr. S.D.N.Y. 2016)..................................................................7

*Quevedo v. Postmaster, United States Postal Service,*
    774 F.Supp. 837 (S.D.N.Y. 1991) .....................................................................10

*In re Sears Holding,*
    2022 WL 16703174 (Bankr. S.D.N.Y. Nov. 3, 2022) ..........................................7, 8

*Seven Elves, Inc. v. Eskenazi,*
    635 F.2d 396 (5th Cir. 1981) .............................................................................8

*In re Teligent, Inc.,*
    306 B.R. 752, 758 (Bankr. S.D.N.Y.).................................................................10

*Texlon Corp. v. Mfrs. Hanover Commercial Corp.,*
    596 F.2d1092 1099 (2d Cir. 1979).......................................................................8

*In re Three Arrows Capital, Ltd.,*
    649 B.R. 143 (Bankr. S.D.N.Y. 2023)..................................................................8

*In re United Steel Enterprises,*
    2006 WL 3544583 (D.N.J. Dec. 8, 2006) ...........................................................10

*United Student Aid Funds, Inc v. Espinosa,*
    599 U.S. 260, 130 S.Ct. 1367 (2010)...................................................................8

*Velez v. Vassallo,*
    203 F.Supp.2d 312, 333 (S.D.N.Y. 2002) ............................................................7

*In re Velez,*
    604 B.R. 438 (Bankr. S.D.N.Y. 2019)..................................................................9

*Williams v. N.Y.C. Dep't of Corr.,*
    219 F.R.D. 78 (S.D.N.Y. 2003) ..........................................................................8

iii

*In re Wills Motors, Inc.*,
    133 B.R. 303 (Bankr. S.D.N.Y. 1991) ................................................................9, 10

*In re Wingspread Corp.*,
    92 B.R. 87 (Bankr. S.D.N.Y. 1988) ........................................................................10

*In re Youk-See*,
    450 B.R. 312 (Bankr. D. Mass. 2011) ....................................................................12

**Statutes**

11 U.S.C. § 105(a) ...............................................................................................1, 2, 10

28 U.S.C. § 157 .............................................................................................................2

28 U.S.C. § 1334 ...........................................................................................................2

28 U.S.C. § 1408 ...........................................................................................................2

28 U.S.C. § 1409 ...........................................................................................................2

**Other Authorities**

Fed. R. Bankr. P. 2004 ........................................................................................ *passim*

Fed. R. Bankr. P. 2004(c) ...........................................................................................15

Fed. R. Bankr. P. 2004(e) ...........................................................................................15

Fed. R. Bankr. P. 6004(a) ...........................................................................................16

Fed. R. Bankr. P. 7026 ..........................................................................................13, 14

Fed. R. Bankr. P. 7033 .................................................................................................14

Fed. R. Bankr. P. 7034 ..........................................................................................13, 14

Fed. R. Bankr. P. 9014 .................................................................................................14

Fed. R. Bankr. P. 9014(c) ............................................................................................14

Fed. R. Bankr. P. 9016 ...................................................................................4, 5, 11, 13

Fed. R. Bankr. P. 9024 ...............................................................................................2, 6

Fed. R. Civ. P. 33 ........................................................................................................14

Fed. R. Civ. P. 34 ........................................................................................................14

148161959.4

Fed. R. Civ. P. 34(b)(2)(A) ................................................................................................14

Fed. R. Civ. P. 45 .....................................................................................................13, 14

Fed. R. Civ. P. 45(b) ..............................................................................................13

Fed. R. Civ. P. 45(c)(2) ..........................................................................................15

Fed. R. Civ. P. 45(d)(1) ..........................................................................................12

Fed. R. Civ. P. 45(d)(2)(B) .....................................................................................15

Fed. R. Civ. P. 45(d)(3) ..........................................................................................12

Fed. R. Civ. P. 60(b) ...................................................................................... *passim*

Fed. R. Civ. P. 60(b)(4) ....................................................................................6, 8, 9

Fed. R. Civ. P. 60(b)(6) ..................................................................................6, 9, 10

Fed. R. Civ. P. 60(c) ..............................................................................................17

