| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# DECLARATION OF CHRISTOPHER FERRARO, INTERIM CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING OFFICER, AND CHIEF FINANCIAL OFFICER OF THE DEBTORS, IN SUPPORT OF AN ORDER AUTHORIZING AND APPROVING CERTAIN FEES AND EXPENSES FOR THE PLAN SPONSOR

I, Christopher Ferraro, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.  I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius Network LLC ("Celsius," and together with the above-captioned debtors and debtors-in-possession, the "Debtors"). I joined Celsius on March 21, 2022. I was

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

appointed as Chief Financial Officer on July 11, 2022, and I was appointed as interim Chief Executive Officer and Chief Restructuring Officer by the Special Committee of Debtor Celsius Network Limited (the "Special Committee") on September 27, 2022 following the resignation of the Debtors' co-founder and former chief executive officer, Alex Mashinsky.

2. I am familiar with the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 2970] (the "Disclosure Statement Motion")[2] and submit this declaration (this "Declaration") in support of the Debtors' payment of certain fees and expenses to the Plan Sponsor as set forth in the Disclosure Statement Motion.

3. In my capacity as the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and the ongoing restructuring efforts. Except as otherwise indicated, all facts in this Declaration are based upon (a) my personal knowledge of the Debtors' operations, (b) my discussions with other members of the Debtors' management team and advisors, and (c) my review of relevant documents and information concerning the Debtors' operations. I am over the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement Motion, the Plan Sponsor Agreement attached as Exhibit A to the *Notice of Debtors' Entry Into Plan Sponsor Agreement* [Docket No. 2759], the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2902], or the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807], as applicable. .

age of eighteen and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

### Qualifications

4.  I have approximately two decades of experience in financial planning and analysis activities, asset and liability management, and product control. Before my roles with Celsius, I was a Senior Managing Director at Cerberus Operations & Advisory Company ("Cerberus"), where I focused on improving the operating returns for two legacy portfolio positions. In this role, I advised the chief executive officer and leadership team on increasing profitability by changing and repricing business mix, restructuring costs, and optimizing the balance sheet.

5.  Prior to Cerberus, I served in various roles at JPMorgan Chase & Co. from 2001 to 2018. I was the head of Financial Analysis and a Senior Leader, where I was responsible for all financial, planning, and analysis activities, developed analytical tools, and authored a patent application in forecasting. Before my role as head of Financial Analysis and a Senior Leader, I was the Treasurer of the Consumer Bank and the Retail Loan Pricing Manager.

6.  I hold a Bachelor's degree in Economics, Finance, & Accounting from the University of Washington. I also passed the Washington state Uniform Certified Public Accountant Examination.

### The Marketing and Sale Process

7.  From the beginning of the Debtors' chapter 11 cases, the Debtors have diligently worked to identify a value-maximizing transaction for their liquid and illiquid assets. To that end, the Debtors pursued a dual-track process marketing the Debtors' retail platform and mining business while simultaneously evaluating a potential standalone reorganization. Identifying a value-maximizing transaction for the Debtors' assets was particularly challenging in light of the

market-wide "crypto-winter," and the many novel legal issues that required resolution during these Chapter 11 Cases.

8. After an initial marketing process, on March 1, 2023, the Debtors, in consultation with the Committee, executed a plan sponsor agreement with NovaWulf Digital Management, LP ("NovaWulf") [Docket No. 2151] (the "Initial Plan Sponsor Agreement") and designated NovaWulf as the Stalking Horse Bidder. This was an important milestone for the Debtors—the Debtors and the Committee believed that securing NovaWulf as a Stalking Horse would provide the Debtors with leverage to pursue a higher or better offer. Accordingly, the Debtors, in consultation with the Committee, extended the Final Bid Deadline to April 17, 2023.

9. Prior to the Final Bid Deadline, the Debtors received two additional Qualified Bids from Fahrenheit, LLC, a consortium of consisting of US Bitcoin Corp., Arrington Capital, Proof Group Capital Management, Steven Kokinos, and Ravi Kaza ("Fahrenheit" or the "Plan Sponsor"), and the Blockchain Recovery Investment Consortium, which includes Van Eck Absolute Return Advisers Corporation and GXD Labs LLC (the "BRIC").

