**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
            sam.hershey@whitecase.com
            jweedman@whitecase.com


– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: mandolina@whitecase.com
            gregory.pesce@whitecase.com


– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF COMMITTEE SUPPORT LETTER

**PLEASE TAKE NOTICE** that on July 6, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Debtors' Motion for Entry Of an Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

22-10964-mg    Doc 3241    Filed 08/09/23    Entered 08/09/23 17:25:47    Main Document
                            Pg 2 of 10

*Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 2970] (the "**Disclosure Statement Motion**").  The Disclosure Statement Motion seeks the approval of, among other things, solicitation materials that will be used to solicit votes to accept or reject the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3116] (as it may be amended, modified, or supplemented, the "**Plan**").

      **PLEASE TAKE FURTHER NOTICE THAT** that the Official Committee of Unsecured Creditors (the "**Committee**") hereby files the *Letter of the Official Committee of Unsecured Creditors to Account Holders and General Unsecured Creditors of Celsius Network LLC, et al., in Support of the Debtors' Joint Chapter 11 Plan of Reorganization*, attached hereto as **Exhibit A,** which shall be included in the solicitation materials for the Plan.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Disclosure Statement Motion, Plan, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated:    August 9, 2023                      Respectfully submitted,
          New York, New York

                                              /s/ Aaron Colodny
                                              **WHITE & CASE LLP**
                                              David M. Turetsky
                                              Samuel P. Hershey
                                              Joshua D. Weedman
                                              1221 Avenue of the Americas
                                              New York, New York 10020
                                              Telephone: (212) 819-8200
                                              Facsimile:  (212) 354-8113
                                              Email: david.turetsky@whitecase.com
                                                        sam.hershey@whitecase.com
                                                        jweedman@whitecase.com

                                              – and –

                                              **WHITE & CASE LLP**
                                              Michael C. Andolina (admitted *pro hac vice*)
                                              Gregory F. Pesce (admitted *pro hac vice*)
                                              111 South Wacker Drive, Suite 5100
                                              Chicago, Illinois 60606
                                              Telephone: (312) 881-5400
                                              Facsimile:  (312) 881-5450
                                              Email:  mandolina@whitecase.com
                                                        gregory.pesce@whitecase.com

                                              – and –

                                              **WHITE & CASE LLP**
                                              Keith H. Wofford
                                              Southeast Financial Center
                                              200 South Biscayne Blvd., Suite 4900
                                              Miami, Florida 33131
                                              Telephone: (305) 371-2700
                                              Facsimile:  (305) 358-5744
                                              Email: kwofford@whitecase.com

                                              – and –

                                              **WHITE & CASE LLP**
                                              Aaron E. Colodny (admitted *pro hac vice*)
                                              555 South Flower Street, Suite 2700
                                              Los Angeles, California 90071
                                              Telephone: (213) 620-7700
                                              Facsimile:  (213) 452-2329
                                              Email:  aaron.colodny@whitecase.com

                                              *Counsel for the Official Committee of*
                                              *Unsecured Creditors*

## **Exhibit A**

**Committee Support Letter**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**of Celsius Network LLC, *et al*.**

Case No. 22-10964 (MG)
In the United States Bankruptcy Court
for the Southern District of New York

To:    Account Holders and General Unsecured Creditors of Celsius Network LLC, *et al*.

## I.    Introduction

The Official Committee of Unsecured Creditors (the "**Committee**") was appointed by the Office of the United States Trustee to represent the interests of all account holders and general unsecured creditors in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of Celsius Network LLC and its affiliated debtors (collectively, the "**Debtors**").  The Committee is comprised of seven individuals who transferred cryptocurrency to the Debtors to participate in the Earn, Borrow, and Custody programs.[1]  Each Committee member has devoted substantial time to these Chapter 11 Cases with the goal of maximizing the value of the Debtors' estates and fairly distributing that value among all account holders and other creditors.

This letter concerns the Debtors' plan of reorganization (the "**Plan**"),[2] which reflects substantial input from the Committee.  The Plan proposes to distribute Bitcoin, Ethereum, and shares in a new cryptocurrency company to creditors of the Debtors.  It also reserves claims and causes of action that the Debtors have against Alex Mashinsky, other prepetition officers and other employees of the Debtors, and certain third parties, to be pursued by a fiduciary with the proceeds also to be distributed to creditors.

