

**Fox Rothschild LLP**
ATTORNEYS AT LAW

49 Market Street
Morristown, NJ 07960
Tel 973.326.7100  Fax 973.326.7101
www.foxrothschild.com

MICHAEL R. HERZ
Direct No: 973.548-3330
Email: mherz@foxrothschild.com

August 11, 2023

<u>*Via ECF and E-Mail*</u>
Hon. Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, NY 10004-1408

Re:    *In re Celsius Network LLC*, No. 22-10964 (MG) – Response to Debtors' Request for a Status Conference Regarding 2004 Order and 60(b)Motion[1]

Dear Chief Judge Glenn:

On behalf of the Mawson Entities, I write in response to the letter from Debtors' counsel of even date requesting a status conference for August 14, 2024 with regard to the 2004 Order and the Mawson Entities' pending 60(b) Motion.

The Mawson Entities do not believe that a status conference is necessary and that the pending Rule 60(b) Motion scheduled for hearing on September 7, 2023 speaks for itself. Further, the Mawson Entities object to the Debtors' characterization of the situation, which is a continuation of the Debtors' attempts to intimidate and harass the Mawson Entities in connection with a commercial dispute. As set forth in great detail in the 60(b) Motion, the 2004 Motion requested misleading and inappropriate relief on an *ex parte* basis, thereby circumventing the Mawson Entities' rights. The 2004 Motion requested the issuance of subpoenas under Bankruptcy Rule 2004. The resulting 2004 Order is similarly styled as an order authorizing the issuance of Bankruptcy Rule 2004 subpoenas. However, the 2004 Order actually purports to compel the production of documents and responses to interrogatories pursuant to Federal Rules of Civil Procedure 26, 33, and 34. In effect, the 2004 Motion was a motion to compel discovery filed on an *ex parte* basis without providing the Mawson Entities with an opportunity to respond to the motion or to object to the discovery requests. Moreover, since the 2004 Order did not actually direct the issuance of a subpoena (nor did the Debtors actually issue a subpoena), the Mawson Entities were deprived of an opportunity to seek to quash a subpoena. Of further note, the Debtors

---

[1] Capitalized terms not otherwise defined shall have the same meaning set forth in Debtors' counsel's letter.

148333254.1

A Pennsylvania Limited Liability Partnership

California    Colorado    Delaware    District of Columbia    Florida    Georgia    Illinois    Massachusetts    Minnesota    Missouri
Nevada    New Jersey    New York    North Carolina    Oklahoma    Pennsylvania    South Carolina    Texas    Washington



filed the 2004 Motion despite never having previously issued or requested Court permission to issue formal discovery to the Mawson Entities. The discovery requests, which are in the form of document requests and interrogatories under the Federal Rules of Civil Procedure were also inappropriate given that there was no contested matter pending between the parties, and interrogatories in particular, are not contemplated as part of the Bankruptcy Rule 2004 or Rule 45 subpoena process. Additionally, as noted in the 60(b) Motion, the 2004 Order was not properly served on the Mawson Entities.[2]

The Mawson Entities also take issue with the Debtors' characterization that they have bypassed discussions with the Debtors. The emails attached as Exhibits A, B, and C to the 60(b) Motion directly contradict this assertion. In particular, the emails attached to Exhibit A and C reflect that attempts by the Mawson Entities' counsel to discuss issues with the Debtors' counsel were repeatedly met with hostility and threats from Debtors' counsel. Notably, the Debtors' have entirely disregarded due process and fair play by (i) filing the misleading 2004 Motion on an *ex parte* basis without having issued any prior formal discovery to the Mawson Entities, or attempting to meet and confer or requesting a conference with the Court as required by LBR S.D.N.Y. 7007-1(a) and (b); (ii) inappropriately seeking discovery under the Federal Rules of Civil Procedure, and doing so without affording the Mawson Entities an opportunity to respond or object; and (iii) not properly serving the Mawson Entities with the 2004 Order. All told, the Mawson Entities' rights were compromised through the Debtors' total disregard of the Federal Rules of Bankruptcy and Civil Procedure.

The Debtors appear to have finally recognized the deficiencies in how they have proceeded as on August 10, 2023, they did transmit an actual subpoena to the Mawson Entities' process server, attaching the aforementioned document requests and interrogatories, and requesting responses by August 24, 2023.[3] The Mawson Entities are reviewing the subpoena and reserve all rights to object to or seek to quash the subpoena as being overbroad, improper, and intended to intimidate and harass.

Importantly, as noted in the 60(b) Motion, the Debtors are in default under the Co-Location Agreement between the parties as they failed to make the required payment of $1,689,387.43 to

---

[2] As noted in the 60(b) Motion, the Mawson Entities understand that a copy of the 2004 Order was mailed by Stretto to "Luna Squares, LLC c/o Michael Sweet, Fox Rothschild LLP" and was sent to 950 Railroad Avenue, Midland, PA which is not the location of Luna's (or any of the Mawson Entities) principal place of business nor its agent for service of process. Rather it is amongst the operational sites for the Mawson Entities. The envelope containing the 2004 Order, but not the categories and requests of discovery sought, appears to have been left at the security shack in Midland, PA approximately a week after the date on the 2004 Order.

[3] As reflected in the emails attached as Exhibit B to the 60(b) Motion, the Mawson Entities' Counsel sent an email to Debtors' counsel on August 2, 2023 inquiring whether an actual subpoena was issued. Debtors' counsel responded with threats. This entire situation could have been obviated had the Debtors proceeded properly and issued and served a proper subpoena in the first instance.

148333254.1



Luna on July 13, 2023, and the August payment for a similar amount is due shortly. The operational costs for the facility under the Co-Location Agreement are exorbitant. The monthly electricity bill alone for the Debtor averaged approximately $39,000 per day in June (equating to approximately $1,170,000 for the month). The monthly payments from the Debtors are thus necessary to maintain operations at the facility. The Debtors failure to make the July payment (and potentially, the August payment), has placed great financial pressure on the Mawson Entities given the high cost of operating the facility. The Mawson Entities reserve all rights with respect to this continuing default. Further, the Promissory Note has not yet matured, and no amounts are currently due.

Respectfully submitted,

Michael R. Herz

cc:    Michael A. Sweet
       Dan LaTona
       Ross M. Kwasteniet, P.C.
       Keith H. Wofford

148333254.1