Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## NOTICE OF FILING OF DISCLOSURE STATEMENT HEARING PRESENTATION

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file the presentation (the "Presentation"), attached hereto as **Exhibit A**, that will be used at the hearing on the adequacy of the Disclosure Statement that will take place on **Monday, August 14, 2023 at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that copies of the Presentation and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated: August 13, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:              joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:              patrick.nash@kirkland.com
                        ross.kwasteniet@kirkland.com
                        chris.koenig@kirkland.com
                        dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Presentation**



# In re Celsius Network LLC

## Disclosure Statement Hearing

**Case No. 22-10964**
**United States Bankruptcy Court for Southern District of New York**
**Honorable Judge Martin Glenn**
**August 14, 2023**

# Introduction



- Today, the Debtors are seeking the Court's approval of the Disclosure Statement, as revised on August 9, and entry of the revised proposed Disclosure Statement Order:*

  - *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3223].

  - *Order (I) Approving of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief*, filed substantially contemporaneously herewith.

- Approval of the Disclosure Statement and entry of the revised proposed Disclosure Statement Order will allow the Debtors to commence solicitation on the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3222] (the "Plan").

---

* Capitalized terms used but not defined have the meaning ascribed to them in the Disclosure Statement or the Plan.

# Introduction (cont'd)

 Celsius

- In the last several months, the Debtors focused their efforts on:

    - securing the highest and best bid for Celsius' assets during a multi-week Auction in the spring;

    - building consensus for the Plan by working with a variety of stakeholders to negotiate settlements of certain unresolved key issues; and

    - engaging with federal and state government regulators to resolve claims related to prepetition conduct to provide the maximum amount of recoveries to stakeholders.

- The Debtors have built a strong foundation for the next step:  confirmation of the Plan and emergence from chapter 11.

- The Plan provides the Debtors with a prompt and viable path out of bankruptcy – and the highest possible recovery of value for Celsius' customers.  As a reminder, the Plan contemplates the following:

    - The NewCo Transaction – A reorganization sponsored by the Fahrenheit Group that would result in the creation of a new cryptocurrency company that will be owned by customers and focus on Bitcoin mining and staking.

    - The Orderly Wind Down Toggle – In the event that the NewCo Transaction cannot be consummated, the Debtors can pivot to the Orderly Wind Down that would provide creditors with better recoveries than under a chapter 7 liquidation.

- Notably, the Plan provides for a significant return of cryptocurrency to creditors on or as soon as reasonably practicable after the Effective Date of the Plan under _either_ the NewCo Transaction or the Orderly Wind Down.

# Overview of the Disclosure Statement



The Disclosure Statement provides the Holders of Claims and Interests entitled to vote on the Plan with the adequate information necessary to evaluate the transactions contemplated by the Plan pursuant to section 1125 of the Bankruptcy Code.

| Topic | Section of Disclosure Statement | Bankruptcy Code Section |
|---|---|---|
| Overview of Debtors' Historical Business Operations and Prepetition Capital Structure | Art. V | § 1125(a)(1) |
| Events Leading to these Chapter 11 Cases | Art. VI | § 1125(a)(1) |
| Events of These Chapter 11 Cases | Art. VII | § 1125(a)(1) |
| The Resolution of Key Legal Questions in these Chapter 11 Cases, including the Earn Ruling, Customer Claims Ruling, the Substantive Consolidation of CNL and LLC, the Series B Settlement, Custody Settlement, and the Withhold Settlement | Art. II.A<br>Art. III.TT–VV, YY<br>Art. VII (Art. VII.L) | § 1125(a)(1) |
| Investigations by the Special Committee, the Committee, the Examiner, and Government Agencies | Art. III.KKK, LLL<br>Art. VII.G, J | § 1125(a)(1) |
| Postpetition Sales and Marketing Process | Art. VII.M | § 1125(a)(1) |
| Summary of the Plan and a copy of the Plan | Art. II.B<br>Art. III.AA–EE, HH–JJ, PP–RR, XX<br>Art. IV<br>Exhibit A | § 1125(a)(1) |
| Description of Releases, Exculpations, and Injunctions sought pursuant to the Plan, including Excluded Parties | Art. III.LL–OO | § 1125(a)(1) |
| Transaction Overview and Description of the New Co Transaction, the Orderly Wind Down, and the toggle procedures | Art. II.B<br>Art. III.H, I, GGG<br>Exhibit F | § 1125(a)(1) |

4

# Overview of the Disclosure Statement (cont'd)

 Celsius

The Disclosure Statement provides the Holders of Claims and Interests entitled to vote on the Plan with the adequate information necessary to evaluate the transactions contemplated by the Plan pursuant to section 1125 of the Bankruptcy Code.

