Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF**
**REVISED EXHIBITS TO PROPOSED**
**ORDER (I) APPROVING THE ADEQUACY OF THE**
**DEBTORS' DISCLOSURE STATEMENT, (II) APPROVING**
**THE SOLICITATION AND VOTING PROCEDURES WITH RESPECT TO**
**CONFIRMATION OF THE DEBTORS' JOINT PLAN OF REORGANIZATION,**
**(III) APPROVING THE FORM OF BALLOTS AND NOTICES IN CONNECTION**
**THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,**
**(V) AUTHORIZING AND APPROVING REIMBURSEMENT OF CERTAIN OF THE**
**PLAN SPONSOR'S FEES AND EXPENSES, AND (VI) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE THAT** on July 7, 2023, the above captioned debtors and

debtors in possession (collectively, the "<u>Debtors</u>") filed exhibits in support of the *Debtors' Motion*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*for Entry of an Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 2971].

**PLEASE TAKE FURTHER NOTICE THAT** on August 9, 2023, the Debtors filed a revised proposed *Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 3224] (the "Revised Proposed Order"), which included various exhibits filed contemporaneously therewith.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors hereby file a revised *Solicitation and Voting Procedures, Unimpaired Non-Voting Status Notice, Unclassified Non-Voting Status Notice, Impaired Non-Voting Status Notice, Notice to Disputed Claim Holders, and General Unsecured Claims Ballot* (the "Revised Exhibits") which reflect minor changes and conforming edits.

**PLEASE TAKE FURTHER NOTICE THAT** a changed page only comparison between each of the corresponding exhibits included in the Revised Proposed Order and the Revised Exhibits is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Revised Proposed Order, Revised Exhibits, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated:  August 14, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Revised Exhibits**

**Exhibit 1**

**Solicitation and Voting Procedures**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2902] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

1.     **The Voting Record Date.**

The Court has approved **July 24, 2023** as the record date for purposes of determining which Holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, Class 7 Withhold Claims, Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, Class 10 State Regulatory Claims, and Class 14 Series B Preferred Interests are entitled to vote to accept or reject the Plan (the "Voting Record Date").

2.     **The Voting Deadline.**

The Court has approved **September 20, 2023, at 4:00 p.m.** prevailing Eastern Time as the voting deadline (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, in consultation with the Committee, without further order of the Court by filing a notice on the Court's docket.  To be counted as votes to accept or reject the Plan, all ballots (the "Ballots") must be executed, completed, and delivered pursuant to the instructions set forth on the applicable Ballot so that they are actually received by Stretto, Inc. (the "Claims, Noticing, and Solicitation Agent") no later than the Voting Deadline.  Holders of the Claims in the Voting Classes may submit their Ballots via (a) the Claims, Noticing, and Solicitation Agent's online voting platform at https://case.stretto.com/Celsius/balloting, or (b) mail or hand-delivery to the Claims, Noticing, and Solicitation Agent at Celsius Ballot Processing c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.  Ballots submitted to the Claims, Noticing, and Solicitation Agent by any means other than expressly provided in these Solicitation and Voting Procedures, including e-mail, facsimile, or electronic means other than the online voting portal, ***shall not be valid and will not be counted***.

3.     **Form, Content, and Manner of Notices.**

(i)     The Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

a.     the Cover Letter, which describes the contents of the Solicitation Package and urges Holders of Claims in each of the Voting Classes to vote to accept the Plan;

b.     the Committee Letter;

c.     a copy of these Solicitation and Voting Procedures;

d.     the applicable form of Ballot, substantially in the form attached as **Exhibit 3A**, **Exhibit 3B**, **Exhibit 3C**, **Exhibit 3D**, and **Exhibit 3E** to the Disclosure Statement Order, as applicable;

e.     the Notice of Claims Settlement;

2

      f.      the Disclosure Statement (and exhibits thereto, including the Plan);

      g.      the Disclosure Statement Order (excluding exhibits);

      h.      the Confirmation Hearing Notice;

      i.      the Assumption Notice;

      j.      the Rejection Notice; and

      k.      any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

    (ii)    <u>Distribution of the Solicitation Package</u>.

    (1)    *Distribution to Account Holder Voting Classes*

The Solicitation Package will be distributed via e-mail in electronic format to Holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, and Class 7 Withhold Claims (together, the "<u>Account Holder Voting Classes</u>") to the e-mail on file for the account and the e-mail address listed on a Filed proof of claim, to the extent a proof of claim was Filed and an e-mail address other than the e-mail address on file was used. If the message to either e-mail address is returned as undeliverable, the Claims, Noticing, and Solicitation Agent shall serve the Solicitation Package on such Holders via first class mail to the extent a physical mailing address is known by the Debtors. Holders of Claims in Account Holder Voting Classes will also receive a "push" notification to the Debtors' mobile application, which will link to the ballot for the Account Holder Voting Classes (the "<u>Account Holder Ballot</u>") on the Claims, Noticing, and Solicitation Agent's online voting portal. The Account Holder Ballot will be pre-populated with the amount of each Claim held by the Holder in each of the Account Holder Voting Classes as reflected on the Debtors' schedules of assets and liabilities [Docket No. 974] (as amended from time to time, the "<u>Schedules</u>"). As discussed further herein, Account Holders will only be permitted to vote a Claim amount that is different than the Account Holder Claim amount listed on the Schedules if the Court enters an order approving such relief for that Account Holder after that Account Holder files a motion seeking such relief pursuant to Bankruptcy Rule 3018(a). The Account Holder Ballot includes detailed descriptions of a number of elections available to Account Holders in addition to seeking votes to accept or reject the Plan. The Account Holder Ballot on the online voting portal will provide user-friendly prompts to ensure that any elections the Holder makes are consistent, thus preventing Holders from inadvertently submitting a defective ballot and ensuring that votes to accept or reject the Plan from Holders in the Account Holder Voting Classes will be counted properly.

    (2)    *Distribution to Other Voting Classes*

The Solicitation Package will be distributed via e-mail in electronic format to Holders of Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, Class 10 State Regulatory Claims, and Class 14 Series B Preferred Interests to the extent an e-mail address is on file. To the extent an e-mail address is not on file for any Holders of such Claims or Interests and the Debtors

are in possession of a physical mailing address for such Holders, the Claims, Noticing, and Solicitation Agent shall serve the Solicitation Package on such Holders via first class mail.

(3)    *Distribution to Other Parties in Interest*

All Holders of Claims and Interests will also receive the Confirmation Hearing Notice attached to the Disclosure Statement Order as <u>Exhibit 6</u> via e-mail from the Claims, Noticing, and Solicitation Agent to the extent an e-mail address is on file.  To the extent an e-mail address is not on file for any Holder of Claims or Interests and the Debtors are in possession of a physical mailing address for such Holders, the Claims, Noticing, and Solicitation Agent shall serve the Confirmation Hearing Notice on such Holder via first class mail.

The Debtors shall electronically serve all the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.  Any party that receives the materials in electronic format but would prefer paper format may request paper copies of such materials by contacting the Claims, Noticing, and Solicitation Agent by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-5873 (International);  (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.

(4)    *Timing of Distribution of Solicitation Packages*

The Debtors shall distribute, or cause to be distributed, the Solicitation Package to all Holders of Claims in the Voting Classes who are entitled to vote, as described in Section 4(i) below, on or before **August 23, 2023** (or as soon as reasonably practicable thereafter),

(5)    *Avoiding Duplication*

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to ensure that any Holder of a Claim who has filed duplicative Proofs of Claim against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor.

(iii)    <u>Non-Voting Status Notices for Unclassified Creditors, Unimpaired Classes, Classes Deemed to Reject the Plan and Disputed Claims</u>

Certain Holders of Claims and Interests that are not entitled to vote because they are unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive the *Notice of (I) Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Opportunity to Opt out of the Third-Party Releases*, substantially in the form annexed as <u>Exhibit 2A</u> to the Disclosure Statement Order, and

will also receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

Certain Holders of Claims or Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of (I) Non-Voting Status to Holders of Impaired Claims or Interests Conclusively Deemed to Reject the Plan and (II) Opportunity to Opt-in to the Third Party Releases,* substantially in the form annexed as <u>Exhibit 2B</u> to the Disclosure Statement Order and will receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

Certain Holders of Claims and Interests that are not classified pursuant to section 1123(a)(1) of the Bankruptcy Code will receive the *Notice of (I) Non-Voting Status to Holders of Unclassified Claims and (II) Opportunity to Opt out of the Third-Party Releases*, substantially in the form annexed as <u>Exhibit 2C</u> to the Disclosure Statement Order and will also receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.  The notice will instruct Holders who do not receive Solicitation Packages as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

Certain Holders of Claims that are subject to a pending objection by the Debtors who are not entitled to vote any disputed portion of their Claim absent a Resolution Event (as defined herein) will receive the *Notice of (I) Non-Voting Status with Respect to Disputed Claims, (II) Opportunity to Opt out of the Third-Party Releases, and (III) Opportunity to Contribute Claims* substantially in the form annexed as <u>Exhibit 2D</u> to the Disclosure Statement Order and will receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

      (iv)    <u>Notices in Respect of Executory Contracts and Unexpired Leases</u>.

Counterparties to Executory Contracts and Unexpired Leases that receive a *Notice of Rejection of Executory Contracts and Unexpired Leases* substantially in the form attached as <u>Exhibit 8</u> or a *Notice of Assumption of Executory Contracts and Unexpired Leases* substantially in the form attached as <u>Exhibit 9</u>, as applicable, to the Disclosure Statement Order, may file an objection to the Debtors' proposed assumption, rejection, or cure amount, as applicable.  Any such objection must:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **<u>September 20, 2023 at 4:00 p.m.</u>**, prevailing Eastern Time (the "<u>Plan Objection Deadline</u>").  For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses:  to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the

Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within 30 days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time shall not be enforceable against the Debtors, the Post-Effective Date Debtors, their Estates, their property, or NewCo without the need for any objection by the Debtors, the Post-Effective Date Debtors or NewCo or further notice to, or action, order, or approval of the Court.

