AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**THIRD INTERIM FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS**
**SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND**
**DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR**
**THE PERIOD MARCH 1, 2023 THROUGH AND INCLUDING JUNE 30, 2023**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("<u>Akin</u>") |
| Authorized to Provide Services to: | Debtors and Debtors in Possession |
| Petition Date: | July 13, 2022 |
| Retention Date: | September 16, 2022, *nunc pro tunc* to July 13, 2022 |
| Prior Applications: | 2 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | March 1, 2023 through and including June 30, 2023 (the "<u>Compensation Period</u>") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $3,276,242.10 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $91,832.77 |
| Total Compensation and Expenses Requested for the Compensation Period: | $3,368,074.87 |

| Summary of Fees, Professionals, Rates and Budget in this Application | |
|---|---|
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order[2] But Not Yet Allowed (80% of Fees): | $1,750,811.40 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses): | $73,117.35 |

---

[2] "<u>Interim Compensation Order</u>" means that certain *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief, dated December 19, 2022* [Docket No. 1745].

| | |
|---|---|
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $1,823,928.75 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $1,544,146.12 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $192,217.25[3] |

| **Summary of Fees and Expenses Sought in this Application** | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $1,262.33 |
| Blended Rate in this Application for All Timekeepers: | $1,221.52 |
| Number of Timekeepers Included in this Application: | 22 (19 attorneys; 3 paraprofessionals/non-legal/staff attorney) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 8 |
| Increase in Rates Since Date of Retention: | 1[4] |
| Interim or Final Application: | Interim |

---

[3]    Akin agreed to bill its time at 90% of its standard rates.  In addition, Akin voluntarily reduced its fees and expenses prior to the filing of each applicable Monthly Fee Statement (defined herein).  The aggregated amounts of such voluntary reductions were: (i) $190,422.45 for fee reductions and (ii) $1,794.80 for expense reductions.

[4]    In the Akin Retention Application, Akin disclosed that its hourly rates are subject to periodic adjustments (typically on January 1st of each year).  Pursuant to the Initial Retention Order (defined herein), on December 15, 2022, Akin filed a notice of rate increase [Docket No. 1708], disclosing Akin's rate increases that went into effect on January 1, 2023.

## SUMMARY OF MONTHLY FEE STATEMENTS

| FEE STATEMENT | DATE FILED | DOCKET NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|---|
| Eighth Monthly Fee Statement | 5/18/2023 | 2680 | 3/1/2023 – 3/31/2023 | $380,950.20 (80% of $476,187.75) | $62,075.32 | $380,950.20 | $62,075.32 |
| Ninth Monthly Fee Statement | 6/30/2023 | 2947 | 4/1/2023 – 4/30/2023 | $588,639.24 (80% of $735,799.05) | $3,288.92 | $588,639.24 | $3,288.92 |
| Tenth Monthly Fee Statement | 7/24/2023 | 3078 | 5/1/2023 – 5/31/2023 | $781,221.96 (80% of $976,527.45) | $7,753.11 | $781,221.96 | $7,753.11 |
| Eleventh Monthly Fee Statement | 8/9/2023 | 3242 | 6/1/2023 – 6/30/2023 | $870,182.28 (80% of $1,087,727.85) | $18,715.42 | $0.00 Objections due 8/24/2023, 12:00 p.m. ET | $0.00 Objections due 8/24/2023, 12:00 p.m. ET |

Summary of Any Objections to Monthly Fee Statements:  None.

Compensation and Expenses Sought in This Application Not Yet Paid: $1,544,146.12

## COMPENSATION BY PROFESSIONAL
## MARCH 1, 2023 THROUGH AND INCLUDING JUNE 30, 2023

| Name of Professional | Position | Department | Year Admitted | 2023 Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Dean L. Chapman | Partner | Litigation | 2009 | $1,552.50 | 309.10 | $479,877.75 |
| Mitchell P. Hurley | Partner | Litigation | 1997 | $1,795.50 | 498.30 | $894,697.65 |
| Elizabeth Scott | Partner | Litigation | 2007 | $1,278.00 | 251.00 | $320,778.00 |
| Rosa A. Testani | Partner | Corporate | 1989 | $1,795.50 | 8.10 | $14,543.55 |
| Justin Williams | Partner | Litigation | 1993 | $1,507.50 | 25.70 | $38,742.75 |
| Sarah K. Withers | Partner | Corporate | 2014 | $1,224.00 | 10.20 | $12,484.80 |
| Joanna F. Newdeck | Senior Counsel | Financial Restructuring | 2005 | $1,350.00 | 119.60 | $161,460.00 |
| Heather L. Peckham | Senior Counsel | Litigation | 2000 | $1,111.50 | 56.40 | $62,688.60 |
| Braden Allman | Counsel | Litigation | 2018 | $1,008.00 | 8.80 | $8,870.40 |
| Jeffrey A. Latov | Counsel | Litigation | 2017 | $1,188.00 | 303.90 | $361,033.20 |
| Nicholas R. Lombardi | Counsel | Litigation | 2018 | $1,188.00 | 248.50 | $295,218.00 |
| Jessica Mannon | Counsel | Litigation | 2017 | $1,008.00 | 226.10 | $227,908.80 |
| Jasmine Alexander | Associate | Litigation | 2022 | $711.00 | 11.20 | $7,963.20 |
| Fatima M. Bishtwai | Associate | Litigation | 2021 | $864.00 | 5.40 | $4,665.60 |
| Daniel A. Chasin | Associate | Litigation | 2023 | $711.00 | 7.40 | $5,261.40 |
| Jillian R. Kulikowski | Associate | Litigation | 2019 | $1,012.50 | 13.40 | $13,567.50 |
| Jane M. Mahan | Associate | Litigation | 2022 | $661.50 | 7.60 | $5,027.40 |
| Michael Stanley | Associate | Litigation | 2022 | $661.50 | 347.10 | $229,606.65 |
| Kaila Zaharis | Associate | Financial Restructuring | 2022 | $787.50 | 88.10 | $69,378.75 |
| Russell J. Collins | Staff Attorney | Litigation | 1998 | $522.00 | 11.50 | $6,003.00 |

| Name of Professional | Position | Department | Year Admitted | 2023 Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Julie Hunter | Project Coordinator | E-Discovery | N/A | $409.50 | 15.60 | $6,388.20 |
| Amy Laaraj | Paralegal | Financial Restructuring | N/A | $459.00 | 109.10 | $50,076.90 |

## TOTAL FEES
## MARCH 1, 2023 THROUGH AND INCLUDING JUNE 30, 2023

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,597.54 | 1,102.40 | $1,761,124.50 |
| Senior Counsel / Counsel | $1,159.74 | 963.30 | $1,117,179.00 |
| Associates | $698.61 | 480.20 | $335,470.50 |
| Paraprofessionals and Other Non-Legal Staff | $458.65 | 136.20 | $62,468.10 |
| **Blended Attorney Rate** | **$1,262.33** | | |
| **Blended Rate for All Timekeepers** | **$1,221.52** | | |
| **Total Fees Incurred** | | **2,682.10** | **$3,276,242.10** |

## COMPENSATION BY PROJECT CATEGORY
### MARCH 1, 2023 THROUGH AND INCLUDING JUNE 30, 2023

| Task Code | Matter | Hours | Value ($) |
|---|---|---|---|
| 2 | Akin Gump Monthly and Interim Fee Applications | 199.00 | $218,437.20 |
| 3 | Retention of Professionals | 55.40 | $68,207.40 |
| 4 | Case Administration | 58.10 | $41,869.80 |
| 5 | Stone/KeyFi | 803.30 | $944,268.75 |
| 6 | Prime Trust | 77.90 | $96,953.85 |
| 8 | Hearings | 13.70 | $17,846.55 |
| 9 | Rhodium | 860.90 | $1,111,659.30 |
| 10 | Voyager Digital | 100.50 | $127,543.05 |
| 11 | Travel Time | 0.50 | $897.75 |
| 12 | BlockFi | 39.20 | $34,999.65 |
| 13 | StakeHound | 473.60 | $613,558.80 |
| **TOTAL:** | | **2,682.10** | **$3,276,242.10** |

