Otis Davis Pro Se Creditor

August 13, 2023

The Honorable Martin Glenn

Chief Judge

United States Bankruptcy Court

Southern District of New York

Your Honor, the UCC, through their lawyers White & Case, have stated without one scintilla of evidence, facts, or basis in law that, "Finally, the requests made by certain Holders of CEL Token Deposit Claims — chief among them, Mr. Davis and Mr. Caceres — should be rejected." This is nothing but hot air being spewed by the UCC to this court. They cannot find any legitimate reason to subordinate CEL token holders' claims from $0.81, so now they wish to take another bite at the apple by attempting to personally smear me as a creditor instead of arguing the facts of the CEL Token issues. The UCC has now used 5 arguments to try to unjustly subordinate CEL creditors:

1. CEL token is worthless, but we will use the pre-sale ICO price as fair price;

2. CEL token was manipulated up by the Debtors;

3. CEL token was manipulated by users pre-petition;

4. CEL token is a security subject to Bankruptcy Rule 510(b).

Now on to number 5, since all of their previous arguments have failed, they have shamefully brought personal smear attacks to this court. Since all of their previous arguments were weak and unable to withstand any level of scrutiny, now completely

embarrassed, the UCC is at a new all-time low of trying to completely avoid the facts and law to subvert CEL token creditors' rightful claims. Judge, the UCC has had so many bites at the apple, (5 in total) they have swallowed the core.

The UCC also engaged in bad-faith negotiations with myself and other CEL token creditors. Their idea of negotiation was offering us $0.21, one penny more than they put in their original Plan. Yes, you heard that right, one penny. When we asked them to put their one-penny offer in writing, they said OK, we will do that. To this day they have not provided that one-penny offer in writing, because they knew just how egregious it would look to this court.

Now they've gone back and re-negotiated with and among themselves and came up with a number of $0.25 per CEL token to try and convince this court that they are being reasonable. This is the definition of self-dealing. Your Honor has enough wisdom and understanding to see right through their dirty tricks. The first time I heard about this new $0.25 per CEL token offer was when they filed it in the updated Disclosure Statement on August 9th.

And, for the record, I reject their made-up offer of $0.25. Judge, they have zero reason to subordinate my CEL token claim from $0.81 in the first place. They must prove to this court that CEL token should be subordinated through factual evidence before subordination of CEL token should even enter the conversation.

Your Honor, I also object to the settlement between Loans, Earn and the UCC. And Judge, I have significant assets in both the Loans and Earn classes, so that's saying something. I have 17 Bitcoin against loans currently worth about $510,000 and 745,558 Matic tokens currently worth about $454,365 in Earn at the petition date price of $0.61 ($0.60943). So I have skin in all the different buckets/classes here. I stand to lose by objecting to the settlements between Earn, Loans and the UCC.

As Earn Creditor, I own 745,558 MATIC tokens with a petition date price of $0.60943. Are they going to subordinate my MATIC claim also because they hate Otis Davis and feel he has some relationship with Alex Mashinsky? The sad truth is that the UCC has engaged in this type of immature behavior before. In February of this year a White & Case attorney representing the UCC, Aaron Colodny, somehow got the idea in his head to personally attack me in front of the entire Celsius community on the Feb 17, 2023 Twitter Spaces town hall and said in no uncertain terms that I, Otis Davis, manipulated CEL token based on the fact that I have a "lemon" in my name, which was totally unprofessional.

Additionally, Judge, to this day, no other information about the naked short selling on FTX was released from the subpoenaed records the UCC received from FTX. They got the information from FTX through the subpoena they sent to FTX about the ten wallets, seeming in hopes they would find my name in relation to the manipulation of CEL token, but then buried it because it simply didn't fit their corrupt narrative. Moreover, how can the UCC explain the filed $2 billion claim in the FTX bankruptcy? The truth is that

Alameda Research and Sam Bankman-Friend manipulated CEL token down on his FTX Exchange by naked shorting millions of CEL tokens between the June 12th Pause and the July 13th bankruptcy. And we will be thrilled to have a valuation hearing to prove to the court that that is what, indeed, happened.

