## Exhibit 1

**Solicitation and Voting Procedures**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

1.    **The Voting Record Date.**

The Court has approved **July 24, 2023** as the record date for purposes of determining which Holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, Class 7 Withhold Claims, Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, Class 10 State Regulatory Claims, and Class 14 Series B Preferred Interests are entitled to vote to accept or reject the Plan (the "Voting Record Date").

2.    **The Voting Deadline.**

The Court has approved **September 22, 2023, at 4:00 p.m.** prevailing Eastern Time as the voting deadline (the "Voting Deadline") for the Plan. The Debtors may extend the Voting Deadline, in consultation with the Committee, without further order of the Court by filing a notice on the Court's docket. To be counted as votes to accept or reject the Plan, all ballots (the "Ballots") must be executed, completed, and delivered pursuant to the instructions set forth on the applicable Ballot so that they are actually received by Stretto, Inc. (the "Claims, Noticing, and Solicitation Agent") no later than the Voting Deadline. Holders of the Claims in the Voting Classes may submit their Ballots via (a) the Claims, Noticing, and Solicitation Agent's online voting platform at https://case.stretto.com/Celsius/balloting, or (b) mail or hand-delivery to the Claims, Noticing, and Solicitation Agent at Celsius Ballot Processing c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602. Ballots submitted to the Claims, Noticing, and Solicitation Agent by any means other than expressly provided in these Solicitation and Voting Procedures, including e-mail, facsimile, or electronic means other than the online voting portal, ***shall not be valid and will not be counted***.

3.    **Form, Content, and Manner of Notices.**

(i)    The Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

a.    the Cover Letter, which describes the contents of the Solicitation Package and urges Holders of Claims in each of the Voting Classes to vote to accept the Plan;

b.    the Committee Letter;

c.    a copy of these Solicitation and Voting Procedures;

d.    the applicable form of Ballot, substantially in the form attached as **Exhibit 3A**, **Exhibit 3B**, **Exhibit 3C**, **Exhibit 3D**, and **Exhibit 3E** to the Disclosure Statement Order, as applicable;

e.    the Notice of Claims Settlement;

f.      the Disclosure Statement (and exhibits thereto, including the Plan);

g.      the Disclosure Statement Order (excluding exhibits);

h.      the Confirmation Hearing Notice; and

i.      any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

(ii)      <u>Distribution of the Solicitation Package</u>.

(1)      *Distribution to Account Holder Voting Classes*

The Solicitation Package will be distributed via e-mail in electronic format to Holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, and Class 7 Withhold Claims (together, the "<u>Account Holder Voting Classes</u>") to the e-mail on file for the account and the e-mail address listed on a Filed proof of claim, to the extent a proof of claim was Filed and an e-mail address other than the e-mail address on file was used. If the message to either e-mail address is returned as undeliverable, the Claims, Noticing, and Solicitation Agent shall serve the Solicitation Package on such Holders in paper or electronic format (*i.e.*, USB flash drive format), via first class mail to the extent a physical mailing address is known by the Debtors. Holders of Claims in Account Holder Voting Classes will also receive a "push" notification to the Debtors' mobile application, which will link to the Solicitation Agent's online voting portal. The ballot for the Account Holder Voting Classes (the "<u>Account Holder Ballot</u>") will be pre-populated with the amount of each Claim held by the Holder in each of the Account Holder Voting Classes as reflected on the Debtors' schedules of assets and liabilities [Docket No. 974] (as amended from time to time, the "<u>Schedules</u>"). As discussed further herein, Account Holders will only be permitted to vote a Claim amount that is different than the Account Holder Claim amount listed on the Schedules if the Court enters an order approving such relief for that Account Holder after that Account Holder files a motion seeking such relief pursuant to Bankruptcy Rule 3018(a). The Account Holder Ballot includes detailed descriptions of a number of elections available to Account Holders in addition to seeking votes to accept or reject the Plan. The Account Holder Ballot on the online voting portal will provide user-friendly prompts to ensure that any elections the Holder makes are consistent, thus preventing Holders from inadvertently submitting a defective ballot and ensuring that votes to accept or reject the Plan from Holders in the Account Holder Voting Classes will be counted properly.

(2)      *Distribution to Other Voting Classes*

The Solicitation Package will be distributed via e-mail in electronic format to Holders of Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, Class 10 State Regulatory Claims, and Class 14 Series B Preferred Interests to the extent an e-mail address is on file. To the extent an e-mail address is not on file for any Holders of such Claims or Interests and the Debtors are in possession of a physical mailing address for such Holders, the Claims, Noticing, and

Solicitation Agent shall serve the Solicitation Package on such Holders in paper or electronic format (*i.e.*, USB flash drive format), via first class mail.

<div align="center">(3)     *Distribution to Other Parties in Interest*</div>

All Holders of Claims and Interests will also receive the Confirmation Hearing Notice attached to the Disclosure Statement Order as <u>Exhibit 6</u> via e-mail from the Claims, Noticing, and Solicitation Agent to the extent an e-mail address is on file.  To the extent an e-mail address is not on file for any Holder of Claims or Interests and the Debtors are in possession of a physical mailing address for such Holders, the Claims, Noticing, and Solicitation Agent shall serve the Confirmation Hearing Notice on such Holder via first class mail.

The Debtors shall electronically serve all the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.  Any party that receives the materials in electronic format but would prefer paper format may request paper copies of such materials by contacting the Claims, Noticing, and Solicitation Agent by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-5873 (International);  (b) e-mailing the Claims, Noticing, and Solicitation Agent at <u>CelsiusInquiries@Stretto.com</u> with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.

<div align="center">(4)     *Timing of Distribution of Solicitation Packages*</div>

The Debtors shall distribute, or cause to be distributed, the Solicitation Package to all Holders of Claims in the Voting Classes who are entitled to vote, as described in Section 4(i) below, on or before **August 25, 2023** (or as soon as reasonably practicable thereafter),

<div align="center">(5)     *Avoiding Duplication*</div>

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to ensure that any Holder of a Claim who has filed duplicative Proofs of Claim against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, only one copy of each relevant Ballot) on account of such Claim and with respect to that Class as against that Debtor.

(iii)     <u>Non-Voting Status Notices for Unclassified Creditors, Unimpaired Classes, Classes Deemed to Reject the Plan and Disputed Claims</u>

Certain Holders of Claims and Interests that are not entitled to vote because they are unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive the *Notice of (I) Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Opportunity to Opt out of the Third-Party Releases*, substantially in the form annexed as <u>Exhibit 2A</u> to the Disclosure Statement Order, and

<div align="center">4</div>

will also receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

Certain Holders of Claims or Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of (I) Non-Voting Status to Holders of Impaired Claims or Interests Conclusively Deemed to Reject the Plan and (II) Opportunity to Opt-in to the Third Party Releases,* substantially in the form annexed as <u>Exhibit 2B</u> to the Disclosure Statement Order and will receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

Certain Holders of Claims and Interests that are not classified pursuant to section 1123(a)(1) of the Bankruptcy Code will receive the *Notice of (I) Non-Voting Status to Holders of Unclassified Claims and (II) Opportunity to Opt out of the Third-Party Releases*, substantially in the form annexed as <u>Exhibit 2C</u> to the Disclosure Statement Order and will also receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format. The notice will instruct Holders who do not receive Solicitation Packages as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

Certain Holders of Claims that are subject to a pending objection by the Debtors who are not entitled to vote any disputed portion of their Claim absent a Resolution Event (as defined herein) will receive the *Notice of (I) Non-Voting Status with Respect to Disputed Claims, (II) Opportunity to Opt out of the Third-Party Releases, and (III) Opportunity to Contribute Claims* substantially in the form annexed as <u>Exhibit 2D</u> to the Disclosure Statement Order and will receive the Disclosure Statement (including the Plan) and the Committee Letter, all in electronic format.

(iv)    <u>Notices in Respect of Executory Contracts and Unexpired Leases</u>.

Counterparties to Executory Contracts and Unexpired Leases that receive a *Notice of Rejection of Executory Contracts and Unexpired Leases* substantially in the form attached as <u>Exhibit 8</u> or a *Notice of Assumption of Executory Contracts and Unexpired Leases* substantially in the form attached as <u>Exhibit 9</u>, as applicable, to the Disclosure Statement Order, may file an objection to the Debtors' proposed assumption, rejection, or cure amount, as applicable. Any such objection must: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **<u>September 22, 2023 at 4:00 p.m.</u>,** prevailing Eastern Time (the "<u>Plan Objection Deadline</u>"). For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the

Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within 30 days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time shall not be enforceable against the Debtors, the Post-Effective Date Debtors, their Estates, their property, or NewCo without the need for any objection by the Debtors, the Post-Effective Date Debtors or NewCo or further notice to, or action, order, or approval of the Court.

4.    **Voting and Tabulation Procedures.**

(i)    <u>Holders of Claims Entitled to Vote.</u>

Only the following Holders of Claims and Interests in the Voting Classes shall be entitled to vote with regard to such Claims and Interests, and such Holders shall be allowed to vote only in the amounts set forth in Section 4(ii) of these Solicitation and Voting Procedures:

a.    Holders of Claims that are listed in the Schedules;

b.    Holders of Claims and Interests other than Account Holder Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that supersedes their Claims Scheduled by the Debtors, or that asserts a Claim that does not appear in the Schedules;

c.    Account Holders who have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) for Claims that do not appear in the Schedules, solely to the extent that such Proofs of Claim have been temporarily allowed for voting purposes only pursuant to Bankruptcy Rule 3018(a); *provided* that the deadline to file any motions under Bankruptcy Rule 3018(a) shall be the Voting Deadline, which motions shall be resolved by the Court at or prior to the Confirmation Hearing;

d.    Holders whose Claims arise: (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) from an order entered by the Court; or (iii) from a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed or the Claim was scheduled as contingent, unliquidated, or disputed;

e.    Holders that do not have any Equitably Subordinated Claims; and

f.  with respect to any Entity described in subparagraphs (a) through (e) above, who, on or before the Voting Record Date, has transferred such Entity's Claim to another Entity, the transferee of such Claim; *provided* that such transfer has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer was reflected on the Claims Register on the Voting Record Date.

For the avoidance of doubt, Holders of Claims and Interests described above with Claims and Interests in one or more of the Non-Voting Classes (*i.e.*, Holders of Claims and Interests in Classes 1, 3, 6B, 11, 12, 13, 15, 16, and 17) shall not be entitled to vote such Claim or Interest and any Ballot cast by a Holder on behalf of a Claim or Interest in a Non-Voting Class shall not be counted.

(ii)   <u>Establishing Claim Amounts for Voting Purposes</u>.

(1)   *Filed and Scheduled Claims.*

The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for any other purpose, including distributions under the Plan. Any amounts pre-populated on the Account Holder Ballot or other ballots by the Debtors through the Claims, Noticing, and Solicitation Agent are not binding for purposes of allowance and distribution. In tabulating votes, the amount of the Claim associated with each claimant's vote shall be determined as follows:

a.   Eligible Holders of Account Holder Claims shall vote in the amount of their Scheduled Claim[3] unless one or more of the following events occurs (a "<u>Resolution Event</u>"):

i.   prior to the Voting Deadline, the Holder of an Account Holder Claim files a motion in the Court seeking entry of an order to temporarily allow timely filed Proof of Claim for purposes of voting on the Plan (a "<u>3018 Motion</u>"), ***AND*** the Court enters an order approving such 3018 Motion. 3018 Motions shall be resolved by the Court at or prior to the Confirmation hearing. If a Holder of an Account Holder Claim files a 3018 Motion, such Holder will be deemed to have opted out of the Class Claim Settlement;

ii.   an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code; or

iii.   a stipulation or other agreement is executed between the Holder of such Claim and the Debtors (either for voting purposes or for all purposes) allowing such Claim in an agreed upon amount.

---

[3]   For the avoidance of doubt, the 5% increase to eligible Account Holder Claims provided under the Class Claim Settlement shall not modify the amount of any Claim for voting purposes.

    b.    Eligible Holders of Claims in Voting Classes other than Account Holder Voting Classes shall vote in the amount of their Scheduled Claim unless such Scheduled Claim is superseded by a timely filed Proof of Claim that is not subject to objection, in which case the amount asserted in such timely filed Proof of Claim shall control for voting purposes; *provided* that any amounts asserted on account of any interest accrued after the Petition Date will not be considered; *provided further* that any wholly unliquidated or unknown amount that is not the subject of a pending objection, based on a reasonable review of the Proof of Claim and supporting documentation by the Debtors or their advisors, will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; *provided further* that if such Proof of Claim is filed as partially liquidated and partially unliquidated, it will count for voting purposes only in the liquidated amount; and

    c.    notwithstanding the foregoing, with respect to all Claims in the Voting Classes, the Claim amount for voting purposes shall be the amount: (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court; or (iv) set forth in e-mailed instructions from the Debtors' counsel to the Solicitation Agent with the applicable voter copied.

Notwithstanding anything to the contrary herein:

    a.    if a Claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for filing proofs of claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Record Date, such Claim shall be disallowed for voting purposes;

    b.    Holders of Proofs of Claim that are subject to a pending claim objection shall not be entitled to vote such Proofs of Claim unless a Resolution Event occurs;[4]

    c.    Holders of Proofs of Claim filed for $0.00 or zero (0) Cryptocurrency, as applicable, are not entitled to vote;

    d.    Claims that have been paid, scheduled to be paid in the ordinary course, or otherwise satisfied are disallowed for voting purposes;

---

[4]    Notwithstanding the foregoing, the Holders of the Claims that are the subject of the *Debtors' Objection to Proof of Claim No. 24480 of Daniel A. Frishberg* [Docket No. 2107], *Debtors' Objection to Proof of Claim No. 23959 of Rebecca Gallagher* [Docket No. 2106], and *Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* [Docket No. 2105] may vote their Claims in the amounts listed in the Schedules.

       e.      any creditor who has filed or purchased duplicate Claims within the same Voting Class shall, to the extent possible, be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

       f.      if a Proof of Claim is amended, the last filed Claim shall be subject to these rules and will supersede any earlier filed Claim, and any earlier filed Claim will be disallowed for voting purposes.

(iii)   <u>Voting and Ballot Tabulation Procedures</u>.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right, in consultation with the Committee, to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, or order of the Bankruptcy Court:

       a.      Holders of Claims generally must vote all of their Claims either to accept or reject the Plan and may not split any votes between Classes. For example, a Holder with a Class 5 General Earn Claim and a Class 7 Withhold Claim must vote both Claims to accept or reject the Plan. Furthermore, to the extent there are multiple Claims within the same Class, such Claims shall be aggregated within a Class for the purpose of counting votes. However, holders of Class 6A General Custody Claims that also hold claims in other Voting Classes may separately vote to accept the Plan for their Class 6A General Custody Claims and vote to reject the Plan for their other Claims in Voting Classes;

       b.      the Account Holder Ballot contemplates that certain Holders can make the Convenience Claim Election and receive the treatment for Class 4 Convenience Claims, even though they do not hold Class 4 Convenience Claims. For the avoidance of doubt, this does not change the nature of their Claim for the purposes of Voting and as such their vote to accept or reject the Plan will be counted in the Voting Class in which the Claim was originally classified;

       c.      in the event that a Holder with Claims in a Voting Class and in a Non-Voting Class has conflicting responses on the election to opt out of granting releases, the response provided on the Ballot will control;

       d.      a Holder with a Claim in Class 17 Equitably Subordinated Claims is not entitled to vote any Claims, regardless of whether such other Claims would be classified in a Voting Class;

       e.      each Claim asserted in currency other than U.S. dollars (other than Cryptocurrency) shall be automatically deemed converted to the equivalent U.S. dollar value using the conversion rate for the applicable currency at

prevailing market prices as of 8:00 a.m. (prevailing Eastern Time) on the Petition Date;

f.      each Claim asserted in Cryptocurrency shall be calculated in United States Dollars as of the Petition Date utilizing the conversion rates provided in the Cryptocurrency Conversion Table attached to the Disclosure Statement as Exhibit L; *provided* that CEL Token shall be valued as provided in Article IV.B.2 of the Plan;

g.      except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted and actually received by the Claims, Noticing, and Solicitation Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors, in consultation with the Committee), the Debtors shall reject such Ballot as invalid and, therefore, shall not count such Ballot in connection with confirmation of the Plan;

h.      the Claims, Noticing, and Solicitation Agent will date-stamp all Ballots when received.  All Ballots submitted via the Claims, Noticing, and Solicitation Agent's online voting portal will also be time-stamped upon receipt.  The Claims, Noticing, and Solicitation Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Court;

i.      the Claims, Noticing, and Solicitation Agent shall tabulate Ballots on a Debtor-by-Debtor basis;

j.      the Debtors will file the Voting Report by **September 25, 2023 at 4:00 p.m.** prevailing Eastern Time.  The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity, including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, or damaged (collectively, in each case, the "Irregular Ballots").  The Voting Report shall indicate the Debtors' decision, in consultation with the Committee, with regard to such Irregular Ballots;

k.      The method of delivery of Ballots to be sent to the Claims, Noticing, and Solicitation Agent is at the election and risk of each such Holder.  Except as otherwise provided, a Ballot will be deemed delivered only when the Claims, Noticing, and Solicitation Agent actually receives the executed Ballot, and delivery of a Ballot to the Claims, Noticing, and Solicitation Agent by any means other than expressly provided in these Solicitation and Voting Procedures will not be valid;

l.      an executed Ballot is required to be submitted by the Entity submitting such Ballot;

m.  no Ballot should be sent to the Debtors, the Debtors' agents or representatives (other than the Claims, Noticing, and Solicitation Agent), the Debtors' financial or legal advisors, the Committee, the Committee's agents or representatives, the Committee's financial or legal advisors, or the Committee's members and, if so sent, will not be counted;

n.  if multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

o.  a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

p.  the Debtors, in consultation with the Committee, and subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

q.  unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

r.  in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

s.  subject to any order of the Court, the Debtors, in consultation with the Committee, reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

t.  if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

u.  if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

11

v.    the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:

    i.    any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim;

    ii.    any Ballot cast by any Entity that does not hold a Claim in a Voting Class;

    iii.    any Ballot cast by any Entity that holds a Claim in Class 17 Equitably Subordinated Claims;

    iv.    any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00);

    v.    any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot submitted via the Claims, Noticing, and Solicitation Agent's online balloting portal shall be deemed an original signature);

    vi.    any Ballot not marked to accept or reject the Plan (which may be through making elections on the Account Holder Ballot) or marked both to accept and reject the Plan (unless it is an Account Holder Ballot and the only vote to accept the Plan is on behalf of a Class 6A General Custody Claim);

    vii.    any Ballot transmitted by facsimile, e-mail, or other means not specifically approved pursuant to the Disclosure Statement Order or contemplated by these Solicitation and Voting Procedures;

    viii.    any Ballot sent to any of the Debtors, the Debtors' agents or representatives other than the Claims, Noticing, and Solicitation Agent, the Debtors' financial or legal advisors, the Committee, the Committee's agents or representatives, the Committee's financial or legal advisors, or the Committee's members; and

    ix.    any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

w.    after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, in consultation with the Committee, or further order of the Court;

x.    the Debtors, in consultation with the Committee, are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim

for voting purposes, with such stipulations to be disclosed on the Voting Report; and

y.    where any portion of a single Claim has been transferred to a transferee, all holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other solicitation and voting procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (A) a Ballot, (B) a group of Ballots within a Voting Class received from a single creditor, or (C) a group of Ballots received from the various Holders of multiple portions of a single Claim or partially reject and partially accept the Plan, such Ballots shall not be counted.

5.    **Amendments to the Plan, Disclosure Statement, and Related Documents.**

The Debtors, in consultation with the Committee, reserve the right to make non-substantive or immaterial changes to the Plan, Disclosure Statement, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Committee Letter, these Solicitation and Voting Procedures, Plan Supplement Notice, Rejection Notice, Assumption Notice, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the any materials in the Solicitation Packages before distribution.

*        *        *        *        *

## Exhibit 2A

**Unimpaired Non-Voting Status Notice**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF (I) NON-VOTING STATUS TO HOLDERS OF UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN AND (II) OPPORTUNITY TO OPT OUT OF THE THIRD-PARTY RELEASES

**PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a Holder of a Claim (as

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]     Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

currently asserted against the Debtors) that is Unimpaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT you may elect to opt out of the third-party release contained in the Plan. Attached hereto is an opt-out form (the "Opt-Out Notice") that you may use to make such elections. This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt out of the third-party release.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to confirmation of the Plan is **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

PLEASE TAKE FURTHER NOTICE THAT if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

**OPTIONAL:  RELEASE OPT-OUT NOTICE**

You are receiving this Opt-Out Notice because you are a Holder of a Claim that is not entitled to vote on the Plan.  Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-Out Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan you may submit your election by submitting the electronic version of your Opt-Out Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-OUT NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-OUT DEADLINE").**

**Item 1**.  **Amount of Claim.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of Class 1 Secured Claims, Class 3 Other Priority Claims, or Class 6B Withdrawable Custody Claims in the following aggregate amount of claims (insert amount in box below):

Class 1 Secured Claims  _____

Class 3 Other Priority Claims  _____

Class 6B Withdrawable Custody Claims  _____

<u>Item 2</u>.                    **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, <u>PROVIDED, HOWEVER</u>, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE. **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.** |

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property**

under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

Definitions Related to the Debtor Release and the Third-Party Release:

(1)   Under the Plan, "*Released Parties*" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)   Under the Plan, "*Releasing Parties*" means, collectively:  (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)      Under the Plan, "***Excluded Party***" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

**Item 3.**   **Certifications.**

By signing this Opt-Out Notice, the undersigned certifies:

(a)   that, as of the Record Date, either:  (i) the Entity is the Holder of the Claims set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims set forth in Item 1;

(b)   that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Opportunity to Opt Out of the Third-Party Releases* and that this Opt-Out Notice is submitted pursuant to the terms and conditions set forth therein;

(c)   that the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

(d)   that no other Opt-Out Notice with respect to the amount(s) of Claims identified in Item 1 have been submitted or, if any other Opt-Out Notices have been submitted with respect to such Claims, then any such earlier Opt-Out Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Signatory Name (if other than the Holder): | |
| Title (if other than the Holder): | |
| Address: | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-OUT NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-Out Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-Out Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-Out Notices will be accepted via electronic or online transmission. Opt-Out Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-Out Notice for each Opt-Out Notice you receive, as applicable.

\*     \*     \*

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  patrick.nash@kirkland.com
ross.kwasteniet@kirkland.com
chris koenig@kirkland.com
dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit 2B**

**Impaired Non-Voting Status Notice**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**NOTICE OF (I) NON-VOTING STATUS TO HOLDERS OF IMPAIRED
CLAIMS OR INTERESTS CONCLUSIVELY DEEMED TO REJECT THE PLAN AND
(II) OPPORTUNITY TO OPT IN TO THE THIRD PARTY RELEASES**

**PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a Holder of a Claim or Interest (as currently asserted against the Debtors) that may receive no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

However, copies of the Disclosure Statement (including the Plan) and the Committee Letter are being provided to you in compliance with the applicable Bankruptcy Rules and the Bankruptcy Court's order.

**PLEASE TAKE FURTHER NOTICE THAT** you may elect to opt in to the third party releases. Attached hereto is an opt-in form (the "Opt-In Notice") that you may use to make such elections. This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt in to the release.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to confirmation of the Plan is **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

## OPTIONAL:  RELEASE OPT-IN NOTICE

You are receiving this Opt-In Notice because you are a Holder of a Claim that is not entitled to vote on the Plan.  Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-In Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt in to the Third-Party Release set forth in Article VIII.D of the Plan you may submit your election by submitting the electronic version of your Opt-In Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-IN NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-IN DEADLINE").**

<u>**Item 1**</u>.  **Amount of Claim.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of unclassified Claims in the following aggregate amount of claims (insert amount in box below):

De Minimis Claim _____

Other Interests _____

Section 510(b) Claims _____

Equitably Subordinated Claims _____

Other Unclassified Claims _____

<u>Item 2</u>.                    **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, <u>PROVIDED, HOWEVER</u>, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY. IF YOU WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST OPT IN TO THE THIRD-PARTY RELEASES.

YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>IF</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-IN NOTICE BY THE OPT-IN DEADLINE. **YOUR DECISION TO COMPLETE AND RETURN THE OPT-IN NOTICE IS ENTIRELY VOLUNTARY**. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT IN TO THE THIRD-PARTY RELEASE.

---

☐    **By checking this box, you elect to opt <u>IN</u> to the Third-Party Releases.**

---

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of**

**Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.**

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "***Released Parties***" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "***Releasing Parties***" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)     Under the Plan, "***Excluded Party***" means each of the following: (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ

Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

**Item 3.** **Certifications.**

By signing this Opt-In Notice, the undersigned certifies:

(a)  that, as of the Record Date, either:  (i) the Entity is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)  that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders of Impaired Claims Conclusively Presumed to Reject the Plan and (II) Opt In to the Third Party Releases* and that this Opt-In Notice is submitted pursuant to the terms and conditions set forth therein;

(c)  that the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d)  that no other Opt-In Notice with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Opt-In Notices have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Signatory Name (if other than the Holder): | _____ |
| Title (if other than the Holder): | _____ |
| Address: | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF YOU WISH TO MAKE THE OPT-IN ELECTION PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-IN NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-In Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-In Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-In Notices will be accepted via electronic or online transmission. Opt-In Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-In Notice for each Opt-In Notice you receive, as applicable.

\*       \*       \*

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com

  - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:     patrick.nash@kirkland.com
     ross.kwasteniet@kirkland.com
     chris.koenig@kirkland.com
     dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit 2C

**Unclassified Non-Voting Status Notice**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF (I) NON-VOTING STATUS TO**
**HOLDERS OF UNCLASSIFIED CLAIMS AND (II) OPPORTUNITY TO OPT**
**OUT OF THE THIRD-PARTY RELEASES**

**PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, Claims on account of statutory fees under section 1930 of the Bankruptcy Code, and Claims pursuant to settlement agreements have not been classified, are excluded from the Classes of Claims set forth in Article III of the Plan, and thus are **not** entitled to vote on the Plan.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

PLEASE TAKE FURTHER NOTICE THAT you may elect to opt out of the third-party release contained in the Plan. Attached hereto is an opt-out form (the "Opt-Out Notice") that you may use to make such elections. This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt out of the third-party release.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to confirmation of the Plan is **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

PLEASE TAKE FURTHER NOTICE THAT if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

## OPTIONAL:  RELEASE OPT-OUT NOTICE

You are receiving this Opt-Out Notice because you are a Holder of a Claim that is not entitled to vote on the Plan. Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-Out Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan you may submit your election by submitting the electronic version of your Opt-Out Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-OUT NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-OUT DEADLINE").**

<u>**Item 1**</u>.  **Amount of Claim.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of unclassified Claims in the following aggregate amount of claims (insert amount in box below):

Administrative Claim _____

Priority Tax Claim _____

Other Unclassified Claims _____

<u>Item 2</u>.                **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES <u>PROVIDED, HOWEVER</u>, NO EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN EXCULPATED PARTY IN ANY CAPACITY. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT DEADLINE.  **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY VOLUNTARY**.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.** |

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases**

**set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.**

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "***Released Parties***" means, collectively:  (a) the Debtors; (b) the Special Committee and each of its members; (c) the Third-Party Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "***Releasing Parties***" means, collectively:  (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)     Under the Plan, "***Excluded Party***" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management

LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party. Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

**Item 3.  Certifications.**

By signing this Opt-Out Notice, the undersigned certifies:

(a)  that, as of the Record Date, either: (i) the Entity is the Holder of the Claims set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims set forth in Item 1;

(b)  that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and (II) Opportunity to Opt Out of the Third-Party Releases* and that this Opt-Out Notice is submitted pursuant to the terms and conditions set forth therein;

(c)  that the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

(d)  that no other Opt-Out Notice with respect to the amount(s) of Claims identified in Item 1 have been submitted or, if any other Opt-Out Notices have been submitted with respect to such Claims, then any such earlier Opt-Out Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Signatory Name (if other than the Holder): | |
| Title (if other than the Holder): | |
| Address: | |
| | |
| Telephone Number: | |
| Email Address: | |
| Date Completed: | |

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-OUT NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-Out Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-Out Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-Out Notices will be accepted via electronic or online transmission. Opt-Out Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-Out Notice for each Opt-Out Notice you receive, as applicable.

\*     \*     \*

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:             joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:             patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com
                    chris.koenig@kirkland.com
                    dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 2D**

**Notice to Disputed Claim Holders**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) NON-VOTING STATUS WITH**
**RESPECT TO DISPUTED CLAIMS, (II) OPPORTUNITY TO OPT OUT OF**
**THE THIRD-PARTY RELEASES, AND (III) OPPORTUNITY TO CONTRIBUTE CLAIMS**

PLEASE TAKE NOTICE THAT on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

PLEASE TAKE FURTHER NOTICE THAT you are receiving this notice because you are the Holder of a Claim that is subject to a pending objection by the Debtors. **You are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before a date that is two Business Days before the Voting Deadline** (each, a "Resolution Event"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

1.      an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

2.      an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

3.      a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

4.      the pending objection to such Claim is voluntarily withdrawn by the objecting party.

Copies of the Disclosure Statement (including the Plan) and the Committee Letter are being provided to you in compliance with the applicable Bankruptcy Rules.  You will not receive a Ballot or other Solicitation Materials unless a Resolution Event occurs.  Any motion seeking for a Claim to be temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a) must be filed by September 22, 2023.

**PLEASE TAKE FURTHER NOTICE THAT** you may elect to opt out of the third-party release contained in the Plan and/or contribute certain direct claims against third parties to the Litigation Administrator to be pursued after confirmation of the Plan for the benefit of creditors entitled to receive Litigation Proceeds.  Attached hereto is an opt-out form (the "Opt-Out Notice") that you may use to make such elections.  This notice also includes the Disclosure Statement (including the Plan) and the Committee Letter so that you may review the release provisions and all other disclosures to inform your decision as to whether to opt out of the third-party release or to contribute your Contributed Claims to the Post-Effective Date Debtors.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://case.stretto.com/Celsius/, or for a fee via PACER at:  http://pacer.psc.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims, you should contact the Claims, Noticing, and Solicitation Agent in accordance with the instructions provided above.

---

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS, NOTICING, AND SOLICITATION AGENT.**

---

**OPTIONAL:  RELEASE OPT-OUT NOTICE**

You are receiving this Opt-Out Notice because you are a Holder of a Claim that is not entitled to vote on the Plan.  Article IV of the Plan contains certain information regarding contribution of Contributed Claims.  Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the Third-Party Release set forth below.  You are advised to carefully review and consider the Plan, including the Contributed Claims, release, injunction, and exculpation provisions, as your rights may be affected.  **Your decision to complete and return the Opt-Out Notice is entirely voluntary and not a requirement under the Plan or applicable law**.

