**Hearing Date: September 7, 2023, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: August 31, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF HEARING ON MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING**
**THE SETTLEMENT BY AND BETWEEN THE DEBTORS**
**AND BRADLEY CONDIT AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Approving the Settlement By and Between the Debtors and Bradley Condit, and (II) Granting Related Relief* (the "Motion") will be held on **September 7, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will take place in a hybrid fashion both in person and via Zoom for Government.  Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408.  For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  When making an eCourtAppearance, parties must specify whether they are making a "live" or "listen only" appearance.  Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the Hearing (*i.e.*, on Wednesday, September 6, 2023)**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on September 7, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on September 7, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect)

with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order") by **August 31, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

New York, New York
Dated: August 17, 2023

_/s/ Joshua A. Sussberg_

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:            joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted _pro hac vice_)
Ross M. Kwasteniet, P.C. (admitted _pro hac vice_)
Christopher S. Koenig
Dan Latona (admitted _pro hac vice_)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:            patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com
                    chris.koenig@kirkland.com
                    dan.latona@kirkland.com

_Counsel to the Debtors and Debtors in Possession_

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION FOR ENTRY OF AN ORDER
## (I) APPROVING THE SETTLEMENT BY AND BETWEEN THE
## DEBTORS AND BRADLEY CONDIT AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

the following in support of this motion (this "Motion"):

### Introduction[2]

1.    By this Motion, the Debtors seek approval of a settlement by and between Celsius

Network LLC ("Celsius") and Bradley Condit ("Mr. Condit" and together with Celsius,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this section shall have the meanings ascribed to them later in the Motion, as applicable.

the "Parties") that resolves disputes between the Parties related to Mr. Condit's allegations of discrimination, hostile work environment, and failure to provide a reasonable accommodation as part of his employment with Celsius.

2.      The Settlement is the result of good-faith negotiations and fully resolves the disputes between the Parties.  Under the terms of the Settlement, Mr. Condit will receive a one-time payment of $230,000 in cash from the Debtors' Employment Practices Policies and, in part, from the Debtors in full resolution of his action against Celsius captioned *Bradley Condit v. Celsius Network LLC and Yaron Shalem, in his individual and professional capacities*, Case No.: 22-cv-05452 (CS) (S.D.N.Y. Jun. 28, 2022) (the "Condit Action"), pending in the United States District Court for the Southern District of New York (the "District Court") without an admission of liability.  The settlement payment will largely be paid from the Debtors' Employment Practices Polices, while the Debtors are contributing $50,000.

3.      By providing a final resolution of the Condit Action, the Settlement will save the Debtors significant expense and resources, eliminate the inherent uncertainty and distraction of litigation, and allow the Debtors to focus on soliciting and confirming their plan of reorganization and returning values to stakeholders at this crucial juncture.  Accordingly, for the reasons set forth below, the Settlement is in the best interests of the Debtors' estates and should be approved.

## Relief Requested

4.      The Parties seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):  (a) approving the settlement (the "Settlement") as embodied in the settlement agreement attached to the Order as Exhibit 1 (the "Settlement Agreement"), by and among the Parties; and (b) granting related relief.

2

**Jurisdiction and Venue**

5.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the District Court, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

8.     Mr. Condit was employed by Celsius from October 2020 until September 2021.  On or about June 28, 2022, Mr. Condit commenced the Condit Action.  Shortly thereafter, on July 13, 2022, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On September 1, 2022, Mr. Condit, though his counsel, filed the *Motion of Bradley Condit for Entry of an Order Pursuant to 11 U.S.C. § 362(d)(1) for Relief from the Automatic Stay* [Docket No. 684] (the "Condit Lift Stay Motion"), seeking relief from the automatic stay to proceed with the Condit Action against Celsius for the limited purpose of recovering solely from the proceeds

of the Debtors' employment practices liability insurance policies (the "Employment Practices Policies")[3] and not from any of the property of the Debtors' estates.  Condit Lift Stay Motion ¶ 13.

9.      On October 27, 2022, the Debtors and Mr. Condit entered into the *Joint Stipulation and Agreed Order by and Among Debtors and Bradley Condit Granting Limited Relief from the Automatic Stay* [Docket No. 1209] (the "Stipulation"), whereby the Debtors agreed to modify the automatic stay with respect to the Condit Action solely to the limited extent necessary to enable (a) the claims asserted in the Condit Action to proceed to final judgment or settlement and (b) Mr. Condit to recover any final judgment or settlement solely from proceeds of the Employment Practices Policies.  Stipulation ¶ 2.

