Honorable Martin Glenn;

I am a pro se creditor with exposure to Earn, Custody, and Loans. I am writing to bring to your attention a few concerns I have with the proposed plan. Specifically, my concerns pertain to the treatment of loans within the proposed plan, and I wish to outline a few points that I believe merit your consideration:

1. **Preference claims are being applied against loan principal, in addition to the existing haircut on collateral. This dual application of adjustments raises concerns about the equitable treatment of loans within the framework of the plan.**

During the mediation process, it was understood that the loan ad hoc group would be accorded treatment similar to that of Earn, albeit with certain negotiated concessions concerning the haircut. Regrettably, subsequent developments have indicated a discrepancy between this understanding and the actual intentions of the UCC. Specifically, there is an intention to pursue loan holders who withdrew their loan principal from the Celsius platform within 90 days of the filing for bankruptcy. This unexpected divergence in treatment raises questions of fairness and reasonableness, particularly in light of retail customers' lack of awareness regarding the impending bankruptcy of Celsius.

**Impact on Retail Customers:** It is imperative to acknowledge the predicament faced by retail customers who, at the time of their loan withdrawals, were unaware of the impending bankruptcy proceedings involving Celsius. Requiring these customers to retain their loan principal on the Celsius platform is arguably unjust, considering that the primary motivation for obtaining a loan in the first place is the loan principal itself.

In light of these concerns, I humbly request that you consider a reevaluation of the treatment of loans within the proposed plan. The principles of fairness, reasonableness, and equitable treatment should remain paramount in determining the appropriate course of action.

2. **Preference claims on loan principal are being applied at the price the loan was taken off Celsius but the haircut on collateral is applied at petition date**

The proposed plan currently outlines a haircut on loan collateral based on the petition date, while simultaneously attempting to reclaim loan principal based on crypto asset values at the time of withdrawal from the platform.

This bifurcated approach obscures the actual impact of the proposed percentages and raises concerns about their accuracy and fairness. As we are all aware, the cryptocurrency market has experienced significant depreciation in value during the 90 days leading up to Celsius' bankruptcy filing.

Given this context, it becomes evident that the combined effect of the haircut and the clawback mechanism would lead to an outcome that is both misleading and potentially harmful for loan holders.

To illustrate, this arrangement would effectively result in the recovery of nearly half of my total principal—comprising 27.5% from the time of withdrawal and an additional 35% stemming from the decline in cryptocurrency asset values between the withdrawal date and the bankruptcy filing. This, in turn, places me in an untenable financial situation where repayment of the loan principal becomes unfeasible.

**Unforeseen Tax Implications:**

The aforementioned arrangement carries far-reaching consequences, including severe tax implications. Such a scenario has the potential to create an unjust and unfavorable tax burden, ultimately leading to an unfavorable outcome wherein I may be left with minimal resources or even find myself indebted due to taxes—leaving me in a position that is neither equitable nor just.

In light of these concerns, I humbly urge for a thorough reconsideration of the approach taken to address preference claims on loans. The implications of the proposed plan, particularly in relation to the inaccurate portrayal of percentages and the subsequent financial repercussions, necessitate careful reconsideration to ensure fairness and prevent undue harm.

3. **Not recognising that loans were funded through Custody accounts and principle was deposited into (and withdrawn from) Custody accounts in the 90-days leading up to bankruptcy.**

In the 90 days prior to the bankruptcy petition date, loans were funded through Custody accounts, and the corresponding loan principal was properly deposited into these Custody accounts. Consequently, any principal transferred from Celsius during this 90-day period leading up to the bankruptcy declaration should be subject to the same treatment as Custody account holders, rather than being classified in line with Earn account transactions.

As it stands, my withdrawn loan principal from my Custody account is being clawed back from my existing funds in the same Custody account. However, had I not withdrawn the principal, it would have been fully available for withdrawal after the bankruptcy proceedings. This discrepancy raises questions about the fairness of treating such transactions and necessitates reconsideration of the applied approach.

**Equity and Fairness:**

In light of these observations, I kindly request your consideration of these nuanced details in the broader context of the proceedings. The principles of fairness, consistency, and equity must continue to guide the decision-making process.

Your commitment to justice and integrity in these proceedings is greatly appreciated. I hold the utmost confidence in your discernment and trust that your deliberations will lead to an outcome that upholds these vital principles.

Thank you for your time and thoughtful consideration.

Sincerely,
Travis Keeney