**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
         sam.hershey@whitecase.com
         jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email: mandolina@whitecase.com
         gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| Debtors. | ) (Jointly Administered) |

**OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO STAY RELIEF MOTIONS FILED BY JOSHUA COLE AND NICOLE BARSTOW**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively the "**Debtors**") files this omnibus objection to the *Motion for Relief of Automatic Stay and Declaration of Secured Creditor Status* [Docket No. 3048] filed by Joshua Cole (the "**Cole Motion**") and the *Motion to Object to the Debtor's Disclosure Statement, Motion to Join Joshua Cole's Secured Creditor and Relief From Automatic Stay Motion, and Competing Chapter 11 Plan Proposal* [Docket No. 3061] filed by Nicole Barstow (the "**Barstow Motion**" and, together with the Cole Motion, the "**Stay Relief Motions**" filed by the "**Putative Secured Creditors**"). The Committee respectfully states as follows.

## Preliminary Statement

1. Through the Stay Relief Motions, two account holders who participated in the Debtors' Earn program request that the Court declare they are secured creditors, grant them relief from the automatic stay, and order the Debtors to immediately distribute liquid cryptocurrency to them in an amount equaling 100% of their claims. *See* Cole Mot. ¶¶ 29-30; Barstow Mot. ¶ 3. In seeking this relief, the Putative Secured Creditors demand preferential treatment compared to the other 600,000 Earn account holders of the Debtors. While the Putative Secured Creditors propose an immediate, 100% recovery for themselves, their fellow Earn account holders are currently projected to receive a 67% recovery by the end of 2023.[2] The Putative Secured Creditors claim they are entitled to this preferential treatment because they are allegedly secured creditors of the Debtors.

2. That argument fails. There are no compelling reasons that would require the Court to deviate from its prior findings under the law of the case doctrine. This Court has already determined that Earn account holders are not secured creditors, and the Putative Secured Creditors

---

[2] *See Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "**Disclosure Statement**") at 8, 11.

2

identify no basis to reconsider that prior ruling. Second, the Putative Secured Creditors have not established cause for stay relief or explained why it is appropriate to grant them an immediate distribution of 100% of their claims, outside of the Plan confirmation and implementation processes. The Court should deny the Stay Relief Motions.

## Objection

### I. There Is No Basis to Reconsider the Court's Earn Opinion

3. In accordance with the law of the case doctrine, this Court should not deviate from its prior findings that Earn account holders are not secured creditors. On January 4, 2023, this Court issued a ruling determining that the Terms of Use between the Debtors and Earn account holders is an enforceable contract and that Earn account holders are not secured creditors of the Debtors. *See In re Celsius Network LLC*, 647 B.R. 631, 657-59 (Bankr. S.D.N.Y. 2023). On the first point, the Court explained that the Terms of Use are a valid clickwrap agreement under New York law. *Id.* at 652. Earn account holders are bound by the Terms of Use because they "affirmatively assented to the contract terms contained in the Terms of Use" when they signed up to use the Celsius platform, and they assented to modifications to the Terms of Use by continuing to use the platform after receiving notice of those modifications. *Id.* at 652-56. Next, the Court determined, based on the plain text of the Terms of Use, that Earn account holders "transfer[red] all ownership interest[s] to Celsius in the cryptocurrency assets deposited in Earn Accounts" and that "no ownership interest or lien in favor of the [Earn] Account Holders was intended." *Id.* at 657-58. The Court thus held that Earn creditors are not secured creditors and they "hold[] only an unsecured claim." *Id.*; *see also id.* at 659 (explaining that Earn account holders are not secured creditors because, under the Terms of Use, they granted "Celsius 'all right and title to such Eligible Digital Assets, including ownership rights.'").

4. "Under the law of the case doctrine, a court should adhere to its earlier decisions in

3

subsequent stages of litigation unless compelling reasons counsel otherwise." *In re Motors Liquidation Co.*, 604 B.R. 138, 149 (Bankr. S.D.N.Y. 2019) (Glenn, J.; internal citations and quotation marks omitted). "Compelling" reasons that may justify "deviat[ing]" from the law of the case include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *U.S. v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). Parties do not present a compelling reason for deviating from law of the case if they seek "reconsideration of issues that were decided—or that could have been decided—during prior proceedings." *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020). And "there is no obligation for a court to revisit a prior ruling on a question of law merely because certain parties did not participate in the earlier ruling." *In re Motors Liquidation*, 604 B.R. at 151.

