Mitchell Hurley
Dean Chapman
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Special Litigation Counsel to the*
*Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
In re:

CELSIUS NETWORK LLC, *et al.*,[1]

                Debtors.

-------------------------------------------------------------------X

: Chapter 11
:
: Case No. 22-10964 (MG)
:
: (Jointly Administered)
:

---

**NOTICE OF HEARING ON DEBTORS' APPLICATION FOR**
**ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363**
**(I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**FTI CONSULTING TECHNOLOGY LLC FOR EXPERT SERVICES**
**EFFECTIVE AS OF JANUARY 30, 2023 AND (II) GRANTING RELATED RELIEF**

---

**PLEASE TAKE NOTICE** that on September 1, 2023 the Debtors filed the *Debtors'*

*Application for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 363 (i) Authorizing the*

*Retention and Employment of FTI Consulting Technology LLC for Expert Services Effective as of*

*January 30, 2023 and (ii) Granting Related Relief* (the "Application").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Application will be held before the Honorable Martin Glenn, Chief United States Bankruptcy Judge (the "Court") on **October 2, 2023 at 2:00 p.m. (prevailing Eastern Time)** (the "Hearing"), as such Hearing may be adjourned from time to time.

**PLEASE TAKE FURTHER NOTICE** that at the direction of the Court, **this Hearing will take place in a hybrid fashion both in person and via Zoom for Government.** Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. eCourtAppearances need to be made **by 4:00 p.m (prevailing Eastern Time), the business day before the Hearing (*i.e.*, on September 29, 2023).**

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing remotely must connect to the Hearing beginning at least one hour prior to the scheduled start time of the Hearing. When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing. Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing. When seeking to connect for

either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect. Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance. Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing. Additional information concerning how to participate in the Hearing is available in the Court's Zoom Video Hearing Guide, available at https://www.nysb.uscourts.gov/zoom-video-hearing-guide.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Application (the "Objections") shall (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York; (iii) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (iv) be served so as to be actually received by **September 25, 2023, at 4:00 p.m. (prevailing Eastern Time)** by (a) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (at https://cases.stretto.com/celsius and (b) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

3

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: September 1, 2023
      New York, New York

                    AKIN GUMP STRAUSS HAUER & FELD LLP

                    By:   */s/ Mitchell P. Hurley*
                              Mitchell P. Hurley
                              Dean L. Chapman
                              One Bryant Park
                              New York, New York 10036
                              Telephone: (212) 872-1000
                              Facsimile: (212) 872-1002
                              mhurley@akingump.com
                              dchapman@akingump.com

                              *Special Litigation Counsel for Debtors and*
                              *Plaintiff Celsius Network Limited*

**Hearing Date: October 2, 2023, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: September 25, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Mitchell Hurley
Dean Chapman
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Special Litigation Counsel to the*
*Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
                                    :

In re:                               :    Chapter 11

                               :

CELSIUS NETWORK LLC, *et al.*,[1]   :    Case No. 22-10964 (MG)

                               :

                  Debtors.     :    (Jointly Administered)

                               :

-------------------------------------------------------------- X

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§
105 AND 363 (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FTI
CONSULTING TECHNOLOGY LLC FOR EXPERT SERVICES EFFECTIVE AS OF
JANUARY 30, 2023 AND (II) GRANTING RELATED RELIEF**

Celsius Network LLC and certain of its affiliates, as debtors and debtors in possession

(collectively, the "Debtors") hereby submit this application (the "Application") seeking entry of

an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to sections

105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors

to retain FTI Consulting Technology LLC ("FTI") for expert services in connection with *Celsius*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*Network Limited and Celsius KeyFi LLC v. Jason Stone and KeyFi, Inc.*, Case No. 22-01139-MG (Bankr. S.D.N.Y.) (the "Adversary Proceeding") and pay FTI's fees and expenses incurred in connection with the Adversary Proceeding. In support of this Application, the Debtors submit, and incorporate by reference herein the *Declaration of Bryce Snape in Support of Debtors' Application for Entry of an Order Pursuant to 11 U.S.C. Sections 105 and 363 (i) Authorizing the Retention and Employment of FTI Consulting Technology LLC for Expert Services Effective as of January 30, 2023, and (ii) Granting Related Relief* (the "Snape Declaration"), which is attached hereto as **Exhibit B**, and respectfully state as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 363.

## BACKGROUND

### A.     *General Background*

4.     The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than one

2

hundred countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

5.      On July 13, 2022, certain of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Initial Debtors").  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").[2]  The Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

6.      On December 7, 2022, each of the GK8 Ltd., GK8 UK Limited and GK8 USA LLC (collectively, the "GK8 Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of the GK8 Debtors' chapter 11 cases is set forth in the *Declaration of Christopher Ferraro, Director and Chief Financial Officer of the GK8 Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 1629].

7.      The Debtors are operating their business and managing their property as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Campagna Declaration.

Bankruptcy Rule 1015(b) [Docket Nos. 53 and 1648]. On July 27, 2022, the United States Trustee for Region 2 (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee"). On September 14, 2022, the Court entered an order directing the appointment of an examiner in the Initial Debtors' cases [Docket No. 820] (the "Examiner"). On April 5, 2023, the Court entered an order discharging the Examiner [Docket No. 2364]. On October 20, 2022, the Court entered an order approving the appointment of an independent fee examiner [Docket No. 1151] (the "Fee Examiner").

### B.    Akin Retention

8.    On August 8, 2022, pursuant to the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition Date [Dkt. No. 392] (the "Akin Retention Application"), the Debtors requested authorization to retain Akin Gump Strauss Hauer & Feld LLP ("Akin") as special litigation counsel in connection with Specified Litigation Matters (as defined in the Akin Retention Application). The services to be provided by Akin in connection with the Special Litigation Matters included Akin continuing legal work that it began in March 2021 for certain Debtors in connection with Celsius's claims against Jason Stone ("Stone") and his company KeyFi, Inc. ("KeyFi") with respect to certain alleged breaches of duty by Stone and KeyFi relating to staking and decentralized finance activities (the "Stone Dispute").

