UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                                                              NOT FOR PUBLICATION

      CELSIUS NETWORK LLC, *et al.*,                  Chapter 11

                                                        Case No. 22-10964 (MG)

                               Debtors.

------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER DENYING JOSHUA B. COLE'S MOTION FOR
RELIEF OF AUTOMATIC STAY AND DECLARATION OF SECURED CREDITOR STATUS**

*A P P E A R A N C E S:*

JOSHUA B. COLE
*Pro se creditor*

NICOLE BARSTOW
*Pro se creditor*

KIRKLAND & ELLIS LLP
*Attorneys for the Debtors*
601 Lexington Avenue
New York, NY 10022
By:    Joshua A. Sussberg, Esq.

300 North LaSalle Street
Chicago, Illinois, 60654
By:    Patrick J. Nash Jr., Esq.
        Ross M. Kwasteniet, Esq.
        Christopher S. Koenig, Esq.
        Dan Latona, Esq.

WHITE & CASE LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1221 Avenue of the Americas
New York, NY 10020
By:    David M. Turetsky, Esq.
        Samuel P. Hersey, Esq.
        Joshua D. Weedman, Esq.

111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606
By:    Michael C. Andolina, Esq.
       Gregory F. Pesce, Esq.
       Gabriela Z. Hensley, Esq.

Southeast Financial Center
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
By:    Keith H. Wofford, Esq.

555 South Flower Street
Suite 2700
Los Angeles, California 90071
By:    Aaron E. Colodny, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested motion ("Cole Motion," ECF Doc. # 3048) of *pro se* individual Joshua B. Cole and the related motion and joinder ("Barstow Motion/Joinder," ECF Doc. # 3061 and, together with the Cole Motion, the "Lift Stay Motions") of *pro se* individual Nicole Barstow. The Cole Motion seeks entry of an order to lift the automatic stay "for cause" and to recognize Mr. Cole's status as a secured creditor via "his security interest perfected by the prepetition filing of UCC-1 financing statements with the offices of the Secretaries of State for Delaware and Florida." (Cole Motion ¶ 5.) The Barstow Motion/Joinder joins in the Cole Motion, also seeking entry of an order declaring Ms. Barstow's "secured party status in the bankruptcy proceeding" via a UCC-1 financing statement as well as relief from the automatic stay. (Barstow Motion/Joinder ¶ 3.)[1]

---

[1] The Barstow Motion/Joinder also objects to the Debtors' disclosure statement and proposes an alternative "illiquid recovery distribution" plan. (Barstow Motion/Joinder ¶¶ 1, 2, 5.) Ms. Barstow's objection and proposal were previously addressed as part of the disclosure statement hearing held on August 14, 2023 during which the Court approved the Debtors' disclosure statement and overruled objections not otherwise specifically addressed.

On August 31, 2023, each of the Debtors and the Official Committee of Unsecured Creditors (the "Committee") lodged objections to the Lift Stay Motions, opposing the relief sought. (*See Debtors' Objection to Motion for Relief from Automatic Stay and Declaration of Secured Creditor Status* (the "Debtors' Objection"), ECF Doc. # 3408; *Omnibus Objection of the Official Committee of Unsecured Creditors to Stay Relief Motions Filed by Joshua Cole and Nicole Barstow* (the "Committee's Objection"), ECF Doc. # 3407.)

Mr. Cole and Ms. Barstow are two of approximately 600,000 holders of Earn accounts ("Earn Accounts" and holders of Earn Accounts, the "Earn Account Holders") in the Earn program ("Earn Program" and any assets and proceeds thereof, the "Earn Assets") of the above-captioned debtors and debtors-in-possession (the "Debtors") as of July 15, 2022 (the "Petition Date"). (Cole Motion ¶ 6; *Order Denying Nicole Barstow's Motion to Be Considered a Secured Creditor* (the "Barstow Order"), ECF Doc. # 1832; Committee Objection ¶ 1.) At its core, the relief sought in the Lift Stay Motions returns the Court to the gating question of who owns the cryptocurrency assets deposited in Earn Accounts as of the Petition Date that was first posed to this Court approximately one year ago. Over the course of this past year, however, this Court has addressed the matter—on multiple occasions no less—and its prior rulings resolve the issues that Mr. Cole and Ms. Barstow identify in their respective motions. The matter is well-settled—cryptocurrency assets deposited in Earn Accounts as of the Petition Date are property of the

