Hearing Date:  October 5. 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:  September 28, 2023, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING ON MOTION**
**FOR ENTRY OF AN ORDER (I) APPROVING**
**THE SETTLEMENT BY AND BETWEEN THE DEBTORS**
**AND WALTER JOHNSON AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order*

*(I) Approving the Settlement By and Between the Debtors and Walter Johnson, and (II) Granting*

*Related Relief* (the "Motion") will be held on **October 5, 2023, at 10:00 a.m., prevailing Eastern**

**Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be held before the Honorable Martin Glenn on **October 5, 2023, at 10:00 a.m., prevailing Eastern Time**.  The Hearing will be held in person before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408.  The public, including members of the media, may only attend the Hearing in the courthouse, not remotely.  This change in practice regarding evidentiary hearings reflects the policies of the Judicial Conference of the United States that are anticipated to be in effect on the date of the Hearing.  Any person or entity that is permitted to attend the Hearing by Zoom must register in advance and will be required to certify under oath that they are appearing in a permitted capacity.  Those Parties who qualify and wish to participate in the Hearing via Zoom must register their appearance utilizing the Electronic Appearance portal located on the Court's website at:  https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Appearances must be entered no later than **Wednesday, October 4, 2023, at 4:00 p.m., prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative*

2

*Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order")

by **September 28, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master

Service List (as defined in the Case Management Order and available on the case website of

the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized

interest in the subject matter of the Motion.

      **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are

timely filed, served, and received will be considered at the Hearing.  Failure to file a timely

objection may result in entry of a final order granting the Motion as requested by the Debtors.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings

filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated: September 14, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## MOTION FOR ENTRY OF AN ORDER
## (I) APPROVING THE SETTLEMENT BY AND BETWEEN THE
## DEBTORS AND WALTER JOHNSON AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state

the following in support of this motion (this "<u>Motion</u>"):

### **Introduction**[2]

1.    By this Motion, the Debtors seek approval of a settlement by and between Celsius

Network LLC ("<u>Celsius</u>") and Walter Johnson ("<u>Mr. Johnson</u>" and together with Celsius,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this section shall have the meanings ascribed to them later in the Motion, as applicable.

the "Parties") that resolves disputes between the Parties related to Mr. Johnson's allegations of sex discrimination, sexual harassment, and retaliation as part of his employment with Celsius.

2.      The Settlement is the result of good-faith negotiations and fully resolves the disputes between the Parties.  Under the terms of the Settlement, the Debtors will provide Mr. Johnson a one-time payment of $10,000 for alleged emotional distress, liquidated and/or other non-wage damages, and attorneys' fees and costs, without an admission of liability.

3.      The Settlement will save the Debtors expense and resources, eliminate the inherent uncertainty and distraction of litigation, and allow the Debtors to focus on soliciting and confirming their plan of reorganization and returning value to stakeholders at this crucial juncture. Notably, the official committee of unsecured creditors (the "Committee") supports the Settlement. Accordingly, for the reasons set forth below, the Settlement is in the best interests of the Debtors' estates and should be approved.

### Relief Requested

4.      The Parties seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):  (a) approving the settlement (the "Settlement") as embodied in the settlement agreement attached to the Order as Exhibit 1 (the "Settlement Agreement"), by and among the Parties; and (b) granting related relief.

### Jurisdiction and Venue

5.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the District Court, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

8.      Mr. Johnson was employed by Celsius from August 9, 2021 until April 24, 2023. On or about June 16, 2022, Mr. Johnson served a demand letter on Celsius asserting claims for sex discrimination, sexual harassment, and retaliation in violation of state and federal statutes (the "Demand Letter").

9.      Shortly after Mr. Johnson sent the Demand Letter, the Debtors weighed the relative costs of litigating Mr. Johnson's claims and the costs of entering into a settlement with Mr. Johnson and determined that the costs and uncertainty associated with continuing litigation substantially exceed the costs of a potential settlement.  The cost of professional fees and court fees for litigating Mr. Johnson's claims are estimated to be in excess of the $10,000 settlement amount, and would be in addition to, if Mr. Johnson's claims are successful, an undetermined amount of damages.  The Parties therefore began discussions on a potential settlement of Mr. Johnson's claims against Celsius.  On or around September 8, 2023, after several weeks of extensive good faith and arm's-length negotiations around the terms of the Settlement, the Parties reached an agreement in principle, and the Settlement Agreement was finalized on September 11, 2023.  The Settlement Agreement is attached to the Order as Exhibit 1.

