Friday, 15 September 2023
Honourable Martin Glenn
United States Chief Bankruptcy Judge
Southern District of New York
Celsius Network LLC case (Case No. 22-10964 (MG))

In re: Doc 3464 (ORDER SCHEDULING ZOOM HEARING FOR DISCOVERY DISPUTE BETWEEN UNSECURED CREDITORS COMMITTEE AND WITH THREE PRO SE CREDITORS—OTIS DAVIS, ZACH WILDES AND SANTOS CACERES), and Doc 3431, Doc 3226, Doc 2907, Doc 2840, Doc 2642

Dear Judge Glenn,

1. As a creditor who holds CEL token I am reaching out to express my deep concerns regarding the ongoing proceedings in the Celsius Network LLC case. The Unsecured Creditors Committee (UCC) has been asserting the occurrence of a "short squeeze" which allegedly affected the CEL token pricing during a specific period. However, the substantiating evidence for this central claim seems to be conspicuously absent.

2. As a significantly impacted creditor, I find it imperative to emphasize that mere allegations are insufficient to establish the occurrence of a short squeeze. It is incumbent upon the Committee to provide concrete evidence demonstrating the antecedent short selling activities and their subsequent impact on the market. The Committee, being the party advocating this theory, bears the responsibility of presenting objective, verifiable proof to substantiate their claims.

3. To this end, I formally request the Committee to promptly provide the following:

    a. Comprehensive data and analyses that substantiate the occurrence of a short squeeze on the CEL token. This should include documentation quantifying short positions, trade volumes, and data analytics identifying

the respective inflection points. Given the gravity of the allegations, there should be a plethora of documents, immutable blockchain receipts of the 'short squeeze' entry/exits, screenshots, and evidence that unequivocally demonstrate the parties' leadership, participation, promotion, and profit claims from the squeeze activities, both pre-petition and post-petition dates following the freeze. The volume of this evidence should be commensurate with the sustained pursuit of their narrative.

b. Full disclosure of any third parties advising on these matters, encompassing identification, communications, and any existing Non-Disclosure Agreements (NDAs).

4. Furthermore, the recent order mentions subpoenas served to the three pro se creditors, Otis Davis, Zach Wildes, and Santos Caceres, a move that seems to be more focused on establishing an association with an alleged criminal element rather than investigating the actual occurrence of a "short squeeze". However, upon a thorough search of the court docket, I could not find any subpoenas or proof of service related to them. This discrepancy, combined with the allegations of a short squeeze, has exacerbated the situation, leading to a pressing need for clarity and transparency in the proceedings. The UCC's approach appears to insinuate guilt by association, a strategy that not only seems unjust but also diverts attention from the central issue at hand, thereby necessitating a re-evaluation of the direction of their inquiry.

I would also like to highlight some concerning aspects of the Committee's approach in this case:

5. **Determination of the CEL token Price**: The UCC has stated that "no party disputes that the price of CEL Token was manipulated extensively," acknowledging the fact that "creditors who support utilizing the Petition Date price maintain that CEL Token should not be treated differently from other tokens, as the holders of CEL Token are not responsible for its manipulation."[1] However, they reference a letter from Daniel Frishberg, suggesting that a group of creditors orchestrated a "short squeeze" to artificially inflate the CEL token's value prior to the Petition Date. *I ask the court, that, the committee presents unequivocal evidence of this event, to creditors, and not present them with rumours.* If Mr. Frishberg had any evidence, it should have been presented, instead the committee still placed reliance on unnamed accusatory claims lacking demonstrated substantiation. [2]

6. Further the committee goes on to elaborate that "determining the proper value of CEL Token will be difficult." Which contradicts everything before it, underscoring the logical inconsistency in claiming both the difficulty in determining the CEL token's proper value and the existence of precise data points, to substantiate their claims and actions regarding the subordination of claims, so it stands to reason that they should also be able to use that same data to accurately determine the CEL token's proper value without claiming difficulty.

7. They continue taking incompatible strategic positions arguing "There are few rational explanations why a token associated with a platform that had paused withdrawals increased in value other than that most of the supply was locked on the Celsius platform and certain individuals were speculating on the equivalent of

---

[1] Docket No. 3431 P. 29 (https://cases.stretto.com/public/x191/11749/PLEADINGS/117490907238000000011.pdf)
[2] Docket No. 2907 (https://cases.stretto.com/public/x191/11749/PLEADINGS/117490627238000000106.pdf)

a penny stock."[3] But for a short squeeze narrative to be viable, prices would need to reflect legitimate forces of supply/demand - directly counter to their "penny stock" dismissal. Your Honor, they cannot have it both ways - either prices were rationally manipulated upwards, or were detached speculation. Can we have the evidence please?

8. **Lack of Transparency and Reliance on Unspecified Advice**: The Committee has hinted at relying on advice from unspecified third parties. Given the significant impact of the decisions stemming from this advice on over 108,748 creditors, it is only fair that such communications are either reviewed in camera or the advisors are identified for independent examination. This step is crucial to maintain the transparency and fairness of the proceedings.

9. **Potential Discovery Abuse**: The current approach of the Committee exhibits signs of potential discovery abuse, characterized by:

    a. Serving disproportionately broad and burdensome discovery requests on parties lacking the resources to respond adequately.
    b. Focusing requests on inflammatory or prejudicial topics with marginal relevance to the actual issues at dispute.
    c. Implying spoliation or lack of cooperation to portray the responding parties negatively before the court.
    d. Leveraging the significant imbalance of resources and expertise between the Committee counsel and pro se individuals to their advantage.

---

[3] Docket no. 2840 P. 55 (https://cases.stretto.com/public/x191/11749/PLEADINGS/1174906212380000000163.pdf)

10. **Concerns Regarding Due Process**: The Committee's pursuit of an extremely punitive "adverse inference" seems unjustified, posing a serious threat to the creditors' due process rights.

11. In conclusion, I urge you to consider these requests and concerns of potential discovery dissonance between insinuated malfeasance and stated aim to investigate squeeze occurrence, seriously, as they are integral to ensuring a fair resolution to the outstanding issues central to the creditors' recoveries.

I look forward to your guidance on the next steps to address these pressing concerns appropriately.

Regards,



Michael Gonzalez
Celsius Creditor:
#171633e7c3

[Rest of page intentionally left blank]