Hearing Date:  October 2, 2023, at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline:  September 22, 2023, at 4:00 p.m. (prevailing Eastern Time)

**KLEINBERG KAPLAN WOLFF & COHEN, P.C.**
Matthew J. Gold
Dov R. Kleiner
500 Fifth Avenue
New York, New York 10110
(212) 986-6000

*Counsel to Harrison Schoenau*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*, | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## OBJECTION OF HARRISON SCHOENAU TO CONFIRMATION INSOFAR AS IT PERTAINS TO DEBTORS' REQUEST FOR APPROVAL OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

Harrison Schoenau, by and through his undersigned counsel, hereby submits this (1) limited objection to the confirmation of the Debtors' plan of reorganization (docket 3319), and (2) objection to the Debtors' indirectly, incompletely and improperly proposed Alternative Dispute Resolution (ADR) procedures (docket 3444, Ex. J), and in support of his objection respectfully states as follows:

### Preliminary Statement

1.      Schoenau filed a limited objection regarding the Debtors' proposed ADR procedures in connection with the Disclosure Statement hearing on August 3, 2023 (docket 3161). Since that hearing counsel for Schoenau have participated in negotiations regarding the scope and terms of the ADR procedures with counsel for the creditors committee and certain other parties in interest. Significant progress has been made, but some of defendants' important requests have been

rejected, and objectionable provisions remain, as described below. Furthermore, critical aspects of the ADR procedures have not been included in the as-filed draft and remain to be negotiated or are simply vague. Accordingly, Schoenau files this limited objection.

2.      The Court should defer consideration of the ADR procedures until they have been finalized, which should allow the parties more time to consensually resolve outstanding issues and narrow the disputes to be presented to the Court. Such a delay will not prejudice the Debtors, creditors or the estates, because completed ADR procedures are not necessary for confirmation, and need not be invoked until the plan becomes effective, which the Debtors have estimated will be at least two months after confirmation. Alternatively, the Court should provide that the ADR procedures may be challenged by any party after (1) the Debtors have finalized the procedures and (2) such party has been designated by the Debtors to be included in the ADR process. However, should the Debtors insist upon obtaining approval of their still-incomplete the Court should reform the procedures as set forth below.

3.      The current draft of the proposed ADR procedures (the "Draft ADR Procedures"), contained in the current iteration of the plan supplement (docket 3444, Ex. J), are inadequate both substantively and procedurally. They are inadequate substantively because they tilt the playing field in favor of the Debtors. They are inadequate procedurally because they are clearly nothing more than a work-in-progress draft such that. the Debtors are asking this Court to endorse their blank check of ADR procedures to be finalized later.

4.      On their face the ADR procedures would be binding, at the Debtors' unilateral election, on substantially all preference defendants in actions that the Debtors have not commenced, as well as on creditors whose claims are objected to in the future. Schoenau is a Celsius customer who transacted in his account during the 90 days before the Celsius petition date.

He is potentially a preference defendant and thus potentially subject to the ADR procedures. He

should not be forced to raise objections to the ADR Procedures now when they are merely in draft

form and when the applicability of the procedures to him are contingent on later decisions by the

Debtors. But the Debtors' choice to shoehorn the ADR Procedures into the plan process, and in

advance of commencing adversary proceedings, leaves him no choice.

## Procedural Background

5.      The Debtors have not filed a motion seeking approval of the ADR, or indeed any

pleading that provides legal justification for the ADR, let alone provide points and authorities in

support of the extraordinary relief sought. Nor have they identified who would be bound by the

ADR procedures. Instead, they have merely uploaded an incomplete draft of the proposed ADR

procedures as part of the Plan Supplement. Pursuant to Section I.A.181 of the Plan the Plan

Supplement shall be deemed incorporated into and part of the Plan as if set forth therein in full,

which means that the Court would be approving, as part of a confirmed plan, incomplete ADR

procedures. No specific notice was given to potential avoidance action defendants, which is

especially prejudicial to potential defendants who are not creditors and who therefore might not

be closely following the docket pre-confirmation.

## Relief Requested and Reasons Therefore

6.      Schoenau objects to the inclusion of the ADR procedures in the Plan because ADR

procedures for adversary proceedings are not properly part of a plan of reorganization. ADR

procedures for adversary proceedings are not among the mandatory or permitted contents of a plan

under section 1123 of the Bankruptcy Code.

