Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# DECLARATION OF CHRISTOPHER FERRARO, INTERIM CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING OFFICER, AND CHIEF FINANCIAL OFFICER OF THE DEBTORS, IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT BY AND AMONG THE DEBTORS AND CORE SCIENTIFIC, (II) AUTHORIZING ENTRY INTO THE PURCHASE AND SALE AGREEMENT, (III) AUTHORIZING INTERCOMPANY TRANSFERS WITH CELSIUS MINING, AND (IV) GRANTING RELATED RELIEF

I, Christopher Ferraro, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius Network LLC ("Celsius" or "LLC," and together with the above-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

captioned debtors and debtors-in-possession, the "Debtors"). I joined Celsius on March 21, 2022. I was appointed as Chief Financial Officer on July 11, 2022, and I was appointed as interim Chief Executive Officer and Chief Restructuring Officer by the Special Committee (the "Special Committee") of Debtor Celsius Network Limited ("CNL") on September 27, 2022 following the resignation of the Debtors' co-founder and former chief executive officer, Alex Mashinsky. Debtor Celsius Mining LLC ("Celsius Mining") is a wholly-owned subsidiary of Debtor Celsius US Holding LLC, which in turn is a wholly-owned subsidiary of CNL.

2. I am familiar with the *Debtors' Motion for Entry of an Order (I) Approving the Settlement by and Among the Debtors and Core Scientific, (II) Authorizing Entry into The Purchase and Sale Agreement, (III) Authorizing Intercompany Transfers with Celsius Mining, and (IV) Granting Related Relief* [Docket No. 3474] (the "Motion") and that certain purchase and sale agreement, between Celsius Mining and Core Scientific Operating Company, f/k/a Core Scientific, Inc. ("Core" and together with Celsius Mining, the "Parties") and dated September 14, 2023 (the "PSA" and the settlement therein, the "Settlement"), which the Motion seeks to approve, and submit this declaration (this "Declaration") in support thereof.[2]

3. In my capacity as the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer, I am generally familiar with the Debtors' day-to-day operations, business, financial affairs, and ongoing restructuring efforts, and Celsius Mining's ongoing dispute and negotiation with Core. Except as otherwise indicated, all facts in this Declaration are based upon (a) my personal knowledge of the Debtors' operations, (b) my discussions with other members of the Debtors' management team and advisors, and (c) my review of relevant documents

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or PSA, as applicable. In the event of any inconsistency between this Declaration, the Motion, and/or the PSA, the PSA controls in all respects.

2

and information concerning the Debtors' operations. I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

### Qualifications

4. I have approximately two decades of experience in financial planning and analysis activities, asset and liability management, and product control. Before my roles with Celsius, I was a Senior Managing Director at Cerberus Operations & Advisory Company ("Cerberus"), where I focused on improving the operating returns for two legacy portfolio positions. In this role, I advised the chief executive officer and leadership team on increasing profitability by changing and repricing business mix, restructuring costs, and optimizing the balance sheet.

5. Prior to Cerberus, I served in various roles at JPMorgan Chase & Co. from 2001 to 2018. I was the head of Financial Analysis and a Senior Leader, where I was responsible for all financial, planning, and analysis activities, developed analytical tools, and authored a patent application in forecasting. Before my role as head of Financial Analysis and a Senior Leader, I was the Treasurer of the Consumer Bank and the Retail Loan Pricing Manager.

6. I hold a Bachelor's degree in Economics, Finance, & Accounting from the University of Washington. I also passed the Washington state Uniform Certified Public Accountant Examination.

### Responsibilities

7. In my roles as interim Chief Executive Officer and Chief Restructuring Officer, I oversee the Debtors' day-to-day business operations, including supporting the Debtors' restructuring efforts and managing the Debtors' mining business, among other responsibilities. I regularly engage with the Debtors' advisors, and I report directly to the Special Committee, with

conferences being held multiple times a week (sometimes daily), as needed. During these meetings with the Special Committee and the Debtors' advisors, we regularly discuss the Debtors' mining business and the status of various litigated matters between the Debtors and Core, including the various breach of contract claims, the power pass-through charges, the advanced payment the Debtors made to Core before Core rejected the Celsius Contract, the return of the Debtors' rigs after Core rejected the Celsius Contracts (collectively, the "Core Matters"), and the settlement negotiations leading to the PSA.

