Warren E. Gluck, Esq.  
Holland & Knight LLP  
31 West 52nd Street, 12th Floor  
New York, NY 10019  
Tel: 212.513.3200  
Email: warren.gluck@hklaw.com

John J. Monaghan, Esq. (pro hac vice pending)  
Holland & Knight LLP  
10 St. James Avenue, 11th Floor  
Boston, MA 02116  
Tel: 617.573.5834  
Email: john.monaghan@hklaw.com

*Counsel to the Foreign Representatives  
of Three Arrows Capital, Ltd.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

**MOTION OF FOREIGN REPRESENTATIVES OF  
THREE ARROWS CAPITAL, LTD. FOR RELIEF FROM THE AUTOMATIC  
STAY TO ALLOW FOR SETOFF OF MUTUAL OBLIGATIONS**

Russell Crumpler and Christopher Farmer (the "Foreign Representatives"), in their capacities as joint liquidators appointed by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court") in the liquidation proceeding relating to Three Arrows Capital, Ltd. ("3AC") in the British Virgin Islands (the "BVI Proceeding") and duly authorized in the Chapter 15 case of *In re Three Arrows Capital Ltd.*, Case No. 22-10920 (Bankr. S.D.N.Y. 2022) to act as foreign representatives, hereby submit this motion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFiLLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(the "Motion") pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York for entry of an order substantially in the form attached hereto as Exhibit A (the "Order") granting: (i) relief from the automatic stay to permit the Foreign Representatives and 3AC to assert setoff rights in connection with the claim adjudication process in the BVI Proceeding; and (ii) related relief. In support of this Motion, the Foreign Representatives rely upon the Declaration of Russell Crumpler in Support of The Motion of Foreign Representatives of 3AC for Relief from the Automatic Stay to Allow for Setoff of Mutual Obligations. In further support of this Motion the Foreign Representatives respectfully submit as follows:

## INTRODUCTION

1.       As set forth below, Debtor Celsius Network, Ltd. ("Celsius Network") and the Foreign Representatives of 3AC each assert against the other claims arising prior to the July 13, 2022 commencement of these jointly administered chapter 11 cases (the "Chapter 11 Cases"). Under the laws of the British Virgin Islands ("BVI"), those mutual prepetition claims are subject to setoff in the claims reconciliation and adjudication process to be undertaken in the BVI Proceedings. United States bankruptcy law is in accord: The Bankruptcy Code expressly preserves setoff rights via 11 U.S.C. § 553, and the Fourth Amended Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Dkt. No. 3319) (the "Plan") classifies such claims as unimpaired "Other Secured Claims." Both the Bankruptcy Code and the Plan, however, condition the exercise of those preserved statutory and Plan rights on the filing of a motion for relief from stay. It is to fulfill that largely administrative requirement that the relief requested herein is sought.

2

**JURISDICTION**

2. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11.

3. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The Foreign Representatives consent to this Court's entry of a final order on the Motion.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief sought herein include sections 362(d)(1) and 553 of the Bankruptcy Code, Bankruptcy Rule 4001, and Rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York.

**BACKGROUND**

7. 3AC was an investment firm incorporated in the BVI with a focus on trading cryptocurrency and other digital assets. 3AC was founded in 2012 and initially focused on foreign exchange arbitrage before shifting to cryptocurrency trading in 2018.

8. Celsius Network was a lender to 3AC, having extended three loans in particular with a total initial U.S. dollar value of over $160 million.[2] More specifically, these loans were:

    a. A series of unsecured advances of bitcoin ("BTC") pursuant to a Digital Assets Lending Agreement dated as of May 25, 2019 with a balance as of June 16, 2021 of 2,250 BTC (the "First Loan");

---

[2] Premised on the published closing price of BTC on June 16, 2021 of $38,347.06.

