**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
 sam.hershey@whitecase.com
 jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
 gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF MARK ROBINSON**
**IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

I, Mark Robinson, declare pursuant to 28 U.S.C. § 1746 as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

AMERICAS 116616989 v1

1.      I submit this declaration in support of confirmation of the *Joint Plan of Reorganization of Celsius Network LLC and Its Debtors Affiliates* [Dkt. No. 3319] (the "**Plan**").[2]

2.      I am an American citizen and a resident of Elizabethtown, Kentucky. I am a licensed attorney in the state of Tennessee and currently serve as Chief of Justice at the Fort Knox Consolidated Military Justice Office. I have served as an active member of the United States Armed Forces since 2009.

3.      On July 27, 2022, I was appointed as a member of the Official Committee of Unsecured Creditors (the "**Committee**") of Celsius Network, LLC and its affiliated debtors (collectively, the "**Debtors**") in these chapter 11 cases (the "**Chapter 11 Cases**") by the United States Trustee for Region 2. I make this declaration in my personal capacity as a member of the Committee and not on behalf of the United States government or armed forces.

4.      Since my appointment to the Committee, I have been actively involved in the development of these Chapter 11 Cases, including generally participating in weekly Committee meetings, email correspondence, and telephone calls relating to critical matters, participating in a month's-long plan process that culminated in a competitive auction to select the Fahrenheit group as Plan sponsor, and a significant time attending interviews, discussions and deliberations regarding the selection of the Committee's appointees to the NewCo board and Litigation Oversight Committee. I have not been compensated for my time spent on the Committee or this testimony in any way.

5.      The Committee's process to select the board for NewCo began in the spring of this year, after NovaWulf Digital Management ("**NovaWulf**") was announced to be the stalking horse

---

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

bidder for the Debtors' proposed Plan. I participated extensively in the deliberations regarding the auction.

6. The Committee's overall goal was to select a New Board whose members would be a significant counterweight to the outside managers of NewCo, but also have the expertise and credibility to work with those managers to build a successful business, without taking unnecessary or disproportionate risk with creditors' assets.

7. The Committee ran an open process to identify potential NewCo board members and received applications from many sources. Certain candidates expressed interest directly to the Committee by reaching out to its members or professionals. Other creditors and various ad hoc groups that have appeared in these Chapter 11 Cases proposed candidates for consideration. Three of my fellow Committee members submitted themselves for consideration. Additionally, the Committee, in consultation with its advisors, determined that its advisors would also bring a roster of qualified candidates for the Committee's consideration. All connections of potential candidates to the Committee's advisors were disclosed and discussed among the Committee members. Over a period of months, the Committee considered approximately 45 candidates for positions on the NewCo board.

8. The Committee then met regularly—at times in multiple meetings per week—to discuss the various candidates and the Committee's potential selections. While the Committee's advisors participated in those meetings, the discussion of each individual's candidacy was largely driven by members of the Committee and the Committee members had many independent discussions regarding the proposed candidates.

9. At these meetings, the Committee also discussed the qualifications and core competencies the Committee believes are necessary to successfully serve on the New Board.

These qualifications include, but are not limited to, prior experience serving on boards of public companies, audit committee experience, risk management committee-related experience, cryptocurrency-related experience (especially with respect to the proposed businesses of NewCo), regulatory experience, experience with the Celsius bankruptcy case, status as a prepetition creditor, and satisfaction of the NASDAQ requirements for boards of directors (including with respect to independence and diversity).

10. The Committee's evaluation of New Board candidates was thorough and comprehensive. Initially, the Committee was provided with CVs and other application materials. Based on a review of these materials, the Committee identified and interviewed candidates that it determined might possess the necessary qualifications and core competencies to serve on the New Board. Nine of the candidates interviewed were creditors of the Debtors. All told, the Committee conducted 19 interviews over several weeks. Each of these interviews was videotaped (with the participants' consent) so that members of the Committee who could not attend live would be able to watch later. The Committee also authorized counsel to hire an independent investigator to conduct comprehensive background checks on certain candidates who were interviewed. The results of the background checks were shared with the Committee and thoroughly discussed at multiple meetings. Additionally, each candidate under consideration for interviews submitted responses to a lengthy questionnaire regarding the candidate's biographical information, independence, audit committee experience and compliance with other NASDAQ requirements. I was provided with the ability to ask any questions of the candidates and our advisors during the process.

