| | |
|---|---|
| Joshua A. Sussberg, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:     (212) 446-4900<br><br>*Counsel to the Debtors and Debtors in Possession* | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:     (312) 862-2000<br>Facsimile:     (312) 862-2200 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>                                            Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |

**DECLARATION OF ALLISON HOEINGHAUS**
**IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

I, Allison Hoeinghaus, hereby declare under penalty of perjury:

1.  I am a Managing Director at Alvarez & Marsal ("A&M"). A&M's retention was approved by the Court effective as of the Petition Date.[2] As part of this retention, Celsius Network LLC (one of the debtors and, together with the above-captioned debtors and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] *See Order Authorizing Debtors to Employ and Retain Alvarez and Marsal North America, LLC as Financial Advisor to the Debtors and Debtors in Possession Effective as of July 13, 2022* [Docket No. 842] (the "A&M Retention Order").

debtors in possession in these chapter 11 cases, collectively, the "Debtors") requested A&M to provide certain compensation consulting services.

2.  I am a compensation consultant for companies in and out of bankruptcy and am familiar with the prepetition and postpetition structure of the Debtors' compensation programs, including the Emergence Incentive Plan (the "EIP") contained within the *Debtors' Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[3] My team and I assisted the Debtors in developing the proposed EIP and advised them on, among other things, sizing, participation considerations, and structure of the EIP.

3.  I submit this declaration (this "Declaration") in support of the Plan. Except as otherwise indicated, I have personal knowledge of all facts in this Declaration, based on my review of the Debtors' business and compensation practices, my research into compensation practices for similarly sized companies, my research into the designs of incentive plans approved in comparable chapter 11 proceedings, my significant experience in developing such programs, and information supplied to me by members of the Debtors' management team and the Debtors' other advisors. For the reasons described below, it is my opinion that the EIP is reasonable, consistent with market practice, and generally consistent with my consulting experience with similarly situated companies that have sought relief under chapter 11. If called upon to testify, I could and would testify competently to the facts and opinions set forth in this Declaration.

**Background and Qualifications**

4.  I have a bachelor's degree in accounting and a master's degree in professional accounting from the McCombs School of Business at The University of Texas, Austin. I joined

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Plan.

A&M in 2006 and work out of the firm's offices in Dallas, TX.  I am a certified public accountant (CPA) licensed in the state of Texas and a Certified Executive Compensation Professional (CECP) through the WorldatWork organization.

5.      Since 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas.  A&M's debtor advisory services have encompassed a wide range of activities targeted at stabilizing and improving a company's financial position, including developing and validating forecasts and business plans; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

6.      My responsibilities at A&M primarily involve advising companies, both in and out of bankruptcy, regarding a wide range of executive compensation matters.  I have extensive experience advising organizations undergoing major financial transitions including bankruptcies, initial public offerings, leveraged buyouts, and acquisitions, on compensation issues, and with designing annual and multi-year incentive programs, change-in-control arrangements, and employment agreements.

7.      I am highly experienced in executive, management, and employee compensation, having over fifteen years of experience in the field.  During my tenure at A&M, I have worked closely with a range of companies undergoing financial restructurings to develop a variety of prepetition and postpetition compensation arrangements, including compensation plans and programs for senior executive and non-executive employees.  Specifically, I have led or co-led the review and/or design of key employee incentive plans, key employee retention plans, and other similar plans and/or assisted with other compensation matters in a number of chapter 11 cases,

3

including: *In re Packable Holdings, LLC*, Case No. 22-10797 (CTG) (Bankr. D. Del.); *In re LVI Intermediate Holdings, Inc.*, Case No. 20-11413 (KBO) (Bankr. D. Del.); *In re Hygea Holdings Corp.*, Case No. 20-10361 (KBO) (Bankr. D. Del.); *In re Libbey Glass Inc.*, Case No. 20-11439 (LSS) (Bankr. D. Del.); *In re Am. Com. Lines Inc.*, Case No. 20-30982 (MI) (Bankr. S.D. Tex.); *In re Forever 21, Inc.*, Case No. 19-12122 (MFW) (Bankr. D. Del.); *In re Hospital Acquisition LLC*, Case No. 19-10998 (BLS) (Bankr. D. Del.); *In re iHeart Media, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex.); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y.); *In re Payless Holdings LLC*, Case No. 17-42267 (KAS) (Bankr. E.D. Mo.); *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D. Va.); *In re Seventy Seven Energy Inc.*, Case No. 16-11409 (LSS) (Bankr. D. Del.); and *In re Old BPSUSH Inc.*, Case No. 16-12373 (BLS) (Bankr. D. Del.).[4]

