| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF RYAN KIELTY IN
SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES**

I, Ryan Kielty, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief.

1. I am a Partner of the Debt Advisory and Restructuring Practice of Centerview Partners LLC ("Centerview"), a full-service independent investment banking firm with its principal offices at 31 West 52nd Street, New York, New York 10019. Centerview has been engaged as the investment banker for the above-captioned debtors and debtors in possession

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

(collectively, the "Debtors"), which appointment was approved pursuant to the *Order (I) Authorizing the Employment and Retention of Centerview Partners LLC as Investment Banker for the Debtors Effective as of July 13, 2022, (II) Approving the Terms of Centerview Agreement, (III) Waiving Certain Reporting Requirement Pursuant to Local Rule 2016-2, and (IV) Granting Related Relief* [Docket No. 846].

2. I submit this declaration (this "Declaration") in support of confirmation of the *Modified Joint Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan")[2] and in support of the *Debtors' Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates and Omnibus Reply to Objections Thereto* (the "Memorandum"), filed contemporaneously herewith.

3. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my oversight of the Centerview team as the Debtors' investment banker, (b) information learned from review of relevant documents, (c) information I received from members of the Debtors' management, or (d) my past experience advising both distressed and non-distressed businesses and companies and their stakeholders. I am not being specifically compensated for this testimony, and Centerview is receiving compensation only as a professional retained by the Debtors. If called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

## Qualifications

4. I am a Partner of the Debt Advisory and Restructuring Practice of Centerview. Centerview is a full-service independent investment banking firm providing financial advisory

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, Disclosure Statement, or Memorandum, as applicable.

2

services, including mergers and acquisitions and restructuring advice, across a broad range of industries. Centerview and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

5. Prior to and since joining Centerview in 2011, I have advised companies in numerous in-court and out-of-court restructurings, recapitalizations, and reorganizations, and I have experience in structuring, negotiating, and executing sale transactions, including under section 363 of the Bankruptcy Code and pursuant to chapter 11 plans. Before joining Centerview, I was an Associate of Miller Buckfire & Co., an investment bank that provided financial advisory services to constituents in a broad range of restructuring and corporate transactions. I received my B.A. with distinction from Villanova University.

6. Centerview was engaged by the Debtors in June 2022 to serve as their investment banker to evaluate various strategic alternatives to maximize recoveries for the Debtors' stakeholders. Centerview advised the Debtors throughout the Debtors' sale and marketing process, the Auction process, and the development of the Debtors' Plan. I have been involved as a senior member of the Centerview team throughout our engagement.

## The Debtors' Sale and Marketing Process

7. From the beginning of the Debtors' chapter 11 cases, the Debtors and their advisors have diligently worked to identify a value-maximizing transaction for their liquid and illiquid assets. To that end, the Debtors pursued a dual-track process of marketing the Debtors' retail platform and mining business, while simultaneously evaluating a potential standalone reorganization. As part of this dual track process, beginning in September 2022, Centerview, at the direction of the Debtors, commenced a sale and marketing process designed to identify parties they believed might be interested in purchasing the Debtors' retail platform, mining business,

3

cryptocurrency and related assets, loan portfolio, and/or other assets pursuant to section 363 of the Bankruptcy Code or under a chapter 11 plan. As part of that process, the Debtors executed over forty confidentiality agreements with prospective bidders. I participated in the marketing process and held numerous meetings with prospective bidders. Through this process, the Debtors received, among others, three non-binding bids for the Debtors' retail platform and, separately, three non-binding bids for the Debtors' mining business.

8. Ultimately, this initial marketing process led the Debtors, in consultation with the Committee, to execute a plan sponsor agreement with NovaWulf and designate NovaWulf as the Stalking Horse Bidder. After extending the final bid deadline to April 17, 2023, the Debtors and Centerview continued to solicit offers for the Debtors' assets.

9. Prior to the final bid deadline, the Debtors received two additional qualified bids from Fahrenheit and the BRIC. As a result, the Debtors held the Auction, which began on April 25, 2023, and concluded on May 24, 2023. NovaWulf, Fahrenheit, and the BRIC all participated in the Auction. Centerview played a key role at the Auction, working with the Debtors and other advisors to identify the highest or best bid and improve the value and recovery for creditors. During the Auction, each bidder was the leading bidder at one point, and each improved its offer over time. The Debtors and the Committee asked for best and final bids on or about May 23, 2023. After reviewing the submission of those bids, the Debtors, in consultation with the Committee, selected Fahrenheit as the Successful Bidder and the BRIC as the Backup Bidder, the terms of the bids which were memorialized in the Plan Sponsor Agreement and Backup Plan Sponsor Agreement, respectively.

10. Fahrenheit's winning bid and the NewCo Transactions contemplated by the Plan, as compared to the Stalking Horse Bid, substantially reduce fees by hundreds of millions of dollars

and increase the amount of liquid cryptocurrency distributable to Account Holders by hundreds of millions of dollars. In addition, Fahrenheit's winning bid provides for: (a) the distribution of 100% of NewCo Common Stock to Celsius' creditors; (b) a $50 million direct equity commitment from Fahrenheit to NewCo; and (c) meaningful enhancements to the value of the Debtors' mining business through Fahrenheit's contribution of certain additional consideration, including, without limitation, (i) $100 million of credits to be used by NewCo to acquire replacement miners and (ii) additional cost savings associated with Fahrenheit-specific capital commitments, timeline reductions and other benefits, which are described in Fahrenheit's and U.S. Bitcoin's management agreements filed as part of the Plan Supplement.

