<table>
<tr><td>

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

</td><td>

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

</td></tr>
</table>

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) ) ) | Case No. 22-10964 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' OBJECTION TO MOTION**
**OF GALAXY DIGITAL TRADING LLC FOR ALLOWANCE**
**OF ADMINISTRATIVE EXPENSE FOR POST-PETITION SERVICES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this objection (this "Objection") to the *Motion of Galaxy Digital Trading LLC for Allowance of Administrative Expense for Post-Petition Services* [Docket No. 3378] (the "Motion") filed by Galaxy Digital Trading LLC ("Galaxy"). In support of this Objection, the Debtors state the following:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. Contemporaneously herewith, the Debtors filed the *Declaration of Christopher Ferraro, Interim Chief Executive*

**Introduction**

1.     The Debtors' relationship with Galaxy dates back to late 2022 when the Debtors and Galaxy negotiated and executed that certain Asset Purchase Agreement, dated December 2, 2022, pursuant to which Galaxy acquired the Debtors' GK8 business for approximately $44 million (the "GK8 Sale").[3] GK8 is a blockchain security company offering financial institutions an end-to-end platform, or "vault," for managing blockchain-based assets on their own, which the Debtors purchased in October 2021 after the Debtors and GK8 entered into that certain license agreement, dated September 1, 2021 (as amended, restated, supplemented, or otherwise modified from time to time, the "License Agreement").  As part of the License Agreement, the Debtors agreed to pay GK8 a minimum asset under management fee of $30,000 per month for the duration of the License Agreement (the "AUM Fee").  The Debtors continued to pay the AUM Fee through December 2022 while they utilized the License Agreement.

2.     At the time of the GK8 Sale, the Debtors held approximately $1.3 million of digital assets on the GK8 platform but transferred all but $2.67[4] worth of those digital assets off of the GK8 platform prior the entry of the Sale Order.[5] Despite the *de minimis* amount of cryptocurrency being held on the GK8 platform at the time of the GK8 Sale, GK8 nevertheless continued to send monthly invoices to the Debtors for the AUM Fee well after the GK8 Sale closed on

---

*Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Support of Debtors' Objection to Motion of Galaxy Digital Trading LLC for Allowance of Administrative Expense for Post-Petition Services.*

[3] *See Order (I) Approving the Sale of the GK8 Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Authorizing the GK8 Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1686] (the "Sale Order").

[4] This amount is based on the Debtors' 0.98 ETH and 1.75 ADA being stored on the GK8 hardware at the time of the GK8 Sale close, priced as of September 27, 2023, at 6:12 p.m., prevailing Eastern Time.

[5] *See Public Coins and Budget Report* at 2 [Docket No. 1676].

February 21, 2023. Thus, like any debtor operating in chapter 11, the Debtors weighed the costs and benefits associated with maintaining the License Agreement and decided to reject to License Agreement on May 12, 2023, retroactively to December 31, 2022,[6] in light of the nominal value being stored on the GK8 hardware in a proper exercise of their sound business judgment pursuant to the Rejection Procedures Order and section 365 of the Bankruptcy Code. Following that rejection, the Debtors contacted GK8 to return the hardware, which stored the $2.67 worth of digital assets, and did not receive a response from GK8 until July 2023, at which time the Debtors promptly returned the GK8 hardware.

3. Against that backdrop, Galaxy filed the Motion seeking an administrative expense claim for services Galaxy describes as "beneficial to operations of the Debtors' business and to the overall success"[7] of these chapter 11 cases, which, if allowed, would require the Debtors to pay approximately $191,000 to Galaxy in return for storing what amounts to dust. That "service," however, was not beneficial to the Debtors' estates and does not rise to the level of an administrative priority claim under section 503(b) of the Bankruptcy Code.

