Dear Honorable Judge Martin Glenn,

I hope this letter finds you well. This is my first formal communication to the court in writing about this matter. The first time I have ever written a letter to a Judge! I appreciate the time at the CEL Token hearing today to inquire about Hawaii and distributions related to the Custody Settlement, and I want to also thank Chris Koenig on responding to me promptly and committing to responding to my concerns.

I am writing to seek clarification and comment on several topics of interest and to let you know of my unique situation with the debtor, Celsius. Specifically, I have seven key points which I will be going over, some that I believe will need the court's guidance. There are others that are in this this or similar situations, which I believe deserve knowing what the road to maximum recovery is for them. At the end, I will indicate how the settlement has affected me along with my final thoughts on the matters herein.

1. Valuation of Custody Crypto Assets in Hawaii Residences
2. Custody Class Valuation for CEL Tokens, Ballot voting
3. Amendments to the Plan, specifically Docket 3604
4. CEL Issues prior to the freeze, the first Custody settlement payment, communications.
5. Offsetting Custody Value towards Loans, Pure Custody
6. Best Interest Concerns of the Chapter 11 Plan
7. Final Thoughts

1 – Hawaii and Crypto Assets

In Hawaii, there are some of the most stringent Crypto laws in the nation. It is my understanding for every Cryptocurrency held by a company on behalf of a resident of Hawaii, the company must hold an equal amount in cash reserves. As a result of this and other securities laws, the debtor does not have an option to distribute Custody assets to Hawaii. In an example of Coinbase, if you log into the platform from Hawaii or KYC there, your account will be immediately put on hold.

In the picture shown on the next page, the debtor's distribution schedule is shown clarifying this. The debtor indicates all account will receive PayPal cash distributions, or BTC/ETH if an adequate distribution agent is found, in the first 90 days. After 90 days, valuation will be forced by the Deactivation Pricing. However, the debtor has not clarified what those initial 90-day values will be for Hawaii residents. Will it be Bankruptcy filing day valuations, current market valuations, Chapter 7 Liquidation valuations. There is no clarification on this. This is an important topic for residents of Hawaii, that deserves prompt attention, particularly the Custody class.

| Account and/or Claim Type | User Location (Based on KYC and Location) | Distribution Agent for Days 1–90 | Distribution Agent Starting on Day 91 |
|---|---|---|---|
| Custody Account (individual)<br><br>Withhold Account (individual) | United States, excluding Hawaii | Company (all Custody assets) or another Distribution Agent (BTC/ETH)<br><br>*Custody Account Holders can withdraw starting on the Confirmation Date. | PayPal (BTC/ETH) or another Distribution Agent (Cash or BTC/ETH) |
| Custody Account (corporate)<br><br>Withhold Account (corporate) | United States | Company (all Custody assets) or another Distribution Agent (BTC/ETH)<br><br>*Custody Account Holders can withdraw starting on the Confirmation Date. | Another Distribution Agent (Cash or BTC/ETH) |
| Earn Account (individual)<br><br>Retail Borrower Deposit Claim (individual)⁶⁶<br><br>Convenience Claims (individual)<br><br>Unsecured Loan Claims (individual) | United States, excluding Hawaii | PayPal (BTC/ETH) | PayPal (BTC/ETH) or [another Distribution Agent (Cash or BTC/ETH)] |

⁶⁶ This does not account for Cryptocurrency that you will receive when you make the Retail Advance Obligation Repayment Election and repay your Retail Advance Obligation in accordance with the Retail Advance Obligation Repayment Instructions and by the Retail Advance Obligation Repayment Deadline.

