Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

</div>

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

<div align="center">

**NOTICE OF FILING OF DEBTORS'**
**CONFIRMATION HEARING PRESENTATION**

</div>

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession
(collectively, the "Debtors") hereby file the presentation (the "Presentation"), attached hereto as
**Exhibit A**, that will be used at the hearing on confirmation of the Plan that will commence on
**Monday, October 2, 2023 at 2:00 p.m., prevailing Eastern Time** (the "Confirmation Hearing")
before the Honorable Martin Glenn, Chief United States Bankruptcy Judge of the United States
Bankruptcy Court for the Southern District of New York.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius
Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks
Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8
USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors'
service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that copies of the Presentation and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated: September 29, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:              joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:              patrick.nash@kirkland.com
                        ross.kwasteniet@kirkland.com
                        chris.koenig@kirkland.com
                        dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Presentation**



# In re Celsius Network LLC

## Confirmation Hearing

Case No. 22-10964
United States Bankruptcy Court for Southern District of New York
Honorable Judge Martin Glenn
October 2, 2023

# Introduction



- In response to the "crypto winter," a "run on the bank" by Account Holders, and increasing regulatory scrutiny, the Debtors filed these Chapter 11 Cases in July 2022.

- After extensive engagement with all stakeholders, full compliance with numerous investigations, and the resolution of several novel legal issues, the Debtors and their advisors submitted the Plan with the goal of maximizing the value of the Debtors' assets for their stakeholders and to emerge from bankruptcy.

- Today, the Debtors are seeking the Confirmation of their Plan, as modified on September 27, via entry of the Confirmation Order*:

  - *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577];

  - Proposed *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3606].

- The Debtors arrive at Confirmation with a Plan that has the support of over 95% of voting Account Holders by both number and dollar amount.  This level of support demonstrates the broad consensus that has been built over time.

- Confirmation of the Plan will allow the Debtors to move forward with the Restructuring Transactions set forth in the Plan and will provide the Debtors and their creditors with the best possible recovery and a smooth conclusion to these Chapter 11 Cases.

* Capitalized terms used but not defined have the meaning ascribed to them in the Disclosure Statement or the Plan, as applicable.    2

# Introduction | Key Confirmation Documents

 Celsius

| Pleading | Docket Number |
|---|---|
| **Disclosure Statement** | |
| Initial Disclosure Statement | Docket No. 2902 |
| First Revised Disclosure Statement | Docket No. 3117 |
| Second Revised Disclosure Statement | Docket No. 3223 |
| Third Revised Disclosure Statement | Docket No. 3320 |
| Fourth Revised Disclosure Statement | Docket No. 3332 |
| **Order Approving the Disclosure Statement** | Docket No. 3337 |
| **Plan** | |
| Initial Plan | Docket No. 2358 |
| First Revised Plan | Docket No. 2807 |
| Second Revised Plan | Docket No. 3116 |
| Third Revised Plan | Docket No. 3222 |
| Solicitation Plan | Docket No. 3319 |
| Modified Plan | Docket No. 3577 |
| **Plan Supplement** | |
| First Plan Supplement | Docket No. 3115 |
| Second Plan Supplement | Docket No. 3273 |
| Third Plan Supplement | Docket No. 3444 |
| Fourth Plan Supplement | Docket No. 3483 |
| Fifth Plan Supplement | Docket No. 3550 |
| Sixth Plan Supplement | Docket No. 3583 |
| **Confirmation Brief (and Omnibus Reply to Objections)** | Docket No. 3604 |
| **Proposed Confirmation Order** | Docket No. 3606 |

3

# Overview | Case Timeline 2022

Celsius

June | July | Aug. | Sep. | Oct. | Nov. | Dec.

**June 12**
The Pause

**July 13**
Petition Date

**July 18**
First Day Hearing

**Aug. 18**
Second Day Hearing

**Aug. 18**
Examiner Motion Filed

**Aug. 31**
Custody Ad Hoc Group Files Adversary Proceeding

**Sept. 7**
Withhold Ad Hoc Group Files Lift Stay Motion

**Sept. 27**
Mashinsky Resignation; Chris Ferraro appointed as CRO and Interim CEO

**Sept. 29**
Ch. 11 Examiner Appointed

**Nov. 19**
Interim Examiner Report Filed

**Dec. 5**
Earn Hearings

**Dec. 7**
GK8 Petition Date

**Dec. 7-8**
Custody & Withhold Hearing

**Dec. 13**
GK8 Sale Approved

**Dec. 20**
Agreed Order Authorizing Certain Custody Withdrawals



# Overview | Case Timeline 2023

Celsius

Jan. | Feb. | March | April | May | June | July | Aug. | Sep. | Oct.

- **Jan. 4** – Earn Ruling Entered
- **Jan. 31** – Final Examiner's Report Filed
- **Jan. 31** – Notice of Custody Withdrawals Opening
- **March 1** – NovaWulf named as Stalking Horse Bidder
- **March 9** – Customer Claims Ruling Entered
- **March 21** – Custody Settlement Approved
- **March 31** – Initial Plan Filed
- **April 20** – Withhold Settlement Approved
- **April 25** – Auction Commenced
- **May 25** – Auction Concluded May 24; Fahrenheit named as successful bidder
- **June 27** – Initial DS Filed
- **July 24** – Series B Settlement Approved
- **Aug. 14** – DS Hearing
- **Aug. 14** – Class Claim Settlement Approved
- **Sep. 22** – Voting Deadline & Plan Objection Deadline
- **Sep. 27** – Modified Plan, Confirmation Brief, Proposed Order, and Declarations Filed
- **Oct. 2** – Confirmation Hearing Begins





