**Hearing Date:  October 2, 2023, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 29, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## NOTICE OF HEARING ON
## DEBTORS' MOTION FOR ENTRY OF AN
## ORDER AUTHORIZING THE DEBTORS TO REDACT
## AND FILE UNDER SEAL CERTAIN CONFIDENTIAL INFORMATION

**PLEASE TAKE NOTICE** that a hearing at which the Court will consider the Debtors'

*Motion for Entry of an Order Authorizing the Debtors to Redact and File Under Seal Certain*

*Confidential Information and Granting Related Relief* (the "Motion") will be held on

**October 2, 2023, at 2:00 p.m.**, prevailing Eastern Time (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be held in person before the

Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy

Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, NJ 07030.

Green, New York, New York 10004-1408.  The Hearing is not expected to involve the taking of testimony (any such hearing, a "Non-Testimonial Hearing").  With the permission of the Court, only parties in interest, their attorneys, and witnesses may attend hearings by Zoom.  Any person or entity that is permitted to attend the Hearing by Zoom must certify that they are appearing in a permitted capacity by registering their appearance in the Electronic Appearance portal located on the Court's website at:  http://www.nysb.uscourts.gov/ecourt-appearances.  Appearances must be entered no later than **4:00 p.m., the business day before the Hearing, (prevailing Eastern Time)** (***i.e.***, **on Friday September 29, 2023**).

**PLEASE TAKE FURTHER NOTICE** that, with the permission of the Court, the public, including members of the media, may dial-in to Non-Testimonial Hearings remotely using the audio platform made available by the Court.  Any person or entity that is permitted to dial-in to the Hearing by using the audio platform must register their appearance in the Electronic Appearance portal located on the Court's website at:  http://www.nysb.uscourts.gov/ecourt-appearances.  Appearances must be entered no later than **4:00 p.m., the business day before the Hearing, (prevailing Eastern Time)** (***i.e.***, **on Friday, September 29, 2023**).

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's

2

website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order") by **September 29, 2023, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

PLEASE TAKE FURTHER NOTICE that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

PLEASE TAKE FURTHER NOTICE that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

New York, New York
Dated: September 29, 2023

/s/ Judson Brown
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date:  October 2, 2023, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 29, 2023, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER AUTHORIZING THE DEBTORS TO REDACT**
**AND FILE UNDER SEAL CERTAIN CONFIDENTIAL INFORMATION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms not immediately defined have the meaning ascribed to them in the Exhibit List (as defined herein) or in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3577] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable.

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), authorizing the Debtors to (a) redact and file under certain exhibits

(collectively, the "Confidential Exhibits") included in the *Debtors' Witness List and Exhibit List*

*for Matters Set for Hearing October 2, 2023* (the "Exhibit List"), (b) provide unredacted versions

of the Confidential Exhibits solely to (i) the United States Bankruptcy Court for the Southern

District of New York (the "Court"), (ii) the United States Trustee for the Southern District of New

York (the "U.S. Trustee"), and (iii) White & Case LLP, as counsel to the official committee of

unsecured creditors appointed in the Debtors' chapter 11 cases (the "Committee" and (i) through

(iii), collectively, the "Receiving Parties"), in each case on a confidential and professionals' eyes

only basis, and (c) granting related relief.[3]

## Jurisdiction and Venue

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference* from the United States District Court for the

Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to

the Court entering a final order in connection with this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 107(b) of

title 11 of the United States Code (the "Bankruptcy Code"), rule 9018 of the Federal Rules of

---

[3]     As set forth on the Exhibit List, the Confidential Exhibits include Exhibit Nos. 32, 47, 48, 53, 55, 56, 57, and 62, which have been provided to the Court.  Celsius's proposed redacted versions of the documents have been filed as exhibits to this motion.  For slipsheeted exhibits (which are native Excels), we have couriered the proposed redacted versions to the Court.

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 9013-1, and 9018-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>").

### <u>Background</u>

5.      On September 27, 2023, the Debtors filed the Exhibit List to serve as the

evidentiary basis for the Confirmation Hearing, which is set to begin on October 2, 2023.  Through

this Motion, the Debtors seek to redact and file certain of the exhibits included on the Exhibit List

under seal to protect the Debtors' commercially sensitive information.  The Confidential Exhibits

include commercially sensitive and proprietary information relating to the Debtors' operations

(the "<u>Confidential Information</u>"), including information relating to the Debtors' mining and

staking businesses, asset pricing and valuation models, litigation and asset recovery assessments,

and the Debtors' confidential contractual arrangements with counterparties.  Moreover, because

much of the Confidential Information relates to NewCo's future business, the Debtors fear that

improper disclosure could provide an unfair advantage to NewCo's competitors and

counterparties, at the detriment of the Debtors' creditors.

6.      In light of the cost the Debtors would otherwise face, the Debtors seek the relief

requested herein.  That relief balances the public's interest in the evidence, with the Debtors'

interests at this critical juncture in these chapter 11 cases.  The unredacted Confidential Exhibits

will be provided to the Court Clerk's office in accordance with Local Rule 9018-1(c), concurrently

with the filing of this Motion.  Absent the relief requested herein, the Debtors believe that NewCo

may be materially disadvantaged to the detriment of the Debtors' creditors.

## **Basis for Relief**

I.    **Redacting the Confidential Exhibits is Warranted Under Section 107(b) of the Bankruptcy Code.**

7.    Section 107(b) of the Bankruptcy Code provides bankruptcy courts with authority to issues orders that protect entities from potential harm that may result from the disclosure of certain confidential information.  Section 107(b) of the Bankruptcy Code provides that "[o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may:  [] protect an entity with respect to a trade secret or confidential research, development, or commercial information[.]" 11 U.S.C. § 107(b).  Further, Bankruptcy Rule 9018 provides that, upon a motion, "the court may make any order which justice requires . . .  to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information." Fed. R. Bankr. P. 9018.

8.    If the material sought to be protected satisfies one of the categories identified in section 107(b) of the Bankruptcy Code, "the court is *required* to protect a requesting party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original). Stated differently, section 107(b) of the Bankruptcy Code does not require a party seeking its protections to demonstrate "good cause." *Orion Pictures*, 21 F.3d at 28.  "Courts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose."  *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005). Courts are required to provide such protections "generally where open inspection may be used as a vehicle for improper purposes." *Orion Pictures*, 21 F.3d at 27.  Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are

4

warranted in the interests of justice." *See In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003).

9.       Courts have also found such relief appropriate where the information sought to be protected is "commercial information," which is defined as "information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"[4] *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del 2006); *see also Glob. Crossing Ltd.*, 295 B.R. at 725 (finding that the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury"). Commercial information does not have to rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. *See Orion Pictures*, 21 F.3d at 27–28 (finding that section 107(b)(1) creates an exception to the general rule that court records are open to examination by the public and, under this exception, an interested party has to show only that the information it wishes to seal is "confidential" and "commercial" in nature). Unlike its counterpart in Rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) of the Bankruptcy Code does not require an entity seeking such protection to demonstrate "good cause." *See, e.g.*, *Orion Pictures*, 21 F.3d at 25 (holding that a license agreement authorizing a licensee "to reproduce, manufacture, distribute, and sell videocassettes" of three films contained confidential commercial information).[5] Courts have also held that the resulting sealing order

---

[4]    "Commercial information" is not limited to information of the debtors and may pertain to any party in interest. *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Sept. 20, 2022) (authorizing redaction of commercial information related to a non-debtor counterparty); *see also* 11 U.S.C. § 107(b) ("on request of a party in interest, the bankruptcy court shall [. . .] protect an entity with respect to [. . .] commercial information").

[5]    *See also Orion Pictures*, 21 F.3d at 27–28 (holding that section 107(b)(1) of the Bankruptcy Code creates an exception to the general rule that court records are open to examination by the public and, under this exception, an interested party must show only that the information it wishes to seal is "confidential" and "commercial" in nature).

should be broad (*i.e.*, "any order which justice requires"). *See, e.g.*, *Glob. Crossing, Ltd.*, 295 B.R. at 724 (citing Bankruptcy Rule 9018).

