**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | ) Chapter 11 |
| **CELSIUS NETWORK LLC,** *et al.*, | ) Case No. 22-10964 (MG) |
| Debtors. | ) (Jointly Administered |
| _____) | |

**CORRECTED SUPPLEMENTAL AFFIDAVIT OF OTIS DAVIS IN SUPPORT OF**

**THE MOTION AND IN OPPOSITION TO THE**

**MAX GALKA "EXPERT" REPORT AND ITS FINDINGS**

Your affiant reaffirms and reasserts all statements made in my prior motion and supporting Affidavit hereto. I felt it necessary to submit this supplemental affidavit to the Court at this time due to the less than five hours I was given by the attorneys who uploaded the report yesterday.

With reference to the CEL token valuation referred to in the supposed Expert Report submitted by Mr. Galka:

1. Mr. Galka, unbelievably and to the surprise of all, neglected to make any reference to what, in his supposed expert opinion, would have been a fair and appropriate price for CEL token on the date of Petition in his report along with the evidence/methodology/rationale that would have been used to assert such a valuation.

2. This omission is fatal to his report, even aside from the blaring conflict of interest that he and his company has, which should automatically disqualify his report in its objectivity.

3. How is it possible to claim that CEL token was supposed to be lower than $0.81 on the date of Petition, while, according to page 64 of Mr. Galka's own report, it shows that the Debtor sold over 8.6 million CEL tokens from the Debtor's holdings into the market from the Pause to the Petition date?

4. The blanket assertion in Mr. Galka's report that the Debtor manipulated the price of CEL token in the entire period of January 2020 to July 2022 is completely contradictory to his own statements in the report. Page 64 of the report states that Celsius purchased a net positive of 1,886,000 CEL tokens over this two-and-a-half-year time frame.

5. It would appear that the conclusion that Galka alleges as reasonable and for this Court's adoption, demands that this Court adopts the belief that CEL token price was manipulated by the purchase of slightly more than one-quarter of one percent (**0.28%) of the outstanding 693 million total CEL token supply**. Additionally and importantly, none of those excess CEL tokens that Galka alleges manipulated the price were purchased between the Pause and the Petition date.

6. It is undisputed that from the Pause Date to the Petition date Celsius did not purchase any CEL tokens from the market.  There were, however, hundreds of millions of dollars in trading volume at over a dozen centralized and decentralized exchanges to establish a set price and valuation for the CEL Token.

7. This free market activity in such high volume is the best expert witness of all as to what the pegged price should be, not Galka's biased, contradictory and incomplete report..

8. **The $0.81 price is the culmination of all information and speculation by the free market during that period and is the best indicator of fair market value.**

9. As your Honor stated in the last CEL Token Hearing held on September 28, 2023, "It is the burden of the Debtors to prove that CEL token should be priced at less than $0.81 on the date of Petition…," and I assert to this Court that all of the information provided, including the incomplete and biased Galka Report, failed to meet any burden whatsoever regarding this issue.

10. For all of the aforementioned reasons stated above and in my motion and Affidavit in Support, I respectfully ask this Court and your Honor to recognize that $0.81 is the best fair market value at the date of petition.

Respectfully Signed,

Otis Davis, *Pro Se*

9/29/2023

*/s/Otis Davis*