Johan Bronge
*Pro se*
29 September 2023

## United States Bankruptcy Court Southern District of New York Re: Chapter 11 Case No. [22-10964 (MG)

Johan Bronge's response to Debtor's MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CELSIUS NETWORK LLC AND ITS DEBTOR AFFILIATES

Introduction.

The Debtor has filed a memorandum of law in support of confirmation of the Celsius Chapter 11 Reorganization plan. Among other objections filed against confirming the plan the Debtor has responded to my objection (Bronge objection) and motion (Bronge motion).

Below follows my response to the Debtor.

Chapter VII, B, e, item 236

I stand firm in my objection to the altered terminology. I do not have a 'Retail Borrower Deposit Claim' nor do I have a 'Retail Borrower Advance Obligation'. I have claim on my Collateral and I have an obligation to return Principal and interest on a Loan for which the Collateral is serving as security. This is unambiguously clear in the TOS and all other documents and verbal communication in this matter. This distinction is important and the Debtor should not be allowed to change the terminology without at least providing an adequate rational. This is especially important since the terms used in the TOS and all other documents and verbal communication, imbues certain attributes to the Collateral and Loan and these are lost in the new terms. The argument that provisions in Bankruptcy law and/or case law is needed to disallow such change of definitions is borderline absurd and should be thrown out. To allow this is similar to allow to define wine as water. Both are liquids but associated with very different qualities.

Chapter VII, B, a, item 228

The Debtor completely ignore and fails to acknowledge and address the references and evidence I have included in support for the Collateral being my encumbered property during the Loan duration. This is disingenuous at best and arrogant and insulting at worst and I urge the Court to compel the Debtor to properly answer the points in my motion and objection.

The Debtor cites items in version 9 of the Loan TOS which is misleading as my arguments for ownership refers to version 7 of the Loan TOS that is controlling my first Loan (31904) see docket 393 page 6, Loan Terms of Use. Here it unambiguously states, in all versions of TOS "*The user-borrower's loan was governed by the version of the Celsius Loan Terms and Conditions agreed to at the conclusion of the application process for the subject loan.*"
When reading version 7 of the Loan TOS it is unambiguously clear that there were no transfer of ownership title of Collateral.

The paragraph, *Consent to Celsius' Use of Your Digital Assets* in version 7 of Loan TOS is the only place I can find where any mention of property rights are mentioned. Here it states "*...to hold the Digital Assets provided as Collateral in Celsius' name or in another name, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets at Celsius' own risk. You acknowledge that, with respect to Digital Assets used by Celsius pursuant to this paragraph:*
*(a) You may not be able to exercise* **certain** *rights of ownership...*" (bold emphases mine)

I here argue that this paragraph, just by it's name (...*Celsius' Use of **Your** Digital Assets...*) demonstrates that Celsius is only using my assets not owning them. Additionally, it does not state that ownership title is transferred and it explicitly states that I may not be able to exercise **certain** rights of ownership. This makes it clear that I still hold ownership title but I may not exercise some property rights such title give me during the Loan duration.
This paragraph must be seen in it's context and it's purpose was only to enable Celsius use of the Collateral, to the extent agreed, **as if** it was Celsius property. Collateralized Loan Agreements have been around for centuries and are not commonly used to transfer ownership title of assets. They fulfill the function of allowing, to a varying degree, use of an asset without transferring title while the asset functions as a security for certain obligations as agreed. The Celsius Loan Agreement TOS was not intended to transfer property ownership title. **If** it's purpose was to transfer property title, it would explicitly so state. Incidentally, in another jurisdiction it did transfer ownership title. It was then appropriately called a Sale and Repurchase Agreement (docket 393 page 981) and the corresponding paragraph to "*Consent to Celsius' Use of Your Digital Assets*" is called "*Title Transfer of Tendered Assets*". Here it explicitly and unambiguously states that there is a transfer of ownership title taking place.

There are numerous examples in Sale and Repurchase Agreement how the wording should be in order to unambiguously transfer property ownership title. I will give one example and contrast it to how the corresponding wording is in the Loan Agreement TOS (version 7);
In the Sale and Repurchase Agreement (docket 393, page 985), Provision of Tendered Assets, item c) "*...Tendered Assets are transferred to Celsius UK on a

*complete title transfer basis and shall become the property of Celsius UK absolutely."*
In the Loan Agreement version 7 (docket 393, page 862), Collateral item c)
*"...Collateral shall be subject to a pledge for Celsius' benefit, in accordance with the terms herein. You will not be able to withdraw, transfer or transact any of the Digital Assets which are posted as Collateral."*

Let me also draw the Courts attention to item H in my motion. Here I specifically quote the Second Revised Disclosure Statement (page 79);
Quote: "Coin **pledged as security** for repayment of a loan in the event of a borrower's default. Will include any initial **collateral posted as security**, as well as any additional collateral provided in response to margin calls." (my bold emphasis) Even this definition supports my arguments regarding ownership and title status of collateral.

The distinction between title and property rights is crucial in legal agreements like collateralized loans. The borrower can still be the legal owner (holder of title) of the asset while providing agreed property rights to the lender during the collateralized Loan period.

