Hearing Date/Time: October 24, 2023 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: October 16, 2023 (prevailing Eastern Time)

| | |
|---|---|
| OFFIT KURMAN, P.A.<br>Jason A. Nagi<br>590 Madison Avenue, 6th Floor<br>New York, NY 10022<br>Telephone: (212) 545-1900<br>Jason.nagi@offitkurman.com | OFFIT KURMAN, P.A.<br>Joyce A. Kuhns (*pro hac vice*)<br>1954 Greenspring Drive, Suite 605<br>Timonium, Maryland 21093<br>Telephone: (410) 209-6463<br>Jkuhns@offitkurman.com |

*Counsel to Ad Hoc Group of Earn Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X
In re:                                                  :    Chapter 11
                                                        :
**CELSIUS NETWORK LLC, et al.**[1]                      :    Case No. 22-10964 (MG)
                                                        :
                                                        :    Jointly Administered
                          **Debtor**                    :
                                                        :
------------------------------------------------------------------------X

**APPLICATION OF AD HOC GROUP OF EARN ACCOUNT HOLDERS
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE
AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES
<u>INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business is 121 River Street, PH05, Hoboken, New Jersey 07030.

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT AND REQUESTED RELIEF ..........................................1

II. JURISDICTION AND VENUE ......................................................................................5

III. LEGAL ARGUMENT .....................................................................................................5

    A. The Ad Hoc Earn Group Has Provided Substantial Contribution to the Celsius Case ..................................................................................................6

        1. The Ad Hoc Earn Group's Contributions Provided Actual, Demonstrable Benefit to the Celsius Estates and Not Solely to Ad Hoc Earn Group Members ..........................................................6

        2. The Ad Hoc Earn Group's Contributions Were Not Duplicative of Others ...............................................................................................7

    B. The Fees of the Ad Hoc Earn Group's Counsel are Reasonable and Expenses are Actual and Necessary .............................................................................8

        1. Time and Labor Required and Skills Necessary .........................................8

        2. Customary Fees and Expenses ....................................................................9

IV. NOTICE .........................................................................................................................11

V. CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re U.S. Lines, Inc.,*
    103 B.R., 427 (Bankr. S.D.N.Y. 1989) ..............................................................................6

*Trade Creditor Grp. v. L.J. Hooker Corp., Inc.,*
    188 B.R. 117 (S.D.N.Y. 1995), *aff'd,* 109 F.3d 349 (2nd Cir. 1996) ..............................6

*In re Best Prods. Co., Inc.,*
    173 B.R. 862 (Bankr. S.D.N.Y. 1994) ..............................................................................6

**Statutes**

11 U.S.C. § 503(b)(3)(D) ................................................................................................1, 5, 8

11 U.S.C. § 503(b)(4) ......................................................................................................1, 5, 8

28 U.S.C. § 157 .......................................................................................................................5

28 U.S.C. § 157(b) ..................................................................................................................5

28 U.S.C. § 1334 .....................................................................................................................5

28 U.S.C. § 1408 .....................................................................................................................5

28 U.S.C. § 1409 .....................................................................................................................5

The Ad Hoc Group of Earn Account Holders (the "**Ad Hoc Earn Group**"), by and through its counsel, Offit Kurman, P.A., files this Application Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred in Making a Substantial Contribution and, in support, states:

## I. PRELIMINARY STATEMENT AND REQUESTED RELIEF

1. The Ad Hoc Earn Group[2] was formed on April 12, 2023, to give voice to the distinct issues confronting the 600,000 plus Earn account holders in the above referenced bankruptcy cases (collectively, the "**Celsius Case**"). The Celsius Case has highlighted how the bankruptcy and cryptocurrency worlds do not always dovetail and are not easily reconciled. Nonetheless, despite differing positions on whether certain account holder deposited cryptocurrency ("**crypto**") constituted estate property, and how and when claims would be calculated (whether dollarized or through return of liquid crypto), the Ad Hoc Earn Group's approach has been to achieve, to the extent possible in the bankruptcy context, parity and fair and equitable treatment among crypto account holders with respect to their claims. The Ad Hoc Earn Group believes its efforts substantially contributed to the overwhelming vote in support of Debtor's Plan to pave the way to confirmation. *See* Amended Declaration of Brian Karpuk Regarding the Solicitation and Tabulation of Votes on Joint Chapter 11 Plan [ECF No. 3574] (in which Debtors' Plan was accepted by almost every voting class by more than **98%**, including Earn claimants).

