**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
            sam.hershey@whitecase.com
            jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email:  kwofford@whitecase.com

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
Carolyn P. Gurland
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
            gregory.pesce@whitecase.com
            carolyn.gurland@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## DECLARATION OF CONOR NOLAN

I, CONOR NOLAN, being duly sworn, do hereby depose and state: I am over 18 years of age and understand the obligations of an oath. I have been asked to submit this declaration (hereafter "**Declaration**") by the Official Committee of Unsecured Creditors (hereafter "**Committee**") of the captioned debtors and debtors-in-possession (collectively hereinafter **"Debtors"**). The information contained in this Declaration is true and correct to the best of my knowledge and belief.

1. I was and am currently an employee of Celsius Network, LLC (hereafter "**Celsius")**. I received my bachelor's degree from Providence College in 2019. Upon graduation, I worked in an operations role at Galaxy Digital until in or about January 2020. I began working at Celsius in or about March 2020. I was then 22 years old. During my tenure at Celsius I held the role of Trading Desk Analyst, Head of Coin Deployment and Head of Institutional Lending, -- the position I currently occupy.

2. When I began my employment at Celsius, I was in an operations role serving as a Trading Desk Analyst. Approximately two months later, in or about May 2020, I was asked to participate in purchasing CEL Token for Celsius. Sometime thereafter, in mid to late 2020, I was given the title of "Head of Coin Deployment." I participated in CEL Token purchases for approximately eleven months, until in or about March 2021. At or about that time I assumed responsibility for institutional lending and was given the title of Head of Institutional Lending at Celsius.

3. For the period of in or about May 2020 to in or about March 2021 my responsibilities included participation in Celsius' purchases of CEL Token on third party platforms.

2

4.      During that period, I reported directly to Harumi Urata-Thompson. For the purposes of the CEL Token purchases, I received instructions from Johannes Treutler who I believe also reported directly to Ms. Urata-Thompson. It was and it remains my understanding that during that period it was Mr. Treutler and Ms. Urata-Thompson that were responsible for devising the strategy for and directing Celsius' purchases of CEL Token. It is my understanding that Treutler and Urata-Thompson would confer on a weekly basis and determine the quantity of CEL Token to purchase on third party platforms each week. I was then given direction to make those purchases. The directions were most often communicated to me by Mr. Treutler via Slack chat. Once communicated, I would transfer coin assets, if required, primarily Bitcoin ("**BTC**"), Ethereum ("**ETH**"), and Stablecoin to exchanges to fund the specified CEL Token purchases. I would thereafter purchase CEL Token using those assets. During the first several months, I was typically directed to make CEL Token purchases on Fridays. Eventually, I was directed to make the CEL Token purchases on other days during each week.

5.      It was neither my role nor my responsibility to determine how much CEL Token to purchase in a given week. It was and is my understanding that there was a weekly call during which Mr. Treutler, Ms. Urata-Thompson, and perhaps others, discussed and settled upon a strategy and plan for the CEL Token purchases for the week. I do not recall ever participating in the referenced calls. Once the strategy and plan was determined, Mr. Treutler typically communicated directions to me via Slack to execute the purchase of the agreed-upon quantity of CEL Token.

6.      During the period I was directed to purchase CEL Token, it was my understanding that the quantity of CEL Token purchased was determined by and was equivalent to the CEL

3

Token rewards paid to customers during the given period. It was and is my understanding that this CEL Token purchase protocol was communicated to the public.

7. Later, at some point thereafter, Celsius' over-the-counter ("**OTC**") desk began to purchase and sell large quantities of CEL Token. Around that time, Johannes Treutler advised me that the amount of CEL Token to be purchased on third party exchanges would be determined by the weekly rewards to be paid out as well as the activities of the OTC desk. I am unaware whether there was an established formula to determine the quantity of CEL Token purchased based on the OTC sales.

8. As indicated, Mr. Treutler directed me, often via Slack, on *when* and *how much* CEL Token to purchase. It was my understanding that Mr. Treutler employed several strategies to support the price of CEL Token. For instance, I was instructed by Mr. Treutler to place resting buy orders below the then-market price of CEL Token. The resting buy orders would cause CEL Token to be purchased if the price of CEL Token dipped below a designated level.

9. Second, Mr. Treutler sometimes directed me to buy CEL Token if there were large sell orders so that the large sale would not depress the price of CEL Token.

10. Third, Mr. Treutler instructed me to purchase CEL Token during Mr. Mashinsky's weekly "Ask Mashinsky Anything" ("**AMA**") sessions. I was advised that timing the purchases to coincide with the AMAs was a Celsius marketing tool. More specifically, I was advised and I understood that Celsius wanted customers watching the AMAs to see activity, and specifically purchases of CEL Token, during the AMAs to encourage customer interest and purchases of CEL Token.

11. I was advised that each of these strategies was devised by Celsius and Mr. Treutler to support the market price of CEL Token.

4

12. I believe Mr. Treutler had authority from Ms. Urata-Thompson to determine and direct CEL Token trading strategies.

13. Mr. Treutler periodically asked me to pull data from exchanges that included every CEL Token trade executed on the exchange by Celsius, the date of the trade, and when the trade was filled. I obtained and sent Mr. Treutler the requested data.

14. In or about March 2021, I was no longer involved in Celsius CEL Token purchases. Thereafter, my responsibilities included, *inter alia* managing Celsius' lending book. Around that time Celsius determined that it had "a hole" in its balance sheet. That is, there was a mismatch between its assets and its obligations to customers and third parties. This mismatch raised significant concerns for me. I was assured by various Celsius executives that the mismatch was a result of a balance sheet error and, in any event, was not considered a long-term issue because Celsius had significant assets in mining and other areas to cover the hole.

15. After the hole in the balance sheet was discovered, I was one of several Celsius employees asked to survey Celsius' assets and liabilities to attempt to recreate Celsius' balance sheet to attempt to discern the cause of the hole. At that time, the price of BTC and ETH were continuing to increase rapidly. As a result, the "hole in the balance sheet" continued to grow owing to the short position. Celsius used Stablecoin to purchase BTC, ETH and other assets through OTC purchases to avoid the hole growing even larger. Using OTC counterparties for purchases of BTC, ETH and other assets had the practical effect of facilitating larger scale purchases and, unlike exchange purchases, OTC purchases were not visible to the market.

16. During that process it became clear to me that Celsius had used customer assets to buy CEL Token. It was my view that those purchases using customer assets contributed to the mismatch in Celsius' assets and liabilities.

17. At the time of the discovery of the hole and Celsius' efforts to purchase assets to avoid the hole becoming even larger, I was no longer involved in the purchases of CEL Token and was not involved in discussions surrounding those purchases. Nevertheless, I became aware that Celsius was purchasing fewer CEL Tokens on the open market. The diminished purchases of CEL Token by Celsius, I believe, had a negative impact on the price of CEL Token and the price continued to fall. I surmised that Celsius' prior purchases of CEL Token had helped to support the price of CEL Token.

18. Mr. Mashinsky, on company-wide calls and on other occasions, would often tie the success of Celsius to the price of CEL Token.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 2, 2023 at New Jersey, USA

DocuSigned by:

*Connor Nolan*

Connor Nolan