**Hearing Date:  October 24, 2023 at 9:00 am**
**Objection Deadline:  October 16, 2023 at 4:00 pm**

**VENABLE LLP**
Jeffrey S. Sabin
151 West 42nd St.
New York, New York 1003
Telephone (212) 503-0896
Facsimile: (212) 307-5598
Email: JSSabin@venable.com

Andrew Currie (*admitted pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586
Facsimile: (202) 344-8300
Email: AJCurrie@venable.com

*Counsel to Ignat Tuganov*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ————————————————————x | | |
| | **:** | |
| In re: | : | Chapter 11 |
| | : | |
| CELSIUS NETWORK LLC, *et al.* | : | Case No. 22-10964 (MG) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| ————————————————————x | | |

**APPLICATION OF IGNAT TUGANOV FOR ENTRY OF AN ORDER,**
**PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4),**
**FOR ALLOWANCE AND REIMBURSEMENT OF REASONABLE**
**PROFESSIONAL FEES AND ACTUAL, NECESSARY EXPENSES**
**IN MAKING A SUBSTANTIAL CONTRIBUTION TO THESE CASES**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 2

JURISDICTION AND VENUE ....................................................................................... 9

BACKGROUND ............................................................................................................ 10

    Scope of Examiner's Investigation ............................................................................ 10

    The Declaratory Action .............................................................................................. 12

    The Class Claim ......................................................................................................... 14

    The Retail Borrower Settlement ................................................................................ 15

    The Mediation ............................................................................................................ 16

RELIEF REQUESTED ................................................................................................... 17

    Mr. Tuganov's Participation Substantially Contributed to  the Success of
    the Debtors' Chapter 11 Cases ................................................................................... 18

    The Costs and Fees Incurred by Mr. Tuganov Were Reasonable,
    Necessary and Beneficial to the Debtors' Estates ..................................................... 21

NO PRIOR REQUEST ................................................................................................... 24

NOTICE .......................................................................................................................... 24

CONCLUSION ............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Baldwin-United Corp.*,
  79 B.R. 321 (Bankr. S.D. Ohio 1987) ........................................................................ 20

*In re Bayou Group., LLC*,
  431 B.R. 549 ................................................................................................. 18, 19, 20

*In re Granite Partners, L.P.*,
  213 B.R. 440 (Bankr. S.D.N.Y. 1997) ....................................................................... 20

*In re Synergy Pharms., Inc.*,
  621 B.R. 588 (Bankr. S.D.N.Y. 2020) ....................................................................... 19

*In re Texaco, Inc.*,
  90 B.R. 622 (Bankr. S.D.N.Y. 1988) .................................................................... 20, 22

*In re United States Lines, Inc.*,
  103 B.R. 427 (Bankr. S.D.N.Y. 1989) *aff'd* 1991 U.S. Dist. LEXIS 5262
  (S.D.N.Y. Apr. 19, 1991) .......................................................................................... 18

*United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*,
  2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. July 28, 2003) ......................................... 19

**Statutes**

11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) ....................................................... 1, 2, 10, 17

11 U.S.C. §§ 503(b)(4) and 330 ............................................................................ 22

28 U.S.C. §§ 157 and 1334 ...................................................................................... 9

28 U.S.C. §§ 1408 and 1409 .................................................................................... 9

Bankruptcy Code Chapter 11 ............................................................................ *passim*

Bankruptcy Code § 503(b)(3) ................................................................................ 22

Bankruptcy Code § 503(b)(4) ................................................................... 18, 21, 22

Bankruptcy Code §§ 1106(a)(3) and 1106(a)(4) .................................................. 11

Bankruptcy Code §§ 1107(a) and 1108 ................................................................ 10

**Court Rules**

Bankruptcy Rule 1015(b)...........................................................................................................10

Bankruptcy Rule 2002 ............................................................................................................24

**Hearing Date:  October 24, 2023 at 9:00 am**
**Objection Deadline:  October 16, 2023 at 4:00 pm**

**VENABLE LLP**
Jeffrey S. Sabin
151 West 42nd St.
New York, New York 1003
Telephone (212) 503-0896
Facsimile: (212) 307-5598
Email: JSSabin@venable.com

Andrew Currie (*admitted pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586
Facsimile: (202) 344-8300
Email: AJCurrie@venable.com

*Counsel to Ignat Tuganov*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**APPLICATION OF IGNAT TUGANOV FOR ENTRY OF AN ORDER,**
**PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4),**
**FOR ALLOWANCE AND REIMBURSEMENT OF REASONABLE**
**PROFESSIONAL FEES AND ACTUAL, NECESSARY EXPENSES**
**IN MAKING A SUBSTANTIAL CONTRIBUTION TO THESE CASES**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Ignat Tuganov ("Mr. Tuganov"), a creditor of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and one of three class representatives (collectively, the "Class Representatives") in connection with the Official Unsecured Creditors' Committee's efforts to certify the class of account holders holding non-contract claims against the Debtors, through his counsel, hereby submits this application (this "Application") for entry of an order, pursuant to sections 503(b)(3)(D) and 503(b)(4) of title 11 of the United States Code (the "Bankruptcy Code"), for the allowance and reimbursement of reasonable professional fees and actual, necessary expenses in the amount of $1,389,892.46 [2] (the "Substantial Contribution Claim")[3] for making substantial contributions to the Debtors' cases, and respectfully represents as follows:[4]

## PRELIMINARY STATEMENT

Mr. Tuganov seeks the allowance of a substantial contribution claim in the amount of $1,389,892.46. Since early in the Debtors' chapter 11 cases, Mr. Tuganov and his counsel, Venable LLP ("Venable"), have been actively involved in adding significant value to these cases, not only by helping to settle disputes among various stakeholders that were instrumental for a consensual plan term sheet, but also by advancing strategic solutions to these cases that estate-paid professionals were either initially reluctant to follow (only to be persuaded that Mr. Tuganov's suggestions were beneficial to the reorganization process) or were rightfully so busy

---

[2] Mr. Tuganov is obligated to pay the fees and expenses incurred by Venable on his behalf in this matter. To date, he has paid roughly 50% of the total fees and expenses that Venable has invoiced, approximately 65% of the fees and expenses sought in this Application, and anticipates paying the balance (through September 2023) on or before the hearing to consider this Application.

