**Hearing Date: October 24, 2023 at 10:00 a.m.**
**Objection Deadline: October 16, 2023 at 4:00 p.m.**

David J. Adler
McCARTER & ENGLISH, LLP
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921
E-mail: dadler@mccarter.com
*Attorneys for the Borrower Ad Hoc Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | Jointly Administered |

**APPLICATION OF THE BORROWER AD HOC GROUP FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§503(b)(3)(D) AND 503(b)(4), FOR ALLOWANCE AND REIMBURSEMENT OF PROFESSIONAL FEES AND ACTUAL, NECESSARY EXPENSES IN MAKING A SUBSTANTIAL CONTRIBUTION TO THESE CASES**

The Ad Hoc Group of Borrowers (the "**Borrower Ad Hoc Group**"), by and through its counsel, McCarter & English, LLP submits this application (this "**Application**") for entry of an order, pursuant to sections 503(b)(3)(D) and 503(b)(4) of title 11 of the United States Code (the "**Bankruptcy Code**"), for the allowance and reimbursement of reasonable professional fees and actual, necessary expenses in the amount of $1,020,223.47 (consisting of $1,018,265.50 in fees

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 USA LLC (9450); GK8 Ltd. (1209); and GK8 UK Limited (0893). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

and $1957.97 in expenses)[2] (the "**Substantial Contribution Claim**") to the Borrower Ad Hoc Group, as an administrative expense incurred in connection with making a substantial contribution in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of the debtors and debtors-in possession (the "**Debtors**"). In support of this Application, the Borrower Ad Hoc Group respectfully states as follows: and respectfully represents as follows:[3]

## PRELIMINARY STATEMENT

The Borrower Ad Hoc Group initially formed on or about October 3, 2022 and has been an active participant and the "voice" of the Borrowers throughout these Chapter 11 Cases. The Borrower Ad Hoc Group and its counsel, McCarter & English, LLP have been actively involved and have added significant value to these Chapter 11 Cases.

In this Application, the Borrower Ad Hoc Group seeks the allowance of a Substantial Contribution Claim in the amount of $1,020,223.47. Initially, the Borrower Ad Hoc Group sought removal of prior management and greater transparency from the Debtors.[4] Once management was removed, the Borrower Ad Hoc Group was one of the first constituencies to request plan mediation:

> The [Borrower Ad Hoc Group] joins in the Mediation Motion. While other parties have raised objections to the scope of the mediation, the ad hoc Group of Borrowers believe that the subject matter of the mediation should include, at a minimum, plan related issues between Earn and the borrowers, the two largest creditor constituencies in this bankruptcy case.

---

[2] The amount of the Substantial Contribution Claim has been calculated as of August 31, 2023. The Borrower Ad Hoc Group will supplement this Application with McCarter's September fees and expenses and estimated additional services.

[3] The Borrower Ad Hoc Group will provide unredacted copies of McCarter's time sheets to the United States Trustee and the Court not later than October 9, 2023, subject to preservation of all applicable privileges, including the attorney client privilege, and will provide redacted versions of such time sheets to the Debtors and the Committee at the same time.

[4] See *Objection to Motion/Debtors' Motion For Entry Of An Order Authorizing the Debtors To Enter Into An Advisory Agreement With Rod Bolger Pursuant To Sections 363(b) and 503(c)(3) Of The Bankruptcy Code* (ECF Doc. #334). See also *Response to Motion /Motion Of The United States Trustee To Appoint An Examiner* ECF Doc. #746 ("The Debtors' business is built on trust.. . . such good will is significantly lacking under the current management structure.")

2

*See Partial Joinder And Response Of The Ad Hoc Group Of Borrowers In The Motion For The Entry Of An Order (I) Appointing A Chapter Eleven Mediator (II) Directing Mandatory Mediation And (III) Granting Related Relief*, ECF Doc. # 799. The estate fiduciaries opposed that request.

In connection with the bar dates in January and February of 2023, the Borrower Ad Hoc Group assisted other borrowers (and Earn creditors) in connection with understanding the claim requirements. The Borrower Ad Hoc Group also filed an adversary proceeding in which it sought the determination of the rights and remedies of the Borrower Ad Hoc Group. Shortly after the filing of that Complaint, the Debtors designated Novawulf as the stalking horse bidder and presented the outline of a proposal that would have extended the borrowers' loans for five to six years and return of the collateral upon repayment.

Ultimately, the estate fiduciaries rejected the Novawulf proposal in favor of the Fahrenheit proposal under which there was no extension of the loans. Ater accepting the Fahrenheit proposal, the estate fiduciaries filed a plan which provided that the loans would receive the "setoff treatment." That proposal was unacceptable to the Borrower Ad Hoc Group. Thereafter, on July 17-19 2023, the Borrower Ad Hoc Group, the Earn Ad Hoc Group and the estate fiduciaries engaged in a mediation (the "**Mediation**") before Judge Wiles. The results of the Mediation resolved the borrow/earn dispute and allowed this case to proceed toward a consensual resolution.

