Adrienne Woods, Esq.
Omid Zareh, Esq.
**Weinberg Zareh Malkin Price LLP**
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Ph: (917) 447-4321
awoods@wzmplaw.com
ozareh@wzmplaw.com

*Counsel to Plaintiffs Georges Georgiou,
Philip Stewart, and Gilbert Castillo*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 22-10964 (MG) |
| CELSIUS NETWORK LLC, et al.[1] | (Jointly Administered) |
| Debtors. | |

**APPLICATION OF THE PENDING WITHDRAWAL AD HOC GROUP
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE
AND PAYMENT OF PROFESSIONAL FEES AND EXPENSES
<u>INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION</u>**

Georges Georgiou, Philip Stewart and Gilbert Castillo (collectively, the "<u>Pending Withdrawal Ad Hoc Group</u>"), by and through its counsel, Weinberg Zareh Malkin Price LLP, as and for its Application Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Payment of Professional Fees and Expenses Incurred in Making a Substantial Contribution, respectfully represents:

**PRELIMINARY STATEMENT**

1. The Pending Withdrawal Ad Hoc Group is comprised of a group of creditors who attempted to withdraw assets from their Earn Accounts immediately prior to the pause instituted by the Debtors. The members of the Pending Withdrawal Ad Hoc Group and similarly situated were told for months that their assets were in fact withdrawn from their Earn Accounts, received no interest for a period

---

[1] Capitalized terms not otherwise defined herein are ascribed the meaning provided in the Complaint filed in Adversary Proceeding No. 23-01016, [ECF Doc. No. 1]

Weinberg Zareh Malkin Price LLP
1

of months, and then found their assets returned to their Earn Accounts without their permission or consent.

2.     The Pending Withdrawal Ad Hoc Group determined that not just they, but other creditors like them, would benefit from raising issues related to concerns specific to those who attempted to withdraw assets from their Earn Accounts and were inaccurately advised that such transactions were effectuated. The Pending Withdrawal Ad Hoc Group believed that these issues, which raised non-contractual claims, were not being fairly recognized, considered and addressed.

3.     By raising issues that contributed to Settlement (defined below), the Pending Withdrawal Ad Hoc Group contributed to support of Debtor's Plan by similarly situated creditors, which will most likely lead to confirmation of the Plan. In recognition of the role of the Pending Withdrawal Ad Hoc Group and certain other parties, the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (the "Plan") [ECF Doc. No. 3319] provides for administrative priority to the extent that the Court authorizes such an award under a theory of substantial contribution.

4.     While the Pending Withdrawal Ad Hoc Group was unable to attend the mediation in New York in July 2023 before the Honorable Michael E. Wiles (the "Mediation") due to late notice and limited funds available, prior to the Mediation the Pending Withdrawal Ad Hoc Group participated in numerous calls with counsel to various other ad hoc groups and interested parties, as well as counsel to the Debtors and the Official Committee of Unsecured Creditors, to discuss issues of concern to Earn claimants.

**RELIEF REQUESTED**

5.     Given its substantial contributions, the Pending Withdrawal Ad Hoc Group respectfully requests that the Court allow and authorize as administrative expenses of these estates (i) the modest fees incurred by them for legal fees totaling $28,927.50; and (ii) the expenses incurred by its counsel in the amount of $350.00. Unredacted copies of WZMP's invoices are available upon request. The Pending

Withdrawal Ad Hoc Group was funded entirely by the three (3) individuals who comprised it, unlike the various statutory committees in this case that received funding from the estate to support their positions. To the extent this Application is granted, the funds will be used to reimburse members for these costs and expenses.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). The statutory predicated for the relief requested herein are sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

## LEGAL ARGUMENT

7.      Section 503(b)(3)(D) of the Bankruptcy Code provides for the payment of "the actual, necessary expenses" incurred by "a creditor ... or a committee representing creditors ... other than a committee appointed under Section 1102 of this title, in making a substantial contribution" in a Chapter 11 case. 11 U.S.C. § 503(b)(3)(D).

8.      Section 503(b)(4) of the Bankruptcy Code allows for:

> reasonable compensation for professional services rendered by an attorney ... whose expense is allowable under subparagraph .... (D) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the case of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney...

11 U.S.C. § 503(b)(4). Thus, the Bankruptcy Code provides for allowance as administrative expenses of the estate of professional fees and expenses incurred by a creditor group in making a substantial contribution to a chapter 11 case.

9. Courts only compensate requests for "services that confer a significant and demonstrable benefit upon the reorganization process which have not been rendered *solely* on behalf of a creditor's own interest ..." *In re U.S. Lines, Inc.,* 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989) (emphasis added). In making their determination, courts in this circuit consider: (i) whether the services benefited a creditor, the estate itself, or all interested parties; (ii) whether the services resulted in an actual, significant and demonstrable benefit to the estate; and (iii) whether the services were duplicated by the efforts of others involved in the case. *See Trade Creditor Grp. v. L.J. Hooker Corp., Inc.,* 188 B.R. 117, 120 (S.D.N.Y. 1995), *aff'd,* 109 F.3d 349 (2d Cir. 1996); *In re Best Prods. Co., Inc.,* 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994).