LBR S.D.N.Y. 7007-1(a) ....................................................................................16, 17

LBR S.D.N.Y. 7007-1(b) ..........................................................................................17

LBR S.D.N.Y. 9006-1 ..............................................................................................14

148161959.4

Mawson Infrastructure Group, Inc., Luna Squares LLC ("Luna"), and Cosmos Infrastructure (collectively, the "Mawson Entities"), through their attorneys, Fox Rothschild LLP,[2] submit this memorandum of law in support of their motion (the "Motion") for entry of an order pursuant to Federal Rule of Civil Procedure 60(b) and 11 U.S.C. § 105(a), granting the Mawson Entities relief from the Court's *Order (I) Authorizing the Debtors to Issue Subpoenas Under Federal Rules of Bankruptcy Procedure 2004 and 9019 to Mawson Infrastructure Group, Inc., Luna Squares LLC, and Cosmos Infrastructure LLC and (II) Granting Related Relief* (the "Discovery Order") [Docket No. 3091], entered on July 26, 2023, in the form of either (i) vacating the Discovery Order, or (ii) modifying the Discovery Order to require the Debtors to properly issue and serve subpoenas while preserving the Mawson Entities' rights in responding or objecting thereto, and granting such further relief as the Court deems just and proper, and respectfully states:

## INTRODUCTION

1.      The Discovery Order was entered upon an *ex parte* motion (the "Discovery Motion") filed by the above-referenced debtors (the "Debtors") a day earlier [Docket No. 3088]. Notwithstanding that the Discovery Order's caption indicates that it "Authoriz[es] the Debtors to Issue Subpoenas", the Discovery Order actually *orders* the Mawson Entities to produce various discovery consisting of interrogatories and document requests, set forth in Exhibit A to the Discovery Motion,[3] within fourteen (14) days of entry of the order.  Unlike prior Bankruptcy Rule

---

[2] Fox Rothschild LLP is specially appearing on behalf of the Mawson Entities strictly to address the procedural and due process concerns in the Discovery Order (defined below), and this Motion should not be construed as an acknowledgement of the Court's jurisdiction over the Mawson Entities generally or an acknowledgement that Fox Rothschild LLP is authorized to accept service of pleadings or subpoenas on behalf of the Mawson Entities in the Debtors' cases.

[3] The Discovery Order appears to erroneously refer to the discovery requests as attached as "Exhibit B" to the Discovery Motion.  Discovery Order, ¶ 3.

2004 orders entered in the case, and despite its caption and the requested relief in the Discovery Motion, the Discovery Order completely bypassed a subpoena, thereby depriving the Mawson Entities an opportunity to object or seek to quash the discovery requests. Further, other than a proof of claim filed by Luna, the Mawson Entities have not appeared in the Debtors' cases and are entitled to proper service of the Discovery Requests (defined below) and a fair opportunity to respond. As of the date hereof, service of the Discovery Requests has not been effectuated on the Mawson Entities.

2.      Notably, the Debtors sought entry of the Discovery Order, without ever having issued a subpoena (or similar formal discovery) to the Mawson Entities, in an apparent attempt to intimidate and harass the Mawson Entities in connection with the parties' ongoing commercial dispute. The Mawson Entities respectfully submit that the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the interests of due process and fair play justify relief from the Discovery Order under Rule 60(b).

<u>**JURISDICTION AND VENUE**</u>

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicate for the relief requested herein is Federal Rule of Civil Procedure 60(b) ("<u>Rule 60(b)</u>"), made applicable herein by Federal Rule of Bankruptcy Procedure 9024, and section 105(a) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq* (the "<u>Bankruptcy Code</u>").

148161959.4

## BACKGROUND[4]

5.      The Debtors and the Mawson Entities are parties to various agreements, including

a Customer Equipment Co-Location Agreement ("Co-Location Agreement") dated February 23,

2023, between Luna and the Debtor.  Pursuant to the Co-Location Agreement, and following the

expiration of forbearance agreements, the Debtors were obligated to make a payment of

$1,689,387.43 to Luna on July 13, 2023 for operational costs at the facility hosting the Debtors'

cryptocurrency mining equipment, which services Luna did perform.  The operational costs for the

facility are exorbitant.  The monthly electricity bill alone for the Debtor averaged approximately

$39,000 per day in June (equating to approximately $1,170,000 for the month).  The monthly

payments from the Debtors are thus necessary to maintain operations at the facility.  The Debtors,

however, failed to make the July payment, placing great financial pressure on the Mawson Entities

given the high cost of operating the facility.  This default constituted a post-petition breach that

imperiled the Debtors' ability to continue to mine cryptocurrency.