10. Like the transaction contemplated in NovaWulf's Stalking Horse Bid, Fahrenheit's proposal maintained the "NewCo" transaction structure, including both (a) the distribution of a significant amount of the Debtors' liquid cryptocurrency to account holders and (b) the establishment of "NewCo" that would be owned by Account Holders and would manage the Debtors' illiquid assets, including the mining business, institutional loan portfolio, certain staked cryptocurrency, and other alternative investments. The BRIC proposal, on the other hand, contemplated: (w) the establishment of a pure play, publicly traded mining business in which the Debtors' creditors would receive 100% of the equity interests (with a potential management contract with Global[X]Digital); (x) a distribution of all of the Debtors' liquid cryptocurrency on

4

or as soon as practicable after the effective date of a chapter 11 plan; (y) the timely monetization of the Debtors' remaining assets and subsequent liquid cryptocurrency distributions to Celsius creditors; and (z) an orderly wind down of the Debtors' estates ((w) through (z) collectively, the "BRIC Plan").

11. After reviewing the Qualified Bids, the Debtors, in consultation with the Committee, announced that an Auction would be held on April 25, 2023. The Auction concluded on May 24, 2023, and resulted in the Debtors, in consultation with the Committee, announcing Fahrenheit as the Successful Bidder and the BRIC as the Backup Bidder. The parties then spent the following days and weeks working on memorializing the terms of the winning bid and backup bid.[3] On June 7, 2023, following extensive arms'-length negotiations, the Debtors, the Committee, and Fahrenheit entered into a Plan Sponsor Agreement, which set forth the terms of the transactions contemplated by the Successful Bid and the Plan Term Sheet. That same day, the Debtors also entered into a backup plan sponsor agreement with the Committee, the BRIC, and Gemini Trust Company, LLC [Docket No. 2774] (the "Backup Plan Sponsor Agreement"), which set forth the terms contemplated by the Backup Bid and Backup Plan Administration Agreement Term Sheet.[4]

12. Fahrenheit's winning bid substantially reduced fees by hundreds of millions of dollars compared to the Stalking Horse Bid and also increased the amount of liquid cryptocurrency distributable to account holders by hundreds of millions of dollars. I believe that the Restructuring Transactions contemplated by the Successful Bid and the Plan Sponsor Agreement represent the value-maximizing path forward.

---

[3] On May 25, 2023, the Debtors filed the Notice of Successful Bidder and Backup Bidder [Docket No. 2713].

[4] The parties executed an amended and restated Backup Plan Sponsor Agreement on July 10, 2023, which is attached as *Exhibit A* to the *Notice of Amended and Restated Backup Plan Sponsor Agreement and Deadline to Submit Backup Bids* [Docket No. 2983].

**The Fees and Expenses**

13. In consideration for the substantial time, effort, and resources that Fahrenheit has expended, and will continue to expend, in structuring, negotiating, and executing the Restructuring Transactions, the Debtors agreed, as part of the Plan Sponsor Agreement, to provide the Plan Sponsor and its advisors certain Fees and Expenses. As further detailed below, the Fees and Expenses consist of the payment and/or reimbursement of all reasonable and documented out-of-pocket fees (including success fees, transaction fees, or similar fees) and expenses of the Plan Sponsor and its advisors as part of the Restructuring Transactions, subject to a maximum of $5 million, as set forth in the Plan Sponsor Agreement (collectively, the "Fees and Expenses"). Specifically, the Plan Sponsor Agreement provides the Plan Sponsor with the following Fees and Expenses:

- **Expense Reimbursement**. The Debtors shall request and obtain the Bankruptcy Court's approval of the prompt payment and/or reimbursement of all reasonable and documented out-of-pocket fees (including success fees, transaction fees, or similar fees) and expenses of: (i) the Plan Sponsor; (ii) Brown Rudnick LLP ("**Plan Sponsor Counsel**"); and (iii) any other accountants and other professionals, advisors and consultants retained by the Plan Sponsor with the prior written consent of the Debtors (which shall not be unreasonably withheld) (together with the Plan Sponsor Counsel, the "**Plan Sponsor Advisors**"), in each case, in connection with the Auction, this Agreement, the formulation of the Plan, Disclosure Statement, and Plan Supplement, and the approval and implementation of the Restructuring Transactions (collectively, the "**Fees**") without any requirement of the Plan Sponsor or Plan Sponsor Advisors to (a) file retention or fee applications, (b) provide notice to any person other than the Debtors and the Committee, or (c) provide itemized time detail to the Debtors or any other Person; *provided* that the Plan Sponsor or Plan Sponsor Advisor, as applicable, will provide additional detail as reasonably requested by the Debtors and the Committee; *provided*, *further*, that the aggregate amount of Fees to be paid under this Section 13 shall not exceed $5,000,000 in the aggregate. The Debtors' payment of the Fees shall be approved pursuant to the Disclosure Statement Order. Following approval by the Bankruptcy Court of the Debtors paying up to $5,000,000 of Fees in the aggregate, and the receipt of an invoice that includes a description of the services provided by the Debtors and the Committee and the expiration of a seven (7) day period, the Debtors shall promptly reimburse