If you are entitled to vote on the Plan, you will receive a ballot along with this letter, which will contain detailed instructions for how to complete and submit your vote.  The deadline to vote on the Plan is **September [18], 2023**.  The hearing to confirm the Plan is currently scheduled to begin on **October [2], 2023**.  If the Plan is confirmed on the currently proposed schedule, the Committee anticipates that distributions to creditors will commence before the end of 2023.

**The Committee recommends that all account holders and general unsecured creditors:**

- **Vote to ACCEPT the Plan (Item 9 on your Account Holder Ballot),**

- **Do NOT opt out of the settlement of the Committee's class proof of claim asserting fraud, misrepresentation, and other statutory causes of action against the Debtors (Item 8 on your Account Holder Ballot), and**

- **Contribute any personal claims or causes of action on account of the Debtors to be prosecuted by the Litigation Administrator for the benefit of all creditors (Item 11 on your Account Holder Ballot).**

---

[1]    The members of the Committee are: (1) Thomas DiFiore, (2) Scott Duffy on behalf of ICB Solutions, (3) Caroline Warren, (4) Christopher Coco, (5) Andrew Yoon, (6) Mark Robison, and (7) Keith Noyes.

[2]    Where context requires capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

## II.        Why You Should Vote to Accept the Plan

Since the Committee was appointed, it has worked to stabilize the Debtors' operations, determine the relative rights of key constituencies to the Debtors' assets (including account holders with balances in Earn, Custody, and Withhold accounts and loans from the Borrow program), and develop a plan to maximize the value of the Debtors' assets and fairly distribute those assets to the Debtors' creditors according to their legal entitlements.

The Plan is the culmination of those efforts.  It would distribute the value of the Debtors' estates primarily between Earn and Borrow account holders and return assets to Custody account holders based on settlements reached with each group, including a settlement between Earn and Borrow account holders that was reached after a three-day mediation overseen by the Honorable Michael Wiles, a United States Bankruptcy Judge for the Southern District of New York, which is described in greater detail below.

Under the Plan, the Debtors will distribute approximately $2 billion worth of Bitcoin and Ethereum to creditors.  The Debtors will also distribute equity in a new company ("**NewCo**") to creditors.  NewCo will operate and further build out the Debtors' Bitcoin mining operations, stake Ethereum, monetize the Debtors' other illiquid assets, and develop new, value-accretive, regulatory-compliant business opportunities.  NewCo will be managed by operators with proven track records building cryptocurrency companies—including Steven Kokinos, US Bitcoin Corporation, Arrington Capital, Proof Group Capital Management, and Ravi Kaza (together, the "**Fahrenheit Group**").  The Committee extensively vetted the Fahrenheit Group through a competitive auction process and believes that they are well-equipped to deliver value to creditors.  NewCo will emerge from chapter 11 with no funded debt and will be regulatorily compliant.  It will be the first publicly-listed company with significant balance sheet exposure to both Bitcoin and Ethereum.  It will be well-capitalized to seize on new opportunities, with an experienced management team focused on prudent risk management to protect NewCo and its shareholders from changes in market conditions.

The Fahrenheit Group intends to list the common stock of NewCo on NASDAQ on or shortly after the occurrence of the Effective Date.  The Committee believes that listing on NASDAQ will provide creditors who wish to sell their shares in NewCo with the ability to do so at the best possible price.  Those that do not wish to sell and would rather enjoy the benefits of owning a unique cryptocurrency company will have the opportunity to benefit from that potential upside in a highly liquid market.

Since the beginning of these Chapter 11 Cases, the cryptocurrency industry has changed significantly, including due to the bankruptcy of FTX and other cryptocurrency companies, the successful implementation of Ethereum's Shanghai upgrade, and certain litigation filed against several large cryptocurrency companies.  The Committee has witnessed firsthand as these changes have affected the chapter 11 cases of, among others, Voyager Digital Holdings, Inc and its affiliate debtors.  To address that potential risk, the Plan includes a backup option where the Debtors and the Committee may toggle to an orderly wind down if they determine that such a switch is in the best interests of the Debtors' estates due to complications or delays in implementing the NewCo transaction.  The orderly wind down currently contemplates providing recoveries to creditors in three ways: (1) creating a standalone Bitcoin mining company and distributing the equity of that business to creditors; (2) distributing available liquid cryptocurrency; and (3) creating a trust vehicle to monetize the Debtors' remaining illiquid assets and distribute the proceeds of such assets to creditors over time.  The Debtors estimate that the value distributed to creditors in an orderly wind down will be materially less than under the NewCo transaction, even though there may be a higher initial liquid cryptocurrency distribution.  The costs and delays of transitioning to an orderly wind down add risk, and the mining company equity distributed in a wind down lacks the potential upside of NewCo equity due to, among other things, (1) uncertainty over how the resulting mining company will be managed, (2) a significantly more limited capitalization compared to NewCo, (3) no exposure to