| Topic | Section of Disclosure Statement | Bankruptcy Code Section |
|---|---|---|
| Risk Factors Holders of Claims and Interests Should Consider Before Voting on the Plan | Art. VIII | § 1125(a)(1) |
| Description and Summary of Treatment of Claims and Interests, including a description of the Voting Classes and Non-Voting Classes | Art. II.C<br>Art. III.E, F, G, L, M, O–X, FF, WW, ZZ, JJJ–LLL | § 1125(a)<br>§ 1126(f)-(g) |
| Solicitation and Voting Procedures | Art. III.DDD–GGG<br>Art. IX<br>Exhibits G–K | § 1125(a)(1) |
| Explanation of Confirmation of the Plan and the Statutory Requirements for Confirming the Plan | Art. III.HHH, III, JJJ<br>Art. X | § 1125(a)(1) |
| Certain Securities Law Matters | Art. XI | § 1125(a)(1) |
| Certain U.S. Federal Income Tax Consequences of the Plan | Art. XII | § 1125(a)(1) |
| Recommendation of the Debtors | Art. II.D<br>Art. XIII | § 1125(a)(1) |
| Liquidation Analysis | Art. II.B<br>Art. III.E, G<br>Art. X.C<br>Exhibit B | § 1125(a)(1) |
| Other Financial Information about the Debtors and NewCo, including an Orderly Wind Down Analysis, a Mining Valuation Analysis, and Mining Financial Projections | Exhibits C–E | § 1125(a)(1) |

5

# Plan Treatment of Classes

 Celsius

Holders of Claims and Interests will receive the following recoveries under the Plan.

| Voting Class | Description | Entitled to Vote | NewCo Recovery | Orderly Wind Down Recovery | Liquidation Analysis |
|---|---|---|---|---|---|
| Class 1 | Other Secured Claims | No | N/A | N/A | N/A |
| Class 2 | Retail Borrower Deposit Claims | Yes | 85.6% | 83.0% | 47.4% |
| Class 3 | Other Priority Claims | No | N/A | N/A | N/A |
| Class 4 | Convenience Claims | Yes | 70.0% | 70.0% | N/A |
| Class 5 | General Earn Claims | Yes | 67.0% | 61.2% | 47.4% |
| Class 6A | General Custody Claims | Yes | 72.5% | 72.5% | 72.5% |
| Class 6B | Withdrawable Custody Claims | No | 100.0 | 100.0% | 100.0% |
| Class 7 | Withhold Claims | Yes | 72.0% | 67.1% | 47.4% |
| Class 8 | Unsecured Loan Claims | Yes | 67.0% | 61.2% | 47.4% |
| Class 9 | General Unsecured Claims | Yes | 67.0% | 61.2% | 37.5% |
| Class 10 | State Regulatory Claims | Yes | 0.0% | 0.0% | 0.0% |
| Class 11 | *De Minimis Claims* | No | 0.0% | 0.0% | 0.0% |
| Class 12 | Intercompany Claims | No | N/A | N/A | N/A |
| Class 13 | Intercompany Interests | No | N/A | N/A | N/A |
| Class 14 | Series B Preferred Interests | Yes | 0.1% | 0.1% | 0.1% |
| Class 15 | Other Interests | No | 0.0% | 0.0% | 0.0% |
| Class 16 | Section 510(b) Claims | No | N/A | N/A | N/A |
| Class 17 | Equitably Subordinated Claims | No | 0.0% | 0.0% | 0.0% |

# Distribution of Solicitation Packages

 Celsius

The documents contained in the Solicitation Packages comply with Bankruptcy Rules 3017 and 3018 and should be approved.  Solicitation Packages will be distributed to the Voting Classes.  Holders of Claims and Interests in the  non-voting classes will instead receive a Non-Voting Status Notice, which will including the mechanisms for (i) opting in to or out of (as applicable) the Third-Party Releases in the Plan and (ii) electing to contribute Contributed Claims.

| Solicitation Package for Voting Classes (Classes 2, 4, 5, 6A, 7, 8, 9, 10, and 14) |
|---|
| Copy of the Solicitation and Voting Procedures |
| Applicable Ballot and voting instructions |
| Cover Letter |
| Committee's letter recommending that Holders of Claims vote to accept the Plan |
| Disclosure Statement (and exhibits, including the Plan) |
| Disclosure Statement Order (excluding exhibits) |
| Notice of Claims Settlement |
| Confirmation Hearing Notice |

| Holders | Will receive instead of Solicitation Packages . . . |
|---|---|
| Classes Deemed to Accept (Classes 1, 3, and 6B) | (I) Notice of Non-Voting Status to Holders of Unimpaired Claims or Interests Conclusively Deemed to Accept the Plan and (II) Opportunity to Opt-Out of the Third Party Releases |
| Classes Deemed to Reject (Classes 11, 15, 16, and 17) | Notice of (I) Non-Voting Status to Holders of Impaired Claims or Interests Conclusively Deemed to Reject the Plan and (II) Opportunity to Opt-In to the Third Party Releases |
| Unclassified Claims | Notice of (I) Non-Voting Status Notice to Holders of Unclassified Claims and (II) Opportunity to Opt Out of the Third-Party Releases |
| Disputed Claims | Notice of (I) Non-Voting Status with Respect to Disputed Claims, (II) Opportunity to Opt Out of the Third-Party Releases, and (III) Opportunity to Contribute Claims |

# Voting and Solicitation Procedures



The proposed Solicitation Procedures comply with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and should be approved.