4.    **Voting and Tabulation Procedures.**

(i)    <u>Holders of Claims Entitled to Vote.</u>

Only the following Holders of Claims and Interests in the Voting Classes shall be entitled to vote with regard to such Claims and Interests, and such Holders shall be allowed to vote only in the amounts set forth in Section 4(ii) of these Solicitation and Voting Procedures:

a.    Holders of Claims that are listed in the Schedules;

b.    Holders of Claims and Interests other than Account Holder Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that supersedes their Claims Scheduled by the Debtors, or that asserts a Claim that does not appear in the Schedules;

c.    Account Holders who have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) for Claims that do not appear in the Schedules, solely to the extent that such Proofs of Claim have been temporarily allowed for voting purposes only pursuant to Bankruptcy Rule 3018(a); *provided* that the deadline to file any motions under Bankruptcy Rule 3018(a) shall be the Voting Deadline, which motions shall be resolved by the Court at or prior to the Confirmation Hearing;

d.    Holders whose Claims arise: (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) from an order entered by the Court; or (iii) from a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed or the Claim was scheduled as contingent, unliquidated, or disputed;

e.    Holders that do not have any Equitably Subordinated Claims; and

6

f.     with respect to any Entity described in subparagraphs (a) through (d) above, who, on or before the Voting Record Date, has transferred such Entity's Claim to another Entity, the transferee of such Claim; *provided* that such transfer has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

For the avoidance of doubt, Holders of Claims and Interests described above with Claims and Interests in one or more of the Non-Voting Classes (*i.e.*, Holders of Claims and Interests in Classes 1, 3, 6B, 11, 12, 13, 15, 16, and 17) shall not be entitled to vote such Claim or Interest and any Ballot cast by a Holder on behalf of a Claim or Interest in a Non-Voting Class shall not be counted.

(ii)    <u>Establishing Claim Amounts for Voting Purposes</u>.

(1)    *Filed and Scheduled Claims.*

The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for any other purpose, including distributions under the Plan. Any amounts pre-populated on the Account Holder Ballot or other ballots by the Debtors through the Claims, Noticing, and Solicitation Agent are not binding for purposes of allowance and distribution. In tabulating votes, the amount of the Claim associated with each claimant's vote shall be determined as follows:

a.     Eligible Holders of Account Holder Claims shall vote in the amount of their Scheduled Claim[3] unless one or more of the following events occurs (a "<u>Resolution Event</u>"):

i.     prior to the Voting Deadline, the Holder of an Account Holder Claim files a motion in the Court seeking entry of an order to temporarily allow timely filed Proof of Claim for purposes of voting on the Plan (a "<u>3018 Motion</u>"), *AND* the Court enters an order approving such 3018 Motion. 3018 Motions shall be resolved by the Court at or prior to the Confirmation hearing. If a Holder of an Account Holder Claim files a 3018 Motion, such Holder will be deemed to have opted out of the Class Claim Settlement;

ii.     an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code; or

iii.     a stipulation or other agreement is executed between the Holder of such Claim and the Debtors (either for voting purposes or for all purposes) allowing such Claim in an agreed upon amount.

---

[3]    For the avoidance of doubt, the 5% increase to eligible Account Holder Claims provided under the Class Claim Settlement shall not modify the amount of any Claim for voting purposes.

b.      Eligible Holders of Claims in Voting Classes other than Account Holder Voting Classes shall vote in the amount of their Scheduled Claim unless such Scheduled Claim is superseded by a timely filed Proof of Claim that is not subject to objection, in which case the amount asserted in such timely filed Proof of Claim shall control for voting purposes; *provided* that any amounts asserted on account of any interest accrued after the Petition Date will not be considered; *provided further* that any wholly unliquidated or unknown amount that is not the subject of a pending objection, based on a reasonable review of the Proof of Claim and supporting documentation by the Debtors or their advisors, will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; *provided further* that if such Proof of Claim is filed as partially liquidated and partially unliquidated, it will count for voting purposes only in the liquidated amount; and

c.      notwithstanding the foregoing, with respect to all Claims in the Voting Classes, the Claim amount for voting purposes shall be the amount: (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court; or (iv) set forth in e-mailed instructions from the Debtors' counsel to the Solicitation Agent with the applicable voter copied.

Notwithstanding anything to the contrary herein:

a.      if a Claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for filing proofs of claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Record Date, such Claim shall be disallowed for voting purposes;

b.      Holders of Proofs of Claim that are subject to a pending claim objection shall not be entitled to vote such Proofs of Claim unless a Resolution Event occurs;[4]

c.      Holders of Proofs of Claim filed for $0.00 or zero (0) Cryptocurrency, as applicable, are not entitled to vote;

d.      Claims that have been paid, scheduled to be paid in the ordinary course, or otherwise satisfied are disallowed for voting purposes;

---

[4]     Notwithstanding the foregoing, the Holders of the Claims that are the subject of the *Debtors' Objection to Proof of Claim No. 24480 of Daniel A. Frishberg* [Docket No. 2107], *Debtors' Objection to Proof of Claim No. 23959 of Rebecca Gallagher* [Docket No. 2106], and *Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* [Docket No. 2105] may vote their Claims in the amounts listed in the Schedules.

    e.    any creditor who has filed or purchased duplicate Claims within the same Voting Class shall, to the extent possible, be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

    f.    if a Proof of Claim is amended, the last filed Claim shall be subject to these rules and will supersede any earlier filed Claim, and any earlier filed Claim will be disallowed for voting purposes.

(iii)   <u>Voting and Ballot Tabulation Procedures</u>.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right, in consultation with the Committee, to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, or order of the Bankruptcy Court:

    a.    Holders of Claims generally must vote all of their Claims either to accept or reject the Plan and may not split any votes between Classes. For example, a Holder with a Class 5 General Earn Claim and a Class 7 Withhold Claim must vote both Claims to accept or reject the Plan. Furthermore, to the extent there are multiple Claims within the same Class, such Claims shall be aggregated within a Class for the purpose of counting votes. However, holders of Class 6A General Custody Claims that also hold claims in other Voting Classes may separately vote to accept the Plan for their Class 6A General Custody Claims and vote to reject the Plan for their other Claims in Voting Classes;

    b.    the Account Holder Ballot contemplates that certain Holders can make the Convenience Claim Election and receive the treatment for Class 4 Convenience Claims, even though they do not hold Class 4 Convenience Claims. For the avoidance of doubt, this does not change the nature of their Claim for the purposes of Voting and as such their vote to accept or reject the Plan will be counted in the Voting Class in which the Claim was originally classified;

    c.    in the event that a Holder with Claims in a Voting Class and in a Non-Voting Class has conflicting responses on the election to opt out of granting releases, the response provided on the Ballot will control;

    d.    a Holder with a Claim in Class 17 Equitably Subordinated Claims is not entitled to vote any Claims, regardless of whether such other Claims would be classified in a Voting Class;

    e.    each Claim asserted in currency other than U.S. dollars (other than Cryptocurrency) shall be automatically deemed converted to the equivalent U.S. dollar value using the conversion rate for the applicable currency at

prevailing market prices as of 8:00 a.m. (prevailing Eastern Time) on the Petition Date;

f.    each Claim asserted in Cryptocurrency shall be calculated in United States Dollars as of the Petition Date utilizing the conversion rates provided in the Cryptocurrency Conversion Table attached to the Disclosure Statement as Exhibit L; *provided* that CEL Token shall be valued as provided in Article IV.B.2 of the Plan;

g.    except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted and actually received by the Claims, Noticing, and Solicitation Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors, in consultation with the Committee), the Debtors shall reject such Ballot as invalid and, therefore, shall not count such Ballot in connection with confirmation of the Plan;

h.    the Claims, Noticing, and Solicitation Agent will date-stamp all Ballots when received.  All Ballots submitted via the Claims, Noticing, and Solicitation Agent's online voting portal will also be time-stamped upon receipt.  The Claims, Noticing, and Solicitation Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Court;

i.    the Claims, Noticing, and Solicitation Agent shall tabulate Ballots on a Debtor-by-Debtor basis;

j.    the Debtors will file the Voting Report by **September 25, 2023 at 4:00 p.m.** prevailing Eastern Time.  The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity, including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, or damaged (collectively, in each case, the "Irregular Ballots").  The Voting Report shall indicate the Debtors' decision, in consultation with the Committee, with regard to such Irregular Ballots;

k.    The method of delivery of Ballots to be sent to the Claims, Noticing, and Solicitation Agent is at the election and risk of each such Holder.  Except as otherwise provided, a Ballot will be deemed delivered only when the Claims, Noticing, and Solicitation Agent actually receives the executed Ballot, and delivery of a Ballot to the Claims, Noticing, and Solicitation Agent by any means other than expressly provided in these Solicitation and Voting Procedures will not be valid;

l.    an executed Ballot is required to be submitted by the Entity submitting such Ballot;

m.      no Ballot should be sent to the Debtors, the Debtors' agents or representatives (other than the Claims, Noticing, and Solicitation Agent), the Debtors' financial or legal advisors, the Committee, the Committee's agents or representatives, the Committee's financial or legal advisors, or the Committee's members and, if so sent, will not be counted;

n.      if multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

o.      a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

p.      the Debtors, in consultation with the Committee, and subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

q.      unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

r.      in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

s.      subject to any order of the Court, the Debtors, in consultation with the Committee, reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

t.      if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

u.      if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

v.      the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:

11

i.   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim;

ii.  any Ballot cast by any Entity that does not hold a Claim in a Voting Class;

iii. any Ballot cast by any Entity that holds a Claim in Class 17 Equitably Subordinated Claims;

iv.  any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00);

v.   any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot submitted via the Claims, Noticing, and Solicitation Agent's online balloting portal shall be deemed an original signature);

vi.  any Ballot not marked to accept or reject the Plan (which may be through making elections on the Account Holder Ballot) or marked both to accept and reject the Plan (unless it is an Account Holder Ballot and the only vote to accept the Plan is on behalf of a Class 6A General Custody Claim);

vii. any Ballot transmitted by facsimile, e-mail, or other means not specifically approved pursuant to the Disclosure Statement Order or contemplated by these Solicitation and Voting Procedures;

viii. any Ballot sent to any of the Debtors, the Debtors' agents or representatives other than the Claims, Noticing, and Solicitation Agent, the Debtors' financial or legal advisors, the Committee, the Committee's agents or representatives, the Committee's financial or legal advisors, or the Committee's members; and

ix.  any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

w.   after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, in consultation with the Committee, or further order of the Court;

x.   the Debtors, in consultation with the Committee, are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes, with such stipulations to be disclosed on the Voting Report; and

12

y.      where any portion of a single Claim has been transferred to a transferee, all holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other solicitation and voting procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (A) a Ballot, (B) a group of Ballots within a Voting Class received from a single creditor, or (C) a group of Ballots received from the various Holders of multiple portions of a single Claim or partially reject and partially accept the Plan, such Ballots shall not be counted.

5.      **Amendments to the Plan and Solicitation and Voting Procedures.**

The Debtors, in consultation with the Committee, reserve the right to make non-substantive or immaterial changes to the Plan, Disclosure Statement, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Committee Letter, these Solicitation and Voting Procedures, Plan Supplement Notice, Rejection Notice, Assumption Notice, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the any materials in the Solicitation Packages before distribution.

\*        \*        \*        \*        \*

13

## Exhibit 2A

**Unimpaired Non-Voting Status Notice**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF (I) NON-VOTING STATUS TO HOLDERS OF UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN AND (II) OPPORTUNITY TO OPT OUT OF THE THIRD-PARTY RELEASES

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2902] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**.  Specifically, under the terms of the Plan, as a Holder of a Claim (as

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

currently asserted against the Debtors) that is Unimpaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT you may elect to opt out of the third-party release contained in the Plan. Attached hereto is an opt-out form (the "Opt-Out Notice") that you may use to make such elections. This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt-out of the third-party release.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to confirmation of the Plan is **September 20, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 20, 2023 at 4:00 p.m.** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

PLEASE TAKE FURTHER NOTICE THAT if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

## OPTIONAL:  RELEASE OPT-OUT NOTICE

You are receiving this Opt-Out Notice because you are a Holder of a Claim that is not entitled to vote on the Plan.  Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-Out Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan you may submit your election by submitting the electronic version of your Opt-Out Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-OUT NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY September 20, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-OUT DEADLINE").**

<u>Item 1</u>.  **Amount of Claim.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of Class 1 Secured Claims, Class 3 Other Priority Claims, or Class 6B Withdrawable Custody Claims in the following aggregate amount of claims (insert amount in box below):

Class 1 Secured Claims _____

Class 3 Other Priority Claims _____

Class 6B Withdrawable Custody Claims _____

<u>Item 2</u>.                **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, <u>PROVIDED, HOWEVER</u>, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE. **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.** |
|---|---|

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property**

under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "Released Parties" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Plan Administrator; (e) the Committee and each of its members; (f) any Litigation Administrator(s); (g) the Plan Sponsor and each of its members; (h) NewCo and its directors and officers; (i) the Retail Borrower Ad Hoc Group and each of its members; (j) the Earn Ad Hoc Group and each of its members, (k) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (l) the Class Claim Representatives; (m) the Initial Series B Preferred Holders and their Related Parties; (n) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (o) Christopher Ferraro; (p) the BRIC Parties; (q) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (r) any Releasing Party.  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "Releasing Parties" means, collectively:  (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)  Under the Plan, "Excluded Party" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

**Item 3**. **Certifications.**

By signing this Opt-Out Notice, the undersigned certifies:

(a) that, as of the Record Date, either:  (i) the Entity is the Holder of the Claims set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims set forth in Item 1;

(b) that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Opportunity to Opt Out of the Third-Party Releases* and that this Opt-Out Notice is submitted pursuant to the terms and conditions set forth therein;

(c) that the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

(d) that no other Opt-Out Notice with respect to the amount(s) of Claims identified in Item 1 have been submitted or, if any other Opt-Out Notices have been submitted with respect to such Claims, then any such earlier Opt-Out Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Signatory Name (if other than the Holder): | |
| Title (if other than the Holder): | |
| Address: | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-OUT NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-Out Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-Out Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-Out Notices will be accepted via electronic or online transmission. Opt-Out Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-Out Notice for each Opt-Out Notice you receive, as applicable.

\*      \*      \*

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit 2B</u>**

**Impaired Non-Voting Status Notice**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) NON-VOTING STATUS TO HOLDERS OF IMPAIRED
CLAIMS OR INTERESTS CONCLUSIVELY DEEMED TO REJECT THE PLAN AND
(II) OPPORTUNITY TO OPT-IN TO THE THIRD PARTY RELEASES**

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2902] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a Holder of a Claim or Interest (as currently asserted against the Debtors) that may receive no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

However, copies of the Disclosure Statement (including the Plan) and the Committee Letter are being provided to you in compliance with the applicable Bankruptcy Rules and the Bankruptcy Court's order.

**PLEASE TAKE FURTHER NOTICE THAT** you may elect to opt in to the third party releases. Attached hereto is an opt-in form (the "Opt-In Notice") that you may use to make such elections. This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt-in to the release.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to confirmation of the Plan is **September 20, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 20, 2023 at 4:00 p.m.** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

**OPTIONAL:  RELEASE OPT-IN NOTICE**

You are receiving this Opt-In Notice because you are a Holder of a Claim that is not entitled to vote on the Plan.  Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-In Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt in to the Third-Party Release set forth in Article VIII.D of the Plan you may submit your election by submitting the electronic version of your Opt-In Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-IN NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY September 20, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-IN DEADLINE").**

**Item 1**.  **Amount of Claim.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of unclassified Claims in the following aggregate amount of claims (insert amount in box below):

De Minimis Claim _____

Other Interests _____

Section 510(b) Claims _____

Equitably Subordinated Claims _____

Other Unclassified Claims _____

**Item 2.**              **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, PROVIDED, HOWEVER, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY. IF YOU WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST OPT IN TO THE THIRD-PARTY RELEASES.

YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-IN NOTICE BY THE OPT-IN DEADLINE. **YOUR DECISION TO COMPLETE AND RETURN THE OPT-IN NOTICE IS ENTIRELY VOLUNTARY**. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT IN TO THE THIRD-PARTY RELEASE.

---

☐    **By checking this box, you elect to opt IN to the Third-Party Releases.**

---

**Article VIII.D of the Plan contains the following Third-Party Release:**

Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of

**Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.**

Definitions Related to the Debtor Release and the Third-Party Release:

(1)    Under the Plan, "Released Parties" means, collectively:  (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Plan Administrator; (e) the Committee and each of its members; (f) any Litigation Administrator(s); (g) the Plan Sponsor and each of its members; (h) NewCo and its directors and officers; (i) the Retail Borrower Ad Hoc Group and each of its members; (j) the Earn Ad Hoc Group and each of its members, (k) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (l) the Class Claim Representatives; (m) the Initial Series B Preferred Holders and their Related Parties; (n) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (o) Christopher Ferraro; (p) the BRIC Parties; (q) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (r) any Releasing Party.  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)    Under the Plan, "Releasing Parties" means, collectively:  (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)    Under the Plan, "Excluded Party" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ

Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

**Item 3.   Certifications.**

By signing this Opt-In Notice, the undersigned certifies:

(a)   that, as of the Record Date, either:  (i) the Entity is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)   that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders of Impaired Claims Conclusively Presumed to Reject the Plan and (II) Opt In to the Third Party Releases* and that this Opt-In Notice is submitted pursuant to the terms and conditions set forth therein;

(c)   that the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d)   that no other Opt-In Notice with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Opt-In Notices have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Signatory Name (if other than the Holder): | |
| Title (if other than the Holder): | |
| Address: | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF YOU WISH TO MAKE THE OPT-IN ELECTION PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-IN NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-In Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-In Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-In Notices will be accepted via electronic or online transmission. Opt-In Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-In Notice for each Opt-In Notice you receive, as applicable.

\*        \*        \*

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:            patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com
                    chris.koenig@kirkland.com
                    dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 2C**

**Unclassified Non-Voting Status Notice**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) NON-VOTING STATUS TO**
**HOLDERS OF UNCLASSIFIED CLAIMS AND (II) OPPORTUNITY TO OPT**
**OUT OF THE THIRD-PARTY RELEASES**

      **PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2902] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

      **PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, Claims on account of statutory fees under section 1930 of the Bankruptcy Code, and Claims pursuant to settlement agreements have not been classified, are excluded from the Classes of Claims set forth in Article III of the Plan, and thus are **not** entitled to vote on the Plan.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

PLEASE TAKE FURTHER NOTICE THAT you may elect to opt out of the third-party release contained in the Plan. Attached hereto is an opt-out form (the "Opt-Out Notice") that you may use to make such elections. This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt out of the third-party release.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to confirmation of the Plan is **September 20, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 20, 2023 at 4:00 p.m.** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

PLEASE TAKE FURTHER NOTICE THAT if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

**OPTIONAL:  RELEASE OPT-OUT NOTICE**

You are receiving this Opt-Out Notice because you are a Holder of a Claim that is not entitled to vote on the Plan. Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-Out Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan you may submit your election by submitting the electronic version of your Opt-Out Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-OUT NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY September 20, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-OUT DEADLINE").**

**Item 1**.  **Amount of Claim.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of unclassified Claims in the following aggregate amount of claims (insert amount in box below):

---

Administrative Claim _____

Priority Tax Claim _____

Other Unclassified Claims _____

---

<u>Item 2</u>.                 **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES <u>PROVIDED, HOWEVER</u>, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE.  **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.** |

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases**

set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "Released Parties" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Plan Administrator; (e) the Committee and each of its members; (f) any Litigation Administrator(s); (g) the Plan Sponsor and each of its members; (h) NewCo and its directors and officers; (i) the Retail Borrower Ad Hoc Group and each of its members; (j) the Earn Ad Hoc Group and each of its members, (k) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (l) the Class Claim Representatives; (m) the Initial Series B Preferred Holders and their Related Parties; (n) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (o) Christopher Ferraro; (p) the BRIC Parties; (q) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (r) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "Releasing Parties" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)     Under the Plan, "Excluded Party" means each of the following: (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management

LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party. Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

**Item 3. Certifications.**

By signing this Opt-Out Notice, the undersigned certifies:

(a)  that, as of the Record Date, either: (i) the Entity is the Holder of the Claims set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims set forth in Item 1;

(b)  that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Opportunity to Opt Out of the Third-Party Releases* and that this Opt-Out Notice is submitted pursuant to the terms and conditions set forth therein;

(c)  that the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

(d)  that no other Opt-Out Notice with respect to the amount(s) of Claims identified in Item 1 have been submitted or, if any other Opt-Out Notices have been submitted with respect to such Claims, then any such earlier Opt-Out Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Signatory Name (if other than the Holder): | |
| Title (if other than the Holder): | |
| Address: | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-OUT NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-Out Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-Out Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-Out Notices will be accepted via electronic or online transmission. Opt-Out Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-Out Notice for each Opt-Out Notice you receive, as applicable.

*    *    *

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit 2D**

**Notice to Disputed Claim Holders**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) NON-VOTING STATUS WITH**
**RESPECT TO DISPUTED CLAIMS, (II) OPPORTUNITY TO OPT OUT OF**
**THE THIRD-PARTY RELEASES, AND (III) OPPORTUNITY TO CONTRIBUTE CLAIMS**

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2902] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 2807] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the Holder of a Claim that is subject to a pending objection by the Debtors. **You are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before a date that is two Business Days before the Voting Deadline** (each, a "Resolution Event"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

1.  an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

2.  an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

3.  a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

4.  the pending objection to such Claim is voluntarily withdrawn by the objecting party.

Copies of the Disclosure Statement (including the Plan) and the Committee Letter are being provided to you in compliance with the applicable Bankruptcy Rules.  You will not receive a Ballot or other Solicitation Materials unless a Resolution Event occurs.  Any motion seeking for a Claim to be temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a) must be filed by September 20, 2023.

**PLEASE TAKE FURTHER NOTICE THAT** you may elect to opt-out of the third-party release contained in the Plan and/or contribute certain direct claims against third parties to the Litigation Administrator to be pursued after confirmation of the Plan for the benefit of creditors entitled to receive Litigation Proceeds.  Attached hereto is an opt-out form (the "Opt-Out Notice") that you may use to make such elections.  This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt-out of the third-party release or to contribute your Contributed Claims to the Post-Effective Date Debtors.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at:  http://pacer.psc.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims, you should contact the Claims, Noticing, and Solicitation Agent in accordance with the instructions provided above.

---

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS, NOTICING, AND SOLICITATION AGENT.**

---

## OPTIONAL:  RELEASE OPT-OUT NOTICE

You are receiving this Opt-Out Notice because you are a Holder of a Claim that is not entitled to vote on the Plan.  Article IV of the Plan contains certain information regarding contribution of Contributed Claims.  Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the Contributed Claims, release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-Out Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan and/or to contribute your Contributed Claim(s) to the Post-Effective Date Debtors, you may submit your election by submitting the electronic version of your Opt-Out Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-OUT NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY September 20, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-OUT DEADLINE").**

<u>**Item 1**</u>.  **Amount of Claim or Interest.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, Class 10 State Regulatory Claims, and Class 14 Series B Preferred Interests in the following aggregate amount of claims or interests (insert amount in box below):

Class 8 Unsecured Loan Claims  _____

Class 9 General Unsecured Claims  _____

Class 10 State Regulatory Claims  _____

Class 14 Series B Preferred Interests  _____

<u>Item 2</u>.                    **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, <u>PROVIDED, HOWEVER</u>, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE. **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

☐    **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property**

under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "Released Parties" means, collectively:  (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Plan Administrator; (e) the Committee and each of its members; (f) any Litigation Administrator(s); (g) the Plan Sponsor and each of its members; (h) NewCo and its directors and officers; (i) the Retail Borrower Ad Hoc Group and each of its members; (j) the Earn Ad Hoc Group and each of its members, (k) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (l) the Class Claim Representatives; (m) the Initial Series B Preferred Holders and their Related Parties; (n) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (o) Christopher Ferraro; (p) the BRIC Parties; (q) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (r) any Releasing Party.  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "Releasing Parties" means, collectively:  (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)        Under the Plan, "Excluded Party" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

**Item 3.  Contributed Claims.**

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors. In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third parties associated with Celsius that are not released under the Plan.  However, it may be difficult and expensive for individual creditors to sue third parties for losses.  Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors.  By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors.  As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their claims.  In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries and will not be distributed solely to you**.  For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Post-Effective Date Debtors, which will allow the Litigation Administrator to potentially seek greater recoveries for the benefit of Holders of Claims.**

> ☐    **By checking this box, you elect to contribute your Contributed Claims to the Post-Effective Date Debtors.**

Definitions Related to Contributed Claims:

(1)        Under the Plan, "Contributed Claim" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided*, *however*, that Contributed Claims do not include

(i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(2)    Under the Plan, "Contributing Claimant" means any Holder of a Claim or Interest that elects through its Ballot, in accordance with the procedures set forth in <u>Article IX</u> of the Disclosure Statement, to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

**<u>Item 4</u>.    Certifications.**

By signing this Opt-Out Notice, the undersigned certifies:

(a)    that, as of the Record Date, either:  (i) the Entity is the Holder of the Claims set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims set forth in Item 1;

(b)    that the Holder has received a copy of the *Notice of (I) Non-Voting Status With Respect to Disputed Claims, (II) Opportunity to Opt Out of the Third-Party Releases, and (III) Opportunity to Contribute Claims* and that this Opt-Out Notice is submitted pursuant to the terms and conditions set forth therein;

(c)    that the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

(d)    that no other Opt-Out Notice with respect to the amount(s) of Claims identified in Item 1 have been submitted or, if any other Opt-Out Notices have been submitted with respect to such Claims, then any such earlier Opt-Out Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Signatory Name (if other than the Holder): | |
| Title (if other than the Holder): | |
| Address: | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION AND/OR ELECT TO CONTRIBUTE YOUR CLAIMS, PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-OUT NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-Out Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-Out Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-Out Notices will be accepted via electronic or online transmission. Opt-Out Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-Out Notice for each Opt-Out Notice you receive, as applicable.

New York, New York
Dated: August [●], 2023

|  |  |
|---|---|
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | Joshua A. Sussberg, P.C. |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:  (212) 446-4800 |
| | Facsimile:  (212) 446-4900 |
| | Email:  joshua.sussberg@kirkland.com |

  - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:   patrick.nash@kirkland.com
   ross.kwasteniet@kirkland.com
   chris.koenig@kirkland.com
   dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit 3

**General Unsecured Claims Ballot**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

**HOLDERS OF CLASS 9 GENERAL UNSECURED CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS GENERAL UNSECURED CLAIM HOLDER BALLOT**

**THIS GENERAL UNSECURED CLAIMS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 20, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE").**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE READ – YOUR RESPONSE IS REQUIRED BY <u>SEPTEMBER 20, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME</u>**

- You are receiving this ballot (this "<u>Ballot</u>") because you are a Holder Claims of above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), who filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

- The Debtors are seeking Bankruptcy Court approval for a chapter 11 plan and disclosure statement filed as part of their bankruptcy proceedings.

- Under the Plan, unless you take <u>additional action</u> as described in this Ballot, and <u>affirmatively opt out</u>, you will be deemed to release claims you may have against the Debtors' officers and directors (excluding certain members of the Debtors' former management team as further described in the Plan and Disclosure Statement), and certain creditors and other third parties.

- You have the right to opt out and to avoid releasing any claims against these third parties. To do so, you must check the opt out box on page five of this Ballot and return this Ballot to the Claims, Noticing, and Solicitation Agent by the Voting Deadline. The applicable definitions of Released Parties and Releasing Parties are also attached to this Ballot for your convenience of review. These defined terms control the scope of the release provisions.

- If you vote to accept the Plan in <u>Item 4</u> of this Ballot, you will be bound by the releases set forth in the Plan. If you vote to accept the Plan in <u>Item 4</u> of this Ballot **AND** you also elect to opt out of the Third-Party Releases set forth in <u>Item 5</u> of this Ballot, your vote to accept the Plan shall control and you shall be deemed a "Releasing Party" under the Plan.

The Debtors are soliciting votes to accept or reject the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"), attached as <u>Exhibit A</u> to the *Disclosure Statement for the Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>").[2] The Disclosure Statement provides you with information to make an informed decision as to whether you will vote to accept or reject the Plan. Votes are being solicited from Holders of Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, Withhold Claims, Unsecured Loan Claims, General Unsecured Claims, State Regulatory Claims, and Series B Preferred Interests (each, a "<u>Voting Class</u>" and collectively, the "<u>Voting Classes</u>").

**Please review the detailed instructions regarding how to complete and submit this General Unsecured Claims Ballot attached hereto as Annex A (the "<u>General Unsecured Claims Ballot Instructions</u>").** Once completed and returned in accordance with the attached General Unsecured Claims Ballot Instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in that Voting Class vote to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. After confirmation, the Plan will be binding on all Holders of Claims, among others.

You are receiving this General Unsecured Claims Ballot because you are the Holder of a Class 9 General Unsecured Claim as of <u>July 24, 2023</u> (the "<u>Voting Record Date</u>"). **For a detailed discussion of the treatment of General Unsecured Claims under the Plan, please read the Disclosure Statement.**

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

**TO HAVE YOUR VOTE COUNT AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, YOU MUST COMPLETE AND RETURN THIS GENERAL UNSECURED CLAIMS BALLOT SO THAT THE CLAIMS, NOTICING, AND SOLICITATION AGENT ACTUALLY RECEIVES IT ON OR BEFORE THE VOTING DEADLINE OF SEPTEMBER 20, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME.**

To vote, you <u>MUST</u>:  (a) fully complete this General Unsecured Claims Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 4 of this General Unsecured Claims Ballot; and (c) sign, date, and return this General Unsecured Claims Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

To submit your General Unsecured Claims Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Ballot.

To submit your Ballot via mail, please send to:

Celsius Ballot Processing<br>
c/o Stretto<br>
410 Exchange, Suite 100<br>
Irvine, CA 92602

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your General Unsecured Claim.  Your General Unsecured Claims have been placed in Class 9 under the Plan.

If you hold Claims or Interests in Voting Classes other than Class 9, you will receive multiple ballots.  Each ballot must be completed and returned by the Voting Deadline for the votes on the respective ballots to be counted.  Please note, however, that Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, and Withhold Claims (collectively, "<u>Account Holder Claims</u>"), are all consolidated on one ballot (the "<u>Account Holder Ballot</u>").  For the avoidance of doubt, if you are a Holder of an Account Holder Claim, you will receive the Account Holder Ballot in addition to this General Unsecured Claims Ballot, which must be completed and returned by the Voting Deadline for the votes on the Account Holder Ballot to be counted.

As further described in the Committee Letter, the Committee recommends that you vote to accept the Plan and contribute your third-party claims.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "<u>Solicitation Package</u>") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package materials, or if you need to obtain additional Solicitation Packages, you may obtain them by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-587 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re:  Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at:  http://pacer.psc.uscourts.gov.

This General Unsecured Claims Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making certain elections, and making certain certifications with respect to the Plan.  If you believe you have received this General Unsecured Claims Ballot in error, please contact the Claims, Noticing, and Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

If the Bankruptcy Court confirms the Plan, the terms of the Plan will bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan.  To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this General Unsecured Claims Ballot so that the Claims, Noticing, and Solicitation Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 20, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

<u>Item 1</u>.    **Amount of Class 9 Allowed General Unsecured Claims.**

If you did not file a Proof of Claim, the amount of your Class 9 General Unsecured Claim is the amount that the Debtors Scheduled on account of such Claim.  Conversely, if you filed a timely Proof of Claim (or filed an untimely Proof of Claim that has been Allowed as timely on or before the Voting Record Date), the amount of your Class 9 General Unsecured Claim for purposes of voting on the Plan will be the amount asserted in that Proof of Claim, unless such Proof of Claim is subject to a pending objection.  **For the avoidance of doubt, the amount of your Class 9 General Unsecured Claim for purposes of voting is listed immediately below.**

---

**Voting Amount.**  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 9 General Unsecured Claims:

$____[TO BE PREPRINTED BY STRETTO]_____

---

<u>Item 2</u>.    **Recovery.**

Pursuant to <u>Article III.B.9</u> of the Plan, each Holder of an Allowed General Unsecured Claim shall receive a combination of (a) Liquid Cryptocurrency or Cash, (b) Litigation Proceeds, and (c) NewCo Common Stock sufficient to provide a recovery of the same percentage as the Class 5 (General Earn Claim) recovery set forth in <u>Article III.M</u> of the Disclosure Statement.

In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount (or an equivalent amount of Cash), (b) the Backup MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights.

<u>Item 3</u>.  **Optional Election Regarding the Form of Distribution.**

Pursuant to <u>Article III.B.9</u> of the Plan, a Holder of a General Unsecured Claim may elect to receive Cash as opposed to Liquid Cryptocurrency as part of their recovery.

Please note that if you do not check the box in this **<u>Item 3</u>** the Debtors will provide Liquid Cryptocurrency at the time of distribution.

The undersigned, a Holder of a Class 9 General Unsecured Claim against the Debtors as set forth in the chart in **<u>Item 1</u>**, elects as follows:

☐ **Elects to receive Cash as part of the recovery for Class 9 General Unsecured Claims instead of Liquid Cryptocurrency.**

<u>Item 4</u>.  **Vote on Plan.**

You are eligible to vote to accept or reject the Plan.  You must check the applicable box below to "accept" or "reject" the Plan.  Please note that you are required to vote all of your Claims in any class either to accept or reject the Plan.  Please further note that the Plan contemplates both the NewCo Transaction and Orderly Wind Down.  Your vote to accept or reject the Plan will be counted as a vote to accept or reject both the NewCo Transaction and Orderly Wind Down, and you may not split your vote.  For a detailed description of the NewCo Transaction, please carefully read

<u>Article III.H</u> of the Disclosure Statement. For a detailed description of the Orderly Wind Down, please carefully read <u>Article III.I</u> of the Disclosure Statement.

***If you <u>do not</u> indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted in Class 9 General Unsecured Claims. If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.***

**Class 9 General Unsecured Claims Vote**. The Holder of the Class 9 General Unsecured Claims against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

| | |
|---|---|
| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |

Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 4 above.

<u>Item 5</u>. **Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.

IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASES CONTAINED IN <u>ARTICLE VIII.D.</u> OF THE PLAN. AS A HOLDER OF AN GENERAL UNSECURED CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING <u>AND</u> OPT OUT OF THE RELEASES CONTAINED IN THE PLAN. YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.

YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU DO NOT CHECK THE BOX BELOW TO OPT OUT OF GRANTING THE RELEASES. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE. IF YOU VOTED TO ACCEPT THE PLAN, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE. IF YOU VOTED TO ACCEPT THE PLAN AND YOU CHECKED THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS **ITEM 5**, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN. FOR THE AVOIDANCE OF ANY DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 4** OF THIS BALLOT, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN. IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 4** OF THIS BALLOT <u>AND</u> YOU ALSO ELECT TO OPT OUT OF THE THIRD PARTY-RELEASE SET FORTH IN THIS **ITEM 5**, YOUR VOTE TO ACCEPT THE PLAN SHALL CONTROL AND YOU SHALL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Release.** |

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.**

**Definitions Related to the Debtor Release and the Third-Party Release:**

(1)        Under the Plan, "Released Parties" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the

Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (n) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (o) Christopher Ferraro; (p) the BRIC Parties; (q) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (r) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; provided, further, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; provided, further, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "***Releasing Parties***" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)     Under the Plan, "***Excluded Party***" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity hereunder.

A schedule of the Released Parties, Exculpated Parties, and Excluded Parties is attached as **Annex B** to this General Unsecured Claims Ballot.

## Item 6.  Contributed Claims

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third-parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors.  In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third-parties associated with Celsius that are not released under the Plan. However, it may be difficult and expensive for individual creditors to sue third-parties for losses.  Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors.  By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors.  As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their

claims. In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries and will not be distributed solely to you**. For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Litigation Administrator, which may allow the Litigation Administrator to obtain greater recoveries for the benefit of Holders of Class 9 General Unsecured Claims.**

| | |
|---|---|
| ☐ | **By checking this box, you elect to contribute your Contributed Claims to the Litigation Administrator.** |

Definitions Related to Contributed Claims:

(1)     Under the Plan, "***Contributed Claim***" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation, of any of the Debtors' conduct prior to the Petition Date; *provided, however*, that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(1)     Under the Plan, "***Contributing Claimant***" means any Holder of a Claim or Interest that elects through its Ballot in accordance with the procedures set forth in Article IX of the Disclosure Statement to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

**Item 7. Certifications.**

1.     The undersigned is (a) the Holder of Class 9 General Unsecured Claims being voted or (b) the authorized signatory for an entity that is a Holder of such General Unsecured Claims entitled to vote to accept or reject the Plan on behalf of the Holder of such General Unsecured Claims;

2.     the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.     the undersigned has cast the same vote with respect to all of its General Unsecured Claims in connection with the Plan; and

4.     either (a) no other Ballot with respect to the same General Unsecured Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such General Unsecured Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

**Item 8.** **Ballot Completion Information.**

Name of Holder:    _____

    _____

Signature:    _____

Signatory Name (if other than the Holder):    _____

Title (if other than the Holder):    _____

Address:    _____

Email Address:    _____

Telephone Number:    _____

Date Completed:    _____

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan. This General Unsecured Claims Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS GENERAL UNSECURED CLAIMS BALLOT AND RETURN IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN. THIS GENERAL UNSECURED CLAIMS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE VIA THE ONLINE VOTING PORTAL AT HTTPS://CASE.STRETTO.COM/CELSIUS/BALLOTING.**

---

**THE VOTING DEADLINE IS SEPTEMBER 20, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS GENERAL UNSECURED CLAIMS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

| **Annex A** |
| **General Unsecured Claims** |

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement. Capitalized terms used in the General Unsecured Claims Ballot or in these instructions (the "<u>General Unsecured Claims Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the General Unsecured Claims Ballot.

   **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

   **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. This General Unsecured Claims Ballot contains voting options with respect to the Plan.

4. To vote, you <u>MUST</u>: (a) fully complete this General Unsecured Claims Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 4 of this General Unsecured Claims Ballot; and (c) sign, date, and return this General Unsecured Claims Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

   To submit your General Unsecured Claims Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your General Unsecured Claims Ballot.

   To submit your Ballot via mail, please send to:

   Celsius Ballot Processing
   c/o Stretto
   410 Exchange, Suite 100
   Irvine, CA 92602

   The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which General Unsecured Claims Ballots will be accepted via electronic or online transmission. General Unsecured Claims Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

   Creditors who cast a General Unsecured Claims Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also mail a hard copy General Unsecured Claims Ballot.

5. Any General Unsecured Claims Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine to accept such Ballot, in consultation with the Committee.

6. To vote, you <u>MUST</u> submit your completed General Unsecured Claims Ballot via the online voting portal so that it is **ACTUALLY RECEIVED** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline. The Voting Deadline is **September 20, 2023, at 4:00 p.m.** prevailing Eastern Time.

7. Any General Unsecured Claims Ballot received by the Claims, Noticing, and Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors

10

otherwise determine, in consultation with the Committee.  No General Unsecured Claims Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

8.  Delivery of a General Unsecured Claims Ballot reflecting your vote to the Claims, Noticing, and Solicitation Agent will be deemed to have occurred only when the Claims, Noticing, and Solicitation Agent actually receives the General Unsecured Claims Ballot.  In all cases, you should allow sufficient time to assure timely completion and submission of the General Unsecured Claims Ballot.

9.  If you deliver multiple General Unsecured Claims Ballots for your General Unsecured Claims to the Claims, Noticing, and Solicitation Agent, only the last properly executed General Unsecured Claims Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received General Unsecured Claims Ballot(s) for your General Unsecured Claims.

10. You must vote all of your General Unsecured Claims either to accept or reject the Plan and may not split your vote.  Furthermore, if a Holder has multiple Claims within Class 9, such claims shall be aggregated for the purpose of counting votes.

11. This General Unsecured Claims Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

12. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

13. You must SIGN AND DATE your General Unsecured Claims Ballot.[1]  A General Unsecured Claims Ballot properly submitted via the Claims, Noticing, and Solicitation Agent's online voting portal shall be deemed to contain an original signature of the Holder submitting such Ballot.  Please provide your name and mailing address in the space provided on this General Unsecured Claims Ballot if it is different from that set forth on the General Unsecured Claims Ballot or if no address is presented on the General Unsecured Claims Ballot.

14. If you have claims in other Voting Classes, you may receive more than one ballot coded for each such account for which your Claims are held.  Each ballot votes only your Claims indicated on that ballot.  Accordingly, complete and return each ballot you receive.

## PLEASE RETURN YOUR GENERAL UNSECURED CLAIMS BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS GENERAL UNSECURED CLAIMS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT:    (855) 423-1530 (TOLL-FREE) OR +1 (949) 669-587 (INTERNATIONAL) OR EMAIL CELSIUSINQUIRIES@STRETTO.COM AND REFERENCE "IN RE CELSIUS - SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

---

**THE VOTING DEADLINE IS SEPTEMBER 20, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS GENERAL UNSECURED CLAIMS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[1]  If you are signing a General Unsecured Claim Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims, Noticing, and Solicitation Agent, the Debtors, the Debtors' counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

**<u>Annex B</u>**

**Schedule of Released Parties, Exculpated Parties, and Excluded Parties**

*[To be filed at a later date]*

**<u>Exhibit B</u>**

**Redline**

**<u>Exhibit 1</u>**

**Solicitation and Voting Procedures**

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to ensure that any Holder of a Claim who has filed duplicative Proofs of Claim against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor.

(iii)    <u>Non-Voting Status Notices for Unclassified Creditors, Unimpaired Classes, Classes Deemed to Reject the Plan and Disputed Claims</u>

Certain Holders of Claims and Interests that are not entitled to vote because they are unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive the *Notice of (I) Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Opportunity to Opt out of the Third-Party Releases*, substantially in the form annexed as <u>Exhibit 2A</u> to the Disclosure Statement Order, and will also receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

Certain Holders of Claims ~~and Interests that are not classified pursuant to~~ or Interests who are not entitled to vote because they are deemed to reject the Plan under section 112~~3~~6~~(a)(1~~g) of the Bankruptcy Code will receive the *Notice of (I) ~~Non-Voting~~Non-Voting Status to Holders of ~~Unclassified Claims~~Impaired Claims or Interests Conclusively Deemed to Reject the Plan and (II) Opportunity to ~~Opt out of the Third-Party~~ Opt-in to the Third Party Releases,* substantially in the form annexed as <u>Exhibit 2B</u> to the Disclosure Statement Order and will ~~also~~ receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format. ~~The notice will instruct Holders who do not receive Solicitation Packages as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).~~

Certain Holders of Claims ~~or Interests who are not entitled to vote because they are deemed to reject the Plan under~~ and Interests that are not classified pursuant to section 112~~6~~3~~(g~~a)(1) of the Bankruptcy Code will receive the *Notice of (I) ~~Non-Voting~~Non-Voting Status to Holders of ~~Impaired Claims or Interests Conclusively Deemed to Reject the Plan~~Unclassified Claims and (II) Opportunity to ~~Opt-in to the Third Party~~Opt out of the Third-Party Releases*, substantially in the form annexed as <u>Exhibit 2C</u> to the Disclosure Statement Order and will <u>also</u> receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format. The notice will instruct Holders who do not receive Solicitation Packages as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

Certain Holders of Claims that are subject to a pending objection by the Debtors who are not entitled to vote any disputed portion of their Claim absent a Resolution Event (as defined herein) will receive the *Notice of (I) Non-Voting Status with Respect to Disputed Claims, (II) Opportunity to Opt out of the Third-Party Releases, and (III) Opportunity to Contribute Claims* substantially in the form annexed as <u>Exhibit 2D</u> to the Disclosure Statement Order and will receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

(or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that supersedes their Claims Scheduled by the Debtors, or that asserts a Claim that does not appear in the Schedules;

c. Account Holders who have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) for Claims that do not appear in the Schedules, solely to the extent that such Proofs of Claim have been temporarily allowed for voting purposes only pursuant to Bankruptcy Rule 3018(a); *provided* that the deadline to file any motions under Bankruptcy Rule 3018(a) shall be the Voting Deadline, which motions shall be resolved by the Court at or prior to the Confirmation Hearing;

d. Holders whose Claims arise: (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) from an order entered by the Court; or (iii) from a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed or the Claim was scheduled as contingent, unliquidated, or disputed; ~~and~~

e. Holders that do not have any Equitably Subordinated Claims; and

f. ~~e.~~ with respect to any Entity described in subparagraphs (a) through (d) above, who, on or before the Voting Record Date, has transferred such Entity's Claim to another Entity, the transferee of such Claim; *provided* that such transfer has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

For the avoidance of doubt, Holders of Claims and Interests described above with Claims and Interests in one or more of the Non-Voting Classes (*i.e.*, Holders of Claims and Interests in Classes 1, 3, 6B, 11, 12, 13, 15, 16, and 17) shall not be entitled to vote such Claim or Interest and any Ballot cast by a Holder on behalf of a Claim or Interest in a Non-Voting Class shall not be counted.

(ii) <u>Establishing Claim Amounts for Voting Purposes</u>.

(1) *Filed and Scheduled Claims.*

The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for any other purpose, including distributions under the Plan. Any amounts pre-populated on the Account Holder Ballot or other ballots by the Debtors through the Claims, Noticing, and Solicitation Agent are not binding for purposes of allowance and distribution. In tabulating votes, the amount of the Claim associated with each claimant's vote shall be determined as follows:

a.    ~~with respect to~~Eligible Holders of Account Holder Claims~~, shall vote in the~~ amount of their Scheduled Claim ~~amount~~[3] ~~will be dispositive for voting purposes only unless such Scheduled Claim is superseded by a timely Filed Proof of Claim, the applicable Account Holder opts out of the Class Claim Settlement by the deadline, **and**~~ the Filed Proof of Claim is ~~resolved through the occurrence of~~unless one or more of the following events occurs (a "Resolution Event"):

~~i. an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a). Holders shall have until the Voting Deadline to file a motion seeking entry of an order of the Court temporarily allowing such a claim for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a), which motions shall be resolved by the Court at or prior to the Confirmation Hearing;~~

i.    prior to the Voting Deadline, the Holder of an Account Holder Claim files a motion in the Court seeking entry of an order to temporarily allow timely filed Proof of Claim for purposes of voting on the Plan (a "3018 Motion"), *AND* the Court enters an order approving such 3018 Motion.  3018 Motions shall be resolved by the Court at or prior to the Confirmation hearing. If a Holder of an Account Holder Claim files a 3018 Motion, such Holder will be deemed to have opted out of the Class Claim Settlement;

ii.    an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code; or

iii.   a stipulation or other agreement is executed between the Holder of such Claim and the Debtors ~~resolving the objection and~~(either for voting purposes or for all purposes) allowing such Claim in an agreed upon amount.

b.    ~~with respect to all~~Eligible Holders of Claims in ~~the~~ Voting Classes other than Account Holder ~~Claims, the~~Voting Classes shall vote in the amount of their Scheduled Claim ~~amount will be dispositive for voting purposes~~ unless such Scheduled Claim is superseded by a timely filed Proof of Claim that is not subject to objection, in which case the amount asserted in such timely filed Proof of Claim shall control for voting purposes; *provided* that any amounts asserted on account of any interest accrued after the Petition Date will not be considered; *provided further* that any wholly unliquidated or unknown amount that is not the subject of a pending objection, based on a reasonable review of the Proof of Claim and

---

[3]   For the avoidance of doubt, the 5% increase to eligible Account Holder Claims provided under the Class Claim Settlement shall not modify the amount of any Claim for voting purposes.

(iii)    <u>Voting and Ballot Tabulation Procedures</u>.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right, in consultation with the Committee, to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, or order of the Bankruptcy Court:

a.      Holders of Claims generally must vote all of their Claims either to accept or reject the Plan and may not split any votes between Classes. For example, a Holder with a Class 5 General Earn Claim and a Class 7 Withhold Claim must vote both Claims to accept or reject the Plan. Furthermore, to the extent there are multiple Claims within the same Class, such Claims shall be aggregated within a Class for the purpose of counting votes. However, holders of Class 6A General Custody Claims that also hold claims in other Voting Classes may separately vote to accept the Plan for their Class 6A General Custody Claims and vote to reject the Plan for their other Claims in Voting Classes;

b.      the Account Holder Ballot contemplates that certain Holders can make the Convenience Claim Election and receive the treatment for Class 4 Convenience Claims, even though they do not hold Class 4 Convenience Claims. For the avoidance of doubt, this does not change the nature of their Claim for the purposes of Voting and as such their vote to accept or reject the Plan will be counted in the Voting Class in which the Claim was originally classified;

c.      in the event that a Holder with Claims in a Voting Class and in a Non-Voting Class has conflicting responses on the election to opt out of granting releases, the response provided on the Ballot will control;

d.      <u>a Holder with a Claim in Class 17 Equitably Subordinated Claims is not entitled to vote any Claims, regardless of whether such other Claims would be classified in a Voting Class;</u>

e.      d.  each Claim asserted in currency other than U.S. dollars (other than Cryptocurrency) shall be automatically deemed converted to the equivalent U.S. dollar value using the conversion rate for the applicable currency at prevailing market prices as of 8:00 a.m. (prevailing Eastern Time) on the Petition Date;

f.      e.  each Claim asserted in Cryptocurrency shall be calculated in United States Dollars as of the Petition Date utilizing the conversion rates provided in the Cryptocurrency Conversion Table attached to the Disclosure Statement as <u>Exhibit L</u>; *provided* that CEL Token shall be valued as provided in Article IV.B.2 of the Plan;

11

g.    f. except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted and actually received by the Claims, Noticing, and Solicitation Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors, in consultation with the Committee), the Debtors shall reject such Ballot as invalid and, therefore, shall not count such Ballot in connection with confirmation of the Plan;

h.    g. the Claims, Noticing, and Solicitation Agent will date-stamp all Ballots when received. All Ballots submitted via the Claims, Noticing, and Solicitation Agent's online voting portal will also be time-stamped upon receipt. The Claims, Noticing, and Solicitation Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Court;

i.    h. the Claims, Noticing, and Solicitation Agent shall tabulate Ballots on a Debtor-by-Debtor basis;

j.    i. the Debtors will file the Voting Report by **September 25, 2023 at 4:00 p.m.** prevailing Eastern Time. The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity, including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, or damaged (collectively, in each case, the "Irregular Ballots"). The Voting Report shall indicate the Debtors' decision, in consultation with the Committee, with regard to such Irregular Ballots;

k.    j. Ballots on account of Account Holder Claims may only be submitted via the Claims, Noticing, and Solicitation Agent's online voting portal. For Holders of Claims and Interests in the Voting Classes other than Account Holder Claims, the The method of delivery of Ballots to be sent to the Claims, Noticing, and Solicitation Agent is at the election and risk of each such Holder. Except as otherwise provided, a Ballot will be deemed delivered only when the Claims, Noticing, and Solicitation Agent actually receives the executed Ballot, and delivery of a Ballot to the Claims, Noticing, and Solicitation Agent by any means other than expressly provided in these Solicitation and Voting Procedures will not be valid;

l.    k. an executed Ballot is required to be submitted by the Entity submitting such Ballot;

m.    l. no Ballot should be sent to the Debtors, the Debtors' agents or representatives (other than the Claims, Noticing, and Solicitation Agent), the Debtors' financial or legal advisors, the Committee, the Committee's

agents or representatives, the Committee's financial or legal advisors, or the Committee's members and, if so sent, will not be counted;

n. ~~m.~~ if multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

o. ~~n.~~ a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

p. ~~o.~~ the Debtors, in consultation with the Committee, and subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

q. ~~p.~~ unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

r. ~~q.~~ in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

s. ~~r.~~ subject to any order of the Court, the Debtors, in consultation with the Committee, reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

t. ~~s.~~ if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

u. ~~t.~~ if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

v. ~~u.~~ the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:

13

    i.   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim;

    ii.   any Ballot cast by any Entity that does not hold a Claim in a Voting Class;

    iii.   any Ballot cast by any Entity that holds a Claim in Class 17 Equitably Subordinated Claims;

    iv.   ~~iii.~~ any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00);

    v.   ~~iv.~~ any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot submitted via the Claims, Noticing, and Solicitation Agent's online balloting portal shall be deemed an original signature);

    vi.   ~~v.~~ any Ballot not marked to accept or reject the Plan (which may be through making elections on the Account Holder Ballot) or marked both to accept and reject the Plan (unless it is an Account Holder Ballot and the only vote to accept the Plan is on behalf of a Class 6A General Custody Claim);

    vii.   ~~vi.~~ any Ballot transmitted by facsimile, e-mail, or other means not specifically approved pursuant to the Disclosure Statement Order or contemplated by these Solicitation and Voting Procedures;

    viii.   ~~vii.~~ any Ballot sent to any of the Debtors, the Debtors' agents or representatives other than the Claims, Noticing, and Solicitation Agent, the Debtors' financial or legal advisors, the Committee, the Committee's agents or representatives, the Committee's financial or legal advisors, or the Committee's members; and

    ix.   ~~viii.~~ any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

w.   ~~v.~~ after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, in consultation with the Committee, or further order of the Court;

x.   ~~w.~~ the Debtors, in consultation with the Committee, are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes, with such stipulations to be disclosed on the Voting Report; and

y.    x.  where any portion of a single Claim has been transferred to a transferee, all holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other solicitation and voting procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (A) a Ballot, (B) a group of Ballots within a Voting Class received from a single creditor, or (C) a group of Ballots received from the various Holders of multiple portions of a single Claim or partially reject and partially accept the Plan, such Ballots shall not be counted.

5.    **Amendments to the Plan and Solicitation and Voting Procedures.**

The Debtors, in consultation with the Committee, reserve the right to make non-substantive or immaterial changes to the Plan, Disclosure Statement, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Committee Letter, these Solicitation and Voting Procedures, Plan Supplement Notice, Rejection Notice, Assumption Notice, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the any materials in the Solicitation Packages before distribution.

*    *    *    *    *

15

**<u>Exhibit 2A</u>**

**Unimpaired Non-Voting Status Notice**

Item 2.                   Important information regarding the Third-Party Release.

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, PROVIDED, HOWEVER, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.   IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES.  THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN UNLESS YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE.  **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

☐   **By checking this box, you elect to opt OUT of the Third-Party Releases.**

Article VIII.D of the Plan contains the following Third-Party Release:

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal**

## Exhibit 2B

**Impaired Non-Voting Status Notice**

**OPTIONAL:  RELEASE OPT-IN NOTICE**

You are receiving this ~~Opt Out~~Opt-In Notice because you are a Holder of a Claim that is not entitled to vote on the Plan.  Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the ~~Opt Out~~Opt-In Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt ~~out of~~in to the Third-Party Release set forth in Article VIII.D of the Plan you may submit your election by submitting the electronic version of your ~~Opt Out~~Opt-In Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-~~OUT~~IN NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY September 20, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-~~OUT~~IN DEADLINE").**

<u>Item 1</u>.  **Amount of Claim.**

The undersigned hereby certifies that, as of July 24, 2023 (the "<u>Voting Record Date</u>"), the undersigned was the Holder of one or more of unclassified Claims in the following aggregate amount of claims (insert amount in box below):

| | |
|---|---|
| De Minimis Claim | _____ |
| Other Interests | _____ |
| Section 510(b) Claims | _____ |
| Equitably Subordinated Claims | _____ |
| Other Unclassified Claims | |

<u>Item 2.</u>                 **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, <u>PROVIDED, HOWEVER, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY</u>.  IF YOU WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST OPT IN TO THE THIRD-PARTY RELEASES.

YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>IF</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-IN NOTICE BY THE OPT-IN DEADLINE.  **YOUR DECISION TO COMPLETE AND RETURN THE OPT-IN NOTICE IS ENTIRELY VOLUNTARY**.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT IN TO THE THIRD-PARTY RELEASE.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>IN</u> to the Third-Party Releases.** |

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Signatory Name (if other than the Holder): | |
| Title (if other than the | |
| Address: | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF YOU WISH TO MAKE THE OPT-OUTIN ELECTION PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-IN NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-In Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-In Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-In Notices will be accepted via electronic or online transmission. Opt-In Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-In Notice for each Opt-In Notice you receive, as applicable.

*        *        *

**<u>Exhibit 2C</u>**

**Unclassified Non-Voting Status Notice**

<u>Item 2.</u>           **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES <u>PROVIDED, HOWEVER, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY</u>.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES.  THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE.  **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.** |

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the**

## **Exhibit 2D**

**Notice to Disputed Claim Holders**

<u>Item 2</u>.                **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, <u>PROVIDED, HOWEVER, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY</u>.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.   IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE.  **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

---

☐    **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.**

---

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal**

## **Exhibit 3**

**General Unsecured Claims Ballot**

- **above-captioned debtors and debtors in possession (collectively, the "Debtors"), who filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").**
- **The Debtors are seeking Bankruptcy Court approval for a chapter 11 plan and disclosure statement filed as part of their bankruptcy proceedings.**
- **Under the Plan, unless you take additional action as described in this Ballot, and affirmatively opt out, you will be deemed to release claims you may have against the Debtors' officers and directors (excluding certain members of the Debtors' former management team as further described in the Plan and Disclosure Statement), and certain creditors and other third parties.**
- **You have the right to opt out and to avoid releasing any claims against these third parties. To do so, you must check the opt out box on page five of this Ballot and return this Ballot to the Claims, Noticing, and Solicitation Agent by the Voting Deadline. The applicable definitions of Released Parties and Releasing Parties are also attached to this Ballot for your convenience of review. These defined terms control the scope of the release provisions.**
- **If you vote to accept the Plan in Item 3~~4~~ of this Ballot, you will be bound by the releases set forth in the Plan. If you vote to accept the Plan in Item 3~~4~~ of this Ballot AND you also elect to opt out of the Third-Party Releases set forth in Item 4~~5~~ of this Ballot, your vote to accept the Plan shall control and you shall be deemed a "Releasing Party" under the Plan.**

The Debtors are soliciting votes to accept or reject the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement for the Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2] The Disclosure Statement provides you with information to make an informed decision as to whether you vote to accept or reject the Plan. Votes are being solicited from Holders of Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, Withhold Claims, Unsecured Loan Claims, General Unsecured Claims, State Regulatory Claims, and Series B Preferred Interests (each, a "Voting Class" and collectively, the "Voting Classes").

**Please review the detailed instructions regarding how to complete and submit this General Unsecured Claims Ballot attached hereto as Annex A (the "General Unsecured Claims Ballot Instructions").** Once completed and returned in accordance with the attached General Unsecured Claims Ballot Instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in that Voting Class vote to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. After confirmation, the Plan will be binding on all Holders of Claims, among others.

You are receiving this General Unsecured Claims Ballot because you are the Holder of a Class 9 General Unsecured Claim as of **July 24, 2023** (the "Voting Record Date"). **For a detailed discussion of the treatment of General Unsecured Claims under the Plan, please read the Disclosure Statement.**

**TO HAVE YOUR VOTE COUNT AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, YOU MUST COMPLETE AND RETURN THIS GENERAL UNSECURED CLAIMS BALLOT SO THAT THE CLAIMS, NOTICING, AND SOLICITATION AGENT ACTUALLY RECEIVES IT ON OR BEFORE THE VOTING DEADLINE OF SEPTEMBER 20, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME.**

To vote, you MUST: (a) fully complete this General Unsecured Claims Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3~~4~~ of this General Unsecured Claims Ballot; and (c) sign, date, and return this

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

*[Link-to-previous setting changed from off in original to on in modified.]*

2

General Unsecured Claim for purposes of voting on the Plan will be the amount asserted in that Proof of Claim, unless such Proof of Claim is subject to a pending objection. **For the avoidance of doubt, the amount of your Class 9 General Unsecured Claim for purposes of voting is listed immediately below.**

<table>
<tr><td>

**Voting Amount.** The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 9 General Unsecured Claims:

<br>

$____[TO BE PREPRINTED BY STRETTO]_____

</td></tr>
</table>

Item 2.    Recovery.

Pursuant to Article III.B.9 of the Plan, each Holder of an Allowed General Unsecured Claim shall receive a combination of (a) Liquid Cryptocurrency or Cash, (b) Litigation Proceeds, and (c) NewCo Common Stock sufficient to provide a recovery of the same percentage as the Class 5 (General Earn Claim) recovery set forth in Article III.M of the Disclosure Statement.

In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount (or an equivalent amount of Cash), (b) the Backup MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights.

**Item 3.  Optional Election Regarding the Form of Distribution.**

Pursuant to Article III.B.9 of the Plan, a Holder of a General Unsecured Claim may elect to receive Cash as opposed to Liquid Cryptocurrency as part of their recovery.

Please note that if you do not check the box in this **Item 3** the Debtors will provide Liquid Cryptocurrency at the time of distribution.

The undersigned, a Holder of a Class 9 General Unsecured Claim against the Debtors as set forth in the chart in **Item 1**, elects as follows:

☐ **Elects to receive Cash as part of the recovery for Class 9 General Unsecured Claims instead of Liquid Cryptocurrency.**

Item 34.    Vote on Plan.

You are eligible to vote to accept or reject the Plan. You must check the applicable box below to "accept" or "reject" the Plan. Please note that you are required to vote all of your Claims in any class either to accept or reject the Plan. Please further note that the Plan contemplates both the NewCo Transaction and Orderly Wind Down. Your vote to accept or reject the Plan will be counted as a vote to accept or reject both the NewCo Transaction and Orderly Wind Down, and you may not split your vote. For a detailed description of the NewCo Transaction, please carefully read Article III.H of the Disclosure Statement. For a detailed description of the Orderly Wind Down, please carefully read Article III.I of the Disclosure Statement.

*If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted in Class 9 General Unsecured Claims. If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.*

*[Link-to-previous setting changed from off in original to on in modified.].*

**Class 9 General Unsecured Claims Vote**.  The Holder of the Class 9 General Unsecured Claims against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

| | |
|---|---|
| ☐  **ACCEPT** (vote FOR) the Plan | ☐  **REJECT** (vote AGAINST) the Plan |

Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item <u>3</u><u>4</u> above.

<u>Item</u> <u>4</u><u>5</u>.  **Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES.  THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.

IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASES CONTAINED IN <u>ARTICLE VIII.D.</u> OF THE PLAN.  AS A HOLDER OF AN GENERAL UNSECURED CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING <u>AND</u> OPT OUT OF THE RELEASES CONTAINED IN THE PLAN.  YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.

YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU DO NOT CHECK THE BOX BELOW TO OPT OUT OF GRANTING THE RELEASES.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN, YOU MAY NOT OUT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN AND YOU CHECKED THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS **ITEM** **4****5**, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.  FOR THE AVOIDANCE OF ANY DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM** **3****4** OF THIS BALLOT, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN.  IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM** **3****4** OF THIS BALLOT <u>AND</u> YOU ALSO ELECT TO OPT OUT OF THE THIRD PARTY-RELEASE SET FORTH IN THIS **ITEM** **4****5**, YOUR VOTE TO ACCEPT THE PLAN SHALL CONTROL AND YOU SHALL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Release.** |

<u>**Article VIII.D**</u> **of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or**

*[Link-to-previous setting changed from off in original to on in modified.].*

identified in the Schedule of Released and Exculpated Parties; and (r) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; provided, further, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; provided, further, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)    Under the Plan, "*Releasing Parties*" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)    Under the Plan, "*Excluded Party*" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Related Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity hereunder.

A schedule of the Released Parties, Exculpated Parties, and Excluded Parties is attached as **Annex B** to this General Unsecured Claims Ballot.

**Item 56.  Contributed Claims**

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third-parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors.  In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third-parties associated with Celsius that are not released under the Plan.  However, it may be difficult and expensive for individual creditors to sue third-parties for losses.  Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors.  By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors.  As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their claims.  In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries and will not be distributed solely to you.**  For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

*[Link-to-previous setting changed from off in original to on in modified.]*

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Litigation Administrator, which may allow the Litigation Administrator to obtain greater recoveries for the benefit of Holders of Class 9 General Unsecured Claims.**

☐    **By checking this box, you elect to contribute your Contributed Claims to the Litigation Administrator.**

Definitions Related to Contributed Claims:

(1)    Under the Plan, "*Contributed Claim*" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided, however,* that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(1)    Under the Plan, "*Contributing Claimant*" means any Holder of a Claim or Interest that elects through its Ballot in accordance with the procedures set forth in Article IX of the Disclosure Statement to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

**Item 67. Certifications.**

1.    The undersigned is (a) the Holder of Class 9 General Unsecured Claims being voted or (b) the authorized signatory for an entity that is a Holder of such General Unsecured Claims entitled to vote to accept or reject the Plan on behalf of the Holder of such General Unsecured Claims;

2.    the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.    the undersigned has cast the same vote with respect to all of its General Unsecured Claims in connection with the Plan; and

4.    either (a) no other Ballot with respect to the same General Unsecured Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such General Unsecured Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

**Item 78. Ballot Completion Information.**

Name of Holder: _____

_____

*[Link-to-previous setting changed from off in original to on in modified.]*

| **Annex A** |
|---|
| **General Unsecured Claims** |

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the General Unsecured Claims Ballot or in these instructions (the "<u>General Unsecured Claims Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the General Unsecured Claims Ballot.

    **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

    **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This General Unsecured Claims Ballot contains voting options with respect to the Plan.

4.  To vote, you <u>MUST</u>:  (a) fully complete this General Unsecured Claims Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3~~4~~ of this General Unsecured Claims Ballot; and (c) sign, date, and return this General Unsecured Claims Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

    To submit your General Unsecured Claims Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your General Unsecured Claims Ballot.

    To submit your Ballot via mail, please send to:

    Celsius Ballot Processing
    c/o Stretto
    410 Exchange, Suite 100
    Irvine, CA 92602

    The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which General Unsecured Claims Ballots will be accepted via electronic or online transmission.  General Unsecured Claims Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

    Creditors who cast a General Unsecured Claims Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also mail a hard copy General Unsecured Claims Ballot.

5.  Any General Unsecured Claims Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine to accept such Ballot, in consultation with the Committee.

6.  To vote, you <u>MUST</u> submit your completed General Unsecured Claims Ballot via the online voting portal so that it is **<u>ACTUALLY RECEIVED</u>** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline.  The Voting Deadline is **<u>September 20, 2023, at 4:00 p.m.</u>** prevailing Eastern Time.