**EXPENSE SUMMARY**

**MARCH 1, 2023 THROUGH AND INCLUDING JUNE 30, 2023**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $1,351.48 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $24,439.69 |
| Computerized Legal Research - Courtlink - In Contract 50% Discount | $719.09 |
| Computerized Legal Research - Other | $71.40 |
| Corporate Service Fees | $1,181.57 |
| Color Copy | $46.20 |
| Courier Service / Messenger Services - Off Site | $775.62 |
| Duplication - In House | $34.20 |
| Meals - Overtime | $156.05 |
| Professional Fees - Legal | $54,678.00 |
| Professional Fees - Process Server | $997.40 |
| Research | $326.40 |
| Transcripts | $6,356.89 |
| Local Transportation - Overtime | $521.16 |
| Travel - Ground Transportation | $177.62 |
| **Total:** | **$91,832.77** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Special Litigation Counsel*
*to the Debtors and the Debtors in Possession*

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**THIRD INTERIM FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS
SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD MARCH 1, 2023 THROUGH AND INCLUDING JUNE 30, 2023**

Akin Gump Strauss Hauer & Feld LLP ("Akin"), special litigation counsel to the debtors

and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(the "Chapter 11 Cases"), hereby submits its third application (the "Application"), pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the

Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), requesting

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

interim allowance of compensation for services rendered to the Debtors for the period March 1, 2023 through and including June 30, 2023 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith.   In support of this Application, Akin submits the declaration of Mitchell P. Hurley, a partner at Akin, which declaration is attached hereto as **Exhibit A** and incorporated by reference into this Application.  In further support of this Application, Akin respectfully represents as follows:

## INTRODUCTION

1.      By this Application, Akin seeks (i) interim allowance of compensation for the professional services rendered by Akin during the Compensation Period in the amount of $3,276,242.10, representing 2,545.90 hours of professional services and 136.20 hours of paraprofessional and other non-legal services and (ii) reimbursement of actual and necessary expenses incurred by Akin during the Compensation Period in the amount of $91,832.77.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *First Amended Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief, dated December 19, 2022* [Docket No. 1745] (the "Interim Compensation Order"), the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York* (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the *United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      In accordance with Local Rule 2016-1, the Debtors have been given the opportunity to review this Application and have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-1.

## BACKGROUND

**A.      The Debtors' Chapter 11 Cases**

*7.*      On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these Chapter 11 Cases is set forth in certain declarations the ("Declarations") filed at the outset of these cases, including the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22].[2]

8.      On August 17, 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order (i) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (ii) Granting Related Relief* [Docket No. 521].

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Declarations or the Application (defined herein), as applicable.

8

**B.      Retention of Akin as Special Litigation Counsel**

9.      On August 8, 2022, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 392] (the "Initial Retention Application").  On August 31, 2022, Akin filed the supplemental declaration of Mitchell P. Hurley in further support of the Initial Retention Application [Docket No. 649].

10.      On September 16, 2022, the Court entered the *Order Authorizing the Retention and Employment Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 843] (the "Initial Retention Order").

11.      On November 11, 2022, the Debtors filed and served the *Notice of Proposed Additional Services, Effective as of October 14, 2022, With Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1330] (the "Notice of Additional Services") in accordance with the Initial Retention Order.  On November 30, 2022, the Court entered an order approving the Notice of Additional Services [Docket No. 1521] (the "Additional Services Order"). On January 10, 2023, at the request of the United States Trustee, the Debtors filed and served the *Supplemental Declaration of Mitchell Hurley Regarding the Notice of Proposed Additional Services, Effective as of October 14, 2022, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP, as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 1847] in support of the Notice of Additional Services.

12.      On March 31, 2023, the Debtors filed and served the *Second Notice of Proposed Additional Services, Effective as March 15, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and*

*Debtors in Possession* [Docket No. 2290] (the "Second Notice of Additional Services") in accordance with the Initial Retention Application (together with the Initial Retention Application and the Notice of Additional Services, the "Akin Retention Application"). On April 7, 2023, the Court entered an order approving the Second Notice of Additional Services [Docket No. 2385] (the "Second Additional Services Order").

13. On June 8, 2023, the Debtors filed and served the *Third Notice of Proposed Additional Services, Effective as of April 24, 2023, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession* [Docket No. 2782] (the "Third Notice of Additional Services") in accordance with the Initial Retention Application (together with the Initial Retention Application, the Notice of Additional Services and the Second Notice of Additional Services, the "Akin Retention Application"). On July 10, 2023, the Court entered an order approving the Third Notice of Additional Services [Docket No. 2987] (together with the Initial Retention Order, the Additional Services Order and the Second Additional Services Order, the "Retention Order").

14. The Retention Order authorizes the Debtors to retain and employ Akin as its special litigation counsel in the Chapter 11 Cases in accordance with Akin's normal hourly rates – subject to an agreed-upon 10% discount on its standard billing rates for all timekeepers – and disbursement policies, as of the Petition Date, as contemplated by the Akin Retention Application. Specifically, the Retention Order authorizes Akin to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses. This Application is Akin's third interim application for compensation and reimbursement of expenses.

**C.    Prior Fee Statements Filed During the Compensation Period**

15. On December 15, 2022, Akin filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of*

*Expenses for the Period July 13, 2022 Through and Including October 31, 2022* [Docket No. 1707] (the "First Interim Fee Application").  Pursuant to the First Interim Fee Application, Akin requested interim allowance of fees in the amount of $2,322,174.60 and reimbursement of expenses in the amount of $107,347.68 for the period of July 13, 2022 through and including October 31, 2022.  On January 4, 2023, *pro se* creditor Daniel A. Frishberg filed an omnibus objection (the "First Objection") [Docket No. 1823] to the interim fee applications of substantially all of the professionals whose fees are paid for by the Debtors' estates, including the Akin First Interim Fee Application, though Mr. Frishberg did not identify any objection specific to Akin's fees.  In addition, on April 7, 2023, the fee examiner appointed in these Chapter 11 Cases (the "Fee Examiner") filed *Fee Examiner's Summary Report on Fee Review Process and First Interim Fee Applications Scheduled for Uncontested Hearing on April 18, 2023* (the "Fee Examiner First Report") [Docket No. 2387].  As noted in the Fee Examiner First Report, Akin agreed to certain reductions in connection with the fees ($58,326.86) and expenses ($33,386.46) requested in the First Interim Fee Application.  Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.  A hearing on the First Interim Fee Application was held on April 18, 2023 and, on April 24, 2023, an order entered approving the First Interim Fee Application was entered [Docket No. 2523].

16.     On April 14, 2023, Akin filed and served the *Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period November 1, 2022 Through and Including February 28, 2023* [Docket No. 2446] (the "Second Interim Fee Application").  Pursuant to the Second Interim Fee Application, Akin requested interim allowance of fees in the amount of $ 4,884,132.60 and reimbursement of expenses in the amount $61,571.97.68 for the period of November 1, 2022 through and including February 28, 2023.  On July 7, 2023, the Fee Examiner filed the *Fee*

*Examiner's Summary Report on Fee Review Process and Second Interim Fee Applications Scheduled for Uncontested Hearing on July 18, 2023* (the "Fee Examiner Second Report") [Docket No. 2975].  As noted in the Fee Examiner Second Report, Akin agreed to certain reductions in connection with the fees ($71,248.19) and expenses ($1,489.58) requested in the Second Interim Fee Application.  Accordingly, all issues raised by the Fee Examiner with respect thereto have been resolved.  A hearing on the Second Interim Fee Application was held on July 18, 2023 and, on July 19, 2023, an order entered approving the Second Interim Fee Application was entered [Docket No. 3055].