This $2 billion claim speaks volumes; in fact, it speaks for itself with respect to their feelings about CEL. By the UCC and Celsius agreeing to file that $2 billion claim in the FTX bankruptcy case, Judge, the UCC and Celsius are asserting that CEL token claims should be worth $3.00 or more – their words, not mine – because if the millions of CEL token naked shorts are closed, then CEL would be above $3.00 with ease, which is what the UCC and Celsius are arguing in the FTX bankruptcy case, that each CEL token is worth at least $3.00, yet they want to subordinate CEL creditors to $0, and then say to be fair we will give you $0.20, and all of a sudden now they're unexplainably saying $0.25. Your Honor, they are lying in your courtroom, and I ask that you put an end to this charade and give us petition date pricing for CEL, or at minimum order a valuation hearing so that we can work together with the UCC to prove to this Court that the UCC and Celsius are 100% correct in their FTX filing; that, indeed, CEL token is worth $3.00 or more, as they have alleged by their $2 billion claim filing in the FTX bankruptcy; that it's not worth zero, or $0.20, or $0.21, or $0.25, or $0.81, but that it's worth $3.00 at minimum, according to the UCC and Celsius.

So, Judge, in one Listerine bad breath the UCC is saying that CEL token should be subordinated based on manipulation by the company, then the UCC's attorney Aaron

Colody's frivolous "lemon" claim that CEL token was manipulated by Otis Davis on the February 17, 2023 Twitter Spaces town hall, and in the next breath they are saying that CEL token was manipulated by Alameda Research, Sam Bankman-Fried and FTX, to which they filed a $2 billion claim against Alameda Research, Sam Bankman-Fried and FTX. Judge, the UCC, with the cooperation of Celsius, didn't file a $2 billion claim against Otis Davis, they filed the $2 billion claim against FTX.

Judge, what the UCC and their counsel White & Case are doing is childish and should never enter your courtroom. The UCC is here to attack me as a creditor based on their upside-down view of the world that Alex Mashinsky and I are working together.

Your Honor, when it comes to the formation of a group, the UCC has also already set the precedent and have had the estate pay the legal and professional fees and expenses for the Ad Hoc Groups of Earn, Custody, Borrowers, Withhold and even the Series B as part of their settlement agreements. I once again request that your Honor grant my motion to form a CEL Token Ad Hoc Group paid for by the estate so that we can have a "fair fight" to resolve this CEL token issue as expeditiously as possible once and for all, as your Honor suggested at the June 28th hearing, which the UCC and their lawyers agreed to.

The UCC's argument here that there was a group formed and headed by Alex Mashinsky is irrelevant, since no Bankruptcy Rule 2019 establishing such a group was

ever filed with the Court. As far as the Court is concerned, that's hearsay and cannot be admitted into evidence and must be nullified.

The UCC has asserted in their August 9, 2023 Response to Objections to and Statement in Further Support of the Debtors' Disclosure Statement Motion and the Settlement Motion, that, "The Committee does not know whether Mr. Davis or Mr. Caceres continue to be represented by counsel or continue to be part of the group that approached the Debtors and the Committee in the spring, nor does the Committee intend to imply that these individuals continue to work with Mr. Mashinsky."

Judge, that's another boldface lie to you on the record and in your courtroom. I personally told the UCC in our settlement talks that I'm not represented by any counsel or affiliated with Alex Mashinsky and I'm here as a pro se. Judge, I am a pro se creditor, which by definition means I'm not represented by counsel, and the UCC and their attorneys know this; they understand full well what the latin term "pro se" means in the context of law.

This statement is a perfect example showing that the UCC members have some personal animus towards Mr. Mashinsky which they've wrongfully extended to all retail CEL token holders, which violates their fiduciary duty to represent all creditors. This UCC is acting in a way that does not represent me, and that is why I'm requesting this Court to approve the formation of a CEL token Ad Hoc Group with professional fees and expenses paid for by the estate. For the record, I am not represented by counsel; I am a

pro se creditor representing myself and attempting to get this court to appoint a CEL Token Ad Hoc Group for all CEL token creditors so their rights and interests can be protected.

The UCC's lawyers stood up in court on July 28th and said to you, your Honor, that they agree that this has to be a "fair fight" and they wouldn't object to a "fair fight." Now that I've asked this court to grant me the resources for a "fair fight," they all of a sudden object. This is gamesmanship by the UCC and their lawyers, all designed to run out the clock.

The UCC states, "The estates (sic) should not, under any circumstances, be paying legal or other fees for groups that include Alex Mashinsky or others who have harmed Account Holders or are associated with those parties. Moreover, bankruptcy law does not allow the Debtors to pay legal fees that will benefit one class at the expense of every other creditor."