**If you choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan and/or to contribute your Contributed Claim(s) to the Post-Effective Date Debtors, you may submit your election by submitting the electronic version of your Opt-Out Notice through the e-balloting portal (the "E-Balloting Portal"), which can be accessed via the Debtors' restructuring website, https://case.stretto.com/Celsius/balloting, according to instructions provided below.**

**THIS OPT-OUT NOTICE MUST BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME (THE "OPT-OUT DEADLINE").**

<u>**Item 1**</u>.  **Amount of Claim or Interest.**

The undersigned hereby certifies that, as of July 24, 2023 (the "Voting Record Date"), the undersigned was the Holder of one or more of Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, Class 10 State Regulatory Claims, and Class 14 Series B Preferred Interests in the following aggregate amount of claims or interests (insert amount in box below):

| | |
|---|---|
| Class 8 Unsecured Loan Claims | _____ |
| Class 9 General Unsecured Claims | _____ |
| Class 10 State Regulatory Claims | _____ |
| Class 14 Series B Preferred Interests | _____ |

<u>Item 2</u>.                **Important information regarding the Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A
RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES, <u>PROVIDED, HOWEVER</u>, NO
EXCLUDED PARTY (AS DEFINED BELOW) SHALL CONSTITUTE A RELEASED PARTY OR AN
EXCULPATED PARTY IN ANY CAPACITY.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS
MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM
VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.   IF YOU DO NOT OPT
OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE
DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE
BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY
RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE
THIRD-PARTY RELEASES

YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN
<u>ARTICLE VIII.D</u> OF THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN
<u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT NOTICE BY THE OPT-OUT
DEADLINE. **YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT NOTICE IS ENTIRELY
VOLUNTARY**.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU
ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Releases.** |

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of
which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall
be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and
discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages,
Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen,
matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or
hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity,
contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the
Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to
assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any
manner arising from, in whole or in part, the Debtors (including the management, ownership or operation
thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or
the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or
contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights
and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany
transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation,
preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor
Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as
defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational
Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the
Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction,
contract, instrument, release, or other agreement or document created or entered into in connection with the
foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding
any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance
by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the
Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and
implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common
Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property**

under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "***Released Parties***" means, collectively:  (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "***Releasing Parties***" means, collectively:  (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)        Under the Plan, "***Excluded Party***" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

## Item 3.  Contributed Claims.

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors. In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third parties associated with Celsius that are not released under the Plan.  However, it may be difficult and expensive for individual creditors to sue third parties for losses.  Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors.  By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors.  As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their claims.  In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries and will not be distributed solely to you**.  For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Post-Effective Date Debtors, which will allow the Litigation Administrator to potentially seek greater recoveries for the benefit of Holders of Claims.**

<blockquote>☐    **By checking this box, you elect to contribute your Contributed Claims to the Post-Effective Date Debtors.**</blockquote>

Definitions Related to Contributed Claims:

(1)        Under the Plan, "Contributed Claim" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided*, *however*, that Contributed Claims do not include

(i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(2)     Under the Plan, "Contributing Claimant" means any Holder of a Claim or Interest that elects through its Ballot, in accordance with the procedures set forth in <u>Article IX</u> of the Disclosure Statement, to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

**<u>Item 4</u>.    Certifications.**

By signing this Opt-Out Notice, the undersigned certifies:

(a)     that, as of the Record Date, either:  (i) the Entity is the Holder of the Claims set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims set forth in Item 1;

(b)     that the Holder has received a copy of the *Notice of (I) Non-Voting Status With Respect to Disputed Claims, (II) Opportunity to Opt Out of the Third-Party Releases, and (III) Opportunity to Contribute Claims* and that this Opt-Out Notice is submitted pursuant to the terms and conditions set forth therein;

(c)     that the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class set forth in Item 1; and

(d)     that no other Opt-Out Notice with respect to the amount(s) of Claims identified in Item 1 have been submitted or, if any other Opt-Out Notices have been submitted with respect to such Claims, then any such earlier Opt-Out Notices are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Signatory Name (if other than the Holder): | _____ |
| Title (if other than the Holder): | _____ |
| Address: | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION AND/OR ELECT TO CONTRIBUTE YOUR CLAIMS, PLEASE SUBMIT THE ELECTRONIC VERSION OF YOUR OPT-OUT NOTICE THROUGH THE E-BALLOTING PORTAL PER INSTRUCTIONS PROVIDED BELOW:**

To submit your Opt-Out Notice via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Opt-Out Notice.

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Opt-Out Notices will be accepted via electronic or online transmission. Opt-Out Notices submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Please complete and submit an Opt-Out Notice for each Opt-Out Notice you receive, as applicable.

New York, New York
Dated: August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:              joshua.sussberg@kirkland.com

  - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:              patrick nash@kirkland.com
                      ross kwasteniet@kirkland.com
                      chris.koenig@kirkland.com
                      dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

# Exhibit 3A

## Account Holder Ballot

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

HOLDERS OF CLAIMS IN CLASSES:
Class 2 Retail Borrower Deposit Claims
Class 4 Convenience Claims
Class 5 General Earn Claims
Class 6A General Custody Claims
Class 7 Withhold Claims

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS ACCOUNT HOLDER BALLOT CAREFULLY *BEFORE* COMPLETING THIS ACCOUNT HOLDER BALLOT.**

**PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS ACCOUNT HOLDER BALLOT.**

**THIS ACCOUNT HOLDER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>").**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE READ – YOUR RESPONSE IS REQUIRED BY <u>SEPTEMBER 22, 2023, AT 4:00 P.M.,
PREVAILING EASTERN TIME</u>**

- You are receiving this account holder ballot (this "<u>Account Holder Ballot</u>") because you are an Account Holder of above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), who filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

- The Debtors are seeking Bankruptcy Court approval for a chapter 11 plan filed as part of their bankruptcy proceedings.

- Under the Plan, unless you take <u>additional action</u> as described in this Account Holder Ballot, and <u>affirmatively opt out</u>, you will be deemed to release claims you may have against the Debtors' officers and directors (excluding certain members of the Debtors' former management team as further described in the Plan and Disclosure Statement), and certain creditors and other third parties.

- You have the right to opt out and avoid releasing any claims against these third parties. To do so, you must check the opt out box on page fifteen of this Account Holder Ballot and return this Account Holder Ballot to the Claims, Noticing, and Solicitation Agent by the Voting Deadline. The applicable definitions of Released Parties and Releasing Parties are also attached to this Account Holder Ballot for your convenience of review. These defined terms control the scope of the release provisions.

- If you vote to accept the Plan in <u>Item 9</u> of this Account Holder Ballot, you will be bound by the releases set forth in the Plan. If you vote to accept the Plan in <u>Item 9</u> of this Account Holder Ballot <u>AND</u> you also elect to opt out of the Third-Party Releases set forth in <u>Item 10</u> of this Account Holder Ballot, your vote to accept the Plan shall control and you shall be deemed a "Releasing Party" under the Plan.

The Debtors are soliciting votes to accept or reject the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"), attached as <u>Exhibit A</u> to the *Disclosure Statement for the Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>").[2] The Disclosure Statement provides you with information to make an informed decision as to whether you will vote to accept or reject the Plan. Votes are being solicited from Holders of Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, Withhold Claims, Unsecured Loan Claims, General Unsecured Claims, State Regulatory Claims, and Series B Preferred Interests (each, a "<u>Voting Class</u>" and collectively, the "<u>Voting Classes</u>").

You are receiving this Account Holder Ballot because you are the Holder of a Retail Borrower Deposit Claim, Convenience Claim, General Earn Claim, General Custody Claim, and/or Withhold Claim (each an "<u>Account Holder Claim</u>" and collectively, the "<u>Account Holder Claims</u>") as of **<u>July 24, 2023</u>** (the "<u>Voting Record Date</u>"). **For a detailed discussion of the treatment of Account Holder Claims under the Plan, please read the Disclosure Statement.**

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

**IMPORTANT NOTE REGARDING THE CLASS CLAIM SETTLEMENT**

As part of these Chapter 11 Cases, the Committee filed a class proof of claim against each Debtor on behalf of all Account Holders.  The Debtors and the Committee have settled that class claim and the Bankruptcy Court entered the *Order (I) Approving the Settlement By And Among The Debtors And The Committee With Respect To The Committee Class Claim and (II) Granting Related Relief* [Docket No. 3288] on August 14, 2023 (the "Class Claim Settlement Order").  The settlement agreement between the Debtors and the Committee is attached as Exhibit 1 to the Class Claim Settlement Order and is described in the *Notice of Class Claim Settlement and Opportunity to Opt Out of Class Claim Settlement* (the "Notice of Claims Settlement"), which is contained in the Solicitation Package that you received with this Account Holder Ballot, and described in Article III.MMM of the Disclosure Statement.  All eligible Account Holders who do not opt out of the Class Claim Settlement on this Account Holder Ballot will receive 105% of the amount of their Account Holder Claims (other than Custody Claims) listed on the Schedules.  Account Holders who participate in the Class Claim Settlement will no longer be entitled to (i) seek recovery of the amounts set forth on their Filed Proof of Claim, if any, which Proof of Claim will be superseded, expunged, and extinguished; (ii) prosecute any allegations against the Debtors set forth in any such Proof of Claim or the Class Claim; and (iii) receive any additional recovery from the Debtors other than the recovery provided for pursuant to the terms of the Class Claim Settlement (*i.e.* 105% of their scheduled claim).

***As part of the Class Claim Settlement, eligible Account Holders (other than Account Holders who only hold Custody Claims) are bound by the Class Claim Settlement unless they opt out of the Class Claim Settlement by checking the box to opt out contained in Item 8 of this Account Holder Ballot (the "Class Claim Settlement Opt-Out").  For the avoidance of any doubt, Account Holders who do NOT check the box in Item 8 of this Account Holder Ballot are bound by the Class Claim Settlement regardless of whether they vote to accept or reject the Plan or abstain from voting on the Plan.***  Account Holders who elect to opt-out of the Class Claim Settlement may vote in favor of the Plan and opt out of the Class Claim Settlement; *provided* that Holders of Account Holder Claims that vote in favor of the Plan shall be bound by the releases set forth in the Plan and shall only retain their rights with respect to their Filed Proof of Claim.  **For a detailed description of the implications of the Class Claim Settlement, please carefully read the Notice of Claims Settlement and Article III.MMM of the Disclosure Statement before deciding whether to make the Class Claim Settlement Opt-Out.**

**ACCOUNT HOLDER BALLOT**

**Please review the detailed instructions regarding how to complete and submit this Account Holder Ballot attached hereto as Annex A (the "Account Holder Ballot Instructions").**  Once completed and returned in accordance with the attached Account Holder Ballot Instructions, your vote on the Plan will be counted in each of the Voting Classes in which you hold Claims.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in that Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  After confirmation, the Plan will be binding on all Holders of Claims, among others.

**TO HAVE YOUR VOTE COUNT AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, YOU MUST COMPLETE AND RETURN THIS ACCOUNT HOLDER BALLOT VIA THE ONLINE VOTING PORTAL SO THAT THE CLAIMS, NOTICING, AND SOLICITATION AGENT ACTUALLY RECEIVES IT ON OR BEFORE THE VOTING DEADLINE OF SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

To vote, you MUST:  (a) fully complete this Account Holder Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 9 of this Account Holder Ballot; and (c) sign, date, and return this Account Holder Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

To submit your Account Holder Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Account Holder Ballot.

To submit your Account Holder Ballot via mail, please send to:

<div align="center">
Celsius Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602
</div>

You should review the Disclosure Statement, the Plan, and the Account Holder Ballot Instructions contained herein before you vote to accept or reject the Plan. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Account Holder Claim(s). Your Account Holder Claim(s) have been placed in Class(es) 2, 4, 5, 6A, and/ or 7 under the Plan. If you hold Claims or Interests in Voting Classes other than Classes 2, 4, 5, 6A, and/or 7 you will receive multiple ballots. Each ballot must be completed and returned by the Voting Deadline for the votes on the respective ballots to be counted.

As further described in the Committee Letter, the Committee recommends that you vote to accept the Plan, do **not** opt out of the Class Claim Settlement, and contribute your third-party claims.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Account Holder Ballot. If you desire paper copies of the Solicitation Package materials, or if you need to obtain additional Solicitation Packages, you may obtain them by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-587 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

This Account Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making certain elections contained herein, and making certifications with respect to the Plan. If you believe you have received this Account Holder Ballot in error, please contact the Claims, Noticing, and Solicitation Agent **immediately** at the address, telephone number, or email address set forth above.

If the Bankruptcy Court confirms the Plan, the terms of the Plan will bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan.

To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Account Holder Ballot so that the Claims, Noticing, and Solicitation Agent **actually receives** it on or before the Voting Deadline.

<div align="center">

**THE VOTING DEADLINE IS ON SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

*Our records reflect that you are eligible to make the following elections:*

*[STRETTO TO PREPRINT WHICH ELECTION ACCOUNT HOLDER IS ELIGIBLE FOR].*

*If you decide to make any of the elections contained in this Account Holders Ballot, your election will apply to all of your Account Holders Claims entitled to such election; provided, however, if you decided to make the Class Claim Settlement Opt-Out, such election will not apply to any Custody Claim you hold.*

</div>

<u>Item 1</u>.    **Amount of Allowed Account Holder Claims.**

**For purposes of voting to accept or reject the Plan, Allowed Account Holder Claims will be valued and tabulated using the amounts set forth in the Debtors' Schedules**. Solely to the extent that you filed a Proof of Claim and wish to vote your Account Holder Claims in amounts other than those Scheduled by the Debtors, you must

<div align="center">4</div>

file a motion under Bankruptcy Rule 3018 for that purpose, as set forth in the Solicitation and Voting Procedures.  For the avoidance of doubt, the amount of your Account Holder Claims as listed in this **Item 1** reflects the Scheduled amount of your Account Holder Claims in U.S. dollars based on the price of the relevant cryptocurrency as of the Petition Date as set forth on the Cryptocurrency Conversion Table (attached as <u>Exhibit L</u> to the Disclosure Statement).

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Account Holder Claims in the Voting Classes as set forth below (your "<u>Claims</u>") and understands that the undersigned is eligible to make the elections as set forth below (your "<u>Elections</u>").

| **Scheduled Amounts Listed in Account** |
| --- |
| **Earn Account:  ____[TO BE PREPRINTED BY STRETTO]_____** |
| **Custody Account:  ____[TO BE PREPRINTED BY STRETTO]_____** |
| **Withhold Account:  ____[TO BE PREPRINTED BY STRETTO]_____** |

| **Voting Class** | **Description** | **Claim Amount**[3] | **Applicable Election Eligibility** |
| --- | --- | --- | --- |
| Class 2 | Retail Borrower Deposit Claims | Retail Borrower Deposit Claim Based On Balance of Cryptocurrency Supporting Loan: ____[PREPRINTED RETAIL BORROWER DEPOSIT CLAIM BASED ON BALANCE OF YOUR CRYPTOCURRENCY SUPPORTING LOAN IN DOLLARS]_____<br><br>Retail Advance Obligation (*i.e.* your outstanding loan amount): ____[PREPRINTED RETAIL ADVANCE OBLIGATION IN DOLLARS]____<br><br>Retail Borrower Post-Set Off Claim: ____[PREPRINTED RETAIL BORROWER POST-SETOFF CLAIM IN DOLLARS]____ [4] | ____[TO BE PREPRINTED BY STRETTO]_____ |

---

[3]  Calculated in U.S. Dollars as of the Petition Date utilizing the conversion rates provided in the Cryptocurrency Conversion Table; *provided*, *however*, CEL Token shall be valued as provided in <u>Article IV.B.2</u> of the Plan.

[4]  This amount is the remaining Claim after your Retail Advance Obligation is subtracted from your Retail Borrower Deposit Claim.

| Voting Class | Description | Claim Amount[3] | Applicable Election Eligibility |
|---|---|---|---|
| Class 4 | Convenience Claims | Earn Claims: ____[TO BE PREPRINTED BY STRETTO IN DOLLARS]____<br><br>Withhold Claims: ____[TO BE PREPRINTED BY STRETTO IN DOLLARS]____<br><br>Total Convenience Claims: ____[TO BE PREPRINTED BY STRETTO IN DOLLARS]____ | ____[TO BE PREPRINTED BY STRETTO]____ |
| Class 5 | General Earn Claims | ____[TO BE PREPRINTED BY STRETTO IN DOLLARS]____ | ____[TO BE PREPRINTED BY STRETTO]____ |
| Class 6A | General Custody Claims | ____[TO BE PREPRINTED BY STRETTO IN DOLLARS]____ | ____[TO BE PREPRINTED BY STRETTO]____ |
| Class 7 | Withhold Claims | ____[TO BE PREPRINTED BY STRETTO IN DOLLARS]____ | ____[TO BE PREPRINTED BY STRETTO]____ |

| Withdrawal Preference Exposure | Amount |
|---|---|
| [Yes / No] | ____[TO BE PREPRINTED BY STRETTO IN DOLLARS]____ |

Subject to the terms and conditions of Article III.B of the Plan, you will receive the treatment for your Account Holder Claims identified in the applicable items below. **For additional discussion of the treatment and rights for Account Holder Claims under the Plan, please read the Disclosure Statement and the Plan.**

**Item 2.**    **Guide for Filling Out this Account Holder Ballot.**

**All Account Holders**:  The bullets below list the Items where Account Holders with Claims in each particular Class should make elections.  All Holders of Account Holder Claims should review and consider whether to make the elections in this Account Holder Ballot relevant to the Classes in which they hold Claims.  Each election is described in greater detail in the Account Holder Ballot Instructions, which is attached to this Account Holder Ballot as **Annex A**.  All Holders of Account Holder Claims should review the Account Holder Ballot Instructions to understand the contents of this Account Holder Ballot.

All Account Holders should determine whether to opt out of the Class Claim Settlement in **Item 8** and vote to accept or reject the Plan in **Item 9** of this Account Holder Ballot.  Regardless of whether you make the election in **Item 8** you should vote to accept or reject the Plan in **Item 9** of this Account Holder Ballot.

- **Holder of Class 2 Retail Borrower Deposit Claims**: All Holders of Class 2 Retail Borrower Deposit Claims should review **Item 3** and **Item 8** of this Account Holder Ballot, and vote to accept or reject the Plan in **Item 9** of this Account Holder Ballot.

- **Holders of Class 4 Convenience Claims**: All Holders of Class 4 Convenience Claims should review *__Item 4__* and *__Item 8__* of this Account Holder Ballot, and vote to accept or reject the Plan in *__Item 9__* of this Account Holder Ballot.

- **Holders of Class 5 General Earn Claims**: All Holders of Class 5 General Earn Claims should review and carefully consider whether to complete the elections in *__Item 5__*, *__Item 6__*, and/or *__Item 8__* of this Account Holder Ballot. If you do **not** complete **either** *__Item 5__* or *__Item 6__* you should vote to accept or reject the Plan in *__Item 9__* of this Account Holder Ballot.

- **Holders of Class 6A General Custody Claims**: All Holders of Class 6A General Custody Claims, as listed in the chart in **Item 1**, that have **not** already accepted the Custody Settlement should review *__Item 7__* and then vote to accept or reject the Plan in *__Item 9__* of this Account Holder Ballot.

- **Holders of Class 7 Withhold Claims**: All Holders of Class 7 Withhold Claims, as listed in the chart in **Item 1**, should review and carefully consider whether to complete the election in *__Item 6__* of this Account Holder Ballot. If you do **not** complete the election in *__Item 6__*, you should vote to accept or reject the Plan in *__Item 9__* of this Account Holder Ballot.

If you make **any** of the elections contained in *__Item 5__* or *__Item 6__* of this Account Holder Ballot, **your vote will automatically be counted as a vote to accept the plan**.

**Item 3.    Treatment of Retail Borrower Deposit Claims**

A "Retail Borrower Deposit Claim" means a Retail Borrower's Claim against the Debtors on account of the Cryptocurrency such Retail Borrower transferred in connection with its Retail Advance Obligation(s).

| Voting Class | Description | Treatment |
|---|---|---|
| Class 2 | Retail Borrower Deposit Claims | Pursuant to Article III.B.2 of the Plan, each Holder of a Retail Borrower Deposit Claim shall receive. <br><br> (i) **Repayment Election:** If the Retail Borrower, (1) makes the Retail Advance Obligation Repayment Election and (2) actually repays all or a portion of its Retail Advance Obligations in accordance with the Retail Advance Obligation Repayment Instructions[5] by the Retail Advance Obligation Repayment Deadline, such Retail Borrower shall receive an amount of BTC or ETH (at the Retail Borrower's election) equal to the Retail Advance Obligation Repayment Amount; <br><br> ***or*** <br><br> **Setoff Treatment:** If the Retail Borrower (1) does not make the Retail Advance Obligation Repayment Election or (2) fails to repay all or a portion of its Retail Advance Obligations in accordance with the Retail Advance Obligation Repayment Instructions by the Retail Advance Obligation Repayment Deadline, such Retail Borrower shall receive the Set Off |

---

[5] To the extent the Plan is confirmed, the Retail Advance Obligation Repayment Instructions will be emailed to all Retail Borrowers at least thirty (30) calendar days prior to the anticipated Effective Date, which instruction shall specify the Retail Advance Obligation Payment Deadline.

| Voting Class | Description | Treatment |
|---|---|---|
| | | Treatment on account of any Retail Advance Obligations it has not repaid in accordance with (i) above;<br><br>***plus***<br><br>(ii) On account of the Retail Borrower Post-Set Off Claim, if any, subject to a redistribution of consideration to accommodate Unsecured Claim Distribution Mix Elections, its Pro Rata amount of the Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock). Any Liquid Cryptocurrency Weighted Distribution Election on account of a Retail Borrower Post-Set Off Claim shall be given priority over all other such elections.<br><br>In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed Retail Borrower Post-Set Off Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) the Backup MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections. |

**Item 4. Treatment of Convenience Claims**

A "Convenience Claim" means any aggregate Account Holder Claim (excluding Custody Claims and Retail Borrower Deposit Claims but including Retail Borrower Post-Set Off Claims) valued greater than the *De Minimis* Claim Threshold ($10.00) but less than or equal to the Convenience Claim Threshold ($5,000).

| Voting Class | Description | Treatment |
|---|---|---|
| Class 4 | Convenience Claims | Pursuant to Article III.B.4 of the Plan, each Holder of an Allowed Convenience Claim shall receive Liquid Cryptocurrency in an amount that provides a 70% recovery (calculated in accordance with the Distribution Cryptocurrency Conversion Table) on account of such Convenience Claim. |

**Item 5. Optional Convenience Claim Election for Class 2 Retail Borrower Post-Set Off Claims, Class 5 General Earn Claims and Class 7 Withhold Claims**

Account Holders whose Claims (excluding Custody Claims and Retail Borrower Deposit Claims but including Retail Borrower Post-Set Off Claims) total more than $5,000 may irrevocably elect to have their Claims reduced to $5,000 and receive the treatment for Class 4 as Convenience Claims. By opting to receive Convenience Class treatment for your Claims (*i.e.*, choosing the Convenience Claim Election), the ***aggregate*** amount of your Account Holder Claims (excluding Custody Claims) will be irrevocably reduced to $5,000. Please review the below chart to understand the difference in the treatment for Class 4 Convenience Claims compared to your applicable Claims.

| Voting Class | Description | Treatment |
|---|---|---|
| Class 4 | Convenience Claims | Pursuant to Article III.B.4 of the Plan, each Holder of an Allowed Convenience Claim shall receive Liquid Cryptocurrency in an amount that provides a 70% recovery (calculated in accordance with the Distribution |

| Voting Class | Description | Treatment |
|---|---|---|
| | | Cryptocurrency Conversion Table) on account of such Convenience Claim. |
| Class 5 | General Earn Claims | Pursuant to Article III.B.5 of the Plan, subject to a redistribution of consideration to accommodate Unsecured Claim Distribution Mix Elections, each Holder of an Allowed General Earn Claim shall receive its Pro Rata share of the Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock).<br><br>In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed General Earn Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) the Backup MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections. |
| Class 7 | Withhold Claims | Pursuant to Article III.B.7 of the Plan:<br><br>(i)    Each Holder of an Allowed Withhold Claim that is not an Equitably Subordinated Claim shall receive the following treatment, as applicable:<br><br>a.    **Treatment A**: If Class 7 votes to accept the Plan described herein, each such Holder of an Allowed Withhold Claim shall receive (a) a distribution of Cryptocurrency equal to 15% of the value of such Holder's Withhold Distribution Claim, calculated in accordance with the Conversion Procedure (as defined and described in the Disclosure Statement), and (b) the remaining 85% of the value of such Holder's Allowed Withhold Distribution Claim shall be satisfied with a Pro Rata share of the Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock).<br><br>b.    **Treatment B**: If Class 7 does not vote to accept the Plan described herein, each such Holder of an Allowed Withhold Claim shall be satisfied with a Pro Rata share of the Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock).<br><br>In the event that the Debtors pursue the Orderly Wind Down, the above Treatment A and Treatment B shall remain, but the Unsecured Claim Distribution Consideration shall consist of (a) the Liquid Cryptocurrency Distribution Amount, (b) the Backup MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections.<br><br>(ii)    For the avoidance of doubt, any former Holder of an Allowed Withhold Claim that participated in the Withhold Settlement no |

| Voting Class | Description | Treatment |
|---|---|---|
|  |  | longer has a Withhold Claim and has an Earn Claim in accordance with the terms of the Withhold Settlement. |

Holders of Retail Borrower Post-Sett Off Claims, Class 5 General Earn Claims, or Class 7 Withhold Claims that would like to **make** the Convenience Claim Election and receive the Convenience Claim Treatment, should check the box below. Checking the box below constitutes a vote to *accept* the Plan. For the avoidance of doubt, *you must vote to accept the Plan on account of all your Claims (other than any Class 6A General Custody Claims that have not accepted the Custody Settlement) to make the Convenience Claim Election*.

The undersigned, a Holder of a Retail Borrower Post-Set Off Claim, Class 5 General Earn Claim and/or Class 7 Withhold Claim, as applicable, against the Debtors as set forth in the chart in **Item 1**, elects as follows:

☐ **Accepts the Convenience Claim Election** and the reduction of their Class 5 General Earn Claims, Class 7 Withhold Claims, and Retail Borrower Post-Set Off Claim (if any) to the Convenience Claim Threshold of $5,000 and hereby votes all their Claims (other than any Class 6A General Custody Claims that have not accepted the Custody Settlement) in favor of the Plan and to receive the Convenience Claim Treatment on this reduced Claim amount.

In the event of any inconsistent elections on this Account Holder Ballot, a valid acceptance of the Convenience Claim Election will control and your Account Holder Ballot will be deemed to vote to accept the Plan.

**Item 6. Optional Election for Holders of Class 2 Retail Borrower Deposit Claims (on behalf of such Holder's Retail Borrower Post-Set Off Claim), Class 5 General Earn Claims, and Class 7 Withhold Claims Regarding the Form of Their Distribution**

Pursuant to Article III.B.2, Article III.B.5, and Article III.B.7 of the Plan, a Holder of a General Earn Claim or any other Claim on account of which the Holder will receive the Unsecured Claim Distribution Consideration may express a preference to receive a greater share of NewCo Common Stock in lieu of some or all of the Holder's Pro Rata share of the Liquid Cryptocurrency Distribution Amount. This election is referred to as the "NewCo Common Stock Weighted Distribution Election." Whether the Debtors may honor any NewCo Common Stock Weighted Distribution Election depends on the elections made by all Account Holders. Importantly, if a Holder's NewCo Common Stock Weighted Distribution Election is honored, such Holder will receive incremental NewCo Common Stock at a 30% premium as compared to the Liquid Cryptocurrency Distribution Amount the Holder forfeits. The Liquid Cryptocurrency Distribution Amount forfeited, and therefore the amount of additional NewCo Common Stock received, will depend on the elections made by Account Holders in the Aggregate.

Conversely, any such Holder may express a preference to receive a greater share of the Liquid Cryptocurrency Distribution Amount in lieu of some or all of such Holder's Pro Rata share of NewCo Common Stock. This election is referred to as the "Liquid Cryptocurrency Weighted Distribution Election." Whether the Debtors may honor any Liquid Cryptocurrency Weighted Distribution Election depends on the elections made by all Account Holders. Importantly, if a Holder's Liquid Cryptocurrency Weighted Distribution Election is honored, such Holder will forfeit all or a portion of the Holder's NewCo Common Stock distribution at a 30% discount to the NewCo Common Stock it is forfeiting. The amount of NewCo Common Stock forfeited, and therefore the amount of Liquid Cryptocurrency received, will depend on the elections made by Account Holders in the aggregate.

Please also note that any Liquid Cryptocurrency Weighted Distribution Election on account of a Retail Borrower Post-Set Off Claim will be given priority over the Liquid Cryptocurrency Weighted Distribution Elections made by other eligible Holders of Claims.

For illustrative purposes only, a side-by-side example comparing three different treatment outcomes for a Holder of a General Earn Claim[6] in the amount of $10,000 based on a 67.0% recovery is shown below:

| | No Election (Default) | NewCo Common Stock Weighted Distribution Election[7] | Liquid Cryptocurrency Weighted Distribution Election[8] |
|---|---|---|---|
| Liquid Cryptocurrency | $3,748 | $1,874 | $4,782 |
| NewCo Common Stock | $2,954 | $5,390 | $1,477 |
| Litigation Proceeds | The right to receive a share of the Litigation Proceeds | | |
| **Total Recovery:** | **$6,702** | **$7,264** | **$6,259** |
| **% of Recovery Change:** | **N/A** | **Increase of ~8%** | **Decrease of ~7%** |

Holders of Class 2 Retail Borrower Deposit Claims (on behalf of such Holder's Retail Borrower Post-Set Off Claim), Class 5 General Earn Claims, and Class 7 Withhold Claims that would like to make either the NewCo Common Stock Weighted Distribution Election or the Liquid Cryptocurrency Weighted Distribution Election should check the applicable box below (**please only check one box, if any**).  If you accept either election, **your Ballot will automatically be counted as a vote to accept the plan**.

Please note that if you prefer not to make either election, you do not need to check either box in this **Item 6**.

The undersigned, a Holder of a Class 2 Retail Borrower Post-Set Off Claim, Class 5 General Earn Claim, and/or Class 7 Withhold Claim against the Debtors as set forth in the chart in **Item 1**, elects as follows:

☐ **Accepts the NewCo Common Stock Weighted Distribution Election** and agrees to receive a greater share of the NewCo Common Stock in lieu of *some or all* of such Holder's Pro Rata share of the Liquid Cryptocurrency Distribution Amount and hereby votes all their Claims (other than any Class 6A General Custody Claims that have not accepted the Custody Settlement) to accept the Plan;

- OR -

☐ **Accepts the Liquid Cryptocurrency Weighted Distribution Election** and agrees to receive a greater share of the Liquid Cryptocurrency Distribution Amount in lieu of *some or all* of such Holder's Pro Rata share of the NewCo Common Stock and hereby votes all their Claims (other than any Class 6A General Custody Claims that have not accepted the Custody Settlement) to accept the Plan.

---

[6]  For purposes of this example, the Holder does not have any other Claims.

[7]  Assumes that your Liquid Cryptocurrency Distribution Amount is reduced by 50% in exchange for a greater distribution of NewCo Common Stock.

[8]  Assumes the value of the NewCo Common Stock you would have received is reduced by a total of 50% in exchange for a greater distribution of Liquid Cryptocurrency.

**Item 7.  Custody Claim Information** (*to be reviewed by Holders of Claims in Class 6A*)

The "Custody Program" means the prepetition program through which the Debtors allowed Account Holders to store Cryptocurrency on the Debtors' platform pursuant to Section 4.B of the General Terms of Use.  The "Custody Settlement" means the full and final settlement and resolution of all disputes regarding the Custody Program with respect to Custody Settlement Participants, as set forth in Article III.B.6A of the Plan and the Custody Settlement Order.

| Voting Class | Description | Treatment |
|---|---|---|
| Class 6A | General Custody Claims | Pursuant to Article III.B.6A of the Plan, each such Holder of a General Custody Claim shall have the opportunity to elect, through its Ballot in accordance with the procedures set forth in Article IX of the Disclosure Statement, one of two treatments:<br><br>a.  **Treatment A**:  (a) a distribution of Cryptocurrency equal to 72.5% of the amount of such Allowed General Custody Claim on the Effective Date in-kind and (b) a full and final release of all Causes of Action, including Avoidance Actions, with respect to such Allowed General Custody Claim; *provided* that Custody Settlement Participants that (1) are not Excluded Parties and (2) have Withdrawal Preference Exposure under $100,000 shall receive a 100% recovery under Treatment A, as provided in **Error! Reference source not found.** of the Plan.<br><br>b.  **Treatment B**:  The Cryptocurrency associated with the applicable Allowed General Custody Claim will be transferred to a segregated wallet held by the Post-Effective Date Debtors and shall be subject to all Avoidance Actions and other claims with respect to such Allowed General Custody Claim.  The Litigation Administrator(s) shall have 180 days to bring any Avoidance Action or other claim against such Account Holder with respect to such assets, such time period subject to extension by the Bankruptcy Court following notice and a hearing.  To the extent no such action is brought and no settlement is reached in the time period set forth in the immediately preceding sentence (as extended), such assets shall be released to the Holder of the applicable Allowed General Custody Claim.  Any such Allowed General Custody Claim will be subject to the ADR Procedures.<br><br>For Custody Settlement Participants:  Each such Holder of an Allowed General Custody Claim shall receive a distribution on the Effective Date equal to the amount set forth in Treatment A, above, minus any amounts already received under such settlement; *provided* that any votes cast by such Holder on account of such General Custody Claim, whether to accept or reject the Plan, shall be deemed votes to accept the Plan consistent with the terms of the Custody Settlement Motion and any such Holder that abstains from voting on the Plan shall also be deemed to accept the Plan on account of such General Custody Claim consistent with the terms of the Custody Settlement Motion; *provided*, *further*, that Custody Settlement Participants that (1) are not Excluded Parties and (2) have Withdrawal Preference |

| Voting Class | Description | Treatment |
|---|---|---|
| | | Exposure under \$100,000 shall receive a 100% recovery, as provided in **Error! Reference source not found.** of the Plan. |

Holders of Class 6A General Custody Claims that have not previously accepted the Custody Settlement and would like to accept the Custody Settlement and receive Treatment A set forth above should vote to accept the Plan in ***Item 9***.

Please note, if you previously accepted the Custody Settlement in accordance with the terms of the Custody Settlement Order, your Claims in Class 6A will automatically be counted as votes to accept the Plan.