10.     Pursuant to the Stipulation, Mr. Condit agreed and acknowledged that (a) any amounts he recovered by a final order or settlement in the Condit Action would be limited solely to proceeds available from the Employment Practices Policies and, to the extent that the Employment Practices Policies are subject to any self-insured retention, any amounts recoverable by him would be further limited to the amount that exceeds the applicable self-insured retention and he should not assert a claim for such self-insured retention in these chapter 11 cases; (b) he could only prosecute the Condit Action (and enforce any judgment obtained on account of the same) with respect to proceeds available from the Employment Practices Policies, subject to the limitations set forth in the Stipulation, and at no cost to the Debtors or their estates; and (c) in no event shall he be entitled to any recovery or remuneration from the Debtors or their estates.  *See*

---

[3]    The Employment Practices Policies are: (a) that certain Private Company Platinum Protection Policy by and between Celsius Network Inc. and United States Fire Insurance Company a/k/a Crum & Forster (the "Insurer") effective from September 1, 2021 through September 1, 2022 (Policy No. 574-102279-8); (b) that certain excess liability insurance policy by and between Celsius Network, Inc. and Amtrust Underwriters, Inc on behalf of Associated Industries Insurance Company, Inc. effective from September 1, 2021 through September 1, 2022 (Policy No. ANV157488A); and (c) any similar predecessor employment practices liability policies to the foregoing.

Stipulation ¶ 3. On October 31, 2022, the Court approved the Stipulation [Docket No. 1246]. Notably, the Insurer was not party to the Stipulation.

11.    Since the Court's approval of the Stipulation, the Debtors have weighed the relative costs of continuing to litigate Mr. Condit's claims and the costs of entering into a settlement with Mr. Condit and determined that the costs and uncertainty associated with continuing litigation substantially exceed the costs of a potential settlement. The cost of professional fees and court fees for litigating Mr. Condit's claims are estimated to be in excess of the $230,000 settlement amount, and would be in addition to, if Mr. Condit's claims are successful, an undetermined amount of damages. The Parties therefore began discussions on a potential settlement of Mr. Condit's claims against Celsius. On June 12, 2023, the parties participated in a mediation session with Mediator Dina Jansenson, and the Parties reached an agreement in principle of the Settlement. After several weeks of extensive good faith and arm's-length negotiations around the terms of the Settlement Agreement, and the Settlement Agreement was finalized on July 28, 2023. The Settlement Agreement is attached to the Order as Exhibit 1.

12.    While the Parties had stipulated that Mr. Condit could only recover from the Employment Practices Policies, it became clear during negotiations that additional cost and further delay could be avoided if the Debtors agreed to pay a small portion of the settlement amount from their estates. In an exercise of their reasonable business judgement, the Debtors determined that contributing $50,000 to the settlement amount of $230,000 is in the best interest of their estates. Under the Employment Practices Policies, the Debtors are responsible for a $150,000 self-insured retention on all covered liabilities. The Insurer conditioned its consideration of settlement negotiations (and ultimately settlement agreement) on the Debtors' participation in such settlement payment. The Debtors believe that if they insisted that the entire settlement amount be paid by the

Insurer, the Insurer may not have engaged in meaningful settlement negotiations with Mr. Condit or, if the same $230,000 settlement was reached, would have demanded payment of $150,000 from the Debtors.  By agreeing to contribute $50,000 to the $230,000 settlement payment, the Debtors secured full cooperation from the Insurer and ensured a speedy, consensual, and cost-effective resolution of the Condit Action, avoiding further diminution of their estates and distraction from the restructuring process.[4]

### The Settlement[5]

13.    Pursuant to the Settlement, Mr. Condit will receive a one-time payment of $230,000 to resolve all outstanding disputes between the Parties.  The Settlement Agreement constitutes a full and final satisfaction of any and all existing and future claims brought by Mr. Condit against Celsius, its debtor and non-debtor affiliates—including all of the Debtors in these chapter 11 cases—or any of its or their current or former employees, attorneys, officers, owners, members, managers, shareholders, directors, and agents arising out of Mr. Condit's employment with Celsius and subsequent termination.