5.  The Court's conclusion that Earn account holders are not secured creditors is law of the case and should not be disturbed. The Putative Secured Creditors do not identify a change in controlling law, new evidence, clear error, or manifest injustice that would justify deviating from the Court's prior ruling. Instead, they relitigate the merits of whether they are secured creditors with arguments that the Court could have rejected, or did reject, in the prior proceedings. Mr. Cole argues that he is a secured creditor because (a) he did not accept the version of the Terms of Use published on April 14, 2022, (b) Celsius did not immediately close his account as he requested prepetition, and (c) he then filed a UCC-1 financing statement with respect to the cryptocurrency allocated to his Earn account. Cole Mot. ¶ 5-14. But the facts informing those arguments were known to Mr. Cole long before the Court issued its ruling in January 2023. He could have asserted these arguments previously and did not, and it would be an inappropriate and inefficient use of judicial resources to relitigate them now. Doing so would also prejudice all other parties in interest who have relied on the Court's ruling when drafting, negotiating, and seeking

confirmation of the Plan and its treatment of Earn account holders.

6.  Separately, Ms. Barstow's conclusory assertion that she is a secured creditor repeats arguments she made in an objection to the motion that led to the Court's ruling that Earn account holders are unsecured holders.[3] The Court overruled Ms. Barstow's objection. [Docket No. 1832]. Since the Court has already "resolve[d] the issue," the Court should not permit further litigation now by the Putative Secured Creditors. *In re Motors Liquidation Co.*, 604 B.R. at 151.

7.  Even if the Court entertained the Putative Secured Creditors' arguments, they fail on the merits. Mr. Cole's first argument—that he did not accept Version 8 of the Terms of Use, published in April 2022—does not establish that he is a secured creditor. The Terms of Use have made clear that Earn account holders are unsecured creditors since at least September 30, 2020. On that date, Celsius published Version 5 of the Terms of Use. That version provided that Earn account holders are unsecured creditors by stating that account holders:

> grant Celsius . . . all right and title to [their] Digital Assets, including ownership rights, and the right, without further notice . . . to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets. . . .

*Declaration of Alexander Mashinsky Providing Terms of Use* [Docket No. 393] Ex. A-5 § 14; *see also In re Celsius Network LLC*, 647 B.R. at 658. Mr. Cole affirmatively assented to the Terms of Use when opening his Celsius account, and affirmatively assented to Version 5 of the Terms of

---

[3] *Compare* Barstow Mot. ¶ 3 ("The undersigned declares secured party status in the bankruptcy proceeding, and wholly objects to any discharge of any amount of her entitlement holder claim, and relief from the automatic stay to collect my assets"), *with Nicole Barstow's Motion to Allow Secured Creditor Status Amended Objection to Debtors Claim of Full Ownership and Title and Objection to the Sale of Assets in the Ordinary Business Course* [Docket No. 1505] ¶ 1 ("Creditors in the EARN program are secured creditors, and therefore have an ownership and security interest that has attached and been perfected in the assets within their Celsius Earn accounts for the reasons and law specified in the prior motions of the undersigned filed in regards to secured creditor status").

Use by continuing to use the Celsius platform after September 30, 2020. *Id.* at 655-56; *see also* Cole Mot. ¶¶ 1-2 (Mr. Cole admitting that he used the Celsius platform from October 2019 through April 2022).[4]

8. Moreover, Mr. Cole's claim that he is a secured creditor because he filed a UCC-1 financing statement is also wrong. "A security interest is valid and enforceable only if there is evidence of an intent to create or retain a security interest.'" *In re Lasercad Reprographics, Ltd.*, 106 B.R. 793, 799 (Bankr. S.D.N.Y. 1989); *see also In re Adoni Group, Inc.*, 530 B.R. 592, 600 (Bankr. S.D.N.Y. 2015) ("[T]here must be some written evidence of the debtor's intent to grant the security interest" and "a valid enforceable security agreement is required as a predicate to the filing of a financing statement"); Del. Code Ann. tit. 6, § 9-509 ("A person may file an initial financing statement . . . only if . . . the debtor authorizes the filing in an authenticated record. . . ."). Again, as this Court has found, the plain language of the Terms of Use makes clear "that no ownership interest or lien in favor of the Account Holders was intended." *In re Celsius Network LLC*, 647 B.R. at 658. Any UCC-1 filings on account of assets allocated to Earn Accounts are therefore ineffective, as they purport to perfect liens that the Debtors never agreed to grant and that do not exist.[5]

---

[4] Mr. Cole also complains that the Debtors failed to immediately return cryptocurrency to him upon his prepetition demand to close his account. Cole Mot. ¶¶ 10-12. That failure, at most, generates a breach of contract claim by Mr. Cole against the Debtors, which Mr. Cole can pursue if he filed a timely proof of claim and chooses to opt-out of the settlement of the Committee's class proof of claim against the Debtors. *See Order Approving Disclosure Statement* [Docket No. 3337] Ex. 10 (describing class claim settlement terms and opt-out procedure); *see also Memorandum Opinion and Order Sustaining Objections to Lift Stay Motion filed by Daniel A. Frishberg* [Docket No. 695] (stating that if Mr. Frishberg files a timely proof of claim, or if the Debtors' schedule his claim as undisputed, or, if disputed, his claim is allowed in the claims allowance process, Mr. Frishberg will receive a *pro rata* distribution).