9.    On September 16, 2022, the Court entered an order authorizing the Debtors to retain Akin [Docket No. 843].

### C.    The Adversary Proceeding

10.    On August 23, 2022, Akin (on behalf of the Debtors) filed the Adversary Proceeding against Stone and Keyfi. Akin filed an amended complaint on October 13, 2022.

There has been extensive discovery, briefing and motion practice in the Adversary Proceeding, as well as a Temporary Restraining Order issued following a two-day trial.

### D.    FTI Engagement

11.    On January 30, 2023, Akin entered into a letter of engagement with FTI (the "Engagement Letter"), attached hereto as **Exhibit C**.  Pursuant to the Engagement Letter, Akin retained FTI as a consulting and potentially testifying expert in the Adversary Proceeding.  As an expert, FTI is to perform work under the direction of Akin in connection with the Adversary Proceeding.  These services include analysis of transactions relating to the Adversary Proceeding with the understanding that someone from FTI may be called upon to submit one or more expert reports and provide expert testimony, both in deposition and at trial.

12.    Under the Engagement Letter, FTI charges an hourly rate, plus reimbursement of out-of-pocket expenses incurred by FTI.  The hourly rates, subject to periodic adjustments, charged by FTI professionals under the Engagement Letter are as follows:

|  | Per Hour (USD) |
| --- | --- |
| Senior Managing Director | $990 |
| Managing Director | $860 |
| Senior Director | $800 |
| Director | $675 |
| Senior Consultant | $530 |
| Consultant | $420 |

13.    The Debtors request that FTI file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a quarterly basis.  Given the nature of the expert services (and that the Debtors should not be required to prematurely disclose the specific identify of experts in an adversary proceeding), the summary sheet will describe the services provided and identify the title, hourly rate, hours worked and fees

incurred, but will not identify the specific names of each individual.  For the avoidance of doubt, FTI has not been paid any amounts for services provided under the Engagement Letter.

### E.    Discussions with the U.S. Trustee

14.    Akin informed the U.S. Trustee that it had engaged FTI to assist as an expert with the Adversary Proceeding and the U.S. Trustee initially informed Akin that FTI would have to file a retention application in these chapter 11 cases.

15.    Akin provided the U.S. Trustee with legal support and precedent regarding why an expert whose role is limited, as it is here, to a specific adversary proceeding should not be required to file a retention application.  Indeed, many courts have found that expert witnesses are not "professional person[s]" within the meaning of Bankruptcy Code section 327(a).[3]  Akin engaged FTI to provide cryptocurrency-related, *i.e.*, non-bankruptcy related, services in the Adversary Proceeding (rather than the main chapter 11 cases).  As such, FTI's role is not central to the administration of the Debtors' chapter 11 cases.

16.    Despite this disagreement, Akin engaged in further discussions with the U.S. Trustee in an effort to resolve this issue consensually.  After further discussions, the U.S. Trustee informed Akin and FTI that the Debtors could instead file an application under Bankruptcy Code section 363 to retain FTI for its expert services in the Adversary Proceeding.  Although FTI does not believe a formal retention application is necessary, it agreed to do so here to resolve the U.S. Trustee's concerns.

---

[3]    *See, e.g.*, *In re Palm Coast, Matanza Shores Ltd. P'ship*, 101 F.3d 253, 257 (2d Cir. 1996) (quoting *In re Seatrain Lines*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) (internal quotation marks omitted)).

## RELIEF REQUESTED

17.    By this Application, the Debtor seeks the entry of an order authorizing the Debtors to (a) retain FTI in the Adversary Proceeding pursuant to the Engagement Letter and (b) pay the fees and expenses of FTI in accordance with the terms of the Engagement Letter.

## BASIS FOR RELIEF

18.    Bankruptcy Code section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." To approve the use of estate property under Bankruptcy Code section 363(b)(1), the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment.  See *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a 363(b) application must find a good business reason to grant such application); see also *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Ionosphere Clubs, Inc*., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason"); *In re MF Global Inc*., 535 B.R. 596 (Bankr. S.D.N.Y. 2015) (utilizing the "good business reason" standard).  Moreover, pursuant to Bankruptcy Code section 105(a), a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).

19.    The business judgment rule shields a debtor's management's decisions from judicial second guessing.  *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a Debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Once a debtor articulates a valid business justification, the law vests the debtor's decision to use

property outside of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), appeal dismissed, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under Bankruptcy Code section 363(b)(1).

20.     It is well established that courts are unwilling to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985) (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)). Whether or not there are sufficient business reasons to justify the use of estate assets depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071.

21.     The Debtors submit that using FTI for the proposed cryptocurrency expert services in the Adversary Proceeding (and the fees paid for such expert services) are proper exercises of the Debtors' business judgment, are in the best interests of their estates, and in the best interests of all stakeholders in these chapter 11 cases. First, the Debtors submit that the terms of the Engagement Letter are appropriate and typical for a company of the size and sophistication of the Debtors. Second, the Debtors will receive tangible benefits from the services provided by FTI pursuant to the Engagement Letter. FTI will assist Akin and the Debtors in connection with the Adversary Proceeding with crypto analysis and acting as an expert witness if needed. These services are enabling the Debtors to pursue a recovery against Stone and KeyFi, which is in the best interests of the Debtors, their creditors, and their estates.