---

(*See Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, And (VI) Granting Related Relief*, ECF Doc. # 3337; *Debtors' Omnibus Reply in Support of the Adequacy of the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates* at 38–39, ECF Doc. # 3225 (summarizing and responding to Ms. Barstow's objection); Tr. of 8/14/23 Hr'g at 101:14–17 (noting that any disclosure statement objections "not specifically addressed or ruled on . . . [are] overruled"); *id.* at 127:25–128:2 ("I've overruled any objections that haven't otherwise been addressed.").) Accordingly, this decision addresses only Ms. Barstow's joinder to the Cole Motion and her request for relief from the automatic stay and to be deemed a secured creditor in the Debtors' Chapter 11 cases.

3

Debtors' estates and Earn Account Holders hold unsecured claims against the Debtors. Mr. Cole and Ms. Barstow have not offered the Court any basis to deviate from its prior rulings. Accordingly, for the reasons discussed below, the Court **DENIES** the Lift Stay Motions.

### I.    BACKGROUND

#### A. Joshua B. Cole

Mr. Cole's relationship with the Debtors commenced on October 13, 2019, during which he deposited and withdrew cryptocurrencies from his Earn Account. (Cole Motion ¶ 6.) As of July 12, 2022, Mr. Cole's Earn Account contained a balance of $447,451.39. (*Id*., Ex. E.) According to the Debtors' records, Mr. Cole accepted Version 6 of the Debtors' Terms of Use (generally, "Terms of Use" and each version, "Terms Version [Version No.]") on July 29, 2021, which serves as the last version of the Terms of Use that Mr. Cole accepted.[2] (Debtors' Objection ¶ 6.) Mr. Cole states that he did not accept the April 14, 2022 update to the company's Terms of Use ("Terms Version 8") on grounds that the update "materially modified the original contract terms [he] agreed to." (Cole Motion ¶¶ 7–8.)

Following the freeze on Earn Account withdrawals on June 12, 2022 that prevented Earn Account Holders, including Mr. Cole, from accessing their Earn Accounts, Mr. Cole sent "demand notices" to the company in advance of the Petition Date. (*See id*. ¶¶ 10–13.) Mr. Cole indicates that his multiple attempts to contact the Debtors and obtain access to his Earn Account in advance of the company's Chapter 11 filing went unanswered. (*See id*. ¶ 13 (stating that "Celsius has refused or failed to communicate with Cole and fulfill its obligation to allow him to withdraw his funds and close his account").) In addition, on June 18, 2022, Mr. Cole also filed

---

[2]    The Committee believes Mr. Cole accepted an earlier version of the Terms of Use, stating in its objection that Mr. Cole had "affirmatively assented to Version 5 of the Terms of Use by continuing to use the Celsius platform after September 30, 2020." (Committee Objection ¶ 7.) Whether Mr. Cole accepted Terms Versions 5 or 6 makes no difference to the outcome here.

4

UCC-1 financing statements in the states of Delaware and Florida before the commencement of these Chapter 11 cases, which he argues gives him secured creditor status.  (*Id*. ¶¶ 5, 14.)

### B. Nicole Barstow

Ms. Barstow is a fellow Earn Account Holder.  In addition to the Barstow Motion/Joinder, Ms. Barstow previously filed three other motions in these cases (collectively, the "Prior Barstow Motions"), seeking a determination that she is a secured creditor of the Debtors.  (*See Motion to Consider All USDC Investors and Account Holders of Celsius Network, LLC as Secured Creditors Instead of Unsecured Creditors*, ECF Doc. # 950; *Amended Motion to Include a Request that All Unaccredited Investors in Celsius Network, LLC to be Allowed to Have Priority Unsecured, Rather than General Unsecured, Creditor Status for the Reasons Outlined in this Motion, and Response to the Objections of the Debtor*, ECF Doc. # 1276; *Motion to Allow Secured Creditor Status And Deny Debtors' Request To Deem My Loan to Them as Unsecured, and Deny the Debtors the Ability to Sell My Assets in the Earned Program "Free and Clear" of the Lien/Security Interest of a Secured Party*, ECF Doc. # 1505.)  On January 6, 2023, for reasons discussed in greater detail below, this Court entered an order denying the Prior Barstow Motions.  (*See* Barstow Order, ECF Doc. # 1832.)