### The Settlement[3]

10.     Pursuant to the Settlement, Mr. Johnson will receive a one-time payment of $10,000 to resolve all outstanding disputes between the Parties.  The Settlement Agreement constitutes a full and final satisfaction of any and all existing and future claims brought by Mr. Johnson against Celsius, its Debtor and non-Debtor affiliates—including all of the Debtors in these chapter 11 cases—or any of its or their current or former employees, attorneys, officers, owners, members, managers, shareholders, directors, and agents arising out of Mr. Johnson's employment with Celsius and subsequent termination.

11.     The Settlement is in the best interests of the Debtors and their creditors. The Settlement resolves a dispute between the Parties, the outcome of which is inherently uncertain, saves the Debtors the additional expense, resources, and distraction of litigation with Mr. Johnson, and avoids further diminution to their estates.  Accordingly, the Debtors seek approval to enter into and perform under the Settlement.

### Basis for Relief

**I.    The Settlement is A Sound Exercise of the Debtors' Business Judgment.**

12.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement."   Fed. R. Bankr. P. 9019(a).   A settlement under Bankruptcy Rule 9019 need not result in the best possible outcome for the debtors, but must not "fall below the lowest point in the range of reasonableness."  *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991).  In determining the range of reasonableness, the

---

[3]    Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Settlement Agreement.  The following summary of the Settlement is provided for illustrative purpose only and is qualified in its entirety by reference to the Settlement Agreement.  In the event of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls in all respects.  Furthermore, this summary shall not be used to construe or interpret the terms of the Settlement Agreement or intent of the Parties.

bankruptcy court need not decide issues of law and fact raised by the settlement.  *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  In other words, the court does not need to conduct a "mini-trial" of the underlying facts and merits; it needs only to evaluate those facts that are necessary to allow it to assess the settlement and to make an independent judgment about the settlement.  *See In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) ("The standard does not require that the settlement be the best the debtor could have obtained nor does it require the court to conduct a mini-trial of the questions of law and fact.").

13.     Rather, the court must be "apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment."  *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640–41 (Bankr. S.D.N.Y. 2012) (Glenn, J.).  In conducting this assessment, "a court may rely on the opinion[s] of the debtor, parties to the settlement, and [] professionals" in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement.  *Id.* at 641.

14.     Ultimately, the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("Although a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim."); *Drexel Burnham*, 134 B.R. at 496; *see also Abeles v. Infotechnology (In re Infotechnology)*, 1995 U.S. App. LEXIS 39883, at *4–5 (2d Cir. Nov. 9, 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor).

15.     A court should exercise its discretion in favor of a settlement wherever possible, as settlements are generally favored in bankruptcy.  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140,

226 (Bankr. S.D.N.Y. 2007) ("As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged."); *see also In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ("The decision to grant or deny a settlement or compromise lies squarely within the discretion of the bankruptcy court [and such] discretion should be exercised in light of the general public policy favoring settlements.") (citing *Nellis* 165 B.R. at 121); *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting the paramount public policy for settlements).[4]  Notably, "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate."  *In re MF Glob. Inc.*, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012).

16.    When determining whether to approve a settlement as fair and equitable and in the best interests of the Debtors' estates under Bankruptcy Rule 9019, courts in the Second Circuit consider the "*Iridium*" factors:  (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount interest of the creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) whether the competency and experience of counsel support the settlement; and (g) the extent to which the settlement is the product of arm's-length bargaining.  *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir.

---

[4]    Furthermore, under section 105(a) of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Authorizing the Debtors to proceed with the Settlement falls squarely within the spirit of Bankruptcy Rule 9019 as well as the Bankruptcy Code's predilection for compromise.  Thus, to the extent necessary, relief under section 105(a) of the Bankruptcy Code is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

2007); *see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

17.    Entering into the Settlement is a sound exercise of the Debtors' business judgment and represents a fair and equitable compromise between the Parties, falls well within the range of reasonableness, and satisfies most of the *Iridium* factors.  More specifically, with respect to the *first* and *second Iridium* factors, litigating Mr. Johnson's claims against Celsius would consume estate resources and cause significant delay at this critical juncture.  For example, the Parties have already spent approximately three months negotiating Mr. Johnson's claims out of court since the Debtors received the Demand Letter.  In contrast, the Settlement resolves Mr. Johnson's claims in a consensual manner, provides certainty of recovery for Mr. Johnson without the need for formal litigation, and allows the Debtors to focus on soliciting and confirming their plan of reorganization. Time is of the essence in these chapter 11 cases, and it is crucial that the Debtors avoid the costs, delays, and distraction associated with litigation.