7.      By improperly including ADR procedures for adversary proceedings in the Plan the

Debtors obscure the role and perspective of the Court. In considering the Plan the Court considers

the best interests of creditors. However in adversary proceedings the Court acts as an impartial

12480014.6 - 09/22/23

arbiter. The Draft ADR procedures highlight the tension between these perspectives because the interests of creditors align with the plaintiff in adversary proceedings.

8.      The Court should defer consideration of the proposed Draft ADR procedures to give the parties more time to negotiate its terms. The simplest alternative would be to adjourn consideration of the ADR procedures. Alternatively the procedures could preserve the right of any Participant to raise objections should the Debtors designate them for inclusion.

### The Proposed ADR Procedures Improperly Favor the Debtors

9.      The ADR Procedures are far from neutral, and place a thumb on the scale in favor of the Debtors.

10.     Defendants are improperly required to bear half of the cost of ADR. Since the Debtors are requesting ADR, and since they presumably believe that the estate will benefit, the estate should pay the cost of ADR. The cost requirement is transparently one-sided, because the Debtors will have a large war chest for litigation expenses, a luxury that preference defendants and claimants will not have. This will allow the Debtors to use the cost of ADR as a cudgel to extract favorable settlements.

11.     The procedures are imposed on a mandatory basis on anyone designated by the Debtors, at their sole option, which could include all preference defendants (other than a small class of ADR-Ineligible Potential Defendants as designated in the Plan). The inclusion in the ADR Procedures of a nominal opportunity to opt-out does not change the mandatory nature of the proposed program because the Debtors have reserved the right to seek to compel participation by parties that attempt to opt out.

12.     Once a defendant (or a potential defendant) is designated by the Debtors for inclusion in ADR all proceedings before this Court are stayed (Section 2.6), which could strip a

defendant of its right to move to dismiss a complaint. The stay does not restrict the Debtors because they have the unilateral right to decide when to invoke the ADR and against whom.

13.     The Debtors have the unilateral right to select a mediator (section 5.1), and the mediation will be conducted pursuant to that mediator's rules, which have not been disclosed to anyone but the Debtors. Indeed, section 5.1 further provides that a Participating Claimant may not refuse any mediator on the list that the Debtors have yet to provide.

14.     Additional evidence of the one-sided nature of the Draft ADR Procedures is in the way that they contain express provisions for the Debtors to seek relief against Participating Claimants but no equivalent provisions to benefit Participating Claimants. There are specific provisions to enforce against non-debtors any failure to comply with the ADR procedures or negotiate in good faith (section 2.11) but no equivalent provisions enforceable against the Debtors. There is no enforcement mechanism for preference defendants if their requests for additional discovery from the Debtors[1] are not satisfied, leaving preference defendants in the dark as to whether they can seek relief from the Court or if their sole remedy is to withdraw from the ADR (which latter remedy will be empty if a Participating Claimant attempts to opt out and is ordered to participate).

15.     The attendance of the Participating Claimant in mediation sessions is mandatory, but the Debtors can delegate the attendance requirement to a Litigation Administrator (section 5.3). Since the Litigation Administrator is subject to supervision by a Board, and indeed the scope of the Litigation Administrator's autonomy is expressly limited (section 3.4), the ultimate

---

[1] Issues regarding the Debtors' obligation to make available information within their control will be especially important in the context of preference actions, because most of the relevant evidence for the Safe Harbor and Ordinary Course of Business defenses (discussed further below) will come from the Debtors.

unfettered authority of the Litigation Administrator to settle is unclear if not lacking, rendering the attendance requirement one-sided.

16.     In addition, as described below, defendants in similar positions should be encouraged to work together to streamline the process. The ADR process should be configured to permit the formation and participation of defendant groups, and confidentiality provisions should permit the sharing of information among defendants with a common interest, regardless of whether those defendants have common counsel or separate counsel. It would be grossly unfair to permit the Debtors access to the positions of all defendants in the ADR while those defendants are barred from communicating with each other.[2]

17.     Some of the proposed ADR procedures seem to be more suited to claims objections litigation than preference actions. For example, the mandatory first step, an Initial Assessment Procedure (section 1.2) requires parties designated by the Debtors for inclusion in ADR to provide information to the Debtors. Likewise, the Debtors may serve the defendants at the outset with a Valuation Form (sections 1.37, 3.1), but there is no provision for initial disclosures by the Debtors. These may make sense in the context of claims objections, but radically rewrite the rules for an avoidance action. Under the Federal Rules, in avoidance actions as in all federal litigation, it is the plaintiff who has to show its hand first. Moreover, in preference actions, pursuant to section 547(b) the plaintiff has the burden to conduct reasonable due diligence into the circumstances of the case and the reasonably knowable affirmative defenses. In addition, as discussed below, in the particular context of this case it is especially appropriate that initial discovery comes from the Debtors rather than from Defendants.