8.    For almost a year, we have discussed various strategies to resolve the Core Matters, which were scheduled for mediation in July 2023. Discovery related to the Core Matters, which included six depositions and would have included one additional fact deposition and complicated expert testimony on several topics, has been well under way since last fall before Core commenced the Core Chapter 11 cases in December 2022.

### The Settlement

9.    With the Core Matters remaining as one of the few unresolved issues in the Debtors' chapter 11 cases, and with the prospects of facing multiple trials in two bankruptcy courts, the Parties reengaged in settlement negotiations in recent months. These negotiations were successful—the Parties agreed to the PSA under which the Debtors will acquire Core's Cedarvale mining site for $45 million, with $14 million in cash and the remaining $31 million serving as consideration for the Debtors' release of Core from the Debtors' claims in the Core Matters. The PSA does not release the Excluded Claims[3] related to the Convertible Notes.

---

[3]    The Excluded Claims are claims held by the Debtors against Core related to that certain Secured Convertible Note Purchase Agreement, dated as of April 19, 2021, and the guarantees and security documents issued as part of that transaction.

10. I understand that the Debtors will acquire the approximately 85-acre Cedarvale site, together with certain existing architectural and mining infrastructure and the right to assume certain service contracts to which Core has been a party, at a reasonable price. Pursuant to an agreement with the Texas New Mexico Power Company, the Cedarvale site will be allocated at least 215 megawatts of electrical capacity deliverable to the on-site substation upon closing.

11. Furthermore, bitcoin mining will be one of the central features of NewCo's business, and the ongoing construction at the Cedarvale site and the additional mining capacity upon completion will be incorporated into the Debtors' existing mining operations and transferred to the NewCo. To ensure that development of the Cedarvale site will not be disrupted by the change in ownership under the Settlement and that it will become operative and start generating income for NewCo for the benefits of NewCo's shareholders (the Debtors' creditors) as soon as possible, it is important that the Debtors provide Celsius Mining, through intercompany transfers, with enough capital to support the continuous development of the Cedarvale site during these chapter 11 cases.

12. Without the Settlement, not only will the Debtors lose the opportunity to acquire, develop, and integrate the Cedarvale site at a reasonable price for the benefit of their creditors, but the litigation with Core on the Core Matters would require considerable resources, including significant additional legal and administrative expenses by both the Debtors and the Celsius UCC (all of which would be paid for by the Debtors' estates).

13. It is my understanding that litigating the Core Matters would risk delaying confirmation of the Debtors' Plan. Any such delay could result in the incurrence of millions of dollars in additional administrative expenses. It is critical that the Debtors avoid the costs and delays associated with litigation and any delay of confirmation.

14. I have also been informed that, while the Debtors believe that the Core Matters would be decided in their favor, in addition to costs and delay, the Debtors would face significant litigation risk. In addition, I have been informed that even if the Debtors prevailed and were able to liquidate full damages arising from Core's breach of the Celsius Contracts, the Debtors have merely a general unsecured claim against Core's bankruptcy estates. That potential downside further supports the reasonableness of the Settlement.

15. I understand that the releases granted by the Settlement are a necessary component of the Settlement, and I believe that they are appropriate under the circumstances.

16. The Settlement is the result of good-faith, arms'-length negotiations between the Debtors, the Celsius UCC, Core, and their respective advisors.

17. Considering the benefits that the Settlement Agreement affords the estates and the costs and risks associated with continued litigation, I believe that entry into the Settlement Agreement is in the best interest of the Debtors' estates and all stakeholders. The Settlement Agreement avoids the delay, costs, and risks associated with litigating the Core Matters and all future litigation between the Debtors and Core, except the Excluded Claims. The Settlement Agreement also increases certainty moving forward and reduces the time the Debtors' employees must spend preparing for or participating in ongoing litigation, allowing them to focus their efforts on other issues to maximize the value of the Debtors' estates and exit these chapter 11 cases, including developing the Cedarvale stie, maximizing the value of the Debtors' mining operations, soliciting the Plan, and preparing for distributions if the Plan is confirmed.

18. Entering into the PSA and the Settlement benefits each of the Debtors' stakeholders by building consensus and minimizing costs and risks. Resolving the Core Matters at a practical cost with the additional benefit of acquiring a valuable mining site is invaluable to the Debtors'

6

estates. Therefore, I believe that the Settlement is entirely reasonable and in the best interests of the Debtors' estates and all stakeholders.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 26, 2023

/s/ Christopher Ferraro
Name:  Christopher Ferraro
Title:   Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network LLC