3

      b.      A US Dollar Coin ("USDC") loan in the equivalent amount of $50 million secured by 1,697.79 BTC extended on May 22, 2022 (the "Second Loan"); and

      c.      An unsecured USDC loan in the equivalent amount of $25 million extended on May 31, 2022 (the "Third Loan").

9. Over the course of two days, and almost a year after the last advance was made by Celsius Network to 3AC under the First Loan, 3AC made three payments toward its obligations under the First Loan with an aggregate U.S. Dollar equivalent value of $65,267,248. Those payments consisted of a 1,250 BTC payment on May 12, 2022 and a 335 BTC and a 665 BTC payment on May 13, 2022.

10. Celsius Network exercised its post-default secured party rights as to the BTC collateral posted as security for the Second Loan. No payments were made by 3AC to Celsius Network toward the Third Loan.

11. Forty-five days after making over $65 million in payments to Celsius Network, 3AC was in insolvency proceedings in the BVI. On June 27, 2022, the BVI Court issued an order for the liquidation of 3AC. The Foreign Representatives were appointed as of that same date.

12. Celsius Network was not far behind in its commencement of insolvency proceedings, but, importantly, it was behind. It commenced its chapter 11 case before this Court through filing a voluntary petition under chapter 11, along with its co-debtors, on July 13, 2022.

## RELIEF REQUESTED

13. Pursuant to Section 362(d) of the Bankruptcy Code, the Foreign Representatives seek relief from the automatic stay imposed by Section 362(a)(7) of the Bankruptcy Code to assert a setoff defense as preserved under Section 553(a) of the Bankruptcy Code and as recognized

4

under BVI law to reduce or eliminate the claims asserted by Debtor Celsius Network in the BVI Proceeding.

## BASIS FOR RELIEF

14.     Celsius Network has asserted a claim in the BVI Proceedings in the amount of $41,210,309.24. Celsius Network asserts that its claim is comprised of (i) the unpaid $25 million principal balance, accrued interest of $619,520.55 and late fees of $395,483.69 due under the Third Loan and (ii) a $15,195,305 unsecured deficiency claim remaining after the proceeds of foreclosure on the BTC collateral for the Second Loan are applied.

15.     Under BVI law, however, Celsius Network's asserted claim is subject to setoff of amounts subject to avoidance on an "unfair preference" theory—here the amount of the $65,267,248 for payments made by 3AC on May 12 and 13, 2022 toward the First Loan and interest.

16.     The laws of the BVI establish an avoidance action theory akin to Section 547 of the Bankruptcy Code's preferential transfer avoidance action theory. Under Section 245 of the Insolvency Act 2003 (IA 2003) "unfair preferences" are subject to avoidance. Under BVI law, a transaction is an unfair preference if: (i) it is entered into when the payor company is insolvent or the transaction causes the company to become insolvent, meaning that the company is unable to pay its debts as they come due (an "Insolvency Transaction"); (ii) the transaction was entered into within the period (a) commencing 2 years prior to the onset of insolvency in the case of a connected person and ending on the appointment of a liquidator or (b) commencing 6 months prior to the onset of insolvency and ending on the appointment of a liquidator in the case of any other person (the "Vulnerability Period"); and (iii) the transaction puts the creditor into a better position than it otherwise would have been in upon the company entering liquidation.

5

17. Decisional law issued by English courts and applied by BVI courts also indicates that, much like Section 502(d) of the Bankruptcy Code, recipients of avoidable transfers are, under BVI law, not entitled to receive distribution in an insolvency proceeding until and unless they repay the avoidable transfer. Under the English court issued decision in *Cherry v Boultbee*, (1839) 4 My & Cr 442, 41 ER 171, referred to as having been applied in the BVI in *Treehouse Investments & Anor v Jackson & Ors* [2022] ECSC J0623-2 at [17], [21] and [34], persons who have a right to share in a fund and are also bound to contribute to it must make a contribution before they are able to receive the share to which they are entitled.