11. One of the candidates that the Committee interviewed and ultimately selected to serve on the New Board is Emmanuel Aidoo. At the time of his interview, Mr. Aidoo served as

4

Executive Director at Perella Weinberg Partners ("**PWP**"), investment banker to the Committee in these Chapter 11 Cases. Mr. Aidoo has been advising the Committee with respect to these cases. Prior to being nominated for consideration, Mr. Aidoo disclosed that he would be stepping down from his Executive Director position at PWP to serve in a senior advisory capacity as an independent contractor in short order. I understood that meant that Mr. Aidoo would not have an economic interest in PWP upon his resignation. It is also my understanding that PWP has no contracts or arrangements to work with NewCo in the future.

12.     At the outset of his candidacy, and prior to his interview, Mr. Aidoo disclosed to the Committee's advisors certain tax arrearages, which included liens filed against him. I understand those tax liens resulted from a change from his former expatriate employee status, and the transition from his employer previously handling his US income tax filings while he was an expatriate. I further understand that the Internal Revenue Service (the "**IRS**") was not able to reach Mr. Aidoo because he had moved US addresses upon his return, and thus he did not receive certain correspondence relating to the amounts owed. As part of the board selection process, Mr. Aidoo provided a letter from his accountant explaining the situation to the Committee, assuring them that he worked with the IRS to enter into an instalment payment agreement. It is my understanding, including based on that letter, that Mr. Aidoo has fulfilled and is currently fulfilling the obligations contemplated by that payment plan. The Committee advisors also informed the Committee of Mr. Aidoo's tax liens through their review of the background check conducted on him. I asked questions regarding Mr. Aidoo's tax liens as part of our discussions in connection with Mr. Aidoo's candidacy. Considering these facts, the Committee concluded that the tax lien matter did not preclude Mr. Aidoo from serving as a director of the New Board or outweigh the other strengths of his candidacy.

5

13. As part of the discussion concerning the New Board, the Committee decided that it would be in the best interests of unsecured creditors and NewCo to increase the size of the New Board from seven to nine members, with both the Committee and Fahrenheit having an additional seat in their sole discretion. The Committee reached its decision based on a variety of factors, including the time commitment and quantity of work that we expect the New Board will need to perform during the inaugural months of NewCo's existence, the externally managed structure of NewCo in which the New Board has to address oversight of independent managers as well as the executive leadership team, the difficulties of managing the emergence from bankruptcy and transition from a private company to a public company, as well as the commonly shared view that the New Board would benefit greatly from an experienced set of directors who would manage operations and oversight functions appropriately. The Committee discussed and asked questions of its advisors regarding the decision to increase the size of the board, including how Fahrenheit's voting power would be affected by the Committee's decision.

14. Several members of the Committee nominated themselves for positions on the New Board. I was not one of those members. Recognizing the importance of having board members with financial and public company advisory experience, but also recognizing the importance of having creditor involvement in the Board, as part of the selection process, the Committee reserved two board seats for prepetition creditors, including Committee members. All the other prepetition creditors of the Debtors who were interviewed were considered for those two positions. Interested members of the Committee recused themselves from the discussion or vote with respect to those positions. After careful consideration and discussions with the Committee's advisors, the members who voted on those positions unanimously voted to select Scott Duffy and Thomas DiFiore, the co-chairs of the Committee, to the New Board.