## A&M's Involvement with the Debtors

8.  After A&M was engaged by the Debtors, I familiarized myself with the Debtors' operations, business, and restructuring efforts. At the outset of our engagement, the Debtors, the Debtors' other advisors, and A&M discussed the Debtors' operational history, financial performance, restructuring process, and various other issues and areas of concern regarding the Debtors' workforce and employee programs. A&M analyzed the structure of the Debtors' prepetition base salary and primary incentive programs, paying specific attention to the various incentive plans' performance metrics, participating employees, payout frequency, and target payout levels.

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration. Copies of these orders are available upon request to the Debtors' counsel.

4

9. My team and I performed significant due diligence in helping the Debtors develop the EIP, which has many of the same features as the KEIP. We closely collaborated with the Debtors' management and other advisors in reviewing and advising on the same. My team and I were provided information concerning the Debtors' historical compensation structure, recent financial and operational performance, and ongoing restructuring efforts. My team and I also discussed the rationale for the proposed EIP with the Debtors, the Debtors' advisors, and the special committee of the board of directors of Debtor Celsius Network Limited. A&M's primary goal was to provide an independent assessment of the Debtors' compensation planning that drew directly upon relevant market data as well as my significant experience in designing comparable programs for similarly-situated companies, including companies in chapter 11.

**EIP Overview**

10. The EIP is multi-faceted, with incentive payouts earned based on the achievement of specifically defined restructuring goals. The aggregate target award under the EIP for the performance periods is approximately $2.6 million distributed among the nine senior managers and key employees (the "EIP Participants"), assuming all performance measures meet the target performance goal.

11. The EIP Participants include: (a) Christopher Ferraro, Interim Chief Executive Officer, Chief Financial Officer, and Chief Restructuring Officer; (b) Guillermo Bodnar, Chief Technology Officer; (c) Oren Blonstein, Chief Product Officer; (d) Ron Deutsch, General Counsel; (e) Trunshedda Ramos, Chief Human Resources Officer; (f) Adrian Alisie, Chief Compliance Officer; (g) Jenny Fan, Chief Financial Officer of Mining; (h) Dave Albert, Chief Administrative Officer of Mining; and (i) Quinn Lawlor, Chief Strategy Officer of Mining.

12. The EIP contains the following primary design features:

5

- *EIP Awards*. Each EIP award will be a cash incentive award to be paid by the Debtors or the Post-Effective Date Debtors on the Effective Date under the EIP. Potential payments are based on achievement of specified metrics for each such performance period and subject to continued employment of the EIP Participant through each such time (except as provided below).

- *Performance Periods.* The performance metrics will be measured over distinct performance periods for each metric, as outlined below.

- *EIP Payments.* Payments will be made upon the Effective Date and are subject to the discretion of the Plan Administrator.

- *EIP Payout Ranges.* The EIP will provide for potential payments of 25 to 50 percent of target payment for threshold performance and 100 percent of target payment for target performance.

- *Performance Targets.* EIP Awards will be based on performance metrics tied to liquid cryptocurrency distribution, confirmation and consummation of the Plan, and certain mining achievements. Any EIP Award shall be subject to clawback in the event that an EIP Participant is later found guilty of a crime in connection with their employment at Celsius. The performance metrics consist of:

    - *Platform Metrics*. Oren Blonstein, Trunshedda Ramos, Guillermo Bodnar, Adrian Alisie, and Ron Deutsch are eligible to earn an EIP Award based on the following metrics:

        - *Liquid Cryptocurrency Distribution Metric* (50 percent of EIP Award): (a) target performance requires that sufficient Liquid Cryptocurrency is available for substantially all Holders of Allowed Claims to withdraw their initial distribution by thirty days after the Effective Date; and (b) threshold performance requires that sufficient Liquid Cryptocurrency is available for substantially all Holders of Allowed Claims to withdraw their initial distribution between thirty-one and sixty days after the Effective Date.

        - *Distribution Agreement Metric* (30 percent of EIP Award): (a) target performance requires that Holders of Allowed Claims may begin providing AML/KYC Compliance Information and the Debtors, Post-Effective Date Debtors, Plan Administrator, or any Litigation Administrator (as applicable) have provided appropriate data to the Distribution Agent with respect to wallet setup by the Effective Date; and (b) threshold performance requires that Holders of Allowed Claims may begin providing AML/KYC Compliance Information and the Debtors,

6

      Post-Effective Date Debtors, Plan Administrator, or any Litigation Administrator (as applicable) have provided appropriate data to the Distribution Agent with respect to wallet setup within thirty days after the Effective Date.