## Mining Valuation

11. At the request of the Debtors, Centerview prepared the mining valuation analysis attached as Exhibit D to the Disclosure Statement (the "Mining Valuation Analysis"). In conducting the Mining Valuation Analysis, Centerview estimated a range of total enterprise value of Mining (the "Enterprise Value"). The Mining Valuation Analysis is, among other things, based on the information and Financial Projections provided by the Debtors' management and certain other publicly available information. In preparing the Financial Projections, the Debtors conferred with Fahrenheit and agreed on certain assumptions used in the financial projections. The Mining Valuation Analysis is based on market data as of May 31, 2023. Centerview makes no representations as to any changes to such data and information that may have occurred since the date of the Mining Valuation Analysis.

12. Centerview estimates that the Enterprise Value of Mining as of May 31, 2023, is between approximately $410 million and $720 million, with a midpoint of approximately $565 million. Although Centerview conducted a review and analysis of Mining, including its

5

projections and business plan, Centerview relied on the accuracy and completeness of all financial and other information furnished to Centerview by the Debtors and other advisors retained by the Debtors, and on certain publicly available information as to which Centerview does not have independent knowledge.

13.     The Mining Valuation Analysis was prepared solely to assist the Debtors in formulating the Plan and to analyze implied relative recoveries to creditors thereunder. These estimates do not purport to reflect or constitute appraisals, liquidation values, or estimates of the actual market value that may be realized through the sale of any securities in NewCo. Furthermore, because the Enterprise Value of Mining is but one component of the asset base of NewCo, the total Enterprise Value of Mining does not purport to be an estimate of all or any component of the post-reorganization market trading value of NewCo, Mining, or their securities. To the extent that the actual distributions in the chapter 11 cases differ from those the Debtors assumed in their recovery analysis, the actual recovery of Holders of Claims in Impaired Classes could be significantly higher or lower than estimated by the Debtors. Lastly, the Mining Valuation Analysis assumes that Fahrenheit will continue to serve as the operator of Mining.

### I.     Information Reviewed and Methodology of Valuation Analysis

14.     The Mining Valuation Analysis explains in greater detail the information, assumptions, and methodologies used by Centerview, which are incorporated herein by reference. In conducting the Mining Valuation Analysis, Centerview, among other things: (a) reviewed certain historical financial information of Mining for recent years and interim periods provided by the Debtors; (b) met with certain members of the Debtors' and Fahrenheit's senior management to discuss Mining's operations and future prospects; (c) reviewed publicly available financial data and considered the market values of public companies Centerview deemed to be generally comparable to Mining; (d) considered certain economic and industry information relevant to

Mining; (e) prepared discounted cash flow analyses based on the financial projections, utilizing various discount rates and assumptions in the calculation of terminal values; (f) reviewed the Plan and Disclosure Statement; and (g) conducted certain other analyses as Centerview deemed appropriate.

## II.     Assumptions Underlying Valuation and Other Considerations

15.     Centerview relied upon Financial Projections from September 2023 through September 2033, as prepared by the Debtors, for the purposes of their analysis. Centerview relied on the Debtors' representation and warranty that such financial projections (a) were prepared in good faith, (b) were based on fully disclosed assumptions which, in light of the circumstances under which they were made, are reasonable, (c) reflect the Debtors' best available estimates, and (d) reflect the good faith judgment of the Debtors. Centerview does not offer an opinion as to the attainability of the financial projections. Moreover, the future results of Mining depend on various factors, including future Bitcoin and energy prices, which are beyond the control or knowledge of the Debtors or Centerview, thereby making the future results of Mining inherently difficult to project.

16.     For the purposes of the Mining Valuation Analysis, Centerview has also assumed that (a) no material changes that would affect value will occur between the date of the Mining Valuation Analysis (*i.e.*, May 31, 2023) and the assumed Effective Date of September 30, 2023 (solely for purposes of the valuation, which was conducted in May 2023), (b) the Debtors will be reorganized in accordance with the Plan which will be effective on or prior to September 30, 2023, (c) the reorganized Debtors will deploy all rigs and complete new proprietary sites in 2024, (d) Mining will achieve the results set forth in the Financial Projections provided by the Debtors, (e) Mining will have the minimum amount of cash necessary to operate, (f) market conditions are as of May 31, 2023, and (g) the Plan will become effective in accordance with its terms on a basis

7

consistent with the estimates and other assumptions discussed in the Mining Valuation Analysis. Centerview makes no assurances as to the current Enterprise Value of Mining for reasons including, among others, delays to consummation which have already extended beyond September 30, 2023. Events and conditions after May 31, 2023, including but not limited to updated financial projections and prevailing market conditions, could have a substantial effect on the Enterprise Value of Mining.

## CONCLUSION

17.    Based on my work performed and the information and methodologies considered, I conclude that the Enterprise Value of Mining is between approximately $410 million and $720 million (with a midpoint of approximately $565 million). I believe this represents a reasonable and fair value for the Debtors' Mining business.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 27, 2023

*/s/ Ryan Kielty*
Name:  Ryan Kielty
Title:  Partner
            Centerview Partners LLC