4. Accordingly, Galaxy has failed to satisfy its burden under the Bankruptcy Code in establishing that the Debtors' lack of payment of the AUM Fee from January 1, 2023, through July 12, 2023, for storing $2.67 worth of cryptocurrency is an "actual and necessary" cost and

---

[6] *See Notice of Rejection of Certain Executory Contracts* [Docket No. 2635].

[7] *See* Motion ¶ 22.

expense of preserving the Debtors' estates. For these reasons, as well as the reasons set forth herein, the Court should deny the Motion.

## Objection

I.  **The Motion Should Be Denied Because the AUM Fee Is Not An Actual, Necessary Cost and Expense of Preserving the Debtors' Estates.**

5. Section 503(b)(1)(A) of the Bankruptcy Code provides special priority for "actual, necessary costs and expenses of preserving the estate . . . for services rendered after the commencement of the case." This priority is meant to facilitate a debtor's reorganization efforts and encourage third parties to do business with the debtor. *Amalgamated Ins. Fund v. McFarlin's Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

6. Courts have strictly construed the phrase "actual and necessary" to restrict grants of administrative expense priority only to the extent the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business. *See, e.g.*, *Food Employers Labor Relations Ass'n v. Great Atlantic & Pacific Tea Co.*, 620 Fed. App'x. 31, 33 (2d Cir. 2015); *Calpine Corp. v. O'Brien Envt'l Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999); *In re CIS Corp.*, 142 B.R. 640, 644 (S.D.N.Y. 1992) ("Because the CIS estate derived no concrete, discernible benefit from its actual use of the computer equipment, the cost of subleasing the equipment from COMSAT is not entitled to administrative expense priority."); *see also In re Keene Corp.*, 208 B.R. 112, 115 (Bankr. S.D.N.Y. 1997); *In re N.Y. Trap Rock Corp.*, 137 B.R. 568, 572 (Bankr. S.D.N.Y. 1992); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 487–88 (Bankr. S.D.N.Y. 1991). Indeed, "a debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate." *Amalgamated Ins. Fund*, 789 F.2d at 101; *see also In*

*re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 889 (Bankr. S.D.N.Y. 1993).

7. Administrative priority requires evidence of tangible, "concrete benefit[s]" to the Debtors' estates. *In re Enron Corp.*, 279 B.R. 695, 706 (Bankr. S.D.N.Y. 2002); *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) ("The claimant bears the burden of proving its actions conferred a benefit upon the estate."); *see also In re Continental Airlines, Inc.*, 146 B.R. 520, 528 (Bankr. D. Del. 1992) ("Once benefit is established, the court must value the benefit. The key to valuation of an administrative expense claim is a recognition of its equitable rather than legal nature. The claim is valued on use, not the lease or contract terms."); *In re Bake-Line Grp., LLC*, 312 B.R. 48, 51 (Bankr. D. Del. 2004) ("To constitute an actual and necessary cost under section 503(b)(1)(A), [the movant] must establish that the amount charged was reasonable for the value or benefit conferred on the estate."); *Cal. Steel*, 24 B.R. at 188 (stating claims under section 503(b)(1)(A) are judged by the actual value received by the estate, not the cost incurred by the creditor).

8. In determining whether an expense should be accorded administrative priority, courts look to "when the acts giving rise to a liability took place, not when they accrued." *In re Commercial Fin. Serv., Inc.*, 246 F.3d 1291 (10th Cir. 2001) (quoting *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 818 (6th Cir. 1997)); *see also Amalgamated Ins. Fund*, 789 F.2d at 101 (stating that a claim will only have administrative priority if the transaction giving rise to it occurred postpetition); *In re Finley*, 160 B.R. at 889 (holding a claim is not entitled to priority simply because right to payment arose postpetition); *In re White Motor Corp.*, 831 F.2d 106 (6th Cir. 1987) (holding creditor's postpetition expenses

5

relating to houses purchased from debtor prepetition were not administrative expenses because the creditor became contractually obligated to perform services for debtor prepetition).