47

---

| Earn Account (corporate)<br><br>Convenience Claims (corporate)<br><br>Unsecured Loan Claims (corporate) | United States, excluding Hawaii | Company (BTC/ETH) or another Distribution Agent (BTC/ETH) | Another Distribution Agent (Cash or BTC/ETH) |
|---|---|---|---|
| Earn Account (individual and corporate)<br><br>Retail Borrower Deposit Claim (individual and corporate)<br><br>Convenience Claims (individual and corporate)<br><br>Custody Account (individual)<br><br>Withhold Account (individual)<br><br>Unsecured Loan Claims | Hawaii | PayPal (Cash, for individuals only) or another Distribution Agent (BTC/ETH), but unlikely to find a Distribution Agent to distribute in BTC/ETH | Same as Days 1–90 |
| Earn Account (individual and corporate)<br><br>Retail Borrower Deposit Claim (individual and corporate)<br><br>Convenience Claims (individual and corporate)<br><br>Unsecured Loan Claims | International | Company (BTC/ETH) or another Distribution Agent (BTC/ETH) | Another Distribution Agent (Cash or BTC/ETH) |

2 – Custody Class Valuations for CEL Token and the Tabulation of the Ballot

In the Custody Settlement, Docket 2291, which is final and binding, there is language that references valuation. Please see this in the picture below. The only reference to valuation is indicated as the original digital asset value of the Petition Date, in U.S. Dollars. As such, I believe the tabulation of the ballot was flawed, as it did not utilize the petition date value for the appropriate Custody class.

> 8. **Distribution Procedures**. The Custody Settlement Payments shall be made in-kind and the Debtors may make such payments using any combination of digital assets currently held in Custody Wallets or Aggregator Wallets (each as defined in the Blonstein Declaration), respectively, in an amount sufficient to satisfy such in-kind distribution. In the event there are insufficient in-kind digital assets to satisfy the Custody Settlement Payments, the remainder of such payments shall be made in cryptocurrency based on a manner that is tax-efficient. Any distribution made in alternative cryptocurrency shall be converted using the value of the original digital asset as of the Petition Date in U.S. dollars, which will then be converted into alternative cryptocurrency using the value of such digital asset as of the date of entry of the Settlement Approval Order. Within 15 days of the expiration of the Election Period, the Debtors shall notify Settling Custody Account Holders through the Celsius App and by email, or other means, such as filing a Notice with the Bankruptcy Court, of the amount and type of digital assets that such holder will receive. All Settling Custody Account Holders agree to provide the Debtors with an external wallet address through the Celsius App and comply with any KYC requirements prior to receiving any Custody Settlement Payments.
>
> 9. **Fees & Expenses**. The Debtors agree not object to or otherwise oppose the Custody Ad Hoc Group's filing of applications pursuant to section 503(b)(3)(D) of the Bankruptcy Code for payment of the reasonable and documented fees and out of pocket expenses of Togut, Segal & Segal LLP, as counsel for the Custody Ad Hoc Group, in connection with the chapter 11 cases.
>
> 10

22-10964-mg    Doc 2291-1    Filed 03/21/23    Entered 03/21/23 17:01:48    Exhibit
Pg 12 of 43

In the disclosure statement, it indicates that all account holder claims, will utilize the Cryptocurrency Conversion Table, except CEL Token, which will be valued as provided in Article IV.B.2 of the plan.

**22-10964-mg    Doc 3332    Filed 08/17/23    Entered 08/17/23 12:08:45    Main Document
Pg 127 of 830**

as an Account Holder with a scheduled General Earn Claim of $10,500 who does not participate in the Class Claim Settlement.

Account Holders who participate in the Class Claim Settlement will receive their distribution under the Plan on the Effective Date or as soon as practicable thereafter. In addition, they will (i) no longer be entitled to the amounts set forth on the Proof of Claim they Filed, if any, which Proof of Claim will be superseded, expunged, and extinguished; (ii) no longer be entitled to prosecute any allegations against the Debtors set forth in any such Proof of Claim or the Class Claim; and (iii) will no longer be entitled to receive any other recovery from the Debtors in addition to that provided pursuant to the Class Claim Settlement.

5. *How will Account Holder Claims be calculated?*

All Account Holder Claims, except for any such Claims associated with CEL Token and any Custody Claims, will be calculated by converting the value of the Claim into Cash as of the Petition Date using the conversion rates provided in the Cryptocurrency Conversion Table [Docket No. 1420]. ==CEL Token will be valued as provided in Article IV.B.2 of the Plan.==

Article IV.B.2 of the plan specifically cites that Custody CEL Claims will not be valued at $0.25, but does not provide a valuation. The only reference to the Custody Settlement is petition day values. See below.

22-10964-mg    Doc 3332    Filed 08/17/23    Entered 08/17/23 12:08:45    Main Document
Pg 132 of 830

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI thereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

(b)     CEL Token Settlement.

Notwithstanding the Cryptocurrency Conversion Table, the Distribution Cryptocurrency Conversion Table, or the Deactivation Date Cryptocurrency Conversion Table, as part of the general settlement described in Article IV.B.1 of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the mutual compromises described in Article IV.B.2 of the Plan and this Article IV.A.2.(b) of the Disclosure Statement, the Plan shall effectuate a settlement of all Claims and Causes of Action arising out of or related to CEL Token for, among other things, recharacterization and subordination, pursuant to the following terms:

- Except as provided in Article III.B.17 of the Plan, all CEL Token Deposit Claims, other than Custody Claims that are CEL Token Deposit Claims, shall be valued at $0.25/CEL Token (*i.e.*, 1 CEL Token equals a $0.25 CEL Token Deposit Claim), and shall otherwise receive the treatment associated with the program in which they were deployed.

In addition, I would like to bring to your attention that the majority of CEL Token holders in the Custody class in dollar value voted to reject the plan, 64.17% against to 35.83% in favor. Please see pictures below for the tabulation of the ballot, as filed by the debtors, which utilized a 0.25 CEL valuation.

| Class 6A (General Custody Claims) | Count | % | Dollars | % |
|---|---|---|---|---|
| Accept: | 2,896 | 99.50% | $87,378,989.97 | 98.78% |
| Custody Opt-In (Deemed to Accept): | 2,973 | | $52,451,991.14 | |
| Reject: | 29 | 0.50% | $1,722,936.80 | 1.22% |
| Tabulated Ballot Totals: | 5,898 | | $141,553,917.91 | |
| Abstain: | 56 | | $159,856.15 | |
| Unacceptable or Amended | 596 | | | |
| All Ballot Totals: | 6,550 | | | |
| CEL Token Accept: | 350 | 97.49% | $104,933.60 | 35.83% |
| CEL Token Reject: | 9 | 2.51% | $187,912.09 | 64.17% |
| Class Claim Settlement Opt Out | 34 | | $558,010.29 | |
| | | | | |
| Third Party Release Opt-Out: | 31 | | | |
| Contributed Claim Election: | 2,352 | | | |

The question rises – As it was ruled in a final judgement that I have ownership of my Custody CEL. What was the actual valuation of CEL token in U.S. Dollars if it was ruled on as my property? Should I ask for 4.461393, as dated on August 15th, 2022? I sure would have loved to sell my 750,000 CEL tokens for $3+ million, absolutely. But that would be an unreasonable ask, just as it is unreasonable in my opinion that the valuation provided by the debtors and committee that the valuation of Custody CEL tokens is worth $0.25 in Deactivation pricing. In my opinion, the deactivation pricing for CEL Custody holders should be the full petition date value, as indicated in the Custody Settlement when referencing any sort of valuation. See picture below.

| Date | | | | | | |
|---|---|---|---|---|---|---|
| Aug 20, 2022 | 2.946249 | 2.954471 | 2.403227 | 2.559466 | 2.559466 | 13,642,194 |
| Aug 19, 2022 | 2.875232 | 2.964474 | 2.543951 | 2.950457 | 2.950457 | 30,971,090 |
| Aug 18, 2022 | 2.795380 | 3.101582 | 2.731312 | 2.878290 | 2.878290 | 35,291,901 |
| Aug 17, 2022 | 2.351252 | 2.946041 | 2.351252 | 2.809773 | 2.809773 | 42,046,607 |
| Aug 16, 2022 | 2.798329 | 2.882662 | 2.221587 | 2.350714 | 2.350714 | 36,673,412 |
| Aug 15, 2022 | 3.816426 | 4.461393 | 2.577453 | 2.799578 | 2.799578 | 93,117,125 |
| Aug 14, 2022 | 3.873726 | 3.984455 | 3.410205 | 3.815669 | 3.815669 | 31,317,096 |
| Aug 13, 2022 | 2.981488 | 4.028920 | 2.952909 | 3.863505 | 3.863505 | 76,549,654 |
| Aug 12, 2022 | 2.492711 | 2.977315 | 2.387664 | 2.977315 | 2.977315 | 24,038,367 |
| Aug 11, 2022 | 2.345171 | 2.493761 | 2.284468 | 2.492249 | 2.492249 | 18,495,630 |

3 – Amendments to the Plan, from Docket 3604

In Docket 3604, it indicates there have been adjustments to the plan. On section 34, it indicates that no holder is likely to reconsider its acceptance. In my case that is not true. For Allowed Custody Claims that were not retrieved, now section 84 indicates that instead of a deactivation price agreed upon the Debtors and Committee, it shifts to a predetermined $0.25/CEL valuation. In my case, I am definitely more inclined to accept $0.25/CEL deactivation valuation instead of leaving the decision to the debtors and Committee, which would of likely opted for current market values, or worse. Please see this in the picture below.

> 84.  83. "*Deactivation Date Cryptocurrency Conversion Table*" means the conversion table the Distribution Agent shall use to calculate the ~~amount of Cash or Cryptocurrency to distribute to a~~Claims of Holders of ~~an~~ Allowed Custody Claims ~~or Withhold Claim~~ that did not retrieve ~~its~~their Plan distribution from the Celsius platform by the Deactivation Date in Cash and Liquid Cryptocurrency, which table shall contain applicable Cryptocurrency prices as of a date agreed by the Debtors and the Committee, which date is expected to be approximately fifteen (15) days prior to the Deactivation Date. Notwithstanding anything to the contrary herein excepting Custody Claims from the CEL Token Settlement, the Deactivation Date Cryptocurrency Conversion Table shall provide that CEL Token is priced at $0.25 if the Bankruptcy Court approves the CEL Token Settlement, or such other amount as ordered by the Bankruptcy Court. For the avoidance of doubt, following the Deactivation Date, such Claims shall be subject to further conversion pursuant to any applicable Distribution Cryptocurrency Conversion Table in connection with subsequent distributions.
>
> 85.  84. "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.C of the Plan.

8

4 – CEL Issues prior to the freeze, the first Custody settlement payment, communications.

 I would like to bring to your attention that Celsius did not allow me to move any of my CEL tokens as early as April 19th, 2022, prior to the freeze date and bankruptcy. This was thoroughly documented with many updates, videos, and ultimately dozens of exchanges with Celsius, they were unable to resolve my issues, and my funds were locked. Please see pictures below. They were never unlocked as the company went into a freeze and ultimately, bankruptcy. I want to note that in this instance, my CEL tokens were never part of the earn program and never touched them, which would be classified as Pure Custody. I was not permitted to withdraw them as I had an active loan.



When I took the first Custody Settlement, I began obtaining similar error messages with my CEL tokens. The debtor at that point tried to tell me that I needed to wait one year from the point I acquired them to receive them. Upon bringing that this was part of the Custody settlement, there was radio silence, until I reached out to Kirkland which indicated there were working through CEL issues still. Finally, after two weeks, I was able to withdraw my first Custody settlement. I want to note that as a result of the wait, my cost opportunity for selling CEL diminished over two weeks. I did not pursue this further on a matter breach of settlement or otherwise.



In communicating this and related matters to the UCC, Whitecase and Aaron Colodny, and at times, Kirkland, I have received no responses and absolute radio silence, particularly the UCC. I will not share every email I sent in this letter to the court. However, I am happy to provide some upon request.

5. I have a retail loan obligation. I should be able to pay it with my Custody funds. The matter of what my CEL tokens in Custody are worth is important to answer. The debtor has never confirmed my whole CEL Custody balance is classified as Pure Custody, since it was never part of the earn program or ever touched it.

6 – Best Interest Concerns of the Plan

From my understanding, the best interest test in the Chapter 11 vs Chapter 7 liquidation indicates that a plan under Chapter 11 brings the same value if not more than a Chapter 7 liquidation. In a Chapter 7 liquidation analysis by the debtor, the liquidation analysis for General Custody, is 72.5%. For Withdrawable Custody Assets, which in my CEL case I believe I qualify for, it is 100%.

The Chapter 11 plan does not give me anywhere close to 100%, or even 72.5% value for my Custody CEL assets based on the deactivation value. At 0.25 cents deactivation value, that is about 30.8% of the original petition date value. As such, the plan is not in my best interest, and is worse than a straight liquidation. I voted to reject the plan.

## CONCLUSION

The Debtors have determined, as summarized in the table below, on the Effective Date, that the Plan, under both a NewCo Plan or a toggle to Orderly Wind Down, will provide all Holders of Allowed Claims and Interests with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code. [3]

|  | Class | Recovery Under Plan | | Liquidation Analysis |
|---|---|---|---|---|
|  |  | NewCo | Orderly Wind Down |  |
| Other Secured Claims | Class 1 | N/A | N/A | N/A |
| Retail Borrower Deposit Claims | Class 2 | 85.6% | 83.0% | 47.4% |
| Other Priority Claims | Class 3 | N/A | N/A | N/A |
| Convenience Claims | Class 4 | 70.0% | 70.0% | N/A |
| General Earn Claims | Class 5 | 67.0% | 61.2% | 47.4% |
| General Custody Claims[1] | Class 6A | 72.5% | 72.5% | 72.5% |
| Withdrawable Custody Claims[1] | Class 6B | 100.0% | 100.0% | 100.0% |
| Withhold Claims | Class 7 | 72.0% | 67.1% | 47.4% |
| Unsecured Loan Claims | Class 8 | 67.0% | 61.2% | 47.4% |
| General Unsecured Claims | Class 9 | 67.0% | 61.2% | 37.5% |
| State Regulatory Claims[2] | Class 10 | 0.0% | 0.0% | 0.0% |
| De Minimis Claims | Class 11 | 0.0% | 0.0% | 0.0% |
| Intercompany Claims | Class 12 | N/A | N/A | 47.3% |
| Intercompany Interests | Class 13 | N/A | N/A | N/A |
| Series B Preferred Interests | Class 14 | 0.1% | 0.1% | 0.1% |
| Other Interests | Class 15 | 0.0% | 0.0% | 0.0% |
| Section 510(b) Claims | Class 16 | N/A | N/A | N/A |
| Equitably Subordinated Claims | Class 17 | 0.0% | 0.0% | 0.0% |

*(1) General Custody and Withdrawable Custody Claims receive in-kind distributions of their outstanding coin balances as of the Petition Date rather than a percentage of their coins dollarized as of the Petition Date*
*(2) The treatment of State Regulatory Claims remains subject to ongoing discussions with state regulators*

7 – Final Thoughts

This Bankruptcy has had implications on my life quite a bit. Months before the bankruptcy filing date, I welcomed my firstborn into this world. As a first-generation immigrant, I have always considered it a duty to steward everything around you. To take care of family, your community, and everyone around you, especially those most vulnerable. Unfortunately, as a result of this bankruptcy, it has taken away much from myself and immediate family, some of which were also in Celsius. I remain hopeful that the Custody Settlement valuation for CEL Token will be enforced at petition day value, along with deactivation valuation for allowable Custody holders. I hope with what is presented to you in this letter today, will be utilized in your judgements to maximize the value to the people that have been hurt most by the Debtor, Judge Glenn. In my situation, it is life changing.

I believe it very clearly shows, that CEL in Custody, has petition day valuation -- as bound by the Custody Settlement agreement. All Custody holders of CEL should have petition day 0.81 valuation on their deactivation date for their CEL in Custody. Hawaii should have a full cash payout of their eligible CEL Custody. With this being a value addition to Custody holders, I do not believe the debtor will need to resubmit a new plan and vote, they can simply add this to the plan to clarify and reflect the above. The total amount of Custody CEL @ 0.25 deactivation date valuation, should be around $824,050. With the 0.81 valuation, the total that goes out to those eligible custody class holders at deactivation date is about $1.5M in addition in value.

I remain hopeful that my dialogue today at the hearing and engagement with Chris Koenig from Kirkland will yield favorable results regarding CEL Custody holders. I believe there still is a path to accepting the plan, with the appropriate modifications as cited above. As is, the value I receive has no determined value and too many unknowns. I have not been litigious on this matter. We all deserve to be out of this bankruptcy, as quickly as possible to maximize the value of everyone.

All the Best,

Dimitry Kirsanov, Pro Se

/s/Dimitry Kirsanov