# Overview | Resolution of Key Legal Questions

 Celsius

| Legal Issues as Posed in First Day Presentation | Resolution |
|---|---|
| Are the crypto assets in Celsius' possession property of the estate?  Is the answer to this question different for crypto assets held under the Custody vs. Earn program?  What about crypto assets transferred to Celsius to collateralize institutional and retail loans? | The crypto assets in Celsius' possession held under the Earn program are property of the estate as determined by the **Earn Ruling** [Docket No. 1822].<br><br>The crypto assets held under the Custody program are not property of the estate and are being distributed to customers in accordance with the terms of the **Custody Settlement** agreement [Docket No. 2291].<br><br>Proposed resolution to disputes regarding retail loans negotiated in three-day mediation, culminating in the **Retail Borrower Settlement** [Article III.WW of Disclosure Statement, Docket No. 3332]. |
| Are customers entitled to the return of crypto in-kind? | Distributions of crypto will be made in-kind pursuant to the Plan and settlements incorporated therein. Debtors to only distribute crypto in legally compliant way - BTC and ETH. |
| The amount of a crypto claim is determined as of what date (e.g., as of the petition date, effective date, distribution date)? | The amount of a claim is determined by the value of claims on the petition date as explained in Article III.D of the **Disclosure Statement** [Docket No. 3332]. |
| Which Celsius entities do customers have claims against? | In the **Customer Claims Ruling**, the court held customer contractual claims are limited to LLC only and do not permit account holders to assert contractual claims against any other Debtor or non-Debtor affiliate, and that nothing in that ruling affects rights of parties to assert non-contract claims against any debtor [Docket No. 2205]. Participating Account Holders have claims against every Debtor on account of non-contractual claims pursuant to the Class Claim Settlement. |
| Do retail and institutional borrowers have a setoff right where they (a) borrowed cash, stablecoins, or other crypto from Celsius and (b) transferred crypto to Celsius? | The **Retail Borrower Settlement** provides retail borrowers the option to repay advance obligations or the Debtors will set off the amount of the loan owed by the Account Holder against the claim of the borrower [Article III.WW of Disclosure Statement, Docket No. 3332]. |
| Can Celsius recover customer withdrawal or loan liquidations completed in the 90 days before filing as preferences? | The **Account Holder Avoidance Action Settlement** reached an agreement that would settle all avoidance actions against qualifying account holders in exchange for mutual releases [Article II.A.2 & Article III.WW of Disclosure Statement, Docket No. 3332] |

6

# Key Settlements

 Celsius

- The Debtors, in conjunction with the Committee, have worked throughout these Chapter 11 Cases to resolve core issues and arrive at consensual settlements with multiple ad hoc groups of account holders, the Series B Holders, and other stakeholders.

- Certain of these settlements have already been approved by the Bankruptcy Court, and the Plan incorporates them and provides for their implementation: the **Custody Settlement**, the **Withhold Settlement**, the **Class Claim Settlement**, and the **Series B Settlement**.

- A summary of the main terms of each settlement follows.

| Settlement | Terms |
|---|---|
| Custody Settlement – previously approved at Docket No. 2291 | ■ Distribution of cryptocurrency on the Confirmation Date equal to 72.5% of assets in Custody Accounts (other than assets authorized to be withdrawn pursuant to the Custody Withdrawal Order [Docket No. 1767]).<br><br>■ Account Holders who previously entered into the Custody Settlement had an opportunity to withdraw 36.25% of their assets earlier this year; they will receive the remaining 36.25% on the Confirmation Date.<br><br>■ Account Holders who did not previously enter into the Custody Settlement could enter into the Custody Settlement by voting to accept the Plan. |
| Withhold Settlement – previously approved at Docket No. 2509 | ■ Members of the Withhold Ad Hoc Group who signed the Withhold Settlement were able to withdraw 15% of the Petition Date value of their Withhold Claim, and the remaining 85% of their Withhold Claim will be treated as a General Earn Claim.<br><br>■ Account Holders with assets in Withhold Accounts had the option to receive the same treatment, as long the entire Class 7 of Withhold Claims voted to accept the Plan. |

# Key Settlements



| Settlement | Terms |
|---|---|
| Series B Settlement – previously approved at Docket No. 3074 | ▪ Resolved the issue of whether Series B Holders were entitled to receive recoveries ahead of Account Holders.<br><br>▪ Provided for $25 million cash settlement in exchange for a release of all claims between the Series B Holders who entered into the Series B Settlement and the Debtors and the Committee, including litigation regarding substantive consolidation, allowance of an intercompany claim between Celsius Network Ltd and Celsius Network LLC, and an alleged fraudulent constructive transfer.<br><br>▪ Series B Holders who did not previously enter into the settlement affirmatively received their pro rata share under the Plan. |
| Class Claim Settlement – previously approved at Docket No. 3288 | ▪ Resolved issues regarding the Class Claim filed by the Committee on behalf of Account Holders against the Debtors on account of non-contractual Claims (such as fraud) by providing a 5% increase to each Account Holder's scheduled Claim (other than Custody Claims) to account for non-contractual Claims.   In exchange, Account Holders' filed Claims are expunged.<br><br>▪ Account Holders had the option of deciding whether to opt out of the Class Claim Settlement when voting on the Plan.  As of the Voting Deadline, only **0.46%** (**1,735**) in number, which is equivalent to **1.06%** (**$48,566,326.54**) in dollar amount, of Account Holders eligible to vote opted out of the Class Claim Settlement. |

▪ The Plan provides for the general settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.

▪ The Plan also requests approval for a number of specific settlements pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, which provides for the "settlement or adjustment of any claim or interest belonging to the debtor or to the estate" – these are the **CEL Token Settlement**, the **Account Holder Avoidance Action Settlement**, and the **Retail Borrower Settlement**.

▪ The next two slides provide a summary of the terms of each of those settlements and relevant voting results – which indicate overwhelming support for the implementation of each settlement.

8

# Key Settlements

 Celsius

| Settlement | Terms | Voting Results |
|---|---|---|
| CEL Token Settlement | ▪ All CEL Token Deposit Claims other than Custody Claims that are CEL Token Deposit Claims to be valued at $0.25/CEL Token and to receive the treatment associated with the program in which they were deployed. <br><br> ▪ All Claims on account of CEL Token identified in the Schedule of Equitably Subordinated Claims will be subordinated without distribution. | ▪ **36,996** of CEL Token Holders in number voted to accept the Plan (98.71% of CEL Token Holders in the Voting Classes that submitted Ballots). <br><br> ▪ **$30,912,829.60** in dollar amount voted to accept the Plan (96.06% by dollar amount of CEL Token by CEL Token Holders in the Voting Classes that submitted Ballots). <br><br> ▪ 482 (0.31% of Holders of CEL Token in the Voting Classes and 1.29% of Holders of CEL Token in the Voting Classes that submitted Ballots), or $1,266,747.47 in dollar amount (2.53% by dollar amount of CEL Token in the Voting Classes and 3.94% by dollar amount of CEL Token by Holders of CEL Token in the Voting Classes that submitted Ballots) voted to reject the Plan. |
| Account Holder Avoidance Action Settlement | ▪ Any Account Holder who is not an Excluded Party who (i) has Withdrawal Preference Exposure less than or equal to $100,000, (ii) votes in favor of the Plan, and (iii) does not opt out of the releases under the Plan. <br><br> ▪ Any Account Holder who is not an Excluded Party who (i) has Withdrawal Preference Exposure of more than $100,000, (ii) votes in favor of the Plan, (iii) does not opt out of the releases under the Plan, and (iv) makes a payment of Cash, BTC, or ETH to the Debtors/Litigation Administrator equal to 27.5% of such Account Holder's Withdrawal Preference Exposure no later than 14 days prior to the anticipated Effective Date of the Plan. | ▪ **18,080** Holders of Account Holder Claims in the eligible Voting Classes with a total Withdrawal Preference Exposure of **$831,188,879.79** elected to participate in the Account Holder Avoidance Action Settlement. <br><br> ▪ **211** Holders of Account Claims in Class 11 (De Minimis Claims) with a total Withdrawal Preference Exposure of **$6,117,025.48** opted into the Third-Party Release, which means that such Holders fulfilled the conditions to participate in the Account Holder Avoidance Action Settlement. <br><br> ▪ **6.61%** (**391**) of Account Holders with Withdrawal Preference Exposure greater than $100,000 (with aggregate Withdrawal Preference Exposure of **$167,665,571.45**), opted to receive additional correspondence from the Debtors regarding set off option in lieu of making 27.5% payment by cash, BTC/ETH. |

9

# Key Settlements

 Celsius

| Settlement | Terms | Voting Results |
|---|---|---|
| Retail Borrower Settlement | ▪ Set Off Treatment<br><br>▪ Option to repay loan before the Effective Date in exchange for an equivalent amount of cryptocurrency (the "Retail Advance Obligation Repayment Election")<br><br>▪ Priority with respect to Liquid Cryptocurrency Weighted Distribution Elections<br><br>▪ Retail Borrower Ad Hoc Group and Earn Ad Hoc Group have the right to appoint one member each to the Litigation Oversight Committee, subject to Committee consent | ▪ **98.83%** of Holders of Retail Borrower Deposit Claims voted to accept the Plan<br><br>▪ **$220,581,222.65** in dollar amount voted to accept the Plan (96.33% by dollar amount of Retail Borrower Deposit Claims in the Voting Classes that submitted Ballots)<br><br>▪ Retail Borrower Ad Hoc Group supports the Retail Borrower Settlement |

▪ These settlements are fair and equitable (and satisfy the *Iridium* factors), a reasonable exercise of the Debtors' business judgment, and are supported by the affected stakeholders.

▪ Accordingly, the CEL Token Settlement, Account Holder Avoidance Action Settlement, and Retail Borrower Settlement should be approved as part of the Plan.

10

# Plan Highlights

 Celsius

- The Plan provides the Debtors with a prompt and viable path out of bankruptcy – and the highest possible recovery of value for Celsius' customers.  The Plan contemplates the following:

  - <u>The NewCo Transaction</u> – A reorganization sponsored by the Fahrenheit Group that would result in the creation of a new cryptocurrency company that will be owned by customers and focus on Bitcoin mining and staking.

    - NewCo will have **no funded debt,** will be **seeded with up to $450 million** in Cryptocurrency, and plans to be listed on NASDAQ to maximize liquidity.

    - NewCo will be managed by Fahrenheit, which is comprised of experience crypto-native operators, each of whom have industry-leading experience in various facets of the Cryptocurrency space.

    - **Fahrenheit has committed to inject up to $50 million** as an equity stake in NewCo, and Fahrenheit's management team will be compensated in NewCo Common Stock to best align the interests of Fahrenheit and creditors who will own NewCo.

  - <u>The Orderly Wind Down Toggle</u> – In the event that the NewCo Transaction cannot be consummated, the Debtors can pivot to the Orderly Wind Down that would provide creditors with better recoveries than under a chapter 7 liquidation.

- Notably, the Plan provides for a distribution of **at least $2.03 billion** of cryptocurrency to creditors, subject to fluctuations in the cryptocurrency market, on or as soon as reasonably practicable after the Effective Date of the Plan under *either* the NewCo Transaction or the Orderly Wind Down.

# Plan Highlights | Treatment of Classes

 Celsius

Holders of Claims and Interests will receive the following recoveries under the Plan.

| Voting Class | Description | Entitled to Vote | NewCo Recovery | Orderly Wind Down Recovery | Liquidation Analysis |
|---|---|---|---|---|---|
| Class 1 | Other Secured Claims | No | N/A | N/A | N/A |
| Class 2 | Retail Borrower Deposit Claims | Yes | 85.6% | 83.0% | 47.4% |
| Class 3 | Other Priority Claims | No | N/A | N/A | N/A |
| Class 4 | Convenience Claims | Yes | 70.0% | 70.0% | N/A |
| Class 5 | General Earn Claims | Yes | 67.0% | 61.2% | 47.4% |
| Class 6A | General Custody Claims | Yes | 72.5% | 72.5% | 72.5% |
| Class 6B | Withdrawable Custody Claims | No | 100.0 | 100.0% | 100.0% |
| Class 7 | Withhold Claims | Yes | 72.0% | 67.1% | 47.4% |
| Class 8 | Unsecured Loan Claims | Yes | 67.0% | 61.2% | 47.4% |
| Class 9 | General Unsecured Claims | Yes | 67.0% | 61.2% | 37.5% |
| Class 10 | State Regulatory Claims | Yes | 0.0% | 0.0% | 0.0% |
| Class 11 | De Minimis Claims | No | 0.0% | 0.0% | 0.0% |
| Class 12 | Intercompany Claims | No | N/A | N/A | N/A |
| Class 13 | Intercompany Interests | No | N/A | N/A | N/A |
| Class 14 | Series B Preferred Interests | Yes | 0.1% | 0.1% | 0.1% |
| Class 15 | Other Interests | No | 0.0% | 0.0% | 0.0% |
| Class 16 | Section 510(b) Claims | No | N/A | N/A | N/A |
| Class 17 | Equitably Subordinated Claims | No | 0.0% | 0.0% | 0.0% |

12

# The Plan Satisfies the Confirmation Requirements



| | | |
|---|---|---|
| § 1129(a)(1) | The plan complies with the applicable provisions of the Bankruptcy Code:<br>• All claims within a particular class are substantially similar to all other claims in such class under § 1122; and<br>• the Plan meets the chapter 11 plan content requirements set forth in § 1123. | Brief ¶ 38 |
| § 1129(a)(2) | The Debtors complied with the applicable provisions of the Bankruptcy Code, including the requirements set forth in  § 1125 and  § 1126 regarding solicitation of acceptances of the Plan. | Brief ¶ 133 |
| § 1129(a)(3) | The Plan satisfies  § 1129(a)(3) because it was proposed in "good faith" and not by any means forbidden by law. | Brief ¶ 146 |
| § 1129(a)(4) | The Plan satisfies  § 1129(a)(4) because fees and expenses to be paid by the Debtors under the Plan are subject to approval of the Court as reasonable. | Brief ¶ 153 |
| § 1129(a)(5) | The Plan satisfies  § 1129(a)(5) because the Debtors have disclosed the process by which the applicable directors will be selected and will file a Plan Supplement disclosing the identities of all persons appointed to serve on the New Board. | Brief ¶ 155 |
| § 1129(a)(6) | § 1129(a)(6) is not applicable because the Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission. | Brief ¶ 157 |
| § 1129(a)(7) | The Plan satisfies the "best interest of creditors" test. With respect to each Impaired Class of Claims or Interests, each Holder of a Claim or Interest has either accepted the Plan or will receive or retain property of a value that is not less than the amount such Holder would have received in a chapter 7 liquidation. | Brief ¶ 158 |
| § 1129(a)(8) | Even though certain Classes are deemed to have rejected the Plan, the Plan remains confirmable because it satisfies the cram down requirements of  § 1129(b). | Brief ¶ 167 |
| § 1129(a)(9) | The Plan satisfies § 1129(a)(9) because entities holding claims entitled to priority under  § 507(a) are paid in full in cash. | Brief ¶ 170 |
| § 1129(a)(10) | The Plan satisfies § 1129(a)(10) because at least one impaired class of claims or equity interests has accepted the Plan, excluding acceptance by any insider. | Brief ¶ 173 |
| § 1129(a)(11) | The Plan satisfies § 1129(a)(11) because the Plan is feasible—feasibility does not necessarily require that success be guaranteed, only a reasonable assurance of success. | Brief ¶ 175 |
| § 1129(a)(12) | The Plan satisfies § 1129(a)(12) because the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a). | Brief ¶ 186 |

13

# Objections to the Plan

 Celsius

- The Debtors received 12 formal Objections, 12 informal objection letters, and 2 Reservations of Rights to the confirmation of the Plan.

- The Debtors believe that they have resolved all objections and comments from **the U.S. Trustee, the SEC, and the state regulators.**

- The remaining Objections generally fall into one or more of the following categories.

- **Objections to the Retail Borrower Settlement**. One retail borrower, joined by several others through letter, objected to the alleged disparate treatment between retail and institutional borrowers and the treatment of the Retail Borrower Deposit Claims.

- **Objection to the treatment of Class 8 Unsecured Loan Claims**.  Pharos, holding 94% of the Unsecured Loan Claims, alleged violation of the best interest test and the absolute priority rule.

- **Objections to the Emergence Incentive Program**.  Two creditors objected to the EIP.

- **Objection to the CEL Token Settlement**. One creditor formally objected to the CEL Token Settlement, one filed a letter.

14

# Objections to the Plan (Cont'd)



The Debtors received 12 formal objections, 12 informal objection letters, and 2 reservation of rights.

## Formal Objections

1. United States Trustee [Docket No. 3551]

2. Securities and Exchange Commission [Docket No. 3522]*

3. Pharos Fund SP of Pharos Master SPC, Pharos Fund SP of Pharos Master SPC ("Pharos") [Docket No. 3527]

4. 168 Trading Limited ("168 Trading") [Docket No. 3531]*

5. Koala 2 LLC ("K2") [Docket No. 3539]*

6. Johan Bronge [Docket No. 3511]*

7. Harrison Schoenau [Docket No. 3529]*

8. Otis Davis [Docket No. 3532]*

9. Víctor Ubierna de las Heras [Docket No. 3542]

10. Zack Kaplan, Ben Kaplan, Michael Kaplan, Eli Kaplan, and Michael Mazzotta (the "Securities Plaintiffs") [Docket No. 3544]*

11. David Schneider [Docket No. 3547]

12. Richard Philips [Docket Nos. 3548, 3557]*

## Letter Objections and Joinders

1. Eric Cassidy [Docket No. 3340]

2. Elizabeth Bohon [Docket Nos. 3369, 3558]

3. Travis Keeney [Docket Nos. 3889, 3400]

4. Michael Windom [Docket Nos. 3533, 3546]**

5. James Johantgen [Docket No. 3538]

6. Caroline Abruzese [Docket No. 3540]

7. Peter Maurice Truss [Docket No. 3541]

8. Benjamin Dame [Docket No. 3543]

9. Cathy Lau [not filed]

## Reservations of Rights

1. New Jersey Bureau of Securities [Docket No. 3524]

2. Core Scientific, Inc. [Docket No. 3536]

*   Limited Objections.

**  Mr. Windom filed a joinder on September 27, 2023 [Docket No. 3616], joining Mr. Schneider's objection.

15

# Debtors' Reply to Objections



▪ On September 27, the Debtors filed their Brief, explaining that the Plan satisfies all requirements for confirmation, and the Objections must be overruled.

    ▪ *Debtors' Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates and Omnibus Reply to Objections Thereto* [Docket No. 3604] (the "<u>Brief</u>").

▪ In their Brief, the Debtors explained that:

    1) The Retail Borrower Settlement, including the treatment of the Retail Borrower Deposit Claims, is appropriate and should be approved;

    2) The Plan satisfies the best interest test and the absolute priority rule;

    3) The CEL Token Settlement, valuing CEL Token Deposit Claims at $0.25/CEL, is appropriate and should be approved; and

    4) The EIP is appropriate, satisfies section 503(c) of the Bankruptcy Code, and should be approved.

▪ The Debtors also filed a revised Plan [Docket No. 3577] to resolve certain of the Objections.

# Key Objections



| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| U.S. Trustee<br><br>[Docket No. 3551] | • The U.S. Trustee resubmits and reaffirms the objections and arguments in his objection to the Disclosure Statement as to the Plan's release and Exculpation provisions [Docket No. 3182] (the "UST DS Objection"). U.S. Trustee Obj. at 1.<br><br>• Consent through an opt-out is not sufficient and the releases also do not satisfy the Purdue Pharma factors, specifically the requirement that released parties make essential contributions to the Plan. UST DS Obj. at 19–23.<br><br>• The exculpation provision in the Plan is too broad and exceeds section 1125(e) of the Bankruptcy Code. *Id*. at 23–26.<br><br>• The Plan includes release and exculpation provisions that are over broad and contain prospective parties and activities, which concerns the U.S. Trustee has communicated to Debtors' counsel. U.S. Trustee Obj. at 1–2. | • The Third-Party Release is wholly consensual and the Exculpation provision is appropriate and complies with the Bankruptcy Code, as explained in the Brief. *See* Brief ¶¶ 71, 86–89.<br><br>• Additionally, the Debtors revised the Plan to address the U.S. Trustee's concerns, including narrowing the scope of the Debtor Release and the Exculpation provision and carving out certain claims therefrom. *See* Plan, Art. VIII.C & E. These revisions make clear that the Plan does not seek to exculpate conduct occurring after the Effective Date.<br><br>• The Debtors are not aware of any outstanding requests from the U.S. Trustee as to the Plan's release or Exculpation provisions. |

# Key Objections



| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| SEC<br><br>[Docket No. 3522] | • The Coinbase Agreements (Ex. G of the Fourth Notice of Filing of Plan Supplement [Docket No. 3483]) contemplate brokerage services and master trading services beyond the role of a distribution agent and implicate many of the concerns raised in the SEC's action against Coinbase in the District Court.  The confidential terms of the Coinbase Distribution Services Agreement, filed under seal at Docket No. 3482, were not provided to the SEC.  SEC Limited Obj. ¶ 9.<br><br>• Any findings with respect to whether the CEL Token is a security should be limited to the facts before the Bankruptcy Court and for purpose of making distribution under the Plan, without res judicata or other preclusive effects outside these chapter 11 cases, including with respect to SEC's action against Mashinsky in the District Court. Id. ¶ 11.<br><br>• Certain terms of the refinancing term sheet proposed by Figure Lending, LLC (Ex. J of the Fourth Notice of Filing of Plan Supplement [Docket No. 3483], the "Figure Proposal") raise potential concerns regarding compliance with the registration and other requirements of the securities laws.  Though the Debtors represented to the SEC that they are not seeking Bankruptcy Court's approval of the Figure Proposal, the SEC reserves its rights.  Id. ¶ 12 n.5.<br><br>• The SEC noted that its staff has communicated the concerns to Debtors' counsel, who have cooperated with the staff in addressing other concerns regarding the Plan.  Id. ¶ 12. | • The Debtors filed amended Coinbase Agreements clarifying that Coinbase's role is limited to that of a distribution agent and will not provide brokerage or master trading services.  See Sixth Notice of Filing Plan Supplement [Docket No. 3583], Ex. B.<br><br>• The Debtors added to the Confirmation Order certain provisions which the Debtors believe will resolve the SEC's concerns.  See Confirmation Order ¶¶ 72, 75, 76. |

18

# Key Objections

**◉ Celsius**

| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| 168 Trading<br><br>[Docket No. 3531] | • The Rejection Notice [Docket No. 3454] proposes to reject the 168 Trading's institutional loan, which is inconsistent with (1) the provisions in the Plan and the Disclosure Statement that to the extent any institutional loan agreements are executory contracts, the Debtors shall be deemed to have assumed and assigned such agreements to NewCo, and (2) 168 Trading's right to redeem the collateral upon repayment under the loan agreement.  168 Trading Obj. ¶ 9.<br><br>• Article V.B. of the Plan improperly classifies all claims for rejection damages as unsecured, without regard for each counterparty's rights under its particular agreement and applicable law.  Any order approving the rejection of 168 Trading's Loan should make clear that such rejection has no impact on 168 Trading's rights to redeem the collateral or on the classification of any claims held by 168 Trading.  *Id*. ¶¶ 10, 11.<br><br>• 168 Trading does not seek an affirmative ruling on whether Debtors are required to return the collateral upon repayment or on the classification of 168 Trading's claims, but to preserve all rights with regard thereto, irrespective of the rejection of the loan agreement.  *Id*. ¶ 11. | • The Debtors revised the Plan to provide that executory institutional loan agreements on the Schedule of Rejected Contracts such as the MLA with 168 Trading will be rejected.  *See* Plan, Art. V.D.1.<br><br>• 168 Trading's argument with respect to the classification of its rejection damages is premature, and 168 Trading is not a secured creditor under the MLA.  *See* Brief ¶¶ 127–132. |

19

# Key Objections



| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| Pharos<br><br>[Docket No. 3527] | • The Plan violates the "best interest test" of section 1129(a)(7) of the Bankruptcy Code because it does not demonstrate the NewCo Common Stock that Pharos would receive in the NewCo Transaction is valuable enough to make up for the additional Liquid Cryptocurrency it would receive in a chapter 7 liquidation.  *Id.* ¶ 17.<br><br>• The Debtors appear to have artificially deflated the asset values in estimating recovery in a chapter 7 liquidation while inflating those same assets' values in estimating recovery for the Orderly Wind Down, even though in a chapter 7 liquidation, the chapter 7 trustee may request the authority to operate a business of a debtor for a limited period of time to maximize the value of the assets that may be sold as a going concern.  *Id.* ¶¶ 18–19.<br><br>• The Plan violates the absolute priority rule and is not fair and equitable because Class 14 Series B Preferred Interests, a Class junior to Pharos' Class, will receive 0.1% recovery under the Plan, while Pharos' Class 8 Claims both rejected the Plan and would not receive a full recovery under the Plan.  *Id.* ¶ 22. | • Pharos' objection with respect to the best interest test are based on its misreading of the Debtors' projected recoveries and a misunderstanding of the Orderly Wind Down, as explained in the Brief.  *See* Brief ¶¶ 161–166.<br><br>• The Plan complies with the absolute priority rule because the distribution to Holders of Series B Preferred Interests under the Plan was pursuant to the Series B Settlement, not purely on account of their Interests, and the Court may approve a settlement that does not strictly comply with the absolute priority rule, as explained in the Brief.  *See* Brief ¶¶ 206–210. |

20

# Key Objections

 Celsius

| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| K2<br><br>[Docket No. 3539] | • The Debtors have not shown (and cannot show) that K2 is controlled by, or ever was controlled by, a former director, officer, or employee of the Debtors or their Related Parties; or that it engaged in inequitable conduct resulting in injury to Debtors' creditors or conferring unfair advantage on K2.  K2 Obj. ¶ 9.<br><br>• The Plan should clarify that if the Court later denied the equitable subordination of the Claims identified on the schedule of Equitably Subordinated Claims, these Claims would be entitled to the same treatment under the Plan of similarly situated claimants.  *Id*. ¶¶ 10–13. | • In the Disclosure Statement, the Debtors explained that, in consultation with the Committee, the Debtors determined that it was appropriate to equitably subordinate the Claims of Mr. Mashinsky and certain of his affiliated Entities, including K2, because of Mr. Mashinsky's fraud, recklessness, gross mismanagement, irrational indifference, and self-interested conduct, as revealed in the investigations conducted by the Examiner, the Special Committee, and the Committee, the criminal and civil complaints filed by the federal government against him, and New York state's complaint against him.  *See* Disclosure Statement, Art. III.JJ.<br><br>• The Debtors revised the Plan with respect to the treatment of Equitably Subordinated Claims.  *See* Plan, Art. III.A.17, III.F ("Holders of Equitably Subordinated Claims need not object to the Plan to preserve all of their rights to contest the proposed classification and equitable subordination of their Claims at the appropriate time; a schedule for this litigation will be set by the Court or agreement of the parties once the stay in the Equitable Subordination Stay Order ends.").  K2 has not affirmatively signed off on such language, but the Debtors believe such language is sufficient to resolve the K2 Objection. |

# Key Objections



| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| Johan Bronge<br><br>[Docket No. 3511] | • Retail loans should receive the same option as institutional loans: paying back the loan principle in exchange for getting all collateral back in kind.  Bronge Obj. at 1, 2.<br><br>• The Debtors should use one price, either the price on the Petition Date, or the prevailing market price, to calculate both the Retail Borrower Deposit Claim and the amount of collateral needed to set off the Retail Advance Obligation under the Set Off Treatment.  *Id.* at 1–2, 2.<br><br>• The terms "Retail Borrower Deposit Claims" and "Retail Borrower Advance Obligation" do not reflect the standard terms used in the Loan Terms and Condition, are confusing, and create artificial division between institutional and retail loans.  *Id.* at 2.<br><br>• Creditors should be able to choose between the NewCo Transaction and the Orderly Wind Down on the ballot.  *Id.* at 2, 3. | • The digital assets Retail Borrowers transferred to the Borrow Program are property of the Debtors' Estates.  The Institutional Loan Order authorizes, but does not require, the Debtors to return collateral to Institutional Borrowers.  The separate classification of the Retail Borrowers and Institutional Borrowers is appropriate pursuant to section 1122 of the Bankruptcy Code, as explained in the Brief.  *See* Brief ¶¶ 226–234.<br><br>• The objections regarding (a) using the prices of Cryptocurrency at different points in time to calculate the Retail Borrower Deposit Claim and the amount of collateral necessary for the Set Off Treatment and (b) not conforming the terminologies in the Plan to those in the Loan Terms and Condition should be overruled for lack of legal basis, among other reasons, as explained in the Brief.  *See* Brief ¶¶ 235–236.<br><br>• The Plan already provides that the Debtors and the Committee may transition to the Orderly Wind Down at any time prior to or after Plan confirmation, if they determine in good faith that, consistent with their fiduciary duties, the Orderly Wind Down is in the best interests of the Estates due to complications or delays in implementing the NewCo Transaction.  *See* Plan, Art. IV.E. |

# Key Objections

 Celsius

| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| Otis Davis<br><br>[Docket No. 3532] | • The price of CEL Token was artificially suppressed due to the "naked shorting" of FTX, for which the Debtors filed a $2 billion claim against FTX.  Davis Obj. at 1–2.<br><br>• Chris Ferraro and Rod Bolger "illegally and secretly gave critically sensitive financial information of the company to FTX" that enabled FTX's "naked shorting," caused the increase in withdrawal before the Pause, and forced Celsius into bankruptcy.  *Id.* at 5–6.<br><br>• The Debtors' counsel Chris Koenig and the Committee's counsel Aaron Colodny "threatened" or "intimated" him regarding the consequences of publicly filing the correspondence between Chris Ferraro and Jason Perman labeled "FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS \| HIGHLY CONFIDENTIAL," which was sent to him by Committee's counsel Carolyn Gurland.  *Id.* at 10–11. | • The CEL Token Settlement is appropriate under section 1123(b)(3)(A) of the Bankruptcy Code and overwhelmingly supported by Holders of CEL Token who voted on the Plan.  *See* Brief ¶¶ 94–102.<br><br>In fact, Mr. Davis admits that the price of CEL Token was manipulated from approximately $0.20 on the date of the Pause to approximately $0.81 on the Petition Date, which supports the CEL Token Settlement. See Davis Objection at 2 (claiming that "short sellers" were "driv[en] . . . to buy CEL [T]okens . . . and in doing so pushed the price up from $.20 to $.81").<br><br>• The remaining allegations in Davis' objection are unsubstantiated and irrelevant.  *See* Brief ¶¶ 94–105. |

23

# Key Objections



| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| Victor Ubierna de las Heras<br><br>[Docket No. 3542] | • The Debtors did not present evidence, including historical financial information, to justify the EIP metrics complies with Section 503(c) of the Bankruptcy Code.  Ubierna de las Heras Obj. at 2–3.<br><br>• Assuming the Plan is confirmed, and the NewCo Transaction is consummated, compensation of the EIP Participants should be revised by the board of directors of NewCo.  *Id.* at 3.<br><br>• EIP awards are not "deserved" given the wrongdoing of Celsius' prepetition management, such as manipulating the price of CEL Tokens. *Id.* at 3–4.<br><br>• The EIP targets set forth in Article IV.J.2 of the Plan are too low.  Some, such as ensuring "sufficient Liquid Cryptocurrency is available for substantially all Holders of Allowed Claims to withdraw their initial distribution between thirty-one and sixty days after the Effective Date," are within the scope and scale of the EIP Participants' employment.  Others, such as the threshold requirement of completing the East Stile mining site between October 1, 2023 and November 30, 2023 and energizing 85,000 mining rigs are too "open-ended and easily abused" or "extremely low." *Id.* at 4–5. | • The EIP is overwhelmingly supported by Account Holder Voting Classes.  See generally Voting Report.  To the extent a heightened standard is applied, the EIP is justified under the facts and circumstances of these Chapter 11 Cases, establishes targets the EIP Participants need to accomplish, complies with section 503(c) of the Bankruptcy Code, and should therefore be approved, as explained in the Brief.  *See* Brief ¶¶ 214–225. |

# Key Objections



| Objecting Party | Objection | Debtors' Reply |
|---|---|---|
| Victor Ubierna de las Heras (cont'd)<br><br>[Docket No. 3542] | • The Third-Party Release and the Exculpation Provision is overly broad and beyond the scope of section 1125(e) of the Bankruptcy Code. For example, Kirkland & Ellis should not be released from the "failure to file the proof of claim . . . against Voyager." *Id.* at 2, 6.<br><br>• Instead, the Exculpation Provisions should be "limited to claims against the [E]xculpated [P]arties based on the negotiation, execution, and implementation of agreements and transactions that were approved by the Court," and creditors should have the opportunity to opt out of the Exculpation Provisions. *Id.* at 6. | • The Third-Party Release is wholly consensual and the Exculpation provision is appropriate and complies with the Bankruptcy Code, as explained in the Brief. *See* Brief ¶¶ 71, 87.<br><br>• The Debtors revised the Debtor Release and the Exculpation provision in the Plan to provide that claims or causes of action against any of the Debtors' advisors arising out of any action or inaction relating to the Debtors filing (or failing to timely file) a proof of claim against the debtors in *Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (Bankr. S.D.N.Y.) (MEW), will not be released or exculpated by the Plan or the Confirmation Order. *See* Plan, Art. VII.C, E. |

# Voting Results



| | Accept | | Reject | | |
|---|---|---|---|---|---|
| **CLASSES** | **AMOUNT (% of Amount Voting)** | **NUMBER (% of Number Voting)** | **AMOUNT (% of Amount Voting)** | **NUMBER (% of Number Voting)** | **RESULT** |
| Class 2 (Retail Borrower Deposit Claims) | 96.33% | 98.83% | 3.67% | 1.17% | ACCEPT |
| Class 4 (Convenience Claims) | 98.69% | 98.25% | 1.31% | 1.75% | ACCEPT |
| Class 5 (General Earn Claims) | 99.28% | 99.35% | 0.72% | 0.65% | ACCEPT |
| Class 6A (General Custody Claims) | 98.78% | 99.51% | 1.22% | 0.49% | ACCEPT |
| Class 7 (Withold Claims) | 82.56% | 98.79% | 17.44% | 1.21% | ACCEPT |

*TOTAL BALLOTS RECEIVED*

# Voting Results (Cont'd)



| CLASSES | TOTAL BALLOTS RECEIVED | | | | RESULT |
| | Accept | | Reject | | |
| | AMOUNT (% of Amount Voting) | NUMBER (% of Number Voting) | AMOUNT (% of Amount Voting) | NUMBER (% of Number Voting) | |
|---|---|---|---|---|---|
| Class 8 (Unsecured Loan Claims) | 0% | 0% | 100% | 100% | REJECT |
| Class 9 (General Unsecured Claims – Consolidated Debtors) | 99.56% | 74.07% | 0.44% | 25.93% | ACCEPT |
| Class 9 (General Unsecured Claims – Celsius Mining LLC) | 2.58% | 50% | 97.42% | 50% | REJECT |
| Class 9 (General Unsecured Claims – Celsius Network Inc.) | 0% | 0% | 100% | 100% | REJECT |
| Class 10 (State Regulatory Claims) | 100% | 100% | 0% | 0% | ACCEPT |
| Class 14 (Series B Preferred Interests) | 98.34% | 87.50% | 1.66% | 12.50% | ACCEPT |

27

# Debtors' Witnesses in Support of Confirmation





### Christopher Ferraro
*Interim Chief Executive Officer, Chief Financial Officer, and Chief Restructuring Officer*

**Declaration:** Ferraro Declaration [Docket No. 3581]

**Bio:** Mr. Ferraro joined Celsius in March 2022 and was appointed as interim Chief Executive Officer and Chief Restructuring Officer on September 27, 2022.

Before joining Celsius, Mr. Ferraro was a Senior Managing Director at Cerberus Operations & Advisory Company. Prior to Cerberus, Mr. Ferraro held various roles a JP Morgan Chase & Co. from 2001 to 2018, where he was most recently the head of Financial Analysis and a Senior Leader.

Mr. Ferraro received his bachelor's in Economics, Finance & Accounting from the University of Washington.



### Robert Campagna
*Managing Director of Alvarez & Marsal North America, LLC*

**Declaration:** Campagna Declaration [Docket No. 3582]

**Bio:** Mr. Campagna has over twenty-five years of distressed company advisory experience and has substantial experience helping financially distressed companies stabilize their financial condition. Mr. Campagna has worked on a number of major bankruptcy cases, including Murray Energy Holdings Co., Stearns Holdings, LLC, Westmoreland Coal, and Payless Holdings, among others.

Mr. Campagna received his bachelor's in Business Administration from Bucknell University and is a Certified Public Accountant (inactive) and a Certified Insolvency Restructuring Advisor.



### Ryan Kielty
*Partner of Centerview Partners LLC*

**Declaration:** Kielty Declaration [Docket No. 3592]

**Bio:** Mr. Kielty is a Partner of the Debt Advisory and Restructuring Practice of Centerview with extensive experience in the reorganization and restructuring of distressed companies.

Before joining Centerview, Mr. Kielty was an associate at the investment bank Miller Buckfire & Co.

Mr. Kielty received his bachelor's degree with distinction from Villanova University.

28

# Debtors' Witnesses in Support of Confirmation





### Steven Kokinos
*Proposed CEO of NewCo and member of Fahrenheit, LLC*

**Declaration:**  Kokinos Declaration [Docket No. 3591]

**Bio:**  Mr. Kokinos is an entrepreneur and investor with over 25 years of experience.  Mr. Kokinos is the founder of Sonic Boom Ventures, a cryptocurrency focused investment firm.   Mr. Kokinos was previously the CEO of Algorand, a Layer-1 staking based blockchain.

Mr. Kokinos has co-founded a number of technology startups including Fuze (acquired by 8x8, Inc. for approximately $250mm), BladeLogic (went public in 2007 and subsequently acquired by BMC Software for approximately $800mm), and WebYes (acquired by Breakaway Solutions).

Mr. Kokinos received his bachelor's in Economics from McGill University.



### Allison Hoeinghaus
*Managing Director of Alvarez & Marsal North America, LLC*

**Declaration:**  Hoeinghaus Declaration [Docket No. 3586]

**Bio:**    Ms. Hoeinghaus has over 15 years of experience in compensation and benefits consulting for companies in and outside of bankruptcy.  She has led or co-led the review and/or design of key employee incentive and retention plans or other compensation matters in a number of major bankruptcy cases including, among others, Libbey Glass, Forever 21, iHeart Media, Nine West, Payless, and Toys "R" Us.

Ms. Hoeinghaus received her bachelor's degree in Accounting and master's degree in Professional Accounting from the McCombs School of Business at The University of Texas at Austin.



### Joel E. Cohen
*Managing Director of Stout Risius Ross, LLC*

**Declaration:**  Cohen Declaration [Docket No. 3588]

**Bio:**    Mr. Cohen is a Managing Director in the Disputes, Compliance, & Investigations group and the New York Office Leader of Stout.

Mr. Cohen has over twenty years of experience in the dispute, forensic, and insolvency areas, primarily focused on the financial services, asset management, and digital asset industries.

Mr. Cohen's previous roles include Managing Director of Murray Analytics, Inc, Director at Duff & Phelps, and Senior Vice President of Citigroup.  Mr. Cohen received his bachelor's degree in economics from Rutgers University.

29