10.      The Confidential Information constitutes sensitive commercial information that should be protected under section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018. Courts in this district and others have held that sensitive commercial information may be filed under seal. *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Sept. 20, 2022) (authorizing the filing under seal of a motion containing commercially sensitive information to a transaction counterparty); *In re Hollander Sleep Products, LLC* No. 19-11608 (MEW) (Bankr. S.D.N.Y July 3, 2019) (authorizing filings to redact commercially sensitive terms in connection with exit financing); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (allowing filings in redacted form where proposed redactions were limited to specific business information and strategies that a competitor could seek to exploit); *In re Green Field Energy Services, Inc.*, No. 13-12783 (KG) (Bankr. D. Del. Jan. 17, 2014) (authorizing the filing under seal in its entirety a motion to approve a settlement agreement); *In re Metavation, LLC*, No. 13-11831 (BLS) (Bankr. D. Del. Aug. 7, 2013) (authorizing the filing under seal in its entirety a motion for approval of a sale agreement); *In re Capmark Fin. Grp. Inc. (f/k/a GMAC Commercial Holding Corp.)*, No. 09-13684 (CSS) (Bankr. D. Del. Jul. 5, 2011) (authorizing the filing under seal of a term sheet to a commercial contract).[6]

11.      Moreover, section 105(a) of the Bankruptcy Code codifies the bankruptcy court's inherent equitable powers and empowers it to authorize the filing of documents under seal.

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

12.     The Debtors seek to file under seal and preserve the confidentiality of the Confidential Information because such information constitutes confidential commercial information that may be protected under section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.  The Confidential Exhibits include commercially sensitive and proprietary information including, but not limited to, the Debtors' mining and staking operations, their business plans, proprietary asset pricing and valuation models, litigation and asset recovery assessments, and information designated confidential pursuant to the parties' contractual agreements.  Because the Debtors operate in a highly competitive industry, the Debtors believe that disclosure of the Confidential Information would unfairly harm the Debtors' estates and unduly challenge NewCo.

13.     The relief requested herein is narrowly tailored to protect only the commercially sensitive information that is entitled to be protected under section 107 of the Bankruptcy Code.  As a result, the Debtors are not requesting to seal the entirety of the Confidential Exhibits nor all exhibits included on the Exhibit List.  Instead the Debtors seek to file under seal Confidential Exhibits with redactions only to the extent of the Confidential Information contained therein.  The Debtors believe that redacting and filing under seal the Confidential Information is the best method to ensure transparency while still preventing the potential harm to the Debtors and the prospects of Newco that would result from the public disclosure of commercially sensitive information.

14.     The Debtors will provide the Receiving Parties with unredacted versions of the Confidential Exhibits.  This proposed format for disclosure is carefully tailored to provide

appropriate levels of information in these cases while still maintaining confidentiality of "commercial information" where truly necessary.

### Notice

15.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) any party who has objected to the Plan; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| New York, New York | /s/ Judson Brown |
| Dated: September 29, 2023 | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com

  - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS TO REDACT AND**
**FILE UNDER SEAL CERTAIN CONFIDENTIAL INFORMATION**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to: (a)

redact and file under certain exhibits (collectively, the "Confidential Exhibits") included in the

*Debtors' Witness List and Exhibit List for Matters Set for Hearing October 2, 2023* (the "Exhibit

List"), and (b) provide unredacted versions of the Confidential Exhibits solely to (i) the United

States Bankruptcy Court for the Southern District of New York (the "Court"), (ii) the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), and (iii) White & Case LLP,

as counsel to the official committee of unsecured creditors appointed in the Debtors' chapter 11

cases (the "Committee" and (i) through (iii), collectively, the "Receiving Parties"), in each case

on a confidential and professionals' eyes only basis, and (c) granting related relief, all as more

fully set forth in the Motion; and this Court having jurisdiction pursuant to 28 U.S.C. § § 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Southern District of New York, entered February 1, 2023; and this Court having the power to enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' Estates, their creditors; and this Court having determined that the legal and factual bases

set forth in the Motion  establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a) and 107(b) of the

Bankruptcy Code, Bankruptcy Rule 9018, and Local Rule 9018-1, to redact the Confidential

Information from the Confidential Exhibits and to file the unredacted Confidential Exhibits under

seal.

3.      The Debtors are authorized to cause the unredacted Confidential Exhibit to be

served on and made available, on a confidential basis, to the Receiving Parties.

4.      The unredacted version of the Confidential Exhibits shall remain confidential and

shall not be made available to anyone other than the Receiving Parties without the Debtors'

consent, may not be filed on the public docket, and shall remain under seal until further order of

the Court.

5.      The Clerk of this Court shall treat the Confidential Information contained in the

Confidential Exhibits as confidential, and counsel for the Debtors shall contact the Clerk's Office

regarding the return or disposition of the Valuation Report as soon as practicable following the

effective date of any chapter 11 plan in this case or any successor cases.

6.      Any party authorized to receive the unredacted versions of the Confidential

Exhibits shall be authorized and directed, subject to Local Rule 9018-1, to redact specific

references to the information set forth therein from pleadings filed on the public docket maintained

in these chapter 11 cases. If the Confidential Exhibits or Confidential Information is attached or

referred to in any future pleadings or documents filed with this Court relating to these chapter 11

cases, this Order shall apply to such pleading or document.

7.      Any party who receives access to the unredacted Confidential Exhibits in

accordance with this Order shall not disclose or otherwise disseminate the Confidential

Information to any other person or entity, including in response to a request under the Freedom of

Information Act, without further order of the Court.

8.      The requirements of the Bankruptcy Rules and Local Rules, including Local Rules

9013-1 and 9018-1 are satisfied by the contents of the Motion.

9.      The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Motion.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

# CELSIUS EXHIBIT 32

# MINING BUSINESS PLAN

# Mining Business Plan

June 2023



CONFIDENTIAL – NOT FOR DISTRIBUTION



**The Company, with the support of the advisors and US Bitcoin, has outlined a 60 day plan to deploy the remaining 48,000 rigs**

**The mining business plan contemplates a new 100 MW site is constructed in the 8 months following the effective date**

1

**CELSIUS EX. 32**

# Five-Year Projections:  Disclosure Statement

*Consolidated mining operations to be included in the Disclosure Statement*

**BTC Price** is driven by bull-bear cycles with peak to trough movements milder than historical bull-bear cycles, reflecting the view that Bitcoin volatility will gradually decline over time with increased adoption

**Network Hashrate** is derived from several variables:  (i) BTC price, (ii) efficiency and price of new generation rigs, (iii) economic payback / profitability of adding/retiring rigs and (iv) Network halving every 4 years

**Operating Expenses** include the $15 million per year management fee, corporate allocations from NewCo ($5 million per year) and other non-site level expenses

**100MW Facility** is built within the construction caps provided in US BTC's bid ($395K/MW); the illustrative site is assumed to be in Texas and rigs will begin hashing in June of 2024

**Rig Replacement CapEx** includes the use of the $100 million Micro BT coupon; rigs are replaced based on a 6-year useful life; future rig purchases assume efficiency improvements in hardware based on historical trends

| Fiscal Year Ended | Sep-23 | Sep-24 | Sep-25 | Sep-26 | Sep-27 | Sep-28 | Total | CAGR [1] |
|---|---|---|---|---|---|---|---|---|
| **Revenue** | NA | $278.7 | $437.5 | $507.1 | $341.0 | $282.2 | $1,846.5 | 0.3% |
| Direct Costs | NA | (190.9) | (200.0) | (206.1) | (187.3) | (183.8) | (968.2) | (0.9%) |
| **Gross Profit** | NA | 87.8 | 237.4 | 300.9 | 153.7 | 98.4 | 878.3 | 2.9% |
| Operating Expenses | NA | (26.0) | (27.7) | (28.8) | (29.3) | (29.7) | (141.4) | 3.3% |
| **EBITDA** | NA | 61.8 | 209.7 | 272.2 | 124.4 | 68.8 | 736.9 | 2.7% |
| Net Capex | NA | (56.5) | (12.3) | (8.2) | (39.3) | (86.6) | (202.9) | 11.3% |
| **FCF** | NA | $5.4 | $197.5 | $263.9 | $85.1 | ($17.8) | $534.1 | NA |
| | | | | | | | | |
| BTC Price, EOP ($) | $29,723 | $47,647 | $90,587 | $92,420 | $76,622 | $105,195 | NA | 28.8% |
| Hashprice ($/GH/Day), EOP | 72.9 | 77.9 | 126.2 | 95.1 | 63.9 | 61.3 | NA | (3.4%) |
| Network Hashrate, EOP | 381 EH/s | 307 EH/s | 374 EH/s | 524 EH/s | 668 EH/s | 600 EH/s | NA | 9.5% |
| Celsius Hashrate, EOP | 12.2 EH/s | 12.3 EH/s | 12.5 EH/s | 12.6 EH/s | 13.4 EH/s | 15.1 EH/s | NA | 4.4% |
| Network Share % | *3.21%* | *3.50%* | *3.79%* | *2.82%* | *2.24%* | *2.36%* | NA | *(6.0%)* |
| BTC Produced, Celsius | NA | 7,712 | 6,475 | 5,046 | 3,946 | 3,281 | 26,460 | NA |

[1] For financial statistics, the CAGR is calculated between FYE'24 and FYE'28. For the operating statistics, CAGR is calculated between FYE'23 and FYE'28.



CELSIUS EX. 32

# Appendix

CELSIUS EX. 32



4



CELSIUS EX. 32





CELSIUS EX. 32





CELSIUS EX. 32





CELSIUS EX. 32



8



CELSIUS EX. 32



9



CELSIUS EX. 32





CELSIUS EX. 32



11







# CELSIUS EXHIBIT 47

# HYPOTHETICAL LIQUIDATION ANALYSIS

**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**



# Hypothetical Liquidation Analysis

**August 9th 2023**

CELSIUS EX. 47

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY



# Purpose of the Liquidation Analysis

⋎ For a bankruptcy court to confirm a plan of reorganization, section 1129(a)(7) of the bankruptcy code requires that the Chapter 11 plan provides that each holder of any interest in an impaired class either:

  i. Has accepted the plan, or

  ii. Will receive or retain property of a value that is not less than the amount that non-accepting holders would receive or retain if the debtors were to liquidate under Chapter 7 of the bankruptcy code.

⋎ These requirements are commonly referred to as the "Best Interests Test"

⋎ This Liquidation Analysis assumes a hypothetical liquidation of substantially all of the Debtors' operations, a wind down of the estate and resolution of the cases over a six-month period beginning on November 30, 2023 (the "Liquidation Date") and ending on May 31, 2023

**CELSIUS EX. 47**

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

# Liquidation Analysis Process

➢ The Liquidation Analysis represents an estimate of recovery values based upon a hypothetical liquidation of each Debtor legal entity on a standalone basis

| Liquidation Component | Process |
|---|---|
| **Gross Liquidation Proceeds** | - Condensed liquidation of Fireblocks, DeFi and staking assets at discounted values<br>- Institutional loans and alternative investments are closed or sold and are not held to maturity<br>- The retail loan portfolio is written off, and payments on principal balances are redistributed amongst retail collateral claimants<br>- The mining business is valued as an asset sale instead of a going concern business |
| **Liquidation Adjustments** | - Recovery values are burdened by G&A and other wind-down costs to reflect 6 months of payroll, 3rd party distribution expenses, vendors and other operating expenses required to wind down the estate<br>- Chapter 7 Professional and Broker fees over the 6-month period<br>- Chapter 7 Trustee fees are assumed to be 3% of recoveries |
| **Intercompany Redistributions** | - Post-petition administrative intercompany claims against Debtors are *pari passu* with other Administrative Claims<br>- Pre-petition intercompany claims against Debtors are *pari passu* with other unsecured claims<br>- Intercompany recoveries to Debtors includes flows of value from non-Debtors on account of intercompany claims and interests |
| **Distribution to Claimants – Recovery by Class** | - Withdrawable Custody and General Custody Claims receive in-kind distribution, represented in the analysis as the current coin values for creditor's coin quantity as of the Petition Date<br>- Analysis does not assume a settlement for Convenience Class or Withhold Claims<br>- Unsecured Claims are represented in dollarized value of coins as of the Petition Date |



3

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

**CELSIUS EX. 47**

# Executive Summary



∀ **The Liquidation Analysis assumes a conversion to Chapter 7 on or about 11/30/2023 (the "Liquidation Date") at which point the liquidation of Debtor and Non-Debtor assets commences**

∀ **The Liquidation Analysis assumes substantive consolidation for the Celsius Network Limited, Celsius Network LLC, Celsius Networks Lending LLC and Celsius Lending LLC entities (the "Consolidated Debtors")**

∀ **$2.7 billion of total distributions across Debtor entities will be made to Administrative Claims and 3rd party creditors**

- General Custody Claims (along with any remaining Withdrawable Custody Claims) will receive in-kind distributions on or around the Liquidation Date and receive a 72.5% recovery

- Assumes borrowers are unlikely to repay their Retail Advance Obligations and would not be granted the set-off against Retail Borrower Deposit Claims that is currently contemplated in the Plan

- Assumes the Convenience Class and Withhold Settlement are not effectuated in a chapter 7 liquidation

- Intercompany Claims redistribute value among the debtor entities for further distribution to 3rd party claims

- General Earn, Unsecured Loan, Retail Borrower Post-set Off Claims, Withhold Claims, General Unsecured Claims and Intercompany claims are *pari passu* and receive the same recovery at the entity level

∀ **The Liquidation Analysis provides a recovery for unsecured claims of 44%-50% for the combined Debtor entities**

∀ **Liquidation recoveries do not clear Intercompany Interests, therefore there are no recoveries to any more junior classes**

∀ **The Liquidation Analysis passes the Best Interest Test under each individual Debtor entity when compared to either the NewCo Plan or Orderly Wind Down**

4

**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**

# Best Interest Test Comparison

➢ This analysis illustrates that all creditor classes would receive equal or greater recovery under the NewCo Plan or Orderly Wind Down than they would under a hypothetical liquidation, with the midpoint scenario of the Liquidation Analysis reflected below. The recoveries for claims under the Liquidation Analysis below are an aggregation of recoveries from all debtor entities and represent the ranges of recoveries for creditors at the debtor entities

| | Class | Recovery Under Plan | | Liquidation Analysis | |
|---|---|---|---|---|---|
| | | NewCo | Orderly Wind Down | | |
| Other Secured Claims | Class 1 | N/A | N/A | N/A | ✓ |
| Retail Borrower Deposit Claims | Class 2 | 85.6% | 83.0% | 47.4% | ✓ |
| Other Priority Claims | Class 3 | N/A | N/A | N/A | ✓ |
| Convenience Claims | Class 4 | 70.0% | 70.0% | N/A | ✓ |
| General Earn Claims | Class 5 | 67.0% | 61.2% | 47.4% | ✓ |
| General Custody Claims[1] | Class 6A | 72.5% | 72.5% | 72.5% | ✓ |
| Withdrawable Custody Claims[1] | Class 6B | 100.0% | 100.0% | 100.0% | ✓ |
| Withhold Claims | Class 7 | 72.0% | 67.1% | 47.4% | ✓ |
| Unsecured Loan Claims | Class 8 | 67.0% | 61.2% | 47.4% | ✓ |
| General Unsecured Claims | Class 9 | 67.0% | 61.2% | 37.5% | ✓ |
| State Regulatory Claims[2] | Class 10 | 0.0% | 0.0% | 0.0% | ✓ |
| De Minimis Claims | Class 11 | 0.0% | 0.0% | 0.0% | ✓ |
| Intercompany Claims | Class 12 | N/A | N/A | 47.3% | ✓ |
| Intercompany Interests | Class 13 | N/A | N/A | N/A | ✓ |
| Series B Preferred Interests | Class 14 | 0.1% | 0.1% | 0.1% | ✓ |
| Other Interests | Class 15 | 0.0% | 0.0% | 0.0% | ✓ |
| Section 510(b) Claims | Class 16 | N/A | N/A | N/A | ✓ |
| Equitably Subordinated Claims | Class 17 | 0.0% | 0.0% | 0.0% | ✓ |

*(1) General Custody and Withdrawable Custody Claims receive in-kind distributions of their outstanding coin balances as of the Petition Date rather than a percentage of their coins dollarized as of the Petition Date*
*(2) The treatment of State Regulatory Claims remains subject to ongoing discussions with state regulators*



**CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY**

# Summary by Debtor

*$ in millions*

➢ A hypothetical liquidation was prepared for each debtor, each analysis having its own individual recovery percentages for each claims class

| | Consolidated Debtors | Celsius Mining LLC | Celsius Network Inc. | Celsius US Holding LLC | Celsius KeyFi LLC | Combined (Net of Redistributions) |
|---|---|---|---|---|---|---|
| **Proceeds Available for Distribution (Mid-Point)** | | | | | | |
| Gross Liquidation Assets | $ 2,675 | $ 88 | $ - | $ 49 | $ - | $ 2,812 |
| Chapter 7 Liquidation Adjustments | (152) | (5) | - | (3) | - | (159) |
| **Net Liquidation Assets** | $ 2,524 | $ 83 | $ - | $ 46 | $ - | $ 2,653 |
| Redistribution on Account of Intercompany Balances | 183 | - | 0 | 2 | 2 | 58 |
| **Net Estimated Proceeds Available** | $ 2,707 | $ 83 | $ 0 | $ 49 | $ 2 | $ 2,711 |
| **Claims and Recoveries (Mid-Point)** | | | | | | |
| Administrative Claims | 81 | 3 | 0 | 1 | - | 85 |
| Recovery | 81 | 3 | 0 | 1 | - | 85 |
| *% Recovery* | *100.0%* | *100.0%* | *25.4%* | *100.0%* | *0.0%* | *99.7%* |
| Withdrawable Custody Claims | 48 | - | - | - | - | 48 |
| Recovery | 48 | - | - | - | - | 48 |
| *% Recovery* | *100.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *100.0%* |
| General Custody Claims | 218 | - | - | - | - | 218 |
| Recovery | 158 | - | - | - | - | 158 |
| *% Recovery* | *72.5%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *72.5%* |
| **Unsecured Claims:** | | | | | | |
| General Earn Claims | 4,082 | - | - | - | - | 4,082 |
| Recovery | 1,934 | - | - | - | - | 1,934 |
| *% Recovery* | *47.4%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *47.4%* |
| Withhold Claims | 13 | - | - | - | - | 13 |
| Recovery | 6 | - | - | - | - | 6 |
| *% Recovery* | *47.4%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *47.4%* |
| Unsecured Loan Claims | 88 | - | - | - | - | 88 |
| Recovery | 41 | - | - | - | - | 41 |
| *% Recovery* | *47.4%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *47.4%* |
| Retail Borrow Deposit Claims | 763 | - | - | - | - | 763 |
| Recovery | 361 | - | - | - | - | 361 |
| *% Recovery* | *47.4%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *47.4%* |
| General Unsecured Claims | 36 | 14 | - | - | - | 50 |
| Recovery | 17 | 2 | - | - | - | 19 |
| *% Recovery* | *47.4%* | *12.0%* | *0.0%* | *0.0%* | *0.0%* | *37.5%* |
| Intercompany Claims | 125 | 652 | 11 | 119 | 0 | 121 |
| Recovery | 59 | - | - | 47 | 0 | 57 |
| *% Recovery* | *47.4%* | *0.0%* | *0.0%* | *39.6%* | *100.0%* | *47.3%* |
| Redistribution on Account of Intercompany Interests | - | - | - | - | 2 | - |
| **Total Claims** | 5,454 | 669 | 12 | 120 | 0 | 5,468 |
| **Total Recovery** | 2,707 | 4 | 0 | 49 | 0 | 2,711 |
| *% Recovery* | *49.6%* | *12.4%* | *0.9%* | *40.4%* | *100.0%* | *49.6%* |



# Consolidated Liquidation Waterfall

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

*$ in millions*

| USD $ in Millions | Notes | Assets 5/31/2023 | Adj. | Pro Forma | Estimated Recovery - % Low | Mid | High | Estimated Liquidation Value Low | Mid | High |
|---|---|---|---|---|---|---|---|---|---|---|
| **Liquidation Proceeds** | | | | | | | | | | |
| **Liquidated Balance Sheet** | | | | | | | | | | |
| Cash | [A] | $ 92 | $ (92) | $ - | - | - | - | $ - | $ - | $ - |
| Fireblocks | [B] | 1,031 | (120) | 911 | 94% | 97% | 100% | 855 | 883 | 909 |
| Institutional Loans receivable | [C] | 75 | - | 75 | 28% | 37% | 47% | 21 | 28 | 35 |
| DeFi/Staking Assets | [D] | 1,653 | (56) | 1,597 | 91% | 94% | 98% | 1,456 | 1,509 | 1,558 |
| Custody Holdings | [E] | 160 | 93 | 253 | 90% | 95% | 99% | 228 | 241 | 250 |
| Investments | [F] | 129 | - | 129 | 25% | 50% | 75% | 32 | 64 | 97 |
| Retail Advance Obligation | [G] | 410 | (410) | - | - | - | - | - | - | - |
| Mining Assets | [H] | 565 | - | 565 | 12% | 16% | 19% | 70 | 88 | 105 |
| **Gross Liquidation Assets** | | $ 4,114 | $ (585) | $ 3,529 | 75% | 80% | 84% | $ 2,662 | $ 2,812 | $ 2,953 |
| **Chapter 7 Liquidation Adjustments** | | | | | | | | | | |
| Liquidation Costs | [I] | | | | | | | (50) | (50) | (50) |
| Chapter 7 Professional and Broker Fees | [J] | | | | | | | (25) | (25) | (25) |
| Chapter 7 Trustee Fees | [K] | | | | | | | (80) | (84) | (89) |
| **Total Chapter 7 Liquidation Adjustments** | | | | | | | | $ (155) | $ (159) | $ (164) |
| **Net Liquidation Assets** | | | | | | | | $ 2,507 | $ 2,653 | $ 2,790 |
| **Redistribution on Account of Intercompany Claims and Interests** | | | | | | | | | | |
| Redistribution on Account of Pre-Petition Intercompany Balances | [L] | | | | | | | - | - | - |
| Redistribution on Account of Post-Petition Intercompany Balances | [M] | | | | | | | 0 | 0 | 0 |
| Redistribution on Account of Intercompany Interests | [N] | | | | | | | 54 | 58 | 62 |
| **Total Recovery on Account of Intercompany Claims and Interests** | | | | | | | | $ 54 | $ 58 | $ 62 |
| **Net Estimated Proceeds from Liquidation Available for Distribution** | | | | | | | | $ 2,562 | $ 2,711 | $ 2,852 |

| Claims and Recoveries | | Total Estimated Claim Petition Date | Adj. | Claim | Total Recovery - % Low | Mid | High | Total Recovery - $ Low | Mid | High |
|---|---|---|---|---|---|---|---|---|---|---|
| **Administrative Claims** | | | | | | | | | | |
| Administrative Claims | | 85 | - | 85 | 100% | 100% | 100% | 85 | 85 | 85 |
| Priority Tax Claims | | - | - | - | - | - | - | - | - | - |
| **Total Administrative Claims** | [O] | $ 85 | $ - | $ 85 | 100% | 100% | 100% | $ 85 | $ 85 | $ 85 |
| Remaining Distributable Value after Administrative Claims | | | | | | | | $ 2,477 | $ 2,626 | $ 2,767 |
| **Settled Claims** | | | | | | | | | | |
| Withdrawable Custody Claims[1] | [P] | 48 | - | 48 | 100% | 100% | 100% | 48 | 48 | 48 |
| General Custody Claims[1] | [Q] | 218 | - | 218 | 73% | 73% | 73% | 158 | 158 | 158 |
| **Total Settled Claims** | | $ 266 | $ - | $ 266 | 77% | 77% | 77% | $ 206 | $ 206 | $ 206 |
| Remaining Distributable Value after Settled Claims | | | | | | | | $ 2,270 | $ 2,419 | $ 2,560 |
| **Unsecured Claims** | | | | | | | | | | |
| General Earn Claims | [R] | 4,082 | - | 4,082 | 44% | 47% | 50% | 1,815 | 1,934 | 2,047 |
| Withhold Claims | [S] | 13 | - | 13 | 44% | 47% | 50% | 6 | 6 | 7 |
| Unsecured Loan Claims | [T] | 88 | - | 88 | 44% | 47% | 50% | 39 | 41 | 44 |
| Retail Borrower Deposit Claims | [U] | 763 | - | 763 | 44% | 47% | 50% | 339 | 361 | 382 |
| General Unsecured Claims | [V] | 50 | - | 50 | 35% | 37% | 40% | 17 | 19 | 20 |
| Intercompany Claims | | 121 | - | 121 | 44% | 47% | 50% | 54 | 57 | 60 |
| **Total Unsecured Claims** | | $ 5,117 | $ - | $ 5,117 | 44% | 47% | 50% | $ 2,270 | $ 2,419 | $ 2,560 |
| Remaining Distributable Value after Unsecured Claims | | | | | | | | $ - | $ - | $ - |
| Redistribution on Account of Intercompany Interests | | | | | | | | - | - | - |
| Remaining Distributable Value after Intercompany Interests | | | | | | | | $ - | $ - | $ - |
| **Total Claims / Total Recovery** | | $ 5,468 | $ - | $ 5,468 | 47% | 50% | 52% | $ 2,562 | $ 2,711 | $ 2,852 |



**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**

**C** **Celsius**

# Gross Liquidation Proceeds

**8**

## Summary of Assets for Distribution

**CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY**
*$ in millions*

➢ The table below summarizes pro forma assets at the Liquidation Date and resulting gross liquidation assets under the Liquidation Analysis

➢ The Liquidation Analysis relied on the Valuation Report prepared by Stout Risius Ross, LLC as the starting point for non-mining asset valuations prior to liquidation adjustments

➢ The below results are combined results for all debtor entities, although an individual liquidation analysis was prepared for each Debtor

➢ Supporting details for each type of asset are on the following pages

| | Notes | Assets 5/31/2023 | Assets Adj. | Assets Pro Forma | Est. Recovery Low | Est. Recovery Mid | Est. Recovery High | Liq. Value Low | Liq. Value Mid | Liq. Value High |
|---|---|---|---|---|---|---|---|---|---|---|
| **Liquidated Balance Sheet** | | | | | | | | | | |
| Cash | [A] | $ 92 | $ (92) | $ - | - | - | - | $ - | $ - | $ - |
| Fireblocks | [B] | 1,031 | (120) | 911 | 94% | 97% | 100% | 855 | 883 | 909 |
| Institutional Loans Receivable | [C] | 75 | - | 75 | 28% | 37% | 47% | 21 | 28 | 35 |
| DeFi/Staking Assets | [D] | 1,653 | (56) | 1,597 | 91% | 94% | 98% | 1,456 | 1,509 | 1,558 |
| Custody Holdings | [E] | 160 | 93 | 253 | 90% | 95% | 99% | 228 | 241 | 250 |
| Investments | [F] | 129 | - | 129 | 25% | 50% | 75% | 32 | 64 | 97 |
| Retail Loans Receivable | [G] | 410 | (410) | - | - | - | - | - | - | - |
| Mining Assets | [H] | 565 | - | 565 | 12% | 16% | 19% | 70 | 88 | 105 |
| **Gross Liquidation Assets** | | $ 4,114 | $ (585) | $ 3,529 | 75% | 80% | 84% | $ 2,662 | $ 2,812 | $ 2,953 |



**CELSIUS EX. 47**

**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**
*$ in millions*

# A. Cash

- ∨ Cash consists of all unrestricted Cash deposits in savings, operating, receipt, and disbursement accounts

- ∨ The valuation date Cash balance has been adjusted pro forma to the Liquidation Date, including monetization of coins in Fireblocks for the estimated cash shortfall to fund the Chapter 11 Cases through the Liquidation Date. This adjustment is detailed on the following page

## B. Fireblocks

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

*$ in millions*

|  | Asset Type (Value in $USD) | | | | Pro Forma | Estimated Liquidation Value (%) | | | Estimated Liquidation Value ($) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | BTC Equiv. | ETH Equiv. | USD/Stable Coins | Other Coins | Total | Low | Mid | High | Low | Mid | High |
| Fireblocks Assets | $ 895 | $ 9 | $ 17 | $ 111 | $ 1,031 | 90% | 95% | 99% | $ 930 | $ 980 | $ 1,020 |
| Coin Monetization Adjustments | (26) | - | (7) | (87) | (120) | 63% | 81% | 93% | (75) | (98) | (111) |
| **Total Debtor Fireblocks** | **$ 868** | **$ 9** | **$ 9** | **$ 24** | **$ 911** | **94%** | **97%** | **100%** | **$ 855** | **$ 883** | **$ 909** |
| *Memo: Non-Debtor Fireblocks (Liberia)* | $ - | $ 0 | $ 0 | $ 1 | $ 2 | 56% | 78% | 91% | $ 1 | $ 1 | $ 1 |

➢ Fireblocks assets have recovery values in liquidation based on their assumed liquidity:

- CEL: Assumed to have no recovery value in liquidation

- BTC/ETH/Stable Coins: Given the liquidity of these coins and availability to trade on most platforms, the analysis assumes recovery of 95% in the low case, 98% in the mid case, and 100% in the high case

- Other Coins: Assumed to have recovery ranging from 50%-90% given the uncertainty of monetization for certain alt coins on a condensed timeline

➢ The Liquidation Analysis includes adjustments for the monetization of alt coins and the estimated cash shortfall leading up the Liquidation Date



11

**CELSIUS EX. 47**

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

# C. Institutional Loans

*$ in millions*



| INSTIUTIONAL LOANS | Loan Value | Estimated Liquidation Value (%) | | | Estimated Liquidation Value ($) | | |
|---|---|---|---|---|---|---|---|
| | | Low | Mid | High | Low | Mid | High |
| 168 Trading Limited | | | | | | | |
| B2C2 LTD | | | | | | | |
| Tower BC Ltd | | | | | | | |
| Onchain Custodian Pte Ltd | | | | | | | |
| OPTIMAL ALPHA MASTER FUND LTD | | | | | | | |
| Blockchain Access UK Ltd | | | | | | | |
| Symbolic Capital Partners Ltd | | | | | | | |
| Profluent Trading Inc | | | | | | | |
| **Total Active Loans** | | | | | | | |
| B-Brick Inc | | | | | | | |
| Iterative OTC LLC | | | | | | | |
| Liquidity Technologies LTD | | | | | | | |
| Three Arrows Capital Ltd | | | | | | | |
| Reliz LTD | | | | | | | |
| Alameda Research Ltd | | | | | | | |
| **Total Loans In Workout** | | | | | | | |
| Equities First Holdings | | | | | | | |
| **Total Institutional Loans** | $ 75 | 28% | 37% | 47% | $ 21 | $ 28 | $ 35 |

➢ The Institutional Loan portfolio is valued at fair market value under the NewCo Plan and Orderly Wind Down. However in a chapter 7 liquidation these loans would not be held to maturity or marketed on a value-maximizing timeline

➢ The liquidation analysis assumes a ▓▓▓▓▓ recovery of fair market value on loans with currently active counterparties and Equities First Holdings and ▓▓▓▓▓▓ for currently defaulted loans



## D. DeFi/Staking Assets

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

*$ in millions*

| | Asset Type (Value in $USD) | | | | Pro Forma | Estimated Liquidation Value (%) | | | Estimated Liquidation Value ($) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | BTC Equiv. | ETH Equiv. | USD/Stable Coins | Other Coins | Total | Low | Mid | High | Low | Mid | High |
| Deployed DeFi Assets | $ | - | - | - | | | | | | | |
| Undeployed ETH in DeFi Workspaces | | 805 | - | - | 805 | 95% | 98% | 100% | 764 | 785 | 805 |
| Direct Staked ETH/ADA | | 689 | - | 32 | 721 | 93% | 96% | 100% | 670 | 696 | 718 |
| Stakehound | | | | | | | | | | | |
| Alt Coin Monetization | | (31) | - | (2) | (33) | 30% | 40% | 50% | (10) | (13) | (16) |
| **Total DeFi and Staking Assets** | $ 0 | $ 1,532 | $ 0 | $ 65 | $ 1,597 | 91% | 94% | 98% | $ 1,456 | $ 1,509 | $ 1,558 |

- ➢ **Deployed DeFi Assets:** Represents crypto assets deployed on various DeFi protocols. Given the number and complexity of these protocols and feasibility of recovery, the Liquidation Analysis assumes a ▮▮▮▮▮ recovery on these assets.

- ➢ **Undeployed ETH on Defi Workspaces:** Represents ETH held on defi workspaces that is not deployed into a defi protocol. Given the liquidity of this ETH the liquidation analysis assumes recovery similar to ETH in Fireblocks.

- ➢ **Direct Staked ETH/ADA:** ETH and ADA that is staked directly on their respective networks and can  be received and liquidated on a short timeline. Given the liquidity of these assets, the Liquidation Analysis assumes recovery similar to the recoveries ETH and ADA are receiving on Fireblocks

- ➢ **Stakehound:** Assets staked with Stakehound were lost by the platform, and recovery of these assets is uncertain. The Liquidation Analysis assumes a ▮▮▮▮▮ recovery on these assets



CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

## E. Custody Assets

*$ in millions*

| | Asset Type (Value in $USD) | | | | Pro Forma | Estimated Liquidation Value (%) | | | Estimated Liquidation Value ($) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | BTC Equiv. | ETH Equiv. | USD/Stable Coins | Other Coins | Total | Low | Mid | High | Low | Mid | High |
| Custody Assets as of the Valuation Date | $ 63 | $ 54 | $ 25 | $ 18 | $ 160 | 90% | 95% | 99% | $ 144 | $ 152 | $ 158 |
| Custody Assets Withdrawn prior to Valuation Date | 36 | 28 | 20 | 9 | 93 | 91% | 95% | 99% | 84 | 89 | 92 |
| **Total Custody Assets** | **$ 98** | **$ 82** | **$ 46** | **$ 27** | **$ 253** | **90%** | **95%** | **99%** | **$ 228** | **$ 241** | **$ 250** |

- ➢ Custody Assets reflect Cryptocurrency deposited into Custody Wallets that are assumed to be available to liquidate on or shortly after the Liquidation Date

- ➢ Certain users were granted the ability to withdraw their Custody balances in advance of the Effective Date; however, the Liquidation Analysis reflects the estimated full Custody Asset amount for illustrative purposes

- ➢ Cryptocurrency held in Custody is assumed to receive the same recovery by coin type as Fireblocks assets resulting in an estimated recovery of 90% to 99%.



## F. Investments

**CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY**

*$ in millions*

➢ Investments reflects alternative investments made in blockchain platforms, mining platforms, convertible notes and equity investments. The fair market value of these investments was estimated in the Valuation Report

➢ An adjustment to the fair value of the investments was applied in the Liquidation Analysis due to the expedited sale of these assets and the uncertainty of recoverability, resulting in an estimate recovery of ▮▮▮▮▮ of the fair market value.

| | Valuation Date | Estimated Liquidation Value (%) | | | Estimated Liquidation Value ($) | | |
|---|---|---|---|---|---|---|---|
| | | Low | Mid | High | Low | Mid | High |
| Mawson | | | | | | | |
| QRDO Investment | | | | | | | |
| MATIC | | | | | | | |
| Other Investments | | | | | | | |
| **Consolidated Debtors Investments** | | | | | | | |
| Core Scientific Convertible Note | | | | | | | |
| Rhodium | | | | | | | |
| Luxor | | | | | | | |
| **Celsius US Holding LLC Investments** | | | | | | | |
| **Total Investments** | $ 129 | 25% | 50% | 75% | $ 32 | $ 64 | $ 97 |



# G. Retail Loans

CELSIUS EX. 47

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY
*$ in millions*

- The Liquidation Analysis assumes borrowers are unlikely to repay their Retail Advance Obligations and would not be granted the set-off against Retail Borrower Deposit Claims that is currently contemplated in the Plan

- Claimants will receive a Retail Borrower Deposit Claim for the full balance of their collateral as of the Petition Date, *pari passu* with other unsecured claims

# H. Mining Assets

**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**
*$ in actuals*

➢ Mining Assets include mining hardware and proprietary mining sites owned by the Debtors

➢ Although a valuation analysis was performed to value these assets, certain components were valued as a going concern. The Liquidation Analysis assumes that these rigs and proprietary sites will be liquidated on a condensed timeline and estimates a recovery of 12% to 19% of the fair market value of the going concern business

| Asset Listing | Quantity / MW Capacity | Average Price (USD) | Gross Proceeds | Net Proceeds |
|---|---|---|---|---|
| S19 | 18,680 | $84 | $1,560,463 | $652,218 |
| S19 Pro | 4,601 | $172 | $789,945 | $545,958 |
| S19J | 77 | $140 | $10,778 | $6,817 |
| S19J Pro | 82,751 | $730 | $60,398,258 | $53,700,523 |
| BTM30S | 4,771 | $239 | $1,138,655 | $1,005,386 |
| BTM30S+ | 5,582 | $363 | $2,028,587 | $1,837,846 |
| BTM30S++ | 2,099 | $461 | $967,988 | $886,004 |
| S19 XP | 4,024 | $2,863 | $11,520,677 | $10,765,799 |
| **Total Rigs** | **122,585** | **$640** | **$78,415,351** | **$69,400,552** |
| | | | | |
| Proprietary : Garden City | 12 | $200,000 | $2,400,000 | $2,160,000 |
| Proprietary : Stiles | 20 | $200,000 | $4,000,000 | $3,600,000 |
| Proprietary : E. Stiles | 30 | $200,000 | $6,000,000 | $5,400,000 |
| Proprietary : Rebel | 25 | $200,000 | $5,000,000 | $4,500,000 |
| **Total Sites** | **87** | **$200,000** | **$17,400,000** | **$15,660,000** |
| | | | | |
| Mining Containers | 22 | $63,636 | $1,400,000 | $1,330,000 |
| Airflow Containers | 22 | $22,727 | $500,000 | $475,000 |
| Transformers | 8 | $69,886 | $559,086 | $531,132 |
| Power Distribution Panels | 6 | $42,000 | $252,000 | $239,400 |
| **Total Other Assets** | **58** | **$46,743** | **$2,711,086** | **$2,575,532** |
| | | | | |
| **Total Mining Liquidation Value** | | | **$98,526,437** | **$87,636,083** |

| | Low | Mid | High |
|---|---|---|---|
| **Liquidation Analysis Recovery Range** | $70,108,867 | $87,636,083 | $105,163,300 |



**C** Celsius

**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**

# Liquidation Adjustments

**CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY**

**CELSIUS EX. 47**

# Chapter 7 Adjustments



∀ Gross liquidation proceeds must be adjusted for additional costs incurred by the estate to implement the liquidation process. The main categories of such additional costs are as follows:

**I.**  **Liquidation Costs:** Consist of employee costs; sales, general and administrative ("SG&A") expenses, third-party distribution fees, network fees, and expense reimbursement for plan termination.

**J.**  **Chapter 7 Professional and Broker Fees:** The chapter 7 professional fees include estimates for certain professionals that will provide assistance and services to the Trustee during the Liquidation Period

**K.**  **Chapter 7 Trustee Fees:** Section 326(a) of the Bankruptcy Code provides that Trustee fees may not exceed 3% of distributable proceeds in excess of $1 million. The Liquidation Analysis assumes the Trustee fees would be approximately 3% of Gross Liquidation Proceeds from external assets, which equals approximately $80 to $89 million, in the low and high cases, respectively.

# Liquidation Costs

**CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY**

*$ in thousands*

➤ Employee costs include payroll taxes, employee benefits and retention bonuses that may be necessary to retain certain employees to effectuate the liquidation

➤ SG&A, Network fees to transact coins/tokens, expense reimbursements for conversion to Chapter 7 and other contingent expenses are assumed for the 6 month period

➤ Total wind-down costs are estimated to be approximately $50 million.

| WIND DOWN COSTS | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Employee Salaries | $ | 1,368 | $ | 1,368 | $ | 977 | $ | 977 | $ | 463 | $ | 463 | $ | 5,617 |
| Payroll Taxes | | 171 | | 171 | | 122 | | 122 | | 58 | | 58 | | 702 |
| Employee Benefits | | 171 | | 171 | | 122 | | 122 | | 58 | | 58 | | 702 |
| Retention Bonuses | | 684 | | 684 | | 488 | | 488 | | 232 | | 232 | | 2,809 |
| **Total Employee Costs** | **$** | **2,395** | **$** | **2,395** | **$** | **1,709** | **$** | **1,709** | **$** | **811** | **$** | **811** | **$** | **9,830** |
| SG&A | | 1,333 | | 1,333 | | 1,333 | | 1,333 | | 1,333 | | 1,333 | | 8,000 |
| Valuation/IT/Audit | | 500 | | 500 | | 500 | | 500 | | 500 | | 500 | | 3,000 |
| Network Fees | | 167 | | 167 | | 167 | | 167 | | 167 | | 167 | | 1,000 |
| PSA Expense Reimbursement | | 7,500 | | - | | - | | - | | - | | - | | 7,500 |
| Contingent Expenses | | 3,333 | | 3,333 | | 3,333 | | 3,333 | | 3,333 | | 3,333 | | 20,000 |
| **Total Wind Down Costs** | **$** | **15,228** | **$** | **7,728** | **$** | **7,043** | **$** | **7,043** | **$** | **6,144** | **$** | **6,144** | **$** | **49,330** |
| **Total Wind-Down Costs (Rounded)** | | | | | | | | | | | | | **$** | **50,000** |



# Chapter 7 Professional Fees

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

*$ in millions*

➤ The Liquidation Analysis assumes the Trustee will retain lawyers, financial advisors, and investment bankers to assist in the liquidation.

➤ These advisors will assist in marketing the Debtors' assets, litigating claims and resolving tax litigation matters, and resolving other matters relating to the liquidation of the Debtors' Estates.  The advisors will also collect broker fees for the sale of certain alternative investments.

➤ Total professional fees are estimated to be $25 million.

**PROFESSIONAL AND BROKER FEES**

| | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Total |
|---|---|---|---|---|---|---|---|
| **Chapter 7 Professionals** | | | | | | | |
| Legal Counsel | $ 2.0 | $ 2.0 | $ 2.0 | $ 2.0 | $ 2.0 | $ 2.0 | $ 12.0 |
| Financial Advisor | 1.0 | 1.0 | 0.8 | 0.5 | 0.5 | 0.5 | 4.3 |
| Investment Banker | 1.0 | 1.0 | 0.8 | 0.5 | 0.5 | 0.5 | 4.3 |
| Case Administrator | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 1.5 |
| **Total Chapter 7 Professional Fees** | $ 4.3 | $ 4.3 | $ 3.8 | $ 3.3 | $ 3.3 | $ 3.3 | $ 22.0 |
| **Broker Fees** | $ 0.5 | $ 0.5 | $ 0.5 | $ 0.5 | $ 0.5 | $ 0.5 | $ 3.0 |
| **Total Professional and Broker Fees** | $ 4.8 | $ 4.8 | $ 4.3 | $ 3.8 | $ 3.8 | $ 3.8 | $ 25.0 |



**C** **Celsius**

**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**

# Redistribution of Value Through Intercompany

22

**CONFIDENTIAL & PRELIMINARY DRAFT**
**FOR INTERNAL DISCUSSION PURPOSES ONLY**
*$ in millions*

**CELSIUS EX. 47**

# Intercompany Overview



- Debtor entities will all receive an unsecured claim for the intercompany balanced owed to them from Debtor and non-debtor entities as of the Petition Date

- All post-petition intercompany liabilities will receive an Administrative Claim. Due to the substantive consolidation of the Consolidated Debtors, there are *de minimis* post-petition intercompany balances

- Any distributable assets at a Debtor or Non-Debtor subsidiary remaining after distributions to creditors and Intercompany Claims will be redistributed to the parent entity as intercompany interests before any subordinated claims

- Pre- and Post- Petition intercompany claims and intercompany interests will be paid to Debtor entities through the claims waterfall, and subsequently become a distributable asset at the receiving Debtor entity

- The redistribution of assets between Debtors changes the distributing entity but ultimately does not affect the recovery value to 3rd party claimants

- Post-petition intercompany claims will receive a 100% recovery, while pre-petition intercompany claims will receive recovery in line with pari passu unsecured claims at each entity

23

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

# Pre-Petition I/C Claims and Recoveries

*$ in millions*

➤ Recovery on Debtor and Non-Debtor Pre-Petition Intercompany Claims are *pari passu* with other unsecured claims, and are redistributed to the receiving entity as assets for distribution through their waterfall to 3rd party and Intercompany Claims

**Pre-Petition Intercompany Claims**

| Paying Entity: | | | | | | | | | | | | |
| Receiving Entity: | Consolidated Debtors | Celsius Mining LLC | Celsius Network Inc. | Celsius US Holding LLC | Celsius KeyFi LLC | Celsius Network EU UAB (LT) | Celsius (AUS) Pty Limited | Celsius Network (Gibraltar) Limited | Celsius Network Europe | Celsius Network Limited (ISR) | Celsius Services CY Limited | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consolidated Debtors | $ - | $ 649 | $ 11 | $ 119 | $ - | $ - | $ 0 | $ 0 | $ 12 | $ 175 | 0 | 967 |
| Celsius Mining LLC | - | - | - | - | - | - | - | - | - | - | - | - |
| Celsius Network Inc. | - | 1 | - | - | 0 | - | - | - | 0 | 0 | 0 | 1 |
| Celsius US Holding LLC | - | 2 | - | - | - | - | - | - | - | - | - | 2 |
| Celsius KeyFi LLC | 5 | - | - | - | - | - | - | - | - | - | - | 5 |
| Celsius Network EU UAB (LT) | 120 | - | - | - | - | - | - | - | - | - | - | 120 |
| Celsius (AUS) Pty Limited | - | - | - | - | - | - | - | - | - | - | - | - |
| Celsius Network (Gibraltar) Limited | - | - | - | - | - | - | - | - | - | - | - | - |
| Celsius Network Europe | - | - | - | - | - | - | - | - | - | 3 | - | 3 |
| Celsius Network Limited (ISR) | - | 0 | - | - | - | - | - | - | - | - | - | 0 |
| Celsius Services CY Limited | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total** | $ 125 | $ 652 | $ 11 | $ 119 | $ 0 | $ - | $ 0 | $ 0 | $ 12 | $ 178 | $ 1 | $ 1,098 |

**Pre-Petition Intercompany Recoveries (Mid-Point)**

| | Consolidated Debtors | Celsius Mining LLC | Celsius Network Inc. | Celsius US Holding LLC | Celsius KeyFi LLC | Celsius Network EU UAB (LT) | Celsius (AUS) Pty Limited | Celsius Network (Gibraltar) Limited | Celsius Network Europe | Celsius Network Limited (ISR) | Celsius Services CY Limited | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consolidated Debtors | $ - | $ 78 | $ - | $ 47 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 125 |
| Celsius Mining LLC | - | - | - | - | - | - | - | - | - | - | - | - |
| Celsius Network Inc. | - | 0 | - | - | 0 | - | - | - | - | - | - | 0 |
| Celsius US Holding LLC | - | 0 | - | - | - | - | - | - | - | - | - | 0 |
| Celsius KeyFi LLC | 2 | - | - | - | - | - | - | - | - | - | - | 2 |
| Celsius Network EU UAB (LT) | 57 | - | - | - | - | - | - | - | - | - | - | 57 |
| Celsius (AUS) Pty Limited | - | - | - | - | - | - | - | - | - | - | - | - |
| Celsius Network (Gibraltar) Limited | - | - | - | - | - | - | - | - | - | - | - | - |
| Celsius Network Europe | - | - | - | - | - | - | - | - | - | - | - | - |
| Celsius Network Limited (ISR) | - | 0 | - | - | - | - | - | - | - | - | - | 0 |
| Celsius Services CY Limited | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total** | $ 59 | $ 78 | $ - | $ 47 | $ 0 | $ - | $ - | $ - | $ - | $ - | $ - | $ 185 |

Redistribution Amongst Debtor Entities
Redistribution of Assets from Non-Debtors to Debtor Entities
Intercompany Claims paid by Debtors to Non-Debtors





CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

# Distribution to Claimants and Creditor Recoveries

# Claims and Recoveries

CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY

*$ in millions*

➤ The recoveries for claims under the Liquidation Analysis below are an aggregation of recoveries from all debtor entities and represent the ranges of recoveries for creditors at the debtor entities

➤ The claim value and recoveries for the various classes are detailed on the following page

**Claims and Recoveries**

| | | Total Estimated Claim | | | Total Recovery - % | | | Total Recovery - $ | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Administrative Claims** | | Petition Date | Adj. | Claim | Low | Mid | High | Low | Mid | High |
| Administrative Claims | | 85 | - | 85 | 100% | 100% | 100% | 85 | 85 | 85 |
| Priority Tax Claims | | - | - | - | - | - | - | - | - | - |
| **Total Administrative Claims** | [O] | $ 85 $ | - $ | 85 | 100% | 100% | 100% $ | 85 $ | 85 $ | 85 |
| *Remaining Distributable Value after Administrative Claims* | | | | | | | | $ 2,477 $ | 2,626 $ | 2,767 |
| **Settled Claims** | | | | | | | | | | |
| Withdrawable Custody Claims[1] | [P] | 48 | - | 48 | 100% | 100% | 100% | 48 | 48 | 48 |
| General Custody Claims[1] | [Q] | 218 | - | 218 | 73% | 73% | 73% | 158 | 158 | 158 |
| **Total Settled Claims** | | $ 266 $ | - $ | 266 | 77% | 77% | 77% $ | 206 $ | 206 $ | 206 |
| *Remaining Distributable Value after Settled Claims* | | | | | | | | $ 2,270 $ | 2,419 $ | 2,560 |
| **Unsecured Claims** | | | | | | | | | | |
| General Earn Claims | [R] | 4,082 | - | 4,082 | 44% | 47% | 50% | 1,815 | 1,934 | 2,047 |
| Withhold Claims | [S] | 13 | - | 13 | 44% | 47% | 50% | 6 | 6 | 7 |
| Unsecured Loan Claims | [T] | 88 | - | 88 | 44% | 47% | 50% | 39 | 41 | 44 |
| Retail Borrower Deposit Claims | [U] | 763 | - | 763 | 44% | 47% | 50% | 339 | 361 | 382 |
| General Unsecured Claims | [V] | 50 | - | 50 | 35% | 37% | 40% | 17 | 19 | 20 |
| Intercompany Claims | | 121 | - | 121 | 44% | 47% | 50% | 54 | 57 | 60 |
| **Total Unsecured Claims** | | $ 5,117 $ | - $ | 5,117 | 44% | 47% | 50% $ | 2,270 $ | 2,419 $ | 2,560 |
| *Remaining Distributable Value after Unsecured Claims* | | | | | | | | $ - $ | - $ | - |
| Redistribution on Account of Intercompany Interests | | | | | | | | - | - | - |
| *Remaining Distributable Value after Intercompany Interests* | | | | | | | | $ - $ | - $ | - |
| **Total Claims / Total Recovery** | | $ 5,468 $ | - $ | 5,468 | 47% | 50% | 52% $ | 2,562 $ | 2,711 $ | 2,852 |



CONFIDENTIAL & PRELIMINARY DRAFT
FOR INTERNAL DISCUSSION PURPOSES ONLY
*$ in millions*

**CELSIUS EX. 47**



# Claims and Recoveries (cont.)

**O.  Administrative Claims:** For the purposes of this Liquidation Analysis, Administrative Claims consist of claims for costs and expenses of administration incurred during the Chapter 11 Cases that are Allowed under sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, claims for postpetition accounts payable, postpetition accrued taxes, accrued and unpaid fees and expenses as of the Liquidation Date of professionals other than Debtor Professionals and Committee Professionals.  The Liquidation Analysis estimates approximately $85 million in Chapter 11 Administrative Claims at the Liquidation Date.  The Liquidation Analysis estimates 100% recovery to Chapter 11 Administrative Claims

**P.  Withdrawable Custody Claims:** Consists of all Pure Custody Claims and Eligible Transferred Custody Claims that are eligible for withdrawal under the Custody Settlement Order.  These Claims are estimated to receive 100% recovery through in-kind distribution under the Liquidation Analysis rather than a percentage of their coins dollarized as of the Petition Date

**Q.  General Custody Claims:** Consist of Claims from customers with deposits in Custody Wallets that were not permitted to withdraw under the Custody Settlement Order.  These claims are estimated to receive 72.5% recovery through in-kind Cryptocurrency distributions under the Liquidation Analysis rather than a percentage of their coins dollarized as of the Petition Date

**R.  General Earn Claims:** General Earn Claims consist of user Cryptocurrency deposit balances in the Earn Program. Cryptocurrency balances are dollarized as of the Petition Date except for CEL Tokens which receive a claim of $0.25. Total General Earn Claims are estimated to be approximately $4.1 billion and recover 44% to 50% in liquidation.

**S.  Withhold Claims:** Under a chapter 7 liquidation, the Withhold Settlement will not occur, and Withhold Claims will receive treatment *pari passu* to unsecured claims and receive a Pro Rata share of the Unsecured Claim Distribution Consideration. Withhold Claims will receive an approximate recovery of 44% to 50%.

# Claims and Recoveries (cont.)



T. **Unsecured Loan Claims:** Unsecured Loan Claims arise from borrowings made by the Debtors with institutional counterparties. These counterparties have filed claims totaling $88 million and are estimated to recover 44% to 50% in liquidation

U. **Retail Borrower Deposit Claims:** Retail Borrower Deposit Claims represent the full balance of the Cryptocurrency transferred by Retail Borrowers in connection with their Retail Advance Obligations, dollarized as of the Petition Date. Retail Borrower Deposit Claims are estimated to be $763 million and recover 44% to 50% in the Liquidation Analysis.

V. **General Unsecured Claims:** Claims without security interests and not otherwise entitled to administrative or priority treatment including, but not limited to, prepetition trade amounts not paid pursuant to relief granted pursuant to the First Day Motions, rejected and contemplated rejection of executory contracts. The Liquidation Analysis assumes there would be 35% to 40% recovery for General Unsecured Claims.

# CELSIUS EXHIBIT 48

# SUBMITTED IN NATIVE

# CELSIUS EXHIBIT 53

# SUBMITTED IN NATIVE

# CELSIUS EXHIBIT 55

# SUBMITTED IN NATIVE

# CELSIUS EXHIBIT 56

# SUBMITTED IN NATIVE

# CELSIUS EXHIBIT 57

# SUBMITTED IN NATIVE

# CELSIUS EXHIBIT 62

# SUBMITTED IN NATIVE