Based on the above and the arguments in my motion and objection, it is absolutely, unambiguously clear that no Collateral ownership title of my Loan (31904) has been transferred to the Debtor. Furthermore, as argued in my motion, the same should be considered for my other three loans. Even though the wording in later TOS (version 8 and 9) allows for transfer of all property rights during the Loan period, it still do not, explicitly or generally, transfer ownership title.


Chapter VII, B, b, item 230-234

Even though, as argued above, it is obvious that ownership title of Retail Loan Collateral resides with the borrower (at the minimum for version 7 and arguably also for subsequent versions), I would like to state the following;

In so far as the Debtor do not provide the MLA's for the Institutional Loans the statement that they are different in regard to ownership status of the collateral is unsubstantiated and can be deemed hearsay. This is especially so as in the *"Debtors' Motion Seeking Entry of an Order (I) Authorizing (A) The Transfer of Cryptocurrency Assets Serving as Collateral on Account of Institutional Loans in the Ordinary Course of Business and (B) the Exercise of the Debtors' Rights and Remedies Provided Under Each Master Lending Agreement and (II) Granting Related Relief* [Docket No. 1818]", the Debtor states in item I, 13 *"...Under the majority of the MLAs, title to any cryptocurrency assets serving as collateral on account of institutional loans was transferred to the Debtors prepetition and therefore constitutes property of the Debtors' estates in accordance with section 541(a) of the Bankruptcy Code"*.

Of additional interest here is the footnote (4) that states *"In certain of the MLAs,*

*the Debtors purported to grant a security interest in the collateral and the agreements are silent as to the transfer of title. The Debtors reserve all rights with respect to the transfer of title under the MLAs"*

If the Debtor are to have any credibility in this matter I urge the court to compel The Debtor to produce these MLA's for scrutiny and enable the Court and Borrowers to compare them to the Retail Loan TOS.

The first assertion by the Debtor that I have "...no grounds to object to the treatment of the Retail Borrower Deposit Claims on the grounds of unfair discrimination because the Class overwhelmingly voted to accept the Plan" is outright wrong. The plan is not confirmed and therefore now is the time to object to unfair treatment. I would like to ask the Debtor to explain how and on what basis I do not have fair grounds to object. Until the plan is confirmed the Debtor absolutely have to demonstrate that the class is not the product of unfair discrimination against similarly situated creditors. Why would otherwise a confirmation hearing be held?

I would also here state that I am receiving unfair treatment, not only in relation to the Institutional Borrowers, but also in relation to other asset classes. I am convinced I conclusively have shown that I hold ownership title to my Collateral and therefore the Collateral is not part of the bankruptcy estate, only the principal and outstanding interest is. Therefore, unless I am allowed to fulfill and follow the Loan contract, paying back the principal and outstanding interest, my Retail Collateral should be in it's own class. This class should have priority over all other classes, except Custody, and at a minimum, all excess Collateral should be released, in kind without any 'haircut' after a set-off treatment, or the full Collateral, in kind, is returned upon payment of principal and interest.

I again request the Debtor to show the MLAs in question so it can be determined what the legal differences are. It is inappropriate for the Debtor to just state this as a fact without showing any supporting evidence.


Chapter VII, B, d, item 235

Firstly, I want to make it clear that my argument regarding valuation of Collateral is only relevant if it for some reason is determined that I do not hold title over my Collateral.
Secondly, the Retail Borrower Settlement is irrelevant to my argument as I was not privy to these negotiations, neither have I signed or condoned this settlement.
With these items clarified, I start by reiterating my arguments from the objection. I also do not consider the Debtor argument that I need statutory basis to object to unfair treatment valid. Laws can not regulate or encompass all possible cases and therefore each particular case should be judged on it's merit. Here it is obvious that the Petition USD valuation of Collateral assets is done at the bottom of a bear market and in all likelihood, the market will give a higher USD value of the same assets at a future date. This will reduce the percentage of the assets returned, even though it may retain the same USD value. The opposite obviously applies if

market prices fall below the Petition price but here the Debtor has guarded themselves so they are never required to return more than 100% of the Petition value in USD. This is unfair by any standards, all the risk is on one side and all possible upside on the other. I still argue that the only fair way to treat this dollarization of claims is to use a uniform price across all valuations, set-offs and/or pay backs.
Furthermore, in regards to BTC, that is legal tender and a commodity, ideally no dollarization of the claim should be done. The percentage recovery should be applied directly on the BTC claim without passing through the USD.
This argument regarding valuation would be applicable to all BTC claims, Collateral or not.


Conclusion

I have meticulously countered the Debtor's points, citing specific references and highlighting the inconsistencies in their arguments. Their failure to directly address my concerns and provide essential documentation demonstrates a lack of serious engagement by the Debtor. I am especially concerned that the Debtor does not seem to acknowledge that there is a separation between ownership title and property rights.
I urge the Court to thoroughly evaluate my objections and recognizing the validity of my arguments. The approval of my motion is vital for upholding fairness and justice in this case.

Sincerely

Johan Bronge

*Pro se creditor*