2. The pivotal role the Ad Hoc Earn Group could play in ultimate outcomes was first recognized when the Debtors and the Official Unsecured Creditors' Committee (the "**Committee**") invited representatives of the Ad Hoc Earn Group and other Earn representatives

---
[2] A current list of members of the Ad Hoc Earn Group is set out in its Revised 2019 Statement at ECF No. 3638.

to attend a mediation in New York in July 2023 before the Honorable Michael E. Wiles (the "**Mediation**").

3.  Prior to the Mediation: (i) the Debtor Celsius Network LLC and certain Debtor affiliates had filed a joint plan of reorganization on March 31, 2023; (ii) an auction had been conducted and Fahrenheit LLC ("**Fahrenheit**") had been selected by the Debtors and UCC as Plan sponsor; (iii) a disclosure statement had already been filed in connection with the Plan (on June 27, 2023) (the "**Disclosure Statement**") [ECF No. 2902]; and (iv) a hearing had been set for approval of the Disclosure Statement. At the onset of the Mediation, it was apparent that there was significant disagreement among the Earn and Borrower contingencies on their respective treatment under any Plan and *vis à vis* each other.

4.  Despite these significant differences, after an intense three-day Mediation, a Term Sheet was signed by the attendees, subject to execution of definitive documents. While the Term Sheet did not address all issues of concern to the Earn claimants, it finalized treatment of the claims of Earn and Borrower account holders as reflected in the Joint Chapter 11 Plan of Reorganization of Celsius Network, LLC and its Debtor Affiliates currently subject to confirmation [ECF No. 3319] (the "**Plan**"). An executed Term Sheet was filed with the Court on July 20, 2023 [ECF No. 3064]. The Term Sheet expressly provided for amendment of the Plan to provide "for the payment of expense reimbursement for reasonable and documented expenses and legal fees incurred by the Ad Hoc Group of Earn Account Holders," among others, "as consideration, in part for.... participation in the Mediation, their role as Class representative, and other contributions to the case as appliable."

5.  The Term Sheet also established the mechanism for resolving the then pending Committee Class Claim which covered over 30,000 individual non-contract claims held by Earn

2

and Borrower account holders against the Debtors. The Term Sheet committed the Debtor and the Committee to enter into a Settlement Agreement which would allow each such account holder to "opt-out" of the class claim settlement at the time of balloting. The proposed class claim settlement was approved by the Court on August 14, 2023 [ECF No. 3288], saving the estate significant future litigation costs, while giving these account holders the option to receive **105%** of the scheduled amount of their claims as part of a "class claim settlement" (the "**Class Claim Settlement**"). The Class Claim Settlement was overwhelmingly endorsed by eligible account holders in Plan balloting, with only 1.06% of those eligible to opt-out, voting to "opt-out" of the settlement. *See* ECF No. 3574. The Ad Hoc Earn Group's critical role in the Celsius case did not end with the Term Sheet.

6. On July 25, 2023, the Ad Hoc Earn Group held a public forum to gauge the concerns of the larger Earn constituency. On July 29, 2023, the Debtors' filed a Second Amended Disclosure Statement [ECF No. 3116]. On August 3, 2023, the Ad Hoc Earn Group filed its Reservation of Rights to the Amended Disclosure Statement [ECF No. 3159] (the "**ROR**"). In the ROR, the Ad Hoc Earn Group articulated its position that as representatives of the largest group of future stockholders of NewCo, the Ad Hoc Earn Group should be permitted to name directors to the NewCo Board. This filing was the catalyst for a series of intense negotiations and dialogue among the major stake holders, including the Ad Hoc Earn Group, the Debtors, the Committee, and Fahrenheit regarding governance issues. As a result of the commencement of this dialogue, a supplemental ROR was filed by the Ad Hoc Earn Group [ECF No. 3267] with the expectation that this dialogue would continue in good faith. And it did.

7. After the Disclosure Statement was approved [ECF No. 3332], and solicitation materials were disseminated, the Ad Hoc Earn Group and related parties held public forums to

3

educate the larger constituency on the intricacies of a very complex ballot, with various election and opt-out provisions.

8. Meanwhile, the Ad Hoc Earn Group continued the stakeholder negotiations which resulted in: (i) the Ad Hoc Earn Group's selection of three board observers to the NewCo Board each of whom is a significant Earn account holder; (ii) the appointment of an Earn claimant to the Litigation Oversight Committee ("**LOC**") under the Plan; and (iii) the Ad Hoc Earn Group's further negotiation and signing of a Plan Support Agreement (the "**PSA**"). The executed PSA was filed on September 21, 2023 [ECF No. 3516].

9. Consistent with its obligations under the PSA, the Ad Hoc Earn Group, through its proposed board observers, engaged in a multiple hour public forums in support of the Plan the day before the ballot deadline on September 22, 2023 and sent out, via Twitter, multiple reminders on the ballot deadline encouraging creditors to vote to accept the Plan. As noted above, an astounding $2.5 billion of Earn claims voted in favor of the Plan, with most other classes also voting over 98% in favor.

10. Given its substantial contributions to the Celsius Case, the Ad Hoc Earn Group requests that the Court allow and authorize as administrative expenses of these estates: (i) the fees incurred by its counsel, Offit Kurman, P.A., in the amount of $326,262.00; (ii) the expenses incurred by its counsel in the amount of $6,774.55; and (ii) the expenses incurred by those members of the Ad Hoc Earn Group who participated in the Mediation and, in the instance of Rebecca Gallagher, expenses she incurred as a lead Plaintiff in connection with the Committee Class Action totaling $4,830.82.

11.     The Ad Hoc Earn Group would not have been funded except for the generous contribution of its members in the amount of $159,484.00. As agreed on inception of the Ad Hoc Earn Group, these contributions will be reimbursed to the extent this Application is granted.

## II.     JURISDICTION AND VENUE

12.     The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). The statutory predicated for the relief requested herein are Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

## III.     LEGAL ARGUMENT

13.     Section 503(b)(3)(D) of the Bankruptcy Code provides for the payment of "the actual, necessary expenses" incurred by "a creditor ... or a committee representing creditors ... other than a committee appointed under Section 1102 of this title, in making a substantial contribution" in a Chapter 11 case. 11 U.S.C. § 503(b)(3)(D).

14.     Section 503(b)(4) of the Bankruptcy Code allows for:

> reasonable compensation for professional services rendered by an attorney ... whose expense is allowable under subparagraph .... (D) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the case of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney...

11 U.S.C. § 503(b)(4).

15.     Read together Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code provide for allowance as administrative expenses of the estate of professional fees and expenses

incurred by a creditor group, such as the Ad Hoc Earn Group, in making substantial contributions to a Chapter 11 case, as it has done here.

16. In analyzing requests for substantial contribution, courts only compensate for "services that confer a significant and demonstrable benefit upon the reorganization process which have not been rendered *solely* on behalf of a creditor's own interest ..." *In re U.S. Lines, Inc.,* 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989) (emphasis added). The pertinent factors courts in this circuit have considered when analyzing substantial contribution requests include: (i) whether the services benefited a creditor, the estate itself, or all interested parties; (ii) whether the services resulted in an actual, significant and demonstrable benefit to the estate; and (iii) whether the services were duplicated by the efforts of others involved in the case. *See Trade Creditor Grp. v. L.J. Hooker Corp., Inc.,* 188 B.R. 117, 120 (S.D.N.Y. 1995), *aff'd,* 109 F.3d 349 (2d Cir. 1996); *In re Best Prods. Co., Inc.,* 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994).

A. **The Ad Hoc Earn Group Has Provided Substantial Contribution to the Celsius Case.**

1. **The Ad Hoc Earn Group's Contributions Provided Actual, Demonstrable Benefit to the Celsius Estates and Not Solely to Ad Hoc Earn Group Members.**

17. The Ad Hoc Earn Group's contributions to the Celsius Case full satisfy the first and second factors noted above. Most significantly, the Ad Hoc Earn Group's contributions provided actual, demonstrable benefit to the estates by:

- Creating and maintaining a global forum to educate and build Plan consensus among Earn and other account holders.

- Playing a critical role in resolving the Earn versus Borrower claim treatment disputes, through the Mediation.

- Promoting the mechanism, through the Term Sheet, for resolving the Committee Class Claim, saving the estate significant litigation costs and boosting creditor recovery up to 105% of scheduled claims with respect to over 30,000 individual, non-contract claims against the Debtors.

6

- Negotiating the placement of three significant Earn account holders on the NewCo Board, thus assuring, additional Earn creditor "eyes and ears" going forward.

- Negotiating the placement of a significant Earn account holder to the LOC, which is responsible for pursuing future litigation recoveries for unsecured creditors.

- Promoting Plan acceptance actively and extensively through social and other media, contributing to an unprecedented level of support for a plan in a Chapter 11 cryptocurrency case.

2. **The Ad Hoc Earn Group's Contributions Were Not Duplicative of Others.**

17. The contributions made by the Ad Hoc Earn Group to the Celsius Case also fully satisfy factor 3. While not a fiduciary to others, the Ad Hoc Earn Group provided a unique and unified voice and barometer for the concerns of the much larger Earn constituency. Its involvement in the Mediation was critical to achieve acceptable treatment for Earn and Borrower account holders, one of the final steps to moving the Plan process forward. Its decision to support the Class Claim Settlement mechanism paved the way for resolution of thousands of individual, non-contract claims against the Debtors and significant cost-saving to these estates to the ultimate benefit of creditor recoveries. Finally, alerting the Debtors and Committee to the larger Earn community's concerns regarding governance issues led to three Board Observers selected by the Earn Ad Hoc Group being added to the NewCo Board and a creditor selected by the Ad Hoc Earn Group being added to the LOC, promoting wider creditor confidence in the NewCo Board and LOC going forward. The voting results demonstrate that the Ad Hoc Earn Group, along with Simon Dixon, a prominent Earn creditor and social media influencer, helped to galvanize the larger constituency to vote and to vote overwhelmingly in favor of the Plan, thus smoothing the path for exiting Chapter 11 and distributions to all creditors.

18. For all the above reasons, the Ad Hoc Earn Group has demonstrated it provided actual, demonstrable benefit to the Debtors' estates within the meaning of Section 503(b)(3)(D) of the Bankruptcy Code and is entitled to allowance of its actual and necessary expenses.

19. The expenses for which the Ad Hoc Earn Group seeks reimbursement are largely related to attendance by select members at the Mediation in New York. Those itemized expenses are set out on **Exhibit A** and total $4.830.82. Applicant maintains all such expenses were reasonable, actual, and necessary and therefore should be allowed.

B. **The Fees of the Ad Hoc Earn Group's Counsel are Reasonable and Expenses are Actual and Necessary.**

20. Having demonstrated the Ad Hoc Earn Group's entitlement to substantial contribution under Section 503(b)(3)(D), the Court must next consider whether the fees and expenses of Offit Kurman, P.A., its counsel, are compensable under Section 503(b)(4) of the Bankruptcy Code.

21. The Ad Hoc Earn Group maintains that the fees incurred by its counsel are compensable based on the time and labor required, the skills necessary, and customary fees charged to clients in bankruptcy and non-bankruptcy cases.

1. **Time and Labor Required and Skills Necessary.**

22. The Celsius Case had been pending for over ten months when the Ad Hoc Earn Group was formed and retained its counsel. The Ad Hoc Earn Group's attorneys confronted the considerable task of educating themselves on the Celsius Case and key issues confronting the Earn claimants at a time when the auction for the Plan sponsor was about to unfold, which would have a major impact on creditor recoveries. In short, counsel had to hit the ground running — which it did — quickly becoming familiar with Earn constituency concerns, critical legal issues and relevant facts embedded in a voluminous record, and establishing the necessary relationships

8

with multiple critical constituents and their counsel in the Celsius Case that would be required to effectively represent the Ad Hoc Earn Group.

23.     The two principal attorneys involved bring a full and complimentary skill set essential to successfully navigate a complex cryptocurrency Chapter 11 case such as this. The head of Offit Kurman, P.A.'s FinTech practice, Mr. Nagi is a seasoned litigator and bankruptcy attorney who has represented debtors, creditors, and interested parties in bankruptcy cases for over 20 years. Mr. Nagi has significant experience in blockchain and cryptocurrency issues, and has authored or co-authored over 25 articles on legal and regulatory issues in FinTech. He is on the advisory board of the Wall Street Blockchain Alliance and has been a frequent speaker on FinTech issues since 2017. Mr. Nagi has also represented entities that were subjects of regulatory inquiries and counseled FinTech participants in the creation and use of digital currencies and securities. With extensive restructuring experience, at the national and regional levels, Ms. Kuhns has represented debtors, creditors and equity committees, liquidating trustees, and regulators through her 30-plus year career, both at the trial and appellate levels, providing strategic advice from the courtroom to the boardroom. She lectures and writes frequently on cutting-edge legal issues on blockchain technology, cryptocurrency, and smart contracts. She has testified on restructuring legislation multiple times before the U.S. Congress and assisted in drafting federal and state legislation in the restructuring area.

    **2.**     **Customary Fees and Expenses**.

24.     The hourly fees and expenses charged and incurred by Offit Kurman, P.A. as counsel to the Ad Hoc Earn Group are reasonable and, upon information and belief, are substantially less than comparable professionals providing services in the Celsius Case and similar cases. The staffing primarily consists of two principal-level attorneys, two paralegals

with assistance from lawyers in specialty areas such as tax, securities and white-collar crimes, as needed and requested by primary counsel. Counsel made efforts to be as efficient as possible given the time constraints presented by their involvement at the latter stages of the Celsius Case. Applicant believes the fees and expenses charge and incurred represent only a fraction of the additional value conferred on the Debtors' estates by the involvement of the Ad Hoc Earn Group and its counsel. Set forth below is a summary of hourly rates and times expended by each timekeeper at Offit Kurman, P.A.:

| Timekeeper | Timekeeper Category | Hourly rate | Hours | Amount |
|---|---|---|---|---|
| Jason A. Nagi | Attorney | $550/hr | 120 | $65,725.00 |
| Joyce A. Kuhns | Attorney | $530/hr | 467 | $244,224.00 |
| Leslie R. Horowitz | Attorney | $570/hr | 14 | $7,980.00 |
| Scott K. Tippett | Attorney | $470/hr | 12.7 | $2,397.00 |
| Gregory W. Sutton | Attorney | $530/hr | 2.4 | $1,272.00 |
| Harold J. Ruvoldt | Attorney | $750/hr | .8 | $600.00 |
| Rona J. Cohen | Paralegal | $180/hr | .8 | $132.00 |
| Camille A. Simundac | Paralegal | $200/hr | 1.8 | $360.00 |
| **Total:** | | | **618.8** | **$326,262.00** |

25. Unredacted time entries for fees incurred by Offit Kurman, P.A. from its retention on April 12, 2023 through September 28, 2023 (the "**Initial Period**"), are being provided to Debtors' counsel, Committee counsel and the Office of the United States Trustee without waiver of attorney/client privilege or the attorney work product privilege. Of those fees, $13,590.00 were expended on preparing this Application or 4.2% of fees and expenses sought. An itemization of the expenses incurred by Offit Kurman, P.A. for the Initial Period is attached and incorporated in this Application as **Exhibit B**. These expenses were primarily incurred in connection with attendance by counsel at the Mediation, unless otherwise noted on **Exhibit B**.

26. The Ad Hoc Earn Group reserves the right to seek an additional allowance of fees and expenses for its counsel up to $100,000.00 through the effective date of the Plan.

## IV. NOTICE

27. Notice of this Application is being provided on accordance with that Notice of Further Revised Schedule for Substantial Contributions Application [ECF No. 3498].

## V. CONCLUSION

WHEREFORE, the Ad Hoc Earn Group requests that the Court enter an order substantially in the form attached hereto as **Exhibit C**: (i) approving the Application; (ii) authorizing Debtors to pay Offit Kurman, P.A. the sum of $336,385.93 for professional fees and expenses incurred through September 28, 2023, as counsel to the Ad Hoc Earn Group; (iii) authorizing Debtors to pay Offit Kurman, P.A. the sum of $4,830.82 to reimburse Ad Hoc Earn Group members for the expenses they incurred as members of the Ad Hoc Earn Group; (iv) authorizing Debtors to reimburse Offit Kurman, P.A. for all reasonable fees and expenses incurred as counsel to the Ad Hoc Earn Group in amount not to exceed $100,000.00 through the Effective Date under any confirmed Plan in the Celsius Case; and (v) granting such other relief as may be just.

Dated: New York, New York
October 2, 2023

Respectfully Submitted,

Jason A. Nagi, Esq.
OFFIT KURMAN, P.A.
590 Madison Avenue, 6th Floor
New York, NY 10022
Telephone: (212) 545-1900
Jason.nagi@offitkurman.com
         -and-
/s/ Joyce A. Kuhns
Joyce A. Kuhns (*pro hac vice*)
1954 Greenspring Drive, Suite 605
Timonium, Maryland 21093
Telephone: (410) 209-6463
Jkuhns@offitkurman.com

*Counsel to the Ad Hoc Group of Earn Account Holders*