[3] The amount of the Substantial Contribution Claim has been calculated as of September 11, 2023. Additional amounts are estimated for work that has been performed but not yet billed and for future work that must be performed by Mr. Tuganov and Venable pursuant to the Plan Support Agreement. *See infra* ¶35.

[4] Mr. Tuganov and Venable will provide unredacted copies of Venable's time sheets to the United States Trustee and the Court not later than October 9, 2023, subject to preservation of all applicable privileges, including the attorney client privilege, and will provide redacted versions of such time sheets to the Debtors and the Committee at the same time.

with the myriad of other demands on their attention in these cases that they were unable to focus

on issues Mr. Tuganov insightfully identified as posing obstacles to resolution of the cases.  Mr.

Tuganov has many years of experience in the cryptocurrency industry (as an investor and a

compliance professional) and was a Celsius customer since before the migration of accounts

from the U.K. to the U.S.  From the outset, he recognized that there would need to be a way to

streamline the claims process in these cases, even the playing field for all stakeholders, and treat

customers and creditors fairly.  Mr. Tuganov consistently sought to identify the significant issues

in these cases, act strategically to address the issues, and resolve the issues swiftly and

consensually in order to (a) minimize litigation costs to these estates and (b) enhance creditor

recoveries. He chose counsel that had years of experience doing corporate reorganizations and

who had successfully represented clients in cases where fraud/Ponzi issues were relevant and in

which resolution of federal and state regulators claims would be needed.  Indeed, Venable's

knowledge, experience, and pleadings in prior cases regarding the benefits of Ponzi

adjudications, mediation, and committee class proofs of claim was valuable to these estates and

to the Committee's professionals.  In doing so, Mr. Tuganov incurred and paid significant

expenses, including attorneys' fees, yet his and Venable's work was necessary and substantially

benefitted these estates.

Initially, Mr. Tuganov, through Venable, filed and prosecuted pleadings seeking to

expand the scope of the court-appointed Examiner's investigation of the Debtors' business

practices to include fact investigations and findings that could support a Ponzi adjudication

and/or substantive consolidation. Both the Debtors and the Committee objected to expanding the

scope of the Examiner's investigation, hoping to either keep that work for the Committee's

professionals or to side-step that part of the investigation altogether.  Yet Mr. Tuganov realized

that a Ponzi investigation was critical to resolving these cases, especially as multiple other parties-in-interest (including the U.S. Trustee and several regulators) believed the prepetition acts of the Debtors' insiders were Ponzi-like.  To facilitate a swift and cost-efficient resolution, Mr. Tuganov, the Committee, the Examiner, and the Debtors negotiated and entered into a Stipulation Modifying the Scope of the Examiner's Order (the "Investigation Stipulation"), which delegated to the Examiner the task of investigating facts and circumstances that might support a Ponzi adjudication and/or a substantive consolidation of the Debtors' estates.  This Court so ordered the Investigation Stipulation on November 14, 2022.  As a result, the Examiner produced a 476-page final report that contained findings relevant to a potential determination that the Debtors had operated as a Ponzi scheme as well as findings to support substantive consolidation of all the Debtors' estates.

Based in large part on the findings contained in the Examiner's final report, Mr. Tuganov instructed his counsel to prepare a complaint (the "Ponzi Complaint") and commence an adversary proceeding against the Debtors seeking a declaratory judgment that, among other things, (i) the Debtors' businesses were operated as a Ponzi scheme from at least as early as the spring of 2021, (ii) the Debtors' businesses were operated as a single, hopelessly intertwined enterprise such that their estates should be substantively consolidated, and (iii) all contracts entered into after the Debtors began operating as a Ponzi scheme, including Terms of Use, should be deemed null and void.  Within days of service of the Ponzi Complaint, the Committee reached out to Venable to address timing issues and better understand the potential risks and benefits of a Ponzi adjudication in these cases.  In an effort to limit the costs of litigation to these estates but also further the discovery of information that might resolve these cases, Mr. Tuganov and his counsel quickly negotiated with the Debtors and the Committee a stay of the Ponzi

4

adversary proceeding (the "Stay Stipulation") which stayed any responses to the Ponzi

Complaint until a time clock might be (but never was) triggered, stipulated to the Committee's

right to intervene in the litigation, made Mr. Tuganov a party to the Debtors' confidentiality

agreement to obtain relevant information and proposed a common interest agreement covering

the Committee and Mr. Tuganov with respect to a possible class proof of claim and plan issues

related thereto.  The Stay Stipulation was approved by this Court on April 27, 2023.

Having discussed with the Committee's professionals the benefits of a Ponzi adjudication

(e.g., streamlining of claims process, leveling the creditor playing field, presumption of fraud

recognized by the Second Circuit, and potential tax benefits of a Ponzi adjudication), Venable

also suggested that the Committee might utilize a class proof of claim procedure for streamlining

the non-contract claim process.  Venable had used a class claim in a previous Ponzi-like case,

and the Committee asked Venable for copies of its pleadings in that case.  Ultimately, the

Committee chose to follow Mr. Tuganov's suggestion and do what Mr. Tuganov could not do by

himself – request authority for the Committee and certain specified lead claimants to file a

consolidated class proof of claim (the "Class Claim") against all Debtors on behalf of all

customers for fraud and other non-contract claims. Subsequently, Mr. Tuganov and Venable's

experience and participation was again critically beneficial, as the Committee's motion seeking

authority to file the Class Claim had certain infirmities that Mr. Tuganov highlighted (e.g., who

would be entitled to vote the Class Claim and in what amount, who would be entitled to settle the

Class Claim, would customers be able to opt out, and the types of non-contractual claims that

would be asserted in the Class Claim).  The Committee worked with Mr. Tuganov and proposed

a consensual order to the Court that resolved each of these concerns.

Given Mr. Tuganov's familiarity with the facts and issues, Venable's prior experiences, and the assistance Mr. Tuganov had already provided to the Committee and the Debtors, the Committee considered him to act as a class representative in connection with Class Claim and the class certification motion, continuing to participate in the case in an official "fiduciary-like" role.  At about the same time, Venable highlighted facts that ran counter to the then settlement among the Debtors, the Committee, and the retail borrowers in the cases (the "Retail Borrowers") which was proposed without a substantive consolidation of Celsius Network Ltd. ("Celsius Ltd.") and certain of the Debtors' lending affiliates, which the Debtors were not contemplating in their then filed plan.  Venable had discovered that cryptocurrency collateral the Retail Borrowers had posted with the Celsius Networks Lending LLC ("Lending") had been transferred and was being held, in large part, at Celsius Network Ltd. or other Debtors.  The then settlement contemplated the improper use of cryptocurrency amounts held by Celsius Ltd. (and other Debtors other than Lending), despite the fact that the terms of use governing the retail loans provide that the Retail Borrowers have recourse solely against Lending for their loan-related claims. The Debtors, the Committee, and bidders for sponsoring the plan at the time abandoned the then settlement with the Retail Borrowers.  But for Venable's investigation of these facts and legal issues, the Retail Borrowers would have received wrongful treatment at the expense of other classes of creditors.

As early as late fall 2022, Mr. Tuganov had recognized the numerous complex substantive and administrative issues plaguing these chapter 11 cases and suggested that mediation would be a cost-effective way to address and resolve them. Though the Court denied Mr. Tuganov's mediation request without prejudice, it recognized that mediation might be a helpful solution after certain case milestones had been reached, including the filing of the

6

Examiner's final report and the Debtors and Committee having settled with the custody and

withheld customers. The Class Claim and the discovery of the infirmities in the Retail

Borrowers' settlement further highlighted the complex issues still remaining among the different

creditor and customer constituencies and the stalemate the cases were facing. To resolve these

issues and aid in the reorganization process, plan mediation was subsequently ordered. Given

the benefit Mr. Tuganov and Venable had already contributed to these cases, Mr. Tuganov and

Venable were asked and did participate in the mediation. As the parties can attest, Venable was

instrumental in facilitating consensus among the mediation parties and in negotiating a

settlement of the Class Claim that provided customer creditors with *an increase in their allowed

proofs of claim equal to 5%*! In addition, Mr. Tuganov and Venable provided critical insight into

the development of the Plan Term Sheet and the Plan Support Agreement.[5]

Recognizing the important role Mr. Tuganov played in obtaining consensus among the

Debtors' stakeholders, as part of the Plan Support Agreement and as embedded in the Plan, the

Debtors and the Committee agreed to support Mr. Tuganov's application for reimbursement of

reasonable fees and expenses he incurred in making a substantial contribution to these

cases.[6]Indeed, in the *Declaration of Christopher Ferraro in Support of Confirmation of the Joint

Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates*, dated

September 27, 2023 [Dkt. No. 3581] ("Ferraro Decl."), Mr. Ferraro states "I believe that each

Released Party has made a substantial contribution to the development of the NewCo

Transaction and the Orderly Wind Down . . ." Ferraro Decl. ¶ 22. The definition of "Released

---

[5] Venable identified additional Debtor valuable causes of action that should be in "Retained Causes of Action" (as that term is defined in the Amended Plan), including the Stakehound adversary proceeding and the Celsius $2 billion FTX claim.

[6] At the mediation, Venable disclosed to the mediation parties the total fees incurred by Mr. Tuganov as of July 1, 2023 and provided an estimate of additional fees likely to be incurred through December 31, 2023. The amounts sought herein are consistent with what was disclosed to the mediation parties.

Parties" in the Debtors' *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates*, dated September 27, 2023 [Dkt. No. 3577] includes the Class Claim Representatives of which Mr. Tuganov is one.  In addition, in the Debtors' *Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates and Omnibus Reply to Objections Thereto*, dated September 27, 2023 [Dkt. No. 3609] ("Confirmation Memorandum"), the Debtors also recognize the "substantial and necessary" contributions made to these cases by the Released Parties. Confirmation Memorandum ¶¶ 61 – 73.  Indeed, lead counsel to the Committee expressly recognized in an email to Mr. Tuganov's counsel the extensive, productive efforts that the Committee had had working with Mr. Tuganov and Venable and included Mr. Tuganov in the interview process membership on the post-effective date Litigation Oversight Board.

As a result of Mr. Tuganov's efforts, these estates have benefitted significantly, including, without limitation, resolution of intercreditor disputes, streamlining of the claims process, and, most importantly, settlement of the Class Claim enabling creditors to receive a 5% premium on the allowed amount of their claims. Mr. Tuganov has incurred significant fees and expenses in providing/facilitating these benefits, including in connection with Venable's preparation of pleadings, filing of the Ponzi Complaint,[7] Mr. Tuganov's serving as a class representative, Venable's staying abreast of all pleadings in the cases, and its preparation for, and participation in, the mediation that led to the Class Claim Settlement, the Plan Term Sheet, the Plan Support Agreement, and the Amended Plan.  Moreover, as required in the Plan Support Agreement, Mr. Tuganov is obligated to, among other things, take steps to cooperate with the Debtors to obtain confirmation and implementation of the Amended Plan and the restructuring

---

[7] The Plan Term Sheet and Plan Support Agreement provide for a continued stay of the Ponzi Complaint adversary proceeding and dismissal with prejudice upon occurrence of the Amended Plan effective date.

transactions, including participation in the confirmation trial.  As such, Mr. Tuganov requests that this Court conditionally approve additional reimbursement of fees and expenses he incurs up to $300,000.00 (*see infra* fn. 9), evidence of which Mr. Tuganov will submit to the Court, the U.S. Trustee, and any parties objecting to this Application so that such parties may have an opportunity to review and, if appropriate, object to the allowance as administrative expenses of such additional amounts.  If any objections to the additional administrative expense is received, Mr. Tuganov proposes that there be a separate hearing before this Court to consider the additional administrative expense claim.

To encourage the kind of meaningful participation in the reorganization process that Mr. Tuganov has devoted, the Bankruptcy Code requires a debtor's estate to reimburse creditors like Mr. Tuganov for the fees and expenses they incur in providing these kinds of benefits.  For the reasons set forth herein, Mr. Tuganov should be granted an allowed substantial contribution claim in the amount of $1,389,892.46 plus additional amounts up to $300,000 for additional work that either has been performed but has not been invoiced as of the date of this Application or that must be undertaken by him or Venable pursuant to the Plan Support Agreement.  Mr. Tuganov respectfully submits that, in light of the critical role he has played in facilitating a largely consensual plan, including roles that are traditionally performed by estate-paid professionals, as well as the additional value realized by the estates as a result of his efforts, this amount is reasonable.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over these cases and this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these proceedings and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief sought herein are sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

## BACKGROUND

3.       On July 13, 2022, certain of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  *See* Dkt Nos. 53 and 1648. The Debtors continue to operate their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.  On July 27, 2022, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors [Dkt No. 241] (the "Committee").

### Scope of Examiner's Investigation

4.       On September 14, 2022, the Court entered an *Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. No. 820] (the "Examiner Order").  Pursuant to the Examiner Order, the U.S. Trustee was directed to appoint an examiner to investigate the following (collectively, the "Investigation"):

(i)     The Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled;

(ii)    Why there was a change in account offerings beginning in April 2022 from the Earn Program to the Custody Service for some customers while others were placed in a "Withhold Account";

(iii)   The Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto;

(iv)    The current status of the utility obligations of the Debtors' mining business; and

10

       (v)       Otherwise perform the duties of an examiner set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code.

5.       On September 29, 2022, the Court entered an order approving the appointment of Shoba Pillay as the Examiner, and on or about October 11, 2022, the Examiner filed a motion seeking approval of her Work Plan (the "Examiner Investigation Motion") or, alternatively, the expand the scope of her Work Plan [Dkt. No. 1112].

6.       On October 18, 2022, Mr. Tuganov, through his counsel, filed a response to the Examiner's Investigation Motion (the "Tuganov Response to Examiner Investigation Motion") [Dkt. No. 1104], requesting that (i) the Examiner's Work Plan be amended to specifically provide that the Examiner will investigate, among other things, whether the Debtors engaged in a Ponzi scheme and, if so, when the Ponzi scheme began and the consequences thereof and (ii) that the Ponzi investigation be completed as soon as practicable and its conclusions be included in the Examiner's report.

7.       In return, the Committee filed its own response objecting to the relief requested by Mr. Tuganov essentially on the grounds that the Committee should be tasked with the Ponzi investigation and not the Examiner, despite the fact that the Committee had not been asked or instructed to do so. At the same time, the Debtors filed a statement claiming that the scope of the Investigation was "adequate as-is."

8.       On October 31, 2022, Mr. Tuganov filed a Reply to the Committee and the Debtor [Dkt. No. 1237] (the "Tuganov Examiner Investigation Reply" and together with the Tuganov Examiner Investigation Response, collectively, the "Tuganov Examiner Pleadings"), arguing that, not only did the case need *someone* to undertake a Ponzi investigation, the results of such an investigation should be disclosed to all stakeholders in the cases and not just the Committee or its constituents.  Moreover, Mr. Tuganov suggested that, since the Examiner was an independent

third party not responsible for the numerous other important tasks occupying the Committee's time, it

was more efficient to expand the Examiner's scope of Investigation to include a Ponzi analysis,

rather than the Committee.

9.      Due in large part to Mr. Tuganov's and his counsel's efforts in preparing and filing

the Tuganov Examiner Pleadings, and consistent with Mr. Tuganov's efforts to minimize or

eliminate litigation costs in these cases and resolve issues consensually, Mr. Tuganov, the Debtors,

the Committee, and the Examiner entered into a Stipulation Modifying the Scope of the

Examiner's Order (the "Examiner's Stipulation") [Dkt. No. 1343], pursuant to which the Examiner

was directed to expand her investigation to include inquiries relevant to whether the Debtor had

operated as a Ponzi scheme and whether the Debtors' books, records, and business practices

supported substantive consolidation of the Debtors' estates.  The Examiner's Stipulation was "so

ordered" by this Court on November 14, 2022.

**The Declaratory Action**

10.      On November 19, 2022, the Examiner filed her initial report, and on January 31,

2023, she filed her final report.  The Examiner's final report was a 476-page extensive report of

her Investigation results and conclusions and included findings that suggested the Debtors had

operated as a Ponzi scheme and had lacked accurate and reliable record keeping (relevant to a

potential substantive consolidation).  Based on, among other things, the Examiner's findings, on

March 20, 2023, Mr. Tuganov commenced an adversary proceeding against the Debtors by filing

the Complaint for Declaratory Relief Declaring That (A) Defendants' Businesses Were Operated

as a Ponzi Scheme and (B) the Defendants' Estates Should be Substantively Consolidated (the

"Ponzi Complaint") [Adv. Pro. 23-01024; Dkt. No. 1].  In a 27-page complaint, Mr. Tuganov

concisely set forth the Examiner's findings and other public information indicating how the

Debtors had operated their businesses as a Ponzi scheme and why, as a result, among other things,

the Debtors' estates should be substantively consolidated for the overall benefit of the Debtors' stakeholders.[8]

11.    Despite not willing to file such a complaint themselves, the Debtors and the Committee recognized that the Ponzi Complaint was compelling on several levels: (i) it raised substantive issues such as commingling of digital assets, the Debtors' history of insolvency, and its failed record keeping, (ii) it could provide significant value to Debtors' claims of prepetition transfers  a litigation advantage because the Second Circuit recognizes the Ponzi presumption of fraud (which may be invaluable to the post-effective date litigation trust), and (iii) it could resolve at least one significant procedural issue plaguing these chapter 11 cases, namely the administrative nightmare of having to deal with tens of thousands of non-contract claims.  Consequently, on April 21, 2023, days after the Ponzi Complaint had been served, the Committee approached Mr. Tuganov to discuss timing issues and the potential risks and benefits of the Ponzi Complaint. Venable had been successful representing an official committee in a previous case by asserting the need for a Ponzi adjudication, seeking to file a class proof of claim, and avoiding the costs of each by mediating plan-related issues consensually among numerous victims of the debtors' schemes. The Committee was interested in Venable's experiences, sought Venable's guidance and input, and even requested copies of pleadings that Venable had utilized in its previous case.  Venable's participation in this process was invaluable to the estate-paid professionals.

12.    As a result, the Debtors, the Committee and Mr. Tuganov quickly agreed to enter into a stipulation (the "Stay Stipulation") (i) staying the Ponzi Complaint adversary proceeding unless and until a time clock of deadlines was triggered, (ii) consenting to the Committee's intervention in the adversary proceeding, (iii) granting access to Mr. Tuganov and Venable to

---

[8] Indeed, pending DOJ indictment and/or the outcomes of various civil actions against Mr. Mashinsky, such facts may be adjudicated at a later date.

relevant information concerning the Debtors subject to execution of a confidentiality agreement and (iv) bringing Mr. Tuganov and Venable into the so-called Committee "tent" by executing a Common Interest Agreement with the Committee with respect to a class proof of claim and plan issues related thereto.  In this way, the parties were able to minimize the litigation costs associated with the adversary proceeding and also obtain the benefit of Venable's experience and work on issues relevant to these chapter 11 cases.  The parties' stipulation was "so ordered" by this Court on April 27, 2023.  The adversary proceeding has remained stayed and, pursuant to the Plan Support Agreement, will be dismissed with prejudice on the Amended Plan effective date.

**The Class Claim**

13. The Ponzi Complaint identified then-alleged facts and circumstances that would support a Ponzi adjudication as well as substantive consolidation of all the Debtors' estates. Venable also suggested that the Committee might utilize a class proof of claim to assert a single claim on behalf of all customers alleging fraud and other claims against all the Debtors, thereby streamlining the non-contract claim adjudication process. At the Committee's request, Venable provided the Committee with copies of its own class claim pleadings as a guide to the process.  On April 10, 2023, the Committee filed the *Motion of the Official Committee of Unsecured Creditors (I) for Authority to File a Class Claim Asserting Non-Contract Claims on Behalf of Account Holders or (II) to Appoint a Third-Party Fiduciary to Assert a Class Claim on Behalf of Account Holders* [Dkt. No. 2399] (the "Class Claim Motion") seeking authority to file a class claim or other collective action on behalf of all account holders and assert fraud, misrepresentation, and other statutory claims against each Debtor entity.  Essentially, the Committee chose to do what Mr. Tuganov could not do by himself.  While the Committee's work was clearly top notch, and even more commendable given the extreme time constraints it was working under, the Class Claim Motion suffered from certain infirmities.  In a response to the Class Claim Motion [Dkt. No. 2474],

14

Mr. Tuganov highlighted, among other things, that the Committee's motion had not indicated who would be entitled to vote the Class Claim and in what amount, who would be entitled to settle the Class Claim, and the types of non-contractual claims that would be asserted in the Class Claim. Accordingly, the Committee and Mr. Tuganov worked together to propose a consensual order to the Court that resolved each of these important concerns, and the Committee was subsequently authorized to file the Class Claim.

14. Given his informed and astute involvement in the case thus far and his knowledge of the facts and legal issues, the Committee requested that Mr. Tuganov serve as one of the three proposed class representatives of the Committee's putative class, and, after being interviewed by the Committee to make sure he could act as a witness and a class representative, Mr. Tuganov accepted the role. As a class representative, Mr. Tuganov and Venable, helped with the preparation of pleadings in connection with the Class Claim and class certification motion and, thereafter, were instrumental in facilitating a resolution of the Class Claim in the Plan mediation that culminated in a Plan Term Sheet.

**The Retail Borrower Settlement**

15. At about the same time, Venable became aware of facts that ran counter to the then settlement among the Debtors, the Committee, and the Retail Borrowers which was proposed without a substantive consolidation of Celsius Ltd. and certain of the Debtors' lending affiliates, which the Debtors were not contemplating in their then filed plan. Venable had confirmed that cryptocurrency collateral the Retail Borrowers had posted with the Lending had been transferred and was being held, in large part, at Celsius Ltd. or other Debtors. The then settlement contemplated the improper use of cryptocurrency amounts held by Celsius Ltd. (and other Debtors other than Lending), despite the fact that the terms of use governing the retail loans provide that the Retail Borrowers have recourse solely against Lending for their loan-related claims. The

15

Debtors, the Committee, and bidders for sponsoring the plan at the time abandoned the then

settlement with the Retail Borrowers.

**The Mediation**

16. On December 13, 2022, Mr. Tuganov filed a *Joinder and Supplement to Motion*

*Appointing a Mediator* [Dkt. No. 1680] (the "Mediation Motion"), suggesting that mediation

would be a cost-effective means for addressing the concerns of the many parties, both domestic

and global, involved in these chapter 11 cases. At the time, the Debtors and the Committee

objected to court-ordered mediation and this Court denied the relief without prejudice, but the

Court recognized that mediation might be helpful after the Examiner had filed her final report and

certain other key issues has been resolved in the cases.

17. After it became clear that the Retail Borrower settlement could not be implemented,

it also became clear that unresolved intercreditor issues would become an obstacle to the Debtors'

reorganization efforts if not addressed. To facilitate resolution of these issues, in July 2023, the

Court ordered certain parties to choose a mediator, submit mediation position papers, and mediate

their disputes. Given Mr. Tuganov and Venable's insightful contributions so far, Mr. Tuganov

and his counsel were asked to participate in the mediation.

18. Accordingly, Venable prepared a position paper highlighting issues that should be

resolved in order for the Debtors' cases to progress, including, without limitation, substantive

consolidation of certain of the Debtors' estates and settlement and allowance of the Class Claim

for solicitation and voting purposes. Venable participated in the 3-day mediation and ultimately

facilitated negotiation of a Plan Term Sheet that provided for the settlement and allowance of the

Class Claim and a settlement and revised treatment for Retail Borrowers. The Class Claim

settlement (i) enables creditors to receive a 5% premium on the allowed amount of their claims,

(ii) provides for customers to opt-out of the settlement, (iii) eliminates the need for claim

subordination litigation for Earn account holders, and (iv) required immediate and separate consideration by the Court of the Class Claim settlement to minimize any delay in the plan process. The Plan Term Sheet also required the negotiation and execution of a Plan Support Agreement, and, as the parties to the mediation can attest, Venable was key to achieving consensus in both these agreements, providing creative solutions when the process seemed to be at a stalemate. The revised treatment of Retail Borrowers includes the substantive consolidation of Lending, Celsius Ltd. and Celsius LLC which remedies the improper use of cryptocurrency on which the prior settlement was based.

19. Recognizing the important role that Mr. Tuganov and Venable played these chapter 11 cases, the Debtors and the Committee agreed to support Mr. Tuganov's application for reimbursement of reasonable fees and expenses he incurred in making a substantial contribution to these cases and, in fact, have included such support in the Ferraro Declaration and the Debtors' Confirmation Memorandum.  *See* Ferraro Decl. ¶ 22 and Confirmation Memorandum ¶¶ 61-73.

20. Furthermore, as a reflection of the contributions and expertise that Mr. Tuganov provided in these cases, the Committee considered Mr. Tuganov for a membership position on the post-effective date Litigation Oversight Committee.  Though he was not ultimately chosen for membership, the Committee's lead counsel made it very clear in an email to Venable that Mr. Tuganov's contributions were extensive and productive.

### **RELIEF REQUESTED**

21. Pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, Mr. Tuganov seeks entry of an order in these chapter 11 cases allowing a substantial contribution administrative expense claim in the amount of $1,389,892.46 and an additional administrative expense claim of up to $300,000 for future fees and expenses that Mr. Tuganov will be forced to

17

incur pursuant to the Plan Support Agreement which requires him to continue to participate in these cases. The breakdown of Mr. Tuganov's substantial contribution claim is as follows:

|   |   |   |
|---|---|---|
| a. | Venable LLP Fees: | $ 1,383,089.00 |
| b. | Venable Expenses: | $ 6,803.46 |
| c. | Estimated Future Fees: | $ 300,000.00[9] |
|   | TOTAL: | $ 1,689,892.46 |

## Mr. Tuganov's Participation Substantially Contributed to the Success of the Debtors' Chapter 11 Cases

22.    Section 503(b)(3)(D) permits a court to allow, as an administrative expense, the actual and necessary expenses incurred by a creditor that makes a substantial contribution to a chapter 11 case. Section 503(b)(4) provides for reimbursement of reasonable compensation for services rendered, and for reimbursement of actual and necessary expenses incurred, by an attorney of such an entity. The "substantial contribution" test is satisfied "where the services rendered have substantially contributed to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders." *In re United States Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989) *aff'd* 1991 U.S. Dist. LEXIS 5262 (S.D.N.Y. Apr. 19, 1991). Where a creditor has taken extraordinary actions that lead to tangible benefits to the estate, compensation to reimburse fees and expenses incurred by such creditor is warranted. *In re Bayou Group., LLC*, 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010 (granting substantial contribution claim asserted by defrauded investors).

---

[9] The foregoing estimate assumes that the Debtors' Plan is confirmed and becomes effective before December 31, 2023. Of this amount, an estimated amount of $50,000 is allocated to fees and expenses incurred from 9/11/23 through 9/30/23 that have not yet been billed.

18

23.     Courts in this circuit have considered the following factors in determining whether the "substantial contribution" test has been satisfied: (i) whether the services in question were provided to benefit all parties in the case, (ii) whether the services conferred a direct, significant and demonstrably positive benefit to the estate, and (iii) whether the services were duplicative of services performed by others (such as estate professionals). *See, e.g. United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.*), 2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. July 28, 2003), quoting *Trade Creditor Grp. v. L.J. Hooker Corp. (In re Hooker Invs., Inc.),* 188 B.R. 117, 120-21 (S.D.N.Y. 1995), *aff'd* 104 F.3d 349 (2d Cir. 1996).  While efforts undertaken by creditors solely to benefit their own interests do not satisfy the substantial contribution test, court recognize that "section 503(b)(3)(D) focus on process as much as on contribution, on the movant's substantial contribution in the case – that is, the entire chapter 11 case" regardless of motive. *Bayou Grp.*, 431 B.R. at 561.

24.     As Judge Garrity explained in *In re Synergy Pharmaceuticals, Inc.,* "[S]ervices that warrant a substantial contribution award 'generally take the form of constructive contributions in key reorganizational aspects, when *but for* the role of the creditor, the movement towards final reorganization would have been substantially diminished.'" *In re Synergy Pharms., Inc.*, 621 B.R. 588, 610 (Bankr. S.D.N.Y. 2020), citing *In re AMR Corp.*, 2014 Bankr. LEXIS 3298, *2 (Bankr. S.D.N.Y. Aug. 5, 2014).

25.     The burden of proof is on the applicant, and the entitlement to an award must be established by a preponderance of the evidence.  *Synergy*, 621 B.R. at 610, citing *In re Ocean Blue Leasehold Property LLC*, 414 B.R. 798, 809 (Bankr. S.D. Fla. 2009).

26.     Courts have awarded fees and expenses for substantial contribution where the creditor took a leadership role in a case and, therefore, achieved results that the estate-compensated

19

professionals either could not achieve or failed to make an effort to achieve. *In re Granite Partners, L.P.*, 213 B.R. 440, 451 (Bankr. S.D.N.Y. 1997) (where unofficial committee's counsel facilitated important settlements among the debtors' stakeholders, helped resolve obstacles to confirmation and established the postconfirmtion administration of the estates, all parties, including the trustee, agreed the committee's attorneys had made a substantial contribution to the case and the court granted an award for part of the services the committee's attorneys rendered); *Bayou Grp.*, 431 B.R. at 564-66 (in a Ponzi scheme case, where an unofficial investors' committee had, prepetition, taken steps to have a receiver appointed and, postpetition, had followed a creative litigation strategy to keep the receiver in place despite objections by the U.S. Trustee, the court found that the committee had substantially benefitted the estate by ensuring that the case had a strong, uninterrupted, central fiduciary during 'a corporation's most troubled hour'); *In re Texaco, Inc.*, 90 B.R. 622, 627-29 (Bankr. S.D.N.Y. 1988) (attorneys who filed prepetition derivative action insisted on additional disclosure regarding third party releases under plan, ultimately protecting the interests of and adding potential value for all shareholders); *In re Baldwin-United Corp.,* 79 B.R. 321, 343 (Bankr. S.D. Ohio 1987)) (creditor's counsel acted as the voice of reason in an otherwise contentious case).

27.    Mr. Tuganov's participation in these chapter 11 cases is exactly the type of participation that section 503(b)(3)(D) and relevant case law contemplate as a substantial contribution for reimbursement purposes. As a direct result of Mr. Tuganov's strategically surgical filing of the Examiner Motion and the Ponzi Complaint, both of which the Debtors and the Committee resistant at first, the Committee filed the Class Claim and the Class Certification Motion, enlisted Mr. Tuganov's support in that motion, and negotiated an increase in the claim amount of allowed customer claims equal to 5%. Rather than being duplicative of either the

Debtors' or the Committee's efforts, Mr. Tuganov's efforts through his counsel were additive and created a foundation for an alternative plan forward for reorganization of these estates. In addition, Mr. Tuganov and Venable's involvement in the mediation contributed significantly to development of, and consensus on, the Plan Term Sheet and the Plan Support Agreement that are embedded in the Amended Plan.  As the mediation parties can attest, Mr. Tuganov's counsel provided invaluable legal insight in facilitating an agreement that would resolve inter-creditor issues.  Indeed, both the Debtors and the Committee agreed to support Mr. Tuganov's request for reimbursement given the substantial contribution they recognized he and his counsel had made in these cases.

28.     Mr. Tuganov's actions in the Debtors' cases were not merely the actions of a creditor acting in its own self-interest.  But for the Tuganov Examiner Pleadings and the Examiner's Stipulation, the scope of the Examiner's Investigation would never have included findings and circumstances supporting a potential Ponzi adjudication or a more fulsome substantive consolidation of the Debtors' estates.   The expanded scope of the Examiner's Investigation provided finings for a potential Ponzi adjudication, and Mr. Tuganov's filing of the Ponzi Complaint facilitated the consensus that was ultimately achieved by settlement of the Class Certification Motion and in the mediation process. Mr. Tuganov and his counsel played an instrumental part in achieving not only better treatment for customer creditors, but also unlocked stalemates in these cases that propelled the reorganization process for the benefit of all stakeholders.

### The Costs and Fees Incurred by Mr. Tuganov Were Reasonable, Necessary and Beneficial to the Debtors' Estates

29.     Section 503(b)(4) of the Bankruptcy Code provides that an applicant is entitled to an administrative expense claim for the "reasonable compensation for professional services

rendered by an attorney or an accountant of an entity whose expense is allowable under" section 503(b)(3) of the Bankruptcy Code.  11 U.S.C. § 503(b)(4).

30.     Based on the foregoing, Mr. Tuganov provided a substantial contribution to the resolution of the Debtors' chapter 11 cases and is entitled to reimbursement of his actual, necessary costs incurred in connection with these cases.

31.     Once a court determines that an applicant has made a substantial contribution under section 503(b)(3)(D), it must consider whether the applicant's request is reasonable under section 503(b)(4).  *See Texaco*, 90 B.R. 630.  The reasonableness of professional charges is determined based on the time, nature, extent, and value of the services provided and whether related expenses are actual and necessary.  11 U.S.C. §§ 503(b)(4) and 330.

32.     Throughout the Debtors' cases, Mr. Tuganov and Venable devoted a significant amount of time to making a substantial contribution in these cases, while trying to be as surgical, and, therefore, cost-efficient as possible. The Venable professionals working on this matter, including Mr. Sabin and Mr. Currie, are well-known, well-respected bankruptcy lawyers who have achieved a high degree of expertise in business reorganizations.  Considering the novelty and complexity of the Debtors' cases, the extent of the work required by the unique issues raised in these cases, and the nature of the tasks involved, the Substantial Contribution Claim is remarkably reasonable.

33.     The fees charged by Venable are commensurate with the firm's standard billing rate for the professionals who worked on this matter for the period from October 17, 2022 through the present.   These fees are reasonable based upon customary compensation charged by comparably skilled practitioners in the New York City market.

34.     Mr. Tuganov seeks reimbursement of $6,803.46 in expenses that he has incurred with respect to disbursements Venable has made related to this matter.  Mr. Tuganov is seeking reimbursement only of costs related to the benefits Mr. Tuganov and Venable have contributed to these estates and not all costs that he has incurred in this matter.  These costs include travel expenses for one of Venable's non-New York partners to attend and participate in the 3-day mediation in New York, transcript-related charges, working meals relating to the mediation, and court filing fees.  A detail of these disbursements has been provided to the United States Trustee's office and to the Court.  These expenses are reasonable and were necessary to render the legal services to Mr. Tuganov that allowed him and his counsel to participate in the chapter 11 cases and provide the substantial contribution described in this Application.

35.     Additionally, as required in the Plan Support Agreement, Mr. Tuganov is obligated to, among other things, take steps to cooperate with the Debtors to obtain confirmation and implementation of the Amended Plan and the restructuring transactions, including participation in the confirmation trial.  As such, Mr. Tuganov requests that this Court conditionally approve additional reimbursement of expenses up to $300,000.00, evidence of which Mr. Tuganov will submit to the Court, the U.S. Trustee, and any parties objecting to this Application so that such parties may have an opportunity to review and, if appropriate, object to the allowance as administrative expenses of such additional amounts.  If any objections to the additional administrative expense is received, Mr. Tuganov proposes that there be a separate hearing before this Court to consider the additional administrative expense claim.

36.     The fees and expenses incurred by Mr. Tuganov in making a substantial contribution to the Debtors' reorganization process were actual and necessary and provided a real and substantial benefit to these estates.  In light of the benefit Mr. Tuganov and Venable's

participation and efforts contributed to these cases, Mr. Tuganov respectfully submits that this Application should be granted.

## **NO PRIOR REQUEST**

37.     No previous application for the relief requested herein has been made to this or any other court.

## **NOTICE**

38.     Mr. Tuganov, through his counsel, served notice of this Application in accordance with the governing Case Management and Administrative Procedures Order entered in these cases [Dkt. No. 1181] on (i) the Debtors and their counsel, (ii) the United States Trustee, (iii) the Committee and their counsel, (iv) holders of the 50 largest unsecured claims against the Debtors, (v) the United States Attorney's Office for the Southern District of New York, (vi) the Internal Revenue Service, (vii) the attorneys general in the states where the Debtors conduct their business operations, and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Mr. Tuganov submits that no other or further notice is required.

## <u>CONCLUSION</u>

WHEREFORE, Mr. Tuganov respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) allowing a substantial contribution claim in the amount of $1,389,892.46 on behalf of Mr. Tuganov as an allowed administrative claim against the Debtors; (ii) pre-approving an additional administrative claim up to $300,000 for work to be done by Mr. Tuganov and Venable through the effective date of the Debtors' Amended Plan; and (iii) granting such other and further relief as is just and proper.

Dated: New York, New York
      October 2, 2023

VENABLE LLP

By:   <u>*/s/ Jeffrey S. Sabin*</u>
Jeffrey S. Sabin
Carol Weiner Levy
Arie Peled
151 West 42nd St.
New York, New York 10036
Telephone: (212) 503-0896
Facsimile: (212) 307-5598
Email: JSSabin@venable.com
Email: CWeinerLevy@venable.com
Email: APeled@venable.com

- and -

Andrew J. Currie (*admitted pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4586
Facsimile: (202) 344-8300
Email: AJCurrie@venable.com

*Counsel for Ignat Tuganov*