The settlements reached at the mediation are embodied in the Plan and include, among other things, the option for Borrowers to repay their loans (rather than be forced into setoff), a priority over earn creditors on "crypto only" distributions to those Borrowers who elect such treatment and an "enhanced" recovery to those borrowers electing class claim treatment, .

The Borrower Ad Hoc Group efforts' at the Mediation resulted in a settlement that will provide an enhanced recovery not only to members of the Borrower Ad Hoc Group but to all Borrowers, while preserving significant amounts of cryptocurrency and Newco Equity for the other major constituencies. The results of these efforts were overwhelmingly approved by the Retail Borrower Class (Class 2). As set forth in voting declaration, approximately 96.33% (by amount) and 98.83% (by number) of Class 2 holders voted in favor of the Plan. *See Declaration of Brian Karpuk Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (ECF Doc. #3560).

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The statutory predicates for the relief requested herein are sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

2.      Prior to the Petition Date, the Debtors offered a series of crypto currency programs, including an "earn" account and a "borrow" account. Each account was governed by certain agreements (collectively, the "**Account Agreements**").[5]

3.      With respect to the borrow program, a Celsius customer could become a "borrower" by entering into an agreement with Celsius (a "**Loan Agreement**") pursuant to which she/he would receive either fiat currency or stablecoins in exchange for posting his/her cryptocurrency as collateral with Celsius (the "**Collateral**"). When a loan was issued (the

---

[5] The Loan Agreements are set forth in the Declaration of Alex Mashinsky dated August 10, 2023 (ECF Doc. #393) and is incorporated herein by reference.

4

"**Loans**"), Once a Loans was repaid, the Debtors were obligated under the Loan Agreement to release the Collateral to the Borrower.

## RELIEF REQUESTED

4. By this Application, the Borrower Ad Hoc Group requests entry of an order, pursuant to Bankruptcy Code §§ 503(b)(3)(D) and (b)(4), allowing as an administrative expense of the estates $1,018,265.50 on account of the reasonable and necessary professional services rendered to the Borrower Ad Hoc Group by McCarter & English and $1,957.97 in actual and necessary costs and expenses incurred by McCarter & English in its representation of the Borrower Ad Hoc Group. Such fees and expenses constitute a substantial contribution in these Chapter 11 Cases that benefited the Debtors, their estates and the Chapter 11 process.

## BASIS FOR RELIEF REQUESTED

5. Section 503(b)(3)(D) of the Bankruptcy Code grants administrative expense status to claims for the "actual, necessary expenses" incurred by a creditor or unofficial committee "in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). In addition, Bankruptcy Code § 503(b)(4) allows administrative expenses for "reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable" under § 503(b)(3)(D) and reimbursement of "actual, necessary expenses incurred by such attorney." 11 U.S.C. § 503(b)(4).

6. Although the Bankruptcy Code does not define what constitutes a "substantial contribution," courts consider several factors when determining whether an applicant substantially contributed to the case, such as: (i) whether the services were rendered solely to benefit the applicant or to benefit all parties in the case; (ii) whether the services resulted in an actual and demonstrable benefit; and (iii) whether the services were duplicative of those rendered

5

by estate professionals. *See, e.g., In re Dana Corp.*, 390 B.R. 100, 107-08 (Bankr. S.D.N.Y. 2008); *In re Mirant Corp.*, 354 B.R. 113, 132-34 (Bankr. N.D. Tex. 2006), subsequently aff'd, 308 F. App'x 824 (5th Cir. 2009). In addition, the fees sought must be "reasonable ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title," and expenses must be "actual and necessary." 11 U.S.C. § 503(b)(4).

7.     In these cases, (i) the services were rendered not only to benefit the Borrower Ad Hoc Group, but the case as a whole; (ii) the services resulted in an actual and demonstrable benefit well in excess of the amount sought by the Borrower Ad Hoc Group; (iii) the services were non-duplicative of those performed by estate professionals; (iv) and the fees and expenses sought are reasonable, actual and necessary.

**A. The Borrower Ad Hoc Group's efforts served the general good in the Chapter 11 Cases.**

8.     While "[e]fforts undertaken by creditors solely to further their own self-interest are not compensable under section 503(b)," a creditor's motive is not determinative of the outcome. *In re Bayou Group, LLC*, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010) (quoting *Dana Corp.*, 390 B.R. at 108 (emphasis added)). Courts have recognized that "a measure of self-interest seems likely in nearly every situation, and 'the existence of a self-interest cannot in and of itself preclude reimbursement.'" *In re S & Y Enterprises, LLC*, 480 B.R. 452, 463 (Bankr. E.D.N.Y. 2012) ("An applicant for a substantial contribution administrative expense 'need not possess an altruistic motive in taking over the debtor nor an intention that his or her actions will benefit [the] debtor's estate.'"). A substantial contribution application that "acted to benefit a class of creditors or interest-holders of which class it was a member" has "satisfied the requirement that the party's conduct serve the more general good." Mirant, 354 B.R. at 133.

6

9. Here, the members of the Borrower Ad Hoc Group acted not only for their own benefit, but for the benefit of all Borrowers. They negotiated a settlement not only for themselves, but one that was incorporated into the Debtors' Plan, made available to all Borrowers, and overwhelmingly accepted by them. *See Declaration of Brian Karpuk Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (ECF Doc. #3560).

**B. The services provided resulted in an actual and demonstrable benefit to Borrowers, the Debtors' estates, and the Chapter 11 Cases.**

10. Some courts require a substantial contribution applicant to show a benefit to the estate. "The statute, however, does not so require—the language chosen by Congress, substantial contribution in a case,' makes no reference to the estate, though certainly such language could have been crafted (*see, e.g.*, Code § 503(b)(3)(B) which provides for reimbursement of a creditor that recovers property 'for the benefit of the estate.')." *Mirant*, 354 B.R. at 132; *see also Bayou Group*, 431 B.R. at 561 (explaining that "section 503(b)(3)(D) focuses on process as much as on contribution, on the movant's substantial contribution in the case").

11. In *Mirant*, the court "consider[ed] compensable under section 503(b) services that substantially contributed to the proper allocation of the Debtors' value among stakeholders." *Id.* Those are precisely the type of services that McCarter & English provided in connection with its representation of the Borrower Ad Hoc Group in these Chapter 11 Cases. In particular, the Mediation before Judge Wiles centered on the allocation of value between the two largest constituencies in this case, Earn and Borrow.

**C.  The services provided were not duplicative of those performed by estate professionals.**

12. The interests of the Borrowers were not represented by any statutory committee nor did any estate professionals provide services to protect those interests. Indeed, it was only through an adversarial process with the Earn Ad Hoc Group, the Debtors and Committee that the parties reached the "proper allocation of the Debtors' value among stakeholders." Accordingly, the services provided by McCarter & English were not duplicative of those provided by the Debtors' or Committee's professionals, but rather were necessary in order to reach the right result for the Borrowers.

**D.  The amounts requested represent the Borrower Ad Hoc Group's actual and necessary expenses and reasonable compensation for professional fees.**

13. The fees and expenses of McCarter & English represent reasonable compensation for the professional services rendered to the Borrower Ad Hoc Group in negotiating a settlement of the key legal issue of the status of the Borrowers, as well as the actual, necessary expenses incurred in providing such services. In representing the Borrower Ad Hoc Group, McCarter & English maintained detailed records of the time expended by professionals and paraprofessionals in rendering services to the group, as well as of expenses incurred. As noted in footnote 3 above, the Borrower Ad Hoc Group will provide unredacted copies of McCarter's time records to the United States Trustee and the Court not later than October 9, 2023 (which will include September time charges), subject to preservation of all applicable privileges, including the attorney client privilege, and will provide redacted versions of such time records to the Debtors and the Committee at the same time.

14. The Borrower Ad Hoc Group believes that McCarter & English's time records provide sufficient information for the Court to determine whether the hourly rates and the number of hours worked were reasonable.

15. It should be noted that McCarter has not charged for any time expended prior to the formation of the Ad Hoc Borrower Group on or about October 3, 2022. This resulted in a discount of approximately $92,150.00, which McCarter & English is not seeking to recover in this application.

## NOTICE

16. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the Debtors; (iii) counsel to Committee; and (iv) all other parties registered to receive notice via ECF. In light of the nature of the relief requested, the Borrower Ad Hoc Group submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Borrower Ad Hoc Group respectfully request that the Court enter an order (i) allowing as an administrative expense claim in the amount of $1,020,223.47, on account of professional fees and expenses incurred in connection with the Borrower Ad Hoc Group's substantial contribution in these Chapter 11 Cases; (ii) authorizing the Debtors to pay McCarter & English the amount of $1,020,223.47 in fees and expenses; and (iii) granting the Borrower Ad Hoc Group such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
October 2, 2023

**McCARTER & ENGLISH, LLP**

By: */s/ David J. Adler*
David J. Adler
(A member of the Firm)
Email: dadler@mccarter.com
825 8th Avenue
Worldwide Plaza
New York, New York 10019
Telephone: (212) 609-6847
Facsimile: (212) 609-6921

*Attorneys for Ad Hoc Group of Borrowers*