10. The Pending Withdrawal Ad Hoc Group's contributions inured to the benefit not only of the individual members of such group but also other creditors and the estate generally. First, the Pending Withdrawal Ad Hoc Group filed the Complaint to raise the issues related to all creditors who were fraudulently advised that their withdrawals were properly initiated. As a direct result of the Complaint filed by the Pending Withdrawal Ad Hoc Group as well as other creditor groups seeking compensation of funds expended as a substantial contribution, the Plan includes the Settlement of the Committee's Class Claim, resulting in an increased benefit to Account Holders in the amount of 5% of their claims on account of non-contractual claims. Further, the estate itself will benefit as the Settlement, which will end and head off litigation – including the adversary proceeding commenced by the Pending Withdrawal Ad Hoc Group – that would otherwise deplete estate resources and delay distributions. Moreover, certain members of the Pending Withdrawal Ad Hoc Group actively explained and promoted the Plan, after inclusion of the Settlement, through active engagement in Telegram.

11.     The contributions made by the Pending Withdrawal Ad Hoc Group also were unique, as they highlighted a specific type of noncontractual claim that was perpetrated on members of the group and similarly situated creditors.  By speaking to such similarly situated creditors, members of the Pending Withdrawal Ad Hoc Group were able to encourage support for the Plan by assuring others that the proposed Plan was fair and reasonable, and most likely the best possible result.

12.     Accordingly, the Pending Withdrawal Ad Hoc Group provided actual, demonstrable benefit to the Debtors' estates within the meaning of Section 503(b)(3)(D) of the Bankruptcy Code and respectfully requests allowance and payment of its actual and necessary expenses.

13.     In addition, fees and expenses incurred by the Pending Withdrawal Ad Hoc Group are compensable under section 503(b)(4) of the Bankruptcy Code. The fees incurred by counsel to the Pending Withdrawal Ad Hoc Group are commensurate with the time and labor required, the skills necessary, and customary fees charged to clients in bankruptcy and non-bankruptcy cases.

14.     Counsel to the Pending Withdrawal Ad Hoc Group quickly educated themselves regarding the case itself, use of cryptocurrency, issues confronting holders of Earn Accounts generally as well as those related to those more specific to holders of Earn Accounts who sought to withdraw funds shortly before the pause, and relevant issues occurring in cryptocurrency proceedings before other courts relevant to development of the jurisprudence in this rapidly evolving area.

15.     The head of WZMP's bankruptcy practice has practiced exclusively in the area of bankruptcy law for nearly twenty years.  Since finishing her clerkship before the United States Bankruptcy Court for the Southern District of New York, Ms. Woods has represented debtors, creditors, and third parties in various contexts as well as advising foreign law firms involved in bankruptcy cases in the United States. She worked as a bankruptcy legal analyst, ran her own practice, and holds the position of General Counsel

with cryptocurrency platform Heimdall RWA. Ms. Woods was assisted by Omid Zareh, named partner, as needed. Mr. Zareh focuses on business law and has practiced for more than thirty years.

16. The hourly fees and expenses charged and incurred by WZMP are reasonable and, upon information and belief, are substantially less than comparable professionals providing services in this and similar cases. Ms. Woods' billing rate is currently $600 per hour, and Mr. Zareh's billing rate is $700 per hour. Associates, billed at $365 per hour and a paralegal, billed at $185 per hour, were used as necessary and appropriate. In representing the Pending Withdrawal Ad Hoc Group, WZMP capped its rate at $500 as an accommodation to the client.

17. The Pending Withdrawal Ad Hoc Group does not anticipate being active going forward, so it will not seek further fees. The Pending Withdrawal Ad Hoc Group's counsel will seek a nominal fee of $2,000 for preparation of this Application and appearing at any hearing thereon. Nor has the Pending Withdrawal Ad Hoc Group's counsel billed for expenses above and beyond the filing fee required for complaint commencing the adversary proceeding.

## NOTICE

18. Notice of this Application is being provided on accordance with the Notice of Further Revised Schedule for Substantial Contributions Application. [ECF Doc. No. 3498]

## CONCLUSION

WHEREFORE, the Pending Withdrawal Ad Hoc Group requests that the Court enter an order: (i) approving the Application; (ii) authorizing Debtors to pay WZMP the sum of $28,927.50 for professional fees and $350.00 for expenses incurred through September 28, 2023; and (iii) granting such other relief as is just and proper.

Dated: New York, New York
      October 2, 2023

WEINBERG ZAREH MALKIN PRICE, LLP

BY:   /s/ Adrienne Woods
      Adrienne Woods, Esq.
      Omid Zareh, Esq.
      45 Rockefeller Plaza, 20th Floor
      New York, New York 10111
      (212) 332-3209
      awoods@wzmplaw.com
      ozareh@wzmplaw.com

      *Attorneys for Plaintiffs Georges Georgiou,*
      *Philip Stewart, and Gilbert Castillo*