6.      On the same day that the Debtor and Luna entered into the Co-Location Agreement,

Luna also executed a Promissory Note in favor of the Debtor.  The parties entered into lengthy

discussions in the first half of 2023 to improve the security position of the Debtor, and to extend

the August 23, 2023 maturity of the Promissory Note, as well as to assume and extend the Co-

Location Agreement. However, the Debtor did not agree to assume and extend the Co-Location

Agreement or extend the maturity of the Promissory Note (the Co-Location Agreement also has

not been rejected as of the date hereof).  In June 2023, Luna entered into discussions with the

Debtor regarding a forbearance agreement in relation to payments of principal and interest that

---

[4] The facts set forth in the Declarations of Thomas B. Hughes and Michael A. Sweet, Esq., are incorporated herein by
reference.

were due under the Promissory Note.  The intent of the forbearance agreement was to allow time for commercial negotiation of the Co-Location Agreement and the Promissory Note for the mutual benefit of the Debtor and Luna.  However, the Debtors' counsel insisted on imposing extremely onerous conditions on Luna in the forbearance agreement, which were not conducive to a commercial outcome (mutually beneficial or otherwise).  Luna elected to instead pay the outstanding amounts due under the Promissory Note totaling $3,333,667.00 on July 18, 2023, and no amounts are presently due under the Promissory Note.  However, the Debtor is in default of the Co-Location Agreement and continues to owe payments to Luna as of the date hereof.

7.      Prior to the Debtors' failure to pay the July payment under the Co-Location Agreement, the parties engaged in discussions to attempt to resolve various commercial issues between the parties.

8.      The Debtors filed the Discovery Motion on an *ex parte* basis on July 25, 2023.  The Debtors did not propound any formal discovery on the Mawson Entities prior to filing the Discovery Motion.  The Debtors made some informal discovery requests in June 2023.  The Mawson Entities responded to most of these requests, but many of the requests were unclear or inappropriate under the circumstances.  The Debtors mentioned these informal requests in paragraph 16 of the Discovery Motion, and simply noted that "[m]any of these requests remain outstanding" without any context.  Ultimately, the information requested and provided appeared to have little impact, as the commercial discussions in June between the parties were unfruitful.

9.      The caption of the Discovery Motion explicitly requests "an order under Federal Rules of Bankruptcy Procedure 2004 and 9016 for subpoenas for examination" to the Mawson Entities.  Attached as Exhibit A to the Discovery Motion were the *Debtors' Rule 2004 Discovery*

*Requests* that it sought to issue to the Mawson Entities, consisting of several requests for production of documents and (inexplicably) interrogatories (the "Discovery Requests").

10.     Given the timing of the Discovery Motion, it appears that this is part of an ongoing hostile and aggressive campaign by the Debtors to exert undue pressure on the Mawson Entities in the parties' commercial negotiations.  Indeed, approximately two weeks before the Debtors filed the Motion, in the course of negotiations over a forbearance agreement in respect of the Promissory Note, Debtors' counsel sent an email to Mawson's counsel stating: "Your email is a joke and you seem to not appreciate who you are dealing with."  A copy of this email exchange is attached as Exhibit A to the Declaration of Michael A. Sweet, Esq. (the "Sweet Declaration") submitted herewith.

11.     Fewer than twenty-four hours after the Debtors filed the Discovery Motion, on July 26, 2023, the Court entered the Discovery Order.  Like the Discovery Motion, the caption of the Discovery Order authorizes "the Debtors to issue subpoenas under Federal Rules of Bankruptcy Procedure 2004 and 9016" to the Mawson Entities.  Similar language appears in the Discovery Order's introduction.  However, unlike prior orders issued by the Court in the Debtors' cases under Bankruptcy Rule 2004 [*see*, e.g., Docket Numbers 1928, 2626, and 2701], the Discovery Order does not actually authorize the issuance of subpoenas, does not preserve the Mawson Entities' rights in responding to subpoenas (or the Discovery Requests), does not have any direction regarding service of the Discovery Order on the Mawson Entities, and further directs that the Mawson Entities respond to the Discovery Requests within fourteen days.

12.     On July 26, 2023, Debtors' counsel emailed a copy of the Discovery Order to Michael Sweet of Fox Rothschild LLP.  Mr. Sweet responded by advising Debtors' counsel that he was not authorized to accept service of the Discovery Order.  Debtors' counsel responded that

148161959.4

the Mawson Entities were served by Stretto.  However, there is no certificate of service on the docket and as of the date hereof, the Mawson Entities believe that they have not been served with the Discovery Order by the Debtors (mail service of the Discovery Order by itself without the Discovery Requests to one of Luna's operational sites which is neither its principal place of business nor the location of its registered agent for service is not proper service, see footnote 7 *infra*).  A copy of the email exchange between Debtors' counsel and Mr. Sweet is attached as <u>Exhibit B</u> to the Sweet Declaration.

13.     On August 2, 2023, Mr. Sweet wrote to Debtor's counsel questioning whether a subpoena had been issued and advised Debtors' counsel of concerns with service.  Debtors' counsel responded "We will have you in front of Judge Glenn early next week to sort out any confusion if your client doesn't comply."  A copy of the August 2, 2023 email exchange is attached as <u>Exhibit C</u> to the Sweet Declaration.

## **REQUESTED RELIEF**

14.     The Discovery Motion is misleading in framing its request for relief.  By its caption, it sought the issuance of subpoenas, but the Discovery Order bypasses formal discovery and circumvents the Federal Rules of Civil and Bankruptcy Procedure, purporting to eviscerate the Mawson Entities' due process rights.  Notably, the Mawson Entities have been denied an opportunity to respond to the allegations in the Discovery Motion, have not been guaranteed proper service or adequate time to respond to the Discovery Requests, and are ostensibly not able to oppose or seek to quash the Discovery Requests.

15.     Given these concerns, the Mawson Entities respectfully request the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to Federal Rule of Civil Procedure 60(b)(4) ("<u>Rule 60(b)(4)</u>"), or alternatively, pursuant to Federal Rule of Civil Procedure 60(b)(6) ("<u>Rule 60(b)(6)</u>"), made applicable herein by Federal Rule of Bankruptcy Procedure

6

9024, granting relief from the Discovery Order in the form of either vacating or modifying the

Discovery Order, so that the Debtors may seek and notice discovery through proper means, while

preserving the Mawson Entities' rights in responding thereto.

## ANALYSIS

16.    Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order or proceeding for the
> following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovery evidence that, with reasonable diligence, could
>     not have been discovered in time to move for a new trial under
>     Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic),
>     misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is
>     based on an earlier judgment that has been reversed or vacated;
>     or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justified relief.

Fed.R.Civ.P. 60(b).

17.    The determination of "whether to grant a motion for relief from an order or

judgment under Rule 60(b) is within the discretion [of] the court."  *In re PBS Foods, LLC*, 549

B.R. 586, 595 (Bankr. S.D.N.Y. 2016) (*citing Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986));

*see also In re Sears Holding* Corporation, 2022 WL 16703174, at *2 (Bankr. S.D.N.Y. Nov. 3,

2022) (*quoting* Velez *v. Vassallo*, 203 F.Supp.2d 312, 333 (S.D.N.Y. 2002)) ("A motion under

Rule 60(b) is addressed to the sound discretion of the trial court." ).

7

18.    Courts have observed that "properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgment." *In re PBS Foods, LLC*, 549 B.R. at 586 (*citing Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). The assessment requires courts to "balance fairness considerations present in a particular case against the policy favoring the finality of judgment." *In re Sears Holding* Corporation, 2022 WL 16703174, * 2 (*quoting Williams v. N.Y.C. Dep't of Corr.*, 219 F.R.D. 78, 84 (S.D.N.Y. 2003)). Notably, Rule 60(b) "should be broadly construed to do 'substantial justice[.].'" *In re AL and LP Realty Co.*, 164 B.R. 231, 233 (Bankr. S.D.N.Y. 1994) (*quoting Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981)).

19.    The Supreme Court has held that relief under Rule 60(b)(4) is available "where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of the opportunity to be heard." *United Student Aid Funds, Inc v. Espinosa*, 599 U.S. 260, 271, 130 S.Ct. 1367 (2010) (citations omitted). An order or judgment is void under Rule 60(b)(4) "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 193 (2d Cir. 2006) (*quoting Texlon Corp. v. Mfrs. Hanover Commercial Corp.*, 596 F.2d1092 1099 (2d Cir. 1979)); *see also In re Ditech Holding Corporation*, 2021 WL 2258291, at *6 (Bankr. S.D.N.Y. June 2, 2021) (*quoting City of New York v. Mickalis Pawn Shop, L.L.C.*, 645 F.3d 114, 138 (2d Cir. 2011)) ("Rule 60(b)(4) applies when a judgment is void, such as when there is no 'jurisdiction of the subject matter, or of the parties, or if [the Court] acted in a manner inconsistent with due process of law.'"). In this vein, it has been observed that "[s]ince a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it 'preserves judicial economy for

8

the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment.'" *In re Three Arrows Capital, Ltd.*, 649 B.R. 143, 151 (Bankr. S.D.N.Y. 2023) (*quoting No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, 2022 WL 18399477, at *3 (E.D.N.Y. Dec. 12, 2022)).

20.     Alternatively, Rule 60(b)(6) "gives a court broad authority to grant a party relief from a final judgment 'provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).'"[5]  *In re Wills Motors, Inc.*, 133 B.R. 303, 308 (Bankr. S.D.N.Y. 1991) (*quoting Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194 (1988).  The Second Circuit has observed that Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." *In re Adelphia Communications Corp.*, 639 B.R. 657, 663 (Bankr. S.D.N.Y. May 27, 2022) (*quoting Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004)); *see also In re Velez*, 604 B.R. 438, 442 (Bankr. S.D.N.Y. 2019) (*quoting In re Enron Creditors Recovery Corp.*, 2009 WL 3756951, at *3 (Bankr. S.D.N.Y. Nov. 6, 2009)) ("[A] court's discretion is particularly broad under Rule 60(b)(6), which gives the court 'a grand reservoir of equitable power to do justice in a particular case.'"); *In re Krautheimer*, 210 B.R. 37, 43 (Bankr. S.D.N.Y. 1997) (*citing International Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730 (1978)) ("The Second Circuit has called the court's discretion under subsection (6) 'especially broad…'"); *In re AL and LP Realty Co.*, 164 B.R. 231, 234 (Bankr. S.D.N.Y. 1994) ("courts have broad discretion in applying Rule 60(b)(6)[.]").  The rule is

---

[5] Given the unique confluence of circumstances, which require correction in order to further in the interests of due process and fair play, the Mawson Entities request alternative relief under Rule 60(b)(6) in the event the Court determines that relief is not available under Rule 60(b)(4).

"properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship." *In re Adelphia Communications Corp.*, 639 B.R at 663 (*quoting Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986), *cert denied* 480 U.S. 908, 107 S.Ct. 1353 (1987)).

21.    Importantly, "Rule 60(b)(6) provides federal courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *In re Wills Motors, Inc.*, 133 B.R. at 309 (*quoting Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S.Ct. 384 (1949)).  To this end, Rule 60(b)(6) "should be liberally construed when substantial justice will thus be served[.]" *In re Teligent, Inc.*, 306 B.R. 752, 758 (Bankr. S.D.N.Y.) (*quoting Quevedo v. Postmaster, United States Postal Service*, 774 F.Supp. 837, 839 (S.D.N.Y. 1991)).

22.    Additionally, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]."  11 U.S.C. § 105(a).  The Court's powers and jurisdiction are broad when it comes to matters that affect the bankruptcy case.  *See In re Wingspread Corp.*, 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988); *see also In re Adelphia Commc'ns Corp.*, 293 B.R. 337, 352 (Bankr. S.D.N.Y. 2003) (*citing In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987)) ("[T]he basic purpose of [Section 105] is to enable the court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case."); *In re United Steel Enterprises*, 2006 WL 3544583, at *6 (D.N.J. Dec. 8, 2006) (observing section 105(a) to be a broad provision, endowing bankruptcy courts with equitable powers to craft "necessary and appropriate" remedies that further the aims of the Bankruptcy Code).  In this vein, "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

148161959.4

23.    In this matter, the Debtors' Discovery Motion contains numerous defects that have

created an untenable situation.  Foremost, having been filed on an *ex parte* basis, the Discovery

Motion did not afford the Mawson Entities an opportunity to respond to the allegations contained

in the motion or the requested relief.  And, unlike a typical Bankruptcy Rule 2004 application, did

not result in the issuance of an order authorizing issuance of subpoena that could be quashed, or

otherwise be addressed, but instead resulted in the issuance of the Discovery Order.  Notably, the

Discovery Motion contains an incomplete, generalized, and biased recitation of the parties' history

and was not supported by any affidavits, declarations, or other sworn statements.  For instance, in

paragraph 16 of the Discovery Motion, the Debtors state "[o]n June 16, 2023, Celsius sent the

Mawson Entities certain diligence requests to better understand the extent of the financial issues

facing the Mawson Entities.  Many of these requests remain outstanding."  No further details are

provided, nor is there any admissible evidence, or sworn supporting statements.

24.    Further notable defects in the Discovery Motion and resulting Discovery Order that

have created a tenuous situation and overlook the Mawson Entities' rights include:

- Pursuant to the caption of the Discovery Motion, the Debtors explicitly

requested the issuance of "subpoenas" pursuant to Bankruptcy Rules 2004 and 9016.  The

Discovery Order's caption similarly authorizes "the Debtors to issue subpoenas under"

Bankruptcy Rule 2004 and 9016.  The captions are misleading, however, as the body of

the Discovery Order provided to (and entered by) the Court does not direct the issuance of

subpoenas.  Indeed, upon information and belief, no subpoenas have ever been issued by

the Debtors to the Mawson Entities.  Instead, the Debtors have purported to bypass the

formal discovery process altogether and moved straight to what is effectively an *ex parte*

motion to compel expedited production based on unsubstantiated and generalized

allegations without ensuring proper service to the Mawson Entities or giving the Mawson Entities any opportunity to object or respond. By proceeding in this unreasonable and improper way, the Debtors have attempted to deny the Mawson Entities the opportunity (i) to file a motion to quash a properly issued and served subpoena,[6] and (ii) oppose a properly noticed motion to compel compliance with such a subpoena.

- Despite referencing the issuance of subpoenas in its caption and introduction, the Discovery Order deviates from prior orders entered by the Court under Bankruptcy Rule 2004. Instead of immediately compelling discovery, the prior orders, consistent with their captions, authorize the movants (including in at least one instance, the Debtors), to issue subpoenas, while also in some cases explicitly preserving the examinees' right to "make an appropriate motion for a protective order or to quash any Subpoena" and/or providing for a process for the Court to resolve any dispute arising from the subpoenas. *See, e.g.*, orders at Docket Numbers 1928, 2626, 2701. The Mawson Entities' rights have been compromised by the lack of similar protections in the Discovery Order.

- The Discovery Order and the Discovery Requests have not been properly served on the Mawson Entities,[7] and the Mawson Entities have not previously appeared in

---

[6] Federal Rule of Civil Procedure 45(d)(3) provides, in relevant part, that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply …. or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3). Further Federal Rule of Civil Procedure 45(d)(1), provides in relevant part, that ""[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(d)(1). To this end, "the scope of the examination will be limited if the purpose is to abuse or harass." *In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011). Due to the way the Debtors proceeded, the Mawson Entities do not have the opportunity to challenge the discovery requests like they would had the discovery been issued through subpoenas, as the captions to the Discovery Motion and Discovery Order contemplate.

[7] The Mawson Entities understand that a copy of the Discovery Order was mailed by Stretto to "Luna Squares, LLC c/o Michael Sweet, Fox Rothschild LLP" and was sent to 950 Railroad Avenue, Midland, PA which is not the location of Luna's (or any of the Mawson Entities) principal place of business nor its agent for service of process. Rather it is amongst the operational sites for the Mawson Entities. The envelope containing the Discovery Order, but not the

the Debtors' cases other than a proof of claim filed by Luna [Claim no. 17211]. Again, although the captions of the Discovery Motion and Discovery Order seek the issuance of subpoenas, the text of the Discovery Order has the Debtors circumventing the actual discovery process. Due process entitles the Mawson Entities to proper service in accordance with Federal Rule of Civil Procedure 45(b) ("Rule 45"), made applicable by Bankruptcy Rule 9016. Indeed, "[t]he purpose of requiring delivery 'to the named person' is to 'ensure receipt, so that notice will be provided to the recipient, and enforcement of the subpoena will be consistent with the requirements of due process." *Medical Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 2008 WL 3833238, *2 (S.D.N.Y. Aug. 15, 2008). On July 26, 2023, Debtors' counsel emailed a copy of the Discovery Order to Michael Sweet of Fox Rothschild LLP. As noted above, the Mawson Entities' counsel advised Debtors' counsel that it was not authorized to accept service of the Discovery Order. Debtors' counsel responded that the Mawson Entities were served by Stretto. However, there is no certificate of service on the docket and as of the date hereof, the Mawson Entities' have not been properly served with the Discovery Order or the Discovery Requests by the Debtors or Stretto (mail service of the Discovery Order to Luna's operational site is not proper service, see footnote 7, *supra*). The Debtors' misconduct from the outset raises concern that the Debtors might seek to enforce the Discovery Order upon the expiration of the 14-day period set forth in the order without the Mawson Entities receiving due process. Of course, these important due process concerns would be obviated

---

categories and requests of discovery sought, appears to have been left at the security shack in Midland, PA approximately a week after the date on the Discovery Order.

148161959.4

if the Debtors caused subpoenas to be issued and served (as the captions on the Discovery Motion and Discovery Order indicated they would).

- In addition to Bankruptcy Rule 2004, the Discovery Motion cites Bankruptcy Rules 7026 and 7034 as predicates for relief. *See* Discovery Motion, ¶ 3. Bankruptcy Rule 9014 provides that requests for discovery under Bankruptcy Rules 7026 and 7034 apply in contested matters. *See* Fed.R.Civ.P. 9014(c). There is no contested matter here as this matter was first brought to the Court by the Debtors on an *ex parte* basis. Even if the requested discovery was made within the context of a contested matter, Federal Rule of Civil Procedure 34, made applicable herein by Bankruptcy Rule 7034, normally provides a party with 30 days to respond to written discovery requests. Fed.R.Civ.P. 34(b)(2)(A). Although not cited in the Discovery Motion, Federal Rule of Civil Procedure 33, made applicable herein by Bankruptcy Rule 7033, similarly provides a party with 30 days to respond to interrogatories. The Discovery Order significantly shortens the typical timeframe to 14 days. Additionally, Local Bankruptcy Rule 9006-1 requires that "all motion papers under Bankruptcy Rules 7026 through 7037 shall be served at least seven (7) days before the return date." LBR S.D.N.Y. 9006-1. The Debtors, however, moved on an *ex parte* basis with no notice. This shortening and compromised rights of the Mawson Entities are exacerbated by the aforementioned (i) lack of any prior formal discovery; (ii) lack of notice of the Discovery Motion to the Mawson Entities; (iii) inability for the Mawson Entities to file a motion to quash or otherwise contest the Discovery Requests; and (iv) lack of proper service to date on all of the Mawson Entities. Moreover, neither Bankruptcy Rule 2004 nor Rule 45 contemplate the issuance of interrogatories to a third party. This further illustrates the Debtors' complete disregard for the rules.

14

- Pursuant to Rule 45(d)(2)(B), a recipient of a properly issued and served subpoena may serve an objection "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Here, although the Debtors dressed the Discovery Motion up as a request for issuance of subpoenas, there is no opportunity for the Mawson Entities to object because the Debtors bypassed issuance and service of subpoenas. Moreover, even if the Discovery Order could be construed as a subpoena, it has not been served on the Mawson Entities, nor does the Discovery Order provide an opportunity for the Mawson Entities to object or quash.

- Although the Discovery Motion is framed as a request to issue a Bankruptcy Rule 2004 subpoena, the Discovery Order, notwithstanding its caption, effectively compels production of documents and responses to interrogatories (which are not appropriate through subpoena). Absent from the Discovery Motion is any request to compel attendance or production of documents under Bankruptcy Rule 2004(c). Even if such a request were included, Rule 2004(c) specifically references the issuance of a subpoena.

- Pursuant to Bankruptcy Rule 2004(e), "an entity other than a debtor shall not be required to attend as a witness unless lawful mileage and witness fee for one day's attendance shall be first tendered." Fed.R.Bankr.P. 2004(e). Similarly, Rule 45(c)(2) provides that "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person…" Fed.R.Civ.P. 45(c)(2). The Mawson Entities are formed in Delaware with operations in Sharon, PA, beyond the 100-mile limit. All told, the Debtors appear intent on depriving the Mawson Entities' of due process.

15

- The introduction paragraph to the Discovery Order states that the "Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided." The Discovery Motion was filed on an *ex parte* basis, and thus there was no "notice" to the Mawson Entities nor any opportunity for a hearing. Further, because the Discovery Order directs production rather than the issuance of subpoenas without regard for service on the Mawson Entities or the Mawson Entities' rights that would normally attach to properly issued and served subpoenas, the Mawson Entities have not had an opportunity to object to the Discovery Requests.

- The Discovery Order concludes that "Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a)." Discovery Order ¶ 6. Plainly, Rule 6004(a) (governing notices concerning the use, sale or lease of property) is irrelevant to whether or not notice of the *ex parte* Discovery Motion resulting in the issuance of the Discovery Order compelling compliance with the Discovery Motion (rather than authorizing issuance of a subpoena) comports with due process.

- The Debtors' aforementioned emails to Mawson's counsel coupled with the Debtors' disregard of the Mawson Entities' due process rights, reflect the Debtors' intention to utilize the Discovery Order and Discovery Requests as a means to intimidate and harass the Mawson Entities.

- Lastly, the Debtors' Discovery Motion flouts the Local Bankruptcy Rules that require cooperation. In particular, Local Bankruptcy Rule 7007-1(a) states:

> No discovery-related motion under Bankruptcy Rules 7026 through 7037 may be heard unless counsel for the moving party files with the Court, at or prior to the hearing, an affirmation certifying that such counsel has conferred with counsel for the opposing party in a

good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that counsel have been unable to reach an agreement. If any of the issues raised by motion have been resolved by agreement, the affirmation shall specify the issues so resolved and the issues remaining unresolved.

LBR S.D.N.Y. 7007-1(a). Further, Local Bankruptcy Rule 7007-1(b) provides:

No discovery-related motion under Bankruptcy Rules 7026 through 7037 shall be heard unless counsel for the moving party first requests an informal conference with the Court and either the request has been denied or the discovery dispute has not been resolved as a consequence of the conference.

LBR S.D.N.Y. 7007-1(b). If the Debtors' position is that the Discovery Motion was necessary because of a dispute over the informal discovery requests the Debtors sent to the Mawson Entities in June (notwithstanding that no formal discovery was ever issued), then they were obligated to comply with these Local Rules in connection with their Discovery Motion. The Discovery Motion does not contain the affirmation required by Local Bankruptcy Rule 7007-1(a), nor did the Debtors request a conference with the Court pursuant to Local Rule 7007-1(b) prior to seeking this clandestine and misleading relief. Instead, the Debtors presented the Court with a one-sided, incomplete, and unsubstantiated account of the parties' dealings on an *ex parte* basis and used that as a basis to obtain misleading relief from the Court in lieu of adhering to the proper discovery process and the expense of the Mawson Entities' due process rights.

25.    Pursuant to Rule 60(c), "[a] motion under Rule 60(b) must be made within a reasonable time…" Fed.R.Civ.P. 60(c). It is submitted that the timing of the filing of this Motion is reasonable given that it was filed just twelve (12) days after the entry of the Discovery Order and prior to the expiration of the 14-day deadline to respond to the Discovery Requests.

148161959.4

26.     All told, the rules and procedures are in place for a reason.  Without the rules and
process, every party could seek to circumvent another party's rights by obtaining *ex parte* relief as
the Debtors have done here.  It is therefore respectfully requested that the Court vacate the
Discovery Order or schedule a hearing or conference in order to clarify the process and ensure that
the Mawson Entities' are duly protected as required by the Federal Rules of Civil and Bankruptcy
Procedure.

## CONCLUSION

27.     Based on the foregoing and in the interests of due process and justice, it is
respectfully requested that the Court enter an order pursuant to Rule 60(b) granting the Mawson
Entities with relief from the Discovery Order in the form of either (i) vacating the Discovery Order,
or (ii) modifying the Discovery Order to require the Debtors to properly issue and serve subpoenas
while preserving the Mawson Entities' rights in responding or objecting thereto, and granting such
further relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

28.     The Mawson Entities reserve the right to supplement this Motion with any
additional facts that come to light, and further reserve the right to seek to appropriately respond to
any properly served discovery, including to object or seek to quash.

## NOTICE

29.     The Mawson Entities will provide notice of this motion to the following parties or
their respective counsel: (a) the United States Trustee; (b) counsel for the Debtors; (c) counsel for
the Official Committee of Unsecured Creditors; and (d) any other party that has requested notice
pursuant to Bankruptcy Rule 2002.  The Mawson Entities submit that in light of the nature of the
issues and the relief requested, no other or further notice is necessary.

148161959.4

## NO PRIOR REQUEST

30.     No prior request for the relief sought in this Motion has been made before this or

any other court.

Dated:    Morristown, New Jersey        **FOX ROTHSCHILD LLP**
          August 7, 2023        *Attorneys for Mawson Entities*

                    By:    */s/ Michael R. Herz*
                         Michael R. Herz, Esq.
                         Michael A. Sweet, Esq.
                         101 Park Avenue, 17th Floor
                         New York, NY 10178
                         Telephone: (212) 878-7900
                         Facsimile: (212) 692-0940