the Fees on no more frequent than a monthly basis for so long as this Agreement has not been terminated. To the extent not previously paid, the Fees shall be payable by the Debtors as administrative expenses promptly upon the written request of the applicable Plan Sponsor Advisor (with accompanying invoice and description of the services provided and the expiration of a seven (7) day period) following the termination of this Agreement (x) by the Debtors pursuant to Sections 12.02(b), 12.02(c), 12.02(d), or 12.02(f) or (y) by the Plan Sponsor pursuant to Section 12.01; *provided* that the Fees shall not be payable in the event the Plan and Disclosure Statement are not filed by the Milestone set forth in Section 4(c), but only if the failure to file the Plan and Disclosure Statement is solely the result of the Plan Sponsor's action or inaction. To the extent that this Agreement is terminated pursuant to Sections 12.02(a) or 12.02(e), then any Fees paid by the Debtors pursuant to this Section 13 shall be promptly returned to, and/or clawed back by, the Debtors. The Committee shall support the Debtor's request for approval of the payment of the Fees set forth herein.

14. I understand that the Fees and Expenses, which are subject to a $5 million aggregate cap, will not be payable to the extent the Plan Sponsor (a) breaches any representations, warranties, or commitments as required under the Plan Sponsor Agreement, or (b) fails to satisfy any of the conditions precedent under the terms of the Plan Sponsor Agreement. The maximum amount of $5 million is also the same amount the Debtors would have been obligated to seek to reimburse under the Stalking Horse Bid, which the Court deferred approval of until after the approval of the Disclosure Statement.

15. I believe that paying the Fees and Expenses is in the best interests of the Debtors and their estates and is reasonable and appropriate under the circumstances. The Plan Sponsor and its advisors have spent hundreds of hours over the past four months and incurred considerable fees and expenses developing the Plan and negotiating the terms of the Restructuring Transaction with the Debtors and the Committee. In light of the Plan Sponsor's substantial effort and the considerable time and resources that the Plan Sponsor has expended and will continue to expend in negotiating and drafting the definitive documentation with respect to the Restructuring Transactions, I believe that paying the Fees and Expenses is necessary to incentivize the Plan

Sponsor's continued efforts and compensate the Plan Sponsor for the risk that the Restructuring Transactions are not consummated.

16. I understand that the Fees and Expenses were a material inducement for, and a condition of, Fahrenheit entering into the Plan Sponsor Agreement. The Fees and Expenses are integral to the Plan Sponsor Agreement and the product of hard-fought, good-faith, and arms'-length negotiations between the Debtors, the Committee, and Fahrenheit, and each party's respective advisors. Moreover, the Plan Sponsor Agreement is the product of an exhaustive and competitive process. Absent the payment and/or reimbursement of the Fees and Expenses as set forth in the Plan Sponsor Agreement, I do not believe that Fahrenheit would have entered into the Plan Sponsor Agreement. Moreover, I believe that failure to approve the Fees and Expenses would undermine the progress made to date and hinder the Debtors' ability to advance the NewCo Transactions.

17. Furthermore, I believe that the Fees and Expenses are reasonable and appropriate in light of the complexity of the Restructuring Transactions and the substantial benefits that have inured, and will continue to inure, to the Debtors and their stakeholders. I further believe that the Fees and Expenses represent the reasonable and necessary amounts incurred by the Plan Sponsor to address the complex challenges raised by the Restructuring Transactions and progress the establishment of NewCo, and thereby directly benefit the Debtors' estates. Even in the event the Debtors pivot form the NewCo Transaction and pursue an alternative transactions (including, an Orderly Wind Down), I believe that the Fees and Expenses would still provide substantial benefits to the Debtors' estates because an alternative transaction would capture the value of the investments and progress made in establishing and structuring NewCo, such as actions taken by the Plan Sponsor to stabilize and improve the Debtors' mining operations. Accordingly, I believe

that paying the Fees and Expenses is in the best interest of the Debtors' estates, is a sound exercise of the Debtors' reasonable business judgment, and should therefore be approved.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 8, 2023

/s/ Christopher Ferraro
Name:  Christopher Ferraro
Title:   Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network LLC