Ethereum or a staking business, and (4) none of the strategic arrangements offered by the Fahrenheit Group (which arrangements offer cost certainty, strategic partnerships, and best-in-class operating capabilities). Additionally, unlike the NewCo transaction, which allows creditors to monetize the value of their interest in the Debtors' illiquid assets as soon as possible through a sale of the equity in NewCo, the Debtors expect that the orderly wind down will take up to five years to monetize and distribute the Debtors' illiquid assets.

*Importantly, a vote to accept the Plan is a vote to accept both the NewCo transaction and the orderly wind down. You may not vote to accept only one of the restructuring alternatives under the Plan and not the other. And a vote to reject is not a vote in favor of the orderly wind down, but rather a vote against both Plan options.*

If the Plan is confirmed and the NewCo transaction is consummated, the Committee believes that account holders and general unsecured creditors will receive greater recoveries than under either an orderly wind down or a liquidation under chapter 7 of the Bankruptcy Code. The estimated recoveries to all account holders and general unsecured creditors under the Plan's various options are set forth in the following table:

| | | Recovery Under Plan | | |
|---|---|---|---|---|
| Claim Type | Class | NewCo | Orderly Wind Down | Liquidation Analysis |
| Retail Borrower Deposit Claims | Class 2 | 85.6% | 83.0% | 47.4% |
| Convenience Claims | Class 4 | 70.0% | 70.0% | N/A |
| General Earn Claims | Class 5 | 67.0% | 61.2% | 47.4% |
| Withheld Claims | Class 7 | 72.0% | 67.1% | 47.4% |
| Unsecured Loan Claims | Class 8 | 67.0% | 61.2% | 47.4% |
| General Unsecured Claims | Class 9 | 67.0% | 61.2% | 37.5% |

Those estimated recoveries do not account for two additional sources of value that may be available under the NewCo transaction: (1) any increase in the equity value of NewCo represented in the value of NewCo common stock, and (2) recoveries on account of litigation claims that will be pursued by a fiduciary for the benefit of account holders and other unsecured creditors. As a result of these additional sources of value, it is possible that account holders and general unsecured creditors may recover more on their claims over time.

The Plan also provides eligible account holders *that vote to accept the Plan* with the choice to elect to receive more liquid cryptocurrency and less NewCo equity, or vice versa. Those electing to receive more liquid cryptocurrency will forgo all or a portion of their NewCo equity distribution at a 30% discount to the liquid cryptocurrency they are receiving. That means that if you elect to receive liquid cryptocurrency, you could receive 30% less value on that portion of your recovery than if you had kept your allotment of NewCo equity. On the other hand, those electing to receive more NewCo equity will receive that equity at a 30% premium to the liquid cryptocurrency amount that is being forfeited. That means that if you elect to receive more NewCo equity, you could receive 30% more value on that portion of your recovery than if you had kept your allotment of liquid cryptocurrency. This trade is referred to in the Plan as the "Unsecured Claim Distribution Mix Election" and will only be satisfied to the extent other creditors elect to alter their distributions.

The Debtors filed for chapter 11 protection over a year ago. Their business was in complete disarray and mired with allegations of misconduct. The Plan is the product of a significant amount of hard work to reorganize the business under difficult circumstances. It benefits from a competitive auction process that resulted in the selection of Fahrenheit to manage the new business. It presents the quickest way to return the maximum value of cryptocurrency and equity to creditors. And the quicker those assets are distributed to creditors, the sooner they can benefit from any future appreciation. The alternatives to

3

the Plan are uncertain and would likely result in lower recoveries for creditors with those recoveries being distributed much later than contemplated under the Plan.

The Committee believes that the Plan, and specifically the NewCo transaction, provides the highest and best value for account holders and general unsecured creditors when compared to all other available alternatives and encourage you to vote to accept the Plan. The remainder of this letter addresses two key settlements reached by the Committee and the potential to contribute individual claims to the Litigation Administrator to be appointed under the Plan.

## III.    The Settlement of the Committee's Class Action Claim

Celsius promised Earn account holders that they could withdraw an in-kind amount of cryptocurrency equal to their account balance at any time. Likewise, Celsius promised customers that took loans from the Borrow program that it would return the cryptocurrency associated with those loans to their Celsius account within 10 days of full repayment. Account holders are not receiving what Celsius promised. But that was not the only promise that Celsius broke. As the independent Examiner found, "the business model that Celsius advertised and sold to its customers was not the business that Celsius actually operated."[3] Celsius' prepetition management lied to all customers. The Committee sought and received authority from the Bankruptcy Court to file a class action claim on behalf of all account holders, asserting claims of fraud, misrepresentation, and violation of various consumer protection statutes against each Debtor entity.

As of the date of this letter, creditors have filed more than 30,000 claims totaling over $78 billion against the Debtors. Many of those claims seek damages for fraud, misrepresentation, and other causes of action that are similar to the claims brought by the Committee on behalf of all account holders in its class claim. Unless those claims are resolved prior to the Effective Date, the Debtors will be required to hold back a significant amount of cryptocurrency and stock that otherwise could have been distributed on the Effective Date to account for creditors holding disputed claims that may be determined to be valid. The resolution of the over 30,000 claims would be expensive and time-consuming, resulting in less value being returned to creditors over a longer time. Moreover, those creditors that can afford to wait and pay attorneys to establish their claims may receive a higher recovery than those creditors who cannot.

To ensure the fair and equitable treatment of all account holders and that those account holders receive as much value as possible on the Effective Date of the Plan, the Committee has agreed to settle its class claim with the Debtors in exchange for a 5% increase to the scheduled amount of all Account Holder Claims (other than Custody Claims). Any account holder can opt out of the settlement and elect to pursue their own claim against the Debtors by electing to opt out in Item 8 of their ballot. An account holder that opts out of the settlement (1) will not receive the 5% increase to their scheduled claim amount, (2) will have to prove their claim and damages on account of that claim, and (3) will not receive a distribution from the Debtors until their disputed claim is resolved. ***Any account holder who does not timely opt out of the settlement will not have any right to pursue any filed Proof of Claim against the Debtors, which will be expunged by the settlement.***

An Election Form to opt out of the settlement is included in this Solicitation Package. **The Committee urges account holders to NOT opt out of the settlement.**

## IV.    The Treatment of Earn and Borrow Claims

Following the completion of the auction where the Fahrenheit Group was selected to sponsor the Plan, the Committee proposed a mediation before the Honorable Michael Wiles regarding the relative

---

[3]    *See Final Report of Shoba Pillay, Examiner* [Docket No. 1956] at 3.

treatment of the classes of Borrow and Earn creditors. That mediation occurred between July 17 and 19, 2023, and was attended by representatives of the Debtors, the Committee, the Ad Hoc Group of Borrowers, the Ad Hoc Group of Earn Account Holders, Ignat Tuganov (a proposed class claimant), and certain *pro se* creditors. The mediation was a success and all parties agreed to a settlement of all existing disputes with respect to the relative entitlements of creditors with Earn and Borrow accounts. Under that settlement:

(1) All holders of Account Holder Claims (other than Custody Claims) that do not opt out of the settlement of the Committee's class action claim will receive a 5% increase to their scheduled claim. This increase will result in a proportionally larger "unsecured" claim for Retail Deposit Claims as compared to Earn creditors, as it is applied to the total Retail Deposit Claim amount and the principal amount of the loan owed by that creditor is fixed.

(2) Borrowers are provided with the option to pay back all or a portion of their loan and receive an equal amount of either Bitcoin or Ethereum, at their choice. That option could provide tax benefits to electing Borrowers on that portion of their Retail Borrower Deposit Claim. To be clear, *no Borrower is required to pay back their loan under the Plan*. To the extent a Borrower does not pay back their loan, the amount of that loan will be deducted from their Retail Borrow Deposit Claim amount (sometimes referred to as "set off").

(3) Those Holders of Retail Borrow Deposit Claims who elect to receive more liquid cryptocurrency will have priority to have that election satisfied versus General Earn Creditors.

(4) The Debtors will waive any obligation to pay any amount on account of interest owed on account of the loan for the duration of the Chapter 11 Cases.

(5) The Ad Hoc Group of Borrowers and the Ad Hoc Group of Earn Account Holders will each appoint one representative to the Litigation Oversight Committee, subject to the consent of the Committee.

The settlement was the product of extensive good faith negotiations between the parties, is fully supported by the Committee, the steering committee of the Ad Hoc Group of Borrowers, and the Ad Hoc Group of Earn Creditors, and fairly resolves all disputes with respect to the relative entitlements of Earn and Borrow account holders.

## V.    Why You Should Opt-In to Contributing Direct Claims

If the Plan is confirmed, all litigation claims that the Debtors hold against third parties for damages that are not otherwise released under the Plan will be transferred to entities that the Plan refers to as the "Post-Effective Date Debtors" and will be prosecuted and resolved by a Litigation Administrator. These claims include those against Alex Mashinsky and other individuals in the Debtors' prepetition management team that were asserted in the Committee's draft complaint. That draft complaint can be accessed at the following hyperlink. The Committee, not the Debtors, will select the individual that will serve as the Litigation Administrator. In addition, the Litigation Administrator will be supervised by a Litigation Oversight Committee composed of five to seven account holders of the Debtors, including a representative appointed by each of the Ad Hoc Group of Earn Account Holders and the Ad Hoc Group of Borrowers. Recoveries on the Debtors' litigation claims will be distributed to creditors entitled to receive litigation proceeds under the Plan, including all Account Holder Claims (other than Custody Claims).

In addition to the Debtors' litigation claims, account holders and other creditors may personally hold litigation claims against non-Debtor third parties for losses related to the Debtors. If the Plan is

confirmed, creditors will still be able to pursue those claims. But, it will likely be difficult, time-consuming, and expensive for individual creditors to sue third parties for damages. There may also be advantages for the Litigation Administrator to bring a claim on behalf of a creditor, as opposed to the Debtors. Accordingly, the Plan includes a mechanism that allows creditors to contribute any direct litigation claims they own to the Post-Effective Date Debtors. Those claims can then be prosecuted and resolved by the Litigation Administrator, in its discretion. The contribution of those claims will allow the Litigation Administrator to pursue claims against third parties in a coordinated process that may obtain higher damages than if the same claims were brought in individual actions.

If you contribute your litigation claims, you are giving the Litigation Administrator the right to pursue those litigation claims on your behalf. To be clear, if the Litigation Administrator prevails on the litigation claims that you contribute, the recoveries on those claims will be distributed among **all** creditors entitled to receive litigation proceeds, **and will not be distributed solely to you**. However, your recoveries from the Litigation Administrator may be higher than if you pursued litigation individually, including because of the high costs associated with pursuing individual litigation.

Accordingly, the Committee **encourages** you to contribute any direct claims you have against third parties related to the Debtors for prosecution by the Litigation Administrator. If you are entitled to vote on the Plan, your ballot will include a section permitting you to opt-in to contribute these litigation claims.

*** 

Before casting your vote, the Committee recommends that you read the enclosed Disclosure Statement to understand in greater detail how your claims against the Debtors will be treated under the Plan. You should review the Disclosure Statement's Executive Summary closely, which provides a comprehensive overview of the Plan and expected recoveries for creditors. The Disclosure Statement also contains answers to commonly asked questions that may be helpful to understand the Plan.

The Committee believes that the Plan, compared to all other alternatives, provides the highest and best value for account holders and general unsecured creditors. The Plan incorporates the best restructuring transactions available to the Debtors at this time, distributes as much value from the Debtors' assets to creditors as is reasonably possible, and will provide recoveries to creditors far faster than any other alternative.

**Accordingly, the Committee supports confirmation of the Plan and strongly encourages you to VOTE TO ACCEPT THE PLAN pursuant to the instructions on your ballot**.

Sincerely,

*The Official Committee of Unsecured Creditors*

Scott Duffy, Thomas DiFiore, Carolyn Warren, Andrew Yoon, Keith Noyes, Christopher Coco, and Mark Robinson