- Account Holders will be entitled to vote only in the amount* of their Scheduled Claims **unless** one or more of the following events occurs (a "Resolution Event"):

    - prior to the deadline set forth below, the Holder of an Account Holder Claim files a Bankruptcy Rule 3018(a) motion seeking to temporarily allow her filed Proof of Claim for purposes of voting on the Plan and the Court enters an order approving such motion at or before the Confirmation Hearing;

    - an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code; or

    - a stipulation or other agreement is executed between the Holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount.

- All other Claims and Interests will **only** be entitled to vote the amount of their Scheduled Claims and Interests unless such Scheduled Claim is superseded by a timely filed Proof of Claim that is not subject to an objection, in which case the amount asserted in such timely filed Proof of Claim shall control for voting purposes.

**The deadline to file a motion pursuant to Bankruptcy Rule 3018 is September 20, 2023, at 4:00 p.m., prevailing Eastern Time.**

* The 5% increase to eligible Account Holder Claims provided under the Class Claim Settlement will **not** modify the amount of any Claim for voting purposes.

# Objections to the Disclosure Statement

 **Celsius**

- The Debtors received approximately 40 Objections to the adequacy of the Disclosure Statement and the Disclosure Statement Motion.

- The Objections generally fall into one or more of the following categories.

- **Disclosure-related Objections**.  Objections arguing that the Disclosure Statement does not provide adequate information as required under section 1125 of the Bankruptcy Code.

- **Confirmation-related Objections**.  Objections arguing that the Disclosure Statement cannot be approved because the Plan is patently unconfirmable (which are more accurately objections to the Plan and are therefore premature at this stage).

- Notably, the majority of the letters, which were all filed by *pro se* creditors, object predominantly to the treatment of CEL Token under the Plan and are nearly identical.

# Objections to the Disclosure Statement (cont'd)  Celsius

The Debtors received 7 formal objections, 7 limited objections, and 3 reservation of rights.

## Formal Objections*

1. United States Trustee [Docket No. 3182]
2. Withhold Ad Hoc Group [Docket No. 3146]
3. Harrison Schoenau [Docket No. 3161]
4. Víctor Ubierna de las Heras [Docket No. 3169]
5. Greg Kieser [Docket No. 3154]
6. Nicole Barstow [Docket No. 3061]
7. Otis Davis [Docket No. 3084]

## Limited Objections

1. Texas State Securities Board and Texas Department of Banking [Docket No. 3181]
2. Vermont Department of Financial Regulation [Docket No. 3179]
3. Zack Kaplan, Ben Kaplan, Michael Kaplan, Eli Kaplan, and Michael Mazzotta [Docket No. 3149] (the "Securities Plaintiffs")
4. Santos Caceres [Docket No. 3124]
5. AM Ventures Holdings Inc. [Docket No. 3153]
6. Koala1 LLC [Docket No. 3156]
7. Cameron Crews [Docket No. 3173]

## Reservations of Rights

1. Earn Ad Hoc Group** [Docket No. 3159]
2. Securities and Exchange Commission [Docket No. 3150]
3. Blockchain Recovery Investment Consortium [Docket No. 3163]

\* The Debtors received an untimely joinder from Jonathan Kelly [Docket No. 3266].

\*\* The Earn Ad Hoc Group filed a supplemental Reservation of Rights on August 11, 2023 [Docket No. 3267].

# Objections to the Disclosure Statement (cont'd)  Celsius

. . . the Debtors also received 23 informal objection letters, nearly all identical and relating to CEL Token treatment.*

## Informal Objections

1. Jason Iovine Letter [Docket No. 3122]
2. Carol Maunder Letter [Docket No. 3123]
3. James DeNash Letter [Docket No. 3125]
4. Brian Peel Letter [Docket No. 3139]
5. Joshua Nguyen Letter [Docket No. 3140]
6. Araceli Sanchez Letter [Docket No. 3157]
7. Michael Gonzalez Letter [Docket No. 3158]
8. Sean StJohn Letter [Docket No. 3164]
9. John Hodson Letter [Docket No. 3168]
10. Yolande Schaller Letter [Docket No. 3174]
11. Sheena Schaller Letter [Docket No. 3175]
12. Randy Schaller Letter [Docket No. 3176]

13. Francois Schaller Letter [Docket No. 3177]
14. Anne-Christine Schwab Letter [Docket No. 3178]
15. Maria Helioti Letter [Docket No. 3186]
16. Carla Marshall Letter [Docket No. 3187]
17. James Foley Letter [Docket No. 3188]
18. Jason Amerson Letter [Docket Nos. 3201]
19. Sean Guilfoyle Letter [Docket No. 3202]
20. Gabriele Paraboschi Letter [Docket No. 3206]
21. Eric Kimla Letter [Docket No. 3210]
22. Erica Amerson Letter [Docket No. 3214]
23. Viktoria Gorelik Letter [Docket No. 3215]

* The Debtors also received a number of late informal objections:  Andrew Gleeson Letter [Docket No. 3227]; Peter Juiris Letter [Docket No. 3245]; Sandeep S. Sastry Letter [Docket No. 3265];

# Debtors' Reply to Objections



- On August 9, the Debtors filed their Reply, explaining that the Objections must be overruled or are premature at this stage because they are more appropriately objections to the Plan that should be raised and addressed at Confirmation.

  - *Debtors' Omnibus Reply in Support of the Adequacy of the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3225] (the "Reply").

- In their Reply, the Debtors explained that:

  1) certain Objections arguing that information was not provided in the Disclosure Statement must be overruled because the information sought was adequately provided in the Disclosure Statement;

  2) the Debtors addressed certain Objections by providing additional information in the second revised Disclosure Statement, and as such, those Objections should be overruled; and

  3) certain Objections are not Disclosure Statement objections, but Plan objections that should be addressed at Confirmation.

12

# Formal Objections



| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| U.S. Trustee<br><br>[Docket No. 3182] | 1) The Disclosure Statement does not sufficiently explain which releases apply to which creditors and the Debtors' legal basis for confirming a Plan with these releases.<br><br>The Disclosure Statement cannot be approved because the third party opt-out release renders the Plan unconfirmable. Consent through an opt-out is not sufficient and the releases also do not satisfy the Purdue Pharma factors, specifically the requirement that released parties make essential contributions to the Plan. | 1) The Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code with respect to the Plan's proposed release and exculpation provisions.<br><br>The terms of the proposed release and exculpation provisions, and their effect on creditors, are prominently displayed in the Disclosure Statement, the Plan, and the proposed ballots and notices to both voting and non-voting classes.<br><br>The Plan's releases constitute sufficient consideration on terms that have been approved in recent chapter 11 cases.<br><br>Objections to the permissibility of the Plan's releases are premature. The Debtors are prepared to meet their evidentiary burden (if any) with respect to such matters at the Confirmation Hearing, and the rights of all parties with respect to the releases under the Plan are fully reserved and preserved and may be raised as objections to Confirmation of the Plan. |
|  | 2) The exculpation provision in the Plan is too broad and exceeds Section 1125(e) of the Bankruptcy Code. | 2) The Debtors added a provision to the exculpation provision of the Plan clarifying that exculpation is limited to the time between the Petition Date and the Effective Date. *See* Plan Article VIII.E; Disclosure Statement Art. III.LL. |

# Formal Objections

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| U.S. Trustee (cont'd)<br><br>[Docket No. 3182] | 3) Holders of Custody Claims are subject to an impermissible "death trap" because they are immune from avoidance actions only if such Holders vote for the Plan, and the Disclosure Statement should adequately explain the risks of avoidance actions. | 3) The Debtors believe this is not a "death trap," but rather a way to ensure that these Holders are consenting to both the Custody Settlement and the Avoidance Action Settlement. This is necessary because this Court ruled that assets held in Custody are not property of the Debtors' estates while also holding that the Debtors could maintain possession legal of such assets pending the commencement and resolution of preference actions.<br><br>The Disclosure Statement comprehensively explains, in multiple places, the treatment that Holders of Custody Claims will receive under the Plan. *See e.g.,* Disclosure Statement, Art. II.C, Art. III.TT, Art. III.PP. |
| | 4) The Disclosure Statement does not explain how the Plan's EIP complies with section 503(c) of the Bankruptcy Code. | 4) The Disclosure Statement does not need to explain the Debtors' legal position as to every provision of the Plan. Compliance with section 503(c) of the Bankruptcy Code is a question for confirmation. *See* Reply ¶ 50. |
| | 5) The Disclosure statement must provide more detail on the distribution scheme, including which claimants will receive distributions from PayPal. | 5) The Debtors have added additional language to the disclosure statement and have provided a chart outlining which account Holders may receive distributions from PayPal. *See* Disclosure Statement, Art. III.Q. |

# Formal Objections



| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Withhold Ad Hoc Group<br><br>[Docket No. 3146] | 1) Disclosure Statement of patently unconfirmable plan cannot be approved. Withhold Ad Hoc Group Objection at 2.<br><br>The Plan is patently unconfirmable because ADR Procedures violate due process rights of potential ADR Defendants. *See* Withhold Ad Hoc Group Objection at 2-4. | 1) A plan is not patently unconfirmable where a debtor can show that the "plan is confirmable or that defects might be cured or involve material facts in dispute." *In re Am. Capital Equip.,* LLC, 688 F.3d at 155.<br><br>Any disputes regarding the propriety of the ADR procedures and would not render the Plan patently unconfirmable. *See* Reply ¶ 37.<br><br>The Debtors amended the Disclosure Statement to explain the ADR Procedures and ensure that all potential creditor defendants are properly informed of the process, including how to opt out of the process. *See* Disclosure Statement, Art. III.NNN. |
| Harrison Schoenau<br><br>[Docket No. 3161] | 1) The ADR Procedures were presented procedurally incorrectly and should be considered with an independent motion. Schoneau Objection ¶¶ 11-20.<br><br>2) The ADR Procedures strongly favor the Debtors at the expense of the potential defendants. Schoneau Objection ¶¶ 21-24.<br><br>3) The ADR Procedures are ill suited for preference litigation: defendants should have access to the same evidence as the Debtors and the viability of preference defenses should be collectively litigated. Schoneau Objection ¶¶ 25-32. | 1) The Schoenau Objection does not provide any legal basis to show that the Disclosure Statement does not provide adequate information.<br><br>The Debtors amended the Disclosure Statement to explain the ADR Procedures and ensure that all potential creditor defendants are properly informed of the process, including how to opt out of the process. *See* Disclosure Statement, Art. III.NNN.<br><br>The Schoenau Objection is properly a confirmation objection. |

15

# Formal Objections

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Víctor Ubierna de las Heras<br><br>[Docket No. 3169] | 1) Disclosure Statement of patently unconfirmable plan cannot be approved. Withhold Ad Hoc Group Objection at 2.<br><br>The Disclosure Statement does not disclose how customer PII will be treated in any transaction including compliance with GDPR. *See* Ubierna de las Heras Objection ¶ 1.<br><br>The Disclosure Statement does not provide information on distribution for third party customers of Celsius. *See* Ubierna de las Heras Objection ¶ 2.<br><br>The Disclosure Statement does not provide information on mining risks. *See* Ubierna de las Heras Objection ¶ 3. | 1) The Debtors amended the Disclosure Statement to address Mr. Ubierna de las Heras' disclosure requests. *See* Disclosure Statement Art. III.Q, VII.B.<br><br>The Disclosure Statement describes the Debtors' significant efforts to seek Court authority to comply with the GDPR. The Court has already ruled on the Debtors' required compliance in terms of data protection and privacy when the Debtors sought authority to redact the names, home addresses, and email addresses of any citizens of the United Kingdom or European Economic Area member countries (to whom the GDPR applies,) and the Debtors are complying therewith. *See* Disclosure Statement Art. VI.B.<br><br>The Debtors are not proposing to transfer any user accounts to PayPal, any other Distribution Agent, or Newco. *See* Disclosure Statement Art.III.Q. |
| Greg Kieser<br><br>[Docket No.3154] | 1) Plan is unconfirmable because it violates the absolute priority rule. Earn accounts are securities and Earn claims should be subordinated pursuant to Section 510(b). *See* Kieser Objection ¶¶ 1-8.<br><br><br><br>2) The Plan and the Disclosure Statement should assume or reject retail loan agreements because the retail loan agreements are executory contracts. *See* Kieser Objection    ¶¶ 12-14. | 1) The Plan does not violate the absolute priority rule because General Earn Claims are not claims arising from the purchase, sale, or recission of equity securities of the Debtors, or from the damages in purchasing securities.<br><br>General Earn Claims are appropriately classified as the same priority as other unsecured claims in compliance with section 1122 of the Bankruptcy Code.<br><br>2) This is an issue for confirmation. Even if retail loans are executory contracts, which the Debtors dispute, the Debtors would reject the executory contracts giving rise to an unsecured claim. |

# Formal Objections

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Greg Kieser (cont'd) <br><br> [Docket No.3154] | 3) Barring assumption of the retail loan agreements, the Debtors cannot exercise their right to terminate or setoff and effectuate the Plan treatment. *See* Kieser Objection ¶ 14. | 3) The Debtors have amended the Plan to clarify that, to the extent any retail loan agreements are deemed to be executory contracts, the Debtors will reject them. *See* Plan Art. V.D. |
| Nicole Barstow <br><br> [Docket No. 3061] | 1) Objects to the Disclosure statement because it <br><br> a) promotes fraud and violations of public policy, <br> b) Barstow does not agree to receive equity in Newco, <br> c) Series B Preferred Equity Interests should not receive a distribution, <br> d) distribution should be fixed and not mutable following the vote and Court approval, <br> e) Debtors' obligations to claim Holders regarding "securities of the entitlement claim holders" should not be discharged, and <br> f) the Committee cannot assert a class claim that does not provide Barstow with a recovery. *See* Barstow Objection ¶¶ 1-3, 7-9. | The Barstow Objection does not provide any legal basis to show that the Disclosure Statement does not provide adequate information. <br><br> 1) Holders of Claims entitled to vote on the Plan may vote to reject the Plan if they do not want to receive treatment they are entitled to receive under the Plan. Further, Holders of General Earn Claims (or any Claim on account of which the Holder will receive the Unsecured Claim Distribution Consideration) may indicate a preference on their Ballot to receive a greater share of the Liquid Cryptocurrency Distribution Amount instead of some or all of their Pro Rata share of NewCo Common Stock. This is referred to in the Plan and in the Ballot as the "Liquid Cryptocurrency Weighted Distribution Election." *See* Disclosure Statement, Art. III.W. <br><br> The Series B Settlement has been approved by the Court. *See* [Docket Nos. 3058, 3074]. All Account Holder Claims will be discharged pursuant to confirmation of a plan pursuant to section 1141(d) of the Bankruptcy Code. <br><br> Participants in the Class Claim Settlement are entitled to a 5% increase of their claim. Account Holders may opt out if they do not want to participate. *See* Disclosure Statement Art.III.MMM. |

# Formal Objections



| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Nicole Barstow (cont'd)<br><br>[Docket No. 3061] | 2) Objects to amending the Disclosure Statement or financial statement following Confirmation.  Barstow Objection ¶ 4. | 2) Neither the Disclosure Statement nor the Plan can be amended without Court approval following Confirmation. |
| Otis Davis<br><br>[Docket No. 3084] | 1) CEL Token claims should not be subordinated because they are not a security pursuant to the Ripple decision. *See* Davis Objection at 3-5.<br><br>2) CEL Token claims should be treated the same as Earn claims. *See* Davis Objection at 8.<br><br>3) A class of CEL Token Holders should be formed with professionals paid for by the estate.  *See* Davis Objection at 9-10. | 1) The Debtors address the Plan's treatment of CEL Token in the Reply.  Reply ¶ 47.  Pursuant to the Plan CEL Token Holders shall receive the treatment Associated with the program in which their CEL Token was deployed.  *See* Plan Art.IV.B.2.<br><br>The requests regarding CEL Token are not within the scope of the Disclosure Statement Motion. |

# Limited Objections

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Texas State Securities Board and Texas Department of Banking<br><br>[Docket No. 3061] | 1)  Texas reserves its rights to object pending the results of ongoing discussions with the Debtors regarding the treatment of state regulator claims and agreed upon language incorporated into a further amended Disclosure Statement.  *See* Texas Limited Objection at 2. | 1)  The Debtors included language describing the treatment of state regulator claims in the Disclosure Statement.  *See* Disclosure Statement Art.VII.J.1(c). |
| Vermont Department of Financial Regulation*<br><br>[Docket No. 3179] | 1)  Vermont reserves its rights to object pending the results of ongoing discussions with the Debtors regarding the treatment of state regulator claims and agreed upon language incorporated into a further amended Disclosure Statement.  *See* Vermont Reservation of Rights at 1–2. | 1)  The Debtors included language describing the treatment of state regulator claims in the Disclosure Statement.  *See* Disclosure Statement Art.VII.J.1(c). |

*  New Jersey, Tennessee, Texas, and all states represented by the National Association of Attorneys General (Arkansas, California, District of Colombia, Hawaii, Idaho, Maine, New York, Oklahoma, and South Carolina) agree on Vermont's position.

# Limited Objections

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Securities Plaintiffs<br><br>[Docket No. 3149] | 1) Disclosure Statement should:<br><br>a) Clarify that certain of the Debtors' current and former directors and officers and three other entities are non-debtor defendants in the securities Plaintiff's federal securities class action litigation are not released Parties. *See* Securities Plaintiffs' Limited Objection at 5.<br><br>b) Describe securities litigation and method of preserving evidence. *See* Securities Plaintiffs' Limited Objection at 6-9. | a) The releases under the Plan clearly provide that the individuals and entities identified in the Securities Plaintiffs' Objection are not Released Parties. See Disclosure Statement, Art. III.LL.3. The Plan defines "Excluded Parties" to include, among others, Alexander Mashinsky, Shlomi Daniel Leon, Roni Cohen-Pavon, and the other UCC Claims Stipulation Defendants, who include Hanoch Goldstein, Harumi Urata-Thompson, Jeremie Beaudry, Kristine Mashinsky, Aliza Landes, AM Ventures, and Koala1.<br><br>To the extent the Securities Plaintiffs believe the carve-outs under the releases are nonetheless inadequate, such argument is a Plan objection that should be raised during Confirmation.<br><br>b) The Debtors have added a summary of the federal class action securities litigation. *See* Disclosure Statement, Art. VII.1(a).<br><br>The Debtors have added a provision to the Plan and the Disclosure Statement that provides for the preservation of books and records related to the federal class action securities litigation. *See* Plan, Art. VIII.K; Disclosure Statement, Art. III.PPP. |

20

# Limited Objections

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Securities Plaintiffs (cont'd)<br><br>[Docket No. 3149] | c)  Describe if and how the claims of the Securities Litigation class will be preserved to the extent of available insurance and how D&O Policies are treated under the Plan.  Securities Plaintiffs' Limited Objection at 7-8.<br><br>2)  Claims under federal securities laws cannot be contributed to estate because the estate lacks standing to pursue such claims.  Securities claims should be excluded from definition of Contributed Claim and accompanying disclosure on ballot.  *See* Securities Plaintiffs' Limited Objection at 6–7. | c)  Based on the limited coverage and proceeds available under the D&O Policies, the Debtors do not believe that any "Side C" coverage under the D&O Policies will be available as a distribution to any parties on account of securities-related litigation.  *See* Disclosure Statement, Article III.E.  In light of the limited proceeds available, the Debtors believe it is unnecessary and misleading to expressly preserve these claims against the Debtors to the extent of available insurance.<br><br>2)  This is a plan confirmation issue, however, the Debtors have added language to the disclosure statement that to the extent a claim cannot be assigned under applicable law, such claim will not be assigned. |

21

# Limited Objections



| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Santos Caceres<br><br>[Docket No. 3124] | 1) Disclosure Statement incorrectly characterizes CEL tokens as a security. Caceres Limited Objection at 4–5.<br><br>2) Seeks relief:<br><br>a) holding that CEL token is not a security;<br><br>b) nullifying attempts to subordinate CEL token claims;<br><br>c) removing CEL token subordination from the Disclosure Statement; and<br><br>d) establishing a CEL token holders class. Caceres Limited Objection at 7. | 1) The Debtors address the Plan's treatment of CEL Token in the Reply. Reply ¶¶ 46, 47.<br><br>2) Pursuant to the Plan, CEL Token Holders shall receive the treatment associated with the program in which their CEL Token was deployed. Plan, Art. IV.B.2.<br><br>3) The subsequent requests for relief regarding CEL Token are not within the scope of the Motion. |
| AM Ventures Holdings Inc.<br><br>[Docket No. 3153] | 1) Disclosure Statement fails to provide adequate information regarding the legal basis for equitable subordination of AM Ventures' claim. AM Ventures Limited Objection at 5–6.<br><br>2) The Plan and the Disclosure Statement don't explain how equitable subordination of AM Ventures' claim is proportionate to the harm allegedly perpetrated by AM Ventures. AM Ventures Limited Objection at 6–8. | 1) The Debtors explain the purpose of subordination under sections 510(b) and 510(c) of the Bankruptcy Code and identify the inequitable misconduct necessitating equitable subordination under the Plan as well as the proposed subordination of AM Ventures' claim in Art. III.JJ. *See* Disclosure Statement Art. III.JJ. |

# Limited Objections

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Koala1 LLC<br><br>[Docket No. 3156] | 1) Disclosure Statement fails to provide adequate information regarding the legal basis for equitable subordination of Koala1's claim.  Koala1 Limited Objection at 5–6.<br><br>2) The Plan and the Disclosure Statement don't explain how equitable subordination of AM Ventures' claim is proportionate to the harm allegedly perpetrated by AM Ventures.  Koala1 Limited Objection at 6–8.<br><br>3) Koala1 is not an insider due to the information the Debtors received when Koala1 open their Celsius account.  Koala1 Limited Objection at 9. | 1) The Debtors explain the purpose of subordination under sections 510(b) and 510(c) of the Bankruptcy Code and identify the inequitable misconduct necessitating equitable subordination under the Plan as well as the proposed subordination of AM Ventures' claim in Art. III.JJ.  *See* Disclosure Statement Art. III.JJ. |
| Cameron Crews<br><br>[Docket No. 3173] | 1) CEL token is worthless per Examiner's Report.  Crews Limited Objection at 2–4.<br><br>2) The Debtors should implement a "better distribution mechanism" under rule 9019.  Crews Limited Objection at 4–5.<br><br>3) No CEL token Holder committee should be formed.  Crews Limited Objection at 5–6. . | 1) The Debtors address the Plan's treatment of CEL Token in the Reply. Reply ¶¶ 46, 47.<br><br>2) Pursuant to the Plan, CEL Token Holders shall receive the treatment associated with the program in which their CEL Token was deployed.  See Plan, Art. IV.B.2.<br><br>3) The subsequent requests for relief regarding CEL Token are not within the scope of the Motion. |

# Reservation of Rights



| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Earn Ad Hoc Group<br><br>[Docket No. 3159]* | 1) Disclosure Statement must describe:<br><br>  a) Tax consequences of NewCo and the Orderly Wind Down and continued appreciation of cryptocurrency. *See* Earn Ad Hoc Group Reservation of Rights and Comments at 4–5.<br><br>  b) Detail on how value of illiquid assets and mining are calculated. *See* Earn Ad Hoc Group Reservation of Rights and Comments at 6-7.<br><br>  c) Detail on whether two additional Orderly Wind Down bids would improve recoveries in Orderly Wind Down and commitment to competitive process for Orderly Wind Down bids. *See* Earn Ad Hoc Group Reservation of Rights and Comments at 7–8.<br><br>  d) List of Excluded Parties should be shared prior to Plan Supplement filing. *See* Earn Ad Hoc Group Reservation of Rights and Comments at 8.<br><br>  e) Additional detail on recovery waterfall, held back crypto, Plan KEIP, and Debtors' claim against FTX. *See* Earn Ad Hoc Group Reservation of Rights and Comments at 9.<br><br>2) Earn Ad Hoc Group should receive three NewCo board seats and one seat on the Litigation Oversight Committee (without UCC approval rights). *See* Earn Ad Hoc Group Reservation of Rights and Comments at 5-6. | 1) The Debtors address the Earn Ad Hoc Group's objection regarding taxes and mining in the reply. *See* Reply ¶¶ 14-15.<br><br>2) The Earn Ad Hoc Group Reservation of Rights and Comments does not persuasively argue that the Disclosure Statement does not provide adequate information, the applicable standard under which the Disclosure Statement is approved.<br><br>3) The remaining arguments are confirmation objections. Notably, pursuant to the mediated settlement, the Earn Ad Hoc Group may appoint one member of the Litigation Oversight Committee and Avoidance Action Subcommittee subject to the consent of the Committee pursuant to the Settlement Term Sheet attached as Exhibit B to [Docket No. 3064]. |

*The Earn Ad Hoc Group filed a supplemental Reservation of Rights on August 11, 2023 [Docket No. 3267].

# Reservation of Rights

 Celsius

| Objecting Party | Objection | Proposed Resolution |
|---|---|---|
| Securities and Exchange Commission<br><br>[Docket No. 3150] | 1) The SEC reserves its right to object to Plan confirmation or a Wind-Down motion, including tokenized Illiquid Recovery Rights | 1) The Debtors removed the tokenized Illiquid Recovery Rights. |
| Blockchain Recovery Investment Consortium<br><br>[Docket No. 3163] | 1) The BRIC expects discussions with the Debtors regarding the description of the BRIC's backup plan of reorganization and recoveries in the Disclosure Statement and reserves their rights to object to any unresolved issues. | 1) The Debtors and the BRIC have continued to discuss the BRIC's comments to the Disclosure Statement and have made certain modifications to the Disclosure Statement, including the recovery charts, as the result of the BRIC's comments. |

25

# Letters

 Celsius

**The Debtors received 23 informal objection letters from *pro se* creditors, almost all relating to CEL Token (the "<u>CEL Token Letters</u>").  The CEL Token Letters make arguments similar to those in the Davis and Caceres Objections.**

▪ Nearly all of the letters make identical requests for a CEL Token Class and argue, among other things,  that:

1. CEL Token is not a security and CEL Token Deposit Claims should therefore not be subordinated under section 510(b); and

2. The CEL Token Settlement providing for a valuation of CEL Token at $0.20* per CEL Token and subordinating Other CEL Token Claims should be nullified and the Court should find the true value of CEL Token.

**The CEL Token Letters misunderstand the Debtors' proposed treatment of CEL Token, CEL Token Deposit Claims, and Other CEL Token Claims under the Plan.**

▪ The Debtors are not subordinating <u>CEL Token Deposit Claims</u>.  Instead, the Debtors are proposing a settlement whereby CEL Token Deposit Claims are valued at $0.25/CEL Token (as opposed to the Petition Date price of CEL Token) and receive the treatment of the program in which they are held (*i.e.*, as General Earn Claims, Retail Borrower Claims).

▪ The Debtors are proposing to subordinate <u>Other CEL Token Claims</u>, which are:  "any Account Holder Claim arising out of or related to CEL Token that is not a CEL Token Deposit Claim, including (i) damages arising from the purchase or sale of CEL Token, (ii) damages for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim, and (iii) Claims arising from the rescission of a contract for the purchase or sale of CEL Token."

▪ Whether the CEL Token Settlement should be approved or whether the Court should hold a valuation or estimation hearing are not within the scope of the Disclosure Statement Hearing.

*The Disclosure Statement filed on August 9, 2023 increased this amount to $0.25 per CEL Token.

26

# Path Forward



The Debtors plan to commence Solicitation in the coming weeks with an eye towards Confirmation in early October 2023.

| Event | Date |
|---|---|
| Voting Record Date | July 24, 2023 |
| Solicitation Deadline | August 23, 2023 |
| Publication Deadline | Five (5) business days following entry of the order approving the Disclosure Statement (or as soon as reasonably practicable thereafter) |
| Plan Supplement Filing Deadline | September 6, 2023 |
| Deadline to file Motion Pursuant to Bankruptcy Rule 3018 | September 20, 2023, at 4:00 p.m., prevailing Eastern Time |
| Voting Deadline | September 20, 2023, at 4:00 p.m., prevailing Eastern Time |
| Plan Objection Deadline | September 20, 2023, at 4:00 p.m.., prevailing Eastern Time |
| Voting Report | September 25, 2023, at 4:00 p.m., prevailing Eastern Time |
| Confirmation Brief, Plan Objection Reply, and 3018 Motion Response Deadline | September 29, 2023, at 4:00 p.m., prevailing Eastern Time |
| Confirmation Hearing Date | October 2, 2023, at 2:00 p.m., prevailing Eastern Time |

27