17.    On May 18, 2023, Akin filed and served the *Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of March 1 through March 31, 2023* [Docket No. 2680] (the "Eighth Monthly Fee Statement"),[3] pursuant to which Akin sought payment of (i) $380,950.20 (80% of $476,187.75) as compensation for professional services rendered and (ii) $62,075.32 for reimbursement of expenses.  Akin did not receive any objections to the Eighth Monthly Fee Statement and received payment in respect thereof on June 13, 2023.

18.    On June 30, 2023, Akin filed and served the *Ninth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of April 1, 2023 Through April 30, 2023* [Docket No. 2947] (the "Ninth Monthly Fee Statement"),[4] pursuant to which Akin sought payment of (i) $588,639.24 (80% of $735,799.05) as compensation for professional services rendered and (ii) $3,288.92 for reimbursement of expenses.  Akin did not receive any

---

[3]    A copy of the Eighth Monthly Fee Statement can be accessed at:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174905182380000000182.pdf.
[4]    A copy of the Ninth Monthly Fee Statement can be accessed at:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174906302380000000126.pdf.

objections to the Ninth Monthly Fee Statement and received payment in respect thereof on July 21, 2023.

19. On July 24, 2023, Akin filed and served the *Tenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of May 1, 2023 Through May 31, 2023* [Docket No. 3078] (the "Tenth Monthly Fee Statement") pursuant to which Akin sought payment of (i) $781,221.96 (80% of $976,527.45)[5] as compensation for professional services rendered and (ii) $7,753.11 for reimbursement of expenses. Akin did not receive any objections to the Tenth Monthly Fee Statement and received payment in respect thereof on August 10, 2023.

20. On August 9, 2023, Akin filed and served the *Eleventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the Period of June 1, 2023 Through June 30, 2023* [Docket No. 3242] (the "Eleventh Monthly Fee Statement" and, together with the Eighth Monthly Fee Statement, Ninth Monthly Fee Statement and the Tenth Monthly Fee Statement, the "Monthly Fee Statements"),[6] pursuant to which Akin sought payment of (i) $870,182.28 (80% of $1,087,727.85) as compensation for professional services rendered and (ii) $18,715.42 for reimbursement of expenses. As of the date of this Application, Akin has not received any objections to the Eleventh Monthly Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

21. By this Application, Akin requests allowance of interim compensation for professional services rendered during the Compensation Period in the amount of $3,276,242.10

---

[5] A copy of the Tenth Monthly Fee Statement can be accessed at:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174907242380000000162.pdf.
[6] A copy of the Eleventh Monthly Fee Statement can be accessed at:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174908092380000000218.pdf.

and expense reimbursements of $91,832.77.[7]  During the Compensation Period, Akin attorneys and paraprofessionals expended a total of 2,682.10 hours for which compensation is sought.

22.     The fees charged by Akin in the Chapter 11 Cases are billed in accordance with Akin's existing billing rates and procedures in effect during the Compensation Period.  The rates Akin charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters, subject to an agreed-upon 10% discount on its standard rates for all timekeepers.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

23.     Akin maintains computerized records of the time spent by all Akin professionals and paraprofessionals in connection with the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of compensation by task code against budgeted hours and fees for the Compensation Period is attached hereto in **Exhibit D**.  The itemized time records for Akin professionals and paraprofessionals performing services during the Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

24.     Akin also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

---

[7]     Akin voluntarily reduced its fees and expenses prior to the filing of each applicable Monthly Fee Statement.  The aggregated amounts of such voluntary reductions were: (i) $190,422.45 for fee reductions and (ii) $1,794.80 for expense reductions. For the avoidance of doubt, these voluntary reductions do not include the aggregated fee reduction resulting from the agreed-upon 10% discount.

25.     Akin's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN DURING THE COMPENSATION PERIOD

26.     The services provided by Akin during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Debtors and commensurate with the complexity and significance of the matters for which Akin has been retained the ("Litigation Matters").  The variety and complexity of the Litigation Matters and the need to act or respond to such issues on an expedited basis during the Compensation Period required the expenditure of significant time by Akin professionals and paraprofessionals from numerous legal disciplines.

27.     The following is a summary of the professional services rendered by Akin during the Compensation Period.  This summary is organized in accordance with Akin's internal system of task codes established in connection with Akin's retention based on the Fee Guidelines.   In classifying services into task codes, Akin attempted to place the services performed in the category that most closely related to the services provided.

28.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered, as well as to identify certain of the matters and issues that Akin was required to address during the Compensation Period.

A.     **Akin Monthly and Interim Fee Applications (Task Code 2)**

| Total Hours | Fees |
|---|---|
| 199.00 | $218,437.20 |

29.     This category includes time spent by Akin attorneys and paraprofessionals in connection with the preparation of Akin's Monthly Fee Statements and the Second Interim Fee Application.  Akin attorneys expended significant time during the Compensation Period reviewing Akin's monthly invoices in order to protect privileged and confidential information and to ensure

accuracy and compliance with the Interim Compensation Order, Local Rules and U.S. Trustee

Guidelines. Pursuant to the Interim Compensation Order, each of the Monthly Fee Statements and

this Application contain a list of individuals who rendered services to the Debtors during the

relevant compensation period, information as to each individual's title, billing rate and hours

worked and a comprehensive breakdown of the fees incurred and disbursements expended.

30.    In addition, this category includes time spent by Akin attorneys in connection with

responding to, and successfully resolving, the *Fee Examiner's Confidential Letter Report on the*

*Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Special Litigation*

*Counsel to the Debtors and Debtors in Possession for Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses for the Period November 1, 2022 Through and*

*Including February 28, 2023*.

## B.    Retention of Professionals (Task Code 3)

| Total Hours | Fees |
|:---:|:---:|
| 55.40 | $68,207.40 |

31.    This category includes time spent by Akin attorneys and paraprofessionals in

connection with various retention matters. Specifically, during the Compensation Period, Akin

spent time drafting and filing the Second Notice of Additional Services with respect to the BlockFi

Matter (as defined in the Second Notice of Additional Services) and analyzing various issues with

respect thereto. On April 7, 2023, the Court entered an order approving the Second Notice of

Additional Services [Docket No. 2385].

32.    During the Compensation Period, Akin also spent time drafting and filing the Third

Notice of Additional Services with respect to the StakeHound Matter (as defined in the Third

Notice of Additional Services) and analyzing various issues with respect thereto. On July 10,

2023, the Court entered an order approving the Third Notice of Additional Services [Docket No.

2987].

33.     In addition, during the Compensation Period, Akin attorneys spent time considering certain expert and retention issues with respect to the Stone/KeyFi matter.

34.     Finally, during the Compensation Period, Akin, among other things, submitted the names of additional parties in interest to its conflict databases and analyzed the results thereto.

35.     The time spent by Akin attorneys and paraprofessionals in this category ensured that the Debtors were able to retain Akin to address certain additional litigation matters that have arisen during the course of the Chapter 11 Cases without undue delay, as well as adhere to their disclosure obligations under Bankruptcy Rule 2014(a).

### C.     Case Administration (Task Code 4)

| Total Hours | Fees |
|:---:|:---:|
| 58.10 | $41,869.80 |

36.     This category includes time spent by Akin attorneys and paraprofessionals in connection with various case administration matters in furtherance of the Chapter 11 Cases. Specifically, during the Compensation Period, Akin, among other things, spent time:   (i) monitoring the Court's docket in the Chapter 11 Cases and circulating relevant filings to members of the Akin team; (ii) preparing and updating internal case calendars to keep Akin professionals appraised of relevant case deadlines and deliverables; (iii) considering budget issues with respect to Akin's services; (iii) communicating with the client and Debtors' restructuring professionals with respect to general case issues and updates; (iv) reviewing and analyzing general case materials and pleadings, including those with respect to the examiner's reports and certain deposition materials; and (v) performing other administrative tasks that enabled Akin to represent the Debtors in the Chapter 11 Cases with respect to the Litigation Matters in an efficient and cost effective manner.

37.     Akin's attention to the administrative matters reflected in this category enabled the Akin team to function in a coordinated manner and avoid duplicating efforts with respect to various work streams.

### D.    Stone/KeyFi (Task Code 5)[8]

| Total Hours | Fees |
|---|---|
| 803.30 | $944,268.75 |

38.    This category includes time spent by Akin professionals in connection with the adversary proceeding styled, *Celsius Network Limited and Celsius Network LLC v. Jason Stone and KeyFi, Inc.*, Adv. No. 22-01139 (MG), which was filed on August 23, 2022 (the "Stone Adversary Proceeding").  As alleged in the Stone Adversary Proceeding, the Defendants were provided with, but did not return, millions of Celsius coins collectively worth substantially in excess of $100 million (or more), even at recent prices, and engaged in other conduct giving rise to additional substantial liability.

39.    Prior to the Compensation Period, on October 13, 2022, Akin prepared and filed an Amended Complaint against Jason Stone ("Stone") and KeyFi, Inc. ("KeyFi" and together with Stone, the "Stone Defendants"), which, among other things, asserted claims for turnover, conversion, fraudulent representation, breach of fiduciary duty, unjust enrichment, replevin and accounting, against one or both of the Stone Defendants.  *See generally* Adversary Complaint, *Celsius Network Limited and Celsius Network LLC v. Jason Stone and KeyFi, Inc.*, Adv. No. 22-01139 (Bankr. S.D.N.Y. Aug. 23, 2022) [Stone Adv. Pro. No. 10].  Thereafter, Akin attorneys engaged in substantial discovery and case management efforts, filed the *Motion of Plaintiffs for Preliminary Injunction Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure* [Stone Adv. Pro. Nos. 20, 21], took discovery in connection therewith, and participated in a hearing on January 11 and 12, 2023 which resulted in the issuance of a temporary restraining order (the "Temporary Restraining Order") immediately freezing assets in the Stone Defendants' possession, custody or control.  Thereafter, the parties agreed to a partial stay of certain deadlines in the Stone Adversary Proceeding in order to pursue particular discrete areas of discovery in order to determine

---

[8]    Capitalized terms used in this Stone/KeyFi summary, but not otherwise defined herein, shall have the meanings given to them in the Stone Adversary Proceeding (defined herein).

if a framework for any future resolution of this litigation might be identified. That partial stay has been extended through September 5, 2023.

40.    During the Compensation Period, Akin professionals worked closely with Celsius' expert, FTI Consulting, Inc. ("FTI"), to perform a tracing/accounting analysis of the more than $1 billion worth of coins provided to the Stone Defendants for deployment in order to ascertain the fate of the $100 million plus worth of coins that the Stone Defendants failed to return to Celsius. Akin professionals assisted FTI in this regard by providing underlying work product and documents, and reviewing and commenting on FTI work product.

41.    The stay order specifically contemplated that Celsius would take necessary discovery from third parties, and continue to gather information from Defendants during the period of the stay. Celsius did so, subpoenaing numerous third parties to whom assets traceable to Celsius has been transferred, including so-called "exchanges," in an effort to determine the final (or next) destination of funds transferred to the third parties by the Stone Defendants. Akin professionals engaged actively in many meet and confer conferences and written correspondence with said third parties in connection with obtaining the necessary discovery. Those efforts yielded substantial document productions, which Akin attorneys reviewed and analyzed in coordination with FTI.

42.    Akin professionals also continued to take significant discovery of the Stone Defendants during this time. Such discovery was necessary to aid FTI in its tracing exercise, as well as for preparing for resumed litigation to the extent necessary. During the Compensation Period, Akin professional drafted and sent multiple lengthy discovery letters to the Stone Defendants highlighting gaps and deficiencies in the Stone Defendants' productions, reviewed thousands of documents produced by the Stone Defendants and prepared written summaries and analyses with respect thereto. Akin professionals engaged in many meet and confers with counsel to the Stone Defendants during this time, and reviewed and analyzed documents provided in coordination with FTI.

43.     During the Compensation Period, Akin professionals also performed a number of other tasks related to the Temporary Restraining Order.  The Temporary Restraining Order permits the Stone Defendants to continue to deploy subject property in certain decentralized finance ("DeFi") activities (the "Positions") and allows them to make requests to engage in certain transactions related to those Positions to dispose, transfer or otherwise use property subject to the Temporary Restraining Order ("Subject Property").    Celsius and the Official Committee of Unsecured Creditors (the "Committee") each have the right to object to any such transaction, following which the parties are required to meet and confer, and if they are unable to reach agreement, may request a conference with the Court to seek its guidance.    During the Compensation Period, Akin professionals considered multiple requests submitted by the Stone Defendants to engage in certain transactions involving Subject Property.  In some cases, Celsius consented to the requests, and in others it objected, triggering the objection process under the Temporary Restraining Order which included a number of meet and confer conferences among counsel, as well as one conference before the Court.

44.     The Temporary Restraining Order also requires the Stone Defendants to send Celsius and the Committee a current statement of profits and losses associated with their ongoing DeFi activities (a "Report"), including a list and description of any transactions executed in connection with the Positions.   During the Compensation Period, Akin professionals, working closely with FTI, monitored the Stone Defendants' Reports and sent multiples correspondences to and engaged in multiple meet and confer conferences with the Stone Defendants related to the transactions disclosed on the Report.

45.     In addition, the Committee is an intervenor in the Stone Adversary Proceeding and, on a common interest basis, Akin professionals have worked with the Committee's counsel extensively, and made substantial efforts to keep the Committee informed and involved in the tracing exercise and litigation.   During the Compensation Period, Akin has arranged and

participated in numerous telephone calls and correspondences with the Committee, its professionals, FTI and others, and supplied information and analysis to the Committee at its request.

**E.      Prime Trust (Task Code 6)**[9]

| Total Hours | Fees |
|:---:|:---:|
| 77.90 | $96,953.85 |

46.      This category includes time spent by Akin professionals engaged in connection with the adversary proceeding styled, *Celsius Network Limited and Celsius Network LLC v. Prime Trust, LLC*, Adversary Proceeding No. 22-01140, which was filed on August 23, 2022 (the "Prime Trust Adversary Proceeding").

47.      Prior to the Compensation Period, Akin negotiated, obtained final Court approval for, and received full payment on a settlement with Prime Trust, LLC ("Prime Trust"), resulting in Celsius getting substantially all of the relief it sought in connection with the Prime Trust Adversary Proceeding, including, among other things, the return to Celsius of crypto assets worth approximately $25 million (at recent prices).  In connection with those efforts, Akin professionals engaged in extensive negotiations with counsel for Prime Trust regarding the allegations in the Prime Trust Adversary Proceeding and related demand letters and other efforts to reach a consensual resolution of Celsius' claims, ultimately resulting in Celsius and Prime Trust agreeing to a *Stipulation to Settle and Discontinue Adversary Proceeding* [Prime Trust Adv. Pro. No. 13-2] (the "Stipulation").  The Court entered an *Order Granting [Celsius'] Motion to Approve Settlement with Prime Trust, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Prime Trust Adv. Pro. No. 20] on December 6, 2022 (the "9019 Approval Order").

48.      Thereafter, during the Compensation Period, Akin attorneys prepared and, on June 6, 2023 filed, a *Motion to Approve the Transfer of Property Pursuant to Bankruptcy Code Section*

---

[9]      Capitalized terms used in this Prime Trust summary, but not otherwise defined herein, shall have the meanings given to them in the Prime Trust Adversary Proceeding (defined herein).

*105 and Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 2758] (the

"Transfer Motion"), as well as a proposed *Order Granting Motion to Approve the Transfer of*

*Property Pursuant to Bankruptcy Code Section 105 and Rule 9019 of the Federal Rules of*

*Bankruptcy Procedure* [Docket No. 2758-1].  The Transfer Motion was contemplated by both the

Stipulation and the 9019 Approval Order, which provided that Celsius would not use, access,

transfer, pledge, re-hypothecate, distribute, or otherwise interfere with the assets received from

Prime Trust except pursuant to further order of the Bankruptcy Court.  Akin attorneys conducted

detailed research, analyzed various issues and coordinated with Committee counsel in connection

with the Transfer Motion, including providing notice of the same to all potentially impacted

Celsius users.

49.    Akin prepared for and presented to the Court regarding the Transfer Motion during

the Court's June 28, 2023 hearing.  The Court granted the Transfer Motion at the hearing and

entered the *Order Granting Motion to Approve the Transfer of Property Pursuant to Bankruptcy*

*Code Section 105 and Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 2926]

(the "Transfer Order") on June 28, 2023.  Pursuant to the Transfer Order, Akin obtained for Celsius

the ability to access, transfer, pledge and otherwise use the property returned from Prime Trust in

the ordinary course and consistent with the sound exercise of Celsius' business judgment,

including without limitation, for purposes such as borrowing and other routine corporate finance

activities, until distributed or otherwise disposed of in connection with a confirmed plan of

reorganization or other disposition as part of the Chapter 11 Cases.

50.    Throughout the preparation and filing of the Transfer Motion and related hearing,

Akin attorneys worked closely with Celsius' other advisors and internal legal team and

communicated regularly with the Special Committee regarding the Prime Trust Adversary

Proceeding.  In addition, Akin attorneys monitored Prime Trust's quarterly reporting of any

property that may be deposited with Prime Trust by any Celsius users following the Initial Transfer

Deadline (as defined in the Stipulation), in accordance with the terms of the Stipulation.

**F.    Hearings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 13.70 | $17,846.55 |

51.    This category includes time spent by Akin attorneys preparing for and attending

various hearings and status conferences held before the Court during the Compensation Period,

including omnibus hearings in the Chapter 11 Cases.  In light of Akin's role as special litigation

counsel in these Chapter 11 Cases, Akin attorneys, among other things:  (i) reviewed upcoming

hearing agendas and kept apprised of issues on connection therewith; (ii) analyzed relevant issues,

motions and applications filed with the Court with respect to the applicable hearing; (iii)

communicated with the Debtors' advisors and other parties in interest, as necessary, with respect

to such relief;  and (iv) attended such hearings in order to stay apprised of information that could

be relevant with respect to general case matters and the Litigation Matters.

**G.    Rhodium (Task Code 9)[10]**

| Total Hours | Fees |
|:---:|:---:|
| 860.90 | $1,111,659.30 |

52.    During the Compensation Period, Akin worked to preserve value for the Debtors

and their creditors related to the Debtors' *Simple Agreement for Future Equity* ("SAFE") with

Rhodium Enterprises, Inc. ("Rhodium").  Rhodium recently announced a plan of merger

("Merger") with SilverSun Technologies, Inc. ("SilverSun"), as described in the SilverSun Form

8-K dated September 29, 2022.

53.    In connection therewith, during the Compensation Period, Akin attorneys

researched legal and factual issues concerning the Debtors' rights under the SAFE in light of the

---

[10]    Capitalized terms used in this Rhodium summary, but not otherwise defined herein, shall have the meanings given
    to them in the Rhodium Trust Adversary Proceeding (defined herein).

Merger. Akin attorneys prepared comprehensive legal memoranda and analyses regarding Celsius' rights under the SAFE and conducted extensive diligence regarding the Merger and its proposed treatment of SAFE holders. In addition, on behalf of the Debtors, Akin engaged with Rhodium on these issues, including preparing formal letters to Rhodium requesting documents and information needed in support of the Debtors' review and expressing the Debtors' position with respect to the Merger's proposed treatment of the SAFE. When Rhodium refused to provide the Debtors with the information necessary to conduct appropriate diligence with respect to the Debtors' rights under the SAFE, Akin attorneys prepared a draft Rule 2004 stipulation and engaged in multiple phone calls and correspondence with counsel for Rhodium regarding agreeing to an orderly process for producing information necessary to the Debtors' ongoing diligence.

54. Rhodium responded on April 21, 2023, by filing the adversary proceeding styled, *Rhodium Enterprises, Inc. v. Celsius Mining LLC*, Adv. No. 23-01101 (MG), (the "Rhodium Adversary Proceeding"), seeking a declaratory judgment against Celsius Mining LLC endorsing Rhodium's proposed treatment of the SAFE in connection with the Merger and requesting expedited treatment of the Rhodium Adversary Proceeding due to Rhodium's alleged need to close the Merger by June 30, 2023. Akin professionals accordingly spent time during the Compensation Period defending Celsius Mining LLC in connection with the Rhodium Adversary Proceeding. This included conducting a thorough review of the complaint in the Rhodium Adversary Proceeding, researching various legal issues and preparing detailed analyses regarding the same.

55. Shortly after filing the Rhodium Adversary Proceeding, on April 24, 2023, Rhodium filed a letter pursuant to Local Rule 7056-1 to request a pre-motion conference in advance of filing a pre-discovery motion for summary judgment [Rhodium Adv. Proc. No. 7]. Accordingly, Akin attorneys spent time during the Compensation Period researching on an expedited basis various issues related to such motion, and preparing and filing a response letter on April 28, 2023 [Rhodium Adv. Pro. No. 15]. Akin prepared for and presented to the Court

regarding the issues raised in Rhodium's pre-motion letter during a conference with the Court on May 2, 2023.

56.     Akin thereafter prepared, negotiated with Rhodium and filed with the Court, on May 3, 2023, a proposed *Case Management and Scheduling Order and Confidentiality Agreement and Stipulated Protective Order* [Rhodium Adv. Proc. Nos. 21, 21-1, 21-2], which the Court entered on May 4, 2023.  Akin prepared and served discovery requests on Rhodium, and prepared draft initial disclosures pursuant to Federal Rule of Civil Procedure 26.  Akin additionally researched and drafted an answer and counterclaims in response to Rhodium's complaint.

57.     On May 18, 2023, Rhodium filed a *Notice of Voluntary Dismissal Without Prejudice* [Rhodium Adv. Proc. No. 25], dismissing the Rhodium Adversary Proceeding prior to responding to the discovery Celsius Mining LLC had served in that matter.  Akin responded by promptly preparing and filing an *Ex Parte Motion for Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing the Examination of Rhodium Enterprises, Inc.* [Docket No. 2697] (the "Rule 2004 Motion") on May 22, 2023.  On May 23, 2023, the Court entered an order granting the Rule 2004 Motion [Docket No. 2701] (the "Rule 2004 Order").  The Rule 2004 Order authorized Celsius Mining LLC to conduct an examination of, and to obtain documents, including electronically stored information ("ESI"), from Rhodium.

58.     Pursuant to the Rule 2004 Order, Akin attorneys prepared and issued a subpoena (the "Rule 2004 Subpoena") seeking documents and information from Rhodium.  Akin attorneys spent time during the Compensation Period reviewing and responding to Rhodium's responses and objections to the Rule 2004 Subpoena and engaging in numerous meet and confer conferences, exchanging correspondence and negotiating agreements regarding Rhodium's production of documents responsive to the Rule 2004 Subpoena.  As a result of those negotiations, Rhodium collected and produced over 5,000 documents retrieved through an hoc, manual collection

procedure, which Akin professionals reviewed and analyzed during the Compensation Period. Akin additionally engaged in negotiations with counsel for Rhodium regarding search terms and parameters for the collection, review and production of ESI responsive to the Rule 2004 Subpoena, including the preparation of numerous rounds of proposed search terms and correspondence and conferences regarding the same.  In that regard, Akin prepared a stipulation and order setting a schedule for the production of ESI responsive to the Rule 2004 Subpoena, which it negotiated with Rhodium, and ultimately submitted to the Court for its approval.  The Court signed the stipulation and order on or around July 25, 2023, and disclosure and review of ESI pursuant thereto is underway.

59.     Throughout the Compensation Period, Akin professionals engaged in extensive negotiations with counsel for Rhodium regarding the treatment of the SAFE in connection with the Merger and other efforts to reach a consensual resolution of Celsius' dispute with Rhodium. In connection therewith, Akin attorneys held numerous calls and conferences and exchanged various correspondence with Rhodium's counsel, including participating in a half-day in person settlement conference.  Akin carefully coordinated with counsel for the Committee throughout this process and in connection with all aspects of its dispute with Rhodium.  In connection therewith, Akin attorneys held multiple calls and conferences and engaged in extensive correspondence with counsel for the Committee.

60.     Throughout the Compensation Period, Akin personnel have additionally prepared updates and memoranda for the Special Committee concerning the Rhodium dispute, the Rhodium Adversary Proceeding, efforts to resolve the same and issues related thereto.

## H.     Voyager Digital (Task Code 10)

| Total Hours | Fees |
|:---:|:---:|
| 100.50 | $127,543.05 |

61.     On November 5, 2022, the Debtors' bankruptcy counsel asked Akin to act as conflicts counsel in connection with transfers the Debtors' bankruptcy professionals had identified

during the 90 days prior to the filing of the Chapter 11 Cases by Voyager Digital Holdings, Inc. and its affiliated debtors (collectively, "Voyager"), entities which are presently involved in their own chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York (consolidated as Case No. 22-10943 (MEW), the "Voyager Bankruptcy Cases" and, such court, the "Voyager Bankruptcy Court"). Akin thereafter filed a motion in the Voyager Bankruptcy Cases on Celsius Network's behalf seeking leave to file a late claim against Voyager and to lift the automatic stay to allow Celsius to prosecute the claim in this Court (the "Late Claim Motion"). Following a contested evidentiary hearing on January 24, 2023, the Voyager Bankruptcy Court denied the Late Claim Motion without prejudice to Celsius Network re-filing the Late Claim Motion supported by certain categories of additional evidence.

62.    The primary work performed by Akin during the Compensation Period related to efforts to consensually resolve the Late Claim Motion, and the preparation of additional evidentiary support for a renewed Late Claim Motion in the event a resolution could not be reached. Among other things, Akin professionals conducted interviews of various witnesses, reviewed additional documents and prepared supplemental fact declarations regarding the issues identified by the Voyager Bankruptcy Court.

63.    During this time, Akin professionals also attempted to engage in settlement discussions with multiple different sets of counsel for Voyager. This effort was complicated by multiple changes in the identity of the law firms representing Voyager's interests. Voyager's primary bankruptcy firm is conflicted, and initially directed Akin to Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn"). Quinn later withdrew from that role and directed Akin to Paul Hastings LLP ("Paul Hastings"). While Paul Hastings appeared on Voyager's behalf during the hearing on the Late Claim Motion, afterwards Paul Hastings withdrew based on a conflict. Akin was then directed to ArentFox Schiff LLP, but it is Akin's understanding that this firm was never actually retained by Voyager to handle the dispute with Celsius Network. Akin then began to communicate

with McDermott Will & Emery LLP, which represents the Voyager Official Committee of Unsecured Creditors, and with which Akin continues to work productively. Akin professionals conducted certain legal research in connection with these settlement discussions and prepared various settlement memoranda and analyses. Settlement discussions remain ongoing and, as a result, Akin has not filed any renewed Late Claim Motion.

## I.    BlockFi (Task Code 12)

| Total Hours | Fees |
|:---:|:---:|
| 39.20 | $34,999.65 |

64.    Akin acts as conflicts counsel to the Debtors in connection with any potential claims that any of the Debtors may have against BlockFi Inc. and its affiliated debtors (collectively, "BlockFi"), entities which are presently involved in their own chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of New Jersey (consolidated as Case No. 22-19361, the "BlockFi Bankruptcy Cases").

65.    During the Compensation Period, Akin professionals performed an analysis of potential claims that Celsius Network may possess against BlockFi, including by engaging in discussions with Celsius personnel and Celsius' outside advisors, performing legal research, and drafting a proof of claim. Akin ultimately filed the proof of claim against BlockFi in the BlockFi Bankruptcy Cases on behalf of the Debtors on March 30, 2023. Thereafter, Akin has continued to monitor the docket in the BlockFi Bankruptcy Cases for any relevant developments.

## J.    StakeHound (Task Code 13)[11]

| Total Hours | Fees |
|:---:|:---:|
| 473.60 | $613,558.80 |

66.    Akin acts as counsel to the Debtors in connection with the StakeHound Matter. From January 2021 through April 2021, Celsius Network Limited ("CEL Ltd.") provided

---

[11]    Capitalized terms used in this StakeHound summary, but not otherwise defined herein, shall have the meanings given to them in the StakeHound Adversary Proceeding (defined herein).

StakeHound S.A. ("StakeHound") with substantial amounts of native tokens for staking, and StakeHound in turn offered CEL Ltd. "stTokens" in an equivalent amount to the native tokens which Celsius could either sell or tender back to StakeHound for native tokens. CEL Ltd. provided native tokens to StakeHound for staking in four separate transactions, including: (i) 25,000 Staked ETH, (ii) an additional 35,000 Staked ETH, (iii) 40,000,000 MATIC and (iv) 66,000 Polka DOT.

67.     On or about April 10, 2023, Akin professionals acting on CEL Ltd.'s behalf demanded via letter the return of the 25,000 Staked ETH it had provided to StakeHound, together with the interests, fees, and rewards that had accrued thereon (worth about $50 million). StakeHound refused to return the Staked ETH. In response, Akin professionals proposed via letter a standstill and freezing agreement whereby StakeHound would agree not to use, transfer or otherwise dispose of the Staked ETH while the parties attempted to negotiate a resolution to their dispute. StakeHound did not respond to this offer. To the contrary, it commenced an arbitration proceeding before the Swiss Arbitration Centre in Zurich (the "StakeHound Arbitration") on or about April 25, 2023. In the StakeHound Arbitration, StakeHound is seeking a declaratory judgment related to a services agreement under which Celsius provided StakeHound with the 25,000 ETH. Following the commencement of the StakeHound Arbitration, Akin sent another letter to StakeHound informing it that the StakeHound Arbitration was a clear violation of the automatic stay, to which StakeHound did not respond. As a result, Akin filed an answer to the arbitration demand (solely with respect to CEL Ltd.'s position that the StakeHound Arbitration is barred by the automatic stay), and thereafter researched, drafted, and filed various letters with the Swiss Arbitration Centre explaining why the StakeHound Arbitration is barred by the automatic stay. Akin professionals have also generally incurred time monitoring the StakeHound Arbitration and strategizing in respect thereof.

68.     On or about May 25, 2023, Akin professionals sent a letter to StakeHound on CEL Ltd.'s behalf demanding the return of the MATIC and Polka DOT native tokens held by

StakeHound (worth approximately $40 million). Once again, StakeHound did not respond. CEL Ltd. management thereafter reached out to StakeHound management to attempt to discuss the issue, but StakeHound management referred CEL Ltd. to its newly-retained U.S. lawyers. Akin thereafter proposed to StakeHound's U.S. counsel that CEL Ltd. and StakeHound agree to a freezing and standstill agreement, but once again StakeHound refused to do so. As a result, Akin commenced an adversary proceeding against StakeHound in these Chapter 11 Cases, captioned *Celsius Network Limited v. StakeHound SA*, A.P. No. 23-01138 (the "StakeHound Adversary Proceeding").

69.    The StakeHound Adversary Proceeding was commenced after the Compensation Period, but substantial preparatory work was performed during the Compensation Period. During the Compensation Period, Akin performed extensive legal research concerning potential claims against StakeHound and certain legal issues related thereto and drafted the lawsuit against StakeHound. The StakeHound Adversary Proceeding addresses each of the four transactions by which CEL Ltd. provided StakeHound with native coins for staking and asserts claims for breach of the automatic stay, turnover under Bankruptcy Code section 542 and breach of contract.

70.    In connection with drafting the complaint in the StakeHound Adversary Proceeding, Akin personnel conducted a substantial document review of materials potentially relevant to various claims and defenses. Additionally, Akin personnel conducted significant legal research concerning potential alternative service of the complaint and drafted a brief seeking authorization to serve the complaint via email under section 4(f)(3) of the Federal Rules of Civil Procedure rather than through the Hague Convention.

71.    Throughout the Compensation Period, Akin personnel prepared updates and memoranda for the Special Committee and the Committee concerning the StakeHound Arbitration, the StakeHound Adversary Proceedings and issues related thereto. Additionally, Akin retained

and has communicated with Swiss counsel concerning certain Swiss law issues relevant to the

StakeHound Arbitration and the StakeHound Adversary Proceeding.

## **ACTUAL AND NECESSARY DISBURSEMENTS**

72.    Akin seeks allowance of reimbursement of expenses in the amount of $91,832.77

for expenses incurred during the Compensation Period in the course of providing professional

services to the Debtors.  Akin's disbursement policies pass through all out-of-pocket expenses at

actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example,

as it relates to computerized research, Akin believes that it does not make a profit on that service

as a whole although the cost of any particular search is difficult to ascertain.  Other reimbursable

expenses (whether the service is performed by Akin in-house or through a third-party vendor)

include, but are not limited to, overtime meals, deliveries, court costs and filing fees, transcript

fees, computerized research and overtime travel.

## **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

73.    Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]"  *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of,
> or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

74.     The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

75.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method."  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A*., 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977)

have been adopted by most courts.[12]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation").

76.    Akin respectfully submits that a consideration of these factors should result in the Court's allowance of the full compensation sought in this Application.

a.    <u>Time and Labor Required</u>.  Akin billed a total of 2,545.90 hours of professional services and 136.20 hours of paraprofessional services during the Compensation Period.  Akin has taken care to ensure that the time spent by its professionals and paraprofessionals was actually necessary and appropriate to ensure adequate representation of the Debtors.  As evidenced by this Application, Akin attorneys and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period.  Akin's representation of the Debtors has required it to balance the need to provide quality services with the need to act quickly and represent the Debtors in the Litigation Matters in an effective, efficient and timely manner.  Akin submits that the hours spent were reasonable given the complexity of the Litigation Matters, the significant legal and business issues raised, the pleadings filed in the various adversary proceedings and the obstacles faced by the Debtors with respect thereto.

b.    <u>Novelty and Difficulty of the Questions</u>.  Akin tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex issues with respect to the Litigation Matters.  As further described herein, Akin's skilled teams assisted the Debtors in filing and prosecuting certain adversary proceedings and otherwise assisting with the Litigation Matters.

c.    <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin believes that its recognized experience and expertise with respect to, among other things, the Litigation Matters as well as general litigation matters, its ability to draw from highly experienced professionals in Akin's practice and its creative approach to issues has benefited the Debtors and their creditors.  Due to the nature and complexity of the legal issues presented with respect to the Litigation Matters, Akin was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy and litigation matters.

---

[12]    The factors articulated by the Fifth Circuit in *First Colonial*, were first articulated by the Fifth Circuit in *Johnson,* with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

d. <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Engagement</u>.  Due to the size of Akin's financial restructuring and litigation departments, Akin's representation of the Debtors as special litigation counsel did not preclude its acceptance of new clients, but the demands for immediate and substantive action with respect to the Litigation Matters imposed significant burdens on Akin professionals working concurrently on other matters.

e. <u>Customary Fee</u>.  As set forth herein and in the Initial Retention Application, Akin agreed to provide a 10% discount to its standard billing rates for this engagement.  With the exception of this 10% discount, the rates Akin charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin's fee structure also is equivalent to the fee structure used by Akin for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required.  The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here.  Except with respect to the 10% discount described herein, Akin's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f. <u>Whether the Fee is Fixed or Contingent</u>.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin increased the risk Akin was assuming by representing the Debtors in the Chapter 11 Cases.  Despite this risk, Akin has achieved and will continue to strive for excellent and tangible results for the Debtors and the estates.

g. <u>Time Limitations Imposed by the Client or Other Circumstances</u>.  As further described herein, during the Compensation Period, Akin was under time pressure with respect to certain of the Litigation Matters as it was in the best interests of the estates.  Specifically, with respect to the Rhodium Matter, and as further described herein, Akin was required to act expeditiously, and within certain time frames regarding the Merger, SAFE issues and the Rhodium Adversary Proceeding.

h. <u>Amount Involved and Results Obtained</u>.  Akin attorneys and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  As a result of its efforts during the Compensation Period, Akin was able to obtain significant positive results for the Debtors.  Among other things, as more fully described herein, during the Compensation Period, Akin (i) continued to work to preserve value for the Debtors' estates in the Rhodium matter related to the SAFE and related merger and (ii) diligently pursued matters in each of the other Litigation Matters, in each instance for the benefit of the Debtors and their

34

creditors.  Akin submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of the Debtors as more fully described herein.

i.  <u>Experience, Reputation and Ability of Attorneys</u>.  Akin is a full-service law firm with extensive experience handling a broad range of legal issues in a wide range of industries. Further, Akin has extensive experience representing companies in litigation matters, both in and out of chapter 11 cases.  Akin's experience enabled it to perform the services described herein competently and expeditiously.

j.  <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

k.  <u>Nature and Length of Professional Relationship</u>.  This Court entered the Initial Retention Order on September 16, 2022 authorizing the Debtors to employ Akin as special litigation counsel with respect to the Specified Litigation Matters, as of the Petition Date.  In addition, the Court has entered subsequent orders allowing the Debtors to retain Akin with respect to certain additional Litigation Matters.  Lastly, since March 2021, Akin has performed legal work for Celsius Network and certain of its affiliates.

77.  For the reasons set forth above, the services rendered by Akin were necessary and beneficial to the Debtors and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Debtors, Akin's demonstrated skill and expertise in bankruptcy and litigation (as well as other areas of expertise relevant to the Litigation Matters) and the customary compensation charged by comparably skilled practitioners at Akin.  Accordingly, Akin respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

78.  No agreement or understanding exists between Akin and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in

connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any

other court for the relief requested herein as it relates to the Compensation Period.

## ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

79.    The following is provided in response to the request for additional information set

forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:    Yes, as set forth in the Initial Retention Application and herein, Akin agreed to provide a 10% discount to its standard billing rates for this engagement, which standard rates are consistent with (i) market rates for comparable services and (ii) the rates that Akin charges and will charge other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    As further detailed on **Exhibit D** attached hereto, Akin did not exceed the total fees budgeted for the Compensation Period.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:    Yes.  During the Compensation Period 199.00 hours and $218,437.20 in fees were billed to Task Code 2 (Akin Gump Monthly and Interim Fee Applications).  As further described herein, the work billed in this category included, without limitation, time spent reviewing time records for compliance with the Fee Guidelines.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:    See above.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Yes.  In the Akin Retention Application, Akin disclosed that its hourly rates are subject to periodic adjustments (typically on January 1st of each year).  Pursuant to the Initial Retention Order, on December 15, 2022, Akin filed a notice of rate increase [Docket No. 1708], disclosing Akin's rate increases that went into effect on January 1, 2023.

## RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

*[Reminder of page intentionally left blank.]*

## <u>CONCLUSION</u>

WHEREFORE, Akin respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $3,276,242.10 and expense reimbursement in the amount of $91,832.77; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: August 14, 2023
New York, New York

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  */s/ Mitchell P. Hurley*
      Mitchell P. Hurley
      Dean L. Chapman
      One Bryant Park
      New York, New York 10036
      Telephone: (212) 872-1000
      Facsimile: (212) 872-1002
      mhurley@akingump.com
      dchapman@akingump.com

      *Special Litigation Counsel to the Debtors and Debtors*
       *in Possession*

## <u>EXHIBIT A</u>

**CERTIFICATION OF MITCHELL P. HURLEY**

**UNITED STATES DISTRICT BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE THIRD
INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS
SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD MARCH 1, 2023 THROUGH AND INCLUDING JUNE 30, 2023**

I, Mitchell P. Hurley, hereby certify that:

1.        I am a partner with Akin,[2] with responsibility for the Litigation Matters in these Chapter 11 Cases.  Akin is special litigation counsel to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.        In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.        In respect of section B.1 of the Local Guidelines, I certify that:

(a)        I have read the Application;
(b)        to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network, Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

      (c)      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin and generally accepted by Akin's clients, subject to the 10% discount that Akin has agreed to provide to the Debtors in connection with the Litigation Matters; and

      (d)      in providing a reimbursable service, Akin does not make a profit on that service, whether the service is performed by Akin in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin has complied with those provisions requiring it to provide the Debtors with a statement of Akin's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors and the U.S. Trustee are each being provided with a copy of the Application.

Dated: New York, New York          By:  */s/ Mitchell P. Hurley*
August 14, 2023                   Mitchell P. Hurley

2

## <u>EXHIBIT B</u>

### CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY and Dallas Offices for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,358.59 | $1,597.54 |
| Senior Counsel and Counsel | $1,044.26 | $1,159.74 |
| Associate | $746.85 | $698.61 |
| Paraprofessionals and Other Non-Legal Staff | $340.66 | $458.65 |
| **All Timekeepers Aggregated** | **$1,022.94** | **$1,221.52** |

---

[1]    Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York and Dallas offices), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month period ending June 30, 2023.

## EXHIBIT C

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Year Admitted | 2023 Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Dean L. Chapman | Partner | Litigation | 2009 | $1,552.50 | 309.10 | $479,877.75 |
| Mitchell P. Hurley | Partner | Litigation | 1997 | $1,795.50 | 498.30 | $894,697.65 |
| Elizabeth Scott | Partner | Litigation | 2007 | $1,278.00 | 251.00 | $320,778.00 |
| Rosa A. Testani | Partner | Corporate | 1989 | $1,795.50 | 8.10 | $14,543.55 |
| Justin Williams | Partner | Litigation | 1993 | $1,507.50 | 25.70 | $38,742.75 |
| Sarah K. Withers | Partner | Corporate | 2014 | $1,224.00 | 10.20 | $12,484.80 |
| Joanna F. Newdeck | Senior Counsel | Financial Restructuring | 2005 | $1,350.00 | 119.60 | $161,460.00 |
| Heather L. Peckham | Senior Counsel | Litigation | 2000 | $1,111.50 | 56.40 | $62,688.60 |
| Braden Allman | Counsel | Litigation | 2018 | $1,008.00 | 8.80 | $8,870.40 |
| Jeffrey A. Latov | Counsel | Litigation | 2017 | $1,188.00 | 303.90 | $361,033.20 |
| Nicholas R. Lombardi | Counsel | Litigation | 2018 | $1,188.00 | 248.50 | $295,218.00 |
| Jessica Mannon | Counsel | Litigation | 2017 | $1,008.00 | 226.10 | $227,908.80 |
| Jasmine Alexander | Associate | Litigation | 2022 | $711.00 | 11.20 | $7,963.20 |
| Fatima M. Bishtwai | Associate | Litigation | 2021 | $864.00 | 5.40 | $4,665.60 |
| Daniel A. Chasin | Associate | Litigation | 2023 | $711.00 | 7.40 | $5,261.40 |
| Jillian R. Kulikowski | Associate | Litigation | 2019 | $1,012.50 | 13.40 | $13,567.50 |
| Jane M. Mahan | Associate | Litigation | 2022 | $661.50 | 7.60 | $5,027.40 |
| Michael Stanley | Associate | Litigation | 2022 | $661.50 | 347.10 | $229,606.65 |
| Kaila Zaharis | Associate | Financial Restructuring | 2022 | $787.50 | 88.10 | $69,378.75 |
| Russell J. Collins | Staff Attorney | Litigation | 1998 | $522.00 | 11.50 | $6,003.00 |
| Julie Hunter | Project Coordinator | E-Discovery | N/A | $409.50 | 15.60 | $6,388.20 |
| Amy Laaraj | Paralegal | Financial Restructuring | N/A | $459.00 | 109.10 | $50,076.90 |

# **EXHIBIT D**

## **SUMMARY OF COMPENSATION BY TASK CODE**
## **AGAINST BUDGETED HOURS AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | Akin Gump Monthly and Interim Fee Applications | 180.00 - 260.00 | $198,000.00 - $312,000.00 | 199.00 | $218,437.20 |
| 3 | Retention of Professionals | 30.00 - 80.00 | $33,000.00 - $96,000.00 | 55.40 | $68,207.40 |
| 4 | Case Administration | 40.00 - 140.00 | $44,000.00 - $154,000.00 | 58.10 | $41,869.80 |
| 5 13 | Stone/KeyFi[1] StakeHound | 1,100.00 - 3,000.00 | $1,200,000.00 - $3,200,000.00 | 803.30 | $944,268.75 |
| 6 | Prime Trust | 45.00 – 80.00 | $50,000.00 - $100,000.00 | 77.90 | $96,953.85 |
| 8 | Hearings | 30.00 – 75.00 | $40,000.00 - $80,000.00 | 13.70 | $17,846.55 |
| 9 | Rhodium | 360.00 - 2,100.00 | $400,000.00 - $2,500,000.00 | 860.90 | $1,111,659.30 |
| 10 | Voyager | 140.00 – 730.00 | $160,000.00 - $930,000.00 | 100.50 | $127,543.05 |
| 11 | Travel | N/A | N/A | 0.50 | $897.75 |
| 12 | BlockFi | 60.00 – 100.00 | $65,000.00 - $106,000.00 | 39.20 | $34,999.65 |
| TOTAL | | 1,985.00 - 6,565.00 | $2,190,000.00 - $7,478,000.00 | 2,682.10 | $3,276,242.10 |

Akin did not provide a separate task code estimate for travel time. Notwithstanding the foregoing, as noted herein, the total fees sought for the Compensation Period are within the total budgeted amount.

---

[1] As described in the Third Notice of Additional Services, Stone was involved in transactions with StakeHound, which Akin become aware of as a result of, among other things, its work connection with the Stone Matter (as defined in the Third Notice of Additional Services). After it was determined that there may be claims and causes of action between the Debtors and StakeHound arising as a result thereof, the Debtors sought, and received Court authority, to retain Akin in connection with the StakeHound Related Matters (as defined in the Third Notice of Additional Service). When the budget set forth herein was initially prepared, this line item included work anticipated in connection with the Stone matter, as well related StakeHound issues.

## **EXHIBIT E**

### **SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $1,351.48 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $24,439.69 |
| Computerized Legal Research - Courtlink - In Contract 50% Discount | $719.09 |
| Computerized Legal Research – Other | $71.40 |
| Corporate Service Fees | $1,181.57 |
| Color Copy | $46.20 |
| Courier Service / Messenger Services - Off Site | $775.62 |
| Duplication - In House | $34.20 |
| Meals - In House Catering | $111.05 |
| Meals – Overtime | $45.00 |
| Professional Fees – Legal | $54,678.00 |
| Professional Fees - Process Server | $997.40 |
| Research | $326.40 |
| Transcripts | $6,356.89 |
| Local Transportation - Overtime | $521.16 |
| Travel - Ground Transportation | $177.62 |
| **Total:** | **$91,832.77** |

## **EXHIBIT F**

### **STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate (with 10% discount) (2023) |
|---|---|---|
| Partner | 3 | $1572.00 |
| Senior Counsel and Counsel | 4 | $1,119.00 |
| Associate | 6 | $916.00 |
| Paralegals & Non-Legal Staff | 1 | $470.00 |