First of all, Judge, Alex Mashinsky is not included with me as a pro se creditor and the Ad Hoc group of CEL Creditors will not contain or represent any insiders, including Alex Mashinsky; second of all, I have not harmed account holders in any way, shape or form, and neither was I an employee or ambassador of Celsius.

With respect to the UCC's claim that "bankruptcy law does not allow the Debtors to pay legal fees that will benefit one class at the expense of every other creditor," they've already set the precedent by paying legal and professional fees and expenses for the Ad Hoc Groups of Earn, Custody, Borrowers, Withhold and even the Series B as part of their settlement agreements, so that argument holds no water and should be nullified.

On page 14 of 26 of the Disclosure Statement (Docket 3226), the UCC says, "The Debtors' further amended Plan increases the value provided to Holders of CEL Token Deposit Claims to $0.25 per CEL Token. The settlement is an offer to all creditors, each of whom is affected by the settlement and able to accept or reject the settlement, which is an essential element of the Plan, by voting to accept or reject the Plan. To the extent the Court does not determine that the settlement falls within the lowest range of reasonableness as required by Bankruptcy Rule 9019 or is otherwise not appropriate, the Plan provides that Holders of CEL Token Deposit Claims will receive a subordinated Section 510(b) Claim, or such other claim as the Court orders at confirmation."

The UCC has not met their burden to subordinate CEL token holders' claims in the first place. For some reason, they are operating under the delusion that CEL token claims have already been ruled as securities and are therefore subject to subordination under Rule 510(b). The UCC saying it with their lips does not equate to law. The irony is Mr. Kieser (**Doc 3154 Filed 08/03/23)** is using the same Rule 510(b) argument to subordinate all Earn claims as securities and the UCC is objecting to that, stating that

Earn is not a security and cannot be subordinated under Rule 510(b), but in the same Listerine bad breath asking this Court to subordinate CEL token holders' claims under Rule 510(b). They cannot have it both ways, Judge.

No group, whether associated with Mr. Mashinsky or not, has been filed with this Court, so that should be viewed by this court as complete hearsay, and this court is not in the business of hearing hearsay. This court is in the business of hearing evidence, facts, and law. I'm a pro se creditor. How can I be affiliated with Mr. Mashinsky?

Judge, what the UCC is arguing here is that in the event that I'm affiliated with Mr. Mashinky, my CEL token claim should be nullified. Your Honor, I'm not an insider, I'm a retail CEL token holder. This Court should once and for all censure the UCC for their continued unacceptable behavior of grouping together non-insiders and insider CEL token holders and negotiating in bad faith. There appears to be some personal hate that the UCC has against Alex Mashinsky and they've wrongfully extended that personal hate to us retail CEL token holders, and this Court should put a stop to this reckless behavior. This court should censure the UCC and let them know that they are not keeping with their fiduciary duty to represent all creditors. The CEL Token Ad Hoc Group that I am asking this court to approve in my motion will represent retail CEL token holders only, not insiders. Let me say it again, retail users that bought CEL token on exchanges and on the open market is who this CEL Token Ad Hoc Group will represent, not insiders that hold CEL token. The UCC knows this, yet they make frivolous

arguments to this court hoping that your Honor would take their side because they've hired a big shot law firm White & Case and ignore a pro se creditor like myself, who simply seeks fairness and equitable treatment from this court.

In closing, your Honor, the relief that I am respectfully seeking from this Court is that the Court recognize the legal precedent that has been set in the Ripple/XRP case and declare that (1) the CEL Tokens held by users are not a security; (2) that the UCC 's attempt to subordinate the CEL Token holders be set aside and declared nullified; (3) that the settlement made by the UCC be nullified as being predicated upon no basis in fact or law and that a valuation hearing be scheduled for a proper determination of the petition date price; (4) that the settlement be set aside between Loans, Earn and the UCC based on the fact that CEL token holders had no seat at the table to be able to participate in that settlement; and (5) a separate new class of CEL Token holders be established to protect their rights fairly and equitably, or simply your Honor rules that he's going to follow the law and award petition date pricing to all assets, including CEL token, which is consistent with what Judge Wiles did for the VGX token in the Voyager bankruptcy case.

Otis Davis

Pro se Creditor