**Item 8.** **Class Claim Settlement Opt-Out**

AS A HOLDER OF AN ACCOUNT HOLDER CLAIM, YOU ARE ENTITLED TO OPT-OUT OF THE CLASS CLAIM SETTLEMENT FOR ALL YOUR ACCOUNT HOLDER CLAIMS OTHER THAN WITH RESPECT TO CUSTODY CLAIMS. BEFORE DECIDING WHETHER TO MAKE THE CLASS CLAIM SETTLEMENT OPT-OUT, PLEASE CAREFULLY READ THE DIFFERENCE IN TREATMENTS BETWEEN YOUR ACCOUNT HOLDER CLAIMS (OTHER THAN WITH RESPECT TO ANY CUSTODY CLAIM YOU MAY HOLD). THE CLASS CLAIM SETTLEMENT AND ITS IMPLICATIONS ARE DETAILED IN THE NOTICE OF CLAIMS SETTLEMENT AS WELL AS ARTICLE III.MMM OF THE DISCLOSURE STATEMENT, WHICH IS INCLUDED IN THE SOLICITATION PACKAGE THAT ALSO CONTAINED THIS ACCOUNT HOLDER BALLOT.

IF YOU DO NOT OPT OUT OF THE CLASS CLAIM SETTLEMENT IN THIS **ITEM 8**, YOU SHALL RECEIVE, INSTEAD OF ANY SCHEDULED CLAIM AND/OR FILED PROOF OF CLAIM, A CLAIM EQUAL TO 105% OF THE SCHEDULED AMOUNT OF SUCH CLAIM IN THE SAME TYPE OF ACCOUNT HOLDER CLAIM (*E.G.*, A SCHEDULED GENERAL EARN CLAIM FOR \$10,000 SHALL RECEIVE A SCHEDULED GENERAL EARN CLAIM IN AN AMOUNT OF \$10,500 AND SUCH INCREASED CLAIM SHALL RECEIVE THE TREATMENT PROVIDED TO SUCH CLAIM SET FORTH ABOVE). ADDITIONALLY, IF YOU DO NOT OPT OUT OF THE CLASS CLAIM SETTLEMENT, YOU SHALL (A) NO LONGER BE ENTITLED TO THE AMOUNTS SET FORTH ON ANY FILED PROOF OF CLAIM, (B) NO LONGER BE ENTITLED TO PROSECUTE ANY ALLEGATIONS AGAINST THE DEBTORS SET FORTH IN ANY SUCH PROOF OF CLAIM OR THE CLASS CLAIM, AND (C) BE LIMITED TO RECEIVING A RECOVERY FROM THE DEBTORS WITH RESPECT TO A SETTLEMENT CLAIM PURSUANT TO THE TREATMENT PROVIDED IN THE PLAN.

YOU MAY CHECK THE BOX BELOW TO ELECT TO MAKE THE CLASS CLAIM SETTLEMENT OPT-OUT. **BY OPTING OUT OF THE CLASS CLAIM SETTLEMENT SET FORTH IN ARTICLE IV.B.8 OF THE PLAN, YOU WILL NOT RECEIVE A CLAIM EQUAL TO 105% OF THE SCHEDULED AMOUNT OF YOUR CLAIM (*I.E.,* THE SETTLEMENT CLAIM). IF YOU DECIDE TO MAKE THE CLASS CLAIM SETTLEMENT OPT-OUT, YOUR ACCOUNT HOLDER CLAIMS (OTHER THAN CUSTODY CLAIMS) SHALL BE TREATED AS DISPUTED CLAIMS UNDER THE PLAN AND SHALL NOT RECEIVE A DISTRIBUTION ON THE EFFECTIVE DATE. RATHER, YOU SHALL RECEIVE A DISTRIBUTION (IF ANY) ON THE DATE ANY SUCH DISPUTED CLAIM IS RESOLVED IN THE CLAIMS RECONCILIATION PROCESS. SHOULD YOU DECIDED TO MAKE THE CLASS CLAIM SETTLEMENT OPT-OUT, THE DISTRIBUTION THAT YOU ULTIMATELY MAY RECEIVE WILL DEPEND ON THE OUTCOME OF SUCH CLAIMS RECONCILIATION PROCESS AND/OR LITIGATION.**

CUSTODY CLAIMS ARE NOT ENTITLED TO PARTICIPATE IN THE CLASS CLAIM SETTLEMENT. HOLDERS OF CUSTODY CLAIMS MAY INSTEAD PARTICIPATE IN THE CUSTODY SETTLEMENT BY VOTING TO ACCEPT THE PLAN, AS FURTHER DESCRIBED IN **ITEM 7** OF THIS ACCOUNT HOLDER BALLOT. IF YOU ARE A HOLDER OF ACCOUNT HOLDER CLAIMS IN CLASSES 2, 5, 6A, AND/OR 7,

YOUR DECISION TO MAKE THE CLASS CLAIM SETTLEMENT OPT-OUT WILL ONLY COUNT TOWARDS YOUR ACCOUNT HOLDER CLAIMS IN CLASSES 2, 5, AND/OR 7 AND SHALL NOT COUNT TOWARDS YOUR CLASS 6A CLAIM.

EACH ACCOUNT HOLDER SHALL ONLY BE ENTITLED TO VOTE IN THE AMOUNT OF SUCH ACCOUNT HOLDER'S PRE-CLASS CLAIM SETTLEMENT SCHEDULED CLAIM(S) AS FURTHER EXPLAINED IN THE SOLICITATION AND VOTING PROCEDURES, WHICH YOU HAVE RECEIVED IN THE SOLICITATION PACKAGE THAT ALSO CONTAINED THIS ACCOUNT HOLDER BALLOT.  FOR THE AVOIDANCE OF ANY DOUBT, NOTHING CONTAINED IN THE CLASS CLAIM SETTLEMENT AGREEMENT SHALL ALTER ANY CLAIM(S) THE DEBTORS AND/OR ANY OTHER THIRD-PARTY MAY HOLD AGAINST THE EXCLUDED PARTIES, AND THE EXCLUDED PARTIES SHALL NOT BE DEEMED "RELEASING PARTIES" UNDER THE PLAN.  AS FURTHER DETAILED BELOW, A SCHEDULE OF THE RELEASED PARTIES, EXCULPATED PARTIES, AND EXCLUDED PARTIES IS ATTACHED AS **ANNEX B** TO THIS ACCOUNT HOLDER BALLOT.

FOR THE AVOIDANCE OF ANY DOUBT, REGARDLESS OF WHETHER YOU OPT OUT OF THE CLASS CLAIM SETTLEMENT, YOU ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN IN **ITEM 9** OF THIS ACCOUNT HOLDER BALLOT.  IF YOU VOTE TO ACCEPT THE PLAN, HOWEVER, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN AND SHALL ONLY RETAIN YOUR RIGHTS WITH RESPECT TO YOUR FILED PROOFS OF CLAIM.

**The Debtors and the Committee strongly encourage you to _NOT_ check the box below, and instead participate in the Class Claim Settlement.  By _NOT_ checking the box below, you shall be deemed a Class Claim Settlement Participant as defined in the Plan.**

---

☐    **By checking this box, you elect to _OPT OUT OF_ the Class Claim Settlement as set forth above.**

---

**Item 9**.  **Vote on Plan**

You are eligible to vote to accept or reject the Plan in this **Item 9** _unless_ you made an election in **Item 5** or **Item 6** _or_ you already accepted the Custody Settlement, in which case your Claims will be counted as votes to accept the Plan, regardless of any boxes checked below.  To vote in this **Item 9**, you must check the applicable box in the right-hand column below to "accept" or "reject" the Plan.

Please note that you are required to vote all of your Claims (other than any Class 6A General Custody Claims that have not accepted the Custody Settlement) either to accept or reject the Plan.  You **may not** split your vote unless you wish to vote your Claims in Class 6A differently than a vote in respect of any Claims in other Voting Classes.  If you are a Holder of only a Class 6A General Custody Claim, you must vote in the box opposite Class 6A below.  If you are a Holder of a Class 6A General Custody Claim as well as Claims in Classes 4, 5, or 7 and you did not make any elections in **Item 5** or **Item 6**, you must also vote in the box opposite those classes below for a vote on behalf of your Claims in Classes 4, 5, or 7, as applicable, to be counted.  Holders of Account Holder Claims may vote in favor of the Plan and opt out of the Class Claim Settlement; _provided_ that Holders of Account Holder Claims that vote in favor of the Plan shall be bound by the releases set forth in the Plan and shall only retain their rights with respect to their filed Proof of Claim.

Please further note that the Plan contemplates both the NewCo Transactions and Orderly Wind Down.  Your vote to accept or reject the Plan will be counted as a vote to accept or reject both the NewCo Transaction and Orderly Wind Down.  You may not split your vote with respect to the NewCo Transaction and Orderly Wind Down.  For a detailed description of the NewCo Transaction, please carefully read Article III.H of the Disclosure Statement.  For a detailed description of the Orderly Wind Down, please carefully read Article III.I of the Disclosure Statement.

If you **do not** indicate that you either accept or reject the Plan by checking the applicable box below, **and** you did not make any elections in **Item 5** or **Item 6**, **and/or** you have not previously accepted the Custody Settlement, your vote will not be counted in any Voting Class in which you may hold Claims.

*If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.*

The Holder of Account Holder Claims in the Voting Classes set forth below votes to (*please check **one box** in each row in the right column to the extent you hold Claims in the Voting Class listed*):

| Voting Class | Description | Voting to Accept or Reject the Plan |
|---|---|---|
| Class 2 | Retail Borrower Deposit Claims | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 4 | Convenience Claims | |
| Class 5 | General Earn Claims | |
| Class 7 | Withhold Claims | |
| Class 6A | General Custody Claims | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 10.** **Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES. ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.

IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASES CONTAINED IN ARTICLE VIII.D. OF THE PLAN. AS A HOLDER OF AN ACCOUNT HOLDER CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN UNLESS YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING AND OPT OUT OF THE RELEASES CONTAINED IN THE PLAN. YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. IF YOU DECIDE TO OPT OUT OF THE THIRD-PARTY RELEASE IN THIS **ITEM 10**, YOU ARE INELIGIBLE TO PARTICIPATE IN THE AVOIDANCE ACTION SETTLEMENT DESCRIBED IN **ITEM 12** OF THIS ACCOUNT HOLDER BALLOT.

YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU DO NOT CHECK THE BOX BELOW TO OPT OUT OF GRANTING THE RELEASES. YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE. IF YOU VOTED TO ACCEPT THE PLAN, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE. IF YOU VOTED TO ACCEPT THE PLAN AND YOU CHECKED THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS **ITEM 10**, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN. FOR THE AVOIDANCE OF ANY DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 9** OF THIS ACCOUNT HOLDER BALLOT, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN. IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 9** OF THIS ACCOUNT HOLDER BALLOT AND YOU ALSO ELECT TO OPT OUT OF THE THIRD PARTY-RELEASE SET FORTH IN THIS **ITEM 10**, YOUR VOTE TO

ACCEPT THE PLAN SHALL CONTROL AND YOU SHALL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.

| | |
|---|---|
| ☐ | **By checking this box, you elect to <u>OPT OUT OF</u> the Third-Party Release.** |

**<u>Article VIII.D</u> of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the**

**Third-Party Release. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.**

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "***Released Parties***" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party.  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided, further,* that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided, further,* that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "***Releasing Parties***" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)     Under the Plan, "***Excluded Party***" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

A schedule of the Released Parties and Exculpated Parties and a schedule of the Excluded Parties is attached as **Annex B** to this Account Holder Ballot.

## Item 11.  Contributed Claims

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third-parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors.  In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third-parties associated with Celsius that are not released under the Plan.

However, it may be difficult and expensive for individual creditors to sue third-parties for losses. Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors. By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors. As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their claims. In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries, and will not be distributed solely to you**. For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Litigation Administrator, which may allow the Litigation Administrator to obtain greater recoveries for the benefit of Holders of Claims entitled to receive Litigation Proceeds.**

| ☐ | **By checking this box, you elect to contribute your Contributed Claims to the Litigation Administrator.** |
|---|---|

Definitions Related to Contributed Claims:

(1)     Under the Plan, "*Contributed Claim*" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided*, *however*, that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(2)     Under the Plan, "*Contributing Claimant*" means any Holder of a Claim or Interest that elects through its Ballot to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

### Item 12.  Account Holder Avoidance Action Settlement

Pursuant to the Account Holder Avoidance Action Settlement, the Debtor Release contained in Article VIII.B.3 of the Plan shall also release Avoidance Actions against:

> any Account Holder who is not an Excluded Party who (i) has Withdrawal Preference Exposure under $100,000, (ii) votes in favor of the Plan, and (iii) does not opt out of the releases under the Plan.

> any Account Holder who is not an Excluded Party who (i) has Withdrawal Preference Exposure of more than $100,000, (ii) votes in favor of the Plan, (iii) does not opt out of the releases under the Plan, and (iv) provides the Debtors

or the Litigation Administrator, as applicable, with a Cash, Bitcoin, or ETH payment equal to 27.5% of such Account Holder's Withdrawal Preference Exposure no later than 14 days prior to the anticipated Effective Date of the Plan.

For the avoidance of doubt: (a) all Avoidance Actions against ADR-Ineligible Potential Defendants and Excluded Parties are not included in the Account Holder Avoidance Action Settlement and expressly preserved for prosecution by the Litigation Administrator(s) after the Effective Date, (b) Avoidance Actions against Account Holders with *De Minimis* Claims shall be released if such Account Holder with a *De Minimis* Claim otherwise complies with the requirements set forth above other than voting in favor of the Plan (as such Account Holders are not entitled to vote), and (c) as a result of the Account Holder Avoidance Action Release, any Custody Settlement Participant with Withdrawal Preference Exposure under $100,000 shall receive a 100% recovery on their Allowed General Custody Claim.

Any Account Holder who is eligible to participate in the Account Holder Avoidance Action Settlement with Withdrawal Preference Exposure more than $100,000 as set forth in this **Item 12** will be sent wiring instructions following Confirmation of the Plan. If you are interested in potentially setting off any portion of your applicable Account Holder Claims in lieu of providing the Debtors with a Cash, Bitcoin, or ETH payment equal to 27.5% of such Account Holder's Withdrawal Preference Exposure no later than 14 days prior to the anticipated Effective Date of the Plan, please check the box below and the Debtors will be in contact with you to discuss next steps.

<table>
<tr><td>☐</td><td>**By checking this box, you are indicating that you have an interest in setting off a portion of your applicable Account Holder Claims in lieu of providing the Debtors with a Cash, Bitcoin, or ETH payment equal to 27.5% of such Account Holder's Withdrawal Preference Exposure.**</td></tr>
</table>

For the avoidance of doubt, the rights of Account Holders to receive a distribution under the Plan on account of their Claims are not released pursuant to the Account Holder Avoidance Action Settlement. Notwithstanding anything to the contrary in the Plan, the Distribution Agent shall not be required to make a distribution to any Account Holder with unresolved Withdrawal Preference Exposure until such Withdrawal Preference Exposure is resolved.

| **Your Withdrawal Preference Exposure Amount** |
| --- |
| _____[TO BE PREPRINTED BY STRETTO]_____ |

### Item 13. Certifications

1.  The undersigned, as of the Voting Record Date, is (a) the Holder of Account Holder Claims being voted or (b) the authorized signatory for an entity that is a Holder of such Account Holder Claims entitled to accept or decline the Convenience Claim Election, the NewCo Common Stock Weighted Distribution Election, and/or the Liquid Cryptocurrency Weighted Distribution Election, as applicable, and to vote to accept or reject the Plan on behalf of the Holder of such Account Holder Claims;

2.  the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Account Holder Ballot is subject to the terms and conditions set forth therein and herein;

3.  the undersigned has cast the same vote with respect to all of its Account Holder Claims (other than any Class 6A General Custody Claims that have not accepted the Custody Settlement) in connection with the Plan; and

4.  either (a) no other ballot with respect to the same Account Holder Claims identified in **Item 1** has been cast or (b) if any other ballot has been cast with respect to such Account Holder Claims, then any such earlier ballots are hereby revoked and deemed to be null and void; *provided*, *however*, if you have previously accepted the Custody Settlement, you will be deemed to have automatically accepted the Plan with respect to your General Custody Claims and may not vote to reject the Plan with respect to your General Custody Claims.

**Item 14**.  **Account Holder Ballot Completion Information**

If your contact information has changed since you opened a Celsius Account, please fill out this **Item 14** with your current contact information.

Name of Holder:  _____

_____

Signature:  _____

Signatory Name (if other than the Holder):  _____

Title (if other than the Holder):  _____

Address:  _____

Email Address:  _____

Telephone Number:  _____

Date Completed:  _____

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan.  This Account Holder Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS ACCOUNT HOLDER BALLOT AND RETURN IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN.  THIS ACCOUNT HOLDER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE VIA THE ONLINE VOTING PORTAL AT HTTPS://CASE.STRETTO.COM/CELSIUS/BALLOTING.**

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS ACCOUNT HOLDER BALLOT ON OR BEFORE THE VOTING DEADLINE.**

| **Annex A**<br>**Account Holder Claims** |
|---|

### INSTRUCTIONS FOR COMPLETING THIS ACCOUNT HOLDER BALLOT

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Account Holder Ballot or in these instructions (the "<u>Account Holder Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Account Holder Ballot.

**PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS ACCOUNT HOLDER BALLOT.  BEFORE COMPLETING ANY ITEMS ON THE ACCOUNT HOLDER BALLOT, PLEASE REVIEW THE DESCRIPTION OF YOUR CLAIMS, THE TREATMENT OF THOSE CLAIMS, AND ANY APPLICABLE ELECTIONS, AS WELL AS THESE ACCOUNT HOLDER BALLOT INSTRUCTIONS.**

**PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE ACCOUNT HOLDER BALLOT.**

**IF YOU MAKE ANY OF THE ELECTIONS CONTAINED IN <u>ITEM 5</u> OR <u>ITEM 6</u> OF THE ACCOUNT HOLDER BALLOT, YOUR VOTE WILL AUTOMATICALLY BE COUNTED AS A VOTE TO ACCEPT THE PLAN.**

**PLEASE NOTE THAT YOU IF YOU MAKE THE ELECTION IN <u>ITEM 8</u> OF THE ACCOUNT HOLDERS BALLOT, YOU STILL SHOULD VOTE TO ACCEPT OR REJECT THE PLAN.**

#### Optional Convenience Claim Election

A. If you are a Holder of a Class 2 Retail Borrower Deposit Claims (on behalf of such Holder's Retail Borrower Post-Set Off Claim), Class 5 General Earn Claim, or Class 7 Withhold Claim that is valued in the aggregate at more than $5,000 and you wish to make the Convenience Claim Election, check the box in ***Item 5*** of the Account Holder Ballot.  You must make the Convenience Claim Election as to the entire amount of your Class 2 Retail Borrower Post-Set Off Claim, Class 5 General Earn Claim, or Class 7 Withhold Claim.  You may not split your Class 2 Retail Borrower Post-Set Off Claim, Class 5 General Earn Claim, or Class 7 Withhold Claim.

    i. If you make the Convenience Claim Election, all of your Claims (other than any Claims in Class 6A) will be counted as votes to accept the Plan.

    ii. If you <u>do not</u> make the Convenience Claim Election, you should vote your Class 2 Retail Borrower Post-Set Off Claim, Class 5 General Earn Claim, and/or Class 7 Withhold Claim to accept or reject the Plan in ***Item 9***.

B. In the event of any inconsistent elections on the Account Holder Ballot, a valid acceptance of the Convenience Claim Election will control, and the Account Holder Ballot will be deemed to be a vote to accept the Plan.

#### <u>Optional Election for Holders of Class 2 Retail Borrower Post-Set Off Claims, Class 5 General Earn Claims, and/or Class 7 Withhold Claims Regarding the Form of Their Distribution</u>

A. If you are a Holder of a Class 2 Retail Borrower Post-Set Off Claim, Class 5 General Earn Claim, or Class 7 Withhold Claim and:

    i. you wish to make the NewCo Common Stock Weighted Distribution Election, check the first box in ***Item 6*** of the Account Holder Ballot, or

ii.   you wish to make the Liquid Cryptocurrency Weighted Distribution Election, check the second box in ***Item 6*** of the Account Holder Ballot.

B.   If you make either election in ***Item 6***, all of your Claims (other than any Claims in Class 6A) will be counted as votes to accept the Plan.

C.   As set forth in Article III.V of the Disclosure Statement, in the event that you <u>do not</u> make either election in ***Item 6***, you will receive the default distribution of the Unsecured Claim Distribution Consideration on behalf of your Claim, or for a portion of your Claim.  The Unsecured Claim Distribution Consideration shall include (a) the Liquid Cryptocurrency Distribution Amount, (b) Litigation Proceeds, and (c) NewCo Common Stock based on your Pro Rata portion of all Claims entitled to receive such consideration.

D.   If you <u>do not</u> make either election in ***Item 6***, you may vote your Class 2 Retail Borrower Post-Set Off Claim, Class 5 General Earn Claim, or Class 7 Withhold Claim to accept or reject the Plan in ***Item 9***.

2.   The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.   This Account Holder Ballot contains voting options with respect to the Plan.

4.   To vote, you <u>MUST</u>:  (a) fully complete this Account Holder Ballot; (b) clearly indicate your decision to accept or reject the Plan in **Item 9** of this Account Holder Ballot unless you have made an election in **Item 5** or **Item 6**, or your only Claims are in Class 6A and you have already accepted the Custody Settlement; and (c) sign, date, and return this Account Holder Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal as described more fully below.

To submit your Account Holder Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Account Holder Ballot.

To submit your Account Holder Ballot via mail, please send to:

<div align="center">

Celsius Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

</div>

The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Account Holder Ballots will be accepted via electronic or online transmission.  Account Holder Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Account Holders who cast an Account Holder Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also submit a hard copy Account Holder Ballot.

5.   Any Account Holder Ballot submitted that is incomplete, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned via the Claims, Noticing and Solicitation Agent's online voting platform will ***not*** be counted unless the Debtors otherwise determine to accept such Account Holder Ballot, in consultation with the Committee.

6.   To vote, you **MUST** submit your completed Account Holder Ballot via the online voting portal so that it is **ACTUALLY RECEIVED** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline. The Voting Deadline is **September 22, 2023, at 4:00 p.m.**, prevailing Eastern Time.

7. Any Account Holder Ballot received by the Claims, Noticing, and Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine, in consultation with the Committee. No Account Holder Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

8. Delivery of an Account Holder Ballot reflecting your vote to the Claims, Noticing, and Solicitation Agent will be deemed to have occurred only when the Claims, Noticing, and Solicitation Agent actually receives the Account Holder Ballot. In all cases, you should allow sufficient time to assure timely completion and submission of the Account Holder Ballot via the online voting platform.

9. If you deliver multiple Account Holder Ballots for your Account Holder Claims to the Claims, Noticing, and Solicitation Agent, **only** the last properly executed Account Holder Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Account Holder Ballot(s) for your Account Holder Claims.

10. You must vote all of your Account Holder Claims (other than any Class 6A General Custody Claims that have not accepted the Custody Settlement) either to accept or reject the Plan and may not split your vote. Furthermore, if a Holder has multiple Account Holder Claims within Class(es) 2, 4, 5, and/or 7 such claims shall be aggregated for the purpose of counting votes.

11. This Account Holder Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

12. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

13. *You must SIGN AND DATE* your Account Holder Ballot.[1] An Account Holder Ballot properly submitted via the Claims, Noticing, and Solicitation Agent's online voting portal shall be deemed to contain an original signature of the Holder submitting such Ballot. Please provide your name and mailing address in the space provided on this Account Holder Ballot if it is different from that set forth on the Account Holder Ballot or if no address is presented on the Account Holder Ballot.

14. Except with respect to your Account Holder Claims, if you have claims in other Voting Classes, you may receive more than one ballot coded for each such account for which your Claims are held. Each ballot votes only your Claims indicated on that ballot. Accordingly, complete and return each ballot you receive.

**PLEASE RETURN YOUR ACCOUNT HOLDER BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS ACCOUNT HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT: (855) 423-1530 (TOLL-FREE) OR +1 (949) 669-587 (INTERNATIONAL)**

---

[1] If you are signing an Account Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims, Noticing, and Solicitation Agent, the Debtors, the Debtors' counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

OR    EMAIL    CELSIUSINQUIRIES@STRETTO.COM    AND    REFERENCE    "IN    RE
CELSIUS - SOLICITATION INQUIRY" IN THE SUBJECT LINE.

---

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS
ACCOUNT HOLDER BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

**Annex B**

Schedule of Released and Exculpated Parties, and Schedule of Excluded Parties

### Schedule of Released and Exculpated Parties

Pursuant to the Plan, the following parties shall be Released Parties and shall receive the benefit of the releases provided in the Plan, in addition to the Released Parties specifically enumerated in the Plan.[1]  **For the avoidance of doubt, no Releasing Party shall be permitted to assert any Released Claim against any Released Parties after the Plan is confirmed.**  If any Holder of a Claim or Interest opts out of the Plan's third-party release provisions pursuant to the opt-out procedures approved by the Court, such Holder shall not be a Releasing Party.

| | ADDITIONAL RELEASED AND EXCULPATED PARTIES |
|---|---|
| 1. | Each individual who is employed by the Debtors on the date the Disclosure Statement Order is entered to the extent that each such employee is not (1) later arrested, indicted, or found liable for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time; (2) a UCC Claims Stipulation Defendant; or (3) listed on the Schedule of Excluded Parties. |

---

[1]    Capitalized terms used herein but not defined shall have the meanings given to such terms in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as the same may be amended, modified, revised, or supplemented from time to time, the "**Plan**").

## Schedule of Excluded Parties

Pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as may be amended, modified, revised, or supplemented from time to time, the "**Plan**"), in addition to any other Excluded Parties specifically enumerated in the Plan, the following parties and each of their Affiliates and Related Parties are Excluded Parties as such term is defined therein.[1]

The Excluded Parties shall not receive the protections of the Plan's release, injunction, or exculpation provisions.  **For the avoidance of doubt, no Excluded Party shall constitute a Released Party or Exculpated Party in any capacity and all claims against the Excluded Parties that are held by the Debtors or Holders of Claims and Interests are expressly preserved.**

**This Schedule of Excluded Parties may be amended, modified, or supplemented by the Debtors and the Committee at any time prior to the date the Confirmation Order is entered by the Court.**

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 1. | Adam Carver |
| 2. | Akshay Nayak |
| 3. | Alameda Research Ltd. |
| 4. | Alchemy Capital Partners LP |
| 5. | Alexander Christy |
| 6. | Alexander Mashinsky |
| 7. | Aliza Landes |
| 8. | AM Ventures Holding, Inc. |
| 9. | Amber Technologies Limited |
| 10. | Amir Ayalon |
| 11. | Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc. |
| 12. | Anderson Tax |
| 13. | ANV Insurance |
| 14. | Aslihan Denizkurdu |
| 15. | Atlantic Insurance |
| 16. | Ayalon Insurance |
| 17. | BadgerDAO |
| 18. | Bancor |
| 19. | Battlestar Capital, LLC |
| 20. | B-Brick, Inc. |
| 21. | Benjamin Armstrong |

---

[1]    Capitalized terms used herein but not defined shall have the meanings given to such terms in the Plan.

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 22. | Beowulf Energy LLC |
| 23. | Berkley Insurance Company |
| 24. | Beyond Associates LLC |
| 25. | BitBoy Crypto |
| 26. | Bits of Sunshine LLC |
| 27. | BJ Investment Holdings, LLC |
| 28. | Blockchain Access UK Ltd. |
| 29. | Bradley Condit |
| 30. | Chainanlysis Inc. |
| 31. | Circle Internet Financial, LLC |
| 32. | Circle UK Trading Company Limited |
| 33. | Cloudflare, Inc. |
| 34. | Coin Bureau |
| 35. | Core Scientific Inc. |
| 36. | Cosmos Infrastructure LLC |
| 37. | Crum and Forster Specialty Insurance Company |
| 38. | Crypto Lark |
| 39. | CryptoWendyO |
| 40. | Darren Yarwood |
| 41. | DeFiRate |
| 42. | Deloitte & Touche LLP |
| 43. | Deloitte Tax LLP |
| 44. | Dennis Reichelt |
| 45. | Ditto PR |
| 46. | Eddie Moon |
| 47. | Endurance American Insurance Company |
| 48. | European Media Finance LTD |
| 49. | Equities First Holdings, LLC |
| 50. | EZ Blockchain Services, LLC |
| 51. | Fabric Ventures Group Sarl |
| 52. | Falvey Insurance Group |
| 53. | Fireblocks Inc. |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 54. | Four Thirteen LLC |
| 55. | Frank Van Etten |
| 56. | FTX Trading Ltd. |
| 57. | Grant Thornton LLP |
| 58. | Guy Turner |
| 59. | Haines Watts London LLP |
| 60. | Hanoch "Nuke" Goldstein |
| 61. | Harumi Urata-Thompson |
| 62. | HDR Global Trading Limited (t/a BitMEX) |
| 63. | High Throughput Productions, LLC |
| 64. | Hudson Insurance Group |
| 65. | Indian Harbor Insurance Company |
| 66. | Into the Block Corp. |
| 67. | Invest Answers |
| 68. | Iterative OTC, LLC |
| 69. | James Mullarney |
| 70. | Jason Perman |
| 71. | Jason Stone |
| 72. | Jeremie Beaudry |
| 73. | Johannes Treutler |
| 74. | Julie La Point |
| 75. | KeyFi, Inc. |
| 76. | Koala1 LLC |
| 77. | Koala 2 LLC |
| 78. | Koala 3, LLC |
| 79. | Kost Forer Gabbay & Kasierer |
| 80. | KPMG Somekh Chaikin |
| 81. | Kristine Meehan Mashinsky (née Kristine M. Meehan) |
| 82. | Lark Davis |
| 83. | Liquidity Technologies Ltd. (t/a CoinFLEX) |
| 84. | Lloyds of London Republic Vanguard Insurance Company |
| 85. | Luna Squares LLC |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 86. | Mambu Tech B.V. |
| 87. | Markel Insurance |
| 88. | Mawson Infrastructure Group Inc. |
| 89. | Mazars LLP |
| 90. | MF Partners, Ltd. |
| 91. | Michael Alfred |
| 92. | Migdal Insurance Company |
| 93. | MVP Workshop d.o.o. Beograd-Zemun and its shareholders |
| 94. | Nektar ACS Corp. |
| 95. | Nyman Lipson Paul, LLP |
| 96. | Patrick Martin |
| 97. | Peter Graham |
| 98. | Prime Trust LLC |
| 99. | Profluent Trading UK Ltd. |
| 100. | QBE Insurance Company |
| 101. | Realm Insurance Company |
| 102. | Reliz Limited |
| 103. | Rhodium Enterprises, Inc. |
| 104. | Rod Bolger |
| 105. | Rodney Sunada-Wong |
| 106. | Ron Sabo |
| 107. | Roni Cohen-Pavon |
| 108. | Sabre56 Corp. |
| 109. | Shlomi Daniel Leon |
| 110. | StakeHound SA |
| 111. | Starstone Insurance |
| 112. | Subranmaniam Vijay Konduru |
| 113. | Tether International Ltd. |
| 114. | Tether Limited |
| 115. | The Wolf of Bitcoin |
| 116. | Three Arrows Capital Ltd. |
| 117. | Timothy Shedd |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 118. | Tom McCarthy |
| 119. | Tushar Nadkarni |
| 120. | United States Fire Insurance Company |
| 121. | USAStrong.io |
| 122. | Voyager Digital Holdings, Inc. |
| 123. | Walter Johnson |
| 124. | Wintermute Trading Ltd. |
| 125. | XL Specialty Insurance Company |
| 126. | Yarden Noy |
| 127. | Yaron Shalem |
| 128. | Zachary Wildes |
| 129. | Zen Blockchain Foundation (d/b/a Horizen) |
| 130. | Zurich Insurance Group |
| 131. | All auditors of the Debtors |
| 132. | All third-party public promoters, marketers, and advertisers of the Debtors, including parties with agreements with Celsius concerning payments for referrals. |
| 133. | All Entities identified on the Schedule of Retained Causes of Action or associated with the claims and causes of action preserved on the Schedule of Retained Causes of Action. |
| 134. | Unless otherwise released pursuant to the Plan, all Entities currently party to adversary proceedings in the Debtors' Chapter 11 Cases. |
| 135. | All mediate and intermediate transferees of such Excluded Parties. |
| 136. | All parties with outstanding prepetition litigation against any of the Debtors and/or any party subject to any actual or potential counterclaim by the Debtors. |
| 137. | All Professionals of the Debtors not expressly released under the Plan, including all law firms retained by the Debtors prior to the Petition Date other than (1) Kirkland & Ellis LLP, (2) Akin Gump Strauss Hauer & Feld LLP, (3) White & Case LLP, (4) A.M. Saccullo Legal LLC; and (5) any law firm list on the Debtors' *Statement of Amounts Paid by the Debtors to Ordinary Course Professionals* in these Chapter 11 Cases as of August 13, 2022 [Docket Nos. 1455; 1954; 2557; 3120].  For the avoidance of doubt any such law firms are not "current attorneys" of the Debtors and are not Released Parties under the Plan. |
| 138. | Any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party, *provided* that all individuals who are employed by the Debtors on the date the Disclosure Statement Order is entered and that are not specifically identified as an Excluded Party on this Schedule of Excluded Parties (as such schedule may be amended prior to the date the Confirmation Order is entered) shall be Released and Exculpated except to the extent such employee is later arrested, indicted, or found liable by a court of competent jurisdiction of bad acts and omissions in connection |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| | with his or her role with the Debtors, in which case any release provided in the Plan shall be null and void and all statutes of limitation shall be tolled during such time; *provided, further* that any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party who subsequently enters into an agreement that includes a provision that they shall be identified as a Released Party shall be a Released Party. |
| 139. | Any Released Party that is later arrested, indicted, or found liable by a court of competent jurisdiction for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time. |
| 140. | Account Holder Avoidance Actions against Released Parties shall not be released unless released pursuant to the Account Holder Avoidance Action Settlement. |
| 141. | All Avoidance Actions against Entities that are not Account Holders. |
| 142. | All Affiliates and Related Parties of Excluded Parties |

## **Exhibit 3B**

**Unsecured Loan Claims Ballot**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) | (Jointly Administered) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

**HOLDERS OF CLASS 8 UNSECURED LOAN CLAIMS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS BALLOT.**
>
> **THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>").**

> **PLEASE READ – YOUR RESPONSE IS REQUIRED BY <u>SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME</u>**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

- You are receiving this ballot (this "**Ballot**") because you are a Holder Claims of above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), who filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

- The Debtors are seeking Bankruptcy Court approval for a chapter 11 plan filed as part of their bankruptcy proceedings.

- Under the Plan, unless you take **additional action** as described in this Ballot, and **affirmatively opt out**, you will be deemed to release claims you may have against the Debtors' officers and directors (excluding certain members of the Debtors' former management team as further described in the Plan and Disclosure Statement), and certain creditors and other third parties.

- You have the right to opt out and to avoid releasing any claims against these third parties.  To do so, you must check the opt out box on page five of this Ballot and return this Ballot to the Claims, Noticing, and Solicitation Agent by the Voting Deadline.  The applicable definitions of Released Parties and Releasing Parties are also attached to this Ballot for your convenience of review.  These defined terms control the scope of the release provisions.

- If you vote to accept the Plan in **Item 3** of this Ballot, you will be bound by the releases set forth in the Plan.  If you vote to accept the Plan in **Item 3** of this Ballot **AND** you also elect to opt out of the Third-Party Releases set forth in **Item 4** of this Ballot, your vote to accept the Plan shall control and you shall be deemed a "Releasing Party" under the Plan.

The Debtors are soliciting votes to accept or reject the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement for the Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2]  The Disclosure Statement provides you with information to make an informed decision as to whether you will vote to accept or reject the Plan.  Votes are being solicited from Holders of Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, Withhold Claims, Unsecured Loan Claims, General Unsecured Claims, State Regulatory Claims, and Series B Preferred Interests (each, a "Voting Class" and collectively, the "Voting Classes").

**Please review the detailed instructions regarding how to complete and submit this Ballot attached hereto as Annex A (the "Ballot Instructions").**  Once completed and returned in accordance with the attached Ballot Instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in that Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  After confirmation, the Plan will be binding on all Holders of Claims, among others.

You are receiving this Ballot because you are the Holder of a Class 8 Unsecured Loan Claim as of **July 24, 2023** (the "Voting Record Date").  **For a detailed discussion of the treatment of Holders of Class 8 Unsecured Loan Claims under the Plan, please read the Disclosure Statement.**

**TO HAVE YOUR VOTE COUNT AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, YOU MUST COMPLETE AND RETURN THIS BALLOT SO THAT THE CLAIMS, NOTICING, AND SOLICITATION AGENT ACTUALLY RECEIVES IT ON OR BEFORE THE VOTING DEADLINE OF SEPTEMBER 22, 2023 AT 4:00 P.M., PREVAILING EASTERN TIME.**

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

To vote, you <u>MUST</u>:  (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

To submit your Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Ballot.

To submit your Ballot via mail, please send to:

<div align="center">
Celsius Ballot Processing<br>
c/o Stretto<br>
410 Exchange, Suite 100<br>
Irvine, CA 92602
</div>

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Unsecured Loan Claim.  Your Unsecured Loan Claim has been placed in Class 8 under the Plan.

If you hold Claims or Interests in more than one Voting Class, you will receive multiple ballots. Each ballot must be completed and returned by the Voting Deadline for the votes on the respective ballots to be counted.  Please note, however, that Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, and Withhold Claims (collectively, "<u>Account Holder Claims</u>"), are all consolidated on one ballot (the "<u>Account Holder Ballot</u>").  For the avoidance of doubt, if you are a Holder of an Account Holder Claim, you will receive the Account Holder Ballot in addition to this Ballot, which must be completed and returned by the Voting Deadline for the votes on the Account Holder Ballot to be counted.

As further described in the Committee Letter, the Committee recommends that you vote to accept the Plan and contribute your third-party claims.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "<u>Solicitation Package</u>") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package materials, or if you need to obtain additional Solicitation Packages, you may obtain them by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-587 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re:  Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at:  http://pacer.psc.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, please contact the Claims, Noticing, and Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

If the Bankruptcy Court confirms the Plan, the terms of the Plan will bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan.

To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Claims, Noticing, and Solicitation Agent ***actually receives*** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

<u>Item 1</u>.    **Amount of Class 8 Allowed Unsecured Loan Claims.**

If you did not file a Proof of Claim, the amount of your Class 8 Unsecured Loan Claim is the amount that the Debtors Scheduled on account of such Claim.  Conversely, if you filed a timely Proof of Claim (or filed an untimely Proof of

Claim that has been Allowed as timely on or before the Voting Record Date), the amount of your Class 8 Unsecured Loan Claim for purposes of voting on the Plan will be the amount asserted in that Proof of Claim, unless such Proof of Claim is subject to a pending objection. **For the avoidance of doubt, the amount of your Class 8 Unsecured Loan Claim for purposes of voting is listed immediately below.**

---

**Voting Amount.** The undersigned certifies that, as of the Voting Record Date, the undersigned is a Holder of a Class 8 Unsecured Loan Claim against the Debtors in the following amount:

_____[TO BE PREPRINTED BY STRETTO]_____

---

Subject to the terms and conditions of Article III.B of the Plan, you will receive the treatment for your Unsecured Loan Claims identified below. **For additional discussion of your treatment and rights for your Unsecured Loan Claims under the Plan, please read the Disclosure Statement and the Plan.**

<u>Item 2</u>.    **Recovery.**

Pursuant to Article III.B.8 of the Plan, each Holder of an Allowed Unsecured Loan Claim shall receive Unsecured Claim Distribution Consideration (*i.e.*, Liquid Cryptocurrency, Litigation Proceeds, and NewCo Common Stock) sufficient to provide a recovery of the same percentage as the Class 5 (General Earn Claim) recovery set forth in Article III.M the Disclosure Statement.

In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed Unsecured Loan Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) the Backup MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights, without regard to Unsecured Claim Distribution Mix Elections.

<u>Item 3</u>.    **Vote on Plan.**

You are eligible to vote to accept or reject the Plan. You must check the applicable box below to "accept" or "reject" the Plan. Please note that you are required to vote all of your Claims in any class either to accept or reject the Plan. Please further note that the Plan contemplates both the NewCo Transaction and Orderly Wind Down. Your vote to accept or reject the Plan will be counted as a vote to accept or reject both the NewCo Transaction and Orderly Wind Down, and you may not split your vote. For a detailed description of the NewCo Transaction, please carefully read Article III.H of the Disclosure Statement. For a detailed description of the Orderly Wind Down, please carefully read Article III.I of the Disclosure Statement.

***If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted. If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.***

The Holder of the Class 8 Unsecured Loan Claims against the Debtors set forth in Item 1 votes to (*please check **one***):

---

☐  **<u>ACCEPT</u>** (vote FOR) the Plan                    ☐  **<u>REJECT</u>** (vote AGAINST) the Plan

---

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 3 above.</u>**

**Item 4.   Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES. THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES

IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASES CONTAINED IN ARTICLE VIII.D. OF THE PLAN.  AS A HOLDER OF AN UNSECURED LOAN CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN UNLESS YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING AND OPT OUT OF THE RELEASES CONTAINED IN THE PLAN.  YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU DO NOT CHECK THE BOX BELOW TO OPT OUT OF GRANTING THE RELEASES.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN AND YOU CHECKED THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS **ITEM 4**, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.  FOR THE AVOIDANCE OF ANY DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 3** OF THIS BALLOT, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN.  IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 3** OF THIS BALLOT AND YOU ALSO ELECT TO OPT OUT OF THE THIRD PARTY-RELEASE SET FORTH IN THIS **ITEM 4**, YOUR VOTE TO ACCEPT THE PLAN SHALL CONTROL AND YOU SHALL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.

☐    **By checking this box, you elect to OPT OUT OF the Third-Party Release.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination,**

solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

Definitions Related to the Debtor Release and the Third-Party Release:

(1)     Under the Plan, "*Released Parties*" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party.  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "*Releasing Parties*" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)     Under the Plan, "*Excluded Party*" means each of the following: (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

A schedule of the Released Parties and Exculpated Parties and a schedule of Excluded Parties is attached as **Annex B** to this Ballot.

**Item 5**.  **Contributed Claims.**

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third-parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors.  In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third-parties associated with Celsius that are not released under the Plan.  However, it may be difficult and expensive for individual creditors to sue third-parties for losses.  Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors.  By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors.  As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their claims.  In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries, and will not be distributed solely to you**.  For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Litigation Administrator, which may allow the Litigation Administrator to obtain greater recoveries for the benefit of Holders of Class 8 Unsecured Loan Claims.**

> ☐     **By checking this box, you elect to contribute your Contributed Claims to the Litigation Administrator.**

Definitions Related to Contributed Claims:

(1)     Under the Plan, "***Contributed Claim***" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided*, *however*, that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(2)     Under the Plan, "***Contributing Claimant***" means any Holder of a Claim or Interest that elects through its Ballot to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

## Item 6.  Certifications.

1.     The undersigned, as of the Voting Record Date, is (a) the Holder of Class 8 Unsecured Loan Claims being voted or (b) the authorized signatory for an entity that is a Holder of such Unsecured Loan Claims entitled to vote to accept or reject the Plan on behalf of the Holder of such Unsecured Loan Claims;

2.     the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.     the undersigned has cast the same vote with respect to all of its Class 8 Unsecured Loan Claims in connection with the Plan; and

4.     either (a) no other Ballot with respect to the same Class 8 Unsecured Loan Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such Class 8 Unsecured Loan Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

## Item 7.  Ballot Completion Information.

Name of Holder:        _____


                       _____


Signature:             _____

Signatory Name (if other than the Holder):        _____

Title (if other than the Holder):        _____

Address:               _____

Email Address:         _____

Telephone Number:      _____

Date Completed:        _____

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan.  This Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE VIA THE ONLINE VOTING PORTAL AT HTTPS://CASE.STRETTO.COM/CELSIUS/BALLOTING.**

---

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS CLASS 8 BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

| **Annex A** |
| **Class 8 Unsecured Loan Claims** |

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Ballot.

    **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

    **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two–thirds in amount and more than one–half in number of Claims in at least one class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This Ballot contains voting options with respect to the Plan.

4.  To vote, you <u>MUST</u>:  (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

    To submit your Ballot via the online voting portal, please visit <u>https://case.stretto.com/Celsius/balloting</u> and follow the instructions to submit your Ballot.

    To submit your Ballot via mail, please send to:

    <div align="center">

    Celsius Ballot Processing
    c/o Stretto
    410 Exchange, Suite 100
    Irvine, CA 92602

    </div>

    The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

    Creditors who cast a Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also submit a hard copy Ballot.

5.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine to accept such Ballot, in consultation with the Committee.

6.  To vote, you <u>MUST</u> deliver/submit your completed the Ballot via the online voting portal so that it is **ACTUALLY RECEIVED** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline by one of the methods described above.  The Voting Deadline is **<u>September 22, 2023, at 4:00 p.m.</u>**, prevailing Eastern Time.

7.  Any Ballot received by the Claims, Noticing, and Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine, in

consultation with the Committee.  No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

8.  Delivery of a Ballot reflecting your vote to the Claims, Noticing, and Solicitation Agent will be deemed to have occurred only when the Claims, Noticing, and Solicitation Agent actually receives the originally executed Ballot. In all cases, you should allow sufficient time to assure timely delivery.

9.  If you deliver multiple Ballots for your Class 8 Unsecured Loan Claims to the Claims, Noticing, and Solicitation Agent, ONLY the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s) for your Class 8 Unsecured Loan Claims.

10. You must vote all of your Class 8 Unsecured Loan Claims either to accept or reject the Plan, and may not split your vote.  Furthermore, if a Holder has multiple Claims within Class 8, such claims shall be aggregated for the purpose of counting votes.

11. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

12. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

13. You must SIGN AND DATE your Ballot.[1]  A Ballot properly submitted via the Claims, Noticing, and Solicitation Agent's online voting portal shall be deemed to contain an original signature of the Holder submitting such Ballot. Please provide your name and mailing address in the space provided on this Ballot if it is different from that set forth on the Ballot or if no address is presented on the Ballot.

14. If you have claims in other Voting Classes, you may receive more than one Ballot coded for each such account for which your Claims are held.  Each Ballot votes only your Claims indicated on that Ballot.  Accordingly, complete and return each Ballot you receive.

**PLEASE RETURN YOUR BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 8 BALLOT, THESE BALLOT INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT: (855) 423-1530 (TOLL-FREE) OR +1 (949) 669-587 (INTERNATIONAL) OR EMAIL CELSIUSINQUIRIES@STRETTO.COM AND REFERENCE "IN RE CELSIUS - SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

---

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[1]  If you are signing the Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims, Noticing, and Solicitation Agent, the Debtors, the Debtors' counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

**<u>Annex B</u>**

**Schedule of Released and Exculpated Parties, and Schedule of Excluded Parties**

## Schedule of Released and Exculpated Parties

Pursuant to the Plan, the following parties shall be Released Parties and shall receive the benefit of the releases provided in the Plan, in addition to the Released Parties specifically enumerated in the Plan.[1] **For the avoidance of doubt, no Releasing Party shall be permitted to assert any Released Claim against any Released Parties after the Plan is confirmed.** If any Holder of a Claim or Interest opts out of the Plan's third-party release provisions pursuant to the opt-out procedures approved by the Court, such Holder shall not be a Releasing Party.

| | ADDITIONAL RELEASED AND EXCULPATED PARTIES |
|---|---|
| 1. | Each individual who is employed by the Debtors on the date the Disclosure Statement Order is entered to the extent that each such employee is not (1) later arrested, indicted, or found liable for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time; (2) a UCC Claims Stipulation Defendant; or (3) listed on the Schedule of Excluded Parties. |

---

[1]   Capitalized terms used herein but not defined shall have the meanings given to such terms in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as the same may be amended, modified, revised, or supplemented from time to time, the "**Plan**").

**Schedule of Excluded Parties**

Pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as may be amended, modified, revised, or supplemented from time to time, the "**Plan**"), in addition to any other Excluded Parties specifically enumerated in the Plan, the following parties and each of their Affiliates and Related Parties are Excluded Parties as such term is defined therein.[1]

The Excluded Parties shall not receive the protections of the Plan's release, injunction, or exculpation provisions. **For the avoidance of doubt, no Excluded Party shall constitute a Released Party or Exculpated Party in any capacity and all claims against the Excluded Parties that are held by the Debtors or Holders of Claims and Interests are expressly preserved.**

**This Schedule of Excluded Parties may be amended, modified, or supplemented by the Debtors and the Committee at any time prior to the date the Confirmation Order is entered by the Court.**

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 1. | Adam Carver |
| 2. | Akshay Nayak |
| 3. | Alameda Research Ltd. |
| 4. | Alchemy Capital Partners LP |
| 5. | Alexander Christy |
| 6. | Alexander Mashinsky |
| 7. | Aliza Landes |
| 8. | AM Ventures Holding, Inc. |
| 9. | Amber Technologies Limited |
| 10. | Amir Ayalon |
| 11. | Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc. |
| 12. | Anderson Tax |
| 13. | ANV Insurance |
| 14. | Aslihan Denizkurdu |
| 15. | Atlantic Insurance |
| 16. | Ayalon Insurance |
| 17. | BadgerDAO |
| 18. | Bancor |
| 19. | Battlestar Capital, LLC |
| 20. | B-Brick, Inc. |
| 21. | Benjamin Armstrong |

---

[1] Capitalized terms used herein but not defined shall have the meanings given to such terms in the Plan.

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 22. | Beowulf Energy LLC |
| 23. | Berkley Insurance Company |
| 24. | Beyond Associates LLC |
| 25. | BitBoy Crypto |
| 26. | Bits of Sunshine LLC |
| 27. | BJ Investment Holdings, LLC |
| 28. | Blockchain Access UK Ltd. |
| 29. | Bradley Condit |
| 30. | Chainanlysis Inc. |
| 31. | Circle Internet Financial, LLC |
| 32. | Circle UK Trading Company Limited |
| 33. | Cloudflare, Inc. |
| 34. | Coin Bureau |
| 35. | Core Scientific Inc. |
| 36. | Cosmos Infrastructure LLC |
| 37. | Crum and Forster Specialty Insurance Company |
| 38. | Crypto Lark |
| 39. | CryptoWendyO |
| 40. | Darren Yarwood |
| 41. | DeFiRate |
| 42. | Deloitte & Touche LLP |
| 43. | Deloitte Tax LLP |
| 44. | Dennis Reichelt |
| 45. | Ditto PR |
| 46. | Eddie Moon |
| 47. | Endurance American Insurance Company |
| 48. | European Media Finance LTD |
| 49. | Equities First Holdings, LLC |
| 50. | EZ Blockchain Services, LLC |
| 51. | Fabric Ventures Group Sarl |
| 52. | Falvey Insurance Group |
| 53. | Fireblocks Inc. |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 54. | Four Thirteen LLC |
| 55. | Frank Van Etten |
| 56. | FTX Trading Ltd. |
| 57. | Grant Thornton LLP |
| 58. | Guy Turner |
| 59. | Haines Watts London LLP |
| 60. | Hanoch "Nuke" Goldstein |
| 61. | Harumi Urata-Thompson |
| 62. | HDR Global Trading Limited (t/a BitMEX) |
| 63. | High Throughput Productions, LLC |
| 64. | Hudson Insurance Group |
| 65. | Indian Harbor Insurance Company |
| 66. | Into the Block Corp. |
| 67. | Invest Answers |
| 68. | Iterative OTC, LLC |
| 69. | James Mullarney |
| 70. | Jason Perman |
| 71. | Jason Stone |
| 72. | Jeremie Beaudry |
| 73. | Johannes Treutler |
| 74. | Julie La Point |
| 75. | KeyFi, Inc. |
| 76. | Koala1 LLC |
| 77. | Koala 2 LLC |
| 78. | Koala 3, LLC |
| 79. | Kost Forer Gabbay & Kasierer |
| 80. | KPMG Somekh Chaikin |
| 81. | Kristine Meehan Mashinsky (née Kristine M. Meehan) |
| 82. | Lark Davis |
| 83. | Liquidity Technologies Ltd. (t/a CoinFLEX) |
| 84. | Lloyds of London Republic Vanguard Insurance Company |
| 85. | Luna Squares LLC |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 86. | Mambu Tech B.V. |
| 87. | Markel Insurance |
| 88. | Mawson Infrastructure Group Inc. |
| 89. | Mazars LLP |
| 90. | MF Partners, Ltd. |
| 91. | Michael Alfred |
| 92. | Migdal Insurance Company |
| 93. | MVP Workshop d.o.o. Beograd-Zemun and its shareholders |
| 94. | Nektar ACS Corp. |
| 95. | Nyman Lipson Paul, LLP |
| 96. | Patrick Martin |
| 97. | Peter Graham |
| 98. | Prime Trust LLC |
| 99. | Profluent Trading UK Ltd. |
| 100. | QBE Insurance Company |
| 101. | Realm Insurance Company |
| 102. | Reliz Limited |
| 103. | Rhodium Enterprises, Inc. |
| 104. | Rod Bolger |
| 105. | Rodney Sunada-Wong |
| 106. | Ron Sabo |
| 107. | Roni Cohen-Pavon |
| 108. | Sabre56 Corp. |
| 109. | Shlomi Daniel Leon |
| 110. | StakeHound SA |
| 111. | Starstone Insurance |
| 112. | Subranmaniam Vijay Konduru |
| 113. | Tether International Ltd. |
| 114. | Tether Limited |
| 115. | The Wolf of Bitcoin |
| 116. | Three Arrows Capital Ltd. |
| 117. | Timothy Shedd |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 118. | Tom McCarthy |
| 119. | Tushar Nadkarni |
| 120. | United States Fire Insurance Company |
| 121. | USAStrong.io |
| 122. | Voyager Digital Holdings, Inc. |
| 123. | Walter Johnson |
| 124. | Wintermute Trading Ltd. |
| 125. | XL Specialty Insurance Company |
| 126. | Yarden Noy |
| 127. | Yaron Shalem |
| 128. | Zachary Wildes |
| 129. | Zen Blockchain Foundation (d/b/a Horizen) |
| 130. | Zurich Insurance Group |
| 131. | All auditors of the Debtors |
| 132. | All third-party public promoters, marketers, and advertisers of the Debtors, including parties with agreements with Celsius concerning payments for referrals. |
| 133. | All Entities identified on the Schedule of Retained Causes of Action or associated with the claims and causes of action preserved on the Schedule of Retained Causes of Action. |
| 134. | Unless otherwise released pursuant to the Plan, all Entities currently party to adversary proceedings in the Debtors' Chapter 11 Cases. |
| 135. | All mediate and intermediate transferees of such Excluded Parties. |
| 136. | All parties with outstanding prepetition litigation against any of the Debtors and/or any party subject to any actual or potential counterclaim by the Debtors. |
| 137. | All Professionals of the Debtors not expressly released under the Plan, including all law firms retained by the Debtors prior to the Petition Date other than (1) Kirkland & Ellis LLP, (2) Akin Gump Strauss Hauer & Feld LLP, (3) White & Case LLP, (4) A.M. Saccullo Legal LLC; and (5) any law firm list on the Debtors' *Statement of Amounts Paid by the Debtors to Ordinary Course Professionals* in these Chapter 11 Cases as of August 13, 2022 [Docket Nos. 1455; 1954; 2557; 3120]. For the avoidance of doubt any such law firms are not "current attorneys" of the Debtors and are not Released Parties under the Plan. |
| 138. | Any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party, *provided* that all individuals who are employed by the Debtors on the date the Disclosure Statement Order is entered and that are not specifically identified as an Excluded Party on this Schedule of Excluded Parties (as such schedule may be amended prior to the date the Confirmation Order is entered) shall be Released and Exculpated except to the extent such employee is later arrested, indicted, or found liable by a court of competent jurisdiction of bad acts and omissions in connection |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| | with his or her role with the Debtors, in which case any release provided in the Plan shall be null and void and all statutes of limitation shall be tolled during such time; *provided, further* that any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party who subsequently enters into an agreement that includes a provision that they shall be identified as a Released Party shall be a Released Party. |
| 139. | Any Released Party that is later arrested, indicted, or found liable by a court of competent jurisdiction for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time. |
| 140. | Account Holder Avoidance Actions against Released Parties shall not be released unless released pursuant to the Account Holder Avoidance Action Settlement. |
| 141. | All Avoidance Actions against Entities that are not Account Holders. |
| 142. | All Affiliates and Related Parties of Excluded Parties |

**Exhibit 3C**

**General Unsecured Claims Ballot**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) |
| | ) |

Chapter 11

Case No. 22-10964 (MG)

(Jointly Administered)

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT
PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

**HOLDERS OF CLASS 9 GENERAL UNSECURED CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS
BALLOT CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS
GENERAL UNSECURED CLAIM HOLDER BALLOT**

**THIS GENERAL UNSECURED CLAIMS BALLOT MUST BE COMPLETED, EXECUTED, AND
RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS, NOTICING, AND
SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME
(THE "VOTING DEADLINE").**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius
Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks
Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8
USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors'
service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE READ – YOUR RESPONSE IS REQUIRED BY <u>SEPTEMBER 22, 2023, AT 4:00 P.M.,
PREVAILING EASTERN TIME</u>**

- You are receiving this ballot (this "**<u>Ballot</u>**") because you are a Holder Claims of above-captioned debtors and debtors in possession (collectively, the "**<u>Debtors</u>**"), who filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "**<u>Bankruptcy Code</u>**").

- The Debtors are seeking Bankruptcy Court approval for a chapter 11 plan filed as part of their bankruptcy proceedings.

- Under the Plan, unless you take <u>additional action</u> as described in this Ballot, and **<u>affirmatively opt out</u>**, you will be deemed to release claims you may have against the Debtors' officers and directors (excluding certain members of the Debtors' former management team as further described in the Plan and Disclosure Statement), and certain creditors and other third parties.

- You have the right to opt out and to avoid releasing any claims against these third parties.  To do so, you must check the opt out box on page five of this Ballot and return this Ballot to the Claims, Noticing, and Solicitation Agent by the Voting Deadline.  The applicable definitions of Released Parties and Releasing Parties are also attached to this Ballot for your convenience of review.  These defined terms control the scope of the release provisions.

- If you vote to accept the Plan in <u>Item 4</u> of this Ballot, you will be bound by the releases set forth in the Plan.  If you vote to accept the Plan in <u>Item 4</u> of this Ballot **AND** you also elect to opt out of the Third-Party Releases set forth in <u>Item 5</u> of this Ballot, your vote to accept the Plan shall control and you shall be deemed a "Releasing Party" under the Plan.

The Debtors are soliciting votes to accept or reject the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"), attached as <u>Exhibit A</u> to the *Disclosure Statement for the Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>").[2]  The Disclosure Statement provides you with information to make an informed decision as to whether you will vote to accept or reject the Plan.  Votes are being solicited from Holders of Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, Withhold Claims, Unsecured Loan Claims, General Unsecured Claims, State Regulatory Claims, and Series B Preferred Interests (each, a "<u>Voting Class</u>" and collectively, the "<u>Voting Classes</u>").

**Please review the detailed instructions regarding how to complete and submit this General Unsecured Claims Ballot attached hereto as Annex A (the "<u>General Unsecured Claims Ballot Instructions</u>").**  Once completed and returned in accordance with the attached General Unsecured Claims Ballot Instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in that Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  After confirmation, the Plan will be binding on all Holders of Claims, among others.

You are receiving this General Unsecured Claims Ballot because you are the Holder of a Class 9 General Unsecured Claim as of <u>July 24, 2023</u> (the "<u>Voting Record Date</u>").  **For a detailed discussion of the treatment of General Unsecured Claims under the Plan, please read the Disclosure Statement.**

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

**TO HAVE YOUR VOTE COUNT AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, YOU MUST COMPLETE AND RETURN THIS GENERAL UNSECURED CLAIMS BALLOT SO THAT THE CLAIMS, NOTICING, AND SOLICITATION AGENT ACTUALLY RECEIVES IT ON OR BEFORE THE VOTING DEADLINE OF SEPTEMBER 22, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME.**

To vote, you MUST:  (a) fully complete this General Unsecured Claims Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 4 of this General Unsecured Claims Ballot; and (c) sign, date, and return this General Unsecured Claims Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

To submit your General Unsecured Claims Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Ballot.

To submit your Ballot via mail, please send to:

<div align="center">

Celsius Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

</div>

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your General Unsecured Claim.  Your General Unsecured Claims have been placed in Class 9 under the Plan.

If you hold Claims or Interests in Voting Classes other than Class 9, you will receive multiple ballots.  Each ballot must be completed and returned by the Voting Deadline for the votes on the respective ballots to be counted.  Please note, however, that Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, and Withhold Claims (collectively, "Account Holder Claims"), are all consolidated on one ballot (the "Account Holder Ballot").  For the avoidance of doubt, if you are a Holder of an Account Holder Claim, you will receive the Account Holder Ballot in addition to this General Unsecured Claims Ballot, which must be completed and returned by the Voting Deadline for the votes on the Account Holder Ballot to be counted.

As further described in the Committee Letter, the Committee recommends that you vote to accept the Plan and contribute your third-party claims.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package materials, or if you need to obtain additional Solicitation Packages, you may obtain them by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-587 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at:  http://pacer.psc.uscourts.gov.

This General Unsecured Claims Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making certain elections, and making certain certifications with respect to the Plan.  If you believe you have received this General Unsecured Claims Ballot in error, please contact the Claims, Noticing, and Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

If the Bankruptcy Court confirms the Plan, the terms of the Plan will bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan.  To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this General Unsecured Claims Ballot so that the Claims, Noticing, and Solicitation Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

<u>Item 1</u>.    **Amount of Class 9 Allowed General Unsecured Claims.**

If you did not file a Proof of Claim, the amount of your Class 9 General Unsecured Claim is the amount that the Debtors Scheduled on account of such Claim.  Conversely, if you filed a timely Proof of Claim (or filed an untimely Proof of Claim that has been Allowed as timely on or before the Voting Record Date), the amount of your Class 9 General Unsecured Claim for purposes of voting on the Plan will be the amount asserted in that Proof of Claim, unless such Proof of Claim is subject to a pending objection.  **For the avoidance of doubt, the amount of your Class 9 General Unsecured Claim for purposes of voting is listed immediately below.**

| |
|---|
| **Voting Amount.**  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 9 General Unsecured Claims: |
| $____[TO BE PREPRINTED BY STRETTO]_____ |

<u>Item 2</u>.    **Recovery.**

Pursuant to <u>Article III.B.9</u> of the Plan, each Holder of an Allowed General Unsecured Claim shall receive a combination of (a) Liquid Cryptocurrency or Cash, (b) Litigation Proceeds, and (c) NewCo Common Stock sufficient to provide a recovery of the same percentage as the Class 5 (General Earn Claim) recovery set forth in <u>Article III.M</u> of the Disclosure Statement.

In the event that the Debtors pursue the Orderly Wind Down, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount (or an equivalent amount of Cash), (b) the Backup MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights.

<u>Item 3</u>.  **Optional Election Regarding the Form of Distribution.**

Pursuant to <u>Article III.B.9</u> of the Plan, a Holder of a General Unsecured Claim may elect to receive Cash as opposed to Liquid Cryptocurrency as part of their recovery.

Please note that if you do not check the box in this **Item 3** the Debtors will provide Liquid Cryptocurrency at the time of distribution.

The undersigned, a Holder of a Class 9 General Unsecured Claim against the Debtors as set forth in the chart in **Item 1**, elects as follows:

☐ **Elects to receive Cash as part of the recovery for Class 9 General Unsecured Claims instead of Liquid Cryptocurrency.**

<u>Item 4</u>.    **Vote on Plan.**

You are eligible to vote to accept or reject the Plan.  You must check the applicable box below to "accept" or "reject" the Plan.  Please note that you are required to vote all of your Claims in any class either to accept or reject the Plan.  Please further note that the Plan contemplates both the NewCo Transaction and Orderly Wind Down.  Your vote to accept or reject the Plan will be counted as a vote to accept or reject both the NewCo Transaction and Orderly Wind Down, and you may not split your vote.  For a detailed description of the NewCo Transaction, please carefully read

Article III.H of the Disclosure Statement.  For a detailed description of the Orderly Wind Down, please carefully read Article III.I of the Disclosure Statement.

***If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted in Class 9 General Unsecured Claims.  If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.***

**Class 9 General Unsecured Claims Vote**.  The Holder of the Class 9 General Unsecured Claims against the Debtors set forth in Item 1 votes to (please check one):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 4 above.

**Item 5**.  **Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES.  THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.

IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASES CONTAINED IN ARTICLE VIII.D. OF THE PLAN.  AS A HOLDER OF AN GENERAL UNSECURED CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN UNLESS YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING AND OPT OUT OF THE RELEASES CONTAINED IN THE PLAN.  YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU DO NOT CHECK THE BOX BELOW TO OPT OUT OF GRANTING THE RELEASES.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN AND YOU CHECKED THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS **ITEM 5**, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.  FOR THE AVOIDANCE OF ANY DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 4** OF THIS BALLOT, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN.  IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 4** OF THIS BALLOT AND YOU ALSO ELECT TO OPT OUT OF THE THIRD PARTY-RELEASE SET FORTH IN THIS **ITEM 5**, YOUR VOTE TO ACCEPT THE PLAN SHALL CONTROL AND YOU SHALL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.

| ☐    **By checking this box, you elect to opt OUT of the Third-Party Release.** |
|---|

**Article VIII.D** of the Plan contains the following Third-Party Release:

Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

**Definitions Related to the Debtor Release and the Third-Party Release:**

(1)     Under the Plan, "Released Parties" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the

Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; provided, further, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; provided, further, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)     Under the Plan, "***Releasing Parties***" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)     Under the Plan, "***Excluded Party***" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity hereunder.

A schedule of the Released Parties and Exculpated Parties and a schedule of Excluded Parties is attached as **Annex B** to this General Unsecured Claims Ballot.

### Item 6.  Contributed Claims

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third-parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors.  In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third-parties associated with Celsius that are not released under the Plan. However, it may be difficult and expensive for individual creditors to sue third-parties for losses.  Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors.  By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors.  As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their

claims.  In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries and will not be distributed solely to you**.  For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Litigation Administrator, which may allow the Litigation Administrator to obtain greater recoveries for the benefit of Holders of Class 9 General Unsecured Claims.**

| | |
|---|---|
| ☐ | **By checking this box, you elect to contribute your Contributed Claims to the Litigation Administrator.** |

Definitions Related to Contributed Claims:

(1)      Under the Plan, "***Contributed Claim***" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided, however*, that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(2)      Under the Plan, "***Contributing Claimant***" means any Holder of a Claim or Interest that elects through its Ballot to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

**Item 7.**  **Certifications.**

1.      The undersigned is (a) the Holder of Class 9 General Unsecured Claims being voted or (b) the authorized signatory for an entity that is a Holder of such General Unsecured Claims entitled to vote to accept or reject the Plan on behalf of the Holder of such General Unsecured Claims;

2.      the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.      the undersigned has cast the same vote with respect to all of its General Unsecured Claims in connection with the Plan; and

4.      either (a) no other Ballot with respect to the same General Unsecured Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such General Unsecured Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

<u>Item 8</u>.  **Ballot Completion Information.**

| | |
|---|---|
| Name of Holder: | _____ |
| | _____ |
| Signature: | _____ |
| Signatory Name (if other than the Holder): | _____ |
| Title (if other than the Holder): | _____ |
| Address: | _____ |
| Email Address: | _____ |
| Telephone Number: | _____ |
| Date Completed: | _____ |

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan.  This General Unsecured Claims Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS GENERAL UNSECURED CLAIMS BALLOT AND RETURN IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN.  THIS GENERAL UNSECURED CLAIMS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE VIA THE ONLINE VOTING PORTAL AT HTTPS://CASE.STRETTO.COM/CELSIUS/BALLOTING.**

---

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS GENERAL UNSECURED CLAIMS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

| **Annex A**<br>**General Unsecured Claims** |
| --- |

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the General Unsecured Claims Ballot or in these instructions (the "<u>General Unsecured Claims Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the General Unsecured Claims Ballot.

    **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

    **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This General Unsecured Claims Ballot contains voting options with respect to the Plan.

4.  To vote, you <u>MUST</u>:  (a) fully complete this General Unsecured Claims Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 4 of this General Unsecured Claims Ballot; and (c) sign, date, and return this General Unsecured Claims Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

    To submit your General Unsecured Claims Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your General Unsecured Claims Ballot.

    To submit your Ballot via mail, please send to:

    <div align="center">

    Celsius Ballot Processing<br>
    c/o Stretto<br>
    410 Exchange, Suite 100<br>
    Irvine, CA 92602

    </div>

    The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which General Unsecured Claims Ballots will be accepted via electronic or online transmission.  General Unsecured Claims Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

    Creditors who cast a General Unsecured Claims Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also mail a hard copy General Unsecured Claims Ballot.

5.  Any General Unsecured Claims Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine to accept such Ballot, in consultation with the Committee.

6.  To vote, you <u>MUST</u> submit your completed General Unsecured Claims Ballot via the online voting portal so that it is **ACTUALLY RECEIVED** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline. The Voting Deadline is **September 22, 2023, at 4:00 p.m.** prevailing Eastern Time.

7.  Any General Unsecured Claims Ballot received by the Claims, Noticing, and Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors

otherwise determine, in consultation with the Committee.  No General Unsecured Claims Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

8.   Delivery of a General Unsecured Claims Ballot reflecting your vote to the Claims, Noticing, and Solicitation Agent will be deemed to have occurred only when the Claims, Noticing, and Solicitation Agent actually receives the General Unsecured Claims Ballot.  In all cases, you should allow sufficient time to assure timely completion and submission of the General Unsecured Claims Ballot.

9.   If you deliver multiple General Unsecured Claims Ballots for your General Unsecured Claims to the Claims, Noticing, and Solicitation Agent, only the last properly executed General Unsecured Claims Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received General Unsecured Claims Ballot(s) for your General Unsecured Claims.

10.  You must vote all of your General Unsecured Claims either to accept or reject the Plan and may not split your vote.  Furthermore, if a Holder has multiple Claims within Class 9, such claims shall be aggregated for the purpose of counting votes.

11.  This General Unsecured Claims Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

12.  You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

13.  You must SIGN AND DATE your General Unsecured Claims Ballot.[1]  A General Unsecured Claims Ballot properly submitted via the Claims, Noticing, and Solicitation Agent's online voting portal shall be deemed to contain an original signature of the Holder submitting such Ballot.  Please provide your name and mailing address in the space provided on this General Unsecured Claims Ballot if it is different from that set forth on the General Unsecured Claims Ballot or if no address is presented on the General Unsecured Claims Ballot.

14.  If you have claims in other Voting Classes, you may receive more than one ballot coded for each such account for which your Claims are held.  Each ballot votes only your Claims indicated on that ballot.  Accordingly, complete and return each ballot you receive.

**PLEASE RETURN YOUR GENERAL UNSECURED CLAIMS BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS GENERAL UNSECURED CLAIMS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT:  (855) 423-1530 (TOLL-FREE) OR +1 (949) 669-587 (INTERNATIONAL) OR EMAIL CELSIUSINQUIRIES@STRETTO.COM AND REFERENCE "IN RE CELSIUS - SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS GENERAL UNSECURED CLAIMS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[1]   If you are signing a General Unsecured Claim Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims, Noticing, and Solicitation Agent, the Debtors, the Debtors' counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

**Annex B**

**Schedule of Released and Exculpated Parties, and Schedule of Excluded Parties**

## Schedule of Released and Exculpated Parties

Pursuant to the Plan, the following parties shall be Released Parties and shall receive the benefit of the releases provided in the Plan, in addition to the Released Parties specifically enumerated in the Plan.[1] **For the avoidance of doubt, no Releasing Party shall be permitted to assert any Released Claim against any Released Parties after the Plan is confirmed.** If any Holder of a Claim or Interest opts out of the Plan's third-party release provisions pursuant to the opt-out procedures approved by the Court, such Holder shall not be a Releasing Party.

| | ADDITIONAL RELEASED AND EXCULPATED PARTIES |
|---|---|
| 1. | Each individual who is employed by the Debtors on the date the Disclosure Statement Order is entered to the extent that each such employee is not (1) later arrested, indicted, or found liable for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time; (2) a UCC Claims Stipulation Defendant; or (3) listed on the Schedule of Excluded Parties. |

---

[1] Capitalized terms used herein but not defined shall have the meanings given to such terms in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as the same may be amended, modified, revised, or supplemented from time to time, the "**Plan**").

### Schedule of Excluded Parties

Pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as may be amended, modified, revised, or supplemented from time to time, the "**Plan**"), in addition to any other Excluded Parties specifically enumerated in the Plan, the following parties and each of their Affiliates and Related Parties are Excluded Parties as such term is defined therein.[1]

The Excluded Parties shall not receive the protections of the Plan's release, injunction, or exculpation provisions.  **For the avoidance of doubt, no Excluded Party shall constitute a Released Party or Exculpated Party in any capacity and all claims against the Excluded Parties that are held by the Debtors or Holders of Claims and Interests are expressly preserved.**

**This Schedule of Excluded Parties may be amended, modified, or supplemented by the Debtors and the Committee at any time prior to the date the Confirmation Order is entered by the Court.**

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 1. | Adam Carver |
| 2. | Akshay Nayak |
| 3. | Alameda Research Ltd. |
| 4. | Alchemy Capital Partners LP |
| 5. | Alexander Christy |
| 6. | Alexander Mashinsky |
| 7. | Aliza Landes |
| 8. | AM Ventures Holding, Inc. |
| 9. | Amber Technologies Limited |
| 10. | Amir Ayalon |
| 11. | Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc. |
| 12. | Anderson Tax |
| 13. | ANV Insurance |
| 14. | Aslihan Denizkurdu |
| 15. | Atlantic Insurance |
| 16. | Ayalon Insurance |
| 17. | BadgerDAO |
| 18. | Bancor |
| 19. | Battlestar Capital, LLC |
| 20. | B-Brick, Inc. |
| 21. | Benjamin Armstrong |

---

[1]    Capitalized terms used herein but not defined shall have the meanings given to such terms in the Plan.

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 22. | Beowulf Energy LLC |
| 23. | Berkley Insurance Company |
| 24. | Beyond Associates LLC |
| 25. | BitBoy Crypto |
| 26. | Bits of Sunshine LLC |
| 27. | BJ Investment Holdings, LLC |
| 28. | Blockchain Access UK Ltd. |
| 29. | Bradley Condit |
| 30. | Chainanlysis Inc. |
| 31. | Circle Internet Financial, LLC |
| 32. | Circle UK Trading Company Limited |
| 33. | Cloudflare, Inc. |
| 34. | Coin Bureau |
| 35. | Core Scientific Inc. |
| 36. | Cosmos Infrastructure LLC |
| 37. | Crum and Forster Specialty Insurance Company |
| 38. | Crypto Lark |
| 39. | CryptoWendyO |
| 40. | Darren Yarwood |
| 41. | DeFiRate |
| 42. | Deloitte & Touche LLP |
| 43. | Deloitte Tax LLP |
| 44. | Dennis Reichelt |
| 45. | Ditto PR |
| 46. | Eddie Moon |
| 47. | Endurance American Insurance Company |
| 48. | European Media Finance LTD |
| 49. | Equities First Holdings, LLC |
| 50. | EZ Blockchain Services, LLC |
| 51. | Fabric Ventures Group Sarl |
| 52. | Falvey Insurance Group |
| 53. | Fireblocks Inc. |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 54. | Four Thirteen LLC |
| 55. | Frank Van Etten |
| 56. | FTX Trading Ltd. |
| 57. | Grant Thornton LLP |
| 58. | Guy Turner |
| 59. | Haines Watts London LLP |
| 60. | Hanoch "Nuke" Goldstein |
| 61. | Harumi Urata-Thompson |
| 62. | HDR Global Trading Limited (t/a BitMEX) |
| 63. | High Throughput Productions, LLC |
| 64. | Hudson Insurance Group |
| 65. | Indian Harbor Insurance Company |
| 66. | Into the Block Corp. |
| 67. | Invest Answers |
| 68. | Iterative OTC, LLC |
| 69. | James Mullarney |
| 70. | Jason Perman |
| 71. | Jason Stone |
| 72. | Jeremie Beaudry |
| 73. | Johannes Treutler |
| 74. | Julie La Point |
| 75. | KeyFi, Inc. |
| 76. | Koala1 LLC |
| 77. | Koala 2 LLC |
| 78. | Koala 3, LLC |
| 79. | Kost Forer Gabbay & Kasierer |
| 80. | KPMG Somekh Chaikin |
| 81. | Kristine Meehan Mashinsky (née Kristine M. Meehan) |
| 82. | Lark Davis |
| 83. | Liquidity Technologies Ltd. (t/a CoinFLEX) |
| 84. | Lloyds of London Republic Vanguard Insurance Company |
| 85. | Luna Squares LLC |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 86. | Mambu Tech B.V. |
| 87. | Markel Insurance |
| 88. | Mawson Infrastructure Group Inc. |
| 89. | Mazars LLP |
| 90. | MF Partners, Ltd. |
| 91. | Michael Alfred |
| 92. | Migdal Insurance Company |
| 93. | MVP Workshop d.o.o. Beograd-Zemun and its shareholders |
| 94. | Nektar ACS Corp. |
| 95. | Nyman Lipson Paul, LLP |
| 96. | Patrick Martin |
| 97. | Peter Graham |
| 98. | Prime Trust LLC |
| 99. | Profluent Trading UK Ltd. |
| 100. | QBE Insurance Company |
| 101. | Realm Insurance Company |
| 102. | Reliz Limited |
| 103. | Rhodium Enterprises, Inc. |
| 104. | Rod Bolger |
| 105. | Rodney Sunada-Wong |
| 106. | Ron Sabo |
| 107. | Roni Cohen-Pavon |
| 108. | Sabre56 Corp. |
| 109. | Shlomi Daniel Leon |
| 110. | StakeHound SA |
| 111. | Starstone Insurance |
| 112. | Subranmaniam Vijay Konduru |
| 113. | Tether International Ltd. |
| 114. | Tether Limited |
| 115. | The Wolf of Bitcoin |
| 116. | Three Arrows Capital Ltd. |
| 117. | Timothy Shedd |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 118. | Tom McCarthy |
| 119. | Tushar Nadkarni |
| 120. | United States Fire Insurance Company |
| 121. | USAStrong.io |
| 122. | Voyager Digital Holdings, Inc. |
| 123. | Walter Johnson |
| 124. | Wintermute Trading Ltd. |
| 125. | XL Specialty Insurance Company |
| 126. | Yarden Noy |
| 127. | Yaron Shalem |
| 128. | Zachary Wildes |
| 129. | Zen Blockchain Foundation (d/b/a Horizen) |
| 130. | Zurich Insurance Group |
| 131. | All auditors of the Debtors |
| 132. | All third-party public promoters, marketers, and advertisers of the Debtors, including parties with agreements with Celsius concerning payments for referrals. |
| 133. | All Entities identified on the Schedule of Retained Causes of Action or associated with the claims and causes of action preserved on the Schedule of Retained Causes of Action. |
| 134. | Unless otherwise released pursuant to the Plan, all Entities currently party to adversary proceedings in the Debtors' Chapter 11 Cases. |
| 135. | All mediate and intermediate transferees of such Excluded Parties. |
| 136. | All parties with outstanding prepetition litigation against any of the Debtors and/or any party subject to any actual or potential counterclaim by the Debtors. |
| 137. | All Professionals of the Debtors not expressly released under the Plan, including all law firms retained by the Debtors prior to the Petition Date other than (1) Kirkland & Ellis LLP, (2) Akin Gump Strauss Hauer & Feld LLP, (3) White & Case LLP, (4) A.M. Saccullo Legal LLC; and (5) any law firm list on the Debtors' *Statement of Amounts Paid by the Debtors to Ordinary Course Professionals* in these Chapter 11 Cases as of August 13, 2022 [Docket Nos. 1455; 1954; 2557; 3120].  For the avoidance of doubt any such law firms are not "current attorneys" of the Debtors and are not Released Parties under the Plan. |
| 138. | Any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party, *provided* that all individuals who are employed by the Debtors on the date the Disclosure Statement Order is entered and that are not specifically identified as an Excluded Party on this Schedule of Excluded Parties (as such schedule may be amended prior to the date the Confirmation Order is entered) shall be Released and Exculpated except to the extent such employee is later arrested, indicted, or found liable by a court of competent jurisdiction of bad acts and omissions in connection |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| | with his or her role with the Debtors, in which case any release provided in the Plan shall be null and void and all statutes of limitation shall be tolled during such time; *provided, further* that any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party who subsequently enters into an agreement that includes a provision that they shall be identified as a Released Party shall be a Released Party. |
| 139. | Any Released Party that is later arrested, indicted, or found liable by a court of competent jurisdiction for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time. |
| 140. | Account Holder Avoidance Actions against Released Parties shall not be released unless released pursuant to the Account Holder Avoidance Action Settlement. |
| 141. | All Avoidance Actions against Entities that are not Account Holders. |
| 142. | All Affiliates and Related Parties of Excluded Parties |

## Exhibit 3D

**Series B Preferred Interests Ballot**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) )  Case No. 22-10964 (MG) |
| Debtors. | ) )  (Jointly Administered) |
| | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

**HOLDERS OF CLASS 14 SERIES B PREFERRED INTERESTS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS
BALLOT CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS
SERIES B PREFERRED INTERESTS BALLOT**

**THIS SERIES B PREFERRED INTERESTS BALLOT MUST BE COMPLETED, EXECUTED, AND
RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS, NOTICING, AND
SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME
(THE "VOTING DEADLINE").**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE READ – YOUR RESPONSE IS REQUIRED BY SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME**

- **You are receiving this ballot (this "Ballot") because you are a Holder Claims of above-captioned debtors and debtors in possession (collectively, the "Debtors"), who filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").**

- **The Debtors are seeking Bankruptcy Court approval for a chapter 11 plan filed as part of their bankruptcy proceedings.**

- **Under the Plan, unless you take additional action as described in this Ballot, and affirmatively opt out, you will be deemed to release claims you may have against the Debtors' officers and directors (excluding certain members of the Debtors' former management team as further described in the Plan and Disclosure Statement), and certain creditors and other third parties.**

- **You have the right to opt out and to avoid releasing any claims against these third parties. To do so, you must check the opt out box on page five of this Ballot and return this Ballot to the Claims, Noticing, and Solicitation Agent by the Voting Deadline. The applicable definitions of Released Parties and Releasing Parties are also attached to this Ballot for your convenience of review. These defined terms control the scope of the release provisions.**

- **If you vote to accept the Plan in Item 3 of this Ballot, you will be bound by the releases set forth in the Plan. If you vote to accept the Plan in Item 3 of this Ballot AND you also elect to opt out of the Third-Party Releases set forth in Item 4 of this Ballot, your vote to accept the Plan shall control and you shall be deemed a "Releasing Party" under the Plan.**

The Debtors are soliciting votes to accept or reject the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement for the Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").[2] The Disclosure Statement provides you with information to make an informed decision as to whether you will vote to accept or reject the Plan. Votes are being solicited from Holders of Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, Withhold Claims, Unsecured Loan Claims, General Unsecured Claims, State Regulatory Claims, and Series B Preferred Interests (each, a "Voting Class" and collectively, the "Voting Classes").

**Please review the detailed instructions regarding how to complete and submit this Series B Preferred Interests Ballot attached hereto as Annex A (the "Series B Preferred Interests Ballot Instructions").** Once completed and returned in accordance with the attached Series B Preferred Interests Ballot Instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in that Voting Class vote to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. After confirmation, the Plan will be binding on all Holders of Claims, among others.

You are receiving this Series B Preferred Interests Ballot because you are the Holder of a Class 14 Series B Preferred Interest as of **July 24, 2023** (the "Voting Record Date"). **For a detailed discussion of the treatment of Series B Preferred Interests under the Plan, please read the Disclosure Statement.**

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

**TO HAVE YOUR VOTE COUNT AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, YOU MUST COMPLETE AND RETURN THIS SERIES B PREFERRED INTERESTS BALLOT SO THAT THE CLAIMS, NOTICING, AND SOLICITATION AGENT ACTUALLY RECEIVES IT ON OR BEFORE THE VOTING DEADLINE OF SEPTEMBER 22, 2023, AT 4:00 P.M. PREVAILING EASTERN TIME.**

To vote, you <u>MUST</u>:  (a) fully complete this Series B Preferred Interests Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Series B Preferred Interests Ballot; and (c) sign, date, and return this Series B Preferred Interests Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

To submit your Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Ballot.

To submit your Ballot via mail, please send to:

<div align="center">

Celsius Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

</div>

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Series B Preferred Interests.  Your Series B Preferred Interests have been placed in Class 14 under the Plan.

If you hold Claims or Interests in Voting Classes other than Class 14, you will receive multiple ballots.  Each ballot must be completed and returned by the Voting Deadline for the votes on the respective ballots to be counted.  Please note, however, that Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, and Withhold Claims (collectively, "<u>Account Holder Claims</u>"), are all consolidated on one ballot (the "<u>Account Holder Ballot</u>").  For the avoidance of doubt, if you are a Holder of an Account Holder Claim, you will receive the Account Holder Ballot in addition to this Series B Preferred Interests Ballot, which must be completed and returned by the Voting Deadline for the votes on the Account Holder Ballot to be counted.

As further described in the Committee Letter, the Committee recommends that you vote to accept the Plan and contribute your third-party claims.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "<u>Solicitation Package</u>") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package materials, or if you need to obtain additional Solicitation Packages, you may obtain them by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-587 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at:  http://pacer.psc.uscourts.gov.

This Series B Preferred Interests Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making certain elections, and making certain certifications with respect to the Plan.  If you believe you have received this Series B Preferred Interests Ballot in error, please contact the Claims, Noticing, and Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

If the Bankruptcy Court confirms the Plan, the terms of the Plan will bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan.  To have your vote count as either an acceptance or

<div align="center">4</div>

rejection of the Plan, you must complete and return this Series B Preferred Interests Ballot so that the Claims, Noticing, and Solicitation Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

<u>Item 1</u>.    **Amount of Class 14 Allowed Series B Preferred Interests.**

---

**Voting Amount.**  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 14 Series B Preferred Interests:


____[TO BE PREPRINTED BY STRETTO]_____

---

<u>Item 2</u>.    **Recovery.**

Pursuant to <u>Article III.B.14</u> of the Plan, each Holder of an Allowed Series B Preferred Interest shall receive its Pro Rata share of the Series B Settlement Consideration, to the extent not already received pursuant to the Series B Settlement Order.

<u>Item 3</u>.    **Vote on Plan.**

You are eligible to vote to accept or reject the Plan.  You must check the applicable box below to "accept" or "reject" the Plan.  Please note that you are required to vote all of your Claims in any class either to accept or reject the Plan. Please further note that the Plan contemplates both the NewCo Transaction and Orderly Wind Down.  Your vote to accept or reject the Plan will be counted as a vote to accept or reject both the NewCo Transaction and Orderly Wind Down, and you may not split your vote.  For a detailed description of the NewCo Transaction, please carefully read <u>Article III.H</u> of the Disclosure Statement.  For a detailed description of the Orderly Wind Down, please carefully read <u>Article III.I</u> of the Disclosure Statement.

*If you <u>do not</u> indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted in Class 14 Series B Preferred Interests.  If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.*

**Class 14 Series B Preferred Interests Vote**.  The Holder of the Class 14 Series B Preferred Interests in the Debtors set forth in Item 1 votes to (please check <u>one</u>):

---

☐  **<u>ACCEPT</u>** (vote FOR) the Plan            ☐  **<u>REJECT</u>** (vote AGAINST) the Plan

---

<u>Item 4</u>.    **Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES.  THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.

IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASES CONTAINED IN ARTICLE VIII.D. OF THE PLAN.  AS A HOLDER OF A SERIES B PREFERRED INTEREST CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN UNLESS YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING AND OPT OUT OF THE RELEASES CONTAINED IN THE PLAN.  YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU DO NOT CHECK THE BOX BELOW TO OPT OUT OF GRANTING THE RELEASES.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN AND YOU CHECKED THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS **ITEM 4**, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.  FOR THE AVOIDANCE OF ANY DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 3** OF THIS BALLOT, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN.  IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 3** OF THIS BALLOT AND YOU ALSO ELECT TO OPT OUT OF THE THIRD PARTY-RELEASE SET FORTH IN THIS **ITEM 4**, YOUR VOTE TO ACCEPT THE PLAN SHALL CONTROL AND YOU SHALL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt OUT of the Third-Party Release.** |

Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 3 above.

**Article VIII.D of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of**

Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

**Definitions Related to the Debtor Release and the Third-Party Release:**

(1)   Under the Plan, "***Released Parties***" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party. Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; provided, further, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; provided, further, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

(2)   Under the Plan, "***Releasing Parties***" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests who vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

(3)         Under the Plan, "***Excluded Party***" means each of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

A schedule of the Released Parties and Exculpated Parties and a schedule of Excluded Parties is attached as **Annex B** to this Series B Preferred Interests Ballot.

## Item 5.  Contributed Claims

If the Plan is confirmed, all causes of action that the Debtors are entitled to bring against third-parties not released under the Plan and other Retained Causes of Action will be transferred to the Post-Effective Date Debtors.  In addition to these causes of action that can only be commenced by the Post-Effective Date Debtors, certain creditors may have direct causes of action against certain third-parties associated with Celsius that are not released under the Plan.  However, it may be difficult and expensive for individual creditors to sue third-parties for losses.  Accordingly, creditors can elect to contribute direct causes of action to the Post-Effective Date Debtors.  By opting in to contribute causes of action to the Post-Effective Date Debtors, you are giving the Litigation Administrator the right to pursue those direct causes of action on your behalf together with other creditors.  As a result, the Litigation Administrator will be able to use their resources to sue on account of those direct causes of action, and all recoveries will inure to the benefit of all creditors entitled to receive Litigation Proceeds and not just those that agreed to contribute their claims.  In other words, **if the Litigation Administrator prevails on any Contributed Claims that you contribute, those recoveries will be distributed among all creditors entitled to receive such recoveries and will not be distributed solely to you**.  For the avoidance of doubt, the decision to "opt in" to contribute claims is entirely voluntary, and the failure to "opt in" does not prejudice any electing creditors' rights.

By electing such option, you agree that, subject to the occurrence of the Effective Date, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Claims to the Post-Effective Date Debtors, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Post-Effective Date Debtors to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Claims to the Litigation Administrator, which may allow the Litigation Administrator to obtain greater recoveries for the benefit of Holders of Claims entitled to receive Litigation Proceeds.**

| ☐ | **By checking this box, you elect to contribute your Contributed Claims to the Litigation Administrator.** |
|---|---|

Definitions Related to Contributed Claims:

(1)         Under the Plan, "***Contributed Claim***" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Celsius, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Celsius' platform; (b) any Cause of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising

out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided, however*, that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

(2)    Under the Plan, "***Contributing Claimant***" means any Holder of a Claim or Interest that elects through its Ballot to contribute their Contributed Claims to the applicable Post-Effective Date Debtor(s) (as specified in the Transactions Steps Memorandum) in order for the Litigation Administrator to prosecute such Contributed Claims for the benefit of Holders of Claims entitled to receive Litigation Proceeds under the Plan.

**Item 6.** **Certifications.**

1.    The undersigned is (a) the Holder of Class 14 Series B Preferred Interests being voted or (b) the authorized signatory for an entity that is a Holder of such Series B Preferred Interests entitled to vote to accept or reject the Plan on behalf of the Holder of such Series B Preferred Interests;

2.    the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3.    the undersigned has cast the same vote with respect to all of its Series B Preferred Interests in connection with the Plan; and

4.    either (a) no other Ballot with respect to the same Series B Preferred Interests identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such Series B Preferred Interests, then any such earlier Ballots are hereby revoked and deemed to be null and void.

**Item 7.** **Ballot Completion Information.**

Name of Holder:
_____

_____

Signature: _____

Signatory Name (if other than the Holder): _____

Title (if other than the Holder): _____

Address: _____

Email Address: _____

Telephone Number: _____

Date Completed: _____

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan. This Series B Preferred Interests Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS SERIES B PREFERRED INTERESTS BALLOT AND RETURN IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN. THIS SERIES B PREFERRED INTERESTS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE VIA THE ONLINE VOTING PORTAL AT HTTPS://CASE.STRETTO.COM/CELSIUS/BALLOTING.**

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS SERIES B PREFERRED INTERESTS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

| **Annex A** |
| **Series B Preferred Interests** |

### INSTRUCTIONS FOR COMPLETING THIS BALLOT

1. The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Series B Preferred Interests Ballot or in these instructions (the "<u>Series B Preferred Interests Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Series B Preferred Interests Ballot.

    **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

    **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3. This Series B Preferred Interests Ballot contains voting options with respect to the Plan.

4. To vote, you <u>MUST</u>:  (a) fully complete this Series B Preferred Interests Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Series B Preferred Interests Ballot; and (c) sign, date, and return this Series B Preferred Interests Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

    To submit your Series B Preferred Interests Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Series B Preferred Interests Ballot.

    To submit your Ballot via mail, please send to:

    <div align="center">

    Celsius Ballot Processing
    c/o Stretto
    410 Exchange, Suite 100
    Irvine, CA 92602

    </div>

    The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Series B Preferred Interests Ballots will be accepted via electronic or online transmission.  Series B Preferred Interests Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

    Creditors who cast a Series B Preferred Interests Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also mail a hard copy of the Series B Preferred Interests Ballot.

5. Any Series B Preferred Interests Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine to accept such Ballot, in consultation with the Committee.

6. To vote, you <u>MUST</u> submit your completed Series B Preferred Interests Ballot via the online voting portal so that it is **ACTUALLY RECEIVED** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline. The Voting Deadline is **September 22, 2023, at 4:00 p.m.** prevailing Eastern Time.

7.  Any Series B Preferred Interests Ballot received by the Claims, Noticing, and Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine, in consultation with the Committee.  No Series B Preferred Interests Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

8.  Delivery of a Series B Preferred Interests Ballot reflecting your vote to the Claims, Noticing, and Solicitation Agent will be deemed to have occurred only when the Claims, Noticing, and Solicitation Agent actually receives the Series B Preferred Interests Ballot.  In all cases, you should allow sufficient time to assure timely completion and submission of the Series B Preferred Interests Ballot.

9.  If you deliver multiple Series B Preferred Interests Ballots for your Series B Preferred Interests to the Claims, Noticing, and Solicitation Agent, only the last properly executed Series B Preferred Interests Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Series B Preferred Interests Ballot(s) for your Series B Preferred Interests.

10.  You must vote all of your Series B Preferred Interests either to accept or reject the Plan and may not split your vote.  Furthermore, if a Holder has multiple Claims within Class 9, such claims shall be aggregated for the purpose of counting votes.

11.  This Series B Preferred Interests Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

12.  You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

13.  You must SIGN AND DATE your Series B Preferred Interests Ballot.[1]  A Series B Preferred Interests Ballot properly submitted via the Claims, Noticing, and Solicitation Agent's online voting portal shall be deemed to contain an original signature of the Holder submitting such Ballot.  Please provide your name and mailing address in the space provided on this Series B Preferred Interests Ballot if it is different from that set forth on the Series B Preferred Interests Ballot or if no address is presented on the Series B Preferred Interests Ballot.

14.  If you have claims in other Voting Classes, you may receive more than one ballot coded for each such account for which your Claims are held.  Each ballot votes only your Claims indicated on that ballot.  Accordingly, complete and return each ballot you receive.

**PLEASE RETURN YOUR SERIES B PREFERRED INTERESTS BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS SERIES B PREFERRED INTERESTS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT:    (855) 423-1530 (TOLL-FREE) OR +1 (949) 669-587 (INTERNATIONAL) OR EMAIL CELSIUSINQUIRIES@STRETTO.COM AND REFERENCE "IN RE CELSIUS - SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

---

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS SERIES B PREFERRED INTERESTS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[1]  If you are signing a Series B Preferred Interests Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims, Noticing, and Solicitation Agent, the Debtors, the Debtors' counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

## Annex B

**Schedule of Released and Exculpated Parties, and Schedule of Excluded Parties**

## Schedule of Released and Exculpated Parties

Pursuant to the Plan, the following parties shall be Released Parties and shall receive the benefit of the releases provided in the Plan, in addition to the Released Parties specifically enumerated in the Plan.[1] **For the avoidance of doubt, no Releasing Party shall be permitted to assert any Released Claim against any Released Parties after the Plan is confirmed.** If any Holder of a Claim or Interest opts out of the Plan's third-party release provisions pursuant to the opt-out procedures approved by the Court, such Holder shall not be a Releasing Party.

| | **ADDITIONAL RELEASED AND EXCULPATED PARTIES** |
|---|---|
| 1. | Each individual who is employed by the Debtors on the date the Disclosure Statement Order is entered to the extent that each such employee is not (1) later arrested, indicted, or found liable for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time; (2) a UCC Claims Stipulation Defendant; or (3) listed on the Schedule of Excluded Parties. |

---

[1] Capitalized terms used herein but not defined shall have the meanings given to such terms in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as the same may be amended, modified, revised, or supplemented from time to time, the "Plan").

## Schedule of Excluded Parties

Pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as may be amended, modified, revised, or supplemented from time to time, the "**Plan**"), in addition to any other Excluded Parties specifically enumerated in the Plan, the following parties and each of their Affiliates and Related Parties are Excluded Parties as such term is defined therein.[1]

The Excluded Parties shall not receive the protections of the Plan's release, injunction, or exculpation provisions.  **For the avoidance of doubt, no Excluded Party shall constitute a Released Party or Exculpated Party in any capacity and all claims against the Excluded Parties that are held by the Debtors or Holders of Claims and Interests are expressly preserved.**

**This Schedule of Excluded Parties may be amended, modified, or supplemented by the Debtors and the Committee at any time prior to the date the Confirmation Order is entered by the Court.**

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 1. | Adam Carver |
| 2. | Akshay Nayak |
| 3. | Alameda Research Ltd. |
| 4. | Alchemy Capital Partners LP |
| 5. | Alexander Christy |
| 6. | Alexander Mashinsky |
| 7. | Aliza Landes |
| 8. | AM Ventures Holding, Inc. |
| 9. | Amber Technologies Limited |
| 10. | Amir Ayalon |
| 11. | Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc. |
| 12. | Anderson Tax |
| 13. | ANV Insurance |
| 14. | Aslihan Denizkurdu |
| 15. | Atlantic Insurance |
| 16. | Ayalon Insurance |
| 17. | BadgerDAO |
| 18. | Bancor |
| 19. | Battlestar Capital, LLC |
| 20. | B-Brick, Inc. |
| 21. | Benjamin Armstrong |
| 22. | Beowulf Energy LLC |

---

[1]    Capitalized terms used herein but not defined shall have the meanings given to such terms in the Plan.

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 23. | Berkley Insurance Company |
| 24. | Beyond Associates LLC |
| 25. | BitBoy Crypto |
| 26. | Bits of Sunshine LLC |
| 27. | BJ Investment Holdings, LLC |
| 28. | Blockchain Access UK Ltd. |
| 29. | Bradley Condit |
| 30. | Chainanlysis Inc. |
| 31. | Circle Internet Financial, LLC |
| 32. | Circle UK Trading Company Limited |
| 33. | Cloudflare, Inc. |
| 34. | Coin Bureau |
| 35. | Core Scientific Inc. |
| 36. | Cosmos Infrastructure LLC |
| 37. | Crum and Forster Specialty Insurance Company |
| 38. | Crypto Lark |
| 39. | CryptoWendyO |
| 40. | Darren Yarwood |
| 41. | DeFiRate |
| 42. | Deloitte & Touche LLP |
| 43. | Deloitte Tax LLP |
| 44. | Dennis Reichelt |
| 45. | Ditto PR |
| 46. | Eddie Moon |
| 47. | Endurance American Insurance Company |
| 48. | European Media Finance LTD |
| 49. | Equities First Holdings, LLC |
| 50. | EZ Blockchain Services, LLC |
| 51. | Fabric Ventures Group Sarl |
| 52. | Falvey Insurance Group |
| 53. | Fireblocks Inc. |
| 54. | Four Thirteen LLC |
| 55. | Frank Van Etten |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 56. | FTX Trading Ltd. |
| 57. | Grant Thornton LLP |
| 58. | Guy Turner |
| 59. | Haines Watts London LLP |
| 60. | Hanoch "Nuke" Goldstein |
| 61. | Harumi Urata-Thompson |
| 62. | HDR Global Trading Limited (t/a BitMEX) |
| 63. | High Throughput Productions, LLC |
| 64. | Hudson Insurance Group |
| 65. | Indian Harbor Insurance Company |
| 66. | Into the Block Corp. |
| 67. | Invest Answers |
| 68. | Iterative OTC, LLC |
| 69. | James Mullarney |
| 70. | Jason Perman |
| 71. | Jason Stone |
| 72. | Jeremie Beaudry |
| 73. | Johannes Treutler |
| 74. | Julie La Point |
| 75. | KeyFi, Inc. |
| 76. | Koala1 LLC |
| 77. | Koala 2 LLC |
| 78. | Koala 3, LLC |
| 79. | Kost Forer Gabbay & Kasierer |
| 80. | KPMG Somekh Chaikin |
| 81. | Kristine Meehan Mashinsky (née Kristine M. Meehan) |
| 82. | Lark Davis |
| 83. | Liquidity Technologies Ltd. (t/a CoinFLEX) |
| 84. | Lloyds of London Republic Vanguard Insurance Company |
| 85. | Luna Squares LLC |
| 86. | Mambu Tech B.V. |
| 87. | Markel Insurance |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 88. | Mawson Infrastructure Group Inc. |
| 89. | Mazars LLP |
| 90. | MF Partners, Ltd. |
| 91. | Michael Alfred |
| 92. | Migdal Insurance Company |
| 93. | MVP Workshop d.o.o. Beograd-Zemun and its shareholders |
| 94. | Nektar ACS Corp. |
| 95. | Nyman Lipson Paul, LLP |
| 96. | Patrick Martin |
| 97. | Peter Graham |
| 98. | Prime Trust LLC |
| 99. | Profluent Trading UK Ltd. |
| 100. | QBE Insurance Company |
| 101. | Realm Insurance Company |
| 102. | Reliz Limited |
| 103. | Rhodium Enterprises, Inc. |
| 104. | Rod Bolger |
| 105. | Rodney Sunada-Wong |
| 106. | Ron Sabo |
| 107. | Roni Cohen-Pavon |
| 108. | Sabre56 Corp. |
| 109. | Shlomi Daniel Leon |
| 110. | StakeHound SA |
| 111. | Starstone Insurance |
| 112. | Subranmaniam Vijay Konduru |
| 113. | Tether International Ltd. |
| 114. | Tether Limited |
| 115. | The Wolf of Bitcoin |
| 116. | Three Arrows Capital Ltd. |
| 117. | Timothy Shedd |
| 118. | Tom McCarthy |
| 119. | Tushar Nadkarni |
| 120. | United States Fire Insurance Company |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 121. | USAStrong.io |
| 122. | Voyager Digital Holdings, Inc. |
| 123. | Walter Johnson |
| 124. | Wintermute Trading Ltd. |
| 125. | XL Specialty Insurance Company |
| 126. | Yarden Noy |
| 127. | Yaron Shalem |
| 128. | Zachary Wildes |
| 129. | Zen Blockchain Foundation (d/b/a Horizen) |
| 130. | Zurich Insurance Group |
| 131. | All auditors of the Debtors |
| 132. | All third-party public promoters, marketers, and advertisers of the Debtors, including parties with agreements with Celsius concerning payments for referrals. |
| 133. | All Entities identified on the Schedule of Retained Causes of Action or associated with the claims and causes of action preserved on the Schedule of Retained Causes of Action. |
| 134. | Unless otherwise released pursuant to the Plan, all Entities currently party to adversary proceedings in the Debtors' Chapter 11 Cases. |
| 135. | All mediate and intermediate transferees of such Excluded Parties. |
| 136. | All parties with outstanding prepetition litigation against any of the Debtors and/or any party subject to any actual or potential counterclaim by the Debtors. |
| 137. | All Professionals of the Debtors not expressly released under the Plan, including all law firms retained by the Debtors prior to the Petition Date other than (1) Kirkland & Ellis LLP, (2) Akin Gump Strauss Hauer & Feld LLP, (3) White & Case LLP, (4) A.M. Saccullo Legal LLC; and (5) any law firm list on the Debtors' *Statement of Amounts Paid by the Debtors to Ordinary Course Professionals* in these Chapter 11 Cases as of August 13, 2022 [Docket Nos. 1455; 1954; 2557; 3120]. For the avoidance of doubt any such law firms are not "current attorneys" of the Debtors and are not Released Parties under the Plan. |
| 138. | Any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party, *provided* that all individuals who are employed by the Debtors on the date the Disclosure Statement Order is entered and that are not specifically identified as an Excluded Party on this Schedule of Excluded Parties (as such schedule may be amended prior to the date the Confirmation Order is entered) shall be Released and Exculpated except to the extent such employee is later arrested, indicted, or found liable by a court of competent jurisdiction of bad acts and omissions in connection with his or her role with the Debtors, in which case any release provided in the Plan shall be null and void and all statutes of limitation shall be tolled during such time; *provided*, *further* that any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party who subsequently enters into |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| | an agreement that includes a provision that they shall be identified as a Released Party shall be a Released Party. |
| 139. | Any Released Party that is later arrested, indicted, or found liable by a court of competent jurisdiction for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time. |
| 140. | Account Holder Avoidance Actions against Released Parties shall not be released unless released pursuant to the Account Holder Avoidance Action Settlement. |
| 141. | All Avoidance Actions against Entities that are not Account Holders. |
| 142. | All Affiliates and Related Parties of Excluded Parties |

**Exhibit 3E**

**State Regulatory Claims Ballot**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT**
**PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

**HOLDERS OF CLASS 10 STATE REGULATORY CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**PLEASE BE SURE TO LEAVE SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>").**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE READ – YOUR RESPONSE IS REQUIRED BY <u>SEPTEMBER 22, 2023, AT 4:00 P.M.,
PREVAILING EASTERN TIME</u>**

- **You are receiving this ballot (this "<u>Ballot</u>") because you are a Holder Claims of above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), who filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").**

- **The Debtors are seeking Bankruptcy Court approval for a chapter 11 plan filed as part of their bankruptcy proceedings.**

- **Under the Plan, unless you take <u>additional action</u> as described in this Ballot, and <u>affirmatively opt out</u>, you will be deemed to release claims you may have against the Debtors' officers and directors (excluding certain members of the Debtors' former management team as further described in the Plan and Disclosure Statement), and certain creditors and other third parties.**

- **You have the right to opt out and to avoid releasing any claims against these third parties. To do so, you must check the opt out box on page five of this Ballot and return this Ballot to the Claims, Noticing, and Solicitation Agent by the Voting Deadline. The applicable definitions of Released Parties and Releasing Parties are also attached to this Ballot for your convenience of review. These defined terms control the scope of the release provisions.**

- **If you vote to accept the Plan in <u>Item 3</u> of this Ballot, you will be bound by the releases set forth in the Plan. If you vote to accept the Plan in <u>Item 3</u> of this Ballot <u>AND</u> you also elect to opt out of the Third-Party Releases set forth in <u>Item 4</u> of this Ballot, your vote to accept the Plan shall control and you shall be deemed a "Releasing Party" under the Plan.**

The Debtors are soliciting votes to accept or reject the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"), attached as <u>Exhibit A</u> to the *Disclosure Statement for the Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>").[2] The Disclosure Statement provides you with information to make an informed decision as to whether you will vote to accept or reject the Plan. Votes are being solicited from Holders of Retail Borrower Deposit Claims, Convenience Claims, General Earn Claims, General Custody Claims, Withhold Claims, Unsecured Loan Claims, General Unsecured Claims, State Regulatory Claims, and Series B Preferred Interests (each, a "<u>Voting Class</u>" and collectively, the "<u>Voting Classes</u>").

**Please review the detailed instructions regarding how to complete and submit this Ballot attached hereto as <u>Annex A</u> (the "<u>Ballot Instructions</u>").** Once completed and returned in accordance with the attached Ballot Instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in that Voting Class vote to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. After confirmation, the Plan will be binding on all Holders of Claims, among others.

You are receiving this Ballot because you are the Holder of a Class 10 State Regulatory Claim as of <u>July 24, 2023</u> (the "<u>Voting Record Date</u>"). **For a detailed discussion of the treatment of Holders of Class 10 State Regulatory Claims under the Plan, please read the Disclosure Statement.**

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

**TO HAVE YOUR VOTE COUNT AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, YOU MUST COMPLETE AND RETURN THIS BALLOT SO THAT THE CLAIMS, NOTICING, AND SOLICITATION AGENT ACTUALLY RECEIVES IT ON OR BEFORE THE VOTING DEADLINE OF SEPTEMBER 22, 2023 AT 4:00 P.M., PREVAILING EASTERN TIME.**

To vote, you <u>MUST</u>:  (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

To submit your Ballot via the online voting portal, please visit https://case.stretto.com/Celsius/balloting and follow the instructions to submit your Ballot.

To submit your Ballot via mail, please send to:

<div align="center">

*Celsius Ballot Processing*
*c/o Stretto*
*410 Exchange, Suite 100*
*Irvine, CA 92602*

</div>

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your State Regulatory Claim.  Your State Regulatory Claims have been placed in Class 10 under the Plan.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "<u>Solicitation Package</u>") you are receiving with this Ballot.  If you desire paper copies of the Solicitation Package materials, or if you need to obtain additional Solicitation Packages, you may obtain them by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-587 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re:  Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at:  http://pacer.psc.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making certain elections, and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, please contact the Claims, Noticing, and Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

If the Bankruptcy Court confirms the Plan, the terms of the Plan will bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan.

To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Claims, Noticing, and Solicitation Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

<u>Item 1</u>.    **Amount of Class 10 Allowed State Regulatory Claims.**

If you did not file a Proof of Claim, the amount of your Class 10 State Regulatory Claims are the amount that the Debtors Scheduled on account of such Claim.  Conversely, if you filed a timely Proof of Claim (or filed an untimely Proof of Claim that has been Allowed as timely on or before the Voting Record Date), the amount of your Class 10 State Regulatory Claims for purposes of voting on the Plan will be the amount asserted in that Proof of Claim, unless such Proof of Claim is subject to a pending objection.  **For the avoidance of doubt, the amount of your Class 10 State Regulatory Claims for purposes of voting are listed immediately below.**

---

**Voting Amount.**  The undersigned certifies that, as of the Voting Record Date, the undersigned is a Holder of Class 10 State Regulatory Claims against the Debtors in the following amount:

_____[TO BE PREPRINTED BY STRETTO]_____

---

Subject to the terms and conditions of Article III.B of the Plan, you will receive the treatment for your State Regulatory Claims identified below.  **For additional discussion of your treatment and rights for your State Regulatory Claims under the Plan, please read the Disclosure Statement and the Plan.**

<u>Item 2</u>.    **Recovery.**

Pursuant to Article III.B.10 of the Plan, [each Holder of an Allowed State Regulatory Claim shall have its Claim subordinated to all Account Holder Claims.  On the Effective Date, all State Regulatory Claims shall be cancelled, released, and extinguished and will be of no further force or effect, regardless of whether Holders of State Regulatory Claims receive a distribution.][3]

<u>Item 3</u>.    **Vote on Plan.**

You are eligible to vote to accept or reject the Plan.  You must check the applicable box below to "accept" or "reject" the Plan.  Please note that you are required to vote all of your Claims in any class either to accept or reject the Plan.  Please further note that the Plan contemplates both the NewCo Transaction and Orderly Wind Down.  Your vote to accept or reject the Plan will be counted as a vote to accept or reject both the NewCo Transaction and Orderly Wind Down, and you may not split your vote.  For a detailed description of the NewCo Transaction, please carefully read Article III.H of the Disclosure Statement.  For a detailed description of the Orderly Wind Down, please carefully read Article III.I of the Disclosure Statement.

*If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted.  If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.*

The Holder of the Class 10 State Regulatory Claims against the Debtors set forth in Item 1 votes to (*please check* <u>*one*</u>):

☐ **<u>ACCEPT</u>** (vote FOR) the Plan          ☐ **<u>REJECT</u>** (vote AGAINST) the Plan

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 3 above.</u>**

<u>Item 4</u>.    **Third-Party Release.**

THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASES.  IF

---

[3]    The treatment of State Regulatory Claims remains subject to ongoing discussions with state regulators.

YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, THIS FAILURE TO ACT WILL BE CONSTRUED BY THE DEBTORS AS CONSENT TO THE THIRD-PARTY RELEASES.  THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO DEEM YOUR FAILURE TO OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING CONSENT TO THE BANKRUPTCY COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.

IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASES, YOU WILL BE DEEMED A RELEASING PARTY PROVIDING THE THIRD-PARTY RELEASES CONTAINED IN <u>ARTICLE VIII.D.</u> OF THE PLAN.  AS A HOLDER OF STATE REGULATORY CLAIMS, YOU ARE A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING <u>AND</u> OPT OUT OF THE RELEASES CONTAINED IN THE PLAN.  YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.

YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU DO NOT CHECK THE BOX BELOW TO OPT OUT OF GRANTING THE RELEASES.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTED TO ACCEPT THE PLAN AND YOU CHECKED THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS **ITEM 4**, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.  FOR THE AVOIDANCE OF ANY DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 3** OF THIS BALLOT, YOU SHALL BE BOUND BY THE RELEASES SET FORTH IN THE PLAN.  IF YOU VOTE TO ACCEPT THE PLAN IN **ITEM 3** OF THIS BALLOT <u>AND</u> YOU ALSO ELECT TO OPT OUT OF THE THIRD PARTY-RELEASE SET FORTH IN THIS **ITEM 4**, YOUR VOTE TO ACCEPT THE PLAN SHALL CONTROL AND YOU SHALL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.

> ☐   **By checking this box, you elect to <u>OPT OUT OF</u> the Third-Party Release.**

<u>**Article VIII.D**</u> **of the Plan contains the following Third-Party Release:**

**Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, that such Entity would have been legally entitled to assert in their own right or otherwise (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in**

connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (a) obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement, or (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

Definitions Related to the Debtor Release and the Third-Party Release:

1)     Under the Plan, "*Released Parties*" means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party.  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases provided under this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; provided, further, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; provided, further, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

2)     Under the Plan, "*Releasing Parties*" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan;

(e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

3) Under the Plan, "*Excluded Party*" means each of the following: (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party. Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the Plan.

A schedule of the Released Parties and Exculpated Parties and a schedule of the Excluded Parties is attached as **Annex B** to this Ballot.

**Item 5. Certifications.**

1. The undersigned, as of the Voting Record Date, is (a) the Holder of Class 10 State Regulatory Claims being voted or (b) the authorized signatory for an entity that is a Holder of such State Regulatory Claims entitled to vote to accept or reject the Plan on behalf of the Holder of such State Regulatory Claims;

2. the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3. the undersigned has cast the same vote with respect to all of its Class 10 State Regulatory Claims in connection with the Plan; and

4. either (a) no other Ballot with respect to the same Class 10 State Regulatory Claims identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such Class 10 State Regulatory Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

**Item 6. Ballot Completion Information.**

Name of Holder: _____

_____

Signature: _____

Signatory Name (if other than the Holder): _____

Title (if other than the Holder): _____

Address: _____

Email Address: _____

Telephone Number: _____

Date Completed: _____

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan.  This Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN.  THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE VIA THE ONLINE VOTING PORTAL AT <u>HTTPS://CASE.STRETTO.COM/CELSIUS/BALLOTING</u>.**

<div style="border:1px solid">

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS CLASS 10 BALLOT ON OR BEFORE THE VOTING DEADLINE.**

</div>

| **Annex A** |
| **Class 10 State Regulatory Claims** |

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Ballot.

    **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

    **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THE BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two–thirds in amount and more than one–half in number of Claims in at least one Class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This Ballot contains voting options with respect to the Plan.

4.  To vote, you <u>MUST</u>:  (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal or by mail as described more fully below.

    To submit your Ballot via the online voting portal, please visit <u>https://case.stretto.com/Celsius/balloting</u> and follow the instructions to submit your Ballot.

    To submit your Ballot via mail, please send to:

    <div align="center">

    Celsius Ballot Processing
    c/o Stretto
    410 Exchange, Suite 100
    Irvine, CA 92602

    </div>

    The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

    Creditors who cast a Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also mail a hard copy Ballot.

5.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine to accept such Ballot, in consultation with the Committee.

6.  To vote, you <u>MUST</u> submit your completed Ballot via the online voting portal so that it is **ACTUALLY RECEIVED** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline.  The Voting Deadline is **September 22, 2023, at 4:00 p.m.,** prevailing Eastern Time.

7.  Any Ballot received by the Claims, Noticing, and Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine, in consultation with the Committee.  No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

8. Delivery of a Ballot reflecting your vote to the Claims, Noticing, and Solicitation Agent will be deemed to have occurred only when the Claims, Noticing, and Solicitation Agent actually receives the Ballot. In all cases, you should allow sufficient time to assure timely completion and submission of the Ballot.

9. If you deliver multiple Ballots for your Class 10 State Regulatory Claims to the Claims, Noticing, and Solicitation Agent, only the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s) for your Class 10 State Regulatory Claims.

10. You must vote all of your Class 10 State Regulatory Claims either to accept or reject the Plan, and may not split your vote. Furthermore, if a Holder has multiple Claims within Class 10, such claims shall be aggregated for the purpose of counting votes.

11. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

12. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

13. You must SIGN AND DATE your Ballot.[1] A Ballot properly submitted via the Claims, Noticing, and Solicitation Agent's online voting portal shall be deemed to contain an original signature of the Holder submitting such Ballot. Please provide your name and mailing address in the space provided on this Ballot if it is different from that set forth on the Ballot or if no address is presented on the Ballot.

14. If you have claims in other Voting Classes, you may receive more than one ballot coded for each such account for which your Claims are held. Each ballot votes only your Claims indicated on that ballot. Accordingly, complete and return each Ballot you receive.

## PLEASE RETURN YOUR BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 10 BALLOT, THESE BALLOT INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT: (855) 423-1530 (TOLL-FREE) OR +1 (949) 669-587 (INTERNATIONAL) OR EMAIL CELSIUSINQUIRIES@STRETTO.COM AND REFERENCE "IN RE CELSIUS - SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

---

**THE VOTING DEADLINE IS SEPTEMBER 22, 2023, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[1] If you are signing the Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims, Noticing, and Solicitation Agent, the Debtors, the Debtors' counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

**Annex B**

**Schedule of Released and Exculpated Parties, and Schedule of Excluded Parties**

## Schedule of Released and Exculpated Parties

Pursuant to the Plan, the following parties shall be Released Parties and shall receive the benefit of the releases provided in the Plan, in addition to the Released Parties specifically enumerated in the Plan.[1] **For the avoidance of doubt, no Releasing Party shall be permitted to assert any Released Claim against any Released Parties after the Plan is confirmed.** If any Holder of a Claim or Interest opts out of the Plan's third-party release provisions pursuant to the opt-out procedures approved by the Court, such Holder shall not be a Releasing Party.

| | ADDITIONAL RELEASED AND EXCULPATED PARTIES |
|---|---|
| 1. | Each individual who is employed by the Debtors on the date the Disclosure Statement Order is entered to the extent that each such employee is not (1) later arrested, indicted, or found liable for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time; (2) a UCC Claims Stipulation Defendant; or (3) listed on the Schedule of Excluded Parties. |

---

[1] Capitalized terms used herein but not defined shall have the meanings given to such terms in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as the same may be amended, modified, revised, or supplemented from time to time, the "Plan").

### Schedule of Excluded Parties

Pursuant to the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* [Docket No. 3319] (as may be amended, modified, revised, or supplemented from time to time, the "**Plan**"), in addition to any other Excluded Parties specifically enumerated in the Plan, the following parties and each of their Affiliates and Related Parties are Excluded Parties as such term is defined therein.[1]

The Excluded Parties shall not receive the protections of the Plan's release, injunction, or exculpation provisions. **For the avoidance of doubt, no Excluded Party shall constitute a Released Party or Exculpated Party in any capacity and all claims against the Excluded Parties that are held by the Debtors or Holders of Claims and Interests are expressly preserved.**

**This Schedule of Excluded Parties may be amended, modified, or supplemented by the Debtors and the Committee at any time prior to the date the Confirmation Order is entered by the Court.**

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 1. | Adam Carver |
| 2. | Akshay Nayak |
| 3. | Alameda Research Ltd. |
| 4. | Alchemy Capital Partners LP |
| 5. | Alexander Christy |
| 6. | Alexander Mashinsky |
| 7. | Aliza Landes |
| 8. | AM Ventures Holding, Inc. |
| 9. | Amber Technologies Limited |
| 10. | Amir Ayalon |
| 11. | Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc. |
| 12. | Anderson Tax |
| 13. | ANV Insurance |
| 14. | Aslihan Denizkurdu |
| 15. | Atlantic Insurance |
| 16. | Ayalon Insurance |
| 17. | BadgerDAO |
| 18. | Bancor |
| 19. | Battlestar Capital, LLC |
| 20. | B-Brick, Inc. |
| 21. | Benjamin Armstrong |

---

[1]    Capitalized terms used herein but not defined shall have the meanings given to such terms in the Plan.

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 22. | Beowulf Energy LLC |
| 23. | Berkley Insurance Company |
| 24. | Beyond Associates LLC |
| 25. | BitBoy Crypto |
| 26. | Bits of Sunshine LLC |
| 27. | BJ Investment Holdings, LLC |
| 28. | Blockchain Access UK Ltd. |
| 29. | Bradley Condit |
| 30. | Chainanlysis Inc. |
| 31. | Circle Internet Financial, LLC |
| 32. | Circle UK Trading Company Limited |
| 33. | Cloudflare, Inc. |
| 34. | Coin Bureau |
| 35. | Core Scientific Inc. |
| 36. | Cosmos Infrastructure LLC |
| 37. | Crum and Forster Specialty Insurance Company |
| 38. | Crypto Lark |
| 39. | CryptoWendyO |
| 40. | Darren Yarwood |
| 41. | DeFiRate |
| 42. | Deloitte & Touche LLP |
| 43. | Deloitte Tax LLP |
| 44. | Dennis Reichelt |
| 45. | Ditto PR |
| 46. | Eddie Moon |
| 47. | Endurance American Insurance Company |
| 48. | European Media Finance LTD |
| 49. | Equities First Holdings, LLC |
| 50. | EZ Blockchain Services, LLC |
| 51. | Fabric Ventures Group Sarl |
| 52. | Falvey Insurance Group |
| 53. | Fireblocks Inc. |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 54. | Four Thirteen LLC |
| 55. | Frank Van Etten |
| 56. | FTX Trading Ltd. |
| 57. | Grant Thornton LLP |
| 58. | Guy Turner |
| 59. | Haines Watts London LLP |
| 60. | Hanoch "Nuke" Goldstein |
| 61. | Harumi Urata-Thompson |
| 62. | HDR Global Trading Limited (t/a BitMEX) |
| 63. | High Throughput Productions, LLC |
| 64. | Hudson Insurance Group |
| 65. | Indian Harbor Insurance Company |
| 66. | Into the Block Corp. |
| 67. | Invest Answers |
| 68. | Iterative OTC, LLC |
| 69. | James Mullarney |
| 70. | Jason Perman |
| 71. | Jason Stone |
| 72. | Jeremie Beaudry |
| 73. | Johannes Treutler |
| 74. | Julie La Point |
| 75. | KeyFi, Inc. |
| 76. | Koala1 LLC |
| 77. | Koala 2 LLC |
| 78. | Koala 3, LLC |
| 79. | Kost Forer Gabbay & Kasierer |
| 80. | KPMG Somekh Chaikin |
| 81. | Kristine Meehan Mashinsky (née Kristine M. Meehan) |
| 82. | Lark Davis |
| 83. | Liquidity Technologies Ltd. (t/a CoinFLEX) |
| 84. | Lloyds of London Republic Vanguard Insurance Company |
| 85. | Luna Squares LLC |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 86. | Mambu Tech B.V. |
| 87. | Markel Insurance |
| 88. | Mawson Infrastructure Group Inc. |
| 89. | Mazars LLP |
| 90. | MF Partners, Ltd. |
| 91. | Michael Alfred |
| 92. | Migdal Insurance Company |
| 93. | MVP Workshop d.o.o. Beograd-Zemun and its shareholders |
| 94. | Nektar ACS Corp. |
| 95. | Nyman Lipson Paul, LLP |
| 96. | Patrick Martin |
| 97. | Peter Graham |
| 98. | Prime Trust LLC |
| 99. | Profluent Trading UK Ltd. |
| 100. | QBE Insurance Company |
| 101. | Realm Insurance Company |
| 102. | Reliz Limited |
| 103. | Rhodium Enterprises, Inc. |
| 104. | Rod Bolger |
| 105. | Rodney Sunada-Wong |
| 106. | Ron Sabo |
| 107. | Roni Cohen-Pavon |
| 108. | Sabre56 Corp. |
| 109. | Shlomi Daniel Leon |
| 110. | StakeHound SA |
| 111. | Starstone Insurance |
| 112. | Subranmaniam Vijay Konduru |
| 113. | Tether International Ltd. |
| 114. | Tether Limited |
| 115. | The Wolf of Bitcoin |
| 116. | Three Arrows Capital Ltd. |
| 117. | Timothy Shedd |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| 118. | Tom McCarthy |
| 119. | Tushar Nadkarni |
| 120. | United States Fire Insurance Company |
| 121. | USAStrong.io |
| 122. | Voyager Digital Holdings, Inc. |
| 123. | Walter Johnson |
| 124. | Wintermute Trading Ltd. |
| 125. | XL Specialty Insurance Company |
| 126. | Yarden Noy |
| 127. | Yaron Shalem |
| 128. | Zachary Wildes |
| 129. | Zen Blockchain Foundation (d/b/a Horizen) |
| 130. | Zurich Insurance Group |
| 131. | All auditors of the Debtors |
| 132. | All third-party public promoters, marketers, and advertisers of the Debtors, including parties with agreements with Celsius concerning payments for referrals. |
| 133. | All Entities identified on the Schedule of Retained Causes of Action or associated with the claims and causes of action preserved on the Schedule of Retained Causes of Action. |
| 134. | Unless otherwise released pursuant to the Plan, all Entities currently party to adversary proceedings in the Debtors' Chapter 11 Cases. |
| 135. | All mediate and intermediate transferees of such Excluded Parties. |
| 136. | All parties with outstanding prepetition litigation against any of the Debtors and/or any party subject to any actual or potential counterclaim by the Debtors. |
| 137. | All Professionals of the Debtors not expressly released under the Plan, including all law firms retained by the Debtors prior to the Petition Date other than (1) Kirkland & Ellis LLP, (2) Akin Gump Strauss Hauer & Feld LLP, (3) White & Case LLP, (4) A.M. Saccullo Legal LLC; and (5) any law firm list on the Debtors' *Statement of Amounts Paid by the Debtors to Ordinary Course Professionals* in these Chapter 11 Cases as of August 13, 2022 [Docket Nos. 1455; 1954; 2557; 3120]. For the avoidance of doubt any such law firms are not "current attorneys" of the Debtors and are not Released Parties under the Plan. |
| 138. | Any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party, *provided* that all individuals who are employed by the Debtors on the date the Disclosure Statement Order is entered and that are not specifically identified as an Excluded Party on this Schedule of Excluded Parties (as such schedule may be amended prior to the date the Confirmation Order is entered) shall be Released and Exculpated except to the extent such employee is later arrested, indicted, or found liable by a court of competent jurisdiction of bad acts and omissions in |

| | SCHEDULE OF EXCLUDED PARTIES |
|---|---|
| | connection with his or her role with the Debtors, in which case any release provided in the Plan shall be null and void and all statutes of limitation shall be tolled during such time; *provided*, *further* that any current or former director, officer, employee, independent contractor, professional, equity holder, contract counterparty, or other Entity associated with the Debtors that is not specifically identified as a Released Party who subsequently enters into an agreement that includes a provision that they shall be identified as a Released Party shall be a Released Party. |
| 139. | Any Released Party that is later arrested, indicted, or found liable by a court of competent jurisdiction for bad acts or omissions in connection with his or her role with the Debtors, in which case any release provided by the Plan shall be null and void with respect to such employee and all statutes of limitations shall be tolled during such time. |
| 140. | Account Holder Avoidance Actions against Released Parties shall not be released unless released pursuant to the Account Holder Avoidance Action Settlement. |
| 141. | All Avoidance Actions against Entities that are not Account Holders. |
| 142. | All Affiliates and Related Parties of Excluded Parties |

## Exhibit 4

**Cover Letter**



**August [●], 2023**

<u>Via Electronic Mail</u>

**<u>RE</u>:    <u>In re Celsius Network, LLC, *et al.*,</u>
<u>Chapter 11 Case No. 22-10964 (MG) (Jointly Administered)</u>**

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

You have received this letter and the enclosed materials because you are entitled to vote on the *Joint Chapter 11 Plan of Reorganization of Celsius Network, LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "<u>Plan</u>").[1]

Celsius Network, LLC and its debtor affiliates (collectively, the "<u>Debtors</u>")[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") on July 13, 2022.

On August [●], 2023, the Bankruptcy Court entered an order (the "<u>Disclosure Statement Order</u>"): (a) authorizing the Debtors to solicit acceptances for the Plan; (b) approving the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network, LLC and its Debtor Affiliates* [Docket No. 3332] (the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan, and for filing objections to the Plan.

> YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings as set forth in the Plan or the Disclosure Statement (as defined herein).

[2]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of the Debtors' service address is: 750 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

In addition to this cover letter, the enclosed materials comprise your Solicitation Packages, and were approved by the Bankruptcy Court for distribution to holders of Claims in connection with the solicitation of votes to accept the Plan.

The Solicitation Packages consist of the following:

    a.    this Cover Letter;

    b.    the Committee Letter;

    c.    a copy of the Solicitation and Voting Procedures;

    d.    the applicable form of Ballot, substantially in the form attached as Exhibit 3A, Exhibit 3B, Exhibit 3C, Exhibit 3D, and Exhibit 3E to the Disclosure Statement Order, as applicable;

    e.    the Disclosure Statement (and exhibits thereto, including the Plan);

    f.    the Disclosure Statement Order (excluding exhibits);

    g.    the Confirmation Hearing Notice;

    h.    the Notice of Claims Settlement; and

    i.    any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

The Bankruptcy Court has approved the filing of the Plan and the solicitation of votes to accept the Plan. The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims, and all other parties in interest. Moreover, the Debtors believe that any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions on account of Claims asserted in the Chapter 11 Cases.

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**

**THE VOTING DEADLINE IS 4:00 P.M. PREVAILING EASTERN TIME ON SEPTEMBER 22, 2023.**

---

The materials in the Solicitation Packages are intended to be self-explanatory. If you should have any questions, however, please feel free to contact Stretto, the notice and claims agent retained by the Debtors in the Chapter 11 Cases ("Stretto"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602  You may also obtain copies of any pleadings filed in the Chapter 11 Cases on the Claims, Noticing, and Solicitation Agent's case website at: https://cases.stretto.com/Celsius. Please be advised that Stretto is authorized to answer questions about,

3

and provide additional copies of, solicitation materials, but may *__not__* advise you as to whether you should vote to accept or reject the Plan or provide legal advice.

Dated:  August [●], 2023

CELSIUS NETWORK, LLC
on behalf of itself and all other Debtors

_____

Christopher Ferraro

Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer Celsius Network, LLC

**Exhibit 5**

**Committee Letter**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**of Celsius Network LLC, *et al.***

Case No. 22-10964 (MG)
In the United States Bankruptcy Court
for the Southern District of New York

To:     Account Holders and General Unsecured Creditors of Celsius Network LLC, *et al.*

## I.    Introduction

The Official Committee of Unsecured Creditors (the "**Committee**") was appointed by the Office of the United States Trustee to represent the interests of all account holders and general unsecured creditors in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of Celsius Network LLC and its affiliated debtors (collectively, the "**Debtors**").  The Committee is comprised of seven individuals who transferred cryptocurrency to the Debtors to participate in the Earn, Borrow, and Custody programs.[1]  Each Committee member has devoted substantial time to these Chapter 11 Cases with the goal of maximizing the value of the Debtors' estates and fairly distributing that value among all account holders and other creditors.

This letter concerns the Debtors' plan of reorganization (the "**Plan**"),[2] which reflects substantial input from the Committee.  The Plan proposes to distribute Bitcoin, Ethereum, and shares in a new cryptocurrency company to creditors of the Debtors.  It also reserves claims and causes of action that the Debtors have against Alex Mashinsky, other prepetition officers and other employees of the Debtors, and certain third parties, to be pursued by a fiduciary with the proceeds also to be distributed to creditors.

If you are entitled to vote on the Plan, you will receive a ballot along with this letter, which will contain detailed instructions for how to complete and submit your vote.  The deadline to vote on the Plan is **September 22, 2023**.  The hearing to confirm the Plan is currently scheduled to begin on **October 2, 2023**.  If the Plan is confirmed on the currently proposed schedule, the Committee anticipates that distributions to creditors will commence before the end of 2023.

**The Committee recommends that all account holders and general unsecured creditors:**

- **Vote to ACCEPT the Plan (Item 9 on your Account Holder Ballot),**

- **Do NOT opt out of the settlement of the Committee's class proof of claim asserting fraud, misrepresentation, and other statutory causes of action against the Debtors (Item 8 on your Account Holder Ballot), and**

- **Contribute any personal claims or causes of action on account of the Debtors to be prosecuted by the Litigation Administrator for the benefit of all creditors (Item 11 on your Account Holder Ballot).**

---

[1]    The members of the Committee are: (1) Thomas DiFiore, (2) Scott Duffy on behalf of ICB Solutions, (3) Caroline Warren, (4) Christopher Coco, (5) Andrew Yoon, (6) Mark Robison, and (7) Keith Noyes.

[2]    Where context requires capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

## II.    Why You Should Vote to Accept the Plan

Since the Committee was appointed, it has worked to stabilize the Debtors' operations, determine the relative rights of key constituencies to the Debtors' assets (including account holders with balances in Earn, Custody, and Withhold accounts and loans from the Borrow program), and develop a plan to maximize the value of the Debtors' assets and fairly distribute those assets to the Debtors' creditors according to their legal entitlements.

The Plan is the culmination of those efforts. It would distribute the value of the Debtors' estates primarily between Earn and Borrow account holders and return assets to Custody account holders based on settlements reached with each group, including a settlement between Earn and Borrow account holders that was reached after a three-day mediation overseen by the Honorable Michael Wiles, a United States Bankruptcy Judge for the Southern District of New York, which is described in greater detail below.

Under the Plan, the Debtors will distribute approximately $2 billion worth of Bitcoin and Ethereum to creditors. The Debtors will also distribute equity in a new company ("**NewCo**") to creditors. NewCo will operate and further build out the Debtors' Bitcoin mining operations, stake Ethereum, monetize the Debtors' other illiquid assets, and develop new, value-accretive, regulatory-compliant business opportunities. NewCo will be managed by operators with proven track records building cryptocurrency companies—including Steven Kokinos, US Bitcoin Corporation, Arrington Capital, Proof Group Capital Management, and Ravi Kaza (together, the "**Fahrenheit Group**"). The Committee extensively vetted the Fahrenheit Group through a competitive auction process and believes that they are well-equipped to deliver value to creditors. NewCo will emerge from chapter 11 with no funded debt and will be regulatorily compliant. It will be the first publicly-listed company with significant balance sheet exposure to both Bitcoin and Ethereum. It will be well-capitalized to seize on new opportunities, with an experienced management team focused on prudent risk management to protect NewCo and its shareholders from changes in market conditions.

The Fahrenheit Group intends to list the common stock of NewCo on NASDAQ on or shortly after the occurrence of the Effective Date. The Committee believes that listing on NASDAQ will provide creditors who wish to sell their shares in NewCo with the ability to do so at the best possible price. Those that do not wish to sell and would rather enjoy the benefits of owning a unique cryptocurrency company will have the opportunity to benefit from that potential upside in a highly liquid market.

Since the beginning of these Chapter 11 Cases, the cryptocurrency industry has changed significantly, including due to the bankruptcy of FTX and other cryptocurrency companies, the successful implementation of Ethereum's Shanghai upgrade, and certain litigation filed against several large cryptocurrency companies. The Committee has witnessed firsthand as these changes have affected the chapter 11 cases of, among others, Voyager Digital Holdings, Inc and its affiliate debtors. To address that potential risk, the Plan includes a backup option where the Debtors and the Committee may toggle to an orderly wind down if they determine that such a switch is in the best interests of the Debtors' estates due to complications or delays in implementing the NewCo transaction. The orderly wind down currently contemplates providing recoveries to creditors in three ways: (1) creating a standalone Bitcoin mining company and distributing the equity of that business to creditors; (2) distributing available liquid cryptocurrency; and (3) creating a trust vehicle to monetize the Debtors' remaining illiquid assets and distribute the proceeds of such assets to creditors over time. The Debtors estimate that the value distributed to creditors in an orderly wind down will be materially less than under the NewCo transaction, even though there may be a higher initial liquid cryptocurrency distribution. The costs and delays of transitioning to an orderly wind down add risk, and the mining company equity distributed in a wind down lacks the potential upside of NewCo equity due to, among other things, (1) uncertainty over how the resulting mining company will be managed, (2) a significantly more limited capitalization compared to NewCo, (3) no exposure to

Ethereum or a staking business, and (4) none of the strategic arrangements offered by the Fahrenheit Group (which arrangements offer cost certainty, strategic partnerships, and best-in-class operating capabilities). Additionally, unlike the NewCo transaction, which allows creditors to monetize the value of their interest in the Debtors' illiquid assets as soon as possible through a sale of the equity in NewCo, the Debtors expect that the orderly wind down will take up to five years to monetize and distribute the Debtors' illiquid assets.

*Importantly, a vote to accept the Plan is a vote to accept both the NewCo transaction and the orderly wind down. You may not vote to accept only one of the restructuring alternatives under the Plan and not the other. And a vote to reject is not a vote in favor of the orderly wind down, but rather a vote against both Plan options.*

If the Plan is confirmed and the NewCo transaction is consummated, the Committee believes that account holders and general unsecured creditors will receive greater recoveries than under either an orderly wind down or a liquidation under chapter 7 of the Bankruptcy Code. The estimated recoveries to all account holders and general unsecured creditors under the Plan's various options are set forth in the following table:

| Claim Type | Class | Recovery Under Plan | | Liquidation Analysis |
|---|---|---|---|---|
| | | NewCo | Orderly Wind Down | |
| Retail Borrower Deposit Claims | Class 2 | 85.6% | 83.0% | 47.4% |
| Convenience Claims | Class 4 | 70.0% | 70.0% | N/A |
| General Earn Claims | Class 5 | 67.0% | 61.2% | 47.4% |
| Withheld Claims | Class 7 | 72.0% | 67.1% | 47.4% |
| Unsecured Loan Claims | Class 8 | 67.0% | 61.2% | 47.4% |
| General Unsecured Claims | Class 9 | 67.0% | 61.2% | 37.5% |

Those estimated recoveries do not account for two additional sources of value that may be available under the NewCo transaction: (1) any increase in the equity value of NewCo represented in the value of NewCo common stock, and (2) recoveries on account of litigation claims that will be pursued by a fiduciary for the benefit of account holders and other unsecured creditors. As a result of these additional sources of value, it is possible that account holders and general unsecured creditors may recover more on their claims over time.

The Plan also provides eligible account holders *that vote to accept the Plan* with the choice to elect to receive more liquid cryptocurrency and less NewCo equity, or vice versa. Those electing to receive more liquid cryptocurrency will forgo all or a portion of their NewCo equity distribution at a 30% discount to the liquid cryptocurrency they are receiving. That means that if you elect to receive liquid cryptocurrency, you could receive 30% less value on that portion of your recovery than if you had kept your allotment of NewCo equity. On the other hand, those electing to receive more NewCo equity will receive that equity at a 30% premium to the liquid cryptocurrency amount that is being forfeited. That means that if you elect to receive more NewCo equity, you could receive 30% more value on that portion of your recovery than if you had kept your allotment of liquid cryptocurrency. This trade is referred to in the Plan as the "Unsecured Claim Distribution Mix Election" and will only be satisfied to the extent other creditors elect to alter their distributions.

The Debtors filed for chapter 11 protection over a year ago. Their business was in complete disarray and mired with allegations of misconduct. The Plan is the product of a significant amount of hard work to reorganize the business under difficult circumstances. It benefits from a competitive auction process that resulted in the selection of Fahrenheit to manage the new business. It presents the quickest way to return the maximum value of cryptocurrency and equity to creditors. And the quicker those assets are distributed to creditors, the sooner they can benefit from any future appreciation. The alternatives to

the Plan are uncertain and would likely result in lower recoveries for creditors with those recoveries being distributed much later than contemplated under the Plan.

The Committee believes that the Plan, and specifically the NewCo transaction, provides the highest and best value for account holders and general unsecured creditors when compared to all other available alternatives and encourage you to vote to accept the Plan. The remainder of this letter addresses two key settlements reached by the Committee and the potential to contribute individual claims to the Litigation Administrator to be appointed under the Plan.

### III.    The Settlement of the Committee's Class Action Claim

Celsius promised Earn account holders that they could withdraw an in-kind amount of cryptocurrency equal to their account balance at any time. Likewise, Celsius promised customers that took loans from the Borrow program that it would return the cryptocurrency associated with those loans to their Celsius account within 10 days of full repayment. Account holders are not receiving what Celsius promised. But that was not the only promise that Celsius broke. As the independent Examiner found, "the business model that Celsius advertised and sold to its customers was not the business that Celsius actually operated."[3] Celsius' prepetition management lied to all customers. The Committee sought and received authority from the Bankruptcy Court to file a class action claim on behalf of all account holders, asserting claims of fraud, misrepresentation, and violation of various consumer protection statutes against each Debtor entity.

As of the date of this letter, creditors have filed more than 30,000 claims totaling over $78 billion against the Debtors. Many of those claims seek damages for fraud, misrepresentation, and other causes of action that are similar to the claims brought by the Committee on behalf of all account holders in its class claim. Unless those claims are resolved prior to the Effective Date, the Debtors will be required to hold back a significant amount of cryptocurrency and stock that otherwise could have been distributed on the Effective Date to account for creditors holding disputed claims that may be determined to be valid. The resolution of the over 30,000 claims would be expensive and time-consuming, resulting in less value being returned to creditors over a longer time. Moreover, those creditors that can afford to wait and pay attorneys to establish their claims may receive a higher recovery than those creditors who cannot.

To ensure the fair and equitable treatment of all account holders and that those account holders receive as much value as possible on the Effective Date of the Plan, the Committee has agreed to settle its class claim with the Debtors in exchange for a 5% increase to the scheduled amount of all Account Holder Claims (other than Custody Claims). Any account holder can opt out of the settlement and elect to pursue their own claim against the Debtors by electing to opt out in Item 8 of their ballot. An account holder that opts out of the settlement (1) will not receive the 5% increase to their scheduled claim amount, (2) will have to prove their claim and damages on account of that claim, and (3) will not receive a distribution from the Debtors until their disputed claim is resolved. ***Any account holder who does not timely opt out of the settlement will not have any right to pursue any filed Proof of Claim against the Debtors, which will be expunged by the settlement.***

An Election Form to opt out of the settlement is included in this Solicitation Package. **The Committee urges account holders to NOT opt out of the settlement.**

### IV.    The Treatment of Earn and Borrow Claims

Following the completion of the auction where the Fahrenheit Group was selected to sponsor the Plan, the Committee proposed a mediation before the Honorable Michael Wiles regarding the relative

---

[3]    *See Final Report of Shoba Pillay, Examiner* [Docket No. 1956] at 3.

treatment of the classes of Borrow and Earn creditors. That mediation occurred between July 17 and 19, 2023, and was attended by representatives of the Debtors, the Committee, the Ad Hoc Group of Borrowers, the Ad Hoc Group of Earn Account Holders, Ignat Tuganov (a proposed class claimant), and certain *pro se* creditors. The mediation was a success and all parties agreed to a settlement of all existing disputes with respect to the relative entitlements of creditors with Earn and Borrow accounts. Under that settlement:

(1) All holders of Account Holder Claims (other than Custody Claims) that do not opt out of the settlement of the Committee's class action claim will receive a 5% increase to their scheduled claim. This increase will result in a proportionally larger "unsecured" claim for Retail Deposit Claims as compared to Earn creditors, as it is applied to the total Retail Deposit Claim amount and the principal amount of the loan owed by that creditor is fixed.

(2) Borrowers are provided with the option to pay back all or a portion of their loan and receive an equal amount of either Bitcoin or Ethereum, at their choice. That option could provide tax benefits to electing Borrowers on that portion of their Retail Borrower Deposit Claim. To be clear, **no Borrower is required to pay back their loan under the Plan**. To the extent a Borrower does not pay back their loan, the amount of that loan will be deducted from their Retail Borrow Deposit Claim amount (sometimes referred to as "set off").

(3) Those Holders of Retail Borrow Deposit Claims who elect to receive more liquid cryptocurrency will have priority to have that election satisfied versus General Earn Creditors.

(4) The Debtors will waive any obligation to pay any amount on account of interest owed on account of the loan for the duration of the Chapter 11 Cases.

(5) The Ad Hoc Group of Borrowers and the Ad Hoc Group of Earn Account Holders will each appoint one representative to the Litigation Oversight Committee, subject to the consent of the Committee.

The settlement was the product of extensive good faith negotiations between the parties, is fully supported by the Committee, the steering committee of the Ad Hoc Group of Borrowers, and the Ad Hoc Group of Earn Creditors, and fairly resolves all disputes with respect to the relative entitlements of Earn and Borrow account holders.

## V.    Why You Should Opt-In to Contributing Direct Claims

If the Plan is confirmed, all litigation claims that the Debtors hold against third parties for damages that are not otherwise released under the Plan will be transferred to entities that the Plan refers to as the "Post-Effective Date Debtors" and will be prosecuted and resolved by a Litigation Administrator. These claims include those against Alex Mashinsky and other individuals in the Debtors' prepetition management team that were asserted in the Committee's draft complaint. That draft complaint can be accessed at the following https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903312380000000001.pdf. The Committee, not the Debtors, will select the individual that will serve as the Litigation Administrator. In addition, the Litigation Administrator will be supervised by a Litigation Oversight Committee composed of five to seven account holders of the Debtors, including a representative appointed by each of the Ad Hoc Group of Earn Account Holders and the Ad Hoc Group of Borrowers. Recoveries on the Debtors' litigation claims will be distributed to creditors entitled to receive litigation proceeds under the Plan, including all Account Holder Claims (other than Custody Claims).

In addition to the Debtors' litigation claims, account holders and other creditors may personally hold litigation claims against non-Debtor third parties for losses related to the Debtors. If the Plan is confirmed, creditors will still be able to pursue those claims. But, it will likely be difficult, time-consuming, and expensive for individual creditors to sue third parties for damages. There may also be advantages for the Litigation Administrator to bring a claim on behalf of a creditor, as opposed to the Debtors. Accordingly, the Plan includes a mechanism that allows creditors to contribute any direct litigation claims they own to the Post-Effective Date Debtors. Those claims can then be prosecuted and resolved by the Litigation Administrator, in its discretion. The contribution of those claims will allow the Litigation Administrator to pursue claims against third parties in a coordinated process that may obtain higher damages than if the same claims were brought in individual actions.

If you contribute your litigation claims, you are giving the Litigation Administrator the right to pursue those litigation claims on your behalf. To be clear, if the Litigation Administrator prevails on the litigation claims that you contribute, the recoveries on those claims will be distributed among **all** creditors entitled to receive litigation proceeds, **and will not be distributed solely to you**. However, your recoveries from the Litigation Administrator may be higher than if you pursued litigation individually, including because of the high costs associated with pursuing individual litigation.

Accordingly, the Committee **encourages** you to contribute any direct claims you have against third parties related to the Debtors for prosecution by the Litigation Administrator. If you are entitled to vote on the Plan, your ballot will include a section permitting you to opt-in to contribute these litigation claims.

*** 

Before casting your vote, the Committee recommends that you read the enclosed Disclosure Statement to understand in greater detail how your claims against the Debtors will be treated under the Plan. You should review the Disclosure Statement's Executive Summary closely, which provides a comprehensive overview of the Plan and expected recoveries for creditors. The Disclosure Statement also contains answers to commonly asked questions that may be helpful to understand the Plan.

The Committee believes that the Plan, compared to all other alternatives, provides the highest and best value for account holders and general unsecured creditors. The Plan incorporates the best restructuring transactions available to the Debtors at this time, distributes as much value from the Debtors' assets to creditors as is reasonably possible, and will provide recoveries to creditors far faster than any other alternative.

**Accordingly, the Committee supports confirmation of the Plan and strongly encourages you to VOTE TO ACCEPT THE PLAN pursuant to the instructions on your ballot**.


Sincerely,

*The Official Committee of Unsecured Creditors*

Scott Duffy, Thomas DiFiore, Carolyn Warren, Andrew Yoon, Keith Noyes, Christopher Coco, and Mark Robinson

**<u>Exhibit 6</u>**

**Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF HEARING TO CONSIDER
### CONFIRMATION OF THE DEBTORS' CHAPTER 11
### PLAN AND RELATED VOTING AND OBJECTION DEADLINES

    **PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

    **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates:  Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "<u>eCourtAppearance</u>") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

**PLEASE TAKE FURTHER NOTICE THAT** on or before [●], 2023, the Debtors published notice of the Confirmation Hearing in *The New York Times* (National Edition) and *The New York Times* (International Edition) and on *CoinDesk* (CoinDesk.com).

---

**<u>Please be advised</u>: The Confirmation Hearing may be continued from time to time by the Court or the Debtors <u>without further notice</u> other than by such adjournment being announced in open court, by Agenda Filed with the Court, and/or by a Notice of Adjournment Filed with the Court and served on all parties entitled to notice.**

---

## <u>CRITICAL INFORMATION REGARDING VOTING ON THE PLAN</u>

**Voting Record Date**. The voting record date is **<u>July 24, 2023</u>** (the "<u>Voting Record Date</u>"), which is the date for determining which holders of Class 2 Retail Borrower Deposit Claims, Class 4 Convenience Claims, Class 5 General Earn Claims, Class 6A General Custody Claims, Class 7 Withhold Claims, Class 8 Unsecured Loan Claims, Class 9 General Unsecured Claims, Class 10 State Regulatory Claims, and Class 14 Series B Preferred Interests are entitled to vote on the Plan.

**Voting Deadline**. The deadline for voting on the Plan is on **<u>September 22, 2023, at 4:00 p.m., prevailing Eastern Time</u>** (the "<u>Voting Deadline</u>"). If you received a Solicitation Package, including a Ballot and intend to vote on the Plan, you **<u>must</u>**: (a) follow the instructions carefully; (b) complete **<u>all</u>** of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **<u>actually</u> <u>received</u>** by Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "<u>Claims, Noticing, and Solicitation Agent</u>") on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote**.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

**Article VIII** of the Plan contains Release, Exculpation, and Injunction provisions, and **Article VIII.D contains a Third-Party Release**. The Third-Party Release provision, along with the Exculpation and Injunction provisions, are appended to this notice. You are advised to review and consider the Plan carefully because your rights might be affected thereunder.

**Plan Objection Deadline**. The deadline for filing objections to the Plan is **September 22, 2023 at 4:00 p.m., prevailing Eastern Time** (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received the Solicitation Package electronically), please feel free to contact the Claims, Noticing, and Solicitation Agent, by: (a) calling the Debtors' restructuring hotline at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov. Please be advised that the Claims, Noticing, and Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Filing the Plan Supplement**.  The Debtors will file the Plan Supplement (as defined in the Plan) on or before **September 8, 2023** and will serve notice on all known Holders of Claims and Interests, the U.S. Trustee, and the 2002 List (regardless of whether such parties are entitled to vote on the Plan), which will: (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

---

**Binding Nature of the Plan**:

**If confirmed, the Plan shall bind all holders of Claims and Interests to the maximum extent permitted by applicable law, whether or not such holder will receive or retain any property or interest in property under the Plan, has filed a Proof of Claim in these chapter 11 cases, failed to vote to accept or reject the Plan, or voted to reject the Plan.**

---

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE

Article VIII.D of the Plan contains the following Third-Party Release:

**Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, their Estates, and the Post-Effective Date Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise that the Debtors, their Estates, or the Post-Effective Date Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, amendment, or rescission of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in-or out-of-court restructuring efforts, intercompany transactions, the Pause, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Disclosure Statement, the New Organizational Documents, the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), the Plan (including, for the avoidance of doubt, the Plan Supplement), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common Stock or Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property under the Plan (including the NewCo Assets) or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or**

**before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, or (c) any Avoidance Action not released pursuant to the Account Holder Avoidance Action Settlement.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Post-Effective Date Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.**

Definitions Related to the Third-Party Release:

a.  *"Released Parties"* means, collectively: (a) the Debtors; (b) the Special Committee and each of its members; (c) the Post-Effective Date Debtors; (d) the Distribution Agent; (e) the Plan Administrator; (f) the Committee and each of its members; (g) any Litigation Administrator(s); (h) the Plan Sponsor and each of its members; (i) NewCo and its directors and officers; (j) the Retail Borrower Ad Hoc Group and each of its members; (k) the Earn Ad Hoc Group and each of its members, (l) with respect to each of the foregoing, each such Entity's current financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (m) the Class Claim Representatives; (n) the Initial Series B Preferred Holders and their Related Parties; (o) the former directors and board observers of the Debtors designated by the Initial Series B Preferred Holders and their Related Parties; (p) Christopher Ferraro; (q) the BRIC Parties; (r) any other Person or Entity identified in the Schedule of Released and Exculpated Parties; and (s) any Releasing Party.  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, including this definition of Released Parties, no Holder of a Claim or Interest that would otherwise constitute a Released Party that opts out of, or objects to, the releases contained in this Plan, nor any Excluded Party, shall constitute a "Released Party" in any capacity hereunder; *provided*, *further*, that, notwithstanding anything to the contrary in this Plan or the Plan Supplement, Avoidance Actions, including Account Holder Avoidance Actions, against Released Parties shall not be released unless (y) released pursuant to the Account Holder Avoidance Action Settlement or (z) such Avoidance Action concerns wages, salaries, salary-equivalents, or other compensation received by directors, officers, managers, or employees of the Debtors; *provided*, *further*, that Causes of Action against Released Parties listed on the Schedule of Retained Causes of Action shall not be released against any party unless specifically provided therein.

b.  "*Releasing Parties*" means, collectively: (a) each Released Party; (b) all Holders of Claims that are presumed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (c) all Holders of Claims or Interests that vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to reject the Plan and who affirmatively opt into the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) each Related Party of each Entity in clause (a) through clause (f).

c.  "*Excluded Party*" means of the following:  (a) Alexander Mashinsky; (b) Shlomi Daniel Leon; (c) Roni Cohen Pavon; (d) the other UCC Claims Stipulation Defendants; (e) any current or former director, officer, employee, independent contractor, professional, equity holder, or other Entity associated with the Debtors that is not specifically identified as a Released Party in this Plan or the Schedule of Released and Exculpated Parties, except current and former managing partners, officers, directors, and employees of the Initial Consenting Series B Preferred Holders, WestCap Management LLC, and Caisse de dépôt et placement du Québec, CDPQ Placements privés Québec Inc., CDPQ Placements privés Inc., and CDPQ U.S. Inc.; (f) any party on the Schedule of Excluded Parties; and (g) with respect to each of the foregoing, each Related Party of such Person or Entity that is not specifically identified in this Plan or the Schedule of Released and Exculpated Parties as a Released Party.  Notwithstanding anything to the contrary in this Plan, no Excluded Party shall constitute a Released Party or an Exculpated Party in any capacity under the plan.

Article VIII.E of the Plan contains the following Exculpation provisions:

**Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim or Cause of Action related to, any act or omission in connection with, relating to, or arising out of the formulation, preparation, dissemination, negotiation, entry into, termination of, or filing of, as applicable, the Chapter 11 Cases, the Plan Sponsor Agreement, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, the New Organizational Documents, the NewCo Transaction (if applicable), the Orderly Wind Down and Backup MiningCo transaction (if applicable), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Chapter 11 Cases (including the trading and sales of Cryptocurrencies and Tokens in connection with the Chapter 11 Cases), the Plan Sponsor Agreement, the PSA Definitive Documents, the Backup Plan Sponsor Agreement, the Definitive Documents (as defined in the Backup Plan Sponsor Agreement), the Plan, the Disclosure Statement, the New Organizational Documents, the NewCo Transaction, the Orderly Wind Down and Backup MiningCo transaction (if applicable), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the NewCo Common**

**Stock or the Backup MiningCo Common Stock, as applicable) pursuant to the Plan, or the distribution of property, Cryptocurrency, or Tokens under the Plan (including the NewCo Assets) or any other related agreement or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (a) any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action or against an Excluded Party, or (c) any Avoidance Action not released hereunder, including pursuant to the Account Holder Avoidance Action Settlement.**

**The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**Notwithstanding anything contained herein to the contrary, the foregoing exculpation does not exculpate any Excluded Party.**

Article VIII.F of the Plan contains the following Injunction provisions:

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or**

with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.  Further, to the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any Causes of Action released pursuant to this Plan, including the Causes of Action released or exculpated in this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this <u>Article VIII.F</u>.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to <u>Article VIII.C</u>, <u>Article VIII.D</u>, or <u>Article VIII.E</u> hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

## Exhibit 7

**Plan Supplement Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Court on September 8, 2023.  The Plan Supplement includes the following materials in connection with confirmation (each as defined in the Plan):

(a) the Management Agreement;

(b) the New Organizational Documents;

(c) the identities of the members of the New Board;

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]  Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

(d) the Schedule of Rejected Executory Contracts and Unexpired Leases;

(e) the Schedule of Assumed Executory Contracts and Unexpired Leases;

(f) the Schedule of Released and Exculpated Parties;

(g) the Schedule of Retained Causes of Action;

(h) the Schedule of Additional Recovery Causes of Action;

(i) the Schedule of Equitably Subordinated Claims;

(j) the Schedule of Excluded Parties;

(k) the Transaction Steps Memorandum;

(l) the Litigation Administrator Agreement(s);

(m) the identity of the Litigation Administrator(s);

(n) the identity and proposed compensation (if known) of the members of the Litigation Oversight Committee;

(o) the US Bitcoin Agreements;

(p) the Proof Group IP License (if applicable);

(q) the Plan Sponsor Contribution Agreement;

(r) the Custody Provider Agreements;

(s) the Employee Transition Services Agreement;

(t) the Plan Administrator Agreement;

(u) the Plan Administrator Budget;

(v) the Emergence Incentive Plan; and

(w) the ADR Procedures.
.
**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m.

(prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "<u>eCourtAppearance</u>") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to confirmation of the Plan is **<u>September 22, 2023 at 4:00 p.m.</u>** prevailing Eastern Time (the "<u>Plan Objection Deadline</u>"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **<u>September 22, 2023 at 4:00 p.m.</u>** prevailing Eastern Time. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the Claims, Noticing, and Solicitation Agent retained by the Debtors in these chapter 11 cases (the "<u>Claims, Noticing, and Solicitation Agent</u>"), by: (a) calling the Debtors' restructuring hotline at (855) 423-1530 (Toll Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius -

Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

New York, New York
Dated: [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit 8**

**Notice of Rejection of Executory Contracts and Unexpired Leases**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO BE REJECTED BY THE DEBTORS PURSUANT TO THE
PLAN AND (II) RELATED PROCEDURES IN CONNECTION THEREWITH**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE
> YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY
> TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON <u>SCHEDULE A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") entered an order [Docket No. [●]] (the "<u>Disclosure Statement Order</u>") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "<u>Plan</u>"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"), and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

(d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Schedule of Rejected Executory Contracts and Unexpired Leases* with the Court as part of the Plan Supplement on September 8, 2023 as contemplated under the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Plan, on the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, including the Employee Transition Plan, all Executory Contracts and Unexpired Leases of the Debtors, including any employee benefit plans, severance plans, or other Executory Contracts under which employee obligations arise, shall be deemed rejected by the Debtors or Post-Effective Date Debtors, as applicable, including, for the avoidance of doubt, the contracts listed on the *Schedule of Rejected Executory Contracts and Unexpired Leases*, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract and Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is listed on the *Schedule of Assumed Executory Contracts and Unexpired Leases*; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed by the Debtors and assigned to another third party, as applicable, in connection with the NewCo Transaction or Orderly Wind Down; or (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan. The *Schedule of Rejected Executory Contracts and Unexpired Leases* can also be viewed on the Debtors' restructuring website, https://cases.stretto.com/Celsius/. The Debtors' determination to reject the Unexpired Leases and Executory Contracts listed on **Schedule A** hereto is subject to revision.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

---

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE REJECTED PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[3]**

---

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the *Schedule of Rejected Executory Contracts and Unexpired Leases*, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease, that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, have any liability thereunder, or that such Executory Contracts or Unexpired Leases are necessarily a binding and enforceable agreement. Further, the Debtors expressly reserve the right to: (a) remove any Executory Contracts or Unexpired Leases from the *Schedule of Rejected Executory Contracts and*

**PLEASE TAKE FURTHER NOTICE THAT** all proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within **30 days** after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time shall not be enforceable against the Debtors, the Post-Effective Date Debtors, their Estates, their property, or NewCo without the need for any objection by the Debtors, the Post-Effective Date Debtors or NewCo or further notice to, or action, order, or approval of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to confirmation of the Plan ("Plan Objection") is **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before the Plan Objection Deadline. For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

**PLEASE TAKE FURTHER NOTICE THAT** any Plan Objection related to the rejection of an Executory Contract or Unexpired Lease identified on the *Schedule of Rejected Executory Contracts and Unexpired Leases* and/or related rejection damages proposed in connection with the Plan that remain unresolved as of the commencement of the Confirmation Hearing shall be heard at the Confirmation Hearing or such other date as fixed by the Court.

**PLEASE TAKE FURTHER NOTICE THAT**, notwithstanding anything herein, the mere listing of any Executory Contract or Unexpired Lease on the *Schedule of Rejected Executory Contracts and Unexpired Leases* does not require or guarantee that such Executory Contract or Unexpired Lease will be rejected by the Debtors, and all rights of the Debtors, the Post-Effective Date Debtors, and NewCo with respect to such Executory Contract or Unexpired Lease are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume or assume and assign each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors, Post-Effective Date Debtors, and/or NewCo, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE THAT**, nothing herein (i) alters in any way the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

---

*Unexpired Leases* and assume or assume and assign such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until and including 45 days after the Effective Date; and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

---

> **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS, NOTICING, AND SOLICITATION AGENT.**

---

New York, New York
Dated: [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick nash@kirkland.com
                  ross kwasteniet@kirkland.com
                  chris.koenig@kirkland.com
                  dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Schedule A

**Schedule of Rejected Executory Contracts and Unexpired Leases**

| Debtor Obligor | Counterparty Name | Description of Contract |
|---|---|---|
|  |  |  |
|  |  |  |

**<u>Exhibit 9</u>**

**Notice of Assumption of Executory Contracts and Unexpired Leases**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE
POTENTIALLY ASSUMED AND ASSIGNED BY THE DEBTORS PURSUANT TO THE PLAN,
(II) CURE AMOUNTS, IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE
> YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY
> TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON <u>SCHEDULE A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE THAT** on August [●], 2023, the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") entered an order [Docket No. [●]] (the "<u>Disclosure Statement Order</u>") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>")[2] for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "<u>Plan</u>"), (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"), and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Schedule of Assumed Executory Contracts and Unexpired Leases* with the Court as part of the Plan Supplement on September 8, 2023 as contemplated under the Plan.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Plan, the Executory Contracts and Unexpired Leases listed on the *Schedule of Assumed Executory Contracts and Unexpired Leases* will be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the NewCo Transaction or Orderly Wind Down, on or following the Effective Date of the Plan.[3] The *Schedule of Assumed Executory Contracts and Unexpired Leases* can also be viewed on the Debtors' restructuring website, https://cases.stretto.com/Celsius/. The Debtors' determination to assume or assume and assign the Unexpired Leases and Executory Contracts listed on **Schedule A** hereto is subject to revision.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 2, 2023 at 2:00 p.m.** prevailing Eastern Time, or such other time as the Court determines. Thereafter, to the extent additional time is needed, the Confirmation Hearing may continue on the following dates: Tuesday, October 3, 2023, through Friday, October 6, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 16, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 17, 2023, through Friday, October 20, 2023, at 9:00 a.m. (prevailing Eastern Time); Monday, October 23, 2023, at 2:00 p.m. (prevailing Eastern Time); Tuesday, October 24, 2023, through Wednesday, October 25, 2023, at 9:00 a.m. (prevailing Eastern Time); Thursday, October 26, 2023, at 1:00 p.m. (prevailing Eastern Time); and Friday, October 27, 2023, at 9:00 a.m. (prevailing Eastern Time). The Confirmation Hearing will take place in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Confirmation Hearing in person may appear before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Courtroom 523 New York, New York 10004. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Confirmation Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Confirmation Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Confirmation Hearing (*i.e.*, on September 29, 2023) and each business day before the additional Confirmation Hearing dates**.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to an Executory Contract or Unexpired Lease that will be assumed or assumed and assigned pursuant to the Plan. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the *Schedule of Assumed Executory Contracts and Unexpired Leases*.

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in the table on **Schedule A** attached hereto (the "Cure Costs"). Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

---

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the *Schedule of Assumed Executory Contracts and Unexpired Leases*, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease capable of assumption, that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, have any liability thereunder, or that such Executory Contracts or Unexpired Leases are necessarily a binding and enforceable agreement. Further, the Debtors expressly reserve the right to: (a) remove any Executory Contracts or Unexpired Leases from the *Schedule of Assumed Executory Contracts and Unexpired Leases* and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until and including 45 days after the Effective Date; and (b) contest any Claim (or cure amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you disagree with the proposed Cure Costs, object to a proposed assignment to NewCo of the Executory Contract or Unexpired Lease, or object to the ability of NewCo or the Post-Effective Date Debtors, as applicable, to provide adequate assurance of future performance with respect to any Executory Contract or Unexpired Lease, your objection to the Plan ("Plan Objection") must: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov) on or before **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Plan Objection Deadline"). For pro se filers, to the extent the filed objection has not been posted on the docket prior to the Plan Objection Deadline, they must also serve the objection via e-mail on counsel to the Debtors and the Committee prior to the Plan Objection Deadline at the following addresses: to (a) counsel to the Debtors, Kirkland & Ellis LLP, Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com), Ross M. Kwasteniet, P.C. (ross.kwasteniet@kirkland.com), Christopher S. Koenig (chris.koenig@kirkland.com), and Dan Latona (dan.latona@kirkland.com); and (b) counsel to the Committee, White & Case LLP, Gregory F. Pesce (gregory.pesce@whitecase.com), Keith H. Wofford (kwofford@whitecase.com), Aaron E. Colodny (aaron.colodny@whitecase.com), David M. Turetsky (david.turetsky@whitecase.com), and Samuel P. Hershey (sam.hershey@whitecase.com).

**PLEASE TAKE FURTHER NOTICE THAT** if you do not object to (a) the Cure Costs, (b) the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or (c) adequate assurance of NewCo's or the Post-Effective Date Debtors' ability to perform by the Plan Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to NewCo or the Post-Effective Date Debtors on the grounds that NewCo or the Post-Effective Date Debtors have not provided adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE THAT** any Plan Objection related to the assumption of an Executory Contract or Unexpired Lease identified on the *Schedule of Assumed Executory Contracts and Unexpired Leases* and/or Cure Costs proposed in connection with the Plan that otherwise complies with these procedures yet remains unresolved as of the commencement of the Confirmation Hearing shall be heard at the Confirmation Hearing or such other date as fixed by the Court.

**PLEASE TAKE FURTHER NOTICE THAT**, notwithstanding anything herein, the mere listing of any Executory Contract or Unexpired Lease on the *Schedule of Assumed Executory Contracts and Unexpired Leases* does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed or assumed and assigned by the Debtors, and all rights of the Debtors, the Post-Effective Date Debtors, and NewCo with respect to such Executory Contract or Unexpired Lease are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume or assume and assign each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors, Post-Effective Date Debtors, and/or NewCo, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE THAT**, nothing herein (i) alters in any way the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims, Noticing, and Solicitation Agent"), by: (a) calling the Claims, Noticing, and Solicitation Agent at (855) 423-1530 (Toll-Free) or +1 (949) 669-5873 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at CelsiusInquiries@Stretto.com with a reference to "In re: Celsius - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Celsius Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Celsius/, or for a fee via PACER at: http://pacer.psc.uscourts.gov.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS, NOTICING, AND SOLICITATION AGENT.**

---

New York, New York
Dated: [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Schedule A

**Schedule of Assumed Executory Contracts and Unexpired Leases**

| Debtor Obligor | Counterparty Name | Description of Contract | Amount Required to Cure Default Thereunder, If Any |
|---|---|---|---|
| | | | |
| | | | |

**Exhibit 10**

**Notice of Claims Settlement**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF CLASS CLAIM SETTLEMENT
### AND OPPORTUNITY TO OPT OUT OF CLASS CLAIM SETTLEMENT

**PLEASE TAKE NOTICE THAT** on August 14, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an *Order (I) Approving the Settlement By and Among the Debtors and the Committee with Respect to the Committee Class Claim and (II) Granting Related Relief* [Docket No. 3288] (the "Class Claim Settlement Order") approving the settlement reached by and among the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors, which settlement resolved the Class Claim and Class Certification Motion (such settlement, the "Class Claim Settlement"). A copy of the settlement agreement memorializing the terms of the Class Claim Settlement is attached hereto as **Exhibit A** (the "Class Claim Settlement Agreement").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on August [●], 2023, the Court also entered an order [Docket No. [●]] (the "Disclosure Statement Order") (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") for the purposes of solicitation, (b) authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3319] (as modified, amended, or supplemented from time to time, the "Plan"), (c) approving the solicitation materials and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]  Capitalized terms used by not defined herein shall have the meaning ascribed to them in the Class Claim Settlement Order, the Class Claim Settlement Agreement, the Plan, or the Disclosure Statement, as applicable.

documents to be included in the solicitation packages, and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because you are the Holder of an Account Holder Claim, ***you are a party to the Class Claim Settlement unless you affirmatively opt out of the Class Claim Settlement on your Account Holder Ballot*** as further explained herein (other than with respect any Custody Claim that you may hold).

**PLEASE TAKE FURTHER NOTICE THAT** all Holders of Account Holder Claims who do not opt out of the Class Claim Settlement pursuant to the procedures explained herein and set forth on their Ballot shall receive a Claim equal to 105% of such Account Holder's scheduled Claim in the same type of Account Holder Claim (*e.g.*, a scheduled General Earn Claim for $10,000 shall receive a scheduled General Earn Claim in an amount of $10,500 or a Retail Borrower Deposit Claim for $10,000 shall receive a Retail Borrower Deposit Claim for $10,500) (any such claim, a "Settlement Claim")), which shall supersede the applicable Account Holder's Scheduled Claim and any Proof of Claim filed by the applicable Account Holder. The Settlement Claim shall be against each Debtor entity. Account Holders shall not be entitled to participate in the Class Claim Settlement with respect to any Custody Claims, which are instead eligible to participate in the Custody Settlement pursuant to the Plan. Furthermore, any Account Holder of a Filed Proof of Claim that does not also have a corresponding scheduled claim is not eligible to participate in the Class Claim Settlement.

**PLEASE TAKE FURTHER NOTICE THAT** all Holders of Account Holder Claims (other than with respect to Custody Claims) may opt out of the Class Claim Settlement on their Account Holder Ballot, which shall be served on eligible Account Holders in connection with soliciting votes to accept or reject the Plan in accordance with the terms of the Disclosure Statement Order. ***The Class Claim Settlement opt-out is located in Item 8 of the Account Holder Ballot***. The deadline for opting out of the Class Claim Settlement is **September 22, 2023 at 4:00 p.m.** prevailing Eastern Time (the "Class Claim Settlement Opt-Out Deadline").

**PLEASE TAKE FURTHER NOTICE THAT**, upon the expiration of the Class Claim Settlement Opt-Out Deadline (the "Opt-Out Period"), any claims and/or causes of action set forth in a scheduled claim, Proof of Claim, and/or the Class Claim held by any Account Holder that does not opt out of the Class Claim Settlement shall be expunged and superseded by such Holder's Settlement Claim (other than Custody Claims, which shall not be expunged). For the avoidance of any doubt, (i) Holders of Account Holder Claims that do not opt out of the Class Claim Settlement shall (x) no longer be entitled to the amounts set forth on any filed Proof of Claim, (y) no longer be entitled to prosecute any allegations against the Debtors set forth in any such Proof of Claim or the Class Claim, and (z) be limited to receiving a recovery from the Debtors with respect to a Settlement Claim pursuant to the treatment provided in the Plan, and (ii) Custody Claims shall not be eligible for the Class Claim Settlement and not opting out of the Class Claim Settlement shall have no effect on any Custody Claim.

**PLEASE TAKE FURTHER NOTICE THAT** each applicable scheduled claim or filed Proof of Claim (other than scheduled claims or filed Proofs of Claim asserting Custody Claims) relating to any Account Holder who does not timely opt out of the Class Claim Settlement shall be deemed amended consistent with the foregoing upon the expiration of the Opt-Out Period.

**PLEASE TAKE FURTHER NOTICE THAT** Excluded Parties are not eligible for the Class Claim Settlement and shall not receive the benefit of the Class Claim Settlement even if any such Excluded Party does not opt out of the Class Claim Settlement. For the avoidance of any doubt, nothing contained in the Class Claim Settlement Agreement shall alter any claim(s) the Debtors and/or any other third party may hold against the Excluded Parties, and the Excluded Parties shall not be deemed "Releasing Parties" under the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** ***Holders of Account Holder Claims that opt out of the Class Claim Settlement shall have their Account Holder Claims (other than Custody Claims) treated as Disputed Claims under the Plan and shall not receive a distribution on the Effective Date***. Instead of receiving any distribution on the Effective Date, such Holders shall only receive a distribution (if any) on the date any such Holder's Disputed Claim is resolved in the claims reconciliation process. The distribution that any such Holder that elects to opt out of the Class Claim Settlement ultimately may receive shall depend on the outcome of the claims reconciliation process and/or related litigation, which may ultimately take years to conclude.

**PLEASE TAKE FURTHER NOTICE THAT** each Account Holder shall be entitled to vote the scheduled amount of such Holder's claim as authorized by the Court in accordance with the terms of the Disclosure Statement Order. For the avoidance of any doubt, nothing in the Class Claim Settlement, the Class Certification Motion, or the Class Claim shall affect voting on the Plan or provide the Committee with a right to vote on the Plan. Committee members shall retain all rights to vote Claims held in their individual capacity and opt out of the Class Claim Settlement in such capacity.

**PLEASE TAKE FURTHER NOTICE THAT**, for the avoidance of any doubt, the Debtors (a) reserve all rights to object to and dispute the amounts set forth in any filed Proofs of Claim and the allegations set forth in the Class Claim with respect to any Account Holder that commences litigation against the Debtors related to such Holder's Proof of Claim and/or any allegations in the Class Claim, and (b) shall have until the Effective Date to object to any Settlement Claim based on discrepancies between any Settlement Claim and the Debtors' books and records.

**PLEASE TAKE FURTHER NOTICE** that copies of the Class Claim Settlement Agreement, the Class Claim Settlement Order, the Plan, the Disclosure Statement, the Disclosure Statement Order, and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated:  August [●], 2023

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    patrick.nash@kirkland.com
    ross.kwasteniet@kirkland.com
    chris.koenig@kirkland.com
    dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

<u>**Exhibit A**</u>

**Class Claim Settlement Agreement**

# SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (as may be amended, supplemented, or otherwise modified from time to time, this "Settlement Agreement") is made and entered into as of August 2, 2023, by and among the following parties (each of the following described in sub-clauses (i) through (ii) of this preamble, collectively, the "Parties" and each, a "Party"):[1]

(i)    Celsius Network LLC and its debtor affiliates (collectively, the "Debtors");[2] and

(ii)    the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code (the "Committee" and, together with the Debtors, the "Parties").

## RECITALS

A.    **WHEREAS**, on July 13, 2022 (the "Petition Date"), certain of the Debtors (the "Initial Debtors")[3] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 22-10964 (MG);

B.    **WHEREAS**, on July 27, 2022, the U.S. Trustee for Region 2 appointed the Committee;

C.    **WHEREAS**, on November 16, 2022, the Bankruptcy Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 1368], which, among other things, established: (a) 5:00 p.m. prevailing Eastern Time on January 3, 2023, as the deadline for all persons and entities that assert a "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Initial Debtors that arose before the Petition Date, including any claim pursuant to section 503(b)(9) of the Bankruptcy Code, to submit a written proof of such claim so that it is actually received by Stretto, Inc. (the "Notice and Claims Agent"); and (b) 5:00 p.m. prevailing Eastern Time on January 10, 2023, as the deadline for all governmental units that assert a Claim against the Initial Debtors that arose before the Petition

---

[1]    Capitalized terms used but not otherwise defined in this Settlement Agreement shall have the meanings ascribed to them in the *Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3116] dated July 29, 2023 (the "July 29 Plan") or the Claims Settlement Motion (as defined herein), as applicable.  For the avoidance of any doubt, to the extent that any of the defined terms in the July 29 Plan are revised, modified, or amended in an amended, supplemented, or otherwise modified joint chapter 11 plan of reorganization of the Debtors filed after the date of this Settlement Agreement (a "Plan"), the defined terms in the July 29 Plan shall govern with respect to this Settlement Agreement.

[2]    The Debtors are:  Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd.; GK8 UK Limited; and GK8 USA LLC.

[3]    Debtors GK8 Ltd., GK8 USA LLC, and GK8 UK Limited filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 7, 2022.

Date to submit a written proof of such Claim so that it was to be actually received by the Notice and Claims Agent;

D.    **WHEREAS**, on January 4, 2023, the Bankruptcy Court entered the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822], which held that cryptocurrency assets deposited in the Debtors' earn accounts were property of the Debtors' estates (the "Earn Ruling");

E.    **WHEREAS**, following the entry of the Earn Ruling, the Bankruptcy Court entered the *Order (I) Extending the Bar Dates for Submitting Proofs of Claim, (II) Approving Notice Thereof, and (III) Granting Related Relief* [Docket No. 1846], which extended the date by which all persons and entities, including governmental units, were required to submit proofs of claim against the Initial Debtors from January 3, 2023, until February 9, 2023, at 5:00 p.m. prevailing Eastern Time;

F.    **WHEREAS**, on March 9, 2023, the Bankruptcy Court issued its *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205], which held that only Debtor Celsius Network LLC, and not any other Debtor or non-Debtor affiliates, are liable to Account Holders on contract claims under the Terms of Use;

G.    **WHEREAS**, on April 10, 2023, the Committee filed the *Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* [Docket No. 2399] (the "Class Claim Motion") seeking authority to file a class claim or other collective action on behalf of all Account Holders and assert fraud, misrepresentation, and other statutory claims against each Debtor entity to solve the "unprecedented collective action problem" of "hundreds of thousands" of the Debtors' creditors asserting individual non-contract claims against the Debtors;

H.    **WHEREAS**, on April 18, 2023, the Bankruptcy Court entered the *Order Granting the Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert Non-Contract Claims on Behalf of Account Holders* [Docket No. 2496] (the "Class Claim Order"), which granted the relief request in the Class Claim Motion;

I.    **WHEREAS**, on April 28, 2023, in accordance with the Class Claim Order, the Committee filed a class proof of claim (Claim No. 29046) (the "Class Claim") on behalf of Thomas DiFiore, Ignat Tuganov, and Rebecca Gallagher, in their individual capacities and as proposed Class Representatives (as defined herein) which asserted damages against each of the Debtors in an amount not less than $5,217,524,781.00 in U.S. Dollars arising out of non-contractual claims, including: (a) violation of the New York Deceptive Practices Act; (b) violation of the New York False Advertising Act; (c) violation of the New Jersey Consumer Fraud Act; (d) fraudulent misrepresentation; (e) negligent misrepresentation; (f) fraudulent concealment; (g) unjust enrichment; (h) breach of the implied duty of good faith and fair dealing; and (i) violation of Section 2 of the Misrepresentation Act 1967 under English law;

J.      **WHEREAS**, on May 17, 2023, the Committee filed *the Motion of the Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in Each Case Pursuant to Bankruptcy Rule 7023* [Docket No. 2670] (the "Class Certification Motion"), which sought entry of an order (i) certifying the proposed class of all Account Holders (the "Class"), (ii) appointing Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the class representatives (collectively, the "Class Representatives"), and (iii) appointing White & Case LLP as Class counsel;

K.      **WHEREAS**, on June 12, 2023, the Bankruptcy Court entered the *Order Establishing Schedule for Litigation of the Motion of the Official Committee of Unsecured Creditors to (I) Certify the Class of Account Holders Asserting Non-Contract Claims Against the Debtors, (II) Appoint Thomas DiFiore, Rebecca Gallagher, and Ignat Tuganov as the Class Representatives, and (III) Appoint White & Case LLP as Class Counsel, in Each Case Pursuant to Bankruptcy Rule 7023* [Docket No. 2795], which established a litigation schedule for the months of June, July, August, and September with a hearing on the Class Certification Motion scheduled for the week of September 25, 2023;

L.      **WHEREAS**, following good-faith and arm's-length negotiations, the Parties reached agreement on a settlement resolving all of the disputes between the Parties regarding the Class Claim and the Class Certification Motion, on the terms set forth in this Settlement Agreement and in the applicable provisions of the Plan Treatment Term Sheet (the "Plan Treatment Term Sheet") attached as Exhibit B to the Class Claim Settlement Motion (as defined herein); and

M.      **WHEREAS**, on July 20, 2023, the Debtors filed the *Joint Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors and the Committee with Respect to the Committee's Class Claim and (II) Granting Related Relief* [Docket No. 3064] (the "Class Claim Settlement Motion"), requesting that the Bankruptcy Court approve the settlement reached among the Parties resolving the Class Claim and Class Certification Motion (such settlement, the "Class Claim Settlement").

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.      **For Settlement Purposes Only**.  This Settlement Agreement is for settlement purposes only.  Except as explicitly set forth in this Settlement Agreement, the fact of this Settlement Agreement or any provision herein, the negotiations or proceedings related hereto, and any actions taken hereunder shall not constitute or be construed as (a) any admission of the validity of any claim or any fact alleged by any of the Parties, (b) any admission of any wrongdoing, fault, violation of law, breach of contract, or liability of any kind on the part of any of the Parties, (c) any admission as to any claim or allegation made in any demand of, action against, or proceeding against any of the Parties, and/or (d) a waiver of any applicable defense by any of the Parties.  This Settlement Agreement shall not be offered or admissible as evidence against any Party in any

3

action or proceeding in any forum for any purpose whatsoever, except as evidence of its existence or terms or in any action or proceeding brought to enforce its terms.

2.    **Approval**.    This Settlement Agreement shall be effective on the date the Bankruptcy Court enters an order approving the Class Claim Settlement Motion, which order shall be substantially in the form attached as <u>Exhibit A</u> to the Class Claim Settlement Motion (the "<u>Settlement Approval Order</u>").    Although the Parties shall sign this Settlement Agreement prior to the entry of the Settlement Approval Order, the Parties agree and acknowledge that this Settlement Agreement shall not be effective or binding on the Parties if the Settlement Approval Order is not entered by the Bankruptcy Court.

3.    **The Class Claim Settlement**.    In full and final satisfaction of the Class Claim and resolution of the Class Certification Motion:

(a)    All Holders of Account Holder Claims that do not opt out of the Class Claim Settlement pursuant to the procedures set forth in <u>Section 4</u> of this Settlement Agreement shall receive, instead of any scheduled claim and/or filed Proof of Claim relating to such Holder, a Claim equal to 105% of the scheduled amount of such Claim in the same type of Account Holder Claim (*e.g.*, a scheduled General Earn Claim for $10,000 shall receive a scheduled General Earn Claim in an amount of $10,500 or a Retail Borrower Deposit Claim for $10,000 shall receive a Retail Borrower Deposit Claim for $10,500) (any such claim, a "<u>Settlement Claim</u>") against each Debtor entity; *provided* that Account Holders shall not be entitled to participate in the Class Claim Settlement with respect to such Holders' Custody Claims, which are instead eligible to participate in the Custody Settlement pursuant to the Plan; *provided further* that Holders of Filed Proofs of Claim where the Holder of such claim does not also have a corresponding scheduled Claim are not eligible to participate in the Class Claim Settlement; *provided further* that any Settlement Claims (other than Claims based on CEL Token) shall not be subject to subordination pursuant to section 510(b) of the Bankruptcy Code;

(b)    Upon the expiration of the Opt-Out Period (as defined in <u>Section 4</u> of this Settlement Agreement), any claims and/or causes of action set forth in a scheduled claim, Proof of Claim, and/or the Class Claim held by any Account Holder that does not opt out of the Class Claim Settlement shall be expunged and superseded by such Holder's Settlement Claim (other than Custody Claims, which shall not be expunged).    For the avoidance of any doubt, (i) Holders of Account Holder Claims that do not opt out of the Settlement shall (x) no longer be entitled to the amounts set forth on any filed Proof of Claim, (y) no longer be entitled to prosecute any allegations against the Debtors set forth in any such Proof of Claim or the Class Claim, and (z) be limited to receiving a recovery from the Debtors with respect to a Settlement Claim pursuant to the treatment provided in the Plan, and (ii) as set forth in <u>Section 3(a)</u> of this Settlement Agreement, Custody Claims shall not be eligible for the Class Claim Settlement and not opting out of the Class Claim Settlement shall have no effect on any Custody Claim; and

(c)    Each applicable scheduled claim or filed Proof of Claim (other than scheduled claims or filed Proofs of Claim asserting Custody Claims) relating to any Account Holder who does not timely opt out of the Class Claim Settlement shall be deemed

amended consistent with the foregoing upon entry of the Settlement Approval Order and expiration of the Opt-Out Period (as such term is defined below); *provided* that each Account Holder shall only be entitled to vote in the amount of such Account Holder's pre-Class Claim Settlement scheduled claim(s) as further explained in the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 2970] (the "Disclosure Statement Motion"); *provided further* that Excluded Parties are not eligible for the Class Claim Settlement and shall not receive the benefit of the Class Claim Settlement even if any such Excluded Party does not opt out of the Class Claim Settlement.  For the avoidance of any doubt, nothing contained in this Settlement Agreement shall alter any claim(s) the Debtors and/or any other third party may hold against the Excluded Parties, and the Excluded Parties shall not be deemed "Releasing Parties" under the Plan.

4.      **Participation Process and the Class Claim Settlement Election**.  As a part of the Solicitation Package, the Debtors shall provide all eligible Account Holders with a notice of claims settlement, substantially in the form attached hereto as **Exhibit A** (the "Notice of Claims Settlement"), which shall be approved pursuant to the Settlement Approval Order.  All Holders of Account Holder Claims (other than Custody Claims) shall have the opportunity to opt out of the Class Claim Settlement on their Account Holder Ballots, which shall be substantially in the form attached hereto as **Exhibit B**.

(a)      Any Holder of an Account Holder Claim that does not affirmatively opt out of the Class Claim Settlement prior to the conclusion of the time period to vote on the Plan (the "Opt-Out Period") shall be bound by the terms of the Class Claim Settlement upon the expiration of the Opt-Out Period.  Proofs of Claim filed by Holders of Account Holder Claims (other than Custody Claims) that do not opt out of the Class Claim Settlement by the expiration of the Opt-Out Period shall be (i) expunged from the Claims Register, (ii) of no further force and effect, and (iii) superseded by such Holder's Settlement Claim.

(b)      Holders of Account Holder Claims that opt out of the Class Claim Settlement shall have their Account Holder Claims (other than Custody Claims) treated as Disputed Claims under the Plan and shall not receive a distribution on the Effective Date.  Rather, such Holders shall receive a distribution (if any) on the date any such Holder's Disputed Claim is resolved in the claims reconciliation process.  The distribution that any such Holder that elects to opt out of the Class Claim Settlement ultimately may receive shall depend on the outcome of such claim's reconciliation process and/or litigation.  Holders of Account Holder Claims may vote in favor of the Plan and opt out of the Class Claim Settlement; *provided* that Holders of Account Holder Claims that vote in favor of the Plan shall be bound by the releases set forth in the Plan and shall only retain their rights with respect to their filed Proofs of Claim.

(c)      For the avoidance of any doubt, the Debtors (a) reserve all rights to object to and dispute the amounts set forth in any filed Proofs of Claim and the allegations set

forth in the Class Claim with respect to any Account Holder that commences litigation against the Debtors related to such Holder's Proof of Claim and/or any allegations in the Class Claim, and (b) shall have until the Effective Date to object to any Settlement Claim based on discrepancies between any Settlement Claim and the Debtors' books and records.

5. **Voting on the Plan**. Each Holder shall be entitled to vote the scheduled amount of such Holder's claim as authorized by the Bankruptcy Court in accordance with the terms of the Disclosure Statement Order (as defined in the Disclosure Statement Motion). For the avoidance of any doubt, nothing in the Class Claim Settlement, the Class Certification Motion, or the Class Claim shall affect voting on the Plan or provide the Committee with a right to vote on the Plan. Committee members shall retain all rights to vote Claims held in their individual capacity and opt out of the Class Claim Settlement in such capacity.

6. **Resolution of Class Claim and Class Certification Motion**. The Debtors hereby agree to the certification of the Class and to the appointment of the Class Representatives, to the extent applicable and necessary. Granting of the Settlement Claims as set forth herein shall constitute a full and final resolution of the Class Claim on behalf of all Account Holders that do not opt out of the Class Claim Settlement. For the avoidance of any doubt, upon entry of the Settlement Approval Order, the Committee shall not prosecute the Class Claim on behalf of any or all Account Holders.

7. **Termination**. Any of the Parties may serve written notice of the termination of this Settlement Agreement to each other Party, in accordance with Section 8 hereof, solely upon the occurrence of any of the following events:

(a) the entry of an order by the Bankruptcy Court denying approval of the Class Claims Settlement Motion; or

(b) the entry of an order by the Bankruptcy Court purporting to modify the terms of Class Claim Settlement or ordering modifications to the Plan that alter the terms contemplated by this Settlement Agreement or otherwise materially change the terms of this Settlement Agreement or the applicable terms of the Plan Treatment Term Sheet.

8. **Notice**. All notices, demands, instructions, and other communications required or permitted under the Settlement Agreement to any Party (a "Notice") must be in writing, shall be effective upon receipt, and must be delivered by hand delivery, overnight courier, or e-mail.

**If to the Company:**

Celsius Network LLC
50 Harrison Street
Suite 209F
Hoboken, NJ 07030
Attn: Ron Deutsch, General Counsel
E-mail: ron.deutsch@celsius.network

**with a copy to**:

> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attn: Joshua A. Sussberg, P.C.
> Telephone: (212) 446-4800
> Facsimile: (212) 446-4900
> E-mail: joshua.sussberg@kirkland.com
>
> and
>
> Kirkland & Ellis LLP
> 300 N. LaSalle Street
> Chicago, Illinois 60654
> Attn: Patrick J. Nash, Jr. P.C., Ross M. Kwasteniet, P.C., Christopher S. Koenig,
> Dan Latona
> Telephone: (312) 862-2000
> Facsimile: (312) 862-2200
> E-mail: patrick.nash@kirkland.com, ross.kwasteniet@kirkland.com,
> chris.koenig@kirkland.com, dan.latona@kirkland.com

**If to the Committee:**

> White & Case LLP
> 555 South Flower Street
> Suite 2700
> Los Angeles, California 90012
> Attn: Aaron E. Colodny
> Telephone: (213) 620-7700
> Facsimile: (213) 452-2329
> E-mail: aaron.colodny@whitecase.com

9.     **Retained Jurisdiction.**  The Parties agree that the Bankruptcy Court shall retain jurisdiction to interpret and enforce the terms of this Settlement Agreement.

10.     **Conflict with Orders**.  To the extent there is any conflict between the terms of this Settlement Agreement and the terms of the Settlement Approval Order, the terms of the Settlement Approval Order shall control.

11.     **Governing Law**.  This Settlement Agreement, and any disputes related thereto, shall be governed by and construed in accordance with (a) applicable federal law, or (b) to the extent federal law does not apply, the laws of the state of New York without regard to the rules of conflict of laws of the state of New York or any other jurisdiction that would require the application of the law of another jurisdiction.  The Parties hereto submit to the jurisdiction of the Bankruptcy Court for any litigation relating to this Settlement Agreement and agree not to commence any litigation relating to this Settlement Agreement except in the Bankruptcy Court.  For the avoidance

of any doubt, during the pendency of the Chapter 11 Cases, all proceedings shall be brought in the Bankruptcy Court.

12.     **Authority**.  Each of the Parties hereto represents and warrants that (a) it has full power, right, and authority to enter into this Settlement Agreement and to take all steps necessary to implement its terms and conditions and take the actions contemplated hereby, (b) this Settlement Agreement has been duly and validly executed and delivered by it and constitutes the legal, valid, and binding obligation of such Party enforceable against such Party in accordance with its terms, and (c) other than from the Bankruptcy Court, no consent of any person or entity not a party to this Settlement Agreement is necessary for this Settlement Agreement to be fully and completely binding upon each of the Parties.

13.     **Successors and Assigns; Third Parties**.  The rights and obligations of each of the Parties under this Settlement Agreement shall be binding upon, and inure to the benefit of, any successor or assign of each such Party, including, for the avoidance of doubt, the Litigation Administrator contemplated under the Plan.  Any purported assignment that does not comply with the foregoing sentence shall be void *ab initio*.

14.     **Non-Severability**.  Each of the terms of this Settlement Agreement is a material and integral part hereof.  Except as otherwise provided herein, should any provision of this Settlement Agreement be held to be unenforceable or contrary to law, the entire Settlement Agreement shall be deemed null and void.

15.     **Entire Understanding**.  This Settlement Agreement constitutes the entire understanding of the Parties hereto in connection with the matters covered herein, and may not be amended, modified, or altered except by an agreement in writing signed by each of the Parties.

16.     **No Party Deemed Drafter**.  The signatories to this Settlement Agreement are competent persons, each of whom is experienced in business and represented by counsel. Therefore, any ambiguous language in this Settlement Agreement shall not be construed against any particular Party as the drafter of such language.

17.     **Failure to Enforce; Waiver**.  The failure of any Party to enforce a provision of this Settlement Agreement shall not constitute a waiver of such Party's right to enforce that provision.  No provision of this Settlement Agreement may be waived except by a writing signed by the Parties that expressly refers to this Section 17 of this Settlement Agreement and makes such waiver, and such waiver shall be limited to the terms of such writing.  Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or of any other provision hereof, nor shall any such waiver by any Party be deemed to be a continuing waiver.  No delay or omission by any Party in exercising any right hereunder, at law, in equity, or otherwise, shall impair any such right or be construed as a waiver thereof or any acquiescence therein, nor shall any single or partial exercise of any right preclude other or further exercise of such right or the exercise of any other right.

18.     **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts and by the Parties hereto in separate counterparts, each of which shall be deemed to

be an original, but all of which taken together shall constitute one and the same document. Delivery of an executed counterpart of this Settlement Agreement by electronic mail to the contacts listed in Section 8 of this Settlement Agreement shall be equally effective as delivery of an original executed counterpart.

*[Signature pages follow]*

**Debtors' Signature Page to
the Class Claim Settlement Agreement Agreement**

      **IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement on the day and year first above written.

**CELSIUS NETWORK LLC**
(on behalf of itself and its affiliated Debtors
and Debtors in Possession)

By: *Chris Ferraro*
Name: Christopher Ferraro
Title: Chief Financial Officer, Interim Chief
       Executive Officer, Chief Restructuring
       Officer, and/or Authorized Signatory

**Official Committee of Unsecured Creditors**

By: _____

     **Name:**
     **Title:**

*[COMMITTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]*