14.    The Settlement is in the best interests of the Debtors and their creditors.  Notwithstanding the Parties' agreement in the Stipulation that Mr. Condit shall only recover from the proceeds of the Debtors' Employment Practices Policies and not from property of the Debtors' estates, the Debtors, in a sound exercise of their business judgment, found that the benefits of

---

[4]    The Insurer agreed to release the Debtors from their self-insured retention obligation.  Had the Debtors refused to contribute anything and caused the Insurer to file a proof of claim against the Debtors for a $150,000 unsecured claim, the Insurer would have been entitled to a 67.0% projected recovery under the Debtors' proposed plan of reorganization.  *See* Disclosure Statement [Docket No. 3332] at 11.  By contributing $50,000 to the settlement payment, the Debtors essentially reduced the Insurer's recovery to 33.3%.

[5]    Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Settlement Agreement.  The following summary of the Settlement is provided for illustrative purpose only and is qualified in its entirety by reference to the Settlement Agreement.  In the event of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls in all respects.  Furthermore, this summary shall not be used to construe or interpret the terms of the Settlement Agreement or intent of the Parties.

reaching the Settlement with Mr. Condit substantially outweighed the costs of disbursing $50,000 from the estates. The Settlement resolves a significant dispute between the Parties, the outcome of which is inherently uncertain, saves the Debtors the additional expense, resources, and distraction of further litigation with Mr. Condit, and avoids further diminution to their estates. Accordingly, the Debtors seek approval to enter into and perform under the Settlement.

### Basis for Relief

### I.    The Settlement is A Sound Exercise of the Debtors' Business Judgment.

15.    Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). A settlement under Bankruptcy Rule 9019 need not result in the best possible outcome for the debtors, but must not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991). In determining the range of reasonableness, the bankruptcy court need not decide issues of law and fact raised by the settlement. *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In other words, the court does not need to conduct a "mini-trial" of the underlying facts and merits; it needs only to evaluate those facts that are necessary to allow it to assess the settlement and to make an independent judgment about the settlement. *See In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) ("The standard does not require that the settlement be the best the debtor could have obtained nor does it require the court to conduct a mini-trial of the questions of law and fact.").

16.    Rather, the court must be "apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640–41 (Bankr. S.D.N.Y. 2012) (Glenn, J.). In conducting this assessment, "a court may rely on the opinion[s] of the debtor, parties to the settlement, and []

professionals" in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement. *Id.* at 641.

17.     Ultimately, the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("Although a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim."); *Drexel Burnham*, 134 B.R. at 496; *see also Abeles v. Infotechnology (In re Infotechnology)*, 1995 U.S. App. LEXIS 39883, at *4–5 (2d Cir. Nov. 9, 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor).

18.     A court should exercise its discretion in favor of a settlement wherever possible, as settlements are generally favored in bankruptcy. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged."); *see also In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ("The decision to grant or deny a settlement or compromise lies squarely within the discretion of the bankruptcy court [and such] discretion should be exercised in light of the general public policy favoring settlements.") (citing *Nellis* 165 B.R. at 121); *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting the paramount public policy for settlements).[6]  Notably, "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the

---

[6]     Furthermore, under section 105(a) of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Authorizing the Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019 as well as the Bankruptcy Code's predilection for compromise.  Thus, to the extent necessary, relief under section 105(a) of the Bankruptcy Code is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

bankruptcy estate." *In re MF Global Inc.*, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (Glenn, J.).

19.     When determining whether to approve a settlement as fair and equitable and in the best interests of the Debtors' estates under Bankruptcy Rule 9019, courts in the Second Circuit consider the "*Iridium*" factors:  (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount interest of the creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) whether the competency and experience of counsel support the settlement; and (g) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Op. LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

20.     Entering into the Settlement is a sound exercise of the Debtors' business judgment and represents a fair and equitable compromise between the Parties, falls well within the range of reasonableness, and satisfies most of the *Iridium* factors.  More specifically, with respect to the **first** and **second** *Iridium* factors, litigating Mr. Condit's claims against Celsius would consume significant estate resources and cause significant delay at this critical juncture.  For example, the Parties have already spent almost a year litigating the Condit Action in the District Court, with fact discovery scheduled to be completed by August 23, 2023.  In contrast, the Settlement resolves the Condit Action in a consensual manner, provides certainty of recovery for Mr. Condit without the need for further litigation, and allows the Debtors to focus on soliciting and confirming their plan

of reorganization. Time is of the essence in these chapter 11 cases, and it is crucial that the Debtors avoid the costs, delays, and distraction associated with the Condit Action.

21.    With respect to the **_third Iridium_** factor, the Settlement maximizes value of the Debtors' estates and benefits each of the Debtors' stakeholders by capping the Debtors' costs in the Condit Action at $50,000 and avoiding further diminution of the Debtors' estates. On the other hand, if the Debtors were to continue litigating the Condit Action, they will likely incur costs that far exceed the $50,000 settlement payment, even where Mr. Condit's recovery was limited to insurance proceeds, given the $150,000 retention amount in the Employment Practices Policies. In addition, the resolution of the Condit Action will allow the Debtors' management to focus on soliciting and confirming their plan of reorganization and returning value to all stakeholders as soon as possible. Therefore, the Settlement is in the best interests of the Debtors' estates.

22.    With respect to the **_fifth Iridium_** factor, the releases granted by the Settlement are mutual and essential to the Settlement, and are similar in nature to other settlements of the same nature in other chapter 11 cases. Specifically, the releases granted by the Parties in the Settlement are a necessary component of the Settlement and appropriate under the circumstances.

23.    Finally, with respect to the **_sixth_** and **_seventh Iridium_** factors, the Settlement is the product of hard-fought bargaining between the Parties. While the Condit Action was pending in the District Court and amid ongoing discovery, the Parties engaged in arm's-length, hard-fought negotiations for weeks, participated in mediation, and exchanged multiple drafts before executing the Settlement Agreement, with meaningful concessions made by both Parties.

24.    Thus, the terms of the Settlement satisfy the requirements of Bankruptcy Rule 9019 and the Parties request that the Court approve the Settlement and authorize each of the Parties to perform thereunder.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25.    To implement the foregoing successfully, the Debtors request that the Court enter

an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the 14-day stay period under

Bankruptcy Rule 6004(h).

**Reservation of Rights**

26.    Except as explicitly set forth in this Motion and the Settlement (once approved by

the Court and implemented in accordance with its terms), nothing contained in this Motion or any

actions taken pursuant to any order granting the relief requested by this Motion is intended or

should be construed as (a) an admission as to the validity of any particular claim against the

Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a

promise or requirement to pay any particular claim, (d) an implication or admission that any

particular claim is of a type specified or defined in this Motion or any order granting the relief

requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease

pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights

under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that

any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are

valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or

seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended and should not be construed as an admission as to the

validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Motion Practice

27.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

28.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c)  the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) Mr. Condit; (h) the District Court; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

29.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| New York, New York | */s/ Joshua A. Sussberg* |
| Dated: August 17, 2023 | **KIRKLAND & ELLIS LLP** |

**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING**
**THE SETTLEMENT BY AND BETWEEN THE DEBTORS**
**AND BRADLEY CONDIT AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) approving the Settlement, as embodied in the Settlement Agreement attached hereto as **Exhibit 1**, by and between the Debtors and Bradley Condit and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement (as embodied in the Settlement Agreement attached hereto as **Exhibit 1**) and the Settlement Agreement are approved.

3.      Notwithstanding the Stipulation, pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and perform under the Settlement as embodied in the Settlement Agreement, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Agreement.

4.      The notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

5.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.     This Order shall bind the Parties, their estates and any successors or assigns, including without limitation any trustee, liquidating trustee, or other estate representative.

8.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE

# EXHIBIT 1

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **Celsius Network LLC** (referred to throughout this Agreement as "Employer") and **Bradley Condit** ("Employee").  The term "Party" or "Parties" as used herein shall refer to Employer, Employee, or both, as may be appropriate.

1.  **Recitals.**

This Agreement is made with reference to the following facts:

(a)     Employee was formerly employed by Employer**;**

(b)     Employee's last day of employment with Employer was September 27, 2021 ("Separation Date");

(c)     On or about June 28, 2022, Employee brought an action against Employer, which is pending as *Bradley Condit v. Celsius Network LLC and Yaron Shalem, in his individual and professional capacities*, United States District Court for the Southern District of New York Case No.: 22-cv-05452 (CS) (the "Lawsuit").  In the Lawsuit, Employee asserts claims for disability discrimination, hostile work environment, and failure to provide a reasonable accommodation; and

(d)     There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Employee and Employer have agreed, subject to the provisions in Paragraph 5 below, to resolve any and all claims, known and unknown, asserted and unasserted, which Employee has or may have against Employer and/or Employer's direct and indirect past, present, and future parent corporations, affiliates, shareholders, members, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employer organizations, representatives, successors, and assigns, and their respective current and former employees, attorneys, officers, owners, members, managers, shareholders, directors, and agents thereof, including but not limited to Yaron Shalem, both individually and in their business capacities, and their respective employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees", and each, a "Releasee") as of the date of execution of this Agreement.

2.     **Consideration/Indemnification for Tax Consequences and Liens.**

(a)     In consideration for Employee signing this Agreement, and complying with its terms and subject to the revocation language below, if any, Employer and/or its EPL insurance carrier agrees to pay the total gross sum of TWO HUNDRED THIRTY THOUSAND DOLLARS AND NO CENTS ($230,000.00) (the "Settlement Payment"), to be paid as follows:

(1)     One payment for alleged emotional distress, liquidated and/or other non-wage damages by check made payable to "Bradley Condit" in the amount of ONE HUNDRED FORTY-TWO THOUSAND SEVEN HUNDRED ELEVEN DOLLARS AND TWO

DocuSign Envelope ID: 24625696-772D-4C33-AA0A-8B7565279F9A

CENTS ($142,711.02), for which Employer shall issue an IRS Form 1099-MISC to Employee; and

(2)    One payment for alleged compensatory, wage-related damages by check made payable to "Bradley Condit" in the amount of FIFTY THOUSAND DOLLARS AND NO CENTS ($50,000), less lawful deductions and tax withholdings, for which Employer or its agents shall issue an IRS Form W-2 to Employee; and

(3)    One payment for alleged attorneys' fees and costs by check made payable to "Parker Pohl LLP" ("Employee's Counsel") in the amount of THIRTY-SEVEN THOUSAND TWO HUNDRED EIGHTY-EIGHT DOLLARS AND NINETY-EIGHT CENTS ($37,288.98), for which an IRS Form 1099-MISC shall be issued to each of Employee and Employee's Counsel;

(b)    Employer also agrees to pay JAMS for Employee's half of the mediation fee in connection with the Parties' June 12, 2023 mediation with Mediator Dina Jansenson.

(c)    Employee agrees that Employee is responsible for all applicable taxes, if any, in connection with the payments described in Paragraph 2(a) above. Employee understands and agrees that Employer is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors, and administrators (and Employee's legal representatives of every kind), agrees to promptly (as further detailed in this Paragraph 2(c)) indemnify and hold the Releasees harmless for the amount of any taxes, penalties, and/or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental tax authority's determination that Employer or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Employee or Employee's Counsel pursuant to Paragraph 2(a) of this Agreement. Employee agrees that Employee shall indemnify the Releasees for the full amount of such liability within fifteen (15) days after receipt of notice from Employer or any of the other Releasees of the assessment of such taxes, penalties, and/or interest.

(d)    Any settlement payments made by check set forth in this paragraph will be delivered to Employee's Counsel at 99 Park Avenue, Suite 1510, New York, New York 10016 via FedEx overnight delivery.

3.    **No Consideration Absent Execution of this Agreement.**

Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Employee's timely execution of this Agreement, Employee's Counsel's execution of the Stipulation and Order of Dismissal with Prejudice attached hereto as Exhibit "A" and Employee's execution of the Nondisclosure Agreement ("NDA") attached hereto as Exhibit "B," and the fulfillment of the promises contained herein and therein.

4.       **Disbursal of Settlement Funds/Dismissal of Action.**

(a)       The settlement payments described in Paragraph 2(a) will be sent within twenty-one (21) business days after the latest of the following have occurred:

(1)       counsel for Employer receives a copy of the Agreement, including the NDA attached hereto, each signed by Employee;

(2)       counsel for Employer receives an executed W-9 Form from Employee's Counsel;

(3)       counsel for Employer receives an executed W-9 Form from Employee;

(4)       counsel for Employer receives the executed Stipulation and Order of Dismissal with Prejudice attached hereto as Exhibit A, a fully-executed copy of which will be held by Employer's attorney and filed by Employer's attorney after confirmation of receiving the settlement payments set forth in Paragraph 2(a);

(5)       the revocation period following the signing of this Agreement has expired; and

(6)       this Agreement is approved by the United States Bankruptcy Court for the Southern District of New York presiding over the matter styled as: *In re: Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (the "Bankruptcy").

5.       **General Release, Claims Not Released and Related Provisions.**

(a)       **Dismissal of Claims.** Employee shall withdraw in writing and secure the dismissal with prejudice of all complaints, appeals, suits, actions, charges, claims, allegations and/or proceedings that he (and/or anyone acting on his behalf) has initiated against Employer and/or any of the Releasees, including but not limited to the Lawsuit.  Employee authorizes his counsel to execute the Stipulation and Order of Dismissal with Prejudice attached hereto as Exhibit "A" upon full execution of this Agreement and Employer's counsel shall file same with the Court for issuance and entry.

(b)       **Mutual General Release of All Claims.**  Employee and Employee's dependents, heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge each and all of the Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against any of the Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- Families First Coronavirus Response Act;
- The New York State Executive Law (including its Human Rights Law);
- The New York Equal Pay Law;
- The New York Non-Discrimination for Legal Activities Law;
- The New York Whistleblower Law;
- The New York wage and hour and wage payment laws and regulations;
- The New York Paid Sick Leave Law;
- The New York False Claims Act;
- The New York Criminal and Consumer Background Laws, N.Y. Gen. Bus. Law Sec. 380-B et seq.;
- The Non-Discrimination and Anti-Retaliation Provisions of the New York Workers' Compensation and the New York Disability Benefits Laws;
- The New York Labor Law;
- The New York State Worker Adjustment and Retraining Notification Act;
- The New York Occupational Safety and Health Laws;
- The New York Fair Credit Reporting Act;
- The New York Constitution;
- The New York City Administrative Code and Charter (including its Human Rights Law);
- The New York City Earned Sick Time Act;
- The New York City Temporary Schedule Change Law;
- The New York City Human Rights Law;
- The New York City Civil Rights Law;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract (written or oral, express or implied), tort, or common law;
- any prepetition or postpetition claims held against any debtor in connection with the Bankruptcy as defined herein; or
- any basis for recovering costs, fees, expenses or other monies incurred in these matters, including but not limited to attorneys' fees, CEL tokens, and crypto assets.

Page 4 of 11

Releasees knowingly and voluntarily release and forever discharge Employee and Employee's dependents, heirs, executors, administrators, successors, and assigns of and from any and all claims, known and unknown, asserted or unasserted, related to Employee's employment with Employer which Releasees have or may have against any of the foregoing as of the date of execution of this Agreement.

(c)     **Claims Not Released.**  Employee is not waiving any rights Employee may have to: (i) Employee's own vested or accrued employee benefits under Employer's qualified retirement benefit plans as of the Separation Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(d)     **Governmental Agencies.**  Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies from any of the Releasees.

(e)     **Collective/Class Action Waiver and Jury Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer and/or any other Releasee identified in this Agreement is a party.  Similarly, as to any such claim against any Releasee that is not otherwise released, Employee waives Employee's right to a jury trial subject to applicable law.

6.     **Limited Disclosure.**

Employee agrees that he will not disclose the terms or existence of this Agreement to any person or entity not a Party hereto without the express written consent of Employer. Notwithstanding the foregoing, Employee may disclose the terms of this Agreement to: (i) Employee's attorneys; (ii) Employee's spouse; (iii) Employee's accountant or tax professional; (iv) in response to an order of a court of competent jurisdiction or other legal tribunal or a subpoena issued under the authority thereof, which order or subpoena calls for such disclosure or testimony; (v) the IRS or any other state or federal tax agency for tax purposes; or (vi) as otherwise required by applicable law, rule or regulation.  This subsection shall not prohibit disclosure of the terms or existence of this Agreement to the extent necessary to enforce this Agreement through a legal proceeding, including for the avoidance of doubt to the United States Trustee for Region 2 (the "U.S. Trustee"), the official committee of unsecured creditors appointed by the U.S. Trustee, and in the United States Bankruptcy Court for the Southern District of New York in connection with the approval described in Section 18 herein.  If Employee receives notice of an order or subpoena

DocuSign Envelope ID: 24625696-7725-4C33-AA9A-8B7565278F9A

which may require disclosure pursuant to this Paragraph, he shall provide immediate notice to his counsel, M. Todd Parker, Esq. of Parker Pohl LLP, who will give immediate written notice to Ron Deutsch, Esq., General Counsel of Celsius at legal@celsius.network, to allow Employer a reasonable opportunity to protect its respective interests with respect to such disclosure. This confidentiality restriction shall not be construed to limit Employee's rights under the National Labor Relations Act.

Employee also agrees that he will not disclose the underlying facts and circumstances of the claims he asserted in the Action, or any other claim, the factual foundation for which involves discrimination, that he had, has or may have against any of the Releases, except that Employee may disclose such information to the same persons and under the same terms and conditions as provided for above in this Paragraph 6. Upon inquiry by any person not identified in this Paragraph 6 of the facts and/or circumstances underlying any such claims or causes of action, Employee can only state that the matter has been resolved and that he is unable to discuss the matter further.

This nondisclosure agreement applies to any claims or causes of action, including but not limited to any "claim, the factual foundation for which involves discrimination" within the meaning of New York General Obligations Law ("GOL") § 5-336. Employee acknowledges and agrees that the condition of confidentiality was, and still is, his preference. In a separate agreement attached hereto as Exhibit "B" that Employee signed and did not revoke his acceptance of, he expressed his voluntary preference for a nondisclosure agreement and requested that Employer agrees to enter into a nondisclosure agreement regarding the underlying facts and circumstances described in his Lawsuit. More than twenty-one (21) days has passed since Employee expressed his voluntary preference. The Parties hereby confirm that they have memorialized Employee's preference in "an agreement signed by all parties," as provided in GOL § 5-336, which is incorporated herein by reference and attached hereto as Exhibit "B." Employee acknowledges and agrees that confidentiality is a material condition of the Parties' Agreement.

7.    **Notification of Legal Process.**

Employee further agrees that, in the event Employee is subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony (in a deposition, court proceeding or otherwise) that in any way relates to Employee's employment with Employer, Employee will give immediate written notice of such request to his counsel, M. Todd Parker, Esq., of Parker Pohl LLP, who will give immediate written notice to Ron Deutsch, Esq., General Counsel of Employer at legal@celsius.network, to allow Employer a reasonable opportunity to protect its interests with respect to such disclosure. Nothing in this Agreement shall preclude Employee from responding truthfully to a valid subpoena that is properly served.

8.    **Acknowledgements and Affirmations.**

(a)    Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer and/or any other Releasee, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose

DocuSign Envelope ID: 24625696-773D-4C33-AA9A-8B756527BF9A

Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(a)      Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, CEL tokens, crypto assets, equity and/or benefits which are due and payable as of the date Employee signs this Agreement and Employee has been reimbursed for all necessary expenses and/or losses incurred by Employee within the scope of Employee's employment.  Employee further affirms that Employee has submitted expense reports for all necessary expenses and/or losses incurred by Employee within the scope of Employee's employment.  Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(b)      Employee further affirms that Employee has no known workplace injuries or occupational diseases.

(c)      Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and/or Employer's direct and indirect past and/or present parent corporations, affiliates, and/or subsidiaries and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.  Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit against Employer for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(d)      Employee further affirms that Employee has not reported internally to Employer any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, and Employee has not been retaliated against for reporting or objecting to any such allegations internally to Employer.

(e)      Employee shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with Employer or any Releasee under any circumstances because of, among other things, irreconcilable differences with Employer.  Employee agrees that, if Employee accepts employment or other work engagement with any Releasee in contravention of this Agreement, such Releasee may terminate Employee's employment or work engagement immediately and Employee shall have no claim against such Releasee, in law or equity, related to such termination (to the fullest extent permitted by law).

(f)      Employee affirms that all of Employer's decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other

DocuSign Envelope ID: 24625B606-772D-4C33-AA9A-8B7565278E9A

classification protected by law, except as alleged in the Lawsuit and which claims are expressly released in Paragraph 5 above.

(g)    Employee and Employer acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

(h)    Employee represents, warrants and acknowledges that there are bona fide legal arguments and disputes between the Employer and Employee, and that the consideration described in Paragraph 2 reflects a full compromise for any such claims, including claims under the Fair Labor Standards Act (or applicable state or local wage law) as of the date of execution of the Agreement. Accordingly, the Parties have not found it necessary for the United States Department of Labor (the "USDOL") or any other federal, state or local governmental department or agency to supervise or approve this Agreement, but the Parties agree that if a USDOL or other proceeding is required to approve this Agreement, the Parties shall seek approval and enforcement hereof, including filing a motion or request for approval of this settlement as full consideration for the asserted claim from a court of competent jurisdiction and/or the USDOL(or applicable state or local agency). Further, if any claim or portion thereof is not subject to release, to the extent permitted by law, Employee and Employee's heirs, executors, administrators, successors and assigns (and dependents, in the case of Employee), waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which any of the Releasees is a party. If any claim is not barred by this Agreement, all monies paid hereunder shall be set-off against any relief or recovery. Consistent with this Agreement, in the event any class or collective claim is brought against any of the Releasees, which includes or may include Employee and/or Employee's dependents, heirs, executors, administrators, successors and/or assigns, immediately upon learning of such Releasee's inclusion, Employee and/or Employee's dependents, heirs, executors, administrators, successors and/or assigns, as applicable, shall withdraw therefrom without obtaining or accepting any relief or recovery from any of the Releasees.

9.    **Return of Property.**

Except as provided otherwise in this Agreement or by applicable law, Employee affirms that Employee has returned all of Employer's property, documents, and any confidential information in Employee's possession and/or control.

Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises (if any) and that Employer is not in possession of any of Employee's property.

10.    **Non-Disparagement.**

Employee agrees to refrain from making, directly or indirectly, statements that are disparaging, defamatory and/or critical about any of the Releasees and/or Releasees' customers, suppliers, and/or vendors, including but not limited to communications on social media websites such as Facebook, Twitter, LinkedIn, or Glassdoor on blogs, by text or email or any other electronic means. This provision does not prohibit Employee from making truthful statements

about the terms or conditions of Employee's employment, or from exercising Employee's rights under the National Labor Relations Act, government whistleblower programs, or whistleblowing statutes or regulations or as may be required by applicable law.  Employer agrees that it will instruct Mrs. Trunshedda Ramos and Mr. Ron Deutsch that they are to refrain from making statements that are disparaging or defamatory about Employee.

## 11.    Medicare Secondary Payer Rules.

Employee affirms that as of the date Employee signs this Agreement, Employee is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests, as well as any insurance carrier providing benefits under Medicare Part C or Part D) determines that Medicare has an interest in the payment to Employee under this settlement, Employee agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Employee, (ii) cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Employee is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

## 12.    Governing Law and Interpretation.

This Agreement shall be governed and conformed in accordance with the laws of New York without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Employee agrees to immediately sign a replacement release provided by Employer that corrects the provisions declared or found unenforceable in this general release.

## 13.    Nonadmission of Wrongdoing.

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by any of the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

## 14.    Amendment.

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

15.    <u>**Entire Agreement.**</u>

This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties related to the subject matter hereof, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Employer and Employee, which shall remain in full force and effect according to their terms.  Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

16.    <u>**Counterparts and Signatures**</u>.

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument.  A signature made on an electronically mailed copy of the Agreement or a signature transmitted by electronic mail, or which is made electronically, will have the same effect as the original signature.

17.    <u>**Mutual Negotiation**</u>.

This Agreement was the result of negotiations between the Parties and their respective counsel.  In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

18.    <u>**Bankruptcy Court Approval**</u>

The Parties understand and agree that this Agreement is subject to and conditioned upon approval of the Parties' settlement in a final Order issued by the United States Bankruptcy Court for the Southern District of New York presiding over the Bankruptcy as defined above and captioned as: *In re: Celsius Network LLC, et al.*, Case No. 22-10964 (MG).

19.    <u>**Third Party Beneficiaries.**</u>

Any and all Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Employee or any party acting on Employee's behalf.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY EMPLOYEE'S COUNSEL M. TODD PARKER, ESQ. OF PARKER POHL LLP, AND SO DOING, ENTERS INTO THIS AGREEMENT.**

EMPLOYEE MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH EMPLOYEE SIGNS OR ENTERS INTO THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED.  ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO RON DEUTSCH, ESQ., GENERAL COUNSEL OF CELSIUS NETWORK LLC AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE RECEIVED BY MR. DEUTSCH OR HIS DESIGNEE WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS OR ENTERS INTO THIS AGREEMENT.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND DISCUSSION WITH HIS ATTORNEY M. TODD PARKER, ESQ. OF PARKER POHL LLP, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST ANY AND ALL RELEASEES.

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**BRADLEY CONDIT**                    **CELSIUS NETWORK LLC**

By: _Bradley W. Condit_              By: _Chris Ferraro_
                                     1315E92CCA4F4C6...
                                     Print Name: _Chris Ferraro_
                                     Print Title: _CRO, CFO and Interim CEO_
Print
Name: _Bradley W. Condit_            Date: _7/28/2023_

Date: _July 27, 2023_

4879-3155-3387, v. 1

Page 11 of 11