[5] Ms. Barstow also filed a financing statement against Celsius Network LLC on October 28, 2022. That postpetition filing violated the automatic stay and is ineffective. 11 U.S.C. § 362(a)(4) (prohibiting "any act to . . . perfect . . . any lien against property of the estate" after the petition date). And, even if Mr. Cole had a security interest, it could likely be avoided entirely as he filed a financing statement for his purported security interest on June 18, 2022 (well within the preference period). *See* American Bankruptcy Institute, *Preferences and the Use of Revised Article 9 to Correct Perfection Defects*, LIEN ON ME (Sept. 2001) ("[E]ven though the security interest may have been created long before the preference period, the trustee will be able to avoid it if it was perfected during the

6

9. Accordingly, the Putative Secured Creditors identify no valid basis to disturb the Court's prior conclusion that they are unsecured creditors.

## II. Cause Does Not Exist to Lift the Automatic Stay

10. The Putative Secured Creditors also have not established cause to lift the automatic stay. *See* 11 U.S.C. § 362(d). Pursuant to that section, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The automatic stay "keeps creditors from 'dismembering' the estate while the bankruptcy case proceeds," *Lac du Flambeau Band of Lake Super. Chippewa Indians v. Coughlin*, 143 S. Ct. 1689, 1697 (2023), and "benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021). When determining whether cause exists to lift the stay, courts consider the totality of the circumstances, including "the interests of judicial economy and the expeditious and economical resolution of litigation" and the "impact of the stay on the parties and the balance of harms." *In re Celsius Network LLC*, 642 B.R. 497, 502 (Bankr. S.D.N.Y. 2022) (citing *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990)).

11. The Putative Secured Creditors seek an order lifting the automatic stay and requiring the Debtors to immediately distribute liquid cryptocurrency worth 100% of their claims. Cole Mot. ¶¶ 5, 29-30; Barstow Mot. ¶ 3. But the Putative Secured Creditors do not even attempt to argue that cause exists to lift the automatic stay. *See generally* Cole Mot. ¶¶ 1-30 (lacking any

---

preference period."); *Fidelity Fin. Servs. Inc. v. Fink*, 522 U.S. 211 (1998) (holding that a transfer of a security interest is perfected under section 547(c)(3)(B) on the date that the secured party has completed the steps necessary to perfect its interest).

7

discussion of whether cause exists to lift the stay); Barstow Mot. ¶ 3 (same). Instead, they appear to believe they are entitled to stay relief simply because they assert they are secured creditors. Cole Mot. ¶¶ 5, 29-30; Barstow Mot. ¶ 3. They are not. But, even if they were, status as a secured creditor does not automatically entitle a creditor to stay relief. Instead, secured creditors must establish cause for stay relief if they seek to foreclose on their collateral or to obtain the return of their collateral. *In re Ionosphere Clubs, Inc.*, 123 B.R. 166, 169 (S.D.N.Y. 1991).

12. Here, cause does not exist to lift the stay. Lifting the stay would not serve "the interests of judicial economy and the expeditious and economical resolution of litigation." *In re Celsius Network LLC*, 642 B.R. at 502. It would instead "invite other lift stay motions that will be filed by similarly situated claimants [who number in the hundreds of thousands], leading to an unnecessary drain on the Debtors'—and the Court's—resources." *Id.* That avalanche of copy-cat stay relief motions would also distract the Debtors, the Committee, and other case parties from confirming the Plan in October 2023 and commencing distributions hopefully in December 2023, inevitably delaying and diminishing recoveries for the Debtors' creditors. The Court should not invite this value-destructive, collateral litigation.

13. In addition, the balance of harms and interests of other creditors does not favor lifting the stay. The Putative Secured Creditors demand an immediate, 100% recovery on their claims even though other Earn account holders are projected to receive a 67% recovery beginning in December 2023. *See* Disclosure Statement at 8, 11. The Putative Secured Creditors make that demand even though their claims are similar, if not identical, to the claims of all other Earn account holders. It would be inequitable and it would violate the central purpose of the Bankruptcy Code— "equality of distribution" among similarly situated creditors—to allow the Putative Secured Creditors to receive an early, enhanced recovery compared to other Earn account holders. *Begier*

8

*v. I.R.S.*, 496 U.S. 53, 58 (1990). Instead, the stay should be maintained to protect the interests of all Earn account holders pending confirmation and consummation of the Plan.

14. The Stay Relief Motions should be denied.

### Reservation of Rights

15. The Committee reserves all of its rights to supplement or amend this Objection, to raise additional issues with the Stay Relief Motions at the hearing, and to present evidence at the hearing.

### Conclusion

16. For the reasons set forth herein, the Committee respectfully requests that the Court deny the relief requested in the Stay Relief Motions and grant such other relief as the Court deems appropriate under the circumstances.

[*Remainder of page intentionally left blank*]

Dated: August 31, 2023      Respectfully submitted,
      New York, New York

/s/ *Samuel P. Hershey*
**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: david.turetsky@whitecase.com
      sam.hershey@whitecase.com
      jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
      gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*