22.     In the exercise of their business judgment, the Debtors determined that the fees and expenses provided for in the Engagement Letter are normal and customary for such services, and that the payment of those fees and expenses is reasonable and appropriate.  FTI and its experts have the requisite expertise and are qualified to assist the Debtors in connection with this matter. The Debtors respectfully submit that the retention of FTI and the payment of FTI's fees and expenses are proper under Bankruptcy Code section 363.

23.     Courts have held that a person employed other than to take a central role in administration of the bankruptcy estate is not a "professional" who must be formally retained under Bankruptcy Code section 327. *In re Cyrus II P'ship & Bahar Dev., Inc.*, No. 05-39757, 2008 Bankr. LEXIS 2317 (Bankr. S.D. Tex. July 31, 2008) (holding that patent, technology, and valuation experts employed in connection with an adversary proceeding to recover estate funds to develop valuations of defendants, assess financial investments made in a defendant and to opine on whether a defendant's management and operations were consistent with typical investor requirements were not central to the administration of the estate and, therefore, not subject to 327); *see also Elstead v. M. Nolden (In re That's Entm't Mktg. Grp., Inc.)*, 168 B.R. 226, 230 (N.D. Cal. 1994); *see also In re Heritage Home Group LLC*, No. 18-11736 (KG), 2018 Bankr. LEXIS 2944 (Bankr. D. Del. Sept. 27, 2018).

24.     Courts have also consistently held that experts are not "professionals" subject to retention under Bankruptcy Code section 327.  *In re Napoleon*, 233 B.R. 910, 913 (Bankr. D.N.J. 1999) (finding that expert witnesses are not "professionals" under section 327 because they do not "play an integral role in the administration of the bankruptcy case"); *In re Babcock Dairy Co. of Ohio, Inc.*, 70 B.R. 691, 692 (Bankr. N.D. Ohio 1987) (expert witness' relationship to the

administration of the debtor's estate is too tangential for the expert to be considered a section 327 professional).

25.     Here, Akin has not asked FTI to provide any services that could reasonably be described as central to the administration of the Debtors' bankruptcy cases.  Instead, FTI's services in this engagement will be limited to providing expert cryptocurrency services to consult with Akin and potentially act as an expert witness in the Adversary Proceeding.  As such, the retention of FTI and the payment of any fees and expenses related thereto are appropriate pursuant to Bankruptcy Code section 363.

26.     For the reasons set forth above, the Debtors submit that the retention of FTI in connection with these expert services, pursuant to the terms of the Engagement Letter, are an exercise of sound business judgment, in the best interest of the Debtors and their estates, and should be approved.

## **MOTION PRACTICE**

27.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application.  Accordingly, this Application satisfies Local Rule 9013-1(a).

## **NOTICE**

28.     The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) counsel to the Fee Examiner; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  A copy of this Application is also available on the

website of the Debtor's notice and claims agent at https://cases.stretto.com/celsius.  In light of the

nature of the relief requested, the Debtors submit that no other or further notice need be given.

## **NO PRIOR REQUEST**

29.     No prior request for the relief sought in this Application has been made to this or

any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the order granting the

relief requested herein and such other and further relief as this Court deems just and proper.

Dated: September 1, 2023       **AKIN GUMP STRAUSS HAUER & FELD LLP**
New York, New York

By: _/s/ Mitchell P. Hurley_____
        Mitchell P. Hurley
        Dean L. Chapman
        One Bryant Park
        New York, New York 10036
        Telephone: (212) 872-1000
        Facsimile: (212) 872-1002
        mhurley@akingump.com
        dchapman@akingump.com

        *Special Litigation Counsel to the Debtors and Debtors
        in Possession*

## **Exhibit A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                   :

In re:                                 :        Chapter 11
                                   :

CELSIUS NETWORK LLC, *et al.*,[1]    :        Case No. 22-10964 (MG)
                                 :

             Debtors.     :        (Jointly Administered)
                                 :

--------------------------------------------------------------- X

## ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363
## (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FTI
## CONSULTING TECHNOLOGY LLC FOR EXPERT SERVICES EFFECTIVE
## AS OF JANUARY 30, 2023 AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), pursuant to sections 105(a) and 363(b) of title 11 of the

United States Code (the "Bankruptcy Code"), for authorization to retain FTI Consulting

Technology LLC ("FTI") for expert services in connection with *Celsius Network Limited and*

*Celsius KeyFi LLC v. Jason Stone and KeyFi, Inc.*, Case No. 22-01139-MG (Bankr. S.D.N.Y.)

(the "Adversary Proceeding"), effective January 30, 2023, on the terms set forth in the Engagement

Letter annexed to the Application as **Exhibit C** and the Snape Declaration annexed to the

Application as **Exhibit B**, all as more fully described in the Application; and the Court having

jurisdiction to consider the Application and grant the requested relief in accordance with 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

*Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      Pursuant to Bankruptcy Code sections 105(a) and 363(b), the Debtors are hereby authorized to retain FTI to provide the Debtors with expert services in the Adversary Proceeding as more fully set forth in the Application, effective January 30, 2023, on the terms set forth in the Engagement Letter.

3.      The terms of the Engagement Letter as modified by the Application and this Order, are reasonable terms and conditions of employment and are hereby approved.

4.      To the extent that the express provisions of this Order are inconsistent with the provisions of the Application, the Snape Declaration, or the Engagement Letter, the provisions of this Order shall control.

5.      FTI shall file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a quarterly basis. Such

reports shall contain summary charts which describe the services provided and identify the title, hourly rate, hours worked and fees incurred, but will not identify the name of each individual.

6.      Notwithstanding the requirements of paragraph 5 above, the Debtors are authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by FTI for fees and expenses incurred in connection with FTI's retention.

7.      FTI shall disclose any and all facts that may have a bearing on whether FTI, its affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. The obligation to disclose identified in this paragraph is a continuing obligation.

8.      To the extent FTI receives any personally identifiable information (PII) or equivalent, FTI will confer with the Privacy Ombudsman appointed in these bankruptcy cases in advance of receipt, distribution, or otherwise of any PII, including, hut not limited to destruction or return of materials.

9.      Notwithstanding anything to the contrary in the Application or Engagement Letter, the indemnification provisions are hereby modified and restated in its entirety as follows:

(i)      All requests for payment pursuant to the Engagement Letters of indemnity, contribution or reimbursement for services other than those described in the Engagement Letters shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, contribution or reimbursement conforms to the terms of the Engagement Letters (as modified and restated by this Order) and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, contribution or reimbursement is sought; *provided, however*, in no event shall FTI be indemnified to the extent the Court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct on the part of FTI

(ii)     In the event that FTI seeks reimbursement from the Debtors for attorneys' fees in connection with a request for payment of indemnity, contribution or reimbursement pursuant to the Engagement Letters (as modified and restated by this Order), the

invoices and supporting time records from such attorneys shall be included in FTI's application (interim or final as the case may be) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

(iii)   FTI shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of FTI's counsel other than those incurred in connection with a request of FTI for payment of indemnity, contribution, retention of FTI and preparation of fee applications;

(iv)   In no event shall FTI be entitled to indemnification, contribution, or reimbursement of attorneys' fees or expenses to the extent the Court determines by final order that such claim for indemnity arose out of FTI's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct on the part of FTI.

10.   FTI will provide notice to the U.S. Trustee in advance of use or other utilization of third parties in connection with (a) data retrieval, storage, and transmission; (b) data center operations; and (c) products licensed by FTI for its delivery of services.

11.   This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Order, the Engagement Letter and/or the services provided by FTI.

Dated: _____, 2023
       New York, New York

                                  _____
                                  THE HONORABLE MARTIN GLENN
                                  CHIEF UNITED STATES BANKRUPTCY JUDGE

4

**<u>Exhibit B</u>**

**Snape Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                    :
In re:                                                              :    Chapter 11
                                                                    :
CELSIUS NETWORK LLC, *et al.*,[1]                                   :    Case No. 22-10964 (MG)
                                                                    :
                    Debtors.                                        :    (Jointly Administered)
                                                                    :
------------------------------------------------------------------ X

**DECLARATION OF BRYCE SNAPE IN SUPPORT OF DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363
(I) AUTHORIZING THE RETENTION AND EMPLOYMENT
OF FTI CONSULTING TECHNOLOGY LLC FOR EXPERT SERVICES
EFFECTIVE AS OF JANUARY 30, 2023 AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. section 1746, Bryce Snape declares as follows:

     1.     I am a managing director with FTI Technology LLC Consulting, Inc. ("FTI"). I

submit this declaration (the "Declaration") on behalf of FTI in support of the application (the

"Application") of the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), for entry of an order authorizing the employment and retention of FTI for expert

services in connection with the adversary proceeding captioned: *Celsius Network Limited and*

*Celsius KeyFi LLC v. Jason Stone and KeyFi, Inc.*, Case No. 22-01139-MG (Bankr. S.D.N.Y.)

(the "Adversary Proceeding") under the terms and conditions set forth in the Application and the

Engagement Letter. I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC
(8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius
Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius
Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121
River Street, PH05, Hoboken, New Jersey 07030.

Except as otherwise noted, I have personal knowledge of the matters set forth herein, and, if called as a witness, I would testify thereto.[2]

## Eligibility for Employment

2.      In preparation for the filing of the Application, FTI undertook a detailed review of its connections w7ith potential parties in interest in the Adversary Proceeding to determine whether any such connections might cause FTI to not be disinterested or to hold or represent an interest adverse to the Debtors with respect to the Adversary Proceeding. As part of its agreement with the U.S. Trustee, FTI and the U.S. Trustee agreed that FTI would search for and disclose its connections with: (i) the Debtors and their affiliates; (ii) the defendants in the Adversary Proceeding and their counsel and other professionals (to the extent known); (iii) the Debtors' directors and officers; (iv) the Debtors' and Committee's professionals; (v) the members of the Committee; (vi) the Fee Examiner and his professionals; (vii) the Bankruptcy Judges sitting in the Southern District of New York; and (viii) U.S. Trustee employees assigned to its Manhattan, NY office. A listing of the parties reviewed is reflected on **Exhibit A** to this Declaration. FTI's review, completed under my supervision, consisted of a query of the Exhibit A parties within an internal computer database[3] containing names of individuals and entities that are present or recent former clients of FTI.

3.      A list of relationships unrelated to the Debtors or the Adversary Proceeding that FTI identified during its review process is set forth on **Exhibit B** to this Declaration. FTI has provided, and could reasonably expect to continue to provide, services unrelated to the Debtors' cases for the various entities shown on Exhibit B. FTI's assistance to these parties has been related

---

[2]      Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

[3]      For the avoidance of doubt, FTI's computer database covers FTI Consulting Technology, LLC, as well as its parent(s), subsidiaries, and affiliates.

to providing various financial restructuring, litigation support, technology, strategic communications, and economic consulting services. To the best of my knowledge and except as otherwise disclosed herein, no services have been provided to these parties in interest that involve their rights in the Adversary Proceeding, nor does FTI's involvement in the Adversary Proceeding compromise its ability to continue such consulting services.

4.       In addition to the relationships disclosed on Exhibit B, FTI discloses that prior to the Petition Date, the Debtors (through counsel) hired FTI as a vendor to provide certain electronic data technology support services, a/k/a eDiscovery services (the "Technology Engagement"). For the avoidance of doubt, FTI is not providing advisory or investigative services to the Debtors in connection with the ministerial services it is providing under the Technology Engagement. In the Technology Engagement, FTI charges data collection fees, monthly hosting charges, user licensing fees, hourly rates, as well as charges for processing documents or other electronically stored information. As of the Petition Date, FTI was owed approximately $135,000 on account of the Technology Engagement. As part of filing the Application, FTI has agreed to waive such claim.

5.       As part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases or the Adversary Proceeding. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in these chapter 11 cases and/or the Adversary Proceeding in matters unrelated to the Debtors and the Adversary Proceeding. Based on our current

3

knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors' estates with respect to the Adversary Proceeding and none are in connection with the Debtors' chapter 11 cases or the Adversary Proceeding.

6.      FTI is not a "creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, neither I, nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, (a) is a creditor, equity security holder, or insider of the Debtors; (b) is or has been within two years before the Petition Date, a director, officer, or employee of the Debtors; or (c) hold or represent any interest materially adverse to the interests of the Debtors' estates with respect to the Adversary Proceeding. As such, to the best of my knowledge, and based upon the results of the relationship search described above and disclosed herein, FTI believes it is eligible to provide expert services to the Debtors in the Adversary Proceeding under Bankruptcy Code section 363.

7.      It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will file a supplemental declaration.

**Professional Compensation**

8.      FTI will seek payment for compensation on an hourly basis, plus reimbursement of actual and necessary expenses incurred by FTI, including legal fees related to the preparation of the Application and periodic reports of compensation to be filed with the Court. FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application. These hourly rates are adjusted periodically, typically on an annual basis. I believe that the fee structure as set forth in the

Application is reasonable and comparable to those generally charged by experts of similar stature to FTI for comparable engagements, both in and out of chapter 11.

9.    The Debtors request that FTI file with the Court and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a quarterly basis. Given the nature of the expert services (and that the Debtors should not be required to prematurely disclose the specific identify of experts in an adversary proceeding), the summary sheet will describe the services provided and identify the title, hourly rate, hours worked and fees incurred, but will not identify the specific names of each individual.

10.    To the extent FTI utilizes independent or third-party contractors or subcontractors (the "Contractors") in the provision of services to the Debtors, FTI will (i) pass through the fees of such Contractors at the same rate that FTI pays the Contractors and (ii) seek reimbursement for actual costs of the Contractors only. In addition, FTI will ensure that each Contractor will file a separate declaration evidencing its disinterestedness in these chapter 11 cases to the extent required by the Bankruptcy Code and Bankruptcy Rules.

11.    To the best of my knowledge, (a) no commitments have been made or received by FTI with respect to compensation or payment in connection with its proposed expert services to the Debtors in the Adversary Proceeding other than in accordance with the provisions of the Bankruptcy Code and (b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with the Adversary Proceeding.

**<u>No Duplication of Services</u>**

12.    The Debtors and FTI intend that FTI's services will be appropriately directed by the Debtors so as to avoid duplication of efforts among the other professionals retained by the Debtors in the Adversary Proceeding and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the Debtors' other professionals to avoid

5

duplication of services among professionals. I believe that the services to be provided by FTI will

complement and will not be duplicative of any services of the Debtors' other professionals.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2023.                    */s/ Bryce Snape*

## EXHIBIT A

**Listing of Parties-in-Interest Reviewed for Current and Recent Former Relationships**

**Current and Recent Former Entities Affiliated with the Debtors**

Celsius (AUS) Pty Ltd. (Australia)
Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp.
Celsius Mining IL Ltd.
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network (Gibraltar) Ltd.
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network IL Ltd. (Israel)
Celsius Network Inc.
Celsius Network LLC
Celsius Network Ltd. (UK)
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius Services CY Ltd (Cyprus)
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
GK8 Ltd (Israel)
GK8 UK Ltd.
GK8 USA LLC
KN Media Manager LLC

**Directors/Officers**

Albert, David
Alisie, Adrain
Ayalon, Amir
Ayalor, Amir
Barse, David
Barwick, Christy
Beaudry, Jeremie Robert
Bentov, Tal
Blonstein, Oren
Bodnar, Guillermo
Bolger, Rod
Carr, Alan Jeffrey
Cohen-Pavin, Roni
Denizkurdu, Aslihan
Deutsch, Ron
Dubel, John Stephen

Fan, Jiayi
Ferraro, Chris
Goldstein, Nuke
Holert, Patrick
Kleiderman, Shiran
Konduru, Subramaniam Vijay
Lawlor, Quinn
Leon, S. Daniel
Mashinsky, Alex
Mayerfeld, Mark
Nadkarni, Tushar
Nathan, Gilbert
Ramos, Trunshedda W.
Sabo, Ron
Schreiber, Adam
Shalem, Yaron
Sunada-Wong, Rodney
Tosi, Laurence Anthony
Van Etten, Frank

## Special Litigation: Adversary Proceeding Defendants & Professionals

Jason Stone
KeyFi, Inc.
Kyle Roch P.A.

## Committee Members

Andrew Yoon
Caroline G. Warren
Christopher Coco
Covario AG
ICB Solutions
Keith Noyes
Mark Robinson
Scott Duffy
Thomas DiFiore

## Debtors' Professionals

Akin Gump Strauss Hauer & Feld LLP
Alvarez & Marsal
Centerview Parnters
C Street Advisory Group
Deloitte & Touche LLP
Ernst & Young
Kirkland & Ellis LLP
Latham & Watkins LLP
Stretto

**Committee Professionals**

White & Case LLP
Elementus Inc.
Kroll Restructuring Administration LLC
M-III Partners LLC
Perella Weinberg Partners

**Other Professionals**

Cadwalader Wickersham & Taft LLP
Houlihan Lokey Inc.
Huron Consulting Services LLC
Jenner & Block LLP
Pillay, Shoba
Paul Hastings LLP
Togut, Segal & Segal
Troutman Pepper Hamilton Sanders LLP

**Bankruptcy Judges for Southern District of New York**

Chief Judge Martin Glenn
Judge Lisa G. Beckerman
Judge Philip Bentley
Judge James L. Garrity, Jr.
Judge David S. Jones
Judge Sean H. Lane
Judge John P. Mastando III
Judge Cecelia G. Morris
Judge Michael E. Wiles

**US Trustee Office**

Linda A. Riffkin
Victor Abriano
Susan Arbeit
Mark Bruh
Amanda D. Cassara
Shara Cornell
William K. Harrington
Benjamin J. Higgins
Nadkarni Joseph
Brian S. Masumoto
Ercilia A. Mendoza
Mary V. Moroney
Richard C. Morrissey
Alaba Ogunleye
Ilusion Rodriguez
Andrea B. Schwartz

Paul K. Schwartzberg
Shannon Scott
Sylvester Sharp
Tara Tiantian
Andy Velez-Rivera
Daniel Rudewicz
Madeleine Vescovacci
Valentina Vlasova
Annie Wells
Greg M. Zipes

**Fee Examiner and Professionals**

Delaware ADR LLC
Godfrey & Kahn, S.C.
Sontchi, Christopher S.

## EXHIBIT B

**Additional Listing of Parties-in-Interest Noted for Court Disclosure[4]**

| Name | Description | Relationship |
|------|-------------|--------------|
| Akin Gump Strauss Hauer & Feld LLP | Debtors' Professionals | Current Client |
| Alvarez & Marsal | Debtors' Professionals | Current Client |
| Cadwalader Wickersham & Taft LLP | Other Professionals | Current Client |
| Deloitte & Touche LLP | Debtors' Professionals | Current Client |
| Ernst & Young | Debtors' Professionals | Current Client |
| Godfrey & Kahn, S.C. | Fee Examiner and Professionals | Former Client |
| Houlihan Lokey Inc. | Other Professionals | Former Client |
| Jenner & Block LLP | Other Professionals | Current Client |
| Kirkland & Ellis LLP | Debtors' Professionals | Current Client |
| Latham & Watkins LLP | Debtors' Professionals | Current Client |
| Paul Hastings LLP | Other Professionals | Current Client |
| Troutman Pepper Hamilton Sanders LLP | Other Professionals | Current Client |
| White & Case LLP | Committee Professionals | Current Client |

---

[4]    Many of FTI's engagements involve situations where a particular law firm engages FTI or one of its affiliates to perform services for the end client (in furtherance of the law firm's representation of the end client).

**Exhibit C**

**Engagement Letter**



January 30, 2023

Mr. Mitch Hurley
Mr. Dean Chapman
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745

Re: *Celsius Network Limited and Celsius KeyFi LLC v. Jason Stone and KeyFi, Inc.*, Case No. 22-01139-MG (Bankr. S.D.N.Y.) (the "Adversary Proceeding")

Dear Dean and Mitch:

This letter will confirm the retention of FTI Consulting Technology LLC ("FTI") by Akin Gump Strauss Hauer & Feld LLP ("Counsel"), in connection with its representation of Celsius Network Limited and Celsius KeyFi LLC ("Client") in the above referenced matter (the "Engagement"). FTI will work under the direction of Counsel in this matter.

FTI's work, to be performed under the direction of Counsel, is to assist Counsel and Client with prosecution of the Adversary Proceeding, including by consulting with Counsel, providing counsel with analysis related to the Adversary Proceeding, and performing such other tasks as may be identified during the course of this Engagement with the understanding that someone from FTI may be called upon by Counsel to submit one or more expert reports and provide expert testimony, both in deposition and at trial, in the future (collectively, the "Services"). Counsel and FTI will discuss and mutually agree on which FTI professional would serve as the expert, with the understanding that any such professional will have qualifications and prior testimonial experience comparable to that of Steve McNew.

Charges for this assignment will be rendered monthly and will be billed at the following rates for calendar year 2023, plus any out-of-pocket expenses.

| Professional Title | Standard Rates per Hour |
|---|---|
| Consultant | $420 |
| Senior Consultant | $530 |
| Director | $675 |
| Senior Director | $800 |
| Managing Director | $860 |
| Senior Managing Director | $990 |

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents, independent contractors or subcontractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents, independent contractors, subcontractors and their respective employees.

FTI understands that Client will be solely responsible for payment of its fees and expenses. To facilitate such payment, FTI will submit invoices for its fees and expenses incurred in connection with this Engagement directly to Counsel, which will in turn seek the approval of the United States Bankruptcy Court for the Southern District of New York overseeing the Adversary Proceeding (the "Bankruptcy Court") to pay such fees and expenses in connection with Counsel's applications to the Bankruptcy Court seeking approval of its own fees and expenses. Counsel shall facilitate payment of FTI's fees and expenses reasonably promptly following receipt of Bankruptcy Court approval. All of the Parties agree that the sole responsibility for paying FTI's fees and expenses will rest with Client, and that Counsel shall not have any liability whatsoever for any amounts due under this Engagement.

At the request of either Counsel or Client, FTI agrees to provide a budget of estimated fees and expenses in connection with the Engagement.  FTI further agrees to work with Counsel and Client in good faith to adhere to the budget and provide reasonable notice to Counsel in the event it believes it will need to exceed the budget.

FTI's Standard Terms and Conditions (collectively with this letter, the "Engagement Contract"), which Counsel and Client accept and hereby agree to, is attached.

If this Engagement involves, or is expected to involve, the processing of (i) personal data as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, and/or (ii) personal information as governed by the California Consumer Privacy Act, the terms of the FTI Consulting Data Protection Addendum (the "DPA") shall apply to this Engagement and it shall form an integral part of this Engagement Contract. In the event of a conflict between the terms of this Engagement Contract and the terms of the DPA, the terms of the DPA shall prevail in relation to the processing of such personal data or personal information. If such personal data or personal information is to be processed in connection with this Engagement, you shall notify us in writing before any personal data or personal information is disclosed to us and we shall provide you with a copy of the DPA for signature. In addition, if this Engagement will involve processing, analysis, management or transformation of data, in order to enable FTI to provide continuous support, such personal data may be processed by those FTI teams or Affiliates (as defined below) in the United States, United Kingdom, India, and/or Australia (the "Third Countries"). By your signature below, you consent to (a) the FTI Affiliates and teams processing your personal data in the Third Countries on your behalf, and (b) FTI's transfer of such data to those FTI Affiliates, which will be deemed a Restricted Transfer

2

as defined in Section 6 of the DPA between you or your relevant Affiliate and FTI or its relevant Affiliate. Notwithstanding the foregoing, your personal data will remain primarily hosted in the United States unless otherwise agreed between FTI in writing and our Affiliates or teams in the Third Countries. For purposes of this Engagement Contract, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise. Counsel may cancel this Engagement at any time within three days written notice, provided only that Counsel agrees to seek payment, to the extent necessary, of all professional fees incurred by FTI prior to such cancellation. FTI acknowledges that Counsel and Client will be irreparably harmed by, and will incur significant monetary damages as a result of, FTI's premature cancellation of the engagement. Consequently, FTI agrees not to cancel this engagement without the prior written consent of Counsel (subject to the below exception), which consent shall not be unreasonably withheld.

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Potentially Interest Parties. As you may be aware, FTI is regularly retained by the institutions and law firms who may be Potentially Interested Parties. However, such representations are in matters unrelated to this Engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

We have informed you that that (i) our parent entity, FTI Consulting, Inc. ("FTI Inc.") has been engaged as financial advisor to the Official Committee of Unsecured Creditors (the "FTX Committee") of FTX Trading Ltd. and its affiliated debtors (collectively, the "FTX Debtors")[1] and (ii) Steve McNew is a member of the engagement team assisting the FTX Committee. We have also informed you that FTI has been engaged as financial advisor to the Official Committee of Unsecured Creditors (the "Voyager Committee") of Voyager Digital Holdings, Inc. and its affiliated debtors (collectively, the "Voyager Debtors")[2] and (ii) Steve McNew is a member of the engagement team assisting the Voyager Committee. Client and Counsel agree that FTI, Inc.

---

[1] Case No. 22-11068 (Bankr. D. Del.).
[2] Case No. 22-10943 (Bankr. S.D.N.Y.).

may disclose the existence of this Engagement in its employment application for the FTX Committee (or related supporting documents or supplements) and in a supplemental declaration in support of FTI's employment application for the Voyager Committee as required under Bankruptcy Rule 2014.

At this time, we are not aware of any connections between the defendants in the Adversary Proceeding and the FTX Debtors or the Voyager Debtors. If we subsequently identify any connections between the defendants in the Adversary Proceeding and the FTX Debtors or Voyager Debtors, we will promptly inform Counsel and determine whether any such connections create a conflict of interest between the Services being provided under this Engagement and the services being provided to the FTX Committee or Voyager Committee, as applicable. If we identify any potential or actual conflicts of interest involving the FTX Debtors or the Voyager Debtors we may, for conflict reasons, decide that we are unable to continue providing the Services under the Engagement. In such an event, we will promptly notify Counsel in writing, which may be via email, and Counsel agrees that Counsel's written consent shall not be required to terminate the Engagement upon receiving such notification.

We very much appreciate this opportunity to work with you. If the foregoing is in accordance with your understanding, please sign this letter in the space provided and return this document to us.

Very truly yours,

FTI Consulting Technology LLC

By: _Steven S. McNew_____

Name: Steven S. McNew

Title:   Senior Managing Director


Accepted by:   [Counsel Name]

By: _____

Print Name: _Dean Chapman_____

Title: _Partner_____

Date: _1/31/23_____


Name and Address of person designated to receive and approve invoices related to this Engagement:

Name: _Dean Chapman_____

Address: _Akin Gump_____

_One Bryant Park, NY, NY 10036_

Phone: _212-872-8095_____

Email: _dchapman@akingump.com_____

**FTI policy requires that we have contact information on file for the party ultimately responsible for payment (Client) to FTI. If this person is different than the person designated above to receive and approve invoices, please complete:**

Name: Ron Deutsch (GC)

Address: Celsius Network LLC
121 River Street, PH05, Hoboken, NJ

Phone: _____

Email: ron.deutsch@celsius.network

**Does Client require invoices to be submitted via an electronic billing system? Yes:____ No: X**

*If yes, which billing system?* _____

6

### FTI Standard Terms and Conditions
*Re: Celsius Network Limited and Celsius KeyFi LLC v. Jason Stone and KeyFi, Inc.*

FTI reserves the right to amend its rates annually, and FTI will advise Client promptly if a rate adjustment is being made. Further, if any work needs to be performed by FTI personnel in international offices, such work will be billed at the standard rates set forth for the specific international office. If an engagement is completed in less than four weeks it will be billed in its entirety upon completion. If an engagement is longer than four weeks, charges for the engagement will be rendered monthly and will be based upon relevant unit fees and the level of staff and time required to complete the assignment, plus any out-of-pocket expenses.

All payments will be due upon approval of the invoice by the Bankruptcy Court. Depending on certain state and/or municipality regulations, FTI may be required to collect sales and use tax on certain of FTI's products and services. Alternatively, client shall provide documentation of direct pay certification or exemption from such taxes. For your information and use, FTI Consulting Technology LLC's Taxpayer Identification Number is 02-0736098. In the event Client disputes any of the fees or expenses on a specific invoice, the Client shall notify FTI within twenty (20) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the twenty (20) day period, the Client shall have waived its right to dispute such invoice. Invoices with disputed line items shall be paid in full, excepting such disputed line items.

Without limiting FTI's other rights and remedies, in the event any payment is not paid by Client within thirty (30) days of the date of approval by the Bankruptcy Court, then interest shall accrue, from the thirty-first (31st) day until payment in full is received, at the rate of one and one half (1 ½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Client under this Agreement. In addition to any other remedies set forth above, and any other remedies available at law, FTI reserves the right to halt further services until payment is received on past-due invoices. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony and/or trial testimony, though FTI acknowledges this may not be possible given Bankruptcy Court approval of invoices must be sought and obtained prior to payment. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses which may be associated with the collection of unpaid invoices.

FTI's fees and expenses are not contingent upon the final results, nor does it guarantee any result or resolution in connection with this Engagement. FTI will meet with Counsel regularly to discuss the ongoing work and associated fees, and FTI will rely on Counsel to communicate these items to the Client. Client and Counsel understand that FTI has not promised or stated what its opinions might be. Client and Counsel further understand that FTI will reach such opinions and conclusions in its full and complete discretion without regard to the impact on the Adversary Proceeding.

The parties hereto agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this Engagement Contract. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. FTI understands that the confidential information, as well as its work product and files may become subject to discovery; however, until such materials are sought by subpoena or other process, they will be maintained by FTI as confidential. It is agreed that those materials and all other working papers and other documents prepared by FTI pursuant to this Engagement will be maintained as confidential materials and will not be disclosed to third parties without Counsel's consent, except as may be required by law, regulation, or judicial or administrative process. Unless prohibited by law, FTI agrees to notify Counsel promptly of any of the following events:  (a) a request by anyone to examine, inspect, or copy such documents or records; or (b) any attempt to serve, or the actual service of, any court order, subpoena, or summons upon FTI that requires the production of such documents or records. Confidential information shall not include information that is or becomes generally available to the public other than as a result of a breach of a non-disclosure obligation hereunder, is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information, or is or has been independently developed by the recipient. In the event FTI is requested pursuant to a subpoena or other legal process to produce any documents or to provide testimony relating to an Engagement for Client in judicial or administrative proceedings to which FTI is not a party, Client shall reimburse FTI at standard billing rates for its professional time and expenses, including reasonable attorneys' fees, incurred in preparing for and responding to requests for documents and providing testimony. Notwithstanding anything stated herein, FTI acknowledges and agrees that there is a Confidentiality Agreement and Stipulated Protective Order in place in the Adversary Proceeding [ECF No. 46] (the "Protective Order"); that it will abide by the terms of the Protective Order; and that the terms of the Protective Order regarding confidentiality and non-disclosure govern in the event of any inconsistency with the terms of this Engagement Contract.

Any advice given or report issued by FTI is provided solely for Client's use and benefit and only in connection with the purposes in which the services are provided including but not limited to all Permitted Disclosures (defined below). Except for Permitted Disclosures (defined below), Client shall not provide any advice given or report issued by FTI to any third party without FTI's prior written consent, which consent shall not be unreasonably withheld or delayed but may be conditioned on the recipient executing a third party release letter in the form provided by FTI. "Permitted Disclosures" means any disclosure that is required by law or legal process or is made in connection with the services or the related investigation, including disclosures in connection with related investigations, remediation, dispute or litigation. Client further agrees that in connection with a Permitted Disclosure, Client will not reference or identify FTI as the service provider, unless required by law or legal process. In no event shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

8

The Client shall notify FTI in writing if Client delivers to FTI any personally identifiable information or equivalent and the Client shall instruct FTI if any additional measures (i.e. data transfer protections) are required. Upon written notice to the Client, FTI will, at its option, destroy or return to the Client all original materials provided by the Client and/or Counsel to FTI, and all materials created by FTI specifically for the Client as a result of an engagement; provided, however, that with respect to back-up media, such materials will be overwritten or destroyed, subject to FTI's normal schedule for overwriting and destruction, as the case may be.

Client and Counsel agree that FTI shall not be liable under this Engagement Contract to the Client, Counsel, or their respective successors, assigns or affiliates for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. In no event shall FTI be liable for punitive or consequential damages of any kind. The Client shall indemnify FTI, and hold FTI harmless against any and all claims by third parties for losses, damages or liabilities, including reasonable attorneys' fees and expenses ("Losses"), arising in any manner out of or in connection with this Engagement, unless it is finally judicially determined that such Losses resulted from the gross negligence or willful misconduct of FTI. The terms of this paragraph shall survive the termination of this Engagement Contract and shall apply to any controlling person, director, officer, employee or affiliate of FTI.

The Client agrees to promptly notify FTI if it extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that it will pay FTI a cash fee, upon hiring, equal to 100% of the aggregate current annualized compensation (both cash and non cash consideration), including any guaranteed or target bonus, to be paid to FTI's former principal or employee that the Client or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In connection with the provision of services hereunder, and to provide the Client with 24 hour support, FTI may utilize the services of FTI personnel outside of the United States. FTI may utilize the services of third parties in connection with (a) data retrieval, storage and transmission; (b) data center operations; and (c) products licensed by FTI for its delivery of services.

The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

The United States District Court for the Southern District of New York, the Bankruptcy Court, and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, New York City (collectively, the "Courts"), shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction. In the event that

9

differences concerning the services or other matters arising hereunder should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense, Counsel, the Client and FTI irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to the Engagement Contract.

The Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Client further agrees that it shall not, and it shall instruct its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. The Client shall promptly notify FTI in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the Client or its directors, officers, employees or agents.