### C. The Movants' Requested Relief

Mr. Cole seeks entry of an order (i) "granting him relief from the automatic stay . . . to permit him to proceed under law and for such other and further relief to which he may be entitled [to]" and (ii) "demanding [that] the Debtor[s] . . . schedule him as a secured creditor under the [Debtors'] Plan and recognize his [perfected] security interest."  (Cole Motion ¶ 5.)  In support of this requested relief, Mr. Cole argues that cause exists to grant him relief from the automatic stay to allow him to access and close his Earn Account and "withdraw his financial assets in the

5

ordinary course of business." (*Id.* ¶¶ 5, 29, 30.) Moreover, Mr. Cole further argues that he is a secured creditor in these proceedings due to a "valid security entitlement" by virtue of a security interest he purportedly possesses in his Earn Account that was perfected by the prepetition filing of UCC-1 financing statements in Delaware and Florida. (*Id.* ¶¶ 25, 30.)

Along a similar vein, Ms. Barstow joins in the Cole Motion, declaring that she too maintains "secured party status in the bankruptcy proceeding" and seeks "relief from the automatic stay to collect [her] assets" for "all the reasons stated [in] the [Cole Motion]." (Barstow Motion/Joinder ¶ 3.) Like Mr. Cole, Ms. Barstow asserts that she is a secured creditor by virtue of a UCC-1 financing statement she filed postpetition on October 28, 2022. (*Id.* ¶ 3(B); Debtors' Objection ¶ 7; Committee's Objection, at 6 n.5.)

### D. The Debtors' Objection & the Court's Prior Rulings

The Debtors argue that the Court has already considered and rejected each of Mr. Cole's arguments in prior rulings, which the Debtors assert are equally applicable here. (Debtors' Objection ¶¶ 4, 7.) The Debtors assert that that Mr. Cole has failed to sufficiently distinguish his case from that of others whose requests for similar relief were ultimately denied, thereby warranting denial in this instance as well. (*Id.* ¶ 4.) Finally, the Debtors also argue that Mr. Cole has failed to articulate any basis for the stay to be lifted for cause. (*Id.*)

The Debtors cite two of the Court's prior decisions in these Chapter 11 proceedings. First, in a decision entered on September 1, 2022 (the "Frishberg Lift Stay Opinion"), this Court denied the request of Daniel A. Frishberg, a fellow Earn Account Holder, to lift the automatic stay on grounds that he failed to establish "cause." *In re Celsius Network LLC*, 642 B.R. 497, 502–04 (Bankr. S.D.N.Y. 2022) ("*Celsius I*"). While the issue was not before the Court at the time, the Court also noted that Earn Account Holders, like Mr. Frishberg, "appear to be

6

unsecured creditors of Celsius." *Id*. at 499. To the extent this was true, the Court stated that the Bankruptcy Code's fundamental tenet of "equality of distribution" required that Mr. Frishberg and other similarly situated creditors "await the confirmation of a chapter 11 plan" as "fair treatment of all creditors demands that the Bankruptcy Code be followed." *Id*.

Second, in a decision entered on January 4, 2023 (the "Earn Opinion"), this Court concluded, among other things, that assets deposited into the Earn Accounts are property of the Debtors' estates and Earn Account Holders are unsecured creditors. *In re Celsius Network LLC*, 647 B.R. 631, 651 (Bankr. S.D.N.Y. 2023) ("*Celsius II*"). The Court recognized that the issue of ownership of assets in the Earn Accounts is a "contract law issue" and, therefore, turned to the language of the Terms of Use, a clickwrap contract, to determine the rights and relationship between the Debtors and the Earn Account Holders. *Id*. at 637.

The Court's ultimate ruling was predicated on the terms of a transfer of title clause that "grant[ed] Celsius . . . all right and title to such Digital Assets, including ownership rights." *Id*. at 656 (quoting the *Declaration of Alexander Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms Dating Back to February 19, 2019*, ECF Doc. # 393, Ex. A-5 § 14, A-6 § 13, A-7 § 13, A-8 § 13). The clause was included in each iteration of the Terms of Use beginning with Terms Version 5. *Id*. at 656. Accordingly, the Court concluded that Earn Account Holders who agreed to Terms Version 5 or later "entered a contract which contained unambiguous and clear language" that "unequivocally transferred" title and ownership of all Earn Assets to the Debtors, rendering such property of the Debtors' estates as of the Petition Date. *Id*. at 657. Echoing the Frishberg Lift Stay Opinion, the Court once again highlighted the Bankruptcy Code's "fundamental principle of . . . equality of distribution" and its importance in

7

ensuring recoveries for all unsecured creditors where there is insufficient "value available to repay all [Earn] Account Holders in full." *Id*. at 637–38.

Finally, in addition to the two decisions, the Debtors also cite to the Court's Barstow Order, which, as already noted, denied three of Ms. Barstow's motions that sought determination that she is a secured creditor of the Debtors. (Barstow Order, ECF Doc. # 1832.) The Court's ruling was premised on its finding in the Earn Opinion that, as an Earn Account Holder, Ms. Barstow is not a secured creditor. (*Id*. at 2.)

The Debtors assert that each of the foregoing applies to Mr. Cole. With respect to the Frishberg Lift Stay Opinion in particular, the Debtors argue that the decision is applicable since Mr. Cole's arguments are "legally analogous." (Debtors' Objection ¶ 6.) As for the Earn Opinion and the Barstow Order, the Debtors assert that their reasoning applies as well, particularly with respect to Mr. Cole's argument that he is a secured creditor, which "largely echo[es] [arguments] that Ms. Barstow [already] made." (*Id*. ¶ 7.)

### E. The Committee's Omnibus Objection

The Committee argues that there are "no compelling reasons that would require the Court to deviate from its prior findings under the case of law doctrine" and to reconsider its finding that Earn Account Holders are unsecured creditors. (Committee Objection ¶¶ 2, 3–9.) The Committee states that Mr. Cole and Ms. Barstow have failed to "identify a change in controlling law, new evidence, clear error, or manifest injustice" that would justify a departure from the Court's prior rulings. (*Id*. ¶ 5.) In addition, the Committee argues that Mr. Cole failed to assert his arguments set forth in the Cole Motion prior to the Court's issuance of its Earn Opinion despite such arguments being known to him at the time and that, in general, his arguments also fail on the merits. (*Id*. ¶¶ 5, 7–8.)

8

As for Ms. Barstow, the Committee states that the Court has already resolved Ms. Barstow's "conclusory assertion that she is a secured creditor," an argument the Court overruled in the Barstow Order. (*Id.* ¶ 6.)

Finally, the Committee asserts that both Mr. Cole and Ms. Barstow have failed to establish that cause exists to lift the automatic stay. (*Id.* ¶¶ 2, 10–14.) The Committee argues that neither has set forth arguments in support of lifting the stay and, in any event, cause does not exist, particularly in light of the Bankruptcy Code's "equality of distribution" principle. (*Id.* ¶¶ 11–13.)

## II. LEGAL STANDARD

### A. Lifting the Automatic Stay

Section 362(a)(1) of the Bankruptcy Code imposes an automatic stay of the commencement or continuation of all litigation against a debtor upon the debtor's filing of a bankruptcy petition. *See* 11 U.S.C. § 362(a)(1); *In re Project Orange Assocs., LLC*, 432 B.R. 89, 101 (Bankr. S.D.N.Y. 2010).

Under section 362(d), a party in interest can seek relief from the automatic stay. Section 362(d), in relevant part, provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

To prevail on a motion to lift the automatic stay under section 362(d)(1), a movant must establish a *prima facie* case that there is cause to lift the stay. "If the movant fails to make an initial showing of cause, . . . the court should deny relief without requiring any showing from the

9

debtor that it is entitled to continued protection." *Sonnax Industries, Inc. v. Tri-Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990). With respect to unsecured creditors in particular, the "policies of the automatic stay weigh against granting the relief requested." *In re Residential Capital, LLC*, 508 B.R. 838, 848 (Bankr. S.D.N.Y. 2014).

Neither section 362(d)(1) nor its legislative history defines what constitutes "cause" for relief from the automatic stay. *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). Rather, "'[c]ause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *Project Orange*, 432 B.R. at 103 (quoting *In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004)) (internal citation omitted). The decision whether to grant relief from the automatic stay falls squarely within the discretion of the bankruptcy court. *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 687–88 (S.D.N.Y. 1994).

Courts in the Second Circuit consider the twelve factors established in the Court of Appeals' decision in *In re Sonnax Industries* to determine, on a case-by-case basis, whether relief from the automatic stay is appropriate. *See, e.g., In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 138 (S.D.N.Y. 2010), *aff'd sub nom Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc.*, 402 F. App'x 634 (2d Cir. 2010) ("Sonnax . . . is routinely referenced as the leading relief from stay precedent in this Circuit."). The twelve *Sonnax* factors are as follows:

  (1) whether relief would result in a partial or complete resolution of the issues;
  (2) lack of any connection with or interference with the bankruptcy case
  (3) whether the other proceeding involves the debtor as a fiduciary;
  (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
  (5) whether the debtor's insurer has assumed full responsibility for defending it;
  (6) whether the action primarily involves third parties;
  (7) whether litigation in another forum would prejudice the interests of other creditors;
  (8) whether the judgment claim arising from the other action is subject to equitable subordination;
  (9) whether movant's success in the other proceeding would result in a judicial

> lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

Not all the *Sonnax* factors are relevant in every case, however. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). The Court need not assign equal weight to each factor. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). Again, courts have recognized that what constitutes "cause" is "a broad and flexible concept that must be determined on a case-by-case basis." *In re AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013) (citing *In re Bogdanovich*, 292 F.3d at 110).

### B. The Law of the Case Doctrine

Generally, the law of the case doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case" unless "cogent and compelling reasons militate otherwise." *In re Motors Liquidation Co.*, 619 B.R. 63, 74 (Bankr. S.D.N.Y. 2020) (quoting *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). Such reasons include an "intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *DeJohnson*, 564 F.3d at 99–100 (quoting *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)). As a result, the doctrine "forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings in the same case." *United States v. Vale*, 596 F.App'x 34, 34 (2d Cir. 2015) (quoting *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007) (internal quotations omitted); *see also Doe v. E. Lyme Bd. Of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020)

11

(stating the same). Courts will apply the law of the case doctrine when "prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (citations omitted).

In general, the law of the case doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *De Johnson*, 564 F.3d at 99 (quoting *Higgins v. Cal. Prune & Apricot Grower, Inc.*, 3 F.2d 896, 896 (2d Cir. 1924) (internal quotations omitted). Courts have no obligation to revisit prior rulings on questions of law simply because certain parties were not participants to the earlier ruling. *In re Motors Liquidation*, 604 B.R. 138, 151 (Bankr. S.D.N.Y. 2019).

### III.  DISCUSSION

The Court's prior rulings remain the law of the case and dictate that the Court must deny the Lift Stay Motions, foreclosing the need for the Court to address (yet again) the issues of whether cause exists to lift the automatic stay with respect to Earn Account Holders and whether Earn Account Holders are secured creditors in these Chapter 11 cases. Each of this Court's rulings—the Frishberg Lift Stay Opinion, the Earn Opinion, and the Barstow Order—build upon each other and collectively address each of Mr. Cole and Ms. Barstow's assertions, standing for the following propositions:

(i) that cause does not exist to lift the automatic stay for an Earn Account Holder like Mr. Frishberg under the governing Second Circuit standard;

(ii) that Earn Assets as of the Petition Date are property of the Debtors' estates; and

(iii) Earn Account Holders who have accepted Terms Versions 5 or later are unsecured creditors.[3]

---

[3] As set forth in the Earn Opinion, the Debtors' "uncontroverted evidence shows that 99.86% of the Earn Account [H]olders accepted Terms Version 6 or a later version." *Celsius II*, 647 B.R. at 637.

*See Celsius I*, 642 B.R. at 500, 502–04 (holding in the Frishberg Lift Stay Opinion that cause does not exist to lift the automatic stay for Mr. Frishberg—an Earn Account Holder, unsecured creditor, and Celsius customer—"who [had] been unable to access transferred cryptocurrency due to Celsius' June 12, 2022[] decision to pause all withdrawals"); *Celsius II*, 647 B.R. at 657 (concluding in the Earn Opinion that "title to and ownership of all Earn Assets unequivocally transferred to the Debtors and became property of the Estates on the Petition Date"); *Id.* at 651 (stating in the Earn Opinion that Earn Accountholders "have unsecured claims against the Debtors in dollars or in kind"); Barstow Order, at 2 (stating that, "[f]or the reasons discussed in the Earn Opinion, as an Earn [Accountholder], [Ms.] Barstow is not a secured creditor").

Indeed, Mr. Cole and Ms. Barstow have not adequately distinguished their immediate cases from the Court's prior cases, including differentiating themselves from Earn Account Holders like Mr. Frishberg who are subject the Court's rulings. Nor have Mr. Cole and Ms. Barstow offered any reason—let alone "cogent," "compelling" or otherwise—that would support the Court's departure from its prior rulings in these proceedings. *Motors Liquidation*, 619 B.R. at 74 (stating that the law of the case doctrine dictates adherence to prior rulings in later stages of the same case unless "cogent and compelling reasons militate otherwise"). Absent such, the law of the case doctrine dictates that the Court's prior decisions remain the law of the case.

With respect to Mr. Cole in particular, it is clear that the Court's prior rulings apply. First, Mr. Cole's case is largely factually indistinguishable from Mr. Frishberg's—both are Earn Account Holders and Celsius customers who were unable to access their respective cryptocurrency deposits in their Earn Accounts as a result of the Debtors' June 12, 2022 decision to pause withdrawals.[4] *Compare Celsius I*, 642 B.R. at 499–500 (describing Mr. Frishberg, an

---

[4] The Debtors suggest that the "only potentially distinguishing fact between Mr. Cole's case and Mr. Frishberg's case is that Mr. Cole also contends that he did not accept [Terms Version 8]." (Debtors' Objection ¶ 5.)

13

Earn Account Holder, as an "unsecured creditor" and "customer[] of Celsius who [has] been unable to access transferred cryptocurrency" due to the June 12, 2022 freeze on withdrawals) *with* Cole Motion ¶¶ 6, 10–13 (describing himself as an Earn Account Holder who was prevented from accessing his cryptocurrency deposits in his Earn Account after the June 12, 2022 freeze on withdrawals). Second, Mr. Cole consented to at least Terms Version 5, which renders him subject to the Earn Opinion's holding that Earn Account Holders who accepted Terms Versions 5 or later are unsecured creditors. (*See* Debtors' Objection ¶ 6 (stating that per the Debtors' records, Mr. Cole accepted Terms Version 6); Committee's Objection ¶ 7 (arguing that Mr. Cole "affirmatively assented to [Terms Version 5]").) As illustrated in the Barstow Order, Earn Account Holders are subject to the Earn Opinion and, in accordance with such, are unsecured creditors. *See* Barstow Order, at 2 (stating that, "[f]or the reasons discussed in the Earn Opinion, as an Earn Account Holder, [Ms.] Barstow is not a secured creditor").

Mr. Cole and Ms. Barstow's assertions that they possess secured creditor status by virtue of their UCC-1 financing statement filings are also without merit.[5] The Earn Opinion made it unequivocally clear that Earn Assets are property of the Debtors' estates and that the Terms of Use did not grant nor was it intended to grant any "ownership interest or lien in favor of the [Earn] Account Holders." *Celsius II*, 647 B.R. at 658. Accordingly, given that the movants'

---

This alone is insufficient to render the Frishberg Lift Stay Opinion inapplicable given that Mr. Cole's acceptance of at least Terms Version 5 renders him an unsecured creditor in accordance with the Earn Opinion.

[5]     As the Debtors note, between Mr. Cole and Ms. Barstow themselves, the only potentially distinguishing fact is that Mr. Cole filed his UCC-1 financing statement prepetition while Ms. Barstow filed hers postpetition. (Debtors' Objection ¶¶ 4, 7.) On the whole, this is irrelevant because, as will be discussed, the unilateral filing of a UCC-1 financing statement alone absent intent of the other party to grant an ownership interest or lien is insufficient to confer secured status.

14

filing of UCC-1 financing statements seek to perfect interests that do not otherwise exist, Mr. Cole and Ms. Barstow are unsecured creditors in accordance with the Earn Opinion.[6]

## IV. CONCLUSION

For the reasons explained above, the Lift Stay Motions are **DENIED**, a result that follows from the Frishberg Lift Stay Opinion, the Earn Opinion, and the Barstow Order. Denial of the Motion also comports with the Bankruptcy Code's fundamental tenet of "equality of distribution" articulated in both the Frishberg Lift Stay Opinion and the Earn Opinion. Mr. Cole and Ms. Barstow, as Earn Account Holders, are unsecured creditors.

**IT IS SO ORDERED.**

Dated:    September 12, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge

---

[6] Ms. Barstow's postpetition filing of a UCC-1 financing statement also violates the automatic stay and is therefore, invalid. *See* 11 U.S.C. § 362(a)(4) (prohibiting "any act to create, perfect, or enforce any lien against property of the estate").

15