18.    With respect to the *third Iridium* factor, the Settlement maximizes value of the Debtors' estates and benefits each of the Debtors' stakeholders by capping the Debtors' costs in the Johnson Action at $10,000 and avoiding further diminution of the Debtors' estates.  On the other hand, if the Debtors were to continue litigating Mr. Johnson's claims, they will likely incur costs that far exceed the $10,000 settlement payment.  In addition, the resolution of Mr. Johnson's claims will allow the Debtors' management to focus on soliciting and confirming their plan of reorganization and returning value to all stakeholders as soon as possible.  Therefore, the Settlement is in the best interests of the Debtors' estates.

19.    With respect to the *fourth Iridium* factor, the Settlement is supported by the Committee.  As one of the non-Debtor parties with the most interest in advocating for

7

unsecured creditors in these chapter 11 cases, the Committee's approval and acceptance of the Settlement is a good indication that such agreement is fair and equitable.

20.     With respect to the *fifth Iridium* factor, the releases granted by the Settlement are mutual and essential to the Settlement, and are similar in nature to other settlements of the same nature in other chapter 11 cases.  Specifically, the releases granted by the Parties in the Settlement are a necessary component of the Settlement and appropriate under the circumstances.

21.     Finally, with respect to the *sixth* and *seventh Iridium* factors, the Settlement is the product of hard-fought bargaining between the Parties.  Since the Debtors received the Demand Letter on or about June 16, 2023, the Parties engaged in arm's-length, hard-fought negotiations for weeks and exchanged multiple drafts before executing the Settlement Agreement, with meaningful concessions made by both Parties.

22.     Thus, the terms of the Settlement satisfy the requirements of Bankruptcy Rule 9019 and the Parties request that the Court approve the Settlement and authorize each of the Parties to perform thereunder.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

24.     Except as explicitly set forth in this Motion and the Settlement (once approved by the Court and implemented in accordance with its terms), nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the

8

Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

25.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

26.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c)  the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) Mr. Johnson; (h) the District Court; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

27.     No prior request for the relief sought in this Motion has been made to this or any

other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: September 14, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           patrick.nash@kirkland.com
                 ross.kwasteniet@kirkland.com
                 chris.koenig@kirkland.com
                 dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | )    Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | )    Case No. 22-10964 (MG) |
| | ) |
| Debtors. | )    (Jointly Administered) |
| | ) |

**ORDER (I) APPROVING**
**THE SETTLEMENT BY AND BETWEEN THE DEBTORS**
**AND WALTER JOHNSON AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order") (i) approving the Settlement, as

embodied in the Settlement Agreement attached hereto as **Exhibit 1**, by and between the Debtors

and Walter Johnson and (ii) granting related relief, all as more fully set forth in the Motion; and

this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012; and this Court having the power to enter a final

order consistent with Article III of the United States Constitution; and this Court having found that

venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this

Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein.

2.     The Settlement (as embodied in the Settlement Agreement attached hereto as **Exhibit 1**) and the Settlement Agreement are approved.

3.     Notwithstanding the Stipulation, pursuant to Bankruptcy Rule 9019, the Parties are authorized to enter into and perform under the Settlement as embodied in the Settlement Agreement, and perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements set forth or provided for in the Settlement Agreement.

4.     The notice requirements under Bankruptcy Rule 6004(a) are hereby waived.

5.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.      This Order shall bind the Parties, their estates and any successors or assigns, including without limitation any trustee, liquidating trustee, or other estate representative.

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE

**<u>EXHIBIT 1</u>**

**Settlement Agreement**

DocuSign Envelope ID: BF325EE12-BF51-49E0-A544-06B66B9B5423

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

   This Settlement Agreement and General Release (the "Agreement") is entered into by and between **Celsius Network LLC.** (referred to throughout this Agreement as "Employer" or the "Company") and **Walter Johnson** ("Employee"). The term "Party" or "Parties" as used herein shall refer to Employer, Employee, or both, as may be appropriate.

   1.  __Recitals.__ This Agreement is made with reference to the following facts:

     (a)  On or about June 16, 2023, Employee served a Demand Letter on Employer asserting claims for sex discrimination, sexual harassment, and retaliation in violation of state and federal statutes; and

     (b)  There has been no determination on the merits of the Demand Letter allegations but, in order to avoid additional cost and the uncertainty of litigation, Employee and Employer have agreed, subject to the provisions in Paragraph 5 below, to resolve any and all claims, known and unknown, asserted and unasserted, which Employee had, has or may have against Employer and/or Employer's direct and indirect past, present, and future parent corporations, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their respective current and former employees, attorneys, officers, owners, members, shareholders, managers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

   2.  __Consideration/Indemnification for Tax Consequences and Liens.__

     (a)  In consideration for Employee signing this Agreement, and complying with its terms, Employer agrees to pay the total gross sum of Ten Thousand Dollars ($10,000.00) (the "Settlement Payment"), to be paid as follows: one wire funds transfer for alleged emotional distress, liquidated and/or other non-wage damages, and alleged attorneys' fees and costs, payable to "Walter Johnson and Maier Gutierrez & Associates" in the amount of Ten Thousand Dollars ($10,000.00), for which Employer shall issue an IRS Form 1099-MISC to each of Employee and Maier Gutierrez & Associates ("Employee's Counsel").

     (b)  Employee agrees that Employee is responsible for all applicable taxes, if any, as a result of the receipt of these monies that he receives in Paragraph 2(a). Employee understands and agrees Employer is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors, and administrators, agrees to indemnify and hold each of the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Employer or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Employee or Employee's Counsel pursuant to Paragraph 2(a) of this Agreement. Employee agrees that Employee shall indemnify the Releasees for the full amount of such liability within ten (10) days after receipt of notice from Employer or any of the other Releasees of the assessment of such taxes, penalties, or interest.

     (c)  Any settlement payments made by check set forth in this paragraph will be delivered to Employee's Counsel at 8816 Spanish Ridge Ave., Las Vegas, Nevada 89148.

DocuSign Envelope ID: BF25EE12-BF51-49E0-A544-06D66B9B5423

3.    <u>**No Consideration Absent Execution of this Agreement.**</u>  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Employee's timely execution of this Agreement and the fulfillment of the promises contained herein.

4.    <u>**Disbursal of Settlement Funds.**</u>

(a)    The Settlement Payment described in Paragraph 2(a) will be sent within fourteen (14) calendar days after the latest of the following have occurred:

(1)    counsel for Employer receives a copy of the Agreement signed by Employee;

(2)    counsel for Employer receives executed W-9 Forms from Employee and Employees Counsel;

(3)    counsel for Employer receives bank account wire instructions from Employee's Counsel;

(4)    the revocation period following the signing of this Agreement has expired without revocation by Employee (as described in Paragraph 6 below); and,

(5)    this Agreement is approved by the United States Bankruptcy Court for the Southern District of New York presiding over the matter styled as: In re: Celsius Network LLC, et al., Case No. 22-10964 (MG) (the "Bankruptcy").

5.    <u>**General Release, Claims Not Released and Related Provisions.**</u>

(a)    <u>**General Release of All Claims.**</u>  Employee and Employee's dependents, heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge each and all of the Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which Employee had, has or may have against any of the Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- The Age Discrimination in Employment Act, 29 U.S.C. § 626;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- Families First Coronavirus Response Act;
- Nevada Equal Opportunities for Employment Law - NRS. § 613, et seq.;
- Nevada Equal Pay Law - NRS. § 608.017;
- Nevada School Visitation Law - NRS. § 392.920;
- Nevada Wage Payment and Work Hour Law - NRS. § 608, et seq.;
- Nevada Occupational Safety & Health Act - NRS. § 618, et seq.;
- Nevada Pregnant Workers Fairness Act - NRS. § 613.335 et seq.;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

DocuSign Envelope ID: BF3253E12-BE51-49E0-AF44-06B66B9B5623

    (b)    **Claims Not Released.** Employee is not waiving any rights Employee may have to: (i) Employee's own vested or accrued employee benefits under Employer's qualified retirement benefit plans as of the date Employee's employment ended with Employer; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

    (c)    **Governmental Agencies.** Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (e.g., EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct, or provide documents, to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies.

    (d)    **Collective/Class Action Waiver and Jury Waiver.** If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer and/or any other Releasee identified in this Agreement is a party. Similarly, as to any such claim against any Releasee that is not otherwise released, Employee waives Employee's right to a jury trial subject to applicable law.

## 6.    Full and Knowing Waiver of ADEA Claims.

    (a)  In addition to the waivers, releases and covenants set forth in Paragraph 5, Employee expressly waives any and all rights under the Age Discrimination in Employment Act, 29 U.S.C. § 626. By signing this Agreement, Employee certifies that:

    i.    Employee has carefully read and fully understands this Agreement;

    ii.    The Company, through this writing, has advised Employee to consult with an attorney before signing this Agreement;

    iii.    Employee has twenty-one (21) calendar days to review and consider this Agreement and the releases set forth herein, and Employee may waive the 21-day period by signing this Agreement;

    iv.    Employee has seven (7) calendar days after signing the Agreement to revoke it;

    v.    If Employee revokes this Agreement, he will not receive the Settlement Payment or any of the other consideration provided for in this Agreement; and,

    vi.    This Agreement does not prevent Employee from raising an age discrimination claim arising from facts and events occurring after the date Employee signs the Agreement.

    (b)  Any revocation within the seven (7) day period set forth in Paragraph 6(a)(iv) must be submitted, in writing, to Counsel for the Company, Deverie Christensen, Jackson Lewis P.C., and state: "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT." Any such revocation must be personally delivered to Deverie Christensen or her designee, or mailed to Deverie Christensen, Jackson

DocuSign Envelope ID: BF3253E12-BF51-49E0-A544-06D66B9B5623

Lewis P.C., 300 S. Fourth Street, Suite 900, Las Vegas, NV 89101, and postmarked within seven (7) calendar days after Employee signs this Agreement.

       **7.**      **Limited Confidentiality.**

      (a)      **Employee agrees that he will not disclose in any way and will keep strictly and absolutely confidential the amount of the Settlement Payment and the Parties' negotiations related to the Agreement. Employee agrees not to disclose any information relating to the amount of the Settlement Payment or engage in any communication, including generally descriptive language, characterization, gestures, or other form of communication, that would suggest or imply the amount of the Settlement Payment, except to Employee's spouse/partner, tax advisor, accountant, an attorney with whom he chooses to consult regarding Employee's consideration and execution of this Agreement, and/or to any federal, state, or local government agency, or in response to an order of a court of competent jurisdiction or other legal tribunal or a subpoena issued under the authority thereof, which order or subpoena calls for such disclosure or testimony.** Employee agrees that in the event Employee discloses the terms of this Agreement to Employee's spouse/partner, tax advisor, or legal counsel, Employee will instruct Employee's spouse/partner, tax advisor, or legal counsel not to reveal, disseminate by publication of any sort, or release in any manner or means this Agreement (except as may be required by legal process) to any other person or to any member(s) of the public, or to any newspaper, magazine, radio station, television station, social media site, or other platform, or any future, current, or former employee, representative, agent, customer, creditor, or competitor of any of the Releasees without the express written consent of Releasees. Employee confirms that prior to the execution of this Agreement, Employee has not revealed its terms to any third parties. Nothing in this Agreement has the purpose or effect of preventing Employee from making truthful disclosures about alleged unlawful conduct.

      (b)      This subsection shall not prohibit disclosure of the terms or existence of this Agreement to the extent necessary to enforce this Agreement through a legal proceeding, including for the avoidance of doubt to the United States Trustee for Region 2 (the "U.S. Trustee"), the official committee of unsecured creditors appointed by the U.S. Trustee, and in the United States Bankruptcy Court for the Southern District of New York in connection with the approval described in Section 19 herein. If Employee receives notice of an order or subpoena which may require disclosure pursuant to this Paragraph, he shall provide reasonably prompt notice (within 48 hours) to his counsel, Maier Gutierrez & Associates, who will give reasonably prompt written notice (within 48 hours) to Ron Deutsch, Esq., General Counsel of Employer at legal@celsius.network, to allow Employer a reasonable opportunity to protect its respective interests with respect to such disclosure. This confidentiality restriction shall not be construed to limit Employee's rights under the National Labor Relations Act.

      (c)      If inquiries arise concerning this Agreement, and except as required by law, Employee may only reply, "The matter has been resolved." Employee acknowledges that confidentiality is a material term of this Agreement. The confidentiality provision of this Agreement is not intended to, nor shall it be construed to, restrict Employee from disclosing factual information relating to his claims, aside from the amount of the Settlement Payment and the Parties' negotiations related to the Agreement as set forth above.

      (d)      Notwithstanding the foregoing, the Agreement may be introduced as evidence in any proceeding only for the purposes of enforcing its terms and/or to evidence the Parties' intent in executing it. The Agreement shall not be admissible as evidence in any proceeding for any other purpose.

DocuSign Envelope ID: BF3E25EE12-BF51-49E0-A544-06B6B9B5423

8. <u>**Acknowledgements and Affirmations.**</u>

(a)    Employee affirms that Employee has not directly or indirectly filed, caused to be filed, or presently is a party to any pending claim against Employer and/or any other Releasee. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b)    Employee also affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date Employee signs this Agreement and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee's employment.  Employee further affirms that Employee has submitted expense reports for all necessary expenses or losses incurred by Employee within the scope of Employee's employment.  Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(c)    Employee further affirms that Employee has no known workplace injuries or occupational diseases that have not already been reported to Employer and/or adjudicated.

(d)    Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law.  Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit against Employer for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(e)    Employee further affirms that Employee has not reported internally to Employer any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, and Employee has not been retaliated against for reporting or objecting to any such allegations internally to Employer.

(f)    Employee affirms that all of Employer's decisions regarding Employee's pay and benefits through the date of Employee's Separation Date were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

(g)    Employee shall not apply for, or accept, employment or other work engagement with Employer or any other Releasee under any circumstances because of, among other things, irreconcilable differences with Employer and all other Releasees. Employee agrees that, if Employee accepts employment or other work engagement with any Releasee in contravention of this Agreement, such Releasee may terminate Employee's employment or work engagement immediately and Employee shall have no claim against such Releasee, in law or equity, related to such termination (to the fullest extent permitted by law).

(h)    Employee and Employer acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

## 9.    Non-Disparagement.

Except in the context of filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding, or other proceeding before any federal, state, or local government agency, filing a grievance or otherwise participating in activity expressly protected by the National Labor Relations Act, Employee agrees not to maliciously defame or disparage Releasees and the Employer, or its facilities, products, or services, or make or solicit any comments, statements or the like to the media or others that may be considered to be derogatory or harmful to the good name or business reputation of the Employer or any of the Releasees.  This provision also applies to any comments or statements which Employee, Employee's spouse/partner, immediate family members, and representatives made or may make on the internet, including but not limited to comments, statements and/or videos placed in email, on blogs, YouTube, Facebook, Twitter or any other social media site or platform. This provision shall not be construed to limit Employee's rights under the National Labor Relations Act including, but not limited to, the right to engage in protected concerted activity, including discussing terms and conditions of employment with coworkers, and attempting to improve terms and conditions of employment through channels outside the immediate employee-employer relationship, such as through the National Labor Relations Board.

## 10.    Return of Property and Prospective Employment References.

Except as provided otherwise in this Agreement or by law, Employee affirms that Employee has returned all of Employer's or any of the Releasees' property, documents, and/or any confidential information in Employee's possession or control.  Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises (if any) and that Employer and Releasees are not in possession of any of Employee's property.

Employee agrees that he will ask future prospective employers to direct any questions about his employment with the Employer to the Employer's Human Resources Department who will respond with only the title of Employee's last position and dates of employment.

## 11.    Medicare Secondary Payer Rules.

As a term of this Agreement, the Parties have fully considered Medicare's interests pursuant to the Medicare Secondary Payer rules.  In doing so, Employee affirms that as of the date Employee signs this Agreement, Employee is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.).  Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Employee under this settlement, Employee agrees to (i) indemnify and hold Releasees harmless from any action by CMS relating to medical expenses of Employee, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Employee is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

12.    **Governing Law and Interpretation**.

     This Agreement shall be governed and conformed in accordance with the laws of Nevada without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

13.    **Nonadmission of Wrongdoing.**

     The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by any of the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

14.    **Amendment.**

     This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

15.    **Entire Agreement.**

     This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, restrictive covenant, nondisclosure, or confidentiality agreements between Employer and Employee, which shall remain in full force and effect according to their terms.  Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

16.    **Counterparts and Signatures**.

     This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument.  A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

17.    **Mutual Negotiation**.

     This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

18.    **Third Party Beneficiaries.**

     All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce th**e** provisions of this Agreement applicable to any such Releasee as against Employee or any party acting on Employee's behalf.

DocuSign Envelope ID: BF2D5EE12-BF51-49E0-A5A4-06D66B985523

19.    Bankruptcy Court Approval

The Parties understand and agree that this Agreement is subject to and conditioned upon approval of the Parties' settlement in a final Order issued by the United States Bankruptcy Court for the Southern District of New York presiding over the Bankruptcy as defined above and captioned as: *In re: Celsius Network LLC, et al.*, Case No. 22-10964 (MG).

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS, INCLUDING UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT, EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

WALTER JOHNSON

Date: 9-11-2023

CELSIUS NETWORK LLC

Chris Ferraro

By: Chris Ferraro

Date: 9/11/2023

8