---

[2] This is a topic that was the subject of negotiations and where some progress was made, but in the version that was filed the Debtors retained control for themselves.

18.     Other ADR procedures are simply vague. It is unclear how the ADR procedures are meant to intersect with the Federal Rules of Civil Procedure and the Bankruptcy Rules governing adversary proceedings. Among other things, it is not clear whether the Debtors are required to serve a summons and complaint before designating a defendant for inclusion in the ADR program.

### The ADR Procedures Are Inappropriate to Preference Litigation in a Case Like This

19.     More importantly, the ADR procedures are poorly designed for preference cases in a case like this.

20.     It has been abundantly clear for some time that the most important gating issues for preference defendants in this case will be the viability of preference defenses, especially the Safe Harbor defense (section 546(e)) and the ordinary course of business defense (section 547(c)(2)) *See, e.g.,* Joint Stipulation and Agreed Scheduling Order by and among the Debtors, the Committee, and the Ad Hoc Groups With Respect to the Custody and Withhold Issues (docket 1044) ¶10 (setting forth Phase 2 issues regarding preference defenses).

21.     The most important aspects of these defenses will be largely if not entirely applicable to all defendants. For example, the Safe Harbor defense will be applicable if the Debtors fit the definition of Financial Participant and if the standard agreements used by the Debtors with their customers fit the definition of Securities Contract. Likewise, determining the ordinary course of business for the Debtors will likely be a common issue for most defendants.

22.     Most if not all of the relevant evidence for such defenses will be in the possession of the Debtors and not defendants. Thus the prejudicial effect of the ADR procedures will be that the Debtors will be able to conduct their own privileged review of the material evidence (which they may have done already) and then embark on negotiations with defendants who are in the dark. The Debtors should make this evidence available to defendants in advance of negotiations in order

Page **7**

to facilitate open and fair negotiations and to maximize the chance that a settlement can be achieved.[3]

23.    In cases with significant, common issues among wide-spread avoidance action defendants, parties often recognize the value in facilitating consideration of legal issues common to most, if not all defendants, in an organized, rather than piece-meal fashion.

24.    Such an approach makes eminent sense here for the same reasons. The ADR procedures, which contemplate engagement between the Debtors and individual defendants to the exclusion of a comprehensive unified approach, thus starts the preference litigation by prejudging the procedural aspects of common defenses before the parties have even been joined.

25.    The preference defense issues discussed above are, to be sure, not yet before the Court. This is another unfortunate consequence of the Debtors' decision to propose the ADR procedures prematurely and through an inappropriate procedural mechanism – the Court is being placed in the position of having to consider now issues that would ordinarily arise in a pre-trial conference in an adversary proceeding.

26.    It may be a good thing for the Debtors to provide an ADR alternative to those claimants who want to participate. But that is not what these overbroad ADR procedures provide.

### The Draft ADR Procedures Are Unripe For Consideration

27.    The Debtors have not complied with this Court's order (docket 3337) regarding "Key Dates and Deadlines with Respect to the Plan." That order (at 4) set September 8, 2023 as the deadline by which the Debtors must file the Plan Supplement. On September 8 the Debtors

---

[3] This issue is one that the Draft ADR Procedures label as to be negotiated. Schoenau objects now to preserve his rights.

filed a Plan Supplement, but it did not contain a completed set of ADR procedures but rather a work in progress draft.[4]

28.     As examples of the draft nature of what was filed critical components of the ADR procedures are left blank in the current draft, such as Annex A (referred to on p. 3 n. 3 of the draft ADR procedures as "to be negotiated") and the ADR Organization List (see Sections 1.6 and 2.4).

29.     The filing of a mere draft is not objectionable in the abstract, but becomes objectionable in the context of the confirmation procedures in this case. Because the Debtors are proceeding to confirmation with unfinished ADR procedures they are in essence asking this Court to sign a blank check that would provide the imprimatur of court approval to anything the Debtors subsequently file as purported amendments to the Plan Supplement.

30.     These omissions will not be cured by the subsequent filing of a revised set of ADR procedures after the objection deadline. The purpose of the Plan Supplement Deadline was to allow creditors to know in advance of the confirmation objection deadline what might be objectionable such that they could set those objections before the Court in writing. Schoenau reserves the right to respond in writing to any revised ADR procedures.

31.     Any ADR request, among other things, should comply with the requirements of Local Rule 9013-1(a), which provides that "Each motion shall specify the rules and statutory provisions upon which it is predicated and the legal authorities that support the requested relief, either in the motion or in a separate memorandum of law. If such specification has not been made, the Court may strike the motion from the calendar."

32.     The Debtors have not complied with Local Rule 9013-1(a) with regard to the ADR procedures. They have not specified the rules and statutory provisions that would justify the ADR

---

[4] As of the date hereof the Debtors have not updated the draft ADR procedures.

procedures, nor have they cited any legal authorities. It is patently insufficient to simply file the proposed ADR procedures themselves. While the Debtors have provided *explanations* of how the ADR procedures are intended to work, these explanations do not satisfy the deficiencies discussed above, which relate to the lack of legal justification for these procedures rather than the particulars of the procedures.

33.    Furthermore the Debtors have violated the requirements of this Court's Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/ Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings (the "SDNY ADR Procedures")[5], which expressly requires a motion by a party in interest (Section 1.1).

34.    These procedural deficiencies are not obviated by the Court's inherent power to devise ADR procedures on its own motion. The procedural rules cited above are not a limitation on what the Court can do, but rather provide due process protection to parties in interest when (as here) the relief is sought by the Debtors or any party other than the Court.

35.    In addition, the Debtors have failed to provide proper notice of their ADR request. The ADR procedures apply to at least two groups, holders of claims that are objected to, and avoidance action defendants, and the Debtors have not identified the members of either group. Due process requires that specific notice be provided to the parties who will be affected by the relief sought.

36.    For preference defendants, it seems simplest to defer consideration of ADR procedures until after complaints have been filed and the parties in interest identified. That is what is contemplated by the SDNY ADR Procedures, which provide for the filing of an ADR motion

---

[5] The SDNY ADR Procedures are applicable pursuant to Local Bankruptcy Rule 9019-1 and are available on the Court's web site (http://www.nysb.uscourts.gov/content/mediation-procedures).

12480014.6 - 09/22/23

"promptly after filing the initial document in the matter" (Section 1.1), that is, after the proceeding or contested matter has been commenced and the parties have been identified.

37.     It is not apparent why ADR for adversary proceedings must be resolved this far in advance, but if the Debtors need to have ADR procedures put in place before filing complaints they should identify as part of proper notice who they will be suing and in what amounts. Either way it seems self-evident that better ADR procedures will result if the Debtors continue to engage in advance with the parties in interest before presenting ADR procedures to the Court. [6]

38.     Indeed, the Debtors' own conduct proves this point. The Debtors have (properly) prioritized finalization of the Plan over finalization of the ADR procedures because a finalized plan is a prerequisite to confirmation while ADR procedures will not become relevant until the plan effective date.

39.     Accordingly, Court consideration of the ADR procedures should be deferred until the Debtors have finalized their draft and given interested parties an opportunity to review the completed procedures and, if necessary, submit reasoned objections to the Court. Alternatively, any preference defendant should be permitted to raise objections after they have been designated by the Debtors for inclusion.

40.     Furthermore, the conduct of avoidance action adversary proceedings is not a proper subject of a plan of reorganization. To be clear, it is appropriate for a plan of reorganization to dictate who will have standing and authority to bring avoidance actions on behalf of the estate. But the Debtors' proposal goes far beyond that in seeking to dictate how the adversary proceedings will be conducted and in ways that materially affect defendants.

---

[6] Counsel for the Creditors Committee has engaged in discussions with counsel for certain potential defendants, including Schoenau, but as reflected in the Draft ADR Procedures there are still significant unresolved issues.

## Conclusion

Wherefore Harrison Schoenau respectfully requests entry of an order striking the ADR Procedures from the Plan Supplement, or, in the alternative, providing that the ADR procedures may be challenged by any party after (1) the Debtors have finalized the procedures and (2) such party has been designated by the Debtors to be included in the ADR process, and providing such other and further relief as the Court deems just.

New York, New York
September 22, 2023

/s/Matthew J. Gold
Matthew J. Gold
Dov R. Kleiner
**KLEINBERG KAPLAN WOLFF & COHEN, P.C.**
500 Fifth Avenue
New York, New York  10110
(212) 986-6000

*Counsel to Harrison Schoenau*

12480014.6 - 09/22/23