18. Finally, England decisional law generally followed by BVI courts also recognizes and enforces the concept that distributions to creditors in an insolvency should be net of obligations owed by that creditor to the insolvent company. *See Re Leeds & Hanley Theatres of Varieties Ltd* [1904] 2 Ch 45 (a creditor that also owes money to the insolvent company should receive only the net amount calculated based on a notional distribution analysis that assumes the creditor had fully repaid its obligation).

19. To be clear, the Foreign Representatives do not seek this Court's adjudication of the relative merits of 3AC and Celsius Network's competing claims—although they are most assuredly prepared to proceed as to the relative merits. Rather, they are seeking entry of an order making clear that they or 3AC may assert setoff rights as a defense to the claim asserted by Celsius Network in the BVI Proceedings without running afoul of the automatic stay or the discharge injunction should the Plan be confirmed. The Foreign Representatives submit that the relative merits of Celsius Network's claim in the BVI Proceeding and of the BVI law avoidance action is best left with the BVI Court.

**APPLICABLE AUTHORITY**

A.   **The Bankruptcy Code and Celsius Network's Plan**

20.   Section 553 of the Bankruptcy Code is clear. "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

21.   The statutory cross reference to section 362 implicates section 362(a)(7), which precludes, during the pendency of a chapter 11 case, "the setoff of any debt owing to the debtor that arose before commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Exercise of setoff rights during the pendency of a chapter 11 case is, therefore, conditioned upon a grant of relief from stay in accordance with Bankruptcy Code Section 362(d). 11 U.S.C. § 362(d).

22.   Those parties-in-interest that do hold setoff rights are statutorily ascribed secured party status. Section 506(a) of the Bankruptcy Code makes clear that "an allowed claim of a creditor … that is subject to a setoff under section 553 of this title is a secured claim … to the extent of the amount subject to setoff." 11 U.S.C. § 506(a)(1).

23.   The Plan tracks those statutory provisions, expressly providing that setoff claims are entitled to secured claim status, Plan § I(227), and that holders of those secured claims are unimpaired. Plan § III(B)(1).

24.   The Plan, however, provides one gating item to a creditor's rights to assert its statutorily preserved setoff right. Specifically, Section VI (L) of the Plan provides the following:

> In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any claim, right, or Cause of Action of the Debtors or Post-Effective Date

7

Debtors (as applicable), unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

25.    The consequences of failing to follow the required motion practice are draconian.

Section VIII(F) of the Plan provides as follows:

[E]xcept as otherwise expressly provided in the Plan or the Confirmation Order, [all claim holders are permanently enjoined from] asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise

26.    It is that procedural gating item that the Foreign Representatives seek to address through this motion.

**B.    Relief From the Automatic Stay is Appropriate When Setoff Rights Exist**

27.    Celsius Network's commencement of its chapter 11 case imposed an automatic stay temporarily blocking "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. § 362(a)(7).  The automatic stay, however, does not defeat the right of setoff under the Bankruptcy Code.  *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

28.    "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff that otherwise exists is preserved in bankruptcy." *Id.*; *see also Breeden v. Manufactures and Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 146 F.3d 136, 138-39 (2d Cir. 1998); *Scherling v. Hellman Electric*

8

*Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995) ([The Bankruptcy Code] "is not an independent source of setoff rights.").

29.     Specifically, Section 553 of the Bankruptcy Code provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a); *see also Scherling v. Hellman Electric Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995) ([The Bankruptcy Code] "is not an independent source of setoff rights.").

30.     The analysis as to whether relief from stay to effect a post-petition setoff should be granted starts with the provisions of Section 362(d) of the Bankruptcy Code, which provides that relief from the automatic stay may be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d). "The determination of whether sufficient cause exists to grant stay relief must be addressed on a case by case basis." *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). When deciding whether to modify the stay, a court will review the facts of each request to determine whether relief is appropriate under the circumstances. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 837-38 (Bankr. S.D.N.Y. 1990).

31.     When stay relief is sought to effect a setoff, the underpinnings of the analysis include recognition that the right of setoff allows entities that have mutual obligations "to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Bennett Funding*, 146 F.3d at 140 (quoting *Strumpf,* 516 U.S. at 18). Although the decision to allow setoff is within the sound discretion of the bankruptcy court, *Bank of America, N.A. v. Lehman Brothers Holding Inc. (In re Lehman Brothers Holdings, Inc.),* 439 B.R. 811, 824

9

(Bankr. S.D.N.Y. 2010), "[e]quity favors the right of setoff as a means to avoid multiplicity of lawsuits, inconvenience, injustice, and inefficient use of judicial resources …. Accordingly, setoff ordinarily should be permitted 'unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy [Code] as a whole.'" *Id.* (*citing Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1165 (2d Cir. 1979)).

32.     Setoff, although permissive, is a preferred remedy in the Second Circuit. *Gribben v. U.S. (In re Gribben)*, 158 B.R. 920, 925 (Bankr. S.D.N.Y. 1993). "The Second Circuit has repeatedly favored the allowance of setoffs." *Scherling v. Chase Manhattan Bank (In re Tilston Roberts Corp.)*, 75 B.R. 76, 79 (Bankr. S.D.N.Y. 1987); *see also In re Applied Logic Corp.*, 576 F.2d 952 (2d Cir. 1978).

33.     The primary statutory predicates to setoff are existence of the right of setoff under applicable non-bankruptcy law and mutuality. 11 U.S.C. § 553(a).

34.     As set forth above, the BVI Court's previous application of the English court's rule established in *Cherry v Boultbee* or the procedure set out in *Re Leeds & Hanley Theatres* calls for the netting or setoff of mutual obligations.

35.     Under Bankruptcy Code section 553, the requisite mutuality exists where the "debts and credits are in the same right and are between the same parties, standing in the same capacity." *In re Westchester Structures, Inc.*, 181 B.R. at 739; *see also Bennett Funding*, 146 F.3d at 139. (The issue is "whether the creditor and the bankrupt debtor each incurred a debt to the other in the same right or capacity.").

36.     Celsius Network asserts a claim in the BVI Proceeding arising under a May 31, 2022 loan agreement. The BVI law "unfair preference" avoidance action claim that is to be setoff or netted will be pursued by the Foreign Representatives solely in their capacities as joint

10

liquidators of the sole obligor under that May 31, 2022 loan agreement, 3AC, and will be applied to reduce or eliminate Celsius Network's claim against 3AC. Both the May 31, 2022 loan agreement execution that gave rise to Celsius Network's claim against 3AC and the June 27, 2022 commencement of the BVI Proceeding that gave rise to its avoidance action claim against Celsius Network occurred prior to Celsius Network's July 13, 2022 commencement of its chapter 11 case.

37. The statutory requirements, and the Plan-envisioned conditions, to preservation of an assertion of setoff rights having been met, the Foreign Representatives request that an order be entered in the form attached hereto as <u>Exhibit A</u>, authorizing the Foreign Representatives for and on behalf of 3AC to assert a setoff defense to reduce or eliminate the claims of Debtor Celsius Network in the BVI Proceeding.

## NOTICE

38. Notice of this Motion shall be given to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Debtors; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and counsel to the Debtors; (g) counsel to the Official Committee of Unsecured Creditors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

39. No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Foreign Representatives, for and on behalf of 3AC, respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested in this Motion and such further relief as may be just and proper.

Dated: September 26, 2023
New York, New York

Respectfully submitted,

*/s/ Warren E. Gluck*
Warren E. Gluck, Esq.
Holland & Knight LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
Tel: 212.513.3200
Email: warren.gluck@hklaw.com

John J. Monaghan, Esq. (pro hac vice pending)
Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel: 617.573.5834
Email: john.monaghan@hklaw.com

*Counsel to the Foreign Representatives of Three Arrows Capital, Ltd.*