15. All candidates, other than the Committee members who sought appointment to the New Board, were eligible for the other four Committee-selected positions on the New Board. Each of the candidates (including all the non-creditor independent candidates) was questioned with respect to how they would address conflicts with the external managers of NewCo and thereby protect value for the Celsius creditors who would be the shareholders. Through extensive discussions, the Committee determined that Emmanuel Aidoo, Elizabeth LaPuma, Frederick Arnold, and Maxwell Holmes were the most qualified candidates for the remaining four board seats. Ultimately, the Committee selected those individuals to serve on the New Board.

16. Among the candidates that the Committee considered was Richard Phillips, who reached out to the Committee directly in March to express his interest in serving on the New Board. Initially, Mr. Phillips refused to disclose his identity to the Committee, and he requested to advance his candidacy anonymously. As a result, the Committee determined not to pursue Mr. Phillips's candidacy at that time. Shortly thereafter, a member of the Committee identified Mr. Phillips based on his participation in a court hearing. Mr. Phillips then confirmed his identity and submitted an unredacted resume and other relevant application materials for official consideration by the Committee. After considering Mr. Phillips's application, the Committee determined not to select him as a member of the New Board. After the Committee's selections for the New Board were announced, I understand that Mr. Phillips sent the Committee and its advisors several emails attacking the Committee's decisions in connection with the New Board. One of Mr. Phillips's emails to the Committee's advisors which was shown to me is attached as **Exhibit A**.

17. I have read Mr. Phillips's objection to the confirmation of the Debtors' Plan, asserting general disapproval of the selection process and stating that Mr. Aidoo is not fit to serve on the New Board because of the tax liens against him. As discussed above, the Committee

7

investigated Mr. Aidoo's tax liens prior to his selection and determined they did not disqualify him from serving on the New Board. I have observed Mr. Aidoo be a champion of unsecured creditors throughout these Chapter 11 Cases. He possesses deep institutional knowledge of the cryptocurrency industry and financial expertise and has great credibility and familiarity among executives within the industry. Further, his interview demonstrated a mindset to fiercely advocate to protect the victims of Celsius who will become NewCo shareholders. He is therefore eminently qualified for his role on the New Board and has demonstrated that he will work hard to advance the interests of the Debtors' creditors.

18. Additionally, following the initial announcement of the selection of the New Board, the Committee engaged in extensive negotiations with Fahrenheit, the Earn Ad Hoc Group, Mr. Phillips, and Simon Dixon regarding composition of the New Board. Ultimately, the Committee reached agreements with Fahrenheit, the Earn Ad Hoc Group, and Mr. Dixon. As part of that resolution, three significant prepetition creditors, Brett Perry, Joseph Lehrfeld, and Simon Dixon will be appointed as observers to the New Board to further advance the success of NewCo.

19. It is my belief that the directors of the New Board selected by the Committee are the best and most qualified candidates to fill those positions and come equipped with extensive knowledge and experience to ensure the success of NewCo and the greatest recoveries for Celsius's creditors.

[*Remainder of page intentionally left blank*]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   September 27, 2023
               Fort Knox, Kentucky

_____
Mark Robinson
Member of the Official Committee of Unsecured
Creditors

**EXHIBIT A**

## Colodny, Aaron

| | |
|---|---|
| From: | celbk7 <celbk7@proton.me> |
| Sent: | Thursday, September 14, 2023 1:48 PM |
| To: | Colodny, Aaron; Pesce, Gregory; Wofford, Keith; Duffy, Scott  (External); DiFiore, Thomas (External) |
| Subject: | Board Diversity Requirements - UCC only needs ONE |

I've confirmed that in my lay opinion that Asher Genoot meets the definition of mixed race per NASDAQ listing rules

From Asher:
My father is Jewish and was born in Libya, North Africa but moved to Israel at a young age when the country was formed.

My mother is from Shanghai, China and converted to Judaism.

Both moved to the USA in their early adult years and met in Los Angeles.

I am a first generation American, born and raised in USA, and first generation college graduate as well.


Sent with Proton Mail secure email.