- *Chapter 11 Plan Confirmation Metric* (10 percent of EIP Award): (a) target performance requires confirmation of a chapter 11 plan by October 31, 2023; and (b) threshold performance requires confirmation of a chapter 11 plan between November 1, 2023 and December 31, 2023.

- *Effective Date Metric* (10 percent of EIP Award): (a) target performance requires the Effective Date occur by December 31, 2023; (b) threshold performance (for a 50 percent payout) requires the Effective Date occur between January 1, 2024 and January 31, 2024; and (c) threshold performance (for a 25 percent payout) requires the Effective Date occur between February 1, 2024 and February 28, 2024.

- *Mining Metrics*. Jenny Fan, Dave Albert, and Quinn Lawlor are eligible to earn an EIP Award based on the following metrics:

  - *East Stiles Site Metric* (25 percent of EIP Award): (a) target performance requires that the East Stiles site is completed and operational by September 30, 2023; and (b) threshold performance requires that the East Stiles site is completed and operational between October 1, 2023 and November 30, 2023.

  - *Effective Date Metric* (25 percent of EIP Award): (a) target performance requires the Effective Date occur by December 31, 2023; (b) threshold performance (for a 50 percent payout) requires the Effective Date occur between January 1, 2024 and January 31, 2024; and (c) threshold performance (for a 25 percent payout) requires the Effective Date occur between February 1, 2024 and February 28, 2024.

  - *Mining Rig Metric* (25 percent of EIP Award): (a) target performance requires that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, have 85,000 mining rigs hashing, or energized but not hashing due to market conditions, by August 31, 2023 and 95,000 mining rigs hashing, or energized but not hashing due to market conditions, by September 30, 2023; and (b) threshold performance requires that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, have 85,000 mining rigs

7

   hashing, or energized but not hashing due to market conditions, by August 31, 2023.

   - *Midland Texas Gross Margin Metric* (25 percent of EIP Award): (a) target performance requires that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, achieve average monthly gross margin for the Midland, TX sites between June 2023 to October 2023 above 25 percent; and (b) threshold performance requires that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, achieve average monthly gross margin for the Midland, TX sites between June 2023 to October 2023 between 20 percent and 25 percent.

- Christopher Ferraro is eligible to earn an EIP Award based on his performance relative to the following metrics:

   - *Liquid Cryptocurrency Distribution Metric* (50 percent of the EIP Award): (a) target performance requires that sufficient Liquid Cryptocurrency is available for substantially all Holders of Allowed Claims to withdraw their initial distribution by thirty days after the Effective Date; and (b) threshold performance requires that sufficient Liquid Cryptocurrency is available for substantially all Holders of Allowed Claims to withdraw their initial distribution between thirty-one and sixty days after the Effective Date.

   - *Distribution Agreement Metric* (20 percent of the EIP Award): (a) target performance requires that Holders of Allowed Claims may begin providing AML/KYC Compliance Information and the Debtors, Post-Effective Date Debtors, Plan Administrator, or any Litigation Administrator (as applicable) have provided appropriate data to the Distribution Agent with respect to wallet setup by the Effective Date; and (b) threshold performance requires that Holders of Allowed Claims may begin providing AML/KYC Compliance Information and the Debtors, Post-Effective Date Debtors, Plan Administrator, or any Litigation Administrator (as applicable) have provided appropriate data to the Distribution Agent with respect to wallet setup within thirty days after the Effective Date.

   - *Chapter 11 Plan Confirmation Metric* (10 percent of the EIP Award): (a) target performance requires confirmation of a chapter 11 plan by October 31, 2023; and (b) threshold

8

> performance requires confirmation of a chapter 11 plan between November 1, 2023 and December 31, 2023.
>
> - *Effective Date Metric* (10 percent of the EIP Award): (a) target performance requires the Effective Date occur by December 31, 2023; (b) threshold performance (for a 50 percent payout) requires the Effective Date occur between January 1, 2024 and January 31, 2024; and (c) threshold performance (for a 25 percent payout) requires the Effective Date occur between February 1, 2024 and February 28, 2024.
>
> - *Mining Rig Metric* (10 percent of the EIP Award): (a) target performance requires that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, have 85,000 mining rigs hashing, or energized but not hashing due to market conditions, by August 31, 2023 and 95,000 mining rigs hashing, or energized but not hashing due to market conditions, by September 30, 2023; and (b) threshold performance requires that the Debtors, Post-Effective Date Debtors, or NewCo, as applicable, have 85,000 mining rigs hashing, or energized but not hashing due to market conditions, by August 31, 2023.

- **Termination of Employment**. If an EIP Participant's employment is terminated by the Debtors without "cause," by the EIP Participant for "good reason," or upon death or disability of the EIP Participant, the EIP Participant will be entitled to 100 percent of the EIP Award that would otherwise have been earned based on the percentage of the performance period the EIP Participant was engaged by the Debtors. If an EIP Participant's employment is terminated for any other reason (voluntary termination, termination by the Debtors for "cause"), any EIP Award will be forfeited.

13. If approved, the EIP would provide aggregate threshold (at the 50% payout level) and target opportunities of approximately $1.3 million and $2.6 million, respectively, to be earned as part of consummation of the Plan.

## Analysis of the EIP

14. The purpose of the EIP is to maximize the value of the Post-Effective Date Debtors after emergence from these Chapter 11 Cases by distributing EIP Awards subject to the satisfaction of certain metrics included in the Plan and subject to the discretion of the Plan Administrator.

9

15. In assessing the reasonableness of the EIP, I worked with my team to analyze incentive plans geared toward executive employees and covering fewer than twenty-five participants that were authorized and approved in the chapter 11 cases of the following fifteen similarly-sized non-energy companies (the "Comparison Group") undergoing chapter 11 that had a key employee incentive plan approved from 2017 through 2023 and had prepetition assets greater than $1.0 billion: Avaya Inc.; Bristow Group Inc.; Claire's Stores, Inc.; Frontier Communications; Hertz; iHeartMedia, Inc.; Intelsat S.A.; LSC Communications, Inc.; Mallinckrodt plc; NPC International, Inc.; Purdue Pharma, L.P.; Sears Holdings Corporation; Stage Stores, Inc.; Toys "R" Us, Inc.; and Windstream Holdings, Inc.

16. In conducting this analysis, I also relied upon my significant consulting experience in the research and design of key employee incentive plans generally at dozens of other companies.

17. The structure of the EIP (such as the timing of payments, participation levels, and use of cash) comports with my general experience and the findings of my review of incentive plans approved in similarly-sized companies. Based on my experience, when a reorganizing debtor's primary market for talent is comprised of non-distressed companies in the general industry, financial services and high tech, the reorganizing debtor lacks material short and long-term incentive pay opportunities for critical employees that they could otherwise receive if they sought employment at a competitor in one of these industries. Based on my experience, similarly-sized companies operating in the financial services, technology, or general industry would not offer base salaries as the sole form of compensation, and it is my opinion the EIP Participants would very likely receive incentive opportunities should they leave the Debtors for other jobs. A cash-based EIP will mitigate this weakness in the Debtor's compensation program and help bring them closer to an appropriately competitive range of pay.

18.  I note the following observations:

- the EIP Awards are limited to a subset of critical senior management and key employees;

- employee incentive awards typically are paid in cash during a restructuring; and

- the proposed number of EIP Participants is consistent with market practices.

19.  My team and I also reviewed the annualized total cost of the EIP against the annualized total cost of the key employee incentive plans in the Comparison Group. Analyzing annualized cost is consistent with other key employee incentive plans analyzed by A&M. As depicted in the table below:

- the total aggregate annualized target cost of the EIP is well below the 25th percentile of the Comparison Group;

- the average cost per EIP Participant is the lowest among the Comparison Group; and

- the cost of the EIP as a percentage of the Debtors' assets is less than the 25th percentile of the Comparison Group.

($000s)

| Summary Statistics | Annualized Bankruptcy Incentive Plans Cost | | |
|---|---|---|---|
| | Target Cost as % of Assets | Target Cost | Avg. Target Cost Per Participant |
| 25th Percentile | 0.11% | $6,017,921 | $770,009 |
| 50th Percentile | 0.21% | $10,031,250 | $914,601 |
| 75th Percentile | 0.27% | $14,141,295 | $1,661,224 |
| **Celsius Network LLC**[1] | **0.08%** | **$3,493,333** | **$388,148** |
| *Percent Rank* | *9%* | *1%* | *Lowest* |

[1] Total target payout of $2.6M has been annualized based on a 9-month performance period commencing on April 1, 2023 and continuing through December 31, 2023.

20.  I have considered the compensation currently being paid to the EIP Participants and have compared it to market-based compensation survey data. The EIP Participants' current

11

aggregate total compensation (which consists of base salary only) is approximately 31 percent lower than the 25th percentile of total direct compensation paid for comparable positions in the market-based compensation survey data that I reviewed, as reflected in the table below:

($000s)

| Executive | Title | Current Base Salary | Market TDC | | |
|---|---|---|---|---|---|
| | | | P25 | P50 | P75 |
| Ferraro, Chris | CEO, CFO, Chief Restr. Officer | $750 | $1,029 | $1,682 | $2,768 |
| Bodnar, Guillermo | Chief Technology Officer | $500 | $620 | $860 | $1,529 |
| Blonstein, Oren | Chief Product Officer | $350 | $540 | $696 | $1,109 |
| Deutsch, Ron | General Counsel | $320 | $566 | $750 | $1,263 |
| Ramos, Trunshedda | Chief HR Officer | $320 | $507 | $658 | $977 |
| Alisie, Adrian | Chief Compliance Officer | $300 | $454 | $590 | $856 |
| Fan, Jenny | Chief Financial Officer - Mining | $300 | $439 | $560 | $816 |
| Albert, Dave | Chief Admin Officer - Mining | $280 | $334 | $504 | $1,046 |
| Lawlor, Quinn | Chief Strategy Officer - Mining | $250 | $365 | $444 | $583 |
| n = 9 | | | | | |
| | Total | $3,370 | $4,853 | $6,744 | $10,948 |
| | Current Total Compensation relative to Market TDC | | (-31%) | (-50%) | (-69%) |

21. I have also considered the EIP Participants' proposed total direct compensation, taking the EIP Awards into account. When the target EIP Awards are taken into account, the EIP Participants' total direct compensation is approximately at or below the market median for all of the EIP Participants, as reflected in the table below:

($000s)

| Executive | Title | Current Base Salary | Proposed KEIP at Target | Proposed Target TDC | Market TDC | | | Posture Relative to Market |
|---|---|---|---|---|---|---|---|---|
| | | | | | P25 | P50 | P75 | |
| Ferraro, Chris | CEO, CFO, Chief Restr. Officer | $750 | $938 | $1,688 | $1,029 | $1,682 | $2,768 | ~P50 |
| Bodnar, Guillermo | Chief Technology Officer | $500 | $375 | $875 | $620 | $860 | $1,529 | ~P50 |
| Blonstein, Oren | Chief Product Officer | $350 | $263 | $613 | $540 | $696 | $1,109 | P25 - P50 |
| Deutsch, Ron | General Counsel | $320 | $240 | $560 | $566 | $750 | $1,263 | ~P25 |
| Ramos, Trunshedda | Chief HR Officer | $320 | $240 | $560 | $507 | $658 | $977 | P25 - P50 |
| Alisie, Adrian | Chief Compliance Officer | $300 | $150 | $450 | $454 | $590 | $856 | ~P25 |
| Fan, Jenny | Chief Financial Officer - Mining | $300 | $150 | $450 | $439 | $560 | $816 | ~P25 |
| Albert, Dave | Chief Admin Officer - Mining | $280 | $140 | $420 | $334 | $504 | $1,046 | P25 - P50 |
| Lawlor, Quinn | Chief Strategy Officer - Mining | $250 | $125 | $375 | $365 | $444 | $583 | ~P25 |
| n = 9 | | $3,370 | $2,620 | $5,990 | $4,853 | $6,744 | $10,948 | P25 - P50 |

22. Based on these analyses, I observed that the Debtors' EIP opportunities per EIP Participant generally were positioned at or below the market median. Given this relationship, I

12

believe the EIP opportunities are reasonable and appropriate in light of competitive market practice. Based on the market data my team and I reviewed, and my significant experience with incentive-based compensation programs in other matters, the structure of the EIP is also generally consistent from a key design perspective (such as the timing of payments, participation levels, and use of cash) of similar employee incentive plans approved on a postpetition basis.

## Conclusion

23. Based on my education and my experience in these and in similar chapter 11 cases, I believe that the design, structure, cost, and award opportunities available under the EIP are reasonable given the facts and circumstances of these chapter 11 cases.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: September 27, 2023  
Dallas, Texas

By: */s/ Allison Hoeinghaus*  
Name: Allison Hoeinghaus  
Title: Managing Director  
Alvarez & Marsal