9. Importantly, the burden of establishing entitlement to administrative priority rests with the claimant and should only be granted under extraordinary circumstances, when the party seeking such priority has sustained its burden of demonstrating that the services are actual and necessary to preserve the estate. *See, e.g.*, *Drexel Burnham Lambert Grp.*, 134 B.R. at 489; *In re Chateaugay Corp.*, 102 B.R. 335, 353–54 (Bankr. S.D.N.Y. 1989); *In re O.P.M. Leasing Serv., Inc.*, 60 B.R. 679, 680 (Bankr. S.D.N.Y. 1986); *see also In re Kollel Mateh Efraim, LLC*, 456 B.R. 185, 194 (S.D.N.Y. 2011). Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, such movant carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *In re Bernard Techs.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006).

10. Here, Galaxy has failed to meet its burden in establishing that its services rise to the level of an administrative expense claim for the Debtors' failure to pay the AUM Fee from January—July 2023. *See, e.g.*, *Enron*, 279 B.R. at 706 ("The mere possession of the claimant's property by the debtor does not warrant administrative claim status . . . [t]he 'option' to use the property that is inherent in mere possession is considered not sufficient to establish benefit to the estate if the debtor does not actually use the property."). Indeed, such services were not actual or necessary services that were beneficial to the Debtors' estates as required under the Bankruptcy Code in light of the fact that those services entailed storing only $2.67 worth of cryptocurrency. *See* 4 Collier on Bankruptcy P 503.06 (16th 2023) ("The modifiers 'actual' and 'necessary' must be observed with scrupulous care."). What is more, promptly after rejecting the License Agreement, the Debtors contacted GK8 to return the GK8 hardware at issue here. It was not until

late June 2023 when the Debtors received a response, at which time the Debtors promptly returned the hardware to GK8. It would be unjust for the Court to allow an administrative expense of approximately $191,000 to Galaxy for storing dust during the period in which the Debtors were weighing their option to assume or reject the License Agreement. *See Enron*, 279 B.R. at 706 ("With respect to an executory contract, the focus is 'on whether the debtor *used* the non-debtor's property in the ordinary course of its business, and continued to receive and accept the non-debtor's performance . . . [m]aking entitlement to an administrative claim depend on actual use rather than mere possession recognizes the need to afford the debtor time to make a reasoned decision on whether to assume or reject the contract 'without exposing the estate to administrative liability solely on account of the delay.'").

11.     Furthermore, even if the services GK8 rendered under License Agreement were a benefit to the Debtors' estates, the amount of that benefit is not necessarily determined by the License Agreement's contract value. *See, e.g., Enron*, 279 B.R. at 705 (noting that "[w]here a 'debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to assume or reject the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services,'" and that a debtor "must derive a benefit under a contract in order for its claim to be accorded administrative expense priority."). And "[w]here only part of the leased property is used by a debtor-in-possession, an administrative claim priority is accorded only to the portion used." *Id.* at 706. Where, as here, a debtor stores only $2.67 worth of cryptocurrency on a claimant's hardware, the Court should not award an administrative expense claim in the amount of $191,610.

12.     All told, "[i]n order for a creditor's claim to be entitled to administrative status, there must be actual use of the creditor's property by the debtor-in-possession . . . [a]ctual use

7

confers a 'concrete benefit on the estate' thereby entitling a claimant to an administrative expense claim." *Enron*, 279 B.R. at 706. Given that the services rendered by GK8 were only to store $2.67 worth of digital assets for Debtors, the AUM Fee was not an actual and necessary cost of preserving the Debtors' estates. Accordingly, the Court should deny the Motion.

## **Reservation of Rights**

13.   This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice for the Debtors or any other party in interest to object to the Motion on any ground whatsoever, and the Debtors expressly reserve all rights they may have.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request that the Court (a) deny the Motion as outlined in the Objection and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| New York, New York<br>Dated: September 28, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:     (212) 446-4900<br>Email:           joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:     (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |